GARRICK A. HOLLANDER (SBN 166316)
ghollander@wghlawyers.com
**WINTHROP GOLUBOW HOLLANDER, LLP**
1301 Dove Street, 5th Floor
Newport Beach, CA  92660
Telephone: (949) 720-4100
Facsimile: (949) 720-4111

A. Barry Cappello (SBN 037835)
abc@cappellonoel.com
David L. Cousineau (SBN 298801)
dcousineau@cappellonoel.com
G. Michael Brelje (SBN 269476)
mbrelje@cappellonoel.com
**CAPPELLO & NOËL LLP**
831 State Street
Santa Barbara, CA 93101
Telephone: (805) 564-2444
Facsimile: (805) 965-5950

Attorneys for Debt Validation Fund II, LLC,
MC DVI Fund 1, LLC, and MC DVI Fund 2, LLC

## UNITED STATED BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>THE LITIGATION PRACTICE GROUP P.C.,<br><br>Debtor. | Case No.: 8:23-bk-10571-SC<br><br>CHAPTER 11<br><br>**NOTICE OF MOTION AND MOTION BY DVF AND MC DVI TO DISMISS CHAPTER 11 CASE PURSUANT TO 11 U.S.C. §§ 105, 305, 349, & 1112, OR IN THE ALTERANATIVE CONVERT THIS CASE TO CHAPTER 7 OR APPOINT A TRUSTEE**<br><br>DATE:    May 17, 2023<br>TIME:    1:30 p.m.<br>CRTRM:  5C – Virtual[1] |

---

[1] Accessibility information will be posted into the Court's tentative ruling prior to the hearing. Parties can obtain such accessibility information on Judge Clarkson's posted hearing calendar which may be viewed online at: http://ecf-ciao.cacb.uscourts.gov/CiaoPosted/?jid=SC

264430.2

**TO THE HONORABLE SCOTT C. CLARKSON, UNITED STATES BANKRUPTCY JUDGE, DEBTOR, DEBTOR'S COUNSEL, AND ALL PARTIES IN INTEREST:**

**PLEASE TAKE NOTICE** on May 17, 2023, at 1:30 p.m., or as soon thereafter as the matter can be heard, in Courtroom 5C (Virtual) of this Court, located at 411 West Fourth Street, Santa Ana, CA 92701, DEBT VALIDATION FUND II, LLC, ("DVF"), MC DVI FUND 1, LLC, and MC DVI FUND 2, LLC (collectively "MC DVI," and with DVF "Creditors"), will move this Court for an order to dismissing this Chapter 11 bankruptcy case with prejudice, and a 180-bar to refiling, pursuant to Sections 105, 349(a), 1112(b) and/or 305(a) of Title 11 of the United States Code, or the conversion of this case to Chapter 7, or an appointment of a trustee, pursuant to Section 1112(b)(1), in the alternative should the Court not grant a dismissal.

**IF YOU DO NOT OPPOSE THE MOTION, YOU NEED NOT TAKE ANY FURTHER ACTION.  HOWEVER, IF YOU DO OPPOSE THE MOTION, PURSUANT TO LOCAL BANKRUPTCY RULE 9013-1, ANY OPPOSITION TO THE MOTION MUST BE FILED WITH THE COURT NO LATER THAN FOURTEEN (14) DAYS PRIOR TO THE HEARING ON THE MOTION.  YOU MUST FILE ANY SUCH OPPOSITION WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT, LOCATED AT 411 WEST FOURTH STREET, SUITE 9041, SANTA ANA, CA 92701.  YOU MUST ALSO SERVE A COPY OF ANY SUCH OPPOSITION UPON COUNSEL AT THE MAILING ADDRESS STATED IN THE UPPER LEFT CORNER OF THE FIRST PAGE OF THIS NOTICE AND UPON THE OFFICE OF THE UNITED STATES TRUSTEE LOCATED AT 411 WEST FOURTH STREET, SANTA ANA, CA 92701.  ALTERNATIVELY, YOU MAY FILE AND SERVE A WRITTEN STATEMENT THAT CREDITORS MOTION TO DISMISS THE CHAPTER 11 BANKRUPTCY CASE WILL NOT BE OPPOSED.  FAILURE TO TIMELY FILE AND SERVE AN OPPOSITION TO THE MOTION MAY RESULT IN ANY SUCH OPPOSITION BEING WAIVED, AND THE COURT MAY ENTER AN ORDER GRANTING THE MOTION WITHOUT FURTHER NOTICE.  MOREOVER, SHOULD YOU FAIL TO ATTEND THE HEARING ON THE MOTION, THE COURT IS AUTHORIZED TO ENTER YOUR DEFAULT AND TO GRANT THE RELIEF**

**REQUESTED BY THE DEBTOR IN THE MOTION.**

The Motion to Dismiss is based upon this Notice, the Memorandum of Points and Authorities, the attached Declaration of G. Michael Brelje ("Brelje Declaration") filed concurrently herewith, the files, documents, and records in this action, and any further evidence and argument that the Court may receive at or before the hearing.

**WHEREFORE**, the Creditors respectfully requests that this Court enter an order granting this motion for dismissal in its entirety, dismiss Debtor's Chapter 11 case with prejudice, and impose a 180-day bar to refiling under any chapter of the Bankruptcy Code to prevent LPG from attempting to further delay the State Court actions, or to interfere with the performance of the Receiver's duties as ordered by the State Court. If the Court is not inclined to dismiss the Debtor's Chapter 11 case, Creditors respectfully request the Court convert the case to Chapter 7 or appoint a trustee, in the alternative.

Dated:  April 19, 2023

CAPPELLO & NOËL LLP
and
WINTHROP GOLUBOW HOLLANDER, LLP

By:    */s/ Garrick A. Hollander*
Garrick A. Hollander
Attorneys for Debt Validation Fund II, LLC, MC DVI Fund 1, LLC, and MC DVI Fund 2, LLC

# **TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................................1

II.   FACTUAL BACKGROUND .................................................................................2

    A.    LPG has failed to pay DVF and MC DVI tens-of-millions of dollars from promissory notes that were signed *September 1, 2022*. .................................2

    B.    LPG spent the last year intentionally dissipating its assets............................3

        (1)    LPG "sold" $40 million in accounts receivable for $1. ........................3

        (2)    LPG diverted at least another $18 million. ...........................................3

        (3)    LPG took other affirmative steps to scuttle its business, including transferring its assets to another entity to avoid LPG's liabilities. ...................4

III.  ARGUMENT ..........................................................................................................4

    A.    LPG's Chapter 11 Bankruptcy Petition was filed in Bad Faith and is a Sham filed to delay the State Court Actions of Creditors and Validation Partners LLC, and to avoid the Court-Appointed Receiver from doing his job. ........................5

    B.    LPG's Chapter 11 Case Should be Dismissed or Converted for Cause Under Under Section 1112(b)(4)(A).........................................................................8

        (1)    There has Been Substantial and Continuing Loss to the Estate........................8

        (2)    There is No Reasonable Likelihood of Rehabilitation of Debtor ....................9

    C.    Dismissal of LPG's Petition is appropriate and warranted Pursuant to 11 U.S.C. § 305(a) as State Court is the appropriate venue for the disputes between Creditors and Debtor, and because there is a receivership already in place in the State Court Action. ...................................................................10

    D.    Dismissal of LPG's Chapter 11 Case Should be *with Prejudice* pursuant to Bankruptcy Code Sections 105(a), 349(a) and FRBP 9011. .......................12

    E.    If the Court denies Creditors' Request Relief for Dismissal, LPG's Chapter 11 Case Should be Converted to Chapter 7 or a Trustee should be appointed................13

IV.   CONCLUSION....................................................................................................14

-i-

# TABLE OF AUTHORITIES

## Cases

In re Arnold,
  806 F.2d 937, 939 (9th Cir.1986). ................................................................. 9

Casse v. Key Bank Nat'l Ass'n (In re Casse)
  (2d Cir. 1999) 198 F.3d 327, 336 ................................................................. 16

In re City of Desert Hot Springs,
  339 F.3d 782 (9th Cir. 2003) ........................................................................ 9

In re Consolidated Pioneer Mortg. Entities
  248 B.R. 368 (9th Cir. B.A.P. 2000) ........................................................... 8

In re Creekside Senior Apartments, L.P.,
  489 B.R. 51 (B.A.P. 6th Cir. 2013) ............................................................ 13

In re Dami,
  172 B.R. 6, 11 (Bankr.E.D.Pa. 1994) ........................................................ 17

Dressler v. Seeley Co. (In re Silberkraus),
  336 F.3d 864  (9th Cir. 2003) ..................................................................... 11

In re Earl,
  140 B.R. 728, 741 (Bankr.N.D.Ind. 1992) ................................................ 17

In re East Coast Airways, Ltd.,
  146 B.R. 325 (Bankr. E.D.N.Y. 1992) ................................................... 12, 13

In re Elmwood Devel. Co.,
  964 F.2d 508, 510 (5th Cir. 1992) .............................................................. 10

Eisen v. Curry (In re Eisen),
  14 F.3d 469 (9th Cir. 1994) ........................................................................ 12

In re Great Am. Pyramid Joint Venture,
  144 B.R. 780 (Bankr. W.D. Tenn. 1992).................................................... 13

In re Greenberg,
  2017 WL 3816042, at *4 (B.A.P. 9th Cir. Aug. 31, 2017), appeal dismissed, 2018 WL 1989502
  (9th Cir. Feb. 14, 2018) ............................................................................. 10

In re Hassen Imports P'ship,
  2013 WL 4428508, at *12–15 (B.A.P. 9th Cir. Aug. 19, 2013)................... 13

In re Jolly,
  143 B.R. 383, 388 (E.D.Va. 1992) ............................................................. 17

In re Kanterman,
  88 B.R. 26 (S.D.N.Y. 1988) ....................................................................... 13

In re King,
  2017 WL 1944123 (Bankr.C.D.Cal. 2017) ................................................ 17

In re Leavitt,
   209 B.R. 935  (9th Cir. BAP 1997) ................................................................. 10, 17

Lerch v. Federal Land Bank,
   94 B.R. 998 (N.D.Ill. 1989) ......................................................................... 16

In re Little Creek Dev. Co.,
   779 F.2d 1068 (5th Cir.1986) ....................................................................... 9

In re Macke Intern. Trade,
   370 B.R. 236 (9th Cir. BAP 2007) ................................................................ 15

Marrama v. Citizens Bank of Mass.,
   549 U.S. 365, 374 (2007) ............................................................................ 10

In re Marciano,
   459 B.R. 27 (9th Cir. BAP 2011) ................................................................. 15

In re Marsch,
   36 F.3d 825 (9th Cir. 1994) ......................................................................... 9, 10

In re Marshall,
   721 F.3d 1032 (9th Cir. 2013) ..................................................................... 9

In re Mense,
   509 B.R. 269  (Bankr. C.D. Cal. 2014) ......................................................... 12, 13

In re Moore,
   583 B.R. 507, 512 (9th Cir. 2019) ............................................................... 10

In re N.R. Guaranteed Retirement, Inc.,
   112 B.R. 263 (Bankr.N.D.Ill.), aff'd, 119 B.R. 149 (N.D.Ill.1990) ................. 9

In re Nelson,
   343 B.R. 671 (9th Cir. BAP 2006) ................................................................ 9

In re Orbit Petroleum, Inc.,
   395 B.R. 145 (Bankr. D.N.M. 2008) ............................................................ 9

In re Prometheus Health Imaging, Inc.,
   705 F. App'x 626 (9th Cir. 2017) ................................................................. 9, 10

In re Red Door Lounge, Inc.,
   559 B.R. 728 (Bankr. D. Mont. 2016) .......................................................... 13

In re Sanders,
   2013 WL 1490971, at *7 (9th Cir. BAP Apr. 11, 2013) ................................. 9

In re Setzer,
   47 B.R. 340  (Bankr. E.D.N.Y. 1985) .......................................................... 11

St. Paul Self Storage Ltd. P'Ship v. Port Authority of the City of St. Paul (In re St. Paul Self Storage
   Ltd. P'Ship),
   185 B.R. 580 (9th Cir. B.A.P. 1995) ............................................................ 12

In re Start the Engines, Inc.,
  219 B.R. 264 (Bankr. C.D. Cal. 1998) ............................................................. 12

In re Stolrow's Inc.
  84 B.R. 167 (9th Cir. 1988) ............................................................................. 9

In re Victory Constr.Co.,
  9 B.R. 549 (Bankr. C.D.Cal.1981) .................................................................. 10

In re Wally Findlay Galleries, Inc.,
  36 B.R. 849 (Bankr. S.D.N.Y. 1984) ............................................................... 11

In re WLB-RSK Venture,
  296 B.R. 509 (Bankr. C.D. Cal. 2003), aff'd, 320 B.R. 221 (B.A.P. 9th Cir. 2004)...................... 10

In re Zick,
  931 F.2d 1124, 1127, 1129 (6th Cir. 1991) ..................................................... 10

**Bankruptcy Code**

11 U.S.C. § 105(a) .................................................................................................... 13, 20

11 U.S.C. § 109(g)(1) .............................................................................................. 20

11 U.S.C. § 112(b)(4) .............................................................................................. 11

11 U.S.C. § 305(a)(1) .............................................................................................. 17

11 U.S.C. § 349 ......................................................................................................... 20

11 U.S.C. § 349(a) .................................................................................................... 19

11 U.S.C. § 1112(b) ................................................................................................. 4

11 U.S.C. § 1112(b)(1) ............................................................................................ 8, 9, 21

11 U.S.C. § 1112(b)(2) ............................................................................................ 9

11 U.S.C. § 1112(b)(4)(A) ...................................................................................... 14, 15

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

The bankruptcy filing of The Litigation Practice Group P.C. ("Debtor" or "LPG") is a blatant sham.  In August 2022, LPG convinced moving parties Debt Validation Fund II, LLC ("DVF"), MC DVI FUND 1, LLC and MC DVI FUND 2, LLC (collectively "MC DVI" and with DVF "Creditors") to enter promissory notes (the "Notes") dated September 1, 2022, for monies LPG owed Creditors.  The principal owed was $66.4 million (for DVF) and $37.4 million (for MC DVI), with significantly more owed to account for interest.  *See* Exs. 1 and 2.  Then, LPG began systematically, and intentionally, dissipating its assets and transferring its business to new entities in an admitted attempt to avoid LPG's liabilities.  For instance, within a month of entering the Notes, LPG "sold" $40 million of receivables for *one dollar*, *i.e.*, 0.000002% of the value of the receivables.  *See* Brelje Declaration, Ex. 3.  It also transferred all its "good" performing clients to a new law firm called Oakstone Law Group PC ("Oakstone"), and effectively completely shut down its business and operations.

During this period, LPG also fought tooth-and-nail to avoid having a receiver placed over its business in a California State Court lawsuit filed by another creditor named Validation Partners LLC ("VP"); a lawsuit and request that Creditors joined.  It lost that fight on March 10, 2023 when the State Court judge ordered that Byron Moldo be named Receiver.  See Brelje Declaration, Ex. 13.[2] However, LPG's lawyers—its third set to appear in that litigation—prevented Mr. Moldo from taking over by requesting the right to file objections to the scope of Mr. Moldo's powers, and taking advantage of the delay to file the instant bankruptcy, thereby staying the State Court case before the judge could enter a final order.

---

[2] LPG also violated the State Court's injunction against allowing its bank account to drop below $4,481,960.00.  The court issued the injunction on December 21, 2022 (Ex. 10), reiterated the injunction on January 6, 2023 (Ex. 11), continued the injunction on February 10, 2023 (Ex. 12), and made the injunction permanent on March 10, 2022 (Ex. 13).  LPG's list of assets submitted in this case shows, however, that it dissipated all but $66,500.00 of that amount (i.e., cash on hand and deposits).  *See* Dkt. No. 33.  This was done intentionally by the Debtor despite counsel for LPG's assurance to Judge Sherman that it was abiding by the injunction.  *See* Ex. 14 at p. 21, lines 4-9 ("With respect to the injunction, my understanding is that the money is in place . . . the injunction is being complied with and the money is in the bank account.").

1    It is thus clear that LPG is using bankruptcy as a sham, and filed its Petition in bad faith, to

2  allow its principals to delay and, they hope, prevent Mr. Moldo from taking over and discovering the

3  full extent of their malfeasance and fraud.  This is unfortunately not surprising.  Tony Diab, who

4  controls LPG, is a disbarred lawyer who stole money from at least one client and forged a judge's

5  signature on a fake order.  *See* Brelje Declaration, Ex. 4.

6    Creditors therefore respectfully request that the Court dismiss LPG's Chapter 11 Case.  Mr.

7  Moldo can then step into the role of Receiver to protect LPG's creditors, and the pending State Court

8  case can continue.

9  **II.    FACTUAL BACKGROUND**

10    **A.    LPG has failed to pay DVF and MC DVI tens-of-millions of dollars from**

11    **promissory notes that were signed *September 1, 2022*.**

12    According to LPG's filings in this case, its debts to DVF and MC DVI represent about 72%

13  of its stated debt; over $102 million of the $141 million LPG identifies.  *See* Dkt. No. 33 at 30 (debt

14  owed to DVF and MC DVI) and 38 (total debt).  This debt is based on notes that DVF and MC DVI

15  entered, separately, with LPG as of September 1, 2022.  *See* Exs. 1 and 2.

16    Under the notes with DVF and MC DVI, LPG agreed to make monthly payments ranging

17  from a low of $665,301 to a high of $3.6 million.  *See* Ex. 1 at "Schedule A"; Ex. 2 at "Schedule A."

18  As of April 1, 2023, LPG should have paid DVF $15.26 million and MC DVI $8.61 million.

19  However, LPG never timely paid any of the contractually required amounts, and, when it did make

20  payments, they were for a small fraction of the amount due.  *See* Ex. 5 at ¶ 7; Ex. 6 at ¶ 7.  To date,

21  DVF has only received $987,326.00, and MC DVI has only received $574,163.20.  *Id.*  They have not

22  received any payments since November, and LPG informed them at the time that it would not make

23  any additional payments; not because it lacked the funds, but as retribution for DVF and MC DVI

24  having supported VP's request for a Receiver in the State Court action.  Ex. 5 at ¶ 9; Ex. 6 at ¶ 9.

25    DVF and MC DVI repeatedly asked LPG, including through counsel, to provide financial

26  data they were entitled to under the Notes, but LPG never provided this required information.

27  / / /

28

**B.      LPG spent the last year intentionally dissipating its assets.**

   **(1)      LPG "sold" $40 million in accounts receivable for $1.**

LPG's income, and its ability to pay its debts, comes from receivables it receives from clients in exchange for getting their debts excused.  Because LPG's clients grant it the right to pull monthly fees directly from their bank accounts, this is a reliable source of income.  Thus, LPG's ability to pay DVF and MC DVI required it to maintain control over those receivables.  However, early this year, DVF and MC DVI learned that in October 2022, a month after they entered the notes, LPG "sold" approximately *$40 million* in receivables to a related entity called Stratcap Management LLC ("Stratcap") *for $1.  See* Ex. 3.  This purported "sale" included the account receivables of over 13,000 clients, a listing so long that it takes up 136 pages.  Nothing could justify such a discount, which equates to *0.000002% of the value* of the receivables.  The transfer is even more damning, and reeks of fraud, because the principal of Stratcap was the CFO of LPG until May 2022.

   **(2)      LPG diverted at least another $18 million.**

A former LPG consultant named Darius Newbold ("Newbold") identified additional unsupported cash distributions.  Newbold is well situated to analyze LPG's records: he was brought to LPG in May 2022 to help get LPG's financial affairs in order, a role he performed through July 11, 2022, when Tony Diab told him he no longer wanted Newbold interfering with Diab's ability to make decisions about cash flow and payment priorities, but still wanted Newbold's assistance with LPG's financial organization and fundamental accounting processes.  (Ex. 7 at ¶¶ 4-5.)  While at LPG, Newbold regularly saw Diab approve questionable disbursements.  (*Id.* at ¶ 10.)  Newbold continued to have access to many of LPG's accounts at least through the time he submitted his declaration.  (*Id.* at ¶ 6.)

Newbold's analysis of LPG's accounts raised a number of problems, including about $18 million of questionable cash distributions between June and October 2022.  (*Id.* at ¶12.)  Newbold determined that these were not supported by contracts or other verifiable back-up, or were higher than would be expected based on LPG's historical business practices.  (*Id.* at ¶¶ 12, 19-59.)  He also explained that even though LPG's income has increased by millions per month and its major

operating expenses have stayed the same, LPG is not accumulating cash (and we know it is not using the excess to pay Related Plaintiffs).  (*Id.* at ¶¶ 35-38.)

> **(3)**    **LPG took other affirmative steps to scuttle its business, including transferring its assets to another entity to avoid LPG's liabilities.**

Before LPG filed for bankruptcy, its software engineering manager, Mr. Jake Akers, was deposed in the State Court proceeding.  Neither LPG nor its counsel attended the deposition despite receiving and acknowledging notice.  Subsequent to the deposition, Mr. Akers was fired.

During late 2022 and early 2023, Mr. Akers was in regular contact with Wes Thomas, who had been LPG's CFO and was continuing to work with Diab and LPG. Ex. 8 at 48:15-25, 49:1-12.  Mr. Akers testified under oath that Thomas and Diab had a scheme to drain all the good client accounts of LPG and take them over to a new law firm, called Oakstone and then scuttle LPG to evade LPG's financial obligations.  *Id.* at 50:14-51:14, 128:12-25.

In late December 2022 and early January 2023, Mr. Akers was asked to check the computer system to confirm that client files had been transferred to a new bank identified as "Bank 6" in the computer system.  *Id.* at 52:3-54:22. Mr. Akers described the use of a vague term like "Bank 6" to be what is typically used in the system when running a test, but in this instance money was actually being transferred so it was being used to conceal what they were doing and where the client files and money were really being transferred to.  *Id.* at 56:20-57:6; 61:4-14.  The purpose of these transfers was to move the "book of business … from LPG to another entity or entities and somehow have all the liability not follow."  *Id.* at 54:4-6.  In a February 16, 2023 complaint filed in Texas State Court, Oakstone (the continuation of LPG) admitted that in mid-January 2023, "LPG terminated its Legal Services Agreements it had with its customers," thereby confirming Mr. Akers' testimony that LPG was scuttling the business.  *See* Ex. 9.

## III.    ARGUMENT

Under Title 11 on the United States Code ("Bankruptcy Code"), the Court may dismiss or convert a case if a movant establishes "cause." (See §1112(b)(1).)  The bankruptcy court has broad discretion in determining what constitutes "cause" adequate for dismissal under 11 U.S.C. § 1112(b).  (See *In re Consolidated Pioneer Mortg. Entities* 248 B.R. 368, 375 (9th Cir. B.A.P. 2000).) While

1  section 1112(b)(4) identifies a number of factors that can constitute "cause" for dismissal of a case,

2  the list is not exhaustive. (*Id*.)

3          Once "cause" is established, the Court must dismiss the case or convert it to chapter 7,

4  "whichever is in the best interests of creditors and the estate . . . unless the court determines that the

5  appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors of

6  the estate." (See 11 U.S.C. § 1112(b)(1) and *In re Nelson,* 343 B.R. 671, 675 (9th Cir. BAP 2006).)

7  The Court, however, may not convert or dismiss a case if there exist "unusual circumstances" that

8  establish dismissal or conversion is not in the best interests of creditors and the estate. (See 11 U.S.C.

9  § 1112(b)(2).)  The debtor bears the burden of proving the "unusual circumstances." *In re Sanders,*

10  2013 WL 1490971, at *7 (9th Cir. BAP Apr. 11, 2013) (citing *In re Orbit Petroleum, Inc.,* 395 B.R.

11  145, 148 (Bankr. D.N.M. 2008)).

12        **A.**    **<u>LPG's Chapter 11 Bankruptcy Petition was filed in Bad Faith and is a Sham filed</u>**

13  **<u>to delay the State Court Actions of Creditors and Validation Partners LLC, and</u>**
**<u>to avoid the Court-Appointed Receiver from doing his job.</u>**

14          It is well established in this Circuit that *bad faith* constitutes "cause" for dismissal under

15  Section 1112(b).  "Under 11 U.S.C. § 1112(b)(1), a court may dismiss a Chapter 11 bankruptcy case

16  'for cause,' based on a finding the petition was filed in bad faith."  *In re Prometheus Health*

17  *Imaging, Inc.*, 705 F. App'x 626, 627 (9th Cir. 2017).

18        The bankruptcy court may dismiss a Chapter 11 case "for cause" pursuant to 11
19        U.S.C. § 1112(b). Although section 1112(b) does not explicitly require that
         cases be filed in "good faith," courts have overwhelmingly held that a lack of
20        good faith in filing a Chapter 11 petition establishes cause for dismissal. See,
         e.g., *In re Little Creek Dev. Co*., 779 F.2d 1068, 1072 (5th Cir.1986); *Stolrow's*,
21        84 B.R. at 170; *In re N.R. Guaranteed Retirement, Inc*., 112 B.R. 263, 270
         (Bankr.N.D.Ill.), aff'd, 119 B.R. 149 (N.D.Ill.1990). "The existence of good
22        faith depends on an amalgam of factors and not upon a specific fact." *In re*
         *Arnold*, 806 F.2d 937, 939 (9th Cir.1986). **The test is whether a debtor is**
23        **attempting to unreasonably deter and harass creditors or attempting to**
         **effect a speedy, efficient reorganization on a feasible basis**. (*Id.*) [Emphasis
24        added.].

25  *In re Marsch*, 36 F.3d 825, 828 (9th Cir. 1994).  (See also, *In re City of Desert Hot Springs*, 339

26  F.3d 782, 792 (9th Cir. 2003) ("Good faith, however, is a requirement of all bankruptcies and

27  without it a bankruptcy is to be dismissed for 'cause' under 11 U.S.C. § 1112(b).").

28

1    "A debtor bears the burden of proving that the petition was filed in good faith." *In re*

2    *Marshall*, 721 F.3d 1032, 1048 (9th Cir. 2013) (internal marks omitted) (*citing In re Leavitt*, 209

3    B.R. 935, 940 (9th Cir. BAP 1997). See also, *In re Prometheus Health Imaging, Inc*., 705 F. App'x

4    626, 627 (9th Cir. 2017) (same); *In re Greenberg*, 2017 WL 3816042, at *4 (B.A.P. 9th Cir. Aug.

5    31, 2017), *appeal dismissed*, 2018 WL 1989502 (9th Cir. Feb. 14, 2018) ("On a motion to dismiss

6    under § 1112(b), the debtor bears the burden to prove the chapter 11 petition was filed in good

7    faith.").

8        Case law is clear that good faith is a predicate to the right to file a petition in bankruptcy, as

9    only the "honest but unfortunate debtor" is eligible for the protections afforded by the Bankruptcy

10    Code. *Marrama v. Citizens Bank of Mass.,* 549 U.S. 365, 374 (2007) (quoting *Grogan v. Garner,*

11    498 U.S. 279, 287 (1991)). As is the case in this matter, "[a] bankruptcy case is filed in bad faith if

12    it was brought for 'tactical reasons unrelated to reorganization.'" *In re Moore,* 583 B.R. 507, 512

13    (9th Cir. 2019) (quoting *In re Marsch,* 36 F.3d 825, 828 (9th Cir. 1994).)

14        In deciding whether a case was filed in bad faith, courts look at the following factors,

15    including but not limited to whether: "(1) the debtor has only one asset; (2) the debtor has an

16    ongoing business to reorganize; (3) there are any unsecured creditors; (4) the debtor has any cash

17    flow or sources of income to sustain a plan of reorganization or to make adequate protection

18    payments; and (5) the case is essentially a two-party dispute capable of prompt adjudication in state

19    court." *In re WLB-RSK Venture,* 296 B.R. 509, 514 (Bankr. C.D. Cal 2003), aff'd, 320 B.R. 221

20    (B.A.P. 9th Cir. 2004), aff'd, 223 F. App'x 555 (9th Cir. 2007); See also, 11 U.S.C. §112(b)(4) (list

21    of different factors the court can consider to dismiss a bankruptcy petition).

22        "The good faith standard protects the integrity of the bankruptcy courts and prohibits a

23    debtor's misuse of the process where the overriding motive is to delay creditors without any possible

24    benefit, or to achieve a reprehensible purpose through manipulation of the bankruptcy laws." *In re*

25    *Elmwood Devel. Co.,* 964 F.2d 508, 510 (5th Cir. 1992), *rehg.den'd*: 974 F.2d 1337. A "full-blown

26    evidentiary hearing" is not required to find that a filing was in bad faith, rather the "smell test" can

27    be used. *In re Zick,* 931 F.2d 1124, 1127, 1129 (6th Cir. 1991). The secreting of assets, acts of prior

28    misconduct, and proof of intent to escape a "day of reckoning in state court" demonstrates "bad

1  faith." *In re Victory Constr.Co.*, 9 B.R. 549, 558-560 (Bankr. C.D.Cal.1981).  Indeed, a petition

2  cannot be used as a litigation tactic. (See *In re Wally Findlay Galleries, Inc.,* 36 B.R. 849 (Bankr.

3  S.D.N.Y. 1984); *In re Setzer,* 47 B.R. 340, 344, 348 (Bankr. E.D.N.Y. 1985).)

4        Here, Debtor is purposefully using its bankruptcy filing to escape the State Court order with

5  respect to the appointment of the Receiver and the issuance of the preliminary injunction.  LPG

6  cannot evade the "smell test" of its bankruptcy petition reeking of bad faith and being filed solely as

7  a litigation tactic.  The transferring and dissipation of assets, and fraud perpetuated, by LPG towards

8  Creditors, and other creditors, is not good faith conduct; far from it.  Here, cause exists to dismiss or

9  convert the Debtor's case pursuant to 11 U.S.C. § 1112(b).

10        Additionally, pursuant to section 105(a) of the Bankruptcy Code, the Court may "tak[e] *any*

11  *action* or mak[e] any determination necessary or appropriate to enforce or implement court orders or

12  rules, or *to prevent an abuse of process*."  (11 U.S.C. § 105(a)) [Emphasis added.].  Failure to dismiss

13  or convert LPG's bankruptcy case that was filed in bad faith would reward an abuse of process.

14        In this case, there is a laundry list of unsecured creditors (58 in total), with $141,813,218.09

15  in unsecured claims.  However, Debtor only has $4,500.00 of cash on hand to make payments to

16  Creditors, who have claims under secured promissory notes totaling $102,196,145.08, not including

17  interest or attorney's fees allowable under the notes.  LPG does not have an ongoing business to

18  reorganize as it has all but closed down shop and transferred all of its assets and client files to

19  Oakstone and related entities.  It is merely a shell company with nothing left.

20        Moreover, the cases filed against LPG by Creditors and Validation Partners LLC are

21  essentially a joint two-party dispute (as Creditors have filed a Motion for Consolidation and have

22  already intervened in Validation Partners LLC's case) capable of prompt adjudication in state court,

23  with the Receiver acting as an officer of the Court.

24        Rather than being a legitimate attempt to reorganize, LPG's bankruptcy petition appears to be

25  nothing more than a bad faith attempt to avoid the impact of the State Court's order appointing the

26  Receiver and entering the preliminary injunction against it.  To allow the Debtor's bankruptcy case

27  to continue would be unjust as it was clearly filed as a sham and in bad faith to delay justice and

28  delay the receiver from performing his court appointed duties. (*See Dressler v. Seeley Co. (In re*

*Silberkraus*), 336 F.3d 864, 871 (9th Cir. 2003) (strategic filing of bankruptcy petition two days before state court was to schedule trial date in suit against debtor constitutes bad faith where purpose was to frustrate and to impede state court lawsuit); *Eisen v. Curry* (*In re Eisen*), 14 F.3d 469, 470-471 (9th Cir. 1994) (bad faith exists where debtor timed the bankruptcy filing to frustrate a state court action with the automatic stay, and affirming a 180-bar from filing any new bankruptcy petition, as well ordering the imposition of sanctions on remand).

Bad faith factors are clearly present this is case.  LPG does not have the ability to formulate, let alone fund or confirm a plan of reorganization.  Its assets have been dissipated, intentionally to Oakstone and other related entities, so there are no real assets that exist besides fictitious numbers that are being used simply to delay the inevitable.  The Debtor's Chapter 11 petition is simply a litigation tactic to abuse the bankruptcy process to Creditors detriment, delay the Receiver's duties, and frustrate the State Court actions through the automatic stay.

Accordingly, this case was not commenced in good faith, as required, and was brought with bad faith and should therefore be dismissed under 11 U.S.C. § 1112(b). (See *In re Start the Engines, Inc.,* 219 B.R. 264, 270 (Bankr. C.D. Cal. 1998) (bankruptcy petition filed to delay state court action filed in bad faith and upholding sanctions); *St. Paul Self Storage Ltd. P'Ship v. Port Authority of the City of St. Paul* (*In re St. Paul Self Storage Ltd. P'Ship*), 185 B.R. 580, 583 (9th Cir. B.A.P. 1995) (dismissal proper where it was clear that petition was filed as a litigation tactic, and not to help reorganize debtor)).

**B.      LPG's Chapter 11 Case Should be Dismissed or Converted for Cause Under Under Section 1112(b)(4)(A).**

Under Section 1112(b)(4)(A), specific cause for dismissal exists where there is a "substantial *or* continuing loss to *or* diminution of the estate *and* the absence of a reasonable likelihood of rehabilitation*."* 11 U.S.C. § 1112(b)(4)(A) [Emphasis added.].  Here, both elements for finding cause for dismissal under Section 1112(b)(4) are satisfied.

**(1)      There has Been Substantial and Continuing Loss to the Estate**

" '[T]here need not be a significant diminution in the estate' " for good cause to exist. *In re Mense*, 509 B.R. 269, 284-285 (Bankr. C.D. Cal. 2014) (*citing* and *quoting In re East Coast*

1  *Airways, Ltd.*, 146 B.R. 325, 336 (Bankr. E.D.N.Y. 1992).)  Rather, "'[a]ll that need[s] to be found is

2  that the estate has suffered some diminution in value.'"  *Mense*, 509 B.R. at 284-258 (*citing* and

3  *quoting East Coast Airways*, 146 B.R. 325); *In re Kanterman*, 88 B.R. 26, 29 (S.D.N.Y. 1988).

4  Here, the first element of substantial loss to or diminution of the estate has been met.  LPG has

5  intentionally scuttled its business and continuing monthly losses are mounting with no end in sight.

6  There is absolutely no reason to believe that LPG's losses will stop as they have only $4,500.00 cash

7  on hand, and $62,000.00 in deposits, to pay towards claims of $141 million, and its business is

8  closed because Debtor transferred its files to Oakstone and other related entities prior to filing the

9  Chapter 11 Petition.  These undisputable losses or diminution in value of the estate, both before and

10  after the bankruptcy filing date, will continue.

11  **(2)    There is No Reasonable Likelihood of Rehabilitation of Debtor**

12  The use of the term "rehabilitation" as opposed to the more familiar term of "reorganization"

13  used throughout the Bankruptcy Code is material to this case. "As used in § 1112(b)(4)(A),

14  rehabilitation does not necessarily denote reorganization, which could involve liquidation. *In re*

15  *Creekside Senior Apartments, L.P.*, 489 B.R. 51, 61 (B.A.P. 6th Cir. 2013) (internal cites and quotes

16  omitted). "Rehabilitation is a different and … much more demanding standard than reorganization."

17  (*Id.*) (internal cites and quotes omitted, alteration in original).

18  "The issue of rehabilitation for purposes of § 1112(b)(4)(A) is not the technical one of

19  whether the debtor can confirm a plan, but, rather, whether the debtor's business prospects justify

20  continuance of the reorganization effort." *In re Hassen Imports P'ship*, 2013 WL 4428508, at *12–

21  15 (B.A.P. 9th Cir. Aug. 19, 2013) (internal cites and quotes omitted); *In re Red Door Lounge, Inc.*,

22  559 B.R. 728, 735 (Bankr. D. Mont. 2016) (same). Simply put, "[r]ehabilitation' contemplates the

23  successful maintenance of the debtor's business operations. *A reasonable likelihood of rehabilitation*

24  *is absent when the debtor's business operations do not justify continuance of the reorganization*

25  *effort.*" *Mense*, 509 B.R. at 284-285 (Bankr. C.D. Cal. 2014) (internal cites and quotes omitted)

26  [Emphasis added.].   (See also, *In re Great Am. Pyramid Joint Venture*, 144 B.R. 780, 791 (Bankr.

27  W.D. Tenn. 1992) ("when no or substantially no business is left to reorganize, chapter 11 cases do

28

1   not serve those purposes [for bankruptcy identified by Congress], and "cause" [under Section

2   1112(b)] exists").)

3          In this case, Debtor's business is in financial shambles based on intentional file transfers (of

4   paying clients) to Oakstone and other related entities to dissipate LPG's liabilities.  Based on the

5   timing and evidence, is clear LPG filed its Chapter 11 Petition in bad faith to avoid having to deal

6   with the Receiver in the State Court action and to not have to face the Superior Court judge after

7   ignoring and violating the terms of the preliminary injunction.

8          There has not been, and cannot be, any showing that LPG's fading business can be

9   rehabilitated or that rehabilitation is even justified as it is effectively a shell company with no assets.

10  Absent LPG miraculously securing historical income and profits, which seems nearly impossible

11  based on the facts, LPG does not have a reasonable likelihood of a successful rehabilitation.

12  Moreover, LPG's business prospects (which is effectively zero at this point) do not justify a

13  continuance of its reorganization effort because there is nothing left of value.

14   **C.    Dismissal of LPG's Petition is appropriate and warranted Pursuant to 11 U.S.C.
            § 305(a) as State Court is the appropriate venue for the disputes between
15          Creditors and Debtor, and because there is a receivership already in place in the
            State Court Action.**
16

17         Creditors also submit that this Court should abstain from exercising its jurisdiction over this

18  chapter 11 case and dismiss it pursuant to section 305(a)(1) of the Bankruptcy Code.  Section

19  305(a)(1) allows a court to dismiss a bankruptcy case based on abstention principals, if such dismissal

20  is in the best interests of the debtor and its creditors.  Section 305(a)(1) provides in relevant part:

21  "[t]he court, after notice and a hearing, may dismiss a case under this title, or may suspend all

22  proceedings in a case under this title, at any time if – (1) the interests of creditors and the debtor

23  would be better served by such dismissal or suspension."  (11 U.S.C. § 305(a)(1)).  Here, the interests

24  of the Creditors would clearly better be served by a dismissal.

25         In determining whether to dismiss a case pursuant to Section 305(a), the court should weigh

26  various factors including whether there is an alternative forum available to the parties:

27         (1) the economy and efficiency of administration; (2) *whether another forum is available to
           protect the interests of both parties or there is already a pending proceeding in state court*;
28         (3) whether federal proceedings are necessary to reach a just and equitable solution; (4)

whether there is an alternative means of achieving an equitable distribution of assets; (5) whether the debtor and the creditors are able to work out a less expensive out-of-court arrangement which better serves all interests in the case; (6) whether a non-federal insolvency has proceeded so far in those proceedings that it would be costly and time consuming to start afresh with the federal bankruptcy process; and (7) the purpose for which bankruptcy jurisdiction has been sought.

*In re Marciano*, 459 B.R. 27, 46–47 (9th Cir. BAP 2011) [Emphasis added.].

In determining whether to dismiss a case under Section 305(a), the court will give deference to alternative proceedings which may be pending under state law. "Typical circumstances for dismissing under § 305(a)(1) include the pendency of proceedings such as assignments for the benefit of creditors, **state court receiverships**, or bulk sale agreements." *In re Macke Intern. Trade*, 370 B.R. 236, 247 (9th Cir. BAP 2007). [Emphasis added.].

The Ninth Circuit's Bankruptcy Appellate Panel has recognized that dismissal under 11 U.S.C. § 305(a)(1) is appropriate where there are "state court receivership" proceedings pending. (See *Weschler v. Macke Int'l Trade, Inc. (In re Macke Int'l Trade, Inc.),* 370 B.R. 236, 247 (9th Cir. B.A.P. 2007); *see also In re Sun World Broadcasters, Inc.,* 5 B.R. 719 (Bankr.M.D.Fla. 1980) (dismissing bankruptcy petition where state court liquidation receivership was pending); *In re Monsour Medical Center, Inc.*, 154 B.R. 201, 207 (Bankr.W.D.Pa. 1993) (abstaining in favor of state court receivership proceeding: "Dismissal pursuant to section 305 is especially appropriate when another forum is available to determine the parties' interests and an action has been commenced in that forum."); *In re L & M Video Productions, Inc.*, 2007 WL 1847387, at *6 (Bankr.N.D. Ohio 2007) (abstaining pursuant to Section 305 in favor of a state court receivership).) The Receiver should be allowed to complete his work and report back to the State Court as the State Court receivership proceeding is pending.

Moreover, the factors of judicial economy and efficiency favor dismissal in this matter. The time and expense required to litigate this bad faith bankruptcy case would delay the Receiver from performing his duties in State Court. Indeed, the State Court action is the correct venue for this essential two-party dispute to be heard and adjudicated; not bankruptcy court. If LPG's Chapter 11 Petition remains in bankruptcy court the Creditors and the Receiver will be prejudiced, if this bad faith bankruptcy filing is allowed to proceed, because the Creditors and Receiver will be forced to

1    spend time and incur attorneys' fees and costs related to this case, all while the State Court action is

2    stayed and the Receiver is sitting on the sidelines not able to complete his work.

3        Debtor's Petition was clearly filed as a last-ditch attempt to fend off a looming Superior

4    Court order concerning the Receiver appointment and preliminary injunction issuance, which is not

5    consistent with the purposes of Chapter 11 protection.  Here, LPG's bad faith filing, which lacks any

6    legitimate bankruptcy purpose, provides substantial justification for the Court to prohibit LPG from

7    seeking further relief under the Bankruptcy Code without first seeking leave of the Court. Therefore,

8    Creditors request that the Court dismiss this case with prejudice, and impose a 180-day bar to

9    refiling under any chapter of the Bankruptcy Code, to prevent LPG from further delaying the State

10   Court actions and the Receiver from doing his job.

11       **D.    Dismissal of LPG's Chapter 11 Case Should be *with Prejudice* pursuant to
             Bankruptcy Code Sections 105(a), 349(a) and FRBP 9011.**

12

13       Ample authority exists for this Court to issue an order barring the Debtor from refiling

14   pursuant to Bankruptcy Code sections 105(a) and 349(a), and/or Bankruptcy Rule 9011.  Section

15   349(a) of the Bankruptcy Code provides that "[*u]nless the court, for cause, orders otherwise*, the

16   dismissal of a case under this title does not bar the discharge, in a later case under this title, of debts

17   that were dischargeable in the case dismissed; nor does the dismissal of a case under this title

18   prejudice the debtor with regard to the filing of a subsequent petition under this title . . ." (11 U.S.C. §

19   349(a) (emphasis added)).

20       A bankruptcy court may use its inherent powers under Sections 105(a) and 349(a) of the

21   Bankruptcy Code to dismiss a debtor's chapter 11 case with prejudice and proscribe subsequent

22   filings, where the debtor has commenced its bankruptcy case for an improper purpose and in bad faith.

23   (See *Casse v. Key Bank Nat'l Ass'n* (*In re Casse*) (2d Cir. 1999) 198 F.3d 327, 336 (bankruptcy court

24   had power under sections 105 and 349 to dismiss chapter 11 case with prejudice and to permanently

25   bar a debtor who had filed to stop foreclosure sale from filing another bankruptcy case under any

26   chapter); *Lerch v. Federal Land Bank*, 94 B.R. 998 (N.D.Ill. 1989) ("[T]his Court holds that Section

27   349(a) is not modified or limited by Section 109(g) so long as the bankruptcy court "for cause, rules

28   otherwise" and the bankruptcy court's dismissal of the case with prejudice for the two-year period

1  falls under the "for cause" exception of Section 349(a).")

2       In *In re King*, 2017 WL 1944123 (Bankr.C.D.Cal. 2017), Judge Brand dismissed the

3  debtor's case based upon a finding of bad faith, pursuant to 11 U.S.C. §§ 109(g)(1) and 349, as

4  follows:

5  > [T]he Court concludes that it did not err in entering the Dismissal Order with a

6  > 180–day bar to refiling based on bad faith under the totality of the circumstances

   > pursuant to *In re Leavitt*, 171 F.3d 1219, 1224 (9th Cir. 1999) or based on

7  > Debtor's tactical use of dismissal to avoid adverse rulings and failure to prosecute

   > the case under sections 109(g)(1) and 349.

8  *In re King*, 2017 WL 1944123, at *5 (Bankr.C.D.Cal. 2017)

9       Courts have also recognized their authority to bar subsequent bankruptcy petitions based

10  upon Section 105(a) and Bankruptcy Rule 9011. See, *In re Dami*, 172 B.R. 6, 11 (Bankr.E.D.Pa.

11  1994) (Bankruptcy Rule 9011);  *In re Earl*, 140 B.R. 728, 741 (Bankr.N.D.Ind. 1992) (11 U.S.C. §

12  105(a)); *In re Jolly*, 143 B.R. 383, 388 (E.D.Va. 1992)(11 U.S.C. § 105(a).)

13       Based on the facts and totality of the circumstances, dismissal of this case with prejudice is

14  warranted as it is in the best interests of the Creditors, as well as the unsecured creditors.  The

15  alternative, *i.e.*, leaving the remaining limited funds and dwindling accounts of LPG in the hands of

16  disbarred attorney Tony Diab, would only lead to further misappropriation and diversion of assets

17  and delay justice for all creditors who have interests against LPG.  If this case is not dismissed with

18  prejudice, LPG, and Mr. Diab, will continue their schemes to evade creditors, continue to scuttle any

19  remaining business that exists, and leave creditors out in the cold with nothing to recover.

20       **E.**    **If the Court denies Creditors' Request Relief for Dismissal, LPG's Chapter 11**

21                 **Case Should be Converted to Chapter 7 or a Trustee should be appointed.**

22       This Court has the power to either dismiss or convert this case, for cause, to Chapter 7 under

23  the Bankruptcy Code "unless the Court determines that appointment under section 1104(a) of a

24  trustee or an examiner is in the best interests of creditors and the estate."  (See 11 U.S.C. §

25  1112(b)(1)).  Creditors submit that the facts and circumstances of this case substantially justify and

26  warrant an order dismissing LPG's Chapter 11 case.  However, if the Court does not believe

27  dismissal of this case is appropriate at this time, Creditors respectfully request that the Court enter an

28  order appointing a Chapter 11 Trustee or converting this case to Chapter 7.  The factors and analysis

set forth herein with respect to dismissal generally apply to consideration of converting the case or appointing a trustee.  However, Creditors provide the following facts and authorities to support their alternative relief request.

**IV.     <u>CONCLUSION</u>**

Creditors respectfully request that this Court grant this motion for dismissal in its entirety, dismiss Debtor's Chapter 11 case with prejudice, and impose a 180-day bar to refiling under any chapter of the Bankruptcy Code to prevent LPG from attempting to further delay the State Court actions filed by Creditors and Validation Partners LLC, the appointment of the Receiver, Byron Z. Moldo, or to interfere with the performance of the Receiver's duties as ordered by the State Court.

If the Court is not inclined to Debtor's Chapter 11 case, Creditors respectfully request the Court convert the case to Chapter 7 or appoint a trustee, in the alternative.

Dated:  April 19, 2023

**CAPPELLO & NOËL LLP**
**and**
**WINTHROP GOLUBOW HOLLANDER, LLP**

By: __/s/ Garrick A. Hollander_____
Garrick A. Hollander
Attorneys for Debt Validation Fund II, LLC, MC DVI Fund 1, LLC, and MC DVI Fund 2, LLC

**PROOF OF SERVICE OF DOCUMENT**

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 1301 Dove Street, Suite 500, Newport Beach, CA 92660

A true and correct copy of the foregoing document entitled (*specify*): **NOTICE OF MOTION AND MOTION BY DVF AND MC DVI TO DISMISS CHAPTER 11 CASE PURSUANT TO 11 U.S.C. §§ 105, 305, 349, & 1112, OR IN THE ALTERANATIVE CONVERT THIS CASE TO CHAPTER 7 OR APPOINT A TRUSTEE** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **April 19, 2023**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Ronald K Brown**    ron@rkbrownlaw.com
- **Shawn M Christianson**    cmcintire@buchalter.com, schristianson@buchalter.com
- **Joon M Khang**    joon@khanglaw.com
- **Byron Z Moldo**    bmoldo@ecjlaw.com, amatsuoka@ecjlaw.com,dperez@ecjlaw.com
- **Alan I Nahmias**    anahmias@mbn.law, jdale@mbnlawyers.com
- **Queenie K Ng**    queenie.k.ng@usdoj.gov
- **Paul R Shankman**    PShankman@fortislaw.com, info@fortislaw.com
- **United States Trustee (SA)**    ustpregion16.sa.ecf@usdoj.gov

☐    Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:  On **April 19, 2023**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Honorable Scott C. Clarkson
(bin on 5th Floor)
U.S. Bankruptcy Court,
Ronald Reagan Federal Building
411 West Fourth Street Suite 5130
Santa Ana, CA 92701-4593

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **April      , 2023**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| April 19, 2023 | Silvia Villegas | */s/ Silvia Villegas* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

-15-