1  Christopher B. Ghio (State Bar No. 259094)
   Christopher Celentino (State Bar No. 131688)
2  Yosina M. Lissebeck (State Bar No. 201654)
   Jonathan Serrano (State Bar No. 333225)
3  **DINSMORE & SHOHL LLP**
   655 West Broadway, Suite 800
4  San Diego, CA 92101
   Telephone:  619.400.0500
5  Facsimile:  619.400.0501
   christopher.ghio@dinsmore.com
6  christopher.celentino@dinsmore.com
   yosina.lissebeck@dinsmore.com
7  jonathan.serrano@dinsmore.com

8  Proposed Special Counsel to Richard A. Marshack

9  D. Edward Hays (State Bar No. 162507)
   Laila Masud (State Bar No. 311731)
10 MARSHACK HAYS WOOD LLP
   870 Roosevelt
11 Irvine, CA 92620
   Telephone:  949.333.7777
12 Facsimile:  949.333.7778
   ehays@marshackhays.com
13
   Proposed General Bankruptcy Counsel to Richard A. Marshack, Chapter 11 Trustee
14

15

16               **UNITED STATES BANKRUPTCY COURT**

17         **CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION**

18

19 | In re: | Case No.: 8:23-bk-10571-SC |

20 | THE LITIGATION PRACTICE GROUP P.C., | Adv. Proc. No. 8:23-ap-01046-SC |

21 | Debtor. | Chapter 11 |

22 | | **STATUS CONFERENCE REPORT** |

23 RICHARD A. MARSHACK,
   Chapter 11 Trustee,

24          Plaintiff,

25            v.

26 TONY DIAB, an individual; DANIEL S.
   MARCH, an individual; ROSA BIANCA LOLI,
27 an individual; LISA COHEN, an individual;
   WILLIAM TAYLOR CARSS, an individual;
28 ENG TANG, an individual; MARIA EEYA TAN,
   an individual; JAKE AKERS, an individual; HAN

TRINH, an individual; JAYDE TRINH, an individual; WES THOMAS, an individual; SCOTT JAMES EADIE, an individual; JIMMY CHHOR, an individual; DONGLIANG JIANG, an individual; OAKSTONE LAW GROUP PC; GREYSON LAW CENTER PC; PHOENIX LAW GROUP, INC.; MAVERICK MANAGEMENT, LLC; LGS HOLDCO, LLC; CONSUMER LEGAL GROUP, P.C.; VULCAN CONSULTING GROUP LLC; B.A.T. INC. d/b/a COAST PROCESSING; PRIME LOGIX, LLC; TERACEL BLOCKCHAIN FUND II LLC; EPPS; EQUIPAY; AUTHORIZE.NET; WORLD GLOBAL; OPTIMUMBANK HOLDINGS, INC. d/b/a OPTIMUM BANK; MARICH BEIN, LLC; BANKUNITED, N.A.; REVOLV3, INC.; FIDELITY NATIONAL INFORMATION SERVICES, INC. d/b/a FIS; WORLDPAY, INC.; WORLDPAY GROUP; MERIT FUND, LLC; GUARDIAN PROCESSING, LLC; THE UNITED STATES POSTAL SERVICE; and DOES 1 through 100, inclusive,

Defendants.

The duly appointed Chapter 11 Trustee, Richard Marshack ("Trustee") submits the following status report as requested by the Court in its *sua sponte* order. To date the following has occurred and/or been completed:

**INTRODUCTION**

The Office of the United States US Trustee ("UST") and the Chapter 11 Trustee agree that Debtor appears to have engaged in improper conduct prior to bankruptcy. Based on Trustee's investigation to date and, which remains ongoing, he believes there is a possible solution that does not involve ceasing operations. Moreover, terminating operations likely would cause additional harm to Debtor's consumer clients including the following:

   * Abandonment of Client files: Clients who have active files including defense of pending lawsuits will find themselves without counsel leaving them susceptible to aggressive enforcement of efforts by their creditors and leave them subject to substantial money judgments. In the first 20 days since Trustee served the Court's TRO mandating that he control operations, funds have been received from approximately 11,000 clients. Of this amount, at least 2,500 are involved in pending court cases. If LPG ceases all operations, it will be unable to pay for the legal services currently being rendered by attorneys across the country. This likely will cause consumers to be left representing themselves and increases the likelihood that they will miss court dates or be unable to advance a competent defense. Many will end up with judgments against them and all monies paid to LPG will have been wasted. Inevitably, consumers' answers will be stricken or their affirmative complaints will be dismissed since they will be unrepresented;

   * Waste of Fees Paid by Client: Substantial numbers of client files are more than half-way complete. If operations cases, clients will have to start over again with a new firm assuming they still have sufficient funds to retain new counsel. To be clear, all that has been accomplished and all that has been paid for will go to waste and the clients will have to start over;

\*      Inability to Pay LPG employees to transfer Client Documents: Terminating operations will leave the estate without any funds to transition files to tens of thousands of clients. In other words, the estate will not have the labor or money to provide an orderly transition;

\*      Public Relations issues: Immediately ceasing business will likely create a public relations nightmare. During the June 12, 2023, hearing, the Court analogized this case to a nursing home. If a nursing home is not being operated pursuant to the law, the answer is not to throw all occupants out onto the street. Instead, if operations must cease, sufficient notice and services must still be provided in order to have an orderly transition. Moreover, clients have paid for services and results that they will not receive leaving them subject to their debts, collection efforts, judgments, and vulnerable to other scams with little or no funds to pay a second time for legal representation. In sum, they won't get their debts resolved, they won't get the benefit of what they have paid for, and their answers may be stricken and they will be stuck with default judgments;

\*      Possible Breach of Trustee's Duty to Reduce to Money the Property of the Estate: If Trustee does not attempt to sell assets (subject to the court's determination that any proposed sale is lawful), the estate will not realize what Trustee believes to be $30-40 million. These funds could otherwise enable significant distributions to creditors including consumers who have in fact been damaged. Also, if the case is left in Chapter 11, a plan of liquidation could be proposed that separately classifies the consumers whose claims will be significantly smaller than the tens of millions of dollars of non-consumer creditors and can fund refunds and pay damages to consumer that did not receive the benefit of their contracted bargain; and

\*      Double Payment: If operations cease, clients will be forced to find and pay again for services they have already paid. Instead, a sale can be negotiated pursuant to which any purchaser will have to agree to provide the balance of services for no additional costs.

Instead, Trustee believes his fiduciary duty requires him to continue his investigation to determine if assets can be sold in a fashion that contractually and by court order requires a buyer to comply with all applicable consumer protection laws.

\*      Compliance with Consumer Protection Laws: A purchase and sale agreement can include provisions that the buyer agrees to comply with all applicable laws including consumer protection laws such as the 15 U.S.C. § 6101-6108 (Telemarketing and Consumer Fraud and Abuse Prevention Act); 16 C.F.R., Part 310 (Telemarketing Sales Rule); and 15 U.S.C. § 1679-1679j (Credit Repair Organizations Act). In addition, compliance with such a provision can be maintained under the threat of contempt. If clients are abandoned, they may end up continuing to be subjected to unscrupulous competing businesses. Trustee is aware that Debtor's former principals are attempting to create a new business and compete for Debtor's clients;

\*      Reformed Contracts: Any sale can reform all existing legal services contracts to ensure that no contractual provision violates any law and that all services will be rendered in compliance with all applicable laws including the TSR and CROA;

\*      Post-Sale Monitor: Trustee has secured agreement with the two existing potential purchasers that a court-appointed monitor will be appointed who will audit and ensure compliance with the sales contract, sale order, and applicable laws. The monitor will be required to file periodic reports and can be a source for the UST, Trustee, and other governmental agencies to verify compliance. The costs of the monitor will be paid by the buyer. Trustee will require that any proposed sales agreement will provide that the Court will select the monitor. Trustee is contemplating proposing Nancy Rappaport who is a law professor at UNLV;

\*      Funding for Creditors: Debtor's existing contracts are by far the estate's most valuable and potentially its only significant asset. The value of the existing contracts could be worth more than $40 million. While Trustee is certain that the estate also has avoidance claims, there is no guarantee that prosecuting such claims will result in any recovery from Debtor's former principals.

\* Orderly Transition and Preservation of Consumer Choices: State Bar Rule 1.17 applies to the sale of a law firm. Trustee will model any purchase and sale agreement to incorporate the salient provisions of this rule. Specifically, clients will be notified of the sale and their right to terminate their contract and their right to opt-out of being represented by the purchaser. As such, only those people that wish to continue their contracts will receive legal representation from buyer.

 Bankruptcy courts are courts of equity where an equitable solution can be reached that avoids further damage to consumers. If this were simply a federal or state class action for violations of consumer protection laws, then such court's ability may be limited to awarding damages or imposing fines. There would be no ability to structure a sale to a buyer that would comply with the law or be found in contempt of court.

 Additionally, the bankruptcy court has the ability to impose significant post-sale safeguards to protect consumers. The interested purchasers, with whom Trustee has already been negotiating have already agreed to permit a post-sale monitor to be appointed by the bankruptcy court to audit and supervise compliance. Lastly, any proposed sale will model California State Bar Rule 1.17, which provides notice to clients that they have the ability to opt-out and terminate their contracts instead of receiving services from a buyer.  In short, Trustee and his counsel have spent countless hours searching for solutions that protects consumers from further harm and that provides recoveries so that creditors may receive distributions.

**LPG'S OWNERSHIP AND MANAGEMENT**

 The Court requested information as it related to paragraphs 44-47 of the Complaint. The Trustee's continued investigation into the case substantiates the allegations set forth in those paragraphs and confirms that the facts as set forth are accurate.  Additional facts discovered are set forth as follows:

 (44) Based on Trustee's investigation to date, there are approximately 22,000 active consumer clients of Debtor or its' alter egos.  Approximately 25-35% are in active litigation and being serviced by attorneys across the country who continue to make court appearances and meet deadlines.  Trustee

4

1    has received information that Mr. Diab is attempting to set up a new alter ego entity.  Trustee is

2    actively engaged in gathering evidence regarding these.

3        (45) At the hearing on June 12, 2023, Mr. Diab testified that LPG was created after he closed

4    Diab Law. Mr. Diab, Mr. March and Ty Carss conceded at the Preliminary Injunction hearing that Mr.

5    Diab controlled LPG's business and financial operations. Mr. Diab has admitted this in many other

6    forms after trying to hide his involvement. According to Mr. Diab, he hid his heavy involvement in

7    managing and running LPG to avoid the impact on financial and ACH account applications due to his

8    disbarment. The evidence and Declarations obtained from Darius Newbold who worked in LPG's

9    Tustin office pre-petition confirm he worked solely with Mr. Diab on all financial issues, witnessed

10    the sign on Mr. Diab's desk that read "I don't work here" and that he preferred to be called an

11    "Admin"  in the office. To wit, Mr. Diab has communicated with the Trustee directly using the email

12    address admin@lpglaw.com.

13        (46) At the hearing on June 12, 2023, Mr. Diab testified that he was involved in the high-level

14    decision making of LPG, including deciding for LPG to file for bankruptcy, hiring decisions, making

15    ACH pulls, and selecting the accounts where funds from ACH pulls were diverted. He also testified

16    that, up until March 2023, he was paying monthly rent of $43,500.00 for his residence and he

17    continues to rent a Lamborghini, which is conveniently stored in his garage. Mr. Diab, Dan March

18    and Ty Carss all conceded at the Preliminary Injunction hearing that Mr. Diab controlled all aspects of

19    LPG and its alter egos business, including the financing, client refunds, marketing efforts and

20    factoring. LPG's payroll records and Mr. March's testimony at the Preliminary Injunction hearing

21    confirm he received a significant salary of at least $600,000.00 per year, actually paid, with a

22    contractual salary of $100,000.00 per month or $1.2 million per year. Similarly, the evidence at the

23    Preliminary Injunction hearing establishes a two year attorney at Greyson Law Center, PC who

24    provides only general in house counsel receives a similar salary of approximately $500,000.00 per

25    year.

26        (47) At the hearing on June 12, 2023, Mr. Diab testified that he made the decision for LPG to

27    file for bankruptcy in conjunction with March.

28

### LPG'S BUSINESS STRUCTURE

The Court requested information as it related to paragraphs 48-52 of the Complaint. The Trustee's continued investigation into the case substantiates the allegations set forth in those paragraphs and confirms that the facts as set forth are accurate.  Additional facts discovered are set forth as follows:

(48)  The correct name of the entity doing business as Coast Processing is BAT, Inc.  This has been corrected in the Amended Adversary Proceeding Complaint filed June 16, 2023. BAT, Inc. is still a registered California Corporation. Based on the Trustee's preliminary investigation BAT, Inc. does not appear to be actively marketing new LPG or Phoenix clients. That said, the Trustee is aware Mr. Diab may intend to start yet another law firm which may be the beneficiary of BATs marketing efforts.

(49)  The Trustee is aware of at least two contracts for the purchase of new clients and/or accounts receivables with marketing affiliates entered into by Dan March on behalf of LPG post-petition. These contracts were entered within two weeks of LPG filing its petition. To date, Trustee is not aware based on the evidence obtained to date of any other marketers actively seeking to enroll clients with LPG or its alter ego, Phoenix Law.

(50)  As discussed above, about one-third of LPG's consumer clients are in active litigation being handled by a licensed attorney located in that client's jurisdiction.  The Trustee and his counsel have interviewed numerous of these attorneys – including current and former LPG attorneys and confirmed that LPG did provide valuable litigation services to these clients.

(51)  The contractual and financial evidence received to date confirms this to be true as it relates to accounts receivables sold to a factoring company.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

1    (52)  Validation Partners is a creditor in this action. Having made a claim the Trustee remains

2    committed to first and foremost achieving what is in the best interest of the consumer, and at the same

3    time providing a reasonable solution to obtaining funds for the Estate and all creditors including

4    Validation Partners. At this time, pending further investigation, Trustee believes Validation Partner is

5    a creditor of accounts receivables subject to recovery.

6                                    **TRUSTEE'S ACTIONS TO DATE**

7         The Court's *sua sponte* request for status report requested the above information concerning

8    the status of the Trustee's investigation as it relates to specifically identified paragraphs of the

9    Adversary Complaint.  In addition, the Trustee believes that the Court would be interested in

10   information concerning the Trustee's actions to date.

11        First, the Trustee has secured interim financing to ensure the payment of essential customer

12   service personnel and the payment of ordinary operating expenses.  Among other things, this

13   financing has allowed the Trustee to (i) authorize payments due to email domain operators to ensure

14   that attorneys actively working cases for consumer clients can continue to communicate effectively

15   with those clients; and (ii) make payroll of customer service personnel employees who remain on-site

16   to connect consumer clients to attorneys in the event a summons or complaint is filed against them.

17   The employees paid by way of this interim financing are also assisting the Trustee gather essential

18   information concerning the operations and assets of LPG so that the Trustee's investigation may

19   proceed and so that the Trustee can provide responses to the United States Trustee's informal

20   discovery requests.

21        Second, the Trustee is in active negotiations with two prospective buyers, each of which has

22   agreed to stringent consumer safeguards in connection with any sale of the Debtor's business.  Such

23   safeguards include, but are not limited to, compliance with the Credit Repair Organizations Act, the

24   Telemarketing Sales Rule and other applicable federal statutes.  The prospective buyers have each

25   agreed to provide Trustee with full audit rights and to the pay for the services of a Court-appointed

26   monitor.  The Trustee – based on comments concerning prospective purchasers made by the United

27   States Trustee – is also conducting a full investigation into the practices of said prospective purchasers

28   to ensure their existing operations comply with applicable state and federal statute.  In connection

with any sale, the Trustee intends to comply with the ABA's Model Rule 1.17 governing the sale of law firms, to which each of the prospective purchasers has agreed.  Trustee currently anticipates that an order shortening time on a sale motion will be filed by the end of next week.

Third, the Trustee and his counsel have actively interviewed multiple attorneys currently providing legal services – in active litigation – to nearly one-third of the enrolled consumer clients of LPG.  All information obtained from these interviews indicates that attorneys continue to provide valuable legal services to LPG's consumer clients and that termination of LPG's business absent an orderly sale to an ethical operator would be antithetical to the Trustee's highest priority: protection of LPG's consumer clients.

Dated:  June 23, 2023                    Respectfully submitted,

                                         DINSMORE & SHOHL LLP

                                         By: /s/ Jonathan Serrano
                                              Christopher B. Ghio
                                              Christopher Celentino
                                              Jonathan Serrano
                                              Proposed Special Counsel to
                                              Richard A. Marshack, Chapter 11 Trustee

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

Dinsmore & Shohl LLP
550 S. Hope Street, Suite 1765
Los Angeles, California 90071

A true and correct copy of the foregoing document entitled (*specify*): **Status Conference Report** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **June 23, 2023**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) **June 23, 2023**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **June 23, 2023**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☒ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| June 23, 2023 | Katrice Ortiz | /s/ Katrice Ortiz |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

**In re The Litigation Practice Group, P.C.**
**U.S.B.C., Central District of California, Santa Ana**
**Case No. 8:23-bk-105701-SC**

## I.  SERVED ELECTRONICALLY VIA NEF:

- **Eric Bensamochan:** eric@eblawfirm.us, G63723@notify.cincompass.com
- **Ronald K Brown:** ron@rkbrownlaw.com
- **Christopher Celentino:** christopher.celentino@dinsmore.com, caron.burke@dinsmore.com
- **Shawn M Christianson:** cmcintire@buchalter.com, schristianson@buchalter.com
- **Randall Baldwin Clark** : rbc@randallbclark.com
- **Leslie A Cohen:** leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com;clare@lesliecohenlaw.com
- **Christopher Ghio:** christopher.ghio@dinsmore.com
- **Richard H Golubow:** rgolubow@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com
- **D Edward Hays:** ehays@marshackhays.com, ehays@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@ecf.courtdrive.com
- **Alan Craig Hochheiser:** ahochheiser@mauricewutscher.com, arodriguez@mauricewutscher.com
- **Garrick A Hollander:** ghollander@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com
- **Joon M Khang:** joon@khanglaw.com
- **Ira David Kharasch:** ikharasch@pszjlaw.com
- **David S Kupetz:** David.Kupetz@lockelord.com, mylene.ruiz@lockelord.com
- **Christopher J Langley:** chris@slclawoffice.com, omar@slclawoffice.com;langleycr75251@notify.bestcase.com;ecf123@casedriver.com
- **Daniel A Lev:** daniel.lev@gmlaw.com, cheryl.caldwell@gmlaw.com;dlev@ecf.courtdrive.com
- **Michael D Lieberman:** mlieberman@lipsonneilson.com
- **Richard A Marshack (TR):** pkraus@marshackhays.com, rmarshack@iq7technology.com;ecf.alert+Marshack@titlexi.com
- **Laila Masud:** lmasud@marshackhays.com, lmasud@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com
- **Kenneth Misken:** Kenneth.M.Misken@usdoj.gov
- **Byron Z Moldo:** bmoldo@ecjlaw.com, amatsuoka@ecjlaw.com,dperez@ecjlaw.com
- **Alan I Nahmias:** anahmias@mbn.law, jdale@mbnlawyers.com
- **Victoria Newmark:** vnewmark@pszjlaw.com
- **Queenie K Ng:** queenie.k.ng@usdoj.gov
- **Teri T Pham:** tpham@enensteinlaw.com, 3135.002@enensteinlaw.com
- **Douglas A Plazak:** dplazak@rhlaw.com
- **Ronald N Richards:** ron@ronaldrichards.com, 7206828420@filings.docketbird.com
- **Gregory M Salvato:** gsalvato@salvatoboufadel.com, calendar@salvatolawoffices.com;jboufadel@salvatoboufadel.com;gsalvato@ecf.inforuptcy.com
- **Olivia Scott:** olivia.scott3@bclplaw.com
- **Jonathan Serrano:** jonathan.serrano@dinsmore.com
- **Paul R Shankman:** PShankman@fortislaw.com, info@fortislaw.com
- **Leslie Skorheim:** leslie.skorheim@usdoj.gov
- **Andrew Still:** astill@swlaw.com, kcollins@swlaw.com
- **United States Trustee (SA):** ustpregion16.sa.ecf@usdoj.gov
- **Sharon Z. Weiss:** sharon.weiss@bclplaw.com, raul.morales@bclplaw.com,REC_KM_ECF_SMO@bclplaw.com
- **Johnny White:** JWhite@wrslawyers.com, jlee@wrslawyers.com;eweiman@wrslawyers.com

**B.**    <u>**SERVED VIA REGULAR U.S. MAIL:**</u>

N/A

**III.**    <u>**SERVED VIA OVERNIGHT MAIL (FED EX):**</u>

<u>**United States Bankruptcy Court**</u>

Honorable Scott Clarkson
United States Bankruptcy Court
Central District of California
411 West Fourth Street, Suite 5130 / Courtroom 5C
Santa Ana, California 92701