FILED

MAY 25 2023

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY:_____ Deputy Clerk

1  Christopher B. Ghio (State Bar No. 259094)
   Christopher Celentino (State Bar No. 131688)
2  Jeremy B. Freedman (State Bare No. 308752)
   **DINSMORE & SHOHL LLP**
3  655 West Broadway, Suite 800
   San Diego, CA 92101
4  Telephone: 619.400.0500
   Facsimile: 619.400.0501
5  christopher.ghio@dinsmore.com
   christopher.celentino@dinsmore.com
6  Jeremy.freedman@dinsmore.com

7  Proposed Special Counsel to Richard A. Marshack,
   Chapter 11 Trustee for the Bankruptcy Estate of
8  The Litigation Practice Group P.C.

9

10                    **UNITED STATES BANKRUPTCY COURT**

11                    **CENTRAL DISTRICT OF CALIFORNIA**

12                              **SANTA ANA DIVISION**

13  In re:                              Case No. 8:23-bk-10571-SC

14  THE LITIGATION PRACTICE GROUP P.C.,  Chapter 11

15      Debtor.                          Adv. Proc. No. _____

16  _____     **COMPLAINT FOR:**

17  RICHARD A. MARSHACK,                 **(1) INJUNCTIVE RELIEF;**

18  Chapter 11 Trustee,                  **(2) AVOIDANCE, RECOVERY, AND
                                          PRESERVATION OF TWO-YEAR
19          Plaintiff,                    ACTUAL FRAUDULENT TRANSFERS;**

20      v.                               **(3) AVOIDANCE, RECOVERY, AND
                                          PRESERVATION OF TWO-YEAR
21  TONY DIAB, an individual; DANIEL S.   CONSTRUCTIVE FRAUDULENT
    MARCH, an individual; ROSA BIANCA     TRANSFERS;**
22  LOLI, an individual; LISA COHEN, an
    individual; WILLIAM TAYLOR CARSS, an **(4) AVOIDANCE, RECOVERY, AND
23  individual; ENG TANG, an individual;   PRESERVATION OF FOUR-YEAR
    MARIA EEYA TAN, an individual; JAKE    ACTUAL FRAUDULENT TRANSFERS;**
24  AKERS, an individual; HAN TRINH, an
    individual; JAYDE TRINH, an individual; **(5) AVOIDANCE, RECOVERY, AND
25  WES THOMAS, an individual; SCOTT       PRESERVATION OF FOUR-YEAR
    JAMES EADIE, an individual; JIMMY      CONSTRUCTIVE FRAUDULENT
26  CHHOR, an individual; DONGLIANG        TRANSFERS; AND**
    JIANG, an individual; OAKSTONE LAW
27  GROUP PC; GREYSON LAW CENTER PC;      **(6) TURNOVER.**
    PHOENIX LAW GROUP, INC.; MAVERICK
28  MANAGEMENT, LLC; LGS HOLDCO,          Judge:    Hon. Scott C. Clarkson
    LLC; CONSUMER LEGAL GROUP, P.C.;

#30604840v2                                    1

1
2
3
4
5
6
7
8

VULCAN CONSULTING GROUP LLC;
B.A.T. INC. d/b/a COAST PROCESSING;
PRIME LOGIX, LLC; TERACEL
BLOCKCHAIN FUND II LLC; EPPS;
EQUIPAY; AUTHORIZE.NET; WORLD
GLOBAL; OPTIMUMBANK HOLDINGS,
INC. d/b/a OPTIMUM BANK; MARICH
BEIN, LLC; BANKUNITED, N.A.;
REVOLV3, INC.; FIDELITY NATIONAL
INFORMATION SERVICES, INC. d/b/a FIS;
WORLDPAY, INC.; WORLDPAY GROUP;
MERIT FUND, LLC; GUARDIAN; THE
UNITED STATES POSTAL SERVICE; and
DOES 1 through 100, inclusive,

Defendants.

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

2

#30604840v2

1    For his *Complaint for (1) Injunctive Relief; (2) Avoidance, Recovery, and Preservation of*

2  *Two-Year Actual Fraudulent Transfers; (3) Avoidance, Recovery, and Preservation of Two-Year*

3  *Constructive Fraudulent Transfers; (4) Avoidance, Recovery, and Preservation of Four-Year Actual*

4  *Fraudulent Transfers; (5) Avoidance, Recovery, and Preservation of Four-Year Constructive*

5  *Fraudulent Transfers; and (6) Turnover* (the "Complaint"), plaintiff Richard A. Marshack, the

6  Chapter 11 Trustee (the "Trustee" or "Plaintiff") for the bankruptcy estate (the "Estate") of debtor

7  The Litigation Practice Group P.C. (the "Debtor" or "LPG") in the above-captioned bankruptcy case

8  (the "Bankruptcy Case"), alleges and avers as follows:

9    **STATEMENT OF JURISDICTION, NATURE OF PROCEEDING, AND VENUE**

10    1.    This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 157(b)(2)(A),

11  (E), (H) and (O), 1334(b), and General Order No. 13-05 of the District Court for the Central

12  District of California because this is a core proceeding arising in and/or related to the Bankruptcy

13  Case, which is a case under chapter 11 of title 11 of the United States Code (the "Bankruptcy

14  Code"), and which is pending in the United States Bankruptcy Court for the Central District of

15  California, Santa Ana Division (the "Court"). Regardless of whether this proceeding is core, non-

16  core, or otherwise, the Plaintiff consents to the entry of a final order and judgment by the

17  Bankruptcy Court. The Defendant is hereby notified that Rule 7008 of the Federal Rules of

18  Bankruptcy Procedure requires defendants to plead whether consent is given to the entry of a final

19  order and judgment by the bankruptcy court. Venue of this adversary proceeding properly lies in

20  this judicial district pursuant to 28 U.S.C. § 1409(a) because this proceeding is related to the Debtor's

21  pending Bankruptcy Case.

22    **THE PARTIES**

23    2.    Debtor LPG is, and at all material times was, a professional corporation organized,

24  existing, and in good standing under the laws of the State of California, with its principal place of

25  business in Tustin, California.

26    3.    Defendant Tony Diab ("Diab") is, and at all material times was, an individual

27  residing in the State of California.

28    4.    Defendant Daniel S. March ("March") is, and at all material times was, an individual

3

#30604840v2

1   residing in the State of California.

2          5.     Defendant Lisa Cohen is, and at all material times was, an individual residing in the

3   State of California.

4          6.     Defendant Eng Taing is, and at all material times was, an individual residing in the

5   State of California.

6          7.     Defendant Maria Eeya Tan is, and at all material times was, an individual residing in

7   the State of California.

8          8.     Defendant Jake Akers is, and at all material times was, an individual residing in the

9   State of California.

10         9.     Defendant Han Trinh is, and at all material times was, an individual residing in the

11   State of California.

12         10.    Defendant Jayde Trinh is, and at all material times was, an individual residing in the

13   State of California.

14         11.    Defendant Wes Thomas is, and at all material times was, an individual residing in

15   the State of California.

16         12.    Defendant William Taylor "Ty" Carrs is, and at all material times was, an individual

17   residing in the State of California.

18         13.    Defendant Scott James Eadie is, and at all material times was, an individual residing

19   in the State of California.

20         14.    Defendant Jimmy Chhor is, and at all material times was, an individual residing in

21   the State of California.

22         15.    Defendant Dongliang Jiang is, and at all material times was, an individual residing

23   in the State of California.

24         16.    Defendant Rosa Loli a.k.a. Rosa Bianca Loli a.k.a. Bianca Loli is, and at all material

25   times was, an individual residing in the State of California.

26         17.    Defendant Oakstone Law Group PC ("Oakstone") is, and at all material times was,

27   a professional corporation organized, existing, and in good standing under the laws of the State of

28   California, with its principal place of business in La Jolla, California.

4

18.     Defendant Greyson Law Center PC ("Greyson") is, and at all material times was, a professional corporation organized, existing, and in good standing under the laws of the State of California, with its principal place of business in Costa Mesa, California.

19.     Defendant Phoenix Law Group, Inc. ("Phoenix") is, and at all material times was, a corporation organized, existing, and in good standing under the laws of the State of California, with its principal place of business in Encino, California

20.     Defendant LGS Holdco, LLC is, and at all material times was, a limited liability corporation organized, existing, and in good standing under the laws of the State of Delaware.

21.     Defendant Consumer Legal Group, P.C. ("CLG") is, and at all material times was, a professional corporation organized, existing, and in good standing under the laws of the State of California

22.     Defendant Maverick Management LLC ("Maverick") is, and at all material times was, a reserved name for a limited liability corporation in the State of California.

23.     Defendant Teracel Blockchain Fund II LLC ("Teracel") is, and at all material times was, a limited liability corporation organized, existing, and in good standing under the laws of the State of Delaware.

24.     Defendant Vulcan Consulting Group LLC ("Vulcan") is, and at all material times was, a limited liability corporation organized, existing, and in good standing under the laws of the State of California, with its principal place of business in Newport Coast, California.

25.     Defendant B.A.T. Inc. d/b/a Coast Processing ("Coast Processing") is, and at all material times was, a corporation organized, existing, and in good standing under the laws of the State of California, with its principal place of business in Riverside, California.

26.     Defendant Prime Logix, LLC ("Prime Logix") is, and at all material times was, a limited liability corporation organized, existing, and in good standing under the laws of the State of California, with its principal place of business in Long Beach, California.

27.     Defendant EPPS is, and at all material times was, a corporation organized, existing, and in good standing under the laws of the State of California.

28.     Defendant EquiPay, LLC ("EquiPay") is an ACH processor.

5

#30604840v2

29.    Defendant Authorize.net ("Authorize.net") is a subsidiary of Visa, Inc.

30.    Defendant World Global is an ACH processor.

31.    Defendant Gallant Law Group, P.C., is and at all material times was, a professional corporation organized, existing and in good standing under the laws of the State of Pennsylvania.

32.    Defendant Merit Fund LLC ("Merit Fund") is, and at all material times was, a limited liability corporation organized, existing, and in good standing under the laws of the State of California, with its principal place of business in Torrance, California.

33.    Defendant OptimumBank Holdings, Inc. d/b/a Optimum Bank ("Optimum Bank") is, and at all material times was, a bank holding company, with its principal place of business in Fort Lauderdale, Florida.

34.    Defendant Marich Bein, LLC ("Marich Bein") is, and at all material times was, a limited liability corporation organized, existing, and in good standing under the laws of the State of New York.

35.    Defendant BankUnited, N.A., is, and at all material times was, a financial institution insured by the FDIC with its principal place of business in Miami Lakes, Florida.

36.    Defendant Revolv3 Inc. ("Revolv3") is, and at all material times was, a limited liability corporation organized, existing, and in good standing under the laws of the State of Delaware, with its principal place of business in Laguna Beach, California.

37.    Defendant Fidelity National Information Services, Inc. d/b/a FIS, including but not limited to its subsidiaries Worldpay, Inc., Worldpay Group or any other subsidiaries providing ACH processing services ("FIS")

38.    Defendant Guardian Processing, LLC ("Guardian") is, and at all material times was, a limited liability corporation organized, existing, and in good standing under the laws of the State of Wyoming, with its principal place of business in Sheridan, Wyoming.

39.    Defendant United States Postal Service is an at all material times was, an entity organized and existing under the laws (and constitution) of the United States of America.

/ / /

/ / /

#30604840v2

**GENERAL ALLEGATIONS**

**A.    The Bankruptcy Case**

40.    On March 20, 2023 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, commencing the Bankruptcy Case.

41.    After the Office of the United States Trustee (the "UST") filed the *Motion by United States Trustee to Dismiss or Convert Case Pursuant to 11 U.S.C. § 1112(b)* [Bankr. Docket No. 21] and creditors Debt Validation Fund II, LLC; MC DVI Fund 1, LLC; and MC DVI Fund 2, LLC filed the *Motion by DVF and MC DVI to Dismiss Chapter 11 Case Pursuant to 11 U.S.C. §§ 105, 305, 349, & 1112, or in the Alternative Convert This Case to Chapter 7 or Appoint a Trustee* [Bankr. Docket No. 44], the Court entered the *Order Directing Unites States Trustee to Appoint Chapter 11 Trustee* [Bankr. Docket No. 58] on May 4, 2021, thereby granting the UST's motion and directing the UST to appoint a Chapter 11 Trustee in the Bankruptcy Case.

42.    Pursuant to the *Acceptance of Appointment as Chapter 11 Trustee* [Bankr. Docket No. 63; the *Order Approving Appointment* is Order is Docket No. 65], on May 8, 2023, the Plaintiff accepted his appointment as the Chapter 11 Trustee in the Bankruptcy Case, and he continues to serve in this capacity at this time. The Plaintiff was not appointed until after events of the case and, therefore, bases these allegations on information and belief.

43.    The Plaintiff brings this action solely in his capacity as the Chapter 11 Trustee for the benefit of the Debtor's Estate and its creditors.

**B.    LPG's Ownership and Management**

44.    After being disbarred in both California and Nevada for forging a judges signature and stealing large amounts of client funds, Diab transferred his existing debt resolution practice to LPG. LPG is a law firm that provides consumer debt resolution. LPG services more than 50,000 customers across the United States, with annual revenue estimated to total $150,000,000 in 2022.

45.    Despite having been disbarred, Diab has controlled and operated LPG since its inception. However, Diab has endeavored to conceal his control of LPG. For example, Diab requires LPG's employees to call him "Admin," and the name plate on his desk reads, "I don't work here."

46.    To pull this off, Diab rents March's law license. March masquerades, at times, as the

7

1  managing partner of LPG but exercises no actual management or control. In fact, Diab sometimes

2  impersonates March and regularly signs March's signature on contracts. LPG's primary DocuSign

3  account goes to Diab's email address, admin@lpglaw.com, where Diab signs contracts as Daniel

4  March. For use of his law license, March receives an annual salary of $600,000 in addition to

5  irregular bonuses.

6      47.    March's predecessor at LPG was John Thompson. Thompson was the original sole

7  shareholder of LPG from February 2019 to November 2019. But he conveyed interest in LPG to

8  March in November 2019 due to concerns about his and LPG's potential liability. Diab has

9  impersonated Thompson on many matters representing clients in an attorney capacity. One such

10  impersonation was in signing that certain Service Application and Service Agreement, submitted by

11  LPG to Credit Reporting Services, LLC.

12      **C.**    **LPG's Business Structure**

13      48.    Historically, LPG had a business partner called B.A.T. Inc. d/b/a Coast Processing

14  ("Coast Processing"), which was owned by Brian Real, Arash Asante Bayrooti, and Diab. Coast

15  Processing was the primary entity through which LPG ran its marketing and client development

16  operations. In 2021, LPG purchased and assumed the primary business operations of Coast

17  Processing, including Coast Processing's contracts with other marketing affiliates.

18      49.    These marketing affiliates refer clients to LPG. The marketing affiliates locate clients

19  who were victims of predatory lending or who are subject to claims for large debt that are not legally

20  valid under applicable law. After taking on these clients, LPG pays the marketing affiliates a

21  percentage of the fees earned through the debt resolution process. Clients pay fees to LPG over a

22  period of time, ranging from 18 to 30 months, through monthly debits from their bank accounts.

23  The monthly debits are controlled by LPG. Each set of payments due by a client is referred to as a

24  "file."

25      50.    Once a new client has signed up, executed the retainer and payment plan contract,

26  and provided bank ACH information, LPG is responsible for servicing the client file. To this end,

27  LPG utilized software such as DebtPayPro ("DPP") and, more recently, cobbled together and less

28  efficient proprietary software such as LUNA to automate the dispute process, facilitate client

8

#30604840v2

1  communications, and track payment information. For instance, the correspondence sent on behalf

2  of clients to creditors, collection agencies, and/or credit bureaus are automated and generic templates

3  sent via U.S. Mail, facsimile, and/or email. Some cases result in the disputed debt being corrected

4  on the client's credit report, some result in successful challenges to consumer protection laws, and

5  others result in debt settlement, which the client is responsible to pay in addition to the payment

6  plan. In limited instances, LPG will file a lawsuit in an effort to eliminate a disputed debt.

7      51.    Because LPG and its marketing affiliates receive only incremental payments over a

8  period of time, they sell the future cash flow at a discounted rate. The factoring companies that buy

9  the receivables on account of these files receive a return equal to the difference between the amount

10  the clients owe on the file and the amount the buyer paid for the file.

11      52.    The largest factoring company to have purchased accounts receivable on account of

12  LPG's files is Validation Partners LLC ("Validation Partners"). Between August 30, 2021 and

13  August 17, 2022, Validation Partners spent $66,000,000 to purchase accounts receivable from LPG

14  and 58 of LPG's marketing affiliates. In total, Validation Partners purchased over 40,000 accounts

15  from LPG and its affiliates with a total value greater than $400,000,000.

16      **D.    Diab's Scheme**

17      53.    After selling the aforementioned receivables to Validation Partners and other

18  factoring companies, Diab caused LPG to sell receivables on 719 files for $2,070,000 to Teracel, an

19  entity owned and operated by Touzi Capital, which is headed by Eng Taing, one of Validation

20  Partner's investors. Out of the 719 files purchased by Teracel, 643 of those files had been already

21  purchased by Validation Partners. Despite LPG never receiving a payment from Teracel for the

22  purchase of these files, account receivables on behalf of those files are being paid out directly to

23  Teracel.

24      54.    All of these files were resold without Validation Partners' knowledge or consent.

25  Yet, thousands of files have been doubly sold in this manner, effectuating Diab and Eng Taing's

26  Ponzi scheme to defraud creditors.

27  / / /

28  / / /

9

E.    **LPG's Prepetition Creditors**

55.    In addition to the financing provided by factoring companies, LPG has obtained financing directly from other sources. Both of these sources of financing, having lent hundreds of millions of dollars to LPG, are among the creditors scheduled by the Debtor.

56.    On the Debtor's Schedule D [Bankr. Docket No. 33], the Debtor listed three secured creditors—(a) Diverse Capital LLC with a claim in the amount of $1,224,810, (b) City Capital NY with a claim in the amount of $2,950,000, and (c) Fundura Capital Group with a claim in the amount of $2,100,000 (together, the "Secured Creditors")—with secured claims totaling $6,274,810.

57.    In addition, on the Debtor's Schedule E/F [Bankr. Docket No. 33], the Debtor scheduled 11 unsecured creditors with priority unsecured claims totaling $374,060.04. These priority unsecured creditors include Indiana Dept of Revenue, Dept of Labor and Industries, Arizona Dept of Economic Security, Arkansas Dept of Finance & Admin, California Franchise Tax Board, Georgia Dept of Labor, Internal Revenue Service, Mississippi Dept of Revenue, Nevada Dept of Taxation, Utah State Tax Commission, and Wisconsin Dept of Revenue (collectively, the "Priority Unsecured Creditors").

58.    Another group of creditors that the Debtor listed on its Schedule E/F [Bankr. Docket No. 33] are nonpriority unsecured creditors. Those 58 creditors have scheduled claims totaling $141,439,158.05 and include Ajilon; Anthem Blue Cross; Azevedo Solutions Groups, Inc; Carolina Technologies & Consulting Invoice; Collaboration Advisors; Credit Reporting Service Inc; CT Corporation – Inv.; Debt Pay Pro; Document Fulfillment Services; EnergyCare, LLC; Exela Enterprise Solutions; First Legal Network, LLC; GHA Technologies Inc; Harrington Electric Inc; Imagine Reporting; Juize, Inc; Krisp Technologies, Inc; Liberty Mutual; Marc Lemauviel – Allegra; MarkSYS Holdings, LLC; Netsuite-Oracle; Pitney Bowes; Rapid Credit Inc; SBS Leasing A Program of De Lage Landen; Security Solutions; Sharp Business Systems; Streamline Performance Inc; Thomson Reuters; Twilio, Inc; Nationwide Appearance Attorneys; Executive Center LLC; Outsource Accelerator Ltd; TaskUs Holdings, Inc.; Marich Bein LLC; Validation Partners; MC DVI Fund 1, LLC; MC DVI Fund 2, LLC; Debt Validation Fund II, LLC; Tustin Executive Center; LexisNexus; JP Morgan Chase; Business Centers of America; Michael Schwartz; Anibal Colon Jr;

10

Kathleen Lacey; David Ulery; Kimberly Birdsong; Kevin Carpenter; Karen Suell; Gloria Eaton; Carolyn Beech; Debra Price; Kenneth Topp; Darcey Williamson, Trustee; James Hammett; Johnny Rizo; Beverly Graham; Kathleen Scarlett; and Geneve and Myranda Sheffield (collectively, the "Nonpriority Unsecured Creditors" and, together with the Secured Creditors and Priority Unsecured Creditors, the "Prepetition Creditors").

### F.    Transfers to Alter Egos

59.    In addition to diverting millions of dollars to third parties, Diab has transferred LPG's entire business to new law firms free of LPG's obligations to its creditors. These new law firms are alter egos of the Debtor and include Oakstone, Phoenix, Greyson, Gallant, CLG, and Maverick (collectively, the "Alter Egos"). As he did with LPG, Diab controls and operates the Alter Egos, despite them being nominally owned by licensed attorneys.

60.    In an effort to make LPG appear insolvent, in February 2023, Diab purchased a shell corporation and the website domain phoenixlaw.co and registered the business with the Better Business Bureau. Similarly, around the same time, Diab set up Oakstone, Greyson, Gallant and CLG to run LPG's business through these new entities. Diab's actions are contrary his testimony at the 341(a) meeting of creditors where Diab testified that LPG was not able to afford to service the same clients through LPG.

61.    At or around the Petition Date, Diab admitted that LPG had transferred approximately 15,000 client files to OakStone (approximately $4.2 million in revenue), 12,000 files to CLG (approximately $3.3 million in revenue), and the remaining files, approximated at slightly less than 40,000, to Phoenix (approximately $11.2 million in revenue). Neither LPG nor Diab obtained consent prior to fraudulently transferring the client files to these alter egos. LPG does not have an executed assignment contract for the transferred client files.

62.    Diab, Ms. Cohen, Ms. Loli and the same group of partners running LPG are now, post-petition, syphoning off money through these new Alter Egos, using LPG's ACH processing accounts at Revolv3 that identify "Tony Diab" as the user of the account and LPG as the merchant account holder. LPG's Revolv3 account indicates that, from March 28, 2023 through May 19, 2023, Diab has netted between $6 million and $9.3 million dollars and transferred such funds to LPG's

#30604840v2

1  Alter Egos including, but not limited to, Prime Logix and Vulcan from this one ACH processing

2  company alone.

3      63.    Further, Diab has used other ACH processing companies including Guardian

4  Processing, among others, to process and transfer property of the Estate through Diab's network of

5  Alter Egos. With this money, Diab has recently made payroll from an account held by Vulcan.

6  Clients who have requested a refund after their file was transferred to Phoenix were refunded by an

7  account held by Prime Logix. Diab is using LPG's Alter Egos to re-direct LPG funds for his own

8  personal gain and avoid the protections afforded creditors and the Estate under the Bankruptcy Code.

9  Collectively, the files, accounts receivable, and funds transferred to the Alter Egos, are referred to

10  herein as the "Transfers."

11      **G.    Diab's Control over LPG's Payment Processing**

12      64.    LPG's monthly revenue from client files is primarily received via ACH payments.

13  In order to process ACH payments, LPG is required to enlist the services of ACH payment

14  processing companies who handle high risk transactions. In this regard, Diab has enlisted numerous

15  ACH processing companies[1] in order to easily switch between different vendors and quickly transfer

16  millions of dollars of LPG funds to entities he controls, including but not limited to Vulcan, Prime

17  Logix, and/or Coast Processing, generally in less than three days from ACH pull, without oversight

18  and detection and to avoid payment disputes and complications with the vendor itself. Notably, LPG

19  does not have service contracts with EPPS or Marich Bein, among potential others who have

20  processed the majority of LPG's ACH payments. The side deals between Diab and Marich Bein,

21  created to avoid a lawsuit against LPG, evidences Diab's continued influence and control over the

22  companies processing LPG and its Alter Egos' ACH EFTs—property of the Estate.

23      65.    LPG's monthly gross revenue from receipt of client payments has, pre-petition,

24  ranged between $8.4 million to $11.2 million per month from May 2022 through September 2022.

25

26  [1]    The ACH processing companies LPG uses and which Diab controls include, but are not
27  limited to, EPPS; EquiPay; Merit Fund; Authorize.net; World Global; Optimum Bank;
    BankUnited; Marich Bein; Revolv3; FIS; Guardian; and/or any entity associated with the ACH
28  identification transaction "LPG 949-226-6262 #5 2363 RT 9 TOMS RIVER NJ 0875" or any such
    substantially similar ACH identification transaction.

#30604840v2

1  It is estimated that the current monthly revenue from client accounts that are serviced exceed $15

2  million dollars per month, using a conservative growth model and based on the number of estimated

3  client files whose ACH EFTs are successfully processed. Notwithstanding LPG's substantial

4  monthly revenue and relatively low pre-petition monthly expenses (ranging between $2.3 to $3.4

5  million at the end of 2022), LPG was not accumulating any cash on hand and claimed to have only

6  $4,500 in its bank account on the Petition Date.

7  **FIRST CLAIM FOR RELIEF**

8  **Injunctive Relief**

9  **Against All Defendants**

10       66.    The Plaintiff realleges and incorporates herein by reference each and every allegation

11  contained in paragraphs 1 through 65 as though set forth in full.

12       67.    The Plaintiff requests that this Court enjoin the Defendants and each of them from

13  interfering with any ACH Transfer being executed pursuant to documents authorizing such transfers

14  to be executed in favor of LPG.

15       68.    The Plaintiff also requests that this Court enter a preliminary injunction prohibiting

16  interference with any ACH Transfer being executed pursuant to documents authorizing such

17  transfers to be executed in favor of LPG.

18  **SECOND CLAIM FOR RELIEF**

19  **Avoidance, Recovery, and Preservation of Two-Year Actual Fraudulent Transfers**

20  **Against All Defendants**

21  **[11 U.S.C. §§ 548(a)(1)(A), 550, and 551]**

22       69.    The Plaintiff realleges and incorporates herein by reference each and every allegation

23  contained in paragraphs 1 through 65 as though set forth in full.

24       70.    On or after the date that such Transfers were made, entities to which the Debtor was

25  indebted include the Prepetition Creditors.

26       71.    The source of the files, accounts receivable, and funds that are the subject of the

27  Transfers are that of the Debtor.

28       72.    Diab retained possession and control of the files, accounts receivable, and funds

13

#30604840v2

1 transferred to the Alter Egos or elsewhere after the Transfers.

2      73.    By creating several entities including the Alter Egos and transferring files, accounts

3 receivable, and funds to such entities, Diab has endeavored to conceal the files, accounts receivable,

4 funds, and Transfers.

5      74.    Diab made the Transfers after LPG faced multiple lawsuits including those initiated

6 by factoring companies. Validation Partners initiated a lawsuit on September 20, 2022 (Case No.

7 30-2022-01281911-CU-BC-CXC) in the Superior Court of California, County of Orange. DVF II

8 also filed a lawsuit on January 23, 2023 (Case No. 30-2023-01303355-CU-CO-CXC) in the Superior

9 Court of California, County of Orange. Notably, the lawsuits sought the appointment of a receiver

10 to perform many of the same duties of the Trustee and obtain information, an accounting of LPG

11 funds, assets and accounts receivables and maintain the status quo, among other relief, pending the

12 outcome of the litigation.

13      75.    The files, accounts receivable, and funds that were subject to the Transfers constitute

14 substantially all of the Debtor's non-exempt property. In other words, the Transfers were of

15 substantially all of the Debtor's assets.

16      76.    The Transfers were made by Diab to insiders, Alter Egos of the Debtor that are under

17 Diab's control.

18      77.    In addition, the Debtor received little to no consideration for the Transfers.

19      78.    The Transfers left the Debtor insolvent. The Debtor scheduled $141,813,219.09 in

20 total debt to Prepetition Creditors. However, without the files, accounts receivable, and funds, the

21 Transfers left the Debtor with approximately $12,186,500 in assets and no income stream.

22      79.    Thus, the Transfers were made with actual intent to hinder, delay, or defraud

23 creditors of the Debtor.

24      80.    The Transfers of the Debtor's files, accounts receivable, and funds occurred within

25 the two years prior to the Petition Date.

26      81.    Accordingly, the Transfers that Diab caused the Debtor to make should be avoided

27 as fraudulent under 11 U.S.C. § 548(a)(1)(A), and such property, or the value thereof, should be

28 recovered and preserved for the benefit of the Estate pursuant to 11 U.S.C. §§ 550 and 551.

#30604840v2

**SECOND CLAIM FOR RELIEF**

**Avoidance, Recovery, and Preservation of Two-Year Constructive Fraudulent Transfers**

**Against All Defendants**

**[11 U.S.C. §§ 548(a)(1)(B), 550, and 551]**

82.     The Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 65 as though set forth in full.

83.     At the time of the Transfers, the Debtor received less than reasonably equivalent value in exchange for the Transfers.

84.     In many cases, the Debtor received no consideration for the Transfers.

85.     The Transfers left the Debtor insolvent. The Debtor scheduled $141,813,219.09 in total debt to Prepetition Creditors. However, without the files, accounts receivable, and funds, the Transfers left the Debtor with approximately $12,186,500 in assets and no income stream; virtually none of those alleged $12,186,500 assets have been turned over to the Trustee despite repeated request for same.

86.     On or after the date that the Transfers were made, the Debtor was not paying debts to the Prepetition Creditors including Validation Partners and DVF II as they came due.

87.     Thus, at the time of the Transfers, or as a result thereof, the Debtor either:

    a.  was insolvent on the date the Transfers were made, or became insolvent was a result thereof;

    b.  was engaged or was about to engage in a transaction for which any property remaining with the Debtor was of unreasonably small capital; or

    c.  intended to incur, or believed that he would incur, debts beyond his ability to pay as such debts matured.

88.     The Transfers of the Debtor's files, accounts receivable, and funds occurred within the two years prior to the Petition Date.

89.     Accordingly, the Transfers that Diab caused the Debtor to make should be avoided as fraudulent under 11 U.S.C. § 548(a)(1)(B), and such property, or the value thereof, should be recovered and preserved for the benefit of the Estate pursuant to 11 U.S.C. §§ 550 and 551.

#30604840v2

**FOURTH CLAIM FOR RELIEF**

**Avoidance, Recovery, and Preservation of Four-Year Actual Fraudulent Transfers**

**Against All Defendants**

**[11 U.S.C. §§ 544(b), 550, and 551; CAL. CIV. CODE §§ 3439.04(a) and 3439.07]**

90.     The Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 65 as though set forth in full.

91.     On or after the date that such Transfers were made, entities to which the Debtor was indebted include the Prepetition Creditors.

92.     The source of the files, accounts receivable, and funds that are the subject of the Transfers are that of the Debtor.

93.     Diab retained possession and control of the files, accounts receivable, and funds transferred to the Alter Egos or elsewhere after the Transfers.

94.     By creating several entities including the Alter Egos and transferring files, accounts receivable, and funds to such entities, Diab has endeavored to conceal the files, accounts receivable, funds, and Transfers.

95.     Diab made the Transfers after LPG faced multiple lawsuits including those initiated by factoring companies. Validation Partners initiated a lawsuit on September 20, 2022 (Case No. 30-2022-01281911-CU-BC-CXC) in the Superior Court of California, County of Orange. DVF II also filed a lawsuit on January 23, 2023 (Case No. 30-2023-01303355-CU-CO-CXC) in the Superior Court of California, County of Orange. Notably, the lawsuits sought the appointment of a receiver to perform many of the same duties of the Trustee and obtain information, an accounting of LPG funds, assets and accounts receivables and maintain the status quo, among other relief, pending the outcome of the litigation.

96.     The files, accounts receivable, and funds that were subject to the Transfers constitute substantially all of the Debtor's non-exempt property. In other words, the Transfers were of substantially all of the Debtor's assets.

97.     The Transfers were made by Diab to insiders, Alter Egos of the Debtor that are under Diab's control.

#30604840v2

98.     In addition, the Debtor received little to no consideration for the Transfers.

99.     The Transfers left the Debtor insolvent. The Debtor scheduled $141,813,219.09 in total debt to Prepetition Creditors. However, without the files, accounts receivable, and funds, the Transfers left the Debtor with approximately $12,186,500 in assets and no income stream; virtually none of those alleged $12,186,500 assets have been turned over to the Trustee despite repeated request for same.

100.    As such, the Transfers left the Debtor with remaining assets that were unreasonably small in relation to the transaction.

101.    Further, the Debtor was insolvent at the time of the Transfers or became insolvent as a result of the Transfers – the exact aim of Diab's scheme to bankruptcy LPG in the event a receiver was appointed.

102.    On or after the date that such Transfers were made, the Debtor was not paying debts to the Prepetition Creditors, all of which arose before the Transfers were made, as they became due.

103.    Thus, the Transfers were made with actual intent to hinder, delay, or defraud creditors of the Debtor, as well as the duly appointed Receiver.

104.    Thus, at the time of the Transfers, without receiving reasonably equivalent value in exchange for the Transfers, the Debtor either:

    a.   was engaged or was about to engage in a transaction for which the remaining assets of the Debtor were unreasonably small in relation to the business or transaction; or

    b.   intended to incur, or believed or reasonably should have believed that the Debtor would incur, debts beyond the Debtor's ability to pay as they became due.

105.    The Transfers of the Debtor's files, accounts receivable, and funds occurred within the four years prior to the Petition Date.

106.    At all relevant times, the Transfers of the Debtor's files, accounts receivable, and funds are avoidable as fraudulent pursuant to 11 U.S.C. § 544(b) and CAL. CIV. CODE §§ 3439.04(a) and 3439.07 by one or more creditors who held and hold unsecured claims against the Debtor that were and are allowable against his Estate under 11 U.S.C. § 502 or that were not and are not allowable only under 11 U.S.C. § 502(e), including, without limitation, the Prepetition Creditors.

17

107.    Accordingly, the Transfers that Diab caused the Debtor to make should be avoided as fraudulent under 11 U.S.C. §§ 544(b) and CAL. CIV. CODE §§ 3439.04(a) and 3439.07, and such property, or the value thereof, should be recovered and preserved for the benefit of the Estate pursuant to 11 U.S.C. §§ 550 and 551 and CAL. CIV. CODE § 3439.07.

### FIFTH CLAIM FOR RELIEF

**Avoidance, Recovery, and Preservation of Four-Year Constructive Fraudulent Transfers Against All Defendants**

**[11 U.S.C. §§ 544(b), 550, and 551; CAL. CIV. CODE §§ 3439.05, and 3439.07]**

108.    The Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 65 as though set forth in full.

109.    At the time of the Transfers, the Debtor did not receive reasonably equivalent value in exchange for the Transfers.

110.    In many cases, the Debtor received no consideration for the Transfers.

111.    The Debtor became insolvent as a result of the Transfers. The Debtor scheduled $141,813,219.09 in total debt to Prepetition Creditors. However, without the files, accounts receivable, and funds, the Transfers left the Debtor with approximately $12,186,500 in assets and no income stream; virtually none of those alleged $12,186,500 assets have been turned over to the Trustee despite repeated request for same.

112.    The Transfers left the Debtor remaining assets that were unreasonably small in relation to the transaction.

113.    On or after the date that the Transfers were made, the Debtor was not paying debts to the Prepetition Creditors including Validation Partners and DVF II as they came due.

114.    At the time of the Transfers, Diab intended the Debtor to incur, or believed or reasonably should have believed that the Debtor would incur, debts beyond its ability to pay as they became due.

115.    Thus, at the time of the Transfers, or as a result thereof, the Debtor either:

a.    was insolvent on the date the Transfers were made, or became insolvent was a result thereof;

b.      was engaged or was about to engage in a transaction for which any property

remaining with the Debtor was of unreasonably small capital; or

c.      intended to incur, or believed that he would incur, debts beyond his ability

to pay as such debts matured.

116.    The Transfers of the Debtor's files, accounts receivable, and funds occurred within the four years prior to the Petition Date.

117.    At all relevant times, the Transfers of the Debtor's files, accounts receivable, and funds are avoidable as fraudulent pursuant to 11 U.S.C. § 544(b) and CAL. CIV. CODE §§ 3439.05 and 3439.07 by one or more creditors who held and hold unsecured claims against the Debtor that were and are allowable against his Estate under 11 U.S.C. § 502 or that were not and are not allowable only under 11 U.S.C. § 502(e), including, without limitation, the Prepetition Creditors.

118.    Accordingly, the Transfers that Diab caused the Debtor to make should be avoided as fraudulent under 11 U.S.C. §§ 544(b) and CAL. CIV. CODE §§ 3439.05 and 3439.07, and such property, or the value thereof, should be recovered and preserved for the benefit of the Estate pursuant to 11 U.S.C. §§ 550 and 551 and CAL. CIV. CODE § 3439.07.

## SIXTH CLAIM FOR RELIEF

### Turnover of Estate Property Against All Defendants

### [11 U.S.C. § 542]

119.    The Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 65 as though set forth in full.

120.    One or all of Diab and LPG's Alter Egos have possession or control over property of the Estate, including but not limited to the files, accounts receivable, and funds; including LPG's Merchant Account at Revolv3 where Diab has orechestrated the post-petition transfer of in excess of $6,000,000 of Estate Property to entities owned and controlled by Diab and his associates/co-conspirators. None of those approximately $6,000,000 in post-petition payment assets have been turned over to the Trustee despite repeated request for same.

121.    The files, accounts receivable, funds, and potentially other property are property of the Estate and are not of inconsequential value to the Estate.

19

#30604840v2

122.    The files, accounts receivable, and funds that are the subject of the Transfers are paramount to the operation of the Debtor and its ability to pay creditors.

123.    Accordingly, the Trustee is entitled to a judgment for turnover of the files, accounts receivable, and funds pursuant to 11 U.S.C. § 542.

## RESERVATION OF RIGHTS

124.    The Plaintiff reserves the right to bring all other claims or causes of action that the Plaintiff may have against any of the defendants, on any and all grounds, as allowed under the law or in equity, including but not limited to, those claims not known by the Trustee at this time but that he may discover during the pendency of this adversary proceeding.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff prays for a judgment as follows:

**On the First Claim for Relief:**

1.    <u>Control over ACH Transfers</u>: Entry of a preliminary injunction prohibiting interference with any ACH Transfer being executed pursuant to documents authorizing such transfers to be executed in favor of LPG as follows:

a.    <u>Covered Entities and Individuals</u>: The following entities and individuals, and anyone acting on their behalf: LPG, OakStone; Greyson; Phoenix; Maverick; LGS Holdco, LLC; CLG; Vulcan; Coast Processing; Prime Logix; Tony Diab; Rosa Loli aka Rosa Bianca Loli aka Bianca Loli; Lisa Cohen, Dan March, Ty Carss, and all other aliases, agents, or corporate entities affiliated with same shall, absent further order from this Court:

i.    <u>Enjoined Conduct re ACH Instructions</u>: No covered entity or individual shall initiate, cause to be initiated, or instruct any company or person that processes ACH transfers and/or their affiliated financial institution including EPPS; Equipay; Authorize.net; World Global; Optimum Bank; Marich Bein; BankUnited, N.A.; Revolv3; FIS; Guardian; and/or any entity associated with the ACH identification transaction "LPG 949-226-6262 #5 2363 RT 9 TOMS RIVER NJ 0875" or any such substantially similar ACH identification transaction, to execute any ACH EFT on any file, financial institution, or current or former client of LPG, to or for the benefit

20

#30604840v2

1    of LPG including but not limited to OakStone; Greyson; Phoenix; CLG; Maverick; Prime Logix;

2    and Vulcan without the express written authorization of Trustee;

3                ii.    Enjoined Conduct re Bank Accounts: No covered entity or individual

4    shall open, or cause to be opened, any account, whether business or personal, that can receive or

5    send money or anything of value, at any company including banking, financial, or similar institution

6    and/or receive, directly or indirectly, any funds drawn from ACH Transfers;

7          2.    Execution of ACH Transfers: Entry of a preliminary injunction prohibiting

8    interference with any ACH Transfer being executed pursuant to documents authorizing such

9    transfers to be executed in favor of LPG as follows:

10                a.    Covered Entities and Individuals: All companies capable of processing ACH

11    transfers including EPPS; Equipay; Authorize.net; World Global; Optimum Bank; Marich Bein;

12    BankUnited, N.A.; Revolv3; FIS; Guardian; and/or any entity associated with the ACH

13    identification transaction "LPG 949-226-6262 #5 2363 RT 9 TOMS RIVER NJ 0875," or any such

14    substantially similar ACH identification transaction, are enjoined absent further order of this court,

15    from:

16                i.    Enjoined Conduct re ACH Transfers: No covered entity or individual

17    shall initiate or receive funds from any ACH EFT on any file, financial institution, or current or

18    former client of LPG, to or for the benefit of LPG or any one or more of its alleged assignees or

19    transferees including, but not limited to, OakStone; Greyson; Phoenix; Maverick; Prime Logix

20    and/or CLG;

21                ii.    Injunction Mandating Turnover to Trustee: All covered entities or

22    individuals shall hold in trust any and all funds, receipts, and transfers related to any account, file,

23    or current or former client of LPG, or any one or more of its alter egos, including but not limited to

24    OakStone; Greyson; Phoenix; Maverick; LGS Holdco, LLC; CLG; Vulcan; Coast Processing; Prime

25    Logix; Tony Diab; Rosa Loli aka Rosa Bianca Loli aka Bianca Loli; Lisa Cohen and/or other aliases,

26    agents or corporate entities affiliated with same until expressly directed to release, wire or transfer

27    such funds by the Trustee and to a bank account whose information shall be provided with any such

28

21

#30604840v2

1  request; and, shall upon request by the Trustee provide an accounting of any and all such funds held

2  in trust to the Trustee upon written request within 10 days of said request;

3        b.      enjoining LPG, or any one or more of its alter egos, including but not limited

4  to OakStone; Greyson; Phoenix; Maverick; LGS Holdco, LLC; CLG; Vulcan; Coast Processing;

5  Prime Logix; Tony Diab; Rosa Loli aka Rosa Bianca Loli aka Bianca Loli; Lisa Cohen and/or other

6  corporate entities affiliated with same, from incurring, taking out, or pledging any receivables of

7  LPG or any one or more of its alter ego entities, including but not limited to, OakStone; Greyson;

8  Phoenix; Maverick; Prime Logix and/or CLG without seeking leave of court;

9        c.      enjoining LPG, or any one or more of its alter egos, including but not limited

10 to OakStone; Greyson; Phoenix; Maverick; LGS Holdco, LLC; CLG; Vulcan; Coast Processing;

11 Prime Logix; Tony Diab; Rosa Loli aka Rosa Bianca Loli aka Bianca Loli; Lisa Cohen and/or other

12 aliases, agents or corporate entities affiliated with same, from instructing any person and/or Client

13 to cancel and/or demand a refund from LPG; OakStone; Greyson; Phoenix; Maverick; LGS Holdco,

14 LLC and/or CLG;

15       d.      enjoining Bank of America from allowing any and all funds on behalf of

16 Prime Logix or Vulcan, including but not limited to account Nos. ending in xxx951 and xxx9021

17 and/or any other accounts to be withdrawn, wired, drawn against, moved, or otherwise transferred

18 without the express consent of the Trustee in writing and to a financial account identified by the

19 Trustee at the time the authorization is provided, and ordering Bank of America to hold in trust such

20 funds;

21       e.      enjoining all persons identified below from accessing or attempting to gain

22 access whether physically, remotely, electronically, or virtually to the following locations associated

23 with LPG, or any one or more of its alter egos, including but not limited to OakStone; Greyson;

24 Phoenix; Maverick; LGS Holdco, LLC; CLG; Vulcan; Coast Processing; Prime Logix; Tony Diab;

25 Rosa Loli aka Rosa Bianca Loli aka Bianca Loli; Lisa Cohen and/or aliases, agents or other

26 corporate entities affiliated with same: (1) 3343 Michelson Drive, Suite 400, Irvine, California

27 92612; (2) 17542 17th St Suite 100, Tustin, California 92780; (3) Luna's domain located on AWS;

28 (4) DPP Data or accounts; (5) Accounting Data and/or accounts on NetSuite, Quickbooks and

22

#30604840v2

1  Microsoft SharePoint, G-Suite or other permanent or cloud based systems; (6) ACH processing

2  accounts, whether individual, merchant or business, held at any ACH processing or affiliated

3  financial institution, including but not limited to EPPS; Equipay; Authorize.net; World Global;

4  Optimum Bank; Marich Bein; BankUnited, N.A.; Revolv3; FIS; Guardian; and/or any entity

5  associated with the ACH identification transaction "LPG 949-226-6262 #5 2363 RT 9 TOMS

6  RIVER NJ 0875", or any such substantially similar ACH identification transaction; (7) Vulcan

7  and/or PrimeLogix' financial accounts at Bank of America, including but not limited to Account

8  Nos. ending in xxx951 and xxx9021; and (8) the Email Data, as follows:

9          i) Tony Diab;

10          ii) Rosa Loli aka Rosa Bianca Loli aka Bianca Loli;

11          iii) Lisa Cohen;

12          iv) Daniel March;

13          v) Eng Taing;

14          vi) Maria Eeya Tan;

15          vii) Jake Akers;

16          viii) Han Trinh;

17          ix) Jayde Trinh;

18          x) Wes Thomas;

19          xi) William Taylor "Ty" Carrs;

20          x)  Scott James Eadie;

21          xi) Jimmy Chhor;

22          xii) Brad Lee; and

23          xiii) Dongliang Jiang.

24         f.    enjoining the United States Postal Service from processing any and all mail

25  directed to (1) LPG, 17542 17th St Suite 100, Tustin, California 92780; (2) OakStone, 888 Prospect

26  Street, Suite 200 La Jolla, California 92037; (3) Phoenix, 3343 Michelson Drive, Suite 400, Irvine,

27  California 92612 and/or P.O. Box 749, Millville, NJ 08332; (4) Primelogix, 3343 Michelson Drive,

28  Suite 400, Irvine, California 92612; (5) CLG, P.O. Box 412 Elmsford, NY 10523; and (6) Greyson,

#30604840v2

1   3343 Michelson Drive, Suite 400, Irvine, California 92612; and/or any other address associated with

2   such entities, and ordering the United States Postal Service to forward and re-direct such mail to an

3   address provided by the Trustee until such time as ordered by the Court.

4          **On the Second and Third Claims for Relief:**

5          3.    avoiding, recovering, and preserving the two-year transfers against all

6   defendants:

7          **On the Fourth and Fifth Claims for Relief:**

8          4.    avoiding, recovering, and preserving the four-year transfers against all

9   defendants:

10         **On the Sixth Claim for Relief:**

11         5.    ordering turnover to the Trustee of the following:

12                a.    Information regarding any and all persons who signed a Legal Services

13  Contract with LPG or whose file was purchased or otherwise transferred to LPG, or any one or more

14  of its alter egos, including but not limited to OakStone; Greyson; Phoenix; Maverick; LGS Holdco,

15  LLC; CLG; Vulcan; Coast Processing; Prime Logix; Tony Diab; Rosa Loli aka Rosa Bianca Loli

16  aka Bianca Loli; Lisa Cohen and/or other aliases, agents or corporate entities affiliated with same,

17  for which the client's file remains open and/or continues to make payments under an agreed upon

18  installment contract.

19                b.    All Client files, including but not limited to names, contact information, client

20  file management, communications, account information, letters, pleadings, communications,

21  payment history, financial account information, credit reports, executed legal services contracts,

22  ACH contracts, executed installment contracts, account balances, debts in dispute, payment history,

23  file status, settlements, debt invalidations and/or any other information created, managed and stored

24  electronically utilizing DPP software program's software license, key or account, that was opened

25  and is maintained and controlled by LPG, or any one or more of its alter egos, including but not

26  limited to OakStone; Greyson Phoenix; Maverick; LGS Holdco, LLC; CLG; Vulcan; Coast

27  Processing; Prime Logix; Tony Diab; Rosa Loli aka Rosa Bianca Loli aka Bianca Loli; Lisa Cohen

28  and/or other aliases, agents or corporate entities affiliated with same;

#30604840v2

1         c.     All administrative usernames and passwords that give the Trustee access to

2 any DPP account held, maintained or controlled by LPG, or any one or more of its alter egos,

3 including but not limited to OakStone; Greyson; Phoenix; Maverick; LGS Holdco, LLC; CLG;

4 Vulcan; Coast Processing; Prime Logix; Tony Diab; Rosa Loli aka Rosa Bianca Loli aka Bianca

5 Loli; Lisa Cohen and/or other aliases, agents or corporate entities affiliated with same;

6         d.     All Client files, including but not limited to names, contact information, client

7 file management, communications, account information, letters, pleadings, communications,

8 payment history, financial account information, credit reports, executed legal services contracts,

9 ACH contracts, executed installment contracts, account balances, debts in dispute, payment history,

10 file status, settlements, debt invalidations and/or any other information created, managed and stored

11 electronically utilizing proprietary software program "LUNA" hosted on AWS and located at the

12 current domain "lunapp.com" that is maintained and controlled by LPG, or any one or more of its

13 alter egos, including but not limited to OakStone; Greyson; Phoenix; Maverick; LGS Holdco, LLC;

14 CLG; Vulcan; Coast Processing; Prime Logix; Tony Diab; Rosa Loli aka Rosa Bianca Loli aka

15 Bianca Loli; Lisa Cohen and/or other aliases, agents or corporate entities affiliated with same;

16         e.     All administrative usernames and passwords that give the Trustee access to

17 any AWS account where Luna, its software program, databases and client information is held, stored

18 and hosted that is maintained or controlled by LPG, or any one or more of its alter egos, including

19 but not limited to OakStone; Greyson; Phoenix; Maverick; LGS Holdco, LLC; CLG; Vulcan; Coast

20 Processing; Prime Logix; Tony Diab; Rosa Loli aka Rosa Bianca Loli aka Bianca Loli; Lisa Cohen

21 and/or other aliases, agents or corporate entities affiliated with same;

22         f.     All ACH files related to Client information, details, accounts, history of

23 EFTs, payments, amounts held, interest on held amounts, penalty fees, nonsufficient fund fees or

24 other ACH related charges to the Clients stored electronically or in hard copy associated with ACH

25 processing service providers and/or affiliated financial institutions, including but not limited to

26 EPPS; Equipay; Authorize.net; World Global; Optimum Bank; Marich Bein; BankUnited, N.A.;

27 Revolv3; FIS; Guardian, and/or any entity associated with the ACH identification transaction "LPG

28

#30604840v2

1    949-226-6262 #5 2363 RT 9 TOMS RIVER NJ 0875", or any such substantially similar ACH

2    identification transaction;

3          g.      All files, information, reports, spreadsheets, account numbers, routing

4    numbers, and databases related to transfer of funds out of any account opened, maintained and

5    controlled by LPG, or any one or more of its alter egos, including but not limited to OakStone;

6    Phoenix; Maverick; Greyson; LGS Holdco, LLC; CLG; Vulcan; Coast Processing; Prime Logix;

7    Tony Diab; Rosa Loli aka Rosa Bianca Loli aka Bianca Loli; Lisa Cohen and/or other aliases, agents

8    or corporate entities affiliated with same that were processed and executed by ACH processing

9    service providers and/or their affiliated financial institutions, including but not limited to EPPS;

10   Equipay; Authorize.net; World Global; Optimum Bank; Marich Bein; BankUnited, N.A.; Revolv3;

11   FIS; Guardian, and/or any entity associated with the ACH identification transaction "LPG 949-226-

12   6262 #5 2363 RT 9 TOMS RIVER NJ 0875", or any such substantially similar ACH identification

13   transaction;

14         h.      All administrative usernames and passwords that give the Trustee access to

15   any ACH processing accounts, software, database or other program at ACH processing service

16   providers and/or affiliated financial institutions, including but not limited to EPPS; Equipay;

17   Authorize.net; World Global; Optimum Bank; Marich Bein; BankUnited, N.A.; Revolv3; FIS;

18   Guardian, or any entity associated with the ACH identification transaction "LPG 949-226-6262 #5

19   2363 RT 9 TOMS RIVER NJ 0875", or any such substantially similar ACH identification

20   transaction, used to upload or input Client information, initiate Client ACH EFTs, transfer Client

21   ACH funds to outside financial institutions or otherwise manage any account opened, maintained

22   and controlled by LPG, or any one or more of its alter egos, including but not limited to OakStone,

23   Greyson; Phoenix; Maverick; LGS Holdco, LLC; CLG; Vulcan; Coast Processing; Prime Logix;

24   Tony Diab; Rosa Loli aka Rosa Bianca Loli aka Bianca Loli; Lisa Cohen and/or other aliases, agents

25   or corporate entities affiliated with same;

26         i.      All accounting records, files, data and information for LPG, or any one or

27   more of its alter egos, including but not limited to OakStone; Greyson; Phoenix; Maverick; LGS

28

26

#30604840v2

Holdco, LLC; CLG; Vulcan; Coast Processing and Prime Logix stored on NetSuite; Quickbooks and Microsoft SharePoint; G-Suite or other permanent or cloud based systems;

j.      All contracts, records, reports, information, data and details regarding the transfer or sale of any Client files or future Client ACH payments to any other law firm, organization, corporate entity, person(s), or investment group (otherwise known as factoring companies) including but not limited to, OakStone; Greyson; Phoenix; Maverick; LGS Holdco, LLC and/or CLG;

k.      All contracts, records, reports, information, data, cost basis, payment information and details regarding the transfer or receipt of any Client files or future Client ACH payments from any other law firm, organization, corporate entity, person(s), investment or marketing group (otherwise known as capping companies) to LPG or any one or more of its alter egos, OakStone; Greyson; Phoenix; Maverick; LGS Holdco, LLC and/or CLG;

l.      All information, data, tables, spreadsheets and reports regarding Client information stored on Airtable cloud based data management system used by LPG, or any one or more of its alter egos, including but not limited to, OakStone; Greyson; Phoenix; Maverick; LGS Holdco, LLC and/or CLG to manage the aforementioned information;

m.      All administrative usernames and passwords that give the Trustee access to any Airtable account opened, maintained or controlled by LPG, or any one or more of its alter egos, including but not limited to OakStone; Greyson; Phoenix; Maverick; LGS Holdco, LLC and/or CLG;

n.      All email accounts related to LPG, or any one or more of its alter egos, including but not limited to, OakStone; Greyson; Phoenix; Maverick; LGS Holdco, LLC and/or CLG stored maintained and/or hosted on Office 365, G-suite or any other email server, whether physical or cloud based servers;

o.      All post-petition Client ACH payments processed and received by LPG, or any one or more of its alter egos, including but not limited to OakStone; Greyson; Phoenix; Maverick; Prime Logix; CLG; LGS Holdco, LLC; Vulcan; Tony Diab; Rosa Loli aka Rosa Bianca Loli aka Bianca Loli; Lisa Cohen and/or any other aliases, agents or entities associated with same

related to Clients who entered into a Legal Services Contract pre-petition and who have received

the services provided in the contract;

       p.     All rental payments made by Tony Diab; Lisa Cohen; Vulcan or Prime Logix

or from Bank of America Account No. ending in xxx9021 to any landlord(s), property management

company(s) or owner(s), including but not limited to Jason Oppenheim of real property located at

20101 S.W. Cypress Street, Newport Beach 92660 and at 8 Almanzora, Newport Coast, California

92657 utilizing funds originating from LPG, or any one or more of its alter ego entities, including

but not limited to, OakStone; Phoenix; Maverick; CLG; Vulcan and/or Prime Logix; and

       q.     All rental payments made by Tony Diab; Lisa Cohen; Vulcan or Prime Logix

or from Bank of America Account No. ending in xxx9021 to any landlord(s), property management

company(s) or owner(s), including but not limited to 8 Almanzora, LLC, 310 West Profit Pro, Inc.,

Lisa Delaney and/or Tong Gan of real property located at 8 Almanzora, Newport Coast, California

92657 utilizing funds originating from LPG, or any one or more of its alter ego entities, including

but not limited to, OakStone; Phoenix; Maverick; CLG; Vulcan and/or Prime Logix.

**On All Claims for Relief:**

    6.     granting any other and further relief as the Court deems just and proper.

Dated: May 25, 2023                Respectfully submitted,

                              DINSMORE & SHOHL LLP

                              By:___ /s/ Christopher B. Ghio_____
                                   Christopher B. Ghio
                                   Christopher Celentino
                                   Jeremy Freedman
                                   Proposed Special Counsel to
                                   Richard A. Marshack, Chapter 11 Trustee

#30604840v2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

#30604840v2