Christopher B. Ghio (State Bar No. 259094)
Christopher Celentino (State Bar No. 131688)
Jonathan Serrano (State Bar No. 333225)
**DINSMORE & SHOHL LLP**
655 West Broadway, Suite 800
San Diego, CA 92101
Telephone: 619.400.0500
Facsimile: 619.400.0501
christopher.ghio@dinsmore.com
christopher.celentino@dinsmore.com
jonathan.serrano@dinsmore.com

Proposed Special Counsel to Richard A. Marshack,
Chapter 11 Trustee

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>THE LITIGATION PRACTICE GROUP P.C.,<br><br>    Debtor. | Case No.: 8:23-bk-10571-SC<br><br>Chapter 11<br><br>**DECLARATION OF RICHARD A. MARSHACK IN SUPPORT OF EMERGENCY MOTION (I) FOR ENTRY OF INTERIM ORDER: (A) AUTHORIZING THE TRUSTEE TO OBTAIN POST-PETITION FINANCING AND SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIM PURSUANT TO 11 U.S.C. § 364; AND (B) SETTING FINAL HEARING; AND PURSUANT TO FINAL HEARING, (II) FOR ENTRY OF FINAL ORDER APPROVING POST-PETITION FINANCING ON A FINAL BASIS**<br><br>Date:<br>Time:<br>Judge: Hon. Scott C. Clarkson<br>Place: Courtroom 5C<br>       411 W. Fourth Street<br>       Santa Ana, CA  92701 |

#31083207v2

# DECLARATION OF RICHARD A. MARSHACK

I, RICHARD A. MARSHACK, declare:

1. I am the Chapter 11 Trustee ("Trustee") for the bankruptcy estate ("Estate") of The Litigation Practice Group, P.C. ("Debtor") in the above-captioned bankruptcy case ("Case"). As such, except as expressly stated otherwise, I have personal knowledge of the facts set forth below and could and would competently testify under oath thereto if requested to do so.

2. I submit this Declaration in support of my *Motion (I) for Entry of Interim Order: (A) Authorizing The Trustee to Obtain Post-Petition Financing and Superpriority Administrative Expense Claim Pursuant to 11 U.S.C. § 364; and (B) Setting Final Hearing; and Pursuant to Final Hearing, (II) for Entry of Final Order Approving Post-Petition Financing on a Final Basis* (the "Motion"), filed contemporaneously herewith. Capitalized terms not otherwise defined herein have the same meanings ascribed to them in the Motion.

3. The Court may take judicial notice of the following:

   a. On March 20, 2023, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, commencing the Case.

   b. After the Office of the UST filed the *Motion by United States Trustee to Dismiss or Convert Case Pursuant to 11 U.S.C. § 1112(b)* [Docket No. 21] and creditors Debt Validation Fund II, LLC; MC DVI Fund 1, LLC; and MC DVI Fund 2, LLC filed the *Motion by DVF and MC DVI to Dismiss Chapter 11 Case Pursuant to 11 U.S.C. §§ 105, 305, 349, & 1112, or in the Alternative Convert This Case to Chapter 7 or Appoint a Trustee* [Docket No. 44], on May 4, 2021, the Court entered the *Order Directing Unites States Trustee to Appoint Chapter 11 Trustee* [Docket No. 58], thereby granting the UST's motion and directing the UST to appoint a Chapter 11 Trustee in the Case.

   c. Pursuant to the *Acceptance of Appointment as Chapter 11 Trustee* [Docket No. 63], on May 8, 2023, I accepted my appointment as the Chapter 11 Trustee in the Case, and I continue to serve in this capacity at this time.

   d. On May 25, 2023, I initiated an adversary proceeding, *Marshack v. Diab et al.* (Adv. No. 8:23-ap-1046-SC), against LPG's alter egos, fraudulent transferees, and other related

#31083207v2

1

parties. In the complaint, I alleged six causes of action for injunctive relief, avoidance, recovery, and preservation of actual and constructive fraudulent transfers, and turnover.

   e. On Debtor's Schedule D [Docket No. 33], it listed three secured creditors—(a) Diverse Capital LLC with a claim in the amount of $1,224,810, (b) City Capital NY with a claim in the amount of $2,950,000, and (c) Fundura Capital Group with a claim in the amount of $2,100,000—with secured claims totaling $6,274,810.

   f. In addition to the secured creditors listed on Schedule D, there are numerous other UCC-1 financing statements appearing of record in a search of the California Secretary of State's database. Attached as **Exhibit 3** is a true and correct copy of a recent search reflecting the other financing statements of record.

   g. On May 26, 2023, the Court entered the *Amended Order on Trustee, Richard Marshack's Omnibus Emergency Motion for: 1) Turnover of Estate Property and Recorded Information Pursuant to 11 U.S.C. § 542; 2) Preliminary Injunction; 3) Lock-Out; 4) Re-Direction of United States Parcel Services Mail; 5) Order to Show Cause re Compliance With Court Order; and 6) Other Relief as Necessary to Efficient Administration of This Matter* [Adv. Docket No. 21] (the "TRO"), authorizing turnover of estate property and recorded information, lock-out, and an order to show cause regarding compliance with court order, among other relief.

   h. On June 12, 2023, the Court held a hearing regarding preliminary injunction, where the Court granted a preliminary injunction, thereby extending the TRO with certain modifications.

  4. Based on my investigation, I have learned that LPG held itself out as a law firm that provided consumer debt resolution. Before its clients were fraudulently transferred away to other entities on the eve of its bankruptcy, LPG serviced approximately 50,000 customers across the United States. According to its Schedules and Statements of Financial Affairs, its annual revenue in 2022 exceeded $150,000,000.

  5. To service its clients, LPG utilized software including DebtPayPro to automate the dispute process, facilitate client communications, and track payment information. For instance, the correspondence sent on behalf of clients to creditors, collection agencies, and/or credit bureaus was

generated primarily by automated and generic templates and sent via U.S. Mail, facsimile, and/or email.

6.  Some cases resulted in the disputed debts being corrected on the client's credit report, some resulted in successful challenges based on consumer protection laws, and others resulted in debt settlement. Pursuant to the legal service agreements executed between the Debtor and its clients, the client was responsible to pay any settlement amount in addition to the fees payable to the Debtor. In some instances, the creditors would use LPG's clients and/or LPG would file a lawsuit in an effort to eliminate a disputed debt. LPG thus required numerous legal and non-legal employees and independent contractors to service its clients, appear as counsel of record, and negotiate settlements.

7.  For the month of June 2023, I anticipate approximately $1.5 million in non-legal costs and approximately $1.5 million in legal costs. In addition, approximately $1 million in past due, post-petition expenses remain outstanding. Although I anticipate collecting approximately $5.5 million during this period based on historical collection rates, I do not have readily available funds at this time to ensure that the Debtor's business has the funding it needs to continue to operate.

8.  Without being able to obtain post-petition financing for purposes of operations, I will not be able to fund payroll and pay other operating expenses that are past due and scheduled for payment, hindering my ability to ensure LPG's consumer clients get the debt relief they were promised and my ability to seek a sale of Debtor's business as a going concern.

9.  Subject to Court approval, Resolution Ventures ("Lender") and I have negotiated a written credit facility as set forth in that certain Super-Priority Promissory Note ("Note"). A true and correct copy of the Note is attached as **Exhibit 2**. The negotiations were conducted at arm's length over a period of approximately three days. I believe the proposed Note contains reasonable terms.

10. I do not believe that any other financing than that offered by the Lender under the Note is available to me, particularly given the exigency of needing operating funds and the United States Trustee's position that I cannot use the ACH revenues received from clients without violating the TSR.

3

#31083207v2

11. In my business judgment, I do not believe I can obtain credit unencumbered or without superpriority status due to the time constraints to keep the business open by making payroll and the amount of scheduled claims including UCC-1 filings of record with the Secretary of State. Scheduled secured claims total $6,274,810 and there appear to be many other liens as set forth in **Exhibit 3**. Scheduled priority unsecured claims total $374,060.04. The total amount of scheduled unsecured, non-priority claims exceed $140 million.

12. Although the value of the Debtor's assets are much greater than the scheduled secured and priority unsecured claims, it is not likely more valuable than the general unsecured claims.

13. I believe the value of the Debtor's assets could be in the $30 to $60 million range if I can preserve the going concern value of the business.

14. I believe that the proposed financing is crucial to preserve assets of the estate because, without such funding, the Debtor would not be able to provide services to its consumer clients. If the Debtor's business ceased operations, all of the clients would terminate their contracts and all revenue would immediately cease. If this were to occur, I also have significant concerns that Debtor's former principals would continue to prey upon the consumer clients.

15. I believe that value is maximized for the Estate if LPG, with its existing consumer clients, by continuing to operate on a going-concern basis. As such, I need the funds to cover payroll and other operating costs, or as soon as possible. I believe that, without the ability to operate, the Estate and its creditors will have little to no recourse for their investments in and claims against the Debtor.

16. I believe that the terms of the Note were negotiated in good faith and at arm's length between the Lender and me, resulting in an agreement designed to permit me to continue to operate the Debtor's business going forward and address the Debtor's immediate operational needs. I believe that the proposed terms are reasonable and account for my need in obtaining the postpetition financing quickly. Based on the existing financial condition of the Debtor, having been looted by many of the Defendants named in the related adversary proceeding, and the totality of the relevant circumstances, I have exercised sound business judgment in determining that postpetition financing

proposed in the Note is appropriate and necessary under the circumstances. I do not believe that I would have been able to obtain postpetition financing from another source on terms more favorable than those described herein.

17. In fact, payroll was due on June 16, 2023. Even though I am in receipt of more than $5 million, the United States Trustee contends that I may not use such funds without violating the TSR. To avoid any violations of applicable laws, I have decided to hold these funds and not use them to fund operations pending appropriate court determinations and orders. To cover the June 16, 2023, payroll, my proposed operator (who is also the proposed Lender) paid all employees from its own funds in the total amount of approximately $240,000.

18. I believe that by doing so, Lender has subrogated to the administrative expense claims otherwise held by the employees that have provided post-petition services since I have served the Court's TRO and taken control of operations.

19. If the Court approves the proposed financing, the amounts advanced by Lender's direct payments to the employees will be subsumed into the amounts owed pursuant to the Note. This will permit the Estate to pay these amounts over time instead of having to pay such amounts to fund payroll due on June 16, 2023.

20. If the Court approves the Loan, I will approve and authorize all uses of the funds. In the event that I am unavailable, due to being on vacation or any other reason, I seek authority for a designee (such as my field agent, Lori Ensley, or one of my law firm partners, Ed Hays, David Wood, or Laila Masud) to approve and authorize all uses of funds. All ordinary business expenses approved by me will be paid for by a trustee check. No payment of professional fees will be allowed or authorized through this Motion and corresponding order, just ordinary payroll and other operational expenses.

21. I believe that the requested interim relief and order are necessary to preserve the business as a going concern and thereby prevent immediate and irreparable harm to the Debtor's business and the Estate pending a final hearing. A true and correct copy of the proposed interim order on the Motion is attached as **Exhibit 1**.

#31083207v2

1     I declare under penalty of perjury under the laws of the United States of America that the
2 foregoing is true and correct.

4 DATED: June 16, 2023                                                      */s/ Richard A. Marshack*
                                                                             Richard A. Marshack

6

#31083207v2

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:    655 W. Broadway, Suite 800, San Diego, California  92101

A true and correct copy of the foregoing document entitled (*specify*):


will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On June 16, 2023, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On June 16, 2023, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on June 16, 2023, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**JUDGE'S COPY**
The Honorable Scott C. Clarkson
United States Bankruptcy Court
Central District of California
Ronald Reagan Federal Building and Courthouse
411 West Fourth Street, Suite 5130 / Courtroom 5C
Santa Ana, CA 92701-4593

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| June 16, 2023 | | |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

August 2010                    **F 9013-3.1.PROOF.SERVICE**

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

2. **SERVED BY UNITED STATES MAIL**:

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                               **F 9013-.1.PROOF.SERVICE**