Christopher B. Ghio (State Bar No. 259094)
Christopher Celentino (State Bar No. 131688)
Jeremy B. Freedman (State Bar No. 308752)
**DINSMORE & SHOHL LLP**
655 West Broadway, Suite 800
San Diego, CA 92101
Telephone: 619.400.0500
Facsimile:  619.400.0501
christopher.ghio@dinsmore.com
christopher.celentino@dinsmore.com
jeremy.freedman@dinsmore.com

Special Counsel to Plaintiff and Chapter 11 Trustee,
Richard A. Marshack

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>THE LITIGATION PRACTICE GROUP P.C.,<br><br>Debtor.<br><br>———————————————<br><br>RICHARD A. MARSHACK,<br>Chapter 11 Trustee,<br><br>Plaintiff,<br><br>v.<br><br>TONY DIAB, an individual; DANIEL S. MARCH, an individual; ROSA BIANCA LOLI, an individual; LISA COHEN, an individual; WILLIAM TAYLOR CARSS, an individual; ENG TANG, an individual; MARIA EEYA TAN, an individual; JAKE AKERS, an individual; HAN TRINH, an individual; JAYDE TRINH, an individual; WES THOMAS, an individual; SCOTT JAMES EADIE, an individual; JIMMY CHHOR, an individual; DONGLIANG JIANG, an individual; OAKSTONE LAW GROUP PC; GREYSON LAW CENTER PC; PHOENIX LAW GROUP, INC.; MAVERICK MANAGEMENT, LLC; LGS HOLDCO, LLC; CONSUMER LEGAL GROUP, P.C.; VULCAN CONSULTING GROUP LLC; B.A.T. INC. d/b/a | Case No.: 8:23-bk-10571<br><br>Adv. Proc. No. 8:23-ap-01046-SC<br><br>Chapter 11<br><br>**STIPULATION RE PARTIAL SETTLEMENT OF CLAIMS AND MODIFICATION OF ORDER ON TRUSTEE, RICHARD MARSHACK'S OMNIBUS *EMERGENCY* MOTION AS TO COVERED PARTIES AND DEFENDANTS, CONSUMER LEGAL GROUP, P.C. AND LGS HOLDCO, LLC**<br><br>Judge: Hon. Scott C. Clarkson<br>Place: Courtroom 5C<br>      411 W. Fourth Street<br>      Santa Ana, CA  92701 |

COAST PROCESSING; PRIME LOGIX, LLC; TERACEL BLOCKCHAIN FUND II LLC; EPPS; EQUIPAY; AUTHORIZE.NET; WORLD GLOBAL; OPTIMUMBANK HOLDINGS, INC. d/b/a OPTIMUM BANK; MARICH BEIN, LLC; BANKUNITED, N.A.; REVOLV3, INC.; FIDELITY NATIONAL INFORMATION SERVICES, INC. d/b/a FIS; WORLDPAY, INC.; WORLDPAY GROUP; MERIT FUND, LLC; GUARDIAN PROCESSING, LLC; THE UNITED STATES POSTAL SERVICE; and DOES 1 through 100, inclusive,

Defendants.

The parties to this Stipulation are RICHARD A. MARSHACK, in his capacity as the duly appointed, qualified, and acting Chapter 11 Trustee ("Trustee") for the estate of the debtor The Litigation Practice Group, P.C. ("LPG"), non-party, SET FORTH, INC. f/k/a DEBTPAYPRO ("DPP"), and Defendants, CONSUMER LEGAL GROUP, P.C. ("Consumer Legal"), along with its related company LGS HOLDCO, LLC ("LGS HoldCo" and together with Consumer Legal, "CLG"), on the other hand. Trustee, DPP, and CLG are collectively referred to as the "Parties" unless individually identified.

## RECITALS

WHEREAS, on March 20, 2023 ("Petition Date"), LPG filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code.

WHEREAS, prior to the Petition Date, CLG contends that it acquired – via purchase or forgiveness of indebtedness due and owing to MCA Fund Adv, Inc. ("MCA Fund") and other entities – 12,546 client files from LPG ("CLG Acquired Clients"). For some of the CLG Acquired Clients, CLG contends that it paid reasonably equivalent value ("CLG Non-Fee Share Clients") and, for others, CLG agreed to pay 40% of the revenue earned from the CLG Acquired Clients ("CLG Fee Share Clients").

WHEREAS, on January 24, 2023, LPG transferred 3,000 files to CLG to pay off an amount due from an advance from MCA Fund of $3,000,000. On February 10, 2023, LPG transferred approximately 9,000 files to CLG. CLG agreed to pay $3,000,000 for 3,000 of the 9,000 files. The

$3,000,000 was wired from LGS HoldCo to LPG in various wires from February 14, 2023, to February 28, 2023. Any active files above the overage amount of 6,000 was to be split 60% to CLG and 40% to LPG. Presently, there were two batches of files that were transferred between January 24, 2023, and February 10, 2023, which now consist of approximately 5,000 performing files. Pursuant to an agreement with Trustee, CLG has segregated 2,150 of the files which came from the February 10, 2023, transfer. These files are part of the CLG Fee Share Clients.

WHEREAS, neither the claims set forth in the Adversary Proceeding (as Amended) including, but not limited to Trustee's actions for avoidance and recovery nor CLG's defenses thereto are being resolved by this Stipulation, and Trustee and CLG reserve all rights, claims, and defenses. Also, CLG's agreement to segregate these additional LPG assets and files shall not be deemed an admission by CLG that there is any indebtedness owed by CLG to LPG.

WHEREAS, prior to the Petition Date, CLG used financial services customer relationship management software developed and hosted by Set Forth, Inc. known as DPP (DebtPayPro) for the management of the individual cases of CLG Acquired Clients.

WHEREAS, on May 26, 2023, the Court entered its "Order on Trustee, Richard Marshack's Omnibus Emergency Motion for: (1) Turnover of Estate Property and Recorded Information Pursuant to 11 U.S.C. § 542; (2) Preliminary Injunction; (3) Lock-Out; (4) Re-Direction of United States Parcel Services Mail; (5) Order to Show Cause Re Compliance With Court Order; and (6) Other Relief As Necessary to Efficient Administration of This Matter" [Docket No. 13 in Adv. No. 8-23-ap-10571-SC], as amended by the "Amended Order on Trustee, Richard Marshack's Omnibus Emergency Motion for: (1) Turnover of Estate Property and Recorded Information Pursuant to 11 U.S.C. § 542; (2) Preliminary Injunction; (3) Lock-Out; (4) Re-Direction of United States Parcel Services Mail; (5) Order to Show Cause Re Compliance With Court Order; and (6) Other Relief As Necessary to Efficient Administration of This Matter" entered on June 2, 2023 (the "June 2 Order") [Docket No. 21 in Adv. No. 8-23-ap-10571-SC], pursuant to which, among other things, the Court ordered the turnover of money and information arising from or related to the LPG Acquired Clients and the suspension of CLG's access to the DPP data ("DPP Data") hosted on the DPP CRM Software.

WHEREAS, on or about June 2, 2023, DPP and CLG were duly served with a copy of the June 2 Order and, as a result, DPP suspended CLG's access to the CRM Software and DPP Data.

WHEREAS, following discussions between Trustee, CLG, and DPP, Trustee has agreed to immediately restore CLG's access to the DPP Data, consistent with this Stipulation. Similarly, DPP and CLG have agreed to permit Trustee to obtain super-administrative access into and control over CLG's DPP Data portal.

WHEREAS, nothing in this Stipulation is intended as, or shall be deemed to be, an admission of any liability as to the merits of the Trustee's "Complaint for: (1) Injunctive Relief; (2) Avoidance, Recovery, and Preservation of Two-Year Actual Fraudulent Transfers; (3) Avoidance, Recovery, and Preservation of Two-Year Constructive Fraudulent Transfers; (4) Avoidance, Recovery, and Preservation of Four-Year Actual Fraudulent Transfers; (5) Avoidance, Recovery, and Preservation of Four-Year Constructive Fraudulent Transfers; and (6) Turnover," bearing Adv. No. 8:23-ap-01046-SC (the "Fraudulent Transfer Action") nor an admission of wrongdoing of any kind. The purpose of the Stipulation is an interim measure to provide visibility for Trustee and the estate.

## STIPULATED SETTLEMENT & RELEASE

**NOW THEREFORE AND BASED UPON THE EXPRESS AGREEMENT OF THE PARTIES AS SET FORTH HEREIN IT IS HEREBY STIPULATED AND AGREED:**

### 1.0 - CLG'S AGREEMENT AND DUTIES TO PERFORM

**1.1** CLG shall provide Trustee with online viewing access to all of CLG's bank accounts including, without limitation, all accounts at Optimum Bank.

**1.2** Upon execution of this Stipulation by all Parties, Trustee shall file the Stipulation.

1.3 Within 7 calendar days of CLG's signature of this Stipulation, CLG will provide a declaration to Trustee, under penalty of perjury, from its managing attorney attesting to the following:

> (i) CLG's lack of any personal, business, or financial arrangements with LPG or Tony Diab, aside from its purchase of the CLG Acquired Clients or anything else that has been disclosed to Trustee;

(ii) a list and summary of all attorneys employed or retained by CLG to service the CLG Acquired Clients;

(iii) a numeric allocation of non-attorney employees;

(iv) a detailed summary of the services CLG provides;

(v) a description of CLG's fee structure, including an exemplar of the Legal Services Agreement CLG's clients execute; and

(vi) all other performance metrics CLG maintains related to its services provided to CLG clients/consumer debtors.

**1.4** CLG agrees that within 10 calendar days after execution of this Stipulation by all Parties, CLG will provide Trustee with financial statements, profit and loss statements, and balance sheets.

**1.5** CLG Agrees that within 72 hours after delivery to CLG by its auditors or accountants, CLG will provide Trustee with any such future financial statements, profit and loss statements, and balance sheets.

**1.6** CLG agrees that within 10 calendar days after execution of this Stipulation, CLG will provide Trustee with a current schedule of assets and liabilities, including tangible and intangibles.

**1.7** CLG will provide Trustee with daily proposed expenditures for Trustee's review.

**1.8** CLG agrees that with respect to all CLG Fee Share Clients, CLG will withhold 40% of all receivables generated from said performing CLG Fee Share Clients in a separate bank account and work to immediately resolve and harmonize the accounting. After the accounting is resolved between the Parties, CLG will make monthly payments of the resolved amounts. CLG will provide Trustee with an accounting of all payments made to any party on account of the CLG Fee Share Clients and remit any amounts previously withheld to Trustee. CLG will provide Trustee with monthly reporting with respect to all receivables generated from the CLG Acquired Clients and provide Trustee with banking statements as may be reasonably requested by Trustee in his sole discretion. Trustee will segregate any remitted payments, if made and owed, after an accounting, which CLG seeks to conduct according to the terms of the CLG-LPG purchase of the 9,000 files,

since CLG will be seeking a release of those funds if the amount of active files remains below 6,000 files, of which presently there are approximately 5,000 files. CLG reserves the right to seek a release of the 40% hold back amount it is segregating on the 2,150 files.

**1.9** CLG agrees that with respect to all clients which CLG contends are not CLG Acquired Clients, within 14 calendar days after execution of this Stipulation, CLG will provide Trustee with those clients' Legal Services Agreements and any additional information concerning the source of such client and the date on which said clients executed their CLG Legal Services Agreements.

**1.10** CLG agrees that within 14 calendar days after execution of this Stipulation, CLG will provide Trustee with information relating to any and all payments made within the preceding four years to LPG, Tony Diab, and any of the Covered Entities and Individuals described in the June 2 Order and to any of the defendants in the Fraudulent Transfer Action..

**1.11** CLG agrees that within seven calendar days after execution of this Stipulation, CLG will provide Trustee with any and all documents referring to, relating to, or arising out of any relationship between MCA Fund and its affiliates and LPG, without limitation as to time, including but not limited to any merchant cash advance or other loan or advance of money to LPG.

**1.12** CLG agrees that, in the event of a breach of this Stipulation by CLG, Trustee may, with notice which may be shortened within the Court's sole discretion, submit a declaration under penalty of perjury attesting to such breach and immediately reinstating any waived portions of the June 2 Order.

**1.13** Trustee agrees to keep all information received by/from CLG pursuant to the terms and obligations hereof, or on its behalf, strictly confidential and shall maintain the privacy of said information as "Trustee's Eyes Only." Trustee agrees not to disclose or disseminate any of the information contemplated herein to any other party in this litigation, except for in response to the United States Trustee's formal or informal discovery requests. Should such need to disclose arise, except for in response to the United States Trustee's formal or informal discovery requests, Trustee shall afford CLG an opportunity to seek a protective order or other appropriate remedy and/or waive compliance with the provisions of this Agreement. If, in the absence of a protective order or other

remedy or the receipt of a waiver, and if one party is nonetheless legally compelled to disclose the information contemplated herein, such party may, without liability hereunder, disclose to such tribunal only that portion of the information which is legally required to be disclosed, provided that such party shall use its best efforts to preserve the confidentiality of the information, including, without limitation, by cooperating with the other party to obtain an appropriate protective order or other reliable assurance that confidential treatment will be afforded the information by such tribunal.

**1.14** CLG agrees to abide by and discharge all duties imposed by applicable non-bankruptcy laws including the Telemarketing Sales Act and the Credit Repair Organizations Act.

## 2.0 - TRUSTEE'S AGREEMENT AND PERFORMANCE

**2.1** Trustee agrees to restore CLG's access to the DPP Data, provided CLG complies with all terms and conditions of this Stipulation, without waiving any rights under the June 2 Order by either party.

**2.2** Trustee agrees to take all reasonable precautions necessary to avoid reviewing any attorney-client privilege materials pertaining to CLG's clients stored on the DPP CRM Software. To the extent Trustee becomes aware of any privileged materials, he agrees that there shall be no waiver of any privilege and that he will not disseminate any privileged information absent court order.

**2.3** Upon entry of an order approving this Stipulation, and subject to compliance with this Stipulation, Trustee agrees to waive, as to CLG only, enforcement of that portion of the June 2 Order entitled "Order to Re-Direct Mail" to allow CLG to receive its mail directly from the United States Postal Service, instead of re-directing that mail to Trustee.

2.4 Upon entry of an order approving this Stipulation, Trustee agrees that Optimum Bank shall be directed to immediately release any hold or restraint on the following accounts: (i) LGS HoldCo LLC, bearing Account No. xxxx4673, (ii) Consumer Legal Group LGS-DBA, bearing Account No. xxxx5209, and (iii) Consumer Legal Group, bearing Account No. xxxx8246. Consumer Legal and LGS HoldCo still agree to provide Trustee viewing access and adhere to all the other terms and conditions of this Stipulation.

### 3.0 DPP'S AGREEMENT AND PERFORMANCE

**3.1** DPP agrees to provide Trustee super-administrative access into and visibility into CLG's DPP portal.

### 4.0 - AGREEMENT OF ALL PARTIES AND PERFORMANCE

**4.1** The Parties agree that upon the entry of an order approving this Stipulation, and subject to compliance with this Stipulation, that, as to CLG only, Trustee waives enforcement of that portion of the June 2 Order entitled Recorded Information (A)(1) and (A)(2) and agrees to immediately restore access to CLG's client files that are managed and stored electronically utilizing the DPP CRM Software license, key, or account. Additionally, and as to CLG only, Trustee will immediately restore access to all administrative usernames and passwords required for accessing any DPP account by CLG employees.

**4.2** The Parties agree to enter into releases which will be further described below (collectively, the "Releases").

### 5.0 - RELEASES

**5.1** **IT IS HEREBY FURTHER STIPULATED AND AGREED**, except and otherwise provided herein that CLG and DPP for themselves, their successors, heirs, executors, administrators, beneficiaries, directors, officers, employees, partners, members, shareholders, agents, affiliates, and assigns (together the "Trustee Releasing Parties") forever release and discharge Trustee and his successors, heirs, executors, administrators, beneficiaries, directors, officers, employees, partners, members, shareholders, agents, attorneys, affiliates, and assigns (together the "Trustee Released Parties") of and from any and all claims, actions, causes of action, demands, rights, damages, costs, loss of service, expenses and compensation whatsoever which they might have because of anything done, omitted to be done, or allowed to be done by the Trustee Released Parties, in connection with the subject matter of the Temporary Restraining Order entered May 26, 2023, the Amended Order entered June 2, 2023, the Preliminary Injunction entered June 23, 2023, and this Stipulation, whether known or unknown, foreseen or unforeseen, including, without limitation, any settlement negotiations and any damages and the consequences thereof resulting or to result from the events described, referred to, or inferred herein above ("Trustee

Released Matters"). The Trustee Releasing Parties each further agree never to commence, aid, or participate in (except to the extent required by order or legal process issued by a court or governmental agency of competent jurisdiction) any legal action or other proceeding based in whole or in part upon the foregoing. In furtherance of this litigation release, each party acknowledges and waives the benefits of California Civil Code § 1542 (and all similar ordinances and statutory, regulatory, or judicially created laws or rules of any other jurisdiction), which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, AND THAT IF KNOWN BY HIM OR HER WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

The Trustee Releasing Parties each agree that this waiver and release is an essential and material term of this Stipulation and that the agreements in this paragraph are intended to be in full satisfaction of any alleged injuries or damages in connection with the Trustee Released Matters. The Trustee Releasing Parties each represent and warrant that he, she, or it has not purported to convey, transfer, or assign any right, title, or interest in any Trustee Released Matters to any other person or entity and that the foregoing constitutes a full and complete release of the Trustee Released Matters. Each party also understands that this release shall apply to all unknown or unanticipated results of the transactions and occurrences described above, as well as those known and anticipated. Each party has consulted with legal counsel prior to signing this release, and executes such release voluntarily, with the intention of fully and finally extinguishing all released matters. Nothing in this release is intended to deprive CLG of a defense in the adversary action and is limited to any claims relating to the temporary restraining order and injunction of CLG's accounts or assets.

    5.2    **IT IS HEREBY FURTHER STIPULATED AND AGREED**, except and otherwise provided herein, that CLG, for themselves, their successors, heirs, executors, administrators, beneficiaries, directors, officers, employees, partners, members, shareholders, agents, affiliates and assigns (together the "DPP Releasing Parties") forever release and discharge DPP and their successors, heirs, executors, administrators, beneficiaries, directors, officers,

employees, partners, members, shareholders, agents, attorneys, affiliates and assigns (the "DPP Released Parties") of and from any and all claims, actions, causes of action, demands, rights, damages, costs, loss of service, expenses and compensation whatsoever which they might have because of anything done, omitted to be done, or allowed to be done by the DPP Released Parties, in connection with the subject matter of the Temporary Restraining Order entered May 26, 2023, the Amended Order entered June 2, 2023, the Preliminary Injunction entered June 23, 2023 and this Stipulation, whether known or unknown, foreseen or unforeseen, including, without limitation, any settlement negotiations and any damages and the consequences thereof resulting or to result from the events described, referred to, or inferred herein above ("DPP Released Matters"). The DPP Releasing Parties each further agree never to commence, aid, or participate in (except to the extent required by order or legal process issued by a court or governmental agency of competent jurisdiction) any legal action or other proceeding based in whole or in part upon the foregoing. In furtherance of this litigation release, each party acknowledges and waives the benefits of California Civil Code § 1542 (and all similar ordinances and statutory, regulatory, or judicially created laws or rules of any other jurisdiction), which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, AND THAT IF KNOWN BY HIM OR HER WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

The DPP Releasing Parties each agree that this waiver and release is an essential and material term of this Stipulation and that the agreements in this paragraph are intended to be in full satisfaction of any alleged injuries or damages in connection with the DPP Released Matters. The DPP Releasing Parties each represent and warrant that he, she, or it has not purported to convey, transfer, or assign any right, title, or interest in any DPP Released Matters to any other person or entity and that the foregoing constitutes a full and complete release of the DPP Released Matters. Each party also understands that this release shall apply to all unknown or unanticipated results of the transactions and occurrences described above, as well as those known and anticipated. Each party has consulted

with legal counsel prior to signing this release, and executes such release voluntarily, with the intention of fully and finally extinguishing all DPP Released Matters.

This release applies only to conduct that predates the date of this Stipulation.

**5.3** **IT IS HEREBY FURTHER STIPULATED AND AGREED,** that as part of the aforementioned Trustee Released Matters and DPP Released Matters, the Trustee Releasing Parties and DPP Releasing Parties acknowledge the waiver stated in California Civil Code § 1542.

### 6.0 - VOLUNTARY ARMS-LENGTH AGREEMENT

**6.1** **IT IS HEREBY FURTHER STIPULATED AND AGREED,** that the Parties acknowledge that they have had an opportunity to be represented by independent counsel in the negotiation, preparation, and execution of this Stipulation, and that each of them has read the Stipulation and has had the opportunity to have it fully explained by their counsel prior to its execution and are fully aware of its content and legal effect.

### 7.0 - REPRESENTATIONS

**7.1** **IT IS HEREBY FURTHER STIPULATED AND AGREED,** that the Parties acknowledge that no representation or promise not explicitly contained herein has been made and further acknowledge that each is not entering into this Stipulation on the basis of any promise or representation, express or implied, other than those contained herein.

### 8.0 - ENTIRE AGREEMENT

**8.1** **IT IS HEREBY FURTHER STIPULATED AND AGREED,** that this Stipulation is intended to constitute the entire agreement between the Parties. There are no collateral agreements or representations, written or oral. This Stipulation may be amended only by a written instrument executed by all Parties and approved by the Court. The Parties agree to do all things necessary, and to execute all further documents necessary and appropriate, to carry out and effectuate the terms and purposes of this Stipulation. This Stipulation shall bind and inure to the benefit of the Parties and their respective successors and assigns. Time is of the essence in the performance of the obligations of the Parties of their obligations under this Stipulation.

### 9.0 - JURISDICTION

**9.1    IT IS HEREBY FURTHER STIPULATED AND AGREED,** that this Court will retain jurisdiction to enforce this Stipulation and the order approving the Stipulation.

### 10.0 - NO ADMISSION OF LIABILITY

**10.1    IT IS HEREBY FURTHER STIPULATED AND AGREED,** that this Stipulation is not an admission of liability by any party and is a compromise to resolve the disputed claims set forth in the June 2 Order and to buy peace. Except as set forth at Section 5.1 above, CLG and DPP waive no defenses, offsets, or counter- or third-party claims. Plaintiff also agrees by this stipulation to grant CLG a 90-day extension to respond to the complaint.

### 11.0 - COUNTERPARTS

**11.1    IT IS HEREBY FURTHER STIPULATED AND AGREED,** that this Stipulation may be executed in one or more counterparts and shall be binding and effective immediately upon the execution by all Parties and/or their representatives of one or more counterparts, pending the entry of an order approving this Stipulation entered by the Court.

#31080386v1

## 12.0 – COURT APPROVAL

**12.1** **IT IS HEREBY FURTHER STIPULATED AND AGREED**, that because Trustee is not releasing any claims by way of this Stipulation, Rule 9019 of the Federal Rules of Bankruptcy Procedure is not applicable and that this stipulation shall become effective upon the Court entering an order approving it. To the extent that the Court determines that Rule 9019 is applicable, Trustee agrees to promptly file and serve such a motion.

Respectfully submitted,

**DINSMORE & SHOHL LLP**

Date: June 30, 2023

Christopher B. Ghio
Christopher Celentino
Proposed Special Counsel to Richard A. Marshack
Forth Technology, Inc. fka Debt Pay, Inc.
SET FORTH, INC. fka DEBTPAYPRO

Date: 6/30/2023

Authorized Representative:
Michael McKnight
Name

**CONSUMER LEGAL GROUP, P.C.**

Date: June 29, 2023

Authorized Representative:
Jason J-Rell, Esq.
Name

DAL 54757461v1

12

STIPULATION RE PARTIAL SETTLEMENT OF CLAIMS AND MODIFICATION OF ORDER ON TRUSTEE'S OMNIBUS EMERGENCY MOTION