# **APPENDIX A**

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

CAROLYN BEECH,                )
on behalf of herself and the     )
class members described below,  )
                                )
          Plaintiff,       )
                                )
     vs.                   )     1:22cv57-HSO-BWR
                                )
THE LITIGATION PRACTICE    )
GROUP, PC;                   )
TONY M. DIAB;            )
DANIEL MARSH;          )
VALIDATION PARTNERS, LLC;  )
RUSS SQUIRES;          )
WES THOMAS;           )
VULCAN CONSULTING GROUP LLC; )
JAYDE TRINH;           )
OAKSTONE LAW GROUP PC;   )
                                )
          Defendants.     )

## FIRST AMENDED COMPLAINT – CLASS ACTION

### NATURE OF THE ACTION

    1.     Plaintiff brings this action for damages pursuant to the Credit Repair Organizations

Act ("CROA") under 15 U.S.C. § 1679 et seq.[1]

### JURISDICTION AND VENUE

    2.     This Court has jurisdiction under 15 U.S.C §1679 and 28 U.S.C. §§1331, 1337

and 1367.  On information and belief, the Court also has jurisdiction under 28 U.S.C. §1332(d), the

amount in controversy exceeding $5 million on a classwide basis, there being more than 100 class

members, and the parties being of diverse citizenship.

    3.     This Court has personal jurisdiction over Defendant because Defendant solicited

business from residents of Mississippi and collected money from residents of Mississippi under

---

[1] Plaintiff recognizes that there is an automatic stay in effect as to Litigation Practice Group and are pursuing the other defendants as authorized by the District Court for the Southern District of Mississippi in its text order dated April 20, 2023.

1

contracts that are void pursuant to the CROA.

4.      Venue in this District is proper because a material portion of the events at issue occurred here.

5.      Article III is satisfied because Plaintiff and each class member is entitled to void a contract providing for the payment of money to Defendant, or recover money back from Defendant, or both.

## PARTIES

6.      Plaintiff Carolyn Beech is a resident and domiciliary of Carriere, Pearl River County, Mississippi.

7.      Defendant The Litigation Practice Group PC ("LPG") is a California corporation with its principal offices at 17542 East 17th Street, Suite 100, Tustin, CA 92780. Its registered agent is Daniel S. March at that address.

8.      LPG is a credit repair organization that offers its clients both legal and non-legal services designed to resolve their debt issues and improve their credit history, including working towards actively settling debts for such consumers.

9.      Defendant Daniel S. March is the sole officer and director of LPG. He may be found at 17291 Irvine Blvd., #101, Tustin, CA 92780.

10.      Defendant Tony M. Diab may be found at 17542 East 17th Street, Suite 100, Tustin, CA 92780, or 20101 SW Cypress St., Newport Beach, CA 92660-0713. Diab was an attorney in California and Nevada until he was disbarred in 2019-2020 for conversion of client funds and forgery. Notwithstanding his disbarment, he is the principal individual responsible for running LPG.

11.      Defendant Validation Partners, LLC is a limited liability company organized under the law of Florida with its principal offices located at 1300 Sawgrass Pkwy., #110, Sunrise, FL 33323. Its registered agent and office is Registered Agent Solutions, Inc., 155 Office Plaza Drive, Suite A, Tallahassee, FL 32301, or 720 14th Street, Sacramento, CA 95814.

2

12.     Defendant Russ Squires may be found at 1300 Sawgrass Pkwy., #110, Sunrise, FL 33323.

13.     Defendant Wes Thomas may be found at 2030 Main Street, Ste. 1300, Irvine, CA 92614

14.     Defendants Russ Squires and Wes Thomas are co-managing members of Defendant Validation Partners, LLC.  Thomas was chief financial officer of LPG in 2021-2022.

15.     Defendant Vulcan Consulting Group LLC is a California limited liability company. On information and belief, Diab is the principal owner.  Its registered agent is Lisa Cohen, 20101 SW Cypress St., Newport Beach, CA 92660-0713.

16.     Defendant Jayde Trinh may be found at 17542 East 17th Street, Suite 100, Tustin, CA 92780, or 888 Prospect Street,  Ste. 200, La Jolla, CA 92037.

17.     Defendant Oakstone Law Group PC is a California professional corporation with the address of 888 Prospect Street,  Ste. 200, La Jolla, CA 92037.  Its registered agent and office is C T Corporation System, 28 Liberty Street, New York, NY  10005.

18.     Each Defendant is a "person" who conducted, materially participated in, or obtained the financial benefit of acts and practices described in 15 U.S.C. §1679b.

## RELATIONSHIP BETWEEN DEFENDANTS

19.     Although March is purportedly the sole officer of LPG, he acts as a figurehead for Diab, who in fact has control over LPG's finances, trust account, operations, and activities with respect to consumers, including the supervision of non-attorney staff who send letters to credit bureaus and creditors on behalf of consumers.  On information and belief, March has authorized Diab to use his name in connection with LPG operations as Diab sees fit, including signing March's signature on contracts and communicating with third parties on behalf of LPG.  Diab uses the name "Admin" and the email address "admin@lpglaw.com" when acting on behalf of LPG.

20.     In exchange, March receives an annual salary which, on information and belief, is $600,000, plus bonuses.

3

21.     The principal purpose of Validation Partners, LLC is or was to raise capital for LPG's operations. It began doing so in 2021.  To do this, Defendant Validation Partners, LLC purchases at a discount accounts receivable owed by consumers to LPG.

22.     In some instances, LPG directly assigns the receivables to Validation Partners, LLC.

23.     In other instances, LPG pays a portion of the fees owed by the consumer to "Marketing Affiliates" in exchange for the Marketing Affiliates' services in lead generation – identifying and obtaining consumers to which LPG sells its services.

24.     In a typical transaction LPG pays the affiliate between 50% and 69% of the net amount less LPG's processing fees. Validation Partners bought the future revenue stream of the 31% to 50% that would have otherwise stayed with LPG on what were promised as high-quality accounts, i.e. accounts with some prior history of payment.

25.     Exhibit K, attached, is an accounts receivable purchase agreement between LPG and Validation Partners, LLC.

26.     Validation Partners, LLC obtained the funds it uses to purchase the consumer receivables from investors.

27.     Validation Partners spent nearly $66,000,000 of its investors funds to purchase accounts receivable owed by consumers that were acquired from 58 different marketing affiliates between August 30, 2021 and August 17, 2022, as well as directly from LPG from November 5, 2021, through February 16, 2022. In total, Validation Partners purchased over 40,000 accounts with a total value over $400,000,000.

28.     Additionally, Validation Partners directly loaned LPG the sum of $3,835,045. An initial loan of $2,200,000 was made on December 2, 2021. Validation Partners made additional loans to LPG in June of 2022 totaling $1,635,045. Exhibit L, attached, is a promissory note by LPG in favor of Validation Partners, LLC.

29.     The funding by Validation Partners, LLC was essential to the continued operation of LPG.

4

30.     Validation Partners, LLC was fully aware of the nature of LPG's business.

31.     Defendants Russ Squires and Wes Thomas, as the executive officers of Validation Partners, LLC, knowingly authorized and directed:

      a.     The investments by Validation Partners, LLC in LPG.

      b.     The purchase of receivables consisting of contracts entered into in violation of the CROA.

32.     Diab has an ownership interest in at least one of the Marketing Affiliates.

33.     Between July and October 2022, Diab caused LPG to pay more than $1 million to Marketing Affiliates.

34.     About June 2022, LPG, at the direction of Diab, stopped paying Validation Partners, LLC.  Diab had control over the revenue received by LPG and over LPG's trust and operating accounts.

35.     In 2022-2023, Diab transferred consumers' accounts to an entity called Teracel.

36.     In 2021, Diab had LPG pay over $2.8 million to Vulcan Consulting Group LLC, an entity which he owns.

37.     Prior to October 22, 2022, Teracel purchased 719 files for $2,070,000 from LPG.

38.     During early 2023, on information and belief, some clients of LPG were notified that their files had been moved to Defendant Oakstone Law Group PC.

39.     Defendant Jayde Trinh was one of the "attorneys" listed by LPG.  (Exhibit M) At LPG, she is or was the assistant to Diab and shared an office with him.  She is currently held out as the "head attorney" of Oakstone Law Group PC (Exhibit N).  She is not listed on the website of the California state bar.

40.     As a result of the above relationships, Tony M. Diab, Daniel Marsh,  Validation Partners, LLC, Russ Squires and Wes Thomas are each liable for the acts of LPG that they directed (Diab, Trinh), allowed to be conducted using their name (Marsh), or knowingly financed (Validation Partners, LLC; Russ Squires, Wes Thomas).

5

41.    Defendant Vulcan Consulting Group LLC is liable for having received the funds generated by the violations of the CROA.

42.    Defendant Oakstone Law Group, PC is also a recipient of the benefits created by the violations of the CROA.

## FACTS

43.    In late 2021, LPG solicited Plaintiff Carolyn Beech for a "debt forgiveness" program.

44.    Under this program:

    a.    LPG would negotiate settlements of Ms. Beech's delinquent debts, amounting to $12,650.44;

    b.    Ms. Beech would pay $296.95 / month for 24 months.

45.    LPG specifically told Plaintiff Carolyn Beech that its program would repair her credit and improve her credit score.

46.    Ms. Beech signed the following documents via her phone:

    a.    Legal services agreement (Exhibit A);

    b.    Electronic payment authorization (Exhibit B);

    c.    Preauthorized checking and ACH authorization form (Exhibit C).

47.    Each of the documents in Exhibits A-C is a standard form regularly used by Defendant LPG.

48.    Ms. Beech was induced to enter into the agreement by a document on LPG's web site, "Smarter Path to Debt Relief Services" (Exhibit D). This document suggested that LPG could provide useful services to a consumer if the consumer answered the following questions in the affirmative:

    a.    "Has your credit score already been negatively impacted?"

    b.    "My credit report was damaged and needs to be worked on by a knowledgeable lawyer."

49.     A consumer reading the material would understand from it that LPG could improve one's credit score and repair credit damage.

50.     In addition, the services offered by Defendant LPG, of settling debts for less than the amounts due, would necessarily result in credit repair, in that delinquent debts would be reported as settled, and the consumer's credit utilization (amount of credit used compared to amount of credit available, a key measure of creditworthiness) would be reduced.

51.     On information and belief, Defendant Diab authorized the content of Exhibit D and its furnishing to consumers via LPG's website.

52.     LPG also sends clients a brochure entitled "Your Lawyers for Debt Resolution to Regain Financial Freedom" (Exhibit E).  The services listed include, "My credit report was damaged and needs to be worked on by a knowledgeable lawyer."

53.     On information and belief, Defendant Diab authorized the content of Exhibit E and its furnishing to consumers.

54.     LPG routinely sends clients' creditors a form letter disputing their debts (Exhibit F). The grounds of dispute asserted in Exhibit F are legally questionable or baseless.

55.     LPG routinely sends clients' creditors a form letter demanding that they cease and desist from further communications to the client (Exhibit G).

56.     On information and belief, Defendant Diab authorized the content of Exhibits F and G and its furnishing to creditors.

57.     Defendant Marsh authorized the placement of his signature on documents in the form of Exhibits F and G.

58.     A short time after sending these letters, LPG routinely sends the major credit bureaus form letters (Exhibits H-J) disputing the client's debts and demanding "the immediate removal/ deletion of this account from my credit report . . . ."  This is sent by LPG but signed by the client with "poa" after the signature, meaning "power of attorney."

59.     On information and belief, Defendant Diab authorized the content of Exhibits H-J

and furnishing these documents to credit bureaus.

60.    The effect of the removal of the accounts would be to improve the consumer's credit score.

61.    After making three payments Ms. Beech ceased doing so after she was served with summonses and complaints on two of the debts that LPG had undertaken to negotiate for her.

## COUNT I -- CREDIT REPAIR ORGANIZATIONS ACT

62.    Plaintiff incorporates paragraphs 1-61.

63.    The CROA was enacted "(1) to ensure that prospective buyers of the services of credit repair organizations are provided with the information necessary to make an informed decision regarding the purchase of such services; and (2) to protect the public from unfair or deceptive advertising and business practices by credit repair organizations." 15 U.S.C. §1679(b).

64.    Plaintiff is a "consumer" as defined by 15 U.S.C. §1679a(1).

65.    Defendant LPG is a "credit repair organization" as defined by 15 U.S.C. §1679a(3), in that it is a "person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of – (i) improving a consumer's credit, credit history, or credit rating, or (ii) providing advice or assistance to any consumer with regard to any activity or service described in clause (i)."

66.    Defendant Diab personally authorized the use of the mails to sell the services of LPG to consumers, which services consisted of improving a consumer's credit, credit history, and credit rating, and providing advice and assistance to consumers with respect to improving their credit, credit history and credit rating.

67.    Defendant Diab also personally authorized the use of the mails to send creditors and credit bureaus documents for the purpose of improving consumers' credit, credit history and credit rating.

68.    Defendant Marsh authorized the placement of his name on communications selling

8

the services of LPG to consumers, which services consisted of improving a consumer's credit, credit history, and credit rating, and providing advice and assistance to consumers with respect to improving their credit, credit history and credit rating.

69.    Defendant Marsh also personally authorized the placement of his name on communications sent through the mails to creditors for the purpose of improving consumers' credit, credit history and credit rating.

### Payment Before Services Fully Performed

70.    15 U.S.C. §1679b(b) provides that "[n]o credit repair organization may charge or receive any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform for any consumer before such service is fully performed."

71.    Defendant LPG violated §1679b(b) by charging and receiving money for services it agreed to perform before such services were fully performed.

72.    It is the standard policy and practice of Defendant LPG to charge a monthly sum before services are performed.

73.    Defendant Diab personally authorized such charges.

74.    Defendant Validation Partners LLC received such charges by acquiring LPG receivables.

75.    Defendants Russ Squires and Wes Thomas directed Validation Partners LLC to acquire such receivables.

76.    Defendants Diab and Marsh authorized the sale of LPG receivables.

77.    Defendant Vulcan Consulting Group LLC, at the direction of Diab, received money which LPG received from consumers.

78.    Defendant LPG's practice of charging a monthly sum before services are performed is inherently in violation of the CROA.

79.    This prohibition was included in the CROA because of repetitive instances in which

9

credit repair organizations obtained payments toward credit repair services, the consumers discontinued such services (often when the creditors with whom debts were to be negotiated filed lawsuits), and the credit repair organizations obtained money in excess of any benefit to the consumer. The practice was considered inherently unfair and deceptive.

### Failure to Make Disclosures

80.     The CROA provides that a credit repair organization must provide consumers with certain written disclosures in its contracts.

81.     These disclosures are intended to provide consumers with information they need to avoid unnecessary use of expensive credit repair organizations.

82.     15 U.S.C. §1679c(a) requires provision of a written statement informing the consumer of their rights under the Fair Credit Reporting Act and the CROA.

83.     15 U.S.C. §1679c(b) provides that "the written statement required under this section shall be provided as a document which is separate from any written contract or other agreement between the credit repair organization and the consumer or any other written material provided to the consumer."

84.     Defendant LPG violated 15 U.S.C. §§ 1679c(a)-(b) through its failure to provide the written disclosures required.

85.     Defendant LPG never provided such disclosures, nor did it provide a separate document containing such disclosures.

86.     On information and belief, it is the standard policy and practice of Defendant LPG to not provide the required disclosures.

87.     On information and belief, Defendant Diab personally authorized such practice.

### Failure to Provide Cancellation Rights

88.     The CROA, pursuant to 15 U.S.C. §1679d(4), requires credit repair organization to include, in the contract between them and a consumer, "a conspicuous statement in bold face type, in immediate proximity to the space reserved for the consumer's signature on the contract, which

10

reads as follows: 'You may cancel this contract without penalty or obligation at any time before midnight of the 3rd business day after the date on which you signed the contract. See the attached notice of cancellation form for an explanation of this right.'"

89.     Under 15 U.S.C. §1679e, a credit repair organization must provide a consumer a separate notice of a consumer's cancellation right.

90.     The only disclosure of cancellation rights is a statement in the last two sentences of the six sentences on the fourth page of Exhibit A that "You, the client, may cancel this Agreement at any time by submitting three days' written notice of cancellation by mail, email or fax, and shall not be responsible for any payments due after the date of cancellation.  A payment due within three days of the date of written cancellation shall be processed and shall not be refunded."

91.     The statement is not that required by the CROA, and is not bold or conspicuous. There is no separate notice of right to cancel.

92.     It is the standard practice of Defendant LPG to present cancellation rights in the manner described above.

93.     On information and belief, Defendant Diab authorized such presentation.

94.     Defendant Validation Partners LLC received money obtained from consumers on the contracts containing improper statements of cancellation rights.

95.     Defendant LPG violated 15 U.S.C. §§1679d(4) and 1679e through its failure to provide the disclosure required by the CROA both in the contract between the parties and in a separate form.

96.     The CROA requires a notice of cancellation rights because consumers would often contract for expensive and unnecessary credit repair services that they would, upon reflection, decide were expensive and unnecessary, only to find themselves contractually obligated.

97.     The CROA further dictates that any contract found not to be in compliance with the CROA "shall be treated as void" and "may not be enforced by any Federal or State court or any other person." 15 U.S.C. §1679f(c).

11

98.     The contracts of Plaintiff and the members of the class described below are void.

99.     The CROA provides for damages in 15 U.S.C. §1679g:

(a)     Liability established

Any person who fails to comply with any provision of this subchapter with respect to any other person shall be liable to such person in an amount equal to the sum of the amounts determined under each of the following paragraphs:

(1)     Actual damages

The greater of—

(A)     the amount of any actual damage sustained by such person as a result of such failure; or

(B)     any amount paid by the person to the credit repair organization.

(2)     Punitive damages

(A)     Individual actions

In the case of any action by an individual, such additional amount as the court may allow.

(B)     Class actions

In the case of a class action, the sum of—

(i)     the aggregate of the amount which the court may allow for each named plaintiff; and

(ii)     the aggregate of the amount which the court may allow for each other class member, without regard to any minimum individual recovery.

(3)     Attorneys' fees

In the case of any successful action to enforce any liability under paragraph (1) or (2), the costs of the action, together with reasonable attorneys' fees.

(b)     Factors to be considered in awarding punitive damages

In determining the amount of any liability of any credit repair organization under subsection (a)(2), the court shall consider, among other relevant factors—

(1)     the frequency and persistence of noncompliance by the credit repair organization;

(2)    the nature of the noncompliance;

(3)    the extent to which such noncompliance was intentional; and

(4)    in the case of any class action, the number of consumers adversely affected.

## CLASS ALLEGATIONS

100.    Plaintiff brings this claim on behalf of 3 classes, pursuant to Fed.R.Civ.P. 23(a) and 23(b)(3).

101.    Class A consists of all persons who, on or after a date five years prior to the filing of this action,  entered into contracts with Defendant LPG, which contracts were not cancelled within three business days,  that provide for monthly payments before services are fully performed.

102.    Class B consists of all persons who, on or after a date five years prior to the filing of this action, entered into contracts with Defendant LPG, which contracts were not cancelled within three business days,  and who were not provided with the written statement described in 15 U.S.C. §1679c(a).

103.    Class C consists of all persons who, on or after a date five years prior to the filing of this action, entered into contracts with Defendant LPG, which contracts were not cancelled within three business days,  and who were not provided with both (a) a conspicuous statement in bold face type, in immediate proximity to the space reserved for the consumer's signature on the contract, which reads as follows: "You may cancel this contract without penalty or obligation at any time before midnight of the 3rd business day after the date on which you signed the contract. See the attached notice of cancellation form for an explanation of this right" and (b) a separate notice of cancellation form.

104.    The members of the three classes may well be coterminous.

105.    Residents of Georgia are excluded from the classes.

106.    Plaintiff may alter the class definitions to conform to developments in the case and discovery.

107.   On information and belief, there are more than 100 members of each class, and each class is so numerous that joinder of all members is not practicable.

108.   There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members.  The predominant common questions are:

    a.   Whether Defendant LPG engages in the practices described;

    b.   Whether such practices violates the CROA;

    c.   The liability of each Defendant other than LPG for such practices.

109.   Plaintiff's claim is typical of the claims of the class members.  All are based on the same factual and legal theories.

110.   Plaintiff will fairly and adequately represent the class members.  Plaintiff has retained counsel experienced in class actions and consumer litigation.

111.   A class action is superior for the fair and efficient adjudication of this matter, in that:

    a.   Individual actions are not economically feasible.

    b.   Members of the class are likely to be unaware of their rights;

    c.   Congress intended class actions to be the principal enforcement mechanism under the CROA.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class members and against Defendants for:

    i.   A declaration that the practices complained of herein are unlawful and violate the CROA;

    ii.   A declaration that the contracts of Plaintiff and the class members are void;

    iii.   Actual damages  as provided under 15 U.S.C. §1679g(a)(l);

    iv.   Punitive damages, as provided under 15 U.S.C. §1679g(a)(2)(A);

    v.   Litigation expenses, reasonable attorney fees and costs as provided

under 15 U.S.C. §1679g(a)(3); and

vi.    Such other or further relief as the Court deems appropriate.


<u>s/ Jason Graeber</u>
Jason Graeber


Jason Graeber
250 Beauvoir Road, Suite 4C
Biloxi, MS 39501
(228) 207-7117
jason@jasongraeberlaw.com


Daniel A. Edelman (PHV)
Tara L. Goodwin
**EDELMAN, COMBS, LATTURNER & GOODWIN, LLC**
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service:  courtecl@edcombs.com

## JURY DEMAND

Plaintiff demands trial by jury.

*s/ Jason Graeber*
Jason Graeber

T:\38577\Amended Complaint_.wpd

## NOTICE OF ASSIGNMENT

Please be advised that all rights relating to attorney's fees have been assigned to counsel.


*s/ Jason Graeber*
Jason Graeber

## DOCUMENT PRESERVATION DEMAND

Plaintiff hereby demands that defendant take affirmative steps to preserve all recordings, data, documents, and all other tangible things that relate to Plaintiff, the events described herein, any third party associated with any telephone call, campaign, account, sale or file associated with Plaintiff, and any account or number or symbol relating to them. These materials are likely very relevant to the litigation of this claim. If defendant is aware of any third party that has possession, custody, or control of any such materials, Plaintiff demands that defendant request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of the defendant.

*s/ Jason Graeber*
Jason Graeber

T:\38577\Amended Complaint_.wpd

18

Case 8:23-bk-10571-SC   Doc 185-1   Filed 07/07/23   Entered 07/07/23 13:25:30   Desc
Appendix A   Page 20 of 96
Case 1:22-cv-00057-HSO-BWR   Document 48-1   Filed 04/21/23   Page 2 of 9
Case 1:22-cv-00057-HSO-RHWR   Document 1-2   Filed 03/17/22   Page 2 of 9



P.O. Box 513018, Los Angeles, CA 90051-1018
Tel. (949) 715-0544 • Fax (949) 315-4332
Support@LPGLaw.com

## LEGAL SERVICES AGREEMENT

### Legal Services

The Litigation Practice Group PC, a State Bar of California licensed law corporation, and its employed and affiliated attorneys (collectively "LPG") will provide legal services wherein it will represent you in connection with the disputes you have with the creditors listed below (see Creditor Information). LPG will do the following as part of its representation of you:

- Assist you in stopping creditors and any related debt collectors from harassing or contacting you in connection with any of the debts identified below;
- Dispute the legal validity of the debts identified below;
- Assist you in removing erroneous or inaccurate information reported in connection with debts identified below;
- Represent you in any lawsuit filed against you in connection with any of these debts;
- Defend you against any collection activity or lawsuit on any invalidated debt at any point in time, without expiration, in connection with any debt identified below;
- Initiate legal action in a court of competent jurisdiction against any creditor that violates any state or federal law in connection with any debt identified below; and
- Determine your qualification for bankruptcy under Chapter 7 or Chapter 13 of the U.S. Bankruptcy Code, and counsel you regarding the procedures and effects of bankruptcy as well as your qualification to file the same.

LPG will serve as your attorney for all purposes in connection with these disputes and will be available to render all legal assistance necessary to resolve these debts. The fees that are set forth below are flat fees that are all inclusive—no additional fee or cost will be charged by LPG at any time during the duration of your dispute with the creditors identified below. All fees are earned by LPG at the time they are paid and are for services rendered to you as set forth herein.

### Client Authorization

You authorize LPG to challenge, where applicable, each of the debts listed below, which you believe to be in any way invalid, inaccurate, or otherwise without a legal basis. You also authorize LPG to obtain a copy of your credit report to assist in the process of analyzing your account and developing a strategy regarding the resolution of debts that are excessive or otherwise unauthorized by law. You further authorize LPG, acting under power of attorney for you, to affix your signature to documents sent on your behalf in relation to the matters addressed herein. Finally, you authorize LPG to communicate with you via email, text message, telephone, and facsimile. Any of the authorizations set forth herein can be revoked at any time by written communication.

## Description of Services to be Performed

LPG will obtain your credit reports, analyze them, and develop strategies for correcting invalid or unlawful debts for which you should not be held legally responsible. Where appropriate, LPG will use existing laws and interact with creditors and credit bureaus on your behalf to invalidate your debts and remove such invalid debts from your credit reports. LPG will also interact with collection agencies, as applicable, to invalidate your debts by requiring them to supply evidence of your indebtedness to them, or any other legal mechanism. LPG will also consult with you regarding all aspects of the credit reporting process, including all laws applicable to the same. LPG will also investigate your delinquent accounts in order to determine the most effective method for invalidating your debts or otherwise removing any legal liability for such debts, up to and including the initiation of lawsuits on your behalf against your creditors and their third-party debt collectors.

In addition, if a lawsuit is filed against you, LPG will represent you in such a lawsuit and will not charge any additional fees for such representation provided such a lawsuit was initiated after the date you sign this Agreement. In the event a lawsuit was initiated against you before the date you execute this Agreement and you elect to have LPG represent you, an additional fee of $300.00 will be charged. Where appropriate, if legal fees are recovered from an adverse party, LPG will retain such fees for its services. You will be responsible to pay any damages resulting from any lawsuit. Any costs incurred in a lawsuit will be paid by LPG out of the fees set forth below, including the fees of any attorney retained on your behalf in a jurisdiction in which LPG is not admitted to practice law. No additional payment from you to LPG will be necessary for the defense of any lawsuit filed against you after the date you execute this Agreement. You will, however, be responsible to pay any damages resulting from such lawsuits or any settlements reached in the course of such lawsuits.

## Fees

You will pay the fees set forth below for the legal services provided by LPG, which services are outlined above. No fee or other cost will be charged or collected beyond the flat fee set forth below. This is the only amount that you have to pay to LPG for its services, which includes any cost, filing fee or vendor's fee associated with LPG's representation of you, and this fee is not escrowed but rather earned received by LPG. This fee does NOT, however, include any settlement that you may have to pay to any creditor if you opt to settle a debt prior to or during the course of a lawsuit.

## Refund Policy

If you reach the conclusion of LPG's representation of you and a debt remains in dispute without resolution, you will be eligible to receive a full refund of the fees that you paid towards your representation in connection with that account (i.e., you will be refunded the fees paid in proportion to the debt that was not resolved). A debt is "in dispute" under this paragraph if, at the time of completion of LPG's representation of you, no lawsuit was filed regarding the debt, no settlement was reached regarding the debt, no acknowledgment of invalidity was received from the creditor regarding the debt, and the debt is still reporting to one of the following credit bureaus: Experian, Equifax, or Transunion.

Case 8:23-bk-10571-SC    Doc 185-1    Filed 07/07/23    Entered 07/07/23 13:25:30    Desc
Appendix A    Page 22 of 96
Case 1:22-cv-00057-HSO-BWR    Document 48-1    Filed 04/21/23    Page 4 of 9
Case 1:22-cv-00057-HSO-RHWR    Document 1-2    Filed 03/17/22    Page 4 of 9

## Debt Settlement

You may request that LPG settle any debt identified below at any point in the course of LPG's representation of you. Where requested, LPG will negotiate the most favorable settlement it is able to negotiate on your behalf. Any settlement reached as a result of your request shall be your responsibility, and shall be paid directly from you to the creditor. At the point that you reach a settlement with a creditor, your payment to LPG will be reduced and to adjust for the settled account being removed from the representation herein contemplated. LPG will only settle a debt where litigation is active or contemplated.

## Actions Required of You

You agree to provide LPG with any and all correspondence you receive from any creditor, credit bureau, attorney, or court of law. You further agree to keep a log of all communications, including telephonic and electronic communications, from any creditor or credit reporting agency to you from the date you execute this Agreement until the conclusion of your representation.

## Right to Conduct Business Electronically and Contact You

You agree that LPG may contact you electronically and telephonically and that any and all business with LPG may be conducted electronically. You further agree that LPG may transmit data, including that regarding your credit profile, electronically. You further agree that any electronic communication carries the risk of disclosure to a third party and that LPG will not be held responsible for any such inadvertent disclosure of information. A facsimile or email transmission of this signed agreement, via an email attachment or otherwise, will be as valid as the original signed agreement. This agreement may not be modified except in writing by both parties.

## Malpractice Insurance

LPG hereby discloses that it maintains a malpractice insurance policy that covers its representation of you and that the limit of such policy is no less than $1,000,000.00 per claim and $1,000,000.00 per claimant. If you desire to make a claim against that insurance policy, you must first contact LPG and disclose your claim and the nature of the claim, at which point LPG agrees to assist you in obtaining any and all information necessary to prepare a file a claim.

## Applicable Law and Confidentiality

You understand and agree that LPG is based out of the State of California, is a licensed law corporation under the State Bar of California, and that California law applies to this Agreement. You further understand that LPG is bound to strict rules of confidentiality and attorney-client privilege in connection with the rules applicable to attorneys licensed to practice law in the State of California. You further understand and agree that you have sought the representation of LPG with full knowledge of its location and licensing, and that LPG works with attorneys licensed in all 50 states and the District of Columbia as affiliated counsel to allow LPG to provide a complete representation of you in any state in which you are sued or in which a dispute might arise. You have the right to know the licensed attorney with whom LPG has affiliated in any state and at any time but understand and agree that LPG may choose to change the local attorney with whom it is affiliated in any given jurisdiction, provided only that at all times LPG shall have an affiliated attorney in all 50 states and the District of Columbia.

Case 8:23-bk-10571-SC    Doc 185-1    Filed 07/07/23    Entered 07/07/23 13:25:30    Desc
Appendix A    Page 23 of 96
Case 1:22-cv-00057-HSO-BWR    Document 48-1    Filed 04/21/23    Page 5 of 9
Case 1:22-cv-00057-HSO-RHWR    Document 1-2    Filed 03/17/22    Page 5 of 9

## Client Acknowledgements

By signing this agreement, you acknowledge that LPG has not instructed you to breach any contract, fail to make any required payment, or fail to perform any obligation you have lawfully incurred. LPG reserves the right to terminate this agreement if (a) required by the State Bar of California Rules of Professional Conduct, (b) you refuse to communicate with LPG or respond to reasonable requests for information necessary to represent you in an effective way, (c) you fail to make timely payment of the amount due under hereunder, or (d) your payments are returned multiple times for any reason. LPG will not pay any of the debts identified below and does not guarantee that any debt you now have or may incur will be invalidated or settled in association with LPG's representation of you. You understand and agree that you must forward any communication you receive in printed or electronic form from any creditor, court, or representative of other a creditor or a court to the address, email, or fax number provided below, and that you must keep a log of all telephonic communications with any creditor or credit reporting agency. You, the client, may cancel this Agreement at any time by submitting three days' written notice of cancellation by mail, email, or fax, and shall not be responsible for any payments due after the date of cancellation. A payment due within three days of the date of written cancellation shall be processed and shall not be refunded.

Client Signature:  _____
Date: _____
Co-Applicant Signature: _____
Date: _____

**THE LITIGATION PRACTICE GROUP PC**

**Daniel S. March, Managing Shareholder**
**17542 E. 17th Street, Ste 100**
**Tustin, CA 92780**
**Support@LPGLaw.com**
**Tel. 949.715.0644**
**Fax. 949.315.4332**

Case 8:23-bk-10571-SC    Doc 185-1    Filed 07/07/23    Entered 07/07/23 13:25:30    Desc
Appendix A    Page 24 of 96
Case 1:22-cv-00057-HSO-BWR    Document 48-1    Filed 04/21/23    Page 6 of 9
Case 1:22-cv-00057-HSO-RHWR    Document 1-2    Filed 03/17/22    Page 6 of 9

## Creditor Information

| Creditor | Account # | Debt Balance |
| --- | --- | --- |
| FSTHERITAG | | $3,206.00 |
| ONEMAIN | | $2,168.00 |
| 1st Franklin Financial | | $1,612.00 |
| FIRST SVG CC | | $562.00 |
| TBOMASPIRE | | $411.00 |
| FST PREMIER | | $376.00 |
| TBOMMILSTNE | | $327.00 |
| TBOMASPIRE | | $221.00 |
| FSB BLAZE | | $194.00 |
| Peral River Credit | | $2,416.00 |
| ADVANTAGE | | $1,157.44 |

Case 8:23-bk-10571-SC    Doc 185-1    Filed 07/07/23    Entered 07/07/23 13:25:30    Desc
Appendix A    Page 25 of 96
Case 1:22-cv-00057-HSO-BWR    Document 48-1    Filed 04/21/23    Page 7 of 9
Case 1:22-cv-00057-HSO-RHWR    Document 1-2    Filed 03/17/22    Page 7 of 9

**Client Information**

**Name:** Carolyn Beech
**Address:** ████████████████████

**Home Phone:** ███████████████
**Cell Phone:** ███████████████
**Email:** ███████████████
**Last 4 SSN:** ███████████████

Case 8:23-bk-10571-SC    Doc 185-1    Filed 07/07/23    Entered 07/07/23 13:25:30    Desc
Appendix A    Page 26 of 96
Case 1:22-cv-00057-HSO-BWR    Document 48-1    Filed 04/21/23    Page 8 of 9
Case 1:22-cv-00057-HSO-RHWR    Document 1-2    Filed 03/17/22    Page 8 of 9

## Schedule of Payments

**I agree to this payment schedule -- Client Initials:** 

| Payment # | Process Date | Amount |
|---|---|---|
| 1 | Dec 20, 2021 | $296.95 |
| 2 | Jan 18, 2022 | $296.95 |
| 3 | Feb 18, 2022 | $296.95 |
| 4 | Mar 18, 2022 | $296.95 |
| 5 | Apr 18, 2022 | $296.95 |
| 6 | May 18, 2022 | $296.95 |
| 7 | Jun 20, 2022 | $296.95 |
| 8 | Jul 18, 2022 | $296.95 |
| 9 | Aug 18, 2022 | $296.95 |
| 10 | Sep 19, 2022 | $296.95 |
| 11 | Oct 18, 2022 | $296.95 |
| 12 | Nov 18, 2022 | $296.95 |
| 13 | Dec 19, 2022 | $296.95 |
| 14 | Jan 18, 2023 | $296.95 |
| 15 | Feb 21, 2023 | $296.95 |
| 16 | Mar 20, 2023 | $296.95 |
| 17 | Apr 18, 2023 | $296.95 |
| 18 | May 18, 2023 | $296.95 |
| 19 | Jun 19, 2023 | $296.95 |
| 20 | Jul 18, 2023 | $296.95 |
| 21 | Aug 18, 2023 | $296.95 |
| 22 | Sep 18, 2023 | $296.95 |
| 23 | Oct 18, 2023 | $296.95 |
| 24 | Nov 20, 2023 | $296.94 |

Case 8:23-bk-10571-SC   Doc 185-1   Filed 07/07/23   Entered 07/07/23 13:25:30   Desc
Appendix A   Page 27 of 96
Case 1:22-cv-00057-HSO-BWR   Document 48-1   Filed 04/21/23   Page 9 of 9
Case 1:22-cv-00057-HSO-RHWR   Document 1-2   Filed 03/17/22   Page 9 of 9

E-Signature Completion Certificate

**clixsign.**



## Your Document Was Successfully Signed!

Congratulations, your document(s) was successfully signed. Please find
details below related to your e-signature submission.

### 🛠 Signing Details

**Document ID**
4835311

**Document Title**
LSA - LPG - English New

**Sender IP Address**
[redacted]

**Number Of Signers**
1

**Signer Email**
[redacted]

**Signer IP Address**
172.58.168.70

**Timestamp**
2021-12-02T17:23:45-06:00

**Document MD5 Hash**
[redacted]

### 🌸 Document Audit

✔ Sent at 1969-12-31T18:00:00-06:00 from IP [redacted]

✔ Delivered to [redacted] 2021-12-02T17:19:56-06:00 from 172.58.168.70

✔ Adopted Signature at 2021-12-02T17:21:52-06:00 from 172.58.168.70

✔ Completed Signing at 2021-12-02T17:23:45-06:00 from 172.58.168.70

✔ PDF Generated at 2021-12-02T17:23:45-06:00

**Sending Agent**
Mozilla/5.0 (Linux; Android 10; LM-K300) AppleWebKit/537.36 (KHTML, like Gecko) Chrome/89.0.4389.105
Mobile Safari/537.36

**<u>EXHIBIT B</u>**

**Electronic Payment Authorization**

Case 8:23-bk-10571-SC    Doc 185-1    Filed 07/07/23    Entered 07/07/23 13:25:30    Desc
Appendix A    Page 29 of 96
Case 1:22-cv-00057-HSO-BWR    Document 48-2    Filed 04/21/23    Page 2 of 2
Case 1:22-cv-00057-HSO-RHWR    Document 1-3    Filed 03/17/22    Page 2 of 2

**Electronic Payment Authorization**

**Bank Name:** ███████████████████

**Name on Account:** Carolyn Beech

**Account Type: Checking**

Other (specify: _____ )

**Routing Number:** ████████████████

**Account Number:** ████████████

**Next Payment Date: Dec 20, 2021 Amount: $ 296.95**

**Recurring Payment Date: 18th**

By signing below, I authorize and permit LPG or their designees to initiate electronic funds transfer via an Automated Clearing House system (ACH) from my account listed above. I will also provide LPG with a voided check or savings deposit slip.

If necessary, LPG may make adjustments if errors have occurred during the transaction. The date of the draft is listed above, however, if the draft date falls on a weekend or bank holiday, the debit transaction will take place on the next business day. This authority will remain in effect until LPG is notified by the member in writing at least 5 days prior to the next scheduled draft date. No other forms of cancellation by members will be observed. If the debit is returned because of non-sufficient funds or uncollected funds, then the originator and its financial institution may reinitiate the entry up to two (2) times. The reversal of funds from a client's account that was drafted in error cannot be made until seven business days from the draft date. The member agrees to waive all rights of reversal or refusal of any payment on any draft that LPG may make against the member's bank account while services are performed. The member agrees with all of the provisions and conditions outlined within.

### Acknowledgment of Refunds & Draft Date Changes

ACH Refunds: If a refund is due such will be made through the ACH process only. Refunds may take up to 10 days to process. In the event my EFT or draft is returned from my bank unpaid, I agree that a fee of $25.00 or as allowed by law may be charged to my account via draft or EFT. Furthermore, I warrant that I am authorized to execute this payment authorization and the above information is true and correct. Draft Date Changes: A client may stop any ACH debit by providing written notice to LPG at least three (3) business days prior to the scheduled payment. If you should need to notify us of your intent to cancel and/or revoke this authorization you must contact us three (3) business days prior to the questioned debit being initiated.

**Client Signature:**

███████████████████████

**Printed Name:**

Carolyn Beech

## EXHIBIT C

**Preauthorized checking and ACH authorization**

Case 8:23-bk-10571-SC    Doc 185-1    Filed 07/07/23    Entered 07/07/23 13:25:30    Desc
Appendix A    Page 31 of 96
Case 1:22-cv-00057-HSO-BWR    Document 48-3    Filed 04/21/23    Page 2 of 3
Case 1:22-cv-00057-HSO-RHWR    Document 1-4    Filed 03/17/22    Page 2 of 3

### Preauthorized Checking and ACH Authorization Form

I hereby apply for and agree to establish a non-interest bearing special purpose account (the "Account") with a bank ("Bank") selected by LPG, its payments processors, and/or their successors for the purpose of accumulating funds to pay for such goods and services as I so direct LPG to perform. This application is subject to Bank's customer identification program, as required by the USA PATRIOT ACT and other applicable laws, and accordingly, I hereby represent that the above information is true and complete to the best of my knowledge and belief. The bank account information provided above may be subject to account validation processes to include pre-notation and a $0.01 micro-deposit.

## Account Owner Name: Carolyn Beech

**Address:** ██████████████████████████████

**Mobile Phone #:   E-Mail:** ████████████████████████████

## DESIGNATED BANK ACCOUNT INFORMATION

**Bank Name:** ████████████████████

**Name as it appears on bank ACCOUNT:** Carolyn Beech

**Routing Number:** ████████████ **Account Number:** ███████████ **Checking or Saving:** ███████████

## DESIGNATED BANK ACCOUNT PAYMENT AUTHORIZATION SCHEDULE

**Total Amount of Debit: $296.95          Date of Next Debit: Dec 20, 2021**

I authorize Payment Automation Network to initiate Automatic Clearing House (ACH) or Electronic Funds Transfer (EFT) or Remotely Created Check (RCC) from my designated bank account at the financial institution identified above. I authorize Payment Automation Network to debit my bank account according to the schedule of debits provided to Payment Automation Network by me or on my behalf or as otherwise provided by agreement. I understand that debits will be withdrawn on the due date unless otherwise indicated and that sufficient funds must be available in designated account at least two (2) business days prior to the actual date of the debit. Upon my approval, Payment Automation Network may adjust the amount being debited from designated bank account. This authorization is to remain in force until the schedule of debits is completed or until Payment Automation Network has received written notification from me of a change or termination, allowing Payment Automation Network no fewer than five (5) business days to act. Payment Automation Network shall not be liable to any person for not completing a transaction as a result of any limit on my designated bank account or if a financial institution fails to honor any debit from such account. I understand it is my responsibility to notify Payment Automation Network immediately if a scheduled debit does not occur. I authorize Payment Automation Network to recover funds by ACH/EFT/RCC debit from my bank account in the event of an error or in the event that a prior debit is returned for any reason, including non-sufficient funds. I understand that a $25.00 service charge will be added for every NSF draft. I understand I can call Payment Automation Network at 800-813-3740 to cancel the automatic draft payments. Payments will be drafted on the payment due date of the original Servicing agreement. I understand and agree that Payment Automation Network, Inc. is a private company, and is not affiliated with any academic or

Case 8:23-bk-10571-SC    Doc 185-1    Filed 07/07/23    Entered 07/07/23 13:25:30    Desc
Appendix A    Page 32 of 96
Case 1:22-cv-00057-HSO-BWR    Document 48-3    Filed 04/21/23    Page 3 of 3
Case 1:22-cv-00057-HSO-RHWR    Document 1-4    Filed 03/17/22    Page 3 of 3

governmental entity. The Payment Automation Network, Inc. service bridges the gap between the student loan consolidation company Software and ACH, EFT, or RCC processor. Payment Automation Network, Inc. is not a money transmitter or debt collection agency and does not receive money from individual debtors. Payment Automation Network, Inc. is not engaged in the business of debt or credit counseling or the provision of other services to individual debtors. Payment Automation Network, Inc. does not solicit, offer loan consolidation services, or provide services directly to individual debtors. Payment Automation Network, Inc. does not have a contractual relationship with individual debtors to effect the adjustment, compromise, or discharge of any loan account.

I have read and understand the information contained in this document and I affirm that the above information given by me is accurate and true to the best of my knowledge.

**Account Holder's Signature:**           **Date: 12/2/2021**

# EXHIBIT D

## Smarter Path to Debt Relief Services

Case 8:23-bk-10571-SC    Doc 185-1    Filed 07/07/23    Entered 07/07/23 13:25:30    Desc
Appendix A    Page 34 of 96
Case 1:22-cv-00057-HSO-BWR    Document 48-4    Filed 04/21/23    Page 2 of 14
Case 1:22-cv-00057-HSO-RHWR    Document 1-5    Filed 03/17/22    Page 2 of 14

3/8/22, 2:57 PM                          LPG Law - USA Debt Relief Legal Services Firm - Call Us!

SMARTER PATH TO

# Debt Relief
# Legal Services

GET IN TOUCH

FEATURED IN:

Case 8:23-bk-10571-SC    Doc 185-1    Filed 07/07/23    Entered 07/07/23 13:25:30    Desc
Appendix A    Page 35 of 96
Case 1:22-cv-00057-HSO-BWR    Document 48-4    Filed 04/21/23    Page 3 of 14
Case 1:22-cv-00057-HSO-RHWR    Document 1-5    Filed 03/17/22    Page 3 of 14

LPG Law - USA Debt Relief Legal Services Firm - Call Us!



Case 8:23-bk-10571-SC    Doc 185-1    Filed 07/07/23    Entered 07/07/23 13:25:30    Desc
Appendix A    Page 36 of 96
Case 1:22-cv-00057-HSO-BWR    Document 48-4    Filed 04/21/23    Page 4 of 14
Case 1:22-cv-00057-HSO-RHWR    Document 1-5    Filed 03/17/22    Page 4 of 14

3/8/22, 2:57 PM                    LPG Law – USA Debt Relief Legal Services Firm – Call Us!



WHY CHOOSE US?

# there's a dedicated team of attorneys for every legal matter.

At LPG Law, we have experienced attorneys for nearly every financial or legal matter. So, when you or your family face hardship, our team can litigate the debt, bankruptcy, or civil issue on your behalf to protect your future.

About Our Firm

Case 8:23-bk-10571-SC    Doc 185-1    Filed 07/07/23    Entered 07/07/23 13:25:30    Desc
Appendix A    Page 37 of 96
Case 1:22-cv-00057-HSO-BWR    Document 48-4    Filed 04/21/23    Page 5 of 14
Case 1:22-cv-00057-HSO-RHWR    Document 1-5    Filed 03/17/22    Page 5 of 14

LPG Law - USA Debt Relief Legal Services Firm - Call Us!

---

## DEDICATED & OUTCOME FOCUSED

# How Can Our Debt Relief Attorneys Help You?

### Step
# 1

## Call for a free phone consultation.

## 📞 949-229-6262

### Step
# 2

**An experienced debt relief attorney will speak with you and evaluate your case.**

### Step
# 3

**If retained, we will move forward with the initial paperwork to begin working on your case.**

Case 8:23-bk-10571-SC    Doc 185-1    Filed 07/07/23    Entered 07/07/23 13:25:30    Desc
Appendix A    Page 38 of 96
Case 1:22-cv-00057-HSO-BWR    Document 48-4    Filed 04/21/23    Page 6 of 14
Case 1:22-cv-00057-HSO-RHWR    Document 1-5    Filed 03/17/22    Page 6 of 14

# WE **FIGHT HARD** WHEN REPRESENTING YOU.

# Debt Relief is Our #1 Specialty

Our expert legal team spans across the country in our various locations from west coast to east coast with diverse backgrounds and case experience that allows us to select the right attorney for every case. Don't settle with a firm that has less resources to take on your case and have the connections, know-how and access to fight hard for you outside of court and in court when necessary.

Case 8:23-bk-10571-SC   Doc 185-1   Filed 07/07/23   Entered 07/07/23 13:25:30   Desc
Appendix A   Page 39 of 96
Case 1:22-cv-00057-HSO-BWR   Document 48-4   Filed 04/21/23   Page 7 of 14
Case 1:22-cv-00057-HSO-RHWR   Document 1-5   Filed 03/17/22   Page 7 of 14

Has your **credit score** already been negatively impacted?

Have you been denied employment **because of your financial situtation?**

Have you been **doing everything just to pay interest** and getting behind no matter what you try?

Has your **creditor threatened** you for non payment?

Have you been **struggling to pay multiple high-interest rate credit cards** or personal loans?

Has your family been at risk **of losing your home or other assets** as a result of your financial hardship?

Were you **sent legal paperwork or a lawsuit** from your creditors for non-payment or late

Case 8:23-bk-10571-SC    Doc 185-1    Filed 07/07/23    Entered 07/07/23 13:25:30    Desc
Appendix A    Page 40 of 96
Case 1:22-cv-00057-HSO-BWR    Document 48-4    Filed 04/21/23    Page 8 of 14
Case 1:22-cv-00057-HSO-RHWR    Document 1-5    Filed 03/17/22    Page 8 of 14

3/8/22, 2:57 PM                    LPG Law - USA Debt Relief Legal Services Firm - Call Us!

---

### Has your personal property or **car been repossessed** as a result of late payments?

---

# If your answer is yes to some of these questions, you *might* have a potential legal claim.

## CONTACT US TODAY FOR A FREE CONSULTATION

## 📞 (949) 229-6262

# our core focus

LPG started with a respected group of established attorneys and has rapidly grown across the country into new states as demand for our services has flourished due to demonstrated success for our clients. We assist people that need general legal counsel, financial advisory all the way to protecting individuals in court with our full suite of litigation services.

Case 8:23-bk-10571-SC    Doc 185-1    Filed 07/07/23    Entered 07/07/23 13:25:30    Desc
Appendix A    Page 41 of 96
Case 1:22-cv-00057-HSO-BWR    Document 48-4    Filed 04/21/23    Page 9 of 14
Case 1:22-cv-00057-HSO-RHWR    Document 1-5    Filed 03/17/22    Page 9 of 14

3/8/22, 2:57 PM                     LPG Law - USA Debt Relief Legal Services Firm - Call Us!

and wanted to put our expertise to good use helping individuals around the country
protect themselves from harassment from debtors.

## our firm

OVERVIEW

OUR MISSION

OUR ATTORNEYS

PRACTICE AREAS

WHAT OUR CLIENTS SAY

# FOCUSING EXCLUSIVELY ON

Case 8:23-bk-10571-SC    Doc 185-1    Filed 07/07/23    Entered 07/07/23 13:25:30    Desc
Case 1:22-cv-00057-HSO-BWR    Document 48-4    Filed 04/21/23    Page 10 of 14
Appendix A    Page 42 of 96
Case 1:22-cv-00057-HSO-RHWR    Document 1-5    Filed 03/17/22    Page 10 of 14

# Debt Relief &
# Litigation

*Protecting the Finances of Consumers and Average Americans*

Protecting your Finances. **Get a Free Consultation.**

  Full N   ✉ Email   📞 Phone   Desc    | Get Help Now |

**WHAT WE DO**

## Attorneys for **Consumers In Debt**, Civil and **Commercial** Legal Matters

Offering a way out of debt, collections harassment, legal action and financial burdens in 48 US states

Case 8:23-bk-10571-SC   Doc 185-1   Filed 07/07/23   Entered 07/07/23 13:25:30   Desc
Appendix A   Page 43 of 96
Case 1:22-cv-00057-HSO-BWR   Document 48-4   Filed 04/21/23   Page 11 of 14
Case 1:22-cv-00057-HSO-RHWR   Document 1-5   Filed 03/17/22   Page 11 of 14

3/8/22, 2:57 PM                          LPG Law - USA Debt Relief Legal Services Firm - Call Us!

My largest **creditors** are threatening to send my
case to court                                                    →

I need help consolidating **unstructured debt** from
multiple sources and credit lines                               →

I need help with **civil litigation or arbitration.**           →

I am being **harassed by creditors for collections.**           →

**My credit report was damaged** and needs to be
worked on by a knowledgeable lawyer.                             →

I am dealing with or facing imminent **personal
bankruptcy issues** and seek legal advice                       →

**I have real estate** at risk from financial or legal
issues                                                          →

Case 8:23-bk-10571-SC    Doc 185-1    Filed 07/07/23    Entered 07/07/23 13:25:30    Desc
Appendix A    Page 44 of 96
Case 1:22-cv-00057-HSO-BWR    Document 48-4    Filed 04/21/23    Page 12 of 14
Case 1:22-cv-00057-HSO-RHWR    Document 1-5    Filed 03/17/22    Page 12 of 14

I need **business litigation services** for corporate issues →

# FREQUENTLY ASKED QUESTIONS

### IS THERE ANYTHING I CAN DO TO GET NEGATIVE ITEMS OFF MY CREDIT?      —

Yes. Our attorneys can get to work for you dealing with your creditors and utilizing the full extent of the law to find a resolution that is in your favor. There are many tactics from settlement to debt validation that our law firm can pursue with your creditors and their collections branches or divisions.

### MY CREDITOR WANTS TO SEND MY CASE TO COURT. SHOULD I RESPOND?      +

### HOW DOES THE PROCESS WORK TO GET STARTED? WHAT DO YOU NEED FROM      +

Case 8:23-bk-10571-SC    Doc 185-1    Filed 07/07/23    Entered 07/07/23 13:25:30    Desc
Case 1:22-cv-00057-HSO-BWR    Document 48-4    Filed 04/21/23    Page 13 of 14
Appendix A    Page 45 of 96
Case 1:22-cv-00057-HSO-RHWR    Document 1-5    Filed 03/17/22    Page 13 of 14

3/8/22, 2:57 PM                    LPG Law - USA Debt Relief Legal Services Firm - Call Us!

## DO I HAVE ANY OPTIONS TO AVOID BANKRUPTCY OR GOING TO COURT?

# Get A Legal Case Evaluation

## Our experts are here to answer your questions

### CONTACT US TODAY

**ADDRESS**            **WANT TO TALK?**            **SOCIAL MEDIA**

Case 8:23-bk-10571-SC    Doc 185-1    Filed 07/07/23    Entered 07/07/23 13:25:30    Desc
Appendix A    Page 46 of 96
Case 1:22-cv-00057-HSO-BWR    Document 48-4    Filed 04/21/23    Page 14 of 14
Case 1:22-cv-00057-HSO-RHWR    Document 1-5    Filed 03/17/22    Page 14 of 14

3/8/22, 2:57 PM                           LPG Law – USA Debt Relief Legal Services Firm - Call Us!

**EXHIBIT E**

## Your Lawyers for Debt Resolution to Regain Financial Freedom



DEF00000121



WHY CHOOSE US?

# there's a dedicated team of attorneys for every legal matter.

At LPG Law, we have experienced attorneys for nearly every financial or legal matter. So, when you or your family face hardship, our team can litigate the debt, bankruptcy, or civil issue on your behalf to protect your future.

About Our Firm

DEDICATED & OUTCOME FOCUSED

## How Can Our **Debt Relief Attorneys** Help You?



WE **FIGHT HARD** WHEN REPRESENTING YOU.

# Debt Relief is Our #1 Specialty

Our expert legal team spans across the country in our various locations from west coast to east coast with diverse backgrounds and case experience that allows us to select the right attorney for every case. Don't settle with a firm that has less resources to take on your case and have the connections, know-how and access to fight hard for you outside of court and in court when necessary.

DEF00000123




Do you have creditors harassing you at work and home?

Has your credit score already been negatively impacted?

Have you been denied employment because of your financial situtation?

Have you been doing everything just to pay interest and getting behind no matter what you try?

Has your creditor threatened you for non payment?

Have you been struggling to pay multiple high-interest rate credit cards or personal loans?

Has your family been at risk of losing your home or other assets as a result of your financial hardship?

Were you sent legal paperwork or a lawsuit from your creditors for non-payment or late payments?

Has your personal property or car been repossessed as a result of late payments?

If your **answer is yes** to to working with LPG *sign up* or give us a **call**.

CONTACT US TODAY FOR A FREE CONSULTATION

📞 **(949)229-6262**

DEF00000124

## Our core focus

LPG started with a respected group of established attorneys and has rapidly grown across the country into new states as demand for our services has flourished due to demonstrated success for our clients. We assist people that need general legal counsel, financial advisory all the way to protecting individuals in court with our full suite of litigation services.

From inception we are dedicated to helping consumers and everyday Americans get control over their debt and finances. We've seen debt hurt loved ones, family members and wanted to put our expertise to good use helping individuals around the country protect themselves from harassment from debtors.

**our firm**

OVERVIEW

OUR MISSION

OUR ATTORNEYS

PRACTICE AREAS

WHAT OUR CLIENTS SAY



Protecting your Finances. Get a Free
Consultation.

DEF00000125

WHAT WE DO

# Attorneys for **Consumers In Debt**, Civil and **Commercial** Legal Matters

Offering a way out of debt, collections harassment, legal action and financial burdens in 48 US states

DEF00000126

case to court

I need help consolidating **unstructured debt** from multiple sources and credit lines    →

I need help with **civil litigation or arbitration.**    →

I am being **harassed by creditors for collections.**    →

**My credit report was damaged** and needs to be worked on by a knowledgeable lawyer.    →

I am dealing with or facing imminent **personal bankruptcy issues** and seek legal advice    →

**I have real estate** at risk from financial or legal issues    →

I need **business litigation services** for corporate issues    →

DEF00000127



# FREQUENTLY ASKED QUESTIONS

IS THERE ANYTHING I CAN DO TO GET NEGATIVE ITEMS OFF MY CREDIT?    +

MY CREDITOR WANTS TO SEND MY CASE TO COURT. SHOULD I RESPOND?    +

HOW DOES THE PROCESS WORK TO GET STARTED? WHAT DO YOU NEED FROM ME?    +

DO I HAVE ANY OPTIONS TO AVOID BANKRUPTCY OR GOING TO COURT?    +

## TYPES OF DEBT WE WORK ON

We've been able to help countless individuals with their debt problems across a large variety of verticals from auto to credit card, personal loans, bankruptcy, equipment leases and business loans, lending club and even signature loans, summons, judgments and more. Explore some of the loan types we help service below.

| Credit Cards ▶ | Medical Bills ▶ |
| Private Student Loans ▶ | Timeshares ▶ |
| Lending Club ▶ | Auto Loans ▶ |
| Judgments ▶ | Summons ▶ |
| Unsecured Debt ▶ | Bankruptcy ▶ |
| Commercial Loans ▶ | Real Estate ▶ |

DEF00000128



# EXPERT ATTORNEYS IN DEBT RELIEF

With **Experience** and **Compassion**.

If you've been subject to harassment from your creditors or have found yourself in a difficult position financially from excessive credit card debt, bankruptcy, or civil issues our legal team can help. With extensive experience and service to 48 US states we have an expert ready for you.

Contact an expert debt relief attorney today to schedule a free and confidential consultation to discuss your situation. We look forward to serving you.

## Schedule A **Free** & **Confidential** Consultation

FULL NAME *

EMAIL *

PHONE *

BRIEF CASE DESCRIPTION

GET STARTED



DEF00000130

**EXHIBIT F**

**Form letter disputing their debts**

December 27th, 2021
**PERSONAL AND CONFIDENTIAL**





P.O. Box 513018, Los Angeles, CA 90051-1018
Tel. (949) 715-0644 · Fax (949) 315-4332
Support@LPGLaw.com

‖·|‖··‖·|‖‖·‖‖·|‖·‖‖‖·|‖‖·|·‖‖·‖‖·|‖·|‖·‖·|‖·|‖·‖‖·|
63 1 SP 0.530 ***************SNGLP 956
1.1.590138.S1.3
1ST FRANKLIN FINANCIAL
135 E TUGALO ST
TOCCOA GA  30577-2357

**Re:    Carolyn Beech**
**Dispute of Account: ****7101**

To Whom it May Concern:

I am writing to inform you that I have been retained by Carolyn Beech, born on 11/22/1954, bearing account number ****7101. My client hereby officially disputes the debt you allege my client owes to you. Please provide verification that my client incurred the obligation you assert, including the operative contract you assert my client entered into, and all documentation setting forth the purported amount owed on the account you allege. Please direct all communication regarding this account to me at the contact information provided above.

Specifically, my client disputes the validity of the debt you allege because my client did not incur the obligations you assert. Upon a review of my client's records, it appears that you have not complied with the Fair Credit Billing Act, Fair Debt Collections Practices Act, Truth in Lending Act, and Credit CARD Act of 2009. My client specifically raises, inter alia, the lack of legal capacity of you, the debt collector; the absence of a valid signature on any purported contract with you; the lack of a true bill in my client's possession concerning the purported account; and the lack of any verification of the alleged debt. Accordingly, please provide the following information:

-    The operative contract(s), and all of them, that you assert my client entered into with you

-    The name, address, phone number, and account number of the original creditor if you acquired my client's account after it was allegedly opened

-    Any affidavit of assignment if you are not the original purported creditor, including the date of assignment (if not found on the affidavit, please provide documentation to show the date of assignment)

-    The contract into which you entered with the original creditor, if applicable, to acquire the debt

63 590138 S1 1 3



my client allegedly owes

-     Proof that the statute of limitations has not expired on the debt my client allegedly owes to you

-     Proof that you possess a license to collect upon debts if you are not the original creditor on the purported account, including a license in the state in which you operate and the state in which my client resides

-     Proof that my client's purported account was never charged off by the original creditor or any subsequent debt collector who acquired collection rights from the original creditor

-     A copy of any judgment you purport to have concerning the debt my client allegedly owes

-     Documentation showing the legal capacity of the representative responding to this demand

If you fail to respond to this demand for verification and validation of the debt you allege my client owes to you according to state and federal law, my client will treat this debt as invalid and any further attempts to collect upon this debt will be considered a violation of such laws and will trigger legal action on behalf of my client.  I look forward to an amicable resolution to this dispute, and await your response.

Sincerely,

Daniel S. March

DEF00000032

**<u>EXHIBIT G</u>**

**Cease and desist from further communications**





P.O. Box 513018, Los Angeles, CA 90051-1018
Tel. (949) 715-0644 · Fax (949) 315-4332
Support@LPGLaw.com

December 27th, 2021
**PERSONAL AND CONFIDENTIAL**
1st Franklin Financial
135 E TUGALO ST
TOCCOA, GA 30577

### DEMAND TO CEASE AND DESIST FURTHER COMMUNICATIONS

**Re:    Carolyn Beech**
**Account Number: 863801497101**

To Whom It May Concern:

I represent Carolyn Beech in connection with the above-referenced account that you claim is owed by my client. We are exploring all options to resolve my client's debts, including bankruptcy.

Effective immediately, you are to **CEASE ALL COMMUNICATION** with my client; including, but not limited to, calling any telephone numbers associated with the above-referenced account, and/or calling any third parties. All further communications regarding the above-referenced account should be directed to my office.

If you have any questions regarding this matter, please contact Litigation Practice Group at 949-229-6262. Thank you for your attention to this matter.

Very truly yours,

Daniel S. March

DEF00000033

# EXHIBIT H

## Major credit bureaus form letters



P.O. Box 513018, Los Angeles, CA 90051-1018
Tel. (949) 715-0644 · Fax (949) 315-4332
Support@LPGLaw.com

February 22, 2022

**PERSONAL AND CONFIDENTIAL**

EQUIFAX
PO BOX 740256
ATLANTA, GA 30374

**Re:   Carolyn Beech**
**Social Security No: XXX-XX-7188**
**Date of Birth: 11/22/1954**
**Address: 9 Pelican Lane., Carriere, MS 39426**

To Whom It May Concern:

I am writing to dispute the following account:

**Creditor: FSTHERITAG**
**Account #: 33632**

Please take note that I adamantly deny liability for the above-referenced account, and hereby assert that I **DO NOT OWE** the account, that the balance listed is the **WRONG AMOUNT**, and that FSTHERITAG **CANNOT COLLECT** the account.

Based on the foregoing, pursuant to the Fair Credit Reporting Act, 15 U.S.C. § 1681 et al., I hereby demand the immediate **REMOVAL/DELETION** of this account from my credit report, and that you block any future reporting of the same.

Very truly yours,

Carolyn Beech
(poa)

# EXHIBIT I

## Major credit bureaus form letters



P.O. Box 513018, Los Angeles, CA 90051-1018
Tel. (949) 715-0644 · Fax (949) 315-4332
Support@LPGLaw.com

February 22, 2022

**PERSONAL AND CONFIDENTIAL**
EXPERIAN
PO BOX 4500
ALLEN, TX 75013

**Re:    Carolyn Beech**
**Social Security No: XXX-XX-7188**
**Date of Birth: 11/22/1954**
**Address: 9 Pelican Lane., Carriere, MS 39426**

To Whom It May Concern:

I am writing to dispute the following account:

**Creditor: FSTHERITAG**
**Account #: 33632**

Please take note that I adamantly deny liability for the above-referenced account, and hereby assert that **I DO NOT OWE** the account, that the balance listed is the **WRONG AMOUNT**, and that FSTHERITAG **CANNOT COLLECT** the account.

Based on the foregoing, pursuant to the Fair Credit Reporting Act, 15 U.S.C. § 1681 et al., I hereby demand the immediate **REMOVAL/DELETION** of this account from my credit report, and that you block any future reporting of the same.

Very truly yours,

Carolyn Beech
(poa)

**EXHIBIT J**

**Major credit bureaus form letters**



P.O. Box 513018, Los Angeles, CA 90051-1018
Tel. (949) 715-0644 · Fax (949) 315-4332
Support@LPGLaw.com

February 22, 2022

**PERSONAL AND CONFIDENTIAL**

TRANSUNION
PO BOX 2000
CHESTER, PA 19016


Re:   Carolyn Beech
Social Security No: XXX-XX-7188
Date of Birth: 11/22/1954
Address: 9 Pelican Lane., Carriere, MS 39426

To Whom It May Concern:

I am writing to dispute the following account:

Creditor: FSTHERITAG
Account #: 33632

Please take note that I adamantly deny liability for the above-referenced account, and hereby assert that I **DO NOT OWE** the account, that the balance listed is the **WRONG AMOUNT**, and that FSTHERITAG **CANNOT COLLECT** the account.

Based on the foregoing, pursuant to the Fair Credit Reporting Act, 15 U.S.C. § 1681 et al., I hereby demand the immediate **REMOVAL/DELETION** of this account from my credit report, and that you block any future reporting of the same.


Very truly yours,

Carolyn Beech
(poa)

**EXHIBIT K**

**Accounts receivable purchase agreement**

Case 8:23-bk-10571-SC    Doc 185-1    Filed 07/07/23    Entered 07/07/23 13:25:30    Desc
Appendix A    Page 70 of 96
Case 1:22-cv-00057-HSO-BWR    Document 48-11    Filed 04/21/23    Page 2 of 14
Case 8:23-cv-00030-JWH-ADS    Document 13-9    Filed 01/12/23    Page 130 of 526    Page ID
#:4323

DocuSign Envelope ID: 51846E7C-A0AA-4675-9021-A16D2CE4B5A3

## ACCOUNTS RECEIVABLE PURCHASE AGREEMENT

This ACCOUNTS RECEIVABLE PURCHASE AGREEMENT (this "**Agreement**") is made as of February 16, 2022 (the "**Agreement Date**"), by and between Validation Partners LLC, a Florida limited liability company (the "**Buyer**"), and The Litigation Practice Group P.C.                    , a California Incorporated Company                (the "**Seller**", and together with the Buyer, the "**Parties**").

### RECITALS

WHEREAS, in the regular course of business, the Seller originates account receivables from Litigation Practice Group LLC ("**LPG**") in connection with client on-boarding services provided by the Seller to LPG and its affiliates;

WHEREAS, the account receivables represent an obligation of LPG to pay Seller for services that Seller previously provided to LPG;

WHEREAS, the Seller desires to sell, assign, transfer, and deliver to the Buyer, and the Buyer desires to purchase, acquire, and accept from the Seller, certain of these account receivables (the "**Purchased Accounts**").

NOW, THEREFORE, in consideration of the covenants and representations set forth herein, the Parties, intending to be legally bound, agree as follows:

### ARTICLE 1.
### DEFINITIONS

Section 1.1      Certain Definitions. Certain defined terms used in this Agreement are set forth on **Exhibit A**.

### ARTICLE 2.
### ASSIGNMENT AND TRANSFER AND CONSIDERATION

Section 2.1      Assignment of the Purchased Accounts to the Buyer. Upon execution of this Agreement and subject to the terms and conditions set forth herein, the Seller shall sell, assign, transfer, and deliver, and the Buyer shall purchase, acquire, and accept from the Seller, all of the Seller's right, title, and interest in and to the Purchased Accounts set forth on **Exhibit B**, free and clear of any Liens. Other than the Purchased Accounts, the Buyer shall not purchase or acquire any other assets of the Seller (collectively, the "**Excluded Assets**").

Section 2.2      No Assumption of Liabilities. The Buyer shall not assume any Liabilities of the Seller of any kind, whether known or unknown, contingent, matured, or otherwise, whether currently existing or hereinafter created (collectively, the "**Excluded Liabilities**").

Section 2.3      Payment of Purchase Price. Buyer shall pay $ 561____ for each Purchased Account (the "**Purchase Price**"). The aggregate purchase price for the Purchased Accounts shall be equal to $ 2,202,657 : the number of purchased accounts ( 3,927____ ) times the purchase Price ($ 561____ ). The Buyer shall pay the Purchase Price (the "**Upfront Cash Payment**") to the Seller at the Closing, in cash, by wire transfer of immediately available funds in accordance with the wire transfer instructions set forth in **Schedule 2.3** (the "**Wire Instructions**").

Case 8:23-bk-10571-SC   Doc 185-1   Filed 07/07/23   Entered 07/07/23 13:25:30   Desc
Appendix A   Page 71 of 96
Case 1:22-cv-00057-HSO-BWR   Document 48-11   Filed 04/21/23   Page 3 of 14
Case 8:23-cv-00030-JWH-ADS   Document 13-9   Filed 01/12/23   Page 131 of 526   Page ID
#:4324

DocuSign Envelope ID: 51846E7C-A0AA-4675-9021-A16D2CE4B5A3

## ARTICLE 3.
## REPRESENTATIONS AND WARRANTIES OF THE SELLER

The Seller represents and warrants to the Buyer, as of the Agreement Date and as of the Closing Date, or, if expressly made as of a specified date, as of such specified date, as follows:

Section 3.1   Organization; Good Standing.  The Seller is a California Incorporated Company , duly organized, validly existing, and in good standing under the Laws of the State of California and is duly qualified to do business and is in good standing as a foreign corporation in each jurisdiction where the ownership or operation of the Business requires such qualification, except where the failure to be so qualified would not reasonably be expected to have, individually or in the aggregate, a material adverse effect on the business, results of operations, financial condition, or assets of the Seller.

Section 3.2   Power and Authority.  The Seller has all requisite right, power, and authority to execute, deliver, and perform this Agreement and the Transaction Agreements to which it is a party, to consummate the transactions contemplated hereby and thereby, and to perform its obligations hereunder and thereunder.  The execution and delivery of this Agreement and the Transaction Agreements by the Seller, and the consummation by the Seller of the transactions contemplated hereby and thereby, have been duly approved by the Seller, and no further action is required on the part of the Seller to authorize this Agreement, any Transaction Agreement to which it is a party, or the transactions contemplated hereby and thereby.  This Agreement has been, and each of the Transaction Agreements will be, duly and validly executed and delivered by the Seller and, assuming the due and valid authorization, execution, and delivery of this Agreement by the other Parties, and of each such Transaction Agreement by the other parties thereto, constitutes, or will constitute, a valid and binding obligation of the Seller, enforceable against it in accordance with its terms and conditions, except as enforcement may be limited by applicable bankruptcy, insolvency, reorganization, moratorium, and other Laws affecting enforcement of creditor's rights generally and except insofar as the availability of equitable remedies may be limited by applicable Law.

Section 3.3   Title to, and Sufficiency of, the Purchased Accounts.  The Seller has and shall convey to the Buyer, at the Closing, good, valid, transferable, and marketable title to, or valid leasehold interests in, all of the Purchased Accounts, free and clear of all Liens.

Section 3.4   Consents.  The Seller is not required to give any notice to, make any filing with, or obtain any authorization, consent, or approval of, any Governmental Body or Third Party, including a party to any assigned contract, in connection with the execution, delivery, and performance by the Seller of this Agreement or any of the Transaction Agreements to which it is a party or the consummation of the transactions contemplated hereby and thereby.

Section 3.5   No Conflicts.  The execution and delivery by the Seller of this Agreement and each of the Transaction Agreements, and the consummation of the transactions contemplated hereby and thereby, will not conflict with, result in any violation of, or default under (with or without notice or lapse of time, or both), or give rise to an additional payment obligation, a right of termination, cancellation, modification, or acceleration of any obligation, or loss of any benefit, under: (a) any provision of the Organizational Documents of the Seller; (b) any contract to which the Seller is party, including, without limitation, any assigned contract; or (c) any Law or order applicable to the Seller or any of the Purchased Accounts.

Section 3.6   Compliance with Laws.  The Seller has materially complied, and is now materially complying, with all Laws applicable to the ownership and use of the Purchased Accounts.

104

Case 8:23-bk-10571-SC    Doc 185-1    Filed 07/07/23    Entered 07/07/23 13:25:30    Desc
Appendix A    Page 72 of 96
Case 1:22-cv-00057-HSO-BWR    Document 48-11    Filed 04/21/23    Page 4 of 14
Case 8:23-cv-00030-JWH-ADS    Document 13-9    Filed 01/12/23    Page 132 of 526    Page ID
#:4325

DocuSign Envelope ID: 51846E7C-A0AA-4675-9021-A16D2CE4B5A3

Section 3.7    <u>Legal Proceedings</u>. There is no Action of any nature pending or, to the Knowledge of the Seller, threatened against or by the Seller: (a) relating to or affecting the Purchased Accounts or (b) that challenges or seeks to prevent, enjoin, or otherwise delay the transactions contemplated by this Agreement and the Transaction Agreements. No event has occurred or circumstance exists that may give rise to, or serve as a basis for, any such Action.

Section 3.8    <u>Condition of Purchased Accounts</u>. Each Purchased Account shall have received one prior payment from the primary account debtor and will be in good standing (not cancelled). Each Purchased Account will be less than 80% collected and have a remaining expected term of 48 months or less. To the knowledge of Seller, the Purchased Accounts will not be the subject of any litigation or other legal proceedings.

Section 3.9    <u>Confidentiality</u>. Seller agrees and acknowledges that all Purchased Accounts, the pricing, and all terms set forth in this Agreement are confidential (together, the "**Confidential Information**"). Seller will at all times keep the Confidential Information in confidence and trust. Seller will not, without the prior written consent of an authorized officer of Buyer, (A) copy, use or disclose any Confidential Information, (B) deliver or disclose any Confidential Information to any person or entity outside the Buyer, or (C) use the Confidential Information for Seller's own use or use it to the detriment of Buyer. Notwithstanding the foregoing, Seller may, without consent, use the Confidential Information and disclose and deliver same to Seller's employees or agents, if applicable, who have a need to know, provided such employees or agents have entered into written agreements approved by Buyer and containing provisions at least as restrictive as these provisions. Seller agrees that violation of this Section 3.9. The Parties agree that the disclosure of the Confidential Information in violation of this Agreement may cause the Buyer irreparable harm and that any breach or threatened breach by the Seller entitles Buyer to seek injunctive relief, in addition to any other legal or equitable remedies available to it, in any court of competent jurisdiction.

# ARTICLE 4.
# REPRESENTATIONS AND WARRANTIES OF THE BUYER

The Buyer represents and warrants to the Seller, as of the Agreement Date and as of the Closing Date, or, if expressly made as of a specified date, as of such specified date, as follows:

Section 4.1    <u>Organization; Good Standing</u>. The Buyer is a limited liability company, duly organized, validly existing, and in good standing under the Laws of the State of Florida.

Section 4.2    <u>Power and Authority</u>. The Buyer has all requisite right, power, and authority to execute, deliver, and perform this Agreement and the Transaction Agreements to which it is a party, to consummate the transactions contemplated hereby and thereby, and to perform its obligations hereunder and thereunder. The execution and delivery of this Agreement and the Transaction Agreements by the Buyer, and the consummation by the Buyer of the transactions contemplated hereby and thereby, have been duly approved by the Buyer, and no further action is required on the part of the Buyer to authorize this Agreement, any Transaction Agreement to which it is a party, or the transactions contemplated hereby and thereby. This Agreement has been, and each of the Transaction Agreements will be, duly and validly executed and delivered by the Buyer and, assuming the due and valid authorization, execution, and delivery of this Agreement by the other Parties, and of each such Transaction Agreement by the other parties thereto, constitutes, or will constitute, a valid and binding obligation of the Buyer, enforceable against it in accordance with its terms and conditions, except as enforcement may be limited by applicable bankruptcy, insolvency, reorganization, moratorium and other Laws affecting enforcement of creditor's rights generally and except insofar as the availability of equitable remedies may be limited by applicable Law.

Case 8:23-bk-10571-SC    Doc 185-1    Filed 07/07/23    Entered 07/07/23 13:25:30    Desc
Appendix A    Page 73 of 96
Case 1:22-cv-00057-HSO-BWR    Document 48-11    Filed 04/21/23    Page 5 of 14
Case 8:23-cv-00030-JWH-ADS    Document 13-9    Filed 01/12/23    Page 133 of 526    Page ID
#:4326
DocuSign Envelope ID: 51846E7C-A0AA-4675-9021-A16D2CE4B5A3

**Section 4.3      No Conflicts.** The execution and delivery by the Buyer of this Agreement and each of the Transaction Agreements, and the consummation of the transactions contemplated hereby and thereby, will not conflict with, result in any violation of, or default under (with or without notice or lapse of time, or both), or give rise to an additional payment obligation, a right of termination, cancellation, modification, or acceleration of, any obligation, or loss of any benefit under: (a) any provision of the Buyer's Organizational Documents; (b) any contract to which the Buyer is party, other than the Buyer Representation Agreement; or (c) any Law applicable to the Buyer.

**Section 4.4      Sufficient Funds.** The Buyer has, and will have, sufficient funds available to make payment of the Purchase Price and consummate the transactions contemplated by this Agreement and the Transaction Agreements.

**ARTICLE 5.**
**COVENANTS**

**Section 5.1      Appropriate Actions.**

(a)      General. Each of the Parties shall use commercially reasonable efforts to take all actions necessary to consummate the transactions contemplated by this Agreement as soon as reasonably practicable after the execution of this Agreement, including taking all actions necessary to comply promptly with all applicable Laws that may be imposed on it or any of its Affiliates with respect to the Closing.

**ARTICLE 6.**
**CLOSING**

**Section 6.1      Closing.** The closing of the transactions contemplated by this Agreement (the "Closing") will take place upon the execution and delivery of this Agreement or at such other time, date, and place as the Parties may agree in writing. The date on which the Closing occurs is hereinafter referred to as the "Closing Date." The Parties agree that the Closing may take place by the electronic exchange of executed counterpart documents and the electronic transfer of funds.

**Section 6.2      Closing Deliverables of the Seller.** At or prior to the Closing, Seller shall deliver to Buyer any of the following if requested by Buyer: (i) a bill of sale and assignment and assumption agreement substantially in the form attached hereto as **Exhibit C** (the "**Bill of Sale and Assignment and Assumption Agreement**"), duly executed by the Seller, effecting the transfer and assignment to, and assumption by, the Buyer of the Purchased Accounts; and (ii) such other customary instruments of transfer, assumption, filings, or documents, in form and substance reasonably satisfactory to the Buyer, as may be required to give effect to this Agreement.

**Section 6.3      Closing Deliverables of the Buyer.** At or prior to the Closing, the Seller shall have received the following: (i) the Upfront Cash Payment; and (ii) if requested pursuant to Section 6.2, the Bill of Sale and Assignment and Assumption Agreement, duly executed by the Buyer.

**Section 6.4      Indemnification by the Seller.** Subject to the limitations set forth in this **Article 6**, the Seller agrees to indemnify and hold harmless the Buyer, including its shareholders, members, directors, managers, officers, employees, Affiliates, and agents (each, a "**Buyer Indemnified Party**" and, collectively, the "**Buyer Indemnified Parties**"), against all claims, losses, Liabilities, damages, deficiencies, diminutions in value, costs, interest, awards, judgments, penalties, and expenses, including reasonable out-of-pocket attorneys' and consultants' fees and expenses and including any such reasonable expenses incurred in connection with investigating, defending against, or settling any of the foregoing (each, a "**Loss**" and, collectively, the "**Losses**") paid, suffered, incurred, sustained, or accrued by any Buyer Indemnified Party, directly or indirectly, as a result of,

Case 8:23-bk-10571-SC    Doc 185-1    Filed 07/07/23    Entered 07/07/23 13:25:30    Desc
Appendix A    Page 74 of 96
Case 1:22-cv-00057-HSO-BWR    Document 48-11    Filed 04/21/23    Page 6 of 14
Case 8:23-cv-00030-JWH-ADS    Document 13-9    Filed 01/12/23    Page 134 of 526    Page ID
#:4327

DocuSign Envelope ID: 51846E7C-A0AA-4675-9021-A16D2CE4B5A3

arising out of, or in connection with: (a) any inaccuracy in, or breach of, any of the representations or warranties of the Seller contained in this Agreement, (b) any breach or non-fulfillment of any covenant, agreement, or obligation to be performed by the Seller pursuant to this Agreement, (c) any Excluded Asset or any Excluded Liability.

Section 6.5    Indemnification by the Buyer. Subject to the limitations set forth in this Article 6, the Buyer agrees to indemnify and hold harmless the Seller, including its Affiliates and agents (each, a "**Seller Indemnified Party**" and, collectively, the "**Seller Indemnified Parties**"), against all Losses paid, suffered, incurred, sustained, or accrued by any Seller Indemnified Party, directly or indirectly, as a result of, arising out of, or in connection with: (a) any inaccuracy in, or breach of, any of the representations or warranties of the Buyer contained in this Agreement; (b) any breach or non-fulfillment of any covenant, agreement, or obligation to be performed by the Buyer pursuant to this Agreement; (c) any event or occurance related to the Purchased Accounts or Buyer occurring after the Closing; or (d) resulting from any omissions or misstatements made by Buyer to investors or potential investors.

Section 6.6    Indemnification Procedures.

(a)    No Restraints. Promptly following receipt by an Indemnified Party of notice by a Third Party (including any Governmental Body) of any complaint, dispute, or claim or the commencement of any audit, investigation, Action or proceeding with respect to which such Indemnified Party may be entitled to indemnification pursuant hereto (a "**Third-party Claim**"), such Indemnified Party shall provide written notice thereof to the Indemnifying Party, provided, however, that the failure to so notify the Indemnifying Party shall relieve the Indemnifying Party from Liability hereunder with respect to such Third-party Claim only if, and only to the extent that, such failure to so notify the Indemnifying Party results in the forfeiture by the Indemnifying Party of rights and defenses otherwise available to the Indemnifying Party with respect to such Third-party Claim. The Indemnifying Party shall have the right, upon written notice delivered to the Indemnified Party within twenty days thereafter assuming full responsibility for any Losses resulting from such Third-party Claim, to assume the defense of such Third-party Claim, including the employment of counsel reasonably satisfactory to the Indemnified Party and the payment of the fees and disbursements of such counsel; provided, however, if the Indemnifying Party declines or fails to assume the defense of such Third-party Claim on the terms provided above or to employ counsel reasonably satisfactory to the Indemnified Party, in either case within such twenty day period, then any Losses shall include the reasonable fees and disbursements of counsel for the Indemnified Party as incurred. In any Third-party Claim for which indemnification is being sought hereunder the Indemnified Party or the Indemnifying Party, whichever is not assuming the defense of such Third-party Claim, shall have the right to participate in such matter and to retain its own counsel at such Party's own expense. The Indemnifying Party or the Indemnified Party (as the case may be) shall at all times use reasonable efforts to keep the Indemnifying Party or Indemnified Party (as the case may be) reasonably apprised of the status of the defense of any matter, the defense of which it is maintaining, and to cooperate in good faith with each other with respect to the defense of any such matter.

(b)    No Indemnified Party may settle or compromise any Third-party Claim or consent to the entry of any judgment with respect to which indemnification is being sought hereunder without the prior written consent of the Indemnifying Party (which may not be unreasonably withheld or delayed), unless (i) the Indemnifying Party fails to assume and maintain the defense of such Third-party Claim or (ii) such settlement, compromise, or consent includes an unconditional release of the Indemnifying Party and its officers, directors, employees and Affiliates from all Liability arising out of, or related to, such Third-party Claim. An Indemnifying Party may not, without the prior written consent of the Indemnified Party, settle or compromise any Third-party Claim or consent to the entry of any judgment with respect to which indemnification is being sought hereunder unless such settlement, compromise, or consent (A) includes an unconditional release of the Indemnified Party and its officers, directors, employees, and Affiliates from all Liability arising out of, or related to, such Third-party

Case 8:23-bk-10571-SC   Doc 185-1   Filed 07/07/23   Entered 07/07/23 13:25:30   Desc
Appendix A   Page 75 of 96
Case 1:22-cv-00057-HSO-BWR   Document 48-11   Filed 04/21/23   Page 7 of 14
Case 8:23-cv-00030-JWH-ADS   Document 13-9   Filed 01/12/23   Page 135 of 526   Page ID
#:4328

DocuSign Envelope ID: 51846E7C-A0AA-4675-9021-A16D2CE4B5A3

Claim, (B) does not contain any admission or statement suggesting any wrongdoing or Liability on behalf of the Indemnified Party, and (C) does not contain any equitable order, judgment, or term that in any manner affects, restrains, or interferes with the business of the Indemnified Party or any of the Indemnified Party's Affiliates.

(c)   If an Indemnified Party claims a right to payment pursuant hereto with respect to any matter not involving a Third-party Claim (a "Direct Claim"), such Indemnified Party shall send written notice of such claim to the appropriate Indemnifying Party (each, a "Notice of Claim"). Such Notice of Claim shall specify the basis for such Direct Claim. The failure by any Indemnified Party so to notify the Indemnifying Party shall not relieve the Indemnifying Party from any Liability that it may have to such Indemnified Party with respect to any Direct Claim made pursuant to this Section 6.6(c). If the Indemnifying Party does not notify the Indemnified Party within thirty days following its receipt of such Notice of Claim that the Indemnifying Party disputes its Liability to the Indemnified Party under this Article 6 or the amount thereof, the Direct Claim specified by the Indemnified Party in such Notice of Claim shall be conclusively deemed a Liability of the Indemnifying Party under this Article 6, and the Indemnifying Party shall pay the amount of such Liability to the Indemnified Party on demand or, in the case of any Notice of Claim in which the amount of the Direct Claim (or any portion of the Direct Claim) is estimated, on such later date when the amount of such Direct Claim (or such portion of such Direct Claim) becomes finally determined. In the event that the Indemnifying Party has timely disputed its Liability with respect to such Direct Claim as provided above, as promptly as possible, such Indemnified Party and the appropriate Indemnifying Party shall establish the merits and amount of such Direct Claim (by mutual agreement, litigation, arbitration or otherwise) and, within five business days following the final determination of the merits and amount of such Direct Claim, the Indemnifying Party shall pay to the Indemnified Party an amount equal to such Direct Claim as determined hereunder.

## ARTICLE 7.
## MISCELLANEOUS

Section 7.1   Entire Agreement; Amendment.   This Agreement and the Transaction Agreements (including the exhibits hereto and thereto and the documents referred to therein) constitute the entire agreement among the Parties with respect to the subject matter hereof and supersede any prior understandings, agreements, or representations by or among the Parties, written or oral, to the extent they related in any way to the subject matter hereof. This Agreement may be amended with the written consent of each of the Parties or any successor thereto by execution of an instrument in writing.

Section 7.2   Waivers.   The rights and remedies of the Parties to this Agreement are cumulative and not alternative. To the maximum extent permitted by applicable Law: (a) no claim or right arising out of this Agreement or the documents referred to in this Agreement can be discharged by one Party, in whole or in part, by a waiver or renunciation of the claim or right unless in writing signed by the other Parties; (b) no waiver that may be given by a Party will be applicable except in the specific instance for which it is given; and (c) no notice to, or demand on, one Party will be deemed to be a waiver of any obligation of such Party or of the right of the Party giving such notice or demand to take further action without notice or demand as provided in this Agreement or the Transaction Agreements.

Section 7.3   Notices.   All notices and other communications required or permitted hereunder shall be made to the address of a Party listed on the signature page to this Agreement and shall be (a) in writing, (b) effective when given, and (c), in any event, deemed to be given upon receipt or, if earlier: (i) upon delivery, if delivered by hand; (ii) two business days after deposit with FedEx Express or similar recognized international overnight courier service, freight prepaid; or (iii) one business day after facsimile or electronic mail transmission. A Party may change the address to which notices, requests, demands, claims, and other communications hereunder are to be delivered by giving the other Parties advance written notice pursuant to the provisions above.

Case 8:23-bk-10571-SC   Doc 185-1   Filed 07/07/23   Entered 07/07/23 13:25:30   Desc
Appendix A   Page 76 of 96
Case 1:22-cv-00057-HSO-BWR   Document 48-11   Filed 04/21/23   Page 8 of 14
Case 8:23-cv-00030-JWH-ADS   Document 13-9   Filed 01/12/23   Page 136 of 526   Page ID
#:4329

DocuSign Envelope ID: 51846E7C-A0AA-4675-9021-A16D2CE4B5A3

Section 7.4    Successors and Assigns.  This Agreement shall be binding upon, and inure to the benefit of, the Parties named herein and their respective successors and permitted assigns.  Neither this Agreement nor any rights or obligations of a Party hereunder shall be assigned by a Party (unless to an Affiliate of such Party) without the prior written consent of the other Parties.  This Agreement will be binding upon any permitted assignee of any Party.  No assignment shall have the effect of relieving any Party to this Agreement of any of its obligations hereunder.

Section 7.5    Public Disclosure.  Except as may be required by Law, the Seller shall not issue any statement or communication to any Third Party (other than its respective agents) regarding the subject matter of this Agreement or the transactions contemplated hereby, including, if applicable, the termination of this Agreement and the reasons therefor, without the prior written consent of the Buyer.

Section 7.6    Expenses and Fees.  Whether or not the Closing occurs, all fees and expenses incurred in connection with this transactions contemplated by this Agreement, including all legal, accounting, financial advisory, consulting and all other fees and expenses of Third Parties incurred by a Party in connection with the negotiation and effectuation of the terms and conditions of this Agreement and the transactions contemplated hereby, shall be the obligation of the respective Party incurring such fees and expenses.

Section 7.7    Specific Performance.  The Parties agree that irreparable damage would occur if any provision of this Agreement was not performed in accordance with the terms hereof and that the Parties shall be entitled to specific performance of the terms hereof, in addition to any other remedy to which they are entitled hereunder, at Law or in equity.

Section 7.8    Counterparts.  This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement.  A signed copy of this Agreement delivered by facsimile, electronic mail, or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

Section 7.9    Governing Law.  This Agreement shall, in all respects, be construed in accordance with, and governed by, the Laws of the State of California without regard to conflict of Laws principles.

Section 7.10    Severability.  Any term or provision of this Agreement that is invalid or unenforceable in any situation in any jurisdiction shall not affect the validity or enforceability of the remaining terms and provisions hereof or the validity or enforceability of the offending term or provision in any other situation or in any other jurisdiction.

Section 7.11    Construction.  The Parties have participated jointly in the negotiation and drafting of this Agreement.  In the event an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the Parties and no presumption or burden of proof shall arise favoring or disfavoring any Party by virtue of the authorship of any of the provisions of this Agreement.

Case 8:23-bk-10571-SC    Doc 185-1    Filed 07/07/23    Entered 07/07/23 13:25:30    Desc
Appendix A    Page 77 of 96
Case 1:22-cv-00057-HSO-BWR    Document 48-11    Filed 04/21/23    Page 9 of 14
Case 8:23-cv-00030-JWH-ADS    Document 13-9    Filed 01/12/23    Page 137 of 526    Page ID
#:4330

DocuSign Envelope ID: 51846E7C-A0AA-4675-9021-A16D2CE4B5A3

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the Agreement Date.

**BUYER:**

VALIDATION PARTNERS LLC
a Florida limited liability company

By: _____

| | |
|---|---|
| Name: | Russ Squires |
| Title: | Principal |
| Address: | 1300 Sawgrass Corporate Pkwy, Ste 110 |
| | Sunrise, FL 33323 |

**SELLER:**

The Litigation Practice Group P.C.
a  California Incorporated Company

By: _____
Daniel S. March

| | |
|---|---|
| Name: | Daniel S. March |
| Title: | Managing Shareholder |
| Address: | 17542 17TH STREET, SUITE 100 |
| | TUSTIN CA 92780 |

**APPROVAL OF ASSIGNMENT**

The assignment of the Purchased Accounts set forth in this Agreement is hereby approved, and with respect to the Purchased Accounts, the Buyer shall have all rights of Buyer as agreed.

The Litigation Practice Group P.C.

By: _____
Daniel S. March

| | |
|---|---|
| Name: | Daniel S. March |
| Title: | Managing Shareholder |

*[Signature Page to Accounts Receivable Purchase Agreement]*

Case 8:23-bk-10571-SC    Doc 185-1    Filed 07/07/23    Entered 07/07/23 13:25:30    Desc
Appendix A    Page 78 of 96
Case 1:22-cv-00057-HSO-BWR    Document 48-11    Filed 04/21/23    Page 10 of 14
Case 8:23-cv-00030-JWH-ADS    Document 13-9    Filed 01/12/23    Page 138 of 526    Page ID
#:4331
DocuSign Envelope ID: 51846E7C-A0AA-4675-9021-A16D2CE4B5A3

**EXHIBIT A**

**DEFINITIONS**

As used in this Agreement, the following terms have the following meanings (terms defined in the singular to have a correlative meaning when used in the plural and vice versa).

(a)     "Action" shall mean any civil, criminal, or administrative action, claim, suit, demand, charge, citation, reexamination, opposition, interference, decree, injunction, mediation, hearing, notice of violation, demand letter, litigation, proceeding, labor dispute, arbitral action, governmental or other audit, inquiry, criminal prosecution, investigation, unfair labor practice charge, or complaint.

(b)     "Agreement" shall have the meaning set forth in the preamble to this Agreement.

(c)     "Agreement Date" shall have the meaning set forth in the preamble to this Agreement.

(d)     "Affiliate" shall mean (i) with respect to any non-natural Person, any Person that, directly or indirectly, through one or more intermediaries, controls, is controlled by, or is under common control with, such Person and (ii) with respect to any individual, (A) family members of such individual, by blood, adoption, or marriage, (B) such individual's spouse or ex-spouse and (C) any Person that is directly or indirectly under the control of any of the foregoing individuals. For purposes of this definition, "control" (including with correlative meanings, the terms "controlling," "controlled by," and under "common control with") means the possession, directly or indirectly, of the power to direct the management and policies of a Person, whether through the ownership of voting securities, by contract, or otherwise.

(e)     "Bill of Sale and Assignment and Assumption Agreement" shall have the meaning set forth in Section 6.2.

(f)     "Business" shall mean the business of the Seller as conducted on the Agreement Date.

(g)     "Buyer" shall have the meaning set forth in the preamble to this Agreement.

(h)     "Buyer Indemnified Parties" shall have the meaning set forth in Section 6.4.

(i)     "Closing" shall have the meaning set forth in Section 6.1.

(j)     "Closing Date" shall have the meaning set forth in Section 6.1.

(k)     "Direct Claim" shall have the meaning set forth in Section 6.6(c).

(l)     "Excluded Assets" shall have the meaning set forth in Section 2.1.

(m)     "Excluded Liabilities" shall have the meaning set forth in Section 2.2.

(n)     "Governmental Body" shall mean any: (i) nation, province, state, county, city, town, village, district, or other jurisdiction of any nature; (ii) federal, provincial, state, local, municipal, foreign, or other government; (iii) governmental or quasi-governmental authority of any nature (including any governmental agency, branch, department, official, or entity and any court or other tribunal); (iv) multi-national organization or body; or (v) body exercising, or entitled to exercise, any administrative, executive, judicial, legislative, police, regulatory, or taxing authority or power of any nature.

111

Case 8:23-bk-10571-SC    Doc 185-1    Filed 07/07/23    Entered 07/07/23 13:25:30    Desc
Appendix A    Page 79 of 96
Case 1:22-cv-00057-HSO-BWR    Document 48-11    Filed 04/21/23    Page 11 of 14
Case 8:23-cv-00030-JWH-ADS    Document 13-9    Filed 01/12/23    Page 139 of 526    Page ID
#:4332

DocuSign Envelope ID: 51846E7C-A0AA-4675-9021-A16D2CE4B5A3

(o)    "**Indebtedness**" means, without duplication and with respect to the Seller, all: (i) indebtedness for borrowed money; (ii) obligations for the deferred purchase price of property or services; (iii) long or short-term obligations evidenced by notes, bonds, debentures or other similar instruments; (iv) obligations under any interest rate, currency swap, or other hedging agreement or arrangement; (v) capital lease obligations; (vi) reimbursement obligations under any letter of credit, banker's acceptance or similar credit transactions; (vii) guarantees made by the Seller on behalf of any third party in respect of obligations of the kind referred to in the foregoing clauses (i) through (vi); and (viii) any unpaid interest, prepayment penalties, premiums, costs and fees that would arise or become due as a result of the prepayment of any of the obligations referred to in the foregoing clauses (i) through (vii).

(p)    "**Indemnified Party**" shall mean a Buyer Indemnified Party or a Seller Indemnified Party, as the case may be, making a claim for indemnification under Article 6.

(q)    "**Indemnifying Party**" shall mean a Party against whom a claim for indemnification is asserted under Article 6.

(r)    "**Knowledge**" shall mean, with respect to the Seller, the actual or constructive knowledge of the members of The Litigation Practice Group P.C.    , after due inquiry.

(s)    "**Law**" shall mean any law, statute, ordinance, regulation, rule, code, notice requirement, court decision, or agency guideline, of any foreign, federal, state, or local Governmental Body.

(t)    "**Liabilities**" shall mean any direct or indirect liability, indebtedness, obligation, commitment, expense, claim, deficiency, guaranty, or endorsement of, or by, any Person of any type, known or unknown, and whether accrued, absolute, contingent, matured, unmatured, determined or undeterminable, on- or off-balance sheet, or other.

(u)    "**Lien**" shall mean any mortgage, pledge, lien, charge, claim, security interest, adverse claims of ownership or use, restrictions on transfer, defect of title, or other encumbrance of any sort.

(v)    "**Losses**" shall have the meaning set forth in Section 6.4.

(w)    "**Notice of Claim**" shall have the meaning set forth in Section 6.6(c).

(x)    "**Organizational Documents**" shall mean, with respect to a Person, the charter, bylaws, limited liability company agreement, and other organizational documents of such Person, in each case, as amended.

(y)    "**Party**" or "**Parties**" shall have the meaning set forth in the preamble to this Agreement.

(z)    "**Permitted Liens**" shall mean (i) Liens for Taxes not yet delinquent or being contested in good faith by appropriate proceedings, (ii) statutory Liens (including materialmen's, warehousemen's, mechanic's, repairmen's, landlord's, and other similar Liens) arising in the ordinary course of business securing payments not yet delinquent or being contested in good faith by appropriate proceedings, and (iii) restrictive covenants, easements, and defects, imperfections or irregularities of title, if any, of a nature that do not materially and adversely affect the assets or properties subject thereto.

(aa)    "**Person**" shall mean any individual, corporation (including any non-profit corporation), general or limited partnership, limited liability company, joint venture, estate, trust, association, organization, labor union, Governmental Body, or other entity.

Case 8:23-bk-10571-SC    Doc 185-1    Filed 07/07/23    Entered 07/07/23 13:25:30    Desc
Appendix A    Page 80 of 96
Case 1:22-cv-00057-HSO-BWR    Document 48-11    Filed 04/21/23    Page 12 of 14
Case 8:23-cv-00030-JWH-ADS    Document 13-9    Filed 01/12/23    Page 140 of 526    Page ID
#:4333

DocuSign Envelope ID: 51846E7C-A0AA-4675-9021-A16D2CE4B5A3

(bb)    "Purchase Price" shall have the meaning set forth in Section 2.3.

(cc)    "Purchased Accounts" shall have the meaning set forth in the Recitals.

(dd)    "Seller" shall have the meaning set forth in the preamble to this Agreement.

(ee)    "Seller Indemnified Parties" shall have the meaning set forth in Section 6.5.

(ff)    "Tax" or "Taxes" shall mean any U.S. federal, state, local or non-U.S. income, gross receipts, license, payroll, employment, excise, severance, stamp, occupation, premium, windfall profits, environmental, customs duties, capital stock, escheat, franchise, profits, withholding, social security, unemployment, disability, real property, personal property, sales, use, transfer, registration, value added, alternative or add-on minimum, estimated, or other tax of any kind whatsoever, including any interest, penalty, or addition thereto, whether disputed or not.

(gg)    "Tax Returns" means any return, declaration, report, claim for refund, or information return or statement relating to Taxes, including any schedule or attachment thereto, and including any amendment thereof.

(hh)    "Third Party" or "Third Parties" shall mean any Person other than the Parties or their respective Affiliates.

(ii)    "Third-party Claim" shall have the meaning set forth in Section 6.6(a).

(jj)    "Transaction Agreements" shall mean the Bill of Sale and Assignment and Assumption Agreement, and each other agreement, instrument, and/or certificate contemplated by this Agreement or such other agreements to be executed in connection with the transactions contemplated hereby or thereby.

(kk)    "Upfront Cash Payment" shall have the meaning set forth in Section 2.3.

(ll)    "Wire Instructions" shall have the meaning set forth in Section 2.3.

113

Case 8:23-bk-10571-SC    Doc 185-1    Filed 07/07/23    Entered 07/07/23 13:25:30    Desc
Appendix A    Page 81 of 96
Case 1:22-cv-00057-HSO-BWR    Document 48-11    Filed 04/21/23    Page 13 of 14
Case 8:23-cv-00030-JWH-ADS    Document 13-9    Filed 01/12/23    Page 141 of 526    Page ID
#:4334

DocuSign Envelope ID: 51846E7C-A0AA-4675-9021-A16D2CE4B5A3

**EXHIBIT C**

**FORM OF BILL OF SALE AND ASSIGNMENT AND ASSUMPTION AGREEMENT**

THIS BILL OF SALE AND ASSIGNMENT AND ASSUMPTION AGREEMENT (this "**Agreement**"), is made by and between Validation Partners LLC, a Florida limited liability company and The Litigation Practice Group P.C. (the "**Buyer**"), California Incorporated Company        (the "**Seller**"). Each of the Seller and the Buyer are sometimes referred to herein, individually, as a "**Party**" and, collectively, as the "**Parties**."

WHEREAS, the Buyer and the Seller have entered into that certain Accounts Receivable Purchase Agreement, of even date herewith (the "**Purchase Agreement**"), pursuant to which the Seller has agreed to sell, assign, transfer, and deliver to the Buyer, and the Buyer has agreed to purchase, acquire, and accept from the Seller, all right, title, and interest of the Seller in and to the Purchased Accounts, free and clear of any Liens.

NOW, THEREFORE, in consideration of the covenants and representations set forth herein, and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the Parties, intending to be legally bound, agree as follows:

1.    <u>Defined Terms</u>.  Capitalized terms used but not otherwise defined in this Agreement shall have the meanings assigned to such terms in the Purchase Agreement.

2.    <u>Sale of Purchased Accounts; Assignment</u>.  The Seller hereby sells, assigns, transfers, and delivers to the Buyer, and the Buyer hereby purchases, acquires, and accepts from the Seller, all right, title, and interest of the Seller in and to the Purchased Accounts, free and clear of any Liens.

3.    <u>Further Assurances</u>.  Each of the Parties agrees, from time to time, at the request of the any other Party, to execute and deliver such other instruments of conveyance, power of attorney, sale, transfer, or assignment and take such other actions as such other Party may reasonably request in order to more effectively consummate the transactions contemplated by this Agreement.

4.    <u>Terms of the Purchase Agreement</u>.  This Agreement is intended to evidence the consummation of the transactions contemplated by the Purchase Agreement and is subject to the terms and conditions set forth in the Purchase Agreement.   The terms of the Purchase Agreement, including, but not limited to, the representations, warranties, covenants, agreements, and indemnities relating to the Purchased Accounts are incorporated herein by this reference.  The Parties acknowledge and agree that the representations, warranties, covenants, agreements, and indemnities contained in the Purchase Agreement shall not be superseded hereby but shall remain in full force and effect to the full extent provided therein.  In the event of any conflict or inconsistency between the terms of the Purchase Agreement and the terms hereof, the terms of the Purchase Agreement shall govern.

5.    <u>Counterparts</u>.  This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement.  A signed copy of this Agreement delivered by facsimile, electronic mail, or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

*[Remainder of page intentionally left blank.]*

Accounts Receivable Purchase Agreement
Exhibit C – Bill of Sale

114

Case 8:23-bk-10571-SC    Doc 185-1    Filed 07/07/23    Entered 07/07/23 13:25:30    Desc
Appendix A    Page 82 of 96
Case 1:22-cv-00057-HSO-BWR    Document 48-11    Filed 04/21/23    Page 14 of 14
Case 8:23-cv-00030-JWH-ADS    Document 13-9    Filed 01/12/23    Page 142 of 526    Page ID
#:4335

DocuSign Envelope ID: 51846E7C-A0AA-4675-9021-A16D2CE4B5A3

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date first above written.

**BUYER:**

VALIDATION PARTNERS LLC
a Florida limited liability company

By: _____

Name:    Russ Squires
Title:    Principal
Address:    1300 Sawgrass Corporate Pkwy, Ste 110
            Sunrise, FL 33323

**SELLER:**

The Litigation Practice Group P.C.
a    California Incorporated Company

By: _____

Name:    Daniel S. March
Title:    Managing Shareholder
Address:    17842 17TH STREET, SUITE 100
            TUSTIN CA 92780

## EXHIBIT L

## Promissory note by LPG

Case 8:23-bk-10571-SC   Doc 185-1   Filed 07/07/23   Entered 07/07/23 13:25:30   Desc
Case 1:22-cv-00057-HSO-BWR   Document 48-12   Filed 04/21/23   Page 2 of 7
Appendix A   Page 84 of 96
DocuSign Envelope ID: 7584521114B46-A69-BB23-08D452B22743
Case 8:23-cv-00030-AWR-ABS   Document 13-9   Filed 01/12/23   Page 145 of 526   Page ID
#:4338

## Unsecured Promissory Note (Fully Amortized)

$2,200,000.00

12/10/2021

Tustin, California

On or before 12/10/2022, for value received, the undersigned THE LITIGATION PRACTICE GROUP

P.C. (the **"Borrower"**) promises to pay to the order of VALIDATION PARTNERS LLC (the **"Holder"**),

in the manner and at the place provided below, the principal sum of $2,200,000.00.

## 1. PAYMENT.

All payments of principal and interest under this note will be made in lawful money of the United States,

without offset, deduction, or counterclaim, by wire transfer of immediately available funds to an account

designated by the Holder in writing at least 7 days after the effective date of this note or, if this

designation is not made, by check mailed to the Holder at 1300 Sawgrass Corporate Pkwy, Ste 110,

Sunrise, Florida , 33323, or at such other place as the Holder may designate in writing.

## 2. MONTHLY INSTALLMENT PAYMENTS.

Principal and interest will be payable in 12 consecutive monthly installments of $210,833.33, beginning

on or before 01/10/2022 and continuing on the 10 day of each month, until the principal and interest have

been paid in full. Each payment will be credited first to interest and then to principal, and interest will

cease to accrue on any principal paid. Acceptance by the Holder of any payment differing from the

designated installment payment listed above does not relieve the Borrower of the obligation to honor the

requirements of this note.

## 3. INTEREST.

Interest on the unpaid principal balance of this note is payable from the date of this note until this note is

paid in full, at the rate of 15% per year, or the maximum amount allowed by applicable law, whichever is

less. Accrued interest will be computed on the basis of a 365-day or 366-day year, as the case may be,

Case 8:23-bk-10571-SC    Doc 185-1    Filed 07/07/23    Entered 07/07/23 13:25:30    Desc
Appendix A    Page 85 of 96
Case 1:22-cv-00057-HSO-BWR    Document 48-12    Filed 04/21/23    Page 3 of 7
Case 8:23-cv-00056-JWH-ADS    Document 13-9    Filed 01/12/23    Page 146 of 526    Page ID
#:4339

based on the actual number of days elapsed in the period in which it accrues.

## 4. PREPAYMENT.

The Borrower may prepay this note, in whole or in part, at any time before maturity without penalty or premium. Any partial prepayment will be credited first to accrued interest, then to principal. No prepayment extends or postpones the maturity date of this note.

## 5. EVENTS OF DEFAULT.

Each of the following constitutes an **"Event of Default"** under this note:

(a) the Borrower's failure to make any payment when due under the terms of this note, including the final payment due under this note when fully amortized;

(b) the filing of any voluntary or involuntary petition in bankruptcy by or regarding the Borrower or the initiation of any proceeding under bankruptcy or insolvency laws against the Borrower;

(c) an assignment made by the Borrower for the benefit of creditors; or

(d) the appointment of a receiver, custodian, trustee, or similar party to take possession of the Borrower's assets or property.

## 6. ACCELERATION; REMEDIES ON DEFAULT.

If any Event of Default occurs, all principal and other amounts owed under this note will become immediately due without any action by the Holder, the Borrower, or any other person. The Holder, in addition to any rights and remedies available to the Holder under this note, may, in its sole discretion, pursue any legal or equitable remedies available to it under applicable law or in equity.

## 7. WAIVER OF PRESENTMENT; DEMAND.

The Borrower hereby waives presentment, demand, notice of dishonor, notice of default or delinquency, notice of protest and nonpayment, notice of costs, expenses or losses and interest on those, notice of

Case 8:23-bk-10571-SC    Doc 185-1    Filed 07/07/23    Entered 07/07/23 13:25:30    Desc
Appendix A    Page 86 of 96
Case 1:22-cv-00057-HSO-BWR    Document 48-12    Filed 04/21/23    Page 4 of 7
Case 8:23-cv-00030-AWI-ADS    Document 13-9    Filed 01/12/23    Page 147 of 526    Page ID
#:4340

DocuSign Envelope ID: 7584F010-DFA9-4A90-BB23-90A452B62743

interest on interest and late charges, and diligence in taking any action to collect any sums owing under this note, including (to the extent permitted by law) waiving the pleading of any statute of limitations as a defense to any demand against the undersigned. Acceptance by the Holder or any other holder of this note of any payment differing from the designated payments listed does not relieve the undersigned of the obligation to honor the requirements of this note.

## 8. GOVERNING LAW.

(a) **Choice of Law.** The laws of the state of Florida govern this note (without giving effect to its conflicts of law principles).

(b) **Choice of Forum.** Both parties consent to the personal jurisdiction of the state and federal courts in Broward County County, Florida .

## 9. COLLECTION COSTS AND ATTORNEYS' FEES.

The Borrower shall pay all expenses of the collection of indebtedness evidenced by this note, including reasonable attorneys' fees and court costs in addition to other amounts due.

## 10. ASSIGNMENT AND DELEGATION.

(a) **No Assignment.** The Borrower may not assign any of its rights under this note. All voluntary assignments of rights are limited by this subsection.

(b) **No Delegation.** The Borrower may not delegate any performance under this note.

(c) **Enforceability of an Assignment or Delegation.** If a purported assignment or purported delegation is made in violation of this section, it is void.

## 11. SEVERABILITY.

If any one or more of the provisions contained in this note is, for any reason, held to be invalid, illegal, or unenforceable in any respect, that invalidity, illegality, or unenforceability will not affect any other provisions of this note, but this note will be construed as if those invalid, illegal, or unenforceable

Case 8:23-bk-10571-SC    Doc 185-1    Filed 07/07/23    Entered 07/07/23 13:25:30    Desc
Case 1:22-cv-00057-HSO-BWR    Document 48-12    Filed 04/21/23    Page 5 of 7
Appendix A    Page 87 of 96
DocuSign Envelope ID: 7584591D-0B80-4A60-BB23-06D462B327A3
Case 8:23-cv-00030-JWH-ADS    Document 13-9    Filed 01/12/23    Page 148 of 526    Page ID
#:4341

provisions had never been contained in it, unless the deletion of those provisions would result in such a
material change so as to cause completion of the transactions contemplated by this note to be
unreasonable.

**12. NOTICES.**

(a) **Writing; Permitted Delivery Methods.** Each party giving or making any notice, request, demand, or
other communication required or permitted by this note shall give that notice in writing and use one of the
following types of delivery, each of which is a writing for purposes of this note: personal delivery, mail
(registered or certified mail, postage prepaid, return-receipt requested), nationally recognized overnight
courier (fees prepaid), facsimile, or email.

(b) **Addresses.** A party shall address notices under this section to a party at the following addresses:

If to the Borrower:

The Litigation Practice Group P.C.

17542 E 17th Street, Suite 100

Tustin, California 92780

admin@lpglaw.com

If to the Holder:

Validation Partners LLC

1300 Sawgrass Corporate Pkwy, Ste 110

Sunrise, Florida 33323

gary@morningfinancial.com

(c) **Effectiveness.** A notice is effective only if the party giving notice complies with subsections (a) and
(b) and if the recipient receives the notice.

121

Case 8:23-bk-10571-SC   Doc 185-1   Filed 07/07/23   Entered 07/07/23 13:25:30   Desc
Appendix A   Page 88 of 96
Case 1:22-cv-00057-HSO-BWR   Document 48-12   Filed 04/21/23   Page 6 of 7
Case 8:23-cv-00030-JWH-ADS   Document 13-9   Filed 01/12/23   Page 149 of 526   Page ID
#:4342

DocuSign Envelope ID: 758450107404644A09AB23A9F4452B52F37A3

## 13. WAIVER.

No waiver of a breach, failure of any condition, or any right or remedy contained in or granted by the provisions of this note will be effective unless it is in writing and signed by the party waiving the breach, failure, right, or remedy. No waiver of any breach, failure, right, or remedy will be deemed a waiver of any other breach, failure, right, or remedy, whether or not similar, and no waiver will constitute a continuing waiver, unless the writing so specifies.

## 14. HEADINGS.

The descriptive headings of the sections and subsections of this note are for convenience only, and do not affect this note's construction or interpretation.

[SIGNATURE PAGE FOLLOWS]

Case 8:23-bk-10571-SC    Doc 185-1    Filed 07/07/23    Entered 07/07/23 13:25:30    Desc
Appendix A    Page 89 of 96
Case 1:22-cv-00057-HSO-BWR    Document 48-12    Filed 04/21/23    Page 7 of 7
DocuSign Envelope ID: 2F544E017-4B46-4A60-8623-06D452B627A3
Case 8:23-cv-00030-JWH-ADS    Document 13-9    Filed 01/12/23    Page 150 of 526    Page ID
#:4343

Each party is signing this agreement on the date stated opposite that party's signature.

The Litigation Practice Group P.C.

Date: 12/2/2021

By: _Daniel March_

Name: Daniel S. March
Title: Managing Shareholder

Validation Partners LLC

Date: 12/2/2021

By: _____

Name: Russ Squires
Title: Principal

123

**EXHIBIT M**


**Jayde Trinh-LPG**

2/7/23, 11:06 AM                                                                 (3) trinh jayde | Search | LinkedIn







LinkedIn Corporation © 2023

**EXHIBIT N**

**Jayde Trinh-Oakstone Law Group PC**

**OAKSTONE**
LAW GROUP PC

📞 **Telephone:**
858-330-3009

✉️ **Email:**
support@oakstonepc.com



# Jayde Trinh

## Head Attorney

Jayde Trinh is a graduate of Chapman University, Fowler School of Law and is licensed to practice law in the State of California.

Prior to joining Oakstone Law Group, Ms. Trinh gained significant experience interning with the Orange County Public Defender, the Alona Cortese Elder Law Center, as well as work the law firms of Lewis Brisbois Bisgaard & Smith LLP and Erksine Law P.C. During her law school career, Ms. Trinh also volunteered with the Public Law Center to help victims of domestic abuse with declarations and assist people who are petitioning the court to serve as a legal guardian for children whose parents are not able to care for the children.

## About Jayde

In private practice, Ms. Trinh has become an expert in the areas of collection defense and practice. She has litigated numerous matters under the Fair Debt Collection Practices Act and Fair Credit Reporting Act, and has successfully defended clients in claims brought by creditors to enforce alleged obligations. Ms. Trinh has devoted her career to supporting consumer rights by enforcing these federal protections afforded to consumer debtors.

In her free time, Ms. Trinh is an avid animal lover and activist. She can be found rescuing abused animals and hiking with her four rescue dogs. She also plays the piano and violin, and enjoys traveling the world.

**OAKSTONE**
LAW GROUP PC



### Quick Links

HOME
ABOUT US
INDUSTRIES
ATTORNEYS
CONTACT US

### Contact Info

**Telephone:**
858-330-3009

**Email:**
support@oakstonepc.com

**Location:**

Suite 200

La Jolla, CA 92037

© 2023 All Rights Reserved By Oakstone PC.