1  Christopher B. Ghio (State Bar No. 259094)
   Christopher Celentino (State Bar No. 131688)
2  Yosina M. Lissebeck (State Bar No. 201654)
   Jeremy B. Freedman (State Bar No. 308752)
3  **DINSMORE & SHOHL LLP**
   655 West Broadway, Suite 800
4  San Diego, CA 92101
   Telephone:  619.400.0500
5  Facsimile:  619.400.0501
   christopher.ghio@dinsmore.com
6  christopher.celentino@dinsmore.com
   yosina.lissebeck@dinsmore.com
7  jeremy.freedman@dinsmore.com

8  Special Counsel to Richard A. Marshack

9

10              **UNITED STATES BANKRUPTCY COURT**

11        **CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION**

12

13  In re:                                    Case No.: 8:23-bk-10571-SC

14  THE LITIGATION PRACTICE GROUP P.C.,       Chapter 11

15       Debtor.                              **NOTICE OF MOTION AND MOTION OF
                                              TRUSTEE RICHARD A. MARSHACK
16                                            FOR ENTRY OF AN ORDER (A)
                                              APPROVING SALE, SUBJECT TO
17                                            OVERBID, OF ASSETS FREE AND
                                              CLEAR OF ALL LIENS, CLAIMS,
18                                            ENCUMBRANCES AND INTERESTS
                                              PURSUANT TO 11 U.S.C. § 363(b) AND
19                                            (B) APPROVING ASSUMPTION AND
                                              ASSIGNMENT OF CERTAIN
20                                            EXECUTORY CONTRACTS AND
                                              UNEXPIRED LEASES AND OTHER
21                                            AGREEMENTS**

22                                            Date:   [To be set]
                                              Time:   [To be set]
23                                            Judge:  Hon. Scott C. Clarkson
                                              Place:  Courtroom 5C
24                                                     411 W. Fourth Street
                                                       Santa Ana, CA  92701
25

26

27

28

DMWEST #16291513 v4

**TO THE COURT, THE OFFICE OF THE UNITED STATES TRUSTEE, CREDITORS AND OTHER PARTIES-IN-INTEREST:**

**PLEASE TAKE NOTICE**, that on July 14, 2023 at 2:00 p.m., or as soon thereafter as is convenient to the Bankruptcy Court, located in Department 5C, 411 W. Fourth Street, Santa Ana, California 92701, Richard A. Marshack, solely in his capacity as the Chapter 11 Trustee of Litigation Practice Group, P.C. (the "Trustee") appointed in the above-entitled Chapter 11 bankruptcy case (the "Case") of Debtor, Litigation Practice Group, P.C. (the "Debtor"), will and hereby does move the Bankruptcy Court, pursuant to this motion (the "Motion") for entry of an order (the "Sale Order") approving the sale, subject to overbid, of certain assets of the Debtor and the assumption and assignment of certain executory contracts and unexpired leases and other agreements, including those consumer customer contracts, (collectively "Contracts") to Consumer Legal Group, P.C. ("Good Faith Purchaser"). Together the Contracts and the identified assets are referred to herein as the "Assets" as set forth in the proposed Asset Purchase Agreement ("APA") attached as Exhibit 1 to the Declaration of Trustee. The Sale Order and APA would provide for the sale of the Assets to a purchaser free and clear of all liens, claims, encumbrances and interests pursuant to the terms of a to be executed APA. Furthermore, the Sale Order and APA require that the Contracts, upon assignment to the Good Faith Purchaser will be reformed: (i) to comply with applicable law; (b) to require performance in accordance with applicable law; and (iii) to permit consumer consent to the transfer of the contract to the Purchaser and counsel in accordance with California Model Rule 1.17 and/or comparable state ethics provision. Trustee's Motion is made pursuant to 11 U.S.C. §§ 105 and 363, Federal Rules of Bankruptcy Procedure, Rule 6004.

**IF ANY PARTY WISHES TO OVERBID, THEY MUST:**

1) CONTACT THE TRUSTEE'S SPECIAL COUNSEL USING HIS EMAIL ADDRESS: CHRISTOPHER.GHIO@DINSMORE.COM OR HIS PHONE NUMBER AT (619) 400-0468 PRIOR TO 5:00 P.M. PST AT LEAST 4 COURT DAYS PRIOR TO THE HEARING ("OVERBID DEADLINE").

2) A GOOD FAITH DEPOSIT OF $1,000,000.00, CASHIERS CHECK PAYABLE TO RICHARD M. MARSHACK, CHAPTER 11 TRUSTEE, IS REQUIRED TO BE PROVIDED TO THE TRUSTEE BY THE OVERBID DEADLINE.

3) THE TOTAL PURCHASE PRICE FOR THIS SALE IS MADE UP OF AN **INITIAL DEPOSIT**, A **SECOND DEPOSIT**, AND A PERCENTAGE TO THE ESTATE DERIVED FROM A **FEE**. THESE BOLD TERMS ARE ALL DEFINED AND SET FORTH IN THE APA AND MUST BE REVIEWED AND ACCEPTED BY ANY PARTY SEEKING TO OVERBID. THE TOTAL AMOUNT OF THE SALE WILL BE APPROXIMATELY

$42,000,000.00. TO OVERBID A PARTY MUST ACCEPT THE APA TERMS. HOWEVER TO PROVIDE FOR AN OVERBID AUCTION, THE AMOUNT OF THE **SECOND DEPOSIT** WILL BE ADJUSTED. THUS, INITIAL OVERBID WILL BE A **SECOND DEPOSIT** OF $7,500,000.00 WITH BIDING INCREMENTS OF $500,000.

4)    BY THE OVERBID DEADLINE THE PARTY MUST ALSO EXECUTE A LETTER OF INTENT TO ENTER INTO A SIMILAR APA, BUT FOR THE PRICE ADJUSTMENT OF THE SECOND DEPOSIT AMOUNT, AND PROVIDE WRITTEN PROOF OF FINANCIAL ABILITY TO PERFORM.

In his sole discretion, the Trustee may waive the deadline for submission of overbids. The acceptance of any overbid from a qualified bidder will be in the Trustee's sole discretion and may be made prior to or at the time of hearing to confirm the sale.

If qualified overbids are received and accepted by the Trustee, an auction will be held at the time of the hearing on the motion for approval of sale. At the conclusion of the auction, the Trustee will have the right, based solely on his business judgment and sole discretion, to recommend to the Court for confirmation the offer that the Trustee determines is the best overall offer.

Upon completion of the hearing, the sale will close as set forth in the APA. In the event any given prospective bidder is not the successful bidder, nor a back-up bidder, their deposit, shall be returned as soon as possible after the conclusion of the hearing. The Deposit of the successful bidder shall be controlled by the terms of the APA.

In the event the successful bidder doesn't perform, Trustee will accept the bid which constitutes, in his business judgment, the highest and best offer for the benefit of the bankruptcy estate and its creditors. Unless otherwise specified by each bidder, all bids shall be deemed to be on terms and conditions not less favorable to the bankruptcy estate than the terms and conditions to which the Buyer has agreed to purchase the Property as set forth in the Trustee's sale motion.

**SOLICITATION OF OTHER OFFERS**

As part of Trustee's continuing obligation to market the asset, he remains open to any other offers and proposals that may not have identical formats. Any offer or proposal, including any cash offer, will be evaluated and compared to the existing offers. Besides the APA with the Good Faith Purchase, the Trustee currently has one other proposal and one other asset purchase agreement in hand. Any party wishing to provide an offer can do so by providing it to Trustee counsel's email christopher.ghio@dinsmore.com or contact Mr. Ghio at (619) 400-0468.  If the Trustee believes any such offer, in his sole business judgment and discretion are reasonable, the Trustee will provide the court with information related to the agreement and copies as part of his Declaration.

This Motion is based upon this notice; the accompanying Memorandum of Points and authorities; the attached Declaration of Richard Marshack and attached exhibits; the separate Declaration of Attorney Jason J. Rebhun of Consumer Legal Group, P.C.; the separate Declaration of Attorney Reed Pruyn; the separate Declaration of Attorney Peter Schneider; the separate Declaration of Attorney William "Ty"

Carss; and the separate Declaration of Christopher Ghio Special Counsel for the Trustee, submitted herewith; Trustee's Notice of Sale; Trustee's Notice of Motion and Motion for Order Approving Stipulation re Partial Settlement of Claims and Modification of Order on Trustee, Richard Marshack's Omnibus Emergency Motion As Covered Parties and Defendants Consumer Legal Group, P.C. and LGS Holdco, LLC ("CLG 9019 Motion") Adversary Proceeding No. 8:23-ap-01046-SC ("1046 Action") [Main Case Docket No. 178]; Stipulation for Judgment (1) Avoiding, Recovering, And Preserving Transfers to Defendant Phoenix Law Group, Inc. ("Phoenix Stip"), (1046 Action, Docket No. 77); all pleadings and papers on file in this action relating to the Emergency Motion filed and heard May 25, 2023; and upon such other matters as may be presented to the Court prior to or at the time of hearing.[1]

Dated:  July 7, 2023                           Respectfully submitted,

                                              DINSMORE & SHOHL LLP


                                    By:  /s/ Christopher B. Ghio
                                         Christopher B. Ghio
                                         Christopher Celentino
                                         Yosina M. Lissebeck
                                         Jeremy Freedman
                                         Special Counsel to Richard A. Marshack, Chapter 11
                                         Trustee

---

[1] Given the exigent circumstances, substantial amount of information and evidence and limited time to review and analyze same prior to Trustee and the Estate running out of financing, Trustee hereby reserves his right to submit supplemental declarations, including not limited to expert declarations in support of the instant sale motion.

# TABLE OF CONTENTS

I. INTRODUCTION ....................................................................................................1

II. JURISDICTION ...................................................................................................2

III. RELEVANT FACTUAL  BACKGROUND ........................................................3

    **A.**    Procedural History ...........................................................................3

    **B.**    LPG'S Fraudulent Transfer of Consumer Clients And Avoidance Thereof...................5

    **C.**    Procedural Grounds Supporting Sale of Debtor's Assets ................6

IV. TRUSTEE MADE A REASONABLE GOOD FAITH EFFORT TO MAXIMIZE THE PROTECTIONS TO THE CONSUMER AND BENEFIT TO THE ESTATE AND ALL CREDITORS .......................................................................................................9

    **A.**    The Trustee's Proposed Good Faith Purchaser - Consumer Legal Group, PC................9

V. THE PROPOSED SALE TO GOOD FAITH PURCHASER .........................11

    **A.**    Summary of Proposed Asset Purchase Agreement (APA) ...........11

    **B.**    Rejection and Termination of Employees...................................15

    **C.**    Transfer to Legal Service Agreements .......................................16

    **D.**    The 90 Day Notice Period Provides Consumers to Opt Out of Any Sale and Assignment Pursuant to California Model Rule 1.17. ....................................16

    **E.**    Reformation of Legal Services Agreement and Compliance with Consumer Protection Laws. ....................................................................17

    **F.**    Trustee's Proposed Court Appointed Monitor to Ensure Compliance with Consumer Protection Laws. ....................................................................17

VI. THE COURT SHOULD GRANT THE TRUSTEE'S SALE MOTION FOR THE BENEFIT OF THE CONSUMER CLIENTS, ESTATE AND CREDITORS ..................18

    **A.**    The Court is Authorized to Issue an Order Approving the Sale of Debtor's Assets and Procedures Related Thereto. ....................................................................18

    **B.**    The Sale Should Be Approved To Protect the Interests of Consumer Clients Based on The Trustee's Reasoned Business Judgment and Extraordinary Protections Built in to The Proposed Sale of Debtor's Assets and The Assignment of Executory Contracts....20

    **C.**    The Assumption and Assignment of Executory Contracts Should Be Approved. .........28

    **D.**    Relief Under Bankruptcy Rules 6004(h) and 6006(d) Is Appropriate...........................29

VII. CONCLUSION ...................................................................................................29

# TABLE OF AUTHORITIES

**Page**

## Cases

Bank of Am. Nat'l Trust & Sav. Ass'n. v. 203 N. LaSalle St. P'ship
   526 U.S. 434  (1999)...................................................................................................22

Comm. Of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)
   722 F.2d 1063 (2d Cir. 1983) .......................................................................................20

Committee of Subordinated Bondholders v. Integrated Resources, Inc. (Integrated Res.)
   147 B.R. 650 (S.D.N.Y. 1992)......................................................................................19

In re Abbotts Dairies of Pa., Inc.
   788 F.2d 143 (3d Cir. 1986) .........................................................................................23

In re Adams Res. Expl. Corp.
    No. 17-10866 (KG), 2017 WL 5484017 (Bankr. D. Del. Sept. 20, 2017) ......................19

In re Alaska Fishing Adventure, LLC
   594 B.R. 883 (Bankr.  D. Alaska 2018)........................................................................19

In re Bakalis
   220 B.R. 525 (Bankr. E.D.N.Y. 1998)..........................................................................19

In re Boy Scouts of Am.
   642 BR 504 (Bankr. D. Del. 2022) ...............................................................................28

In re Delaware & Hudson Ry. Co.
   124 B.R. 169 (D. Del. 1991).........................................................................................18

In re Edwards
    228 B.R. 552 (Bankr. E.D. Pa. 1998) ..........................................................................19

In re Filene's Basement, LLC
   11-13511 (KJC), 2014 WL 1713416 (Bankr. D. Del. Apr. 29, 2014)..............................20

In re Food Barn Stores, Inc.
   107 F.3d 558 (8th Cir. 1997) ........................................................................................19

In re Hertz
   536 B.R. 434 (Bankr. C.D. Cal. 2015)..........................................................................28

In re Industrial Valley Refrigeration and Air Conditioning Supplies, Inc.
   77 B.R. 15 (Bankr. E.D. Pa. 1987) ...............................................................................18

In re JL Building, LLC
   452 B.R. 854 (Bankr. D. Utah 2011) ............................................................................19

In re Johns-Manville Corp.
   60 B.R. 612 (Bankr. S.D.N.Y. 1986).............................................................................20

In re Kellstrom Indus., Inc.
   282 B.R. 787 (Bankr. D. Del. 2002) .............................................................................27

In re Martin
    91 F.3d 389 (3d. Cir. 1996) ................................................................................. 20

In re Mushroom Transp. Co.
    382 F.3d 325 (3d Cir. 2004) ................................................................................. 19

In re PGX Holding, Inc. (In re PGX)
    Case No. 23-10718-CTG (D. Del. 2023) ............................................................. 21

In re Psychrometric Sys.
    367 B.R. 670 (Bankr. D. Colo. 2007) ................................................................. 19

In re Quintex Entertainment, Inc.
    950 F.2d 1492 (9th Cir. 1991) ............................................................................. 18

In re S.N.A. Nut Co.
    186 B.R. 98 (Bankr. N.D. Ill 1995) ..................................................................... 20

In re Sasson Jeans, Inc.
    90 B.R. 608 (S.D.N.Y. 1988) ............................................................................... 24

In re Schipper
    933 F.2d 513 (7th Cir. 1991) ............................................................................... 20

In re Stroud Ford, Inc.
    163 B.R. 730 (Bankr. M.D. Pa. 1993) ................................................................. 18

In re Tabone, Inc.
    175 B.R. 855 (Bankr. D.N.J. 1994) ..................................................................... 28

In re Telesphere Commc's, Inc.
    179 B.R. 544 (Bankr. N.D. Ill. 1999) ................................................................. 20

In re Titusville Country Club
    128 B.R. 396 (Bankr. W.D. Pa. 1991) ................................................................. 18

In re Trans World Airlines, Inc.
    No. 01-00056, 2001 WL 1820326 (Bankr. D. Del. 2001) ................................... 22

In re WBQ P'ship
    189 B.R. 97 (Bankr. E.D. Va. 1995) ................................................................... 19

In the Matter of Andy Frain Servs., Inc.
    798 F.2d 1113 (7th Cir. 1986) ............................................................................. 24

Institutional Creditors of Continental Air Lines, Inc. v. Continental Air Lines, Inc. (In re Continental
    Air Lines, Inc.)
    780 F.2d 1223 (5th Cir. 1986) ............................................................................. 19

Lubrizol Enters. Inc. v. Richmond Metal Finishers, Inc. (In re Richmond Metal Finishers, Inc.)
    759 F.2d 1043 (4th Cir. 1985) ............................................................................. 28

NLRB v. Bildisco
    465 U.S. 513 (1984) ............................................................................................. 28

Orion Pictures v. Showtime Networks Inc. (In re Orion Pictures Corp.)
    4 F.3d 1095 (2d Cir. 1993) ................................................................................. 28

Pelican Homestead v. Wooten (In re Gabel)
    61 B.R. 661 (Bankr. W.D. La. 1985)...................................................................................28

Stephens Indus. Inc. v. McClung
    789 F.2d 386 (6th Cir. 1986) .........................................................................................19

Walter v. Sunwest Bank (In re Walter)
    83 B.R. 14 (B.A.P. 9th Cir. 1988) .................................................................................19

**Statutes**

11 U.S.C. § 105 .......................................................................................................................18

11 U.S.C. § 105(a) .....................................................................................................................2

11 U.S.C. § 363 ...........................................................................................................2, 20, 23

11 U.S.C. § 363(b) ................................................................................................8, 18, 19, 20

11 U.S.C. § 363(f) ........................................................................................................24, 25, 27

11 U.S.C. § 365 ...........................................................................................................................2

11 U.S.C. § 365(a) ....................................................................................................................28

11 U.S.C. § 503 ...........................................................................................................................2

11 U.S.C. § 507 ...........................................................................................................................2

11 U.S.C. § 544(b) .....................................................................................................................6

11 U.S.C. § 547 ...........................................................................................................................6

11 U.S.C. § 548 ...........................................................................................................................6

11 U.S.C. § 550 ...........................................................................................................................6

11 U.S.C. § 551 ...........................................................................................................................6

28 U.S.C. § 1334 .........................................................................................................................2

28 U.S.C. § 1408 .........................................................................................................................2

28 U.S.C. § 1409 .........................................................................................................................2

28 U.S.C. § 157 ...........................................................................................................................2

28 U.S.C. §57(b)(2) ....................................................................................................................2

Cal. Civ. Code § 3439.04(a) .....................................................................................................6

Cal. Civ. Code § 3439.07 ..........................................................................................................6

Credit Repair Organizations Act, 15 U.S.C. § 1679.....................................................18, 24

**Rules**

Cal. Model R. 1.17..................................................................................6, 8, 16, 17, 28, 29

Cal. Model R. 1.17(b)(1)...............................................................................................16

Fed. R. Bankr. P. 2002...................................................................................................2

Fed. R. Bankr. P. 6004...................................................................................................2

Fed. R. Bankr. P. 6004(h).............................................................................................29

Fed. R. Bankr. P. 6006...................................................................................................2

Fed. R. Bankr. P. 6006(d).............................................................................................29

Fed. R. Bankr. P. 9006...................................................................................................2

Fed. R. Bankr. P. 9007...................................................................................................2

Fed. R. Bankr. P. 9014...................................................................................................2

Telemarketing Sales Rule
     16 C.F.R. Part 310 ...................................................................................2, 18, 21, 24

**Treatises**

Report of Consumer Privacy Ombudsman
     Alan Chapell at 27, In re General Motors Corp., et al, Case No. 09-50026 (2011) ...........................9

**Regulations**

California's Rosenthal Fair Debt Collection Practices Act ............................................4

Fair Debt Collection Practices Act ...............................................................4, 10, 18

Telephone Consumer Protection Act
     47 U.S.C. § 227 (TCPA).............................................................................................2

# I.

## **INTRODUCTION**

Chapter 11 Trustee, Richard Marshack ("Trustee") for the estate of The Litigation Practice Group, P.C. ("LPG" or "Debtor") is "not here to curse the darkness, but to light the candle that can guide us through that darkness to a safe and sane future. As Winston Churchill said on taking office some twenty years ago: if we open a quarrel between the present and the past, we shall be in danger of losing the future." (See "Acceptance Speech of Senator Kennedy, Democratic National Convention, 15 July 1960." JFK Library, Senate Files, Box 910.) With over 20,000 consumer clients and their future and financial wellbeing hanging in the balance, the Court should not determine their fate based on the prior bad acts and financial mismanagement of the former insiders, but based on the details of the proposed sale that the Trustee has worked diligently to form and propose for approval. A future, clients of the Litigation Practice Group ("Debtor" or "LPG") sought to better which has now, at present, been placed in the hands of the Trustee, the Office of the United States Trustee ("UST") and this Court.

The Trustee, UST, and this Court have taken great efforts to protect the interests of Debtor's consumer clients so they are not thrown "out on the street" and subject to further predatory practices, unfair and deceptive debt collection efforts designed to take advantage of their financial despair. While the proposed Sale Order of Debtor's Assets to the Good Faith Purchaser differs from the course of action proposed by the UST, the Trustee's intended goal is nonetheless the same – provide a reasonable plan of action that minimizes or eliminates the impact and any potential harm to consumer clients and their future.

To that end, Trustee has diligently and thoughtfully sought and considered potential purchasers of assets requiring that any such purchaser not only be compliant with applicable rules and regulations, but also agree to additional provisions to protect consumers, ensure compliance with applicable laws and enforce such protections through additional oversight and monitoring. Law firms providing legal services related to debt have existed as long as creditors have sought to collect on debts and is not a new illegal cottage industry. Moreover, legal service payment plans have also existed and operated legally within the United States prior to this matter. The Prior practices of the Debtor's former insiders, including but not limited to Tony Diab, should not and cannot be the basis for finding every law firm operating in the consumer debt space is operating illegally or is incapable of operating legally. To wit, the proposed Good

Faith Purchaser of Debtor's Assets operates legally providing case specific legal services tailored to the consumer's needs. A model very different than the boiler plate legal services offered by LPG. Other similar bankruptcy cases including the pending bankruptcy and proposed sale in PGX Holdings, Inc. indicate that the offending conduct and policies and procedures employed by LPG that allegedly violated the Telemarketing Sales Rule, 16 C.F.R. Part 310 (TSR) and Telephone Consumer Protection Act, 47 U.S.C. § 227 (TCPA) among potential others can be cured. Notably in this regard, UST did not object to the sale of PGX Holdings, Inc.'s assets related to continued violations of the TSR after the violative conduct was cured. The Consumer Financial Protection Bureau ("CFPB") has remained silent in this matter, not brought an adversary action or provided this Court with any evidence the alleged violations cannot be cured, which in any event would appear to contradict the position taken to date in the PGX Holdings, Inc. bankruptcy matter.

Based on the evidence and declarations filed herewith, and based on the Trustee's business judgment, the Trustee firmly believes the wellbeing and future of Debtor's consumer clients are better served by placing them with a law firm who not only is willing and able to provide actual legal services they need, but also able to operate within the bounds of applicable law and permit further monitoring to ensure compliance. Shuttering the Debtor and evading responsibility to consumer clients would place thousands of consumers, including those who have active litigation pending against them, out on the street today, which will cause more harm and place such clients at greater financial risk tomorrow. Based on the evidence, argument and legal authority contained herein, Trustee respectfully requests the support of the UST and that this Court approve the Sale Order.

## II.

## JURISDICTION

The Bankruptcy Court has jurisdiction over this matter pursuant to 28 U.S.C. sections 157 and 1334. This Motion is a core proceeding within the meaning of 28 U.S.C. section 57(b)(2).

Venue is proper pursuant to 28 U.S.C. sections 1408 and 1409.

The statutory bases for the relief requested herein are sections 105(a), 363, 365, 503 and 507 of title 11 of the United States Code (the "Bankruptcy Code"), and Rules 2002, 6004, 6006, 9006, 9007 and 9014 of the Federal Rules of Bankruptcy Procedure.

DMWEST #16291513 v4

2

# III.

## RELEVANT FACTUAL BACKGROUND

### A. Procedural History

On or about March 30, 2023 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, as amended, in the United States Bankruptcy Court of the Central District of California (the "Bankruptcy Court").

After the Office of the United States Trustee (the "UST") filed the *Motion by United States Trustee to Dismiss or Convert Case Pursuant to 11 U.S.C. § 1112(b)* [Bankr. Docket No. 21] and creditors Debt Validation Fund II, LLC; MC DVI Fund 1, LLC; and MC DVI Fund 2, LLC filed the *Motion by DVF and MC DVI to Dismiss Chapter 11 Case Pursuant to 11 U.S.C. §§ 105, 305, 349, & 1112, or in the Alternative Convert This Case to Chapter 7 or Appoint a Trustee* [Bankr. Docket No. 44], the Court entered the *Order Directing Unites States Trustee to Appoint Chapter 11 Trustee* [Bankr. Docket No. 58] on May 4, 2023, thereby granting the UST's motion and directing the UST to appoint a Chapter 11 Trustee in the Bankruptcy Case.

On May 8, 2023, the Trustee filed his *Acceptance of Appointment as Chapter 11 Trustee* [Bankr. Docket No. 63], and the Court entered the *Order Approving Appointment* on the same date [Bankr. Docket No. 65]. The Trustee has continued to serve since this date.

On May 25, 2023, the Trustee filed his Adversary Complaint initiating what is now Adversary Proceeding 8:23-ap-01046-SC ("1046 Action"), Docket No. 1. Filed concurrently with Trustee's Adversary Complaint, the Trustee sought emergency omnibus relief seeking among other things, a temporary restraining order for the turnover and preservation of critical operating information, client information, accounts, ACH processing accounts, bank accounts and client funds. 1046 Action, Docket Nos. 3-8. Exigent circumstances appearing, the Court issued a detailed ruling granting Trustee's relief with few exceptions or modification. On May 26, 2023, the Court issued the order on Trustee's Emergency Omnibus motion and set a status conference and preliminary injunction hearing for June 12, 2023. Bankr. Docket No. 13 and 21 amended to correct an address contained therein.

As stated in greater detail in the Trustee's Complaint filed in the 1046 Action and incorporated by reference herein, the Debtor is a law firm that provided consumer debt resolution services. One aspect

of the services sought by Debtor's consumer clients included being provided attorney services to handle pending litigation, whether on the defense or offensive side of the pleading, address creditors threating litigation and or debt collection agencies engaging in unfair debt collection practices pursuant to the Fair Debt Collection Practices Act ("FDCPA"), California's Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act") among others. Declaration of R. Reed Pruyn ("Pruyn Decl.") at ¶¶ 12-22; Declaration of Jason Rebhun ("Rebhun Decl.") at ¶ 9-22 ; Declaration of Peter Schneider ("Schneider Decl.") at ¶ 5; Declaration of Ty Carss ("Carss Decl.") at ¶ 5-6. Functions that can only be handled by an attorney and whose services would otherwise not be affordable. Other services provided by Debtor, included settlement negotiations and debt invalidation strategies. *Id.*

Prior to June 12, 2023, the Trustee established an ad hoc Committee of Consumer Creditors who was represented by Ira D. Karasch of Pachulski Stang Ziehl & Jones, LLP. On June 20, 2023, Trustee filed an Emergency Motion for Order Authorizing the Chapter 11 Trustee to Enter an Expenses Reimbursement Agreement with the Ad Hoc Committee. Bankr. Docket No. 102. On June 23, 2023, the United States Trustee appointed a committee of unsecured creditors. Bankr. Docket No. 134. Pursuant to stipulation between the Trustee and UST, on June 27, 2023, Trustee and UST sought and the Court ordered the dismissal of Emergency Motion for Order Authorizing the Chapter 11 Trustee to Enter an Expenses Reimbursement Agreement with the Ad Hoc Committee. Bankr. Docket No. 151.

On June 12, 2023, after an approximately 7 hour hearing and having heard and considered all the evidence issued its ruling granting Trustee's motion for preliminary injunction. Based on the Court's ruling, on June 16, 2023 Trustee lodged the proposed Preliminary Injunction Order with the Court. 1046 Action, Docket No. 65.

On June 15, 2023, the Trustee filed his Amended Complaint in the 1046 Action, primarily to correct the spelling or entity designations of named defendants, remove the United States Postal Service from the Complaint and add newly named defendants, including but not limited to, Heng Taing, Touzi Capital, LLC, Payliance, Seamless Chex, Inc., Dwolla, Inc., Stripe, Inc. and Max Chou. 1046 Action, Docket No. 62.

On June 20, 2023, Trustee filed his Emergency Motion for Post-Petition Financing. Bankr. Docket No. 119. Trustee's motion sought authority for $800,000 in financing in the aggregate, with an initial

advance of $350,000 in order to obtain the funds necessary to ensure consumers received legal services from attorneys who were in litigation, among other exigent grounds. *Id*. On June 22, 2023, this Court issued its Order granting the Trustee's request for interim financing. Bankr. Docket No. 131. As detailed in the Declaration of the Trustee attached hereto, these funds are nearly exhausted.

On June 23, 2023, the Court entered the Preliminary Injunction Order pursuant to the June 12, 2023 hearing on same. 1046 Action, Docket No. 70.

On June 27, 2023, the Trustee filed a Stipulation for Judgment (1) Avoiding, Recovering, and Preserving Transfers to Defendant, Phoenix Law, PC (erroneously sued as Phoenix Law Group, Inc.); (2) Turning Over of All Transferred Property to Trustee; and (3) Dismissing Without Prejudice Defendants William Taylor Carss and Maria Eeya Tan ("Phoenix Judgment"). See 1046 Action, Docket No. 77. The Phoenix Judgment establishes LPG fraudulently transferred client files to Phoenix pursuant to the Adversary Complaint and Amended Adversary Complaint, provides for the turnover of said files in accordance with the Court's Emergency Order and subsequent Preliminary Injunction, and further cooperation with the Trustee to protect consumer clients and creditors during the pendency of this matter. *Id*. The Trustee also prepared and filed a 9019 Motion in the main case to obtain court approval of the Phoenix Judgment. Bankr. Docket No. 176. This Motion is set for hearing on July 11, 2023.

On July 6, 2023, the Trustee filed a Motion to Approve a Stipulation Between the Debtor, Consumer Legal Group, PC; LGS Holdco, LLC; and Set Forth, Inc  f/k/a DebtPayPro ("Stipulation") pursuant to Bankruptcy Rule 9019. Bankr. Docket No. 128. If approved, the Stipulation will resolve a portion of the Trustee's dispute over the assignment of 12,546 client files for monetary consideration, will not release any other claims against these defendants, and will provide extraordinary consumer protections mirroring those in the proposed APA. *Id*. This Motion is set for hearing on July 11, 2023.

**B.**      **LPG'S Fraudulent Transfer of Consumer Clients And Avoidance Thereof**

According to testimony at the Debtor's first meeting of creditors, LPG, at its height in 2022, serviced more than 60,000 customers across the United States, with annual revenue estimated to total $155,000,000 in 2022. Declaration of Richard Marshack ("Marshack Decl.") at ¶ 5, **Exh. 1** (Transcript) at 82:18-24. Mr. Diab further conceded at a June 12, 2023 hearing in the 1046 Action that the Debtor filed bankruptcy to avoid litigation, including the appointment of a receiver, with its creditors in State Court.

At Debtor's 341(a) hearing in its Bankruptcy case, Mr. Diab admitted over 55,000 client files were transferred to alter ego and/or other non-alter ego entities, including but not limited to Phoenix Law, PC and Oakstone pre-petition. Marshack Decl. at ¶ 3, **Exh. 1** (Transcript) at 54:18-24.

Phoenix, Ty Carss and Maria Eeya Tan have stipulated to judgment on the Amended Adversary Complaint conceding LPG's transfer of client files to Phoenix, is and was, avoidable transfers pursuant to 11 U.S.C. §§ 544(b), 547, 548, 550, 551 of the Bankruptcy Code and California Civil Code §§ 3439.04(a) and 3439.07 more thoroughly detailed in the Stipulation for Judgment, 1046 Action, Docket No. 77. Thus, the transfers of these files are void and voidable and properly recoverable by the Estate.

## C.   Procedural Grounds Supporting Sale of Debtor's Assets

The proposed form of the asset purchase agreement ("APA" between the Trustee and Good Faith Purchaser is attached to Marshack Decl. at ¶ 6, **Exh 2.**

Of the more than 40,000 clients fraudulently transferred from LPG to Phoenix, only 21,457 clients are active clients seeking services, based on recent data. Carss Decl. at ¶ 3, **Exh. A**. Out of the approximated 22,000 active client files, over 5,000 are in active litigation and/or received legal services from an attorney between June 2, 2023 and June 28, 2023, with more being threatened with litigation requiring legal services from an attorney. *Id.* at **Exh. B**.

As detailed in the Amended Complaint and as the Trustee will admit, the Debtor's pre-petition financial management, operations and marketing created substantial issues and potential claims against insiders and others to be pursued on behalf of all creditors. 1046 Action, Docket No. 62 at ¶¶ 50-61, 72-73. That said, the past does not and cannot taint the future sale and assignment of legitimate consumer clients who seek, need and receive valuable legal services related to consumer debt legal issues and lawsuits. These services and advice only a licensed attorney can provide. See Declaration of R. Reed Pruyn at ¶¶ 12-22; Schneider Decl. at ¶ 10; Carss Decl. at ¶¶ 5-7. When law abiding, barred attorneys operating on principals of transparency as opposed to secrecy supply these services, the consumer client can achieve their goals, emotional gratitude and a brighter financial future. See Declaration of R. Reed Pruyn at ¶¶ 12-22; Schneider Decl. at ¶ 9; Carss Decl. at ¶¶ 6-7. This is especially true given the consumer protections built into the APA and Sale Order by law and design, discussed below, including but not limited to the required 90 day notice period pursuant to California Mode Rule 1.17(b)(1) to permit the

consumer clients the opportunity to make the decision for themselves as to whether they value the services to be provided or would prefer to opt out and be excluded from any assumption and assignment to the Good Faith Purchaser. See Sale Order concurrently filed herewith; Marshack Decl. at ¶ 5, **Exh. 2** Proposed APA at Sections 2, 6, 11, and 12].

The UST has been opposed to Trustee operating the Debtor. The UST has further opposed any use by Trustee of any funds recovered in this matter to fund post-petition operations. Marshack Delc. at ¶ 7. Trustee has not used any of the revenues. This, however, has created procedural and logistical issues in administering Debtor's Estate, requiring immediate emergency relief in order to fulfill Trustee's duties. In this regard, Trustee sought and this Court granted emergency interim financing from third parties that do not encumber client funds or files in order to prevent irreparable harm to consumer clients and the Estate during the interim. Bankr. Docket Nos. 119, 120, 131, and 169.

The Court approved financing will quickly run out. Marshack Decl. at ¶ 8. Without additional funding, it is anticipated most, if not all, employees and/ or attorneys assisting the Estate during this interim period will walk out effectively putting 22,000 clients out on the street and significantly impairing Trustee's ability to protect the interests of the consumer clients and Debtor's Estate. Marshack Decl. at ¶ 8, **Exh. 3** (Budget). Trustee has investigated finding additional funding subject to Court approval, but without the ability to repay any loan, this has proven difficult. *Id*. Exigent circumstances therefore exist to approve Trustee's proposed Sale for the protection of the consumer clients, Debtor's estate and all parties in interest. *Id*.

Further, the foregoing limitations prohibit the Trustee from undertaking the typical process to market and sell the assets of a debtor in bankruptcy. However, marketing has occurred and the Trustee and his attorneys have spoken with numerous potential purchasers. Marshack Decl. at ¶ 11. Further, the Trustee has obtained two different proposals from other parties. One of which he has negotiated an asset purchase agreement. That second asset purchase agreement is between the Estate and Morning Law. Morning Law's agreement is different from the APA that the Trustee has agreed to with the Good Faith Purchaser. However, the Trustee does believe it might be an option that should be filed in the record and will provide a copy to the Court by way of a supplemental declaration. Marshack Decl. at ¶ 7.

Given these facts, the Trustee can either seek conversion of the Case to Chapter 7 (which may be preferred by the UST), or seek Court approval of the Sale on an expedited basis to cure the alleged violations, reform the consumer contracts to comply with applicable law and to provide other protections to the consumer, and capture some of the value of the Assets. Given additional time and the ability to fund operations, a more fulsome sale process might have been a viable option. Interested buyers might have performed more thorough due diligence on the Assets. However, the circumstances of this matter do not afford for such luxuries and there is no evidence at this time a higher price than that proposed herein could be achieved. Therefore, in an effort to fulfill Trustee's fiduciary duties and protect the consumer clients, the Trustee diligently sought and reached the proposed agreement with the Good Faith Purchaser to sell the Assets, subject to overbid, pursuant to 11 U.S.C. § 363(b) free and clear of all liens, claims, and encumbrances subject to the restrictions and consumer protections set forth in the APA. Marshack Decl. at ¶ 6, **Exh. 2**.

Debtor's consumer clients are entitled to receive the legal services they sought, contracted for and in many instances require to combat lawsuits and unfair debt collection practices protected against under the FDCPA and, Rosenthal Act, among others. The contracts are a valuable asset that can be assigned to a law firm for the benefit of consumer clients who choose not to opt out of the Sale and assignment for the benefit of the Estate, and all creditors, including consumer creditors. The Trustee maintains that a sale of Debtor's assets and the continuation of actual legal services provided to consumer clients including the assignment of Debtor's consumer contracts is in the best interest of all interested parties and those most impacted by it, the consumer. Marshack Decl. at ¶¶ 9-12; Pruyn Decl. at ¶¶ 12-22; Carss Decl. at ¶¶ 6-7; Schneider Decl. at ¶ 9-10.

In order to ensure consumer clients are afforded the utmost protection, Trustee has required any potential buyer to evidence compliance with all applicable laws and agree to specific terms specifically designed to cure any violations that occurred at LPG and to ensure continued compliance, including but not limited to agreement to the following terms discussed more thoroughly below: 1) a ninety (90) day opt out period pursuant to California Model Rule 1.17; 2) reformation of the legal services agreement to provide additional protections to consumers; and 3) a Court appointed monitor. Sale Order; Marshack Decl. at ¶ 6, **Exh. 2**.

## IV.

### TRUSTEE MADE A REASONABLE GOOD FAITH EFFORT TO MAXIMIZE THE PROTECTIONS TO THE CONSUMER AND BENEFIT TO THE ESTATE AND ALL CREDITORS

Trustee has made significant efforts to maximize consumer protections while attempting to obtain the highest value for the Estate given the limitations as set forth above. To date, Trustee identified and negotiated two potential bids for the purchase of Debtor's assets. The Trustee and his counsel spoke to other interested parties, whose proposals could not satisfy the conditions Trustee is requiring, but whom will be provided notice of this motion for purposes of overbid. The proposed Good Faith Purchaser's offer met consumer protection requirements required by the Trustee including that: 1) the purchaser be an established law firm compliant with applicable laws; 2) provide an upfront payment to the Estate; and 3) provide the required 90 day notice period to consumers that allows them to opt-out of the sale, and is capable of operating during the 90 day notice period without the use of assigned consumer client ACH payments. These same protections are what an Ombudsman or the FTC also require for a sale of consumer files, unless it is to a qualified buyer[2]. Here, the buyer is qualified, as it is also a law firm with a similar practice, and nevertheless it agrees to the additional consumer protections being required by the Trustee. Thus, Trustee proposes to sell the Assets to the Good Faith Purchaser as set forth below.

### A.    The Trustee's Proposed Good Faith Purchaser - Consumer Legal Group, PC

The Good Faith Purchaser is a New York based firm with its primary place of business and law office in the heart of the financial district of New York City. See Rebhun Decl. at ¶¶ 5-6. The Good Faith Purchaser is owned by Aryeh Weber, Esq. who has over 30 years of experience and is licensed in both New York and New Jersey and is in good standing. *Id*. at ¶ 6. The Good Faith Purchaser primarily provides legal services in the consumer debt "space" discussed below, however, also offers legal services related to civil and commercial litigation and real estate law. *Id*. at ¶ 5.

Jason Rebhun is one of the senior attorneys at the Good Faith Purchaser with 13 years of experience who manages and oversees other attorneys and paralegals. See Rebhun Decl. at ¶¶ 3-5, 9-10.

---

[2] Report of Consumer Privacy Ombudsman, Alan Chapell at 27, In re General Motors Corp., et al, Case No. 09-50026 (2011), ("Debtor and New GM agree to provide consumers with an opportunity to opt out of being contacted by New GM for marketing purposes and an opportunity to opt-out of having information transferred to another dealer." )

1  The Good Faith Purchaser has three full time and three part-time staff attorneys and eight paralegals

2  working in house on client matters. *Id.* at ¶ 7. Rebhun graduated from New York Law School in 2010

3  taking classes at night while working as a paralegal during the day. *Id.* at ¶ 3. Over the course of the past

4  13 years, Mr. Rebhun and others at the Good Faith Purchaser have worked on a number of consumer cases

5  in the debt industry, including but not limited to collection cases involving secured and unsecured debt.

6  Mr. Rebhun is one of the senior attorneys at the Good Faith Purchaser. *Id.* at ¶ 3-4. The Good Faith

7  Purchaser has represented to the Trustee and as stated in the APA it has and will comply with all applicable

8  laws related to providing consumer debt legal services. *Id.* at ¶ 20; Marshack Decl. at ¶ 6, **Exh. 2**. It does

9  not engage in telemarketing. *Id.* at ¶ 19. It also does not engage in revenue factoring to pay for new clients.

10 *Id.* It also has not and does not sell or market credit repair services. *Id.* at ¶ 18.

11  All of the Good Faith Purchaser's operational and legal functions are handled in house by trained

12  staff including attorneys, paralegals and other individuals who assist the legal team. Rebhun Decl. at ¶ 7.

13  Mr. Rebhun created, and edits as necessary, the Standard Operation Procedures for attorneys and

14  paralegals handling new files and is also the point of contact for complicated legal procedural issues and

15  strategical questions. *Id.* at ¶ 9-10.

16  The Good Faith Purchaser takes a case by case approach to providing legal services to its clients

17  depending on the facts and status of the case. Rebhun Decl. at ¶¶ 12-22. It does not have a cookie cutter

18  step by step process it uses across the board for all of its clients. *Id.* Instead, a strategic legal plan is

19  developed for each individual customer, which may include affirmative litigation for unfair debt collection

20  practices, debt validation that is part of prosecuting claims under the FDCPA, discovery, resolution efforts

21  and trial. *Id.* By way of example, oftentimes, the Good Faith Purchaser's attorneys will review

22  documentation filed with a commencing pleading, or provided by the client, or in discovery, which is

23  matched and analyzed against the client's credit report to see if that debt was "charged off" in which case

24  certain defenses/motion practice can be used to the clients benefit. *Id.* Attorneys at the Good Faith

25  Purchaser have uncovered cases wherein the relied upon contract and its terms and conditions provide

26  clients with a right to arbitrate lending such cases to potential resolution favorable to the client. *Id.* In

27  certain cases that were filed close to the applicable statute of limitations for collections actions (which

28  varies state by state which is researched by counsel), or where the amount demanded is relatively low, the

DMWEST #16291513 v4

10

attorneys will engage, whether face to face, or telephonically. *Id*. An attorney from the Good Faith Purchaser and the client (and when applicable local counsel for the particular state) will strategize about seeking dismissal, including but not limited to, citing binding arbitration provisions in a contract, among other defenses. *Id*. In such situations, the Good Faith Purchaser has been able to obtain a dismissal and agreement by the creditor to discontinue their action. *Id*. Similarly, engaging in the discovery process and pursuing discovery, especially depositions of a creditor's witness, have often created leverage for settlement negotiations. *Id*.

Based on the foregoing, the Good Faith Purchaser has presented itself as a reputable law firm providing valuable legal services in compliance with applicable law. These services are far beyond the "haphazard" services that LPG often provided to its clients. As a condition of purchase, the Good Faith Purchaser has agreed to all consumer protections required by Trustee, discussed below. The proposed purchaser has more than 30 years of experience in the area, will follow all consumer protections contained in the proposed APA and has made the highest bid with upfront payments that Trustee has received to date. Marshack Decl. at ¶ 12. Further the proposed APA and Sale cures any and all alleged violations and concerns the UST and Court might have regarding consumer protection.

## V.

## <u>THE PROPOSED SALE TO GOOD FAITH PURCHASER</u>

### A.    <u>Summary of Proposed Asset Purchase Agreement (APA)[3]</u>

The APA sets forth the terms of the Sale of the Assets to the Good Faith Purchaser, subject to overbid,   free and clear of all liens, claims, encumbrances and other interests (except for those "Reformation Provisions  set forth in the Asset Purchase Agreement), pursuant to sections 105(a), 363,

---

[3] Despite everyone's best efforts and considerable amounts of time that have gone into this case thus far, the Trustee simply has not had enough time to discuss the full terms of the APA with the OCC; despite having provided them with multiple versions of the APA, responding to questions via email, and having a 1 hour 50 minute call with them on July 7, 2023 to answer further questions. In fact, negotiations for the APA attached hereto as Exh. 2 were just finalized at 6:00 p.m. on July 7, 2023, and this Motion was filed as quickly thereafter as possible. The Trustee is committed to getting the OCC's input and will work over the weekend with his attorneys to continue these discussions and will provide a supplemental declaration with a revised APA if warranted.

365, 503, 507 and 9014 of the Bankruptcy Code. The following is a summary of the key provisions of the Asset Purchase Agreement.[4]

| APA Provision | Summary Description |
|---|---|
| **Seller** | Trustee/Estate |
| **Good Faith Purchaser** | Consumer Legal Group, PC |
| **Purchase Price**<br><br>See APA § 2 | Approximately, $42,000,000 subject to the terms of the APA, including but not limited to<br>• $1,000,000.00 First Deposit<br>• $7,000,000 Second Deposit<br>• 20% fee collected by Buyer on Active Executory Contracts and 15% on Inactive Executory Contracts, up to the amount of the Total Purchase Price.<br>• $4,000,000 of the Purchase allocated from the Second Deposit is without limitation in consideration for any and all Goodwill, Licenses, Software Licenses and the proprietary Luna CRM.<br>• Reversion: CLG is entitled to a $400.00 per contract reversion for all client contracts whose consent is not received pursuant to Rule 1.17 and the Sale Order in the event these contracts exceed five percent (5%) of the total Assumed Contracts. |
| **Deposit**<br><br>See APA §§ 2 and 8 | • $1,000,000 at closing<br>• $7,000,000 within the later of (i) July 24, 2023, or (ii) 10 days of entry of the Sale Order. |
| **Consumer Protections**<br><br>See APA § 6(a) and as set forth below | Purchaser shall have complied with such Consumer Protections (as defined in Section 12(m) and as may be modified by the Court, and including consent in accordance with California Model Rule 1.17 and remedial measures, including the future performance requirements, as detailed in Section 12(j)). |
| **Reformation of the Legal Services Agreement**<br><br>See APA § 12(j) | Purchaser shall obtain consent from consumer clients to the Modified Legal Services Agreement compliant with the TSR, TCPA, and CROA, among other laws, statutes, rules and regulations. The Modified Legal Services Agreement is attached to the Marshack Declaration as **Exhibit 4**. |
| **Court Appointed Monitor**<br><br>See APA §§ 2(b), 2.2, 2.3, 11(b), 12(l)_-(m) | Pursuant to Court approval:<br>• A Court appointed Monitor shall be for appointed for one (1) year from the date of closing;<br>• Seller shall pay all expenses up to but not to exceed $100,000 related to the monitor; |

---

[4] The following summary of the Asset Purchase Agreement is provided for the convenience of the Bankruptcy Court and parties in interest. To the extent that there are any discrepancies between this summary and the proposed APA, the terms and language of the proposed APA shall govern. Capitalized terms used but not otherwise defined in this summary shall have the meanings set forth in the proposed APA, attached to the Marshack as **Exhibit 2.**

| APA Provision | Summary Description |
|---|---|
| | • After Seller has paid expenses related to the Monitor totaling $100,000, further costs and expenses during the 1 year monitor period shall be paid by Purchaser, up to an additional $100,000;<br>• Monitor shall be authorized to hire one paralegal to assist with administering their duties under the APA. At the discretion of the monitor they may seek further instruction and clarification of their duties from the Court. |
| **Notice and 90 Day Opt Out Period**<br><br>See APA § 2.1 | Consumer Clients shall be given:<br>• 90 day notice pursuant to California Model Rule 1.17 or as ordered by this Court;<br>• Provided an opportunity to object, opt out or be excluded from the sale and assumption and assignment during the notice period or thereafter if no response is received. |
| **Purchased Assets**<br><br>See APA § 1(a)(1)-(10) | Consist of all of Seller's and the Estate's right, title, and interest in and to the following property as defined in the APA as is, without warranty, in present condition, including:<br>• personal property leases specifically identified by Good Faith Purchaser;<br>• Equipment and furniture specifically identified by Good Faith Purchaser;<br>• Consumer client accounts;<br>• Prepayments;<br>• Legal Service Agreements, subject to reformation as discussed herein;<br>• Intellectual property;<br>• Pending licenses, authorizations and licenses; and<br>• Debtor's proprietary CRM, Luna. |
| **Excluded Assets**<br><br>See APA § 1(b)(1)-(17) | Consists of:<br>• Cash on hand or received by Seller prior to Closing Date;<br>• Tax rebate or overpayments;<br>• Insurance Proceeds and/or rights to and under any insurance policy;<br>• Tax records and related information;<br>• Sellers claims and rights to prosecute the avoidance actions;<br>• Real property leases not specifically identified in the APA;<br>• All executory contracts that are not assumed;<br>• Personnel records and other records Seller is required by law to maintain;<br>• All actions and causes of action arising in favor of Seller, including but not limited to those arising under Sections 544, 545, 546, 547, 548, 549, 550, and 553 of the Bankruptcy Code;<br>• All records, writing and other items protected by the attorney-client privilege, the attorney work product doctrine or any other cognizable privilege or protection except to the extent necessary, permitted, consented to, and/or authorized to effectuate the transfer;<br>• All rights, claims, and/or avoidance actions with respect to or relating to any liens, claims, encumbrances or interests against, in, with respect to or relating to the Property held by any person and including, without limitation, any claims relating to claims or liens of Tony Diab, Rosa Bianca Loli, Lisa Cohen, Eng Taing, Heng Taing, and their affiliates. |

DMWEST #16291513 v4

| **Seller Affirmations**<br><br>See APA § 11 | None, except as to the following:<br>• Seller is not a "foreign person" within the meaning of Section 1445 of the Internal Revenue Code of 1986;<br>• Subject to Court approval, Seller will fund the costs, fees, and expenses related to any court-appointed Monitor or committee for its services up to one hundred thousand dollars ($100,000.00);<br>• Seller's onsite agent Lori Ensley of Bircher & Associates will provide a representation and warranty that – to the best of her knowledge – that the data provided to Purchaser has not been tampered with since June 2, 2023. |
|---|---|
| **Representations and Warranties of Purchaser**<br><br>See APA § 12(a)-(t) | • Purchaser is a professional corporation duly organized and validly existing under the laws of New York and is in good standing in every jurisdiction in which the failure to be in good standing may have a material adverse effect on Buyer, its business and/or assets;<br>• Consummating the APA will not breach any provision of any contract or instrument to which Purchaser is a party;<br>• Consummation of the APA in accordance with the Sale Order shall not require consent, approval or action of, or any filing with or notice to, any Person or any public, governmental, judicial, or regulatory authority, other than the Bankruptcy Court;<br>• Purchaser has sufficient financial resources, including, without limitation, the necessary liquid funds, to promptly pay the balance of the Purchase Price and to pay and perform the Assumed Contracts and the Assumed Liabilities as and when due;<br>• There are no actions, suits, claims, investigations, hearings, or proceedings of any type pending (or, to the knowledge of Buyer, threatened), at law or in equity, that might affect Buyer's ability to close the transactions contemplated hereby.<br>• Purchaser has been provided a reasonable and fair opportunity to inspect and investigate the Property, which inspection will occur on July 12 and July 13, 2023, sale thereof and terms of the APA with counsel;<br>• All materials submitted to Seller in connection with Purchaser and the proposed APA, sale transaction are true and correct;<br>• Purchase Price consists of amounts wholly independent, and free and clear, from the Property and therefore excludes any and all consumer payments as a source of funds related to the Purchase Price;<br>• Any subsequent amounts paid to Seller, including the Fee (as defined in the APA) from Purchaser or its transferee or assignee, shall not derive from any proceeds resulting from the Assumed Contracts or related Property;<br>• Purchaser represents and warrants that all LSA's and the implementation thereof have been modified for compliance with the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), the Telemarketing Sales Rule, 16 C.F.R. Part 310 (the "TSR"), and to the extent applicable, if ever, the Credit Repair Organizations Act, 15 U.S.C. § 1679 (the "CROA") prior to Closing; |

DMWEST #16291513 v4

14

| | |
|---|---|
| | • Purchaser represents and warrants that the performance of the Modified LSA's will similarly comply with the TCPA, TSR, and to the extent applicable, if ever, the CROA;<br>• Purchaser represents and warrants that it will cooperate with the requests, oversight, and inquiries of the court-appointed Monitor or Committee, whose appointment shall be for a one (1) year term, unless extended by court order, as further provided in the Sale Order;<br>• Purchaser represents and warrants that it will cover the costs, fees, and expenses related to the court-appointed Monitor for its services after the Initial Coverage has expired, up to an additional $100,000, as further provided in the Sale Order;<br>• Purchaser will provide Seller with visibility into its ACH merchant processing account and Debt Pay Pro account for the purpose of facilitating the Monitor's duties under the APA;<br>• Purchaser will maintain books and records sufficient to allow Seller to conduct an accounting for purposes of calculation of the Fee amount due under the APA;<br>• Purchaser will, upon execution of Non-Disclosure Agreement and waiver of contingency, have the right to manage, operate, and control key personnel of the Seller;<br>• Upon Closing, Purchaser shall have the right to transition servicing of the Active and Inactive Executory Contracts to its own employees and attorneys;<br>• At Purchaser's expense, Seller shall cooperate with a special counsel motion for Purchaser's lawyers to pursue claims for interference with the Active or Inactive Executory Contracts; and<br>• Purchaser represents and warrants that it will have no formal or informal business arrangements with Tony Diab during any period in which a Fee is due to Seller under the APA. |
| **Cure Amounts, Fees and Expenses**<br><br>See APA § 1(b)(6) and 1(c) | Buyer will pay all cure amounts associated with the Assumed Contracts. |
| **Closing Date**<br><br>See APA § 4 | The first Business Day after occurrence of both<br>(i) entry of the Sale Order; and<br>(ii) deposit and availability of funds from the Initial Deposit and Second Deposit; if the Court waives the 14-day stay set forth in Bankruptcy Rule 6004(h).<br><br>If the Court does not waive the 14-day stay set forth in Bankruptcy Rule 6004(h), then Closing will occur on the fifteenth (15th) day after the entry in the Bankruptcy Case of the Sale Order, provided that both the Initial Deposit and Second Deposit have been made. |

## B.    Rejection and Termination of Employees

LPG currently only has two employees, who if they wish, will continue to work for any prospective

purchaser. The Trustee is not aware of any employment contracts between these employees and the

Debtor. However, if any exist, the Trustee hereby seeks to reject and terminate those employee contracts,

so that they can be hired by the Good Faith Purchaser. Those individuals currently working to preserve the Debtor's files are extremely valuable to its operations, but these individuals are employed by Phoenix Law.

**C.**    **Transfer to Legal Service Agreements**

The legal services agreements of the Debtor will be reformed and transferred to the Good Faith Purchaser. All consumer clients will receive notice of the reformation and transformation of their files and will have 90 days to opt out from the transfer of their file to the Good Faith Purchaser.

**D.**    **The 90 Day Notice Period Provides Consumers to Opt Out of Any Sale and Assignment Pursuant to California Model Rule 1.17[5].**

The proposed APA provides for a 90 Day notice period pursuant to the relevant provisions of California Model Rule 1.17 "Sale of A Law Firm", as determined by a finding that the Trustee is a "Person acting in a representative capacity" and subject to Rule 1.17(b)(1); or as ordered by the Court.

California Mode Rule 1.17 provides, in relevant part:

(b) If the sale contemplates the transfer of responsibility for work not yet completed or responsibility for client files or information protected by Business and Professions Code section 6068, subdivision (e)(1), then;

(1) if the seller is deceased, or has a conservator or other person acting in a representative capacity, and no lawyer has been appointed to act for the seller pursuant to Business and Professions Code section 6180.5, then prior to the transfer;

(i) the purchaser shall cause a written notice to be given to each client whose matter is included in the sale, stating that the interest in the law practice is being transferred to the purchaser; that the client has the right to retain other counsel; that the client may take possession of any client materials and property, as required by rule 1.16(e)(1); and that if no response is received to the notice within 90 days after it is sent, or if the client's rights would be prejudiced by a failure of the purchaser to act during that time, the purchaser may act on behalf of the client until otherwise notified by the client, and

(ii) the purchaser shall obtain the written consent of the client. If reasonable efforts have been made to locate the client and no response to the paragraph (b)(1)(i) notice is received within 90 days, consent shall be presumed until otherwise notified by the client.

Based on the foregoing notice procedure to consumer clients, as modified or ordered by this Court, any and all consumer clients affected by the proposed Sale, would be provided notice of the Sale and a

---

[5] There was a recent ABA Formal Opinion (March 2023) that explains why the California Model Rule is applicable herein, stating "Model Rule 8.5 provides that when a lawyer's conduct is in connection with a matter pending before a tribunal, the lawyer must comply with the ethics rules of the jurisdiction in which the tribunal sits, unless otherwise provided."

reasonable opportunity to: 1) seek the advice of an attorney; 2) object and opt out; or 3) provide consent and continue with the services provided by the Good Faith Purchaser subject to further consumer protections discussed herein. This is true whether they opt out or consent to the Sale and assignment with the 90 days or thereafter. Any concerns over consumer consent and protection is built in to the proposed Sale and client / attorney relationship thereafter.[6]

**E.    Reformation of Legal Services Agreement and Compliance with Consumer Protection Laws.**

As noted above, all consumer customer contracts will be reformed before they are assumed/acquired by the Good Faith Purchaser. These contracts will be reformed to (i) to comply with applicable law; (ii) to require performance in accordance with applicable law; (iii) define earned fees in accordance with applicable laws; and (iv) permit consumer consent to the transfer of the contract to the Good Faith Purchaser and counsel in accordance with California Model Rule 1.17 . A copy of the proposed Modified Legal Services Agreement is attached to the Marshack Decl. as **Exhibit 4**. In particular, the proposed Modified Legal Services Agreement, clearly defines what services are to be provided and when fees for said services are earned consistent with applicable laws.

**F.    Trustee's Proposed Court Appointed Monitor to Ensure Compliance with Consumer Protection Laws.**

In addition to the foregoing protections built in to the proposed APA to ensure compliance with all applicable laws, the Trustee insisted on and has required that the Good Faith Purchaser agree to a one (1) year Court appointed monitor. The monitor provision requires the  Good Faith Purchaser to cooperate with an Committee of Consumer Creditors  and any other party appointed by the Court in order to provide transparency, compliance with protocols and monitoring including the ability to review the Good Faith Purchaser's books and records, DebtPayPro and/or Luna CRM, conduct regular audits of the books and

---

[6] At the discretion of the Court, and only as the Court deems necessary to approve the Sale Order, Trustee proposes, in the alternative, that consumer client consent pursuant to Rule 1.17 be provided before any client contract is assumed and assigned. This procedure, however, may place the cart before the horse, as many clients transferred to Phoenix are not active but may still need legal services of an attorney and whose contract may be assumed and assigned and properly retained by the Good Faith Purchaser under the Modified Legal Services Agreement. As such, Trustee's proposed alternative consent procedure may impact and ultimately reduce the value of the Sale to Debtor's Estate and all creditors. As such, Trustee maintains notice pursuant to Rule 1.17 be authorized.

records, confirm the  Good Faith Purchaser's ongoing compliance with tax and other applicable consumer protection laws including but not limited to the TSR, TCPA and as applicable CROA.

The Good Faith Purchaser would be subject to the monitoring provision for one year following the closing date. The first $100,000 in costs and expenses related to monitoring would be paid for by the Debtor thus removing any bias and/or potential conflict with the monitor's fees being paid by the entity being monitored.

Trustee proposes, subject to the Court's approval, Nancy Rapport or in the alternative Matthew Bouslog as the Court appointed Monitor. A true and correct copy of their curriculum vitae is attached to the Marshack Decl. as **Exhibits 5 and 6**, respectively. Both are familiar with the consumer protections issues specific to LPG and law firms providing legal services in the consumer debt "space", including debt validation, settlement, affirmative FDCPA claims and litigation.

**VI.**

**THE COURT SHOULD GRANT THE TRUSTEE'S SALE MOTION FOR THE BENEFIT OF THE CONSUMER CLIENTS, ESTATE AND CREDITORS**

**A.    The Court is Authorized to Issue an Order Approving the Sale of Debtor's Assets and Procedures Related Thereto.**

The Bankruptcy Court is authorized to issue an  order approving the proposed Sale of Debtor's Assets, including the assignment of executory contracts and leases pursuant to 11 U.S.C. §§ 105 and 363(b). *See, e.g., In re Quintex Entertainment, Inc.*, 950 F.2d 1492, 1495 (9th Cir. 1991). The proposed Sale of the assets of a Debtor's Estate, other than in the ordinary course of business, may be approved when: (i) there is a sound business reason for the sale; (ii) accurate and reasonable notice is provided to interested parties; (iii) the price is fair, reasonable and adequate; and (iv) the sale is made to the purchaser in good faith. *See, e.g., In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991); *In re Stroud Ford, Inc.*, 163 B.R. 730, 732 (Bankr. M.D. Pa. 1993); *In re Titusville Country Club*, 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991); *In re Industrial Valley Refrigeration and Air Conditioning Supplies, Inc.*, 77 B.R. 15, 21 (Bankr. E.D. Pa. 1987). Accordingly the proposed Sale should be authorized pursuant to section 363 of the Bankruptcy Code, where, as here, there is a sound business purpose supported by a reasoned and "articulated business judgment" justifying the transaction.

Courts have made clear that a Trustee's business judgment is entitled to substantial deference with respect to the decision and procedure for selling Debtor's assets pursuant to 11 U.S.C. Section 363(b). *See In re Alaska Fishing Adventure, LLC*, 594 B.R. 883, 890 (Bankr. D. Alaska 2018) *citing In re Psychrometric Sys.*, 367 B.R. 670, 674 (Bankr. D. Colo. 2007); *In re Bakalis*, 220 B.R. 525, 531-32 (Bankr. E.D.N.Y. 1998); *Institutional Creditors of Continental Air Lines, Inc. v. Continental Air Lines, Inc. (In re Continental Air Lines, Inc.)*, 780 F.2d 1223, 1226 (5th Cir. 1986); *In re JL Building, LLC*, 452 B.R. 854, 859 (Bankr. D. Utah 2011). Any objection based on mere speculation as to future events, services or lack thereof, is insufficient to avoid the proposed Sale where the Trustee has articulated his business judgment. *In re Alaska Fishing Adventure, LLC*, *supra*, 594 B.R. at 890; *Stephens Indus. Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986); *In re WBQ P'ship*, 189 B.R. 97, 102 (Bankr. E.D. Va. 1995); *Walter v. Sunwest Bank (In re Walter)*, 83 B.R. 14, 19-20 (B.A.P. 9th Cir. 1988).

Courts have held the paramount goal in any proposed sale of property of the estate is to maximize the proceeds received by the Estate. *See In re Adams Res. Expl. Corp.*, No. 17-10866 (KG), 2017 WL 5484017, at *3 (Bankr. D. Del. Sept. 20, 2017) ("The relief requested in the Sale Motion . . . is a necessary and appropriate step toward enabling the Debtor to maximize the value of its bankruptcy estate, and it is in the best interests of the Debtor, its estate and its creditors."); *In re Mushroom Transp. Co.*, 382 F.3d 325, 339 (3d Cir. 2004) (debtor-in-possession "had a fiduciary duty to protect and maximize the estate's assets"); *In re Edwards*, 228 B.R. 552, 561 (Bankr. E.D. Pa. 1998) ("The purpose of procedural bidding orders is to facilitate an open and fair public sale designed to maximize value for the estate."); *In re Food Barn Stores, Inc.*, 107 F.3d 558, 564–65 (8th Cir. 1997) (in bankruptcy sales, "a primary objective of the [Bankruptcy] Code [is] to enhance the value of the estate at hand"); *Official Committee of Subordinated Bondholders v. Integrated Resources, Inc. (Integrated Res.)*, 147 B.R. 650, 659 (S.D.N.Y. 1992) ("It is a well-established principle of bankruptcy law that the objective of bankruptcy rules. . .with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate.") (internal citations omitted). Concerns related to consumer clients subject to the proposed Sale, assumption and assignment in this matter present an overarching goal of consumer protection, which may in ways conflict with the goals set forth in the Bankruptcy code and duties of the Trustee. Most notably and in the Trustee's view,

///

1  ensuring consumer protection must take precedence over all other procedures designed to maximize value

2  to the Estate.

3        Notwithstanding, Trustee in this matter has gone to great lengths to seek and evaluate multiple

4  bidders able to comply with provisions designed to protect consumer clients and maximize the value to

5  the Estate. Utilizing Trustee's sound business judgment, he believes the proposed Sale, APA and terms

6  therein provide the perfect balance of competing interests in providing extraordinary protections for the

7  consumer client who actively seek and/or require legal services and maximizing the value to the Estate

8  for the benefit of all creditors, including consumer creditors. Further, Trustee has provided a second

9  negotiated asset purchase agreement with Morning Law, so all parties can review and evaluate the offers

10  the Trustee was provided.

11 **B.      The Sale Should Be Approved To Protect the Interests of Consumer Clients Based on The
         Trustee's Reasoned Business Judgment and Extraordinary Protections Built in to The
12       Proposed Sale of Debtor's Assets and The Assignment of Executory Contracts.**

13

14        Section 363(b)(1) of the Bankruptcy Code provides that a debtor, "after notice and a hearing, may

15  use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. §

16  363(b)(1). A sale of the debtor's assets should be authorized pursuant to section 363 of the Bankruptcy

17  Code if a sound business purpose exists for the proposed transaction. *See, e.g.*, *In re Schipper*, 933 F.2d

18  513, 515 (7th Cir. 1991) ("Under Section 363, the debtor in possession can sell property of the estate . . .

19  if he has an 'articulated business justification' . . . ."); *see also In re Martin*, 91 F.3d 389, 395 (3d. Cir.

20  1996) (same); *Comm. Of Equity Sec. Holders v. Lionel* Corp. (In re Lionel Corp.), 722 F.2d 1063, 1070

21  (2d Cir. 1983) (same); *In re Telesphere Commc's, Inc.*, 179 B.R. 544, 552 (Bankr. N.D. Ill. 1999) (same).

22        Once the Trustee articulates a valid business justification, the business judgment rule "is a

23  presumption that in making a business decision the directors of a corporation acted on an informed basis,

24  in good faith, and in the honest belief that the action taken was in the best interests of the company." *In re*

25  *S.N.A. Nut Co.*, 186 B.R. 98, 102 (Bankr. N.D. Ill 1995) (citations omitted); *In re Filene's Basement, LLC*,

26  11-13511 (KJC), 2014 WL 1713416, at *12 (Bankr. D. Del. Apr. 29, 2014) ("If a valid business

27  justification exists, then a strong presumption follows that the agreement at issue was negotiated in good

28  faith and is in the best interests of the estate") (citations omitted); *In re Johns-Manville Corp.*, 60 B.R.

    612, 615–16 (Bankr. S.D.N.Y. 1986) ("a presumption of reasonableness attaches to a debtor's

management decisions."). Unlike many bankruptcy cases, however, this case is unique requiring a delicate balance between the Trustee's duties to the Estate and consumer client protections. As discussed herein, Trustee's believes, that the proposed sale strikes this balance such that the Court should approve the APA with the Good Faith Purchaser.

1.    **A Sound Business Purpose Exists for the Sale.**

As set forth above, the Trustee has a sound business justification for selling the Debtor's assets. *First and foremost*, Trustee reasonably believes based on the evidence obtained to date: a) active consumer clients continuing to seek legal services related to their consumer debt will be significantly harmed, subject to further prey and/or illegal debt collection practices if the sale is not approved and LPG is wound down Marshack Decl. at ¶ 13; Pruyn Decl. at ¶¶ 12-22; Carss Decl. at ¶¶ 6-7; Rebhun Decl. at ¶¶ 12-22; Schneider Decl. at ¶ 9-10]; b) the offending Legal Services Contract and conduct by LPG can be reformed and eliminated, as in the PGX Holdings, Inc. bankruptcy matter, discussed below; and c) consumer clients can and will receive legitimate legal services from the  Good Faith Purchaser who has operated legally and has substantial experience in the consumer debt legal industry.

By way of example, in a similar pending bankruptcy case, *In re PGX Holding, Inc.* (*In re PGX*), Case No. 23-10718-CTG (D. Del. 2023), the Consumer Finance Protection Bureau (CFPB) obtained a pre-petition judgment against *PGX Holding, Inc*. based on violations of the TSR, similar to the UST's position in this matter as to LPG's pre-petition operations and Legal Services Agreement. *Id*., Docket No. 12 at ¶ 9. PGX Holdings, Inc. brought a motion to sell its executory contracts in its opening papers. *Id*., Docket No. 66, *In PGX*, the UST only objected to debtor's sale motion to the extent the sale motion sought to provide a break up fee. *Id.*, Docket No. 101. PGX changed its business model/practices pre-petition due to the CFPB litigation brought against it, removed and cured the offending conduct, and now seeks to sell a compliant business via Section 363. *Id*. at Docket No. 12 at ¶ 10. It would therefore be at odds with the opposition in *In re PGX* for any party to speculate that LPG's alleged violations cannot be cured by Trustee's proposed sale. To wit, Trustee has endeavored to structure the APA and proposed sale to Good Faith Purchaser to cure any concerns and/or allegations based on LPG's prior policies and procedures.

///

Second, the proposed sale to Good Faith Purchaser stands to provide significant assets to Debtor's Estate for the benefit of all creditors, including pre-petition consumer clients entitled to a refund and post-petition consumer clients who have made a valid claim. In an effort to maximize the purchase price to the Estate, given the exigent circumstances and significant limitations imposed, the Trustee sought as many potential bidders he could on an expedited basis and with limited funds who: 1) had the capability to provide legal services: 2) handle the volume necessitated by the same; 3) had sufficient capital to fund the purchase and operate as required by the proposed APA; 4) would agree to extraordinary consumer protection provisions, including a monitor; and 5) had a history of providing legally compliant legal services to its clients. Out of two potential purchasers and relying on the UST's concerns and statements of this Court, Trustee believes Good Faith Purchaser achieves the proper balance between maximizing the protections to Debtor's consumer clients and the return to the Estate. Marshack Decl. at ¶¶ 9-13. Therefore, the Trustee requests that the Court make a finding that the proposed sale of the assets is a proper exercise of the Trustee's business judgment and is rightly authorized.

## 2.    Adequate and Reasonable Notice of the Sale Will Be Provided.

Notice of the Sale will be served in a manner that provides parties notice of the date, time and location of the applicable Sale Hearing, the overbid procedures and deadlines, and the applicable deadline to object. Further, notice of the Sale Order shall be provided to all consumer clients affected by the sale pursuant to California Model Rule 1.17, or as modified or ordered by this Court, including a detail of their obligations and right to object and be excluded from any assumption and assignment by the  Good Faith Purchaser. As such, the Trustee requests a finding that the proposed notice procedures are both adequate and reasonable and the sale is rightly authorized.

## 3.    The Sale Transaction and Purchase Price Reflects a Fair Value Transaction.

Section 363(b) does not require an auction procedure in order for the purchase price to reflect a fair value transaction. *Bank of Am. Nat'l Trust & Sav. Ass'n. v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 457 (1999); *see also In re Trans World Airlines, Inc.*, No. 01-00056, 2001 WL 1820326, *4 (Bankr. D. Del. 2001). Regardless, the sale is subject to overbid and any interested party will have the ability to become a qualified bidder. But, the circumstances in this case require a quick sale as the Estate is set to run out of funds as stated in the Trustee's Declaration and accompanying budget. Marshack Decl. at ¶8,

**Exh. 4** (Budget).   Notwithstanding, the Trustee believes in his business judgment and based on the evidence, the purchase price offered by the Good Faith Purchaser is fair market value for the Assets given the state of the Debtor's affairs and inability to fund operations while waiting for a higher offer. Furthermore, the Good Faith Purchaser has also agreed to follow applicable law with respect to the consumer client contracts and submit to one year of oversight overseen by this Court.

        **4.**       **The Sale Transaction Has Been Proposed in Good Faith and Without Collusion, and is in "Good Faith".**

The Trustee request that the Court find the Good Faith Purchaser is entitled to the benefits and protections provided by section 363(m) of the Bankruptcy Code based on the Declarations filed herein in lieu of testimony. Furthermore, the Trustee and a representative from the Good Faith Purchaser will attend the hearing on the Sale Motion so there can be additional proffers and testimony, if needed, to support a finding of good faith.

Section 363(m) of the Bankruptcy Code provides in pertinent part:

> [t]he reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease or property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m) .

Section 363(m)  of the Bankruptcy Code thus protects the purchaser of assets sold pursuant to section 363 of the Bankruptcy Code from the risk that it will lose its interest in the purchased assets if the order allowing the sale is reversed on appeal, as long as such purchaser leased or purchased the assets in "good faith." While the Bankruptcy Code does not define "good faith," courts have held that a purchaser shows its good faith through the integrity of its conduct during the course of the sale proceedings, finding that where there is a lack of such integrity, a good faith finding may not be made. *See, e.g., In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143 (3d Cir. 1986) ("Typically, the misconduct that would destroy a [buyer's] good  faith status at a judicial sale involves fraud, collusion between the [proposed buyer] and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders."); *In the Matter*

1  *of Andy Frain Servs., Inc.*, 798 F.2d 1113, 1125 (7th Cir. 1986) (same); *In re Sasson Jeans, Inc.*, 90 B.R.

2  608, 610 (S.D.N.Y. 1988) (same).

3  As discussed above, the Trustee has proposed the Sale of Debtor's Assets in good faith and in the

4  best interest of consumer clients who require legal services, sought legal advice and absent the proposed

5  Sale transaction stand to be thrown out on the street to fend for themselves, many of whom are faced with

6  litigation and unable to afford a standard legal retainer. In such a state, the consumer clients stand to be

7  further victims of prey to other wrongful debt relief companies who make false promises and operate in

8  violation of the TSR, TCPA and/or CROA. Moreover, all of the consumer clients also stand to face unfair

9  debt collection practices, lawsuits and other oppressive tactics employed in attempting to collect a debt.

10 In order to prevent consumer client from being presented with such an ill fate and to obtain substantial

11 funds for the benefit of the Estate, the Trustee believes in good faith the proposed Sale with built in

12 consumer protections designed to cure the violations alleged against LPG is in the best interest of the

13 consumer clients and the Debtor's estate.

14 Both the Trustee and the Good Faith Purchaser have negotiated the terms of the proposed Sale and

15 APA at arm's length and in good faith through their respective counsel. The Good Faith Purchaser was

16 not the only potential purchaser, however, it made a significant offer that met the stringent requirements

17 to ensure consumer protections required by the proposed APA. During the negotiations, the  Good Faith

18 Purchaser cooperated with the Trustee in timely providing documentation and information necessary to

19 evaluate its qualifications, financial ability to fund the purchase price and compliance with applicable

20 laws. Moreover, the Good Faith Purchaser has not engaged in fraud, collusion or taken advantage of any

21 bidder throughout the process. As such, Trustee respectfully requests the Court make a finding that the

22 Sale has been proposed in good faith.

23 **5.    The Proposed Sale Should Be Approved "Free and Clear" Under Section**
   **363(f).**
24

25 Section 363(f) of the Bankruptcy Code permits a Trustee to sell property free and clear of another

26 party's interest in the property if: (a) applicable non-bankruptcy law permits such a free and clear sale; (b)

27 the holder of the interest consents; (c) the interest is a lien and the sale price of the property exceeds the

28 value of all liens on the property; (d) the interest is the subject of a bona fide dispute; or (e) the holder of

the interest could be compelled in a legal or equitable proceeding to accept a monetary satisfaction of its interest. See 11 U.S.C. § 363(f). The Debtor only listed 3 secured claims in its schedules. However, a search of UCC filings in California shows the following active Secured Creditors:

| Creditor | UCC No. | Status | Filing Date | Lapse Date | Scope | Claim Amount if Known |
|---|---|---|---|---|---|---|
| OHP – LPG, LP AUSTIN, TX | U230005834326 | ACTIVE | 1/25/2023 | 1/25/2028 | All Assets Filing | Proof of Claim No. 44 in the amount of at least $16,938,954.00 |
| C T CORPORATION SYSTEM, AS REPRESENTATIVE - GLENDALE, CA | U230006246724 | ACTIVE | 1/26/2023 | 1/26/2028 | All Assets Filing | |
| FIRST CORPORATE SOLUTIONS, AS REPRESENTATIVE - SACRAMENTO, CA | U230009059730 | ACTIVE | 2/2/2023 | 2/2/2028 | "All accounts of Debtor attached hereto as Exhibit A with all proceeds and all rights associated with such accounts." | |
| PROOFPOSITIVE LLC - SHERIDAN, WY | U230009725118 | ACTIVE | 2/9/2023 | 2/9/2028 | "$1,053,690.00 in Litigation Practice Group and associated Litigation Practice Group Affiliate customer accounts receivables files." | |
| MC DVI FUND 2 LLC, MC DVI FUND 2 LLC, DEBT VALIDATION FUND II LLC- GLENVIEW, IL | U230009923531 | ACTIVE | 2/10/2023 | 2/10/2028 | All Assets Filing | |
| VENTURE PARTNERS LLC- SHERIDAN, WY | U230016377733 | ACTIVE | 3/9/2023 | 3/9/2028 | "Executed Accounts Receivables Purchase Agreements in the amount of $15,959,308.55 Debt Enrolled" | |
| CITY CAPITAL NY | U230018278331 | ACTIVE | 3/16/2023 | 3/16/2028 | All Assets Filing | Proof of Claim No. 89 filed in the amount of $2,950,000 |
| MNS FUNDING LLC - BROOKLYN, NY | U210050823723 | ACTIVE | 5/28/2021 | 5/28/2026 | "All accounts receivable, receipts, instruments, contract rights and other rights to receive the payment of money, patents, chattel paper, licenses, leases and general intangibles, whether now owned acquired or arising, and all of the debtor's books and records relating to any of the foregoing." | |

| Creditor | UCC No. | Status | Filing Date | Lapse Date | Scope | Claim Amount if Known |
|---|---|---|---|---|---|---|
| CT CORPORATION SYSTEM) CORP. | U210050853928 | ACTIVE | 5/28/2021 | 5/28/2026 | All Assets Filing | |
| CORPORATION SERVICE COMPANY, AS REPRESENTATIVE - SPRINGFIELD, IL | U210052792122 | ACTIVE | 6/4/2021 | 6/4/2026 | All Assets Filing | |
| C T CORPORATION SYSTEM, AS REPRESENTATIVE - GLENDALE, CA | U210057670018 | ACTIVE | 6/17/2021 | 6/17/2026 | All Assets Filing | |
| WORLD GLOBAL FUNDLLC - BROOKLYN, NY | U210059750525 | ACTIVE | 6/24/2021 | 6/24/2026 | "All accounts receivable, receipts, instruments, contract rights and other rights to receive the payment of money, patents, chattel paper, licenses, leases and general intangibles, whether now owned acquired or arising, and all of the debtor's books and records relating to any of the foregoing.'" | |
| C T CORPORATION SYSTEM, AS REPRESENTATIVE [unknown as to who they represent] | U210062497027 | ACTIVE | 7/6/2021 | 7/6/2026 | All Assets Filing | |
| BMF ADVANCE - BROOKLYN, NY | U210090322021 | ACTIVE | 10/4/2021 | 10/4/2026 | All Assets Filing | |
| DIVERSE CAPITAL | U210106788229 and U210085288536 | ACTIVE | 12/1/2021 | 12/1/2026 | "All accounts receivable, receipts, instruments, contract rights and other rights to receive the payment of money, patents chattel paper, licenses, leases and general intangibles, whether now owned acquired or arising, and all of debtor's books and records relating to any of the foregoing." | Debtor Scheduled at $1,224,810.00 on Schedule D |
| Fundura Capital Group 80 Broad Street, Suite 3303 New York, NY 10004 | | | | | | Debtor Scheduled at $2,100,000.00 on Schedule D |

1   Section 363(f) of the Bankruptcy Code is drafted in the disjunctive.

2   Thus, satisfaction of any of the requirements enumerated therein will suffice to warrant the

3   Debtors' sale of the assets free and clear of all interests (i.e., all liens, claims, rights, interests, pledges,

4   obligations, restrictions, limitations, charges, or encumbrances), except with respect to any interests that

5   may constitute an assumed liability under the applicable purchase agreement. *See In re Kellstrom Indus.,*

6   *Inc.*, 282 B.R. 787, 793 (Bankr. D. Del. 2002) ("[I]f any of the five conditions are met, the debtor has the

7   authority to conduct the sale free and clear of all liens."). Section 363(f) states:

8   The trustee may sell property under subsection (b) or (c) of this section free and clear of any
    interest in such property of an entity other than the estate, only if—

9

10  (**1**) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
    (**2**) such entity consents;
    (**3**) such interest is a lien and the price at which such property is to be sold is greater than the
11  aggregate value of all liens on such property;
    (**4**) such interest is in bona fide dispute; or
12  (**5**) such entity could be compelled, in a legal or equitable proceeding, to accept a money
    satisfaction of such interest.

13  Trustee submits that the claims of the creditors on the list above are in bona fide dispute. The first

14

15  seven creditors listed recorded their interests within the preference period and these filings may be subject

16  to avoidance. All of the purported secured creditors assert liens which the Trustee disputes for various

17  reasons including settlement of liens, fraudulent conveyance, assignment of liens, and multiple agreements

18  and UCC-1s for identical debts. Because many filings were only done in the name of a generic agent, the

19  Trustee cannot identify what liens may have been satisfied or be duplicative without an investigation.

20  Further, to the extent any lien is valid, the secured claim will be adequately protected by its

21  attachment to the net proceeds of the proposed Sale albeit subject to any claims and defenses the Trustee

22  may possess with respect thereto, and/or any holder of the interest could be compelled in a Debtor's

23  bankruptcy proceeding to accept a monetary satisfaction of its interest. The Trustee accordingly request

24  authority to convey the assets to the Good Faith Purchaser arising from the proposed Sale, if any, free and

25  clear of all liens, claims, rights, interests, pledges, obligations, restrictions, limitations, charges, or

26  encumbrances, with any such liens, claims, rights, interests, pledges, obligations, restrictions, limitations,

27  charges, or encumbrances to attach to the proceeds of the **proposed Sale.**

28

DMWEST #16291513 v4

**C.**     **The Assumption and Assignment of Executory Contracts Should Be Approved.**

As set forth above, the proposed Sale contemplates the assumption and assignment of executory contracts to the Good Faith Purchaser. Pursuant to section 365 of the Bankruptcy Code, a trustee, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). A trustee's decision to assume an executory contract or unexpired lease is subject to the "business judgment rule," meaning that a trustee's decision to assume an executory contract or unexpired lease should be approved by the Bankruptcy Court if the decision is supported by a sound business reason, with due deference to the trustee's business judgment. *See In re Hertz*, 536 B.R. 434, 442 (Bankr. C.D. Cal. 2015) ("The propriety of a decision to assume or reject an unexpired lease . . . normally is determined under the deferential 'business judgment' test."); *NLRB v. Bildisco*, 465 U.S. 513, 524 (1984); *Orion Pictures v. Showtime Networks Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1099 (2d Cir. 1993). A trustee's decision to assume should be accepted, "except upon a finding of bad faith or gross abuse of [the debtor's] business discretion." *Lubrizol Enters. Inc. v. Richmond Metal Finishers, Inc. (In re Richmond Metal Finishers, Inc.)*, 759 F.2d 1043, 1047 (4th Cir. 1985).

Here, the assignment and assumption procedure proposed in the APA and Sale Order are fair, reasonable, compliant with California Model Rule 1.17 and designed to provide sufficient notice to consumer clients regarding their rights to opt out during the 90 –day notice period after the sale *See, e.g., In re Boy Scouts of Am.*, 642 BR 504, 569 (Bankr. D. Del. 2022) ("The lack of objection. . . is also consensual for purposes of § 363 and, again, permissible under § 363(f)(2)."); *In re Tabone, Inc.*, 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (same); *Pelican Homestead v. Wooten (In re Gabel)*, 61 B.R. 661, 667 (Bankr. W.D. La. 1985) (same). The assumption and assignment procedure complies with all applicable laws and provides maximum protection to the consumer client to ensure all interested and/or affected parties are provided sufficient notice and opportunity to be excluded from the proposed Sale Order and APA. The assumption and assignment will further be reviewed by the Court and key constituents in the Chapter 11 case. Accordingly, Trustee request the Court approve the proposed Sale including the assumption and assignment of all executory contracts and leases in the APA and Sale Order in the best interest of the consumer clients, the Estate and in the exercise of the Trustee's business judgment.

**D.    Relief Under Bankruptcy Rules 6004(h) and 6006(d) Is Appropriate.**

Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . . is stayed until the expiration of fourteen days after the entry of the order, unless the court orders otherwise." Additionally, Bankruptcy Rule 6006(d) provides that an "order authorizing the trustee to assign an executory contract or unexpired lease . . . is stayed until the expiration of fourteen days after the entry of the order, unless the court orders otherwise." The Trustee request that the Sale Order be effective immediately upon its entry by providing that the fourteen-day stays under Bankruptcy Rules 6004(h) and 6006(d) are waived.

As discussed herein, Trustee secured third party financing to minimize the disruption to those consumer clients needing legal services. These funds are quickly dissipating and will not cover the necessary costs and expenses during the fourteen day stay period. See Marshack Decl. at ¶ 8. In order to minimize any potential disruption to any consumer, the Trustee respectfully requests the Court waive the fourteen day stay period under Bankruptcy Rules 6004(h) and 6006(d).

## VII.

## CONCLUSION

While the Trustee wishes that the posture of this Case permitted a typical sale process, the circumstances of this particular case does not permit that luxury. The proposed Sale will place the consumer client with the Good Faith Purchaser who will be able to provide the legal services these innocent parties sought, while allowing an opt-out period to obtain the clients consent to the sale. . The proposed Sale will capture any value the Assets to be sold to the Good Faith Purchaser have at this time. Further, the proposed Sale will also relieve the Estate of contractual and operating liabilities and will provide assets for the benefit of all creditors. Finally, a sale will provide proceeds that will allow the Trustee the funds necessary to pursue the bad actors in this case that put the consumers at risk in the first place.

WHEREFORE, the Trustee respectfully requests that the Bankruptcy Court enter the Sale Order approving, (a) the terms and conditions of the Asset Purchase Agreement; (b) approving the Sale and assumption and assignment of the Assumed Contracts including the Notice pursuant to Rule 1.17; (c) ///

approving the sale free and clear of all liens; (d) waiving the 14 day stay; and (e) granting such other and

further relief as is fair and equitable.

Dated:  July 7, 2023                              Respectfully submitted,

                                                  DINSMORE & SHOHL LLP


                                                  By:  /s/ Christopher B. Ghio
                                                       Christopher B. Ghio
                                                       Christopher Celentino
                                                       Yosina M. Lissebeck
                                                       Jeremy Freedman
                                                       Special Counsel to Richard A. Marshack, Chapter 11
                                                       Trustee

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address
is:        655 W. Broadway, Suite 800, San Diego, California  92101

A true and correct copy of the foregoing document entitled (*specify*):
**NOTICE OF MOTION AND MOTION OF TRUSTEE RICHARD A. MARSHACK FOR ENTRY OF AN ORDER
(A) APPROVING SALE, SUBJECT TO OVERBID, OF ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS,
ENCUMBRANCES AND INTERESTS PURSUANT TO 11 U.S.C. § 363(b) AND (B) APPROVING
ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES
AND OTHER AGREEMENTS**
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d);
and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling
General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the
document. On July 7, 2023, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and
determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the
email addresses stated below:

⊠    Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On July 7, 2023, I served the following persons and/or entities at the last known addresses in this bankruptcy
case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United
States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a
declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐    Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state
method for each person or entity served)**:  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on July 7, 2023, I
served the following persons and/or entities by personal delivery, overnight mail service, or (for those who
consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge
here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later
than 24 hours after the document is filed.

> **JUDGE'S COPY**
> The Honorable Scott C. Clarkson
> United States Bankruptcy Court
> Central District of California
> Ronald Reagan Federal Building and Courthouse
> 411 West Fourth Street, Suite 5130 / Courtroom 5C
> Santa Ana, CA 92701-4593

☐    Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| July 7, 2023 | Caron Burke | /s/ Caron Burke |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

1.      <u>**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**</u>:

Eric Bensamochan on behalf of Interested Party Eric Bensamochan
eric@eblawfirm.us, G63723@notify.cincompass.com

Ronald K Brown on behalf of Creditor SDCO Tustin Executive Center, Inc.
ron@rkbrownlaw.com

Christopher Celentino on behalf of Plaintiff Richard A. Marshack
christopher.celentino@dinsmore.com, caron.burke@dinsmore.com

Christopher Celentino on behalf of Trustee Richard A Marshack (TR)
christopher.celentino@dinsmore.com, caron.burke@dinsmore.com

Shawn M Christianson on behalf of Interested Party Courtesy NEF
cmcintire@buchalter.com, schristianson@buchalter.com

Randall Baldwin Clark on behalf of Interested Party Randall Baldwin Clark
rbc@randallbclark.com

Leslie A Cohen on behalf of Interested Party Courtesy NEF
leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com;clare@lesliecohenlaw.com

Daniel A Edelman on behalf of Creditor Carolyn Beech
dedelman@edcombs.com, courtecl@edcombs.com

Christopher Ghio on behalf of Plaintiff Richard A. Marshack
christopher.ghio@dinsmore.com

Christopher Ghio on behalf of Trustee Richard A Marshack (TR)
christopher.ghio@dinsmore.com

Jeffrey I Golden on behalf of Interested Party Courtesy NEF
jgolden@go2.law,
kadele@ecf.courtdrive.com;cbmeeker@gmail.com;lbracken@wgllp.com;gestrada@wgllp.com;golden.j
effreyi.b117954@notify.bestcase.com

Richard H Golubow on behalf of Creditor Debt Validation Fund II, LLC
rgolubow@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com

Richard H Golubow on behalf of Creditor MC DVI Fund 1, LLC
rgolubow@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com

Richard H Golubow on behalf of Creditor MC DVI Fund 2, LLC
rgolubow@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com

D Edward Hays on behalf of Interested Party Courtesy NEF

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                    **F 9013-.1.PROOF.SERVICE**

ehays@marshackhays.com,
ehays@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza
@ecf.courtdrive.com

D Edward Hays on behalf of Trustee Richard A Marshack (TR)
ehays@marshackhays.com,
ehays@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza
@ecf.courtdrive.com

Alan Craig Hochheiser on behalf of Creditor City Capital NY
ahochheiser@mauricewutscher.com, arodriguez@mauricewutscher.com

Garrick A Hollander on behalf of Creditor Debt Validation Fund II, LLC
ghollander@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com

Garrick A Hollander on behalf of Creditor MC DVI Fund 1, LLC
ghollander@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com

Garrick A Hollander on behalf of Creditor MC DVI Fund 2, LLC
ghollander@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com

Joon M Khang on behalf of Debtor The Litigation Practice Group P.C.
joon@khanglaw.com

Ira David Kharasch on behalf of Interested Party Ad Hoc Consumer Claimants Committee
ikharasch@pszjlaw.com

Ira David Kharasch on behalf of Interested Party Courtesy NEF
ikharasch@pszjlaw.com

Nicholas A Koffroth on behalf of Creditor Committee Committee of Unsecured Creditors
nkoffroth@foxrothschild.com, khoang@foxrothschild.com

David S Kupetz on behalf of Defendant Marich Bein, LLC
David.Kupetz@lockelord.com, mylene.ruiz@lockelord.com

David S Kupetz on behalf of Interested Party Courtesy NEF
David.Kupetz@lockelord.com, mylene.ruiz@lockelord.com

Christopher J Langley on behalf of Interested Party Courtesy NEF
chris@slclawoffice.com,
omar@slclawoffice.com;langleycr75251@notify.bestcase.com;ecf123@casedriver.com

Daniel A Lev on behalf of Interested Party Courtesy NEF
daniel.lev@gmlaw.com, cheryl.caldwell@gmlaw.com;dlev@ecf.courtdrive.com

Michael D Lieberman on behalf of Creditor Phillip A. Greenblatt, PLLC
mlieberman@lipsonneilson.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                    F 9013-.1.PROOF.SERVICE

Yosina M Lissebeck on behalf of Trustee Richard A Marshack (TR)
Yosina.Lissebeck@Dinsmore.com, caron.burke@dinsmore.com

Richard A Marshack (TR)
pkraus@marshackhays.com, rmarshack@iq7technology.com;ecf.alert+Marshack@titlexi.com

Laila Masud on behalf of Interested Party Courtesy NEF
lmasud@marshackhays.com, lmasud@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com

Laila Masud on behalf of Interested Party Richard A. Marshack
lmasud@marshackhays.com, lmasud@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com

Laila Masud on behalf of Plaintiff Richard Marshack
lmasud@marshackhays.com, lmasud@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com

Laila Masud on behalf of Trustee Richard A Marshack (TR)
lmasud@marshackhays.com, lmasud@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com

Kenneth Misken on behalf of U.S. Trustee United States Trustee (SA)
Kenneth.M.Misken@usdoj.gov

Byron Z Moldo on behalf of Interested Party Byron Moldo
bmoldo@ecjlaw.com, amatsuoka@ecjlaw.com,dperez@ecjlaw.com

Alan I Nahmias on behalf of Interested Party Courtesy NEF
anahmias@mbn.law, jdale@mbnlawyers.com

Victoria Newmark on behalf of Interested Party Courtesy NEF
vnewmark@pszjlaw.com

Queenie K Ng on behalf of U.S. Trustee United States Trustee (SA)
queenie.k.ng@usdoj.gov

Teri T Pham on behalf of Attorney Teri Pham
tpham@epglawyers.com, ttpassistant@epglawyers.com

Douglas A Plazak on behalf of Defendant Greyson Law Center PC
dplazak@rhlaw.com

Ronald N Richards on behalf of Defendant Consumer Legal Group, PC
ron@ronaldrichards.com, 7206828420@filings.docketbird.com

Ronald N Richards on behalf of Interested Party Courtesy NEF
ron@ronaldrichards.com, 7206828420@filings.docketbird.com

Gregory M Salvato on behalf of Interested Party Courtesy NEF

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012          **F 9013-.1.PROOF.SERVICE**

gsalvato@salvatoboufadel.com,
calendar@salvatolawoffices.com;jboufadel@salvatoboufadel.com;gsalvato@ecf.inforuptcy.com

Olivia Scott on behalf of Creditor Azzure Capital LLC
olivia.scott3@bclplaw.com

Olivia Scott on behalf of Creditor Hi Bar Capital LLC
olivia.scott3@bclplaw.com

Jonathan Serrano on behalf of Plaintiff Richard A. Marshack
jonathan.serrano@dinsmore.com

Jonathan Serrano on behalf of Trustee Richard A Marshack (TR)
jonathan.serrano@dinsmore.com

Paul R Shankman on behalf of Attorney Paul R. Shankman
PShankman@fortislaw.com, info@fortislaw.com

Paul R Shankman on behalf of Creditor United Partnerships, LLC
PShankman@fortislaw.com, info@fortislaw.com

Leslie Skorheim on behalf of U.S. Trustee United States Trustee (SA)
leslie.skorheim@usdoj.gov

Andrew Still on behalf of Interested Party Courtesy NEF
astill@swlaw.com, kcollins@swlaw.com

United States Trustee (SA)
ustpregion16.sa.ecf@usdoj.gov

Sharon Z. Weiss on behalf of Creditor Azzure Capital LLC
sharon.weiss@bclplaw.com, raul.morales@bclplaw.com,REC_KM_ECF_SMO@bclplaw.com

Sharon Z. Weiss on behalf of Creditor Hi Bar Capital LLC
sharon.weiss@bclplaw.com, raul.morales@bclplaw.com,REC_KM_ECF_SMO@bclplaw.com

Johnny White on behalf of Interested Party Courtesy NEF
JWhite@wrslawyers.com, jlee@wrslawyers.com;eweiman@wrslawyers.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012    **F 9013-.1.PROOF.SERVICE**