# Exhibit "13"

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| GLORIA EATON, individually and on behalf of all others similarly situated, | ) ) ) ) | FILE NO.: _____ NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. § 1441(a) |
| Plaintiff, | ) ) | |
| v. | ) ) ) | *(DIVERSITY JURISDICTION AND FEDERAL QUESTION JURISDICTION)* |
| THE LITIGATION PRACTICE GROUP, P.C., | ) ) ) | (Removed from the State Court of the State of Georgia, County of |
| Defendant. | ) ) ) | DeKalb, Case No. 22A00366) |
| | ) | JURY TRIAL DEMANDED |

## NOTICE OF REMOVAL

**PLEASE TAKE NOTICE** that Defendant The Litigation Practice Group, P.C. (hereinafter "LPG") hereby removes the above-captioned action to this Court from the State Court of the State of Georgia, County of DeKalb (Case No. 22A00366) (hereinafter "State Action"). As set forth herein, LPG has complied with the statutory requirements for removal under 28 U.S.C. §§ 1441 and 1446, and this Court has both federal question jurisdiction and diversity jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1332(a)(1), respectively.

**Exhibit "13"**

# I. PROCEDURAL REQUIREMENTS

1. The State Action was commenced by Plaintiff filing a lawsuit in Georgia State Court, DeKalb County, on January 28, 2022. A copy of Plaintiff's Complaint is attached at Exhibit A. A copy of all other process, pleadings, and items in possession of Defendant from the State Action is attached at Exhibit B, as required by 28 U.S.C. § 1446(a).

2. This Notice is timely, as it is filed within one year of the State Action's commencement on January 28, 2022, and within 30 days of receipt of the Plaintiff's Complaint, which was on February 3, 2022. See 28 U.S.C. § 1446(b)(1).

3. The State Action is properly removed to the United States District Court for the Northern District of Georgia, Atlanta Division, as that is the "district and division embracing the place where [the State Action] is pending." See 28 U.S.C. § 1441(a); see also 28 U.S.C. § 90(a)(2) (listing DeKalb County as within the Atlanta Division of the Northern District of Georgia).

4. LPG will promptly file a copy of this Notice of Removal with the clerk of the Georgia State Court, DeKalb County, and will serve a copy on the other parties to the State Action, as required by 28 U.S.C. § 1446(d).

## II.  BACKGROUND

5.  The Plaintiff, Gloria Eaton, proposes a class action for alleged violations of the Georgia Debt Adjustment Act ("GDAA"), O.C.G.A. § 18-5-1 *et seq* and The Credit Repair Organizations Act ("CROA"), 15 U.S.C. § 1679. [See Complaint.]

6.  The Plaintiff proposes that the class action as to the GDAA claim is on behalf of all Georgia residents who have done business with LPG from July 1, 2003 to the present. [Complaint, ¶ 1.]

7.  The Plaintiff proposes that the class action as to the CROA claim is on behalf of all Georgia residents who have done business with LGP within the five years preceding the filing of this Complaint. [Complaint, ¶ 1.]

8.  The Plaintiff alleges that LPG is a credit repair organization as that term is defined under 15 U.S.C. § 1679a(1). [Complaint, ¶ 12.]

9.  The Plaintiff contends that LPG received payments from Plaintiff for the purpose of improving her credit record, credit history, or credit rating. [Complaint, ¶ 13.]

10. Plaintiff contends that LPG violated CROA by paying itself moneys it received from Plaintiff for services not yet rendered, and, therefore, Plaintiff and the

class members are entitled to recover damages pursuant to 15 U.S.C. § 1679g(a)(1). [Complaint, ¶¶ 16, 20.]

11.  The Plaintiff contends that LPG services debtors in the management of their debts and contracts with debtors for a fee to affect the adjustment, compromise, or discharge of any account, note or other indebtedness of the debtor. Accordingly, the Plaintiff contends that LPG is a debt adjuster as that term is defined under O.C.G.A. § 18-5-1 asserting [Complaint, ¶¶ 22-23.]

12. The Plaintiff alleges that LPG accepted from the Plaintiff a charge, fee, or contribution that was 100% retained by LPG as a fee. Plaintiff contends that the retention of all payments by Plaintiff and the class violated the GDAA because the sums were in an amount in excess of the statutorily allowed 7.5% permitted by the GDAA to be retained from funds paid by Plaintiff. [Complaint, ¶ 33.]

13. Plaintiff contends that due to LPG's violations of the GDAA, LPG is liable to the Plaintiff and the class members pursuant to O.C.G.A. § 18-5-4(b)(2) in an amount equal to the total of all fees, charges, and/or contributions paid by Plaintiff and the class members to LPG. [Complaint, ¶ 34.]

**Exhibit "13"**

## III. GROUNDS FOR REMOVAL

### A. Federal Question Jurisdiction Under 28 U.S.C. § 1441(a)

14. "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." [See 28 U.S.C. § 1331.]

15. "Under 28 U.S.C. § 1331, a federal court may exercise jurisdiction over a case if it presents a question of federal law. Federal-question jurisdiction may be based on a civil action alleging a violation of the Constitution, or asserting a federal cause of action established by a congressionally created expressed or implied private remedy for violations of a federal statute." Citimortgage, Inc. v. Dhinoja, 705 F.Supp.2d 1378, 1381 (N.D. Ga. 2010) (internal citations and quotation marks omitted).

16. "The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint. The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987).

17. The Plaintiff asserts that LPG violated CROA, and requests relief pursuant to 15 U.S.C. § 1679g(a)(1). [See Complaint, ¶¶ 16, 20.] Accordingly, the Plaintiff's Complaint presents a federal question on its face, giving this Court jurisdiction over this action pursuant to 28 U.S.C. § 1331.

### B. There Is Complete Diversity Between the Parties

18. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity between the parties and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

19. The Plaintiff presumably is now, and was at the commencement of this action, a citizen of the State of Georgia. [Complaint, ¶ 2.]

20. Defendant LPG is now, and was when the State Action was filed, a citizen of the State of California. [Complaint, ¶¶ 3-4.]

21. Defendant LPG is a P.C. incorporated in the State of California with its principle place of business in California.

22. There are no other parties to the lawsuit.

### C. The Amount In Controversy Exceeds $75,000.00

23. The Plaintiff claims that as a result of LPG's alleged violation of the GDAA, she and the members of the proposed class are entitled to recover actual damages and punitive damages pursuant to 15 U.S.C. § 1679g(a)(1) and 15

U.S.C. § 1679g(a)(2)(A) respectively, as well as attorney's fees and costs pursuant to 15 U.S.C. 1679g(a)(3). [Complaint, ¶ 20.]

24. The Plaintiff claims that as a result of LPG's alleged violation of CROA, she and the members of the proposed class are entitled to recover in an amount "equal to the total of all fees, charges, and/or contributions paid by Plaintiff and the Class Members to the Defendant, plus statutory damages in the amount of $5,000.00 per Class Member." [Complaint, ¶ 34.]

25. The serious allegations made by the Plaintiff in the Complaint, as well as Plaintiff's class action proposals, makes clear that this exceeds the $75,000.00 amount in controversy requirement.

## IV. RESERVATION OF RIGHTS

26. LPG denies the allegations contained in Plaintiff's Complaint, and files this Notice of Removal without waiving any defenses, objections, exceptions, or obligations that may exist in LPG's favor.

Respectfully submitted this 4th day of March, 2022.

HUFF, POWELL & BAILEY

*/s/ Devon G. Zawko*

_____

DANIEL J. HUFF
Ga. Bar No. 374860

**Exhibit "13"**

DAVID D. MACKENZIE
Ga. Bar No. 796972
DEVON G. ZAWKO
Ga. Bar No. 212490

999 Peachtree Street, NE        *Counsel for Defendant The Litigation*
Suite 950                       *Practice Group, P.C.*
Atlanta, Georgia 30309
(404) 892-4022
(404) 892-4033 (Fax)
dhuff@huffpowellbailey.com
dmackenzie@huffpowellbailey.com
dzawko@huffpowellbailey.com

## CERTIFICATE OF SERVICE

This is to certify that I have this day presented the within and foregoing **NOTICE OF REMOVAL** in Times New Roman 14-point font to the Clerk of Court by filing and uploading to the CM/ECF system and by depositing same in the United States Mail with sufficient postage thereon to assure delivery to the following attorneys of record:

| | |
|---|---|
| James W. Hurt, Jr. | James M. Feagle |
| HURT STOLZ, P.C. | Chelsea R. Feagle |
| 1551 Jennings Mill Road | SKAAR & FEAGLE, LLP |
| Suite 3100-B | 2374 Main Street, Suite B |
| Watkinsville, Georgia 30677 | Tucker, Georgia 30084 |
| jhurt@hurtstolz.com | jfeagle@skaarandfeagle.com |

This 4th day of March, 2022.

HUFF, POWELL & BAILEY

*/s/ Devon G. Zawko*

_____
DANIEL J. HUFF
Ga. Bar No. 374860
DAVID D. MACKENZIE
Ga. Bar No. 796972
DEVON G. ZAWKO
Ga. Bar No. 212490

999 Peachtree Street, NE      *Counsel for Defendant The Litigation*
Suite 950      *Practice Group, P.C.*
Atlanta, Georgia 30309
(404) 892-4022
(404) 892-4033 (Fax)

**Exhibit "13"**

# **EXHIBIT A**

STATE COURT COMPLAINT

IN THE STATE COURT OF DEKALB COUNTY
STATE OF GEORGIA

| | | |
|---|---|---|
| GLORIA EATON, individually and on Behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NUMBER: 22A00366 |
| v. | ) ) ) | |
| THE LITIGATION PRACTICE GROUP, PC. | ) ) ) | |
| Defendant. | ) ) | **CLASS ACTION** Jury Trial Demanded |

## CLASS ACTION COMPLAINT FOR DAMAGES

COMES NOW, Gloria Eaton ("Plaintiff"), individually and on behalf of all others similarly situated, and files this Class Action Complaint for Damages against The Litigation Practice Group PC ("Defendant") for violations of the Credit Repair Organizations Act, 15 U.S.C. § 1679 *et seq.* and the Georgia Debt Adjustment Act, OCGA §§ 18-5-1 *et seq.*, showing this Honorable Court the following:

### NATURE OF THE ACTION

1.

This is a proposed class action brought on behalf of all Georgia residents who have done business with Defendant from July 1, 2003 to the present wherein Defendant engaged in debt adjusting as defined by Georgia's Debt Adjustment Act, OCGA §§ 18-5-1 *et seq.*, (hereinafter the "Act" or "GDAA") for said Georgia residents. Further, Plaintiff proposes a class action for violations of the Credit Repair Organizations Act, 15 U.S.C. § 1679 et seq. (hereinafter the "Act" or "CROA") for all Georgia residents who have done business with Defendant within the five years preceding the filing of this Complaint through the current date.

STATE COURT OF
DEKALB COUNTY, GA.
1/28/2022 3:31 PM
E-FILED
BY: Monica Gay

**Exhibit "13"**

## **PARTIES, JURISDICTION AND VENUE**

2.

Plaintiff is domiciled in the state of Georgia and DeKalb County.

3.

Defendant The Litigation Practice Group PC is a California professional corporation, not registered with the Georgia Secretary of State, with its principal place of business at 17542 17th Street, Suite 100, Tustin, California 92780.

4.

Defendant names as its registered agent for service of process Daniel S. March, at 17542 17th Street, Suite 100, Tustin, California 92780.

5.

Defendant is subject to the jurisdiction of this Court pursuant to the Georgia Long Arm Statute, OCGA § 9-10-91, as Defendant transacts business within the state, has committed a tortious act or omission within this state, and/or has committed a tortious injury in this state caused by an act or omission outside this state.

6.

Defendant regularly solicits and transacts business in Georgia, engages in other persistent courses of conduct in Georgia, or derives substantial revenue from services rendered in this state.

7.

Defendant has not complied with the annual registration requirements of OCGA § 18-5-3.1 and is therefore not authorized to offer debt adjustment services in this state, but has nevertheless engaged within this state in said debt adjustment services.

**Exhibit "13"**

8.

Venue is proper in this Court pursuant to OCGA § 9-10-93.

9.

Defendant is subject to the jurisdiction and venue of this Court.

## THE CREDIT REPAIR ORGANIZATIONS ACT, 15 U.S.C. § 1679

10.

The Credit Repair Organizations Act ("CROA") states as its purpose:

> (1) to ensure that prospective buyers of the services of credit repair organizations are provided with the information necessary to make an informed decision regarding the purchase of such services; and
>
> (2) to protect the public from unfair or deceptive advertising and business practices by credit repair organizations.

15 U.S.C. § 1679 (b).

11.

Plaintiff and the Class Members are consumers within the definition of CROA. 15

U.S.C. § 1679a (1).

12.

Defendant is a "credit repair organization" within the definition of CROA, as it is:

> [a] person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform (or represent that such person can or will sell, provide, or perform) any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of—
>
> > (i) improving any consumer's credit record, credit history, or credit rating; or
> >
> > (ii) providing advice or assistance to any consumer with regard to any activity or service described in clause (i)[.]

Page 3 of 17

**Exhibit "13"**

15 U.S.C. § 1679a (3) (A).

13.

Defendant received payments from Plaintiff and the Class Members for the express purpose of improving her credit record, credit history or credit rating and engaged in the above-described activities, which if successful, would necessarily result in credit repair, since a settled debt would reduce the consumer's debt-to-credit ratio (utilization), increase the consumer's credit score, and would appear on a credit report as paid, partly paid, or settled.

14.

Under CROA, "No person may ... make or use any untrue or misleading representation of the services of the credit repair organization." 15 U.S.C. § 1679b (a) (3).

15.

CROA states that "[n]o credit repair organization may charge or receive any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform for any consumer before such service is fully performed." 15 U.S.C. § 1679b (b).

16.

Defendant paid itself moneys it received from Plaintiff and the Class Members for its planned services to Plaintiff and the Class Members, before those services were fully performed.

17.

Defendant repeatedly made untrue and misleading representations to Plaintiff and the Class Members in violation of CROA by informing Plaintiff and the Class Members that Defendant would repair their credit, but instead Defendant lined its pockets with

**Exhibit "13"**

Plaintiff's and the Class Members' money while doing either little or nothing to truly assist

Plaintiff and the Class Members or improve their credit.

18.

CROA states that:

(a) Liability established

Any person who fails to comply with any provision of this subchapter with respect to any other person shall be liable to such person in an amount equal to the sum of the amounts determined under each of the following paragraphs:

(1) Actual damages

The greater of-

(A) the amount of any actual damage sustained by such person as a result of such failure; or

(B) any amount paid by the person to the credit repair organization.

(2) Punitive damages

(A) Individual actions

In the case of any action by an individual, such additional amount as the court may allow.

(B) Class actions

In the case of a class action, the sum of-

(i) the aggregate of the amount which the court may allow for each named plaintiff; and

(ii) the aggregate of the amount which the court may allow for each other class member, without regard to any minimum individual recovery.

(3) Attorneys' fees

**Exhibit "13"**

In the case of any successful action to enforce any liability under paragraph (1) or (2), the costs of the action, together with reasonable attorneys' fees.

(b) Factors to be considered in awarding punitive damages

In determining the amount of any liability of any credit repair organization under subsection (a)(2), the court shall consider, among other relevant factors-

(1) the frequency and persistence of noncompliance by the credit repair organization;

(2) the nature of the noncompliance;

(3) the extent to which such noncompliance was intentional; and

(4) in the case of any class action, the number of consumers adversely affected.

15 U.S.C. § 1679g.

### 19.

Plaintiff and the Class Members have suffered actual damages under CROA as a result of the Defendant's actions.

### 20.

Plaintiff and the Class Members are entitled to recover their actual damages [15 U.S.C. § 1679g (a) (1)] as well as punitive damages [15 U.S.C. § 1679g (a) (2) (A)] and attorneys' fees and costs [15 U.S.C. 1679g (a) (3)] from Defendant under CROA.

### **GEORGIA'S DEBT ADJUSTMENT ACT, OCGA §§ 18-5-1 *et seq.***

### 21.

Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if fully restated herein and further states as follows:

**Exhibit "13"**

22.

The GDAA at OCGA § 18-5-1, defines debt adjusting as:

> [D]oing business in debt adjustments, budget counseling, debt management, or debt pooling service or holding oneself out, by words of similar import, as providing services to debtors in the management of their debts and contracting with a debtor for a fee to:
>
> (A) Effect the adjustment, compromise, or discharge of any account, note or other indebtedness of the debtor;
>
> (B) Receive from the debtor and disburse to his or her creditors any money or other thing of value.

23.

Defendant fits squarely within the definition of a "debt adjuster" as Defendant "provid[es] services to debtors in the management of their debts and contracting with a debtor for a fee to effect the adjustment, compromise, or discharge of any account, note or other indebtedness of the debtor."

24.

From its initial creation by the Georgia General Assembly in 1956 until its amendment of July 1, 2003, the GDAA stated that "[i]t shall be unlawful for any person to engage in the business of debt adjusting" and that **"[a]ny person who engages in the business of debt adjusting ... shall be guilty of a misdemeanor."** OCGA § 18-5-2 (1956) (emphasis added).

25.

Thus, the original GDAA undeniably closed and locked the door for persons to offer debt adjusting for a fee in this state, unless incidental to the practice of law in this state. Defendant's agreement clearly states that it is a California law firm and is not licensed to practice law or provide legal advice in the State of Georgia.

**Exhibit "13"**

26.

In 2003, the General Assembly substantially amended the GDAA. In the amendment's enabling clause, the legislature stated that the purpose is:

> To limit the maximum charge that may be imposed for the provision of debt adjustment services; to provide for definitions; to provide for exemptions from those provisions related to debt adjustment; to require persons engaged in debt adjusting to obtain an annual audit of all accounts and to maintain a certain amount and type of insurance coverage; to provide for the disbursement of a debtor's funds within 30 days of receipt; to require persons engaged in debt adjusting to maintain trust accounts for debtors' funds; to provide for civil and criminal violations and penalties; to provide for investigation and enforcement; to provide for related matters; to provide for an effective date; to repeal conflicting laws; and for other purposes.

2003 Ga. Laws No. 103 p. 392 (House Bill No. 385).

27.

The amended GDAA thus removed the out-and-out prohibition on debt adjusting for a fee and cracked the door to allow debt adjusters to operate in Georgia as long as the Act's mandates are followed.

28.

The amended GDAA commands that the debt adjuster "*shall* maintain a separate trust account for the receipt of any and all funds from debtors and the disbursement of such funds on behalf of debtors" (OCGA § 18-5-3.2(b)); "*shall* disburse to the appropriate creditors all funds received from the debtor, less any fees authorized by [the Act], within thirty days of receipt" (OCGA § 18-5-3.2(a)); "*shall* obtain annual audits from independent CPAs on all accounts in which Georgia debtors' funds have been deposited" (OCGA § 18-5-3.1(a)(1)); "*shall* obtain a specified level of insurance coverage for employee

**Exhibit "13"**

dishonesty depositor's forgery and computer fraud" (OCGA § 18-5-3.1(a)(2)); and "*shall*

*not*:

> accept from a debtor who resides in this state, either directly
> or indirectly, any charge, fee, contribution, or combination
> thereof in an amount in excess of 7.5 percent of the amount
> paid monthly by such debtor to such person for distribution
> to creditors of such debtor . . .

OCGA § 18-5-2 (emphasis added).

29.

The amendment further provided for a civil remedy for a person's violation of the

GDAA. OCGA § 18-5-4 states:

> Any person who engages in debt adjusting in violation of the
> provisions of [OCGA § 18-5-2 or § 18-5-3.2(a)] shall further be
> liable to the debtor in an amount equal to the total of all fees,
> charges, or contributions paid by the debtor plus $5,000.00.
> Such debtor shall have the right to bring a cause of action
> directly against such person for violation of the provisions of
> this chapter.

## VIOLATIONS OF GEORGIA'S DEBT ADJUSTMENT ACT

30.

Plaintiff incorporates each of the foregoing paragraphs as if fully restated herein.

31.

Defendant is engaged in the business of providing "Debt Adjusting" services as that

term is defined in OCGA § 18-5-1.

32.

Defendant provided Debt Adjusting services to Plaintiff and the Class Members

while they resided in the State of Georgia.

**Exhibit "13"**

33.

Defendant contracted for and accepted from Plaintiff and the Class Members a
charge, fee, contribution, or combination thereof of a monthly fee in which no part of it
went to creditors and thus was 100% retained by Defendant as a fee. The Defendant's
retention of all payments by Plaintiff and the Class Members violated the GDAA because
said sums were all an amount in excess of the statutorily allowed 7.5% permitted by the
GDAA to be retained from funds paid by plaintiffs for the distribution to Plaintiff's and
the Class Members' creditors.

34.

Due to said violations of the GDAA, pursuant to OCGA § 18-5-4 (b) (2), the
Defendant is liable to Plaintiff and the Class Members in an amount equal to the total of
all fees, charges, and/or contributions paid by Plaintiff and the Class Members to the
Defendant, plus statutory damages in the amount of $5,000.00 per Class Member.

**CLASS ACTION ALLEGATIONS**

35.

Plaintiff seeks to have this Court certify the following classes:

> **Class 1:** All persons who, while residing in the state of
> Georgia, received debt settlement or debt adjusting services
> from Defendant on or after July 1, 2003 and from whom
> Defendant accepted, directly or indirectly, any charge, fee,
> contribution, or combination thereof, in violation of the
> Georgia Debt Adjustment Act.

> **Class 2:** All persons who, while residing in the state of
> Georgia, received credit repair services from Defendant on or
> after five (5) years from the filing of this Complaint through
> the current time.

**Exhibit "13"**

36.

On information and belief, the named Plaintiff and the Plaintiff Class Members were solicited by Defendant through a standard marketing scheme which the Defendant offered Debt Adjustment services and credit repair services. Such marketing and services are typical of those experienced by the Plaintiff and the proposed Plaintiff Class Members.

37.

On information and belief, the contract entered into between Defendant and Plaintiff is a standard contract which is substantially the same as the contract Defendant entered into with the Plaintiff Class Members.

38.

On information and belief, the fees collected by the Defendant from the proposed Plaintiff Class Members are uniformly assessed to every customer of Defendant and can readily be determined from a ministerial review of the records of the Defendant.

39.

The names and addresses of the Plaintiff Class Members can readily be determined from a ministerial review of the records of the Defendant and through the account statements of the Defendant pertaining to collection of such charges, fees, contributions, or combinations thereof.

40.

The membership of the class is numerous and joinder of individual plaintiffs is impractical. On information and belief, the Defendant has provided Debt Adjustment services to hundreds of residents of the State of Georgia since July 1, 2003. Further, the Defendant has provided credit repair services to hundreds of residents of the State of Georgia for the period of the past five years through the current time.

**Exhibit "13"**

41.

There are questions of law and fact common to all members of the Plaintiff class, and these common questions of law and fact predominate over any individual issues. The principle questions pertinent to the class as a whole include:

a) Whether the Defendant's standard means of doing business in debt adjustments, debt settlement, debt reduction, budget counseling, and debt management constitutes "Debt Adjustment" under OCGA § 18-5-1;

b) Whether Defendant is a "credit repair organization" within the definition of CROA;

c) Whether Defendant violated OCGA § 18-5-2 by accepting excessive fees from Plaintiff Class Members for the provision of Debt Adjustment services;

d) Whether Defendant violated CROA by "mak[ing] or us[ing] any untrue or misleading representation of the services of the credit repair organization" 15 U.S.C. § 1679b (a) (3);

e) Whether Defendant violated CROA by "charg[ing] or receiv[ing] any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform for any consumer before such service is fully performed" 15 U.S.C. § 1679b (b);

f) The liability of the Defendant for violations of the Georgia Debt Adjustment Act;

g) The liability of the Defendant for violations of CROA;

h) The appropriate measure of damages and the appropriate remedies;

i) The availability of statutory damages pursuant to OCGA § 18-5-4; and

j) Defenses raised by the Defendant.

**Exhibit "13"**

42.

The claims of the named Plaintiff are typical of the claims of the Plaintiff Class Members, which all arise from the same operative facts and are based on the same legal theories, and Plaintiff's claims will thus adequately represent those of the Plaintiff Class Members.

43.

The named Plaintiff will fairly and adequately protect the interests of the Plaintiff Class Members. Plaintiffs have retained counsel with experience in class action litigation, and they are not aware of any interest that might cause them not to vigorously pursue this case.

44.

A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder is impracticable. The expense and burden of individual litigation make it virtually impossible for the members of the class to proceed individually, and it is therefore most efficient to resolve all claims based on the Defendant's conduct in one forum.

45.

The Plaintiff is aware of no difficulties that will be encountered in the management of this litigation that would render the action unmanageable. This is not a class action that will require an analysis of Defendant's conduct as to individual Class Members.

46.

Prosecution of separate actions by individual Plaintiff Class Members would be inefficient and create adjudications that would not be dispositive of the interests of the other members not parties to the adjudication.

**Exhibit "13"**

47.

Plaintiff is not aware of any other pending actions against this Defendant for these same causes of action.

48.

Without a class action mechanism, members of the Plaintiff Class would be substantially impaired or impeded in their ability to protect their interests. The value of claims of the individual Class Members would be in an amount that makes prosecution outside of the class action uneconomical.

49.

A final judgment on the merits of the named Plaintiff's claims would be fully dispositive of the claims and interests of those similarly situated who are not specifically named as a plaintiff in this action.

**WHEREFORE**, Plaintiff being entitled to a trial by jury and judgment against Defendant, prays for the following:

a) That summons be directed to Defendant and served upon it as provided by law;

b) That this Court set this matter down for a class certification discovery scheduling conference following the commencement of this action;

c) That Plaintiff be designated class representative for the Classes as defined herein;

d) That Plaintiff's counsel be designated class counsel for the Classes as defined herein;

e) That a Class be certified for all persons who, while residing in the State of Georgia, received debt settlement or debt adjusting services from Defendant on

**Exhibit "13"**

or after July 1, 2003 and from whom Defendants accepted, directly or indirectly, any charge, fee, contribution, or combination thereof;

f) That a Class be certified for all persons who, while residing in the State of Georgia, received credit repair services from Defendant on or after five years from the date of the filing of this Complaint through the current time;

g) That the Court hold a hearing as soon as practicable for the determination of class certification for the Classes;

h) For each violation of OCGA §§ 18-5-1 *et seq.* by Defendant, that Plaintiff and the members of the Class be awarded an amount equal to all charges, fees, contributions, or combinations therefore paid to Defendant plus $5,000.00 as allowed under OCGA §§ 18-5-1 *et seq.*;

i) For each violation of CROA by Defendant, that Plaintiff and the members of the Class be awarded their actual damages;

j) For its violations of CROA, that this Court award punitive damages to the Class pursuant to the guidelines as outlined in 15 U.S.C. § 1679g (b);

k) That this Court award attorneys' fees and costs against Defendant pursuant to 15 U.S.C. § 1679g (a) (3);

l) That Defendant be required to pay all monies herein referred to in subparagraph h), i), and j) into a common fund for the benefit of the Classes;

m) That the Court conduct a "fairness hearing," after due and proper notice to all members of the Classes, and make such award of attorneys' fees and expenses as the Court deems appropriate from the common fund (as above referred to) and/or from Defendant;

**Exhibit "13"**

n) That Plaintiff, individually and as class representative for the Classes, have a trial by jury;

o) That Plaintiff and the members of the Classes be awarded interest on any award granted, with such interest accruing from the time of the filing of this Complaint until the time final Judgment in this case is paid;

p) That the named Plaintiff be awarded an incentive award from Defendant for the benefit the named Plaintiff has conferred on the Class members through her commitment of time and expense in conducting this lawsuit; and

q) That the named Plaintiff, individually and as class representative of all others similarly situated, have such other equitable and further relief as this Court deems proper.

Respectfully submitted, this 28th day of January, 2022.

**HURT STOLZ, P.C.**

/s/ James W. Hurt, Jr.
By: James W. Hurt, Jr.
Georgia Bar No.: 380104

1551 Jennings Mill Road
Suite 3100-B
Watkinsville, Georgia 30677
(706) 395-2750
Facsimile: 706-996-2576
jhurt@hurtstolz.com

**SKAAR & FEAGLE, LLP**

s/ James M. Feagle
By: James M. Feagle
Georgia Bar No.: 256916
Chelsea R. Feagle
Georgia Bar No.: 110863
Kris Skaar
Justin T. Holcombe
Cliff R. Dorsen

2374 Main Street, Suite B

**Exhibit "13"**

STATE COURT OF
DEKALB COUNTY, GA.
1/28/2022 3:31 PM
E-FILED
BY: Monica Gay

Tucker, Georgia 30084
(404) 373-1970
Facsimile: 404-601-1855
jfeagle@skaarandfeagle.com

**ATTORNEYS FOR PLAINTIFF
AND THE PUTATIVE CLASS**

**Exhibit "13"**

# **EXHIBIT B**

OTHER STATE COURT DOCUMENTS IN POSSESSION OF DEFENDANT

**General Civil and Domestic Relations Case Filing Information Form**

☐ **Superior or** ☒ **State Court of** _____ **County**

DeKalb

| For Clerk Use Only | |
|---|---|
| **Date Filed** _____ | **Case Number** _____ |
| 1/28/2022 | 22A00366 |
| **MM-DD-YYYY** | |

**Plaintiff(s)**  Eaton, Gloria

**Defendant(s)**  The Litigation Practice Group, PC

| Last | First | Middle I. | Suffix | Prefix | Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|---|---|---|---|---|
| Last | First | Middle I. | Suffix | Prefix | Last | First | Middle I. | Suffix | Prefix |
| Last | First | Middle I. | Suffix | Prefix | Last | First | Middle I. | Suffix | Prefix |
| Last | First | Middle I. | Suffix | Prefix | Last | First | Middle I. | Suffix | Prefix |

**Plaintiff's Attorney** _____  Hurt, James W. Jr.    **Bar Number** _____ 380104    **Self-Represented** ☐

### Check One Case Type in One Box

**General Civil Cases**

- ☐ **Automobile Tort**
- ☐ **Civil Appeal**
- ☐ **Contract**
- ☐ **Garnishment**
- ☐ **General Tort**
- ☐ **Habeas Corpus**
- ☐ **Injunction/Mandamus/Other Writ**
- ☐ **Landlord/Tenant**
- ☐ **Medical Malpractice Tort**
- ☐ **Product Liability Tort**
- ☐ **Real Property**
- ☐ **Restraining Petition**
- ☒ **Other General Civil**

**Domestic Relations Cases**

- ☐ **Adoption**
- ☐ **Dissolution/Divorce/Separate Maintenance**
- ☐ **Family Violence Petition**
- ☐ **Paternity/Legitimation**
- ☐ **Support – IV-D**
- ☐ **Support – Private (non-IV-D)**
- ☐ **Other Domestic Relations**

**Post-Judgment – Check One Case Type**

- ☐ **Contempt**
  - ☐ **Non-payment of child support, medical support, or alimony**
- ☐ **Modification**
- ☐ **Other/Administrative**

☐ Check if the action is related to another action(s) pending or previously pending in this court involving some or all of the same parties, subject matter, or factual issues. If so, provide a case number for each.

_____    _____
**Case Number**                    **Case Number**

☒ I hereby certify that the documents in this filing, including attachments and exhibits, satisfy the requirements for redaction of personal or confidential information in O.C.G.A. § 9-11-7.1.

☐ Is an interpreter needed in this case? If so, provide the language(s) required. _____
**Language(s) Required**

☐ Do you or your client need any disability accommodations? If so, please describe the accommodation request.
_____
_____

Version 1.1.18

**Exhibit "13"**

IN THE STATE COURT OF DEKALB COUNTY
STATE OF GEORGIA

| | |
|---|---|
| GLORIA EATON, individually and on )<br>Behalf of all others similarly situated, )<br>    )<br>    Plaintiff, )<br>    )<br>v.    )<br>    )<br>THE LITIGATION PRACTICE GROUP, )<br>PC. )<br>    )<br>    Defendant. )<br>    )<br> | CIVIL ACTION NUMBER: 22A00366<br><br>_____ |

## **SUMMONS**

TO THE ABOVE NAMED DEFENDANT:

You are hereby summoned and required to file with the Clerk of said Court and

serve upon the Plaintiff's attorney, whose name and address is:

JAMES W. HURT, JR.
HURT STOLZ, P.C.
1551 JENNINGS MILL ROAD, UNIT 3100B
WATKINSVILLE, GEORGIA 30677

an answer to the Complaint which is herewith served upon you, within thirty (30) days

after service of this summons upon you, exclusive of the day of service. If you fail to do so,

judgment by default will be taken against you for the relief demanded in the complaint.

This _____ day of _____, 2022.
1/28/2022

_____
Clerk of State Court
        /s/ Monica Gay
By:_____
Deputy Clerk

**Exhibit "13"**

IN THE STATE COURT OF DEKALB COUNTY
STATE OF GEORGIA

GLORIA EATON, individually and on )
Behalf of all others similarly situated, )
                                        )
        Plaintiff,                      )
                                        )        CIVIL ACTION NUMBER: 22A00366
v.                                      )
                                        )
THE LITIGATION PRACTICE GROUP, )
PC.          .                          )
                                        )        **CLASS ACTION**
        Defendant.                      )        Jury Trial Demanded
                                        )

## CLASS ACTION COMPLAINT FOR DAMAGES

COMES NOW, Gloria Eaton ("Plaintiff"), individually and on behalf of all others similarly situated, and files this Class Action Complaint for Damages against The Litigation Practice Group PC ("Defendant") for violations of the Credit Repair Organizations Act, 15 U.S.C. § 1679 *et seq.* and the Georgia Debt Adjustment Act, OCGA §§ 18-5-1 *et seq.*, showing this Honorable Court the following:

## NATURE OF THE ACTION

1.

This is a proposed class action brought on behalf of all Georgia residents who have done business with Defendant from July 1, 2003 to the present wherein Defendant engaged in debt adjusting as defined by Georgia's Debt Adjustment Act, OCGA §§ 18-5-1 *et seq.*, (hereinafter the "Act" or "GDAA") for said Georgia residents. Further, Plaintiff proposes a class action for violations of the Credit Repair Organizations Act, 15 U.S.C. § 1679 et seq. (hereinafter the "Act" or "CROA") for all Georgia residents who have done business with Defendant within the five years preceding the filing of this Complaint through the current date.

Page 1 of 17

STATE COURT OF
DEKALB COUNTY, GA.
1/28/2022 3:31 PM
E-FILED
BY: Monica Gay

**Exhibit "13"**

## **PARTIES, JURISDICTION AND VENUE**

2.

Plaintiff is domiciled in the state of Georgia and DeKalb County.

3.

Defendant The Litigation Practice Group PC is a California professional corporation, not registered with the Georgia Secretary of State, with its principal place of business at 17542 17th Street, Suite 100, Tustin, California 92780.

4.

Defendant names as its registered agent for service of process Daniel S. March, at 17542 17th Street, Suite 100, Tustin, California 92780.

5.

Defendant is subject to the jurisdiction of this Court pursuant to the Georgia Long Arm Statute, OCGA § 9-10-91, as Defendant transacts business within the state, has committed a tortious act or omission within this state, and/or has committed a tortious injury in this state caused by an act or omission outside this state.

6.

Defendant regularly solicits and transacts business in Georgia, engages in other persistent courses of conduct in Georgia, or derives substantial revenue from services rendered in this state.

7.

Defendant has not complied with the annual registration requirements of OCGA § 18-5-3.1 and is therefore not authorized to offer debt adjustment services in this state, but has nevertheless engaged within this state in said debt adjustment services.

**Exhibit "13"**

8.

Venue is proper in this Court pursuant to OCGA § 9-10-93.

9.

Defendant is subject to the jurisdiction and venue of this Court.

## THE CREDIT REPAIR ORGANIZATIONS ACT, 15 U.S.C. § 1679

10.

The Credit Repair Organizations Act ("CROA") states as its purpose:

> (1) to ensure that prospective buyers of the services of credit repair organizations are provided with the information necessary to make an informed decision regarding the purchase of such services; and

> (2) to protect the public from unfair or deceptive advertising and business practices by credit repair organizations.

15 U.S.C. § 1679 (b).

11.

Plaintiff and the Class Members are consumers within the definition of CROA. 15

U.S.C. § 1679a (1).

12.

Defendant is a "credit repair organization" within the definition of CROA, as it is:

> [a] person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform (or represent that such person can or will sell, provide, or perform) any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of—

> > (i) improving any consumer's credit record, credit history, or credit rating; or

> > (ii) providing advice or assistance to any consumer with regard to any activity or service described in clause (i)[.]

Page 3 of 17

**Exhibit "13"**

15 U.S.C. § 1679a (3) (A).

13.

Defendant received payments from Plaintiff and the Class Members for the express purpose of improving her credit record, credit history or credit rating and engaged in the above-described activities, which if successful, would necessarily result in credit repair, since a settled debt would reduce the consumer's debt-to-credit ratio (utilization), increase the consumer's credit score, and would appear on a credit report as paid, partly paid, or settled.

14.

Under CROA, "No person may ... make or use any untrue or misleading representation of the services of the credit repair organization." 15 U.S.C. § 1679b (a) (3).

15.

CROA states that "[n]o credit repair organization may charge or receive any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform for any consumer before such service is fully performed." 15 U.S.C. § 1679b (b).

16.

Defendant paid itself moneys it received from Plaintiff and the Class Members for its planned services to Plaintiff and the Class Members, before those services were fully performed.

17.

Defendant repeatedly made untrue and misleading representations to Plaintiff and the Class Members in violation of CROA by informing Plaintiff and the Class Members that Defendant would repair their credit, but instead Defendant lined its pockets with

Page 4 of 17

**Exhibit "13"**

Plaintiff's and the Class Members' money while doing either little or nothing to truly assist

Plaintiff and the Class Members or improve their credit.

18.

CROA states that:

(a) Liability established

Any person who fails to comply with any provision of this
subchapter with respect to any other person shall be liable to
such person in an amount equal to the sum of the amounts
determined under each of the following paragraphs:

(1) Actual damages

The greater of-

(A) the amount of any actual damage sustained
by such person as a result of such failure; or

(B) any amount paid by the person to the credit
repair organization.

(2) Punitive damages

(A) Individual actions

In the case of any action by an individual, such
additional amount as the court may allow.

(B) Class actions

In the case of a class action, the sum of-

(i) the aggregate of the amount which the
court may allow for each named plaintiff;
and

(ii) the aggregate of the amount which
the court may allow for each other class
member, without regard to any
minimum individual recovery.

(3) Attorneys' fees

**Exhibit "13"**

In the case of any successful action to enforce any liability under paragraph (1) or (2), the costs of the action, together with reasonable attorneys' fees.

(b) Factors to be considered in awarding punitive damages

In determining the amount of any liability of any credit repair organization under subsection (a)(2), the court shall consider, among other relevant factors-

(1) the frequency and persistence of noncompliance by the credit repair organization;

(2) the nature of the noncompliance;

(3) the extent to which such noncompliance was intentional; and

(4) in the case of any class action, the number of consumers adversely affected.

15 U.S.C. § 1679g.

### 19.

Plaintiff and the Class Members have suffered actual damages under CROA as a result of the Defendant's actions.

### 20.

Plaintiff and the Class Members are entitled to recover their actual damages [15 U.S.C. § 1679g (a) (1)] as well as punitive damages [15 U.S.C. § 1679g (a) (2) (A)] and attorneys' fees and costs [15 U.S.C. 1679g (a) (3)] from Defendant under CROA.

### **GEORGIA'S DEBT ADJUSTMENT ACT, OCGA §§ 18-5-1 *et seq.***

### 21.

Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if fully restated herein and further states as follows:

**Exhibit "13"**

22.

The GDAA at OCGA § 18-5-1, defines debt adjusting as:

> [D]oing business in debt adjustments, budget counseling, debt management, or debt pooling service or holding oneself out, by words of similar import, as providing services to debtors in the management of their debts and contracting with a debtor for a fee to:
>
> (A) Effect the adjustment, compromise, or discharge of any account, note or other indebtedness of the debtor;
>
> (B) Receive from the debtor and disburse to his or her creditors any money or other thing of value.

23.

Defendant fits squarely within the definition of a "debt adjuster" as Defendant "provid[es] services to debtors in the management of their debts and contracting with a debtor for a fee to effect the adjustment, compromise, or discharge of any account, note or other indebtedness of the debtor."

24.

From its initial creation by the Georgia General Assembly in 1956 until its amendment of July 1, 2003, the GDAA stated that "[i]t shall be unlawful for any person to engage in the business of debt adjusting" and that **"[a]ny person who engages in the business of debt adjusting ... shall be guilty of a misdemeanor."** OCGA § 18-5-2 (1956) (emphasis added).

25.

Thus, the original GDAA undeniably closed and locked the door for persons to offer debt adjusting for a fee in this state, unless incidental to the practice of law in this state. Defendant's agreement clearly states that it is a California law firm and is not licensed to practice law or provide legal advice in the State of Georgia.

**Exhibit "13"**

26.

In 2003, the General Assembly substantially amended the GDAA. In the amendment's enabling clause, the legislature stated that the purpose is:

> To limit the maximum charge that may be imposed for the provision of debt adjustment services; to provide for definitions; to provide for exemptions from those provisions related to debt adjustment; to require persons engaged in debt adjusting to obtain an annual audit of all accounts and to maintain a certain amount and type of insurance coverage; to provide for the disbursement of a debtor's funds within 30 days of receipt; to require persons engaged in debt adjusting to maintain trust accounts for debtors' funds; to provide for civil and criminal violations and penalties; to provide for investigation and enforcement; to provide for related matters; to provide for an effective date; to repeal conflicting laws; and for other purposes.

2003 Ga. Laws No. 103 p. 392 (House Bill No. 385).

27.

The amended GDAA thus removed the out-and-out prohibition on debt adjusting for a fee and cracked the door to allow debt adjusters to operate in Georgia as long as the Act's mandates are followed.

28.

The amended GDAA commands that the debt adjuster "*shall* maintain a separate trust account for the receipt of any and all funds from debtors and the disbursement of such funds on behalf of debtors" (OCGA § 18-5-3.2(b)); "*shall* disburse to the appropriate creditors all funds received from the debtor, less any fees authorized by [the Act], within thirty days of receipt" (OCGA § 18-5-3.2(a)); "*shall* obtain annual audits from independent CPAs on all accounts in which Georgia debtors' funds have been deposited" (OCGA § 18-5-3.1(a)(1)); "*shall* obtain a specified level of insurance coverage for employee

**Exhibit "13"**

dishonesty depositor's forgery and computer fraud" (OCGA § 18-5-3.1(a)(2)); and "*shall*

*not*:

> accept from a debtor who resides in this state, either directly
> or indirectly, any charge, fee, contribution, or combination
> thereof in an amount in excess of 7.5 percent of the amount
> paid monthly by such debtor to such person for distribution
> to creditors of such debtor . . .

OCGA § 18-5-2 (emphasis added).

29.

The amendment further provided for a civil remedy for a person's violation of the

GDAA. OCGA § 18-5-4 states:

> Any person who engages in debt adjusting in violation of the
> provisions of [OCGA § 18-5-2 or § 18-5-3.2(a)] shall further be
> liable to the debtor in an amount equal to the total of all fees,
> charges, or contributions paid by the debtor plus $5,000.00.
> Such debtor shall have the right to bring a cause of action
> directly against such person for violation of the provisions of
> this chapter.

## VIOLATIONS OF GEORGIA'S DEBT ADJUSTMENT ACT

30.

Plaintiff incorporates each of the foregoing paragraphs as if fully restated herein.

31.

Defendant is engaged in the business of providing "Debt Adjusting" services as that

term is defined in OCGA § 18-5-1.

32.

Defendant provided Debt Adjusting services to Plaintiff and the Class Members

while they resided in the State of Georgia.

**Exhibit "13"**

33.

Defendant contracted for and accepted from Plaintiff and the Class Members a charge, fee, contribution, or combination thereof of a monthly fee in which no part of it went to creditors and thus was 100% retained by Defendant as a fee. The Defendant's retention of all payments by Plaintiff and the Class Members violated the GDAA because said sums were all an amount in excess of the statutorily allowed 7.5% permitted by the GDAA to be retained from funds paid by plaintiffs for the distribution to Plaintiff's and the Class Members' creditors.

34.

Due to said violations of the GDAA, pursuant to OCGA § 18-5-4 (b) (2), the Defendant is liable to Plaintiff and the Class Members in an amount equal to the total of all fees, charges, and/or contributions paid by Plaintiff and the Class Members to the Defendant, plus statutory damages in the amount of $5,000.00 per Class Member.

**CLASS ACTION ALLEGATIONS**

35.

Plaintiff seeks to have this Court certify the following classes:

> **Class 1:** All persons who, while residing in the state of Georgia, received debt settlement or debt adjusting services from Defendant on or after July 1, 2003 and from whom Defendant accepted, directly or indirectly, any charge, fee, contribution, or combination thereof, in violation of the Georgia Debt Adjustment Act.

> **Class 2:** All persons who, while residing in the state of Georgia, received credit repair services from Defendant on or after five (5) years from the filing of this Complaint through the current time.

**Exhibit "13"**

36.

On information and belief, the named Plaintiff and the Plaintiff Class Members were solicited by Defendant through a standard marketing scheme which the Defendant offered Debt Adjustment services and credit repair services. Such marketing and services are typical of those experienced by the Plaintiff and the proposed Plaintiff Class Members.

37.

On information and belief, the contract entered into between Defendant and Plaintiff is a standard contract which is substantially the same as the contract Defendant entered into with the Plaintiff Class Members.

38.

On information and belief, the fees collected by the Defendant from the proposed Plaintiff Class Members are uniformly assessed to every customer of Defendant and can readily be determined from a ministerial review of the records of the Defendant.

39.

The names and addresses of the Plaintiff Class Members can readily be determined from a ministerial review of the records of the Defendant and through the account statements of the Defendant pertaining to collection of such charges, fees, contributions, or combinations thereof.

40.

The membership of the class is numerous and joinder of individual plaintiffs is impractical. On information and belief, the Defendant has provided Debt Adjustment services to hundreds of residents of the State of Georgia since July 1, 2003. Further, the Defendant has provided credit repair services to hundreds of residents of the State of Georgia for the period of the past five years through the current time.

**Exhibit "13"**

41.

There are questions of law and fact common to all members of the Plaintiff class, and these common questions of law and fact predominate over any individual issues. The principle questions pertinent to the class as a whole include:

a) Whether the Defendant's standard means of doing business in debt adjustments, debt settlement, debt reduction, budget counseling, and debt management constitutes "Debt Adjustment" under OCGA § 18-5-1;

b) Whether Defendant is a "credit repair organization" within the definition of CROA;

c) Whether Defendant violated OCGA § 18-5-2 by accepting excessive fees from Plaintiff Class Members for the provision of Debt Adjustment services;

d) Whether Defendant violated CROA by "mak[ing] or us[ing] any untrue or misleading representation of the services of the credit repair organization" 15 U.S.C. § 1679b (a) (3);

e) Whether Defendant violated CROA by "charg[ing] or receiv[ing] any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform for any consumer before such service is fully performed" 15 U.S.C. § 1679b (b);

f) The liability of the Defendant for violations of the Georgia Debt Adjustment Act;

g) The liability of the Defendant for violations of CROA;

h) The appropriate measure of damages and the appropriate remedies;

i) The availability of statutory damages pursuant to OCGA § 18-5-4; and

j) Defenses raised by the Defendant.

**Exhibit "13"**

42.

The claims of the named Plaintiff are typical of the claims of the Plaintiff Class Members, which all arise from the same operative facts and are based on the same legal theories, and Plaintiff's claims will thus adequately represent those of the Plaintiff Class Members.

43.

The named Plaintiff will fairly and adequately protect the interests of the Plaintiff Class Members. Plaintiffs have retained counsel with experience in class action litigation, and they are not aware of any interest that might cause them not to vigorously pursue this case.

44.

A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder is impracticable. The expense and burden of individual litigation make it virtually impossible for the members of the class to proceed individually, and it is therefore most efficient to resolve all claims based on the Defendant's conduct in one forum.

45.

The Plaintiff is aware of no difficulties that will be encountered in the management of this litigation that would render the action unmanageable. This is not a class action that will require an analysis of Defendant's conduct as to individual Class Members.

46.

Prosecution of separate actions by individual Plaintiff Class Members would be inefficient and create adjudications that would not be dispositive of the interests of the other members not parties to the adjudication.

**Exhibit "13"**

47.

Plaintiff is not aware of any other pending actions against this Defendant for these same causes of action.

48.

Without a class action mechanism, members of the Plaintiff Class would be substantially impaired or impeded in their ability to protect their interests. The value of claims of the individual Class Members would be in an amount that makes prosecution outside of the class action uneconomical.

49.

A final judgment on the merits of the named Plaintiff's claims would be fully dispositive of the claims and interests of those similarly situated who are not specifically named as a plaintiff in this action.

**WHEREFORE**, Plaintiff being entitled to a trial by jury and judgment against Defendant, prays for the following:

a) That summons be directed to Defendant and served upon it as provided by law;

b) That this Court set this matter down for a class certification discovery scheduling conference following the commencement of this action;

c) That Plaintiff be designated class representative for the Classes as defined herein;

d) That Plaintiff's counsel be designated class counsel for the Classes as defined herein;

e) That a Class be certified for all persons who, while residing in the State of Georgia, received debt settlement or debt adjusting services from Defendant on

**Exhibit "13"**

or after July 1, 2003 and from whom Defendants accepted, directly or indirectly, any charge, fee, contribution, or combination thereof;

f) That a Class be certified for all persons who, while residing in the State of Georgia, received credit repair services from Defendant on or after five years from the date of the filing of this Complaint through the current time;

g) That the Court hold a hearing as soon as practicable for the determination of class certification for the Classes;

h) For each violation of OCGA §§ 18-5-1 *et seq.* by Defendant, that Plaintiff and the members of the Class be awarded an amount equal to all charges, fees, contributions, or combinations therefore paid to Defendant plus $5,000.00 as allowed under OCGA §§ 18-5-1 *et seq.*;

i) For each violation of CROA by Defendant, that Plaintiff and the members of the Class be awarded their actual damages;

j) For its violations of CROA, that this Court award punitive damages to the Class pursuant to the guidelines as outlined in 15 U.S.C. § 1679g (b);

k) That this Court award attorneys' fees and costs against Defendant pursuant to 15 U.S.C. § 1679g (a) (3);

l) That Defendant be required to pay all monies herein referred to in subparagraph h), i), and j) into a common fund for the benefit of the Classes;

m) That the Court conduct a "fairness hearing," after due and proper notice to all members of the Classes, and make such award of attorneys' fees and expenses as the Court deems appropriate from the common fund (as above referred to) and/or from Defendant;

**Exhibit "13"**

n) That Plaintiff, individually and as class representative for the Classes, have a trial by jury;

o) That Plaintiff and the members of the Classes be awarded interest on any award granted, with such interest accruing from the time of the filing of this Complaint until the time final Judgment in this case is paid;

p) That the named Plaintiff be awarded an incentive award from Defendant for the benefit the named Plaintiff has conferred on the Class members through her commitment of time and expense in conducting this lawsuit; and

q) That the named Plaintiff, individually and as class representative of all others similarly situated, have such other equitable and further relief as this Court deems proper.

Respectfully submitted, this 28th day of January, 2022.

**HURT STOLZ, P.C.**

/s/ James W. Hurt, Jr.
By: James W. Hurt, Jr.
Georgia Bar No.: 380104

1551 Jennings Mill Road
Suite 3100-B
Watkinsville, Georgia 30677
(706) 395-2750
Facsimile: 706-996-2576
jhurt@hurtstolz.com

**SKAAR & FEAGLE, LLP**

s/ James M. Feagle
By: James M. Feagle
Georgia Bar No.: 256916
Chelsea R. Feagle
Georgia Bar No.: 110863
Kris Skaar
Justin T. Holcombe
Cliff R. Dorsen

2374 Main Street, Suite B

Page 16 of 17

**Exhibit "13"**

STATE COURT OF
DEKALB COUNTY, GA.
1/28/2022 3:31 PM
E-FILED
BY: Monica Gay

Tucker, Georgia 30084
(404) 373-1970
Facsimile: 404-601-1855
jfeagle@skaarandfeagle.com

**ATTORNEYS FOR PLAINTIFF
AND THE PUTATIVE CLASS**

**Exhibit "13"**

IN THE STATE COURT OF DEKALB COUNTY
STATE OF GEORGIA

**GLORIA EATON, INDIVIDUALLY AND ON BEHALF OF**     Case No.:     **22A00366**
**ALL OTHERS SIMILARLY SITUATED**

                 Plaintiff/Petitioner

vs.

**THE LITIGATION PRACTICE GROUP, PC**         AFFIDAVIT OF SERVICE OF

           Defendant/Respondent     **Summons; Class Action Complaint for Damages**

Received by **Bill Bonner**, on the **2nd day of February, 2022 at 3:49 PM** to be served upon **The Litigation Practice Group PC c/o Daniel S March, Registered Agent** at **17542 17th Street, Suite 100, Tustin, Orange County, CA 92780**. On the **3rd day of February, 2022 at 11:40 AM**, I, Bill Bonner, SERVED The Litigation Practice Group PC c/o Daniel S March, Registered Agent at 17542 17th Street, Suite 100, Tustin, Orange County, CA 92780 in the manner indicated below:

**CORPORATE SERVICE**, by personally delivering **1** copy(ies) of the above listed documents to the named Corporation, by serving **Isabel Rodriguez, Receptionist, who Checked with her Superiors who Then Authorized Her To Accept** , on behalf of said Corporation.
THE DESCRIPTION OF THE PERSON WITH WHOM THE COPY OF THIS PROCESS WAS LEFT IS AS FOLLOWS:
**I delivered the documents to Isabel Rodriguez, Receptionist, who Checked with her Superiors who Then Authorized Her To Accept who indicated they were the person authorized to accept with identity confirmed by subject stating their name. The individual accepted service with direct delivery. The individual appeared to be a black-haired Hispanic female contact 25-35 years of age, 5'6"-5'8" tall and weighing 140-160 lbs. At the address I observed a call/mail box listing subject.**

Service Fee Total: **$65.00**

Per U.S. Code § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

NAME:     _Bill Bonner_     2958       2-3-22

     Bill Bonner                Server ID #            Date

Notary Public: Subscribed and sworn before me on this _____ day of _____ in the year of 20\_\_
Personally known to me _____ or _____ identified by the following document:

_____
Notary Public (Legal Signature)

REF: **REF-9518602**

**Exhibit "13"**



**Exhibit "13"**

JS44 (Rev. 10/2020 NDGA) CIVIL COVER SHEET

The JS44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form is required for the use of the Clerk of Court for the purpose of initiating the civil docket record. (SEE INSTRUCTIONS ATTACHED)

## I. (a) PLAINTIFF(S)

Gloria Eaton, individually and on behalf of all others similarly situated

## DEFENDANT(S)

The Litigation Practice Group, P.C.

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** ___DeKalb County___
(EXCEPT IN U.S. PLAINTIFF CASES)

**COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT** ___Orange County___
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c) ATTORNEYS** (FIRM NAME, ADDRESS, TELEPHONE NUMBER, AND E-MAIL ADDRESS)

James Hurt, Jr., HURT STOLZ, P.C., 1551 Jennings Mill Rd, Suite 3100-BWatkinsville, Georgia 30677, P: (706) 395-2750, jhurt@hurtstolz.com

**ATTORNEYS** (IF KNOWN)

Daniel Huff, David Mackenzie, Devon Zawko, 999 Peachtree Street, Suite 950, Atlanta, Georgia 30309, P: (404) 892-4022, dhuff@huffpowellbailey.com; dzawko@huffpowellbailey.com; dmackenzie@huffpowellbailey.com

## II. BASIS OF JURISDICTION
(PLACE AN "X" IN ONE BOX ONLY)

- [ ] 1 U.S. GOVERNMENT PLAINTIFF
- [ ] 2 U.S. GOVERNMENT DEFENDANT
- [x] 3 FEDERAL QUESTION (U.S. GOVERNMENT NOT A PARTY)
- [x] 4 DIVERSITY (INDICATE CITIZENSHIP OF PARTIES IN ITEM III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES
(PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(FOR DIVERSITY CASES ONLY)

| | PLF | DEF | | PLF | DEF | |
|---|---|---|---|---|---|---|
| | [x] 1 | [ ] 1 | CITIZEN OF THIS STATE | [ ] 4 | [ ] 4 | INCORPORATED OR PRINCIPAL PLACE OF BUSINESS IN THIS STATE |
| | [ ] 2 | [ ] 2 | CITIZEN OF ANOTHER STATE | [ ] 5 | [x] 5 | INCORPORATED AND PRINCIPAL PLACE OF BUSINESS IN ANOTHER STATE |
| | [ ] 3 | [ ] 3 | CITIZEN OR SUBJECT OF A FOREIGN COUNTRY | [ ] 6 | [ ] 6 | FOREIGN NATION |

## IV. ORIGIN (PLACE AN "X "IN ONE BOX ONLY)

- [ ] 1 ORIGINAL PROCEEDING
- [x] 2 REMOVED FROM STATE COURT
- [ ] 3 REMANDED FROM APPELLATE COURT
- [ ] 4 REINSTATED OR REOPENED
- [ ] 5 TRANSFERRED FROM ANOTHER DISTRICT (Specify District)
- [ ] 6 MULTIDISTRICT LITIGATION - TRANSFER
- [ ] 7 APPEAL TO DISTRICT JUDGE FROM MAGISTRATE JUDGE JUDGMENT
- [ ] 8 MULTIDISTRICT LITIGATION - DIRECT FILE

## V. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE - DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

Plaintiff proposes a class action for alleged violations of the Georgia Debt Adjustment Act, O.C.G.A. § 18-5-1 et seq and The Credit Repair Organizations Act, 15 U.S.C. § 1679. This Court has both federal question jurisdiction and diversity jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1332(a)(1), respectively.

**(IF COMPLEX, CHECK REASON BELOW)**

- [ ] 1. Unusually large number of parties.
- [ ] 2. Unusually large number of claims or defenses.
- [x] 3. Factual issues are exceptionally complex
- [ ] 4. Greater than normal volume of evidence.
- [x] 5. Extended discovery period is needed.
- [ ] 6. Problems locating or preserving evidence
- [ ] 7. Pending parallel investigations or actions by government.
- [ ] 8. Multiple use of experts.
- [ ] 9. Need for discovery outside United States boundaries.
- [ ] 10. Existence of highly technical issues and proof.

**CONTINUED ON REVERSE**

FOR OFFICE USE ONLY

RECEIPT # _____ AMOUNT $ _____ APPLYING IFP _____ MAG JUDGE (IFP) _____

JUDGE _____ MAG JUDGE _____ (Referral) NATURE OF SUIT _____ CAUSE OF ACTION _____

**Exhibit "13"**

## VI. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

**CONTRACT - "0" MONTHS DISCOVERY TRACK**
- [ ] 150 RECOVERY OF OVERPAYMENT & ENFORCEMENT OF JUDGMENT
- [ ] 152 RECOVERY OF DEFAULTED STUDENT LOANS (Excl. Veterans)
- [ ] 153 RECOVERY OF OVERPAYMENT OF VETERAN'S BENEFITS

**CONTRACT - "4" MONTHS DISCOVERY TRACK**
- [ ] 110 INSURANCE
- [ ] 120 MARINE
- [ ] 130 MILLER ACT
- [ ] 140 NEGOTIABLE INSTRUMENT
- [ ] 151 MEDICARE ACT
- [ ] 160 STOCKHOLDERS' SUITS
- [ ] 190 OTHER CONTRACT
- [ ] 195 CONTRACT PRODUCT LIABILITY
- [ ] 196 FRANCHISE

**REAL PROPERTY - "4" MONTHS DISCOVERY TRACK**
- [ ] 210 LAND CONDEMNATION
- [ ] 220 FORECLOSURE
- [ ] 230 RENT LEASE & EJECTMENT
- [ ] 240 TORTS TO LAND
- [ ] 245 TORT PRODUCT LIABILITY
- [ ] 290 ALL OTHER REAL PROPERTY

**TORTS - PERSONAL INJURY - "4" MONTHS DISCOVERY TRACK**
- [ ] 310 AIRPLANE
- [ ] 315 AIRPLANE PRODUCT LIABILITY
- [ ] 320 ASSAULT, LIBEL & SLANDER
- [ ] 330 FEDERAL EMPLOYERS' LIABILITY
- [ ] 340 MARINE
- [ ] 345 MARINE PRODUCT LIABILITY
- [ ] 350 MOTOR VEHICLE
- [ ] 355 MOTOR VEHICLE PRODUCT LIABILITY
- [ ] 360 OTHER PERSONAL INJURY
- [ ] 362 PERSONAL INJURY - MEDICAL MALPRACTICE
- [ ] 365 PERSONAL INJURY - PRODUCT LIABILITY
- [ ] 367 PERSONAL INJURY - HEALTH CARE/ PHARMACEUTICAL PRODUCT LIABILITY
- [ ] 368 ASBESTOS PERSONAL INJURY PRODUCT LIABILITY

**TORTS - PERSONAL PROPERTY - "4" MONTHS DISCOVERY TRACK**
- [ ] 370 OTHER FRAUD
- [ ] 371 TRUTH IN LENDING
- [ ] 380 OTHER PERSONAL PROPERTY DAMAGE
- [ ] 385 PROPERTY DAMAGE PRODUCT LIABILITY

**BANKRUPTCY - "0" MONTHS DISCOVERY TRACK**
- [ ] 422 APPEAL 28 USC 158
- [ ] 423 WITHDRAWAL 28 USC 157

**CIVIL RIGHTS - "4" MONTHS DISCOVERY TRACK**
- [ ] 440 OTHER CIVIL RIGHTS
- [ ] 441 VOTING
- [ ] 442 EMPLOYMENT
- [ ] 443 HOUSING/ ACCOMMODATIONS
- [ ] 445 AMERICANS with DISABILITIES - Employment
- [ ] 446 AMERICANS with DISABILITIES - Other
- [ ] 448 EDUCATION

**IMMIGRATION - "0" MONTHS DISCOVERY TRACK**
- [ ] 462 NATURALIZATION APPLICATION
- [ ] 465 OTHER IMMIGRATION ACTIONS

**PRISONER PETITIONS - "0" MONTHS DISCOVERY TRACK**
- [ ] 463 HABEAS CORPUS- Alien Detainee
- [ ] 510 MOTIONS TO VACATE SENTENCE
- [ ] 530 HABEAS CORPUS
- [ ] 535 HABEAS CORPUS DEATH PENALTY
- [ ] 540 MANDAMUS & OTHER
- [ ] 550 CIVIL RIGHTS - Filed Pro se
- [ ] 555 PRISON CONDITION(S) - Filed Pro se
- [ ] 560 CIVIL DETAINEE: CONDITIONS OF CONFINEMENT

**PRISONER PETITIONS - "4" MONTHS DISCOVERY TRACK**
- [ ] 550 CIVIL RIGHTS - Filed by Counsel
- [ ] 555 PRISON CONDITION(S) - Filed by Counsel

**FORFEITURE/PENALTY - "4" MONTHS DISCOVERY TRACK**
- [ ] 625 DRUG RELATED SEIZURE OF PROPERTY 21 USC 881
- [ ] 690 OTHER

**LABOR - "4" MONTHS DISCOVERY TRACK**
- [ ] 710 FAIR LABOR STANDARDS ACT
- [ ] 720 LABOR/MGMT RELATIONS
- [ ] 740 RAILWAY LABOR ACT
- [ ] 751 FAMILY and MEDICAL LEAVE ACT
- [ ] 790 OTHER LABOR LITIGATION
- [ ] 791 EMPL. RET INC SECURITY ACT

**PROPERTY RIGHTS - "4" MONTHS DISCOVERY TRACK**
- [ ] 820 COPYRIGHTS
- [ ] 840 TRADEMARK
- [ ] 880 DEFEND TRADE SECRETS ACT OF 2016 (DTSA)

**PROPERTY RIGHTS - "8" MONTHS DISCOVERY TRACK**
- [ ] 830 PATENT
- [ ] 835 PATENT-ABBREVIATED NEW DRUG APPLICATIONS (ANDA) - a/k/a Hatch-Waxman cases

**SOCIAL SECURITY - "0" MONTHS DISCOVERY TRACK**
- [ ] 861 HIA (1395ff)
- [ ] 862 BLACK LUNG (923)
- [ ] 863 DIWC (405(g))
- [ ] 863 DIWW (405(g))
- [ ] 864 SSID TITLE XVI
- [ ] 865 RSI (405(g))

**FEDERAL TAX SUITS - "4" MONTHS DISCOVERY TRACK**
- [ ] 870 TAXES (U S Plaintiff or Defendant)
- [ ] 871 IRS - THIRD PARTY 26 USC 7609

**OTHER STATUTES - "4" MONTHS DISCOVERY TRACK**
- [ ] 375 FALSE CLAIMS ACT
- [ ] 376 Qui Tam 31 USC 3729(a)
- [ ] 400 STATE REAPPORTIONMENT
- [ ] 430 BANKS AND BANKING
- [ ] 450 COMMERCE/ICC RATES/ETC
- [ ] 460 DEPORTATION
- [ ] 470 RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS
- [x] 480 CONSUMER CREDIT
- [ ] 485 TELEPHONE CONSUMER PROTECTION ACT
- [ ] 490 CABLE/SATELLITE TV
- [x] 890 OTHER STATUTORY ACTIONS
- [ ] 891 AGRICULTURAL ACTS
- [ ] 893 ENVIRONMENTAL MATTERS
- [ ] 895 FREEDOM OF INFORMATION ACT 899
- [ ] 899 ADMINISTRATIVE PROCEDURES ACT / REVIEW OR APPEAL OF AGENCY DECISION
- [ ] 950 CONSTITUTIONALITY OF STATE STATUTES

**OTHER STATUTES - "8" MONTHS DISCOVERY TRACK**
- [ ] 410 ANTITRUST
- [ ] 850 SECURITIES / COMMODITIES / EXCHANGE

**OTHER STATUTES - "0" MONTHS DISCOVERY TRACK**
- [ ] 896 ARBITRATION (Confirm / Vacate / Order / Modify)

**\* PLEASE NOTE DISCOVERY TRACK FOR EACH CASE TYPE. SEE LOCAL RULE 26.3**

---

## VII. REQUESTED IN COMPLAINT:

- [x] CHECK IF CLASS ACTION UNDER F.R.Civ.P. 23    DEMAND $ _____

JURY DEMAND [x] YES [ ] NO (CHECK YES ONLY IF DEMANDED IN COMPLAINT)

---

## VIII. RELATED/REFILED CASE(S) IF ANY

JUDGE  Hon.Ana Martinez, DeKalb State      DOCKET NO.      22A00366

CIVIL CASES ARE DEEMED RELATED IF THE PENDING CASE INVOLVES: (CHECK APPROPRIATE BOX)
- [ ] 1. PROPERTY INCLUDED IN AN EARLIER NUMBERED PENDING SUIT.
- [ ] 2. SAME ISSUE OF FACT OR ARISES OUT OF THE SAME EVENT OR TRANSACTION INCLUDED IN AN EARLIER NUMBERED PENDING SUIT.
- [ ] 3. VALIDITY OR INFRINGEMENT OF THE SAME PATENT, COPYRIGHT OR TRADEMARK INCLUDED IN AN EARLIER NUMBERED PENDING SUIT.
- [ ] 4. APPEALS ARISING OUT OF THE SAME BANKRUPTCY CASE AND ANY CASE RELATED THERETO WHICH HAVE BEEN DECIDED BY THE SAME BANKRUPTCY JUDGE.
- [ ] 5. REPETITIVE CASES FILED BY PRO SE LITIGANTS.
- [ ] 6. COMPANION OR RELATED CASE TO CASE(S) BEING SIMULTANEOUSLY FILED (INCLUDE ABBREVIATED STYLE OF OTHER CASE(S)):

- [ ] 7. EITHER SAME OR ALL OF THE PARTIES AND ISSUES IN THIS CASE WERE PREVIOUSLY INVOLVED IN CASE NO. _____ , WHICH WAS DISMISSED. This case [ ] IS [ ] IS NOT (check one box) SUBSTANTIALLY THE SAME CASE.

---

*/s/ Devon G. Zawko*                                              March 4, 2022

SIGNATURE OF ATTORNEY OF RECORD                              DATE

**Exhibit "13"**

# Exhibit "14"

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

CAROLYN BEECH,
on behalf of herself and the
class members described below,

               Plaintiff,

   vs.

THE LITIGATION PRACTICE
GROUP, PC,

               Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)

SOUTHERN DISTRICT OF MISSISSIPPI
**FILED**

MAR 17 2022

**ARTHUR JOHNSTON**
BY_____ DEPUTY

1:22cv57H50-RHWR

## COMPLAINT — CLASS ACTION

### NATURE OF THE ACTION

    1.    Plaintiff brings this action for damages pursuant to the Credit Repair Organizations Act ("CROA") under 15 U.S.C. § 1679 et seq.

### JURISDICTION AND VENUE

    2.    This Court has jurisdiction under 15 U.S.C §1679 and 28 U.S.C. §§1331 and 1337. On information and belief, the Court also has jurisdiction under 28 U.S.C. §1332(d), the amount in controversy exceeding $5 million on a classwide basis, there being more than 100 class members, and the parties being of diverse citizenship.

    3.    This Court has personal jurisdiction over Defendant because Defendant solicited business from residents of Mississippi and collected money from residents of Mississippi under contracts that are void pursuant to the CROA.

    4.    Venue in this District is proper because a material portion of the events at issue occurred here.

    5.    Article III is satisfied because Plaintiff and each class member is entitled to void a contract providing for the payment of money to Defendant, or recover money back from Defendant, or both.

1

**Exhibit "14"**

## PARTIES

6     Plaintiff Carolyn Beech is a resident and domiciliary of Carriere, Pearl River County, Mississippi.

7.     Defendant The Litigation Practice Group PC ("LPG") is a California corporation with its principal offices at 17542 East 17th Street, Suite 100, Tustin, CA 92780. Its registered agent is Daniel S. March at that address. Daniel S. March is also its sole officer and director.

8.     LPG is a credit repair organization that offers its clients both legal and non-legal services designed to resolve their debt issues and improve their credit history, including working towards actively settling debts for such consumers.

## FACTS

9.     In late 2021, LPG solicited Plaintiff Carolyn Beech for a "debt forgiveness" program.

10.     Under this program:

      a.     LPG would negotiate settlements of Ms. Beech's delinquent debts, amounting to $12,650.44;

      b.     Ms. Beech would pay $296.95 / month for 24 months.

11.     LPG specifically told Plaintiff Carolyn Beech that its program would repair her credit and improve her credit score.

12.     Ms. Beech signed the following documents via her phone:

      a.     Legal services agreement (Exhibit A);

      b.     Electronic payment authorization (Exhibit B);

      c.     Preauthorized checking and ACH authorization form (Exhibit C).

13.     Each of the documents in Exhibits A-C is a standard form regularly used by Defendant LPG.

14.     To induce her to enter into the agreement, LPG provided Ms. Beech with a document entitled "Smarter Path to Debt Relief Services" (Exhibit D). This document suggested

2

**Exhibit "14"**

that LPG could provide useful services to a consumer if the consumer answered the following
questions in the affirmative:

    a.    "Has your credit score already been negatively impacted?"

    b.    "My credit report was damaged and needs to be worked on by a
        knowledgeable lawyer."

15.    A consumer reading the material would understand from it that LPG could improve
one's credit score and repair credit damage.

16.    In addition, the services offered by Defendant LPG, of settling debts for less than
the amounts due, would necessarily result in credit repair, in that delinquent debts would be reported
as settled, and the consumer's credit utilization (amount of credit used compared to amount of
credit available, a key measure of creditworthiness) would be reduced.

17.    Exhibit D is a standard form regularly used by LPG.

18.    Exhibits A-D were the only documents Ms. Beech received from LPG.

19.    After making three payments Ms. Beech ceased doing so after she was served with
summonses and complaints on two of the debts that LPG had undertaken to negotiate for her.

## COUNT I -- CREDIT REPAIR ORGANIZATIONS ACT

20.    Plaintiff incorporates paragraphs 1-19.

21.    The CROA was enacted "(1)to ensure that prospective buyers of the services of
credit repair organizations are provided with the information necessary to make an informed
decision regarding the purchase of such services; and (2)to protect the public from unfair or
deceptive advertising and business practices by credit repair organizations." 15 U.S.C. §1679(b).

22.    Plaintiff is a "consumer" as defined by 15 U.S.C. §1679a(1).

23.    Defendant LPG is a "credit repair organization" as defined by 15 U.S.C. §1679a(3),
in that it is a "person who uses any instrumentality of interstate commerce or the mails to sell,
provide, or perform any service, in return for the payment of money or other valuable consideration,
for the express or implied purpose of — (i) improving a consumer's credit, credit history, or credit

3

rating, or (ii) providing advice or assistance to any consumer with regard to any activity or service described in clause (i)."

## Payment Before Services Fully Performed

24.     15 U.S.C. §1679b(b) provides that "[n]o credit repair organization may charge or receive any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform for any consumer before such service is fully performed."

25.     Defendant LPG violated §1679b(b) by charging and receiving money for services it agreed to perform before such services were fully performed.

26.     It is the standard policy and practice of Defendant LPG to charge a monthly sum before services are performed.

27.     Defendant LPG's practice of charging a monthly sum before services are performed is inherently in violation of the CROA.

28.     This prohibition was included in the CROA because of repetitive instances in which credit repair organizations obtained payments toward credit repair services, the consumers discontinued such services (often when the creditors with whom debts were to be negotiated filed lawsuits), and the credit repair organizations obtained money in excess of any benefit to the consumer. The practice was considered inherently unfair and deceptive.

## Failure to Make Disclosures

29.     The CROA provides that a credit repair organization must provide consumers with certain written disclosures in its contracts.

30.     These disclosures are intended to provide consumers with information they need to avoid unnecessary use of expensive credit repair organizations.

31.     15 U.S.C. §1679c(a) requires provision of a written statement informing the consumer of their rights under the Fair Credit Reporting Act and the CROA.

32.     15 U.S.C. §1679c(b) provides that "the written statement required under this section

4

**Exhibit "14"**

shall be provided as a document which is separate from any written contract or other agreement between the credit repair organization and the consumer or any other written material provided to the consumer."

33.     Defendant LPG violated 15 U.S.C. §§ 1679c(a)-(b) through its failure to provide the written disclosures required.

34.     Defendant LPG never provided such disclosures, nor did it provide a separate document containing such disclosures.

35.     On information and belief, it is the standard policy and practice of Defendant LPG to not provide the required disclosures.

### Failure to Provide Cancellation Rights

36.     The CROA, pursuant to 15 U.S.C. §1679d(4), requires credit repair organization to include, in the contract between them and a consumer, "a conspicuous statement in bold face type, in immediate proximity to the space reserved for the consumer's signature on the contract, which reads as follows: 'You may cancel this contract without penalty or obligation at any time before midnight of the 3rd business day after the date on which you signed the contract. See the attached notice of cancellation form for an explanation of this right.'"

37.     Under 15 U.S.C. §1679e, a credit repair organization must provide a consumer a separate notice of a consumer's cancellation right.

38.     The only disclosure of cancellation rights is a statement in the last two sentences of the six sentences on the fourth page of Exhibit A that "You, the client, may cancel this Agreement at any time by submitting three days' written notice of cancellation by mail, email or fax, and shall not be responsible for any payments due after the date of cancellation.  A payment due within three days of the date of written cancellation shall be processed and shall not be refunded."

39.     The statement is not that required by the CROA, and is not bold or conspicuous. There is no separate notice of right to cancel.

40.     It is the standard practice of Defendant LPG to present cancellation rights in the

**Exhibit "14"**

manner described above.

41. Defendant LPG violated 15 U.S.C. §§1679d(4) and 1679e through its failure to provide the disclosure required by the CROA both in the contract between the parties and in a separate form.

42. The CROA requires a notice of cancellation rights because consumers would often contract for expensive and unnecessary credit repair services that they would, upon reflection, decide were expensive and unnecessary, only to find themselves contractually obligated.

43. The CROA further dictates that any contract found not to be in compliance with the CROA "shall be treated as void" and "may not be enforced by any Federal or State court or any other person." 15 U.S.C. §1679f(c).

44. The contracts of Plaintiff and the members of the class described below are void.

45. The CROA provides for damages in 15 U.S.C. §1679g:

(a)   Liability established

Any person who fails to comply with any provision of this subchapter with respect to any other person shall be liable to such person in an amount equal to the sum of the amounts determined under each of the following paragraphs:

    (1)   Actual damages

        The greater of—

            (A)   the amount of any actual damage sustained by such person as a result of such failure; or

            (B)   any amount paid by the person to the credit repair organization.

    (2)   Punitive damages

            (A)   Individual actions

                In the case of any action by an individual, such additional amount as the court may allow.

            (B)   Class actions

                In the case of a class action, the sum of—

6

**Exhibit "14"**

(i)     the aggregate of the amount which the court may allow for each named plaintiff; and

(ii)    the aggregate of the amount which the court may allow for each other class member, without regard to any minimum individual recovery.

(3)    Attorneys' fees

In the case of any successful action to enforce any liability under paragraph (1) or (2), the costs of the action, together with reasonable attorneys' fees.

(b)    Factors to be considered in awarding punitive damages

In determining the amount of any liability of any credit repair organization under subsection (a)(2), the court shall consider, among other relevant factors—

(1)    the frequency and persistence of noncompliance by the credit repair organization;

(2)    the nature of the noncompliance;

(3)    the extent to which such noncompliance was intentional; and

(4)    in the case of any class action, the number of consumers adversely affected.

## CLASS ALLEGATIONS

46.    Plaintiff brings this claim on behalf of 3 classes, pursuant to Fed.R.Civ.P. 23(a) and 23(b)(3).

47.    Class A consists of all persons who, on or after a date five years prior to the filing of this action, entered into contracts with Defendant LPG, which contracts were not cancelled within three business days, that provide for monthly payments before services are fully performed.

48.    Class B consists of all persons who, on or after a date five years prior to the filing of this action, entered into contracts with Defendant LPG, which contracts were not cancelled within three business days, and who were not provided with the written statement described in 15 U.S.C. §1679c(a).

49.    Class C consists of all persons who, on or after a date five years prior to the filing of this action, entered into contracts with Defendant LPG, which contracts were not cancelled within

7

**Exhibit "14"**

three business days, and who were not provided with both (a) a conspicuous statement in bold face type, in immediate proximity to the space reserved for the consumer's signature on the contract, which reads as follows: "You may cancel this contract without penalty or obligation at any time before midnight of the 3rd business day after the date on which you signed the contract. See the attached notice of cancellation form for an explanation of this right" and (b) a separate notice of cancellation form.

50.    The members of the three classes may well be coterminous.

51.    Residents of Georgia are excluded from the classes.

52.    Plaintiff may alter the class definitions to conform to developments in the case and discovery.

53.    On information and belief, there are more than 100 members of each class, and each class is so numerous that joinder of all members is not practicable.

54.    There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are whether Defendant LPG engages in the practices described and whether such practices violates the CROA..

55.    Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

56.    Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer litigation.

57.    A class action is superior for the fair and efficient adjudication of this matter, in that:

  a.    Individual actions are not economically feasible.

  b.    Members of the class are likely to be unaware of their rights;

  c.    Congress intended class actions to be the principal enforcement mechanism under the CROA.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class

8

**Exhibit "14"**

members and against Defendant LPG for:

    i.    A declaration that the practices complained of herein are unlawful and violate the CROA;

    ii.    Actual damages as provided under 15 U.S.C. §1679g(a)(l);

    iii.    Punitive damages, as provided under 15 U.S.C. §1679g(a)(2)(A);

    iv.    Litigation expenses, reasonable attorney fees and costs as provided under 15 U.S.C. §1679g(a)(3); and

    v.    Such other or further relief as the Court deems appropriate.

*s/ Jason Graeber*
Jason Graeber

Jason Graeber
250 Beauvoir Road, Suite 4C
Biloxi, MS 39501
(228) 207-7117
jason@jasongraeberlaw.com

admission pro hac vice to be applied for

Daniel A. Edelman
Tara L. Goodwin
**EDELMAN, COMBS, LATTURNER & GOODWIN, LLC**
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service: courtecl@edcombs.com

9

**Exhibit "14"**

## JURY DEMAND

Plaintiff demands trial by jury.

*s/ Jason Graeber*
Jason Graeber

T:\38577\Pleading\Complaint DAE 3-16-22_Pleading.wpd

10

**Exhibit "14"**

## NOTICE OF ASSIGNMENT

Please be advised that all rights relating to attorney's fees have been assigned to counsel.

_s/ Jason Graeber_
Jason Graeber

11

Exhibit "14"

## DOCUMENT PRESERVATION DEMAND

Plaintiff hereby demands that defendant take affirmative steps to preserve all recordings, data, documents, and all other tangible things that relate to Plaintiff, the events described herein, any third party associated with any telephone call, campaign, account, sale or file associated with Plaintiff, and any account or number or symbol relating to them. These materials are likely very relevant to the litigation of this claim. If defendant is aware of any third party that has  possession, custody, or control of any such materials, Plaintiff demands that defendant request  that such third party also take steps to preserve the materials. This demand shall not narrow the  scope of any independent document preservation duties of the defendant.

*s/ Jason Graeber*
Jason Graeber

T:\38577\Pleading\Complaint DAE 3-16-22_Pleading.wpd

12

**Exhibit "14"**

JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

I.22-CV-57-HSO-RHWR

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Carolyn Beech

## DEFENDANTS

The Litigation Practice Group, PC

**(b)** County of Residence of First Listed Plaintiff   **Pearl River County**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*

SOUTHERN DISTRICT OF MISSISSIPPI

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Jason Graeber
250 Beauvoir Road, Suite 4C
Biloxi, Mississippi 39531

Attorneys *(If Known)*

FILED

MAR 17 2022

ARTHUR JOHNSTON
BY _____ DEPUTY

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | |
|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☒ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 | U.S. Government Defendant | ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Personal Injury - Medical Malpractice | **PERSONAL INJURY**<br>☐ 365 Personal Injury - Product Liability<br>☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br>**INTELLECTUAL PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 835 Patent - Abbreviated New Drug Application<br>☐ 840 Trademark<br>☐ 880 Defend Trade Secrets Act of 2016 | ☐ 375 False Claims Act<br>☐ 376 Qui Tam (31 USC 3729(a))<br>☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 480 Consumer Credit (15 USC 1681 or 1692)<br>☐ 485 Telephone Consumer Protection Act<br>☐ 490 Cable/Sat TV<br>☐ 850 Securities/Commodities/ Exchange<br>☒ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | **LABOR** | **SOCIAL SECURITY** | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | ☐ 440 Other Civil Rights<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/ Accommodations<br>☐ 445 Amer. w/Disabilities - Employment<br>☐ 446 Amer. w/Disabilities - Other<br>☐ 448 Education | **Habeas Corpus:**<br>☐ 463 Alien Detainee<br>☐ 510 Motions to Vacate Sentence<br>☐ 530 General<br>☐ 535 Death Penalty<br>**Other:**<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br>☐ 560 Civil Detainee - Conditions of Confinement | ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Management Relations<br>☐ 740 Railway Labor Act<br>☐ 751 Family and Medical Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Employee Retirement Income Security Act | ☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g))<br>**FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS—Third Party 26 USC 7609 | ☐ 893 Environmental Matters<br>☐ 895 Freedom of Information Act<br>☐ 896 Arbitration<br>☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision<br>☐ 950 Constitutionality of State Statutes |
| | | | **IMMIGRATION**<br>☐ 462 Naturalization Application<br>☐ 465 Other Immigration Actions | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from Another District *(specify)*  ☐ 6 Multidistrict Litigation - Transfer  ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
15 USC 1679

Brief description of cause:
Credit Repair Organization Act

## VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*  JUDGE _____  DOCKET NUMBER _____

DATE
Mar 17, 2022

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT $402.00   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

14164301 4190

**Exhibit "14"**

**EXHIBIT A**



P.O. Box 513018, Los Angeles, CA 90051-1018
Tel. (949) 715-0944 · Fax (949) 315-4332
Support@LPGLaw.com

## LEGAL SERVICES AGREEMENT

### Legal Services

The Litigation Practice Group PC, a State Bar of California licensed law corporation, and its employed and affiliated attorneys (collectively "LPG") will provide legal services wherein it will represent you in connection with the disputes you have with the creditors listed below (see Creditor Information). LPG will do the following as part of its representation of you:

- Assist you in stopping creditors and any related debt collectors from harassing or contacting you in connection with any of the debts identified below;
- Dispute the legal validity of the debts identified below;
- Assist you in removing erroneous or inaccurate information reported in connection with debts identified below;
- Represent you in any lawsuit filed against you in connection with any of these debts;
- Defend you against any collection activity or lawsuit on any invalidated debt at any point in time, without expiration, in connection with any debt identified below;
- Initiate legal action in a court of competent jurisdiction against any creditor that violates any state or federal law in connection with any debt identified below; and
- Determine your qualification for bankruptcy under Chapter 7 or Chapter 13 of the U.S. Bankruptcy Code, and counsel you regarding the procedures and effects of bankruptcy as well as your qualification to file the same.

LPG will serve as your attorney for all purposes in connection with these disputes and will be available to render all legal assistance necessary to resolve these debts. The fees that are set forth below are flat fees that are all inclusive — no additional fee or cost will be charged by LPG at any time during the duration of your dispute with the creditors identified below. All fees are earned by LPG at the time they are paid and are for services rendered to you as set forth herein.

### Client Authorization

You authorize LPG to challenge, where applicable, each of the debts listed below, which you believe to be in any way invalid, inaccurate, or otherwise without a legal basis. You also authorize LPG to obtain a copy of your credit report to assist in the process of analyzing your account and developing a strategy regarding the resolution of debts that are excessive or otherwise unauthorized by law. You further authorize LPG, acting under power of attorney for you, to affix your signature to documents sent on your behalf in relation to the matters addressed herein. Finally, you authorize LPG to communicate with you via email, text message, telephone, and facsimile. Any of the authorizations set forth herein can be revoked at any time by written communication.

**Exhibit "14"**

## Description of Services to be Performed

LPG will obtain your credit reports, analyze them, and develop strategies for correcting invalid or unlawful debts for which you should not be held legally responsible. Where appropriate, LPG will use existing laws and interact with creditors and credit bureaus on your behalf to invalidate your debts and remove such invalid debts from your credit reports. LPG will also interact with collection agencies, as applicable, to invalidate your debts by requiring them to supply evidence of your indebtedness to them, or any other legal mechanism. LPG will also consult with you regarding all aspects of the credit reporting process, including all laws applicable to the same. LPG will also investigate your delinquent accounts in order to determine the most effective method for invalidating your debts or otherwise removing any legal liability for such debts, up to and including the initiation of lawsuits on your behalf against your creditors and their third-party debt collectors.

In addition, if a lawsuit is filed against you, LPG will represent you in such a lawsuit and will not charge any additional fees for such representation provided such a lawsuit was initiated after the date you sign this Agreement. In the event a lawsuit was initiated against you before the date you execute this Agreement and you elect to have LPG represent you, an additional fee of $500.00 will be charged. Where appropriate, if legal fees are recovered from an adverse party, LPG will retain such fees for its services. You will be responsible to pay any damages resulting from any lawsuit. Any costs incurred in a lawsuit will be paid by LPG out of the fees set forth below, including the fees of any attorney retained on your behalf in a jurisdiction in which LPG is not admitted to practice law. No additional payment from you to LPG will be necessary for the defense of any lawsuit filed against you after the date you execute this Agreement. You will, however, be responsible to pay any damages resulting from such lawsuits or any settlements reached in the course of such lawsuits.

## Fees

You will pay the fees set forth below for the legal services provided by LPG, which services are outlined above. No fee or other cost will be charged or collected beyond the flat fee set forth below. This is the only amount that you have to pay to LPG for its services, which includes any cost, filing fee or vendor's fee associated with LPG's representation of you, and this fee is not escrowed but rather earned received by LPG. This fee does NOT, however, include any settlement that you may have to pay to any creditor if you opt to settle a debt prior to or during the course of a lawsuit.

## Refund Policy

If you reach the conclusion of LPG's representation of you and a debt remains in dispute without resolution, you will be eligible to receive a full refund of the fees that you paid towards your representation in connection with that account (i.e., you will be refunded the fees paid in proportion to the debt that was not resolved). A debt is "in dispute" under this paragraph if, at the time of completion of LPG's representation of you, no lawsuit was filed regarding the debt, no settlement was reached regarding the debt, no acknowledgment of invalidity was received from the creditor regarding the debt, and the debt is still reporting to one of the following credit bureaus: Experian, Equifax, or Transunion.

**Exhibit "14"**

## Debt Settlement

You may request that LPG settle any debt identified below at any point in the course of LPG's representation of you. Where requested, LPG will negotiate the most favorable settlement it is able to negotiate on your behalf. Any settlement reached as a result of your request shall be your responsibility, and shall be paid directly from you to the creditor. At the point that you reach a settlement with a creditor, your payment to LPG will be reduced and to adjust for the settled account being removed from the representation herein contemplated. LPG will only settle a debt where litigation is active or contemplated.

## Actions Required of You

You agree to provide LPG with any and all correspondence you receive from any creditor, credit bureau, attorney, or court of law. You further agree to keep a log of all communications, including telephonic and electronic communications, from any creditor or credit reporting agency to you from the date you execute this Agreement until the conclusion of your representation.

## Right to Conduct Business Electronically and Contact You

You agree that LPG may contact you electronically and telephonically and that any and all business with LPG may be conducted electronically. You further agree that LPG may transmit data, including that regarding your credit profile, electronically. You further agree that any electronic communication carries the risk of disclosure to a third party and that LPG will not be held responsible for any such inadvertent disclosure of information. A facsimile or email transmission of this signed agreement, via an email attachment or otherwise, will be as valid as the original signed agreement. This agreement may not be modified except in writing by both parties.

## Malpractice Insurance

LPG hereby discloses that it maintains a malpractice insurance policy that covers its representation of you and that the limit of such policy is no less than $1,000,000.00 per claim and $1,000,000.00 per claimant. If you desire to make a claim against that insurance policy, you must first contact LPG and disclose your claim and the nature of the claim, at which point LPG agrees to assist you in obtaining any and all information necessary to prepare a file a claim.

## Applicable Law and Confidentiality

You understand and agree that LPG is based out of the State of California, is a licensed law corporation under the State Bar of California, and that California law applies to this Agreement. You further understand that LPG is bound to strict rules of confidentiality and attorney-client privilege in connection with the rules applicable to attorneys licensed to practice law in the State of California. You further understand and agree that you have sought the representation of LPG with full knowledge of its location and licensing, and that LPG works with attorneys licensed in all 50 states and the District of Columbia as affiliated counsel to allow LPG to provide a complete representation of you in any state in which you are sued or in which a dispute might arise. You have the right to know the licensed attorney with whom LPG has affiliated in any state and at any time but understand and agree that LPG may choose to change the local attorney with whom it is affiliated in any given jurisdiction, provided only that at all times LPG shall have an affiliated attorney in all 50 states and the District of Columbia.

**Exhibit "14"**

## Client Acknowledgements

By signing this agreement, you acknowledge that LPG has not instructed you to breach any contract, fail to make any required payment, or fail to perform any obligation you have lawfully incurred. LPG reserves the right to terminate this agreement if (a) required by the State Bar of California Rules of Professional Conduct, (b) you refuse to communicate with LPG or respond to reasonable requests for information necessary to represent you in an effective way, (c) you fail to make timely payment of the amount due under hereunder, or (d) your payments are returned multiple times for any reason. LPG will not pay any of the debts identified below and does not guarantee that any debt you now have or may incur will be invalidated or settled in association with LPG's representation of you. You understand and agree that you must forward any communication you receive in printed or electronic form from any creditor, court, or representative of other a creditor or a court to the address, email, or fax number provided below, and that you must keep a log of all telephonic communications with any creditor or credit reporting agency. You, the client, may cancel this Agreement at any time by submitting three days' written notice of cancellation by mail, email, or fax, and shall not be responsible for any payments due after the date of cancellation. A payment due within three days of the date of written cancellation shall be processed and shall not be refunded.

Client Signature:

Date:

Co-Applicant Signature:

Date:

## THE LITIGATION PRACTICE GROUP PC

**Daniel S. March, Managing Shareholder**
**17542 E. 17th Street, Ste 100**
**Tustin, CA 92780**
**Support@LPGLaw.com**
**Tel. 949.715.0644**
**Fax. 949.315.4332**

**Exhibit "14"**

## Creditor Information



| Creditor | Account # | Debt Balance |
|---|---|---|
| FSTHERITAG | | $3,206.00 |
| ONEMAIN | | $2,168.00 |
| 1st Franklin Financial | | $1,612.00 |
| FIRST SVG CC | | $562.00 |
| TBOMASPIRE | | $411.00 |
| FST PREMIER | | $376.00 |
| TBOMMILSTNE | | $327.00 |
| TBOMASPIRE | | $221.00 |
| FSB BLAZE | | $194.00 |
| Peral River Credit | | $2,416.00 |
| ADVANTAGE | | $1,157.44 |
| | | $12,650.44 |

**Exhibit "14"**

## **Client Information**

**Name:** Carolyn Beech
**Address:** ███████████████████

**Home Phone:** ███████████████████
**Cell Phone:** 
**Email:** 
**Last 4 SSN:** ████████████████

**Exhibit "14"**

## Schedule of Payments

I agree to this payment schedule – Client Initials: 

| Payment # | Process Date | Amount |
|---|---|---|
| 1 | Dec 20, 2021 | $296.95 |
| 2 | Jan 18, 2022 | $296.95 |
| 3 | Feb 18, 2022 | $296.95 |
| 4 | Mar 18, 2022 | $296.95 |
| 5 | Apr 18, 2022 | $296.95 |
| 6 | May 18, 2022 | $296.95 |
| 7 | Jun 20, 2022 | $296.95 |
| 8 | Jul 18, 2022 | $296.95 |
| 9 | Aug 18, 2022 | $296.95 |
| 10 | Sep 19, 2022 | $296.95 |
| 11 | Oct 18, 2022 | $296.95 |
| 12 | Nov 18, 2022 | $296.95 |
| 13 | Dec 19, 2022 | $296.95 |
| 14 | Jan 18, 2023 | $296.95 |
| 15 | Feb 21, 2023 | $296.95 |
| 16 | Mar 20, 2023 | $296.95 |
| 17 | Apr 18, 2023 | $296.95 |
| 18 | May 18, 2023 | $296.95 |
| 19 | Jun 19, 2023 | $296.95 |
| 20 | Jul 18, 2023 | $296.95 |
| 21 | Aug 18, 2023 | $296.95 |
| 22 | Sep 18, 2023 | $296.95 |
| 23 | Oct 18, 2023 | $296.95 |
| 24 | Nov 20, 2023 | $296.94 |

**Exhibit "14"**

E-Signature Completion Certificate





## Your Document Was Successfully Signed!

Congratulations, your document(s) was successfully signed. Please find
details below related to your e-signature submission.

---

### ⊙ Signing Details

**Document ID**
4835311

**Document Title**
LSA - LPG - English New

**Sender IP Address**
▮▮▮▮▮▮▮▮

**Number Of Signers**
1

**Signer Email**
▮▮▮▮▮▮▮▮

**Signer IP Address**
172.58.168.70

**Timestamp**
2021-12-02T17:23:45-06:00

**Document MD5 Hash**
▮▮▮▮▮▮▮▮

### ✦ Document Audit

✔ Sent at 1969-12-31T18:00:00-06:00 from IP ▮▮▮▮

✔ Delivered to ▮▮▮▮▮▮  2021-12-02T17:19:56-06:00 from 172.58.168.70

✔ Adopted Signature at 2021-12-02T17:21:52-06:00 from 172.58.168.70

✔ Completed Signing at 2021-12-02T17:23:45-06:00 from 172.58.168.70

✔ PDF Generated at 2021-12-02T17:23:45-06:00

**Sending Agent**
Mozilla/5.0 (Linux; Android 10; LM-K300) AppleWebKit/537.36 (KHTML, like Gecko) Chrome/89.0.4389.105
Mobile Safari/537.36

**Exhibit "14"**

**EXHIBIT B**

## Electronic Payment Authorization

**Bank Name:** ███████████████████

**Name on Account:** Carolyn Beech

**Account Type:** Checking

Other (specify: _____ )

**Routing Number:** ████████████████

**Account Number:** ███████████████

**Next Payment Date:** Dec 20, 2021 **Amount:** $ 296.95

**Recurring Payment Date:** 18th

By signing below, I authorize and permit LPG or their designees to initiate electronic funds transfer via an Automated Clearing House system (ACH) from my account listed above. I will also provide LPG with a voided check or savings deposit slip.

If necessary, LPG may make adjustments if errors have occurred during the transaction. The date of the draft is listed above, however, if the draft date falls on a weekend or bank holiday, the debit transaction will take place on the next business day. This authority will remain in effect until LPG is notified by the member in writing at least 5 days prior to the next scheduled draft date. No other forms of cancellation by members will be observed. If the debit is returned because of non-sufficient funds or uncollected funds, then the originator and its financial institution may reinitiate the entry up to two (2) times. The reversal of funds from a client's account that was drafted in error cannot be made until seven business days from the draft date. The member agrees to waive all rights of reversal or refusal of any payment on any draft that LPG may make against the member's bank account while services are performed. The member agrees with all of the provisions and conditions outlined within.

### Acknowledgment of Refunds & Draft Date Changes

ACH Refunds: If a refund is due such will be made through the ACH process only. Refunds may take up to 10 days to process. In the event my EFT or draft is returned from my bank unpaid, I agree that a fee of $25.00 or as allowed by law may be charged to my account via draft or EFT. Furthermore, I warrant that I am authorized to execute this payment authorization and the above information is true and correct. Draft Date Changes: A client may stop any ACH debit by providing written notice to LPG at least three (3) business days prior to the scheduled payment. If you should need to notify us of your intent to cancel and/or revoke this authorization you must contact us three (3) business days prior to the questioned debit being initiated.

**Client Signature:**

████████████████

**Printed Name:**

Carolyn Beech

**Exhibit "14"**

**EXHIBIT C**

## Preauthorized Checking and ACH Authorization Form

I hereby apply for and agree to establish a non-interest bearing special purpose account (the "Account") with a bank ("Bank") selected by LPG, its payments processors, and/or their successors for the purpose of accumulating funds to pay for such goods and services as I so direct LPG to perform. This application is subject to Bank's customer identification program, as required by the USA PATRIOT ACT and other applicable laws, and accordingly, I hereby represent that the above information is true and complete to the best of my knowledge and belief. The bank account information provided above may be subject to account validation processes to include pre-notation and a $0.01 micro-deposit.

**Account Owner Name:** Carolyn Beech

**Address:** ███████████████████████

**Mobile Phone #:   E-Mail:** ███████████████████

## DESIGNATED BANK ACCOUNT INFORMATION

**Bank Name:** █████████████

**Name as it appears on bank ACCOUNT:**  Carolyn Beech

**Routing Number:** █████████  **Account Number:** █████████  **Checking or Saving:** █████████

## DESIGNATED BANK ACCOUNT PAYMENT AUTHORIZATION SCHEDULE

**Total Amount of Debit: $296.95**       **Date of Next Debit:** Dec 20, 2021

I authorize Payment Automation Network to initiate Automatic Clearing House (ACH) or Electronic Funds Transfer (EFT) or Remotely Created Check (RCC) from my designated bank account at the financial institution identified above. I authorize Payment Automation Network to debit my bank account according to the schedule of debits provided to Payment Automation Network by me or on my behalf or as otherwise provided by agreement. I understand that debits will be withdrawn on the due date unless otherwise indicated and that sufficient funds must be available in designated account at least two (2) business days prior to the actual date of the debit. Upon my approval, Payment Automation Network may adjust the amount being debited from designated bank account. This authorization is to remain in force until the schedule of debits is completed or until Payment Automation Network has received written notification from me of a change or termination, allowing Payment Automation Network no fewer than five (5) business days to act. Payment Automation Network shall not be liable to any person for not completing a transaction as a result of any limit on my designated bank account or if a financial institution fails to honor any debit from such account. I understand it is my responsibility to notify Payment Automation Network immediately if a scheduled debit does not occur. I authorize Payment Automation Network to recover funds by ACH/EFT/RCC debit from my bank account in the event of an error or in the event that a prior debit is returned for any reason, including non-sufficient funds. I understand that a $25.00 service charge will be added for every NSF draft. I understand I can call Payment Automation Network at 800-813-3740 to cancel the automatic draft payments. Payments will be drafted on the payment due date of the original Servicing agreement. I understand and agree that Payment Automation Network, Inc. is a private company, and is not affiliated with any academic or

**Exhibit "14"**

governmental entity. The Payment Automation Network, Inc. service bridges the gap between the student loan consolidation company Software and ACH, EFT, or RCC processor. Payment Automation Network, Inc. is not a money transmitter or debt collection agency and does not receive money from individual debtors. Payment Automation Network, Inc. is not engaged in the business of debt or credit counseling or the provision of other services to individual debtors. Payment Automation Network, Inc. does not solicit, offer loan consolidation services, or provide services directly to individual debtors. Payment Automation Network, Inc. does not have a contractual relationship with individual debtors to affect the adjustment, compromise, or discharge of any loan account.

I have read and understand the information contained in this document and I affirm that the above information given by me is accurate and true to the best of my knowledge.

**Account Holder's Signature:** ▮▮▮▮▮▮▮▮

**Date: 12/2/2021**

**Exhibit "14"**

**EXHIBIT D**

SMARTER PATH TO

# Debt Relief
# Legal Services

GET IN TOUCH

FEATURED IN:

**Exhibit "14"**



**Exhibit "14"**



WHY CHOOSE US?

# there's a dedicated team of attorneys for every legal matter.

At LPG Law, we have experienced attorneys for nearly every financial or legal matter. So, when you or your family face hardship, our team can litigate the debt, bankruptcy, or civil issue on your behalf to protect your future.

About Our Firm

**Exhibit "14"**

LPG Law - USA Debt Relief Legal Services Firm - Call Us!

## DEDICATED & OUTCOME FOCUSED

# How Can Our **Debt Relief Attorneys** Help You?

Step
**1**

Call for a free phone consultation.

📞 **949-229-6262**

Step
**2**

An experienced debt relief attorney will speak with you and evaluate your case.

Step
**3**

If retained, we will move forward with the initial paperwork to begin working on your case.

Exhibit "14"

## WE **FIGHT HARD** WHEN REPRESENTING YOU.

# Debt Relief is Our #1 Specialty

Our expert legal team spans across the country in our various
locations from west coast to east coast with diverse backgrounds and
case experience that allows us to select the right attorney for every
case. Don't settle with a firm that has less resources to take on your
case and have the connections, know-how and access to fight hard
for you outside of court and in court when necessary.

**Exhibit "14"**

LPG Law - USA Debt Relief Legal Services Firm - Call Us!

Has your **credit score** already been negatively impacted?

Have you been denied employment **because of your financial situtation?**

Have you been **doing everything just to pay interest** and getting behind no matter what you try?

Has your **creditor threatened** you for non payment?

Have you been **struggling to pay multiple high-interest rate credit cards** or personal loans?

Has your family been at risk **of losing your home or other assets** as a result of your financial hardship?

Were you **sent legal paperwork or a lawsuit** from your creditors for non-payment or late

Exhibit "14"

Has your personal property or **car been repossessed** as a result of late payments?

If your **answer is yes** to some of these questions, you *might* have a potential legal claim.

**CONTACT US TODAY FOR A FREE CONSULTATION**

📞 **(949) 229-6262**

# our core focus

LPG started with a respected group of established attorneys and has rapidly grown across the country into new states as demand for our services has flourished due to demonstrated success for our clients. We assist people that need general legal counsel, financial advisory all the way to protecting individuals in court with our full suite of litigation services.

Exhibit "14"

and wanted to put our expertise to good use helping individuals around the country protect themselves from harassment from debtors.

## our firm

OVERVIEW

OUR MISSION

OUR ATTORNEYS

PRACTICE AREAS

WHAT OUR CLIENTS SAY

# FOCUSING EXCLUSIVELY ON

**Exhibit "14"**

LPG Law - USA Debt Relief Legal Services Firm - Call Us!

# Debt Relief &
# Litigation

*Protecting the Finances of Consumers and Average Americans*

Protecting your Finances. **Get a Free Consultation.**

  👤 **Full N**　　✉ **Email**　　📞 **Phone**　　**Desc**　　　　　| Get Help Now |

## WHAT WE DO

## Attorneys for **Consumers In Debt**, Civil and **Commercial** Legal Matters

Offering a way out of debt, collections harassment, legal action and financial burdens in 48 US states

**Exhibit "14"**

My largest **creditors** are threatening to send my case to court →

I need help consolidating **unstructured debt** from multiple sources and credit lines →

I need help with **civil litigation or arbitration.** →

I am being **harassed by creditors for collections.** →

**My credit report was damaged** and needs to be worked on by a knowledgeable lawyer. →

I am dealing with or facing imminent **personal bankruptcy issues** and seek legal advice →

**I have real estate** at risk from financial or legal issues →

**Exhibit "14"**

I need **business litigation services** for corporate issues                        →

# FREQUENTLY ASKED QUESTIONS

## IS THERE ANYTHING I CAN DO TO GET NEGATIVE ITEMS OFF MY CREDIT?      –

Yes. Our attorneys can get to work for you dealing with your creditors and utilizing the full extent of the law to find a resolution that is in your favor. There are many tactics from settlement to debt validation that our law firm can pursue with your creditors and their collections branches or divisions.

## MY CREDITOR WANTS TO SEND MY CASE TO COURT. SHOULD I RESPOND?      +

## HOW DOES THE PROCESS WORK TO GET STARTED? WHAT DO YOU NEED FROM      +

Exhibit "14"

LPG Law - USA Debt Relief Legal Services Firm - Call Us!

## DO I HAVE ANY OPTIONS TO AVOID
## BANKRUPTCY OR GOING TO COURT?      +

# Get A Legal
# Case Evaluation

## Our experts are here to
## answer your questions

### CONTACT US TODAY

**ADDRESS**          **WANT TO TALK?**          **SOCIAL MEDIA**

Exhibit "14"

3/8/22, 2:57 PM

LPG Law – USA Debt Relief Legal Services Firm - Call Ust

**Exhibit "14"**

# Exhibit "15"

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DEBRA PRICE,<br>319 Putnam Street<br>Scranton, PA 18508, | NO. |
|             Plaintiff,<br>    v. | |
| LITIGATION PRACTICE GROUP P.C.<br>17542 E 17th Street, Suite 100,<br>Tustin CA 92780, | |
| DANIEL MARCH, ESQ., individually and d/b/a<br>LITIGATION PRACTICE GROUP<br>17542 E 17th Street, Suite 100,<br>Tustin CA 92780; | |
| MARQUE CAREY, ESQ.,<br>individually and d/b/a LITIGATION<br>PRACTICE GROUP<br>17542 E 17th Street, Suite 100,<br>Tustin CA 92780; | |
| RANDALL CLARK, ESQ.,<br>individually and d/b/a LITIGATION<br>PRACTICE GROUP<br>17542 E 17th Street, Suite 100,<br>Tustin CA 92780; | |
| MICHAEL ROBINSON, ESQ.,<br>individually and d/b/a LITIGATION<br>PRACTICE GROUP<br>17542 E 17th Street, Suite 100,<br>Tustin CA 92780; | |
| JAYDE TRINH, ESQ., individually and d/b/a<br>LITIGATION PRACTICE GROUP<br>17542 E 17th Street, Suite 100,<br>Tustin CA 92780; | |
| HOWARD GUTMAN, ESQ., individually and<br>d/b/a LITIGATION PRACTICE GROUP<br>17542 E 17th Street, Suite 100,<br>Tustin CA 92780; | |
|            Defendants. | |

**Exhibit "15"**

## COMPLAINT

### I. JURISDICTION AND VENUE

1. Subject matter jurisdiction is conferred upon this Court by 15 U.S.C. §§ 45(a) and 53(b) and 28 U.S.C. §§ 1331, 1337(a), and 1345.

2. Venue is proper in this District under 15 U.S.C. § 53(b) and 28 U.S.C. § 1391(b) and (c).

### II. PARTIES

3. Plaintiff, DEBRA PRICE, is an adult individual residing at the above captioned address.

4. Defendant LITIGATION PRACTICE GROUP, P.C. ("LPG"), is California law firm with principal offices at the above captioned address in California and is a professional corporation conducting business in the Commonwealth of Pennsylvania.

5. Defendant, DANIEL MARCH, ESQ. d/b/a LPG is an adult individual doing business as a debt settlement and credit repair organization at the above captioned address, at all times material also doing business as an attorney admitted to practice of law in the State of California and not so admitted in the Commonwealth of Pennsylvania.

6. Defendant, MARQUE CAREY, ESQ. d/b/a LPG is an adult individual doing business as a debt settlement and credit repair organization at the above captioned address, at all times material also doing business as an attorney admitted to practice of law in the State of California and not so admitted in the Commonwealth of Pennsylvania.

7. Defendant, RANDALL CLARK, ESQ. d/b/a LPG is an adult individual doing business as a debt settlement and credit repair organization at the above captioned

**Exhibit "15"**

address, at all times material also doing business as an attorney admitted to practice of law in the State of California and not so admitted in the Commonwealth of Pennsylvania.

8.      Defendant, MICHAEL ROBINSON, ESQ. d/b/a LPG is an adult individual doing business as a debt settlement and credit repair organization at the above captioned address, at all times material also doing business as an attorney admitted to practice of law in the State of California and not so admitted in the Commonwealth of Pennsylvania.

9.      Defendant, JAYDE TRINH, ESQ. d/b/a LPG is an adult individual doing business as a debt settlement and credit repair organization at the above captioned address, at all times material also doing business as an attorney admitted to practice of law in the State of California and not so admitted in the Commonwealth of Pennsylvania.

10.     Defendant, HOWARD GUTMAN, ESQ. d/b/a LPG is an adult individual doing business as a debt settlement and credit repair organization at the above captioned address, at all times material also doing business as an attorney admitted to practice of law in the State of California and not so admitted in the Commonwealth of Pennsylvania.

11.     The individual attorney Defendants are sometimes collectively referred to herein as "the Attorney Defendants".

12.     Upon information and belief, LPG is nothing more than an alter ego of the Attorney Defendants over which they exercise complete dominion and control as a vehicle for the Attorney Defendants and their accomplices to deceive unsuspecting and desperate consumers into paying them large sums of money under the pretext of "debt settlement". The scheme involved promising debt relief to vulnerable consumers which is nothing more than an illusory scheme to collect funds from these consumers that they

**Exhibit "15"**

could better use themselves to negotiate debt settlements or pursue alternate traditional forms of debt remediation as discussed below.

13. At all times relevant hereto, defendants acted by and through their agents, servants, and employees who acted within the scope of their authority and within the course of their employment.

## III. FACTUAL BACKGROUND

### A. Background - Nature of Debt Settlement Operations Generally

14. Debt settlement is a form of consumer debt relief, targeted to consumers with thousands of dollars of unsecured debt.

15. Unlike debt remediation options such as traditional credit counseling, debt management plans, debt consolidation loans, and possibly bankruptcy, debt settlement is an aggressive form of debt relief in which consumers stop paying all of their unsecured debts and begin saving the money they would normally use to pay those debts.

16. After several months, when the accounts are in default, the debt settlement company will contact the creditor, and negotiate a lump-sum payoff of the debt, ideally at a highly reduced percentage.

17. The consumer then uses the money that he/she has been saving to pay the lump-sum, and can then have the benefit of a significant portion of their original debt being forgiven. As will be described later herein, defendants did not allow plaintiff to use saved funds for negotiated payoffs but incredibly demanded additional funds towards such payments.

18. Because debt settlement only works if consumers are not making monthly payments on their unsecured debts (since creditors will not want to settle a debt if they

are receiving monthly payments), there are inherent risks involved with participating in a debt settlement program that can have catastrophic effects on the consumer. Specifically, consumers entering a debt settlement program may experience any or all of the following:

    a. Because the creditor is no longer receiving monthly payments, creditors will likely engage in collection activities including filing a lawsuit against the consumer for breaking their contract.

    b. The consumer will owe significantly more on their account if a settlement is reached and concomitantly reduce the actual savings from the debt settlement program because creditors will continue to assess interest, late fees, over-limit charges, and any other fees associated with the account.

    c. The consumer's credit reports will reflect the late charges and non-payment of their unsecured debt causing the consumer's credit score to drop while participating in the program and the consumer may experience the long term effects of a low credit score, which can include difficulty in buying a house or car, obtaining insurance, or obtaining employment.

    d. Creditors are under no obligation to accept, or even entertain, a settlement offer.

19. Debt settlement is largely a "for-profit" industry involving companies charging consumers large fees typically calculated as a percentage of the total debt the consumer brings into the program and often collected in the first several months of the program.

**B. <u>Nature of Debt Validation /Credit Repair Services</u>**

20.     Since at least February 2021, and continuing thereafter, defendants, directly or through their representatives, have promoted, offered for sale, and sold credit repair services to consumers via Defendant LPG's Internet website which it maintains to attract consumers to purchase defendants' debt relief and credit repair services.

21.     Through verbal statements by their representatives and through written statements on their website, defendants have offered "credit repair" services purporting to remove or attempt to remove derogatory information from, or improve, consumers' credit histories, credit records, or credit ratings.

22.     Before providing any of the promised services, defendants' representatives request and obtain at least partial payment for these services.

23.     Defendants require consumers to sign written contracts for defendants' services.

**C.   The Credit Repair Organizations Act**

24.     The Credit Repair Organizations Act took effect on April 1, 1997, and has since that date remained in full force and effect.

25.     Defendants are "credit repair organizations" as that term is defined in the Credit Repair Organizations Act, 15 U.S.C. § 1679a(3).

26.     The purposes of the Credit Repair Organizations Act, according to Congress, are:

a.   to ensure that prospective buyers of the services of credit repair organizations are provided with the information necessary to make an informed decision regarding the purchase of such services; and

b.   to protect the public from unfair or deceptive advertising and business

**Exhibit "15"**

practices by credit repair organizations.

27. The Credit Repair Organizations Act prohibits credit repair organizations from charging or receiving any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform before such service is fully performed. 15 U.S.C. § 1679b(b).

28. Pursuant to Section 410(b)(1) of the Credit Repair Organizations Act, 15 U.S.C. § 1679h(b)(1), any violation of any requirement or prohibition of the Credit Repair Organizations Act constitutes an unfair and deceptive act or practice in commerce in violation of § 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## IV. FACTUAL ALLEGATIONS

29. On or about February 17, 2021, plaintiff entered into a standardized adhesion contract of exculpation with LPG in an illusory several page "Legal Services Agreement" contract whereby she agreed to pay $260.10 monthly to defendant "to invalidate your debts and remove such invalid debts from your credit reports", and, if it cannot do so, "may elect to have LPG negotiate a settlement on your behalf with the concerned creditor" (see **Exhibit A**).

30. The five credit card accounts plaintiff wished to have negotiated totaled over $16,000.00.

31. To pay the monthly fee, Plaintiff provided Defendants with a cancelled check to her personal checking account for which she was sole depositor.

32. The accounts plaintiff wished to have negotiated, and that LPG promised to remove from credit reporting by its contract, were accurate, but LPG nevertheless recommended that they be disputed as inaccurate.

**Exhibit "15"**

33. Defendants did not inform plaintiff and does not inform its customers generally that accurate negative credit items cannot be legally challenged as inaccurate.

34. To make matters even more confusing, LPG presented Plaintiff with another written contract, this time with an affiliated entity and agent, Help Finance Group, LLC ("HFG"), which also promised to negotiate debts on plaintiff's behalf but, in exculpatory fine print in the contract, essentially disclaimed any obligation to perform any debt settlement or legal services for her, and disclaimed any representations that it would actually perform such services.

35. At all times herein, Plaintiff only had contact with LPG and, upon information and belief, HFG was an agent of and/or alter ego of LPG and acted at its direction and control.

36. In order to get relief from her cumulative debt, the HFG contract requires Plaintiff to agree to accumulate funds in a settlement savings fund escrow account over up to 180 days before any negotiation of debt can begin.

37. On or about April 2022, Defendants withdrew the monthly $260.10 fee from a different checking account than had been authorized by Plaintiff, a checking account held jointly by Plaintiff and her husband as co-depositors.

38. Two payments were withdrawn until Plaintiff's reported the issue to her bank and demanded Defendants return the two payments and cease any further withdrawals from the unauthorized account.

39. Defendants have negotiated no debt reduction, indeed Plaintiff's debts have increased, and has removed none of the debts from her credit. As a result, all of her debts have gone into collection while she has been enrolled in Defendants' program and

Plaintiff has been sued by one creditor in Lackawanna County, Docket no. MJ-45106-CV-0000117-2022.

40.      Defendants' contract with plaintiff for debt settlement and credit repair services is void insofar as it promises nothing real and its purpose is to give the appearance of legal propriety to illegal debt settlement activities detailed in this Complaint, thereby enriching defendant at the expense of heavily indebted Pennsylvania consumers, and preempting for itself consumers' money that should have been used to pay creditors or to file for bankruptcy relief.

41.      Plaintiff suffered ascertainable loss by reason of defendant's actions.

**Causes of Action**

**COUNT I**
**VIOLATIONS OF THE CREDIT REPAIR ORGANIZATIONS ACT**

42.      In connection with the sale and performance of services for consumers by a credit repair organization, as that term is defined in § 403(3) of the Credit Repair Organizations Act, 15 U.S.C. § 1679a(3), defendants have charged or received money or other valuable consideration for the performance of credit repair services that defendants have agreed to perform before such services were fully performed. Defendants have thereby violated Section 404(b) of the Credit Repair Organizations Act. 15 U.S.C. § 1679b(b).

43.      In connection with the defendants' agreement to provide credit repair services, defendants violated the CROA, *inter alia*, § 1679b(a)(1) by making untrue or misleading statements to a consumer reporting agency; §1679b(a)(3) by misrepresenting its services; and §1679b(a)(4) by engaging in acts, practices or courses of business which constitute or result in the commission of a deception on its customers, plaintiff or the

consumer reporting agencies; §1679b(b) by charging and receiving money for the performance of its agreement before the service was fully performed; and §1679d(b) by failure to include the information required by that subsection.

## COUNT II
### VIOLATIONS OF THE FAIR CREDIT EXTENSION UNIFORMITY ACT
### (FCEUA) and
### PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER
### PROTECTION LAW (UTPCPL)
### (Plaintiff v. All defendants)

44.    Plaintiff incorporates all foregoing allegations as though set forth in full.

45.    Defendants are each a "debt collector" as defined by 73 P.S. § 2270.3 of the FCUEA in that, at all times herein, defendant was "engaging or aiding directly or indirectly in collecting a debt owed or alleged to be owed a creditor".

46.    Plaintiff is a "consumer" as defined by 73 P.S. § 2270.3 of the FCUEA.

47.    All of the above contacts by Defendants with plaintiff, including but not limited to attempting to settle the May 2017 debt, were "communications" relating to a debt as defined by 73 P.S. § 2270.3 of the FCUEA.

48.    Because Defendants' business model is premised on compromising the amount of debt owed rather than eliminating it as an attorney filing a chapter 7 bankruptcy or defending a debt collection litigation, all of the above contacts by Defendants were with the purpose of engaging or aiding indirectly in collecting plaintiff's debts owed or alleged to be owed to her creditors.

49.    Moreover, even Defendants' limited promise of compromising the amount of debt paid is illusory in that no results are promised, Ex. _, Sec. 3 titled, "No Guarantees of Results".

50. Defendants, by their conduct as described above including but not limited to failing to settle any debt with plaintiff's creditors from "settlement savings fund" escrow account, violated the FDCPA including but not limited to the following:

    a) §1692e(5), engaged in false, deceptive, and misleading representations in connection with the debt collection activities described herein;

    b) §1692f Otherwise used unfair or unconscionable means to collect or attempt to collect a debt by collecting funds from plaintiff towards an illusory promise of debt remediation when, instead, plaintiff's debt burden was increased by the fees and charges collected by defendants resulting in no net financial relief to plaintiff and instead worsening her financial burdens.

51. The foregoing acts and omissions of defendants in violation of the FDCPA, including but not limited to giving plaintiff a futile illusory contract to conceal the fact that defendants are not providing plaintiff with any legal services to settle any of her debts, constitute numerous and multiple *per se* violations of the FCEUA and UTPCPL, including but not limited to 73 P.S. § 2270.4(a), as evidenced by the following conduct:

    a) The use of false, deceptive or misleading representations or means in connection with the collection of a debt;

    b) The use of false representation or deceptive means to collect a debt or obtain information about a consumer;

    c) The use of unfair or unconscionable means to collect or attempt to collect an alleged debt;

52. Defendants' acts which violated similar provisions in the Fair Debt Collection Practices Act ("FDCPA") as described above thereby renders such acts *per se* unfair and deceptive practice violations of the Unfair Trade Practices Consumer Protection Law, 73 P.S. § 201-1 *et. Seq.,* FCEUA, 73 P.S. § 2270.4(a).

<u>COUNT II</u>
**Breach of Contract/ Covenant of Good Faith and Fair Dealing**
**(Plaintiff v. the Attorney Defendants)**

53. Plaintiff incorporates all foregoing allegations as though set forth in full.

54. Plaintiff and Defendants entered into a contract for legal services.

55. Defendants' aforementioned conduct constitutes a breach (express, implied, or as a matter of law) of that agreement to provide competent and effective legal services, as well as a breach of the covenant of good faith and fair dealing.

56. As a direct and proximate cause of the aforementioned breach of the agreement to provide legal services, Plaintiff has been damaged, as set forth above.

<u>COUNT III</u> **- Breach of Fiduciary Duty**
**(Plaintiff v. the Attorney Defendants)**

57. Plaintiff incorporates all foregoing allegations as though set forth in full.

58. Plaintiff and Defendants were in a fiduciary, attorney-client relationship.

59. Defendants' aforementioned conduct constitutes a breach of that fiduciary relationship.

60. As a direct and proximate cause of the aforementioned breach of fiduciary duty, Plaintiff has been damaged as set forth above.

**PRAYER**

**WHEREFORE,** Plaintiff demands judgment against defendants, jointly and severally, or singly as indicated, for:

**Exhibit "15"**

(a) Actual, compensatory, and punitive Damages for violation of CROA;

(b) Costs and reasonable attorney's fees for violation of CROA;

(c) Declaratory and injunctive relief, and such other and further relief as law or equity may provide for violation of CROA.

(d) Actual damages pursuant to 73 P.S.§ 201-9.2(a) against Defendants;

(e) Treble actual damages pursuant 73 P.S.§ 201-9.2(a) against Defendants;

(f) Costs of litigation and reasonable attorney's fees pursuant to 73 P.S.§ 201-9.2(a), and;

(g) Actual damages for breach of contract and fiduciary duty.

(h) Such other and further relief as the Court shall deem just and proper.

## <u>JURY DEMAND</u>

Plaintiff demands trial by jury.

ROBERT P. COCCO, P.C.
BY:      /s/Robert P. Cocco

Attorney for Plaintiff

Dated: May 10, 2022

**Exhibit "15"**



admin@coastprocessing.com

## LEGAL SERVICES AGREEMENT

### Legal Services

The Litigation Practice Group PC ("LPG") will provide debt validation services wherein it will assist you in removing erroneous or inaccurate information appearing on one or more of your credit reports by contesting debts appearing therein. This service is limited to information reported by creditors or purported creditors to credit bureaus. The purpose of this program is to challenge the legal validity of debts appearing on or being reported to credit bureaus. The cost of legal services rendered by LPG is set forth below, and those fees are earned by LPG for services rendered to you as set forth herein at the time such fees are paid.

### Client Authorization

You authorize LPG to challenge, where applicable, any debts appearing in your credit report(s) that you believe to be in any way invalid, inaccurate, or otherwise without a legal basis. You also authorize LPG to obtain a copy of your credit report to assist in the process of analyzing your account and developing a strategy regarding the invalidation of debts that are excessive or otherwise unauthorized by law. You further authorize LPG, acting under power of attorney for you, to affix your signature to documents sent on your behalf in relation to the matters addressed herein.

### Description of Services to be Performed

LPG will obtain your credit reports, analyze them, and develop strategies for correcting invalid or unlawful debts for which you should not be held legally responsible. Where appropriate, LPG will use existing laws and interact with creditors and credit bureaus on your behalf to invalidate your debts and remove such invalid debts from your credit reports. LPG will also interact with collection agencies, as applicable, to invalidate your debts by requiring them to supply evidence of your indebtedness to them, or any other legal mechanism. LPG will also consult with you regarding all aspects of the credit reporting process, including all laws applicable to the same. LPG will also investigate your delinquent accounts in order to determine the most effective method for invalidating your debts or otherwise removing any legal liability for such debts, up to and including the initiation of lawsuits on your behalf against your creditors and their third-party debt collectors.

In addition, if a lawsuit is filed against you, LPG will represent you in such a lawsuit and will not charge any additional fees for such representation provided such a lawsuit was initiated after the date you sign this Agreement.  In the event a lawsuit was initiated against you before the date you execute this

**Exhibit "15"**

ID: 3522897 Signed: 2021-02-17T14:29:29-06:00

Agreement and you elect to have LPG represent you, an additional fee of $500.00 will be charged. Where appropriate, if legal fees are recovered from an adverse party, LPG will retain such fees for its services. You will be responsible to pay any damages resulting from any lawsuit. Any costs incurred in a lawsuit will be paid by LPG out of the fees set forth below, including the fees of any attorney retained on your behalf in a jurisdiction in which LPG is not admitted to practice law. No additional payment from you to LPG will be necessary for the defense of any lawsuit filed against you after the date you execute this Agreement. You will, however, be responsible to pay any damages resulting from such lawsuits or any settlements reached in the course of such lawsuits.

**Fees**

You will pay the following fees for the legal services provided by LPG. No fee or other cost will be charged or collected other than the following. This is the only amount you have to pay for LPG's services, and this fee is fixed, such that it is earned the moment it is transmitted to LPG. Upon request, LPG will provide an update of the progress of services performed under this agreement at reasonable intervals of no greater frequency than once a month.

**Refund Policy**

If an account is fully validated by a creditor, such that no further dispute to the validity of the account could be made, you will receive a full refund of the fees that you paid towards the invalidation of that account (i.e., you will be refunded the fees paid in proportion to the debt that was validated). Should you have an outstanding balance with LPG at the time your refund is issued on the validated account, any refund will first be applied towards the outstanding balance. A client can elect to move to a debt settlement service on any validated account in lieu of obtaining a refund. If a client makes such an election, fees will no longer be collected for such account and debt settlement services will be performed for no additional fees.

**Debt Settlement**

If LPG is unable to invalidate any debt, you may elect to have LPG negotiate a settlement on your behalf with the concerned creditor without any additional fees being charged to or incurred by you for such service. Any settlement reached with any such creditor shall be your responsibility. At the point that you reach a settlement with such creditor, your payment to LPG will be reduced and re-amortized to adjust for the settled account being removed from the representation herein contemplated. Please see the refund policy above for more details.

**Actions Required of You**

You agree to provide LPG with any and all correspondence you receive from any creditor, credit bureau, attorney, or court of law. You further agree to keep a log of all communications, including telephonic and electronic communications, from any creditor or credit reporting agency.

**Right to Conduct Business Electronically and Contact You**

**Exhibit "15"**

You agree that LPG may contact you electronically and telephonically and that any and all business with LPG may be conducted electronically. You further agree that LPG may transmit data, including that regarding your credit profile, electronically. You further agree that any electronic communication carries the risk of disclosure to a third party and that LPG will not be held responsible for any such inadvertent disclosure of information. A facsimile or email transmission of this signed agreement, via an email attachment or otherwise, will be as valid as the original. This agreement may not be modified except in writing by both parties.

## Client Acknowledgements

By signing this agreement, you acknowledge that LPG has not instructed you to breach any contract, fail to make any required payment, or fail to perform any obligation you have lawfully incurred. LPG reserves the right to terminate this agreement if (a) client fails to make timely payment of the amount due under hereunder or (b) the client`s payments are returned multiple times for any reason. LPG will not pay your debts and does not guarantee that any debt you now have or may incur will be invalidated or settled in association with LPG's services. You understand and agree that you must forward any communication you receive in printed or electronic form from any creditor, court, or representative of other a creditor or a court to admin@coastprocessing.com and that you must keep a log of all telephonic communications with any creditor or credit reporting agency. **Do not sign this agreement until you have received and read the information statements and notices of cancellation required by state and federal law, even if otherwise advised.  By signing this agreement, you acknowledge receipt of these disclosures prior to the time of signing and agree to the terms of this agreement. You, the client, may cancel this agreement at any time before midnight CST of the 5th day after the date of execution of this agreement via an email to admin@coastprocessing.com.  In addition, you, the client may terminate LPG's services under this agreement at any time via an email to admin@coastprocessing.com.**

Client Signature: _Debra Price_____      Date: 2/17/2021

Co-Applicant Signature _____      Date: _____

### Creditor Information

| Creditor | Account # | Amount Owed |
|---|---|---|
| LENDINGCLU | | $7,007.00 |
| FNB OMAHA | | $4,413.00 |
| Cap one | | $1,450.00 |
| Cap one | | $1,331.00 |
| BARCLAYSBK | | $984.00 |
| | | **$15,185.00** |

**Exhibit "15"**

**Client Information**

Name: Debra Price

Address: 319 Putnam St, , Stranton PA 18508

Home

Cell Ph

Email:

Las 4 S

**Co-Client Information**

Name:

Address: , ,

Home Phone:

Cell Phone:

Email:

Last 4 SSN:

**Exhibit "15"**

## **Schedule of Payments**

I agree to this payment schedule – Client Initials: _DP_____

| Payment # | Process Date | Amount |
|---|---|---|
| 1 | Feb 26, 2021 | $260.10 |
| 2 | Mar 26, 2021 | $260.10 |
| 3 | Apr 26, 2021 | $260.10 |
| 4 | May 26, 2021 | $260.10 |
| 5 | Jun 28, 2021 | $260.10 |
| 6 | Jul 26, 2021 | $260.10 |
| 7 | Aug 26, 2021 | $260.10 |
| 8 | Sep 27, 2021 | $260.10 |
| 9 | Oct 26, 2021 | $260.10 |
| 10 | Nov 26, 2021 | $260.10 |
| 11 | Dec 27, 2021 | $260.10 |
| 12 | Jan 26, 2022 | $260.10 |
| 13 | Feb 28, 2022 | $260.10 |
| 14 | Mar 28, 2022 | $260.10 |
| 15 | Apr 26, 2022 | $260.10 |
| 16 | May 26, 2022 | $260.10 |
| 17 | Jun 27, 2022 | $260.10 |
| 18 | Jul 26, 2022 | $260.10 |
| 19 | Aug 26, 2022 | $260.10 |
| 20 | Sep 26, 2022 | $260.10 |
| 21 | Oct 26, 2022 | $260.10 |
| 22 | Nov 28, 2022 | $260.10 |
| 23 | Dec 27, 2022 | $260.10 |
| 24 | Jan 26, 2023 | $260.10 |
| 25 | Feb 27, 2023 | $260.10 |
| 26 | Mar 27, 2023 | $260.10 |
| 27 | Apr 26, 2023 | $260.10 |
| 28 | May 26, 2023 | $260.10 |
| 29 | Jun 26, 2023 | $260.10 |
| 30 | Jul 26, 2023 | $260.10 |
| 31 | Aug 28, 2023 | $260.10 |
| 32 | Sep 26, 2023 | $260.10 |
| 33 | Oct 26, 2023 | $260.10 |
| 34 | Nov 27, 2023 | $260.10 |
| 35 | Dec 26, 2023 | $260.10 |
| 36 | Jan 26, 2024 | $260.18 |

**Exhibit "15"**

**Electronic Payment Authorization**

Bank Name: COMMUNITY BANK N.A.

Name on Account: Debra Price

Account Type:    Checking

_____ Other (specify: _____ )

Routing Number: ██████████

Account Number: ██████████

Next Payment Date: Feb 26, 2021 Amount: $ 260.10

Recurring Payment Date: 26th

By signing below, I authorize and permit LPG or their designees, EPPS, Omnifund, Equipay, Forte, a CSG Company, or Authorize.NET to initiate electronic funds transfer via an Automated Clearing House system (ACH) from my account listed above.  I will also provide LPG with a voided check or savings deposit slip.

If necessary, LPG may make adjustments if errors have occurred during the transaction.  The date of the draft is listed above, however, if the draft date falls on a weekend or bank holiday, the debit transaction will take place on the next business day.  This authority will remain in effect until LPG is notified by the member in writing at least 5 days prior to the next scheduled draft date.  No other forms of cancellation by members will be observed.  If the debit is returned because of non-sufficient funds or uncollected funds, then the originator and its financial institution may reinitiate the entry up to two (2) times.  The reversal of funds from a client's account that was drafted in error cannot be made until seven business days from the draft date.  The member agrees to waive all rights of reversal or refusal of any payment on any draft that LPG may make against the member's bank account while services are performed.  The member agrees with all of the provisions and conditions outlined within.

**Acknowledgment of Refunds & Draft Date Changes**

ACH Refunds: If a refund is due such will be made through the ACH process only if the fees were made through the ACH process.  All refunds may take up to 10 days to process.  In the event my EFT or draft is returned from my bank unpaid, I agree that a fee of $25.00 or as allowed by law may be charged to my account via draft or EFT.  Furthermore, I warrant that I am authorized to execute this payment authorization and the above information is true and correct.  Draft Date Changes: A client may stop any ACH debit by providing written notice to LPG at least five (5) business days prior to the scheduled payment.  If you should need to notify us of your intent to cancel and/or revoke this authorization you must contact us five (5) days prior to the questioned debit being initiated.  Please call us at 949-593-0440 or at admin@coastprocessing.com.

Client Signature: *Debra Price*                    Date: 2/17/2021

**Exhibit "15"**

ID: 3522897 Signed: 2021-02-17T14:29:29-06:00

Printed Name:      Debra Price

**Exhibit "15"**

ID: 3522897 Signed: 2021-02-17T14:29:29-06:00

**Electronic Funds Transfer (EFT) Authorization to Debit Bank Account**

Account Owner Name: Debra Price

Social Security Number: ███████                    Birth Date: ███████

Address:319 Putnam St          City:Stranton          State:PA    Zip:  18508

Mobile Phone #:                  Bank Name:  COMMUNITY BANK N.A.

Routing Number: ███████              Account Number:  ███████

Total Amount of Debit: $260.10        Date of Next Debit:Feb 26, 2021    Checking or Saving: Checking

I hereby apply for and agree to establish a non-interest bearing special purpose account (the "Account") with a bank ("Bank") selected by EPPS, LLC and/or its successors for the purpose of accumulating funds to pay for such goods and services as I so direct EPPS, LLC to perform.  This application is subject to Bank's customer identification program, as required by the USA PATRIOT ACT and other applicable laws, and accordingly, I hereby represent that the above information is true and complete to the best of my knowledge and belief.  The bank account information provided above may be subject to account validation processes to include pre-notation and a $0.01 micro-deposit.

| Schedule of Fees and Charges | |
| --- | --- |
| Monthly Banking Fee: | Included |
| ACH/EFT Fee Per Transaction | Included |
| Chargeback/Late Return Fee | Included |
| NSF Fee | Included |
| Account Closer Fee | Included |
| **PREMIUM DISBURSEMENT SERVICES** | |
| Wire Transfer | Included |
| FedEx/Overnight Next Day | Included |
| 2nd Day Check With Tracking | Included |

I hereby authorize Bank, directly or through EPPS, LLC, and/or its service providers, to administer the account on my behalf by (a) periodically transferring and depositing funds to the Account, via any payment media currently in use, and (b) periodically disbursing funds from the Account pursuant to instructions that I may give from time to time.  I hereby authorize payments from the Account for the fees and charges provided for in this application and in the agreement.  I hereby grant permission for Bank to share information regarding the Account with EPPS, LLC, and any other service provider to facilitate the transactions I may initiate that involve the Account, and with any other party that is essential to the administration of the Account on my behalf.  My signature below provides permission to be contacted by phone at the number provided with this authorization.  A payment reminder will be sent to your phone number via Text Messaging prior to the payment scheduled above. This authorization shall remain in full force and effect until I provide a verbal or written termination notice to EPPS.  Any such notice, and any other written notice that is provided for in this Application or the Agreement, shall be sent to EPPS, LLC at the address set forth in the Agreement. "EPPS-Ph# 800-215-3484" will appear on your bank statement

Account Holder's Signature:  *Debra Price*                    Date: 2/17/2021

**Exhibit "15"**

ID: 3522897 Signed: 2021-02-17T14:29:29-06:00

E-Signature Completion Certificate





## Your Document Was Successfully Signed!

Congratulations, your document(s) was successfully signed. Please find
details below related to your e-signature submission.

### ℹ️ Signing Details

| | |
|---|---|
| **Document ID** | **Signer Email** |
| 3522897 | debbieprice98@yahoo.com |
| **Document Title** | **Signer IP Address** |
| Legal Service Agreement with LPG - ASF ( English ) | 73.175.109.248 |
| **Sender IP Address** | **Timestamp** |
| 45.22.90.58 | 2021-02-17T14:29:29-06:00 |
| **Number Of Signers** | **Document MD5 Hash** |
| 1 | d41d8cd98f00b204e9800998ecf8427e |

### ⚙️ Document Audit

✔ Sent at 2021-02-17T14:25:23-06:00 from IP 45.22.90.58

✔ Delivered to debbieprice98@yahoo.com at 2021-02-17T14:27:48-06:00 from 73.175.109.248

✔ Adopted Signature at 2021-02-17T14:28:04-06:00 from 73.175.109.248

✔ Completed Signing at 2021-02-17T14:29:29-06:00 from 73.175.109.248

✔ PDF Generated at 2021-02-17T14:29:29-06:00

Sending Agent
Mozilla/5.0 (iPhone; CPU iPhone OS 14_4 like Mac OS X) AppleWebKit/605.1.15 (KHTML, like Gecko) Version/
14.0.3 Mobile/15E148 Safari/604.1

**Exhibit "15"**

JS 44 (Rev 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

DEBRA PRICE

**(b)** County of Residence of First Listed Plaintiff   Lackawanna
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Robert P. Cocco, P.C.,
1500 Walnut St., Ste.900, Philadelphia, PA 19102
215-351-0200

## DEFENDANTS

LITIGATION PRACTICE GROUP PC

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U S Government
Plaintiff

☑ 3  Federal Question
*(U.S. Government Not a Party)*

☐ 2  U S Government
Defendant

☐ 4  Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☑ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☑ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | **PERSONAL INJURY** | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 365 Personal Injury - Product Liability | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | **PERSONAL PROPERTY** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veterans Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | | ☐ 861 HIA (1395ff) |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) |

| REAL PROPERTY | CIVIL RIGHTS | PRISONER PETITIONS | | ☐ 864 SSID Title XVI |
|---|---|---|---|---|
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 751 Family and Medical Leave Act | ☐ 865 RSI (405(g)) |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | ☐ 791 Employee Retirement Income Security Act | ☐ 870 Taxes (U S Plaintiff or Defendant) |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 |
| ☐ 245 Tort Product Liability | ☐ 445 Amer w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | ☐ 446 Amer w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | ☐ 891 Agricultural Acts |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | ☐ 893 Environmental Matters |
| | | ☐ 550 Civil Rights | | ☐ 895 Freedom of Information Act |
| | | ☐ 555 Prison Condition | | ☐ 896 Arbitration |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| | | | | ☐ 950 Constitutionality of State Statutes |

## V. ORIGIN *(Place an "X" in One Box Only)*

☑ 1 Original
Proceeding

☐ 2 Removed from
State Court

☐ 3 Remanded from
Appellate Court

☐ 4 Reinstated or
Reopened

☐ 5 Transferred from
Another District
*(specify)*

☐ 6 Multidistrict
Litigation -
Transfer

☐ 8 Multidistrict
Litigation -
Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):* CROA, 15 U.S.C.§1679 et seq.

Brief description of cause: inaccurate credit reporting dispute

## VII. REQUESTED IN COMPLAINT:

☑ CHECK IF THIS IS A CLASS ACTION
UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☑ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*   JUDGE _____   DOCKET NUMBER _____

DATE
5/13/22

SIGNATURE OF ATTORNEY OF RECORD
/s/Robert P. Cocco

Exhibit 15

FOR OFFICE USE ONLY

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG JUDGE _____

**Exhibit "15"**

Exhibit "15"

# Exhibit "16"

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

KENNETH TOPP,

    Plaintiff,

v.

THE LITIGATION PRACTICE GROUP,
PC,

    Defendants.

CIVIL COMPLAINT

CASE NO.6:22-cv-00814

JURY TRIAL DEMANDED

## COMPLAINT

Now comes KENNETH TOPP ("Plaintiff"), by and through the undersigned, complaining as to the conduct of THE LITIGATION PRACTICE GROUP, PC ("Defendant") as follows:

### NATURE OF THE ACTION

1.   Plaintiff brings this action for damages pursuant to the Credit Repair Organizations Act ("CROA") under 15 U.S.C. § 1679 *et seq.,* the Texas Credit Services Organizations Act ("TCSOA") under Tex. Fin. Code § 393.101 *et seq.,* and the Texas Consumer Debt Management Services Act ("TCDSMA") under Tex. Fin. Code § 394.201 *et seq.,* in connection with Defendants' unlawful conduct.

### JURISDICTION AND VENUE

2.   This action arises under and is brought pursuant to the CROA.  Subject matter jurisdiction is conferred upon this Court by 15 U.S.C §1679, as well as 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States. Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. §1367.

1

**Exhibit "16"**

3.  Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Defendant conducts business within the Western District of Texas and a substantial portion of the events or omissions giving rise to the instant claims occurred within the Western District of Texas.

PARTIES

4.  Plaintiff is a "person," as defined by 47 U.S.C. § 153(39), and consumer over 18 years of age, residing in Killeen, Texas, which lies within the Western District of Texas.

5.  Defendant is a credit repair organization, debt settlement provider, and law corporation that offers its customers the ability to eliminate and resolve their debt issues through Defendant's myriad services. Defendant is a professional corporation organized under the laws of the state of California with its principal place of business located at 17542 17th Street, Suite 100, Tustin, California.

6.  Defendant is a "person" as defined by 47 U.S.C. §153(39).

7.  Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives and insurers at all times relevant to the instant action.

FACTS SUPPORTING CAUSES OF ACTION

8.  In approximately May of 2022, Plaintiff had numerous delinquent obligations which he wanted to address and was seeking out the assistance of various debt relief and credit repair companies.

9.  Plaintiff subsequently happened upon Defendant and its services.

10. Defendant advised that its services included disputing inaccurate information that was appearing on Plaintiff's credit reports and impacting his credit score, and would similarly assist

2

**Exhibit "16"**

Plaintiff in reaching negotiated settlements with his various creditors in order to resolve the obligations for less than the balance being sought by such creditors.

11. Defendant represented that its services would include setting up a bank account, into which Plaintiff's monthly payments would go and from which Defendant would take funds to perform its services and pay Plaintiff's creditors when settlements were reached.

12. Plaintiff found Defendant's services desirable as he believed Defendant would be able to get certain information removed from his credit report and would actively resolve his obligations, and so Plaintiff agreed to utilize Defendant's services and entered into a contract for the provision of the same.

13. However, after one month of using Defendant's services, and paying approximately $350, Plaintiff cancelled his agreement with Defendant as he was frustrated by the lack of action taken by Defendant.

14. Upon information and belief, rather than actually provide the services Defendant represented it would provide, Defendant instead applied Plaintiff's payments towards various upfront flat-fees that were unrelated to any work performed by Defendant.

15. Defendant thus charged Plaintiff for its services before engaging in any performance of its duties under the agreement, let alone completely performing the services justifying its retention of the charged fees.

16. After Plaintiff attempted to cancel his agreement with Defendant, Defendant began bombarding Plaintiff with phone calls.

17. Plaintiff politely requested that Defendant cease in contacting him at the beginning of July 2022.

3

**Exhibit "16"**

18. However, Defendant repeatedly contacted Plaintiff despite his demands that such contacts cease up until the filing of this Complaint.

19. Defendant has failed to refund Plaintiff his payments despite being obligated to do so as it failed to perform any services justifying its retention of such fees.

20. Frustrated, distressed, and confused over Defendant's conduct, Plaintiff spoke with the undersigned regarding his rights.

21. Plaintiff has suffered concrete harm as a result of Defendant's actions, including but not limited to, emotional distress, aggravation, mental anguish, pecuniary harm stemming from payments made for deficient credit repair services, out of pocket damages, as well as numerous violations of his state and federally protected interests – interests which were harmed put at a material risk of harm stemming from Defendant's conduct.

## COUNT I – VIOLATIONS OF THE CREDIT REPAIR ORGANIZATIONS ACT

22. Plaintiff repeats and realleges paragraphs 1 through 20 as though fully set forth herein.

23. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1679a(1) of the CROA.

24. Defendant is a "credit repair organization" as defined by §1679a(3) of the CROA, as it is a person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of improving a consumer's credit, credit history, or credit rating, or providing assistance to any consumer with regard to any activity or service for the purpose of improving a consumer's credit.

25. Defendant's represented services in disputing and seeking to remove information from Plaintiff's credit report renders it a credit repair organization under the CROA, as does its conduct in purporting to resolve obligations on behalf of consumers for less than the full balance owed.

4

**Exhibit "16"**

### a. Violations of CROA §§ 1679b(a)(3)-(4)

26. The CROA, pursuant to 15 U.S.C. § 1679b(a)(3) prohibits any person from "mak[ing] or us[ing] any untrue or misleading representation of the services of the credit repair organization." Additionally, pursuant to 15 U.S.C. § 1679b(a)(4), any person is prohibited from "engag[ing], directly or indirectly, in any act, practice, or course of business that constitutes or results in the commission of, or an attempt to commit, a fraud or deception on any person in connection with the offer or sale of the services of the credit repair organization."

27. Defendant violated the above referenced provisions of the CROA through its misrepresentations and deception as to the nature of the credit repair services it could provide Plaintiff. Defendant represented to Plaintiff that his payments would go towards resolving his enrolled obligations; however, he later found out the nature of Defendant's deceptive representation as his initial payment went entirely towards Defendant's fees and that Plaintiff would need to make payments beyond his monthly payments to settle any debts. Defendant engaged in these deceptive representations and omission regarding the nature of its services and the charged fees so as to deprive Plaintiff of information that, had it been clarified, would have resulted in Plaintiff refusing to use Defendant's services. Upon information and belief, Defendant engages in this behavior on a persistent and frequent basis in order to dupe vulnerable and desperate consumers into making payments under false and deceptive pretenses.

### b. Violations of CROA § 1679b(b)

28. The CROA, pursuant to 15 U.S.C. § 1679b(b), provides that "[n]o credit repair organization may charge or receive any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform for any consumer before such service is fully performed."

**Exhibit "16"**

29. Defendant violated § 1679b(b) through its charging and receiving of money for services agreed to perform before such services were fully performed. Defendant improperly charged and retained Plaintiff's payment despite not performing, let alone completely performing, the services justifying the retention of such fees and charges.

### c. Violation of CROA § 1679c

30. The CROA provides that a credit repair organization must provide consumers with certain written disclosures in the contract underpinning the provision of credit repair services to consumers. Pursuant to 15 U.S.C. § 1679c(b), "the written statement required under this section shall be provided as a document which is separate from any written contract or other agreement between the credit repair organization and the consumer or any other written material provided to the consumer."

31. Defendant violated 15 U.S.C. §§ 1679c(a)-(b) through its failure to provide the written disclosures required under § 1679c. Defendant never provided such disclosures, nor did it provide a separate document containing such disclosures.

### d. Violation of CROA §§ 1679d(4) & 1679e

32. The CROA, pursuant to 15 U.S.C. § 1679d(4), requires credit repair organization to include, in the contract between them and a consumer, "a conspicuous statement in bold face type, in immediate proximity to the space reserved for the consumer's signature on the contract, which reads as follows: 'You may cancel this contract without penalty or obligation at any time before midnight of the 3rd business day after the date on which you signed the contract. See the attached notice of cancellation form for an explanation of this right.'" 15 U.S.C. § 1679e further outlines the extent of a consumer's cancellation rights under CROA while requiring such disclosure to be given to consumers in writing.

6

**Exhibit "16"**

33. Defendant violated 15 U.S.C. §§ 1679d(4) & 1679e through its complete failure to provide the above disclosure in immediate proximity to the space reserved for Plaintiff's signature on the contract, as well as its failure to provide the notice of cancellation to Plaintiff.

**e. Violation of CROA § 1679f(b)**

34. The CROA, pursuant to 15 U.S.C. § 1679f(b) provides that, "[a]ny attempt by any person to obtain a waiver from any consumer of any protection provided by or any right of the consumer under [the CROA] shall be treated as a violation of [the CROA]."

35. Defendant violated 15 U.S.C. § 1679f(b) through its attempt to obtain Plaintiff's waiver of the protections afforded him under the CROA. Defendant's contract contain numerous efforts to obtain a waiver of Plaintiff's vital consumer protection rights protected by the CROA, including but not limited to the protection regarding the time of when Defendant's fees are "earned" and when Defendant may properly collect such fees.

36. The CROA further dictates that any contract found not to be in compliance with the CROA "shall be treated as void" and "may not be enforced by any Federal or State court or any other person." 15 U.S.C. § 1679f(c).

WHEREFORE, Plaintiff, KENNETH TOPP, respectfully requests that the Honorable Court enter judgment in his favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned bodies of law;

b. Awarding Plaintiff actual damages to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(1);

c. Awarding Plaintiff punitive damages, in an amount to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(2)(A);

d. Awarding Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. § 1679g(a)(3); and

**Exhibit "16"**

e. Awarding any other relief as the Arbitrator deems just and appropriate.

### COUNT II – VIOLATIONS OF THE TEXAS CREDIT SERVICES ORGANIZATION ACT

37. Plaintiff restates and realleges paragraphs 1 through 46 as though fully set forth herein.

38. Plaintiff is a "consumer" as defined by Tex. Fin. Code § 393.001(1).

39. Defendant is a "credit services organization" as defined by Tex. Fin. Code § 393.001(3).

**a. Violations of Tex. Fin. Code §§ 393.20 & 393.202**

40. The TCSOA, pursuant to Tex. Fin. Code § 393.201, outlines certain requirements of the contracts entered into between consumers and credit services organizations. § 393.202 discusses the nature of a consumer's right to cancel contracts and how such right must be disclosed to consumers.

41. Defendant violated §§ 393.201(b)(1)-(4) & 393.202 through their failure to provide the information required under Texas law in the contract with Plaintiff. Defendant's contract plainly fails to contain the requisite information.

**b. Violations of Tex. Fin. Code § 393.302**

42. The TCOSA, pursuant to Tex. Fin. Code § 393.302, prohibits credit service organizations from receiving money for their services before such services are fully performed.

43. Defendant violated § 393.302 in much the same way it violated § 1679b(b) of the CROA.

**c. Violations of Tex. Fin. Code §§ 393.304(1) & 393.305**

44. The TCSOA, pursuant to Tex. Fin. Code § 393.304(1), prohibits a credit services organization from "mak[ing] or us[ing] a false or misleading representation in the offer or sale of the services of the organization." Similarly, pursuant to Tex. Fin. Code § 393.305, "[a] credit services organization or a representative of the organization may not directly or indirectly engage

8

**Exhibit "16"**

in a fraudulent or deceptive act, practice, or course of business relating to the offer or sale of the services of the organization."

45. Defendant violated §§ 393.304(1) & 393.305 in much the same way it violated §§ 1679b(a)(3)-(4) of the CROA.

WHEREFORE, Plaintiff, KENNETH TOPP, respectfully requests that the Honorable Court enter judgment in his favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. Awarding Plaintiff actual damages pursuant to Tex. Fin. Code § 393.503(a)(1);

c. Awarding Plaintiff punitive damages pursuant to Tex. Fin. Code § 393.503(b);

d. Enjoin Defendant from further violations of law pursuant to Tex. Fin. Code § 393.502,

e. Awarding Plaintiff's costs and reasonable attorney fees, pursuant to Tex. Fin. Code §§ 393.503(a)(2)-(3); and,

f. Awarding any other relief the Honorable Court deems just and appropriate.

## COUNT III – VIOLATIONS OF THE TEXAS CONSUMER DEBT MANAGEMENT SERVICES ACT

46. Plaintiff restates and realleges paragraphs 1 through 45 as though fully set forth herein.

47. Plaintiff is a "consumer" as defined by Tex. Fin. Code § 394.202(4).

48. Defendant is a "provider" of "debt management service" as defined by Tex. Fin. Code §§ 394.202(6) & (10).

### a. Violations of Tex. Fin. Code § 394.207

49. The TCDMSA, pursuant to Tex. Fin. Code § 394.207, provides that "[a] provider may not engage in false or deceptive advertising,"

50. Defendant violated § 394.207 in much the same way its deceptive representations regarding the nature of, and fees surrounding, its services violated § 1679b(a)(3)-(4) of the CROA.

9

**Exhibit "16"**

**b. Violations of Tex. Fin. Code § 394.209**

51. The TCDMSA, pursuant to Tex. Fin. Code § 394.209, outlines the various requirements of the contracts entered into between debt management providers and consumers.

52. Defendant violated § 394.209(b) through its failure to include the required statements, disclosures, and information in its contract with Plaintiff.

**c. Violations of Tex. Fin. Code § 394.210**

53. The TCDMSA, pursuant to Tex. Fin. Code § 394.210(c), provides that "[a] provider may not impose fees or other charges upon a consumer or receive payment for debt management services until the consumer has entered into a debt management service agreement with the provider that complies with Section 394.209."

54. Defendant violated § 394.210(c) through its charging of Plaintiff for its debt management services without entering into a contract which complies with Texas law.

**d. Violations of Tex. Fin. Code § 394.212**

55. The TCDMSA, pursuant to Tex. Fin. Code § 394.212, outlines a number of prohibited practices on the part of providers.

56. Pursuant to § 394.212(a)(9), a provider may not "engage in an unfair, deceptive, or unconscionable act or practice in connection with a service provided to a consumer."

57. Defendant violated § 394.212(a)(9) in much the same way it violated §§ 1679b(a)(3)-(4) of the CROA.

**e. Violations of Tex. Fin. Code § 394.213**

58. Pursuant to § 394.213, "a provider has a duty to a consumer who receives debt management services from the provider to ensure that client money held by the provider is managed properly at all times."

10

**Exhibit "16"**

59. Defendant violated § 394.213 through its failure to ensure that Plaintiff's money was managed properly. As discussed above, Defendant failed to meaningfully perform the services it represented, and similarly allowed Plaintiff's funds to be mismanaged and applied to unnecessary legal fees which were never actually performed.

WHEREFORE, Plaintiff, KENNETH TOPP, respectfully requests that the Honorable Court enter judgment in his favor as follows:

a.  Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b.  Awarding Plaintiff actual damages pursuant to Tex. Fin. Code § 394.215(c);

c.  Awarding Plaintiff punitive damages pursuant to Tex. Fin. Code § 394.215(c);

d.  Enjoin Defendant from further violations of law pursuant to Tex. Fin. Code § 394.215(d);

e.  Awarding Plaintiff's costs and reasonable attorney fees, pursuant to Tex. Fin. Code § 394.215(c); and,

f.  Awarding any other relief the Honorable Court deems just and appropriate.

Dated: July 26, 2022

Respectfully submitted,

s/ Nathan C. Volheim
Nathan C. Volheim, Esq. #6302103
Counsel for Plaintiff
Admitted in the Western District of Texas
Sulaiman Law Group, Ltd.
2500 South Highland Ave., Suite 200
Lombard, Illinois 60148
(630) 568-3056 (phone)
(630) 575-8188 (fax)
nvolheim@sulaimanlaw.com

11

**Exhibit "16"**

JS 44 (Rev 06/17)                              CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| KENNETH TOPP | THE LITIGATION PRACTICE GROUP, PC |

**(b)** County of Residence of First Listed Plaintiff    Bell County
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Sulaiman Law Group, Ltd.
2500 South Highland Avenue, Suite 200, Lombard, IL 60148
(630) 575-8181

Attorneys *(If Known)*

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

- ☐ 1  U S Government Plaintiff
- ☒ 3  Federal Question *(U.S. Government Not a Party)*
- ☐ 2  U S Government Defendant
- ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*                    Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | Slander | Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 340 Marine | | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☒ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 870 Taxes (U S Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

**V. ORIGIN** *(Place an "X" in One Box Only)*

- ☒ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from Another District *(specify)*
- ☐ 6  Multidistrict Litigation - Transfer
- ☐ 8  Multidistrict Litigation - Direct File

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Credit Repair Organizations Act ("CROA") under 15 U.S.C. § 1679 et seq.,
Brief description of cause:
Unlawful Collection Debt Collection Practices

**VII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:    ☒ Yes    ☐ No

**VIII. RELATED CASE(S) IF ANY**    *(See instructions):*    JUDGE _____    DOCKET NUMBER _____

DATE    06/16/2022
SIGNATURE OF ATTORNEY OF RECORD    s:/ Nathan C. Volheim

**FOR OFFICE USE ONLY**

RECEIPT #    AMOUNT    APPLYING IFP    **Exhibit "16"**    JUDGE    MAG JUDGE

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)**   **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

 **(b)**   **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

 **(c)**   **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**   **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.**   **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**   **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.**   **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.**   **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

**VII.**   **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**   **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

**Exhibit "16"**

# Exhibit "17"

1
2
3
4
5
6

**SULAIMAN LAW GROUP, LTD.**
Bobby C. Walker, Esq. (State Bar No. 321788)
2500 South Highland Avenue, Suite 200
Lombard, IL 60148
Telephone: (630) 575-8181 Ext. 149
Facsimile: (630) 575-8188
Email: bwalker@sulaimanlaw.com
Attorney for Plaintiff

7

8          **UNITED STATES DISTRICT COURT**

9           **EASTERN DISTRICT OF CALIFORNIA**

10

11   JOHNNY W. RIZO,                    | Case No.

12              Plaintiff,             | **COMPLAINT FOR DAMAGES**

13        v.                           | **1. VIOLATIONS OF THE CREDIT REPAIR ORGANIZATIONS ACT, 15 U.S.C. §1679 ET SEQ.;**

14   THE LITIGATION PRACTICE           | **2. VIOLATION OF THE CALIFORNIA CREDIT SERVICES**
15   GROUP, PC,                        | **ORGANIZATIONS ACT OF 1984,**
16              Defendant.             | **CAL. CIV. CODE §1789.10 ET SEQ.**

17

18                                     | **DEMAND FOR JURY TRIAL**

19

20                    **COMPLAINT**

21

22          NOW comes JOHNNY W. RIZO ("Plaintiff"), by and through the

23   undersigned, complaining as to the conduct of THE LITIGATION PRACTICE

24   GROUP, PC ("Defendant") as follows:

25                    **NATURE OF THE ACTION**

26
27   1. Plaintiff brings this action for damages pursuant to the Credit Repair

28   Organizations Act ("CROA") under 15 U.S.C. § 1679 *et seq.* the California Credit

1

**Exhibit "17"**

Services Organizations Act of 1984 ("CCSOA") pursuant to Cal. Civ. Code §1789.10 *et seq.* for Defendant's unlawful conduct.

### JURISDICTION AND VENUE

2.  This action arises under and is brought pursuant to the CROA.  Subject matter jurisdiction is conferred upon this Court by 15 U.S.C §1679, as well as 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States. Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. §1367.

3.  Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Defendant conducts business within the Eastern District of California and a substantial portion of the events or omissions giving rise to the claims occurred within the Eastern District of California.

### PARTIES

4.  Plaintiff is a natural "person," as defined by 47 U.S.C. § 153(39), over 18 years of age, residing in Stockton, California, which lies within the Eastern District of California.

5.  Defendant is a credit repair organization, debt settlement provider, and law corporation that offers its customers the ability to eliminate and resolve their debt issues through Defendant's myriad services, including assisting consumers with resolving debts that would otherwise be unresolved, as well as through disputing information appearing on consumer's credit reports so that such information could be removed and in turn improve consumer's credit scores. Defendant is a professional

2

**Exhibit "17"**

corporation organized under the laws of the state of California with its principal place of business located at 17542 17th Street, Suite 100, Tustin, California.

6.  Defendant is a "person" as defined by 47 U.S.C. §153(39).

7.  Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives and insurers at all times relevant to the instant action.

### FACTS SUPPORTING CAUSES OF ACTION

8.  In approximately 2020, Plaintiff was seeking to improve his credit and to take care of some obligations that were causing him financial difficulty.

9.  Plaintiff subsequently happened upon an advertisement offered by Defendant, located on social media, which offered consumers the ability to improve their credit through certain services.

10. Upon speaking with Plaintiff, Defendant advised that its services included disputing information that was appearing on, and negatively impacting, Plaintiff's credit reports, and through such efforts, Defendant would get the debts rendered uncollectable, in turn removing any obligation for Plaintiff to make payment on such debts.

11. Defendant explicitly represented that its services would improve Plaintiff's credit history, score, and rating, as Defendant advised that through the disputes, Plaintiff's credit report would improve by having negative information removed from his credit report.

3

**Exhibit "17"**

12. Defendant further advised that because Plaintiff would not have pay these debts, his credit score would improve.

13. Plaintiff was explicitly informed by one of Defendant's representatives that "My team and I will be working with you over these next months to invalidate your debts with the creditors and collection agencies and to **restore your credit**." (emphasis added).

14. Defendant affirmatively represented that this information would be removed from Plaintiff's credit reports promptly upon signing up with Defendant's services

15. Plaintiff found Defendant's services desirable as he believed Defendant would be able to get certain information removed from his credit report and would actively resolve his obligations, and so Plaintiff agreed to utilize Defendant's services and entered into a contract for the provision of the same.

16. Plaintiff subsequently began making his monthly payments to Defendant, which totaled $130.00 per month.

17. Defendant inappropriately charged Plaintiff for its services before performing any of the services it agreed to perform for Plaintiff.

18. After months of making payments, Plaintiff saw no improvement to his credit score despite Defendant's representations to the contrary.

19. Plaintiff would speak with Defendant about what it was doing and looking for updates, and Defendant persistently strung Plaintiff along assuring him that it was working on it and that its services would ultimately work.

4

**Exhibit "17"**

20. Due to Defendant's failure to deliver any of the services it represented it would perform, Plaintiff cancelled his services with Defendant.

21. Despite Plaintiff cancelling his agreement and Defendant failing to provide any of the services for which it was paid, Defendant failed to refund Plaintiff's payments for services Defendant failed to perform.

22. Frustrated and distressed over Defendant's conduct, Plaintiff spoke with the undersigned regarding his rights.

23. Plaintiff has suffered concrete harm as a result of Defendant's actions, including but not limited to, emotional distress, aggravation, mental anguish, pecuniary harm, denial of the benefit of his bargain, making payments for deficient credit repair services, relying upon Defendant's representations to his detriment, being subjected to improper fees, as well as a violation of his state and federally protected interests – interests which were harmed and put at a material risk of harm as a result of Defendant's conduct.

**COUNT I – VIOLATIONS OF THE CREDIT REPAIR ORGANIZATIONS ACT**

24. Plaintiff repeats and realleges paragraphs 1 through 23 as though fully set forth herein.

25. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1679a(1) of the CROA.

26. Defendant is a "credit repair organization" as defined by §1679a(3) of the CROA, as it is a person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform any service, in return for the payment of money or

5

**Exhibit "17"**

other valuable consideration, for the express or implied purpose of improving a

consumer's credit, credit history, or credit rating, or providing assistance to any

consumer with regard to any activity or service for the purpose of improving a

consumer's credit.

27.Defendant is a credit repair organization as it explicitly holds its services out

as offering consumers the ability to

### a. Violations of CROA § 1679b(a)

28.The CROA, pursuant to 15 U.S.C. § 1679b(a)(3) prohibits any person from

"mak[ing] or us[ing] any untrue or misleading representation of the services of the

credit repair organization." Additionally, pursuant to 15 U.S.C. § 1679b(a)(4), any

person is prohibited from "engag[ing], directly or indirectly, in any act, practice, or

course of business that constitutes or results in the commission of, or an attempt to

commit, a fraud or deception on any person in connection with the offer or sale of

the services of the credit repair organization."

29. Defendant violated the above referenced provisions of the CROA through its

misrepresentations and deception as to the nature of the credit repair services it

would provide Plaintiff. Defendant affirmatively represented the efficacy of its

services, yet failed to provide the represented results in the manner represented.

Defendant said the issues would be resolved promptly, yet no action or results were

delivered despite Plaintiff's maintenance of payments for months. Defendant's

conduct harmed Plaintiff as he agreed to use Defendant's services and continue

**Exhibit "17"**

making payments under the false belief that the debts would be removed from his credit report and would no longer be collectable, yet Defendant failed to deliver the services inducing Plaintiff's payments.

30.Defendant further violated the above referenced provisions of the CROA through the generally deceptive and fraudulent nature of its business practices. Defendant represented to Plaintiff, and represents to consumers, that its debt validation services would be effective at getting the debts rendered uncollectable. However, Defendant fails to sufficiently explain the unlikelihood with which, through disputes alone, debts would be rendered noncollectable or that a consumer's obligation would otherwise be extinguished. Upon information and belief, Defendant offers its debt validation program for the purpose of inducing consumers into using Defendant's services, despite Defendant knowing them to be ineffective, so that Defendant can subsequently provide additional services, and charge further sums, for subsequent services.

**b. Violations of CROA § 1679b(b)**

31.The CROA, pursuant to 15 U.S.C. § 1679b(b), provides that "[n]o credit repair organization may charge or receive any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform for any consumer before such service is fully performed."

32.Defendant violated § 1679b(b) through its charging and receiving of money for services it agreed to perform for Plaintiff before such services were fully

7

performed. Defendant charged Plaintiff up-front fees and monthly fees unrelated to any services Defendant fully performed.

### c. Violation of CROA § 1679c

33. The CROA provides that a credit repair organization must provide consumers with certain written disclosures in the contract underpinning the provision of credit repair services to consumer. Pursuant to 15 U.S.C. § 1679c(b), "the written statement required under this section shall be provided as a document which is separate from any written contract or other agreement between the credit repair organization and the consumer or any other written material provided to the consumer."

34. Defendant violated 15 U.S.C. § 1679c through its failure to provide the written disclosures required under § 1679c. Defendant never provided such disclosures, nor did it provide a separate document containing such disclosures.

### d. Violation of CROA §§ 1679d & 1679e

35. The CROA, pursuant to 15 U.S.C. § 1679d(4), requires credit repair organization to include, in the contract between them and a consumer, "a conspicuous statement in bold face type, in immediate proximity to the space reserved for the consumer's signature on the contract, which reads as follows: 'You may cancel this contract without penalty or obligation at any time before midnight of the 3rd business day after the date on which you signed the contract. See the attached notice of cancellation form for an explanation of this right.'" 15 U.S.C. §

8

**Exhibit "17"**

1679e further outlines the extent of a consumer's cancellation rights under the CROA, while requiring such disclosure to be given to consumers in writing and separate from the contrat.

36. Defendant violated 15 U.S.C. § 1679d through its failure to provide the requisite statutory disclosure in the manner required by the CROA. Defendant further violated § 1679e through its failure to provide a notice of cancellation form to Plaintiff in its contract.

37. As a result of Defendant's deficient contract, the contract should be deemed void and unenforceable. 15 U.S.C. § 1679f(c).

### e.  Violation of CROA § 1679f(b)

38. The CROA, pursuant to 15 U.S.C. § 1679f(b) provides that, "[a]ny attempt by any person to obtain a waiver from any consumer of any protection provided by or any right of the consumer under [the CROA] shall be treated as a violation of [the CROA]."

39. Defendant violated 15 U.S.C. § 1679f(b) through its attempt to obtain Plaintiff's waiver of the protections afforded him under the CROA. Defendant's contract attempts to get consumers to acknowledge the receipt of statutorily required disclosures which were never provided. Defendant's contract further attempts to waive the protection for consumers against credit repair organizations charging before the full completion of services, as it attempts to get consumers to agree that

**Exhibit "17"**

Defendant's fees are "earned" upon payment by Plaintiff, rather than when they fully complete the services agreed to perform, as required by the CROA.

40. The CROA further dictates that any contract found not to be in compliance with the CROA "shall be treated as void" and "may not be enforced by any Federal or State court or any other person." 15 U.S.C. § 1679f(c).

WHEREFORE, Plaintiff, JOHNNY W. RIZO, respectfully requests that this Honorable Court enter judgment in his favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned bodies of law;

b. Awarding Plaintiff actual damages to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(1);

c. Awarding Plaintiff punitive damages, in an amount to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(2)(A);

d. Awarding Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. § 1679g(a)(3); and

e. Awarding any other relief as this Honorable Court deems just and appropriate.

## COUNT II – VIOLATIONS OF THE CALIFORNIA CREDIT SERVICES ORGANIZATION ACT OF 1984

41. Plaintiff restates and realleges paragraphs 1 through 40 as though fully set forth herein.

42. Plaintiff is a "buyer" as defined by Cal. Civ. Code § 1789.12(c).

43. Defendant is a "credit services organization" as defined by Cal. Civ. Code § 1789.12(a).

10

**Exhibit "17"**

### a. Violation of CCSOA § 1789.13

44. The CCSOA, pursuant to Cal. Civ. Code § 1789.13, provides a list of prohibited conduct for credit services organizations.

45. Pursuant to § 1789.13(a), a credit services organization cannot "charge or receive any money or other valuable consideration prior to full and complete performance of the services the credit services organization has agreed to perform for or on behalf of the buyer."

46. Defendant violated § 1789.13(a) when it charged and received money from Plaintiff without fully completing the services. As alluded to *supra.,* Defendant improperly retained Plaintiff's payments without first fully performing the services justifying such retained payments.

47. Pursuant to § 1789.13(g), credit services organization cannot "[m]ake or use untrue or misleading representations in the offer or sale of the services of a credit services organization." Similarly, pursuant to § 1789.13(h), a credit services organization cannot "[e]ngage, directly or indirectly, in an act, practice, or course of business that operates or would operate as a fraud or deception upon a person in connection with the offer or sale of the services of a credit service organization."

48. Defendant violated §§ 1789.13(g)&(h) through its deceptive and misleading representations regarding the nature and efficacy of its services, as discussed *supra.*

### b. Violations of CCSOA §§ 1789.14-1789.15

11

**Exhibit "17"**

49. The CCSOA, pursuant to Cal. Civ. Code § 1789.15, provides the extent of information that must be provided to a buyer by a credit services organization under § 1789.14.

50. Defendant violated these provisions of the CCSOA by failing to provide Plaintiff such disclosures and similarly failing to provide Plaintiff a copy of the disclosures.

### c. Violations of CCSOA § 1789.16

51. The CCSOA, much like the CROA, requires credit services organizations to include a conspicuous statement regarding a consumer's right to cancel a contract, and also provide a duplicate "Notice of Cancellation" form. *See* Cal. Civ. Code §§ 1789.16(a)(1), (b).

52. Defendant violated §§ 1789.16(a)(1) and (b) by failing to provide the required disclosure in the manner required by California law, and further by failing to provide a separate notice of cancellation form.

WHEREFORE, Plaintiff, JOHNNY W. RIZO, respectfully requests that this Honorable Court enter judgment in his favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. Awarding Plaintiff actual damages pursuant to Cal. Civ. Code § 1789.21(a);

c. Awarding Plaintiff punitive damages pursuant to Cal. Civ. Code § 1789.21(a);

12

**Exhibit "17"**

d.  Awarding Plaintiff's costs and reasonable attorney fees, pursuant to Cal. Civ. Code § 1789.21(a); and

e.  Awarding any other relief as this Honorable Court deems just and appropriate.


Dated: October 31, 2022                    Respectfully submitted,

                                           /s/Bobby C. Walker
                                           Bobby C. Walker, Esq.
                                           California Bar No. 321788
                                           *Counsel for Plaintiff*
                                           Sulaiman Law Group, Ltd
                                           2500 S Highland Ave, Suite 200
                                           Lombard, IL 60148
                                           Telephone: (630) 575-8181 Ext. 149
                                           bwalker@sulaimanlaw.com

13

**Exhibit "17"**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

JOHNNY W. RIZO

**(b)** County of Residence of First Listed Plaintiff   San Joaquin County
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Sulaiman Law Group, Ltd.
2500 S. Highland Avenue, Suite 200, Lombard, IL 6-148
(630) 575-8181

## DEFENDANTS

THE LITIGATION PRACTICE GROUP, PC

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U S Government Plaintiff
- ☒ 3  Federal Question *(U.S. Government Not a Party)*
- ☐ 2  U S Government Defendant
- ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | **PERSONAL PROPERTY** | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | **SOCIAL SECURITY** | ☒ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| | | | | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 870 Taxes (U S Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from Another District *(specify)*
- ☐ 6  Multidistrict Litigation - Transfer
- ☐ 8  Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Credit Repair Organizations Act ("CROA") under 15 U.S.C. § 1679 et seq.
Brief description of cause:
Unlawful Debt Collection Practices

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE
10/31/2022

SIGNATURE OF ATTORNEY OF RECORD
/s/ Bobby C. Walker

FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT _____   APPLYING IFP  **Exhibit "17"**   JUDGE _____   MAG JUDGE _____

JS 44 Reverse (Rev. 02/19)

Case 8:23-bk-10571-SC    Doc 232-2    Filed 07/13/23    Entered 07/13/23 09:14:48    Desc
Case 2:22-cv-01580-DAD-DB Document 1 Page 150 of 350/22    Page 2 of 2
Exhibit Exhibits 13 - 27    Page 150 of 350

**INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44**

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)** **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)** **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.** **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket. **PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

# Exhibit "18"

1
2  **SULAIMAN LAW GROUP, LTD.**
3  Bobby C. Walker, Esq. (State Bar No. 321788)
   2500 South Highland Avenue, Suite 200
4  Lombard, IL 60148
   Telephone: (630) 575-8181 Ext. 149
5  Facsimile: (630) 575-8188
   Email: bwalker@sulaimanlaw.com
6  Attorney for Plaintiff
7
8           **UNITED STATES DISTRICT COURT**
9           **CENTRAL DISTRICT OF CALIFORNIA**
10

| | |
|---|---|
| BEVERLY A. GRAHAM, | Case No.  2:22-cv-07915 |
| Plaintiff, | **COMPLAINT FOR DAMAGES** |
| v. | **1. VIOLATIONS OF THE CREDIT REPAIR ORGANIZATIONS ACT, 15 U.S.C. §1679 ET SEQ.;** |
| THE LITIGATION PRACTICE GROUP, PC, | |
| Defendant. | **DEMAND FOR JURY TRIAL** |

17
18                    **COMPLAINT**
19    NOW comes BEVERLY A. GRAHAM ("Plaintiff"), by and through the
20
21 undersigned, complaining as to the conduct of THE LITIGATION PRACTICE
22 GROUP, PC ("Defendant") as follows:
23                **NATURE OF THE ACTION**
24    1. Plaintiff brings this action for damages pursuant to the Credit Repair
25 Organizations Act ("CROA") for Defendant's unlawful conduct.
26               **JURISDICTION AND VENUE**
27
28

1

**Exhibit "18"**

2.  This action arises under and is brought pursuant to the CROA.  Subject matter jurisdiction is conferred upon this Court by 15 U.S.C §1679, as well as 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States.

3.  Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Defendant resides within, conducts business within, and a substantial portion of the events or omissions giving rise to the claims occurred within, the Central District of California.

**PARTIES**

4.  Plaintiff is a natural "person," as defined by 47 U.S.C. § 153(39), over 18 years of age.

5.  Defendant is a credit repair organization, debt settlement provider, and law corporation that offers its customers the ability to eliminate and resolve their debt issues through Defendant's myriad services, including assisting consumers with resolving debts that would otherwise be unresolved, as well as through disputing information appearing on consumer's credit reports so that such information could be removed and in turn improve consumer's credit scores. Defendant is a professional corporation organized under the laws of the state of California with its principal place of business located at 17542 17th Street, Suite 100, Tustin, California.

6.  Defendant is a "person" as defined by 47 U.S.C. §153(39).

7.  Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives and insurers at all times relevant to the instant action.

2

**Exhibit "18"**

## FACTS SUPPORTING CAUSES OF ACTION

8.   In approximately May of 2022, Plaintiff was seeking to improve her credit and to take care of some obligations that were causing her financial difficulty.

9.   Plaintiff subsequently happened upon Defendant's services

10.  Upon speaking with Plaintiff, Defendant advised that its services included disputing information that was appearing on, and negatively impacting, Plaintiff's credit reports in order to get that information removed and to improve her credit.

11.  Defendant further offered various "legal" services in connection with its disputes.

12.  Defendant explicitly represented that its services would improve Plaintiff's credit history, score, and rating, as Defendant advised that through the disputes, Plaintiff's credit report would improve by having negative information removed from her credit report.

13.  Defendant further advised that Plaintiff's monthly payments would be put into a dedicated account, and Defendant would then use such funds to negotiate debts for reduced balances, which would further improve Plaintiff's credit and result in her being debt free by having Defendant resolve obligations that she would otherwise be unable to resolve on her own.

14.  Upon information and belief, Defendant explicitly informs consumers that the explicit purpose of its business is to restore consumer's credit.

3

**Exhibit "18"**

15. Plaintiff found Defendant's services desirable as she believed that, by making payments to Defendant instead of each individual creditor, her credit score would improve and Defendant would take care of all of Plaintiff's enrolled obligations.

16. As a result, Plaintiff agreed to utilize Defendant's services and entered into a contract for the provision of the same.

17. Plaintiff subsequently began making her monthly payments to Defendant, which totaled approximately $349.00 per month.

18. Plaintiff has been making payments for 4 months; however, Defendant has failed to meaningfully deliver any services.

19. Upon information and belief, Defendant has been taking funds from Plaintiff's monthly payments and, rather than use them to resolve the obligations as represented, is instead applying such charges to various fees for services, including legal services, that Defendant has not performed, let alone fully performed.

20. Furthermore, upon information and belief, Defendant is engaged in a pattern of practice of representing its service one way when speaking with consumers, only to cut against those very representations in the contractual documents Defendant has consumers sign.

21. Frustrated and distressed over Defendant's conduct, Plaintiff spoke with the undersigned regarding her rights.

22. Plaintiff has suffered concrete harm as a result of Defendant's actions, including but not limited to, emotional distress, aggravation, mental anguish,

4

**Exhibit "18"**

pecuniary harm, denial of the benefit of her bargain, making payments for deficient credit repair services, relying upon Defendant's representations to her detriment, being subjected to improper fees, as well as a violation of her federally protected interests – interests which were harmed and put at a material risk of harm as a result of Defendant's conduct.

### COUNT I – VIOLATIONS OF THE CREDIT REPAIR ORGANIZATIONS ACT

23. Plaintiff repeats and realleges paragraphs 1 through 22 as though fully set forth herein.

24. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1679a(1) of the CROA.

25. Defendant is a "credit repair organization" as defined by §1679a(3) of the CROA, as it is a person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of improving a consumer's credit, credit history, or credit rating, or providing assistance to any consumer with regard to any activity or service for the purpose of improving a consumer's credit.

### a. Violations of CROA § 1679b(a)

26. The CROA, pursuant to 15 U.S.C. § 1679b(a)(3) prohibits any person from "mak[ing] or us[ing] any untrue or misleading representation of the services of the credit repair organization." Additionally, pursuant to 15 U.S.C. § 1679b(a)(4), any person is prohibited from "engag[ing], directly or indirectly, in any act, practice, or

5

**Exhibit "18"**

course of business that constitutes or results in the commission of, or an attempt to

commit, a fraud or deception on any person in connection with the offer or sale of

the services of the credit repair organization."

27. Defendant violated the above referenced provisions of the CROA through its

misrepresentations and deception as to the nature of the credit repair services it

would provide Plaintiff. Upon information and belief, Defendant represented to

Plaintiff that all she had to do was pay Defendant a single monthly fee, and that

Defendant would use those payments to resolve all of Plaintiff's allegations.

However, in the contract Defendant has consumers sign, Defendant cuts against the

representations made orally, as rather than using the funds to settle the debts,

Defendant uses the funds to pay for its charges and fees, and that any settlement

Defendant reaches will have to come out of Plaintiff's pocket in addition to the

monthly payments. Defendant thus deceptively and misleadingly represents the

nature of its services to induce consumers to sign up for its services, likely banking

on the notion that consumers will not carefully consider the contractual language

being put in front of them by someone who has just promised to resolve all of their

credit issues.

**b. Violations of CROA § 1679b(b)**

28. The CROA, pursuant to 15 U.S.C. § 1679b(b), provides that "[n]o credit repair

organization may charge or receive any money or other valuable consideration for

6

Exhibit "18"

the performance of any service which the credit repair organization has agreed to perform for any consumer before such service is fully performed."

29. Defendant violated § 1679b(b) through its charging and receiving of money for services it agreed to perform for Plaintiff before such services were fully performed. Defendant charged Plaintiff up-front fees and monthly fees unrelated to any services Defendant fully performed, and further took portions of Plaintiff's payments for certain "legal" fees that had not been performed and which were completely unnecessary for Plaintiff.

### c. Violation of CROA § 1679c

30. The CROA provides that a credit repair organization must provide consumers with certain written disclosures in the contract underpinning the provision of credit repair services to consumer. Pursuant to 15 U.S.C. § 1679c(b), "the written statement required under this section shall be provided as a document which is separate from any written contract or other agreement between the credit repair organization and the consumer or any other written material provided to the consumer."

31. Defendant violated 15 U.S.C. § 1679c through its failure to provide the written disclosures required under § 1679c. Defendant never provided such disclosures, nor did it provide a separate document containing such disclosures.

### d. Violation of CROA §§ 1679d & 1679e

7

**Exhibit "18"**

32. The CROA, pursuant to 15 U.S.C. § 1679d(4), requires credit repair organization to include, in the contract between them and a consumer, "a conspicuous statement **in bold face type**, in immediate proximity to the space reserved for the consumer's signature on the contract, which reads as follows: 'You may cancel this contract without penalty or obligation at any time before midnight of the 3rd business day after the date on which you signed the contract. See the attached notice of cancellation form for an explanation of this right.'" 15 U.S.C. § 1679e further outlines the extent of a consumer's cancellation rights under the CROA, while requiring such disclosure to be given to consumers in writing and separate from the contract.

33. Defendant violated 15 U.S.C. § 1679d through its failure to provide the requisite statutory disclosure in the manner required by the CROA. Defendant further violated § 1679e through its failure to provide a notice of cancellation form to Plaintiff in its contract.

34. As a result of Defendant's deficient contract, the contract should be deemed void and unenforceable. 15 U.S.C. § 1679f(c).

**e.  Violation of CROA § 1679f(b)**

35. The CROA, pursuant to 15 U.S.C. § 1679f(b) provides that, "[a]ny attempt by any person to obtain a waiver from any consumer of any protection provided by or any right of the consumer under [the CROA] shall be treated as a violation of [the CROA]."

**Exhibit "18"**

36. Defendant violated 15 U.S.C. § 1679f(b) through its attempt to obtain Plaintiff's waiver of the protections afforded him under the CROA. Defendant's contract attempts to waive the protection for consumers against credit repair organizations charging before the full completion of services, as it attempts to get consumers to agree that Defendant's fees are "earned" upon payment by Plaintiff, rather than when they fully complete the services agreed to perform, as required by the CROA. Defendant further attempts to get consumer's to contractually acknowledge the very opposite of what Defendant orally represented, illustrating Defendant's efforts to insulate itself from the knowingly false representations it makes to consumers.

37. The CROA further dictates that any contract found not to be in compliance with the CROA "shall be treated as void" and "may not be enforced by any Federal or State court or any other person." 15 U.S.C. § 1679f(c).

WHEREFORE, Plaintiff, BEVERLY A. GRAHAM, respectfully requests that this Honorable Court enter judgment in her favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned bodies of law;

b. Awarding Plaintiff actual damages to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(1);

c. Awarding Plaintiff punitive damages, in an amount to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(2)(A);

d. Awarding Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. § 1679g(a)(3); and

9

**Exhibit "18"**

1

2       e.  Awarding any other relief as this Honorable Court deems just and

3           appropriate.

4

5    Dated: October 31, 2022         Respectfully submitted,

6

7                         /s/Bobby C. Walker
Bobby C. Walker, Esq.

8                         California Bar No. 321788
*Counsel for Plaintiff*

9                         Sulaiman Law Group, Ltd
2500 S Highland Ave, Suite 200

10                       Lombard, IL 60148
Telephone: (630) 575-8181 Ext. 149
bwalker@sulaimanlaw.com

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit "18"

**Exhibit "19"**

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| TERESA KLAUS, | : | Case No. 3:22-cv-2094 |
| | : | |
| Plaintiffs, | : | Hon. |
| | : | |
| -vs- | : | |
| | : | |
| THE LITIGATION PRACTICE GROUP PC, | : | |
| | : | |
| Defendant. | : | |

## COMPLAINT AND REQUEST FOR DECLARATORY RELIEF AND JURY DEMAND

### Introduction

1.  This is an action for damages brought by a consumer against Defendant for violations of the Debt Adjustment Companies Act, R.C. § 4710.01, et seq. ("DACA"), the Ohio Consumer Sales Practices Act, R.C. § 1345.01, et seq. ("OCSPA"), the Ohio Credit Services Organization Act R.C. §4712.01, et seq. ("OCSOA"), the Credit Repair Organizations Act, 15 U.S.C. §§ 1679-1679j ("CROA"), the Telemarketing Sales Rule 16 C.F.R. § 310.2 ("TSR"), Breach of Contract, and Common Law Fraud, all of which prohibit persons engaged in debt adjusting and credit repair from engaging in abusive, deceptive, and unfair practices.

### Parties

2.  Plaintiff, TERESA KLAUS, is a consumer residing at 707 Jackson St., Delphos, Ohio 45833.

3.  Upon information and belief, Defendant THE LITIGATION PRACTICE GROUP PC (hereinafter "LPG") is a California debt settlement and debt validation company operating from an address at 17542 E 17th Street, Ste 100, Tustin, CA 92780, and doing

1

**Exhibit "19"**

business in the state of Ohio.

4.    Defendant regularly engages in business in Ohio and directed at residents of Ohio and have otherwise availed themselves of the Ohio marketplace and secured the benefits of that marketplace. Such conduct included, among other things; holding itself out as debt settlement company providing services to Ohio residents; directing business solicitations into the State of Ohio, directed at indebted Ohio residents, seeking participation in Defendants' debt settlement, credit repair and debt elimination programs; contracting in Ohio with Ohio consumers for various services, including debt validation; offering to perform and/or performing activities for Ohio residents including debt settlement, credit repair and debt elimination functions.

### Statement of Facts

5.    On or before, June 9, 2021, Plaintiffs contacted LPG to discuss possible debt elimination services.

6.    Plaintiff had several telephone conversations wherein she was led to believe she was retaining Defendant for debt adjustment services which necessarily included credit repair and debt elimination.

7.    Based upon the representations made by LPG in the phone calls, Plaintiff believed by enrolling in the program, she could eliminate their overall debt by disputing the validity of the debts under the statutes of the Consumer Financial Protection Bureau and the Fair Debt Collection Practices Act.

8.    A representative of LPG sent Plaintiffs an Agreement to review and sign; the representative also instructed Plaintiffs they had a right to withhold payments to their creditors while the accounts were in dispute.

9.    The written agreement that Plaintiff signed with the Defendants is attached hereto as Exhibit "A".

2

**Exhibit "19"**

10. On or about June 28, 2021, Plaintiff began paying Defendant $329.53 a month for its services.

11. Defendants charged substantial up-front fees; Plaintiff's credit scores severely reduced pursuant to her participation in the program; Plaintiff's credit scores will not recover in the near future.

12. Enrolling in LPG's program resulted in no reduction to Plaintiff's total debt owed as agreed, in fact, Plaintiff's total indebtedness increased substantially due to interest and fees.

13. Shortly after enrolling in Defendants' program, a lawsuit was filed against Plaintiff by one of her creditors.

14. Enrolling in LPG's program resulted in no payments being made to Plaintiff's creditors.

15. Upon information and belief, the only services provided to Plaintiff from Defendant was the mailing of verification packets to Plaintiff's creditors.

16. While Defendant represented mailing these packets would eliminate Plaintiff's debt, it knew this representation was false, and the mailings would have no legal effect with regard to reducing Plaintiff's debt.

17. Defendant made various misrepresentations or non-disclosures in an effort to induce Plaintiff to enter into the illegal agreement including, but not limited to:

• Unsubstantiated claims of savings; Defendant represented to Plaintiff that the program would eliminate her total debt; however, Defendant does not have a record of accomplishment to support that statement.

• Misleading or failing to adequately inform consumers, including Plaintiff, that they will be subject to continued collection efforts, including lawsuits,

3

**Exhibit "19"**

and that their account balances will increase due to extended nonpayment under the program.

- Defendant represented that the majority of consumers which retain it go on to complete the program thereby becoming debt free; however, a high percentage of consumers who attempt Defendant's debt verification program do not become debt free as a result of its services.

- Defendant accepted money from Plaintiff for the purpose of eliminating all debts on the program for less than the amount owed knowing there was a substantial likelihood that they could not provide the services as promised. Defendant knew its business model was legally unsound and nonsensical.

18.     Based upon the misrepresentations of the LPG representative, Plaintiff agreed to enter into a contract for the debt relief services of LPG.

19.     Plaintiff agreed to pay specified fees which, unknown to Plaintiff, were illegal due to the substantial amount of the fees and requirement of payment up front.

20.     LPG withdrew $2,965.77 in fees from Plaintiff over a period of approximately one year.

21.     The Telemarketing Sales Rule prohibits debt relief companies from charging up-front fees prior to settling accounts because, among other reasons, such a business model is designed to fail from the beginning. TSR, 16 C.F.R. § 310.4 (a)(5)(i)

22.     Further, given the lengthy period of time creditors do not receive money owed, (oftentimes without any contact with the debt relief companies or the debtor), the creditor will often opt to bring a lawsuit for money owed.

23.     Defendant advised Plaintiff to quit paying her debts knowing the debt would

4

**Exhibit "19"**

continue to accumulate interest, over the limit fees, and late fees.

24.    Defendant represented they would attempt to eliminate Plaintiff's total debt balance by providing a debt elimination program by sending validation documentation to the third-party collectors collecting on the debts in the program hoping debt collection would cease.

25.    While disclaiming that it is practicing law, the vast majority of services LPG agreed to provide Plaintiff were in fact legal services. The Agreement is a legal fee agreement whereby LPG agreed to practice law and provide legal services in exchange for money.

26.    Defendant's actions did not reduce Plaintiff total debt balance, and in fact, Plaintiff owes more money and have been sued on numerous accounts enrolled in the Defendant's debt elimination program.

**Count One:**
**(Violations of the Ohio Consumer Sales Practices Act and Debt Adjustment Companies Act)**

27.    Plaintiff repeats, realleges, and incorporates by reference all of the foregoing paragraphs.

28.    The activity described in all previous paragraphs is a "consumer transaction" as defined by R.C. § 1345.01(A). Defendant solicited and retained Plaintiff to perform debt adjustment services for a fee.

29.    Plaintiff's debts at issue were incurred for personal, family and/or household use.

30.    Defendant is a "supplier" as that term is defined in R.C. § 1345.01(C), since Defendant engaged in the business of effecting "consumer transactions", either directly or indirectly, by operating a debt adjustments service for consumers in Ohio for purposes that are primarily for personal, family or household within the meaning specified in R.C. § 1345.01(A).

31.    Defendant is a "person" as defined by the DACA, R.C. § 4710.01(A) engaged in

5

**Exhibit "19"**

the act of "debt adjusting" as defined by the DACA, R.C. § 4710.01(B), and a "supplier" as defined by the OCSPA, R.C. § 1345.01(C), since Defendant was engaged in the business of debt adjusting, budget counseling, debt management, or debt pooling services, or holding oneself out, by words of similar import, as providing services to debtors in the management of their debt to a consumer in the State of Ohio for purposes that were primarily for personal, family or household use.

32. Plaintiff is a "consumer" as defined by the OCSPA, R.C. § 1345.01(D).

33. Defendant charged and accepted fees or contributions in excess of what are reasonable fees or contributions, in violation of R.C. §§ 4710.02(A)(3), 4710.02(B)(1-3) and 4710.02(F)(1). Defendant knew that the debt settlement program's fees exceeded the amount permitted by R.C. § 4710.02(B).

34. Upon information and belief, Defendant failed to arrange for and undergo an audit conducted by an independent, third party, certified public accountant of the person's business and then file the audit and opinion with the consumer protections division of the attorney general in violation of R.C. §§ 4710.02(D)(1-2) and 4710.02(F)(2).

35. Upon information and belief, Defendant failed to obtain and maintain insurance coverage not less than $100,000.00 for employee dishonesty, forgery, and fraud in violation of R.C. §§ 4710.02(E)(1-2) and 4710.02(F)(2).

36. Defendant's transactions failed to include the notices, statements, and cancellation forms as defined by R.C. §§ 4710.05(A) and (B). Such failure is a violation of R.C. § 1345.02(A) of the OCSPA. Defendant committed unfair, deceptive and unconscionable acts or practices in violation of R.C. §§ 1345.02(A) and/or 1345.03(A) of the Consumer Sales Practices Act including:

6

**Exhibit "19"**

- Defendant operated a debt settlement company in the State of Ohio without complying with applicable Ohio law, namely, R.C. § 4710, et seq.

- Defendant charged an excessive fee for debt adjusting and failed to provide the service pursuant to the Failure to Deliver Rule, O.A.C. § 109:4-3-09(A).

- Defendant is an out of state corporations, failed to register with the Ohio Secretary of State prior to doing business in Ohio as required by R.C. § 1703.03.

- Defendant made false or misleading statements to induce a purchaser to pay for services.

- Defendant engaged in debt adjustment activities, including holding out that it could affect the adjustment, compromise, or discharge of any account, note, or other indebtedness of consumers who sign up for its services, without complying with R.C. §§ 4710.02(A) and (B), specifically that Defendant charged fees in excess of those permitted by the Ohio Debt Adjusters Act.

- Defendant violated Ohio Adm. Code § 109:4-3-09(A) by accepting money from consumers for goods or services ordered by mail, telephone, or otherwise and then failed to make full delivery or make a full refund as promised.

- Defendant had knowledge of the inability of the consumer to receive a substantial benefit from the subject of the consumer transaction.

- Defendant required the consumer to enter into a consumer transaction on terms the supplier knew were substantially one-sided in favor of the

7

**Exhibit "19"**

supplier.

37.    Such acts and practices have been previously determined by Ohio courts to violate the Consumer Sales Practices Act, R.C. § 1345.01 et seq.

*38.*    Defendant committed said violation after such decisions were available for public inspection pursuant to R.C. § 1345.05(A)(3). *State ex rel. Petro v. Debticated Consumer Counseling, Inc.* (Lucas Co. C.P. 2003), Case No. CIO 2002 4856, (PIF# 2173); *State of Ohio ex rel. Cordray v. United Law Group, Inc.* (Franklin Co. C.P. 2010)*, Case No. 10 CVH 021567, (PIF# 2874); *State of Ohio, ex rel. Cordray v. Brotherton* (Greene Co. C.P. 2010), Case No. 2009 CV 0709, (PIF# 2831); *In Re Nationwide Debt Solution, Inc.* (2010), Docket No. 384784 (PIF# 2878); *In Re Budulator Corporation, Inc.* (2010), Docket No. 388509 (PIF# 2876); *State of Ohio ex rel. Rogers v. Richard Pinnix d/b/a Pinnix Business Services* (Franklin Co. C.P. 2008), Case No. 07CVH08-10491(PIF# 2726); *State of Ohio ex rel. Dann v. American Housing Authority, Inc.* (Lucas Co. C.P. 2008), Case No. CI-0200705443 (PIF# 2676); *State of Ohio ex rel. Petro v. AAA All Ohio Roofing, et al.* (Franklin Co. C.P. 2003), Case No. 02CVH022119 (PIF# 2152); *State ex rel. Montgomery v. Bayview Group, Inc.* (Franklin Co. C.P. 2003), Case No. 97CVH12 10749 (PIF# 1727).

39.    Plaintiff has suffered damages due to the illegal and deceptive acts in violation of the Ohio Consumer Sales Practices Act in that:

- She paid fees that were both illegal and were not in exchange for any services of value.

- She quit paying her creditors upon the advice of Defendant's representatives and the many misrepresentations that were made to her described in the Complaint.

8

**Exhibit "19"**

- As a result, her creditors exercised their right to the default interest rate accelerating the balances owed by enormous amounts to be determined at trial.

- She suffered mental and emotional hardship, mental and emotional stress, and anxiety.

### Count Two:
### (Violations of the Ohio Credit Services Organizations Act)

40.  Plaintiff repeats, realleges, and incorporates by reference all of the foregoing paragraphs.

41.  Defendant is a credit service organization as defined by R.C. § 4712.01(C)(1) in that Defendant accepted money in order to improve Plaintiffs' credit record and gave advice in connection with doing so.

42.  Plaintiff is a buyer as defined by R.C. § 4712.01(A) in that she was solicited and purchased the services of Defendant.

43.  Defendant has failed to register as a credit services organization with the Ohio Division of Financial Institutions in violation of R.C. § 4712.02(A).

44.  Pursuant to R.C. §4712.11(A), Defendant's violation of R.C. § 4712.02(A) constitutes unfair or deceptive acts or practices in violation of R.C. § 1345.02.

45.  Plaintiff has suffered damages due to the illegal and deceptive acts in violation of the Ohio Credit Services Organization Act in that:

- she paid fees that were both illegal and were not in exchange for any services of value.

- she quit paying her creditors upon the advice of Defendant's representatives and the many misrepresentations that were made to her described in the

9

**Exhibit "19"**

Complaint.

- As a result, her creditors exercised their right to the default interest rate accelerating the balances owed by enormous amounts to be determined at trial.

- She suffered mental and emotional hardship, mental and emotional stress, and anxiety.

<u>**Count Three:**</u>
<u>**(Violations of the Credit Repair Organizations Act)**</u>

46. Plaintiff repeats, realleges, and incorporates by reference all of the foregoing paragraphs.

47. The Credit Repair Organizations Act was enacted to ensure that prospective buyers of the services of credit repair organizations are provided with the information necessary to make an informed decision regarding the purchase of such services and to protect the public from unfair or deceptive advertising and business practices by credit repair organizations. 15 U.S.C. § 1679(b). The CROA provides that a credit repair organization:

a. May not charge or receive any money or other valuable consideration for services which the credit repair organization has agreed to perform before such service is fully performed, 15 U.S.C. § 1679(b);

b. May not provide services without a written and dated contract that includes a full and detailed description of the services to be performed and other terms and conditions set forth in 15 U.S.C. §§ 1679d(a)(1), 1679d(b);

c. Must provide to the consumer, before any contract or agreement between the consumer and the credit repair organization is executed, the written statement set forth in Section 405(a) of CROA concerning consumer credit

10

**Exhibit "19"**

file rights under state and federal law and the right to cancel a contract with

a credit repair organization, 15 U.S.C. § 1679c; and

   d. Must allow a consumer to cancel any contract with the credit repair

   organization without penalty or obligation if the consumer notifies the credit

   repair organization of the consumer's intention to cancel before midnight of

   the third business day after the date the contract between the consumer and

   the credit repair organization is executed, 15 U.S.C. § 1679e.

48.   Defendant is "credit repair organizations" as that term is defined in the Credit

Repair Organizations Act ("CROA"), because they use instrumentalities of interstate commerce

to sell, provide, or perform (or represent that such defendant can or will sell, provide, or

perform) a service for the express or implied purpose of improving a consumer's credit record,

credit history, or credit rating, and this service is offered in return for the payment of money.

15 U.S.C. § 1679a(3).

49.   Defendant received money prior to fully performing its services, and failed to

provide any of the proper disclosures, contracts, or right to cancel forms.

50.   Defendant's conduct as alleged in Count Three of this Complaint violates the

Credit Repair Organizations Act, and the Defendants are liable for these violations.

51.   Plaintiff has suffered damages due to the illegal and deceptive acts in violation of

the Credit Repair Organization Act in that:

   • She paid fees that were both illegal and were not in exchange for any services

     of value.

   • She quit paying her creditors upon the advice of Defendant's representatives

     and the many misrepresentations that were made to them described in the

11

Complaint.

- As a result, her creditors exercised their right to the default interest rate accelerating the balances owed by enormous amounts to be determined at trial.

- She suffered mental and emotional hardship, mental and emotional stress, and anxiety.

## Count Four:
### (Fraud / Fraud in the Inducement)

52. Plaintiff repeats, realleges, and reincorporates by reference all of the foregoing paragraphs.

53. Plaintiff specifically relied on the representations, misrepresentations, non-disclosures and implied representations described in Paragraphs 9 through 32 when making the determination to enter into a contract or continue using the services of Defendant.

54. Defendant, through representations, websites, and the Agreement create the appearance that Plaintiff is entering into an agreement that will greatly reduce her outstanding debts.

55. Defendant engaged in the unlawful conduct previously alleged with the actual and/or imputed knowledge of the unlawful conduct.

56. Defendant knowingly engaged in such conduct with the purpose of inducing payment from Plaintiff.

57. Plaintiff have been injured by the wrongful and fraudulent conduct of Defendant and have been damaged in an amount to be established at trial, as well as entitled to punitive damages in an amount to be established at trial.

## Count Five:
### (Violations of the Telemarketing Sales Rule)

12

**Exhibit "19"**

58.    Plaintiff repeats, realleges, and reincorporates by reference all of the foregoing
paragraphs.

59.    The Telemarketing Sales Rule ("TSR") was promulgated for the explicit purpose
of preventing consumer harm from debt relief operations like the venture of the Defendant in
this case.

60.    The TSR, 16 C.F.R. § 310.2(m), defines "debt relief service" as "any program or
service represented, directly or by implication, to renegotiate, settle, or in any way alter the
terms of payments or other terms of the debt between a person and one or more unsecured
creditors or debt collectors, including, but not limited to, a reduction in the balance, interest
rate, or fees owed by a person to an unsecured creditor or debt collector."

61.    The TSR, 16 C.F.R. § 310.2(dd), defines "telemarketing" as "a plan, program, or
campaign which is conducted to induce the purchase of goods or services or a charitable
contribution, by use of one or more telephones and which involves more than one interstate
telephone call."

62.    The TSR, 16 C.F.R. § 310.2 (aa), defines "seller" as "any person who, in
connection with a telemarketing transaction, provides, offers to provide, or arranges for
others to provide goods or services to the customer in exchange for consideration."

63.    The TSR, 16 C.F.R. § 310.2 (cc), defines "telemarketer" as "any person who, in
connection with telemarketing, initiates or receives telephone calls to or from a customer or
donor."

64.    Defendants are "sellers" or "telemarketers" of "debt relief services", who engages
in "telemarketing", as defined in the TSR.

65.    The TSR, 16 C.F.R. § 310.4 (a)(5)(i), provides that a seller or a telemarketer may

13

**Exhibit "19"**

not request or receive payment of any fee or consideration for any debt relief service until and unless among other things, "the seller or telemarketer has renegotiated, settled, reduced, or otherwise altered the terms of at least one debt pursuant to a settlement agreement, debt management plan, or other such valid contractual agreement executed by the customer" and "the customer has made at least one payment" pursuant too such an agreement or plan.

66.     The TSR, 16 C.F.R. § 310.4(a)(5)(ii), provides that a seller or a telemarketer may request or require customers to place funds in an account to be used for the debt relief provider's fees and for payments to creditors or debt collectors in connection with the renegotiation or settlement of a debt, provided that, among other things: the customer owns the funds held in the account and is paid interest on the account" and "the customer may withdraw from the debt relief service at any time without penalty and must receive all funds in the account, other that funds earned by the debt relief service in compliance with § 310.4(a)(5)(i)(A) through (C), within seven (7) business days of the consumer's request."

67.     The TSR, 16 C.F.R. § 310.3(a)(2)(ii), prohibits a seller or telemarketer from misrepresenting, directly or by implication, in the sale of goods or services, any material restriction, limitation, or condition to purchase, receive, or use goods or services that are the subject of the sales offer.

68.     The TSR, 16 C.F.R. § 310.3(a)(2)(iii), prohibits a seller or telemarketer from misrepresenting, directly or by implication, in the sale of goods or services, any material aspect of the performance, efficacy, nature, or central characteristics of goods or services that are the subject of a sales offer.

69.     The TSR, 16 C.F.R. § 310.3(a)(2)(x), prohibits a seller or telemarketer from misrepresenting, directly or by implication, in the sale of goods or services, any material aspect

14

of any debt relief service.

70.     In the course of telemarketing debt relief services, Defendant has requested and received payment of fees from Plaintiffs for debt relief services before renegotiating, settling, reducing, or otherwise altering the terms of his debts. Defendant requested and received payment of these fees prior to Plaintiffs making at least one payment pursuant to any settlement agreement, debt-management plan, or other valid contractual agreement between Plaintiffs and their creditors.

71.     Therefore, Defendant's act or practices violate the TSR, 16 C.F.R. § 310.4(a)(5)(i), and are abusive acts or practices in telemarketing.

72.     Plaintiff was charged advances fees for Defendant's debt relief services.

73.     Therefore, Defendant's representations as described herein violate the TSR, C.F.R. § 310.3(a)(2)(ii) and (x), and are deceptive acts or practices in telemarketing.

74.      In numerous instances, in connection with advertising, marketing, promoting, offering for sale, or sale of debt relief services, Defendant represented to Plaintiff directly or indirectly, expressly or by implication, that her total debt amount would be reduced by up to 50%.

75.     In fact, Defendant does not have a track record of consistent debt reduction of this degree, if any at all.

76.     Therefore, Defendant's representations as described herein violate the TSR, C.F.R. § 310.3(a)(2)(iii) and (x), and are deceptive acts or practices in telemarketing.

77.     In addition, Defendant and its representatives in making its savings claims (amounts of monies s would save by using Defendant's services) did not disclose the following in violation of the TSR:

15

**Exhibit "19"**

- State the savings was based on the Plaintiff debt when she signed up for the program.

- Include the impact of the Defendant's fees on their claimed savings to the Plaintiff.

- In calculating the results over time, did not include customers who dropped out or otherwise failed to complete the program.

## Count Six
## (Breach of Contract)

78. Plaintiff repeats, realleges, and reincorporates by reference all of the foregoing paragraphs.

79. Defendant entered into a contract with Plaintiff and represented it would eliminate Plaintiff's debt.

80. Defendant further provided advice and explanation on the Fair Credit Reporting Act, the Federal Trade Commission Act, the Truth in Lending Act, and the Fair Debt Collection Practices Act.

81. Defendant cite the statutes listed in the prior paragraph as authority for its 'Debt Validation Services' though it is not clear how the Defendant would eliminate defendant's debt through the statutes listed in paragraph 86.

82. Defendant did not perform its obligations pursuant to the contract as agreed as no debts of Plaintiff were eliminated.

83. Plaintiff paid Defendant pursuant to the contract as agreed.

84. Plaintiff has been damaged by Defendant's non-performance and resulting breach of the contract.

85. As such, Plaintiffs is entitled to damages for the breach of contract.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff Teresa Klaus, prays this Court grant the following relief:

16

**Exhibit "19"**

1. ISSUE an order declaring that the Defendant has engaged in acts and practices in violation of the Consumer Sales Practices Act, R.C. § 1345.01 et seq., the Debt Adjustment Companies Act, R.C. § 4710.01 et seq., the Ohio Credit Services Organization Act R.C. § 4712.01, et seq., the Credit Repair Organization Act 15 U.S.C. § 1679, et seq. and the Telemarketing Sales Rule 16 C.F.R. § 310, et seq.

2. ISSUE a Permanent Injunction enjoining the Defendant, its agents, servants, employees, successors or assigns, and all persons acting in concert and participation with it, directly or indirectly, through any corporate device, partnership, or other association, under this or any other name, from engaging in the acts and practices which Plaintiff complains in the State of Ohio until complying with the laws of the State of Ohio and satisfaction of any monetary obligations to Plaintiff.

3. GRANT judgment against the Defendant in the amount of three times the actual damages or $200.00 for each unlawful act specified, whichever is greater, pursuant to R.C. § 1345.09(B).

4. GRANT judgment against the Defendant for common law fraud in an amount of damages in excess of $25,000.00.

5. GRANT judgment against the Defendant in excess of $50,000.00 for violations of the Telemarketing Sales Rule 16 CFR§ 310, et seq.

6. GRANT statutory damages for violations of the Credit Repair Organization Act 15 U.S.C. § 1679g.

7. GRANT statutory damages for violations of the Ohio Credit Services Organization Act R.C. § 4712.10.

8. GRANT judgment against the Defendant in excess of $25,000.00 for its breach of

17

**Exhibit "19"**

contract with Defendants.

9. Costs and reasonable attorney fees, pursuant to R.C. § 1345.09(F)(2).

10. GRANT punitive damages.

11. GRANT such other relief as this Court deems to be just, equitable and appropriate.

Respectfully Submitted:


*/s/ Jeremiah E. Heck*
Jeremiah E. Heck (0076742)
David B. Schultz (0077281)
Luftman Heck & Associates LLP
6253 Riverside Drive, Suite 200
Dublin, Ohio 43017
Phone: (614) 224-1500
Fax: (614) 224-2894
dschultz@lawlh.com
*Attorney for Plaintiffs*


**DEMAND FOR JURY TRIAL**

Please take notice that Plaintiff, Teresa Klaus, demands trial by jury in this action.


*/s/ Jeremiah E. Heck*
Jeremiah E. Heck (0076742)

18



**THE LITIGATION
PRACTICE GROUP**

1351 Calle Avanzado | Suite 4
San Clemente, CA 92673
Tel 949.229.6262
Fax 949.415.7816
admin@coastprocessing.com

## LEGAL SERVICES AGREEMENT

### Legal Services

The Litigation Practice Group PC ("LPG") will provide debt validation services wherein it will assist you in removing erroneous or inaccurate information appearing on one or more of your credit reports by contesting debts appearing therein. This service is limited to information reported by creditors or purported creditors to credit bureaus. The purpose of this program is to challenge the legal validity of debts appearing on or being reported to credit bureaus. The cost of legal services rendered by LPG is set forth below, and those fees are earned by LPG for services rendered to you as set forth herein at the time such fees are paid.

### Client Authorization

You authorize LPG to challenge, where applicable, any debts appearing in your credit report(s) that you believe to be in any way invalid, inaccurate, or otherwise without a legal basis. You also authorize LPG to obtain a copy of your credit report to assist in the process of analyzing your account and developing a strategy regarding the invalidation of debts that are excessive or otherwise unauthorized by law. You further authorize LPG, acting under power of attorney for you, to affix your signature to documents sent on your behalf in relation to the matters addressed herein.

### Description of Services to be Performed

LPG will obtain your credit reports, analyze them, and develop strategies for correcting invalid or unlawful debts for which you should not be held legally responsible. Where appropriate, LPG will use existing laws and interact with creditors and credit bureaus on your behalf to invalidate your debts and remove such invalid debts from your credit reports. LPG will also interact with collection agencies, as applicable, to invalidate your debts by requiring them to supply evidence of your indebtedness to them, or any other legal mechanism. LPG will also consult with you regarding all aspects of the credit reporting process, including all laws applicable to the same. LPG will also investigate your delinquent accounts in order to determine the most effective method for invalidating your debts or otherwise removing any legal liability for such debts, up to and including the initiation of lawsuits on your behalf against your creditors and their third-party debt collectors.

In addition, if a lawsuit is filed against you, LPG will represent you in such a lawsuit and will not charge any additional fees for such representation provided such a lawsuit was initiated after the date you sign this Agreement. In the event a lawsuit was initiated against you before the date you execute this Agreement and you elect to have LPG represent you, an additional fee of $500.00 will be charged. Where appropriate, if legal fees are recovered from an adverse party, LPG will retain such fees for its services. You will be responsible to pay any damages resulting from any lawsuit. Any costs incurred in a lawsuit will be paid by LPG out of the fees set forth below, including the fees of any attorney retained on your behalf in a jurisdiction in which LPG is not admitted to practice law. No additional payment from you to LPG will be necessary for the defense of any lawsuit filed against you after the date you execute this Agreement. You will, however, be responsible to pay any damages resulting from such lawsuits or any settlements reached in the course of such lawsuits.

### Fees

You will pay the following fees for the legal services provided by LPG. No fee or other cost will be charged or collected other than the following. This is the only amount you have to pay for LPG's services, and this fee is fixed, such that it is earned the moment it is transmitted to LPG. Upon request, LPG will provide an update of the progress of services performed under this agreement at reasonable intervals of no greater frequency than once a month.

**Exhibit "19"**

ID: 3923370 Signed: 2021-06-09T14:49:17-05:00

## Refund Policy

If an account is fully validated by a creditor, such that no further dispute to the validity of the account could be made, you will receive a full refund of the fees that you paid towards the invalidation of that account (i.e., you will be refunded the fees paid in proportion to the debt that was validated). Should you have an outstanding balance with LPG at the time your refund is issued on the validated account, any refund will first be applied towards the outstanding balance. A client can elect to move to a debt settlement service on any validated account in lieu of obtaining a refund. If a client makes such an election, fees will no longer be collected for such account and debt settlement services will be performed for no additional fees.

## Debt Settlement

If LPG is unable to invalidate any debt, you may elect to have LPG negotiate a settlement on your behalf with the concerned creditor without any additional fees being charged to or incurred by you for such service. Any settlement reached with any such creditor shall be your responsibility. At the point that you reach a settlement with such creditor, your payment to LPG will be reduced and re-amortized to adjust for the settled account being removed from the representation herein contemplated. Please see the refund policy above for more details.

## Actions Required of You

You agree to provide LPG with any and all correspondence you receive from any creditor, credit bureau, attorney, or court of law. You further agree to keep a log of all communications, including telephonic and electronic communications, from any creditor or credit reporting agency.

## Right to Conduct Business Electronically and Contact You

You agree that LPG may contact you electronically and telephonically and that any and all business with LPG may be conducted electronically. You further agree that LPG may transmit data, including that regarding your credit profile, electronically. You further agree that any electronic communication carries the risk of disclosure to a third party and that LPG will not be held responsible for any such inadvertent disclosure of information. A facsimile or email transmission of this signed agreement, via an email attachment or otherwise, will be as valid as the original. This agreement may not be modified except in writing by both parties.

## Client Acknowledgements

By signing this agreement, you acknowledge that LPG has not instructed you to breach any contract, fail to make any required payment, or fail to perform any obligation you have lawfully incurred. LPG reserves the right to terminate this agreement if (a) client fails to make timely payment of the amount due under hereunder or (b) the client`s payments are returned multiple times for any reason. LPG will not pay your debts and does not guarantee that any debt you now have or may incur will be invalidated or settled in association with LPG's services. You understand and agree that you must forward any communication you receive in printed or electronic form from any creditor, court, or representative of other a creditor or a court to admin@coastprocessing.com and that you must keep a log of all telephonic communications with any creditor or credit reporting agency. **Do not sign this agreement until you have received and read the information statements and notices of cancellation required by state and federal law, even if otherwise advised. By signing this agreement, you acknowledge receipt of these disclosures prior to the time of signing and agree to the terms of this agreement. You, the client, may cancel this agreement at any time before midnight CST of the 5th day after the date of execution of this agreement via an email to admin@coastprocessing.com. In addition, you, the client may terminate LPG's services under this agreement at any time via an email to admin@coastprocessing.com.**

Client Signature: _Teresa Klaus_     Date: 6/9/2021

Co-Applicant Signature _____     Date: _____

**Exhibit "19"**

**Creditor Information**

| Creditor | Account # | Amount Owed |
|---|---|---|
| Capital One | 3590 | $4,394.00 |
| SYNCBJCP DC | 1591 | $3,774.00 |
| Capital One | 6217 | $3,212.00 |
| BK OF AMER | 6060 | $2,822.00 |
| SEARSCBNA | 4589 | $1,926.00 |
| KOHLSCAPONE | 9318 | $1,235.00 |
| SYNCBLOW | 6514 | $1,207.00 |
| Capital One | 7588 | $1,146.00 |
| SYNCBABCWH | 0402 | $904.00 |
| CBNA | 0060 | $809.00 |
| MERRICK BK | 6446 | $540.00 |
| CBMAURICES | 5555 | $277.00 |
| SEARS/CBNA | 6120 | $2,249.00 |
| | | $24,495.00 |

**Exhibit "19"**

ID: 3923370 Signed: 2021-06-09T14:49:17-05:00

## **Client Information**

Name: Teresa Klaus

Address: 707 Jackson Street, Delphos OH 45833


Home Phone: 419-863-9455

Cell Phone: 419-863-9455

Email: klaus4@roadrunner.com

Las 4 SSN: XXX-XX-8725

## **Co-Client Information**

Name:

Address: ,


Home Phone:

Cell Phone:

Email:

Last 4 SSN:

**Exhibit "19"**

ID: 3923370 Signed: 2021-06-09T14:49:17-05:00

## **Schedule of Payments**

I agree to this payment schedule – Client Initials: _TK_____

| Payment # | Process Date | Amount |
|---|---|---|
| 1 | Jun 28, 2021 | $329.53 |
| 2 | Jul 28, 2021 | $329.53 |
| 3 | Aug 30, 2021 | $329.53 |
| 4 | Sep 28, 2021 | $329.53 |
| 5 | Oct 28, 2021 | $329.53 |
| 6 | Nov 29, 2021 | $329.53 |
| 7 | Dec 28, 2021 | $329.53 |
| 8 | Jan 28, 2022 | $329.53 |
| 9 | Feb 28, 2022 | $329.53 |
| 10 | Mar 28, 2022 | $329.53 |
| 11 | Apr 28, 2022 | $329.53 |
| 12 | May 31, 2022 | $329.53 |
| 13 | Jun 28, 2022 | $329.53 |
| 14 | Jul 28, 2022 | $329.53 |
| 15 | Aug 29, 2022 | $329.53 |
| 16 | Sep 28, 2022 | $329.53 |
| 17 | Oct 28, 2022 | $329.53 |
| 18 | Nov 28, 2022 | $329.53 |
| 19 | Dec 28, 2022 | $329.53 |
| 20 | Jan 30, 2023 | $329.53 |
| 21 | Feb 28, 2023 | $329.53 |
| 22 | Mar 28, 2023 | $329.53 |
| 23 | Apr 28, 2023 | $329.53 |
| 24 | May 30, 2023 | $329.53 |
| 25 | Jun 28, 2023 | $329.53 |
| 26 | Jul 28, 2023 | $329.53 |
| 27 | Aug 28, 2023 | $329.53 |
| 28 | Sep 28, 2023 | $329.53 |
| 29 | Oct 30, 2023 | $329.53 |
| 30 | Nov 28, 2023 | $329.53 |
| 31 | Dec 28, 2023 | $329.53 |
| 32 | Jan 29, 2024 | $329.53 |
| 33 | Feb 28, 2024 | $329.53 |
| 34 | Mar 28, 2024 | $329.53 |
| 35 | Apr 29, 2024 | $329.53 |
| 36 | May 28, 2024 | $329.38 |

**Exhibit "19"**

ID: 3923370 Signed: 2021-06-09T14:49:17-05:00

**Electronic Payment Authorization**

Bank Name: PREMIER BANK

Name on Account: Teresa S. Klaus

Account Type: Checking

_____ Other (specify: _____ )

Routing Number: ███████████

Account Number: ███████████

Next Payment Date: Jun 28, 2021 Amount: $ 329.53

Recurring Payment Date: 28th

By signing below, I authorize and permit LPG or their designees, EPPS, Omnifund, Equipay, Forte, a CSG Company, or Authorize.NET to initiate electronic funds transfer via an Automated Clearing House system (ACH) from my account listed above. I will also provide LPG with a voided check or savings deposit slip.

If necessary, LPG may make adjustments if errors have occurred during the transaction. The date of the draft is listed above, however, if the draft date falls on a weekend or bank holiday, the debit transaction will take place on the next business day. This authority will remain in effect until LPG is notified by the member in writing at least 5 days prior to the next scheduled draft date. No other forms of cancellation by members will be observed. If the debit is returned because of non-sufficient funds or uncollected funds, then the originator and its financial institution may reinitiate the entry up to two (2) times. The reversal of funds from a client's account that was drafted in error cannot be made until seven business days from the draft date. The member agrees to waive all rights of reversal or refusal of any payment on any draft that LPG may make against the member's bank account while services are performed. The member agrees with all of the provisions and conditions outlined within.

**Acknowledgment of Refunds & Draft Date Changes**

ACH Refunds: If a refund is due such will be made through the ACH process only if the fees were made through the ACH process. All refunds may take up to 10 days to process. In the event my EFT or draft is returned from my bank unpaid, I agree that a fee of $25.00 or as allowed by law may be charged to my account via draft or EFT. Furthermore, I warrant that I am authorized to execute this payment authorization and the above information is true and correct. Draft Date Changes: A client may stop any ACH debit by providing written notice to LPG at least five (5) business days prior to the scheduled payment. If you should need to notify us of your intent to cancel and/or revoke this authorization you must contact us five (5) days prior to the questioned debit being initiated. Please call us at 949-229-6262 or at admin@coastprocessing.com.

Client Signature: _Teresa Klaus_ Date: 6/9/2021

Printed Name: Teresa Klaus

**Exhibit "19"**

**Electronic Funds Transfer (EFT) Authorization to Debit Bank Account**

Account Owner Name: Teresa S. Klaus

Social Security Number: ▮▮▮▮        Birth Date: ▮▮▮▮

Address: 707 Jackson Street        City: Delphos        State: OH        Zip: 45833

Mobile Phone #:        Bank Name: PREMIER BANK

Routing Number: ▮▮▮▮        Account Number: ▮▮▮▮

Total Amount of Debit: $329.53        Date of Next Debit: Jun 28, 2021        Checking or Saving: Checking

I hereby apply for and agree to establish a non-interest bearing special purpose account (the "Account") with a bank ("Bank") selected by EPPS, LLC and/or its successors for the purpose of accumulating funds to pay for such goods and services as I so direct EPPS, LLC to perform. This application is subject to Bank's customer identification program, as required by the USA PATRIOT ACT and other applicable laws, and accordingly, I hereby represent that the above information is true and complete to the best of my knowledge and belief. The bank account information provided above may be subject to account validation processes to include pre-notation and a $0.01 micro-deposit.

| Schedule of Fees and Charges | |
| --- | --- |
| Monthly Banking Fee: | Included |
| ACH/EFT Fee Per Transaction | Included |
| Chargeback/Late Return Fee | Included |
| NSF Fee | Included |
| Account Closer Fee | Included |
| **PREMIUM DISBURSEMENT SERVICES** | |
| Wire Transfer | Included |
| FedEx/Overnight Next Day | Included |
| 2nd Day Check With Tracking | Included |

I hereby authorize Bank, directly or through EPPS, LLC, and/or its service providers, to administer the account on my behalf by (a) periodically transferring and depositing funds to the Account, via any payment media currently in use, and (b) periodically disbursing funds from the Account pursuant to instructions that I may give from time to time. I hereby authorize payments from the Account for the fees and charges provided for in this application and in the agreement. I hereby grant permission for Bank to share information regarding the Account with EPPS, LLC, and any other service provider to facilitate the transactions I may initiate that involve the Account, and with any other party that is essential to the administration of the Account on my behalf. My signature below provides permission to be contacted by phone at the number provided with this authorization. A payment reminder will be sent to your phone number via Text Messaging prior to the payment scheduled above. This authorization shall remain in full force and effect until I provide a verbal or written termination notice to EPPS. Any such notice, and any other written notice that is provided for in this Application or the Agreement, shall be sent to EPPS, LLC at the address set forth in the Agreement. "EPPS-Ph# 800-215-3484" will appear on your bank statement

Account Holder's Signature: *Teresa Klaus*        Date: 6/9/2021

**Exhibit "19"**

ID: 3923370 Signed: 2021-06-09T14:49:17-05:00

E-Signature Completion Certificate

 clixsign.



## Your Document Was Successfully Signed!

Congratulations, your document(s) was successfully signed. Please find details below related to your e-signature submission.

### ℹ Signing Details

| | |
|---|---|
| **Document ID** | **Signer Email** |
| 3923370 | klaus4@roadrunner.com |
| **Document Title** | **Signer IP Address** |
| LSA - LPG - English | 184.57.134.162 |
| **Sender IP Address** | **Timestamp** |
| 35.132.242.205 | 2021-06-09T14:49:17-05:00 |
| **Number Of Signers** | **Document MD5 Hash** |
| 1 | d41d8cd98f00b204e9800998ecf8427e |

### ⚙ Document Audit

✔ Sent at 2021-06-09T14:12:19-05:00 from IP 35.132.242.205

✔ Delivered to klaus4@roadrunner.com at 2021-06-09T14:34:51-05:00 from 184.57.134.162

✔ Adopted Signature at 2021-06-09T14:35:36-05:00 from 184.57.134.162

✔ Completed Signing at 2021-06-09T14:49:17-05:00 from 184.57.134.162

✔ PDF Generated at 2021-06-09T14:49:17-05:00

Sending Agent
Mozilla/5.0 (iPhone; CPU iPhone OS 14_5_1 like Mac OS X) AppleWebKit/605.1.15 (KHTML, like Gecko) Version/14.1 Mobile/15E148 Safari/604.1

**Exhibit "19"**

JS 44 (Rev 3/22)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Teresa Klaus

**DEFENDANTS**

The Litigation Practice Group

**(b)** County of Residence of First Listed Plaintiff   Allen, OH
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Orange, CA
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Jeremiah Heck, Luftman Heck & Associates 614 224
1500. 6253 Riverside Dr., Ste 200, Dublin, OH 43017

Attorneys *(If Known)*

Matthew T. Anderson, 1160 Dublin Road, Suite 400,
Columbus, OH 43125, 614-221-7663

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1   U S Government Plaintiff
- [ ] 2   U S Government Defendant
- [ ] 3   Federal Question *(U.S. Government Not a Party)*
- [ ] 4   Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance<br>[ ] 120 Marine<br>[ ] 130 Miller Act<br>[ ] 140 Negotiable Instrument<br>[ ] 150 Recovery of Overpayment & Enforcement of Judgment<br>[ ] 151 Medicare Act<br>[ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)<br>[ ] 153 Recovery of Overpayment of Veteran's Benefits<br>[ ] 160 Stockholders' Suits<br>[ ] 190 Other Contract<br>[ ] 195 Contract Product Liability<br>[ ] 196 Franchise | **PERSONAL INJURY**<br>[ ] 310 Airplane<br>[ ] 315 Airplane Product Liability<br>[ ] 320 Assault, Libel & Slander<br>[ ] 330 Federal Employers' Liability<br>[ ] 340 Marine<br>[ ] 345 Marine Product Liability<br>[ ] 350 Motor Vehicle<br>[ ] 355 Motor Vehicle Product Liability<br>[ ] 360 Other Personal Injury<br>[ ] 362 Personal Injury - Medical Malpractice | **PERSONAL INJURY**<br>[ ] 365 Personal Injury - Product Liability<br>[ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability<br>[ ] 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>[ ] 370 Other Fraud<br>[ ] 371 Truth in Lending<br>[ ] 380 Other Personal Property Damage<br>[ ] 385 Property Damage Product Liability | [ ] 625 Drug Related Seizure of Property 21 USC 881<br>[ ] 690 Other<br><br>**LABOR**<br>[ ] 710 Fair Labor Standards Act<br>[ ] 720 Labor/Management Relations<br>[ ] 740 Railway Labor Act<br>[ ] 751 Family and Medical Leave Act<br>[ ] 790 Other Labor Litigation<br>[ ] 791 Employee Retirement Income Security Act | [ ] 422 Appeal 28 USC 158<br>[ ] 423 Withdrawal 28 USC 157<br><br>**INTELLECTUAL PROPERTY RIGHTS**<br>[ ] 820 Copyrights<br>[ ] 830 Patent<br>[ ] 835 Patent  Abbreviated New Drug Application<br>[ ] 840 Trademark<br>[ ] 880 Defend Trade Secrets Act of 2016<br><br>**SOCIAL SECURITY**<br>[ ] 861 HIA (1395ff)<br>[ ] 862 Black Lung (923)<br>[ ] 863 DIWC/DIWW (405(g))<br>[ ] 864 SSID Title XVI<br>[ ] 865 RSI (405(g)) | [ ] 375 False Claims Act<br>[ ] 376 Qui Tam (31 USC 3729(a))<br>[ ] 400 State Reapportionment<br>[ ] 410 Antitrust<br>[ ] 430 Banks and Banking<br>[ ] 450 Commerce<br>[ ] 460 Deportation<br>[ ] 470 Racketeer Influenced and Corrupt Organizations<br>[ ] 480 Consumer Credit (15 USC 1681 or 1692)<br>[ ] 485 Telephone Consumer Protection Act<br>[ ] 490 Cable/Sat TV<br>[ ] 850 Securities/Commodities/ Exchange<br>[ ] 890 Other Statutory Actions<br>[ ] 891 Agricultural Acts |
| **REAL PROPERTY**<br>[ ] 210 Land Condemnation<br>[ ] 220 Foreclosure<br>[ ] 230 Rent Lease & Ejectment<br>[ ] 240 Torts to Land<br>[ ] 245 Tort Product Liability<br>[ ] 290 All Other Real Property | **CIVIL RIGHTS**<br>[ ] 440 Other Civil Rights<br>[ ] 441 Voting<br>[ ] 442 Employment<br>[ ] 443 Housing/ Accommodations<br>[ ] 445 Amer w/Disabilities - Employment<br>[ ] 446 Amer w/Disabilities - Other<br>[ ] 448 Education | **PRISONER PETITIONS**<br>**Habeas Corpus:**<br>[ ] 463 Alien Detainee<br>[ ] 510 Motions to Vacate Sentence<br>[ ] 530 General<br>[ ] 535 Death Penalty<br>**Other:**<br>[ ] 540 Mandamus & Other<br>[ ] 550 Civil Rights<br>[ ] 555 Prison Condition<br>[ ] 560 Civil Detainee - Conditions of Confinement | **IMMIGRATION**<br>[ ] 462 Naturalization Application<br>[ ] 465 Other Immigration Actions | **FEDERAL TAX SUITS**<br>[ ] 870 Taxes (U S Plaintiff or Defendant)<br>[ ] 871 IRS—Third Party 26 USC 7609 | [ ] 893 Environmental Matters<br>[ ] 895 Freedom of Information Act<br>[ ] 896 Arbitration<br>[ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision<br>[ ] 950 Constitutionality of State Statutes |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [ ] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
USC 1679-1679, 16 CFR 310.2

Brief description of cause:
illegal and decep ive acts in credit repair and abusive acts in telemarketing

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: [ ] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See Instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE
11/18/2022

SIGNATURE OF ATTORNEY OF RECORD
/s/ David Schultz

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   **Exhibit "19"**   JUDGE _____   MAG JUDGE _____

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO

**I.**  Civil Categories: (Please check one category only ).

1. [✓]  General Civil
2. [ ]  Administrative Review/Social Security
3. [ ]  Habeas Corpus Death Penalty

*If under Title 28, §2255, name the SENTENCING JUDGE: _____

CASE NUMBER: _____

**II.**  **RELATED OR REFILED CASES** See LR 3.1 which provides in pertinent part: "If an action is filed or removed to this Court and assigned to a District Judge after which it is discontinued, dismissed or remanded to a State court, and subsequently refiled, it shall be assigned to the same Judge who received the initial case assignment without regard for the place of holding court in which the case was refiled. Counsel or a party without counsel shall be responsible for bringing such cases to the attention of the Court by responding to the questions included on the Civil Cover Sheet."

This action: [ ] is **RELATED** to another **PENDING** civil case [ ] is a **REFILED** case [ ] was **PREVIOUSLY REMANDED**

If applicable, please indicate on page 1 in section VIII, the name of the Judge and case number.

**III.**  In accordance with Local Civil Rule  3.8, actions involving counties in the Eastern Division shall be filed at any of the divisional offices therein.  Actions involving counties in the Western Division shall be filed at the Toledo office. For the purpose of determining the proper division, and for statistical reasons, the following information is requested.

ANSWER ONE PARAGRAPH ONLY. ANSWER PARAGRAPHS 1 THRU 3 IN ORDER.  UPON FINDING WHICH PARAGRAPH APPLIES TO YOUR CASE, ANSWER IT AND STOP.

(1)  **Resident defendant**. If the defendant resides in a county within this district, please set forth the name of such county

**COUNTY:**

Corporation  For the purpose of answering the above, a corporation is deemed to be a resident of that county in which it has its principal place of business in that district.

(2)  **Non-Resident defendant**. If no defendant is a resident of a county in this district, please set forth the county wherein the cause of action arose or the event complained of occurred.

**COUNTY:** Allen County, Ohio

(3)  **Other Cases**. If no defendant is a resident of this district, or if the defendant is a corporation not having a principle place of business within the district, and the cause of action arose or the event complained of occurred outside this district, please set forth the county of the plaintiff's residence.

**COUNTY:**

**IV.**  The Counties in the Northern District of Ohio are divided into divisions as shown below.  After the county is determined in Section  III, please check the appropriate division.

**EASTERN DIVISION**

[ ]  **AKRON**  (Counties: Carroll, Holmes, Portage, Stark, Summit, Tuscarawas and Wayne)
[ ]  **CLEVELAND**  (Counties: Ashland, Ashtabula, Crawford, Cuyahoga, Geauga, Lake, Lorain, Medina and Richland)
[ ]  **YOUNGSTOWN**  (Counties: Columbiana, Mahoning and Trumbull)

**WESTERN DIVISION**

[✓]  **TOLEDO**  (Counties: Allen, Auglaize, Defiance, Erie, Fulton, Hancock, Hardin, Henry, Huron, Lucas, Marion, Mercer, Ottawa, Paulding, Putnam, Sandusky, Seneca VanWert, Williams, Wood and Wyandot)

**Exhibit "19"**

**INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44**

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.(a) **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II. **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked**. (See Section III below; NOTE: federal question actions take precedence over diversity cases.)**

III. **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV. **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

V. **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

VI. **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

VII. **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII. **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

**Exhibit "19"**

**Exhibit "20"**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

KATHLENE SCARLETT,         :     Case No. 2:22-cv-4106

                   :

         Plaintiff,      :     Hon.

                   :

-vs-                     :

                   :

THE LITIGATION PRACTICE GROUP PC,     :

                   :

         Defendant.     :

## COMPLAINT AND REQUEST FOR DECLARATORY RELIEF AND JURY DEMAND

### Introduction

1.    This is an action for damages brought by a consumer against Defendant for violations of the Debt Adjustment Companies Act, R.C. § 4710.01, et seq. ("DACA"), the Ohio Consumer Sales Practices Act, R.C. § 1345.01, et seq. ("OCSPA"), the Ohio Credit Services Organization Act R.C. §4712.01, et seq. ("OCSOA"), the Credit Repair Organizations Act, 15 U.S.C. §§ 1679-1679j ("CROA"), the Telemarketing Sales Rule 16 C.F.R. § 310.2 ("TSR"), Breach of Contract, and Common Law Fraud, all of which prohibit persons engaged in debt adjusting and credit repair from engaging in abusive, deceptive, and unfair practices.

### Parties

2.    Plaintiff, KATHLENE SCARLETT, is a consumer residing at 1787 Cherokee Dr., Apt. A, Dayton, Ohio 45449.

3.    Upon information and belief, Defendant THE LITIGATION PRACTICE GROUP PC (hereinafter "LPG") is a California debt settlement and debt validation company operating from an address at 17542 E 17th Street, Ste 100, Tustin, CA 92780, and doing business in the state of Ohio.

1

**Exhibit "20"**

4.   Defendant regularly engages in business in Ohio and directed at residents of Ohio and have otherwise availed themselves of the Ohio marketplace and secured the benefits of that marketplace. Such conduct included, among other things; holding itself out as debt settlement company providing services to Ohio residents; directing business solicitations into the State of Ohio, directed at indebted Ohio residents, seeking participation in Defendants' debt settlement, credit repair and debt elimination programs; contracting in Ohio with Ohio consumers for various services, including debt validation; offering to perform and/or performing activities for Ohio residents including debt settlement, credit repair and debt elimination functions.

### **Statement of Facts**

5.   On or before September 2021, Plaintiffs contacted LPG to discuss possible debt elimination services.

6.    Plaintiff had several telephone conversations wherein she was led to believe she was retaining Defendant for debt adjustment services which necessarily included credit repair and debt elimination.

7.   Based upon the representations made by LPG in the phone calls, Plaintiff believed by enrolling in the program, she could eliminate their overall debt by disputing the validity of the debts under the statutes of the Consumer Financial Protection Bureau and the Fair Debt Collection Practices Act.

8.   A representative of LPG sent Plaintiffs an Agreement to review and sign; the representative also instructed Plaintiffs they had a right to withhold payments to their creditors while the accounts were in dispute.

9.   The written agreement that Plaintiff signed with the Defendants is attached hereto as Exhibit "A".

10.   On or about October 4, 2021, Plaintiff began paying Defendant $254.38 a month

2

### **Exhibit "20"**

for its services.

11.    Defendants charged substantial up-front fees; Plaintiff's credit scores severely reduced pursuant to her participation in the program; Plaintiff's credit scores will not recover in the near future.

12.    Enrolling in LPG's program resulted in no reduction to Plaintiff's total debt owed as agreed, in fact, Plaintiff's total indebtedness increased substantially due to interest and fees.

13.    Shortly after enrolling in Defendant's program, a lawsuit was filed against Plaintiff by one of her creditors.

14.    Enrolling in LPG's program resulted in no payments being made to Plaintiff's creditors.

15.    Upon information and belief, the only services provided to Plaintiff from Defendant was the mailing of verification packets to Plaintiff's creditors.

16.    While Defendant represented mailing these packets would eliminate Plaintiff's debt, it knew this representation was false, and the mailings would have no legal effect with regard to reducing Plaintiff's debt.

17.    Defendant made various misrepresentations or non-disclosures in an effort to induce Plaintiff to enter into the illegal agreement including, but not limited to:

- Unsubstantiated claims of savings; Defendant represented to Plaintiff that the program would eliminate her total debt; however, Defendant does not have a record of accomplishment to support that statement.

- Misleading or failing to adequately inform consumers, including Plaintiff, that they will be subject to continued collection efforts, including lawsuits, and that their account balances will increase due to extended nonpayment

3

under the program.

- Defendant represented that the majority of consumers which retain it go on to complete the program thereby becoming debt free; however, a high percentage of consumers who attempt Defendant's debt verification program do not become debt free as a result of its services.

- Defendant accepted money from Plaintiff for the purpose of eliminating all debts on the program for less than the amount owed knowing there was a substantial likelihood that they could not provide the services as promised. Defendant knew its business model was legally unsound and nonsensical.

18.    Based upon the misrepresentations of the LPG representative, Plaintiff agreed to enter into a contract for the debt relief services of LPG.

19.    Plaintiff agreed to pay specified fees which, unknown to Plaintiff, were illegal due to the substantial amount of the fees and requirement of payment up front.

20.    LPG withdrew over $2,600 in fees from Plaintiff over a period of approximately one year.

21.    The Telemarketing Sales Rule prohibits debt relief companies from charging up-front fees prior to settling accounts because, among other reasons, such a business model is designed to fail from the beginning. TSR, 16 C.F.R. § 310.4 (a)(5)(i)

22.    Further, given the lengthy period of time creditors do not receive money owed, (oftentimes without any contact with the debt relief companies or the debtor), the creditor will often opt to bring a lawsuit for money owed.

23.    Defendant advised Plaintiff to quit paying her debts knowing the debt would continue to accumulate interest, over the limit fees, and late fees.

4

**Exhibit "20"**

24.    Defendant represented they would attempt to eliminate Plaintiff's total debt balance by providing a debt elimination program by sending validation documentation to the third-party collectors collecting on the debts in the program hoping debt collection would cease.

25.    While disclaiming that it is practicing law, the vast majority of services LPG agreed to provide Plaintiff were in fact legal services. The Agreement is a legal fee agreement whereby LPG agreed to practice law and provide legal services in exchange for money.

26.    Defendant's actions did not reduce Plaintiff total debt balance, and in fact, Plaintiff owes more money and have been sued on numerous accounts enrolled in the Defendant's debt elimination program.

**Count One:**
**(Violations of the Ohio Consumer Sales Practices Act and Debt Adjustment Companies Act)**

27.    Plaintiff repeats, realleges, and incorporates by reference all of the foregoing paragraphs.

28.    The activity described in all previous paragraphs is a "consumer transaction" as defined by R.C. § 1345.01(A). Defendant solicited and retained Plaintiff to perform debt adjustment services for a fee.

29.    Plaintiff's debts at issue were incurred for personal, family and/or household use.

30.    Defendant is a "supplier" as that term is defined in R.C. § 1345.01(C), since Defendant engaged in the business of effecting "consumer transactions", either directly or indirectly, by operating a debt adjustments service for consumers in Ohio for purposes that are primarily for personal, family or household within the meaning specified in R.C. § 1345.01(A).

31.    Defendant is a "person" as defined by the DACA, R.C. § 4710.01(A) engaged in the act of "debt adjusting" as defined by the DACA, R.C. § 4710.01(B), and a "supplier" as

**Exhibit "20"**

defined by the OCSPA, R.C. § 1345.01(C), since Defendant was engaged in the business of debt adjusting, budget counseling, debt management, or debt pooling services, or holding oneself out, by words of similar import, as providing services to debtors in the management of their debt to a consumer in the State of Ohio for purposes that were primarily for personal, family or household use.

32.    Plaintiff is a "consumer" as defined by the OCSPA, R.C. § 1345.01(D).

33.    Defendant charged and accepted fees or contributions in excess of what are reasonable fees or contributions, in violation of R.C. §§ 4710.02(A)(3), 4710.02(B)(1-3) and 4710.02(F)(1). Defendant knew that the debt settlement program's fees exceeded the amount permitted by R.C. § 4710.02(B).

34.    Upon information and belief, Defendant failed to arrange for and undergo an audit conducted by an independent, third party, certified public accountant of the person's business and then file the audit and opinion with the consumer protections division of the attorney general in violation of R.C. §§ 4710.02(D)(1-2) and 4710.02(F)(2).

35.    Upon information and belief, Defendant failed to obtain and maintain insurance coverage not less than $100,000.00 for employee dishonesty, forgery, and fraud in violation of R.C. §§ 4710.02(E)(1-2) and 4710.02(F)(2).

36.    Defendant's transactions failed to include the notices, statements, and cancellation forms as defined by R.C. §§ 4710.05(A) and (B). Such failure is a violation of R.C. § 1345.02(A) of the OCSPA.  Defendant committed unfair, deceptive and unconscionable acts or practices in violation of R.C. §§ 1345.02(A) and/or 1345.03(A) of the Consumer Sales Practices Act including:

   •    Defendant operated a debt settlement company in the State of Ohio without

6

**Exhibit "20"**

complying with applicable Ohio law, namely, R.C. § 4710, et seq.

- Defendant charged an excessive fee for debt adjusting and failed to provide the service pursuant to the Failure to Deliver Rule, O.A.C. § 109:4-3-09(A).

- Defendant is an out of state corporations, failed to register with the Ohio Secretary of State prior to doing business in Ohio as required by R.C. § 1703.03.

- Defendant made false or misleading statements to induce a purchaser to pay for services.

- Defendant engaged in debt adjustment activities, including holding out that it could affect the adjustment, compromise, or discharge of any account, note, or other indebtedness of consumers who sign up for its services, without complying with R.C. §§ 4710.02(A) and (B), specifically that Defendant charged fees in excess of those permitted by the Ohio Debt Adjusters Act.

- Defendant violated Ohio Adm. Code § 109:4-3-09(A) by accepting money from consumers for goods or services ordered by mail, telephone, or otherwise and then failed to make full delivery or make a full refund as promised.

- Defendant had knowledge of the inability of the consumer to receive a substantial benefit from the subject of the consumer transaction.

- Defendant required the consumer to enter into a consumer transaction on terms the supplier knew were substantially one-sided in favor of the supplier.

7

**Exhibit "20"**

37.    Such acts and practices have been previously determined by Ohio courts to violate the Consumer Sales Practices Act, R.C. § 1345.01 et seq.

*38.*    Defendant committed said violation after such decisions were available for public inspection pursuant to R.C. § 1345.05(A)(3). *State ex rel. Petro v. Debticated Consumer Counseling, Inc.* (Lucas Co. C.P. 2003), Case No. CIO 2002 4856, (PIF# 2173); *State of Ohio ex rel. Cordray v. United Law Group, Inc.* (Franklin Co. C.P. 2010)*, Case No. 10 CVH 021567, (PIF# 2874); *State of Ohio, ex rel. Cordray v. Brotherton* (Greene Co. C.P. 2010), Case No. 2009 CV 0709, (PIF# 2831); *In Re Nationwide Debt Solution, Inc.* (2010), Docket No. 384784 (PIF# 2878); *In Re Budulator Corporation, Inc.* (2010), Docket No. 388509 (PIF# 2876); *State of Ohio ex rel. Rogers v. Richard Pinnix d/b/a Pinnix Business Services* (Franklin Co. C.P. 2008), Case No. 07CVH08-10491(PIF# 2726); *State of Ohio ex rel. Dann v. American Housing Authority, Inc.* (Lucas Co. C.P. 2008), Case No. CI-0200705443 (PIF# 2676); *State of Ohio ex rel. Petro v. AAA All Ohio Roofing, et al.* (Franklin Co. C.P. 2003), Case No. 02CVH022119 (PIF# 2152); *State ex rel. Montgomery v. Bayview Group, Inc.* (Franklin Co. C.P. 2003), Case No. 97CVH12 10749 (PIF# 1727).

39.    Plaintiff has suffered damages due to the illegal and deceptive acts in violation of the Ohio Consumer Sales Practices Act in that:

- She paid fees that were both illegal and were not in exchange for any services of value.

- She quit paying her creditors upon the advice of Defendant's representatives and the many misrepresentations that were made to her described in the Complaint.

- As a result, her creditors exercised their right to the default interest rate

8

accelerating the balances owed by enormous amounts to be determined at trial.

- She suffered mental and emotional hardship, mental and emotional stress, and anxiety.

### Count Two:
### (Violations of the Ohio Credit Services Organizations Act)

40.    Plaintiff repeats, realleges, and incorporates by reference all of the foregoing paragraphs.

41.    Defendant is a credit service organization as defined by R.C. § 4712.01(C)(1) in that Defendant accepted money in order to improve Plaintiffs' credit record and gave advice in connection with doing so.

42.    Plaintiff is a buyer as defined by R.C. § 4712.01(A) in that she was solicited and purchased the services of Defendant.

43.    Defendant has failed to register as a credit services organization with the Ohio Division of Financial Institutions in violation of R.C. § 4712.02(A).

44.    Pursuant to R.C. §4712.11(A), Defendant's violation of R.C. § 4712.02(A) constitutes unfair or deceptive acts or practices in violation of R.C. § 1345.02.

45.    Plaintiff has suffered damages due to the illegal and deceptive acts in violation of the Ohio Credit Services Organization Act in that:

- she paid fees that were both illegal and were not in exchange for any services of value.

- she quit paying her creditors upon the advice of Defendant's representatives and the many misrepresentations that were made to her described in the Complaint.

9

**Exhibit "20"**

- As a result, her creditors exercised their right to the default interest rate accelerating the balances owed by enormous amounts to be determined at trial.

- She suffered mental and emotional hardship, mental and emotional stress, and anxiety.

### Count Three:
### (Violations of the Credit Repair Organizations Act)

46.    Plaintiff repeats, realleges, and incorporates by reference all of the foregoing paragraphs.

47.    The Credit Repair Organizations Act was enacted to ensure that prospective buyers of the services of credit repair organizations are provided with the information necessary to make an informed decision regarding the purchase of such services and to protect the public from unfair or deceptive advertising and business practices by credit repair organizations.  15 U.S.C. § 1679(b). The CROA provides that a credit repair organization:

a.    May not charge or receive any money or other valuable consideration for services which the credit repair organization has agreed to perform before such service is fully performed, 15 U.S.C. § 1679(b);

b.    May not provide services without a written and dated contract that includes a full and detailed description of the services to be performed and other terms and conditions set forth in 15 U.S.C. §§ 1679d(a)(1), 1679d(b);

c.    Must provide to the consumer, before any contract or agreement between the consumer and the credit repair organization is executed, the written statement set forth in Section 405(a) of CROA concerning consumer credit file rights under state and federal law and the right to cancel a contract with

10

a credit repair organization, 15 U.S.C. § 1679c; and

    d.  Must allow a consumer to cancel any contract with the credit repair organization without penalty or obligation if the consumer notifies the credit repair organization of the consumer's intention to cancel before midnight of the third business day after the date the contract between the consumer and the credit repair organization is executed, 15 U.S.C. § 1679e.

48.    Defendant is "credit repair organizations" as that term is defined in the Credit Repair Organizations Act ("CROA"), because they use instrumentalities of interstate commerce to sell, provide, or perform (or represent that such defendant can or will sell, provide, or perform) a service for the express or implied purpose of improving a consumer's credit record, credit history, or credit rating, and this service is offered in return for the payment of money. 15 U.S.C. § 1679a(3).

49.    Defendant received money prior to fully performing its services, and failed to provide any of the proper disclosures, contracts, or right to cancel forms.

50.    Defendant's conduct as alleged in Count Three of this Complaint violates the Credit Repair Organizations Act, and the Defendants are liable for these violations.

51.    Plaintiff has suffered damages due to the illegal and deceptive acts in violation of the Credit Repair Organization Act in that:

- She paid fees that were both illegal and were not in exchange for any services of value.

- She quit paying her creditors upon the advice of Defendant's representatives and the many misrepresentations that were made to them described in the Complaint.

11

- As a result, her creditors exercised their right to the default interest rate accelerating the balances owed by enormous amounts to be determined at trial.

- She suffered mental and emotional hardship, mental and emotional stress, and anxiety.

### Count Four:
### (Fraud / Fraud in the Inducement)

52.    Plaintiff repeats, realleges, and reincorporates by reference all of the foregoing paragraphs.

53.    Plaintiff specifically relied on the representations, misrepresentations, non-disclosures and implied representations described in Paragraphs 9 through 32 when making the determination to enter into a contract or continue using the services of Defendant.

54.    Defendant, through representations, websites, and the Agreement create the appearance that Plaintiff is entering into an agreement that will greatly reduce her outstanding debts.

55.    Defendant engaged in the unlawful conduct previously alleged with the actual and/or imputed knowledge of the unlawful conduct.

56.    Defendant knowingly engaged in such conduct with the purpose of inducing payment from Plaintiff.

57.    Plaintiff have been injured by the wrongful and fraudulent conduct of Defendant and have been damaged in an amount to be established at trial, as well as entitled to punitive damages in an amount to be established at trial.

### Count Five:
### (Violations of the Telemarketing Sales Rule)

58.    Plaintiff repeats, realleges, and reincorporates by reference all of the foregoing

12

**Exhibit "20"**

paragraphs.

59.    The Telemarketing Sales Rule ("TSR") was promulgated for the explicit purpose of preventing consumer harm from debt relief operations like the venture of the Defendant in this case.

60.    The TSR, 16 C.F.R. § 310.2(m), defines "debt relief service" as "any program or service represented, directly or by implication, to renegotiate, settle, or in any way alter the terms of payments or other terms of the debt between a person and one or more unsecured creditors or debt collectors, including, but not limited to, a reduction in the balance, interest rate, or fees owed by a person to an unsecured creditor or debt collector."

61.    The TSR, 16 C.F.R. § 310.2(dd), defines "telemarketing" as "a plan, program, or campaign which is conducted to induce the purchase of goods or services or a charitable contribution, by use of one or more telephones and which involves more than one interstate telephone call."

62.    The TSR, 16 C.F.R. § 310.2 (aa), defines "seller" as "any person who, in connection with a telemarketing transaction, provides, offers to provide, or arranges for others to provide goods or services to the customer in exchange for consideration."

63.    The TSR, 16 C.F.R. § 310.2 (cc), defines "telemarketer" as "any person who, in connection with telemarketing, initiates or receives telephone calls to or from a customer or donor."

64.    Defendants are "sellers" or "telemarketers" of "debt relief services", who engages in "telemarketing", as defined in the TSR.

65.    The TSR, 16 C.F.R. § 310.4 (a)(5)(i), provides that a seller or a telemarketer may not request or receive payment of any fee or consideration for any debt relief service until and

13

unless among other things, "the seller or telemarketer has renegotiated, settled, reduced, or otherwise altered the terms of at least one debt pursuant to a settlement agreement, debt management plan, or other such valid contractual agreement executed by the customer" and "the customer has made at least one payment" pursuant too such an agreement or plan.

66.    The TSR, 16 C.F.R. § 310.4(a)(5)(ii), provides that a seller or a telemarketer may request or require customers to place funds in an account to be used for the debt relief provider's fees and for payments to creditors or debt collectors in connection with the renegotiation or settlement of a debt, provided that, among other things: the customer owns the funds held in the account and is paid interest on the account" and "the customer may withdraw from the debt relief service at any time without penalty and must receive all funds in the account, other that funds earned by the debt relief service in compliance with § 310.4(a)(5)(i)(A) through (C), within seven (7) business days of the consumer's request."

67.    The TSR, 16 C.F.R. § 310.3(a)(2)(ii), prohibits a seller or telemarketer from misrepresenting, directly or by implication, in the sale of goods or services, any material restriction, limitation, or condition to purchase, receive, or use goods or services that are the subject of the sales offer.

68.    The TSR, 16 C.F.R. § 310.3(a)(2)(iii), prohibits a seller or telemarketer from misrepresenting, directly or by implication, in the sale of goods or services, any material aspect of the performance, efficacy, nature, or central characteristics of goods or services that are the subject of a sales offer.

69.    The TSR, 16 C.F.R. § 310.3(a)(2)(x), prohibits a seller or telemarketer from misrepresenting, directly or by implication, in the sale of goods or services, any material aspect of any debt relief service.

14

**Exhibit "20"**

70.    In the course of telemarketing debt relief services, Defendant has requested and received payment of fees from Plaintiffs for debt relief services before renegotiating, settling, reducing, or otherwise altering the terms of his debts. Defendant requested and received payment of these fees prior to Plaintiffs making at least one payment pursuant to any settlement agreement, debt-management plan, or other valid contractual agreement between Plaintiffs and their creditors.

71.    Therefore, Defendant's act or practices violate the TSR, 16 C.F.R. § 310.4(a)(5)(i), and are abusive acts or practices in telemarketing.

72.    Plaintiff was charged advances fees for Defendant's debt relief services.

73.    Therefore, Defendant's representations as described herein violate the TSR, C.F.R. § 310.3(a)(2)(ii) and (x), and are deceptive acts or practices in telemarketing.

74.    In numerous instances, in connection with advertising, marketing, promoting, offering for sale, or sale of debt relief services, Defendant represented to Plaintiff directly or indirectly, expressly or by implication, that her total debt amount would be reduced by up to 50%.

75.    In fact, Defendant does not have a track record of consistent debt reduction of this degree, if any at all.

76.    Therefore, Defendant's representations as described herein violate the TSR, C.F.R. § 310.3(a)(2)(iii) and (x), and are deceptive acts or practices in telemarketing.

77.    In addition, Defendant and its representatives in making its savings claims (amounts of monies s would save by using Defendant's services) did not disclose the following in violation of the TSR:

- State the savings was based on the Plaintiff debt when she signed up

15

for the program.

- Include the impact of the Defendant's fees on their claimed savings to the Plaintiff.

- In calculating the results over time, did not include customers who dropped out or otherwise failed to complete the program.

### Count Six
### (Breach of Contract)

78.  Plaintiff repeats, realleges, and reincorporates by reference all of the foregoing paragraphs.

79.  Defendant entered into a contract with Plaintiff and represented it would eliminate Plaintiff's debt.

80.  Defendant further provided advice and explanation on the Fair Credit Reporting Act, the Federal Trade Commission Act, the Truth in Lending Act, and the Fair Debt Collection Practices Act.

81.  Defendant cite the statutes listed in the prior paragraph as authority for its 'Debt Validation Services' though it is not clear how the Defendant would eliminate defendant's debt through the statutes listed in paragraph 86.

82.  Defendant did not perform its obligations pursuant to the contract as agreed as no debts of Plaintiff were eliminated.

83.  Plaintiff paid Defendant pursuant to the contract as agreed.

84.  Plaintiff has been damaged by Defendant's non-performance and resulting breach of the contract.

85.  As such, Plaintiffs is entitled to damages for the breach of contract.

### PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff Teresa Klaus, prays this Court grant the following relief:

1.  ISSUE an order declaring that the Defendant has engaged in acts and practices in

16

violation of the Consumer Sales Practices Act, R.C. § 1345.01 et seq., the Debt Adjustment Companies Act, R.C. § 4710.01 et seq., the Ohio Credit Services Organization Act R.C. § 4712.01, et seq., the Credit Repair Organization Act 15 U.S.C. § 1679, et seq. and the Telemarketing Sales Rule 16 C.F.R. § 310, et seq.

2. ISSUE a Permanent Injunction enjoining the Defendant, its agents, servants, employees, successors or assigns, and all persons acting in concert and participation with it, directly or indirectly, through any corporate device, partnership, or other association, under this or any other name, from engaging in the acts and practices which Plaintiff complains in the State of Ohio until complying with the laws of the State of Ohio and satisfaction of any monetary obligations to Plaintiff.

3. GRANT judgment against the Defendant in the amount of three times the actual damages or $200.00 for each unlawful act specified, whichever is greater, pursuant to R.C. § 1345.09(B).

4. GRANT judgment against the Defendant for common law fraud in an amount of damages in excess of $25,000.00.

5. GRANT judgment against the Defendant in excess of $50,000.00 for violations of the Telemarketing Sales Rule 16 CFR§ 310, et seq.

6. GRANT statutory damages for violations of the Credit Repair Organization Act 15 U.S.C. § 1679g.

7. GRANT statutory damages for violations of the Ohio Credit Services Organization Act R.C. § 4712.10.

8. GRANT judgment against the Defendant in excess of $25,000.00 for its breach of contract with Defendants.

17

**Exhibit "20"**

9.   Costs and reasonable attorney fees, pursuant to R.C. § 1345.09(F)(2).

10. GRANT punitive damages.

11. GRANT such other relief as this Court deems to be just, equitable and appropriate.


           Respectfully Submitted:


           */s/ Jeremiah E. Heck*
           Jeremiah E. Heck (0076742)
           David B. Schultz (0077281)
           Luftman Heck & Associates LLP
           6253 Riverside Drive, Suite 200
           Dublin, Ohio 43017
           Phone: (614) 224-1500
           Fax: (614) 224-2894
           dschultz@lawlh.com
           *Attorney for Plaintiffs*




### DEMAND FOR JURY TRIAL

Please take notice that Plaintiff, Kathlene Scarlett, demands trial by jury in this action.


           */s/ Jeremiah E. Heck*
           Jeremiah E. Heck (0076742)

**Exhibit "20"**

## Debt Settlement

You may request that LPG settle any debt identified below at any point in the course of LPG's representation of you. Where requested, LPG will negotiate the most favorable settlement it is able to negotiate on your behalf. Any settlement reached as a result of your request shall be your responsibility, and shall be paid directly from you to the creditor. At the point that you reach a settlement with a creditor, your payment to LPG will be reduced and to adjust for the settled account being removed from the representation herein contemplated. LPG will only settle a debt where litigation is active or contemplated.

## Actions Required of You

You agree to provide LPG with any and all correspondence you receive from any creditor, credit bureau, attorney, or court of law. You further agree to keep a log of all communications, including telephonic and electronic communications, from any creditor or credit reporting agency to you from the date you execute this Agreement until the conclusion of your representation.

## Right to Conduct Business Electronically and Contact You

You agree that LPG may contact you electronically and telephonically and that any and all business with LPG may be conducted electronically. You further agree that LPG may transmit data, including that regarding your credit profile, electronically. You further agree that any electronic communication carries the risk of disclosure to a third party and that LPG will not be held responsible for any such inadvertent disclosure of information. A facsimile or email transmission of this signed agreement, via an email attachment or otherwise, will be as valid as the original signed agreement. This agreement may not be modified except in writing by both parties.

## Malpractice Insurance

LPG hereby discloses that it maintains a malpractice insurance policy that covers its representation of you and that the limit of such policy is no less than $1,000,000.00 per claim and $1,000,000.00 per claimant. If you desire to make a claim against that insurance policy, you must first contact LPG and disclose your claim and the nature of the claim, at which point LPG agrees to assist you in obtaining any and all information necessary to prepare a file a claim.

## Applicable Law and Confidentiality

You understand and agree that LPG is based out of the State of California, is a licensed law corporation under the State Bar of California, and that California law applies to this Agreement. You further understand that LPG is bound to strict rules of confidentiality and attorney-client privilege in connection with the rules applicable to attorneys licensed to practice law in the State of California. You further understand and agree that you have sought the representation of LPG with full knowledge of its location and licensing, and that LPG works with attorneys licensed in all 50 states and the District of Columbia as affiliated counsel to allow LPG to provide a complete representation of you in any state in which you are sued or in which a dispute might arise. You have the right to know the licensed attorney with whom LPG has affiliated in any state and at any time but understand and agree that LPG may choose to change the local attorney with whom it is affiliated in any given jurisdiction, provided only that at all times LPG shall have an affiliated attorney in all 50 states and the District of Columbia.

**Exhibit "20"**

ID: 4417741 Signed: 2021-09-20T12:22:49-05:00

**Client Acknowledgements**

By signing this agreement, you acknowledge that LPG has not instructed you to breach any contract, fail to make any required payment, or fail to perform any obligation you have lawfully incurred. LPG reserves the right to terminate this agreement if (a) required by the State Bar of California Rules of Professional Conduct, (b) you refuse to communicate with LPG or respond to reasonable requests for information necessary to represent you in an effective way, (c) you fail to make timely payment of the amount due under hereunder, or (d) your payments are returned multiple times for any reason. LPG will not pay any of the debts identified below and does not guarantee that any debt you now have or may incur will be invalidated or settled in association with LPG's representation of you. You understand and agree that you must forward any communication you receive in printed or electronic form from any creditor, court, or representative of other a creditor or a court to the address, email, or fax number provided below, and that you must keep a log of all telephonic communications with any creditor or credit reporting agency. You, the client, may cancel this Agreement at any time by submitting three days' written notice of cancellation by mail, email, or fax, and shall not be responsible for any payments due after the date of cancellation. A payment due within three days of the date of written cancellation shall be processed and shall not be refunded.

Client Signature: _Kathlene Scarlett_

Date: 9/20/2021

Co-Applicant Signature: _____

Date: _____

**THE LITIGATION PRACTICE GROUP PC**

**Daniel S. March, Managing Shareholder**
**17542 E. 17th Street, Ste 100**
**Tustin, CA 92780**
**Support@LPGLaw.com**
**Tel. 949.715.0644**
**Fax. 949.315.4332**

Exhibit "20"

ID: 4417741 Signed: 2021-09-20T12:22:49-05:00

## Description of Services to be Performed

LPG will obtain your credit reports, analyze them, and develop strategies for correcting invalid or unlawful debts for which you should not be held legally responsible. Where appropriate, LPG will use existing laws and interact with creditors and credit bureaus on your behalf to invalidate your debts and remove such invalid debts from your credit reports. LPG will also interact with collection agencies, as applicable, to invalidate your debts by requiring them to supply evidence of your indebtedness to them, or any other legal mechanism. LPG will also consult with you regarding all aspects of the credit reporting process, including all laws applicable to the same. LPG will also investigate your delinquent accounts in order to determine the most effective method for invalidating your debts or otherwise removing any legal liability for such debts, up to and including the initiation of lawsuits on your behalf against your creditors and their third-party debt collectors.

In addition, if a lawsuit is filed against you, LPG will represent you in such a lawsuit and will not charge any additional fees for such representation provided such a lawsuit was initiated after the date you sign this Agreement. In the event a lawsuit was initiated against you before the date you execute this Agreement and you elect to have LPG represent you, an additional fee of $500.00 will be charged. Where appropriate, if legal fees are recovered from an adverse party, LPG will retain such fees for its services. You will be responsible to pay any damages resulting from any lawsuit. Any costs incurred in a lawsuit will be paid by LPG out of the fees set forth below, including the fees of any attorney retained on your behalf in a jurisdiction in which LPG is not admitted to practice law. No additional payment from you to LPG will be necessary for the defense of any lawsuit filed against you after the date you execute this Agreement. You will, however, be responsible to pay any damages resulting from such lawsuits or any settlements reached in the course of such lawsuits.

## Fees

You will pay the fees set forth below for the legal services provided by LPG, which services are outlined above. No fee or other cost will be charged or collected beyond the flat fee set forth below. This is the only amount that you have to pay to LPG for its services, which includes any cost, filing fee or vendor's fee associated with LPG's representation of you, and this fee is not escrowed but rather earned received by LPG. This fee does NOT, however, include any settlement that you may have to pay to any creditor if you opt to settle a debt prior to or during the course of a lawsuit.

## Refund Policy

If you reach the conclusion of LPG's representation of you and a debt remains in dispute without resolution, you will be eligible to receive a full refund of the fees that you paid towards your representation in connection with that account (i.e., you will be refunded the fees paid in proportion to the debt that was not resolved). A debt is "in dispute" under this paragraph if, at the time of completion of LPG's representation of you, no lawsuit was filed regarding the debt, no settlement was reached regarding the debt, no acknowledgment of invalidity was received from the creditor regarding the debt, and the debt is still reporting to one of the following credit bureaus: Experian, Equifax, or Transunion.

**Exhibit "20"**

ID: 4417741 Signed: 2021-09-20T12:22:49-05:00

## Preauthorized Checking and ACH Authorization Form

I hereby apply for and agree to establish a non-interest bearing special purpose account (the "Account") with a bank ("Bank") selected by LPG, its payments processors, and/or their successors for the purpose of accumulating funds to pay for such goods and services as I so direct LPG to perform. This application is subject to Bank's customer identification program, as required by the USA PATRIOT ACT and other applicable laws, and accordingly, I hereby represent that the above information is true and complete to the best of my knowledge and belief. The bank account information provided above may be subject to account validation processes to include pre-notation and a $0.01 micro-deposit.

**Account Owner Name:** Kathlene L Scarlett

**Address:** 1787 Cherokee Drive Apt A  **City:** Dayton  **State:** OH  **Zip:** 45449

**Mobile Phone #:**  **E-Mail:** scarlettkathlene99@gmail.com

## DESIGNATED BANK ACCOUNT INFORMATION

**Bank Name:** JPMORGAN CHASE

**Name as it appears on bank ACCOUNT:** Kathlene L Scarlett

**Routing Number:** ███0037  **Account Number:** ███2255  **Checking or Saving:** Checking

## DESIGNATED BANK ACCOUNT PAYMENT AUTHORIZATION SCHEDULE

**Total Amount of Debit:** $254.38  **Date of Next Debit:** Oct 04, 2021

**I authorize Payment Automation Network** to initiate Automatic Clearing House (ACH) or Electronic Funds Transfer (EFT) or Remotely Created Check (RCC) from my designated bank account at the financial institution identified above. I authorize Payment Automation Network to debit my bank account according to the schedule of debits provided to Payment Automation Network by me or on my behalf or as otherwise provided by agreement. I understand that debits will be withdrawn on the due date unless otherwise indicated and that sufficient funds must be available in designated account at least two (2) business days prior to the actual date of the debit. Upon my approval, Payment Automation Network may adjust the amount being debited from designated bank account. This authorization is to remain in force until the schedule of debits is completed or until Payment Automation Network has received written notification from me of a change or termination, allowing Payment Automation Network no fewer than five (5) business days to act. Payment Automation Network shall not be liable to any person for not completing a transaction as a result of any limit on my designated bank account or if a financial institution fails to honor any debit from such account. I understand it is my responsibility to notify Payment Automation Network immediately if a scheduled debit does not occur. I authorize Payment Automation Network to recover funds by ACH/EFT/RCC debit from my bank account in the event of an error or in the event that a prior debit is returned for any reason, including non-sufficient funds. I understand that a $25.00 service charge will be added for every NSF draft. I understand I can call Payment Automation Network at 800-813-3740 to cancel the automatic draft payments. Payments will be drafted on the payment due date of the original Servicing agreement. I understand and agree that Payment Automation Network, Inc. is a private company, and is not affiliated with any academic or

**Exhibit "20"**

ID: 4417741 Signed: 2021-09-20T12:22:49-05:00

Case: 3:22-cv-00342-WHR-PBS Doc #: 1-1 Filed: 11/18/22 Page: 5 of 10 PAGEID #: 23

## Electronic Payment Authorization

**Bank Name:** JPMORGAN CHASE

**Name on Account:** Kathlene L Scarlett

**Account Type:** Checking

 Other (specify: )

**Routing Number:** ▮▮▮▮▮

**Account Number:** ▮▮▮▮▮

**Next Payment Date:** Oct 04, 2021 **Amount:** $ 254.38

**Recurring Payment Date:** 4th

By signing below, I authorize and permit LPG or their designees to initiate electronic funds transfer via an Automated Clearing House system (ACH) from my account listed above. I will also provide LPG with a voided check or savings deposit slip.

If necessary, LPG may make adjustments if errors have occurred during the transaction. The date of the draft is listed above, however, if the draft date falls on a weekend or bank holiday, the debit transaction will take place on the next business day. This authority will remain in effect until LPG is notified by the member in writing at least 5 days prior to the next scheduled draft date. No other forms of cancellation by members will be observed. If the debit is returned because of non-sufficient funds or uncollected funds, then the originator and its financial institution may reinitiate the entry up to two (2) times. The reversal of funds from a client's account that was drafted in error cannot be made until seven business days from the draft date. The member agrees to waive all rights of reversal or refusal of any payment on any draft that LPG may make against the member's bank account while services are performed. The member agrees with all of the provisions and conditions outlined within.

### Acknowledgment of Refunds & Draft Date Changes

ACH Refunds: If a refund is due such will be made through the ACH process only. Refunds may take up to 10 days to process. In the event my EFT or draft is returned from my bank unpaid, I agree that a fee of $25.00 or as allowed by law may be charged to my account via draft or EFT. Furthermore, I warrant that I am authorized to execute this payment authorization and the above information is true and correct. Draft Date Changes: A client may stop any ACH debit by providing written notice to LPG at least three (3) business days prior to the scheduled payment. If you should need to notify us of your intent to cancel and/or revoke this authorization you must contact us three (3) business days prior to the questioned debit being initiated.

**Client Signature:**
*Kathlene Scarlett*

**Date**:
9/20/2021

**Printed Name:**
Kathlene Scarlett

Exhibit "20"

ID: 4417741 Signed: 2021-09-20T12:22:49-05:00

governmental entity. The Payment Automation Network, Inc. service bridges the gap between the student loan consolidation company Software and ACH, EFT, or RCC processor. Payment Automation Network, Inc. is not a money transmitter or debt collection agency and does not receive money from individual debtors. Payment Automation Network, Inc. is not engaged in the business of debt or credit counseling or the provision of other services to individual debtors. Payment Automation Network, Inc. does not solicit, offer loan consolidation services, or provide services directly to individual debtors. Payment Automation Network, Inc. does not have a contractual relationship with individual debtors to affect the adjustment, compromise, or discharge of any loan account.

I have read and understand the information contained in this document and I affirm that the above information given by me is accurate and true to the best of my knowledge.

**Account Holder's Signature:** *Kathlene Scarlett*                    **Date:** 9/20/2021

**Exhibit "20"**

ID: 4417741 Signed: 2021-09-20T12:22:49-05:00

## Schedule of Payments

I agree to this payment schedule – **Client Initials:** KS

| Payment # | Process Date | Amount |
|-----------|--------------|--------|
| 1 | Oct 04, 2021 | $254.38 |
| 2 | Nov 04, 2021 | $254.38 |
| 3 | Dec 06, 2021 | $254.38 |
| 4 | Jan 04, 2022 | $254.38 |
| 5 | Feb 04, 2022 | $254.38 |
| 6 | Mar 04, 2022 | $254.38 |
| 7 | Apr 04, 2022 | $254.38 |
| 8 | May 04, 2022 | $254.38 |
| 9 | Jun 06, 2022 | $254.38 |
| 10 | Jul 05, 2022 | $254.38 |
| 11 | Aug 04, 2022 | $254.38 |
| 12 | Sep 06, 2022 | $254.38 |
| 13 | Oct 04, 2022 | $254.38 |
| 14 | Nov 04, 2022 | $254.38 |
| 15 | Dec 05, 2022 | $254.38 |
| 16 | Jan 04, 2023 | $254.38 |
| 17 | Feb 06, 2023 | $254.38 |
| 18 | Mar 06, 2023 | $254.38 |
| 19 | Apr 04, 2023 | $254.38 |
| 20 | May 04, 2023 | $254.38 |
| 21 | Jun 05, 2023 | $254.38 |
| 22 | Jul 05, 2023 | $254.38 |
| 23 | Aug 04, 2023 | $254.38 |
| 24 | Sep 05, 2023 | $254.38 |
| 25 | Oct 04, 2023 | $254.38 |
| 26 | Nov 06, 2023 | $254.38 |
| 27 | Dec 04, 2023 | $254.38 |
| 28 | Jan 04, 2024 | $254.38 |
| 29 | Feb 05, 2024 | $254.38 |
| 30 | Mar 04, 2024 | $254.22 |

**Exhibit "20"**

ID: 4417741 Signed: 2021-09-20T12:22:49-05:00



P.O. Box 513018, Los Angeles, CA 90051-1018
Tel. (949) 715-0644 · Fax (949) 315-4332
Support@LPGLaw.com

# LEGAL SERVICES AGREEMENT

## Legal Services

The Litigation Practice Group PC, a State Bar of California licensed law corporation, and its employed and affiliated attorneys (collectively "LPG") will provide legal services wherein it will represent you in connection with the disputes you have with the creditors listed below (see Creditor Information). LPG will do the following as part of its representation of you:

- Assist you in stopping creditors and any related debt collectors from harassing or contacting you in connection with any of the debts identified below;
- Dispute the legal validity of the debts identified below;
- Assist you in removing erroneous or inaccurate information reported in connection with debts identified below;
- Represent you in any lawsuit filed against you in connection with any of these debts;
- Defend you against any collection activity or lawsuit on any invalidated debt at any point in time, without expiration, in connection with any debt identified below;
- Initiate legal action in a court of competent jurisdiction against any creditor that violates any state or federal law in connection with any debt identified below; and
- Determine your qualification for bankruptcy under Chapter 7 or Chapter 13 of the U.S. Bankruptcy Code; and counsel you regarding the procedures and effects of bankruptcy as well as your qualification to file the same.

LPG will serve as your attorney for all purposes in connection with these disputes and will be available to render all legal assistance necessary to resolve these debts. The fees that are set forth below are flat fees that are all inclusive – no additional fee or cost will be charged by LPG at any time during the duration of your dispute with the creditors identified below. All fees are earned by LPG at the time they are paid and are for services rendered to you as set forth herein.

## Client Authorization

You authorize LPG to challenge, where applicable, each of the debts listed below, which you believe to be in any way invalid, inaccurate, or otherwise without a legal basis. You also authorize LPG to obtain a copy of your credit report to assist in the process of analyzing your account and developing a strategy regarding the resolution of debts that are excessive or otherwise unauthorized by law. You further authorize LPG, acting under power of attorney for you, to affix your signature to documents sent on your behalf in relation to the matters addressed herein. Finally, you authorize LPG to communicate with you via email, text message, telephone, and facsimile. Any of the authorizations set forth herein can be revoked at any time by written communication.

**Exhibit "20"**

ID: 4417741 Signed: 2021-09-20T12:22:49-05:00

Case: 3:22-cv-00342-WHR-PBS Doc #: 1-1 Filed: 11/18/22 Page: 9 of 10 PAGEID #: 27

## Creditor Information

| Creditor | Account # | Debt Balance |
|----------|-----------|--------------|
| WEBBNKFHUT | ████5026 | $3,708.00 |
| SYNCBMORRIS | ████0491 | $1,611.00 |
| BBYCBNA | ████7415 | $1,475.00 |
| MERRICK BK | ████4585 | $1,448.00 |
| MDNGHT VLVT | ███9229 | $1,443.00 |
| CRDT FIRST | █6795 | $1,158.00 |
| CREDITONEBNK | ████6995 | $1,029.00 |
| Seventh Avenue | ███9229 | $871.00 |
| WEBBANKAVANT | █7579 | $505.00 |
| SYNCBJCP | ████8923 | $492.00 |
| CAP1WMT | ████5921 | $231.00 |
|  |  | **$13,971.00** |

Exhibit "20"

ID: 4417741 Signed: 2021-09-20T12:22:49-05:00

## Client Information

**Name**: Kathlene Scarlett
**Address**: 1787 Cherokee Drive Apt A, Dayton OH 45449

**Home Phone:**
**Cell Phone:** 937-313-2050
**Email:** scarlettkathlene99@gmail.com
**Last 4 SSN:** XXX-XX-4952

**Exhibit "20"**

ID: 4417741 Signed: 2021-09-20T12:22:49-05:00

JS 44 (Rev 04/21)  **CIVIL COVER SHEET**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**

Teresa Klaus

**DEFENDANTS**

The Litigation Practice Group

**(b)** County of Residence of First Listed Plaintiff  Allen, OH
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant  Orange, CA
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Jeremiah Heck, Luftman Heck & Associates 614 224
1500. 6253 Riverside Dr., Ste 200, Dublin, OH 43017

Attorneys *(If Known)*

Matthew T. Anderson, 1160 Dublin Road, Suite 400,
Columbus, OH 43125, 614-221-7663

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1  U S Government Plaintiff | ☐ 3  Federal Question *(U.S. Government Not a Party)* |
| ☐ 2  U S Government Defendant | ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)* |

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*                    Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | 3729(a)) |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | **INTELLECTUAL** | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| Student Loans | ☐ 340 Marine | Injury Product | | New Drug Application | ☐ 470 Racketeer Influenced and |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | | ☐ 840 Trademark | Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 880 Defend Trade Secrets | ☐ 480 Consumer Credit |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | Act of 2016 | (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | Act | | ☐ 485 Telephone Consumer |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | ☐ 720 Labor/Management | **SOCIAL SECURITY** | Protection Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| | ☐ 362 Personal Injury - | Product Liability | ☐ 751 Family and Medical | ☐ 863 DIWC/DIWW (405(g)) | Exchange |
| | Medical Malpractice | | Leave Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement | | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | Income Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 870 Taxes (U S Plaintiff | Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | or Defendant) | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party | ☐ 899 Administrative Procedure |
| ☐ 290 All Other Real Property | ☐ 445 Amer w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | 26 USC 7609 | Act/Review or Appeal of |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | Agency Decision |
| | ☐ 446 Amer w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | ☐ 950 Constitutionality of |
| | Other | ☐ 550 Civil Rights | Actions | | State Statutes |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

**V. ORIGIN** *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
USC 1679-1679, 16 CFR 310.2

Brief description of cause:
illegal and decep ive acts in credit repair and abusive acts in telemarketing

**VII. REQUESTED IN COMPLAINT:**   ☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.    DEMAND $    CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☐ No

**VIII. RELATED CASE(S) IF ANY**  *(See Instructions)*:   JUDGE _____   DOCKET NUMBER _____

DATE  11/18/2022    SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #_____  AMOUNT_____  APPLYING IFP_____  JUDGE_____  MAG JUDGE_____

**Exhibit "20"**

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed.  The attorney filing a case should complete the form as follows:

I.(a)   **Plaintiffs-Defendants.**  Enter names (last, first, middle initial) of plaintiff and defendant.  If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

  (b)   **County of Residence.**  For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

  (c)   **Attorneys.**  Enter the firm name, address, telephone number, and attorney of record.  If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II.    **Jurisdiction.**  The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings.  Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff.  (1) Jurisdiction based on 28 U.S.C. 1345 and 1348.  Suits by agencies and officers of the United States are included here.
United States defendant.  (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question.  (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States.  In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship.  (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states.  When Box 4 is checked, the citizenship of the different parties must be checked**.  (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

III.   **Residence (citizenship) of Principal Parties.**  This section of the JS 44 is to be completed if diversity of citizenship was indicated above.  Mark this section for each principal party.

IV.    **Nature of Suit.**  Place an "X" in the appropriate box.  If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable.  Click here for: Nature of Suit Code Descriptions.

V.     **Origin.**  Place an "X" in one of the seven boxes.
Original Proceedings.  (1) Cases which originate in the United States district courts.
Removed from State Court.  (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court.  (3) Check this box for cases remanded to the district court for further action.  Use the date of remand as the filing date.
Reinstated or Reopened.  (4) Check this box for cases reinstated or reopened in the district court.  Use the reopening date as the filing date.
Transferred from Another District.  (5) For cases transferred under Title 28 U.S.C. Section 1404(a).  Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer.  (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File.  (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.**  Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

VI.    **Cause of Action.**  Report the civil statute directly related to the cause of action and give a brief description of the cause.  **Do not cite jurisdictional statutes unless diversity.**  Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

VII.   **Requested in Complaint.**  Class Action.  Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand.  In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand.  Check the appropriate box to indicate whether or not a jury is being demanded.

VIII.  **Related Cases.**  This section of the JS 44 is used to reference related pending cases, if any.  If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.**  Date and sign the civil cover sheet.

**Exhibit "20"**

Exhibit "21"

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | | |
|---|---|---|
| GENEVA SHEFFIELD | : | **Case No. 3:22-cv-2093** |
| 2376 Dana St., | : | |
| Toledo, OH 43609 | : | **Judge:** |
| | : | |
| And | : | |
| | : | |
| MYRANDA SHEFFIELD | : | |
| 2376 Dana St. | : | |
| Toledo, OH 43609 | : | |
| | : | |
| Plaintiffs | : | |
| v. | : | |
| | : | |
| THE LITIGATION PRACTICE GROUP PC | : | |
| C/O Registered Agent | : | **COMPLAINT** |
| Daniel S. March | : | **FOR DECLARATORY AND** |
| Tustin, CA 92780 | : | **INJUNCTIVE RELIEF** |
| | : | |
| Defendant | : | |

---

## Introduction

1.    This is an action for damages brought by a consumer against Defendant for violations of the Debt Adjustment Companies Act, R.C. § 4710.01, et seq. ("DACA"), the Ohio Consumer Sales Practices Act, R.C. § 1345.01, et seq. ("OCSPA"), the Ohio Credit Services Organization Act R.C. §4712.01, et seq. ("OCSOA"), the Credit Repair Organizations Act, 15 U.S.C. §§ 1679-1679j ("CROA"), the Telemarketing Sales Rule 16 C.F.R. § 310.2 ("TSR"), Breach of Contract, and Common Law Fraud, all of which prohibit persons engaged in debt adjusting and credit repair from engaging in abusive, deceptive, and unfair practices.

## Jurisdiction and Venue

2.    This Court maintains subject matter jurisdiction pursuant to the Telemarketing Sales Rule 16 C.F.R. § 310.2 et seq., as further alleged herein.

1

**Exhibit "21"**

3.      This Court may also exercise supplemental jurisdiction over the related state

law claims arising out of the same nucleus of operative facts which give rise to any federal

law claims under 28 U.S.C. § 1367.

4.      The transactions and occurrences which give rise to this action occurred in

Lucas County Ohio.

5.      Venue is proper in the Southern District of Ohio.

**<u>Parties</u>**

6.      Plaintiff, Geneva Sheffield, is a consumer residing at 2376 Dana St., Toledo,

OH 43609.

7.      Plaintiff, Myranda Sheffield, is a consumer residing at 2376 Dana St., Toledo,

OH 43609.

8.      Upon information and belief, Defendant Litigation Practice Group PC

(hereinafter "LPG") is a California debt settlement and debt validation company operating

from an address at 17542 E 17th Street, Ste 100, Tustin, CA 92780, and doing business in the

state of Ohio.

9.   Defendant regularly engages in business in Ohio and directed at residents of Ohio

and have otherwise availed itself of the Ohio marketplace and secured the benefits of that

marketplace. Such conduct included, among other things; holding itself out as debt settlement

company providing services to Ohio residents; directing business solicitations into the State of

Ohio, directed at indebted Ohio residents, seeking participation in Defendant's debt settlement,

credit repair and debt elimination programs; contracting in Ohio with Ohio consumers for

various services, including debt validation; offering to perform and/or performing activities for

Ohio residents including debt settlement, credit repair and debt elimination functions.

2

**Exhibit "21"**

**Statement of Facts**

10. LPG is in the business of marketing, among other services, debt adjustment, credit repair and debt elimination services.

11. On or before, July 7, 2020, Plaintiffs contacted LPG to discuss possible debt elimination services.

12. Plaintiff had several telephone conversations wherein she was led to believe she was retaining Defendant for debt adjustment services which necessarily included credit repair and debt elimination.

13. Based upon the representations made by LPG in the phone calls, Plaintiff s believed by enrolling in the program, they could eliminate their overall debt by disputing the validity of the debts under the statutes of the Consumer Financial Protection Bureau and the Fair Debt Collection Practices Act.

14. An LPG representative sent Plaintiffs an Agreement to review and sign (attached as **Exhibit A**); the LPG representative also instructed Plaintiffs they had a right to withhold payments to their creditors while the accounts were in dispute.

15. Defendants charged substantial up-front fees; Plaintiff's credit scores severely reduced pursuant to her participation in the program; Plaintiffs' credit scores will not recover in the near future.

16. Enrolling in Defendants' program resulted in no reduction to Plaintiff's total debt owed as agreed, in fact, Plaintiff's total indebtedness increased substantially due to interest and fees.

17. Plaintiffs' included only 2 accounts in Defendants program, 2 Discover Bank Student Loans.

3

18.     After enrolling in Defendant's program, a lawsuit was filed against Plaintiff on both Discover Bank student loans referred to in Paragraph 13, which was the entirety of the accounts included in Defendant's program.

19.     Enrolling in LPG's program resulted in no payments being made to Plaintiff's creditors.

20.     Upon information and belief, the only services provided to Plaintiff from Defendants were the mailing of verification packets to Plaintiff's creditors.

21.     While Defendants represented mailing these packets would eliminate Plaintiff's debt, it knew this representation was false, and the mailings would have no legal effect with regard to reducing Plaintiff's debt.

22.     Defendants made various misrepresentations or non-disclosures in an effort to induce Plaintiff to enter into the illegal agreement including, but not limited to:

- Unsubstantiated claims of savings; Defendants represented to Plaintiffs that the program would eliminate Plaintiffs' total debt; however, Defendants do not have a record of accomplishment to support that statement.

- Misleading or failing to adequately inform consumers, including Plaintiffs, that they will be subject to continued collection efforts, including lawsuits, and that their account balances will increase due to extended nonpayment under the program.

- Defendant represented that the majority of consumers which retain it go on to complete the program thereby becoming debt free; however, a high percentage of consumers who attempt Defendant's debt verification program do not become debt free as a result of its services.

4

Exhibit "21"

- Defendant accepted money from Plaintiffs for the purpose of eliminating all debts on the program for less than the amount owed knowing there was a substantial likelihood that they could not provide the services as promised. Defendant knew its business model was legally unsound and nonsensical.

23. Based upon the misrepresentations of the Reliance representative, Plaintiff agreed to enter into a contract for the debt relief services of LPG.

24. Plaintiff agreed to pay specified fees which, unknown to Plaintiff, were illegal due to the substantial amount of the fees and requirement of payment up front.

25. LPG withdrew over $11,000 in fees from Defendant over a period of approximately three years.

26. The Telemarketing Sales Rule prohibits debt relief companies from charging up-front fees prior to settling accounts because, among other reasons, such a business model is designed to fail from the beginning. TSR, 16 C.F.R. § 310.4 (a)(5)(i)

27. Further, given the lengthy period of time creditors do not receive money owed, (oftentimes without any contact with the debt relief companies or the debtor), the creditor will often opt to bring a lawsuit for money owed.

28. Defendant advised Plaintiffs to quit paying their debts knowing the debt would continue to accumulate interest, over the limit fees, and late fees.

29. Defendant represented they would attempt to eliminate Plaintiffs' total debt balance by providing a debt elimination program by sending validation documentation to the third-party collectors collecting on the debts in the program hoping debt collection would cease.

30. The vast majority of services LPG agreed to provide Plaintiffs was in fact legal services. The Agreement is a legal fee agreement whereby LPG agreed to practice law and

5

**Exhibit "21"**

provide legal services in exchange for money.

31.     Defendant's actions did not reduce Plaintiffs' total debt balance, and in fact, Plaintiff owe more money and have been sued on numerous accounts enrolled in the Defendant's debt elimination program.

### Count One:
### (Violations of the Ohio Consumer Sales Practices Act and Debt Adjustment Companies Act)

32.     Plaintiff repeats, realleges, and incorporates by reference all of the foregoing paragraphs.

33.     The activity described in all previous paragraphs is a "consumer transaction" as defined by R.C. § 1345.01(A). Defendant solicited and retained Plaintiff to perform debt adjustment services for a fee.

34.     Plaintiff's debts at issue were incurred for personal, family and/or household use.

35.     Defendant is a "supplier" as that term is defined in R.C. § 1345.01(C), since Defendant engaged in the business of effecting "consumer transactions", either directly or indirectly, by operating a debt adjustments service for consumers in Ohio for purposes that are primarily for personal, family or household within the meaning specified in R.C. § 1345.01(A).

36.     Defendant is a "person" as defined by the DACA, R.C. § 4710.01(A) engaged in the act of "debt adjusting" as defined by the DACA, R.C. § 4710.01(B), and a "supplier" as defined by the OCSPA, R.C. § 1345.01(C), since Defendant was engaged in the business of debt adjusting, budget counseling, debt management, or debt pooling services, or holding oneself out, by words of similar import, as providing services to debtors in the management of their debt to a consumer in the State of Ohio for purposes that were primarily for personal, family or household use.

6

37.    Plaintiff is a "consumer" as defined by the OCSPA, R.C. § 1345.01(D).

38.    Defendant charged and accepted fees or contributions in excess of what are reasonable fees or contributions, in violation of R.C. §§ 4710.02(A)(3), 4710.02(B)(1-3) and 4710.02(F)(1). Defendant knew that the debt settlement program's fees exceeded the amount permitted by R.C. § 4710.02(B).

39.    Upon information and belief, Defendant failed to arrange for and undergo an audit conducted by an independent, third party, certified public accountant of the person's business and then file the audit and opinion with the consumer protections division of the attorney general in violation of R.C. §§ 4710.02(D)(1-2) and 4710.02(F)(2).

40.    Upon information and belief, Defendant failed to obtain and maintain insurance coverage not less than $100,000.00 for employee dishonesty, forgery, and fraud in violation of R.C. §§ 4710.02(E)(1-2) and 4710.02(F)(2).

41.    Defendant's transactions failed to include the notices, statements, and cancellation forms as defined by R.C. §§ 4710.05(A) and (B). Such failure is a violation of R.C. § 1345.02(A) of the OCSPA.  Defendant committed unfair, deceptive and unconscionable acts or practices in violation of R.C. §§ 1345.02(A) and/or 1345.03(A) of the Consumer Sales Practices Act including:

- Defendant operated a debt settlement company in the State of Ohio without complying with applicable Ohio law, namely, R.C. § 4710, et seq.

- Defendant charged an excessive fee for debt adjusting and failed to provide the service pursuant to the Failure to Deliver Rule, O.A.C. § 109:4-3-09(A).

- Defendant is an out of state corporations, failed to register with the Ohio Secretary of State prior to doing business in Ohio as required by R.C. §

7

1703.03.

- Defendant made false or misleading statements to induce a purchaser to pay for services.

- Defendant engaged in debt adjustment activities, including holding out that it could affect the adjustment, compromise, or discharge of any account, note, or other indebtedness of consumers who sign up for its services, without complying with R.C. §§ 4710.02(A) and (B), specifically that Defendant charged fees in excess of those permitted by the Ohio Debt Adjusters Act.

- Defendant violated Ohio Adm. Code § 109:4-3-09(A) by accepting money from consumers for goods or services ordered by mail, telephone, or otherwise and then failed to make full delivery or make a full refund as promised.

- Defendant had knowledge of the inability of the consumer to receive a substantial benefit from the subject of the consumer transaction.

- Defendant required the consumer to enter into a consumer transaction on terms the supplier knew were substantially one-sided in favor of the supplier.

42.    Such acts and practices have been previously determined by Ohio courts to violate the Consumer Sales Practices Act, R.C. § 1345.01 et seq.

*43.*    Defendant committed said violation after such decisions were available for public inspection pursuant to R.C. § 1345.05(A)(3). *State ex rel. Petro v. Debticated Consumer Counseling, Inc.* (Lucas Co. C.P. 2003), Case No. CIO 2002 4856, (PIF# 2173); *State of Ohio*

8

**Exhibit "21"**

*ex rel. Cordray v. United Law Group, Inc.* (Franklin Co. C.P. 2010)*, Case No. 10 CVH 021567,

(PIF# 2874); *State of Ohio, ex rel. Cordray v. Brotherton* (Greene Co. C.P. 2010), Case No.

2009 CV 0709, (PIF# 2831); *In Re Nationwide Debt Solution, Inc.* (2010), Docket No. 384784

(PIF# 2878); *In Re Budulator Corporation, Inc.* (2010), Docket No. 388509 (PIF# 2876); *State*

*of Ohio ex rel. Rogers v. Richard Pinnix d/b/a Pinnix Business Services* (Franklin Co. C.P.

2008), Case No. 07CVH08-10491(PIF# 2726); *State of Ohio ex rel. Dann v. American Housing*

*Authority, Inc.* (Lucas Co. C.P. 2008), Case No. CI-0200705443 (PIF# 2676); *State of Ohio ex*

*rel. Petro v. AAA All Ohio Roofing, et al.* (Franklin Co. C.P. 2003), Case No. 02CVH022119

(PIF# 2152); *State ex rel. Montgomery v. Bayview Group, Inc.* (Franklin Co. C.P. 2003), Case

No. 97CVH12 10749 (PIF# 1727).

    44. Plaintiff has suffered damages due to the illegal and deceptive acts in violation of

the Ohio Consumer Sales Practices Act in that:

- They paid fees that were both illegal and were not in exchange for any services of value.

- They quit paying her creditors upon the advice of Defendant's representatives and the many misrepresentations that were made to her described in the Complaint.

- As a result, Plaintiffs' creditors exercised their right to the default interest rate accelerating the balances owed by enormous amounts to be determined at trial.

- Plaintiffs suffered mental and emotional hardship, mental and emotional stress, and anxiety.

### Count Two:
### (Violations of the Ohio Credit Services Organizations Act)

9

**Exhibit "21"**

45.     Plaintiffs repeats, realleges, and incorporates by reference all of the foregoing paragraphs.

46.     Defendant is a credit service organization as defined by R.C. § 4712.01(C)(1) in that Defendant accepted money in order to improve Plaintiffs' credit record and gave advice in connection with doing so.

47.     Plaintiffs are buyers as defined by R.C. § 4712.01(A) in that she was solicited and purchased the services of Defendant.

48.     Defendant failed to register as a credit services organization with the Ohio Division of Financial Institutions in violation of R.C. § 4712.02(A).

49.     Pursuant to R.C. §4712.11(A), Defendants' violation of R.C. § 4712.02(A) constitutes unfair or deceptive acts or practices in violation of R.C. § 1345.02.

50.     Plaintiffs have suffered damages due to the illegal and deceptive acts in violation of the Ohio Credit Services Organization Act in that:

- • Plaintiffs paid fees that were both illegal and were not in exchange for any services of value.

- • Plaintiffs quit paying their creditors upon the advice of LPG representatives and the many misrepresentations that were made to them described in the Complaint.

- • As a result, Plaintiffs creditors exercised their right to the default interest rate accelerating the balances owed by enormous amounts to be determined at trial.

- • Plaintiffs suffered mental and emotional hardship, mental and emotional stress, and anxiety.

10

## Count Three:
### (Violations of the Credit Repair Organizations Act)

51. Plaintiffs repeats, realleges, and incorporates by reference all of the foregoing paragraphs.

52. The Credit Repair Organizations Act was enacted to ensure that prospective buyers of the services of credit repair organizations are provided with the information necessary to make an informed decision regarding the purchase of such services and to protect the public from unfair or deceptive advertising and business practices by credit repair organizations. 15 U.S.C. § 1679(b). The CROA provides that a credit repair organization:

a. May not charge or receive any money or other valuable consideration for services which the credit repair organization has agreed to perform before such service is fully performed, 15 U.S.C. § 1679(b);

b. May not provide services without a written and dated contract that includes a full and detailed description of the services to be performed and other terms and conditions set forth in 15 U.S.C. §§ 1679d(a)(1), 1679d(b);

c. Must provide to the consumer, before any contract or agreement between the consumer and the credit repair organization is executed, the written statement set forth in Section 405(a) of CROA concerning consumer credit file rights under state and federal law and the right to cancel a contract with a credit repair organization, 15 U.S.C. § 1679c; and

d. Must allow a consumer to cancel any contract with the credit repair organization without penalty or obligation if the consumer notifies the credit repair organization of the consumer's intention to cancel before midnight of the third business day after the date the contract between the consumer and

11

the credit repair organization is executed, 15 U.S.C. § 1679e.

53.     Defendant is a "credit repair organization" as that term is defined in the Credit Repair Organizations Act ("CROA"), because it uses instrumentalities of interstate commerce to sell, provide, or perform (or represent that such defendants can or will sell, provide, or perform) a service for the express or implied purpose of improving a consumer's credit record, credit history, or credit rating, and this service is offered in return for the payment of money. 15 U.S.C. § 1679a(3).

54.     Defendant received money prior to fully performing its services, and failed to provide any of the proper disclosures, contracts, or right to cancel forms.

55.     Defendant's conduct as alleged in Count Three of this Complaint violates the Credit Repair Organizations Act, and the Defendants are liable for these violations.

56.     Plaintiffs have suffered damages due to the illegal and deceptive acts in violation of the Credit Repair Organization Act in that:

- Plaintiffs paid fees that were both illegal and were not in exchange for any services of value.

- Plaintiffs quit paying her creditors upon the advice of Defendant's representatives and the many misrepresentations that were made to them described in the Complaint.

- As a result, Plaintiffs' creditors exercised their right to the default interest rate accelerating the balances owed by enormous amounts to be determined at trial.

- Plaintiffs suffered mental and emotional hardship, mental and emotional stress, and anxiety.

12

**Exhibit "21"**

### Count Four:
### (Fraud / Fraud in the Inducement)

57.    Plaintiffs repeats, realleges, and reincorporates by reference all of the foregoing paragraphs.

58.    Plaintiffs specifically relied on the representations, misrepresentations, non-disclosures and implied representations described in Paragraphs 9 through 32 when making the determination to enter into a contract or continue using the services of Defendants.

59.    Defendant, through representations, websites, and the Agreement create the appearance that Plaintiffs are entering into an agreement that will greatly reduce her outstanding debts.

60.    Defendant engaged in the unlawful conduct previously alleged with the actual and/or imputed knowledge of the unlawful conduct.

61.    Defendant knowingly engaged in such conduct with the purpose of inducing payment from Plaintiffs.

62.    Plaintiffs have been injured by the wrongful and fraudulent conduct of Defendant and have been damaged in an amount to be established at trial, as well as entitled to punitive damages in an amount to be established at trial.

### Count Five:
### (Violations of the Telemarketing Sales Rule)

63.    Plaintiffs repeats, realleges, and reincorporates by reference all of the foregoing paragraphs.

64.    The Telemarketing Sales Rule ("TSR") was promulgated for the explicit purpose of preventing consumer harm from debt relief operations like the venture of the Defendant in this case.

65.    The TSR, 16 C.F.R. § 310.2(m), defines "debt relief service" as "any program or

13

**Exhibit "21"**

service represented, directly or by implication, to renegotiate, settle, or in any way alter the terms of payments or other terms of the debt between a person and one or more unsecured creditors or debt collectors, including, but not limited to, a reduction in the balance, interest rate, or fees owed by a person to an unsecured creditor or debt collector."

66.    The TSR, 16 C.F.R. § 310.2(dd), defines "telemarketing" as "a plan, program, or campaign which is conducted to induce the purchase of goods or services or a charitable contribution, by use of one or more telephones and which involves more than one interstate telephone call."

67.    The TSR, 16 C.F.R. § 310.2 (aa), defines "seller" as "any person who, in connection with a telemarketing transaction, provides, offers to provide, or arranges for others to provide goods or services to the customer in exchange for consideration."

68.    The TSR, 16 C.F.R. § 310.2 (cc), defines "telemarketer" as "any person who, in connection with telemarketing, initiates or receives telephone calls to or from a customer or donor."

69.    Defendant is a "seller" or "telemarketer" of "debt relief services", who engages in "telemarketing", as defined in the TSR.

70.    The TSR, 16 C.F.R. § 310.4 (a)(5)(i), provides that a seller or a telemarketer may not request or receive payment of any fee or consideration for any debt relief service until and unless among other things, "the seller or telemarketer has renegotiated, settled, reduced, or otherwise altered the terms of at least one debt pursuant to a settlement agreement, debt management plan, or other such valid contractual agreement executed by the customer" and "the customer has made at least one payment" pursuant too such an agreement or plan.

71.    The TSR, 16 C.F.R. § 310.4(a)(5)(ii), provides that a seller or a telemarketer may

14

**Exhibit "21"**

request or require customers to place funds in an account to be used for the debt relief provider's fees and for payments to creditors or debt collectors in connection with the renegotiation or settlement of a debt, provided that, among other things: the customer owns the funds held in the account and is paid interest on the account" and "the customer may withdraw from the debt relief service at any time without penalty and must receive all funds in the account, other that funds earned by the debt relief service in compliance with § 310.4(a)(5)(i)(A) through (C), within seven (7) business days of the consumer's request."

72.     The TSR, 16 C.F.R. § 310.3(a)(2)(ii), prohibits a seller or telemarketer from misrepresenting, directly or by implication, in the sale of goods or services, any material restriction, limitation, or condition to purchase, receive, or use goods or services that are the subject of the sales offer.

73.     The TSR, 16 C.F.R. § 310.3(a)(2)(iii), prohibits a seller or telemarketer from misrepresenting, directly or by implication, in the sale of goods or services, any material aspect of the performance, efficacy, nature, or central characteristics of goods or services that are the subject of a sales offer.

74.     The TSR, 16 C.F.R. § 310.3(a)(2)(x), prohibits a seller or telemarketer from misrepresenting, directly or by implication, in the sale of goods or services, any material aspect of any debt relief service.

75.     In the course of telemarketing debt relief services, Defendant has requested and received payment of fees from Plaintiffs for debt relief services before renegotiating, settling, reducing, or otherwise altering the terms of his debts. Defendant requested and received payment of these fees prior to Plaintiffs making at least one payment pursuant to any settlement agreement, debt-management plan, or other valid contractual agreement between Plaintiffs and

15

their creditors.

76. Therefore, Defendant's act or practices violate the TSR, 16 C.F.R.

§ 310.4(a)(5)(i), and are abusive acts or practices in telemarketing.

77. Plaintiffs were charged advances fees for Defendant's debt relief services.

78. Therefore, Defendant's representations as described herein violate the TSR,

C.F.R. § 310.3(a)(2)(ii) and (x), and are deceptive acts or practices in telemarketing.

79. In numerous instances, in connection with advertising, marketing, promoting,

offering for sale, or sale of debt relief services, Defendant represented to Plaintiffs directly or

indirectly, expressly or by implication, that Plaintiffs total debt amount would be reduced by

up to 50%.

80. In fact, Defendant do not have a track record of consistent debt reduction of this

degree, if any at all.

81. Therefore, Defendant's representations as described herein violate the TSR,

C.F.R. § 310.3(a)(2)(iii) and (x), and are deceptive acts or practices in telemarketing.

82. In addition, Defendant and its representatives in making its savings claims

(amounts of monies s would save by using Defendant's services) did not disclose the following

in violation of the TSR:

- State the savings was based on the Plaintiffs' debt when they signed
  up for the program.

- Include the impact of the Defendant's fees on their claimed savings
  to the Plaintiffs.

- In calculating the results over time, did not include customers who
  dropped out or otherwise failed to complete the program.

16

**Exhibit "21"**

## Count Six
### (Breach of Contract)

83.     Plaintiffs repeat, reallege, and reincorporate by reference all of the foregoing paragraphs.

84.     Defendant entered into a contract with Plaintiffs and represented it would eliminate Plaintiffs' debt.

85.     Defendant further provided advice and explanation on the Fair Credit Reporting Act, the Federal Trade Commission Act, the Truth in Lending Act, and the Fair Debt Collection Practices Act.

86.     Defendant did not perform its obligations pursuant to the contract as agreed as no debts of Plaintiffs were eliminated.

87.     Plaintiff paid Defendant pursuant to the contract as agreed.

88.     Plaintiff has been damaged by Defendant's non-performance and resulting breach of the contract.

89.     As such, Plaintiffs are entitled to damages for the breach of contract.

## Count Seven
### (Legal Malpractice)

90.     Plaintiffs repeats, realleges, and reincorporates by reference all of the foregoing paragraphs.

91.     Defendant owed a duty or obligation to Plaintiff.

92.     Defendant breached that duty or obligation by not performing any services as agreed.

93.     Defendant failed to conform to the applicable standard of care required by law.

94.     Defendant was the proximate cause of damage to Plaintiff.

Exhibit "21"

95.     Consequently, Defendant's actions or lack of action as previously described, constitutes legal malpractice.

### **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs, prays this Court grant the following relief:

1. ISSUE an order declaring that the Defendant has engaged in acts and practices in violation of the Consumer Sales Practices Act, R.C. § 1345.01 et seq., the Debt Adjustment Companies Act, R.C. § 4710.01 et seq., the Ohio Credit Services Organization Act R.C. § 4712.01, et seq., the Credit Repair Organization Act 15 U.S.C. § 1679, et seq. and the Telemarketing Sales Rule 16 C.F.R. § 310, et seq.

2. ISSUE a Permanent Injunction enjoining the Defendant, its agents, servants, employees, successors or assigns, and all persons acting in concert and participation with it, directly or indirectly, through any corporate device, partnership, or other association, under this or any other name, from engaging in the acts and practices which Plaintiffs complains in the State of Ohio until complying with the laws of the State of Ohio and satisfaction of any monetary obligations to Plaintiff.

3. GRANT judgment against the Defendant in the amount of three times the actual damages or $200.00 for each unlawful act specified, whichever is greater, pursuant to R.C. § 1345.09(B).

4. GRANT judgment against the Defendant for common law fraud in an amount of damages in excess of $25,000.00.

5. GRANT judgment against the Defendant in excess of $50,000.00 for violations of the Telemarketing Sales Rule 16 CFR§ 310, et seq.

6. GRANT statutory damages for violations of the Credit Repair Organization Act 15 U.S.C. § 1679g.

18

**Exhibit "21"**

7. GRANT statutory damages for violations of the Ohio Credit Services Organization Act R.C. § 4712.10.

8. GRANT judgment against the Defendant in excess of $25,000.00 for its breach of contract with Defendant.

9. Costs and reasonable attorney fees, pursuant to R.C. § 1345.09(F)(2).

10. GRANT punitive damages.

11. GRANT such other relief as this Court deems to be just, equitable and appropriate.

Respectfully Submitted:

*/s/ Jeremiah E. Heck*
Jeremiah E. Heck (0076742)
David B. Schultz (0077281)
Luftman Heck & Associates LLP
6253 Riverside Drive, Suite 200
Dublin, Ohio 43017
Phone: (614) 224-1500
Fax: (614) 224-2894
dschultz@lawlh.com
*Attorney for Plaintiffs*

### DEMAND FOR JURY TRIAL

Please take notice that Plaintiffs, Geneva Sheffield and Myranda Sheffield, demands trial by jury in this action.

*/s/ Jeremiah E. Heck*
Jeremiah E. Heck (0076742)

19

**Exhibit "21"**



**LITIGATION PRACTICE
GROUP**

31878 Del Obispo Suite 118-602
San Juan Capistrano, CA 92675
Phone: 949-229-6262
Fax: 949-415-7816
Admin@LitigationPracticeGroup.com | LitigationPracticeGroup.com

## LEGAL SERVICES AGREEMENT

### Legal Services

The Litigation Practice Group PC ("LPG") will provide debt validation services wherein it will assist you in removing erroneous or inaccurate information appearing on one or more of your credit reports by contesting debts appearing therein. This service is limited to information reported by creditors or purported creditors to credit bureaus. The cost of legal services rendered by LPG is set forth below, and those fees are earned by LPG for services rendered to you as set forth herein at the time such fees are paid.

### Client Authorization

You authorize LPG to challenge, where applicable, any debts appearing in your credit report(s) that you believe to be in any way invalid, inaccurate, or otherwise without legal basis. You also authorize LPG to obtain a copy of your credit report to assist in the process of analyzing your account and developing a strategy regarding the invalidation of debts that are excessive or otherwise unauthorized by law. You further authorize LPG, acting under power of attorney for you, to affix your electronic signature to documents sent on your behalf in relation to matters herein and to otherwise act on your behalf in connection with any dispute or resolution thereof processed in connection with the services you are hiring LPG to perform.

### Description of Services to be Performed

LPG will obtain your credit reports, analyze them, and develop strategies for correcting invalid or unlawful debts for which you should not be held legally responsible. Where appropriate, LPG will use existing laws and interact with creditors and credit bureaus on your behalf to invalidate your debts and remove such invalid debts from your credit reports. LPG will also interact with collection agencies, as applicable, to invalidate your debts by requiring them to supply evidence of your indebtedness to them, or any other legal mechanism. LPG will also consult with you regarding all aspects of the credit reporting process, including all laws applicable to the same. LPG will also investigate your delinquent accounts in order to determine the most effective method for invalidating your debts or otherwise removing any legal liability for such debts.

In addition, if a lawsuit is filed against you, LPG will represent you in such lawsuit and will not charge any additional fees for such representation provided such lawsuit was initiated after the date you sign this Agreement. In the event a lawsuit was initiated against you before the date you execute this Agreement and you elect to have LPG represent you, an additional fee of $500.00 will be charged. Where appropriate, if legal fees are recovered from an adverse party, LPG will retain such fees for its services. You will be responsible to pay any damages resulting from any lawsuit. Any costs incurred in a lawsuit will be paid by LPG out of the fees set forth below, including the fees of any attorney retained on your behalf in a jurisdiction in which LPG is not admitted to practice law. No additional payment from you to LPG will be necessary for the defense of any lawsuit filed against you after the date you execute this Agreement. You will, however, be responsible to pay any damages resulting from such lawsuits or any settlements reached in the course of such lawsuits.

### Fees

You will pay the following fees for the legal services provided by LPG. No fee or other cost will be charged or collected other than the following. This is the only amount you have to pay for LPG's services, and this fee is fixed, such that it is earned the moment it is transmitted to LPG. Upon request, LPG will provide an update of progress of services performed under this agreement at reasonable intervals of no greater frequency than once a month.

**Exhibit "21"**

ID: a48d7911-ee01-deee-0353-a67e41dababf Signed: 2019-07-22T15:02:55-05:00

## Refund Policy

If an account is fully validated by a creditor, such that no further dispute to the validity of the account could be made, you will receive a full refund of the fees that you paid towards the invalidation of that account (i.e., you will be refunded the fees paid in proportion to the debt that was validated). Should you have an outstanding balance with LPG at the time your refund is issued on the validated account, any refund will first be applied towards the outstanding balance.

## Debt Settlement

If LPG is unable to invalidate any debt, LPG will negotiate a settlement on your behalf with the concerned creditor without any additional fees being charged to or incurred by you for such service. Any settlement reached with any such creditor shall be your responsibility.

## Actions Required of You

You agree to provide LPG with any and all correspondence you receive from any creditor, credit bureau, attorney, or court of law. You further agree to keep a log of all communications, including telephonic and electronic communications, from any creditor or credit reporting agency.

## Right to Conduct Business Electronically and Contact You

You agree that LPG may contact you electronically and telephonically, and that any and all business with LPG may be conducted electronically. You further agree that LPG may transmit data, including that regarding your credit profile, electronically. You further agree that any electronic communication carries the risk of disclosure to a third party, and that LPG will not be held responsible for any such inadvertent disclosure of information. A facsimile or email transmission of this signed agreement, via an email attachment or otherwise, will be as valid as the original. This agreement may not be modified except in writing by both parties.

## Client Acknowledgements

By signing this agreement, you acknowledge that LPG has not instructed you to breach any contract, fail to make any required payment, or fail to perform any obligation you have lawfully incurred. LPG reserves the right to terminate this agreement if (a) client fails to make timely payment of the amount due under hereunder or (b) client's payments are returned multiple times for any reason. LPG will not pay your debts, and does not guarantee that any debt you now have or may incur will be invalidated or settled in association with LPG's services. You understand and agree that you must forward any communication you receive in printed or electronic form from any creditor, court, or representative of other a creditor or a court to admin@coastprocessing.com, and that you must keep a log of all telephonic communications with any creditor or credit reporting agency. **Do not sign this agreement until you have received and read the information statements and notices of cancellation required by state and federal law, even if otherwise advised. By signing this agreement, you acknowledge receipt of these disclosures prior to the time of signing and agree to the terms of this agreement. You, the client, may cancel this agreement at any time before midnight CST of the 5th day after the date of execution of this agreement via an email to admin@coastprocessing.com. In addition, you, the client may terminate LPG's services under this agreement at any time via an email to admin@coastprocessing.com.**

Client Signature: _Myrenda Sheffield_           Date: 07/22/2019

Co-Applicant Signature _Geneva Sheffield_      Date: 07/22/2019

**Exhibit "21"**

ID: a48d7911-ee01-deee-0353-a67e41dababf Signed: 2019-07-22T15:02:55-05:00

## Creditor Information

| Creditor | Account # | Amount Owed |
|---|---|---|
| Discover | 1326 | $22,051.10 |
| Discover | 1326 | $21,517.45 |
| | | **$43,568.55** |

**Exhibit "21"**

ID: a48d7911-ee01-deee-0353-a67e41dababf Signed: 2019-07-22T15:02:55-05:00

## Client Information

Name: Myranda Sheffield

Address: 2376 Dana Street, , Toledo OH 43609


Home Phone:

Cell Phone: 419-324-5641

Email: myrandasheff@gmail.com

Las 4 SSN: XXX-XX-4607

## Co-Client Information

Name: Geneva Sheffield

Address: 2376 Dana Street, , Toledo OH 43609


Home Phone:

Cell Phone: 419-450-0715

Email: lil_nieci@yahoo.com

Last 4 SSN: XXX-XX-5325

**Exhibit "21"**

ID: a48d7911-ee01-deee-0353-a67e41dababf Signed: 2019-07-22T15:02:55-05:00

## Schedule of Payments

I agree to this payment schedule – Client Initials:

| Payment # | Process Date | Amount |
|-----------|--------------|--------|
| 1 | Aug 16, 2019 | $307.05 |
| 2 | Sep 13, 2019 | $307.05 |
| 3 | Oct 15, 2019 | $307.05 |
| 4 | Nov 13, 2019 | $307.05 |
| 5 | Dec 13, 2019 | $307.05 |
| 6 | Jan 13, 2020 | $307.05 |
| 7 | Feb 13, 2020 | $307.05 |
| 8 | Mar 13, 2020 | $307.05 |
| 9 | Apr 13, 2020 | $307.05 |
| 10 | May 13, 2020 | $307.05 |
| 11 | Jun 15, 2020 | $307.05 |
| 12 | Jul 13, 2020 | $307.05 |
| 13 | Aug 13, 2020 | $307.05 |
| 14 | Sep 14, 2020 | $307.05 |
| 15 | Oct 13, 2020 | $307.05 |
| 16 | Nov 13, 2020 | $307.05 |
| 17 | Dec 14, 2020 | $307.05 |
| 18 | Jan 13, 2021 | $307.05 |
| 19 | Feb 16, 2021 | $307.05 |
| 20 | Mar 15, 2021 | $307.05 |
| 21 | Apr 13, 2021 | $307.05 |
| 22 | May 13, 2021 | $307.05 |
| 23 | Jun 14, 2021 | $307.05 |
| 24 | Jul 13, 2021 | $307.05 |
| 25 | Aug 13, 2021 | $307.05 |
| 26 | Sep 13, 2021 | $307.05 |
| 27 | Oct 13, 2021 | $307.05 |
| 28 | Nov 15, 2021 | $307.05 |
| 29 | Dec 13, 2021 | $307.05 |
| 30 | Jan 13, 2022 | $307.05 |
| 31 | Feb 14, 2022 | $307.05 |
| 32 | Mar 14, 2022 | $307.05 |
| 33 | Apr 13, 2022 | $307.05 |
| 34 | May 13, 2022 | $307.05 |
| 35 | Jun 13, 2022 | $307.05 |
| 36 | Jul 13, 2022 | $306.96 |

**Exhibit "21"**

ID: a48d7911-ee01-deee-0353-a67e41dababf Signed: 2019-07-22T15:02:55-05:00

## Electronic Payment Authorization

Bank Name: KEY BANK

Name on Account: Geneva Sheffield

Account Type: Savings

_____ Other (specify: _____)

Routing Number: ███████████

Account Number: ███████████

Next Payment Date: Aug 16, 2019 Amount: $ 307.05

Recurring Payment Date: 13th

By signing below, I authorize and permit LPG or their designees, to initiate electronic funds transfer via an Automated Clearing House system (ACH) from my account listed above. I will also provide LPG with a voided check or savings deposit slip.

If necessary, LPG may make adjustments if errors have occurred during the transaction. The date of the draft is listed above, however, if the draft date falls on a weekend or bank holiday, the debit transaction will take place on the next business day. This authority will remain in effect until LPG is notified by the member in writing at least 5 days prior to the next scheduled draft date. No other forms of cancellation by member will be observed. If the debit is returned because of non-sufficient funds of uncollected funds, then the originator and its financial institution may reinitiate the entry up to two (2) times. The reversal of funds from a client's account that was drafted in error cannot be made until seven business days from the draft date. The member agrees to waive all rights of reversal or refusal of any payment on any draft that LPG may make against the member's bank account while services are performed. The member agrees with all of the provisions and conditions outlined within.

### Acknowledgement of Refunds & Draft Date Changes

ACH Refunds: If a refund is due such will be made through the ACH process only if the fees were made through the ACH process. All refunds may take up to 10 days to process. In the event my EFT or draft is returned from my bank unpaid, I agree that a fee of $25.00 or as allowed by law may be charged to my account via draft or EFT. Furthermore, I warrant that I am authorized to execute this payment authorization and the above information is true and correct. Draft Date Changes: A client may stop any ACH debit by providing written notice to LPG at least five (5) business days prior to the scheduled payment. If you should need to notify us of your intent to cancel and/or revoke this authorization you must contact us five (5) days prior to the questioned debit being initiated. Please call us at 949-229-6262 or admin@coastprocessing.com.

Initial Here: _MS_

Client Signature: _Myranda Sheffield_

Printed Name: Myranda Sheffield

Date: 07/22/2019

**Exhibit "21"**

ID: a48d7911-ee01-deee-0353-a67e41dababf Signed: 2019-07-22T15:02:55-05:00

**Electronic Funds Transfer (EFT) Authorization to Debit Bank Account**

Account Owner Name: Geneva Sheffield

Social Security Number: ███████          Birth Date: ███████

Address: 2376 Dana Street          City: Toledo          State: OH          Zip: 43609

Mobile Phone #:          Bank Name: KEY BANK

Routing Number: ███████          Account Number: ███████

Total Amount of Debit: $307.05          Date of Next Debit: Aug 16, 2019          Checking or Saving: Savings

I hereby apply for and agree to establish a non-interest bearing special purpose account (the "Account") with a bank ("Bank") selected by EPPS, LLC and/or its successors for the purpose of accumulating funds to pay for such goods and services as I so direct EPPS, LLC to perform. This application is subject to Bank's customer identification program, as required by the USA PATRIOT ACT and other applicable laws, and accordingly, I hereby represent that the above information is true and complete to the best of my knowledge and belief. The bank account information provided above may be subject to account validation processes to include pre-notation and a $0.01 micro-deposit.

| Schedule of Fees and Charges | |
| --- | --- |
| Monthly Banking Fee: | Included |
| ACH/EFT Fee Per Transaction | Included |
| Chargeback/Late Return Fee | Included |
| NSF Fee | Included |
| Account Closer Fee | Included |
| **PREMIUM DISBURSEMENT SERVICES** | |
| Wire Transfer | Included |
| FedEx/Overnight Next Day | Included |
| 2nd Day Check With Tracking | Included |

I hereby authorize Bank, directly or through EPPS, LLC, and/or its service providers, to administer the Account on my behalf by (a) periodically transferring and depositing funds to the Account, via any payment media currently in use, and (b) periodically disbursing funds from the Account pursuant to instructions that I may give from time to time. I hereby authorize payments from the Account for the fees and charges provided for in this application and in the agreement. I hereby grant permission for Bank to share information regarding the Account with EPPS, LLC and any other service provider to facilitate the transactions I may initiate that involve the Account, and with any other party that is essential to the administration of the Account on my behalf. My signature below provides permission to be contacted by phone at the number provided with this authorization. A payment reminder will be sent to your phone number via Text Messaging prior to the payment scheduled above. This authorization shall remain in full force and effect until I provide a verbal or written termination notice to EPPS. Any such notice, and any other written notice that is provided for in this Application or the Agreement, shall be sent to EPPS, LLC at the address set forth in the Agreement. "EPPS-Ph# 800-215-3484" will appear on your bank statement

Account Holder's Signature:

*Myrenda Sheffield*          Date: 07/22/2019

**Exhibit "21"**

ID: a48d7911-ee01-deee-0353-a67e41dababf Signed: 2019-07-22T15:02:55-05:00

**Exhibit "21"**

ID: a48d7911-ee01-deee-0353-a67e41dababf Signed: 2019-07-22T15:02:55-05:00





# E-Signature Completion Certificate

| | |
|---|---|
| **Document ID** | 6233792 |
| **Document GUID** | a48d7911-ee01-deee-0353-a67e41dababf |
| **Document Title** | Legal Service Agreement with LPG |
| **Sender IP** | 74.213.81.107 |
| **Number of Signers** | 2 |
| **Signer Email** | myrandasheff@gmail.com |
| **Signer IP** | 75.48.213.27 |
| **Timestamp** | 2019-07-22T15:05:06-05:00 |
| **Document Hash** | bf39d9d8a9d61e1433b43e8d34dfbdc4 |

## Document Audit

- Sent at 2019-07-22T14:58:08-05:00 from IP 74.213.81.107
- Delivered to Myranda Sheffield myrandasheff@gmail.com at 2019-07-22T14:58:40-05:00 from 75.48.213.27
- Adopted Signature at 2019-07-22T14:58:48-05:00 from 75.48.213.27
- Completed Signing at 2019-07-22T15:02:55-05:00 from 75.48.213.27
- PDF Generated at 2019-07-22T15:05:06-05:00

## User Agent

Mozilla/5.0 (iPhone; CPU iPhone OS 12_3_2 like Mac OS X) AppleWebKit/605.1.15 (KHTML, like Gecko) Version/12.1.1
Mobile/15E148 Safari/604.1

**Exhibit "21"**

JS 44 (Rev. 3/22)

## CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

### I. (a) PLAINTIFFS
Teresa Klaus

**DEFENDANTS**
The Litigation Practice Group

**(b)** County of Residence of First Listed Plaintiff   Allen, OH
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Orange, CA
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Jeremiah Heck, Luftman Heck & Associates 614 224 1500. 6253 Riverside Dr., Ste 200, Dublin, OH 43017

Attorneys *(If Known)*
Matthew T. Anderson, 1160 Dublin Road, Suite 400, Columbus, OH 43125, 614-221-7663

### II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U S Government Plaintiff
- [ ] 2 U S Government Defendant
- [ ] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

### III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

### IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | 625 Drug Related Seizure of Property 21 USC 881 | 422 Appeal 28 USC 158 | 375 False Claims Act |
| 120 Marine | 310 Airplane | 365 Personal Injury - | 690 Other | 423 Withdrawal | 376 Qui Tam (31 USC |
| 130 Miller Act | 315 Airplane Product | Product Liability | | 28 USC 157 | 3729(a)) |
| 140 Negotiable Instrument | Liability | 367 Health Care/ | | | 400 State Reapportionment |
| 150 Recovery of Overpayment | 320 Assault, Libel & | Pharmaceutical | | **INTELLECTUAL** | 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | **PROPERTY RIGHTS** | 430 Banks and Banking |
| 151 Medicare Act | 330 Federal Employers' | Product Liability | | 820 Copyrights | 450 Commerce |
| 152 Recovery of Defaulted | Liability | 368 Asbestos Personal | | 830 Patent | 460 Deportation |
| Student Loans | 340 Marine | Injury Product | | 835 Patent - Abbreviated | 470 Racketeer Influenced and |
| (Excludes Veterans) | 345 Marine Product | Liability | | New Drug Application | Corrupt Organizations |
| 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | **LABOR** | 840 Trademark | 480 Consumer Credit |
| of Veteran's Benefits | 350 Motor Vehicle | 370 Other Fraud | 710 Fair Labor Standards | 880 Defend Trade Secrets | (15 USC 1681 or 1692) |
| 160 Stockholders' Suits | 355 Motor Vehicle | 371 Truth in Lending | Act | Act of 2016 | 485 Telephone Consumer |
| 190 Other Contract | Product Liability | 380 Other Personal | 720 Labor/Management | | Protection Act |
| 195 Contract Product Liability | 360 Other Personal | Property Damage | Relations | **SOCIAL SECURITY** | 490 Cable/Sat TV |
| 196 Franchise | Injury | 385 Property Damage | 740 Railway Labor Act | 861 HIA (1395ff) | 850 Securities/Commodities/ |
| | 362 Personal Injury - | Product Liability | 751 Family and Medical | 862 Black Lung (923) | Exchange |
| | Medical Malpractice | | Leave Act | 863 DIWC/DIWW (405(g)) | 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | 790 Other Labor Litigation | 864 SSID Title XVI | 891 Agricultural Acts |
| 210 Land Condemnation | 440 Other Civil Rights | **Habeas Corpus:** | 791 Employee Retirement | 865 RSI (405(g)) | 893 Environmental Matters |
| 220 Foreclosure | 441 Voting | 463 Alien Detainee | Income Security Act | | 895 Freedom of Information |
| 230 Rent Lease & Ejectment | 442 Employment | 510 Motions to Vacate | | **FEDERAL TAX SUITS** | Act |
| 240 Torts to Land | 443 Housing/ | Sentence | | 870 Taxes (U S Plaintiff | 896 Arbitration |
| 245 Tort Product Liability | Accommodations | 530 General | | or Defendant) | 899 Administrative Procedure |
| 290 All Other Real Property | 445 Amer w/Disabilities - | 535 Death Penalty | **IMMIGRATION** | 871 IRS—Third Party | Act/Review or Appeal of |
| | Employment | **Other:** | 462 Naturalization Application | 26 USC 7609 | Agency Decision |
| | 446 Amer w/Disabilities - | 540 Mandamus & Other | 465 Other Immigration | | 950 Constitutionality of |
| | Other | 550 Civil Rights | Actions | | State Statutes |
| | 448 Education | 555 Prison Condition | | | |
| | | 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

### V. ORIGIN *(Place an "X" in One Box Only)*

- [ ] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

### VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):*
USC 1679-1679, 16 CFR 310.2
Brief description of cause:
illegal and decep ive acts in credit repair and abusive acts in telemarketing

### VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: [ ] Yes [ ] No

### VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE      DOCKET NUMBER

DATE
11/18/2022

SIGNATURE OF ATTORNEY OF RECORD
/s/ Jeremiah E. Heck

**FOR OFFICE USE ONLY**

RECEIPT #     AMOUNT     APPLYING IFP     JUDGE     MAG JUDGE

Exhibit "21"

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO

**I.**

Civil Categories: (Please check one category only ).

1. ☑ General Civil
2. ☐ Administrative Review/Social Security
3. ☐ Habeas Corpus Death Penalty

*If under Title 28, §2255, name the SENTENCING JUDGE: _____

CASE NUMBER: _____

**II.** **RELATED OR REFILED CASES** See LR 3.1 which provides in pertinent part: "If an action is filed or removed to this Court and assigned to a District Judge after which it is discontinued, dismissed or remanded to a State court, and subsequently refiled, it shall be assigned to the same Judge who received the initial case assignment without regard for the place of holding court in which the case was refiled. Counsel or a party without counsel shall be responsible for bringing such cases to the attention of the Court by responding to the questions included on the Civil Cover Sheet."

This action: ☐ is **RELATED** to another **PENDING** civil case ☐ is a **REFILED** case ☐ was **PREVIOUSLY REMANDED**

If applicable, please indicate on page 1 in section VIII, the name of the Judge and case number.

**III.** In accordance with Local Civil Rule 3.8, actions involving counties in the Eastern Division shall be filed at any of the divisional offices therein. Actions involving counties in the Western Division shall be filed at the Toledo office. For the purpose of determining the proper division, and for statistical reasons, the following information is requested.

ANSWER ONE PARAGRAPH ONLY. ANSWER PARAGRAPHS 1 THRU 3 IN ORDER. UPON FINDING WHICH PARAGRAPH APPLIES TO YOUR CASE, ANSWER IT AND STOP.

(1) **Resident defendant**. If the defendant resides in a county within this district, please set forth the name of such county

**COUNTY:**

Corporation For the purpose of answering the above, a corporation is deemed to be a resident of that county in which it has its principal place of business in that district.

(2) **Non-Resident defendant**. If no defendant is a resident of a county in this district, please set forth the county wherein the cause of action arose or the event complained of occurred.

**COUNTY:** Allen County, Ohio

(3) **Other Cases**. If no defendant is a resident of this district, or if the defendant is a corporation not having a principle place of business within the district, and the cause of action arose or the event complained of occurred outside this district, please set forth the county of the plaintiff's residence.

**COUNTY:**

**IV.** The Counties in the Northern District of Ohio are divided into divisions as shown below. After the county is determined in Section III, please check the appropriate division.

**EASTERN DIVISION**

☐ **AKRON** (Counties: Carroll, Holmes, Portage, Stark, Summit, Tuscarawas and Wayne)
☐ **CLEVELAND** (Counties: Ashland, Ashtabula, Crawford, Cuyahoga, Geauga, Lake, Lorain, Medina and Richland)
☐ **YOUNGSTOWN** (Counties: Columbiana, Mahoning and Trumbull)

**WESTERN DIVISION**

☑ **TOLEDO** (Counties: Allen, Auglaize, Defiance, Erie, Fulton, Hancock, Hardin, Henry, Huron, Lucas, Marion, Mercer, Ottawa, Paulding, Putnam, Sandusky, Seneca VanWert, Williams, Wood and Wyandot)

**Exhibit "21"**

**INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44**

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.(a) **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

   (b) **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

   (c) **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II. **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
   United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
   United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
   Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
   Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked**. (See Section III below; NOTE: federal question actions take precedence over diversity cases.)**

III. **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV. **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

V. **Origin.** Place an "X" in one of the seven boxes.
   Original Proceedings. (1) Cases which originate in the United States district courts.
   Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
   Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
   Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
   Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
   Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
   Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
   **PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

VI. **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

VII. **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
   Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
   Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII. **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

**Exhibit "21"**

# Exhibit "22"

# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

ANIBAL COLON JR.,

      Plaintiff,                        Case No. 6:22-cv-02343

v.

THE LITIGATION PRACTICE GROUP PC,

      Defendant.

_____/

## COMPLAINT

**NOW COMES** ANIBAL COLON JR. ("Plaintiff") by and through his undersigned attorney, complaining as to the conduct of THE LITIGATION PRACTICE GROUP PC ("Defendant") as follows:

### NATURE OF THE ACTION

1.    Plaintiff brings this action seeking redress for Defendant's violations of the Credit Repair Organization Act ("CROA") pursuant to 15 U.S.C. § 1679 *et seq.*, the Florida Credit Service Organization Act ("FCSOA") pursuant to Fla. Stat. § 817.700 *et seq.*, and the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") pursuant to Fla. Stat. § 501.201 *et seq.*

### JURISDICTION AND VENUE

2.    Subject matter jurisdiction is conferred upon this Court by the CROA pursuant to 15 U.S.C. § 1679 *et seq.*, 28 U.S.C. §§ 1331 and 1337, as the action arises

1

**Exhibit "22"**

under the laws of the United States. Supplemental jurisdiction exists for the state law

claims pursuant to 28 U.S.C. § 1367.

3.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 as Plaintiff

resides in the Middle District of Florida and all of the events or omissions giving rise

to Plaintiff's claims occurred in this Middle District of Florida.

PARTIES

4.      Plaintiff is a consumer and a natural person over 18-years-of-age who, at

all-times relevant, resided in the Middle District of Florida.

5.      Defendant is a credit repair organization and law corporation that offers

its customers the ability to eliminate and resolve their debit issues through Defendant's

services. Defendant is a professional corporation organized under the laws of the state

of California with its principal place of business located at 17542 17th Street, Suite 100,

Tustin, California 92780.

6.      Defendant acted through its agents, employees, officers, members,

directors, heirs, successors, assigns, principals, trustees, sureties, subrogees,

representatives and insurers at all times relevant to the instant action.

FACTS SUPPORTING CAUSES OF ACTION

7.      In November 2019, Plaintiff had a number of debts which were impacting

his credit, prompting him to begin looking for companies who may be able to assist

him in improving his credit and resolving his obligations.

8.      After diligent research, Plaintiff happened upon Defendant due to its

representations that it could help consumers improve their creditworthiness.

2

**Exhibit "22"**

9. As such, Plaintiff spoke with Defendant who advised Plaintiff that it would be able to remove negative information from his credit profile, resolve obligations with creditors and improve his credit score.

10. On November 24, 2019, Plaintiff entered into an agreement in connection with Defendant's credit repair services.

11. As part of agreement, Plaintiff paid Defendant a recurring monthly fee of $278.92 in exchange for Defendant's services that included removing erroneous or inaccurate information appearing on Plaintiff's credit report by contesting debts.

12. After months of making payments and informing Defendant of the inaccurate information which he wanted addressed through Defendant's dispute process, none of the inaccurate information had been removed from Plaintiff's credit reports.

13. Relying upon Defendant's representations regarding the nature and efficacy of its services, Plaintiff continued making recurring monthly payments with the hopes of improving his creditworthiness.

14. Defendant's conduct in representing that it could effectively dispute and remove Plaintiff's information on his credit reports was inherently misleading and deceptive.

15. Plaintiff continued to work with Defendant on a month to month basis into 2020 following their initial agreement. However, Plaintiff grew tiresome of Defendants failure to uphold its promises.

**Exhibit "22"**

16.     Eventually, after making multiple payments to Defendant, Plaintiff became extremely frustrated and distressed that he had been making payments yet not seeing any results on the part of Defendant.

17.     Upon information and belief, Defendant retained fees for services prior to such services being fully performed, as Defendant's retention of Plaintiff's monthly payment, at least in part, went towards purported legal proceedings that have not, and may never, come about.

18.     Even further, the contract between Plaintiff and Defendant fails to include the information and disclosures Defendant was required to provide to Plaintiff under federal and state law.

19.     At no point did Defendant provide Plaintiff any of the disclosures required by federal and state law.

20.     Defendant's failure to provide Plaintiff the relevant information and disclosures inhibited Plaintiff's ability to chart an intelligent course of conduct in connection with his dealings with Defendant.

21.     Subsequently, on September 22, 2020, Plaintiff terminated its contact with Defendant due to Plaintiff not seeing any positive changes occur in Defendant's debt relief program

22.     Following Plaintiff's termination of his relationship with Defendant, Plaintiff spent months attempting to dig himself out of the hole created by Defendant's deficient provision of credit repair services.

**Exhibit "22"**

23.     Frustrated, distressed, and concerned over Defendant's conduct, Plaintiff spoke with the undersigned regarding his rights.

## DAMAGES

24.     Defendant's failure to sufficiently take steps to improve Plaintiff's creditworthiness though its debt relief program underscores the generally deceptive manner in which Defendant held out the efficacy of its services to Plaintiff.

25.     Furthermore, it was deceptive for Defendant to represent the effectiveness of its services given that Defendant promised Plaintiff that it would clean up Plaintiff's credit, pay off his creditors, and improve his credit score.

26.     As such, Defendant misrepresented the nature of its services by not properly engaging with Plaintiff's creditors to negotiate his obligations and improving his creditworthiness.

27.     Plaintiff suffered severe emotional distress, as well as significant out of pocket expenses and persistently depressed credit scores as a result of Defendant's deceptive and misleading conduct.

28.     Plaintiff has suffered concrete harm as a result of Defendant's actions, including but not limited to, emotional distress, aggravation, mental anguish, lost time, out of pocket expenses, pecuniary loss stemming from the payments made to Defendant, denial of the benefit of his bargain, making payments to Defendant after relying on false and deceptive representations, as well as numerous violations of his federally protected interests to be free from deceptive and misleading conduct on the part of purported credit repair organizations.

5

**Exhibit "22"**

## COUNT I - VIOLATIONS OF THE CREDIT REPAIR ORGANIZATIONS ACT
### Violations of CROA §§ 1679b(a)(3)-(4)

29.    Plaintiff is a "consumer" as defined by 15 U.S.C. § 1679a(1) of the CROA.

30.    Defendant is a "credit repair organization" as defined by §1679a(3) of the CROA, as it is a person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of improving a consumer's credit, credit history, or credit rating, or providing assistance to any consumer with regard to any activity or service for the purpose of improving a consumer's credit.

### a. Violations of CROA §§ 1679b(a)(3)-(4)

31.    The CROA, pursuant to 15 U.S.C. § 1679b(a)(3) prohibits any person from "mak[ing] or us[ing] any untrue or misleading representation of the services of the credit repair organization." Additionally, pursuant to 15 U.S.C. § 1679b(a)(4), any person is prohibited from "engag[ing], directly or indirectly, in any act, practice, or course of business that constitutes or results in the commission of, or an attempt to commit, a fraud or deception on any person in connection with the offer or sale of the services of the credit repair organization."

32.    Defendant violated the above referenced provisions of the CROA through its misrepresentations and deception as to the nature of the credit repair services it provided Plaintiff. Defendant represented to Plaintiff that his $278.92

**Exhibit "22"**

payment would go towards resolving and eliminating his debt; however, he was discovered that his payments went solely towards Defendant's fees and did not go toward resolving any of his obligations. Plaintiff's decision to enroll in Defendant's services was carefully crafted upon considering his financial means, and upon realizing that extent to which he was deceived, Plaintiff suffered emotional distress as he lacked the financial means to both pay Defendant as well as the creditors he sought to avoid by enrolling in Defendant's services.

33.     Defendant further deceptively represented the nature of its services when it suggested that it would clean up his credit and improve his credit score by paying off his creditors through Defendant's reoccurring monthly fees. Despite this representation Plaintiff saw his credit score depressed and none of his obligations to his creditors was resolved.

### COUNT II - VIOLATIONS OF THE CREDIT REPAIR ORGANIZATIONS ACT
### Violations of CROA § 1679b(b)

34.     The CROA, pursuant to 15 U.S.C. § 1679b(b), provides that "[n]o credit repair organization may charge or receive any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform for any consumer before such service is fully performed."

35.     Defendant violated § 1679b(b) through its charging and receiving of money for services agreed to perform before such services are fully performed. Included within Defendant's services was legal representation in the event Plaintiff got sued, and Plaintiff's payments went towards these fees. Despite Defendant promising

7

**Exhibit "22"**

to perform such services, it nevertheless charged and accepted payment before such services were fully performed.

### COUNT III - VIOLATIONS OF THE CREDIT REPAIR ORGANIZATIONS ACT
### Violation of CROA § 1679c

36.     The CROA provides that a credit repair organization must provide consumers with certain written disclosures in the contract underpinning the provision of credit repair services to consumer. Pursuant to 15 U.S.C. § 1679c(b), "the written statement required under this section shall be provided as a document which is separate from any written contract or other agreement between the credit repair organization and the consumer or any other written material provided to the consumer."

37.     Defendant violated 15 U.S.C. §§ 1679c(a)-(b) through its failure to provide the written disclosures required under § 1679c. Defendant never provided such disclosures, nor did it provide a separate document containing such disclosures.

### COUNT IV - VIOLATIONS OF THE CREDIT REPAIR ORGANIZATIONS ACT
### Violation of CROA §§ 1679d(4) & 1679e

38.     The CROA, pursuant to 15 U.S.C. § 1679d(4), requires credit repair organization to include, in the contract between them and a consumer, "a conspicuous statement in bold face type, in immediate proximity to the space reserved for the consumer's signature on the contract, which reads as follows: 'You may cancel this contract without penalty or obligation at any time before midnight of the 3rd business day after the date on which you signed the contract. See the attached notice of cancellation form for an explanation of this right.'" 15 U.S.C. § 1679e further outlines

8

**Exhibit "22"**

the extent of a consumer's cancellation rights under CROA while requiring such disclosure to be given to consumers in writing.

39.     Defendant violated 15 U.S.C. §§ 1679d(4) & 1679e through its complete failure to provide the above disclosure in immediate proximity to the space reserved for Plaintiff's signature on the contract, as well as its failure to provide the notice of cancellation to Plaintiff.

**WHEREFORE**, Plaintiff, ANIBAL COLON JR., respectfully requests that this Honorable Court enter judgment in his favor as follows:

a.     Declaring that the practices complained of herein are unlawful and violate the aforementioned bodies of law;

b.     Awarding Plaintiff actual damages to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(1);

c.     Awarding Plaintiff punitive damages, in an amount to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(2)(A);

d.     Awarding Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. § 1679g(a)(3); and

e.     Awarding any other relief as this Honorable Court deems just and appropriate.

## COUNT V - VIOLATIONS OF THE FLORIDA CREDIT SERVICE ACT

52.     Plaintiff is a "buyer" as defined by Fla. Stat. § 817.7001(1).

**Exhibit "22"**

53. Defendant is a "credit service organization" as defined by Fla. Stat. §
817.7001(2)(a).

**a. Violation of FCSOA § 817.7005**

54. The FCSOA, pursuant to Fla. Stat. § 817.7005, provides a list of
prohibited conduct for credit services organizations.

55. Pursuant to Fla. Stat. § 817.7005(1), a credit service organization must
not charge or receive any money or other consideration prior to full and complete
performance of its services, unless it has maintained a surety bond with the state, in
which case the sums paid must be retained until full performance of the services are
rendered.

56. Defendant violated Fla. Stat. § 817.7005(a) through its charging of
Plaintiff prior to full and complete performance of its services without reimbursing
Plaintiff for its incomplete services.

57. Pursuant to Fla. Stat. § 817.7005(4), a credit service organization cannot
"[m]ake or use any false or misleading representations or omit any material fact in the
offer or sale of the services of a credit service organization or engage, directly or
indirectly, in any act, practice, or course of business that operates or would operate as
fraud or deception upon any person in connection with the offer or sale of the services
of a credit service organization, notwithstanding the absence of reliance by the buyer.

58. As outlined above, Defendant violated the above referenced provision of
the FCSOA in much the same way it violated 15 U.S.C. §§ 1679b(a)(3)-(4).

10

**Exhibit "22"**

## COUNT VI - VIOLATIONS OF THE FLORIDA CREDIT SERVICE ACT
### Violation of FCSOA § 817.704

59.    The FCSOA, pursuant to Fla. Stat. § 817.704(1), outlines what must be included in a contract between a credit service organization and a consumer, including "[a] conspicuous statement in boldfaced type, in immediate proximity to space reserved for the signature of the buyer, as follows: 'You, the buyer, may cancel this contract at any time prior to midnight of the fifth day after the date of the transaction." Fla. Stat. § 817.704(1)(a) (emphasis added). Further, pursuant to Fla. Stat. § 817.704(2), the contract must be accompanied by a notice of the right to cancel which similarly outlines the required Florida five day window.

60.    Defendant violated §§ 817.704(1)(a) & (2) through its failure to properly provide a conspicuous statement in boldface type and the length of time for cancellation as required by Florida law.

**WHEREFORE**, Plaintiff, ANIBAL COLON JR., respectfully requests that the Honorable Court enter judgment in his favor as follows:

a.    Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b.    Awarding Plaintiff actual damages pursuant to Fla. Stat. § 817.706(1);

c.    Awarding Plaintiff punitive damages pursuant to Fla. Stat. § 817.706(1);

d.    Awarding Plaintiff's costs and reasonable attorney fees, pursuant to Fla. Stat. § 817.706(1); and,

e.    Awarding any other relief as this Honorable Court deems just and

11

**Exhibit "22"**

appropriate.

## <u>COUNT VII - VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT</u>

61.    The transactions giving rise to these claims constitute "trade or commerce" defined by Fla. Stat. § 501.203(8).

62.    Pursuant to the FDUTPA § 501.204(1), "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

63.    The provisions of the FDUTPA "shall be construed liberally to . . . protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2).

64.    Violations of the FDUTPA further consider the rules promulgated in connection with the Federal Trade Commission Act, the standards of unfairness and deception set forth and interpreted by the Federal Trade Commission or the federal courts, as well as any law, statute, rule, regulation, or ordinance which proscribes unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices. *See* Fla. Stat. § 501.203.

65.    Defendant violated § 501.204(1) through the nature of the unfair practices of promising Plaintiff it would improve his credit score and pay of his creditors. Defendant deceptively engaged Plaintiff through its representation that it will resolving and eliminate his debt by making recurring monthly payments to Defendant; however,

**Exhibit "22"**

his payments went solely towards Defendant's fees and did not go toward resolving any of his obligations. As outlined above, Defendant unfairly failed to provide Plaintiff with its services of improving Plaintiff's credit and paying off his obligation through its debt relief program. All of the above conduct falls within the broad protections afforded Florida consumers under the FDUTPA.

**WHEREFORE**, Plaintiff, ANIBAL COLON JR., respectfully requests that this Honorable Court enter judgment in his favor as follows:

a.      Enter judgment in Plaintiff's favor and against Defendant;

b.      Award Plaintiff his actual damages in an amount to be determined at trial pursuant to the Fla. Stat. § 501.211(2);

c.      Enter a declaratory judgment finding that the above referenced conduct is in violation of the above referenced statutes and regulations, pursuant to Fla. Stat. § 501.211(1);

d.      Award Plaintiff equitable relief, including enjoining Defendant from further violations, pursuant to Fla. Stat. §501.211(1);

e.      Award Plaintiff costs and reasonable attorneys' fees pursuant to Fla. Stat. §501.2105;

f.      Award any other relief this Honorable Court deems equitable and just.

**Plaintiff demands trial by jury.**

13

**Exhibit "22"**

Dated: December 16, 2022                          Respectfully Submitted,


                                                  */s/ Alexander J. Taylor*
                                                  Alexander J. Taylor, Esq.
                                                  *Counsel for Plaintiff*
                                                  Sulaiman Law Group, Ltd.
                                                  2500 South Highland Avenue,
                                                  Suite 200
                                                  Lombard, IL 60148
                                                  Telephone: (630) 575-8181
                                                  ataylor@sulaimanlaw.com

**Exhibit "22"**

JS 44 (Rev 09/19)                           **CIVIL COVER SHEET**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| ANIBAL COLON JR. | THE LITIGATION PRACTICE GROUP PC |

**(b)** County of Residence of First Listed Plaintiff    Orange County
      *(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
      *(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
        THE TRACT OF LAND INVOLVED

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Sulaiman Law Group, Ltd.
2500 South Highland Avenue Suite 200 Lombard, Illinois 60148
630-575-8181

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1   U S Government
     Plaintiff
- ☒ 3   Federal Question
     *(U.S. Government Not a Party)*
- ☐ 2   U S Government
     Defendant
- ☐ 4   Diversity
     *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*        *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☒ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) | Protection Act |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | | ☐ 790 Other Labor Litigation | ☐ 863 DIWC/DIWW (405(g)) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | | | | ☐ 864 SSID Title XVI | ☐ 850 Securities/Commodities/ Exchange |
| | | | | ☐ 865 RSI (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U S Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer w/Disabilities - Other | **Other:** ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1   Original Proceeding
- ☐ 2   Removed from State Court
- ☐ 3   Remanded from Appellate Court
- ☐ 4   Reinstated or Reopened
- ☐ 5   Transferred from Another District *(specify)*
- ☐ 6   Multidistrict Litigation - Transfer
- ☐ 8   Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):*
Credit Repair Organization Act ("CROA") pursuant to 15 U.S.C. § 1679 et seq.
Brief description of cause:
Unlawful Debt Collection Practices

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*    JUDGE _____    DOCKET NUMBER _____

DATE
12/16/2022

SIGNATURE OF ATTORNEY OF RECORD
/s/ Alexander J. Taylor

**FOR OFFICE USE ONLY**

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG JUDGE _____

**Exhibit "22"**

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)**   **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

   **(b)**   **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

   **(c)**   **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**   **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked**.** (See Section III below**; NOTE: federal question actions take precedence over diversity cases.**)

**III.**   **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**   **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.**   **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.**   **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

**VII.**   **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**   **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Middle District of Florida

|  |  |  |
|---|---|---|
| ANIBAL COLON JR. | ) ) ) ) ) ) ) ) ) ) ) ) | |
| *Plaintiff(s)* | | |
| v. | | Civil Action No.  6:22-cv-02343 |
| THE LITIGATION PRACTICE GROUP PC | | |
| *Defendant(s)* | | |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  THE LITIGATION PRACTICE GROUP PC
C/O DANIEL S MARCH
17542 E 17TH STREET STE 100
TUSTIN, CA  92780

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:  Alexander J. Taylor
Sulaiman Law Group, Ltd
2500 S Highland Ave, Suite 200
Lombard, IL 60148

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____

_____
*Signature of Clerk or Deputy Clerk*

**Exhibit "22"**

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.  6:22-cv-02343

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❐ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❐ I left the summons at the individual's residence or usual place of abode with *(name)*

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❐ I returned the summons unexecuted because _____ ; or

❐ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .


I declare under penalty of perjury that this information is true.


Date: _____              _____
                                                                    *Server's signature*

                                                           _____
                                                                    *Printed name and title*


                                                           _____
                                                                    *Server's address*

Additional information regarding attempted service, etc:


**Exhibit "22"**

# Exhibit "23"

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

Kathleen Lacey,

               Plaintiff,

v.

The Litigation Practice Group, P.C.;
Debt Advisors of America; and Coast
Processing,

               Defendants.

Case No.: 2:22-cv-13043

Judge

Magistrate Judge

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Kathleen Lacey ("Ms. Lacey" or "Plaintiff") alleges violations of the Credit Repair Organizations Act ("CROA"), 15 U.S.C. § 1679, *et seq.* against Defendants The Litigation Practice Group ("LPG"), Debt Advisors of America ("DAA") and Coast Processing ("Coast") (referenced collectively as "Defendants"):

## INTRODUCTION

1.     Plaintiff's Complaint arises from multiple violations of the Credit Repair Organizations Act by Defendants.

1

**Exhibit "23"**

## JURISDICTION AND VENUE

2.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, because Plaintiff alleges violation of the CROA, a federal law. 15 U.S.C. 1679g (CROA) (establishing civil liability).

3.    This Court also has jurisdiction over this action under 28 U.S.C. §1332 as the matter in controversy exceeds $75,000.00, Plaintiff is a citizen of Michigan, and Defendants are all citizens of California.

4.    Venue in the Eastern District of Michigan is proper pursuant to 28 U.S.C. § 1391 because Defendants regularly transacts business within this District, are otherwise subject to personal jurisdiction in this District, and a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## PARTIES

5.    Plaintiff incorporates herein by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

6.    Plaintiff is a natural person who resides in Macomb County, Michigan

7.    Plaintiff is a consumer as defined by the CROA, 15 U.S.C. §1679a(1).

8.    LPG is a credit repair organization ("CRO") as defied by the CROA, 15 U.S.C. § 1697(a)(3) and a law firm offering, among other services, credit repair and "debt relief."

9.    LPG's principal place of business is at 17542 17th Street, Suite 100,

2

**Exhibit "23"**

Tustin, California 92780.

10. DAA is a CRO as defied by the CROA, 15 U.S.C. § 1697(a)(3) and a debt settlement company that offers "a form of debt consolidation without a loan" through a personalized "debt restructure program."[1]

11. For example, DAA advertises the following service for individuals with a "total debt of $25,000" –

    a. A "monthly payment" of $408;

    b. A "total repayment" of $18,750;

    c. A "debt free in" estimate of 46 months;

    d. An "interest rate" of 0%; and

    e. "1-on-1 expert help."[2]

12. DAA is headquartered at 6863 Friars Rd, Ste 101, San Diego, CA 92108-1266.

13. Coast is a CRO as defied by the CROA, 15 U.S.C. § 1697(a)(3) and a debt settlement company that operates in tandem with LPG to offer debt resolution and credit repair services to consumers.

14. Coast is headquartered at 1351 Calle Avanzado #2, San Clemente, CA

---

[1] Reduce your monthly payments today!, Debt Advisers of America, https://www.debtadvisorsofamerica.com/ (last visited Oct 3, 2022).
[2] Reduce your monthly payments today!, Debt Advisers of America, https://www.debtadvisorsofamerica.com/ (last visited Oct 3, 2022).

**Exhibit "23"**

92673.

15.     During all times pertinent to this Complaint, Defendants conducted

business in the State of Michigan on a routine and systematic basis.

16.     During all times pertinent to this Complaint, Defendants acted through

their authorized agents, employees, officers, members, directors, heirs, successors,

assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

17.     Any violation by Defendants were not in good faith, were knowing,

negligent, willful, and/or intentional.

## FACTS

18.     Plaintiff incorporates herein by reference all of the above paragraphs

of this Complaint as though fully set forth at length herein.

19.     Congress enacted the CROA, in part, "to protect the public from

unfair or deceptive advertising and business practices by credit repair

organizations." 15 U.S.C. § 1679(b)(2).

20.     In so doing, Congress expressly found that "[c]ertain advertising and

business practices of some companies engaged in the business of credit repair

services have worked a financial hardship upon consumers, particularly those of

limited economic means and who are inexperienced in credit matters." 15 U.S.C. §

1679(a)(2).

**Exhibit "23"**

21.    The CROA was enacted primarily for the benefit and protection of individual consumers who are experiencing "credit problems." *See* 15 U.S.C. § 1679(a)(1) ("…consumers who have experienced credit problems may seek assistance from credit repair organizations which offer to improve the credit standing of such consumers.").

22.    At all times pertinent to this Complaint, Ms. Lacey was such a consumer. Under circumstanced irrelevant to this action, at some point prior to January 2021 Ms. Lacey experienced financial hardship, falling behind on a myriad of debts which were impacting her credit score.

23.    On or about January 22, 2021, Ms. Lacey spoke to a representative of DAA regarding the possibility of DAA assisting Ms. Lacey with her debt and credit issues.

24.    DAA advised Ms. Lacey that she could enroll a number of her debts into its program, at which point Ms. Lacey would make monthly payments, and that DAA would, in turn, use such funds for the purpose of assisting Ms. Lacey in resolving her obligation.

25.    Ms. Lacey was expressly instructed by DAA that, if she signed up for the program, she should stop paying all of her creditors and only pay DAA and its team.

**Exhibit "23"**

26.    DAA further informed Ms. Lacey that DAA's program included legal services provided by Litigation Practice Group ("LPG"), a law firm which DAA represented as "Debt Advisers of America's attorneys" even though LPG and DAA are completely separate entities, which offered services including the deletion of all charge-off and late-payment notations from her credit report using the Fair Credit Reporting Act.

27.    Ms. Lacey was led to believe that DAA's program, if it worked as advertised, would result in Ms. Lacey having the derogatory information and accounts appearing on her credit report resolved or otherwise removed, so that such accounts would no longer impact her credit in the manner they were.

28.    Believing that, by signing up and paying for DAA's advertised services, she would have her accounts resolved and credit improved by paying DAA instead of her creditors, Ms. Lacey agreed to utilize DAA's services, and began making automatic monthly payments of $261.76, beginning on February 2, 2021, to Coast Processing, who DAA represented to Ms. Lacey was a part of the debt resolution team.

29.    DAA failed to clarify to Ms. Lacey the way in which her payments would be apportioned or what portions would go towards certain fees.

30.    Relying on DAA's instructions, Ms. Lacey stopped paying the monthly payments owed on her debts.

**Exhibit "23"**

31.    Ms. Lacey signed a retainer agreement with LPG, at the direction of DAA's representative, for the "service" of "removing erroneous or inaccurate information appearing on one or more of your credit reports by contesting debts appearing therein" and "to challenge the legal validity of debts appearing on or being reported to credit bureaus."

32.    Further, the LPG retainer explicitly stated that, "if a lawsuit is filed against [Ms. Lacey], LPG will represent [Ms. Lacey] in such a lawsuit and will not charge any additional fees for such representation provided such a lawsuit was initiated after the date [Ms. Lacey] sign[s] this Agreement. […] Any costs incurred in a lawsuit will be paid by LPG […] No additional payment from [Ms. Lacey] to LPG will be necessary for the defense of any lawsuit filed against [Ms. Lacey] after the date [Ms. Lacey] execute[s] this agreement."

33.    On January 26, 2021, Ms. Lacey was contacted by a representative from Coast "to go over the Debt Validation Program in full detail."

34.    The Coast representative represented to Ms. Lacey that Coast was "working directly with the attorneys at the Litigation Practice Group to invalidate your debts with your creditors and collection agencies."

35.    Upon information and belief, Ms. Lacey's first payment made to LPG, DAA, and Coast was an up-front, one-time fee of approximately $255 charged for services not yet performed.

**Exhibit "23"**

36.     As Ms. Lacey continued making her monthly payments, LPG, DAA, and Coast continued charging Ms. Lacey fees for services not yet performed.

37.     During this time, and throughout the following year and a half, Ms. Lacey continued to communicate with LPG, DAA, and Coast regularly, sending emails to its representatives and requesting updates on the progress.

38.     While Ms. Lacey was led to believe that her payments were going towards actively resolving her debts or otherwise addressing her credit, LPG, DAA, and Coast failed to perform the services that were represented, and Ms. Lacey received no benefit at as result of the program.

39.     On February 2, 2021, at Coast's behest, Ms. Lacey provided her identification and payment verification to Coast for the purported purpose of disputing the validity of her debts with the collectors.

40.     Ms. Lacey continued to make monthly payments and to forward collection letters received to Coast and LPG.

41.     In or about March or April of 2021, LPG communicated to Ms. Lacey that they had sent letters to all of the creditors who owned the debts enrolled in the program demanding verification of the debts under the FDCPA, and that all such creditors had failed to verify in a timely manner.

**Exhibit "23"**

42.    It was not until April 5, 2021, that LPG sent disputes to the non-party Consumer Reporting Agencies ("CRAs") Experian Information Solution, Inc. ("Experian") and Trans Union, Inc. ("Trans Union").

43.    On July 20, 2021, Ms. Lacey received an email from Coast "announc[ing] that The Litigation Practice Group ha[d] taken over all processing of your accounts…" and that "[a]ll function previously performed by Coast Processing [were] now being performed exclusively by LPG."

44.    Ms. Lacey continued to make monthly payments and to forward collection letters received to LPG.

45.    On July 30, 2021, non-party creditor Michigan Schools & Government Credit Union ("MSGCU") filed a complaint in state court seeking judgment for unpaid amounts on a debt included in Ms. Lacey's agreement with DAA, LPG, and Coast.

46.    Ms. Lacey was understandably shocked that an account which she thought was being handled by Defendants had resulted in a lawsuit against her.

47.    Upon receiving the summons for the MSGCU suit, Ms. Lacey forwarded the same to LPG and sent multiple emails requesting a phone call with LPG staff to discuss both the lawsuit and the handling of her other accounts. Ms. Lacey's requests were initially ignored.

9
**Exhibit "23"**

48.     Eventually, LPG hired local counsel to represent Ms. Lacey, and she was forced to enter into a consent judgment in the MSGCU suit to avoid a default judgment.

49.     Thereafter, another non-party creditor Capital One Bank (USA) N.A. ("Capital One") filed two complaints in state court seeking judgment for unpaid amounts on two debts included in Ms. Lacey's agreement with DAA, LPG, and Coast.

50.     Upon receiving the summons for the Capital One suits, Ms. Lacey forwarded the same to LPG and sent multiple emails requesting a phone call with LPG staff to discuss both the lawsuit and the handling of her other accounts. Ms. Lacey's requests were initially ignored.

51.     Eventually, an LPG attorney emailed Ms. Lacey to confirm that she would be representing her in reference to the Capital One suits but refused to speak to her in person, despite requests to do so.

52.     The LPG attorney apparently reached out to Capital One's counsel and agreed to a consent judgment without Ms. Lacey's authority, because she emailed Ms. Lacey and forced her to sign the consent on the grounds that the LPG attorney had already agreed to the same on her behalf and could not retract the agreement.

**Exhibit "23"**

53.     In March of 2022, LPG entered into a consent judgment in Michigan state court on a Capital One suit, but described Ms. Lacey as "pro per," representing to the Court that Ms. Lacey was not represented by counsel.

54.     On or about May 19, 2022, Ms. Lacey requested her credit report through LPG and discovered that every account included in her agreement with LPG, DAA, and Coast (except those accounts which had been resolved by Ms. Lacey in state court after the creditors had filed suit) were still being reported as owed on her credit report.

55.     Thereafter, Ms. Lacey began continually requesting that someone from LPG get on the phone with her and explain what LPG had been doing for a year and a half, which had resulted in multiple state court lawsuits, two consent judgments, and no improvement in her credit. As of the date of filing this lawsuit, Ms. Lacey has yet to receive a response to this request.

56.     LPG representatives thrice cancelled scheduled phone calls with Ms. Lacey between May 19, 2022, and August 30, 2022.

57.     Thereafter, Ms. Lacey began seeking out separate counsel, as she had been harmed by the failures of LPG, DAA, and Coast.

58.     Ms. Lacey made thousands of dollars in monthly payments to LPG, DAA, and Coast without receiving any benefit, much less the benefits that were

**Exhibit "23"**

represented to Ms. Lacey as forthcoming if she enrolled in LPG, DAA, and Coast's program.

59.    Defendants' actions have caused Ms. Lacey substantial harm.

60.    Ms. Lacey's credit score dropped approximately 100 points on average, causing third-party potential creditors to view her less favorably.

61.    Ms. Lacey is now in a substantial financial predicament, being forced to seriously consider filing for bankruptcy due to Defendants' false representations and failure to provide the services promised.

62.    Ms. Lacey also lives in fear that the remaining creditors will file suit to obtain judgments for the debts currently enrolled with LPG.

63.    Ms. Lacey is currently awaiting two knee replacements, which she cannot obtain due to the reduction in her credit score and creditworthiness caused by Defendants' action.

64.    All of this has caused Ms. Lacey enormous amounts of stress emotional and mental distress, including but not limited to stress, anxiety, mental anguish, aggravation, sleeplessness, and headaches.

65.    Further, Ms. Lacey has been diagnosed with coronary vasospasm as a result, at least in part, of the extreme stress and anxiety caused by Defendants' actions.

**Exhibit "23"**

## COUNT I
### Violations of the CROA, 15 U.S.C. § 1679, *et seq.*
### All Defendants

66.    Plaintiff incorporates herein by reference all of the above paragraphs of this Complaint as though fully set forth herein at length.

67.    Ms. Lacey is a "consumer" as defined by 15 U.S.C. § 1679a(1) of the CROA.

68.    Defendants are all "credit repair organization[s]" as defined by § 1679a(3) of the CROA, as it is an entity which uses any instrumentality of interstate commerce or the mails to sell, provide, or perform any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of improving a consumer's credit, credit history, or credit rating, or providing assistance to any consumer with regard to any activity or service for the purpose of improving a consumer's credit.

69.    Defendants' program was represented to Ms. Lacey and consumers as having the implicit purpose of improving credit history, as if it worked properly, it would allow Ms. Lacey to pay down her debts and reestablish her credit.

### *Violations of CROA § 1679b(a)*

70.    The CROA, under 15 U.S.C. § 1679(a)(3) prohibits any person from "mak[ing] or us[ing] any untrue or misleading representation of the services of the credit repair organization." Additionally, under § 1679a(4), any person is

**Exhibit "23"**

prohibited from "engag[ing], directly or indirectly, in any act, practice, or course of business that constitutes or results in the commission of, or an attempt to commit, a fraud or deception of any person in connection with the offer or sale of the services of the credit repair organization."

71.    Defendants all violated the above referenced provisions of the CROA through the generally deceptive and misleading nature in which they held out their services to Ms. Lacey. Defendants promised Ms. Lacey that their program and partnerships would result in all of Ms. Lacey's enrolled debts being address and resolved. However, Defendants failed to meaningly perform any of the services they represented would be performed.

72.    Defendants further violated the above referenced provisions of the CROA through their misrepresentations and deceptions as to the nature of the fees that would be assessed in connection with the advertised services it offered. Defendants suggested to Ms. Lacey that her payments would go towards resolving her obligations. However, Defendants deceptively omitted the fact that there would be extensive charges for various fees and services that were not properly explained to Ms. Lacey, including fees charged by LPG and other monies simply pocketed by DAA and Coast for services not yet rendered. Defendants' conduct was designed to convince Ms. Lacey that utilizing Defendants' services would be beneficial,

14
**Exhibit "23"**

while failing to mention any information that would make Ms. Lacey rethink the appropriateness of Defendants' program.

73.     Defendants further violated the above referenced provisions of the CROA through their generally fraudulent and deceptive business model. Upon information and belief, Defendants are part of a scheme whereby DAA seeks to enroll vulnerable consumers in its programs based on incomplete and deceptive information absent the intent to provide the services as advertised. After a consumer has been convinced of the potential upsides of the program, and upon further information and belief, DAA has the consumer sign a retainer with LPG for the supposed legal services to be performed, and then has the payment for the entire program processed through a third-party, Coast. Upon information and belief, LPG, DAA, and Coast all share portions of the services charges without informing the consumer of the same. As such, Defendants engage in a deceptive and unfair scheme designed to transfer a consumer's money to their own pockets before such consumer gets wise to the ineffective nature of Defendants' services.

### *Violations of CROA § 1679b(b)*

74.     The CROA, under § 1679b(b), explicitly states that "[n]o credit repair organization may charge or receive any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform for any consumer before such services is fully performed."

**Exhibit "23"**

75.     Defendants violated § 1679b(b) by charging and receiving money from Ms. Lacey in exchange for the performance of services before such services were fully performed. Defendants charged Ms. Lacey consideration on an upfront basis before any services were performed, in plain violation of § 1679b(b) and attempted to hide such charges as fees for legal services to LPG by having all payments process by a separate entity (Coast), and by splitting such payments between the Defendants. Furthermore, throughout the life of their dealings, Defendants engaged in this scheme on a monthly basis, charging Ms. Lacey a flat-fee or otherwise causing undisclosed service fees to be created for services before such services were fully performed.

76.     Ms. Lacey paid Defendants **thousands** of dollars in fees despite Defendants failing to perform the services and achieve the represented results that would have justified its collection of such payments and fees.

### *Violations of CROA § 1679c*

77.     The CROA, under § 1679c, outlines various disclosures that CROs must provide prior to entering into agreements with consumers such as Ms. Lacey.

78.     Defendants violated § 1679c by failing completely to provide Ms. Lacey the required disclosures or a copy of the required disclosures.

//

**Exhibit "23"**

**COUNT II**
**Violations of the CROA, 15 U.S.C. § 1679, *et seq.***
**DAA and Coast**

### *Violations of CROA §§ 1679d & 1679e*

79.     The CROA, under § 1679d(a), expressly requires a CRO to enter into a written and dated contract before providing or purporting to provide credit repair services.

80.     Further, § 1679d(b) outlines various requirements for any contracts between CROs and their customers, including a written description of "the terms and conditions of payment, including the total amount of all payments to be made by the consumer to the credit repair organization or to any other person" and "a full and detailed description of the services to be performed by the credit repair organization for the consumer" and "all guarantees of performance; and an estimate of the date by which the performance of the services (to be performed by the credit repair organization or any other person) will be complete" and "the credit repair organization's name and principal business address" and finally "a conspicuous statement, in bold face type, in immediate proximity to the space reserved for the consumer's signature on the contract, which reads as follows: 'You may cancel this contract without penalty or obligation at any time before midnight on the 3rd business day after the date on which you signed the contract. See attached notice of cancelation form.'"

**Exhibit "23"**

81.     Further, § 1679e requires copies of the required notice of cancellation to be provided to consumers.

82.     DAA and Coast failed completely to comply with the requirements under § 1679d(b). Specifically, DAA and Coast

  a.  Failed to enter into a written contract which included the total amount of payments to be made to DAA and Coast or "any other person" (such as LPG);

  b.  Failed to include a full description of the services to be performed, including all guarantees of performance and an estimate of the time in which the services would be performed by either DAA or Coast or "any other person" (such as LPG); and

  c.  Failed to include its organizational name and principal place of business address in the required written contract;

83.     Further, DAA and Coast attempted to escape the requirements under §§ 1679d & 1679e by failing to provide Ms. Lacey with a written contract for their advertised services, instead having Ms. Lacey sign a retainer agreement with LPG (who were represented to Ms. Lacey as DAA's attorneys).

84.     DAA and Coast entered into an illegal agreement with Ms. Lacey to provide services as a CRO and failed completely to provide the required disclosures under §§ 1679d & 1679e.

**Exhibit "23"**

85.     Due to DAA and Coast's noncompliance with the above referenced CROA provisions, its agreement with Ms. Lacey is void and unenforceable under 15 U.S.C. § 1679f(c).

### *Defendants' Liability*

86.     Defendants' violations of the CROA render it liable to Ms. Lacey for actual damages, punitive damages, and an award of costs and reasonable attorney's fees.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against Defendants for the following:

(a)     A declaration that the practices complaint of herein are unlawful and violative of the CROA;

(b)     An award of actual damages to be determined at trial, pursuant to 15 U.S.C. § 1679g(a)(1)(A);

(c)     An award of punitive damages, as allowed by the Court pursuant to 15 U.S.C. § 1679g(a)(2)(A),

(d)     Costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1679g(a)(3); and

(e)     Such other and further relief as this Honorable Court may deem just

and proper, including any applicable pre-judgment and post-judgment

interest, and/or declaratory relief.

## **JURY DEMAND**

Plaintiff hereby demands jury trial on all issues so triable.

RESPECTFULLY SUBMITTED this 15th day of December 2022,

**PRICE LAW GROUP, APC**

*/s/ David A. Chami*
David A. Chami, AZ No. 027585
Price Law Group, APC
8245 N 85th Way
Scottsdale AZ 85258
P: (818) 600-5515
F: (818) 600-5415
E: david@pricelawgroup.com
F: (818) 600-5413
*Attorney for Plaintiff Kathleen Lacey*

20
**Exhibit "23"**

# Exhibit "24"

1  **SULAIMANLAW GROUP**
2  Alexander J. Taylor
   2500 South Highland Ave
3  Suite 200
4  Lombard, Illinois 60148
   Telephone: 331-307-7646
5  Facsimile: 630-575-8188
6  Email: ataylor@sulaimanlaw.com
   *Attorney for the Plaintiff*
7

8          **UNITED STATES DISTRICT COURT**
           **CENTRAL DISTRICT OF CALIFORNIA**
9              **SOUTHERN DIVISION**

10
                                    | Case No.  8:23-cv-00184
11  KIMBERLY D. BIRDSONG,           |
                                    | **COMPLAINT FOR DAMAGES**
12          Plaintiff,              |
                                    |    1.  **VIOLATION OF THE CREDIT**
13                                  |        **REPAIR ORGANIZATIONS**
14      v.                          |        **ACT, 15 U.S.C. §1679 *ET SEQ*.**
15
16  THE LITIGATION PRACTICE
    GROUP PC,                       | JURY TRIAL DEMANDED
17
            Defendant.
18

19                      **COMPLAINT**

20      **NOW COMES** KIMBERLY D. BIRDSONG ("Plaintiff"), by and through her

21
22  undersigned  attorney,  complaining  as  to  the  conduct  of  THE  LITIGATION

23  PRACITCE GROUP PC ("LPG" or "Defendant") as follows:

24                  **NATURE OF THE ACTION**

25
26  1.      Plaintiff brings this action seeking redress for Defendant's violations of the

27  Credit Repair Organizations Act ("CROA") pursuant to 15 U.S.C. §1679 et seq.

28
                              1

**JURISDICTION AND VENUE**

2.      Subject matter jurisdiction is conferred upon this Court by the CROA, and 28

U.S.C. §§1331 and 1337, as the action arises under the laws of the United States.

3.      Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Defendant's

principal place of business is located in the Central District of California and all of

the events or omissions giving rise to the claims against Defendant occurred in the

Central District of California.

**PARTIES**

4.      Plaintiff is a consumer, and a natural person over 18-years-of-age who, resides

in Fayetteville, North Carolina.

5.      Defendant is a credit repair organization and law corporation that offers its

customers the ability to eliminate and resolve their debit issues through Defendant's

services. Defendant is a professional corporation organized under the laws of the state

of California with its principal place of business located at 17542 17th Street, Suite

100, Tustin, California 92780.

6.      Defendant acted through its agents, employees, officers, members, directors,

heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives

and insurers at all times relevant to the instant action.

**FACTS SUPPORTING CAUSE OF ACTION**

7.      Prior to events giving rise, Plaintiff had been a victim of identity theft and a

number of debts which were impacting her credit, prompting her to begin looking for

2

**Exhibit "24"**

assistance in removing fraudulent information and improving her creditworthiness.

8. Plaintiff happened upon Defendant due to its representations that it could help consumers improve their creditworthiness and dispute the legal validity of its enrolled debts.

9. As such, Plaintiff spoke with Defendant who advised her that it would be able to remove erroneous and inaccurate information, as a result of her identify theft, to improve her overall creditworthiness.

10. Additionally, Defendant promised to identify Plaintiff's enrolled debts and to dispute any erroneous information reporting by her creditors.

11. In December 2021, Plaintiff entered into an agreement with Defendant for the service of credit repair.

12. As part of agreement, Plaintiff paid Defendant a recurring monthly fee of $499.24 in exchange for Defendant's services that included removing erroneous or inaccurate information appearing on Plaintiff's credit report by contesting debts.

13. After months of making payments and informing Defendant of the inaccurate information which she wanted addressed through Defendant's dispute process, none of the inaccurate information had been removed from Plaintiff's credit reports.

14. Relying upon Defendant's representations regarding the nature and efficacy of its services, Plaintiff continued making recurring monthly payments with the hopes of improving her creditworthiness.

15. Defendant's conduct in representing that it could effectively dispute and

3

**Exhibit "24"**

remove Plaintiff's information on her credit reports was inherently misleading and deceptive.

16.     Plaintiff continued to work with Defendant on a month-to-month basis into 2022 following their initial agreement. However, Plaintiff grew tiresome of Defendants failure to uphold its promises.

17.     Eventually, after making multiple payments to Defendant, Plaintiff became extremely frustrated and distressed that she had been making payments yet not seeing any results on the part of Defendant.

18.     Upon information and belief, Defendant retained fees for services prior to such services being fully performed, as Defendant's retention of Plaintiff's monthly payment, at least in part, went towards purported legal proceedings that have not, and may never, come about.

19.     Even further, the contract between Plaintiff and Defendant fails to include the information and disclosures Defendant was required to provide to Plaintiff under federal and state law.

20.     At no point did Defendant provide Plaintiff any of the disclosures required by federal law.

21.     Defendant's failure to provide Plaintiff the relevant information and disclosures inhibited Plaintiff's ability to chart an intelligent course of conduct in connection with her dealings with Defendant.

22.     Subsequently, in October of 2022, Plaintiff terminated her contract with

4

Defendant due to Plaintiff not seeing any positive changes occur in Defendant's debt relief program.

23.    Additionally, upon information and belief, Defendant misled and deceived Plaintiff to believe that its services will address Plaintiff's legal outstanding debts in a way that will remove Plaintiff's obligation to such debts. This misrepresentation makes Defendant appear to be a debt consolidation organization when its contract does not provide for such service. As a result, Plaintiff enrolled her legal outstanding debts with Defendant, believing that Defendant will help resolve them, instead of focusing on accounts reporting on her credit report that were erroneously reporting due to of her identity theft.

24.    Frustrated, distressed, and concerned over Defendant's conduct, Plaintiff spoke with the undersigned regarding her rights.

### DAMAGES

25.    Defendant's failure to sufficiently take steps to improve Plaintiff's creditworthiness though its debt relief program underscores the generally deceptive manner in which Defendant held out the efficacy of its services to Plaintiff.

26.    Furthermore, it was deceptive for Defendant to represent the effectiveness of its services given that Defendant promised Plaintiff that it would remove erroneous information on her credit reports and improve her credit score.

27.    As such, Defendant misrepresented the nature of its services by not properly engaging with Plaintiff's creditors to negative information that was misleading in her

5

credit report.

28.    Plaintiff suffered severe emotional distress, as well as significant out-of-pocket expenses and persistently depressed credit scores as a result of Defendant's deceptive and misleading conduct.

29.    Plaintiff has suffered concrete harm as a result of Defendant's actions, including but not limited to, emotional distress, aggravation, mental anguish, lost time, out of pocket expenses, pecuniary loss stemming from the payments made to Defendant, denial of the benefit of her bargain, making payments to Defendant after relying on false and deceptive representations, as well as numerous violations of her federally protected interests to be free from deceptive and misleading conduct on the part of purported credit repair organizations.

## COUNT I - VIOLATIONS OF THE CREDIT REPAIR ORGANIZATIONS ACT

30.    Plaintiff repeat and reallege paragraphs 1 through 29 as though fully set forth herein.

31.    Plaintiff is a "consumer" as defined by 15 U.S.C. §1679a(1) of the CROA.

32.    Defendant is a "credit repair organization" as defined by §1679a(3) of the CROA, as it is a person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of improving a consumer's credit, credit history, or credit rating, or providing assistance to any consumer with regard to any activity or service for the purpose of improving a

6

Exhibit "24"

consumer's credit.

### a. Violations of CROA §1679b(a)

33.    The CROA, pursuant to 15 U.S.C. §1679b(a)(3) prohibits any person from "mak[ing] or us[ing] any untrue or misleading representation of the services of the credit repair organization." Additionally, pursuant to 15 U.S.C. §1679b(a)(4), any person is prohibited from "engag[ing], directly or indirectly, in any act, practice, or course of business that constitutes or results in the commission of, or an attempt to commit, a fraud or deception on any person in connection with the offer or sale of the services of the credit repair organization."

34.    Defendant violated the above referenced provisions of the CROA through its misrepresentations and deception as to the nature of the credit repair services it could provide Plaintiff. In order to get Plaintiff to agree to utilize Defendant's services, Defendant touted the efficacy of its credit repair services and that Plaintiff could expect an improved credit score as long as she made payments for its services. Plaintiff made her such payments; however, Defendant failed to improve Plaintiff's credit.

35.    Additionally, upon information and belief, Defendant is misleading its clients to believe that its services will address Plaintiff's legal outstanding debts in a way that will remove Plaintiff's obligation to such debts. This misrepresentation makes Defendant appear to be a debt consolidation organization when its contract does not provide for such service. As a result, Plaintiff enrolled her legal outstanding debts

7

with Defendant, believing that Defendant will help resolve them, instead of focusing on accounts reporting on her credit report that were erroneously reporting due to of her identity theft.

36.    Further, Defendant violated the CROA when it deceptively represented to Plaintiff that its disputes would be responded to by the credit reporting agencies. Inherent with Defendant's representations was the notion that there would be an obligation for an investigation to be triggered by Defendant's submission of a credit dispute on Plaintiff's behalf. However, pursuant to 12 C.F.R. §1022.43(b)(2), the credit reporting agencies are under no obligation to respond to disputes submitted by credit repair organizations like Defendant.

### b. Violation of CROA §1679b(b)

37.    The CROA, pursuant to 15 U.S.C. §1679b(b), states that "[n]o credit repair organization may charge or receive any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform for any consumer before such service is fully performed."

38.    Defendant violated §1679b(b) as it charged and received money from Plaintiff in exchange for the performance of its services before such services were fully performed. Defendant has maintained Plaintiff's payments despite failing to fully perform the services justifying Defendant's retention of such fees.

### c. Violation of CROA §1679c

39.    The CROA provides that a credit repair organization must provide consumers

8

**Exhibit "24"**

with certain written disclosures in the contract underpinning the provision of credit repair services to consumer. Pursuant to 15 U.S.C. § 1679c(b), "the written statement required under this section shall be provided as a document which is separate from any written contract or other agreement between the credit repair organization and the consumer or any other written material provided to the consumer."

40.    Defendant violated 15 U.S.C. §§ 1679c(a)-(b) through its failure to provide the written disclosures required under § 1679c. Defendant never provided such disclosures, nor did it provide a separate document containing such disclosures.

### d. Violation of CROA §§ 1679d(4) and 1679e

41.    The CROA, pursuant to 15 U.S.C. § 1679d(4), requires credit repair organization to include, in the contract between them and a consumer, "a conspicuous statement in bold face type, in immediate proximity to the space reserved for the consumer's signature on the contract, which reads as follows: 'You may cancel this contract without penalty or obligation at any time before midnight of the 3rd business day after the date on which you signed the contract. See the attached notice of cancellation form for an explanation of this right.'" 15 U.S.C. § 1679e further outlines the extent of a consumer's cancellation rights under CROA while requiring such disclosure to be given to consumers in writing.

42.    Defendant violated 15 U.S.C. §§ 1679d(4) & 1679e through its complete failure to provide the above disclosure in immediate proximity to the space reserved for Plaintiff's signature on the contract, as well as its failure to provide the notice of

9

1    cancellation to Plaintiff.

2        **WHEREFORE** Plaintiff, KIMBERLY D. BIRDSONG, respectfully requests
3
4    that this Honorable Court:

5        a.    Declaring that the practices complained of herein are unlawful and
6              violate the aforementioned bodies of law;
7        b.    Awarding Plaintiff actual damages to be determined at trial, as provided
8              under 15 U.S.C. § 1679g(a)(1);
9        c.    Awarding Plaintiff punitive damages, in an amount to be determined at
10             trial, as provided under 15 U.S.C. § 1679g(a)(2)(A);
11       d.    Awarding Plaintiff costs and reasonable attorney fees as provided under
12             15 U.S.C. §1679g(a)(3); and
13       e.    Awarding any other relief as this Honorable Court deems just and
14             appropriate.

15

16   **Plaintiff demands trial by jury.**

17

18   Date: January 30, 2023              Respectfully submitted,

19                                       **KIMBERLY D. BIRDSONG**
20                                       By:*/s/ Alexander J. Taylor*
                                         Alexander J. Taylor, Esq.
21                                       Atlas Consumer Law
22                                       2500 S. Highland Avenue,
                                         Suite 200
23                                       Lombard, Illinois 60148
24                                       Telephone: 331-3077646
                                         Facsimile: 630-575-8188
25                                       Email: ataylor@sulaimanlaw.com

26

27

28
                                         10

**Exhibit "24"**

**Exhibit "25"**

1
2
3
4
5
6
7

**SULAIMANLAW GROUP**
Alexander J. Taylor
2500 South Highland Ave
Suite 200
Lombard, Illinois 60148
Telephone: 331-307-7646
Facsimile: 630-575-8188
Email: ataylor@sulaimanlaw.com
*Attorney for the Plaintiff*

8
9

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SOUTHERN DIVISION**

10
11
12
13
14
15
16
17
18

| | |
|---|---|
| KEVIN M. CARPENTER, <br><br> Plaintiff, <br><br> v. <br><br> THE LITIGATION PRACTICE GROUP PC, <br><br> Defendant. | Case No.  8:23-cv-00263 <br><br> **COMPLAINT FOR DAMAGES** <br><br> 1. **VIOLATION OF THE CREDIT REPAIR ORGANIZATIONS ACT, 15 U.S.C. §1679 *ET SEQ*.** <br><br> JURY TRIAL DEMANDED |

19

**COMPLAINT**

20
21
22
23

   **NOW COMES** KEVIN M. CARPENTER ("Plaintiff"), by and through his undersigned attorney, complaining as to the conduct of THE LITIGATION PRACITCE GROUP PC ("LPG" or "Defendant") as follows:

24
25

**NATURE OF THE ACTION**

26
27
28

1.    Plaintiff brings this action seeking redress for Defendant's violations of the Credit Repair Organizations Act ("CROA") pursuant to 15 U.S.C. §1679 et seq. and

**Exhibit "25"** 1

Massachusetts General Laws (MA. Gen Laws) 15-93 § 68 *et seq.*

### JURISDICTION AND VENUE

2.    Subject matter jurisdiction is conferred upon this Court by the CROA, and 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States.

3.    Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Defendant's principal place of business is located in the Central District of California and all of the events or omissions giving rise to the claims against Defendant occurred in the Central District of California.

### PARTIES

4.    Plaintiff is a consumer, and a natural person over 18-years-of-age who, resides in Fall River, Massachusetts.

5.    Defendant is a credit repair organization and law corporation that offers its customers the ability to eliminate and resolve their debit issues through Defendant's services. Defendant is a professional corporation organized under the laws of the state of California with its principal place of business located at 17542 17th Street, Suite 100, Tustin, California 92780.

6.    Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives and insurers at all times relevant to the instant action.

### FACTS SUPPORTING CAUSE OF ACTION

7.    Prior to events giving rise, Plaintiff had been a victim of identity theft and a

2

**Exhibit "25"**

number of debts which were impacting his credit, prompting him to begin looking for assistance in removing fraudulent information and improving his creditworthiness.

8.     Plaintiff happened upon Defendant due to its representations that it could help consumers improve their creditworthiness and dispute the legal validity of its enrolled debts.

9.     As such, Plaintiff spoke with Defendant who advised him that it would be able to remove erroneous and inaccurate information, as a result of his identify theft, to improve his overall creditworthiness.

10.    Additionally, Defendant promised to identify Plaintiff's enrolled debts and to dispute any erroneous information reporting by his creditors.

11.    In January 2022, Plaintiff entered into an agreement with Defendant for the service of credit repair.

12.    As part of agreement, Plaintiff paid Defendant a recurring monthly fee of $280.43 in exchange for Defendant's services that included removing erroneous or inaccurate information appearing on Plaintiff's credit report by contesting debts.

13.    After months of making payments and informing Defendant of the inaccurate information which he wanted addressed through Defendant's dispute process, none of the inaccurate information had been removed from Plaintiff's credit reports.

14.    Relying upon Defendant's representations regarding the nature and efficacy of its services, Plaintiff continued making recurring monthly payments with the hopes

3

**Exhibit "25"**

of improving his creditworthiness.

15.    Defendant's conduct in representing that it could effectively dispute and remove Plaintiff's information on his credit reports was inherently misleading and deceptive.

16.    Plaintiff continued to work with Defendant on a month-to-month basis into 2023 following their initial agreement. However, Plaintiff grew tiresome of Defendants failure to uphold its promises.

17.    Eventually, after paying nearly $3,000 to Defendant, Plaintiff became extremely frustrated and distressed that he had been making payments yet not seeing any results on the part of Defendant.

18.    Upon information and belief, Defendant retained fees for services prior to such services being fully performed, as Defendant's retention of Plaintiff's monthly payment, at least in part, went towards purported legal proceedings that have not, and may never, come about.

19.    Even further, the contract between Plaintiff and Defendant fails to include the information and disclosures Defendant was required to provide to Plaintiff under federal and state law.

20.    At no point did Defendant provide Plaintiff any of the disclosures required by federal law.

21.    Defendant's failure to provide Plaintiff the relevant information and disclosures inhibited Plaintiff's ability to chart an intelligent course of conduct in

4

**Exhibit "25"**

connection with his dealings with Defendant.

22.     Additionally, upon information and belief, Defendant misled and deceived Plaintiff to believe that its services will address Plaintiff's legal outstanding debts in a way that will remove Plaintiff's obligation to such debts. This misrepresentation makes Defendant appear to be a debt consolidation organization when its contract does not provide for such service. As a result, Plaintiff enrolled his legal outstanding debts with Defendant, believing that Defendant will help resolve them, instead of focusing on accounts reporting on his credit report that were erroneously reporting due to of his identity theft.

23.     Frustrated, distressed, and concerned over Defendant's conduct, Plaintiff spoke with the undersigned regarding his rights.

### DAMAGES

24.     Defendant's failure to sufficiently take steps to improve Plaintiff's creditworthiness though its debt relief program underscores the generally deceptive manner in which Defendant held out the efficacy of its services to Plaintiff.

25.     Furthermore, it was deceptive for Defendant to represent the effectiveness of its services given that Defendant promised Plaintiff that it would remove erroneous information on his credit reports and improve his credit score.

26.     As such, Defendant misrepresented the nature of its services by not properly engaging with Plaintiff's creditors to negative information that was misleading in his credit report.

5

**Exhibit "25"**

27.    Plaintiff suffered severe emotional distress, as well as significant out-of-pocket expenses and persistently depressed credit scores as a result of Defendant's deceptive and misleading conduct.

28.    Plaintiff has suffered concrete harm as a result of Defendant's actions, including but not limited to, emotional distress, aggravation, mental anguish, lost time, out of pocket expenses, pecuniary loss stemming from the payments made to Defendant, denial of the benefit of his bargain, making payments to Defendant after relying on false and deceptive representations, as well as numerous violations of his federally protected interests to be free from deceptive and misleading conduct on the part of purported credit repair organizations.

### COUNT I - VIOLATIONS OF THE CREDIT REPAIR ORGANIZATIONS ACT

29.    Plaintiff repeat and reallege paragraphs 1 through 28 as though fully set forth herein.

30.    Plaintiff is a "consumer" as defined by 15 U.S.C. §1679a(1) of the CROA.

31.    Defendant is a "credit repair organization" as defined by §1679a(3) of the CROA, as it is a person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of improving a consumer's credit, credit history, or credit rating, or providing assistance to any consumer with regard to any activity or service for the purpose of improving a consumer's credit.

6

### a. **Violations of CROA §1679b(a)**

32.    The CROA, pursuant to 15 U.S.C. §1679b(a)(3) prohibits any person from "mak[ing] or us[ing] any untrue or misleading representation of the services of the credit repair organization." Additionally, pursuant to 15 U.S.C. §1679b(a)(4), any person is prohibited from "engag[ing], directly or indirectly, in any act, practice, or course of business that constitutes or results in the commission of, or an attempt to commit, a fraud or deception on any person in connection with the offer or sale of the services of the credit repair organization."

33.    Defendant violated the above referenced provisions of the CROA through its misrepresentations and deception as to the nature of the credit repair services it could provide Plaintiff. In order to get Plaintiff to agree to utilize Defendant's services, Defendant touted the efficacy of its credit repair services and that Plaintiff could expect an improved credit score as long as he made payments for its services. Plaintiff made his such payments; however, Defendant failed to improve Plaintiff's credit.

34.    Additionally, upon information and belief, Defendant is misleading its clients to believe that its services will address Plaintiff's legal outstanding debts in a way that will remove Plaintiff's obligation to such debts. This misrepresentation makes Defendant appear to be a debt consolidation organization when its contract does not provide for such service. As a result, Plaintiff enrolled his legal outstanding debts with Defendant, believing that Defendant will help resolve them, instead of focusing on accounts reporting on his credit report that were erroneously reporting due to of

7

his identity theft.

35.    Further, Defendant violated the CROA when it deceptively represented to Plaintiff that its disputes would be responded to by the credit reporting agencies. Inherent with Defendant's representations was the notion that there would be an obligation for an investigation to be triggered by Defendant's submission of a credit dispute on Plaintiff's behalf. However, pursuant to 12 C.F.R. §1022.43(b)(2), the credit reporting agencies are under no obligation to respond to disputes submitted by credit repair organizations like Defendant.

**b. Violation of CROA §1679b(b)**

36.    The CROA, pursuant to 15 U.S.C. §1679b(b), states that "[n]o credit repair organization may charge or receive any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform for any consumer before such service is fully performed."

37.    Defendant violated §1679b(b) as it charged and received money from Plaintiff in exchange for the performance of its services before such services were fully performed. Defendant has maintained Plaintiff's payments despite failing to fully perform the services justifying Defendant's retention of such fees.

**c. Violation of CROA §1679c**

38.    The CROA provides that a credit repair organization must provide consumers with certain written disclosures in the contract underpinning the provision of credit repair services to consumer. Pursuant to 15 U.S.C. § 1679c(b), "the written statement

8

required under this section shall be provided as a document which is separate from any written contract or other agreement between the credit repair organization and the consumer or any other written material provided to the consumer."

39.    Defendant violated 15 U.S.C. §§ 1679c(a)-(b) through its failure to provide the written disclosures required under § 1679c. Defendant never provided such disclosures, nor did it provide a separate document containing such disclosures.

### d. Violation of CROA §§ 1679d(4) and 1679e

40.    The CROA, pursuant to 15 U.S.C. § 1679d(4), requires credit repair organization to include, in the contract between them and a consumer, "a conspicuous statement in bold face type, in immediate proximity to the space reserved for the consumer's signature on the contract, which reads as follows: 'You may cancel this contract without penalty or obligation at any time before midnight of the 3rd business day after the date on which you signed the contract. See the attached notice of cancellation form for an explanation of this right.'" 15 U.S.C. § 1679e further outlines the extent of a consumer's cancellation rights under CROA while requiring such disclosure to be given to consumers in writing.

41.    Defendant violated 15 U.S.C. §§ 1679d(4) & 1679e through its complete failure to provide the above disclosure in immediate proximity to the space reserved for Plaintiff's signature on the contract, as well as its failure to provide the notice of cancellation to Plaintiff.

**WHEREFORE** Plaintiff, KEVIN M. CARPENTER, respectfully requests

9

**Exhibit "25"**

that this Honorable Court:

    a.    Declaring that the practices complained of herein are unlawful and violate the aforementioned bodies of law;

    b.    Awarding Plaintiff actual damages to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(1);

    c.    Awarding Plaintiff punitive damages, in an amount to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(2)(A);

    d.    Awarding Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. §1679g(a)(3); and

    e.    Awarding any other relief as this Honorable Court deems just and appropriate.

## <u>COUNT II – VIOLATIONS OF THE MA. GEN. LAWS 15-93 § 68</u>

42.    Plaintiff restates and realleges paragraphs 1 through 41 as though fully set forth herein.

43.    Plaintiff is a "buyer" as defined by MA. Gen. Laws 15-93 § 68(A).

44.    Defendant  is a "credit services organization" as defined by MA. Gen. Laws 15-93 § 68(A).

**a. Violations of MA. Gen. Laws 15-93 §  68(B)**

45.    Pursuant to MA. Gen. Laws 15-93 § 68(B)(1) , provides that "[N]o credit services organization shall…charge or receive any money or other valuable consideration prior to full, complete and satisfactory performance of the services the credit services organization has agreed to perform for the buyer."

46.    Defendant violated MA. Gen. Laws 15-93 § 68(B)(1) by accepting Plaintiff's

10

**Exhibit "25"**

monthly payments from Plaintiff and failing to perform its represented services of negotiating with Plaintiff's creditors to settle on a reduced amount. Additionally, Plaintiff believed that his monthly payments will go toward paying off his outstanding debt, however, Defendant collected his monthly payments without paying any of Plaintiff's creditors.

47.    Defendant violated MA. Gen. Laws 15-93 § 68(B)(3) provides that "[N]o credit services organization shall…make, or advise any buyer to make, any statement that is untrue or misleading, or that should be known by the exercise of reasonable care to be untrue or misleading, with respect to a buyer's credit worthiness, credit standing or credit rating to a credit reporting agency or to any person who has extended credit to a buyer or to whom a buyer has made application for an extension of credit."

48.    Defendant violated MA. Gen. Laws 15-93 § 68(B)(3) by advising Plaintiff that its services would improve his creditworthiness through its debt consolidation program. Despite working with Plaintiff for many months, Plaintiff saw no improvement to his credit score.

49.    Defendant violated MA. Gen. Laws 15-93 § 68(B)(4) provides that "[N]o credit services organization shall… make or use any untrue or misleading representations in the offer or sale of the services of a credit services organization or engage, directly or indirectly, in any act, practice or course of business intended to defraud or deceive a buyer in connection with the offer or sale of such services."

11

**Exhibit "25"**

50.     Defendant violated MA. Gen. Laws 15-93 § 68(B)(4) by using misleading statements in its initial meeting to discuss a plan to address Plaintiff's outstanding debt and creditworthiness. Defendant promised Plaintiff that its services would enroll specific debts and negotiate with Plaintiff's creditors to reduce the outstanding amounts. Additionally, Plaintiff agreement to make monthly payments that would be used to pay Plaintiff's creditors in the event of a negotiated settlement. However, Defendant had no intention of performing its duties as agreement upon in its contract as Defendant collected monthly payments from Plaintiff, which were to be used to pay her creditors, without properly engaging any of Plaintiff's creditors.

### b. Violations of MA. Gen. Laws 15-93 § 68(B)

51.     Pursuant to MA. Gen. Laws 15-93 § 68(D)(a) , provides that each contract shall include the following; "a conspicuous statement in a minimum size of ten point bold face type, in immediate proximity to the space reserved for the buyer's signature, which reads: You, the buyer, have the right to cancel this contract or agreement at any time prior to midnight of the third business day following the date thereon.."

52.     Defendant violated MA. Gen. Laws 15-93 § 68(D)(a) by failing to include the required statements in Plaintiff's contract.

**WHEREFORE**, Plaintiff, KEVIN M. CARPENTER, respectfully requests the Court enter judgment in his favor as follows:

a.     Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

12

**Exhibit "25"**

b.    Awarding Plaintiff actual damages pursuant to MA. Gen. Laws 15-93;

c.    Awarding Plaintiff punitive damages pursuant to MA. Gen. Laws 15-93;

d.    Awarding Plaintiff's costs and reasonable attorney fees; and,

e.    Awarding any other relief the Arbitrator deems just and appropriate.

**Plaintiff demands trial by jury.**

Date: February 13, 2023          Respectfully submitted,

**KEVIN M. CARPENTER**
By:*/s/ Alexander J. Taylor*
Alexander J. Taylor, Esq.
Atlas Consumer Law
2500 S. Highland Avenue,
Suite 200
Lombard, Illinois 60148
Telephone: 331-3077646
Facsimile: 630-575-8188
Email: ataylor@sulaimanlaw.com

13

**Exhibit "25"**

# Exhibit "26"

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | |
|---|---|
| KAREN F. SUELL, | CIVIL COMPLAINT |
| Plaintiff, | |
| v. | CASE NO. 6:23-cv-00087 |
| THE LITIGATION PRACTICE GROUP, PC, | JURY TRIAL DEMANDED |
| Defendants. | |

## COMPLAINT

Now comes KAREN F. SUELL ("Plaintiff"), by and through the undersigned, complaining as to the conduct of THE LITIGATION PRACTICE GROUP, PC ("Defendant") as follows:

### NATURE OF THE ACTION

1.  Plaintiff brings this action for damages pursuant to the Credit Repair Organizations Act ("CROA") under 15 U.S.C. § 1679 *et seq.,* the Texas Credit Services Organizations Act ("TCSOA") under Tex. Fin. Code § 393.101 *et seq.,* and the Texas Consumer Debt Management Services Act ("TCDSMA") under Tex. Fin. Code § 394.201 *et seq.,* in connection with Defendant's unlawful conduct.

### JURISDICTION AND VENUE

2.  This action arises under and is brought pursuant to the CROA. Subject matter jurisdiction is conferred upon this Court by 15 U.S.C §1679, as well as 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States. Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. §1367.

1

**Exhibit "26"**

3. Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Defendant conducts business within the Eastern District of Texas and a substantial portion of the events or omissions giving rise to the instant claims occurred within the Eastern District of Texas.

### PARTIES

4. Plaintiff is a "person," as defined by 47 U.S.C. § 153(39), and consumer over 18 years of age, residing in Tyler, Texas, which lies within the Eastern District of Texas.

5. Defendant is a credit repair organization, debt settlement provider, and purported law corporation that offers its customers the ability to eliminate and resolve their debt issues through Defendant's myriad services. Defendant is a professional corporation organized under the laws of the state of California with its principal place of business located at 17542 17th Street, Suite 100, Tustin, California.

6. Defendant is a "person" as defined by 47 U.S.C. §153(39).

7. Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives and insurers at all times relevant to the instant action.

### FACTS SUPPORTING CAUSES OF ACTION

8. In approximately May of 2022, Plaintiff had numerous obligations which she wanted to address and which were on the verge of negatively impacting her credit, and began seeking out the assistance of various debt relief and credit repair companies.

9. Plaintiff subsequently happened upon Defendant and its services.

10. Defendant advised that its services included disputing inaccurate information that was appearing on Plaintiff's credit reports and impacting her credit, and would similarly assist Plaintiff

**Exhibit "26"**

in reaching negotiated settlements with her various creditors in order to resolve the obligations for less than the balance being sought by such creditors.

11.   Defendant represented its services as being for the explicit and implicit purpose of improving her credit score, history, and/or rating, as Defendant represented that the disputed information on her credit report would result in the improvement of Plaintiff's credit since certain negative information would be removed, and by that engaging in negotiations to reduce the balance on certain enrolled debts, Plaintiff would be able to address debts that would otherwise be unresolved and unaffordable, in turn decreasing Plaintiff's overall debt load, which would further improve her credit history.

12.   Upon information and belief, Defendant routinely represents to prospective customers and/or enrolled clients that its services will restore their credit.

13.   Defendant further represented that its services would include setting up a bank account, into which Plaintiff's monthly payments would go and from which Defendant would take funds to perform its services and pay Plaintiff's creditors when settlements were reached.

14.   Plaintiff found Defendant's services desirable as she believed Defendant would be able to get certain information removed from her credit report and would actively resolve her obligations, and so Plaintiff agreed to utilize Defendant's services and entered into a contract for the provision of the same.

15.   After signing up with Defendant, Defendant advised that Plaintiff needed to stop paying her creditors and instead divert those funds to Defendant for her monthly payments.

16.   Plaintiff subsequently began making her monthly payments of approximately $253.06 per month to Defendant, and maintained these payments for approximately 6 months.

3

**Exhibit "26"**

17.  However, despite Plaintiff maintaining these payments for months, and there being more than sufficient funds with which Defendant could begin negotiating Plaintiff's enrolled debts, Defendant failed to deliver the results or provide the services in the manner such services were represented to Plaintiff.

18.  Rather than actually provide the services Defendant represented it would provide, Defendant instead applied Plaintiff's payments towards various upfront flat-fees that were unrelated to any work performed by Defendant.

19.  Defendant explicitly misrepresented the nature of the services it would provide to Plaintiff, as it suggested that Plaintiff's monthly payments would go towards resolving enrolled obligations.

20.  However, Defendant's contract with Plaintiff contradicted these representations, as Defendant disclaims the oral representations made to induce consumer assent to its terms by including a clause that any settlements reached had to be paid separately from the monthly payments being made by Plaintiff which were going entirely to Respondent's services before those services were performed for Plaintiff.

21.  Defendant thus charged Plaintiff for its services before engaging in any performance of its duties under the agreement, let alone completely performing the services justifying its retention of the charged fees.

22.  After months of making payments and seeing no results and realizing the deceptive nature of Defendant's conduct, Plaintiff cancelled her agreement with Defendant.

23.  Due to Defendant's complete failure to perform any of the services it represented it would perform for Plaintiff, Plaintiff requested a refund of her payments made to Defendant.

4

**Exhibit "26"**

24. Defendant advised that it would look into whether a refund could be provided, but subsequently failed to contact Plaintiff or otherwise return the money it accepted in connection with services it never actually performed.

25. Frustrated, distressed, and confused over Defendant's conduct, Plaintiff spoke with the undersigned regarding her rights.

26. Plaintiff has suffered concrete harm as a result of Defendant's actions, including but not limited to, emotional distress, aggravation, mental anguish, pecuniary harm stemming from payments made for deficient credit repair and debt settlement services, out of pocket damages including paying Defendant for services it did not perform, out of pocket damages stemming from Defendant's failure to refund Plaintiff's payments, out of pocket damages stemming from Defendant's charging up front fees instead of using such funds as represented, as well as numerous violations of her state and federally protected interests – interests which were harmed put at a material risk of harm stemming from Defendant's conduct.

## COUNT I – VIOLATIONS OF THE CREDIT REPAIR ORGANIZATIONS ACT

27. Plaintiff repeats and realleges paragraphs 1 through 26 as though fully set forth herein.

28. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1679a(1) of the CROA.

29. Defendant is a "credit repair organization" as defined by §1679a(3) of the CROA, as it is a person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of improving a consumer's credit, credit history, or credit rating, or providing assistance to any consumer with regard to any activity or service for the purpose of improving a consumer's credit.

**Exhibit "26"**

30. Defendant's represented services in disputing and seeking to remove information from Plaintiff's credit report renders it a credit repair organization under the CROA, as does its conduct in purporting to resolve obligations on behalf of consumers for less than the full balance owed.

### a. Violations of CROA §§ 1679b(a)(3)-(4)

31. The CROA, pursuant to 15 U.S.C. § 1679b(a)(3) prohibits any person from "mak[ing] or us[ing] any untrue or misleading representation of the services of the credit repair organization." Additionally, pursuant to 15 U.S.C. § 1679b(a)(4), any person is prohibited from "engag[ing], directly or indirectly, in any act, practice, or course of business that constitutes or results in the commission of, or an attempt to commit, a fraud or deception on any person in connection with the offer or sale of the services of the credit repair organization."

32. Defendant violated the above referenced provisions of the CROA through its misrepresentations and deception as to the nature of the credit repair services it could provide Plaintiff. Defendant represented to Plaintiff that her payments would go towards resolving enrolled obligations; however, she later found out the nature of Defendant's deceptive representations as her monthly payments were going entirely towards Defendant's fees and that Plaintiff would need to make payments beyond her monthly payments to settle any debts. Defendant engaged in these deceptive representations and omission regarding the nature of its services and the charged fees so as to deprive Plaintiff of information that, had it been clarified, would have resulted in Plaintiff refusing to use Defendant's services. Upon information and belief, Defendant engages in this behavior on a persistent and frequent basis in order to dupe vulnerable and desperate consumers into making payments under false and deceptive pretenses.

33. Defendant further violated the above provisions of the CROA through its fraudulent, deceptive, and misleading conduct in contradicting the oral representations it makes to consumers

6

**Exhibit "26"**

through contractual language. Defendant represents its services one way when inducing consumer assent, yet subsequently contradicts those representations through contractual language.

34. Additionally, Defendant violated the above provisions of the CROA through its fraudulent and deceptive representations that Plaintiff's best course of action was to stop paying her creditors and instead divert those funds to Defendant. Defendant's representations may have been palatable had Defendant's services included using those monthly payments to resolve the debts Plaintiff enrolled in the program; however, given Defendant's conduct in retaining Plaintiff's monthly payments entirely for its own fees and unconnected to any services that it represented would be performed, Defendant's advice, coming from a purported law firm, had an extreme detrimental impact on Plaintiff's financial situation. Defendant engages in this conduct so as to ensure that its customers have sufficient funds to pay for Defendant's useless services, regardless of whether the advice provided was accurate or beneficial to Plaintiff and consumers.

35. Defendant further violated the above provisions of the CROA through its deceptive and misleading failure to refund Plaintiff for services it ultimately failed to perform. Defendant's contract outlines a refund policy, and under this policy Defendant should have refunded Plaintiff's monthly payments for services it failed to perform. However, Defendant failed to refund Plaintiff and deceptively refused to respond to Plaintiff's request for a refund.

**b. Violations of CROA § 1679b(b)**

36. The CROA, pursuant to 15 U.S.C. § 1679b(b), provides that "[n]o credit repair organization may charge or receive any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform for any consumer before such service is fully performed."

7

**Exhibit "26"**

37. Defendant violated § 1679b(b) through its charging and receiving of money for services agreed to perform before such services were fully performed. Defendant improperly charged and retained Plaintiff's payment despite not performing, let alone completely performing, the services justifying the retention of such fees and charges.

### c.  Violation of CROA § 1679c

38.  The CROA provides that a credit repair organization must provide consumers with certain written disclosures in the contract underpinning the provision of credit repair services to consumers. Pursuant to 15 U.S.C. § 1679c(b), "the written statement required under this section shall be provided as a document which is separate from any written contract or other agreement between the credit repair organization and the consumer or any other written material provided to the consumer."

39.  Defendant violated 15 U.S.C. §§ 1679c(a)-(b) through its failure to provide the written disclosures required under § 1679c. Defendant never provided such disclosures, nor did it provide a separate document containing such disclosures.

### d.  Violation of CROA §§ 1679d(4) & 1679e

40.  The CROA, pursuant to 15 U.S.C. § 1679d(4), requires credit repair organizations to include, in the contract between them and a consumer, "a conspicuous statement in bold face type, in immediate proximity to the space reserved for the consumer's signature on the contract, which reads as follows: 'You may cancel this contract without penalty or obligation at any time before midnight of the 3rd business day after the date on which you signed the contract. See the attached notice of cancellation form for an explanation of this right.'" 15 U.S.C. § 1679e further outlines the extent of a consumer's cancellation rights under CROA while requiring such disclosure to be given to consumers in writing.

8

**Exhibit "26"**

41. Defendant violated 15 U.S.C. §§ 1679d(4) & 1679e through its complete failure to provide the above disclosure in immediate proximity to the space reserved for Plaintiff's signature on the contract, as well as its failure to provide the notice of cancellation to Plaintiff.

### e. Violation of CROA § 1679f(b)

42. The CROA, pursuant to 15 U.S.C. § 1679f(b) provides that, "[a]ny attempt by any person to obtain a waiver from any consumer of any protection provided by or any right of the consumer under [the CROA] shall be treated as a violation of [the CROA]."

43. Defendant violated 15 U.S.C. § 1679f(b) through its attempt to obtain Plaintiff's waiver of the protections afforded her under the CROA. Defendant's contract contain numerous efforts to obtain a waiver of Plaintiff's vital consumer protection rights protected by the CROA, including but not limited to the protection regarding the time of when Defendant's fees are "earned" and when Defendant may properly collect such fees.

44. The CROA further dictates that any contract found not to be in compliance with the CROA "shall be treated as void" and "may not be enforced by any Federal or State court or any other person." 15 U.S.C. § 1679f(c).

WHEREFORE, Plaintiff, KAREN F. SUELL, respectfully requests that the Honorable Court enter judgment in her favor as follows:

    a. Declaring that the practices complained of herein are unlawful and violate the aforementioned bodies of law;

    b. Awarding Plaintiff actual damages to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(1);

    c. Awarding Plaintiff punitive damages, in an amount to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(2)(A);

    d. Awarding Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. § 1679g(a)(3); and

**Exhibit "26"**

e.  Awarding any other relief as the Arbitrator deems just and appropriate.

<u>COUNT II – VIOLATIONS OF THE TEXAS CREDIT SERVICES ORGANIZATION ACT</u>

45. Plaintiff restates and realleges paragraphs 1 through 44 as though fully set forth herein.

46. Plaintiff is a "consumer" as defined by Tex. Fin. Code § 393.001(1).

47. Defendant is a "credit services organization" as defined by Tex. Fin. Code § 393.001(3).

**a.  Violations of Tex. Fin. Code §§ 393.20 & 393.202**

48. The TCSOA, pursuant to Tex. Fin. Code § 393.201, outlines certain requirements of the contracts entered into between consumers and credit services organizations. § 393.202 discusses the nature of a consumer's right to cancel contracts and how such right must be disclosed to consumers.

49. Defendant violated §§ 393.201(b)(1)-(4) & 393.202 through their failure to provide the information required under Texas law in the contract with Plaintiff. Defendant's contract plainly fails to contain the requisite information.

**b.  Violations of Tex. Fin. Code § 393.302**

50. The TCSOA, pursuant to Tex. Fin. Code § 393.302, prohibits credit service organizations from receiving money for their services before such services are fully performed.

51. Defendant violated § 393.302 in much the same way it violated § 1679b(b) of the CROA.

**c.  Violations of Tex. Fin. Code §§ 393.304(1) & 393.305**

52. The TCSOA, pursuant to Tex. Fin. Code § 393.304(1), prohibits a credit services organization from "mak[ing] or us[ing] a false or misleading representation in the offer or sale of the services of the organization." Similarly, pursuant to Tex. Fin. Code § 393.305, "[a] credit services organization or a representative of the organization may not directly or indirectly engage

10

**Exhibit "26"**

in a fraudulent or deceptive act, practice, or course of business relating to the offer or sale of the services of the organization."

53. Defendant violated §§ 393.304(1) & 393.305 in much the same way it violated §§ 1679b(a)(3)-(4) of the CROA.

WHEREFORE, Plaintiff, KAREN F. SUELL, respectfully requests that the Honorable Court enter judgment in her favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. Awarding Plaintiff actual damages pursuant to Tex. Fin. Code § 393.503(a)(1);

c. Awarding Plaintiff punitive damages pursuant to Tex. Fin. Code § 393.503(b);

d. Enjoin Defendant from further violations of law pursuant to Tex. Fin. Code § 393.502,

e. Awarding Plaintiff's costs and reasonable attorney fees, pursuant to Tex. Fin. Code §§ 393.503(a)(2)-(3); and,

f. Awarding any other relief the Honorable Court deems just and appropriate.

### COUNT III – VIOLATIONS OF THE TEXAS CONSUMER DEBT MANAGEMENT SERVICES ACT

54. Plaintiff restates and realleges paragraphs 1 through 53 as though fully set forth herein.

55. Plaintiff is a "consumer" as defined by Tex. Fin. Code § 394.202(4).

56. Defendant is a "provider" of "debt management service" as defined by Tex. Fin. Code §§ 394.202(6) & (10).

**a. Violations of Tex. Fin. Code § 394.207**

57. The TCDMSA, pursuant to Tex. Fin. Code § 394.207, provides that "[a] provider may not engage in false or deceptive advertising,"

58. Defendant violated § 394.207 in much the same way its deceptive representations regarding the nature of, and fees surrounding, its services violated § 1679b(a)(3)-(4) of the CROA.

11

**Exhibit "26"**

**b.  Violations of Tex. Fin. Code § 394.209**

59. The TCDMSA, pursuant to Tex. Fin. Code § 394.209, outlines the various requirements of the contracts entered into between debt management providers and consumers.

60. Defendant violated § 394.209(b) through its failure to include the required statements, disclosures, and information in its contract with Plaintiff.

**c.  Violations of Tex. Fin. Code § 394.210**

61. The TCDMSA, pursuant to Tex. Fin. Code § 394.210(c), provides that "[a] provider may not impose fees or other charges upon a consumer or receive payment for debt management services until the consumer has entered into a debt management service agreement with the provider that complies with Section 394.209."

62. Defendant violated § 394.210(c) through its charging of Plaintiff for its debt management services without entering into a contract which complies with Texas law.

**d.  Violations of Tex. Fin. Code § 394.212**

63. The TCDMSA, pursuant to Tex. Fin. Code § 394.212, outlines a number of prohibited practices on the part of providers.

64. Pursuant to § 394.212(a)(9), a provider may not "engage in an unfair, deceptive, or unconscionable act or practice in connection with a service provided to a consumer."

65. Defendant violated § 394.212(a)(9) in much the same way it violated §§ 1679b(a)(3)-(4) of the CROA.

**e.  Violations of Tex. Fin. Code § 394.213**

66. Pursuant to § 394.213, "a provider has a duty to a consumer who receives debt management services from the provider to ensure that client money held by the provider is managed properly at all times."

**Exhibit "26"**

67. Defendant violated § 394.213 through its failure to ensure that Plaintiff's money was managed properly. As discussed above, Defendant failed to meaningfully perform the services it represented, and similarly allowed Plaintiff's funds to be mismanaged and applied to unnecessary legal fees which were never actually performed.

WHEREFORE, Plaintiff, KAREN F. SUELL, respectfully requests that the Honorable Court enter judgment in her favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. Awarding Plaintiff actual damages pursuant to Tex. Fin. Code § 394.215(c);

c. Awarding Plaintiff punitive damages pursuant to Tex. Fin. Code § 394.215(c);

d. Enjoin Defendant from further violations of law pursuant to Tex. Fin. Code § 394.215(d);

e. Awarding Plaintiff's costs and reasonable attorney fees, pursuant to Tex. Fin. Code § 394.215(c); and,

f. Awarding any other relief the Honorable Court deems just and appropriate.

Dated: February 15, 2023                          Respectfully submitted,

s/ Nathan C. Volheim (Lead Attorney)              s/Eric D. Coleman
Nathan C. Volheim, Esq. #6302103                  Eric D. Coleman, Esq. #6326734
Counsel for Plaintiff                             Counsel for Plaintiff
Admitted in the Eastern District of Texas         Admitted in the Eastern District of Texas
Sulaiman Law Group, Ltd.                          Sulaiman Law Group, Ltd.
2500 South Highland Ave., Suite 200               2500 South Highland Ave., Suite 200
Lombard, Illinois 60148                           Lombard, Illinois 60148
(630) 568-3056 (phone)                            (331) 307-7648 (phone)
(630) 575-8188 (fax)                              (630) 575-8188 (fax)
nvolheim@sulaimanlaw.com                          ecoleman@sulaimanlaw.com

13

**Exhibit "26"**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

KAREN F. SUELL

**(b)** County of Residence of First Listed Plaintiff    Smith County
        *(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Sulaiman Law Group, Ltd.
2500 South Highland Avenue, Suite 200, Lombard, IL 60148
(630) 575-8181

## DEFENDANTS

THE LITIGATION PRACTICE GROUP, PC

County of Residence of First Listed Defendant
        *(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
        THE TRACT OF LAND INVOLVED

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1   U.S. Government     ☒ 3   Federal Question
      Plaintiff              *(U.S. Government Not a Party)*

☐ 2   U.S. Government     ☐ 4   Diversity
      Defendant              *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY**    **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane    ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product      Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument |      Liability    ☐ 367 Health Care/ | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel &      Pharmaceutical | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
|      & Enforcement of Judgment |      Slander      Personal Injury | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers'      Product Liability | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted |      Liability    ☐ 368 Asbestos Personal | |      New Drug Application | ☐ 470 Racketeer Influenced and |
|      Student Loans | ☐ 340 Marine      Injury Product | | ☐ 840 Trademark |      Corrupt Organizations |
|      (Excludes Veterans) | ☐ 345 Marine Product      Liability | **LABOR** | **SOCIAL SECURITY** | ☒ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment |      Liability    **PERSONAL PROPERTY** | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
|      of Veteran's Benefits | ☐ 350 Motor Vehicle    ☐ 370 Other Fraud |      Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle    ☐ 371 Truth in Lending | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) |      Exchange |
| ☐ 190 Other Contract |      Product Liability    ☐ 380 Other Personal |      Relations | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal      Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 196 Franchise |      Injury    ☐ 385 Property Damage | ☐ 751 Family and Medical | | ☐ 893 Environmental Matters |
| | ☐ 362 Personal Injury -      Product Liability |      Leave Act | | ☐ 895 Freedom of Information |
| |      Medical Malpractice | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** |      Act |
| **REAL PROPERTY** | **CIVIL RIGHTS**    **PRISONER PETITIONS** | ☐ 791 Employee Retirement | ☐ 870 Taxes (U S Plaintiff | ☐ 896 Arbitration |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights    **Habeas Corpus:** |      Income Security Act |      or Defendant) | ☐ 899 Administrative Procedure |
| ☐ 220 Foreclosure | ☐ 441 Voting    ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party |      Act/Review or Appeal of |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment    ☐ 510 Motions to Vacate | |      26 USC 7609 |      Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/      Sentence | | | ☐ 950 Constitutionality of |
| ☐ 245 Tort Product Liability |      Accommodations    ☐ 530 General | | |      State Statutes |
| ☐ 290 All Other Real Property | ☐ 445 Amer w/Disabilities -    ☐ 535 Death Penalty | **IMMIGRATION** | | |
| |      Employment    **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer w/Disabilities -    ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | |
| |      Other    ☐ 550 Civil Rights |      Actions | | |
| | ☐ 448 Education    ☐ 555 Prison Condition | | | |
| |    ☐ 560 Civil Detainee - | | | |
| |      Conditions of | | | |
| |      Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1   Original     ☐ 2   Removed from     ☐ 3   Remanded from     ☐ 4   Reinstated or     ☐ 5   Transferred from     ☐ 6   Multidistrict     ☐ 8   Multidistrict
      Proceeding        State Court        Appellate Court        Reopened        Another District        Litigation -        Litigation -
                                                           *(specify)*        Transfer        Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):*
Credit Repair Organizations Act ("CROA") under 15 U.S.C. § 1679 et seq.

Brief description of cause:
Unlawful Debt Collection Practices

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION     DEMAND $          CHECK YES only if demanded in complaint:
    UNDER RULE 23, F.R.Cv.P.                                   JURY DEMAND:    ☒ Yes    ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*     JUDGE                             DOCKET NUMBER

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| 02/15/2023 | s/ Nathan C. Volheim |

**FOR OFFICE USE ONLY**

RECEIPT #       AMOUNT             APPLYING IFP **Exhibit "26"**       JUDGE           MAG JUDGE

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)    Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)    County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)    Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.    Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.    Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.    Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.    Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.    Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

**VII.    Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.    Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

**Exhibit "26"**

# Exhibit "27"

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN
## MADISON DIVISION

PATRICK H. HEIER,

    Plaintiff,

v.

THE LITIGATION PRACTICE GROUP,
PC,

    Defendants.

CIVIL COMPLAINT

CASE NO. 3:21-cv-00617

JURY TRIAL DEMANDED

## COMPLAINT

Now comes PATRICK H. HEIER ("Plaintiff"), by and through the undersigned, complaining as to the conduct of THE LITIGATION PRACTICE GROUP, PC ("Defendant") as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action for damages pursuant to the Credit Repair Organizations Act ("CROA") under 15 U.S.C. § 1679 *et seq.,* as well as the Wisconsin Credit Services Organization Act ("WCSOA") under Wis. Stat. § 422.501 *et seq.,* for Defendant's unlawful conduct.

### JURISDICTION AND VENUE

2. This action arises under and is brought pursuant to the CROA. Subject matter jurisdiction is conferred upon this Court by 15 U.S.C §1679, as well as 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States. Supplemental jurisdiction exists for the state law claim pursuant to 28 U.S.C. §1367.

3. Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Defendant conducts business within the Western District of Wisconsin and a substantial portion of the events or omissions giving rise to the instant claims occurred within the Western District of Wisconsin.

1

**Exhibit "27"**

## PARTIES

4.   Plaintiff is a 62 year old natural "person," as defined by 47 U.S.C. § 153(39), residing in Centuria, Wisconsin, which lies within the Western District of Wisconsin.

5.   Defendant is a credit repair organization and law corporation that offers its customers the ability to eliminate and resolve their debt issues through Defendant's services. Defendant is a professional corporation organized under the laws of the state of California with its principal place of business located at 17542 17th Street, Suite 100, Tustin, California.

6.   Defendant is a "person" as defined by 47 U.S.C. §153(39).

7.   Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives and insurers at all times relevant to the instant action.

## FACTS SUPPORTING CAUSES OF ACTION

8.   In approximately August 2021, Plaintiff had numerous debts which he wanted to address, and so began seeking out the assistance of various debt relief companies.

9.   Upon searching the internet, Plaintiff came upon Defendant.

10.   Plaintiff was eventually contacted by Defendant, at which point Defendant explained the nature of its services and that it could help Plaintiff eliminate and resolve his debt issues.

11.   It was represented to Plaintiff that Defendant would be able to pay off his debts within 18 months if Plaintiff made payments of approximately $250 per month to Defendant.

12.   Plaintiff was led to believe his payments would both cover Defendant's fees as well as go towards settling his enrolled debts.

13.   Plaintiff subsequently agreed to enroll a number of debts in Defendant's program, and entered into a contract with Defendant on or about August 16, 2021 ("Contract").

**Exhibit "27"**

14.  After making his first payment, Plaintiff asked Defendant which of the enrolled debts his payment would go towards settling.

15.  Defendant then informed Plaintiff that his payment was solely for Defendant's fees, and that any additional funds needed to settle any enrolled debts would cost extra.

16.  Plaintiff became distressed and concerned by Defendant's conduct, as he was initially led to believe his monthly payments would go towards settling his debts, yet now found out that was not the case.

17.  Defendant further informed Plaintiff to stop paying off his debts so that he could use such funds to pay for Defendant's services.

18.  As such, Plaintiff's decision to enroll in Defendant's services was premised upon the notion that his $250 monthly payments would go towards settling his debts, as he otherwise lacked additional funds from which he would be able to settle any of the enrolled debts.

19.  Defendant further represented to Plaintiff that, by enrolling in its services, it would contact Plaintiff's creditors and get their phone calls to stop; however, Plaintiff has continued to get contacted by various creditors despite Defendant's representation as to the scope of its services.

20.  Furthermore, Defendant has attempted to encourage Plaintiff to engage in deceptive and misleading conduct when dealing with his creditors.

21.  For example, Defendant instructed Plaintiff to, if he continued to receive phone calls from creditors, to inform such creditors he was considering filing for bankruptcy, despite that not being an accurate reflection of Plaintiff's situation.

22.  Additionally, upon information and belief, the fees incurred by Defendant improperly charged Plaintiff before Defendant's services were fully performed.

3

**Exhibit "27"**

23. A portion of Defendant's services included providing Plaintiff with legal representation in the event he got sued by any of the creditors associated with the enrolled debts.

24. Upon information and belief, Defendant retained fees for services prior to such services being fully performed, as Defendant's retention of Plaintiff's monthly payment, at least in part, went towards purported legal proceedings that have not, and may never, come about.

25. Even further, the contract between Plaintiff and Defendant fails to include the information and disclosures Defendant was required to provide to Plaintiff under federal and state law.

26. At no point did Defendant provide Plaintiff any of the disclosures required by federal and state law.

27. Defendant's failure to provide Plaintiff the relevant information and disclosures inhibited Plaintiff's ability to chart an intelligent course of conduct in connection with his dealings with Defendant.

28. Upon further information and belief, Defendant is not licensed to practice as a credit repair organization in the state of Wisconsin.

29. Frustrated, distressed, and confused over Defendant's conduct, Plaintiff spoke with the undersigned regarding his rights.

30. Plaintiff has suffered concrete harm as a result of Defendant's actions, including but not limited to, emotional distress, aggravation, mental anguish, pecuniary harm stemming from his reliance on Defendant's conduct, deprivation of his substantive right to receive information regarding Defendant's services, as well as violations of his state and federally protected interests – interests which were harmed put at a material risk of harm stemming from Defendant's conduct.

## COUNT I – VIOLATIONS OF THE CREDIT REPAIR ORGANIZATIONS ACT

31. Plaintiff repeats and realleges paragraphs 1 through 30 as though fully set forth herein.

4

**Exhibit "27"**

32. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1679a(1) of the CROA.

33. Defendant is a "credit repair organization" as defined by §1679a(3) of the CROA, as it is a person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of improving a consumer's credit, credit history, or credit rating, or providing assistance to any consumer with regard to any activity or service for the purpose of improving a consumer's credit.

### a. Violations of CROA § 1679b(a)(1)

34. The CROA, pursuant to 15 U.S.C. § 1679b(a)(1)(B)(i), states that no person may "make any statement, or counsel or advise any consumer to make any statement, which is untrue or misleading . . . with respect to any consumer's credit worthiness, credit standing, or credit capacity to – any person – who has extended credit to the consumer."

35. Defendant violated § 1679b(a)(1)(B)(i) through its advisement that Plaintiff make misleading statements to his creditors. Defendant instructed Plaintiff to inform his creditors that he was considering filing bankruptcy via Defendant, which was misleading and not a true reflection of Plaintiff's considerations.

### b. Violations of CROA §§ 1679b(a)(3)-(4)

36. The CROA, pursuant to 15 U.S.C. § 1679b(a)(3) prohibits any person from "mak[ing] or us[ing] any untrue or misleading representation of the services of the credit repair organization." Additionally, pursuant to 15 U.S.C. § 1679b(a)(4), any person is prohibited from "engag[ing], directly or indirectly, in any act, practice, or course of business that constitutes or results in the commission of, or an attempt to commit, a fraud or deception on any person in connection with the offer or sale of the services of the credit repair organization."

**Exhibit "27"**

37. Defendant violated the above referenced provisions of the CROA through its misrepresentations and deception as to the nature of the credit repair services it provided Plaintiff. Defendant represented to Plaintiff that his $250 payment would go towards resolving and eliminating his debt; however, he was later informed, after making his first payment, that his payments went solely towards Defendant's fees and that he would have to pay extra in order to truly resolve his debts. Plaintiff's decision to enroll in Defendant's services was carefully crafted upon considering his financial means, and upon realizing that extent to which he was deceived, Plaintiff suffered emotional distress as he lacked the financial means to both pay Defendant as well as the creditors he sought to avoid by enrolling in Defendant's services.

38. Defendant further deceptively represented the nature of its services when it suggested that it would get Plaintiff's creditors to stop contacting him. Despite this representation Plaintiff has continued to get called by his creditors.

### c. Violations of CROA § 1679b(b)

39. The CROA, pursuant to 15 U.S.C. § 1679b(b), provides that "[n]o credit repair organization may charge or receive any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform for any consumer before such service is fully performed."

40. Defendant violated § 1679b(b) through its charging and receiving of money for services agreed to perform before such services are fully performed. Included within Defendant's services was legal representation in the event Plaintiff got sued, and Plaintiff's payments went towards these fees. Despite Defendant promising to perform such services, it nevertheless charged and accepted payment before such services were fully performed.

### d. Violation of CROA § 1679c

6

**Exhibit "27"**

41. The CROA provides that a credit repair organization must provide consumers with certain written disclosures in the contract underpinning the provision of credit repair services to consumer. Pursuant to 15 U.S.C. § 1679c(b), "the written statement required under this section shall be provided as a document which is separate from any written contract or other agreement between the credit repair organization and the consumer or any other written material provided to the consumer."

42. Defendant violated 15 U.S.C. §§ 1679c(a)-(b) through its failure to provide the written disclosures required under § 1679c. Defendant never provided such disclosures, nor did it provide a separate document containing such disclosures.

   **e. Violation of CROA §§ 1679d(4) & 1679e**

43. The CROA, pursuant to 15 U.S.C. § 1679d(4), requires credit repair organization to include, in the contract between them and a consumer, "a conspicuous statement in bold face type, in immediate proximity to the space reserved for the consumer's signature on the contract, which reads as follows: 'You may cancel this contract without penalty or obligation at any time before midnight of the 3rd business day after the date on which you signed the contract. See the attached notice of cancellation form for an explanation of this right.'" 15 U.S.C. § 1679e further outlines the extent of a consumer's cancellation rights under CROA while requiring such disclosure to be given to consumers in writing.

44. Defendant violated 15 U.S.C. §§ 1679d(4) & 1679e through its complete failure to provide the above disclosure in immediate proximity to the space reserved for Plaintiff's signature on the contract, as well as its failure to provide the notice of cancellation to Plaintiff.

   WHEREFORE, Plaintiff, PATRICK H. HEIER, respectfully requests that this Honorable Court enter judgment in his favor as follows:

**Exhibit "27"**

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned bodies of law;

b. Awarding Plaintiff actual damages to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(1);

c. Awarding Plaintiff punitive damages, in an amount to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(2)(A);

d. Awarding Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. § 1679g(a)(3); and

e. Awarding any other relief as this Honorable Court deems just and appropriate.

### COUNT II – VIOLATIONS OF THE WISCONSIN CREDIT SERVICES ORGANIZATION ACT

45. Plaintiff restates and realleges paragraphs 1 through 44 as though fully set forth herein.

46. Plaintiff is a "buyer" as defined by Wis. Stat. § 422.501(1).

47. Defendant is a "credit services organization" as defined by Wis. Stat. § 422.501.

### a. Violation of WCSOA § 422.502

48. The WCSOA, pursuant to Wis. Stat. § 332.53(1), provides that "[a] person may not act as a credit services organization unless the person has been issued a certificate of registration from the administrator and the person has complied with the bond or letter of credit requirement under sub. (3)."

49. Defendant violated § 332.53(1) by operating as a credit services organization in Wisconsin without the proper licensure.

### b. Violation of WCSOA § 422.503

50. The WCSOA, under Wis. Stat. § 422.503, outlines a variety of conduct in which credit services organizations are prohibited from engaging.

51. Pursuant to § 422.503(1)(b), a credit services organization cannot "make, or counsel or advise any buyer to make, any statement which is untrue or misleading and which is known, or

8

**Exhibit "27"**

which by the exercise of reasonable care should be known, to be untrue or misleading, to a consumer reporting agency or to any person who has extended credit to a buyer . . . with respect to a buyer's credit worthiness, credit standing or credit capacity."

52. Defendant violated § 422.503(1)(b) when it counseled Plaintiff to make misleading statements to his creditors.

53. Pursuant to § 422.503(1)(c), a credit services organization cannot "make or use any untrue or misleading representations in the offer or sale of the services of the credit services organization or engage, directly or indirectly, in any act, practice, or course of business that operates or would operate as a fraud or deception upon any person in connection with the offer or sale of the services of a credit services organization.

54. Defendant violated § 422.503(1)(c) in much the same way it violated 15 U.S.C. §§ 1679b(a)(3)-(4).

### c.  Violation of WCSOA § 422.504

55.  The WCSOA, pursuant to Wis. Stat. § 422.504, outlines an information statement that must be provided by credit service organizations to buyers before buyers enter into any contracts.

56. Defendant violated § 422.504 by failing to provide the required information statement to Plaintiff prior to entering into the contract with Plaintiff. prohibits a credit services organization from "mak[ing] or us[ing] any untrue or misleading representations in the offer or sale of the services of a credit repair organization or engage, directly or indirectly, in any act, practice, or course of business that operates or would operate as fraud or deception upon any person in connection with the offer or sale of the services of a credit services organization."

### d.  Violation of WCSOA § 422.505

**Exhibit "27"**

57. The WCSOA, pursuant to Wis. Stat. § 422.505, has similar contractual disclosure requirements as the CROA.

58. Defendant violated § 422.505 by once again failing to adequately notify Plaintiff of his right to cancel and similar failure to provide the cancellation notice in writing to Plaintiff.

59. Defendant violated the above portion of the MCSOA through its misrepresentations made to Plaintiff about the nature and contours of the services it was providing Plaintiff.

WHEREFORE, Plaintiff, PATRICK H. HEIER, respectfully requests that this Honorable Court enter judgment in his favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. Awarding Plaintiff actual damages pursuant to Wis. Stat. § 425.305;

c. Awarding Plaintiff's costs and reasonable attorney fees; and,

d. Awarding any other relief as this Honorable Court deems just and appropriate.

Dated: September 29, 2021                    Respectfully submitted,


s/ Nathan C. Volheim                         s/Eric D. Coleman
Nathan C. Volheim, Esq. #6302103             Eric D. Coleman, Esq. #6326734
Counsel for Plaintiff                        Counsel for Plaintiff
Admitted in the W.D. Wisconsin               Admitted in the W.D. Wisconsin
Sulaiman Law Group, Ltd.                     Sulaiman Law Group, Ltd.
2500 South Highland Ave, Suite 200           2500 South Highland Ave, Suite
Lombard, Illinois 60148                      Lombard, Illinois 60148
(630) 568-3056 (phone)                       (331) 307-7648 (phone)
(630) 575-8188 (fax)                         (630) 575-8188 (fax)
nvolheim@sulaimanlaw.com                     ecoleman@sulaimanlaw.com

**Exhibit "27"**

JS 44 (Rev 06/17)

Case 8:23-0k-10571-SC-0 Doc 232-2 unFiled 07/13/23 Entered 07/13/23 09:14:48 Desc
Exhibit Exhibits 13 - 21 Page 347 of 350
CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| PATRICK H. HEIER | THE LITIGATION PRACTICE GROUP, PC, |

| (b) County of Residence of First Listed Plaintiff Polk County | County of Residence of First Listed Defendant |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)*<br>NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED |

| (c) Attorneys *(Firm Name, Address, and Telephone Number)* | Attorneys *(If Known)* |
|---|---|
| Sulaiman Law Group, Ltd.<br>2500 S. Highland Avenue, Suite 200, Lombard, IL 60148 | |

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

- ☐ 1 U S Government Plaintiff
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U S Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)* — Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Personal Injury - Medical Malpractice | **PERSONAL INJURY**<br>☐ 365 Personal Injury - Product Liability<br>☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 835 Patent - Abbreviated New Drug Application<br>☐ 840 Trademark<br>**SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)) | ☐ 375 False Claims Act<br>☐ 376 Qui Tam (31 USC 3729(a))<br>☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☒ 480 Consumer Credit<br>☐ 490 Cable/Sat TV<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts<br>☐ 893 Environmental Matters<br>☐ 895 Freedom of Information Act |
| **REAL PROPERTY**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | **CIVIL RIGHTS**<br>☐ 440 Other Civil Rights<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/ Accommodations<br>☐ 445 Amer w/Disabilities - Employment<br>☐ 446 Amer w/Disabilities - Other<br>☐ 448 Education | **PRISONER PETITIONS**<br>**Habeas Corpus:**<br>☐ 463 Alien Detainee<br>☐ 510 Motions to Vacate Sentence<br>☐ 530 General<br>☐ 535 Death Penalty<br>**Other:**<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br>☐ 560 Civil Detainee - Conditions of Confinement | **LABOR**<br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Management Relations<br>☐ 740 Railway Labor Act<br>☐ 751 Family and Medical Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Employee Retirement Income Security Act<br>**IMMIGRATION**<br>☐ 462 Naturalization Application<br>☐ 465 Other Immigration Actions | **FEDERAL TAX SUITS**<br>☐ 870 Taxes (U S Plaintiff or Defendant)<br>☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration<br>☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision<br>☐ 950 Constitutionality of State Statutes |

**V. ORIGIN** *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

| VI. CAUSE OF ACTION | Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):*<br>Credit Repair Organizations Act ("CROA") under 15 U.S.C. § 1679 et seq.,<br>Brief description of cause:<br>Unlawful Debt Collection Practices |
|---|---|

| VII. REQUESTED IN COMPLAINT: | ☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P. | DEMAND $ | CHECK YES only if demanded in complaint:<br>JURY DEMAND: ☒ Yes ☐ No |
|---|---|---|---|

| VIII. RELATED CASE(S) IF ANY | *(See instructions):* | JUDGE | DOCKET NUMBER |
|---|---|---|---|

| DATE<br>09/29/2021 | SIGNATURE OF ATTORNEY OF RECORD<br>s:/ Nathan C. Volheim |
|---|---|

**FOR OFFICE USE ONLY**

| RECEIPT # | AMOUNT | APPLYING IFP | JUDGE | MAG JUDGE |
|---|---|---|---|---|

Exhibit "27"

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)** **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)** **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdiction be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.** **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

**Exhibit "27"**

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Western District of Wisconsin

|  |  |  |
|---|---|---|
| PATRICK H. HEIER | ) ) ) ) | |
| _Plaintiff(s)_ | ) | |
| v. | ) ) | Civil Action No. 3:21-cv-00617 |
| THE LITIGATION PRACTICE GROUP, PC | ) ) ) ) | |
| _Defendant(s)_ | ) | |

## SUMMONS IN A CIVIL ACTION

To: _(Defendant's name and address)_  THE LITIGATION PRACTICE GROUP, PC
c/o REGISTERED AGENT
DANIEL S MARCH
17542 17TH STREET, SUITE 100
TUSTIN CA 92780

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:     Nathan C. Volheim
Sulaiman Law Group, Ltd.
2500 S. Highland Avenue, Suite 200
Lombard, IL 60148
(630) 575-8181

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

_CLERK OF COURT_

Date: _____     _____

_Signature of Clerk or Deputy Clerk_

**Exhibit "27"**

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.  3:21-cv-00617

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❒ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❒ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❒ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❒ I returned the summons unexecuted because _____ ; or

❒ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:


**Exhibit "27"**