1 | SIMON ARON (State Bar No. 108183)
saron@wrslawyers.com
2 | JOHNNY WHITE (State Bar No. 269306)
jwhite@wrslawyers.com
3 | WOLF, RIFKIN, SHAPIRO, SCHULMAN & RABKIN, LLP
11400 West Olympic Boulevard, 9th Floor
4 | Los Angeles, California 90064-1582
Telephone:    (310) 478-4100
5 | Facsimile:    (310) 479-1422

6 | Attorneys for DEBT RELIEF GROUP, LLC

7 |

8 | UNITED STATES BANKRUPTCY COURT

9 | CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA DIVISION

10 |

11 | In re | Case No. 8:23-bk-10571-SC

12 | THE LITIGATION PRACTICE GROUP, P.C., | Chapter 11

13 | Debtor. | **DEBT RELIEF GROUP, LLC'S OPPOSITION TO CHAPTER 11 TRUSTEE'S MOTION FOR ORDER APPROVING STIPULATION RE AVOIDANCE AND RECOVERY OF AVOIDABLE TRANSFERS TO DEFENDANT PHOENIX LAW, PC AND TURNOVER OF ALL RELATED PROPERTY TO THE TRUSTEE AND ORDER OF DISMISSAL WITHOUT PREJUDICE OF DEFENDANTS WILLIAM TAYLOR CARSS AND MARIA EEYA TAN; DECLARATION OF JASON REVZIN**

**[REDACTED VERSION]**

**Hon. Scott C. Clarkson**

Date:    July 11, 2023
Time:    2:00 p.m.
Crtrm.:    5C
411 West Fourth Street
Santa Ana, California 92701

5523961.1

OPPOSITION TO CHAPTER 11 TRUSTEE'S MOTION FOR ORDER APPROVING STIPULATION RE
AVOIDANCE AND RECOVERY OF AVOIDABLE TRANSFERS AND RELATED PROPERTY

1    Debt Relief Group, LLC hereby files the within opposition to the Chapter 11

2  trustee's *Motion For Order Approving Stipulation Re Avoidance and Recovery of*

3  *Avoidable Transfers To Defendant Phoenix Law, PC and Turnover of All Related Property*

4  *To the Trustee and Order of Dismissal Without Prejudice of Defendants William Taylor*

5  *Carss and Maria Eeya Tan* [Docket #176].  **Counsel for Debt Relief Group, LLC is**

6  **unable to attend this hearing in person and requests dispensation from the Court to**

7  **make a remote appearance.**

8  I.    <u>**INTRODUCTION**</u>

9    Debt Relief Group, LLC ("<u>DRG</u>") is a non-debtor that, on March 23, 2023, entered

10  into a post-petition contract with another non-debtor, Phoenix Law, P.C. ("<u>Phoenix</u>"), to

11  market Phoenix's services to prospective customers.  *See* Revzin Decl., Ex. 1.  Under the

12  contract, signed by Mr. William "Ty" Carss on Phoenix's behalf, DRG is entitled to a

13  commission of 7.5% of the debt enrolled with Phoenix as a result of DRG's marketing

14  efforts, which becomes due and payable in the week after the customer's first payment to

15  Phoenix clears.  *See* Ex. 1, § 4.  The commissions so earned are to compensate DRG for

16  the substantial time and expense of advertising Phoenix's services to the prospective

17  customers.  Post-petition, DRG's marketing efforts have led to the successful enrollment of

18  more than 193 customers with Phoenix, for which DRG is contractually entitled to

19  commissions totaling approximately $240,738.81 (for the aforementioned 193 customers)

20  that have to date not been paid.  *See* Revzin Decl., ¶ 4.

21    These 193 customers appear on the spreadsheet attached as Exhibit A to Mr. Carss's

22  July 7, 2023 declaration in support of the Chapter 11 trustee's pending motion for sale of

23  the debtor's business.  *See* Docket #191-2.  In that declaration, Mr. Carss testifies that

24  these clients number among the "21,457 active client files fraudulently transferred to

25  Phoenix from the Litigation Practice Group." (*Id*., ¶ 3.)  This conclusory statement, which

26  both the sale motion and this motion completely fail to substantiate with documentary

27  evidence, is over-inclusive and untrue, at least as it pertains to the 193 customers

28  specifically referred by DRG to Phoenix (not the debtor) post-petition.  Indeed, whether by

1  accident or design, the spreadsheet attached to Mr. Carss's declaration in support of the

2  sale motion, includes a column confirming that these customers were enrolled post-

3  petition.

4       The mutually self-serving stipulation between Phoenix, its principals, and the

5  Chapter 11 trustee, and this motion to approve it, seeks to establish the fiction that all

6  40,000 client files that Phoenix is currently servicing were fraudulently transferred to it by

7  the debtor pre-petition and are therefore assets of the estate.  That is simply not true and

8  the Chapter 11 trustee's attempt to establish that incorrect conclusion as the law of this

9  case should be resisted.  The 193 customers that DRG referred to Phoenix post-petition

10 were referred *to Phoenix* pursuant to a post-petition contract negotiated at arms-length

11 between two non-debtors.  The estate has no right to seize the value of DRG's post-petition

12 marketing efforts for Phoenix without also assuming the burdens of Phoenix's contract

13 with DRG that brought about the value.

14      However, by this motion, the Chapter 11 trustee seeks to do exactly that.  He seeks

15 to bring all of the value of DRG's post-petition work for Phoenix into the estate while

16 apparently repudiating any liability associated with it (Docket #176-1, Stipulation, ¶ 4).

17 He then seeks to sell off the client files—apparently back to some of the same insiders he

18 was demonizing only weeks ago—without any indication that DRG or any others who are

19 similarly situated will be justly compensated for delivering the client files that are the

20 source of value in the deal.  If he succeeds, assisted by the apparently petrified principals

21 of Phoenix who are willing to sing whatever tune will get them out of the trustee's cross-

22 hairs, Phoenix will be a hollowed-out shell with no collectible assets and no way of

23 honoring its obligations to DRG.

24      The Court should not rubber-stamp this motion or the incorrect legal conclusions

25 that the Chapter 11 trustee embeds in his requests for relief.  It should not allow the trustee

26 to accomplish indirectly what he could never accomplish directly.  He should not be

27 allowed to act as the *de facto* counter-party to DRG's contract with Phoenix, cherry pick

28 the benefits of that post-petition contract between two non-debtors, and deny DRG the

corresponding benefit of its bargain.  There seem to be two appropriate options.  The Chapter 11 trustee can more carefully delineate the client files that actually constitute *bona fide* fraudulently transferred pre-petition assets of the estate so as to ensure that the estate is not improperly appropriating assets and frustrating the legitimate contractual expectations of third party non-debtors such as DRG.  Alternatively, he can assume the burdens of Phoenix's post-petition contracts as well.  He should not be allowed to walk a line where he is required to do neither.

## II.    RELEVANT FACTUAL BACKGROUND

On March 20, 2023, the debtor, The Litigation Practice Group, Inc., filed a voluntary Chapter 11 bankruptcy petition.  DRG was not listed on the debtor's master mailing matrix (Docket #7) and did not have notice of the bankruptcy at that time.

On March 23, 2023, Phoenix and DRG entered into a "Marketing Affiliate Agreement" that had been several weeks in the works.  DRG began referring prospective customers to Phoenix on March 8, 2023, prior to the signature of the Marketing Affiliate Agreement.  *See* Revzin Decl., ¶ 2, Ex. 1.

Under the terms of the Marketing Affiliate Agreement, a 7.5% commission (calculated on the amount of the debt referred to Phoenix and subject to adjustment under the contract) becomes due and payable to DRG once a customer makes its first payment. *See* Revzin Decl.,  Ex. 1, § 4.

Between March 8, 2023 and April 14, 2023, DRG referred approximately 515 clients to Phoenix, earning approximately $638,911.14 in commissions, none of which Phoenix has paid.  DRG is informed and believes that the clients it referred in that period were signed up to receive legal services from Phoenix, not the debtor.  *See* Revzin Decl., ¶ 3, Ex. 2.

Between March 23, 2023, when the contract was signed, and April 14, 2023, DRG referred 290 of the aforementioned 515 clients to Phoenix, for which commissions totaling $357,727.79 are due and payable.  Of that 290, 193 client files are listed on the spreadsheet attached as Exhibit A to Mr. Carss's declaration in support of the sale motion, all of which

the Chapter 11 trustee seeks to sell as a purported asset of the estate.  *See* Docket #191-2. For those 193 client files, commissions totaling $240,738.81 are due and payable.  *See* Revzin Decl., ¶ 4, Ex. 3.

### III.    **ARGUMENT**

Due to the speed at which this motion is being prosecuted and DRG's late notice of it before the opposition deadline, DRG offers a handful of legal points that it reserves the right to supplement and develop in greater detail at a later time.

First, in order to approve a compromise under Fed. R. Bankr. P. 9019, a bankruptcy court must first be satisfied that it has jurisdiction and authority to approve what is before it.  *In re Greektown Holdings, LLC*, 728 F.3d 567, 577 (6th Cir. 2013).  While the equitable adjustment of contracts to which a debtor is a party is undoubtedly within the purview of a bankruptcy court, DRG questions whether what is tantamount to rewriting an arms-length agreement between two non-debtors and the partial assumption of that contract by the debtor is something that the Court has any jurisdiction to approve.

Second, the evidentiary record here involves, on one side, uncontested evidence that numerous files were opened by Phoenix post-petition as well as the existence of a signed post-petition contract showing that those files were being referred *to Phoenix*, not the debtor, and that customers therefore knew they were entering contracts with Phoenix. On the other side, the evidence consists of a completely unsubstantiated, conclusory assertion by an individual with a strong self-interest in currying favor with the trustee, conveniently saying that *every single file* that Phoenix is currently handling was fraudulently transferred to Phoenix pre-petition.  DRG respectfully submits that a finding that all 40,000 client files were fraudulently transferred pre-petition is so obviously contrary to the evidence that it would not survive plain error review on appeal.  *In re Wrightwood Guest Ranch, LLC*, 896 F.3d 1109, 1117 (9th Cir. 2018).  There is no basis for the Court to adopt the trustee's invited conclusion that these are all "former clients of the Debtor [who] will be able to receive the legal services that were promised to them." Motion, p. 11 of 18.

1  Third, "the Bankruptcy Code does not and should not grant a debtor greater rights

2  and powers under [a] contract than he had outside of bankruptcy." *In re Benz*, 368 B.R.

3  861, 867 (B.A.P. 9th Cir. 2007) (internal citations and quotation marks omitted).  Outside

4  of bankruptcy, the debtor would have no rights to enjoy the fruits of DRG's post-petition

5  labor under the Marketing Affiliate Agreement between DRG and Phoenix, yet the relief

6  sought here would result in the estate taking all of the benefits of that contract while

7  assuming none of the corresponding burdens.  That should not be permitted.

8  **IV.    CONCLUSION**

9  The motion should be denied or only granted if there are modifications to the relief

10  sought.  DRG has no objection to *bona fide*, pre-petition fraudulent transfers being avoided

11  and recovered pursuant to stipulation between the Chapter 11 trustee and Phoenix.  But the

12  Court should under no circumstances authorize the appropriation of assets from Phoenix

13  that the estate has no legitimate claim to under 11 U.S.C. §§ 547 and 548.  This could be

14  accomplished by wording in the order clarifying that the Court's approval extends only as

15  to client files that Phoenix opened pre-petition and only as to client files in which the

16  customer had an existing legal services agreement with the debtor.  Alternatively, if the

17  Chapter 11 trustee wishes to fully assume Phoenix's post-petition marketing contract with

18  DRG and immediately pay DRG its past due commissions, DRG will withdraw its

19  objection.

20  DATED:  July 11, 2023                    WOLF, RIFKIN, SHAPIRO,
                                            SCHULMAN & RABKIN, LLP
21

22
                                           By:    _/ s / Johnny White_
23                                               JOHNNY WHITE
                                           Attorneys for DEBT RELIEF GROUP, LLC
24

25

26

27

28

OPPOSITION TO CHAPTER 11 TRUSTEE'S MOTION FOR ORDER APPROVING STIPULATION RE
AVOIDANCE AND RECOVERY OF AVOIDABLE TRANSFERS AND RELATED PROPERTY

1

**<u>DECLARATION OF JASON REVZIN</u>**

2       I, Jason Revzin, declare as follows:

3       1.      I am a member of Debt Relief Group, LLC ("<u>DRG</u>") and am authorized to

4   make this declaration on its behalf.  I have personal knowledge of the facts set forth herein,

5   except as to those stated on information and belief and, as to those, I am informed and

6   believe them to be true.  If called as a witness, I could and would competently testify to the

7   matters stated herein.

8       2.      On March 23, 2023, Phoenix Law, P.C. ("<u>Phoenix</u>") and DRG entered into a

9   "Marketing Affiliate Agreement" that had been several weeks in the works.  DRG began

10  referring prospective customers to Phoenix on March 8, 2023, prior to the signature of the

11  Marketing Affiliate Agreement.  A true and correct copy of the Marketing Affiliate

12  Agreement is attached hereto as Exhibit 1.

13      3.      Between March 8, 2023 and April 14, 2023, DRG referred approximately

14  515 clients to Phoenix, earning approximately $638,911.14 in commissions, none of which

15  Phoenix has paid DRG to date.  DRG is informed and believes that the clients it referred in

16  that period were signed up to receive legal services from Phoenix, not the debtor.  A

17  spreadsheet detailing all of the clients referred to Phoenix by DRG during this period is

18  attached hereto as Exhibit 2.

19      4.      Between March 23, 2023, when the contract was signed, and April 14, 2023,

20  DRG referred 290 of the aforementioned 515 clients to Phoenix, for which commissions

21  totaling $357,727.79 are due and payable.  Of that 290, 193 client files are listed on the

22  spreadsheet attached as Exhibit to William "Ty" Carss's declaration in support of the sale

23  motion, all of which the Chapter 11 trustee seeks to sell as a purported asset of the estate.

24  For those 193 client files, commissions totaling $240,738.81 are due and payable.  A true

25  and correct copy of a spreadsheet detailing all of the clients referred to Phoenix by DRG

26  during this period, and which includes a column indicating the 193 clients that appear on

27  the spreadsheet presented by Mr. Carss in support of the sale motion, is attached hereto as

28  Exhibit 3.

Doc ID: 751e290f517d31d385b2d96832f4b0a30913792c

1    I declare under penalty of perjury under the laws of the United States that the

2  foregoing is true and correct to the best of my knowledge.

3    Executed July 11, 2023, at Las Vegas, Nevada.

4

5  _____

6  Jason Revzin

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Doc ID: 751e290f517d31d385b2d96832f4b0a30913792c

# EXHIBIT 1

DocuSign Envelope ID: BED43619-C4D9-418A-B11D-9A4B95ECA7DB



3345 Michelson Dr. | Ste 400
Irvine, CA 92612
Tel 424.622.4044

Ty Carss | admin@phoenixlaw.co

## MARKETING AFFILIATE AGREEMENT

This Marketing Affiliate Agreement ("*Agreement*") is effective as of the Effective Date by and between Phoenix Law PC, ("Phoenix") and Debt Relief Group, as the entity executing or otherwise accepting this Agreement as a marketing affiliate of Phoenix ("*Marketing Affiliate*"). Capitalized terms used but not otherwise defined herein shall have the meaning provided in the definitions set forth in Section 13 below.

1. Authorization; Marketing and Promotion.

    1.1. Authorization. Subject to Marketing Affiliate's compliance with this Agreement, Phoenix hereby grants to Marketing Affiliate a non-exclusive, non-transferable, and non-assignable right to promote and market the Services to prospective customers.

    1.2. Marketing and Promotion. Marketing Affiliate will use commercially reasonable efforts to market and promote the Services to prospective customers during the Term. Any advertising materials to be used by Marketing Affiliate (other than the materials provided by Phoenix) shall be at its own cost and expense. Marketing Affiliate agrees to assist in Phoenix's marketing efforts to a prospective customer referred by Marketing Affiliate and will provide commercially reasonable cooperation if so requested. In connection with its performance under this Agreement, Marketing Affiliate shall not represent itself as an agent of Phoenix for any purpose.

    1.3. Phoenix Marks. All use by Marketing Affiliate of the trademarks, service marks, and trade names associated with Phoenix and/or the Services, whether registered or unregistered (the "*Phoenix Marks*"), including any goodwill associated therewith, shall inure to the benefit of, conform to the standards set by, and be under the control of, Phoenix. Marketing Affiliate's use of any of the Phoenix Marks must comply with this Agreement and any trademark usage guidelines provided by Phoenix from time to time. Marketing Affiliate shall not use any of the Phoenix Marks in connection with any product or service or in any manner that is likely to cause confusion, and shall not copy, imitate, or use any such marks, in whole or in part, without the prior written permission of Phoenix. As between the parties, Phoenix will have the sole right and discretion to determine whether any use of the Phoenix Marks in connection with the

promotional activities hereunder complies with the requirements of this Agreement.

1.4. Customer Terms. Marketing Affiliate will notify each prospective customer that its access to the Services will be subject to the TOS and such customer must accept the TOS prior to using the Services. Marketing Affiliate will not accept the TOS on behalf of its Referral Customers.

2. Referral Process. A prospective customer may become a Referral Customer through Marketing Affiliate's submission and Phoenix's acceptance of a Referral Notice per Section 2.1 below.

2.1. Referral Notice. Marketing Affiliate may submit a Referral Notice to Phoenix for each prospective customer referred by Marketing Affiliate to Phoenix. If Phoenix accepts the Referral Notice, the prospective customer referred thereby will be considered a Referral Customer. Phoenix may reject any Referral Notice if the prospective customer set forth in such Referral Notice is a current customer of Phoenix.

3. Pricing and Payment. Phoenix is responsible for all account-related activities with the Referral Customers, including billing and collecting fees from all Referral Customers, and may communicate directly with the Referral Customers at any time. Phoenix is also free to assign the servicing of Referral Customers to any other service provider at its sole discretion.  Phoenix is permitted to alter the price charged for the Services with respect to any Referral Customer at any time provided such alteration is based on the enrollment or removal of an account by a Referral Customer and further provided such change is consistent with the service fee percentage and maintenance fee charged at the time of enrollment.

4. Referral Fee. As consideration for any and all efforts by Marketing Affiliate to promote the Services hereunder, Phoenix will pay Marketing Affiliate a commission in the following amount: 7.5% of the debt of the Referral Customer enrolled with Phoenix Law PC or any other law firm with which Phoenix is associated (the "*Referral Fee*"), provided that such Referral Customer clears at least one payment. The Referral Fee is payable the week following a cleared payment by the Referral Customer – any Referral Customer with a payment that clears Monday through Friday will be paid the following Friday. Marketing Affiliate will provide Phoenix with all appropriate tax identification information that Phoenix requires to ensure Phoenix's compliance with applicable tax regulations.

5. Payment Processing. Pursuant to agreement between the parties, Marketing Affiliate shall be responsible for collecting and processing each Referral Customer's initial scheduled payment upon enrollment into the program.  Phoenix is thereafter responsible to collect each client's subsequent scheduled payment due under the program. The amount collected by Marketing Affiliate for each Referral Customer's initial payment shall be deducted by Phoenix from the total balance owed to Marketing Affiliate for that client. Marketing Affiliate is authorized to collect payments from Referral Customers of

Phoenix and the authorization of Referral Customer extended to Phoenix is hereby extended to Marketing Affiliate.

6. Intellectual Property Rights. Except for the rights to use the Phoenix Marks and promote the Services as expressly granted herein, neither party will acquire any rights, title or interest in any of the Intellectual Property Rights belonging to the other party or the other party's licensors. Nothing in this Agreement is intended to constitute a sale of any software or documentation associated with the Services or any derivations thereof. The Services constitute valuable proprietary and trade secret information and property of Phoenix. Title, ownership, and intellectual property rights, including without limitation all copyright rights, in and to the Services, and all derivatives thereof, shall remain with Phoenix and its licensors. Marketing Affiliate acknowledges the ownership and intellectual property rights of Phoenix in the Services, and will not take any action to jeopardize, limit or interfere in any manner with such ownership or other rights. Marketing Affiliate hereby grants Phoenix a non-exclusive, royalty-free, fully paid up, perpetual, irrevocable, transferable, unlimited, worldwide right to use and otherwise commercially exploit any feedback, ideas or other suggestions communicated by Marketing Affiliate to Phoenix.

7. Confidentiality. Each party will: (a) protect the other party's Confidential Information with the same standard of care it uses to protect its own Confidential Information, but in no event less than reasonable care; and (b) not disclose the Confidential Information, except to affiliates, employees, agents and professional advisors who need to know it and who have agreed in writing (or in the case of professional advisors are otherwise bound) to keep it confidential. Each party (and any affiliates, employees and agents to whom it has disclosed Confidential Information) may use Confidential Information only to exercise rights and fulfill obligations under this Agreement, while using reasonable care to protect it. Each party is responsible for any actions of its affiliates, employees and agents in violation of this Section. Notwithstanding the foregoing, each party may disclose the other party's Confidential Information when required by law, but only after it, if legally permissible: (a) uses commercially reasonable efforts to notify the other party; and (b) gives the other party the chance to challenge the disclosure.

8. Publicity. Marketing Affiliate will not issue any press release, public announcement, or public statement regarding the existence or content of this Agreement or issue any materials containing Phoenix's name, trade names, trademarks, service marks, logos, domain names, or other distinctive brand features of Phoenix without Phoenix's prior written approval.

9. Agreement Term; Termination.

> 8.1. Initial Term; Auto-Renewal. This Agreement will commence on the Effective Date and will continue for an initial term of twelve (12) months (the "*Initial Term*"). Upon expiration of the Initial Term, and on each anniversary of such date, this Agreement will auto-renew for a renewal term of twelve (12) months (each a "*Renewal Term*") unless either party notifies the other in writing of its intent to not renew the Agreement at least thirty (30) days prior to the end of the then-current Term.

3

8.2.   Termination for Breach. Notwithstanding anything to the contrary elsewhere in the Agreement, either party may suspend performance or terminate this Agreement if: (i) the other party is in material breach of the Agreement and fails to cure that breach within fifteen (15) days after receipt of written notice; (ii) the other party ceases its business operations or becomes subject to insolvency proceedings and the proceedings are not dismissed within ninety (90) days; (iii) the other party is in material breach of this Agreement more than two (2) times notwithstanding any cure of such breaches.

8.3.   Termination for Convenience. Notwithstanding anything to the contrary elsewhere in the Agreement, either party may terminate this Agreement for convenience upon sixty (60) days prior written notice to the other party.

8.4.   Effect of Termination. Upon any termination or expiration of this Agreement: (i) all rights and licenses granted by one party to the other will cease after a period of 30 calendar days; (ii) each party will promptly return to the other party, or destroy and certify the destruction of, all of the other party's Confidential Information at the conclusion of 30 days after notice of termination; (iii) within 30 days of notice of termination, Marketing Affiliate shall no longer market or promote the Services and will remove all references to Phoenix and/or the Services from is website; and (iv) Marketing Affiliate will, if Phoenix so requests, inform Referral Customers that its relationship with Phoenix has terminated. Termination or expiration of this Agreement, in part or in whole, will not limit either party from pursuing other remedies available to it. In the event of non-renewal or termination of this Agreement, the Referral Fee for Referral Customers who have met the applicable offer requirement(s) prior to the effective date of termination or expiration will be paid as set forth herein.

8.5.   Acknowledgement. Marketing Affiliate hereby waives any right, either express or implied by applicable law or otherwise, to renewal of this Agreement or to any damages or compensation for any expiration or termination of this Agreement as provided herein.

9. Representations. Marketing Affiliate represents and warrants that:

9.1.   Marketing Affiliate will comply with the terms and conditions of this Agreement, all applicable laws and regulations (including, without limitation, Export Laws), and any policies related to the Services, as such policies may be modified by Phoenix from time to time, in its marketing and promotion of the Services;

9.2.   Marketing Affiliate will not make any unauthorized, false, misleading, or illegal statements in connection with this Agreement or regarding the Services and will not make any representation or warranty that is inconsistent with this Agreement or Phoenix's written materials regarding the Services as provided by Phoenix to Marketing Affiliate or otherwise made publicly available by Phoenix. Marketing Affiliate will indemnify, defend, and hold harmless Phoenix from and against all liabilities, damages,

4

and costs (including settlement costs and reasonable attorneys' fees) arising out of or related to any representations or warranties made by Marketing Affiliate regarding the Services that are inconsistent with this Agreement or the written materials regarding the Services provided by Phoenix;

9.3. Marketing Affiliate has obtained and will maintain all licenses, permits and approvals and will be responsible for satisfying all formalities as may be required to: (a) enter into this Agreement; (b) perform its obligations in accordance with this Agreement; and (c) comply with applicable laws, rules and regulations;

9.4. The execution and delivery of this Agreement, and the performance by Marketing Affiliate of its obligations hereunder, will not constitute a breach or default of or otherwise violate any agreement to which Marketing Affiliate or any of its affiliates are a party, or violate any rights of any third parties arising from those agreements, including without limitation any rights related to exclusivity; and

9.5. Marketing Affiliate and its directors, officers, employees and agents have not, and will not offer, pay, promise or authorize the payment, directly or indirectly through any other person or entity, of any monies or anything of value for the purpose of inducing or rewarding any favorable action or influencing any act or decision in connection with Phoenix's business to a candidate for public office, or to any of the following for the purpose of inducing or rewarding any favorable action or influencing any act or decision of such person or entity in connection with Phoenix's business: (a) any governmental official or employee of a government; (b) any official or employee of any government-controlled entity, public international organization or any political party; or (c) any candidate for political office.

10. Disclaimer. TO THE FULLEST EXTENT PERMITTED BY LAW, PHOENIX, ITS LICENSORS AND SUPPLIERS MAKE NO WARRANTY, EXPRESS OR IMPLIED, INCLUDING WITHOUT LIMITATION WITH RESPECT TO THE SERVICES, AND EXPRESSLY DISCLAIM THE WARRANTIES OR CONDITIONS OF NONINFRINGEMENT, SATISFACTORY QUALITY, MERCHANTABILITY AND FITNESS FOR ANY PARTICULAR PURPOSE. MARKETING AFFILIATE HEREBY WAIVES ANY RIGHTS THAT IT MIGHT OTHERWISE HAVE IN CONNECTION WITH THIS SECTION. PHOENIX WILL NOT BE OBLIGATED UNDER THIS AGREEMENT TO TAKE ANY ACTION OR REFRAIN FROM TAKING ANY ACTION THAT IT BELIEVES, IN GOOD FAITH, WOULD CAUSE IT TO BE IN VIOLATION OF ANY LAWS OF THE TERRITORY OR ANY OTHER APPLICABLE JURISDICTION, INCLUDING, WITHOUT LIMITATION, THE UNITED STATES.

11. Limitation of Liability. IN NO EVENT WILL EITHER PARTY HAVE ANY LIABILITY TO THE OTHER WITH RESPECT TO ANY SUBJECT MATTER OF THIS AGREEMENT OR TERMS AND CONDITIONS RELATED HERETO FOR ANY INDIRECT, SPECIAL, INCIDENTAL, PUNITIVE OR CONSEQUENTIAL DAMAGES, HOWEVER CAUSED AND WHETHER IN CONTRACT, TORT OR UNDER ANY OTHER THEORY OF LIABILITY, WHETHER OR NOT SUCH PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF

SUCH LIABILITY AND EVEN IF DIRECT DAMAGES DO NOT SATISFY A REMEDY. IN NO EVENT WILL EITHER PARTY'S AGGREGATE LIABILITY ARISING OUT OF OR RELATED TO THE SUBJECT MATTER OF THIS AGREEMENT, WHETHER IN CONTRACT, TORT OR UNDER ANY OTHER THEORY OF LIABILITY, EXCEED THE AMOUNTS PAID BY PHOENIX TO MARKETING AFFILIATE HEREUNDER IN THE 12 MONTHS PRIOR TO THE ACT THAT GAVE RISE TO THE LIABILITY. THESE LIMITATIONS OF LIABILITY APPLY TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW BUT DO NOT APPLY TO A PARTY'S INDEMNIFICATION OBLIGATIONS, VIOLATIONS OF THE OTHER PARTY'S INTELLECTUAL PROPERTY RIGHTS, OR BREACHES OF CONFIDENTIALITY OBLIGATIONS.

12. Miscellaneous.

12.1.   Non-Exclusivity. Phoenix and Marketing Affiliate expressly reserve the right (on a worldwide basis) to promote, advertise, market, sell, license and distribute the Services either directly or indirectly through other partners, managed service providers, dealers, distributors, or other third parties, and reserves the right (on a worldwide basis) to promote, advertise, market, sell, license, and distribute the Services to any customer of Marketing Affiliate, subject to the confidentiality provisions of this Agreement. Nothing in this Agreement shall be deemed to preclude Phoenix from contacting Referral Customers directly provided such Referral Customers have signed a services agreement. Phoenix may not, however, contact any potential referral customer if Marketing Affiliate has referred the same to Phoenix for a period of 60 days following the notice referenced herein.  If any potential referral customer referred by Marketing Affiliate that has not signed a services agreement contacts Phoenix or Phoenix, the same  shall be referred back to Marketing Affiliate.

12.2.   Non-Disparagement. Each party agrees and covenants that it will not at any time make, publish, or communicate to any person or entity or in any public forum, including, without limitation, on any digital or online review sites or forums, any defamatory, discrediting or disparaging remarks, comments or statements concerning the other party or its businesses, or any of its employees or officers, now or in the future. For purposes of this paragraph, a disparaging or discrediting statement or representation is any communication which, if publicized to another, would cause or tend to cause the recipient of the communication to question the business condition, integrity, competence, good character, or product quality of the person or entity to whom the communication relates, but will not include any disclosure required to be made to any governmental or quasi-governmental agency, or any disclosure made in the course of any pending or threatened litigation, mediation, arbitration or agency action.

12.3.   Notices. All notices must be in writing and addressed to the attention of the other party at the address first set forth above or on the signature page hereto, or at such other address as provided by a party from time to time by like notice. Notice will be deemed given: (a) when delivered by personal courier, (b) one (1) business day after sending via a nationally-recognized overnight courier, (c) three (3) business days after sending via

certified mail, or (d) when verified by automated receipt or electronic logs if sent by facsimile or email.

12.4.  Beneficiaries; No Agency; Assignment. There are no third-party beneficiaries to this Agreement. The parties are independent contractors, and this Agreement does not create an agency, partnership or joint venture. Marketing Affiliate may not assign or transfer any part of this Agreement, including without limitation, by change of control or an assignment by operation of law, without Phoenix's prior written consent. Any attempt by Marketing Affiliate to transfer or assign this Agreement in violation of this Section is void.

12.5.  Force Majeure. Neither party will be liable for inadequate performance to the extent caused by a condition (for example, natural disaster, epidemic or pandemic, act of war or terrorism, riot, labor condition, governmental action, and Internet disturbance) that was beyond the party's reasonable control.

12.6.  No Waiver; Severability. Failure to enforce any provision of this Agreement will not constitute a waiver. If any provision of this Agreement is found unenforceable, it and any related provisions will be interpreted to best accomplish the unenforceable provision's essential purpose.

12.7.  Governing Law; Jurisdiction. This Agreement is governed by the laws of the State of Georgia, excluding its choice of law rules. FOR ANY DISPUTE RELATING TO THIS AGREEMENT, THE PARTIES CONSENT TO PERSONAL JURISDICTION IN FULTON COUNTY, GEORGIA AND THE EXCLUSIVE VENUE OF, THE COURTS IN FULTON COUNTY, GEORGIA.

12.8.  Equitable Relief; Survival. Nothing in this Agreement will limit either party's ability to seek equitable relief. Upon expiration or termination of this Agreement, the rights and obligations of the parties will cease, except for the rights and obligations in all provisions of this Agreement which by their nature contemplate performance or applicability after the expiration or termination hereof, which will survive termination or expiration of this Agreement.

12.9.  Entire Agreement; Amendments; Counterparts. This Agreement constitutes the parties' entire agreement relating to its subject and supersedes any prior or contemporaneous agreements on that subject. Any amendments to this Agreement must be agreed upon in writing and signed by both parties hereto. The parties may execute this Agreement electronically (including, without limitation, via Marketing Affiliate's acceptance of this Agreement via electronic signature) and the parties may exchange executed signature pages in counterparts, including by facsimile, PDF or other electronic method, which taken together will constitute one instrument.

13. Definitions.

For purposes of this Agreement, the following terms will have the meanings set forth below:

"Confidential Information" means information disclosed by a party to the other party under this agreement that is marked as confidential or would normally be considered confidential under the circumstances. Without limiting the foregoing, the Referral Fee and any information obtained through the Services are Confidential Information of Phoenix. Notwithstanding the foregoing, Confidential Information does not include information that: (a) the recipient of the Confidential Information already knew; (b) becomes public through no fault of the recipient; (c) was independently developed by the recipient; or (d) was rightfully given to the recipient by another party.

"Effective Date" means the date on which both Phoenix and Marketing Affiliate execute this Agreement below. If this Agreement is executed by Marketing Affiliate and Phoenix on different dates, the Effective Date will be the date the last party signs this Agreement.

"Export Laws" means all applicable export and re-export control laws and regulations, and specifically includes the Export Administration Regulations maintained by the U.S. Department of Commerce, the trade and economic sanctions maintained by the Treasury Department's Office of Foreign Assets Control, and the International Traffic in Arms Regulations maintained by the Department of State.

"Intellectual Property Rights" means current and future worldwide rights under patent law, copyright law, trade secret law, trademark law, moral rights law, and other similar rights.

"Referral Customers" means those prospective customers referred by Marketing Affiliate to Phoenix and accepted by Phoenix in accordance with Section 2 above.

"Referral Notice" means Marketing Affiliate's submission of written notice to Phoenix regarding a prospective customer's interest in purchasing the Services, in the form designated by Phoenix from time to time, which shall include all information about the prospective customer and opportunity as reasonably requested by Phoenix.

"Services" means the products and services offered by Phoenix to Referral Customers as more particularly described at www.Phoenix.com, as may be updated or modified by Phoenix from time to time.

"Taxes" means any and all taxes, charges, fees, levies, imposts, duties, tariffs or other assessments imposed by or payable to any federal, state, local or foreign tax or governmental authority, including, without limitation, sales, use, goods, services, value-added, transfer, customs, personal property, stamp duty, excise, withholding and other obligations of the same or similar nature.

"Term" means the Initial Term together with all Renewal Terms, as such terms are defined in Section 8.1 above.

"TOS" means the Terms of Service presented by Phoenix to Referral Customers upon login to the Services, as Phoenix may modify from time to time, which must be accepted by each

Referral Customer prior to its use of the Services. A copy of the then-current TOS for the applicable Services will be made available by Phoenix for review upon request.

The parties have caused this Agreement to be executed as of the Effective Date.

**Phoenix Law PC**

By: _Ty Carss_

Ty Carss

Date: 3/23/2023

Marketing Affiliate: **Debt Relief Group**

By: _Jason Revzin_   Jason Revzin

Title: Managing Member

Date: 3/23/2023

9

# EXHIBIT 2

# [REDACTED VERSION]

| Full Name | Debt Amt | ProfileId | Status | FirstPaymentAmount | FirstPaymentClearedDate |
|-----------|----------|-----------|--------|--------------------|-----------------------|



















# EXHIBIT 3

# [REDACTED VERSION]

| Full Name | Listed in Carss Exhibit A | Debt Amt | ProfileId | Status | FirstPaymentAmount | FirstPaymentClearedDate |
|-----------|---------------------------|----------|-----------|--------|--------------------|-----------------------|







# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
11400 West Olympic Boulevard, 9th Floor, Los Angeles, California 90064

A true and correct copy of the foregoing document entitled: **DEBT RELIEF GROUP, LLC'S OPPOSITION TO CHAPTER 11 TRUSTEE'S MOTION FOR ORDER APPROVING STIPULATION RE AVOIDANCE AND RECOVERY OF AVOIDABLE TRANSFERS TO DEFENDANT PHOENIX LAW, PC AND TURNOVER OF ALL RELATED PROPERTY TO THE TRUSTEE AND ORDER OF DISMISSAL WITHOUT PREJUDICE OF DEFENDANTS WILLIAM TAYLOR CARSS AND MARIA EEYA TAN; DECLARATION OF JASON REVZIN [REDACTED VERSION]** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On July 13, 2023, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on July 13, 2023, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**Served via Personal Delivery:**
United States Bankruptcy Court
Honorable Scott Clarkson
Central District of California
411 West Fourth Street, Suite 5130 / Courtroom 5C
Santa Ana, California 92701

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| July 13, 2023 | Jean Lee | /s/ Jean Lee |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August  2010*
5524074.1                                                            **F 9013-3.1.PROOF.SERVICE**

## I.    SERVED ELECTRONICALLY VIA NEF:

- Eric Bensamochan on behalf of Interested Party Courtesy NEF
  eric@eblawfirm.us, G63723@notify.cincompass.com

- Eric Bensamochan on behalf of Interested Party Eric Bensamochan
  eric@eblawfirm.us, G63723@notify.cincompass.com

- Ronald K Brown on behalf of Creditor SDCO Tustin Executive Center, Inc.
  ron@rkbrownlaw.com

- Christopher Celentino on behalf of Plaintiff Richard A. Marshack
  christopher.celentino@dinsmore.com, caron.burke@dinsmore.com

- Christopher Celentino on behalf of Trustee Richard A Marshack (TR)
  christopher.celentino@dinsmore.com, caron.burke@dinsmore.com

- Shawn M Christianson on behalf of Interested Party Courtesy NEF
  cmcintire@buchalter.com, schristianson@buchalter.com

- Randall Baldwin Clark on behalf of Interested Party Randall Baldwin Clark
  rbc@randallbclark.com

- Leslie A Cohen on behalf of Interested Party Courtesy NEF
  leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com;clare@lesliecohenlaw.com

- Jenny L Doling on behalf of Interested Party INTERESTED PARTY
  jd@jdl.law, dolingjr92080@notify.bestcase.com;15994@notices.nextchapterbk.com

- Daniel A Edelman on behalf of Creditor Carolyn Beech
  dedelman@edcombs.com, courtecl@edcombs.com

- Christopher Ghio on behalf of Plaintiff Richard A. Marshack
  christopher.ghio@dinsmore.com, Kristina.Heller@Dinsmore.com

- Christopher Ghio on behalf of Trustee Richard A Marshack (TR)
  christopher.ghio@dinsmore.com, Kristina.Heller@Dinsmore.com

- Jeffrey I Golden on behalf of Creditor Anaheim Arena Management, LLC
  jgolden@go2.law, kadele@ecf.courtdrive.com; cbmeeker@gmail.com;
  lbracken@wgllp.com; gestrada@wgllp.com;golden.jeffreyi.b117954@notify.bestcase.com

- Jeffrey I Golden on behalf of Creditor Anaheim Ducks Hockey Club, LLC
  jgolden@go2.law, kadele@ecf.courtdrive.com; cbmeeker@gmail.com;
  lbracken@wgllp.com;gestrada@wgllp.com;golden.jeffreyi.b117954@notify.bestcase.com

- Jeffrey I Golden on behalf of Interested Party Courtesy NEF
  jgolden@go2.law, kadele@ecf.courtdrive.com; cbmeeker@gmail.com;
  lbracken@wgllp.com;gestrada@wgllp.com;golden.jeffreyi.b117954@notify.bestcase.com

- Richard H Golubow on behalf of Creditor Debt Validation Fund II, LLC
  rgolubow@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com

- Richard H Golubow on behalf of Creditor MC DVI Fund 1, LLC
  rgolubow@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com

1

2

- Richard H Golubow on behalf of Creditor MC DVI Fund 2, LLC
  rgolubow@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com

3

- D Edward Hays on behalf of Interested Party Courtesy NEF
  ehays@marshackhays.com, ehays@ecf.courtdrive.com; kfrederick@ecf.courtdrive.com;
  cmendoza@marshackhays.com;cmendoza@ecf.courtdrive.com

4

5

- D Edward Hays on behalf of Trustee Richard A Marshack (TR)
  ehays@marshackhays.com, ehays@ecf.courtdrive.com; kfrederick@ecf.courtdrive.com;
  cmendoza@marshackhays.com;cmendoza@ecf.courtdrive.com

6

7

- Alan Craig Hochheiser on behalf of Creditor City Capital NY
  ahochheiser@mauricewutscher.com, arodriguez@mauricewutscher.com

8

9

- Garrick A Hollander on behalf of Creditor Debt Validation Fund II, LLC
  ghollander@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com

10

- Garrick A Hollander on behalf of Creditor MC DVI Fund 1, LLC
  ghollander@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com

11

12

- Garrick A Hollander on behalf of Creditor MC DVI Fund 2, LLC
  ghollander@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com

13

- Razmig Izakelian on behalf of Creditor OHP-CDR, LP
  razmigizakelian@quinnemanuel.com

14

15

- Joon M Khang on behalf of Debtor The Litigation Practice Group P.C.
  joon@khanglaw.com

16

- Ira David Kharasch on behalf of Interested Party Ad Hoc Consumer Claimants Committee
  ikharasch@pszjlaw.com

17

18

- Ira David Kharasch on behalf of Interested Party Courtesy NEF
  ikharasch@pszjlaw.com

19

- Nicholas A Koffroth on behalf of Creditor Committee Committee of Unsecured Creditors
  nkoffroth@foxrothschild.com, khoang@foxrothschild.com

20

21

- David S Kupetz on behalf of Defendant Marich Bein, LLC
  David.Kupetz@lockelord.com, mylene.ruiz@lockelord.com

22

- David S Kupetz on behalf of Interested Party Courtesy NEF
  David.Kupetz@lockelord.com, mylene.ruiz@lockelord.com

23

24

- Christopher J Langley on behalf of Interested Party Courtesy NEF
  chris@slclawoffice.com, omar@slclawoffice.com; langleycr75251@notify.bestcase.com;
  ecf123@casedriver.com

25

26

- Daniel A Lev on behalf of Interested Party Courtesy NEF
  daniel.lev@gmlaw.com, cheryl.caldwell@gmlaw.com;dlev@ecf.courtdrive.com

27

- Michael D Lieberman on behalf of Creditor Phillip A. Greenblatt, PLLC
  mlieberman@lipsonneilson.com

28

- Yosina M Lissebeck on behalf of Trustee Richard A Marshack (TR)
  Yosina.Lissebeck@Dinsmore.com, caron.burke@dinsmore.com

- Richard A Marshack (TR)
  pkraus@marshackhays.com, rmarshack@iq7technology.com;
  ecf.alert+Marshack@titlexi.com

- Laila Masud on behalf of Interested Party Courtesy NEF
  lmasud@marshackhays.com, lmasud@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com

- Laila Masud on behalf of Interested Party Richard A. Marshack
  lmasud@marshackhays.com, lmasud@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com

- Laila Masud on behalf of Plaintiff Richard Marshack
  lmasud@marshackhays.com, lmasud@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com

- Laila Masud on behalf of Trustee Richard A Marshack (TR)
  lmasud@marshackhays.com, lmasud@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com

- Kenneth Misken on behalf of U.S. Trustee United States Trustee (SA)
  Kenneth.M.Misken@usdoj.gov

- Byron Z Moldo on behalf of Interested Party Byron Moldo
  bmoldo@ecjlaw.com, amatsuoka@ecjlaw.com,dperez@ecjlaw.com

- Alan I Nahmias on behalf of Interested Party Courtesy NEF
  anahmias@mbn.law, jdale@mbnlawyers.com

- Victoria Newmark on behalf of Interested Party Courtesy NEF
  vnewmark@pszjlaw.com

- Queenie K Ng on behalf of U.S. Trustee United States Trustee (SA)
  queenie.k.ng@usdoj.gov

- Keith C Owens on behalf of Creditor Committee Committee of Unsecured Creditors
  kowens@foxrothschild.com, khoang@foxrothschild.com

- Teri T Pham on behalf of Attorney Teri Pham
  tpham@epglawyers.com, ttpassistant@epglawyers.com

- Douglas A Plazak on behalf of Defendant Greyson Law Center PC
  dplazak@rhlaw.com

- Ronald N Richards on behalf of Defendant Consumer Legal Group, PC
  ron@ronaldrichards.com, 7206828420@filings.docketbird.com

- Ronald N Richards on behalf of Interested Party Courtesy NEF
  ron@ronaldrichards.com, 7206828420@filings.docketbird.com

- Gregory M Salvato on behalf of Creditor Mari Agape
  gsalvato@salvatoboufadel.com, calendar@salvatolawoffices.com;
  jboufadel@salvatoboufadel.com; gsalvato@ecf.inforuptcy.com

- Gregory M Salvato on behalf of Interested Party Courtesy NEF
  gsalvato@salvatoboufadel.com, calendar@salvatolawoffices.com;
  jboufadel@salvatoboufadel.com; gsalvato@ecf.inforuptcy.com

- Olivia Scott on behalf of Creditor Azzure Capital LLC
  olivia.scott3@bclplaw.com

- Olivia Scott on behalf of Creditor Hi Bar Capital LLC
  olivia.scott3@bclplaw.com

- Jonathan Serrano on behalf of Plaintiff Richard A. Marshack
  jonathan.serrano@dinsmore.com

- Jonathan Serrano on behalf of Trustee Richard A Marshack (TR)
  jonathan.serrano@dinsmore.com

- Paul R Shankman on behalf of Attorney Paul R. Shankman
  PShankman@fortislaw.com, info@fortislaw.com

- Paul R Shankman on behalf of Creditor United Partnerships, LLC
  PShankman@fortislaw.com, info@fortislaw.com

- Leslie Skorheim on behalf of U.S. Trustee United States Trustee (SA)
  leslie.skorheim@usdoj.gov

- Andrew Still on behalf of Interested Party Courtesy NEF
  astill@swlaw.com, kcollins@swlaw.com

- United States Trustee (SA)
  ustpregion16.sa.ecf@usdoj.gov

- Sharon Z. Weiss on behalf of Creditor Azzure Capital LLC
  sharon.weiss@bclplaw.com, raul.morales@bclplaw.com,
  REC_KM_ECF_SMO@bclplaw.com

- Sharon Z. Weiss on behalf of Creditor Hi Bar Capital LLC
  sharon.weiss@bclplaw.com, raul.morales@bclplaw.com,
  REC_KM_ECF_SMO@bclplaw.com