Christopher B. Ghio (State Bar No. 259094)
Christopher Celentino (State Bar No. 131688)
Jeremy B. Freedman (State Bar No. 308752)
Jonathan Serrano (State Bar No. 333225)
**DINSMORE & SHOHL LLP**
655 West Broadway, Suite 800
San Diego, CA 92101
Telephone: 619.400.0500
Facsimile: 619.400.0501
christopher.ghio@dinsmore.com
christopher.celentino@dinsmore.com
jeremy.freedman@dinsmore.com
jonathan.serrano@dinsmore.com

Special Counsel to Richard A. Marshack,
Chapter 11 Trustee

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SANTA ANA DIVISION

In re:

THE LITIGATION PRACTICE GROUP P.C.,

    Debtor.

---

Case No.: 8:23-bk-10571-SC

Chapter 11

**DECLARATION OF RICHARD A. MARSHACK IN SUPPORT OF EMERGENCY MOTION (I) FOR ENTRY OF A SECOND INTERIM ORDER: (A) AUTHORIZING THE TRUSTEE TO OBTAIN ADDITIONAL POST-PETITION FINANCING AND SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIM PURSUANT TO 11 U.S.C. § 364; AND (B) SETTING FINAL HEARING; AND PURSUANT TO FINAL HEARING, (II) FOR ENTRY OF FINAL ORDER APPROVING POST-PETITION FINANCING ON A FINAL BASIS**

Date:
Time:
Judge: Hon. Scott C. Clarkson
Place: Courtroom 5C
      411 W. Fourth Street
      Santa Ana, CA 92701

**DECLARATION OF RICHARD A. MARSHACK**

I, RICHARD A. MARSHACK, declare:

1. I am the Chapter 11 Trustee ("Trustee") for the bankruptcy estate ("Estate") of The Litigation Practice Group, P.C. ("Debtor") in the above-captioned bankruptcy case ("Case"). As such, except as expressly stated otherwise, I have personal knowledge of the facts set forth below and could and would competently testify under oath thereto if requested to do so.

2. I submit this Declaration in support of my *Motion (I) for Entry of a Second Interim Order: (A) Authorizing The Trustee to Obtain Additional Post-Petition Financing and Superpriority Administrative Expense Claim Pursuant to 11 U.S.C. § 364; and (B) Setting Final Hearing; and Pursuant to Final Hearing, (II) for Entry of Final Order Approving Post-Petition Financing on a Final Basis ("Motion")*, filed contemporaneously herewith. The proposed order on this Motion is attached as **Exhibit 1**. Capitalized terms not otherwise defined have the same meanings ascribed to them in the Motion.

3. From my review of the docket and from my involvement as Trustee in this case, I know the following which the Court may also take judicial notice of:

    a. On March 20, 2023, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, commencing the Case.

    b. On the Debtor's Schedule D [Docket No. 33], it listed three secured creditors—(a) Diverse Capital LLC with a claim in the amount of $1,224,810, (b) City Capital NY with a claim in the amount of $2,950,000, and (c) Fundura Capital Group with a claim in the amount of $2,100,000—with secured claims totaling $6,274,810. In addition to the secured creditors listed on Schedule D, there are numerous other UCC-1 financing statements appearing of record in a search of the California Secretary of State's database. A true and correct copy of a recent search reflecting other financing statements of record is attached as **Exhibit 2**.

    c. After the Office of the UST filed the *Motion by United States Trustee to Dismiss or Convert Case Pursuant to 11 U.S.C. § 1112(b)* [Docket No. 21] and creditors Debt Validation Fund II, LLC; MC DVI Fund 1, LLC; and MC DVI Fund 2, LLC filed the *Motion by DVF and MC DVI to Dismiss Chapter 11 Case Pursuant to 11 U.S.C. §§ 105, 305, 349, & 1112, or*

1

1  in the Alternative Convert This Case to Chapter 7 or Appoint a Trustee [Docket No. 44], on May 4,

2  2021, the Court entered the *Order Directing Unites States Trustee to Appoint Chapter 11 Trustee*

3  [Docket No. 58], thereby granting the UST's motion and directing the UST to appoint a Chapter 11

4  Trustee in the Case.

5          d.      Pursuant to the *Acceptance of Appointment as Chapter 11 Trustee* [Docket

6  No. 63], on May 8, 2023, I accepted my appointment as the Chapter 11 Trustee in the Case, and I

7  continue to serve in this capacity at this time.

8          e.      On June 16, 2023, my counsel filed an *Emergency Motion (I) For Entry of*

9  *Interim Order (A) Authorizing the Trustee to Obtain Post-Petition Financing and Superpriority*

10  *Administrative Claim Pursuant to 11 U.S.C. § 364 and (B) Setting Final Hearing; And Pursuant to*

11  *Final Hearing (II) For Entry of Final Order Approving Post-Petition Financing on a Final Basis*

12  [Docket No. 119] ("Initial Financing Motion") [Docket No. 119].  The Initial Financing Motion

13  asked the Bankruptcy Court to approve a maximum of $800,000.00 in post-petition borrowing to

14  fund essential expenses of the Estate, including employee salaries.  The Initial Financing Motion

15  also stated that the proposed post-petition lender already advanced $240,000.00 to the Estate to pay

16  outstanding employee wages ("First Advance") and that the maximum borrowing request included

17  the amount of the First Advance.

18          f.      The Court entered an interim order granting the Initial Financing Motion

19  [Docket No. 131] on June 22, 2023.  This Initial Interim Financing Order also set a final hearing on

20  the Initial Financing Motion for July 20, 2023, at 9:30 a.m.  Thereafter, Trustee received the First

21  Advance in the approximate amount of $240,000. I immediately authorized these funds to be used

22  to fund payroll. The Initial Advance, however, was insufficient to cover all expenses and payroll

23  through the end of June 2023.

24          g.      The Initial Interim Financing Order authorized the Trustee to enter into any

25  non-material amendment or modification to the note, including but not limited to agreeing on the

26  amount of the subsequent advance up to $450,000, without further Court order, provided that any

27  such non-material amendment or modification was set forth in writing and signed by the Trustee and

28

the lender, and provided that the Trustee provides notice of any such amendment or modification to the Court and the Office of the United States Trustee.

4.    Following the filing of the Initial Financing Motion and the entry of the Initial Interim Financing Order, Resolution Ventures, the lender identified in the Initial Financing Motion, told me it would not provide any additional funding to the Estate at that time.  Without the ability to borrow up to the remaining $560,000 ("Remaining Credit") that was sought in the Initial Financing Motion, I was unable to pay the necessary expenses of the Estate that needed be paid before the final hearing on the Initial Financing Motion.

5.    Therefore, I identified a third party that was willing to serve as a lender to the Estate on similar terms and conditions set out in the Initial Financing Motion.  Borrowing from this third party permitted the Estate to borrow up to the amount of the Remaining Credit under the terms set forth in that certain Super-Priority Promissory Note ("Additional Note"). The proposed Notes that are the subject of this Motion, the Additional Note, and the initial note with Resolution Ventures will be of equal priority and will be repaid *pari passu*.

6.    On June 29, 2023, I requested the Court to approve a proposed change in Lender on an ex parte basis pending the final hearing because there was no significant change in the terms of the borrowing, the amount that can be borrowed, or the position of the Estate. After conducting a hearing, on July 3, 2023, the Court entered its order approving the modification to the loan and allowing Trustee to obtain funds necessary to continue operations through the end of June 2023.

7.    At the same time as seeking financing to maintain the value of Debtor's assets, in an effort to ensure consumer clients received the services they required, (a) I developed critical terms of a potential sale to cure any potential violations of the Telemarketing Sales Rule, among other laws, whether applicable or not; (b) negotiated potential asset purchase agreements with multiple potential purchasers; and (c) worked diligently to have the current Sale Motion filed and scheduled for hearing prior to initial round of financing running out. While all possible efforts were made to achieve this goal, the complexity and conflicting interests at stake required considerable consideration and discussion by the multiple interested parties unfortunately prevented me from filing the Sale Motion prior to July 7, 2023. Given these constraints and the looming expenses and payroll that needed to be

paid in July, I filed an application for order shortening time on the Sale Motion, which was heard on July 10, 2023. At that hearing on the application for order shortening time, the Court set the hearing for the Sale Motion on July 21, 2023.

8.    Based on a July 21, 2023 hearing on the pending Sale Motion, there are not enough funds to cover the necessary expenses, personnel payroll, and consumer client legal expenses to operate and protect the value of Debtor's executory contracts and other estate assets pending the Sale Motion. All previous financing has almost been exhausted.

9.    At the July 10, 2023, hearing on my application for order shortening time to hear Sale Motion, the Court and counsel for Consumer Legal Group, PC appreciated the fact that allowing current operations to terminate would likely have a significant negative impact on the value of the Debtor's assets subject to the proposed sale. Additionally, shuttering current operations could cause the stalking horse bidder and other potential bidders to back out of the sale entirely, thereby severely impacting the availability of potential assets intended to benefit the Estate and all creditors including consumer creditors.  At this time, I anticipate that there will be three bidders at the Sale Hearing -- all of them have expressed that the termination of operations would have a negative effect on their bids, and it is my expectation and belief, based upon my years of experience as a Trustee, that such would be the case.

10.    Currently, I am in receipt of approximately $5.5 million dollars of revenue received from ACH pulls from the clients' accounts, which is being held in a blocked account pursuant to this Court's order. Thus, none of these funds are currently available to be used to finance operations. They are also not part of the proposed sale. As such, the only available means to ensure that I am able to pay the absolute bare minimum of expenses necessary to operate the business through the July 21, 2023, sale hearing date is to seek further financing. The amount of financing requested in this Motion $499,327.96. Attached as **Exhibit 5** is a true and correct copy of the budget prepared to reflect the expenses that must be paid during this time period.

11.    As of July 14, 2023, I have an accrued and owed payroll of approximately $364,000 and an accrued but not yet owed payroll of approximately $178,000. The new proposed loans will thus provide the estate with enough funds to get through the costs associated with the last payroll due

on July 14, 2023. It will not, however, provide enough funds to cover the payroll that will accrue prior to the Sale Hearing but not become payable until July 28, 2023. The only way that I will be able to pay the July 28, 2023, payroll will be to use sales proceeds or obtain additional financing. Plus, I have budgeted an additional approximate $125,000 of other expenses which includes malpractice insurance premiums. I remain hopeful that the sale will be approved at the Sale Hearing, eliminating the need for any further financing to cover this projected approximate $350,000 shortfall.

12.     To summarize, the budget reflects that I will incur $844,000 in expenses to operate through July 21, 2023, and the requested $499,327.96 of new loans will leave a shortfall of approximately $350,000. Most of this shortfall will be the payroll that must be paid on July 28, 2023.

13.     In ¶ 2(d) of the proposed APA signed July 7, 2023, and attached to the Sale Motion filed on July 7, 2023, the proposed Buyer (Consumer Legal Group) agreed to advance funds sufficient to cover payroll and operating expenses of the Debtor's business, which come due from the date of signature of this Agreement (in no event later than two days after Buyers July 12, 2023 site visit), through and including the Closing ("Additional Advances")…This provision would only apply if contingencies are waived by Buyer." After conducting their due diligence, however, CLG did not waive contingencies thus necessitating the proposed new financing.

14.     In order to cover expenses incurred through the Sale Hearing, I sought financing from at least six separate potential lenders (who are also all potential bidders), including Consumer Legal Group, PC, Resolution Ventures, Azzure Capital, Creditor Group, Panam Consulting, and StratCap Management. One of the potential lenders did not commit to any financing as it was still conducting its due diligence. Another potential lender made an offer for financing but only on terms that would prime all existing secured creditors and the initial two lenders.

15.     As a result, subject to Court approval, the best I have been able to negotiate are further credit facilities with the original two lenders: (1) Resolution Ventures in the amount of $249,663.98, as set forth in that certain Amended Super-Priority Promissory Note, which is attached as **Exhibit 3,** by and between the Trustee, on the one hand, and Resolution Ventures, on the other hand, and (2) Liberty Acquisitions Group, Inc. ("Liberty") in the additional amount of $249,663.98, as set forth in that certain Amended and Restated Super-Priority Promissory Note, which replaces the initial

Liberty note, which is attached as **Exhibit 4**, by and between the Trustee, on the one hand, and Liberty, on the other hand.

16.    I have negotiated the terms of the Notes in good faith and at arm's length and have attached the proposed notes in their anticipated final form.  As a result, the Lenders have agreed to advance up to $499,327.96 in the aggregate, to fund operations for a limited period until a lawful disposition and sale can be approved by the Court. I believe that the proposed terms of the Notes contain reasonable terms.

17.    Due to the exigent circumstances in obtaining Court approval of further financing prior to running out of funds before payroll became due on July 14, 2023, I diligently sought further financing -- indeed, over the last week, I, and my counsel at my direction, reached out to and discussed the possibility of lending with multiple parties. Now that two Lenders have emerged -- and made their commitments in the late afternoon and early evening on that date, I have caused my counsel to file this Motion to avoid any potential impact on the proposed sale of Debtor's executory contracts and assets, and the services being provided to consumer clients in the interim.

18.    I do not believe that any other financing other than that offered by the Lenders under the proposed Notes is available to me, particularly given the exigency of needing operating funds, the Court's order, and the UST's position that I cannot use the ACH revenues received from clients, which are currently held and segregated.

19.    This case has presented particularly difficult circumstances.  Debtor fraudulently transferred or attempted to fraudulently transfer assets worth tens of millions of dollars based on the offers to purchase I have received to date. The Court's temporary restraining order and then preliminary injunction authorized me to take control of the operations of the alleged transferees. Although the dozens of employees purportedly work for non-debtor entities, the Court's order that I control operations places the estate in the position of being liable for paying wages and other expenses.

20.    Absent recovering the assets from the alleged transferees and proposing to sell them for the benefit of the estate's creditors including the consumers damaged by debtor's conduct, the estate has no significant assets other than litigation claims. In my business judgment, I have a

fiduciary duty to determine if there is a sale which the Court would approve to realize benefit for the estate. Had I just chosen to terminate all operations and not attempt to recover fraudulently transferred assets, the estate would have missed out on tens of millions of dollars of potential recoveries.

21.    I understand that the Court has not yet ruled on whether any proposed sale can be lawfully completed. But, in the interim, the employees that are conducting the business of servicing the consumer clients deserve to be paid. My professionals and I have consented to the previous and proposed loans receiving super-priority administrative status to ensure that the employees are paid pending a determination regarding a sale.

22.    Since I served the Court's TRO on June 2, 2023, I am informed by my Head of Operations, Eeyah Tan that hundreds of clients have had their debts resolved or settled. As such, I believe that some portion of the approximate $5.5 million I have received in ACH pulls has been earned and will be payable to the estate. I am in the process of calculating the amounts of fees that have been earned and may bring a motion seeking court approval to take such funds out of trust. If granted, these funds can also be used to repay the super-priority administrative loans I have taken out to pay for operations.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

DATED: July 15, 2023                                   _____
                                                                        Richard A. Marshack