1  Christopher B. Ghio (State Bar No. 259094)
   Christopher Celentino (State Bar No. 131688)
2  Yosina M. Lissebeck (State Bar No. 201654)
   Jeremy B. Freedman (State Bar No. 308752)
3  **DINSMORE & SHOHL LLP**
   655 West Broadway, Suite 800
4  San Diego, CA 92101
   Telephone:  619.400.0500
5  Facsimile:  619.400.0501
   christopher.ghio@dinsmore.com
6  christopher.celentino@dinsmore.com
   yosina.lissebeck@dinsmore.com
7  jeremy.freedman@dinsmore.com

8  Special Counsel to Richard A. Marshack

9

10                **UNITED STATES BANKRUPTCY COURT**

11        **CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION**

12

13  In re:                                    Case No.: 8:23-bk-10571-SC

14  THE LITIGATION PRACTICE GROUP P.C.,       Chapter 11

15          Debtor.                           **POCKET BRIEF OF CHAPTER 11
                                              TRUSTEE RICHARD A. MARSHACK
16                                            ON COURT'S AUTHORITY TO
                                              APPROVE THE SALE MOTION [DK.
17                                            136] AND RELATED SUPPORT
                                              PURSUANT TO THE COURT'S ORDER
18                                            REQUESTING ADDITIONAL BRIEFING
                                              IN SUPPORT OF SALE MOTION [DK.
19                                            191]**

20                                            Date:   July 21, 2023
                                              Time:   10:00 a.m. (pacific time)
21                                            Judge:  Hon. Scott C. Clarkson
                                              Place:  Courtroom 5C
22                                                    411 W. Fourth Street
                                                      Santa Ana, CA  92701
23

24

25

26

27

28

# <u>TABLE OF CONTENTS</u>

## TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................... 1

II. ARGUMENT ................................................................................................................. 3

    **A.**    Trustee Has a Fiduciary Duty to Maximize the Value of the Estate Assets ........... 3

    **B.**    The Debtor's Business Is Not Illegal and If Any Pre-Petition Violations of Applicable Law Have Occurred They Can Be Cured or Remedied........................ 5

    **C.**    Oversight of the Bankruptcy Court and Enforcement of Applicable Law............ 11

    **D.**    Court Authority to Impose Protections and Conditions As a Condition of Sale ................................................................................................................... 13

    **E.**    Benefit of CLG's Post-Sale Legal Services ........................................................ 15

    **F.**    The Funds Held in Abeyance May be Distributed Upon Further Order of the Court ........................................................................................................... 16

# TABLE OF AUTHORITIES

**Cases**

240 N. Brand Partners v. Colony GFP Partners, Ltd. P'ship (In re 240 N. Brand Partners)
    200 B.R. 653 (B.A.P. 9th Cir. 1996) ........................................................................... 3

Cortese v. Edge Sols., Inc.
    Civil Action No. 04-0956 (DRH)(ARL), 2007 U.S. Dist. LEXIS 70687 (E.D.N.Y. Sep. 24,
    2007) ........................................................................................................................ 8

Garvin v. Cook Invs. NW, SPNWY, LLC
    922 F.3d 1031 (9th Cir. 2019) ........................................................................... 10, 12

Hillis v. Equifax Consumer Servs.
    237 F.R.D. 491 (N.D. Ga. 2006) ........................................................................... 7, 8

Hillis v. Equifax Consumer Servs.
    Nos. 1:04-CV-3400-TCB, 1:07-CV-314-TCB, 2007 U.S. Dist. LEXIS 48278, at *43 (N.D.
    Ga. June 12, 2007) ................................................................................................... 7

In re Accomazzo
    226 B.R. 426 (D. Ariz. 1998) ................................................................................... 3

In re Alaska Fishing Adventure, LLC
    594 B.R. 883 (Bankr. D. Alaska 2018) ..................................................................... 3

In re Ariz. Heart Inst., Inc.
    No. 2:10-bk-24062-GBN, 2010 Bankr. LEXIS 5841 (Bankr. D. Ariz. Sep. 30, 2010) ............ 14

In re Cwnevada LLC
    602 B.R. 717 (Bankr. D. Nev. 2019) ......................................................................... 2

In re Food City, Inc.
    110 B.R. 808 (Bankr. W.D. Tex 1990) ..................................................................... 12

In re Freedom Industries, Inc.
    Case No. 14-bk-20017 (Bankr. S.D. W.Va. Jan. 17, 2014) ....................................... 1

In re Hacienda Co., LLC
    647 B.R. 748 (Bankr. C.D. Ca. 2023) ............................................................... 10, 12

In re Hacienda Co., LLC
    647 B.R. 748 (Bankr. C.D. Ca. 2023) ....................................................................... 5

In re Lionel Corp.
    722 F.2d 1063 (2d Cir. 1983) ................................................................................. 13

In re PGX Holdings, Inc., et. al.
    Case No. 23-10718 (Bankr. Del. 2023) ................................................................... 10

In re Purdue Pharma, L.P
    Bankr. S.D.N.Y. Case No. 19-23649 (RDD) ........................................................... 14

In re Wilde Horse Enterprises, Inc.
    136 Bankr. 830 (Bankr. C.D. Cal. 1991)...................................................................3

In re WinPar Hospitality Chattanooga, LLC
    404 B.R. 291 (Bankr. E. D. Tenn. 2009)..............................................................11

Jackson v. Tel. Chrysler Jeep, Inc.
    No. 07-10489, 2009 U.S. Dist. LEXIS 30550 (E.D. Mich. Mar. 31, 2009) ..............7

Midlantic Nat'l Bank v. New Jersey Dept. of Envt'l Prot.
    474 U.S. 494, 106 S.Ct. 755, 88 L. Ed. 2d 859 (1986) ....................................1, 3, 11

Missouri, Kansas & Texas Ry. Co. v. May
    194 U.S. 267, 48 L. Ed. 971, 24 S. Ct. 638 (1904) ..............................................13

Naify v. Pacific Indemnity Co.
    11 Cal.2d 5, 76 P.2d 663 (1938) ..............................................................................14

Plattner v. Edge Solutions, Inc.
    422 F. Supp. 2d 969 (ND Ill. 2006) .........................................................................8

Reynolds v. Credit Sols., Inc.
    541 F. Supp. 2d 1248 (N.D. Ala. 2008) ...................................................................8

Stout v. FreeScore, LLC
    743 F.3d 680 (9th Cir. 2014)...................................................................................8

White v. Fin. Credit Corp.
    2001 U.S. Dist. LEXIS 21486 (N.D. Ill. Dec. 20, 2001) .........................................7

**Statutes**

11 U.S.C. § 105 ............................................................................................................14

11 U.S.C. § 1106 ..........................................................................................................14

11 U.S.C. § 332 ............................................................................................................14

11 U.S.C. § 333 ............................................................................................................14

11 U.S.C. § 362(a) ........................................................................................................11

11 U.S.C. § 362(b)(4) ...................................................................................................11

11 U.S.C. § 363(b) .........................................................................................................3

11 U.S.C. §109...............................................................................................................1

12 U.S.C. § 5566 ...........................................................................................................9

12 U.S.C. § 5655(2) .......................................................................................................9

15 U.S.C. § 1679(a)(3) ...............................................................................................6, 7

18 U.S.C. § 981 ............................................................................................................11

**Treatises**

Bd. of Govs. of the Fed. Reserve System
   G.19, Consumer Credit (Jan. 2021) ........................................................................ 13

Douglas Baird, Bankruptcy's Uncontested Axioms, 108 Yale L.J. 573 (1998) ........................... 1

Elizabeth Warren, Bankruptcy Policy
   54 U. Chi. L. Rev. 775 (1987)................................................................................ 1

**<u>Regulations</u>**

16 C.F.R. § 310.4(a)(2) ............................................................................................ 6

California Model Rule 1.17........................................................................................ 8

Telemarketing and Consumer Fraud and Abuse Prevention Act 15 U.S.C. § 6110 ..................... 6

Telemarketing Sales Rule 16 C.F.R. § 1679 ................................................................... 6

Telemarketing Sales Rule 16 C.F.R. § 310.3 ................................................................... 6

Telemarketing Sales Rule 16 C.F.R. § 310.4 ................................................................... 6

# I.

## **INTRODUCTION**

Like the Phoenix that rises from the ashes, Chapter 11 Bankruptcy is intended to re-organize, reform, and correct wrongful, imperfect conduct leading to broken promises and contractual obligations that precipitated the Bankruptcy in order to capture the greatest value of the business for the benefit of the estate, creditors and consumers affected by it using the tools available to the Trustee and the Court –in this case the sale of debtor's assets and reformation of legal services to be provided to consumers. See Douglas Baird, Bankruptcy's Uncontested Axioms, 108 Yale L.J. 573 (1998); see also Elizabeth Warren, Bankruptcy Policy, 54 U. Chi. L. Rev. 775 (1987).  As with many Bankruptcy cases, including the matter at hand, many cases are filed due to the consequences of the debtor's prior violations of state or federal law and/or other wrongful conduct.  Whether the debtor is (i) a coal company that is charged with violations of environmental laws; (ii) a pharmaceutical company, like Purdue Pharma, that admitted to numerous criminal violations of federal law regarding the distribution of its products; (iii) an organization involved in condoning or concealing harassment or abuse of employees or members; or (iv) an individual debtor with a construction business that has used customer deposits for living expenses or failed to pay court imposed domestic support obligations, the most fundamental thematic determination made by Congress is that individuals or companies ) are given the opportunity to reorganize or restructure their affairs The driving factors in most bankruptcy cases are the best interests, and fair and equitable treatment, of creditors.   In exchange for this great opportunity, a debtor in bankruptcy must agree to "walk the straight and narrow" subject to the oversight of the Bankruptcy Court and other interested parties including the Office of the United States Trustee and creditors.  If the doors of the Bankruptcy Court were barred to debtors who violated or allegedly violated one or more civil or criminal laws before filing a petition for relief, bankruptcy cases would be few and far between. [1]

---

[1] "It is worth noting, , that bankruptcy courts have a long history of considering cases involving debtors whose activities and operations have included past, present and possibly ongoing violations of applicable non-bankruptcy, civil and criminal laws. See, e.g., Midlantic Nat'l Bank v. New Jersey Dept. of Envt'l Prot., 474 U.S. 494, 106 S.Ct. 755, 88 L. Ed. 2d 859 (1986) (voluntary Chapter 11 of waste oil processor that possessed leaking containers of cancer-causing substances in violation of state and local law was converted to Chapter 7, rather than dismissed); In re Freedom Industries, Inc., Case No. 14-bk-20017 (Bankr. S.D. W.Va. Jan. 17, 2014) (voluntary Chapter 11 filed by chemical

1

1       While the doors of the courthouse may be open to those debtors in both civil and criminal

2 trouble, the Bankruptcy Code recognizes that the management of such debtors in chapter 11 may

3 need to be replaced with a third party trustee.  Governed by a fiduciary duty owed to all parties in

4 interest, a chapter 11 trustee is charged with using his or her business judgment to determine a path

5 forward that will be in the best interests of all parties, and especially the creditors of the estate.  In

6 this case, a disagreement has arisen about the best path forward for the debtor's estate[2] and its

7 creditors.  Since the appointment of Richard A. Marshack as the Chapter 11 Trustee in this case

8 ("Trustee") he and his  retained professionals have devoted substantial time to identifying the

9 relevant facts and reviewing applicable law to fulfill his fiduciary duties to the creditors of the

10 within estate.  Based on the facts known to him and the applicable law, the Trustee, in his business

11 judgment, negotiated the terms and conditions of a Proposed Sale of the debtor law firm to a good

12 faith purchaser that not only will reform contracts with consumer clients to comply with all

13 applicable laws, but also will allow and authorize oversight of operations following the sale.

14 Fundamentally, the sale preserves the individual choice of the law firm's clients, in conjunction

15 with applicable law, to agree to have their legal services provided by the proposed buyer. The

16 proposed sale will provide the Debtor's consumer clients with the choice of legal representation,

17 representation they need and sought out in their battle with over-aggressive credit agencies.

18 Simultaneously, it and will provide substantial consideration to the Estate to create a fund from

19 which Trustee can propose a plan to pay creditors of the estate including consumers damaged by

20 Debtor's actions.   A sale of the Debtor's assets with the oversight and consumer protections

21 contained therein -- including post-closing monitoring by a trained professions -- is the only

22 decision consistent with the Trustee's fiduciary duty.

23 ///

24 ///

25 ///

26 ///

27

28 producer after chemical spill contaminated Elk River; Chapter 11 plan of reorganization confirmed even though the
debtor and officers were subsequently sentenced for criminal violations of the federal Clean Water Act and federal
Refuse Act)." <u>In re Cwnevada LLC</u>, 602 B.R. 717, 728 n.25 (Bankr. D. Nev. 2019).

[2] Unless otherwise stated capitalized terms shall have the meaning given to them in the Sale Motion [Doc. No. 136].

## II.

## ARGUMENT

The Trustee submits this Pocket Brief in accordance with this Court's Order Requesting Additional Briefing In Support Of Sale Motion, Docket no. 206.  The Trustee incorporates herein by reference the papers and pleadings filed in support of the Motion Of Trustee Richard A. Marshack For Entry Of Order Order (A) Approving Sale, Subject To Overbid, Of Assets Free And Clear Of All Liens, Claims, Encumbrances And Interests Pursuant To 11 U.S.C. Section 363(b) And (B) Approving Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases And Other Agreements Filed July 7, 2023 (Docket [191]) (The "Sale Motion").

A.    **Trustee Has a Fiduciary Duty to Maximize the Value of the Estate Assets**

As a fiduciary for <u>all</u> parties in interest, trustees have a duty to determine the viability of a debtor's operations, the value of its assets, and the best method to realize a return for the estate.[3] Because 11 U.S.C. § 363(b) protects the interests of creditors in the estate assets, a trustee or debtor seeking to sell assets outside the ordinary course of business must not only show the sale is supported by  a valid business justification, but that the sale is also proposed in good faith.[4]  The Trustee's "business judgment" to pursue a sale is subject to the same deference and standard of review as that of a debtor-in-possession when considered by the Court.[5]  In this context, "good faith" not only goes to the consideration given but also to the "integrity of the transaction."[6]  It is well-settled, however, that the Trustee cannot ignore applicable nonbankruptcy law in thesame manner that the owner or possessor thereof would be bound to do if in possession thereof."  <u>See Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot.</u>, 474 U.S. 494, 502, 106 S. Ct.  755, 760 (1986) (stating "Congress has repeatedly expressed its legislative determination that the trustee is not to have *carte blanche* to ignore nonbankruptcy law.").

---

[3]  <u>See In re Accomazzo</u>, 226 B.R. 426, 429 (D. Ariz. 1998) (stating  "a bankruptcy trustee owes a fiduciary duty to creditors of, and parties-in-interest to, a bankruptcy estate.").

[4]  <u>See 240 N. Brand Partners v. Colony GFP Partners, Ltd. P'ship (In re 240 N. Brand Partners)</u>, 200 B.R. 653, 659 (B.A.P. 9th Cir. 1996) citing <u>In re Wilde Horse Enterprises, Inc.</u>, 136 Bankr. 830, 841 (Bankr. C.D. Cal. 1991).

[5]  <u>See In re Alaska Fishing Adventure</u>, *LLC*, 594 B.R. 883, 890 (Bankr.  D. Alaska 2018).

[6]  *Id.* at 659. "'Good faith' encompasses fair value, and further speaks to the integrity of the transaction. Typical 'bad faith' or misconduct, would include collusion between the seller and buyer, or any attempt to take unfair advantage of other potential purchasers."

1   Governed `by the above standards, Trustee having evaluated the condition of the Debtor,

2   its assets, and the market's interest in those assets, has filed the Sale Motion to approve a sale of

3   those assets outside the ordinary course of business.  Because the assets of the Debtor must be sold

4   promptly, Trustee has requested this Court to approve a purchase offer from his "stalking horse"

5   bidder, Consumer Law Group, PC ("CLG") - a licensed and established law firm in the consumer

6   debt arena.  While an "as is, where is" sale of the Debtor's assets would fulfill the Trustee's

7   fiduciary duty to creditors, it must be evaluated in conjunction with the Trustee's obligations under

8   the applicable non-bankruptcy law.  Recognizing the necessary balancing of interests, Trustee

9   structured the Proposed Sale to require reformation of the Debtor's existing consumer client

10  contracts as a condition of any such assignment, to stipulate to compliance with applicable law

11  going forward, and to mandate and fund continuing oversight by a court-appointed professional.

12  Purchasers of assets in bankruptcy are frequently required to make similar representations and

13  warranties to the court and parties in interest.[7]  The Trustee has negotiated in good faith and at

14  arm's length with CLG and other interested overbidders with respect to the terms of the Proposed

15  Sale, CLG is willing both to pay significant value for the Debtor's assets, and to provide value to

16  the Debtor's clients through the provision of future legal services; the choice of the consumer

17  client, inherent in the Trustee's proposal, stands in stark contrast to the opinions of those who

18  would force the Trustee to attempt abandonment of the thousands of this law firm's clients and

19  leave their interests unprotected from the pernicious collection efforts of creditors.

20  Despite the proposed protections built into all relevant sale documents, Trustee anticipates

21  the objections to the Sale Motion.  While not filed in direct response to the Sale Motion, the UST's

22  Motion to Convert [Doc. No. 218] suggests that it will oppose the Proposed Sale because it

23  mistakenly believes (i) the Debtor's business itself is *per se* illegal and is incapable of being sold

24  in bankruptcy, and (ii) this Court has no power to reform or change the Debtor's business to bring

25  it into compliance with applicable law.  Both beliefs are incorrect as a matter of law and fact.

26  ///

27

28  [7] For example, the prospective purchaser of a coal mine or factory that was in violation of environmental laws must assure the Court and interested parties that it will cease any prohibited activity and assume the burden of remediation of the existing violations.

**B.**     **The Debtor's Business Is Not Illegal and If Any Pre-Petition Violations of Applicable Law Have Occurred They Can Be Cured or Remedied.**

Prior to bankruptcy, the Debtor was a law firm representing clients in consumer debt matters.  There is nothing *per se* illegal about this business. The consumer protection laws that Debtor allegedly violated do not prohibit debtor's operations.  Instead, it regulated the operations so that the consumers would be protected. While there is evidence supporting certain allegations that management of the Debtor violated applicable law in its prepetition operations, the Debtor was a law firm that earned fees when it performed work for clients.  As detailed in the Declarations of R. Reed Pruyn and Ty Carss submitted herewith,  clients paid the Debtor an agreed upon fee each month for the provision of legal services designed to challenge, and which resulted in many successful challenges, to the collection activity of clients' credit card creditors. Pruyn Declaration at ¶¶ 7-12.  In many cases, the law firm pursued resolutions where the creditor agreed the debt was uncollectable or the law firm successfully invalidated the creditors' ability to collect the debt. Under applicable law, the challenge of the enforceability of the debt by the law firm immediately tolled the accrual of interest; some client credit card interest rates were as high as 29.9%. Pruyn Declaration at ¶¶ 10-11.   In other cases, through the provision of legal services, where the debt could be enforced by the creditor, the law firm engaged in settlement discussions to the benefit of the consumer client.  Pruyn Declaration at ¶¶ 9-12; Carss Declaration at ¶¶ 8-10.  For additional information concerning the operations of LPG, please see the Declaration of Peter Schneider, Dkt. No. 191-5, incorporated herein by reference.  CLG is offering to purchase the files of the Debtor's clients, is willing to perform the same legal services, and is willing to comply with all the protections and restrictions contained in the APA, which is the type of sale that often happens in bankruptcy.[8]

In its Motion to Dismiss, the UST asserts that all of the Debtor's consumer contracts were procured under false pretenses, are void, and cannot be transferred to a purchaser.  The UST claims

---

[8] See In re Hacienda Co., LLC, 647 B.R. 748, 754-755 (Bankr. C.D. Ca. 2023) (noting that many debtors enter bankruptcy under the cloud of criminal activity from large corporations like Pacific Gas & Electric Co., Enron Corporation, and Bernie Madoff to small businesses who have violated health and safety regulations or failed to pay taxes when required.)

that that the Debtor was and is subject to and has of the Petition Date was in violation of the (i) Telemarketing Sales Rule 16 C.F.R. § 310.3 and 310.4 ("TSR") enacted through the Telemarketing and Consumer Fraud and Abuse Prevention Act 15 U.S.C. § 6110 *et. seq.* and (i) the Credit Repair Organizations Act 15 U.S.C. § 1679 *et. seq.* ("CROA").  As set forth in the Declaration of Ty Carss/Eeyah Tan, Trustee questions the postpetition applicability of the TSR and CROA. Nevertheless, and out of an abundance of caution, the Proposed Sale reforms the contracts to bring them into compliance with applicable law, including, as necessary, the TSR and CROA. *See infra,* the "Safeguards."

Based on his review of the facts set forth in the Carss and Tan Declarations, the Trustee does not believe the Debtor is or was a "debt relief service" as defined in 16 C.F.R. §310.2 of the TSR because it did not represent it would "renegotiate, settle, or in any way alter the terms of payment or other terms of the debt between a person and [a creditor]."  Similarly, the Debtor did not tell consumers it would seek "to remove derogatory information from, or improve, a person's credit history, credit record, or credit rating" as set out in 16 C.F.R. § 310.4(a)(2).  To the contrary, the record indicates that consumers were initially advised that their credit would be worse if they retained the Debtor to challenge the validity and enforceability of their credit card debts.  See Status Conference Report at Dkt. 45, Exhibit 6 to the Serrano Decl., Case No. 8:23-ap-01046-SC, the "QC Script" ("Depending on your current credit standing, this program could possibly have a temporary negative effect on your credit."), incorporated herein by reference

The CROA governs entities who accept fees for the purpose of "(i) improving any consumer's credit record, credit history, or credit rating; or (ii) providing advice or assistance to any consumer with regard to any activity or service described in clause (i)."  15 U.S.C. § 1679(a)(3).  Again, this was not the Debtor's business – Debtor always was and is a law firm retained to challenge the validity and enforceability of credit card debts.  As stated in the Carss, Tan and Pruyn Declarations, many of the LPG consumer files of clients that are subject to the proposed sale have been through or are in some stage of litigation. See Tan declaration at p. 2.   In such litigation, it is a lawyer providing legal services in challenging validity and enforceability of debt.  While a consumer's engagement of the Debtor may have resulted in a debt being waived or

settled, which tangentially caused a change in the consumer's credit rating, this was not the purpose of the Debtor's engagement and therefore separate and distinct from the CROA's purview. See e.g., Jackson v. Tel. Chrysler Jeep, Inc., No. 07-10489, 2009 U.S. Dist. LEXIS 30550 *20 (E.D. Mich. Mar. 31, 2009) (Finding a reasonable juror could not find that the Defendants met the definition of "credit repair organization" under the CROA where Plaintiffs had not offered any evidence which suggest that the Defendants (1) held themselves out as a credit repair agency, (2) offered to "repair" bad credit after the fact, or (3) "crossed the boundary from credit counseling to credit repair" in their dealings with the Plaintiffs). Tan Declaration at P. 1.

It is apparent from Congressional findings and legislative history that the "definition of a credit repair organization is narrower than a cursory reading of the statute would indicate… Congress did not intend for the definition of credit repair organization to sweep services that offer only prospective credit advice to consumers or which provide information to consumers so that they can take steps to improve their credit in the future." Hillis v. Equifax Consumer Servs., 237 F.R.D. 491, 514 (N.D. Ga. 2006); see also Hillis v. Equifax Consumer Servs., Nos. 1:04-CV-3400-TCB, 1:07-CV-314-TCB, 2007 U.S. Dist. LEXIS 48278, at *43 (N.D. Ga. June 12, 2007) *(finding that the organization did not fall within the "credit repair organization" definition of the CROA).*

Notably, the FTC, the agency charged with enforcing the CROA, has long recognized the value in helping consumers maintain an accurate credit file and combating identity theft, noting that there is "little basis on which to subject the sale of credit monitoring and similar educational products and services to CROA's specific prohibitions and requirements, which were intended to rein in fraudulent credit repair." *See* FTC Letter to U.S. Congressional Representative Edward R. Royce, July 1, 2005.

"The" purpose of the Debtor's engagement must be to improve the credit records, anything less will not suffice. See White v. Fin. Credit Corp., 2001 U.S. Dist. LEXIS 21486, at *16 (N.D. Ill. Dec. 20, 2001) (refusing to find that Defendant was a credit repair organization even though it offered to improve credit history, because that statement was ancillary to the defendant's main business); see also 15 U.S.C. § 1679(a)(3). Purpose and result cannot be conflated in order to subject such businesses to such statutes. Statutes are not interpreted in a vacuum. White, at *15.

1    Courts have recognized the CROA's inapplicability to businesses who "promis[e] rewards for

2    future creditworthiness." <u>Hillis v. Equifax Consumer Servs.</u>, 237 F.R.D. 491, 515 (N.D. Ga. 2006).

3         Where the focus is resolving debts or developing creditworthy behavior is the primary

4    purpose, the organization is not a "credit repair organization." <u>Plattner v. Edge Solutions, Inc.</u>, 422

5    F. Supp. 2d 969 (ND Ill. 2006). The <u>Plattner</u> case involved an organization who offered various

6    debt payment and debt validation services along with a credit restoration program. *Id.* at 976. The

7    court found that the Congressional intention could not have been for the CROA's application to

8    impact entities who provided these services. *Id.* at 975. The nature of these services will inevitably

9    cause an improvement or repair to a consumer's credit record, history, or rating. *Id.* To mandate

10   application of the CROA would frustrate the very purpose of the CROA – to rein in fraudulent

11   repair. FTC Letter to U.S. Congressional Representative Edward R. Royce, July 1, 2005.

12   However, other cases have criticized the distinction that the above cases draw between entities

13   whose primary purpose is credit improvement with entities "who promise better credit as collateral

14   consequence of settling debt has having no basis in § 1679(a)(3)." <u>Reynolds v. Credit Sols., Inc.</u>,

15   541 F. Supp. 2d 1248, 1255 (N.D. Ala. 2008) (quoting <u>Cortese v. Edge Sols., Inc.</u>, Civil Action

16   No. 04-0956 (DRH)(ARL), 2007 U.S. Dist. LEXIS 70687, at *17 (E.D.N.Y. Sep. 24, 2007).  In

17   <u>Stout v. FreeScore, LLC</u>, 743 F.3d 680, 687 (9th Cir. 2014), the Ninth Circuit Court of Appeals

18   criticized the logic of Plattner and Hillis in rejecting an argument that "credit repair organization"

19   as defined in the statute did not include entities that provide credit information to consumers for a

20   fee so the consumers can independently improve individual credit records -- LPG DOES NOT

21   PROVIDE THIS SERVICE TO ITS CONSUMER CLIENTS. Tan Declaration at ZZZ.  These

22   cases do not involve law firms performing legal services for clients and inside the context of LPG's

23   debt management services, the CROA is inapplicable.

24   <u>The Safeguards</u>

25        Despite the Trustee's inapplicability analysis, the Trustee nevertheless requires, pursuant

26   to the terms of the APA, a multifaceted failsafe in addition to the two-step cure. As to the cure,

27   the APA requires, in accordance with California Model Rule 1.17, a ninety (90) day opt out period

28   for the consumer clients to decide if they want to opt out of the sale. Second, the APA, requires a

reformation of the legal services agreement, with the Modified Legal Services Agreement included therewith, such that additional protections are afforded to consumers which automatically render the CROA and TSR, to the extent not already, inapplicable by removing telemarking services from the practice as a whole *and* restricting fees to an "as earned" model for provision of legal services. If a response to the opt-out is not received, and a reformed contract is not executed, the APA requires compliance with TSR and/or CROA, as applicable, until the consumer client signs the reformed contract. Finally, a court-appointed Monitor will oversee and ensure the compliance of the Good Faith Purchaser for one (1) year after the Sale. These, of course, are in addition to the fact that the Good Faith Purchaser is a compliant, established law firm in a similar practice area, providing an upfront payment to the estate.

As a further protective mechanism, nothing herein attempts to circumvent the enforcement provisions of the TSR and CROA.  Depending on the statute and circumstances, the CFPB, FTC, private citizens, and attorneys general can enforce these statutes.  When the CFPB finds violations of federal consumer financial law, as defined in the statute, it can request a court rescind or reform the applicable agreements in addition to imposing monetary sanctions pursuant to 12 U.S.C. Section 5655(2).  If criminal violations are discovered, they can forward such information to the Attorney General pursuant to 12 U.S.C. Section 5566.  Stated simply, if the CFPB or the FTC filed suit against the Debtor based on the violations alleged by the Trustee, the remedies for the violations would be focused on (i) stopping the alleged actions (already done by the Trustee,) (ii) reformation or rescission of the offending agreements (which is exactly what the Trustee requires in the APA) and (iii) recovery of improper fees or payments (which is exactly what the Trustee's proposed plan will propose for the monies collected from the sale).  Unlike the statutory remedies available for federal agencies, the Trustee's Proposed Sale is beneficial to consumer clients: whereas the CFPB can impose a fine to be collected by the government, the Trustee's sale creates a mechanism for creditors to recover something on their claims for damages.  So a finding that the Debtor's pre-petition operations violated or may have violated certain provisions of the CFPA, like the TSR and CROA or state consumer protection laws, does not mandate conversion and

1   ignores the ability of debtors in bankruptcy to change or reform their business practices to comply

2   with applicable law.

3   The Post-Petition Distinction

4           In its Motion to Dismiss, the UST does not distinguish between a debtor with a legal

5   business that was operated illegally and a debtor that operated an illegal business.  The Debtor,

6   like many other companies in bankruptcy, is in the first group; the debtors involved in the

7   marijuana cases cited by the UST are in the second group.  The pending bankruptcy case of In re

8   PGX Holdings, Inc. and its affiliated debtors, including a law firm (collectively "PGX") is very

9   similar to the Debtor's case.[9]  According to the Declaration filed in Support of its First Day

10  Motions,[10] PGX,  including an affiliated law firm, provided credit repair and credit education to

11  consumers prior to filing for bankruptcy.[11]  In 2019, the Consumer Financial Protection Bureau

12  ("CFPB") filed suit against PGX claiming it had violated the TSR and had engaged in other false

13  and deceptive practices.  Following entry of partial summary in favor of CFPB, PGX changed its

14  business structure and operations to comply with the court's judgment.  After transforming its

15  business, the PGX companies filed their chapter 11 bankruptcy cases; PGX is currently seeking

16  Bankruptcy Court approval of a sale of assets as a going concern.  As of July 17, 2023, the only

17  objection to the proposed sale of PGX's business is to the size of a proposed break-up fee.[12]

18          Even when the debtor has engaged in an illegal business like growing or selling marijuana,

19  bankruptcy courts have recognized that a debtor can transform its business, stop violating

20  applicable law, and remain in bankruptcy. See Garvin v. Cook Invs. NW, SPNWY, LLC, 922 F.3d

21  1031, 1034 (9th Cir. 2019) (affirming confirmation of a chapter 11 plan where the debtor rejected

22  its lease with a tenant involved in marijuana as part of its chapter 11 plan.); In re Hacienda Co.,

23  LLC 647 B.R. 748 (Bankr. C.D. Ca. 2023) (denying the US Trustee's Motion to Dismiss where a

24  plan would be funded through the liquidation of stock in a Canadian cannabis company); and In

25  re Johnson, 532 B.R. 53 (Bankr. W.D. MI. 2015)(permitting a chapter 13 debtor to propose a plan

26  based on Social Security income alone while enjoined from growing medical marijuana in

27

28
[9] In re PGX Holdings, Inc., et. al. Case No. 23-10718 (Bankr. Del. 2023).
[10] Declaration of Chad Wallace, Chief Executive Officer of PGX Holdings, Inc. [Doc. No. 12].
[11] Unlike this case, the services provided by PGX were unquestionably within the applicability of the CFPA.
[12] See Objection of US Trustee at Dkt. No. 101.

bankruptcy).  Under these cases, even if the Debtor's pre-petition business was illegal as alleged by the UST and contested by the Trustee, the Trustee has halted any such illegal activities and the terms of the Proposed Sale both (i) create a new legal services agreement between CLG and the Debtor's customers that has no connection to telemarketing and is compliant with applicable law and (ii) permit consumers to opt out of the transfer of their representation by CLG in accordance with applicable law.  The newly crafted legal service agreements will comply with state bar ethical provisions and cannot be said to violate consumer protection laws since their formation will be overseen by this Court.  If approved, the Proposed Sale will reach the same outcome that the CFPB could have obtained if it was victorious in a lawsuit against the Debtor outside bankruptcy.  While the Trustee believes significant issues of fact exist regarding the applicability of statutes like the TSR and CROA to the Debtor's business, the Trustee asserts that the Debtor's possible pre-petition violation of these statutes does not block the Proposed Sale.  In fact, the Proposed Sale will reform and restructure the consumer client contracts such that they will comply with applicable law when transferred to CLG.  With the reformation of the consumer client contracts and the other consumer protections, there is no need to throw the baby out with the bath water.

C.      **Oversight of the Bankruptcy Court and Enforcement of Applicable Law.**

As the Supreme Court noted in Midtlantic, the Bankruptcy Code sits atop applicable federal and state law, and a debtor in bankruptcy is not excused from complying with applicable law.  But the filing of a bankruptcy case does not transform a bankruptcy court into the only party with oversight over the pre- and post-petition actions of a debtor.  This concept is explicit in the Bankruptcy Code with 11 U.S.C. § 362(b)(4) excluding enforcement of criminal matters, including criminal restitution,[13] from the stay; with 11 U.S.C. § 363(d) requiring a debtor to sell assets as they would be sold outside of bankruptcy; and with the acknowledgement that the stay afforded a corporate debtor does not shield its officers and directors from illegal acts or investigation.  Prior management of the Debtor has been removed and will have no involvement with CLG or the consumer client files going forward; indeed, CLG so represents in the APA.  Nothing in the APA

---

[13] See  In re WinPar Hospitality Chattanooga, LLC, 404 B.R. 291, 296 (Bankr. E. D. Tenn. 2009) (Title 11 U.S.C. § 362(a) did not stay civil forfeiture action under 18 U.S.C. § 981 to seize $7.2 million proceeds from estate's sale of the debtor's only asset — a piece of real estate subject to forfeiture because it was purchased with the proceeds of criminal activities).

1   will hinder or block any investigation or enforcement actions against prior management whether

2   by applicable state bar associations, the Office of the United States Attorney, or the Office of any

3   State Attorney General.  Nothing in the proposed sale gives any party a release or enjoins any

4   enforcement action against the Debtor's former insiders.

5       The Ninth Circuit has expressly stated that oversight over a bankruptcy case does not

6   transform a bankruptcy judge into an "ombudsman without portfolio, gratuitously seeking out

7   possible 'illegalities' in every plan" finding that such an obligation would be 'inimical to the basic

8   function of bankruptcy judges in bankruptcy proceedings'."[14]  In his Hacienda Co. LLC decision,

9   Judge Bason stated his view of the "shared authority" of state and federal actors vested with a

10  variety of enforcement and oversight tools compared to the binary options of dismissal or

11  conversion afforded to a bankruptcy judge stating

> [T]his Bankruptcy Court notes that there are many non-bankruptcy tools that can be used to address any illegal activity. Remedies can be sought, in appropriate situations, by prosecutors, private attorneys general, class action representatives, individual plaintiffs, and others, such as local, state, and national governments, to address any violations of nonbankruptcy law in a more nuanced and targeted manner than the blunt tool of dismissing bankruptcy cases. Again, the availability of such alternatives reinforces this Bankruptcy Court's interpretation of § 1112(b) as providing some discretion: dismissal is not the only remedy.

17  Id. at 757.

18      While the UST and other parties in interest may espouse in good faith their concerns that

19  the pre-petition actions of the Debtor and its insiders violated applicable law, these alleged

20  violations did not transform all of the Debtor's attorney-client relationships into criminal

21  enterprises beyond redemption.  As noted in the Declaration of Reed Pruyn, and other clients

22  submitted herewith, the Debtor had and has a viable, legitimate business that assisted consumers

23  in contesting the validity and enforceability of debts placed in collection and, when applicable,

24  asserted the consumer's affirmative claims against the creditor/debt collector.   As set forth in the

25  these declarations, these services benefitted many.  Indeed, Manager Eeyah Tran, who is the

26  custodian of records and office manager of the Debtor, notes that hundreds of consumer cases were

27  successfully resolved since the Trustee was appointed. Asserting these affirmative claims can not

28

---

[14] Garvin v. Cook Invs. NW, SPNWY, LLC, 922 F.3d 1031, 1034 (9th Cir. 2019) quoting In re Food City, Inc., 110 B.R. 808, 812 (Bankr. W.D. Tex 1990).

1  only lead to compromise or waiver of the debt, but may also provide a cash payment to the

2  consumer client in connection with the settlement of the litigation. Declaration of Pruyn Tan

3  Declaration at p. 1. There is clearly a need for the legitimate legal services the Debtor provided

4  and that CLG will provide to the Debtor's consumer clients if the Sale is approved.  These legal

5  services prevent "banks and credit card subsidiaries … taking advantage of struggling families …

6  across the nation".[15]  These legal services give consumers a chance to challenge the high interest

7  rates, fees, and predatory practices of lending institutions.  As detailed in the Pruyn Declaration, a

8  $30,000 debt with a thirty percent interest rate (30%) would grow into a $40,000 debt (excluding

9  fees and costs) within a year assuming no payments were made and the validity of the debt was

10  not challenged.  Furthermore, the amount of credit card debt and the interest rates charged on this

11  debt are only increasing.[16]

12  **D.      Court Authority to Impose Protections and Conditions as a Condition of Sale**

13       The terms of the Proposed Sale and the ongoing reporting and oversight obligations provide

14  retrospective transparency to the Debtor's actions and prospective transparency to CLG's handling

15  of the transferred client files.  Because the UST believes the Debtor was engaged in an illegal

16  business, it believes this Court is without power to reform the consumer client contracts as

17  necessary to permit the Proposed Sale.  See Motion to Dismiss, Page 23.  However, this position

18  ignores the "substantial freedom" given to bankruptcy judges when considering sales of assets

19  outside the ordinary course.  As the Second Circuit stated in re Lionel, "a bankruptcy judge must

20  have substantial freedom to tailor his orders to meet differing circumstances" to give "some play

21  … for the joints of the machine."[17]  See also In re Chinichian, 784 F.2d 1440, 1443 (9th Cir. 1986).

22  While there may be a factual dispute between the UST and the Trustee regarding the legality and

23

24  [15] Whitehouse and Warren Fighting to Protect Consumers from Abusive Lending: Senators Introduce Legislation to Restore States' Role in Limiting Credit Card Interest Rates," *online at* http://www.warren.senate.gov/?p=press_release&id=170.

25  [16] See, Exhibit B to the Request for Judicial Notice filed concurrently herewith;  Bd. of Govs. of the Fed. Reserve System, G.19, Consumer Credit (Jan. 2021), https://www.federalreserve.gov/releases/g19/current/;

26  See, Exhibit A to the Request for Judicial Notice filed concurrently herewith; CFPB, The Consumer Credit Card Market, (Sep. 2021) https://files.consumerfinance.gov/f/documents/cfpb_consumer-credit-card-

27  market-report_2021.pdf. The CFPB states that credit cards are one of the largest sources of commercial debt and estimates that Americans paid roughly $120 billion per year in credit card interest and fees alone in 2021.

28

[17] In re Lionel Corp., 722 F.2d 1063, 1069 (2d Cir. 1983) quoting Missouri, Kansas & Texas Ry. Co. v. May, 194 U.S. 267, 270, 48 L. Ed. 971, 24 S. Ct. 638 (1904).

13

1   enforceability of the Debtor's customer contracts, there is no question that this Court has the power

2   to reform or revise these customer contracts to make them compliant with applicable law.[18]

3   Pursuant to its order(s) approving the Proposed Sale, this Court will also have the ability to enforce

4   the oversight and monitoring provisions of the Proposed Sale.[19]

5   Further, the Bankruptcy Code recognizes the benefit of neutral third parties overseeing and

6   reporting to the Court allowing for the appointment of a consumer privacy ombudsman, a patient

7   care ombudsman, and an examiner to provide independent reporting to the Court.[20]  Pursuant to

8   the Court's power under 11 U.S.C. § 105, Judge Drain required Purdue Pharma to appoint and

9   fund a monitor to report to the Court every ninety days on the Debtor's compliance with an

10  injunction restricting certain actions and practices.[21]  The Purdue Pharma monitor remains in place

11  and just filed its Fourteenth Monitor Report on May 22, 2023.[22]  As indicated under separate cover,

12  the Trustee recommends Nancy Rapoport for the role of Monitor in this case but will accept any

13  person that the Court determines is best qualified for the position.

14  Trustee insisted on consumer protections and oversight as part of the terms of the Proposed

15  Sale.  To the extent the Court believes it necessary to impose additional conditions or qualifications

16  on the Proposed Sale it can do so, but Trustee submits that the current terms of the Proposed Sale

17  comply with applicable law, provide consumer clients the ability to opt out of any agreement with

18  the Debtor, and appoint and fund a third party to serve as a monitor ("Monitor") of the legal

19  services performed for clients following the sale.  The ability of the Monitor to provide continuing

20  oversight should address any concerns the Court may have regarding future violations of

21  applicable law related to the assets involved in the Proposed Sale.

22

23

24

---

[18] After all, "[p]arties are, within reason, free to contract as they please, and to make bargains which place one party at a disadvantage; but a contract must have mutuality of obligation, and an agreement which permits one party to withdraw at his pleasure is void." Naify v. Pacific Indemnity Co., 11 Cal.2d 5, 11, 76 P.2d 663, 667 (1938).

25
26
[19] Bankruptcy Courts and trustees have long been entitled to enforce the terms of contracts in the form of an APA associated with the sale of a debtor's assets. See e.g., In re Ariz. Heart Inst., Inc., No. 2:10-bk-24062-GBN, 2010 Bankr. LEXIS 5841 (Bankr. D. Ariz. Sep. 30, 2010).
[20] See 11 U.S.C. §§ 332, 333, and 1106.

27
28
[21] See, Exhibit D to the Request for Judicial Notice filed concurrently herewith; Notice of Filing of Monitor's Report [Doc. No. 1175] filed in Bankruptcy Case No. 19-23649 (Bankr. S.D.N.Y.).  See Exhibit C to the Request for Judicial Notice filed concurrently herewith; This is the Monitor's First Report and attached as Exhibit A is Judge Drain's Injunction and Order.
[22] Doc. No. 5624 in In re Purdue Pharma, L.P., Bankr. S.D.N.Y. Case No. 19-23649 (RDD).

The Proposed Sale requires the Court appointment of and the initial funding for the Monitor. The Monitor will perform its duties according to the terms of the APA and the orders of the Court, which shall vest the Monitor will all rights and powers reasonably necessary to carry out its powers, duties, authority, and responsibilities. Subject to legally recognized privilege and the terms of a protective order that will govern the Monitor's access to CLG's operations and the privileged attorney-client files, the Monitor will confirm and oversee compliance with the terms of the APA and will provide regular reports to the Trustee, the Committee and the Bankruptcy Court. The Monitor will have the power to request CLG to develop such information as the Monitor needs to fulfill its obligations. The Monitor will have the authority to raise any issues it encounters in the performance of its obligations with Trustee, Committee and the Court, all subject to and in accordance with the procedures to be set forth in the entered order appointing the Monitor. Subject to Court approval, the Trustee suggests that the Monitor should be authorized to retain additional professionals as needed to fulfill its obligations; Trustee will of course make the estate's professionals (Special Counsel and Forensic Accountants) available to assist the Monitor, at Estate expense, to fulfill the role. While the Monitor's fees and fees of any professionals will be subject to Court approval, the Proposed Sale provides that up to $100,000.00 of the sale proceeds will be set aside for such costs; and that the Buyer will likewise contribute and fund at Closing an additional $100,000.00 to the payment of the Monitor's professional fees. This will prevent the Monitor from having to oversee the same entity that it will need to pay its fees and expenses. The appointment of and the support given to the Monitor in the Proposed Sale should preclude violations of applicable law following the transfer of the files to CLG.

**E.    Benefit of CLG's Post-Sale Legal Services**

The Debtor's bankruptcy and inability to operate following the appointment of the Trustee has harmed the Debtor's consumer clients. The proposed sale should remedy this harm and give the consumer clients the legal services they need. The potential consumer benefits of this sale are evidenced in the Pruyn and Carss declarations, who are assisting the Debtor's clients presently. While the Trustee seeks approval of the sale, LPG attorneys have reached favorable results for the Debtor's consumer clients -- it is anticipated that these agreements can be finalized if files can be

1  transferred to CLG, negotiated settlements can be concluded with the benefits flowing to the

2  Debtor's consumer clients.  If the sale to CLG is not approved, the needs of consumer clients will

3  not be met and there is a risk that these consumer clients may fall victim to another of the bad

4  actors operating in this space.

5  **F.      The Funds Held in Abeyance May be Distributed Upon Further Order of the Court**

6        The Court's July 10th Order requested that Trustee discuss the status and future of the funds

7  collected "from customers/clients" ("Funds") since the appointment of the Trustee.  First, the

8  Trustee halted debiting the accounts of consumers as of July 7, 2023, so the amount of funds on

9  hand in Trustee's blocked account will be fixed.  Second, the Funds are excluded from the Proposed

10 Sale to CLG; thus, the Funds will remain blocked under Trustee's control pending further orders

11 of this Court; this is true even if the Proposed Sale is not approved.

12       As detailed in Trustee's Declaration, the Funds are comprised of amounts collected since

13 his appointment.  Upon information and belief, Trustee believes that the Funds are composed of

14 funds paid to the Debtor for related legal fees and costs incurred on behalf of consumer clients, or

15 payable to the Debtor as compensation for legal services rendered.  Trustee believes that a forensic

16 accounting will establish that the majority of the funds were earned by the Debtor for legal and

17 related services provided; indeed, as set forth in the Declaration of Eeyah Tan submitted in support

18 hereof, a large number of the client files sought to be transferred for potential reformation and

19 future representation by Buyer are cases in litigation or paying AFTER litigation has concluded

20 (Tan Declaration at p. 2., establishing the inapplicability of any of the CFPB statutes cited by the

21 OUST.  To the extent that any single payment made is not traceable to an appropriate service

22 performed or benefit provided, the Court can direct the repayment of said amount to said consumer.

23 ///

24 ///

25 ///

26 ///

27 ///

28 ///

1    Trustee has retained the proper professionals to perform an accounting to identify the

2    source of the Funds and how the Debtor should classify and treat such Funds.  Until such analysis

3    is concluded, Trustee will continue to hold the funds in a blocked account, and acknowledges he

4    will need to obtain leave of this Court before any disbursements or transfers of the Funds can be

5    made for any purpose.

6

7    Dated:  July 17, 2023                    Respectfully submitted,

8                                             DINSMORE & SHOHL LLP

9                                             By: /s/ Christopher Celentino
                                                  Christopher B. Ghio
10                                                Christopher Celentino
                                                  Yosina M. Lissebeck
11                                                Jeremy Freedman
                                                  Special Counsel to Richard A. Marshack,
12                                                Chapter 11 Trustee

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address
is:        655 W. Broadway, Suite 800, San Diego, California  92101

A true and correct copy of the foregoing document entitled (*specify*):

**POCKET BRIEF OF CHAPTER 11 TRUSTEE RICHARD A. MARSHACK ON COURT'S AUTHORITY TO
APPROVE THE SALE MOTION [DK. 136] AND RELATED SUPPORT PURSUANT TO THE COURT'S ORDER
REQUESTING ADDITIONAL BRIEFING IN SUPPORT OF SALE MOTION [DK. 191]**

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d);
and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling
General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the
document. On July 17, 2023, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding
and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at
the email addresses stated below:

☒        Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On July 17, 2023, I served the following persons and/or entities at the last known addresses in this bankruptcy
case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United
States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a
declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐        Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state
method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on July 17, 2023, I
served the following persons and/or entities by personal delivery, overnight mail service, or (for those who
consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge
here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later
than 24 hours after the document is filed.

> **JUDGE'S COPY**
> The Honorable Scott C. Clarkson
> United States Bankruptcy Court
> Central District of California
> Ronald Reagan Federal Building and Courthouse
> 411 West Fourth Street, Suite 5130 / Courtroom 5C
> Santa Ana, CA 92701-4593

☐        Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| July 17, 2023 | Caron Burke | /s/ Caron Burke |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*                                                                    **F 9013-3.1.PROOF.SERVICE**

1.    **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

Eric Bensamochan on behalf of Interested Party Courtesy NEF
eric@eblawfirm.us, G63723@notify.cincompass.com

Eric Bensamochan on behalf of Interested Party Eric Bensamochan
eric@eblawfirm.us, G63723@notify.cincompass.com

Ronald K Brown on behalf of Creditor SDCO Tustin Executive Center, Inc.
ron@rkbrownlaw.com

Christopher Celentino on behalf of Plaintiff Richard A. Marshack
christopher.celentino@dinsmore.com, caron.burke@dinsmore.com

Christopher Celentino on behalf of Trustee Richard A Marshack (TR)
christopher.celentino@dinsmore.com, caron.burke@dinsmore.com

Shawn M Christianson on behalf of Interested Party Courtesy NEF
cmcintire@buchalter.com, schristianson@buchalter.com

Randall Baldwin Clark on behalf of Interested Party Randall Baldwin Clark
rbc@randallbclark.com

Leslie A Cohen on behalf of Interested Party Courtesy NEF
leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com;clare@lesliecohenlaw.com

Jenny L Doling on behalf of Interested Party INTERESTED PARTY
jd@jdl.law, dolingjr92080@notify.bestcase.com;15994@notices.nextchapterbk.com

Daniel A Edelman on behalf of Creditor Carolyn Beech
dedelman@edcombs.com, courtecl@edcombs.com

Christopher Ghio on behalf of Plaintiff Richard A. Marshack
christopher.ghio@dinsmore.com, Kristina.Heller@Dinsmore.com

Christopher Ghio on behalf of Trustee Richard A Marshack (TR)
christopher.ghio@dinsmore.com, Kristina.Heller@Dinsmore.com

Jeffrey I Golden on behalf of Creditor Anaheim Arena Management, LLC
jgolden@go2.law,
kadele@ecf.courtdrive.com;cbmeeker@gmail.com;lbracken@wgllp.com;gestrada@wgllp.com;golden.jeff
reyi.b117954@notify.bestcase.com

Jeffrey I Golden on behalf of Creditor Anaheim Ducks Hockey Club, LLC
jgolden@go2.law,
kadele@ecf.courtdrive.com;cbmeeker@gmail.com;lbracken@wgllp.com;gestrada@wgllp.com;golden.jeff
reyi.b117954@notify.bestcase.com

Jeffrey I Golden on behalf of Interested Party Courtesy NEF
jgolden@go2.law,
kadele@ecf.courtdrive.com;cbmeeker@gmail.com;lbracken@wgllp.com;gestrada@wgllp.com;golden.jeff
reyi.b117954@notify.bestcase.com

Richard H Golubow on behalf of Creditor Debt Validation Fund II, LLC
rgolubow@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                **F 9013-.1.PROOF.SERVICE**

Richard H Golubow on behalf of Creditor MC DVI Fund 1, LLC
rgolubow@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com

Richard H Golubow on behalf of Creditor MC DVI Fund 2, LLC
rgolubow@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com

D Edward Hays on behalf of Interested Party Courtesy NEF
ehays@marshackhays.com,
ehays@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@
ecf.courtdrive.com

D Edward Hays on behalf of Trustee Richard A Marshack (TR)
ehays@marshackhays.com,
ehays@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@
ecf.courtdrive.com

Alan Craig Hochheiser on behalf of Creditor City Capital NY
ahochheiser@mauricewutscher.com, arodriguez@mauricewutscher.com

Garrick A Hollander on behalf of Creditor Debt Validation Fund II, LLC
ghollander@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com

Garrick A Hollander on behalf of Creditor MC DVI Fund 1, LLC
ghollander@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com

Garrick A Hollander on behalf of Creditor MC DVI Fund 2, LLC
ghollander@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com

Razmig Izakelian on behalf of Creditor OHP-CDR, LP
razmigizakelian@quinnemanuel.com

Joon M Khang on behalf of Debtor The Litigation Practice Group P.C.
joon@khanglaw.com

Ira David Kharasch on behalf of Interested Party Ad Hoc Consumer Claimants Committee
ikharasch@pszjlaw.com

Ira David Kharasch on behalf of Interested Party Courtesy NEF
ikharasch@pszjlaw.com

Nicholas A Koffroth on behalf of Creditor Committee Committee of Unsecured Creditors
nkoffroth@foxrothschild.com, khoang@foxrothschild.com

David S Kupetz on behalf of Defendant Marich Bein, LLC
David.Kupetz@lockelord.com, mylene.ruiz@lockelord.com

David S Kupetz on behalf of Interested Party Courtesy NEF
David.Kupetz@lockelord.com, mylene.ruiz@lockelord.com

Christopher J Langley on behalf of Interested Party Courtesy NEF
chris@slclawoffice.com,
omar@slclawoffice.com;langleycr75251@notify.bestcase.com;ecf123@casedriver.com

Daniel A Lev on behalf of Interested Party Courtesy NEF

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                          **F 9013-.1.PROOF.SERVICE**

daniel.lev@gmlaw.com, cheryl.caldwell@gmlaw.com;dlev@ecf.courtdrive.com

Michael D Lieberman on behalf of Creditor Phillip A. Greenblatt, PLLC
mlieberman@lipsonneilson.com

Yosina M Lissebeck on behalf of Trustee Richard A Marshack (TR)
Yosina.Lissebeck@Dinsmore.com, caron.burke@dinsmore.com

Richard A Marshack (TR)
pkraus@marshackhays.com, rmarshack@iq7technology.com;ecf.alert+Marshack@titlexi.com

Laila Masud on behalf of Interested Party Courtesy NEF
lmasud@marshackhays.com, lmasud@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com

Laila Masud on behalf of Interested Party Richard A. Marshack
lmasud@marshackhays.com, lmasud@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com

Laila Masud on behalf of Plaintiff Richard Marshack
lmasud@marshackhays.com, lmasud@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com

Laila Masud on behalf of Trustee Richard A Marshack (TR)
lmasud@marshackhays.com, lmasud@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com

Kenneth Misken on behalf of U.S. Trustee United States Trustee (SA)
Kenneth.M.Misken@usdoj.gov

Byron Z Moldo on behalf of Interested Party Byron Moldo
bmoldo@ecjlaw.com, amatsuoka@ecjlaw.com,dperez@ecjlaw.com

Alan I Nahmias on behalf of Interested Party Courtesy NEF
anahmias@mbn.law, jdale@mbnlawyers.com

Victoria Newmark on behalf of Interested Party Courtesy NEF
vnewmark@pszjlaw.com

Queenie K Ng on behalf of U.S. Trustee United States Trustee (SA)
queenie.k.ng@usdoj.gov

Keith C Owens on behalf of Creditor Committee Committee of Unsecured Creditors
kowens@foxrothschild.com, khoang@foxrothschild.com

Teri T Pham on behalf of Attorney Teri Pham
tpham@epglawyers.com, ttpassistant@epglawyers.com

Douglas A Plazak on behalf of Defendant Greyson Law Center PC
dplazak@rhlaw.com

Ronald N Richards on behalf of Defendant Consumer Legal Group, PC
ron@ronaldrichards.com, 7206828420@filings.docketbird.com

Ronald N Richards on behalf of Interested Party Courtesy NEF
ron@ronaldrichards.com, 7206828420@filings.docketbird.com

Gregory M Salvato on behalf of Creditor Mari Agape

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                    F 9013-.1.PROOF.SERVICE

gsalvato@salvatoboufadel.com,
calendar@salvatolawoffices.com;jboufadel@salvatoboufadel.com;gsalvato@ecf.inforuptcy.com

Gregory M Salvato on behalf of Interested Party Courtesy NEF
gsalvato@salvatoboufadel.com,
calendar@salvatolawoffices.com;jboufadel@salvatoboufadel.com;gsalvato@ecf.inforuptcy.com

Olivia Scott on behalf of Creditor Azzure Capital LLC
olivia.scott3@bclplaw.com

Olivia Scott on behalf of Creditor Hi Bar Capital LLC
olivia.scott3@bclplaw.com

Jonathan Serrano on behalf of Plaintiff Richard A. Marshack
jonathan.serrano@dinsmore.com

Jonathan Serrano on behalf of Trustee Richard A Marshack (TR)
jonathan.serrano@dinsmore.com

Paul R Shankman on behalf of Attorney Paul R. Shankman
PShankman@fortislaw.com, info@fortislaw.com

Paul R Shankman on behalf of Creditor United Partnerships, LLC
PShankman@fortislaw.com, info@fortislaw.com

Leslie Skorheim on behalf of U.S. Trustee United States Trustee (SA)
leslie.skorheim@usdoj.gov

Howard Steinberg on behalf of Defendant BankUnited, N.A.
steinbergh@gtlaw.com, pearsallt@gtlaw.com;howard-steinberg-6096@ecf.pacerpro.com

Andrew Still on behalf of Interested Party Courtesy NEF
astill@swlaw.com, kcollins@swlaw.com

United States Trustee (SA)
ustpregion16.sa.ecf@usdoj.gov

Sharon Z. Weiss on behalf of Creditor Azzure Capital LLC
sharon.weiss@bclplaw.com, raul.morales@bclplaw.com,REC_KM_ECF_SMO@bclplaw.com

Sharon Z. Weiss on behalf of Creditor Hi Bar Capital LLC
sharon.weiss@bclplaw.com, raul.morales@bclplaw.com,REC_KM_ECF_SMO@bclplaw.com

Johnny White on behalf of Creditor Debt Relief Group, LLC
JWhite@wrslawyers.com, jlee@wrslawyers.com

Johnny White on behalf of Interested Party Courtesy NEF
JWhite@wrslawyers.com, jlee@wrslawyers.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                          F 9013-.1.PROOF.SERVICE