Christopher B. Ghio (State Bar No. 259094)
Christopher Celentino (State Bar No. 131688)
Yosina M. Lissebeck (State Bar No. 201654)
DINSMORE & SHOHL LLP
655 West Broadway, Suite 800
San Diego, CA 92101
Telephone: 619.400.0500
Facsimile: 619.400.0501
christopher.ghio@dinsmore.com
christopher.celentino@dinsmore.com
yosina.lissebeck@dinsmore.com

Special Counsel to Richard A. Marshack,
Chapter 11 Trustee

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SANTA ANA DIVISION**

| | |
|---|---|
| In re:<br><br>THE LITIGATION PRACTICE GROUP P.C.,<br><br>  Debtor. | Case No. 8:23-bk-10571-SC<br><br>Chapter 11<br><br>**SUPPLEMENTAL DECLARATION OF RICHARD A. MARSHACK IN SUPPORT OF MOTION FOR ORDER APPROVING STIPULATION BETWEEN THE DEBTOR, CONSUMER LAW GROUP, PC; LGS HOLDCO, LLC; AND SET FORTH, INC. F/K/A DEBTPAYPRO WITH MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:  July 21, 2023<br>Time:  10:00 a.m.<br>Judge: Hon. Scott C. Clarkson<br>Place: Courtroom 5C<br>         411 West Fourth Street<br>         Santa Ana, CA 92701 |

22104827.5

## **SUPPLEMENTAL DECLARATION OF RICHARD A. MARSHACK**

I, RICHARD A. MARSHACK, declare:

1. I am the Chapter 11 Trustee ("Trustee") for the bankruptcy estate ("Estate") of The Litigation Practice Group, P.C. ("Debtor") in the above-captioned bankruptcy case ("Case"). As such, except as expressly stated otherwise, I have personal knowledge of the facts set forth below and could and would competently testify under oath if requested to do so.

2. I submit this Supplemental Declaration in support of my Motion to Approve ("Motion") a Stipulation with Consumer Law Group, PC, LGS Holdco, LLC (collectively "CLG"), and Set Forth, Inc. f/k/a Debtpaypro ("DPP"). At the initial hearing on the Motion on July 11, 2023, the Court continued the matter and requested that further evidence be filed in support of certain issues. All capitalized terms are defined in the Motion.

3. Between January 24, 2023, and February 10, 2023, approximately 12,000 files ("Files") were transferred from LPG to CLG pursuant to the following terms and conditions. Based on records I reviewed, the Debtor received approximately $6,000,000.00 from CLG for the Files on the front end of the sale, but the parties agreed that CLG would be obligated to make additional payments received from those Files that were designated as "fee-sharing." CLG agreed to make additional payments to the Debtor for each month where it received fees from more than 6,000 of the Files it received. If this threshold was reached, CLG would pay the Debtor 40% of the fees it earned from those files designated as "fee-sharing" Files. These "fee-sharing" clients are called the Fee Shared Clients in the Motion. As of the date of the Stipulation, the amount of Fee Shared Clients is in excess of 2,000.

4. In the above transaction, CLG paid approximately $500 per file to acquire the Files plus its obligation to make additional payments on the Fee Shared Clients. The Files transferred to CLG were a mixture of "active" files where monthly payments were currently being made and "inactive" files without current payments.

5. In my complaint against CLG, I sought to avoid and recover these transfers as fraudulent.

#31370378v2                                                                2

6. In my proposed compromise with CLG, I have agreed that these files will not be avoided and recovered. My reasons for doing so are described below.

7. Since being appointed as Trustee, I have received several offers to purchase unrelated files transferred by Debtor to Phoenix (that I am seeking to recover in my action against Phoenix). These offers have been structured similar to the Debtor's sale of the 12,000 files to CLG; however, the front end payment of these offers have only ranged from $3,000,000 to $4,680,000. While these offers also provide for additional consideration payable based on performance, the proposed percentage of future fees to be shared ranges from 20-35% instead of the 40% that CLG agreed to pay if certain benchmarks were achieved.. Compared to the pre-petition transaction between CLG and the Debtor, these post-bankruptcy purchase offers would only yield $230 to $360 per file instead of the $500 paid by CLG.

8. If the sale of the Files had not been made to CLG before the Petition Date, the offers I have received since my appointment place a far lower value on the Files than the terms of the pre-bankruptcy agreement between the Debtor and CLG.

9. Based on the foregoing, there is strong evidence that CLG paid reasonably equivalent value for the Files when it acquired them pre-petition. Given the offers I received, it would not benefit the estate to pursue litigation to recover the Files from CLG when it appears other interested parties place a far lower value on the Files than CLG did. Given the value already received and CLG's agreement to honor its obligation to make additional payments on the Fee Shared Clients, I did not see any benefit to the Estate from continued litigation against CLG regarding these Files.

10. While I believe the Estate could have avoided and recovered the transfer of the Files to CLG, it would also likely be entitled to credit for the value it did pay to the Debtor, which would reduce the value of any recovery. Furthermore, the Stipulation provides the Estate with the relief it sought against CLG in the Adversary as to the Fee Shared Clients while preserving any other claims the Estate has against CLG regarding the LPG Acquired Clients or other matters.

11. Because CLG's obligation to make additional payments on the Fee Shared Clients only arises when certain benchmarks are met, I cannot estimate what these payments might be

going forward. I believe that some portion of the $550,000 that has been frozen at Optimum Bank is payable to the Estate as the Files met the threshold for the 40% sharing of fees in at least one prior month. The Stipulation provides the Estate with visibility into the accounting of CLG on the Fee Shared Clients, so there is little risk that the Estate will be deprived of amounts properly payable to it.

12. While CLG appears to be a profitable company, there would still be a significant expense to the Estate to litigate its claims against CLG, pursue discovery, obtain experts to value the Files transferred to CLG accounting for the value CLG actually paid and has promised to pay for the Files, obtain a judgment, and then enforce or collect any judgment. If the Files were returned to the Debtor, the Debtor would have no choice to sell the Files for the reduced offers I have previously received because the Estate does not have the ability to provide long-term services to the clients.

13. In short, the Stipulation provides the Estate with all the benefits of CLG retaining the Fee Shared Client files without the costs and risks of litigation and without the Debtor having to provide the services that the Files require. This Stipulation also provides the Debtor's former consumer clients with access to the legal services they need.

14. Although CLG is the potential purchaser identified in the Sale Motion, the terms of the proposed sale require that CLG pay the Estate from funds unrelated to the Fee Shared Clients. The Stipulation is not part of the proposed sale; however, the Stipulation is needed to permit CLG to service its clients, to provide funds to the Estate, and to provide assistance to Trustee's efforts in the pending adversary proceeding.

15. The Stipulation will not release or resolve any claims that the Estate may have against CLG except as expressly set forth. The Stipulation provides the Estate with a substantial right to oversee CLG's compliance with the Stipulation, and CLG will remain a party in the Adversary Proceeding so any violations of the Stipulation can be enforced.

16. In my business judgment, I do not believe I could obtain a superior outcome in the Adversary with respect to the Fee Shared Clients than that provided in the Stipulation. The stipulation was negotiated at arm's length with both sides represented by counsel.

#31370378v2                                         4

17. In my business judgment, the relief sought in the Motion is in the best interests of the Estate because the Stipulation will provide funds to the Estate that will be held in a blocked account, additional information regarding avoidance actions, and legal services to the clients included in the LPG Fee Shared Clients. The Stipulation will also provide certain releases to the Estate to limit further litigation and disputes.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

DATED: July 17, 2023

_____
Richard A. Marshack

#31370378v2                                    5