**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

In re:                                    )
                                          )        Case No. 8:23-bk-10571-SC
THE LITIGATION PRACTICE GROUP P.C.,       )
                                          )        Chapter 11
                    Debtor.               )
                                          )

**MOTION FOR LEAVE OF *AMICI*, THE NATIONAL CONSUMER BANKRUPTCY RIGHTS CENTER AND THE NATIONAL ASSOCIATION OF CONSUMER BANKRUPTCY ATTORNEYS TO FILE ITS BRIEF IN SUPPORT OF THE OBJECTIONS OF CAROLYN BEECH AND DIANE SCANAVACK (Dkt. # 254) TO THE MOTION FOR SALE OF PROPERTY OF THE ESTATE UNDER SECTION 363(b) (Dkt. #191)**

      Movants, the National Consumer Bankruptcy Rights Center (NCBRC) and the National Association of Consumer Bankruptcy Attorneys (NACBA) hereby seek leave to file a brief as *amici curiae* in support of the Objections of Carolyn Beech and Diane Scanavack (Dkt. # 254) to the motion for sale of property of the estate under 11 U.S.C. § 363(b) (Dkt. # 191) pursuant to the Court's authority under 11 U.S.C. § 105.

      The National Consumer Bankruptcy Rights Center (NCBRC) is a nonprofit organization dedicated to preserving the bankruptcy rights of consumer debtors and protecting the bankruptcy system's integrity. The Bankruptcy Code grants financially distressed debtors rights that are critical to the bankruptcy system's operation. Yet consumer debtors with limited financial resources and minimal exposure to that system often are ill-equipped to protect their rights in the appellate process. NCBRC files *amicus curiae* briefs in systemically-important cases to ensure that courts have a full understanding of the applicable bankruptcy law, the case, and its implications for consumer debtors.

1

NCBRC has filed *amicus curiae* briefs in numerous cases seeking to protect the rights of consumer bankruptcy debtors. *See, e.g., Lac du Flambeau Band of Lake Superior Chippewa Indians v. Coughlin*, 143 S. Ct. 1689 (2023); *Evans v. McCallister* (*In re Evans*), 69 F.4th 1101 (9th Cir. 2023); *Numa Corp. v. Diven*, 2022 U.S. App. LEXIS 32224, 2022 WL 17102361 (9th Cir. 2022).

The National Association of Consumer Bankruptcy Attorneys (NACBA) is also a nonprofit organization, with approximately 3,000 consumer bankruptcy attorney members nationwide. NACBA advocates on issues that cannot adequately be addressed by individual member attorneys. It is the only national association of attorneys organized for the specific purpose of protecting the rights of consumer bankruptcy debtors. NACBA has filed *amicus curiae* briefs in various cases seeking to protect the rights of consumer bankruptcy debtors, including prior to the formation of NCBRC in 2010. NACBA's first amicus brief was filed in *In re Pladson*, 35 F.3d 462 (9th Cir. 1994). More recently*, see e.g., Harris v. Viegelahn,* 135 S. Ct. 1829 (2015); *Peake v. Ayobami (In re Ayobami),* 879 F.3d 152 (5th Cir. 2018). Combined, NACBA and NCBRC have participated as amici in over 120 cases in U.S. Courts of Appeal in all circuits and over 20 cases at the U.S. Supreme Court.

NCBRC, NACBA and its membership have a vital interest in the outcome of this case. NACBA member attorneys represent individuals in a large portion of all consumer bankruptcy petitions filed, the vast majority of whom are honest but unfortunate debtors seeking a fresh start under the Bankruptcy Code (the "Code"). The 40,000 clients of the Litigation Practices Group are individuals with significant consumer debt being addressed by non-bankruptcy alternatives. As it is apparent that LPG's representation of these individuals has failed, both NCBRC and NACBA have an interest that these individuals are protected

from illegal practices and informed of all of their rights under federal and state law as detailed below.

It is within the sound discretion of this Court to allow participation of *Amicus Curiae. See Northern Securities Co. v. U.S.*, 191 U.S. 555 (1903); *LaRue v. Dewolff, Boberg & Assocs.*, 458 F.3d 359, 360 (4th Cir. 2006). Discussing the appropriate exercise of discretion with respect to use of amicus curiae, Judge Posner said, "[a]n amicus brief should normally be allowed when . . . the amicus has unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide." *Ryan v. Commodity Futures Trading Commission*, 125 F.3d 1062, 1063 (7th Cir. 1997).

*Amici* believe that, in their roles as a national advocates for consumer debtors, it brings a unique perspective to this case that will be helpful to the court in deciding this matter.

WHEREFORE, Movants respectfully requests that this motion be granted, and for such other relief the court deems just and proper.

Respectfully submitted,

**J. DOLING LAW, PC**

*/s/ Jenny L. Doling*

Dated: July 19, 2023        By:    _____
Jenny L. Doling, Esq. (#207033)
Local Counsel for Amicus Curiae
National Association of Consumer Bankruptcy Attorneys
and National Consumer Bankruptcy Rights Center

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 8:23-bk-10571-SC |
| THE LITIGATION PRACTICE GROUP P.C., | ) | |
| | ) | Chapter 11 |
| Debtor. | ) | |
| | ) | |

**BRIEF OF *AMICI*, THE NATIONAL CONSUMER BANKRUPTCY RIGHTS CENTER
AND THE NATIONAL ASSOCIATION OF CONSUMER BANKRUPTCY ATTORNEYS
IN SUPPORT OF THE OBJECTIONS OF CAROLYN BEECH AND DIANE
SCANAVACK (Dkt. # 254) TO THE MOTION FOR SALE OF PROPERTY OF THE
ESTATE UNDER SECTION 363(b) (Dkt. #191)**

Comes now *amici*, the National Consumer Bankruptcy Rights Center (NCBRC) and the

National Association of Consumer Bankruptcy Attorneys (NACBA) and for their brief in support

of the objection to the motion for sale of property of the estate state as follows:

### STATEMENT OF INTEREST OF AMICI CURIAE

The National Consumer Bankruptcy Rights Center (NCBRC) is a nonprofit organization

dedicated to preserving the bankruptcy rights of consumer debtors and protecting the bankruptcy

system's integrity. The Bankruptcy Code grants financially distressed debtors rights that are

critical to the bankruptcy system's operation. Yet consumer debtors with limited financial

resources and minimal exposure to that system often are ill-equipped to protect their rights in the

appellate process. NCBRC files *amicus curiae* briefs in systemically-important cases to ensure

that courts have a full understanding of the applicable bankruptcy law, the case, and its

implications for consumer debtors.

NCBRC has filed *amicus curiae* briefs in numerous cases seeking to protect the rights of

consumer bankruptcy debtors. *See, e.g., Lac du Flambeau Band of Lake Superior Chippewa*

1

*Indians v. Coughlin*, 143 S. Ct. 1689 (2023); *Evans v. McCallister* (*In re Evans*), 69 F.4th 1101 (9th Cir. 2023); *Numa Corp. v. Diven*, 2022 U.S. App. LEXIS 32224, 2022 WL 17102361 (9th Cir. 2022).

The National Association of Consumer Bankruptcy Attorneys (NACBA) is also a nonprofit organization, with approximately 3,000 consumer bankruptcy attorney members nationwide. NACBA advocates on issues that cannot adequately be addressed by individual member attorneys. It is the only national association of attorneys organized for the specific purpose of protecting the rights of consumer bankruptcy debtors. NACBA has filed *amicus curiae* briefs in various cases seeking to protect the rights of consumer bankruptcy debtors, including prior to the formation of NCBRC in 2010. NACBA's first amicus brief was filed in *In re Pladson*, 35 F.3d 462 (9th Cir. 1994). More recently*, see e.g., Harris v. Viegelahn,* 135 S. Ct. 1829 (2015); *Peake v. Ayobami (In re Ayobami),* 879 F.3d 152 (5th Cir. 2018). Combined, NACBA and NCBRC have participated as amici in over 120 cases in U.S. Courts of Appeal in all circuits and over 20 cases at the U.S. Supreme Court.

NCBRC, NACBA and its membership have a vital interest in the outcome of this case. NACBA member attorneys represent individuals in a large portion of all consumer bankruptcy petitions filed, the vast majority of whom are honest but unfortunate debtors seeking a fresh start under the Bankruptcy Code (the "Code").  The 40,000 clients of the Litigation Practices Group are individuals with significant consumer debt being addressed by non-bankruptcy alternatives. As it is apparent that LPG's representation of these individuals has failed, both NCBRC and NACBA have an interest that these individuals are protected from illegal practices and informed of all of their rights under federal and state law as detailed below.

## ARGUMENT

The funds deposited by LPG clients to settle their debts are not property of the bankruptcy estate of LPG and therefore cannot be sold by the trustee.[1] Any fees or other funds collected from those clients, prior to final resolution of the debts, belong to the clients and are not assets of LPG.

**I.    Federal law makes all deposits with LPG owned by their clients and cannot be sold as estate assets.**

The Telemarketing Sales Rule (TSR)[2] ultimately states that the clients of LPG, not LPG, own the funds deposited with LPG to settle their client's debts.  The debt relief provisions of the TSR govern any program or service represented to renegotiate, settle, or in any way alter the terms of unsecured debt that is sold through telemarketing.[3] The requirements and prohibitions of the TSR apply to all persons and entities – attorneys and non-attorneys alike – who offer debt relief services.[4] Arguably the most important protection of the TSR is the prohibition against requesting or receiving payment prior to actually settling or altering the terms of a debt.[5] The TSR's advance fee ban contains a limited exception that allows for debt relief service providers (DRSPs) to request advance payment of funds earmarked to settle debts and pay fees.[6] Pursuant to this exemption, consumers – not the DRSP – own the funds and consumers may withdraw from the debt relief service at any time, without penalty, and have their funds returned within seven business days.[7]

---

[1] This is directly contrary to the representation made by Consumer Legal Group in its Response [Doc. 257] p. 9 that "In sum, issues relating to the telemarketing and credit repair laws have no application here since the Court takes the assets as it finds them."  CLG does not address the issue that the funds held are not assets of LPG and instead are owned by LPG's client's.

[2] 16 CFR 310.1 et seq.

[3] 16 CFR 310.2-310.9

[4] Telemarketing Sales Rule, Final rule amendments, Federal Trade Commission, 75 FR 48458, 48468-48470, August 10, 2010.

[5] 16 CFR 310.4(a)(5)(i).

[6] 16 CFR 310.4(a)(5)(ii).

[7] 16 CFR 310.4(a)(5)(ii)(B)&(E).

a.  The TSR defines "debt relief service" as:

> any program or service represented, directly or by implication, to renegotiate, settle, or in any way alter the terms of payment or other terms of the debt between a person and one or more unsecured creditors or debt collectors, including, but not limited to, a reduction in the balance, interest rate, or fees owed by a person to an unsecured creditor or debt collector.[8]

The TSR prohibits DRSPs from requesting or receiving advance payments.[9] Under this prohibition, DSRPs may not request or receive payment of any fee unless and until the DRSP has settled, reduced, or otherwise altered the terms of at least one debt pursuant to a settlement agreement and the consumer has made at least one payment pursuant to that settlement agreement to the creditor.[10]

LPG may have represented that it would "invalidate" or settle consumers' debts. While it is unclear whether "invalidation" offered any possibility of success, the materials reviewed indicate that LPG may have offered, and that consumers may have understood, that LPG's program would settle or in some way alter the terms of debts between consumers and their unsecured creditors. So, LPG's services appear to fall within the TSR's broad definition of a "debt relief service."[11]

b.  The TSR's Advance Fee Prohibition Applies to Attorneys.

The requirements of the TSR apply to LPG and its proposed buyers regardless of whether or not they are bona fide law firms.[12] Indeed, the FTC considered and specifically rejected an

---

[8] 16 C.F.R. § 310.2(o).
[9] See 16 C.F.R. § 310.4(a)(5)(i).
[10] See 16 C.F.R. § 310.4(a)(5)(i)(A)&(B).

[11] "The TSR defines a debt relief service in 'broad terms.'" *FTC v. American Financial Benefits Center*, 324 F.Supp.3d 1067, 1082 (N.D. Cal. 2018) (quoting *CFPB v. IrvineWebWorks, Inc.*, No. 14-cv-1967, 2016 WL 1056662, at *6 (C.D. Cal. Feb. 5, 2016)).
[12] Consumer Fin. Prot. Office of Enforcement v. Seila L. LLC, 923 F.3d 680, 685 (9th Cir. 2019), vacated on other grounds and remanded, 207 L. Ed. 2d 494, 140 S. Ct. 2183 (2020).

attorney exemption to the TSR when it issued the debt relief provisions in 2010.[13] The FTC reasoned that most legitimate attorneys providing legal services do not use telemarketing to solicit clients for debt relief services, so the TSR would not apply to these practitioners.[14] Moreover, the TSR contains an exemption for sales that are only completed after a bona fide face-to-face sales meeting, so legitimate law firms that meet with clients prior to signing a retainer would generally fall outside the scope of the TSR.[15] Given its findings, the FTC concluded that "attorneys who choose to offer debt relief services using telemarketing should be treated no differently under the TSR than non-attorneys who do the same."[16]

c.    Under the TSR, Advance Payments Made to DRSPs are Owned by Consumers Pending Resolution of Their Debts.

The TSR has a limited exception to the advance fee prohibition that allows advance payments for debt relief so long as those funds are placed in a dedicated account to be used to for fees and payments to creditors when settling debts. This exception requires that:

(A) The funds are held in an account at an insured financial institution.

(B) ***The customer owns the funds held in the account*** and is paid accrued interest on the account, if any.

(C) The entity administering the account is not owned or controlled by, or in any way affiliated with, the debt relief service.

(D) The entity administering the account does not give or accept any money or other compensation in exchange for referrals of business involving the debt relief

---

[13] Telemarketing Sales Rule, Final rule amendments, Federal Trade Commission, 75 FR 48458, 48468-48470, August 10, 2010.
[14] Id. at 48468.
[15] Id.; see also 12 C.F.R § 310.6(b)(3).
[16] Id.

service; and

(E) ***The customer may withdraw from the debt relief service at any time without penalty, and must receive all funds in the account, other than funds earned by the debt relief service in compliance with the TSR, within seven (7) business days of the customer's request.[17]***

The TSR dictates that the advance payments such as those frozen in Optimum Bank are owned by debt relief clients, not debt relief providers.[18] The TSR requires that these funds be available to refund the consumers who wish to cancel their debt relief programs. The United States Trustee's request to freeze the funds in the LPG matter and examine them before they are used to fund operational expenses or are included in sale of debtor's assets is consistent with the TSR's requirement.

d.    Claims filed indicate that the TSR applies in this case to LPG's clients.

Proof of claim No. 14-1 is notable because it appears to attach a complete agreement between LPG and the consumer.[19] The agreement suggests that LPG has sold "debt invalidation" services to consumers."[20] If "invalidation" failed, LPG also offered debt settlement services.[21] If the consumer was sued after executing the agreement, LPG agreed to represent the consumer for

---

[17] 16 C.F.R. § 310.4(a)(5)(ii)(A)-(E) (emphasis added).

[18] See 16 C.F.R. § 310.4(a)(5)(ii)(B).

[19] See Claim 14-1, Filed 4/17/23 at pp 7-14.

[20] "...use existing laws and interact with creditors and credit bureau on your behalf to invalidate your debts... Id. at p 7.

[21] "If LPG is unable to invalidate you may elect to have LPG negotiate a settlement on your behalf with the concerned creditor without any additional fees being charged to or incurred by you for such service. Any settlement reached with any such creditor shall be your responsibility. At the point that you reach a settlement with such creditor, your payment to LPG will be reduced and re-amortized to adjust for the settled account being removed from the representation herein contemplated." Id. at p 8.

no additional fees.[22] The agreement scheduled 42 bi-weekly payments of $128.37, a total of $5,391.54,[23] to address $8,681 in debts.[24] The agreement does not require LPG to invalidate, resolve, or settle of any debt prior to taking a fee.

Other claims filed in the matter are consistent with Claim 14-1. For example, Claim 63-1 indicates that LPG failed to defend the consumer in a collections lawsuit and stopped responding to calls and emails after entry of a $26,954.66 judgment against her.[25] The Claimant maintains that, as a result of the judgment, her wages were garnished in the amount of $1,400 per month.[26]

These claims indicate that the TSR applies to clients in this matter and that the deposits made belong to them, not LPG.

e.     Representations made by LPG on Its Website Indicate that It Used Telemarketing and Sales Strategies to Increase Business.  Therefore, the TSR applies to LPG.

The LPG Practice Group website includes a page for possible affiliate entities to join their program.[27] (See also Exhibit 1 attached.)  Below the headline entitled "LUCRATIVE WEEKLY PAYOUTS!" is the section titled "Program for Serious Front End Marketing Offices".  The text below reads as follows:

> We request serious organizations
> that have the capital, marketing
> resources, databases, & sales teams
> to enroll a minimum of 50 new
> clients per month.
>
> We will provide access to our online
> application system at no charge.
> Our Affiliate Department will provide

---

[22] Id.
[23] Id. at p 12.
[24] Id. at p 9-10.
[25] See Claim 63-1, Filed 6/6/23, at p 2, 5.
[26] Id. at p 5.
[27] https://lpglaw.com/affiliates/ (Last accessed July 18, 2023.)

Full Training and Sales Scripts

An optional live transfer program is
available for organizations that do
less than 50 new clients per month.

The contention that LPG used telemarketing in recruiting clients is also supported by several cases brought against LPG in the past. These cases allege LPG engaged in telemarketing calls. The two complaints are *Jackson et al. v The Litigation Practice Group PC*, Case No. 22-cv-00278 (M.D. Penn. 2022) and *Crane v Debt Advisors of America et al.*, Case No. 20-cv-0448 (S.D. Ohio 2020)[28] attached hereto as Exhibits 2 and 3 respectively.

## II.    California state law also requires the refund of client deposits.

LPG is in violation of the California Fair Debt Settlement Practices Act (FDSPA).[29] LPG is a Debt Settlement Provider[30] (DSP) since it provides debt settlement services.[31]  It is unlawful for a DSP to request or receive a fee for debt settlement services before the DSP has "renegotiated, settled, reduced, or otherwise altered the terms of at least one debt pursuant to a settlement agreement approved and executed by the consumer".[32]  Further, the fee charged must either

(i) Bear the same proportional relationship to the total fee for renegotiating, settling, reducing, or altering the terms of the entire debt balance as the individual debt

---

[28] This case was removed from the Licking Court of Common Pleas to the district court.
[29] California Civil Code § 1788.300 et seq.
[30] California Civil Code § 1788.301(a) defines a Debt Settlement Provider as "a person who, for compensation and on behalf of a consumer, provides debt settlement services."
[31] California Civil Code § 1788.301(b) states
"Debt settlement services" means any of the following:
(1) Providing advice, or offering to act or acting as an intermediary, including, but not limited to, offering debt negotiation, debt reduction, or debt relief services between a consumer and one or more of the consumer's creditors, if the primary purpose of that advice or action is to obtain a settlement for less than the full amount of the debt.
(2) Advising, encouraging, or counseling a consumer to accumulate funds in an account for future payment of a reduced amount of debt to one or more of the consumer's creditors.
[32] California Civil Code § 1788.301(c)(2)(A).

amount bears to the entire debt amount. The individual debt amount and the entire debt amount are those owed at the time the debt was enrolled in the service.

(ii) Represent a percentage of the amount saved as a result of the renegotiation, settlement, reduction, or alteration. The percentage charged cannot change from one individual debt to another. The amount saved is the difference between the amount owed at the time the debt was enrolled in the service and the amount agreed pursuant to the settlement agreement between the consumer and the creditor to satisfy the debt.[33]

Instead of complying with a fee commensurate with the amount of resolved debt, LPG's website indicates that their clients pay one flat fee.  See Exhibit 1, p. 1. ("Full Legal Representation Included with no additional billable hours. Client pays one flat fee spread overtime to make it more affordable.")

Also, it appears from at least one filed proof of claim that the fees were already received before settlement of the client's debt.[34]  This claim states in pertinent part

On 01/05/22- I received an email from LPG law (email attached) that they would be servicing my debt resolution account that was formerly services by Citadel. In the email it specifically says, "Your file is now being serviced by a law firm, LPG, with licensed counsel in every state. As a result, if you are sued by a creditor, or are being harassed by a creditor and need to sue them, LPG will handle your representation for no additional fee - **such service is already included the fees you have paid."**… In Sept 2022, I received a summons for one of my accounts which I quickly uploaded to the LPG portal on 09/03/22. I received acknowledge that LPG received the summons and someone even called my to go over my income and monthly expenses. In December 2022, I received an email from someone in the HR Dept where I work that my wages were being garnished. I uploaded the garnishment letter (attached) to LPG law client portal and sent a message but no one responded. So, I scheduled a phone conference and on December 30th, I had a phone conference with Juliette at Litigation Practice Group who said that their office was going to take care of the wage garnishments. My wages continued to get garnished at $1400 per month! So, I scheduled another phone conference and received a google calendar invite for Jan 27th at 11:40 PM with Monica Bahena ... she never called me! I scheduled another phone conference and received a google calendar invite for Feb 1st at 1:40 PM with Selena Garcia ... she never  called me. Now there are no open appointments available on their calendar. It is now almost April and my wages are still getting garnished at $1400/month. I am more in debt  and than before

---

[33] California Civil Code §§ 1788.3012(c)(2)(C)(i) & (ii).
[34] See Claim 63-1, Filed 6/6/23.

paying for this debt consolidation assistance. My family is living off credit cards
and the stress is unimaginable.  (Emphasis added.)[35]

Also, according to a different claim, the agreement with LPG indicates that it does not

require LPG to invalidate, resolve, or settle of any debt prior to taking a fee.[36]  Instead the fee "is

earned the moment it is transmitted to LPG."[37]  This is supported by the testimony of Tony Diab

at LPG's 341 Meeting of Creditors.  Mr. Diab stated that when money comes in its spent on the

operating expenses of the firm.[38]

It is evident that LPG is not complying with the FDSPA.

Further, under the FDSPA, clients have the right to terminate a contract.[39]  Upon

termination, LPG is required to provide, within three business days, a detailed accounting of all

amounts received[40] and within seven days deliver to the client the balance in the settlement

account.[41]  This option was not listed in the trustee's notice to clients.

---

[35] Id. at 5.

[36] See Claim 14-1, Filed 4/17/23 at p. 5. ("**Fees** You will pay the following fees for the legal
services provided by LPG. No fee or other cost will be charged or collected other than the
following. This is the only amount you have to pay for LPG's services, and this fee is fixed, such
that it is earned the moment it is transmitted to LPG. Upon request, LPG will provide an update
of the progress of services performed under this agreement at reasonable intervals of no greater
frequency than once a month.")

[37] Id.

[38] See the Trustee's Motion to Sell (Dkt. #191), Declaration of Richard A. Marshack, Exhibit 1,
bottom of p. 122 as follows:
"Mr. Diab: But the way that the deposits work, the  payment processors will send money through
on a -- on a  daily basis any time it's (indiscernible) day. And, so,  we'll receive the $4 million, $8
million, whatever the  number is. We'll receive it as daily deposits of anywhere  from $100,000
to $1.5 million, but it never comes in as a  batch of four or five million or more than that amount.
The  largest it would ever come in as is $1.5, $1.6 million at  any one point in time, and when the
money comes in, it's  obviously then spent on all the operating expenses that we  had operating a
law firm that's -- that at the time was  active in 48 different states."

[39] California Civil Code §§ 1788.302(d).

[40] California Civil Code §§ 1788.302(d)(3)(C).

[41] California Civil Code §§ 1788.302(d)(5).

Furthermore, under the California Consumers Legal Remedies Act, it is unlawful for a business to represent to a consumer "that a transaction confers or involves rights, remedies, or obligations that . . . are prohibited by law." Cal. Civ. Code § 1770(a)(14). Generally, "courts reform contracts only where the parties have made a mistake and not for the purpose of saving an illegal contract." *Kolani v. Gluska*, 64 Cal. App. 4th 402, 407 (1998).

Thus, any agreement presented to a California consumer by a credit repair firm engaged in telemarketing which permitted the firm to receive fees before its services were completed would appear to violate the Telemarketing Act, the TSR, and various aspects of California state law. Given that contracts generally cannot be reformed to save an illegal contract, it seems unlikely that any post-bankruptcy modifications to such an agreement could save it from the taint of illegality.

In fact, the Ninth Circuit has held that violations of the TSR may entitle affected consumers to full refunds and that the consumer's entitlement to such a refund cannot be offset by the alleged value provided by the wrongdoer. This is because it is the "fraud in the selling, not in the value of the thing sold [that] entitles consumers to full refunds." *FTC v. Publishers Bus. Servs., Inc.*, 540 F. App'x 555, 558 (9th Cir. 2013) (quoting *FTC v. Figgie Int'l, Inc.*, 994 F.2d 595, 606 (9th Cir. 1993)). Thus, if anything, consumers entering into such an agreement could possibly be entitled to full restitution of any monies paid under that agreement to date, regardless of any subsequent modifications to the agreement.

## III.    The Notice Given to Individual Clients is Insufficient

The notice to clients does not satisfy the due process requirements of the Fourteenth Amendment to the United States Constitution.[42]

---

[42] USCS Const. Amend. 14.

The clients of LPG were given seven (7) days' notice of the hearing on the motion to sell their accounts to LPG.[43]  The notice provides a Dropbox link to multiple documents[44] along with a telephone number and email address monitored by the trustee to provide answers based on the Frequently Asked Questions (FAQ) sheet.[45]  Notably, the FAQ document is not included in the packet of documents available at the Dropbox link.  The FAQ document answers two questions only:  1) How to file a proof of claim and 2) Summary of Sale.[46]  Furthermore, *Amici* cannot access the live Dropbox link as all attempts result in the following message: "Error (404) We can't find the page you're looking for."[47]

Further, the Declaration states on information and belief that it was served on the 40,000 LPG clients by email based on "information and belief" that this is the historical primary method of communication LPG had with clients.[48]  Of note, the Proof of Service Document omits listing the 40,000 clients of LPG.[49]  Instead, it only lists the Court and sixty-three (63) parties who are served by electronic filing.[50]

Exhibit A to the Declaration of Christopher Celentino includes the text of the email sent to clients of LPG.[51]  That email lists several options but does not include demanding return of all moneys paid pursuant to federal and state law as described above.

---

[43] See Declaration of Christopher Celentino Regarding Notice of Sale to Consumer Clients, Dkt. # 233.
[44] Id. at 2-3.
[45] Id. at 3.
[46] Id. at 10.
[47] The Dropbox link is found in Exhibit B of the Declaration of Christopher Celentino, P. 8 as: (https://www.dropbox.com/scl/fo/hwcl3t5eta1ufsv1xjzsq/h?rlkey=een10yzdr4av9zf10jkt9z4mt&dl=0).
[48] Id. at 3.
[49] Id. at 17.
[50] Id. at 17-20.
[51] Id. at 6-7.

Importantly, the notice advises clients who have an objection to hire counsel to file a formal

objection to the proposed sale.  It does not indicate that clients can file pro se objections. Further,

it doesn't even list the deadline for objections and instead refers clients to the scheduling order on

the motion to approve sale to find the deadline themselves.  Clients will have five days from the

notice (dated July 13, 2023) to the deadline to file objections (July 19, 2023) to hire an attorney

and file a formal objection.

> Lastly, if you have any objection to the proposed sale as set forth in the pleadings, you should retain counsel to submit a formal objection to the Bankruptcy Court, as set forth on page 2, lines 15-16 of the SCHEDULING ORDER ON THE MOTION OF TRUSTEE RICHARD A. MARSHACK FOR ENTRY OF ORDER (A) APPROVING SALE, SUBJECT TO OVERBID, OF ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS PURSUANT TO 11 U.S.C. § 363(b) AND (B) APPROVING ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND OTHER AGREEMENTS, FILED JULY 7, 2023 [DK. 191] which you can review by accessing same in this link.[52]

This notice gives clients scant opportunity nor information to hire counsel and/or timely

file an objection to the sale.

> [When] notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it. The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected, compare *Hess* v. *Pawloski*, 274 U.S. 352, with *Wuchter* v. *Pizzutti*, 276 U.S. 13, or, where conditions do not reasonably permit such notice, that the form chosen is not substantially less likely to bring home notice than other of the feasible and customary substitutes.

*Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 315, 70 S. Ct. 652, 657-58 (1950).

---

[52] Id. at 7.

The very short notice by email, at best difficult for consumers to understand and without including other available legal options, does not constitute sufficient notice under the law.

## IV.    The Consumer Law Group Is Not An Appropriate Entity to Manage California Clients

The Consumer Law Group cannot provide legal representation to clients living in California. Since a significant number of clients are from California, CLG is not the best entity to manage those clients.

CLG's proposed contract with clients from LPG states

You understand that You are hiring a New York law firm which employs attorneys who are licensed to practice law in the states of New York and New Jersey, primarily because not every creditor is located or has an office in the state where You live and not all creditors are based in the state where You live. You acknowledge that CLG performs services pursuant to the Fair Debt Collections Practices Act as well as other federal statutes and You have an issue which may arise thereunder. You therefore authorize CLG to represent You, regardless of the state where You reside and that **You authorize CLG to engage local counsel in the individual state where You reside to represent You as if CLG was representing You itself**. (Emphasis added.)[53]

Subcontracting other lawyers and law firms to provide services is not an effective plan to properly supervise and maintain control over the quality of work nor ensure compliance with all federal and state laws. With the track record of LPG, it is imperative that their clients receive the best possible representation to address their debt problems.

Furthermore, the proposed contract includes flat fees for resolution of client's debt.[54] As explained for LPG above, this violates the FDSPA as flat fees bear no relationship to the amount of debt resolved.

---

[53] See the Trustee's Motion to Sell (Dkt. #191), Declaration of Richard A. Marshack, Exhibit 4, bottom of p. 2.
[54] Id.

The similarity between CLG and LPG indicates CLG may not be the best entity to handle the thousands of LPG's clients.

## V.      LPG Operates an Illegal Business

It is evident from the arguments above, that LPG operates its business in direct contravention of federal and state laws. The sale of that business in this bankruptcy is similar to selling other illegal businesses like illegal marijuana dispensaries. The court should not approve illegal activity by allowing the sale of an illegal enterprise.

> A person cannot choose to engage in behavior that is criminal under federal law and then expect to receive relief under the federal Bankruptcy Code. *See, In re Johnson*, 532 B.R. 53, 56-57 (Bankr. W.D. Mich. 2015); *see also In re Burton*, 610 B.R. 633, 638 (B.A.P. 9th Cir. 2020). Likewise, bankruptcy courts cannot place themselves in positions of condoning criminal activity by affording those who are engaged in criminal activity relief under the Code. *See, e.g., In re Rent-Rite Super Kegs W. Ltd.*, 484 B.R. 799, 805 (Bankr. D. Colo. 2012) (recognizing that "a federal court cannot be asked to enforce the protections of the Bankruptcy Code in aid of a Debtor whose activities constitute a continuing federal crime").

*In re Kittrell*, No. 4:09-bk-08537-BMW, 2020 Bankr. LEXIS 2809, at *11 (Bankr. D. Ariz. Oct. 6, 2020).

While the actions of LPG appear to violate only the civil laws mentioned above, the rationale is the same. The court should not condone illegal behavior by allowing the sale of an illegal business.

## CONCLUSION

LPG has been operating an illegal business under both federal and state laws. Based on the arguments and law stated above, *Amici* respectfully request the Court order that:

1. The motion to sell be denied because the Court should not be involved in selling an illegal business;

2. All ACH withdrawals to be immediately terminated and LPG be closed as an illegal business;

3. Property of LPG clients be immediately returned to them, with the trustee issuing a new notice to clients informing them how to get refunds and of alternate options for dealing with their debts, and providing clients with a reasonable time to file objections to any future sale;

4. The trustee provide an accounting for moneys held by the trustee, and disgorgement if client funds were used for any purpose by trustee;

5. For such other relief the Court determines is just and proper.

Respectfully submitted,

**J. DOLING LAW, PC**

*/s/ Jenny L. Doling*

Dated: July 19, 2023          By: _____
Jenny L. Doling, Esq. (#207033)
Local Counsel for Amicus Curiae
National Association of Consumer Bankruptcy Attorneys
and National Consumer Bankruptcy Rights Center

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

**36915 Cook Street, Suite 101**
**Palm Desert, CA 92211**

A true and correct copy of the foregoing document entitled (*specify*): **MOTION FOR LEAVE OF *AMICI*, THE NATIONAL CONSUMER BANKRUPTCY RIGHTS CENTER AND THE NATIONAL ASSOCIATION OF CONSUMER BANKRUPTCY ATTORNEYS TO FILE ITS BRIEF IN SUPPORT OF THE OBJECTIONS OF CAROLYN BEECH AND DIANE SCANAVACK (Dkt. #254) TO THE MOTION FOR SALE OF PROPERTY OF THE ESTATE UNDER SECTION 363(b) (Dkt. #191) and BRIEF OF *AMICI*, THE NATIONAL CONSUMER BANKRUPTCY RIGHTS CENTER AND THE NATIONAL ASSOCIATION OF CONSUMER BANKRUPTCY ATTORNEYS IN SUPPORT OF THE OBJECTIONS OF CAROLYN BEECH AND DIANE SCANAVACK (Dkt. #254) TO THE MOTION FOR SALE OF PROPERTY OF THE ESTATE UNDER SECTION 363(b) (Dkt. #191)** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):** Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **July 19, 2023**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Eric Bensamochan    eric@eblawfirm.us, G63723@notify.cincompass.com
Ronald K Brown    ron@rkbrownlaw.com
Christopher Celentino    christopher.celentino@dinsmore.com, caron.burke@dinsmore.com
Shawn M Christianson    cmcintire@buchalter.com, schristianson@buchalter.com
Randall Baldwin Clark    rbc@randallbclark.com
Leslie A Cohen    leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com;clare@lesliecohenlaw.com
Jenny L Doling    jd@jdl.law, dolingjr92080@notify.bestcase.com;15994@notices.nextchapterbk.com
Daniel A Edelman    dedelman@edcombs.com, courtecl@edcombs.com
Christopher Ghio    christopher.ghio@dinsmore.com, Kristina.Heller@Dinsmore.com
Jeffrey I Golden    jgolden@go2.law,
kadele@ecf.courtdrive.com;cbmeeker@gmail.com;lbracken@wgllp.com;gestrada@wgllp.com;golden.jeffreyi.b11
7954@notify.bestcase.com
Richard H Golubow    rgolubow@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com
D Edward Hays    ehays@marshackhays.com,
ehays@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@ecf.court
drive.com
Alan Craig Hochheiser    ahochheiser@mauricewutscher.com, arodriguez@mauricewutscher.com
Garrick A Hollander    ghollander@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com
Razmig Izakelian    razmigizakelian@quinnemanuel.com
Joon M Khang    joon@khanglaw.com
Ira David Kharasch    ikharasch@pszjlaw.com
Meredith King    mking@fsl.law, ssanchez@fsl.law;jwilson@fsl.law
Nicholas A Koffroth    nkoffroth@foxrothschild.com, khoang@foxrothschild.com
David S Kupetz    David.Kupetz@lockelord.com, mylene.ruiz@lockelord.com
Christopher J Langley    chris@slclawoffice.com,
omar@slclawoffice.com;langleycr75251@notify.bestcase.com;ecf123@casedriver.com
Daniel A Lev    daniel.lev@gmlaw.com, cheryl.caldwell@gmlaw.com;dlev@ecf.courtdrive.com
Michael D Lieberman    mlieberman@lipsonneilson.com
Yosina M Lissebeck    Yosina.Lissebeck@Dinsmore.com, caron.burke@dinsmore.com
Richard A Marshack (TR)    pkraus@marshackhays.com,
rmarshack@iq7technology.com;ecf.alert+Marshack@titlexi.com
Laila Masud    lmasud@marshackhays.com, lmasud@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com
Kenneth Misken    Kenneth.M.Misken@usdoj.gov
Byron Z Moldo    bmoldo@ecjlaw.com, amatsuoka@ecjlaw.com,dperez@ecjlaw.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                **F 9013-3.1.PROOF.SERVICE**

Alan I Nahmias    anahmias@mbn.law, jdale@mbnlawyers.com
Victoria Newmark    vnewmark@pszjlaw.com
Queenie K Ng    queenie.k.ng@usdoj.gov
Keith C Owens    kowens@foxrothschild.com, khoang@foxrothschild.com
Teri T Pham    tpham@epglawyers.com, ttpassistant@epglawyers.com
Douglas A Plazak    dplazak@rhlaw.com
Ronald N Richards    ron@ronaldrichards.com, 7206828420@filings.docketbird.com
Gregory M Salvato    gsalvato@salvatoboufadel.com,
calendar@salvatolawoffices.com;jboufadel@salvatoboufadel.com;gsalvato@ecf.inforuptcy.com
Olivia Scott    olivia.scott3@bclplaw.com
Jonathan Serrano    jonathan.serrano@dinsmore.com
Paul R Shankman    PShankman@fortislaw.com, info@fortislaw.com
Leslie Skorheim    leslie.skorheim@usdoj.gov
Howard Steinberg    steinbergh@gtlaw.com, pearsallt@gtlaw.com;howard-steinberg-6096@ecf.pacerpro.com
Andrew Still    astill@swlaw.com, kcollins@swlaw.com
United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov
Sharon Z. Weiss    sharon.weiss@bclplaw.com, raul.morales@bclplaw.com,REC_KM_ECF_SMO@bclplaw.com
Johnny White    JWhite@wrslawyers.com, jlee@wrslawyers.com

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL:**
On (date) **July 19, 2023**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**JUDGE**
**Honorable Scott C. Clarkson**
**United States Bankruptcy Court**
**411 West Fourth Street, Suite 5130**
**Santa Ana, CA  92701-4593**

**MANUAL NOTICE LIST**

| | | |
|---|---|---|
| **Dinsmore & Shohl LLP** | **Grobstein Teeple LLP** | **Marshack Hays LLP** |
| **655 W Broadway Ste 800** | **Grobstein Teeple LLP** | **870 Roosevelt** |
| **San Diego, Ca 92101** | **23832 Rockfield Blvd suite 245** | **Irvine, CA 92620** |
| | **Lake Forest, CA 92630** | |
| **Jason Patterson Stopnitzky** | **Lucy L. Thomson** | |
| **52 Cupertino Circle** | **1455 Pennsylvania Avenue, N.W.** | |
| **Aliso Viejo, CA 92656** | **Suite 400** | |
| | **Washington, DC 20004** | |

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (date) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| July 19, 2023 | Isabel Tostado | |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.