1  RICHARD H. GOLUBOW (SBN 160434)
   rgolubow@wghlawyers.com
2  GARRICK A. HOLLANDER (SBN 166316)
   ghollander@wghlawyers.com
3  **WINTHROP GOLUBOW HOLLANDER, LLP**
4  1301 Dove Street, 5th Floor
   Newport Beach, CA  92660
5  Telephone: (949) 720-4100
   Facsimile: (949) 720-4111
6
7  A. Barry Cappello (SBN 037835)
   abc@cappellonoel.com
8  David L. Cousineau (SBN 298801)
   dcousineau@cappellonoel.com
9  **CAPPELLO & NOËL LLP**
10 831 State Street
   Santa Barbara, CA 93101
11 Telephone: (805) 564-2444
   Facsimile: (805) 965-5950
12
13 Attorneys for Debt Validation Fund II, LLC,
   MC DVI Fund 1, LLC, and MC DVI Fund 2, LLC
14

15            **UNITED STATED BANKRUPTCY COURT**

16            **CENTRAL DISTRICT OF CALIFORNIA**

17                **SANTA ANA DIVISION**

18 In re                                    Case No.: 8:23-bk-10571-SC

19 THE LITIGATION PRACTICE GROUP P.C.,      CHAPTER 11

20                                          **RESPONSE BRIEF RE ORDER
                                            REQUESTING ADDITIONAL BRIEFING
21                Debtor.                   IN SUPPORT OF SALE MOTION**

22                                          Date:      July 21, 2023
                                            Time:      10:00 a.m.
23                                          Courtroom: 5C – Virtual[1]
24

25

26 ───────────────────

27 [1] Accessibility information will be posted into the Court's tentative ruling prior to the hearing.  Parties can obtain such
   accessibility information on Judge Clarkson's posted hearing calendar which may be viewed online at: http://ecf-
   ciao.cacb.uscourts.gov/CiaoPosted/?jid=SC
28

**CAPPELLO
& NOËL** LLP
TRIAL LAWYERS

**RESPONSE BRIEF RE ORDER REQUESTING ADDITIONAL BRIEFING IN SUPPORT OF SALE MOTION**

**TO THE HONORABLE SCOTT C. CLARKSON, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, THE CHAPTER 11 TRUSTEE, AND ALL PARTIES IN INTEREST:**

Debt Validation Fund II ("DVF"), LLC, MC DVI Fund 1, LLC and MC DVI Fund 2, LLC ("MC DVI", and collectively, the "Creditors") hereby submit this Response Brief pursuant to the Court's *Order Requesting Additional Briefing in Support of Sale Motion*, Docket No. 206 ("Order").

**A. Introduction.**

Creditors, three investment funds composed of approximately 500 investors, are the largest creditors of this bankruptcy estate.  In August 2022, The Litigation Practice Group P.C. (the "Debtor" or "LPG") and the Creditors entered promissory notes (the "Notes") dated September 1, 2022 for $66.4 million (for DVF) and $37.4 million (for MC DVI).  According to LPG's filings in this case, its debts to DVF and MC DVI represent about 72% of its stated debt; over $102 million of the $141 million LPG identifies.  *See*, Docket No. 33 at page 30 (debt owed to DVF and MC DVI) and page 38 (total debt).

On July 7, 2023, Richard Marshack (the "Chapter 11 Trustee") filed a *Motion for Entry of an Order Approving Sale of Assets*, Docket No. 191 ("Sale Motion").  On July 10, 2023, the Court entered the Order requesting additional briefing on three issues:

(1) the authority and ability of the Bankruptcy Court to permit the sale of assets of a business, or a business itself as a going concern,

(2) the conditions and post-sale reformations of any and all business operations, including independent monitoring, control and restrictions, and

(3) the disposition or use of the funds from customers/clients collected since the appointment of a Chapter 11 Trustee.

On July 17, 2023, Creditors filed a Joinder (Docket No. 267) to the *Pocket Brief of Chapter 11 Trustee Richard A. Marshack on Court's Authority to Approve the Sale Motion* (Docket No. 260) (the "Chapter 11 Trustee Brief").

Creditors submit this Response Brief *inter alia* to respond to certain arguments raised in the

Brief filed by the United States Trustee, Docket No. 259 ("UST Brief") and to contest the standing of putative class counsel on behalf of Carolyn Beech and other class members who filed a brief objecting to the Sale Motion, Docket No. 254 (the "Beech Objection").[2]  While no trial has been held regarding the Debtor's alleged wrongdoing and no findings have been made by any court, *i.e.*, without the most basic due process, the UST seeks to impose a judicial death sentence upon the Debtor, effectively destroying any meaningful recovery for creditors in this case.  Telling, the Consumer Financial Protection Bureau ("CFPB") does not even agree with the UST that LPG's business violates any of the consumer protection statutes and regulations.

On the other hand, the Trustee's proposed sale, and the protections included therein, seeks to protect consumers and creditors.  The asset purchase agreement ("APA") contains numerous protections to ensure the business will operate within the law, and will inform LPG clients of their rights and that they can continue working with the purchaser or drop out of the program.  And it appears, despite the negative, and highly publicized, facts that have emerged about LPG that most of the clients believe they are receiving a valuable service: of the 35,000 clients that are part of the estate, the UST and the CFPB identified 800 complaints; approximately 2% of the total clients.

Creditors therefore oppose the UST's draconian and heavy-handed resolution of this case, which would clearly be to the detriment of LPG's consumer clients/creditors and all other creditors, and support the Trustee's sale of the assets of the Debtor's business with the protections set forth in the APA and as described in detail in the Motion.

**B. LPG's Business is Not an Illegal Enterprise That Cannot be Sold.**

Creditors understand that the Trustee will be fully responding to the UST Brief.  Therefore, Creditors do not see value in simply duplicating arguments they anticipate will be made by the Trustee.  Creditors do believe a few key issues demonstrate the problems with the UST's position

---

[2] The UST has also filed a motion to convert the case to Chapter 7, Docket No. 218 ("Conversion Motion") that makes many of the arguments the UST makes in the UST Brief.  The hearing on the Conversion Motion is scheduled for August 10, 2023 at 10:00 a.m.  Creditors will file an opposition to the Conversion Motion no later than July 27, 2023, the deadline to oppose the Conversion Motion. Creditors do however, note that they oppose the Conversion Motion largely for the reasons outlined in the Chapter 11 Trustee Brief.

CAPPELLO
& NOEL LLP
TRIAL LAWYERS

MAINDOCS-#266595-v1-LPG-Response_Brief_re_Sale_Motion.docx

1    and address those below.

2        **(1)**    **Even the CFPB Does Not State That the Debtor's Business Cannot be Sold**

3        **or Should Be Shutdown.**

4          In the CFPB letter that the UST offered in support of the UST Brief, the CFPB specifically

5    says that its letter is not a "finding" that violations of the consumer protection statutes have occurred,

6    and then "respectfully suggests that the U.S. Trustee consider recommending steps to mitigate

7    potential violations and ongoing consumer harm in the event of a sale of LPG's assets." (Docket

8    No. 259 at page 31.) The CFPB then recommends six (6) steps to mitigate any such harm. (Docket

9    No. 259 at pages 38-39.) Thus, even the CFPB, the very agency that is charged with enforcing the

10    federal consumer financial laws believes that the business <u>can be</u> operated within the confines of the

11    arguably applicable federal regulations.

12          As to the six (6) steps, the CFPB does not explain how any of them are required by the

13    Telemarketing Sales Rule ("TSR"). Indeed, while one of the proposed steps is to immediately return

14    all money, the CFPB states in that very same letter that companies subject to the TSR <u>can</u> hold onto

15    clients' money so long as certain protections are maintained. (Docket No. 259 at pages 35-36.)

16    Assuming that the TSR does apply, the Debtor's clients—not the CFPB or the UST—should decide

17    whether they want to make advanced payments to the purchaser, subject to the required protections.

18    There could be innumerable reasons why clients would want to do so, for example, so that they can

19    put away funds for whatever fees will come due rather than having to make the payment all at once,

20    which could be a significant financial hardship. Thus, it is better to let the Debtor's clients decide

21    whether to make claims, rather than requiring the business to return money to clients who might not

22    want them and who may be confused as to why they are receiving the money or how it impacts their

23    obligation to pay when a debt is settled.

24          Creditors thus believe that many of the steps proposed by the CFPB are not required or

25    necessary and risk making it impossible for any purchaser to operate the business and, thereby, to

26    protect the clients.

27

28

**CAPPELLO
& NOEL** llp
TRIAL LAWYERS

MAINDOCS-#266595-v1-LPG-Response_Brief_re_Sale_Motion.docx

**(2)** **Shutting Down the Business Would Leave the Estate with No Ability to Pay the Clients, Whom the UST Purports to Protect.**

There is a fundamental disconnect between the UST's insistence on shutting down LPG while also advocating that customers of LPG need to be repaid anything they paid to LPG. Those customers who want to be repaid are almost guaranteed <u>not to be</u> if the business is shutdown. The Trustee only has approximately $5 million, which is from ACH pulls that occurred after he took over the business. The UST argues these monies must be returned to the clients from whom the money was pulled. The UST's approach means these funds cannot be used to pay the claims of other clients who want <u>all</u> their money back. Without the proceeds from a sale, the Trustee is therefore left without any funds to provide for the claims of other clients <u>and</u> will not have any funds to pursue avoidance claims against Tony Diab or others who harmed LPG, its clients, and its customers. The UST's approach, in essence, leaves the estate penniless, and Tony Diab and his co-conspirators as victors, at the expense of the clients and investors they abused.

On the other hand, if the business is allowed to continue operating, clients who want to continue being serviced can remain in the program—based on a reformed contract and oversight to ensure that the business is operating within applicable regulations—and there will be money available for those clients who want out of the program, as well as other creditors. In this regard, while the UST has focused on the 800 complaints the CFPB received, that is 800 out of the approximately 35,000 client files that have been identified during hearings and submissions as being in the program. Eight hundred is too many complaints for any legitimate business, but it represents only about 2% of the total enrolled clients. Moreover, based on the 500 "representative" complaints the UST submitted, the vast majority of these complaints occurred since January 1, 2023, *i.e.*, after Tony Diab began in earnest to scuttle the business. If only half of the clients want to remain in the program and get their debt invalidated, that would still be over 15,000 clients who could be benefited by the program and the sale proceeds thereof would provide funds to satisfy claims by creditors and other clients.

CAPPELLO
& NOEL LLP
TRIAL LAWYERS

MAINDOCS-#266595-v1-LPG-Response_Brief_re_Sale_Motion.docx

   **(3)**   **The 500 Complaints the UST Attaches Indicate That LPG Operated for Years as a Legitimate Enterprise, Benefitting Clients.**

  Of the 500 complaints that the UST submitted, 265 post-date the bankruptcy filing and an additional 168 occurred between the beginning of this year and the bankruptcy filing.  Thus, for the majority of LPG's existence, while it faced complaints, the vast majority of its clients appear to have been happy with its services.  It was only after Tony Diab ("Diab") began his stratagem to transfer clients to other entities in order to avoid creditors that the complaints skyrocketed.  There is no doubt that significant problems arose this year and that clients have been mistreated during that time.  The solution is not to treat LPG as an irredeemable illegal enterprise; it is to take steps to ensure that those clients who continue to want debt validation services can continue to get those services within the confines of applicable regulations.  That is what the Trustee's proposed sale does.

  The harm to clients is not just the inability to get their money back.  These clients sought LPG's assistance because they had succumbed to predatory creditors and were being, or were soon to be, chased by debt collectors, who are renowned for their aggressive and overbearing tactics.  Some received good service, and others, unfortunately, did not.  Since the beginning of this year, all these clients have been abused due to Diab's mismanagement of the company.  If the business is shut down—especially without any way to generate money for clients who request money back—the clients will be on their own, out the money they paid LPG, and largely at the mercy of unscrupulous debt collectors who will be seeking full payment plus unconscionable interest.

  This is a suit in equity, in which the Court and parties are seeking a solution to a bad situation, a solution that has the greatest likelihood of achieving successes for LPG's clients that want someone to continue pursuing invalidation of their debts, recovery for those clients who do not, and recovery for those creditors who were defrauded by Diab.  None of the UST's authority indicate that the Court cannot, or should not, approve a sale of a company that can be operated legally.

 **C.**  **The Court Should Not Impose a Post-Petition Constructive Trust Over the Funds Collected from Clients.**

  The Court's Order *inter alia* requests that the parties brief the disposition or use of the funds from customers/clients collected since the appointment of a Chapter 11 Trustee.

CAPPELLO
& NOEL LLP
TRIAL LAWYERS

MAINDOCS-#266595-v1-LPG-Response_Brief_re_Sale_Motion.docx

In response, the UST Brief asserts that any funds from the customers (including the funds held by the Trustee in a segregated blocked account) are in violation of the TSR, the Credit Repair Organizations Act ("CROA") and any applicable laws, and should not be deemed property of the estate, but rather returned to such customers.

The UST's argument is premised upon a violation of the TSR and/or CROA.  However, the Chapter 11 Trustee Brief establishes that the Debtor is not and was not a "debt relief service" nor did the Debtor accept fees to improve "any consumer's credit record, credit history, or credit rating," and therefore the Debtor is not subject to the TSR and CROA. Thus, there is no legal basis to impose a constructive trust over the customer funds.

The UST Brief in effect argues for the imposition of a constructive trust over these funds held by the Trustee.  Chapter 11 Trustee Brief at pgs. 5- 8.  While the UST may cite authority that customers are entitled to the imposition of a trust remedy outside of bankruptcy, courts have long recognized that the equities in bankruptcy are simply different and that such authorities are no longer persuasive. In re Bennett Funding Group, Inc., 2007 WL 2042498, at *5 (N.D.N.Y. 2007) ("[T]he imposition of constructive trusts outside of the bankruptcy context are not binding and are less persuasive in adversary actions in bankruptcy proceedings, such as the case at bar; the equities at issue are significantly different when a claimant seeks to impose a constructive trust on proceeds held by a bankruptcy trustee for distribution to all similarly situated unsecured creditors.") citing In re First Central Financial Corp., 377 F.3d 209, 218 (2nd Cir. 2004).

The UST Brief ignores the clear Ninth Circuit authority barring the imposition of post-petition constructive trusts, as such a remedy violates the federal bankruptcy policy of ratable distribution amongst creditors.  The UST's argument to impose a trust would benefit a small subset of customers who made post-petition payments to the Trustee, at the expense of other customers and unsecured creditors of the estate.  Such a remedy would arbitrarily favor one group of claimants over all other claimants.

The Ninth Circuit has long recognized that the federal bankruptcy policy of "ratable distribution among all creditors is one of the strongest policies behind the bankruptcy laws." In re North American Coin & Currency, Ltd., 767 F.2d 1573, 1575 (9th Cir. 1985) citing In re Visiting

CAPPELLO
& NOEL LLP
TRIAL LAWYERS

1  Home Services, Inc., 643 F.2d 1356, 1360 (9th Cir.1981); Hassen v. Jonas, 373 F.2d 880, 881 (9th

2  Cir.1967).

3          Courts in this Circuit have further recognized that the imposition of a trust over funds,

4  which favors one group of creditors, to the disadvantage of other creditors, violates this policy.

5  "Imposing a constructive trust in favor of one creditor deprives other creditors of a pro rata

6  recovery from debtor's estate and is contrary to one of the strongest policies underlying the

7  bankruptcy law: ratable distribution of assets to all creditors." In re Naemi, 128 B.R. 273, 280

8  (Bankr. S.D. Cal. 1991).  See also, In re Commercial Money Center, Inc., 392 B.R. 814, 831 (9th

9  Cir. BAP 2008) ("We therefore act very cautiously in recognizing a constructive trust in favor of

10  one creditor over another, as one of the strongest policies in bankruptcy law is equality of

11  distributions among like situated creditors."); In re Charlton, 389 B.R. 97, 104–05 (Bankr. N.D.

12  Cal. 2008) ("Enforcing the retroactive property division against the estate … would favor one

13  creditor over others, thereby undermining the policy of ratable distribution.").

14          "In bankruptcy, it does not end the matter for a court to find that state law would impose a

15  constructive trust over certain property; the constructive trust will not be given effect if it is against

16  the federal bankruptcy policy favoring ratable distribution to all creditors." In re Advent

17  Management Corp., 178 B.R. 480, 489 (9th Cir. BAP 1995).  As observed by the Ninth Circuit:

18          [W]e cannot accept the proposition that the bankruptcy estate is automatically
           deprived of any funds that state law might find subject to a constructive trust. *** A
19          constructive trust is not the same kind of interest in property as a joint tenancy or a
           remainder. It is a remedy, flexibly fashioned in equity to provide relief where a
20          balancing of interests in the context of a particular case seems to call for it.
           Moreover, in the case presented here it is an inchoate remedy; we are not dealing
21          with property that a state court decree has in the past placed under a constructive
           trust. **We necessarily act very cautiously in exercising such a relatively
22          undefined equitable power in favor of one group of potential creditors at the
           expense of other creditors, for ratable distribution among all creditors is one of
23          the strongest policies behind the bankruptcy laws**.

24

25  In re North American Coin & Currency, Ltd., 767 F.2d 1573, 1575 (9th Cir. 1985).

26          Moreover, even if certain customers are deemed to have some form of property right or *in*

27  *rem* interest in the funds held by the trustee, such rights are unperfected and therefore inferior to the

28  strong-arm powers of the Trustee. "A fair reading of the statutes in this context mandates that

Cappello
& Noel LLP
TRIAL LAWYERS

1    section 544(a)(3) prevail in this and similar instances. An asserted constructive trust clearly

2    represents the kind of inchoate claim that section 544(a)(3) was designed to cut off." In re Seaway

3    Exp. Corp., 912 F.2d 1125, 1129 (9th Cir. 1990) (internal marks omitted) quoting In re Tleel, 876

4    F.2d 769 (9th Cir.1989) (inchoate trust remedy not superior to trustee's strong-arm power).  See also

5    In re Markair, Inc., 172 B.R. 638, 642 (9th Cir. BAP 1994) ("If a constructive trust would have

6    been the proper state law remedy to prevent [debtor's] unjust retention of the res, that remedy was

7    inchoate when the estate was formed, and the trustee, representing the creditors of the estate, may

8    defeat its application pursuant to § 544(a)."); In re Lewis W. Shurtleff, Inc., 778 F.2d 1416 (9th

9    Cir.1985) (inchoate remedy of constructive trust not superior to trustee's strong-arm and policy of

10    ratable distribution); In re Advent Management Corp., 178 B.R. 480, 489 (9th Cir. BAP 1995)

11    (Where there is no order recognizing a constructive trust prepetition, a trustee may avoid a

12    constructive trust through the exercise of the strong-arm powers of section 544(a)).

13        For the same reasons here, the UST's request to impose a trust over the funds held by the

14    Trustee violates the federal bankruptcy policy of ratable distribution among creditors.  The UST's

15    argument to impose a trust would benefit a small subset of customers, at the expense of other

16    customers and unsecured creditors of the estate.  Such a remedy would arbitrarily favor one group

17    of creditors over other unsecured creditors.  Bankruptcy policy dictates that such funds should be

18    held by the estate for the benefit of all creditors.

19    **D.  Putative Class Counsel Lacks Standing to Object to the Sale Motion.**

20        Putative class counsel for Carolyn Beech has also filed a brief objecting to the Sale Motion,

21    Docket No. 254 (the "Beech Objection").  Putative class counsel has purported to execute and file a

22    Class Proof of Claim, identified as Claim 82-1, on behalf of a class of LPG's customers residing in

23    states other than Georgia ("Class Claim").  However, the purported Class Claim is facially

24    defective, and thus putative class counsel lacks standing to object to the Sale Motion on behalf of

25    the purported class.  Rule 23 of the Federal Rules of Civil Procedure ("FRCP") governs class action

26    proceedings in federal court.  Rule 7023 of the Federal Rules of Bankruptcy Procedure ("FRBP"),

27    which incorporates FRCP 23, does not automatically apply to contested matters, such as proofs of

28    claim.  Rather, pursuant to FRBP 9014(c), the bankruptcy court has discretion as to whether to

1    apply FRCP 23 to allow a class claim in the bankruptcy proceeding.  FRBP 9014(c) requires a

2    putative class representative to affirmative file a motion requesting the application of FRBP 7023 to

3    the claims process.  In re Certified Parking Attendants, LLC, 2012 WL 525516, at *3

4    (N.D.Cal.,2012) ("In the absence of any motion under Rule 9014 seeking to apply FRCP 23

5    through Rule 7023, the Court finds that bankruptcy court did not err in not allowing a class claim

6    by Appellants."); Mortland v. Aughney, 2011 WL 2653515, at *2 (N.D. Cal. 2011) ("Appellants

7    never moved the bankruptcy court for application of Rule 23. That is dispositive.").

8          Moreover, it is improper for putative class counsel to execute and file a class claim without

9    prior authorization from each putative class member.  Reid v. White Motor Corp., 886 F.2d 1462,

10   1471–72 (6th Cir. 1989); In re Brand Affinity Technologies, Inc., 2016 WL 8309670, at *1 (Bankr.

11   C.D. Cal. 2016).  Such authorization must exist before the Class Claim is filed.  In re Standard

12   Metals Corp., 817 F.2d 625 (10th Cir. 1987) ("Attempts to file proofs of claim on behalf of a class

13   have been rejected where there was no showing that each member of the class had authorized the

14   'agent' to file on his or her behalf. Rule 3001(b) allows a creditor to decide to file a proof of claim

15   and to instruct an agent to do so; it does not allow an 'agent' to decide to file a proof of claim and

16   then inform a creditor after the fact."); In re FIRSTPLUS Financial, Inc., 248 B.R. 60, 70 (Bankr.

17   N.D. Tex. 2000) ("[I]f a class proof of claim is proper, it should be proper from the moment of its

18   filing; the class representative's authorized agent status under Rule 3001(b) should not be

19   established after the fact, it should exist and persist from the instant the claim is filed.").

20         Since the Class Claim has not been filed in compliance with the Bankruptcy Rules and there

21   has been no class certification, the Class Claim is not prima facie valid.  In re Musicland Holding

22   Corp., 362 B.R. 644, 652 (Bankr. S.D.N.Y. 2007) ("The proof of claim, improperly filed or

23   improperly signed, is not prima facie evidence of the debt, and until class certification, may not

24   even be a 'filed' claim within the meaning of 11 U.S.C. § 502(a).").

25         Here, putative class counsel has failed to file a motion pursuant to FRBP 7023 permitting a

26   class proof of claim.  Additionally, putative class counsel has failed to establish prior authorization

27   from each putative class member to execute and file a class claim on their behalf.  Accordingly,

28   putative class counsel lacks any authority or standing to file the Class Claim or to represent such

CAPPELLO
& NOEL llp
TRIAL LAWYERS

-10-

class in this proceeding.  Therefore, putative class counsel lacks standing to object to the Sale

Motion.

**E.**    **Conclusion.**

Based upon the preceding, and for the reasons set forth in the Chapter 11 Trustee Brief,

Creditors submit that the Court should grant the Sale Motion, overruling the objections of the UST

and putative class counsel, and such other relief as the Court deems just and proper.

Dated:  July 19, 2023                              **WINTHROP GOLUBOW HOLLANDER, LLP**


By: _____*/s/ Richard H. Golubow*_____
      Richard H. Golubow
      Garrick A. Hollander
Attorneys for Debt Validation Fund II, LLC, MC DVI
Fund 1, LLC and MC DVI Fund 2, LLC

MAINDOCS-#266595-v1-LPG-Response_Brief_re_Sale_Motion.docx

**PROOF OF SERVICE OF DOCUMENT**

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 1301 Dove Street, Suite 500, Newport Beach, CA 92660

A true and correct copy of the foregoing document entitled (*specify*): **RESPONSE BRIEF RE ORDER REQUESTING ADDITIONAL BRIEFING IN SUPPORT OF SALE MOTION** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:
Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **July 19, 2023**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒       Service information continued on attached page

**2.**  **SERVED BY UNITED STATES MAIL**:  On **July    , 2023**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐       Service information continued on attached page

**3.**  **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **July    , 2023**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| July 19, 2023 | Jeannie Martinez | */s/ Jeannie Martinez* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

MAINDOCS-#266595-v1-LPG-Response_Brief_re_Sale_Motion.docx

CAPPELLO
& NOEL LLP
TRIAL LAWYERS

**NEF SERVICE LIST**

- **Eric Bensamochan**    eric@eblawfirm.us, G63723@notify.cincompass.com
- **Ronald K Brown**    ron@rkbrownlaw.com
- **Christopher Celentino**    christopher.celentino@dinsmore.com,
  caron.burke@dinsmore.com
- **Shawn M Christianson**    cmcintire@buchalter.com, schristianson@buchalter.com
- **Randall Baldwin Clark**    rbc@randallbclark.com
- **Leslie A Cohen**    leslie@lesliecohenlaw.com,
  jaime@lesliecohenlaw.com;clare@lesliecohenlaw.com
- **Jenny L Doling**    jd@jdl.law,
  dolingjr92080@notify.bestcase.com;15994@notices.nextchapterbk.com
- **Daniel A Edelman**    dedelman@edcombs.com, courtecl@edcombs.com
- **Christopher Ghio**    christopher.ghio@dinsmore.com, Kristina.Heller@Dinsmore.com
- **Jeffrey I Golden**    jgolden@go2.law,
  kadele@ecf.courtdrive.com;cbmeeker@gmail.com;lbracken@wgllp.com;gestrada@wgllp.com;golden.jeffreyi.b117954@notify.bestcase.com
- **Richard H Golubow**    rgolubow@wghlawyers.com,
  jmartinez@wghlawyers.com;svillegas@wghlawyers.com
- **D Edward Hays**    ehays@marshackhays.com,
  ehays@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@ecf.courtdrive.com
- **Alan Craig Hochheiser**    ahochheiser@mauricewutscher.com,
  arodriguez@mauricewutscher.com
- **Garrick A Hollander**    ghollander@wghlawyers.com,
  jmartinez@wghlawyers.com;svillegas@wghlawyers.com
- **Razmig Izakelian**    razmigizakelian@quinnemanuel.com
- **Joon M Khang**    joon@khanglaw.com
- **Ira David Kharasch**    ikharasch@pszjlaw.com
- **Meredith King**    mking@fsl.law, ssanchez@fsl.law;jwilson@fsl.law
- **Nicholas A Koffroth**    nkoffroth@foxrothschild.com, khoang@foxrothschild.com
- **David S Kupetz**    David.Kupetz@lockelord.com, mylene.ruiz@lockelord.com
- **Christopher J Langley**    chris@slclawoffice.com,
  omar@slclawoffice.com;langleycr75251@notify.bestcase.com;ecf123@casedriver.com
- **Daniel A Lev**    daniel.lev@gmlaw.com,
  cheryl.caldwell@gmlaw.com;dlev@ecf.courtdrive.com
- **Michael D Lieberman**    mlieberman@lipsonneilson.com
- **Yosina M Lissebeck**    Yosina.Lissebeck@Dinsmore.com, caron.burke@dinsmore.com
- **Richard A Marshack (TR)**    pkraus@marshackhays.com,
  rmarshack@iq7technology.com;ecf.alert+Marshack@titlexi.com
- **Laila Masud**    lmasud@marshackhays.com,
  lmasud@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com
- **Kenneth Misken**    Kenneth.M.Misken@usdoj.gov
- **Byron Z Moldo**    bmoldo@ecjlaw.com, amatsuoka@ecjlaw.com,dperez@ecjlaw.com
- **Alan I Nahmias**    anahmias@mbn.law, jdale@mbnlawyers.com
- **Victoria Newmark**    vnewmark@pszjlaw.com
- **Queenie K Ng**    queenie.k.ng@usdoj.gov
- **Keith C Owens**    kowens@foxrothschild.com, khoang@foxrothschild.com
- **Teri T Pham**    tpham@epglawyers.com, ttpassistant@epglawyers.com
- **Douglas A Plazak**    dplazak@rhlaw.com

CAPPELLO
& NOEL LLP
TRIAL LAWYERS

1

- **Ronald N Richards**    ron@ronaldrichards.com, 7206828420@filings.docketbird.com
- **Gregory M Salvato**    gsalvato@salvatoboufadel.com,
  calendar@salvatolawoffices.com;jboufadel@salvatoboufadel.com;gsalvato@ecf.inforuptcy.c
  om
- **Olivia Scott**    olivia.scott3@bclplaw.com
- **Jonathan Serrano**    jonathan.serrano@dinsmore.com
- **Paul R Shankman**    PShankman@fortislaw.com, info@fortislaw.com
- **Leslie Skorheim**    leslie.skorheim@usdoj.gov
- **Howard Steinberg**    steinbergh@gtlaw.com, pearsallt@gtlaw.com;howard-steinberg-
  6096@ecf.pacerpro.com
- **Andrew Still**    astill@swlaw.com, kcollins@swlaw.com
- **United States Trustee (SA)**    ustpregion16.sa.ecf@usdoj.gov
- **Sharon Z. Weiss**    sharon.weiss@bclplaw.com,
  raul.morales@bclplaw.com,REC_KM_ECF_SMO@bclplaw.com
- **Johnny White**    JWhite@wrslawyers.com, jlee@wrslawyers.com

MAINDOCS-#266595-v1-LPG-Response_Brief_re_Sale_Motion.docx

CAPPELLO
& NOEL LLP
TRIAL LAWYERS