RICHARD H. GOLUBOW (SBN 160434)
rgolubow@wghlawyers.com
GARRICK A. HOLLANDER (SBN 166316)
ghollander@wghlawyers.com
**WINTHROP GOLUBOW HOLLANDER, LLP**
1301 Dove Street, 5th Floor
Newport Beach, CA  92660
Telephone: (949) 720-4100
Facsimile: (949) 720-4111

A. Barry Cappello (SBN 037835)
abc@cappellonoel.com
David L. Cousineau (SBN 298801)
dcousineau@cappellonoel.com
**CAPPELLO & NOËL LLP**
831 State Street
Santa Barbara, CA 93101
Telephone: (805) 564-2444
Facsimile: (805) 965-5950

Attorneys for Debt Validation Fund II, LLC,
MC DVI Fund 1, LLC, and MC DVI Fund 2, LLC

**UNITED STATED BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SANTA ANA DIVISION**

| | |
|---|---|
| In re<br><br>THE LITIGATION PRACTICE GROUP P.C.,<br><br>Debtor. | Case No.: 8:23-bk-10571-SC<br><br>CHAPTER 11<br><br>**PRELIMINARY OPPOSITION TO MOTION BY UNITED STATES TRUSTEE TO CONVERT CASE TO CHAPTER 7 PURSUANT TO 11 U.S.C. § 1112(b), AND JOINDER TO CHAPTER 11 TRUSTEE'S PRELIMINARY OPPOSITION THERETO**<br><br>DATE:  August 10, 2023<br>TIME:   10:00 a.m.<br>CTRM:  5C – Virtual[1] |

---

[1] Accessibility information will be posted into the Court's tentative ruling prior to the hearing.  Parties can obtain such accessibility information on Judge Clarkson's posted hearing calendar which may be viewed online at: http://ecf-ciao.cacb.uscourts.gov/CiaoPosted/?jid=SC

**TO THE HONORABLE SCOTT C. CLARKSON, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, THE CHAPTER 11 TRUSTEE, AND ALL PARTIES IN INTEREST:**

Debt Validation Fund II, LLC, ("DVF")MC DVI Fund 1, LLC and MC DVI Fund 2, LLC ("MC DVI", and collectively, the "Creditors") hereby submit this Preliminary[2] Opposition ("Opposition") to the *Motion to Convert Case to Chapter 7 Pursuant to 11 U.S.C. § 1112(b)*, Docket No. 232 ("Conversion Motion") filed by the Office of the United States Trustee ("UST"); and hereby joins the Preliminary Opposition to the Conversion Motion, Docket No. 286, filed by Richard Marshack (the "Chapter 11 Trustee").

### A. Introduction.

Creditors, three investment funds composed of approximately 500 investors, are the largest creditors of this bankruptcy estate. In August 2022, The Litigation Practice Group P.C. (the "Debtor" or "LPG") and the Creditors entered promissory notes (the "Notes") dated September 1, 2022 for $66.4 million (for DVF) and $37.4 million (for MC DVI). According to LPG's filings in this case, its debts to DVF and MC DVI represent about 72% of its stated debt; over $102 million of the $141 million LPG identifies. See, Docket No. 33 at page 30 (debt owed to DVF and MC DVI) and page 38 (total debt).

On July 7, 2023, the Chapter 11 Trustee filed his *Motion for Entry of an Order Approving Sale of Assets*, Docket No. 191 ("Sale Motion"). Less than a week later, on July 13, 2023, the UST filed the Conversion Motion, *inter alia* arguing that LPG's business should be shut down purportedly because the continued operation and sale of LPG's debt validation business likely violates federal and state law, and that a chapter 7 trustee should return the funds collected from customers.

On July 19, 2023, the Chapter 11 Trustee filed his "Preliminary Opposition" to the Conversion Motion. Creditors hereby join the Preliminary Opposition filed by the Chapter 11 Trustee.

---

[2] This preliminary opposition is filed one (1) week in advance of the July 27, 2023 deadline for timely opposition to be filed to the Conversion Motion. In this regard, Creditors reserve the right to supplement this preliminary opposition on or before July 27.

MAINDOCS-#266596-v3-LPG_Opp_UST_Mtn_Convert.docx

1        Creditors submit this Opposition *inter alia* to respond to certain arguments raised in the

2 Conversion Motion.  While no trial has been held regarding the Debtor's alleged wrongdoing and no

3 findings have been made by any court, *i.e.*, without the most basic due process, the UST seeks to

4 impose a judicial death sentence upon the Debtor, effectively destroying any meaningful recovery for

5 creditors in this case.  Tellingly, the Consumer Financial Protection Bureau ("CFPB") does not even

6 agree with the UST's rigid position that LPG's business violates any of the consumer protection

7 statutes and regulations.

8        On the other hand, the Chapter 11 Trustee's proposed sale, and the protections included

9 therein, seeks to protect consumers and creditors.  The asset purchase agreement ("APA") contains

10 numerous protections to ensure the business will operate within the law, and will inform LPG clients

11 of their rights and that they can continue working with the purchaser or drop out of the program.  And

12 it appears, despite the negative, and highly publicized, facts that have emerged about LPG that most

13 of the clients believe they are receiving a valuable service: of the 35,000 clients that are part of the

14 estate, the UST and the CFPB identified 800 complaints; approximately 2% of the total clients.

15        Creditors therefore oppose the UST's draconian and heavy-handed resolution of this case,

16 which would clearly be to the detriment of LPG's consumer clients/creditors and all other creditors,

17 and support the continued operation of the business in Chapter 11 pending the Trustee's sale of the

18 assets with the protections set forth in the APA and as described in detail in the Sale Motion.

19        Furthermore, Creditors note that that the UST appears to have stepped over the proverbial line

20 with respect to its shocking allegation that the Chapter 11 Trustee has "grossly mismanaged" the

21 estate. The UST cites the Devers case for the proposition that bankruptcy estates must be managed

22 with an aim to protect and conserve property for the benefit of creditors. See, Conversion Motion,

23 page 32, lines 20-25.  The docket and record of this case objectively and completely supports the

24 conclusion that the Trustee has been extremely diligent, proactive and moving with great alacrity in

25 his attempt to preserve the going concern value of the Debtor's business for the benefit of all creditors

26 of the estate. Furthermore, the docket and record of this case objectively and completely supports the

27 conclusion that the UST has undermined the Trustee's efforts in this case to protect the consumer

28

MAINDOCS-#266596-v3-LPG_Opp_UST_Mtn_Convert.docx

clients and maximize the value of the estate. The UST has blanketly objected to the Trustee's use of cash on hand to pay payroll, as well as requests to borrow money to pay payroll in order to retain employees critical to maintain the going concern value of the Debtor's estate. Creditors understand and appreciate the differences of opinion as to the various novel issues presented in this case. However, to say that the Trustee, acting under this Court's authority has grossly mismanaged the estate, implicates not only the Trustee, but his counsel and the Court, which has also been extremely proactive in trying to do what is in the best interest of all creditors of the estate. In sum the record in this case clearly reflects that the Trustee has not grossly mismanaged the estate. To the contrary, the Trustee has, under extremely difficult and time sensitive circumstances, managed the estate with an aim to protect and conserve property for the benefit of all creditors of the estate.

**B. LPG's Business is Not an Illegal Enterprise That Cannot be Sold.**

Creditors understand that the Chapter 11 Trustee will subsequently submit a full opposition to the Conversion Motion. Therefore, Creditors do not see value in simply duplicating arguments that have been or they anticipate will be made by the Chapter 11 Trustee. Creditors do believe a few key issues demonstrate the problems with the UST's position and address those below.

**(1) Even the CFPB Does Not State That the Debtor's Business Cannot be Sold or Should Be Shutdown.**

In the CFPB letter that the UST offered into evidence, the CFPB specifically says that its letter is not a "finding" that violations of the consumer protection statutes have occurred, and then "respectfully suggests that the U.S. Trustee consider recommending steps to mitigate potential violations and ongoing consumer harm in the event of a sale of LPG's assets." (Docket No. 259 at page 31.) The CFPB then recommends six (6) steps to mitigate any such harm. (Docket No. 259 at pages 38-39.) Thus, even the CFPB, the very agency that is charged with enforcing the federal consumer financial laws believes that the business <u>can be</u> operated within the confines of the arguably applicable federal regulations.

As to the six (6) steps, the CFPB does not explain how any of them are required by the Telemarketing Sales Rule ("<u>TSR</u>"). Indeed, while one of the proposed steps is to immediately return

all money, the CFPB states in that very same letter that companies subject to the TSR <u>can</u> hold onto clients' money so long as certain protections are maintained. (Docket No. 259 at pages 35-36.) Assuming that the TSR does apply, the Debtor's clients—not the CFPB or the UST—should decide whether they want to make advanced payments to the purchaser, subject to the required protections. There could be innumerable reasons why clients would want to do so, for example, so that they can put away funds for whatever fees will come due rather than having to make the payment all at once, which could be a significant financial hardship. Thus, it is better to let the Debtor's clients decide whether to make claims, rather than requiring the business to return money to clients who might not want them and who may be confused as to why they are receiving the money or how it impacts their obligation to pay when a debt is settled.

Creditors thus believe that many of the steps proposed by the CFPB are not required or necessary and risk making it impossible for any purchaser to operate the business and, thereby, to protect the clients.

### (2) **Shutting Down the Business Would Leave the Estate with No Ability to Pay the Clients, Whom the UST Purports to Protect.**

There is a fundamental disconnect between the UST's insistence on shutting down LPG while also advocating that customers of LPG need to be repaid anything they paid to LPG. Those customers who want to be repaid are almost guaranteed <u>not to be</u> if the business is shutdown. The Trustee only has approximately $5 million, which is from ACH pulls that occurred after he took over the business. The UST argues these monies must be returned to the clients from whom the money was pulled. The UST's approach means these funds cannot be used to pay the claims of other clients who want <u>all</u> their money back. Without the proceeds from a sale, the Trustee is therefore left without any funds to provide for the claims of other clients <u>and</u> will not have any funds to pursue avoidance claims against Tony Diab ("Diab") or others who harmed LPG, its clients, and its customers. The UST's approach, in essence, leaves the estate penniless, and Diab and his co-conspirators as victors, at the expense of the clients and investors they abused.

On the other hand, if the business is allowed to continue operating, clients who want to

continue being serviced can remain in the program—based on a reformed contract and oversight to ensure that the business is operating within applicable regulations—and there will be money available for those clients who want out of the program, as well as other creditors. In this regard, while the UST has focused on the 800 complaints the CFPB received, that is 800 out of the approximately 35,000 client files that have been identified during hearings and submissions as being in the program. Eight hundred is too many complaints for any legitimate business, but it represents only about 2% of the total enrolled clients. Moreover, based on the 500 "representative" complaints the UST submitted, the vast majority of these complaints occurred since January 1, 2023, *i.e.*, after Diab began in earnest to scuttle the business. If only half of the clients want to remain in the program and get their debt invalidated, that would still be over 15,000 clients who could be benefited by the program and the sale proceeds thereof would provide funds to satisfy claims by creditors and other clients.

### (3) The 500 Complaints the UST Attaches Indicate That LPG Operated for Years as a Legitimate Enterprise, Benefitting Clients.

Of the 500 complaints that the UST submitted, 265 post-date the bankruptcy filing and an additional 168 occurred between the beginning of this year and the bankruptcy filing. Thus, for the majority of LPG's existence, while it faced complaints, the vast majority of its clients appear to have been happy with its services. It was only after Diab began his stratagem to transfer clients to other entities in order to avoid creditors that the complaints skyrocketed. There is no doubt that significant problems arose this year and that clients have been mistreated during that time. The solution is not to treat LPG as an irredeemable illegal enterprise; it is to take steps to ensure that those clients who continue to want debt validation services can continue to get those services within the confines of applicable regulations. That is what the Trustee's proposed sale does.

The harm to clients is not just the inability to get their money back. These clients sought LPG's assistance because they had succumbed to predatory creditors and were being, or were soon to be, chased by debt collectors, who are renowned for their aggressive and overbearing tactics. Some received good service, and others, unfortunately, did not. Since the beginning of this year, all these clients have been abused due to Diab's mismanagement of the company. If the business is shut

CAPPELLO & NOËL LLP
TRIAL LAWYERS

MAINDOCS-#266596-v3-LPG_Opp_UST_Mtn_Convert.docx

down—especially without any way to generate money for clients who request money back—the clients will be on their own, out the money they paid LPG, and largely at the mercy of unscrupulous debt collectors who will be seeking full payment plus unconscionable interest.

This is a suit in equity, in which the Court and parties are seeking a solution to a bad situation, a solution that has the greatest likelihood of achieving successes for LPG's clients that want someone to continue pursuing invalidation of their debts, recovery for those clients who do not, and recovery for those creditors who were defrauded by Diab. None of the UST's authority indicate that the Court cannot, or should not, approve a sale of a company that can be operated legally.

C. **The Court Should Not Impose a Post-Petition Constructive Trust Over the Funds Collected from Clients.**

The Conversion Motion further asserts that the funds from the customers (including the funds held by the Trustee in a segregated blocked account) should be returned to such customers. See, Conversion Motion, at page 8:21-22 ("all ACH funds that have been withdrawn should be returned to consumers").

The UST's argument is premised upon a violation of the TSR and/or CROA. However, the Chapter 11 Trustee Pocket Brief (Docket No. 260) establishes that the Debtor is not and was not a "debt relief service" nor did the Debtor accept fees to improve "any consumer's credit record, credit history, or credit rating," and therefore the Debtor is not subject to the TSR and CROA. See, Chapter 11 Trustee Brief at pgs. 5- 8. Thus, there is no legal basis to impose a constructive trust over the customer funds.

The Conversion Motion in effect argues for the imposition of a constructive trust over these funds held by the Chapter 11 Trustee. While the UST may cite authority that customers are entitled to the imposition of a trust remedy outside of bankruptcy, courts have long recognized that the equities in bankruptcy are simply different and that such authorities are no longer persuasive. In re Bennett Funding Group, Inc., 2007 WL 2042498, at *5 (N.D.N.Y. 2007) ("[T]he imposition of constructive trusts outside of the bankruptcy context are not binding and are less persuasive in adversary actions in bankruptcy proceedings, such as the case at bar; the equities at issue are

CAPPELLO & NOËL LLP
TRIAL LAWYERS

significantly different when a claimant seeks to impose a constructive trust on proceeds held by a bankruptcy trustee for distribution to all similarly situated unsecured creditors.") citing In re First Central Financial Corp., 377 F.3d 209, 218 (2nd Cir. 2004).

The Conversion Motion ignores the clear Ninth Circuit authority barring the imposition of post-petition constructive trusts, as such a remedy violates the federal bankruptcy policy of ratable distribution amongst creditors. The UST's argument to impose a trust would benefit a small subset of customers who made post-petition payments to the Trustee, at the expense of other customers and unsecured creditors of the estate. Such a remedy would arbitrarily favor one group of claimants over all other claimants.

The Ninth Circuit has long recognized that the federal bankruptcy policy of "ratable distribution among all creditors is one of the strongest policies behind the bankruptcy laws." In re North American Coin & Currency, Ltd., 767 F.2d 1573, 1575 (9th Cir. 1985) citing In re Visiting Home Services, Inc., 643 F.2d 1356, 1360 (9th Cir.1981); Hassen v. Jonas, 373 F.2d 880, 881 (9th Cir.1967).

Courts in this Circuit have further recognized that the imposition of a trust over funds, which favors one group of creditors, to the disadvantage of other creditors, violates this policy. "Imposing a constructive trust in favor of one creditor deprives other creditors of a pro rata recovery from debtor's estate and is contrary to one of the strongest policies underlying the bankruptcy law: ratable distribution of assets to all creditors." In re Naemi, 128 B.R. 273, 280 (Bankr. S.D. Cal. 1991). See also, In re Commercial Money Center, Inc., 392 B.R. 814, 831 (9th Cir. BAP 2008) ("We therefore act very cautiously in recognizing a constructive trust in favor of one creditor over another, as one of the strongest policies in bankruptcy law is equality of distributions among like situated creditors."); In re Charlton, 389 B.R. 97, 104–05 (Bankr. N.D. Cal. 2008) ("Enforcing the retroactive property division against the estate … would favor one creditor over others, thereby undermining the policy of ratable distribution.").

"In bankruptcy, it does not end the matter for a court to find that state law would impose a constructive trust over certain property; the constructive trust will not be given effect if it is against

the federal bankruptcy policy favoring ratable distribution to all creditors." In re Advent Management Corp., 178 B.R. 480, 489 (9th Cir. BAP 1995). As observed by the Ninth Circuit:

> [W]e cannot accept the proposition that the bankruptcy estate is automatically deprived of any funds that state law might find subject to a constructive trust. *** A constructive trust is not the same kind of interest in property as a joint tenancy or a remainder. It is a remedy, flexibly fashioned in equity to provide relief where a balancing of interests in the context of a particular case seems to call for it. Moreover, in the case presented here it is an inchoate remedy; we are not dealing with property that a state court decree has in the past placed under a constructive trust. **We necessarily act very cautiously in exercising such a relatively undefined equitable power in favor of one group of potential creditors at the expense of other creditors, for ratable distribution among all creditors is one of the strongest policies behind the bankruptcy laws**.

In re North American Coin & Currency, Ltd., 767 F.2d 1573, 1575 (9th Cir. 1985).

Moreover, even if certain customers are deemed to have some form of property right or *in rem* interest in the funds held by the trustee, such rights are unperfected and therefore inferior to the strong-arm powers of the Trustee. "A fair reading of the statutes in this context mandates that section 544(a)(3) prevail in this and similar instances. An asserted constructive trust clearly represents the kind of inchoate claim that section 544(a)(3) was designed to cut off." In re Seaway Exp. Corp., 912 F.2d 1125, 1129 (9th Cir. 1990) (internal marks omitted) quoting In re Tleel, 876 F.2d 769 (9th Cir.1989) (inchoate trust remedy not superior to trustee's strong-arm power). See also In re Markair, Inc., 172 B.R. 638, 642 (9th Cir. BAP 1994) ("If a constructive trust would have been the proper state law remedy to prevent [debtor's] unjust retention of the res, that remedy was inchoate when the estate was formed, and the trustee, representing the creditors of the estate, may defeat its application pursuant to § 544(a)."); In re Lewis W. Shurtleff, Inc., 778 F.2d 1416 (9th Cir.1985) (inchoate remedy of constructive trust not superior to trustee's strong-arm and policy of ratable distribution); In re Advent Management Corp., 178 B.R. 480, 489 (9th Cir. BAP 1995) (Where there is no order recognizing a constructive trust prepetition, a trustee may avoid a constructive trust through the exercise of the strong-arm powers of section 544(a)).

For the same reasons here, the UST's request to impose a trust over the funds held by the Chapter 11 Trustee violates the federal bankruptcy policy of ratable distribution among creditors.

CAPPELLO & NOËL LLP
TRIAL LAWYERS

The UST's argument to impose a trust would benefit a small subset of customers, at the expense of other customers and unsecured creditors of the estate. Such a remedy would arbitrarily favor one group of creditors over other unsecured creditors. Bankruptcy policy dictates that such funds should be held by the estate for the benefit of all creditors.

### D. Reservation of Rights.

Creditors further reserve all rights to supplement or amend this Opposition at any time up through the deadline to respond to the Conversion Motion.

### E. Conclusion.

Based upon the preceding, and for the reasons set forth in the Chapter 11 Trustee's Preliminary Opposition, Creditors submit that the Court should deny the Conversion Motion, or in the alternative, continue the hearing of the Conversion Motion until a date after the closing of the proposed sale, and such other relief as the Court deems just and proper.

DATED: July 20, 2023

**WINTHROP GOLUBOW HOLLANDER, LLP**

By: ___/s/ Richard H. Golubow___
    Richard H. Golubow
    Garrick A. Hollander
Attorneys for Debt Validation Fund II, LLC, MC DVI Fund 1, LLC and MC DVI Fund 2, LLC

MAINDOCS-#266596-v3-LPG_Opp_UST_Mtn_Convert.docx

**PROOF OF SERVICE OF DOCUMENT**

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 1301 Dove Street, Suite 500, Newport Beach, CA 92660

A true and correct copy of the foregoing document entitled (*specify*): **PRELIMINARY OPPOSITION TO MOTION BY UNITED STATES TRUSTEE TO CONVERT CASE TO CHAPTER 7 PURSUANT TO 11 U.S.C. § 1112(b), AND JOINDER TO CHAPTER 11 TRUSTEE'S PREMINIARY OPPOSITION THERETO** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **July 20, 2023**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒     Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**: On **July___, 2023**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐     Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **July___, 2023**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| July 20, 2023 | Silvia Villegas | /s/ Silvia Villegas |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |



MAINDOCS-#266596-v3-LPG_Opp_UST_Mtn_Convert.docx

**NEF SERVICE LIST**

- **Eric Bensamochan**  eric@eblawfirm.us, G63723@notify.cincompass.com
- **Ronald K Brown**  ron@rkbrownlaw.com
- **Christopher Celentino**  christopher.celentino@dinsmore.com, caron.burke@dinsmore.com
- **Shawn M Christianson**  cmcintire@buchalter.com, schristianson@buchalter.com
- **Randall Baldwin Clark**  rbc@randallbclark.com
- **Leslie A Cohen**  leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com;clare@lesliecohenlaw.com
- **Jenny L Doling**  jd@jdl.law, dolingjr92080@notify.bestcase.com;15994@notices.nextchapterbk.com
- **Daniel A Edelman**  dedelman@edcombs.com, courtecl@edcombs.com
- **Christopher Ghio**  christopher.ghio@dinsmore.com, Kristina.Heller@Dinsmore.com
- **Jeffrey I Golden**  jgolden@go2.law, kadele@ecf.courtdrive.com;cbmeeker@gmail.com;lbracken@wgllp.com;gestrada@wgllp.com;golden.jeffreyi.b117954@notify.bestcase.com
- **Richard H Golubow**  rgolubow@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com
- **D Edward Hays**  ehays@marshackhays.com, ehays@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@ecf.courtdrive.com
- **Alan Craig Hochheiser**  ahochheiser@mauricewutscher.com, arodriguez@mauricewutscher.com
- **Garrick A Hollander**  ghollander@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com
- **Razmig Izakelian**  razmigizakelian@quinnemanuel.com
- **Joon M Khang**  joon@khanglaw.com
- **Ira David Kharasch**  ikharasch@pszjlaw.com
- **Nicholas A Koffroth**  nkoffroth@foxrothschild.com, khoang@foxrothschild.com
- **David S Kupetz**  David.Kupetz@lockelord.com, mylene.ruiz@lockelord.com
- **Christopher J Langley**  chris@slclawoffice.com, omar@slclawoffice.com;langleycr75251@notify.bestcase.com;ecf123@casedriver.com
- **Daniel A Lev**  daniel.lev@gmlaw.com, cheryl.caldwell@gmlaw.com;dlev@ecf.courtdrive.com
- **Michael D Lieberman**  mlieberman@lipsonneilson.com
- **Yosina M Lissebeck**  Yosina.Lissebeck@Dinsmore.com, caron.burke@dinsmore.com
- **Richard A Marshack (TR)**  pkraus@marshackhays.com, rmarshack@iq7technology.com;ecf.alert+Marshack@titlexi.com
- **Laila Masud**  lmasud@marshackhays.com, lmasud@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com
- **Kenneth Misken**  Kenneth.M.Misken@usdoj.gov
- **Byron Z Moldo**  bmoldo@ecjlaw.com, amatsuoka@ecjlaw.com,dperez@ecjlaw.com
- **Alan I Nahmias**  anahmias@mbn.law, jdale@mbnlawyers.com
- **Victoria Newmark**  vnewmark@pszjlaw.com
- **Queenie K Ng**  queenie.k.ng@usdoj.gov
- **Keith C Owens**  kowens@foxrothschild.com, khoang@foxrothschild.com
- **Teri T Pham**  tpham@epglawyers.com, ttpassistant@epglawyers.com
- **Douglas A Plazak**  dplazak@rhlaw.com
- **Ronald N Richards**  ron@ronaldrichards.com, 7206828420@filings.docketbird.com
- **Gregory M Salvato**  gsalvato@salvatoboufadel.com, calendar@salvatolawoffices.com;jboufadel@salvatoboufadel.com;gsalvato@ecf.inforuptcy.com
- **Olivia Scott**  olivia.scott3@bclplaw.com
- **Jonathan Serrano**  jonathan.serrano@dinsmore.com
- **Paul R Shankman**  PShankman@fortislaw.com, info@fortislaw.com
- **Leslie Skorheim**  leslie.skorheim@usdoj.gov
- **Howard Steinberg**  steinbergh@gtlaw.com, pearsallt@gtlaw.com;howard-steinberg-6096@ecf.pacerpro.com
- **Andrew Still**  astill@swlaw.com, kcollins@swlaw.com
- **United States Trustee (SA)**  ustpregion16.sa.ecf@usdoj.gov
- **Sharon Z. Weiss**  sharon.weiss@bclplaw.com, raul.morales@bclplaw.com,REC_KM_ECF_SMO@bclplaw.com
- **Johnny White**  JWhite@wrslawyers.com, jlee@wrslawyers.com



MAINDOCS-#266596-v3-LPG_Opp_UST_Mtn_Convert.docx