Christopher B. Ghio (State Bar No. 259094)
Christopher Celentino (State Bar No. 131688)
Yosina M. Lissebeck (State Bar No. 201654)
Jeremy B. Freedman (State Bar No. 308752)
**DINSMORE & SHOHL LLP**
655 West Broadway, Suite 800
San Diego, CA 92101
Telephone:  619.400.0500
Facsimile:  619.400.0501
christopher.ghio@dinsmore.com
christopher.celentino@dinsmore.com
yosina.lissebeck@dinsmore.com
jeremy.freedman@dinsmore.com

Special Counsel to Richard A. Marshack

D. EDWARD HAYS, #162507
ehays@marshackhays.com
LAILA MASUD, #311731
lmasud@marshackhays.com
BRADFORD BARNHARDT, #328705
bbarnhardt@marshackhays.com
MARSHACK HAYS LLP
870 Roosevelt Irvine, California 92620
Telephone: (949) 333-7777
Facsimile: (949) 333-7778

General Bankruptcy Counsel for Chapter 11 Trustee
RICHARD A. MARSHACK

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>THE LITIGATION PRACTICE GROUP P.C.,<br><br>    Debtor. | Case No.: 8:23-bk-10571-SC<br><br>Chapter 11<br><br>**TRUSTEE'S *OMNIBUS* RESPONSE IN SUPPORT OF MOTION FOR SALE OF PROPERTY OF THE ESTATE UNDER SECTION 363(b)**<br><br>Date:  July 21, 2023<br>Time:  10:00 a.m. (pacific time)<br>Judge: Hon. Scott C. Clarkson<br>Place:  Courtroom 5C<br>       411 W. Fourth Street<br>       Santa Ana, CA  92701 |

1

2

## TABLE OF CONTENTS

I. INTRODUCTION ......................................................................................................... 1

II. TRUSTEE HAS MET ALL REQUIREMENTS UNDER 11 USC § 363
      AUTHORIZING THIS COURT TO APPROVE THE PROPOSED SALE OF
      DEBTOR'S ASSETS ............................................................................................. 2

    **A.**    The Proposed Sale Has Been Duly Marketed, Negotiated, and Structured
        in Good Faith for the Benefit of the Estate ............................................... 3

    **B.**    The Proposed Consumer Protections are Adequate to Protect Consumers............. 5

    1.    The Consumer Notice Complies with All Applicable State and Federal
        Laws Providing Sufficient Notice of Consumers' Rights to Opt-Out of the
        Sale. .......................................................................................................... 5

    2.    The Proposed Reformed Legal Services Agreement is Compliant With All
        Applicable Laws ....................................................................................... 7

    **C.**    The Proposed Sale of Debtor's Assets Was Made With the Trustee's
        Utmost Reasonable Business Judgment Taking Many Factors Into
        Consideration and with the Input of The UCC and Potential Good Faith
        Purchasers................................................................................................. 8

    **D.**    The Sale of Debtor's Assets Will Benefit the Estate, Consumer Clients and
        Prevent Those Engaged in the Alleged Wrongful and Fraudulent Conduct
        From Receiving a Windfall. ..................................................................... 10

    **E.**    The Court May Authorize The Reformation of the Legal Services
        Agreement By Way of Severance and Cure With The Third Party Good
        Faith Purchaser ....................................................................................... 10

    **F.**    The Proposed Sale of Debtor's Assets Free And Clear is Proper Pursuant
        to 11 U.S.C. § 363(f). ............................................................................. 11

    **G.**    Consumer ACH Funds Held By The Trustee Do Not Impact This Court's
        Authority to Approve the Proposed Sale of Debtor's Assets................................ 13

III. CONCLUSION ...................................................................................................... 14

# TABLE OF AUTHORITIES

## Cases

240 North Brand Partners v. Colony GFP Partners, L.P. (In re 240 North Brand Partners)
   200 B.R. 653 (B.A.P. 9th Cir. 1996) ........................................................................... 2

ABA v. FTC
   430 F.3d 457 (D.C. Cir.2005) ................................................................................... 9

Chevron U.S.A. Inc. v. NRDC
   467 U.S. 837(1984) ................................................................................................... 9

Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)
   722 F.2d 1063 (2nd Cir. 1983) ........................................................................... 3, 11

Consumer Fin. Prot. Bureau v. Howard
   (Case No. 8:17-cv-00161-JLS-JEM) 2017 U.S. Dist. LEXIS 222742 (C.D. Cal. Feb. 13, 2017)
   .................................................................................................................................. 8, 9

In re Bergt
   241 B.R. 17 (Bankr. D. Alaska 1999). ...................................................................... 8

In re Bolden
   327 B.R. 657 (Bankr. C.D. Cal. 2005) ...................................................................... 5

In re Kellogg-Taxe
   Case No. 2:12-bk-51208-RN, 2014 Bankr. LEXIS 1033, 2014 WL 1016045
   (Bankr. C.D. Cal. Mar. 17, 2014) ........................................................................... 15

In re Lehman Bros.
   445 B.R. 143 (Bankr. S.D.N.Y. 2011) ................................................................... 11

In re Lionel Corp.
   722 F.2d 1063 (2d Cir. 1983) .................................................................................... 3

In re Takeout Taxi Holdings, Inc.
   307 B.R. 525 (Bankr. E.D. Va. 2004) ..................................................................... 15

In re Titusville Country Club
   128 B.R. 396 (Bankr. W.D. Pa. 1991) ...................................................................... 3

In re Walter
   83 B.R. 14 (B.A.P. 9th Cir. 1988) ....................................................................... 3, 10

In re Wilde Horse Enterprises, Inc.
   136 B.R. 830 (Bankr. C.D. Cal. 1991) ................................................................. 2, 3

Ind. State Police Pension Tr. v. Chrysler LLC (In re Chrysler LLC)
   576 F.3d 108 (2d Cir. 2009) vacated as moot sub. nom. 558 U.S. 1087 (2009) ...... 11

Simantob v. Claims Prosecutor, L.L.C. (In re Lahijani),
   325 B.R. 282, 289 (B.A.P. 9th Cir. 2005) ................................................................. 2

1    Union Planters Bank, N.A. v. Burns (In re Gaylord Grain L.L.C.)
        306 B.R. 624 (B.A.P. 8th Cir. 2004) ................................................................. 15
2
    Walter v. Sunwest Bank (In re Walter)
3        83 B.R. 14 (B.A.P. 9th Cir. 1988) ....................................................................... 2

4    **<u>Statutes</u>**

5    11 U.S.C. § 1141(d)(1) ............................................................................................ 12

6    11 U.S.C. § 363 ................................................................................................... 1, 11

7    11 U.S.C. § 363(b) ............................................................................................ 2, 3, 13

8    11 U.S.C. § 363(b)(1) ............................................................................................... 2

9    11 U.S.C. § 363(f) ................................................................................................... 13

10    11 U.S.C. § 363(f)(2) ......................................................................................... 14, 15

11    11 U.S.C. § 363(f)(4) ............................................................................................... 15

12    11 U.S.C. § 365 ....................................................................................................... 13

13    11 U.S.C. § 547 ....................................................................................................... 14

14    12 U.S.C. § 5517(e)(1) .............................................................................................. 9

15    12 U.S.C. § 5517(e)(2) .............................................................................................. 9

16    **<u>Rules</u>**

17    American Bar Association Model Rule 8.5 ................................................................. 7

18    American Bar Association Model Rules ..................................................................... 7

19    American Bar Association, Rule 1.17 Sale of Law Practice – Comment, August 16, 2018 ......... 7

20    California Model Rules ............................................................................................. 7

21    California Rules of Professional Conduct .............................................................. 6, 7

22    California Rules of Professional Conduct 1.16 ......................................................... 6

23    California Rules of Professional Conduct 1.17(b)(2) ................................................ 6

24    Florida Bar Reg. R. 4-1.17 ....................................................................................... 7

25    New Jersey Court Rules, Rule of Professional Conduct 1.17 ..................................... 7

26    Oregon Rules of Professional Conduct, Rue 1.17 ..................................................... 8

27    Pennsylvania Rules of Professional Conduct, Rule 1.17 ........................................... 7

28    Tenn. Sup. Ct. R. 8, Rule 1.17 ................................................................................. 8

**<u>Treatises</u>**

American Bar Association, Standing Committee on Ethics and Professional Responsibility, Choice of Law, Formal Opinion 504 (March 1, 2023) ................................................................7

American Bar Association's Comment to Rule 1.17 of the Model Rules of Professional Conduct ........................................................................................................................................6

United States Courts, Chapter 11 – Bankruptcy Basics ...............................................................12

**I.**

# I.

## **INTRODUCTION**

Trustee submits this Omnibus 1) Response To The Order Requesting Additional Briefing Re: Sale Motion [Dkt No. 259]; and 2) Opposition to Motion for Sale of Property Of the Estate Under Section 363(b) [Dkt No. 296]; 3) Objection Filed by Creditor Alteryx, Inc. [Dk. No. 289]; 4) Objections of Carolyn Beech and Diane Scarnavack To Motion For Sale Of Property Of The Estate Under Section 363(b) [Dk. No. 254].

Trustee has satisfied all factors pursuant to 11 U.S.C. § 363 necessary for this Court to approve the Trustee's Sale Motion. The UCC supports the Trustee's Sale Motion subject to minor reservation of rights related to issues that are unfounded, have been resolved or inconsequential to the Court's authority to grant the Sale Motion. Similarly, the letter from the CFPB attached the OUST's Response as Exhibit A, in fact supports the Court's authority to grant the Sale Motion, subject to its own recommendations, which as discussed herein are not required nor do they affect the Court's authority to grant the Sale Motion. Interested parties, including creditors [See for example Dkt Nos. 267, 294, 299], consumer clients [Dkt No. 293] and even the CFPB (Dkt No. 260, Exh. A] by way of its letter to the OUST have voiced their opinion and provide support for the Trustee's Sale Motion and the service the proposed Good Faith Purchaser under the terms of the new Legal Services Agreement ("LSA") can and will provide, subject to consumer protection and court approval. Consumer creditors, who have made a claim, whether they appreciate the benefit of the sale or not, do in fact stand to benefit from funds being injected into the Estate to pay creditor claims. As such, it is clear the Trustee has made every effort in his sound business judgment to take all interested parties interests into account.

Trustee has engaged in extensive negotiations with the bidders, UCC and others regarding the proposed sale in order to maximize the value to the Debtor's Estate. Given the injection of numerous parties and Trustee's willingness to accept and incorporate their proposals is evidence of an arms-length good faith sale, as discussed more thoroughly herein and in the supplemental declaration of Trustee filed concurrently herewith. Based on all of the evidence, the exigent circumstances that exist in order to maximize and preserve the quickly diminishing value of the

1   Debtor's assets to the Estate, all creditors and protect the consumer clients Trustee respectfully

2   requests this Court grant the Sale Motion and enter the Sale Order, as submitted or may be modified

3   by the Court.

4                                          **II.**

5   **TRUSTEE HAS MET ALL REQUIREMENTS UNDER 11 USC § 363 AUTHORIZING**

6   **THIS COURT TO APPROVE THE PROPOSED SALE OF DEBTOR'S ASSETS**

7           The court should approve a sale of property under Section 363(b)(1) if the trustee has

8   established a sound business purpose for the proposed transaction. *Walter v. Sunwest Bank (In re*

9   *Walter)*, 83 B.R. 14, 16 (B.A.P. 9th Cir. 1988); *In re Wilde Horse Enterprises, Inc.*, 136 B.R. 830,

10  841 (Bankr. C.D. Cal. 1991) ("In any sale of estate assets, the ultimate purpose is to obtain the

11  highest price for the property sold."). The business judgment standard is deferential. *Simantob v.*

12  *Claims Prosecutor, L.L.C. (In re Lahijani)*, 325 B.R. 282, 289 (B.A.P. 9th Cir. 2005) ("Ordinarily,

13  the position of the trustee is afforded deference, particularly where business judgment is entailed

14  in the analysis or where there is no objection.").

15          A bankruptcy court has discretion when approving a sale of Debtor's assets pursuant to 11

16  U.S.C. § 363(b). *240 North Brand Partners v. Colony GFP Partners, L.P.* (In re 240 North Brand

17  Partners), 200 B.R. 653, 656 (B.A.P. 9th Cir. 1996). "The requirements of section 363(b) protect

18  the creditors' interest in the assets of the estate." As a result, debtors who wish to utilize § 363(b)

19  to dispose of property of the estate must demonstrate that such disposition has a valid business

20  justification. *Id.* at 659 [internal citations omitted] *citing In re Lionel Corp.*, 722 F.2d 1063, 1070

21  (2d Cir. 1983).

22          In determining whether a sale satisfies the business judgment standard, courts have

23  required that: (1) accurate and reasonable notice of the sale has been given to interested persons;

24  (2) a sound business purposes exists; (3) the sale yields an adequate price under the circumstances;

25  and (4) the parties to the sale have acted in good faith. *In re Titusville Country Club*, 128 B.R. 396,

26  399 (Bankr. W.D. Pa. 1991); see also *In re Walter*, 83 B.R. 14, 19-20 (B.A.P. 9th Cir. 1988);

27  *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1069 (2nd Cir.

28  1983).

In addition to proving that the proposed sale has a valid business justification, the debtor must also show that the sale is proposed in good faith. *In re Wilde Horse Enterprises, Inc.*, 136 B.R.. 830, 841 (Bankr. C.D. Cal. 1991). "'Good faith' encompasses fair value, and further speaks to the integrity of the transaction. Typical 'bad faith' or misconduct, would include collusion between the seller and buyer, or any attempt to take unfair advantage of other potential purchasers." *Id*. at 842. Applying these standards and weighing the evidence as set forth herein, the supplemental declaration of Richard Marshack concurrently filed herewith, the Trustee's Sale Motion [Dkt No. 191] and Pocket Brief [Dkt No. 260] and supporting evidence incorporated herein by reference, and specific circumstances in this case, including the balance that needs to be struck between consumers and creditors and the exigency with which a sale, if any is to occur, should be granted.

**A.      The Proposed Sale Has Been Duly Marketed, Negotiated, and Structured in Good Faith for the Benefit of the Estate**

Trustee extensively marketed the sale, either himself or through his counsel, to assure maximum value could be obtained for all creditors. See, Supplemental Declaration of Richard A. Marshack paragraphs 6-10.

Notwithstanding these efforts, the UST Oppo argues that because the sale price is linked to the number of consumer contracts that do not opt out of the sale, the potential impact on the price considering that the anticipated price is now lower warrants a new notice and hearing. UST Oppo.,14:8-11. This is wrong. The Sale Motion advised parties that the proposed sales price was a formula that depended, in part, on the number of active files. In their due diligence, CLG took the position that certain files did not constitute active files. Trustee disputes this contention and the parties have been working towards an informal resolution should CLG be the winning bidder. But, no new notice is required because all interested parties were always advised that the ultimate amount to be received by the estate depended on the number of active files and the amounts to be collected over time.

The UST also argues "the Trustee has presented no claims analysis or breakdown of what funds are coming into the estate, when these funds would be received, where these funds are going,

1    and who would be getting paid, including anticipated trustee fees, professional fees, additional

2    administrative fees from post-petition funding, etc." UST Oppo., 14:19-24. The clearly articulated

3    business justification for the sale is to reduce the Assets[1] to money, pay undisputed claims, and

4    then determine through subsequent proceedings the extent that disputed claims should either be

5    allowed or disallowed against the proceeds of the sale. To that end, Trustee has viable avoidance

6    claims that he also anticipates will generate a benefit for creditors. Indeed, where the trustee may

7    use his avoidance powers to generate a return for creditors from otherwise encumbered property,

8    turnover and sale is appropriate. *See, e.g., In re Bolden*, 327 B.R. 657, 666-69 (Bankr. C.D. Cal.

9    2005) (Donovan, J.) (authorizing turnover of property because the avoidance of portions of liens

10   would generate a significant benefit for unsecured creditors).]

11        The UST Oppo also claims the Trustee has presented insufficient evidence demonstrating

12   the benefit consumers would receive from the sale citing the only evidence in support of said

13   benefit being declarations from affiliated attorneys of LPG. UST Oppo., 15:3-8. Trustee has also

14   submitted declarations of consumers attesting to the successes that LPG provided them. See Dk.

15   No. 293, Notice of Declarations of Marco Green, Vivian Solis, Emily Tracey, Lejla Jacobson,

16   Eduardo Niez, Cynthia Leydig, Mirtie Woldemichael, John Strickland, and Tania Mejia ("Client

17   Declarations"). Indeed, a sale that allows for reformed contracts to be assumed and assigned would

18   helped all clients with (1) elimination or reduction of interest; (2) settlements that provide

19   affordable payments over time; (3) principal payments only; (4) avoidance of bankruptcy; and (5)

20   prevention of wage garnishment among other benefits. These Client Declarations demonstrate that

21   there is benefit to the consumers if the assets are sold. Any clients choosing to opt-out or cancel

22   their contracts will be free to do so.]

23        Separately, the UST Oppo claims "there is little evidence that CLG will provide adequate

24   legal services to benefit consumers." UST Oppo., 15:12-13. In the eyes of the UST:

25        "… permitting the Trustee to replace the illegal consumer agreements and then sell
         them to CLG provides no benefit to the consumers. Those likely to be paid from the
26       sale are the Trustee, his professionals, the secured creditors (who funded all the wrong-
         doing), and the post-petition lenders (who continue to fund the wrong-doing).
27       Consumers are not being protected and will not benefit from the sale. Rather, their

28

---

[1] Terms not defined herein are as defined in the Motion.

1    contracts are being sold to CLG with little evidence that they will receive adequate
2    legal services from CLG or a full refund of unearned fees (as provided under LPG's
     Legal Service Agreement)."

3    See, UST Oppo. 17:13-19.

4    Trustee has proposed multiple protections for consumers including, but not limited to, a

5    monitor that would ensure an enhanced level of protection for consumers whose contracts are sold.

6    *See*, Dk. No. 305, *Supplemental Declaration of Richard A. Marshack Regarding Designation of a*

7    *Monitor*. Other protections including those identified below, ensure a smooth transition for

8    consumer clients as opposed to abandoning and leaving them with no representation. Moreover,

9    the UST Oppo ignores what Trustee has consistently advocated which is completing a sale to fund

10   a Chapter 11 plan that will seek to separately classify consumers because their rights are different

11   from other creditors. For example, a client who was overcharged has a greater right to a refund

12   than the large non-client creditors that invested money in Debtor's business.

13   **B.    The Proposed Consumer Protections are Adequate to Protect Consumers.**

14   **1.    The Consumer Notice Complies with All Applicable State and Federal Laws**

15   **Providing Sufficient Notice of Consumers' Rights to Opt-Out of the Sale.**

16   Especially curious is the OUST's and CFPB's recommendation that the consumers be

17   "required to affirmatively opt-in rather than opt-out of the reformed agreements." Dkt. No. 259,

18   Exhibit A – 0039. First, such a recommendation ignores specific rules governing the sale of a law

19   practice and turns the California Rules of Professional Conduct ("CRPC") on its head. Instead, the

20   CRPC requires a purchaser of a law firm to give notice not less than 90 days prior to the transfer

21   and "**if no response is received within 90 days** after [the notice] is sent, or if a client's rights

22   would be prejudiced by a failure of the purchaser to act during that time, **the purchaser may act**

23   **on behalf of the client until otherwise notified by the client**…" CRPC 1.17(b)(2) (emphasis

24   added). Thus, the rule allows for the protection of the clients' rights without extinguishing the

25   ever-present ability for the client to terminate representation, as additionally provided for in the

26   notice. Otherwise, clients would go from represented to *unrepresented* without any action on their

27   behalf, which would call other provisions of the CRPC into question. *See e.g.,* CRPC 1.16.

28   ///

The American Bar Association's Comment to Rule 1.17 of the Model Rules of Professional Conduct echoes this premise in stating:

**"[i]f nothing is heard from the client within that time, consent to the sale is presumed."**

American Bar Association, *Rule 1.17 Sale of Law Practice – Comment*, August 16, 2018, www.americanbar.org/groups/professional_responsibility/publications/model_rules_of_professional_conduct/rule_1_17_sale_of_law_practice/comment_on_rule_1_17/ (emphasis added). "All elements of client autonomy, including the client's absolute right to discharge a lawyer and transfer the representation to another, **survive the sale of the practice area**." *Id.* (emphasis added).

Recently, the American Bar Association had the opportunity to clarify that ABA Model Rule 8.5 provides that, in cases where the lawyer practices in multiple jurisdictions, the lawyer should comply with the law of the state where the tribunal sits. This further supports that the CRPC apply to the current transaction. American Bar Association, Standing Committee on Ethics and Professional Responsibility, *Choice of Law, Formal Opinion 504* (March 1, 2023). In this instance, the application of the ABA Model Rules and the CA Model Rules also provides a strict standard, offering the most protection to the consumer clients since comparatively speaking. *See e.g.,* Pa. RPC 1.17 (requiring a 60 day notice before representation is presumed); N.J. Court Rules, RPC 1.17 (requiring a 60 day notice before representation is presumed); Fla. Bar Reg. R. 4-1.17 (requiring a 30 day notice before representation is presumed); Colo. RPC 1.17 (requiring a 60 day notice before representation is presumed); ORPC 1.17 (requiring a 45 day notice before representation is presumed); Tenn. Sup. Ct. R. 8, Rule 1.17 (requiring a 30 day notice before representation is presumed).

This application is, of course, limited to the sale transaction before the court and the direct notice required as a result. Nothing in the Formal Opinion nor the aforementioned should be read to impact the ability for different state laws to apply under a separate circumstance (i.e., if a creditor sues a consumer for breach of a consumer credit agreement). After all, "state contract law generally defines a party's rights, while federal bankruptcy law determines how those rights are enforced in a bankruptcy case." *In re Bergt*, 241 B.R. 17, 35 (Bankr. D. Alaska 1999).

Furthermore, On July 13, 2023 at the request of the OUST, Notice of the proposed Sale was provided to all interested parties, including but not limited to LPG consumer clients for which the Trustee through Phoenix had email account information for. See Docket No. 233.   The Declaration of Jamie D. Mottola [Docket 308] outlines the responses from the consumers received. Accordingly, the 90-day notice of the transfer of the consumer files will happen after the Court approves the sale in compliance with applicable law. To that end, the Trustee has diligently negotiated with the UCC the proposed notice to the consumer.

   **2.**    **The Proposed Reformed Legal Services Agreement is Compliant With All Applicable Laws**

Congress did not authorize the FTC or CFPB to regulate the practice of law through the Telemarketing Sales Rule or any other related financial regulation. *Consumer Fin. Prot. Bureau v. Howard* (Case No. 8:17-cv-00161-JLS-JEM) 2017 U.S. Dist. LEXIS 222742 at 10-11 (C.D. Cal. Feb. 13, 2017); see also *ABA v. FTC*, 430 F.3d 457, 458 (D.C. Cir.2005). Thus, pursuant to 12 U.S.C. Section 5517(e)(1), the CFPB is not authorized, to "exercise any supervisory or enforcement authority with respect to an activity engaged in by an attorney as part of the practice of law under the laws of a State in which the attorney is licensed to practice law." 12 U.S.C. § 5517(e)(1). This limitation does not apply to the "offering or provision of a consumer financial product or service . . . that is not offered or provided as part of, or incidental to, the practice of law, occurring exclusively within the scope of the attorney-client relationship" or "that is otherwise offered or provided by the attorney in question with respect to any consumer who is not receiving legal advice or services from the attorney in connection with such financial product or service." *Id*. § 5517(e)(2). Thus, in applying the TSR to attorneys and the practice of law, and applying *Chevron* step two (*Chevron U.S.A. Inc. v. NRDC*, 467 U.S. 837, 842-43(1984)), Courts have held that the TSR is not intended to regulate the practice of law, "just a limited number of attorneys who <u>engage in activities generally not associated with the legal profession</u>." *Howard*, *supra*, 2017 U.S. Dist. LEXIS 222742 at 13.

With little doubt, alternative dispute resolution, settlement negotiation, and entering into settlement agreements is and always has been a function of the legal practice highly encouraged

throughout the legal industry. The UST and CFPB overreach in their objection to the proposed LSA insisting that any attorney that negotiates a settlement on behalf of a client involving a consumer debt is subject to the provisions of the TSR. Indeed, the CFPB takes issue with language in the proposed LSA intended to address this issue, specifically provisions that: 1) inform the client they are not providing debt settlement services; and 2) providing legal services which may, as in many instances, include representation in negotiating a settlement. See Trustee Objection, Exhibit A at pg. 37. In this way, the UST and CFPB both argue that the CFPB through the TSR may regulate the practice law. This, however, is an outcome that Congress and the Courts of this district have rejected.

**C.**    **The Proposed Sale of Debtor's Assets Was Made With the Trustee's Utmost Reasonable Business Judgment Taking Many Factors Into Consideration and with the Input of The UCC and Potential Good Faith Purchasers.**

In making the decision to sell Debtor's assets, a "melting-ice cube", the Trustee used his utmost business judgment to balance the interests of the Debtor's estate and "the diverse interests of the [consumer client], debtor, creditors and equity holders, alike" given the exigent circumstances of this case. *In re Walter*, 83 B.R. 14, 19 (B.A.P. 9th Cir. 1988). Trustee believes the proposed sale and consumer protection built-in reach the proper balance in weighing the interests of all parties impacted by the proposed sale. Striking the right balance has been exacerbated by the exigency with which a sale of Debtor's assets, due to factors outside the Trustee's control needed to occur. Notwithstanding these challenges, the Trustee believes in his best business judgment that the proposed sale strikes the right balance between competing interests as opposed to simply shutting down the Debtor.

Similar to the limited objections in this matter, unhappy creditors appealed to the Second Circuit Court of Appeals regarding the expedited sale of Chrysler. The Second Circuit reviewed the history of emergency sales in bankruptcy stating:

> The origin of § 363(b) is the Bankruptcy Act of 1867, which permitted a sale of a debtor's assets when the estate or any part thereof was "of a perishable nature or liable to deteriorate in value." *Lionel*, 722 F.2d at 1066 (citing Section 25 of the Bankruptcy Act of 1867, Act of March 2, 1867, 14 Stat. 517) (emphasis omitted). Typically, courts have approved § 363(b) sales to preserve "'wasting

1
2
3
4
5
6
7

asset[s].'" *Id.* at 1068 (quoting *Mintzer v. Joseph (In re Sire Plan, Inc.),* 332 F.2d 497, 499 (2d Cir. 1964)). Most early transactions concerned perishable commodities; but the same practical necessity has been recognized in contexts other than fruits and vegetables. "[T]here are times when it is more advantageous for the debtor to begin to sell as many assets as quickly as possible in order to insure that the assets do not lose value." *Fla. Dep't of Revenue v. Piccadilly Cafeterias, Inc.*, 128 S. Ct. 2326, 2342, 171 L. Ed. 2d 203 (2008) (Breyer, J., dissenting) (internal quotation marks omitted); *see also In re Pedlow,* 209 F. 841, 842 (2d Cir. 1913) (upholding sale of a bankrupt's stock of handkerchiefs because the sale price was above the appraised value and "Christmas sales had commenced and . . . the sale of handkerchiefs depreciates greatly after the holidays"). Thus, an automobile manufacturing business can be within the ambit of the "melting ice cube" theory of § 363(b).

8
9

*Ind. State Police Pension Tr. v. Chrysler LLC (In re Chrysler LLC)*, 576 F.3d 108, 113-14 (2d Cir. 2009) *vacated as moot sub. nom.* 558 U.S. 1087 (2009).[2]

10

While the Supreme Court vacated the Second Circuit's decision as moot, its review of prior

11   cases on "expedited" sales is notable and its discussion of balancing the need for a prompt sale

12   against the procedural protections of the Code against sub rosa plans remains influential nationally.

13   As indicated above, the Assets to be sold are Debtor's primary asset and are the "melting ice cube"

14   the value of which will be far less in the future, if of any value at all, than they are presently if the

15   Court does not grant the Sale Motion. SDRM at ¶20.

16        As detailed in the Supplemental Declaration, the Trustee cannot continue to finance

17   operations to provide additional time to market the Assets and identify other possible purchasers

18   while the number of Active Executory Contracts continue to dwindle.  The proposed sale will not

19   only monetize the Debtor's assets for the benefit of the estate, but it will also transfer the Assets

20   to the Purchaser subject to numerous oversight and consumer protections. SDRM at ¶14. While

21   these oversight and consumer protections are not part of the traditional analysis of a sale pursuant

22   to section 363, the Trustee believes these protections are important to fulfilling his ethical and

23   fiduciary responsibilities, impact numerous parties in interest and are beneficial to the estate. These

24   considerations, among the others discussed herein, along with extensive negotiations with the

25   ///

26
27
28

[22] *See also*, *In re Lehman Bros.*, 445 B.R. 143, 180 (Bankr. S.D.N.Y. 2011) (citing the Second Circuit's Chrysler decision and quoting *In re Lionel* to establish that the most important "factor for the court in determining whether to approve a §363 sale is whether the asset is decreasing in value.")

UCC, bidders and counsel, have informed Trustee's utmost business judgment in structuring and making his motion to sell Debtor's assets.

**D.      The Sale of Debtor's Assets Will Benefit the Estate, Consumer Clients and Prevent Those Engaged in the Alleged Wrongful and Fraudulent Conduct From Receiving a Windfall.**

As discussed above, the value of Debtor's assets continue to diminish with every passing day. This sale proposes to bring in approximately $40,000,000 with cash up front in the amount of approximately $4,300,000.  In the Trustee's best business judgment, implementing any other sale procedure and causing further delay will harm the Debtor's estate, the creditors, and consumers and erode what value remains such that it would likely be worthless. SDRM at ¶20. In this way, the OUST appears to argue that the sale procedure and value to the Debtor's estate itself is grounds to accomplish what the OUST feels is the proper course of action –dismiss Debtor's Bankruptcy case or convert it to a Chapter 7. Interestingly, the parties most knowledgeable about the Debtor's business and value of its assets, Debtor's creditors, voice no objection or provide only limited opposition and in fact support the proposed sale. Thus the evidence and support for the sale regarding the value to be achieved through the strategic structuring of the proposed sale, partially required by the unique nature of the contracts and legal services to be provided, is fair and reasonable.

**E.      The Court May Authorize The Reformation of the Legal Services Agreement By Way of Severance and Cure With The Third Party Good Faith Purchaser**

This Court is authorized to issue an order requiring an approved Good Faith Purchaser of Debtor's assets to enter into a new separate legal services agreement with consumer clients that correctly states the legal services to be provided and cures any alleged concerns the UST or CFPB may have with the Debtor's prior LSA. This is one of the most fundamental principles of Bankruptcy law –creation of new contractual rights, replacing or superseding pre-bankruptcy contracts. 11 U.S.C. § 1141(d)(1); *see also* United States Courts, Chapter 11 – Bankruptcy Basics available at https://www.uscourts.gov/services-forms/bankruptcy/bankruptcy-basics/chapter-11-bankruptcy-basics (last accessed 7/19/2023). Notably, the Trustee is not requesting the Court to

re-write Debtor's prior LSA with consumer clients through the sale procedure nor is it even required, as discussed below. To the contrary, the Sale Order and APA clearly provide, consumer clients subject to transfer will need to enter into a new, separate and legally complaint LSA with the Good Faith Purchaser during the 90-day notice period or after the 90-day period in the event the consumer client does not opt-out of the transfer. SDRM at ¶21. In essence, the sale process and Court's authorization of the proposed LSA is akin to a consumer client severing its relationship with Debtor and signing a new contract with a third party law firm.

The CFPB, admits the Court is authorized to grant the sale motion and reform Debtor's LSA prior to the sale if that were necessary. See OUST Response [Dkt No. 259], Exhibit A at pg. 39, No. 3. Trustee, however, respectfully disagrees with the CFPB that the cure needs to be done prior to the sale, and believes instead it can be done through the sale process. Trustee is unaware of any case law requiring a client who alleges a legal services contract, or retainer that violates certain laws is required to sign a new valid contract with the offending attorney prior to being permitted to terminate and sever the violative contract and seek new representation. Moreover, it overlooks the Court's ability to reform such contracts, as it does quite often, through the sale procedure set forth in 11 U.S.C. §§ 363(b) and 365.

## F.    The Proposed Sale of Debtor's Assets Free And Clear is Proper Pursuant to 11 U.S.C. § 363(f).

There is no dispute that the Trustee is permitted to sell the assets of the Debtor free and clear of another party's interest in the property pursuant to 11 U.S.C. § 363(f). This section permits the sale of property free and clear of another's interest if any <u>one of the following</u> conditions exist:

> (1) applicable non-bankruptcy law permits such a free and clear sale; (2) the holder of the interest consents; (3) the interest is a lien and the sale price of the property exceeds the value of all liens on the property; (4) the interest is the subject of a bona fide dispute; or (5) the holder of the interest could be compelled in a legal or equitable proceeding to accept a monetary satisfaction of its interest. See 11 U.S.C. § 363(f).

On Page 34 of the Sale Motion, the Trustee identified the sixteen (16) UCC-1 statements on file against the Debtor. Many of these UCC-1 statements were filed by an agent or representative of the creditor and failed to identify any specific item of collateral that secured the claim.

Furthermore, only four of the sixteen filers of UCC-1 statements have either filed a claim or were scheduled by the Debtor as a secured creditor.

The first seven UCC-1 statements were filed in the 90 day period preceding the petition date and are subject to avoidance as preferences pursuant to 11 U.S.C. § 547.[3]  As stated in the Sale Motion and in the Supplemental Declaration of Richard Marshack concurrently filed herewith, the Trustee believes that the proposed sale can occur free and clear of all liens, claims, and encumbrances because these interests are in bona fide dispute because they may be avoidable, duplicative of other filings, or have been satisfied but not released of record.

As the Trustee's Declaration states, the Debtor regularly obtained financing from numerous third parties often pledging the same collateral to each lender.  Claims of earlier creditors were often satisfied with subsequent borrowing and these earlier creditors may not have released the UCC-1 statements.  Furthermore, the Trustee has reviewed the terms of some of the Debtor's pre-petition financing transactions and the Trustee believes that many of the Debtor's transactions with secured creditors may be subject to avoidance.  These facts and those set forth in the Trustee's Declaration are the basis for the Trustee's belief that the claims represented by these UCC-1 filings are subject to bona fide dispute. SDRM at ¶22.

While "bona fide dispute" is not defined in the statute, case law is clear that a party seeking a sale free and clear of liens only has to show an "objective basis" for a dispute as to the validity of the debt.  A court is not required to resolve bona fide disputes before approving a sale.  A court only has to determine there is an objective basis to claim such a dispute exists if a creditor challenges the ability of a sale to occur free and clear of its lien or interest.  *Union Planters Bank, N.A. v. Burns (In re Gaylord Grain L.L.C.)*, 306 B.R. 624, 627-28 (B.A.P. 8th Cir. 2004).  See also *In re Kellogg-Taxe*, Case No. 2:12-bk-51208-RN, 2014 Bankr. LEXIS 1033, 2014 WL 1016045, at *6 (Bankr. C.D. Cal. Mar. 17, 2014).  Based on the Trustee's Declaration regarding the Debtor's pre-petition operations and the lack of information in the record regarding the existence, amount, or collateral of any of the parties that filed UCC-1 statements, there is more than an objective basis

---

[3] One of these creditors – Debt Validation Partners and related entities – has filed a pleading in support of the sale meeting § 363(f)(2).

to believe that "bona fide disputes" exist regarding the validity of the debts evidenced by the UCC-1 statements identified in the Motion to Sell.  Accordingly, the Trustee has met his obligation under 11 U.S.C. § 363(f)(4). The existence of bona fide disputes is further supported by cases noting that the silence of entities with purported interests in the property being sold may be considered as additional evidence of the existence of a "bona fide dispute" that permits the sale to proceed.[4]

## G.    Consumer ACH Funds Held By The Trustee Do Not Impact This Court's Authority to Approve the Proposed Sale of Debtor's Assets.

Any concerns regarding the disposition of the ACH funds being held in trust in a locked account by the Trustee have no impact on this Court's authority to grant the proposed sale of Debtor's assets. As more thoroughly briefed in Trustee's Pocket Brief [Dkt No. 260] and incorporated by reference herein, the proposed APA does not dispose of those funds. Trustee encourages the Court to issue a ruling on the disposition of the funds held in the blocked account, however, maintains that any order approving the sale of Debtor's assets [Docket No. 191] is not contingent upon the ACH funds being transferred to the Good Faith Purchaser, or in any manner. As such, the objection of the OUST and CFPB in this regard is misplaced and the Court is authorized to grant the Sale Order.

///

///

///

///

///

///

///

///

---

[4] [T]he failure to respond may be taken as an admission that there is a bona fide dispute or that the creditor actually consented to the sale and the collateral may be sold under § 363(f)(4). Generally, silence is not consent sufficient to permit a sale under § 363(f)(2). *In re Takeout Taxi Holdings, Inc.*, 307 B.R. 525, 535 (Bankr. E.D. Va. 2004)

# III.

## <u>CONCLUSION</u>

In conclusion, nothing in the oppositions filed to the Sale Motion overcome the substantial deference to be provided to a Trustee's exercise of business judgment. In this case, there will be no distributions to any creditors from the administration of Debtor's assets if a sale is not approved on terms that the Court finds just and proper. Thus, the evidence is clear that the best interest of the estate and its creditors is served by approving a sale.

Dated:  July 20, 2023                              Respectfully submitted,

DINSMORE & SHOHL LLP

By: */s/ Christopher B. Ghio*
    Christopher B. Ghio
    Christopher Celentino
    Yosina M. Lissebeck
    Jeremy Freedman
    Special Counsel to Richard A. Marshack,
    Chapter 11 Trustee

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:      655 W. Broadway, Suite 800, San Diego, California  92101

A true and correct copy of the foregoing document entitled (*specify*):

**TRUSTEE'S *OMNIBUS* RESPONSE IN SUPPORT OF MOTION FOR SALE OF PROPERTY OF THE ESTATE UNDER SECTION 363(b)**

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On July 20, 2023, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

⊠    Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On July 20, 2023, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐    Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on July 20, 2023, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**JUDGE'S COPY**
The Honorable Scott C. Clarkson
United States Bankruptcy Court
Central District of California
Ronald Reagan Federal Building and Courthouse
411 West Fourth Street, Suite 5130 / Courtroom 5C
Santa Ana, CA 92701-4593

☐    Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| July 20, 2023 | Caron Burke | /s/ Caron Burke |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

**1.      TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August  2010*                                                                                  **F 9013-3.1.PROOF.SERVICE**

Eric Bensamochan on behalf of Creditor Affirma, LLC
eric@eblawfirm.us, G63723@notify.cincompass.com

Eric Bensamochan on behalf of Creditor Oxford Knox, LLC
eric@eblawfirm.us, G63723@notify.cincompass.com

Eric Bensamochan on behalf of Interested Party Courtesy NEF
eric@eblawfirm.us, G63723@notify.cincompass.com

Eric Bensamochan on behalf of Interested Party Eric Bensamochan
eric@eblawfirm.us, G63723@notify.cincompass.com

Ronald K Brown on behalf of Creditor SDCO Tustin Executive Center, Inc.
ron@rkbrownlaw.com

Christopher Celentino on behalf of Plaintiff Richard A. Marshack
christopher.celentino@dinsmore.com, caron.burke@dinsmore.com

Christopher Celentino on behalf of Trustee Richard A Marshack (TR)
christopher.celentino@dinsmore.com, caron.burke@dinsmore.com

Michael F Chekian on behalf of Interested Party Michael Chekian
mike@cheklaw.com, chekianmr84018@notify.bestcase.com

Shawn M Christianson on behalf of Interested Party Courtesy NEF
cmcintire@buchalter.com, schristianson@buchalter.com

Randall Baldwin Clark on behalf of Interested Party Randall Baldwin Clark
rbc@randallbclark.com

Leslie A Cohen on behalf of Interested Party Courtesy NEF
leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com;clare@lesliecohenlaw.com

Jenny L Doling on behalf of Interested Party INTERESTED PARTY
jd@jdl.law, dolingjr92080@notify.bestcase.com;15994@notices.nextchapterbk.com

Jenny L Doling on behalf of Interested Party National Association of Consumer Bankruptcy Attorneys
jd@jdl.law, dolingjr92080@notify.bestcase.com;15994@notices.nextchapterbk.com

Jenny L Doling on behalf of Interested Party National Consumer Bankruptcy Rights Center
jd@jdl.law, dolingjr92080@notify.bestcase.com;15994@notices.nextchapterbk.com

Daniel A Edelman on behalf of Creditor Carolyn Beech
dedelman@edcombs.com, courtecl@edcombs.com

Christopher Ghio on behalf of Plaintiff Richard A. Marshack
christopher.ghio@dinsmore.com, Kristina.Heller@Dinsmore.com

Christopher Ghio on behalf of Trustee Richard A Marshack (TR)
christopher.ghio@dinsmore.com, Kristina.Heller@Dinsmore.com

Jeffrey I Golden on behalf of Creditor Anaheim Arena Management, LLC
jgolden@go2.law,
kadele@ecf.courtdrive.com;cbmeeker@gmail.com;lbracken@wgllp.com;gestrada@wgllp.com;golden.jeff
reyi.b117954@notify.bestcase.com

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-.1.PROOF.SERVICE**

Jeffrey I Golden on behalf of Creditor Anaheim Ducks Hockey Club, LLC
jgolden@go2.law,
kadele@ecf.courtdrive.com;cbmeeker@gmail.com;lbracken@wgllp.com;gestrada@wgllp.com;golden.jeff
reyi.b117954@notify.bestcase.com

Jeffrey I Golden on behalf of Interested Party Courtesy NEF
jgolden@go2.law,
kadele@ecf.courtdrive.com;cbmeeker@gmail.com;lbracken@wgllp.com;gestrada@wgllp.com;golden.jeff
reyi.b117954@notify.bestcase.com

Richard H Golubow on behalf of Creditor Debt Validation Fund II, LLC
rgolubow@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com

Richard H Golubow on behalf of Creditor MC DVI Fund 1, LLC
rgolubow@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com

Richard H Golubow on behalf of Creditor MC DVI Fund 2, LLC
rgolubow@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com

D Edward Hays on behalf of Interested Party Courtesy NEF
ehays@marshackhays.com,
ehays@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@
ecf.courtdrive.com

D Edward Hays on behalf of Trustee Richard A Marshack (TR)
ehays@marshackhays.com,
ehays@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@
ecf.courtdrive.com

Alan Craig Hochheiser on behalf of Creditor City Capital NY
ahochheiser@mauricewutscher.com, arodriguez@mauricewutscher.com

Garrick A Hollander on behalf of Creditor Debt Validation Fund II, LLC
ghollander@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com

Garrick A Hollander on behalf of Creditor MC DVI Fund 1, LLC
ghollander@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com

Garrick A Hollander on behalf of Creditor MC DVI Fund 2, LLC
ghollander@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com

Razmig Izakelian on behalf of Creditor OHP-CDR, LP
razmigizakelian@quinnemanuel.com

Joon M Khang on behalf of Debtor The Litigation Practice Group P.C.
joon@khanglaw.com

Ira David Kharasch on behalf of Interested Party Ad Hoc Consumer Claimants Committee
ikharasch@pszjlaw.com

Ira David Kharasch on behalf of Interested Party Courtesy NEF
ikharasch@pszjlaw.com

Meredith King on behalf of Interested Party Courtesy NEF

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                    F 9013-.1.PROOF.SERVICE

mking@fsl.law, ssanchez@fsl.law;jwilson@fsl.law

Nicholas A Koffroth on behalf of Creditor Committee Committee of Unsecured Creditors
nkoffroth@foxrothschild.com, khoang@foxrothschild.com

David S Kupetz on behalf of Defendant Marich Bein, LLC
David.Kupetz@lockelord.com, mylene.ruiz@lockelord.com

David S Kupetz on behalf of Interested Party Courtesy NEF
David.Kupetz@lockelord.com, mylene.ruiz@lockelord.com

Christopher J Langley on behalf of Interested Party Courtesy NEF
chris@slclawoffice.com,
omar@slclawoffice.com;langleycr75251@notify.bestcase.com;ecf123@casedriver.com

Daniel A Lev on behalf of Interested Party Consumer Legal Group, P.C.
daniel.lev@gmlaw.com, cheryl.caldwell@gmlaw.com;dlev@ecf.courtdrive.com

Daniel A Lev on behalf of Interested Party Courtesy NEF
daniel.lev@gmlaw.com, cheryl.caldwell@gmlaw.com;dlev@ecf.courtdrive.com

Daniel A Lev on behalf of Interested Party Liberty Acquisitions Group Inc.
daniel.lev@gmlaw.com, cheryl.caldwell@gmlaw.com;dlev@ecf.courtdrive.com

Michael D Lieberman on behalf of Creditor Phillip A. Greenblatt, PLLC
mlieberman@lipsonneilson.com

Yosina M Lissebeck on behalf of Trustee Richard A Marshack (TR)
Yosina.Lissebeck@Dinsmore.com, caron.burke@dinsmore.com

Richard A Marshack (TR)
pkraus@marshackhays.com, rmarshack@iq7technology.com;ecf.alert+Marshack@titlexi.com

Laila Masud on behalf of Interested Party Courtesy NEF
lmasud@marshackhays.com, lmasud@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com

Laila Masud on behalf of Interested Party Richard A. Marshack
lmasud@marshackhays.com, lmasud@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com

Laila Masud on behalf of Plaintiff Richard Marshack
lmasud@marshackhays.com, lmasud@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com

Laila Masud on behalf of Trustee Richard A Marshack (TR)
lmasud@marshackhays.com, lmasud@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com

Kenneth Misken on behalf of U.S. Trustee United States Trustee (SA)
Kenneth.M.Misken@usdoj.gov

Byron Z Moldo on behalf of Interested Party Byron Moldo
bmoldo@ecjlaw.com, amatsuoka@ecjlaw.com,dperez@ecjlaw.com

Alan I Nahmias on behalf of Interested Party Courtesy NEF
anahmias@mbn.law, jdale@mbnlawyers.com

Victoria Newmark on behalf of Interested Party Courtesy NEF

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                    F 9013-.1.PROOF.SERVICE

vnewmark@pszjlaw.com

Queenie K Ng on behalf of U.S. Trustee United States Trustee (SA)
queenie.k.ng@usdoj.gov

Keith C Owens on behalf of Creditor Committee Committee of Unsecured Creditors
kowens@foxrothschild.com, khoang@foxrothschild.com

Teri T Pham on behalf of Attorney Teri Pham
tpham@epglawyers.com, ttpassistant@epglawyers.com

Douglas A Plazak on behalf of Defendant Greyson Law Center PC
dplazak@rhlaw.com

Douglas A Plazak on behalf of Defendant Han Trinh
dplazak@rhlaw.com

Douglas A Plazak on behalf of Defendant Jayde Trinh
dplazak@rhlaw.com

Douglas A Plazak on behalf of Defendant Scott James Eadie
dplazak@rhlaw.com

Ronald N Richards on behalf of Defendant Consumer Legal Group, PC
ron@ronaldrichards.com, 7206828420@filings.docketbird.com

Ronald N Richards on behalf of Interested Party Courtesy NEF
ron@ronaldrichards.com, 7206828420@filings.docketbird.com

Gregory M Salvato on behalf of Creditor Mari Agape
gsalvato@salvatoboufadel.com,
calendar@salvatolawoffices.com;jboufadel@salvatoboufadel.com;gsalvato@ecf.inforuptcy.com

Gregory M Salvato on behalf of Interested Party Courtesy NEF
gsalvato@salvatoboufadel.com,
calendar@salvatolawoffices.com;jboufadel@salvatoboufadel.com;gsalvato@ecf.inforuptcy.com

Olivia Scott on behalf of Creditor Azzure Capital LLC
olivia.scott3@bclplaw.com

Olivia Scott on behalf of Creditor Hi Bar Capital LLC
olivia.scott3@bclplaw.com

Jonathan Serrano on behalf of Plaintiff Richard A. Marshack
jonathan.serrano@dinsmore.com

Jonathan Serrano on behalf of Trustee Richard A Marshack (TR)
jonathan.serrano@dinsmore.com

Paul R Shankman on behalf of Attorney Paul R. Shankman
PShankman@fortislaw.com, info@fortislaw.com

Paul R Shankman on behalf of Creditor United Partnerships, LLC
PShankman@fortislaw.com, info@fortislaw.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                          F 9013-.1.PROOF.SERVICE

Leslie Skorheim on behalf of U.S. Trustee United States Trustee (SA)
leslie.skorheim@usdoj.gov

Howard Steinberg on behalf of Defendant BankUnited, N.A.
steinbergh@gtlaw.com, pearsallt@gtlaw.com;howard-steinberg-6096@ecf.pacerpro.com

Andrew Still on behalf of Creditor Alteryx, Inc.
astill@swlaw.com, kcollins@swlaw.com

Andrew Still on behalf of Interested Party Courtesy NEF
astill@swlaw.com, kcollins@swlaw.com

United States Trustee (SA)
ustpregion16.sa.ecf@usdoj.gov

Sharon Z. Weiss on behalf of Creditor Azzure Capital LLC
sharon.weiss@bclplaw.com, raul.morales@bclplaw.com,REC_KM_ECF_SMO@bclplaw.com

Sharon Z. Weiss on behalf of Creditor Hi Bar Capital LLC
sharon.weiss@bclplaw.com, raul.morales@bclplaw.com,REC_KM_ECF_SMO@bclplaw.com

Johnny White on behalf of Creditor Debt Relief Group, LLC
JWhite@wrslawyers.com, jlee@wrslawyers.com

Johnny White on behalf of Interested Party Courtesy NEF
JWhite@wrslawyers.com, jlee@wrslawyers.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                          **F 9013-.1.PROOF.SERVICE**