United States Bankruptcy Court

Central District of California

In re:                                                                    Case No. 23-10571-SC

The Litigation Practice Group P.C.                                        Chapter 11

    Debtor

# CERTIFICATE OF NOTICE

| District/off: 0973-8 | User: admin | Page 1 of 5 |
|---|---|---|
| Date Rcvd: Aug 02, 2023 | Form ID: pdf042 | Total Noticed: 1 |

The following symbols are used throughout this certificate:

| Symbol | Definition |
|---|---|
| + | Addresses marked '+' were corrected by inserting the ZIP, adding the last four digits to complete the zip +4, or replacing an incorrect ZIP. USPS regulations require that automation-compatible mail display the correct ZIP. |
| # | Addresses marked '#' were identified by the USPS National Change of Address system as requiring an update. While the notice was still deliverable, the notice recipient was advised to update its address with the court immediately. |

**Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on Aug 04, 2023:**

| Recip ID | Recipient Name and Address |
|---|---|
| db | #+  The Litigation Practice Group P.C., 17542 17th St, Suite 100, Tustin, CA 92780-1981 |

TOTAL: 1

**Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.**
Electronic transmission includes sending notices via email (Email/text and Email/PDF), and electronic data interchange (EDI).

NONE

# BYPASSED RECIPIENTS

**The following addresses were not sent this bankruptcy notice due to an undeliverable address, *duplicate of an address listed above, *P duplicate of a preferred address, or ## out of date forwarding orders with USPS.**

NONE

# NOTICE CERTIFICATION

**I, Gustava Winters, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed .R. Bank. P.2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

Date: Aug 04, 2023                    Signature:    /s/Gustava Winters

---

# CM/ECF NOTICE OF ELECTRONIC FILING

**The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email) system on August 2, 2023 at the address(es) listed below:**

| Name | Email Address |
|---|---|
| Aaron E. DE Leest | on behalf of Interested Party Courtesy NEF adeleest@DanningGill.com  danninggill@gmail.com;adeleest@ecf.inforuptcy.com |
| Alan Craig Hochheiser | on behalf of Creditor City Capital NY ahochheiser@mauricewutscher.com  arodriguez@mauricewutscher.com |
| Alan I Nahmias | on behalf of Interested Party Courtesy NEF anahmias@mbn.law  jdale@mbn.law |
| Andrew Still | on behalf of Interested Party Courtesy NEF astill@swlaw.com  kcollins@swlaw.com |
| Andrew Still | on behalf of Creditor Alteryx  Inc. astill@swlaw.com, kcollins@swlaw.com |

District/off: 0973-8                          User: admin                          Page 2 of 5
Date Rcvd: Aug 02, 2023                       Form ID: pdf042                       Total Noticed: 1

Byron Z Moldo
                on behalf of Interested Party Byron Moldo bmoldo@ecjlaw.com  amatsuoka@ecjlaw.com,dperez@ecjlaw.com

Christopher Celentino
                on behalf of Plaintiff Richard A. Marshack christopher.celentino@dinsmore.com  caron.burke@dinsmore.com

Christopher Celentino
                on behalf of Trustee Richard A Marshack (TR) christopher.celentino@dinsmore.com  caron.burke@dinsmore.com

Christopher Ghio
                on behalf of Plaintiff Richard A. Marshack christopher.ghio@dinsmore.com  Kristina.Heller@Dinsmore.com

Christopher Ghio
                on behalf of Trustee Richard A Marshack (TR) christopher.ghio@dinsmore.com  Kristina.Heller@Dinsmore.com

Christopher J Langley
                on behalf of Interested Party Courtesy NEF chris@slclawoffice.com
                omar@slclawoffice.com;langleycr75251@notify.bestcase.com;ecf123@casedriver.com

D Edward Hays
                on behalf of Trustee Richard A Marshack (TR) ehays@marshackhays.com
                ehays@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@ecf.courtdrive.com

D Edward Hays
                on behalf of Interested Party Courtesy NEF ehays@marshackhays.com
                ehays@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@ecf.courtdrive.com

Daniel A Edelman
                on behalf of Creditor Carolyn Beech dedelman@edcombs.com  courtecl@edcombs.com

Daniel A Lev
                on behalf of Interested Party Liberty Acquisitions Group Inc. daniel.lev@gmlaw.com
                cheryl.caldwell@gmlaw.com;dlev@ecf.courtdrive.com

Daniel A Lev
                on behalf of Interested Party Consumer Legal Group  P.C. daniel.lev@gmlaw.com,
                cheryl.caldwell@gmlaw.com;dlev@ecf.courtdrive.com

Daniel A Lev
                on behalf of Interested Party Courtesy NEF daniel.lev@gmlaw.com  cheryl.caldwell@gmlaw.com;dlev@ecf.courtdrive.com

Daniel A Lev
                on behalf of Defendant Consumer Legal Group  PC daniel.lev@gmlaw.com,
                cheryl.caldwell@gmlaw.com;dlev@ecf.courtdrive.com

Daniel A Lev
                on behalf of Defendant LGS Holdco  LLC daniel.lev@gmlaw.com, cheryl.caldwell@gmlaw.com;dlev@ecf.courtdrive.com

Daniel H Reiss
                on behalf of Defendant Touzi Capital  LLC dhr@lnbyg.com, dhr@ecf.inforuptcy.com

Daniel H Reiss
                on behalf of Defendant Eng Taing dhr@lnbyg.com  dhr@ecf.inforuptcy.com

David S Kupetz
                on behalf of Defendant Marich Bein  LLC David.Kupetz@lockelord.com, mylene.ruiz@lockelord.com

David S Kupetz
                on behalf of Interested Party Courtesy NEF David.Kupetz@lockelord.com  mylene.ruiz@lockelord.com

Douglas A Plazak
                on behalf of Defendant Han Trinh dplazak@rhlaw.com

Douglas A Plazak
                on behalf of Defendant Greyson Law Center PC dplazak@rhlaw.com

Douglas A Plazak
                on behalf of Defendant Jayde Trinh dplazak@rhlaw.com

Douglas A Plazak
                on behalf of Defendant Scott James Eadie dplazak@rhlaw.com

Eric Bensamochan
                on behalf of Creditor Oxford Knox  LLC eric@eblawfirm.us, G63723@notify.cincompass.com

Eric Bensamochan
                on behalf of Interested Party Eric Bensamochan eric@eblawfirm.us  G63723@notify.cincompass.com

Eric Bensamochan
                on behalf of Interested Party Courtesy NEF eric@eblawfirm.us  G63723@notify.cincompass.com

Eric Bensamochan
                on behalf of Creditor Affirma  LLC eric@eblawfirm.us, G63723@notify.cincompass.com

District/off: 0973-8                                    User: admin                                    Page 3 of 5
Date Rcvd: Aug 02, 2023                              Form ID: pdf042                              Total Noticed: 1

Garrick A Hollander
    on behalf of Creditor MC DVI Fund 1  LLC ghollander@wghlawyers.com,
jmartinez@wghlawyers.com;svillegas@wghlawyers.com

Garrick A Hollander
    on behalf of Creditor Debt Validation Fund II  LLC ghollander@wghlawyers.com,
jmartinez@wghlawyers.com;svillegas@wghlawyers.com

Garrick A Hollander
    on behalf of Creditor MC DVI Fund 2  LLC ghollander@wghlawyers.com,
jmartinez@wghlawyers.com;svillegas@wghlawyers.com

Gregory M Salvato
    on behalf of Interested Party Courtesy NEF gsalvato@salvatoboufadel.com
calendar@salvatolawoffices.com;jboufadel@salvatoboufadel.com;gsalvato@ecf.inforuptcy.com

Gregory M Salvato
    on behalf of Creditor Mari Agape gsalvato@salvatoboufadel.com
calendar@salvatolawoffices.com;jboufadel@salvatoboufadel.com;gsalvato@ecf.inforuptcy.com

Howard Steinberg
    on behalf of Defendant BankUnited  N.A. steinbergh@gtlaw.com,
pearsallt@gtlaw.com;howard-steinberg-6096@ecf.pacerpro.com

Ira David Kharasch
    on behalf of Interested Party Ad Hoc Consumer Claimants Committee ikharasch@pszjlaw.com

Ira David Kharasch
    on behalf of Interested Party Courtesy NEF ikharasch@pszjlaw.com

Jeffrey I Golden
    on behalf of Creditor Affirma  LLC jgolden@go2.law,
kadele@ecf.courtdrive.com;cbmeeker@gmail.com;lbracken@wgllp.com;gestrada@wgllp.com;golden.jeffreyi.b117954@notify.b
estcase.com

Jeffrey I Golden
    on behalf of Creditor Anaheim Ducks Hockey Club  LLC jgolden@go2.law,
kadele@ecf.courtdrive.com;cbmeeker@gmail.com;lbracken@wgllp.com;gestrada@wgllp.com;golden.jeffreyi.b117954@notify.b
estcase.com

Jeffrey I Golden
    on behalf of Creditor Anaheim Arena Management  LLC jgolden@go2.law,
kadele@ecf.courtdrive.com;cbmeeker@gmail.com;lbracken@wgllp.com;gestrada@wgllp.com;golden.jeffreyi.b117954@notify.b
estcase.com

Jeffrey I Golden
    on behalf of Interested Party Courtesy NEF jgolden@go2.law
kadele@ecf.courtdrive.com;cbmeeker@gmail.com;lbracken@wgllp.com;gestrada@wgllp.com;golden.jeffreyi.b117954@notify.b
estcase.com

Jeffrey I Golden
    on behalf of Creditor Oxford Knox  LLC jgolden@go2.law,
kadele@ecf.courtdrive.com;cbmeeker@gmail.com;lbracken@wgllp.com;gestrada@wgllp.com;golden.jeffreyi.b117954@notify.b
estcase.com

Jenny L Doling
    on behalf of Interested Party National Consumer Bankruptcy Rights Center jd@jdl.law
dolingjr92080@notify.bestcase.com;15994@notices.nextchapterbk.com

Jenny L Doling
    on behalf of Interested Party INTERESTED PARTY jd@jdl.law
dolingjr92080@notify.bestcase.com;15994@notices.nextchapterbk.com

Jenny L Doling
    on behalf of Interested Party National Association of Consumer Bankruptcy Attorneys jd@jdl.law
dolingjr92080@notify.bestcase.com;15994@notices.nextchapterbk.com

Johnny White
    on behalf of Creditor Debt Relief Group  LLC JWhite@wrslawyers.com, jlee@wrslawyers.com

Johnny White
    on behalf of Interested Party Courtesy NEF JWhite@wrslawyers.com  jlee@wrslawyers.com

Jonathan Serrano
    on behalf of Trustee Richard A Marshack (TR) jonathan.serrano@dinsmore.com

Jonathan Serrano
    on behalf of Plaintiff Richard A. Marshack jonathan.serrano@dinsmore.com

Joon M Khang
    on behalf of Debtor The Litigation Practice Group P.C. joon@khanglaw.com

Keith C Owens

District/off: 0973-8                                    User: admin                                    Page 4 of 5
Date Rcvd: Aug 02, 2023                        Form ID: pdf042                              Total Noticed: 1

on behalf of Creditor Committee Committee of Unsecured Creditors kowens@foxrothschild.com  khoang@foxrothschild.com

Kenneth Misken
    on behalf of U.S. Trustee United States Trustee (SA) Kenneth.M.Misken@usdoj.gov

Laila Masud
    on behalf of Interested Party Richard A. Marshack lmasud@marshackhays.com
lmasud@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com

Laila Masud
    on behalf of Plaintiff Richard Marshack lmasud@marshackhays.com  lmasud@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com

Laila Masud
    on behalf of Trustee Richard A Marshack (TR) lmasud@marshackhays.com
lmasud@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com

Laila Masud
    on behalf of Interested Party Courtesy NEF lmasud@marshackhays.com
lmasud@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com

Leslie Skorheim
    on behalf of U.S. Trustee United States Trustee (SA) leslie.skorheim@usdoj.gov

Leslie A Cohen
    on behalf of Interested Party Courtesy NEF leslie@lesliecohenlaw.com  jaime@lesliecohenlaw.com;clare@lesliecohenlaw.com

Meredith King
    on behalf of Interested Party Courtesy NEF mking@fsl.law  ssanchez@fsl.law;jwilson@fsl.law

Meredith King
    on behalf of Defendant Gallant Law Group mking@fsl.law  ssanchez@fsl.law;jwilson@fsl.law

Michael D Lieberman
    on behalf of Creditor Phillip A. Greenblatt  PLLC mlieberman@lipsonneilson.com

Michael F Chekian
    on behalf of Interested Party Michael Chekian mike@cheklaw.com  chekianmr84018@notify.bestcase.com

Nicholas A Koffroth
    on behalf of Creditor Committee Committee of Unsecured Creditors nkoffroth@foxrothschild.com  khoang@foxrothschild.com

Olivia Scott
    on behalf of Creditor Hi Bar Capital LLC olivia.scott3@bclplaw.com

Olivia Scott
    on behalf of Creditor Azzure Capital LLC olivia.scott3@bclplaw.com

Paul R Shankman
    on behalf of Creditor United Partnerships  LLC PShankman@fortislaw.com, info@fortislaw.com

Paul R Shankman
    on behalf of Attorney Paul R. Shankman PShankman@fortislaw.com  info@fortislaw.com

Peter W Bowie
    on behalf of Trustee Richard A Marshack (TR) peter.bowie@dinsmore.com  caron.burke@dinsmore.com

Queenie K Ng
    on behalf of U.S. Trustee United States Trustee (SA) queenie.k.ng@usdoj.gov

Randall Baldwin Clark
    on behalf of Interested Party Randall Baldwin Clark rbc@randallbclark.com

Razmig Izakelian
    on behalf of Creditor OHP-CDR  LP razmigizakelian@quinnemanuel.com

Richard A Marshack (TR)
    pkraus@marshackhays.com  rmarshack@iq7technology.com;ecf.alert+Marshack@titlexi.com

Richard H Golubow
    on behalf of Creditor Debt Validation Fund II  LLC rgolubow@wghlawyers.com,
jmartinez@wghlawyers.com;svillegas@wghlawyers.com

Richard H Golubow
    on behalf of Creditor MC DVI Fund 1  LLC rgolubow@wghlawyers.com,
jmartinez@wghlawyers.com;svillegas@wghlawyers.com

Richard H Golubow
    on behalf of Creditor MC DVI Fund 2  LLC rgolubow@wghlawyers.com,
jmartinez@wghlawyers.com;svillegas@wghlawyers.com

Ronald K Brown
    on behalf of Creditor SDCO Tustin Executive Center  Inc. ron@rkbrownlaw.com

District/off: 0973-8                                    User: admin                                    Page 5 of 5
Date Rcvd: Aug 02, 2023                              Form ID: pdf042                              Total Noticed: 1

Ronald N Richards
    on behalf of Defendant Consumer Legal Group  PC ron@ronaldrichards.com, 7206828420@filings.docketbird.com

Ronald N Richards
    on behalf of Interested Party Courtesy NEF ron@ronaldrichards.com  7206828420@filings.docketbird.com

Sharon Z. Weiss
    on behalf of Creditor Azzure Capital LLC sharon.weiss@bclplaw.com
    raul.morales@bclplaw.com,REC_KM_ECF_SMO@bclplaw.com

Sharon Z. Weiss
    on behalf of Creditor Hi Bar Capital LLC sharon.weiss@bclplaw.com
    raul.morales@bclplaw.com,REC_KM_ECF_SMO@bclplaw.com

Shawn M Christianson
    on behalf of Interested Party Courtesy NEF cmcintire@buchalter.com  schristianson@buchalter.com

Teri T Pham
    on behalf of Attorney Teri Pham tpham@epglawyers.com  ttpassistant@epglawyers.com;dle@epglawyers.com

Teri T Pham
    on behalf of Defendant Daniel S. March tpham@epglawyers.com  ttpassistant@epglawyers.com;dle@epglawyers.com

Teri T Pham
    on behalf of Defendant Tony Diab tpham@epglawyers.com  ttpassistant@epglawyers.com;dle@epglawyers.com

United States Trustee (SA)
    ustpregion16.sa.ecf@usdoj.gov

Victoria Newmark
    on behalf of Interested Party Courtesy NEF vnewmark@pszjlaw.com

Yosina M Lissebeck
    on behalf of Plaintiff Richard A. Marshack Yosina.Lissebeck@Dinsmore.com  caron.burke@dinsmore.com

Yosina M Lissebeck
    on behalf of Trustee Richard A Marshack (TR) Yosina.Lissebeck@Dinsmore.com  caron.burke@dinsmore.com

Zev Shechtman
    on behalf of Interested Party Danning Gill Israel & Krasnoff LLP zs@DanningGill.com
    danninggill@gmail.com;zshechtman@ecf.inforuptcy.com


TOTAL: 91

1   Christopher B. Ghio (State Bar No. 259094)
    Christopher Celentino (State Bar No. 131688)
2   Yosina M. Lissebeck (State Bar No. 201654)
    **DINSMORE & SHOHL LLP**
3   655 West Broadway, Suite 800
    San Diego, CA 92101
4   Telephone:  619.400.0500
    Facsimile:  619.400.0501
5   christopher.ghio@dinsmore.com
    christopher.celentino@dinsmore.com
6   yosina.lissebeck@dinsmore.com

7   Special Counsel to Richard A. Marshack

8

9                    **UNITED STATES BANKRUPTCY COURT**

10           **CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION**

11

12   In re:                              Case No. 8:23-bk-10571-SC

13   THE LITIGATION PRACTICE GROUP P.C.,  Chapter 11

14              Debtor.                   **ORDER (A) APPROVING SALE OF
                                          ASSETS FREE AND CLEAR OF ALL**
15                                        **LIENS, CLAIMS, ENCUMBRANCES
                                          AND INTERESTS PURSUANT TO 11**
16                                        **U.S.C. § 363(b), (B) APPROVING
                                          ASSUMPTION AND ASSIGNMENT OF**
17                                        **CERTAIN EXECUTORY CONTRACTS
                                          AND UNEXPIRED LEASES AND OTHER**
18                                        **AGREEMENTS, AND (C) GRANTING
                                          RELATED RELIEF**
19
                                          Date:      July 21, 2023
20                                        Time:      10:00 a.m.
                                          Ctrm:      5C
21

22

23

24

25

26

27

28

147759571.1

---

FILED & ENTERED

AUG 02 2023

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY bolte        DEPUTY CLERK

On July 21, 2023, at 10:00 a.m., in Courtroom 5C of the United States Bankruptcy Court, Central District of California, Santa Ana Division ("Bankruptcy Court"), located at 411 West Fourth Street, the Honorable Scott C. Clarkson, United States Bankruptcy Judge, conducted a hearing ("Hearing") regarding above-referenced debtor, The Litigation Practice Group, P.C. ("LPG" or the "Debtor") relating to the within bankruptcy estate ("Estate"); on the Motion of Trustee Richard A. Marshack ("Trustee")For Entry of an Order: (A) Approving Sale of Assets Free and Clear of All Liens, Claims, Encumbrances and Interests Pursuant to 11 U.S.C. § 363(b); and (B) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases and Other Agreements [Dkt. No. 191] (the "Motion")[1] filed by Richard A. Marshack on July 7, 2023 in the above-captioned Chapter 11 bankruptcy case ("Case"), along with the Declaration of Richard A. Marshack in Support by Richard A. Marshack, Chapter 11 Trustee [Dkt. No. 191-1] ; Declaration of Mr. Carss [Dkt. No. 191-2]; Declaration of Mr. Pruyn [Dkt. No. 191-3]; Declaration of Mr. Rebhun [Dkt. No. 191-4]; and Declaration of Mr. Schneider [Dkt. No. 191-5], along with all supplemental documents requested by the Bankruptcy Court to be filed on July 17, 2023, including but not limited to Trustee's Pocket Brief [Dkt. No. 260]; the Supplemental Declaration of Mr. Rebhun [Dkt. No. 260-1]; the Supplemental Declaration of Mr. Pruyn [Dkt. No. 260-2]; and Supplemental Declaration of Mr. Carss [Dkt. No. 260-3]. Christopher Celentino, Christopher Ghio, Yosina Lissebeck and Peter W. Bowie of Dinsmore & Shohl LLP appeared on behalf of Trustee. Keith C. Owens and Nicholas A. Koffroth at Fox Rothschild LLP appeared on behalf of the Official Committee of Unsecured Creditors ("Committee"). The Office of the United States Trustee appeared by and through Kenneth Misken, Leslie Skorheim and Queenie Ng. The consumer privacy ombudsman, Lucy Thomson, appeared. The proposed monitor, Nancy Rapoport, appeared. Other interested parties and bidders appeared as reflected on the record.  Any other appearances were as stated on the record.

Due notice of the sale hearing having been given and the Bankruptcy Court having heard argument of counsel and any evidence presented in support of the relief requested in the Motion;

---

[1] Terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

any objections to the Sale having been overruled, and it appearing that the relief requested in the Motion is in the best interests of the Debtor, the Estate, the Estate's creditors and other parties in interest; and after due deliberation thereon, the Bankruptcy Court having entered its Order Approving Motion of Trustee Richard A. Marshack For Entry of an Order: (A) Approving Sale of Assets Free and Clear of All Liens, Claims, Encumbrances  and Interests Pursuant to 11 U.S.C. § 363(b); and (B) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases and Other Agreements [Dkt. No. 320] entered on July 22, 2023, the Bankruptcy Court hereby makes the following findings of fact and conclusions of law:

**Findings of Fact and Conclusions of Law:[2]**

A.      The Bankruptcy Court has jurisdiction over the Motion and this matter pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (M), (N), and (O).  Venue of this Case and the Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409. This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).

B.      The statutory predicates for the relief sought in the Motion are Sections 102, 105, 363 and 365 of Title 11 of the United States Code ("<u>Bankruptcy Code</u>") and Rules 2002, 4001, 6004, 6006, 9006, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure ("<u>Bankruptcy Rules</u>"). Trustee has established the necessary facts to support the entry of an order for the sale of the Property as provided in the Asset Purchase Agreement (as defined below).

C.      The Notice of Sale of Estate Property ("<u>Sale Notice</u>"), the Motion, including overbid procedures set forth therein, the Notice of Entry of Order: (I)(A) Approving Sale of Assets Free and Clear of All Liens, Claims, Encumbrances  and Interests Pursuant to 11 U.S.C. § 363(b) and the Asset Purchase Agreement; and (B) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases and Other Agreements, (II)(A) Approving the form and manner of Notice to Consumers, subject to the review of the Monitor, (B) Approving the form and manner of  Legal Service Agreement, subject to the review of the Monitor, (C) Approving

---

[2] Pursuant to Bankruptcy Rule 7052, findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, when appropriate.

Procedures for Determining Cure Amounts, and (D) Approving Procedures for Notice to Consumer; were served and filed.

D.      Due and adequate notice of the Motion, the Sale Notice, and Sale Order (collectively the "Sale") has been given in accordance with Sections 102(1), 105(a), 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, 6004, 6006, 9006, 9007, 9008 and 9014, and any other applicable provision, including, but not limited to, and no other or further notice of the Sale is or shall be required, but forth the required notice to consumers set forth herein.  A reasonable opportunity to object and be heard regarding Sale and the transactions contemplated thereunder and under the APA has been afforded and reasonably calculated to apprise: (i) all holders of liens, claims, encumbrances and interests (including, without limitation, all of the holders of liens, claims, encumbrances and interests set forth in Paragraph P below) asserted in or against the assets; (ii) the Office of the United States Trustee; (iii) all applicable federal, state and local regulatory or taxing authorities, recording offices or any governmental entity which have a reasonably known interest in the relief requested in the Sale; and (iv) all parties entitled to receive notice as of the date hereof pursuant to the Bankruptcy Code, the Bankruptcy Rules and/or orders of this Bankruptcy Court, and no other or further notice of the Sale is required. A reasonable opportunity to object or be heard regarding the relief requested has been afforded to all interested persons and entities.

E.      The Trustee, having been previously authorized to borrow funds to continue the operations of the business, undertook, and the Debtor's assets have been the subject of, an appropriate marketing and sale process. Trustee solicited bids and other offers in accordance with the Motion and Notice of Sale.  As set forth in the Supplemental Declaration of Trustee, the only Qualified Bidders were Morning Law Group and Bensamochan Law Group, consistent with the Notice of Sale. Trustee has appropriately and adequately marketed the assets and the Motion and Notice of Sale has complied with procedures. The price for the assets are fair and reasonable and constitute the best offer.

F.      After an auction conducted on the record during the hearing, Morning Law Group, P.C. ("Morning Law"), was approved as the highest and best offer and is the successful purchaser. At the hearing, approval was sought of the APA by and among Trustee and Morning Law (also

sometimes referred to as "Purchaser" or "Buyer") on the terms and conditions announced on the record at the hearing, and substantially memorialized and to be executed in substantially the form attached hereto as Exhibit "1."

G.      The Trustee and Morning Law are presently negotiating terms of a revised Asset Purchase Agreement that will be consistent with this Order (the "APA").  Upon the full execution of the APA, the Trustee will file a copy of the fully-executed APA as a supplement to this Order.

H.      At the Sale hearing, Bensamochan Law Group ("Backup Bidder") was selected and approved as the Backup Bidder in accordance with the Sale procedures.  The Backup Bid by the Backup Bidder, to wit, was the next highest bid below the Purchaser.  If Backup Bidder becomes the purchaser of the assets as provided in the Sale and this Order below, Bensamochan Law Group, as the purchaser in that circumstance is purchasing the assets in good faith and is a good faith purchaser of the assets within the meaning of Section 363(m) of the Bankruptcy Code and is, therefore, entitled to all of the protections afforded by that provision.  Backup Bidder and its representatives have proceeded in good faith in all respects in connection with the Sale.  Backup Bidder will execute the APA in substantially the form attached hereto as Exhibit "1."

I.      Qualified bidders who were not the successful bidder, nor a back-up bidder, shall have their deposit returned as soon as possible after the conclusion of the hearing, at the discretion of Trustee. The Deposit of the successful bidder, and Backup Bidder, shall be controlled by the terms of the Sale, APA and this Order.

J.      Trustee and the Estate has full organizational and other power and authority to execute and deliver the APA and all other documents contemplated thereby, and the sale of the assets and, as applicable, the assumption and assignment of the Assumed Contracts (as defined in the APA), by Trustee and the Estate to Purchaser has been duly and validly authorized by all necessary action. Trustee and the Estate has all of the organizational and other power and authority necessary to consummate the transactions contemplated by the APA, and no consents or approvals, other than those expressly provided for in the APA, are required for Trustee or the Estate to consummate such transactions.  Trustee, as duly appointed and acting trustee in this case, is authorized to bind the Estate.

K.      The APA was negotiated, proposed and entered into (or if not yet executed, when entered into) without collusion, in good faith and from arm's-length bargaining positions.  Neither Trustee, the Estate nor Purchaser, nor any of their respective representatives, have engaged in any conduct that would cause or permit the APA to be avoided under Section 363(n) of the Bankruptcy Code. The terms and conditions of the APA and the transactions contemplated thereby (including, without limitation, the consideration provided in respect thereof) are fair and reasonable and shall not be avoided under Section 363(n) of the Bankruptcy Code. The Sale and procedures set forth in and approved by this Order were non-collusive, proposed and executed in good faith as a result of arm's length negotiations, and substantively and procedurally fair to all parties.  The hearing was conducted, including, without limitation, the selection of the purchaser and the backup purchaser (as defined below) at the conclusion of the hearing and approval of Morning Law as the purchaser, is in accordance with the Sale.  Trustee solicited offers in accordance with, and has otherwise complied in all respects with, the Sale. The sale process set forth in the Sale afforded a full, fair and reasonable opportunity for any person or entity to make a higher or otherwise better offer to purchase the assets, with Purchaser ultimately having been determined by the Bankruptcy Court to be the successful bidder for the assets after consideration of all of the facts and circumstances relevant and necessary for the Bankruptcy Court to make the findings set forth herein.

L.      Purchaser has complied with Sections 363 and 365 of the Bankruptcy Code with respect to the Sale pursuant to the terms of the APA and this Order. Upon closing, Purchaser shall receive the assets free and clear of the liens, claims, encumbrances and interests except as otherwise permitted by the APA or set forth herein.

M.      Morning Law, as Purchaser, is purchasing the assets in good faith and is a good faith purchaser within the meaning of Section 363(m) of the Bankruptcy Code and is, therefore, entitled to all of the protections afforded by that provision. Purchaser and its representatives have proceeded in good faith in all respects in connection with the Sale. The proposed Sale was conducted pursuant to commercially reasonable procedures, approved by this Bankruptcy Court, and constitutes reasonably equivalent value and reasonable market value for the property.  The APA was negotiated, proposed and entered in good faith, from arm's length bargaining positions and without collusion,

5

and Purchaser is entitled to the protections of Section 363(m) of the Bankruptcy Code.  None of Trustee, the Estate nor Purchaser has engaged in conduct that would cause or permit the APA to be avoided under Section 363(n) of the Bankruptcy Code or any other provision of the Bankruptcy Code or Bankruptcy Rules or any other provision of applicable law.

N.      Purchaser is not an "insider" as that term is defined in section 101(31) of the Bankruptcy Code. No common identity of directors or controlling stockholders exists between Purchaser and the Debtor.

O.      Trustee's decision to (i) enter into the APA, and (ii) perform under the APA, is a reasonable exercise of Trustee's sound business judgment consistent with his fiduciary duties and applicable law.

P.      The Sale is in the best interests of the Debtor, the Estate and creditors. Good and sufficient reasons for approval of the APA, and the Sale have been articulated, and the relief requested in the Motion and granted herein is in the best interest of the Debtor, the Estate, creditors and other parties in interest. Approval of the APA and consummation of the Sale and other transactions contemplated thereby at this time are in the best interests of the Debtor, the Estate, creditors and other parties in interest.

Q.      The consideration provided by Purchaser pursuant to the APA is fair and reasonable and constitutes fair market value. In addition, the consideration provided by Purchaser constitutes reasonably equivalent value or fair consideration under the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, the Bankruptcy Code, and the laws of the United States, the State of California, and any other state, territory, possession thereof or the District of Columbia, as applicable.

R.      Time is of the essence in effectuating the transactions contemplated by the APA and proceeding with the sale of the property without interruption.  Based upon the record of the Sale, and for the reasons stated on the record at the hearing and in the Motion, cause exists to lift the stay to the extent necessary, as contemplated by Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062 and/or 9014, and permit the immediate effectiveness of this Order.

///

6

S.      The transfer of the assets to Purchaser under the APA will constitute a legal, valid, and effective transfer of the assets and will vest Purchaser with all right, title, and interest of the Debtor and the Estate (including Trustee on behalf of the Estate) to the property free and clear of all liens (as defined in Section 101(37) of the Bankruptcy Code, whether consensual, statutory, possessory, judicial or otherwise), claims (as defined in Section 101(5) of the Bankruptcy Code and including, without limitation, successor liability claims), encumbrances or other interests, of any kind or nature whatsoever, whether known or unknown, legal or equitable, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, asserted or unasserted, whether arising prior to or after the Petition Date, and whether imposed by agreement, understanding, law, equity or otherwise, accruing, arising or relating thereto, at any time prior to the date of closing of the APA ("Closing Date"), except as otherwise expressly provided in the APA, or as otherwise provided in this Order (all of such liens, claims, encumbrances and/or interests as to which the property is sold free and clear of under this Order, including, without limitation, those specifically listed in this Paragraph P below, are collectively referred to herein as the "Free and Clear Liens").  Without limiting the foregoing, the sale and transfer of title shall be free and clear of the following:

| Creditor | UCC No. | Status | Filing Date | Lapse Date | Scope | Claim Amount if Known |
|---|---|---|---|---|---|---|
| OHP – LPG, LP AUSTIN, TX | U230005834326 | ACTIVE | 1/25/2023 | 1/25/2028 | All Assets Filing | Proof of Claim No. 44 in the amount of at least $16,938,954.00 |
| C T CORPORATION SYSTEM, AS REPRESENTATIVE - GLENDALE, CA | U230006246724 | ACTIVE | 1/26/2023 | 1/26/2028 | All Assets Filing | |
| FIRST CORPORATE SOLUTIONS, AS REPRESENTATIVE - SACRAMENTO, CA | U230009059730 | ACTIVE | 2/2/2023 | 2/2/2028 | "All accounts of Debtor attached hereto as Exhibit A with all proceeds and all rights associated with such accounts." | |
| PROOFPOSITIVE LLC - SHERIDAN, WY | U230009725118 | ACTIVE | 2/9/2023 | 2/9/2028 | "$1,053,690.00 in Litigation Practice Group and associated Litigation Practice | |

| Creditor | UCC No. | Status | Filing Date | Lapse Date | Scope | Claim Amount if Known |
|---|---|---|---|---|---|---|
| | | | | | Group Affiliate customer accounts receivables files." | |
| MC DVI FUND 2 LLC, MC DVI FUND 2 LLC, DEBT VALIDATION FUND II LLC-GLENVIEW, IL | U230009923531 | ACTIVE | 2/10/2023 | 2/10/2028 | All Assets Filing | |
| VENTURE PARTNERS LLC- SHERIDAN, WY | U230016377733 | ACTIVE | 3/9/2023 | 3/9/2028 | "Executed Accounts Receivables Purchase Agreements in the amount of $15,959,308.55 Debt Enrolled" | |
| CITY CAPITAL NY | U230018278331 | ACTIVE | 3/16/2023 | 3/16/2028 | All Assets Filing | Proof of Claim No. 89 filed in the amount of $2,950,000 |
| MNS FUNDING LLC - BROOKLYN, NY | U210050823723 | ACTIVE | 5/28/2021 | 5/28/2026 | "All accounts receivable, receipts, instruments, contract rights and other rights to receive the payment of money, patents, chattel paper, licenses, leases and general intangibles, whether now owned acquired or arising, and all of the debtor's books and records relating to any of the foregoing." | |
| CT CORPORATION SYSTEM) CORP. | U210050853928 | ACTIVE | 5/28/2021 | 5/28/2026 | All Assets Filing | |
| CORPORATION SERVICE COMPANY, AS REPRESENTATIVE - SPRINGFIELD, IL | U210052792122 | ACTIVE | 6/4/2021 | 6/4/2026 | All Assets Filing | |
| C T CORPORATION SYSTEM, AS REPRESENTATIVE - GLENDALE, CA | U210057670018 | ACTIVE | 6/17/2021 | 6/17/2026 | All Assets Filing | |

8

| Creditor | UCC No. | Status | Filing Date | Lapse Date | Scope | Claim Amount if Known |
|---|---|---|---|---|---|---|
| WORLD GLOBAL FUND LLC - BROOKLYN, NY | U210059750525 | ACTIVE | 6/24/2021 | 6/24/2026 | "All accounts receivable, receipts, instruments, contract rights and other rights to receive the payment of money, patents, chattel paper, licenses, leases and general intangibles, whether now owned acquired or arising, and all of the debtor's books and records relating to any of the foregoing."' | |
| C T CORPORATION SYSTEM, AS REPRESENTATIVE [unknown as to who they represent] | U210062497027 | ACTIVE | 7/6/2021 | 7/6/2026 | All Assets Filing | |
| BMF ADVANCE - BROOKLYN, NY | U210090322021 | ACTIVE | 10/4/2021 | 10/4/2026 | All Assets Filing | |
| DIVERSE CAPITAL | U210106788229 and U210085288536 | ACTIVE | 12/1/2021 | 12/1/2026 | "All accounts receivable, receipts, instruments, contract rights and other rights to receive the payment of money, patents chattel paper, licenses, leases and general intangibles, whether now owned acquired or arising, and all of debtor's books and records relating to any of the foregoing." | Debtor Scheduled at $1,224,810.00 on Schedule D |
| Fundura Capital Group 80 Broad Street, Suite 3303 New York, NY 10004 | | | | | | Debtor Scheduled at $2,100,000.00 on Schedule D |

Each holder of any Free and Clear Lien: (i) has, subject to the terms and conditions of this Order,

consented to the Sale or is deemed to have consented to the Sale, including by failing to object to

the Motion or withdrawing any such objections, pursuant to Section 363(f)(2) of the Bankruptcy Code; (ii) could be compelled in a legal or equitable proceeding to accept money satisfaction of such lien, claim, encumbrance and/or interest; or (iii) otherwise falls within the provisions of Section 363(f) of the Bankruptcy Code, including, without limitation, that such liens, claims, and/or interests is/are in bona fide dispute.  All rights asserted by third parties related to their Liens and/or in the Debtors' receivables, including ownership rights by third parties, shall attach to the net proceeds of the Sale received by the Estate, with the same validity, force and effect which existed prior to the Closing of the Sale, subject to any rights, claims, objections, arguments and defenses Trustee, the Estate, the Debtor or any other party in interest, as applicable, may possess with respect thereto.

T.      The Bankruptcy Court has the inherent equitable power, under section 105(a) of the Bankruptcy Code, to order the reformation of the legal services agreements by and between the Debtor and Consumers to be consistent with applicable nonbankruptcy law.

U.      To the extent necessary, the requirements of Bankruptcy Code Section 365 have been satisfied, including, without limitation, Sections 365(b)(l) and 365(f)(2), in connection with the assumption and assignment, as applicable, of the contracts and leases and other agreements assumed as set forth in the APA.  The assumption and assignment of the executory contracts and unexpired leases and other agreements of the Debtor and/or the Estate, and the procedures relating thereto, as provided in the Sale and APA, are permissible and appropriate.  The terms of this Order and the APA, governing the procedures for assumption and assignment of executory contracts and unexpired leases, including the consumer contracts (as detailed in Paragraphs 14-22 below), satisfy the requirements of the Bankruptcy Code.

V.      The procedures to assume and assign the reformed LSAs (defined below) as set forth herein, and as may be further ordered by the Bankruptcy Court with recommendations from the Monitor (defined below), is appropriate and consistent with applicable law.

W.      APA Section 1(c), related to the executory contracts, provides that Purchaser may revise the schedule of Assumed Contracts until 90-days have elapsed from the Notice of Assumption and Assignment and Opt Out Notice. APA Section 2(a) provides that, within the first 90-days after Notice of Assumption and Assignment and Opt Out Notice, that if more than 5% of the Active

Executory Contracts opt out or are excluded, then Purchaser is entitled to a $400 per client reduction in the quarterly Fee due under the Agreement. The exclusion of contracts under 1(c) in the first 90-days affects the purchase price due to Seller and is fair and reasonable.

X.    The specific duties and mechanisms for support of a Monitor will be set forth in a separate Order of Appointment that shall be entered by the Bankruptcy Court.  The findings made by the Bankruptcy Court at the Hearing and as set forth in the Order Approving Motion of Trustee Richard A. Marshack for Entry of an Order (A) Approving Sale, Subject to Overbid, of Assets Free and Clear of all Liens, Claims, Encumbrances, and Interests Pursuant to 11 U.S.C. §363(b) and (B) Approving Assumption and Assignment of Certain Executory Contracts and Unexpired Lease and Other Agreements entered on July 22, 2023 [Dkt. No. 320] ("Findings") are incorporated here by this reference. Without limiting the foregoing, in the Findings the Court discussed a deposition of Morning Law's and Back-Up Bidders' principal.  See Docket No 320 at page 19, lines 8-15, Such depositions were held and concluded on July 26, 2023.

**NOW, THEREFORE, THE BANKRUPTCY COURT HEREBY ORDERS, ADJUDGES AND DECREES AS FOLLOWS:**

**Approval of the APA and Sale**

1.    The Motion and the relief requested therein is GRANTED and APPROVED, as set forth here and on the record during the Hearing, and in the Findings, which are incorporated here in its entirety, and the Sale and other transactions as contemplated thereby is granted and approved.

2.    All objections to the Motion and Sale, or the relief requested therein that have not been withdrawn, waived, or settled, and all reservations of rights included in such objections, are overruled on the merits.

3.    This Order is deemed to be the Sale Order as provided in the APA.

4.    The APA and all other ancillary documents, and all of the terms and conditions thereof, are authorized and approved pursuant to sections 105, 363, and 365 of the Bankruptcy Code and Rules 2002, 4001, 6004, 6006, and 9014 of the Bankruptcy Rules.

5.    Pursuant to Section 363(b) of the Bankruptcy Code, Trustee and the Estate are authorized, directed, and empowered to take any and all actions necessary or appropriate to:

     a.     Consummate, as set forth in the APA, the sale of executory client consumer contracts, goodwill, and proprietary DMS, among other assets to Purchaser.

     b.     Close the sale as contemplated in the APA;

     c.     Execute and deliver the assumption and assignment of the Assumed Contracts which, for purposes of this Order, shall mean those unexpired leases and executory contracts of the Debtors designated by Purchaser by delivering a Schedule of Assumed Contracts, as provided for in the APA. Further, Purchaser shall provide a written schedule of Excluded Executory Contracts, before the 90th day after entry of the Notice of Assumption and Assignment and Opt Out Notice, as provided for in the APA. Purchaser will pay any prepetition cure amounts associated with the Assumed Contracts. All other contracts are rejected;

     d.     Morning Law shall comply with the Notice to Consumer procedures set and such Consumer Protections, as defined in Section 12(m) of the APA, and as may be modified by the Bankruptcy Court, including consent in accordance with California Model Rule 1.17(b)(1) and remedial measures, including the future performance requirements, as detailed in Section 12(j) of the APA.

     e.     Execute and deliver, perform under, consummate, implement, and close fully the proposed sale transaction contemplated in the APA, together with all additional instruments and documents that may be reasonably necessary or mutually desirable to implement the APA and the sale including, without limitation, any other ancillary documents, or as may be reasonably necessary or appropriate to the performance of the obligations as contemplated by the APA and such other ancillary documents.  Morning Law, or its agents, agree to retain Eeyah Tan as Head of Operations, and agree to provide the Trustee with electronic access and all passwords related to the property acquired by Morning Law under the APA and related data bases and accounts, until such time as the APA is paid in full.

     f.     Pursuant to the APA, Seller shall retain a purchase money security interest in the Assumed Contracts sold to Buyer, and a first-in-priority blanket lien in and against all Property (subordinate only to a lien, if any, created in securing financing of the Second Deposit) sold for so long as monetary and non-monetary obligations to the Estate remain outstanding. As a condition of

Closing, Buyer shall execute any documents requested by Seller to perfect the subject security interest on all assets including Fees, accounts receivable, and inventory as further detailed in the APA. To the extent such documents are not presented prior to Closing, Buyer agrees to execute and deliver any further documentation necessary to perfect and maintain perfection of its security interests within five business days after presentation.

6.    Trustee's Sale is free and clear of all claims, liens and interests, with the exception of the mandatory implementation of the Consumer Protections. Purchaser and any affiliates and their respective predecessors, successors, assigns, members, partners, principals, directors, officers, and shareholders (or equivalent) shall have no obligations with respect to any liabilities of the Debtor other than as set forth in the APA.

7.    Any and all valid and perfected Free and Clear Liens, other than as set forth in the APA, shall attach to the proceeds from the Sale, upon receipt of such proceeds by Trustee in the order of priority, and with the same validity, force and effect which existed prior to the Closing of the Sale, subject to any rights, claims, objections, arguments, and defenses Trustee, the Estate, the Debtor or any other party in interest, as applicable, may possess with respect thereto.

8.    The terms and provisions of this Order shall be binding in all respects upon Purchaser, the Debtor, Trustee, and any subsequent trustees appointed pursuant to Chapter 11 or Chapter 7 of the Bankruptcy Code, the Estate, all creditors and interest holders of the Debtor and the Estate, and all interested parties, and their respective successors and assigns including, but not limited to, any creditor asserting a lien in the Property. The Debtor and its respective agents and representatives shall cooperate with respect to consummation of the sale and not take any action to interfere with the implementation or administration of the Sale.

9.    The APA was negotiated and entered into in good faith, in an arm's-length transaction, and Purchaser is acting in good faith within the meaning of 11 U.S.C. § 363(m) and without collusion or fraud. The terms and conditions of the Sale, including the total consideration to be realized by the Estate pursuant to the APA is fair and reasonable, and the Sale is in the best interest of the Estate and its creditors. Purchaser is not an "insider" as that term is defined in section 101(31) of the Bankruptcy Code.

13

10.    Adequate notice of the Sale with reasonable opportunity to object was given including, without limitation, the APA, the Motion, the Notice of Sale, the hearing, and the procedure for assumption and assignment of the Assumed Contracts. The purchase and sale procedures are approved based on the exigent circumstances of the Estate related to the consumer contracts. No other or further notice of the Sale Motion, APA, the assumption and assignment of the Assumed Contracts, is necessary or shall be required, except as expressly provided otherwise.

**Reformation of Prepetition LSAs**

11.    All prepetition legal services agreements entered into by and between the Debtor and a Consumer (defined below) that are executory as of the date of the entry of this Order shall be and are reformed to comply with applicable nonbankruptcy law ("Reformed LSAs") and shall remain binding and in full force and effect with respect to all provisions that are consistent with applicable law. As soon as practicable, Trustee shall file a notice of Reformed LSA setting forth the Reformed LSA in form and substance acceptable to the Monitor and the Committee. Such Reformed LSA shall constitute the terms of the legal services agreement by and between each Consumer and the Estate, subject to the assumption, assignment, and transfer procedures set forth herein.

**Appointment of the Monitor**

12.    Pursuant to the APA, the Bankruptcy Court shall appoint a monitor in this case ("Monitor") to strictly monitor Purchaser's compliance with generally understood ethical standards and certain consumer protection obligations. The specific duties and mechanisms for support of a Monitor will be as set forth in a separate Order of Appointment consistent with the APA. Such proposed form of Order of Appointment will be in substance and form reasonably acceptable to Trustee and Committee. For the avoidance of doubt and subject to a more definitive order, the proposed terms of the Monitor are based upon Judge Drain's appointment of a compliance Monitor as set forth in the Purdue Pharma L.P., et al., v, Commonwealth of Massachusetts (In re Purdue Pharma, L.P.), S.D.N.Y. Case No. 19-23649 (RDD) Adv. Pro. No. 19-08289 (Bankr. S.D.N.Y. 2019), and appointment in this case is pursuant to the Bankruptcy Court's power under 11 U.S.C. § 105(a) which has been consented to by Purchaser.

///

14

13.     The Bankruptcy Court approves the sections of the APA related to the Monitor, subject to the Order of Appointment.

### Procedures for the Transfer of Potentially Assumed Agreements
### and Legal Services Agreements

14.     Within 7 days after entry of this Order, Trustee shall file and serve a notice ("Cure Notice"), substantially in the form attached hereto as Exhibit "2," on all counterparties to executory contracts and unexpired leases that may potentially be assumed by Trustee and assigned to Purchaser ("Potentially Assumed Agreements").   The proposed form of Cure Notice is approved. The Cure Notice shall include an exhibit listing the counterparty to the Potentially Assumed Agreement, a general description of the Potentially Assumed Agreement, and any cure amount (if any) the Debtor's books and records indicate may be outstanding and payable to the counterparty to a Potentially Assumed Agreement to cure any defaults that exist under such Potentially Assumed Agreement if it is ultimately assumed by Trustee ("Cure Amounts").

15.     The inclusion of a contract, lease, or other agreement on the Cure Notice shall not constitute or be deemed a determination or admission by Trustee or the Debtor's estate or any other party in interest that such contract, lease, or other agreement is, in fact, an executory contract or unexpired lease within the meaning of the Bankruptcy Code, and any and all rights with respect thereto shall be reserved.

16.     Trustee is expressly permitted to serve the Cure Notice on consumer counterparties to legal services agreements with the Debtor through electronic means, including by providing notice utilizing the Debtor's proprietary software and service by such means shall be deemed to be appropriate and adequate under the circumstances.

17.     If any counterparty to a Potentially Assumed Agreement wishes to file an objection to the Cure Amount or any other objection to Trustee's assumption and assignment of a Potentially Assumed Agreement including, without limitation, an objection based on adequate assurance of future performance by Purchaser (collectively, an "Assumption Objection"), such counterparty must file the Assumption Objection with the Bankruptcy Court and serve it so as to be actually received by the Assumption Notice Parties (defined below) by no later than: (i) August 31, 2023 **at 5:00 p.m.**

**(prevailing Pacific Time)**, (ii) such later date otherwise specified in the Cure Notice, or (iii) solely with respect to those counterparties to Potentially Assumed Agreements who are not initially served with a Cure Notice, seven (7) days after service by overnight mail of such Cure Notice ("Assumption Objection Deadline").

18.    Any Assumption Objection shall be served on the following parties ("Assumption Notice Parties") not later than the applicable Assumption Objection Deadline:  (i) general counsel to Trustee: Marshack Hays LLP, 870 Roosevelt, Irvine, California 92620 (Attn: D. Edward Hays (ehays@marshackhays.com)); (ii) special counsel to Trustee: Dinsmore & Shohl LLP, 655 West Broadway, Suite 800, San Diego, California 92101 (Attn: Christopher B. Ghio (christopher.ghio@dinsmore.com)); (iii) counsel the Official Committee of Unsecured Creditors: Fox Rothschild LLP, 10250 Constellation Boulevard, Suite 900, Los Angeles, California 90067 (Attn: Keith C. Owens (kowens@foxrothschild.com) & Nicholas A. Koffroth (nkoffroth@foxrothschild.com); (iv) counsel to Purchaser: Joshua Armstrong, Morning Law Group, P.C., 2625 Townsgate Road, Suite 330, Westlake Village, CA 91361 (jarmstrong@invictusadvisors.com) and Danning, Gill, Israel & Krasnoff, LLP, 1901 Avenue of the Stars, Suite 450, Los Angeles CA 90067-6006, Attn.: Zev Shechtman, Email: zs@DanningGill.com; (v) the proposed Monitor Nancy Rapoport, William S. Boyd School of Law, University of Nevada, Las Vegas, 4505 S. Maryland Parkway, Box 451003, Las Vegas, Nevada 89154-1003 (nancy.rapoport@unlv.edu); and (vi) the Office of the United States Trustee ("U.S. Trustee"): 411 West Fourth Street, Suite 7160, Santa Ana, CA 92701 (Attn: Kenneth M. Misken (Kenneth.M.Misken@usdoj.gov)).

19.    The Bankruptcy Court shall hold a hearing on September 14, 2023 **at 11:00 a.m. (prevailing Pacific Time) at 411 West Fourth Street, Santa Ana, CA 92701, in Courtroom 5C or via ZoomGov (if permitted by the Court)**, ("Assumption Hearing") on any Objections and make its determinations concerning, among other things, §§ 365(b) and (f), including the adequacy of any proposed Cure Amount and adequate assurance of future performance under the Potentially Assumed Agreements.  Parties wishing to make an appearance by Zoom for Government, a free service that provides audioconference capabilities, should review the Bankruptcy Court's tentative

rulings page, which can be accessed through https://www.cacb.uscourts.gov/judges/honorable-scott-c-clarkson. Parties should also consult the NOTICE OF VIDEO AND TELEPHONIC APPEARANCE PROCEDURES FOR JUDGE SCOTT CLARKSON'S CASES for specific procedures and further information. The Bankruptcy Court shall enter an order or orders following the Assumption Hearing authorizing Trustee to assume Potentially Assumed Agreements and assign such Potentially Assumed Agreements to Purchaser ("Assumption Order").

20.    Subject to the procedures for assumption and assignment of Potentially Assumed Agreements pursuant to § 365, the procedure to transfer legal services agreements to Purchaser, consistent will applicable law, is as follows:

i.    Within seven (7) days of the closing of the Sale authorized by this Order, Purchaser to email the 90-day notice to consumers, pursuant to California Model Rule 1.17(b), substantially in the form attached hereto as Exhibit "3," which is hereby approved ("Consumer Notice"). Purchaser is expressly permitted to serve the Consumer Notice on consumer counterparties to legal services agreements with the Debtor ("Consumers") through electronic means, including by providing notice utilizing the Debtor's proprietary software and service by such means shall be deemed to be appropriate and adequate under the circumstances. The Trustee shall assist Purchaser as necessary to facilitate such notice.

ii.    As set forth more fully therein, the Consumer Notice shall inform Consumers of their rights as required under California Model Rule 1.17(b). The Consumer Notice may also inform Consumers of: (i) the fact that their prepetition legal services agreement with the Debtor has been reformed, pursuant to this Order; (ii) their right to "opt-in" to a Purchaser LSA (defined below) with Purchaser; and (iii) the impact of (a) "opting-out" of their Reformed LSA, under California Model Rule 1.17(b), (b) "opting-in" to a Purchaser LSA, or (c) taking no action.

iii.    Subject to the oversight of the Monitor, Purchaser may offer Consumers the option to enter into a Legal Services Agreement ("Purchaser LSA") in substantially the form attached hereto as Exhibit "4" (but subject to potential further modifications based upon the recommendations of the Monitor or order of this Bankruptcy Court), which may be provided to Consumers contemporaneously with the Consumer Notice, and which is hereby approved.

iv.      If the consumer client takes no action on the Consumer Notice within ninety (90) days from the date of service ("Consumer Notice Expiration Date"), the Consumer will be deemed to have consented to the assumption and assignment of its Reformed LSA to Purchaser subject to the assumption and assignment provisions set forth herein.

v.      Nothing contained in this Order shall permit the transfer to Purchaser Consumer of personally identifiable information, except for the following: the Consumer's name and contact information (emails, phone number, address) ("Consumer Information"). Notwithstanding anything in the APA to the contrary, Trustee shall not transfer Consumer Information to Purchaser until the earlier of the following: (a) the Consumer executes a Purchaser LSA; and (b) the occurrence of the Consumer Notice Expiration Date, with respect to Reformed LSAs for which the Consumer did not "opt-out" under California Model Rule 1.17(b), and entry of an Assumption Order with respect to such Reformed LSA.   Notwithstanding the foregoing, Purchaser may have access to the Consumer Information subject to the Interim Association Agreement to service the consumer legal file and provide services during the Gap Period (defined below) as set forth more fully herein.

21.    As set forth in the APA, Purchaser may revise the schedule of Potentially Assumed Agreements in its exercise of its' legal judgment if, on Purchaser's review, any of the Active Executory Contracts have been mishandled to the point where a cure is not possible prior to the Consumer Notice Expiration Date.   Purchaser's right to exclude Reformed LSAs from the Potentially Assumed Agreement list may reduce the purchase price due to the Estate; however, such right to exclude is fair and reasonable

22.    At Closing, Trustee's possession of the premises is quitclaimed and transferred to Purchaser without further court order, and without representation and warranty.

**Gap Period Operations and Interim Association Agreement**

23.    Trustee and Purchaser shall enter into an association agreement ("Interim Association Agreement") between the Closing Date and the first date by which the following have occurred: (a) the Consumer Notice Expiration Date; and (b) entry of the Assumption Order ("Gap Period"). The Interim Association Agreement shall be in form and substance reasonably acceptable

to Trustee, Purchaser, and the Committee, and shall provide for Purchaser's management, operation, funding, and sole and exclusive liability for satisfying the estate's obligations under the Reformed LSAs during the Gap Period with such indemnification provisions in form and substance reasonably acceptable to Trustee and Committee.  Purchaser's operations with respect to the Reformed LSAs during the Gap Period shall be subject to the oversight of the Monitor. Upon the conclusion of the Gap Period, Trustee and Committee, on the one hand, and Purchaser, on the other hand, shall reconcile fees collected and held by Purchaser relative to the Reformed LSAs that were either assumed and assigned, terminated, or rejected. To ensure the absence of doubt, until the moment of Closing, Purchaser assumes the responsibilities for the consumer files and account until opt-out or rejection, and shall indemnify, defend and hold Trustee, the Estate and Estate professionals harmless from any and all claims related to Purchaser's operation of the Debtor's business and servicing of the Reformed LSAs during or after the Gap Period.

**Injunctive Relief**

24.     Pursuant to 11 U.S.C. § 105(a) and other applicable authorities, the Court hereby enjoins any and all claims (as defined in Section 101(5) of the Bankruptcy Code and including, without limitation, successor liability claims) against Purchaser arising from: (A) any and all actions or omissions of the Debtor, the Trustee, the Estate, or anyone acting or purporting to act for them, or   any affiliates thereof prior to the Closing Date; and (B) any and all actions omissions or any other party relating to the Assumed Contracts arising prior to the Closing Date.

**Miscellaneous Provisions**

25.     A certified copy of this Order may be filed with the appropriate clerk and/or recorded with the county recorder to evidence conclusively the release or cancellation of the claims, liens, and interests as set forth in this Order.

26.     This Order may be presented to and shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, escrow agents, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, federal, state and local governmental agencies or departments, secretaries of state, federal and local officials, and all other persons and entities who may be required by

operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any property; and directs each of the foregoing persons and entities to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the APA.

27.    The failure to specifically include any particular provision of the APA in this Order does not diminish or impair the effectiveness of such provision, it being the intent of the Bankruptcy Court that the APA is authorized and approved in its entirety.

28.    To the extent that this Order is inconsistent with any prior order or pleading, the terms of this Order shall govern.  To the extent the terms of this Order are inconsistent with the terms of the APA, the terms of this Order shall govern.

29.    This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).  The fourteen (14) day stay period set forth in Federal Rule of Bankruptcy Procedure 6004(h) is waived; and notwithstanding Federal Rule of Bankruptcy Procedure 6004(h), this Order shall be immediately effective and enforceable upon its entry and there shall be no stay of this Order. In the absence of any person or entity obtaining a stay pending appeal of this Order, Trustee, the Estate and Purchaser are free to close the sale under the APA at any time, subject to the terms of the APA.

30.    The Bankruptcy Court has jurisdiction over the Sale and APA pursuant to 28 U.S.C §§ 157 and 1334 and may enter a final order on the Sale consistent with Article III of the United States Constitution. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue in this district is proper under 28 U.S.C. § 1408 and 1409. The Bankruptcy Court retains jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and the APA, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which Trustee or the Estate are a party or which will be assigned by the Estate to Purchaser, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale.  The Bankruptcy Court hereby also retains jurisdiction over any matter or dispute arising from or relating to the implementation of this Order.  Without

limiting the foregoing, the Bankruptcy Court retains jurisdiction, pursuant to its statutory powers under 28 U.S.C. § 157(b)(2), to, among other things, interpret, implement, and enforce the terms and provisions of this Order, the APA, all amendments thereto and any waivers and consents thereunder and any documents executed in connection therewith to which Trustee is a party, including, but not limited to, retaining jurisdiction to: (a) compel delivery of the assets to Purchaser; (b) interpret, implement and enforce the provisions of this Order and any related order; (c) determine any challenge to the sale and/or the conduct of the sale hearing; (d) protect Purchaser against any liens, claims, encumbrances and interests in the assets as to which is sold free and clear of under this Order;(e) authorize any ambiguous retention or disbursements subject to the Escrow Holder's Account; (f) compel compliance with the Consumer Protections, as further detailed in the APA; and (g) any determine disputes related to the APA or this Order.

31.    Purchaser shall (1) be subject to the jurisdiction of this Court, which includes all civil contempt liability arising from violation of this Order or the APA or federal or state (arising from any state) consumer protection statutes and regulations, as well as any and all issues related to the Monitor and/or monitoring of the Purchaser, as addressed and consented to in Court and in accordance with the Order, the APA, any plan of reorganization and 28 U.S.C. Section 1334(b); (2) not sell or transfer any assets, whether sold outright or by licensee, lease, or contract, or otherwise, sold under the APA or this Order without further order of the Court, and (3) comply with all applicable federal and state(s) statutory and legal requirements including the debt resolution, privacy, data breach notification, data disposal, and cybersecurity laws and laws prohibiting unfair, deceptive or abusive practices 'UDAP", "do-not-track", "do-not-call" and "no spam" laws, with respect to all future operations of the business (and not just the consumer contracts transferred) until the last remaining client/customer/consumer contract being transferred in the sale has been concluded.

32.    The findings of fact and conclusions of law set forth herein and at Sale hearing shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, as made applicable here by Bankruptcy Rule 9014, and the findings and conclusions made at the Sale hearing ///

1    are incorporated herein by reference. To the extent any finding of fact shall be determined to be a

2    conclusion of law, it shall be so deemed, and vice versa.

3        33.    The Backup Bid shall remain open, irrevocable and binding on the Backup Bidder

4    until the closing of the Sale to Morning Law.  If Morning Law fails to close for any reason and

5    Trustee notifies the Backup Bidder that Trustee has elected to sell the assets to the Backup Bidder,

6    then the Backup Bidder shall close the Sale with no contingencies whatsoever within two (2)

7    business days of receipt of written notice from Trustee of such election (subject to extension in

8    Trustee's sole discretion).  In the event Trustee determines to close the Sale with the Backup Bidder,

9    all relevant findings of fact, conclusions of law and other provisions of this Order shall be deemed

10    to apply to the Sale to the Backup Bidder as the replaced "Purchaser" without further order of the

11    Bankruptcy Court; provided, Trustee or the Backup Bidder may in their discretion seek a

12    supplemental order or an amendment to this Order with respect to the foregoing. Trustee and Backup

13    Bidder may modify the final form of the APA to conform to its purchase (as approved as the Backup

14    Bid) to effectuate the Sale, if applicable.

15        34.    In the event any given qualified bidder is not the successful bidder, nor a back-up

16    bidder, their deposit, shall be returned as soon as possible after the conclusion of the hearing, at the

17    discretion of Trustee.

18    ///

19    ///

20    ///

21    ///

22    ///

23    ///

24    ///

25    ///

26    ///

27    ///

28    ///

35.     Upon the Closing of the Sale to Morning Law, Backup Bidder's deposit shall be returned as soon as possible, at the discretion of Trustee.

36.     To the extent exhibits to, or other documents contemplated in, this Sale Order are not complete at the time of entry of this Sale Order, the Trustee and Purchaser shall submit amended documents, and may lodge an amended order, or supplements thereto, as necessary and appropriate to consummate the transaction.

# # #

Date: August 2, 2023

Scott C. Clarkson
United States Bankruptcy Judge

23

**EXHIBIT "1"**

**AGREEMENT OF PURCHASE AND SALE**

**AND
JOINT ESCROW INSTRUCTIONS**

# AGREEMENT OF PURCHASE AND SALE

## AND

## JOINT ESCROW INSTRUCTIONS

[TRUSTEE ACCOUNT]                    Escrow No.:
                                     Escrow Officer:
                                     Title Order No.:
("Escrow Holder")                    Title Officer:

     THIS AGREEMENT OF PURCHASE AND SALE AND JOINT ESCROW INSTRUCTIONS ("Agreement"), dated as of August __ 2023 ("Effective Date"), is made by and between, Richard A. Marshack, solely in his capacity as the duly appointed and acting Chapter 11 Trustee ("Trustee") in the Bankruptcy Case (as defined below) of Debtor (as defined below) ("Seller"), and Morning Law Group, P.C., as Buyer ("Buyer" with any designation requiring mutual written agreement and Bankruptcy Court approval), with reference to the following:

## RECITALS

**A.**    On March 20, 2023 ("Petition Date"), Litigation Practice Group, PC, a California professional corporation ("Debtor"), filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code in the United States Bankruptcy Court for the Central District of California, Case No. 8:23-bk-10571-SC ("Bankruptcy Case").

**B.**    On May 4, 2023, an Order Directing the United States Trustee to Appoint Chapter 11 Trustee was entered whereby the Court, as further set forth therein, approved the appointment of a Chapter 11 trustee in the Bankruptcy Case. On or about May 8, 2023, the Trustee filed the Application for Order Approving Appointment of Chapter 11 Trustee and, on the same day, the Bankruptcy Court approved the appointment of the Trustee as the Chapter 11 Trustee in the Bankruptcy Case.

**C.**    One June 23, 2023, the Office of the United States Trustee appointed [Docket No. 134] an Official Committee of Unsecured Creditors (the "Committee") in the Bankruptcy Case. On June 29, 2023, the Office of the United States Trustee amended [Docket No. 157] the membership of the Committee.

**D.**    The bankruptcy estate ("Estate") of Debtor is the owner of certain personal property leases, personal property, receivables, prepayments, legal service agreements, intellectual property, permits, licenses, books and files, and various other assets and rights (as defined in Section 1(a), the "Property").

**E.**    Seller desires to sell all of the Estate's right, title, and interest in and to the Property, whatever that may be, AS IS, WHERE-IS, WITHOUT REPRESENTATIONS OR WARRANTY,

and in its PRESENT condition to Buyer, and Buyer desires to purchase all of the Estate's right, title, and interest in and to the Property upon the terms and subject to the conditions hereinafter set forth and in the Sale Order (as defined herein).

**F.**     Seller has filed with the Bankruptcy Court, the Expedited Motion of Trustee Richard A. Marshack for Entry of (I) an Order (A) Approving Sale of Assets Free and Clear of all Liens, Claims, Encumbrances and Interests Pursuant to 11 U.S.C. 363(b) and (II) Approving Assumption and Assignment of Certain Executory Contracts and Unexpired Leases and Other Agreements; Declaration of Richard A. Marshack in Support Thereof ("Sale Motion"). This Agreement is subject to entry by the Bankruptcy Court of an order ("Sale Order") approving the sale to the Buyer A true and accurate copy of the proposed Sale Order is attached as Exhibit "A." The Sale Order has not yet been entered by the Bankruptcy Court.

## AGREEMENTS

**NOW THEREFORE,** in consideration of the mutual covenants and agreements herein contained, including the above Recitals, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Seller and Buyer agree, subject to the Sale Order becoming final, that the terms and conditions of this Agreement and the instructions to Escrow Holder with regard to the escrow to be created as set forth below ("Escrow") are as follows:

**1.**     **Purchase and Sale.** Subject to the entry of the Sale Order, Seller agrees to sell, transfer, and convey to Buyer, and Buyer agrees to purchase from Seller, all of Seller's and the Estate's right, title, and interest in and to the Property, whatever that may be, AS IS, WHERE-IS, WITHOUT REPRESENTATION OR WARRANTY, and in its PRESENT condition. **Except as otherwise specifically set forth herein, Buyer is not assuming any of Seller's or Debtor's liabilities.**

**(a)**     The Property shall consist of all of Seller's and the Estate's right, title, and interest in and to the following property AS IS, WHERE IS, WITHOUT REPRESENTATION OR WARRANTY, and in its PRESENT condition (collectively, "Property"). Seller makes absolutely no representations or warranties of any kind whatsoever concerning the Property, except for the representations expressly set forth in this Agreement. Buyer understands the condition of the Property and is not relying on any representation from Seller or any other person or entity except for the representations, if any, expressly set forth in this Agreement:

**(1)**     The Estate's interest in personal property leases only as identified on Exhibit "A-1" ("Leases");

**(2)**     The Estate's interest in equipment and furniture only as identified on Exhibit "A-2" ("Personal Property");

**(3)**     The Estate's interest in certain consumer client-related accounts receivable and notes receivable only as identified on Exhibit "A-3" (the "Receivables"). These generally consist of approximately 22,000 active paying files. These will be defined as "Active Executory Contracts" in this Agreement. For avoidance of doubt, the Receivables are only those that come due, or are paid, on or after the Closing date not otherwise paid by clients prior to Closing as of 5:00 p.m. PT

on the Closing date that arise from, relate to, or are generated as a result of, the assumption, assignment and/or reformation of the consumer client LSAs (defined below) and the underlying obligation to deliver services including legal services and for which such services were actually delivered, by or for Debtor and any alleged transferee of such files including, but not limited to: Phoenix Law, PC, and Oakstone Law Group, PC. The sale of such Receivables shall comply with all applicable laws including the notice to client requirements applicable to the sale of a law firm, as further described below. Failure to transfer any such Receivables because of the refusal of one or more clients to consent to the transfer, assumption, assignment and/or reformation of any LSAs shall not represent a condition precedent to Buyer's performance of its obligations, or otherwise permit Buyer to terminate this Agreement;

(4)     The Estate's interest in prepaid expenses, deposits, and advances only as identified on Exhibit "A-4" ("Prepayments"). The Prepayments specifically do not include any funds received by the Debtor or Seller prior to the Closing Date from any source including but not limited to ACH processing of consumer client accounts pursuant to a legal services agreement entered into by a consumer client and the Debtor ("LSA" and collectively, the LSAs");

(5)     The Estate's interest in the LSAs only as identified on Exhibit "A-5" subject to the consumer clients' right to opt out of the assumption, assignment and transfer of their respective LSAs to Buyer by serving a timely Opt-Out Notice as set forth herein and in the Sale Order.  The inability to transfer any Property or LSA to Buyer because of the refusal of one or more clients to:  (i) consent to the transfer of their file to Buyer by serving an Opt-Out Notice; or (ii) sign an amended LSA with Buyer in the form attached as Exhibit "A-5" ("Modified LSA") shall not represent a condition precedent to Buyer's performance of its obligations, or otherwise permit Buyer to terminate this Agreement;

(6)     The Estate's interest in the intellectual property owned including, but not limited to, patents, copyrights, trademarks, trade secrets, telephone numbers, data, and the server on which such intellectual property is stored and maintained, and any and all logins and related passwords ("Intellectual Property"), including, without limitation, Intellectual Property as identified on Exhibit "A-6." Buyer agrees to provide Seller and his agents with any data, documents, or electronic records or files on purchased computers and equipment within two business days after request, which request shall be made via email to Buyer and Buyer's attorneys. This shall include logins and passwords for e-mail and other outside accounts used by Seller which shall be provided to Buyer by the Closing Date, or as soon thereafter as available to the Seller.  An agreement as to what constitutes material covered by this Section 1(a)(6) is a material term of this Agreement and is subject to an express contingency removal;

(7)     The Estate's interest in the pending applications, authorizations, and licenses relating to the Property including, but not limited to the agreements in connection with administrative, promotion, advertising, and marketing services related to destination management services provided as a marketing cooperative (inasmuch as same are terminable in the event of a sale of the assets to a "competitor" these do not appear to have significant value) only as identified on Exhibit "A-7" (collectively, the "Assumed Permits"). Seller's obligation to transfer any Assumed Permits is to the extent assignable or transferable in accordance with the terms and conditions of such permits and/or pending applications therefore or applicable law;

**(8)**    The Estate's interest in debtor's proprietary CRM database, Luna, to the extent such transfer does not violate any laws, copyrights, licenses, and/or trademarks, to which Seller makes no representations or warranties and all books, files, documents, and records, electronic or otherwise, including without limitation information stored on CRM databases Debt Pay Pro and Luna ("CRM Databases"), relating to the Property sold pursuant to this Agreement (provided, however, Buyer will provide Seller with a login and password and other reasonable access to such documents and records during the two-year period following Closing) (collectively, the "Books and Records"), only as identified on Exhibit "A-8;"

**(9)**    The Estate's interest in the assets, properties, and rights identified in due diligence and only as identified on Exhibit "A-9" ("Later Identified Assets"); and,

**(10)**    The Estate's interest in those executory contracts and unexpired leases and other related agreements of Debtor and/or the Estate (collectively, "Executory Contracts") only as identified on Exhibit "A-10" ("Schedule of Assumed Contracts"), as such may be amended from time to time, all subject to Section 1(c) below, and with a specific designation of such active executory contracts ("Active Executory Contracts") and inactive executory contracts ("Inactive Executory Contracts" and collectively with the Active Executory Contracts, "Assumed Contracts") to the extent assignable or transferable in accordance with the terms and conditions of such executory contracts and unexpired leases and other related agreements or applicable law; provided, however, that any Assumed Contracts that contain provisions that violate applicable federal or state law including, without limitation, the applicable rules of professional conduct governing the practice of law, and to the extent applicable, if ever, the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), the Telemarketing Sales Rule, 16 C.F.R. Part 310 (the "TSR"), and the Credit Repair Organizations Act, 15 U.S.C. § 1679 (the "CROA"), will be reformed by the Bankruptcy Court to comply with appliable law. To the extent the Schedule of Assumed Contracts conflicts with the aforementioned final schedules, the Schedule of Assumed Contracts shall control. Seller makes no representations or warranties as any of the Assumed Contracts which will be assigned as-is, where-is, and without any representations or warranties. Buyer acknowledges and represents that Buyer, by and through its agents and representatives, reviewed and/or had access to documents and information, including but not limited to the Executory Contracts prior to executing this Agreement. From and after entry of the Sale Order, Buyer shall service and promptly perform all Assumed Contracts in accordance with the Interim Association Agreement (as defined in the Sale Order) until such time as a consumer client serves an Opt-Out Notice, a consumer client executed a Modified LSA, or Buyer removes an LSA from the Schedule of Assumed Contracts.  Buyer shall perform all services to consumer clients at no cost to the Estate in compliance with applicable law, and shall indemnify, defend and hold the Trustee, the Debtor's Estate, and all professionals and agents employed by the Trustee or the bankruptcy estate from any claims that arise from Buyer's servicing of such LSAs;

**(11)**    All software licenses and access are included in the sale and will be immediately provided to Buyer on or before the Closing Date;

**(12)**    On or before the Closing Date, Seller shall coordinate with Buyer to turn over access to, custody and control of the ACH payment processing portal(s) utilized by Seller including, but not limited to, FIS/Worldpay, subject to the Interim Association Agreement and Sale Order.

**(13)** All documents and corporate records necessary, appropriate, or otherwise supporting the other Property acquired by Buyer.

**(b)** For the avoidance of doubt, the following assets, properties, or rights of Debtor, Seller, and/or the Estate, whether or not relating to the Property, shall be expressly excluded from the Property (collectively, "Excluded Assets"):

**(1)** All of Seller's and the Estate's cash on hand and/or in financial institutions (other than deposits included in Section 1(a)(4) above), deposit accounts, cash equivalents, surety bonds (or related deposits), marketable securities, bonds, and short-term investments, but excluding all cash proceeds from any accounts receivable paid by a client through an ACH transfer or otherwise after 5:00 p.m. PT on the Closing Date;

**(2)** All rights relating to the overpayment or rebates of taxes paid, credits, or tax refunds, only to the extent they relate to tax periods through the Closing date;

**(3)** All claims for insurance proceeds and any and all rights to and under any insurance policies in place prior to the Closing, without prejudice to Buyer's right to request from the Estate reimbursement from insurance proceeds for claims against Buyer;

**(4)** All tax records and information, and all corporate books and records, board minutes, organizational documents including financial information not already disclosed; (provided, however, Seller shall provide Buyer reasonable access to such documents and records during the 2-year period following Closing);

**(5)** All rights, suits, claims, choses in action, causes of action, defenses, rights of setoff, judgments, damages, rights to payment, litigation rights of any kind or nature whatsoever (whether arising in contract, tort or otherwise), or any equitable remedy for breach of performance if such breach gives rise to a right to payment ("Claims") (including, without limitation, Seller's right to prosecute avoidance actions under Chapter 5 of Title 11 of the United States Code) or any interest in any of the foregoing, except to the extent that Buyer may require such rights to defend any claims brought against Buyer, in which case Buyer and Seller shall have joint rights therein;

**(6)** All real property leases of any kind for any location of the Debtor unless specifically requested by Buyer prior to Closing and, if requested and agreed to by Seller, Buyer will be liable for all cure amounts and all other payments, and liabilities not disclaimed by the Sale Order, arising under such lease from and after closing and notwithstanding anything in this subparagraph, under no circumstances shall any such Buyer request, or Seller's response to said request, result in the termination of this Agreement

**(7)** All Executory Contracts which are not Assumed Contracts, including those listed as Rejected Contracts as of the date that is the 90th day after the Notice of Assumption and Assignment and Opt Out Notice ("Excluded Contracts");

**(8)** All of Seller's or the Estate's claims, causes of action, rights of setoff, and rights of recovery, except with respect to claims that arise post-Closing and relate to property acquired by Buyer;

**(9)** Seller's rights under this Agreement and all documents expressly required or contemplated hereunder and in the Sale Order (the "Transaction Documents");

**(10)** All claims for refunds, and/or credits for taxes applicable to the period prior to the Closing;

**(11)** All records relating to Excluded Assets, except that, upon Buyer's request, Seller shall provide complete copies thereof to Buyer;

**(12)** All personnel records and other records that Debtor or Seller is required by law to retain in its possession and any retained copies of any record or document included in the Property (collectively, "Retained Records"), except that, upon Buyer's request, Seller shall provide complete copies thereof to Buyer;

**(13)** All actions or causes of action arising in favor of Seller, if arising before the Closing Date, or that are property of the Estate pursuant to the Bankruptcy Code, including all preference, avoidance, and/or similar other rights, claims, and actions of Debtor, Seller, and/or the Estate including, without limitation, any such rights, claims, and actions arising under Chapter 5 of Title 11 of the United State Code, except to the extent that Buyer may require such rights to defend any claims brought against Buyer, in which case Buyer and Seller shall have joint rights therein;

**(14)** Those items excluded pursuant to the provisions of Section 1(a) above.

**(15)** All records, writings, and other items that are protected from discovery by the attorney-client privilege, the attorney work product doctrine or any other cognizable privilege or protection except to the extent necessary, permitted, consented to, and/or authorized to effectuate the transfer of Contracts and/or Assumed Contracts and other Property pursuant to the foregoing terms of this Agreement; and

**(16)** All rights, claims, offsets, credits, causes of action, defenses, counterclaims, affirmative defenses, rights of setoff, and/or avoidance actions with respect to or relating to any liens, claims, encumbrances or interests against, in, with respect to or relating to the Property held by any person and including, without limitation, any claims relating to claims or liens of Tony Diab, Rosa Bianca Loli, Lisa Cohen, Eng Taing, Heng Taing, and their affiliates and/or the related relief from stay proceeding(s), the appeal(s) relating thereto and/or the surety bonds and related deposits).

**(17)** All claims, causes of actions, rights, offsets, defenses, counterclaims, defenses, avoidance actions, affirmative defenses that are Property of the Estate as defined by the case law and/or by the Bankruptcy Code and/or any other statutes or common law

**(c)** Until 90 days have elapsed after the date of Notice of Assumption and Assignment and Opt Out Notice (the "Revision Period"), Buyer may revise **A-10 (Schedule of Assumed Contracts) to include or exclude any Executory Contract as** an Assumed Contract. To the extent that any cure amounts arise in connection with any Assumed Contract that remains an Assumed Contract per **A-10 (Schedule of Assumed Contracts)** after the date of Notice of Assumption and Assignment and Opt Out Notice, as to such obligation, Buyer shall be liable for satisfying in full any such prepetition cure amount and no other cure amounts. Buyer's exercise of

its exclusive and/or independent legal judgment in revising Schedule A-10 (the Schedule of Assumed Contracts) within 90-days of the date of Notice of Assumption and Assignment and Opt Out Notice shall not be construed as a breach of this Agreement.  Within 7 days after the earlier of (a) removal of an LSA from the Schedule of Assumed Contracts or (b) the last day of the Revision Period (or first business day thereafter), Buyer shall refund to Seller all ACH pulls received by Buyer from any consumer clients whose LSAs are removed from the Schedule of Assumed Contracts under this Section 1(c).

(d)    **Gap Period Operations and Interim Management Agreement**.  Buyer shall enter into an association agreement (the "Interim Association Agreement") with Seller and agree to be bound by its terms through the later of: (a) the Consumer Notice Expiration Date; and (b) entry of the Assumption Order (the "Gap Period") as set forth in the Sale Order. Buyer shall comply with all applicable laws and rules of professional conduct related to the transfer or termination of any LSAs being serviced by Buyer.

(e)    Without limiting the provisions of this Section 1 or any other provision of this Agreement, Buyer acknowledges that Seller is not selling or otherwise transferring to Buyer any property that Seller may not sell or transfer under applicable law including, without limitation, any such property the sale, transfer, or use of which is restricted under applicable licensing, copyright, patent, trademark, or other similar laws or which may not be transferred without the consent of a third party (including any licensor), and the use, disposition, sale, or disposition of certain of the Property by Buyer may be limited as a result

(f)    Buyer assumes responsibility for obtaining all required licenses, copyrights, patents trademarks, permits and/or other agreements and/or rights as may be required so that Buyer may lawfully use, sell, operate, or dispose of the Property and/or businesses thereon.

2.    **Purchase Price; Deposit; Payment of Purchase Price; Assumption of Liability.**

(a)    The aggregate purchase price ("Purchase Price") for the Property shall be the sum of Five Million Five Hundred Thousand Dollars ($5,500,000), to be paid as follows: (i) an initial deposit of Five Hundred Thousand dollars ($500,000) (the "Initial Deposit"), the receipt of which from Resolution Ventures, LLC on behalf of Buyer is hereby acknowledged by Seller; (ii) the balance of Five Million dollars ($5,000,000) (the "Second Deposit," together with the Initial Deposit, the "Deposit")) shall be due within 72 hours after entry of Sale Order. The Buyer shall provide proof of funds to the Trustee for the Second Deposit on or before August 1, 2023, regardless of the status of entry of the Sale Order.

(b)    In additional to the foregoing, Buyer shall pay a fee equal to: (a) fifty percent (50%) of all amounts collected by Buyer on Active Executory Contracts (defined above) from and after the Closing, plus (b) forty percent (40%) of all amounts collected by Buyer on Inactive Executory Contracts (defined above), each calculated on a quarterly basis, (subsections (a) and (b) collectively, the "Fee"), and paid into the Escrow Holder's Account within 15 days of the end of each fiscal quarter (March 31, June 30, September 30, and December 31). The quarterly payments for the Fee shall commence once the $5,500,000 in loans obtained by Buyer to pay the Purchase Price have been fully paid pursuant to the terms of the loans; provided, however, that Buyer's ability to obtain any loans is not a condition precedent to Closing under this Agreement. There shall be no setoffs or offsets against the Fee unless otherwise provided herein or ordered by the Court. This provision shall not be construed to interfere with Buyer's custody and/or control over the disposition of the amounts

received, post-Closing, from the Active Executory Contracts or Inactive Executory Contracts in accordance with the other provisions of this Agreement.

If Buyer sells, transfers, or assigns any Assumed Contracts, the buyer, transferee, or assignee shall take such Assumed Contract subject to this Agreement and this Section 2(a). Any such sale, transfer or assignment must be made with approval from the Bankruptcy Court.

Prior to Closing, the Buyer shall have full inspection of and access rights to the Active Executory Contracts. If, in the 90-day period following the Notice of Assumption and Assignment and Opt Out Notice, there is a 5% or greater variance below the number of Active Executory Contracts as of the Closing date, then the Fee shall be reduced by $400.00 for each Active Executory Contract cancelled in the 90-days after the Notice of Assumption and Assignment and Opt Out Notice. The reduction shall be offset against any Fees owed. No court order is needed for Buyer to apply this offset. This will be a self-executing provision.

The source of the Purchase Price shall not be from the ACH draws made post-petition and held by the Trustee, nor shall the Purchase Price derive from any proceeds related to the Assumed Contracts or related Property ("Source of Funds"), collected prior to Closing, or as further detailed in Section 12(h)-(i), nor shall the source of any funds for the purchase be from any person or entity known to have an affiliation with Tony Diab, or any of the Debtor's principals or insiders.

Seller shall retain a purchase money security interest in the Assumed Contracts sold to Buyer, and a first-in-priority blanket lien in and against all Property (subordinate only to a lien, if any, created in securing financing of the Second Deposit) sold for so long as monetary and non-monetary obligations to the Estate remain outstanding. As a condition of Closing, Buyer shall execute any documents requested by Seller to perfect the subject security interest on all assets including Fees, accounts receivable, and inventory as further detailed in Sections 7 and 8. To the extent such documents are not presented prior to Closing Buyer agrees to execute and deliver any further documentation necessary to perfect and maintain perfection of its security interests within five business days after presentation. The Sale Order shall specifically provide that Seller shall have a senior lien, subject to the limited exception above, on all property sold and all other assets of Buyer.

Seller shall seek injunctive relief in the Sale Order so that no creditor of Seller shall file a lawsuit against Buyer, as Seller's assignee or successor-in-interest, for its servicing and acquisition of the Active Executory Contracts or Inactive Executory Contracts for acts that occur prior to the date of the Closing except to the extent of any claims that may arise or exist solely related to Buyer's servicing or acquisition of the Active Executory Contracts or Inactive Executory Contracts under the Interim Association Agreement and applicable law. Buyer, Seller and the Committee shall agree upon that language. This is a material term of this Agreement and if this language is not agreed upon or rejected by the Court the Buyer shall be entitled to a return of its Deposit.

Nothing herein shall prevent the Seller or any other estate representative including the Committee or Monitor (defined below) from retaining any and all right to make reasonable demands for accountings and audits with respect to the Assumed Contracts or related inquiries and Buyer therefore agrees to comply with requests of Seller and the Committee related to the same ("Audit Rights"). Further, Buyer shall make available to Seller's designee and the Committee's designee full access to all books and records of Buyer with no less than five business days' notice.

Buyer agrees that any dispute concerning the Audit Rights shall be exclusively determined by the Bankruptcy Court.

Except as otherwise set forth herein, the Deposit shall only be returned to Buyer if Trustee chooses not to execute the Agreement or if the Bankruptcy Court does not approve the proposed sale. The Deposit shall be held by Seller and shall be nonrefundable except as otherwise expressly provided in this Section 2(a)(1) and Section 13 below. The Deposit (without any interest thereon) shall be a component of the Purchase Price upon the Closing.

**BUYER AND SELLER AGREE THAT BASED UPON THE CIRCUMSTANCES NOW EXISTING, KNOWN OR UNKNOWN, IT WOULD BE IMPRACTICAL OR EXTREMELY DIFFICULT TO ESTABLISH SELLER'S DAMAGE BY REASON OF BUYER'S DEFAULT UNDER THIS AGREEMENT AND FAILURE TO CLOSE ESCROW. ACCORDINGLY, BUYER AND SELLER AGREE THAT IN THE EVENT OF A FAILURE TO CLOSE ESCROW AS A RESULT OF SECTION 13(a)(3) HEREUNDER, SUBJECT TO BUYER'S OBLIGATIONS TO PAY ALL COSTS AND EXPENSES AS DUE HEREUNDER, IT WOULD BE REASONABLE AT SUCH TIME TO AWARD SELLER, AS SELLER'S SOLE AND EXCLUSIVE REMEDY AT LAW, "LIQUIDATED DAMAGES" EQUAL TO THE AMOUNT REPRESENTED BY THE DEPOSIT. THEREFORE, IF THE PARTIES HERETO FAIL TO CLOSE ESCROW AS A RESULT OF SECTION 13(a)(3) HEREUNDER, SELLER SHALL RETAIN THE DEPOSIT AND/OR CANCEL THE ESCROW AS ITS SOLE AND EXCLUSIVE REMEDY THEREFOR, WHEREUPON (A) SELLER SHALL IMMEDIATELY BE ENTITLED TO RETAIN THE DEPOSIT, (B) SELLER SHALL BE RELIEVED FROM ALL OBLIGATIONS AND LIABILITIES HEREUNDER, AND, (C) PROMPTLY FOLLOWING ESCROW HOLDER'S RECEIPT OF SUCH INSTRUCTION TO CANCEL THE ESCROW, ESCROW HOLDER SHALL CANCEL THE ESCROW.**

| _____ | _____ |
| Seller Initials | Buyer Initials |

Prior to the Closing, Buyer shall deposit or cause to be deposited with Escrow Holder, who shall be a party acceptable to both the Debtor and Buyer, in immediately available funds the Deposit plus Escrow Holder's estimate of Buyer's share of closing costs (including asset transfer taxes or other fees and expenses related to the asset purchase), pro-rations and charges payable pursuant to this Agreement.

(c)     Buyer consents to the appointment of a Monitor (defined below) to be agreed upon by Buyer, Seller and Committee and approved by the Bankruptcy Court, and will cooperate with and provide for assurances that may be reasonably required from a Monitor, as set forth in Section 2.2 of this Agreement, that the Buyer is in compliance with all applicable consumer protection laws, and that regulations are being followed from and after the Closing Date with respect to the Property.

Monitor shall have neither the right nor the standing to pursue any claims against the Seller. Nothing in this paragraph is intended to give anyone including the Monitor access to Buyer's current clients or unrelated files due to attorney client privilege and the privacy rights of those clients of the firm, that do not constitute the Property. The review by the Monitor shall be limited to the Active Executory Contracts and Inactive Executory Contracts being purchased hereunder.

(d)      The Purchase Price shall be allocated among the Property as determined by the Seller at Closing. The following assets shall, for purposes of this sale, be valued at $4,000,000.00 unless the Trustee otherwise designates another value: (i) Assumed Executory Contracts; (ii) CRM Databases; (iii) Goodwill, (iv) Intellectual Property; (v) equipment and furniture; and (vi) purchased assets that are priceless in value.

(e)      Upon entry of a Sale Order, Buyer agrees to fund payroll and operating expenses of the Debtor's business, and any such amount paid prior to the Closing Date shall be credited against the Purchase Price amount above the Deposit.

**2.1.    Compliance with California State Bar Rule 1.17 and other Applicable Law regarding Sale of a Law Practice**

**(a)      Buyer shall comply with California State Bar Rule 1.17(b), the ABA Model rules, and the laws of any state in which Buyer does business regarding the sale of a law practice. Buyer shall provide prompt notice to all clients that are parties to an Assumed Contract advising them of any such rights to opt out of any sale to Buyer in compliance with the laws of the applicable states. Buyer shall approve and cooperate with the Seller and the Committee to have an agreed upon notice.**

**2.2    Court Appointed Monitor.**  Buyer and Seller acknowledge and agree and jointly request that the Bankruptcy Court order appointment of an independent Monitor ("Monitor") for a one-year period, subject to approval of the Committee, the terms of which appointment shall govern the Monitor's duties. The duties of the Monitor shall include but are not limited to: Buyer's compliance with all applicable federal and state laws and regulations related to the acquisition, handling and performance of the Active Executory Contracts and Inactive Executory Contracts that are subject to assumption, assignment and/or reformation pursuant to this Agreement including, but not limited to: (a) the Telemarketing Sales Rule, 16 C.F.R. § 310 et seq.; (b) Credit Repair Organization Act, 15 U.S.C. § 1679, et seq.; (c) California Business and Professions Code § 17200; (d) the California Rules of Professional Responsibility, Model Rules and any other rules, regulations or laws governing an attorney's practice of law; and (3) all other laws and regulations applicable to the operation of the business or the Purchased Assets, from and after the Closing Date with respect to the Property. Buyer and Seller further acknowledge and agree that the Monitor shall have the right, but not the obligation, to review and inspect all data relating or referring to Buyer's handling of the Active Executory Contracts and Inactive Executory Contracts which Monitor deems necessary for the performance of his or her duties, but that a random sampling of less than 1% of the Active Executory Contracts and Inactive Executory Contracts shall be sufficient. Upon consultation with the Committee and approval of the Bankruptcy Court, the Monitor is authorized to retain professionals to assist in the performance of his or her duties, subject to Bankruptcy Court approval.  Buyer and Seller further acknowledge and agree that the Monitor may seek further instruction and clarification of his or her duties from the Bankruptcy Court.  The Monitor's term shall be no greater than one (1) year unless otherwise ordered by the

Bankruptcy Court.  Monitor shall file status reports every four (4) months or as otherwise ordered by the Bankruptcy Court; provided that Monitor shall provide access to information and reports upon written request. Fees and expenses of the Monitor shall be paid by Seller, up to the first $100,000.00 (the "Initial Coverage"), upon proper application to the Bankruptcy Court, and additional fees and expenses of the Monitor shall be paid by Buyer, up to $100,000.00.  Any amounts in excess of $200,000.00 will be shared equally by the Buyer and Seller's bankruptcy estate.  The Court shall have retained jurisdiction to resolve any disputes over such fees and costs. Buyer agrees that any dispute concerning the fees and expenses of the Monitor shall be exclusively determined by the Bankruptcy Court. The Monitor's role shall be terminated not later than one year after the Closing Date, or such other date as ordered by the Court.

**2.3     Consumer Privacy Protection.**  In connection with the proposed sale, Buyer agrees to comply with all applicable provisions of state and federal law in the handling of consumer personal identifying information.  If ordered by the Bankruptcy Court within one year after the Closing Date, unless that period is extended by Court order,  Buyer and Seller agree that the Monitor shall be authorized to audit a random sampling of less than 1% of Active Executory Contracts and Inactive Executory Contracts for compliance with applicable consumer privacy protection laws in as part of the Monitor's duties pursuant to Section 2.2, above, including, but not limited to the provision for payment of the Monitor's fee, the first $100,000.00 of which shall be paid by Seller and additional fees and costs of Monitor to be paid by Buyer, up to $100,000.00.   Should the allowed fees of the Monitor exceed $200,000.00, the Buyer and Seller shall each pay 50% of the allowed fees in excess of this amount.

**3.     Opening of Escrow.** For purposes of this Agreement, Escrow shall be deemed opened on the Date the Seller files the Sale Motion and Escrow Holder has received Buyer's executed original of this Agreement from Buyer, and Escrow Holder shall notify Buyer and Seller, in writing, of the date Escrow is opened and provide each of the parties hereto with a full set of signature pages to this Agreement. Buyer and Seller agree to execute, deliver, and be bound by any reasonable and customary supplemental escrow instructions of Escrow Holder or other instruments as may reasonably be required by Escrow Holder in order to consummate the transactions contemplated by this Agreement; provided, however, that any such supplemental instructions shall not conflict with, amend, or supersede any portions of this Agreement or the Sale Order. To the extent of any inconsistency between the provisions of such supplemental instructions and the provisions of this Agreement and the Sale Order, the provisions of this Agreement and the Sale Order shall control. Buyer and Seller shall agree on mutually acceptable Escrow Holder.

**4.     Closing of Escrow.** The consummation of the contemplated transactions ("Closing") shall be held at the offices of the Escrow Holder on the date ("Closing Date") that is the one Business Day after occurrence of both (i) entry of the Sale Order and (ii) deposit and availability of funds from the Deposit in the Escrow Holder's Account; if the Court waives the 14-day stay set forth in Bankruptcy Rule 6004(h). If the Court does not waive the 14-day stay set forth in Bankruptcy Rule 6004(h), then Closing will occur on the fifteenth (15th) day after the entry in the Bankruptcy Case of the Sale Order, provided that the entirety of the Deposit has been made.  If the Closing Date does not occur by such date because of an uncured breach of this Agreement by Buyer, Seller shall have the right to extend the Closing Date; provided further, Buyer and Seller may mutually agree to extend the Closing Date in writing. At the Closing, Seller and Buyer shall perform the obligations set forth in, respectively, Sections 7 and 8 hereof, the performance of which obligations

shall be concurrent conditions; provided that any Transaction Documents or other documents requiring recording shall not be recorded until Escrow Holder has received in escrow the full amount of the Cash and executed Transaction Documents from Buyer, adjusted as set forth herein and approval from Seller and Buyer to proceed with the Closing. The Cash and all documents associated with the Purchase Price shall be deposited with the Escrow Holder.

5.    **Condition of the Property.**    Buyer acknowledges having had the opportunity to review and investigate, in its sole discretion, all aspects as to the condition of the Property, to the extent review and investigation is applicable including, without limitation, the suitability for Buyer's intended use. Notwithstanding the foregoing, Buyer expressly acknowledges and agrees that Buyer is purchasing the Property on an "as is, where is" basis and that neither Seller nor any Person has made any representations, warranties, covenants or agreements of whatsoever kind and nature concerning the Property, including, without limitation, its merchantability, condition or use, which are not expressly set forth herein. As such, there are no such conditions to Buyer's obligation to consummate the transactions contemplated herein. Buyer further acknowledges and agrees that Buyer has retained independent counsel and advisors, and has had the opportunity to review and discuss this Agreement and the other Transaction Document, and understands the terms and conditions set forth in the Transaction Documents and the status and condition of the Property, all prior to entering into this Agreement and the other Transaction Documents. To the extent that Buyer has not undertaken investigations or other forms of due diligence in regard to the condition of the Property, Buyer hereby expressly acknowledges that Buyer is relying solely on Buyer's own due diligence and investigations, and further expressly waives any and all claims and causes of action of whatsoever kind and nature as to any matters which may have been disclosed if such investigations were undertaken. Notwithstanding the foregoing, for the avoidance of doubt, Buyer is buying Seller's interests in the Property free and clear of all liens, claims, and interests.

**BUYER AGREES THAT SELLER SHALL HAVE NO LIABILITY OR OBLIGATION WHATSOEVER FOR ANY INACCURACY IN OR OMISSION FROM ANY REPORT FURNISHED TO BUYER, AND BUYER HAS CONDUCTED ITS OWN INVESTIGATION OF THE CONDITION OF THE PROPERTY TO THE EXTENT BUYER DEEMS SUCH AN INVESTIGATION TO BE NECESSARY OR APPROPRIATE.**

**Without limiting the foregoing provisions of this Section 5, Buyer expressly acknowledges and agrees that: THE PROPERTY IS BEING TRANSFERRED "AS IS" AND "WHERE IS;" BUYER AGREES TO ACQUIRE THE PROPERTY FROM SELLER "AS IS" AND "WHERE IS", AND ACKNOWLEDGES THAT SELLER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND WHATSOEVER WITH RESPECT TO THE PROPERTY (INCLUDING AS TO THE ACTUAL NATURE, QUALITY, QUANTITY, OWNERSHIP, LOCATION OR VALUE), LIABILITIES, ASSUMED CONTRACTS OR ASSUMED LIABILITIES, EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO ANY REPRESENTATION OR WARRANTY REGARDING TITLE TO OR CONDITION OF THE PROPERTY, OR THE VALUE THEREOF, OR THE FITNESS, DESIRABILITY, OR MERCHANTABILITY THEREOF OR SUITABILITY THEREOF FOR ANY PARTICULAR PURPOSE, OR THE EXISTENCE OR AMOUNT OF ACCOUNTS, LIABILITIES, ASSUMED LIABILITIES, LIENS, CLAIMS OR ENCUMBRANCES. BUYER FURTHER ACKNOWLEDGES AND REPRESENTS THAT IT IS FULLY INFORMED AND**

**ADVISED WITH RESPECT TO THE PROPERTY, ASSUMED CONTRACTS, ASSUMED LIABILITIES AND OPERATIONS OF THE PROPERTY, IT HAS REVIEWED AND INSPECTED THE PROPERTY, HAS HAD THE OPPORTUNITY TO INSPECT THE BOOKS AND RECORDS RELATING TO THE PROPERTY AND THE PUBLIC FILING RECORDS AND ENTERS INTO THIS AGREEMENT AFTER INDEPENDENT INVESTIGATION OF THE FACTS AND CIRCUMSTANCES RELATING TO THE PROPERTY AND THE TRANSACTIONS DESCRIBED IN THIS AGREEMENT. BUYER FURTHER ACKNOWLEDGES THAT SELLER IS THE TRUSTEE APPOINTED IN THE BANKRUPTCY CASE AND HAS LITTLE OR NO INFORMATION RELATING TO THE PROPERTY AND MATTERS PERTAINING THERETO AND THAT ANY INFORMATION PROVIDED BY THE TRUSTEE OR HIS AGENTS OR REPRESENTATIVES IS BASED UPON INFORMATION AND BELIEF AS PROVIDED BY DEBTOR OR ITS REPRESENTATIVES OR AGENTS AND/OR MATTERS FILED IN THE BANKRUPTCY CASE BY OTHER PERSONS OR PUBLIC RECORDS, AND SELLER HAS NOT INDEPENDENTLY REVIEWED ANY SUCH INFORMATION FOR ACCURACY OR COMPLETENESS. SELLER HAS NO OBLIGATION OR LIABILITY WHATSOEVER WITH RESPECT TO ANY SEPARATE AGREEMENTS, INDEMNITIES, REPRESENTATIONS OR WARRANTIES ENTERED INTO BY BUYER WITH ANY OTHER PERSON.**

6.    **Conditions to Closing.**

(a)    **Conditions to Buyer's Obligations.** Buyer's obligation to consummate the transactions contemplated by this Agreement at the Closing is subject to the satisfaction of the following conditions, unless waived in writing by Seller after consultation with the Committee:

(1)    The Bankruptcy Court shall have entered the Sale Order, expressly approved by Buyer, which, among other things, approves and authorizes pursuant to applicable provisions of the Bankruptcy Code the sale and transfer of the Property to Buyer approved and enacted with all Property transferred free and clear of liens, liabilities, adverse claims of ownership, and other interests of any kind and nature, with such liens, liabilities, adverse claims of ownership and other interests, if any, to attach to the proceeds of the sale and provides (or related findings provide) a finding that Buyer is a good faith buyer of the Property under Section 363(m) of the Bankruptcy Code; and

(2)    Seller shall have delivered to or for the benefit of Buyer all of Seller's Deliverables (as defined at Section 7 below), in a manner acceptable to Buyer, and otherwise timely performed all of the obligations required by the terms of this Agreement. By way of illustration and not of limitation, Buyer expressly acknowledges and agrees that, except as expressly set forth in this Section 6(a), there are no "contingencies" to Closing, including, without limitation, no due diligence or financing contingency as a condition to Buyer's obligations hereunder.

(b)    **Conditions to Seller's Obligations.** Seller's obligation to consummate the transactions contemplated by this Agreement at the Closing is subject to the satisfaction of the following conditions for Seller's benefit (or Seller's waiver thereof, it being agreed that Seller may waive any or all of such conditions at his sole discretion):

**(1)** The Bankruptcy Court shall have entered the Sale Order, which, among other things, approves and authorizes pursuant to applicable provisions of the Bankruptcy Code the sale and transfer of the Property to Buyer approved and enacted with all Property transferred free and clear of liens, liabilities, adverse claims of ownership, and other interests of any kind and nature, with such liens, liabilities, adverse claims of ownership and other interests, if any, to attach to the proceeds of the sale and provides (or related findings provide) a finding that Buyer is a good faith buyer of the Property under Section 363(m) of the Bankruptcy Code;

**(2)** No stay or injunction is in effect under applicable law or court order of the Sale Order or otherwise restraining or prohibiting the consummation of the transactions contemplated by this Agreement; and

**(3)** Buyer shall have delivered to or for the benefit of Seller all of the items as set forth in Section 8 below, and otherwise timely performed all of the obligations required by the terms of this Agreement to be performed by Buyer; and

**(4)** Buyer shall execute an Interim Association Agreement.

**7.** **Deposits by Seller**. At or prior to the Closing, Seller shall deposit or cause to be deposited with Escrow Holder the following documents and instruments ("Seller's Deliverables"), each of which shall have been duly executed and, where applicable, acknowledged and/or sworn on behalf of Seller and shall be dated as of the Closing Date:

**(a)** An affidavit by Seller certifying that Seller is not a "foreign person" within the meaning of Section 1445 of the Internal Revenue Code of 1986, as amended, which affidavit shall be in such form as may be prescribed by federal regulations;

**(b)** A duly executed California Form 593-C with respect to California withholding requirements;

**(c)** A Bill of Sale, in a form approved by Buyer, the form of which is attached hereto and incorporated herein as Exhibit "D" ("Bill of Sale");

**(d)** Any necessary security agreements, financing statements, etc. as applicable, pursuant to Section 2(a) (collectively, "Financial Documents");

**(e)** A General Assignment and Assumption Agreement, ("Assumption Agreement"), to the extent necessary, and prepared or approved by Buyer;

**(f)** Documentation related to the Consumer Protections, including consent protocol and Modified LSAs; and

**(g)** Any other documents, certificates, instruments, and agreements reasonably necessary to consummate the sale of the Property as contemplated herein, including, but not limited to, registered Intellectual Property (including trademarks).

**8.** **Deposits by Buyer.** At or prior to the Closing, (a) Buyer shall deposit or cause to be deposited with Escrow Holder the balance of the Deposit in immediately available funds, and (b) Buyer shall deliver for the benefit of Seller the following, each of which shall have been duly

executed and, where applicable, acknowledged and/or sworn on behalf of Buyer and shall be dated as of the Closing Date:

**(a)** The Assumption Agreement;

**(b)** Resolutions (in form and substance reasonable to Seller) from Buyer duly authorizing Buyer to enter into and perform its obligations under this Agreement and the other Transaction Documents; and

**(c)** Any other documents, instruments, certificates and agreements reasonably requested by Seller to consummate the sale of the Property as contemplated herein.

**9.** **Taxes; Costs and Expenses.** The cost of all documentary transfer taxes and all taxes, fees, charges, costs, and liabilities due in connection with the sale of the Property (other than income taxes due by Seller in connection with said sale) shall be the obligation of and promptly paid by Buyer. The escrow fee of Escrow Holder shall be shared equally by Seller and Buyer. Buyer and Seller shall pay, respectively, the Escrow Holder's reasonable and customary charges to buyers and sellers for document drafting and miscellaneous charges, which charges shall be provided in advance and in writing by each of Buyer and Seller prior to the Closing.

**10.** **Disbursements and Other Actions by Escrow Holder; Actions at Closing.**

**(a)** Upon the Closing, Escrow Holder shall promptly undertake all of the following in the manner indicated:

**(1)** **Closing Statement.** Escrow Holder shall generate and circulate to each of Buyer and Seller a written closing statement ("Closing Statement"), listing, among other things, the flow of funds, and require that each of Buyer and Seller execute and deliver said Closing Statement as a condition of Closing.

**(2)** **Funds.** Pursuant to the Closing Statement, and subject to limitations provided in Section 2(a)(1), disburse from funds deposited by Buyer with Escrow Holder towards payment of the Purchase Price to Seller and payment of expenses expressly agreed to by Seller pursuant to the terms and conditions hereof and set forth in the Closing Statement,

**(3)** Deliver to Buyer, Seller's signatures and duly executed documents, originals as necessary, with respect to the documents in Section 7 and to Seller, Buyer's signatures and duly executed documents, originals as necessary, with respect to the documents in Section 8.

**(b)** Except as otherwise provided herein, upon the Closing (and subject to satisfaction of all of Buyer's obligations in connection therewith), whatever interest the Estate and Seller has in the Property shall pass to Buyer, subject to the terms and conditions hereof.

**11.** **Seller Affirmations.**

**(a)** Seller is not a "foreign person" within the meaning of Section 1445 of the Internal Revenue Code of 1986, as amended (i.e., Seller is not a non-resident alien, foreign corporation, foreign partnership, foreign trust or foreign estate as those terms are defined in the Code and regulations promulgated thereunder).

EXHIBIT "1"
Page 39

**(b)** Seller's Estate will fund the costs, fees, and expenses related to any court-appointed Monitor for its services up to one hundred thousand dollars ($100,000.00) (the "Initial Coverage") and shall timely pay any other amounts required by Seller under section 2.2.

**(c)** Seller's onsite agent Lori Ensley shall represent and warrant that the data being provided to Buyer has not been tampered with to the best of her knowledge since June 2, 2023 through the Closing Date.

**(d)** Seller shall execute any and all documents reasonably requested by Buyer as necessary to close the sale and/or support, evidence or effectuate the transfers of any and all acquired Property and otherwise effectuate the transactions under this Agreement.

**12.** **Buyer's Covenants, Representations and Warranties.** In consideration of Seller entering into this Agreement and as an inducement to Seller to consummate the transactions contemplated herein, Buyer hereby makes the following representations and warranties to Seller as of the Effective Date of this Agreement:

**(a)** Buyer is a professional corporation duly organized and validly existing under the laws of California and is in good standing in California and in every jurisdiction where Buyer practices law, and in which the failure to be in good standing may have a material adverse effect on Buyer, its business, and/or assets. Buyer has full organizational power and authority to enter into and execute this Agreement and the other Transaction Documents to which it is a party and the transactions contemplated hereby and thereby. This Agreement and such Transaction Documents and all transactions required hereunder and thereunder to be performed by Buyer have, subject to the Sale Order, been duly and validly authorized and approved by all necessary action on the part of Buyer. This Agreement and such other Transaction Documents have been duly and validly executed and delivered on behalf of Buyer by its duly authorized partners/ officers, as the case may be, and constitute the valid and legally binding obligations of Buyer and are enforceable, subject to the Sale Order and general equity principles, in accordance with their respective terms, except as enforceability may be limited by bankruptcy, insolvency, reorganization, or similar laws affecting the rights of creditors generally. Furthermore, the undersigned represents and warrants that he/she is duly authorized to execute and deliver this Agreement by and on behalf of Buyer. Buyer represents and warrants that it is not the subject of any disciplinary or regulatory investigations.

**(b)** Neither the execution and delivery of this Agreement or such Transaction Documents, nor the consummation of the transactions hereby or thereby contemplated, will constitute a violation or breach of any provision of any contract or other instrument to which Buyer is a party or by which any of the assets of such Buyer may be affected or secured, or any order, writ, injunction, decree, statute, rule, or regulation to which Buyer is subject, or will result in an acceleration of any debt or the creation of any lien, charge, or encumbrance on any of the assets of Buyer which will prevent or interfere with the consummation of the transactions contemplated herein and in the other Transaction Documents, or which might be deemed to adversely affect Buyer's ability to fully and promptly perform its obligations hereunder or under the other Transaction Documents.

**(c)** The execution and delivery by Buyer of this Agreement and the other Transaction Documents, and the consummation of the transactions contemplated hereby and thereby in

accordance with the Sale Order will not require the consent, approval or action of, or any filing with or notice to, any Person or any public, governmental, judicial, or regulatory authority, other than the Bankruptcy Court. There are no material actions, suits, claims, investigations, hearings, or proceedings of any type pending (or, to the knowledge of Buyer, threatened) whether at law or in equity, which will prevent the consummation of the transactions as contemplated herein or which might otherwise affect Buyer's ability to close the transactions contemplated herein and in the other Transaction Documents.

(d)    Buyer expressly acknowledges and agrees that Buyer has sufficient financial resources, including, without limitation, the necessary liquid funds, to promptly pay the balance of the Purchase Price and to pay and perform the Assumed Contracts and the Assumed Liabilities as and when due, and to consummate the transactions contemplated herein and in the other Transaction Documents, to assume and pay in full as due any claims, charges, expenses or liabilities due with respect to the Conditions of Title or otherwise arising in connection with the Assumed Contracts or any other Property, and to perform all of Buyer's obligations hereunder and under the other Transaction Documents. Furthermore, with respect to the Assumed Contracts, Buyer shall provide evidence demonstrating adequate assurance of the future performance of such Assumed Contracts as required by Sections 365(b)(1)(C) and/or 365(f)(2)(B) of the Bankruptcy Code, as applicable, and further agrees to comply with all applicable federal and state laws and regulations, which shall be subject to oversight by the Monitor as set forth herein.

(e)    There are no actions, suits, claims, investigations, hearings, or proceedings of any type pending (or, to the knowledge of Buyer, threatened), at law or in equity, that might affect Buyer's ability to close the transactions contemplated hereby.

**(f)    BY CLOSING THIS TRANSACTION, BUYER ACKNOWLEDGES TO SELLER THAT BUYER HAS HAD THE OPPORTUNITY TO CONDUCT PRIOR TO THE EFFECTIVE DATE AND WILL CONDUCT PRIOR TO THE CLOSING DATE SUCH INSPECTIONS AND INVESTIGATIONS OF THE PROPERTY AS BUYER DEEMS NECESSARY OR DESIRABLE TO SATISFY ITSELF AS TO THE PROPERTY AND ITS ACQUISITION THEREOF AND THE OBLIGATIONS IN CONNECTION THEREWITH. BUYER FURTHER WARRANTS AND REPRESENTS TO SELLER THAT BUYER WILL RELY SOLELY ON ITS OWN REVIEW AND OTHER INSPECTIONS AND INVESTIGATIONS IN THIS TRANSACTION AND NOT UPON ANY INFORMATION PROVIDED BY OR ON BEHALF OF SELLER, OR ITS REPRESENTATIVES OR ANY OTHER PERSON WITH RESPECT THERETO. BUYER HEREBY ASSUMES THE RISK ON ANY RELATED MATTERS AND EXPRESSLY ACKNOWLEDGES AND AGREES THAT IT HAS CONCLUDED ITS DUE DILIGENCE.**

(g)    Buyer represents and warrants that all materials submitted by Buyer, its Affiliates and its and their duly authorized representatives to Seller prior to the Effective Date in connection with Buyer, any such Affiliate, and its and their financial ability to consummate the transactions contemplated herein and in the other Transaction Documents (the "Bid Documentation") are true, correct, complete in all material respects and sets forth in a manner that is not misleading as of the Effective Date hereof and as of such date received by Seller through the Closing Date.

EXHIBIT "1"
Page 41

(h)    The Purchase Price consists of amounts which are not the Property as defined in Section 1(a) and therefore excludes any and all consumer payments held by Trustee on or before the Closing Date as a source of funds related to the Purchase Price; provided that Buyer shall be able to seek financing of the Second Deposit as set forth herein, provided further that the Buyer's ability to obtain financing shall not being a condition by Buyer to Closing.

(i)    Any subsequent amounts paid to Seller, including any Fee from Buyer or its transferee or assignee, shall not derive from any proceeds resulting from the Assumed Contracts or related Property.

(j)    Buyer represents and warrants that all LSA's presented to clients identified in the Assumed Executory Contracts and the implementation thereof will have been modified ("Modified LSA's") for compliance with the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), the Telemarketing Sales Rule, 16 C.F.R. Part 310 (the "TSR"), and to the extent applicable, if ever, the Credit Repair Organizations Act, 15 U.S.C. § 1679 (the "CROA"), as well as all applicable laws and regulations as well as any Order of the Bankruptcy Court.t

(k)    Buyer represents and warrants that the performance of the Modified LSA's will similarly comply with the TCPA, TSR, and to the extent applicable, if ever, the CROA, as well as all applicable federal and state laws and regulations as well as any Order of the U.S. Bankruptcy Court;

(l)    Under no circumstances shall an Assumed Contract be assigned to Buyer unless and until such LSAs comply with all applicable federal and state laws and regulations including, without limitation, the TCPA, TSR, and CROA.  Buyer is solely responsible for ensuring compliance with all applicable law, and consents to oversight by the court-appointed Monitor as set forth herein.

(m)    Buyer represents and warrants that it will cooperate with the requests, oversight, and inquiries of the court-appointed Monitor whose appointment shall be for a one (1) year term unless otherwise ordered by the Court, the Seller and the Committee, as further provided in the Sale Order;

(n)    Buyer represents and warrants that it will share in the costs, fees, and expenses related to the court-appointed Monitor as further provided in the Sale Order;

(o)    Buyer shall execute documentation related to the Consumer Protections, including consent protocol and Modified LSA's, as specified in subsections (h)-(n) (collectively, the "Consumer Protections");

(p)    Buyer covenants to provide profit and loss statements, balance sheets and other financial information in connection with the filing of the Sale Motion, as may be requested by Seller, Committee and Monitor from time to time, related to the Active Executory Contracts and Inactive Executory Contracts being purchased by Buyer;

(q)    Buyer covenants to provide Seller, Committee and Monitor with visibility into Buyer's ACH processing merchant account and related bank accounts, as well as customer relationship management software, such as Debt Pay Pro (or other similar software) for the purpose of monitoring Buyer's compliance with this Agreement as it relates to Active and Inactive

Executory Contracts it is purchasing.  In furtherance of this paragraph, Buyer covenants to provide any reports relating to the foregoing ACH merchant account, related bank accounts and customer relationship management software;

(r)     Buyer will maintain books and records the sufficiency of which will enable Seller to identify the following information:

(i)     Detailed calculation of any and all monies paid to Buyer from Seller related to this Agreement including

(a)     Details of any and all monies received in whatever form by Buyer from each client from all Active Executory Contracts and Inactive Executory Contracts including, but not necessarily limited to, client name, date received, amount, reference number, currency, remitting account, remitting accountholder name, etc.;

(b)     Details of the nature and application of each transaction described above; and

(c)     Detailed status and progress report of Buyer's work with regard to each client related to the Property.

(ii)     Such books and records must be maintained reasonably separate from Buyer's other operations such that Seller, the Committee and the Monitor can readily determine activity related to Clients.  Buyer shall have the right to inspect Seller's original, unaltered documentation other materials in Buyer's possession or under its control with respect to the subject matter and terms of this Agreement.  Such documentation may include, but is not necessarily limited to, bank statements, deposit slips, check registers, Client files, and information contained in Buyer's credit management software or other such electronic platform used by Buyer to service Clients.  Buyer agrees that it will maintain and preserve these books and records until such time that a final decree is obtained in the bankruptcy proceeding underlying this matter or as otherwise instructed by Seller.

(iii)     Buyer shall have the right to inspect, or have an agent, accountant, or other representative, inspect such books and records upon thirty days' notice.

(s)     Upon execution of an appropriate Non-Disclosure Agreement and waiver of all contingencies, Buyer shall have the right to manage, operate, and control all key personnel at the current law firms serving the receivables.  Buyer shall be given access to the firm's data bases, employees, software, and client management.

(t)     Upon Closing. Buyer shall be allowed to transition the Active Executory Contracts and Inactive Executory Contracts to its own employees and attorneys for servicing in coordination with the Seller's existing personnel.

**(u)**    Buyer shall not have any formal or informal business arrangements with Tony Diab or any other person or entity that is named as a defendant in the Adversary Proceeding during any time period for which a Fee is due to Seller under this Agreement.

**13.    Termination; Return of the Balance of the Deposit.**

**(a)**    This Agreement may be terminated at any time prior to the Closing as follows:

**(1)**    By mutual written consent of the parties;

**(2)**    By Seller, after consultation with the Committee, if Seller determines that proceeding with seeking Bankruptcy Court approval of this Agreement is not in the best interest of the Estate;

**(3)**    By Seller if Buyer breaches, in any material respect, its representations or warranties or fails to perform in any material respect its covenants or agreements set forth in this Agreement or in the other Transaction Documents, and such breach has not been waived in writing by the Seller, in consultation with the Committee;

**(4)**    By Seller or Buyer if the proposed sale is not approved by the Bankruptcy Court; and

**(5)**    By Buyer, if Seller breaches, in any material respect, its representations or warranties or fails to perform in any material respect its covenants or agreements set forth in this Agreement or in the other Transaction Documents;

**(b)**    Upon termination of this Agreement as set forth in Section 13(a)(3) or 13(a)(5) above, the non-breaching party shall retain any and all of its rights and remedies against the breaching party, subject to the provisions of Section 2, above relating to liquidated damages.

**(c)**    With respect to the Deposit:

**(1)**    Upon the termination of this Agreement by Seller pursuant to Section 13(a)(3) and written notice thereof to Buyer and Escrow Holder, Seller shall retain the Deposit, together with any and all interest that may have accrued thereon.

**(2)**    Upon the termination of this Agreement by Buyer pursuant to Section 13(a)(5) and written notice thereof to Seller and Escrow Holder, Buyer shall be entitled to a return of the Deposit, together with any and all interest that may have accrued thereon.

**(3)**    In the event that this Agreement is terminated by Buyer or Seller, as applicable pursuant to Sections 13(a)(1), (a)(2), and (a)(4), and subject to the other terms hereof, then Seller shall promptly refund the Deposit, without interest thereon, to Buyer.

**(d)**    Without limiting the other provisions of Section 13, Buyer acknowledges that the Deposit is subject to forfeiture if:

**(1)** Buyer seeks to terminate this Agreement before Bankruptcy Court approval is obtained;

**(2)** Buyer attempts to modify or withdraw its offer or terminate this Agreement without closing the transactions contemplated hereby; or

**(3)** if Buyer fails to close without any fault of Seller.

**14.** **Bankruptcy Court Approval; and Sale Hearing.**

**(a)** Seller has filed, or will file, consistent with this Agreement, such pleadings and exhibits related thereto, and all other documents contemplated under this Agreement and in the Sale Motion to request approval of this Agreement. Buyer will provide evidence and testimony that it is a good faith purchaser entitled to the protections set forth in 11 U.S.C. § 363(m).

**(b)** In the event this Agreement and the contemplated sale and assignments are not approved by the Bankruptcy Court, this Agreement shall be null and void and the Deposit (without interest) shall be promptly returned to Buyer as set forth in Section 13, unless any modifying condition or term to this Agreement imposed or proposed by the Bankruptcy Court to this Agreement is reasonably acceptable to Seller and Buyer, in which event this Agreement will be modified accordingly. Except as otherwise provided in this Agreement or order of the Bankruptcy Court, upon Buyer being approved as the buyer, or if there is an overbid, the Successful Bidder, at the Sale Hearing, the Deposit will remain non-refundable and in the event of default by Buyer will be forfeited to Seller. In the event of any breach by Seller, the Buyer shall have a general, unsecured prepetition claim for damages.

**(c)** Escrow Holder shall close the Escrow, pursuant to any applicable escrow instructions, only after all conditions herein have been met and all distributions and/or refunds made.

**(d)** For purposes hereof:

**(1)** **"Affiliate"** shall mean, as applied to any Person, any other Person directly or indirectly controlling, controlled by, or under common control with, that Person;

**(2)** **"Person"** means and includes natural persons, corporations, limited partnerships, limited liability companies, general partnerships, joint stock companies, joint ventures, associations, companies, trusts, banks, trust companies, land trusts, business trusts, Indian tribes or other organizations, whether or not legal entities;

**15.** **Notices.** All notices or other communications required or permitted hereunder shall be in writing, and shall be personally delivered or delivered by facsimile or email (provided a duplicate copy is also sent via pre-paid, first class, certified or registered air mail (or the functional equivalent in any country), return receipt requested, to the intended recipient thereof at its email, and/or facsimile number set out below) or by overnight courier such as FedEx, Express Mail, etc., for the next Business Day delivery, and shall be deemed received upon the earlier of (i) if personally delivered or sent via facsimile or email, the Business Day of delivery to the address of the person to receive such notice, or (ii) if delivered by overnight courier, the next Business Day.

If to Buyer, addressed to:

> Morning Law Group, P.C.
> 2625 Townsgate Road, Suite 330
> Westlake Village, CA 91361
> Attn: Joshua Armstrong
> > Email: Joshua.armstrong@morninglawgroup.com

With a copy simultaneously by like means (but which shall not constitute notice), addressed to:

> Danning, Gill, Israel & Krasnoff, LLP
> 1901 Avenue of the Stars, Suite 450
> Los Angeles CA 90067-6006
> Attn: Zev Shechtman
> Email:  zs@DanningGill.com

If to Seller or Trustee, addressed to:

> Marshack Hays LLP
> 870 Roosevelt
> Irvine, California 92620
> Attn: D. Edward Hays
> Email: ehays@marshackhays.com

With copies simultaneously by like means (but which shall not constitute notice), addressed to:

> Dinsmore & Shohl LLP
> 655 West Broadway, Suite 800
> San Diego, CA 92101
> Attention: Christopher Celentino; Yosina Lissebeck
> > Email: christopher.celentino@dinsmore.com
> yosina.lissebeck@dinsmore.com

**Notice of change of address shall be given by written notice in the manner detailed in this Section 15. Rejection or other refusal to accept or the inability to deliver because of changed address of which no notice was given shall be deemed to constitute receipt of the notice, demand, request or communication sent. Failure to provide "courtesy-only" copies shall not invalidate the notice otherwise given.**

<u>**Notice to Consumers**</u>

Buyer and Seller, as applicable, shall cause to be served the Notice of Assumption and Assignment and Opt Out Notice to consumers pursuant to this Agreement and the Sale Order.

16.    <u>**Assignment.**</u> This Agreement may not be assigned, nor may the obligations be delegated by, the parties hereto without the prior written consent of the other party or parties hereto, provided, however, that Buyer may assign its rights under this Agreement to an entity or entities (formed or to be formed) upon notice to Seller , the Committee and the Monitor, as applicable (provided,

however, that Buyer directly or indirectly holds not less than a majority ownership interest in, and exercises exclusive control over, all such permitted assignee, and such assignment shall not limit, modify, amend or terminate any obligations of Buyer and/or assignee, as Buyer hereunder). Any assignment must be made and notice provided to Seller, the Committee and the Monitor, as applicable, no later than prior to the Sale Hearing Nothing in this Section 16 shall prevent Buyer from assigning any of the Purchased Assets in accordance with this Agreement.

**17.** **Confidentiality.** As a condition of entering into this Agreement and discussing the transactions contemplated herein, Buyer represents, warrants and covenants to Seller that:

**(a)** Except as required by applicable law, or as mutually agreed upon by the parties in writing, Buyer shall maintain the confidentiality of, and may not disclose to any Person any confidential, secret, or proprietary information of or regarding Seller, the Estate and/or Debtor which is either marked "confidential" or "proprietary" or, by its nature, is confidential or proprietary to Seller, the Estate and/or Debtor **("Confidential Information"),** including, without limitation, any Confidential Information obtained by Buyer and its officers, directors, Affiliates, agents and representatives, during its due diligence investigation of the Property. Seller makes no representations or warranties as to the accuracy or completeness of the Confidential Information. Buyer shall hold all Confidential Information of Seller in confidence and shall protect the same with reasonable care.

**(b)** For purposes hereof, the parties acknowledge and agree that any documents or information that are otherwise in the public domain (through no fault of Buyer) or are disclosed in connection with the Bankruptcy Case, and are not "sealed" by the Bankruptcy Court, shall not be deemed Confidential Information hereunder.

**(c)** Buyer reaffirms its obligations contained in the Confidentiality and Non-Disclosure Agreement previously executed by Buyer and/or its Affiliates in favor of Seller and the Estate. In the event of a conflict between the previously executed agreement and this Agreement, this Agreement shall control.

**18.** **Cooperation; Bankruptcy Court Approvals.**

**(a)** Buyer agrees to use commercially reasonable good faith efforts to assist Seller, and cooperate with their respective legal counsel and accountants in connection with any steps required to be taken as part of their respective obligations under this Agreement and the other Transaction Documents; and all parties shall use their commercially reasonable good faith efforts to promptly consummate the transactions contemplated herein and to fulfill their obligations hereunder. Buyer further agrees to cooperate with Seller, the Committee, and the Monitor after the Closing, as to matters pertinent to this Agreement.

**(b)** If, following the Closing, Seller receives or becomes aware that it holds any property, right, claim, demand or asset which constitutes Purchased Assets, then Seller shall transfer such Property to Buyer as promptly as practicable for no additional consideration. If, following the Closing, Buyer receives or becomes aware that it holds any property, right, claim, demand or asset which does not constitute Purchased Assets, then Buyer shall transfer or return such property, right, claim, demand or asset which does not constitute Property to Seller as promptly as practicable for no additional consideration.

**(c)**    Buyer acknowledges that this Agreement and its terms will be made public as part of the Bankruptcy Case and filings therein.

**(d)**    Buyer acknowledges that notwithstanding its execution of this Agreement, and/or the reference to the "Effective Date" herein, Seller's execution of and entry into this Agreement and the other Transaction Documents is expressly subject to obtaining approval of the Bankruptcy Court and that, except as it relates to the Deposit, this Agreement is not valid until entry of a Bankruptcy Court Order approving said Agreement.

**(e)**    Buyer shall indemnify, defend and hold harmless Seller and Seller's Estate from and against any and all claims arising from to Buyer's operation of its business and the Property, and performance of its obligations under the Assumed Contracts after the Closing Date, including during and after the Gap Period under the Interim Association Agreement.

**19.**    __Refunds__.  Any refund request related to money received on an Active Executory Contract from June 2, 2023, through the date of the Closing shall be paid by Seller upon noticed motion and order of the Bankruptcy Court. Any refund request related to money received on an Active Executory Contract or Inactive Executory Contract after the Closing shall be paid by Buyer.  For refunds requested for amounts paid on an Active Executory Contract or Inactive Executory Contract for the period before June 2, 2023, a claim shall be filed in the U.S. Bankruptcy Court. Nothing in this paragraph shall be construed to prevent clients from requesting a refund for any reason.  Buyer shall not be in breach of this Agreement to the extent a client seeks a refund only from Seller; Seller shall not be in breach of this Agreement to the extent a client seeks a refund only from Buyer.

**20.**    __Miscellaneous.__

**(a)**    __Time of Essence__. Time is of the essence of each and every term, condition, obligation and provision hereof.

**(b)**    __Captions.__ Any captions or headings of the sections, subsections, paragraphs or subparagraphs of this Agreement are solely for the convenience of the parties hereto, are not a part of this Agreement, and shall not be used for the interpretation or determination of the validity of this Agreement or any provision hereof.

**(c)**    __No Obligation to Third Parties.__ Except as otherwise expressly provided herein, the execution and delivery of this Agreement shall not be deemed to confer any rights upon nor obligate either of Buyer or Seller to, any person or entity other than the parties.

**(d)**    __Exhibits and Recitals.__ The Exhibits attached hereto are hereby incorporated herein by this reference for all purposes. The Recitals set forth above are hereby incorporated by reference.

**(e)**    __Amendment to this Agreement.__ The terms of this Agreement may not be modified or amended except by an instrument in writing executed by each of the parties hereto, and may need approval by the Bankruptcy Court if the Trustee or Buyer believes the amendment or modification needs further court approval.

(f)     **Waiver.** Any term or condition of this Agreement may be waived at any time by the party that is entitled to the benefit thereof, but only if such waiver is evidenced by a writing signed by such party. No failure on the part of any party hereto to exercise, and no delay in exercising any right, power or remedy created hereunder, shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power or remedy by any such party preclude any other or further exercise thereof or the exercise of any other right, power or remedy. No waiver by any party hereto of any breach of or default in any term or condition of this Agreement shall constitute a waiver of or assent to any succeeding breach of or default in the same or any other term or condition hereof.

(g)     **Governing Law.** This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of California without regards to the rules of such state relating to the conflict of laws. Subject to **Section 21(i) below,** the parties hereto hereby submit to personal jurisdiction in the United States Bankruptcy Court Central District of California, Santa Ana Division, or the United States District Court for the Central District of California in the event that the Bankruptcy Court abstains from exercising or is otherwise unable to exercise jurisdiction.

(h)     **Bankruptcy Court Jurisdiction.** The parties hereto agree that the Bankruptcy Court shall have exclusive jurisdiction over all disputes and other matters relating to the interpretation and enforcement of this Agreement and the other Transaction Documents (and/or any ancillary document executed pursuant hereto) and/or the Property, provided, however, that if the Bankruptcy Court abstains from exercising, or declines to exercise jurisdiction with respect to any such action: (A) such abstention or refusal shall have no effect upon, and shall not control, prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such action, and (B) the parties hereto expressly agree that any disputes between such parties shall be submitted to any other court of competent jurisdiction in the Central District of California; Orange County, California.

(i)     **Fees and Other Expenses.** If either Party incurs attorneys' fees to enforce this Agreement because of a breach of this Agreement by the other Party, the prevailing Party shall be entitled to recover reasonable attorneys' fees as set forth by the court from the other Party.

(j)     **Entire Agreement.** This Agreement supersedes any prior agreements, negotiations and communications, oral or written, and contains the entire agreement between Buyer and Seller as to the subject matter hereof; provided, however, that this Agreement and the other Transaction Documents remain subject to the Sale Order or such Order related to the Sale of the Property as the Bankruptcy Court may enter, as applicable. No subsequent agreement, representation or promise made by either party hereto, or by or to an employee, officer, agent or representative of either party shall be of any effect unless it is in writing and executed by the party to be bound thereby.

(k)     **Successors and Assigns.** This Agreement shall be binding upon and shall inure to the benefit of the successors and permitted assigns of the parties hereto.

(l)     **Business Days.** As used in this Agreement, the term "Business Day" or "Business Days" shall be defined as any day on which national banking institutions in Orange County, California, are open for the transaction of banking business (excepting any Saturday or Sunday).

**(m)** **Signatures by Electronic Delivery.** Any and all documents to be executed by any party hereto (including this Agreement) may when executed be transmitted to the other party and to Escrow Holder (as applicable) by facsimile and/or by email of a .pdf or other electronic data format, and such facsimile and/or email of a .pdf or other electronic data format transmission shall constitute delivery of such document, provided, however, that the original of such document bearing the original signature(s) is sent on the date of the facsimile or email of the .pdf or other electronic data format transmission to the recipient via overnight courier for the next Business Day delivery.

**(n)** **Counterparts.** This Agreement may be executed in multiple counterparts, each of which shall be deemed an original, but all of which, together, shall constitute one and the same instrument.

**(o)** **Partial Invalidity.** All rights and restrictions contained herein may be exercised and shall be applicable and binding only to the extent that they do not violate any applicable laws, and are intended to be limited to the extent necessary to render this Agreement legal, valid and enforceable. If any term of this Agreement, or part thereof, not essential to the commercial purpose of this Agreement shall be held to be illegal, invalid or unenforceable by a court of competent jurisdiction, it is the intention of the parties that the remaining terms hereof, or part thereof shall constitute their agreement with respect to the subject matter hereof and all such remaining terms, or parts thereof, shall remain in full force and effect. To the extent legally permissible, any illegal, invalid or unenforceable provision of this Agreement shall be replaced by a valid provision that will implement the commercial purpose of the illegal, invalid or unenforceable provision.

**(p)** **No Construction Against Preparer.** No provision of this Agreement or the other Transaction Documents shall be construed against or interpreted to the disadvantage of any party by any court or other governmental or judicial authority by reason of such party's having or being deemed to have prepared or imposed such provision.

**(q)** **LIMITATION OF LIABILITY SELLER, THE ESTATE AND THEIR REPRESENTATIVES. THIS AGREEMENT, THE OTHER TRANSACTION DOCUMENTS, AND ANY CLAIM OF BUYER AGAINST SELLER AND/OR THE ESTATE SHALL BE EXPRESSLY LIMITED TO SELLER'S AND THE ESTATE'S INTEREST IN THE PROPERTY AND IN NO EVENT OR CIRCUMSTANCE WILL ANY OF SELLER, THE ESTATE OR THEIR RESPECTIVE EMPLOYEES, AGENTS, ATTORNEYS OR OTHER REPRESENTATIVES HAVE ANY LIABILITY FOR ANY CLAIM, CAUSE OF ACTION, OR OTHER LIABILITY ARISING OUT OF OR IN CONNECTION WITH ANY ONE OR MORE OF THE FOLLOWING: (1) THIS AGREEMENT, (2) ANY ONE OR MORE OF THE OTHER TRANSACTION DOCUMENTS, OR (3) ANY OTHER AGREEMENT CONTEMPLATED UNDER THIS AGREEMENT, WHETHER BASED ON CONTRACT, COMMON LAW, STATUTE, EQUITY, OR OTHERWISE. NOTWITHSTANDING ANYTHING IN THIS AGREEMENT OR THE OTHER TRANSACTION DOCUMENTS TO THE CONTRARY, IN NO EVENT OR CIRCUMSTANCE WILL SELLER, THE ESTATE OR THEIR RESPECTIVE EMPLOYEES, AGENTS, ATTORNEYS OR OTHER REPRESENTATIVES BE LIABLE FOR NOR SHALL BUYER SEEK ANY CONSEQUENTIAL, SPECIAL OR PUNITIVE DAMAGES OF ANY TYPE OR NATURE WHATSOEVER. THE PROVISIONS OF THIS SECTION 21(q) SHALL SURVIVE BOTH**

**THE CLOSING AND THE TERMINATION OF THIS AGREEMENT REGARDLESS OF THE BASIS OR REASON FOR ANY SUCH TERMINATION.**

**FURTHER, NOTWITHSTANDING ANY OTHER PROVISION IN THIS AGREEMENT OR THE OTHER TRANSACTION DOCUMENTS, THE LIABILITY OF SELLER HEREUNDER AND THEREUNDER SHALL BE NONRECOURSE. SELLER IS SELLING THE PROPERTY SOLELY IN HIS CAPACITY AS TRUSTEE APPOINTED IN THE BANKRUPTCY CASE, AND NO LIABILITY OR OBLIGATION SHALL BE ASSERTED AGAINST OR ACCRUE TO THE TRUSTEE INDIVIDUALLY AS A RESULT OF THE SALE OR OTHER TRANSACTIONS CONTEMPLATED HEREIN OR THE OTHER TRANSACTION DOCUMENTS OR OTHERWISE.**

     **(r)**     On a motion by Seller presented to the Bankruptcy Court presiding over this case, the court may enforce or direct compliance with this Agreement.

**(s)**     Richard Marshack is signing in his official capacity as the Chapter 11 trustee for the Estate and there shall be no scenario relating in any manner to the administration of the Debtor's case or this Agreement or this sale or the operation of Debtor's business where Buyer or any agents or representatives of the Buyer shall have any  recourse to Richard Marshack personally or to any professionals, agents and employees of the Debtor's business or the Estate and no recourse to members of the creditors committee or professionals of the creditors committee.  Buyer acknowledges that none of the above individuals or entities including the trustee in his official capacity or his personal capacity is making any representations or warranties or promises or covenants.

**Seller:**

RICHARD A. MARSHACK, Chapter 11 Trustee of the Litigation Practice Group


By: _____          Dated:

Richard A. Marshack, solely in his capacity as Chapter 11 Trustee

**Buyer:**

Morning Law Group, P.C.


By: _____          Dated:
        Joshua Armstrong
Its:____Managing Shareholder_____

**EXHIBIT A**

**SALE ORDER**

[Seller to Deliver at Closing]

**EXHIBIT A-1**

**LEASES**

[Buyer to Deliver at Closing]



**EXHIBIT A-2**

**PERSONAL PROPERTY**


[Buyer to Deliver at Closing]



**EXHIBIT A-3**

**RECEIVABLES**

[Buyer to Deliver at Closing]



**EXHIBIT A-4**

**PRE-PAYMENTS**

[Buyer to Deliver at Closing]



**EXHIBIT A-5**

**MODIFIED LEGAL SERVICE AGREEMENT**

[Buyer to Deliver at Closing]



**EXHIBIT A-6**

**INTELLECTUAL PROPERTY**

[Buyer to Deliver at Closing]



**EXHIBIT A-7**

**ASSUMED PERMITS**


[Buyer to Deliver at Closing]

**EXHIBIT A-8**

**BOOKS AND RECORDS**


[Buyer to Deliver at Closing]

**EXHIBIT A-9**

**LATER IDENTIFIED ASSETS**


[Buyer to Deliver at Closing]



**EXHIBIT 1-10**

**SCHEDULE OF ASSUMED CONTRACTS**

[Buyer to Deliver at Closing]



**EXHIBIT B**

**BILL OF SALE**

[Seller to Deliver at Closing]

**EXHIBIT C**

**CURE NOTICE – ASSUMPTION AGREEMENT**

[Buyer to Deliver at Closing]

**EXHIBIT "2"**

**CURE NOTICE – ASSUMPTION AGREEMENT**

1   Christopher B. Ghio (State Bar No. 259094)
    Christopher Celentino (State Bar No. 131688)
2   Yosina M. Lissebeck (State Bar No. 201654)
3   **DINSMORE & SHOHL LLP**
    655 West Broadway, Suite 800
4   San Diego, CA 92101
    Telephone:    619.400.0500
5   Facsimile:    619.400.0501
    christopher.ghio@dinsmore.com
6   christopher.celentino@dinsmore.com
    yosina.lissebeck@dinsmore.com
7

8   Special Counsel to Richard A. Marshack

9

10              **UNITED STATES BANKRUPTCY COURT**

11      **CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION**

12

13  | In re: | Chapter 11 |

14  THE LITIGATION PRACTICE GROUP,    Case No. 8:23-bk-10571-SC
15  P.C.,

16              **NOTICE OF POTENTIAL**
                **ASSUMPTION AND ASSIGNMENT TO**
16      Debtor.   **COUNTERPARTIES TO EXECUTORY**
                **CONTRACTS AND UNEXPIRED**
17              **LEASES OF THE LITIGATION**
18              **PRACTICE GROUP, P.C.**

19

20              **Assumption Hearing**
                Date:      [●], 2023
                Time:      [●]:00 [●].m. (Pacific Time)
21              Location:  Courtroom 9C
                           411 West Fourth Street
22                         Santa Ana, CA 92701
                                 or
23                          *via ZoomGov*
24

25

26          **PLEASE TAKE NOTICE** that on July 22, 2023, the Court entered an order [Docket

27  No. 320] (the "<u>Sale Order</u>") approving the sale of substantially all of the assets of the

28

                                            EXHIBIT "2"
                                            Page 67

Litigation Practice Group, P.C. (the "Debtor") to Morning Law Group PC(the "Buyer"), pursuant to the terms of that certain Asset Purchase Agreement (the "APA").  As set forth more fully in the Sale Order, the Court approved procedures for the assumption by the Debtor and assignment to the Buyer of certain executory contracts and unexpired leases (the "Potentially Assumed Agreements"), pursuant to § 365 of title 11 of the United States Code (the "Bankruptcy Code").[3]  The Potentially Assumed Agreements are described in **Exhibit A** attached to this Notice.  The amount shown on **Exhibit A** with respect to each Potentially Assumed Agreement is the "Cure Amount," which is the amount (if any) the chapter 11 trustee (the "Trustee") asserts is owed to cure any defaults existing under a Potentially Assumed Agreement.  The Potentially Assumed Agreements are those contracts and leases that the Trustee believes may be assumed and assigned as part of the orderly transfer of assets under the APA; however, the Buyer may choose to exclude certain of the Potentially Assumed Agreements from the list of executory contracts and unexpired leases that are ultimately assumed and assigned under the APA, as provided for in the APA.  Removal of a Potentially Assumed Agreement from this list will remove it from the Assumed Agreements being assigned to Buyer.  ***You may be a party to a Potentially Assumed Agreement and should carefully review this Notice in its entirety***.  **If you signed a contract with Litigation Practice Group regarding your debt, this Notice may affect you.  Please read this notice and the attached Exhibit A carefully, and please seek legal counsel if you do not understand the Notice."  If none of them would be affected by this Ex A, then no need to add.**

     **PLEASE TAKE FURTHER NOTICE** that if you object to the assumption and assignment of your Potentially Assumed Agreement (including an objection based on adequate assurance of future performance by the Buyer under the Potentially Assumed Agreement) or if you disagree with the Cure Amount shown for your Potentially Assumed Agreement on **Exhibit A** to which you are a party, you must file in writing with the United States Bankruptcy Court for the Central District of California, 411 West Fourth Street, Santa Ana, CA 92701, an objection (an "Assumption Objection") on or before **[●] at 5:00 p.m. (prevailing Pacific Time)**.  Any Assumption Objection must set forth the specific default or

---

[3] Unless otherwise defined herein, all references to "Section" or "§" refer to a section of the Bankruptcy Code.

defaults alleged and set forth any cure amount as alleged by you. If a Potentially Assumed Agreement is assumed and assigned pursuant to a Court order approving same, then unless you have filed an Assumption Objection, you will be paid the Cure Amount set forth herein, if any, and Buyer will assume (take over) your Agreement. Any counterparty to a Potentially Assumed Agreement that fails to timely file and serve an Assumption Objection shall be forever barred from asserting that a Cure Amount is owed in an amount in excess of the amount, if any, set forth in the attached **Exhibit A**.

**Any Assumption Objection must be filed with the Court and actually received by the Assumption Notice Parties (defined below) by no later than: (i) [●] at 5:00 p.m. (prevailing Pacific Time), (ii) such later date otherwise specified in the Cure Notice, or (iii) solely with respect to those counterparties to Potentially Assumed Agreements who are not initially served with a Cure Notice, seven days after service by overnight mail of such Cure Notice ("Assumption Objection Deadline").**

    **PLEASE TAKE FURTHER NOTICE** that any Assumption Objection you may file must be served on the following parties ("Assumption Notice Parties") not later than the applicable Assumption Objection Deadline: (i) general counsel to the Trustee: Marshack Hays LLP, 870 Roosevelt, Irvine, California 92620 (Attn: D. Edward Hays (ehays@marshackhays.com) and Laila Masud (lmasud@marshackhays.com)); (ii) special counsel to the Trustee: Dinsmore & Shohl LLP, 655 West Broadway, Suite 800, San Diego, California 92101 (Attn: Christopher B. Ghio (christopher.ghio@dinsmore.com)); (iii) counsel to the Official Committee of Unsecured Creditors: Fox Rothschild LLP, 10250 Constellation Boulevard, Suite 900, Los Angeles, California 90067 (Attn: Keith C. Owens (kowens@foxrothschild.com) & Nicholas A. Koffroth (nkoffroth@foxrothschild.com) ; (iv) counsel to the Buyer: [●]; Joshua Armstrong, INVICTUS ADVISORS LLLP, 2625 Townsgate Road, Suite 330, Westlake Village, CA 91361 (jarmstrong@invictusadvisors.com) (v) the Monitor, Nancy Rapoport, at nancy.rapoport@unlv.edu; and (vi) the Office of the United States Trustee ("U.S. Trustee"): 411 West Fourth Street, Suite 7160, Santa Ana, CA 92701 (Attn: Kenneth M. Misken

(Kenneth.M.Misken@usdoj.gov).

**PLEASE TAKE FURTHER NOTICE** that the Buyer shall be responsible for satisfying any requirements regarding adequate assurance of future performance that may be imposed under §§ 365(b) and (f) in connection with the proposed assignment of any Potentially Assumed Agreement. The Court shall hold a hearing on **[●] at [●]:00 [●].m. (prevailing Pacific Time) at 411 West Fourth Street, Santa Ana, CA 92701, in Courtroom 9C or via ZoomGov**, (the "Assumption Hearing") on any Objections and make its determinations concerning, among other things, §§ 365(b) and (f), including the adequacy of any proposed Cure Amount and adequate assurance of future performance under the Potentially Assumed Agreements. Parties wishing to make an appearance by Zoom for Government, a free service that provides audioconference capabilities, should review the Court's tentative rulings page, which can be accessed through https://www.cacb.uscourts.gov/judges/honorable-scott-c-clarkson. Parties should also consult the NOTICE OF VIDEO AND TELEPHONIC APPEARANCE PROCEDURES FOR JUDGE SCOTT CLARKSON'S CASES for specific procedures and further information.

**PLEASE TAKE FURTHER NOTICE** (i) that Objections may be resolved by the Court at the Assumption Hearing, (ii) except to the extent otherwise provided in the APA with the Buyer, pursuant to § 365(k), the Debtor and its estate shall be relieved of all liability accruing or arising after the effective date of assumption and assignment of the Potentially Assumed Agreements, and (iii) nothing contained herein shall obligate the Trustee or the Debtor's estate to assume any Potentially Assumed Agreement or to pay any Cure Amount.

**PLEASE TAKE FURTHER NOTICE THAT IF YOU DO NOT TIMELY FILE AND SERVE AN ASSUMPTION OBJECTION AS STATED ABOVE, THE COURT MAY APPROVE ASSUMPTION AND ASSIGNMENT OF THE POTENTIALLY ASSUMED AGREEMENTS WITH NO FURTHER NOTICE.**

**ANY COUNTERPARTY TO ANY POTENTIALLY ASSUMED AGREEMENT WHO DOES NOT FILE A TIMELY ASSUMPTION OBJECTION TO THE CURE AMOUNT FOR SUCH POTENTIALLY ASSUMED AGREEMENT IS DEEMED TO HAVE CONSENTED TO SUCH CURE AMOUNT.**

**PLEASE TAKE FURTHER NOTICE THAT CONSUMERS MAY ALSO RECEIVE A SEPARATE NOTICE CONCERNING THEIR "OPT-OUT" RIGHTS UNDER RULE 1.17 OF THE CALIFORNIA RULES OF PROFESSIONAL CONDUCT THAT MAY BE APPLICABLE TO A POTENTIALLY ASSUMED**

1   **AGREEMENT.  NOTHING CONTAINED IN THIS NOTICE IS INTENDED TO
ADDRESS OR MODIFY SUCH RIGHTS AND THIS NOTICE SHOULD BE READ**

2   **IN CONJUNCTION WITH ANY "OPT-OUT" NOTICE APPLICABLE TO
CONSUMERS.**

3

4

5   Dated: July [●], 2023                    Respectfully submitted,

6                                            **DINSMORE & SHOHL LLP**

7

8                                            *By:* /s/ _____
                                             Special Counsel to Richard A. Marshack

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT "3"**

**90 DAY CONSUMER NOTICE**

## NOTICE TO CONSUMERS

### In Re LITIGATION PRACTICE GROUP, PC
### Case No. 8:23-bk-10571
### 90-DAY NOTICE OF SALE AND FILE TRANSFER

Please be advised that pursuant to Court order entered July ___, 2023, Morning Law Group, P.C. (the "Purchaser") has agreed to provide you with legal services for which you originally signed up with the Litigation Practice Group, PC ("LPG"). In accordance with the Court's order and Rule 1.17 of the California Rules of Professional Conduct you have the following rights during the 90-Day Notice Period that ends on October/ November ___, 2023 ("Notice Period"):

### Your Current Agreement

You are receiving this Notice because LPG's records indicate that you are a party to a legal services agreement (the "Original Agreement") with LPG.

On March 20, 2023, LPG filed a bankruptcy case (the "Bankruptcy Case") in the United States Bankruptcy Court for the Central District of California (the "Bankruptcy Court"). On July [●], 2023, the Bankruptcy Court entered an order approving a sale of LPG's law practice to the Purchaser. The Bankruptcy Court also ordered that the Original Agreement must be "reformed" to remove provisions that may violate applicable law. We refer to your modified legal services agreement, which removes any provisions that violate applicable law, as the "Reformed Agreement."

In connection with the sale, the Purchaser intends to perform legal services on your behalf subject to the terms of the Reformed Agreement on an interim and, potentially, longer term basis.

### Your Rights Upon the Sale

California law gives you the right to "opt out" of the transfer of your Reformed Agreement to the Purchaser.

Under Rule 1.17 of the California Rules of Professional Conduct this Notice is intended to inform you that the Litigation Practice Group, PC's law practice is being transferred to the Purchaser. You have the right to retain other counsel; you may take possession of any client materials and property, as required by Rule 1.16(e)(1) of the California Rules of Professional Conduct; and if no response is received to this Notice within 90 days after it is sent, or if your rights would be prejudiced by a failure of the Purchaser to act during that time, the Purchaser may act on your behalf until otherwise notified.

## Your Three Options

➢ **1.  Opt-In**:

You may consent to the Purchaser providing you with legal services and opt-in to the transfer of your file by reviewing, signing, and returning the enclosed Legal Services Agreement directly to the Purchaser at the address or e-mail address provided below.  The enclosed Legal Services Agreement will then replace your Reformed Agreement.

➢ **2.  Opt-Out**:

If you do not want the Purchaser to provide you with legal services or have your file transferred to the Purchaser, you have the right to opt out and request a refund and a copy of your file by notifying the Purchaser within the Notice Period at the address or e-mail address provided below. If you choose to opt out, your Reformed Agreement with LPG will be rejected and terminated pursuant to applicable Bankruptcy Law. **PLEASE BE AWARE THAT YOUR MATTER MAY HAVE URGENT DEADLINES, SO YOU SHOULD SEEK LEGAL COUNSEL AS SOON AS POSSIBLE IF YOU ELECT TO OPT OUT.**

➢ **3.  Do Nothing Within the Notice Period**:

If you choose not to opt in or opt out, and you take no action during the Notice Period, you will be deemed to have opted in to representation by the Purchaser, and your file will be transferred to the Purchaser after the expiration of the Notice Period under the terms of your Reformed Agreement. Choosing to take no action during the Notice Period, however, does not prevent you from terminating the Purchaser's services and requesting a refund and a copy of your file at any time.

➢ **Personal Identifiable Information**

Your name and contact information (phone and e-mail address) will be provided to the Purchaser. Other personal identifiable information included in your client file (including but not limited to date of birth, social security number, and account information) will not be transferred to the Purchaser, unless you: 1) opt in; or 2) do nothing within the Notice Period, except as necessary to provide legal services before you take action. If you do nothing within the Notice Period, the Purchaser may have to access your legal file to provide services that might be needed to preserve your matter and your rights, and any such review will not be deemed a violation of this section.

**DURING THE NOTICE PERIOD, THE PURCHASER WILL ALSO HAVE THE RIGHT TO DETERMINE WHETHER IT WILL TAKE ASSIGNMENT OF, AND CONTINUE TO SERVICE, YOUR REFORMED AGREEMENT.  YOU WILL RECEIVE A SEPARATE NOTICE CONCERNING "ASSUMPTION AND ASSIGNMENT" PROCEDURES THAT ADDRESSES THAT PROCESS, WHICH YOU SHOULD READ CAREFULLY.  YOU MAY ALSO WISH TO CONSULT WITH AN INDEPENDENT ATTORNEY.**

LPG's bankruptcy estate has contracted with the Purchaser to provide interim services under your

Reformed Agreement until you opt in, opt out, the Purchaser elects to not take assignment of your Reformed Agreement, or the Notice Period expires.

Please contact the Purchaser directly at _____, Telephone: _____, or email address: _____, with all questions, your request to Opt In (with your signed Legal Services Agreement), or your request to Opt Out.

Sincerely,

[Signatory name]

Enclosure: Legal Services Agreement

EXHIBIT "3"
Page 75

**EXHIBIT "4"**

**LEGAL SERVICES AGREEMENT**

### Services Provided

Morning Law Group, P.C., a licensed law corporation and its employed and affiliated attorneys (collectively referred to in this agreement as "MLG") will provide legal services wherein it will represent you (this agreement will refer to you as "You" or "Your," as the case may be) in connection with disputes You (may) currently have with the creditors listed below in the section called "Enrolled Accounts" over any debts in the Enrolled Accounts You believe and advise MLG are invalid, inaccurate, or otherwise without a legal basis (collectively, the "Disputed Debts").   If any of the Enrolled Accounts include co-applicants, the co-applicants are included in the term "You" in this Agreement solely with respect to those Enrolled Accounts on which they are a co-applicant.  MLG is prepared to do the following as part of its representation of You:

- Assist You in handling communications with creditors and any related debt collectors in connection with any of the Disputed Debts identified below;
- Assess, and if appropriate dispute, the legal validity of the Disputed Debts identified below based upon information provided by You;
- Assist You in disputing and addressing erroneous or inaccurate information in connection with the Disputed Debts identified below;
- Represent You in the event a creditor or related debt collector files a lawsuit against You to collect payment of a Disputed Debt identified below;
- Defend You against any collection activity or lawsuit brought by a creditor or related debt collector on any Disputed Debt identified below;
- Initiate legal action in a court of competent jurisdiction against any creditor or related debt collector that violates any applicable state or federal law in connection with Disputed Debt identified below; and
- MLG does not engage in the practice of bankruptcy law.  If bankruptcy is something You are considering, we encourage You to seek independent legal advice from an attorney who practices bankruptcy law.

**MLG will use its best efforts to represent You as specified in this letter. However, pursuant to relevant Rules of Professional Conduct, by way of general information and as a disclaimer, MLG makes no representation or guarantee that it will accomplish all of the tasks identified herein given that some matters, information, and ability are outside and beyond MLG's control.**

MLG (or its local counsel as designated on a case-by-case basis) will serve as Your attorney for all purposes in connection with the disputes You (may) currently have related to the Enrolled Accounts and will be available to render legal assistance necessary to resolve these disputes.  Except as noted in the section "Description of Services to be Performed" below, the fees that are set forth below are flat fees that are all-inclusive, meaning they include MLG's attorneys' service fees, the service fees for local counsel (if applicable), and any costs that may be incurred such as court filing costs, messenger costs, copying, and postage.  MLG will not charge any additional fee or cost at any time during the duration of our representation of You relating to Your Disputed Debts.  Fees paid to MLG are in connection with and contemplation of the legal services

described herein and, unless prohibited by the applicable regulations or state law, are earned by MLG at the time they are paid and are for services rendered to You as set forth herein. For sake of clarification, where MLG does not employ attorneys licensed in Your jurisdiction, MLG will affiliate with competent local counsel on your behalf.  As always, the choice of whether to use the local counsel we select belongs to You. If You prefer to use different local counsel, please inform us.

You understand that You are hiring a California law firm that employs attorneys who are licensed to practice law in [38] states. You acknowledge that MLG performs services pursuant to the Fair Debt Collections Practices Act as well as other federal statutes and You have an issue which may arise thereunder. If You reside in a state outside of the 38 states in which MLG is licensed, MLGYou authorize MLG to affiliate with local counsel in the individual state where You reside to assist in Your representation. MLGAs always, the choice of such local counsel belongs to You.

### Co-Applicant(s)

If you are a co-applicant on any Enrolled Accounts, the terms of this Agreement apply to you only with respect to the Enrolled Accounts on which you are a co-applicant.

### Client Authorization

You authorize MLG to challenge, where applicable and based on the information You provide, each of the Disputed Debts listed below, which You believe and advise MLG to be in any way invalid, inaccurate, or otherwise without a legal basis. You also authorize MLG to obtain a copy of Your credit report to assist in the process of analyzing Your account and developing a strategy regarding the resolution of debts that are excessive or otherwise unauthorized by law and to communicate with the Enrolled Account creditors or related debt collectors on Your behalf. If required by the Enrolled Account creditor or related debt collector, you agree to provide us with a Power of Attorney for these limited purposes.  Although MLG will obtain a copy of Your credit report to provide the legal services specified in this agreement, You expressly understand and agree that MLG is not a credit repair organization, as further explained in the section "Services MLG DOES NOT Perform" below. Finally, You authorize MLG to communicate with You via email, text message, telephone, and facsimile. You can revoke any of the authorizations listed in this Client Authorization paragraph at any time by simply sending MLG a written request by letter or email.  For example, if you wish to revoke MLG's authorization to communicate with you by text message, simply send us a letter or email stating: "I am revoking my authorization for MLG to communicate with me by text message. Please acknowledge receipt."

You understand that failure to pay debts as they become due will adversely affect Your credit score and that unpaid debts will almost certainly continue to incur late fees and penalties on the accounts during our period of representation.

### Description of Services to be Performed

MLG will obtain Your credit reports, analyze them, and develop strategies for correcting Disputed Debts for which You should not be held legally responsible. Where appropriate, MLG will use existing laws and interact with creditors and credit bureaus on Your behalf to seek invalidation of Your Disputed Debts and removal of any verified invalid Disputed Debts from Your credit reports (please see "Services MLG DOES NOT Perform" below for further information on the differences between our services and a credit repair service). MLG will also interact with collection agencies, as applicable, to seek to invalidate Your Disputed Debts by requiring them to supply evidence of Your indebtedness to them, or any other legal mechanism(s). MLG will also investigate Your "delinquent" accounts in the Enrolled Accounts to determine potential methods for the invalidation of any such Disputed Debts or otherwise determine your legal liability for such debts, up to and including the initiation of lawsuits on Your behalf against the Enrolled Account creditors and their third-party debt collectors if supported by the documents and information we are provided.

In addition, if an Enrolled Account creditor or their debt collector files a lawsuit against You relating solely to the Disputed Debt (referred to in this Agreement as an "Enrolled Account Lawsuit"), MLG, and local counsel You approve, will represent You in such lawsuit (but excluding any appeals). If an Enrolled Account Lawsuit was initiated **after** the date You sign this Agreement and after at least one payment to MLG has been made in accordance with the schedule listed in this Agreement, MLG will not charge any additional fees for such representation. If, however, and Enrolled Account Lawsuit was initiated against You **before** the date You sign this Agreement and You choose to have MLG represent You, You must first pay MLG an additional fee of $500.00, which additional fee will also cover local counsel's fees, if applicable. Any costs incurred in an Enrolled Account Lawsuit will be paid by MLG out of the fees set forth below, including the fees of any local counsel with whom MLG affiliates on Your behalf in a jurisdiction in which MLG is not admitted to practice law.

Where appropriate, if legal fees are recovered from an adverse party in an Enrolled Account Lawsuit, MLG will credit You with a pro rata portion of the legal fees paid with respect to the debt settled and the remainder will be paid directly to MLG.

MLG'MLG

You will, however, be responsible for any damages resulting from any Enrolled Account Lawsuits or any settlements reached with Your consent during such lawsuits. To this end, MLG is not providing debt settlement services, and the fees paid under this Agreement are not being escrowed for settlement of any debts, but as payment for legal services provided by MLG or by local counsel as applicable. For further explanation of the differences between debt settlement services and legal services for settling a lawsuit, see the next section.

## **Services MLG DOES NOT Perform:**

MLG does not, as part of its representation of You, include the following services: (i) tax, financial planning, or accounting advice (note that the discharge of debt can trigger a taxable event, so You should make an appointment with an appropriate tax professional before agreeing to MLG's suggested resolution of a Disputed Debt or an Enrolled Account Lawsuit, (ii) modification,

collection, or improvement of Your credit reports or credit score, or credit repair services (see below), (iii) bankruptcy services, (iv) except as provided for in this Agreement, representation in any matter before any court or arbitration hearing, including but not limited to foreclosure proceedings; (v) guarantee elimination of harassment or collection calls from credits or collectors (though we will do our best to cause them to be ceased); or (vi) debt settlement services (see below). MLG does not guarantee any services nor any outcome in Your (or any) legal matter.

You expressly understand and agree that MLG is not a credit repair organization, is not engaged in credit repair, and will not be undertaking any work as to Your credit repair, even though MLG's legal services towards resolving Your Disputed Debt may have an indirect effect on Your credit, whether negative or positive (i.e., your credit may get better or worse). But that debt resolution legal work is different than the work done by a credit repair organization, which works with the specific purpose of improving your credit score, dealing with credit report issues regardless of invalidity or illegality of the debt, and helping you develop smart credit habits. MLG does not provide credit repair services. If that is the work that You need, we encourage you to seek the advice of a credit repair organization or credit repair attorney as soon as possible.

You also expressly understand and agree that MLG is not providing debt settlement services, even though MLG's legal services may involve settling an Enrolled Accounts Lawsuit, which may involve a debt. For the sake of clarity, although the terms sound similar, settlement of a lawsuit is different from debt settlement services. A debt settlement service provider negotiates directly with a creditor to settle a specific debt on the client's account. A lawyer representing a client in a lawsuit defends the client from the creditor's claims and may negotiate settlement of the lawsuit, which can involve agreeing on the amount of the debt the client will pay, but also on claims relating to attorneys' fees, costs, confidentiality, and other rights the client may have. With debt settlement, there is no lawsuit to defend, no court filings to prepare, and lawyers might not be involved. Unless also licensed to practice law, debt settlement service providers cannot advise clients on the law, cannot defend clients in court, and cannot initiate a lawsuit on a client's behalf. By contrast, lawyers representing clients can, and do, advise clients on the law, resolve legal issues regarding disputed debts, and, if necessary, represent clients in lawsuits. MLG is providing You with legal services, not debt settlement services, and the fees paid under this Agreement are for the services of MLG's attorneys. Again, MLG, or local counsel, will not settle any Enrolled Account Lawsuit without your prior written consent.

## Fees

You will pay the fees set forth below for the legal services provided by MLG, which are outlined above. MLG will not charge or collect any other fee or cost beyond the flat fee set forth below (except for the $500 charge for a lawsuit that was initiated prior to Your signing this Agreement and for which you consent to MLG and local counsel, if applicable, representing you). This flat fee includes MLG's attorney services fees, local counsel's service fees (if applicable) and any costs, associated with MLG's representation of You, such as court filing costs, messenger costs, copying, and postage, process server fees, administrative costs, or any other vendor fees necessary for providing the services. Each payment of a portion of this fee is not escrowed but rather is earned when such portion of the fee is received by MLG. This fee does NOT, however, include

any settlement that You may have to pay to any creditor if You opt to settle a debt prior to or during the course of an Enrolled Account Lawsuit. As explained previously, MLG will not settle any Enrolled Account Lawsuit without your express prior written consent.

## Secured Debt

If You incur any debt that is legally deemed "secured" (which is subject to and governed by a security interest), such as a car loan, in which you agree that a lender has a right to repossess the vehicle or other secured item if you do not pay, You understand that the item may be repossessed or You may otherwise lose possession of the item while MLG works its process to challenge and dispute the underlying debt. MLG does not guarantee that it will be able to challenge all of your debts, whether those debts are secured (the creditor has a right to foreclose) or unsecured (the creditor has no such right).

## Actions Required of You

You expressly understand and agree to provide MLG (or local counsel if applicable and as instructed by MLG) with all correspondence You receive from any creditor, credit bureau, attorney, or court of law. You further agree to keep a log of all communications, including telephonic and electronic communications, from any creditor or credit reporting agency to You from the date You execute this Agreement until the conclusion of MLG's representation of You. The "log" should include the date and time of any such calls or emails, the name of the person calling or emailing and the company they work for (if known), how long the call lasted, and accurate details of what was said by You and the caller.

You expressly understand and agree to: provide MLG with all information and documents regarding the debt(s) You seek to modify, including, to the best of your knowledge, the current account balance and the name of the creditor and account number; and all information related to the debt as requested by MLG. These obligations continue until the end of MLG's representation of You (see the Termination section below), so You should provide MLG with anything that relates to the debts for which you are seeking MLG's help to resolve.

You expressly understand and agree that all information provided by You must be truthful and accurate. MLG will use reasonable efforts to verify the information You provide but that does not relieve You of the obligation to be accurate and truthful. You will forward all correspondence from creditors and collection agencies, including collection letters, demands and complaints within five (5) days to MLG. If you have access to email and the ability to scan or take pictures of the correspondence, You can email it to our office at: [INSERT EMAIL], or fax it to us at [INSERT FAX]. Alternatively, You can mail the correspondence to our address [INSERT ADDRESS], however, due to the delays that can occur with mail delivery, we encourage you to send it priority mail. If a creditor or collection agency telephones You, You agree to refer all such calls to MLG. If a creditor or collection agency engages in harassing or abusive conduct, You will promptly notify MLG and provide complete and accurate information regarding such contacts.

You expressly understand and agree that You will promptly respond to all requests, communications, or documentation from MLG or its representatives (in other words, within five business days of receiving such requests, communications, or documentation) and that You will promptly provide MLG with any change of address or other contact information.

You expressly understand and agree to make payments as set forth in this Agreement, with the amount of those payments set forth in the schedule that is attached to this Agreement. You agree to make all the payments on the designated dates, and You agree to timely and fully pay all debt modification resolutions negotiated by MLG and approved by You.

You expressly understand and agree that communication with MLG and personnel (including counsel and local counsel) engaged by MLG to act on Your behalf is of paramount importance. MLG cannot provide You with proper representation and service if You cease or fail to communicate with MLG or its agent(s). If MLG attempts to contact You and is unsuccessful because You do not answer, timely return calls, or respond to communication, You understand and acknowledge that such (in)action can have significant consequences, including potential judgments or garnishments. If such (in)action occurs more than three (3) times or if You do not respond within thirty (30) days of MLG's efforts to contact You, MLG reserves the right to cease representing You and to terminate this Agreement, in accordance with relevant state bar ethical and court obligations and considerations.

Your participation in defense of an Enrolled Account Lawsuit is not only welcome but required as part of our Agreement to represent You.  Your participation may include, without limitation, responding to communications from MLG in a timely manner, providing truthful and accurate information, reviewing court filings, participating in settlement negotiations, and being available for any required legal proceedings, such as court hearings or depositions.

**Right to Conduct Business Electronically and Contact You**

You agree that MLG will conduct its business primarily, if not exclusively, through electronic and telephonic means and You consent to MLG contacting You electronically and telephonically. You further agree that MLG may transmit data, including that regarding Your credit profile, electronically in accordance with its privacy policy provided with this Agreement.  You further agree that any electronic communication carries the risk of disclosure to a third party and that if MLG is using commercially reasonable means to protect such information in accordance with its privacy policy, then any such inadvertent disclosure of information will not give rise to additional damages against MLG. A facsimile or email transmission of this signed Agreement, via an email attachment or otherwise, will be as valid as the original signed Agreement. This Agreement may not be modified except in writing by both parties.

**Malpractice Insurance**

MLG hereby discloses that it maintains a malpractice insurance policy that covers and insures its representation of You. If You desire to make a claim against that insurance policy, You must first contact MLG and disclose Your claim and the nature of the claim, at which point MLG agrees to

assist You in obtaining any and all information necessary to prepare a file a claim. Any claim brought against MLG must be brought within six (6) months of the claimed offense.

### Applicable Law and Confidentiality

You understand and agree that MLG is based out of the State of California, is a licensed law corporation under the State Bar of California, and that California law applies to this Agreement. You further understand that MLG is bound to strict rules of confidentiality and attorney-client privilege in connection with the rules applicable to attorneys licensed to practice law in the State of California. You further understand and agree that You have sought the representation of MLG with full knowledge of its location and licensing, and that MLG works with other/local/outside attorneys licensed in nearly all 50 states and the District of Columbia as affiliated counsel to allow MLG to provide a complete representation of You in nearly every state in which You are sued or in which a dispute might arise. You have the right to know the licensed attorney with whom MLG has affiliated in any state and at any time but understand and agree that MLG may choose to change the local attorney with whom it is affiliated in any given jurisdiction, always provided only that MLG shall have an affiliated attorney engaged to represent Your interests and always provided that any change in attorney shall not cause a delay that materially affects your rights. At any time that You would like to know the identity of local counsel who is working with MLG on Your file, please contact us. As part of our protocol, we often introduce You to local counsel as the matter develops. As the client, You have the right to local counsel satisfactory to You.

This Agreement constitutes the entire agreement of MLG and You relating to MLG's representation of You and the scope of services to be performed. Nothing that anyone has said to You before You sign this Agreement relating to its terms, the scope of MLG's services to be performed, or any guarantees of what MLG will do, whether made by MLG or any of its employees or agents, will become a part of this Agreement unless whatever MLG or its employees or agents has said is written into this Agreement itself. You have read and understand this Agreement and are entering into it after full investigation and are not relying upon any statement or representation from MLG or any of its employees or agents, that is not written in this Agreement.

Fee Dispute Resolution: If You are a California resident, pursuant to California law, You have the option of asking for mandatory fee arbitration with the appropriate local bar association program for any fee disputes. If You are disputing the fees to be paid to MLG, You must initiate the mandatory fee arbitration within the applicable time period allowed in which to bring a civil action for judicial resolution of a fee dispute. If MLG claims You owe an outstanding balance, it must provide to you a "Notice of Client's Right to Fee Arbitration" form approved by the California State Bar before or at the time of filing a lawsuit, or other proceeding to collect the amount. You will then have the option of asking for mandatory fee arbitration with the appropriate local bar association program within 30 days of receiving that notice, or with the California State Bar if the appropriate local bar association does not offer mandatory fee arbitration. If you fail to request the mandatory fee arbitration within 30 days, You will have waived Your right to arbitration, and MLG may take legal action to collect the fees or costs.

Arbitration is considered to be an efficient and less costly method of resolving disputes. If You choose arbitration as a forum, the arbitration result will be non-binding unless You and MLG both agree that the arbitration is binding, in which case the results are final.  Depending upon the amount of the fee dispute, the arbitration panel will consist of either a single attorney arbitrator or a panel of three arbitrators, one member of which is not an attorney.  Arbitrators are usually chosen by an independent arbitration association and are impartial as well as being familiar with the areas of law and/or facts involved in the dispute.  Should there be a dispute regarding fees, the law of California shall apply in arbitration as well as civil litigation. If You are not a California resident, the laws and rules of Your state of residence will apply in any fee dispute.

**<u>Termination</u>**

You have the right to terminate this Agreement and MLG's representation at any time by providing us a written notice, such as a letter, fax, or an email stating You wish to terminate MLG's representation of You, which termination will take effect three (3) days after the date of the notice. Please note that any payment due within three days of the date of written termination shall be processed and shall not be refunded. Your notice of termination must be sent to one of the following:

[INSERT ADDRESS, FAX, AND EMAIL]

Subject to relevant state bar ethical and court obligations and considerations, and upon written notice, MLG has the right to terminate this Agreement and its representation of You for the following reasons:  (1) MLG completes the services it is to perform under this Agreement, such as by resolving the Disputed Debts; (2) MLG determines the Disputed Debts are valid so that no challenges can be made to them leaving no further services for MLG to perform; or (3) for any of the reasons listed in the Client Acknowledgements section below.

**Client Acknowledgements**

By signing this agreement, You acknowledge that MLG has not instructed You to breach any contract, fail to make any required payment, or fail to perform any obligation You have lawfully incurred; in particular, you acknowledge that MLG has not instructed you to stop payment on any debts.

MLG reserves the right to terminate this Agreement if (a) required by the State Bar of California Rules of Professional Conduct or the state bar rules of the local counsel's state, if applicable, (b) You refuse repeatedly to communicate with MLG or to respond to reasonable requests for information necessary to represent You in an effective way, (c) You fail to make timely payment of the amount due under this Agreement, or (d) Your payments are returned (i.e., not accepted by the applicable creditor or debt collector or their financial institution) more than two times for any reason (such as for insufficient funds or account information errors). MLG will not pay any of the debts identified below and does not guarantee that any debt You now have or may incur will be invalidated or settled in association with MLG's representation of You.  If You terminate this Agreement according to the procedures stated in the Termination section, You shall not be responsible for any payments due after the date of termination except for any payment due within three days of the date of written termination, which payment shall be processed and shall not be refunded.

If, during the course of representation, MLG believes a creditor or agent of any creditor may have violated a federal or state consumer protection law (including, but not limited to, the Fair Debt Collection Practices Act or Truth in Lending Act) with respect to You, You authorize MLG to pursue such claim against such party on Your behalf. You recognize that MLG may incur additional attorney fees in pursuing such a claim. MLG may recover any additional fees from the creditor using federal or state consumer protection laws that permit attorney's fees to be recovered from the creditor or creditor's agent if the claim is successful. If a debt listed hereon is settled together with a claim against the creditor for a violation of consumer protection law, and the creditor pays MLG's attorney's fees incurred in pursuing the claim, MLG may credit You with a pro rata portion of fees paid with respect to the debt settled.

**You may cancel this contract without penalty or obligation at any time before midnight of the 3rd business day after the date on which You signed the contract. A separate though related "Notice of Right to Cancel" is being provided to You contemporaneous with this Agreement. See the attached Notice of Cancellation form for an explanation of this right.**

| | |
|---|---|
| Your Signature: | {SIGNATURE} |
| Date: | {SIGNDATE} |
| Co-Applicant Signature: | {COSIGNATURE} |
| Date: | {COSIGNDATE} |

**MORNING LAW GROUP, P.C.**

[INSERT Contact Info]

Program Acknowledgements

The monthly payments I am making go towards Morning Law Group, P.C. attorney representation fees.

Initial:

{{INITIAL}}

The attorney fees I am paying to Morning Law Group, P.C. are not monies that will be used to pay my creditors. These attorney fees do not accumulate towards a settlement, and they will not be used to pay my creditors / debts.

Initial:

{{INITIAL}}

As explained in the Agreement, Morning Law Group, P.C. is a law firm specializing in debt resolution, NOT debt settlement. I understand the difference as explained in this Agreement.

Initial:

{{INITIAL}}

If I receive a lawsuit on an enrolled account (called an Enrolled Account Lawsuit in this Agreement), Morning Law Group, P.C. will represent me and handle all legal proceedings at no additional cost, except if the Enrolled Account Lawsuit was initiated before I signed this Agreement, in which case I must pay an additional $500.

Initial:

{{INITIAL}}

I understand that if any of the enrolled debts are secured debts, such as auto loans or loans for any other type of collateral, those items may be repossessed and that MLG may not be able to stop that repossession.

Initial:

{{INITIAL}}

**Enrolled Accounts**

{Creditor List}

## <u>Client Intake Form</u>

**Name:** {FULLNAME}
**Address:** {FULLADDRESS}

**Home Phone:** {PHONE}
**Cell Phone:** {PHONE3}
**Email:** {EMAIL}
**Last 4 SSN:** {ENCSSN}

**Schedule of Payments**

I agree to this payment schedule – **Client Initials:** {INITIAL}

{Draft Schedule}



**Electronic Payment Authorization**

| | |
|---|---|
| **Bank Name:** | {BANKNAME} |
| **Name on Account:** | {NAMEONACCT} |
| **Account Type:** | {ACCTTYPE} |
| | Other (specify: {INPUT}) |
| **Routing Number:** | {ROUTINGNUM} |
| **Account Number:** | {ACCOUNTNUM} |
| **Next Payment Date:** | {PM1_DATE}          **Amount:** ${PM1} |
| **Recurring Payment Start Date:** | {StartDate} |

By signing below, I authorize and permit MLG or their designees to initiate electronic funds transfer via an Automated Clearing House system (ACH) from my account listed above. I will also provide MLG with a voided check or savings deposit slip.

If necessary, MLG shall make adjustments if errors have occurred during the transaction. The monthly date of the draft is listed above; however, if the draft date falls on a weekend or bank holiday, the debit transaction will take place on the next business day. This authority will remain in effect until MLG is notified by the Client in writing at least three (3) days prior to the next scheduled draft date that Client is terminating this Agreement. If the debit is returned because of non-sufficient funds or uncollected funds, then the originator and its financial institution may reinitiate the entry up to two (2) times. MLG

**Acknowledgment of Refunds & Draft Date Changes**

ACH Refunds: If a refund is due to You, such refund will be made through the ACH process only. Refunds may take up to 10 days to process. In the event Your EFT or draft is returned from Your bank unpaid, You agree that a fee of $25.00 or as allowed by law may be charged to Your account via draft or EFT, if permitted by applicable laws and state bar rules. Furthermore, You affirm that You are authorized to execute this payment authorization and that the above information is true and correct. Draft Date Changes: You may stop any ACH debit by providing written notice to MLG of termination of this Agreement at least three (3) business days prior to the scheduled payment. If You should need to notify MLG of Your intent to terminate and/or revoke this authorization, You must notify MLG in writing not less than three (3) business days prior to the questioned debit being initiated.

| | |
|---|---|
| **Client Signature:** | {SIGNATURE} |
| **Date:** | {SIGNDATE} |
| **Printed Name:** | {FULLNAME} |

**Preauthorized Checking and ACH Authorization Form**

**Account Owner Name:** {NAMEONACCT}

**Address:** {ADDRESS} {ADDRESS2}   **City:** {CITY}  **State:** {STATE}  **Zip:** {ZIP}

**Mobile Phone #:**   {PHONE2}   **E-Mail:**   {EMAIL}

## DESIGNATED BANK ACCOUNT INFORMATION

**Bank Name:** {BANKNAME}

**Name as it appears on bank ACCOUNT:**   {NAMEONACCT}

**Routing Number:** {ROUTINGNUM}  **Account Number:** {ACCOUNTNUM}  **Checking or Saving:** {ACCTTYPE}

## DESIGNATED CREDIT/DEBIT INFORMATION

**Card Holder Name:** {CC_NAME}

**Card Number:**   {CC_NUM}

**Expiration Date:**   {CC_EXP}

**CVC:**   {CC_CVV}

## DESIGNATED ACCOUNT PAYMENT AUTHORIZATION SCHEDULE

**Total Amount of Debit:**   ${PM1}   **Date of Next Debit:**   {PM1_DATE}

I hereby apply for and agree to establish a non-interest bearing special purpose account (the "Account") with a bank ("Bank") selected by MLG and/or its successors for the purpose of accumulating funds to pay for such goods and services as I so direct, or any other service provider selected by MLG, to perform. This application is subject to Bank's customer identification program, as required by the USA PATRIOT ACT and other applicable laws, and accordingly, I hereby represent that the above information is true and complete to the best of my knowledge and

belief. The bank account information provided above may be subject to account validation processes to include pre-notation and a $0.01 micro-deposit.

I hereby authorize Bank, directly or any other service provider selected by MLG, to administer the Account on my behalf by (a) periodically transferring and depositing funds to the Account, via any payment media currently in use, and (b) periodically disbursing funds from the Account pursuant to instructions that I may give from time to time.  I hereby authorize payments from the Account for the fees and charges provided for in this application and in the agreement.  I hereby grant permission for Bank to share information regarding the Account with any service provider to facilitate the transactions I may initiate that involve the Account, and with any other party that is essential to the administration of the Account on my behalf.  My signature below provides permission to be contacted by phone at the number provided with this authorization.  A payment reminder may be sent to my phone number via text messaging prior to the payment schedule above.

This authorization shall remain in full force and effect until I provide a verbal or written termination notice to MLG or such other service provider as is selected by MLG. Any such notice, and any other written notice that is provided for in this Application or the Agreement, shall be sent to MLG directly at the address set forth in the Agreement.

Account Holder's
Signature:                    {SIGNATURE}            Date:    {SIGNDATE}