D. EDWARD HAYS, #162507
ehays@marshackhays.com
LAILA MASUD, #311731
lmasud@marshackhays.com
BRADFORD N. BARNHARDT, #328705
bbarnhardt@marshackhays.com
MARSHACK HAYS LLP
870 Roosevelt
Irvine, California 92620
Telephone: (949) 333-7777
Facsimile: (949) 333-7778

Attorneys for Chapter 11 Trustee
RICHARD A. MARSHACK

## UNITED STATES BANKRUPTCY COURT

### CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>THE LITIGATION PRACTICE GROUP P.C.,<br><br>　　　　Debtor. | Case No: 8-23-bk-10571-SC<br><br>Chapter 11<br><br>MOTION TO APPROVE COMPROMISE BETWEEN TRUSTEE AND AZZURE CAPITAL LLC; MEMORANDUM OF POINTS AND AUTHORITIES; REQUEST FOR JUDICIAL NOTICE; AND DECLARATION OF RICHARD A. MARSHACK IN SUPPORT<br><br><u>Hearing:</u><br>Date:　September 13, 2023<br>Time:　1:30 p.m.<br>Judge: Hon. Scott C. Clarkson<br>Place: Courtroom 5C – Via ZoomGov<br>　　　　411 W. Fourth Street<br>　　　　Santa Ana, CA  92701 |

TO THE HONORABLE SCOTT C. CLARKSON, UNITED STATES BANKRUPTCY JUDGE,

THE OFFICE OF THE UNITED STATES TRUSTEE, AND ALL INTERESTED PARTIES:

      Richard A. Marshack, in his capacity as Chapter 11 Trustee ("Trustee") of the Bankruptcy

Estate ("Estate") of The Litigation Practice Group P.C. ("Debtor"), has reached a settlement

agreement ("Agreement") with Azzure Capital LLC ("Azzure"), (collectively, Trustee and Azzure

are referred to as the "Parties") to fully resolve all issues, disputes, liabilities, and claims existing

between them regarding the issues described below. The Agreement avoids the cost and risk of

litigation, and in the business judgment of Trustee is in the best interest of creditors and the Estate.

Trustee requests that this Court approve the compromise set forth in the Agreement.

## 1.    Summary of Argument

      A bankruptcy trustee's proposed compromise should be approved if it is in the best interest

of the estate and is "fair and equitable" for creditors. Further, a bankruptcy trustee may exercise his

or her business judgment in agreeing to a proposed compromise. Prepetition, Azzure made a secured

loan to Debtor in the total principal amount of $2.55 million. Azzure contends that the amount due

under this loan now exceeds $5 million ("Azzure Loan").

      Trustee disputes the amount owed on multiple grounds including, but not limited to, whether

the embedded annual 170% fixed interest rate in the Loan is enforceable against Debtor under

California law and whether the lien created and previously-filed UCC-1 assigned to Azzure properly

perfected its lien. The perfection issues alone are novel and will present a matter of first impression

if Trustee is required to litigate the allowance of the Azzure claim and the validity, priority, and

extent of its lien.

      In Trustee's business judgment, the proposed compromise reflects a fair resolution of the

dispute that benefits both the estate and Azzure without the attendant risk of litigation. In order to

resolve the disputes, the Parties have entered into an agreement which provides that: (1) Azzure will

have an allowed secured claim of $3.5 million ("Compromised Secured Claim"); (2) on account of

the Compromised Secured Claim, Trustee shall pay Azzure $1.9 million[1] with the lien securing the

---

[1] This amount shall be paid prior to the unsecured claims of all post-petition lenders that received super-administrative priority status and from the sale proceeds.

MOTION TO APPROVE COMPROMISE WITH AZZURE

4887-5831-6646

balance of the Compromise Secured Claim - $1.6 million - being avoided, recovered, and preserved for the benefit of the Estate; (3) Azzure shall retain only a $1.6 million unsecured claim against the Estate; and (4) limited releases for actions arising from the Azzure Loan. A true and correct copy of the Agreement is attached as **Exhibit 1** to the Declaration of Richard A. Marshack ("Marshack Declaration").

## 2.    Pertinent Factual Background

### A.    Azzure's Prepetition Loan and Security Interest

On or around February 7, 2023, Azzure made a secured loan to The Litigation Practice Group P.C ("Debtor") in the total principal amount of $2.55 million ("Azzure Loan"), which loan was evidenced by a promissory note issued to and for the benefit of Azzure, granting a security interest to Azzure in certain "Collateral" defined in Section 9 of that promissory note ("Note").[2]

Azzure asserts that the Azzure Loan has a present balance due of over $5 million which includes accrued interest as set forth in the Note, plus attorneys' fees and costs, as permitted under New York law.[3] Trustee disputes this contention which includes a dispute whether the embedded annual interest rate on Azzure's Loan is enforceable against this California Debtor, and asserts that the amount due on Azzure's claim is substantially less than the $5.1 million figure Azzure asserts.

Azzure further asserts that the security interest memorialized in the Note was perfected by the assignment of an already-filed UCC-1 Financing Statement, filed under number U210050853928 on May 28, 2021 ("UCC Financing Statement"), which expressly lists "The Litigation Practice Group P.C." as one of the debtors.[4] Trustee disputes that Azzure's security interest has been properly perfected by the assignment of the previous UCC Financing Statement referenced above which was originally filed reflecting Cobalt Funding Solutions as the secured party, and then assigned to Bae Enterprises, Inc., prior to its assignment to Azzure.

---

[2] Attached as Exhibit 2 to the Request for Judicial Notice is a true and correct copy of the proof of claim filed by Azzure on July 24, 2023, as claim no. 127-1 ("Azzure POC"). A copy of the Note is attached to the Azzure POC as Exhibit 1, on pp. 5-14.

[3] RJN, Ex. 1, p. 15-24.

[4] RJN, Ex. 1, p. 38.

MOTION TO APPROVE COMPROMISE WITH AZZURE

4887-5831-6646

**B.     Bankruptcy Filing and Sale of Substantially All Assets of Debtor**

On March 20, 2023, The Litigation Practice Group P.C. ("Debtor") filed a voluntary petition under Chapter 11 of Title 11 of the United States Code, initiating bankruptcy Case No. 8:23-bk-10571-SC in the United States Bankruptcy Court for the Central District of California, Santa Ana Division.

On March 30, 2023, as Dk. No. 21, the United States Trustee filed a motion to dismiss or convert the case under 11 U.S.C. § 1112(b) for failure to comply with the U.S. Trustee guidelines and requirements for a chapter 11 case.

On April 4, 2023, Debtor filed its schedules and statements. Docket Nos. 32-34, 36; *see also* Docket Nos. 52-54 (amended schedules and statements).

On May 4, 2023, the Court entered an "Order Directing United States Trustee to Appoint Chapter 11 Trustee." Docket No. 58. Richard A. Marshack was appointed as the Chapter 11 trustee of the Debtor's estate. Docket Nos. 62-65.

On July 7, 2023, as Dk. No. 191, Trustee filed a sale motion in the Bankruptcy seeking to sell substantially all of Debtor's assets including, leases, equipment, furniture, consumer client accounts, prepayments, legal service agreements, intellectual property, pending licenses, and certain proprietary property, all of which is defined in Section V.A. of the sale motion ("Sale Motion").

By Order of July 22, 2023, the Court authorized Trustee's sale of the Debtor's property (Dk. No. 320).

The Trustee disputes the secured status and amount owing under the Azzure Loan. In Order to avoid further litigation, the Parties entered into an Agreement to resolve the disputes between them relating to the Azzure Loan. *See*, Marshack Declaration, Exhibit 1.

**3.     Key Terms of the Agreement**

THE FOLLOWING IS A PARTIAL REPRODUCTION OF THE AGREEMENT FOR CONVENIENCE PURPOSES ONLY AND SHALL NOT CONSTITUTE A BASIS FOR INTERPRETATION OF THE AGREEMENT – THE PRECISE LANGUAGE OF THE AGREEMENT CONTROLS THE AGREEMENT BETWEEN THE PARTIES:

MOTION TO APPROVE COMPROMISE WITH AZZURE

4887-5831-6646

**A.      The Azzure Loan.** Azzure will have an allowed secured claim in the total amount of $3.5 million dollars ("**Compromised Secured Claim**").

**B.      Use of and Payment on Azzure Loan.** Trustee shall pay to Azzure $1.9 Million of the Compromised Secured Claim from the proceeds of sale, and which shall be paid prior to the unsecured claims of all post-petition lenders that received super-administrative priority status. The allowed lien securing the $1.6 million balance of the Compromised Secured Claim shall be avoided, recovered, and preserved for the benefit of the Estate. Azzure shall retain a $1.6 million unsecured claim. All other claims by Azzure shall be disallowed.

**C.      Priority of the Compromised Secured Claim**. The Compromised Secured Claim shall be first-in-priority with respect to all of the Bankruptcy estate's debts and liabilities.

**D.      Bankruptcy Court Approval.** This Agreement is subject to approval by the Bankruptcy Court. Trustee will prepare and file a motion under Bankruptcy Rule 9019 seeking approval of this Agreement. In the event the Bankruptcy Court does not approve this Agreement, this Agreement shall be null and void and of no force and effect and the rights of all Parties are specifically reserved as if this Agreement had not been entered into.

**E.      Releases.** Except for the obligations created by this Agreement, and in consideration of the execution and delivery of this Agreement, and in exchange for valuable consideration, the Parties generally release and fully discharge each other, and their predecessors in interest, successors in interest, assignors, assigns, insurers, and attorneys, from any and all liability or claims arising from the Azzure Loan. The Release shall be binding upon the Debtor and the Debtor's Estate (including without limitation any other Chapter 7 or Chapter 11 trustee appointed or elected) to serve as the Estate's representative.

**F.      Statutory General Release**. The Parties specifically waive and relinquish all rights and benefits afforded by Section 1542 of the California Civil Code, which provides as follows:

> **A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.**

The Parties' waivers of all rights and benefits afforded by Section 1542 is done with the Parties' understanding and acknowledgement of the significance of such a specific waiver of Section 1542. Notwithstanding the provisions of Section 1542, and for the purpose of implementing a full and complete release, the Parties expressly acknowledge that this Agreement is intended to include in its effect, without limitation, all claims that a Party knows or suspects to exist in such respective Party's favor at the time such Party executes this Agreement, which contemplates the extinguishment of any such claims. This waiver also applies to any other relevant re-codification or similar laws implemented hereafter substantially covering the subject matter of Section 1542. The Releases set forth in ¶ 1(E) and the waivers of Section 1542 set forth in this ¶ 1(F) is limited to only any claims arising out of or related to the Azzure Loan.

MOTION TO APPROVE COMPROMISE WITH AZZURE

4887-5831-6646

**G.     Waiver of Surcharge.** Trustee waives any right to assert or claim a surcharge under 11 U.S.C. §506(c) as against Azzure's secured collateral, as defined in the UCC Financing Statement, for any reason.

## 4.     Legal Argument

### A.     The Agreement is in the best interest of creditors and the Estate for purposes of Rule 9019.

Under Rule 9019 of the Federal Rules of Bankruptcy Procedure ("FRBP"), the court may approve a compromise or settlement on motion by the trustee. Fed. R. Bankr. P. 9019. A compromise should be approved if it is in the best interest of the estate and is "fair and equitable" for the creditors. *Wells Fargo Bank, N.A. v. Guy F. Atkinson Co. (In re Guy F. Atkinson Co.)*, 242 B.R. 497, 502 (B.A.P. 9th Cir. 1999) ("At its base, the approval of a settlement turns on the question of whether the compromise is in the best interest of the estate."); *Burton v. Ulrich (In re Schmitt)*, 215 B.R. 417, 424 (B.A.P. 9th Cir. 1997). "In determining the fairness, reasonableness and adequacy of a proposed settlement agreement, the court must consider:

(a)     the probability of success of the litigation;

(b)     the difficulties, if any, to be encountered in the matter of collection;

(c)     the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; [and]

(d)     the paramount interest of the creditors and a proper deference to their reasonable views in the premises."

*In re A & C Properties*, 784 F.2d 1377, 1380-81 (9th Cir. 1986); *United States v. Edwards*, 595 F.3d 1004, 1012 (9th Cir. 2010) (same).

A trustee can exercise his business judgment to settle claims at any time, based on his evaluation of the case. *Zarate v. Umpqua Bank (In re Zarate)*, 2015 Bankr.LEXIS 4140, at *22-23 (B.A.P. 9th Cir. Dec. 9, 2015) (noting also that the trustee "must be permitted to use his business acumen and judgment in the best interest of the estate"); *see also In re Mikkelsen*, 2018 Bankr.LEXIS 2622, at *5-6 (Bankr. D. Idaho Aug. 30, 2018) (approving a proposed compromise that was "reasonable and within Trustee's proper exercise of business judgment").

Each *A&C Properties* factor supports approval of the Agreement.

MOTION TO APPROVE COMPROMISE WITH AZZURE

4887-5831-6646

### i. Probability of Success in Litigation

The UCC-1 and Trustee's Contentions: The legal disputes relating to the UCC-1 present a novel issue of first impression and the probability of success is uncertain. Trustee disputes whether Azzure's security interest has been properly perfect by the assignment of the UCC Financing Statement ("UCC" or "Financing Statement") which was originally filed reflecting Cobalt Funding Solutions ("Cobalt") as the secured party, and then assigned to Bae Enterprises, Inc. ("Bae"),[5] prior to assignment to Azzure. Specifically, Trustee contends that the Financing Statement was filed in 2021 on behalf of an entirely different secured party (Cobalt) for an entirely different obligation, which obligation was to be discharged and released upon receipt of certain specified payments pursuant to a written stipulation ("Stipulation") between the parties thereto dated February 11, 2022 - a year and several months before the Note and related security interest in favor of Azzure was created.[6] In the Stipulation and related documents for the discharge and release of the obligation to Cobalt, the Financing Statement purportedly was purchased by and assigned to Bae for $1,500,000, which is the same amount as the Debtor was to pay to Cobalt over time.[7]

If Debtor, or anyone other than Bae made those payments, arguably Bae gave no consideration for the assignment of the Financing Statement, and the assignment is invalid. Therefore, the subsequent assignment of the Financing Statement from Bae to Azzure, therefore, arguably is invalid. In addition to the issues raised above, for reference to the secured party on the Financing Statement, only CT Corporation System is listed, "as representative." No proof has been provided that CT Corporation now serves as a representative for Azzure. No filings have been made giving notice of the purported assignments of the Financing Statement, nor the change in the identity of the secured party.

Azzure disputes all these contentions, and sets forth the following.

"The purpose of requiring a description of collateral by type or item in the financing statement, is to put third parties on notice 'that the secured party who has filed may have a security

---

[5] Trustee is informed and believes that Tony Diab is the principal of Bae. Azzure asserts that at the time of the assignment, Bae was a separate entity, and Bianca Loli was the CEO of Bae.
[6] A true and correct copy of the Stipulation is attached the RJN, Ex. 1, pp. 60-68.
[7] RJN, Ex. 1, pp. 69-72; 75-77.

MOTION TO APPROVE COMPROMISE WITH AZZURE
4887-5831-6646

1   interest in the collateral described. Further inquiry from the parties concerned will be necessary to

2   [make disclosure].'" *Cassel v. Kolb*, 72 Cal. App. 4th 568, 575, 84 Cal. Rptr. 2d 878, 881–82 (1999).

3   (internal cites omitted). Azzure argues that the UCC at issue here provided sufficient notice of the

4   Azzure Loan.

5      The Colbalt UCC Was Value as Filed: Azzure asserts that the Colbalt UCC was valid when it

6   was filed under Cal. Com. Code § 9503 in that the Cobalt UCC listed the debtors' name as "The

7   Litigation Practice Group, BAT Inc, and Daniel Stephen March." The Colbalt UCC also lists the

8   name of the secured creditor as "C T Corporation System, as Representative" as permitted under

9   Cal. Com. Code § 9503(d) (West) (Failure to indicate the representative capacity of a secured party

10  or representative of a secured party does not affect the sufficiency of a financing statement.)

11  Moreover, the Cobalt UCC properly lists the description of the collateral under Cal. Com. Code

12  § 9504(2)(West).

13     The Cobalt UCC Was Not Terminated: Cal. Com. Code § 9515 governs the duration and

14  effectiveness of financing statement. A financing statement is effective for a period of five years

15  after the date of filing § 9515(a) or, in the case of non-consumer goods, "within 20 days after a

16  secured party receives an authenticated demand from a debtor, the secured party shall cause the

17  secured party of record for a financing statement to send to the debtor a termination statement for the

18  financing statement or file the termination statement in the filing office if any of the following

19  conditions is satisfied." Cal. Com. Code § 9515(c).

20     The UCC is not terminated under § 9515(a), because 5 years from the filing date is May 28,

21  2026. In addition, the UCC is not terminated under § 9515(c) because the debtor never made a

22  demand to terminate the UCC statement.

23     The fact that the Cobalt debt may have been paid in full is of no consequence. While Bae

24  may have been precluded from collecting on its debt, the debt associated with the UCC was newly

25  established when Azzure provided a $2.55 million loan to the debtor, as evidence by the promissory

26  note and made specific reference to UCC filing number U210050853928 which was not terminated.

27  In other words, UCC #U210050853928 was merely a pre-filed financing statement before the

28  security agreement was made, which is permitted under § 9502(d).

8

MOTION TO APPROVE COMPROMISE WITH AZZURE

1    <u>Failure to file a UCC-3 Amendment Does Not Invalidate the UCC</u>.  While filing a UCC-3

2    amendment is the better business practice, Cal. Com. Code § 9507(b) states, "Except as otherwise

3    provided in subdivision (c) and in Section 9508 [both related to debtor's name], a financing

4    statement is not rendered ineffective if, after the financing statement is filed, the information

5    provided in the financing statement becomes seriously misleading under Section 9506." The test of

6    whether an error is not seriously misleading is "whether it would indicate to an interested third party

7    the possible existence of prior encumbrances on the collateral. *In re A.F. Evans Co., Inc*., 2009 WL

8    2821510, *4 (N.D. Cal. July 14, 2009). Cal. Com. Code § 9506(c) states, "If a search of the records

9    of the filing office under the debtor's correct name, using the filing office's standard search logic, if

10   any, would disclose a financing statement that fails sufficiently to provide **the name of the debtor**

11   in accordance with subdivision (a) of Section 9503, the name provided does not make the financing

12   statement seriously misleading." (emphasis added). The name of the debtor is listed on the UCC.

13   Therefore, the failure to file a UCC-3 amendment does not invalidate the effectiveness of the UCC

14       <u>The Interest Rate</u>. Trustee contends the Azzure Loan contains a usurious interest rate. That

15   said, any potential usury claim, first involves displacing New York choice-of-law provisions in the

16   Azzure Loan (and also the initial merchant cash advance agreement[8] entered into by Debtor with

17   Cobalt).[9] Although Trustee believes he has a strong argument for application of California law,

18   Trustee recognizes that success on the choice-of-law argument is not guaranteed as Defendant

19   asserts that New York law is applicable, and Trustee must overcome the contract language to prevail

20   in this argument. Were Defendant to prevail in arguing for application of New York law, the result

21   may be dire for Trustee's case, because under New York law, usury is a defense and not an

22   affirmative claim for relief. *See, e.g.*, *Pirs Capital, LLC v. D&M Truck, Tire & Trailer Repair Inc.*,

23   69 Misc.3d 457, 460 n.1 (Sup. Ct. N.Y. 2020) (striking a defendant's usury counterclaim because if

24   a corporate defendant alleges that the transaction at issue is a criminally usurious loan, the defendant

25   may raise the argument only as an affirmative defense, not as a claim for relief).

26   _____

27   [8] For a discussion on merchant cash advances, *see e.g. In re Cornerstone Tower Services, Inc*., 2018
WL 6199131 (Bankr. D. Neb. 20 18) ("Cornerstone I"); *In re Cornerstone Tower Services, Inc*.,

28   2019 WL 127359 at * 1-2 (Bankr. D. Neb. 20 19) ("Cornerstone II").
[9] RJN, Ex. 1, p. 11, ¶14; *see also*, pp. 42-58.

Even if Trustee showed that California law applied, Azzure may argue that it purchased receivables rather than made a loan. This analysis involves a detailed factual inquiry. But litigation is never certain, especially regarding highly fact-specific arguments. In addition, the entire debt would not be eliminated even if California usury applied. At most, Trustee's usury claim only impacts the interested rate. Further, were New York law to apply, the recharacterization analysis is significantly less favorable than under California law. In *D&M Truck*, for instance, the court held that under New York law the defendant did not satisfy its "heavy burden" to establish its usury defense to the lender's breach-of-contract claim because the terms of the merchant agreement demonstrated as a matter of law that the contract was a purchase of future receivables, not a loan. *See D&M Truck*, 69 Misc.3d at 460 n.1 (Sup. Ct. N.Y. 2020).

This factor supports approval of the Agreement. Most of Trustee's claims require Trustee to displace New York choice-of-law provisions in the agreements, and if Trustee does not successfully show that California law applies, he will be in a much weaker litigation position. While Trustee believes he has a compelling argument otherwise, Trustee likewise recognizes that Azzure may have compelling defenses, and the likelihood of success after a dispositive motion or eventually trial is uncertain. Given that any recovery is uncertain, Trustee has executed the Agreement. This factor heavily supports approval of the compromise.

## ii.    Difficulties in Collection

If Trustee prevails in any subsequent litigation then it would be for avoidance, recovery, and preservation of any alleged security interest held by Azzure in funds generated from the Sale. As such this factor neither weighs for nor against the Agreement.

## iii.    Complexity, Expense, Inconvenience, and Delay of the Litigation

Complex issues are involved in the dispute between the Trustee and Azzure, including but not limited to choice of law and California Constitution's interest limit and difficult arguments under the California UCC. The costs of discovery, expert testimony, and trial would be very costly and time intensive, and would likely involve multiple days. Trustee also notes that Azzure is represented by competent and well-regarded counsel and is a business entity that apparently has the financial means to litigate through trial (and appeal) if necessary. In fact, Trustee has every reason to believe

MOTION TO APPROVE COMPROMISE WITH AZZURE

4887-5831-6646

that if he succeeded before this Court, Azzure would have the incentive to appeal, which only adds further risk to the litigation. This will further delay (and detract from) any creditor recovery. The Agreement avoids the expense and delay of further litigation given the Trustee will receive $1.6 million for the benefit of the Estate to settle any dispute arising from the Azzure Loan. This factor weighs heavily in favor of settlement.

### iv.    Paramount Interest of Creditors

Trustee believes that the Agreement will result in $1.6 million recovery to the Estate that would otherwise be paid to Azzure on account of its lien. Were Trustee to continue litigating as discussed above, actual recovery is less than certain given the arguments that Azzure has raised (or will raise) in defense, as well as possible difficulties in collection. Moreover, if Azzure prevailed on all of its arguments and claims, the Estate would be subject to a $5.1 million secured claim instead of the Estate agreeing to pay Azzure $1.9 million under the proposed compromise. This factor weighs heavily in favor of approving the Agreement.

Accordingly, all factors support approval of the Agreement.

## 5.    Conclusion

Trustee respectfully requests that this Court enter an order:

1.    Granting the Motion;

2.    Approving the Agreement attached as **Exhibit 1** to the Marshack Declaration;

3.    Authorizing Trustee to provide the releases specified in the Agreement;

4.    Authorizing Trustee to execute any other documents which may be necessary to consummate the Agreement; and

5.   For such other relief as the Court deems just and proper.

DATED: August 16, 2023                    MARSHACK HAYS LLP

By: _/s/ D. Edward Hays_____
    D. EDWARD HAYS
    LAILA MASUD
    Attorneys for Chapter 11 Trustee
    RICHARD A. MARSHACK

MOTION TO APPROVE COMPROMISE WITH AZZURE

4887-5831-6646

# Declaration of Richard A. Marshack

I, RICHARD A. MARSHACK, say and declare as follows:

1.      I am an individual over 18 years of age and competent to make this Declaration.

2.      I am the duly appointed and acting Chapter 11 Trustee for the bankruptcy estate of The Litigation Practice Group, P.C. ("Debtor").

3.      I make this declaration in support of my motion ("Motion") to approve a settlement agreement ("Agreement") with Azzure Capital LLC ("Azzure"), (collectively, Trustee and Azzure are referred to as the "Parties"), with regard to bankruptcy case number 8-23-bk-10571-SC ("Bankruptcy Case"). A true and correct copy of the Agreement is attached hereto as **Exhibit 1**.

4.      If called as a witness, I could and would competently testify to the following of my own personal knowledge.

5.      I seek to eliminate the need for costly, time-consuming, and inherently uncertain litigation and believe the best interests of the Estate are served by a resolution. The cost of litigation could be substantial and would unnecessarily dilute any recovery obtained for the benefit of the Estate. Moreover, there is no certainty that the result from continued litigation would be better than the consideration from the Parties in the Agreement.

6.      In evaluating the proposed Agreement, my counsel and I have taken into account the probability of success of litigation, the complexity of the litigation involved and the expenses, inconvenience, and delay necessarily resulting from such litigation, as well as the interests of creditors of the Estate. I have determined that the fees and costs to continue to litigate, including participating in trial or an evidentiary hearing, would outweigh any additional benefit that the Estate might achieve.

7.      I have evaluated the proposed Agreement and in my business judgment and experience as a Trustee, I believe that the Agreement is fair and reasonable and in the best interests of the Estate and the creditors of the Debtors.

8.      The Estate's claims against Azzure arise from a prepetition loan and an assignment of a lien held by a third party – Cobalt Funding Solutions – which lien stems from pre-petition merchant cash advance transactions ("MCA") with Debtor. I believe the Azzure Loan and any

MOTION TO APPROVE COMPROMISE WITH AZZURE
4887-5831-6646

1   related assignments may be avoidable transfers under state and federal law, and other state law

2   claims. I am informed and believe that recovery on the litigation claims is less than certain, and that

3   the claims involve complex issues such as choice-of-law and New York/California's usury laws. I

4   am further advised that Azzure likely has an incentive to appeal any adverse judgment against it,

5   which would only add delay, uncertainty, and expense to the litigation. The compromise avoids the

6   need for costly and time-consuming litigation with no certain recovery. I also considered Azzure's

7   contentions with respect to the Estate's position. It avoids the risk of loss in which event Azzure's

8   claim could be allowed in an amount greatly in excess of the settlement with the Estate receiving no

9   portion of that lien.

10      9.      For these reasons, it is my business judgment that the proposed settlement is

11   reasonable, represents a fair and equitable resolution of the transfers, and is in the best interests of

12   creditors and the Estate.

13      I declare under penalty of perjury that the foregoing is true and correct. Executed on August

14   16, 2023.

15

16                                      RICHARD A. MARSHACK

17

18

19   4873-4725-6436, v. 1

20

21

22

23

24

25

26

27

28

MOTION TO APPROVE COMPROMISE WITH AZZURE

4887-5831-6646

**REQUEST FOR JUDICIAL NOTICE**

Richard A. Marshack, solely in his capacity as Chapter 11 Trustee ("Trustee" or "Plaintiff") of the bankruptcy estate ("Estate") of The Litigation Practice Group, P.C. ("Debtor"), through his attorneys Marshack Hays LLP, hereby requests pursuant to Federal Rule of Evidence 201, that this Court take judicial notice of the following documents:

| No. | JUDICIALLY NOTICED DOCUMENTS |
|-----|------------------------------|
| 2.  | True and correct copy of proof of claim no. 127-1, filed by Azzure Capital on July 24, 2023. |

DATED: August 16, 2023                    MARSHACK HAYS LLP


                                          By: _/s/ D. Edward Hays_
                                              D. EDWARD HAYS
                                              LAILA MASUD
                                              Attorneys for Chapter 11 Trustee
                                              RICHARD A. MARSHACK

14

MOTION TO APPROVE COMPROMISE WITH AZZURE

4887-5831-6646

**EXHIBIT 1**

DocuSign Envelope ID: B07D53B7-3F62-481F-8B5D-A6EF3E74DCBE

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("**Agreement**") is made and entered into as of the last date of execution by all parties and entry of a final bankruptcy court order approving this compromise ("Effective Date"), by and among Azzure Capital LLC ("**Azzure**") and Richard A. Marshack, solely in his capacity as the chapter 11 trustee of the Litigation Practice Group P.C., bankruptcy estate ("**Trustee**"). Azzure and Trustee are each a "**Party**" and collectively referred to as the "**Parties**."

## RECITALS

This Agreement is entered into with reference to the following facts and recitals, which are true to the best of the Parties' knowledge and belief, and are made part of this Agreement:

**A.**    On or around February 7, 2023, Azzure made a secured loan to The Litigation Practice Group P.C ("**Debtor**") in the total principal amount of $2.55 million ("**Azzure Loan**"), which Loan was evidenced by a promissory note issued to and for the benefit of Azzure, granting a security interest to Azzure in certain "Collateral" defined in Section 9 of that promissory note ("**Note**").

**B.**    Azzure asserts that the Azzure Loan has a present balance due of over $5 million which includes accrued interest as set forth in the Note, plus attorneys' fees and costs. Trustee disputes this contention.

**C.**    Azzure further asserts that the security interest memorialized in the Note was perfected by the assignment of an already-filed UCC-1 Financing Statement, filed under number U210050853928 on May 28, 2021 ("**UCC Financing Statement**"), which expressly lists "The Litigation Practice Group P.C." as one of the debtors.

**D.**    Trustee disputes whether the embedded annual interest rate on Azzure's Loan is enforceable against this California Debtor, and asserts that the amount due on Azzure's claim is substantially less than the $5.1 million figure Azzure asserts.

**E.**    Trustee further disputes whether Azzure's security interest has been properly perfected by the assignment of the UCC Financing Statement referenced above which was originally filed reflecting Cobalt Funding Solutions as the secured party, and then assigned to Bae Enterprises, Inc., prior to its assignment to Azzure.

**F.**    On March 20, 2023, Debtor filed a voluntarily petition under chapter 11 of the United States Bankruptcy Code, in the Central District of California (Case No. 8:23-bk-10571-SC) ("**Bankruptcy**").

**G.**    As of the Execution Date and as noted above, the Parties dispute the secured status and amount owing under the Azzure Loan.

**H.**    On July 7, 2023, Trustee filed a sale motion in the Bankruptcy seeking to sell substantially all of Debtor's assets including, leases, equipment, furniture, consumer client accounts, prepayments, legal service agreements, intellectual property, pending licenses, and

DocuSign Envelope ID: B07D53B7-3F62-481F-8B5D-A6EF3E74DCBE

certain proprietary property, all of which is defined in Section V.A. of the sale motion ("**Sale Motion**") [ECF 191].

  **I.**  By Order of July 22, 2023, the Court authorized Trustee's sale of the Debtor's property.

  WHEREAS, the Parties agree that it is in their mutual interests to avoid the uncertainty and expense of litigation by reaching a settlement and accommodation of the certain matters encompassed herein, without any admission of law or fact;

  NOW, THEREFORE, in consideration of the mutual covenants contained herein and for other good and valuable consideration, the receipt and sufficiency of which is acknowledged, the Parties covenant and agree as follows:

**TERMS AND RELEASES**

**1.**  **SETTLEMENT PROVISIONS**

  **A.**  **The Azzure Loan.** Azzure will have an allowed secured claim in the total amount of $3.5 million dollars ("**Compromised Secured Claim**").

  **B.**  **Use of and Payment on Azzure Loan.** Trustee shall pay to Azzure $1.9 Million of the Compromised Secured Claim from the proceeds of sale, and which shall be paid prior to the unsecured claims of all post-petition lenders that received super-administrative priority status. The allowed lien securing the $1.6 million balance of the Compromised Secured Claim shall be avoided, recovered, and preserved for the benefit of the Estate. Azzure shall retain a $1.6 million unsecured claim. All other claims by Azzure shall be disallowed.

  **C.**  **Priority of the Compromised Secured Claim**. The Compromised Secured Claim is believed by the parties to be first-in-priority with respect to all of the Bankruptcy estate's debts and liabilities.

  **D.**  **Bankruptcy Court Approval.** This Agreement is subject to approval by the Bankruptcy Court. Trustee will prepare and file a motion under Bankruptcy Rule 9019 seeking approval of this Agreement. In the event the Bankruptcy Court does not approve this Agreement, this Agreement shall be null and void and of no force and effect and the rights of all Parties are specifically reserved as if this Agreement had not been entered into.

  **E.**  **Releases.** Except for the obligations created by this Agreement, and in consideration of the execution and delivery of this Agreement, and in exchange for valuable consideration, the Parties generally release and fully discharge each other, and their predecessors in interest, successors in interest, assignors, assigns, insurers, and attorneys, from any and all liability or claims arising from the Azzure Loan. The Release shall be binding upon the Debtor and the Debtor's Estate (including without limitation any other Chapter 7 or Chapter 11 trustee appointed or elected) to serve as the Estate's representative.

DocuSign Envelope ID: B07D53B7-3F62-481F-8B5D-A6EF3E74DCBE

**F.    Statutory General Release**.  The Parties specifically waive and relinquish all rights and benefits afforded by Section 1542 of the California Civil Code, which provides as follows:

> **A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.**

The Parties' waivers of all rights and benefits afforded by Section 1542 is done with the Parties' understanding and acknowledgement of the significance of such a specific waiver of Section 1542. Notwithstanding the provisions of Section 1542, and for the purpose of implementing a full and complete release, the Parties expressly acknowledge that this Agreement is intended to include in its effect, without limitation, all claims that a Party knows or suspects to exist in such respective Party's favor at the time such Party executes this Agreement, which contemplates the extinguishment of any such claims. This waiver also applies to any other relevant re-codification or similar laws implemented hereafter substantially covering the subject matter of Section 1542. The Releases set forth in ¶ 1(E) and the waivers of Section 1542 set forth in this ¶ 1(F) is limited to only any claims arising out of or related to the Azzure Loan.

**G.    Waiver of Surcharge.**  Trustee waives any right to assert or claim a surcharge under 11 U.S.C. §506(c) as against Azzure's secured collateral, as defined in the UCC Financing Statement, for any reason.

**2.    ADDITIONAL TERMS**

**A.    Adequate Consideration**.  The consideration received in connection with this Agreement is fair, adequate, and substantial, and it consists only of the terms set forth in this Agreement.

**B.    Further Assurances**.  Each Party agrees to take all reasonable steps necessary to effectuate the terms of this Agreement.

**C.    No Admission of Liability**.  Each Party understands and agrees that this Agreement and the settlement provided for herein, are intended to compromise disputed claims and defenses, to avoid litigation and to buy peace, and that this Agreement and the settlement provided for shall not be construed or viewed as an admission by the Parties of liability or wrongdoing, such liability being expressly denied. This Agreement, and the settlement provided for, shall not be admissible in any lawsuit, administrative action, or any judicial or administrative proceeding if offered to show, demonstrate, evidence, or support a contention that any of the Parties acted illegally, improperly, or in breach of law, contract, or proper conduct.

**D.    Waiver**.  The failure of a Party to demand performance of any act under the Agreement shall not be construed as a waiver of that Party's right to demand, at any subsequent time, such performance.

DocuSign Envelope ID: B07D53B7-3F62-481F-8B5D-A6EF3E74DCBE

**E.    Choice of Law/Continuing Jurisdiction**.  This Agreement shall be construed in accordance with, and all disputes shall be controlled by, the laws of the State of California without regard to its choice of law rules. The Bankruptcy Court shall have continuing jurisdiction to enforce, modify, or vacate this Agreement.

**F.    No Interpretation of Captions or Headings**.  The captions and headings within this Agreement are for ease of reference only and are not intended to create any substantive meaning or to modify the terms and clauses either following them or contained in any other provision of this Agreement.

**G.    Severability**.  If any provision of the Agreement or its application is held invalid by a court, arbitrator, or government agency of competent jurisdiction, the Parties agree that such a determination of invalidity shall not affect other provisions or applications of the Agreement which can be given effect without the invalid provisions and thus shall remain in full force and effect or application.

**H.    Neutral Interpretation and Counterparts**.  The Parties shall be deemed to have cooperated in the drafting and preparation of this Agreement. Thus, any construction to be made of this Agreement shall not be construed against any Party. This Agreement may be executed in counterparts and each executed counterpart shall be effective as the original. All faxed, emailed, or electronic signatures affirming this Agreement constitute an original signature.

**I.    Integration / Single Agreement**.  This Agreement constitutes a single, integrated, written contract expressing the entire understanding and agreement between the Parties, and the terms of the Agreement are contractual and not merely recitals. There is no other agreement, written or oral, expressed or implied between the Parties with respect to the subject matter of this Agreement and the Parties declare and represent that no promise, inducement or other agreement not expressly contained in this Agreement has been made conferring any benefit upon them or upon which they have relied in any way. The terms and conditions of this Agreement may not be contradicted by evidence of any prior or contemporaneous agreement, and no extrinsic evidence may be introduced in any judicial proceeding to interpret this Agreement.

**J.    Amendments to the Agreement.**  This Agreement shall not be altered, amended, or modified by oral representation made before or after the execution of this Agreement. All amendments or changes of any kind must be in writing, executed by all Parties.

**K.    Advice of Counsel.**  Each Party to this Agreement acknowledges that it has had the benefit of advice of competent legal counsel or the opportunity to retain such counsel with respect to its decision to enter into this Agreement. The individuals whose signatures are affixed to this Agreement in a personal or representative capacity represent that they are competent to enter into this Agreement and are doing so freely and without coercion by any other Party or non-party hereto.

DocuSign Envelope ID: B07D53B7-3F62-481F-8B5D-A6EF3E74DCBE

**L.    Attorneys' Fees.**  Unless otherwise expressly set forth herein, each of the Parties shall bear its own attorneys' fees, costs, and expenses in connection with the matters set forth in the Agreement including, but not limited to, the negotiation and preparation of this Agreement.

IN WITNESS WHEREOF, the Parties evidence their agreement as a sealed instrument and have executed this Agreement as of the day and year last written below.

Dated: _____         Signature: _____
                                          Richard Marshack (Trustee)


Dated: 8/14/2023             Azzure Capital LLC

                             Signature: _____

                             By (name): ____MORDECHAI HERBST_____

                             Title: _____COO_____

EXHIBIT 1, PAGE 19

**EXHIBIT 2**

<table>
<tr><td colspan="2"><b>Fill in this information to identify the case:</b></td></tr>
</table>

**Fill in this information to identify the case:**

Debtor 1 <u>The Litigation Practice Group PC</u>

Debtor 2
(Spouse, if filing) _____

United States Bankruptcy Court for the: <u>Central</u> District of <u>California</u>

Case number <u>8:23-bk-10571-SC</u>

## Official Form 410

# Proof of Claim

04/22

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed.** That date is on the notice of bankruptcy (Form 309) **that you received.**

| Part 1: | Identify the Claim |
| --- | --- |

| 1. **Who is the current creditor?** | Azzure Capital LLC |
| --- | --- |
| | Name of the current creditor (the person or entity to be paid for this claim) |
| | Other names the creditor used with the debtor _____ |

| 2. **Has this claim been acquired from someone else?** | ☒ No |
| --- | --- |
| | ☐ Yes. From whom? _____ |

| 3. **Where should notices and payments to the creditor be sent?**<br><br>Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **Where should notices to the creditor be sent?** | **Where should payments to the creditor be sent?** (if different) |
| --- | --- | --- |
| | Bryan Cave Leighton Paisner LLP<br>c/o Sharon Z. Weiss | Azzure Capital LLC,<br>Attn: Mordechai Herbst |
| | Name | Name |
| | 120 Broadway, Suite 300 | 1820 Avenue M, Suite 695 |
| | Number        Street | Number        Street |
| | Santa Monica    CA    90401 | Brooklyn    NY    11230 |
| | City    State    ZIP Code | City    State    ZIP Code |
| | Contact phone (310) 576-2100 | Contact phone _____ |
| | Contact email sharon.weiss@bclplaw.com | Contact email _____ |
| | Uniform claim identifier for electronic payments in chapter 13 (if you use one): | |
| | ___ ___ ___ ___ ___ ___ ___ ___ ___ ___ ___ ___ ___ | |

| 4. **Does this claim amend one already filed?** | ☒ No |
| --- | --- |
| | ☐ Yes. Claim number on court claims registry (if known) _____    Filed on ___/___/_____<br>                                                                                  MM / DD / YYYY |

| 5. **Do you know if anyone else has filed a proof of claim for this claim?** | ☒ No |
| --- | --- |
| | ☐ Yes. Who made the earlier filing? _____ |

EXHIBIT 2, PAGE 20

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☒ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____

**7. How much is the claim?**  $ <u>No Less Than 5,000,000.00 see payoff schedule</u>  **Does this amount include interest or other charges?**

☒ No

☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

<u>money loaned</u>

**9. Is all or part of the claim secured?**

☐ No

☒ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☒ Other. Describe:    <u>Personal property etc. defined in the UCC-1</u>

**Basis for perfection:**    <u>UCC-1 Financing Statement (Attached)</u>

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**    $ <u>No Less Than 5,000.000.00</u>

**Amount of the claim that is secured:**    $ <u>5,000,000.00</u>

**Amount of the claim that is unsecured:**    $ <u>Unknown</u>    (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**    $ _____

**Annual Interest Rate** (when case was filed) <u>170.00</u> %

☒ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☒ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.**    $ _____

**11. Is this claim subject to a right of setoff?**

☒ No

☐ Yes. Identify the property: _____

EXHIBIT 2, PAGE 21

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☒ No

☐ Yes. *Check one:*

| | Amount entitled to priority |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $ _____ |
| ☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $ _____ |
| ☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $ _____ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $ _____ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $ _____ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | $ _____ |

\* Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

---

**Part 3:    Sign Below**

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

Check the appropriate box:

☐ I am the creditor.

☒ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    07/21/2023
                    MM / DD / YYYY

_____
Signature

Print the name of the person who is completing and signing this claim:

| | | | |
|---|---|---|---|
| Name | Mordechai Herbst | | |
| | First name | Middle name | Last name |
| Title | Managing Member | | |
| Company | Azzure Capital LLC | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 1865 65th Street, Suite 695 | | |
| | Number    Street | | |
| | Brooklyn | NY | 11230 |
| | City | State | ZIP Code |
| Contact phone | _____ | Email | _____ |

---

EXHIBIT 2, PAGE 22

# EXHIBIT 1

**BUSINESS SECURED PROMISSORY NOTE AND SECURITY AGREEMENT**

**Two Million, Five Hundred Fifty Thousand Dollars ($2,550,000.00)**

This promissory note (the "Note") is made and effective February 7, 2023 (the "Effective Date"), by and between The Litigation Practice Group PC, a California professional corporation, and Tony Diab, an individual, (collectively, the "Borrowers"), and Azzure Capital LLC, a New York limited liability company (the "Payee").

1.      **PROMISE OF PAYMENT.**

FOR VALUE RECEIVED, the Borrowers promise to pay to the Payee the principal amount of two million, five hundred fifty thousand dollars ($2,550,000.00), together with interest accruing on the unpaid balance thereof until due.  The interest rate on this Note shall be an annual rate of interest equal to one hundred seventy percent (170%) percent, or the maximum amount allowed by applicable law, whichever is less.  Interest shall be computed on the basis of a year of 365 days and the actual number of days elapsed.

All payments shall be made by made via wire transfer to:

|                    |                                            |
|--------------------|--------------------------------------------|
| Name on Account:   | Azzure Capital Operating                   |
| Address on Account:| 1865 65th Street<br>Brooklyn, New York     |
| Name of Bank:      | Optimum Bank                               |
| Address of Bank:   | 2929 E. Commercial Blvd.<br>Fort Lauderdale, Florida 33308 |
| Routing No.:       | ▮▮▮5096                                    |
| Account No.:       | ▮▮▮1779                                    |

2.      **WEEKLY INSTALLMENT PAYMENTS.**

The Borrowers will pay said principal and interest to the Payee in fifty-two (52) equal installment payments, on Tuesday of each week or, in the event that a Tuesday falls on a bank holiday, on the next business day.  All payments will be applied first to interest and the remainder to principal, and interest shall cease to accrue on any principal so paid.  Acceptance by the Payee of any payment differing from the designated installment payment listed above does not relieve the Borrowers of the obligation to honor the requirements of this Note.  A schedule of the Payments and the applicable remaining balance under the Note is attached hereto as **Schedule A**.

1

3.      **ORIGINATION FEE.**

The Borrowers shall pay to the Payee on or before the Effective Date one-time loan origination fee (the "Origination Fee") in the amount of fifty thousand dollars ($50,000.00), which fee has been fully earned, is due and payable upon the execution of this Note, and is non-refundable.

4.      **INITIAL DATE.**

The first payment under this Note is due and payable on the first (1st) Tuesday after the Effective Date.  A like installment shall be due on the same day of each succeeding month thereafter.

5.      **PREPAYMENT.**

The Borrowers may prepay this Note, in whole or in part, at any time before maturity without penalty or premium other than the payment of all interest that has come due through the date the Payee receives the payment due under this Note in full.

6.      **EVENTS OF DEFAULT.**

The Borrowers will be deemed to be in default under this Note on the occurrence of any of the following events (each an "Event of Default"): (i) on the Borrowers' failure to make any payment when due under this Note; (ii) failure by Borrower to observe, perform, keep or abide by any term, covenant or condition contained in this Note or any other document or instrument given to the Payee in connection with or related to this Note, including any security agreement or other agreement or document now or hereafter evidencing or creating or perfecting any security for the payment of this Note; (iii) the further encumbering of the Collateral, as defined below, without the express written consent of the Payee; (iv) on the filing regarding either of the Borrowers of any voluntary or involuntary petition for relief under the United States Bankruptcy Code or the initiation of any proceeding under federal law or law of any other jurisdiction for the general relief of debtors; (v) on the execution by either of the Borrowers of an assignment for the benefit of creditors or the appointment of a receiver, custodian, trustee, or similar party to take possession of either of the Borrowers' assets or property; (vi) the death of any of the Borrowers or the Payee; and (vii) a misrepresentation by the Borrowers to the Payee for the purpose of obtaining or extending credit.

7.      **ACCELERATION; REMEDIES ON DEFAULT.**

On the occurrence of any Event of Default, at the option of the Payee, all principal and other amounts owed under this Note shall become immediately due and payable without notice or demand by the Payee, and the Payee, in addition to its rights and remedies under this Note, may pursue any legal or equitable remedies that are available to it.

8.      **REPRESENTATIONS, WARRANTIES, AND COVENANTS.**

The Borrowers make the following representations, warranties and covenants:

2

(a)    the Borrowers are the owner of or is acquiring the Collateral, as defined below, free of all liens, encumbrances and security interests (except Payee's security interest), and is the owner of all other Collateral free of all liens, encumbrances and security interests;

(b)    the proceeds of this Note will be used for business purposes only, and not for personal, consumer, family or household purposes or to purchase personal, consumer, family or household goods. The Borrowers understand the Payee is relying on the accuracy of this representation in disbursing the loan proceeds secured by the Note and that Borrowers' agreement not to use such loan proceeds for personal, consumer, family or household purposes or to purchase personal, consumer, family or household goods means that certain important duties imposed upon entities making loans for consumer/personal purposes, and certain important rights conferred upon consumers, pursuant to federal or state law will not apply to this Note, or any other document or instrument given to the Payee in connection with or related to this Note.  The Borrowers also understands that the Payee will be unable to confirm whether the proceeds secured by this Note will be used for business purposes only.   The Borrowers acknowledge and agrees that a breach by the Borrowers of the provisions of this subsection 8(b) will not affect the Payee's right to enforce the Borrowers' promise to pay for all amounts owed under this Note, regardless of the purpose for which the proceeds secured by this Note are in fact obtained or use any remedy legally available to the Payee, even if that remedy would not have been available had the proceeds of secured by this Note been used for consumer purposes;

(c)    the Collateral will be kept at the Borrowers' address set forth in Section 13;

(d)    the Borrowers' names set forth above are their exact names on its organizing and/or registered documents, if any, and is the Borrowers' principal place of business. The Borrowers shall immediately advise the Payee of any change in Borrowers' name(s) or address(es);

(e)    the Borrowers are duly organized, validly existing and in good standing under the law of the jurisdiction in which it is organized, and has all licenses and authorizations necessary to carry on its business as now being conducted; the Borrowers have the full power and authority to execute, deliver and perform all transactions contemplated by this Note and the performance of and compliance with the terms of this Note will not violate the Borrowers' organizational documents or constitute a default of any contract, agreement or other instrument to which the Borrowers are a party;

(f)    The Borrowers have duly authorized the execution, delivery and performance of this Note and has duly executed and delivered this Note, and this Note constitutes a legal, valid and binding obligation of the Borrowers, enforceable against it in accordance with its terms;

(g)    there is no action, suit, proceeding or investigation pending or, to the Borrowers' knowledge, threatened against or affecting it or any of its assets before or by any

EXHIBIT 2, PAGE 26

court or other governmental authority which, if determined adversely to it, would have a material adverse effect on its financial condition, business or prospects, or the value of the Collateral; and

(h)    the Borrower will provide any financial information on request or permit an examination of its books and records to permit the Payee to confirm Borrowers' ability to pay its obligations under the Note and all other financial obligations.

(i)    the Borrower has not been notified by any of its lenders that it is in default under the terms of any of its credit agreements, nor has the Borrowers done, caused to be done, or failed to do any act or omission that would result in a default under any credit agreement.

### 9.    GRANT OF SECURITY INTEREST

The Borrowers hereby grant to the Payee a security interest in all of the following property of the Borrowers (collectively, the "Collateral"):

(a)    all accounts, deposit accounts, contract rights, chattel paper, instruments, documents, general intangibles, commercial tort claims and other rights to payment of every kind now existing or at any time herein arising;

(b)    all inventory, goods held for sale or lease or to be furnished under contracts for service, or goods so leased or furnished, raw materials, component parts, work in process and other materials used or consumed in the Borrowers' business, now or any time hereafter owned or acquired by the Borrowers, wherever located, and all products thereof, whether in possession of the Borrowers, any warehousemen, any bailee or any other person or entity, or in process of delivery, and whether located at the Borrowers' places of business or elsewhere;

(c)    all right, title and interest of the Borrowers under licenses, guaranties, warranties, management agreements, marking or sales agreements, escrow contracts, indemnity agreements, insurance policies, service agreements, maintenance agreements and other similar contracts of every kind in which the Borrowers now have or at any time hereafter shall have an interest;

(d)    all the Borrowers goods, tools, machinery, furnishings, furniture and other equipment and fixtures of every kind now existing or hereafter acquired, and improvements, replacements, accessions and additions thereto, wherever located, including, without limitation, any of the foregoing now or at any time hereafter located at or installed on the land or in the improvements of any real property owned or leased by the Borrowers, and all such goods after they have been severed and removed from any of said real property;

(e)    all present and former general intangibles, all tax refunds of every kind of nature to which the Borrowers now or hereafter may become entitled, however arising, all other refunds, and all deposits, goodwill, choses in action, trade secrets, computer programs, software, customer lists, trademarks, trade names, patents, licenses, copyrights, technology, processes, proprietary information and insurance proceeds relating to or arising out of its business;

4

(f)    all present and future books and records, including, without limitation, books of account and ledgers of every kind and nature, all electronically recorded data relating to the Borrowers or the business thereof, all receptacles and containers for such records, and all files and correspondence, relating to or arising out of its business;

(g)    all present and future accessions, appurtenances, components, repairs, repair parts, spare parts, replacements, substitutions, additions, issue and/or improvements to or of or with respect to any of the foregoing;

(h)    all other tangible and intangible property of the Borrowers relating to or arising out of its business;

(i)    (i) trademarks, service marks, trade dress, and trade names and registrations and applications for registration thereof; (ii) (A) rights to art, audiovisual works, animations, cartoons, characters, choreography, compilations, collective works, emblems, films, film clips, graphics, images, illustrations, likenesses, motion pictures, musical compositions, performances, photographs, pictorial works, songs, song lyrics, sound recordings, video recording rights, scripts, screenplays, text, including, without limitation, the literary works, (B) publication rights, options, production rights, distribution rights, display rights, attribution rights, integrity rights, performance rights, mechanical rights, approval rights, and moral rights associated with the foregoing, and (C) publicity rights or privacy rights (or waivers or quitclaims thereof) of any person or entity; (iii) copyrights (registered or unregistered), registrations and applications for registration thereof, including all renewals, derivative works, enhancements, modifications, updates, new releases or other revisions thereof, and all works of authorship; (iv) trade secrets and other confidential information, including, but not limited to, ideas, processes, formulas, compositions, inventions (whether patentable or unpatentable and whether or not reduced to practice), know-how, production processes and techniques, drawings, specifications, designs, plans, proposals, technical data, copyrightable works, and financial and marketing plans; (v) other intellectual property rights; (vi) rights to third party warranties relating to the foregoing; (vii) copies and intangible embodiments of all of the foregoing (in whatever form or medium); (viii) all licenses where the Borrowers is licensee except where such license prohibits the granting of the security interest contemplated hereby in such license, and the goodwill symbolized by all of the foregoing an connected therewith throughout the world; (ix) all domain names and URL's and the goodwill symbolized by all of the foregoing and connected therewith throughout the world;

(j)    all rights, remedies, powers and/or privileges of the Borrowers with respect to any of the foregoing; and

(k)    whatever is receivable or received when any of the foregoing or the proceeds thereof are sold, leased, collected, exchanged or otherwise disposed of, whether such disposition is voluntary or involuntary, including, without limitation, all rights to payment, including returned premiums, with respect to any insurance relating to any of the foregoing, and all rights to payment with respect to any cause of action affecting or relating to any of the foregoing.

EXHIBIT 2, PAGE 28

10.    **INSPECTION OF COLLATERAL AND PLACE OF BUSINESS.**

The Payee and the Payee's representatives and agents shall have the right at any reasonable time or times to inspect the Collateral wherever located and the interior and exterior of any of the Borrowers' places of business, and the Borrowers shall assist the Payee and its representatives and agents in making any such inspection.  During an inspection of any the Borrowers' places of business, the Payee or the Payee's representatives and agents may examine, among other things, whether the Borrowers (i) have a place of business that is separate from any personal residence, (ii) is open for business, (iii) has sufficient inventory and/or staff to conduct the Borrowers' business and (iv) has one or more credit card terminals or point of sale systems if Borrower processes credit card transactions.  When performing an inspection, the Payee or the Payee's representatives and agents may photograph the interior and exterior of any Borrower place of business, including any signage. Any photograph will become and remain the sole property of the Payee and will be shared with the Payee's employees, representatives and agents. The Borrowers grant the Payee the irrevocable and permanent right to display and share any photograph in all forms, including composite and modified representations, for all purposes, with the Payee's employees, representatives and agents.

11.    **TIME OF ESSENCE.**

Time is of the essence with respect to every provision of this Note.

12.    **JOINT AND SEVERAL LIABILITY; SUCCESSORS AND ASSIGNS.**

This Note shall be the joint and several obligations of all the Borrowers and the provisions of this Note shall be binding upon and shall inure to the benefit of the successors, heirs, and assigns of the Borrowers and the Payee.  The Borrowers may not assign their rights or delegate their obligations under this Note in whole or in part without the prior written consent of the Payee.  All references in this Note to the Borrowers and the Payee shall be deemed to include, as applicable, a reference to their respective successors, heirs and assigns.

13.    **NOTICE.**

Any notice or other communication provided for herein or given hereunder to a party hereto shall be in writing and shall be given in person, by overnight courier, or by mail (registered or certified mail, postage prepaid, return receipt requested) to the respective party as follows:

6

EXHIBIT 2, PAGE 29

If to the Payee:

Azzure Capital LLC
1820 Avenue M, Suite #695
Brooklyn, New York 11230

If to the Borrowers:

The Litigation Practice Group PC
17542 E 17th Street
Ste 100
Tustin, CA 92780

and

Tony M. Diab
20101 SW Cypress St
Newport Beach, CA 92660

**14.    GOVERNING LAW.**

**THIS NOTE SHALL BE GOVERNED BY, AND SHALL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, WITHOUT REGARD TO CONFLICTS OF LAWS PRINCIPLES. THE BORROWERS HEREBY CONSENT TO THE EXCLUSIVE JURISDICTION OF ANY STATE COURT LOCATED WITHIN THE COUNTY OF NASSAU, STATE OF NEW YORK AND IRREVOCABLY AGREES THAT ALL ACTIONS OR PROCEEDINGS ARISING OUT OF OR RELATING TO THIS NOTE SHALL BE LITIGATED IN SUCH COURTS. THE BORROWERS EXPRESSLY SUBMITS AND CONSENTS TO THE JURISDICTION OF THE AFORESAID COURTS AND WAIVE ANY DEFENSE OF FORUM NON CONVENIENS. EACH BORROWER HEREBY WAIVES PERSONAL SERVICE OF ANY AND ALL PROCESS AND AGREES THAT ALL SUCH SERVICE OF PROCESS MAY BE MADE UPON SUCH BORROWER BY CERTIFIED MAIL, ADDRESSED TO SUCH BORROWER AT THE ADDRESSES LISTED ABOVE AND SERVICE SO MADE SHALL BE DEEMED TO BE COMPLETE FIVE (5) DAYS AFTER THE SAME HAS BEEN POSTED.**

EXHIBIT 2, PAGE 30

### 15.     ENTIRE AGREEMENT.

This Note constitutes the final, complete, and exclusive statement of the agreement of the parties with respect to the subject matter hereof, and supersedes any and all other prior and contemporaneous agreements and understandings, both written and oral, between the parties.

### 16.     NO IMPLIED WAIVER.

The Payee's failure to exercise any right or remedy provided in this Note shall not be construed as a waiver of any future exercise of that right or exercise of any other right or remedy to which the Payee may be entitled.

### 17.     COLLECTION COSTS.

The Borrowers agree to pay any and all costs, including reasonable attorneys' fees of twenty-five percent (25%) of the amount due at default based upon the standard contingency fee charged by collection attorneys in the state of New York, incurred by the Payee in collecting sums payable under this Note without protest of any kind.

### 18.     SEVERABILITY.

If one or more of the provisions of this Note shall be declared or held to be invalid, illegal, or unenforceable in any respect in any jurisdiction, the validity, legality, and enforceability of the remaining provisions hereof shall not in any way be affected or impaired thereby and any such declaration or holding shall not invalidate or render unenforceable such provision in any other jurisdiction.

### 19.     WAIVER OF JURY TRIAL.

**EACH PARTY HERETO HEREBY IRREVOCABLY WAIVES ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS NOTE OR THE TRANSACTIONS CONTEMPLATED HEREBY AND AGREES THAT ANY SUCH ACTION OR PROCEEDING SHALL BE TRIED BEFORE A COURT AND NOT BEFORE A JURY.**

### 20.     NO ORAL MODIFICATION.

This Note may be modified only by a writing signed by both the Borrowers and the Payee.

### 21.     HEADINGS.

Headings used in this Note are provided for convenience only and shall not be used to construe meaning or intent.

[CONTINUED BELOW]

8

EXHIBIT 2, PAGE 31

DocuSign Envelope ID: A4C2F449-6755-4FE9-A9FC-F5F3A72F2042

**BEFORE SIGNING THIS NOTE, THE BORROWERS READ AND UNDERSTOOD
ALL OF THE PROVISIONS HEREOF.  AFTER DUE CONSIDERATION AND THE
OPPORTUNITY TO CONSULT WITH AN ATTORNEY, ACCOUNTANT, OR OTHER
COMPETENT PROFESSIONAL OF THEIR CHOICE, THE BORROWERS
KNOWINGLY, WILLFULLY, AND VOLUNTARILY AGREE TO THE TERMS OF
THIS NOTE.**

> **IN WITNESS WHEREOF**, the parties have executed this Note as of the date first above
written.

PAYEE:                          **AZZURE CAPITAL LLC**

By: _Mordechai Herbst_
Name: Mordi Herbst
Title:   Managing Member

BORROWERS:                      **THE LITIGATION PRACTICE GROUP PC**

By: _____
Name: Daniel S. March, managing shareholder

**TONY M. DIAB**

By: _____
Name: Tony M. Diab

9

**BEFORE SIGNING THIS NOTE, THE BORROWERS READ AND UNDERSTOOD
ALL OF THE PROVISIONS HEREOF.  AFTER DUE CONSIDERATION AND THE
OPPORTUNITY TO CONSULT WITH AN ATTORNEY, ACCOUNTANT, OR OTHER
COMPETENT PROFESSIONAL OF THEIR CHOICE, THE BORROWERS
KNOWINGLY, WILLFULLY, AND VOLUNTARILY AGREE TO THE TERMS OF
THIS NOTE.**

   **IN WITNESS WHEREOF**, the parties have executed this Note as of the date first above written.

PAYEE:      **AZZURE CAPITAL LLC**


        By: _____
        Name: Mordi Herbst
        Title: Managing Member


BORROWERS:    **THE LITIGATION PRACTICE GROUP PC**


        By: _____
        Name: Daniel S. March, managing shareholder


        **TONY M. DIAB**


        By: _____
        Name: Tony M. Diab

9

EXHIBIT 2, PAGE 33

| Date | Schedule Prin Payment | Schedule Int Payment | Amount Paid | Amount Due | Additional Interest | Total Due |
|---|---|---|---|---|---|---|
| 2/7/2023 | $   - | $   - | $   - | $   - | $   - | $   - |
| 2/8/2023 | $   - | $   - | $   - | $   - | $   - | $   - |
| 2/9/2023 | $   - | $   - | $   - | $   - | $   - | $   - |
| 2/10/2023 | $   - | $   - | $   - | $   - | $   - | $   - |
| 2/11/2023 | $   - | $   - | $   - | $   - | $   - | $   - |
| 2/12/2023 | $   - | $   - | $   - | $   - | $   - | $   - |
| 2/13/2023 | $   - | $   - | $   - | $   - | $   - | $   - |
| 2/14/2023 | $ 63,732.76 | $ 83,365.38 | $ 70,000.00 | $ 77,098.14 | $   - | $ 77,098.14 |
| 2/15/2023 | $   - | $   - | $   - | $ (12,901.86) | $   - | $ (12,901.86) |
| 2/16/2023 | $   - | $   - | $ 90,000.00 | $ (12,901.86) | $   - | $ (12,901.86) |
| 2/17/2023 | $   - | $   - | $   - | $ (12,901.86) | $   - | $ (12,901.86) |
| 2/18/2023 | $   - | $   - | $   - | $ (12,901.86) | $   - | $ (12,901.86) |
| 2/19/2023 | $   - | $   - | $   - | $ (12,901.86) | $   - | $ (12,901.86) |
| 2/20/2023 | $   - | $   - | $   - | $ (12,901.86) | $   - | $ (12,901.86) |
| 2/21/2023 | $ 65,816.33 | $ 81,281.81 | $   - | $ 134,196.28 | $   - | $ 134,196.28 |
| 2/22/2023 | $   - | $   - | $   - | $ 134,196.28 | $   - | $ 134,196.28 |
| 2/23/2023 | $   - | $   - | $ 160,000.00 | $ 134,196.28 | $   - | $ 134,196.28 |
| 2/24/2023 | $   - | $   - | $   - | $ (25,803.72) | $   - | $ (25,803.72) |
| 2/25/2023 | $   - | $   - | $   - | $ (25,803.72) | $   - | $ (25,803.72) |
| 2/26/2023 | $   - | $   - | $   - | $ (25,803.72) | $   - | $ (25,803.72) |
| 2/27/2023 | $   - | $   - | $ 160,000.00 | $ (185,803.72) | $   - | $ (185,803.72) |
| 2/28/2023 | $ 67,968.02 | $ 79,130.12 | $   - | $ (38,705.58) | $   - | $ (38,705.58) |
| 3/1/2023 | $   - | $   - | $   - | $ (38,705.58) | $   - | $ (38,705.58) |
| 3/2/2023 | $   - | $   - | $   - | $ (38,705.58) | $   - | $ (38,705.58) |
| 3/3/2023 | $   - | $   - | $   - | $ (38,705.58) | $   - | $ (38,705.58) |
| 3/4/2023 | $   - | $   - | $   - | $ (38,705.58) | $   - | $ (38,705.58) |
| 3/5/2023 | $   - | $   - | $   - | $ (38,705.58) | $   - | $ (38,705.58) |
| 3/6/2023 | $   - | $   - | $   - | $ (38,705.58) | $   - | $ (38,705.58) |
| 3/7/2023 | $ 70,190.05 | $ 76,908.09 | $   - | $ 108,392.56 | $   - | $ 108,392.56 |
| 3/8/2023 | $   - | $   - | $   - | $ 108,392.56 | $   - | $ 108,392.56 |
| 3/9/2023 | $   - | $   - | $ 160,000.00 | $ 108,392.56 | $   - | $ 108,392.56 |
| 3/10/2023 | $   - | $   - | $   - | $ (51,607.44) | $   - | $ (51,607.44) |
| 3/11/2023 | $   - | $   - | $   - | $ (51,607.44) | $   - | $ (51,607.44) |
| 3/12/2023 | $   - | $   - | $   - | $ (51,607.44) | $   - | $ (51,607.44) |
| 3/13/2023 | $   - | $   - | $   - | $ (51,607.44) | $   - | $ (51,607.44) |
| 3/14/2023 | $ 72,484.72 | $ 74,613.42 | $   - | $ 95,490.70 | $   - | $ 95,490.70 |
| 3/15/2023 | $   - | $   - | $   - | $ 95,490.70 | $   - | $ 95,490.70 |
| 3/16/2023 | $   - | $   - | $   - | $ 95,490.70 | $   - | $ 95,490.70 |
| 3/17/2023 | $   - | $   - | $   - | $ 95,490.70 | $   - | $ 95,490.70 |
| 3/18/2023 | $   - | $   - | $   - | $ 95,490.70 | $   - | $ 95,490.70 |
| 3/19/2023 | $   - | $   - | $   - | $ 95,490.70 | $   - | $ 95,490.70 |
| 3/20/2023 | $   - | $   - | $   - | $ 242,588.84 | $   - | $ 242,588.84 |
| **Defaulted** | $ 74,854.42 | $ 72,243.72 | $   - | **$ 3,184,551.64** | **$ 14,832.16** | **$ 3,199,383.80** |
| 3/21/2023 | $   - | $   - | $   - | $ 3,199,383.80 | $ 14,901.24 | $ 3,214,285.04 |
| 3/22/2023 | $   - | $   - | $   - | $ 3,214,285.04 | $ 14,970.64 | $ 3,229,255.68 |
| 3/23/2023 | $   - | $   - | $   - | $ 3,229,255.68 | $ 15,040.37 | $ 3,244,296.05 |
| 3/24/2023 | $   - | $   - | $   - | $ 3,244,296.05 | $ 15,110.42 | $ 3,259,406.47 |
| 3/25/2023 | $   - | $   - | $   - | $ 3,259,406.47 | $ 15,180.80 | $ 3,274,587.27 |
| 3/26/2023 | $   - | $   - | $   - | $ 3,274,587.27 | $ 15,251.50 | $ 3,289,838.77 |
| 3/27/2023 | $   - | $   - | $   - | $ 3,289,838.77 | $ 15,322.54 | $ 3,305,161.31 |
| 3/28/2023 | $ 77,301.58 | $ 69,796.56 | $   - | $ 3,305,161.31 | $   - | $ 3,305,161.31 |

EXHIBIT 2, PAGE 34

| Date | | | | | Beginning Balance | Interest | Ending Balance |
|---|---|---|---|---|---|---|---|
| 3/29/2023 | $ - | $ - | $ - | $ 160,000.00 | $ 3,145,161.31 | 14,648.70 | 3,159,810.00 |
| 3/30/2023 | $ - | $ - | $ - | $ - | $ 3,159,810.00 | 14,716.92 | 3,174,526.93 |
| 3/31/2023 | $ - | $ - | $ - | $ - | $ 3,174,526.93 | 14,785.47 | 3,189,312.39 |
| 4/1/2023 | $ - | $ - | $ - | $ - | $ 3,189,312.39 | 14,854.33 | 3,204,166.73 |
| 4/2/2023 | $ - | $ - | $ - | $ - | $ 3,204,166.73 | 14,923.52 | 3,219,090.24 |
| 4/3/2023 | $ - | $ - | $ - | $ - | $ 3,219,090.24 | 14,993.02 | 3,234,083.26 |
| 4/4/2023 | $ - | $ - | $ 67,269.39 | $ - | $ 3,234,083.26 | 15,062.85 | 3,249,146.12 |
| 4/5/2023 | $ - | $ 79,828.75 | $ - | $ - | $ 3,249,146.12 | 15,133.01 | 3,264,279.13 |
| 4/6/2023 | $ - | $ - | $ - | $ - | $ 3,264,279.13 | 15,203.49 | 3,279,482.62 |
| 4/7/2023 | $ - | $ - | $ - | $ - | $ 3,279,482.62 | 15,274.30 | 3,294,756.92 |
| 4/8/2023 | $ - | $ - | $ - | $ - | $ 3,294,756.92 | 15,345.44 | 3,310,102.36 |
| 4/9/2023 | $ - | $ - | $ - | $ - | $ 3,310,102.36 | 15,416.92 | 3,325,519.28 |
| 4/10/2023 | $ - | $ - | $ 64,659.61 | $ - | $ 3,325,519.28 | 15,488.72 | 3,341,008.00 |
| 4/11/2023 | $ - | $ 82,438.53 | $ - | $ - | $ 3,341,008.00 | 15,560.86 | 3,356,568.86 |
| 4/12/2023 | $ - | $ - | $ - | $ - | $ 3,356,568.86 | 15,633.33 | 3,372,202.19 |
| 4/13/2023 | $ - | $ - | $ - | $ - | $ 3,372,202.19 | 15,706.15 | 3,387,908.34 |
| 4/14/2023 | $ - | $ - | $ - | $ - | $ 3,387,908.34 | 15,779.30 | 3,403,687.64 |
| 4/15/2023 | $ - | $ - | $ - | $ - | $ 3,403,687.64 | 15,852.79 | 3,419,540.43 |
| 4/16/2023 | $ - | $ - | $ - | $ - | $ 3,419,540.43 | 15,926.63 | 3,435,467.06 |
| 4/17/2023 | $ - | $ - | $ 61,964.50 | $ - | $ 3,435,467.06 | 16,000.81 | 3,451,467.86 |
| 4/18/2023 | $ - | $ 85,133.64 | $ - | $ - | $ 3,451,467.86 | 16,075.33 | 3,467,543.19 |
| 4/19/2023 | $ - | $ - | $ - | $ - | $ 3,467,543.19 | 16,150.20 | 3,483,693.39 |
| 4/20/2023 | $ - | $ - | $ - | $ - | $ 3,483,693.39 | 16,225.42 | 3,499,918.82 |
| 4/21/2023 | $ - | $ - | $ - | $ - | $ 3,499,918.82 | 16,300.99 | 3,516,219.81 |
| 4/22/2023 | $ - | $ - | $ - | $ - | $ 3,516,219.81 | 16,376.91 | 3,532,596.72 |
| 4/23/2023 | $ - | $ - | $ - | $ - | $ 3,532,596.72 | 16,453.19 | 3,549,049.91 |
| 4/24/2023 | $ - | $ - | $ 59,181.29 | $ - | $ 3,549,049.91 | 16,529.82 | 3,565,579.73 |
| 4/25/2023 | $ - | $ 87,916.85 | $ - | $ - | $ 3,565,579.73 | 16,606.81 | 3,582,186.54 |
| 4/26/2023 | $ - | $ - | $ - | $ - | $ 3,582,186.54 | 16,684.16 | 3,598,870.70 |
| 4/27/2023 | $ - | $ - | $ - | $ - | $ 3,598,870.70 | 16,761.86 | 3,615,632.56 |
| 4/28/2023 | $ - | $ - | $ - | $ 60,000.00 | $ 3,615,632.56 | 16,560.48 | 3,572,193.04 |
| 4/29/2023 | $ - | $ - | $ - | $ - | $ 3,572,193.04 | 16,637.61 | 3,588,830.66 |
| 4/30/2023 | $ - | $ - | $ - | $ - | $ 3,588,830.66 | 16,715.10 | 3,605,545.76 |
| 5/1/2023 | $ - | $ - | $ 56,307.08 | $ - | $ 3,605,545.76 | 16,792.95 | 3,622,338.71 |
| 5/2/2023 | $ - | $ 90,791.06 | $ - | $ - | $ 3,622,338.71 | 16,871.17 | 3,639,209.88 |
| 5/3/2023 | $ - | $ - | $ - | $ - | $ 3,639,209.88 | 16,949.74 | 3,656,159.62 |
| 5/4/2023 | $ - | $ - | $ - | $ - | $ 3,656,159.62 | 17,028.69 | 3,673,188.31 |
| 5/5/2023 | $ - | $ - | $ - | $ - | $ 3,673,188.31 | 17,108.00 | 3,690,296.31 |
| 5/6/2023 | $ - | $ - | $ - | $ - | $ 3,690,296.31 | 17,187.68 | 3,707,483.99 |
| 5/7/2023 | $ - | $ - | $ - | $ - | $ 3,707,483.99 | 17,267.73 | 3,724,751.73 |
| 5/8/2023 | $ - | $ - | $ 53,338.91 | $ - | $ 3,724,751.73 | 17,348.16 | 3,742,099.88 |
| 5/9/2023 | $ - | $ 93,759.23 | $ - | $ - | $ 3,742,099.88 | 17,428.96 | 3,759,528.84 |
| 5/10/2023 | $ - | $ - | $ - | $ - | $ 3,759,528.84 | 17,510.13 | 3,777,038.98 |
| 5/11/2023 | $ - | $ - | $ - | $ 60,000.00 | $ 3,777,038.98 | 17,312.24 | 3,734,351.21 |
| 5/12/2023 | $ - | $ - | $ - | $ - | $ 3,734,351.21 | 17,392.87 | 3,751,744.08 |
| 5/13/2023 | $ - | $ - | $ - | $ - | $ 3,751,744.08 | 17,473.88 | 3,769,217.96 |
| 5/14/2023 | $ - | $ - | $ - | $ - | $ 3,769,217.96 | 17,555.26 | 3,786,773.22 |
| 5/15/2023 | $ - | $ - | $ 50,273.71 | $ - | $ 3,786,773.22 | 17,637.03 | 3,804,410.25 |
| 5/16/2023 | $ - | $ 96,824.43 | $ - | $ - | $ 3,804,410.25 | 17,719.17 | 3,822,129.42 |
| 5/17/2023 | $ - | $ - | $ - | $ - | $ 3,822,129.42 | 17,801.70 | 3,839,931.12 |
| 5/18/2023 | $ - | $ - | $ - | $ - | $ 3,839,931.12 | 17,884.61 | 3,857,815.73 |
| 5/19/2023 | $ - | $ - | $ - | $ - | $ 3,857,815.73 | 17,967.91 | 3,875,783.63 |
| 5/20/2023 | $ - | $ - | $ - | $ - | $ 3,875,783.63 | 18,051.60 | 3,893,835.23 |

EXHIBIT 2, PAGE 35

| Date | | | | | | |
|---|---|---|---|---|---|---|
| 5/21/2023 | $ - | $ - | $ - | $ 3,893,835.23 | $ 18,135.67 | $ 3,911,970.90 |
| 5/22/2023 | $ - | $ - | $ - | $ 3,911,970.90 | $ 18,220.14 | $ 3,930,191.04 |
| 5/23/2023 | $ - | $ - | $ - | $ 3,930,191.04 | $ 18,305.00 | $ 3,948,496.04 |
| 5/24/2023 | $ 99,989.85 | $ 47,108.29 | $ - | $ 3,898,496.04 | $ 18,157.38 | $ 3,916,653.42 |
| 5/25/2023 | $ - | $ - | $ 50,000.00 | $ 3,916,653.42 | $ 18,241.95 | $ 3,934,895.36 |
| 5/26/2023 | $ - | $ - | $ - | $ 3,934,895.36 | $ 18,326.91 | $ 3,953,222.27 |
| 5/27/2023 | $ - | $ - | $ - | $ 3,953,222.27 | $ 18,412.27 | $ 3,971,634.54 |
| 5/28/2023 | $ - | $ - | $ - | $ 3,971,634.54 | $ 18,498.02 | $ 3,990,132.57 |
| 5/29/2023 | $ - | $ - | $ - | $ 3,990,132.57 | $ 18,584.18 | $ 4,008,716.75 |
| 5/30/2023 | $ 103,258.75 | $ 43,839.39 | $ - | $ 4,008,716.75 | $ 18,670.74 | $ 4,027,387.48 |
| 5/31/2023 | $ - | $ - | $ - | $ 4,027,387.48 | $ 18,757.70 | $ 4,046,145.18 |
| 6/1/2023 | $ - | $ - | $ - | $ 4,046,145.18 | $ 18,845.06 | $ 4,064,990.24 |
| 6/2/2023 | $ - | $ - | $ - | $ 4,064,990.24 | $ 18,932.83 | $ 4,083,923.07 |
| 6/3/2023 | $ - | $ - | $ - | $ 4,083,923.07 | $ 19,021.01 | $ 4,102,944.08 |
| 6/4/2023 | $ - | $ - | $ - | $ 4,102,944.08 | $ 19,109.60 | $ 4,122,053.68 |
| 6/5/2023 | $ - | $ - | $ - | $ 4,122,053.68 | $ 19,198.61 | $ 4,141,252.29 |
| 6/6/2023 | $ 106,634.51 | $ 40,463.63 | $ - | $ 4,141,252.29 | $ 19,288.02 | $ 4,160,540.31 |
| 6/7/2023 | $ - | $ - | $ - | $ 4,160,540.31 | $ 19,377.86 | $ 4,179,918.17 |
| 6/8/2023 | $ - | $ - | $ - | $ 4,179,918.17 | $ 19,468.11 | $ 4,199,386.28 |
| 6/9/2023 | $ - | $ - | $ - | $ 4,199,386.28 | $ 19,558.79 | $ 4,218,945.07 |
| 6/10/2023 | $ - | $ - | $ - | $ 4,218,945.07 | $ 19,649.88 | $ 4,238,594.95 |
| 6/11/2023 | $ - | $ - | $ - | $ 4,238,594.95 | $ 19,741.40 | $ 4,258,336.35 |
| 6/12/2023 | $ - | $ - | $ - | $ 4,258,336.35 | $ 19,833.35 | $ 4,278,169.70 |
| 6/13/2023 | $ 110,120.64 | $ 36,977.50 | $ - | $ 4,278,169.70 | $ 19,925.72 | $ 4,298,095.42 |
| 6/14/2023 | $ - | $ - | $ - | $ 4,298,095.42 | $ 20,018.53 | $ 4,318,113.95 |
| 6/15/2023 | $ - | $ - | $ - | $ 4,318,113.95 | $ 20,111.76 | $ 4,338,225.71 |
| 6/16/2023 | $ - | $ - | $ - | $ 4,338,225.71 | $ 20,205.43 | $ 4,358,431.15 |
| 6/17/2023 | $ - | $ - | $ - | $ 4,358,431.15 | $ 20,299.54 | $ 4,378,730.69 |
| 6/18/2023 | $ - | $ - | $ - | $ 4,378,730.69 | $ 20,394.09 | $ 4,399,124.78 |
| 6/19/2023 | $ - | $ - | $ - | $ 4,399,124.78 | $ 20,489.07 | $ 4,419,613.85 |
| 6/20/2023 | $ 113,720.74 | $ 33,377.40 | $ - | $ 4,419,613.85 | $ 20,584.50 | $ 4,440,198.35 |
| 6/21/2023 | $ - | $ - | $ - | $ 4,440,198.35 | $ 20,680.38 | $ 4,460,878.73 |
| 6/22/2023 | $ - | $ - | $ - | $ 4,460,878.73 | $ 20,776.70 | $ 4,481,655.42 |
| 6/23/2023 | $ - | $ - | $ - | $ 4,481,655.42 | $ 20,873.46 | $ 4,502,528.89 |
| 6/24/2023 | $ - | $ - | $ - | $ 4,502,528.89 | $ 20,970.68 | $ 4,523,499.57 |
| 6/25/2023 | $ - | $ - | $ - | $ 4,523,499.57 | $ 21,068.35 | $ 4,544,567.92 |
| 6/26/2023 | $ - | $ - | $ - | $ 4,544,567.92 | $ 21,166.48 | $ 4,565,734.41 |
| 6/27/2023 | $ 117,438.53 | $ 29,659.61 | $ - | $ 4,565,734.41 | $ 21,265.06 | $ 4,586,999.47 |
| 6/28/2023 | $ - | $ - | $ - | $ 4,586,999.47 | $ 21,364.11 | $ 4,608,363.58 |
| 6/29/2023 | $ - | $ - | $ - | $ 4,608,363.58 | $ 21,463.61 | $ 4,629,827.19 |
| 6/30/2023 | $ - | $ - | $ - | $ 4,629,827.19 | $ 21,563.58 | $ 4,651,390.77 |
| 7/1/2023 | $ - | $ - | $ - | $ 4,651,390.77 | $ 21,664.01 | $ 4,673,054.78 |
| 7/2/2023 | $ - | $ - | $ - | $ 4,673,054.78 | $ 21,764.91 | $ 4,694,819.69 |
| 7/3/2023 | $ - | $ - | $ - | $ 4,694,819.69 | $ 21,866.28 | $ 4,716,685.97 |
| 7/4/2023 | $ 121,277.87 | $ 25,820.27 | $ - | $ 4,716,685.97 | $ 21,968.13 | $ 4,738,654.10 |
| 7/5/2023 | $ - | $ - | $ - | $ 4,738,654.10 | $ 22,070.44 | $ 4,760,724.54 |
| 7/6/2023 | $ - | $ - | $ - | $ 4,760,724.54 | $ 22,173.24 | $ 4,782,897.78 |
| 7/7/2023 | $ - | $ - | $ - | $ 4,782,897.78 | $ 22,276.51 | $ 4,805,174.29 |
| 7/8/2023 | $ - | $ - | $ - | $ 4,805,174.29 | $ 22,380.26 | $ 4,827,554.56 |
| 7/9/2023 | $ - | $ - | $ - | $ 4,827,554.56 | $ 22,484.50 | $ 4,850,039.06 |
| 7/10/2023 | $ - | $ - | $ - | $ 4,850,039.06 | $ 22,589.22 | $ 4,872,628.28 |
| 7/11/2023 | $ 125,242.72 | $ 21,855.42 | $ - | $ 4,872,628.28 | $ 22,694.43 | $ 4,895,322.71 |
| 7/12/2023 | $ - | $ - | $ - | $ 4,895,322.71 | $ 22,800.13 | $ 4,918,122.85 |

EXHIBIT 2, PAGE 36

| Date | | | | | |
|---|---|---|---|---|---|
| 7/13/2023 | $ - | $ - | $ 4,918,122.85 | $ 22,906.33 | $ 4,941,029.17 |
| 7/14/2023 | $ - | $ - | $ 4,941,029.17 | $ 23,013.01 | $ 4,964,042.18 |
| 7/15/2023 | $ - | $ - | $ 4,964,042.18 | $ 23,120.20 | $ 4,987,162.38 |
| 7/16/2023 | $ - | $ - | $ 4,987,162.38 | $ 23,227.88 | $ 5,010,390.26 |
| 7/17/2023 | $ - | $ - | $ 5,010,390.26 | $ 23,336.06 | $ 5,033,726.32 |
| 7/18/2023 | $ 129,337.19 | $ 17,760.95 | $ 5,033,726.32 | $ 23,444.75 | $ 5,057,171.08 |
| 7/19/2023 | $ - | $ - | $ 5,057,171.08 | $ 23,553.95 | $ 5,080,725.03 |
| 7/20/2023 | $ - | $ - | $ 5,080,725.03 | $ 23,663.65 | $ 5,104,388.68 |
| 7/21/2023 | $ - | $ - | $ 5,104,388.68 | $ 23,773.87 | $ 5,128,162.54 |
| 7/22/2023 | $ - | $ - | $ 5,128,162.54 | $ 23,884.59 | $ 5,152,047.13 |
| 7/23/2023 | $ - | $ - | $ 5,152,047.13 | $ 23,995.84 | $ 5,176,042.97 |
| 7/24/2023 | $ - | $ - | $ 5,176,042.97 | $ 24,107.60 | $ 5,200,150.57 |
| 7/25/2023 | $ - | $ 13,532.61 | $ 5,200,150.57 | $ 24,219.88 | $ 5,224,370.45 |
| 7/26/2023 | $ 133,565.53 | $ - | $ 5,224,370.45 | $ 24,332.68 | $ 5,248,703.13 |
| 7/27/2023 | $ - | $ - | $ 5,248,703.13 | $ 24,446.01 | $ 5,273,149.15 |
| 7/28/2023 | $ - | $ - | $ 5,273,149.15 | $ 24,559.87 | $ 5,297,709.02 |
| 7/29/2023 | $ - | $ - | $ 5,297,709.02 | $ 24,674.26 | $ 5,322,383.28 |
| 7/30/2023 | $ - | $ - | $ 5,322,383.28 | $ 24,789.18 | $ 5,347,172.46 |
| 7/31/2023 | $ - | $ - | $ 5,347,172.46 | $ 24,904.64 | $ 5,372,077.10 |
| 8/1/2023 | $ 137,932.09 | $ 9,166.05 | $ 5,372,077.10 | $ 25,020.63 | $ 5,397,097.73 |
| 8/2/2023 | $ - | $ - | $ 5,397,097.73 | $ 25,137.17 | $ 5,422,234.90 |
| 8/3/2023 | $ - | $ - | $ 5,422,234.90 | $ 25,254.24 | $ 5,447,489.15 |
| 8/4/2023 | $ - | $ - | $ 5,447,489.15 | $ 25,371.87 | $ 5,472,861.01 |
| 8/5/2023 | $ - | $ - | $ 5,472,861.01 | $ 25,490.04 | $ 5,498,351.05 |
| 8/6/2023 | $ - | $ - | $ 5,498,351.05 | $ 25,608.76 | $ 5,523,959.81 |
| 8/7/2023 | $ - | $ - | $ 5,523,959.81 | $ 25,728.03 | $ 5,549,687.84 |
| 8/8/2023 | $ - | $ - | $ 5,549,687.84 | $ 25,847.86 | $ 5,575,535.70 |
| 8/9/2023 | $ 142,441.41 | $ 4,656.73 | $ 5,575,535.70 | $ 25,968.25 | $ 5,601,503.95 |
| 8/10/2023 | $ - | $ - | $ 5,601,503.95 | $ 26,089.20 | $ 5,627,593.15 |
| 8/11/2023 | $ - | $ - | $ 5,627,593.15 | $ 26,210.71 | $ 5,653,803.85 |
| 8/12/2023 | $ - | $ - | $ 5,653,803.85 | $ 26,332.79 | $ 5,680,136.64 |
| 8/13/2023 | $ - | $ - | $ 5,680,136.64 | $ 26,455.43 | $ 5,706,592.07 |
| 8/14/2023 | $ - | $ - | $ 5,706,592.07 | $ 26,578.65 | $ 5,733,170.72 |
| 8/15/2023 | $ - | $ - | $ 5,733,170.72 | $ 26,702.44 | $ 5,759,873.16 |
| 8/16/2023 | $ - | $ - | $ 5,759,873.16 | $ 26,826.81 | $ 5,786,699.96 |
| 8/17/2023 | $ - | $ - | $ 5,786,699.96 | $ 26,951.75 | $ 5,813,651.72 |
| 8/18/2023 | $ - | $ - | $ 5,813,651.72 | $ 27,077.28 | $ 5,840,729.00 |
| 8/19/2023 | $ - | $ - | $ 5,840,729.00 | $ 27,203.40 | $ 5,867,932.39 |
| 8/20/2023 | $ - | $ - | $ 5,867,932.39 | $ 27,330.10 | $ 5,895,262.49 |
| 8/21/2023 | $ - | $ - | $ 5,895,262.49 | $ 27,457.39 | $ 5,922,719.88 |
| 8/22/2023 | $ - | $ - | $ 5,922,719.88 | $ 27,585.27 | $ 5,950,305.15 |
| 8/23/2023 | $ - | $ - | $ 5,950,305.15 | $ 27,713.75 | $ 5,978,018.90 |
| 8/24/2023 | $ - | $ - | $ 5,978,018.90 | $ 27,842.83 | $ 6,005,861.73 |
| 8/25/2023 | $ - | $ - | $ 6,005,861.73 | $ 27,972.51 | $ 6,033,834.23 |
| 8/26/2023 | $ - | $ - | $ 6,033,834.23 | $ 28,102.79 | $ 6,061,597.02 |
| 8/27/2023 | $ - | $ - | $ 6,061,597.02 | $ 28,233.68 | $ 6,090,170.70 |
| 8/28/2023 | $ - | $ - | $ 6,090,170.70 | $ 28,365.18 | $ 6,118,535.88 |
| 8/29/2023 | $ - | $ - | $ 6,118,535.88 | $ 28,497.29 | $ 6,147,033.17 |
| 8/30/2023 | $ - | $ - | $ 6,147,033.17 | $ 28,630.02 | $ 6,175,663.19 |
| 8/31/2023 | $ - | $ - | $ 6,175,663.19 | $ 28,763.36 | $ 6,204,426.55 |
| 9/1/2023 | $ - | $ - | $ 6,204,426.55 | $ 28,897.33 | $ 6,233,323.88 |
| 9/2/2023 | $ - | $ - | $ 6,233,323.88 | $ 29,031.92 | $ 6,262,355.80 |
| 9/3/2023 | $ - | $ - | $ 6,262,355.80 | $ 29,167.14 | $ 6,291,522.94 |

EXHIBIT 2, PAGE 37

| Date | | | | Amount | Interest | Balance |
|---|---|---|---|---|---|---|
| 9/4/2023 | $ - | - | $ - | $ 6,291,522.94 | $ 29,302.98 | $ 6,320,825.92 |
| 9/5/2023 | $ - | - | $ - | $ 6,320,825.92 | $ 29,439.46 | $ 6,350,265.38 |
| 9/6/2023 | $ - | - | $ - | $ 6,350,265.38 | $ 29,576.58 | $ 6,379,841.96 |
| 9/7/2023 | $ - | - | $ - | $ 6,379,841.96 | $ 29,714.33 | $ 6,409,556.29 |
| 9/8/2023 | $ - | - | $ - | $ 6,409,556.29 | $ 29,852.73 | $ 6,439,409.02 |
| 9/9/2023 | $ - | - | $ - | $ 6,439,409.02 | $ 29,991.77 | $ 6,469,400.79 |
| 9/10/2023 | $ - | - | $ - | $ 6,469,400.79 | $ 30,131.46 | $ 6,499,532.25 |
| 9/11/2023 | $ - | - | $ - | $ 6,499,532.25 | $ 30,271.79 | $ 6,529,804.04 |
| 9/12/2023 | $ - | - | $ - | $ 6,529,804.04 | $ 30,412.79 | $ 6,560,216.83 |
| 9/13/2023 | $ - | - | $ - | $ 6,560,216.83 | $ 30,554.43 | $ 6,590,771.26 |
| 9/14/2023 | $ - | - | $ - | $ 6,590,771.26 | $ 30,696.74 | $ 6,621,468.00 |
| 9/15/2023 | $ - | - | $ - | $ 6,621,468.00 | $ 30,839.71 | $ 6,652,307.72 |
| 9/16/2023 | $ - | - | $ - | $ 6,652,307.72 | $ 30,983.35 | $ 6,683,291.07 |
| 9/17/2023 | $ - | - | $ - | $ 6,683,291.07 | $ 31,127.66 | $ 6,714,418.72 |
| 9/18/2023 | $ - | - | $ - | $ 6,714,418.72 | $ 31,272.64 | $ 6,745,691.36 |
| 9/19/2023 | $ - | - | $ - | $ 6,745,691.36 | $ 31,418.29 | $ 6,777,109.65 |
| 9/20/2023 | $ - | - | $ - | $ 6,777,109.65 | $ 31,564.62 | $ 6,808,674.27 |
| 9/21/2023 | $ - | - | $ - | $ 6,808,674.27 | $ 31,711.63 | $ 6,840,385.90 |
| 9/22/2023 | $ - | - | $ - | $ 6,840,385.90 | $ 31,859.33 | $ 6,872,245.23 |
| 9/23/2023 | $ - | - | $ - | $ 6,872,245.23 | $ 32,007.72 | $ 6,904,252.95 |
| 9/24/2023 | $ - | - | $ - | $ 6,904,252.95 | $ 32,156.79 | $ 6,936,409.75 |
| 9/25/2023 | $ - | - | $ - | $ 6,936,409.75 | $ 32,306.57 | $ 6,968,716.31 |
| 9/26/2023 | $ - | - | $ - | $ 6,968,716.31 | $ 32,457.03 | $ 7,001,173.35 |
| 9/27/2023 | $ - | - | $ - | $ 7,001,173.35 | $ 32,608.20 | $ 7,033,781.55 |
| 9/28/2023 | $ - | - | $ - | $ 7,033,781.55 | $ 32,760.08 | $ 7,066,541.63 |
| 9/29/2023 | $ - | - | $ - | $ 7,066,541.63 | $ 32,912.66 | $ 7,099,454.29 |
| 9/30/2023 | $ - | - | $ - | $ 7,099,454.29 | $ 33,065.95 | $ 7,132,520.24 |
| 10/1/2023 | $ - | - | $ - | $ 7,132,520.24 | $ 33,219.96 | $ 7,165,740.20 |
| 10/2/2023 | $ - | - | $ - | $ 7,165,740.20 | $ 33,374.68 | $ 7,199,114.88 |
| 10/3/2023 | $ - | - | $ - | $ 7,199,114.88 | $ 33,530.12 | $ 7,232,645.00 |
| 10/4/2023 | $ - | - | $ - | $ 7,232,645.00 | $ 33,686.29 | $ 7,266,331.29 |
| 10/5/2023 | $ - | - | $ - | $ 7,266,331.29 | $ 33,843.19 | $ 7,300,174.48 |
| 10/6/2023 | $ - | - | $ - | $ 7,300,174.48 | $ 34,000.81 | $ 7,334,175.29 |
| 10/7/2023 | $ - | - | $ - | $ 7,334,175.29 | $ 34,159.17 | $ 7,368,334.47 |
| 10/8/2023 | $ - | - | $ - | $ 7,368,334.47 | $ 34,318.27 | $ 7,402,652.74 |
| 10/9/2023 | $ - | - | $ - | $ 7,402,652.74 | $ 34,478.11 | $ 7,437,130.85 |
| 10/10/2023 | $ - | - | $ - | $ 7,437,130.85 | $ 34,638.69 | $ 7,471,769.54 |
| 10/11/2023 | $ - | - | $ - | $ 7,471,769.54 | $ 34,800.02 | $ 7,506,569.56 |
| 10/12/2023 | $ - | - | $ - | $ 7,506,569.56 | $ 34,962.10 | $ 7,541,531.66 |
| 10/13/2023 | $ - | - | $ - | $ 7,541,531.66 | $ 35,124.94 | $ 7,576,656.61 |
| 10/14/2023 | $ - | - | $ - | $ 7,576,656.61 | $ 35,288.54 | $ 7,611,945.14 |
| 10/15/2023 | $ - | - | $ - | $ 7,611,945.14 | $ 35,452.90 | $ 7,647,398.04 |
| 10/16/2023 | $ - | - | $ - | $ 7,647,398.04 | $ 35,618.02 | $ 7,683,016.06 |
| 10/17/2023 | $ - | - | $ - | $ 7,683,016.06 | $ 35,783.91 | $ 7,718,799.97 |
| 10/18/2023 | $ - | - | $ - | $ 7,718,799.97 | $ 35,950.58 | $ 7,754,750.54 |
| 10/19/2023 | $ - | - | $ - | $ 7,754,750.54 | $ 36,118.02 | $ 7,790,868.56 |
| 10/20/2023 | $ - | - | $ - | $ 7,790,868.56 | $ 36,286.24 | $ 7,827,154.80 |
| 10/21/2023 | $ - | - | $ - | $ 7,827,154.80 | $ 36,455.24 | $ 7,863,610.04 |
| 10/22/2023 | $ - | - | $ - | $ 7,863,610.04 | $ 36,625.03 | $ 7,900,235.07 |
| 10/23/2023 | $ - | - | $ - | $ 7,900,235.07 | $ 36,795.62 | $ 7,937,030.69 |
| 10/24/2023 | $ - | - | $ - | $ 7,937,030.69 | $ 36,966.99 | $ 7,973,997.68 |
| 10/25/2023 | $ - | - | $ - | $ 7,973,997.68 | $ 37,139.17 | $ 8,011,136.85 |
| 10/26/2023 | - | - | - | $ 8,011,136.85 | $ 37,312.14 | $ 8,048,448.99 |

| Date | | | | Amount | Interest | Balance |
|---|---|---|---|---|---|---|
| 10/27/2023 | $ | - | $ | 8,048,448.99 | 37,485.93 | 8,085,934.92 |
| 10/28/2023 | $ | - | $ | 8,085,934.92 | 37,660.52 | 8,123,595.44 |
| 10/29/2023 | $ | - | $ | 8,123,595.44 | 37,835.92 | 8,161,431.36 |
| 10/30/2023 | $ | - | $ | 8,161,431.36 | 38,012.15 | 8,199,443.51 |
| 10/31/2023 | $ | - | $ | 8,199,443.51 | 38,189.19 | 8,237,632.69 |
| 11/1/2023 | $ | - | $ | 8,237,632.69 | 38,367.06 | 8,275,999.75 |
| 11/2/2023 | $ | - | $ | 8,275,999.75 | 38,545.75 | 8,314,545.50 |
| 11/3/2023 | $ | - | $ | 8,314,545.50 | 38,725.28 | 8,353,270.78 |
| 11/4/2023 | $ | - | $ | 8,353,270.78 | 38,905.64 | 8,392,176.43 |
| 11/5/2023 | $ | - | $ | 8,392,176.43 | 39,086.85 | 8,431,263.28 |
| 11/6/2023 | $ | - | $ | 8,431,263.28 | 39,268.90 | 8,470,532.18 |
| 11/7/2023 | $ | - | $ | 8,470,532.18 | 39,451.79 | 8,509,983.97 |
| 11/8/2023 | $ | - | $ | 8,509,983.97 | 39,635.54 | 8,549,619.51 |
| 11/9/2023 | $ | - | $ | 8,549,619.51 | 39,820.15 | 8,589,439.66 |
| 11/10/2023 | $ | - | $ | 8,589,439.66 | 40,005.61 | 8,629,445.27 |
| 11/11/2023 | $ | - | $ | 8,629,445.27 | 40,191.94 | 8,669,637.20 |
| 11/12/2023 | $ | - | $ | 8,669,637.20 | 40,379.13 | 8,710,016.33 |
| 11/13/2023 | $ | - | $ | 8,710,016.33 | 40,567.20 | 8,750,583.53 |
| 11/14/2023 | $ | - | $ | 8,750,583.53 | 40,756.14 | 8,791,339.68 |
| 11/15/2023 | $ | - | $ | 8,791,339.68 | 40,945.97 | 8,832,285.64 |
| 11/16/2023 | $ | - | $ | 8,832,285.64 | 41,136.67 | 8,873,422.32 |
| 11/17/2023 | $ | - | $ | 8,873,422.32 | 41,328.27 | 8,914,750.58 |
| 11/18/2023 | $ | - | $ | 8,914,750.58 | 41,520.76 | 8,956,271.34 |
| 11/19/2023 | $ | - | $ | 8,956,271.34 | 41,714.14 | 8,997,985.48 |
| 11/20/2023 | $ | - | $ | 8,997,985.48 | 41,908.43 | 9,039,893.91 |
| 11/21/2023 | $ | - | $ | 9,039,893.91 | 42,103.62 | 9,081,997.52 |
| 11/22/2023 | $ | - | $ | 9,081,997.52 | 42,299.71 | 9,124,297.24 |
| 11/23/2023 | $ | - | $ | 9,124,297.24 | 42,496.73 | 9,166,793.96 |
| 11/24/2023 | $ | - | $ | 9,166,793.96 | 42,694.66 | 9,209,488.62 |
| 11/25/2023 | $ | - | $ | 9,209,488.62 | 42,893.51 | 9,252,382.13 |
| 11/26/2023 | $ | - | $ | 9,252,382.13 | 43,093.29 | 9,295,475.41 |
| 11/27/2023 | $ | - | $ | 9,295,475.41 | 43,294.00 | 9,338,769.41 |
| 11/28/2023 | $ | - | $ | 9,338,769.41 | 43,495.64 | 9,382,265.05 |
| 11/29/2023 | $ | - | $ | 9,382,265.05 | 43,698.22 | 9,425,963.27 |
| 11/30/2023 | $ | - | $ | 9,425,963.27 | 43,901.75 | 9,469,865.02 |
| 12/1/2023 | $ | - | $ | 9,469,865.02 | 44,106.22 | 9,513,971.24 |
| 12/2/2023 | $ | - | $ | 9,513,971.24 | 44,311.65 | 9,558,282.88 |
| 12/3/2023 | $ | - | $ | 9,558,282.88 | 44,518.03 | 9,602,800.91 |
| 12/4/2023 | $ | - | $ | 9,602,800.91 | 44,725.37 | 9,647,526.29 |
| 12/5/2023 | $ | - | $ | 9,647,526.29 | 44,933.68 | 9,692,459.97 |
| 12/6/2023 | $ | - | $ | 9,692,459.97 | 45,142.96 | 9,737,602.94 |
| 12/7/2023 | $ | - | $ | 9,737,602.94 | 45,353.22 | 9,782,956.15 |
| 12/8/2023 | $ | - | $ | 9,782,956.15 | 45,564.45 | 9,828,520.61 |
| 12/9/2023 | $ | - | $ | 9,828,520.61 | 45,776.67 | 9,874,297.28 |
| 12/10/2023 | $ | - | $ | 9,874,297.28 | 45,989.88 | 9,920,287.16 |
| 12/11/2023 | $ | - | $ | 9,920,287.16 | 46,204.08 | 9,966,491.23 |
| 12/12/2023 | $ | - | $ | 9,966,491.23 | 46,419.27 | 10,012,910.51 |
| 12/13/2023 | $ | - | $ | 10,012,910.51 | 46,635.47 | 10,059,545.98 |
| 12/14/2023 | $ | - | $ | 10,059,545.98 | 46,852.68 | 10,106,398.66 |
| 12/15/2023 | $ | - | $ | 10,106,398.66 | 47,070.90 | 10,153,469.56 |
| 12/16/2023 | $ | - | $ | 10,153,469.56 | 47,290.13 | 10,200,759.69 |
| 12/17/2023 | $ | - | $ | 10,200,759.69 | 47,510.39 | 10,248,270.08 |
| 12/18/2023 | $ | - | $ | 10,248,270.08 | 47,731.67 | 10,296,001.75 |

EXHIBIT 2, PAGE 39

Case 8:23-bk-10571-SC    Claim 127-1    Filed 07/24/23    Desc Main Document    Page 21
of 77

| Date | | | | | |
|---|---|---|---|---|---|
| 12/19/2023 | $ - | $ | $ 10,296,021.75 | $ 47,953.98 | $ 10,343,955.73 |
| 12/20/2023 | $ - | $ | $ 10,343,955.73 | 48,177.33 | 10,392,133.06 |
| 12/21/2023 | $ - | $ | $ 10,392,133.06 | 48,401.72 | 10,440,534.77 |
| 12/22/2023 | $ - | $ | $ 10,440,534.77 | 48,627.15 | 10,489,161.92 |
| 12/23/2023 | $ - | $ | $ 10,489,161.92 | 48,853.63 | 10,538,015.55 |
| 12/24/2023 | $ - | $ | $ 10,538,015.55 | 49,081.17 | 10,587,096.72 |
| 12/25/2023 | $ - | $ | $ 10,587,096.72 | 49,309.77 | 10,636,406.49 |
| 12/26/2023 | $ - | $ | $ 10,636,406.49 | 49,539.43 | 10,685,945.91 |
| 12/27/2023 | $ - | $ | $ 10,685,945.91 | 49,770.16 | 10,735,716.07 |
| 12/28/2023 | $ - | $ | $ 10,735,716.07 | 50,001.97 | 10,785,718.04 |
| 12/29/2023 | $ - | $ | $ 10,785,718.04 | 50,234.85 | 10,835,952.89 |
| 12/30/2023 | $ - | $ | $ 10,835,952.89 | 50,468.82 | 10,886,421.71 |
| 12/31/2023 | $ - | $ | $ 10,886,421.71 | 50,703.88 | 10,937,125.59 |
| 1/1/2024 | $ - | $ | $ 10,937,125.59 | 50,940.04 | 10,988,065.63 |
| 1/2/2024 | $ - | $ | $ 10,988,065.63 | 51,177.29 | 11,039,242.92 |
| 1/3/2024 | $ - | $ | $ 11,039,242.92 | 51,415.65 | 11,090,658.57 |
| 1/4/2024 | $ - | $ | $ 11,090,658.57 | 51,655.12 | 11,142,313.70 |
| 1/5/2024 | $ - | $ | $ 11,142,313.70 | 51,895.71 | 11,194,209.40 |
| 1/6/2024 | $ - | $ | $ 11,194,209.40 | 52,137.41 | 11,246,346.82 |
| 1/7/2024 | $ - | $ | $ 11,246,346.82 | 52,380.25 | 11,298,727.06 |
| 1/8/2024 | $ - | $ | $ 11,298,727.06 | 52,624.21 | 11,351,351.27 |
| 1/9/2024 | $ - | $ | $ 11,351,351.27 | 52,869.31 | 11,404,220.58 |
| 1/10/2024 | $ - | $ | $ 11,404,220.58 | 53,115.55 | 11,457,336.13 |
| 1/11/2024 | $ - | $ | $ 11,457,336.13 | 53,362.94 | 11,510,699.06 |
| 1/12/2024 | $ - | $ | $ 11,510,699.06 | 53,611.48 | 11,564,310.54 |
| 1/13/2024 | $ - | $ | $ 11,564,310.54 | 53,861.17 | 11,618,171.71 |
| 1/14/2024 | $ - | $ | $ 11,618,171.71 | 54,112.03 | 11,672,283.74 |
| 1/15/2024 | $ - | $ | $ 11,672,283.74 | 54,364.06 | 11,726,647.80 |
| 1/16/2024 | $ - | $ | $ 11,726,647.80 | 54,617.26 | 11,781,265.07 |
| 1/17/2024 | $ - | $ | $ 11,781,265.07 | 54,871.65 | 11,836,136.71 |
| 1/18/2024 | $ - | $ | $ 11,836,136.71 | 55,127.21 | 11,891,263.92 |
| 1/19/2024 | $ - | $ | $ 11,891,263.92 | 55,383.97 | 11,946,647.89 |
| 1/20/2024 | $ - | $ | $ 11,946,647.89 | 55,641.92 | 12,002,289.81 |
| 1/21/2024 | $ - | $ | $ 12,002,289.81 | 55,901.08 | 12,058,190.89 |
| 1/22/2024 | $ - | $ | $ 12,058,190.89 | 56,161.44 | 12,114,352.33 |
| 1/23/2024 | $ - | $ | $ 12,114,352.33 | 56,423.01 | 12,170,775.34 |
| 1/24/2024 | $ - | $ | $ 12,170,775.34 | 56,685.80 | 12,227,461.14 |
| 1/25/2024 | $ - | $ | $ 12,227,461.14 | 56,949.82 | 12,284,410.96 |
| 1/26/2024 | $ - | $ | $ 12,284,410.96 | 57,215.06 | 12,341,626.02 |
| 1/27/2024 | $ - | $ | $ 12,341,626.02 | 57,481.55 | 12,399,107.57 |
| 1/28/2024 | $ - | $ | $ 12,399,107.57 | 57,749.27 | 12,456,856.84 |
| 1/29/2024 | $ - | $ | $ 12,456,856.84 | 58,018.24 | 12,514,875.08 |
| 1/30/2024 | $ - | $ | $ 12,514,875.08 | 58,288.46 | 12,573,163.53 |
| 1/31/2024 | $ - | $ | $ 12,573,163.53 | 58,559.94 | 12,631,723.47 |
| 2/1/2024 | $ - | $ | $ 12,631,723.47 | 58,832.68 | 12,690,556.16 |
| 2/2/2024 | $ - | $ | $ 12,690,556.16 | 59,106.70 | 12,749,662.86 |
| 2/3/2024 | $ - | $ | $ 12,749,662.86 | 59,381.99 | 12,809,044.85 |
| 2/4/2024 | $ - | $ | $ 12,809,044.85 | 59,658.57 | 12,868,703.42 |
| 2/5/2024 | $ - | $ | $ 12,868,703.42 | 59,936.43 | 12,928,639.84 |
| 2/6/2024 | $ - | $ | $ 12,928,639.84 | 60,215.58 | 12,988,855.43 |
| 2/7/2024 | - | - | - | 60,496.04 | 13,049,351.46 |
| 2/8/2024 | - | - | - | 60,777.80 | 13,110,129.27 |
| 2/9/2024 | - | - | - | 61,060.88 | 13,171,190.14 |

| Date | | | | | |
|---|---|---|---|---|---|
| 2/10/2024 | $ - | $ - | $ 13,171,190.14 | $ 61,345.27 | $ 13,232,535.41 |
| 2/11/2024 | $ - | $ - | $ 13,232,535.41 | $ 61,630.99 | $ 13,294,166.40 |
| 2/12/2024 | $ - | $ - | $ 13,294,166.40 | $ 61,918.04 | $ 13,356,084.43 |
| 2/13/2024 | $ - | $ - | $ 13,356,084.43 | $ 62,206.42 | $ 13,418,290.85 |
| 2/14/2024 | $ - | $ - | $ 13,418,290.85 | $ 62,496.15 | $ 13,480,787.00 |
| 2/15/2024 | $ - | $ - | $ 13,480,787.00 | $ 62,787.23 | $ 13,543,574.23 |
| 2/16/2024 | $ - | $ - | $ 13,543,574.23 | $ 63,079.66 | $ 13,606,653.89 |
| 2/17/2024 | $ - | $ - | $ 13,606,653.89 | $ 63,373.46 | $ 13,670,027.35 |
| 2/18/2024 | $ - | $ - | $ 13,670,027.35 | $ 63,668.62 | $ 13,733,695.97 |
| 2/19/2024 | $ - | $ - | $ 13,733,695.97 | $ 63,965.16 | $ 13,797,661.13 |
| 2/20/2024 | $ - | $ - | $ 13,797,661.13 | $ 64,263.08 | $ 13,861,924.21 |
| 2/21/2024 | $ - | $ - | $ 13,861,924.21 | $ 64,562.39 | $ 13,926,486.59 |
| 2/22/2024 | $ - | $ - | $ 13,926,486.59 | $ 64,863.09 | $ 13,991,349.68 |
| 2/23/2024 | $ - | $ - | $ 13,991,349.68 | $ 65,165.19 | $ 14,056,514.87 |
| 2/24/2024 | $ - | $ - | $ 14,056,514.87 | $ 65,468.70 | $ 14,121,983.57 |
| 2/25/2024 | $ - | $ - | $ 14,121,983.57 | $ 65,773.62 | $ 14,187,757.19 |
| 2/26/2024 | $ - | $ - | $ 14,187,757.19 | $ 66,079.97 | $ 14,253,837.16 |
| 2/27/2024 | $ - | $ - | $ 14,253,837.16 | $ 66,387.73 | $ 14,320,224.89 |
| 2/28/2024 | $ - | $ - | $ 14,320,224.89 | $ 66,696.94 | $ 14,386,921.83 |
| 2/29/2024 | $ - | $ - | $ 14,386,921.83 | $ 67,007.58 | $ 14,453,929.41 |
| 3/1/2024 | $ - | $ - | $ 14,453,929.41 | $ 67,319.67 | $ 14,521,249.08 |
| 3/2/2024 | $ - | $ - | $ 14,521,249.08 | $ 67,633.21 | $ 14,588,882.30 |
| 3/3/2024 | $ - | $ - | $ 14,588,882.30 | $ 67,948.22 | $ 14,656,830.52 |
| 3/4/2024 | $ - | $ - | $ 14,656,830.52 | $ 68,264.69 | $ 14,725,095.21 |
| 3/5/2024 | $ - | $ - | $ 14,725,095.21 | $ 68,582.64 | $ 14,793,677.84 |
| 3/6/2024 | $ - | $ - | $ 14,793,677.84 | $ 68,902.06 | $ 14,862,579.90 |
| 3/7/2024 | $ - | $ - | $ 14,862,579.90 | $ 69,222.97 | $ 14,931,802.88 |
| 3/8/2024 | $ - | $ - | $ 14,931,802.88 | $ 69,545.38 | $ 15,001,348.26 |
| 3/9/2024 | $ - | $ - | $ 15,001,348.26 | $ 69,869.29 | $ 15,071,217.55 |
| 3/10/2024 | $ - | $ - | $ 15,071,217.55 | $ 70,194.71 | $ 15,141,412.27 |
| 3/11/2024 | $ - | $ - | $ 15,141,412.27 | $ 70,521.65 | $ 15,211,933.91 |
| 3/12/2024 | $ - | $ - | $ 15,211,933.91 | $ 70,850.10 | $ 15,282,784.02 |
| 3/13/2024 | $ - | $ - | $ 15,282,784.02 | $ 71,180.09 | $ 15,353,964.11 |
| 3/14/2024 | $ - | $ - | $ 15,353,964.11 | $ 71,511.61 | $ 15,425,475.72 |
| 3/15/2024 | $ - | $ - | $ 15,425,475.72 | $ 71,844.68 | $ 15,497,320.40 |
| 3/16/2024 | $ - | $ - | $ 15,497,320.40 | $ 72,179.30 | $ 15,569,499.70 |
| 3/17/2024 | $ - | $ - | $ 15,569,499.70 | $ 72,515.48 | $ 15,642,015.18 |
| 3/18/2024 | $ - | $ - | $ 15,642,015.18 | $ 72,853.22 | $ 15,714,868.40 |
| 3/19/2024 | $ - | $ - | $ 15,714,868.40 | $ 73,192.54 | $ 15,788,060.94 |
| 3/20/2024 | $ - | $ - | $ 15,788,060.94 | $ 73,533.43 | $ 15,861,594.37 |
| 3/21/2024 | $ - | $ - | $ 15,861,594.37 | $ 73,875.92 | $ 15,935,470.29 |
| 3/22/2024 | $ - | $ - | $ 15,935,470.29 | $ 74,220.00 | $ 16,009,690.29 |
| 3/23/2024 | $ - | $ - | $ 16,009,690.29 | $ 74,565.68 | $ 16,084,255.97 |
| 3/24/2024 | $ - | $ - | $ 16,084,255.97 | $ 74,912.97 | $ 16,159,168.94 |
| 3/25/2024 | $ - | $ - | $ 16,159,168.94 | $ 75,261.88 | $ 16,234,430.83 |
| 3/26/2024 | $ - | $ - | $ 16,234,430.83 | $ 75,612.42 | $ 16,310,043.24 |
| 3/27/2024 | $ - | $ - | $ 16,310,043.24 | $ 75,964.58 | $ 16,386,007.83 |
| 3/28/2024 | $ - | $ - | $ 16,386,007.83 | $ 76,318.39 | $ 16,462,326.22 |
| 3/29/2024 | $ - | $ - | $ 16,462,326.22 | $ 76,673.85 | $ 16,539,000.07 |
| 3/30/2024 | $ - | $ - | $ 16,539,000.07 | $ 77,030.96 | $ 16,616,031.03 |
| 3/31/2024 | $ - | $ - | $ 16,616,031.03 | $ 77,389.73 | $ 16,693,420.76 |
| 4/1/2024 | $ - | $ - | $ 16,693,420.76 | $ 77,750.18 | $ 16,771,170.94 |
| 4/2/2024 | $ - | $ - | $ 16,771,170.94 | $ 78,112.30 | $ 16,849,283.25 |

| Date | | | | |
|---|---|---|---|---|
| 5/25/2024 | $ - | $ - | $ 21,454,569.14 | $ 21,554,494.53 |
| 5/24/2024 | $ - | $ - | $ 21,355,107.00 | $ 21,454,569.14 |
| 5/23/2024 | $ - | $ - | $ 21,256,105.96 | $ 21,355,107.00 |
| 5/22/2024 | $ - | $ - | $ 21,157,563.88 | $ 21,256,105.96 |
| 5/21/2024 | $ - | $ - | $ 21,059,478.64 | $ 21,157,563.88 |
| 5/20/2024 | $ - | $ - | $ 20,961,848.11 | $ 21,059,478.64 |
| 5/19/2024 | $ - | $ - | $ 20,864,670.19 | $ 20,961,848.11 |
| 5/18/2024 | $ - | $ - | $ 20,767,942.79 | $ 20,864,670.19 |
| 5/17/2024 | $ - | $ - | $ 20,671,663.81 | $ 20,767,942.79 |
| 5/16/2024 | $ - | $ - | $ 20,575,831.17 | $ 20,671,663.81 |
| 5/15/2024 | $ - | $ - | $ 20,480,442.81 | $ 20,575,831.17 |
| 5/14/2024 | $ - | $ - | $ 20,385,496.66 | $ 20,480,442.81 |
| 5/13/2024 | $ - | $ - | $ 20,290,990.67 | $ 20,385,496.66 |
| 5/12/2024 | $ - | $ - | $ 20,196,922.81 | $ 20,290,990.67 |
| 5/11/2024 | $ - | $ - | $ 20,103,291.05 | $ 20,196,922.81 |
| 5/10/2024 | $ - | $ - | $ 20,010,093.35 | $ 20,103,291.05 |
| 5/9/2024 | $ - | $ - | $ 19,917,327.72 | $ 20,010,093.35 |
| 5/8/2024 | $ - | $ - | $ 19,824,992.14 | $ 19,917,327.72 |
| 5/7/2024 | $ - | $ - | $ 19,733,084.62 | $ 19,824,992.14 |
| 5/6/2024 | $ - | $ - | $ 19,641,603.18 | $ 19,733,084.62 |
| 5/5/2024 | $ - | $ - | $ 19,550,545.84 | $ 19,641,603.18 |
| 5/4/2024 | $ - | $ - | $ 19,459,910.64 | $ 19,550,545.84 |
| 5/3/2024 | $ - | $ - | $ 19,369,695.62 | $ 19,459,910.64 |
| 5/2/2024 | $ - | $ - | $ 19,279,898.83 | $ 19,369,695.62 |
| 5/1/2024 | $ - | $ - | $ 19,190,518.34 | $ 19,279,898.83 |
| 4/30/2024 | $ - | $ - | $ 19,101,552.20 | $ 19,190,518.34 |
| 4/29/2024 | $ - | $ - | $ 19,012,998.51 | $ 19,101,552.20 |
| 4/28/2024 | $ - | $ - | $ 18,924,855.35 | $ 19,012,998.51 |
| 4/27/2024 | $ - | $ - | $ 18,837,120.81 | $ 18,924,855.35 |
| 4/26/2024 | $ - | $ - | $ 18,749,793.01 | $ 18,837,120.81 |
| 4/25/2024 | $ - | $ - | $ 18,662,870.05 | $ 18,749,793.01 |
| 4/24/2024 | $ - | $ - | $ 18,576,350.07 | $ 18,662,870.05 |
| 4/23/2024 | $ - | $ - | $ 18,490,231.18 | $ 18,576,350.07 |
| 4/22/2024 | $ - | $ - | $ 18,404,511.54 | $ 18,490,231.18 |
| 4/21/2024 | $ - | $ - | $ 18,319,189.29 | $ 18,404,511.54 |
| 4/20/2024 | $ - | $ - | $ 18,234,262.59 | $ 18,319,189.29 |
| 4/19/2024 | $ - | $ - | $ 18,149,729.60 | $ 18,234,262.59 |
| 4/18/2024 | $ - | $ - | $ 18,065,588.50 | $ 18,149,729.60 |
| 4/17/2024 | $ - | $ - | $ 17,981,837.48 | $ 18,065,588.50 |
| 4/16/2024 | $ - | $ - | $ 17,898,474.72 | $ 17,981,837.48 |
| 4/15/2024 | $ - | $ - | $ 17,815,498.42 | $ 17,898,474.72 |
| 4/14/2024 | $ - | $ - | $ 17,732,906.80 | $ 17,815,498.42 |
| 4/13/2024 | $ - | $ - | $ 17,650,698.07 | $ 17,732,906.80 |
| 4/12/2024 | $ - | $ - | $ 17,568,870.46 | $ 17,650,698.07 |
| 4/11/2024 | $ - | $ - | $ 17,487,422.19 | $ 17,568,870.46 |
| 4/10/2024 | $ - | $ - | $ 17,406,351.51 | $ 17,487,422.19 |
| 4/9/2024 | $ - | $ - | $ 17,325,656.67 | $ 17,406,351.51 |
| 4/8/2024 | $ - | $ - | $ 17,245,335.93 | $ 17,325,656.67 |
| 4/7/2024 | $ - | $ - | $ 17,165,387.55 | $ 17,245,335.93 |
| 4/6/2024 | $ - | $ - | $ 17,085,809.80 | $ 17,165,387.55 |
| 4/5/2024 | $ - | $ - | $ 17,006,600.98 | $ 17,085,809.80 |
| 4/4/2024 | $ - | $ - | $ 16,927,759.36 | $ 17,006,600.98 |
| 4/3/2024 | $ - | $ - | $ 16,849,283.25 | $ 16,927,759.36 |

| Date | | | | | |
|---|---|---|---|---|---|
| 5/26/2024 | $ - | $ | $ 100,390.80 | $ 21,554,494.53 | $ 21,654,885.33 |
| 5/27/2024 | $ - | $ | $ 100,858.37 | $ 21,654,885.33 | $ 21,755,743.70 |
| 5/28/2024 | $ - | $ | $ 101,328.12 | $ 21,755,743.70 | $ 21,857,071.82 |
| 5/29/2024 | $ - | $ | $ 101,800.06 | $ 21,857,071.82 | $ 21,958,871.88 |
| 5/30/2024 | $ - | $ | $ 102,274.20 | $ 21,958,871.88 | $ 22,061,146.08 |
| 5/31/2024 | $ - | $ | $ 102,750.54 | $ 22,061,146.08 | $ 22,163,896.62 |
| 6/1/2024 | $ - | $ | $ 103,229.11 | $ 22,163,896.62 | $ 22,267,125.73 |
| 6/2/2024 | $ - | $ | $ 103,709.90 | $ 22,267,125.73 | $ 22,370,835.63 |
| 6/3/2024 | $ - | $ | $ 104,192.93 | $ 22,370,835.63 | $ 22,475,028.56 |
| 6/4/2024 | $ - | $ | $ 104,678.22 | $ 22,475,028.56 | $ 22,579,706.78 |
| 6/5/2024 | $ - | $ | $ 105,166.75 | $ 22,579,706.78 | $ 22,684,872.54 |
| 6/6/2024 | $ - | $ | $ 105,655.57 | $ 22,684,872.54 | $ 22,790,528.11 |
| 6/7/2024 | $ - | $ | $ 106,147.67 | $ 22,790,528.11 | $ 22,896,675.77 |
| 6/8/2024 | $ - | $ | $ 106,642.05 | $ 22,896,675.77 | $ 23,003,317.82 |
| 6/9/2024 | $ - | $ | $ 107,138.74 | $ 23,003,317.82 | $ 23,110,456.56 |
| 6/10/2024 | $ - | $ | $ 107,637.74 | $ 23,110,456.56 | $ 23,218,094.31 |
| 6/11/2024 | $ - | $ | $ 108,139.07 | $ 23,218,094.31 | $ 23,326,233.38 |
| 6/12/2024 | $ - | $ | $ 108,642.73 | $ 23,326,233.38 | $ 23,434,876.11 |
| 6/13/2024 | $ - | $ | $ 109,148.74 | $ 23,434,876.11 | $ 23,544,024.84 |
| 6/14/2024 | $ - | $ | $ 109,657.10 | $ 23,544,024.84 | $ 23,653,681.95 |
| 6/15/2024 | $ - | $ | $ 110,167.83 | $ 23,653,681.95 | $ 23,763,849.78 |
| 6/16/2024 | $ - | $ | $ 110,680.94 | $ 23,763,849.78 | $ 23,874,530.72 |
| 6/17/2024 | $ - | $ | $ 111,196.44 | $ 23,874,530.72 | $ 23,985,727.17 |
| 6/18/2024 | $ - | $ | $ 111,714.35 | $ 23,985,727.17 | $ 24,097,441.51 |
| 6/19/2024 | $ - | $ | $ 112,234.66 | $ 24,097,441.51 | $ 24,209,676.17 |
| 6/20/2024 | $ - | $ | $ 112,757.40 | $ 24,209,676.17 | $ 24,322,433.57 |
| 6/21/2024 | $ - | $ | $ 113,282.57 | $ 24,322,433.57 | $ 24,435,716.14 |
| 6/22/2024 | $ - | $ | $ 113,810.18 | $ 24,435,716.14 | $ 24,549,526.32 |
| 6/23/2024 | $ - | $ | $ 114,340.26 | $ 24,549,526.32 | $ 24,663,866.58 |
| 6/24/2024 | $ - | $ | $ 114,872.80 | $ 24,663,866.58 | $ 24,778,739.38 |
| 6/25/2024 | $ - | $ | $ 115,407.83 | $ 24,778,739.38 | $ 24,894,147.21 |
| 6/26/2024 | $ - | $ | $ 115,945.34 | $ 24,894,147.21 | $ 25,010,092.55 |
| 6/27/2024 | $ - | $ | $ 116,485.36 | $ 25,010,092.55 | $ 25,126,577.92 |
| 6/28/2024 | $ - | $ | $ 117,027.90 | $ 25,126,577.92 | $ 25,243,605.81 |
| 6/29/2024 | $ - | $ | $ 117,572.96 | $ 25,243,605.81 | $ 25,361,178.77 |
| 6/30/2024 | $ - | $ | $ 118,120.56 | $ 25,361,178.77 | $ 25,479,299.33 |
| 7/1/2024 | $ - | $ | $ 118,670.71 | $ 25,479,299.33 | $ 25,597,970.04 |
| 7/2/2024 | $ - | $ | $ 119,223.42 | $ 25,597,970.04 | $ 25,717,193.46 |
| 7/3/2024 | $ - | $ | $ 119,778.71 | $ 25,717,193.46 | $ 25,836,972.17 |
| 7/4/2024 | $ - | $ | $ 120,336.58 | $ 25,836,972.17 | $ 25,957,308.75 |
| 7/5/2024 | $ - | $ | $ 120,897.05 | $ 25,957,308.75 | $ 26,078,205.81 |
| 7/6/2024 | $ - | $ | $ 121,460.14 | $ 26,078,205.81 | $ 26,199,665.95 |
| 7/7/2024 | $ - | $ | $ 122,025.84 | $ 26,199,665.95 | $ 26,321,691.79 |
| 7/8/2024 | $ - | $ | $ 122,594.18 | $ 26,321,691.79 | $ 26,444,285.97 |
| 7/9/2024 | $ - | $ | $ 123,165.17 | $ 26,444,285.97 | $ 26,567,451.14 |
| 7/10/2024 | $ - | $ | $ 123,738.81 | $ 26,567,451.14 | $ 26,691,189.95 |
| 7/11/2024 | $ - | $ | $ 124,315.13 | $ 26,691,189.95 | $ 26,815,505.08 |
| 7/12/2024 | $ - | $ | $ 124,894.13 | $ 26,815,505.08 | $ 26,940,399.21 |
| 7/13/2024 | $ - | $ | $ 125,475.83 | $ 26,940,399.21 | $ 27,065,875.05 |
| 7/14/2024 | $ - | $ | $ 126,060.24 | $ 27,065,875.05 | $ 27,191,935.29 |
| 7/15/2024 | - | $ | $ 126,647.37 | $ 27,191,935.29 | $ 27,318,582.66 |
| 7/16/2024 | - | $ | $ 127,237.23 | $ 27,318,582.66 | $ 27,445,819.89 |
| 7/17/2024 | - | $ | $ 127,829.85 | $ 27,445,819.89 | $ 27,573,649.74 |

DocuSign Envelope ID: A4C2F449-6755-4FE9-A9FC-F5F3A72F2042

### COOPERATION AGREEMENT

DATE: February 7, 2023

In connection with the business loan to the Borrowers evidenced by the Business Secured Promissory Note and Security Agreement (the "Note") of even date herewith, the Borrower hereby agrees:

In the event any further documentation is required by the Payee in connection with the loan, Borrower hereby agrees to execute such documentation, including, but not limited to, any amendments, corrections, deletions or additions to the Note being executed on even date herewith.

Specifically, the Borrowers agree to provide any documentation and execute any further agreements, governmental forms, and/or documentation required by the Payee to perfect its security interest in the Collateral, as defined in the Note.

In the event Borrowers are required to furnish such necessary documentation and fails to do so within ten (10) days from receipt of written demand, then such failure shall be an event of default under the terms of the Note and the Payee or its successors and assigns shall have the right to demand payment in full under the Note and enforce all other rights against the Borrowers.

The terms "Borrowers" and "Payee" have the same meanings as set forth in the Business Promissory Note and Security Agreement.

**BORROWERS**                    **THE LITIGATION PRACTICE GROUP PC**

By: _____

Name: Daniel S. March, managing shareholder

**TONY M. DIAB**

By: _____

Name: Tony M. Diab

12

## COOPERATION AGREEMENT

DATE: February 7, 2023

In connection with the business loan to the Borrowers evidenced by the Business Secured Promissory Note and Security Agreement (the "Note") of even date herewith, the Borrower hereby agrees:

In the event any further documentation is required by the Payee in connection with the loan, Borrower hereby agrees to execute such documentation, including, but not limited to, any amendments, corrections, deletions or additions to the Note being executed on even date herewith.

Specifically, the Borrowers agree to provide any documentation and execute any further agreements, governmental forms, and/or documentation required by the Payee to perfect its security interest in the Collateral, as defined in the Note.

In the event Borrowers are required to furnish such necessary documentation and fails to do so within ten (10) days from receipt of written demand, then such failure shall be an event of default under the terms of the Note and the Payee or its successors and assigns shall have the right to demand payment in full under the Note and enforce all other rights against the Borrowers.

The terms "Borrowers" and "Payee" have the same meanings as set forth in the Business Promissory Note and Security Agreement.

**BORROWERS**                **THE LITIGATION PRACTICE GROUP PC**

By: _____
Name: Daniel S. March, managing shareholder

**TONY M. DIAB**

By: _____
Name: Tony M. Diab

### Notary Acknowledgement

STATE/COMMONWEALTH OF        )

                                         ) ss

COUNTY OF                      )

On the _____ day of  February, 2023, before me, the undersigned, a notary public in and for said State/Commonwealth, personally appeared _____ personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within Cooperation Agreement and acknowledged to me that she/he executed the same in both her/his individual capacity and her/his capacity as a [TITLE] of _____, and that by her/his signature on the Cooperation Agreement, the individual, or the person upon behalf of which the individual acted, executed the Cooperation Agreement.

_____
Notary Public

.

STATE/COMMONWEALTH OF        )

                                         ) ss

COUNTY OF                      )

On the _____ day of  February, 2023, before me, the undersigned, a notary public in and for said State/Commonwealth, personally appeared _____ personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within Cooperation Agreement and acknowledged to me that she/he executed the same in both her/his individual capacity and her/his capacity as a [TITLE] of _____, and that by her/his signature on the Cooperation Agreement, the individual, or the person upon behalf of which the individual acted, executed the Cooperation Agreement.

_____
Notary Public

13

## ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of _____ ORANGE _____ )

On __FEBRUARY 6, 2023__ before me, __OLGA LUCIA ESQUIVEL-NOTARY PUBLIC__
(insert name and title of the officer)

personally appeared __DANIEL S MARCH_____,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____    (Seal)

OLGA LUCIA ESQUIVEL
COMM. # 2282791
NOTARY PUBLIC-CALIFORNIA
ORANGE COUNTY
My Comm. Exp. Mar. 25, 2023

# PERSONAL GUARANTY

THIS PERSONAL GUARANTY, dated as of February 7, 2023 (this "Guaranty"), is executed and delivered by Tony Diab, an individual, with an address of 20101 SW Cypress St., Newport Beach, CA 92660 (the "Individual Guarantor") in favor of Azzure Capital LLC ("Lender").

WHEREAS, The Litigation Practice Group PC (the "Borrower"), and Lender are parties to that certain Secured Promissory Note, dated as of even date herewith (such promissory note, as amended, restated, supplemented, or otherwise modified from time to time, including any replacement agreement therefore, being hereinafter referred to as the "Note"), pursuant to which the Lender has agreed to make a loan (the "Loan") to the Borrower;

WHEREAS, as a condition to the making of the Loan, the Lender has required that the Individual Guarantor execute this Guaranty.

NOW, THEREFORE, in consideration of the premises and the agreements herein, and in order to induce the Lender to make and maintain the Loan and provide other financial accommodations pursuant to the Note, the Individual Guarantor hereby agrees with the Lender as follows:

Definitions.  Reference is hereby made to the Note for a statement of the terms thereof. All terms used in this Guaranty which are defined in the Note and not otherwise defined herein shall have the same meanings herein as set forth in the Note. The Following terms shall have the respective meanings indicated below:

"Insolvency Proceeding" means any proceeding commenced by or against any Person under any provision of the U.S. Bankruptcy Code or under any other bankruptcy or insolvency law, assignments for the benefit of creditors, formal or informal moratoria, compositions, or extensions generally with creditors, or proceedings seeking reorganization, arrangement, or other similar relief.

"Loan Party" means the Borrower and any Guarantor.

## Guaranty

(a) The Individual Guarantor hereby (i) unconditionally and irrevocably guarantees the punctual payment when due, whether at stated maturity, by acceleration or otherwise, of all of the Obligations of the Borrower now or hereafter existing under the Note, whether for principal, interest (including, without limitation, all interest that accrues after the commencement of any Insolvency Proceeding of the Borrower irrespective of whether a claim therefor is allowed in such Insolvency Proceeding), fees, commissions, expense reimbursements, indemnifications, or otherwise (such obligations, to the extent not paid by the Borrower, being the "Guaranteed Obligations"), and (ii) agree to pay any and all expenses (including reasonable counsel fees and expenses) incurred by the Lender in enforcing any rights under this Guaranty.  Without limiting the generality of the foregoing, the Individual Guarantor's liability shall extend to all amounts that constitute part of the Guaranteed Obligations and that would be owed by the Borrower to the Lender under the Note but for the fact that they are unenforceable or not allowable due to the existence of any Insolvency Proceeding involving the Borrower.

14

<u>Guaranty Absolute; Continuing Guaranty; Reinstatement.</u>

(b) The Individual Guarantor absolutely and unconditionally hereby guarantees that the Guaranteed Obligations will be paid strictly in accordance with the terms of the Note, regardless of any law, regulation, or order now or hereafter in effect in any jurisdiction affecting any of such terms or the rights of the Lender in respect thereto. This is a guaranty of payment and performance and not of collection, so Lender can enforce this Guaranty against Individual Guarantor even when Lender has not exhausted Lender's remedies against anyone else obligated to pay or satisfy any of the Guaranteed Obligations or against any collateral securing the Guaranteed Obligations, this Guaranty, or any other guaranty of the Obligations. The obligations of the Individual Guarantor under this Guaranty are independent of the Guaranteed Obligations, and a separate action or actions may be brought and prosecuted against the Individual Guarantor to enforce such obligations, irrespective of whether any action is brought against any other Loan Party or whether any other Loan Party is joined in any such action or actions. The liability of the Individual Guarantor under this Guaranty shall be irrevocable, absolute, and unconditional irrespective of, and the Individual Guarantor hereby irrevocably waives any defenses it may now or hereafter have in any way relating to any or all of the following:

(i)      any lack of validity or enforceability of the Note or any agreement or instrument relating thereto;

(ii)     any change in the time, manner, or place of payment of, or in any other term of, all or any of the Guaranteed Obligations, or any other amendment or waiver of, or any consent to, departure from the Note, including, without limitation, any increase in the Guaranteed Obligations resulting from the extension of additional credit to the Borrower or otherwise;

(iii)    any taking, exchange, release, or non-perfection of any collateral, or any taking, release, amendment, or waiver of, or consent to, departure from any other guaranty, for all or any of the Guaranteed Obligations;

(iv)     any change, restructuring, or termination of the corporate, limited liability company or partnership structure, or existence of the Borrower or any Guarantor; or

(v)      any other circumstance (including, without limitation, any statute of limitations) or any existence of, or reliance on, any representation by the Lender that might otherwise constitute a defense available to, or a discharge of, the Borrower or any other Guarantor or surety other than payment in full of all Guaranteed Obligations and the termination of all Commitments.

15

(c) This Guaranty is a continuing guaranty and shall remain in full force and effect until the later of (i) the cash payment in full of all of the Guaranteed Obligations and all other amounts payable under this Guaranty and the termination of all Commitments and (ii) the Maturity Date.  This Guaranty shall continue to be effective or be reinstated, as the case may be, if at any time any payment of any of the Guaranteed Obligations is rescinded or must otherwise be returned by the Lender or any other Person upon the insolvency, bankruptcy, or reorganization of any Loan Party or otherwise, all as though such payment had not been made.

<u>Waivers</u>.  The Individual Guarantor hereby waives (a) promptness and diligence, (b) notice of acceptance and any other notice with respect to any of the Guaranteed Obligations and this Guaranty and any requirement that the Lender exhaust any right or take any action against the Borrower or any other Person or any collateral, (c) any right to compel or direct the Lender to seek payment or recovery of any amounts owed under this Guaranty from any one particular fund or source, or to exhaust any right or take any action against the Borrower or any other Person or any collateral, (d) any requirement that the Lender protect, secure, perfect, or insure any security interest, Lien, or any property subject thereto, or exhaust any right or take any action against the Borrower or any other Person or any collateral and (e) any other defense available to the Individual Guarantors.  The Individual Guarantor agrees that the Lender shall have no obligation to marshal any assets in favor of the Individual Guarantor or against, or in payment of, any or all of the Obligations.  The Individual Guarantor acknowledges that they will receive direct and indirect benefits from the financing arrangements contemplated herein and in the Note, and that the waiver set forth in this Section 4 is knowingly made in contemplation of such benefits.  The Individual Guarantor hereby waives any right to revoke this Guaranty, and acknowledge that this Guaranty is continuing in nature and applies to all Guaranteed Obligations, whether existing now or in the future.

<u>Guarantor's Subordination of Rights to the Lender</u>.

(a)    In the event that the Individual Guarantor should for any reason

(i)    advance or lend monies to any Loan Party or any of its subsidiaries for any reason whatsoever, whether or not such funds are used by such Loan Party or such subsidiary to make payment or payments under the Obligations,

(ii)    make any payment for or on behalf of any Loan Party or any of its subsidiaries under the Guaranteed Obligations, or

(iii)    make any payment to the Lender in total or partial satisfaction of the Individual Guarantor's obligations and liabilities hereunder, the Individual Guarantor hereby agrees that any and all rights that it may have or acquire to collect or to be reimbursed by such Loan Party or any such subsidiary (or by any other obligor, guarantor, surety, or endorser of the Obligations), whether the Individual Guarantor's rights of collection or reimbursement arise by way of subrogation to the rights of the Lender or otherwise, shall in all respects be subordinate, inferior, and junior to the Lender ((pursuant to a subordination agreement, in form and substance satisfactory to the Lender, or otherwise on terms and conditions (including, without limitation,

16

subordination provisions, payment terms, interest rates, covenants, remedies, defaults, and other material terms) satisfactory to the Lender)) and the Lender's rights to collect and enforce payment, performance, and satisfaction of the Obligations then remaining, until such time as the Obligations are fully paid and satisfied and the Commitments are terminated.

(b) The Individual Guarantor further agrees to refrain from attempting to collect and/or enforce any of its aforesaid rights against any Loan Party or any of its subsidiaries (or any other obligor, guarantor, surety, or endorser of the Obligations), arising by way of subrogation or otherwise, until such time as the Obligations then remaining in favor of the Lender are fully paid and satisfied and the Commitments are terminated.

(c) In the event that the Individual Guarantor should for any reason whatsoever receive any payment or payments from any Loan Party or any of its Subsidiaries (or any other obligor, guarantor, surety, or endorser of the Obligations) on any such amount or amounts that such Loan Party or such subsidiary (or such a third party) may owe to the Individual Guarantor for any of the reasons stated above, the Individual Guarantor agrees to accept such payment or payments for and on behalf of the Lender, advising such Loan Party or such subsidiary (or the third party payee) of such a fact, and the Individual Guarantor unconditionally agrees to immediately deliver such funds to the Lender, with such funds being held by the Individual Guarantor during any interim period, in trust for the Lender. In the event that the Individual Guarantor should for any reason receive any such funds from any Loan Party or any of its subsidiaries (or any third party payee), and the Individual Guarantor should deposit such funds in one or more of the Individual Guarantor's deposit accounts, no matter where located, the Lender shall have the right to attach any and all of the Individual Guarantor's deposit accounts in which such funds were deposited, whether or not such funds were commingled with other monies of the Individual Guarantor, and whether or not such funds then remain on deposit in such an account or accounts.

Representations, Warranties and Covenants. The Individual Guarantor hereby represents, warrants and covenants as follows:

(a) The Individual Guarantor has the full power and legal capacity to execute, deliver and perform this Guaranty.

(b) The execution, delivery, and performance by the Individual Guarantor of this Guaranty (i) does not and will not contravene any applicable law, governmental regulation, court decree, order, or contractual restriction binding on or otherwise affecting him or any of their properties, (ii) does not and will not result in or require the creation of any Lien upon or with respect to any of their properties, and (iii) does not and will not result in any default, noncompliance, suspension, revocation, impairment, forfeiture, or nonrenewal of any permit, license, authorization, or approval applicable to them or any of their properties.

17

(c) No authorization or approval, or other action by, and no notice to or filing with, any Governmental Authority or any other Person is required in connection with the due execution, delivery and performance by the Individual Guarantor of this Guaranty.

(d) This Guaranty, when delivered, will be a legal, valid, and binding obligation of the Individual Guarantor, enforceable against the Individual Guarantor in accordance with its terms, except as may be limited by applicable bankruptcy, insolvency, reorganization, moratorium, or other similar laws.

(e) Pursuant to representations and warranties made by Lender, there are no pending or, to the best knowledge of the Individual Guarantor, threatened action, suits or proceedings affecting the Individual Guarantor or the Purchased Interest, or to which any of the properties of the Individual Guarantor (including the Purchased Interest) are subject, before any court or other Governmental Authority or any arbitrator that (i) if adversely determined, could have a Material Adverse Effect or (ii) relates to this Guaranty or any transaction contemplated hereby.

(f) The Individual Guarantor (i) has read and understands the terms and conditions of the Note, (ii) now have and will continue to have independent means of obtaining information concerning the affairs, financial condition, and business of the Borrower, and have no need of, or right to obtain from the Lender, any credit or other information concerning the affairs, financial condition, or business of the Borrower that may come under the control of the Lender, and (iii) will continue to keep themselves informed of the Borrower's financial condition, and of all other circumstances which bear upon the risk of nonpayment or nonperformance of the Guaranteed Obligations.

Right of Set-off.  Upon the occurrence, and during the continuance of any Event of Default, the Lender may, and is hereby authorized to, at any time and from time to time, without notice to the Individual Guarantor (any such notice being expressly waived by the Individual Guarantors), and to the fullest extent permitted by law, set-off and apply any and all Indebtedness owing by the Lender to or for the credit or the account of the Individual Guarantor against any and all obligations of the Individual Guarantor now or hereafter existing under this Guaranty or the Note, irrespective of whether or not the Lender shall have made any demand under this Guaranty or the Note and although such obligations may be contingent or unmatured.  The Lender agrees to notify the Individual Guarantor promptly after any such set-off and application made by the Lender, provided that the failure to give such notice shall not affect the validity of such set-off and application.  The rights of the Lender under this Section 7 are in addition to other rights and remedies (including, without limitation, other rights of set-off) which the Lender may have under this Guaranty, in law or otherwise.

Notices, Etc.  All notices and other communications provided for hereunder shall be in writing and shall be mailed (by certified mail, postage prepaid and return receipt requested), telecopied, or delivered by hand, Federal Express, or other reputable overnight courier, if, to the Individual Guarantor, to him at his address listed on the

18

signature page hereof, or if, to the Lender, to it at its address set forth in the Note; or as to such Person at such other address as shall be designated by such Person in a written notice to such other Person complying as to delivery with the terms of this Section 8.  All such notices and other communications shall be effective (a) if mailed via certified mail, when received or 3 days after deposited in the mails, whichever occurs first; (b) if telecopied, when transmitted and confirmation is received; or (c) if delivered by hand, Federal Express, or other reputable overnight courier, upon delivery.

Consent To Jurisdiction; Service of Process and Venue.  Any legal action or proceeding with respect to this Guaranty or the Note may be brought in the courts of the State of New York, and, by execution and delivery of this Guaranty, the Individual Guarantor hereby irrevocably accepts, generally and unconditionally, the jurisdiction of the aforesaid courts.  The Individual Guarantor hereby irrevocably consents to the service of process out of any of the aforementioned courts at their addresses for notices as set forth on the signature page hereof.  Nothing herein shall affect the right of the Lender to service of process in any other manner permitted by law or to commence legal proceedings or otherwise proceed against the Individual Guarantor in any other jurisdiction.  The Individual Guarantor hereby expressly and irrevocably waives, to the fullest extent permitted by law, any objection which they may now or hereafter have to the jurisdiction or laying of venue of any such litigation brought in any such court referred to above and any claim that any such litigation has been brought in an inconvenient forum.  To the extent that the Individual Guarantor has or hereafter may acquire any immunity from jurisdiction of any court or from any legal process (whether through service or notice, attachment prior to judgment, attachment in aid of execution, or otherwise), the Individual Guarantor hereby irrevocably waives such immunity in respect of their obligations under this Guaranty and the note.

Waiver of Jury Trial, Etc.  The Individual Guarantor hereby waives, to the extent permitted by applicable law, any right to a trial by jury in any action, proceeding or counterclaim concerning any rights under this Guaranty or the Note, or under any amendment, waiver, consent, instrument, document, or other agreement delivered or which in the future may be delivered in connection herewith or therewith, or arising from any relationship existing in connection with this Guaranty or the Note, and agrees that any such action, proceeding, or counterclaim shall be tried before a court and not before a jury.  The Individual Guarantor certifies that no representative, agent or attorney of the Lender has represented, expressly or otherwise, that the Lender would not, in the event of any action, proceeding or counterclaim, seek to enforce the foregoing waivers.  The Individual Guarantor hereby acknowledges that this provision is a material inducement for the Lender entering into the financing arrangement with Borrower.

Taxes.  Any and all payments by the Individual Guarantor hereunder shall be made free and clear of, and without deduction, for any and all present or future taxes, levies, imposts, deductions, charges, or withholdings, and all liabilities with respect thereto, excluding taxes imposed on the net income of the Lender (or any transferee or assignee thereof, including a participation holder) by the jurisdiction in which such Person is organized or has its principal lending office.  If the Individual Guarantor shall be required to deduct any taxes from, or in respect of, any sum payable hereunder to the Lender (or

19

any transferee, assignee, or participation holder), (i) the sum payable shall be increased by the amount (an "additional amount") necessary so that after making all required deductions (including deductions applicable to additional sums payable under this Section 11) the Lender (or such transferee, assignee, or participation holder) shall receive an amount equal to the sum they would have received had no such deductions been made, (ii) the Individual Guarantor shall make such deductions and (iii) the Individual Guarantor shall pay the full amount deducted to the relevant Governmental Authority in accordance with applicable law.

<u>Miscellaneous</u>.

 (a) The Individual Guarantor will make each payment hereunder in lawful money of the United States of America and in immediately available funds to the Lender at such address specified by the Lender from time to time by notice to the Individual Guarantors.

 (b) No amendment or waiver of any provision of this Guaranty, and no consent to any departure by the Individual Guarantor therefrom, shall in any event be effective unless the same shall be in writing and signed by the Individual Guarantor and the Lender, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

 (c) No failure on the part of the Lender to exercise, and no delay in exercising, any right hereunder or under the Note shall operate as a waiver thereof, nor shall any single or partial exercise of any right hereunder or under the Note preclude any other or further exercise thereof or the exercise of any other right.  The rights and remedies of the Lender provided herein and in the Note are cumulative and are, in addition to, and not exclusive of, any rights or remedies provided by law.

 (d) Any provision of this Guaranty which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining portions hereof or thereof or affecting the validity or enforceability of such provision in any other jurisdiction.

 (e) This Guaranty shall (i) be binding on the Individual Guarantor and their heirs, estate, successors, and assigns, and (ii) inure, together with all rights and remedies of the Lender hereunder, to the benefit of the Lender and its successors, transferees, and assigns.  None of the rights or obligations of the Individual Guarantor hereunder may be assigned or otherwise transferred without the prior written consent of the Lender, and any such assignment or transfer shall be null and void.

 (f) This Guaranty and the Note reflect the entire understanding of the transactions contemplated hereby and thereby and shall not be contradicted or qualified by any other agreement, oral or written, before the date hereof.

 (g) Section headings herein are included for convenience of reference only and shall not constitute a part of this Guaranty for any other purpose.

20

(h) This Guaranty and the Note shall be governed by, and construed in accordance
with, the law of the State of New York applicable to contracts made and to be
performed in the State of New York.

(i) This Guaranty may be executed in any number of counterparts and by different
parties hereto in separate counterparts, each of which shall be deemed to be an
original, but all of which taken together shall constitute one and the same
agreement.  Delivery of an executed counterpart of this Guaranty by telecopier or
electronic mail shall be equally as effective as delivery of an original executed
counterpart of this Guaranty.  Any party delivering an executed counterpart of this
Guaranty by telecopier or electronic mail also shall deliver an original executed
counterpart of this Guaranty, but the failure to deliver an original executed
counterpart shall not affect the validity, enforceability, and binding effect of this
Guaranty.

IN WITNESS WHEREOF, the undersigned have caused this Guaranty to be executed as of the date first above
written.

INDIVIDUAL GUARANTOR

By:_____
          Tony Diab

21

# EXHIBIT 2



Case 8:23-...-SC   Claim 127-1   Filed ...   ... Filed ...
of 77

U210050853928



**STATE OF CALIFORNIA**
*Office of the Secretary of State*
**UCC FINANCING STATEMENT (UCC 1)**
California Secretary of State
1500 11th Street
Sacramento, California 95814
(916) 653-3516

| For Office Use Only |
| --- |
| **-FILED-** |
| File #: U210050853928 |
| Date Filed: 5/28/2021 |

Submitter Information:

| | |
| --- | --- |
| Contact Name | WOLTERS KLUWER LIEN SOLUTIONS |
| Organization Name | LIEN SOLUTIONS |
| Phone Number | 800-331-3282 |
| Email Address | uccfilingreturn@wolterskluwer.com |
| Address | P.O. BOX 29071 |
| | GLENDALE, CA 912099071 |

Debtor Information:

| Debtor Name | Mailing Address |
| --- | --- |
| THE LITIGATION PRACTICE GROUP PC | 17542 17TH ST TUSTIN, CA 92780 |
| BAT INC | 17542 17TH ST TUSTIN, CA 92780 |
| DANIEL STEPHEN MARCH | 20160 NOB HILL DR YORBA LINDA, CA 92886 |

Secured Party Information:

| Secured Party Name | Mailing Address |
| --- | --- |
| C T CORPORATION SYSTEM, AS REPRESENTATIVE | 330 N BRAND BLVD, SUITE 700; ATTN: SPRS GLENDALE, CA 91203 |

Indicate how documentation of Collateral is provided:
Entered as Text

Description:
All personal property of every kind and nature, including, without limitation, all accounts, contract rights, rights to the payment of money, insurance claims and proceeds, chattel paper, electric chattel paper, documents, instruments, securities and other investment property, deposit accounts, supporting obligations of every nature, and general intangibles, including without limitation, customer lists, and all books and records related thereto, and all recorded data of any kind and any nature, regardless of the medium of recording; together with, to the extent not listed above as the original collateral, all substitutions and replacements for and products of any of the foregoing property, and together with proceeds of any and all of the foregoing property.

Indicate if Collateral is held in a Trust or is being administered by a Decedent's Personal Representative:
Not Applicable

Select an alternate Financing Statement type:

Select an additional alternate Financing Statement type:

Select an alternative Debtor/Secured Party designation for this Financing Statement:

Optional Filer Reference Information:
80731402

B0398-3083  05/28/2021  10:42 AM Received by California Secretary of State

EXHIBIT 2, PAGE 57

# EXHIBIT 3

**Wire**

| | |
|---|---|
| Wire Number: | 20230207GMQFMP01012709 |
| Transfer Start Date: | 20230207B6BTHU3R00842I02071337FT01 |
| Effective Date: | $2,500,000.00 |
| FED Acceptance Date: | Feb 07, 2023 |
| FED Acceptance Time: | Feb 07, 2023 |
| Transfer Status: | Complete |

IMAD:
OMAD:
Amount:
From Account: ▮1779
Account Type: DDA

**Beneficiary**

| | |
|---|---|
| Identification Type: | DDA Account Number |
| Identification Number: | ▮3512 |
| Name: | LITIGATION PRACTICE GROUP PC |
| Address: | 17542 17TH ST STE 100 |
| | TUSTIN, CA 92780 |

Message To Beneficiary: Funding

Beneficiary Reference: 138

**Beneficiary Institution**

| | |
|---|---|
| Identification Type: | Fed Routing Number |
| Identification Number: | ▮9593 |

Name: BANK OF AMERICA, N.A., NY
Address:
NEW YORK NY

**Receiving Institution**

| | |
|---|---|
| Routing/Transit number: | ▮9593 |
| Institution Name: | BK AMER NYC |

[ Done ]

EXHIBIT 2, PAGE 59

# EXHIBIT 4

FILED: NASSAU COUNTY CLERK 10/14/2021 05:37 PM          INDEX NO. 613095/2021
NYSCEF DOC. NO. 7                                        RECEIVED NYSCEF: 10/14/2021

# COBALT FUNDING SOLUTIONS

Tel: (202) 733-4200

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

This is an Agreement dated _08/03/2021_ by and between COBALT FUNDING SOLUTIONS ("CFS") and each merchant listed below (the "Merchant").

Merchant's Legal Name: THE LITIGATION PRACTICE GROUP PC/VULCAN CONSULTING GROUP LLC/ BAT INC[ ]

D/B/A/: THE LITIGATION PRACTICE GROUP PC/VULCAN CONSULTING/ COAST PROCESSING.COM d/b/a COAST PROCESSING

Fed ID #: [ ]  /  [ ]

Type of Entity:

☐Corporation  ☑Limited Liability Company  ☐Limited Partnership  ☐Limited Liability Partnership  ☐Sole proprietor

Business Address: 17542 17TH STREET STE 100, TUSTIN, CA 92780/17542 17TH STREET STE 100, TUSTIN, CA 92780

Contact Address: 17542 17TH STREET STE 100, TUSTIN, CA 92780/ 20160 NOB HILL DRIVE, YORBA LINDA, CA 92886/8 ALMANZORA NEWPORT COAST, CA 92657/25961 GLEN CANYON DR LAGUNA HILLS CA 92653

Email Address: admin@litigationpracticegroup.com/tony@coastprocessing.com

| | |
|---|---|
| **Purchase Price** <br> This is the amount being paid to Merchant(s) for the Receivables Purchased Amount (defined below). | $ 3,150,000.00 |
| **Receivables Purchased Amount** <br> This is the amount of Receivables (defined in Section 1 below) being sold. | $ 5,036,850.00 |
| **Specified Percentage** <br> This is the percentage of Receivables (defined below) to be delivered until the Receivables Purchased Amount is paid in full. | 25 % |
| **Net Funds Provided** <br> This is the net amount being paid to or on behalf of Merchant(s) after deduction of applicable fees listed in Section 2 below. | $ 2,845,260.00 |
| **Initial Estimated Payment** <br> This is only applicable if an Addendum for Estimated Payments is being signed. This is the initial amount of periodic payments collected from Merchant(s) as an approximation of no more than the Specified Percentage of the Receivables and is subject to reconciliation as set forth in Section 4 below. | $ 77,550.00 <br> per ____ DAY |

## TERMS AND CONDITIONS

   **1. Sale of Future Receipts.** Merchant(s) hereby sell, assign, and transfer to CFS (making CFS the absolute owner) in consideration of the funds provided ("Purchase Price") specified above, all of each Merchant's future accounts, contract rights, and other obligations arising from or relating to the payment of monies from each Merchant's customers and/or other third party payors (the "Receivables", defined as all payments made by cash, check, credit or debit card, electronic transfer, or other form of monetary payment in the ordinary course of each merchant's business), for the payment of each Merchant's sale of goods or services until the amount specified above (the "Receivables Purchased Amount") has been delivered by Merchant(s) to CFS. Each Merchant hereby acknowledges that until the Receivables Purchased Amount has been received in full by CFS, each Merchant's Receivables, up to the balance of the Receivables Purchased Amount, are the property of CFS and not the property of any Merchant. Each Merchant agrees that it is a fiduciary for CFS and that each Merchant will hold Receivables in trust for CFS in its capacity as a fiduciary for CFS.

   The Receivables Purchased Amount shall be paid to CFS by each Merchant irrevocably authorizing only one depositing account acceptable to CFS (the "Account") to remit the percentage specified above (the "Specified Percentage") of each Merchant's settlement amounts due from each transaction, until such time as CFS receives payment in full of the Receivables Purchased Amount. Each Merchant hereby authorizes CFS to ACH debit the specified remittances from the Account on a daily basis as of the next business day after the date of this Agreement and will provide CFS with all required access codes and monthly bank statements. Each Merchant understands that it will be held responsible for any fees resulting from a rejected ACH attempt or an Event of Default (see Section 2). CFS is not responsible for any overdrafts or rejected transactions that may result from CFS's ACH debiting the Specified Percentage amounts under the terms of this Agreement.

I have read and agree to the terms and conditions set forth above:

| | |
|---|---|
| _David March_ | _Tony Diab_ |
| Name: DANIEL STEPHEN MARCH | Name: TONY M DIAB |
| Title: OWNER | Title: OWNER |
| Date: 08/03/2021 | Date: 08/03/2021 |

1

FILED: NASSAU COUNTY CLERK 10/14/2021 05:37 PM
NYSCEF DOC. NO. 7
INDEX NO. 613095/2021
RECEIVED NYSCEF: 10/14/2021

**STANDARD MERCHANT CASH ADVANCE AGREEMENT**

**2. Additional Fees.** In addition to the Receivables Purchased Amount, each Merchant will be held responsible to CFS for the following fees, where applicable:

A. _____$ 304,740.00_____ - to cover underwriting and the ACH debit program, as well as related expenses. This will be deducted from payment of the Purchase Price.

B. Wire Fee - Merchant(s) shall receive funding electronically to the Account and will be charged $50.00 for a Fed Wire or $0.00 for a bank ACH. This will be deducted from payment of the Purchase Price.

C. Blocked Account/Default -Default Fee $2,500.00 or 33% of the outstanding Purchased Receipts, whichever amount is greater.- If CFS considers an Event of Default to have taken place under Section 34.

D. UCC Fee - $195.00 – to cover CFS filing a UCC-1 financing statement to secure its interest in the Receivables Purchased Amount. A $195.00 UCC termination fee will be charged if a UCC filing is terminated.

E. Court costs, arbitration fees, collection agency fees, attorney fees, expert fees, and any other expenses incurred in litigation, arbitration, or the enforcement of any of CFS's legal or contractual rights against each Merchant and/or each Guarantor, if required, as explained in other Sections of this Agreement.

**3. Cap on Collection of the Receivables Purchased Amount.** The amount that CFS will collect from Merchant(s) towards the Receivables Purchased Amount during any specific _____DAY_____ will be capped at _____$ 77,550.00_____ (the "Cap"). If the Specified Percentage of all Receivables for a specific _____DAY_____ is less than the Cap, then in addition to the Specified Percentage of Receivables for that _____DAY_____, CFS will be permitted to collect any Receivables it did not previously collect due to the Cap such that the total amount collected during that _____DAY_____ does not exceed the Cap. The Cap is not applicable to make up for a business day on which CFS is closed and does not ACH debit the Account, to subsequent attempts to collect a rejected or blocked ACH payment, or for the collection of any of the fees listed in Section 2 or if any Event of Default listed in Section 34 is considered by CFS to have taken place.

**4. Reconciliations.** Any Merchant may give written notice to CFS requesting that CFS conduct a reconciliation in order to ensure that the amount that CFS has collected equals the Specified Percentage of Merchant(s)'s Receivables under this Agreement. Any Merchant may give written notice requesting a reconciliation. A reconciliation may also be requested by e-mail to Support@cobaltfunding.com and such notice will be deemed to have been received if and when CFS sends a reply e-mail (but not a read receipt). If such reconciliation determines that CFS collected more than it was entitled to, then CFS will credit to the Account all amounts to which CFS was not entitled within seven days thereafter. If such reconciliation determines that CFS collected less than it was entitled to, then CFS will debit from the Account all additional amounts to which CFS was entitled within seven days thereafter. In order to effectuate this reconciliation, any Merchant must produce with its request the login and password for the Account and any and all bank statements and merchant statements covering the period from the date of this Agreement through the date of the request for a reconciliation. CFS will complete each such reconciliation within two business days after receipt of a written request for one accompanied by the information and documents required for it. Nothing herein limits the amount of times that such a reconciliation may be requested.

**5. Prepayments.** Although there is no obligation to do so, any Merchant may prepay any amount towards the Receivables Purchased Amount. There will be no penalty for any prepayment made by any Merchant. Any Merchant may elect to terminate this Agreement by prepaying CFS the amount of the balance of the Receivables Purchased Amount at that time.

**6. Merchant Deposit Agreement.** Merchant(s) shall appoint a bank acceptable to CFS, to obtain electronic fund transfer services and/or "ACH" payments. Merchant(s) shall provide CFS and/or its authorized agent with all of the information, authorizations, and passwords necessary to verify each Merchant's Receivables. Merchant(s) shall authorize CFS and/or its agent(s) to deduct the amounts owed to CFS for the Receivables as specified herein from settlement amounts which would otherwise be due to each Merchant and to pay such amounts to CFS by permitting CFS to withdraw the Specified Percentage by ACH debiting of the account. The authorization shall be irrevocable absent CFS's written consent.

**7. Term of Agreement.** The term of this Agreement is indefinite and shall continue until CFS receives the full Receivables Purchased Amount, or earlier if terminated pursuant to any provision of this Agreement. The provisions of Sections 4, 6, 7, 8, 10, 11, 13, 14, 15, 17, 18, 19, 22, 23, 28, 31, 32, 33, 34, 35, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, and 58 shall survive any termination of this Agreement.

I have read and agree to the terms and conditions set forth above:

Name: DANIEL STEPHEN MARCH                         Name: TONY M DIAB

Title: OWNER                                        Title: OWNER

Date: 08/03/2021                                    Date: 08/03/2021

2

EXHIBIT 2, PAGE 62

FILED: NASSAU COUNTY CLERK 10/14/2021 05:37 PM          INDEX NO. 613095/2021
NYSCEF DOC. NO. 7                                        RECEIVED NYSCEF: 10/14/2021

STANDARD MERCHANT CASH ADVANCE AGREEMENT

**8. Ordinary Course of Business.** Each Merchant acknowledges that it is entering into this Agreement in the ordinary course of its business and that the payments to be made from each Merchant to CFS under this Agreement are being made in the ordinary course of each Merchant's business.

**9. Financial Condition.** Each Merchant and each Guarantor (Guarantor being defined as each signatory to the Guarantee of this Agreement) authorizes CFS and its agent(s) to investigate each Merchant's financial responsibility and history, and will provide to CFS any bank or financial statements, tax returns, and other documents and records, as CFS deems necessary prior to or at any time after execution of this Agreement. A photocopy of this authorization will be deemed as acceptable for release of financial information. CFS is authorized to update such information and financial profiles from time to time as it deems appropriate.

**10. Monitoring, Recording, and Electronic Communications.** CFS may choose to monitor and/or record telephone calls with any Merchant and its owners, employees, and agents. By signing this Agreement, each Merchant agrees that any call between CFS and any Merchant or its representatives may be monitored and/or recorded. Each Merchant and each Guarantor grants access for CFS to enter any Merchant's premises and to observe any Merchant's premises without any prior notice to any Merchant at any time after execution of this Agreement.

CFS may use automated telephone dialing, text messaging systems, and e-mail to provide messages to Merchant(s), Owner(s) (Owner being defined as each person who signs this Agreement on behalf of a Merchant), and Guarantor(s) about Merchant(s)'s account. Telephone messages may be played by a machine automatically when the telephone is answered, whether answered by an Owner, a Guarantor, or someone else. These messages may also be recorded by the recipient's answering machine or voice mail. Each Merchant, each Owner, and each Guarantor gives CFS permission to call or send a text message to any telephone number given to CFS in connection with this Agreement and to play pre-recorded messages and/or send text messages with information about this Agreement and/or any Merchant's account over the phone. Each Merchant, each Owner, and each Guarantor also gives CFS permission to communicate such information to them by e-mail. Each Merchant, each Owner, and each Guarantor agree that CFS will not be liable to any of them for any such calls or electronic communications, even if information is communicated to an unintended recipient. Each Merchant, each Owner, and each Guarantor acknowledge that when they receive such calls or electronic communications, they may incur a charge from the company that provides them with telecommunications, wireless, and/or Internet services, and that CFS has no liability for any such charges.

**11. Accuracy of Information Furnished by Merchant and Investigation Thereof.** To the extent set forth herein, each of the parties is obligated upon his, her, or its execution of the Agreement to all terms of the Agreement. Each Merchant and each Owner signing this Agreement represent that he or she is authorized to sign this Agreement for each Merchant, legally binding said Merchant to its obligations under this Agreement and that the information provided herein and in all of CFS's documents, forms, and recorded interview(s) is true, accurate, and complete in all respects. CFS may produce a monthly statement reflecting the delivery of the Specified Percentage of Receivables from Merchant(s) to CFS. An investigative report may be made in connection with the Agreement. Each Merchant and each Owner signing this Agreement authorize CFS, its agents and representatives, and any credit-reporting agency engaged by CFS, to (i) investigate any references given or any other statements obtained from or about each Merchant or any of its Owners for the purpose of this Agreement, and (ii) pull credit report at any time now or for so long as any Merchant and/or Owners(s) continue to have any obligation to CFS under this Agreement or for CFS's ability to determine any Merchant's eligibility to enter into any future agreement with CFS. Any misrepresentation made by any Merchant or Owner in connection with this Agreement may constitute a separate claim for fraud or intentional misrepresentation.

**12. Transactional History.** Each Merchant authorizes its bank to provide CFS with its banking and/or credit card processing history.

**13. Indemnification.** Each Merchant and each Guarantor jointly and severally indemnify and hold harmless each Merchant's credit card and check processors (collectively, "Processor") and Processor's officers, directors, and shareholders against all losses, damages, claims, liabilities, and expenses (including reasonable attorney and expert fees) incurred by Processor resulting from (a) claims asserted by CFS for monies owed to CFS from any Merchant and (b) actions taken by any Processor in reliance upon information or instructions provided by CFS.

**I have read and agree to the terms and conditions set forth above:**

Name: DANIEL STEPHEN MARCH

Title: OWNER

Date: 08/03/2021

Name: TONY M DIAB

Title: OWNER

Date: 08/03/2021

FILED: NASSAU COUNTY CLERK 10/14/2021 05:37 PM    INDEX NO. 613095/2021
NYSCEF DOC. NO. 7    RECEIVED NYSCEF: 10/14/2021

STANDARD MERCHANT CASH ADVANCE AGREEMENT

**14. No Liability.** In no event will CFS be liable for any claims asserted by any Merchant under any legal theory for lost profits, lost revenues, lost business opportunities, exemplary, punitive, special, incidental, indirect, or consequential damages, each of which is waived by each Merchant and each Guarantor.

**15. Sale of Receivables.** Each Merchant and CFS agree that the Purchase Price under this Agreement is in exchange for the Receivables Purchased Amount and that such Purchase Price is not intended to be, nor shall it be construed as a loan from CFS to any Merchant. CFS is entering into this Agreement knowing the risks that each Merchant's business may decline or fail, resulting in CFS not receiving the Receivables Purchased Amount. Each Merchant agrees that the Purchase Price in exchange for the Receivables pursuant to this Agreement equals the fair market value of such Receivables. CFS has purchased and shall own all the Receivables described in this Agreement up to the full Receivables Purchased Amount as the Receivables are created. Payments made to CFS in respect to the full amount of the Receivables shall be conditioned upon each Merchant's sale of products and services and the payment therefor by each Merchant's customers in the manner provided in this Agreement. Although certain jurisdictions require the disclosure of an Annual Percentage Rate or APR in connection with this Agreement, those disclosures do not change the fact that the transaction encompassed by this Agreement is not a loan and does not have an interest rate.

**16. Power of Attorney.** Each Merchant irrevocably appoints CFS as its agent and attorney-in-fact with full authority to take any action or execute any instrument or document to settle all obligations due to CFS, or, if CFS considers an Event of Default to have taken place under Section 34, to settle all obligations due to CFS from each Merchant, including without limitation (i) to obtain and adjust insurance; (ii) to collect monies due or to become due under or in respect of any of the Collateral (which is defined in Section 33); (iii) to receive, endorse and collect any checks, notes, drafts, instruments, documents, or chattel paper in connection with clause (i) or clause (ii) above; (iv) to sign each Merchant's name on any invoice, bill of lading, or assignment directing customers or account debtors to make payment directly to CFS; and (v) to file any claims or take any action or institute any proceeding which CFS may deem necessary for the collection of any of the unpaid Receivables Purchased Amount from the Collateral, or otherwise to enforce its rights with respect to payment of the Receivables Purchased Amount.

**17. Protections Against Default.** The following Protections 1 through 7 may be invoked by CFS, immediately and without notice to any Merchant in the event:

(a) Any Merchant takes any action to discourage the use of methods of payment ordinarily and customarily used by its customers or permits any event to occur that could have an adverse effect on the use, acceptance, or authorization of checks and credit cards for the purchase of any Merchant's services and products;

(b) Any Merchant changes its arrangements with any Processor in any way that is adverse to CFS;

(c) Any Merchant changes any Processor through which the Receivables are settled to another electronic check and/or credit card processor or permits any event to occur that could cause diversion of any Merchant's check and/or credit card transactions to another such processor;

(d) Any Merchant interrupts the operation of its business (other than adverse weather, natural disasters, or acts of God) or transfers, moves, sells, disposes, or otherwise conveys its business or assets without (i) the express prior written consent of CFS and (ii) the written agreement of any purchaser or transferee to the assumption of all of any Merchant's obligations under this Agreement pursuant to documentation satisfactory to CFS; or

(e) Any Merchant takes any action, fails to take any action, or offers any incentive—economic or otherwise—the result of which will be to induce any customer or customers to pay for any Merchant's goods or services with any means other than checks and/or credit cards that are settled through Processor. These protections are in addition to any other remedies available to CFS at law, in equity, or otherwise available pursuant to this Agreement.

(f) CFS considers any Event of Default listed in Section 34 to have taken place.

Protection 1: The full uncollected Receivables Purchased Amount plus all fees due under this Agreement may become due and payable in full immediately.

Protection 2. CFS may enforce the provisions of the Guarantee against Guarantor.

Protection 3. CFS may enforce its security interest in the Collateral identified in Section 33.

Protection 4. CFS may proceed to protect and enforce its rights and remedies by litigation or arbitration.

Protection 5. If requested by CFS, Merchant shall deliver to CFS an executed assignment of lease of each Merchant's premises in favor of CFS. Upon breach of any provision in this Section 17, CFS may exercise its rights under such assignment of lease.

**I have read and agree to the terms and conditions set forth above:**

Name: DANIEL STEPHEN MARCH        Name: TONY M DIAB

Title: OWNER        Title: OWNER

Date: 08/03/2021        Date: 08/03/2021

4

EXHIBIT 2, PAGE 64

FILED: NASSAU COUNTY CLERK 10/14/2021 05:37 PM    INDEX NO. 613095/2021
NYSCEF DOC. NO. 7    RECEIVED NYSCEF: 10/14/2021

**STANDARD MERCHANT CASH ADVANCE AGREEMENT**

Protection 6. CFS may debit any Merchant's depository accounts wherever situated by means of ACH debit or electronic or facsimile signature on a computer-generated check drawn on any Merchant's bank account or otherwise, in an amount consistent with the terms of this Agreement.

Protection 7. CFS will have the right, without waiving any of its rights and remedies and without notice to any Merchant and/or Guarantor, to notify each Merchant's credit card and/or check processor of the sale of Receivables hereunder and to direct such credit card processor to make payment to CFS of all or any portion of the amounts received by such credit card processor on behalf of each Merchant. Each Merchant hereby grants to CFS an irrevocable power-of-attorney, which power-of-attorney will be coupled with an interest, and hereby appoints CFS and its representatives as each Merchant's attorney-in-fact to take any and all action necessary to direct such new or additional credit card and/or check processor to make payment to CFS as contemplated by this Section.

**18. Protection of Information.** Each Merchant and each person signing this Agreement on behalf of each Merchant and/or as Owner, in respect of himself or herself personally, authorizes CFS to disclose information concerning each Merchant, Owner and/or Guarantor's credit standing and business conduct to agents, affiliates, subsidiaries, and credit reporting bureaus. Each Merchant, Guarantor, and Owner hereby waives to the maximum extent permitted by law any claim for damages against CFS or any of its affiliates relating to any (i) investigation undertaken by or on behalf of CFS as permitted by this Agreement or (ii) disclosure of information as permitted by this Agreement.

**19. Confidentiality.** Each Merchant understands and agrees that the terms and conditions of the products and services offered by CFS, including this Agreement and any other CFS documents (collectively, "Confidential Information") are proprietary and confidential information of CFS. Accordingly, unless disclosure is required by law or court order, Merchant(s) shall not disclose Confidential Information of CFS to any person other than an attorney, accountant, financial advisor, or employee of any Merchant who needs to know such information for the purpose of advising any Merchant ("Advisor"), provided such Advisor uses such information solely for the purpose of advising any Merchant and first agrees in writing to be bound by the terms of this Section 19.

**20. D/B/As.** Each Merchant hereby acknowledges and agrees that CFS may be using "doing business as" or "d/b/a" names in connection with various matters relating to the transaction between CFS and each Merchant, including the filing of UCC-1 financing statements and other notices or filings.

**21. Financial Condition and Financial Information.** Each Merchant represents, warrants, and covenants that its bank and financial statements, copies of which have been furnished to CFS, and future statements which will be furnished hereafter at the request of CFS, fairly represent the financial condition of each Merchant at such dates, and that since those dates there have been no material adverse changes, financial or otherwise, in such condition, operation, or ownership of any Merchant. Each Merchant has a continuing affirmative obligation to advise CFS of any material adverse change in its financial condition, operation, or ownership.

**22. Governmental Approvals.** Each Merchant represents, warrants, and covenants that it is in compliance and shall comply with all laws and has valid permits, authorizations, and licenses to own, operate, and lease its properties and to conduct the business in which it is presently engaged.

**23. Authorization.** Each Merchant represents, warrants, and covenants that it and each person signing this Agreement on behalf of each Merchant has full power and authority to incur and perform the obligations under this Agreement, all of which have been duly authorized.

**24. Insurance.** Each Merchant represents, warrants, and covenants that it will maintain business-interruption insurance naming CFS as loss payee and additional insured in amounts and against risks as are satisfactory to CFS and shall provide CFS proof of such insurance upon request.

**25. Electronic Check Processing Agreement.** Each Merchant represents, warrants, and covenants that it will not, without CFS's prior written consent, change its Processor, add terminals, change its financial institution or bank account, or take any other action that could have any adverse effect upon any Merchant's obligations under this Agreement.

**26. Change of Name or Location.** Each Merchant represents, warrants, and covenants that it will not conduct its business under any name other than as disclosed to CFS or change any place(s) of its business without prior written consent from CFS.

I have read and agree to the terms and conditions set forth above:

Name: DANIEL STEPHEN MARCH    Name: TONY M DIAB

Title: OWNER    Title: OWNER

Date: 08/03/2021    Date: 08/03/2021

5

FILED: NASSAU COUNTY CLERK 10/14/2021 05:37 PM   INDEX NO. 613095/2021
NYSCEF DOC. NO. 7                                RECEIVED NYSCEF: 10/14/2021

**STANDARD MERCHANT CASH ADVANCE AGREEMENT**

**27. Estoppel Certificate.** Each Merchant represents, warrants, and covenants that it will, at any time, and from time to time, upon at least two day's prior notice from CFS to that Merchant, execute, acknowledge, and deliver to CFS and/or to any other person or entity specified by CFS, a statement certifying that this Agreement is unmodified and in full force and effect (or, if there have been modifications, that the same is in full force and effect as modified and stating the modifications) and stating the dates which the Receivables Purchased Amount or any portion thereof have been paid.

**28. No Bankruptcy.** Each Merchant represents, warrants, and covenants that as of the date of this Agreement, it does not contemplate and has not filed any petition for bankruptcy protection under Title 11 of the United States Code and there has been no involuntary petition brought or pending against any Merchant. Each Merchant further warrants that it does not anticipate filing any such bankruptcy petition and it does not anticipate that an involuntary petition will be filed against it. Each Merchant further warrants that there will be no statutory presumption that it would have been insolvent on the date of this Agreement.

**29. Unencumbered Receivables.** Each Merchant represents, warrants, and covenants that it has good, complete, and marketable title to all Receivables, free and clear of any and all liabilities, liens, claims, changes, restrictions, conditions, options, rights, mortgages, security interests, equities, pledges, and encumbrances of any kind or nature whatsoever or any other rights or interests that may be inconsistent with this Agreement or adverse to the interests of CFS, other than any for which CFS has actual or constructive knowledge as of the date of this Agreement.

**30. Stacking.** Each Merchant represents, warrants, and covenants that it will not enter into with any party other than CFS any arrangement, agreement, or commitment that relates to or involves the Receivables, whether in the form of a purchase of, a loan against, collateral against, or the sale or purchase of credits against Receivables without the prior written consent of CFS.

**31. Business Purpose.** Each Merchant represents, warrants, and covenants that it is a valid business in good standing under the laws of the jurisdictions in which it is organized and/or operates, and each Merchant is entering into this Agreement for business purposes and not as a consumer for personal, family, or household purposes.

**32. Default Under Other Contracts.** Each Merchant represents, warrants, and covenants that its execution of and/or performance under this Agreement will not cause or create an event of default by any Merchant under any contract with another person or entity.

**33. Security Interest.** To secure each Merchant's payment and performance obligations to CFS under this Agreement and any future agreement with CFS, each Merchant hereby grants to CFS a security interest in collateral (the "Collateral"), that is defined as collectively: (a) all accounts, including without limitation, all deposit accounts, accounts-receivable, and other receivables, chattel paper, documents, equipment, general intangibles, instruments, and inventory, as those terms are defined by Article 9 of the Uniform Commercial Code (the "UCC"), now or hereafter owned or acquired by any Merchant; and (b) all proceeds, as that term is defined by Article 9 of the UCC. The parties acknowledge and agree that any security interest granted to CFS under any other agreement between any Merchant or Guarantor and CFS (the "Cross-Collateral") will secure the obligations hereunder and under this Agreement. Negative Pledge: Each Merchant agrees not to create, incur, assume, or permit to exist, directly or indirectly, any lien on or with respect to any of the Collateral or the Cross-Collateral, as applicable.

Each Merchant agrees to execute any documents or take any action in connection with this Agreement as CFS deems necessary to perfect or maintain CFS's first priority security interest in the Collateral and the Cross-Collateral, including the execution of any account control agreements. Each Merchant hereby authorizes CFS to file any financing statements deemed necessary by CFS to perfect or maintain CFS's security interest, which financing statements may contain notification that each Merchant has granted a negative pledge to CFS with respect to the Collateral and the Cross-Collateral, and that any subsequent lienor may be tortiously interfering with CFS's rights. Each Merchant shall be liable for and CFS may charge and collect all costs and expenses, including but not limited to attorney fees, which may be incurred by CFS in protecting, preserving, and enforcing CFS's security interest and rights. Each Merchant further acknowledges that CFS may use another legal name and/or D/B/A or an agent when designating the Secured Party when CFS files the above-referenced financing statement(s).

**34. Events of Default.** An "Event of Default" may be considered to have taken place if any of the following occur:
(1) Any Merchant violates any term or covenant in this Agreement;

I have read and agree to the terms and conditions set forth above:

| | |
|---|---|
| *Daniel March* | *Tony Diab* |
| Name: DANIEL STEPHEN MARCH | Name: TONY M DIAB |
| Title: OWNER | Title: OWNER |
| Date: 08/03/2021 | Date: 08/03/2021 |

EXHIBIT 2, PAGE 66

FILED: NASSAU COUNTY CLERK 10/14/2021 05:37 PM    INDEX NO. 613095/2021
NYSCEF DOC. NO. 7                                     RECEIVED NYSCEF: 10/14/2021

**STANDARD MERCHANT CASH ADVANCE AGREEMENT**

(2) Any representation or warranty by any Merchant in any Agreement with CFS that has not been terminated proves to have been incorrect, false, or misleading in any material respect when made;

(3) Any Merchant fails to provide CFS with written notice of any material change in its financial condition, operation, or ownership within seven days thereafter (unless a different notice period is specifically provided for elsewhere in this Agreement);

(4) the sending of notice of termination by any Merchant or Guarantor;

(5) Any Merchant transports, moves, interrupts, suspends, dissolves, or terminates its business without the prior written consent of CFS other than a bankruptcy filing;

(6) Any Merchant transfers or sells all or substantially all of its assets without the prior written consent of CFS;

(7) Any Merchant makes or sends notice of any intended bulk sale or transfer by any Merchant without the prior written consent of CFS;

(8) Any Merchant uses multiple depository accounts without the prior written consent of CFS;

(9) Any Merchant changes the Account without the prior written consent of CFS;

(10) CFS is not provided with updated login or password information for the Account within one business day after any such change is made by any Merchant;

(11) Any Merchant fails to send bank statements, merchant account statements, or bank login information for the Account within two business days after a written request for same is made by CFS;

(12) Any Merchant changes any Processor or adds terminals without the prior written consent of CFS;

(13) Any Merchant performs any act that reduces the value of any Collateral granted under this Agreement;

(14) Any Merchant fails to deposit its Receivables into the Account;

(15) Any Merchant causes any ACH debit to the Account by CFS to be blocked or stopped;

(16) Four or more ACH debits to the Account by CFS are returned for not sufficient funds (NSF) without advance written notice from any Merchant;

(17) Any Merchant prevents CFS from collecting any part of the Receivables Purchased Amount;

(18) Any Merchant causes any ACH debit to the Account to be stopped that would result in an ACH Return Code of R08 or R10 and that Merchant does not within two business days thereafter provide CFS with written notice thereof explaining why that Merchant caused the ACH debit to be stopped, which notice may be given by e-mail to Support@cobaltfunding.com; or

(19) Any Merchant defaults under any of the terms, covenants, and conditions of any other agreement with CFS.

**35. Remedies.** In case any Event of Default occurs and is not waived, CFS may proceed to protect and enforce its rights or remedies by suit in equity or by action at law, or both, whether for the specific performance of any covenant, agreement, or other provision contained herein, or to enforce the discharge of each Merchant's obligations hereunder, or any other legal or equitable right or remedy. All rights, powers, and remedies of CFS in connection with this Agreement, including each Protection listed in Section 17, may be exercised at any time by CFS after the occurrence of an Event of Default, are cumulative and not exclusive, and will be in addition to any other rights, powers, or remedies provided by law or equity. In addition to the foregoing, in case any Event of Default occurs and is not waived, CFS will be entitled to the issuance of an injunction, restraining order, or other equitable relief in CFS's favor, subject to court or arbitrator approval, restraining each Merchant's accounts and/or receivables up to the amount due to CFS as a result of the Event of Default, and each Merchant will be deemed to have consented to the granting of an application for the same to any court or arbitral tribunal of competent jurisdiction without any prior notice to any Merchant or Guarantor and without CFS being required to furnish a bond or other undertaking in connection with the application.

**36. Required Notifications.** Each Merchant is required to give CFS written notice at least one day prior to any filing under Title 11 of the United States Code. Merchant(s) are required to give CFS at least seven days' written notice prior to the closing of any sale of all or substantially all of any Merchant's assets or stock.

**37. Assignment.** This Agreement shall be binding upon and inure to the benefit of the parties and their respective successors and assigns, except that Merchant(s) shall not have the right to assign its rights hereunder or any interest herein without the prior written consent of CFS, which consent may be withheld in CFS's sole discretion. CFS may assign, transfer, or sell its rights under this Agreement, including, without limitation, its rights to receive the Receivables Purchased Amount, and its rights under Section 33 of this Agreement, the Guarantee, and any other agreement, instrument, or document executed in connection with the transactions contemplated by this Agreement (a "Related Agreement"), or delegate its duties hereunder or thereunder, either in whole or in part.

I have read and agree to the terms and conditions set forth above:

Name: DANIEL STEPHEN MARCH                     Name: TONY M DIAB

Title: OWNER                                    Title: OWNER

Date: 08/03/2021                                Date: 08/03/2021

7

FILED: NASSAU COUNTY CLERK 10/14/2021 05:37 PM    INDEX NO. 613095/2021
NYSCEF DOC. NO. 7    RECEIVED NYSCEF: 10/14/2021

**STANDARD MERCHANT CASH ADVANCE AGREEMENT**

From and after the effective date of any such assignment or transfer by CFS, whether or not any Merchant has actual notice thereof, this Agreement and each Related Agreement shall be deemed amended and modified (without the need for any further action on the part of any Merchant or CFS) such that the assignee shall be deemed a party to this Agreement and any such Related Agreement and, to the extent provided in the assignment document between CFS and such assignee (the "Assignment Agreement"), have the rights and obligations of CFS under this Agreement and such Related Agreements with respect to the portion of the Receivables Purchased Amount set forth in such Assignment Agreement, including but not limited to rights in the Receivables, Collateral and Additional Collateral, the benefit of each Guarantor's guaranty regarding the full and prompt performance of every obligation that is a subject of the Guarantee, CFS's rights under Section 17 of this Agreement (Protections Against Default), and to receive damages from any Merchant following a breach of this Agreement by any Merchant. In connection with such assignment, CFS may disclose all information that CFS has relating to any Merchant or its business. Each Merchant agrees to acknowledge any such assignment in writing upon CFS's request.

**38. Notices.** All notices, requests, consents, demands, and other communications hereunder to CFS shall be delivered by certified mail, return receipt requested, or by overnight delivery with signature confirmation addressed to 99 Wall Street, New York, NY 10005 and shall become effective only upon receipt. All notices, requests, consents, demands, and other communications hereunder to Merchant(s) and Guarantor(s) shall be delivered by certified mail, return receipt requested, or by overnight delivery with signature confirmation addressed to their addresses set forth in this Agreement and shall become effective only upon receipt. Written notice may also be given to any Merchant or Guarantor by e-mail to the E-mail Address listed on the first page of this Agreement. Each Merchant must set its spam or junk mail filter to accept e-mails sent by Support@cobaltfunding.com and its domain. This Section is not applicable to service of process or notices in any legal proceedings.

**39. Choice of Law.** Each Merchant acknowledges and agrees that this Agreement was made in the State of New York, that the Purchase Price is being paid by CFS in the State of New York, that the Receivables Purchased Amount is being delivered to CFS in the State of New York, and that the State of New York has a reasonable relationship to the transactions encompassed by this Agreement. This Agreement and the relationship between CFS, each Merchant, and each Guarantor will be governed by and construed in accordance with the laws of the State of New York, without regard to any applicable principles of conflict of laws.

**40. Forum Selection and Venue.** Any litigation relating to this Agreement or involving CFS on one side and any Merchant or any Guarantor on the other must be commenced and maintained in any court located in the Counties of Nassau, New York, or Sullivan in the State of New York (the "Acceptable Forums"). The parties agree that the Acceptable Forums are convenient, submit to the jurisdiction of the Acceptable Forums, and waive any and all objections to the jurisdiction or venue of the Acceptable Forums. If any litigation is initiated in any other venue or forum, the parties waive any right to oppose any motion or application made by any party to transfer such litigation to an Acceptable Forum. The parties agree that this Agreement encompasses the transaction of business within the City of New York and that the Civil Court of the City of New York ("Civil Court") will have jurisdiction over any litigation relating to this Agreement that is within the jurisdictional limit of the Civil Court. In addition to the Acceptable Forums, any action or proceeding to enforce a judgment or arbitration award against any Merchant or Guarantor or to restrain or collect any amount due to CFS may be commenced and maintained in any other court of competent jurisdiction.

**41. Jury Waiver.** The parties agree to waive trial by jury in any dispute between them.

**42. Counterclaim Waiver.** In any litigation or arbitration commenced by CFS, each Merchant and each Guarantor will not be permitted to interpose any counterclaim.

**43. Statutes of Limitations.** Each Merchant and each Guarantor agree that any claim that is not asserted against CFS within one year of its accrual will be time barred.

**44. Costs.** Each Merchant and each Guarantor must pay all of CFS's reasonable costs associated with a breach by any Merchant of the covenants in this Agreement and the enforcement thereof, including but not limited to collection agency fees, attorney fees, which may include a contingency fee of up to 40% of the amount claimed, expert witness fees, and costs of suit.

**45. Prejudgment and Postjudgment Interest.** If CFS becomes entitled to the entry of a judgment against any Merchant or any Guarantor, then CFS will be entitled to the recovery of prejudgment interest at a rate of 24% per annum (or 16% per annum if any Merchant is a sole proprietorship), or the maximum rate permitted by applicable law if less, and upon entry of any such judgment, it

I have read and agree to the terms and conditions set forth above:

Name: DANIEL STEPHEN MARCH                Name: TONY M DIAB

Title: OWNER                              Title: OWNER

Date: 08/03/2021                         Date: 08/03/2021

8

FILED: NASSAU COUNTY CLERK 10/14/2021 05:37 PM          INDEX NO. 613095/2021
NYSCEF DOC. NO. 7                                        RECEIVED NYSCEF: 10/14/2021

**STANDARD MERCHANT CASH ADVANCE AGREEMENT**

will accrue interest at a rate of 24% per annum (or 16% per annum if any Merchant is a sole proprietorship), or the maximum rate permitted by applicable law if less, which rate will govern over the statutory rate of interest up until actual satisfaction of the judgment.

**46. Legal Fees.** If CFS prevails in any litigation or arbitration with any Merchant or any Guarantor, then the Merchant and/or Guarantor must pay CFS's reasonable attorney fees, which may include a contingency fee of up to 40% of the amount claimed.

**47. Class Action Waiver.** CFS, each Merchant, and each Guarantor agree that they may bring claims against each other relating to this Agreement only in their individual capacities, and not as a plaintiff or class action member in any purported class or representative proceedings.

**48. Arbitration.** Any action or dispute relating to this Agreement or involving CFS on one side and any Merchant or any Guarantor on the other, including, but not limited to issues of arbitrability, will, at the option of any party to such action or dispute, be determined by arbitration before a single arbitrator. The arbitration will be administered either by Arbitration Services, Inc. under its Commercial Arbitration Rules as are in effect at that time, which rules are available at www.arbitrationservicesinc.com, or by Mediation & Commercial Arbitration, Inc. under its Commercial Arbitration Rules as are in effect at that time, which rules are available at www.mcarbitration.org. Once an arbitration is initiated with one of these arbitral forums, it must be maintained exclusively before that arbitral forum and the other arbitral forum specified herein may not be used. Any arbitration relating to this Agreement must be conducted in the Counties of Nassau, New York, Queens, or Kings in the State of New York. Notwithstanding any provision of any applicable arbitration rules, any witness in an arbitration who does not reside in or have a place for the regular transaction of business located in New York City or the Counties of Nassau, Suffolk, or Westchester in the State of New York will be permitted to appear and testify remotely by telephone or video conferencing. In case any Event of Default occurs and is not waived, each Merchant and each Guarantor consents to CFS making an application to the arbitrator, without notice to any Merchant or any Guarantor, for the issuance of an injunction, restraining order, or other equitable relief in CFS's favor, subject to court or arbitrator approval, restraining each Merchant's accounts and/or receivables up to the amount due to CFS as a result of the Event of Default.

Each Merchant acknowledges and agrees that this Agreement is the product of communications conducted by telephone and the Internet, which are instrumentalities of interstate commerce, and that the transactions contemplated under this Agreement will be made by wire transfer and ACH, which are also instrumentalities of interstate commerce, and that this Agreement therefore evidences a transaction affecting interstate commerce. Accordingly, notwithstanding any provision in this Agreement to the contrary, all matters of arbitration relating to this Agreement will be governed by and construed in accordance with the provisions of the Federal Arbitration Act, codified as Title 9 of the United States Code, however any application for injunctive relief in aid of arbitration or to confirm an arbitration award may be made under Article 75 of the New York Civil Practice Law and Rules. The arbitration agreement contained in this Section may also be enforced by any employee, agent, attorney, member, manager, officer, subsidiary, affiliate entity, successor, or assign of CFS.

**49. Service of Process.** Each Merchant and each Guarantor consent to service of process and legal notices made by First Class or Priority Mail delivered by the United States Postal Service and addressed to the Contact Address set forth on the first page of this Agreement or any other address(es) provided in writing to CFS by any Merchant or any Guarantor, and unless applicable law or rules provide otherwise, any such service will be deemed complete three days after dispatch. Each Merchant and each Guarantor agrees that it will be precluded from asserting that it did not receive service of process or any other notice mailed to the Contact Address set forth on the first page of this Agreement if it does not furnish a certified mail return receipt signed by CFS demonstrating that CFS was provided with notice of a change in the Contact Address.

**50. Survival of Representation, etc.** All representations, warranties, and covenants herein shall survive the execution and delivery of this Agreement and shall continue in full force until all obligations under this Agreement shall have been satisfied in full and this Agreement shall have terminated.

**51. Waiver.** No failure on the part of CFS to exercise, and no delay in exercising, any right under this Agreement, shall operate as a waiver thereof, nor shall any single or partial exercise of any right under this Agreement preclude any other or further exercise thereof or the exercise of any other right. The remedies provided hereunder are cumulative and not exclusive of any remedies provided by law or equity.

**I have read and agree to the terms and conditions set forth above:**

Name: DANIEL STEPHEN MARCH

Title: OWNER

Date: 08/03/2021

Name: TONY M DIAB

Title: OWNER

Date: 08/03/2021

9

EXHIBIT 2, PAGE 69

FILED: NASSAU COUNTY CLERK 10/14/2021 05:37 PM    INDEX NO. 613095/2021
NYSCEF DOC. NO. 7    RECEIVED NYSCEF: 10/14/2021

STANDARD MERCHANT CASH ADVANCE AGREEMENT

**52. Independent Sales Organizations/Brokers.** Each Merchant and each Guarantor acknowledge that it may have been introduced to CFS by or received assistance in entering into this Agreement or its Guarantee from an independent sales organization or broker ("ISO"). Each Merchant and each Guarantor agree that any ISO is separate from and is not an agent or representative of CFS. Each Merchant and each Guarantor acknowledge that CFS is not bound by any promises or agreements made by any ISO that are not contained within this Agreement. Each Merchant and each Guarantor exculpate from liability and agree to hold harmless and indemnify CFS and its officers, directors, members, shareholders, employees, and agents from and against all losses, damages, claims, liabilities, and expenses (including reasonable attorney and expert fees) incurred by any Merchant or any Guarantor resulting from any act or omission by any ISO. Each Merchant and each Guarantor acknowledge that any fee that they paid to any ISO for its services is separate and apart from any payment under this Agreement. Each Merchant and each Guarantor acknowledge that CFS does not in any way require the use of an ISO and that any fees charged by any ISO are not required as a condition or incident to this Agreement.

**53. Modifications; Agreements.** No modification, amendment, waiver, or consent of any provision of this Agreement shall be effective unless the same shall be in writing and signed by all parties.

**54. Severability.** If any provision of this Agreement is deemed invalid or unenforceable as written, it will be construed, to the greatest extent possible, in a manner which will render it valid and enforceable, and any limitation on the scope or duration of any such provision necessary to make it valid and enforceable will be deemed to be part thereof. If any provision of this Agreement is deemed void, all other provisions will remain in effect.

**55. Headings.** Headings of the various articles and/or sections of this Agreement are for convenience only and do not necessarily define, limit, describe, or construe the contents of such articles or sections.

**56. Attorney Review.** Each Merchant acknowledges that it has had an opportunity to review this Agreement and all addenda with counsel of its choosing before signing the documents or has chosen not to avail itself of the opportunity to do so.

**57. Entire Agreement.** This Agreement, inclusive of all addenda, if any, executed simultaneously herewith constitutes the full understanding of the parties to the transaction herein and may not be amended, modified, or canceled except in writing signed by all parties. Should there arise any conflict between this Agreement and any other document preceding it, this Agreement will govern. This Agreement does not affect any previous agreement between the parties unless such an agreement is specifically referenced herein. This Agreement will not be affected by any subsequent agreement between the parties unless this Agreement is specifically referenced therein. CFS will not be permitted to enforce any of its rights under this Agreement without the express written consent of Gene Rosen's Law Firm.

**58. Counterparts; Fax and Electronic Signatures.** This Agreement may be executed electronically and in counterparts. Facsimile and electronic copies of this Agreement will have the full force and effect of an original.

SIGNATURES TO FOLLOW ON NEXT PAGE

I have read and agree to the terms and conditions set forth above:

Name: DANIEL STEPHEN MARCH

Title: OWNER

Date: 08/03/2021

Name: TONY M DIAB

Title: OWNER

Date: 08/03/2021

10

FILED: NASSAU COUNTY CLERK 10/14/2021 05:37 PM    INDEX NO. 613095/2021
NYSCEF DOC. NO. 7                                   RECEIVED NYSCEF: 10/14/2021

**STANDARD MERCHANT CASH ADVANCE AGREEMENT**

**FOR THE MERCHANT/OWNER (#1)**

By: DANIEL STEPHEN MARCH          OWNER

      Print Name          Title          Signature

SS# ▓▓▓▓▓▓▓          Driver License Number: ▓▓▓▓▓▓▓


**FOR THE MERCHANT/OWNER (#2)**

By: TONY M DIAB          OWNER

      Print Name          Title          Signature

SS#: ▓▓▓▓▓▓▓          Driver License Number: ▓▓▓▓▓▓▓


Approved for COBALT FUNDING SOLUTIONS by: _____

11

FILED: NASSAU COUNTY CLERK 10/14/2021 05:37 PM    INDEX NO. 613095/2021
NYSCEF DOC. NO. 7                                           RECEIVED NYSCEF: 10/14/2021

STANDARD MERCHANT CASH ADVANCE AGREEMENT

## GUARANTEE

**G1. Personal Guarantee of Performance.** This is a personal guaranty of performance, dated _____08/03/2021_____, of the Standard Merchant Cash Advance Agreement, dated _____08/03/2021_____ ("Agreement"), inclusive of all addenda, if any, executed simultaneously therewith, by and between COBALT FUNDING SOLUTIONS ("CFS") and THE LITIGATION PRACTICE GROUP PC/VULCAN CONSULTING GROUP LLC/ BAT IN█████████ ("Merchant"). Each undersigned Guarantor hereby guarantees each Merchant's performance of all of the representations, warranties, and covenants made by each Merchant to CFS in the Agreement, inclusive of all addenda, if any, executed simultaneously herewith, as the Agreement may be renewed, amended, extended, or otherwise modified (the "Guaranteed Obligations"). Each Guarantor's obligations are due at the time of any breach by any Merchant of any representation, warranty, or covenant made by any Merchant in the Agreement.

**G2. Communications.** CFS may use automated telephone dialing, text messaging systems, and e-mail to provide messages to Guarantor(s) about Merchant(s)'s account. Telephone messages may be played by a machine automatically when the telephone is answered, whether answered by an Owner, a Guarantor, or someone else. These messages may also be recorded by the recipient's answering machine or voice mail. Each Guarantor gives CFS permission to call or send a text message to any telephone number given to CFS in connection with this Agreement and to play pre-recorded messages and/or send text messages with information about this Agreement and/or any Merchant's account over the phone. Each Guarantor also gives CFS permission to communicate such information to them by e-mail. Each Guarantor agrees that CFS will not be liable to any of them for any such calls or electronic communications, even if information is communicated to an unintended recipient. Each Guarantor acknowledges that when they receive such calls or electronic communications, they may incur a charge from the company that provides them with telecommunications, wireless, and/or Internet services, and that CFS has no liability for any such charges.

**G3. Guarantor Waivers.** If CFS considers any Event of Default to have taken place under the Agreement, then CFS may enforce its rights under this Guarantee without first seeking to obtain payment from any Merchant, any other guarantor, or any Collateral, Additional Collateral, or Cross-Collateral CFS may hold pursuant to this Guarantee or any other agreement or guarantee. CFS does not have to notify any Guarantor of any of the following events and Guarantor(s) will not be released from its obligations under this Guarantee even if it is not notified of: (i) any Merchant's failure to pay timely any amount owed under the Agreement; (ii) any adverse change in any Merchant's financial condition or business; (iii) any sale or other disposition of any collateral securing the Guaranteed Obligations or any other guarantee of the Guaranteed Obligations; (iv) CFS's acceptance of the Agreement with any Merchant; and (v) any renewal, extension, or other modification of the Agreement or any Merchant's other obligations to CFS. In addition, CFS may take any of the following actions without releasing any Guarantor from any obligations under this Guarantee: (i) renew, extend, or otherwise modify the Agreement or any Merchant's other obligations to CFS; (ii) if there is more than one Merchant, release a Merchant from its obligations to CFS such that at least one Merchant remains obligated to CFS; (iii) sell, release, impair, waive, or otherwise fail to realize upon any collateral securing the Guaranteed Obligations or any other guarantee of the Guaranteed Obligations; and (iv) foreclose on any collateral securing the Guaranteed Obligations or any other guarantee of the Guaranteed Obligations in a manner that impairs or precludes the right of Guarantor to obtain reimbursement for payment under the Agreement. Until the Receivables Purchased Amount and each Merchant's other obligations to CFS under the Agreement and this Guarantee are paid in full, each Guarantor shall not seek reimbursement from any Merchant or any other guarantor for any amounts paid by it under the Agreement. Each Guarantor permanently waives and shall not seek to exercise any of the following rights that it may have against any Merchant, any other guarantor, or any collateral provided by any Merchant or any other guarantor, for any amounts paid by it or acts performed by it under this Guarantee: (i) subrogation; (ii) reimbursement; (iii) performance; (iv) indemnification; or (v) contribution.

**G4. Joint and Several Liability.** The obligations hereunder of the persons or entities constituting each Guarantor under this Guarantee are joint and several.

**G5. Injunctive Relief.** In case any Event of Default occurs and is not waived, CFS will be entitled to the issuance of an injunction, restraining order, or other equitable relief in CFS's favor, subject to court or arbitrator approval, restraining each Guarantor's accounts and/or receivables up to the amount due to CFS as a result of the Event of Default, and each Guarantor will be deemed to have consented to the granting of an application for the same to any court or arbitral tribunal of competent jurisdiction without any prior notice to any Merchant or Guarantor and without CFS being required to furnish a bond or other undertaking in connection with the application.

**I have read and agree to the terms and conditions set forth above:**

| | |
|---|---|
| *Daniel March* | *Tony Diab* |
| Name: DANIEL STEPHEN MARCH | Name: TONY M DIAB |
| Title: OWNER | Title: OWNER |
| Date: 08/03/2021 | Date: 08/03/2021 |

12

EXHIBIT 2, PAGE 72

FILED: NASSAU COUNTY CLERK 10/14/2021 05:37 PM   INDEX NO. 613095/2021
NYSCEF DOC. NO. 7                                  RECEIVED NYSCEF: 10/14/2021

**STANDARD MERCHANT CASH ADVANCE AGREEMENT**

**G6. Choice of Law.** Each Guarantor acknowledges and agrees that the Agreement and this Guarantee were made in the State of New York, that the Purchase Price is being paid by CFS in the State of New York, that the Receivables Purchased Amount is being delivered to CFS in the State of New York, and that the State of New York has a reasonable relationship to the transactions encompassed by the Agreement and this Guarantee. This Guarantee and the relationship between CFS, each Merchant, and each Guarantor will be governed by and construed in accordance with the laws of the State of New York, without regard to any applicable principles of conflict of laws.

**G7. Forum Selection and Venue.** Any litigation relating to this Agreement or this Guarantee or involving CFS on one side and any Merchant or any Guarantor on the other must be commenced and maintained in any court located in the Counties of Nassau, New York, or Sullivan in the State of New York (the "Acceptable Forums"). The parties agree that the Acceptable Forums are convenient, submit to the jurisdiction of the Acceptable Forums, and waive any and all objections to the jurisdiction or venue of the Acceptable Forums. If any litigation is initiated in any other venue or forum, the parties waive any right to oppose any motion or application made by any party to transfer such litigation to an Acceptable Forum. The parties agree that this Guarantee encompasses the transaction of business within the City of New York and that the Civil Court of the City of New York ("Civil Court") will have jurisdiction over any litigation relating to this Guarantee that is within the jurisdictional limit of the Civil Court. In addition to the Acceptable Forums, any action or proceeding to enforce a judgment or arbitration award against any Merchant or Guarantor or to restrain or collect any amount due to CFS may be commenced and maintained in any other court of competent jurisdiction.

**G8. Jury Waiver.** Each Guarantor agrees to waive trial by jury in any dispute with CFS.

**G9. Counterclaim Waiver.** In any litigation or arbitration commenced by CFS, each Merchant and each Guarantor will not be permitted to interpose any counterclaim.

**G10. Statutes of Limitations.** Each Merchant and each Guarantor agree that any claim that is not asserted against CFS within one year of its accrual will be time barred.

**G11. Costs.** Each Merchant and each Guarantor must pay all of CFS's reasonable costs associated with a breach by any Merchant of the covenants in this Agreement or this Guarantee and the enforcement thereof, including but not limited to collection agency fees, expert witness fees, and costs of suit.

**G12. Prejudgment and Postjudgment Interest.** If CFS becomes entitled to the entry of a judgment against any Merchant or any Guarantor, then CFS will be entitled to the recovery of prejudgment interest at a rate of 24% per annum (or 16% per annum if any Merchant is a sole proprietorship), or the maximum rate permitted by applicable law if less, and upon entry of any such judgment, it will accrue interest at a rate of 24% per annum (or 16% per annum if any Merchant is a sole proprietorship), or the maximum rate permitted by applicable law if less, which rate will govern over the statutory rate of interest up until actual satisfaction of the judgment.

**G13. Legal Fees.** If CFS prevails in any litigation or arbitration with any Merchant or any Guarantor, then that Merchant and/or Guarantor must pay CFS's reasonable attorney fees, which may include a contingency fee of up to 40% of the amount claimed.

**G14. Class Action Waiver.** CFS, each Merchant, and each Guarantor agree that they may bring claims against each other relating to this Agreement only in their individual capacities, and not as a plaintiff or class action member in any purported class or representative proceedings.

**G15. Arbitration.** Any action or dispute relating to this Agreement or this Guarantee or involving CFS on one side and any Merchant or any Guarantor on the other, including, but not limited to issues of arbitrability, will, at the option of any party to such action or dispute, be determined by arbitration before a single arbitrator. The arbitration will be administered either by Arbitration Services, Inc. under its Commercial Arbitration Rules as are in effect at that time, which rules are available at www.arbitrationservicesinc.com, or by Mediation & Commercial Arbitration, Inc. under its Commercial Arbitration Rules as are in effect at that time, which rules are available at www.mcarbitration.org. Once an arbitration is initiated with one of these arbitral forums, it must be maintained exclusively before that arbitral forum and the other arbitral forum specified herein may not be used. Any arbitration relating to this Agreement or this Guarantee must be conducted in the Counties of Nassau, New York, Queens, or Kings in the State of New York. Notwithstanding any provision of any applicable arbitration rules, any witness in an arbitration who does not reside in or have a place for the regular transaction of business located in New York City or the Counties of Nassau, Suffolk, or Westchester in the State of New York will be permitted to appear and testify remotely by telephone or video conferencing. In case any

**I have read and agree to the terms and conditions set forth above:**

| | |
|---|---|
| *David March* | *Tony Diab* |
| Name: DANIEL STEPHEN MARCH | Name: TONY M DIAB |
| Title: OWNER | Title: OWNER |
| Date: 08/03/2021 | Date: 08/03/2021 |

13

FILED: NASSAU COUNTY CLERK 10/14/2021 05:37 PM                    INDEX NO. 613095/2021
NYSCEF DOC. NO. 7                                                  RECEIVED NYSCEF: 10/14/2021

**STANDARD MERCHANT CASH ADVANCE AGREEMENT**

Event of Default occurs and is not waived, each Guarantor consents to CFS making an application to the arbitrator, without notice to any Merchant or any Guarantor, for the issuance of an injunction, restraining order, or other equitable relief in CFS's favor, subject to court or arbitrator approval, restraining each Guarantor's accounts and/or receivables up to the amount due to CFS as a result of the Event of Default.

Each Guarantor acknowledges and agrees that the Agreement and this Guarantee are the product of communications conducted by telephone and the Internet, which are instrumentalities of interstate commerce, and that the transactions contemplated under the Agreement and this Guarantee will be made by wire transfer and ACH, which are also instrumentalities of interstate commerce, and that the Agreement and this Guarantee therefore evidence a transaction affecting interstate commerce. Accordingly, notwithstanding any provision in the Agreement or this Guarantee to the contrary, all matters of arbitration relating to the Agreement or this Guarantee will be governed by and construed in accordance with the provisions of the Federal Arbitration Act, codified as Title 9 of the United States Code, however any application for injunctive relief in aid of arbitration or to confirm an arbitration award may be made under Article 75 of the New York Civil Practice Law and Rules. The arbitration agreement contained in this Section may also be enforced by any employee, agent, attorney, member, manager, officer, subsidiary, affiliate entity, successor, or assign of CFS.

**G16. Service of Process.** Each Merchant and each Guarantor consent to service of process and legal notices made by First Class or Priority Mail delivered by the United States Postal Service and addressed to the Contact Address set forth on the first page of the Agreement or any other address(es) provided in writing to CFS by any Merchant or any Guarantor, and unless applicable law or rules provide otherwise, any such service will be deemed complete three days after dispatch. Each Merchant and each Guarantor agrees that it will be precluded from asserting that it did not receive service of process or any other notice mailed to the Contact Address set forth on the first page of the Agreement if it does not furnish a certified mail return receipt signed by CFS demonstrating that CFS was provided with notice of a change in the Contact Address.

**G17. Severability.** If any provision of this Guarantee is deemed invalid or unenforceable as written, it will be construed, to the greatest extent possible, in a manner which will render it valid and enforceable, and any limitation on the scope or duration of any such provision necessary to make it valid and enforceable will be deemed to be part thereof. If any provision of this Guarantee is deemed void, all other provisions will remain in effect.

**G18. Survival.** The provisions of Sections G2, G3, G4, G5, G6, G7, G8, G9, G10, G11, G12, G13, G14, G15, G16, G17, G18, G19, G20, G21, and G22 shall survive any termination of this Guarantee.

**G19. Headings.** Headings of the various articles and/or sections of this Guarantee are for convenience only and do not necessarily define, limit, describe, or construe the contents of such articles or sections.

**G20. Attorney Review.** Each Guarantor acknowledges that it has had an opportunity to review this Guarantee, the Agreement, and all addenda with counsel of its choosing before signing the documents or has chosen not to avail itself of the opportunity to do so.

**G21. Entire Agreement.** This Guarantee, inclusive of all addenda, if any, executed simultaneously herewith may not be amended, modified, or canceled except in writing signed by all parties. Should there arise any conflict between this Guarantee and any other document preceding it, this Guarantee will govern. This Guarantee does not affect any previous agreement between the parties unless such an agreement is specifically referenced in the Agreement or herein. This Guarantee will not be affected by any subsequent agreement between the parties unless this Guarantee is specifically referenced therein.

**G22. Counterparts; Fax and Electronic Signatures.** This Guarantee may be executed electronically and in counterparts. Facsimile and electronic copies of this Guarantee will have the full force and effect of an original.

THE TERMS, DEFINITIONS, CONDITIONS AND INFORMATION SET FORTH IN THE "STANDARD MERCHANT CASH ADVANCE AGREEMENT", INCLUDING THE "TERMS AND CONDITIONS", ARE HEREBY INCORPORATED IN AND MADE A PART OF THIS GUARANTEE. CAPITALIZED TERMS NOT DEFINED IN THIS GUARANTEE SHALL HAVE THE MEANING SET FORTH IN THE STANDARD MERCHANT CASH ADVANCE AGREEMENT, INCLUDING THE TERMS AND CONDITIONS.

SIGNATURES TO FOLLOW ON NEXT PAGE

I have read and agree to the terms and conditions set forth above:

Name: DANIEL STEPHEN MARCH

Title: OWNER

Date: 08/03/2021

Name: TONY M DIAB

Title: OWNER

Date: 08/03/2021

14

FILED: NASSAU COUNTY CLERK 10/14/2021 05:37 PM        INDEX NO. 613095/2021
NYSCEF DOC. NO. 7                                      RECEIVED NYSCEF: 10/14/2021

**STANDARD MERCHANT CASH ADVANCE AGREEMENT**

**THE UNDERSIGNED HEREBY ACCEPT THE TERMS OF THIS GUARANTEE**

**FOR THE GUARANTOR (#1)**

By: DANIEL STEPHEN MARCH        OWNER                    _David March_
    _____         _____     _____
         Print Name                   Title                  Signature

SS#: ▮▮▮▮ _____            Driver License Number: ▮▮▮▮ _____


**FOR THE GUARANTOR (#2)**

By: TONY M DIAB                 OWNER                    _Tony Diab_
    _____         _____     _____
         Print Name                   Title                  Signature

SS#: ▮▮▮▮ _____            Driver License Number: ▮▮▮▮ _____

15

FILED: NASSAU COUNTY CLERK 10/14/2021 05:37 PM    INDEX NO. 613095/2021
NYSCEF DOC. NO. 7    RECEIVED NYSCEF: 10/14/2021

**STANDARD MERCHANT CASH ADVANCE AGREEMENT**

### ADDENDUM TO STANDARD MERCHANT CASH ADVANCE AGREEMENT FOR ESTIMATED PAYMENTS

This is an Addendum, dated _____08/03/2021_____, to the Standard Merchant Cash Advance Agreement ("Agreement"), dated _____08/03/2021_____, between COBALT FUNDING SOLUTIONS ("CFS") and _____THE LITIGATION PRACTICE GROUP PC/VULCAN CONSULTING GROUP LLC/ BAT INC( 82-3967686)_____ ("Merchant"). This Addendum incorporates the Agreement by reference. The terms of this Addendum will control to the extent they conflict with any of the terms in the Agreement.

Instead of debiting the _____25_____ Specified Percentage of Merchant's Receivables, CFS may instead debit _____$ 77,550.00_____ ("Estimated Payment") from the Account every _____DAY_____. The Estimated Payment is intended to be an approximation of no more than the Specified Percentage.

Any Merchant may give written notice to CFS requesting that CFS conduct a reconciliation in order to ensure that the amount that CFS has collected equals the Specified Percentage of Merchant(s)'s Receivables under this Agreement. Any Merchant may give written notice requesting a reconciliation. A request for reconciliation may also be made by e-mail to Support@cobaltfunding.com and such notice will be deemed to have been received if and when CFS sends a reply e-mail (but not a read receipt). If such reconciliation determines that CFS collected more than it was entitled to, then within seven days thereafter, CFS will credit to the Account all amounts to which CFS was not entitled and decrease the Estimated Payment so that it is consistent with the Specified Percentage of Merchant(s)'s Receivables from the date of the Agreement through the date of the reconciliation. If such reconciliation determines that CFS collected less than it was entitled to, then within seven days thereafter, CFS will debit from the Account all additional amounts to which CFS was entitled and increase the Estimated Payment so that it is consistent with the Specified Percentage of Merchant(s)'s Receivables from the date of the Agreement through the date of the reconciliation, with the increase being subject to any Cap in place on collections. In order to effectuate this reconciliation, any Merchant must produce with its request the login and password for the Account and any and all bank statements and merchant statements covering the period from the date of this Agreement through the date of the request for a reconciliation. CFS will complete each such reconciliation within two business days after receipt of a written request for one accompanied by the information and documents required for it. Nothing herein limits the amount of times that such a reconciliation may be requested.

**FOR THE MERCHANT/OWNER (#1)**

By: __DANIEL STEPHEN MARCH__      __OWNER__      _David March_
   Print Name            Title            Signature

**FOR THE MERCHANT/OWNER (#2)**

By: __TONY M DIAB__      __OWNER__      _Tony Diab_
   Print Name            Title            Signature

16

EXHIBIT 2, PAGE 76

FILED: NASSAU COUNTY CLERK 10/14/2021 05:37 PM    INDEX NO. 613095/2021
NYSCEF DOC. NO. 7                                   RECEIVED NYSCEF: 10/14/2021

STANDARD MERCHANT CASH ADVANCE AGREEMENT

## ADDENDUM TO STANDARD MERCHANT CASH ADVANCE AGREEMENT FOR ADDITIONAL FEES

This is an Addendum, dated _____08/03/2021_____, to the Standard Merchant Cash Advance Agreement ("Agreement"), dated _____08/03/2021_____, between COBALT FUNDING SOLUTIONS ("CFS") and ___THE LITIGATION PRACTICE GROUP PC/VULCAN CONSULTING GROUP LLC/ BAT INC[ 82-3967686]___ ("Merchant"). This Addendum incorporates the Agreement by reference. The terms of this Addendum will control to the extent they conflict with any of the terms in the Agreement.

Each Merchant may be held responsible for an NSF/ Rejected ACH Fee of $50.00 for each time an ACH debit to the Account by CFS is returned or otherwise rejected. No Merchant will be held responsible for such a fee if any Merchant gives CFS advance notice of no more than one business day in advance that the Account has insufficient funds to be debited by CFS and no Merchant is otherwise in default of the terms of the Agreement. Each such fee may be deducted from any payment collected by CFS or may be collected in addition to any other payment collected by CFS under this Agreement.

**FOR THE MERCHANT/OWNER (#1)**

By: _DANIEL STEPHEN MARCH_      _OWNER_____      _Daniel March_____
Print Name                       Title                 Signature

**FOR THE MERCHANT/OWNER (#2)**

By: _TONY M DIAB_____      _OWNER_____      _Tony Diab_____
Print Name                     Title                 Signature

17

EXHIBIT 2, PAGE 77

# EXHIBIT 5

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

COBALT FUNDING SOLUTIONS, LLC

|                                  | Index No: 613095/2021 |

Plaintiff,                        Index No: 613095/2021

    -against-

THE LITIGATION PRACTICE GROUP PC and VULCAN
CONSULTING GROUP LLC and BAT INC and COAST
PROCESSING.COM D/B/A/ COAST PROCESSING and
DANIEL S MARCH and TONY M DIAB,

Defendants.

## STIPULATION OF SETTLEMENT

**THIS SETTLEMENT AGREEMENT AND GENERAL RELEASE** ("Settlement Agreement")
is entered into as of February 8, 2022 (the "Execution Date"), by and between Cobalt Funding Solutions,
LLC ("PLAINTIFF") and THE LITIGATION PRACTICE GROUP PC and VULCAN CONSULTING
GROUP LLC and BAT INC and COAST PROCESSING.COM D/B/A/ COAST PROCESSING and
DANIEL S MARCH and TONY M DIAB ("Defendants") (collectively, the "Parties").

**WHEREAS**, Plaintiff commenced an action against Defendants by the filing of a Summons and

Complaint on October 14, 2021, in the New York State Supreme Court for the County of Nassau under

Index Number 613095/2021 (the "Action"); and

**WHEREAS**, the Parties wish to settle all disputes between them including, without limitation,

all claims that were, or could have been, asserted in the Action, pursuant to the terms and conditions

set forth in this Agreement;

**NOW, THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which

are hereby acknowledged, the parties agree as follows:

1. <u>Settlement Amount</u>.  Plaintiff hereby agrees to accept the sum of $1,500,000 (the "Settlement

Amount") in full satisfaction of any and all claims Plaintiff may have against Defendants including, without

limitation, the claims that could be asserted in the Action. The Settlement Amount shall be paid as follows:

(a)   Seven payments in the amount of $75,000.00 respectively via wire transfer. Payments will commence on Thursday, February 10, 2022 and continue on the next 6 Thursdays thereafter.

(b)   Nine payments in the amount of $100,000.00 respectively via wire transfer. Payments will commence on Thursday, March 31, 2022 and continue on the next 8 Thursdays thereafter.

(c)   A final payment in the amount of $75,000.00 via wire transfer. Payments will made on Thursday, June 2, 2022.

(d)   The Attorney Trust Account for Plaintiff's counsel is below:

**The Klein Law Firm LLC Attorney Trust Account**
**ADDRESS:** 233 Benjamin St., Toms River, New Jersey 08755

**LAKELAND BANK**
**ACCOUNT #:** 664403398
**ROUTING #:** 021205376

If the due date of any payment falls on a bank holiday or weekend, said payment shall be due on the very next workday that is not a bank holiday.

2.   <u>Forbearance of Litigation:</u> Providing full compliance with the terms of this Agreement, all litigation and legal actions between the parties are hereby stayed. The parties also agree to:

(a)   withdraw their respective outstanding motions (Mtn Seq. #001 and #002) with the enclosed executed Stipulation of Withdrawal;

3.   <u>Dismissals.</u> Contemporaneously with the execution of this Agreement, the Parties, and/or their counsel, shall execute the enclosed Stipulation of Discontinuance without Prejudice to be filed within 3 business days after the third $75,000 payment is wired to Plaintiff.

4.   <u>Assignment of UCC</u>. Upon execution of this Settlement Agreement, Plaintiff shall also deliver to Bae Enterprises, Inc. the enclosed Assignment of UCC Financing Statements and Evidence of Assignment relating to the assignment of the UCC-1 financing statement, filed under number U210050853928, both of which are to be held in escrow pending the final $75,000 payment to Plaintiff

as contemplated herein. Upon Plaintiff's receipt of the final $75,000 payment, due on or before June 2, 2022, the Assignment Agreement of UCC Financing Statements and Evidence of Assignment will take full force and effect.

5.  <u>Effective Date</u>.  The Agreement shall become binding and be closed by the execution hereof by all parties.

6.  <u>Waiver of Plaintiff's Liability</u>. As of the date that Defendants obligations to Plaintiff as detailed herein have been fully satisfied, the Defendants for itself and on behalf of all parents, divisions, subsidiaries, affiliates, related entities, representatives, successors, directors, officers, owners, agents, employees, insurance carriers, attorneys and assigns, hereby releases and forever discharges Plaintiff and its respective parents, divisions, subsidiaries, affiliates, related entities, representatives, successors, directors, officers, owners, agents, employees, insurance carriers, attorneys and assigns of and from any and all claims, counterclaims, demands, damages, debts, liabilities, accounts, actions, causes of action and suits, known or unknown, liquidated or contingent, arising from, which may arise in the future from, or which are related in any manner to the underlying Agreement, including any claims that were or could have been asserted, other than Plaintiff's obligations under this Settlement Agreement. Defendants acknowledges that any and all legal claims it maintains must be brought by a breach of this settlement agreement.

7.  <u>Waiver of Defendants' Liability</u>. As of the date that Defendants obligations to Plaintiff as detailed herein have been fully satisfied,  the Plaintiff for itself and on behalf of all parents, divisions, subsidiaries, affiliates, related entities, representatives, successors, directors, officers, owners, agents, employees, insurance carriers, attorneys and assigns, hereby releases and forever discharges Defendants and their respective parents, divisions, subsidiaries, affiliates, related entities, representatives, successors, directors, officers, owners, agents, employees, insurance carriers, attorneys and assigns of and from any and all claims, counterclaims, demands, damages, debts, liabilities, accounts, actions, causes of action and suits, known or unknown, liquidated or contingent, arising from, which may arise in the future from, or which are related in any manner to the underlying Agreement, including any claims that were or could have been

asserted, other than Defendants' obligations under this Settlement Agreement. Plaintiff acknowledges that

any and all legal claims it maintains must be brought by a breach of this settlement agreement.

8.  <u>Default and Right to Cure</u>. A default under this Stipulation will occur if payment is not received on

the date it is due. Defendants shall have a seven (7) day cure period within which to cure any default

hereunder upon notice via email to Defendants counsel at **ashlee@colonnacohenlaw.com** and Defendant

at **tony@coastprocessing.com**.

9.  <u>Judgment</u>. In the event that this Stipulation is breached by Defendants, all terms of this Stipulation

except for those detailed in this Paragraph 9, will be void *ab initio* and Plaintiff may at its option, apply for

entry of a judgment against all Defendants, pursuant to CPLR §3215(i). Such application for entry of default

judgment will include an affidavit or affirmation specifying the default and the amount of the unpaid

balance of the entire abovementioned obligation.  Any Default Judgment entered hereunder will be for

$3,000,000, less any payments made under this Agreement, plus any accrued interest, costs and

disbursements. Defendants agree to accept service by email and waive any objections to service.

10. <u>Venue.</u> The Defendants recognize that because payment is to be made in the state of New

York, this Agreement shall be governed by and construed according to the laws of the State of

New York, without giving effect to its choice of law principles. The parties agree that all actions

and proceedings arising out of or relating directly or indirectly to this Agreement or any ancillary

agreement or any other related obligations shall be litigated solely and exclusively in in the

Supreme Court of the State of New York County of Nassau, and that such courts are convenient

forums. Each party hereby submits to the personal jurisdiction of such courts for purposes of any

such actions or proceedings. The Defendants waive their right to service of process of any

complaint or other process commenced arising from their obligations hereunder, and agree to

accept service of any commencement documents including but not limited to a Summons and

Complaint via email to their counsel **ashlee@colonnacohenlaw.com** and the Defendant at tony@coastprocessing.com**.**

11. <u>Confidentiality:</u>  The Parties agree that they will not disclose to any entity or other person the terms or conditions of this Settlement Agreement (subject to the exceptions expressly stated in this paragraph) without the prior written consent of the other Party. Notwithstanding the foregoing, the Parties may otherwise disclose the terms of this Settlement Agreement only in the following situations: (i) to his or her legal, insurance, or tax professionals; (ii) in any action or proceeding to enforce the terms and conditions of this Settlement Agreement; (iii) as required by a lawfully issued subpoena after notification to the other Party so as to give the other Party time to move to quash said subpoena; and (iv) to the extent necessary to the holder of a mortgage or security interest in any property. Any disclosure in violation of this section shall be deemed a material breach of this Stipulation of Settlement.

12. <u>Execution and Delivery of Documents</u>.   The Parties agree that they respectively shall, upon request by another party to this Agreement, execute and deliver promptly any and all such documentation, or documents of any and every kind and character as may be reasonably required, necessary or proper for the purpose of giving full force and effect to this agreement and to the covenants, conditions, and agreements contained herein.  Furthermore, the parties agree to cooperate and to do all things necessary to accomplish the intention of this agreement.

13. <u>Incorporation by Reference, Recitals</u>.  All documents referred to in this Agreement are made a part hereof and incorporated herein by reference.

14. <u>Copies</u>**.**  Any true executed copy of the Agreement shall be deemed to constitute an original of the same.

15. <u>Construction and Interpretation</u>.  No provision in this Agreement shall be interpreted for or against another party because that party's attorney drafted such provision.

16. <u>Entire Agreement</u>.    This Agreement represents the full, complete and entire agreement between the parties and supersedes any previous agreement between the parties. This Agreement may only be modified in writing, accepted, and approved in writing by all Parties.

17. <u>Attorney Review</u>. Defendants acknowledge they had ample time to consult with an attorney of its choosing with respect to the terms of this Agreement, and has been advised to do so.

***<u>Signature Page to Follow</u>***

IN WITNESS WHEREOF, this Stipulation and Settlement Agreement has been agreed to and executed by the undersigned this 11TH day of FEBRUARY, 2022.


## Tony Diab

*Tony Diab*, individually, and on behalf of
*VULCAN CONSULTING GROUP LLC and BAT INC and COAST*
*PROCESSING.COM D/B/A/ COAST PROCESSING*


## Daniel S. March

*Daniel S. March*, individually, and on behalf of
*THE LITIGATION PRACTICE GROUP PC*


Yehuda Klein, Esq.
Authorized Representative/Counsel for
*Cobalt Funding Solutions, LLC*
The Klein Law Firm LLC
P.O. Box 714
Lakewood, NJ 08701
646-330-9077

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

COBALT FUNDING SOLUTIONS, LLC

                                        Plaintiff,

        -against-

THE LITIGATION PRACTICE GROUP PC and
VULCAN CONSULTING GROUP LLC and BAT
INC and COAST PROCESSING.COM D/B/A/
COAST PROCESSING and DANIEL S MARCH
and TONY M DIAB,

                                        Defendants.

INDEX NUMBER: 613095/2021

**STIPULATION TO WITHDRAW
MOTION SEQ. #001 AND #002**

 

 

      **IT IS HEREBY STIPULATED AND AGREED,** Plaintiff's motion for a preliminary

injunction (Motion Seq. #001) and Defendants' motion to dismiss (Motion Seq. #002), are both

hereby withdrawn.

Dated: Brooklyn, New York
      February 11, 2022

**COLONNA COHEN LAW, PLLC**

/s/Ashlee Colonna Cohen
Ashlee Colonna Cohen, Esq.
*Attorneys for Defendants*
46 N Henry Street
Brooklyn, New York, 11222
Tel: (516) 567-0885
E-Mail: ashlee@colonnacohenlaw.com

**THE KLEIN LAW FIRM LLC**

Yehuda Klein, Esq.
*Attorney for Plaintiff*
P.O. Box 714
Lakewood, NJ 08701
646-330-9077
Email: jay@thekleinfirm.com

EXHIBIT 2, PAGE 86

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

| | |
|---|---|
| COBALT FUNDING SOLUTIONS, LLC<br><br>      Plaintiff,<br><br> -against-<br><br>THE LITIGATION PRACTICE GROUP PC and VULCAN CONSULTING GROUP LLC and BAT INC and COAST PROCESSING.COM D/B/A/ COAST PROCESSING and DANIEL S MARCH and TONY M DIAB,<br><br>     Defendants. | INDEX NUMBER: 613095/2021<br><br>**STIPULATION OF DISCONTINUANCE WITHOUT PREJUDICE** |

  **IT IS HEREBY STIPULATED AND AGREED,** by and between the parties, Plaintiff

COBALT FUNDING SOLUTIONS, LLC and Defendants THE LITIGATION PRACTICE GROUP PC

and VULCAN CONSULTING GROUP LLC and BAT INC and COAST PROCESSING.COM D/B/A/

COAST PROCESSING and DANIEL S MARCH and TONY M DIAB, pursuant to CPLR § 3217, that

whereas no party hereto is an infant or incompetent person for whom a committee has been

appointed and no person not a party has an interest in the subject matter of the action, the above-

entitled action be, and the same hereby is **DISCONTINUED WITHOUT PREJUDICE,**

without costs to either party as against the other. This stipulation may be filed without further

notice with the Clerk of the Court.

Dated: Brooklyn, New York
   February 11, 2022

**COLONNA COHEN LAW, PLLC**

/s/Ashlee Colonna Cohen
Ashlee Colonna Cohen, Esq.
*Attorneys for Defendants*
46 N Henry Street
Brooklyn, New York, 11222
Tel: (516) 567-0885
ashlee@colonnacohenlaw.com

**THE KLEIN LAW FIRM LLC**

_____
Yehuda Klein, Esq.
*Attorney for Plaintiff*
P.O. Box 714
Lakewood, NJ 08701
646-330-9077
jay@thekleinfirm.com

## ASSIGNMENT OF UCC FINANCING STATEMENTS

Assignment of UCC Financing Statement ("Assignment") executed and delivered as of February ___, 2022, by Queen Funding, LLC and Cobalt Funding Solutions, LLC (each an "Assignor", and together the "Assignors") to Bae Enterprises, Inc. ("Assignee").

**RECITALS:**

Assignee desires to purchase from Assignors, and Assignors have agreed to sell and assign their respective UCC financing statements filed against The Litigation Practice Group PC, Bat, Inc., (together as "Company") and Daniel Stephen March, and as more specifically described as filing number U210050853928, filed with the California Secretary of State on May 28, 2021, respectively ("UCC Financing Statement"), and all of Assignors' rights under the UCC Financing Statements, including without limitation any and all collateral secured by the UCC financing Statements, for a purchase price of $1,500,000.00 (the "Purchase Price").

For good and valuable consideration, the receipt and adequacy of which is acknowledged, Assignors agree as follows:

1.  Contemporaneously with the execution of this Agreement,

   (a)   Assignors sell, transfer and assign to Assignee the UCC Financing Statements and all of Assignors' rights,title, and interest under the UCC Financing Statements; and

   (b)   Assignee is authorized to file a UCC-3 assignments, assigning from Assignors to Assignee the UCCFinancing Statements.

2.  Assignors represent and warrant to Assignee that (i) each Assignor's exact legal name is as set forth in the preamble above, and (ii) Assignors have not sold, assigned, or transferred the UCC Financing Statements to any other party. The sale, transfer and assignment is made without recourse, representations or warranties of any kind, except as set forthabove.

3.  Assignors shall execute the Evidence of Assignment attached hereto as Exhibit 1, which Assignee, Company, or any designee of any of the foregoing may, at any time after receipt by Assignors of the Purchase Price, provide to any other person as evidence of this Assignment.

4.  This Assignment and any dispute, controversy or claim (whether or not arising out of or in connection with this Assignment) between Assignors and Assignee shall be governed by and construed in accordance with the laws of the State of Wyoming, without reference to conflicts of laws and shall waive any right to trial by jury. Nothing shall limit the right of Assignee to bring any action or proceeding in the courts of any other jurisdiction if necessary or convenient to effect the relief sought.

5.  Assignors agree to indemnify and hold Assignee, and Assignee agrees to indemnify

and hold Assignors, harmless from and against all losses, costs, damages, liabilities and expenses, including, without limitation, in-house and outside attorneys' fees and disbursements, incurred in connection with this Assignment or the transactions contemplated hereby, or enforcing the obligations of Assignors and Assignee under this Assignment, or in exercising any rights or remedies of Assignor or Assignee or in the prosecution or defense of any action or proceeding concerning any matter arising under or in connection with this Assignment. Upon the date of this Agreement, Assignors and Assignee, for themselves, as well as their members, officers, agents, representatives, and attorneys, mutually release and discharge each other from any and all claims, known or unknown, from the beginning of time until this day.

6.    Electronic and/or facsimile signatures on this Assignment shall be effective for all purposes.

7.    Assignor's wire instructions are as set forth below:

**The Klein Law Firm LLC Attorney Trust Account**
**ADDRESS:** 233 Benjamin St., Toms River, New Jersey 08755

**LAKELAND BANK**
**ACCOUNT #:** 664403398
**ROUTING #:** 021205376

ASSIGNORS:

QUEEN FUNDING, LLC

By: _____

Its: Managing Member_____

COBALT FUNDING SOLUTIONS, LLC

By: _____

Its: Managing Member_____

## EXHIBIT 1

[Evidence of Assignment attached]

**Evidence of Assignment**

To Whom It May Concern:

  Reference is made to that certain UCC financing statement, filing number U210050853928, filed with the California Secretary of State on May 28, 2021, respectively, against Bat, Inc. and The Litigation Practice Group PC (together as "Company") and Daniel Stephen March ("UCC Financing Statements").

  Queen Funding, LLC and Cobalt Funding Solutions, LLC (together, the "Assignors") hereby confirm that in connection with that certain Assignment of UCC Financing Agreements, dated as of February _____, 2022, between Assignors and Bae Enterprises, Inc. ("Assignee"), (i) Assignors have sold, transferred and assigned all of their rights, titles and interests in the UCC Financing Statements to Assignee, (ii) Assignors no longer have any rights or interest in the UCC Financing Statements, and (iii) this Evidence of Assignment may be relied upon by any person as evidence of the foregoing.

ASSIGNORS:

QUEEN FUNDING, LLC

By: _____

Its: _Managing Member_____

COBALT FUNDING SOLUTIONS, LLC

By: _____

Its: _Managing Member_____

Signature: _Daniel S. March_____
  Daniel S. March (Feb 11, 2022 10:09 PST)
**Email:**  admin@lpglaw.com

Signature: _____
  Tony Diab (Feb 11, 2022 10:47 PST)
**Email:**  tony@coastprocessing.com

13

EXHIBIT 2, PAGE 91

# Settlement Agreement Draft_ACC edits -2-11

**Final Audit Report**                                                                 2022-02-11

| | |
|---|---|
| Created: | 2022-02-11 |
| By: | Ashlee Colonna Cohen (ashleecohenesq@gmail.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAA-6GeEbPxFWens-iFq4E-giOfoaswP81T |

## "Settlement Agreement Draft_ACC edits -2-11" History

📄 Document created by Ashlee Colonna Cohen (ashleecohenesq@gmail.com)
2022-02-11 - 5:43:34 PM GMT- IP address: 190.167.196.210

✉ Document emailed to Daniel S. March (admin@lpglaw.com) for signature
2022-02-11 - 5:44:22 PM GMT

📄 Email viewed by Daniel S. March (admin@lpglaw.com)
2022-02-11 - 6:08:38 PM GMT- IP address: 70.181.82.230

✍ Document e-signed by Daniel S. March (admin@lpglaw.com)
Signature Date: 2022-02-11 - 6:09:17 PM GMT - Time Source: server- IP address: 70.181.82.230

✉ Document emailed to Tony Diab (tony@coastprocessing.com) for signature
2022-02-11 - 6:09:19 PM GMT

📄 Email viewed by Tony Diab (tony@coastprocessing.com)
2022-02-11 - 6:47:10 PM GMT- IP address: 66.249.84.27

✍ Document e-signed by Tony Diab (tony@coastprocessing.com)
Signature Date: 2022-02-11 - 6:47:51 PM GMT - Time Source: server- IP address: 70.181.82.230

✔ Agreement completed.
2022-02-11 - 6:47:51 PM GMT



# EXHIBIT 6

February 7, 2023

Bae Enterprises Inc.
1309 Coffeen Ave
Ste 1200
Sheridan, WY 82801

Azzure Capital LLC
1820 Avenue M
Ste 695
Brooklyn, NY 11230

**Re:**   **Assignment of UCC1 Financing Statements and Evidence of Assignment of
File Number U21005083928, filed date May 28, 2021**

To Whom it May Concern –

This assignment of UCC1 Financing Statement ("Assignment") executed and delivered as
of February 6, 2023, by Bae Enterprises, Inc. (an "Assignor") to Azzure Capital LLC
("Assignee").

RECITALS:

Assignee desires to purchase from Assignor, and Assignor has agreed to sell and assign their
respective UCC financing statements filed against The Litigation Practice Group PC,
("Company") and Daniel Stephen March, and as more specifically described as filing number
U210050853928, filed with the California Secretary of State on May 28, 2021, respectively
("UCC Financing Statement"), and all of Assignor's rights under the UCC Financing Statements,
including without limitation any and all collateral secured by the UCC financing Statements as
consideration for the loan issued by Assignee in favor of Assignor.

For good and valuable consideration, the receipt and adequacy of which is acknowledged,
Assignor agrees as follows:

1. Contemporaneously with the execution of this Agreement,

(a) Assignor sells, transfers and assigns to Assignee the UCC Financing Statements and all of
Assignor's rights, title, and interest under the UCC Financing Statements; and

(b) Assignee is authorized to file a UCC-3 assignment, assigning from Assignor to Assignee the
UCC Financing Statements.

2. Assignor represents and warrants to Assignee that (i) each Assignor's exact legal name is as
set forth in the preamble above, and (ii) Assignors has not sold, assigned, or transferred the UCC

Financing Statement to any other party. The sale, transfer and assignment is made without recourse, representations or warranties of any kind, except as set forth above.

3. Assignor shall execute the Evidence of Assignment attached hereto, which Assignee, Company, or any designee of any of the foregoing may, at any time after receipt by Assignor of the Purchase Price, provide to any other person as evidence of this Assignment.

4. This Assignment and any dispute, controversy or claim (whether or not arising out of or in connection with this Assignment) between Assignor and Assignee shall be governed by and construed in accordance with the laws of the State of New York, without reference to conflicts of laws and shall waive any right to trial by jury. Nothing shall limit the right of Assignee to bring any action or proceeding in the courts of any other jurisdiction if necessary or convenient to effect the relief sought.

5. Assignor agrees to indemnify and hold Assignee, and Assignee agrees to indemnify and hold Assignor, harmless from and against all losses, costs, damages, liabilities and expenses, including, without limitation, in-house and outside attorneys' fees and disbursements, incurred in connection with this Assignment or the transactions contemplated hereby, or enforcing the obligations of Assignors and Assignee under this Assignment, or in exercising any rights or remedies of Assignor or Assignee or in the prosecution or defense of any action or proceeding concerning any matter arising under or in connection with this Assignment. Upon the date of this Agreement, Assignor and Assignee, for themselves, as well as their members, officers, agents, representatives, and attorneys, mutually release and discharge each other from any and all claims, known or unknown, from the beginning of time until this day.

6. Electronic and/or facsimile signatures on this Assignment shall be effective for all purposes.

7. Assignee affirms that the balance due to Assignee by The Litigation Practice Group PC at the time of this assignment is $3,536,850.00.

Assignor: Bae Enterprises, Inc.

By: _____
Bianca Loli
Its: CEO

## Evidence of Assignment

To Whom it May Concern:

Reference is made to that certain UCC financing statement, filing number U210050853928, filed with the California Secretary of State on May 28, 2021, respectively, against Bat, Inc. and The Litigation Practice Group PC (together as "Company") and Daniel Stephen March ("UCC Financing Statements").

Bae Enterprises, Inc. (the "Assignor") hereby confirms that in connection with that certain Assignment of UCC Financing Agreements, dated as of February 6, 2023, between Assignor and Azzure Capital LLC ("Assignee"), (i) Assignors have sold, transferred and assigned all of their rights, titles and interests in the UCC Financing Statements to Assignee, (ii) Assignors no longer have any rights or interest in the UCC Financing Statements, and (iii) this Evidence of Assignment may be relied upon by any person as evidence of the foregoing.

Assignor: Bae Enterprises, Inc.

By: _____
Bianca Loli
Its: CEO

## Acknowledgment of Assignment

The Litigation Practice Group PC ("LPG") hereby acknowledges and affirms this assignment of the senior secured, first-priority interest in its accounts receivable in the amount of $3,536,850.00, this obligation being accurate, outstanding, and immediately due and payable as of February 6, 2023.

The Litigation Practice Group PC

By: _____
Daniel S. March
Its: Managing Shareholder

EXHIBIT 2, PAGE 96

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
870 Roosevelt, Irvine, CA 92620.

A true and correct copy of the foregoing document entitled: **MOTION TO APPROVE COMPROMISE BETWEEN TRUSTEE AND AZZURE CAPITAL LLC; MEMORANDUM OF POINTS AND AUTHORITIES; REQUEST FOR JUDICIAL NOTICE; AND DECLARATION OF RICHARD A. MARSHACK IN SUPPORT** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **August 16, 2023**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**: On **August 16, 2023**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**DEBTOR – MAIL REDIRECTED TO TRUSTEE**
THE LITIGATION PRACTICE GROUP P.C.
~~17542 17TH ST, SUITE 100~~
~~TUSTIN, CA 92780-1981~~

☒  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL:** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **August 16, 2023**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**VIA PERSONAL DELIVERY:**
**PRESIDING JUDGE'S COPY**
HONORABLE SCOTT C. CLARKSON
UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
RONALD REAGAN FEDERAL BUILDING AND COURTHOUSE
411 WEST FOURTH STREET, SUITE 5130 / COURTROOM 5C
SANTA ANA, CA 92701-4593

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| August 16, 2023 | Layla Buchanan | /s/ Layla Buchanan |
|---|---|---|
| Date | Printed Name | Signature |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                          **F 9013-3.1.PROOF.SERVICE**

**1.** **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: CONTINUED:

- **ATTORNEY FOR CREDITOR AFFIRMA, LLC and CREDITOR OXFORD KNOX, LLC:** Eric Bensamochan eric@eblawfirm.us, G63723@notify.cincompass.com
- **ATTORNEY FOR CHAPTER 11 TRUSTEE RICHARD A MARSHACK (TR):** Peter W Bowie peter.bowie@dinsmore.com, caron.burke@dinsmore.com
- **ATTORNEY FOR CREDITOR SDCO TUSTIN EXECUTIVE CENTER, INC.:** Ronald K Brown ron@rkbrownlaw.com
- **ATTORNEY FOR CHAPTER 11 TRUSTEE RICHARD A MARSHACK (TR):** Christopher Celentino christopher.celentino@dinsmore.com, caron.burke@dinsmore.com
- **INTERESTED PARTY COURTESY NEF:** Michael F Chekian mike@cheklaw.com, chekianmr84018@notify.bestcase.com
- **INTERESTED PARTY COURTESY NEF:** Shawn M Christianson cmcintire@buchalter.com, schristianson@buchalter.com
- **INTERESTED PARTY COURTESY NEF:** Randall Baldwin Clark rbc@randallbclark.com
- **INTERESTED PARTY COURTESY NEF:** Leslie A Cohen leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com; clare@lesliecohenlaw.com
- **INTERESTED PARTY COURTESY NEF:** Aaron E. DE Leest adeleest@DanningGill.com, danninggill@gmail.com; adeleest@ecf.inforuptcy.com
- **ATTORNEY FOR INTERESTED PARTY NATIONAL ASSOCIATION OF CONSUMER BANKRUPTCY ATTORNEYS and INTERESTED PARTY NATIONAL CONSUMER BANKRUPTCY RIGHTS CENTER:** Jenny L Doling jd@jdl.law, dolingjr92080@notify.bestcase.com; 15994@notices.nextchapterbk.com
- **ATTORNEY FOR CREDITOR CAROLYN BEECH:** Daniel A Edelman dedelman@edcombs.com, courtecl@edcombs.com
- **ATTORNEY FOR CHAPTER 11 TRUSTEE RICHARD A MARSHACK (TR):** Christopher Ghio christopher.ghio@dinsmore.com, Kristina.Heller@Dinsmore.com
- **ATTORNEY FOR DEFENDANT STRIPE, INC.:** Eric D Goldberg eric.goldberg@dlapiper.com, eric-goldberg-1103@ecf.pacerpro.com
- **ATTORNEY FOR CREDITOR AFFIRMA, LLC; CREDITOR ANAHEIM ARENA MANAGEMENT, LLC; CREDITOR ANAHEIM DUCKS HOCKEY CLUB, LLC; and CREDITOR OXFORD KNOX, LLC:** Jeffrey I Golden jgolden@go2.law, kadele@ecf.courtdrive.com; cbmeeker@gmail.com; lbracken@wgllp.com; gestrada@wgllp.com; golden.jeffreyi.b117954@notify.bestcase.com
- **ATTORNEY FOR CREDITOR DEBT VALIDATION FUND II, LLC; CREDITOR MC DVI FUND 1, LLC; and CREDITOR MC DVI FUND 2, LLC:** Richard H Golubow rgolubow@wghlawyers.com, jmartinez@wghlawyers.com; svillegas@wghlawyers.com
- **INTERESTED PARTY COURTESY NEF:** David M Goodrich dgoodrich@go2.law, kadele@go2.law; dfitzgerald@go2.law; wgglp@ecf.courtdrive.com
- **ATTORNEY FOR CHAPTER 11 TRUSTEE RICHARD A MARSHACK (TR):** D Edward Hays ehays@marshackhays.com, ehays@ecf.courtdrive.com; kfrederick@ecf.courtdrive.com; cmendoza@marshackhays.com; cmendoza@ecf.courtdrive.com
- **ATTORNEY FOR CREDITOR CITY CAPITAL NY:** Alan Craig Hochheiser ahochheiser@mauricewutscher.com, arodriguez@mauricewutscher.com
- **ATTORNEY FOR CREDITOR DEBT VALIDATION FUND II, LLC; CREDITOR MC DVI FUND 1, LLC; and CREDITOR MC DVI FUND 2, LLC:** Garrick A Hollander ghollander@wghlawyers.com, jmartinez@wghlawyers.com; svillegas@wghlawyers.com
- **ATTORNEY FOR CREDITOR OHP-CDR, LP:** Razmig Izakelian razmigizakelian@quinnemanuel.com
- **ATTORNEY FOR DEBTOR THE LITIGATION PRACTICE GROUP P.C.:** Joon M Khang joon@khanglaw.com
- **ATTORNEY FOR INTERESTED PARTY AD HOC CONSUMER CLAIMANTS COMMITTEE:** Ira David Kharasch ikharasch@pszjlaw.com
- **ATTORNEY FOR DEFENDANT GALLANT LAW GROUP:** Meredith King mking@fsl.law, ssanchez@fsl.law; jwilson@fsl.law
- **ATTORNEY FOR COMMITTEE OF UNSECURED CREDITORS:** Nicholas A Koffroth nkoffroth@foxrothschild.com, khoang@foxrothschild.com
- **ATTORNEY FOR DEFENDANT MARICH BEIN, LLC:** David S Kupetz David.Kupetz@lockelord.com, mylene.ruiz@lockelord.com
- **INTERESTED PARTY COURTESY NEF:** Christopher J Langley chris@slclawoffice.com, omar@slclawoffice.com; langleycr75251@notify.bestcase.com; ecf123@casedriver.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                                    **F 9013-3.1.PROOF.SERVICE**

- **ATTORNEY FOR DEFENDANT CONSUMER LEGAL GROUP, P.C.; DEFENDANT LGS HOLDCO, LLC; INTERESTED PARTY CONSUMER LEGAL GROUP, P.C.; and INTERESTED PARTY LIBERTY ACQUISITIONS GROUP INC:** Daniel A Lev daniel.lev@gmlaw.com, cheryl.caldwell@gmlaw.com; dlev@ecf.courtdrive.com
- **ATTORNEY FOR CREDITOR PHILLIP A GREENBLATT, PLLC:** Michael D Lieberman mlieberman@lipsonneilson.com
- **ATTORNEY FOR CHAPTER 11 TRUSTEE RICHARD A MARSHACK (TR):** Yosina M Lissebeck Yosina.Lissebeck@Dinsmore.com, caron.burke@dinsmore.com
- **CHAPTER 11 TRUSTEE RICHARD A MARSHACK (TR):** Richard A Marshack (TR) pkraus@marshackhays.com, rmarshack@iq7technology.com; ecf.alert+Marshack@titlexi.com
- **ATTORNEY FOR CHAPTER 11 TRUSTEE RICHARD A MARSHACK (TR):** Laila Masud lmasud@marshackhays.com, lmasud@ecf.courtdrive.com; kfrederick@ecf.courtdrive.com
- **ATTORNEY FOR US TRUSTEE:** Kenneth Misken Kenneth.M.Misken@usdoj.gov
- **INTERESTED PARTY COURTESY NEF:** Byron Z Moldo bmoldo@ecjlaw.com, amatsuoka@ecjlaw.com, dperez@ecjlaw.com
- **INTERESTED PARTY COURTESY NEF:** Alan I Nahmias anahmias@mbn.law, jdale@mbnlawyers.com
- **INTERESTED PARTY COURTESY NEF:** Victoria Newmark vnewmark@pszjlaw.com
- **ATTORNEY FOR US TRUSTEE:** Queenie K Ng queenie.k.ng@usdoj.gov
- **ATTORNEY FOR COMMITTEE OF UNSECURED CREDITORS:** Keith C Owens kowens@foxrothschild.com, khoang@foxrothschild.com
- **ATTORNEY FOR DEFENDANT DANIEL S. MARCH and DEFENDANT TONY DIAB:** Teri T Pham tpham@epglawyers.com, ttpassistant@epglawyers.com
- **ATTORNEY FOR DEFENDANT GREYSON LAW CENTER PC; DEFENDANT HAN TRINH; DEFENDANT JAYDE TRINH; and DEFENDANT SCOTT JAMES EADIE:** Douglas A Plazak dplazak@rhlaw.com
- **ATTORNEY FOR DEFENDANT TOUZI CAPITAL, LLC and DEFENDANT ENG TAING:** Daniel H Reiss dhr@lnbyg.com, dhr@ecf.inforuptcy.com
- **ATTORNEY FOR DEFENDANT CONSUMER LEGAL GROUP, PC:** Ronald N Richards ron@ronaldrichards.com, 7206828420@filings.docketbird.com
- **ATTORNEY FOR CREDITOR MARI AGAPE:** Gregory M Salvato gsalvato@salvatoboufadel.com, calendar@salvatolawoffices.com; jboufadel@salvatoboufadel.com; gsalvato@ecf.inforuptcy.com
- **ATTORNEY FOR CREDITOR AZZURE CAPITAL LLC and CREDITOR HI BAR CAPITAL LLC:** Olivia Scott olivia.scott3@bclplaw.com
- **ATTORNEY FOR CHAPTER 11 TRUSTEE RICHARD A MARSHACK (TR):** Jonathan Serrano jonathan.serrano@dinsmore.com
- **ATTORNEY FOR CREDITOR UNITED PARTNERSHIPS, LLC:** Paul R Shankman PShankman@fortislaw.com, info@fortislaw.com
- **INTERESTED PARTY COURTESY NEF:** Zev Shechtman zs@DanningGill.com, danninggill@gmail.com; zshechtman@ecf.inforuptcy.com
- **ATTORNEY FOR US TRUSTEE:** Leslie Skorheim leslie.skorheim@usdoj.gov
- **ATTORNEY FOR DEFENDANT BANKUNITED, N.A.:** Howard Steinberg steinbergh@gtlaw.com, pearsallt@gtlaw.com; howard-steinberg-6096@ecf.pacerpro.com
- **ATTORNEY FOR CREDITOR ALTERYX, INC.:** Andrew Still astill@swlaw.com, kcollins@swlaw.com
- **US TRUSTEE:** United States Trustee (SA) ustpregion16.sa.ecf@usdoj.gov
- **ATTORNEY FOR CREDITOR AZZURE CAPITAL LLC and CREDITOR HI BAR CAPITAL LLC:** Sharon Z. Weiss sharon.weiss@bclplaw.com, raul.morales@bclplaw.com, REC_KM_ECF_SMO@bclplaw.com
- **ATTORNEY FOR CREDITOR DEBT RELIEF GROUP, LLC:** Johnny White JWhite@wrslawyers.com, jlee@wrslawyers.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                    **F 9013-3.1.PROOF.SERVICE**

**2.  SERVED BY UNITED STATES MAIL**: CONTINUED:

**RTD 06/14/23 UTF**
**SECURED CREDITOR**
CITY CAPITAL NY
~~ATTN: OFFICER, A MANAGING OR~~
~~GENERAL AGENT, OR TO ANY~~
~~OTHER AGENT AUTHORIZED BY~~
~~APPOINTMENT OR LAW TO~~
~~RECEIVE SERVICE OF PROCESS~~
~~1135 KANE CONCOURSE~~
~~BAY HARBOUR ISLANDS, FL~~
~~33154-2025~~

**SECURED CREDITOR**
DIVERSE CAPITAL LLC
ATTN: OFFICER, A MANAGING OR
GENERAL AGENT, OR TO ANY
OTHER AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO
RECEIVE SERVICE OF PROCESS
323 SUNNY ISLES BLVD, STE 503
SUNNY ISLES, FL 33160-4675

**SECURED CREDITOR / POC
ADDRESS**
RIVER TREE LLC
C/O MAYS JOHNSON LAW FIRM
21 BATTERY PARK AVE, SUITE 201
ASHEVILLE, NC 28801

**SECURED CREDITOR**
FUNDURA CAPITAL GROUP
ATTN: OFFICER, A MANAGING OR
GENERAL AGENT, OR TO ANY
OTHER AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO
RECEIVE SERVICE OF PROCESS
80 BROAD STREET, STE 3303
NEW YORK, NY 10004-2845

**SECURED CREDITOR / POC
ADDRESS**
VENTURE PARTNERS LLC
ATTN: OFFICER, A MANAGING OR
GENERAL AGENT, OR TO ANY
OTHER AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO
RECEIVE SERVICE OF PROCESS
1309 COFFEEN AVENUE, STE 1200
SHERIDAN, WY 82801

4859-6825-8680, v. 1

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**