QUINN EMANUEL URQUHART & SULLIVAN LLP
Eric D. Winston (SBN 202407)
ericwinston@quinnemanuel.com
Jeremy D. Andersen (SBN 227287)
jeremyandersen@quinnemanuel.com
Razmig Y. Izakelian (SBN 292137)
razmigizakelian@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

*Attorneys for OHP-CDR, LP and PurchaseCo 80, LLC*

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SANTA ANA DIVISION**

| | |
|---|---|
| In re:<br><br>THE LITIGATION PRACTICE GROUP, P.C.,<br><br>Debtor. | Chapter 11<br><br>Case No. 8:23-bk-10571-SC<br><br>Adv. Proc. No. _____<br><br>**COMPLAINT TO DETERMINE PRIORITY OF LIEN AND OWNERSHIP INTEREST**<br><br>Judge: Hon. Scott C. Clarkson |
| OHP-CDR, LP, a Texas Limited Partnership and PURCHASECO 80, LLC, a Texas Limited Liability Company,<br><br>Plaintiffs<br><br>v.<br><br>RICHARD A. MARSHACK, Chapter 11 Trustee and AZZURE CAPITAL, LLC, a New York Limited Liability Company.<br><br>Defendants. | |

For this *Complaint to Determine Priority and Validity of Lien and Ownership Interest* ("Complaint"), OHP-CDR, LP ("OHP-CDR") and PurchaseCo80, LLC ("PurchaseCo" and with OHP-CDR, the "Plaintiffs") allege and aver as follows:

## I. STATEMENT OF JURISDICTION, NATURE OF PROCEEDING, AND VENUE

1. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (K), and (O), 1334(b), and General Order No. 13-05 of the District Court for the Central District of California. Pursuant to Federal Rule of Bankruptcy Procedure 7012(b), Plaintiffs consent to entry of final orders or judgment by this Court. Defendants (as defined below) are hereby notified that Rule 7008 of the Federal Rules of Bankruptcy Procedure require Defendants to plead whether consent is given to the entry of a final order and judgment by the Bankruptcy Court.

2. This adversary proceeding is a core proceeding because it seeks a determination that certain property is not property of the estate, and the priority of a lien. In the event that it is ultimately determined that this adversary proceeding is a non-core proceeding, Plaintiffs consent to the entry of a final order and judgment by this Court.

3. Venue of this adversary proceeding is proper in this judicial district pursuant to 28 U.S.C. § 1409(a) because this adversary proceeding is related to the above-captioned bankruptcy case.

## II. THE PARTIES

4. Plaintiff OHP-CDR, formerly known as OHP-LPG, LP is a limited partnership organized under the laws of the State of Delaware, with its principal place of business in Austin, Texas.

5. Plaintiff PurchaseCo 80 is a limited liability company organized under the laws of the State of Delaware, with its principal place of business in Austin, Texas.

6. Defendant Richard A. Marshack ("Marshack" or the "Trustee"), in his capacity as the chapter 11 trustee of The Litigation Practice Group, P.C. ("LPG") is an individual that is, and at all material times was, residing in the State of California.

7. Defendant Azzure Capital, LLC ("Azzure" and with the Trustee, "Defendants") is a limited liability company organized under the laws of the State of New York, with its principal place

of business in Albany, New York.

## III.     GENERAL ALLEGATIONS

### A.     LPG's Business

8.     LPG was a law firm that, before the bankruptcy, provided consumer debt resolution services in the form of debt validation, consultation, and litigation defense.

9.     The legal serves LPG offered included: (i) removal of invalid debts through correspondence with credit bureaus; (ii) validation of consumer debts through correspondence including disputes with original creditors, validation demands to third party debt collectors and assignees, and disputes with credit bureaus; (iii) defense of collection actions; and (iv) negotiation of settlements of consumer debts.

10.    One of the ways that the Debtor generated clients was by utilizing the services of marketing companies called "marketing affiliates" (the "Affiliates").

11.    The Affiliates were companies that owned and operated systems of generating leads consisting of consumers interested in the legal services offered by the Debtor.

12.    The Affiliates were retained by the Debtor to provide marketing and customer service functions, and would receive, as payment, a percentage of the fees generated by the Debtor for each file referred to the Debtor by the Affiliate.

13.    However, because LPG and its Affiliates received only incremental payments over a period of time, LPG and the Affiliates would often sell the future cash flow at a discounted rate to factoring companies that bought the receivables on account of these files.

### B.     PurchaseCo's Purchase Of Receivables And OHP-CDR's Lien

14.    On September 1, 2022, OHP-CDR (then named OHP-LPG, LP), LPG, and Mario Azevedo ("Azevedo") entered into the *Limited Liability Company Agreement of PurchaseCo80, LLC* (the "LLC Agreement").[1]  A copy of the LLC Agreement is attached hereto as **Exhibit A**.

15.    The purpose of PurchaseCo was to, among other things, purchase LPG's and the

---

[1] The LLC Agreement was subsequently amended, replacing Azevedo with Azevedo Solutions Group.

Affiliates' future revenues from specified client files in exchange for an upfront payment.

16.     Pursuant to the LLC Agreement, OHP-CDR made an "Equity Investment" of $22,000 and had the option of providing "OHP Funding Capital" of up to $10,000,000.00 ("<u>OHP Funding Capital</u>").

17.     OHP-CDR provided the full $10,000,000 of OHP Funding Capital pursuant to the procedures set forth in section 3.02 of the LLC Agreement.

18.     The funding provided to PurchaseCo, including the OHP Funding Capital, was to be used by PurchaseCo to purchase receivables from the Debtor and the Affiliates (the "<u>Receivables</u>") associated with specified client files. The LLC Agreement required LPG to, among other things, collect the Receivables, and remit them to PurchaseCo.

19.     As contemplated by the LLC Agreement, on September 1, 2022, PurchaseCo and LPG into that certain *Accounts Receivables Purchase Agreement* (the "<u>A/R Purchase Agreement</u>"). A copy of the A/R Purchase Agreement is attached hereto as **Exhibit B**.[2]

20.     PurchaseCo paid LPG $6,372,532.80, and in exchange, LPG sold, assigned, transferred, and delivered to PurchaseCo the "Purchased Accounts," which are defined as LPG's "account receivables" associated with the client files in Addendum A to the A/R Purchase Agreement.[3]

21.     In total, PurchaseCo purchased LPG's accounts receivables associated with 9,985 client files pursuant to the A/R Purchase Agreement and the LLC Agreement.

22.     LPG also entered into a guaranty with OHP-CDR ("<u>LPG Guaranty</u>"), pursuant to which LPG unconditionally and irrevocably guaranteed to pay, when due, the OHP Funding Capital

---

[2] The A/R Purchase Agreement attached as Exhibit B does not contain the schedules or addenda because the schedules and addenda contain personal information. The schedules and addenda have already been provided to the Trustee, and Plaintiffs will file the schedules and addenda, along with a request to file them under seal pursuant to 11 U.S.C. § 107, upon request of the Court or at the appropriate time.

[3] The A/R Purchase Agreement contains a typographical error. As alleged in paragraph 20, PurchaseCo paid LPG $6,372,532.80, and in exchange, LPG sold, assigned, transferred, and delivered to PurchaseCo LPG's "account receivables" associated with the client files in the spreadsheet attached to the A/R Purchase Agreement.

-3-

as a primary obligor. A copy of the LPG Guaranty is attached hereto as **Exhibit C**.

23. To secure repayment of the OHP Funding Capital, under section 8.03 of the LLC Agreement, LPG granted OHP-CDR a first priority security interest in all of its personal property, including, among other things, all accounts, contract rights, rights to payment of money, commercial tort claims, deposit accounts, and all other financial assets ("OHP Lien").

24. On January 25, 2023, OHP-CDR (then OHP-LPG, LP) recorded a UCC-1 Financing Statement with the California Secretary of State ("OHP Financing Statement"). A copy of the OHP Financing Statement is attached hereto as **Exhibit D**.

**C.     LPG's Bankruptcy**

25. Before it filed bankruptcy, LPG was controlled and operated by an individual named Tony Diab ("Diab"), who took steps to conceal his control of LPG.

26. The Trustee has alleged that Mr. Diab engaged in a Ponzi scheme to defraud LPG's creditors.[4] According to the Trustee, Mr. Diab caused LPG to sell receivables associated with 719 client files, even though the receivables associated with 643 of those files had been purchased by an entity called Validation Partners, LLC.

27. The Trustee has also alleged that prepetition, Mr. Diab transferred LPG's entire business to new law firms controlled by Mr. Diab, which are alter egos of LPG. Specifically, the Trustee has alleged that in February 2023, Mr. Diab purchased a shell corporation and the website domain phoenixlaw.co ("Phoenix"), and around the same time, set up an entity called Oakstone Law Group PC ("Oakstone"), and by the petition date, LPG had transferred or sold approximately 15,000 client files to Oakstone, 40,000 client files to Phoenix, and 12,000 files to Consumer Law Group ("CLG").

28. On March 20, 2023 (the "Petition Date"), LPG filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Central District of California (the "Bankruptcy Court").

---

[4] See Amended Complaint, *Marshack v. Diab et al.*, Adv. Proc. No. 8:23-ap-01046-SC, ECF 62 ("Alter Ego Complaint").

-4-

29. On May 8, 2023, the Bankruptcy Court entered its *Order Approving the U.S. Trustee's Application for the Appointment of a Chapter 11 Trustee* and appointed Richard A. Marshack as the chapter 11 trustee in the above-captioned case.

30. According to the Trustee, Mr. Diab, along with Bianca Loli ("Loli") syphoned off money from LPG to entities such as Oakstone and Phoenix after the Petition Date by using LPG's ACH processing accounts. The Trustee has alleged that from March 28, 2023 through May 19, 2023, Mr. Diab's and Ms. Loli's actions netted between $6 million and $9.3 million in funds out of LPG to entities controlled by Mr. Diab.

**D.     The Sale**

31. On July 7, 2023, the Trustee filed the *Motion of Trustee Richard A. Marshack for Entry of an Order (A) Approving Sale, Subject to Overbid, of Assets Free and Clear of all Liens, Claims, Encumbrances and Interests Pursuant to 11 U.S.C. § 363(b) and (B) Approving Assumption and Assignment of Certain Executory Contracts and Unexpired Leases and Other Agreements* [ECF 191] (the "Sale Motion"). The Sale Motion sought authority to sell a number of LPG's assets, including reforming and assigning of LPG's contracts with its customers.

32. In the Sale Motion, the Trustee argued that LPG's contracts with its client "are a valuable asset that can be assigned to a law firm … for the benefit of the Estate, and all creditors, including consumer creditors."

33. On July 19, 2023, OHP-CDR filed a *Limited Objection and Reservation of Rights Concerning the Trustee's Motion to Sell the Debtor's Assets* [ECF 299], setting out the OHP Lien and PurchaseCo's ownership of receivables. OHP-CDR stated that it supported the proposed sale, subject to all liens and ownership interests attaching to sale proceeds, and reserved its rights with respect to the use of cash collateral and adequate protection to be provided in connection with the use of cash collateral, which were not before the Court at that time.

34. On July 22, 2023, the Court entered an order granting the Sale Motion [ECF 320], noting that the Trustee had argued LPG's contracts with its customer are a "valuable asset," finding that the Trustee could reform LPG's contracts with its customers, explaining that the central purpose of the contracts were "not tainted with illegality" and that the reformed terms "are not material to

the performance of the contract," and finding that although LPG's business was "ill-managed pre-petition," it was a "business endeavor worth saving."

35. On August 2, 2023, the Court entered an order approving the sale of certain of LPG's assets to Morning Law Group ("MLG") [ECF 352] ("Sale Order"). The Sale Order provides that: "All rights asserted by third parties related to their Liens and/or in the Debtors' receivables, including ownership rights by third parties, shall attach to the net proceeds of the Sale received by the Estate, with the same validity, force and effect which existed prior to the Closing of the Sale, subject to any rights, claims, objections, arguments and defenses Trustee, the Estate, the Debtor or any other party in interest, as applicable, may possess with respect thereto."

36. On August 21, 2023, the Trustee filed the *Chapter 11 Trustee, Richard Marshack's Report of Sale* [ECF 416], which attached the executed *Agreement of Purchase and Sale and Joint Escrow Instructions*, between the Trustee and MLG ("MLG APA").

37. On information and belief, PurchaseCo owns the receivables associated with at least 6,897 of the "Active Executory Contracts" and 834 of the "Paused" agreements assigned to MLG. PurchaseCo believes that it owns receivables associated with additional "Active Executory Contracts" or "Paused" agreements assigned to MLG, its investigation is ongoing, and PurchaseCo reserves the right to assert rights to additional receivables and to amend this Complaint.[5]

### E.  The Azzure Compromise

38. On July 24, 2023, Azzure filed a proof of claim ("Azzure Claim"), asserting a secured claim of no less than $5,000,000. A copy of the Azzure Claim is attached as **Exhibit E**.

39. The Azzure Claim is based on a note dated February 7, 2023 ("Azzure Note"). LPG and Azzure entered into the Azzure Note at around the same time that Mr. Diab created or assisted creating entities such as Phoenix and Oakstone and started transferring LPG's clients to those entities.

40. The Azzure Note provides that LPG promised to Azzure $2,550,000, with an interest

---

[5] On information and belief, PurchaseCo believes that it owns the receivables associated with many of the contracts that LPG transferred to CLG before the Petition Date.

-6-

rate of 170% per annum, along with an origination fee of $50,000.

41. The Azzure Note provided for a security interest ("Azzure Lien").

42. Azzure did not file a UCC-1 financing statement. Instead, an entity called BAE Enterprises, Inc. ("BAE") purportedly "assigned" a UCC-1 financing statement from May 28, 2021 ("Cobalt Financing Statement") to Azzure.

43. The Cobalt Financing Statement relates to an August 3, 2021 Cash Advance ("Cobalt Cash Advance") from Cobalt Funding Solutions ("Cobalt") to LPG.

44. On information and belief, there was litigation between Cobalt and LPG (the "Cobalt Litigation"). The Cobalt Litigation was resolved by a *Stipulation of Settlement* (the "Cobalt Settlement"), pursuant to which Cobalt agreed to accept $1.5 million in full satisfaction of all of Cobalt's claims against LPG, to be paid by June 2, 2022 pursuant to a schedule. The settlement also provided that Cobalt would deliver the Cobalt Financing Statement to BAE.

45. Cobalt assigned the Cobalt Financing Statement to BAE ("Cobalt-BAE Assignment").

46. On information and belief, Cobalt did not assign to BAE. the rights to the $1.5 million from the Cobalt Settlement.

47. On information and belief, Cobalt was paid in full under the Cobalt Settlement before LPG entered into the LLC Agreement and before the OHP Financing Statement was filed.

48. BAE, on the same date as the Azzure Note, purported to transfer the Cobalt Financing Statement to Azzure ("BAE-Azzure Assignment").

49. The BAE-Azzure Assignment was signed by Bianca Loli for BAE.

50. On information and belief, Ms. Loli is a close associate of Tony Diab. Ms. Loli is a defendant in the adversary proceeding captioned *Marshack v. Diab et al.*, Adv. Proc. No. 8:23-ap-01046-SC.[6] The Trustee has alleged in that adversary proceeding that Ms. Loli, along with Mr. Diab, syphoned money out of LPG post-petition through the use of alter egos.

---

[6] See Amended Complaint, *Marshack v. Diab et al.*, Adv. Proc. No. 8:23-ap-01046-SC, ECF 62 ("Alter Ego Complaint").

51. On information and belief, LPG paid Azzure at least $640,000 between February 14, 2023 and March 9, 2023.

52. On August 16, 2023, the Trustee filed the *Motion to Approve Compromise Between Trustee and Azzure Capital LLC* [ECF 392] ("Azzure Compromise Motion"). Through the Azzure Compromise Motion, the Trustee sought approval of an agreement with Azzure ("Azzure Compromise"), pursuant to which Azzure would have a secured claim of $1.9 million and a general unsecured claim of $1.6 million. The Azzure Compromise Motion and Azzure Compromise, however, did not provide any information regarding the priority of the Azzure Lien as against other liens. The Motion states that the $1.6 million "shall be paid prior to the unsecured claims of all post-petition lenders that received super-administrative priority status and from the sale proceeds." And the Azzure Compromise states that the secured claim "is believed [by the Trustee and Azzure] by the parties to be first-in priority with respect to all of the Bankruptcy estate's debts and liabilities." But there is no discussion or mention in the Azzure Compromise Motion of any other liens or ownership interests, or how the Azzure Lien is senior to any of those liens or ownership interests. Neither the Azzure Compromise Motion nor the Azzure Compromise contains any mention of the OHP Lien.

53. On August 30, 2023, OHP-CDR and PurchaseCo filed an objection to the Azzure Compromise Motion, asserting that OHP Lien has priority over the Azzure Lien, and arguing that no payments should be made to Azzure before resolution of the priority of the OHP Lien and PurchaseCo's ownership of the Receivables, for which an adversary proceeding is required pursuant to Federal Rule of Bankruptcy Procedure 7001.[7]

---

[7] *In re Loloee*, 241 B.R. 655, 660 (B.A.P. 9th Cir. 1999) (reversing order denying motion for reconsideration of sale order that determined priority of liens and stating: "A motion procedure cannot be used to circumvent the requirement of an adversary proceeding. *Bear v. Coben (In re Golden Plan),* 829 F.2d 705, 711–12 (9th Cir.1986). Rule 7001(2) explicitly requires an adversary proceeding to resolve the lien priority dispute between GMAC and GCC. Fed.R.Bankr.P. 7001(2)."); *In re Medomak Canning*, 922 F.2d 895, 903 (1st Cir. 1990) (discussing a Rule 9019 settlement, and noting that "The bankruptcy court addressed what it understandably took to be Acme's sole concern, *i.e.,* its claim of legal priority, finding that the priority would be determined in the complaint to be filed by the Trustee, and Acme withdrew its objection.").

54. On September 6, 2023, the Trustee filed a reply in support of the Azzure Compromise Motion, arguing for the first time that the Trustee would immediately pay Azzure, which is not a term of the Azzure Compromise. The Trustee also argued for the first time that the Azzure Compromise was intended to "conclusively establish" the priority of the Azzure Lien against the OHP Lien, which is not a term of the Azzure Compromise.

## FIRST CLAIM FOR RELIEF

### Declaratory Relief

### Against Richard A. Marshack as Chapter 11 Trustee

55. OHP-CDR and PurchaseCo repeat, reiterate, and reallege each and every allegation contained in the preceding paragraphs, with the same force and effect as though the same were set forth at length herein.

56. An actual controversy exists between PurchaseCo and the Trustee as to the ownership of the Receivables.

57. PurchaseCo asserts that it is owner of the Receivables, that any Sale proceeds attributable to the client files associated with the Receivables must be remitted to PurchaseCo, and that LPG cannot use such proceeds for any purpose. The Trustee disagrees.

58. PurchaseCo seeks a declaration that it is the owner of the Receivables, that any Sale proceeds attributable to the client files associated with the Receivables must be remitted to PurchaseCo, and that LPG cannot use such proceeds for any purpose.

## SECOND CLAIM FOR RELIEF

### Declaratory Relief

### Against Richard A. Marshack as Chapter 11 Trustee and Azzure Capital, LLC

59. OHP-CDR and PurchaseCo repeat, reiterate, and reallege each and every allegation contained in the preceding paragraphs, with the same force and effect as though the same were set forth at length herein.

60. An actual controversy exists between OHP-CDR, on the one hand, and the Trustee and Azzure, on the other hand, with respect to the priority of the OHP Lien and the Azzure Lien.

61. OHP-CDR asserts that the OHP Lien has priority over the Azzure Lien. LPG and

-9-

Azzure entered into the Azzure Note after the OHP Financing Statement was filed. Azzure did not file a UCC financing statement with respect to the Azzure Lien. The purported transfer of the Cobalt Financing Statement relating to the Cobalt Cash Advance does not relate back to the filing of the Cobalt Financing Statement by Cobalt. Moreover, because Azzure did not file a UCC financing statement and is not named as an assignee on any filed financing statement, it was not a secured party of record when the OHP Financing Statement was filed. Moreover, to the extent that there was a transfer of the Cobalt Financing Statement to Azzure, Azzure would only receive such rights as belonged to Cobalt, and Cobalt received full satisfaction of its claim before the OHP Financing Statement was filed, meaning that any lien by Cobalt was extinguished before the OHP Financing Statement, and therefore, the Azzure Lien cannot have priority over the OHP Lien. Azzure and the Trustee disagree.

62. Based on the foregoing, OHP-CDR seeks a declaration that the OHP Lien has priority over the Azzure Lien.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for a judgment as follows:

1. A declaratory judgment that PurchaseCo owns the Receivables.
2. A declaratory judgment that the OHP Lien has priority over the Azzure Lien.
3. Any other and further relief as the Court deems just and proper.

DATED: September 11, 2023        Respectfully submitted,

By  */s/ Razmig Y. Izakelian*
Eric D. Winston
Jeremy D. Andersen
Razmig Y. Izakelian

*Attorneys for OHP-CDR, LP and PurchaseCo 80, LLC*