1  Mitchell B. Ludwig, Bar No. 115903
   mbl@kpclegal.com
2  KNAPP, PETERSEN & CLARKE
   550 North Brand Boulevard, Suite 1500
3  Glendale, California 91203-1922
   Telephone: (818) 547-5000
4  Facsimile: (818) 547-5329

5  Attorneys for Creditor
   FUNDURA CAPITAL GROUP

6

7

8              UNITED STATES BANKRUPTCY COURT

9         CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA DIVISION

10

11  In re                              )  NO.    8-23-bk-10571-SC
                                       )
12  THE LITIGATION PRACTICE GROUP      )  Chapter 11
    P.C.,                              )
13                                     )  Date:            September 13, 2023
              Debtor.                  )  Time:                    1:30 P.M.
14                                     )  Ctrm:                          5c
                                       )
15                                     )  Hearing Judge:   Hon. Scott C. Clarkson
                                       )
16  _____   )  OBJECTION TO THE MOTION AND
                                       )  REQUEST FOR CLARIFICATION
17

18  TO THE COURT AND TO ALL INTERESTED PARTIES:

19        Secured Creditor Fundura Capital Group ("Fundura") submits this limited objection

20  to the motion and request clarification. As the Trustee is aware, Fundura does not consent

21  to funding the settlement with any of its cash collateral.

22        It further objects to the extent that there will be any finding that Azzure Capital,

23  LLC's claim is deemed a first priority lien when Fundura's UCC-1 filing pre-dated

24  Azzure's claimed lien. (See Declaration of Mitchell B. Ludwig attached hereto.)

25  ////

26  ////

27  ////

28  ////

KNAPP,
PETERSEN
& CLARKE

6199813.1  01213/00001

1    As reflected in the attached declaration, after discussion with the Trustee's

2  representative counsel, Fundura's rights would not be compromised by the settlement.

3  Dated:  September 11, 2023

4

5                                                    By: _____

6                                                          Mitchell B. Ludwig, attorney for
                                                          Fundura Capital Group

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KNAPP,
PETERSEN
& CLARKE

-2-

<u>DECLARATION OF MITCHELL B. LUDWIG</u>

I, Mitchell B. Ludwig, declare as follows:

1.     I am an attorney at law duly licensed to practice before this Court.  I am a member of the law firm of KNAPP, PETERSEN & CLARKE, counsel of record for Fundura Capital Group, a secured creditor in this action.

2.     Attached hereto is Fundura Capital Group's ("Fundura") Proof of Claim filed August 24, 2023, as Claim Number 335-1.

3.     As reflected therein, Fundura is a secured creditor with a claim in excess of $2,374,000.

4.     Fundura's secured claim was perfected on May 19, 2021, prior in time to any claim purportedly held by Azzure Capital LLC.

5.     Fundura does not consent to the use of its cash collateral to fund the settlement.

6.     Based on discussions with the Trustee's counsel, it is my understanding that Fundura's rights to the cash collateral will not be compromised.

Executed on this 12th day of September, 2023, at Glendale, California.

I declare under penalty of perjury that the foregoing is true and correct.

*Mitchell B. Ludwig*

Mitchell B. Ludwig

KNAPP,
PETERSEN
& CLARKE

-3-

6199813.1  01213/00001

| Fill in this information to identify the case: | |
|---|---|
| Debtor 1   The Litigation Practice Group P.C. | |
| Debtor 2 <br> (Spouse, if filing) | |
| United States Bankruptcy Court   **Central District of California** | |
| Case number:  **23−10571** | |

**FILED**

**U.S. Bankruptcy Court**
**Central District of California**

8/24/2023

Kathleen J. Campbell, Clerk

## Official Form 410
## Proof of Claim

04/22

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

**Part 1:  Identify the Claim**

**1. Who is the current creditor?**

Fundura Capital Group
_____
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor
_____

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

**Where should notices to the creditor be sent?**

Fundura Capital Group
_____
Name

1545 Route 202, Suite 101
Pomona, NY 10970

Contact phone _____2127291477_____

Contact email _____ari@bblawpllc.com____

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

_____

**Where should payments to the creditor be sent?** (if different)

_____
Name

Contact phone _____

Contact email _____

**4. Does this claim amend one already filed?**

☑ No
☐ Yes. Claim number on court claims registry (if known) _____      Filed on _____
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing? _____

**Part 2:**  **Give Information About the Claim as of the Date the Case Was Filed**

| | |
|---|---|
| **6. Do you have any number you use to identify the debtor?** | ☑ No<br>☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _____ |

---

**7. How much is the claim?**    $    2374004.82

Does this amount include interest or other charges?
☐ No
☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

---

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as healthcare information.

Purchase of future receivables; Judgment

---

**9. Is all or part of the claim secured?**

☐ No
☑ Yes. The claim is secured by a lien on property.

**Nature of property:**
☐ Real estate.    If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*
☐ Motor vehicle
☑ Other. Describe:    All assets see financing statement

**Basis for perfection:**    UCC-1

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**    $    2374004.82

**Amount of the claim that is secured:**    $    2374004.82

**Amount of the claim that is unsecured:**    $    0.00    (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**    $ _____

**Annual Interest Rate** (when case was filed)    9.00    %

☑ Fixed
☐ Variable

---

**10. Is this claim based on a lease?**

☑ No
☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $ _____

---

**11. Is this claim subject to a right of setoff?**

☑ No
☐ Yes. Identify the property: _____

---

| 12. | Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No ☐ Yes. *Check all that apply:* | | Amount entitled to priority |
|---|---|---|---|---|
| | A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | | $ _____ |
| | | ☐ Up to $3,350 * of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | | $ _____ |
| | | ☐ Wages, salaries, or commissions (up to $15,150 *) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | | $ _____ |
| | | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | | $ _____ |
| | | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | | $ _____ |
| | | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(_) that applies | | $ _____ |
| | | * Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment. | | |

## Part 3:  Sign Below

| The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.**
18 U.S.C. §§ 152, 157 and 3571. | Check the appropriate box:

☐ I am the creditor.
☑ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct. |
|---|---|

Executed on date    8/24/2023
                     ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
                     MM / DD / YYYY


/s/  Ariel Bouskila
‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
Signature

Print the name of the person who is completing and signing this claim:

| Name | Ariel Bouskila |
|---|---|
| | First name        Middle name        Last name |
| Title | Partner |
| Company | Berkovitch & Bouskila, PLLC |
| | Identify the corporate servicer as the company if the authorized agent is a servicer |
| Address | 1545 Route 202, Suite 101 |
| | Number  Street |
| | Pomona, NY 10970 |
| | City   State   ZIP Code |
| Contact phone | 2127291477          Email  ari@bblawpllc.com |

UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA

Fundura Capital Group

Plaintiff

The Litigation Practice Group P.C.                                      Case No. 23-10571

                                                                        Chapter 11

                          Debtor

---

### RIDER TO PROOF OF CLAIM

Fundura Capital Group ("FCG") submits this Proof of Claim against The Litigation Practice Group P.C. (The "Debtor") for a claim in the amount not less than $2,374,004.82, including interest, fees, and costs and disbursements, for repayment of future receivables purchased by FCG. On or around July 22, 2021, FCG and the Debtor entered into a Revenue Purchase Agreement (the "Agreement") pursuant to which FCG purchased 50% of the total future accounts receivables of The Litigation Practice Group P.C. (and other none parties to this Proceeding BAT, INC. D/B/A COAST PROCESSING ; VULCAN CONSULTING GROUP LLC; B.A.T. INC. DBA COAST PROCESSING; COAST PROCESSING) and DANIEL S MARCH and TONY M DIAB (the "Company Defendants" and "Merchants" together with the Debtor collectively as the "Obligated Parties"), up to the sum of $1,986,000.00 in exchange for an upfront purchase price of $1,200,000.00. The Debtor guaranteed the performance of the Obligated Parties under the Agreement pursuant to a Guaranty of Performance (the "Guarantee") dated July 22, 2021. On or about August 10, 2021, Obligated Parties defaulted under the terms of the Agreement by failing to deliver receivables to FCG while still conducting business operations. The Debtor also granted FCG a security interest in its Accounts and accounts receivable, which was perfected by the filing of a UCC Financing Statement (the "UCC") Copies of the Agreement and UCC are attached hereto as Exhibit "A" and Exhibit "B".

This Claim is filed to protect FCG from forfeiture of any claims it may have. Filing of this Claim is not (a) a waiver or release of FCG's rights, claims or defenses against any person, entity or property; (b) a waiver or release of FCG's right to have any and all final orders in any and all non-core matters entered only after *de novo* review by a United States District Judge; (c) a consent by FCG to the jurisdiction of this Court for any purpose other than with respect to this Claim; (d) an election of remedy; (e) a waiver or release of any rights which FCG may have to a jury trial; or (f) a waiver of the right to move to withdraw the reference with respect to the subject matter of this Claim, any objection thereto or any other proceedings which may be commenced in these cases against or otherwise involving FCG, including without limitation, any adversary proceeding that was or may be commenced by any party or committee in this case.

# PURCHASE & SALE OF FUTURE RECEIVABLES

FUNDURA CAPITAL

This Revenue Purchase Agreement and Security Agreement and Guaranty of Performance ("Agreement") dated __07/22/2021__ between Fundura Capital Group, ("**FCG**") the Merchant(s) listed below (**Merchant**") and the Individual(s) listed below ("**Guarantor**")

## Merchant Information

Merchant's Legal Name: **BAT, INC. and the entities listed on annexed "Exhibit A"**

D/B/A: **COAST PROCESSING**          State of Incorporation / Organization: **CA**

Type of Entity: _____

Physical Address: **17542 17TH ST. STE 100**

City: **TUSTIN**          State: **CA**          Zip: **92780** Business Phone: _____

Guarantor(s) Name: **DANIEL S. MARCH** Cellphone Number: _____ Email Address: _____

Mailing Address: **20160 NOB HILL DR.** City: **YORBA LINDA** State: **CA** Zip: **92886**

Purchase Price: $ **1,200,000.00** Purchased Percent: **50** % Purchased Amount: $ **1,986,000.00**

Payment Frequency: **DAILY**          Remittance: $ **35,000.00**

### PURCHASE AND SALE OF FUTURE RECEIVABLES

Merchant hereby sells, assigns and transfers to FCG (making FCG the absolute owner) in consideration of the "Purchase Price" specified above, the Purchased Percentage of all of Merchant's Future Receipts, contract rights and other entitlements arising from or relating to the payment of monies from Merchant's customers' and/or other third party payors (the " Future Receipts "defined as all payments made by cash, check, electronic transfer or other form of monetary payment deposited into Merchants Bank Account), for the payments to Merchant as a result of Merchant's sale of goods and/or services (the "Transactions") until the "Purchased Amount has been delivered by or on behalf of Merchant to FCG

Merchant is selling a portion of a future revenue stream to FCG at a discount, not borrowing money from FCG, therefore there is no interest rate or payment schedule and no time period during which the Purchased Amount must be collected by FCG. The Remittance is a good faith estimate of Purchased Percentage multiplied by revenues of Merchant. Merchant going bankrupt or going out of business, or experiencing a slowdown in business, or a delay in collecting its receivables, in and of itself, does not constitute a breach of this Agreement. FCG is entering this Agreement knowing the risks that Merchant's business may slow down or fail, and FCG assumes these risks based on Merchant's representations, warranties and covenants in this Agreement, which are designed to give FCG a reasonable and fair opportunity to receive the benefit of its bargain. Merchant and Guarantor are only guaranteeing their performance of the terms of this Revenue Purchase Agreement, and are not guaranteeing the payment of the Purchased Amount. The initial Remittance shall be as described above. The Remittance is subject to adjustment as set forth in Paragraph 1.4 and Paragraph 1.5.

FCG will debit the Remittance each business day from only one depositing bank account, which account must be acceptable to, and pre-approved by, FCG (the "Account) into which Merchant and Merchant's customers shall remit the Receipts from each Transaction, until such time as FCG receives payment in full of the Purchased Amount. Merchant hereby authorizes FCG to ACH debit the initial Remittance from the Account on the agreed upon Payment Frequency; a daily basis means any day that is not a United States banking holiday. FCG's payment of the Purchase Price shall be deemed the acceptance and performance by FCG of this Agreement. Merchant understands that it is responsible for ensuring that the initial Remittance to be debited by FCG remains in the Account and will be held responsible for any fees incurred by FCG resulting from a rejected ACH attempt or an Event of Default. FCG is not responsible for any overdrafts or rejected transactions that may result from FCG's ACH debiting the Agreed Remittance under the terms of this Agreement. Notwithstanding anything to the contrary in this Agreement or any other agreement between FCG and Merchant, upon the occurrence of an Event of Default of the MERCHANT AGREEMENT TERMS AND CONDITIONS the Purchased Percentage shall equal 100%. A list of all fees applicable under this Agreement is contained in Appendix A.

**THE MERCHANT AGREEMENT "TERMS AND CONDITIONS", THE "SECURITY AGREEMENT AND GUARANTY" AND THE "ADMINISTRATIVE FORM HEREOF, ARE ALL HEREBY INCORPORATED IN AND MADE A PART OF THIS MERCHANT AGREEMENT.**

FOR THE MERCHANT (#1) By: __DANIEL S. MARCH__          *Daniel S March*
                        (Print Name and Title)                    (Signature)

FOR THE MERCHANT (#2) By: __TONY M. DIAB__          *Tony M Diab*
                        (Print Name and Title)                    (Signature)

BY OWNER (#1) By: __DANIEL S. MARCH__          *Daniel S March*
                    (Print Name and Title)                    (Signature)

BY OWNER (#2) By: __TONY M. DIAB__          *Tony M Diab*
                    (Print Name and Title)                    (Signature)

Doc ID: 76ff3b1ea14fd7a4ba9e4be357ad87533018e6f1

**PURCHASE & SALE OF FUTURE RECEIVABLES**

**FUNDURA CAPITAL**

This Revenue Purchase Agreement and Security Agreement and Guaranty of Performance ("Agreement") dated _07/22/2021_ between Fundura Capital Group, ("**FCG**") the Merchant(s) listed below (**Merchant**) and the Individual(s) listed below ("**Guarantor**")

# MERCHANT AGREEMENT TERMS AND CONDITIONS

## 1.    TERMS OF ENROLLMENT IN PROGRAM

### 1.1 Merchant Deposit Agreement and Processor

Merchant shall (A) execute an agreement acceptable to FCG with a Bank acceptable to FCG to obtain electronic fund transfer services for the Account, and (B) if applicable, execute an agreement acceptable to FCG with a credit and debit card processor (the "Processor") instructing the Processor to deposit all Receipts into the Account. Merchant shall provide FCG and/or its authorized agent(s) with all of the information, authorizations and passwords necessary for verifying Merchant's receivables, receipts, deposits and withdrawals into and from the Account. Merchant hereby authorizes FCG and/or its agent(s) to withdraw from the Account via ACH debit the amounts owed to FCG for the receipts as specified herein and to pay such amounts to FCG. These authorizations apply not only to the approved Account but also to any subsequent or alternate account used by the Merchant for these deposits, whether pre-approved by FCG or not. This additional authorization is not a waiver of FCG's entitlement to declare this Agreement breached by Merchant as a result of its usage of an account which FCG did not first pre-approve in writing prior to Merchant's usage thereof. The aforementioned authorizations shall be irrevocable without the written consent of FCG

### 1.2 Term of Agreement.

This Agreement shall remain in full force and effect until the entire Purchased Amount and any other amounts due are received by FCG as per the terms of this Agreement.

### 1.3 Future Purchase of Increments.

Subject to the terms of this Agreement, FCG offers to purchase additional Receipts in the "Increments" stated in on Page 1 of this Agreement, if any. FCG reserves the right to delay or rescind the offer to purchase any Increment or any additional Receipts, in its sole and absolute discretion..

### 1.4 Reconciliation

As long as an Event of Default, or breach of this Agreement, has not occurred, once per calendar month Merchant may request a retroactive reconciliation of the total Remittance Amount(for the purposes of this Agreement "total Remittance Amount" shall be defined as all payments made by Merchant to FCG after FCG remitted the Purchase Price to Merchant). All requests hereunder must be in writing to  office@funduracap.com within five (5) business days of the close of the calendar month. Said request must include copies of all of Merchant's bank account statements, credit card processing statements, and accounts receivable report if applicable, for the requested month. FCG retains the right the request additional documentation such as bank login or DecisionLogic access to view Merchant's accounts, refusal to provide access shall be a breach of this Agreement and FCG shall have no obligation to reconcile. Such reconciliation, if applicable, shall be performed by FCG within five (5) Business Days following its receipt of Merchant's request for reconciliation by either crediting or debiting the difference back to, or from, Merchants Bank Account so that the total amount debited by FCG shall equal the Specific Percentage of the Future Receipts that Merchant Collected from the date of this Agreement up to and including the date of the Reconciliation request. Nothing set forth in this section shall be deemed to provide Merchant with the right to interfere with FCG's right and ability to debit Merchant's Account while the Request is pending or to unilaterally modify the initial Remittance amount, in any method other than the ones listed in this Agreement.

### 1.5 Adjustments to the Remittance.

As long an Event of Default, or breach of this Agreement, has not occurred and should the Merchant experience a decrease in its' Future Receipts, Merchant may give notice to FCG to request a decrease in the Remittance. All requests hereunder must be in writing to office@funduracap.com and must include copies of all of Merchant's bank account statements, credit card processing statements, and accounts receivable reports for the requested period. FCG retains the right the request additional documentation such as bank login or DecisionLogic access to view Merchant's accounts, refusal to provide access shall be a breach of this Agreement and FCG shall have no obligation to reconcile. The Remittance shall be modified to more closely reflect the Merchant's actual receipts by multiplying the Merchant's actual receipts by the Purchased Percentage divided by the number of business days in the previous (2) calendar weeks or by other means that can more accurately estimate the Merchant's Future Receipts. Merchant shall provide FCG with viewing access to their bank account as well as all information reasonably requested by FCG to properly calculate the Merchant's Remittance. At the end of the two (2) calendar weeks the Merchant may request another adjustment pursuant to this paragraph or it is agreed that the Merchant's Remittance shall return to the Remittance as agreed upon on Page 1 of this Agreement.

### 1.6 Financial Condition

Merchant and Guarantor(s) (as hereinafter defined and limited) authorize FCG and its agents to investigate their financial responsibility and history, and will provide to FCG any authorizations, bank or financial statements, tax returns, etc., as FCG deems necessary in its sole and absolute discretion prior to or at any time after execution of this Agreement. A photocopy of this authorization will be deemed as acceptable as an authorization for release of financial and credit information. FCG is authorized to update such information and financial and credit profiles from time to time as it deems appropriate.

### 1.7 Transactional History.

Merchant authorizes all of its banks, brokers and processor to provide FCG with Merchant's banking, brokerage and/or processing history to determine qualification or continuation in this program and for collections purposes. Merchant shall provide FCG with copies of any documents related to Merchant's card processing activity or financial and banking affairs within five days after a request from FCG.

### 1.8 Indemnification.

Merchant and Guarantor(s) jointly and severally indemnify and hold harmless Processor, its officers, directors and shareholders against all losses, damages, claims, liabilities and expenses (including reasonable attorney's fees) incurred by Processor resulting from (a) claims asserted by FCG for monies owed to FCG from Merchant and (b) actions taken by Processor in reliance upon any fraudulent, misleading or deceptive information or instructions provided by FCG.

### 1.9 No Liability.

In no event will FCG be liable for any claims asserted by Merchant or Guarantors under any legal theory for lost profits, lost revenues, lost business opportunities, exemplary, punitive, special, incidental, indirect or consequential damages, each of which is waived by both Merchant and Guarantor(s). In

Doc ID: 76ff3b1ea14fd7a4ba9e4be357ad87533018e6f1

the event these claims are nonetheless raised, Merchant and Guarantors will be jointly liable for all of FCG's attorney's fees and expenses resulting therefrom.

### 1.10 Reliance on Terms

Section 1.1, 1.6, 1.7, 1.8 and 2.5 of this Agreement are agreed to for the benefit of Merchant, FCG, Processor, and Merchant's bank and notwithstanding the fact that Processor and the bank is not a party of this Agreement, Processor and the bank may rely upon their terms and raise them as a defense in any action.

### 1.11 Sale of Receipts.

Merchant and FCG agree that the Purchase Price under this Agreement is in exchange for the Purchased Amount, and that such Purchase Price is not intended to be, nor shall it be construed as a loan from FCG to Merchant. Merchant agrees that the Purchase Price is in exchange for the Receipts pursuant to this Agreement, and that it equals the fair market value of such Receipts. FCG has purchased and shall own all the Receipts described in this Agreement up to the full Purchased Amount as the Receipts are created. Payments made to FCG in respect to the full amount of the Receipts shall be conditioned upon Merchant's sale of products and services, and the payment therefore by Merchant's customers. In no event shall the aggregate of all amounts or any portion thereof be deemed as interest hereunder, and in the event it is found to be interest despite the parties hereto specifically representing that it is NOT interest, it shall be found that no sum charged or collected hereunder shall exceed the highest rate permissible at law. In the event that a court nonetheless determines that FCG has charged or received interest hereunder in excess of the highest applicable rate, the rate in effect hereunder shall automatically be reduced to the maximum rate permitted by applicable law and FCG shall promptly refund to Merchant any interest received by FCG in excess of the maximum lawful rate, it being intended that Merchant not pay or contract to pay, and that FCG not receive or contract to receive, directly or indirectly in any manner whatsoever, interest in excess of that which may be paid by Merchant under applicable law. As a result thereof, Merchant knowingly and willingly waives the defense of Usury in any action or proceeding.

### 1.12 Power of Attorney

Merchant irrevocably appoints FCG as its agent and attorney-in-fact with full authority to take any action or execute any instrument or document to settle all obligations due to FCG from Processor, or in the case of a violation by Merchant of Section 1or the occurrence of an Event of Default under Section 3 hereof, including without limitation (i) to obtain and adjust insurance; (ii) to collect monies due or to become due under or in respect of any of the Collateral; (iii) to receive, endorse and collect any checks, notes, drafts, instruments, documents or chattel paper in connection with clause (i) or clause (ii) above; (iv) to sign Merchant's name on any invoice, bill of lading, or assignment directing customers or account debtors to make payment directly to FCG; and (v) to contact Merchant's banks and financial institutions using Merchant and Guarantor(s) personal information to verify the existence of an account and obtain account balances (vi) to file any claims or take any action or institute any proceeding which FCG may deem necessary for the collection of any of the unpaid Purchased Amount from the Collateral, or otherwise to enforce its rights with respect to payment of the Purchased Amount. In connection therewith, all costs, expenses and fees, including legal fees, shall be payable by merchant.

### 1.13 Protections Against Default

The following Protections 1 through 8 may be invoked by FCG immediately and without notice to Merchant in the event: (a) Merchant takes any action to discourage the use of electronic check processing that are settled through Processor, or permits any event to occur that could have an adverse effect on the use, acceptance, or authorization of checks or other payments or deposits for the purchase of Merchant's services and products including but not limited to direct deposit of any checks into a bank account without scanning into the FCG electronic check processor; (b) Merchant changes its arrangements with Processor or the Bank in any way that is adverse or unacceptable to FCG; (c) Merchant changes the electronic check processor through which the Receipts are settled from Processor to another electronic check processor, or permits any event to occur that could cause diversion of any of Merchant's check or deposit transactions to another processor; (d) Merchant intentionally interrupts the operation of this business transfers, moves, sells, disposes, or otherwise conveys its business and/or assets without (i) the express prior written consent of FCG, and (ii) the written agreement of any FCG or transferee to the assumption of all of Merchant's obligations under this Agreement pursuant to documentation satisfactory to FCG; (e) Merchant takes any action, fails to take any action, or offers any incentive—economic or otherwise—the result of which will be to induce any customer or customers to pay for Merchant's services with any means other than payments, checks or deposits that are settled through Processor; (f) Merchant fails to provide FCG with copies of any documents related to Merchant's card processing activity of financial and banking affairs within five days after a request from FCG, or (g) Merchant breaches any terms of this Agreement, including but not limited any of the Events of Default contained in Section 3.1 herein. These protections are in addition to any other remedies available to FCG at law, in equity or otherwise pursuant to this Agreement.

**Protection 1.** The full uncollected Purchased Amount plus all fees in addition to attorney's fees in the amount of 30% of the outstanding balance due under this Agreement and the attached Security Agreement become due and payable in full immediately.

**Protection 2.** FCG may enforce the provisions of the Limited Personal Guaranty of Performance against the Guarantor(s).

**Protection 3.** Merchant hereby authorizes FCG to execute in the name of the Merchant a Confession of Judgment in favor of FCG in the amount of Purchased Amount stated in the Agreement. Upon an Event of Default, FCG may enter that Confession of Judgment as a Judgment with the Clerk of any Court and execute thereon.

**Protection 4.** FCG may enforce its security interest in the Collateral.

**Protection 5.** The entire Purchased Amount and all fee ~~a~~ ~~nnt~~ d ~~yoay a~~ ey'osf i ~~dss ao a~~ ms a u y3o ey h0%d ~~ay h~~ ms ~~a~~ y3 e ~~r onto~~ g ~~a~~ b ~~r lr oc~~ s ~~a~~ shall become immediately payable to FCG from Merchant. **Protection 6.** FCG may proceed to protect and enforce its right and remedies by lawsuit. In any such lawsuit, if FCG recovers a Judgment against Merchant, Merchant shall be liable for all of FCG's costs of the lawsuit, including but not limited to all reasonable attorneys' fees and court costs. **Protection 7.** This Agreement shall be deemed Merchant's Assignment of Merchant's Lease of Merchant's business premises to FCG. Upon breach of any provision in this Agreement, FCG may exercise its rights under this Assignment of Lease without prior Notice to Merchant. Protection 8. FCG may debit Merchant's depository accounts wherever situated by means of ACH debit or facsimile signature on a computer-generated check drawn on Merchant's bank account or otherwise for all sums due to FCG.

### 1.14 Protection of Information.

Merchant and each person signing this Agreement on behalf of Merchant and/or as Owner or Guarantor, in respect of himself or herself personally, authorizes FCG to disclose information concerning Merchant's and each Owner's and each Guarantor's credit standing (including credit bureau reports that FCG obtains) and business conduct only to agents, affiliates, subsidiaries, and credit reporting bureaus. Merchant and each Owner and each Guarantor hereby and each waives to the maximum extent permitted by law any claim for damages against FCG or any of its affiliates relating to any (i)investigation undertaken by or on behalf of FCG as permitted by this Agreement or (ii) disclosure of information as permitted by this Agreement.

### 1.15 Confidentiality.

Merchant understands and agrees that the terms and conditions of the products and services offered by FCG, including this Agreement and any other FCG documents (collectively, "Confidential Information") are proprietary and confidential information of FCG. Accordingly, unless disclosure is required by law or ~~court order. Merchant shall not disclose Confidential Information of FCG to any person other than an attorney, accountant, financial advisor or employee~~ of the purpose of advising Merchant and first agrees in writing to be bound by the terms of this section. A breach hereof entitles FCG to not only damages ~~rat or r neat ret omeya' sfi t h ' i t at mi t ou e3art elt 0%d t elt mi t e3ri roar agt boloac' t~~ but also to both a Temporary Restraining Order and a Preliminary ~~Injunction without Bond or Security.~~

**1.16 Publicity**

Merchant and each of Merchant's Owners and all Guarantors hereto all hereby authorizes FCG to use its, his or her name in listings of clients and in advertising and marketing materials.

Merchant hereby acknowledges and agrees that FCG may be using "doing business as" or "d/b/a" names in connection with various matters relating to the transaction between FCG and Merchant, including the filing of UCC-1 financing statements and other notices or filings.

## 2.    REPRESENTATIONS, WARRANTIES AND COVENANTS

Merchant represents warrants and covenants that, as of this date and during the term of this Agreement:

**2.1 Financial Condition and Financial Information.**

Merchant's and Guarantors' bank and financial statements, copies of which have been furnished to FCG, and future statements which will be furnished hereafter at the discretion of FCG, fairly represent the financial condition of Merchant at such dates, and since those dates there has been no material adverse changes, financial or otherwise, in such condition, operation or ownership of Merchant. Merchant and Guarantors have a continuing, affirmative obligation to advise FCG of any material adverse change in their financial condition, operation or ownership. FCG may request statements at any time during the performance of this Agreement and the Merchant and Guarantors shall provide them to FCG within five business days after request from FCG. Merchant's or Guarantors' failure to do so is a material breach of this Agreement.

**2.2 Governmental Approvals.**

Merchant is in compliance and shall comply with all laws and has valid permits, authorizations and licenses to own, operate and lease its properties and to conduct the business in which it is presently engaged and/or will engage in hereafter.

**2.3 Authorization.**

Merchant, and the person(s) signing this Agreement on behalf of Merchant, have full power and authority to incur and perform the obligations under this Agreement, all of which have been duly authorized.

**2.4 Use of Funds.**

Merchant agrees that it shall use the Purchase Price for business purposes and not for personal, family, or household purposes.

**2.5 Electronic Check Processing Agreement.**

Merchant will not change its Processor, add terminals, change its financial institution or bank account(s)or take any other action that could have any adverse effect upon Merchant's obligations under this Agreement, without FCG's prior written consent. Any such changes shall be a material breach of this Agreement.

**2.6 Change of Name or Location.**

Merchant will not conduct Merchant's businesses under any name other than as disclosed to the Processor and FCG, nor shall Merchant change any of its places of business without prior written consent by FCG.

**2.7 Daily Batch Out.**

Merchant will batch out receipts with the Processor on a daily basis if applicable.

**2.8 Estoppel Certificate.**

Merchant will at every and all times, and from time to time, upon at least one (1) day's prior notice from FCG to Merchant, execute, acknowledge and deliver to FCG and/or to any other person, firm or corporation specified by FCG, a statement certifying that this Agreement is unmodified and in full force and effect (or, if there have been modifications, that the same is in full force and effect as modified and stating the modifications) and stating the dates which the Purchased Amount or any portion thereof has been repaid.

**2.9 No Bankruptcy.**

As of the date of this Agreement, Merchant is not insolvent and does not contemplate filing for bankruptcy in the next six months and has not consulted with a bankruptcy attorney or filed any petition for bankruptcy protection under Title 11 of the United States Code and there has been no involuntary petition brought or pending against Merchant. Merchant further warrants that it does not anticipate filing any such bankruptcy petition and it does not anticipate that an involuntary petition will be filed against it.

**2.10 Unencumbered Receipts.**

Merchant has good, complete, unencumbered and marketable title to all Receipts, free and clear of any and all liabilities, liens, claims, changes, restrictions, conditions, options, rights, mortgages, security interests, equities, pledges and encumbrances of any kind or nature whatsoever or any other rights or interests that may be inconsistent with the transactions contemplated with, or adverse to the interests of FCG.

**2.11 Business Purpose.**

Initials:

Merchant is a valid business in good standing under the laws of the jurisdictions in which it is organized and/or operates, and Merchant is entering into this Agreement for business purposes and not as a consumer for personal, family or household purposes.

**2.12** Defaults under Other Contracts.

Merchant's execution of, and/or performance under this Agreement, will not cause or create an event of default by Merchant under any contract with another person or entity.

**2.13** Good Faith.

Merchant and Guarantor(s) hereby affirm that Merchant is receiving the Purchase Price and selling FCG the Purchased Amount in good faith and will use the Purchase Price funds to maintain and grow Merchant's business

# 3.    EVENTS OF DEFAULT AND REMEDIES

**3.1** Events of Default.

The occurrence of any of the following events shall constitute an "Event of Default" hereunder:
(a)    Merchant or Guarantor shall violate any term or covenant in this Agreement;
(b)    Any representation or warranty by Merchant in this Agreement shall prove to have been incorrect, false or misleading in any material respect when made;

(c)    the sending of notice of termination by Merchant or verbally notifying FCG of its intent to breach this Agreement;
(d)    the Merchant fails to give FCG 24 hours advance notice that there will be insufficient funds in the account such that the ACH of the Remittance amount will not be honored by Merchant's bank, and the Merchant fails to supply all requested documentation and allow for daily and/or real time monitoring of its bank account;
(f)    Merchant shall transfer or sell all or substantially all of its assets;
(g)    Merchant shall make or send notice of any intended bulk sale or transfer by Merchant;
(h)    Merchant shall use multiple depository accounts without the prior written consent of FCG
(i)    Merchant shall enter into any financing agreements with any other party including but not limited to: Loans, Merchant Cash Advances, Receivables financing, or any other agreement that will increase the total debt owed by Merchant to any other party.
(j)    Merchant shall change its depositing account without the prior written consent of FCG; or
(k)    Merchant shall close its depositing account used for ACH debits without the prior written consent of FCG
(l)    Merchant's bank returns a code other than NSF cutting FCG from its collections
(m)    Merchant shall default under any of the terms, covenants and conditions of any other agreement with FCG.

**3.2** Limited Personal Guaranty

In the Event of a Default, FCG will enforce its rights against the Guarantors of this transaction. Said Guarantors will be jointly and severally liable to FCG for all of FCG's losses and damages, in additional to all costs and expenses and legal fees associated with such enforcement.

**3.3** Remedies.

In case any Event of Default occurs and is not waived pursuant to Section 4.4. hereof, FCG may proceed to protect and enforce its rights or remedies by suit in equity or by action at law, or both, whether for the specific performance of any covenant, agreement or other provision contained herein, or to enforce the discharge of Merchant's obligations hereunder (including the Guaranty) or any other legal or equitable right or remedy, including but not limited to filing the Confession of Judgment and executing thereon, and enforcing the Security Agreement contained herein. All rights, powers and remedies of FCG in connection with this Agreement may be exercised at any time by FCG after the occurrence of an Event of Default, are cumulative and not exclusive, and shall be in addition to any other rights, powers or remedies provided by law or equity.

**3.4** Costs

Merchant shall pay to FCG all reasonable costs associated with (a) an Event or Default, (b) breach by Merchant of the Covenants in this Agreement and the enforcement thereof, and(c) the enforcement of FCG's remedies set forth in this Agreement, including but not limited to court costs and attorneys' fees.

**3.5** Required Notifications

Merchant is required to give FCG written notice within 24 hours of any filing under Title 11 of the United States Code. Merchant is required to give FCG seven days' written notice prior to the closing of any sale of all or substantially all of the Merchant's assets or stock.

# 4.    MISCELLANEOUS

**4.1** Modifications; Agreements.

No modification, amendment, waiver or consent of any provision of this Agreement shall be effective unless the same shall be in writing and signed by FCG.

**4.2** Assignment.

FCG may assign, transfer or sell its rights to receive the Purchased Amount or delegate its duties hereunder, either in whole or in part.

**4.3** Notices.

All notices, requests, consents, demands and other communications hereunder shall be delivered by certified mail, return receipt requested, to the respective parties to this Agreement at the addresses set forth in this Agreement. Notices to FCG shall become effective only upon receipt by FCG. Notices to Merchant shall become effective three days after mailing.

**4.4** Waiver Remedies.

No failure on the part of FCG to exercise, and no delay in exercising any right under this Agreement shall operate as a waiver thereof, nor shall any single or

Doc ID: 76ff3b1ea14fd7a4ba9e4be357ad87533018e6f1

partial exercise of any right under this Agreement preclude any other or further exercise thereof or the exercise of any other right. The remedies provided hereunder are cumulative and not exclusive of any remedies provided by law or equity.

### 4.5 Binding Effect.

Governing Law, Venue and Jurisdiction. This Agreement shall be governed by and construed exclusively in accordance with the laws of the State of New York, without regards to any applicable principles of conflicts of law. Any lawsuit, action or proceeding arising out of or in connection with this Agreement shall be instituted in any court sitting in New York, Texas or Connecticut, and shall be the sole and exclusive venues for any lawsuit, action or proceeding (the "Acceptable Forums"). The parties agree that the said sole and exclusive Acceptable Forums are convenient and submit to the jurisdiction of the Acceptable Forums and waive any and all objections to inconvenience of the jurisdiction or venue. Should a proceeding be initiated in any other forum, each of the parties to this Agreement irrevocably waives any right to oppose any motion or application made by any other party to transfer such proceeding to an Acceptable Forum. **Merchant and Guarantor hereby agree that the mailing of any Summons and Complaint in any proceeding commenced by FCG by certified or registered mail, return receipt requested to the Mailing Address listed on this Agreement, or via email to the Email Address listed on this Agreement, or any other process required by any such court will constitute valid and lawful service of process against them without the necessity for service by any other means provided by statute or rule of court, but without invalidating service performed in accordance with such other provisions.**

### 4.6 Survival of Representation

etc. All representations, warranties and covenants herein shall survive the execution and delivery of this Agreement and shall continue in full force until all obligations under this Agreement shall have been satisfied in full and this Agreement shall have terminated.

### 4.7 Interpretation.

All Parties hereto have reviewed this Agreement with attorney of their own choosing and have relied only on their own attorneys' guidance and advice. No construction determinations shall be made against either Party hereto as drafter.

### 4.8 Severability.

In case any of the provisions in this Agreement is found to be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of any other provision contained herein shall not in any way be affected or impaired.

### 4.9 Entire Agreement.

Any provision hereof prohibited by law shall be ineffective only to the extent of such prohibition without invalidating the remaining provisions hereof. This Agreement and the Security Agreement and Guaranty hereto embody the entire agreement between Merchant and FCG and supersede all prior agreements and understandings relating to the subject matter hereof.

### 4.10 JURY TRIAL WAIVER.

THE PARTIES HERETO WAIVE TRIAL BY JURY IN ANY COURT IN ANY SUIT, ACTION OR PROCEEDING ON ANY MATTER ARISING INCONNECTION WITH OR IN ANY WAY RELATED TO THE TRANSACTIONS OR THEENFORCEMENT HEREOF. THE PARTIES HERETO ACKNOWLEDGE THAT EACH MAKES THIS WAIVER KNOWINGLY, WILLINGLY AND VOLUNTARILY AND WITHOUT DURESS, AND  ONLY AFTER EXTENSIVE CONSIDERATION  OF  THE  RAMIFICATIONS  OF THIS WAIVER WITH THEIR ATTORNEYS.

### 4.11 CLASS ACTION WAIER.

THE PARTIES HERETO WAIVE ANY RIGHT TO ASSERT ANY CLAIMS AGAINST THE OTHER PARTY AS A REPRESENTATIVE OR MEMBER IN ANY CLASS OR REPRESENTATIVE ACTION, EXCEPT WHERE SUCH WAIVER IS PROHIBITED BY LAW AS AGAINST PUBLIC POLICY. TO THE EXTENT EITHER PARTY IS PERMITTED BY LAW OR COURT OF LAW TO PROCEED WITH A CLASS OR REPRESENTATIVE ACTION AGAINST THE OTHER, THE PARTIES HEREBY AGREE THAT: (1) THE PREVAILING PARTY SHALL NOT BE ENTITLED TO RECOVER ATTORNEYS' FEES OR COSTS ASSOCIATED WITH PURSUING THE CLASS OR REPRESENTATIVE ACTION (NOT WITHSTANDING ANY OTHER PROVISION IN THIS AGREEMENT); AND ( 2) THE PARTY WHO INITIATES OR PARTICIPATES AS A MEMBER OF THE CLASS WILL NOT SUBMIT A  CLAIM OR OTHERWISE PARTICIPATE IN ANY RECOVERY SECURED THROUGH THE CLASS OR REPRESENTATIVE ACTION.

### 4.12 Facsimile & Digital Acceptance.

Facsimile signatures and digital signatures hereon shall be deemed acceptable for all purposes

### 4.13 Prejudgment Remedy Waiver

EACH AND EVERY MERCHANT, ENDORSER, GUARANTOR AND SURETY OF THIS AGREEMENT, AND EACH OTHER PERSON OR ENTITY WHO MAY BECOME LIABLE FOR ALL OR ANY PART OF THIS OBLIGATION, HEREBY ACKNOWLEDGE THAT THE TRANSACTION OF WHICH THIS AGREEMENT IS A PART IS A COMMERCIAL TRANSACTION, AND TO THE EXTENT ALLOWED UNDER CONNECTICUT GENERAL STATUTES SECTIONS 52-278a TO 52-278m, INCLUSIVE, OR BY OTHER APPLICABLE LAW EACH AND EVERY MERCHANT, ENDORSER AND GUARANTOR OF THIS AGREEMENT HEREBY WAIVE (A) ALL RIGHTS TO NOTICE AND PRIOR COURT HEARING OR COURT ORDER IN CONNECTION WITH ANY AND ALL PREJUDGMENT REMEDIES TO WHICH FCG HEREOF MAY BECOME ENTITLED BY VIRTUE OF ANY DEFAULT OR PROVISION OF THIS AGREEMENT OR SECURITY AGREEMENT SECURING THIS AGREEEMENTAND (B) ALL RIGHTS TO REQUEST THAT FCG HEREOF POST A BOND, WITH OR WITHOUT SURETY, TO PROTECT SAID MERCHANTS, ENDORSER OR GUARANTOR AGAINST DAMAGES THAT MAY BE CAUSED BY ANY PREJUDGMENT REMEDY SOUGHT OR OBTAINED BY THE HOLDER HEREOF BY VIRTUE OF ANY DEFAULT OR PROVISION OF THIS AGREEMENT OR SECURITY AGREEMENT SECURING THIS AGREEMENT.

Doc ID: 76ff3b1ea14fd7a4ba9e4be357ad87533018e6f1

# SECURITY AGREEMENT AND GUARANTY

Merchant's Legal Name: **BAT, INC. and the entities listed on annexed "Exhibit A"**

D/B/A: **COAST PROCESSING**                              Federal Id #: _____

Physical Address: **17542 17TH ST. STE 100** City: **TUSTIN**    State: **CA**    Zip: **92780**

Additional Guarantors: _____

## SECURITY AGREEMENT

Security Interest. This Agreement will constitute a security agreement under the Uniform Commercial Code. Merchant and Guarantor(s) grants to FCG a security interest in and lien upon all of their present and future: (a) accounts (the "Accounts Collateral"), chattel paper, documents, equipment, general intangibles, instruments, and inventory, as those terms are each defined in Article 9 of the Uniform Commercial Code (the "UCC"), now or hereafter owned or acquired by Merchant and/or Guarantor(s), (b) all proceeds, as that term is defined in Article 9 of the UCC (c) funds at any time in the Merchant's and/or Guarantor(s) Account, regardless of the source of such funds, (d) present and future Electronic Check Transactions, and (e) any amount which may be due to FCG under this Agreement, including but not limited to all rights to receive any payments or credits under this Agreement (collectively, the "Collateral "). Merchant agrees to provide other security to FCG upon request to secure Merchant's obligations under this Agreement. Merchant agrees that, if at any time there are insufficient funds in Merchant's Account to cover FCG's entitlements under this Agreement, FCG is granted a further security interest in all of Merchant's assets of any kind whatsoever, and such assets shall then become Collateral. These security interests and liens will secure all of FCG's entitlements under this Agreement and any other agreements now existing or later entered into between Merchant, FCG or an affiliate of FCG. FCG is authorized to file any and all notices or filings it deems necessary or appropriate to enforce its entitlements hereunder.

This security interest may be exercised by FCG without notice or demand of any kind by making an immediate withdrawal or freezing the Collateral. FCG shall have the right to notify account debtors at any time. Pursuant to Article 9 of the Uniform Commercial Code, as amended from time to time, FCG has control over and may direct the disposition of the Collateral, without further consent of Merchant. Merchant hereby represents and warrants that no other person or entity has a security interest in the Collateral.

With respect to such security interests and liens, FCG will have all rights afforded under the Uniform Commercial Code, any other applicable law and in equity. Merchant will obtain from FCG written consent prior to granting a security interest of any kind in the Collateral to a third party. Merchant and Guarantor (s) agree(s) that this is a contract of recoupment and FCG is not required to file a motion for relief from a bankruptcy action automatic stay to realize on any of the Collateral. Nevertheless, Merchant and Guarantor(s) agree(s) not to contest or object to any motion for relief from the automatic stay filed by FCG. Merchant and Guarantor(s) agree(s) to execute and deliver to FCG such instruments and documents FCG may reasonably request to perfect and confirm the lien, security interest and right of setoff set forth in this Agreement. FCG is authorized to execute all such instruments and documents in Merchant's and Guarantor(s) name.

Merchant and Guarantor(s) each acknowledge and agree that any security interest granted to FCG under any other agreement between Merchant or Guarantor(s) and FCG (the "Cross-Collateral") will secure the obligations hereunder and under the Merchant Agreement. Merchant and Guarantor(s) each agrees to execute any documents or take any action in connection with this Agreement as FCG deems necessary to perfect or maintain FCG's first priority security interest in the Collateral and the Additional Collateral, including the execution of any account control agreements. Merchant and Guarantor(s) each hereby authorizes FCG to file any financing statements deemed necessary by FCG to perfect or maintain FCG's security interest. Merchant and Guarantor(s) shall be liable for, and FCG may charge and collect, all costs and expenses, including but not limited to attorney's fees in the amount of 30% of the outstanding balance, which may be incurred by FCG in protecting, preserving and enforcing FCG's security interest and rights.

Negative Pledge. Merchant and Guarantor(s) each agrees not to create, incur, assume, or permit to exist, directly or indirectly, any lien on or with respect to any of the Collateral or the Additional Collateral, as applicable.

Consent to Enter Premises and Assign Lease. FCG shall have the right to cure Merchant's default in the payment of rent on the following terms. In the event Merchant is served with papers in an action against Merchant for nonpayment of rent or for summary eviction, FCG may execute its rights and remedies under the Assignment of Lease. Merchant also agrees that FCG may enter into an agreement with Merchant's landlord giving FCG the right: (a) to enter Merchant's premises and to take possession of the fixtures and equipment therein for the purpose of protecting and preserving same; and/or (b) to assign Merchant's lease to another qualified business capable of operating a business comparable to Merchant's at such premises.

Remedies. Upon any Event of Default, FCG may pursue any remedy available at law (including those available under the provisions of the UCC), or in equity to collect, enforce, or satisfy any obligations then owing to FCG, whether by acceleration or otherwise.

Initial DM

Doc ID: 76ff3b1ea14fd7a4ba9e4be357ad87533018e6f1

# GUARANTY OF PERFORMANCE

THE TERMS, DEFINITIONS, CONDITIONS AND INFORMATION SET FORTH IN THE "MERCHANT AGREEMENT", INCLUDING THE "TERMS AND CONDITIONS", ARE HEREBY INCORPORATED IN AND MADE A PART OF THIS SECURITY AGREEMENT AND GUARANTY. CAPITALIZED TERMS NOT DEFINED IN THIS SECURITY AGREEMENT AND GUARANTY, SHALL HAVE THE MEANING SET FORTH IN THE MERCHANT AGREEMENT, INCLUDING THE TERMS AND CONDITIONS.

FCG As an additional inducement for FCG to enter into this Agreement, the undersigned Guarantor(s) hereby provides FCG with this Guaranty. Guarantor(s) will not be personally liable for any amount due under this Agreement unless Merchant commits an Event of Default pursuant to Paragraph 3.1 of this Agreement. Each Guarantor shall be jointly and severally liable for all amounts owed to FCG in the Event of Default. Guarantor(s) guarantee Merchant's good faith, truthfulness and performance of all of the representations, warranties, covenants made by Merchant in this Agreement as each may be renewed, amended, extended or otherwise modified (the "Guaranteed Obligations").Guarantor's obligations are due at the time of any breach by Merchant of any representation, warranty, or covenant made by Merchant in the Agreement.

Guarantor Waivers. In the event of a breach of the above, FCG may seek recovery from Guarantors for all of FCG's losses and damages by enforcement of FCG's rights under this Agreement without first seeking to obtain payment from Merchant, any other guarantor, or any Collateral or Additional Collateral FCG may hold pursuant to this Agreement or any other guaranty.

FCG does not have to notify Guarantor of any of the following events and Guarantor will not be released from its obligations under this Agreement if it is not notified of:

Merchant's failure to pay timely any amount required under the Merchant Agreement; (ii) any adverse change in Merchant's financial condition or business; (iii) any  sale or other disposition of any collateral securing the Guaranteed Obligations or any other guaranty of the Guaranteed Obligations; (iv) FCG's acceptance of this Agreement; and (v) any renewal, extension or other modification of the Merchant Agreement or Merchant's other obligations to FCG. In addition, FCG may take any of the following actions without releasing Guarantor from any of its obligations under this Agreement: (i) renew, extend or otherwise modify the Merchant Agreement or Merchant's other obligations to FCG; (ii) release Merchant from its obligations to FCG; (iii) sell, release, impair, waive or otherwise fail to realize upon any collateral securing the Guaranteed Obligations or any other guaranty of the Guaranteed Obligations; and (iv) foreclose on any collateral securing the Guaranteed Obligations or any other guaranty of the Guaranteed Obligations in a manner that impairs or precludes the right of Guarantor to obtain reimbursement for payment under this Agreement. Until the Purchased Amount and Merchant's other obligations to FCG under the Merchant Agreement and this Agreement are paid in full, Guarantor shall not seek reimbursement from Merchant or any other guarantor for any amounts paid by it under this Agreement. Guarantor permanently waives and shall not seek to exercise any of the following rights that it may have against Merchant, any other guarantor, or any collateral provided by Merchant or any other guarantor, for any amounts paid by it, or acts performed by it, under this Agreement: (i) subrogation; (ii) reimbursement; (iii) performance; (iv) indemnification; or (v) contribution. In the event that FCG must return any amount paid by Merchant or any other guarantor of the Guaranteed Obligations because that person has become subject to a proceeding under the United States Bankruptcy Code or any similar law, Guarantor's obligations under this Agreement shall include that amount.

Guarantor Acknowledgement. Guarantor acknowledges that: (i) He/She is bound by the Prejudgment Remedy Waiver and Class Action Waiver provisions in the Merchant Agreement Terms and Conditions, as well as all other terms and conditions therein, which are incorporated herein by reference; (ii) He/She understands the seriousness of the provisions of this Agreement; (ii) He/She has had a full opportunity to consult with counsel of his/her choice; and (iv) He/She has consulted with counsel of its choice or has decided not to avail himself/herself of that opportunity.

FOR THE MERCHANT (#1) By: __DANIEL S. MARCH_____    _Daniel S March_ (Signature)
_____ (Print Name and Title)
(Social security number) _____    5__number__ _Tony M Diab_
FOR THE MERCHANT (#2) By: __TONY M. DIAB_____    (Signature)
_____ (Name and Title)
(Social security number) _____    (Driver's License Number) _Daniel S March_
BY OWNER (#1) By: __DANIEL S. MARCH_____
_____    (Signature)
(Driver's License Number) _Tony M Diab_
BY OWNER (#2) By: __TONY M. DIAB_____    (Signature)
_____ (Print Name and Title)
(Social security number) _____
FOR THE GUARANTOR(S) By: _____    _____ (Signature)
_____ (Print Name and Title)
(Social security number) _____    (Driver's License Number)
FOR THE GUARANTOR(S) By: _____    _____ (Signature)
_____ (Print Name and Title)
(Social security number) _____    (Driver's License Number)

Doc ID: 76ff3b1ea14fd7a4ba9e4be357ad87533018e6f1

# APPENDIX A- THE FEE STRUCTURE:

A.  **Underwriting Fee** Minimum of $500.00 or up to 12% of the purchase price for underwriting and related expenses.

B.  **Origination Fee** Minimum of $500.00 or up to 10% of the purchase price to cover cost of Origination and ACHSetup

C.  **NSF Fee (Standard)** $35.00 (each)

D.  **Rejected ACH / Blocked ACH / Default Fee** $5,000.00 When Merchant BLOCKS Account from our Debit ACH, or when Merchant directs the bank to reject our Debit ACH, which places them in default (per contract). When Merchant changes bank Account cutting us off from our collections.

E.  **Bank Change Fee** $50.00 When Merchant requires a change of Bank Account to be Debited, requiring us to adjust our system.

F.  **Wire Fee** - Each Merchant shall receive their funding electronically to their designated bank account and will be charged $50.00 for a Fed Wire or $0.00 for a bank ACH.

G.  **Unauthorized Account Fee:** $5,000.00 (if a merchant blocks FCG'S ACH debit of the Account, bounces more than 2 debits of the Account, or simultaneously uses multiple bank accounts or credit- card processors to process its receipts).

H.  **Default Fee:** $5,000.00 or up to 10% of the funded amount (if a merchant changes bank accounts or switches to another creditcard processor without FCG' s consent, or commits another default pursuant to the Agreement) or bounces more than 2 debits of the Account.

I.  **Stacking Fee:** If the Merchant takes any further financing from any other finance /factoring company a fee of 10% of the purchased amount will be added to the Merchants current balance.

J.  **Risk Assessment Fee:** $249.00

K.  **UCC Fee:** $195.00

L.  **Membership Fee:** $299 monthly funding fee for duration of agreement terms or until balance paid.

FOR THE MERCHANT (#1) By: DANIEL S. MARCH _____      *Daniel S March*
                          (Print Name and Title)                        (Signature)

FOR THE MERCHANT (#2) By: TONY M. DIAB _____      *Tony M Diab*
                          (Print Name and Title)                        (Signature)

Doc ID: 76ff3b1ea14fd7a4ba9e4be357ad87533018e6f1



# Secretary of State

**Business Programs Division**
1500 11th Street,  Sacramento, CA 95814

---

CORPORATION SERVICE COMPANY
CORPORATION SERVICE COMPANY
801 ADLAI STEVENSON DR
SPRINGFIELD, IL  62703

May 19, 2021 1:14 PM

File No.:   U210047914841

## Lien Acknowledgment

This acknowledges the filing of the attached Lien document relavant to the information below. To access free copies of filed UCC documents, enter the File No. above in the Search module on the UCC Online web portal at bizfileonline.sos.ca.gov/search/ucc.

### DEBTOR INFORMATION

| | |
|---|---|
| Debtor Name: | BAT, INC. |
| Debtor Address: | 20160 NOB HILL DR |
| | YORBA LINDA, CA 92886 |
| Debtor Name: | COAST PROCESSING |
| Debtor Address: | 20160 NOB HILL DR |
| | YORBA LINDA, CA 92886 |
| Debtor Name: | THE LITIGATION PRACTICE GROUP PC |
| Debtor Address: | 20160 NOB HILL DR |
| | YORBA LINDA, CA 92886 |
| Debtor Name: | B.A.T. INC. |
| Debtor Address: | 1351 CALLE AVANZADO STE 2 |
| | SAN CLEMENTE, CA 92673 |
| Debtor Name: | DANIEL STEPHEN MARCH |
| Debtor Address: | 20160 NOB HILL DR |
| | YORBA LINDA, CA 92886 |
| Debtor Name: | TONY M. DIAB |
| Debtor Address: | 25961 GLEN CANYON DR |
| | LAGUNA HILLS, CA 92653 |

### SECURED PARTY INFORMATION

| | |
|---|---|
| Secured Party Name: | CORPORATION SERVICE COMPANY, AS REPRESENTATIVE |
| Secured Party Address: | PO BOX 2576, UCCSPREP@CSCGLOBAL.COM |
| | SPRINGFIELD, IL 62708 |

### FILING INFORMATION

| | |
|---|---|
| Lien Type: | UCC |
| Lien File No.: | U210047914841 |
| File Date: | 5/19/2021 1:09 PM |

Lapse Date:                    5/19/2026 11:59 PM

U210047914841



**STATE OF CALIFORNIA**
*Office of the Secretary of State*
**UCC FINANCING STATEMENT (UCC 1)**
California Secretary of State
1500 11th Street
Sacramento, California 95814
(916) 653-3516

| For Office Use Only |
| :---: |
| **-FILED-** |
| File #: U210047914841 |
| Date Filed: 5/19/2021 |

B0396-0106 05/19/2021 1:10 PM Received by California Secretary of State

Submitter Information:

| | |
| --- | --- |
| Contact Name | CORPORATION SERVICE COMPANY |
| Organization Name | CORPORATION SERVICE COMPANY |
| Phone Number | 18008585294 |
| Email Address | SPRFiling@cscglobal.com |
| Address | 801 ADLAI STEVENSON DR SPRINGFIELD, IL 62703 |

Debtor Information:

| Debtor Name | Mailing Address |
| --- | --- |
| BAT, INC. | 20160 NOB HILL DR YORBA LINDA, CA 92886 |
| COAST PROCESSING | 20160 NOB HILL DR YORBA LINDA, CA 92886 |
| THE LITIGATION PRACTICE GROUP PC | 20160 NOB HILL DR YORBA LINDA, CA 92886 |
| B.A.T. INC. | 1351 CALLE AVANZADO STE 2 SAN CLEMENTE, CA 92673 |
| DANIEL STEPHEN MARCH | 20160 NOB HILL DR YORBA LINDA, CA 92886 |
| TONY M. DIAB | 25961 GLEN CANYON DR LAGUNA HILLS, CA 92653 |

Secured Party Information:

| Secured Party Name | Mailing Address |
| --- | --- |
| CORPORATION SERVICE COMPANY, AS REPRESENTATIVE | PO BOX 2576, UCCSPREP@CSCGLOBAL.COM SPRINGFIELD, IL 62708 |

Indicate how documentation of Collateral is provided:
Entered as Text

Description:
Receivables- All Assets now owned or hereafter acquired and wherever located, including but not limited to, the following subcategories of assets: a. Accounts, including but not limited to, credit card receivables; b. Chattel Paper; c. Inventory; d. Equipment; e. Instruments, including but not limited to, Promissory Notes; f. Investment Property; g. Documents; h. Deposit Accounts; I Letter of Credit Rights; j. General Intangibles; k. Supporting Obligations; and i. Letter of Credit Rights; j. General Intangibles; k. Supporting Obligations; and i. Proceeds and Products of the foregoing. NOTICE PURSUANT TO AN AGREEMENT BETWEEN DEBTOR AND SECURED PARTY, DEBTOR HAS AGREED NOT TO FURTHER ENCUMBER THE COLLATERAL DESCRIBED HEREIN. THE FURTHER ENCUMBERING OF WHICH MAY CONSTITUTE THE TORTIOUS INTERFERENCE WITH THE SECURED PARTY'S RIGHT BY SUCH ENCUMBRANCES IN THE EVENT THAT ANY ENTITY IS GRANTED A SECURITY INTEREST IN DEBTOR'S ACCOUNTS, CHATTEL PAPER OR GENERAL INTANGIBLES CONTRARY TO THE ABOVE, THE SECURED PARTY ASSERTS A CLAIM TO ANY PROCEEDS THEREOF RECEIVED BY SUCH ENTITY.

Indicate if Collateral is held in a Trust or is being administered by a Decedent's Personal Representative:
Not Applicable

Select an alternate Financing Statement type:

Select an additional alternate Financing Statement type:

| | |
|---|---|
| Select an alternative Debtor/Secured Party designation for this Financing Statement: | |
| Optional Filer Reference Information:<br>2114 63706 | |

B0396-0107 05/19/2021 1:10 PM Received by California Secretary of State

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
550 N. Brand Blvd., Ste. 1500, Glendale, CA 91203

A true and correct copy of the foregoing document entitled (*specify*): OBJECTION TO THE MOTION AND REQUEST
FOR CLARIFICATION
_____
_____
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in
the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General
Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)
9/12/23_____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that
the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated
below:
D. Edward Hays, Esq., Laila Masud, Esq., Bradford N. Barnhardt, Esq. ehays@marshackhays.com,
lmasud@marshackhays.com, bbarnhardt@marshackhays,com

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) 9/12/23_____, I served the following persons and/or entities at the last known addresses in this bankruptcy
case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail,
first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the
judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method
for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) 9/12/23_____, I served
the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to
such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration
that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is
filed.
Hon. Scott C. Clarkson, USBC, Central District of California, 411 W. Fourth Street, Ste. 5130, Ctrm 5C, Santa Ana, CA
92701

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 9/12/23 | Kathy Szabados | /s/ Kathy Szabados |
|---------|----------------|---------------------|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: CONTINUED:

- **ATTORNEY FOR CREDITOR AFFIRMA, LLC and CREDITOR OXFORD KNOX, LLC:** Eric Bensamochan eric@eblawfirm.us, G63723@notify.cincompass.com
- **ATTORNEY FOR CHAPTER 11 TRUSTEE RICHARD A MARSHACK (TR):** Peter W Bowie peter.bowie@dinsmore.com, caron.burke@dinsmore.com
- **ATTORNEY FOR CREDITOR SDCO TUSTIN EXECUTIVE CENTER, INC.:** Ronald K Brown ron@rkbrownlaw.com
- **ATTORNEY FOR CHAPTER 11 TRUSTEE RICHARD A MARSHACK (TR):** Christopher Celentino christopher.celentino@dinsmore.com, caron.burke@dinsmore.com
- **INTERESTED PARTY COURTESY NEF:** Michael F Chekian mike@cheklaw.com, chekianmr84018@notify.bestcase.com
- **INTERESTED PARTY COURTESY NEF:** Shawn M Christianson cmcintire@buchalter.com, schristianson@buchalter.com
- **INTERESTED PARTY COURTESY NEF:** Randall Baldwin Clark rbc@randallbclark.com
- **INTERESTED PARTY COURTESY NEF:** Leslie A Cohen leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com; clare@lesliecohenlaw.com
- **INTERESTED PARTY COURTESY NEF:** Aaron E. DE Leest adeleest@DanningGill.com, danninggill@gmail.com; adeleest@ecf.inforuptcy.com
- **ATTORNEY FOR INTERESTED PARTY NATIONAL ASSOCIATION OF CONSUMER BANKRUPTCY ATTORNEYS and INTERESTED PARTY NATIONAL CONSUMER BANKRUPTCY RIGHTS CENTER:** Jenny L Doling jd@jdl.law, dolingjr92080@notify.bestcase.com; 15994@notices.nextchapterbk.com
- **ATTORNEY FOR CREDITOR CAROLYN BEECH:** Daniel A Edelman dedelman@edcombs.com, courtecl@edcombs.com
- **ATTORNEY FOR CHAPTER 11 TRUSTEE RICHARD A MARSHACK (TR):** Christopher Ghio christopher.ghio@dinsmore.com, Kristina.Heller@Dinsmore.com
- **ATTORNEY FOR DEFENDANT STRIPE, INC.:** Eric D Goldberg eric.goldberg@dlapiper.com, eric-goldberg-1103@ecf.pacerpro.com
- **ATTORNEY FOR CREDITOR AFFIRMA, LLC; CREDITOR ANAHEIM ARENA MANAGEMENT, LLC; CREDITOR ANAHEIM DUCKS HOCKEY CLUB, LLC; and CREDITOR OXFORD KNOX, LLC:** Jeffrey I Golden jgolden@go2.law, kadele@ecf.courtdrive.com; cbmeeker@gmail.com; lbracken@wgllp.com; gestrada@wgllp.com; golden.jeffreyi.b117954@notify.bestcase.com
- **ATTORNEY FOR CREDITOR DEBT VALIDATION FUND II, LLC; CREDITOR MC DVI FUND 1, LLC; and CREDITOR MC DVI FUND 2, LLC:** Richard H Golubow rgolubow@wghlawyers.com, jmartinez@wghlawyers.com; svillegas@wghlawyers.com
- **INTERESTED PARTY COURTESY NEF:** David M Goodrich dgoodrich@go2.law, kadele@go2.law; dfitzgerald@go2.law; wggllp@ecf.courtdrive.com
- **ATTORNEY FOR CHAPTER 11 TRUSTEE RICHARD A MARSHACK (TR):** D Edward Hays ehays@marshackhays.com, ehays@ecf.courtdrive.com; kfrederick@ecf.courtdrive.com; cmendoza@marshackhays.com; cmendoza@ecf.courtdrive.com
- **ATTORNEY FOR CREDITOR CITY CAPITAL NY:** Alan Craig Hochheiser ahochheiser@mauricewutscher.com, arodriguez@mauricewutscher.com
- **ATTORNEY FOR CREDITOR DEBT VALIDATION FUND II, LLC; CREDITOR MC DVI FUND 1, LLC; and CREDITOR MC DVI FUND 2, LLC:** Garrick A Hollander ghollander@wghlawyers.com, jmartinez@wghlawyers.com; svillegas@wghlawyers.com
- **ATTORNEY FOR CREDITOR OHP-CDR, LP:** Razmig Izakelian razmigizakelian@quinnemanuel.com
- **ATTORNEY FOR DEBTOR THE LITIGATION PRACTICE GROUP P.C.:** Joon M Khang joon@khanglaw.com
- **ATTORNEY FOR INTERESTED PARTY AD HOC CONSUMER CLAIMANTS COMMITTEE:** Ira David Kharasch ikharasch@pszjlaw.com
- **ATTORNEY FOR DEFENDANT GALLANT LAW GROUP:** Meredith King mking@fsl.law, ssanchez@fsl.law; jwilson@fsl.law
- **ATTORNEY FOR COMMITTEE OF UNSECURED CREDITORS:** Nicholas A Koffroth nkoffroth@foxrothschild.com, khoang@foxrothschild.com
- **ATTORNEY FOR DEFENDANT MARICH BEIN, LLC:** David S Kupetz David.Kupetz@lockelord.com, mylene.ruiz@lockelord.com
- **INTERESTED PARTY COURTESY NEF:** Christopher J Langley chris@slclawoffice.com, omar@slclawoffice.com; langleycr75251@notify.bestcase.com; ecf123@casedriver.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

**F 9013-3.1.PROOF.SERVICE**

- **ATTORNEY FOR DEFENDANT CONSUMER LEGAL GROUP, P.C.; DEFENDANT LGS HOLDCO, LLC; INTERESTED PARTY CONSUMER LEGAL GROUP, P.C.; and INTERESTED PARTY LIBERTY ACQUISITIONS GROUP INC:** Daniel A Lev daniel.lev@gmlaw.com, cheryl.caldwell@gmlaw.com; dlev@ecf.courtdrive.com
- **ATTORNEY FOR CREDITOR PHILLIP A GREENBLATT, PLLC:** Michael D Lieberman mlieberman@lipsonneilson.com
- **ATTORNEY FOR CHAPTER 11 TRUSTEE RICHARD A MARSHACK (TR):** Yosina M Lissebeck Yosina.Lissebeck@Dinsmore.com, caron.burke@dinsmore.com
- **CHAPTER 11 TRUSTEE RICHARD A MARSHACK (TR):** Richard A Marshack (TR) pkraus@marshackhays.com, rmarshack@iq7technology.com; ecf.alert+Marshack@titlexi.com
- **ATTORNEY FOR CHAPTER 11 TRUSTEE RICHARD A MARSHACK (TR):** Laila Masud lmasud@marshackhays.com, lmasud@ecf.courtdrive.com; kfrederick@ecf.courtdrive.com
- **ATTORNEY FOR US TRUSTEE:** Kenneth Misken Kenneth.M.Misken@usdoj.gov
- **INTERESTED PARTY COURTESY NEF:** Byron Z Moldo bmoldo@ecjlaw.com, amatsuoka@ecjlaw.com; dperez@ecjlaw.com
- **INTERESTED PARTY COURTESY NEF:** Alan I Nahmias anahmias@mbn.law, jdale@mbnlawyers.com
- **INTERESTED PARTY COURTESY NEF:** Victoria Newmark vnewmark@pszjlaw.com
- **ATTORNEY FOR US TRUSTEE:** Queenie K Ng queenie.k.ng@usdoj.gov
- **ATTORNEY FOR COMMITTEE OF UNSECURED CREDITORS:** Keith C Owens kowens@foxrothschild.com, khoang@foxrothschild.com
- **ATTORNEY FOR DEFENDANT DANIEL S. MARCH and DEFENDANT TONY DIAB:** Teri T Pham tpham@epglawyers.com, ttpassistant@epglawyers.com
- **ATTORNEY FOR DEFENDANT GREYSON LAW CENTER PC; DEFENDANT HAN TRINH; DEFENDANT JAYDE TRINH; and DEFENDANT SCOTT JAMES EADIE:** Douglas A Plazak dplazak@rhlaw.com
- **ATTORNEY FOR DEFENDANT TOUZI CAPITAL, LLC and DEFENDANT ENG TAING:** Daniel H Reiss dhr@lnbyg.com, dhr@ecf.inforuptcy.com
- **ATTORNEY FOR DEFENDANT CONSUMER LEGAL GROUP, PC:** Ronald N Richards ron@ronaldrichards.com, 7206828420@filings.docketbird.com
- **ATTORNEY FOR CREDITOR MARI AGAPE:** Gregory M Salvato gsalvato@salvatoboufadel.com, calendar@salvatolawoffices.com; jboufadel@salvatoboufadel.com; gsalvato@ecf.inforuptcy.com
- **ATTORNEY FOR CREDITOR AZZURE CAPITAL LLC and CREDITOR HI BAR CAPITAL LLC:** Olivia Scott olivia.scott3@bclplaw.com
- **ATTORNEY FOR CHAPTER 11 TRUSTEE RICHARD A MARSHACK (TR):** Jonathan Serrano jonathan.serrano@dinsmore.com
- **ATTORNEY FOR CREDITOR UNITED PARTNERSHIPS, LLC:** Paul R Shankman PShankman@fortislaw.com, info@fortislaw.com
- **INTERESTED PARTY COURTESY NEF:** Zev Shechtman zs@DanningGill.com, danninggill@gmail.com; zshechtman@ecf.inforuptcy.com
- **ATTORNEY FOR US TRUSTEE:** Leslie Skorheim leslie.skorheim@usdoj.gov
- **ATTORNEY FOR DEFENDANT BANKUNITED, N.A.:** Howard Steinberg steinbergh@gtlaw.com, pearsallt@gtlaw.com; howard-steinberg-6096@ecf.pacerpro.com
- **ATTORNEY FOR CREDITOR ALTERYX, INC.:** Andrew Still astill@swlaw.com, kcollins@swlaw.com
- **US TRUSTEE:** United States Trustee (SA) ustpregion16.sa.ecf@usdoj.gov
- **ATTORNEY FOR CREDITOR AZZURE CAPITAL LLC and CREDITOR HI BAR CAPITAL LLC:** Sharon Z. Weiss sharon.weiss@bclplaw.com, raul.morales@bclplaw.com, REC_KM_ECF_SMO@bclplaw.com
- **ATTORNEY FOR CREDITOR DEBT RELIEF GROUP, LLC:** Johnny White JWhite@wrslawyers.com, jlee@wrslawyers.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

F 9013-3.1.PROOF.SERVICE

**2. SERVED BY UNITED STATES MAIL**: CONTINUED:

**RTD 06/14/23 UTF**
**SECURED CREDITOR**

**SECURED CREDITOR**
DIVERSE CAPITAL LLC
ATTN: OFFICER, A MANAGING OR
GENERAL AGENT, OR TO ANY
OTHER AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO
RECEIVE SERVICE OF PROCESS
323 SUNNY ISLES BLVD, STE 503
SUNNY ISLES, FL 33160-4675

**SECURED CREDITOR**
FUNDURA CAPITAL GROUP
ATTN: OFFICER, A MANAGING OR
GENERAL AGENT, OR TO ANY
OTHER AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO
RECEIVE SERVICE OF PROCESS
80 BROAD STREET, STE 3303
NEW YORK, NY 10004-2845

**SECURED CREDITOR / POC**
**ADDRESS**
RIVER TREE LLC
C/O MAYS JOHNSON LAW FIRM
21 BATTERY PARK AVE, SUITE 201
ASHEVILLE, NC 28801

**SECURED CREDITOR / POC**
**ADDRESS**
VENTURE PARTNERS LLC
ATTN: OFFICER, A MANAGING OR
GENERAL AGENT, OR TO ANY
OTHER AGENT AUTHORIZED BY
APPOINTMENT OR LAW TO
RECEIVE SERVICE OF PROCESS
1309 COFFEEN AVENUE, STE 1200
SHERIDAN, WY 82801

4859-6825-8680, v. 1

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

**F 9013-3.1.PROOF.SERVICE**