1  D. EDWARD HAYS, #162507
   ehays@marshackhays.com
2  LAILA MASUD, #311731
   lmasud@marshackhays.com
3  MARSHACK HAYS WOOD LLP
   870 Roosevelt
4  Irvine, California 92620
   Telephone: (949) 333-7777
5  Facsimile: (949) 333-7778

6  Attorneys for Chapter 11 Trustee
   RICHARD A. MARSHACK

7

8                    UNITED STATES BANKRUPTCY COURT

9          CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

10

11  In re                                 Case No: 8-23-bk-10571-SC

12  THE LITIGATION PRACTICE GROUP P.C.,    Chapter 11

13       Debtor.                           STIPULATION FOR RETURN OF
                                           POSSESSION OF PREMISES AFTER
14                                         REJECTION OF COMMERCIAL LEASE
                                           RE: 6725 116th AVENUE NE, STE 160,
15                                         KIRKLAND, WA 98033

16                                         [NO HEARING REQUIRED]

17

18  TO THE HONORABLE SCOTT C. CLARKSON, UNITED STATES BANKRUPTCY JUDGE,

19  THE OFFICE OF THE UNITED STATES TRUSTEE, AND ALL INTERESTED PARTIES:

20       This Stipulation ("Stipulation") is entered into by and between Richard A. Marshack, in his

21  capacity as Chapter 11 Trustee ("Trustee") of the Bankruptcy Estate ("Estate") of The Litigation

22  Practice Group P.C. ("Debtor"), and Lakeview 6725, L.L.C. ("Landlord" and with Trustee, the

23  "Parties").

24                                  **RECITALS**

25       A.    On March 20, 2023, The Litigation Practice Group ("Debtor") filed a voluntary

26  petition under Chapter 11 of Title 11 of the United States Code, initiating bankruptcy Case No. 8:23-

27  bk-10571-SC in the United States Bankruptcy Court for the Central District of California, Santa Ana

28  Division.

                                         1

B.      On March 30, 2023, as Dk. No. 21, the United States Trustee filed a motion to dismiss or convert the case under 11 U.S.C. § 1112(b) for failure to comply with the U.S. Trustee guidelines and requirements for a chapter 11 case.

C.      On April 4, 2023, Debtor filed its schedules and statements. Docket Nos. 32-34, 36; *see also* Docket Nos. 52-54 (amended schedules and statements).

D.      On May 4, 2023, the Court entered an "Order Directing United States Trustee to Appoint Chapter 11 Trustee." Docket No. 58. Richard A. Marshack was appointed as the Chapter 11 trustee of the Debtor's estate. Docket Nos. 62-65.

E.      Prior to bankruptcy, on or about September 20, 2022, Debtor entered into an Office Lease ("Lease") with Landlord with regard to the office building commonly known as 6725 116th Avenue NE, Ste. 160, Kirkland, WA 98033 ("Property").[1] The Lease was for thirty-nine months (through December 31, 2025). The annual rent adjusted over time but was specified in the Lease at $18,934 for 2023 ($1,570 per month for the first ten months and $1,617 for the last two months). The Lease further obligated the tenant to pay for its share of common area maintenance/operating charges, which are unpaid in the amount of $6,190.50.

F.      In connection with its execution of the Lease, Debtor paid a security deposit in the amount of $4,947.24 ("Security Deposit").

G.      Under 11 U.S.C. § 365(d)(3), the Lease was deemed rejected as a matter of law on July 18, 2023.

H.      No payments were made on the lease after Debtor filed its bankruptcy. The amounts owed for the months that Debtor failed to pay despite having possession of the premises exceeds the amount of the Security Deposit. The Parties agree that the Lease is rejected, the Landlord is entitled to setoff the amount of the Security Deposit against its rent claim, and that Landlord shall be entitled to an allowed general unsecured rent claim for the difference as set forth below.

Wherefore, the Parties agree and STIPULATE as follows:

1.      The Lease is rejected as of July 18, 2023;

---

[1] A true and correct copy of the Lease is attached as Exhibit 1.

2.      Trustee has turned over possession to Landlord which shall take all actions reasonably necessary to mitigate its damages by reletting the premises;

3.      Any claims for damage including from rejection of the Lease shall be filed only as a general unsecured claim within 28 days after entry of an order approving this Stipulation and shall be capped as set forth in 11 U.S.C. § 502(b)(6) ("Unsecured Claim");

4.      There remains *de minimus* personal property left by Debtor on the premises including printers, furniture, and other office items ("Personal Property"). Trustee has determined that such Personal Property is burdensome and of inconsequential value to the estate. Pursuant to Local Bankruptcy Rule 6007-1(a), Trustee will abandon any interest in the Personal Property by way of a separately-filed notice. To the extent that any of the Personal Property is leased and does not belong to Debtor, Landlord shall use its best efforts to contact any such lessors and make arrangements for the return of such property to its owners. Any Personal Property not claimed by any lessor may be disposed of by Landlord commencing 28 days after entry of an order approving this Stipulation. Landlord may remove the Personal Property from the premises if doing so facilitates its efforts to relet the premises;

5.      This Stipulation resolves all issues between the Parties; and

6.      This Stipulation may be executed in one or more counterparts and facsimile electronic signatures may be used in filing this document with the Court.

DATED: October 23, 2023                    MARSHACK HAYS LLP


                                           By: */s/ Laila Masud*
                                                D. EDWARD HAYS
                                                LAILA MASUD
                                                Attorneys for Chapter 11 Trustee
                                                RICHARD A. MARSHACK


DATED: November 6, 2023                    LAKEVIEW 6725, L.L.C.

                                           By: Wells Fargo Bank, N.A., as Agent for Lakeview 6725, LLC

                                           By: _____
                                                Ed Lukas, Vice President

**EXHIBIT "1"**

**LEASE AGREEMENT**

**BETWEEN**

**Lakeview 6725, L.L.C.,**
**a California limited liability company, as landlord**

**("Landlord")**

**and**

**The Litigation Practice Group PC, a California Professional Service Corporation,**
**as tenant**

**("Tenant")**

**Dated:** _September 20_, **2022**

**EXHIBIT "1"**
**Page 4**

# TABLE OF CONTENTS

ARTICLE 1:  DEFINITIONS ........................................................................... 1
    1.1    Defined Terms. ..............................................................................1
    1.2    Exhibits.............................................................................. 2

ARTICLE 2:  THE PROPERTY AND BUILDING ............................................. 1
    2.1    The Property. ...............................................................................1
    2.2    Rentable Area of Building.................................................................3

ARTICLE 3:  IMPROVEMENTS .................................................................... 1
    3.1    Acceptance of the Property. ...........................................................1
    3.2    Landlord's Work. ..........................................................................1
    3.3    Tenant's Improvements. ..................................................................3

ARTICLE 4:  TERM ..................................................................................... 2
    4.1    Term.........................................................................................2
    4.2    Extension Options. .......................................................................5
    4.3    Base Rent During Option Term. ......................................................6

ARTICLE 5:  RENT....................................................................................... 2
    5.1    Base Rent. .................................................................................2
    5.2    Additional Rent. ...........................................................................2
    5.3    Late Payment. ............................................................................2

ARTICLE 6:  ADDITIONAL RENT AND CHARGES ...................................... 3
    6.1    Estimated Operating Expenses. .......................................................8
    6.2    Operating Expenses Inclusions. .......................................................9
    6.3    Operating Expense Exclusions. ......................................................10
    6.4    Real Property Taxes. ....................................................................7
    6.5    Tenant's Personal Property Taxes. ..................................................7

ARTICLE 7:  INSURANCE ........................................................................... 8
    7.1    Landlord's Insurance. ....................................................................8
    7.2    Tenant's Public Liability. .................................................................8
    7.3    Tenant's Property and Other Insurance. ...........................................8
    7.4    Form of Insurance/Certificates. ......................................................9
    7.5    Tenant's Failure. ..........................................................................9
    7.6    Waiver of Subrogation. ................................................................10
    7.7    Tenant's Properties and Fixtures.....................................................10
    7.8    Indemnification. ..........................................................................10
    7.9    Damage to Tenant's Property. .......................................................11

ARTICLE 8:  REPAIRS AND MAINTENANCE ............................................. 11
    8.1    Landlord Repairs and Maintenance.................................................11
    8.2    Utilities and Services. ...................................................................12
    8.3    Tenant Repairs and Maintenance. ..................................................12
    8.4    Non-liability of Landlord. ..............................................................12
    8.5    Inspection of Property. .................................................................13

ARTICLE 9:  FIXTURES, PERSONAL PROPERTY AND ALTERATIONS .................... 13
    9.1    Fixtures and Personal Property. .................................................................13
    9.2    Alterations. .................................................................................................13
    9.3    Liens. ..........................................................................................................14

ARTICLE 10: USE AND COMPLIANCE WITH LAWS ............................................. 15
    10.1   General Use and Compliance with Laws. ....................................................15
    10.2   Hazardous Materials. .................................................................................15
    10.3   Signs. ..........................................................................................................22

ARTICLE 11: DAMAGE AND DESTRUCTION ......................................................... 18
    11.1   Reconstruction. ..........................................................................................18
    11.2   Rent Abatement. ........................................................................................18
    11.3   Excessive Damage or Destruction. ............................................................18
    11.4   Uninsured Casualty. ..................................................................................18
    11.5   Waiver. ........................................................................................................19
    11.6   Mortgagee's Right. ....................................................................................19
    11.7   Damage Near End of Term. .......................................................................19

ARTICLE 12: EMINENT DOMAIN ........................................................................... 19

ARTICLE 13: DEFAULT ........................................................................................... 19
    13.1   Events of Default. ......................................................................................19
    13.2   Remedies. ...................................................................................................20
    13.3   Landlord's Default. ....................................................................................23

ARTICLE 14: FILING OF PETITION ........................................................................ 23

ARTICLE 15: ASSIGNMENT AND SUBLETTING .................................................... 24
    15.1   Prohibition. .................................................................................................24
    15.2   Excess Rental. ...........................................................................................25
    15.3   Scope. .........................................................................................................25
    15.4   Waiver. ........................................................................................................25

ARTICLE 16: ESTOPPEL CERTIFICATE, ATTORNMENT AND SUBORDINATION..... 25
    16.1   Estoppel Certificates. ................................................................................25
    16.2   Attornment. .................................................................................................26
    16.3   Subordination. ............................................................................................26
    16.4   Recording. ..................................................................................................26

ARTICLE 17: MISCELLANEOUS ............................................................................. 26
    17.1   Notices. .......................................................................................................26
    17.2   Successors Bound. ....................................................................................27
    17.3   Waiver. ........................................................................................................27
    17.4   Accord and Satisfaction. ............................................................................32
    17.5   Limitation of Landlord's Liability. ..............................................................27
    17.6   Survival. ......................................................................................................27
    17.7   Attorneys' Fees. .........................................................................................28
    17.8   Severability. ................................................................................................28
    17.9   Applicable Law. ..........................................................................................28
    17.10 Holding Over. .............................................................................................28

17.11  Rules and Regulations. .................................................................28
17.12  Parking. ................................................................................29
17.13  Broker; Agency Disclosure. ......................................................29
17.14  Landlord's Right to Perform..................................................29
17.15  Assignment by Landlord. .........................................................29
17.16  Entire Agreement. ....................................................................30
17.17  Financial Covenants...................................................................30
17.18  Consents. ..................................................................................30
17.19  Exhibits.......................................................................................30
17.20  Time. ..........................................................................................30
17.21  Authority. ...................................................................................30
17.22  Interpretation. ...........................................................................30
17.23  Excused Delays..........................................................................30

**EXHIBIT "1"**

## LEASE AGREEMENT

THIS LEASE ("Lease") dated as of _September 20_, 2022, is made by and between Lakeview 6725, L.L.C., a California limited liability company, as landlord ("Landlord"), and The Litigation Practice Group PC, a California Professional Service Corporation, duly qualified and registered as a foreign corporation authorized to do business in the State of Washington, as tenant ("Tenant").

Section 1.    DEFINITIONS

<u>Defined Terms</u>.    The following terms shall have the meanings specified in this Section, unless otherwise specifically provided.    Other terms may be defined in other parts of the Lease.

| | | |
|---|---|---|
| (a) | Landlord: | Lakeview 6725, L.L.C., a California limited liability company |
| (b) | Landlord's Address: | For via U.S. Postal Service: |

Lakeview 6725, L.L.C.
c/o Wells Fargo Wealth Management
Attn: Thomas Fitzsimons
PO Box 63939
San Francisco, CA 94163

For Overnight Delivery:

Lakeview 6725, L.L.C.
c/o Wells Fargo Wealth Management
Attn: Thomas Fitzsimons
420 Montgomery St, 11th Floor
San Francisco, CA 94104

With a Copy to:

Alan B. Guttenberg, Esq.
Guttenberg & Colvin LLP
16790 Placer Hills Road, Ste. D
Meadow Vista, CA 95722
ph: (530) 878-2000
fax: (530) 878-2003
email: aguttenberg@grclaw.com

- 1 -

**EXHIBIT "1"**
**Page 8**

(c)  Tenant:                    The Litigation Practice Group PC, a
                                California Professional Service
                                Corporation, duly qualified and registered
                                as a foreign corporation authorized to do
                                business in the State of Washington

(d)  Tenant's Address:          For Notices:

                                At the leased Premises:

                                6725 116th Avenue NE, Ste. 160
                                Kirkland, Washington 98033
                                Telephone:
                                Facsimile:

(e)  Tenant's Address:          For Billing:

                                At the leased Premises:

                                6725 116th Avenue NE, Ste. 160
                                Kirkland, Washington 98033
                                Attn: _____
                                Telephone:  (425) _____
                                Facsimile:  (425) _____

(f)  Tenant's Use:              General office and administrative purposes
                                for a legal services company.

(g)  Legal Description:         See Exhibit A.

(h)  Building:                  See Section 2.2.

(i)  Term:                      Thirty-nine (39) months

(j)  Scheduled
     Commencement Date:         See Section 4.1.

- 2 -

**EXHIBIT "1"**
**Page 9**

(k)  Base Rent:

| Months | Square Feet* | Monthly Rent |
|--------|--------------|--------------|
| 1-12   | 698*         | $1,570.00**  |
| 13-24  | 698          | $1,617.00    |
| 25-36  | 698          | $1,666.00    |
| 37-39  | 698          | $1,716.00    |

*Premises square footage is approximate; see Lease Section 2.2.

**Tenant shall receive the first three (3) months of Base Rent per preceding Base Rent schedule free (first three (3) months at zero ($0.00) Base Rent; all Additional Rent under this Lease remains payable by Tenant during said first three (3) months, and throughout entire term of this Lease).

(l)  Broker(s):

Todd Gauthier, Jason Bloom & Jack Albrecht of Kidder Mathews representing Landlord ("Landlord's Broker").

Royal Commercial Corp representing Tenant ("Tenant's Broker")

(n)  Security Deposit; First Month's Rent (For Month #4):

Concurrent with execution of this Lease and as a condition precedent to this Lease, Tenant shall pay to Landlord: (a) $2,546.62 as a Security Deposit under this Lease, plus (b) prepaid rent for the first month's payment of rent (that is, month #4 of the Term, Base Rent of $1,570.00, plus estimated NNN's for said month #4) totaling $2,400.62.  So total payment due from Tenant at lease execution is $4,947.24.

- 3 -

**EXHIBIT "1"**
**Page 10**

Exhibits.

| | |
|---|---|
| Exhibit A: | Legal Description |
| Exhibit B: | Landlord's Work |
| Exhibit C: | Estoppel Certificate |

**EXHIBIT "1"**
**Page 11**

## ARTICLE 2. -  THE PROPERTY AND BUILDING

2.1     The Premises.  Landlord leases to Tenant suite 160 of the building located at 6725 116th Avenue NE, Kirkland, Washington 98033 ("Building") existing on that certain parcel of land described on **Exhibit A** ("Property), and other improvements now or hereafter erected or constructed on or in the portion of the suite of the Building, together with appurtenances and the benefits of any appurtenant easements and rights-of-way (the foregoing leased premises referred to herein as the "Premises").  As used herein, the Property includes the Building and the Premises.

2.2     Rentable Area of Building and Premises.  The total rentable area of the Building is approximately 21,694 square feet.  The rentable area of the Premises is approximately 698 rentable square feet. The rentable area indicated above shall be conclusive for all purposes in this Lease, and rent and other terms of this Lease are not subject to any adjustment in the event actual Premises square footage is different than the estimated 698 rentable square feet.

## ARTICLE 3. - IMPROVEMENTS

3.1     Acceptance of the Property.   Tenant has had the full and adequate opportunity to inspect the Property, and Building.  Except for Landlord's Work described in Sections 3.2 and 3.3 and Exhibit B hereof (and subject to Landlord completion of same prior to Landlord delivery of the Premises), Tenant accepts the Property in its current "As-Is" physical condition.  Except for Landlord's Work, Landlord shall have no obligations to make any improvements to the Premises, Building or Property or perform any work or alterations therein or thereabout.  Landlord represents and warrants that as of the Commencement Date all systems servicing the Premises, including but not limited to HVAC, electrical and mechanical, shall be in good working order and repair, and Landlord shall promptly repair any such building systems at Landlord's sole cost promptly upon Landlord's receipt of written notice from Tenant of a violation of this limited warranty; provided, however, that this limited Landlord warranty shall be null and void and terminated as to any matter(s) not asserted by Tenant as violations hereof in written notice(s) delivered to Landlord by Tenant within thirty (30) days after the Commencement Date.

3.2     Landlord Improvements.   Landlord shall cause certain improvements approved by Tenant to be made to the Premises at Landlord's sole cost and expense. These improvements are listed and expressly described in **Exhibit B** ("Landlord's Work").

3.2.1    Contractor.  Landlord's Work shall be performed by contractors selected by Landlord, completed in a good and workmanlike manner, and in compliance with all applicable laws and ordinances, building codes, bylaws, regulations and orders of any federal, state, county, municipal or other public authority and of the insurers of the Property.

3.2.2    Tenant's Access Prior to Commencement Date.  Tenant and its contractors shall not have access to the Premises prior to the Commencement

Date.  From and after the Commencement Date, Tenant and its contractors shall have access to the Premises for Tenant's installation of furniture, equipment, telephone lines, data network wiring, and security systems and other uses permitted by this Lease.  Tenant's use of the Premises for the purposes in this Section 3.2.2 stated shall be on all of the terms, covenants and conditions of this Lease.

## ARTICLE 4. - TERM

4.1    <u>Term</u>.  The Term of this Lease shall commence on the later of October 1, 2022 or the date that Landlord tenders delivery of the Premises to Tenant with all Landlord's Work substantially completed therein (the "Commencement Date").  The Lease Term shall end on the last day of the calendar month in which the 39th month anniversary of the Commencement Date occurs (the "Term").

4.2    <u>No Option or Right to Extend Lease Term</u>.  Tenant shall have no option(s) or right(s) to extend the initial term of the Lease.

## ARTICLE 5. - RENT

5.1    <u>Base Rent</u>.  The Base Rent ("Base Rent") shall be as set forth in Section 1.1(k).  The Base Rent shall be paid in advance on the first (1st) day of each and every month during the Term to Landlord at the address set forth in Section 1.1(b) hereof, or at such other place as Landlord may direct in writing, without any prior notice or demand therefor and without any abatement, deduction, offset or setoff whatsoever.  If the Term commences on any day other than the first (1st) day of a calendar month and/or ends on any day other than the last day of a calendar month, Base Rent for the fraction(s) of a month at the commencement and/or upon the expiration of the Term shall be prorated based upon the actual number of days in such fractional month(s) and paid in advance by Tenant.  Upon execution of this Lease, Tenant shall deposit with Landlord the sum of Four Thousand Nine Hundred Forty-Seven and 24/100 Dollars (<u>$4,947.24</u>), which sum shall be applied by Landlord as described in Section 1(n) of the Definitions Section of this Lease.

5.2    <u>Additional Rent</u>.  In addition to Base Rent, Tenant shall pay to Landlord all sums of money or other charges required to be paid by the Tenant under this Lease, including but not limited to the Operating Expenses (as defined in Article 6 hereof) (all such sums being herein deemed "Additional Rent"), and whether or not the same are designated "Additional Rent," the same shall be payable in lawful money of the United States of America without deduction, set-off or abatement whatsoever.  Any Additional Rent provided for in this Lease shall become due with the next monthly installment of Base Rent unless otherwise provided.  The term "Rent," as used in this Lease, shall refer collectively to "Base Rent" and "Additional Rent."  Tenant's obligation to pay Additional Rent shall begin on the Commencement Date.

5.3    <u>Late Payment</u>.  If any payment of Rent is not received by Landlord within three (3) days after the same is due, Tenant shall pay to Landlord a late payment charge

-2-

equal to five percent (5%) of the amount of such delinquent payment of Rent in addition to the installment of Rent then owing, regardless of whether a notice of default has been given by Landlord. In addition, Tenant shall pay interest on such late payment and late charge from the due date of the late payment at an interest rate equal to twelve percent (12%) per annum, but in no event higher than the maximum interest rate permitted by applicable law ("Default Rate") until such amounts are paid. Landlord and Tenant recognize that the damages that Landlord will suffer as a result of Tenant's failure to timely pay Rent are difficult or impracticable to ascertain, and agree that said interest and late charge are a reasonable approximation of the damages that Landlord will suffer in the event of Tenant's late payment. This provision shall not relieve Tenant from payment of Rent at the time and in the manner herein specified. Acceptance by Landlord of any such interest and late charge shall not constitute a waiver of Tenant's default with respect to said overdue amount, nor shall it prevent Landlord from exercising any other rights or remedies available to Landlord.

5.4    Security Deposit. Concurrently with Tenant's execution of the Lease, Tenant shall deposit with Landlord the Security Deposit specified in Article 1 of this Lease as security for the full and faithful performance of each and every term, covenant and condition of this Lease. Landlord may use, apply or retain the whole or any part of the Security Deposit as may be reasonably necessary (a) to remedy any Default by Tenant under this Lease, (b) to repair damage to the Premises caused by Tenant, (c) to clean the Premises upon termination of this Lease, (d) to reimburse Landlord for the payment of any amount which Landlord may reasonably spend or be required to spend by reason of Tenant's Default, and (e) to compensate Landlord for any other loss or damage which Landlord may suffer by reason of Tenant's Default. If Tenant faithfully and fully complies with all of the terms, covenants and conditions of this Lease, then within thirty (30) days following the expiration of the Term, the Security Deposit or any balance thereof shall be returned to Tenant, or, at Landlord's option, to the last approved assignee of Tenant's interest under this Lease. Landlord shall not be required to keep the Security Deposit separate from its general funds and Tenant shall not be entitled to any interest on such deposit. If Landlord so uses or applies all or any portion of said deposit, within five (5) days after written demand therefor Tenant shall deposit cash with Landlord in an amount sufficient to restore the Security Deposit to the full extent of the above amount, and Tenant's failure to do so shall be a default under this Lease. In the event Landlord transfers its interest in this Lease, Landlord shall transfer the then remaining amount of the Security Deposit to Landlord's successor in interest, and thereafter Landlord shall have no further liability to Tenant with respect to such Security Deposit.

## ARTICLE 6. - ADDITIONAL RENT AND CHARGES

In addition to Base Rent and other sums payable by Tenant under this Lease, Tenant shall pay to Landlord, as Additional Rent, Tenant's Share of Operating Expenses (as such term is defined below).

6.1    Tenant's Share. For purposes of this Lease, "Tenant's Share" means the percentage obtained by dividing the Rentable Area of the Premises by the total rentable

**EXHIBIT "1"**
**Page 14**

area of the Building, whether leased or not, in the Building or the Property, as applicable with respect to any specific Operating Expense, subject to adjustment in the event of changes in Rentable Area of the Property, Building and/or Premises, and Tenant's Share is hereby initially agreed to be 3.22%. Notwithstanding the above, Landlord shall have the right, but not the obligation, to equitably adjust Tenant's Share of any specific Operating Expense so as to render such expense payable proportionately by those tenants benefited by the same or causing the same (including without limitation by excessive use or misuse caused or permitted by Tenant) or otherwise in order to appropriately allocate such Operating Expense to cover the area covered by such Operating Expense. In the event the average occupancy level of the Building for any calendar year was or is not one hundred percent (100%) of full occupancy, then the estimated Operating Expenses and actual Operating Expenses for such year shall be proportionately adjusted by Landlord to reflect those costs which have occurred had the Building and/or Property, as the case may be, been one hundred percent (100%) occupied during such year.

6.2    Estimated Operating Expenses.

6.2.1    Upon the Commencement of the Term, and thereafter prior to the commencement of each calendar year occurring wholly or partially within the Term or as soon as practical thereafter, Landlord shall estimate Tenant's Share of annual Operating Expenses payable by Tenant pursuant to this provision, and Tenant shall pay to Landlord on the first (1st) day of each month in advance, one-twelfth (1/12th) of such estimated amount. In the event that during any calendar year of the Term, Landlord determines that the actual Operating Expenses for such year will exceed the estimated Operating Expenses, Landlord may revise such estimate by written notice to Tenant, and Tenant shall pay to Landlord, concurrently with the regular monthly rent payment next due following the receipt of the revised estimate, an amount equal to the difference between the initial monthly estimate and the revised monthly estimate multiplied by the number of months expired during such calendar year, and shall also pay an amount equal to the revised monthly estimate for the month of such payment. Subsequent installments shall be payable concurrently with the regular monthly Base Rent due for the balance of the calendar year, and shall continue until the next calendar year's estimate is rendered or Landlord next revises its estimate of Operating Expenses, whichever occurs sooner. Tenant shall pay Tenant's Share of Operating Expenses in monthly payments payable on the first (1st) day of each month commencing on the Commencement Date. Landlord's current good faith estimate of monthly Operating Expenses as of the Commencement Date of this Lease is $830.62 per month (subject to change(s) with change(s) in Operating Expenses).

6.2.2    Within one hundred twenty (120) days following the end of each year or a reasonable time thereafter, Landlord shall provide Tenant with a written statement of Tenant's Share of the actual total Operating Expenses for such year, and there shall be an adjustment made to account for any difference between the actual and the estimated Operating Expenses for the previous year. If Tenant has overpaid the amount of Operating Expenses owing pursuant to this provision,

- 4 -

Landlord shall, provided Tenant is not in default hereunder, credit such overpayment to Tenant's account.  If Tenant has underpaid the amount of Operating Expenses owing pursuant to this provision, Tenant shall pay the total amount of such deficiency to Landlord as Additional Rent, with the next payment of Base Rent due under this Lease following delivery of written notice of said deficiency from Landlord to Tenant.

6.2.3   Tenant or its audit representatives shall have the right to inspect and audit Landlord's books and records with respect to this Lease to verify actual Operating Costs.  Tenant shall have the right to retain a copy of the audit for its records.  If Tenant's audit of the Operating Costs reveals an overcharge of more than five percent (5%), Landlord promptly shall reimburse Tenant for the reasonable costs of the audit.  Any overcharge or underpayment of Operating Costs shall be due from one party to the other within thirty (30) days after the amount of the overcharge or underpayment has been fixed.  The foregoing rights also shall apply with respect to verification of any amounts charged by Landlord to Tenant for utility costs and real estate taxes.

6.2.4   Landlord shall keep its books of account and records concerning Operating Expenses in compliance with generally accepted accounting principles and retain the same for two (2) years after the calendar year for which they were prepared.  Unless Tenant objects in writing regarding specific discrepancies in the Operating Expense calculations for any calendar year within ninety (90) days after receipt of Landlord's final calculations for such calendar year, Tenant shall be deemed to have approved the same and to have waived the right to object to such calculations.

6.3    Operating Expenses Inclusions.  For purposes of this Lease, "Operating Expenses" means the total of all expenses and costs incurred by Landlord in connection with the ownership, operation, management, maintenance, repair and replacement of the Property and/or the Building, including, but in no way limited to, the following:

6.3.1   The costs of operating, maintaining, repairing and replacing the Property, including but not limited to: gardening and landscaping; painting; lighting; sanitary control; personal property taxes; public liability insurance, property damage insurance and other insurance maintained by landlord pursuant to Section 7.1; utilities for the Property; sweeping; removal of snow and ice, trash, rubbish, garbage and other refuse; repairing, re-striping and resurfacing of parking area; and maintenance of and property taxes on personal property, machinery and equipment used in maintenance of the Property.

6.3.2   All Real Property Taxes (as defined below) assessed against the Property, including land, the Building and improvements thereon or thereto.

6.3.3   All premiums for liability, terrorism, fire, property, extended coverage and other insurance the Landlord reasonably deems necessary and keeps in force

- 5 -

on or with respect to the Property, and commercially reasonable deductibles payable in connection therewith.

6.3.4  The cost of operating, maintaining, repairing and replacing any electrical, mechanical, automatic fire sprinkler, HVAC and other utilities systems which serve the Property.

6.3.5  The cost of maintenance, repair and replacement of the non-structural portions of the roof, roof membrane, roof gutters, exterior walls, foundation and other exterior portions of the Building and any other portions of the Property that are required under this Lease for Landlord to maintain, repair and replace, and reasonable reserves for all of the foregoing.

6.3.6  Reasonable property management charges (not to exceed five percent (5%) per annum of gross Property revenues), together with the costs incurred in the operation of an off-site management office relating to the Property, including, but not limited to, the cost of rent and utilities with respect thereto.

6.3.7  Costs of replacements and improvements which are necessary to adequately maintain or protect the Property, as the case may be, and/or which are required by law or governmental regulation enacted after the date of this Lease, which are of a capital nature (as determined by GAAP accounting) to the extent amortization over the useful life thereof is applicable to the periods during the Lease Term, and reasonable reserves for the same.

6.3.8  Any other costs levied, assessed or imposed by or at the direction of, or resulting from statutes or regulations or interpretations thereof promulgated by any federal or governmental authority in connection with the use or occupancy of the Property.

6.3.9  Assessments made on or with respect to the Property made pursuant to any Local Improvement District conditions affecting the Property, or any portion thereof.

6.3.10  Reasonable reserves for replacement of improvements located in, on or under the Property.

6.3.11  Compensation (including wages and employer paid benefits and taxes) of employees and contractors engaged in the operation and maintenance of the Property.

6.3    <u>Operating Expense Exclusions</u>.  Notwithstanding Section 6.2, Operating Expenses to be reimbursed by Tenant shall not include the following:

6.3.1  Expenses that are separately metered or calculated for the Property, as the case may be, which expenses shall be billed separately to Tenant.

- 6 -

6.3.2  Depreciation.

6.3.3  Costs, fines or penalties incurred due to violation by Landlord of any applicable law.

6.3.4  Interest on debt or capital retirement of debt, and costs of capital improvements except as expressly provided above.

6.3.5  Costs incurred due to the gross negligence of Landlord or breach by Landlord of its obligations under any lease.

6.4    Additional Rent At End of Lease Term.  Additional Rent payable by Tenant which would not otherwise be due until after the date of the expiration or earlier termination of the Lease shall, if the exact amount is uncertain at the time this Lease expires or terminates, be paid by Tenant to Landlord upon such expiration or termination in an amount to be determined by Landlord, with an adjustment to be made once the exact amount is known.

6.5    Real Property Taxes.  For purposes of this Lease, "Real Property Taxes" shall consist of all real estate taxes and all other taxes relating to the Property, all other taxes which may be levied in lieu of real estate taxes, all assessments, local improvement districts, assessment bonds, levies, fees and other governmental charges, including, but not limited to, charges for traffic facilities and improvements, water service studies, and improvements or amounts necessary to be expended because of governmental orders, whether general or special, ordinary or extraordinary, unforeseen as well as foreseen, of any kind and nature for public improvements, services, benefits, or any other purpose, which are assessed, levied, confirmed, imposed or become a lien upon the Property that become payable during the Term (or which become payable after the expiration or earlier termination hereof and are attributable in whole or in part to any period during the Term hereof), together with all costs and expenses incurred by Landlord in successfully contesting, resisting or appealing any such taxes, rates, duties, levies or assessments.  "Real Property Taxes" shall exclude any franchise, estate, inheritance, or succession transfer tax of Landlord, or any federal or state income, profits, or revenue tax or charge upon the net income of Landlord from all sources; provided, however, that if at any time during the Term there is levied or assessed against Landlord a federal, state or local tax or excise tax on rent, or any other tax however described on account of rent or gross receipts or any portion thereof, Tenant shall pay one hundred percent (100%) of any said tax or excise applicable to Tenant's Rent as Additional Rent.

6.6    Tenant's Personal Property Taxes.  Tenant shall pay or cause to be paid, prior to delinquency, any and all taxes and assessments levied upon all trade fixtures, inventories and other real or personal property placed or installed in and upon the Property by Tenant.  If any such taxes on Tenant's personal property or trade fixtures are levied against Landlord or Landlord's property, or if the assessed value of the Property is increased by the inclusion therein of a value placed upon such real or personal property or trade fixtures of Tenant, and if Landlord pays the taxes based upon such increased

-7-

EXHIBIT "1"
Page 18

assessment, Tenant shall, upon demand, repay to Landlord the taxes so levied or the portion of such taxes resulting from such increase in the assessment.

## ARTICLE 7. - INSURANCE

7.1    Landlord's Insurance.  During the Term, Landlord shall procure and maintain in full force and effect with respect to the Property (a) a policy or policies of property insurance (including, to the extent required, sprinkler leakage, vandalism and malicious mischief coverage, and any other endorsements required by the holder of any mortgagees or the beneficiary of any first trust deed against the Property and earthquake, flood and terrorism insurance to the extent Landlord reasonably deems prudent and/or to the extent required by any mortgagee); and (b) a policy of commercial liability insurance, in the form and content acceptable to Landlord, insuring Landlord's activities with respect to the Property for loss, damage or liability for personal injury or death of any person or loss or damage to property occurring in, upon or about the Property.  If the annual premiums charged to Landlord for such casualty and/or liability insurance exceed the standard premium rates because the nature of Tenant's operations results in increased exposure, then Tenant shall, upon receipt of appropriate premium invoices, reimburse Landlord for such increased amount.  Landlord shall have the right, at its option, to keep and maintain in full force and effect during the Term such other insurance in such amounts and on such terms as Landlord and/or any mortgagees or the beneficiary of any first trust deed against the Property, may require from time to time in form, in amounts and for insurance risks against which a prudent Landlord would protect itself, including but not limited to rental abatement, rental interruption, earthquake, flood and terrorism insurance.

7.2    Tenant's Public Liability.  Tenant shall, at its own cost and expense, keep and maintain in full force during the Term and any other period of occupancy of the Property by Tenant, a policy or policies of commercial liability insurance, written by a reputable insurance company authorized to do business in the State of Washington in form and content acceptable to Landlord insuring Tenant's activities with respect to the Property for loss, damage or liability for personal injury or death of any person or loss or damage to property occurring in, upon or about the Property in an amount of not less than Three Million Dollars ($3,000,000) combined single limit or such larger amounts as may hereafter be reasonably requested by Landlord.  The policy shall insure the hazards of the Property and Tenant's operations therein, shall include independent contractor and contractual liability coverage (covering the indemnity contained in Section 7.8 hereof) and shall (a) name Landlord, Landlord's managing agent and the Landlord's mortgagee under a mortgage or beneficiary under a deed of trust having a lien against the Property (the "Lender") as an additional insured; (b) contain a cross-liability provision and; (c) contain a provision that the insurance provided hereunder shall be primary and non-contributing with any other insurance available to Landlord.  Tenant shall provide to Landlord in addition to any Certificate of Liability and Evidence of Property Insurance Certificate issued by its agent, a true and correct copy of its actual policy and the specific endorsement naming Landlord, its managing agent and its mortgagee additional insureds.

7.3    Tenant's Property and Other Insurance.  Tenant shall, at its own cost and expense, keep and maintain in full force during the Term and any other period of occupancy

- 8 -

of the Property, a policy or policies of standard form property insurance insuring against the perils of fire, extended coverage, vandalism, malicious mischief, special extended coverage and sprinkler leakage. This insurance policy shall be upon all property owned by Tenant, for which Tenant is legally liable or that was installed at Tenant's expense, and which is located on the Property, including without limitation, furniture, fittings, installations, cabling, fixtures (other than the improvements installed by Landlord), and any other personal property, in the amount of not less than one hundred percent (100%) of the full replacement costs thereof. This insurance policy shall also insure direct or indirect loss of Tenant's earning attributable to Tenant's inability to use fully or obtain access to the Property. The policy shall insure the hazards of the Property and Tenant's operations therein, shall include independent contractor and contractual liability coverage (covering the indemnity contained in Section 7.8 hereof) and shall (a) name Landlord, Landlord's managing agent and the Landlord's mortgagee under a mortgage or beneficiary under a deed of trust either having a lien against the Property (the "Lender") as an additional insured; (b) contain a cross-liability provision and; (c) contain a provision that the insurance provided hereunder shall be primary and non-contributing with any other insurance available to Landlord. Tenant shall provide to Landlord in addition to any Certificate of Liability and Evidence of Property Insurance Certificate issued by its agent, a true and correct copy of its actual policy and the specific endorsement naming Landlord, its managing agent and its mortgagee additional insureds.

       7.4   <u>Form of Insurance/Certificates</u>. All policies shall be written in a form satisfactory to Landlord and shall be taken out with insurance companies licensed in the state in which the Building is located and holding a General Policy Holder's Rating of "A" and a financial rating of "X" or better, as set forth in the most current issues of *Best's Insurance Guide*. Tenant shall furnish to Landlord, prior to Tenant's entry onto the Property and thereafter within thirty (30) days prior to the expiration of each such policy, a Certificate of Insurance (or renewal thereof) and Evidence of Property Insurance Certificate issued by the insurance carrier of each policy of insurance carried by Tenant pursuant hereto and a copy of each such policy of insurance as noted above, including the endorsements referenced in Sections 7.2 and 7.3 above. Said certificates and policies shall expressly provide that such policies shall not be cancelable or subject to reduction of coverage below the minimum amounts required by this Lease or required by any lender having an interest in the Property or otherwise be subject to modification except after thirty (30) days' prior written notice to the parties named as insured in Sections 7.2 and 7.3.

       7.5   <u>Tenant's Failure</u>. If Tenant fails to maintain any insurance required in the Lease, Tenant shall be liable for any loss or cost resulting from said failure, and Landlord shall have the right to obtain such insurance on Tenant's behalf and at Tenant's sole expense. This Section 7.5 shall not be deemed to be a waiver of any of Landlord's rights and remedies under any other section of this Lease. If Landlord obtains any insurance which is Tenant's responsibility to obtain under this Article 7, Landlord shall deliver to Tenant a written statement setting forth the cost of any such insurance and showing in reasonable detail the manner in which it has been computed, and Tenant shall promptly remit said amount as Additional Rent to Landlord.

**EXHIBIT "1"**
**Page 20**

7.6    <u>Waiver of Subrogation</u>.  Any all-risk policy or policies of fire, extended coverage or similar casualty insurance which either party obtains in connection with the Property or Tenant's personal property therein shall include a clause or endorsement denying the insurer (or having the insurer waive) any rights of subrogation against Landlord and Tenant to the extent of payments made by such insurer under any insurance policy(ies).  Landlord and Tenant waive any rights of recovery against the other for liability, injury or loss to the extent actually covered and paid by insurance containing such a waiver of subrogation clause or endorsement to the extent of the liability, injury or loss covered thereby.

7.7    <u>Tenant's Properties and Fixtures</u>.  Tenant assumes the risk of damage to any furniture, equipment, machinery, goods, supplies or fixtures which are or remain the property of Tenant or as to which Tenant retains the right of removal from the Property, except to the extent due to the gross negligence or willful misconduct of Landlord.  Tenant shall not do or keep anything in or about the Property (except those things Tenant presently does and keeps in connection with the uses set forth in Section 10.1) which will in any way tend to increase insurance rates paid by Landlord and maintained with respect to the Property unless Tenant pays directly to Landlord the increased cost of the premiums.  In no event shall Tenant carry on any activities that would invalidate any insurance coverage maintained by Landlord.  If at any time Tenant's occupancy or business in or on the Property, whether or not Landlord has consented to the same, results in any increase in premiums for the insurance carried by Landlord with respect to the Property, Tenant shall pay any such increase in premiums as Additional Rent within ten (10) days after being billed by Landlord.  In determining whether increased premiums are a result of Tenant's use of the Property, a schedule issued by the organization computing the insurance rate on the Property showing the various components of such rate shall be conclusive evidence of the several items and charges which make up such rate.  Tenant shall promptly comply with all reasonable requirements of the insurance underwriters and/or any governmental authority having jurisdiction, necessary for the maintenance of reasonable fire and extended insurance for the Property.

7.8    <u>Indemnification</u>.

7.8.1    Tenant, as a material part of the consideration to be rendered to Landlord, hereby indemnifies and agrees to defend and hold Landlord, Landlord's managing agent and Lender, and the Property harmless for, from and against (a) any and all liability, penalties, losses, damages, costs and expenses, demands, causes of action, claims, judgments or appeals arising from or connected with Tenant's or Tenants' officers, employees, agents, assignees, subtenants, licensees, contractors, customers' or invitees' possession, use, maintenance, occupation, operation or control of the Premises (or any portion of the Property) during the Term, or resulting from any breach or default in the performance of any obligation to be performed by Tenant hereunder or for which Tenant is responsible under the terms of the Lease or pursuant to any governmental or insurance requirement, or to the extent arising from any act, neglect, fault or omission of Tenant or any of Tenant's officers, employees, agents, servants, subtenants, licensees, contractors, customers or invitees, and (b) from and against all reasonable legal costs and

charges, including reasonable attorneys' and other reasonable professional fees, incurred in and about any of such matters and the defense of any action arising out of the same or relating to the Property or any part thereof from any and all liens, charges or judgments which may accrue or be placed thereon by reason of any act or omission of the Tenant, except and to the extent as may arise out of the gross negligence or willful misconduct of Landlord and/or its agents, employees or contractors.

       7.8.2     In no event shall Landlord, its agents, employees and/or contractors be liable for any personal injury or death or property damage caused by persons in or about the Property, or caused by public or quasi-public work, or for consequential damages arising out of any loss of the use of the Property or any equipment or facilities therein by Tenant or any person claiming through or under Tenant.

       7.8.3     TENANT HEREBY WAIVES AND AGREES THAT IT WILL NOT ASSERT ANY INDUSTRIAL INSURANCE IMMUNITY IF SUCH ASSERTION WOULD BE INCONSISTENT WITH THE RIGHT OF LANDLORD TO INDEMNIFICATION PURSUANT TO THIS ARTICLE 7.  THE PARTIES AGREE THAT THIS PROVISION WAS MUTUALLY NEGOTIATED AND RELATES ONLY TO A WAIVER OF IMMUNITY WITH RESPECT TO THE TENANT AND NO THIRD PARTY, INCLUDING BUT NOT LIMITED TO, ANY INJURED EMPLOYEE OF EITHER PARTY, SHALL BE A THIRD-PARTY BENEFICIARY OF THIS PROVISION.

       7.9     <u>Damage to Tenant's Property or Personnel</u>.  Notwithstanding the provisions of Section 7.8 to the contrary, except to the extent due to the gross negligence or willful misconduct of Landlord, its agents, employees and/or contractors, Landlord shall not be liable for (a) loss or damage to any property by theft or otherwise, or (b) any injury or damage to persons or property resulting from fire, explosion, falling substances or materials, steam, gas, electricity, ice, snow, water or rain which may leak from any part of the Property or from the pipes, appliances or plumbing work therein, or from the roof, street or subsurface, or from any other place or resulting from dampness, freezing and thawing or any other cause, except to the extent Landlord receives consideration for such damage or injury from a third party.  Tenant shall give prompt notice to Landlord and appropriate emergency response officials if Tenant is or becomes aware of fire or accidents in the Property or of defects therein in the fixtures or equipment.

## ARTICLE 8. - REPAIRS AND MAINTENANCE

       8.1     <u>Landlord Repairs and Maintenance</u>.  Landlord shall, at its sole expense (and without reimbursement from Tenant), maintain in good condition and repair the structural elements of the Building, including the structural elements of the foundation, roof, walls and floor, and Landlord shall, subject to Landlord's right to reimbursement from Tenant pursuant to Article 6 and Section 8.3, maintain in good condition and repair both (a) the non-structural elements and aspects of the Building including, without limitation, the exterior of the Building (other than Premises doors and windows, which shall be Tenant's exclusive obligation to maintain in good condition), and utilities to their point of connection to the

Building, and the HVAC system providing service to the Premises; and (b) all portion of the Property other than the Building, including, but not limited to, parking areas, landscaping and irrigation equipment.  Landlord shall not be liable for any failure to make any repairs or to perform any maintenance unless such failure shall persist for an unreasonable time after written notice of the need for such repairs or maintenance is given to Landlord by Tenant. There shall be no abatement of Rent and, except for the gross negligence or willful misconduct of Landlord or its employees, no liability of Landlord by reason of any injury to or interference with Tenant's business arising from the making of any repairs, alterations or improvement in or to any portion of the Property or in or to fixtures, appurtenances and equipment therein; provided, that Landlord, its employees, agents and contractors use reasonable efforts not to unreasonably interfere with Tenant's business in exercise of Landlord's rights or obligations hereunder.  Except as may otherwise be expressly set forth herein, Tenant affirms that (a) neither Landlord nor any agent, employee or officer of Landlord has made any representation regarding the condition of the Property, and (b) Landlord shall not be obligated to undertake any repair, alteration, remodel, improvement, painting or decorating.

8.2    Utilities and Services.  Subject to reimbursement pursuant to Article 6 and Section 8.3, Landlord shall furnish or use commercially reasonable efforts to cause to be furnished to the Premises lines for water, electricity, sewage and telephone.  Landlord shall provide all standard building services Monday through Friday, 7:00 a.m. to 7:00 p.m. and Saturday, 8:00 a.m. to noon.  Tenant shall pay before delinquency, at its sole cost and expense, all charges for water, heat, electricity, power, telephone service, sewer service charges and other utilities or services charged or attributable to the Premises; provided, however, that if any such services or utilities shall be billed to Landlord and are not separately billed to the Premises, Tenant shall pay all such expenses to Landlord as Additional Rent.

8.3    Tenant Repairs and Maintenance.  Except as provided in Section 8.1 above, Tenant shall, at Tenant's sole cost and expense, keep and maintain the entire Premises, including but not by way of limitation, all interior walls, doors, ceiling, fixtures, furnishings, drapes, windows, doors, specialty lamps, light bulbs, starters and ballasts, sub-floors, carpets and floor coverings, elevators, electrical, plumbing, sewage, gas and other utility and mechanical systems only serving the Premises in good repair and in a clean and safe condition; provided, that Landlord shall have the right to perform such work on behalf of Tenant, in which event Tenant shall reimburse Landlord for the cost thereof promptly upon demand.   In addition, if any repair or maintenance is necessary or prudent under Sections 8.1 or 8.3 as a result of an act or omission of Tenant or its agents, employees or contractors, Tenant shall reimburse Landlord for the entire cost of any such repair or maintenance immediately upon written demand.  Upon expiration or earlier termination of the Term, Tenant shall surrender the Premises to Landlord in the same condition as when leased, except for reasonable wear and tear and damage by fire or other casualty not required to be repaired by Tenant pursuant to this Lease.

8.4    Non-liability of Landlord.  Notwithstanding anything to the contrary contained in Sections 8.1 or 8.2 above or elsewhere in this Lease, Landlord shall not be in default hereunder or be liable for any damages directly or indirectly resulting from, nor shall the

Rent herein reserved be abated or rebated by reason of (a) the interruption or curtailment of the use of the Property as a result of the installation of any equipment in connection with the Property; or (b) any failure to furnish or delay in furnishing any services required to be provided by Landlord, unless and to the extent such failure or delay is caused by accident or any condition created by Landlord's active gross negligence or intentional misconduct; or (c) the limitation, curtailment, rationing or restriction of the use of water or electricity, gas or any other form of energy or any other service or utility whatsoever serving the Property, unless and to the extent such failure or delay is caused by accident or any condition created by Landlord's gross negligence or intentional misconduct.

8.5    <u>Inspection of Premises</u>.   Landlord may enter the Premises to complete construction undertaken by Landlord, to inspect, clean, improve or repair the same, to inspect the performance by Tenant of the terms and conditions hereof, show the Property to prospective purchasers, tenants and lenders, and for all other purposes as Landlord shall reasonably deem necessary or appropriate; provided, that Landlord shall use reasonable efforts not to interfere with Tenant's business in exercise of Landlord's rights hereunder. Tenant hereby waives any claim for damages for any injury or inconvenience to or interference with Tenant's business, any loss of occupancy or quiet enjoyment of the Premises and any other loss in, upon or about the Property, arising from exercise by Landlord of its rights hereunder except as otherwise provided in Article 11 hereof.

### ARTICLE 9. - FIXTURES, PERSONAL PROPERTY AND ALTERATIONS

9.1    <u>Fixtures and Personal Property</u>.   Tenant, at Tenant's expense, may install any necessary trade fixtures, equipment and furniture in the Building, provided that such items are installed and are removable without damage to the structure of the Building, including, but not limited to, damage to drywall, doors, door frames and floors.  Said trade fixtures, equipment, furniture and personal property shall remain Tenant's property and shall be maintained in good condition while on the Property and removed by Tenant upon the expiration or earlier termination of the Lease.  As a covenant which shall survive the expiration or earlier termination of the Lease, Tenant shall repair, at Tenant's sole expense, or at Landlord's election, reimburse Landlord for the cost to repair all damage caused by the installation or removal of said trade fixtures, equipment, furniture, personal property or temporary improvements.  If Tenant fails to remove the foregoing items prior to or upon the expiration or earlier termination of this Lease, Landlord, at its option and without liability to Tenant for loss thereof, may keep and use them or remove any or all of them and cause them to be stored or sold in accordance with applicable law; and Tenant shall, upon demand of Landlord, pay to Landlord as Additional Rent hereunder all costs and expenses incurred by Landlord in so storing and/or selling said items.  In the event any such fixtures, equipment and/or furniture of Tenant are sold by Landlord, the proceeds of such sale shall be applied first, to all expenses of Landlord incurred in connection with storage and sale, second, to any amounts owed by Tenant to Landlord under this Lease or otherwise, and third, the remainder, if any, shall be paid to Tenant.

9.2    <u>Alterations</u>.   Tenant shall not make or allow to be made any material alterations, additions or improvements to the Property (defined as alterations, additions or improvements costing in excess of Twenty-five Thousand Dollars ($25,000) individually or

in the aggregate with respect to separate items relating to the same improvement or alteration or any alterations, additions or improvements that affect the structure or exterior of the Building or any building, mechanical, electrical or life safety system), either at the inception of the Lease or subsequently during the Term, without obtaining the prior written consent of Landlord, which consent shall not be unreasonably withheld; provided, that Landlord may withhold Landlord's consent, in its sole reasonable discretion, with respect to any alteration, addition or improvement that affects the structure or exterior of the Building or any building, mechanical, electrical or life safety systems.  Tenant shall deliver to Landlord the contractor's name, references and state license number, a certificate of liability insurance naming Landlord as an additional insured, as well as full and complete plans and specifications of all such alterations, additions or improvements, and any subsequent modifications or additions to such plans and specifications; and no proposed work shall be commenced or continued by Tenant until Landlord has received and given its written approval of each of the foregoing.  Landlord shall either approve or disapprove any proposed alteration, addition or improvement by Tenant on or before thirty (30) days following receipt of all of the foregoing items.  Landlord does not expressly or implicitly covenant or warrant that any plans or specifications submitted by Tenant are accurate, safe or sufficient or that the same comply with any applicable laws, ordinances, building codes, or the like.  Further, Tenant shall indemnify, protect, defend and hold Landlord and Landlord's agents, employees and contractors and the Property harmless for, from and against any loss, damage, liability, claims, liens, cost or expense, including attorneys' fees and costs, incurred as a result of Tenant's alterations, additions or improvements to the Property.  All alterations, telephone or telecommunications lines, cables, conduits and equipment and all other additions or improvements to the Property made by Tenant shall remain the property of Tenant until termination of the Lease, at which time they shall, unless otherwise elected by Landlord by written notice to Tenant, be and become the property of Landlord.  Landlord may, as a condition to approval of any such alterations, additions or improvements, require Tenant to remove any partitions, counters, railings, telephone and telecommunications lines, cables, conduits and equipment and/or other improvements installed by Tenant during the Term; and Tenant shall repair all damage resulting from such removal or, at Landlord's option, shall pay to Landlord all costs arising from such removal. All repairs, alterations, additions and restorations by Tenant hereinafter required or permitted shall be done in a good and workmanlike manner and in compliance with the plans and specifications approved by Landlord and in compliance with all applicable laws and ordinances, building codes, bylaws, regulations and orders of any federal, state, county, municipal or other public authority and of the insurers of the Property and as-built plans and specifications shall be provided to Landlord by Tenant upon completion of the work.  Tenant shall reimburse Landlord for Landlord's charges (including any professional fees incurred by Landlord and a reasonable administrative fee as established by Landlord from time to time) for reviewing and approving or disapproving plans and specifications for any proposed alterations.

       9.3    Liens.  Tenant shall promptly file and/or record, as applicable, all notices of completion provided for by law, and shall pay and discharge all claims for work or labor done, supplies furnished or services rendered at the request of Tenant or at the request of Landlord on behalf of Tenant, and shall keep the Property free and clear of all mechanics' and materialmen's liens in connection therewith.  Landlord shall have the right, and shall

- 14 -

EXHIBIT "1"
Page 25

be given ten (10) days' written notice by Tenant prior to commencement of the work, to post or keep posted on the Property, or in the immediate vicinity thereof, any notices of non-responsibility for any construction, alteration or repair of the Property by Tenant.  If any such lien is filed, Tenant shall cause the same to be discharged of record within ten (10) days following written notice thereof; unless Tenant disputes the correctness or validity of any claim of lien.  If said lien is not timely discharged, Landlord may, but shall not be required to, take such action or pay such amount as may be necessary to remove such lien; and Tenant shall pay to Landlord as Additional Rent any such amounts expended by Landlord, together with interest thereon at the Default Rate (as defined in Section 5.3 above), within five (5) days after notice is received from Landlord of the amount expended by Landlord.

## ARTICLE 10. -  USE AND COMPLIANCE WITH LAWS

10.1   General Use and Compliance with Laws.  Tenant shall only use the Property and Premises for Tenant's business described in Section 1.1 above, and uses customarily incidental thereto, and for no other use without the prior written consent of Landlord, which consent will not be unreasonably withheld.  Tenant shall, at Tenant's sole cost and expense, comply with applicable requirements of municipal, county, state, federal and other applicable governmental authorities now or hereafter in force pertaining to Tenant's business operations, alterations and/or specific use of the Premises, and shall secure any necessary permits and shall faithfully observe in the use of the Property and Premises, applicable municipal, county, state, federal and other applicable governmental entities' requirements which are now or which may hereafter be in force.  Tenant, in Tenant's use and occupancy of the Premises, shall not subject or permit the Property or Premises to be used in any manner which would tend to damage any portion thereof, or which would increase the cost of any insurance paid by Landlord with respect thereto.

10.2   Hazardous Materials.

10.2.1   Defined Terms.

10.2.1.1   "Hazardous Materials" means, among other things, any of the following, in any amount:  (a) any petroleum or petroleum derived or derivative product, asbestos in any form, urea formaldehyde and polychlorinated biphenyls and medical wastes;  (b) any radioactive substance;  (c) any toxic, infectious, reactive, corrosive, ignitable or flammable chemical or chemical compound;  and (d) any chemicals, materials or substances, whether solid, liquid or gas, defined as or included in the definitions of "hazardous substances," "hazardous wastes," "hazardous materials," "extremely hazardous wastes," "restricted hazardous wastes," "toxic substances," "toxic pollutants," "solid waste," or words of similar import in any federal, state or local statute, law, ordinance or regulation, or court decisions now existing or hereafter existing as the same may be interpreted by government offices and agencies.

- 15 -

EXHIBIT "1"
Page 26

10.2.1.2    "Hazardous Materials Laws" means any federal, state or local statutes, laws, ordinances or regulations, or court decisions now existing or hereafter existing that control, classify, regulate, list or define Hazardous Materials or require remediation of Hazardous Materials contamination.

10.2.2    <u>Compliance with Hazardous Materials Laws</u>.  Tenant will not cause any Hazardous Materials to be brought upon, kept, generated, released or used on the Property in a manner or for a purpose prohibited by or that could result in liability under any Hazardous Materials Law; provided, however, in no event shall Tenant allow any Hazardous Materials to be brought upon, kept, generated, released or used on the Property other than those Hazardous Materials for which Tenant has received Landlord's prior written consent (other than small quantities of cleaning or other/industrial supplies as are customarily used by a tenant in the ordinary course in a general office facility).  Tenant, at its sole cost and expense, will comply with (and obtain all permits required under) all Hazardous Materials Laws, groundwater wellhead protection laws, storm water management laws, fire protection provisions, and prudent industry practice relating to the presence, storage, transportation, disposal, release or management of Hazardous Materials in, on, under or about the Property that Tenant brings upon, keeps, generates or uses on the Property (including, without limitation, but subject to this Section 10.2, immediate remediation of any Hazardous Materials in, on, under or about the Property that Tenant brings upon, keeps, generates or uses on the Property in compliance with Hazardous Materials Laws), and in no event shall Tenant allow any liens or encumbrances pertaining to Tenant's use of Hazardous Materials to attach to any portion of the Property.  On or before the expiration or earlier termination of this Lease, Tenant, at its sole cost and expense, will completely remove from the Property (regardless of whether any Hazardous Materials Law requires removal), in compliance with all Hazardous Materials Laws, all Hazardous Materials Tenant causes to be present in, on, under or about the Property.  Tenant will not take any remedial action in response to the presence of any Hazardous Materials in, on, under or about the Property, nor enter into (or commence negotiations with respect to) any settlement agreement, consent decree or other compromise with respect to any claims relating to or in any way connected with Hazardous Materials in, on, under or about the Property, without first notifying Landlord of Tenant's intention to do so and affording Landlord reasonable opportunity to investigate, appear, intervene and otherwise assert and protect Landlord's interest in the Property.  Landlord shall have the right from time to time to inspect the Property to determine if Tenant is in compliance with this Section 10.2.

10.2.3    <u>Notice of Actions</u>.  Tenant will notify Landlord of any of the following actions affecting Landlord, Tenant or the Property that result from or in any way relate to Tenant's use of the Property immediately after receiving notice of the same: (a) any enforcement, cleanup, removal or other governmental or regulatory action instituted, completed or threatened under any Hazardous Materials Law; (b) any claim made or threatened by any person relating to damage, contribution, liability, cost recovery, compensation, loss or injury resulting from or claimed to result from

any Hazardous Material; and (c) any reports made by any person, including Tenant, to any environmental agency relating to any Hazardous Material, including any complaints, notices, warnings or asserted violations. Tenant will also deliver to Landlord, as promptly as possible and in any event within five (5) business days after Tenant first receives or sends the same, copies of all claims, reports, complaints, notices, warnings or asserted violations relating in any way to the Property or Tenant's use of the Property. Upon Landlord's written request, Tenant will promptly deliver to Landlord documentation acceptable to Landlord reflecting the legal and proper disposal of all Hazardous Materials removed or to be removed from the Property. All such documentation will list Tenant or its agent as a responsible party and the generator of such Hazardous Materials and will not attribute responsibility for any such Hazardous Materials to Landlord or Landlord's agents.

10.2.4  <u>Disclosure and Warning Obligations</u>.  Tenant acknowledges and agrees that all reporting and warning obligations required under Hazardous Materials Laws resulting from or in any way relating to Tenant's use of the Property are Tenant's sole responsibility, regardless of whether the Hazardous Materials Laws permit or require Landlord to report or warn.

10.2.5  <u>Indemnification</u>.  Tenant releases and agrees to indemnify, defend (with counsel reasonably acceptable to Landlord), protect and hold harmless the Landlord and Landlord's agents, employees and contractors for, from and against any and all claims, liabilities, damages, losses, costs and expenses whatsoever arising or resulting, in whole or in part, directly or indirectly, from the presence, treatment, storage, transportation, disposal, release or management of Hazardous Materials in, on, under, upon or from the Property (including water tables and atmosphere) that Tenant brings upon, keeps, generates or uses on the Property. Tenant's obligations under this Section include, without limitation and whether foreseeable or unforeseeable, (a) the costs of any required or necessary repair, cleanup, detoxification or decontamination of the Property; (b) the costs of implementing any closure, remediation or other required action in connection therewith as stated above; (c) the value of any loss of use and any diminution in value of the Property, and (d) consultants' fees, experts' fees, response costs, court costs and all reasonable attorneys' fees.  Landlord shall have the right to designate which attorney shall represent Landlord, at Tenant's sole cost.  The Tenant's obligations under this Section survive the expiration or earlier termination of this Lease.

10.2.6  <u>Hazardous Materials Representation by Landlord</u>.  Landlord represents to Tenant that, to its actual knowledge and except as Landlord has previously disclosed to Tenant, Landlord has not caused the generation, storage or release of Hazardous Materials upon the Property, except in accordance with Hazardous Materials Laws.

10.3  <u>Signs</u>.  Landlord, at Landlord's sole cost and expense, shall install interior Building standard signage for Tenant's business at the Premises, and Tenant may install, at Tenant's sole cost and expense, reasonable exterior signage for Tenant's business at

- 17 -

the Premises.  Landlord must approve any and all signage before its installation, which consent will not be unreasonably withheld.

## ARTICLE 11. - DAMAGE AND DESTRUCTION

11.1    Reconstruction.  If the Building is damaged or destroyed during the Term, Landlord shall, except as hereinafter provided, diligently repair or rebuild it to substantially the condition in which it existed immediately prior to such damage or destruction.  If Landlord is obligated or elects to repair or restore as herein provided, Landlord shall be obligated to make repair or restoration of only those portions of the Building which were initially provided at Landlord's expense or as part of the original installation by Landlord for Tenant and the repair and/or restoration of other items within the Building shall be the obligation of the Tenant.

11.2    Rent Abatement.    Rent due and payable hereunder shall be abated proportionately during any period in which, by reason of any such damage or destruction, there is substantial interference with the operation of Tenant's business on the Property. Such abatement shall continue for the period commencing with such damage or destruction and ending with a substantial completion by Landlord of the work of repair or reconstruction that Landlord is obligated or undertakes to do.  If it is determined that continuation of business is not practical pending reconstruction, and if Landlord does not elect to or is unable to provide alternative temporary space for continuation of such business, then Rent due and payable hereunder shall abate until reconstruction is substantially completed or until business is totally or partially resumed, whichever is earlier.  Tenant shall not be entitled to any claim, compensation or damages for loss in the use in the whole or any part of the Property (including loss of business) and/or any inconvenience or annoyance occasioned by such damage, repair, reconstruction or restoration.

11.3    Excessive Damage or Destruction.  If the Building is damaged or destroyed to the extent that it cannot, within Landlord's reasonable discretion and with reasonable diligence, be fully repaired or restored by Landlord within the earlier of (a) one hundred eighty (180) days after the date of the damage or destruction, or (b) the expiration of the Term hereof, Landlord may terminate this Lease by written notice to Tenant within thirty (30) days of the date of the damage or destruction.  If Landlord does not terminate the Lease, this Lease shall remain in full force and effect and Landlord shall diligently repair and restore the damage as soon as reasonably possible.

11.4    Uninsured Casualty.    Notwithstanding anything contained herein to the contrary, in the event of damage to or destruction of all or any portion of the Building, which damage or destruction is not fully covered by the insurance proceeds received by Landlord under the insurance policies required under Section 7.1 above, Landlord may terminate this Lease by written notice to Tenant given within sixty (60) days after the date of notice to Landlord that said damage or destruction is not so covered.  If Landlord does not elect to terminate this Lease, the Lease shall remain in full force and effect and the Building shall be repaired and rebuilt in accordance with the provisions for repair set forth in Section 11.1 above.

- 18 -

EXHIBIT "1"
Page 29

11.5   Waiver.   With respect to any damage or destruction which Landlord is obligated to repair or may elect to repair under the terms of this Article 11, and to the extent permitted by law, Tenant hereby waives any rights to terminate this Lease pursuant to rights otherwise accorded by law to tenants, except as expressly otherwise provided herein.

11.6   Mortgagee's Right.   Notwithstanding anything herein to the contrary, if the holder of any indebtedness secured by a mortgage or deed of trust covering the Property requires that the insurance proceeds be applied to such indebtedness, then Landlord shall have the right to terminate this Lease by delivering written notice of termination to Tenant within fifteen (15) days after such requirement is made.   Upon any termination of this Lease under the provisions hereof, the parties shall be released without further obligation to the other from date possession of the Property is surrendered to Landlord, except for items which are theretofore accrued and are then unpaid.

11.7   Damage Near End of Term.   Notwithstanding anything to the contrary contained in this Article 11, in the event the Building suffers excessive damage (as defined in Section 11.3 above) during the last twelve (12) months of the Term or any applicable extension periods, then Landlord may elect to terminate this Lease by written notice to Tenant within thirty (30) days after the date of such damage.

## ARTICLE 12. - EMINENT DOMAIN

In the event the whole of the Property, or such part thereof as shall substantially interfere with Tenant's use and occupation thereof, shall be taken for any public or quasi-public purpose by any lawful power or authority by exercise of the right of appropriation, condemnation or eminent domain, or is sold in lieu of or to prevent such taking, then either Tenant or Landlord may terminate this Lease effective as of the date possession is required to be surrendered to said authority.   Except as provided below, Tenant shall not assert any claim against Landlord or the taking authority for any compensation because of such taking, and Landlord shall be entitled to receive the entire amount of any award without deduction for any estate or interest of Tenant in the Property. Nothing contained in this Article 12 shall be deemed to give Landlord any interest in any separate award made to Tenant for the taking of Tenant's personal property or fixtures or for Tenant's moving expenses.   In the event the amount of property or the type of estate taken shall not substantially interfere with the conduct of Tenant's business, Landlord shall be entitled to the entire amount of the award without deduction for any estate or interest of Tenant, Landlord shall promptly proceed to restore the Building to substantially their same condition prior to such partial taking, less the portion thereof lost in such condemnation, and the Base Rent shall be proportionately reduced by the time during which, and the portion of the Building which, Tenant shall have been deprived of possession on account of said taking and restoration.

## ARTICLE 13. - DEFAULT

13.1   Events of Default.   The occurrence of any of the following events shall constitute an "Event of Default" on the part of the Tenant with or without notice from Landlord:

- 19 -

EXHIBIT "1"
Page 30

13.1.1    Tenant shall fail to pay within three (3) days of when due any installment of Rent or other payment required pursuant to this Lease;

13.1.2    Tenant shall abandon the Property, whether or not Tenant is in default of the Rent payments due under this Lease;

13.1.3    Tenant shall fail to comply with any term, provision or covenant of this Lease, other than the payment of Rent or other sums of money due hereunder, and such failure is not cured within ten (10) days after written notice thereof to Tenant (said notice being in lieu of, and not in addition to, any notice required as a prerequisite to a forcible entry and detainer or similar action for possession of the Property); provided, that if the nature of such cure is such that a longer cure period is necessary, Tenant shall only be in default if Tenant shall have failed to commence such cure within said ten (10) day period and thereafter to have diligently prosecuted such cure to completion no later than ninety (90) days after Landlord's notice;

13.1.4    Tenant shall file a petition or be adjudged a debtor or bankrupt or insolvent under the United States Bankruptcy Code, as amended, or any similar law or statute of the United States or any State; or a receiver or trustee shall be appointed for all or substantially all of the assets of Tenant and such appointment or petition, if involuntary, is not dismissed within sixty (60) days of filing; or

13.1.5    Tenant shall make an assignment for the benefit of creditors.

13.2    Remedies.

13.2.1    Upon the occurrence of any Event of Default set forth in this Lease, in addition to any other remedies available to Landlord at law or in equity, Landlord shall have the immediate option to terminate this Lease and all rights of Tenant hereunder.  In the event that Landlord shall elect to so terminate this Lease, then Landlord may recover from Tenant (a) any unpaid Rent which has been earned at the time of such termination, plus interest at the rate set forth in this Lease; plus (b) the amount by which the unpaid Rent which would have been earned after termination until the time of award exceeds the amount of such rental loss that Tenant proves could have been reasonably avoided, plus interest at the rates contemplated by this Lease; plus (c) the worth at the time of award of the amount by which the unpaid Rent for the balance of the Term after the time of award exceeds the amount of such rental loss that Tenant proves could be reasonably avoided; plus (d) the unamortized balance of the value of the Abated Rent, Landlord TI Allowance or other tenant improvement costs, commissions and any other monetary concessions provided to Tenant pursuant to this Lease, as amortized over the initial Term of this Lease; plus (e) any other amount necessary to compensate Landlord for all damage proximately caused by Tenant's failure to perform Tenant's obligation under this Lease or which in the ordinary course of things would be likely to result therefrom, including, but not limited to, costs to restore the Building to good condition, costs to remodel, renovate or otherwise prepare the Building, or portions thereof, for a new tenant, leasing commissions, marketing expenses, attorneys' fees

- 20 -

and Base Rent, moving allowances and other types of leasing concessions. As used in Sections 13.2.1(c) above, the "worth at the time of award" is computed by discounting such amount at the discount rate of the Federal Reserve Bank of San Francisco at the time of award plus one percent (1%).

13.2.2    In the event of any Event of Default by Tenant, Landlord shall also have the right, with or without terminating this Lease, to re-enter the Property and remove all persons and property from the Property; such property may be removed and stored in a public warehouse or elsewhere at the cost of and for the account of the Tenant.  No re-entry or taking possession of the Property by Landlord pursuant to this Section 13.2.2 shall be construed as an acceptance of a surrender of the Property or an election to terminate this Lease, unless either a written notice of such intention is given to Tenant a court of competent jurisdiction decrees the Lease terminated.

13.2.3    In the event of the abandonment of the Property by Tenant or in the event that Landlord shall elect to re-enter as provided above or shall take possession of the Property pursuant to legal proceedings or pursuant to any notice provided by law, then if Landlord does not elect to terminate this Lease as provided above, Landlord may from time to time, without terminating this Lease, either recover all Rent as it becomes due or re-let the Property or any part thereof for the Term of this Lease on terms and conditions as Landlord, at its sole discretion, may deem advisable with the right to make alterations and repairs to the Building.

13.2.4    In the event that Landlord shall elect to so re-let, the rents received by Landlord from such re-letting shall be applied first to the payment of any indebtedness other than Rent due hereunder from Tenant to Landlord; second to the payment of any costs of such re-letting; third, to the payment of the cost of any alterations and repairs to the Building; fourth, to the payment of Rent due and unpaid hereunder; and the residual, if any, shall be held by Landlord and applied to payment of future Rent as the same shall become due and payable hereunder.  If that portion of such Rents received from such re-letting during the month, which is applied to the payment of Rent, be less than the Rent payable during that month by Tenant hereunder, then Tenant shall pay any such deficiency to Landlord immediately upon demand by Landlord.  Such deficiency shall be calculated and paid monthly.  Tenant shall also pay to Landlord, as soon as is certain, any of the costs and expenses incurred by Landlord in such re-letting or in making such alterations and repairs not covered by the rents received from such re-letting.

13.2.5 If this Lease provides for a postponement of any monthly rental payments, a period of "free" rent or other rent concession, such postponed rent or "free" rent is called the "Abated Rent."  Tenant shall be credited with having paid all of the Abated Rent on the expiration of the Lease Term only if Tenant has fully, faithfully, and punctually performed all of Tenant's obligations hereunder, including the payment of all rent (other than the Abated Rent) and all other monetary obligations and the surrender of the Property in the physical condition required by this Lease.  Tenant acknowledges that its right to receive credit for the Abated

- 21 -

EXHIBIT "1"
Page 32

Rent is absolutely conditioned upon Tenant's full, faithful and punctual performance of its obligations under this Lease.  If Tenant defaults and does not cure within any applicable grace period, the Abated Rent shall immediately become due and payable in full and this Lease shall be enforced as if there were no such rent abatement or other rent concession.  In such case Abated Rent shall be calculated based on the full initial rent payable under this Lease.

    13.2.6  If Landlord terminates this Lease pursuant to 13.2.1, then Tenant shall reimburse Landlord for the unamortized portion of the Tenant Improvement Allowance, in a lump sum as Additional Rent, upon the effective date of such Lease termination.  The amount due from Tenant shall be calculated as follows:

$$U \quad = \quad A \times (RM \div LM)$$

WHERE:

$U \quad = \quad$ Unamortized portion of Improvement Allowance.

$A \quad = \quad$ Amount of Tenant Improvement Allowance plus simple interest at 12% per annum from the date of this Lease until the date of termination.

$LM \quad = \quad$ Total months during the initial Lease Term that Tenant is obligated to pay monthly Base Rent.

AND:

$RM =$ Remaining months to the end of the initial Lease Term.

    13.2.7  All rights, options and remedies of Landlord contained in this Lease shall be construed and held to be cumulative, and none of them shall be exclusive of the other; and Landlord shall have the right to pursue any or all of such remedies or any other remedy or relief which may be provided by law, whether or not stated in this Lease.  No waiver of any default of Tenant hereunder shall be implied from any acceptance by Landlord of any Rent or other payments due hereunder or any omission by Landlord to take any action on account of such default if such default persists or is repeated; and no express waiver shall affect defaults other than as specified in said waiver.  The consent or approval of Landlord to or of any act by Tenant requiring Landlord's consent or approval shall not be deemed to waive or render unnecessary Landlord's consent or approval to or of any subsequent similar acts by Tenant.

    13.2.8  In the event that during the term of this Lease, Tenant commits more than either three (3) acts or omissions that are Events of Default for which default notices are given by Landlord pursuant to this Article 13 (whether or not such defaults are cured by Tenant), Landlord may, at its option, elect to terminate this Lease.  Landlord's election to exercise its early termination rights shall be effective only upon written notice delivered to Tenant specifying Landlord's election to cause an early termination of this Lease.  Such early termination shall be in effect when

- 22 -

such written notice is provided to Tenant.  Landlord's right of early termination shall be in addition to all other rights and remedies available to Landlord at law or in equity.

13.3   <u>Landlord's Default</u>.  Landlord shall not be in default unless Landlord fails to perform its obligations under this Lease within thirty (30) days after written notice by Tenant, or if such failure is not reasonably capable of being cured within such thirty (30) day period, Landlord shall not be in default unless Landlord has failed to commence the cure and diligently pursue the cure to completion.  In no event shall Tenant have the remedy to terminate this Lease, except upon final adjudication of competent jurisdiction authorizing such default.  In no event shall Landlord be liable to Tenant or any person claiming through or under Tenant for consequential, exemplary or punitive damages.

## ARTICLE 14. - FILING OF PETITION

Landlord and Tenant (as either debtor or debtor-in-possession) agree that if a petition ("Petition") is filed by or against Tenant under any chapter of Title 11 of the United States Code (the "Bankruptcy Code"), the following provisions shall apply:

14.1.1   Adequate protection for Tenant's obligations accruing after filing of the Petition and before this Lease is rejected or assumed shall be provided within fifteen (15) days after filing in the form of a security deposit equal to three (3) months' Base Rent and Additional Rent and other Lease charges, to be held by the court or an escrow agent approved by Landlord and the court.

14.1.2   The sum of all amounts payable by Tenant to Landlord under this Lease constitutes reasonable compensation for the occupancy of the Property by Tenant.

14.1.3   Tenant or Trustee shall give Landlord at least thirty (30) days written notice of any abandonment of the Property or any proceeding relating to administrative claims.  If Tenant abandons without notice, Tenant or Trustee shall stipulate to entry of an order for relief from stay to permit Landlord to re-enter and re-let the Property.

14.1.4   If Tenant failed to timely and fully perform any of its obligations under this Lease before the filing of the Petition, whether or not Landlord has given Tenant written notice of that failure, and whether or not any time period for cure expired before the filing of the Petition, Tenant shall be deemed to have been in default on the date the Petition was filed for all purposes under the Bankruptcy Code.

14.1.5   For the purposes of Section 365(b)(1) of the Bankruptcy Code, prompt cure of defaults shall mean cure within thirty (30) days after assumption.

14.1.6   For the purposes of Sections 365(b)(1) and 365(f)(2) of the Bankruptcy Code, adequate assurance of future performance of this Lease by Tenant, Trustee or any proposed assignee will require that Tenant, Trustee or the proposed assignee deposit three (3) months of Base Rent and Additional Rent into an escrow fund (to be held by the court or an escrow agent approved by Landlord

- 23 -

and the court) as security for such future performance.  In addition, if this Lease is to be assigned, adequate assurance of future performance by the proposed assignee shall require that (a) the assignee have a tangible net worth adequate to perform Tenant's Lease obligations, or that such assignee's performance be unconditionally guaranteed by a person or entity that has a tangible net worth adequate to perform Tenant's Lease obligations; and (b) assignee assumes in writing all of Tenant's obligations relating to the Property or this Lease.

14.1.7   If Tenant or Trustee intends to assume and/or assign this Lease, Tenant or Trustee shall provide Landlord with thirty (30) days' written notice of the proposed action, separate from and in addition to any notice provided to all creditors. Notice of a proposed assumption shall state the assurance of prompt cure, compensation for loss and assurance of future performance to be provided to Landlord.  Notice of a proposed assignment shall state (a) the name, address and federal tax identification and registration numbers of the proposed assignee; (b) all of the terms and conditions of the proposed assignment, and (c) the assignee's proposed adequate assurance of future performance to be provided to Landlord.

14.1.8   If Tenant is in default under this Lease when the Petition is filed, Landlord shall not be required to provide Tenant or Trustee with services or supplies under this Lease or otherwise before Tenant assumes this Lease, unless Tenant compensates Landlord for such services and supplies in advance.

## ARTICLE 15. - ASSIGNMENT AND SUBLETTING

15.1    Prohibition.    Tenant shall not assign, mortgage, pledge or otherwise transfer or encumber this Lease, in whole or in part, nor sublet, assign or permit occupancy by any party other than Tenant of all or any part of the Property, without the prior written consent of Landlord in each instance which consent may be withheld in Lender's sole discretion (except in the case of proposed sublease by Tenant, in which case Landlord's prior written consent shall not be unreasonably withheld, conditioned, or delayed).  Tenant shall at the time the Tenant requests the consent of Landlord, deliver to Landlord such information in writing as Landlord may reasonably require respecting the proposed assignee or subtenant including, without limitation, the name, address, nature of business, ownership, financial responsibility and standing of such proposed assignee or subtenant, and Landlord shall have not less than twenty (20) business days after receipt of all required information to elect one of the following:   (a) consent to such proposed assignment, encumbrance or sublease, or (b) refuse such consent, or (c) elect to terminate this Lease, in the case of a proposed assignment. In addition, as a condition to Landlord's consent to any assignment, sublease or encumbrance of this Lease shall be the delivery to Landlord of a true copy of the fully executed instrument of assignment, transfer or encumbrance and an agreement executed by the assignee, sublessee or other transferee in form and substance satisfactory to Landlord and expressly enforceable by Landlord, whereby the assignee assumes and agrees to be bound by the terms and provisions of this Lease and perform all the obligations of Tenant hereunder with respect to the assigned or subleased portion of the Property.  No assignment or subletting by Tenant shall relieve Tenant of any obligation under this Lease, including Tenant's obligation to pay Base Rent and Additional

- 24 -

Rent hereunder.  Any purported assignment or subletting contrary to the provisions hereof without consent shall be void.  The consent by Landlord to any assignment or subletting shall not constitute a waiver of the necessity for such consent to any subsequent assignment of subletting.  Tenant shall pay Landlord's reasonable processing costs and attorneys' fees incurred in reviewing any proposed assignment or sublease of not less than Two Thousand Dollars ($2,000).

15.2    <u>Excess Rental</u>.  If pursuant to any assignment or sublease, Tenant receives rent, either initially or over the term of the assignment or sublease, in excess of the Base Rent called for hereunder, or in the case of this sublease of a portion of the Property in excess of such Base Rent fairly allocable to such portion, after appropriate adjustments to assure that all other payments called for hereunder are appropriately taken into account, Tenant shall pay to Landlord, as Additional Rent hereunder, fifty percent (50%) of the excess of each such payment of rent received by Tenant after its receipt.

15.3    <u>Scope</u>.  The prohibition against assigning or subletting contained in this Article 15 shall be construed to include a prohibition against any assignment or subletting by operation of law.  If this Lease is assigned, or if the Property or any part thereof is sublet or occupied by anyone other than Tenant, Landlord may collect Rent from the assignee, subtenant or occupant and apply the net amount collected to the Rent herein reserved and apportion any excess Rent so collected in accordance with the terms of the immediately preceding paragraph, but no such assignment, subletting, occupancy or collection shall be deemed a waiver of this covenant, or the acceptance of the assignee, subtenant or occupant as tenant, or a release of Tenant from the further performance by Tenant of covenants on the part of Tenant herein contained.  No assignment or subletting shall affect the continuing primary and direct and continuing liability of Tenant to Landlord under this Lease (which, following assignment, shall be joint and several with the assignee), and Tenant shall not be released from performing any of the terms, covenants and conditions of this Lease.

15.4    <u>Waiver</u>.  Notwithstanding any assignment or sublease, or any indulgences, waivers or extensions of time granted by Landlord to any assignee or sublessee or failure of Landlord to take action against any assignee or sublease, Tenant hereby agrees that Landlord may, at its option, and upon not less than ten (10) days' notice to Tenant, proceed against Tenant without having taken action against or joined such assignee or sublessee, except that Tenant shall have the benefit of any indulgences, waivers and extensions of time granted to any such assignee or sublessee.

## ARTICLE 16. - ESTOPPEL CERTIFICATE, ATTORNMENT AND SUBORDINATION

16.1    <u>Estoppel Certificates</u>.  Within ten (10)  days after request by Landlord, or if on any sale, assignment or hypothecation by Landlord of Landlord's interest in the Property, or any part thereof, an estoppel certificate shall be required from Tenant, Tenant shall deliver a certificate in the form attached hereto as <u>Exhibit C</u>, or in such other form as requested by Landlord of its Lender, to any proposed mortgagee or purchaser, and to Landlord, certifying (if such be the case) that this Lease is in full force and effect, the date of Tenant's most recent payment of Rent, and that Tenant has no defenses or offsets

- 25 -

outstanding, or stating those claimed by Tenant, and any other information contained in such Exhibit C or reasonably requested by Landlord or such proposed mortgagee or purchaser.  Tenant's failure to deliver said statement within said period shall, at Landlord's option be an Event of Default hereunder and shall in any event be conclusive upon Tenant that (a) this Lease is in full force and effect, without modification except as may be represented by Landlord; (b) there are no uncured defaults in Landlord's performance and Tenant has no right to offset, counterclaim or deduction against Rent hereunder; and (c) no more than one (1) period's Base Rent has been paid in advance.

16.2    Attornment.  In the event any proceedings are brought for the foreclosure of, or in the event of exercise of the power of sale under, any mortgage or deed of trust made by Landlord, its successors or assigns, encumbering the Property, or if the Property is sold as a result of foreclosure of the mortgage or otherwise, or if a deed is given in lieu of foreclosure, then the Lease shall continue in full force and effect, without the necessity of executing a new Lease.  If so requested, Tenant shall attorn to the purchaser upon such foreclosure or sale or upon any grant of a deed in lieu of foreclosure and recognize such purchaser as Landlord under this Lease; provided, that such purchaser recognizes Tenant's rights under this Lease and agrees not to disturb Tenant's quiet possession of the Property for so long as Tenant is not in default hereunder.

16.3    Subordination.  Subject to Section 16.2, the rights of Tenant hereunder are and shall be, at the election of any mortgagee or the beneficiary of a deed of trust encumbering the Property, subject and subordinate to the lien of such mortgage or deed of trust, or the lien resulting from any other method of financing or refinancing, now or hereafter in force against the Property, and to all advances made or hereafter to be made upon the security thereof.  If requested, Tenant agrees to execute such documentation as may be required by Landlord or its lender to further effect the provisions of this Article.

16.4    Recording.  Tenant covenants and agrees with Landlord that Tenant shall not record this Lease or any memorandum thereof without Landlord's prior written consent.  Notwithstanding the provisions of Section 16.3, in the event that Landlord or its Lender requires this Lease or a memorandum thereof to be recorded in priority to any mortgage, deed of trust or other encumbrance which may now or at any time hereafter affect in whole or in part the Property and whether or not any such mortgage, deed of trust or other encumbrance shall affect only the Property, the Tenant covenants and agrees with Landlord that the Tenant shall execute promptly upon request from Landlord any certificate, priority agreement or other instrument which may from time to time be requested to give effect thereto.

## ARTICLE 17. - MISCELLANEOUS

17.1    Notices.  All notices required to be given hereunder shall be in writing and mailed postage prepaid by certified or registered mail, return receipt requested, or by personal delivery or nationally recognized courier service, to the appropriate address indicated in Section 1.1 at such street address or street addresses (but not more than three such addresses) as either Landlord or Tenant may, from time to time, respectively, designate in a written notice given to the other.  Notices shall be deemed sufficiently served

- 26 -

upon the earlier of actual receipt or the expiration of three (3) days after the date of mailing thereof.  Tenant agrees to accept service of process for all matters related to this Lease at the Property.

17.2    Successors Bound.  This Lease and each of its covenants and conditions shall be binding upon and shall inure to the benefit of the parties hereto and their respective permitted assignees hereunder, subject to the provisions hereof.  Whenever in this Lease a reference is made to Landlord, such reference shall be deemed to refer to the person in whom the interest of Landlord shall be vested, and Landlord shall have no obligation hereunder as to any claim arising after the transfer of its interest in the Property.  Any successor or assignee of the Tenant who accepts an assignment of the benefit of this Lease and enters into possession or enjoyment hereunder shall thereby assume and agree to perform and be bound by the covenants and conditions thereof.  Nothing herein contained shall be deemed in any manner to give a right of assignment without the prior written consent of Landlord pursuant to, or otherwise as provided in, Article 15 hereof.

17.3    Waiver.  No waiver of any default or breach of any covenant by either party hereunder shall be implied from any omission by either party to take action on account of such default if such default persists or is repeated, and no express waiver shall affect any default other than the default specified in the waiver and said waiver shall be operative only for the time and to the extent therein stated.  Waivers of any covenant, term or condition contained herein by either party shall not be construed as a waiver of any subsequent breach of the same covenant, term or condition.  The consent or approval by either party to or of any act by either party requiring further consent or approval shall not be deemed to waive or render unnecessary their consent or approval to or of any subsequent similar acts.

17.4    Accord and Satisfaction.  No payment by Tenant or receipt by Landlord of a lesser amount than the Rent herein stipulated shall be deemed to be other than on account of the Rent, nor shall any endorsement or statement on any check or any letter accompanying any check or payment as Rent be deemed an accord and satisfaction, and Landlord may accept such check or payment without prejudice to Landlord's right to recover the balance of such Rent or pursue any other remedy provided in this Lease.

17.5    Limitation of Landlord's Liability.  The obligations of Landlord under this Lease do not constitute personal obligations of the individual tenants in common comprising Landlord, their members, directors, officers, employees or shareholders. Tenant shall look solely to the Property, and the rents and profits therefrom, for satisfaction of any liability in respect of this Lease and will not seek recourse against the individual tenants in common comprising the Landlord, their members, directors, officers, employees or shareholders, or any of their personal assets for such satisfaction.

17.6    Survival.  The obligations and liabilities of each party which are incurred or accrue prior to the expiration of this Lease or the termination of this Lease or of Tenant's right of possession shall survive such expiration or termination, as shall all provisions by which a party is to provide defense and indemnity to the other party, all provisions waiving or limiting the liability of Landlord, and all attorneys' fees provisions.

17.7     <u>Attorneys' Fees</u>. In the event Landlord requires the services of an attorney in connection with collection of any amount due or enforcing the terms of this Lease whether suit is brought or not, or in the event suit is brought for the recovery of any Rent due under this Lease or the breach of any covenant or condition of this Lease, or for the restitution of the Property to Landlord and/or eviction of Tenant during the Term of this Lease, or after the expiration thereof, Landlord shall be entitled to a reasonable sum for attorneys' fees, witness fees and all other court costs and expenses, including arbitration,  trial, and any appeal.

17.8     <u>Severability</u>. If any term, covenant, condition or provision of this Lease, or the application thereof to any person or circumstance, shall to any extent be held by a court of competent jurisdiction to be invalid, void or unenforceable, the remainder of the terms, covenants, conditions or provisions of this Lease, or the application thereof to any person or circumstance, shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

17.9     <u>Applicable Law</u>. This Lease, and the rights and obligations of the parties hereto, shall be construed and enforced in accordance with the laws of the State of Washington.

17.10     <u>Holding Over</u>. If Tenant, or any of its successors in interest, hold over the Property or any part thereof after the expiration or earlier termination of this Lease <u>without</u> Landlord's prior written consent, such holding over shall constitute and be construed as tenancy at sufferance only, at a monthly rent equal to two hundred percent (200%) of the Base Rent owed during the final month of the Term of this Lease and otherwise upon the terms and conditions in the Lease, so far as applicable. Should Tenant, or any of its successors in interest, hold over the Property or any part thereof after the expiration or earlier termination of this Lease <u>with</u> Landlord's prior written consent, such holding over shall constitute and be construed as a tenancy from month to month only, at a fair market monthly rent as agreed by Landlord and Tenant and otherwise upon the terms and conditions of this Lease, so far as applicable. The acceptance by Landlord of Rent after such expiration or early termination shall not result in a renewal or extension of this Lease. The foregoing provisions of this Section 17.10 are in addition to and do not affect Landlord's right of re-entry or any other rights of Landlord hereunder or as otherwise provided by law. If Tenant fails to surrender the Property on the expiration of this Lease and/or to remove all Tenant's fixture and/or personal property pursuant to Section 9.1 above, Tenant shall indemnify and hold Landlord harmless for, from and against all claims, damages, loss or liability, including without limitation, any claim made by any succeeding tenant resulting from such failure to surrender by Tenant and any attorneys' fees and costs incurred by Landlord with respect to any such claim.

17.11     <u>Rules and Regulations</u>. At all times during the Term, Tenant shall comply with Rules and Regulations for the Property, together with such amendments thereto as Landlord may from time to time reasonably adopt and enforce in a non-discriminatory fashion.

**EXHIBIT "1"**
**Page 39**

17.12    Parking.  During the Term, Tenant will have the nonexclusive right to use two (2) surface level parking stalls within the Property on an unreserved basis as specified from time to time by Landlord and providing reasonable access to the Premises for customers of Tenant, provided, however, that Landlord shall have no obligation to police or enforce Tenant's rights to park in such specified parking stalls.  Tenant shall have the right to reserve one (1) garage stall at no cost through the Property management, which reserved garage stall may be changed from time to time by Property management.  Tenant shall at all times comply and cause its officers, employees and invitees to comply with any parking Rules and Regulations as Landlord may from time to time reasonably adopt.

17.13    Broker; Agency Disclosure.  Each of Tenant and Landlord warrant that it has had no discussions, negotiations and/or other dealings with any real estate broker or agent in connection with the negotiation of this Lease other than the Broker(s) identified in Section 1.1 ("Brokers"), and that it knows of no other real estate broker or agent who is or may be entitled to any commission or finder's fee in connection with this Lease.    Tenant and Landlord agrees to indemnify the other and hold the other harmless from and against any and all claims, demands, losses, liabilities, lawsuits, judgments, costs and expenses (including without limitation, attorneys' fees and costs) with respect to any leasing commission or equivalent compensation alleged to be owing on account of such party's discussions, negotiations and/or dealings with any real estate broker or agent.    This Section 17.13 is not intended to benefit any third parties and shall not be deemed to give any rights to brokers or finders.  No commission(s) or finders fee(s) shall be paid to Tenant, employee(s) of Tenant or any unlicensed representative of Tenant.

17.14    Landlord's Right to Perform.    Upon Tenant's failure to perform any obligation of Tenant hereunder after notice from Landlord pursuant to Section 13.1 above, including without limitation, payment of Tenant's insurance premiums, charges of contractors who have supplied materials or labor to the Property, etc., Landlord shall have the right to perform such obligation of Tenant on behalf of Tenant and/or to make payment on behalf of Tenant to such parties.  Tenant shall reimburse Landlord the reasonable cost of Landlord's performing such obligation on Tenant's behalf, including reimbursement of any amounts that may be expended by Landlord, plus interest at the Default Rate, as Additional Rent.

17.15    Assignment by Landlord.  In the event of a sale, conveyance, or other transfer by Landlord of the Property, or in the event of an assignment of this Lease by Landlord, the same shall operate to release Landlord from any further liability upon any of the covenants or conditions, express or implied, herein contained on the part of Landlord, and from any and all further liability, obligations, costs and expenses, demands, causes of action, claims or judgments arising out of this Lease from and after the effective date of said release.  In such event, Tenant agrees to look solely to the successor in interest of transferor.  Notwithstanding anything in this Lease to the contrary, however, (a) in no event shall Landlord's lender, who may have succeeded to the interest of Landlord by foreclosure, deed in lieu of foreclosure, or any other means, have any liability for any obligation of Landlord to protect, defend, indemnify or hold harmless Tenant or any other person or entity except for those matters arising from the lender's breach of the terms of this Lease after the date of such foreclosure, deed in lieu of foreclosure or any other means, and (b) such

- 29 -

succeeding lender shall have no liability for any representations or warranties of the Landlord contained herein except for those matters arising from the lender's breach of the terms of this Lease after the date of such foreclosure, deed in lieu of foreclosure or any other means.

17.16    Entire Agreement.    This Lease sets forth all covenants, promises, agreements, conditions and understandings between Landlord and Tenant concerning the Property, and there are no covenants, promises, agreements, conditions or understandings, either oral or written, between Landlord and Tenant other than as are herein set forth.  No subsequent alteration, amendment, change or addition to the Lease shall be binding upon Landlord or Tenant unless reduced to writing and signed by Landlord and Tenant.

17.17    Financial Covenants.  At Landlord's request, Tenant shall provide Landlord with current annual financial statements (all such statements shall be prepared in compliance with GAAP standards and certified by Tenant's chief financial officer) setting forth Tenant's financial condition.  Landlord shall not request any such financial statements more than once each calendar year, so long as no Event of Default has occurred.

17.18    Consents.  Whenever the approval or consent of Landlord or Tenant is required under the terms of this Lease, such consent may be given or withheld by Landlord in its sole discretion, unless a different standard of approval is specifically set forth in the particular Section containing that particular consent requirement.

17.19    Exhibits.    Exhibits A through C are attached to this Lease after the signatures and by this reference incorporated herein.

17.20    Time.  Time is of the essence with respect to the performance of every provision of this Lease in which time of performance is a factor.

17.21    Authority.  The individuals signing this Lease on behalf of either Tenant or Landlord hereby represent and warrant that they are empowered and duly authorized to bind to this Lease the party for whom they signed.

17.22    Interpretation.  The parties hereto specifically acknowledge and agree that the terms of this Lease have been mutually negotiated and the parties hereby specifically waive the rule or principle of contract construction which provides that any ambiguity in any term or provision of a contract will be interpreted or resolved against the party that drafted such term or provision.

17.23    Excused Delays.  Except as otherwise set forth in this Section 17.23, neither party shall have liability to the other on account of the following acts (each of which is an "Excused Delay," and jointly all of which are "Excused Delays") which shall include (a) the inability to fulfill, or delay in fulfilling, any obligations under this Lease by reason of strike, lockout, other labor trouble, dispute or disturbance; (b) governmental regulation, moratorium, action, preemption or priorities or other controls; (c) shortages of fuel, supplies or labor; (d)  any failure or defect in the supply, quantity or character of electricity or water furnished to the Property by reason of any requirement, act or omission of the public utility

- 30 -

or others furnishing the Building with electricity or water; or (e) for any other reason, whether similar or dissimilar to the above, or for act of God beyond a party's reasonable control including, but not limited to, a prior tenant's failure to leave the Property at the end of such tenant's term provided that Landlord proceeds to evict such tenant within a reasonable time thereafter. If this Lease specifies a time period for performance of an obligation of a party, that time period shall be extended by the period of any delay in the party's performance caused by any of the events of Excused Delay described herein; provided, that notwithstanding anything to the contrary above, no payment of money (whether as Base Rent, Tenant's Share of Operating Expenses, or any other payment due under this Lease) shall be postponed, delayed or forgiven by reason of any of the foregoing events of Excused Delay.

IN WITNESS WHEREOF, the parties have executed this Lease as of the date first above written.

**LANDLORD:**

Lakeview 6725, L.L.C.,
a California limited liability company

By:    Wells Fargo Bank N.A., Its Authorized Agent

By: _____
Its: _____Senior Vice President_____
[Print Name] _Tom Fitzsimons_____

Its:    Manager


**TENANT:**

The Litigation Practice Group PC,
a California Professional Service Corporation,
duly qualified and registered as a foreign corporation
authorized to do business in the State of Washington


By: _____ - On behalf of and as agent for Litigation Practice Group, PC

[Print Name] Peter M. Schneider

Its:   agent of Litigation Practice Group, PC

- 31 -

**EXHIBIT "1"**
**Page 42**

STATE OF WASHINGTON     )
                                ) §

COUNTY OF KING             )

       I certify that I know or have satisfactory evidence that Peter M. Schneider is the person who acknowledged that he signed this instrument and on oath stated that he was authorized to execute the instrument and acknowledged it as the agent of The Litigation Practice Group PC, a California Professional Service Corporation, to be his free and voluntary act of such party for the uses and purposes mentioned in the instrument.

       Dated: _September 2_ , 2022.

       (SEAL/STAMP)

                       HIROKO SCHNEIDER
                       Print Name:_____
                       NOTARY PUBLIC in and for the state of
                       Washington residing in _Bothell, WA_
                       My appointment expires _Feb 22, 2023_

HIROKO SCHNEIDER
Notary Public
State of Washington
Commission # 124948
My Comm. Expires Feb 22, 2023

**EXHIBIT "1"**
**Page 43**

**EXHIBIT A**

**Legal Description – To be attached**

POR OF NE 1/4 OF NE 1/4 OF SE 1/4 LY ELY & SLY OF PSH # 1 LESS ST TGW
POR NE 1/4 OF SE 1/4 BEG AT SE COR OF SEC TH N 1973.65 FT TH W 30 FT TH S
30 FT TO TPOB TH W 265.6 TH S 175 FT TH E TO W MGN OF 116TH AVE NE TH N
175 FT TO TPOB LESS ST HWY LESS POR FOR RD PER DEED #20000306000427

**EXHIBIT "1"**
**Page 44**

**EXHIBIT B**

**Landlord's Work**

- Replace carpet with Building standard carpet and base trim.

- Patch and paint Suite to Building standard office color.

- Replace current Suite fluorescent light fixtures with Building standard LED lighting fixtures on a one-to-one basis.

- Install a Building standard Suite entry door with a glass relight.

- Landlord will provide data/teleco wiring to the Building "D-mark".

**EXHIBIT "1"**
**Page 45**

**EXHIBIT C**

**Estoppel Certificate**

_____
_____
_____

Re:    Lease   dated   _____,   20__   ("Lease")   by   and   between
_____, L.L.C., a Washington limited liability company ("Landlord"), and
_____ ("Tenant")

Ladies and Gentlemen:

Reference is made to the above-described Lease in which the undersigned is the Tenant.  We understand that you are accepting an assignment of Landlord's rights under the Lease as _____, and we hereby, as a material inducement for you to consummate the transaction, represent that:

1.      There are no modifications amendments, supplements, arrangements, side letters or understandings, oral or written, of any sort, modifying, amending, altering, supplementing or changing the terms of the Lease, except for those attached to this Certificate.

2.      The Lease is in full force and effect, and the Lease has been duly executed and delivered by, and is a binding obligation of, the Tenant as set forth therein.

3.      The undersigned acknowledges (a) that rent on the Lease has been paid up to and including _____, 2_____, (b) that monthly rent during the _____ (_____) years of the term of the Lease is $_____ per month, and (c) that rent has not been paid for any period after _____, 2_____, and shall not, except for any Prepaid Rent as specified in the Lease, be paid for a period in excess of one (1) month in advance.

4.      To the current knowledge of the undersigned, the improvements on the Property are free from defects in design, materials and workmanship and the improvements meet all governmental requirements, including, but not limited to, zoning and environmental requirements.

5.      To the current knowledge of the undersigned, the Lease is not in default, and Landlord has performed the obligations required to be performed by Landlord under the terms thereof through the date hereof.

Dated: _____, 2_____.

- 3 -

**EXHIBIT "1"**
**Page 46**

Very truly yours,

"Tenant"

_____

_____


By:_____
Its:_____

- 4 -

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
870 Roosevelt, Irvine, CA 92620.

A true and correct copy of the foregoing document entitled: **STIPULATION FOR RETURN OF POSSESSION OF PREMISES AFTER REJECTION OF COMMERCIAL LEASE RE: 6725 116TH AVENUE NE, STE 160, KIRKLAND, WA 98033** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **November 6, 2023**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**: On **November 6, 2023**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**DEBTOR – MAIL REDIRECTED TO TRUSTEE**
THE LITIGATION PRACTICE GROUP P.C.
~~17542 17TH ST, SUITE 100~~
~~TUSTIN, CA 92780-1981~~

☐  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL:** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **November 6, 2023**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**VIA PERSONAL DELIVERY:**
**PRESIDING JUDGE'S COPY**
HONORABLE SCOTT C. CLARKSON
UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
RONALD REAGAN FEDERAL BUILDING AND COURTHOUSE
411 WEST FOURTH STREET, SUITE 5130 / COURTROOM 5C
SANTA ANA, CA 92701-4593

**VIA EMAIL:**
**INTERESTED PARTY** WELLS FARGO BANK, N.A.
AS AGENT FOR LAKEVIEW 6725, LLC
C/O ED LUKAS, VICE PRESIDENT
**ed.lukas@wellsfargo.com**

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| November 6, 2023 | Cynthia Bastida | /s/ Cynthia Bastida |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: CONTINUED:

- **ATTORNEY FOR CREDITOR AFFIRMA, LLC and CREDITOR OXFORD KNOX, LLC:** Eric Bensamochan eric@eblawfirm.us, G63723@notify.cincompass.com
- **ATTORNEY FOR CHAPTER 11 TRUSTEE RICHARD A MARSHACK (TR):** Peter W Bowie peter.bowie@dinsmore.com, caron.burke@dinsmore.com
- **ATTORNEY FOR CREDITOR SDCO TUSTIN EXECUTIVE CENTER, INC.:** Ronald K Brown ron@rkbrownlaw.com
- **ATTORNEY FOR CHAPTER 11 TRUSTEE RICHARD A MARSHACK (TR):** Christopher Celentino christopher.celentino@dinsmore.com, caron.burke@dinsmore.com
- **INTERESTED PARTY COURTESY NEF:** Shawn M Christianson cmcintire@buchalter.com, schristianson@buchalter.com
- **INTERESTED PARTY COURTESY NEF:** Randall Baldwin Clark rbc@randallbclark.com
- **INTERESTED PARTY COURTESY NEF:** Leslie A Cohen leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com; clare@lesliecohenlaw.com
- **INTERESTED PARTY COURTESY NEF:** Aaron E. DE Leest adeleest@DanningGill.com, danninggill@gmail.com; adeleest@ecf.inforuptcy.com
- **ATTORNEY FOR INTERESTED PARTY NATIONAL ASSOCIATION OF CONSUMER BANKRUPTCY ATTORNEYS and INTERESTED PARTY NATIONAL CONSUMER BANKRUPTCY RIGHTS CENTER:** Jenny L Doling jd@jdl.law, dolingjr92080@notify.bestcase.com; 15994@notices.nextchapterbk.com
- **ATTORNEY FOR CREDITOR CAROLYN BEECH:** Daniel A Edelman dedelman@edcombs.com, courtecl@edcombs.com
- **ATTORNEY FOR CREDITOR VALIDATION PARTNERS LLC:** William P Fennell william.fennell@fennelllaw.com, luralene.schultz@fennelllaw.com; wpf@ecf.courtdrive.com; hala.hammi@fennelllaw.com; naomi.cwalinski@fennelllaw.com; samantha.larimer@fennelllaw.com
- **ATTORNEY FOR CHAPTER 11 TRUSTEE RICHARD A MARSHACK (TR):** Christopher Ghio christopher.ghio@dinsmore.com, Kristina.Heller@Dinsmore.com
- **ATTORNEY FOR DEFENDANT STRIPE, INC.:** Eric D Goldberg eric.goldberg@dlapiper.com, eric-goldberg-1103@ecf.pacerpro.com
- **ATTORNEY FOR CREDITOR AFFIRMA, LLC; CREDITOR ANAHEIM ARENA MANAGEMENT, LLC; CREDITOR ANAHEIM DUCKS HOCKEY CLUB, LLC; and CREDITOR OXFORD KNOX, LLC:** Jeffrey I Golden jgolden@go2.law, kadele@ecf.courtdrive.com; cbmeeker@gmail.com; lbracken@wgllp.com; gestrada@wgllp.com; golden.jeffreyi.b117954@notify.bestcase.com
- **ATTORNEY FOR CREDITOR DEBT VALIDATION FUND II, LLC; CREDITOR MC DVI FUND 1, LLC; and CREDITOR MC DVI FUND 2, LLC:** Richard H Golubow rgolubow@wghlawyers.com, jmartinez@wghlawyers.com; svillegas@wghlawyers.com
- **INTERESTED PARTY COURTESY NEF:** David M Goodrich dgoodrich@go2.law, kadele@go2.law; dfitzgerald@go2.law; wggllp@ecf.courtdrive.com
- **ATTORNEY FOR CHAPTER 11 TRUSTEE RICHARD A MARSHACK (TR):** D Edward Hays ehays@marshackhays.com, ehays@ecf.courtdrive.com; kfrederick@ecf.courtdrive.com; cmendoza@marshackhays.com; cmendoza@ecf.courtdrive.com
- **ATTORNEY FOR CREDITOR CITY CAPITAL NY:** Alan Craig Hochheiser ahochheiser@mauricewutscher.com, arodriguez@mauricewutscher.com
- **ATTORNEY FOR CREDITOR DEBT VALIDATION FUND II, LLC; CREDITOR MC DVI FUND 1, LLC; and CREDITOR MC DVI FUND 2, LLC:** Garrick A Hollander ghollander@wghlawyers.com, jmartinez@wghlawyers.com; svillegas@wghlawyers.com
- **INTERESTED PARTY COURTESY NEF:** Richard L. Hyde richard@amintalati.com
- **ATTORNEY FOR CREDITOR and PLAINTIFF OHP-CDR, LP and PLAINTIFF PURCHASECO 80, LLC:** Razmig Izakelian razmigizakelian@quinnemanuel.com
- **ATTORNEY FOR DEBTOR THE LITIGATION PRACTICE GROUP P.C.:** Joon M Khang joon@khanglaw.com
- **ATTORNEY FOR INTERESTED PARTY AD HOC CONSUMER CLAIMANTS COMMITTEE:** Ira David Kharasch ikharasch@pszjlaw.com
- **ATTORNEY FOR DEFENDANT GALLANT LAW GROUP:** Meredith King mking@fsl.law, ssanchez@fsl.law; jwilson@fsl.law
- **ATTORNEY FOR COMMITTEE OF UNSECURED CREDITORS:** Nicholas A Koffroth nkoffroth@foxrothschild.com, khoang@foxrothschild.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                        **F 9013-3.1.PROOF.SERVICE**

- **ATTORNEY FOR DEFENDANT MARICH BEIN, LLC:** David S Kupetz David.Kupetz@lockelord.com, mylene.ruiz@lockelord.com
- **INTERESTED PARTY COURTESY NEF:** Christopher J Langley chris@slclawoffice.com, omar@slclawoffice.com; langleycr75251@notify.bestcase.com; ecf123@casedriver.com
- **ATTORNEY DEFENDANT OPTIMUMBANK HOLDINGS, INC.:** Matthew A Lesnick matt@lesnickprince.com, matt@ecf.inforuptcy.com; jmack@lesnickprince.com
- **ATTORNEY FOR DEFENDANT CONSUMER LEGAL GROUP, P.C.; DEFENDANT LGS HOLDCO, LLC; INTERESTED PARTY CONSUMER LEGAL GROUP, P.C.; and INTERESTED PARTY LIBERTY ACQUISITIONS GROUP INC:** Daniel A Lev daniel.lev@gmlaw.com, cheryl.caldwell@gmlaw.com; dlev@ecf.courtdrive.com
- **ATTORNEY FOR INTERESTED PARTY REVOLV3, INC.:** Britteny Leyva bleyva@mayerbrown.com, 2396393420@filings.docketbird.com; KAWhite@mayerbrown.com; ladocket@mayerbrown.com
- **ATTORNEY FOR CREDITOR PHILLIP A GREENBLATT, PLLC:** Michael D Lieberman mlieberman@lipsonneilson.com
- **ATTORNEY FOR CHAPTER 11 TRUSTEE RICHARD A MARSHACK (TR):** Yosina M Lissebeck Yosina.Lissebeck@Dinsmore.com, caron.burke@dinsmore.com
- **ATTORNEY FOR CREDITOR FUNDURA CAPITAL GROUP:** Mitchell B Ludwig mbl@kpclegal.com, kad@kpclegal.com
- **ATTORNEY FOR DEFENDANT HAN TRINH and DEFENDANT JAYDE TRINH:** Kathleen P March kmarch@bkylawfirm.com, kmarch3@sbcglobal.net, kmarch@sbcglobal.net
- **CHAPTER 11 TRUSTEE RICHARD A MARSHACK (TR):** Richard A Marshack (TR) pkraus@marshackhays.com, rmarshack@iq7technology.com; ecf.alert+Marshack@titlexi.com
- **ATTORNEY FOR CHAPTER 11 TRUSTEE RICHARD A MARSHACK (TR):** Laila Masud lmasud@marshackhays.com, lmasud@ecf.courtdrive.com; kfrederick@ecf.courtdrive.com
- **ATTORNEY FOR US TRUSTEE:** Kenneth Misken Kenneth.M.Misken@usdoj.gov
- **INTERESTED PARTY COURTESY NEF:** Byron Z Moldo bmoldo@ecjlaw.com, amatsuoka@ecjlaw.com, dperez@ecjlaw.com
- **INTERESTED PARTY COURTESY NEF:** Alan I Nahmias anahmias@mbn.law, jdale@mbnlawyers.com
- **INTERESTED PARTY COURTESY NEF:** Victoria Newmark vnewmark@pszjlaw.com
- **ATTORNEY FOR US TRUSTEE:** Queenie K Ng queenie.k.ng@usdoj.gov
- **ATTORNEY FOR COMMITTEE OF UNSECURED CREDITORS:** Keith C Owens kowens@foxrothschild.com, khoang@foxrothschild.com
- **ATTORNEY FOR DEFENDANT GREYSON LAW CENTER PC; DEFENDANT HAN TRINH; DEFENDANT JAYDE TRINH; and DEFENDANT SCOTT JAMES EADIE:** Douglas A Plazak dplazak@rhlaw.com
- **ATTORNEY FOR DEFENDANT TOUZI CAPITAL, LLC and DEFENDANT ENG TAING:** Daniel H Reiss dhr@lnbyg.com, dhr@ecf.inforuptcy.com
- **ATTORNEY FOR DEFENDANT CONSUMER LEGAL GROUP, PC:** Ronald N Richards ron@ronaldrichards.com, 7206828420@filings.docketbird.com
- **ATTORNEY FOR CREDITOR MARI AGAPE:** Gregory M Salvato gsalvato@salvatoboufadel.com, calendar@salvatolawoffices.com; jboufadel@salvatoboufadel.com; gsalvato@ecf.inforuptcy.com
- **ATTORNEY FOR CREDITOR AZZURE CAPITAL LLC and CREDITOR HI BAR CAPITAL LLC:** Olivia Scott olivia.scott3@bclplaw.com
- **ATTORNEY FOR CHAPTER 11 TRUSTEE RICHARD A MARSHACK (TR):** Jonathan Serrano jonathan.serrano@dinsmore.com
- **ATTORNEY FOR CREDITOR UNITED PARTNERSHIPS, LLC:** Paul R Shankman PShankman@fortislaw.com, info@fortislaw.com
- **ATTORNEY FOR INTERESTED PARTY MORNING LAW GROUP, PC:** Zev Shechtman zs@DanningGill.com, danninggill@gmail.com; zshechtman@ecf.inforuptcy.com
- **ATTORNEY FOR US TRUSTEE:** Leslie Skorheim leslie.skorheim@usdoj.gov
- **ATTORNEY FOR DEFENDANT BANKUNITED, N.A.:** Howard Steinberg steinbergh@gtlaw.com, pearsallt@gtlaw.com; howard-steinberg-6096@ecf.pacerpro.com
- **ATTORNEY FOR CREDITOR ALTERYX, INC.:** Andrew Still astill@swlaw.com, kcollins@swlaw.com
- **US TRUSTEE:** United States Trustee (SA) ustpregion16.sa.ecf@usdoj.gov
- **ATTORNEY FOR CREDITOR AZZURE CAPITAL LLC and CREDITOR HI BAR CAPITAL LLC:** Sharon Z. Weiss sharon.weiss@bclplaw.com, raul.morales@bclplaw.com, REC_KM_ECF_SMO@bclplaw.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                              **F 9013-3.1.PROOF.SERVICE**

- **ATTORNEY FOR CREDITOR DEBT RELIEF GROUP, LLC:** Johnny White JWhite@wrslawyers.com, jlee@wrslawyers.com

4872-2900-1869, v. 1

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                 **F 9013-3.1.PROOF.SERVICE**