Kathleen P. March, Esq., (CA SBN 80366)
**THE BANKRUPTCY LAW FIRM, PC**
10524 W. Pico Blvd, Suite 212, LA, CA 90064
Phone: 310-559-9224; Fax: 310-559-9133
Email: kmarch@BKYLAWFIRM.com
*Counsel of Record for Greyson Law Center PC*
*on this Motion, and defending adversary proc.*

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA—SANTA ANA DIV.

| | |
|---|---|
| In re<br><br>THE LITIGATION PRACTICE GROUP, P.C.,<br><br>                Debtor. | Bankruptcy Case No. 8:23-bk-10571-SC<br>Chapter 11<br><br>**NOTICE OF MOTION AND MOTION** OF *GREYSON LAW CENTER PC*, FOR AN ORDER GRANTING ALLOWANCE AND PAYMENT OF ADMINISTRATIVE CLAIM, PURSUANT TO 11 U.S.C. §503(b)(1)(A); DECLARATIONS OF HAN TRINH, KATHLEEN P. MARCH, ESQ. AND  DOUGLAS PLAZAK, ESQ., EACH WITH EXHIBITS<br><br>Hearing on this Motion (and on other parties' Motions) for allowance and payment of administrative claim are all set for:<br>Date: January 19, 2024<br>Time:  11:00 a.m.<br>Place:  Courtroom of Bankruptcy Judge Scott Clarkson, by Zoom or in person at:<br>411 West Fourth Street, Courtroom 5C<br>Santa Ana, CA 92701-4593 |

1

2

## **TABLE OF CONTENTS**

3

Notice of Motion…………………………………………………………………....v

4

5

Memorandum of Points and Authorities in Support of *Greyson Law Center Pc's*
Motion for Allowance and Payment of Administrative Claim…………………......1

6

7

I.        The US Supreme Court <u>Fundamental Fairness Rule</u>, Articulated by the Us

Supreme Court, in *Reading Co. v. Brown,* and Its Progeny, Apply Here, to

8

Require Granting *Greyson's* Motion for an Administrative Claim Against

9

LPG's  Bankruptcy Estate, for Damage that Negligence, and Additional

10

Wrongful Conduct,  of Trustee's Attorney Celentino, and Celentino's

11

Field Agents,  Caused to *Greyson,* including Conversion of Greyson's

12

Property, and Unfair Competition against Greyson………………………....1

13

14

15

II.       11 USC §503(b)(1)(A) has Been Held to be Broad Enough to Allow An

Administrative Claim, to be Paid by the Bankruptcy Estate, for Damage

16

Caused  by Wrongful Post-Petition Conduct of Chapter 7 Bankruptcy

17

Trustees………………………………………………………………………....5

18

19

20

III.      Greyson was Deprived of Any Opportunity to Oppose the 5/26/23 Lockout

and Preliminary Injunction Order being Granted against Greyson, Because

21

Trustee's Attorneys Concealed from All Defendants that Trustee was Suing

22

All Defendants, and Concealed Trustee had Moved for the Lockout and

23

Preliminary Injunction Order by Sealed Motion, with No Notice to

24

Defendants …………………………………………………........................7

25

26

27

28

IV.     The Negligent (And Worse) Conduct of Trustee's Attorney Celentino, And
        Celentino's Field Agents, Against Greyson, Entitles Greyson to the
        Administrative Claim Greyson Here Moves For…………………………...........11

V.      Greyson is Owed an Administrative Claim of $300,633, for the 22 of 48
        Greyson Clients Greyson Lost, Due to Negligence of Celentino/His Field
        Agents, of Seizing/Converting 48 Greyson Client Files (which were Greyson
        Property), and Then Delaying, for a Month,  Returning Greyson's Client Files
        to Greyson ……………………………..…………………………….…...17

VI.     Post-petition (after LPG filed Bankruptcy on 3/20/23), Phoenix Law Group—
        Which Celentino Took Over and Operates, as Being an "Alter Ego" of LPG--
        Contracted with Greyson, to Pay Greyson $2,000 per Lawsuit, to Have Greyson
        Lawyers Defend Phoenix Clients, for Phoenix; the $2,000 per Case Fees Total
        $5,134,000, which Phoenix Owes to Greyson, but Which Celentino has
        Wrongfully Refused to Pay to Greyson………………………………….......19

VII.    Conclusion………………………………………………………............22

Declarations of Han Trinh, Douglas Plazak, Esq, and Kathleen P. March, Esq., each
with attached exhibits, are being filed as attachments hereto.

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Cases</u>

3

*In re 800Ideas.com, Inc.*,

4

    496 B.R. 165 (9th Cir. BAP 2013)..........................................................................7

5

*In re Florence Hospital at Anthem, LLC,*

6

    4:13-bk-03201-BMW, 2018 WL 1989470 (Bankr. D. Ariz. 4/26/18).............2-3

7

*In re Kadjevich*,

8

    220 F.3d 1016 (9th Cir. 2000)..........................................................................2-4

9

*In re Megafoods Stores, Inc*,

10

    163 F.3d 1063 (9th Cir. 1998)..........................................................................4-6

11

*In re Metro Fulfillment, Inc.,*

12

    294 B.R. 306 (9th Cir. BAP 2003)......................................................................7

13

*In re Ybarra*,

14

    424 F.3d 1018 (9th Cir. 2005)..........................................................................2, 4

15

*Reading Co. v. Brown,*

16

    391 U.S. 471, 88 S.Ct. 1759 (1968)........................................1-2, 4, 6, 11, 16, 24

17

18

<u>Statutes</u>

19

11 USC §102(3)....................................................................................................6

20

11 USC §503(b)(1)(A)....................................................................1-2, 4-6, 15, 23-25

21

28 USC §959(b)....................................................................................................3

22

23

24

25

26

27

28

## NOTICE OF MOTION

**TO CHAPTER 11 TRUSTEE RICHARD MARSHACK, AND TO THE OFFICE OF THE UNITED STATES TRUSTEE, AND TO ALL OTHER PARTIES IN INTEREST, AND TO COUNSEL OF RECORD FOR ALL OF THESE PARTIES:**

**PLEASE TAKE NOTICE** that on January 19, 2024 at 11:00 a.m., in the United States Bankruptcy Court for the Central District of California, Santa Ana Division, either in person at 411 West Fourth Street, Courtroom 5C, Santa Ana, CA 92701-4593 or by Zoom, to be determined by the Court, *Greyson Law Center PC* ("Greyson") will and does move for an Order granting allowance and payment of Greyson's herein Motion for allowance and payment of  Greyson's administrative claim, pursuant to 11 U.S.C. §503(b)(1)(A).

**PLEASE TAKE FURTHER NOTICE** that the Motion is based on this Notice, the attached Memorandum of Points & Authorities, the attached Declaration of Han Trinh, with attached exhibits,  the attached Declaration of Kathleen P. March, Esq., with attached exhibits, and the attached Declaration of Douglas Plazak, Esq., with attached exhibits; plus on any additional matter of which the Court may take judicial notice, including pleadings and documents filed in this case.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to Local Bankruptcy Rule 9013-1(f), that no later than fourteen (14) days before the above stated hearing date set forth above,  any Response/Opposition to the Motion must be written and

1  must be filed in Bankruptcy Court, CD CA, at 411 W. Fourth Street, Santa Ana,

2  California, 92701, and must be served upon counsel for Han Trinh as listed on the

3

4  upper-left hand of the first page of this Notice and Motion.  A copy of

5  Response/Opposition must be delivered to chambers of the Hon. Scott Clarkson,

6  United States Bankruptcy Court, 411 W. Fourth Street, Suite 5130, Santa Ana,

7

8  California, 92701-4593, if over 25 pages long.

9          **PLEASE TAKE FURTHER NOTICE** that the failure to respond in writing

10  by the above stated deadline may be deemed by the Court to be a lack of objection to

11

12  the relief requested in the Motion.

13  Dated: November 17, 2023                    THE BANKRUPTCY LAW FIRM, PC

14                                                      __/s/ Kathleen P. March_____
15                                                      By: Kathleen P. March, Esq
16                                                      *Attorneys for  Greyson Law Center, PC*
                                                        *on this Motion*
17

18

19

20

21

22

23

24

25

26

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
***GREYSON LAW CENTER PC'S*** **MOTION FOR ALLOWANCE AND**
**PAYMENT OF ADMINISTRATIVE CLAIM**

The controlling law on Greyson Law Center PC's ("Greyson") Motion for

Allowance and Payment of Administrative Claim, is both the US Supreme Court

"fundamental fairness" doctrine, articulated in the US Supreme Court *Reading Co. v.*

*Brown* case and in *Brown'*s progeny, plus is 11 USC §503(b)(1)(A), interpreted in light

of the US Supreme Court "fundamental fairness" doctrine.

**I.    THE US SUPREME COURT <u>FUNDAMENTAL FAIRNESS</u> RULE,**
**ARTICULATED BY THE US SUPREME COURT, IN *READING CO. v.***
***BROWN,* AND ITS PROGENY,  APPLY HERE, TO REQUIRE**
**GRANTING *GREYSON'S* MOTION FOR AN ADMINISTRATIVE**
**CLAIM AGAINST LPG'S  BANKRUPTCY ESTATE, FOR DAMAGE**
**NEGLIGENCE, AND ADDITIONAL WRONGFUL CONDUCT,  OF**
**TRUSTEE'S ATTORNEY CELENTINO, AND CELENTINO'S FIELD**
**AGENTS,  CAUSED TO *GREYSON,* INCLUDING CONVERSION OF**
**GREYSON PROPERTY, AND UNFAIR COMPETITION**

The US Supreme Court first articulated the **<u>fundamental fairness rule</u>**, in the

US Supreme Court *Reading Co. v. Brown,* 391 U.S. 471, 88 S.Ct. 1759 (1968).  In

*Reading*, the US Supreme Court held that "damages resulting from the negligence of a

receiver acting within the scope of his authority as receiver give rise to 'actual and

necessary costs' of a Chapter XI arrangement."  In *Reading*, the US Supreme held that

tort damage, to victims of a fire caused by the Chapter 11 receiver's negligence, was

---

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

entitled to administrative expense priority, despite the fact that victims did not transact

with the receiver, nor did the estate benefit from the event.

Today, it is accepted that the **fundamental fairness rule** holds that a trustee is

liable for damage the trustee causes to a third party, in trustee's administration of a

bankruptcy case.

Ninth Circuit Court of Appeals cases hold that this fundamental fairness

doctrine survived into the Bankruptcy Code, in 11 USC §503 governing

administrative claims, as an **exception** to Section 503's requirement that the

bankruptcy estate must benefit from post-petition conduct, for an administrative claim

to be allowed.

The **fundamental fairness rule** has been followed, and expanded, by Ninth

Circuit Court of Appeals cases that cite *Reading Co. v.  Brown*.

*In re Florence Hospital at Anthem, LLC*, 4:13-bk-03201-BMW, 2018 WL

1989470 at *9 (Bankr. D. Ariz. 4/26/18) cites three Ninth Circuit Court of Appeals

cases—*Kadjevich*, *Megafoods* and *Ybarra*—where the Ninth Circuit Court of Appeals

recognizes that the US Supreme Court *Reading* case fundamental fairness rule

survived from the Bankruptcy Act, into the present Bankruptcy Code, as an **exception**

to the 11 USC §503(b)(1) requirement that for a party to be granted an administrative

claim, the claim must have benefitted the bankruptcy estate.  Plus, *Florence Hospital,*

2018 WL 1989470 at *9, states the Ninth Circuit Court of Appeals not only follows,

but has **expanded**, the US Supreme Court *Reading* case fundamental fairness rule:

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

"**Basis for Administrative Expense Claims**

In most cases, two requirements must be met under Ninth Circuit case law in order to establish an actual and necessary administrative expense under § 501(b)(1)(A) of the Code:  (1) **"the claim must have arisen from a transaction with the debtor in possession[,]"** and (2) the claim **"must directly and substantially benefit the estate."** *In re 800Ideas.com, Inc.,* 496 B.R. 165, 175 (B.A.P. 9th Cir. 2013). However, in *Reading Co. v. Brown*, the U.S. Supreme Court carved out an exception to the traditional actual and necessary requirements. 391 U.S. 471 (1968); *see also In re Ybarra*, 424 F.3d 1018, 1025 n.10 (9th Cir. 2005) (construing *Reading* as "determin[ing] that an award of tort damages to victims of a fire caused by the Chapter 11 receiver's negligence was entitled to administrative expense priority, despite the fact that victims did not transact with the receiver, nor did the estate benefit from the event"). **Although *Reading* was decided under the Bankruptcy Act, it survived the enactment of the Bankruptcy Code and is recognized by the Ninth Circuit**. *E.g. In re Kadjevich*, **220 F.3d 1016, 1019 (9th Cir. 2000)**; *In re Megafoods Stores, Inc.*, 163 F.3d 1063, 1071 (9th Cir. 1998). Under the *Reading* exception, **as expanded by the Ninth Circuit**, a debtor-in-possession's violation of 28 U.S.C. § 959(b) can, under certain circumstances, give rise to an administrative claim for damages. *See In re Megafoods Stores, Inc.*, 163 F.3d at 1072; *In re 800Ideas.com, Inc*, 496 B.R. at 177–78." [bold/underline added for emphasis]

*Florence Hospital,* at \*9 cites 28 USC §959(b), which requires a bankruptcy trustee or receiver to:

"manage and operate the property in [its] possession ... according to the requirements of the valid laws of the State in which such property is situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof."

The Ninth Circuit case, *In re Kadjevich*, 220 F.3d 1016, 1019 (9th Cir. 2000) states:

"In addition to those kinds of 'standard' administrative expenses, **tort claims based on a trustee's post-petition negligence** are granted administrative-

1

2

3

4

expense priority. *See Reading Co. v. Brown,* 391 U.S. 471, 88 S.Ct. 1759, 20 L.Ed.2d 751 (1968). Such claims are deemed 'ordinarily incident to [the] operation of a business," *id.* at 483, 88 S.Ct. 1759, and are granted priority status so that the victims of a reorganizing business' torts will be compensated ahead of the creditors who sought reorganization." [bold/underline added for emphasis]

5

The Ninth Circuit case, *In re Ybarra*, 424 F.3d 1018, 1025 n.10 (9th Cir. 2005),

6

7

succinctly summarizing controlling law,  at Footnote 10, as follows:

8

9

10

11

12

13

14

15

"10. The Supreme Court carved out an exception to this "post-petition transaction requirement" in *Reading v. Brown,* 391 U.S. 471, 88 S.Ct. 1759, 20 L.Ed.2d 751 (1968). *Abercrombie,* 139 F.3d at 758. There, the Court determined that an award of tort damages to victims of a fire caused by the Chapter 11 receiver's negligence was entitled to administrative expense priority, despite the fact that victims did not transact with the receiver, nor did the estate benefit from the event. *Reading,* 391 U.S. at 485, 88 S.Ct. 1759. In the interests of "fairness to all persons having claims against the insolvent," *id.* at 477, 88 S.Ct. 1759, the Court held that **tort claims arising post-petition were "actual and necessary expenses" of preserving the estate**. *Id.* at 482, 485, 88 S.Ct. 1759." [bold/underline added for emphasis]

16

17

The Ninth Circuit case *In re Megafoods Stores, Inc*., 163 F.3d 1063, 1071 (9th

18

Cir. 1998) states:

19

20

21

22

23

24

25

26

27

28

"In analyzing § 503 and interpreting what may constitute an administrative expense, the Supreme Court in *Reading Co. v. Brown,* 391 U.S. 471, 88 S.Ct. 1759, 20 L.Ed.2d 751 (1968), held that "damages resulting from the negligence of a receiver acting within the scope of his authority as receiver give rise to 'actual and necessary costs' of a Chapter XI arrangement." *Id.* at 485, 88 S.Ct. at 1767. Following this broader interpretation of § 503(b), the Ninth Circuit found that "the use of a form of the word 'include' is significant, and generally thought to imply that terms listed immediately afterwards are an inexhaustive list of examples, rather than a bounded set of applicable items." *In re Mark Anthony Constr., Inc.,* 886 F.2d 1101, 1106 (9th Cir.1989) (citations omitted). The opinion in *Reading* not only survived the later enactment of the Bankruptcy Code of 1978, but has been expanded by lower courts. *See Matter of Copeland,* 991 F.2d at 239 (citing to *Yorke v. NLRB,* 709 F.2d 1138, 1143 (7th Cir.1983) (holding that those

injured during the trustee's administration of an estate are **entitled to an administrative priority regardless of whether their injury was caused by a tort or other wrongdoing**) and *In re Charlesbank Laundry, Inc.,* 755 F.2d 200, 202 (1st Cir.1985) (finding that damages to plaintiffs in the form of a civil compensatory fine and attorney's fees resulting from a debtor's violation of an injunction constitute an administrative claim)); *see also In re Abercrombie,* 139 F.3d 755, 758 (9th Cir.1998)." [bold/underline added for emphasis]

The *Reading* fundamental fairness rule applies here, to require granting the **$300,633** portion of Greyson's herein Motion for allowance and payment of administrative claim. (briefed at **V**. infra),

Regular 11 USC §503(b)(1)(A) analysis applies here, to require granting the **$5,134,000** portion of Greyson's Motion for allowance and payment of administrative claim,  for Greyson performing essential  post-petition work, pursuant to a post-petition contract,  for Phoenix Law Center (the alter ego of debtor LPG), benefitting Phoenix/LPG, done at a very reasonable price of $2,000 per lawsuit. (briefed at **VI**. infra.

## II.      11 USC §503(b)(1)(A) HAS BEEN HELD TO BE BROAD ENOUGH TO ALLOW AN ADMINISTRATIVE CLAIM, TO BE PAID BY THE BANKRUPTCY ESTATE, FOR DAMAGE CAUSED  BY WRONGFUL POST-PETITION CONDUCT OF CHAPTER 7 BANKRUPTCY TRUSTEES

Pursuant to the Ninth Circuit Court of Appeals cases cited in I., supra, the "including" language of 11 USC §503(b)(1)(A) has been interpreted as being broad enough to obligate bankruptcy estate to pay a non-debtor party for damage trustee's

administration of the bankruptcy estate causes the non-debtor party, pursuant to the

US Supreme Court *Reading* case **fundamental fairness rule**.

11 USC §503(b)(1)(A) states:

"(b) After notice and a hearing, there shall be allowed administrative expenses,
other than claims allowed under section 502(f) of this title, including—
(1)(A) the actual, necessary costs and expenses of preserving the
estate **including** ... [list of various specific items]."
[emphasis added]

The word "including" signifies that the list of items following the word "including" are

just examples, and are **not** the only items for which a priority claim may be granted.

11 USC §102(3), confirms this.  Section 102(3), which sets forth various rules of

construction for words used in the Bankruptcy Code, states:

"(3) "includes" and "including" are **not limiting**;" [emphasis added]

Various §503 cases have pointed out that because of the "including" wording of **§**503,

that administrative claims are **NOT** limited to the specific items enumerated in

§503(b).  E.g. *In re Megafoods Stores, Inc*, 163 F.3d 1063, 1071 (9th Cir. 1998). In

*Megafoods*, the Ninth Circuit Court of Appeals refers to the US Supreme Court

*Reading* decision, and states:

"In analyzing §503 and interpreting what may constitute an administrative
expense, the Supreme Court in *Reading Co. v. Brown*, 391 US 471, 88 S.Ct.
1759, 20 L.Ed. 2d 759 (1968), held that 'damages resulting from the negligence
of a receiver acting within the scope of his authority as receiver give rise to
"actual and necessary costs" of a Chapter XI arrangement.' *Id.* at 485, 88 S.Ct.
at 1767." Following this broader interpretation of §503(b), the Ninth Circuit
found that 'the use of the word "include" [in 503(b)] is significant, and

generally thought to imply that terms listed immediately afterwards are an inexhaustive list of examples, rather than a bounded set of applicable items.' *In re Mark Anthony Constr., Inc.*, 886 F.2d 1101, 1106 (9th Cir. 1989)."

There are several reported cases where administrative expense claims have been made, in Chapter 7 cases, seeking allowance and payment of administrative expense claims for **damage caused to the §503 applicant, by wrongful post-petition conduct (such as negligence) of Chapter 7 bankruptcy trustees**, in Chapter 7 cases. E.g., *In re 800Ideas.com, Inc.*, 496 B.R. 165 (9th Cir. BAP 2013); *In re Metro Fulfillment, Inc.,* 294 B.R. 306, 309 (9th Cir. BAP 2003).

**III.    GREYSON WAS DEPRIVED OF ANY OPPORTUNITY TO OPPOSE THE 5/26/23 LOCKOUT AND PRELIMINARY INJUNCTION ORDER BEING GRANTED AGAINST GREYSON, BECAUSE TRUSTEE'S ATTORNEYS CONCEALED FROM ALL DEFENDANTS THAT TRUSTEE WAS SUING ALL DEFENDANTS, AND CONCEALED TRUSTEE HAD MOVED FOR THE LOCKOUT AND PRELIMINARY INJUNCTION ORDER BY SEALED MOTION, WITH NO NOTICE TO DEFENDANTS**

**Exhibit D** to Declaration of Kathleen P. March, Esq. hereto is a true and correct copy, downloaded from pacer, of the 5/26/23 lockout and preliminary injunction Order [dkt.13 in the adversary proceeding docket].  Trustee obtained that Order, **Exhibit D**, without giving Greyson any opportunity to oppose/defend:  Trustee deprived Greyson from defending, because Trustee did **not** serve his adversary proceeding on Greyson or on any other defendant, until well after Trustee moved for

and obtained that Lockout and preliminary injunction order. (March Decl.)  **Exhibit C** to March Decl. is the adversary proceeding docket, and shows no defendants were served with the adversary proceeding complaint until well after Trustee moved for and obtained the 5/26/23 lockout and preliminary injunction order against many defendants, including *Greyson.*

Trustee obtained that Order based on trustee's **erroneous allegation** that *Greyson* was an alter ego of debtor LPG.  (March Decl. hereto).

But Greyson was NOT an alter ego of debtor LPG.  (Han Trinh Decl. hereto). Greyson was a **competitor** of LPG (Han Trinh Decl. hereto). Greyson being a competitor of LPG is the polar opposite of Greyson being an alter ego of LPG.  (Han Trinh Decl. hereto).

Trustee Marshack's attorney Celentino admitted, at the hearing held 6/12/23, that **Greyson was NOT the alter ego of debtor LPG**.  **Exhibit G** to Declaration of Kathleen P. March Esq. is the full 6/12/23 hearing transcript; see page 33 bottom to page 34 of the transcript, where Celentino admits that Greyson is **not** the alter ego of debtor LPG.  The 5/26/23 Lockout and Preliminary Injunction Order is **Exhibit D** to March Decl.  The adversary proceeding docket is **Exhibit C** to March Decl.

The Lockout and Preliminary Injunction Order may have been proper as to entities that were alter egos of debtor LPG.  But the Lockout and Preliminary Injunction Order was obtained by Trustee against Greyson, due to **negligent error by Trustee as to Greyson**, of Trustee alleging, **in error**, that Greyson was an alter ego of

LPG, when Greyson was not an alter ego of LPG, but rather was a **competitor** of

LPG, which was severely damaged by the Lockout order and preliminary injunction

against Greyson, and by the **inexcusably negligent several months delay** of

Trustee's attorneys in undoing the lockout of Greyson from Greyson's offices, and of

undoing the seizure of Greyson's property, and locking Greyson out of Greyson's

emails, LUNA client management system software, website domain, etc., things

Trustee's attorney Celentino had done,  damaging Greyson.  (Han Trinh Decl.).

Han Trinh's Declaration hereto explains that on 6/2/23, Celentino and his field

agents locked Han and Jayde Trinh, who were Greyson's head administrators, and

other Greyson personnel, out of Greyson's offices, seizing Greyson's client files,

which were Greyson's property.

In addition, on 6/2/23, **cut off Greyson's access to Greyson's client files and

records**, **froze Greyson's bank accounts,  froze Greyson from using its payment

processors, froze Greyson's access to Greyson's email, froze Greyson out of its

own website, and diverted Greyson's US mail, etc**.  (Han Trinh Declaration hereto

explains all these things that Trustee's attorneys/field agents did to Greyson).

As March's declaration attaches the adversary proceeding pacer docket as

**Exhibit C**, and explains that the docket/pleadings Trustee filed, establishes that

Trustee's attorneys **concealed** what they were doing from the many defendants

(including Greyson) sued in Trustee's adversary proceeding, until well after Trustee

obtained the 5/26/23 Lockout and Preliminary Injunction Order.

Trustee's concealment of Trustee's adversary proceeding, motion for Lockout

Order and preliminary injunction **deprived** Greyson and the other defendants from

being able to protect themselves by appearing and opposing Trustee's Motion for the

Lockout and Preliminary Injunction Motion.  (March Declaration hereto).

The pacer docket shows Trustee Marshack filed his adversary proceeding on

5/25/23, and filed his Motion for lockout and preliminary injunction against

defendants (including Greyson) on that same day, 5/25/23.  (pacer docket is **Exhibit C**

to March Decl.).  Along with his Motion, Trustee filed a motion to seal his Motion

(motion to seal is **Exhibit E** to March Decl., saying in the Motion to seal that Trustee

didn't want defendant Diab to know what Trustee was doing.  Obviously Trustee

didn't want any of the defendants, including Greyson, to know what Trustee was

doing, because none of them were served.  The Bankruptcy Court granted Trustee's

Motion to seal (Order sealing Motion is **Exhibit F** to March Decl. hereto).

The "evidence" against Greyson, in Trustee's motion for Lockout and

Preliminary Injunction order was inadequate, mainly inadmissible hearsay. (March

Decl**). As Trustee counsel Celentino later admitted, at the 6/12/23 Court hearing,**

**Greyson was  NOT an alter ego of LPG**.  (Transcript is **Exhibit G** to March Decl).

But Greyson, not having be served with anything, had no opportunity to defend

itself, before the Court granted the  Lockout and Preliminary Injunction Order as to

Greyson, on 5/26/23.   (March Decl., Han Trinh Decl.).

By proceeding with no notice to Greyson, Trustee **assumed the risk** that

Greyson would be "collateral damage" in the Lockout and Preliminary Injunction

Order.  (March Decl.).  The US Supreme Court *Reading Co* fundamental fairness

doctrine requires the LPG bankruptcy estate to pay for the damage Trustee did to

Greyson by proceeding with no notice to Greyson, and giving Greyson no opportunity

to defend, and by obtaining the Lockout and Preliminary Injunction order against

Greyson, by making the false allegation that Greyson was an alter ego of LPG, when

Trustee thereafter, on 6/12/23 admitted Greyson was NOT an alter ego of LPG, and by

taking **two months** to even partially undo the lockout and preliminary injunction as to

Greyson, which Trustee should have undone, on 6/12/23. (March Decl, Han Trinh

Decl).

## IV.    THE NEGLIGENT (AND WORSE) CONDUCT OF TRUSTEE'S
   ATTORNEY CELENTINO, AND CELENTINO'S FIELD AGENTS,
   DAMAGING  GREYSON, ENTITLES GREYSON TO THE
   ADMINISTRATIVE CLAIM GREYSON HERE MOVES FOR

Negligence of a trustee (here by Trustee Marshack's attorney Christopher

Celentino, and Celentino's field agents) that causes damage to a non-debtor Greyson,

entitles Greyson to the administrative claim here moved for.

But here, there was more than just negligence, because Celentino's refusal and

delay to return Greyson's client files, constituted **conversion** of Greyson's client files,

and Celentino's refusal, from **6/13/23 to date this Motion if filed**, to restore

Greyson's access to Greyson's LUNA account, which was Greyson's client

---

relationship management software, which Greyson used to track and manage

Greyson's clients,  is more than just negligent.

Greyson is a direct competitor of debtor LPG.  (Han Trinh Declaration hereto).

Trustee Marshack was in charge of debtor LPG, and the conduct by Trustee's

Celentino and Celentino's field agents, damaging Greyson, is not just negligence.

That conduct constitutes **unfair competition**  against Greyson—by LPG, a **direct**

**competitor of Greyson**.   (Declaration of Kathleen P. March, Esq.  hereto;

Declaration of Douglas Plazak, Esq. hereto).

Trustee's attorney Celentino was at fault from the start:  Celentino, by Trustee's

Emergency Motion filed under seal, with no notice to Greyson or any other alleged

"alter ego" of debtor LPG, obtained the 5/26/23 Lockout and Preliminary Injunction

Order against Greyson, based on Trustee's declarants **falsely alleging** that Greyson

was an alter ego of debtor LPG; when Greyson was **not** an *"alter ego"* of LPG, but

instead was a **direct competitor of LPG**.  (March Decl, per Trustee's Motion for

lockout and preliminary injunction against Greyson and other entities, Han Trinh

Declaration).

That lockout order and preliminary injunction was executed on Greyson by

Celentino and his field agents on 6/2/23,  who locked Greyson's administrators (Han

and Jayde Trinh), and other Greyson personnel, out of Greyson's offices, and who

seized Greyson's client files, which were Greyson's property. (Han Trinh Declaration

hereto) In addition, on 6/2/23, Celentino/his field agents froze Greyson's bank

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

account, froze Greyson's payment processing account (which processed payments from Greyson's clients), froze Greyson out of Greyson's email accounts, froze Greyson out of Greyson's website domain. (Han Trinh Decl. hereto).   The things Celentino and the field agents did almost completely shut down Greyson. (Han Trinh Decl. hereto).

Then, at the Court hearing held 6/12/23, Trustee's attorney Celentino admitted Greyson was **not** an alter ego of LPG. (March Esq., Decl. attaching, as **Exhibit G**, the relevant pages of 6/12/23 court transcript; Douglas Plazak, Esq. Declaration).

But even though Trustee's attorney admitted, on 6/12/23, that Greyson was not an alter ego of LPG, Celentino/field agents **NEVER, to present,** returned to Greyson, access to Greyson's own emails, which Trustee had locked Greyson out of, on 6/2/23. (Han Trinh Decl). When Han asked Celentino to let Greyson access Greyson's own emails, Celentino told Han that Greyson would have to buy its emails from Celentino, if Greyson wanted to get those emails back.

Because Celentino only obtained the lockout and preliminary injunction order against Greyson, by the FALSE allegations that Greyson was an alter ego of Greyson, Celentino had a duty to release the items he had frozen, promptly, after the 6/12/23 hearing, but did not do so. (Han Trinh Decl.).

But instead of taking steps to undo the—obtained on false allegations-- Lockout and Preliminary Injunction Order as to Greyson on 6/13/23, **after the 6/12/23 hearing,** Celentino/his field agents increased the damage to Greyson, by seizing

1
2
3
4

Greyson's LUNA account, and locking Greyson out of Greyson's LUNA account, which was Greyson's client management relationships software, which Greyson used to manage all Greyson's clients.  (Han Trinh Decl.).

5
6
7
8
9
10

Despite Greyson's then attorney Douglas Plazak, Esq., (see Plazak Decl. hereto) immediately requesting Celentino to restore Greyson's access to Greyson's LUNA software/client data base, Celentino/his field agents have NEVER, to present, restored Greyson's access to Greyson's LUNA software /client data base.  (Plazak Decl., Han Trinh Decl.).

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Celentino did not allow Greyson to access Greyson's LUNA account until 7/7/23 (Han Decl.). But from when Celentino seized Greyson's LUNA account, and locked Greyson out of it, on 6/12/23, until 7/7/23,  Celentino and his field agents were able to access Greyson's complete client data base, while preventing Greyson from accessing Greyson's client base.  (Han Trinh Decl.).  That conduct by Celentino and his field agents is negligent, but it is more than negligent, it is **conversion** of Greyson assets, and is **unfair competition** by debtor LPG, against Greyson, a direct competitor of LPG.  Giving LPG access to Greyson's client base, while keeping Greyson  locked out of Greyson's emails and LUNA account,  made it impossible for Greyson to compete with LPG, which was being run by Celentino, as the alter ego of LPG. (Han Trinh Decl.; March Decl.).

26
27
28

**Negligence**, without more,  entitles Greyson to be granted allowance, and

payment, of Greyson's $300,633  administrative claim here moved for, to be paid by

the LPG bankruptcy estate, as here moved for.

Greyson's $5,134,000 administrative expense claim, here moved for, is for

post-petition services, i.e., services Greyson attorneys performed for LPG's alter ego,

Phoenix, per contract between Phoenix and Greyson, that was entered into and

performed **after** 3/20/23, the date on which LPG filed bankruptcy, performed at

reasonable cost, benefitting Phoenix/LPG. (Han Trinh Decl.)  That part of Greyson's

claim is a standard 11 USC 503(b)(1)(A) claim.

Granting the lockout order and preliminary injunction against entities (Phoenix

Law Group, Consumer Law Group) that actually were alter egos of LPG,  protected

the LPG bankruptcy estate.  But as Greyson was NOT an alter ego of LPG.  (Han

Decl, Celentino admission at 6/12/23 hearing).

It was **negligent** of Trustee's attorney, Celentino, to obtain the 5/26/23 lockout

order and preliminary injunction against Greyson, based on the **false allegation** that

Greyson was an alter ego of LPPG.  (March Decl.).  I was **further negligence**  that

Celentino/his field agents, to **failed to promptly take steps to undo the damage** the

lockout order and preliminary injunction were causing to Greyson.  (March Decl.,

Plazak Decl.).  It was intentional misconduct that Celentino seized and locked

Greyson out of Greyson's LUNA account and data base, which Greyson and Greyson

attorneys used to service Greyson's clients, by Celentino—**after** the 6/12/23 hearing

where Celentino admitted Greyson was NOT an alter ego of LPG—seized and froze

Greyson's LUNA account and data, and despite request, did not allow Greyson to re-

access Greyson's LUNA account and data, until 7/7/23.  (March Decl.)

The things Celentino and his field agents did to Greyson were unfair

competition by LPG and LPG's alter ego Phoenix, against Greyson.  (March Decl.)

Pursuant to the US Supreme Court *Reading* case fundamental fairness doctrine, the

Court must properly grant Greyson an administrative claim, as here moved for, to

have the bankruptcy estate compensate Greyson for the damage Trustee's attorney

Celentino, and Celentino's field agents,  caused to Greyson.  (Trinh Decl., March

Decl.).

On 6/12/23, Trustee amended his adversary proceeding complaint, to no longer

allege Greyson was an alter ego of LPG, but alleged Greyson had received fraudulent

transfers.  (March Decl.; Trustee's amended Complaint, filed 6/15/23, is dkt.62  on

adversary proceeding docket that is Exhibit to March Decl.).  However, fraudulent

transfer allegations would not have entitled Trustee to lockout Greyson, or to seize

Greyson's assets (including Greyson's client files and Greyson's computers, all of

which were Greyson assets) or to freeze/lock Greyson out of Greyson's bank account,

payment processor, emails, LUNA client management system, or website; or to divert

Greyson's US mail to Celentino.  (March Decl. hereto)   The only way Trustee got the

5/26/23 lockout order and preliminary injunction against Greyson was by the false

allegation that Greyson was an alter ego of LPG.  (March Decl.)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## V.    GREYSON IS OWED AN ADMINISTRATIVE CLAIM OF $300,633,

**FOR THE 22 OF 48 GRESYON CLIENTS GREYSON LOST, DUE TO**

**NEGLIGENCE OF CELENTINO/HIS FIELD AGENTS, OF**

**SEIZING/CONVERTING 48 GREYSON CLIENT FILES (WHICH**

**WERE GREYSON PROPERTY), AND THEN DELAYING, FOR A**

**MONTH,  RETURNING GREYSON'S CLIENT FILES TO GREYSON**

The Court should grant Greyson a **$300,633** administrative claim,  representing

the fees Greyson, lost because Greyson lost 22 of 48 Greyson clients, due to attorney

Celentino's  field agents seizing 48 Greyson client files—which were Greyson

property—from Greyson's offices, on 6/2/23, when they locked Greyson out of

Greyson's offices, and then **delaying a full month**, despite demand for return, before

returning Greyson's 48 client files to Greyson. (Han Trinh Decl. hereto, which

explains how the $300,633 figure is calculated; Plazak Decl. hereto, that he requested

files be returned immediately).  Celentino's field agents seizing, and holding

Greyson's 48 client files for a month, was **negligent**, and constituted **conversion** of

Greyson's property, and unfair competition against Greyson.   (Han Trinh Decl.

hereto).

Celentino's field agents seizing the 48 Greyson client files, and refusing to

return them for a month, despite Greyson's request that Greyson's files be returned to

Greyson, **caused Greyson to lose 22 of those clients**, because Greyson was

**prevented for that month**, from contacting the 48 Greyson clients, both because

1
2
3
4
5
6
7
8
9

Trustee's field agents seized the 48 Greyson's client files, and because during the

same month, Celentino and his field agents had locked Greyson and its attorneys out

from using Greyson's emails, and on 6/12/23 had locked Greyson and Greyson's

attorneys out from using Greyson's LUNA client management relationship software

and account, which Greyson and Greyson attorneys used to manage Greyson's clients.

(All attested to in Han Trinh Decl. hereto).  Celentino's improper conduct and

improper delay caused Greyson to lose the 22 high fee clients of the 48 clients.

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

**Exhibit HH** (double h) to Han's Declaration hereto lists the 22 clients Greyson

lost, and lists the dollar amount of fees which each of the 22 clients would have paid

Greyson.  The fees the 22 clients would have paid Greyson adds up to $300,633, and

which is the $300,633 Celentino's improper conduct caused Greyson to lose, mainly

to Phoenix (the alter ego of LPG, which Celentino is running).  **Exhibit II** (double i)

to Han's Declaration lists the 24 low fee clients that Phoenix did not take.  Obviously

Celentino gave Phoenix access to the 48 Greyson client files, during Celentino's

month long delay in returning Greyson's 48 client files to Greyson, and Phoenix took

the 22 high fee clients, during the month-long period in which Celentino's actions

prevented  the clients from contacting Greyson, and preventing Greyson from

contacting the clients, making it easy for Phoenix to take Greyson's "high fee" clients.

(March Decl., Han Decl.)

26
27
28

## VI.    POST-PETITION (AFTER LPG FILED BANKRUPTCY ON 3/20/23),
PHOENIX LAW GROUP—WHICH CELENTINO TOOK OVER AND

---

1
2
3
4
5
6

**OPERATES, AS BEING AN "ALTER EGO" OF LPG--CONTRACTED WITH GREYSON, TO PAY GREYSON $2,000 PER LAWSUIT, TO HAVE GREYSON LAWYERS DEFEND PHOENIX CLIENTS, FOR PHOENIX; THE $2,000 PER CASE FEES TOTAL $5,134,000, WHICH PHOENIX OWES TO GREYSON, BUT WHICH CELENTINO HAS WRONGFULLY REFUSED TO PAY TO GREYSON**

7
8
9
10
11
12
13

Greyson is entitled to be granted an administrative claim of **$5,134,000**, for the $2,000 per case which Phoenix Law Center ("Phoenix")—an alter ego of LPG being run by Celentino—contracted to pay to Greyson, to utilize Greyson attorneys to defend Phoenix consumer debtor clients in lawsuits, but which Celentino has not allowed Phoenix to pay ANY amount of.  (Han Trinh Decl. hereto).

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Greyson was not incorporated with the California Secretary of State until 5/12/23 (CA corporation no. 5714736, see printout from CA Secretary of State, which is **Exhibit H**  to March Decl. hereto).  LPG filed its bankruptcy case on 3/2023.  Consequently, all activities of Greyson are after LPG filed its bankruptcy case, i.e., are "**post-petition**" activities.  Greyson and Phoenix signed a written contract for the $2,000 per case Phoenix was to pay Greyson.  (Han Decl. hereto).  However, in the 6/2/23 lockout, Celentino/his field agents seized Han's computer, and seized managing attorney Scott Eadie's computer, and seized all the other computers at Greyson,  and have never returned those computers (or the cloud storage of those computers) to Greyson/Han/Eadie. (Han Decl. hereto).  Celentino and his field agents have access to the data on all the seized computers, as Celentino demanded that

1

2

3

4

Greyson's IT personnel give access to Celentino/his field agents.  But

Greyson/Han/Eadie no longer have access to the seized computers/their data, to

download and attach the written contract.  (Han Trinh Decl.).

5

6

7

8

9

10

11

Han Trinh's Declaration hereto explains that Phoenix had few, if any, attorneys,

and so contracted with Greyson, to pay Greyson $2,000 per lawsuit, to use Greyson

attorneys to represent Phoenix consumer debtor clients, in lawsuits filed against those

Phoenix  clients.  (Han Trinh Decl. hereto)  $2,000 per case was a very reasonable

price.  (Han Trinh Decl.).

12

13

14

15

16

17

18

19

20

But when Greyson requested Phoenix to pay Greyson the $2,000 per case

contracted for price, **owed by Phoenix to Greyson for Greyson's post-petition**

**work for Phoenix, per the post-petition Phoenix-Greyson contract**, Celentino—

who had taken over running Phoenix (as an alter ego of debtor LPG)—refused to pay

Greyson the contracted for $2,000 per lawsuit price, owed to Greyson by Phoenix,

pursuant to  Phoenix' contract to pay Greyson $2,000 per lawsuit, to have Greyson

attorneys defend Phoenix consumer debtor clients in lawsuits.

21

22

23

24

25

26

27

To date, Phoenix has paid ZERO to Greyson, because Celentino has not

permitted Phoenix to pay Greyson for **any** of the work done by Greyson attorneys,

which Phoenix contracted to pay Greyson for. (Han Trinh Decl.).  Greyson needed

those payments, per contract, so that Greyson could pay the Greyson W-2 attorneys.

(Han Trinh Decl.)  Phoenix has paid Greyson ZERO to date, of the $5,134,000

28

---

Phoenix owes Greyson. (Han Trinh Decl.).  Because Phoenix is LPG's alter ego, the

LPG bankruptcy estate owe Greyson that $5,134,000.  (March Decl.).

**The $5,134,000 is calculated as follows**:

1.  Greyson's Texas and Oklahoma attorney worked, post-petition, on

approximately 1,500 lawsuits for Phoenix Law Group, pursuant to Greyson's

contract with Phoenix Law Group. 1,500 x $2,000 = $3,000,000.

2.  One of Greyson's California attorneys worked post-petition, on

approximately 140 lawsuits for Phoenix Law Group, pursuant to Greyson's

contract with Phoenix Law Group.   140 x $2,000 = $280,000.

3.  Greyson's Louisiana attorney worked post-petition, on approximately

375 lawsuits for Phoenix Law Group, pursuant to Greyson's contract with

Phoenix Law Group.. 375 x $2,000 = $750,000.

4.  Greyson's Florida attorney worked post-petition, on approximately 250

lawsuits for Phoenix Law Group,  pursuant to Greyson's contract with Phoenix

Law Group. 250 x $2,000 = $500,000.

5.  Greyson's Nevada and Arizona attorney worked post-petition on

approximately 20 lawsuits at the time, for Phoenix Law Group,  pursuant to

Greyson's contract with Phoenix Law Group. 20 x $2,000 = $40,000.

6.  Greyson's West Virginia attorney worked post-petition on approximately

30 lawsuits for Phoenix Law Group  pursuant to Greyson's contract with

Phoenix Law Group. 30 x $2,000 = $60,000.

7.  Greyson's  Illinois, Iowa, and Arkansas attorney worked post-petition on approximately 150 lawsuits for Phoenix Law Group, pursuant to Greyson's contract with Phoenix Law Group. 150 x $2,000 = $300,000.

8.  Greyson's Managing Attorney, Scott Eadie, worked post-petition on approximately 102 lawsuits for Phoenix Law Group,  pursuant to Greyson's contract with Phoenix Law Group. 102 x $2,000 = $204,000.  [as itemized in Han Trinh Decl. hereto]

Just for these attorneys' work alone, Greyson is owed **$5,134,000** by Phoenix Law Group—which Celentino had taken over  running as being an alter ego of debtor LPG.  (Han Trinh Decl.).  Celentino has **refused, wrongfully,** to pay Greyson the contracted for $2,000 per lawsuit, for **any** of the lawsuits where Greyson attorneys been hired to litigate the suits for Phoenix Law  Center, for $2,000 per lawsuit to be paid to Greyson by Phoenix Law Center.  (Han Trinh Decl. hereto).

Celentino demanded that each Greyson attorney email Celentino a list of all the clients/lawsuits each Greyson attorney was working on for Phoenix, for the $2,000 per case fee to be paid by Phoenix to Greyson.   Greyson could not send those lists, because Trustee field agents locked Greyson and Greyson's W-2 attorney employees out of Greyson's data bases and emails, including locking Greyson/its attorneys out of Greyson's LUNA account, as explained supra.  Plus, Celentino and Trustee's filed agents have never allowed Greyson or Greyson's attorneys, to access Greyson's

1    emails, after Celentino and the filed agents locket those emails, despite multiple

2    demands for access. (Han Trinh Decl. hereto)

3
4            Because Phoenix is the alter ego of LPG, and therefore is the same as LPG, this

5    Court should grant Greyson an administrative claim against the LPG's bankruptcy

6    estate, for a minimum of **$5,134,000**, which is the $2,000 per lawsuit, which Phoenix

7    contracted with Greyson to pay Greyson, to have Greyson attorneys defend Phoenix

8    consumer debtor clients in lawsuits. Han Trinh's Declaration hereto itemizes the

9
10   representation, at $2,000 per suit, which adds to $5,134,000.

11
12           The contract between Greyson and Phoenix was after 3/20/23, the date LPG

13   filed bankruptcy, i.e., is a post-petition contract and work. As Greyson was not

14   incorporated until 5/12/23, there can be no issue about that. Phoenix, which either had

15
16   no or few lawyers, to appear in lawsuits to defend Phoenix consumer client

17   defendants, contracted with Greyson to have Greyson's attorneys perform that work

18   for Phoenix.

19
20            Greyson's work for Phoenix is a classic 11 USC §503(b)(1)(A) claim:  post-

21   petition contract and work which was essential for Phoenix/LPG to carry on its

22   business, thereby benefitting Phoenix/LPG, done for a reasonable price ($2,000 per

23
24   lawsuit). Greyson is  entitled to be granted allowance and payment, by the LPG

25   bankruptcy estate of a **$5,134,000** (minimum) administrative claim.

26

27

28

## VII.        CONCLUSION

Pursuant to the US Supreme Court *Reading Co* case **fundamental fairness rule**, and pursuant to 11 USC §503(b)(1)(A), this Court should grant Greyson Law Center PC's Motion for Allowance and Payment of Administrative Claim against the LPG bankruptcy estate for **$300,633** to be paid to Greyson by debtor LPG's bankruptcy estate.  That **$300,633** administrative claim to Greyson, representing fees Greyson lost because Celentino's negligent (and worse) conduct caused Greyson to lose Greyson's 22 "high fees" clients, out of 48 clients, due to Celentino's month-long delay in returning Greyson's 48 client files to Greyson, which were Greyson's property, but which  the field agents had seized from Greyson's offices during the 6/2/23 lockout of Greyson from Greyson's offices,  and refused to return to Greyson for a full month.

During that month Celentino—who was in control of Phoenix, as being LPG's alter ego—obviously gave Phoenix access to Greyson's 48 client files, because during the month where Celentino's conduct prevented Greyson from communicating with Greyson's 48 clients, Phoenix contracted with the 22 high fee clients (which would have paid Greyson $300,633 in fees), leaving only the low fee clients at Greyson. (All attested to in Han Trinh Declaration). Celentino's conduct was negligent.  But his conduct was not only negligent, that conduct was conversion of Greyson's property, and was unfair competition by debtor LPG, against Greyson, a direct competitor of LPG.

In addition, because Phoenix is the alter ego of LPG, and therefore is the same as LPG, this Court should grant Greyson an administrative claim against the LPG bankruptcy estate, for a minimum of **$5,134,000**, which is the $2,000 per lawsuit, which Phoenix contracted with Greyson to pay Greyson, to have Greyson attorneys defend Phoenix consumer debtor clients in lawsuits.  Han Trinh's Declaration hereto itemizes the representation, at $2,000 per suit, which adds to $5,134,000.  The contract between Greyson and Phoenix was after 3/20/23, the date LPG filed bankruptcy, i.e., is a post-petition contract and work.  As Greyson was not incorporated until 5/12/23, there can be no issue about that.  Phoenix, which either had no lawyers or few lawyers to appear in lawsuits to defend Phoenix consumer client defendants, contracted with Greyson to have Greyson's attorneys perform that work for Phoenix.  Greyson's work for Phoenix is a classic 11 USC §503(b)(1)(A) claim: post-petition contract and work which was essential for Phoenix/LPG to carry on its business, thereby benefitting Phoenix/LPG, done for a reasonable price ($2,000 per lawsuit).

Greyson is entitled to be granted allowance and payment, by the LPG bankruptcy estate of a $5,134,000 (minimum) administrative claim.

Dated: November 17, 2023           THE BANKRUPTCY LAW FIRM, PC


                                   __/s/ Kathleen P. March _____
                                   By: Kathleen P. March, Esq
                                   *Attorneys for Greyson Law Center PC*
                                   *on this Motion and in Adv. Proc.*

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
10524 W. Pico Blvd., Ste. 212, Los Angeles, CA 90064

A true and correct copy of the foregoing document entitled (*specify*): **NOTICE OF MOTION AND MOTION OF GREYSON LAW GROUP PC, FOR AN ORDER GRANTING ALLOWANCE AND PAYMENT OF ADMINISTRATIVE CLAIM, PURSUANT TO 11 U.S.C. §503(b)(1)(A); DECLARATIONS OF HAN TRINH, KATHLEEN P. MARCH, ESQ. AND DOUGLAS PLAZAK, ESQ., EACH WITH EXHIBITS** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) ___11/17/23___, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

See next page

☒  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) ___11/17/23___,  I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

The Litigation Practice Group P.C.
17542 17th St
Suite 100
Tustin, CA 92780

☐  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) ___11/17/23___, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Hon. Scott Clarkson
United States Bankruptcy Court
411 West Fourth Street, Suite 5130
Santa Ana, CA 92701-4593

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 11/17/23 | Kathleen P. March | /s/ Kathleen P. March |
|----------|-------------------|-----------------------|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

- **Eric Bensamochan**    eric@eblawfirm.us, G63723@notify.cincompass.com
- **Peter W Bowie**    peter.bowie@dinsmore.com, caron.burke@dinsmore.com
- **Ronald K Brown**    ron@rkbrownlaw.com
- **Christopher Celentino**    christopher.celentino@dinsmore.com, caron.burke@dinsmore.com
- **Shawn M Christianson**    cmcintire@buchalter.com, schristianson@buchalter.com
- **Randall Baldwin Clark**    rbc@randallbclark.com
- **Leslie A Cohen**    leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com;clare@lesliecohenlaw.com
- **Aaron E. DE Leest**    adeleest@DanningGill.com, danninggill@gmail.com;adeleest@ecf.inforuptcy.com
- **Jenny L Doling**    jd@jdl.law, dolingjr92080@notify.bestcase.com;15994@notices.nextchapterbk.com;jdoling@jubileebk.net
- **Daniel A Edelman**    dedelman@edcombs.com, courtecl@edcombs.com
- **William P Fennell**    william.fennell@fennelllaw.com, luralene.schultz@fennelllaw.com;wpf@ecf.courtdrive.com;hala.hammi@fennelllaw.com;naomi.cwalinski@fennelllaw.com;samantha.larimer@fennelllaw.com
- **Christopher Ghio**    christopher.ghio@dinsmore.com, nicolette.murphy@dinsmore.com;angelica.urena@dinsmore.com;deamira.romo@dinsmore.com
- **Eric D Goldberg**    eric.goldberg@dlapiper.com, eric-goldberg-1103@ecf.pacerpro.com
- **Jeffrey I Golden**    jgolden@go2.law, kadele@ecf.courtdrive.com;cbmeeker@gmail.com;lbracken@wgllp.com;dfitzgerald@go2.law;golden.jeffreyi.b117954@notify.bestcase.com
- **Richard H Golubow**    rgolubow@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com
- **David M Goodrich**    dgoodrich@go2.law, kadele@go2.law;dfitzgerald@go2.law;wggllp@ecf.courtdrive.com
- **D Edward Hays**    ehays@marshackhays.com, ehays@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@ecf.courtdrive.com
- **Alan Craig Hochheiser**    ahochheiser@mauricewutscher.com, arodriguez@mauricewutscher.com
- **Garrick A Hollander**    ghollander@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com
- **Richard L. Hyde**    richard@amintalati.com
- **Razmig Izakelian**    razmigizakelian@quinnemanuel.com
- **Joon M Khang**    joon@khanglaw.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                 **F 9013-3.1.PROOF.SERVICE**

- **Ira David Kharasch**    ikharasch@pszjlaw.com
- **Meredith King**    mking@fsl.law, ssanchez@fsl.law;jwilson@fsl.law
- **Nicholas A Koffroth**    nkoffroth@foxrothschild.com, khoang@foxrothschild.com
- **David S Kupetz**    David.Kupetz@lockelord.com, mylene.ruiz@lockelord.com
- **Christopher J Langley**    chris@slclawoffice.com,
  omar@slclawoffice.com;langleycr75251@notify.bestcase.com;ecf123@casedriver.com
- **Matthew A Lesnick**    matt@lesnickprince.com,
  matt@ecf.inforuptcy.com;jmack@lesnickprince.com
- **Daniel A Lev**    daniel.lev@gmlaw.com,
  cheryl.caldwell@gmlaw.com;dlev@ecf.courtdrive.com
- **Britteny Leyva**    bleyva@mayerbrown.com,
  2396393420@filings.docketbird.com;KAWhite@mayerbrown.com;ladocket@mayerbrown.com
- **Michael D Lieberman**    mlieberman@lipsonneilson.com
- **Yosina M Lissebeck**    Yosina.Lissebeck@Dinsmore.com, caron.burke@dinsmore.com
- **Mitchell B Ludwig**    mbl@kpclegal.com, kad@kpclegal.com
- **Daniel S March**    marchlawoffice@gmail.com, marchdr94019@notify.bestcase.com
- **Kathleen P March**    kmarch@bkylawfirm.com,
  kmarch3@sbcglobal.net,kmarch@sbcglobal.net
- **Richard A Marshack (TR)**    pkraus@marshackhays.com,
  rmarshack@iq7technology.com;ecf.alert+Marshack@titlexi.com
- **Laila Masud**    lmasud@marshackhays.com,
  lmasud@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com
- **Kenneth Misken**    Kenneth.M.Misken@usdoj.gov
- **Byron Z Moldo**    bmoldo@ecjlaw.com, amatsuoka@ecjlaw.com,dperez@ecjlaw.com
- **Glenn D. Moses**    gmoses@venable.com,
  cascavone@venable.com;ipmalcolm@venable.com;jadelgado@venable.com
- **Alan I Nahmias**    anahmias@mbn.law, jdale@mbn.law
- **Victoria Newmark**    vnewmark@pszjlaw.com
- **Queenie K Ng**    queenie.k.ng@usdoj.gov
- **Keith C Owens**    kowens@foxrothschild.com, khoang@foxrothschild.com
- **Lisa Patel**    lpatel@lesnickprince.com,
  jmack@lesnickprince.com;jnavarro@lesnickprince.com
- **Michael R Pinkston**    rpinkston@seyfarth.com,
  jmcdermott@seyfarth.com,sfocalendar@seyfarth.com,5314522420@filings.docketbird.com,
  bankruptcydocket@seyfarth.com
- **Douglas A Plazak**    dplazak@rhlaw.com
- **Daniel H Reiss**    dhr@lnbyg.com, dhr@ecf.inforuptcy.com
- **Ronald N Richards**    ron@ronaldrichards.com, 7206828420@filings.docketbird.com
- **Gregory M Salvato**    gsalvato@salvatoboufadel.com,
  calendar@salvatolawoffices.com;jboufadel@salvatoboufadel.com;gsalvato@ecf.inforuptcy.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                    **F 9013-3.1.PROOF.SERVICE**

- **Olivia Scott**    olivia.scott3@bclplaw.com
- **Jonathan Serrano**    jonathan.serrano@dinsmore.com
- **Paul R Shankman**    PShankman@fortislaw.com, info@fortislaw.com
- **Zev Shechtman**    zs@DanningGill.com, danninggill@gmail.com;zshechtman@ecf.inforuptcy.com
- **Leslie Skorheim**    leslie.skorheim@usdoj.gov
- **Adam D Stein-Sapir**    info@pfllc.com
- **Howard Steinberg**    steinbergh@gtlaw.com, pearsallt@gtlaw.com;NEF-BK@gtlaw.com;howard-steinberg-6096@ecf.pacerpro.com
- **Andrew Still**    astill@swlaw.com, kcollins@swlaw.com
- **United States Trustee (SA)**    ustpregion16.sa.ecf@usdoj.gov
- **Sharon Z. Weiss**    sharon.weiss@bclplaw.com, raul.morales@bclplaw.com,REC_KM_ECF_SMO@bclplaw.com
- **Johnny White**    JWhite@wrslawyers.com, jlee@wrslawyers.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.