1  KEVIN A. ROGERS (Miss. Bar No. 10123)

2  WELLS MARBLE & HURST, PLLC
   300 Concourse Boulevard, Suite 200

3  Ridgeland, Mississippi 39157
   Telephone:  601.605.6900

4  Facsimile:  601.605.6901
   krogers@wellsmar.com

5

6  *Attorney for Creditor Wells Marble and Hurst, PLLC*

7  **UNITED STATES BANKRUPTCY COURT
   CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION**

8

9  In re:                                                    CASE NO.: 8:23-bk-10571-SC
                                                              Chapter 11

10 THE LITIGATION PRACTICE GROUP, P.C.,

11                  Debtor.                                   **MOTION BY CREDITOR WELLS MARBLE
                                                              AND HURST, PLLC, FOR ALLOWANCE
                                                              OF ADMINISTRATIVE CLAIM PURSUANT
12                                                            TO 11 U.S.C. § 503**

13
                                                              Date of Hearing:  January 19, 2024
14                                                            Hearing Time: 11:00 a.m.
                                                              Ctrm: 5C/Via Zoom
15                                                                411 W. Fourth Street
                                                                 Santa Ana, California 9270
16 _____

17 TO THE HONORABLE JUDGE SCOTT C. CLARKSON, UNITED STATES BANKRUPTCY

18 COURT JUDGE, THE UNITED STATES TRUSTEE, AND ALL INTERESTED PARTIES.

19       Kevin A. Rogers, attorney for Wells Marble and Hurst, PLLC, a creditor herein, pursuant to

20 the Order Approving Stipulation Between Chapter 11 Trustee, Office of the United States Trustee, the

21 Official Committee of Unsecured Creditors to Set Administrative Bar Date [Dk. No. 577], moves for

22 an order allowing and ordering payment of an administrative claim for by Wells Marble and Hurst,

23 PLLC, for local counsel services provided to the estate pursuant to 11 U.S.C. § 503, or as otherwise

24 provided by law, as follows.

25                                    **INTRODUCTION**

26       1.     The most vulnerable parties connected to this bankruptcy proceeding are those

27 individual clients of The Litigation Practice Group ("LPG") who enrolled in the LPG program ("LPG

28 clients").  Critical to the LPG program was that LPG clients would be provided representation by local

- 1 -

1   counsel when sued by creditors in various jurisdictions; otherwise, a creditor would take a judgment,

2   begin collection, and irreparably harm the LPG clients. To that end, LPG entered into different

3   arrangements with a number of attorneys in various jurisdictions to provide such services.  With

4   regard to those LPG clients sued in Mississippi and Alabama, LPG entered into a contractual

5   arrangement under which Wells Marble and Hurst, PLLC ("WMH"), through Kevin A. Rogers, would

6   provide such local representation for an hourly fee.

7       2.      LPG's bankruptcy petition did not absolve the need for LPG clients to be provided

8   continued legal representation in pending lawsuits, as well as new lawsuits filed after the petition.

9   Deadlines and court hearings were not abated by the filing of the petition.  Therefore, it was necessary

10  for WMH to continue to provide those services to LPG clients post-petition.  Had WMH (and other

11  local counsel) not provided such representation, then the value of the estate asset (the group of LPG

12  clients), ultimately sold to the Morning Law Group, would have collapsed.  Accordingly, the estate

13  directly and substantially benefitted from the post-petition, local counsel services provided by WMH

14  (and other local counsel).  Through this motion, pursuant to 11 U.S.C. § 503, WMH seeks allowance

15  and payment of an administrative claim for total fees in the total amount of $64,957.00, and total

16  expenses in the amount of $2,829.14, for a total claim in the amount of $67,786.14.  See Exhibit A.

17                          **STATEMENT OF FACTS**

18      3.      WMH, through Kevin A. Rogers, an attorney licensed to practice in Mississippi and

19  Alabama, began provided local representation to LPG clients sued in Mississippi in June of 2020 and

20  in Alabama in March of 2021, on a contract basis for an hourly rate, with regular billing statements

21  submitted to and paid by LPG.  See Exhibit A, Declaration of Kevin A. Rogers, ¶¶ 5-7.

22      4.      At the time of the filing of the bankruptcy petition, WMH had represented LPG clients

23  in 874 separate legal matters, out of which 223 were still active. Out of the 223 active matters, eight of

24  those matters were for clients whose files were transferred to Consumer Legal Group (which is not the

25  subject of this motion), leaving 215 matters. Of those 215 matters, only 87 matters are still active, as

26  the other matters have been settled or otherwise resolved.  Ex. B, ¶8.

27      5.      On March 22, 2023, Kevin Rogers was contacted by Ty Carrs, on behalf of Phoenix

28  Law, P.C., and agreed to continue to provide legal representation to those LPG (or former LPG)

1  clients in pending litigation in Mississippi and Alabama, and the parties subsequently entered into an

2  Engagement Agreement to provide such services on a contract basis at an hourly rate of $240/hr.  Ex.

3  B, ¶¶9-10, and Ex. 1 to Ex. B.  WMH has not received any payment from Phoenix.  Ex. B, ¶11.

4         6.      After the petition was filed, WMH received an additional 28 new lawsuits for LPG (or

5  former) LPG clients in Mississippi and Alabama, out of which 17 have been settled.  Ex. B, ¶12.

6         7.      The post-petition services provided by WMH as local counsel consisted of filing

7  answers to complaints, filing and responding to motions, appearing at court-ordered hearings or trials,

8  negotiating favorable settlements, or obtaining dismissals of lawsuits.  Ex. B, ¶13.

9         8.      These services were necessary to avoid judgments being entered against these

10 individuals. Ex. B, ¶14.

11        9.      The most vulnerable parties connected to this bankruptcy proceeding are those clients

12 who enrolled in the LPG program with the expectation that if a lawsuit was filed against them, local

13 representation would be provided.  Many of these clients were elderly, on a fixed income, or had

14 limited financial means, and, therefore, they would have had nowhere else to turn if representation in

15 pending matters was not provided.  Ex. B, ¶15.

16        10.     Accordingly, it was necessary to continue to provide legal services to those clients after

17 the filing of the bankruptcy petition.  The filing of the bankruptcy petition had no effect on pending

18 legal matters for those individuals, including deadlines and hearing dates.  Had WMH not provided

19 such legal services for pending matters, judgments would have been entered and collection actions

20 would have begun, which would have irreparably prejudiced those individuals.  Ex. B, ¶16.

21        11.     Therefore, the post-services provided by WMH substantially and directly benefitted the

22 estate by preventing judgments from being entered against those clients during the pendency of this

23 bankruptcy proceeding, which preserved the value of the estate for the subsequent sale to the Morning

24 Law Group.  Ex. B, ¶17.

25        12.     In addition, with regard to these clients, WMH served as the only consistent reliable

26 point of contact with those clients for during the bankruptcy proceeding.  Many clients had difficulty

27 finding anyone who could answer their questions or concerns.  WMH was able to point these clients in

28 the right direction, as well as assure them that their cases were being handled.  Ex. B, ¶18.

1    13.    WMH kept itemized billing records for services provided, copies of which have been

2    previously provided to the Chapter 11 Trustee and to Phoenix.  Ex B, ¶20.

3    14.    The documents attached to the Declaration have been redacted so as to protect the

4    privacy of those individuals who were provided representation as local counsel. See Exs. 2-5 to Ex. B.

5    WMH is willing to provide additional documentation pursuant to an appropriate order protecting the

6    privacy of such individuals.  The documents attached show the following:

7        a.  WMH's fees for services provided from March 20, 2023 to May 8, 2023 was

8           $23,504.00.

9        b.  WMH's costs and expenses incurred for services provided from March 20, 2023 to

10           May 8, 2023 was $1,959.77.

11        c.  WMH's fees for services provided from May 9, 2023 to August 4, 2023 was

12           $41,453.00.

13        d.  WMH's costs and expenses incurred for services provided from May 9, 2023 to

14           August 4, 2023 was $869.37.

15        e.  WMH's total fees are $64,957.00, total costs and expenses are $2,829.14, and total

16           claim for post-petition services is $67,786.14.

17    15.    WMH provided such post-petition services as local counsel until August 4, 2023, at

18    which time some clients had been transferred to the Morning Law Group.

19    16.    The fee charged by WMH to provide local counsel services is fair and reasonable under

20    Mississippi and Alabama Law.  Ex. B, ¶20.  See Miss. R.P.C., 1.5(a) and Ala. R.P.C. 1.5(a).

21    17.    The post-petition services provided by WMH from March 20, 2023 to August 4, 2023,

22    constitute an administrative expense pursuant to 11 U.S.C. § 503.

23    **MEMORANDUM OF AUTHORITIES**

24    18.    Under 11 U.S.C. § 503(b)(1)(A), after notice and a hearing, there shall be allowed

25    administrative expenses including, "the actual, necessary costs and expenses of preserving the estate"

26    which includes, but is not limited to, "wages, salaries and commissions for services rendered after the

27    commencement of the case."

28    19.    Administrative status is allowed when a claim (1) is incurred postpetition, (2) directly

1    and substantially benefits the estate, and (3) is an actual and necessary expense*." Gull Indus., Inc. v.*

2    *Mitchell (In re Hanna),* 168 B.R. 386, 388 (B.A.P. 9th Cir. 1994).  A claimant must show that the debt

3    asserted to be an administrative expense arose from a transaction with the debtor-in-possession or

4    trustee as opposed to the preceding entity or that the claimant gave consideration to the debtor-in-

5    possession or trustee and that the claim directly and substantially benefitted the estate.  *In re DAK*

6    *Indus.*, 66 F.3d 1091, 1094 (9th Cir.1995).

**ARGUMENT**

7

8        20.      The post-petition services provided by WMH are entitled to administrative expense

9    status and should be paid as an administrative expense.

10       21.      First, WMH is only seeking administrative status for the services provided post-

11   petition, and WMH will be filing a proof of claim for unpaid services provided pre-petition.

12       22.      Second, WMH's local representation of LPG clients was an actual and necessary

13   expense to preserve the estate and protect those clients who had enrolled in the LPG program.  The

14   filing of the bankruptcy petition in this matter did not delay, stay or abate pending deadlines and court

15   hearings set in Mississippi and Alabama state court proceedings.  Nor did the filing of the petition stay

16   creditors from filing new lawsuits against such individuals.  Therefore, it was necessary for WMH to

17   provide local representation to protect those individuals from judgments and collection actions, which

18   would have irreparably prejudiced those individuals. WMH sought to provide such representation as

19   expeditiously as possible to protect those vulnerable individuals.

20       23.      Third, WMH's representation, through the agreement with Phoenix, was a transaction

21   with the debtor-in-possession, or alternatively, WMH's representation constitutes consideration

22   provided to the estate. The $240 hourly rate charged by WMH was fair and reasonable for the services

23   provided.

24       24.      Fourth, WMH's representation directly and substantially benefitted the estate by

25   protecting LPG clients.  By providing continued representation post-petition, this preserved the value

26   of the estate for the pending sale to the Morning Law Group.  Had WMH (and other local counsel)

27   ceased provided such representation, this would have undoubtedly made LPG clients less likely to

28   continue with the program, and it would have devalued the estate asset.  WMH also provided an

- 5 -

1  additional value to the estate by serving as point of contact for clients.

2      Accordingly, for the reasons set forth herein, WMH respectfully moves for this Court (a) to

3  allow an administrative expense claim in the amount of $67,786.14, pursuant to 11 U.S.C. § 503; (b)

4  to provide that WMH's is entitled to administrative priority pursuant to 11 U.S.C. § 503 and 11 U.S.C.

5  § 507(a)(2); (c) to order that WMH's administrative claim be paid and; (d) any additional or

6  alternative relief this Court deems just and proper.

7      DATED this 20th day of November, 2023.

8

9                              **WELLS MARBLE & HURST, PLLC**

10                              /s/ Kevin A. Rogers
                               KEVIN A. ROGERS (admitted pro hac vice)
11                              Attorney for Wells Marble and Hurst, PLLC

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28