Glenn D. Moses. Esq. (*Pro Hac Vice*)
Joyce A. Delgado (*Pro Hac Vice*)
*Counsel to Creditor ADP, Inc.*
VENABLE LLP
100 Southeast Second St. 44th Floor
Miami, Florida 33131
Telephone No. (305) 349-2300
gmoses@venable.com
jadelgado@venable.com

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION**

| | |
|---|---|
| In re | Case No. 8:23-bk-10571-SC |
| THE LITIGATION PRACTICE GROUP, | Chapter 11 |
| Debtor. | **NOTICE OF FILING OF EXHIBITS TO THE AFFIDAVIT OF SEAN BEST IN SUPPORT OF MOTION FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM** |

Creditor, ADP, Inc. ("**ADP**"), through the undersigned counsel, hereby submits this Notice of Filing of the Exhibits to the Affidavit of Sean Best (the "**Best Affidavit**"), attached as Exhibit "A" to the *Motion by Creditor ADP, Inc. for Allowance and Payment of Administrative Expense Claim* [ECF No. 665].

Dated: November 20th, 2023.

Respectfully submitted,

VENABLE LLP

*Attorneys for Creditor, ADP, Inc.*

By: /s/ *Glenn D. Moses*

Glenn D. Moses, Esq. (*Pro Hac Vice*)
gdmoses@venable.com
Joyce A. Delgado, Esq. (*Pro Hac Vice*)
jadelgado@venable.com

1

**EXHIBIT "1"**

Jen Mendoza
**Sales Order:** 01-2023-206770  Rev1



| Company Name: MAVERICK MANAGEMENT GROUP LLC | **Order Type:** New Client | **Branch:** |
| --- | --- | --- |
| | **Order Date:** 04/03/2023 | **Company Code:** |
| | | **IID:** |

| Address: | Delivery<br>6080 Center Dr<br><br>Los Angeles, CA 90045-9209 | Legal<br>6080 Center Dr<br>Los Angeles, CA 90045-9209 | Tip Establishment: No<br><br>**Legal Entity:**<br>LLC |
| --- | --- | --- | --- |
| Payroll Contact(s)<br>Phone(s)<br>Mobile 1<br>Mobile 2<br>Fax # | Stephanie King<br>(949) 706-4510 | **Processing Frequency:** Bi-Weekly | **NAICS Code:** 541618<br>**NAICS**<br>**Description:** Other<br>Management Consulting<br>Services |
| Client Email Address | hr@maverickmgmt.co | | |
| Est. First Input<br>04/05/2023<br>Wednesday<br>Est. First Check<br>04/07/2023<br>Friday | **Pay Period Start Date**<br><br>**Pay Period End Date** | **Existing Balances** (Are there balances that need to be entered for this client?): Yes | **Input Method:** Internet<br>**Mobile Device:**<br>**Business:** Existing |

**Promotions**

Promo1: 6680 - Months 4, 5, 6 and 7 FREE

**Total Savings with Promos: $6206.63**

| Payroll Features | Control # | Billing Frequency | Qty | One Time Fees | Processing Fees |
| --- | --- | --- | --- | --- | --- |
| RUN POWERED BY ADP®<br>Maverick Management – NC ( majors protection) (Primary) | 1 | | | | Sales Order: Based on Paid employee(s) 100<br>Note: Any changes in number of employees will impact pricing |
| Implementation for ADP HR Pro | | Once | 1 | $0.00 | |
| ADP HR Pro | | Bi-Weekly | 100 | | $716.15 |
| Processing Total | | | | | $716.15 |

| Additional Features | Fees | Additional Features | Fees |
| --- | --- | --- | --- |
| Year-End W-2/1099 Information Primary Control: | $54.95 | Applied for Status (Fee Per State and Any Local ID Per Month, if applicable) | $50.00 |
| W-2/1099 Delivery fee: | $13.95 | Applied for Status for SUI ID (Per SUI ID Per Quarter, if applicable) | $50.00 |
| Per W-2/1099: | $6.50 | Additional Jurisdiction (Fee Per Additional State & SUI Jurisdiction Per Month) | $8.95 |

SUI Management: 5 Claims included annually; additional
claims @ $35/claim.
Appeals and Hearings available for additional fees.

*BL* By initialing to the left, you consent to ADP calling you at the telephone number you provided on the sales order to provide service and support for products and services you purchased and to tell you about other and new ADP payroll and related services, via an automatic dialing system including using prerecorded messages.

**Comments**

I hereby absolve ADP, Inc., of any errors, penalties and interest payment responsibility arising from incorrect deposits, filings or payroll liability information prior to my ADP start date. **I will make all payroll tax deposits for payrolls run before setup of ADP's tax filing service.** THE SERVICES, PRICING, CONSENTS AND AUTHORIZATIONS COVERED BY THIS SALES ORDER ARE PROVIDED IN ACCORDANCE WITH THE TERMS AND CONDITIONS OF SERVICE FOR RUN POWERED BY ADP® ONLINE PAYROLL SERVICES AND ANY ACCOMPANYING EXHIBITS ("RUN TERMS"). BY SIGNING THIS SALES ORDER THAT INCLUDES THESE RUN TERMS, YOU ACKNOWLEDGE RECEIPT OF AND AGREE TO THESE RUN TERMS.

| ADP Sales Associate | Date | Client Authorization | Date |
| --- | --- | --- | --- |
| *Jen Mendoza* | | | |
| | 04/03/2023 | *Bianca Lofi* | 04/03/2023 |

**ADP**
Always Designing
for People™

### Terms and Conditions of Service for RUN Powered by ADP® Online Services

These Terms and Conditions of Service ("Terms" or "Agreement") are an agreement between ADP, Inc. and You. They apply to *RUN Powered by ADP®* online services ("RUN") as defined below. By subscribing to and/or using RUN, You acknowledge that you have read, understand and expressly agree to be bound by these Terms, including any modifications or updates from time to time. If You do not agree to these Terms or any posted updates, do not subscribe to or use RUN.

"You" and "Your" means You, Your company, Your employees and (subject to the terms herein) any agents You designate as "users" of RUN. Only authorized users are permitted to use or access RUN, and such use or access is prohibited by unauthorized third parties. An "Unauthorized Third Party" refers to any third party or business that seeks to access or accesses RUN using the account credentials (e.g., username and password) of an ADP client or client employee (each a "user"), regardless of the user's purported consent, in order to access, copy or obtain information within RUN, whether such information is accessed, copied or obtained by an automated data gathering program or by other means, including data scrapers, data aggregators and any third parties seeking to monetize data obtained from ADP without ADP's express consent.

You agree to be bound by these Terms, any applicable additional terms and any other terms and guidelines found throughout RUN. "RUN" or "Services" means the services, including Payment Services as defined herein, which let users report their employer or other data so ADP can calculate payroll and payroll taxes and file taxes ("Tax Filing Services"), and deliver checks and reports, electronically or otherwise, access and/or utilize ADP Marketplace services, HR411, HR Training, HR HelpDesk, HR chatbots, any third party vendors accessed through RUN, HR411 or other human resources content ("HR Services"), track employee data, access Document Vault, Time and Labor Management ("TLM") or unemployment claims services, or produce a Certificate of Insurance ("COI") based on Your current Workers' Compensation policy purchased through our affiliate, Automatic Data Processing Insurance Agency, Inc. If You choose to subscribe to and/or use any HR Services, calculator tools, pre-employment or employment background checks ("Background Check Services"), Document Vault, Health Care Tax Credit Assist, unemployment claims, employment and income verification services or TLM services ("Additional Business"), or if You purchase, migrate from, upgrade, downgrade or remove any additional business, features or functionality, these services will be included in "RUN" and the "Services" hereunder and these Terms will control and be applicable to Additional Business, migrations, upgrades, features, services, downgrades or removals.

The Services, including but not limited to Background Checks, Tax Filing, Pay Card (as defined herein) and, Risk and Safety Services and Full Service Direct Deposit (FSDD/ADPCheck (ADP pays Your employees from ADP's own bank account) are available for as long as You meet any eligibility requirements, which may include credit checks of You and Your principals, including any of Your owners, identification verification of You, Your employees and any of Your owners, and other authentication procedures. You acknowledge and agree that these credit checks and authentication procedures may be performed by ADP or a third party and ADP may disclose the information provided, including any personal information, to such third parties for this purpose, and may require that You sign additional forms. You understand and acknowledge that implementation, access to and ongoing provision of the Services shall be conditioned upon You, Your employees and any owners passing, and continuing to pass, any ADP authentication, credentialing and bank account and balance verification processes and passing any additional credentialing, verification or authentication that ADP may deem necessary in connection with the Services provided, using data available to ADP. You further authorize and appoint ADP as Your agent with full authority to authenticate and verify Your bank account and balances. You understand that the provision of products and/or services may be modified as ADP may deem appropriate in ADP's reasonable discretion or in order to assist ADP or any of its partners, affiliates, or subsidiaries in complying with its legal and/or regulatory obligations. You acknowledge that ADP or its affiliates may pay compensation to a third party or broker for the referral of Your business for the Services and other products You may purchase.

You hereby absolve ADP of any errors, penalties and interest payment responsibility arising from incorrect deposits, filings or payroll liability information prior to Your start date with ADP. You will make all tax deposits for payrolls run before setup of ADP's tax filing service.

### 1. The Services

**A. Performance Standard** ADP will perform the Services in a professional manner with personnel having such skills as required by the Services to be performed.

**B. Use of Services/Protection of Data** You will use the Services in accordance with the instructions and reasonable policies communicated to You and only for Your internal business purposes. You may not use the Services, or any software or system used to provide them, for commercial software hosting services. You may not interfere with, tamper, manipulate or otherwise disrupt any information technology systems, networks, servers, databases and/or infrastructure (including hardware and software) (together, "IT Systems") of RUN. You may not circumvent RUN technical controls and security measures in place to safeguard RUN's IT Systems and data. You may not use RUN or the Services provided through or in connection with RUN to violate any applicable international, federal, state and local laws, statutes or regulations or conduct any other illegal activity; or to harvest, copy, modify or otherwise collect information of third parties, including e-mail addresses, without their express written consent; or to publish, sell, license, create derivative works or otherwise use any contents or information available on or through RUN, the Services provided through or in connection with RUN, or RUN's IT Systems, directly or indirectly, for commercial or public purposes. You will not provide, directly or indirectly, any of the Services, including Payment Services as defined herein, or any part thereof, including any contents, information, tools, calculators and resources, to any party other than Yourself. Your employees will not disclose any confidential account access credentials or confidential information to Unauthorized Third Parties. Such confidential information shall also include access to and use of password protected and/or secure information that is restricted to authorized users only and user account access credentials and related user authentication information. ADP will take reasonable precautions to prevent the loss of or alteration to Your data files in its possession including employing regular back-up procedures, but ADP does not guarantee against any loss or alteration of Your data. ADP is not and will not be Your record keeper or, to the extent You believe it necessary, You will keep copies of all documents or information delivered to ADP in connection with the Services. You are responsible for maintaining and backing-up any information You are providing or using in connection with RUN.

**C. Payment Services** If You are receiving any of the Services that require ADP to debit funds from Your account to pay Your third-party payment obligations (e.g., Tax Filing, Garnishment Payment Service (GPS), FSDD Services, TotalPay or Payroll Card or other pay card (hereafter "Pay Card"), Pay-by-Pay, 401K and/or ADPCheck Services) ("Payment Services"), You will have sufficient, collected funds in Your

account within the deadline established by ADP to satisfy all third-party payment obligations and any ADP fees for Services. Payment Services are subject to the operating rules of the National Automated Clearing House Association ("NACHA") ADP and You agree to comply with the NACHA rules applicable to it with respect to the Payment Services. You agree that You will not cause ADP to initiate payments on behalf of any non-Affiliate of Yours under this Agreement unless such non-Affiliate is identified in the client account agreement. ADP may commingle Your impounded funds with other client's, ADPs or ADP-administered funds of a similar type. ALL AMOUNTS EARNED ON SUCH FUNDS WHILE HELD BY ADP WILL BELONG TO ADP. You acknowledge and agree that ADP will, with respect to the provision of the Pay Card services, provide You with Pay Card marketing materials that You can make available to Your employees, and implementation of Pay Card as a direct deposit option for Your employees. You also acknowledge and agree that the FSDD provisions of this Agreement will apply to Pay Cards. Finally, You agree that in providing GPS Services and any garnishment related assistance, ADP will act solely in the capacity of a third party service provider of payment processing and may from time to time provide You data entry assistance, worksheets, and/or best practice recommendations concerning wage garnishment orders, however, You shall remain solely responsible for the proper compliance obligations with Your wage garnishment orders. ADP Services are not a substitute for the advice of an attorney. You agree ADP is not a law firm, does not provide legal advice or representation and that no attorney-client relationship exists or will be formed between ADP and You.

**D. Accuracy of Your Information, Review of Data** All Services provided to You will be based on information provided to ADP by You and/or Your employees (including proof of federal, state and local tax identification numbers and payroll history). You agree to provide accurate, complete and timely information and documentation needed by ADP to perform the Services. The person agreeing to these Terms or any other person designated in writing by that person, is Your authorized payroll contact from whom ADP will take all instructions. ADP will not be liable for following such instructions. You agree to have someone other than Your designated payroll contact promptly and thoroughly review Your disbursement reports to help You spot and correct errors and inconsistencies and help prevent fraud, and promptly notify ADP of any errors. You agree to promptly review all disbursement records, certificates (including any COIs generated by You) and other reports You receive from ADP or that You produce or generate in connection with RUN, for validity and accuracy. You will promptly deliver to ADP any information regarding Your payroll, employees and any other information or materials of Yours, regardless of form (e.g., images, graphics, text, custom reports, etc.) to be included in the Services, including any Personal Data, as that term is defined in Section 10B and/or the attached Data Privacy Appendix, whether included by ADP as part of its setup or other Services or by You or any of Your employees ("Your Client Content"). You are responsible for selecting and/or inputting any personal data elements that are optional. The collection and processing of such data elements will be performed under Your responsibility. You shall only provide ADP with Client Content that is required to perform the Services. You may, during the implementation process or as part of the ongoing Services, elect to configure RUN or the Services to process additional data elements beyond those data elements that are required by ADP to perform the Services. You shall remain solely responsible for such configurations, including the processing of Client Content as pursuant to applicable law.

Your Client Content will be in an electronic file format specified by and accessible to ADP. Upon completion of any setup or other Services or any request for custom reports, You will review Your Client Content provided to ADP as included in the Services. By commencing "live" processing or using the Services, You confirm that Your Client Content is accurate and complete. ADP will have no liability to You for any errors or inaccuracies in Your Client Content included in the Services that was provided by You, or should have been reviewed and approved by You and You agree to indemnify and hold ADP harmless for any damages resulting from Your or Your employees' failure to provide accurate information. ADP may also perform other services related to RUN that You may request (e.g., training, custom reports, Background Check Services, TLM services, HR Services, Health Care Tax Credit Assist, unemployment claims processing, Risk and Safety Processing, employment and income verification, etc.), and such services will be covered by this Agreement at ADP's then current fees, if applicable. Certain of the Services to be provided by ADP may be provided by subsidiaries or affiliates of ADP, Inc. or by ADP's subcontractors, and ADP will be responsible for the performance of those subsidiaries, affiliates and subcontractors.

**E. Responsibility for Compliance with Laws** The Services are designed to help You comply with applicable laws and governmental regulations. Nevertheless, You (and not ADP) will be responsible (i) for Your compliance with all laws and governmental regulations affecting Your business generally, including any rules and regulations applicable to ADP regarding trade sanctions, except controls or trade with prohibited parties and (ii) for any use You make of the Services to help You comply with any applicable laws and governmental regulations. You acknowledge and agree that ADP is not responsible for advising You of Your obligations under any laws or regulations that apply to Your business. You will not rely on use of the Services to comply with any laws and government regulations. Many federal, state and local laws, rules and regulations, impose additional requirements, such as employers must obtain consent from their employees, in connection with direct deposit and/or the use of electronic statements. These and other laws and governmental regulations vary and it is Your responsibility to ensure You are compliant with these laws, including regarding electronic statements and obtaining any consents, and for Print On Demand capabilities, providing on-line access at Your work site, and direct deposit, as well as for complying with any other applicable federal, state, local or other laws and governmental regulations affecting Your business. You are exclusively responsible for making physical copies of online statements, including wage statements. Forms W-2, Forms 1099, or Forms 1095-C, available to Payees to the extent required by applicable law. You represent that You verified the identity of each of Your employees to whom You will make payments using ADP Products or Services through appropriate documentation provided by such employee (e.g., I-9 documentation). You also acknowledge that You alone are responsible for the designation of an individual or vendor as a "contractor" and ADP will have no liability for Your designation(s). No state or federal agency monitors or assumes any responsibility for the financial solvency of third-party tax filers.

**Important Tax Information (IRS Disclosure):** Notwithstanding Your engagement of ADP to provide ADP Tax Services, You are responsible for the timely filing of payroll tax returns and the timely payment of payroll taxes for Your employees. The Internal Revenue Service recommends that employers enroll in the U.S. Treasury Department's Electronic Federal Tax Payment System (EFTPS) to monitor their accounts and ensure that timely tax payments are being made for them. Online enrollment in EFTPS is available at www.eftps.gov; an enrollment form may also be obtained by calling (800) 555-4477. State tax authorities generally offer similar means to verify tax payments. You may contact appropriate state offices directly for details.

**F. FSDD/ADPCheck/Pay Card** For FSDD and Pay Card Services, before the first credit to the account of any employee or other individual (a "Payee"), You will get a signed and valid payee authorization from the Payee (a "Payee Authorization") which will be in a form acceptable to ADP and comply with NACHA rules and applicable law and shall authorize the initiation of credits to the Payee's account and debits of such account to recover funds credited to the account in error. You will retain a copy of each Payee Authorization during the period the Payee Authorization is in effect and for two years after and will provide a copy to ADP

**ADP**
Always Designing
for People™

upon request. You agree not to distribute any ADPChecks to Payees in any manner that would allow Payees to access the associated funds before pay date and You acknowledge that doing so may result in additional fees being charged to You. You also agree to cooperate with ADP to recover funds credited to any Payee's account in error. If You want to stop payment on any ADPCheck, You will provide ADP with a written stop payment request in the form provided by ADP. ADP will, within 24 hours of receipt of the request, place a stop payment order with ADP's bank. You will not request ADP stop payment on any ADPCheck which represents funds to which a Payee is rightly entitled. You agree to indemnify, defend and hold harmless ADP and its affiliates and their successors and assigns from and against any liability whatsoever from stopping payment on any ADPCheck requested by You and from and against all actions, suits, losses, claims, damages, charges and expenses including attorney's or other fees, in any claims or suits arising because of a request to stop payment, including claims made by a "holder in due course" of such check. If You subscribe to the use of any Pay Card Services, You also agree to the Pay Card Services terms attached to these Terms as Exhibit A, which are incorporated into these terms as if fully set forth. By agreeing to or signing these Terms You acknowledge receipt of the Pay Card terms in Exhibit A and agree to perform all obligations set forth in Exhibit A.

G. Background Check Services will be provided by ADP Screening and Selection Services, Inc. ("SASS"), an affiliate of ADP. You will be required to pass the SASS credentialing process. If You do not pass this process, ADP may require additional information or deny access to the Background Check Services. You will sign and deliver to ADP any documents and forms ADP deems necessary to provide You with the Background Check Services under any requirements of governmental data sources and consumer reporting agencies for which ADP is a reseller, or under applicable laws and regulations. Subscription-based programs are not available to organizations providing staffing-related services, property management companies or resellers (i.e., companies who do background checks for other companies) and are only available for Your own employment screening. ADP will abide by all of the provisions of the Fair Credit Reporting Act, as amended ("FCRA"), as applicable to the obligations of ADP acting as a consumer reporting agency in providing Background Check Services. ADP will follow reasonable quality assurance procedures with respect to preparing any reports including consumer reports and/or investigative consumer reports (hereafter each individually referred to as "Report" and collectively as "Reports"). However, because the information contained in Reports is provided by third parties, ADP is not responsible for any errors or omissions in such third-party information. You understand that the Background Check Services made available to You through a subscription-based program will have applicable limits, as indicated on Your Sales Order or similar document, and that there are additional fees when ordering a New York Consolidated Criminal History Report and/or when a search requires a New York county criminal history search. To the extent that Your Background Check Services which exceed or differ from the number and type included in Your Services, You will be charged by SASS for the amounts due for the excess number or different services. You agree to pay ADP for Background Check Services You order that are not included in Your Services, as well as for applicable fees when ordering a New York Consolidated Criminal History Report and/or when a search requires a New York county criminal history search. ADP may pass on any new or increased fees assessed on a particular product by any governmental source or third-party source or vendor at any time, upon thirty (30) days' notice to You.

You understand that from time to time ADP may provide information regarding laws and regulations applicable to users of Reports, including, but not limited to, information pertaining to a user's legal obligations and responsibilities under FCRA and other applicable laws and regulations. Any information provided by ADP, including, but not limited to, information available for reference on "The Guide" at www.adpselect.com, is provided for educational purposes only and is not legal advice. You understand and agree that You should review all applicable laws and regulations and consult with experienced counsel for legal advice. You understand that the Guide may be amended from time to time by ADP and You will have access to such amendments online. You acknowledge that You have Internet access so You can access the Guide as made available by ADP.

You are solely responsible for ensuring Your own compliance with applicable laws and regulations in requesting, using, and maintaining Reports, and for maintaining Reports sufficient to comply with Your document retention policies.

You acknowledge that so long as You have access to Background Check Services, You will have access to all Reports ordered through the SASS background site for at least one year (unless we tell You of a shorter period). ADP will not deliver copies of Reports to You once such Reports are no longer available within the SASS background screening site or after termination of the Background Check Services or this Agreement, except as required by law. ADP will make available additional accounts to You upon Your written request. You will provide any information ADP requires for establishing additional accounts. You will ensure that the additional accounts established at Your request by ADP are for employment purposes only, and only in accordance with applicable law. You will ensure that the additional accounts and all information received from ADP is used in strict compliance with the applicable provisions of all federal, state and local laws and international law and all regulations promulgated under any of them, including, but not limited to, the FCRA, the Americans with Disabilities Act (ADA 1990), all equal employment opportunity laws and regulations, to the extent applicable, the Drivers Privacy Protection Act and Federal Equal Credit Opportunity Act, and any federal, state or country specific data privacy law. In the event and to the extent of any conflict between the terms and conditions of this Section and applicable law, the provision(s) of applicable law will govern.

H. TLM Products
a) You will provide and install all power, wiring and cabling needed for the installation of any data or time capture hardware or software (the "Timeclock Equipment"). You will pay an installation and set-up fee for each unit of Timeclock Equipment if the equipment is installed on Your premises by ADP.
b) You will not make any alterations or attach any device not provided by ADP to the Timeclock Equipment. ADP will continue to own the Timeclock Equipment unless You choose the purchase option and paid ADP the full purchase price. Unless You bought and paid for the Timeclock Equipment, it will remain a separate item of personal property though attached to other Timeclock Equipment or real property and You will not remove the Timeclock Equipment from the original installation site without ADP's prior consent.
c) Upon termination or cancellation of this Agreement, TLM and/or Payroll Services, You will, at Your expense, return the Timeclock Equipment to ADP according to ADP's instructions. The Timeclock Equipment will be returned in as good condition as received by You, except for normal wear and tear. If the Timeclock Equipment is not returned within 30 days of termination, You agree to purchase it at ADP's retail price at time of termination. If payment for the Timeclock Equipment is not received within 30 days of any demand for the return of the Equipment, ADP will be able to use any lawful remedy to enforce its rights including, debiting the account You use for ADP Services and/or sending the account to a collection agency for settlement. The terms of this Section c. will not apply if prior to the time of termination or cancellation You had already purchased and paid for the Timeclock Equipment in full.
d) ADP warrants to You that the Timeclock Equipment will be free from defects in material and

workmanship at the date Timeclock Equipment is shipped and for 90 days after. ADP's sole obligation in case of any breach of any warranty contained in these Terms will be to repair or replace, at ADP's option, any defective items. This is the extent of ADP's liability for all claims related to Timeclock Equipment including contract and negligence claims, and will be Your sole remedy.
e) Maintenance services for the Timeclock Equipment (set forth below in Section f) apply automatically to Timeclock Equipment under the subscription option and any maintenance charges are already included in the monthly time and labor management subscription fees. The costs for maintenance services for Timeclock Equipment under the purchase option are not included in the purchase price and a separate annual maintenance fee will apply. Under the purchase option, You can terminate Your receipt of maintenance services by giving ADP written notice at least 30 days before the end of the then current annual period. ADP is not required to return any maintenance fees relating to a current or prior coverage period. (NOTE: If You select the purchase option but opt not to receive (or terminate) maintenance services by executing a waiver of maintenance services, any such services provided by ADP at Your request will be subject to ADP's then current charges for such services.) No Timeclock Equipment maintenance is done at Your site. You will be responsible for all delivery/shipping costs and all risk of loss during shipment/delivery of Timeclock Equipment relating to maintenance services.
f) ADP will maintain the Timeclock Equipment to be free from defects in material and workmanship as follows: Any parts found to be defective (except as specifically excluded below) will be replaced or repaired, at ADP's or its designee's option, without charge for parts or labor, if the Timeclock Equipment was properly installed and maintained by You and if it has been used in accordance with any documentation or terms provided by ADP or its designee and has not been subject to abuse or tampering. The foregoing repairs and replacements may be made only by ADP or its designee, and will be made only after ADP or its designee is notified of a problem, receives delivery from You of the Timeclock Equipment at issue and determines that it results from defective materials or workmanship. Notwithstanding the foregoing, ADP may deliver a temporary replacement item for You to use while ADP determines the cause of the issue with the Timeclock Equipment in question. Repairs and replacements required as a result of any of the following will not be included in the maintenance services and will be charged at ADP's then current rates: a) Damage, defects or malfunctions resulting from misuse, accident, neglect, tampering, unusual physical or electrical stress, or causes other than normal or intended use; b) Your failure to provide and maintain a suitable installation environment; c) Any changes made to or any devices not provided by ADP attached to the Timeclock Equipment; and d) Malfunctions resulting from use of badges or supplies not approved by ADP
g) In order to keep the products current, ADP may perform maintenance fixes and other upgrades to the TLM products You are receiving. ADP will perform these upgrades on Your behalf for all hosted products. For non-hosted products, You will need to install the upgrade provided by ADP pursuant to the written notice provided to You.
h) The TLM Products are hosted by ADP in the United States. The TLM Products are intended for use by United States employees and to permit the transmission of data within the United States only. You are responsible for complying with all applicable data protection laws and represent that You obtained any employee consents necessary (or otherwise have complied with applicable law) to transmit the information to ADP in the United States or otherwise make the ADP TLM Products available to Your employees outside the United States. The TLM Products may not be used or accessed in any way that violates any applicable international, federal, state or local laws and/or regulations.

i) a. Biometric Services are defined as services provided by ADP to You via the use of timeclocks and software in connection with ADP's provision of TLM Services, to the extent such timeclocks or software collect, store or use Biometric Data ("Biometric Services"). Biometric Data includes information collected by timeclocks and software obtained by scanning a part of the employee's person including without limitation: a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry ("Biometric Identifiers"), or any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual ("Biometric Information") (collectively referred to as "Biometric Data").
b. Biometric Services are optional. In certain jurisdictions, there are laws and regulations that govern the collection, use, and retention of biometric information, which may apply to Your use of Biometric Services. To the extent You elect to use Biometric Services, You agree to comply with all such applicable laws and regulations in accordance with this Agreement. In the event You are unwilling to comply with laws and regulations applicable to Biometric Services, You will be able to continue to use the Services without Biometric Services. The following terms and conditions apply to Biometric Services to the extent Biometric
Services are part of the scope of Services: (i) Before any of Your or any of Your employees or independent contractors who use Biometric Services to record their attendance, hours worked or other work-related data ("Biometric User") is permitted to use any Biometric Services in a jurisdiction where laws and regulations govern such use, You will comply with the following requirements, in addition to any other requirements imposed by applicable law (to the extent there is a conflict between the requirements below and the requirements of applicable law, You will comply with applicable law): (a)You will implement, distribute and make available to the public, a written policy establishing Your policy with respect to the use of Biometric Data. Such policy will include: (1) a retention schedule and guidelines for permanently destroying Biometric Data, (2) a commitment to destroy Biometric Data when the initial purpose for collecting or obtaining such Biometric Data has been satisfied or within 3 years of the individual's last interaction with You, whichever occurs first; and (3) any additional requirements as required by applicable law. (b) You will provide notice to and procure and retain appropriate consents or releases from Biometric Users in the manner and to extent the same are required by applicable law, including: (1) notifying Biometric Users in writing that You, Your vendors, and/or the licensor of Your time and attendance software are collecting, capturing, or otherwise obtaining Biometric Users' Biometric Data, and that You are providing such Biometric Data to Your vendors and the licensor of Your time and attendance software; such notice will specify the purpose and length of time for which Biometric User's Biometric Data is being collected, stored, and used; (2) obtaining a written release or consent from Biometric Users (or their legally authorized representative) authorizing You, Your vendors, and licensor of Your time and attendance software to collect, store, and use the individual's Biometric Data for the specific purpose disclosed by You, and authorizing You to provide such Biometric Data to Your vendors and the licensor of Your time and attendance software; and (3) if requested by ADP, providing to ADP copies of the required consents or releases collected and retained by You, and/or certifying to ADP that such consents or releases have been obtained.
c. You will work with ADP to ensure that Biometric Data is retained and purged in accordance with applicable law. To the extent necessary for the purging or deletion of such Biometric Data, You agree to provide timely notification to ADP of the termination of the employment, or the satisfaction of the purpose for which Biometric Data was collected with respect to any given Biometric User. ADP is not responsible for Your failure to provide timely notification of the termination of the employment, or the satisfaction of the purpose for which Biometric Data was collected with respect to any given Biometric User.
d. You agree that You shall use a reasonable standard of care consistent with applicable law to store, transmit and protect from disclosure any Biometric Data. Such storage, transmission, and protection from disclosure shall be performed in a manner that is the same as or more protective than the manner in which You store, transmit and protect from disclosure other confidential and sensitive information, including personal information that can be used to uniquely identify an individual or an individual's account or property, such as genetic markers, genetic testing information, account

numbers, PINs, driver's license numbers and social security numbers.

e. Notwithstanding anything to the contrary in the Agreement, You agree that ADP and any licensor of any applicable Biometric Services (and their respective successors and assigns) are third party beneficiaries of this Agreement solely as it relates to Biometric Services.

f. If ADP determines that You have failed to comply with any applicable laws and regulations applicable to the Biometric Services, ADP may, in its sole discretion and upon notice to You, immediately suspend or terminate the Biometric Services.

## I. HR Services

a) If You request and are permitted access to HR Services, You agree to use such Services for research and reference purposes only and only for the benefit of Your employer. By submitting any content to ADP through any HR Services, including message boards, forums, chat rooms and chatbots, You grant ADP a royalty-free, perpetual, irrevocable, world-wide license to use, reproduce, modify, adapt, translate, create derivative works from, distribute, publish and display all such content (in whole or in part) and to incorporate such content in other works in any form, media or technology, whether currently existing or hereafter developed. By submitting any content to ADP, You represent and warrant to ADP that You have the unfettered right to give such a license to ADP. You agree that You will not submit any content that (a) infringes on the intellectual property rights of any other person or entity, unless You have the permission of the person or entity to submit the content and grant the license provided herein; (b) violates the privacy or publicity rights of any other person or entity, unless You have the permission of such person or entity to submit the content and thereby grant the license provided herein; (c) is offensive, obscene, defamatory, threatening or abusive, (d) advertises any other site or business or (e) contains computer programming routines or code designed to interfere in any way with the full, proper and timely operation of RUN or any HR Services or any computer system.

b) Materials accessible from or added to any HR Services or web sites by third parties, such as comments posted in discussion groups, documents, or forms, are strictly the responsibility of the third party who added such materials or made them accessible. While ADP reserves the right to monitor third-party discussions or content and to remove materials that ADP believes are inappropriate, ADP neither endorses nor undertakes to control, monitor, edit or assume responsibility for any such third-party material contained in or linked to any HR Services or web sites. Any relationship between You and any third party relating to HR Services shall be governed by any applicable agreement or terms of service between You and such third party and you assume all responsibility and risk arising from Your use of and/or reliance upon information, guidance or advice received from such third party, whether orally or in writing.

c) When You subscribe to any HR Services You can make one attributed copy of a document available through the HR Service for use within Your organization. You may not make multiple copies of documents without expressed written consent. Except for individual copies and direct use by You, You may not copy, modify, distribute, display, transmit, use or prepare derivative works based on the HR Services or any of their contents, or remove or alter any copyright, trademark or other proprietary notice from any part of the HR Services or any of the contents except where expressly instructed to do so.

d) Pursuant to the Digital Millennium Copyright Act, ADP has registered an agent with the U.S. Copyright Office. Notices of claimed copyright infringement on any web site should be directed to: Automatic Data Processing, Inc., 1 ADP Boulevard, Roseland, NJ 07068, Attn: Legal Department, Intellectual Property Counsel.

e) Although ADP makes every reasonable effort to ensure that the information, tools and data provided through the HR Services, which include the HR HelpDesk and HR Chatbots, are useful, accurate, and current, ADP cannot guarantee that the information, tools and data provided will be error-free. By using the HR Services, You assume all responsibility for and risk arising from Your use of and reliance upon the contents of the HR Services. You agree to defend, indemnify and hold harmless ADP and its affiliates and their successors or assigns from and against any liability whatsoever arising from or relating in any way to Your use of any HR Services.

## J. Employment Verification Services and Authorization as Agent; Employee Authorized Disclosure.

a) To the extent You have not opted out of receipt of employment and income verification request management services (Employment Verification Services), the terms in this section will govern Your use of the Employment Verification Services and Employee Authorized Disclosure. ADP currently provides the Employment Verification Services through its subcontractors, The Work Number®, an Equifax Workforce Solutions service, though ADP reserves the right to provide them through another entity (each, a "Verification Agent"). Notwithstanding anything to the contrary in these Terms, You authorize ADP and its Verification Agents to disclose, on Your behalf: employment information (including employees' place of employment and employment status) and income information (including total wages per year to date and previous year income) of Your and Your employees (or former employees) (collectively, "Verification Data"); to commercial, private, non-profit and governmental entities and their agents (collectively, "Verifiers"), who wish to obtain or verify any of Your or Your employees' (or former employees') Verification Data. Verification Data will be disclosed to Verifiers who certify they are entitled to receive such data (as described below) pursuant to the FCRA, and, in the case of income information requests, who additionally certify they have a record of the employee's consent to such disclosure or who utilize a salary key. In accordance with FCRA, Verification Data may be provided to Verifiers where (i) the employee has applied for a benefit (such as credit, other employment or social services assistance), (ii) the employee has obtained a benefit and the Verifier is seeking to (a) determine whether the employee is qualified to continue to receive the benefit; and/or (b) collect a debt or enforce other obligations undertaken by the employee in connection with the benefit; or (iii) the Verifier is otherwise entitled under FCRA to obtain the Verification Data. In certifying they have a record of the employee's consent, Verifiers generally rely on the employee's signature on the original application as authorization for the Verifier to access the employee's income data at the time of the application and throughout the life of the obligation. You understand that Verifiers are charged for commercial verifications processed through ADP or its Verification Agents.

b) Data Quality. If requested by ADP, You agree to work with ADP during implementation to produce a test file and validate the Verification Data included in the Verification Services database using validation reports made available by ADP or its Verification Agents. ADP will update the Verification Services database with the applicable Verification Data available in RUN or through the Services.

c) Notice to Furnishers of Information: Obligations of Furnishers of Information (Notice to Furnishers). You certify that You have read the Notice to Furnishers provided to You at the following URL: https://www.consumerfinance.gov/rules-policy/regulations/1022/m/#imageM2. You understand Your obligations as a data furnisher set forth in such notice and under FCRA which include duties regarding data accuracy and investigation of disputes, and certify You will comply with all such obligations. You further understand that if You do not comply with such obligations, ADP may correct incorrect Verification Data on Your behalf or terminate the Employment Verification Services upon 90 days prior written notice to You.

d) Archival Copies. Notwithstanding anything to the contrary in these Terms, You agree that, after the termination of these Terms, ADP and its Verification Agents may maintain archival copies of the Verification Data as needed to show the discharge and fulfillment of obligations to Your employees and former employees and the confidentiality provisions in these Terms will continue

to apply during the time that ADP and its Verification Agents maintain any such archival copies.

e) Additional Termination Provisions for Employment Verification Services. ADP may, in its sole discretion, terminate the Employment Verification Services at any time upon 90 days prior written notice to You should a Verification Agent notify ADP that it is no longer willing to provide the Employment Verification Services and ADP, after taking commercially reasonable steps, cannot engage a successor Verification Agent.

f) Employee Authorized Disclosure. ADP may disclose or use Personal Data of a Client's employee where such employee requests and consents to the disclosure for the employee's personal benefit (e.g., to verify an employee's identity in connection with a bank account application).

## 2. Document Vault

If You request and are permitted access to Document Vault through RUN, You agree to assume all risk and liability for all documents, information, data and content (collectively "Content") that You upload and store You understand all Content may be protected by intellectual property and You must have the rights to all Content that You upload and store. By affording You access to Document Vault, ADP is offering You a service that allows You to upload and store Your Content. By uploading Content into Document Vault, You agree and acknowledge that You are solely responsible for all Content uploaded and stored by You and that ADP has no responsibility or obligation to monitor or notify You of any non-compliance related to Your use of Document Vault. ADP is not responsible for the accuracy, completeness, appropriateness, or legality of the Content that You upload and store. ADP is not and will not be Your record keeper. Document Vault is a self-service feature and You acknowledge that while ADP may access Your Content, You are solely responsible for complying with all applicable laws regarding recordkeeping, record storage and record retention with respect to Your Content. ADP will not be responsible for any lost, damaged or irrecoverable content. By using Document Vault, You retain full ownership of all Content that You store. You agree that You will not use Document Vault to: (1) upload, store, transmit or otherwise make available any Content that spreads messages of terror or depicts torture or death or illegal acts; (2) harm minors in any way; (3) upload, store, transmit, or otherwise make available any Content that infringes any patent, trademark, trade secret, copyright or other proprietary right of any party; or (4) upload and store any content related to sex, violence, or any other illegal content. Uploading and storing such information will be considered a violation of these Terms and will be cause for immediate termination as set forth in Section 12. If You or ADP terminate this Agreement, Your access to RUN will terminate but You will have the ability to retrieve and download Content stored in Document Vault for a limited amount of time.

## 3. Background Check Services Fair Credit Reporting Obligations

A.If You request and are approved to receive Background Check Services which include receiving a "Report" or Reports from ADP, You acknowledge it is provided by ADP solely at Your request and instruction and that ADP is not acting as Your agent and not making any hiring decisions for or on your behalf. You also understand and agree that You shall do (and shall cause Your Affiliates receiving the ADP Background Check Services to do) the following:

1.	Review the Notice to Users of Consumer Reports: Obligations of Users under the Fair Credit Reporting Act ("Notice to Users"), available at https://files.consumerfinance.gov/f/201504_cfpb_summary_your-rights-under-fcra.pdf and perform the legal obligations set forth in the Notice to Users.

2.	Request, use, and maintain Reports in a manner consistent with applicable laws and regulations, as well as Your own hiring and document retention policies.

3.	Use the information provided by ADP for one-time use, for the permissible purpose(s) designated in this paragraph (the "Permissible Purpose(s)") only, and only in accordance with applicable laws and regulations The Permissible Purpose(s) is: Employment Purposes

4.	Before requesting any Report from ADP, make a clear and conspicuous disclosure to the individual who is the subject of the Report (the "Consumer") that a Report may be obtained for employment purposes, making such disclosure in writing and in a document consisting solely of the disclosure.

5.	If a Report constitutes an "investigative consumer report," as defined by the federal Fair Credit Reporting Act ("FCRA"), make a clear and accurate disclosure to the Consumer, as required by 15 U.S.C. § 1681d(a)(1), including a copy of the Consumer Financial Protection Bureau's ("CFPB") Summary of Your Rights Under the FCRA, as applicable. Further, upon written request by the Consumer within a reasonable period of time after receipt of the disclosure required by 15 U.S.C. § 1681d(a)(1), timely make a complete and accurate written disclosure to the Consumer of the nature and scope of any investigation requested

6.	Obtain written authorization from the Consumer for each Report prior to requesting any Report and retain such written authorization.

7.	Ensure full compliance with the FCRA and other applicable laws and regulations.

8.	If You form an intent to take an adverse action, based in whole or in part on any information contained in a Report obtained from ADP, provide (prior to taking the intended adverse action) proper additional notices to the Consumer, a copy of the Report obtained, and a Summary of Rights, as required by the FCRA or any other applicable law or regulation. After providing the additional pre-adverse action notice, You must provide the Consumer a reasonable opportunity to dispute information contained in a Report prior to Your making a final adverse hiring decision or taking any other adverse action based on any information contained in a Report. If You then decide to make a final adverse action, based in whole or in part on any information contained in a Report obtained from ADP. You must provide such additional notices required under the FCRA and any other applicable law or regulation, which notice shall include, at a minimum: (1) the name, address and telephone number of ADP; (2) a statement that ADP did not make the adverse decision and is not able to explain why the decision was made; (3) a statement setting forth the Consumer's right to obtain a free disclosure of the Report from ADP if the Consumer makes the request within 60 days; and (4) a statement setting forth the Consumer's right to dispute directly with ADP the accuracy or completeness of any information in the Report

9.	Take all measures to ensure that Reports will be requested, accessed, and/or viewed only by Your designated representatives, with the understanding that You may disclose information within any Report to the Consumer, in accordance with applicable laws and regulations.

10.	Be responsible for the final confidentiality of the Consumer's identity and for the security and dissemination of the customer number provided to You.

11.	Ensure that designated representative(s) do not attempt to obtain any Report on themselves or on any other person, except in the exercise of their official duties.

12.	Not resell any Report or any of the information contained in a Report.

13.	Notify ADP in writing within 10 days of any changes to Your company name, federal tax identification number, address, telephone number, contact person, sale or closure of business, merger, change in ownership of 50% or more of Your stock or assets, or any change in the nature of Your business that would in any way affect Your right to request and receive Reports.

B. You certify and consent to each of the following each time You order a Report with respect to a Consumer in the United States:

1	You certify that You will use the Reports and information contained therein only for the following specific Permissible Purpose(s): Employment Purposes. Relatedly, You certify that You

will not use the Report or information therein for any other purpose.

2.  You certify that You have read the Notice to Users and that You have read and understand Your obligations under the FCRA, as well as the possible penalties for requesting Reports under false pretenses or without a permissible purpose.

3.  You agree not to place an order for or otherwise request a Report for employment purposes unless (1) You have provided to the Consumer a clear and conspicuous disclosure in writing, in a document consisting solely of the disclosure, that a consumer report may be obtained for employment purposes and (2) You have authorized in writing the procurement of the Report. You, therefore, certify that, prior to placing any order for a Report for an employment purpose, You will provide the required disclosures to the Consumer and receive the required authorizations from the Consumer in accordance with the FCRA, including, but not limited to, in compliance with 15 U.S.C. § 1681b(b)(2).

4.  You certify that You will comply with the pre-adverse and adverse action notice requirements contained in 15 U.S.C. §§ 1681b(b)(3) and 1681m, if You are considering taking an adverse action against a Consumer.

5.  You certify that You will not use information from any Report in violation of any applicable laws or regulations, including, but not limited to, any applicable federal or state equal employment opportunity law or regulation.

6.  You agree that the action of placing an order for or otherwise requesting a Report constitutes an affirmative certification to ADP as to the Consumer in question, and that by placing an order for or otherwise requesting a Report, You are certifying as to the Consumer in question that: (1) You have provided the Consumer a clear and conspicuous disclosure in writing, in a document consisting solely of the disclosure, that a consumer report may be obtained for employment purposes; (2) that the Consumer has authorized in writing the procurement of the Report; (3) if applicable, You will comply with 15 U.S.C. § 1681b(b)(3) (Your pre-adverse action obligations); and (4) no information in the Report will be used in violation of any applicable laws or regulations, including, but not limited to, any applicable federal or state equal employment opportunity law or regulation.

7.  You agree not to place an order for or otherwise request a Report that constitutes an "investigative consumer report," as defined by the FCRA, unless You have provided a clear and accurate disclosure to the Consumer, as required by 15 U.S.C. § 1681d(a)(1), including a copy of the CFPB's Summary of Your Rights under the FCRA, as applicable. You, therefore, certify that prior to placing any order for a Report that constitutes an "investigative consumer report," as defined by the FCRA, You will provide the required disclosures to the Consumer and receive the required authorizations from the Consumer in accordance with the FCRA, including, but not limited to, in compliance with 15 U.S.C. § 1681d(a).

8.  You certify that for any Report constituting an "investigative consumer report," as defined by the FCRA, You will provide additional disclosures as required by 15 U.S.C. § 1681d(b). Specifically, You certify that You will comply with 15 U.S.C. § 1681d(b) by timely making a complete and accurate written disclosure to the Consumer of the nature and scope of any investigation it requests, upon request made by the Consumer within a reasonable period of time after receipt of the disclosure required by 15 U.S.C. § 1681d(a)(1).

9.  You agree that by placing an order for or otherwise requesting a Report that constitutes an "investigative consumer report," as defined by the FCRA, the action of placing the order or otherwise requesting such a Report constitutes an affirmative certification as to the Consumer in question, and that You are, therefore, certifying as to the Consumer in question, that: (1) You have provided to the Consumer the written disclosures for investigative consumer reports, as required by 15 U.S.C. § 1681d(a)(1), including a copy of the Consumer Financial Protection Bureau's ("CFPB") Summary of Your Rights under the FCRA, as applicable; and (2) if applicable, You will comply with the additional disclosure requirements imposed by 15 U.S.C. § 1681d(b).

10.  To the extent You purchase employment reference verification services in connection with the ADP Background Check Services, You certify that You have read and agree to comply with the terms of use issued by ADP's vendor, TALX Corporation, set forth at www.adpselect.com/ADPostEmploymentInformationTerms.pdf, as the same may be amended from time to time upon notice to You.

C  1.  You also agree to  take all measures to ensure that Reports will be requested, accessed and/or viewed only by Your designated representatives and only for employment purposes, provided, however, that You may disclose information within any Report obtained from ADP hereunder to an applicant or employee in accordance with applicable law.

2.  You understand and agree that You (and not ADP) are solely responsible for ensuring compliance with all laws applicable to users of Reports, including, but not limited to, the disclosure and authorization requirements imposed by 15 U.S.C. § 1681b(b)(2), the disclosure requirements imposed by 15 U.S.C. § 1681d(a)-(b), the pre-adverse action notice obligations imposed by 15 U.S.C. § 1681b(b)(3), and the adverse action notice obligations imposed by 15 U.S.C. § 1681m.

3.  Within 10 days following ADP's request, You shall make available for review such records as ADP deems necessary to determine that You are in compliance with applicable laws and regulations relating to the ADP Background Check Services ("Compliance Review"), which records may include, among other things, Consumer and vendor authorizations/consents, but shall not include Your financial records. Your cooperation with this Compliance Review is essential to the continued provision of the ADP Background Check Services. If either (i) You fail to cooperate with ADP in the conduct of a Compliance Review or (ii) as a part of a Compliance Review, ADP determines that You have failed to comply with any laws or regulations applicable to the ADP Background Check Services, ADP may, in its sole discretion and upon notice to You, immediately suspend or terminate the ADP Background Check Services.

4.  Either party may terminate the ADP Background Check Services at any time upon 30 days' prior written notice to the other party. Further, if ADP determines that You have failed to comply with any provision of these Terms, ADP may, at its sole discretion and upon notice to Client, immediately suspend or terminate the ADP Background Check Services.

5.  You understand that notwithstanding any sample forms provided by ADP, in whatever format, for the Background Check Services, You are responsible for the content of such forms.

**4. Fees; Taxes; Payments**

A. Fees/Taxes. You agree to pay ADP for the Services at the rates specified on the Sales Order, digital purchase page or receipt, or similar document, whether produced on-line, sent to You via email, posted in the RUN platform, or otherwise provided to You by ADP. You will pay ADP for any Services, employees or additional services added by You in the future, and will be responsible for any banking related fees assessed by ADP with respect to such things as wires, insufficient funds, etc., and any applicable fees for additional Tax Filing Services such as amendments, late originals, eFile rejections, etc., at ADP's then prevailing prices and fees, including for the additional services or employees or any services You purchase through the ADP Marketplace. ADP does not impose a charge for accessing its mobile application, but third party providers may charge fees to You to access data. You are solely responsible for any third party fees or charges associated with accessing any mobile application. You will also be obligated to pay any maintenance fees or charges assessed for any 30-day period during which You have not processed payroll (excluding digital purchasers of online payroll subscriptions for which maintenance fees shall not be applicable). If You are a new ADP client processing on RUN, after the initial six months of service, ADP may increase base processing fees and charges for the Services at any time upon at least 30 days prior notice to You but otherwise reserves the right to increase pricing from time to time for any additional per use features and services, including but not limited to those listed

on Your sales order, available through the RUN platform, or sent to You by email or otherwise, and Your continued use of RUN or the Services constitutes Your acceptance of such fees. If You previously processed payroll with ADP on another payroll platform, ADP may increase prices for the Services at any time upon at least 30 days prior notice to You. If You fail to pay any amount due hereunder, whether by acceleration or otherwise, You, on written demand, agree to pay interest at the rate of 1.5% per month (or the maximum allowed by law if less) on such past due amount from the due date until the payment date. You also agree to reimburse ADP for any expenses incurred, including interest and reasonable attorney fees, in collecting amounts due ADP hereunder. There will be added to all payments hereunder amounts equal to any applicable taxes levied or based on this Agreement, excluding taxes based on ADP's net income. In the event that, due to changes in legal requirements, product modifications or enhancements or new product offerings in connection with any Background Check, ADP provides additional services not otherwise included in the selected Background Check Services, as may be modified, enhanced or changed by ADP from time to time, such additional services will be provided subject to an additional charge. In addition, if any change in the implementation of the Background Check Services occurs that requires ADP to devote resources, spend time or other costs not contemplated by this Agreement, You agree to pay such additional costs as required by ADP. If You receive Background Check Services, a service fee will apply when ordering the New York Consolidated Criminal History Report. You agree that Your start date may change depending on when You start processing payroll but these Terms still apply.

B. Payments. ADP accepts direct debit of funds ("DDF") as payment for the Services. ADP will not accept cash, checks, C.O.D. orders and wire transfers for the Services. ADP does not accept credit cards except in limited circumstances for specific services. Your bank account will be debited, or Your credit card charged, as applicable. ADP may obtain pre-approval from the credit card company for an amount up to the amount of the order. Billing to Your credit card occurs once You click the Purchase Now button. For those specific services for which ADP accepts credit cards, the following are accepted: Visa, MasterCard, and American Express. PLEASE NOTE: ADP is unable to accept credit cards issued by banks outside of the United States. Debit cards and check cards have daily spending limits that may prevent the processing of Your order. If a purchase is declined online due to credit card issues, please ensure all data is correct and resubmit. If the transaction is not accepted You will be unable to use that card for Your purchase and should use another credit card.

C. You understand, acknowledge and agree that You, and not ADP, are responsible for the payment of any local, state, Federal or other taxes due and in no event will ADP be liable to pay any taxes due from You or Your employees, notwithstanding ADP's Tax Filing Services.

**5. License to use the Services**

A. RUN, the Services, any content, materials, tools, calculators, text or images and related software and systems are the licensed and/or owned property of and embody the proprietary trade secret technology of ADP and/or its licensors and are protected by copyright laws and international copyright treaties, as well as other intellectual property laws. The fees You pay ADP for RUN include a license fee that entitles You to use the related software and systems to access data processing services. The right to use RUN and access the data processing services provided by RUN is granted only to subscribers/licensees of ADP's RUN and their employees, for the sole purpose of using RUN, and this license terminates when You stop receiving RUN. ADP grants You a non-exclusive, non-transferable license to use RUN to access data processing services, and any related documentation supplied to You by ADP. Access to RUN and related systems and software are licensed not sold. You may not modify, create derivative works from, reverse engineer, decompile or disassemble or otherwise try to discover any trade secret contained in RUN or in any software or system used to provide RUN, except and only to the extent that applicable law expressly permits, despite this limitation. You may not transfer, sell, rent, lease, lend or use RUN, the Services or any software or system used to provide them, to any third person or for commercial software hosting or other service bureau services. You may not download all or any part of ADP's proprietary software. You receive no rights to RUN software or systems or intellectual property of ADP or its licensors, except as expressly stated herein. ADP may terminate or suspend Your access to RUN or any related Services (in whole or in part) at any time, with or without notice, if ADP has reason to believe that You have violated these terms or are otherwise using the Services in an inappropriate manner.

RUN and related software and systems are intended to permit the transmission of data from within the United States and may not be used or accessed from outside the United States or in any way that violates any applicable international, federal, state or local laws and/or regulations.

B. Teledata Clients:  If You are a Teledata client, You are not permitted to access or use the ADP proprietary software except to view Your company data, print standard reports and modify employee data. You cannot use the ADP proprietary software to run payroll. As a Teledata client You have chosen to transmit Your payroll, tax and related information to ADP either by fax or over the telephone to an ADP representative. Therefore, the license and software use rights granted under these Terms to use RUN do not apply to You except as noted above.

C. Mobile Devices.  If you are accessing RUN on a mobile device (a "Device") or downloading the ADP mobile application for Services ("Licensed Application") on a Device, the following additional terms apply:

a) Services. The Services available through the Licensed Application are licensed, not sold, to You for use under these Terms, subject to the ADP standard terms of service currently governing ADP's provision of Services to You. If you are downloading the Licensed Application onto a Device to access the Services, then the word "Site" as referenced herein then will be deemed to mean "Licensed Application".

b) Scope of License. The license granted to You for the Licensed Application, or by Your use of the Site on a Device, is a limited, non-transferable license to use the Licensed Application or Site by means of a Device that is approved for use for the Services, that You own or control and as permitted by the Device's usage rules. You may not distribute or make the Services available over a network where they could be used by multiple Devices at the same time.

c) Commercial Items. The Licensed Application and related documentation are "Commercial Items" as that term is defined at 48 C.F.R. Section 2.101, consisting of "Commercial Computer Software" and "Commercial Computer Software Documentation", as such terms are used in 48 C.F.R. Section 12.212 or 48 C.F.R. Section 227.7202, as applicable. Consistent with 48 C.F.R. Section 12.212 or 48 C.F.R. Section 227.7202-1 through 227.7202-4, as applicable, the Commercial Computer Software and Commercial Computer Software Documentation are being licensed to US Government end users (a) only as Commercial Items and (b) with only those rights as are granted to all other end users pursuant to the terms and conditions herein. Unpublished rights reserved under the copyright laws of the United States.

d) Access to other services from Devices. In addition, third party services and third party materials that may be accessed from, displayed on or linked to the Device are not available in all languages or in all countries. ADP makes no representation that such services and third party materials are appropriate or available for use in any particular location. To the extent You choose to access such services or third party materials from your Device, you do so at Your own initiative and are responsible for compliance with any applicable laws including, but not limited to, applicable local laws. ADP, and its licensors, reserve the right to change, suspend, remove, or disable access to any Services at any time without notice. In no event will ADP be liable for the removal of or disabling of access to any such Services. ADP may also impose limits on the use of or access to certain Services, in any case and without notice or liability.

**6. Account Security and Passwords**

A. In order to access and use RUN You will be required to provide proper credentials including Your User Name, Password and any other authentication required by ADP ("Authentication") to access RUN. You are responsible for safeguarding the confidentiality of Your account information (including user email address(es) and Your Authentication selected by You or issued to You) and agree to take any and all actions necessary to maintain the privacy of Your Authentication for RUN. You are responsible for any use or misuse of Your account or RUN resulting from any third party, including any individual, contractor or vendor, using any Authentication selected by You or issued to You. ADP will have no liability for any claims or losses as a result of You sharing or allowing access to Your Authentication. You agree to notify ADP immediately of any known or suspected access or use by an Unauthorized Third Party, including unauthorized access to or use of Your account, Authentication of any individual user to whom You have issued Authentication or any other breach of security, or misuse of RUN known to or suspected by You. You are responsible for maintaining the security and confidentiality of Your Authentication involved in obtaining access to password protected or secure areas of ADP sites and systems and shall not disclose Your Authentication or your confidential information to Unauthorized Third Parties. In order to protect You and your data, ADP may suspend your use of ADP, RUN or the Services, without notice, pending an investigation, if any unauthorized disclosure or use or breach of security is suspected.

B. You may change Your Authentication at any time by following the instructions located under the Security section of the Company Tab ("My Security Profile" and "Change My Password") in RUN. Data transmitted through RUN is encrypted for the user's protection. However, the security of transmissions over the Internet can never be guaranteed. ADP is not responsible for any interception or interruption of any communications through RUN or related software or systems or for changes to or breach of data.

C. In order to protect You and Your data, ADP may suspend Your use of the Services immediately, without notice, pending an investigation, if any breach of security is suspected. In connection with the Background Check Services, You acknowledge that, for security reasons, Your Background Check account may be inactivated by ADP after a prolonged period of inactivity; provided, however, that inactivation of an account does not result in termination of this Agreement. In the event Your Background Check account becomes inactive, You must contact ADP to reactivate the Background Check account. You acknowledge that as a result of an account being deactivated, in certain circumstances, You may be required to provide new certifications with respect to Your obligations under this Agreement and in connection with the Background Check Services.

**7. Disclaimer of Warranties**

A. NEITHER ADP NOR ITS LICENSORS OR VENDORS MAKE ANY REPRESENTATIONS OR WARRANTIES ABOUT THE CONDITION, SUITABILITY, RELIABILITY, AVAILABILITY, COMPLETENESS, SECURITY, TIMELINESS, OR ACCURACY OF RUN OR THE SERVICES OR ANY INFORMATION, CALCULATIONS, SOFTWARE OR OTHER MATERIALS OR RESULTS INCLUDED IN OR AVAILABLE THROUGH RUN OR THE SERVICES, FOR ANY PURPOSE. ALL OF THE FOREGOING ARE PROVIDED "AS IS" WITHOUT WARRANTY OF ANY KIND. THE SERVICES ARE PROVIDED AS A RESEARCH AND REFERENCE TOOL ONLY AND DO NOT AND ARE NOT INTENDED TO, CONSTITUTE LEGAL ADVICE. ADP DOES NOT PROVIDE LEGAL ADVICE. ADP AND ITS LICENSORS AND VENDORS HEREBY DISCLAIM ALL REPRESENTATIONS, WARRANTIES AND CONDITIONS, EXPRESS OR IMPLIED, WITH REGARD TO RUN OR ANY INFORMATION, CALCULATIONS, SOFTWARE OR OTHER MATERIALS OR RESULTS INCLUDED IN OR AVAILABLE THROUGH RUN OR THE SERVICES, INCLUDING ALL IMPLIED WARRANTIES AND CONDITIONS OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, TITLE AND NON-INFRINGEMENT.

WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, YOU WILL BE RESPONSIBLE FOR (AND NEITHER ADP NOR ITS LICENSORS OR VENDORS WILL BE LIABLE FOR): (1) THE CONSEQUENCES OF ANY INSTRUCTIONS YOU MAY GIVE TO ADP; (2) YOUR FAILURE TO USE RUN IN THE MANNER PRESCRIBED BY ADP; (3) YOUR FAILURE TO PROTECT YOUR AUTHENTICATION, INCLUDING WITH RESPECT TO ADP'S POLICIES REGARDING PROVIDING ACCOUNT AUTHENTICATION ACCESS TO THIRD PARTIES; (4) MAINTAINING AND BACKING-UP ANY INFORMATION YOU ARE PROVIDING OR USING IN CONNECTION WITH THE ADP RUN SERVICES; AND (5) YOUR FAILURE TO SUPPLY ACCURATE INPUT INFORMATION.

B. ADP will not be liable for any damage or losses, including damage, loss or disclosure of data, accounts, revenue or business, arising out of or otherwise related to (1) use of RUN by You or by any other party to whom You have given access to Your RUN account information or RUN; (2) errors, bugs or other defects in RUN; (3) lost company, employee or vendor information (e.g. payroll information, social security numbers, lost records regarding withholdings, etc.); (4) illegal or criminal activities; (5) mistakes, omissions, interruptions, deletion of files or e-mail, loss of or damage to data, errors, defects, viruses, delays in operation, or transmission, or any failure of performance, whether or not limited to acts of God, communications failure, theft, destruction or unauthorized access to ADP's records, programs or services, or (6) Your actions with Your employees or vendors, or the use of their information.

C. Third party links, web sites, content and services.
a) ADP prohibits unauthorized links to the Site or the Services and the framing of any information contained on the Site or any portion of the Site or the Services. ADP reserves the right to disable any unauthorized links or frames. ADP has no responsibility or liability for any material on other web sites that may contain links to the Site or the Services. The Services and any web sites may display, include or make available, access, content, data, information, applications, links, terms of use or materials of or from third parties or provide links to certain third party web sites not under the control of ADP. Third party materials and links to other web sites are provided solely as a convenience to You. You acknowledge and agree that ADP is not responsible for examining or evaluating the content, accuracy, completeness, timeliness, validity, copyright compliance, legality, decency, quality or any other aspect of such third party materials or web sites. ADP does not warrant or endorse and does not assume and will not have any liability or responsibility to You or any other person for any third party services, terms, third party materials or web sites, or for any other materials, products, or services of third parties. You also agree that any third party charges that are necessary to use the Site or the Services, such as internet charges and service provider charges, are Your responsibility and not that of ADP. You understand that by using any of the third party services, You may encounter content that may be deemed offensive, indecent, or objectionable, which content may or may not be identified as having explicit language, and that the results of any search or entering of a particular URL may automatically and unintentionally generate links or references to objectionable material. Nevertheless, You agree to use such services at Your sole risk and ADP shall not have any liability to You for content that may be found to be offensive, indecent, or objectionable. ADP DOES NOT ENDORSE, WARRANT, OR GUARANTEE ANY PRODUCT, INFORMATION OR SERVICE OFFERED BY A THIRD PARTY THROUGH THE SITE OR SERVICES, AND WILL NOT BE A PARTY TO OR IN ANY WAY MONITOR ANY TRANSACTION BETWEEN ANY USER OF THE SITE OR SERVICES AND ANY SUCH THIRD PARTY PROVIDER.

b) Services available through or integrated with RUN. At times, ADP may make available to You

through RUN or the Services, or integrate RUN or the Services with, the services of a third party, either through a link, integration, or otherwise. ADP reserves the right to terminate such links, services or integrations at any time for any reason. If You use any third party services that are integrated with or linked to the Site or Services which require the transmission, use, sharing, access or exchange of Your Client Content or any other payroll or other data or information You provide to ADP or the third party, You are expressly agreeing to the transmission, use, sharing, access and exchange of such data between ADP and the third party. Your use of any third party services will be governed by any terms You agree to with the third party and in the event of any conflict between these Terms and any third party terms, these Terms will apply to the provision of the RUN Services by ADP to You.

c) ADP Marketplace. ADP may provide You with access to the ADP Marketplace. You acknowledge that any third party application or service purchased by You through the ADP Marketplace is provided by a third party and not ADP and ADP makes no endorsements, representations or warranties (including any representations or warranties regarding compliance with laws) regarding such application or service. You will enter into a relationship directly with the third party provider of such application or service. Any application or service purchased through the ADP Marketplace will be governed exclusively by the terms and conditions agreed to by You and the third party provider and not by this Agreement. ADP will not provide any advice, service or support with respect to any third party application or service purchased on the ADP Marketplace.

d) Feedback. You acknowledge and agree that You or Your employees may be asked or have the opportunity to provide suggestions, comments, submissions, content or other feedback regarding RUN or the Services ("Feedback") either within RUN, directly to an ADP representative, or an ADP web or social media site or through surveys or links to or from third party sites that may collect such information from You on behalf of ADP. You agree that all Feedback will automatically become the property of ADP, without any compensation to You or any obligation for ADP to review the Feedback, is and will be given entirely voluntarily and any Feedback, even if designated or deemed as confidential by You, will not create any confidentiality obligation for ADP. Furthermore, You hereby acknowledge and understand that, with respect to any Feedback, ADP is and will be free to use, disclose, reproduce, license or otherwise distribute or redistribute, and exploit in any way the Feedback provided to it as it sees fit, entirely without obligation or restriction of any kind on account of intellectual property rights or otherwise. You represent and warrant that You own and have the right to provide such Feedback and will indemnify and hold ADP harmless from and against any claims resulting from a breach of this representation and warranty.

**8. Intellectual Property**

A. Ownership of Proprietary Rights. All computer programs (other than pre-packaged third-party software), tutorials and related documentation made available, directly or indirectly, by ADP to You as part of the Services are the exclusive property of ADP or the third parties from whom ADP has secured the rights to such Services. All rights, title and interest in or to any copyright, trademark, service mark, trade secret, and other proprietary right relating to the Services and the related logos, names, etc. are reserved. The use of any software included in, or supplied by ADP for use with, the Services will be governed by the license terms of this Agreement and any additional license (whether written, shrink-wrapped or on-line) that may be delivered to You in connection with Your use of RUN (such as any software required to view or print reports generated by RUN). In the event of a conflict, the terms of this Agreement shall prevail.

B. ADP Indemnity. Subject to the remainder of this Section 8B, ADP will defend You in any suit or cause of action, and indemnify and hold You harmless against any damages payable to any third party in any such suit or cause of action, alleging that the Services as used in accordance with this Agreement infringe any U.S. patent, copyright, trade secret or other proprietary right of any third party. The foregoing obligations of ADP are subject to the following requirements: You will take all reasonable steps to limit any potential damages which may result; You will promptly notify ADP of any and all such suits and causes of action; ADP controls any negotiations or defense of such suits and causes of action, and You assist as reasonably required by ADP. The foregoing obligations of ADP do not apply to the extent that the infringing Services or portions or components thereof or modifications thereto were not supplied or directed by ADP, or were combined with other services, processes or materials not supplied or directed by ADP (where the alleged infringement relates to such combination).

C. Use of Your Authorized Marks. In the event that ADP makes available branding of any materials, cards and/or websites associated with the Services and You request such branding, You grant to ADP, to the card issuers and any third party service providers designated by ADP (collectively, "Authorized Users") the right to display Your trademarks, trade names, service marks, logos and designs designated by You (the "Authorized Marks"), subject to Your right to review and approve the copy prior to the use of such Authorized Marks. This authorization will cover the term of this Agreement and, if You are receiving Pay Card Services, any period of ongoing use of the Cards after termination of this Agreement.

**9. Your Warranties**

By subscribing to RUN, You make the following representations and warranties: (1) You have the legal capacity and authority to (a) enter into and be bound by these Terms, (b) to subscribe to and use RUN in accordance with these Terms and (c) if You are acting in a corporate capacity, to bind Your company; (2) You will not use RUN for any purpose that is unlawful, or prohibited by these Terms (as may be modified from time to time); and (3) All information supplied by You or by others using Your account is true and accurate, including information submitted as part of the registration, subscription and billing process.

**10. Confidentiality/Privacy**

A. Confidentiality. All Confidential Information disclosed hereunder will remain the exclusive and confidential property of the disclosing party. The receiving party will not disclose the Confidential Information of the disclosing party and will use at least the same degree of care, security, discretion and diligence in protecting the Confidential Information of the disclosing party as it uses with its own confidential information. The receiving party will limit access to Confidential Information to its

employees and authorized representatives with a need to know and will instruct them to keep such information confidential. Notwithstanding the foregoing, the receiving party may disclose Confidential Information to the extent necessary to enforce its rights under this Agreement. In addition to any other authorizations in these Terms, You consent and agree that ADP may: (i) disclose Confidential Information to the extent necessary for ADP to perform the Services, (ii) disclose Confidential Information among ADP affiliates, subsidiaries or companies under common control with ADP, (iii) share Your FEIN number(s) with its trusted business partners in order to identify mutual clients, (iv) disclose Confidential Information to a third party, including subcontractors, to the extent that disclosure of such information is required to perform the Services, the Background Check Services or any other Services You requested, or disclosure is required in response to a subpoena, regulatory notice, summons or other legal process or in connection with any litigation, (v) disclose Your banking and company information to the ADP banking partner that referred You to ADP, and (vi) disclose Confidential Information in connection with the Background Check Services as is required by ADP under any requirements of governmental data sources and consumer reporting agencies (for which ADP is a reseller), or under or to comply with any applicable laws, rules and/or regulations (including, without limitation, in connection with an audit or regulatory examination by a governmental authority). You acknowledge and agree that ADP or its affiliates may from time to time communicate, including by email, directly with You and/or Your current and terminated employees and/or Your current and terminated payees in order to service or provide the Services, solicit Feedback or market its products and services or those of the recommended vendors or partners and may use certain Confidential Information to do so. ADP may also provide access to and the ability to view, print or download pay statements or other information to the extent related to such employee or payee. This access will be provided as part of the Services for the term of this Agreement and ADP may, for such period of time as determined solely by ADP, continue to provide such access to employees following any termination or suspension of the Services as a convenience and to the extent ADP maintains the information in accordance with these Terms. You agree ADP may additionally disclose and/or use Your employee information where the employee has requested and/or provided their authorization for the disclosure and use of the information. Additionally, ADP may share Confidential Information with its affiliate, ADP Broker Dealer, Inc. ("ADPBD") in order for ADP or ADPBD to market or service "Rollover IRAs" for Your terminated employees. You also agree that ADP or ADPBD may disclose such information to a terminated employee to the extent it relates to such employee and acknowledges that ADP or ADPBD may be compensated by a financial institution if an employee selects a Rollover IRA. Upon the request of the disclosing party, the receiving party will return or destroy all Confidential Information of the disclosing party that is in its possession. Notwithstanding the foregoing, ADP can retain Information for regulatory purposes or in back-up files, provided that ADP's confidentiality obligations hereunder continue to apply. You also agree that, in addition to the use of Your or Your employees' Confidential Information as otherwise set forth in these Terms, ADP may also use Your, Your employees' and participants' and other Service recipients' information for purposes other than performance of the Services or as otherwise set forth, in an aggregated, anonymized form, such that neither You nor such person(s) may be identified, and You will have no ownership interest in such aggregated, anonymized data. You authorize ADP to release employee-related, and such other data as required to perform the Services, to third party vendors of Yours as designated by You from time to time. For purposes of this Section, "Confidential Information" will mean: all information of a confidential or proprietary nature provided by the disclosing party to the receiving party for use in connection with the Services, and will include, with respect to any Background Check Services, the Guide and any ADP operating guidelines which may be provided with respect to the Background Check Services, but does not include (i) information that is already known by the receiving party, (ii) information that becomes generally available to the public other than as a result of disclosure by the receiving party in violation of this Agreement, and (iii) information that becomes known to the receiving party from a source other than the disclosing party on a non-confidential basis. Confidential Information of ADP also includes all ADP trade secrets, processes, proprietary data, information or documentation related thereto, any pricing or service information or communications furnished to You by ADP. Your Confidential Information also includes all personally identifiable payroll, employee-level and payee-level data, as well as Your Personal Data as defined below in Section 10B and the attached Data Privacy Appendix.

B. Privacy. ADP is Your service provider and processes data in accordance with Your instructions. The Data Privacy Appendix attached hereto shall supplement these Terms and outline the data protection obligations between You and ADP. Information about You submitted through the Site or the Services is subject to ADP's privacy statement, located at https://privacy.adp.com/privacy.html.

**11. Limitation of Liability**
This Section 11 sets forth the full extent of ADP's liability for damages resulting from this Agreement or the Services rendered or to be rendered hereunder, regardless of the form in which such liability or claim for damages may be asserted, and sets forth the full extent of Your remedies. Each of ADP and You acknowledges that the fees for the Services to be provided hereunder reflect the allocation of risk set forth in this Section 11.

A. ADP Responsibility. ADP will correct any of Your reports, data or tax agency filings, as the case may be, produced incorrectly as a result of an ADP error, at no charge to You. Additionally, ADP will reimburse You for (i) actual damages You incur as a direct result of the criminal or fraudulent acts or willful misconduct of ADP or any of its employees, or the loss or misdirection of Your funds in possession or control of ADP due to ADP's error or omission (ii) any penalty imposed against You as a result of an error or omission made by ADP in performing the Tax Filing Services or (iii) any interest assessed against You as a result of ADP holding Your tax funds past the applicable due date as a result of an error or omission made by ADP in performing the Tax Filing Services.

B. Your Responsibility. You will be responsible for (i) the consequences of any instructions You may give to ADP, (ii) Your failure to use the Services in the manner prescribed by ADP, and (iii) Your failure to supply accurate input information.

C. Limit on Monetary Damages. Notwithstanding anything to the contrary contained in this Agreement (other than as set forth in Section 11.A. regarding ADP errors and any direct damages You incur for infringement claims as set forth in Section 6.B. above), ADP's aggregate liability under this Agreement during any calendar year for damages (monetary or otherwise) under any circumstances for claims of any type or character made by You or any third party arising from or related to the Services, will be limited to the lesser of (i) the amount of actual damages incurred by You or (ii) ADP's charges for the affected Services; provided however, that ADP's aggregate liability hereunder in any calendar year will not exceed the average charge for one payroll processing paid by You to ADP for the payroll services during such calendar year. ADP will issue You a credit(s) equal to the applicable amount and any such credit(s) will be applied against subsequent fees owed by You.

D. No Consequential Damages. NEITHER ADP, NOR YOU WILL BE RESPONSIBLE FOR SPECIAL, INDIRECT, INCIDENTAL, CONSEQUENTIAL OR OTHER SIMILAR DAMAGES (INCLUDING LOST PROFITS OR DAMAGES FOR BUSINESS INTERRUPTION OR LOSS OF INFORMATION) THAT THE OTHER PARTY MAY INCUR OR EXPERIENCE IN CONNECTION WITH THIS AGREEMENT OR THE SERVICES, HOWEVER CAUSED AND UNDER WHATEVER THEORY OF LIABILITY, EVEN IF SUCH PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

**12. Term and Termination; Your Default; Remedies Upon Default**
A. Termination. Either party can terminate this Agreement at any time on at least thirty (30) days prior written notice. Either Party can also suspend performance and/or terminate this Agreement immediately upon written notice at any time if: (i) the other Party is in material breach of any material warranty, term, condition or covenant of this Agreement and fails to cure that breach within thirty (30) days after written notice thereof; (ii) the other party stops business operations; or (iii) the other Party becomes insolvent, generally stops paying its debts as they become due or seeks protection under any bankruptcy, receivership, trust deed, creditors arrangement, composition or comparable proceeding, or if any such proceeding is instituted against the other (and not dismissed within 60 days after commencement of one of the foregoing events). ADP may also suspend performance and/or terminate this Agreement immediately without prior notice in the event You, Your employee(s) or any other third party (i) includes in any Services any Client Content, or undertakes any action(s), which is obscene, offensive, inappropriate, threatening, or malicious; which violates any applicable law or regulation, including if You have violated, or conducting business with You, a payee or subsidiary of Yours, or the provision of Services to You, is in violation of, or causes or will cause ADP or its Affiliates to be in violation of any sanction laws applicable to ADP or its Affiliates, or any contract, privacy or other third party right, or which otherwise exposes ADP to civil or criminal liability, including in response to any wrongful use or accesses the Services or any other systems of ADP used in the performance of its obligations under this Agreement or (ii) are involved in any dispute regarding authority to provide ADP with instructions under this Agreement and ADP is unable to determine the authorized contact on the account from whom to take instructions. Additionally, Payment Services may be immediately suspended or terminated by ADP without prior notice if (i) ADP has not received timely funds from You as required by Section 1C above; (ii) a bank notifies ADP that it is no longer willing to originate debits from Your account(s) and/or credits on Your behalf for any reason, (iii) the authorization to debit Your account is terminated or ADP reasonably believes that there is or has been fraudulent activity on the account, (iv) ADP reasonably determines that You no longer meet ADP's credit/financial eligibility requirements for such Services or (v) You have any material adverse change in Your financial condition. In addition to any other termination rights in this Agreement, if ADP determines that You have failed to comply with any provision of these Additional Terms related to Background Check Services, ADP may, at its sole discretion and upon notice to You, immediately terminate any Background Check Services.

B. Post-Termination. If any of the Services are or may be terminated by ADP, ADP will be entitled to allocate any funds available to ADP in such priorities as ADP (in its sole discretion) may determine appropriate (including reimbursing ADP for payments made by ADP hereunder on Your behalf to a third party) and You will immediately: (i) become solely responsible for all third party payment obligations now or hereafter due (including, for Tax Filing Services, all related penalties and interest), (ii) reimburse ADP for all payments made by ADP hereunder on Your behalf to any third party, and/or (iii) pay any and all fees and charges invoiced by ADP to You relating to RUN. If ADP elects not to terminate any or all of the Services as permitted hereunder, ADP may require You to pay Your outstanding and all future third-party amounts covered by the Services and/or ADP's fees and charges for the Services to ADP by bank or certified check or by wire transfer as a condition to receiving further Services.

**13. Funding Indemnification**
You will be liable for debits properly initiated by ADP hereunder. You unconditionally promise to pay to ADP the amount of any unfunded payroll (including any debit that is returned to ADP because of insufficient or uncollected funds or for any other reason), on demand and interest thereon at the rate set forth in Section 4A. Also, if any debit to an employee or other Payee's or Your account reversing or correcting a previously submitted credit(s) is returned for any reason, You unconditionally promise to pay the amount of such debit upon demand and interest thereon at the rate set forth in Section 4A. You will be liable for, and will indemnify ADP against, any loss, liability, claim, damage or exposure arising from or in connection with any fraudulent or criminal acts of Your employees or payees. You agree to cooperate with ADP and any other parties involved in processing any transactions hereunder to recover funds credited to You or any employee as a result of an error made by ADP or another party processing a transaction on behalf of ADP. You agree that in the event You overfund any amount due from You, ADP may return the funds to the bank account on file with ADP.

**14. Other Features**
A. Data Access/Accountant Connect Feature. When You authorize Your accounting professional or other third party ("Your Representative") to access the RUN Data Access or Accountant Connect feature, You grant Your Representative permission to view, access and/or print electronic reports and tax forms and notices, view, print and download or provide mapping to or for Your general ledger information and run payroll, as authorized by You. The information accessible by Your Representative is generated by RUN based on and/or including Your Client Content. This method of access may permit Your Representative to make changes or updates to Your Client Content, when You authorize Your Representative to process payroll using this feature. Your Representative will have access to employee level information for all employees, and will have the ability to grant that same access to others within their organization. You and Your Representative are solely responsible for any activity conducted with the Data Access or Accountant Connect feature by You or Your Representative, including with respect to Your Client Content, running payroll or general ledger mapping. ADP may keep Your payroll reports and tax forms for a period of time after any termination of Your services for a period of time designated by ADP and make these records and reports available to You or Your Authorized Representative to view, print and/or download, as a convenience, without obligation to do so, if Your Representative was previously authorized to access these records and reports.

B. CPA View Feature. When You authorize Your accounting professional ("Your CPA") to access the RUN CPA View feature, You grant Your CPA permission to view Your company and employee information and, view and/or print Your reports, view, print and/or update tax forms, download Your general ledger information, perform general ledger mappings (assign general ledger accounts to payroll items), as well as to change their login password and update their security profile. The information accessible by Your CPA is generated by RUN based on and/or including Your Client Content. This method of access will not permit Your CPA to make any changes or updates to Your Client Content. Your CPA will have access to employee level information for all employees. You and Your CPA are solely responsible for any activity conducted with the CPA View feature by You or Your CPA.

C. Multi-Company Access Feature. When You are processing Your payroll using RUN for multiple entities, RUN will provide You with the ability, through its Multi-Company Access Feature, to access multiple companies without having to log out of one company and log back into another company. When You utilize the Multi-Company Access feature You can assign multi-company access administrator rights to a RUN user. By doing so You acknowledge that such RUN user will have the authority to set up other RUN users for the feature. The list of companies that a user can access using this feature can be customized for each user. The user's role will be the same for all the companies listed for the user and may be changed during the Multi-Company Access setup. You, Your administrator and any users designated using this feature are responsible for any activity conducted in RUN.

**15. General**
A. Inducement. You have not been induced to enter into this Agreement by any representation or warranty



not set forth in this Agreement. This Agreement contains the entire agreement of the parties with respect to its subject matter and supersedes and overrides all prior agreements on the same subject matter, including any printed terms You may have signed, and will govern all disclosures and exchanges of Confidential Information made by the parties previously hereto. This Agreement contains the most updated RUN terms and may be modified from time to time. In the event of a conflict between these Terms and any other previously signed agreements, these Terms will apply unless You have signed a *Resource on Run Client Services Agreement* ("Resource CSA") in which case the Resource CSA will govern the provision of those Services to You.

B. No Third Party Beneficiaries  ADP has no obligation to any third party (including, without limitation, Your employees and/or any taxing authorities) by virtue of this Agreement. Other than with respect to ADP's vendors/licensors as set forth under sections 1(F)(xvii), 7 and 11 above, there will be no third party beneficiaries to this Agreement.

C. Force Majeure  Any party hereto will be excused from performance under this Agreement for any period of time that the party is prevented from performing its obligations hereunder as a result of an act of God, war, utility or communication failure or other cause beyond the party's reasonable control.

D. Non-Hire  During the term of this Agreement, You will not solicit the employment of any ADP employee who has been involved in furnishing Services hereunder.

E. Waiver  The failure of either party at any time to enforce any right or remedy available to it under this Agreement with respect to any breach or failure by the other party will not be construed to be a waiver of such right or remedy with respect to any other breach or failure by the other party.

F. Severability  If any of the provisions of this Agreement will be invalid or unenforceable, such invalidity or unenforceability will not invalidate or render unenforceable the entire Agreement, but rather the entire Agreement will be construed as if not containing the particular invalid or unenforceable provision or provisions, and the rights and obligations of You and ADP will be construed and enforced accordingly.

G. Relationship of the Parties  You and ADP expressly understand and agree that each party is an independent contractor in the performance of each and every part of this Agreement, is solely responsible for all of its employees and agents and its labor costs and expenses arising in connection therewith.

H. Governing Law  This Agreement is governed by the laws of the State of New York without giving effect to its conflict of law provisions.

I. Pricing  The prices stated herein or in any sales order are not contingent or dependent on, or in any way related to, Your purchase of other products or services from ADP not covered hereunder, and will be honored regardless of whether or not such other products or services are purchased.

J. Printing These Terms and Conditions of Service  If You do not have print capability or You otherwise desire to obtain a hard copy of these Terms, please visit RUN customer service Web site and send an email requesting a hard copy. You may view Your Terms on the Forms page in the Support pages within the RUN application.



EXHIBIT A

**Pay Card Terms and Conditions of Service**

(i) Pay Card Services shall refer to ADP's payment of certain of Your Payees, through a Pay Card for wages, commissions, consulting fees or similar compensation or work-related expenses ("Permitted Payments") which are to be paid in Your normal payroll cycle. Pay Cards are issued by a financial institution selected by ADP (the "Issuing Bank"). The Pay Cards issued to Payees of Yours may be referred to collectively as the "Cards" or each a "Card" or "Pay Card" and Payees of Yours who receive a Card may be referred to herein collectively as Cardholders" or each a "Cardholder". You will assist and cooperate with ADP in the use of the Pay Card Services and will assign a liaison person to so assist ADP. You agree that You will use the Pay Card Services solely to direct legal Permitted Payments to Payees via the Pay Cards. You also agree that You will not unduly influence a Payee's decision with respect to receiving their Permitted Payments via a Pay Card. In addition, unless approved by ADP in writing, You agree that You may not make Cards available to individuals residing in any country other than the United States, and You represent and warrant that any payments that You request ADP to make hereunder will not violate any laws of the United States, including employment eligibility laws, and are for services rendered in the employment context. You shall not mail, distribute, transport or otherwise provide Cards to any individual outside the United States without the express written consent of ADP.

(ii) You understand and acknowledge that access to the ADP Pay Card Services shall be conditioned upon Your passing ADP's credentialing process prior to implementation and passing any additional credentialing that ADP may deem necessary in connection with the ADP Pay Card Services. You further understand that the Pay Card Services may be modified as ADP may deem appropriate to assist ADP or the Issuing Bank in complying with its obligations.

(iii) Cardholder Set-Up. You will set-up (or cause ADP to set-up) each Payee as a Cardholder using data and/or procedures required by Issuing Bank or ADP. You represent and warrant that You have all necessary consents and authorizations of each Payee included in submitted set-up data that is required under applicable law and rules, including NACHA (as defined below), for Payee to (a) receive payments from You on its Card and (b) participate in the ADP Pay Card Services. You agree to promptly provide documentation or records related to the set-up of Cardholders and participation of Cardholders in the ADP Pay Card Services to ADP and/or Issuing Bank upon request and agree that such information may be provided to any regulatory authority having jurisdiction over the Issuing Bank or ADP. You, and not ADP nor any of its subcontractors, is responsible for reviewing all enrollment information supplied by such Payees and confirming that it is accurate and complete. Prior to set-up of any Payee on the Cardholder database and distribution of a Card to such Payee, You will: (i) inspect identification documents that will verify such Payee's identity and eligibility to work in the U.S. ("Identity Verification Documents") (e.g., (1) a passport or (2) a U.S. issued driver's license or picture identification card issued by a state or U.S. other than the Social Security card or (3) a U.S. issued driver's license and birth certificate); and (ii) obtain from such Payee and provide to ADP the following information, which information provided shall be accurate and verified by You: (a) name, (b) residential street address (a Post Office Box is unacceptable), (c) date of birth; (d) social security number for U.S. citizens and permanent residents (or other government issued ID number acceptable to ADP and Issuing Bank for individuals who are not U.S. citizens or permanent residents), and (e) personal telephone number. You agree to provide such additional information as may be required by ADP or the Issuing Bank in issuing a Card. You further agree that ADP or Issuing Bank (directly or through a subcontractor) may request and obtain identity information and legal documentation directly from the Payee to verify the identity of any Payee set up on the Cardholder database or participating in the ADP Pay Card Services and that a Payee may be denied ADP Pay Card Services for several reasons, including Your or Payee's failure to provide accurate information or the inability by ADP or Issuing Bank (directly or through a subcontractor) to validate the personal information of the Payee. You also covenant to ADP and Issuing Bank that, with respect to each Cardholder, You will: (i) make and preserve either of the following: (a) at least one (1) copy of all Identity Verification Documents; or (b) a description of the Identity Verification Documents that were relied on by You noting the date the Verification Documents were reviewed, type of document (e.g., driver's license, government issued identification, passport, alien registration card, any identification number contained in the document, the place of issuance (e.g., state or country) and, if any, the date of issuance and expiration date, provided that if You utilize the Pay Card to pay independent contractors who use form 1099, You will preserve a copy of all Identity Verification Documents as required by (i)(a) above for those Payees. You agree to retain such documentation during the time that such Payee is a Cardholder until the earlier of (a) five years from termination of Your obligation to make payments to such Payee or (b) five years from termination of each Payee's Card account; provided, however, that in the event a longer retention period is required for the Issuing Bank or ADP to meet its legal obligations, as a result of a change in applicable law or official interpretations thereof, ADP shall provide notice of such longer retention period and You shall retain such documentation for such longer retention period.

(iv) Issuance of Pay Cards. You may be issued an inventory of Instant Issue Cards. If You are issued Instant Issue Cards, You are responsible for distributing Cards to Your Payees from Your inventory of Cards. Prior to providing Payee's information to ADP to issue a permanent Card or load value on an Instant Issue Card, You shall provide each Payee with the following notice required under the USA Patriot Act: "IMPORTANT INFORMATION ABOUT PROCEDURES FOR OPENING A NEW PREPAID CARD ACCOUNT. To help the government fight the funding of terrorism and money laundering activities, federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account. What this means for you: When you open a Prepaid Card account, we may require your name, address, date of birth, Social Security number, tax identification number and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents." The USA Patriot Act notice may be updated from time to time by ADP or the Issuing Bank. Prior to or in conjunction with distributing a Card to any Payee, You shall (i) remove the account routing information from the card kit; and (ii) provide each Payee with a copy of the Issuing Bank's Terms and Conditions and other enrollment-related materials. You will provide Cardholders with any other information and materials regarding the ADP Pay Card Services provided to You from time to time that is necessary for Issuing Bank or ADP to comply with applicable laws or regulations. You will be responsible for the safekeeping of the inventory of Cards received by You and for any theft or misappropriation of any such Cards prior to a valid and authorized issuance and distribution of such Card to a Payee of Yours. You shall not, under any circumstance, disclose or make available the account routing (ABA/DDA) number to any Payee. You shall direct Payees to the Cardholder services telephone number to obtain account routing (ABA/DDA) number as there are additional requirements that must be met before Payees are provided their account routing (ABA/DDA) number. The amounts to be loaded to each Cardholder's Card will be provided to ADP by You through one of ADP's standard payroll transmission methods available to You or another means agreed to by ADP and You. You acknowledge that Payees must accept the Cardholder Terms and Conditions and that the Card may be cancelled by ADP or the Issuing Bank at any time in accordance with the Cardholder Terms and Conditions.

(v) Card Status. You are responsible for ensuring that Cardholders are paid via an alternate pay method in such instances where a Cardholder's Card has not been activated, or has been terminated, cancelled or is in inactive status.

(vi) Cardholder Services. ADP will make available Cardholder services to Cardholders. You will direct Cardholders to resolve all disputes regarding Card fees and charges and disputed charges on a Card with, and to report any lost or stolen Cards to, Cardholder services. Contact information for Cardholder services is in the Cardholder agreement provided with each Card. Notwithstanding the foregoing, You will be responsible for resolving all disputes by Cardholders regarding amounts credited or debited to the Cards at Your request.

(vii) Cardholder Communication and Card Features. You understand that Cardholders may receive notices, mailings and other communications directly from ADP or the Issuing Bank. In addition, ADP may make additional Card features available to Cardholders (e.g., secondary cards, card portability, reward programs, etc.).

(viii) Issuing Bank. All Cards issued to Cardholders are the property of Issuing Bank and are subject to cancellation by the Issuing Bank at any time in accordance with Issuing Bank's Cardholder Terms and Conditions. In the event of cancellation of a Card, such Payee will be required to resume another means of payment made available by You.

(ix) Cardholder Information. You understand that You are not entitled to access or review any Cardholder transaction Information. Notwithstanding the foregoing, in limited circumstances (e.g. where necessary to investigate or prevent fraud) and consistent with the applicable Cardholder privacy policy, ADP may provide certain Cardholder transaction information to You. You agree to treat all Cardholder account information, including Card transaction records, and all other information related to the Issuing Bank or ADP's provision of ADP Pay Card Services to Cardholders, whether provided or made available to You by ADP or Issuing Bank (or their respective agents and subcontractors), as confidential in accordance with the terms of Section 10 of the RUN Terms and Conditions of Service.

(x) Cardholder Fees. You acknowledge that separate fees and charges will be applied to Cardholders' Cards as set forth on the fee schedule provided to each Payee with the card kit prior to activation of the Card and such fees and charges are the responsibility of the Cardholder. Such Cardholder fees and charges are subject to change in accordance with the Cardholder Terms and Conditions applicable to the Cards. Current Card fees and charges are available upon request by You.

(xi) Use of Your Authorized Marks. In the event that ADP makes available branding of any materials, Cards and/or websites associated with the ADP Pay Card Services and You request such branding, You grant to ADP, the Issuing Bank and any third party service provider designated by ADP (collectively, "Authorized Users") the right to display the Authorized Marks on the materials, Cards and/or websites associated with the ADP Pay Card Services, subject to Your right to review and approve the copy prior to the use of such Authorized Marks. The term "Authorized Marks" shall refer to any trademarks, trade names, service marks, logos and designs designated by You for branding in connection with the ADP Pay Card Services. This authorization shall cover the term of this Agreement and any period of ongoing use of the Cards by Payees after termination. You understand that various marks identified with ADP, the Issuing Bank and other parties previously associated with respect to the Cards may also appear on the materials, Cards and/or websites associated with the ADP Pay Card Services. You shall indemnify and hold harmless the Authorized Users from any loss, damages, claims, liabilities or expenses (including reasonable attorney's fees) that they may incur as a result of any claim that an Authorized User's use of or reference to the Authorized Marks as permitted herein infringes on the right of any other party.

(xii) Use of Issuing Bank's Marks. Except for materials and collateral provided by either ADP or the Issuing Bank, You agree that You will not use the name or marks of the Issuing Bank in any materials You distribute or make available to Your Payees without the Issuing Bank's prior written consent, as applicable.

(xiii) Payee Information. Notwithstanding the provisions of Section 10 of the RUN Terms and Conditions of Service, You agree that ADP and its subcontractors providing ADP Pay Card Services may disclose information to a Cardholder related to Your loads to Cardholder's Card and Card enrollment information provided by You regarding Cardholder and may otherwise use or disclose information regarding a particular Cardholder with the consent of that Cardholder or consistent with the Cardholder agreement and/or privacy policy applicable to that Cardholder

(xiv) Your Responsibility for Compliance with Laws. Regarding the ADP Pay Card Services, the following provision shall apply in place of Section 1.E. of the RUN Terms and Conditions of Service with respect to laws and governmental regulations affecting the ADP Pay Card Services. Subject to Your fulfillment of Your compliance responsibilities under the Federal Reserve Board, Regulation E (12 CFR 1005, "Regulation E") as set forth below, ADP shall be responsible for compliance with the other requirements of Regulation E applicable to financial institutions with respect to payroll card accounts. Except as stated in the previous sentence, You (and not ADP, the Issuing Bank or their agents and subcontractors) are solely responsible for (i) compliance with all laws and governmental regulations affecting Your business, including state labor and payroll laws and the permissibility of the ADP Pay Card Services under such laws and federal employment eligibility laws, and (ii) any use You may make of the ADP Pay Card Services to assist You in complying with such laws and governmental regulations. In addition, You shall be responsible for compliance with those requirements of Regulation E controlled by You. Without limitation of the foregoing, You will fulfill the following responsibilities: (i) You will distribute to Your Payees all documentation (including, without limitation, Card fees and charges disclosure schedule and Cardholder Terms and Conditions) that ADP makes available to You for distribution purposes, and (ii) You will not mandate that any Payee receive wages only on the Pay Card, in lieu of such mandate, You will provide to Payees other legally permissible options for payment of wages. You also represent and warrant that any payments that You request ADP to make hereunder will not violate any laws of the United States and are for services rendered in the employment context for Payees who are legally eligible to work in the U.S. You will not rely solely on Your use of the ADP Pay Card Services in complying with any laws and governmental regulations.

(xv) Audits and Information Requests. You agree that upon prior notice from ADP or Issuing Bank, ADP, Issuing Bank and any regulatory authorities which have jurisdiction over the Issuing Bank or ADP shall have the right to audit and inspect Your books and records related to the ADP Pay Card Services and Your performance of Your obligations with respect thereto, including, without limitation, the following: (i) Your records pertaining to the set-up of Payees on the Cardholder database and participation of Cardholders in the ADP Pay Card Services; and (ii) the Identity Verification Documents. Subject to applicable law, You agree to provide Issuing Bank or ADP with information and documents related to the ADP Pay Card Services in Your control or possession (x) in connection with inquiries or requests made by regulators or other enforcement agencies or authorities or (y)



where provision of such information and documents is otherwise necessary for Issuing Bank or ADP to demonstrate compliance with applicable law, regulatory requirements or network rules to which Issuing Bank or ADP is subject.

(xvi) Network Rules.  ADP Pay Card Services are subject to financial industry rules and compliance standards imposed by various card/payment networks or associations (collectively, the "Network Rules"). You agree, to the extent You utilize ADP Pay Card Services, to comply with Network Rules identified by the Issuing Bank from time-to-time related to such things as Card security and fraudulent or impermissible use of Cards.

(xvii)      Third Party Beneficiary.  Notwithstanding Section 15 of the RUN Terms and Conditions of Service, You acknowledge and agree that Issuing Bank (and its respective successors and assigns) is a third party beneficiary of this Agreement (as it relates to ADP Pay Card Services) entitled to enforce each of the provisions of this Exhibit and the RUN Terms and Conditions of Service specifically listed below against You as well as the limitation of liability provisions of Section 11 of the RUN Terms and Conditions of Service, including in equity and in law, as if it or they were a party hereto. The provisions of the RUN Terms and Conditions of Service applicable to the foregoing sentence include Sections 1C and 12A and the provisions of this Exhibit A applicable to the foregoing sentence include Sections (ii), (iv), (viii), (ix), (x), (xii), (xiii), (xiv), (xv), (xvi), (xvii), (xviii), (xix), (xx) and (xxi). You acknowledge and agree that Section (x) (Cardholder Information) and Section (xx) of this Exhibit A, and Section 11 (Limitations of Liability) of the RUN Terms and Conditions of Service, and Section (xix) (Indemnification) of this Exhibit A shall survive termination or expiration of this Agreement and the RUN Terms and Conditions of Service.

(xviii) Liability for Interruptions and Delays. Neither ADP nor the Issuing Bank shall be liable or deemed to be in default for any act, failure to act, negligence or bad faith by, or the insolvency of, any clearing house, card network or card association governing use of the Cards issued hereunder. Neither ADP nor the Issuing Bank shall be liable for any damages to You arising from any decision to refrain from or delay originating debit/credit entries or issuing ADPChecks or crediting amounts to any Pay Card (a) after reasonable efforts to verify Your instruction or such debit/credit entries by the required security procedure have failed, (b) due to Your creditworthiness, or (c) because ADP has not received timely funds from You as required by Section 1 C  of the RUN Terms and Conditions of Service.

(xix)  Client Indemnity.  You shall be liable for, and shall defend, indemnify and hold harmless, ADP, its agents and subcontractors and the Issuing Bank, from and against any and all loss, liability, claim, damage or exposure arising from, or in connection with, any breach of Your compliance obligations hereunder, any fraudulent or criminal acts of Your employees, including as a result of the theft or misappropriation of any Cards (or any negotiable instruments that may be issued with Cards) by Your employees (e.g., the issuance of unauthorized Cards or fraudulent use of negotiable instruments) or the loading of unauthorized value onto Cards.  You also agree to defend, indemnify and hold harmless Issuing Bank from and against any and all loss, liability, claim, damage or exposure arising from, or in connection with Your negligence in connection with Your use and/or provision of the ADP Wage Payments Card Services or otherwise in connection with Your performance or obligations under this Agreement.

(xx)  No Consequential Damages.  IN NO EVENT WILL THE ORIGINATING BANK, THE ISSUING BANK, ADP OR ANY OF ADP'S AGENTS OR SUBCONTRACTORS BE RESPONSIBLE FOR SPECIAL, INDIRECT, INCIDENTAL OR CONSEQUENTIAL DAMAGES WHICH YOU MAY INCUR OR EXPERIENCE ON ACCOUNT OF ENTERING INTO OR RELYING ON THIS AGREEMENT OR USING THE ADP PAY SERVICES, EVEN IF SUCH PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

(xxi)  Termination.  You agree that the ADP Pay Card Services (or any feature thereof) in any designated jurisdiction may be terminated on 60 days notice to You if ADP or the Issuing Bank believes that any changes in any Network Rules or NACHA rules, or changes to, or interpretations of, applicable law by any federal, state or local governmental authority, or any formal or informal order, instruction or directive communicated to ADP or the Issuing Bank by such authority make it commercially impractical to continue to provide the ADP Pay Card Services (or any feature thereof) in such jurisdiction.

Notwithstanding anything to the contrary herein, ADP may immediately in ADP's sole discretion suspend any of the ADP Pay Card Services or terminate this Agreement and/or any of the ADP Pay Card Services and declare all amounts due and to become due immediately due and payable by You if  (i) ADP reasonably determines that You may be engaged in illegal activity or that You may be utilizing any of the ADP Pay Card Services in an illegal manner, (ii) the Originating Bank notifies ADP that it is no longer willing to originate debits or credits  for any reason, or (iii) with respect to the ADP Pay Card Services, the Issuing Bank cancels the Cards issued on Your behalf or advises ADP that it is no longer willing to service the Cards, provided that in such instance ADP shall take commercially reasonable steps to engage a successor Issuing Bank, and provided further that ADP shall not be liable for any delay in providing ADP Pay Card Services during such search for a successor Issuing Bank.

If the ADP Pay Card Services are or may be terminated by ADP pursuant to this section, You will immediately become solely responsible for all of Your third-party payment obligations covered by such ADP Pay Card Services then or thereafter due.

## Data Privacy Appendix

This Data Privacy Appendix is a data processing agreement under applicable law and supplements the Agreement, including the Privacy provisions included in Section 10 (Confidentiality/Privacy), between ADP, Inc. and Client. Capitalized terms throughout this Data Privacy Appendix not defined in the Agreement are defined in the ADP Privacy Glossary at www.adp.com/-/media/adp/privacypdf/glossary_en.pdf.

### PART I - GENERAL

1       Client Obligations. Client shall only provide ADP with Client Personal Data that: (a) is required to perform the Services; (b) has been collected in accordance with Applicable Laws; and (c) Client has authority to provide under Applicable Law.

2       ADP Obligations. ADP, as a Data Processor (or equivalent term under Applicable Law), will comply with Applicable Law for Processing Client Personal Data pursuant to the Agreement. ADP will not: (a) "sell" or "share" Client Personal Data; (b) retain, use, disclose or otherwise Process Client Personal Data outside of the direct business relationship with Client or for any commercial or other purpose other than the business purposes specified in the agreement(s) between Client and ADP, except as permitted by Applicable Laws; or (c) combine Client Personal Data with personal data that ADP receives from, or on behalf of, other persons, or collects from its own interaction with a consumer, except as permitted under Applicable Law. ADP shall have the right to Process Client Personal Data in order to comply with its legal obligations (e.g., compliance with sanction laws) or in order to prevent, detect or investigate fraud.

ADP employees and contingent workers are authorized to Process Client Personal Data to the extent necessary to provide Services and as permitted under the Agreement and by Applicable Law.

3       De-Identification and Aggregation. In addition to any rights granted to ADP in Section 10 of the Agreement to use aggregated and anonymized data, ADP will not attempt to, and will not, re-identify any of Client Personal Data.

4       Transfers to Subprocessors. ADP may transfer Client Personal Data to ADP Subprocessors and Third Party Subprocessors located outside of the country in which Client Personal Data was collected. Third Party Subprocessors are bound by written contracts with ADP that impose data protection terms that are not less protective than those imposed by this Data Privacy Appendix.

An up-to-date list of ADP Subprocessors and Third Party Subprocessors, including locations, shall be made available in the RUN platform. Such list may be updated from time to time.

5       Compliance Obligations. ADP will notify Client if ADP makes a determination that it can no longer meet its Processing obligations under Applicable Laws.

Client may, upon providing written notice to ADP, take reasonable steps to stop and remediate unauthorized Processing of Client Personal Data.

6       Data Security. ADP has an established information security program containing appropriate administrative, technical and physical measures to protect Personal Data against accidental, unlawful or unauthorized destruction, alteration, unauthorized disclosure or access consistent with Applicable Laws. In the event ADP suspects any unauthorized access to, or use of, the Services, ADP may suspend access to the Services to the extent ADP deems necessary to preserve the security of Client Personal Data.

7       Data Security Breach - Notification. If ADP becomes aware of a Data Security Breach of Client Personal Data, ADP will take appropriate actions to contain, investigate and mitigate the Data Security Breach. ADP shall notify Client without undue delay after becoming aware that a Data Security Breach has occurred, unless otherwise required or instructed by law enforcement or regulatory authority. ADP will share information in its possession with Client for Client to determine any regulatory reporting obligations required by Applicable Law.

8       Data Security Breach - Other ADP Obligations. In the event that a Data Security Breach is the result of the failure of ADP to comply with the terms of this Agreement, ADP shall, to the extent legally required or otherwise necessary to notify the individuals of potential harm, bear the actual, reasonable costs of notifying affected individuals. ADP and Client shall mutually agree on the content and timing of any such notifications, in good faith and as needed to meet applicable legal requirements. In addition, where notifications are required, and where such monitoring is practicable and customary, ADP shall also bear the cost of one year of credit monitoring to affected individuals in the applicable jurisdictions.

9       Client Instructions. When receiving Client instructions regarding the Processing of Personal Data, ADP will notify Client if ADP considers such instruction violates Applicable Law; however, ADP is not obliged to and will not perform a legal examination with respect to Client instruction.

10.     Assistance. ADP will assist Client with Client data privacy obligations where required under Applicable Law, including assisting Client in responding to and addressing Client Employee individual rights requests and complaints and providing Client with relevant information for conducting data protection impact or risk assessments. ADP reserves the right to charge for such assistance rendered. If ADP receives an individual rights request or complaint directly from Client Employee, ADP shall promptly forward the Employee request to Client.

11.     Client Audit. ADP will answer questions asked by Client regarding the Processing of Client Personal Data by ADP. In the event Client reasonably consider that the answers provided by ADP justify further analysis, ADP will, in agreement with Client, either:

(a)     provide security materials known as ADP's trust package (which includes security policy and standards overview, password summary, resiliency program summary, disaster recovery program overview, data center and hosting service summary and a third party risk management executive summary), that details ADP's business processes and procedures for the Processing of Client Personal Data; or,

(b)     make the facilities it uses to Process Client Personal Data available for an audit by a qualified independent third-party assessor reasonably acceptable to ADP, bound by confidentiality obligations satisfactory to ADP and engaged by Client. Client will provide a copy of the audit report to ADP's Global Chief Privacy Officer which will be ADP Confidential Information. Audits shall be conducted no more than once per year during the term of the Agreement during regular business hours and will be subject to

(i) a written request submitted to ADP at least 45 days in advance of the proposed audit date; (ii) a detailed written audit plan reviewed and approved in advance by ADP's security organization; and (iii) ADP's on-site security policies. Such audits will take place only in the presence of a representative of ADP's global security office, ADP's global data privacy & governance team, or such person designated by the appropriate ADP representative. The audits shall not be permitted to disrupt ADP's Processing activities or compromise the security and confidentiality of Personal Data pertaining to other ADP clients. ADP will charge Client a reasonable fee for such audit.

### PART II - GDPR

12.     Scope. This Part II applies solely with respect to Client Personal Data subject to Regulation (EU) 2016/679 on the protection of natural persons with regard to the processing of Personal Data and on the free movement of such data ("General Data Protection Regulations" or "GDPR"). With respect to ADP's processing of Client Personal Data subject to GDPR, the ADP Privacy Code, located at https://www.adp.com/-/media/adp/privacy/pdf/bcrpc_en.pdf, governs. ADP has obtained EU authorization of its ADP Privacy Code.

13.     International Transfers. For transfers outside of the EEA, Switzerland and United Kingdom, the ADP Privacy Code serves as the legal basis for the data transfer to an ADP Group Company or between ADP and an ADP Subprocessor, which Client acknowledges and accepts. ADP shall enter into appropriate contractual agreements, such as standard contractual clauses, or rely upon any other lawful transfer mechanism prior to transferring Client Personal Data to a Third Party Subprocessor or to an ADP company when the ADP Privacy Code does not apply.

14.     Additional Subprocessor Obligations. Within 30 days of a written update (including electronic notice) by ADP to Client adding a new Subprocessor, Client may object to such new Subprocessor by providing written notice to ADP alleging objective justifiable grounds that such Subprocessor is unable to protect Client Personal Data. If the parties cannot reach a mutually acceptable solution, ADP shall, at its option, either: (a) not allow the Subprocessor to access Client Personal Data; or (b) allow Client to terminate the relevant Services in accordance with the terms of the Agreement.

15.     ADP Privacy Code EU Authorization. ADP will make commercially reasonable efforts to maintain the EU authorization of its ADP Privacy Code for the duration of the Agreement and will promptly notify Client of any subsequent material changes in the EU authorization of its ADP Privacy Code.

### PART III - Miscellaneous

16.     Order of Precedence. In the event of a conflict between the Agreement, this Data Privacy Appendix, the ADP Privacy Code and Applicable Law, then the conflict will be resolved by giving effect to such in the following order of precedence: (a) Applicable Law, (b) the ADP Privacy Code; (c) this Data Privacy Appendix; and (d) the Agreement.

17.     Scope. This Data Privacy Appendix provides no additional rights to Client Employees that are not already provided under the Applicable Law to which Client Employee is subject.



Substitute for IRS Form 8655

**ADP** Tax Filing Service

**Reporting Agent Authorization**
**(State Limited Power of Attorney &**
**Tax Information Authorization)**
(In accordance with Internal Revenue Service
Revenue Procedures)

OMB No. 1545-1058

| 1 Co/Code | 2 Branch | 3 Federal ID Number |
|---|---|---|
| | | 87-1090485 |

4 If you are a seasonal employer, check here

**5** TAXPAYER LEGAL NAME (Use all capital letters. Include spaces, ampersands, and hyphens. Do not enter any other punctuation.)
MAVERICK MANAGEMENT GROUP LLC

**6** DBA NAME (Use all capital letters. Include spaces, ampersands, and hyphens. Do not enter any other punctuation.)

**7** Address:(number, street, and room or suite no.)
6080 Center Dr

City or town, state and ZIP Code
Los Angeles,
CA 90045-9209

REPORTING AGENT: ADP Tax Services, 400 West Covina Boulevard, San Dimas, CA 91773 ID # 22-3006057

**Authorization of Reporting Agent to Sign and File Returns** (Caution: See Authorization Agreement)

**8** Use the entry lines below to indicate the tax return(s) to be filed by the Reporting Agent. Enter the beginning year for annual tax returns or beginning quarter for quarterly tax returns. See the instructions for how to enter the quarter and year. Once this authority is granted, it is effective until revoked by the taxpayer or Reporting Agent.

| 940 | 2023 | 941 | 2|2023 | 940-PR | N/A | 941-PR | N/A | 941-SS | N/A | 943 | N/A |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | Tax Year | | Qtr/Yr | | Tax Year | | Qtr/Yr | | Qtr/Yr | | Tax Year |
| 943-PR | N/A | 944 | N/A | 944-PR | N/A | 945 | N/A | | | | |
| | Tax Year | | Tax Year | | Tax Year | | Tax Year | | | | |

**Authorization of Reporting Agent to Make Deposits and Payments** (Caution: See Authorization Agreement)

**9** Use the entry lines below to enter the starting date (the first month and year) for any tax return(s) for which the Reporting Agent is authorized to make deposits or payments. See the instructions for how to enter the month and year. Once this authority is granted, it is effective until revoked by the taxpayer or Reporting Agent.

| 940 | 4|2023 | 941 | 4|2023 | 943 | | 944 | | 945 | |
|---|---|---|---|---|---|---|---|---|---|
| | Mo/Yr | | Mo/Yr | | Mo/Yr | | Mo/Yr | | Mo/Yr |

**Disclosure of Information to Reporting Agent**

**10a** Check here to authorize the Reporting Agent to receive or request duplicate copies of tax information, notices and other communications from the IRS, related to the authorization granted on Line 8 and/or Line 9. . . . . . . . . . . . . . . . . .   **X**

**10b** Check here if the Reporting Agent also wants to receive copies of notices from the IRS . . . . . . . . . . . . . . . . . . . . . .   **X**

**Form W-2 Series or Form 1099 Series Disclosure Authorization**

**11** The Reporting Agent is authorized to exchange otherwise confidential taxpayer information with the IRS, including responding to certain IRS notices relating to the form W-2/1099 series information returns. This authority is effective for calendar years beginning:

| W-2 | 2023 | 1099 | |
|---|---|---|---|
| | Tax Year | | Tax Year |

**State and Local Authorization** (Caution: See Authorization Agreement)

**12** By checking the box to the right and signing in Box 13 below, the taxpayer identified above hereby appoints ADP as Reporting Agent and grants ADP a limited power attorney with the authority to sign and file employment and file tax returns and make deposits electronically, on magnetic media, or on paper for all state and local jurisdictions in which the taxpayer is required to file tax returns and make tax deposits. ADP is also hereby authorized to receive notices, correspondence and transcripts from all applicable state and local jurisdictions, resolve matters pertaining to these deposits and filings, and to request and receive deposit frequency data and any other information from applicable state and local jurisdictions related to taxpayer's employment tax returns and deposits for the tax periods indicated in Section 8 and all returns filed and deposits made by ADP from the date hereof.   **X**

This authorization shall include all applicable state and local forms and shall commence with the tax period indicated and shall remain in effect through all subsequent periods until either revoked by the taxpayer or terminated by the ADP. Unless the taxpayer is required to file or deposit electronically, ADP will, in its discretion, file and make deposits on the taxpayer's behalf in one of the filing methods: electronic, magnetic media or paper.

2 2023
Qtr/Yr

| **Authorization Agreement** | **13 Signature of Taxpayer or Authorized Representative** |
|---|---|
| I understand that this agreement does not relieve me, as the taxpayer, of the responsibility to ensure that all tax returns are filed and that all deposits and payments are made and that I may enroll in the Electronic Federal Tax Payment System (EFTPS) to view deposits and payments made on my behalf. If Line 8 is completed, the reporting agent named above is authorized to sign and file the return indicated, beginning with the quarter or year indicated. If any starting dates on line 9 are completed, the Reporting Agent named above is authorized to make deposits and payments beginning with the period indicated. Any authorization granted remains in effect until it is revoked by the taxpayer or Reporting Agent. I am authorizing the IRS to disclose otherwise confidential tax information to the reporting agent relating to the authority granted on Line 8 and/or Line 9 including disclosure required to process Form 8655. Disclosure authority is effective upon signature of the taxpayer and IRS receipt of Form 8655. The authority granted on Form 8655 will not revoke any Power of Attorney (Form 2848) or Tax Information Authorization (Form 8821) in effect. | I certify that I have the authority to execute this form and authorize disclosure of otherwise confidential information on behalf of the taxpayer.<br><br>Name (Required)<br>**Bianca Loli**<br><br>Title<br>**Owner**<br><br>Signature (Required)   ADP eSignature 1024959170 IP/Date 216.231.8.130 1:49:32 P<br>*Bianca Loli*<br><br>Date (Required) 04/03/2023 |

For Privacy Act and Paperwork Reduction Act notice, see attached.

TX-6931 Revised: 03/10/2015

UZA

*BL*

| ADP eSignature Info | |
|---|---|
| Date/Time: | 4/11/2023 1:49:32 PM |
| IP: | 216.231.9.130 |
| ID: | 1024959170 |

7322 RUN ET (08/2018)

RAA Page 1 of 1



Company Legal Name:      MAVERICK MANAGEMENT GROUP LLC

## Applied For ID

This is to notify ADP® that I recently applied for identification number(s) for the State, Unemployment and / or Local jurisdiction(s) identified as "Applied For" below and have not received identification number(s) from appropriate state jurisdictions.

For states that have specific requirements for obtaining identification numbers (i.e., cannot apply until wage requirement is met or until my company processes their first payroll)., I understand that I am responsible for obtaining identification numbers and providing them to ADP, once my company meets state requirements for obtaining the identification number(s).

## Proof Waiver for State Jurisdictions

This is to notify ADP that I am unable to provide proof of identification number(s) for the state withholding, state unemployment, and/or local jurisdiction(s) identified below.

| State Name | State Income Tax ID Number | State Unemployment ID Number |
|:---:|:---:|:---:|
| CA | 185-0545 3 | 185-0545 3 |

By my signature below, I hereby release and hold harmless ADP from any and all claims, liabilities, interest and/or penalties as a result of the Company's inability to provide the necessary proofs including but not limited to those arising from rejected filings and deposits due to missing or incorrect ID number(s), incorrect deposit(s) frequency and/or experience rate(s).

Client Authorized Signature:   *Bianca Lofi*

Client Title:   Owner

Date:   4/11/2023

# COMPOSITE EXHIBIT "2"

**Payroll Liability**

| Total Cash Required | $312,001.36 |
|---|---|
| Debit for FSDD (Full Service Direct Deposit) | $227,053.70 |
| Debit for Taxes | $84,947.66 |

**Important Note**

Your cash required total does not include your fees for service.  The invoice with the details of your fees will be sent the Monday after you process your payroll with the debit from your account occurring 3 banking days later.

Company: Maverick Management Group LLC

1  of  3

Date Printed: 10/28/2023 14:55

Check dates from: 5/5/2023 - Payroll 1 to:

28033131 - L5/XY4

5/5/2023 - Payroll 7
Pay Period from: 04/17/2023 to: 04/30/2023

## Payroll Liability

**PAY FREQUENCY:   Biweekly**

**Net Pay**

| | | | | | | |
|---|---|---|---|---|---|---|
| Checks | | | | 0.00 | | |
| **Subtotal Net Pay** | | | | | **0.00** | |
| Void | | | | (9,195.45) | | |
| **Total Net Pay Liability (Net Cash)** | | | | | (9,195.45) | |

**Taxes**

| | | Rate | Deposit Responsibility Client | | Deposit Responsibility ADP | | | |
|---|---|---|---|---|---|---|---|---|
| | Agency | | EE withheld | ER contrib | EE withheld | ER contrib | | |
| **Federal** | Federal Income Tax | | | | 27,223.09 | | 27,223.09 | **ADP Deposits You Are Responsible For Filing** |
| | Social Security | | | | 16,391.92 | 16,391.93 | 32,783.85 | |
| | Medicare | | | | 3,833.63 | 3,833.63 | 7,667.26 | |
| | Federal Unemployment Tax Act | 0.6000 | | | | 613.88 | 613.88 | |
| | **Subtotal Federal** | | | | **47,448.64** | **20,839.44** | **68,288.08** | |
| **State** | CA State Income Tax | | | | 10,745.99 | | | **CA ADP Deposits You Are Responsible For Filing** |
| | CA State Unemployment (Employer) | 3.5000 | | | | 3,484.25 | | |
| | CA State Disability Insurance | | | | 2,354.57 | | | |
| | **Subtotal CA** | | | | **13,100.56** | **3,484.25** | **16,584.81** | |
| | FL State Unemployment (Employer) | 2.7000 | | | | 74.77 | | **FL ADP Deposits You Are Responsible For Filing** |
| | **Subtotal FL** | | | | | **74.77** | **74.77** | |
| | **Total Taxes** | | | | **60,549.20** | **24,398.46** | **84,947.66** | |

| | | | | | |
|---|---|---|---|---|---|
| **Other Transfers** | **Full Service Direct Deposit (FSDD)** | | | 227,053.70 | **122 Employee Transactions** |

**Total Biweekly Pay Frequency**

| | |
|---|---|
| **Total Direct Deposit (FSDD)** | **$227,053.70** |
| **Total Taxes** | **$84,947.66** |
| **Total Amount ADP Debited from your Account(s)** | **$312,001.36** |

Company: Maverick Management Group LLC
Check dates from: 5/5/2023 - Payroll 1 to:
5/5/2023 - Payroll 7
Pay Period from: 04/17/2023 to: 04/30/2023

2 of 3

Date Printed: 10/28/2023 14:55
28033131 - L5/XY4

# Payroll Liability

**Total For 5/5/2023 - Payroll 1 to 5/5/2023 - Payroll 7**

| | |
|---|---|
| **Total Direct Deposit (FSDD)** | **$227,053.70** |
| **Total Taxes** | **$84,947.66** |
| **Total Amount ADP Debited from your Account(s)** | **$312,001.36** |

Company: Maverick Management Group LLC          3 of 3          Date Printed: 10/28/2023 14:55
Check dates from: 5/5/2023 - Payroll 1 to:          28033131 - L5/XY4
5/5/2023 - Payroll 7
Pay Period from: 04/17/2023 to: 04/30/2023

## Payroll Liability

| Total Cash Required | $2,401.28 |
|---|---|
| Debit for FSDD (Full Service Direct Deposit) | $1,853.49 |
| Debit for Taxes | $547.79 |

**Important Note**

Your cash required total does not include your fees for service.  The invoice with the details of your fees will be sent the Monday after you process your payroll with the debit from your account occurring 3 banking days later.

Company: Maverick Management Group LLC
Check dates from: 5/8/2023 - Payroll 1 to:
5/8/2023 - Payroll 2
Pay Period from: 05/01/2023 to: 05/05/2023

1  of  2

Date Printed: 10/28/2023 14:56
28033131 - L5/XY4

## Payroll Liability

**PAY FREQUENCY:  Biweekly**

**Net Pay**

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | Checks | | | | | | 0.00 | |
| | **Subtotal Net Pay** | | | | | | | **0.00** |

**Taxes**

| | Agency | Rate | Deposit Responsibility Client | | Deposit Responsibility ADP | | | |
|---|---|---|---|---|---|---|---|---|
| | | | EE withheld | ER contrib | EE withheld | ER contrib | | |
| **Federal** | Federal Income Tax | | | | 120.55 | | 120.55 | **ADP Deposits You Are Responsible For Filing** |
| | Social Security | | | | 136.23 | 136.23 | 272.46 | |
| | Medicare | | | | 31.87 | 31.86 | 63.73 | |
| | Federal Unemployment Tax Act | 0.6000 | | | | 5.24 | 5.24 | |
| | **Subtotal Federal** | | | | **288.65** | **173.33** | **461.98** | |
| **State** | CA State Income Tax | | | | 35.45 | | | **CA ADP Deposits You Are Responsible For Filing** |
| | CA State Unemployment (Employer) | 3.5000 | | | | 30.59 | | |
| | CA State Disability Insurance | | | | 19.77 | | | |
| | **Subtotal CA** | | | | **55.22** | **30.59** | **85.81** | |
| | **Total Taxes** | | | | **343.87** | **203.92** | **547.79** | |

| | | | | | |
|---|---|---|---|---|---|
| **Other Transfers** | **Full Service Direct Deposit (FSDD)** | | | 1,853.49 | **3 Employee Transactions** |

---

**Total Biweekly Pay Frequency**

| | |
|---|---|
| **Total Direct Deposit (FSDD)** | **$1,853.49** |
| **Total Taxes** | **$547.79** |
| **Total Amount ADP Debited from your Account(s)** | **$2,401.28** |

**Total For 5/8/2023 - Payroll 1 to 5/8/2023 - Payroll 2**

| | |
|---|---|
| **Total Direct Deposit (FSDD)** | **$1,853.49** |
| **Total Taxes** | **$547.79** |
| **Total Amount ADP Debited from your Account(s)** | **$2,401.28** |

Company: Maverick Management Group LLC
Check dates from: 5/8/2023 - Payroll 1 to:
5/8/2023 - Payroll 2
Pay Period from: 05/01/2023 to: 05/05/2023

2 of 2

Date Printed: 10/28/2023 14:56
28033131 - L5/XY4

**Payroll Liability**

| Total Cash Required | $317,629.31 |
|---|---|
| Debit for FSDD (Full Service Direct Deposit) | $234,403.35 |
| Debit for Taxes | $83,225.96 |

**Important Note**

Your cash required total does not include your fees for service.  The invoice with the details of your fees will be sent the Monday after you process your payroll with the debit from your account occurring 3 banking days later.

Company: Maverick Management Group LLC                1  of  3                Date Printed: 10/28/2023 14:57
Check dates from: 5/19/2023 - Payroll 1 to:                                28033131 - L5/XY4
5/19/2023 - Payroll 4
Pay Period from: 05/01/2023 to: 05/14/2023

# Payroll Liability

**PAY FREQUENCY:  Biweekly**

## Net Pay

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | Checks | | | | | 0.00 | | |
| | **Subtotal Net Pay** | | | | | | | **0.00** |
| | Void | | | | | (3,208.10) | | |
| | **Total Net Pay Liability (Net Cash)** | | | | | | | (3,208.10) |

## Taxes

| | Agency | Rate | Deposit Responsibility Client | | Deposit Responsibility ADP | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | EE withheld | ER contrib | EE withheld | ER contrib | | | |
| **Federal** | Federal Income Tax | | | | 25,967.76 | | 25,967.76 | | **ADP Deposits You Are Responsible For Filing** |
| | Social Security | | | | 16,688.49 | 16,688.50 | 33,376.99 | | |
| | Medicare | | | | 3,902.95 | 3,902.98 | 7,805.93 | | |
| | Federal Unemployment Tax Act | 0.6000 | | | | 517.16 | 517.16 | | |
| | **Subtotal Federal** | | | | 46,559.20 | 21,108.64 | 67,667.84 | | |
| **State** | CA State Income Tax | | | | 10,165.97 | | | | **CA ADP Deposits You Are Responsible For Filing** |
| | CA State Unemployment (Employer) | 3.5000 | | | | 2,919.81 | | | |
| | CA State Disability Insurance | | | | 2,397.57 | | | | |
| | **Subtotal CA** | | | | 12,563.54 | 2,919.81 | 15,483.35 | | |
| | FL State Unemployment (Employer) | 2.7000 | | | | 74.77 | | | **FL ADP Deposits You Are Responsible For Filing** |
| | **Subtotal FL** | | | | | 74.77 | 74.77 | | |
| | **Total Taxes** | | | | 59,122.74 | 24,103.22 | 83,225.96 | | |

| | | | | | |
|---|---|---|---|---|---|
| **Other Transfers** | **Full Service Direct Deposit (FSDD)** | | | 234,403.35 | **135 Employee Transactions** |

### Total Biweekly Pay Frequency

| | |
|---|---|
| **Total Direct Deposit (FSDD)** | **$234,403.35** |
| **Total Taxes** | **$83,225.96** |
| **Total Amount ADP Debited from your Account(s)** | **$317,629.31** |

Company: Maverick Management Group LLC
Check dates from: 5/19/2023 - Payroll 1 to:
5/19/2023 - Payroll 4
Pay Period from: 05/01/2023 to: 05/14/2023

2 of 3

Date Printed: 10/28/2023 14:57
28033131 - L5/XY4

# Payroll Liability

**Total For 5/19/2023 - Payroll 1 to 5/19/2023 - Payroll 4**

| | |
|---|---|
| **Total Direct Deposit (FSDD)** | **$234,403.35** |
| **Total Taxes** | **$83,225.96** |
| **Total Amount ADP Debited from your Account(s)** | **$317,629.31** |

Company: Maverick Management Group LLC                    3  of  3                    Date Printed: 10/28/2023 14:57
Check dates from: 5/19/2023 - Payroll 1 to:                                          28033131 - L5/XY4
5/19/2023 - Payroll 4
Pay Period from: 05/01/2023 to: 05/14/2023

## Payroll Liability

| Total Cash Required | $6,963.81 |
|---|---|
| Debit for FSDD (Full Service Direct Deposit) | $4,720.81 |
| Debit for Taxes | $2,243.00 |

**Important Note**

Your cash required total does not include your fees for service.  The invoice with the details of your fees will be sent the Monday after you process your payroll with the debit from your account occurring 3 banking days later.

Company: Maverick Management Group LLC
Check dates from: 5/22/2023 - Payroll 1 to:
5/22/2023 - Payroll 3
Pay Period from: 05/01/2023 to: 05/22/2023

1  of  2

Date Printed: 10/28/2023 14:58
28033131 - L5/XY4

# Payroll Liability

**PAY FREQUENCY:  Biweekly**

**Net Pay**

| | | | |
|---|---|---|---|
| Checks | | 0.00 | |
| **Subtotal Net Pay** | | | **0.00** |

**Taxes**

| | Agency | Rate | Deposit Responsibility Client | | Deposit Responsibility ADP | | | |
|---|---|---|---|---|---|---|---|---|
| | | | EE withheld | ER contrib | EE withheld | ER contrib | | |
| **Federal** | Federal Income Tax | | | | 810.08 | | 810.08 | **ADP Deposits You Are Responsible For Filing** |
| | Social Security | | | | 392.97 | 392.99 | 785.96 | |
| | Medicare | | | | 91.91 | 91.92 | 183.83 | |
| | Federal Unemployment Tax Act | 0.6000 | | | | 8.27 | 8.27 | |
| | **Subtotal Federal** | | | | **1,294.96** | **493.18** | **1,788.14** | |
| **State** | CA State Income Tax | | | | 349.58 | | | **CA ADP Deposits You Are Responsible For Filing** |
| | CA State Unemployment (Employer) | 3.5000 | | | | 48.23 | | |
| | CA State Disability Insurance | | | | 57.05 | | | |
| | **Subtotal CA** | | | | **406.63** | **48.23** | **454.86** | |
| | **Total Taxes** | | | | **1,701.59** | **541.41** | **2,243.00** | |

| | | | |
|---|---|---|---|
| **Other Transfers** | **Full Service Direct Deposit (FSDD)** | 4,720.81 | **4 Employee Transactions** |

**Total Biweekly Pay Frequency**

| | |
|---|---|
| **Total Direct Deposit (FSDD)** | **$4,720.81** |
| **Total Taxes** | **$2,243.00** |
| **Total Amount ADP Debited from your Account(s)** | **$6,963.81** |

**Total For 5/22/2023 - Payroll 1 to 5/22/2023 - Payroll 3**

| | |
|---|---|
| **Total Direct Deposit (FSDD)** | **$4,720.81** |
| **Total Taxes** | **$2,243.00** |
| **Total Amount ADP Debited from your Account(s)** | **$6,963.81** |

Company: Maverick Management Group LLC    2 of 2    Date Printed: 10/28/2023 14:58
Check dates from: 5/22/2023 - Payroll 1 to: 5/22/2023 - Payroll 3    28033131 - L5/XY4
Pay Period from: 05/01/2023 to: 05/22/2023

**EXHIBIT "3"**

**Payroll Liability**

| Total Cash Required | | $337,833.28 |
|---|---|---|
| Debit for FSDD (Full Service Direct Deposit) | WELLS FARGO BANK NA, Routing/Transit no. (ABA) 122000247, Bank account no. XXXXXX0496 | $246,700.94 |
| Debit for Taxes | WELLS FARGO BANK NA, Routing/Transit no. (ABA) 122000247, Bank account no. XXXXXX0496 | $91,132.34 |
| Total cash required for WELLS FARGO BANK NA, Routing/Transit no. (ABA) 122000247, Bank account no. XXXXXX0496 | | $337,833.28 |

**Important Note**

Your cash required total does not include your fees for service.  The invoice with the details of your fees will be sent the Monday after you process your payroll with the debit from your account occurring 3 banking days later.

# Payroll Liability

**PAY FREQUENCY:  Biweekly**

**Net Pay**

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | Checks | | | | | | 0.00 | |
| | **Subtotal Net Pay** | | | | | | | **0.00** |

**Taxes**

| | | | Deposit Responsibility Client | | Deposit Responsibility ADP | | | |
|---|---|---|---|---|---|---|---|---|
| | Agency | Rate | EE withheld | ER contrib | EE withheld | ER contrib | | |
| **Federal** | Federal Income Tax | | | | 28,654.77 | | 28,654.77 | **ADP Deposits You Are Responsible For Filing** |
| | Social Security | | | | 18,163.80 | 18,163.82 | 36,327.62 | |
| | Medicare | | | | 4,247.90 | 4,248.02 | 8,495.92 | |
| | Federal Unemployment Tax Act | 0.6000 | | | | 485.85 | 485.85 | |
| | **Subtotal Federal** | | | | **51,066.47** | **22,897.69** | **73,964.16** | |
| **State** | CA State Income Tax | | | | 11,733.87 | | | **CA ADP Deposits You Are Responsible For Filing** |
| | CA State Unemployment (Employer) | 3.5000 | | | | 2,783.04 | | |
| | CA State Disability Insurance | | | | 2,611.81 | | | |
| | **Subtotal CA** | | | | **14,345.68** | **2,783.04** | **17,128.72** | |
| | FL State Unemployment (Employer) | 2.7000 | | | | 39.46 | | |
| | **Subtotal FL** | | | | | **39.46** | **39.46** | |
| | **Total Taxes** | | | | **65,412.15** | **25,720.19** | **91,132.34** | |

| | | | | | |
|---|---|---|---|---|---|
| Other Transfers | **Full Service Direct Deposit (FSDD)** | | | 246,700.94 | **129 Employee Transactions** |

**Total Biweekly Pay Frequency**

| | |
|---|---|
| **Total Direct Deposit (FSDD)** | **$246,700.94** |
| **Total Taxes** | **$91,132.34** |
| **Total Amount ADP Debited from your Account(s)** | **$337,833.28** |

**Total For 6/2/2023 - Payroll 3**

| | |
|---|---|
| **Total Direct Deposit (FSDD)** | **$246,700.94** |
| **Total Taxes** | **$91,132.34** |
| **Total Amount ADP Debited from your Account(s)** | **$337,833.28** |

Company: Maverick Management Group LLC
Check date: 6/2/2023 - Payroll 3    Run Number: 0037
Pay Period: 05/15/2023 to: 05/28/2023

2 of 2

Date Printed: 07/11/2023 08:44
28033131 - L5/XY4

**EXHIBIT "4"**

| | |
|---|---|
| **From:** | Celentino, Christopher |
| **Sent:** | Wednesday, June 14, 2023 7:45 PM |
| **To:** | lucia.ramirez@adp.com |
| **Cc:** | Christopher B. Ghio (Christopher.Ghio@Dinsmore.com) |
| **Subject:** | ADP Payroll Processing - Debtor Litigation Practice Group, Phoenix Law Group and Maverick |
| **Attachments:** | Misc Case TRO #13 (002).pdf |

Dear Sir/Madam:

My firm is special counsel to the Litigation Practice Group's Chapter 11 Trustee, Richard Marshack.  I have been informed that ADP is threatening to withdraw funds from employees who work for Phoenix Law, whose payroll was highjacked by and entity called Maverick.  Maverick is an entity that has been sued for defrauding Phoenix, and on Monday, the bankruptcy court granted a preliminary injunction against both Phoenix and Maverick and made findings (also made in a Turnover Order/TRO entered May 26, 2023) that Phoenix is an alter ego of the debtor, LPG – which means that it and its employees are stayed by the automatic stay of the bankruptcy code which prevents actions taken against said employees.

The Court also enjoined Maverick and those working with Maverick from causing harm to the Trustee or LPG and its alter ego Phoenix.  Based on the foregoing, it appears an attempt to interfere with the employees of Phoenix through the Maverick account – and attempting to withdraw funds from said employee accounts -- could constitute a stay violation, and a violation of the Court's TRO and soon to be signed Preliminary Injunction.  The Trustee would be forced to pursue an action against ADP for such stay violation and action.

The Trustee would like to seek bankruptcy court authority on an emergency basis to be able to rectify the situation, and prevent harm to ADP, and to the employees who work at Phoenix.  We should be able to work this out by Monday, June 19, 2023.

Here is the link to the Adversary Complaint and May 26, 2023 order (unsealed Thursday June 8, 2023).  I am happy to chat on my cell phone 619-218-3229.

https://transfer.dinsmore.com/?ShareToken=705BD4A3B677465FCE945CEA3B32C1D55E802B54

If you have any questions, please reach out to me, or Gary Depew

Best, Chris.



**Christopher Celentino**
Partner
Dinsmore & Shohl LLP • Legal Counsel
655 West Broadway
Suite 800
San Diego, CA 92101
**C** (619) 218-3229 • **F** (619) 400-0501 **O** (619) 400-0519
**E** christopher.celentino@dinsmore.com • dinsmore.com

**EXHIBIT "5"**



*Legal Counsel.*

DINSMORE & SHOHL LLP
655 West Broadway, Suite 800
San Diego, CA 92101
www.dinsmore.com

Yosina M. Lissebeck
(619) 400-4473 (direct) · (619) 615-2082 (fax)
Yosina.Lissebeck@Dinsmore.com

June 28, 2023

**VIA EMAIL ONLY**

ADP Payroll Processing
Adam Goby: Adam.Goby@adp.com
Brock Perez: Brock.Perez@adp.com
Ray Spurgeon, III: Ray.Spurgeon.III@adp.com

Re:   Debtor Litigation Practice Group; Phoenix Law
      and Maverick

Dear Sir/Madam:

On June 14, 2023, our office contacted ADP regarding its efforts to withdraw funds from employees who work for Phoenix Law.  We informed you that Phoenix Law was high-jacked by an entity called Maverick and we had obtained a Turnover Order/TRO and Preliminary Injunction from the Bankruptcy Court (entered May 26, 2023) that stated that Phoenix and Maverick are the alter egos of the debtor, LPG. We stated that as alter egos, Phoenix/Maverick are protected by the automatic stay of the bankruptcy code, which prevents all actions taken against its employees.  A copy of that email, the TRO, the Preliminary Injunction and the Amended Complaint are attached for your review.

We understand that despite ADP having direct notice that Phoenix/Maverick are protected by the Automatic Stay, ADP is continuing to threaten the withdrawal of funds from employee accounts.  Your actions are not only a violation of the stay against Phoenix/Maverick, but directly against the debtor, LPG.  The funds being utilized by the debtor entities to pay employees, are funds that belong to the debtor and are property of the estate and originated from ACH pulls via LPG's owned merchant account. Any action taken by ADP is a direct violation of the automatic stay and if ADP does not immediately cease and desist these actions, the debtor will pursue ADP for these violations, and request sanctions as ADP is acting willfully.

Your recourse for any claim you may have is to file a proof of claim with the bankruptcy estate.

Regards,

Yosina M. Lissebeck
For the Firm

YML:CB
Enclosures: Email; TRO, PI, Amen Comp.

#30617987v1

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
Venable, LLP, 100 Southeast 2nd Street, Suite 4400, Miami, Florida 33131.

A true and correct copy of the foregoing document entitled (*specify*): **Notice of Filing Exhibits to the Sean Best Affidavit in Support of the Motion by Creditor ADP, Inc. for Allowance and Payment of Administrative Expense Claim (a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **November 20, 2023,** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On **November 20, 2023**, a true and correct copy of the (i) *Motion by Creditor ADP, Inc. for Allowance and Payment of Administrative Expense Claim* [ECF No. 665]; (ii) *Notice of Hearing* [ECF No. 666] and (iii) *Notice of Filing Exhibits to the Sean Best Affidavit in Support of the Motion by Creditor, ADP, Inc. for Allowance and Payment of Administrative Expense Claim*, was served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Honorable Scott C. Clarkson
United States Bankruptcy Court Central District of California
Santa Ana 411 W. Fourth Street, Suite 5130/Ctrm 5C
Santa Ana, CA 92701-4593

The Litigation Practice Group, P.C.
17542 17th St, Suite 100
Tustin, CA 92780-1981
*Debtor*

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 11/20/2023 | Glenn D. Moses, Esq. | */s/ Glenn D. Moses, Esq.* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                          **F 9013-3.1.PROOF.SERVICE**

**8:23-bk-10571-SC Notice will be electronically mailed to:**

Eric Bensamochan on behalf of Creditor Affirma, LLC
eric@eblawfirm.us, G63723@notify.cincompass.com

Eric Bensamochan on behalf of Creditor Oxford Knox, LLC
eric@eblawfirm.us, G63723@notify.cincompass.com

Eric Bensamochan on behalf of Interested Party Courtesy NEF
eric@eblawfirm.us, G63723@notify.cincompass.com

Eric Bensamochan on behalf of Interested Party Eric Bensamochan
eric@eblawfirm.us, G63723@notify.cincompass.com

Peter W Bowie on behalf of Trustee Richard A Marshack (TR)
peter.bowie@dinsmore.com, caron.burke@dinsmore.com

Ronald K Brown on behalf of Creditor SDCO Tustin Executive Center, Inc.
ron@rkbrownlaw.com

Christopher Celentino on behalf of Plaintiff Richard A. Marshack
christopher.celentino@dinsmore.com, caron.burke@dinsmore.com

Christopher Celentino on behalf of Trustee Richard A Marshack (TR)
christopher.celentino@dinsmore.com, caron.burke@dinsmore.com

Shawn M Christianson on behalf of Interested Party Courtesy NEF
cmcintire@buchalter.com, schristianson@buchalter.com

Randall Baldwin Clark on behalf of Interested Party Randall Baldwin Clark
rbc@randallbclark.com

Leslie A Cohen on behalf of Defendant Lisa Cohen
leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com;clare@lesliecohenlaw.com

Leslie A Cohen on behalf of Defendant Rosa Bianca Loli
leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com;clare@lesliecohenlaw.com

Leslie A Cohen on behalf of Interested Party Courtesy NEF
leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com;clare@lesliecohenlaw.com

Aaron E. DE Leest on behalf of Interested Party Courtesy NEF
adeleest@DanningGill.com, danninggill@gmail.com;adeleest@ecf.inforuptcy.com

Jenny L Doling on behalf of Interested Party INTERESTED PARTY
jd@jdl.law, dolingjr92080@notify.bestcase.com;15994@notices.nextchapterbk.com;jdoling@jubileebk.net

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

_June 2012_                                                                **F 9013-3.1.PROOF.SERVICE**

Jenny L Doling on behalf of Interested Party National Association of Consumer Bankruptcy Attorneys
jd@jdl.law, dolingjr92080@notify.bestcase.com;15994@notices.nextchapterbk.com;jdoling@jubileebk.net

Jenny L Doling on behalf of Interested Party National Consumer Bankruptcy Rights Center
jd@jdl.law, dolingjr92080@notify.bestcase.com;15994@notices.nextchapterbk.com;jdoling@jubileebk.net

Daniel A Edelman on behalf of Creditor Carolyn Beech
dedelman@edcombs.com, courtecl@edcombs.com

William P Fennell on behalf of Creditor Validation Partners LLC
william.fennell@fennelllaw.com,
luralene.schultz@fennelllaw.com;wpf@ecf.courtdrive.com;hala.hammi@fennelllaw.com;naomi.cwalinski@fen
nelllaw.com;samantha.larimer@fennelllaw.com

Christopher Ghio on behalf of Plaintiff Richard A. Marshack
christopher.ghio@dinsmore.com,
nicolette.murphy@dinsmore.com;karina.reyes@dinsmore.com;deamira.romo@dinsmore.com

Christopher Ghio on behalf of Trustee Richard A Marshack (TR)
christopher.ghio@dinsmore.com,
nicolette.murphy@dinsmore.com;karina.reyes@dinsmore.com;deamira.romo@dinsmore.com

Eric D Goldberg on behalf of Defendant Stripe, Inc.
eric.goldberg@dlapiper.com, eric-goldberg-1103@ecf.pacerpro.com

Jeffrey I Golden on behalf of Creditor Affirma, LLC
jgolden@go2.law,
kadele@ecf.courtdrive.com;cbmeeker@gmail.com;lbracken@wgllp.com;dfitzgerald@go2.law;golden.jeffreyi.b
117954@notify.bestcase.com

Jeffrey I Golden on behalf of Creditor Anaheim Arena Management, LLC
jgolden@go2.law,
kadele@ecf.courtdrive.com;cbmeeker@gmail.com;lbracken@wgllp.com;dfitzgerald@go2.law;golden.jeffreyi.b
117954@notify.bestcase.com

Jeffrey I Golden on behalf of Creditor Anaheim Ducks Hockey Club, LLC
jgolden@go2.law,
kadele@ecf.courtdrive.com;cbmeeker@gmail.com;lbracken@wgllp.com;dfitzgerald@go2.law;golden.jeffreyi.b
117954@notify.bestcase.com

Jeffrey I Golden on behalf of Creditor Oxford Knox, LLC
jgolden@go2.law,
kadele@ecf.courtdrive.com;cbmeeker@gmail.com;lbracken@wgllp.com;dfitzgerald@go2.law;golden.jeffreyi.b
117954@notify.bestcase.com

Jeffrey I Golden on behalf of Interested Party Courtesy NEF
jgolden@go2.law,

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                                    F 9013-3.1.PROOF.SERVICE

kadele@ecf.courtdrive.com;cbmeeker@gmail.com;lbracken@wgllp.com;dfitzgerald@go2.law;golden.jeffreyi.b
117954@notify.bestcase.com

Richard H Golubow on behalf of Creditor Debt Validation Fund II, LLC
rgolubow@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com

Richard H Golubow on behalf of Creditor MC DVI Fund 1, LLC
rgolubow@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com

Richard H Golubow on behalf of Creditor MC DVI Fund 2, LLC
rgolubow@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com

David M Goodrich on behalf of Interested Party Courtesy NEF
dgoodrich@go2.law, kadele@go2.law;dfitzgerald@go2.law;wggllp@ecf.courtdrive.com

D Edward Hays on behalf of Interested Party Courtesy NEF
ehays@marshackhays.com,
ehays@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@ecf.cour
tdrive.com

D Edward Hays on behalf of Trustee Richard A Marshack (TR)
ehays@marshackhays.com,
ehays@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@ecf.cour
tdrive.com

Alan Craig Hochheiser on behalf of Creditor City Capital NY
ahochheiser@mauricewutscher.com, arodriguez@mauricewutscher.com

Garrick A Hollander on behalf of Creditor Debt Validation Fund II, LLC
ghollander@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com

Garrick A Hollander on behalf of Creditor MC DVI Fund 1, LLC
ghollander@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com

Garrick A Hollander on behalf of Creditor MC DVI Fund 2, LLC
ghollander@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com

Richard L. Hyde on behalf of Interested Party Courtesy NEF
richard@amintalati.com

Razmig Izakelian on behalf of Creditor OHP-CDR, LP
razmigizakelian@quinnemanuel.com

Razmig Izakelian on behalf of Plaintiff OHP-CDR, LP
razmigizakelian@quinnemanuel.com

Razmig Izakelian on behalf of Plaintiff PurchaseCo 80, LLC

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                             **F 9013-3.1.PROOF.SERVICE**

razmigizakelian@quinnemanuel.com

Joon M Khang on behalf of Attorney Khang & Khang LLP
joon@khanglaw.com

Joon M Khang on behalf of Debtor The Litigation Practice Group P.C.
joon@khanglaw.com

Ira David Kharasch on behalf of Interested Party Ad Hoc Consumer Claimants Committee
ikharasch@pszjlaw.com

Ira David Kharasch on behalf of Interested Party Courtesy NEF
ikharasch@pszjlaw.com

Meredith King on behalf of Defendant Gallant Law Group
mking@fsl.law, ssanchez@fsl.law;jwilson@fsl.law

Meredith King on behalf of Interested Party Courtesy NEF
mking@fsl.law, ssanchez@fsl.law;jwilson@fsl.law

Nicholas A Koffroth on behalf of Creditor Committee Committee of Unsecured Creditors
nkoffroth@foxrothschild.com, khoang@foxrothschild.com

David S Kupetz on behalf of Defendant Marich Bein, LLC
David.Kupetz@lockelord.com, mylene.ruiz@lockelord.com

David S Kupetz on behalf of Interested Party Courtesy NEF
David.Kupetz@lockelord.com, mylene.ruiz@lockelord.com

Christopher J Langley on behalf of Interested Party Courtesy NEF
chris@slclawoffice.com,
omar@slclawoffice.com;langleycr75251@notify.bestcase.com;ecf123@casedriver.com

Matthew A Lesnick on behalf of Defendant OptimumBank Holdings, Inc.
matt@lesnickprince.com, matt@ecf.inforuptcy.com;jmack@lesnickprince.com

Daniel A Lev on behalf of Defendant Consumer Legal Group, PC
daniel.lev@gmlaw.com, cheryl.caldwell@gmlaw.com;dlev@ecf.courtdrive.com

Daniel A Lev on behalf of Defendant LGS Holdco, LLC
daniel.lev@gmlaw.com, cheryl.caldwell@gmlaw.com;dlev@ecf.courtdrive.com

Daniel A Lev on behalf of Interested Party Consumer Legal Group, P.C.
daniel.lev@gmlaw.com, cheryl.caldwell@gmlaw.com;dlev@ecf.courtdrive.com

Daniel A Lev on behalf of Interested Party Courtesy NEF
daniel.lev@gmlaw.com, cheryl.caldwell@gmlaw.com;dlev@ecf.courtdrive.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                 **F 9013-3.1.PROOF.SERVICE**

Daniel A Lev on behalf of Interested Party Liberty Acquisitions Group Inc.
daniel.lev@gmlaw.com, cheryl.caldwell@gmlaw.com;dlev@ecf.courtdrive.com

Britteny Leyva on behalf of Interested Party Revolv3, Inc.
bleyva@mayerbrown.com,
2396393420@filings.docketbird.com;KAWhite@mayerbrown.com;ladocket@mayerbrown.com

Michael D Lieberman on behalf of Creditor Phillip A. Greenblatt, PLLC
mlieberman@lipsonneilson.com

Yosina M Lissebeck on behalf of Counter-Claimant Richard A. Marshack
Yosina.Lissebeck@Dinsmore.com, caron.burke@dinsmore.com

Yosina M Lissebeck on behalf of Defendant Richard A. Marshack
Yosina.Lissebeck@Dinsmore.com, caron.burke@dinsmore.com

Yosina M Lissebeck on behalf of Plaintiff Richard A. Marshack
Yosina.Lissebeck@Dinsmore.com, caron.burke@dinsmore.com

Yosina M Lissebeck on behalf of Trustee Richard A Marshack (TR)
Yosina.Lissebeck@Dinsmore.com, caron.burke@dinsmore.com

Mitchell B Ludwig on behalf of Creditor Fundura Capital Group
mbl@kpclegal.com, kad@kpclegal.com

Kathleen P March on behalf of Defendant Greyson Law Center PC
kmarch@bkylawfirm.com, kmarch3@sbcglobal.net,kmarch@sbcglobal.net

Kathleen P March on behalf of Defendant Han Trinh
kmarch@bkylawfirm.com, kmarch3@sbcglobal.net,kmarch@sbcglobal.net

Kathleen P March on behalf of Defendant Jayde Trinh
kmarch@bkylawfirm.com, kmarch3@sbcglobal.net,kmarch@sbcglobal.net

Richard A Marshack (TR)
pkraus@marshackhays.com, rmarshack@iq7technology.com;ecf.alert+Marshack@titlexi.com

Laila Masud on behalf of Interested Party Courtesy NEF
lmasud@marshackhays.com, lmasud@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com

Laila Masud on behalf of Interested Party Richard A. Marshack
lmasud@marshackhays.com, lmasud@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com

Laila Masud on behalf of Plaintiff Richard Marshack
lmasud@marshackhays.com, lmasud@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

_June 2012_                                                                                      **F 9013-3.1.PROOF.SERVICE**

Laila Masud on behalf of Trustee Richard A Marshack (TR)
lmasud@marshackhays.com, lmasud@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com

Kenneth Misken on behalf of U.S. Trustee United States Trustee (SA)
Kenneth.M.Misken@usdoj.gov

Byron Z Moldo on behalf of Interested Party Byron Moldo
bmoldo@ecjlaw.com, amatsuoka@ecjlaw.com,dperez@ecjlaw.com

Alan I Nahmias on behalf of Interested Party Courtesy NEF
anahmias@mbn.law, jdale@mbn.law

Victoria Newmark on behalf of Interested Party Courtesy NEF
vnewmark@pszjlaw.com

Queenie K Ng on behalf of U.S. Trustee United States Trustee (SA)
queenie.k.ng@usdoj.gov

Keith C Owens on behalf of Creditor Committee Committee of Unsecured Creditors
kowens@foxrothschild.com, khoang@foxrothschild.com

Douglas A Plazak on behalf of Defendant Scott James Eadie
dplazak@rhlaw.com

Daniel H Reiss on behalf of Defendant Touzi Capital, LLC
dhr@lnbyg.com, dhr@ecf.inforuptcy.com

Daniel H Reiss on behalf of Defendant Eng Taing
dhr@lnbyg.com, dhr@ecf.inforuptcy.com

Ronald N Richards on behalf of Defendant Consumer Legal Group, PC
ron@ronaldrichards.com, 7206828420@filings.docketbird.com

Ronald N Richards on behalf of Interested Party Courtesy NEF
ron@ronaldrichards.com, 7206828420@filings.docketbird.com

Gregory M Salvato on behalf of Creditor Mari Agape
gsalvato@salvatoboufadel.com,
calendar@salvatolawoffices.com;jboufadel@salvatoboufadel.com;gsalvato@ecf.inforuptcy.com

Gregory M Salvato on behalf of Interested Party Courtesy NEF
gsalvato@salvatoboufadel.com,
calendar@salvatolawoffices.com;jboufadel@salvatoboufadel.com;gsalvato@ecf.inforuptcy.com

Olivia Scott on behalf of Creditor Azzure Capital LLC
olivia.scott3@bclplaw.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                    **F 9013-3.1.PROOF.SERVICE**

Olivia Scott on behalf of Creditor Hi Bar Capital LLC
olivia.scott3@bclplaw.com

Jonathan Serrano on behalf of Plaintiff Richard A. Marshack
jonathan.serrano@dinsmore.com

Jonathan Serrano on behalf of Trustee Richard A Marshack (TR)
jonathan.serrano@dinsmore.com

Paul R Shankman on behalf of Attorney Paul R. Shankman
PShankman@fortislaw.com, info@fortislaw.com

Paul R Shankman on behalf of Creditor United Partnerships, LLC
PShankman@fortislaw.com, info@fortislaw.com

Zev Shechtman on behalf of Interested Party Danning Gill Israel & Krasnoff LLP
zs@DanningGill.com, danninggill@gmail.com;zshechtman@ecf.inforuptcy.com

Zev Shechtman on behalf of Interested Party Morning Law Group, P.C.
zs@DanningGill.com, danninggill@gmail.com;zshechtman@ecf.inforuptcy.com

Leslie Skorheim on behalf of U.S. Trustee United States Trustee (SA)
leslie.skorheim@usdoj.gov

Howard Steinberg on behalf of Defendant BankUnited, N.A.
steinbergh@gtlaw.com, pearsallt@gtlaw.com;NEF-BK@gtlaw.com;howard-steinberg-6096@ecf.pacerpro.com

Andrew Still on behalf of Creditor Alteryx, Inc.
astill@swlaw.com, kcollins@swlaw.com

Andrew Still on behalf of Interested Party Courtesy NEF
astill@swlaw.com, kcollins@swlaw.com

United States Trustee (SA)
ustpregion16.sa.ecf@usdoj.gov

Sharon Z. Weiss on behalf of Creditor Azzure Capital LLC
sharon.weiss@bclplaw.com, raul.morales@bclplaw.com,REC_KM_ECF_SMO@bclplaw.com

Sharon Z. Weiss on behalf of Creditor Hi Bar Capital LLC
sharon.weiss@bclplaw.com, raul.morales@bclplaw.com,REC_KM_ECF_SMO@bclplaw.com

Sharon Z. Weiss on behalf of Defendant Azzure Capital LLC
sharon.weiss@bclplaw.com, raul.morales@bclplaw.com,REC_KM_ECF_SMO@bclplaw.com

Johnny White on behalf of Creditor Debt Relief Group, LLC
JWhite@wrslawyers.com, jlee@wrslawyers.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

_June 2012_                                              **F 9013-3.1.PROOF.SERVICE**

Johnny White on behalf of Interested Party Courtesy NEF
JWhite@wrslawyers.com, jlee@wrslawyers.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                    **F 9013-3.1.PROOF.SERVICE**