Amy L. B. Ginsburg
GINSBURG LAW GROUP, P.C.
1012 N. Bethlehem Pike, Suite 103, Box #9
Ambler, PA 19002
Telephone: (855) 978-6564
Facsimile:  (855) 777-0043
Email: aginsburg@ginsburglawgroup.com

*Attorneys for Creditor*
*Amy L.B. Ginsburg, Shannon Bellfield, and Kenton Cobb*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
## SANTA ANA DIVISION

| | |
|---|---|
| IN RE<br><br>THE LITIGATION PRACTICE GROUP, P.C.,<br><br>      Debtor. | **Case No. 8:23-cv-10571-SC**<br><br>**Chapter 11**<br><br>**MOTION FOR ALLOWANCE OF ADMINISTRATIVE CLAIM PURSUANT TO 11 U.S.C. §503; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS OF AMY L. B. GINSBURG, SHANNON BELLFIELD, AND KENTON COBB**<br><br>**DATE:  JANUARY 18, 2024**<br>**TIME:  11:00 AM**<br>**CTRM: 5C/VIA ZOOM.GOV**<br>      **411 W. FOURTH STREET**<br>      **SANTA ANA, CA 92701** |

**TO THE HONORABLE SCOTT C. CLARKSON, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE AND ALL PARTIES IN INTEREST:**

Amy L. B. Ginsburg ("Ginsburg"), Shannon Bellfield ("Bellfield") and Kenton Cobb collectively "Creditors") creditors of the bankruptcy estate ("Estate"") of The Litigation Practice Group P.C. ("Debtor" or "LPG"), file this Motion for Order Authorizing Allowance and Payment

of Administrative Claim Pursuant to 11 U.S.C. § 503 ("Motion"), the attached Memorandum of Points and Authorities and the declarations of Ginsburg, Bellfield, and Cobb in support thereof, and respectfully represents as follows:

## I.      INTRODUCTION

Creditors request the Court enter an order allowing their administrative claims for post-petition legal services rendered to LPG clients. The administrative claims arise from post-petition legal work performed on behalf of the debtor-in-possession that directly and substantially benefited the Estate. The Creditors have not received compensation for the significant benefit they conferred upon the Estate. Accordingly, they respectfully request that this Court enter an order granting this Motion and allowing their claims pursuant to 11 U.S.C. §503(b).

## II.      STATEMENT OF FACTS

On March 20, 2023, Debtor filed the instant chapter 11 case. On May 8, 2023, Richard A. Marshack was appointed as the Chapter 11 Trustee. Pursuant to an order granting the Stipulation Between Chapter 11 Trustee, Office of the United States Trustee, the Official Committee of Unsecured Creditors to Set Administrative Bar Date (dkt. 575 and 577), the deadline for filing a request to allow an administrative claim arising at any time from March 20, 2023 through and including August 4, 2023, is November 21, 2023 ("Non-Professional Administrative Claims Bar Date"). Creditors now file their administrative claim.

Ginsburg, Bellfield and Cobb were all employees of LPG. See Ginsburg, Bellfield, and Cobb Declarations.    Pursuant to their respective employment agreements, Ginsburg and Cobb represented LPG clients in debt defense matters pending in a number of states. See Ginsburg and Cobb Decs. This included reviewing pleadings filed in cases assigned, discussing legal options with clients, working on settlements, attending virtual and in-person hearings, responding to motions, and assisting with any post-judgment work needed on a file. Id. Bellfield was hired as a

MOTION FOR ALLOWANCE OF ADMINISTRATIVE CLAIM

paralegal by LPG, and worked exclusively on files assigned to Ginsburg. See Bellfield Dec. Bellfield drafted pleadings, handled routine status calls with clients, communicated with the court, assisted with settlement paperwork, and handled filings with the court. Id. In exchange for providing these services, each was paid a salary by LPG, paid bi-weekly. See Ginsburg, Bellfield, and Cobb Decs. Ginsburg and Cobb were also refunded for all bar dues, CLE, office rent, and out-of-pocket expenses related to the cases assigned (i.e. filing fees, appearance counsel, travel). See Ginsburg and Cobb Decs.

Following the filing of this chapter 11 bankruptcy, all three were employed by Oakstone Law Group, PC ("Oakstone") and Greyson Law Center ("GLC"), and continued to work on LPG matters that had been transferred to these entities or to a third party, Phoenix Law Group ("PHX"). See Ginsburg, Bellfield, and Cobb Decs. During that time Oakstone and GLC paid the Creditors for their services on the former-LPG files. Id. However, on June 18, 2023, GLC contacted all staff and indicated that everyone had been terminated as of June 9, 2023. Id.

Ginsburg, Bellfield and Cobb were left with numerous LPG client files to handle, without compensation. Id. These were debt defense matters assigned over the course of several months while the Creditors was employed by LPG. Id. Ginsburg and Cobb had entered appearances in these matters, and could not simply cease representation, but had to seek permission of the court and/or follow state bar procedures for seeking to withdraw in those matters. Id. In some matters due to the status of the matter, they had no choice but to continue representation. Id. They also wanted to do the right thing for LPG clients, and continue representaiton to ensure they received the services they paid LPG for during the course of their enrollment. Id. This required Ginsburg and Cobb to continue communications with clients, adversaries and the court; travel and appear at hearings; arrange for local counsel to cover hearings; cover costs in cases; and file pleadings on behalf of clients in court proceedings. Id. To ensure she had assistance on the files, Ginsburg also

MOTION FOR ALLOWANCE OF ADMINISTRATIVE CLAIM

continued to pay Bellfield through her own practice, Ginsburg Law Group, PC.  See Ginsburg Dec. Ginsburg and Cobb were later hired by the purchaser of the assets, Morning Law Group, PC, on August 4, 2023.  However, between June 9, 2023[1] and August 4, 2023, the Creditors handled these matters without compensation from LPG or the Estate.  Id. A clear benefit was received by LPG for the services and out of pocket advances for expenses.

For legal services rendered to LPG clients between May 29, 2023 and August 4, 2023, Ginsburg is owed wages of $31,538.46[2] and expenses totaling $6,400[3] for wages paid to Bellfield between July 3, 2023 and August 4, 2023 (totaling $37,938.46); Bellfield is owed $4,000 for wages between May 29, 2023 and June 30, 2023; and Cobb is owed wages/benefits of $37,481.15.  See Ginsburg, Bellfield, and Cobb Decs.

III.    ARGUMENT

A.    Post-Petition Services and Advances Benefitted the Estate

11 U.S.C. § 503 provides, in relevant part:

(b) After notice and a hearing, there shall be allowed administrative expenses, other than allowed under section 502(f) of this title, including— (1) (A) the actual, necessary costs and expenses of preserving the estate including…

11 U.S.C. § 503(b)(1)(A).

It is well settled that claims for "actual, necessary costs and expenses of preserving" an estate are administrative expenses under § 503(b)(1) of the Bankruptcy Code and are entitled, under § 507, to be paid before other general unsecured claims. The list of kinds of expenses qualifying for administrative expense priority under § 503(b)(1), however, is neither exhaustive nor complete.

---

[1] At this time payroll was overdue for the week of June 9th (which included May 29, 2023 – June 9, 2023).

[2] $164,000/52 x 10 weeks (5/29/23 – 8/4/23) = $27,692.31

[3] This is for 5 weeks of wages paid to Bellfield at $800/week. Ginsburg also incurred fees associated with the use of a paycheck service and taxes, but is not seeking reimbursement for these additional expenses.

MOTION FOR ALLOWANCE OF ADMINISTRATIVE CLAIM

See In re Lazar, 207 B.R. 668, 674 (Bankr. C.D. Cal. 1997), and in the Ninth Circuit, bankruptcy courts have broad discretion in determining whether to award administrative expense priority. See Dant & Russell, 853 F.2d at 707 (9th Cir. 1998). The basic requirements for administrative expense treatment under § 503(b)(1)(A) are (1) the claim arose post-petition, (2) the claim arose from a transaction with the trustee or debtor-in-possession or that the claimant gave consideration to the trustee or debtor-in-possession, (3) the claim directly and substantially benefited the estate. In re DAK Indus., Inc., 66 F.3d 1091, 1094 (9th Cir. 1995); In re Ambercrombie, 139 F.3d 755, 757 (9th Cir. 1998); In re Sierra Pac. Broadcasters, 185 B.R. 575, 579 (9th Cir. 1995).

LPG provided debt defense services to its clients.  See Ginsbug Dec. Clients paid for this service.  Id.  If a client was sued by a creditor, LPG would then have a LPG attorney represent that client in the lawsuit. Id.  Ginsburg, Bellfield, and Cobb were employed by LPG to provide these legal services to its clients. See Ginsburg, Bellfield, and Cobb Decs. Despite LPG filing bankruptcy, and not paying wages to the Creditors, Cobb and Ginsburg (with the assistance of Bellfield) had to continue representation of LPG clients, and in many cases had no ability to withdraw under local court or bar rules. See Ginsbug Dec. While the Creditors received no compensation during this time, despite continuing their obligations to these clients, the Trustee monetized the value of these legal services provided by the Creditors with significant consideration paid to the Trustee. Although the value of the legal services by the Creditors for LPG's benefit is not evident from the Trustee's sale agreement, the Creditors provided legal services to the clients whose accounts make up part of the assets sold by the Trustee. In short, the Estate has benefitted significantly from the continued post-petition legal services and expenses advanced by the Creditors, and that benefit entitles the Creditors to an administrative claim under § 503(b)(1)(A).

The Creditors recognize that the Court must balance the need to maintain a healthy estate against the essential costs of administering an ongoing business. See In re Dant & Russell, Inc.,

MOTION FOR ALLOWANCE OF ADMINISTRATIVE CLAIM

853 F.2d 700, 706 (9th Cir. 1988), citing <u>Baldwin-United Corporation</u>, 43 B.R. 453 (S.D. Ohio 1984). If not for the ongoing legal services provided by the Creditors, the value of the assets sold would be far less than the debt incurred by LPG post-petition as clients may have opted to leave LPG rather than continue on with the buyer of the assets.  Although the Creditors do not have the amount of benefit realized by the Estate from their ongoing legal services, including fees paid post-petition by clients of LPG and the sale price to be received by the Trustee, the Creditors believe the benefit is far in excess of the $75,573.46 owed to it for the post-petition services provided.

Accordingly, the Court should allow an administrative expense claim for the amount agreed upon as reasonable wages between LPG and the Creditors.

**B.      Compensation Advanced Should Be Allowed under § 503(b)(1)(i)**

11 U.S.C. § 503 also provides for the allowance of an administrative claim for the actual, necessary costs and expenses of preserving the estate including - wages, salaries, and commissions for services rendered after the commencement of the case… 11 U.S.C. § 503(b)(1)(A)(i). The Creditors were employees of LPG. The Creditors are owed $79,419.61 for their post-petition salaries (and payroll incurred/advanced by Ginsburg post-petition[4]) for ongoing work, they had no option but to perform, on behalf of LPG clients post-petition.

**IV.      CONCLUSION**

Based on the foregoing, the Creditors respectfully request that this Court enter an Order as follows:

1.      Allowing an administrative expense claim in the amount of $79,419.61, plus interest;

---

[4] Ginsburg recognizes she paid compensation to Bellfield for part of the post-petition amount sought. However, Bellfield worked exclusively on LPG's accounts.

MOTION FOR ALLOWANCE OF ADMINISTRATIVE CLAIM

2.      Providing that the Creditors' claim as allowed is entitled to administrative priority pursuant to 11 U.S.C. §503(b)(1) and 11 U.S.C. §507(a)(2); and

3.      For such other further relief as the Court deems just and proper.


GINSBURG LAW GROUP, PC

*/s/ Amy L. B. Ginsburg*
AMY L. B. GINSBURG

Dated: 11/21/23

MOTION FOR ALLOWANCE OF ADMINISTRATIVE CLAIM