IN THE UNITED STATES BANKRUPTCY COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
SANTA ANA DIVISION

| | |
|---|---|
| IN RE<br><br>THE LITIGATION PRACTICE GROUP, P.C.,<br><br>      Debtor. | Case No. 8:23-cv-10571-SC<br><br>Chapter 11<br><br>MOTION FOR ALLOWANCE OF ADMINISTRATIVE CLAIM PURSUANT TO 11 U.S.C. §503; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS OF AMY L. B. GINSBURG, SHANNON BELLFIELD, AND KENTON COBB<br><br>DATE:  JANUARY 18, 2024<br>TIME:  11:00 AM<br>CTRM:  5C/VIA ZOOM.GOV<br>           411 W. FOURTH STREET<br>           SANTA ANA, CA 92701 |

## DECLARATION OF KENTON COBB

I, Kenton Cobb, declare as follows:

1.    I am a licensed attorney in Oklahoma, Illinois, Arkansas, Iowa, North Dakota and Wyoming. I was an attorney employed by Litigation Practice Group, P.C. ("Debtor" or "LPG"). I am creditor of the bankruptcy estate ("Estate"") of LPG. Except as to statements based on information and belief, I know each of the following facts to be true of my own personal knowledge, except as otherwise stated, and, if called as a witness, I could and would competently testify with respect thereto. I make this declaration in support of the Motion for Order Authorizing Allowance and Payment of Administrative Claim Pursuant to 11 U.S.C. § 503 ("Motion"). Any term not specifically defined herein shall have the meaning provided in the Motion.

2.    On March 20, 2023, the Debtor filed the instant chapter 11 case. On May 8, 2023, Richard A. Marshack was appointed as the Chapter 11 Trustee. Pursuant to an order granting the

Stipulation Between Chapter 11 Trustee, Office of the United States Trustee, the Official Committee of Unsecured Creditors to Set Administrative Bar Date (dkt. 575 and 577), the deadline for the filing a request to allow an administrative claim arising at any time from the March 20, 2023 through and including August 4, 2023, is November 21, 2023 ("Non-Professional Administrative Claims Bar Date").

3. LPG and I entered into a pre-petition employment agreement in or around January 2022. I was hired to perform legal services on behalf of LPG's clients. I represented LPG clients in debt defense matters in the states where I was licensed. I discussed claims and potential defenses with LPG clients, entered my appearance in cases on behalf of LPG clients, prepared answers and notices of intent to defend to consumer debt complaints, prepared discovery requests and responses, handled motions, reviewed settlement options with clients, negotiated settlements with opposing attorneys, attended court hearings and prepared any documents that were needed for the hearing, assisted clients with post-judgment settlement options, among other tasks.

4. I was paid a salary of $120,000, which was later increased to $150,000 in March 2023. I also received 3 weeks of vacation time, which were unused at the time of the bankruptcy filing, as well as 8 hours of sick time, also unused. Pursuant to paragraph 9 of the LPG Handbook, LPG was responsible for paying both at the time of termination.

5. As part of my employment agreement LPG agreed to pay monthly rent for office space and expenses, continuing legal education costs, and bar dues. Out of pocket expenses for filing fees, appearance counsel, and other case related expenses were also covered by LPG.

6. Following the filing of this chapter 11 bankruptcy, I was offered employment by Oakstone Law Group, PC ("Oakstone") for a brief period, and then Greyson Law Center ("GLC"). During my employment with both Oakstone and Greyson, I continued to work on LPG matters

that had been transferred to these entities or to a third party, Phoenix Law Group ("PHX"), and was compensated by these entities for handling former-LPG files.

7. On June 18, 2023, GLC contacted all staff and indicated that everyone had been terminated as of June 9, 2023, more than a week prior. See Exhibit B to Ms. Ginsburg's Dec.

8. Although I continued to perform work during that time, I was not compensated for any work performed between May 29, 2023 and June 9, 2023. During that time I continued to work on LPG cases as I did prior to the commencement of this bankruptcy.

9. As of June 18, 2023, I had numerous LPG cases that I was continuing to work on. Some clients had hearings approaching, others had settlements we were finalizing, discovery was due in some, and then there were some files where clients did not resolve or defaulted on settlements, and I was assisting the client with post-judgment executions. We reviewed state bar and court rules for options to withdraw from cases, but due to the status of some matters or the requirements of the court or bar, withdrawing seemed like it could cause prejudice to a client and would likely not be granted, and in many cases I was sympathetic to the client who had paid funds to LPG and did not want the money they paid to have been wasted. I felt an ethical obligation to continue representing the clients that I had been working with from LPG.

10. During this time Ms. Ginsburg also informed me that she had been in touch with Mr. Celentino from Mr. Marshack's office and understood they were looking at options to have the assets of LPG bought and that there may an opportunity to continue on with a new entity and seek compensation from the Estate for the work I was performing.

11. For these reasons, I continued to handle LPG files through August 4, 2023, at which time I began working with Morning Law Group, PC.

12. Two days prior, on August 2, 2023, the Court entered an Order granting the

Trustee's sale of substantially all of the Debtor's assets ("Sale Order"). See D.E. 352.

13.     Under the Sale Order, the Trustee agreed to sell, among other things, the Estate's interest in "consumer client-related accounts receivable and notes receivable" and "legal services agreement entered into by a consumer client and [LPG]" (collectively the "Assets") for significant consideration payable over time.

14.     The legal services that the clients had paid for (the client-related accounts receivable) were the services I was providing to the clients. LPG had been paid to have an attorney, such as myself, represent these individuals in legal matters. The amounts that would continue to be paid by these clients were for the services that attorneys like me had been providing and would continue to provide on those files.

15.     These assets only have value if there are attorneys that were and could handle these matters on behalf of the clients. Otherwise, without a legal team that can handle these matters, clients are purchasing a service that cannot be provided. Legal services were the primary purpose of LPG, and why clients were paying LPG.

16.     I continued to represent LPG clients without compensation between May 29, 2023 and August 4, 2023, and my wages during this time totaled $28,846.15 pre-tax.

17.     In addition, I am seeking compensation for my unused vacation (3 weeks) and 8 hours of sick time, totaling $8,000; office expenses (rent, copy, internet) totaling $575; and NEF charges from the bank for payrolls that did not go through totaling $60.

18.     In total I am seeking $37,481.15 for the services I performed on behalf of LPG clients, and associated expenses.

19.     These services were necessary to ensure that LPG clients continued to receive legal services, despite LPG filing bankruptcy, and to ensure that I was meeting the ethical obligations

that were owed to these clients. A clear benefit was received by LPG for these services.

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED this 21st day of November 2023 in Conway, Arkansas.

_____
KENTON COBB, ESQ.