1  **Maureen J. Shanahan   102222**
   **Totaro & Shanahan**
2  **P.O. Box 789**
   **Pacific Palisades, CA 90272**
3  **(888) 425 2889 (v)**
   **(310) 496-1260 (f)**
4  **Ocbkatty@aol.com**

5  **Attorneys for Creditor Randall Baldwin Clark,**
   **Attorney at Law, PLLC**

6

7

8              **UNITED STATES BANKRUPTCY COURT**

9      **CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA DIVISION**

| | |
|---|---|
| **In re** | **Case No. 8:23-bk-10571-SC** |
| **THE LITIGATION PRACTICE GROUP, P.C.,** | **Chapter 11** |
| **Debtor.** | **NOTICE OF MOTION AND MOTION BY CREDITOR RANDALL BALDWIN CLARK, ATTORNEY AT LAW ,PLLC FOR ALLOWANCE OF ADMINISTRATIVE CLAIM PURSUANT TO 11 U.S.C. §503 AND 507; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF RANDALL BALDWIN CLARK AND EXHIBITS** |
| | **Date:   January 19, 2024** |
| | **Time:  11:00 a.m.** |
| | **Ctrm:  5C/Via ZoomGov** |
| | **       411 W. Fourth St.** |
| | **       Santa Ana, CA 92701** |

20  **TO THE HONORABLE JUDGE SCOTT C. CLARKSON. THE UNITED STATES**

21  **TRUSTEE, AND ALL INTERESTED PARTIES:**

22        **PLEASE TAKE NOTICE** that Randall Baldwin Clark, Attorney at Law, PLLC

23  ("the Clark Firm"), a creditor of The Litigation Practice Group, P.C. ("LPG" or the

24  "Debtor") in the above-entitled case, respectfully moves this Court for an order allowing

25  and ordering payment of its administrative claim for services for post-petition debt

26  settlements and legal services provided to its mutual clients with LPG. A hearing on the

27  Motion will be held on January 19, 2024 at 11:00 am before Judge Clarkson in Courtroom

28  5C of the above-entitled court via ZoomGov.

1    The Motion is made pursuant to 11 U.S.C. §503(b)(1) for services rendered by the

2    Clark Firm post-petition between March 20, 2023, and the sale of Debtor's assets effective

3    August 4, 2023. The services claimed herein were rendered by the Clark Firm pursuant to

4    an Independent Contractor Agreement (the "Contract") executed on April 20, 2020,

5    between the Clark Firm as "Contractor" and LPG as "Employer" for such services to be

6    rendered to their mutual clients.

7    The Motion is made on the grounds that the Clark Firm has a valid administrative

8    claim for its' services provided under the Contract with the Debtor for post-petition

9    services to their mutual clients. The mutual clients substantially benefitted from the Clark

10   Firm's services as set forth herein. In addition, LPG substantially benefitted from the post-

11   petition services provided by the Clark Firm as it provided continuity of care to the clients

12   during the time after the case was filed and the Debtor was attempting to reorganize by a

13   sale. The Clark Firms' post-petition services enhanced the value of LPG's assets, i.e., its

14   client group, for the Debtor's sale to The Morning Law Group by protecting the rights of

15   the mutual clients.

16   The Motion is made timely pursuant to the Stipulation Between Chapter 11 Trustee,

17   Office of the United States Trustee, The Official Committee of Unsecured Creditors to set

18   an Administrative Claims Bar Date filed on October 16, 2023, and related Court Order

19   entered on the same date. Docket Nos. 575 & 577. The Order Approved the Stipulation

20   and Set the Bar Date for such Administrative Claims, including the post-petition claims of

21   the Clark Firm, as November 21, 2023. Hearings on such claims shall be on January 19,

22   2024, at 11:00 a.m. before this Court via ZoomGov.

23   The Motion is based on this Notice of Motion, the Notice of Hearing, Memorandum

24   of Points and Authorities, the Declaration of Randall Baldwin Clark ("Clark Dec.") and

25   the attached Exhibits and the records and files in this case and any discussion on the record.

26   WHEREFORE, the Clark Firm respectfully moves the Court for an order:

27    1) granting the Motion.

28

2) allowing an administrative expense claim in the amount of $45,741.26, plus interest;

3) providing that the Clark Firm's claim as allowed is entitled to administrative priority pursuant to 11 U.S.C. §503(b)(1) and 11 U.S.C. §507(a)(2); and

4) for such other and further relief as the Court deems just and proper.

Dated: November 21, 2023                                Totaro & Shanahan

By /s/ Maureen J. Shanahan
Maureen J. Shanahan
Attorneys for Randall Baldwin
Clark Attorney at Law, PLLC

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION AND BACKGROUND

### A.    The Contract and Relationship Between the Clark Firm and the Debtor

Randall Baldwin Clark is an attorney licensed to practice law in the State of New Hampshire and the Commonwealth of Massachusetts, including the bankruptcy courts for both states.  He is a long-time attorney and since 2016 has been the sole member of Randall Baldwin Clark, Attorney at Law, PLLC, a New Hampshire law firm ("the Clark Firm").  Mr. Clark and the Clark Firm's business and practice focuses on debt collections defense, negotiations and resolutions, consumer bankruptcy, foreclosure defense and landlord tenant matters. However, he only handles smaller consumer Chapter 7 or 13 bankruptcies. Declaration of Randall Baldwin Clark ("Clark Dec."), ¶¶1-2.

In early 2020, a representative of The Litigaiton Practice Group, PC ("LPG" of "the Debtor") approached Mr. Clark as to whether the Clark Firm might be interested in providing debt consultation, creditor negotiations, and legal services to the Debtor's consumer clients in New England. Mr. Clark expressed interest and after further negotiations, on April 20, 2020, Mr. Clark, as sole member of the Clark Firm, signed an agreement for the Clark Firm as a Contractor and LPG as Employer with the Clark Firm to provide services for LPG clients ("the Contract").  Clark Dec., ¶¶3-4; Exhibit 1. The commencement date of the Agreement preceded the signing of the Contract and the Contract specifically acknowledged "The Contractor has already commenced work with the Employer, and thus the parties agree that the commencement date shall be the date on which Contractor first completed work for the benefit of the Employer . . .." Exhibit 1, p. 1, ¶1. The Contract further states in paragraph 3:

> Contractor agrees to be employed on the terms and conditions set out in this Agreement. The Contractor agrees to be subject to the general supervision of an act pursuant to orders, advice and direction of the Employer.

Pursuant to the Contract "Compensation paid to the Contractor for the services rendered by the Contractor as required by this Agreement (the "Compensation") shall consist of the hourly rates set forth below." This provides for work by Mr. Clark at the rate of $225/hr. and work by

assistants at $75/hr. The Contract also provided for payment of expenses, filings fees, service fees, and court-imposed fees. Clark Dec., ¶5; Exhibit 1, ¶5, pp. 2-3.

Since signing the Contract, the Debtor sent the Clark Firm many clients and assignments for work. The Clark Firm performed services on each assignment per the Contract. The relationship proved profitable to both parties.  The Debtor received funds from the clients. The Clark Firm invoiced the Debtor for services on each assignment. The Debtor paid the Clark Firm for these services pursuant to the Contract. Mr. Clark calculated the number of clients LPG sent to the Clark Firm under the Contract was over 500.  Clark Dec., ¶¶5-6.  The Debtor did all the billing for their clients. Thus, paragraph 10, provides:

> Contractor shall submit invoices for payment on a monthly basis, though the Contractor may submit invoices more frequently. All invoices shall be paid within seven (7) calendar days of such submission subject to the terms set forth herein. All invoices shall be emailed to admin@litigationpractice group.com.

In addition, the Contract acknowledges that any confidential information acquired is the "exclusive property of the Employer." Exhibit 1, ¶¶14-27. Pursuant to the Contract, the Clark Firm was covered through the Debtor's malpractice insurance policy without paying any premiums. The Debtor paid all marketing costs. Id. ¶¶39-40.

Sometime approximately six weeks before March 20, 2023, the Debtor stopped paying invoices and stopped all communication. Mr. Clark was unable to reach anyone at LPG. Emails were the normal means of communication with LPG. These went unanswered. Prior to this the Debtor paid the invoices promptly. Clark Dec. ¶¶7-8.

**B.    The Debtor's Transfer of Clients to Other Entities**

In about the month prior to the Debtor's undisclosed bankruptcy filing, Mr. Clark became aware the Debtor transferred some of its' client accounts to other entities, including the Phoenix Law Group ("Phoenix") and Oak stone Law Group ("Oakstone"). These entities contacted Mr. Clark on behalf of existing clients with LPG sending the Clark Firm new matters. The Clark Firm's clients were puzzled as was Mr. Clark. Mr. Clark's efforts to contact the Debtor to learn more were

1  unsuccessful with no response from the Debtor. At no time did the Debtor ever terminate the Clark

2  Firm's contract with the Debtor. Communication simply stopped. Clark Dec., ¶¶10-14.

3      Although the Clark Firm was not notified of and not yet aware of the Debtor's bankruptcy

4  filing, the Clark Firm received case assignments from Phoenix and Oakstone, as well as another

5  company presenting itself as "Greyson Law Group."  Mr. Clark was perplexed about the situation.

6  However, the Clark Firm undertook to continue to assist the clients, particularly since all the

7  assignments were for clients the Clark Firm was currently servicing for the Debtor.  No matter the

8  situation, these were its' clients, and the Clark Firm did not want to hamper client services and

9  care and its obligations to the mutual clients. Maintaining continuity of client care and relationships

10  is important for any firm, particularly one being sold. Clark Dec., ¶¶15-16.

11      **C.  The Debtor's Bankruptcy Filing**.

12      According to the Court docket in this case, the Debtor filed this Chapter 11 case on March

13  20, 2023. Docket No. 1. The initial filings were very limited and essentially an emergency petition

14  deficiency notices sent. The Clark Firm was not listed in these filings. The Clark Firm was not

15  listed as a creditor despite providing valuable services to clients and submitting invoices for

16  assignments to the LPG clients that went unpaid.  Clark Dec. ¶¶10, 19-20.

17      Upon learning of the bankruptcy through mutual clients sometime in June almost three

18  months later, Mr. Clark filed a Request for Courtesy Notification of Electronic Filing ("NEF") in

19  this case on June 16, 2023. Docket No. 118.  Clark Dec., ¶20. After this, the Clark Firm at least

20  received the electronic notifications to have some idea of what was happening. Thus, although not

21  listed as a creditor by the Debtor, the Clark Firm became aware of the significant nature of the

22  bankruptcy case. Mr. Clark became more concerned as around the time of the filing as he was

23  locked out of the Debtor Pay Program used by the Debtor.  He still had no communication with

24  the Debtor and when he reviewed the Docket as much as possible, he did not see any indication

25  the Clark Firm's contract was rejected or even listed. Clark Dec., ¶21.  However, he had been

26  working with the other companies and the representative of Phoenix advised Mr. Clark that the

27  Debtor had transferred about 40,000 of its clients to Phoenix. Thus, Mr. Clark was not overly

28

concerned and ensured the Clark Firm continued to provide services to these mutual clients of LPG. Clark Dec., ¶18.

Mr. Clark had not been specifically contacted by the trustee or any party involved in this bankruptcy. He continued to deal with the three firms who apparently obtained clients from the Debtor. In monitoring the bankruptcy case he learned the Trustee had filed an adversary against Phoenix and the other firms to whom the Debtor had apparently transferred clients matters. There was mention of a settlement where the contracts transferred to Phoenix would be transferred back to the Debtor and part of the estate assets. Mr. Clark also knew the Trustee filed a Motion to Sell the Debtor's business and that would mean the Clark Firm's mutual clients' pending matters at least would be part of any sale. Clark Dec., ¶¶24-25.

### D.    The Clark Firm's Attempts to Collect from Other Entities

When the Clark Firm learned of Debtor's bankruptcy in June 2023, Mr. Clark was uncertain as to who was to pay for services to these mutual clients with the Debtor. The Clark Firm sent invoices to two of these other firms: Oakstone & Greyson. Neither company paid the Clark Firm. The invoices were part of the Contract with the Debtor and normally paid by it without any additional contact. Mr. Clark was a bit unclear about the relationship between these other firms and the Debtor but continued to work for the clients as he was advised these companies had taken over the cases. Clark Dec. ¶¶17-19.

Mr. Clark had better communication with Phoenix. At one point, in speaking to a Phoenix representative he was informed that Phoenix was in negotiations with the trustee to purchase the Debtor's assets. The Clark Firm should work with Phoenix in the meantime. Later before sending invoices to Phoenix, Mr. Clark was advised the trustee was going to sell LPG's business and its contracts and clients were assets in the sale.  The Phoenix representative advised that any invoices would need to be directed later to the Bankruptcy Court or Trustee, in a manner and time not yet known.  Mr. Clark learned Clark Dec. ¶¶15, 18, 22-23.

### E.   The Trustee's Sale of the Debtor's Assets

Since being added to the electronic notification system for the bankruptcy case, Mr. Clark learned of the proposed sale mentioned by Phoenix representatives. Given the continued filings it

became a daunting task to keep up with the filings in the case. Mr. Clark has briefly reviewed the Order Approving the Sale of the Estate Assets entered on August 2, 2023, and knew under the sale the Buyer, the Morning Law Firm, also purchased the client matters of the Debtor. This was of course subject the Client's right to Opt-Out. After the sale was completed, Mr. Clark was contacted by a representative of the Morning Firm and they have already entered into a new agreement for the Clark Firm to accept client matters from the Morning Firm. Clark Dec., ¶¶25-26.

After much research and monitoring of the docket, a somewhat daunting task, Mr. Clark learned that relevant parties, specifically, the Chapter 11 Trustee, the Debtor, the United States Trustee, and the Creditor's Committee had negotiated a Stipulation to provide an Administrative Bar Date for payment of post-petition administrative claims such as those held by the Clark Firm. Docket No. 575. The same day, the Court approved the Stipulation and entered an order setting the deadline for filing "Non-Professional Administrative Claims Bar Date" as November 21, 2023. Docket No. 577. Clark Dec. ¶¶28-29.

Thus, Mr. Clark learned that attorneys such as his firm, under employment contracts with the Debtor could request payment for post-petition administrative claims arising at any time from the March 20, 2023, the petition date, through and including August 4, 2023, the closing date of the sale of the Debtors' business to the Morning Law Firm. Clark Dec. ¶30.

**D. The Clark Firms' Administrative Claim Pursuant to Sections**
**503(b)(1) and 507(a)(1).**

In accordance with the information obtained in reviewing the Stipulation and the sample notice required to be served, Mr. Clark has gone through his billing records with extreme care and has determined that the Clark Firm performed services, at the rates it had contracted with the Debtor, of $225.00/hour for his services and $75.00/hour for his assistants services, during the two post-petition periods set out in the Notice. First, for the period from March 20 through May 8, 2023 (inclusive) the total billing by the Clark Firm for mutual clients with the Debtor totaled $20,465.43. For the second period from May 9 through August 4, 2023 (inclusive), the Clark Firm fees totaled $25,275.83. The total post-petition claim of the Clark Firm for services to the mutual

1   clients by the Clark Firm as for the benefit of the Debtor is $45,741.26. As noted, the Clark Firm

2   is not submitting a claim for any post-petition expenses during either of these time periods. Clark

3   Dec., ¶¶31-35.

4       Attached as Exhibit 2 to Mr. Clark's Declaration is a listing of the post-petition fees the

5   Debtor owes to the Clark Firm for each mutual client post-petition services. There are 204 clients

6   for whom services were rendered during the post-petition period. As Mr. Clark attests to identify

7   the client, he has used the Client ID number given by the Debtor for each mutual client along with

8   their first and last initials in the first three columns of the 5-page chart he prepared form invoices.

9   This ensures the privacy of the clients. Clark Dec., ¶¶.38-39.

10      There are two additional columns on the chart in Exhibit 2. The fourth column is for the

11  total amount of fees incurred for each designated client by the Clark Firm for services during the

12  period from March 20, 2023, to May 8, 2023. The fifth column includes the total amount of fees

13  incurred for the same clients by the Clark Firm from May 9, 2023, through August 4, 2023. This

14  accounts for the total sum of the fees incurred by the Clark Firm for the post-petition period for

15  this Administrative Claim. Clark Dec., ¶¶ 40.

16      The Clark Firm's administrative claim arises for post-petition services performed for

17  mutual clients on behalf of the Debtor that directly and substantially benefitted the Debtor's estate.

18  Although contractually entitled to payment for its services, the Clark Firm has not received any

19  compensation for this period and the significant benefit the services provided for the Debtor. Clark

20  Dec., ¶¶41.

21      With this motion the Clark Firm requests payment of the total $45,741.26 in fees for

22  designated post-petition period.

23  **LEGAL DISCUSSION**

24

25  **A. THE CLARK FIRM HAS AN ADMINISTRATIVE CLAIM FOR
        POST-PETITION SERVICES TO DEBTOR'S CLIENTS
26      PURSUANT TO 11 U.S.C.§§503(b)(1) AND 507(a)(2)**.

27  The bankruptcy Code, 11 U.S.C. § 503(b), provides that "[a]fter notice and a hearing, there

28

1    shall be allowed administrative expenses, . . . , including –(1)(A) the actual, necessary costs and

2    expenses of preserving the estate including wages, salaries and commissions for services rendered

3    after the commencement of the case." However, while not technically wages, the contract under

4    which the Clark Firm and presumably the other attorneys who provided continued legal services

5    for the Debtor list the Debtor as Employer, and the Debtor pays for the attorneys assigns matters

6    to them for the mutual clients.

7    　　　The list under Section 503(b)(1) is not exhaustive. *In re Kadjevich,* 220 F. 3d 1016, 1019

8    (9th Cir. 2000). The key to treatment as an administrative expense is 1) that a claim arose post-

9    petition; 2) the claim arose from a transaction with the trustee or the claimant gave consideration

10   to the trustee or debtor in possession, and 3) the claim directly and substantially benefited the

11   estate. *In re DAK Indus., Inc*., 66 F.3d 1091, 1094 (9th Cir. 1995); *In re Abercrombie,* 139 F.3d

12   755, 757 (9th Cir. 1998).

13   　　　There is no question the services the Clark Firm seeks payment for were incurred post-

14   petition based in the Exhibit 3 which list the two post-petition periods the Court Order for an

15   Administrative Claims Bar Date provided. The claims clearly gave consideration to the trustee for

16   of preserving the ongoing client base of the Debtor as well as the continuity of care needed to

17   ensure a substantial value for the business being sold. Without the Clark Firm's services to the

18   many clients during this period the clients rights would not have been protected, Claims of

19   malpractice might have been made against both the Debtor and the local attorneys providing the

20   services for the clients. This was a direct benefit to the estate as the Buyer saw an ongoing business

21   where various attorneys in different locations continued to service a significant number of clients

22   even though the main firm was in a bankruptcy.

23   　　　If services had not been provided by the Clark Firm and other attorneys, the value of the

24   Debtor would have been significantly less. In this claim, the Clark Firm's billing shows services

25   were rendered post-petition for 204 clients. The services provided these clients were reasonable

26   and necessary. Clark Dec. ¶36. Thus, the claim should be allowed under Section 503(b)(1)(A) of

27   the Bankruptcy Code.

28

In addition to being an administrative claim under Section 503(b)(1(A), it is well settled that claims for "actual, necessary costs and expenses of preserving" an estate are also entitled to priority to be paid before other general unsecured creditors. 11 U.S.C. §507(a)(2).  Since the Clark Firm's claims are administrative expenses, the are also entitle to priory in payment.

There should be no question, that the post-petition legal services provided by the Clark Firm are administrative expenses that not only benefitted the 504 clients of the Debtor they also assisted in significantly enhancing the value of the Debtor's estate by showing the Buyer the client base of the Debtor's needs were met even while the Debtor was in the bankruptcy. The Buyer thus purchased an ongoing business with many remaining clients form all areas of the country.

Likewise once the fees asserted by the Clark Firm in this Motion are determined to be administrative post-petition fees, they are entitled to priority payment.

For the foregoing reasons as established by the attached Declaration of Mr. Clark, the Clarf Firm respectfully requests the Court issue and Order as follows:

1)  granting the Motion;

2)  allowing an administrative expense claim in the amount of $45,741.26, plus interest;

3)  providing that the Clark Firm's claim as allowed is entitled to administrative priority pursuant to 11 U.S.C. §503(b)(1) and 11 U.S.C. §507(a)(2); and

4)  for such other and further relief as the Court deems just and proper.

Dated:  November 21, 2023                                   Totaro & Shanahan


                                                           By /s/ Maureen J. Shanahan
                                                           Maureen J. Shanahan
                                                           Attorneys for the Clark Firm

### DECLARATION OF RANDALL BALDWIN CLARK

I, Randall Baldwin Clark, declare:

1.      I am an attorney licensed to practice law in the State of New Hampshire and the Commonwealth of Massachusetts, including the bankruptcy courts for both states. I am the sole member of Randall Baldwin Clark, Attorney at Law, PLLC, a New Hampshire law firm ("the Clark Firm").  Except as to matters based on my review of portions of the Court Docket and some filings in this case, my statements herein are based on my personal knowledge of such facts, and as such I am competent to testify thereto.

2.      The Clark Firm's business and practice focuses on debt collections defense, negotiations and resolutions, consumer bankruptcy in Chapter 7 and Chapter 13 cases, foreclosure defense and landlord tenant matters.

3.      In early 2020, a representative of The Litigation Practice Group, PC ("LPG" or "the Debtor") approached me as to whether the Clark Firm might be interested in providing debt consultation, creditor negotiations, and legal services to the Debtor's consumer clients in New England.

4.      I expressed interest and after further negotiations, on April 20, 2020, as sole member of the Clark Firm I signed an agreement for the Clark Firm as a Contractor to provide services for LPG clients with LPG ("the Contract"). A true and correct copy of the Contract is attached hereto as Exhibit 1 and incorporated herein by reference.

5.      Under the Contract LPG would send the Clark Firm assignments for their clients in New Hampshire and Massachusetts for debt resolution, negotiations, foreclosure defense and possible consumer bankruptcy cases. The Clark Firm would provide related services as local counsel for the mutual clients and invoice LPG for fees monthly. The agreed hourly rate for my services was $225.00 and for my assistants $75.00.  LPG would also reimburse for all expenses for our clients' matters.

6.      The Contract provided substantial benefit to the Clark Firm, and I believe the mutual clients and LPG as well. The Clark Firm added over 500 clients based on the Contract.

Since signing the Contract, the Debtor regularly sent the Clark Firm many clients and assignments for work.

7.      Initially LPG paid our invoices fairly promptly and we had a good line of communication.

8.      Approximately six weeks before March 20, 2023, LPG stopped paying the Clark Firm invoices and stopped all communication. Our normal means of communication was by email, however I did not receive any replies, responses, answers or further communication with anyone at LPG.

9.      I was a bit perplexed especially when my access to LPG's Debt Pro Pay database was denied.

10.      I later learned that LPG filed a Chapter 11 bankruptcy case on March 20, 2023, but was not aware of this until almost a month after the filing. I did not receive any notice of the filing and when I ultimately learned of this, I noticed that the Clark Firm was not listed as a creditor in the case, even though the firm had a significant number of substantial unpaid invoices.

11.      About a month prior to the LPG's undisclosed bankruptcy filing, I was advised that LPG transferred at least some of its' client accounts to other entities. This included The Phoenix Law Group ("Phoenix"), Oakstone Law Group ("Oakstone") and Greyson Law.

12.      These three entities contacted me to continue to represent our existing clients with LPG but to assign new matters for these clients.

13.      Our clients seemed to be as confused and puzzled as I was about what was happening.

14.      I had no further contact with LPG. They did not terminate our Contract. Communication just stopped.

15.      Given the lack of communication with LPG and the representations from these firms they had received the cases from LPG, the Clark Firm continued to assist the clients, particularly since all the assignments were for clients our firm was currently servicing for the Debtor.

16.     It was my belief that no matter the situation, these were our clients, and I did not want to hamper client services and care. I believed that we had a duty and ethical obligation to maintain continuity of client care. This was important for everyone involved.  There were matters that clients needed to have handled in a timely manner and therefore the Clark Firm continued to represent the clients.

17.     I did not have a lot of communication with Oakstone and Greyson, and when I submitted invoices, they were not paid, and no response was given. LPG was generally prompt in paying invoices, however that was until all communication ceased, which I now understand was likely due to filing this bankruptcy case.

18.     The representative at Phoenix was more helpful and advised that LPG transferred most of its clients, he mentioned about 40,000 clients to Phoenix and we discussed continuing to service our clients. I believe we began discussion of a new agreement with Phoenix.  Initially no mention of bankruptcy was made, but this may have been before the case was filed.

19.     The Clark Firm continued to service the Clients from Phoenix and the other firms as we did for LPG. I learned about the bankruptcy filing sometime in June but had not received any notices for the case before this. I believe a client may have mentioned bankruptcy.

20.     I was able to obtain information about the filing, and I filed a Request for Courtesy Notification of Electronic Filing ("NEF") in this case on June 16, 2023. This was Docket No. 118. After this I received access to all the filings and there were many lengthy filings. I did my best to keep up but client care had to be the Clark Firm's priority.

21.     I did notice that the Clark Firm was still not listed as a Creditor and had not been contacted by anyone directly about the case. I was busy keeping up with the work of the Clark Firm but did monitor the case somewhat through the Notices of Electronic Filing ("NEF') on this case.

22.     When I went to send invoices to Phoenix, I was told by their representative they were negotiating with the Trustee to get paid on the cases transferred by LPG.

23.     At another time, a Phoenix representative advised me the trustee was going to sell

LPG's business and its contracts and clients were assets in the sale. I was told any invoices would need to be directed later to the court or the trustee, in a manner and time not yet known. So, I waited for some type of notice but continued to provide services needed by the clients.

24.    In monitoring the case I learned the trustee had filed an adversary against Phoenix and the other firms I had dealt with based on fraudulent transfer or preferential transfers. I was not noticed on the adversary and did not actually know much about that case but there was a mention on the docket of a settlement between the trustee and Phoenix so the contracts transferred to Phoenix would be part of the assets of the Debtor and be sold as assets of the estate. I believed this would include the Clark Firm Contract and clients.

25.    I also knew the Trustee had filed a Motion to Sell the assets and there would likely be funds to pay the Clark Firm's pre-petition claims and post-petition administrative claims.

26.    I am not certain of the actual time frame, whether it was after the sale had closed or before this, but I was contacted by a representative of the Morning Law Firm (the "Morning Firm") about a similar contract to the one with LPG. Ultimately, we agreed, and I signed a contract on behalf of the Clark Firm with the Morning Firm and have been representing clients under that agreement.

27.    I believe Phoenix was either sold to the Morning Firm or dissolved and most of its employees are working with the Morning Firm.

28.    In monitoring the court docket, I learned that relevant parties, specifically, the Chapter 11 Trustee, the Debtor, the United States Trustee, and the Creditor's Committee had negotiated a Stipulation to provide an Administrative Bar Date for payment of post-petition administrative claims such as those held by the Clark Firm. Docket No. 575.

29.    The same day, the Court approved the Stipulation and entered an order setting the deadline for filing "Non-Professional Administrative Claims Bar Date" as November 21, 2023. Docket No. 577.

30.    I learned that attorneys such as the Clark Firm, under employment contracts with the Debtor could request payment for post-petition administrative claims arising at any time from

1  the March 20, 2023, the petition date, through and including August 4, 2023, the closing date of

2  the sale of the Debtors' business to the Morning Law Firm.

3      31.    It is the custom and practice of the Clark Firm to maintain regular time records for

4  billing as to each client. We also prepare and send regular invoices to clients or in the case of the

5  mutual clients of the Debtor, Phoenix, or other entities to those entities as to each client where

6  services were rendered.

7      32.    In accordance with the information I obtained in reviewing the Stipulation and the

8  sample notice required to be served, I diligently went through the Clark Firm time records, files,

9  and invoices with extreme care. I determined that the services the Clark Firm performed at the

10  rates it had contracted with the Debtor, of $225.00/hour for his services and $75.00/hour for my

11  assistants' services for the two post-petition periods set out in the Notice.

12      33.    First, for the period from March 20 through May 8, 2023 (inclusive) the total billing

13  by the Clark Firm for mutual clients with the Debtor totaled $20,465.43.  For the second period

14  from May 9 through August 4, 2023 (inclusive), the Clark Firm fees totaled $25,275.83.

15      34.    The total post-petition claim of the Clark Firm for services to the mutual clients by

16  the Clark Firm as employee of the Debtor is $45,741.26.

17      35.    The Clark Firm is not submitting a claim for any post-petition expenses during

18  either of these time periods.

19      36.    In my review of the billing, I can attest the services rendered for the clients were

20  reasonable and necessary and the fees likewise were reasonable based on the normal rates of other

21  attorneys in the area with similar practices. The services performed for the clients were like the

22  services I have regularly provided for mutual clients with the Debtor.

23      37.    I have not provided any personal client identifying information on the billing list.

24      38.    Attached hereto as s Exhibit 2 is a 5-page chart of the 204 mutual clients and the

25  amounts of the unpaid billing for post-petition fees owed to the Clark Firm for each mutual client

26  during the two post-petition periods.

27      39.    The Chart contains 5 columns. The first column contains a particular client,

28

identified using the Client ID number given by the Debtor. The second and third columns contain the first and last initials of the client. This enables the client to be identified for payment but ensures privacy for these clients.

40..     Exhibit 2 has two additional columns. The fourth column is for the total amount of fees incurred by the Clark Firm for services performed for each client during the period from March 20, 2023, to May 8, 2023. The fifth column includes the total amount of fees incurred by the Clark Firm for services performed for each client from May 9, 2023, through August 4, 2023, this accounts for the total sum of the fees incurred by the Clark Firm for the post-petition period for this Administrative Claim.

41.     The Clark Firm's administrative claim arises for post-petition services performed for 204 mutual clients of the Debtor that directly and substantially benefitted the Debtor's estate. Although contractually entitled to payment for its services, the Clark Firm has not received any compensation for this period and the significant benefit the services provided for the Debtor which I believe enhanced the value of the estate's assets and the purchase price obtained form the sale.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed on November 21, 2023, at Hollis, New Hampshire.


*/s/ Randall Baldwin Clark*

Randall Baldwin Clark

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT 1**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT 2**

19

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

P.O. Box 789, Pacific Palisades, CA 90272

A true and correct copy of the foregoing document entitled (*specify*): "NOTICE OF MOTION AND MOTION BY CREDITOR RANDALL BALDWIN CLARK, ATTORNEY AT LAW ,PLLC FOR ALLOWANCE OF ADMINISTRATIVE CLAIM PURSUANT TO 11 U.S.C. §503 AND 507; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF RANDALL BALDWIN CLARK AND EXHIBITS
" will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) November 21, 2023, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒    Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) November 21, 2023, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒    Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐    Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 11/21/2023 | Maureen J. Shanahan | /s/ Maureen J. Shanahan |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

Service By Mail

By nef

- Eric Bensamochan    eric@eblawfirm.us, G63723@notify.cincompass.com
- Peter W Bowie    peter.bowie@dinsmore.com, caron.burke@dinsmore.com
- Ronald K Brown    ron@rkbrownlaw.com
- Christopher Celentino    christopher.celentino@dinsmore.com, caron.burke@dinsmore.com
- Shawn M Christianson    cmcintire@buchalter.com, schristianson@buchalter.com
- Randall Baldwin Clark    rbc@randallbclark.com
- Leslie A Cohen    leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com;clare@lesliecohenlaw.com
- Aaron E. DE Leest    adeleest@DanningGill.com, danninggill@gmail.com;adeleest@ecf.inforuptcy.com
- Jenny L Doling    jd@jdl.law, dolingjr92080@notify.bestcase.com;15994@notices.nextchapterbk.com;jdoling@jubileebk.net
- Daniel A Edelman    dedelman@edcombs.com, courtecl@edcombs.com
- William P Fennell    william.fennell@fennelllaw.com, luralene.schultz@fennelllaw.com;wpf@ecf.courtdrive.com;hala.hammi@fennelllaw.com;naomi.cwalinski@fennelllaw.com;samantha.larimer@fennelllaw.com
- Christopher Ghio    christopher.ghio@dinsmore.com, nicolette.murphy@dinsmore.com;angelica.urena@dinsmore.com;deamira.romo@dinsmore.com
- Amy Lynn Ginsburg    efilings@ginsburglawgroup.com
- Eric D Goldberg    eric.goldberg@dlapiper.com, eric-goldberg-1103@ecf.pacerpro.com
- Jeffrey I Golden    jgolden@go2.law, kadele@ecf.courtdrive.com;cbmeeker@gmail.com;lbracken@wgllp.com;dfitzgerald@go2.law;golden.jeffreyi.b117954@notify.bestcase.com
- Richard H Golubow    rgolubow@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com
- David M Goodrich    dgoodrich@go2.law, kadele@go2.law;dfitzgerald@go2.law;wgllp@ecf.courtdrive.com
- D Edward Hays    ehays@marshackhays.com, ehays@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@ecf.courtdrive.com
- Alan Craig Hochheiser    ahochheiser@mauricewutscher.com, arodriguez@mauricewutscher.com
- Garrick A Hollander    ghollander@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com
- Richard L. Hyde    richard@amintalati.com
- Razmig Izakelian    razmigizakelian@quinnemanuel.com
- Joon M Khang    joon@khanglaw.com
- Ira David Kharasch    ikharasch@pszjlaw.com
- Meredith King    mking@fsl.law, ssanchez@fsl.law;jwilson@fsl.law
- Nicholas A Koffroth    nkoffroth@foxrothschild.com, khoang@foxrothschild.com
- David S Kupetz    David.Kupetz@lockelord.com, mylene.ruiz@lockelord.com
- Christopher J Langley    chris@slclawoffice.com, omar@slclawoffice.com;langleycr75251@notify.bestcase.com;ecf123@casedriver.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- Matthew A Lesnick    matt@lesnickprince.com, matt@ecf.inforuptcy.com;jmack@lesnickprince.com
- Daniel A Lev    daniel.lev@gmlaw.com, cheryl.caldwell@gmlaw.com;dlev@ecf.courtdrive.com
- Britteny Leyva    bleyva@mayerbrown.com, 2396393420@filings.docketbird.com;KAWhite@mayerbrown.com;ladocket@mayerbrown.com
- Michael D Lieberman    mlieberman@lipsonneilson.com
- Yosina M Lissebeck    Yosina.Lissebeck@Dinsmore.com, caron.burke@dinsmore.com
- Mitchell B Ludwig    mbl@kpclegal.com, kad@kpclegal.com
- Daniel S March    marchlawoffice@gmail.com, marchdr94019@notify.bestcase.com
- Kathleen P March    kmarch@bkylawfirm.com, kmarch3@sbcglobal.net,kmarch@sbcglobal.net
- Mark J Markus    bklawr@bklaw.com, markjmarkus@gmail.com;markus.markj.r112926@notify.bestcase.com
- Richard A Marshack (TR)    pkraus@marshackhays.com, rmarshack@iq7technology.com;ecf.alert+Marshack@titlexi.com
- Laila Masud    lmasud@marshackhays.com, lmasud@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com
- Kenneth Misken    Kenneth.M.Misken@usdoj.gov
- Byron Z Moldo    bmoldo@ecjlaw.com, amatsuoka@ecjlaw.com,dperez@ecjlaw.com
- Glenn D. Moses    gmoses@venable.com, cascavone@venable.com;ipmalcolm@venable.com;jadelgado@venable.com
- Alan I Nahmias    anahmias@mbn.law, jdale@mbn.law
- Victoria Newmark    vnewmark@pszjlaw.com
- Queenie K Ng    queenie.k.ng@usdoj.gov
- Keith C Owens    kowens@foxrothschild.com, khoang@foxrothschild.com
- Lisa Patel    lpatel@lesnickprince.com, jmack@lesnickprince.com;jnavarro@lesnickprince.com
- Michael R Pinkston    rpinkston@seyfarth.com, jmcdermott@seyfarth.com,sfocalendar@seyfarth.com,5314522420@filings.docketbird.com,bankruptcydocket@seyfarth.com
- Douglas A Plazak    dplazak@rhlaw.com
- Daniel H Reiss    dhr@lnbyg.com, dhr@ecf.inforuptcy.com
- Ronald N Richards    ron@ronaldrichards.com, 7206828420@filings.docketbird.com
- Kevin Alan Rogers    krogers@wellsmar.com
- Gregory M Salvato    gsalvato@salvatoboufadel.com, calendar@salvatolawoffices.com;jboufadel@salvatoboufadel.com;gsalvato@ecf.inforuptcy.com
- Olivia Scott    olivia.scott3@bclplaw.com
- Jonathan Serrano    jonathan.serrano@dinsmore.com
- Paul R Shankman    PShankman@fortislaw.com, info@fortislaw.com
- Zev Shechtman    zs@DanningGill.com, danninggill@gmail.com;zshechtman@ecf.inforuptcy.com
- Leslie Skorheim    leslie.skorheim@usdoj.gov
- Adam D Stein-Sapir    info@pfllc.com
- Howard Steinberg    steinbergh@gtlaw.com, pearsallt@gtlaw.com;NEF-BK@gtlaw.com;howard-steinberg-6096@ecf.pacerpro.com
- Andrew Still    astill@swlaw.com, kcollins@swlaw.com

22

- United States Trustee (SA)      ustpregion16.sa.ecf@usdoj.gov
- Sharon Z. Weiss      sharon.weiss@bclplaw.com, raul.morales@bclplaw.com,REC_KM_ECF_SMO@bclplaw.com
- Johnny White      JWhite@wrslawyers.com, jlee@wrslawyers.co