1  Jeffrey M. Singletary, Bar No. 233528
   jsingletary@swlaw.com
2  Andrew B. Still, Bar No. 312444
   astill@swlaw.com
3  SNELL & WILMER L.L.P.
   600 Anton Blvd, Suite 1400
4  Costa Mesa, California 92626-7689
   Telephone:    714.427.7000
5  Facsimile:    714.427.7799

6  Attorneys for Creditor
   Alteryx, Inc.
7

8              UNITED STATES BANKRUPTCY COURT

9           CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA

10

11  In re:                          Case No. 8:23-bk-10571-SC

12  THE LITIGATION PRACTICE GROUP P.C.,    Chapter 11

13         Debtor.                   **MOTION FOR ALLOWANCE OF
                                     ADMINISTRATIVE EXPENSE CLAIM**
14                                   **UNDER 11 U.S.C. § 503(b);
                                     MEMORANDUM OF POINTS AND**
15                                   **AUTHORITIES; DECLARATION OF
                                     CHRISTIAN BRYAN**
16
                                     Hearing Information:
17                                   Date:    January 19, 2024
                                     Time:    11:00 a.m.
18                                   Place:   Courtroom 5C
                                              411 W. Fourth Street
19                                            Santa Ana, CA 92701
20

21

22       TO THE HONORABLE SCOTT C. CLARKSON, UNITED STATES BANKRUPTCY

23  JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, THE CHAPTER 11 TRUSTEE,

24  DEBTOR, AND ALL INTERESTED PARTIES:

25       Alteryx, Inc. ("Alteryx"), creditor of the above-captioned debtor The Litigation Practice

26  Group P.C. ("Debtor" or "LPG"), and sub-landlord of the real property located at Suites 400 and

27  490 of 3345 Michelson Drive and Suite 400 of 3347 Michelson Drive, Irvine, CA 92612

28  ("Property"), by and through undersigned counsel, submits the following motion ("Motion") for

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

an order allowing Alteryx an administrative expense claim in the amount of $703,089.94, which represents the fair rental value of the Property for the amounts owed for the post-petition use of the Property by the Debtor and the Debtor's bankruptcy estate ("Estate") through October 11, 2023 ("Administrative Claim"), and authorizing and directing payment of the Administrative Claim.

This Motion is made pursuant to 11 U.S.C. §§ 503(a)-(b), 507(a)(2), the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Central District of California, and is made on the grounds that Alteryx's Administrative Claim arises from post-petition transactions with the Estate that directly and substantially benefitted the Estate.

This Motion is based on the Notice of Motion, the Memorandum of Points and Authorities and the supporting declaration of Christian Bryan appended hereto, the pleadings and papers on file in this case, the arguments of counsel at the hearing on the Motion and on such other matters as the Court may allow.

Dated: December 6, 2023                    SNELL & WILMER L.L.P.


                                          By:   /s/ Andrew B. Still
                                                Jeffrey M. Singletary
                                                Andrew B. Still

                                          Attorneys for Creditor
                                          Alteryx, Inc.

MOTION FOR ALLOWANCE OF
ADMINISTRATIVE CLAIM

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

The Estate has received the significant benefit of using the Property during the post-petition period without paying any rent to Alteryx. The Property is office space in Irvine where the Estate was conducting its business prior to the sale to Morning Law Group ("MLG"). Prior to this case being filed, Alteryx entered into a Sublease[1] with Sublessees Innovative and Prime Logix. To the great detriment of Alteryx, the Trustee has taken multiple and conflicting views to justify his use of the Property, while not making any payment to Alteryx for such use. Specifically, the Trustee initially took the view that the Property constitutes property of the Debtor's Estate. Later, the Trustee took the position that there is an oral sub-sublease as between Sublessees and Phoenix Law Group, some entity other than the Debtor – though which the Trustee has also asserted is an alter ego of the Debtor – which authorizes the Debtor to operate its business from the Property.

The Debtor, which guaranteed Sublessees' obligations under the Sublease and shares the same key personnel with Sublessees, was apparently operating its business from the Property since at least the time this case was filed (and without authorization from Alteryx to do so). The Trustee continued this unapproved trend post-petition and ultimately allowed MLG, the purchaser of the Debtor's assets, to take possession of the Property, forcing Alteryx to obtain relief from stay and ultimately commence an unlawful detainer proceeding in state court to obtain possession of the Property. Like the Sublessees, both the Trustee and MLG have failed to pay any rent for their use of the Property. Worse, Alteryx has incurred substantial costs associated with remediating the Property and replacing the personal property removed while the Estate held possession of the Property. As the Estate has received the significant benefit of use of the Property post-petition, Alteryx respectfully requests that the Court allow an administrative claim in its favor and order immediate payment thereof. In addition, Alteryx further requests such other and additional relief as the Court deems just and proper.

---

[1] Capitalized terms are defined herein.

MOTION FOR ALLOWANCE OF
ADMINISTRATIVE CLAIM

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

1  II.    **STATEMENT OF FACTS**

2      A.    <u>**The Sublease**</u>

3      On or about March 4, 2022, Alteryx and Innovative Solutions Inc. ("<u>Innovative</u>") entered

4  into that certain Sublease Agreement whereby Alteryx, as sublessor, agreed to lease the Property

5  to Innovative, as sublessee, on the terms and conditions stated therein, which was then amended

6  on or about December 7, 2022, when Alteryx, Innovative and Prime Logix LLC ("<u>Prime Logix</u>"

7  and together with Innovative, "<u>Sublessees</u>") entered into that certain First Amendment to

8  Sublease Agreement (the "<u>Sublease</u>").[2] LPG unconditionally guaranteed Sublessees' obligations

9  under the Sublease.[3]

10      Based on an Officer's Certificate provided by Innovative to Alteryx, Innovative is the sole

11  member of Prime Logix.[4] Based on the Officer's Certificate, Prime Logix provides administrative

12  support services to Innovative and the law firms Innovative services.[5] Based on the Officer's

13  Certificate, Rosa Loli is the CEO of both Innovative and Prime Logix, and Tony Diab is the CFO

14  of Innovative.[6] Based on discussions with Alteryx at the time the Sublease was executed, Wes

15  Thomas served as the Managing Director of LPG and CEO of Innovative.[7] The Trustee has

16  asserted that each of these parties – and various others, including The Phoenix Law Group – are

17  alter egos of the Debtor.[8]

18      B.    <u>**Sublessees' Defaults under the Sublease and Trustee's Use of the Property**</u>

19      Sublessees defaulted under the Sublease when they failed to make all payments required

20  under the Sublease as and when due and deliver an additional letter of credit in favor of Alteryx

21  as required under the Sublease.[9]  These defaults resulted in Alteryx serving 3-Day Notices to Pay

22  or Quit on Sublessees on each of April 4, 2023, May 10, 2023, and June 5, 2023.[10]

23

24  _____
[2] Declaration of Christian Bryan appended hereto ("<u>Bryan Decl.</u>"), ¶ 3.

25  [3] *Id.* LPG, as obligor, also issued a standby letter of credit in favor of account party Innovative, for the benefit of Alteryx, in the amount of $409,206.31 (the "<u>LOC</u>"). *Id.*

26  [4] *Id.* ¶ 4.
[5] *Id.*
[6] *Id.*

27  [7] *Id.*
[8] *See* Adv. Proc. No. 8:23-ap-1046-SC.

28  [9] Bryan Decl. ¶ 5.
[10] *Id.*

MOTION FOR ALLOWANCE OF
ADMINISTRATIVE CLAIM

SNELL & WILMER
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689
L.L.P.

1  Following service of the notice on June 5, 2023, Trustee's counsel contacted Alteryx to

2  advise that the Trustee was now in possession of the Property pursuant to the Court's Order

3  entered May 26, 2023, as Docket No. 13 in Case No. 8:23-ap-01046; and that, pursuant to that

4  Order, Sublessees had been enjoined from accessing the Property.[11] The Court subsequently

5  entered its Preliminary Injunction as Docket No. 70 in Case No. 8:23-ap-01046, which further

6  enjoined Sublessees from accessing the Property.[12]

7  At that point in time, the Trustee contended that the Sublease and the Property constitute

8  property of the Estate.[13] To date, nothing has been provided to Alteryx to substantiate this

9  contention.[14] But it is undisputed that the Estate was operating its business out of the Property,

10  whether operating under the Debtor's name, one of the Sublessees' names, or one of the various

11  other entities identified by the Trustee to be alter egos of the Debtor, including Phoenix Law, PC,

12  and Greyson Law Group.[15]

13  **C.**    **The Sale Motion, Continued Unauthorized Use of the Property and Amount**

14  **of Alteryx's Administrative Claim**

15  On July 7, 2023, the Trustee filed his sale motion, seeking to sell substantially all of the

16  Debtor's assets pursuant to Bankruptcy Code section 363(f).[16] These assets include those of

17  Phoenix Law Group, who the Trustee contends is an alter ego of the Debtor.[17] On August 2, 2023,

18  the Court entered an order granting the sale motion.[18] The sale closed on August 4, 2023.[19] After

19  the sale closed, the Trustee took the view that there is some unidentified, unauthorized oral sub-

20  sublease as between one or more of the Sublessees, as sub-sublessor, and The Phoenix Law

21  Group, as sub-sublessee (the "Alleged Oral Sublease").[20] To date, no additional information

22  regarding the Alleged Oral Sublease has been provided, other than that it calls for rent at the

23  amount of $0 per month, and that MLG, as the successor to the Debtor, could assume the Alleged

24  ---

[11] *Id.* ¶ 6; *see also* Docket No. 13 in Adv. Proc. No. 8:23-ap-01046.
25  [12] Docket No. 70 in Adv. Proc. No. 8:23-ap-01046.
[13] Bryan Decl. ¶ 6.
26  [14] *Id.* ¶ 7.
[15] *See* Docket Nos. 1, 45 in Adv. Proc. No. 8:23-ap-01046.
[16] Docket No. 191.
27  [17] *Id.*
[18] Docket No. 352.
28  [19] *See* Docket No. 367 (Trustee's Status Report).
[20] Bryan Decl. ¶ 6.

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

MOTION FOR ALLOWANCE OF
ADMINISTRATIVE CLAIM

Oral Sublease (and, apparently, continue to pay rent in the amount of $0 per month and not insure the Property).[21]

Alteryx made repeated requests of the Trustee to confirm and clarify that no portion of the Property or any agreements related thereto constitute property of the Estate. However, the Trustee refused this invitation and instead forced Alteryx to obtain an order confirming that the stay does not apply or granting relief from stay, which the Court granted.[22]

In the meantime, the Trustee allowed MLG to take possession of the Property and operate its newly acquired assets out of the space, which assets include substantially all of the assets of the Debtor (and Phoenix Law).[23] Alteryx never consented to MLG occupying the space and Alteryx has been forced to commence an unlawful detainer action in state court to secure possession of the property.[24] While the state court lawsuit remains pending, Alteryx was finally able to access the Property when MLG vacated on or about October 11, 2023. Upon inspecting the Property, Alteryx discovered that a significant amount of their personal property was removed from the Property.[25]

Accordingly, Alteryx asserts an administrative claim in the following amount based on the contract rate set forth in the Sublease and as follows:[26]

| Category | Damages |
|---|---|
| June Rent: | $128,597.15 |
| July Rent: | $128,597.15 |
| August Rent: | $128,597.15 |
| September Rent: | $128,597.15 |
| October Rent (10/1/23-10/11/23): | $45,631.25 |
| Parking (3/20/23-10/11/23): | $69,741.01 |
| Late Fees: | $39,781.08 |
| Furniture Replacement and Moving Costs: | $33,548.00 |
| Total: | $703,089.94 |

[21] *Id.*
[22] Docket No. 396.
[23] Bryan Decl. ¶ 8.
[24] *Id.*
[25] *Id.* It should also be noted that MLG repeatedly told Alteryx that it needed time to remove its personal property from the entirety of the Property – not just one portion of the subleased suites. *Id.* ¶ 9.
[26] *Id.* ¶ 10. This represents the amount owing after application of the LOC, including amounts owed for March and April 2023.

SNELL & WILMER
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

## III.    RELIEF REQUESTED

Alteryx seeks an order from this Court allowing it an administrative expense claim under Bankruptcy Code section 503(b)(1)(A) in the amount of $703,089.94, which represents the fair rental value of the Property for the amounts owed for the post-petition period of March 20, 2023, through October 11, 2023 ("Administrative Claim"). Alteryx further requests that the Court authorize and direct the immediate payment of its allowed Administrative Claim. Finally, Alteryx requests such other and additional relief as the Court deems just and proper.

## IV.    BASIS FOR RELIEF REQUESTED

Bankruptcy Code section 503 provides that an entity may timely file a request for payment of an administrative expense or may tardily file such request if permitted by the court. 11 U.S.C. § 503(a).  Moreover, after notice and a hearing, "there shall be allowed, administrative expenses," including "the actual, necessary costs and expenses of preserving the estate."  11 U.S.C. § 503(b)(1)(A).  Bankruptcy Code section 507(a)(2) accords priority to administrative expenses allowed under section 503(b) of the Bankruptcy Code.

By assuring claimants priority of payment, section 503(b)(1)(A) serves an important purpose, in that it provides an incentive to vendors and suppliers of services to continue to deal with a debtor in bankruptcy to continue its business and thus benefit the estate and all creditors. *See In re Keene Corp.*, 208 B.R. 112 (Bankr. S.D.N.Y. 1997). A creditor claiming administrative expense treatment must show that (i) the claim arose post-petition, (ii) the claim arose from a transaction with the trustee or that the creditor gave consideration to the trustee or the estate, and (iii) there was a direct and substantial benefit to the estate. *See, e.g., In re DAK Indus., Inc.* 66 F.3d 1091, 1094 (9th Cir. 1995).

Assuming the foregoing standards are met, bankruptcy courts have broad discretion in determining whether to award administrative expense priority. *In re Dant & Russell, Inc.*, 853 F.2d 700, 707 (9th Cir. 1988); *see also, e.g., In re Hearth & Hinge, Inc.*, 28 B.R. 595 (Bankr. S.D. Ohio 1983) (allowing administrative claim for post-petition storage of debtor's property). In the context of an administrative claim for the use of property, the court should consider the property actually used by the estate and the fair and reasonable value thereof. *See Dant & Russell,*

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

MOTION FOR ALLOWANCE OF
ADMINISTRATIVE CLAIM

1    *Inc.*, 853 F.2d at 707. There is a presumption that the contractual rental rate constitutes fair and

2    reasonable value. *Id.* (citing cases).

3          As a corollary to the general rule that there must be a post-petition benefit to the estate to

4    obtain allowance of an administrative claim, "fundamental fairness" requires that those harmed

5    by post-petition tortious conduct by the estate likewise be entitled to administrative expense

6    priority, even though there is no benefit to the estate. *See, e.g., In re Sierra Pacific Broadcasters*,

7    185 B.R. 575 (BAP 9th Cir. 1995); *Reading Co v. Brown*, 391 U.S. 471 (1968).

8          Here, there is no question that the use of the Property by the Estate constitutes value and

9    consideration given to the Debtor's Estate, thus benefitting the Estate significantly. The Estate

10   was able to use the Property post-petition and the Trustee was ultimately able to sell substantially

11   all of the Debtor's assets for a significant sum of money, which benefits the Estate and all

12   creditors. Alteryx is accordingly seeking recompense for the post-petition period in which the

13   Estate was using the Property at the contract rate set forth in the Sublease, which represents the

14   fair rental value of the Property. Alteryx is also seeking the fair rental payments from August 4,

15   2023, through October 11, 2023, which represents the time in which the Estate allowed MLG to

16   take possession of the Property (without Alteryx's consent or authorization) and for which no rent

17   has ever been paid. Finally, Alteryx is seeking payment for the missing furniture and costs

18   associated with restoring the premises to its reasonable condition. Alteryx submits that each of the

19   foregoing constitute administrative claims against the Estate.

20         The Estate has received the significant benefit of using the Property during the post-

21   petition period without paying any rent to Alteryx for such use. To the great detriment of Alteryx,

22   the Trustee is seeking to use the various alter egos of the Debtor as both a sword and a shield,

23   with the ultimate goal of denying Alteryx any payment for use of the Property. Alteryx provided a

24   significant benefit to the Estate and sought to work with the Trustee every step of the way.

25   Alteryx is entitled to an administrative claim for the Estate's use of the Property.

26   **V.    CONCLUSION**

27         For the foregoing reasons, Alteryx respectfully requests that the Court enter an order

28   pursuant to 11 U.S.C. section 503(b)(1)(A) allowing its Administrative Claim in the amount of

SNELL & WILMER
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

MOTION FOR ALLOWANCE OF
ADMINISTRATIVE CLAIM

$703,089.94 for the Estate's post-petition use of the Property. Alteryx further requests that the Court authorize and direct the immediate payment of its Administrative Claim. Finally, Alteryx requests such other and additional relief as the Court deems just and proper.

Dated: December 6, 2023                                SNELL & WILMER L.L.P.


                                                       By:   /s/ Andrew B. Still
                                                             Jeffrey M. Singletary
                                                             Andrew B. Still

                                                       Attorneys for Creditor
                                                       Alteryx, Inc.

MOTION FOR ALLOWANCE OF
ADMINISTRATIVE CLAIM

1    ## DECLARATION OF CHRISTIAN BRYAN

2    I, Christian Bryan, declare as follows,

3    1.    I am over the age of 18 and am qualified to make the within declaration. I make this

4    declaration in support of the Motion for Allowance of Administrative Expense Claim under 11

5    U.S.C. § 503(b) ("Motion") filed by Alteryx, Inc. ("Alteryx").[27] Except where indicated, the facts

6    stated herein are based upon my own personal knowledge, and if called upon to testify, I could and

7    would competently testify thereto.

8    2.    I am the Vice President of Global Real Estate of Alteryx, and I am one of the

9    individuals at Alteryx who is responsible for overseeing management and administration of the

10    books, records and files of Alteryx, as those books, records, and files pertain to the Sublease and

11    the Sublessees – Innovative Solutions Inc. ("Innovative") and Prime Logix LLC ("Prime Logix"

12    and together with Innovative, "Sublessees"). As to the following facts, I know them to be true of

13    my own knowledge or from my review of Alteryx's books, records, and files, which are prepared

14    or otherwise maintained in the ordinary course of Alteryx's business by persons employed by

15    Alteryx who had knowledge of the event being recorded and had a business duty to record

16    accurately such event at or about the time of its occurrence.

17    3.    On or about March 4, 2022, Alteryx and Innovative entered into that certain

18    Sublease Agreement whereby Alteryx, as sublessor, agreed to lease the property commonly known

19    as Suites 400 and 490 of 3345 Michelson Drive and Suite 400 of 3347 Michelson Drive, Irvine,

20    CA 92612 ("Property") to Innovative, as sublessee, as amended by that certain First Amendment

21    to Sublease Agreement dated December 7, 2022, by and between Alteryx and Sublessees (the

22    "Sublease"). The Litigation Practice Group, P.C. ("LPG") guaranteed the Sublessees' obligations

23    under the Sublease. LPG, as obligor, also issued a standby letter of credit in favor of account party

24    Innovative, for the benefit of Alteryx, in the amount of $409,206.31 (the "LOC"). A true and correct

25    copy of the Sublease, redacted as necessary to protect confidentiality, is attached hereto as

26    **Exhibit 1**.

27

28    ---
[27] Capitalized terms not otherwise defined herein shall have the meanings given to them in the Motion or the supporting Memorandum of Points and Authorities.

MOTION FOR ALLOWANCE OF
ADMINISTRATIVE CLAIM

SNELL & WILMER
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

4.      Based on an Officer's Certificate provided by Innovative to Alteryx, Innovative is the sole member of Prime Logix. Based on the Officer's Certificate, Prime Logix provides administrative support services to Innovative and the law firms Innovative services. Based on the Officer's Certificate, Rosa Loli is the CEO of both Innovative and Prime Logix, and Tony Diab is the CFO of Innovative. A copy of the Officer's Certificate is appended to the Sublease. Based on discussions with Alteryx at the time the Sublease was executed, Wes Thomas served as the Managing Director of LPG and CEO of Innovative.

5.      Sublessees defaulted under the Sublease when they failed to make all payments required under the Sublease as and when due and deliver an additional letter of credit in favor of Alteryx as required under the Sublease. These defaults resulted in Alteryx serving 3-Day Notices to Pay or Quit on Sublessees on each of April 4, 2023, May 10, 2023, and June 5, 2023.

6.      Following service of the notice on June 5, 2023, Trustee's counsel contacted Alteryx to advise that the Trustee was now in possession of the Property. I am informed that the Trustee contends or has contended that the Sublease is property of the Debtor's bankruptcy estate. I am further informed that the Trustee contends or has contended that an oral sub-sublease agreement between Sublessees and The Phoenix Law Group, which calls for no monthly rent whatsoever, constitutes property of the estate.

7.      I am not aware of any sublease agreements as between Sublessees and any third parties. However, on information and belief, the Debtor was operating its business out of the Property since at least March 2023.

8.      On information and belief, following the sale of the Debtor's assets by the Trustee, Morning Law Group or other third parties other than Sublessees and the Trustee took possession of the Property without Alteryx's written consent. Alteryx never consented to Morning Law Group (or any party other than Sublessees) occupying the Property and has commenced an unlawful detainer action in state court to secure possession of the Property.

9.      Alteryx was able to access the Property when Morning Law Group vacated on or about October 11, 2023. Upon inspecting the Property, Alteryx discovered that the Estate or MLG removed approximately 53 task chairs, 27 side chairs and several televisions. MLG told Alteryx on

SNELL & WILMER
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

MOTION FOR ALLOWANCE OF
ADMINISTRATIVE CLAIM

multiple occasions that it needed access to the entirety of the Property (i.e., Suites 400 and 490 of 3345 Michelson Drive and Suite 400 of 3347 Michelson Drive) to remove personal property that was stored in both suites.

10.    Alteryx asserts an administrative claim against the Estate in the following amounts based on the contract rate set forth in the Sublease and the reasonable value of the personal property removed from the Property by the Estate without Alteryx's consent:

| Category | Damages |
| --- | --- |
| June Rent: | $128,597.15 |
| July Rent: | $128,597.15 |
| August Rent: | $128,597.15 |
| September Rent: | $128,597.15 |
| October Rent (10/1/23-10/11/23): | $45,631.25 |
| Parking (3/20/23-10/11/23): | $69,741.01 |
| Late Fees: | $39,781.08 |
| Furniture Replacement and Moving Costs: | $33,548.00 |
| Total: | $703,089.94 |

11.    No judgment or other order of any court has been entered or rendered with regard to this amount.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on December 6, 2023.


Christian Bryan (Dec 6, 2023 10:26 GMT+4)

Christian Bryan

MOTION FOR ALLOWANCE OF
ADMINISTRATIVE CLAIM

SNELL & WILMER
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

# Exhibit 1

## SUBLEASE AGREEMENT

THIS SUBLEASE AGREEMENT (this "Sublease"), dated as of March 4, 2022 (the "Effective Date"), is made by and between ALTERYX, INC., a Delaware corporation ("Sublessor"), and INNOVATIVE SOLUTIONS INC., a Wyoming corporation ("Sublessee").

1.    **Master Lease**.  Sublessor is the lessee of the Subleased Premises (as defined in Section 2 below) (the "Leased Premises") by virtue of that certain Lease dated December 7, 2015, by and between LBA IV-PPI, LLC, a Delaware limited liability company, as lessor ("Master Lessor"), and Sublessor, as lessee, as amended by that certain First Amendment to Lease by and between Master Lessor and Sublessor dated December 11, 2017, as amended by that certain Second Amendment to Lease by and between Master Lessor and Sublessor dated August 6, 2018, and as amended by that certain Third Amendment to Lease by and between Master Lessor and Sublessor dated September 27, 2018 (collectively, the "Master Lease"), and attached hereto as Exhibit "B". Capitalized terms not otherwise defined herein shall have the meaning ascribed to such terms in the Master Lease.

2.    **Premises**.    Sublessor hereby subleases to Sublessee and Sublessee hereby subleases from Sublessor for the Term (as defined in Section 3 below), at the rental, and upon all of the conditions set forth herein, that certain premises commonly known as Suite 400, consisting of approximately 35,617 rentable square feet, and Suite 490, consisting of approximately 4,620 rentable square feet (collectively, the "3345 Premises"), within the building located at 3345 Michelson Drive, Irvine, California 92612 (the "3345 Building"), and that certain premises common known as Suite 400, consisting of approximately 29,125 rentable square feet (the "3347 Premises") within that certain building located at 3347 Michelson Drive, Irvine, California 92612 (the "3347 Building"; and collectively with the 3345 Building, the "Buildings"), for a total of 69,362 rentable square feet in the aggregate, together with the furniture, fixtures and equipment currently located therein (collectively, the "Subleased Premises").  A depiction of the Subleased Premises is attached hereto as Exhibit "A".  For the purposes of this Sublease and the determination of Basic Rent (defined below), the 3345 Premises shall be conclusively deemed to consist of 40,237 rentable square feet, and the 3347 Premises shall be conclusively deemed to consist of 29,125 rentable square feet. Sublessee shall have the right to access the public areas of the Subleased Premises and the Buildings subject to the Master Lease.

3.    **Term; Commencement and Possession**.

3.1    **Term**.  The term (the "Term") of this Sublease shall commence (a) with respect to the 3345 Premises, on the later to occur of (i) March 7, 2022, or (ii) receipt of Master Lessor's consent pursuant to Section 6 below ("3345 Commencement Date"), and (b) with respect to the 3347 Premises, on January 1, 2023 (the "3347 Commencement Date"), and expire with respect to the entire Subleased Premises on October 31, 2025 (the "Expiration Date"), unless sooner terminated pursuant to any provision hereof.  Sublessor shall use commercially reasonable effort to obtain the consent of Master Lessor to this Sublease promptly following the mutual execution hereof.   In the event Sublessee executes an extension with Master Lessor beyond the Extended Term Expiration Date (as defined in the Master Lease) of November 30, 2025, the Expiration Date shall

4885-2024-4238

automatically be extended to November 30, 2025, and the terms and conditions of this Sublease shall remain in full force and effect.

3.2  **Early Possession/Beneficial Occupancy**.

(a)  Provided that Sublessor has obtained Master Lessor's consent to this Sublease pursuant to Section 6 below and subject to the provisions of this Section 3.2, Sublessee shall have the right to enter, use and possess the 3345 Premises prior to the 3345 Commencement Date.

(b)  Provided that Sublessee is not in default hereunder and in possession of the 3345 Premises and subject to the provisions of this Section 3.2, Sublessee shall have the right to enter, use and possess the 3347 Premises prior to the 3347 Commencement Date commencing upon the later of (i) the thirtieth (30th) day following the 3345 Commencement Date, or (ii) the date that Sublessor delivers possession of the 3347 Premises to Sublessee (the "3347 Possession Date").  Sublessor shall use commercially reasonable efforts to deliver possession of the 3347 Premises on or before June 1, 2022.

(c)  With respect to any such use or occupancy of all or any portion of the Subleased Premises pursuant to this Section 3.2, Sublessee agrees (i) Sublessee shall comply with and be bound by all provisions of this Sublease and the Master Lease during any beneficial occupancy except for the payment of Basic Rent, and (ii) prior to entry upon the Subleased Premises by Sublessee, Sublessee agrees to pay for and provide to Sublessor certificates evidencing the existence and amounts of liability insurance carried by Sublessee, which coverage must comply with the provisions of this Sublease relating to insurance.

4.  **Rent**.

4.1  **Basic Rent**.

(a)  Sublessee shall pay to Sublessor in advance, on the first (1st) day of each month of the Term hereof rent ("Basic Rent") as follows: (i) commencing on the 3345 Commencement Date, the amount of ███████████ ████████████████████████████████████████ per month (corresponding to $████ per rentable square foot comprising the 3345 Premises); and (ii) commencing on the 3347 Commencement Date, the amount of ████████████ ████████████████████████████████████████ per month for both the 3345 Premises and the 3347 Premises (corresponding to $████ per rentable square foot of the entire Subleased Premises).



(b)  The Basic Rent shall be increased by ██████████████ annually on each anniversary of the 3345 Commencement Date. If the 3345 Commencement Date or the 3347 Commencement Date occurs on a day other than the first day of a calendar month or the Term ends on a day other than the last day of a calendar month, Basic Rent shall be prorated on a daily basis as appropriate.

2

(c)     Basic Rent and Additional Rent (collectively, "Rent") shall be payable in lawful money of the United States to Sublessor at the address stated herein or to such other persons or at such other places as Sublessor may designate in writing.

(d)     

4.2     **Additional Rent**.

(a)     Sublessor and Sublessee acknowledge and agree that Sublessee shall not be required to pay any additional charge for basic services Master Lessor is required to provide without additional charge to Sublessor.

(b)     Notwithstanding the foregoing, to the extent that during the Term hereof, Sublessee requires extraordinary services or any resource in excess of that customarily supplied to Sublessor's other premises under the Master Lease or for similar premises in the Building used as general office space, including, but not limited to after-hours HVAC, validations for visitor parking, nonstandard repairs, nonstandard light bulbs and nonstandard janitorial services, Sublessee shall contract, at Sublessee's sole cost and expense, with Sublessor or Master Lessor, as the case may be, for such services. For the sake of clarity, after hours HVAC will be at Master Lessor's standard charge which shall be paid by Sublessee and shall be per the terms and conditions of the Master Lease.

(c)     Any charges provided for in this Sublease to be paid by Sublessee shall be deemed additional rent ("Additional Rent"). Such Additional Rent shall be paid by Sublessee within thirty (30) days following invoicing by Sublessor, unless otherwise specified.

4.3     **Letter of Credit**.    Concurrently with Sublessee's execution of this Sublease and as a condition to the commencement of this Sublease, Sublessee shall deliver to Sublessor an unconditional, irrevocable and renewable letter of credit ("Letter

3

of Credit") in favor of Sublessor in the form attached hereto as Exhibit "E", issued by a financial institution satisfactory to Sublessor, in the principal amount of ███████████ ████████████████████████████████████████████████ ("Stated Amount"), to be held by Sublessor in accordance with the terms, provisions and conditions of this Sublease.  Sublessee shall pay all expenses, points and/or fees incurred by Sublessee in obtaining the Letter of Credit.    If the Letter of Credit delivered by Sublessee is inconsistent with the form attached hereto as Exhibit "E" (including, without limitation, the wrong name or address for the Beneficiary), Sublessor may so notify Sublessee in writing, in which case Sublessee shall cause the Letter of Credit to be corrected within five (5) business days after such notice.

The Letter of Credit shall state that an authorized officer or other representative of Sublessor may make demand on Sublessor's behalf for the Stated Amount of the Letter of Credit, or any portion thereof, and that the issuing bank must immediately honor such demand, without qualification or satisfaction of any conditions, except the proper identification of the party making such demand.  In addition, the Letter of Credit shall indicate that it is transferable in its entirety by Sublessor as beneficiary and that upon receiving written notice of transfer, and upon presentation to the issuing bank of the original Letter of Credit, the issuer or confirming bank will reissue the Letter of Credit naming such transferee as the beneficiary.  Sublessee shall be responsible for the payment to the issuing bank of any transfer costs imposed by the issuing bank in connection with any such transfer.  If (A) the term of the Letter of Credit held by Sublessor will expire prior to the last day of the Lease Term and the Letter of Credit is not extended, or a new Letter of Credit for an extended period of time is not substituted, in either case at least sixty (60) days prior to the expiration of the Letter of Credit, or (B) Sublessee commits a default with respect to any provision of this Lease, including the filing of a voluntary petition under Title 11 of the United States Code (i.e., the Bankruptcy Code), or otherwise becomes a debtor in any case or proceeding under the Bankruptcy Code, as now existing or hereinafter amended, or any similar law or statute, Sublessor may (but shall not be required to) draw upon all or any portion of the Stated Amount of the Letter of Credit, and the proceeds received from such draw shall constitute Sublessor's property (and not Sublessee's property or the property of the bankruptcy estate of Sublessee) and Sublessor may then use, apply or retain all or any part of the proceeds (1) for the payment of any sum which is in default, (2) to reimburse Sublessor for costs incurred by Sublessor in connection with this Sublease (including, without limitation, any brokerage commissions and attorneys' fees), (3) for the payment of any other amount which Sublessor may spend or become obligated to spend by reason of Sublessee's default, (4) to compensate Sublessor for any loss or damage which Sublessor may suffer by reason of Sublessee's default or (5) as prepaid rent to be applied against Sublessee's Basic Rental obligations for the last month of the Term and the immediately preceding month(s) of the Term until the remaining proceeds are exhausted.  If any portion of the Letter of Credit proceeds are so used or applied, Sublessee shall, within ten (10) days after demand therefor, post an additional Letter of Credit in an amount to cause the aggregate amount of the unused proceeds and such new Letter of Credit to equal the Stated Amount required in this Section 4.3 above.  Sublessor shall not be required to keep any proceeds from the Letter of Credit separate from its general funds.  Should Sublessor sell or assign its interest in the Subleased Premises during the Sublease Term and if Sublessor deposits

4

with the purchaser thereof the Letter of Credit or any proceeds of the Letter of Credit, thereupon Sublessor shall be discharged from any further liability with respect to the Letter of Credit and said proceeds and Sublessee shall look solely to such transferee for the return of the Letter of Credit or any proceeds therefrom.  The Letter of Credit or any remaining proceeds of the Letter of Credit held by Sublessor after expiration of the Sublease Term, after any deductions described in this <u>Section 4.3</u> above, shall be returned to Sublessee or, at Sublessor's option, to the last assignee of Sublessee's interest hereunder, within sixty (60) days following the expiration of the Sublease Term.

The use, application or retention of the Letter of Credit, the proceeds or any portion thereof, shall not prevent Sublessor from exercising any other rights or remedies provided under this Sublease, it being intended that Sublessor shall not be required to proceed against the Letter of Credit, and such use, application or retention of the Letter of Credit shall not operate as a limitation on any recovery to which Sublessor may otherwise be entitled.  No trust relationship is created herein between Sublessor and Sublessee with respect to the Letter of Credit.

Sublessor and Sublessee acknowledge and agree that in no event or circumstance shall the Letter of Credit, any renewal thereof or substitute therefor or the proceeds thereof be (i) deemed to be or treated as a "security deposit" within the meaning of California Civil Code Section 1950.7, (ii) subject to the terms of such Section 1950.7, or (iii) intended to serve as a "security deposit" within the meaning of such Section 1950.7. The parties hereto (A) recite that the Letter of Credit is not intended to serve as a security deposit and such Section 1950.7 and any and all other laws, rules and regulations applicable to security deposits in the commercial context ("<u>Security Deposit Laws</u>") shall have no applicability or relevancy thereto and (B) waive any and all rights, duties and obligations either party may now or, in the future, will have relating to or arising from the Security Deposit Laws.  Notwithstanding the foregoing, to the extent California Civil Code Section 1950.7 in any way: (a) is applicable to this Sublease or the Letter of Credit (or any proceeds thereof); or (b) controls Sublessor's rights to draw on the Letter of Credit or apply the proceeds of the Letter of Credit to any amounts due under the Sublease or any damages Sublessor may suffer following termination of this Sublease, then Sublessee fully and irrevocably waives the benefits and protections of Section 1950.7 of the California Civil Code, it being agreed that Sublessor may recover from the Letter of Credit (or its proceeds) all of Sublessor's damages under this Sublease and California law including, but not limited to, any damages accruing upon the termination of this Sublease in accordance with this Sublease and Section 1951.2 of the California Civil Code.

5.      **<u>Use and Services</u>**.

5.1      **<u>Use Restrictions</u>**.  Sublessee shall use the Subleased Premises only for the purposes stated in Article 9 of the Master Lease and for no other use whatsoever. Sublessee's business shall be conducted so as not to violate any term, provision or condition of the Master Lease.  Sublessee shall not do or suffer anything to be done upon the Subleased Premises which will cause structural injury to the Subleased Premises or the Buildings.  Sublessee shall not use or permit the use of the Subleased Premises or any

5

part thereof for any purpose which will increase the existing rate of insurance upon the Building or any part thereof, or cause a cancellation of any insurance policy covering the Building or any part thereof.  In the event any act on the part of Sublessee or use of the Subleased Premises by Sublessee shall cause, directly or indirectly, any increase of Sublessor's insurance expense, said additional expense shall be paid by Sublessee to Sublessor upon demand.  No such payment by Sublessee shall limit Sublessor in the exercise of any other rights or remedies, or constitute a waiver of Sublessor's right to require Sublessee to discontinue such act or use.

5.2    **Additional Services**.  Sublessee shall provide for its own telephone, internet, fax, security systems, data services, and other information technology exclusively serving the Subleased Premises, at its own cost and expense, and at all times in compliance with the terms of the Master Lease.

6.    **Consent of Master Lessor**.  The parties hereto acknowledge that the Master Lease requires that Sublessor obtain the consent of Master Lessor to any subletting of the Subleased Premises.  Sublessor shall use commercially reasonable effort to obtain the consent of Master Lessor to this Sublease promptly following the mutual execution hereof.

7.    **Liens**.  Sublessee shall keep the Subleased Premises free from any liens arising out of any work performed or obligations incurred by or for Sublessee.

8.    **Condition of Premises and Alterations**. Sublessor, at its sole cost and expense, shall remove any logos or branding relating to Sublessor's previous use from the Subleased Premises prior to delivering any portion of the Subleased Premises to Sublessee (each, a "Delivery Date").  The Subleased Premises sublet hereunder shall be taken and leased by Sublessee in their "as is" condition existing as of the date hereof, and "broom-clean" and with all Sublessor's personal property removed no less than five (5) days prior to Delivery Date. Sublessee shall not make or suffer to be made any alterations, additions or improvements to or of the Subleased Premises or any part thereof except as permitted under the Master Lease. In all events, Sublessee shall maintain the Subleased Premises as required under the Master Lease and shall surrender the Subleased Premises to Sublessor upon expiration of this Sublease, or the sooner termination of the Master Lease, in the condition required under the Master Lease.

9.    **Use of Existing FF&E.**  Notwithstanding the foregoing, Sublessee shall be permitted to install its own furniture within the Subleased Premises.  Sublessee will be allowed full use and control of the furniture, fixtures and equipment ("FF&E") currently located within the Subleased Premises for the Term of this Sublease.  The cost of any furniture reconfigurations shall be solely borne by the Sublessee.  Sublessor has not made and does not make any representations or warranties as to the physical condition of the FF&E. ████████████ ██████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████ ██████████████████████████████████████ An inventory of the FF&E is attached herein as Exhibit "C". Sublessee acknowledges that the inventory listed may not reflect the actual final list and is subject to change based on Sublessor's ongoing inventory check.

6

10.    **Repairs**.  Sublessee shall promptly make all repairs to the Subleased Premises not required to be made by Master Lessor in compliance with Section 8.2 of the Master Lease. If Sublessee fails to maintain the Subleased Premises in good order, condition and repair, and such failure results in a notice of default from Master Lessor, Sublessor shall give Sublessee written notice to do such acts as are reasonably required to maintain the Subleased Premises in accordance with the Master Lease.  If Sublessee fails to promptly commence such work within the time frames required in the Master Lease and diligently prosecute it to completion, Sublessor shall have the right to do such acts and expend such funds at the expense of Sublessee as are reasonably required to perform such work.  All amounts payable by Sublessee to Sublessor pursuant to this Section 10 shall be paid as Additional Rent within thirty (30) days after Sublessor delivers to Sublessee invoices or cancelled checks evidencing such payment obligations.  Notwithstanding the foregoing, the parties hereto acknowledge and agree that Master Lessor shall remain responsible for the performance of all repairs expressly required to be performed by Master Lessor pursuant to the terms and conditions of the Master Lease ("Sublessor's Repair Obligations").  Sublessee shall notify both Master Lessor and Sublessor in the event that Master Lessor fails to perform Sublessee's Repair Obligations.  Upon such notification and in addition to such other rights and remedies Sublessor shall have under the Master Lease, Sublessor shall take reasonable action under the Master Lease to cause Master Lessor to perform its obligations thereunder.

11.    **Damage or Destruction**.  In the event of damage or destruction to the Building or any part thereof, the Master Lease shall either continue or terminate pursuant to the terms of the Master Lease.  If the Master Lease terminates, the Sublease shall also terminate.  If the Master Lease does not terminate, then Master Lessor shall commence the necessary repair or restoration of the Building, including that portion of the Subleased Premises, if any, suffering damage or destruction, as required under the Master Lease. Sublessor shall have no responsibility whatsoever for the repair or restoration of the Subleased Premises, it being acknowledged by Sublessee that any repairs must be performed, if at all, by Master Lessor.  To the extent such damage or destruction renders the Subleased Premises unusable during the Term, Sublessee shall have the same rights, remedies and obligations of Sublessor under the Master Lease relative to the Subleased Premises including, without limitation those terms and conditions related to abatement of rent and receipt of insurance proceeds.  Sublessor agrees to reasonably cooperate with Sublessee in connection with the exercise of any rights or remedies available under the Master Lease related to casualty events.

12.    **Eminent Domain or Condemnation**.  In the event a proceeding in eminent domain or condemnation is instituted against the Building, or any part thereof, the Master Lease shall either continue or terminate pursuant to the terms of the Master Lease.  If the Master Lease terminates, this Sublease shall also terminate.  If the Master Lease does not terminate and the Subleased Premises have not been materially affected, then the Sublease shall continue in full force and effect except that the rental payable hereunder shall be reduced to the extent that rent applicable to the Subleased Premises is equitably reduced under the Master Lease.  If the Master Lease does not terminate and the Subleased Premises are materially and substantially affected by the proceeding in eminent domain or condemnation, then Sublessee shall have the right to terminate the Sublease.  In any event, Sublessee shall not be entitled to any award of damages for Sublessee's interest in the Subleased Premises, except to the extent related to the personal property of Sublessee.  Notwithstanding the foregoing, nothing contained herein shall prevent

7

Sublessee from seeking an award against a taking authority for the taking of personal property and fixtures owned by Sublessee, or for moving expenses as a result of such taking, provided, however, the award sought and received by Sublessee shall not diminish or affect, in whole or in part, the award sought by Master Lessor or Sublessor.

13.    **Waiver of Liability; Indemnification**.  Without limiting in any way the effect or generality of all indemnification and waiver provisions contained as part of the terms of the Master Lease, which are incorporated herein pursuant to Section 15 below, Sublessee hereby agrees that:

13.1    Sublessor shall not be liable to Sublessee, and Sublessee hereby waives all claims against Sublessor, for any injury or damage to any person or property in or about the Subleased Premises by or from any cause whatsoever other than by reason of the gross negligence or willful misconduct of Sublessor.

13.2    Sublessee shall defend, indemnify and hold Sublessor and Master Lessor harmless against any and all claims or liability for any injury or damage to any person or property whatsoever when such injury or damage shall be caused in part or in whole by the act, neglect, fault of, or omission of any duty with respect to the same, by Sublessee, its agents, servants, employees, or invitees: (i) occurring in, on, or about the Subleased Premises or any part thereof, and (ii) occurring in, on, or about any facilities (including, without prejudice to the generality of the term "facilities," elevators, stairways, passageways or hallways) the use of which Sublessee may have in conjunction with other lessees of the Buildings unless such injury or damage results from the gross negligence or willful misconduct of Sublessor.

13.3    Sublessee and Sublessor each hereby, on behalf of themselves and all persons and parties claiming under or through it, including without limitation its insurance carrier(s), waives any right of recovery or claim against the other for any damage to or destruction of any property located in or about the Subleased Premises which results from or arises out of any casualty or event insured by any casualty and/or property insurance policy carried by such waiving party, regardless of the cause or origin of such casualty or event, including, without limitation, the negligence of Sublessee or Sublessor.

14.    **Assignment and Subletting**.  Sublessee shall not assign, or otherwise transfer by operation of law or otherwise this Sublease or any interest herein, sub-sublet the Subleased Premises, or use the Subleased Premises or any portion thereof (the "Transfer") without the prior written consent of Sublessor which consent shall not be unreasonable withheld, conditioned, or delayed and the terms and condition of any such Transfer must be in compliance with the terms of the Master Lease and this Sublease.

15.    **Incorporation of Terms of Master Lease**.  Sublessee expressly understands, acknowledges, and agrees that all of the other terms, conditions, and covenants of this Sublease shall be those stated in the Master Lease but only to the extent that the terms of the Master Lease relate to the Subleased Premises, except for (i) the basic rent obligations set forth in Article 1 Item 1.8 and Article 5 of the Master Lease, and (ii) the operating expense obligations set forth in

8

Article 1 Item 1.18 and Article 7 of the Master Lease, subject however to <u>Section 4</u> above. Sublessee shall and hereby agrees to be subject to and bound by and to comply with the Master Lease with respect to the Subleased Premises and to satisfy all applicable terms and conditions of the Master Lease for the benefit of both Sublessor and Master Lessor, and that upon the breach of any of said terms, conditions or covenants of the Master Lease by Sublessee beyond any applicable notice or cure period or upon the failure of the Sublessee to pay rent or comply with any of the provisions of this Sublease beyond any applicable notice or cure period, Sublessor may exercise any and all rights and remedies granted to Master Lessor by the Master Lease, as well as any and all rights and remedies granted to Sublessor by this Sublease.  It is further understood and agreed that the Sublessor has no duty or obligation to the Sublessee under the Master Lease other than to maintain the Master Lease in full force and effect during the Term of this Sublease, provided, however, that Sublessor shall not be liable to Sublessee for any earlier termination of the Master Lease which is not due to a default of Sublessor under the Master Lease.  Whenever the provisions of the Master Lease which have been incorporated as provisions of this Sublease require the written consent of the Master Lessor, said provisions shall be construed to require the written consent of both the Master Lessor and the Sublessor. Sublessor hereby covenants that its consent shall not be unreasonably withheld, conditioned, or delayed.  Sublessee hereby acknowledges that it has read and is familiar with the terms of the Master Lease, and agrees that this Sublease is subordinate and subject to the Master Lease and that any termination thereof shall likewise terminate this Sublease.  Sublessee further agrees that, in executing this Sublease and assuming the obligations of lessee under the Master Lease (to the extent applicable), it has not been granted any of the rights of Sublessor, as lessee under the Master Lease, such rights being specifically reserved by Sublessor, except to the extent granted to Sublessee hereunder.  In the event of any inconsistencies between any of the provisions of this Sublease and the Master Lease, the terms of this Sublease shall govern.

16.    **Personal Property Taxes**.  Sublessee shall pay or cause to be paid, before delinquency, any and all taxes levied or assessed and which become payable during the Term hereof upon all of Sublessee's leasehold improvements installed after the date hereof in connection with the Subleased Premises, and Sublessee's equipment, furniture, fixtures and personal property located in the Subleased Premises.

17.    **Default and Remedies**.

17.1    The occurrence of any one or more of the following events shall constitute a material default and breach of this Sublease by Sublessee:

(a)    The abandonment (but not vacation of the Subleased Premises provided Sublessee continues to timely pay all rent due hereunder) of the Subleased Premises by Sublessee;

(b)    The failure by Sublessee to make any payment of Basic Rent, Additional Rent or any other payment required to be made by Sublessee hereunder, as and when due, where such failure shall continue for a period of three (3) days after written notice thereof by Sublessor to Sublessee;

9

4885-2024-4238

(c)      Except where a specific time period is otherwise set forth for Sublessee's performance in this Sublease (in which event the failure to perform by Sublessee within such time period shall be a material default), the failure or inability by Sublessee to observe or perform any of the covenants or provisions of either this Sublease or the Master Lease to be observed or performed by Sublessee, other than as specified in any other subsection of this Section 17(a), where the failure continues for a period of thirty (30) days after written notice from Sublessor to Sublessee.  However, if the nature of the failure is such that more than thirty (30) days are reasonably required for its cure, then Sublessee shall not be deemed to be in default if Sublessee commences the cure within thirty (30) days, and thereafter diligently pursues the cure to completion;

(d)      The making by Sublessee of any general assignment or general arrangement for the benefit of creditors, or the filing by or against Sublessee of a petition to have Sublessee adjudged a bankrupt, or a petition for reorganization or arrangement under any law, now existing or hereafter amended or enacted, relating to bankruptcy or insolvency (unless, in the case of a petition filed against Sublessee, Sublessee has not consented to, or admitted the material allegation of said petition and the same is dismissed within thirty (30) days); or the appointment of a trustee or a receiver (other than in a bankruptcy or insolvency proceeding) to take possession of substantially all of Sublessee's assets located at the Subleased Premises or of Sublessee's interest in this Sublease, where possession is not restored to Sublessee within thirty (30) days; or

(e)      Sublessee causes a material default and breach under the Master Lease.

17.2    In the event of any such material default or breach by Sublessee, Sublessor may, at any time thereafter, with or without notice or demand, and without limiting Sublessor in the exercise of any right or remedy which Sublessor may have hereunder, under the Master Lease as incorporated herein or otherwise at law or in equity by reason of such default or breach:

(a)      Terminate this Sublease and Sublessee's right to possession of the Subleased Premises by notice to Sublessee or any other lawful means, in which case this Sublease shall terminate and Sublessee shall immediately surrender possession of the Subleased Premises to Sublessor.  In such event, Sublessor shall be entitled to recover from Sublessee all unpaid installments of rent and other sums due and owing under this Sublease as of the date of Sublessee's default, and all damages incurred by Sublessor due to Sublessee's default, including, but not limited to:

(i)      The cost of recovering possession of the Subleased Premises; or

(ii)      The worth at the time of award by the court having jurisdiction thereof of the amount by which the unpaid rent for the balance

10

4885-2024-4238

of the Term after the time of such award exceeds the amount of such rental loss for the same period that Sublessee proves could be reasonably avoided.

Unpaid installments of rent or other sums shall bear interest from the date due at the highest legal rate permissible in the State of California. In the event Sublessee shall have abandoned the Subleased Premises, Sublessor shall have the option of (1) taking possession of the Subleased Premises and recovering from Sublessee the amounts specified hereinabove, or (2) proceeding under the provisions of the following paragraphs (b) and/or (c).

(b)     Maintain Sublessee's right to possession, in which case this Sublease shall continue in effect whether or not Sublessee shall have abandoned the Subleased Premises. In such event Sublessor shall be entitled to enforce all of Sublessor's rights and remedies under this Sublease, including, without limitation, the right to recover the rent as it becomes due hereunder. Notwithstanding any election by Sublessor not to terminate this Sublease or Sublessee's right to possession, and whether or not Sublessor has sublet the Subleased Premises or any part thereof as provided hereinabove, Sublessor shall retain the right to and may at any time thereafter elect to terminate this Sublease or Sublessee's right to possession for any default of Sublessee which remains uncured or for any subsequent default of Sublessee by giving Sublessee written notice thereof.

(c)     Pursue any other remedy now or thereafter available to Sublessor under the laws or judicial decisions of the State of California.

(i)     No entry or taking of possession of the Subleased Premises or any part thereof by Sublessor, nor any subletting thereof by Sublessor for Sublessee, nor any appointment of a receiver, nor any other act of Sublessor, whether acceptance of keys to the Subleased Premises or otherwise, shall constitute or be construed as an election by Sublessor to terminate this Sublease or Sublessee's right to possession of the Subleased Premises unless a written notice of such election be given to Sublessee by Sublessor.

(ii)     In the event Sublessor elects to terminate this Sublease or Sublessee's right to possession hereunder, Sublessee shall surrender and vacate the Subleased Premises in broom-clean condition, and Sublessor may re-enter and take possession of the Subleased Premises and may eject all parties in possession or eject some and not others or eject none. Any personal property of or under the control of Sublessee remaining on the Subleased Premises at the time of such re-entry may be considered and treated by Sublessor as abandoned.

(iii)     Termination of this Sublease or Sublessee's right to possession by Sublessor shall not relieve Sublessee from any liability to

11

Sublessor under any provision of this Sublease providing for any indemnification of Sublessor by Sublessee.

18.    **Brokers**.  Each party represents and warrants to the other that it has not dealt with any real estate broker, sales person or finder, in connection with this Sublease other than Weston Chandler of CBRE representing the Sublessee and Jones Lang LaSalle representing the Sublessor.  Any brokerage commission due shall be paid by Sublessor pursuant to a separate agreement.  Both parties agree to hold the other harmless from all losses, damages, claims and expenses (including reasonably attorney's fees) arising out of any claims for commission or finders fees or otherwise asserted by any person or firm either party has employed as its broker in connection with this Sublease.

19.    **Insurance**.  During the entire Term of this Sublease, Sublessee shall maintain all insurance policies required by Sublessor to be maintained under the Master Lease in accordance with the terms of the Master Lease to the extent applicable to the Subleased Premises.  Sublessee shall name Sublessor as an additional insured on all such policies in which Master Lessor is also named as an additional insured.  A certificate of insurance certifying required/applicable coverage and provisions shall be delivered to Sublessor prior to the date of execution thereof by Sublessee and annually thereafter during the term of this Sublease.

20.    **Parking**.  In connection with the Subleased Premises, Sublessee shall be entitled to utilize up to five (5) parking spaces per 1,000 rentable square feet in the Subleased Premises per month for spaces located in the "Parking Areas" as defined in the Master Lease. Such spaces shall be subject to availability and at rental rates set forth in the Master Lease.  Sublessee may request additional parking stalls on an as available as needed basis at the rate set forth in the Master Lease.  Sublessor will cooperate with Sublessee to accommodate additional parking stall requests as available on a month-to-month basis, at the rental rates set forth in the Master Lease. Additionally, Sublessee shall have the right to contract directly with Master Lessor for additional stalls in an offsite parking structure on a month-to-month basis.  Currently, the monthly charge per unreserved parking space is Fifty Five and No/100 Dollars ($55.00) and One Hundred Fifty and No/100 Dollars ($150.00) for a reserved parking space.  All amounts paid pursuant to this Section 20 shall be paid to Sublessor as Additional Rent hereunder.

21.    **Signage**.  Subject to the approval of Master Lessor and the terms of the Master Lease, Sublessee may install signage at its own expense. Sublessee shall have the right to utilize any interior directory located within the 3345 Building and 3347 Building, subject to the terms of the Master Lease. ███████████████████████████████████████████████████ ███████████████████████████████ Sublessee shall be responsible, at its sole cost and expense, for the costs of installation, maintenance, restoration and repair of signage and removal of signage at the end of the Term.

22.    **Notices**.  All notices and demands which may be or are required to be given by either party to the other hereunder shall be in writing and shall be personally delivered or sent by United States certified or registered mail, postage prepaid, return receipt requested, or sent by reputable overnight courier (such as Federal Express, UPS or DHL with delivery confirmation), and addressed as follows:

12

| To Sublessor: | Alteryx, Inc. |
| | 17200 Laguna Canyon Road |
| | Irvine, CA 92618 |
| | Attn: Christopher Lal, Chief Legal Officer |

| with a copy to: | Alteryx, Inc. |
| | 17100 Laguna Canyon Road |
| | Irvine, CA 92618 |
| | Attn: Global Real Estate |

| To Sublessee: | Innovative Solutions Inc. |
| | 1309 Coffeen Avenue, Ste 4734 |
| | Sheridan, WY 82801 |
| | Attn: Wesley Thomas |
| | Email: Wes@lpglaw.com |

| with a copy to | The Litigation Practice Group PC |
| | 17542 E. 17th Street, Ste 100 |
| | Tustin, CA 92780 |
| | Attn: Daniel S. March |
| | Email: Admin@lpglaw.com |

All notices shall be deemed to have been received at the time of delivery, if (i) personally delivered, (ii) three (3) business days after deposit in the United States mail as specified above if mailed, (iii) one (1) business day if sent by overnight courier for next business day delivery, or (iv) upon confirmed transmission if sent by e-mail transmission, provided such transmission is prior to 5:00 p.m. Pacific Time on a business day (if such transmission is after 5:00 p.m. Pacific Time on a business day or is on a non-business day, such notice will be deemed given on the following business day). Either party may from time to time change the address for delivery of notices and demands by giving notice of such change as specified above. Sublessor shall promptly provide Sublessee with a copy of any notice of default under the Master Lease and any notice relating to the Subleased Premises received by Sublessor from Master Lessor. Sublessee shall forward concurrently to Sublessor any notices sent or received from Master Lessor relating to the Subleased Premises.

23. **Hold Over**. In the event of any holding over without the consent of Sublessor beyond the end of the Term, Sublessee shall be deemed a Sublessee at sufferance. During such holdover period, Sublessee shall pay Basic Rent to Sublessor in an amount equal to 150% the monthly rental last paid by Sublessee, and Sublessee shall promptly reimburse Sublessor of all loss, cost and expense incurred by Sublessor under Section 21.2 of the Master Lease, which requires, among other things, payment of 150% of the rent for the Leased Premises.

24. **Captions**. The captions of sections of this Sublease are not a part of this Sublease and shall have no effect upon the construction or interpretation of any part hereof.

13

4885-2024-4238

25.    **Successors and Assigns**.  The covenants and conditions herein contained, subject to the provisions as to assignment, apply to and bind the heirs, successors, executors, administrators, legal representatives, and assigns of the parties hereto.

26.    **Attorneys' Fees**.  In the event of any legal action or proceeding brought by either party against the other arising out of this Sublease (an "Action"), the prevailing party shall be entitled to the payment by the losing party of its reasonable attorneys' fees, court costs, and litigation expenses, as determined by the court.

27.    **Post-Judgment Attorneys' Fees**.  The prevailing party in any Action shall be entitled, in addition to and separately from the amounts receivable under Section 26 above, to the payment by the losing party of the prevailing party's reasonable attorneys' fees, court costs, and litigation expenses incurred in connection with (a) any appellate review of the judgment rendered in such Action or of any other ruling in such Action, and (b) any proceeding to enforce a judgment in such Action.  It is the intent of the parties that the provisions of this Section 27 be distinct and severable from the other rights of the parties under this Lease, and shall survive the entry of judgment in any Action and shall not be merged into such judgment.

28.    **Gender and Number**.  Wherever the context so requires, each gender shall include any other gender, and the singular number shall include the plural and vice-versa.

29.    **Cumulative Remedies**.  No remedy or election hereunder shall be deemed exclusive but shall, wherever possible, be cumulative with all other remedies at law or in equity.

30.    **Separability**.  Any provision of this Sublease which shall prove to be invalid, void, or illegal shall in no way affect, impair, or invalidate any other provision hereof, and all such other provisions shall remain in full force and effect.

31.    **Effectiveness**.  This Sublease shall become effective when executed by all the parties hereto.  This Sublease may be executed by telefacsimile.

32.    **Quiet Enjoyment**.  Upon Sublessee paying all Basic Rent, Additional Rent and other charges due hereunder, and observing and performing all of the covenants, conditions, and provisions to be performed by Sublessee hereunder, Sublessee shall have quiet possession of the Subleased Premises for the entire Term hereof, subject to all of the provisions of this Sublease.

33.    **Time of the Essence**.  Time is of the essence of each provision of this Sublease where time is an element.

34.    **Counterparts**.  This Sublease may be executed in counterparts, each is hereby declared to be an original; all, however, constitute but one and the same agreement.

35.    **Confidentiality**.  Sublessee covenants and agrees that it shall maintain strict confidentiality and cause its agents, attorneys and accountants to maintain strict confidentiality with respect to (i) the terms of the Sublease and Master Lease, and (ii) all prior discussions and negotiations concerning the terms of the Sublease (collectively, the "Confidential Information").  Sublessee acknowledges and agrees that the Confidential Information constitutes proprietary information of Sublessor and Master Lessor.  Sublessee further acknowledges and agrees that

14

disclosure of the Confidential Information could adversely affect Master Lessor's ability to negotiate other leases or impair Master Lessor's relationships with other Sublessees. Sublessee and its partners, employees and attorneys shall keep confidential the Confidential Information and shall not discuss the same with any persons or existing or potential Sublessees of the Building, directly or indirectly. Notwithstanding the foregoing, Sublessee may disclose the terms of this Sublease if Sublessee is compelled to disclose such information by judicial or administrative process or by other requirements of law or regulation, but only to the extent and in the manner required by such judicial or administrative process or other requirements of law or regulation.

36. **Governing Law**. This Agreement shall be construed, interpreted and governed by the laws of the State of California. Each party consents to the exclusive jurisdiction and venue of the state and federal courts sitting in Orange County, California in any action regarding a claim arising out of, under or in connection with this Sublease.

37. **Lease Guaranty**. Sublessee's obligations under this Sublease shall be guaranteed by The Litigation Practice Group PC, a California corporation, pursuant to the form of Guaranty set forth on Exhibit "D", attached hereto. Upon the Commencement Date, Sublessee shall ensure the execution of the Guaranty and delivery thereof to Sublessor.

38. **Certified Access Specialist.** Sublessor hereby advises Sublessee that the Sublease Premises has not undergone an inspection by a certified access specialist, and except to the extent expressly set forth in this Sublease, Sublessor shall have no liability or responsibility to make any repairs or modifications to the Sublease Premises in order to comply with accessibility standards. The following disclosure is hereby made pursuant to California Civil Code Section 1938:

"A Certified Access Specialist (CASp) can inspect the subject premises and determine whether the subject premises comply with all of the applicable construction-related accessibility standards under state law. Although state law does not require a CASp inspection of the subject premises, the commercial property owner or lessor may not prohibit the lessee or tenant from obtaining a CASp inspection of the subject premises for the occupancy or potential occupancy of the lessee or tenant, if requested by the lessee or tenant. The parties shall mutually agree on the arrangements for the time and manner of the CASp inspection, the payment of the fee for the CASp inspection, and the cost of making any repairs necessary to correct violations of construction-related accessibility standards within the premises."

In accordance with the foregoing, Sublessee, upon at least thirty (30) days' prior written notice to Sublessor, has the right to obtain a CASp inspection of the Sublease Premises, and such CASp inspection shall be conducted in compliance with reasonable rules in effect at the Buildings with regard to such inspections and shall be subject to Sublessor's prior written consent. If Sublessor approves the CASp inspection of the Sublease Premises, then: (i) Sublessor and Sublessee shall mutually agree on the arrangements for the time and manner of the CASp inspection during such thirty (30) day period; (ii) Sublessee shall be solely responsible to pay the cost of the CASp inspection as and when required by the CASp; and (iii) Sublessee shall pay to

15

4885-2024-4238

Sublessor, as and when required by Sublessor, the cost of making any repairs to correct violations of the construction related accessibility standards within or relating to the Sublease Premises.

*[Signatures on the Following Page]*

16

IN WITNESS WHEREOF, the parties have executed this Sublease on the date first above written.

**SUBLESSOR:**                    ALTERYX, INC., a Delaware corporation

By:_____
Name:Kevin Rubin
Title:CFO

**SUBLESSEE:**                    INNOVATIVE SOLUTIONS INC.,
a Wyoming corporation

By:_____
Name: Wesley Thomas
Title: Chief Executive Officer

17

# EXHIBIT "A"

## SUBLEASED PREMISES

Suites 400 and 490 in the 3345 Building





EXHIBIT A

Suite 400 of the 3347 Building



EXHIBIT A

4885-2024-4238

**EXHIBIT "B"**

**<u>MASTER LEASE</u>**

[See attached.]

<u>EXHIBIT B</u>

4885-2024-4238

# EXHIBIT "C"

## FF&E INVENTORY
### [Suites 400 and 490 in the 3345 Building]

| Qty | Description | notes |
|---|---|---|
| 27 | Office Desk | |
| 4 | Purple lounge chairs | |
| 4 | Blue lounge chairs | |
| 2 | Teal lounge chairs | |
| 3 | Round coffee tables | |
| 1 | Gray couch | |
| 178 | Workstations | |
| 178 | Task chairs | |
| 36 | Office guest chairs | |
| 27 | Private Office Desk Set-Up | Desk, Return, Storage (file & overhead) |
| 2 | Large Conference Room Table | |
| 36 | Large Conference Room Chairs | |
| 4 | Grey lounge chairs | |
| 1 | Coffee table | |
| 1 | Lounge by exit to 3347- couch w/ end tables | |
| 1 | 2 Tier bench seating in hallway | |
| 1 | 2 Tier bench seating in café | |
| 4 | Small Conference Room Table | |
| 36 | Small Conference Room Chair | |
| 2 | Round Table | |
| 20 | Small Dining Table | |
| 50 | Dining Chair | |
| 12 | Dining Stool | |
| 2 | Large Dining Table | |
| 4 | Dining Bench | |
| 2 | Refrigerator | |
| 34 | Training Room Chairs | |
| 5 | Training Room Tables | |
| 9 | Conference Chairs | Outside Training Room Section (Hallway) |
| 2 | Conference Table | Outside Training Room Section (Hallway) |
| 1 | Refrigerator | Outside Training Room Section (Hallway) |

EXHIBIT C

**FF&E INVENTORY**
**[Suite 400 of the 3347 Building]**

| Qty | Description | notes |
|---|---|---|
| 99 | Workstation Desk | |
| 99 | Task chairs | |
| 25 | Private Office Desk Set-Up | Desk, Return, Storage |
| 28 | Office guest chairs | |
| 10 | Standingup Desk | Located by kitchen and private office/meeting rooms |
| 1 | Large Conference Table | |
| 22 | Large Conference Chair | |
| 6 | Small Conference Room Table | |
| 24 | Small Conference Room Chair | |
| 4 | Kitchen stools | Located by Kitchen Area |
| 10 | Lounge Chair | |
| 5 | Lounge Table | |
| 3 | Lounge couches | |
| 1 | Refrigerator | |
| 2 | Drink Cooler | |
| 2 | Dish Washer | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

EXHIBIT C

## EXHIBIT "D"

## <u>GUARANTY</u>

This Guaranty (this "<u>Guaranty</u>"), dated as of <u>March 4</u>, 2022 (the "<u>Effective Date</u>"), is signed by THE LITIGATION PRACTICE GROUP PC, a California corporation, having an address at 17542 E. 17th Street, Ste 100, Tustin, CA 92780 ("<u>Guarantor</u>"), as consideration for and in order to induce ALTERYX, INC., a Delaware corporation,  having an address at 17200 Laguna Canyon Road, Irvine, California 92618 ("<u>Sublessor</u>") to enter into that certain Sublease dated March 4, 2022 (the "<u>Sublease</u>") of a portion of the 3345 Building and 3347 Building located at 3345 and 3347 Michelson Drive, Irvine, California 92612 (as more particularly described in the Sublease) with INNOVATIVE SOLUTIONS INC., a Wyoming corporation, having an address at 1309 Coffeen Avenue, Ste 4734, Sheridan, WY 82801 ("<u>Sublessee</u>"), and Guarantor hereby agrees as follows:

1.      <u>Obligations</u>.  Guarantor guarantees unconditionally to Sublessor the punctual payment, performance, and observance of all monetary (including the payment of all rent, additional rent, and any other payments due and payable under the Sublease) and non-monetary obligations, covenants, conditions, and agreements required to be observed and performed or paid or reimbursed by Sublessee pursuant to the Sublease (collectively, the "<u>Obligations</u>").

2.      <u>Unconditional Guaranty</u>.  The Obligations are unconditional.  The Obligations, and this Guaranty, will remain in full force and effect without regard to any circumstances or conditions, including:

(a)      Any defense or set-off, counterclaim, recoupment, or termination whatsoever by reason of the invalidity, illegality, or unenforceability of the Sublease or otherwise or the failure of Sublessor to assert any claim or demand, or to enforce the Sublease or any right or remedy available to Sublessor under the Sublease, against Sublessee under the Sublease or any other agreement.

(b)      Any extension or renewal of the Sublease or any other agreement.

(c)      Any rescission, waiver, amendment, or modification of the Sublease or any other agreement.

(d)      The release of any security held by Sublessor under the Sublease.

(e)      Any transfer by Sublessor or Sublessee in respect of the Sublease or any interest in the Premises, including without limitation any assignment of the Sublease by Sublessee or any sublease of all, or a portion of, the Premises whether or not Guarantor receives notice and or has consented to such assignment or sublet.

(f)      Any transfer by Guarantor of any interest in or control of Sublessee.

(g)      Any bankruptcy or similar proceeding involving Sublessor or Sublessee.

<u>EXHIBIT D</u>

(h)    Failure of Sublessor to exercise any right or remedy against any other guarantor of the Sublease.

3.    <u>Waiver</u>.  Guarantor hereby waives and agrees not to assert or take advantage of the following:

(a)    Any right to require Sublessor to proceed against Sublessee or any other person or to proceed or exhaust any security held by Sublessor at any time or to pursue any other remedy in Sublessor's power before proceeding against Guarantor, including the provisions of Sections 2845 and 2850 of the Civil Code of California;

(b)    Any defense based on the statute of limitations in any action hereunder or in any action for the performance of any obligation hereby guaranteed;

(c)    Any defense that may arise by reason of the incapacity, lack of authority, bankruptcy, death or disability of any other person or persons or the failure of Sublessor to file or enforce a claim against the estate (in administration, bankruptcy or any other proceeding) of any other person or persons, including the provisions of Section 2810 of the Civil Code of California;

(d)    Any right to receive demands, protests and notices of any kind including, but not limited to, notice of the existence, creation or incurring of any new or additional obligation or of any action or non-action on the part of Sublessee, Sublessor or any other person;

(e)    Any defense based on an election of remedies including, but not limited to, any action by Sublessor which shall destroy or otherwise impair any subrogation right of Guarantor or the right of Guarantor to proceed against Sublessee for reimbursement, or both;

(f)    Any duty on the part of Sublessor to disclose to Guarantor any facts Sublessor may now or hereafter know about Sublessee, regardless of whether Sublessor has reason to believe that such facts materially increase the risk beyond that which Guarantor intends to assume or has reason to believe that such facts are unknown to Guarantor or has a reasonable opportunity to communicate such facts to Guarantor, it being understood and agreed that Guarantor is fully responsible for being and keeping informed of the financial condition of Sublessee and of all circumstances bearing on the risk of nonperformance of any obligation hereby guaranteed;

(g)    Any right to receive notice of or to consent to any amendments that may hereafter be made to the Sublease, including the provisions of Section 2819 of the Civil Code of California; and

(h)    Any defense based on the fact that Guarantor's obligations hereunder are larger or more burdensome than that of Sublessee's under the Sublease, including the provisions of Section 2809 of the Civil Code of California.

<u>EXHIBIT D</u>

4.  <u>Joint and Several Liability</u>.  Sublessor may, at Sublessor's option, proceed against Guarantor and Sublessee, jointly and severally, or against Guarantor only without having obtained a judgment against Sublessee.  Sublessor shall not be required to use any security deposit provided to Sublessor in accordance with the terms of the Sublease before proceeding against or collecting any sums from Guarantor.  The security held by Sublessor pursuant to the terms of the Sublease will not be applied to any Obligations paid or performed by Guarantor.  If there is more than one Guarantor under this Guaranty, Guarantor's obligations and liabilities under this Guaranty are joint and several.

Upon payment by Guarantor of any sums to Sublessor hereunder, all rights of Guarantor against Sublessee arising as a result thereof by way of right of subrogation, indemnification, or otherwise shall in all respects be subordinate and junior in right of payment to the prior indefeasible payment in full of all obligations under the Sublease.

Until all obligations hereby guaranteed shall have been fully performed, Guarantor shall have no right of subrogation and waives any right to enforce any remedy which Sublessor now has or may hereafter have against Sublessee and any benefit of, and any right to participate in, any security now or hereafter held by Sublessor, including the provisions of Sections 2847, 2848 and 2849 of the Civil Code of California.  Guarantor agrees that nothing contained herein shall prevent Sublessor from suing on the Sublease or from exercising any rights available to Sublessor thereunder and that the exercise of any of the aforesaid rights shall not constitute a legal or equitable discharge of Guarantor.  Guarantor expressly waives any and all benefits under the second sentence of California Civil Code Section 2822(a).  In addition, Guarantor agrees that Sublessor (and not Sublessee) shall have the right to designate the portion of Sublessee's obligations under the Sublease that is satisfied by a partial payment by Sublessee.

5.  <u>Further Assurances and Severability</u>.

(a)  Guarantor will execute, acknowledge, and deliver, at its own expense, all instruments and take all action as Sublessor from time to time may reasonably request for ensuring Sublessor the full benefits of this Guaranty.

(b)  If any provision of this Guaranty is to any extent determined by final decision of a court of competent jurisdiction to be unenforceable, the remainder of this Guaranty will not be affected thereby, and each provision of this Guaranty will be valid and enforceable to the fullest extent permitted by law.  Sublessor's delay in exercising, or the failure to exercise, any right under this Guaranty will not waive such right or any other right of Sublessor.  All remedies of Sublessor by reason of this Guaranty are separate and cumulative and no single remedy, whether or not exercised by Sublessor, will exclude any other remedy of Sublessor or limit or prejudice any other legal or equitable remedy which Sublessor may have.

6.  <u>Notices</u>.  All notices, requests, consents, claims, demands, waivers, and other communications hereunder (each, a "<u>Notice</u>") shall be in writing and addressed to the parties at the addresses set forth on the first page of this Guaranty (or to such other address that may be designated by the receiving party from time to time in accordance with this Section).  All Notices shall be delivered by one of the following methods:  (a) hand delivery, whereby delivery is deemed to have occurred at the time of delivery; (b) a nationally recognized overnight courier

<u>EXHIBIT D</u>

4885-2024-4238

company, whereby delivery is deemed to have occurred the business day following deposit with the courier; (c) registered U.S. Mail, signature required and postage prepaid, whereby delivery is deemed to have occurred on the third (3rd) business day following deposit with the U.S. Postal Service; or (d) electronic transmission (facsimile or email) provided that the transmission is completed no later than 5:00 p.m. PST on a business day and the original also is sent via overnight courier or U.S. Mail, whereby delivery is deemed to have occurred at the end of the business day on which electronic transmission is completed.

7.    Termination of this Guaranty.  Upon full performance of all Obligations hereby guaranteed, this Guaranty shall be of no further force or effect.

8.    Miscellaneous.

(a)    If judgment is entered against Guarantor in any action to enforce this Guaranty, Guarantor will reimburse Sublessor for all reasonable expenses incurred by Sublessor in connection therewith, including reasonable attorneys' fees and disbursements.

(b)    This Guaranty may not be changed or terminated orally or in any manner other than by a written agreement signed by Guarantor and Sublessor. No provision of this Guaranty or right of Sublessor hereunder can be waived or modified, nor can Guarantor be released from Guarantor's Obligations hereunder, except by a writing duly executed by Sublessor.

(c)    Each reference herein to Sublessor shall be deemed to include its heirs, successors, and assigns, in whose favor the provisions of this Guaranty shall also inure.  Each reference herein to Guarantor shall be deemed to include its heirs, successors, and assigns, all of whom shall be bound by the provisions of this Guaranty.

(d)    This Guaranty shall be governed by and construed in accordance with the laws of the State of California.  In any action brought under or arising out of this Guaranty, Guarantor hereby consents to the jurisdiction of any competent court within the State of California and hereby consents to service of process by any means authorized by California law.

(e)    GUARANTOR HEREBY WAIVES ANY RIGHT TO A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM IN RESPECT OF ANY MATTER ARISING OUT OF OR IN CONNECTION WITH THIS GUARANTY AND/OR ANY CLAIM FOR INJURY OR DAMAGE OR OTHERWISE.

(f)    This Guaranty shall constitute the entire agreement of Guarantor with respect to the subject matter hereof, and no representation, understanding, promise or condition concerning the subject matter hereof shall be binding upon Sublessor unless expressed herein.

(g)    All capitalized terms not defined herein shall have the meaning accorded them in the Sublease, a true and correct copy of which Guarantor hereby acknowledges receipt.

(h)    The Paragraph headings appearing herein are for purposes of convenience only and are not deemed to be part of this Guaranty.

EXHIBIT D

(i)      If there is more than one Guarantor, this Guaranty may be executed in separate counterparts, each of which when so executed and delivered shall be an original for all purposes, but all such counterparts shall together constitute one and the same instrument.

(j)      Should any one or more provisions of this Guaranty be determined to be illegal or unenforceable, all other provisions shall nevertheless be effective.

(k)      When the context and construction so require, all words used in the singular herein shall be deemed to have been used in the plural and the masculine shall include the feminine and neuter and vice versa.  The word "person" as used herein shall include any individual, company, firm, association, partnership, corporation, trust or other legal entity of any kind whatsoever.

*[signature(s) on following page(s)]*

EXHIBIT D

4885-2024-4238

IN WITNESS WHEREOF, Guarantor has caused this Guaranty to be executed as of the Effective Date.

**GUARANTOR**:

THE LITIGATION PRACTICE GROUP PC,
a California corporation

By: *Daniel March*
_____
Name: Daniel S. March
Title:  Managing Shareholder

EXHIBIT D

4885-2024-4238

**EXHIBIT "E"**

**FORM OF LETTER OF CREDIT**



EXHIBIT E

EXHIBIT E

EXHIBIT E

## CONSENT OF LANDLORD TO SUBLEASE





[REST OF PAGE INTENTIONALLY BLANK; SIGNATURES ON FOLLOWING PAGES]

WHEREFORE, Landlord, Tenant and Subtenant have executed this Consent on March ___, 2022.

**TENANT:**

ALTERYX, INC.,
a Delaware corporation

By: _____

    Print Name: <u>Kevin Rubin</u>

    Print Title: <u>CFO</u>

The undersigned Subtenant referred to hereinabove hereby acknowledges and accepts the conditions of Landlord's Consent to the Sublease as described hereinabove.

**SUBTENANT:**

INNOVATIVE SOLUTIONS INC.,
a Wyoming corporation

By: _____

    Print Name: <u>Wesley Thomas</u>

    Print Title: <u>CEO</u>

[SIGNATURES CONTINUED ON FOLLOWING PAGE]

**LANDLORD:**

LBA IV-PPI, LLC,
a Delaware limited liability company

By:    LBA IV-PPI MM, INC.,
       a Delaware corporation,
       its Managing Member

      By:_____
      Name:_____
      Title:_____

For LBA Office Use Only:  Prepared & Reviewed by: _____

## FIRST AMENDMENT TO SUBLEASE AGREEMENT

This FIRST AMENDMENT TO SUBLEASE AGREEMENT ("**Amendment**") dated for reference purposes only as of December 7, 2022, is entered into by and between ALTERYX, INC., a Delaware corporation ("**Sublandlord**"), INNOVATIVE SOLUTIONS INC., a Wyoming corporation ("**Subtenant**"), and Prime Logix LLC, a Wyoming limited liability company ("**Prime Logix**").

## R E C I T A L S:

A.      Sublandlord and Subtenant are parties to that certain Sublease Agreement dated March 4, 2022 (the "**Sublease**"). Pursuant to the Sublease, Sublandlord subleases to Subtenant and Subtenant subleases from Sublandlord that certain premises commonly known as Suites 400 and 490, within the building located at 3345 Michelson Drive, Irvine, California 92612, and that certain premises commonly known as Suite 400, within that certain building located at 3347 Michelson Drive, Irvine, California 92612 (collectively, the "**Subleased Premises**"), as more particularly described in the Sublease.

B.      Subtenant has provided Sublandlord with an Officer's Certificate, dated October 30, 2022 and attached hereto as Exhibit A ("**Officer's Certificate**"), indicating that Subtenant is the sole member of Prime Logix and that the principal business of Prime Logix is to provide certain administrative support services to Subtenant and to the law firms Subtenant services ("**PL Office Use**").

C.      Subtenant has advised Sublandlord that Subtenant has allowed certain employees of Prime Logix to occupy the Subleased Premises to work along with Subtenant for purposes of conducting the PL Office Use.

D.      Prime Logix has agreed to be jointly and severally liable for the covenants, conditions, provisions and agreements of the Sublease to be kept, observed and performed by Subtenant.

E.      Initially capitalized defined terms which are used in this Amendment without definition shall have the meanings given to them in the Lease.

## A G R E E M E N T:

NOW, THEREFORE, in consideration of the foregoing Recitals, the mutual covenants and agreements contained in this Amendment and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereby agree as follows:

1.      Joint and Several Liability. Subtenant and Prime Logix hereby agree that (a) Subtenant and Prime Logix are and shall be jointly and severally liable for the covenants, conditions, provisions and agreements of the Sublease to be kept, observed and performed by Subtenant; (b) the act or signature of, or notice from or to, Subtenant or Prime Logix with respect to the Sublease shall be binding upon both Subtenant and Prime Logix with the same force and effect as if each of them had so acted or signed, or given or received such notice; and (c) references in the Sublease, as amended by this Amendment, to "Subtenant" shall mean collectively, Subtenant and Prime Logix.

2.      Representations and Warranties. Subtenant hereby represents, warrants, and agrees that: (a) there exists no breach, default, or event of default by Sublandlord under the Sublease, or any event or condition which, with notice or passage of time or both, would constitute a breach, default, or event of

4871-8073-0431

default by Sublandlord under the Sublease; (b) the Sublease continues to be a legal, valid, and binding agreement and obligation of Subtenant; (c) Subtenant has no current offset or defense to its performance or obligations under the Sublease; (d) the Officer's Certificate is accurate in all respects; and if any aspect of the Officer's Certificate becomes inaccurate in the future, Subtenant shall immediately notify Sublandlord in writing and thereafter, if requested by Sublandlord, Subtenant shall cause Prime Logix to immediately surrender and vacate the space in accordance with the Sublease; (e) Subtenant and Prime Logix are "solvent" (within the meaning of applicable laws relating to fraudulent transfers) and do not intend to incur, have not incurred nor will incur as a result of this Amendment or otherwise, debts or liabilities beyond their ability to pay such debts and liabilities (including Rent) when due; (f) Prime Logix shall only use the Subleased Premises for the PL Office¹Use and for no other purposes whatsoever; (g) Subtenant is currently using, has only ever used, and will only use the Subleased Premises for the uses expressly permitted by Article 9 of the Master Lease and for no other use whatsoever; (h) no employees, personnel or agents associated with, hired or employed by any entities other than Subtenant and Prime Logix are currently occupying the Subleased Premises nor will Subtenant or Prime Logix allow any such other individuals or entities to occupy any portion of the Subleased Premises in the future, regardless of their affiliation with Subtenant or Prime Logix, without the express prior written consent of Sublandlord and otherwise in accordance with Section 14 of the Sublease.

3.      Insurance. Concurrently with the execution of this Amendment, and annually during the term of the Sublease, Subtenant shall provide Sublandlord with certificates of insurance from Subtenant and Prime Logix evidencing that Subtenant and Prime Logix are both maintaining all insurance policies required by Section 19 of the Sublease and Article 14 of the Master Lease, which policies shall name both Sublandlord and Master Lessor as an additional insured. For the avoidance of doubt, if Sublandlord consents to the occupancy of any portion of the Sublease Premises by any other entities or individuals, the foregoing shall be required from such other entities or individuals.

4.      Late Charges. If Sublandlord does not receive Rent or any other payment due from Subtenant within five (5) days after the date such payment is due, Subtenant shall pay to Sublandlord a late charge equal to eight percent (8%) of such past due Rent or other payment. Subtenant agrees that this late charge represents a fair and reasonable estimate the cost Sublandlord will incur by reason of Subtenant's late payment. Accepting any late charge shall not constitute a waiver by Sublandlord of Subtenant's default with respect to any overdue amount nor prevent Sublandlord from exercising any other rights or remedies available to Sublandlord.

5.      Administrative Costs. Within one (1) business day following the date of mutual execution of this Amendment, Subtenant shall make a one-time payment to Sublandlord in the amount of $5,000 to reimburse Sublandlord for a portion of Sublandlord's costs and expenses incurred in connection with this Amendment.

6.      Master Lease/Rules and Regulations.   Subtenant acknowledges and agrees that its obligation to comply with the terms of the Master Lease in accordance with the Sublease, including Section 15 of the Sublease, includes, but is not limited to, the requirement that Subtenant, Prime Logix and all of their employees, agents and invitees comply with the Rules and Regulations attached as Exhibit F to the Master Lease and the Parking Rules and Regulations attached as Exhibit G to the Master Lease, and that a violation of any such Rules and Regulations is the same as a violation of any other term of the Sublease. For the avoidance of doubt, and by way of example, smoking and vaping are expressly prohibited in the Facility (as defined in the Master Lease), and smoking and vaping are only permitted outside the Facility in special areas, if any, designated by Master Lessor. In addition to all other rights and remedies of Sublandlord for a violation of the Sublease, Subtenant shall pay to Sublandlord a fine of $250 within five (5) days following written notice from Sublandlord any time the Master Lessor has notified Sublandlord

that there has been a violation of the Rules and Regulations by the Subtenant, Prime Logix, or any of their employees, officers, or agents.

7. Miscellaneous.

(a) This Amendment sets forth the entire agreement between the parties with respect to the matters set forth herein. There have been no additional oral or written representations or agreements.

(b) Each signatory of this Amendment on behalf Subtenant and Prime Logix represents hereby that he or she has the authority to execute and deliver the same on behalf of the party hereto for which such signatory is acting.

(c) Each party hereto acknowledges that: (i) each party hereto is of equal bargaining strength; (ii) each such party has actively participated in the drafting, preparation and negotiation of this Amendment and the transactions contemplated herein; and (iii) any rule of construction to the effect that ambiguities are to be resolved against the drafting party shall not apply in the interpretation of this Amendment or any portion hereof.

(d) The parties agree that except as otherwise specifically modified in this Amendment, the Sublease has not been modified, supplemented, amended, or otherwise changed in any way and the Sublease remains in full force and effect between the parties hereto as modified by this Amendment. To the extent of any inconsistency between the terms and conditions of the Sublease and the terms and conditions of this Amendment, the terms and conditions of this Amendment shall apply and govern the parties.

(e) The parties agree that electronic signatures, including those delivered by PDF or signed through the electronic signature system known as "Adobe Sign" or "DocuSign", shall have the same effect as originals. All parties to this Amendment waive any and all rights to object to the enforceability of this Amendment based on the form or delivery of signature. This Amendment may be executed in counterparts, each of which shall be deemed an original, but all of which, together, shall constitute one and the same Amendment.

*[No further text on this page; signatures on following page]*

IN WITNESS WHEREOF, the parties have executed this Amendment as of the date set forth above.

SUBLANDLORD:            ALTERYX, INC., a Delaware corporation

                        By:
                           Name: Kevin Rubin
                           Title: CFO

SUBTENANT:              INNOVATIVE SOLUTIONS INC.,
                        a Wyoming corporation

                        By:
                           Name: Rosa Loli
                           Title: Chief Executive Officer


                        PRIME LOGIX LLC,
                        a Wyoming limited liability company

                        By:
                           Name:
                           Title:

GUARANTOR:

THE LITIGATION PRACTICE GROUP PC,
a California corporation


By:
Name:   Daniel S. March
Title:   Managing Shareholder

-4-

4871-8073-0431

IN WITNESS WHEREOF, the parties have executed this Amendment as of the date set forth above.

**SUBLANDLORD:**                          ALTERYX, INC., a Delaware corporation

By:_____
    Name:_____
    Title:_____

**SUBTENANT:**                            INNOVATIVE SOLUTIONS INC.,
                                          a Wyoming corporation

By:_____
    Name: Rosa Loli
    Title: Chief Executive Officer


PRIME LOGIX LLC,
a Wyoming limited liability company

By:_____
    Name: _ROSA BIANCA LOLI_
    Title: _CHIEF EXECUTIVE OFFICER_


**GUARANTOR:**

THE LITIGATION PRACTICE GROUP PC,
a California corporation

By: _____
Name:  Daniel S. March
Title:  Managing Shareholder

## Exhibit A

Officers' Certificate

### INNOVATIVE SOLUTIONS, INC.

#### OFFICERS' CERTIFICATE

October 30, 2022

This Officers' Certificate is made and delivered by Innovative Solutions Inc., a Wyoming corporation (the "*Company*"), to Alteryx, Inc., a Delaware corporation ("*Alteryx*") and sublessor to the Company, pursuant to the Sublease dated March 4, 2022 between the Company and Alteryx.

Each of the undersigned, Rosa Loli, in her capacity as the Chief Executive Officer of the Company, and Tony Diab, in his capacity as the Chief Financial Officer of the Company, does hereby certify to Alteryx on behalf of the Company as follows:

1. Each of the undersigned is the duly appointed, qualified and acting Chief Executive Officer or Chief Financial Officer, as applicable, of the Company.

2. The Company is the sole member of Prime Logix LLC, a Wyoming limited liability company ("*Prime Logix*"). The principal business of Prime Logix is to provide certain administrative support services to the Company and to the law firms it services, pursuant to one or more authorized, valid and binding operating agreements between the Company and Prime Logix.

3. Each of the Company and Prime Logix is in good standing in the jurisdiction of its formation.

IN WITNESS WHEREOF, the undersigned have executed and delivered this Officers' Certificate on behalf of the Company on and as of the date first written above.

INNOVATIVE SOLUTIONS INC.

By:
Name: Rosa Loli
Title: Chief Executive Officer

and

By:
Name: Tony Diab
Title: Chief Financial Officer

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
600 Anton Boulevard, Suite 1400, Costa Mesa, CA 92626-7689.

A true and correct copy of the foregoing document entitled (*specify*): **MOTION FOR ALLOWANCE OF ADMINISTRATIVE EXPENSE CLAIM UNDER 11 U.S.C. § 503(b); MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF CHRISTIAN BRYAN** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) December 6, 2023, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Eric Bensamochan    eric@eblawfirm.us, G63723@notify.cincompass.com**
- **Peter W Bowie    peter.bowie@dinsmore.com, caron.burke@dinsmore.com**
- **Ronald K Brown    ron@rkbrownlaw.com**
- **Christopher Celentino    christopher.celentino@dinsmore.com, caron.burke@dinsmore.com**
- **Shawn M Christianson    cmcintire@buchalter.com, schristianson@buchalter.com**
- **Randall Baldwin Clark    rbc@randallbclark.com**
- **Leslie A Cohen    leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com;clare@lesliecohenlaw.com**
- **Aaron E. DE Leest    adeleest@DanningGill.com, danninggill@gmail.com;adeleest@ecf.inforuptcy.com**
- **Jenny L Doling    jd@jdl.law, dolingjr92080@notify.bestcase.com;15994@notices.nextchapterbk.com;jdoling@jubileebk.net**
- **Daniel A Edelman    dedelman@edcombs.com, courtecl@edcombs.com**
- **William P Fennell    william.fennell@fennelllaw.com, luralene.schultz@fennelllaw.com;wpf@ecf.courtdrive.com;hala.hammi@fennelllaw.com;naomi.cwalinski @fennelllaw.com;samantha.larimer@fennelllaw.com**
- **Eric Gassman    erg@gassmanlawgroup.com, gassman.ericb112993@notify.bestcase.com**
- **Christopher Ghio    christopher.ghio@dinsmore.com, nicolette.murphy@dinsmore.com;angelica.urena@dinsmore.com;deamira.romo@dinsmore.com**
- **Amy Lynn Ginsburg    efilings@ginsburglawgroup.com**
- **Eric D Goldberg    eric.goldberg@dlapiper.com, eric-goldberg-1103@ecf.pacerpro.com**
- **Jeffrey I Golden    jgolden@go2.law, kadele@ecf.courtdrive.com;cbmeeker@gmail.com;lbracken@wgllp.com;dfitzgerald@go2.law;golden.jeffr eyi.b117954@notify.bestcase.com**
- **Richard H Golubow    rgolubow@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com**
- **David M Goodrich    dgoodrich@go2.law, kadele@go2.law;dfitzgerald@go2.law;wggllp@ecf.courtdrive.com**
- **D Edward Hays    ehays@marshackhays.com, ehays@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@e cf.courtdrive.com**
- **Alan Craig Hochheiser    ahochheiser@mauricewutscher.com, arodriguez@mauricewutscher.com**
- **Garrick A Hollander    ghollander@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com**
- **Brian L Holman    b.holman@musickpeeler.com**
- **Richard L. Hyde    richard@amintalati.com**
- **Razmig Izakelian    razmigizakelian@quinnemanuel.com**
- **Joon M Khang    joon@khanglaw.com**
- **Ira David Kharasch    ikharasch@pszjlaw.com**

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

- **Meredith King** mking@fsl.law, ssanchez@fsl.law;jwilson@fsl.law
- **Nicholas A Koffroth** nkoffroth@foxrothschild.com, khoang@foxrothschild.com
- **David S Kupetz** David.Kupetz@lockelord.com, mylene.ruiz@lockelord.com
- **Christopher J Langley** chris@slclawoffice.com,
  omar@slclawoffice.com;langleycr75251@notify.bestcase.com;ecf123@casedriver.com
- **Matthew A Lesnick** matt@lesnickprince.com, matt@ecf.inforuptcy.com;jmack@lesnickprince.com
- **Daniel A Lev** daniel.lev@gmlaw.com, cheryl.caldwell@gmlaw.com;dlev@ecf.courtdrive.com
- **Britteny Leyva** bleyva@mayerbrown.com,
  2396393420@filings.docketbird.com;KAWhite@mayerbrown.com;ladocket@mayerbrown.com
- **Michael D Lieberman** mlieberman@lipsonneilson.com
- **Yosina M Lissebeck** Yosina.Lissebeck@Dinsmore.com, caron.burke@dinsmore.com
- **Mitchell B Ludwig** mbl@kpclegal.com, kad@kpclegal.com
- **Daniel S March** marchlawoffice@gmail.com, marchdr94019@notify.bestcase.com
- **Kathleen P March** kmarch@bkylawfirm.com, kmarch3@sbcglobal.net,kmarch@sbcglobal.net
- **Mark J Markus** bklawr@bklaw.com,
  markjmarkus@gmail.com;markus.markj.r112926@notify.bestcase.com
- **Richard A Marshack (TR)** pkraus@marshackhays.com,
  rmarshack@iq7technology.com;ecf.alert+Marshack@titlexi.com
- **Laila Masud** lmasud@marshackhays.com, lmasud@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com
- **Kenneth Misken** Kenneth.M.Misken@usdoj.gov
- **Byron Z Moldo** bmoldo@ecjlaw.com, amatsuoka@ecjlaw.com,dperez@ecjlaw.com
- **Glenn D. Moses** gmoses@venable.com,
  cascavone@venable.com;ipmalcolm@venable.com;jadelgado@venable.com
- **Alan I Nahmias** anahmias@mbn.law, jdale@mbn.law
- **Victoria Newmark** vnewmark@pszjlaw.com
- **Queenie K Ng** queenie.k.ng@usdoj.gov
- **Keith C Owens** kowens@foxrothschild.com, khoang@foxrothschild.com
- **Lisa Patel** lpatel@lesnickprince.com, jmack@lesnickprince.com;jnavarro@lesnickprince.com
- **Michael R Pinkston** rpinkston@seyfarth.com,
  jmcdermott@seyfarth.com,sfocalendar@seyfarth.com,5314522420@filings.docketbird.com,bankruptcydocket@seyfarth.com
- **Douglas A Plazak** dplazak@rhlaw.com
- **Daniel H Reiss** dhr@lnbyg.com, dhr@ecf.inforuptcy.com
- **Ronald N Richards** ron@ronaldrichards.com, 7206828420@filings.docketbird.com
- **Kevin Alan Rogers** krogers@wellsmar.com
- **Gregory M Salvato** gsalvato@salvatoboufadel.com,
  calendar@salvatolawoffices.com;jboufadel@salvatoboufadel.com;gsalvato@ecf.inforuptcy.com
- **Olivia Scott** olivia.scott3@bclplaw.com
- **Jonathan Serrano** jonathan.serrano@dinsmore.com
- **Maureen J Shanahan** Mstotaro@aol.com
- **Paul R Shankman** PShankman@fortislaw.com, info@fortislaw.com
- **Zev Shechtman** zs@DanningGill.com, danninggill@gmail.com;zshechtman@ecf.inforuptcy.com
- **Leslie Skorheim** leslie.skorheim@usdoj.gov
- **Adam D Stein-Sapir** info@pfllc.com
- **Howard Steinberg** steinbergh@gtlaw.com, pearsallt@gtlaw.com;NEF-BK@gtlaw.com;howard-steinberg-6096@ecf.pacerpro.com
- **Andrew Still** astill@swlaw.com, kcollins@swlaw.com
- **Michael R Totaro** Ocbkatty@aol.com
- **United States Trustee (SA)** ustpregion16.sa.ecf@usdoj.gov
- **Sharon Z. Weiss** sharon.weiss@bclplaw.com,
  raul.morales@bclplaw.com,REC_KM_ECF_SMO@bclplaw.com
- **Johnny White** JWhite@wrslawyers.com, jlee@wrslawyers.com

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

4858-0482-8273

**F 9013-3.1.PROOF.SERVICE**

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) December 6, 2023, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**Debtor:**

The Litigation Practice Group P.C.
17542 17th St
Suite 100
Tustin, CA 92780

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) December 6, 2023, served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**Via FedEx:**

The Honorable Scott C. Clarkson
United States Bankruptcy Court, Central District
411 West Fourth Street, Suite 5130, Crtrm 5C
Santa Ana, CA 92701-4593

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| December 6, 2023 | Kimberly A. Collins | /s/ Kimberly A. Collins |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**