Christopher B. Ghio (State Bar No. 259094)
Christopher Celentino (State Bar No. 131688)
Yosina M. Lissebeck (State Bar No. 201654)
**DINSMORE & SHOHL LLP**
655 West Broadway, Suite 800
San Diego, CA 92101
Telephone: 619.400.0500
Facsimile: 619.400.0501
christopher.ghio@dinsmore.com
christopher.celentino@dinsmore.com
yosina.lissebeck@dinsmore.com

Sarah S. Mattingly (Ky. Bar 94257)
**DINSMORE & SHOHL LLP**
101 S. Fifth Street, Suite 2500
Louisville, KY 40202
Telephone: 859-425-1096
Facsimile: 502-585-2207
Sarah.mattingly@dinsmore.com
(Admitted pro hac vice)

Special Counsel to Richard A. Marshack,
Chapter 11 Trustee

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>THE LITIGATION PRACTICE GROUP P.C.,<br><br>     Debtor. | Case No. 8:23-bk-10571-SC<br><br>Chapter 11<br><br>Adv. Proc. No. _____<br><br>**COMPLAINT FOR:** |
| RICHARD A. MARSHACK, Chapter 11 Trustee,<br><br>                Plaintiff,<br><br>          v.<br><br>POINT BREAK HOLDINGS LLC,<br><br>                Defendant. | **(1) AVOIDANCE, RECOVERY, AND PRESERVATION OF 2-YEAR ACTUAL FRAUDULENT TRANSFERS;**<br><br>**(2) AVOIDANCE, RECOVERY, AND PRESERVATION OF 2-YEAR CONSTRUCTIVE FRAUDULENT TRANSFERS;**<br><br>**(3) AVOIDANCE, RECOVERY, AND PRESERVATION OF 4-YEAR ACTUAL FRAUDULENT TRANSFERS;**<br><br>**(4) AVOIDANCE, RECOVERY, AND PRESERVATION OF 4-YEAR** |

1

**CONSTRUCTIVE FRAUDULENT TRANSFERS;**

**(5) AVOIDANCE, RECOVERY AND PRESERVATION OF PREFERENTIAL TRANSFER MADE WITHIN NINETY DAYS OF THE PETITION DATE; AND**

**(6) TURNOVER**

Judge:    Hon. Scott C. Clarkson

For his *Complaint for (1) Avoidance, Recovery, and Preservation of 2-Year Actual Fraudulent Transfers; (2) Avoidance, Recovery, and Preservation of 2-Year Constructive Fraudulent Transfers; (3) Avoidance, Recovery, and Preservation of 4-Year Actual Fraudulent Transfers; (4) Avoidance, Recovery, and Preservation of 4-Year Constructive Fraudulent Transfers; (5) Avoidance, Recovery, and Preservation of Preferential Transfer; and (6) Turnover* ("Complaint"), plaintiff Richard A. Marshack, the Chapter 11 Trustee ("Trustee" or "Plaintiff") for the bankruptcy estate ("Estate") of debtor The Litigation Practice Group P.C. ("Debtor" or "LPG") in the above-captioned bankruptcy case ("Bankruptcy Case"), alleges and avers as follows:

## STATEMENT OF JURISDICTION, NATURE OF PROCEEDING, AND VENUE

1.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 157(b)(2)(A), (E), (H) and (O), 1334(b), and General Order No. 13-05 of the District Court for the Central District of California because this is a core proceeding arising in and/or related to the Bankruptcy Case, which is a case under Chapter 11 of Title 11 of the United States Code ("Bankruptcy Code"), and which is pending in the United States Bankruptcy Court for the Central District of California, Santa Ana Division ("Bankruptcy Court").

2.      Regardless of whether this proceeding is core, non-core, or otherwise, Plaintiff consents to the entry of a final order and judgment by the Bankruptcy Court.

3.      Defendant is notified that Rule 7008 of the Federal Rules of Bankruptcy Procedure requires Defendant to plead whether consent is given to the entry of a final order and judgment by the Bankruptcy Court.

4.      Venue of this adversary proceeding properly lies in this judicial district pursuant to 28 U.S.C. § 1409(a) because this proceeding is related to Debtor's pending Bankruptcy Case.

## THE PARTIES

5.      Plaintiff Richard A. Marshack, is the duly-appointed, qualified, and acting Chapter 11 Trustee of Debtor's Estate.

6.      Debtor is, and at all material times was, a professional corporation organized, existing, and in good standing under the laws of the State of California, with its principal place of business in Tustin, California.

7.      Defendant, Point Break Holdings LLC ("Defendant"), is, and at all material times represented that it was, a foreign limited liability company, existing under the laws of the State of Nevada.

8.      Defendant may be served by first class mail postage prepaid upon its registered agents Steven Pickett, Chris Duque, Jourdan Cerrillo, or Nicole Wheeler at 5716 Corsa Ave, Suite 110, Westlake Village, California.

## GENERAL ALLEGATIONS

**A.      The Bankruptcy Case**

9.      On March 20, 2023 ("Petition Date"), Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, commencing the Bankruptcy Case.

10.      The Office of the United States Trustee ("UST") filed its *Motion by United States Trustee to Dismiss or Convert Case Pursuant to 11 U.S.C. § 1112(b)* [Bankr. Docket No. 21] and creditors Debt Validation Fund II, LLC; MC DVI Fund 1, LLC; and MC DVI Fund 2, LLC filed the *Motion by DVF and MC DVI to Dismiss Chapter 11 Case Pursuant to 11 U.S.C. §§ 105, 305, 349, & 1112, or in the*

*Alternative Convert This Case to Chapter 7 or Appoint a Trustee* [Bankr. Docket No. 44]. On May 4, 2023, the Court entered its *Order Directing United States Trustee to Appoint Chapter 11 Trustee* [Bankr. Docket No. 58].

11.    Pursuant to the *Acceptance of Appointment as Chapter 11 Trustee* [Bankr. Docket No. 63], on May 8, 2023, Trustee accepted his appointment as the Chapter 11 Trustee in the Bankruptcy Case, and he continues to serve in this capacity at this time. The Court approved the Trustee's appointment in its *Order Approving the U.S. Trustee's Application for the Appointment of a Chapter 11 Trustee* [Docket No. 65].

12.    Trustee was not appointed until after events of the case and, therefore, bases these allegations on information and belief. *See Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017) ("The *Twombly* plausibility standard . . . does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible."); *Miller v. City of Los Angeles*, 2014 U.S. Dist. LEXIS 198871, 2014 WL 12610195, at *5 (C.D. Cal. Aug. 7, 2014) (recognizing that the plaintiff's "information and belief" pleading was allowed and "necessary at times"); *see also Mireskandari v. Daily Mail & General Trust PLC*, 2013 U.S. Dist. LEXIS 194437, 2013 WL 12129642, at *4 (C.D. Cal. July 31, 2013) ("The Federal Rules of Civil Procedure allow parties to plead facts on 'information and belief' if the facts 'will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.'" (citations omitted)).

13.    Plaintiff brings this action solely in his capacity as the Chapter 11 Trustee for the benefit of Debtor's Estate and its creditors.

   **B.    LPG**

14.    LPG operated a law firm for consumers across the country who sought assistance in contesting or resolving debts they would identify.

15.    The consumers would pay LPG over a period of time via monthly debits from their bank accounts.

16.    The monthly payments were meant to cover all legal services LPG provided to the consumers including validation of the debts, review of documents to determine enforceability, and court appearances to halt lawsuits to obtain judgments.

17.    In certain instances, LPG would file a lawsuit in an effort to eliminate a disputed debt or to prosecute affirmative claims held by the consumers.

18.    LPG mismanaged the consumers' monthly payments.

19.    To obtain consumer clients, LPG contracted with marketing companies, who engaged in illegal capping.

20.    The marketing companies would advertise to or call to solicit them to become clients of LPG.

21.    The marketing affiliate went so far as to assist with the execution of an engagement letter between the consumer and LPG.

22.    In exchange, LPG agreed to pay the marketing affiliates a percentage the monthly payments collected by LPG from the consumers.

23.    Because LPG received payments from consumers over time, it often sought financing by borrowing against its future cash flows. This borrowing was not only used to finance operations at LPG, but also to pay the fees owed to the marketing companies for providing the client referrals.

24.    Many of the documents executed in connection with such financing described the transactions as account receivable purchase agreements.

**C.    Defendant**

25.    Defendant was one of the marketing companies that procured clients for LPG.

26.    LPG agreed to pay, and in fact paid, Defendant a portion of the monthly payments received from consumers referred by Defendant.

/ / /

27.    Defendant also entered into agreements pursuant to which it purported to purchase accounts receivable from LPG. Pursuant to these agreements, Debtor purported to sell to Defendant a portion of its income stream.

i.    **Affiliate Agreement**

28.    Based upon the Trustee's review of the banking transactions between the Defendant and Debtor, Debtor entered into an affiliate agreement with Defendant ("Affiliate Agreement"). A true and accurate copy of a summary of the banking transaction history is attached hereto as **Exhibit 1** and incorporated herein ("Transaction History").

29.    Based upon the Trustee's review of the Transaction Summary, the Affiliate Agreement provides the Defendant owns and operates a system of generating leads consisting of consumers interested in the legal services offered by LPG.

30.    Pursuant to the Affiliate Agreement, Defendant generated leads consisting of consumers interested in the legal services offered by LPG and referred those consumers to Debtor.

31.    Defendant went so far as to assist with the execution of an engagement letter with the consumer.

32.    In exchange for the referrals, Debtor paid Defendant on a weekly basis. *See* Ex. 1.

33.    The Affiliate Agreement violates Sections 6151 and 6155 of the California Business and Professional Code, which prohibit referrals of potential clients to attorneys unless registered with the State Bar of California. CAL. BUS. & PROF. CODE § 6155. "Referral activity" includes "any entity 'which, in person, electronically, or otherwise, refers the consumer to an attorney or law firm not identified' in the advertising." *Jackson v. LegalMatch.com*, 42 Cal. App. 5th 760, 775 (2019). A referral includes receiving information from potential clients and sending that information to lawyers, even when the advertiser does not advertise the name of the attorneys and the clients do not clear the name of the potential attorney after the

referral occurred. *Id.*

34.    Further, if any effect of an agreement is to accomplish an unlawful purpose, the agreement may be declared illegal regardless of the intention of the parties. *Stockton Morris Plan Co. v. Cal. Tractor & Equip. Corp.*, 112 Cal. App. 2d 684, 690 (1952) (citing *Fewel & Dawes, Inc. v. Pratt*, 17 Cal. 2d 85, 91 (1941)). This remains true regardless of whether the contract has been performed. *Stevens v. Boyes Hot Springs Co.*, 113 Cal. App. 479, 483 (1931) (A contract by a corporation to purchase its own stock has the effect of illegally withdrawing and paying to a stockholder a part of the capital stock of the corporation and is illegal and void, regardless of the fact that the contract is fully performed by the sellers and partially performed by the corporation.); *Mansfield v. Hyde*, 112 Cal. App. 2d 133, 139 (1952), overruled, *Fomco, Inc. v. Joe Maggio, Inc.*, 8 Cal. Rptr. 459 (1960) (Where object of statute requiring licenses is to prevent improper persons from engaging in particular activity, or is for purpose of regulating occupation or business for protection of public, imposition of penalty amounts to prohibition against engaging in occupation or business without license, and contract made by unlicensed person in violation of statute is invalid.);  *Firpo v. Murphy*, 72 Cal. App. 249, 252 (1925) (A contract to pay commissions to a real estate broker is illegal and he is not entitled to recover thereon where he fails to secure the license required by law to carry on his business.).

35.    Because the Affiliate Agreement violates California law, it is void, unenforceable, and subject to avoidance as fraudulent. Any alleged consideration provided to Debtor under the ARPA Agreement was unlawful.

36.    Unlawful consideration is that which is: "(1) contrary to an express provision of law; (2) contrary to the policy of express law, though not expressly prohibited; or (3) otherwise contrary to good morals." CAL. CIV. CODE § 1667. "If any part of a single consideration for one or more objects, or of several considerations for a single object, is unlawful, the entire contract is void." CAL. CIV. CODE § 1608.

/ / /

### ii.    Account Receivable Purchase Agreements

37.    Based upon the Trustee's review of the Transaction History between the Defendant and Debtor, Debtor entered into at least one Account Receivable Purchase Agreement with Defendant ("ARPA Agreement" or "ARPA Agreements").

38.    Pursuant to the ARPA Agreements, Debtor purported to sell Defendant streams of monthly payments from consumers that were supposed to be held in trust until earned.

39.    By entering into the ARPA Agreements, Debtor and Defendant violated federal and state laws by selling unearned legal fees or funds there were supposed to be held in trust or used for the benefit of consumers.

40.    The effect of the ARPA Agreements was to accomplish an unlawful purpose, the agreement may be declared illegal regardless of the intention of the parties. *Stockton Morris Plan Co. v. Cal. Tractor & Equip. Corp.*, 112 Cal. App. 2d 684, 690 (1952) (citing *Fewel & Dawes, Inc. v. Pratt*, 17 Cal. 2d 85, 91 (1941)). This remains true regardless of whether the contract has been performed. *Stevens v. Boyes Hot Springs Co.*, 113 Cal. App. 479, 483 (1931) (A contract by a corporation to purchase its own stock has the effect of illegally withdrawing and paying to a stockholder a part of the capital stock of the corporation and is illegal and void, regardless of the fact that the contract is fully performed by the sellers and partially performed by the corporation.); *Mansfield v. Hyde*, 112 Cal. App. 2d 133, 139 (1952), overruled, *Fomco, Inc. v. Joe Maggio, Inc.*, 8 Cal. Rptr. 459 (1960) (Where object of statute requiring licenses is to prevent improper persons from engaging in particular activity, or is for purpose of regulating occupation or business for protection of public, imposition of penalty amounts to prohibition against engaging in occupation or business without license, and contract made by unlicensed person in violation of statute is invalid.);  *Firpo v. Murphy*, 72 Cal. App. 249, 252 (1925) (A contract to pay commissions to a real estate broker is illegal and he is not entitled to recover thereon where he fails to secure the license required by law to carry on his business.).

41.    Because the ARPA Agreements violate federal and state laws, it is void, unenforceable, and subject to avoidance as fraudulent. Any alleged consideration provided to Debtor under the ARPA Agreements was unlawful.

42.    Unlawful consideration is that which is: "(1) contrary to an express provision of law; (2) contrary to the policy of express law, though not expressly prohibited; or (3) otherwise contrary to good morals." CAL. CIV. CODE § 1667. "If any part of a single consideration for one or more objects, or of several considerations for a single object, is unlawful, the entire contract is void." CAL. CIV. CODE § 1608.

**D.    Preference Letter**

43.    On or about September 15, 2023, the Trustee sent a preference letter to Defendant (the "Preference Letter"). A true and accurate copy of the Preference Letter is attached hereto as **Exhibit 2** and incorporated here.

44.    The Preference Letter discussed certain transfers from Debtor that were made to Defendant within the 90-day period prior to the Petition Date. The transfers were listed on the attached "Preference Transfer Schedule" showing the date and amount, according to Debtor's books and records, of each transfer or other payment. The Trustee requested payment of the total amount due under the "Preference Transfer Schedule" that amounted to $556,925.14, in exchange for a waiver and release from all claims that could be asserted by the Trustee against Defendant pursuant to 11 U.S.C. §§ 547 and 550.

45.    The Trustee has yet to receive any payment from Defendant pursuant to the "Preference Transfer Schedule."

**E.    Payments to Defendant**

46.    During the applicable reach-back period, Debtor paid Defendant the sum of at least $3,557,704.32 between September 2021 to March 2023 ("Transfers"). *See* Transaction History.

**E.    LPG's Prepetition Creditors**

47.    Debtor was insolvent when each Pre-Petition Payment was made. This

1  insolvency is evidenced in part by the fact that 14 separate UCC-1 statements were of

2  record securing debts of the Debtor as of September 1, 2022. These statements

3  remained unreleased as of the Petition Date. These statements either reflected secured

4  liens against the Debtor's assets then owned or thereafter acquired, or provided

5  evidence of the assignment or sale of substantial portions of the Debtor's future

6  income.

7      48.    When the Transfers were made, these prior UCC-1 statements secured

8  the repayment of the following claimed amounts that are currently known to Trustee

9  and are allegedly owed by the Debtor: (i) $2,374,004.82 owed to Fundura Capital

10  Group as evidenced by Proof of Claim No. 335 purportedly secured by a UCC

11  statement filed on or about May 19, 2021; (ii) approximately $15 million dollars owed

12  to MNS Funding, LLC as evidenced by Proof of Claim No. 1060 purportedly secured

13  by a UCC statement filed on or about May 28, 2021; (iii) approximately $5,000,000

14  owed to Azzure Capital, LLC as evidenced by Proof of Claim No. 127 secured by a

15  UCC statement filed on or about May 28, 2021 (the order approving Trustee's

16  settlement of this claim to be deemed an allowed $3.5 million secured claim perfected

17  this May 28, 2021, financing statement has been appealed); and (iv) approximately

18  $1.5 million dollars owed to Diverse Capital, LLC purportedly secured by UCC

19  statements filed on or about September 15, 2021, and December 1, 2021.[1]

20      49.    As alleged above, LPG was borrowing against its assets and future

21  income, often on unfavorable terms, not only to finance operations at LPG, but also

22  to pay the fees owed to the marketing affiliates for providing it with consumer clients.

23  Pursuant to the agreements with the marketing companies, significant percentages of

24  future payments were already promised to be paid to the marketing affiliates from

25  whatever future income the Debtor would receive.

26      50.    In addition, on Debtor's Schedule E/F [Bankr. Docket No. 33], Debtor

27

28  [1] The Trustee reserves all rights, claims, and defenses with respect to these and any other purported secured or unsecured claims.

scheduled 11 unsecured creditors with priority unsecured claims totaling $374,060.04. These priority unsecured creditors include Indiana Dept. of Revenue, Dept. of Labor and Industries, Arizona Dept. of Economic Security, Arkansas Dept. of Finance & Admin., California Franchise Tax Board, Georgia Dept. of Labor, Internal Revenue Service, Mississippi Dept. of Revenue, Nevada Dept. of Taxation, Utah State Tax Commission, and Wisconsin Dept. of Revenue (collectively, "Priority Unsecured Creditors").

51.    Another group of creditors that Debtor listed on its Schedule E/F [Bankr. Docket No. 33] are nonpriority unsecured creditors. Those 58 creditors have scheduled claims totaling $141,439,158.05 and include Ajilon; Anthem Blue Cross; Azevedo Solutions Groups, Inc.; Carolina Technologies & Consulting Invoice; Collaboration Advisors; Credit Reporting Service Inc.; CT Corporation – Inv.; Debt Pay Pro; Document Fulfillment Services; EnergyCare, LLC; Exela Enterprise Solutions; First Legal Network, LLC; GHA Technologies Inc.; Harrington Electric, Inc.; Imagine Reporting; Juize, Inc.; Krisp Technologies, Inc.; Liberty Mutual; Marc Lemauviel – Allegra; MarkSYS Holdings, LLC; Netsuite-Oracle; Pitney Bowes; Rapid Credit, Inc.; SBS Leasing A Program of De Lage Landen; Security Solutions; Sharp Business Systems; Streamline Performance, Inc.; Thomson Reuters; Twilio, Inc.; Nationwide Appearance Attorneys; Executive Center, LLC; Outsource Accelerator, Ltd.; TaskUs Holdings, Inc.; Marich Bein, LLC; Validation Partners; MC DVI Fund 1, LLC; MC DVI Fund 2, LLC; Debt Validation Fund II, LLC; Tustin Executive Center; LexisNexus; JP Morgan Chase; Business Centers of America; Michael Schwartz; Anibal Colon Jr.; Kathleen Lacey; David Ulery; Kimberly Birdsong; Kevin Carpenter; Karen Suell; Gloria Eaton; Carolyn Beech; Debra Price; Kenneth Topp; Darcey Williamson, Trustee; James Hammett; Johnny Rizo; Beverly Graham; Kathleen Scarlett; and Geneve and Myranda Sheffield (collectively, "Nonpriority Unsecured Creditors" and, together with the Secured Creditors and Priority Unsecured Creditors, "Prepetition Creditors").

## **FIRST CLAIM FOR RELIEF**

### **Count I - Avoidance, Recovery, and Preservation of Actual Fraudulent Transfers**

### **[11 U.S.C. §§ 548(a)(1)(A), 550, and 551]**

52.     Plaintiff realleges and incorporates here by reference each and every allegation contained in paragraphs 1 through 51 as though set forth in full.

53.     The Affiliate Agreement, ARPA Agreement, and all or a portion of the Transfers occurred within the two years prior to the Petition Date.

54.     On or after the date that such agreements were executed and the Transfers were made, entities to which Debtor was or became indebted include the Prepetition Creditors.

55.     The Transfers happened while Debtor was insolvent or rendered Debtor insolvent.

56.     Despite Debtor's obligation to the Prepetition Creditors, Debtor continued to pay Defendant sums received from consumers under the Affiliate Agreement, which constitutes an illegal capping agreement between Defendant and Debtor. Any obligation of the Debtor arising from such agreement is also avoidable as fraudulent.

57.     Despite Debtor's obligation to the Prepetition Creditors, Debtor continued to sell or transfer portions of its accounts receivable to Defendant, which is illegal under federal and state laws.

58.     Because the referrals from Defendant to Debtor are illegal under federal and state law, they are void. Moreover, any purported consideration constitutes unlawful consideration, which cannot constitute reasonably equivalent value. Thus, at the time the agreements were executed and the Transfers made, Debtor received less than reasonably equivalent value.

59.     The Affiliate Agreement, ARPA Agreement, and the Transfers of Debtor's funds are avoidable as fraudulent pursuant to 11 U.S.C. §§ 548(a)(1)(A),

550, and 551 by one or more creditors who held and hold unsecured claims against Debtor that were and are allowable against his Estate under 11 U.S.C. § 502 or that were not and are not allowable under 11 U.S.C. § 502(e), including, without limitation, the Prepetition Creditors.

60.    The Affiliate Agreement, ARPA Agreement, and Transfers should be avoided as fraudulent under 11 U.S.C. § 548(a)(1)(A), and such transferred property, or the value thereof, should be recovered and preserved for the benefit of the Estate pursuant to 11 U.S.C. §§ 550 and 551.

## SECOND CLAIM FOR RELIEF

**Avoidance, Recovery, and Preservation of Constructive Fraudulent Transfers Against Defendant**

**[11 U.S.C. §§ 548(a)(1)(B), 550, and 551]**

61.    The Plaintiff realleges and incorporates here by reference each and every allegation contained in paragraphs 1 through 51 as though set forth in full.

62.    The Affiliate Agreement, ARPA Agreement, and all or a portion of the Transfers occurred within the two years prior to the Petition Date.

63.    On or after the date that such agreements were executed and such Transfers were made, entities to which Debtor was or became indebted include the Prepetition Creditors.

64.    The Transfers happened while Debtor:

    a.  was insolvent or became insolvent as a result;

    b.  was engaged or was about to engage in a transaction for which any property remaining with Debtor was of unreasonably small capital; or

    c.  intended to incur, or believed that it would incur, debts beyond its ability to pay as such debts matured.

65.    Because the referrals from Defendant to Debtor are illegal under federal and state law, they are void and subject to avoidance as fraudulent. Any purported

consideration constitutes unlawful consideration, which cannot constitute reasonably equivalent value. Thus, at the time the agreements were executed and the Transfers made, Debtor received less than reasonably equivalent value.

66.    Because the sale of the accounts receivable from Debtor to Defendant are illegal under federal and state law, they are void and subject to avoidance as fraudulent. Any purported consideration constitutes unlawful consideration, which cannot constitute reasonably equivalent value. Thus, at the time the agreements were executed and the Transfers made, Debtor received less than reasonably equivalent value.

67.    The Affiliate Agreement, ARPA Agreement, and the Transfers should be avoided as fraudulent under 11 U.S.C. § 548(a)(1)(B), and such transferred property, or the value thereof, should be recovered and preserved for the benefit of the Estate pursuant to 11 U.S.C. §§ 550 and 551.

### THIRD CLAIM FOR RELIEF

**Avoidance, Recovery, and Preservation of Actual Fraudulent Transfers**

**Against Defendant**

**[11 U.S.C. §§ 544(b), 550, and 551; CAL. CIV. CODE §§ 3439.04(a) and 3439.07]**

68.    Plaintiff realleges and incorporates here by reference each and every allegation contained in paragraphs 1 through 51 as though set forth in full.

69.    The Affiliate Agreement, ARPA Agreement, and all or a portion of the Transfers occurred within the four years prior to the Petition Date.

70.    On or after the date that such agreements were entered and such Transfers were made, entities to which Debtor was or became indebted include the Prepetition Creditors.

71.    Despite Debtor's obligation to the Prepetition Creditors, Debtor continued to pay Defendant sums received from consumers under the Affiliate Agreement, which constitutes an illegal capping agreement between Defendant and Debtor.

72.    Because the referrals from Defendant to Debtor are illegal under federal and state law, they are void and subject to avoidance as fraudulent. Any purported consideration constitutes unlawful consideration, which cannot constitute reasonably equivalent value. Thus, at the time the agreements were executed and the Transfers made, Debtor received less than reasonably equivalent value.

73.    Despite Debtor's obligation to the Prepetition Creditors, Debtor continued to sell its accounts receivable to Defendant, which is illegal under federal and state law. Because they are illegal under federal and state law, they are void and subject to avoidance as fraudulent. Any purported consideration constitutes unlawful consideration, which cannot constitute reasonably equivalent value. Thus, at the time the agreements were executed and the Transfers made, Debtor received less than reasonably equivalent value.

74.    The Affiliate Agreement, the ARPA Agreement, and the Transfers of Debtor's funds are avoidable as fraudulent pursuant to 11 U.S.C. § 544(b) and CAL. CIV. CODE §§ 3439.04(a) and 3439.07 by one or more creditors who held and hold unsecured claims against Debtor that were and are allowable against his Estate under 11 U.S.C. § 502 or that were not and are not allowable only under 11 U.S.C. § 502(e), including, without limitation, the Prepetition Creditors.

75.    Accordingly, the Affiliate Agreement, the ARPA Agreement, and the Transfers should be avoided as fraudulent under 11 U.S.C. §§ 544(b) and CAL. CIV. CODE §§ 3439.04(a) and 3439.07, and such transferred property, or the value thereof, should be recovered and preserved for the benefit of the Estate pursuant to 11 U.S.C. §§ 550 and 551 and CAL. CIV. CODE § 3439.07.

## FOURTH CLAIM FOR RELIEF

**Avoidance, Recovery, and Preservation of Constructive Fraudulent Transfers Against Defendant**

**[11 U.S.C. §§ 544(b), 550, and 551; CAL. CIV. CODE §§ 3439.05, and 3439.07]**

76.    Plaintiff realleges and incorporates here by reference each and every

allegation contained in paragraphs 1 through 51 as though set forth in full.

74.     The Affiliate Agreement, the ARPA Agreement, and all or a portion of the Transfers occurred within the four years prior to the Petition Date.

75.     The Transfers happened while Debtor:

    a.  was insolvent or became insolvent as a result;

    b.  was engaged or was about to engage in a transaction for which any property remaining with Debtor was of unreasonably small capital; or

    c.  intended to incur, or believed that it would incur, debts beyond its ability to pay as such debts matured.

76.     Because the referrals from Defendant to Debtor are illegal under federal and state law, the agreements are void and subject to avoidance as fraudulent. Any purported consideration constitutes unlawful consideration, which cannot constitute reasonably equivalent value. Thus, at the time the agreements were executed and the Transfers made, Debtor received less than reasonably equivalent value.

77.     Because the sale of the accounts receivable from Debtor to Defendant are illegal under federal and state law, they are void and subject to avoidance as fraudulent. Any purported consideration constitutes unlawful consideration, which cannot constitute reasonably equivalent value. Thus, at the time the agreements were executed and the Transfers made, Debtor received less than reasonably equivalent value.

78.     The Affiliate Agreement, the ARPA Agreement, and the Transfers of Debtor's funds are avoidable as fraudulent pursuant to 11 U.S.C. § 544(b) and CAL. CIV. CODE §§ 3439.05 and 3439.07 by one or more creditors who held and hold unsecured claims against Debtor that were and are allowable against his Estate under 11 U.S.C. § 502 or that were not and are not allowable only under 11 U.S.C. § 502(e), including, without limitation, the Prepetition Creditors.

79.     Accordingly, the Affiliate Agreement, the ARPA Agreement, and the

Transfers should be avoided as fraudulent under 11 U.S.C. §§ 544(b) and CAL. CIV. CODE §§ 3439.05 and 3439.07, and such transferred property, or the value thereof, should be recovered and preserved for the benefit of the Estate pursuant to 11 U.S.C. §§ 550 and 551 and CAL. CIV. CODE § 3439.07.

## FIFTH CLAIM FOR RELIEF

**Avoidance, Recovery, and Preservation of Preferential Transfer to Defendant in Preference Period**

**[11 U.S.C. §§ 547, 550, and 551]**

80.    Plaintiff realleges and incorporates here by reference each and every allegation contained in paragraphs 1 through 51 as though set forth in full.

81.    $556,925.14 of the Transfers from Debtor to Defendant occurred during the 90 day preference period ("Preference Transfers"). *See* **Exhibit 3**, incorporated here.

82.    The Preference Transfers were made for, or on account of, an antecedent debt or debts owed by the Debtor to Defendant, each of which constituted a "debt" or "claim" (as those terms are defined in the Bankruptcy Code) of Defendant.

83.    The Preference Transfers happened while LPG was insolvent.

84.    Debtor is also entitled to the presumption of insolvency when the Preference Transfers happened pursuant to 11 U.S.C. § 547(f).

85.    As a result of the Preference Transfers, Defendant recovered more than it would have received if: (i) the Debtor's case was under chapter 7 of the Bankruptcy Code; (ii) the Preference Transfers had not been made; and (iii) Defendant received payments of its debts under the provisions of the Bankruptcy Code. As evidenced by the Debtor's schedules filed in the underlying Bankruptcy Case, as well as the proofs of claim that have been received to date, the Debtor's liabilities exceed its assets to the point that unsecured creditors will not receive a full payout of their claims from the Debtor's Estate.

/ / /

86.    In accordance with the foregoing, the Preference Transfers are avoidable pursuant to 11 U.S.C. § 547(b), and may be recovered and preserved for the benefit of the estate pursuant to 11 U.S.C. §§ 550 and 551.

## SIXTH CLAIM FOR RELIEF

### Turnover of Estate Property Against Defendant

### [11 U.S.C. § 542]

87.    Plaintiff realleges and incorporates here by reference each and every allegation contained in paragraphs 1 through 51 as though set forth in full.

88.    Defendant has possession or control over property of the Estate in the form of the Transfers made pursuant to illegal and unenforceable agreements.

89.    The Transfers are not of inconsequential value to the Estate.

90.    The funds that are the subject of the Transfers are paramount to Debtor's ability to pay creditors.

91.    Accordingly, Trustee is entitled to a judgment for turnover of the Transfer pursuant to 11 U.S.C. § 542.

## RESERVATION OF RIGHTS

92.    Plaintiff reserves the right to bring all other claims or causes of action that Plaintiff may have against Defendant, on any and all grounds, as allowed under the law or in equity, including but not limited to, those claims not known by the Trustee at this time but that he may discover during the pendency of this adversary proceeding.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for a judgment as follows:

### On The First, Second, Third, and Fourth Claims for Relief:

1.    Avoiding, recovering, and preserving the Preference Transfers against Defendant;

/ / /

/ / /

**On the Fifth Claim for Relief:**

2.    Avoiding, recovering, and preserving the Transfers against Defendant;

**On the Sixth Claim for Relief:**

3.    Ordering Defendant to immediately turn over the Transfers and/or Preference Transfers;

**On All Claims for Relief:**

4.    Awarding costs of suit incurred here; and

5.    Granting any other and further relief as the Court deems just and proper.

Dated: January 10, 2024

Respectfully submitted,

DINSMORE & SHOHL LLP

By: /s/ Sarah S. Mattingly
    Christopher B. Ghio
    Christopher Celention
    Yosina M. Lissebeck
    Sarah S. Mattingly (*pro hac vice*)
    *Special Counsel to Richard A. Marshack, Chapter 11 Trustee*

**EXHIBIT "1"**

EXHIBIT 1
Page 20

In re: The Litigation Practice Group PC
Disbursement Details by Payee
4 Years Pre-Petition (03/20/2019 - 03/20/2023)

Point Break Holdings LLC



| Bank Name | Account Name | Account Number | Statement Date | Transaction Date | Check Number | Debit/Charge | Memo |
|---|---|---|---|---|---|---|---|
| Wells Fargo | Maverick Management Group LLC | | 3/31/2023 | 3/17/2023 | | 182,072.09 | WTFed#08341 morgan Chase Ban /Ftr/BnfPoint Break Holdings Sf# 0000960076298625 Trn#23031 7179419 Rlb# |
| Bank of America | Prime Logix LLC | | 3/31/2023 | 3/1/2023 | | 100,000.00 | WIRE TYPE:WIRE OUT DATE:230301 TIME:1 51 7 ET TRN:20230301 00498978 SERVICE REF:501 283 BNF:POINT BREAK HOLDINGS LLC ID:623093322 BNF BK:J PMORGAN CHASE BANK, N. ID:0002 PMT DET:427978018 |
| Chase | The Litigation Practice Group PC | | 1/31/2023 | 1/27/2023 | | 127,611.65 | Book Transfer Debit NC: Point Break Holdings LLC Carlsbad CA 92008-7332 US Ret File Purchase Ire 7349000027Jo |
| Chase | The Litigation Practice Group PC | | 12/31/2022 | 12/30/2022 | | 40,457.10 | Book Transfer Debit NC: Point Break Holdings LLC Carlsbad CA 92008-7332 US Ret: Weekly Disbursement Tm: 5801 200363Jo |
| Chase | The Litigation Practice Group PC | | 12/31/2022 | 12/21/2022 | | 106,784.30 | Book Transfer Debit NC: Point Break Holdings LLC Carlsbad CA 92008-7332 US Ret: Weekly Disbursement Tm: 5987500355Jo |
| Chase | The Litigation Practice Group PC | | 12/31/2022 | 12/9/2022 | | 100,986.61 | Book Transfer Debit NC: Point Break Holdings LLC Carlsbad CA 92008-7332 US Ret Attiliafe Distribution Tm: 3959400343Jo |
| Chase | The Litigation Practice Group PC | | 12/31/2022 | 12/5/2022 | | 189.17 | Book Transfer Debit NC: Point Break Holdings LLC Csrlsbsd CA 92008-7332 US Ret: Weekly Disbursement Tm: 5570700339Jo |
| Chase | The Litigation Practice Group PC | | 12/31/2022 | 12/2/2022 | | 172,229.31 | Book Transfer Debit NC: Point Break Holdings LLC Carlebad CA 92008-7332 US Ret: Weekly Disbursement Tm: 5490200336Jo |
| Chase | The Litigation Practice Group PC | | 11/30/2022 | 11/25/2022 | | 87,140.49 | Book Transfer Debit NC: Point Break Holdings LLC Carlsbad CA 92008-7332 US Ret: Weekly Diebureement Tm: 4240B00329Jo |
| Chase | The Litigation Practice Group PC | | 11/30/2022 | 11/17/2022 | | 103,638.90 | Book Traneter Debit NC: Point Break Holdings LLC Carlsbad CA 92008-7332 US Ret: Weekly Disbursement Tm: 7889700321Jo |
| Chase | The Litigation Practice Group PC | | 11/30/2022 | 11/15/2022 | | 70,676.20 | Book Transfer Debit NC: Point Break Holdings LLC Carlsbad CA 92008-7332 US Ret: Weekly Disbursement Tm: 511920031 9Jo |
| Chase | The Litigation Practice Group PC | | 11/30/2022 | 11/8/2022 | | 90,577.69 | Book Transfer Debit NC: Point Break Holdings LLC Carlsbad CA 92008-7332 US Ret: Weekly Disbursement Tm: 429820031 2Jo |
| Chase | The Litigation Practice Group PC | | 11/30/2022 | 11/2/2022 | | 103,838.49 | Bock Transfer Debit NC: Point Break Holdings LLC Carlsbad CA 92008-7332 US Rat: Weakly Disbursement Tm: 6763200306Jo |
| Chase | The Litigation Practice Group PC | | 10/31/2022 | 10/28/2022 | | 12,927.01 | Book Transfer Debit NC: Point Break Holdings LLC Carlsbad CA 92008-7332 US Ref: Weekly Disbursement Tm: 739670030iJo |
| Chase | The Litigation Practice Group PC | | 10/31/2022 | 10/28/2022 | | 12,020.00 | Book Transfer Debit NC: Point Break Holdings LLC Carlsbad CA 92008-7332 US Ref: Credit Report 10.7.22 Tm: 7i68800301Jo |
| Chase | The Litigation Practice Group PC | | 10/31/2022 | 10/26/2022 | | 70,025.17 | Book Transfer Debit NC: Point Break Holdings LLC Carlsbad CA 92008-7332 US Ref: Weekly Disbursement Tm: 4263500299Jo |
| Chase | The Litigation Practice Group PC | | 10/31/2022 | 10/14/2022 | | 123,746.06 | Book Transfer Debit A/C: Point Break Holdings LLC Carlsbad CA 92008-7332 us Ref: Weekly Disbursement Tm: 9i82500287Jo |
| Chase | The Litigation Practice Group PC | | 10/31/2022 | 10/6/2022 | | 73,372.64 | Book Transfer Debit A/C: Point Break Holdings LLC Carlsbad CA 92008-7332 US Ret: Weekly Disbursement Tm: 4304i00279Jo |
| Chase | The Litigation Practice Group PC | | 9/30/2022 | 9/30/2022 | | 131,312.75 | Book Transfer Debit A/C: Point Break Holdings LLC Carlsbad CA 92008-7332 US Ref: Weekly Disbursement Tm: 8675100273Jo |
| Chase | The Litigation Practice Group PC | | 9/30/2022 | 9/26/2022 | | 11,812.10 | Book Transfer Debit A/C: Point Break Holdings LLC Carlsbad CA 92008-7332 US Ref: Invoice - August Credit Reports Tm: 5261700269Jo |
| Chase | The Litigation Practice Group PC | | 9/30/2022 | 9/23/2022 | | 58,967.44 | Book Transfer Debit A/C: Point Break Holdings LLC Carlsbad CA 92008-7332 US Ref: Weekly Disbursement Tm: 3i03900266Jo |
| Chase | The Litigation Practice Group PC | | 9/30/2022 | 9/16/2022 | | 90,952.87 | Book Transfer Debit NC: Point Break Holdings LLC San Diego CA 92121-2747 us Ref: Weekly Disbursement Tm: 6662000259Jo |
| Chase | The Litigation Practice Group PC | | 9/30/2022 | 9/9/2022 | | 68,868.96 | Book Transfer Debit A/C: Point Break Holdings LLC San Diego CA 92121-2747 us Ref: Weekly Disbursement Tm: 3436400252Jo |
| Chase | The Litigation Practice Group PC | | 9/30/2022 | 9/2/2022 | | 73,710.84 | Book Transfer Debit A/C: Point Break Holdings LLC San Diego CA 92121-2747 us Ref: Weekly Disbursement Tm: 6653500245Jo |
| Chase | The Litigation Practice Group PC | | 8/31/2022 | 8/26/2022 | | 93,619.26 | Book Transfer Debit A/C: Point Break Holdings LLC San Diego CA 92121-2747 US Ref: Weekly Disbursement Tm: 4484700238Jo |
| Chase | The Litigation Practice Group PC | | 8/31/2022 | 8/24/2022 | | 11,051.00 | Book Transfer Debit A/C: Point Break Holdings LLC San Diego CA 92121-2747 US Ref: nv 8.5.22 Tm: 4076000236Jo |
| Chase | The Litigation Practice Group PC | | 8/31/2022 | 8/24/2022 | | 64,485.92 | Book Transfer Debit A/C: Point Break Holdings LLC San Diego CA 92121-2747 US Ref: Email On 8.24.22 Tm: 6309000236Jo |

DRAFT FORM - SUBJECT TO CHANGE

EXHIBIT 1
Page 21

In re: The Litigation Practice Group PC
Disbursement Details by Payee
4 Years Pre-Petition (03/20/2019 - 03/20/2023)

Point Break Holdings LLC



| Bank Name | Account Name | Account Number | Statement Date | Transaction Date | Check Number | Debit/Charge | Memo |
|---|---|---|---|---|---|---|---|
| Chase | The Litigation Practice Group PC | | 7/31/2022 | 7/28/2022 | | 8,896.70 | Book Transfer Debit A/C: Point Break Holdings LLC San Diego CA 92121-2747 US Ref: June Credit Reports Tm: 4632700209Jo |
| Chase | The Litigation Practice Group PC | | 7/31/2022 | 7/14/2022 | | 82,342.99 | Book Transfer Debit A/C: Point Break Holdings LLC San Diego CA 92121-2747 US Ref: Weekly Disbursement Tm: 51079001 95Jo |
| Chase | The Litigation Practice Group PC | | 7/31/2022 | 7/8/2022 | | 8,896.70 | Book Transfer Debit A/C: Point Break Holdings LLC San Diego CA 92121-2747 US Ref: 65734001 89Jo |
| Chase | The Litigation Practice Group PC | | 7/31/2022 | 7/8/2022 | | 87,705.52 | Book Transfer Debit A/C: Point Break Holdings LLC San Diego CA 92121-2747 us Ref: 6082400189Jo |
| Chase | The Litigation Practice Group PC | | 7/31/2022 | 7/8/2022 | | 46,782.58 | Book Transfer Debit A/C: Point Break Holdings LLC San Diego CA 92121-2747 us Ref: Weekly Disbursement Tm: 4037200i89Jo |
| Chase | The Litigation Practice Group PC | | 6/30/2022 | 6/30/2022 | | 75,905.48 | Book Transfer Debit NC: Point Break Holdings LLC 5an Diego CA 92121-2747 us Ref: Weekly Disbursement Tm: 5591 70018iJo |
| Chase | The Litigation Practice Group PC | | 6/30/2022 | 6/29/2022 | | 87,705.52 | Book Transfer Debit A/C: Point Break Holdings LLC San Diego CA 92121-2747 us Ref: 50% Payment Tm: 8095200180Ju |
| Chase | The Litigation Practice Group PC | | 6/30/2022 | 6/23/2022 | | 46,411.57 | Book Transfer Debit A/C: Point Break Holdings LLC San Diego CA 92121-2747 US Ref: Weekly Disbursement Tm: 651 1200174Jo |
| Chase | The Litigation Practice Group PC | | 6/30/2022 | 6/16/2022 | | 57,617.46 | Book Transfer Debit A/C: Point Break Holdings LLC San Diego CA 92121-2747 US Ref: Weekly Disbursement Tm: 3748400i67Jo |
| Chase | The Litigation Practice Group PC | | 6/30/2022 | 6/10/2022 | | 54,557.52 | Book Transfer Debit NC: Point Break Holdings LLC 5an Diego CA 92i21-2747 us Ref: Weekly Disbursement Tm: 5i46400i6iJo |
| Chase | The Litigation Practice Group PC | | 6/30/2022 | 6/3/2022 | | 43,384.96 | Book Transfer Debit A/C: Point Break Holdings LLC San Diego CA 92121 -2747 us Ref: Weekly Disbursement Tm: 6205200154Jo |
| Chase | The Litigation Practice Group PC | | 5/31/2022 | 5/27/2022 | | 58,928.10 | Book Transfer Debit A/C: Point Break Holdings LLC San Diego CA 92121-2747 US Ref: Weekly Disbursement Tm: 7i6i800i47Jo |
| Chase | The Litigation Practice Group PC | | 5/31/2022 | 5/20/2022 | | 8,036.70 | Book Transfer Debit A/C: Point Break Holdings LLC 5an Diego CA 92121-2747 US Ref: Credit Pulls - April 2022 Tm: 4336400140Jo |
| Chase | The Litigation Practice Group PC | | 5/31/2022 | 5/18/2022 | | 37,534.59 | Book Transfer Debit A/C: Point Break Holdings LLC San Diego CA 92121-2747 US Ref: Weekly Disbursement Tm: 5591 000138Jo |
| Chase | The Litigation Practice Group PC | | 5/31/2022 | 5/13/2022 | | 47,239.27 | Book Transfer Debit A/C: Point Break Holdings LLC San Diego CA 92121-2747 US Ref: Weekly Disbursement Tm: 8050500132Jo |
| Chase | The Litigation Practice Group PC | | 5/31/2022 | 5/6/2022 | | 1,860.00 | Book Transfer Debit A/C: Point Break Holdings LLC San Diego CA 92121-2747 US Ref: Weekly Disbursement Tm: 3037500126Jo |
| Chase | The Litigation Practice Group PC | | 5/31/2022 | 5/5/2022 | | 27,514.39 | Book Transfer Debit A/C: Point Break Holdings LLC San Diego CA 92121-2747 US Ref: Weekly Disbursement Tm: 7i2i300125Jo |
| Chase | The Litigation Practice Group PC | | 4/30/2022 | 4/28/2022 | | 41,975.20 | Book Transfer Debit A/C: Point Break Holdings LLC San Diego CA 92121-2747 US Ref: Weekly Disbursement Tm: 59285001 l8Jo |
| Chase | The Litigation Practice Group PC | | 4/30/2022 | 4/22/2022 | | 6,088.50 | Book Transfer Debit A/C: Point Break Holdings LLC San Diego CA 92121-2747 US Ref: Weekly Disbursement Tm: 40299001 i2Jo |
| Chase | The Litigation Practice Group PC | | 4/30/2022 | 4/21/2022 | | 23,540.99 | Book Transfer Debit A/C: Point Break Holdings LLC San Diego CA 92121-2747 US Ref: Weekly Disbursement Tm: 487950011 1J0 |
| Chase | The Litigation Practice Group PC | | 4/30/2022 | 4/18/2022 | | 42,272.15 | Book Transfer Debit A/C: Point Break Holdings LLC San Diego CA 92121-2747 US Ref: Weekly Disbursement Tm: 6569900i08Jo |
| Chase | The Litigation Practice Group PC | | 4/30/2022 | 4/12/2022 | | 7,989.40 | Book Transfer Debit A/C: Point Break Holdings LLC San Diego CA 92121-2747 US Ref: Credit Reports March 2022 Tm: 4437000102Ju |
| Chase | The Litigation Practice Group PC | | 4/30/2022 | 4/7/2022 | | 30,216.12 | Book Transfer Debit NC: Point Break Holdings LLC San Diego CA 92121-2747 us Ref: Weekly Disbursement Tm: 5691 300097Jo |
| Chase | The Litigation Practice Group PC | | 4/30/2022 | 4/1/2022 | | 29,404.20 | Book Transfer Debit A/C: Point Break Holdings LLC San Diego CA 92121-2747 US Ref: Weekly Disbursement Tm: 5024200091 Jo |
| Chase | The Litigation Practice Group PC | | 3/31/2022 | 3/24/2022 | | 38,168.72 | Book Transfer Debit A/C: Point Break Holdings LLC San Diego CA 92121-2747 US Ref: Weekly Disbursement Tm: 5970600083Jo |
| Chase | The Litigation Practice Group PC | | 3/31/2022 | 3/17/2022 | | 26,119.05 | Book Transfer Debit A/C: Point Break Holdings LLC San Diego CA 92121-2747 US Ref: Weekly Disbursement Tm: 8326300076Ju |
| Chase | The Litigation Practice Group PC | | 3/31/2022 | 3/10/2022 | | 33,840.62 | Book Transfer Debit A/C: Point Break Holdings LLC San Diego CA 92121-2747 US Ref: Weekly Disbursement Tm: 741 8900069Jo |
| Chase | The Litigation Practice Group PC | | 3/31/2022 | 3/4/2022 | | 27,059.81 | Book Transfer Debit NC: Point Break Holdings LLC San Diego CA 92121-2747 US Ref: Weekly Disbursement Tm: 5365600063Jo |
| Chase | The Litigation Practice Group PC | | 2/28/2022 | 2/25/2022 | | 30,140.55 | Book Transfer Debit A/C: Point Break Holdings LLC San Diego CA 92121-2747 US Ref: Weekly Disbursement Tm: 6367000056Jo |

DRAFT FORM - SUBJECT TO CHANGE

EXHIBIT 1
Page 22

In re: The Litigation Practice Group PC
Disbursement Details by Payee
4 Years Pre-Petition (03/20/2019 - 03/20/2023)

Point Break Holdings LLC



| Bank Name | Account Name | Account Number | Statement Date | Transaction Date | Check Number | Debit/Charge | Memo |
|---|---|---|---|---|---|---|---|
| Chase | The Litigation Practice Group PC | | 2/28/2022 | 2/18/2022 | | 18,983.40 | Book Transfer Debit NC: Point Break Holdings LLC San Diego CA 92121-2747 us Ref: Weekly Disbursement Tm: 5188300049Jo |
| Chase | The Litigation Practice Group PC | | 2/28/2022 | 2/11/2022 | | 7,787.30 | Book Transfer Debit A/C: Point Break Holdings LLC San Diego CA 92121-2747 US Ref: Credit Reports Jan 2022 Tm: 6420600042Jo |
| UnionBank | The Litigation Practice Group PC | | 2/28/2022 | 2/10/2022 | | 25,346.82 | WIRE TRANS TRN 0210017071 021022 UBOC UB109503N Sent To: JPMORGAN CHASE BANK, NA Beneficiary: 1/Point Break Holdings LLC |
| UnionBank | The Litigation Practice Group PC | | 2/28/2022 | 2/4/2022 | | 20,234.99 | WIRE TRANS TRN 0204022677 020422 UBOC UB131175N Sent To: JPMORGAN CHASE BANK, NA Beneficiary: 1/Point Break Holdings LLC |
| Chase | The Litigation Practice Group PC | | 2/28/2022 | 2/1/2022 | | 6,480.10 | Book Transfer Debit A/C: Point Break Holdings LLC San Diego CA 92121-2747 US Ref: 1507 - Credit Pulls For Dec Tm: 8220700031 Jo |
| UnionBank | The Litigation Practice Group PC | | 1/31/2022 | 1/28/2022 | | 24,736.26 | WIRE TRANS TRN 0128019462 012822 UBOC UB169956N Sent To: JPMORGAN CHASE BANK, NA Beneficiary: 1/Point Break Holdings LLC |
| UnionBank | The Litigation Practice Group PC | | 1/31/2022 | 1/20/2022 | | 10,948.59 | WIRE TRANS TRN 0120019238 012022 UBOC UB216855N Sent To: JPMORGAN CHASE BANK, NA Beneficiary: 1/Point Break Holdings LLC |
| UnionBank | The Litigation Practice Group PC | | 1/31/2022 | 1/13/2022 | | 18,696.08 | WIRE TRANS TRN 0113021481 011322 UBOC UB246525N Sent To: JPMORGAN CHASE BANK, NA Beneficiary: 1/Point Break Holdings LLC |
| Chase | The Litigation Practice Group PC | | 1/31/2022 | 1/10/2022 | | 11,434.19 | Book Transfer Debit NC: Point Break Holdings LLC San Diego CA 92121-2747 us Ref: Weekly Disbursement Tm: 5143000010Jo |
| UnionBank | The Litigation Practice Group PC | | 12/31/2021 | 12/31/2021 | | 19,105.29 | WIRE TRANS TRN 1231023079 123121 UBOC UB305835N Sent To: JPMORGAN CHASE BANK, NA Beneficiary: 1/Point Break Holdings LLC |
| UnionBank | The Litigation Practice Group PC | | 12/31/2021 | 12/30/2021 | | 7,103.60 | WIRE TRANS TRN 1230017055 123021 UBOC UB315714N Sent To: JPMORGAN CHASE BANK, NA Beneficiary: 1/Point Break Holdings LLC |
| UnionBank | The Litigation Practice Group PC | | 12/31/2021 | 12/23/2021 | | 11,002.91 | WIRE TRANS TRN 1223024583 122321 UBOC UB341253N Sent To: JPMORGAN CHASE BANK, NA Beneficiary: 1/Point Break Holdings LLC |
| Chase | The Litigation Practice Group PC | | 12/31/2021 | 12/20/2021 | | 5,942.60 | Book Transfer Debit NC: Point Break Holdings LLC San Diego CA 92121-2747 us Ref: Credit Pulls Reimbursement Tm: 5865500354Jo |
| UnionBank | The Litigation Practice Group PC | | 12/31/2021 | 12/17/2021 | | 12,529.19 | WIRE TRANS TRN 1217017541 121721 UBOC UB382911N Sent To: JPMORGAN CHASE BANK, NA Beneficiary: 1/Point Break Holdings LLC |
| UnionBank | The Litigation Practice Group PC | | 12/31/2021 | 12/9/2021 | | 13,752.65 | WIRE TRANS TAN 1209021670 120921 UBOC UB426447N Sent To: JPMORGAN CHASE BANK, NA Beneficiary: 1/Point Break Holdings LLC |
| Optimum Bank | Coast Processing LLC dba LPG | | 12/31/2021 | 12/2/2021 | | 9,211.51 | WIRE TO P011 Break Holdings LLC |
| Optimum Bank | Coast Processing LLC dba LPG | | 11/30/2021 | 11/26/2021 | | 8,214.35 | WIRE TO Point Break Holdings LLC |
| Optimum Bank | Coast Processing LLC dba LPG | | 11/30/2021 | 11/18/2021 | | 5,300.41 | WIRE TO Point Break Holdings LLC |
| Optimum Bank | Coast Processing LLC dba LPG | | 11/30/2021 | 11/12/2021 | | 9,380.27 | WIRE TO Point Break Holdings LLC |
| Optimum Bank | Coast Processing LLC dba LPG | | 11/30/2021 | 11/5/2021 | | 3,929.36 | WIRE TO Point Break Holdings LLC |
| Optimum Bank | Coast Processing LLC dba LPG | | 10/29/2021 | 10/21/2021 | | 3,135.27 | WIRE TO Point Break Holdings LLC |
| Optimum Bank | Coast Processing LLC dba LPG | | 10/29/2021 | 10/14/2021 | | 2,470.32 | WIRE TO Point Break Holdings LLC |
| Optimum Bank | Coast Processing LLC dba LPG | | 10/29/2021 | 10/7/2021 | | 256.52 | WIRE TO Point Break Holdings LLC |
| Optimum Bank | Coast Processing LLC dba LPG | | 9/30/2021 | 9/30/2021 | | 512.42 | WIRE TO Point Break Holdings LLC |
| | | | | | | **3,557,704.32** | |

DRAFT FORM - SUBJECT TO CHANGE

EXHIBIT 1
Page 23

**EXHIBIT "2"**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EXHIBIT 2
Page 24



*Legal Counsel.*



DINSMORE & SHOHL LLP
100 West Main Street, Suite 900
Lexington, Kentucky 40507
www.dinsmore.com

Tyler Powell
(859) 425-1046 (direct) ^ (859) 425-1099 (fax)
Tyler.powell@dinsmore.com

September 15, 2023

**CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FEDERAL RULE OF EVIDENCE 408**

Point Break Holdings, LLC
thom@pointbreakholdings.com
dave@pointbreakholdings.com

     Re:     In re: The Litigation Practice Group, P.C.
            U.S. Bankruptcy Court, Central District of California, Case No. 8:23-bk-10571

Dear Sir/Madam:

     This firm represents Richard A. Marshack, solely in his capacity as Chapter 11 Trustee ("Trustee") for the bankruptcy estate of The Litigation Practice Group, P.C. ("Debtor") in the above-referenced bankruptcy case. Pursuant to 11 U.S.C. § 1107 and his appointment as Trustee, the Trustee has the obligation to investigate and pursue claims, including avoidance actions.

     After a review of the Debtor's books and records, the Trustee believes that he may have claims against you to avoid and recover certain payments. This letter is written in an attempt to settle such claims, and its contents may not be used for any other purpose.

     Section 547 of the Bankruptcy Code permits a trustee or debtor-in-possession to avoid certain payments made to creditors within the 90-day period preceding the filing of a bankruptcy case. We have completed our preliminary investigation and have identified certain transfers from the Debtor(s) to you within the 90-day period prior to March 20, 2023, the date upon which the Debtor filed its bankruptcy case. These transfers are listed on the attached "Preference Transfer Schedule" showing the date and amount, according to the Debtor's books and records, of each transfer or other payment. The payments referenced on the "Preference Transfer Schedule" total $556,925.14. It appears that these transfers are preferential transfers which can be avoided by the Trustee and recovered from you pursuant to 11 U.S.C. §§ 547(b) and 550(a). This means that the Trustee can file suit in the bankruptcy court to recover these sums and object to payment of any claims you have against the Debtor until the suit is resolved.

     Additionally, if you have filed a proof of claim against the Debtor, that claim may be disallowed pursuant to Section 502(d) of the Bankruptcy Code for failure to return an avoidable transfer. This means that if the preference claims against you are not resolved, then you may not

EXHIBIT 2
Page 25

receive a distribution from the Debtor's bankruptcy estate. The Trustee reserves the right to object to any proof of claim that you have filed or may file in the debtors' bankruptcy cases.

███████████████████████████████████████████████████████████

If the payment proposal above is acceptable, please sign the original of this letter where indicated and return it with the appropriate payment no later than September 27, 2023. Please make payment to the order of Richard A. Marshack, Chapter 11 Trustee. All funds sent will be held in the Trustee's account for this case pending further orders of the Bankruptcy Court.

In the alternative, if you believe a valid defense to recovery exists for some or all of the transfers from the Debtor, please bring such defenses to our attention and we will assess any evidence you provide in support of a defense. We have made efforts to analyze your reasonably known affirmative defenses to the avoidance of the preference payments. Based on our currently available information and given the nature of your relationship with the Debtor, we do not believe there are any potential defenses to reduce your liability for the preference payments. There may be information or facts that we do not have to assess your potential defenses. If you intend to assert a defense, please provide all documents evidencing any alleged defenses under 11 U.S.C. § 547(c), including, but not limited to, contracts, invoices and any other documentation showing the date, terms and amounts for the transfers received and any documents evidencing shipment dates as to goods and services provided by you to the Debtors. To properly assert a defense, such information must show the date of receipt of the Debtors' payment and the amount, deposit date, and any proof of deposit for any or all of the transfers. In addition, if you assert an ordinary course of business defense, please provide the previous information for the one year period immediately preceding March of 2023, or for the period that you actually did business with the Debtor, if less than one year. Please make arrangements to provide any evidence in support of a defense to us as soon as possible.

If we have not received any reply to this letter by September 28, 2023, we will proceed to pursue recovery of the preferential transfers by filing suit against you in the bankruptcy court. The Trustee also reserves all rights to bring additional claims against you as the investigation into your relationship with the Debtor continues and/or after discovery begins once a suit is filed.

Of course, we would be happy to discuss this matter with you or your counsel.

Very truly yours,

DINSMORE & SHOHL LLP

Tyler Powell, Partner of Counsel

2

EXHIBIT 2
Page 26

**The payment proposal set forth above is understood, acknowledged and voluntarily agreed to. In exchange for a waiver and release from all claims that could be asserted by the Trustee of The Litigation Practice Group, P.C. pursuant to 11 U.S.C. §§ 547 and 550, I am authorized to accept this proposal on behalf of Point Break Holdings, LLC. The sum of $_____ is enclosed. I understand I may amend my claim to include the amount paid as part of my unsecured claim**.


_____

**BY**: _____

**TITLE**: _____

**DATE**: _____

*Enclosure*

3

EXHIBIT 2
Page 27

**The Litigation Practice Group, P.C. Preference Transfer Schedule**

| Vendor Name | Payment Date | Payment Amount |
|---|---|---|
| POINT BREAK HOLDINGS, LLC | 3/17/2023 | $182,072.09 |
| POINT BREAK HOLDINGS, LLC | 3/1/2023 | $100,000.00 |
| POINT BREAK HOLDINGS, LLC | 1/27/2023 | $127,611.65 |
| POINT BREAK HOLDINGS, LLC | 12/30/2022 | $40,457.10 |
| POINT BREAK HOLDINGS, LLC | 12/21/2022 | $106,784.30 |
| | | **Total: $556,925.14** |

EXHIBIT 2
Page 28

**EXHIBIT "3"**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EXHIBIT 3
Page 29

In re: The Litigation Practice Group PC
Disbursement Details by Payee
90 Days Pre-Petition (12/20/2022 - 03/20/2023)



| Bank Name | Account Name | Account Number | Statement Date | Transaction Date | Check Number | Debit/Charge | Memo |
|---|---|---|---|---|---|---|---|
| Wells Fargo | Maverick Management Group LLC | | 3/31/2023 | 3/17/2023 | | 182,072.09 | WTFed#08341 morgan Chase Ban /Ftr/BnfPoint Break Holdings Sf# 0000960076298625 Trn#23031 7179419 Rlb# |
| Bank of America | Prime Logix LLC | | 3/31/2023 | 3/1/2023 | | 100,000.00 | WIRE TYPE:WIRE OUT DATE:230301 TIME:1 51 7 ET TRN:20230301 00498978 SERVICE REF:501 283 BNF:POINT BREAK HOLDINGS LLC ID:623093322 BNF BK:J PMORGAN CHASE BANK, N. ID:0002 PMT DET:427978018 |
| Chase | The Litigation Practice Group PC | | 1/31/2023 | 1/27/2023 | | 127,611.65 | Book Transfer Debit NC: Point Break Holdings LLC Carlsbad CA 92008-7332 US Ret File Purchase Ire 7349000027Jo |
| Chase | The Litigation Practice Group PC | | 12/31/2022 | 12/30/2022 | | 40,457.10 | Book Transfer Debit NC: Point Break Holdings LLC Carlsbad CA 92008-7332 US Ret: Weekly Disbursement Tm: 5801 200363Jo |
| Chase | The Litigation Practice Group PC | | 12/31/2022 | 12/21/2022 | | 106,784.30 | Book Transfer Debit NC: Point Break Holdings LLC Carlsbad CA 92008-7332 US Ret: Weekly Disbursement Tm: 5987500355Jo |
| | | | | | | 556,925.14 | |