D. EDWARD HAYS, #162507
ehays@marshackhays.com
LAILA MASUD, #311731
lmasud@marshackhays.com
**MARSHACK HAYS WOOD LLP**
870 Roosevelt
Irvine, California 92620
Telephone: (949) 333-7777
Facsimile: (949) 333-7778

General Counsel for Chapter 11 Trustee,
RICHARD A. MARSHACK

Keith C. Owens (SBN 184841)
Nicholas A. Koffroth (SBN 287854)
**FOX ROTHSCHILD LLP**
10250 Constellation Blvd., Suite 900
Los Angeles CA 90067
Telephone: (310) 598-4150
Facsimile: (310) 556-9828
kowens@foxrothschild.com
nkoffroth@foxrothschild.com

Counsel For Official Committee of Unsecured Creditors

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA

| | |
|---|---|
| In re | Case No. 8:23-bk-10571-SC |
| THE LITIGATION PRACTICE GROUP P.C., | Chapter 11 |
| Debtor. | **JOINT CHAPTER 11 PLAN OF LIQUIDATION (DATED MARCH 22, 2024)** |
| | Disclosure Statement Hearing:<br>Date: May 15, 2024<br>Time: 1:30 p.m.<br>Ctrm: 5C - ViaZoom[1]<br>Place: 411 West Fourth Street<br>         Santa Ana, CA  92701 |
| | Plan Confirmation Hearing:<br>Date: TBD<br>Time: TBD<br>Ctrm: 5C - ViaZoom<br>Place: 411 West Fourth Street<br>         Santa Ana, CA  92701 |

[1] Check Judge Clarkson's tentative prior to hearing for further Zoom instructions.

# **TABLE OF CONTENTS**

I.    Introduction .................................................................................................................1

II.    Plan Summary ............................................................................................................2

III.    Classification and Treatment of Claims and Interests under This Plan ......................4

    A.    What Creditors and Interest Holders Will Receive Under this Plan ...........................4

    B.    Unclassified Claims ...................................................................................................4

        1.    Administrative Claims Including Professional Fee Claims .............................5

        2.    Bankruptcy Court Approval of Professional Fee Claims Required .................7

        **3.**    Priority Tax Claims .......................................................................................7

    C.    Classified Claims and Interests ................................................................................10

        1.    Classification of Claims and Interests .........................................................10

        2.    Treatment of Claims and Interests ..............................................................10

        3.    Class 1 – Classes of Secured Claims ...........................................................11

        4.    Class 2 – Classes of Other Priority Claims ..................................................15

        5.    Class 3 – Classes of General Unsecured Claims ...........................................18

        6.    Class 4 – Subordinated Claims ....................................................................19

        7.    Class 5 –Interests .......................................................................................20

        8.    Special Provision Governing Unimpaired Claims.........................................20

        9.    Confirmation Pursuant to §§ 1129(a)(10) and 1129(b) of the
            Bankruptcy Code ........................................................................................20

        10.    Elimination of Vacant Classes; Presumed Acceptance by Non-Voting
            Classes .......................................................................................................21

IV.    Means of Effectuating This Plan ..............................................................................21

    A.    Post-Effective Date Management and Dissolution of the Debtor ...............................21

    B.    The Liquidating Trust ..............................................................................................22

        1.    Execution of Liquidating Trust Agreement ..................................................22

JOINT PLAN OF LIQUIDATION (MARCH 22, 2024)

153129823.4

2.      Purposes of the Liquidating Trust.........................................................22

3.      Transfer of Property to the Liquidating Trust..................................22

4.      Securities Exempt .....................................................................................25

5.      Establishment of the Post-Confirmation Oversight Committee .....................25

6.      Governance of Liquidating Trust.........................................................25

7.      Designation of the Liquidating Trustee ................................................25

8.      Rights, Powers, and Privileges of the Liquidating Trustee............................26

9.      Agents and Professionals ........................................................................26

10.     Investment and Safekeeping of Liquidating Trust Assets ............................26

11.     Limitations on Liquidating Trustee and Payment of Fees .............................27

12.     Bankruptcy Court Approval of Liquidating Trustee Actions .......................27

13.     Valuation of Liquidating Trust Assets .................................................28

14.     Distributions............................................................................................28

15.     Record Date for Distributions ................................................................29

16.     Pro Rata Share of Distributions .............................................................29

17.     Delivery of Distributions ........................................................................29

18.     Undelivered Property ..............................................................................29

19.     De Minimis Distributions .......................................................................30

20.     Payments Limited to Liquidating Trust Assets................................30

21.     Fees and Expenses ...................................................................................30

22.     Priority of Distributions .........................................................................30

23.     Compliance with Laws ............................................................................30

24.     Identification of Beneficiaries of the Liquidating Trust ...................31

25.     Beneficial Interest Only ..........................................................................31

26.     Ownership of Beneficial Interests..........................................................31

27.     Evidence of Beneficial Interest. .............................................................31

ii

28.    Conflicting Claims .................................................................................31

29.    Limitation on Transferability ................................................................32

30.    Parties Dealing with the Liquidating Trustee ........................................32

31.    Liquidating Trustee and Post-Confirmation Oversight Committee's
Exculpation, Indemnification, Insurance and Liability Limitation.................33

32.    Injunctions and Releases .......................................................................34

33.    Terms of Service of the Liquidating Trustee. .......................................34

34.    Appointment of Successor Liquidating Trustee ....................................35

35.    Annual Reporting and Filing Requirements ..........................................35

36.    Confidentiality .......................................................................................35

37.    Maintenance of Records ........................................................................36

38.    Duration and Termination of the Liquidating Trust .............................36

39.    Preservation of Privilege. ......................................................................36

40.    No Bond .................................................................................................37

41.    No Execution .........................................................................................37

42.    Intention to Establish Grantor Trust .....................................................37

43.    Amendment of the Liquidating Trust Agreement..................................37

C.    Effective Date Distributions to Be Made by Trustee.....................................37

D.    Settlement Agreements ..................................................................................37

E.    Claims Administration and Prosecution and Plan Distributions....................38

F.    Books and Records of the Debtor ..................................................................38

G.    Corporate Action............................................................................................39

H.    Effectuating Documents and Further Transactions........................................39

I.    Procedures for Disputed, Contingent, or Unliquidated Claims .....................40

1.    Objections to Claims..............................................................................40

2.    No Distribution Pending Allowance of Claims. ....................................40

iii

3.    Distributions Upon Allowance of Disputed Claims. .......................................40

4.    Resolution of Disputed Claims. .................................................................40

5.    Estimation. .......................................................................................41

J.    Distributions to Be Made Pursuant to the Plan.........................................41

K.    Conditions Precedent to Confirmation and the Effective Date of the Plan .................42

1.    Conditions Precedent to Confirmation of the Plan ...........................42

2.    Conditions Precedent to the Effective Date .....................................42

3.    Waiver of Conditions.................................................................43

4.    Effect of Failure of Conditions ...................................................43

L.    Executory Contracts and Unexpired Leases .................................................44

M.    Cure of Defaults for Executory Contracts and Unexpired Leases Assumed (or Assumed and Assigned)..................................................................................45

N.    Preexisting Obligations to the Debtors under Executory Contracts and Unexpired Leases..........................................................................................46

O.    Retention of Jurisdiction .......................................................................47

P.    Reservation of Rights............................................................................49

V.    Effect of Confirmation of This Plan ...............................................................49

A.    Discharge .............................................................................................49

B.    No Revesting of Estate Property in the Debtor...........................................49

C.    No Liability for Solicitation or Participation ..............................................49

D.    Exculpation; Limitation of Liability ........................................................50

E.    Preservation of all Litigation and Causes of Action ....................................50

F.    Modification of this Plan. .......................................................................51

G.    Post-Confirmation Status Reports............................................................52

H.    Post Confirmation U.S. Trustee Fees.......................................................52

I.    Risk Factors ........................................................................................52

J.    Tax Consequences of the Plan................................................................52

iv

K.      Final Decree ...................................................................................................... 53

VI.  Defined Terms, Rules of Interpretation, Computation of Time, and Governing Law ............ 54

A.      Defined Terms ................................................................................................... 54

B.      Rules of Interpretation ...................................................................................... 66

C.      Computation of Time ........................................................................................ 68

D.      Governing Law .................................................................................................. 68

JOINT PLAN OF LIQUIDATION (MARCH 22, 2024)

153129823.4

# I.    INTRODUCTION

The Litigation Practice Group P.C. ("Debtor") is the Debtor in this Bankruptcy Case. On March 20, 2023 ("Petition Date"), Debtor commenced the Bankruptcy Case by filing a voluntary petition under Chapter 11 of Title 11 of the United States Code (as now in effect or hereafter amended, "Bankruptcy Code").  This document is a Joint Plan of Liquidation (as may be altered, amended, modified, or supplemented from time to time, "Plan") that is jointly proposed by the chapter 11 bankruptcy trustee, Richard A. Marshack ("Trustee"), and the Official Committee of Unsecured Creditors ("Committee" and, together with the Trustee, the "Plan Proponents").

The Plan Proponents propose the Plan, pursuant to § 1129 of the Bankruptcy Code. The Plan Proponents are the proponents of the Plan, within the meaning of § 1129 of the Bankruptcy Code. Capitalized terms used in this Plan have the meanings ascribed to such terms in Article VI of the Plan.

The purpose of this Plan is to provide for the liquidation of Debtor's assets including the prosecution of Litigation Claims to generate funds from which distributions can be paid to creditors. The Effective Date of this Plan will be the date that is the first Business Day which is at least 14 days after the following: entry of a Confirmation Order and satisfaction or waiver of all conditions to the occurrence of the Effective Date, as set forth in Article IV of the Plan.

Since the Petition Date, the Plan Proponents, and their respective professionals, have worked tirelessly to develop a plan that would maximize the value of the Debtor's Estate for the benefit of creditors and minimize the amount of time spent in chapter 11. After extensive negotiations, the Trustee and the Committee have reached agreement on the terms of this Plan.

The Plan Proponents believe that the Plan presents the best path forward and is in the best interests of the Debtor, the Estate, its creditors, and all parties in interest. The Plan is premised on the creation of the Liquidation Trust, which will succeed to all rights, interests, and property of the Debtor and the Estate. If confirmed, the Plan will transfer to the Liquidating Trust all assets of the Estate, including proceeds from any pre-Effective Date sales and Causes of Action of the Debtor's Estate, that are not distributed under the Plan as of the Effective Date. The Committee has agreed that Richard A. Marshack shall serve as the Liquidating Trustee, subject to an Oversight Committee comprised of

Committee members, as more particularly described in the Liquidating Trust Agreement. The Liquidating Trustee will be tasked with, among other things, monetizing the Debtor's remaining Assets and making Distributions to Holders of Allowed General Unsecured Claims in Class 3 (who will be beneficiaries of the Liquidating Trust). The Plan Proponents believe that the Plan is in the best interest of the Debtor's Estate and all stakeholders, and recommend that all Holders of Claims entitled to vote, vote in favor of the Plan.

Subject to the restrictions on modifications set forth in § 1127 of the Bankruptcy Code and Bankruptcy Rule 9019, the Plan Proponents expressly reserve the right to alter, amend, or modify the Plan one or more times before substantial consummation.

A disclosure statement is a document which explains the terms of a Chapter 11 plan. In this case, the Court approved a disclosure statement ("Disclosure Statement") at a hearing held on _____ ___, 2024. Holders of Claims and Interests should refer to the Disclosure Statement for a discussion of the Debtor's history, business, assets, results of operations, historical financial information, projections, any future operations, as well as a summary and description of this Plan including related matters.[2]

ALL HOLDERS OF CLAIMS AND INTERESTS, TO THE EXTENT APPLICABLE, ARE ENCOURAGED TO CAREFULLY READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

## II.    PLAN SUMMARY

This Plan constitutes a liquidating chapter 11 plan for the Debtor's Estate and provides for distribution of the assets of the Debtor's Estate that are already liquidated, or will be liquidated over time, to Holders of Allowed Claims in accordance with the terms of the Plan and the priority provisions of the Bankruptcy Code. The Liquidation Trustee will implement the terms of the Plan and make distributions in accordance with the terms of the Plan and the Liquidating Trust Agreement. Except as otherwise provided by Order of the Bankruptcy Court, distributions will occur at various

---

[2] To the extent there are any capitalized terms used in this Plan that are not defined in this Plan but are defined in the Disclosure Statement, those terms shall have the same definitions as contained in the Disclosure Statement.

153129823.4

intervals after the Effective Date as determined by the Liquidation Trustee. Upon confirmation of the Plan, a Liquidating Trust will be created to hold, collect, distribute, liquidate, and otherwise dispose of all funds, property, claims, rights, and causes of action of the Debtor and its Estate that are not distributed under the Plan as of the Effective Date.

The beneficiaries of the Liquidating Trust will be Debtor's creditors which are grouped into various classes as set forth in detail below.

The Liquidating Trust shall be a creditors' liquidating trust for all purposes, including § 301.7701-4(d) of the Treasury Regulations, and is intended to be treated as a grantor trust for federal income tax purposes. Debtor will not be engaging in further business and will be dissolved.

Class 1 consists of potential secured claims. Each such secured creditor is placed into its own sub-class (i.e. Class 1A, Class 1B, etc.) and will receive the treatment provided for such sub-class in the Plan. Each of the Class 1 claims are Disputed Claims and will be resolved in accordance with this Plan.

Class 2 consists of all priority unsecured claims that are set forth in §§ 507(a), (4), (5), (6), and (7) of the Bankruptcy Code.[3] Each class of similarly-situated priority claims will be paid in the order specified in § 507(a) of the Bankruptcy Code. All Allowed Priority Claims will be paid in full before any distributions are made to Classes 3-5.

Class 3 consists of all Allowed, Non-Priority General Unsecured Claims other than claims that are Class 4 Subordinated Claims or Class 5 Interests in the Debtor. The deadline to file any prepetition claim, including a Class 3 Claim, was February 23, 2024, at 4:00 p.m., except as provided for certain limited parties, pursuant to that certain modification order [Docket No. 963]. The total amount of Class 3 Allowed Claims will not be known until after the resolution of any objections filed with respect to any such claims.

Class 4 under this Plan consists of all claims that are Subordinated Claims under 11 U.S.C.

---

[3] There are other types of claims entitled to priority under § 507(a) of the Bankruptcy Code. The Plan Proponents, however, do not believe that there are any such creditors in this case. If any timely-filed proofs of claim assert priority under any other section and such claims are allowed, the Plan Proponents will revise the Plan to include such classes.

§ 510. The Holders of any Allowed Class 4 Claims will not be receiving any distribution under this Plan unless all senior claims including administrative creditors, unclassified claims including tax claims, and all creditors in all senior classes are paid in full (which Plan Proponents do not believe will occur). To the extent that any Claim is subordinated under 11 U.S.C. § 510, such subordinated debts will be classified and treated under Class 4.

Class 5 consists of all equity interests in the Debtor, including any claims reclassified by the Bankruptcy Court as equity by a Final Order. The confirmation of this Plan will cancel all such equity interests. The Holders of equity interests will not receive any distributions under this Plan unless all administrative creditors, unclassified claims including tax claims, and all creditors in all senior classes are paid in full (which the Plan Proponents do not believe will occur).

## III.    CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS UNDER THIS PLAN

### A.    What Creditors and Interest Holders Will Receive Under this Plan

As required by the Bankruptcy Code, this Plan classifies claims and interests in various classes according to their rights and priorities. Similarly situated claims are included in the same class. Claims that have different rights and priorities such as secured creditors are included in their own class. The Plan also states whether the claims and rights of each class are impaired or unimpaired. Lastly, the Plan provides for the treatment of for holders of claims in each class (i.e. what will they receive on account of their claims).

### B.    Unclassified Claims

Certain types of claims are not placed into voting classes; instead they are unclassified. They are not considered impaired and they do not vote on the Plan because they are automatically entitled to specific treatment as set forth in the Bankruptcy Code. In accordance with § 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Priority Tax Claims, and Professional Fee Claims, have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III. The following claims are not classified:

153129823.4

1.     **Administrative Claims Including Professional Fee Claims**

Section 507(a)(2) of the Bankruptcy Code provides for priority treatment of certain claims, including fees and charges provided under chapter 123 of the Judicial Code, and administrative expenses allowed under 11 U.S.C. § 503(b). The Bankruptcy Code requires that all such allowed claims be paid in full on the Effective Date unless a particular Holder agrees to a different treatment.

**Holders of Administrative Claims that are required to, but do not, File and serve a request for payment of such Administrative Claims by the applicable Administrative Claims Bar Dates shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Estate or its property, and such Administrative Claims shall be deemed satisfied, settled, and released.** Objections to such requests, if any, must be Filed and served on the Plan Proponents, or Liquidating Trustee, as applicable, and the requesting party not later than the Administrative Claims Objection Deadline.

Unless otherwise agreed to by the Holder of an Allowed Administrative Claim and the Plan Proponents or the Liquidating Trustee, as applicable, each Holder of an Allowed Administrative Claim (other than Holders of Professional Fee Claims and Claims for fees and expenses, pursuant to § 1930 of the Judicial Code) will receive in full and final satisfaction of its Administrative Claim an amount of Cash equal to the amount of such Allowed Administrative Claim in accordance with the following: (1) if an Administrative Claim is Allowed as of the Effective Date, on the Effective Date or thereafter is agreed by any Holder of such Administrative Claim (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter); (2) if such Administrative Claim is not Allowed as of the Effective Date, no later than sixty (60) days after the date on which an order Allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; (3) if such Allowed Administrative Claim is based on liabilities incurred by Debtor or Trustee in the ordinary course of business after the Petition Date in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claim without any further action by the Holder of such Allowed Administrative Claim, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter; or (4) at such

time and upon such terms as set forth in a Final Order of the Bankruptcy Court or as agreed with the Plan Proponents or Liquidating Trustee, as applicable.

The following chart lists all known potential claims, including Professional Fee Claims, entitled to § 507(a)(2) priority treatment:

| Name | Treatment |
| --- | --- |
| Clerk's Office Fees | Paid in full on the Effective Date |
| Office of the U.S. Trustee Fees | Paid in full on the Effective Date |
| Marshack Hays Wood, LLP ("MHW"), general counsel to Chapter 11 Trustee | Paid in full on the later of (i) the Effective Date and (ii) the date the Bankruptcy Court enters an order allowing such fees and expenses, unless otherwise agreed by MHW |
| Dinsmore & Shohl ("Dinsmore"), special counsel to Chapter 11 Trustee | Paid in full on the later of (i) the Effective Date and (ii) the date the Bankruptcy Court enters an order allowing such fees and expenses, unless otherwise agreed by Dinsmore |
| Grobstein Teeple ("GT"), accountant to Chapter 11 Trustee | Paid in full on the later of (i) the Effective Date and (ii) the date the Bankruptcy Court enters an order allowing such fees and expenses, unless otherwise agreed by GT |
| Fox Rothschild ("FR"), counsel to the Official Committee of Unsecured Creditors | Paid in full on the later of (i) the Effective Date and (ii) the date the Bankruptcy Court enters an order allowing such fees and expenses, unless otherwise agreed by FR |
| Force 10 ("FT"), financial advisors/accountants to the Official Committee of Unsecured Creditors | Paid in full on the later of (i) the Effective Date and (ii) the date the Bankruptcy Court enters an order allowing such fees and expenses, unless otherwise agreed by FT |
| Court Appointed Monitor, Nancy Rapoport | Paid in full on the later of (i) the Effective Date and (ii) the date the Bankruptcy Court enters an order allowing such fees and expenses, unless otherwise agreed by the Monitor. |
| Court Appointed Privacy Ombudsman, Lucy H. Thomson | Paid in full on the later of the Effective Date and the date the Bankruptcy Court enters an order allowing such fees and expenses |
| Other Administrative Claims | Paid in full on the later of the Effective Date and the date the Bankruptcy Court enters an order allowing such Administrative Claims, or such later date as may be agreed by such Holder of Allowed Other Administrative Claims |
| Richard A. Marshack, Chapter 11 Trustee's statutory fees and expenses. | Paid in full on the later of (i) the Effective Date and (ii) the date the Bankruptcy Court enters an order allowing such fees and expenses, unless otherwise agreed by the Trustee. |

The administrative claim amounts set forth above simply represent the Plan Proponents' best estimate as to the identity of Holders and the amounts of projected administrative claims in this case. The actual administrative claims may be higher or lower. By voting to accept this Plan, creditors are not acknowledging the validity of, or consenting to the amount of, any of these administrative claims,

153129823.4

1    and creditors are not waiving any of their rights to object to the allowance of any administrative

2    claims.

3         2.    **Bankruptcy Court Approval of Professional Fee Claims Required**

4         Unless excepted from the need to file a motion by the Bankruptcy Code or unless the Court

5    enters an order approving such claims, all professional fees and expenses listed in the foregoing chart

6    must be approved by Court order before they may be paid. All final requests for payment of

7    Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the

8    Effective Date must be filed no later than forty-five (45) days after the Effective Date. The

9    Bankruptcy Court shall determine the amounts of such Professional Fee Claims after notice and a

10   hearing in accordance with the procedures established by the Bankruptcy Code, Bankruptcy Rules,

11   and prior Bankruptcy Court orders. Only the amount of fees and expenses allowed by the Bankruptcy

12   Court will be required to be paid under this Plan. Professionals who have been employed in this case

13   are not being deemed to have agreed that the figures contained herein represent any ceiling on the

14   amount of fees and expenses that they have incurred or are entitled to seek to be paid pursuant to

15   Bankruptcy Court order as such fees and expenses are just estimates provided at the time of the

16   preparation of the Plan.

17         3.    **Priority Tax Claims**

18         Priority Tax Claims include certain unsecured income, employment, and other taxes described

19   by 11 U.S.C. § 507(a)(8). The Bankruptcy Code requires that each Holder of a Priority Tax Claim

20   (whether secured or unsecured) must receive the present value of such claim in regular installment

21   payments in cash (i) of a total value, as of the Effective Date of the Plan, equal to the allowed amount

22   of such claim; (ii) over a period ending not later than five years after the Petition Date; and (iii) in a

23   manner not less favorable than the most favored non-priority unsecured claim provided for under the

24   Plan.

25         Except to the extent that a Holder of an Allowed Priority Tax Claim and the Plan Proponents

26   or the Liquidating Trustee agree to a less favorable treatment for such Holder, in full and final

27   satisfaction, settlement, and release of and in exchange for each Allowed Priority Tax Claim, each

28

153129823.4

Holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in § 1129(a)(9)(C) of the Bankruptcy Code and, for the avoidance of doubt, Holders of Allowed Priority Tax Claims will receive interest on such Allowed Priority Tax Claims after the Effective Date in accordance with §§ 511 and 1129(a)(9)(C) of the Bankruptcy Code.

All Allowed Priority Tax Claims will be paid as set forth in the below chart. The Plan Proponents reserve all rights to object to any alleged Priority Tax Claims.

The following chart lists all known § 507(a)(8) Priority Tax Claims and their treatment under the Plan:[4] The chart is based on the filed claims in this case. Trustee shall either reserve sufficient funds in the Estate to make such payments or the Liquidating Trust shall be liable to make such payments as they become due if Trustee funds all estate assets into the Trust.

| Description | Amount Alleged[5] | Treatment |
|---|---|---|
| IRS – Proof of Claim No. 2-2 filed on May 1, 2023 | $1,041,773.57[6] | Except to the extent the Holder of this Priority Tax Claim agrees to less favorable treatment with respect to the Allowed amount of such Claim, such Holder any Allowed amount of this Priority Tax Claim Unless Disallowed, equal annual Cash payments in an aggregate amount equal to the amount of such Allowed Priority Tax Claim, together with interest at the applicable rate pursuant to § 511, over a period not exceeding five (5) years from and after the Petition Date; provided, however, the Plan Proponents and Liquidating Trustee, as applicable, reserve the right to prepay all or a portion of any such amounts at any time at the discretion of the Plan Proponents and the Liquidating Trustee. |

[4] The chart is for informational purposes only and is not an admission as to the validity of any particular claim.

[5] The "Amount Alleged" column represents the amount of Priority Tax Claims that have been asserted, or that Trustee believes will be asserted, by each Holder of a Priority Tax Claim. The inclusion of such amount in this Plan is not intended to be, nor shall be construed as, an admission by Trustee of the validity, amount or priority of any such Claim.

[6] The total amount of the claim is $1,050,799.56 of which: (i) $9,025.99 is a general unsecured claim and (ii) $1,041,773.57 is a priority claim.

8

| Description | Amount Alleged[5] | Treatment |
|---|---|---|
| Franchise Tax Board – Proof of Claim No. 393 filed on August 29, 2023 | $317,416.67[7] | Except to the extent the Holder of this Priority Tax Claim agrees to less favorable treatment with respect to the Allowed amount of such Claim, such Holder any Allowed amount of this Priority Tax Claim Unless Disallowed, equal annual Cash payments in an aggregate amount equal to the amount of such Allowed Priority Tax Claim, together with interest at the applicable rate pursuant to § 511, over a period not exceeding five (5) years from and after the Petition Date; provided, however, the Plan Proponents and Liquidating Trustee, as applicable, reserve the right to prepay all or a portion of any such amounts at any time at the discretion of the Plan Proponents and the Liquidating Trustee. |
| Other Priority Tax Claims of $1,500 or Less | $0.00 (est.) | Any Allowed Priority Tax Claims of $1,500 or less will be paid in full on the Effective Date. |
| Other Priority Tax Claims over $1,500 | $0.00 (est.) | Except to the extent the Holder of this Priority Tax Claim agrees to less favorable treatment with respect to the Allowed amount of such Claim, such Holder any Allowed amount of this Priority Tax Claim Unless Disallowed, equal annual Cash payments in an aggregate amount equal to the amount of such Allowed Priority Tax Claim, together with interest at the applicable rate pursuant to § 511, over a period not exceeding five (5) years from and after the Petition Date; provided, however, the Plan Proponents and Liquidating Trustee, as applicable, reserve the right to prepay all or a portion of any such amounts at any time at the discretion of the Plan Proponents and the Liquidating Trustee. |
| **TOTAL** | **$1,359,190.24 (est.)** | |

[7] The total amount of the claim is $350,745.88 of which: (i) $33,329.21 is a general unsecured claim and (ii) $317,416.67 is a priority claim.

9

**C.    Classified Claims and Interests**

1.    **Classification of Claims and Interests**

Except for the Claims addressed in Section III.B of the Plan, all Claims and Interests are classified in the Classes set forth in this Section III.C for all purposes, including voting, Confirmation, and distributions pursuant to the Plan and in accordance with §§ 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or an Interest is classified in a particular Class only to the extent that such Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of such Claim or Interest qualifies within the description of such other Classes. A Claim or Interest also is classified in a particular Class for the purpose of receiving distributions under the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

The classification of Claims and Interests against the Debtor pursuant to the Plan is as set forth below:

| Class | Claim / Interest | Status | Voting Rights |
|---|---|---|---|
| 1 | Secured Claims | Impaired | Entitled to Vote |
| 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 3 | General Unsecured Claims | Impaired | Entitled to Vote |
| 4 | Subordinated Claims | Impaired | Not Entitled to Vote (Deemed to Reject under § 1126(g) of the Bankruptcy Code) |
| 5 | Equity Interests | Impaired | Not Entitled to Vote (Deemed to Reject under § 1126(g) of the Bankruptcy Code) |

2.    **Treatment of Claims and Interests**

Subject to Section III.C. of the Plan, each Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive under the Plan the treatment described below in full and final satisfaction, compromise, settlement, and release of, and in exchange for, such Holder's Allowed Claim or Allowed Interest, except to the extent less favorable treatment is agreed to by the Plan Proponents, or the

JOINT PLAN OF LIQUIDATION (MARCH 22, 2024)

153129823.4

Liquidating Trustee, as applicable, and the Holder of such Allowed Claim or Allowed Interest, as applicable.

The Classes below classify Claims (except for unclassified claims such as Administrative Claims and Priority Tax Claims) against the Estate for all purposes, including voting, confirmation, and distribution pursuant to the Plan.

3.      **Class 1 – Classes of Secured Claims**

Secured claims are claims that are secured by Liens on property of the Estate. The following chart sets forth the description and treatment of Secured Claims.

The Secured Claims are subject to substantial dispute.  The Plan Proponents have objected, or intend to object, to the validity, priority, perfection, and/or amount of some or all of the Secured Claims on various grounds including, but not limited to, that the Liens purporting to secure the Secured Claims are avoidable under 11 U.S.C. §§ 544, 547, 548, 549, 550, 551, 552, and/or 553, or applicable nonbankruptcy law, or subject to subordination under 11 U.S.C. §§ 510(b) and/or 510(c). To the extent that the Trustee, the Committee, or Liquidating Trustee files an adversary proceeding and successfully avoids, recovers, and preserves any Lien held by any Holder of a Secured Claim, the Estate or Liquidating Trust shall be entitled to rights otherwise afforded the Holders of such Claims as described below.  Additionally, the Plan Proponents have objected, or intend to object, to the amount of some or all of the Secured Claims on various grounds, pursuant to Bankruptcy Rule 3012.  In addition, the Plan Proponents believe that some or all of the Secured Claims, to the extent Allowed, are subject to disallowance and/or setoff under 11 U.S.C. §§ 502(d) and 553.  Holders of Allowed Secured Claims, following entry of a Final Order Allowing such Secured Claim (or any portion thereof), will be entitled to the treatment specified by this Plan with respect to any Allowed amount of such Secured Claim, if any.

The Plan sets forth the asserted amount of Secured Claims set forth in corresponding Proofs of Claim or estimates the amount of the Secured Claim where no Proof of Claim is filed.  The Plan does not treat as Holders of Secured Claims certain parties that filed UCC-1 financing statements prepetition and whose claim is estimated in the amount of $0.00, pursuant to the Court's ruling on

JOINT PLAN OF LIQUIDATION (MARCH 22, 2024)

153129823.4

1  that certain motion filed by the Trustee, pursuant to Bankruptcy Rule 3012.  Pursuant to the foregoing

2  ruling, the Court has authorized the Trustee to file UCC-3 termination statements with respect to such

3  UCC-1 financing statements, and, as such, any claim is not treated in this Plan as a Secured Claim.

4  In other instances, the Plan estimates certain Secured Claims at $0.00 to the extent that the Holders

5  of such Secured Claims have filed UCC-1 financing statements but have neither filed a Proof of claim

6  nor responded to Trustee's request for information regarding the alleged Secured Claim.  The Plan

7  Proponents believe that such claims have either been fully satisfied or are otherwise avoidable. All

8  such holders of Secured Claims will be served with the Plan and Disclosure Statement.

9         Certain Holders of Secured Claims purport to relate to one or more alleged Purchase and Sale

10  Agreements, pursuant to which the Holders of such Secured Claims may assert an ownership interest

11  in certain consumer client files, accounts receivable, and/or revenue streams.  This Plan preserves the

12  rights of any Holders of Secured Claims to assert an ownership interest in such client files, accounts

13  receivable, and/or revenue streams, subject to the Ownership Challenge Deadline, and the Estate's

14  and Liquidating Trust's rights to object to or otherwise challenge any such alleged ownership

15  interests.

| Class | Description[8] | Impairment | Treatment |
|-------|------------|------------|-----------|
| 1A | Secured Claim of Bridge Funding Cap LLC dba Fundura ("Fundura"), as set forth in Proof of Claim No. 335-1 filed on October 16, 2023.<br><br>Alleged Collateral: All assets (UCC-1)<br><br>Total asserted amount of secured claim: $2,374,004.82 | Impaired; Entitled to Vote | Unless the Holder of an Allowed Class 1A Claim agrees to less favorable treatment, the Holder of an Allowed Class 1A Claim will receive the following treatment, at the Plan Proponents' election:<br><br>    (i) the collateral securing the Class 1A Claim; or<br><br>    (ii) payment of the Allowed amount of the Class 1A Claim, plus interest at the lesser of the contract rate and 8%.<br><br>The Holder of an Allowed Class 1A Claim will be entitled to the foregoing treatment ten days after |

---

[8] The collateral description and alleged amounts of the Secured Claims set forth herein are neither intended to be, nor shall be construed as, an admission by the Plan Proponents regarding the amount, validity, priority, perfection, or extent of any such Claim or Lien.

JOINT PLAN OF LIQUIDATION (MARCH 22, 2024)

153129823.4

| Class | Description[8] | Impairment | Treatment |
|---|---|---|---|
| | | | the date on which all of the following are satisfied: (a) there are sufficient funds in the Estate or Liquidating Trust to satisfy such Allowed Class 1A Claim; and (b) the later of (1) the Effective Date, or (2) the date an order Allowing any such Class 1A Claim becomes a Final Order. |
| 1B | Secured Claim of Azzure Capital, LLC ("Azzure") as set forth in Proof of Claim No. 127-1, filed July 24, 2023<br><br>Alleged Collateral: Personal property described more fully in Claim No. 127-1<br><br>Total asserted amount of secured claim: $5,000,000 | Impaired; Entitled to Vote | Unless the Holder of an Allowed Class 1B Claim agrees to less favorable treatment, the Holder of an Allowed Class 1B Claim will receive the following treatment, at the Plan Proponents' election:<br><br>(i) the collateral securing the Class 1B Claim; or<br><br>(ii) payment of the Allowed amount of the Class 1B Claim, plus interest at the lesser of the contract rate and 8%.<br><br>The Holder of an Allowed Class 1B Claim will be entitled to the foregoing treatment ten days after the date on which all of the following are satisfied: (a) there are sufficient funds in the Estate or Liquidating Trust to satisfy such Allowed Class 1B Claim; and (b) the later of (1) the Effective Date, or (2) the date an order Allowing any such Class 1B Claim becomes a Final Order. |
| 1C | Diverse Capital LLC ("Diverse"), as set forth in:<br>-        UCC No. U210085288536, filed September 15, 2021<br>-        UCC No. U210106788229, filed December 1, 2021<br><br>Alleged Collateral: *See* descriptions provided in UCCs noted above<br><br>Total estimated amount of secured claim: $0.00 | Impaired; Entitled to Vote | Unless the Holder of an Allowed Class 1C Claim agrees to less favorable treatment, the Holder of an Allowed Class 1C Claim will receive the following treatment, at the Plan Proponents' election:<br><br>(i) the collateral securing the Class 1C Claim; or<br><br>(ii) payment of the Allowed amount of the Class 1C Claim, plus interest at the lesser of the contract rate and 8%.<br><br>The Holder of an Allowed Class 1C Claim will be entitled to the foregoing treatment ten days after |

13

153129823.4

| Class | Description[8] | Impairment | Treatment |
|---|---|---|---|
| | | | the date on which all of the following are satisfied: (a) there are sufficient funds in the Estate or Liquidating Trust to satisfy such Allowed Class 1C Claim; and (b) the later of (1) the Effective Date, or (2) the date an order Allowing any such Class 1C Claim becomes a Final Order. |
| 1D | OHP-CDR, LP f/k/a OHP-LPG, LP ("OHP"), as set forth in Proof of Claim No. 44-1, filed May 24, 2023<br><br>Alleged Collateral: All personal property described more fully in Claim No. 44-1<br><br>Total asserted amount of secured claim: $16,538,954 | Impaired; Entitled to Vote | Unless the Holder of an Allowed Class 1D Claim agrees to less favorable treatment, the Holder of an Allowed Class 1D Claim will receive the following treatment, at the Plan Proponents' election:<br><br>(i) the collateral securing the Class 1D Claim; or<br><br>(ii) payment of the Allowed amount of the Class 1D Claim, plus interest at the lesser of the contract rate and 8%.<br><br>The Holder of an Allowed Class 1D Claim will be entitled to the foregoing treatment ten days after the date on which all of the following are satisfied: (a) there are sufficient funds in the Estate or Liquidating Trust to satisfy such Allowed Class 1D Claim; and (b) the later of (1) the Effective Date, or (2) the date an order Allowing any such Class 1D Claim becomes a Final Order. |
| 1E | PECC Corp. ("PECC"), as set forth in Proof of Claim No. 740-1, filed September 14, 2023<br><br>Alleged Collateral: LPG Accounts Receivables Sold<br><br>Total asserted amount of secured claim: $28,329,336.59 | Impaired; Entitled to Vote | Unless the Holder of an Allowed Class 1E Claim agrees to less favorable treatment, the Holder of an Allowed Class 1E Claim will receive the following treatment, at the Plan Proponents' election:<br><br>(i) the collateral securing the Class 1E Claim; or<br><br>(ii) payment of the Allowed amount of the Class 1E Claim, plus interest at the lesser of the contract rate and 8%.<br><br>The Holder of an Allowed Class 1E Claim will be entitled to the foregoing treatment ten days after |

JOINT PLAN OF LIQUIDATION (MARCH 22, 2024)

153129823.4

| Class | Description[8] | Impairment | Treatment |
|---|---|---|---|
| | | | the date on which all of the following are satisfied: (a) there are sufficient funds in the Estate or Liquidating Trust to satisfy such Allowed Class 1E Claim; and (b) the later of (1) the Effective Date, or (2) the date an order Allowing any such Class 1E Claim becomes a Final Order. |
| 1F | Other Secured Claims<br><br>Alleged Collateral: Unknown<br><br>Total estimated amount of secured claims: $0.00 | Impaired; Entitled to Vote | Unless the Holder of an Allowed Class 1F Claim agrees to less favorable treatment, the Holder of an Allowed Class 1F Claim will receive the following treatment, at the Plan Proponents' election:<br><br>(i) the collateral securing the Class 1F Claim; or<br><br>(ii) payment of the Allowed amount of the Class 1F Claim, plus interest at the lesser of the contract rate and 8%.<br><br>The Holder of an Allowed Class 1F Claim will be entitled to the foregoing treatment ten days after the date on which all of the following are satisfied: (a) there are sufficient funds in the Estate or Liquidating Trust to satisfy such Allowed Class 1F Claim; and (b) the later of (1) the Effective Date, or (2) the date an order Allowing any such Class 1F Claim becomes a Final Order. |

4.    **Class 2 – Classes of Other Priority Claims**

Other Priority Claims are entitled to priority, under §§ 364(c) and 507(a)(4), (a)(5), and (a)(7) of the Bankruptcy Code, including the following:

-    Super-Priority Loans: Section 364(c) of the Bankruptcy Code provides that certain loans may be afforded priority over any or all administrative expenses of the kind specified in §§ 503(b) and 507(b) of the Bankruptcy Code. In the Bankruptcy Case, the Court approved loans, two of which remain outstanding:

JOINT PLAN OF LIQUIDATION (MARCH 22, 2024)

153129823.4

- The loan made by Resolution Ventures to the Estate, outstanding amount of $341,280, which includes a deduction of the amount of outstanding debt credited to fund the initial deposit by MLG under the Sale Order;

- The loan made by Liberty Acquisitions to the Estate, in the total amount of $594,362; and

- The loan made by Pan American to the Estate, in the total amount of $269,637.

- <u>Wages/Commissions</u>: Claims under § 507(a)(4) of the Bankruptcy Code include unsecured claims for wages, salaries, or commissions (up to $15,150) earned within 180 days before the Petition Date or when the Debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).

- <u>Contributions to Employee Benefit Plan</u>: Claims under § 507(a)(5) of the Bankruptcy Code include unsecured claims for contributions to an employee benefit plan arising from services rendered within 180 days before the Petition Date or when the Debtor's business ends, whichever is earlier. But claims for wages under (a)(4) are paid first (up to $15,150); then claims under (a)(5) for contributions to employee benefit plans can be recovered next, up to the remainder of the $15,150 ceiling.

- <u>Deposits</u>: Claims under § 507(a)(7) of the Bankruptcy Code include unsecured claims for amounts paid towards deposits for the purchase, lease, or rental of property or services for personal, family, or household use up to $3,350 of deposits.

Trustee shall either reserve sufficient funds in the Estate to make the payments due to Class 2 claimants or the Liquidating Trust shall be liable to make such payments as they become due if Trustee funds all estate assets into the Trust.

| **Class** | **Description** | **Impairment** | **Treatment** |
|---|---|---|---|
| 2A | Super-priority loans owed to Liberty Acquisitions and PanAmerican | Unimpaired; Deemed to Accept and Not Entitled to Vote | Unless the Holder of an Allowed Class 2A Claim agrees to less favorable treatment, the Holder of an Allowed Class 2A Claim will receive payment of such Allowed Class 2A Claim, pursuant to the terms of the court-approved financing on or before the Effective Date. *See* Dk. Nos. 413, 414, and 415. |

JOINT PLAN OF LIQUIDATION (MARCH 22, 2024)

153129823.4

| Class | Description | Impairment | Treatment |
|---|---|---|---|
| 2B | Wage, Salary, Commission Claims<br><br>Total estimated amount: $0.00 | Impaired; Entitled to Vote | Unless the Holder of an Allowed Class 2B Claim agrees to less favorable treatment, the Holder of an Allowed Class 2B Claim will receive:<br><br>(i) if Class 2B has accepted the Plan, then, at the Plan Proponent's election, either (a) payment in full of the Allowed amount of the Class 2B Claim, or (b) deferred Cash payments of a value, as of the Effective Date, equal to the Allowed amount of such Class 2B Claim; or<br><br>(ii) if Class 2B has not accepted the Plan, payment in full of the Allowed amount of the Class 2B Claim.<br><br>The Holder of an Allowed Class 2B Claim will be entitled to the foregoing treatment ten days after the later of (a) the Effective Date, or (b) the date an order Allowing any such Class 2B Claim becomes a Final Order. |
| 2C | Contributions to Employee Benefit Plan<br><br>Total estimated amount: $0.00 | Impaired; Entitled to Vote | Unless the Holder of an Allowed Class 2C Claim agrees to less favorable treatment, the Holder of an Allowed Class 2C Claim will receive:<br><br>(i) if Class 2C has accepted the Plan, then, at the Plan Proponent's election, either (a) payment in full of the Allowed amount of the Class 2C Claim, or (b) deferred Cash payments of a value, as of the Effective Date, equal to the Allowed amount of such Class 2C Claim; or<br><br>(ii) if Class 2C has not accepted the Plan, payment in full of the Allowed amount of the Class 2C Claim.<br><br>The Holder of an Allowed Class 2C Claim will be entitled to the foregoing treatment ten days after the later of (a) the Effective Date, or (b) the date an order Allowing any such Class 2C Claim becomes a Final Order. |

JOINT PLAN OF LIQUIDATION (MARCH 22, 2024)

153129823.4

| Class | Description | Impairment | Treatment |
|---|---|---|---|
| 2D | Deposits<br><br>Total estimated amount: $0.00 | Impaired; Entitled to Vote | Unless the Holder of an Allowed Class 2D Claim agrees to less favorable treatment, the Holder of an Allowed Class 2D Claim will receive:<br><br>   (i) if Class 2D has accepted the Plan, then, at the Plan Proponent's election, either (a) payment in full of the Allowed amount of the Class 2D Claim, or (b) deferred Cash payments of a value, as of the Effective Date, equal to the Allowed amount of such Class 2D Claim; or<br><br>   (ii) if Class 2D has not accepted the Plan, payment in full of the Allowed amount of the Class 2D Claim.<br><br>The Holder of an Allowed Class 2D Claim will be entitled to the foregoing treatment ten days after the later of (a) the Effective Date, or (b) the date an order Allowing any such Class 2D Claim becomes a Final Order. |

5.      **Class 3 – Classes of General Unsecured Claims**

General Unsecured Claims are not entitled to priority under § 507(a) of the Bankruptcy Code. The following charts identify this Plan's treatment of the classes containing the General Unsecured Claims.

While there may be a recovery for Holders of Allowed General Unsecured Claims, it is not possible at this time to estimate the ultimate recovery for such Holders based, in part, on the extent to which asserted Secured Claims are ultimately Allowed, the extent to which any asserted Other Priority Claims and General Unsecured Claims are Disallowed and/or subordinated, and the extent of recoveries from Causes of Action.

| Class | Description | Impairment | Treatment |
|---|---|---|---|
| 3A | **General Unsecured Claims**<br><br>This Class is comprised of all Holders of General Unsecured Claims. | Impaired; Entitled to Vote | Unless the Holder of an Allowed Class 3A Claim agrees to less favorable treatment, the Holder of an Allowed Class 3A Claim will receive on the Effective Date a Trust Beneficial Interest in the amount of such Allowed Class 3A Claim and become a Trust Beneficiary in full and final satisfaction of its Allowed Class 3A Claim. |
| 3B | **Consumer Client Convenience Class** | Impaired; Entitled to Vote | Unless the Holder of an Allowed Class 3B Claim agrees to less favorable treatment, the Holder of an Allowed Class 3B Claim |

18

153129823.4

| | This Class is comprised of any former client of the Debtor that is the Holder of a properly Filed and supported General Unsecured Claim otherwise treatable under Class 3A of this Plan that elects treatment as a member of Class 3B in lieu of treatment in Class 3A. | | that elects to treatment in Class 3B will receive on the Effective Date a Trust Beneficial Interest equal to the lesser of (i) one monthly payment made by such Holder to the Debtor; or (2) $1,000. *Electing treatment in Class 3B and accepting an Allowed Class3B Claim does not entitle such Holder to payment in full of such Class 3B Claim, which will be paid Pro Rata with all Allowed Class 3A and Class 3B Claims.* Such Holder of an Allowed Class 3B Claim will become a Trust Benficiary in full and final satisfaction of its Allowed Class 3B Claim.<br><br>A Holder's affirmative election to participate in Class 3B will be deemed a vote in favor of the Plan.<br><br>Holders of Class 3B Claims will be deemed to have expressly waived any other General Unsecured Claim in excess of the Allowed amount of such Holder's Class 3B Claim. Moreover, such Holder of an Allowed General Unsecured Claim expressly waives all claims, rights, and defenses that would otherwise exist against the Estate.  In exchange for the foregoing waiver and release, the Estate and Liquidating Trust will expressly waive any objection to a Class 3B Claim except for objections based on failure to timely file such Claim or failure to provide adequate documentation or support for such Claim. |

6.      **Class 4 – Subordinated Claims**

| Class | Description | Impairment | Treatment |
|---|---|---|---|
| 4 | All claims that are Subordinated Claims | Impaired; Deemed to Reject and Not Entitled to Vote | Allowed Subordinated Claims, if any, shall be canceled, released, and extinguished as of the Effective Date, and will be of no further force or effect.  Holders of Allowed Subordinated Claims, if any, will not receive any distribution on account of such Allowed Subordinated Claims. |

19

153129823.4

Except as expressly provided herein, the allowance, classification, and treatment of all Allowed Claims and Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, § 510(b) of the Bankruptcy Code, or otherwise. Pursuant to § 510 of the Bankruptcy Code, the Plan Proponents and the Liquidating Trustee reserve the right to reclassify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

7.    **Class 5 –Interests**

| Class | Description | Impairment | Treatment |
|-------|-------------|------------|-----------|
| 5 | All Interests in the Debtor | Impaired; Deemed to Reject and Not Entitled to Vote | Allowed Interests, if any, shall be canceled, released, and extinguished as of the Effective Date, and will be of no further force or effect.  Holders of Allowed Interests, if any, will not receive any distribution on account of such Allowed Interests. |

8.    **Special Provision Governing Unimpaired Claims**

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Estate's rights in respect of any Claims that are Unimpaired, including all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Claims that are Unimpaired.  Unless otherwise Allowed, Claims that are Unimpaired shall remain Disputed Claims under the Plan.

9.    **Confirmation Pursuant to §§ 1129(a)(10) and 1129(b) of the Bankruptcy Code**

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of confirmation by acceptance of the Plan by at least one Impaired Class of Claims.  The Plan Proponents shall seek Confirmation of the Plan pursuant to § 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests. The Plan Proponents reserve the right to modify the Plan in accordance with the terms of the Plan to the extent, if any, that confirmation, pursuant to § 1129(b) of the Bankruptcy Code, requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

153129823.4

10.    **Elimination of Vacant Classes; Presumed Acceptance by Non-Voting Classes**

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest, or a Claim or Interest temporarily Allowed by the Bankruptcy Court in an amount greater than zero as of the date of the Confirmation Hearing, shall be considered vacant and deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class, pursuant to § 1129(a)(8) of the Bankruptcy Code.

If a Class contains Claims or Interests eligible to vote and no Holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Holders of such Claims or Interests in such Class shall be presumed to have accepted the Plan.

## IV.    MEANS OF EFFECTUATING THIS PLAN

**A.    Post-Effective Date Management and Dissolution of the Debtor**

The Debtor shall be dissolved, under applicable non-bankruptcy law, on the Effective Date or as soon thereafter as is practicable to accomplish the purposes of this Plan.  The Debtor's interests and rights shall be vested, for all purposes, in the Liquidating Trust.

On the Effective Date, the authority, power, and incumbency of the persons acting as directors and officers of the Debtor shall be deemed to have been resigned, solely in their capacities as such, and the Liquidating Trustee shall be appointed as the sole manager and sole officer of the Debtor and shall succeed to the powers of the Debtor's directors and officers.  From and after the Effective Date, the Liquidating Trustee shall be the sole representative of, and shall act for, the Debtor to the extent necessary to implement and effectuate the terms of this Plan.

The Debtor shall continue in existence solely for the following limited purposes: (i) making any Effective Date payments required under the Plan; (ii) transferring the Debtor's assets to the Liquidating Trust under the terms of this Plan; and (iii) taking all steps to execute all instruments and documents necessary to effectuate the Plan.

JOINT PLAN OF LIQUIDATION (MARCH 22, 2024)

153129823.4

**B.     The Liquidating Trust**

      1.      **Execution of Liquidating Trust Agreement**

Upon entry of a Confirmation Order, a Liquidating Trust Agreement in a form approved by the Bankruptcy Court shall be executed, and all other necessary steps shall be taken to establish the liquidating trust (the "Liquidating Trust") and the Trust Beneficial Interests therein, which shall be for the benefit of all creditors entitled to Trust Beneficial Interests under this Plan.

      2.      **Purposes of the Liquidating Trust**

The Liquidating Trust shall be established and maintained for the purpose set forth in the Liquidating Trust Agreement, including for the purpose of collecting, distributing, and liquidating all of the funds and property assigned to the Liquidating Trust and pursuing claims and Causes of Action assigned to the Liquidating Trust under this Plan for the benefit of the creditors entitled to receive distributions under this Plan from the Liquidating Trust in accordance with the terms of the Liquidating Trust Agreement and this Plan. The Liquidating Trust shall have no objective or authority to continue or to engage in the conduct of any trade or business.

      3.      **Transfer of Property to the Liquidating Trust**

      a)      **Liquidating Trust Assets.**  On the Effective Date, all right, title, and interest of the Debtor and the Estate in property and assets of any kind, other than Effective Date distributions to Holders of Allowed Claims entitled to payment on the Effective Date under the terms of this Plan, shall be deemed irrevocably transferred, absolutely assigned, conveyed, set over and delivered to the Liquidating Trust, in trust to, and in trust for, the benefit of the Trust Beneficiaries for the uses and purposes stated herein and in the Liquidating Trust Agreement, free and clear of any and all liens, claims, encumbrances and interests (legal, beneficial or otherwise) of all other entities to the maximum extent contemplated by and permissible under § 1141(c) of the Bankruptcy Code, except as set forth in the Plan Confirmation Order or this Plan. To the extent that certain assets of the Debtor or the Estate (and its right, title and interest in such assets), because of their nature or because they will accrue subsequent to the Effective Date, cannot be irrevocably transferred, absolutely assigned, conveyed, set over or delivered to the Liquidating Trust on the Effective Date, such assets shall be

JOINT PLAN OF LIQUIDATION (MARCH 22, 2024)

153129823.4

deemed assigned, set over, transferred and conveyed to the Liquidating Trust as soon as practicable after the Effective Date. The Liquidating Trustee is hereby granted the Power of Attorney to execute documents on behalf of the Debtor, as reasonably determined by the Liquidating Trustee (in recordable form where necessary or appropriate) to vest or perfect in or confirm to the Liquidating Trustee title to and possession of the Liquidating Trust Assets. Without limitation, the Liquidating Trust Assets shall include all Cash and Causes of Action of the Estate, less: (i) Effective Date payments to Holders of (a) Allowed Administrative Claims, (b) Allowed Priority Claims. and (c) Allowed Class 1 Secured Claims; and (ii) any funds attributable to a creditor or party in interest that makes a timely challenge by the Fund Challenge Deadline (defined below) concerning the characterization of Post-Petition Funds.

b)      **Fund Challenge Deadline.**  It is Trustee's belief that the Post-Petition Funds have been or will be earned and are such property of the Estate for purposes of 11 U.S.C. § 541, and are not property held in trust for third parties. If any party wishes to dispute the characterization of the Post-Petition Funds as property of the Estate and/or use of the Funds to fund Plan payments, such parties-in-interest must commence an adversary proceeding no later than _____ __, 2024 ("**Fund Challenge Deadline**").  **The Post-Petition Funds attributable to any creditor or party in interest shall be deemed property of the Estate in accordance with the Plan without further order of the Court if such creditor or party in interest does not commence an adversary proceeding disputing the characterization of such Post-Petition Funds by the Fund Challenge Deadline.**

c)      **Ownership Challenge Deadline.**  Certain parties claim an ownership interest in client files, receivables, or other property or assets sold, pursuant to the Sale Order, and that such property or receivables do not constitute property of the Estate for purposes of 11 U.S.C. § 541.  If any party wishes to assert an ownership interest in any Liquidating Trust Assets, such parties-in-interest must commence an adversary proceeding no later than _____ __, 2024 ("**Ownership Challenge Deadline**").  **Parties in interest that do not commence an adversary proceeding by the Ownership Challenge Deadline shall be barred from, and deemed to have waived and**

153129823.4

1 **forfeited, any ownership or similar claim in the Liquidating Trust Assets without further order**

2 **of the Court.**

3          d)    **Transfer Subject to Allowed Secured Claims and Valid, Perfected Liens.**

4 Notwithstanding the transfer of Liquidating Trust Assets to the Liquidating Trust, such transfer shall

5 be subject to any valid, properly perfected Liens of Holders of Allowed Class 1 Secured Claims and

6 the provisions of this Plan concerning distributions to Holders of Allowed Secured Claims.

7          e)    **Transfer Subject to Payments Required by Plan.** Should the Liquidating

8 Trust receive assets prior to satisfaction of all claims required to be paid by the Plan, it shall be liable

9 for and the Liquidating Trustee shall be authorized to make such payments (e.g. Class 2 tax payments)

10 from the Trust.

11          f)    **Substitution in Litigation.**  On or after the Effective Date, the Liquidating

12 Trustee, in the capacity as representative of the Liquidating Trust, shall continue as a plaintiff in all

13 Litigation or Causes of Action (on behalf of beneficiaries of the Liquidating Trust) in which the

14 Debtor, Trustee on behalf of the Estate, or the Committee as the assignee of the Debtor, were plaintiff

15 prior to the Effective Date. On the Effective Date, all claims and Causes of Action including those

16 on the list of Potential Litigation Targets that belong to the Debtor and/or the Estate shall be deemed

17 assigned to the Liquidating Trust for analysis by, and if appropriate pursuit by, the Liquidating

18 Trustee. All recoveries and proceeds arising from litigation and Causes of Action shall be deemed

19 assigned, set over, transferred, and conveyed to the Liquidating Trust upon receipt thereof. All fees

20 and costs of the Liquidating Trust (and agents thereof) arising from or relating to pursuing litigation

21 or Causes of Action or other services performed at the request of the Liquidating Trustee on behalf

22 of the Liquidating Trust shall be paid in accordance with the Liquidating Trust Agreement. On and

23 after the Effective Date the Liquidating Trustee shall be duly authorized to pursue, or to continue to

24 pursue Causes of Action transferred to the Liquidating Trust. Subject to the terms of the Liquidating

25 Trust Agreement, the Liquidating Trustee shall have full power and authority to settle, adjust, retain,

26 enforce, or abandon the Causes of Action transferred to the Liquidating Trust, regardless of whether

27 the pursuit of such claims was commenced prior or subsequent to the Effective Date.

28

JOINT PLAN OF LIQUIDATION (MARCH 22, 2024)

153129823.4

4.      **Securities Exempt**

Under § 1145 of the Bankruptcy Code, the issuance of Trust Beneficial Interests to Trust Beneficiaries, to the extent such Trust Beneficial Interests are deemed to be "securities," shall be exempt from registration under the Securities Act, as amended, and all applicable state and local laws requiring registration of securities. If the Liquidating Trustee determines, with the advice of counsel, that the Liquidating Trust is required to comply with the registration and reporting requirements of the Securities and Exchange Act of 1934, as amended, or the Investment Company Act of 1940, as amended, then the Liquidating Trustee shall take any and all actions to comply with such reporting requirements and file necessary periodic reports with the Securities and Exchange Commission.

5.      **Establishment of the Post-Confirmation Oversight Committee**

Prior to the Effective Date, a committee shall be appointed to serve as the Post-Confirmation Oversight Committee pursuant to the terms of an agreement to be set forth in the Plan Supplement ("Post-Confirmation Oversight Committee Bylaws"). Members of the Post-Confirmation Oversight Committee shall have the duties and oversight responsibilities set forth in the Liquidating Trust Agreement and in the Plan.

6.      **Governance of Liquidating Trust**

The Liquidating Trust shall be governed by the Liquidating Trustee, subject to the oversight of the Post-Confirmation Oversight Committee, in accordance with the Liquidating Trust Agreement and consistent with this Plan.

7.      **Designation of the Liquidating Trustee**

Richard A. Marshack, or any successor appointed pursuant to the terms of the Liquidating Trust Agreement ("Liquidating Trustee"), shall serve as the Liquidating Trustee, subject to the provisions of the Liquidating Trust Agreement. The Liquidating Trustee shall retain and have all the rights, powers, and duties necessary to carry out his or her responsibilities under the Plan and the Liquidating Trust Agreement, and as otherwise provided in the Confirmation Order. The duties, obligations, and responsibilities of the Liquidating Trustee shall be as set forth in the Liquidating Trust Agreement. The Liquidating Trustee's responsibilities, duties and obligations are solely to the

JOINT PLAN OF LIQUIDATION (MARCH 22, 2024)
153129823.4

Trust Beneficiaries. The Liquidating Trustee shall have an independent right and standing to request relief from the Bankruptcy Court that the Liquidating Trustee believes to be in accordance with the best interests of the Trust Beneficiaries. The Liquidating Trustee and Post-Confirmation Oversight Committee shall each be deemed to be a "party in interest" within the meaning of § 1109(b) of the Bankruptcy Code and a representative of the Estate under Bankruptcy Code §§ 1123(b)(3) and 1129(a)(5).

8.   **Rights, Powers, and Privileges of the Liquidating Trustee**

The Liquidating Trustee shall have all of the rights, powers, and privileges of a chapter 11 trustee and as expressly provided in this Plan and the Liquidating Trust Agreement. The Liquidating Trustee shall have the power to take the actions granted in the Liquidating Trust Agreement and any powers reasonably incidental thereto that the Liquidating Trustee, in his reasonable discretion, deems necessary or appropriate to fulfill the purpose of the Liquidating Trust, unless otherwise specifically limited or restricted by this Plan or the Liquidating Trust Agreement. The Liquidating Trustee shall be compensated in accordance with the Liquidating Trust Agreement.

9.   **Agents and Professionals**

Subject to the provisions of the Liquidating Trust Agreement, the Liquidating Trustee shall consult with and retain attorneys, accountants, appraisers, or other parties deemed by the Liquidating Trustee to have qualifications necessary to assist in the proper administration of the Liquidating Trust. The Liquidating Trustee may pay the reasonable salaries, fees, and expenses of such persons, including contingency fees, out of the Liquidating Trust Assets in the ordinary course to the extent permitted in the Liquidating Trust Agreement.

10.   **Investment and Safekeeping of Liquidating Trust Assets**

All monies and other Liquidating Trust Assets received by the Liquidating Trustee shall, until distributed or paid over as provided in the Liquidating Trust Agreement and this Plan, be held in the Liquidating Trust for the benefit of the Trust Beneficiaries, but need not be segregated from other Liquidating Trust Assets, unless and to the extent required by law or this Plan. The Liquidating Trustee shall be under no liability for interest or producing income on any moneys received by the

JOINT PLAN OF LIQUIDATION (MARCH 22, 2024)
153129823.4

Liquidating Trust and held for distribution or payment to the beneficiaries of the Liquidating Trust, except as such interest shall actually be received by the Liquidating Trustee. Investments of any moneys held by the Liquidating Trustee shall be administered in view of the manner in which individuals of ordinary prudence, discretion and judgment would act in the management of their own affairs. For the removal of doubt, the investment powers of the Liquidating Trustee, other than those reasonably necessary to maintain the value of the Liquidating Trust Assets and to further the liquidating purpose of the Liquidating Trust, are limited to powers to invest in demand and time deposits, such as short-term certificates of deposits, in banks or other savings institutions, or other temporary, liquid investments, such as treasury bills.

11.    **Limitations on Liquidating Trustee and Payment of Fees**

The Liquidating Trustee shall not at any time, on behalf of the Liquidating Trust or beneficiaries of the Liquidating Trust: (i) enter into or engage in any trade or business, and no part of the Liquidating Trust Assets or the proceeds, revenue or income therefrom shall be used or disposed of by the Liquidating Trust in furtherance of any trade or business, or (ii) except as provided in the Liquidating Trust Agreement, reinvest any Liquidating Trust Assets. The Liquidating Trustee may invest funds held in the Liquidating Trust consistent with the requirements of the Liquidating Trust Agreement and the prudent person standard of care, provided that the Liquidating Trustee shall have no liability in the event of insolvency of any financial institution in which he/she has invested any funds of the Liquidating Trust to the extent such institution is on the list of approved depositories by the United States Trustee. The Liquidating Trustee shall hold, collect, conserve, protect and administer the Liquidating Trust in accordance with the provisions of the Liquidating Agreement and this Plan, and pay and distribute amounts as set forth herein for the purposes set forth in the Liquidating Trust Agreement.

12.    **Bankruptcy Court Approval of Liquidating Trustee Actions**

Except as provided in this Plan or otherwise specified in the Liquidating Trust Agreement, the Liquidating Trustee need not obtain the approval of the Bankruptcy Court in the exercise of any power, rights, or discretion conferred hereunder or account to the Bankruptcy Court. Subject to the

27

153129823.4

terms of the Liquidating Trust Agreement, the Liquidating Trustee shall have the right to submit to the Bankruptcy Court any question or questions regarding which the Liquidating Trustee may desire to have explicit direction and/or approval of the Bankruptcy Court with respect to the Liquidating Trust Assets, the Liquidating Trust, the Liquidating Trust Agreement, this Plan, or the Debtor. Subject to the terms of the Liquidating Trust Agreement, the Liquidating Trustee also shall have the authority, but not the obligation, to seek Bankruptcy Court approval to sell any Liquidating Trust Assets free and clear of any and all liens, claims and encumbrances.

13.    **Valuation of Liquidating Trust Assets**

The Liquidating Trustee shall make best efforts to understand and apprise the Trust Beneficiaries of the fair market value of the Liquidating Trust Assets upon request. The valuation shall be used consistently by all parties (including the Liquidating Trustee and the Trust Beneficiaries) for all federal income tax purposes. Any dispute regarding the valuation of Liquidating Trust Assets shall be resolved by the Bankruptcy Court.

14.    **Distributions**

The Liquidating Trustee shall serve as the Disbursing Agent with the power, subject to the terms of the Liquidating Trust Agreement, to: (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in a disbursing agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Liquidating Trustee to be necessary and proper to implement the provisions hereof. In his capacity as a disbursing agent, the Liquidating Trustee shall distribute at least annually to the Trust Beneficiaries (in the order set forth in the Plan) all net cash income plus all net cash proceeds from the liquidation of Liquidating Trust Assets; provided, however, that the Liquidating Trustee shall maintain at all times adequate cash or marketable securities as reserves, as may be reasonably necessary to maintain the value of the Liquidating Trust Assets, satisfy projected expenses and meet claims and contingent liabilities of the Liquidating Trust. The Liquidating Trustee may request the Bankruptcy Court resolve any dispute or

153129823.4

to rule upon any inquiry regarding the adequacy of reserves.

15.    **Record Date for Distributions**

On the Distribution Record Date, the Claims Register shall be closed and any party responsible for making distributions shall instead be authorized and entitled to recognize only those record holders listed on the Claims Register as of the close of business on the Distribution Record Date.

16.    **Pro Rata Share of Distributions**

Each of the Trust Beneficiaries shall receive its Pro Rata share of any and all distributions made by the Liquidating Trustee according to the priorities set forth in this Plan. The Liquidating Trustee may withhold from amounts distributable to any beneficiary of the Liquidating Trust any and all amounts, determined in the Liquidating Trustee's reasonable sole discretion to be required by any law, regulation, rule, ruling, directive or other governmental requirement.

17.    **Delivery of Distributions**

All distributions to be made to the Trust Beneficiaries shall be made by the Liquidating Trustee in accordance with the terms of this Plan and Liquidating Trust Agreement.

18.    **Undelivered Property**

Any Trust Beneficiary that fails to claim any Cash within the time specified in the Liquidating Trust Agreement shall forfeit all rights to any distribution under this Plan, and shall not be subject to the unclaimed property or escheat laws of any Governmental Unit. Upon forfeiture, such Cash (including interest thereon) shall be made available for re-distribution to all other Trust Beneficiaries in accordance with the Liquidating Trust Agreement. Trust Beneficiaries who fail to claim Cash shall have no claim whatsoever against the Liquidating Trust or the Liquidating Trustee, as applicable, or any of the other Trust Beneficiaries to whom distributions are made under this Plan on account of such distributions; provided, however, that the Liquidating Trustee may, but is not required to, undertake reasonable efforts, in his business judgment, to locate Trust Beneficiaries whose distributions are returned as undeliverable or whose checks are not timely cashed.

JOINT PLAN OF LIQUIDATION (MARCH 22, 2024)

153129823.4

19.    **De Minimis Distributions**

Treatment of de minimis distributions shall be in accordance with the Liquidating Trust Agreement.

20.    **Payments Limited to Liquidating Trust Assets**

All distributions to be made from the Liquidating Trust to or for the benefit of any Trust Beneficiary shall be made only to the extent that the Liquidating Trustee has sufficient reserves to make such payments in accordance with the Liquidating Trust Agreement and this Plan. Each Trust Beneficiary shall have recourse only to the Liquidating Trust Assets for distribution under the Liquidating Trust Agreement and this Plan.

21.    **Fees and Expenses**

Subject to the limitations set forth in the Liquidating Trust Agreement and in this Plan, the Liquidating Trustee shall pay and/or reserve for the operating and administrative expenses of the Liquidating Trust before approving distributions to or for the benefit of the Trust Beneficiaries. The Liquidating Trustee shall satisfy any fees and expenses of the Liquidating Trust with Liquidating Trust Assets.

22.    **Priority of Distributions**

Any unencumbered recovery by the Liquidating Trust on account of the Liquidating Trust Assets shall be applied in the following order, after making or determining whether reserves should be set aside for any remaining payments required to be made by the Plan:

a.    *First*, to pay and/or reserve for any unpaid or reasonably anticipated costs and expenses of the Liquidating Trust in accordance with the Liquidating Trust Agreement, including, without limitation, reasonable professional fees and expenses and court costs; and

b.    *Second*, distributed to Trust Beneficiaries in accordance with the Liquidating Trust Agreement and this Plan.

23.    **Compliance with Laws**

Any and all distributions of Liquidating Trust Assets shall be in compliance with applicable laws, including, but not limited to, applicable federal and state securities laws.

JOINT PLAN OF LIQUIDATION (MARCH 22, 2024)

153129823.4

24.    **Identification of Beneficiaries of the Liquidating Trust**

Each of the Trust Beneficiaries shall be recorded and set forth in a schedule ("Beneficiary Schedule") maintained by the Liquidating Trustee and based upon the information contained in the Claims Register in accordance with the terms of the Liquidating Trust Agreement.

25.    **Beneficial Interest Only**

The ownership of a Trust Beneficial Interest, shall not entitle any Trust Beneficiary, or other party, to title in or to the Liquidating Trust Assets or to any right to call for a partition or division of such Liquidating Trust Assets or to require an accounting, except as specifically provided in the Liquidating Trust Agreement. Without limiting the generality of the foregoing, the Post-Petition Funds shall be deemed property of the Estate upon expiration of the Fund Challenge Deadline if no challenges are timely made. If any party in interest timely asserts an interest in the Post-Petition Funds by the Fund Challenge Deadline, the Bankruptcy Court shall decide whether such party holds an interest in the Post-Petition Funds.

26.    **Ownership of Beneficial Interests.**

Subject to the requirements and limitations of the Liquidating Trust Agreement, each Trust Beneficiary shall own a Trust Beneficial Interest equal in amount and priority to such Trust Beneficiary's Allowed Claim as set forth in this Plan; provided, however, that distributions on account of such Trust Beneficial Interests may be made on a Pro Rata basis with other Trust Beneficiaries of the same priority as set forth in this Plan.

27.    **Evidence of Beneficial Interest.**

Ownership of a Trust Beneficial Interest shall not be evidenced by any certificate, Security, or receipt or in any other form or manner whatsoever, except as maintained on the books and records of the Liquidating Trust by the Liquidating Trustee.

28.    **Conflicting Claims**

If any conflicting claims or demands are made or asserted with respect to a Trust Beneficial Interest, the Liquidating Trustee shall be entitled, at his sole election, to refuse to comply with any such conflicting claims or demands. In so refusing, and subject to any obligations set forth in the

153129823.4

Liquidating Trust Agreement, the Liquidating Trustee may elect to make no payment or distribution with respect to the Trust Beneficial Interest represented by the claims or demands involved, or any part thereof, and the Liquidating Trustee shall refer such conflicting claims or demands to the Bankruptcy Court, which shall have exclusive jurisdiction over resolution of such conflicting claims or demands. In so doing, the Liquidating Trustee shall not be or become liable to any party for his refusal to comply with any of such conflicting claims or demands. The Liquidating Trustee shall be entitled to refuse to act until either (a) the rights of the adverse claimants have been adjudicated by a final order or (b) all differences have been resolved by a written agreement among all of such parties and the Liquidating Trustee, which agreement shall include a complete release of the Liquidating Trust and the Liquidating Trustee, his agents or his professionals (the occurrence of either (a) or (b) being referred to as a "Dispute Resolution" in this paragraph). Until a Dispute Resolution is reached with respect to such conflicting claims or demands, the Liquidating Trustee shall hold in a segregated interest-bearing account with a United States financial institution any payments or distributions from the Liquidating Trust to be made with respect to the Trust Beneficial Interest at issue. Promptly after a Dispute Resolution is reached, the Liquidating Trustee shall transfer the payments and distributions, if any, held in the segregated account, together with any interest and income generated thereon, in accordance with the terms of such Dispute Resolution.

29. **Limitation on Transferability**

Trust Beneficial Interests shall not be assignable, other than by operation of law.

30. **Parties Dealing with the Liquidating Trustee**

In the absence of actual knowledge to the contrary, any person dealing with the Liquidating Trust or the Liquidating Trustee shall be entitled to rely on the authority of the Liquidating Trustee or any of the Liquidating Trustee's agents or professionals to act in connection with the Liquidating Trust Assets. No person or entity dealing with the Liquidating Trustee shall have any obligation to inquire into the validity, expediency, or propriety of any transaction by the Liquidating Trustee or any agent or professional of the Liquidating Trustee.

JOINT PLAN OF LIQUIDATION (MARCH 22, 2024)

153129823.4

31.    **Liquidating Trustee and Post-Confirmation Oversight Committee's Exculpation, Indemnification, Insurance and Liability Limitation**

The Liquidating Trustee, Post-Confirmation Oversight Committee, and each of their respective agents, employees, professionals, attorneys, accountants, advisors and representatives retained by the Plan (collectively, "Liquidating Trust Indemnified Parties") shall be deemed exculpated and indemnified and held harmless in all respects by the Liquidating Trust and the Estate, to the fullest extent permitted by law, solely from the Liquidating Trust Assets for any losses, claims, damages, liabilities and expenses, including, without limitation, reasonable attorneys' fees, disbursements and related expenses that the Liquidating Trust Indemnified Parties may incur or to which the Liquidating Trust Indemnified Parties may become subject in connection with any action, suit, proceeding or investigation brought or threatened against one or more of the Liquidating Trust Indemnified Parties on account of the acts or omissions of an Liquidating Trust Indemnified Party solely in its capacity as such; provided, however, that the Liquidating Trust shall not be liable to indemnify any Liquidating Trust Indemnified Party for any act or omission constituting bad faith, fraud or willful misconduct by such Liquidating Trust Indemnified Party. Notwithstanding any provision herein to the contrary, the Liquidating Trust Indemnified Parties shall be entitled to obtain advances from the Liquidating Trust to cover their reasonable expenses of defending themselves in any action brought against them as a result of the acts or omissions, actual or alleged, of a Liquidating Trust Indemnified Party in its capacity as such. The foregoing indemnity in respect of any Liquidating Trust Indemnified Party shall survive the termination of such Liquidating Trust Indemnified Party from the capacity for which it is indemnified.

The Liquidating Trustee may obtain, at the expense of the Liquidating Trust and Estate commercially reasonable liability or other appropriate insurance with respect to the indemnification obligations of the Liquidating Trust Indemnified Parties. On and after the Effective Date, the Liquidating Trustee shall be authorized to purchase D&O Liability Insurance Policies for the benefit of any Liquidating Trust Indemnified Party in the ordinary course of business.

JOINT PLAN OF LIQUIDATION (MARCH 22, 2024)

153129823.4

32. **Injunctions and Releases**

The automatic stay is lifted upon the Effective Date as to property of the bankruptcy Estate but such property will be transferred to the Liquidating Trust free and clear of liens, claims, and interests except as otherwise provided in the Plan. However, as of the Effective Date and subject to the terms of the Plan, the Confirmation Order shall enjoin the prosecution, whether directly, derivatively or otherwise, of any claim, obligation, suit, judgment, damage, demand, debt, right, cause of action, liability or interest released, discharged, terminated, or otherwise treated pursuant to this Plan.

Except as provided in this Plan or the Confirmation Order, as of the Effective Date, all entities that have held, currently hold or may hold a Claim or other debt or liability that is provided for under this Plan or an Interest or other right of a creditor or equity security holder that is extinguished, pursuant to the terms of this Plan, are permanently enjoined from taking any of the following actions against the Debtor, the Plan Proponents, the Liquidating Trust, the Liquidating Trustee, the Post-Confirmation Oversight Committee, their property, and, except with respect to the Debtor, each of their respective agents, employees, professionals, attorneys, accountants, advisors and representatives, on account of any such discharged claims, debts or liabilities or extinguished interests or rights: (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting or enforcing any lien or encumbrance; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtor; and (v) commencing or continuing any action in any manner, in any place, that does not comply with or is inconsistent with the provisions of this Plan.

By accepting distribution pursuant to the Plan, each Holder of an Allowed Claim receiving distributions, pursuant to the Plan, will be deemed to have specifically consented to the injunctions set forth in this Section of the Plan, and the jurisdiction of the Bankruptcy Court.

33. **Terms of Service of the Liquidating Trustee.**

The terms of service of the Liquidating Trustee, including the conditions of resignation and

JOINT PLAN OF LIQUIDATION (MARCH 22, 2024)

153129823.4

1  removal, shall be as set forth in the Liquidating Trust Agreement.

2        34.    **Appointment of Successor Liquidating Trustee**

3        The terms of the appointment of an interim or successor Liquidating Trustee, including their

4  respective rights and duties, shall be as set forth in the Liquidating Trust Agreement.

5        35.    **Annual Reporting and Filing Requirements**

6        The Liquidating Trustee shall file tax returns for the Liquidating Trust as a grantor trust,

7  pursuant to § 1.671-4(a) of the Treasury Regulations and any other applicable laws or regulations,

8  and shall furnish information statements to Trust Beneficiaries setting forth their allocable share of

9  the income, loss, deduction or credit of the Liquidating Trust and instruct them to report such items

10  on their federal income tax returns. The Liquidating Trustee may withhold from amounts distributable

11  to any Trust Beneficiary any and all amounts, determined in the Liquidating Trustee's reasonable

12  sole discretion, to be required by any law, regulation, rule, ruling, directive or other governmental

13  requirement. The Liquidating Trustee shall have the right to employ an accountant and any other

14  professionals needed to assist the Liquidating Trustee for this purpose. The tax returns filed by the

15  Liquidating Trustee shall report all Liquidating Trust earnings for the taxable year being reported.

16  All of the Liquidating Trust's income shall be treated as subject to tax on a current basis. For federal

17  income tax purposes, items of income, gain, loss, and deduction of the Liquidating Trust will be

18  allocated to Trust Beneficiaries in a manner, to be determined by the Liquidating Trustee, that is

19  consistent with applicable Treasury Regulations and that reflects the  respective contributions Trust

20  Beneficiaries and their respective interests in the interim and final distributions to be made by the

21  Liquidating Trust, and such Trust Beneficiaries shall be responsible for the payment of taxes on a

22  current basis that result from such allocations.

23        36.    **Confidentiality**

24        The Liquidating Trustee shall hold strictly confidential and not use for personal gain any

25  material, non-public information of or pertaining to any entity to which any of the Liquidating Trust

26  Assets relate or of which he (or she as the case may be) becomes aware in his capacity as Liquidating

27  Trustee.

28

153129823.4

37.    **Maintenance of Records**

The Liquidating Trustee shall maintain books and records containing a description of all property from time to time constituting the Liquidating Trust Assets and an accounting of all receipts and disbursements. Upon sixty (60) days' prior written notice delivered to the Liquidating Trustee, such books and records shall be open to inspection by any beneficiary of the Liquidating Trust at any reasonable time during normal business hours; provided that, if so requested, such Trust Beneficiary shall have entered into a confidentiality agreement satisfactory in form and substance to the Liquidating Trustee. The Liquidating Trustee shall furnish to any Trust Beneficiary, upon written request, an annual statement of receipts and disbursements of the Liquidating Trust. Such books and records may be destroyed without further notice to parties or approval of the Bankruptcy Court upon the earlier of five (5) years after the final report to the Bankruptcy Court has been rendered by the Liquidating Trustee or one year after the funds held by the Liqidating Trust have been substantially distributed (unless such records and documents are necessary to fulfill any remaining obligations of the Liquidating Trustee pursuant to the Liquidating Trust Agreement).

38.    **Duration and Termination of the Liquidating Trust**

The Liquidating Trust shall become effective upon the Effective Date of this Plan, pursuant to the terms of the Liquidating Trust Agreement. Thereupon, the Liquidating Trust shall remain and continue in full force and effect until the Liquidating Trust is terminated in accordance with the provisions of the Liquidating Trust Agreement and this Plan.

39.    **Preservation of Privilege.**

In connection with the rights, claims, and causes of action that constitute the Liquidating Trust Assets, any attorney-client privilege, work product privilege, or other privilege or immunity attaching to any documents or communications (whether written or oral) transferred to the Liquidating Trust, pursuant to the terms of this Plan or otherwise shall vest in the Liquidating Trust and be subject to the control of the Liquidating Trustee. The Trustee is authorized to take all necessary actions to effectuate the transfer of such privileges from the Estate to the Liquidation Trust, as necessary.

153129823.4

40.     **No Bond**

Notwithstanding, any state law to the contrary, the Liquidating Trustee shall be exempt from giving any bond or other security in any jurisdiction.

41.     **No Execution**

All Liquidating Trust Assets shall be deemed *in custodia legis* until such times as the Liquidating Trust Assets has actually been paid to or for the benefit of a beneficiary of the Liquidating Trust, and no Trust Beneficiary or any other person can execute upon, garnish or attach the Liquidating Trust Assets or the Liquidating Trust in any manner or compel payment from the Liquidating Trust except by an order of the Bankruptcy Court that becomes a Final Order. Payment will be solely governed by the Liquidating Trust Agreement and this Plan.

42.     **Intention to Establish Grantor Trust**

The Liquidating Trust Agreement is intended to create a grantor trust for United States federal income tax purposes and, to the extent provided by law, shall be governed and construed in all respects as such a grantor trust.

43.     **Amendment of the Liquidating Trust Agreement**

The Liquidating Trust Agreement may be amended at any time, pursuant to the terms of the Liquidating Trust Agreement.

**C.    Effective Date Distributions to Be Made by Trustee**

On the Effective Date, the Trustee will pay all Effective Date payments to Holders of (i) Allowed Administrative Claims, (ii) Allowed Priority Claims. and (iii) Allowed Class 1 Secured Claims.  The Trustee shall also reserve, for subsequent determination by the Liquidating Trustee, any Post-Petition Funds attributable to a creditor or party in interest that makes a timely challenge by the Fund Challenge Deadline. After making such Effective Date payments and Post-Petition Fund reserves, Trustee shall transfer the remaining Estate property to the Liquidating Trust in the manner directed by the Liquidating Trustee.

**D.    Settlement Agreements**

Any settlement effectuated prior to the confirmation of this Plan, upon notice thereof to the

Bankruptcy Court and entry of a Final Order approving such settlement, shall be deemed incorporated into this Plan and the Confirmation Order including provisions of such settlement that shall be deemed a settlement pursuant to § 1123(b)(3)(A) of the Bankruptcy Code.

**E.    Claims Administration and Prosecution and Plan Distributions**

The Liquidating Trustee shall have the power and authority to prosecute and resolve objections to Disputed Claims as set forth in the Liquidating Trust Agreement. The Liquidating Trust shall retain all defenses, rights of setoff, recoupment, and counterclaims with respect to each of the foregoing, including but not limited to those as defined as Causes of Action. The Liquidating Trust shall also hold, manage, and distribute Plan distributions to the Holders of Allowed Claims consistent with this Plan and the Liquidating Trust Agreement.

The Court shall retain jurisdiction over any objections to claims brought by the Liquidating Trust following the Effective Date. Nothing contained in the Plan shall constitute a waiver or release by the Liquidating Trust of any rights of setoff or recoupment, or of any defense, a creditor may have with respect to any Claim. The Liquidating Trust may withhold from property to be distributed under the Plan and will place in reserve a sufficient amount of cash to be distributed on account of claims that are Disputed and have not been allowed as of the date of distribution to creditors of any particular Class as if such Claims were allowed in full.

**F.    Books and Records of the Debtor**

Unless applicable non-bankruptcy law permits the distribution or destruction of certain of the Debtor's business records at an earlier date, or the Debtor or the Liquidating Trust obtains an order of the Bankruptcy Court providing otherwise, subject to the terms and conditions of the Liquidating Trust Agreement governing the books and records of the Liquidating Trust, the Liquidating Trustee shall have the responsibility of storing and maintaining the Debtor's books and records until one year after the Effective Date, after which time such books and records may be abandoned or destroyed without further Bankruptcy Court order, unless applicable non-bankruptcy law requires the retention and maintenance of any such books and records for a longer period, in which instance the Liquidating Trustee shall retain such books and records for at least the minimum period required by applicable

JOINT PLAN OF LIQUIDATION (MARCH 22, 2024)

153129823.4

non-bankruptcy law. For purposes of this Section of the Plan, books and records include computer generated or computer-maintained books and records and computer data, as well as electronically generated or maintained books and records or data, along with books and records of the Debtor maintained by or in possession of third parties and all of the clams and rights of the Debtor and in and to its books and records, wherever located.

## G.    Corporate Action

Upon the Effective Date, all actions contemplated under the Plan, regardless of whether taken before, on or after the Effective Date, shall be deemed authorized and approved in all respects.  All matters provided for in the Plan or deemed necessary or desirable by the Plan Proponents or the Liquidating Trustee before, on, or after the Effective Date involving the corporate structure of the Debtor or Liquidating Trust, and any corporate action required by the Debtor or the Liquidating Trust in connection with the Plan or corporate structure of the Debtor or Liquidating Trust, shall be deemed to have occurred and shall be in effect on the Effective Date, without any requirement of further action by Holders of Interests, directors, managers, members or officers of the Debtor.  Before, on, or after the Effective Date, the Liquidating Trustee, on behalf of the Liquidating Trust, the Debtor and the Estate, as applicable, shall be authorized to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated under the Plan (or necessary or desirable to effect the transactions contemplated under the Plan) in the name of and on behalf of the Liquidating Trust, the  Debtor and the Estate, as applicable. The authorizations and approvals contemplated by this Section of the Plan shall be effective notwithstanding any requirements under non-bankruptcy law.

## H.    Effectuating Documents and Further Transactions

On and after the Effective Date, the Liquidating Trustee is authorized to and may issue, execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement and further evidence the terms and conditions of this Plan and the Liquidating Trust Agreement in the name of and on behalf of the Debtor, the Liquidating Trust and Estate, as applicable, without the need for any approvals, authorizations, or consents except for those expressly required pursuant to the Plan.

153129823.4

**I.      Procedures for Disputed, Contingent, or Unliquidated Claims**

      1.      **Objections to Claims.**

The Liquidating Trustee shall be entitled to object to any and all Claims against the Estate, subject to the time limitations set forth in this Plan.

      2.      **No Distribution Pending Allowance of Claims.**

Notwithstanding any other provision of this Plan, if any portion of a Claim is a Disputed Claim, no payment or distribution provided under this Plan shall be made on account of such Disputed Claim unless and until such Disputed Claim becomes an Allowed Claim.

      3.      **Distributions Upon Allowance of Disputed Claims.**

The Holder of a Disputed Claim that becomes an Allowed Claim shall receive a distribution(s) in Cash, subject to the terms of this Plan and the Liquidating Trust Agreement. Such distributions shall be made in accordance with this Plan based upon the distributions that would have been made to such Holder under this Plan if the Disputed Claim had been an Allowed Claim on or prior to the Effective Date. No Holder of a Disputed Claim shall have any claim against the Liquidating Trust Assets with respect to such Disputed Claim until such Disputed Claim becomes an Allowed Claim, and no Holder of a Disputed Claim shall have any right to interest on such Disputed Claim unless otherwise provided in the Plan.

      4.      **Resolution of Disputed Claims.**

Unless otherwise ordered by the Bankruptcy Court after notice and a hearing and subject to the terms of the Liquidating Trust Agreement, following the Effective Date, the Liquidating Trustee shall have the right to the exclusion of all others (except as to applications for allowances of compensation and reimbursement of expenses under §§ 328(a), 330, and 503 of the Bankruptcy Code) to make and file objections to claims and shall serve a copy of each objection upon the Holder of the Claim to which the objection is made as soon as practicable, but in no event later than two hundred and seventy (270) days after the Effective Date (subject, however, to the right of the Liquidating Trustee to seek an extension of time to file such objections by seeking such extension with approval from the Bankruptcy Court). After the expiration of the 270-day period for the Liquidating Trustee

to file objections to claims (and the expiration of any extended period requested and granted by the Liquidating Trustee), and the final resolution of any then-pending claims objections, all creditor claims shall be deemed fixed.

       5.    **Estimation.**

       The Liquidating Trustee may at any time request that the Bankruptcy Court estimate any contingent, unliquidated or disputed Claim pursuant to § 502(c) of the Bankruptcy Code regardless of whether the Debtor of the Liquidating Trust previously objected to such Claim, and the Bankruptcy Court shall retain jurisdiction to estimate any claim at any time during litigation concerning any objection to any claim, including, without limitation, during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent, unliquidated or disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Liquidating Trustee may pursue supplementary proceedings to object to the allowance of such Claim. All of the aforementioned objection, estimation and resolution procedures are intended to be cumulative and not exclusive of one another. On and after the Effective Date, Claims that have been estimated may be compromised, settled, withdrawn or otherwise resolved subsequently, without further order of the Bankruptcy Court.

**J.**    **Distributions to Be Made Pursuant to the Plan**

       Distributions under the Plan on Claims that are Allowed on the Effective Date will be made by the Trustee in the manner provided by the Plan. The Liquidating Trust Agreement will govern the procedures for distributions made from the Liquidating Trust pursuant to the Plan.

       Distributions made by the Trustee under the Plan may be made by check drawn on a domestic bank or by wire transfer.  Except as otherwise agreed to by the Trustee in writing, distributions to be made to Holders of Claims Allowed on or before the Effective Date, pursuant to this Plan, may be delivered by regular mail, postage prepaid, to the address shown in the Debtor's schedules, as amended or, if a different address is stated in a Proof of Claim filed with the Bankruptcy Court, to

JOINT PLAN OF LIQUIDATION (MARCH 22, 2024)

153129823.4

such address. The Trustee may also make distributions to consumer clients by electronic means if he determines that doing so is more reliable than other methods for making payment.

Checks issued by the Trustee to pay Allowed Claims shall be null and void if not negotiated within ninety (90) days after the date of issuance thereof ("Claiming Period"). Requests for reissuance of any check shall be made to the Trustee by the Holder of the Allowed Claim to whom such check originally was issued, prior to the expiration of the Claiming Period. After such date, the unclaimed property held on account of such voided check or such claim shall vest in the Liquidating Trust free and clear of all claims and interests and be applied in accordance with the terms of the Plan.

**K.    Conditions Precedent to Confirmation and the Effective Date of the Plan**

1.    <u>Conditions Precedent to Confirmation of the Plan</u>

a)    The Plan Supplement and all of the schedules, documents, and exhibits contained therein shall have been Filed in form and substance acceptable to the Plan Proponents; and

b)    The Bankruptcy Court shall have entered a Confirmation Order with respect to the Plan in form and substance acceptable to the Plan Proponents.

2.    <u>Conditions Precedent to the Effective Date</u>

The Effective Date shall be the first business day that is 14 days after satisfaction (or waiver pursuant to the provisions of Section IV.K.3) of all of the following conditions:

a)    The Bankruptcy Court shall have entered the Confirmation Order, which Confirmation Order shall not have been terminated, suspended, vacated or stayed, shall not have been amended except with the consent of the Plan Proponents, and shall:

(i)    authorize the Trustee and Liquidating Trustee to take all actions necessary to enter into, implement, and consummate the contracts, instruments, releases, leases, indentures, and other agreements or documents created in connection with the Plan;

(ii)    decree that the provisions of the Confirmation Order and the Plan are nonseverable and mutually dependent;

(iii)    authorize the Trustee and Liquidating Trustee, as applicable or necessary, to the extent not previously authorized by the Sale Order, to: (a) make all distributions

153129823.4

required under the Plan; and (b) enter into any agreements, transactions, and sales of property as set forth in the Plan Supplement;

        (iv)    authorize the implementation of the Plan and Liquidating Trust Agreement in accordance with their terms; and

        (v)    provide that, pursuant to § 1146 of the Bankruptcy Code, the assignment or surrender of any lease or sublease, and the delivery of any deed or other instrument or transfer order, in furtherance of, or in connection with the Plan, including any deeds, bills of sale, or assignments executed in connection with any disposition or transfer of assets contemplated under the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax;

        b)    Sufficient Funds being available in the Estate to pay claims that must be paid on the Effective Date including Allowed Administrative Claims and Allowed Priority Claims;

        c)    The funding of the reserve for claimants submitting challenges to the characterization of the Post-Petition Funds by the Fund Challenge Deadline;

        d)    Sufficient funds being available in the Estate to fund the operations of the Liquidating Trust as reasonably determined by the Plan Proponents;

        e)    the Trustee shall have obtained all authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the Plan; and

        f)    the final version of the Plan Supplement and all of the schedules, documents, and exhibits contained therein shall have been Filed in a manner consistent in all material respects with the Plan and shall be in form and substance acceptable to the Plan Proponents.

    3.    <u>Waiver of Conditions</u>

    The conditions to Confirmation and to the Effective Date set forth in above may be waived by the Plan Proponents , without notice, leave, or order of the Bankruptcy Court or any formal action other than proceeding to confirm or consummate the Plan.

    4.    <u>Effect of Failure of Conditions</u>

    If Confirmation of the Plan does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall: (1) constitute a waiver or release of

any Claims by the Trustee, Estate, the Committee, any Holders, or any other Entity; (2) prejudice in any manner the rights of the Trustee, Estate, the Committee, any Holders, or any other Entity; or (3) constitute an admission, acknowledgment, offer or undertaking by the Trustee, Estate, the Committee, any Holders, or any other Entity in any respect. Notwithstanding the foregoing, the failure of Confirmation to occur shall not require or result in the voiding, rescission, reversal, or unwinding of the Sale Order.

**L.      Executory Contracts and Unexpired Leases**

Any executory contracts or unexpired leases (i) which have not expired by their own terms on or prior to the Effective Date, or (ii) which have not been assumed or assigned or rejected with the approval of the Court or pursuant to procedure established by order of the Court shall be deemed rejected by the Estate on the Effective Date. A schedule of all executory contracts and/or unexpired leases to be assumed/rejected upon confirmation of the Plan shall be included as a Plan Supplement.

The entry of the Confirmation Order by the Court shall constitute approval of such assumption and/or rejection as appropriate pursuant to 11 U.S.C. §§ 365(a) and 1123(b)(2).

Unless otherwise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases pursuant to the Plan or the Confirmation Order, if any, must be filed with the Bankruptcy Court within thirty (30) days after the later of (1) the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection, (2) the effective date of such rejection (or deemed rejection), or (3) the Effective Date. Any Claims arising from the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan or Confirmation Order not filed with the Bankruptcy Court within such time will be automatically Disallowed, forever barred from assertion, and shall not be enforceable against the Debtor, the Liquidating Trust and the Estate, or their property without the need for any objection by the Liquidating Trustee or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied and released, notwithstanding anything in the Schedules or a Proof of Claim to the contrary. For the avoidance of doubt, nothing provided

153129823.4

herein shall extend or modify any previously established deadline to file a claim arising from the rejection of an Executory Contract or Unexpired Lease previously rejected by the Liquidating Trustee or the Debtor. To the extent any Claims are filed based on rejection of executory contracts or unexpired leases, such Claims shall be treated as a General Unsecured Claims in Class 3A of this Plan.

**M.      Cure of Defaults for Executory Contracts and Unexpired Leases Assumed (or Assumed and Assigned)**

Any cure obligations under each Executory Contract and Unexpired Lease to be assumed (or assumed and assigned) pursuant to the Plan shall be satisfied, pursuant to § 365(b)(1) of the Bankruptcy Code, by performance or payment of the default amount in Cash on or after the Effective Date, subject to the limitation described below, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree. In the event of a dispute regarding (1) the cure obligation, (2) the ability of the Debtor, the Liquidating Trustee or any assignee to provide "adequate assurance of future performance" (within the meaning of § 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed (or assumed and assigned), or (3) any other matter pertaining to assumption (or assumption and assignment) or the cure obligations required by § 365(b)(1) of the Bankruptcy Code, such dispute shall be determined either (x) by agreement of the parties to such dispute or (y) following the entry of a Final Order or orders resolving the dispute and approving the assumption (or assumption and assignment).

At least fourteen (14) days prior to the Confirmation Hearing, and except as to any Executory Contracts or Unexpired Leases that have been assumed or rejected by a separate order of the Court, the Liquidating Trustee shall distribute, or cause to be distributed to the applicable counterparties and their known counsel, notices of proposed assumption (or assumption and assignment), proposed cure, procedures for objecting thereto, and procedures for resolution by the Bankruptcy Court of any related disputes. Any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption (or assumption and assignment) or related cure amount must be filed, served, and actually received by the Debtors at least three (3) days prior to the Confirmation Hearing. Any counterparty

153129823.4

to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption (or assumption and assignment) or cure amount will be deemed to have assented to such assumption (or assumption and assignment) or cure. To the extent that the Liquidating Trustee seek to assume (or assume and assign) an Executory Contract or Unexpired Lease pursuant to the Plan, the Liquidating Trustee will (in the applicable notice and/or Schedule): (a) identify the assignee; and (b) provide "adequate assurance of future performance" (within the meaning of § 365 of the Bankruptcy Code) under the applicable Executory Contract or Unexpired Lease to be assumed (or assumed and assigned), which adequate assurance information will be provided with the notices of proposed assumption (or assumption and assignment).

Subject to cure or adequate assurance of prompt cure, as set forth in § 365(b) of the Bankruptcy Code, assumption (or assumption and assignment) of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Cure Obligations or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed (or assumed and assigned) Executory Contract or Unexpired Lease at any time prior to the effective date of assumption (or assumption and assignment). Subject to full satisfaction of Cure Obligations, any Proofs of Claim filed with respect to an Executory Contract or Unexpired Lease that has been assumed (or assumed and assigned) shall be deemed Disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court.

The Trustee or the Liquidating Trustee may settle any Cure Claim dispute without any further notice to or action, order, or approval of the Bankruptcy Court; provided that notice of such settlement will be distributed to known counsel of the applicable counterparty by electronic mail.

**N.    Preexisting Obligations to the Debtors under Executory Contracts and Unexpired Leases.**

Rejection of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtor or the Estate, as

153129823.4

applicable, under such Executory Contracts or Unexpired Leases. In particular, notwithstanding any non-bankruptcy law to the contrary, the Liquidating Trustee expressly reserves and does not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations on goods or services previously purchased by the Debtor contracting from non-debtor counterparties to rejected Executory Contracts or Unexpired Leases.

**O.    Retention of Jurisdiction**

After confirmation of this Plan and occurrence of the Effective Date, in addition to any jurisdiction which exists in any other court, the Bankruptcy Court will retain such jurisdiction as is legally permissible including for the following purposes:

i.    To resolve any and all disputes regarding the operation, interpretation , or enforcement of this Plan (including Plan Supplements), Confirmation Order, and Liquidating Trust Agreement;

ii.    To determine the allowability, classification, or priority of Claims upon objection by the Trustee, the Liquidating Trustee, or any other parties in interest with standing to bring such objection or proceeding and to consider any objection to claim whether such objection is filed before or after the Effective Date;

iii.    To determine the extent, validity, perfection, and priority of any Lien asserted against property of the Debtor, property of the Debtor's Estate, and property of the Liquidating Trust;

iv.    To construe and take any action to enforce this Plan, the Plan Confirmation Order, and any other order of the Bankruptcy Court, issue such orders as may be necessary for the implementation, execution, performance, and consummation of this Plan and the Confirmation Order, and all matters referred to in this Plan and the Plan Confirmation Order, and to determine all matters that may be pending before the Bankruptcy Court in this case on or before the Effective Date with respect to any person or entity related thereto;

v.    To determine (to the extent necessary) any and all applications for allowance of compensation and reimbursement of expenses of professionals for the period on or before the Effective Date;

vi.    To determine any request for payment of administrative expenses of the Estate;

JOINT PLAN OF LIQUIDATION (MARCH 22, 2024)

153129823.4

vii.     To determine motions for the rejection, assumption, or assignment of executory contracts or unexpired leases filed before the Effective Date and the allowance of any claims resulting therefrom;

viii.    To determine all applications, motions, adversary proceedings, contested matters, and any other litigated matters instituted during the pendency of the Bankruptcy Case, whether before, on, or after the Effective Date including Causes of Action, and the Retained Actions. The Liquidating Trustee shall have the right and standing to commence any Causes of Action after the Effective Date and to continue with the prosecution of any Causes of Action commenced by the Debtor prior to the Effective Date including, without limitation, the Retained Actions;

ix.     To determine such other matters and for such other purposes as may be provided in the Plan Confirmation Order;

x.      To modify this Plan, under § 1127 of the Bankruptcy Code, in order to remedy any apparent defect or omission in this Plan or to reconcile any inconsistency in this Plan so as to carry out its intent and purpose;

xi.     Except as otherwise provided in this Plan or the Plan Confirmation Order, to issue injunctions, to take such other actions or make such other orders as may be necessary or appropriate to restrain interference with this Plan or the Confirmation Order, or the execution or implementation by any person or entity of this Plan or the Confirmation Order;

xii.    To issue such orders in aid of consummation of this Plan or the Confirmation Order, notwithstanding any otherwise applicable nonbankruptcy law, with respect to any person or entity, to the fullest extent authorized by the Bankruptcy Code or Bankruptcy Rules; and

xiii.   To enter a final decree closing this Bankruptcy Case.

xiv.    To interpret and enforce the terms of the Plan, the Plan Supplement, the Confirmation Order, the Liquidating Trust Agreement, and such other pleadings, documents and exhibits related to the Plan.

xv.     To determine such other matters and for such other purposes as may be provided in the Confirmation Order.

48

153129823.4

**P.    Reservation of Rights**

Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the Assumed Executory Contracts and Unexpired Leases Schedule, nor anything contained in the Plan, shall constitute an admission by the Plan Proponents or the Liquidating Trustee that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Debtor or the Estate has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Plan Proponents or the Liquidating Trustee shall have thirty (30) days following entry of a Final Order resolving such dispute to alter its treatment of such contract or lease under the Plan.

V.    EFFECT OF CONFIRMATION OF THIS PLAN

**A.    Discharge**

The Debtor will not receive a discharge under this Plan pursuant to and in accordance with the provisions of § 1141 of the Bankruptcy Code because this Plan contemplates and will result in a sale or liquidation of all or substantially all of the property of the Debtor's Estate.

**B.    No Revesting of Estate Property in the Debtor**

All Property of the Estate will remain Property of the Estate and/or the Liquidating Trust free and clear of all claims and interests except as provided in the Plan. No Estate assets shall revert to the Debtor as a result of confirmation. The Liquidating Trustee shall be the entity responsible for carrying out the terms of the Plan and to comply with any orders of the Court regarding the Plan or the assets of the Estate, subject to the terms of the Liquidating Trust Agreement and the Confirmation Order.

**C.    No Liability for Solicitation or Participation**

As specified in § 1125(e) of the Bankruptcy Code, persons that solicit acceptances or rejections of the Plan and/or that participate in the offer, issuance, sale, or purchase of securities offered or sold under the Plan, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, shall not be liable on account of such solicitation or participation, for violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the offer, issuance, sale, or purchase of securities.

**D.      Exculpation; Limitation of Liability**

To the maximum extent permitted by law, neither the Trustee, the Liquidating Trustee, the Estate, the Committee, the Post-Confirmation Oversight Committee, nor any of their employees, officers, directors, shareholders, agents, members, representatives, or the professionals employed or retained by any of them, whether or not by Court order shall have or incur liability to any person or entity for an act taken or omission made in good faith in connection with or related to the formulation and implementation of the Plan, the Disclosure Statement, or a contract, instrument, release, or other agreement or document created in connection therewith, the solicitation of acceptances for or confirmation of the Plan, or the consummation and implementation of the Plan and the transactions contemplated therein. Each of the exculpated persons set forth in this Section of the Plan shall in all respects be entitled to reasonably rely on the advice of counsel with respect to its duties and responsibilities under the Plan. Notwithstanding the foregoing, nothing contained in this Plan shall effectuate an exculpation, release, or injunction in favor of the Debtor's employees, officers, directors, shareholders, agents, members, representatives, Affiliates, alter egos, or the professionals employed or retained by any of them, and all rights and Causes of Action held by the Estate against any of the foregoing are expressly preserved by this Plan.

**E.      Preservation of all Litigation and Causes of Action**

After confirmation of the Plan, the Liquidating Trust shall retain all rights to continue, commence and pursue, as appropriate, any and all claims or Causes of Action, including those identified in the Plan Supplement, and objections to Claims, whether arising before or after the date on which the Debtor filed its petition, in any court or other tribunal including, without limitation, in an adversary proceeding filed in the Bankruptcy Case. The failure to list any potential or existing claims or causes of action shall not limit the rights of the Liquidating Trustee to pursue any claims or causes of action not listed or identified. After the Effective Date, the Liquidating Trustee shall have the absolute authority to prosecute, waive, adjust, or settle any and claims, including all Causes of Action, without the need for approval by the Court, subject to the terms of the Liquidating Trust Agreement.

JOINT PLAN OF LIQUIDATION (MARCH 22, 2024)

153129823.4

Unless a claim or Cause of Action against a creditor or other entity is expressly waived, relinquished, released, compromised, or settled in the Plan or any other Final Order of the Court, the Estate expressly reserves such claim or Cause of Action for later adjudication (including, without limitation, claims and causes of action not specifically identified or which the Debtor or its Estate may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to the Plan Proponents, or the Estate at this time or facts or circumstances which may change or be different from those which the Plan Proponents or the Estate now believe to exist). No preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or otherwise) or laches shall apply to such claims, or Causes of Action upon or after the confirmation or consummation of the Plan based on the Disclosure Statement, the Confirmation Order, except where such claims and Causes of Action have been explicitly released in the Plan. In addition, the Liquidating Trust, and the Estate expressly reserve the right to pursue or adopt any claims alleged in any lawsuit in which the Debtor is a defendant or an interested party, against any person or entity, including without limitation, the plaintiff or co-defendant in such lawsuits.

Delivery (by any means) of the Plan or the Disclosure Statement approved by the Court to any person whom the Debtor and/or Estate has incurred an obligation, or who has received a transfer of money or property of the Debtor, or who has transacted business with the Debtor or the Estate shall constitute actual notice that such obligation, transfer, or transaction may be reviewed by the Trustee subsequent to the approval by the Court of the Plan and may, if appropriate, be the subject of an action after the approval by the Court of the Plan, whether or not (i) such person has field a proof of claim in this Case; (ii) such person's proof of claim has been the subject of an objection; (iii) such person's claim was included in the schedules; or (iv) such person's scheduled claim has been identified by the Trustee as disputed, contingent, or unliquidated.

### F.    Modification of this Plan.

The Plan Proponents may modify this Plan at any time before confirmation. However, the Bankruptcy Court may require a new disclosure statement and/or re-voting on this Plan if the Plan

153129823.4

Proponents materially modifies this Plan before confirmation. The Liquidating Trustee may seek to modify this Plan at any time after confirmation of this Plan so long as (1) this Plan has not been substantially consummated, (2) such modification is approved by the Post-Confirmation Oversight Committee, or (3) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

**G.    Post-Confirmation Status Reports.**

Within 120 days of the entry of the order confirming the Plan, the Liquidating Trustee shall file a status report with the Court explaining what progress has been made toward consummation of the confirmed Plan. The status report shall be served on the United States Trustee and those parties who have requested special notice. Further status reports shall be filed approximately every four months and served on the same parties until entry of a final decree or otherwise ordered by the Court.

**H.    Post Confirmation U.S. Trustee Fees**

Upon the Effective Date, the Trustee and Liquidating Trustee shall be responsible for timely payment of quarterly fees due and payable, if any, until the Case is closed, to the extent required by § 1930(a)(6) of the Judicial Code. The Liquidating Trustee may, subject to the Liquidating Trust Agreement, seek to close the case post-Effective Date. Unless otherwise adjudicated by the Court, distributions made by the Liquidating Trustee on behalf of the Liquidation Trust shall not be subject to quarterly fees.

**I.    Risk Factors**

The risk factors with respect to the Plan include, but are not limited to, the following: (1) the financial projections set forth in the Disclosure Statement may not be realized thereby causing inability to make Plan payments; (2) the uncertainty associated with the "earn-out" under the Sale Transaction; (3) the risk of business and/or economic downturn; (4) the costs and uncertainty of potential litigation; and (5) non-bankruptcy law regulations.

**J.    Tax Consequences of the Plan**

**CREDITORS AND INTEREST HOLDERS CONCERNED WITH HOW THE PLAN MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN**

JOINT PLAN OF LIQUIDATION (MARCH 22, 2024)

153129823.4

1    **ACCOUNTANTS, ATTORNEYS, AND/OR ADVISORS**. The following disclosure of possible

2    tax consequences is intended solely for the purpose of alerting readers about possible tax issues this

3    Plan may present to the Debtor. The Plan Proponents CANNOT and DO NOT represent that the tax

4    consequences contained below are the only tax consequences of the Plan because the Tax Code

5    embodies many complicated rules which make it difficult to state completely and accurately all the

6    tax implications of any action.

7         Counsel to the Plan Proponents do not provide tax advice. The Plan Proponents recommend

8    that you seek independent tax advice. At this time, the Plan Proponents are unaware of any negative

9    tax consequences arising from confirmation of the Plan.

10        **K.    Final Decree**

11        Once this Estate has been fully administered, as referred to in Bankruptcy Rule 3022, the

12   Trustee or Liquidating Trustee will file a motion with the Bankruptcy Court to obtain a final decree

13   to close the Bankruptcy Case.

14

15   DATED: March 22, 2024        MARSHACK HAYS WOOD LLP

16

17                               By: _D. Edward Hays_____
                                 D. EDWARD HAYS
18                               LAILA MASUD
                                 General Counsel for Chapter 11 Trustee,
19                               RICHARD A. MARSHACK

20

21   DATED: March 22,, 2024       FOX ROTHCHILD

22                               By: */s/ Nicholas A. Koffroth*_____
                                 KEITH OWENS
23                               NICHOLAS KOFFROTH
                                 Attorneys for the Official Committee of Unsecured
24                               Creditors

25

26

27

28

153129823.4

# VI.    DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW

## A.    Defined Terms

As used in this Plan, capitalized terms have the meanings given to them below unless otherwise defined elsewhere in this Plan:

1.    "Administrative Claim" means a Claim against a Debtor arising on or after the Petition Date and before the Effective Date for the costs and expenses of administration of the Bankruptcy Case under §§ 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses of preserving the Estates and operating the businesses of the Debtor incurred on or after the Petition Date and through the Effective Date; (b) Allowed Professional Fee Claims in the Bankruptcy Case; and (c) all fees and charges assessed against the Estates, pursuant to § 1930 of the Judicial Code.

2.    "Administrative Claims Bar Date" means the applicable deadline for Filing requests for payment of Administrative Claims (other than requests for payment of Professional Fee Claims and fees and charges assessed against the Estates, pursuant to § 1930 of the Judicial Code), which shall be (a) November 21, 2023, for Administrative Claims that may have arisen, accrued, or otherwise become due and payable at any time on and subsequent to the Petition Date but on or before the Sale Closing, or (b) 45 days after the Effective Date for Administrative Claims that may have arisen, accrued, or otherwise become due and payable at any time on and subsequent to the Sale Closing.

3.    "Administrative Claims Objection Deadline" means the deadline for Filing objections to requests for payment of Administrative Claims (other than requests for payment of Professional Fee Claims and fees and charges assessed against the Estate, pursuant to § 1930 of the Judicial Code), which shall be the later of (1) 60 days after the Effective Date and (2) 60 days after the Filing of the applicable request for payment of the Administrative Claims; *provided* that the Administrative Claims Objection Bar Date may be extended by the Bankruptcy Court after notice and a hearing.

153129823.4

4.      "Affiliate" has the meaning set forth in § 101(2) of the Bankruptcy Code. With respect to any Entity that is not a Debtor, the term "Affiliate" shall apply to such Entity as if the Entity were a Debtor.

5.      "Allowed" means for distribution purposes, a Claim or Interest, or any portion thereof, or a particular Class of Claims: (a) that is Allowed by a Final Order of the Bankruptcy Court (or such other court as provided by the Plan or as the Liquidating Trustee or Holder of such Claim agree may adjudicate such Claim and objections thereto); (b) that is Allowed by this Plan and/or Confirmation Order; (c) for which a Proof of Claim in a liquidated amount has been timely Filed with the Bankruptcy Court pursuant to the Bankruptcy Code or deemed timely Filed by any Final Order of the Bankruptcy Court or other applicable bankruptcy law, and as to which (i) no objection to its allowance has been filed within the periods of limitation fixed by the Plan, the Bankruptcy Code, or any order of the Bnakurptcy Court, (ii) any objection to its allowance has been settled or withdrawn, or has been denied by a Final Order of the Bankruptcy Court, or (iii) following the Effective Date, with respect to General Unsecured Claims, as may be determined by the Liquidating Trust in accordance with the Plan and Liquidating Trust Agreement.  Except as otherwise specified in the Plan or any Final Order, and except for any Claim that is Secured by property of a value in excess of the principal amount of such Claims, the amount of an Allowed Claim shall not include interest on such Claim from and after the Petition Date. For purposes of determining the amount of an Allowed Claim, there shall be deducted therefrom an amount equal to the amount of any Claim that the Debtor may hold against the Holder thereof, to the extent such Claim may be offset, recouped, or otherwise reduced under applicable law. Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or Disputed, and for which no Proof of Claim is or has been timely Filed, is not considered Allowed and shall be deemed expunged without further action by the Trustee or Liquidating Trustee and without further notice to any party or action, approval, or order of the Bankruptcy Court. Notwithstanding anything to the contrary herein, no Claim of any Entity subject to § 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in

full the amount that it owes the Estate. "Allow," "Allowing," and "Allowance" shall have correlative meanings.

6.    "Assumed Executory Contracts and Unexpired Leases Schedule" means the schedule of Executory Contracts and Unexpired Leases to be assumed by the Debtor pursuant to the Plan, if any, which shall be included in the Plan Supplement, as the same may be amended, modified, or supplemented from time to time.

7.    "Avoidance Actions" mean any and all avoidance, recovery, or subordination actions or remedies that may be brought by or on behalf of the Debtor or its Estate under the Bankruptcy Code or applicable non-bankruptcy law, including actions or remedies under §§ 544, 547, 548, 549, 550, 551, 552, or 553 of the Bankruptcy Code.

8.    "Bankruptcy Case" means the bankruptcy case of the Debtor, pending before the Bankruptcy Court, in the case captioned *In re Litigation Practice Group P.C.*, Case No. 8:23-bk-10571-SC, filed under chapter 11 of the Bankruptcy Code.

9.    "Bankruptcy Code" has the meaning set forth in the Introduction.

10.    "Bankruptcy Court" means the United States Bankruptcy Court for the District of California having jurisdiction over the Bankruptcy Case and, to the extent of the withdrawal of reference under § 157 of the Judicial Code, the United States District Court for the District of California.

11.    "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, promulgated under § 2075 of the Judicial Code and the general, local and chambers rules of the Bankruptcy Court.

12.    "Beneficiary Schedule" has the meaning set forth in Section IV.B.24. of this Plan.

13.    "Business Day" means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)(6)).

14.    "Cash" means cash and cash equivalents, including bank deposits, checks, and other similar items in legal tender of the United States of America.

15.    "Cause of Action" or "Causes of Action" means any actions, Avoidance Actions, Claims, cross claims, third-party claims, interests, damages, controversies, remedies, causes of action,

debts, judgments, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, Liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, disputed or undisputed, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law or otherwise. Causes of Action also include: (a) any rights of setoff, counterclaim, recoupment, reclamation, and any claims under contracts or for breaches of duties imposed by law or in equity; (b) the right to object to or otherwise contest Claims or Interests; (c) claims pursuant to §§ 362, 510, 542, 543 or chapter 5 of the Bankruptcy Code; (d) any claims or defenses, including fraud, mistake, duress, and usury, and any other defenses set forth in § 558 of the Bankruptcy Code; (e) any state law fraudulent transfer claim; (f) applicable nonbankruptcy law, order in a nonbankruptcy proceeding or any agreement that fixes a period within which the Debtor may commence an action, and such period has not expired before the date of the filing of the petition; (g) applicable nonbankruptcy law, order in a nonbankruptcy proceeding or any agreement that fixes a period within which the Debtor or an individual protected under §§ 1201 or 1301 of the Bankruptcy Code may file any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar act; (h) if applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period for commencing or continuing a civil action in a court other than a Bankruptcy Court on a claim against the Debtor, or against an individual with respect to which such individual is protected under §§ 1201 or 1301 of the Bankruptcy Code; (i) the rights and powers of a trustee under §§ 544, 545, and 549 of the Bankruptcy Code that (1) permit perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of perfection; or (2) provide for the maintenance or continuation of perfection of an interest in property to be effective against an entity that acquires rights in such property before the date on which action is taken to effect such maintenance or continuation; (j) any rights or powers under the Uniform

JOINT PLAN OF LIQUIDATION (MARCH 22, 2024)

153129823.4

Commercial Code; and (k) any claims that may be brought under the Bankruptcy Code or applicable nonbankruptcy law against Insiders.

16.    "Claim" means any claim, as such term is defined in § 101(5) of the Bankruptcy Code, against a Debtor or the Estate.

17.    "Claims and Noticing Agent" means Omni Agent Solutions in its capacity as claims and noticing agent for the Debtor and any successor.

18.    "Claims Bar Date" means the deadline for filing Proofs of Claim set forth in the Claims Bar Date Order.

19.    "Claims Bar Date Order" means the Final Order [Docket No. 804] entered by the Bankruptcy Court on January 2, 2024, establishing certain deadlines for filing Proofs of Claim, including the February 23, 2024 deadline for filing Proofs of Claim asserting Secured Claims and General Unsecured Claims, including as modified for limited purposes, pursuant to that certain modification order [Docket No. 963].

20.    "Claims Register" means the official register of Claims maintained by the Claims and Noticing Agent.

21.    "Class" means a class of Claims or Interests as set forth in Article III of the Plan, in accordance with § 1122(a) of the Bankruptcy Code.

22.    "Committee" has the meaning set forth in the Introduction and is comprised of the members set forth in the notices of appointment [Docket Nos. 134 & 157].

23.    "Confirmation" means the Bankruptcy Court's entry of the Confirmation Order on the docket of the Bankruptcy Case within the meaning of Bankruptcy Rules 5003 and 9021.

24.    "Confirmation Date" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Case, within the meaning of Bankruptcy Rules 5003 and 9021.

25.    "Confirmation Hearing" means the hearing held by the Bankruptcy Court to consider Confirmation of the Plan, pursuant to Bankruptcy Rule 3020(b)(2) and §§ 1128 and 1129 of the Bankruptcy Code.

153129823.4

26. "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan, pursuant to § 1129 of the Bankruptcy Code, which shall be in form and substance acceptable to the Plan Proponents.

27. "Debtor" has the meaning set forth in the Introduction.

28. "Disallowed" means, with respect to any Claim or Interest, any Claim or Interest (i) proof of which was required to be filed by the Bankruptcy Code or an order of the Bankruptcy Court, but as to which no proof of Claim or Interest was timely or properly filed, (ii) which has been withdrawn in whole or in part, by an agreement between the Trustee or the Liquidating Trustee and the Holder thereof or unilaterally by the Holder thereof, or (iii) which has been disallowed, in whole or in part, by a Final Order or pursuant to this Plan.  In the event that a Claim is disallowed in part, then the Claim may be an Allowed Claim with respect to amounts asserted under the Claim which have not been disallowed.

29. "Disbursing Agent" means the Liquidating Trustee, as applicable, to make or facilitate distributions contemplated under the Plan, if applicable.

30. "Disclosure Statement" means the Disclosure Statement for the Chapter 11 Plan Debtor Pursuant to Chapter 11 of the Bankruptcy Code, as may be amended, supplemented or modified from time to time, including all exhibits and schedules thereto and references therein that relate to the Plan, that is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable law and approved by the Bankruptcy Court pursuant to the Disclosure Statement Order. The Disclosure Statement shall be acceptable to the Plan Proponents.

31. "Disclosure Statement Order" means the order [Docket No. _____] (as may be modified, amended, or supplemented by further Final Order) approving the Disclosure Statement, entered by the Bankruptcy Court on _____ ___, 2024.

32. "Disputed" means, with respect to any Claim or Interest, any Claim or Interest for which: (a) no Proof of Claim was filed by the applicable deadline; or (b) a Proof of Claim was filed by the applicable deadline and either (i) a corresponding Claim is listed on the Schedules as disputed, contingent, or unliquidated, (ii) a corresponding Claim is listed on the Schedules in an amount or

JOINT PLAN OF LIQUIDATION (MARCH 22, 2024)

153129823.4

nature different from that listed on the corresponding Proof of Claim, or (iii) an objection or request for estimation has been interposed by the relevant objection deadline that, in either instance, has not been withdrawn or determined pursuant to a Final Order; or (c) is treated as disputed under the terms of this Plan.

33.    "Distribution Record Date" means the record date for purposes of determining which Holders of Allowed Claims or Allowed Interests are eligible to receive distributions under the Plan, which date shall be the Effective Date, or such other date as is designated in a Final Order of the Bankruptcy Court.

34.    "Effective Date" means the date that is the first Business Day which is at least 14 days following the date of entry of the after the Confirmation Date on which the conditions to the occurrence of the Effective Date have been satisfied or waived, pursuant to Section IV.K. of the Plan. Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable thereafter.

35.    "Entity" has the meaning set forth in § 101(15) of the Bankruptcy Code.

36.    "Estate" means the estate of the Debtor (and any successor in interest thereto) created on the Petition Date in the Bankruptcy Case, pursuant to §§ 541 and 1115 of the Bankruptcy Code, and all property (as defined in § 541 of the Bankruptcy Code) acquired by the Debtor after the Petition Date through the Effective Date.

37.    "Executory Contract" means a contract or unexpired lease to which the Debtor is a party and that is subject to assumption or rejection under §§ 365 or 1123 of the Bankruptcy Code.

38.    "File" or "Filed" or "Filing" means file, filed or filing with the Bankruptcy Court in the Bankruptcy Case, or, with respect to the filing of a Proof of Claim, the Claims and Noticing Agent.

39.    "Final Order" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter, which has not been reversed, stayed, modified or amended, and as to which the time to appeal, petition for certiorari, or move for reargument, reconsideration, or rehearing has expired and no appeal, petition for certiorari, or motion for reargument, reconsideration, or rehearing has been timely taken or Filed, or as to which

JOINT PLAN OF LIQUIDATION (MARCH 22, 2024)

153129823.4

any appeal, petition for certiorari, or motion for reargument, reconsideration, or rehearing that has been taken or any petition for certiorari that has been or may be Filed has been resolved by the highest court to which the order or judgment could be appealed or from which certiorari could be sought or the new trial, reargument or rehearing shall have been denied, resulted in no modification of such order or has otherwise been dismissed with prejudice.

40.     "Fund Challenge Deadline" has the meaning set forth in Section IV.B.3(b) of the Plan.

41.     "General Unsecured Claim" means a Claim that is not an Administrative Claim, Priority Claim, and/or Secured Claim.

42.     "Governmental Bar Date" means February 23, 2024, which is the date by which Proofs of Claim must be Filed with respect to such Claims held by Governmental Units pursuant to the Claims Bar Date Order.

43.     "Governmental Unit" has the meaning set forth in § 101(27) of the Bankruptcy Code.

44.     "Holder" means an Entity holding a Claim against or an Interest in any Debtor.

45.     "Impaired" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of § 1124 of the Bankruptcy Code.

46.     "Interest" means any equity security in Debtor as defined in § 101(16) of the Bankruptcy Code, including all issued, unissued, authorized, or outstanding shares of capital stock of the Debtor and any other rights, options, warrants, stock appreciation rights, phantom stock rights, restricted stock units, redemption rights, repurchase rights, convertible, exercisable, or exchangeable securities, or other agreements, arrangements, or commitments of any character relating to, or whose value is related to, any such interest or other ownership interest in Debtor whether or not arising under or in connection with any employment agreement and whether or not certificated, transferable, preferred, common, voting, or denominated "stock" or a similar Security, including any Claims against Debtor subject to subordination pursuant to § 510(b) of the Bankruptcy Code arising from or related to any of the foregoing.

47.     "Insider" generally means one who has a sufficiently close relationship with the Debtor that their conduct has made them subject to closer scrutiny than those dealing at arms-length

153129823.4

with the Debtor. This definition includes *per se* statutory insiders as defined in § 101(31) of the Bankruptcy Code as well as non-statutory insiders, who had a sufficiently close relationship with the Debtor to fall within the definition of § 101(31) of the Bankruptcy Code as defined by prevailing law in the Ninth Circuit. *See, e.g,. U.S. Bank N.A. v. Village. at Lakeridge, LLC (In re Vilage. at Lakeridge, LLC),* 814 F.3d 993, 999 (9th Cir. 2016).

48.     "IRS" means the United States Internal Revenue Service.

49.     "Judicial Code" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

50.     "Lien" means a lien as defined in § 101(37) of the Bankruptcy Code.

51.     "Liquidating Trust" has the meaning set forth in Section IV.B.1. of this Plan.

52.     "Liquidating Trust Agreement" means that certain agreement filed as a Plan Supplement, in form acceptable to the Plan Proponents, between the Plan Proponents, the Liquidating Trustee, and the Post-Confirmation Oversight Committee, governing the disposition of Liquidating Trust Assets, the distribution of the proceeds thereof in accordance with the Plan, and setting forth the duties, obligations, and management rights of the Post-Confirmation Oversight Committee and Liquidating Trustee.

53.     "Liquidating Trust Assets" means all Estate assets transferred to the Liquidating Trust as set forth herein.

54.     "Liquidating Trust Indemnified Party" has the meaning set forth in Section IV.B.31 of this Plan.

55.     "Liquidating Trustee" has the meaning set forth in Section IV.B.7. of this Plan.

56.     "Litigation Claim" means any claims, Causes of Action, or other litigation claims or controversies.

57.     "LPG" means the Debtor, The Litigation Practice Group, P.C.

58.     "Other Priority Claim" means any Claim, to the extent such Claim has not already been paid during the Bankruptcy Case, other than an Administrative Claim or a Priority Tax Claim, entitled to priority in right of payment under § 507(a) of the Bankruptcy Code.

JOINT PLAN OF LIQUIDATION (MARCH 22, 2024)

153129823.4

59.     "Ownership Challenge Deadline" has the meaning set forth in Section IV.B.3(c) of the Plan.

60.     "Person" means a person as such term as defined in § 101(41) of the Bankruptcy Code.

61.     "Petition Date" means March 20, 2023, the date the Debtor commenced the Bankruptcy Case.

62.     "Plan" has the meaning set forth in the Introduction.

63.     "Plan Proponents" has the meaning set forth in the Introduction.

64.     "Plan Supplement" means the compilation of documents and forms of documents, agreements, schedules, and exhibits to the Plan (as may be altered, amended, modified, or supplemented from time to time in accordance with the terms hereof and in accordance with the Bankruptcy Code and Bankruptcy Rules) to be Filed by the Debtor no later than the Plan Supplement Filing Date, including the following to the extent applicable: (a) Rejected Executory Contracts and Unexpired Leases Schedule, (b) Assumed Executory Contracts and Unexpired Leases Schedule, (c) list of Potential Litigation Targets, (d) any necessary documentation related to the Sale Transaction, and (e) the Liquidating Trust Agreement.

65.     "Plan Supplement Filing Date" means, the date that is (a) seven days prior to the earlier of (i) the Voting Deadline or (ii) the deadline to object to Confirmation of the Plan or (b) such later date as may be approved by the Bankruptcy Court.

66.     "Post-Confirmation Oversight Committee" means the oversight committee comprised of not less than three creditors appointed by the Committee, pursuant to the terms of the Plan, Liquidating Trust Agreement, and Post-Confirmation Oversight Committee Bylaws, and identified in the Plan Supplement.

67.     "Post-Petition Funds" means the funds collected by the Estate after the Petition Date from clients of the Debtor, which funds are currently held by the Trustee in a segregated account.

68.     "Potential Litigation Target" includes but is not limited to the list of potential defendants against whom the Liquidating Trust may assert Retained Causes of Action that is attached to the Plan Supplement.

JOINT PLAN OF LIQUIDATION (MARCH 22, 2024)

153129823.4

69.     "Priority Claims" means, collectively, Priority Tax Claims and Other Priority Claims.

70.     "Priority Tax Claim" means any Claim of a Governmental Unit of the kind specified in § 507(a)(8) of the Bankruptcy Code.

71.     "Pro Rata" means the proportion that an Allowed Claim or an Allowed Interest in a particular Class bears to the aggregate amount of Allowed Claims or Allowed Interests in that Class, unless otherwise indicated.

72.     "Professional" means an Entity: (a) retained pursuant to a Bankruptcy Court order in accordance with §§ 327 or 1103 of the Bankruptcy Code and to be compensated for services rendered and expenses incurred pursuant to §§ 327, 328, 329, 330, 331, and 363 of the Bankruptcy Code; (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to § 503(b)(4) of the Bankruptcy Code; or (c) awarded compensation and reimbursement of expenses by the Bankruptcy Court, pursuant to §§ 326 and 330 of the Bankruptcy Code.

73.     "Professional Fee Claim" means a Claim by a Professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under §§ 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code.

74.     "Proof of Claim" means a written proof of Claim Filed against the Debtor in the Bankruptcy Case by the Claims Bar Date, the Administrative Claims Bar Date, or the Governmental Bar Date, as applicable.

75.     "Rejected Executory Contracts and Unexpired Leases Schedule" means the schedule of Executory Contracts and Unexpired Leases to be rejected by the Debtor pursuant to the Plan, which schedule shall be included in the Plan Supplement, as the same may be amended, modified, or supplemented from time to time.

76.     "Retained Causes of Action" or "Retained Action" means Litigation Claims including, without limitation, claims against Potential Litigation Targets.

77.     "Sale Closing" means the August 4, 2023.

JOINT PLAN OF LIQUIDATION (MARCH 22, 2024)

153129823.4

78.    "Sale Order" means the order entered on August 2, 2023 in the Bankruptcy Case as Docket No. 352.

79.    "Sale Transaction" means the sale of all or substantially all of the Debtor's assets pursuant to the Sale Order.

80.    "Sale Transaction Documentation" means all motions, filings, documents, and agreements related to the Sale Transaction, including without limitation, the Asset Purchase Agreement and the Sale Order.

81.    "Schedules" means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases and statements of financial affairs Filed by the Debtor pursuant to § 521 of the Bankruptcy Code, the official bankruptcy forms, and the Bankruptcy Rules, as such schedules may be amended, modified, or supplemented from time to time.

82.    "Secured" means when referring to a Claim: (a) secured by a Lien on collateral in which the Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Final Order of the Bankruptcy Court, or that is subject to setoff pursuant to § 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in such Debtor's interest in such collateral or to the extent of the amount subject to setoff, as applicable, as determined pursuant to § 506(a) of the Bankruptcy Code or (b) Allowed pursuant to the Plan as a Secured Claim.

83.    "Securities Act" means the Securities Act of 1933, 15 U.S.C. §§ 77a-77aa, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

84.    "Security" means a security as defined in § 2(a)(1) of the Securities Act.

85.    "Subordinated Claims" means Allowed Claims that have been found to be subject to subordination, pursuant to § 510(b) or (c) of the Bankruptcy Code, pursuant to a Final Order.

86.    "Tax Code" means the United States Internal Revenue Code of 1986, as amended.

87.    "Treasury Regulations" means the regulations promulgated under the Tax Code by the United States Department of the Treasury.

88.    "Trust Beneficial Interest" means the Pro Rata interests in the Liquidating Trust of the Holders of Allowed Claims in Class 3A and Class 3B and their concomitant entitlement to

distributions to be made by the Liquidating Trust on account of Allowed General Unsecured Claims, subject to any further right to object to the validity, extent, or amount of the underlying General Unsecured Claim to the extent not Allowed on the Effective Date as set forth in this Plan and the Liquidating Trust Agreement .  The Trust Beneficial Interests shall be evidenced as set forth in this Plan and shall not be transferable, except to the limited extent provided in this Plan and related provisions of the Liquidating Trust Agreement.

89.    "Trust Beneficiary" means the holder of a Trust Beneficial Interest, as of any point in time.

90.    "Trustee" has the meaning set forth in the Introduction.

91.    "U.S. Trustee" means the Office of the United States Trustee for the District of California.

92.    "Unexpired Lease" means a lease to which the Debtor is a party that is subject to assumption or rejection under §§ 365 or 1123 of the Bankruptcy Code.

93.    "Unimpaired" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is unimpaired within the meaning of § 1124 of the Bankruptcy Code.

94.    "Voting Deadline" means the deadline established by the Bankruptcy Court by which Holders of Claims and Interests entitled to vote on approval or disapproval of the Plan must submit a ballot.

**B.    Rules of Interpretation**

For purposes of this Plan: (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, whether or not Filed, having been Filed or to be Filed shall mean that document, schedule,

153129823.4

or exhibit, as it may thereafter be amended, restated, supplemented, or otherwise modified in accordance with the Plan or Confirmation Order, as applicable; (4) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns; (5) unless otherwise specified, all references herein to "Articles" or "Sections" are references to Articles or Sections of the Plan; (6) unless otherwise specified, all references herein to exhibits are references to exhibits in the Plan Supplement; (7) unless otherwise specified, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (8) subject to the provisions of any contract, certificate of incorporation, bylaw, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with, applicable federal law, including the Bankruptcy Code and the Bankruptcy Rules, or, if no rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules) or otherwise specifically stated, the laws of the State of California, without giving effect to the principles of conflict of laws; (9) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (10) the rules of construction set forth in § 102 of the Bankruptcy Code shall apply; (11) all references to docket numbers of documents Filed in the Bankruptcy Case are references to the docket numbers under the Bankruptcy Court's CM/ECF system in the Bankruptcy Case; (12) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the this Bankruptcy Case, unless otherwise stated; (13) any effectuating provisions may be interpreted by the Liquidating Trustee, subject to the Liquidating Trust Agreement, in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity, and such interpretation shall be conclusive; (14) any references herein to the Effective Date shall mean the Effective Date or as soon as reasonably practicable thereafter; (15) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation"; (16) all references herein to consent, acceptance, or approval shall be

153129823.4

deemed to include the requirement that such consent, acceptance, or approval be evidenced by a writing, which may be conveyed by counsel for the respective parties that have such consent, acceptance, or approval rights, including by electronic mail; and (17) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

**C.      Computation of Time**

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day. Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

**D.      Governing Law**

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of California, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control).

JOINT PLAN OF LIQUIDATION (MARCH 22, 2024)
153129823.4

## Liquidating Trust Agreement

# LIQUIDATION TRUST AGREEMENT

## PREAMBLE

This Liquidation Trust Agreement, dated as of _____ [●], 2024 (the "**Agreement**"), which pertains to the administration of this LPG Liquidation Trust (the "**Liquidation Trust**"), is made effective as of the Effective Date of the Plan, by and among the Richard A. Marshack, not individually, but solely in its capacity as the liquidating trustee of the Liquidation Trust (and his successors and assigns) (hereinafter, the "**Liquidation Trustee**") and the Post-Confirmation Oversight Committee of The Litigation Practice Group P.C. (hereinafter, the "**Post-Confirmation Committee**" and together with the Liquidation Trustee, the "**Parties**") in accordance with the *Joint Chapter 11 Plan of Liquidation and Disclosure Statement of The Litigation Practice Group, P.C.* dated March 8, 2024 (including all exhibits thereto, as the same may be further amended, modified, or supplemented from time to time, the "**Plan**") filed by Richard A. Marshack, not individually, but solely in his capacity as the Chapter 11 Trustee (the "**Trustee**") and the Official Committee of Unsecured Creditors of The Litigation Practice Group P.C. (the "**Committee**" and together with the Trustee, the "**Plan Proponents**"), and such Plan having been confirmed pursuant to the entry of the Confirmation Order.

## RECITALS

A.      On March 20, 2023 (the "**Petition Date**"), The Litigation Practice Group P.C. (the "**Debtor**") filed a voluntary petition for relief under chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Central District of California (the "**Bankruptcy Court**"), thereby commencing this chapter 11 case (the "**Chapter 11 Case**").

B.      On May 4, 2023, the Bankruptcy Court entered an order [Docket No. 58] appointing Richard A. Marshack as the chapter 11 trustee in the Chapter 11 Case.

C.      On June 23, 2023, the Office of the United States Trustee (the "**UST**") appointed [Docket No. 134] the Committee, comprised of the following five members: Alexandra Lufti; April Riedy; Denise Burtchell; Angela Dows; and Thomas Ray. On June 29, 2023, the UST expanded [Docket No. 157] the Committee's membership by adding the following two additional members to the Committee: Affirma, LLC and Abigail R. Beaudin.

D.      On March 22, 2024, the Plan Proponents filed the Plan [Docket No. _____].

E.      Among other things, the Plan provides for the creation of this post-confirmation Liquidation Trust to hold and administer certain Liquidation Trust Assets and to distribute the proceeds therefrom to the Holders of certain Allowed Claims, in accordance with the terms of this Agreement and the Plan. As set forth more fully in the Plan, the Liquidation Trust will be funded with the Liquidation Trust Assets after the Effective Date. This Agreement is executed to establish the Liquidation Trust and to facilitate the implementation of the Plan.

F.      The Liquidation Trust is created on behalf of, and for the benefit of, the Liquidation Trust Beneficiaries.

152516763.8

G.     The respective powers, authority, responsibilities, and duties of the Liquidation Trustee shall be governed by this Agreement, the Plan, the Confirmation Order, other applicable orders issued by the Bankruptcy Court and, with respect to the Liquidation Trustee only, any obligations under California and bankruptcy law.

H.     This Agreement is intended to supplement, complement, and implement the Plan. If any of the terms and/or provisions of this Agreement are inconsistent with the terms and/or provisions of the Plan, then the Plan shall govern except for inconsistencies or clarifications in furtherance of the Liquidation Trust as a liquidating trust for federal income tax purposes, in which case the terms and/or provisions of this Liquidation Trust shall govern.

I.     The Liquidation Trust is intended to qualify as a "liquidating trust" under the United States Internal Revenue Code of 1986 and the Treasury Regulations promulgated thereunder, specifically Treasury Regulation section 301.7701-4(d), and as such is a "grantor trust" for federal income tax purposes with the Liquidation Trust Beneficiaries treated as the grantors and owners of the Liquidation Trust.

NOW, THEREFORE, in consideration of the promises and the mutual covenants and agreements contained herein and in the Plan, the Parties agree as follows:

## DEFINITIONS[1]

"Affiliates" means parents, subsidiaries, members, managers, limited partners, and general partners.

"Agreement" has the meaning specified in the Preamble to this Agreement.

"APA" means that certain Agreement of Purchase and Sale and Joint Escrow Instructions dated as of August 4, 2023, entered into by and between the Trustee and Morning Law Group P.C.

"Article" refers to an Article of this Agreement.

"Bankruptcy Code" has the meaning specified in the Preamble to this Agreement.

"Bankruptcy Court" has the meaning specified in the Preamble to this Agreement.

"Causes of Action" means all Causes of Action (as defined in the Plan) that are Liquidation Trust Assets.

"Chapter 11 Case" has the meaning specified in the Preamble to this Agreement.

---

[1] Capitalized terms not defined herein, shall have the meaning ascribed to them in the Plan or elsewhere in this Agreement.

152516763.8

"Client" or "Clients" mean consumer clients who entered into a Legal Services Agreement with the Debtor (or any Person that is determined by the Bankruptcy Court or such other court of competent jurisdiction, to be an alter-ego of the Debtor).

"Client Post-Petition ACH Pulls" means any funds received by the Debtor or the Estate after the Petition Date from ACH pulls made from Client accounts that: (i) are not subject to a timely challenge by the Fund Challenge Deadline (as defined in the Plan); or (ii) otherwise becomes property of the Estate.

"Confidential Party" has the meaning specified in Section 16.5.

"Debtor" has the meaning specified in the Preamble to this Agreement.

"Distribution Fee" has the meaning specified in Section 3.1.

"Effective Date" has the meaning specified in the Plan.

"Estate" has the meaning specified in the Plan.

"IRS" means the Internal Revenue Service of the United States of America.

"Liquidation Trust" has the meaning specified in the Preamble to this Agreement.

"Liquidation Trust Assets" means, to the extent not already disbursed by the Chapter 11 Trustee prior to the Effective Date (including refund claims to consumers), all property of the Debtor's Estate subject to all valid liens, as determined by the Bankruptcy Court, held by Holders of Allowed Class 1 Claims including, but not limited to: (a) all cash from the proceeds of sale of the Debtor's assets pursuant to APA approved by the Bankruptcy Court pursuant to the Sale Order, and all future cash proceeds due to the Estate pursuant to the "earn out" provisions set forth in the APA; (b) Client Post-Petition ACH Pulls received from Clients after the Petition Date and held by the Trustee; (c) all Causes of Action; (d) proceeds from commercial tort and director and officer liability claims; and (e) all books, records, and files of the Debtor and of the Estate, in all forms, including electronic and hard copy.  For the avoidance of doubt, the Liquidation Trust Assets shall not include: (1) Cash held in any Professional Fee Escrow Account; (2) Causes of Action released, pursuant to the Plan, or other order of the Bankruptcy Court, or exculpated pursuant to Article V.D of the Plan; and (3) payments made by the Chapter 11 Trustee including those under the Plan made prior to funding the Liquidation Trust.

"Liquidation Trust Asset Proceeds" means any and all proceeds from the Liquidation Trust Assets including, without limitation, any cash or other property received from or in connection with the Liquidation Trust Assets or the prosecution, settlement, or adjudication of any related Causes of Action that are Liquidation Trust Assets.

"Liquidation Trust Beneficiaries" means all holders of trust beneficial interests, pursuant to the Plan.

3

"Liquidation Trustee" has the meaning specified in the Preamble to this Agreement and includes any Interim Trustee or a successor Liquidation Trustee appointed pursuant to Article 10.1.

"Liquidation Trustee Funds" has the meaning specified Article 7.1.

"Liquidation Trustee Non-Professionals" has the meaning specified in Article 13.1(b).

"Liquidation Trustee Professionals" has the meaning specified in Article 13.1(a).

"MLG" means "Morning Law Group P.C., the purchaser of all of the Debtor's and the Estate's right, title, and interest in and to certain assets specified in the APA pursuant to the Sale Order.

"Parties" has the meaning specified in the Preamble to this Agreement.

"Person" means any individual, corporation, partnership, joint venture, association, trust, unincorporated organization, or other legal entity, or any governmental authority, entity, or political subdivision thereof.

"Petition Date" has the meaning specified in the Preamble to this Agreement.

"Plan" has the meaning specified in the Preamble to this Agreement.

"Post-Confirmation Committee" means the entity formed as of the Effective Date, pursuant to the Plan and this Agreement.

"Sale Order" means that certain Order (A) Approving Sale of Assets Free and Clear of All Liens, Claims, Encumbrances and Interests Pursuant to 11 U.S.C. § 363(b), (B) Approving Assumption and Assignment of Certain Executory Contracts and Unexpired Leases and Other Agreements, and (C) Granting Related Relief entered on August 2, 2023 [Docket No. 352].

"Section" refers to a Section of this Agreement.

"Undeliverable Distributions" has the meaning specified in Article 4.3.

## ARTICLE 1
## NAME OF TRUST AND LIQUIDATION TRUSTEE

1.1    Trust Name

The name of the Liquidation Trust is the "LPG Liquidation Trust," the Litigation Practice Group P.C. Liquidation Trust," the Liquidating Trust, or such variations thereof as the Liquidating Trustee seems fit.

1.2    Appointment of Liquidation Trustee

Richard A. Marshack is hereby appointed to serve as the initial Liquidation Trustee under the Plan, and hereby accepts this appointment and agrees to serve in such capacity effective upon

4

the Effective Date of the Plan and pursuant to the terms of the Plan and this Agreement. To effectuate an orderly and efficient transition of the administration of the Liquidation Trust Assets from the Debtor to the Liquidation Trustee, the Liquidation Trustee may perform certain services in connection with its duties and obligations under this Agreement prior to the Effective Date, which are hereby ratified as of the Effective Date.  A successor Liquidation Trustee shall be appointed as set forth in Article 10.1 in the event the Liquidation Trustee is removed or resigns pursuant to this Agreement, or if the Liquidation Trustee otherwise vacates the position.

## ARTICLE 2
## DUTIES AND POWERS OF THE LIQUIDATION TRUSTEE

2.1    Generally

The Liquidation Trustee shall be responsible for Liquidation and administering (or abandoning, as the case may be) the Liquidation Trust Assets, and taking actions on behalf of, and representing, the Liquidation Trust. Any motion to abandon assets of the Liquidation Trust shall be subject to approval of the bankruptcy court using the standards set forth in 11 U.S.C. § 554. The Liquidation Trustee shall have the authority to bind the Liquidation Trust within the limitations set forth herein but shall for all purposes hereunder be acting in the capacity of Liquidation Trustee and not individually.

2.2    Scope of Authority of Liquidation Trustee

Within the limitations set forth herein, and subject to the oversight provisions of the Post-Confirmation Committee set forth in this Agreement, the responsibilities and authority of the Liquidation Trustee shall include, without limitation: (i) holding and administering the Liquidation Trust Assets, (ii) evaluating and determining strategy with respect to the Causes of Action and litigating Causes of Action, or settling, transferring, releasing, or abandoning any and all Causes of Action on behalf of the Liquidation Trust, (iii) facilitating the prosecution or settlement of objections to, or estimations of, Claims asserted against the Liquidation Trust or the Liquidation Trust Assets, (iv) calculating and implementing distributions to the Liquidation Trust Beneficiaries in accordance with the Plan and this Agreement, (v) filing all required tax returns for the Liquidation Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a), (vi) retaining Liquidation Trustee Professionals and Liquidation Trustee Non-Professionals as provided in the Plan or this Agreement, (vii) receiving reasonable compensation for performing services as Liquidation Trustee in accordance with this Agreement and paying the reasonable fees, costs, and expenses of any Liquidation Trustee Professionals and Liquidation Trustee Non-Professionals in accordance with the applicable provisions of this Agreement, (viii) filing all required reports with the Bankruptcy Court regarding the status of the administration of the Liquidation Trust Assets and the assets, liabilities, and transfers of the Liquidation Trust, and (ix) carrying out such other responsibilities not specifically set forth herein as may be vested in the Liquidation Trustee pursuant to the Plan, this Agreement, Bankruptcy Court order, or as may be necessary and proper to carry out the provisions of the Plan or this Agreement.

152516763.8

2.3    Obligations to Liquidation Trust and Beneficiaries

The Liquidation Trustee's actions as Liquidation Trustee will be held to standards set forth in this Agreement.

2.4    Additional Powers of Liquidation Trustee

In connection with the administration of the Liquidation Trust, subject to and except as otherwise set forth in this Agreement or the Plan, the Liquidation Trustee is hereby authorized to perform those acts necessary to accomplish the purposes of the Liquidation Trust as set forth in this Agreement.  Without limiting, but subject to, the foregoing, the Liquidation Trustee shall, unless otherwise provided in this Agreement and subject to the limitations contained herein and in the Plan:

(a)    be expressly authorized and required to hold legal title (on behalf of the Liquidation Trust as Liquidation Trustee, but not individually) to the Liquidation Trust Assets, including, but not limited to, the Causes of Action, and be expressly authorized to vote any Claim held by the Liquidation Trust in any case or proceeding under the Bankruptcy Code or otherwise and to receive any distribution therein;

(b)    be expressly authorized and required to protect and enforce the rights to the Liquidation Trust Assets vested in the Liquidation Trust by the Plan by any method deemed appropriate in the Liquidation Trustee's discretion, including, without limitation, by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium or similar law and general principles of equity;

(c)    be expressly authorized to invest funds (in the manner set forth in Article 2.8), make distributions, and pay any other obligations owed by the Liquidation Trust from the Liquidation Trust Assets as provided herein and in the Plan;

(d)    be expressly authorized and required to prosecute, defend, compromise, adjust, analyze, arbitrate, abandon, estimate, or otherwise deal with and settle, in accordance with the terms set forth in Article 5 hereof, Claims against the Liquidation Trust or the Liquidation Trust Assets;

(e)    be expressly authorized and required to pay expenses and make disbursements necessary to preserve and liquidate the Liquidation Trust Assets;

(f)    be expressly authorized and required to make the Distributions as contemplated in the Plan and this Agreement;

(g)    be expressly authorized and required to file appropriate tax returns with respect to the Liquidation Trust, and pay taxes properly payable by the Liquidation Trust, if any, in the exercise of its fiduciary obligations;

(h)    be expressly authorized and required to take such actions as are necessary and reasonable to carry out the purposes of the Liquidation Trust;

6

(i)      be expressly authorized to purchase insurance coverage as the Liquidation Trustee, in its sole discretion, deems necessary and appropriate with respect to the assets, liabilities, and obligations of the Liquidation Trust;

(j)      be expressly authorized to consult with the Post-Confirmation Committee on a regular basis, not less than quarterly, and keep the Post-Confirmation Committee fully advised as to the status of the Liquidation Trust, the Liquidation Trust Assets, and the Liquidation Trustee's activities;

(k)      be expressly authorized to retain and pay, as applicable, the Liquidation Trustee Professionals and Liquidation Trustee Non-Professionals as provided in, and subject to the terms of, this Agreement;

(l)      be expressly authorized to incur any reasonable and necessary expenses in liquidating and converting the Liquidation Trust Assets to Cash, or otherwise administering the Liquidation Trust, as set forth in the Plan or this Agreement;

(m)      be expressly authorized to terminate the Liquidation Trust and, to the extent necessary or required, seek to close the Chapter 11 Case, pursuant to section 350(a) of the Bankruptcy Code;

(n)      be expressly authorized and required to assume such other powers as may be vested in or assumed by the Liquidation Trust pursuant to the Plan or Bankruptcy Court order, or as may be necessary and proper to carry out the provisions of the Plan or this Agreement; and

(o)      be expressly authorized to seek order(s) from the Bankruptcy Court with respect to his rights, duties, claims, and administration or abandonment of assets to the extent expressly permitted by this Agreement.

2.5      General Authority of the Liquidation Trustee

Unless specifically stated otherwise herein, the Liquidation Trustee shall not be required to obtain Bankruptcy Court approval with respect to any proposed action or inaction: (a) authorized in this Agreement, or (b) specifically contemplated in the Plan.

2.6      Limitation of Liquidation Trustee's Authority; No On-Going Business

(a)      The Liquidation Trustee shall have no power or authority except as set forth in this Agreement or in the Plan.

(b)      For federal income tax purposes, the Liquidation Trustee shall not be authorized to engage in any trade or business with respect to the Liquidation Trust Assets or any proceeds therefrom except to the extent reasonably necessary to, and consistent with, the liquidation purpose of the Liquidation Trust.  The Liquidation Trustee shall take such actions consistent with the prompt orderly liquidation of the Liquidation Trust Assets as required by applicable law and consistent with the treatment of the Liquidation Trust as a liquidation trust

7

under Treasury Regulation section 301.7701-4(d), to the extent such actions are permitted by this Agreement.

2.7    Other Activities

The Liquidation Trustee shall be entitled to retain Liquidation Trustee Professionals and Liquidation Trustee Non-Professionals in accordance with the terms of this Agreement and to assist with the administration of the Liquidation Trust and on such terms as the Liquidation Trustee deems appropriate. The Liquidation Trustee, the Liquidation Trustee Professionals, the Liquidation Trustee Non-Professionals, and the Committee Professionals so retained need not be "disinterested" as that term is defined in the Bankruptcy Code and may include, without limitation, employees, independent contractors or agents of the Committee or Post-Confirmation Committee.

2.8    Investment and Safekeeping of Liquidation Trust Assets

All monies and other assets received by the Liquidation Trustee shall, until distributed or paid over as herein provided, including for the costs of operations, be segregated from all other monies and assets of the Liquidation Trustee, and further, shall be held in trust for the benefit of the Liquidation Trust Beneficiaries, but need not be segregated from other Liquidation Trust Assets, unless and to the extent required by the Plan and this Agreement. The Liquidation Trustee shall promptly invest any such monies in the manner set forth in this Article 2.8 but shall otherwise be under no liability for interest or income on any monies received by the Liquidation Trust hereunder and held for distribution or payment to the Liquidation Trust Beneficiaries, except as such interest shall actually be received. Investment of any monies held by the Liquidation Trust shall be administered in accordance with the general duties and obligations hereunder. The right and power of the Liquidation Trustee to invest the Liquidation Trust Assets, the proceeds thereof, or any income earned by the Liquidation Trust, shall be limited to the right and power to (i) invest such Liquidation Trust Assets (pending distributions in accordance with the Plan or this Agreement) in (a) short-term direct obligations of, or obligations guaranteed by, the United States of America or (b) short-term obligations of any agency or corporation which is or may hereafter be created by or pursuant to an act of the Congress of the United States as an agency or instrumentality thereof; or (ii) deposit such assets in demand deposits at any bank or trust company, which has, at the time of the deposit, a capital stock and surplus aggregating at least $1,000,000,000 (collectively, the "**Permissible Investments**") *provided*, *however*, that the scope of any such Permissible Investments shall be limited to include only those investments that a liquidating trust, within the meaning of Treasury Regulation section 301.7701-4(d), may be permitted to hold, pursuant to the Treasury Regulations, or any modification in the IRS guidelines, whether set forth in IRS rulings, other IRS pronouncements or otherwise. There shall be no recourse to the extent that the Liquidation Trustee invests a majority of the liquid assets of the trust in short-term treasuries.

2.9    Establishment of Reserves

The Liquidation Trustee may maintain, in accordance with the Liquidation Trustee's powers and responsibilities under the Plan and this Agreement, a Disputed Claims Reserve.  The Liquidation Trustee may, in his reasonable discretion, in consultation with the Post-Confirmation

8

Committee, distribute such amounts (net of any expenses, including any taxes relating thereto), as provided herein, as Disputed Claims are resolved pursuant to the Plan, and such amounts may be distributed on account of such Disputed Claims as if such Disputed Claims were Allowed Claims as of the Effective Date.

    2.10   <u>Post-Confirmation Committee</u>

    (a)   <u>Formation</u>. On the Effective Date, the Committee will be dissolved and the Post-Confirmation Committee will be formed to serve as an oversight board to the Liquidation Trustee. They will assume the rights and obligations set forth in this Agreement. The initial members of the Post-Confirmation Committee shall be the persons identified in those certain *Notices of Appointment of Committee of Unsecured Creditors* [Docket Nos. 134 and 157]. The Post-Confirmation Committee is organized pursuant to those certain *Post-Confirmation Oversight Committee Bylaws*. Any or all members of the Post-Confirmation Committee may resign from such position at any time by written notice of resignation to the Liquidation Trustee. A member of the Post-Confirmation Committee shall be deemed to be immediately removed as a member of the Post-Confirmation Committee in the event that a Post-Confirmation Committee member (i) dies, resigns, or becomes incapacitated, or (ii) otherwise fails or refuses to serve and is removed pursuant to the terms of this Agreement. In the event of a Post-Confirmation Committee member's resignation or removal, the Post-Confirmation Committee, in consultation with the Liquidation Trustee, may, but is not required to, elect a replacement member. There shall be no fewer than three members of the Post-Confirmation Committee for the Post-Confirmation Committee to retain its function. Each member of the Post-Confirmation Committee must hold, at all times throughout their service on the Post-Confirmation Committee, a General Unsecured Claim against the Estate or be a Liquidation Trust Beneficiary. A member's rights of membership on the Post-Confirmation Committee may not be voluntarily transferred to or otherwise be assigned or delegated to another person or entity.

    (b)   <u>Procedures for Oversight</u>. The Liquidation Trustee may obtain the Post-Confirmation Committee's advice for any action by email, without a meeting, and advice shall be deemed to have been provided pursuant to a majority vote of the Post-Confirmation Committee upon the Liquidation Trustee's receipt of return emails from at least a majority of the Post-Confirmation Committee after a period of time reasonable under the circumstances. The Liquidation Trustee may rely on any written communication from the Post-Confirmation Committee's counsel informing the Liquidation Trustee of the result of a vote of the Post-Confirmation Committee. If the Liquidation Trustee determines, in its sole discretion, that a meeting of the Post-Confirmation Committee should be held or advice should be obtained on an emergency basis, the Liquidation Trustee shall be entitled to convene a meeting of the Post-Confirmation Committee upon 24-hours' notice, and the Liquidation Trustee shall be entitled to obtain advice by email upon 24-hours' notice.

    (c)   <u>Consent Rights</u>. The Liquidation Trustee shall obtain the consent of the Post-Confirmation Committee, pursuant to a majority vote of the Post-Confirmation Committee, prior to taking any actions regarding any of the following matters:

9

(i)      The settlement, compromise, or other resolution of any Cause of Action, wherein the stated amount in controversy exceeds $1,000,000.00, including, but not limited to, the settlement, compromise, or other resolution of claims with an asserted value in excess of $1,000,000.00;

(ii)      Any modification or amendment of this Agreement;

(iii)      The retention of Liquidation Trustee Professionals and Liquidation Trustee Non-Professionals, pursuant to Section 13.1 of this Agreement, and payment of fees and expenses, pursuant to Section 13.2 of this Agreement;

(iv)      The modification or amendment of the compensation to the Liquidation Trustee or the Liquidation Trustee Professionals retained by the Liquidation Trustee, other than annual, ordinary course increases in the hourly rates, *provided that* the Liquidation Trustee Professionals shall provide the Post-Confirmation Committee thirty (30) calendar days' advance notice of such annual, ordinary course increases; and

(v)      For the avoidance of doubt, on any actions not listed herein, the Liquidation Trustee shall consult with the Post-Confirmation Committee as the Liquidation Trustee deems necessary in his business judgment and keep the Post-Confirmation Committee regularly informed as required elsewhere in this Agreement.

(d)      Disputes; Exclusive Right.  The Post-Confirmation Committee shall have the sole and exclusive right to exercise the oversight powers set forth herein.  If the Liquidation Trustee believes that the Post-Confirmation Committee's decision with respect to the actions described in Section 2.10(c)(i), (iii), and (iv) would result in a breach of the Liquidation Trustee's fiduciary duty or duties, the Liquidation Trustee may seek an order from the Bankruptcy Court resolving such dispute, subject to the Post-Confirmation Committee's right to object.  In resolving any dispute presented to the Bankruptcy Court, the court need not find that the Post-Confirmation Committee's decision would in fact constitute a breach of the Liquidation Trustee's fiduciary duties. Instead, the Bankruptcy Court shall resolve such dispute based on what it finds to be in the best interest of the Liquidation Trust Beneficiaries. Notwithstanding the foregoing, and as a compromise between the Trustee and the Committee, the Liquidation Trustee may seek an order of the Bankruptcy Court authorizing the Liquidation Trustee to take an action set forth in Section 2.10(c) without the consent of the Post-Confirmation Committee on the grounds that the Post-Confirmation Committee's decision to withhold consent for such action is not in the best interests of the Liquidation Trust or the Liquidation Trust Beneficiaries (the "**Alternative Consent Procedure**").  The Trustee may only seek relief under the Alternative Consent Procedure if the Post-Confirmation Committee is no longer represented by the Initial Post-Confirmation Committee Counsel.

(e)      Committee Professionals. The Post-Confirmation Committee shall be entitled, subject to the Post-Confirmation Committee's sole and absolute discretion, to retain professionals (the "**Committee Professionals**") solely to advise and to represent the Post-Confirmation Committee concerning the discharge of its duties set forth herein and in the *Post-Confirmation Oversight Committee Bylaws*.  The Committee Professionals shall be compensated in accordance with Article 13.2 hereof.

152516763.8

(f)    <u>Committee Fees and Expenses</u>.  The members of the Post-Confirmation Committee shall not be entitled to compensation from the Liquidation Trust in connection with the performance of their duties as members of the Post-Confirmation Committee.  A member may request reimbursement of reasonable and necessary expenses incurred in connection with the discharge of such member's duties as a member of the Post-Confirmation Committee. The Liquidation Trustee shall pay such invoices for reimbursement of a member's reasonable and necessary expenses thirty (30) calendar days after a copy of such invoices is provided to the Liquidation Trustee and the Post-Confirmation Committee, without Bankruptcy Court approval, unless the Liquidation Trustee or the Post-Confirmation Committee objects or unless the Liquidation Trustee does not currently have unencumbered funds from which to make such payment.  If there is a dispute as to a part of an invoice, the Liquidation Trustee shall pay the undisputed portion and the Bankruptcy Court shall resolve any disputed amount.

## ARTICLE 3
## TERM AND COMPENSATION FOR LIQUIDATION TRUSTEE

3.1    <u>Compensation</u>

(a)    In addition to the compensation allowed by the Bankruptcy Court to the Chapter 11 Trustee based on monies disbursed by the Estate including any payments made prior to the Effective Date, the Liquidation Trustee shall be entitled to receive compensation for services rendered under this Agreement in the amount of 3% of all distributions required under the Plan or this Agreement (i) that are not satisfied by the Debtor's bankruptcy estate but (ii) excluding distributions on account of any operating expenses of the Liquidating Trust that accrue and relate to the period after the Effective Date and funding of the Liquidation Trust, including payments to the Liquidation Trustee Professionals and Liquidation Trustee Non-Professionals (the "**Distribution Fee**"). The Distribution Fee shall accrue and be first payable on the earlier of (x) the first Business Day of the month following the first distribution to Liquidation Trust Beneficiaries under this Agreement, or (y) the date the Liquidation Trust is dissolved and terminated pursuant to Article 14.1. Subsequently, the Distribution Fee shall be payable on the first Business Day of every succeeding month following any further distributions giving rise to a Distribution Fee, until the date the Liquidation Trust is dissolved and terminated pursuant to Article 14.1 or by an order of the Bankruptcy Court.

(b)    The Liquidation Trustee may seek an order of the Bankruptcy Court for a compensation enhancement in excess of the Distribution Fee upon notice to the Post-Confirmation Committee and an opportunity to object.

(c)    The Liquidation Trustee shall be entitled to reimbursement of all reasonable, out-of-pocket expenses payable on the first Business Day of the month following the Liquidation Trustee's incurrence of such reasonable, out-of-pocket expenses.

(d)    The Liquidation Trust Assets shall be liable for all compensation and other amounts payable to the Liquidation Trustee under this Agreement.

11

152516763.8

(e)    The Liquidation Trustee shall provide the Post-Confirmation Committee notice and an accounting of any payment of compensation or reasonable, out-of-pocket expenses, pursuant to this Section 3.1, thirty (30) calendar days prior to such disbursement.

### 3.2    Termination

The duties, responsibilities, and powers of the Liquidation Trustee will terminate on the date the Liquidation Trust is dissolved and terminated pursuant to Article 14.1, or by an order of the Bankruptcy Court.

### 3.3    No Bond

The Liquidation Trustee shall serve without bond.

### 3.4    Removal

The Liquidation Trustee may be removed for cause following the vote of a majority of the Post-Confirmation Committee to file a motion to remove under 11 U.S.C. § 324, and the entry of a Final Order of the Bankruptcy Court finding such cause and granting such motion after notice and a hearing. The Post-Confirmation Committee shall provide the Liquidation Trustee with thirty (30) days written notice of its intent to remove the Liquidation Trustee and the alleged basis for such removal.  As set forth in the Plan, the Liquidation Trustee shall be able to cure the alleged grounds during such 30-day period. For purposes of removing the Liquidation Trustee, "cause" shall have the meaning set forth in 11 U.S.C. § 324 including gross negligence, breach of fiduciary duty, breach of trust, self-dealing, fraud, reckless or willful mishandling of the Liquidation Trust Assets, or a criminal act in the performance of the Liquidation Trustee's duties.  In each instance, the Liquidation Trustee may not be removed until a successor Liquidation Trustee has been named or is capable of being named immediately upon removal. Any fees and unreimbursed expenses that have been properly incurred by the Liquidation Trustee in accordance with the terms of this Agreement that are owing to the Liquidation Trustee as of the date of the Liquidation Trustee's removal shall be paid to the Liquidation Trustee within seven (7) calendar days of the removal date.

### 3.5    Resignation

The Liquidation Trustee may resign by giving not less than sixty (60) calendar days' prior written notice thereof to the Bankruptcy Court, the Post-Confirmation Committee, and the Liquidation Trust Beneficiaries.

### 3.6    Death or Incapacitation

The Liquidation Trustee shall be immediately removed, without further action, upon the Liquidation Trustee's death, incapacitation, or unavailability for a period greater than sixty (60) calendar days; *provided*, *however*, that unless a successor Liquidation Trustee has been named or is capable of being named by the Post-Confirmation Committee immediately upon such removal under this Section, D. Edward Hays of Marshack Hays Wood LLP, shall serve as the interim

12

Liquidation Trustee until the Post-Confirmation Committee names a successor Liquidation Trustee.

## ARTICLE 4
## PROVISIONS REGARDING DISTRIBUTIONS

4.1    Priority and Method of Distributions

(a)    Generally.  The Liquidation Trustee, on behalf of the Liquidation Trust, or such other Person as may be designated in accordance with this Agreement, will make distributions to the those persons entitled to payments from the Liquidation Trust including the Liquidation Trust Beneficiaries in accordance with the priorities set forth in the Bankruptcy Code and pursuant to this Agreement and in accordance with provisions of the Plan.  Whenever any distribution to be made under the Plan or this Agreement is due on a day other than a Business Day, such distribution shall be made, without interest, on the immediately succeeding Business Day, but any such distribution will have been deemed to have been made on the date due.

(b)    Distribution of Liquidation Trust Assets and Proceeds Thereof. All Liquidation Trust Assets and all Liquidation Trust Asset Proceeds shall be distributed in accordance with the terms of this Agreement, the Plan, and Confirmation Order.

(c)    Timing of Distributions.  Except as specifically set forth in the Plan, the Liquidation Trustee may determine, in its discretion, the appropriate timing, amount, and cadence for distributions.

(d)    Periodic Distribution Requirement.  Subject to the provisions of this Article 4 and to the extent required to maintain grantor trust tax status, the Liquidation Trustee is required to distribute within thirty (30) days after the end of each calendar quarter following the Effective Date, or upon such other interval as the Bankruptcy Court may order, but in no event less frequently than annually, to the Liquidation Trust Beneficiaries the Liquidation Trust's net income plus all net proceeds from the sale, realization, settlement, or liquidation of the Liquidation Trust Assets, except that the Liquidation Trustee may retain an amount of net proceeds or net income reasonably necessary to maintain the value of the Liquidation Trust Assets, to satisfy current and projected expenses of the Liquidation Trust, and to satisfy Claims and contingent liabilities (including Disputed Claims).

(e)    Withholding.  When making a Distribution, the Liquidation Trustee may retain an amount of Liquidation Trustee Assets reasonably necessary to satisfy current and projected expenses of the Liquidation Trust, and to satisfy Claims and contingent liabilities (including Disputed Claims). The Liquidation Trustee may also withhold from amounts distributable to any Person any and all amounts, to be determined in the Liquidation Trustee's reasonable sole discretion, required by any law, regulation, rule, ruling, directive or other government equivalent of the United States or of any political subdivision thereof.  To the extent that amounts are so withheld and paid over to the appropriate governmental entity, such amounts shall be treated for all purposes of this Agreement as having been paid to the Person in respect of whom such deduction and withholding was made.

152516763.8

(f)    <u>Tax Identification Numbers</u>.  The Liquidation Trustee is authorized to request and obtain from the Liquidation Trust Beneficiaries or any other Person Forms W-8 and/or W-9 or such other forms or information relating to the Liquidation Trustee's obligations to withhold as the Liquidation Trustee may reasonably request, and the Liquidation Trustee may condition any distribution to any Liquidation Trust Beneficiary or other distributee upon receipt of such forms or information.

4.2    <u>Delivery of Distributions.</u>

Subject to the provisions of Federal Rule of Bankruptcy Procedure 2002(g), and except as otherwise provided herein, Distributions to the Liquidation Trust Beneficiaries shall be made: (i) at the addresses set forth on the respective proofs of Claim Filed by such Holders; (ii) at the addresses set forth in any written notices of address changes delivered to the Liquidation Trustee after the date of any related proof of Claim; or (iii) at the address reflected in the Schedules if no proof of Claim is Filed and the Liquidation Trustee has not received a written notice of a change of address.

4.3    <u>Undeliverable Distributions.</u>

If the Distribution to a Liquidation Trust Beneficiary is returned to the Liquidation Trustee as undeliverable ("**Undeliverable Distributions**"), no further Distribution shall be made to such Liquidation Trust Beneficiary unless and until the Liquidation Trustee is notified in writing of such Liquidation Trust Beneficiary's then current address. Undeliverable Distributions shall remain in the possession of the Liquidation Trustee until the earlier of (i) such time as a Distribution becomes deliverable or (ii) such Undeliverable Distribution becomes an Unclaimed Distribution under this Agreement and the Plan.

The Liquidation Trustee shall make reasonable efforts to update or correct contact information for recipients of undeliverable Distributions, *provided*, *however*, to the extent consistent with the Plan, this Agreement shall not require the Liquidation Trustee to locate any Liquidation Trust Beneficiary.

4.4    <u>Unclaimed Distributions</u>

Any entity which fails to claim any Cash within 90 days from the date upon which a distribution is first made to such entity shall forfeit all rights to any distribution under the Plan, and the Liquidation Trustee shall be authorized to cancel any distribution that is not timely claimed. Pursuant to section 347(b) of the Bankruptcy Code, upon forfeiture, such Cash (including interest thereon, if any) shall revert to the source of such distribution (*i.e.,* the Liquidation Trust) free of any restrictions under the Plan, the Bankruptcy Code or the Bankruptcy Rules. Upon forfeiture, the claim of any Creditor or Interest Holder with respect to such funds shall be irrevocably waived and forever barred against the Debtor, the Estate, and the Liquidation Trustee, notwithstanding any federal or state escheat laws to the contrary, and such Creditor or Interest Holder shall have no claim whatsoever against the any of the foregoing or to any Holder of a Claim to whom distributions are made.

4.5     Remainder Amounts After Final Distribution

After final Distributions have been made in accordance with the terms of the Plan, if the aggregate amount of Unclaimed Distributions and Undeliverable Distributions is less than $10,000, the Liquidation Trustee may donate such amount to a non-profit organization maintained for the benefit of consumers that is mutually agreeable to counsel for the Post-Confirmation Committee and the Liquidation Trustee such as the National Consumer Bankruptcy Rights Center or the National Consumer Law Center.

4.6     De Minimis Distributions

If any interim distribution under the Plan to the Holder of an Allowed Claim would be less than $50.00, the Liquidation Trustee may withhold such distribution until a final distribution is made to such Holder. If any final distribution under the Plan to the Holder of an Allowed Claim would be less than $50.00, the Liquidation Trustee may cancel such distribution. Any potential distributions pursuant to this Section shall be treated as an Unclaimed Distribution under Section 9.02(i) of the Plan.

## ARTICLE 5
## PROCEDURES FOR RESOLUTION OF DISPUTED,
## CONTINGENT, AND UNLIQUIDATED CLAIMS OR EQUITY INTERESTS

5.1     Objections to Claims; Prosecution of Disputed Claims

Except insofar as a Claim is Allowed under the Plan on and after the Effective Date, the Liquidation Trustee will have the authority, but not the obligation, to do any of the following with respect to any Claims or Interests: (1) file, withdraw, or litigate to judgment objections to and requests for estimation of Claims; (2) settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) administer and adjust the Claims register to reflect any such settlements or compromises without any further notice to or action, order, or approval by, the Bankruptcy Court. The Liquidation Trustee shall succeed to any pending objections to Claims filed by the Trustee (or any other Estate representative including, but not limited to, the Committee) prior to the Effective Date, and shall have and retain any and all rights and defenses the Debtor and/or the Estate had immediately prior to the Effective Date with respect to any Disputed Claim. The Liquidation Trustee shall not be obligated to object to any Claim but may consult with the Post-Confirmation Committee in deciding whether to object to any particular Claim.

5.2     Estimation of Claims

The Liquidation Trustee may at any time request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtor, the Trustee, the Liquidation Trustee, or any other Estate representative previously have objected to such Claim or whether the Bankruptcy Court has ruled on any such objection. The Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection. Subject to the provisions of section 502(j)

152516763.8

of the Bankruptcy Code, in the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, the amount so estimated shall constitute the maximum allowed amount of such Claim. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Liquidation Trustee may pursue supplementary proceedings to object to the allowance of such Claim. All of the aforementioned objection, estimation and resolution procedures are intended to be cumulative and not necessarily exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

      5.3    <u>Payments and Distributions on Disputed Claims</u>

           (a)    Notwithstanding anything herein to the contrary: (a) no distribution shall be made with respect to any Disputed Claim until such Claim becomes an Allowed Claim (as applicable), and (b) unless agreed otherwise by the Liquidation Trustee no distribution shall be made to any Person that holds both an Allowed Claim and a Disputed Claim until such Person's Disputed Claims have been resolved by settlement or Final Order.

           (b)    Except as otherwise provided in a Final Order or as agreed by the relevant parties, distributions on account of Disputed Claims, if any, that become Allowed, shall be made by the Liquidation Trustee at such periodic intervals as the Liquidation Trustee determines to be reasonably prudent. No interest will be paid on Disputed Claims that later become Allowed or with respect to any distribution in satisfaction thereof to a Holder.

**ARTICLE 6**
**<u>LIABILITY AND EXCULPATION PROVISIONS</u>**

      6.1    <u>Standard of Liability</u>

      In no event shall the Liquidation Trustee or the Liquidation Trustee Professionals, Liquidation Trustee Non-Professionals, Post-Confirmation Committee, Committee Professionals, Affiliates, representatives, employees, directors, officers, or principals be held personally liable for any claim, expense, liability or other obligation asserted against the Liquidation Trust. The Post-Confirmation Committee and the Liquidation Trustee, and all of the Liquidation Trustee Professionals, Liquidation Trustee Non-Professionals, Committee Professionals, Affiliates, representatives, employees, directors, officers or principals shall not be liable for any negligence or any error of judgment made in good faith with respect to any action taken or omitted to be taken in good faith, except to the extent that the action taken or omitted to be taken by each of the same or their respective Liquidation Trustee Professionals, Liquidation Trustee Non-Professionals, Committee Professionals, Affiliates, representatives, employees, directors, officers or principals is determined by a Final Order to be solely due to their own respective gross negligence, willful misconduct, bad faith, reckless disregard of any duty, self-dealing, fraud or a criminal act in the performance of its duties. Any act or omission taken with the approval of the Bankruptcy Court will be conclusively deemed not to constitute gross negligence or willful misconduct.

16

6.2     Reliance by Liquidation Trustee

Except as otherwise provided herein:

(a)     the Liquidation Trustee and Post-Confirmation Committee may rely, and shall be protected in acting upon, any resolution, certificate, statement, installment, opinion, report, notice, request, consent, order, or other paper or document reasonably believed to be genuine and to have been signed or presented by the proper party or parties;

(b)     the Liquidation Trustee and Post-Confirmation Committee shall not be liable for any action reasonably taken or not taken in accordance with the advice of a Liquidation Trustee Professional; and

(c)     persons dealing with the Liquidation Trustee or Post-Confirmation Committee shall look only to the Liquidation Trust Assets to satisfy any liability incurred by the Liquidation Trustee to such person in carrying out the terms of this Agreement, and the Liquidation Trustee shall not have any personal obligation to satisfy any such liability, except to the extent that actions taken or not taken after the Effective Date by the Liquidation Trustee are determined by a Final Order to be solely due to the Liquidation Trustee's own gross negligence, willful misconduct, bad faith, reckless disregard of any duty, self-dealing, fraud or a criminal act in the performance of its duties unless there is a provision contained in this trust or any approved amendment which relieves the Liquidation Trustee of liability.

(d)     The Liquidation Trustee shall not be liable for any action or inaction including omissions when such actions, inactions, or omissions were undertaken with the approval or knowledge of the Post-Confirmation Committee or its counsel.

6.3     Exculpation; Indemnification

(a)     Exculpation.    From and after the Effective Date, the Post-Confirmation Committee, the Liquidation Trustee, and the Liquidation Trustee Professionals, Liquidation Trustee Non-Professionals, Committee Professionals, Affiliates, representatives, employees, directors, officers or principals, shall be and hereby are exculpated by all Persons and Entities, including, without limitation, the Liquidation Trust, Holders of Claims, and other parties in interest, from any and all claims, causes of action and other assertions of liability arising out of the discharge of the powers and duties conferred upon said parties pursuant to or in furtherance of this Agreement, the Plan, or any order of the Bankruptcy Court or applicable law or otherwise, except only for actions taken or not taken, from and after the Effective Date only to the extent determined by a Final Order to be solely due to their own respective gross negligence, willful misconduct, bad faith, reckless disregard of any duty, self-dealing, fraud or a criminal act in the performance of its duties.

(b)     No Holder of a Claim or other party-in-interest will have or be permitted to pursue any claim or cause of action against the Post-Confirmation Committee, Liquidation Trustee, the Liquidation Trustee Professionals, Liquidation Trustee Non-Professionals, Committee Professionals, representatives, employees, directors, officers or principals for making payments in accordance with the Plan or this Agreement or for

17

152516763.8

implementing the provisions of the Plan or this Agreement.  Any act taken or not taken, in the case of the Liquidation Trustee and Post-Confirmation Committee, with the approval of the Bankruptcy Court, will be conclusively deemed not to constitute gross negligence or willful misconduct.

(c)    Indemnification.  The Liquidation Trust shall indemnify, defend and hold harmless the Post-Confirmation Committee, Liquidation Trustee, the Liquidation Trustee Professionals, the Liquidation Trustee Non-Professionals, and the Committee Professionals solely from Liquidation Trust Assets, from and against any and all claims, causes of action, liabilities, obligations, losses, damages or expenses (including attorneys' fees and expenses) occurring after the Effective Date, other than to the extent determined by a Final Order to be solely due to their own respective gross negligence, willful misconduct, bad faith, reckless disregard of any duty, self-dealing, fraud or a criminal act in the performance of its duties, to the fullest extent permitted by applicable law.  Satisfaction of any obligation of the Liquidation Trust arising pursuant to the terms of this Article shall be payable only from the Liquidation Trust Assets, may be advanced (from insurance or Liquidation Trust Assets) prior to the conclusion of such matter, and such right to payment shall be prior and superior to any other rights to receive a distribution of the Liquidation Trust Assets. Further, there shall be no recourse to those persons or entities set forth in the first sentence of this section (c) if an act or failure to act has been approved by a Court order. All claims against the Liquidation Trustee or the Post-Confirmation Committee must be brought in the Chapter 11 Case or as otherwise consistent with Section 16.4.

## ARTICLE 7
## ESTABLISHMENT OF THE LIQUIDATION TRUST

7.1    Trust Funding; Transfer of Assets to Liquidation Trust; Assumption of Liabilities

Pursuant to the Plan, the Liquidation Trustee and Post-Confirmation Committee hereby establish the Liquidation Trust on behalf of the Liquidation Trust Beneficiaries, to be treated as the grantors and deemed owners of the Liquidation Trust Assets and the Trustee (on behalf of the Estate) hereby transfers, assigns, and delivers to the Liquidation Trust, on behalf of the Liquidation Trust Beneficiaries, all of their right, title, and interest in the Liquidation Trust Assets (subject to valid liens of creditors as determined by the Bankruptcy Court), including the related claims and Causes of Action of the Debtor, other than Released Causes of Action in accordance with the provisions of the Plan, notwithstanding any prohibition of assignability under applicable non-bankruptcy law. Such transfer includes, but is not limited to, all rights to assert, waive or otherwise exercise any attorney-client privilege, work product protection or other privilege, immunity, or confidentiality provision vested in, or controlled by, the Debtor. The Liquidation Trustee agrees to accept and hold the Liquidation Trust Assets in the Liquidation Trust for the benefit of the Liquidation Trust Beneficiaries, subject to the terms of the Plan and this Agreement.

The costs and expenses of the Liquidation Trust, including, without limitation, the compensation to and reimbursement of expenses of the Liquidation Trustee and Post-Confirmation Committee, and the fees, costs and expenses of all professionals retained by the Liquidation Trustee and Post-Confirmation Committee in connection with the performance of their duties in connection with this Agreement, shall be initially paid from a fund set aside on the

152516763.8

Effective Date (the "**Liquidation Trustee Funds**"). If the Liquidation Trustee Funds cannot be set aside on the Effective Date for any reason including lien disputes, such funds shall be set aside as soon as is reasonably practicable after resolution of such reasons or disputes. The Liquidation Trustee Funds shall not be subject to charge for claims against the Liquidation Trust, the Liquidation Trustee, or the Debtor's Estate. Any funds remaining in the Liquidation Trustee Funds after completion of the Liquidation Trustee's activities and full payment of all costs and expenses of the Liquidation Trust including, without limitation, the fees, costs and expenses of the Liquidation Trustee and the professionals retained by the Liquidation Trustee and the Post-Confirmation Committee, shall be paid to the Liquidation Trust Beneficiaries according to the terms of the Plan and this Agreement.

7.2     Title to Assets

(a)     On the Effective Date, the Trustee, on behalf of the Debtor's Estate, shall transfer the Liquidation Trust Assets to the Liquidation Trust (subject to any valid liens as determined by the Bankruptcy Court) for the benefit of the Liquidation Trust Beneficiaries.  Notwithstanding any prohibition of assignability under applicable non-bankruptcy law, all assets and properties encompassed by the Plan shall vest in the Liquidation Trust in accordance with section 1141 of the Bankruptcy Code.  Upon the transfer of the Liquidation Trust Assets to the Liquidation Trust, the Debtor shall have no interest in or with respect to such Liquidation Trust Assets or the Liquidation Trust.

(b)     For all federal income tax purposes, all Parties and Liquidation Trust Beneficiaries shall treat the transfer of the Liquidation Trust Assets by the Trustee (on behalf of the Debtor and the Estate) to the Liquidation Trust, as set forth in this Article 7 and in the Plan, as a transfer of such assets by the Trustee to the Liquidation Trust Beneficiaries entitled to distributions under this Agreement followed by a transfer by such Liquidation Trust Beneficiaries to the Liquidation Trust.  Thus, the Liquidation Trust Beneficiaries shall be treated as the grantors and owners of a grantor trust for federal income tax purposes.

7.3     Valuation of Assets

As soon as practicable after the Effective Date, the Liquidation Trustee (to the extent that the Liquidation Trustee deems it necessary or appropriate in the Liquidating Trustee's discretion), shall value the Liquidation Trust Assets based on the good faith determination of the Liquidation Trustee.  The valuation shall be used consistently by all Parties and the Liquidation Trust Beneficiaries for all federal income tax purposes.  The Bankruptcy Court shall resolve any dispute regarding the valuation of the Liquidation Trust Assets.

**ARTICLE 8**
**LIQUIDATION TRUST BENEFICIARIES**

8.1     Identification of Liquidation Trust Beneficiaries

In order to determine the actual names and addresses of the Liquidation Trust Beneficiaries, the Liquidation Trustee shall be entitled to conclusively rely on the names and addresses set forth in the filed proofs of claim, unless the Liquidation Trustee receives timely

19

notice of a Liquidation Trust Beneficiary's change of address. Each Liquidation Trust Beneficiary's right to distribution from the Liquidation Trust, which is dependent upon such Liquidation Trust Beneficiary's classification under the Plan, shall be that accorded to such Liquidation Trust Beneficiary under the Plan.

## ARTICLE 9
## ADMINISTRATION

### 9.1    Purpose of the Liquidation Trust

The Liquidation Trust shall be established for the primary purpose of liquidating its assets, in accordance with Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidation purpose of the Liquidation Trust. Accordingly, the Liquidation Trustee shall, in an expeditious but orderly manner, liquidate and convert to Cash the Liquidation Trust Assets, make timely distributions to the Liquidation Trust Beneficiaries and not unduly prolong its duration, and shall take or refrain from taking such other actions as may be necessary, in the Liquidation Trustee's reasonable judgment, and subject to the consent of the Post-Confirmation Committee, to preserve and maintain the status of the Liquidation Trust as a "liquidation trust" and as a "grantor trust" within the meaning of Treasury Regulation sections 301.7701-4(d) and 1.671-4(a). The Liquidation Trust shall not be deemed a successor-in-interest of the Debtor for any purpose other than as specifically set forth in the Plan or this Agreement.

### 9.2    Books and Records

The Liquidation Trustee shall maintain books and records relating to the administration of the Liquidation Trust Assets and the distribution by the Liquidation Trustee of the proceeds therefrom in such detail and for such period of time as may be necessary to make full and proper accounting in respect thereof and to comply with applicable provisions of law. The Liquidation Trustee shall also maintain books and records relating to the administration of the Liquidation Trust Assets (including the Causes of Action), the income and expenses of the Liquidation Trust, and the payment of expenses of and liabilities of, claims against or assumed by, the Liquidation Trust in such detail and for such period of time as may be necessary to make full and proper accounting in respect thereof and to comply with applicable provisions of law. Except as otherwise provided herein or in the Plan, nothing in this Agreement requires the Liquidation Trustee to file any accounting or seek approval of any court with respect to the administration of the Liquidation Trust, or as a condition for making any payment or distribution out of the Liquidation Trust Assets. The Post-Confirmation Committee may obtain information relating to the management of the Liquidation Trust Assets upon reasonable written notice to the Liquidation Trustee. The Liquidation Trustee may dispose of or destroy all books and records one year after all funds have been substantially distributed. Any unclaimed or de minimis funds shall not prevent the Liquidation Trustee from disposing of all trust records.

152516763.8

9.3     Compliance with Laws

Any and all distributions of Liquidation Trust Assets shall comply with all applicable laws and regulations, including, but not limited to, applicable federal and state tax and securities laws.

### ARTICLE 10
### SUCCESSOR LIQUIDATION TRUSTEE

10.1     Successor Liquidation Trustee

In the event the Liquidation Trustee is removed pursuant to this Agreement, resigns pursuant to this Agreement, or otherwise vacates the position, then the Post-Confirmation Committee shall appoint a successor Liquidation Trustee by a majority vote of all members.  If a successor Liquidation Trustee is not so appointed, then the Bankruptcy Court shall appoint a successor in accordance with the best interests of the Liquidation Trust Beneficiaries.  Any successor Liquidation Trustee appointed hereunder shall execute an instrument accepting such appointment.  Thereupon, such successor Liquidation Trustee shall, without any further act, become vested with all the estates, properties, rights, powers, trusts and duties of her/her predecessor in the Liquidation Trust with like effect as if originally named herein; *provided*, *however*, that a removed or resigning Liquidation Trustee shall, nevertheless, when requested in writing by the successor Liquidation Trustee, execute and deliver any reasonable instrument or instruments conveying and transferring to such successor Liquidation Trustee all the estates, properties, rights, powers, and trusts of such removed or resigning Liquidation Trustee.

### ARTICLE 11
### REPORTING

11.1     Quarterly and Final Reports

As soon as practicable but in no event later than thirty (30) calendar days after the end of the first full quarter following the Effective Date and on a quarterly basis thereafter until all Cash in the Liquidation Trust has been distributed or otherwise paid out in accordance with the Plan and this Agreement, the Liquidation Trustee shall File a report with the Bankruptcy Court setting forth the amounts, recipients, and dates of all Distributions made by the Liquidation Trustee through each applicable reporting period.

11.2     Federal Income Tax

(a)     Grantor Trust Status.  Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the issuance of applicable Treasury Regulations, the receipt by the Liquidation Trustee of a private letter ruling if the Liquidation Trustee so requests one, or the receipt of an adverse determination by the IRS upon audit if not contested by the Liquidation Trustee), the Liquidation Trustee shall file tax returns for the Liquidation Trustee as a grantor trust pursuant to Treasury Regulation section 1.671-4(a).

(b)     Allocations of Liquidation Trust Taxable Income.  Subject to the provisions of Article 11.2(a) hereof, allocations of Liquidation Trust taxable income shall be

21

determined by reference to the manner in which an amount of cash equal to such taxable income would be distributed (without regard to any restriction on distributions described herein) if, immediately prior to such deemed distribution, the Liquidation Trust had distributed all of its other assets (valued for this purpose at their tax book value) to the Liquidation Trust Beneficiaries (treating any Holder of a Disputed Claim, for this purpose, as a current Liquidation Trust Beneficiary entitled to distributions), taking into account all prior and concurrent distributions from the Liquidation Trust (including any distributions held in reserve pending the resolution of Disputed Claims).  Similarly, taxable losses of the Liquidation Trust will be allocated by reference to the manner in which an economic loss would be borne immediately after a liquidating distribution of the remaining Liquidation Trust Assets.  The tax book value of the Liquidation Trust Assets for this purpose shall equal their fair market value on the Effective Date or, if later, the date such assets were acquired by the Liquidation Trust, adjusted in either case in accordance with tax accounting principles prescribed by the United States Internal Revenue Code, the Treasury Regulations and any other applicable administrative and judicial authorities and pronouncements.

(c)    <u>Tax Reporting Duties of Liquidation Trustee</u>.  Within sixty (60) calendar days following the end of each calendar year, the Liquidation Trustee shall prepare and distribute a statement setting forth the information necessary for each Liquidation Trust Beneficiary to determine its share of items of income, gain, loss, deduction or credit for United States federal income tax purposes.

11.3    <u>Other</u>

The Liquidation Trustee shall file (or cause to be filed) any other statement, returns or disclosures relating to the Liquidation Trust or the Liquidation Trust Assets, that are required by the IRS or any other Governmental Unit.

## ARTICLE 12
## TRANSFERABILITY OF LIQUIDATION TRUST BENEFICIARIES' INTERESTS

12.1    <u>Transferability of Liquidation Trust Beneficiaries' Interests</u>

The beneficial interests that are owned by the Liquidation Trust Beneficiaries, which shall be reflected only on the records of the Liquidation Trust maintained by the Liquidation Trustee, shall be uncertificated, are not negotiable, and shall not be assignable or transferable voluntarily.  In the case of a deceased individual Liquidation Trust Beneficiary, his or her executor or administrator shall succeed to such decedent's beneficial interest upon notice to the Liquidation Trustee.

## ARTICLE 13
## LIQUIDATION TRUSTEE PROFESSIONALS
## AND NON-PROFESSIONALS

13.1    <u>Retention of Liquidation Trustee Professionals and Non-Professionals</u>

(a)    The Liquidation Trustee shall have the right to retain professionals including, without limitation, claims, disbursing and transfer agents, legal counsel, accountants,

152516763.8

experts and other agents or advisors, as the Liquidation Trustee deems appropriate (the "**Liquidation Trustee Professionals**") and on such terms as the Liquidation Trustee deems appropriate; provided, however, that the Liquidating Trustee's retention of Liquidation Trustee Professionals shall be subject to approval by the Post-Confirmation Committee. For continuity and to protect creditors' interests (by minimizing administrative expenses), the Liquidating Trustee shall seek to employ professionals with the greatest degree of familiarity with the facts of this case, and financial advisors (if any) that are investigating such claims as of the Effective Date. The Liquidating Trustee shall first use his best efforts to engage counsel/professionals to pursue claims on a contingency basis whenever and wherever possible or practicable, on terms and conditions satisfactory to the Post-Confirmation Committee, prior to engaging counsel/professionals on an hourly fee basis, and may employ a financial advisor to perform work on an hourly basis. The Liquidation Trustee Professionals shall be compensated in accordance with Article 13.2 hereof. The Liquidation Trustee Professionals so retained need not be "disinterested" as that term is defined in the Bankruptcy Code and may include, without limitation, counsel and financial advisors of the Committee and Committee Professionals, subject to appropriate conflict waivers. The Liquidating Trustee's retention of Liquidation Trustee Professionals after the Effective Date shall not be subject to Bankruptcy Court approval. For sake of continuity, the Liquidating Trustee may employ, without further consent, Fox Rothschild LLP, Dinsmore & Shohl LLP, Marshack Hays Wood LLP, Grobstein Teeple, and Force 10, subject to the Post-Confirmation Committee's right to consent to the terms of engagement of such professionals by the Liquidation Trust, as set forth in Section 2.10(c).

(b)    The Liquidation Trustee shall have the right to retain non-professionals including, without limitation, trustee administrators, employees, independent contractors or other agents as the Liquidation Trustee deems appropriate (the "**Liquidation Trustee Non-Professionals**") and on such terms as the Liquidation Trustee deems appropriate; provided, however, that the Liquidation Trustee's retention of Liquidation Trustee Non-Professionals shall be subject to approval of the Post-Confirmation Committee. Such Liquidation Trustee Non-Professionals shall be compensated in accordance with Article 13.2 hereof. The Liquidation Trustee Non-Professionals so retained need not be "disinterested" as that term is defined in the Bankruptcy Code and may include, without limitation, employees, independent contractors or agents of the Committee and the Post-Confirmation Committee. The Liquidating Trustee's retention of Liquidation Trustee Non-Professionals after the Effective Date shall not be subject to Bankruptcy Court approval. For sake of continuity, the Liquidating Trustee may employ, without further consent, the two administrators employed by the chapter 11 trustee at hourly rates not to exceed $275, subject to the Post-Confirmation Committee's rights set forth in Section 2.10(c).

13.2    <u>Payment to Liquidation Trustee Professionals and Liquidation Trustee Non-Professionals</u>

(a)    After the Effective Date, Liquidation Trustee Professionals and Committee Professionals shall be required to submit to the Liquidation Trustee and the Post-Confirmation Committee periodic invoices containing information with sufficient detail to assess the reasonableness of the fees and charges. Such information shall include a description of the work performed, who performed such work, and if billing on an hourly basis, the hourly rate of each such person, plus an itemized statement of expenses. The Liquidation Trustee shall pay

152516763.8

those invoices twenty-one (21) calendar days after an electronic copy of such invoices is provided to the Liquidation Trustee and the Post-Confirmation Committee, without Bankruptcy Court approval, unless the Liquidation Trustee or the Post-Confirmation Committee objects in writing within fourteen (14) days after their receipt of such invoices. If there is a dispute as to a part of an invoice, the Liquidation Trustee shall pay the undisputed portion and the Bankruptcy Court shall resolve any disputed amount.

(b)     After the Effective Date, Liquidation Trustee Non-Professionals shall be required to submit to the Liquidation Trustee and the Post-Confirmation Committee periodic invoices containing information with sufficient detail to assess the reasonableness of the fees and charges. The Liquidation Trustee shall pay those invoices twenty-one (21) calendar days after a copy of such invoices is electronically provided to the Liquidation Trustee and the Post-Confirmation Committee, without Bankruptcy Court approval, unless the Liquidation Trustee or the Post-Confirmation Committee objects in writing within fourteen (14) days after their receipt of such invoices. If there is a dispute as to a part of an invoice, the Liquidation Trustee shall pay the undisputed portion and the Bankruptcy Court shall resolve any disputed amount.

(c)     All payments to Liquidation Trustee Professionals, Liquidation Trustee Non-Professionals, and Committee Professionals shall be paid out of the Liquidation Trust Assets including the Liquidation Trustee Funds. Notwithstanding anything to the contrary herein, the Liquidation Trustee may retain Liquidation Trustee Professionals on a contingent basis, to be paid out of litigation recoveries, under such terms and conditions as the Liquidation Trustee deems appropriate on terms and conditions deemed satisfactory by the Post-Confirmation Committee.

## ARTICLE 14
## TERMINATION OF LIQUIDATION TRUST

14.1     Duration and Extension

Notwithstanding any provision of the Plan to the contrary, the Liquidation Trust shall be dissolved upon the earlier of the distribution of all Liquidation Trust Assets to the Liquidating Trust Beneficiaries required to be made by the Liquidating Trust under the Plan or the fifth anniversary of the creation of the Liquidating Trust, *provided*, *however*, notwithstanding the foregoing, the Liquidating Trust shall be dissolved no later than five (5) years from the Effective Date unless the Bankruptcy Court, upon a motion filed at least six (6) months prior to the fifth anniversary of the Effective Date or the end of any extension period approved by the Bankruptcy Court (the filing of which shall automatically extend the term of the Liquidation Trust pending the entry of an order by the Bankruptcy Court granting or denying the motion), determines that a fixed period extension (not to exceed three (3) years, together with any prior extensions, without a favorable letter ruling from the IRS that any further extension would not adversely affect the status of the Liquidation Trust as a Liquidation trust for federal income tax purposes) is necessary to facilitate or complete the recovery and liquidation of the Liquidation Trust Assets; *provided*, *however*, that adequate funding exists for such extension period as determined by the Bankruptcy Court; provided, further, that each request for an extension shall be approved by the Bankruptcy Court within six months prior to the conclusion of the extended term. After (a) the

24

final Distribution of the balance of the assets or proceeds of the Liquidation Trust pursuant to the Plan, (b) the filing by or on behalf of the Liquidation Trust of a certification of dissolution with the Bankruptcy Court in accordance with the Plan, and (c) any other action deemed appropriate by the Liquidation Trustee, the Liquidation Trust shall be deemed dissolved for all purposes without the necessity for any other or further actions.

14.2    Diligent Administration

The Liquidation Trustee shall, as applicable, (i) not unduly prolong the duration of the Liquidation Trust; (ii) at all times endeavor to resolve, settle or otherwise dispose of all claims that constitute Liquidation Trust Assets; (iii) effect the liquidation and distribution of the Liquidation Trust Assets to the Liquidation Trust Beneficiaries in accordance with the terms hereof; (iv) consult and confer with the Post-Confirmation Committee and keep it fully advised of the Liquidation Trustee's activities; and (v) endeavor to terminate the Liquidation Trust as soon as reasonably practicable.

## ARTICLE 15
## AMENDMENT AND WAIVER

15.1    Amendment and Waiver

Any substantive provision of this Agreement may be materially amended or waived only with the written consent of the Liquidation Trustee and the Post-Confirmation Committee or by order of the Bankruptcy Court if necessary to implement the Plan; *provided*, *however*, that no change may be made to this Agreement that would adversely affect the federal income tax status of the Liquidation Trust as a "grantor trust." Technical or non-material amendments to or waivers of portions of this Agreement may be made as necessary, to clarify this Agreement or to enable the Liquidation Trust to effectuate the terms of this Agreement, with the consent of the Liquidation Trustee and the Post-Confirmation Committee.

## ARTICLE 16
## MISCELLANEOUS PROVISIONS

16.1    Intention of Parties to Establish Grantor Trust

This Agreement is intended to create a grantor trust for United States federal income tax purposes and, to the extent provided by law, shall be governed and construed in all respects as a grantor trust.

16.2    Preservation of Privilege

In connection with the vesting and transfer of the Liquidation Trust Assets, including rights and Causes of Action, any attorney-client privilege, work-product protection, or other privilege or immunity attaching or relating to any documents or communications (of any kind, whether written or oral, electronic or otherwise) held by the Debtor or the Estate shall be transferred to the Liquidation Trust and shall vest in the Liquidation Trust. Accordingly, in connection with the prosecution and/or investigation of the Causes of Action by the Liquidation Trustee, any and all directors, officers, employees, counsel, agents, or attorneys-in-fact, of the

25

Debtor, cannot assert any attorney-client privilege, work product protection, or other privilege or immunity attaching or relating to any documents or communications (of any kind, whether written or oral, electronic or otherwise) held by the Debtor or otherwise prevent, hinder, delay, or impede production or discussion of documents or communications requested by the Liquidation Trustee in discovery (whether formal or informal, and including without limitation, depositions, written discovery, and interviews).  The Debtor and the Liquidation Trustee shall take all necessary actions to protect the transfer of such privileges, protections, and immunities.

16.3   Prevailing Party - Deleted

16.4   Venue

Any dispute concerning this Agreement shall be brought in the Chapter 11 Case before the Bankruptcy Court.  In the event the Bankruptcy Court does not exercise jurisdiction over such dispute, then venue shall be proper in either the United States District Court for the Central District of California, Santa Ana Division, or the Superior Court of California for the County of Orange.  The Parties expressly agree to venue in the foregoing jurisdictions and waive all jurisdictional defenses with respect to any dispute arising under this Agreement brough in such venue.

16.5   Confidentiality

The Liquidation Trustee, the Post-Confirmation Committee, the Committee Professionals, and each of the Liquidation Trustee's employees, members, agents, professionals and advisors, including the Liquidation Trustee Professionals and Liquidation Trustee Non-Professionals, (each a "**Confidential Party**" and collectively the "**Confidential Parties**") shall hold strictly confidential and not use for personal gain any material, non-public information of which they have become aware in their capacity as a Confidential Party, of or pertaining to any Entity to which any of the Liquidation Trust Assets relates; *provided*, *however*, that such information may be disclosed if (a) it is now or in the future becomes generally available to the public other than as a result of a disclosure by the Confidential Parties, or (b) such disclosure is required of the Confidential Parties pursuant to legal process including but not limited to subpoena or other court order or other applicable laws or regulations.  In the event that any Confidential Party is requested to divulge confidential information pursuant to this subparagraph (b), such Confidential Party shall promptly, in advance of making such disclosure, provide reasonable notice of such required disclosure to the Liquidation Trustee to allow him sufficient time to object to or prevent such disclosure through judicial or other means and shall cooperate reasonably with the Liquidation Trustee in making any such objection, including but not limited to appearing in any judicial or administrative proceeding in support of any objection to such disclosure.

16.6   Construction

This Agreement shall be governed by and construed in accordance with applicable law including federal bankruptcy law and the laws of the State of California, without giving effect to rules governing the conflict of law. Subject to the foregoing, in resolving any such dispute, the

152516763.8

court shall be guided by the best interest of the Liquidation Trust and the Liquidation Trust Beneficiaries, as permissible.

16.7    <u>Severability</u>

Except with respect to provisions herein that are contained in the Plan, if any provision of this Agreement or the application thereof to any person or circumstance shall be finally determined by a court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Agreement, or the application of such provision to Persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and shall be valid and enforceable to the fullest extent permitted by law.

16.8    <u>Notices</u>

Any notice or other communication hereunder shall be in writing and shall be deemed to have been sufficiently given, for all purposes, if delivered by facsimile (at the numbers set forth below) and deposited, postage prepaid, in a post office or letter box addressed to the person (or their successors or replacements) for whom such notice is intended at such address as set forth below, or such other addresses as may be filed with the Bankruptcy Court:

**Liquidation Trustee:**

Richard A. Marshack, Trustee
Pam Kraus, Administrator
870 Roosevelt
Irvine, CA 92620
rmarshack@marshackhays.com
pkraus@marshackhays.com

With a copy to:

**Marshack Hays Wood LLP**
D. Edward Hays, Esq.
Laila Masud, Esq.
870 Roosevelt
Irvine, CA 92620
ehays@marshackhays.com
lmasud@marshackhays.com

**Post-Confirmation Committee through its counsel (the "Initial Post-Confirmation Committee Counsel"):**

**Fox Rothschild LLP**
Keith C. Owens, Esq.
Nicholas A. Koffroth, Esq.
10250 Constellation Boulevard, Suite 900
Los Angeles CA 90067

152516763.8

KOwens@foxrothschild.com
NKoffroth@foxrothschild.com

Names and e-mail addresses for the members of the Post-Confirmation
Committee shall be provided in writing to the Trustee within seven days after the
Effective Date and funding of the Liquidation Trust

16.9    Notices if to a Liquidation Trust Beneficiary

Any notice or other communication hereunder shall be in writing and shall be deemed to
have been sufficiently given, for all purposes, if deposited, postage prepaid, in a post office or
letter box addressed to the person for whom such notice is intended to the name and address set
forth on such Liquidation Trust Beneficiary's proof of claim or such other notice filed with the
Bankruptcy Court, or if none of the above has been filed, to the address set forth in the Debtor's
bankruptcy schedules or provided to the Liquidation Trustee pursuant to Article 8.1. The
Liquidation Trustee may alternatively serve notice to any consumer creditor pursuant to the e-
mail address provided in connection with their legal service agreements (which service was
authorized by the Bankruptcy Court prior to confirmation).

16.10   Survivability

Notwithstanding any provision of the Plan to the contrary, the terms and provisions of
this Agreement shall remain fully binding and enforceable notwithstanding any vacancy in the
position of the Liquidation Trustee.

16.11   Headings

The section headings contained in this Agreement are solely for the convenience of
reference and shall not affect the meaning or interpretation of this Agreement or of any term or
provision hereof.

16.12   Conflicts with Plan Provisions

Except as otherwise expressly stated herein, if any of the terms and/or provisions of this
Agreement conflict with the terms and/or provisions of the Plan, then this Agreement shall
govern.

IN WITNESS WHEREOF, the Parties hereto have either executed and acknowledged
this Agreement or caused it to be executed and acknowledged on their behalf by their duly
authorized officers all as of the date first above written.

Richard A. Marshack, not individually but solely as
Chapter 11 Trustee

By: _____
Name:  Richard A. Marshack

152516763.8

Richard A. Marshack, not individually but solely as
Liquidation Trustee

By: _____

Name:  Richard A. Marshack


Post-Confirmation Committee

By: _____

Name:

Title:   Chair

29