1

2

3

4

5

6

7

Keith C. Owens (Bar No 184841)
Nicholas A. Koffroth (Bar No. 287854)
**FOX ROTHSCHILD LLP**
10250 Constellation Blvd., Suite 900
Los Angeles, CA 90067
Telephone:    (310) 598-4150
Facsimile:    (310) 556-9828
kowens@foxrothschild.com
nkoffroth@foxrothschild.com

*Counsel for Official Committee of Unsecured Creditors*

D. Edward Hays (Bar No. 162507)
Laila Masud (Bar No. 311731)
**MARSHACK HAYS WOOD LLP**
870 Roosevelt
Irvine, CA 92620
Telephone:    (949) 333-7777
Facsimile:    (949) 333-7778
ehays@marshackhays.com
lmasud@marshackhays.com

*General Counsel for Chapter 11 Trustee*

8

9

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SANTA ANA DIVISION**

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

In re:

THE LITIGATION PRACTICE GROUP, P.C.,

          Debtor.

Chapter 11

Case No. 8:23-bk-10571-SC

**JOINT MOTION OF THE CHAPTER 11 TRUSTEE AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ENTRY OF AN ORDER: (I) APPROVING PROPOSED DISCLOSURE STATEMENT; (II) APPROVING SOLICITATION AND VOTING PROCEDURES; (III) APPROVING NOTICE AND OBJECTION PROCEDURES FOR CONFIRMATION OF JOINT CHAPTER 11 PLAN OF LIQUIDATION; (IV) SETTING RELATED DEADLINES; AND (V) GRANTING RELATED RELIEF; DECLARATION OF RICHARD A. MARSHACK IN SUPPORT THEREOF**

**Hearing Date and Time**
Date:   May 15, 2024
Time:   1:30 p.m.
Place:  *In Person or Via ZoomGov*
          Courtroom 5C
          411 West Fourth Street
          Santa Ana, California 92701

FOX ROTHSCHILD LLP
10250 Constellation Boulevard, Suite 900
Los Angeles, California 90067
(310) 598-4150
(310) 556-9828 (fax)

1

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | Factual Background | 1 |
| | A. General Background | 1 |
| | B. The Debtor's Operations and Sale | 2 |
| | C. The Bar Dates | 3 |
| | D. The Secured Creditor Litigation and 3012 Motion | 4 |
| | E. The Need to Move Toward Confirmation | 5 |
| II. | Disclosure Statement and Plan | 5 |
| III. | The Court Should Approve the Disclosure Statement | 7 |
| | A. The Disclosure Requirements of the Bankruptcy Code. | 7 |
| | B. The Proposed Disclosure Statement Meets the Applicable Standards. | 9 |
| IV. | The Court Should Approve the Confirmation Deadlines | 11 |
| | A. The Confirmation Hearing and Briefing Deadlines | 11 |
| | B. Service of the Confirmation Hearing Notice and Supplemental Publication Notice | 12 |
| | C. Establishment of the Voting Record Date | 14 |
| | D. Establishment of Voting Deadline | 14 |
| | E. Temporary Allowance of Claims for Voting Purposes | 14 |
| | F. Establishment of the Ownership Challenge Deadlines | 15 |
| V. | The Court Should Approve the Solicitation Procedures | 16 |
| | A. Contents of the Solicitation Package | 16 |
| | B. Form of Ballot for Voting Classes | 17 |
| | C. Return of Notices of Solicitation Packages | 17 |
| | D. Non-Substantive or Immaterial Modifications | 18 |
| VI. | The Court Should Approve the Voting and Tabulation Procedures | 18 |
| | A. The Voting Procedures | 18 |
| | B. The Tabulation Procedures | 19 |
| VII. | Conclusion | 21 |

FOX ROTHSCHILD LLP
10250 Constellation Boulevard, Suite 900
Los Angeles, California 90067
(310) 598-4150
(310) 556-9828 (fax)

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

156566835.1

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Arnold*,
   471 B.R. 578 (Bankr. C.D. Cal. 2012) ................................................................................ 8

*In re Art & Architecture Books of the 21st Century*,
   No. 2:13-bk-14135-RK, 2016 WL 1118743 (Bankr. C.D. Cal. Mar. 18, 2016) ...................... 8

*In re Brotby*,
   303 B.R. 177 (B.A.P. 9th Cir. 2003) ................................................................................... 8

*In re Cal. Fidelity, Inc.*,
   198 B.R. 567 (B.A.P. 9th Cir. 1996) ................................................................................... 8

*In re Dakota Rail Inc.*,
   104 B.R. 138 (Bankr. D. Minn. 1989) ................................................................................. 8

*In re Diversified Inv'rs Fund XVII*,
   91 B.R. 559 (Bankr. C.D. Cal. 1988) .................................................................................. 8

*In re Egan*,
   33 B.R. 672 (Bankr. N.D. Ill. 1983) ................................................................................... 9

*Kirk v. Texaco, Inc.*,
   82 B.R. 678 (S.D.N.Y. 1988) ............................................................................................. 8

*Menard-Sanford v. Mabey (In re A.H. Robins Co., Inc.)*,
   880 F.2d 694 (4th Cir. 1989) ............................................................................................. 8

*In re Oxford Homes, Inc.*,
   204 B.R. 264 (Bankr. D. Me. 1997) .................................................................................... 8

*In re PC Liquidation Corp.*,
   383 B.R. 856 (E.D.N.Y. 2008) ........................................................................................... 9

*Tex. Extrusion Corp. v. Lockheed Corp. (In re Tex. Extrusion Corp.)*,
   844 F.2d 1142 (5th Cir. 1988) ........................................................................................ 8, 9

*In re Zenith Elec. Corp.*,
   241 B.R. 92 (Bankr. D. Del. 1999) ..................................................................................... 9

**Statutes and Rules**

11 U.S.C. § 1125(a)(1) ........................................................................................... 1, 7, 8

11 U.S.C. § 1126(c) ................................................................................................ 18, 19

156566835.1

FOX ROTHSCHILD LLP
10250 Constellation Boulevard, Suite 900
Los Angeles, California 90067
(310) 598-4150
(310) 556-9828 (fax)

FED. R. BANKR. P. 2002 .................................................................................................... 18

FED. R. BANKR. P. 2002(b) ....................................................................................... 12, 13

FED. R. BANKR. P. 2002(l) ................................................................................................ 13

FED. R. BANKR. P. 3001(e) ............................................................................................... 19

FED. R. BANKR. P. 3012 ..................................................................................................... 4

FED. R. BANKR. P. 3013(c) ............................................................................................... 11

FED. R. BANKR. P. 3016(c) ............................................................................................... 10

FED. R. BANKR. P. 3017 ............................................................................................. 16, 18

FED. R. BANKR. P. 3017(c) ......................................................................................... 11, 14

FED. R. BANKR. P. 3017(d) .......................................................................... 12, 13, 16, 17

FED. R. BANKR. P. 3018 ..................................................................................................... 15

FED. R. BANKR. P. 3018(a) ..................................................................... 6, 14, 15, 18

FED. R. BANKR. P. 3018(c) ............................................................................................... 17

FED. R. BANKR. P. 3020(b)(1) ......................................................................................... 11

Local Bankruptcy Rule 3018-1(b) .................................................................................. 12

FOX ROTHSCHILD LLP
10250 Constellation Boulevard, Suite 900
Los Angeles, California 90067
(310) 598-4150
(310) 556-9828 (fax)

iii

156566835.1

The Official Committee of Unsecured Creditors (the "Committee") of The Litigation Practice Group P.C. (the "Debtor"), in the above-referenced bankruptcy case (the "Bankruptcy Case") pending under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code")[1] and Richard A. Marshack, in his capacity as the chapter 11 trustee of the Debtor (the "Trustee" and, together with the Committee, the "Plan Proponents"), jointly submit this motion (the "Motion") for entry of an order (the "Disclosure Statement Order"), substantially in the form to be provided as a supplement to the Motion in advance of the objection deadline: (i) approving the *Disclosure Statement Describing Joint Chapter 11 Plan of Liquidation (Dated May 22, 2024)* (the "Disclosure Statement")[2] filed concurrently herewith; (ii) approving the solicitation and voting procedures proposed herein; (iii) approving the proposed notice and objection procedures for confirmation of the *Joint Chapter 11 Plan of Liquidation (Dated May 22, 2024)*, as may be amended(the "Plan"), filed concurrently herewith; (iv) establishing the Challenge Deadlines (as defined herein); and (v) granting related relief as set forth more fully herein. The Plan Proponents respectfully submit that Disclosure Statement contains "adequate information," as that term is defined in § 1125(a)(1), and, thus, request the Court grant the Motion.  In support of the Motion, the Plan Proponents submit the *Declaration of Richard A. Marshack* (the "Marshack Declaration") filed concurrently herewith, the record in this Bankruptcy Case, and respectfully state as follows:

## I.

## FACTUAL BACKGROUND

### A.    General Background[3]

On March 20, 2023 (the "Petition Date"), the Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Central District of California (the "Court"), commencing the Bankruptcy Case.

---

[1] Unless otherwise noted, all references to "Section" or "§" refer to a section of the Bankruptcy Code.

[2] Capitalized terms not otherwise defined herein have the same definitions set forth in the Disclosure Statement or Plan, as applicable.

[3] A more detailed discussion of the Debtor's business and background of the Bankruptcy Case is set forth in the Disclosure Statement.

F O X R O T H S C H I L D L L P
10250 Constellation Boulevard, Suite 900
Los Angeles, California 90067
(310) 598-4150
(310) 556-9828 (fax)

156566835.1

On May 8, 2023, the Court entered an order (the "Trustee Appointment Order") [Docket No. 65] granting a motion [Docket No. 21] filed by the Office of the United States Trustee ("UST"), which requested the appointment of a chapter 11 trustee based on, *inter alia*, the Debtor's failure to provide significant financial and other disclosures.  [Docket No. 21].  Richard A. Marshack was appointed as the chapter 11 trustee pursuant to the Trustee Appointment Order, and continues to serve in that capacity.

On June 23, 2023, the Office of the United States Trustee appointed the Committee [Docket No. 134], which was amended to increase the number of Committee members on June 29, 2023 [Docket No. 157].

On December 22, 2023, the Court entered an order [Docket No. 785] approving the employment of Omni Agent Solutions ("Omni") as the noticing and claims agent in this Bankruptcy Case.

**B.**    **The Debtor's Operations and Sale**

The Debtor was a law firm that provided consumer debt validation services.  *See* Docket No. 320 at 4.  The Debtor reported that—during its peak operations in 2022—it serviced more than 60,000 consumer clients across the United States.  *See* Docket No. 191 (Decl. of Richard Marshack, Ex. 1 (§ 341(a) Tr. at 82:18-24)).  As of the Trustee's appointment, he understood that the Debtor had already transferred most, if not all, of its "active" consumer clients, many of which were fraudulent transfers made without any consideration.  *See* Docket No. 191 (Dec. of William "Ty" Carss, Ex. A); *id.* (Decl. of Richard Marshack, Ex. 1 (§ 341(a) Tr. at 54:18-24)).

On August 2, 2023, the Court entered an order [Docket No. 352] (the "Sale Order") approving the sale (the "Sale") of certain assets to Morning Law Group, P.C. ("MLG"), pursuant to that certain *Agreement of Purchase and Sale and Joint Escrow Instructions* [Docket No. 416] (the "APA").

The Sale Order established procedures for the assumption and assignment of executory agreements, including consumer contracts.  On October 6, 2023, the Court entered an order [Docket No. 562] authorizing the assumption and assignment of certain vendor contracts.  On December 15, 2023, the Court entered an order authorizing the assumption and assignment of certain consumer contracts [Docket Nos. 766].  Additionally, the Court has entered orders authorizing the rejection of

2

FOX ROTHSCHILD LLP
10250 Constellation Boulevard, Suite 900
Los Angeles, California 90067
(310) 598-4150
(310) 556-9828 (fax)

FOX ROTHSCHILD LLP
10250 Constellation Boulevard, Suite 900
Los Angeles, California 90067
(310) 598-4150
(310) 556-9828 (fax)

1   executory agreements and leases [Docket Nos., 523, 555, 640, 927].

2       At the hearing to approve the Sale, the Trustee valued the MLG bid and Purchase Agreement

3   to be as high as $84,490,990, based on certain pro forma assumptions on the performance of the

4   "active" consumer client agreements and the ability of MLG to recover certain "inactive" consumer

5   client contracts. The actual amount to be received is estimated to be $14.1 million for Plan purposes,

6   which is based on, among other things, MLG's actual retention of active and inactive consumer client

7   contracts.

8   **C.      The Bar Dates**

9       On October 16, 2023, the Bankruptcy Court entered an order [Docket No. 577] establishing

10  November 21, 2023, as the deadline for the filing of any motion to obtain an Allowed Administrative

11  Claim arising at any time from March 20, 2023, through and including August 4, 2023.

12      On January 2, 2024, the Bankruptcy Court entered an order [Docket No. 804] (the "GUC Bar

13  Date Order") establishing February 23, 2024, at 4:00 p.m. (prevailing Pacific Time) as the deadline

14  for all persons and entities, including governmental units (as that term is defined in § 101(27)),

15  holding secured, unsecured priority, or unsecured non-priority claims against the Debtor arising (or

16  deemed to arise) before the Petition Date.  The Bankruptcy Court further established a Rejection Bar

17  Date and a Chapter 5 Bar Date (as those terms are defined in the GUC bar Date Order).

18      On February 23, 2024, the Bankruptcy Court entered an order [Docket No. 963] establishing

19  two modified general bar dates: (i) February 25, 2024, at 4:00 p.m. prevailing Pacific Time, as the

20  deadline for certain consumer clients, holding a General Claim, that were provided notice of the bar

21  dates in the GUC Bar Date Order on January 24, 2024, or January 25, 2024; and (ii) March 25, 2023,

22  at 4:00 p.m. prevailing Pacific Time for certain consumer clients, holding a General Claim, to which

23  the Trustee was unable to provide email notice.

24      Accordingly, as of the filing of this Motion, the bar dates have passed with respect to all but

25  a small subset of potential consumer clients that are Holders of General Unsecured Claims (not more

26  than 2,459 individuals), and administrative claims arising after the closing of the Sale.  As such, the

27  Plan Proponents believe that the liquidation analysis (currently in draft form to be filed shortly after

28  this Motion) is not likely to materially change based on any subsequently filed claims within the

3

1  pending bar dates.  *See* Marshack Decl., ¶ 4 at 1.

2  **D.    The Secured Creditor Litigation and 3012 Motion**

3        The Secured Claims asserted against the Debtor's Estate are substantial and subject to

4  significant dispute.  Although significant progress has already been made, resolution of the validity,

5  amount, priority, and avoidability of remaining secured claims is a material confirmation issue.

6        Two adversary proceedings are currently pending concerning the Secured Claims.   On

7  September 11, 2023, OHP-CDR, LP and PurchaseCo80, LLC (collectively, the "OHP Plaintiffs")

8  filed a complaint [Adv. Docket No. 1] initiating the adversary proceeding captioned *OHP-CDR, LP,*

9  *et al. v. Marshack, et al.*, Adv. Proc. No. 8:23-ap-01098-SC (the "OHP Action"), which seeks

10  determination of lien priority and the extent of the OHP Plaintiffs' alleged ownership interests in

11  certain assets of the Debtor.  On January 26, 2024, the Trustee filed a complaint [Adv. Docket No. 1]

12  initiating the adversary proceeding captioned *Marshack v. Bridge Funding Cap, LLC d/b/a Fundura*

13  *Capital, et al.*, Adv. Proc. No. 8:24-ap-01011-SC (the "Secured Creditor Action"), which seeks, with

14  respect to certain alleged secured creditors (the "Secured Creditor Defendants"), (i) determinations

15  of the validity, extent, and priority of certain Secured Creditor Defendants' allegedly secured claims,

16  (ii) avoidance, recovery, and preservation of certain secured claims, and (iii) subordination with

17  respect to certain Secured Creditor Defendants.  On April 22, 2024, the Court will hold a pretrial

18  hearing concerning, *inter alia*, the secured status of the OHP Plaintiffs and the Secured Creditor

19  Defendants.  *See* OHP Action, Adv. Docket No. 26; Secured Creditor Action, Adv. Docket No. 10.

20  In advance of the pretrial conference, several alleged Holders of Secured Claims—Marich Bein, LLC

21  and City Capital NY, LLC dba City Capital NY—have stipulated [Docket Nos. 1030, 1041] that they

22  do not hold secured claims and the Trustee anticipates several others will shortly enter into similar

23  stipulations or settlements.  *See* Secured Creditor Action, Adv. Docket Nos. 35, 42.

24        On February 7, 2024, the Trustee filed a motion [Docket No. 924] to determine the amount of

25  secured claims, pursuant to Bankruptcy Rule 3012, if any, held by: (i) Everyday Funding Group, (ii)

26  Green Fund, (iii) World Global Fund, (iv) MCA Capital Holdings, (v) StratCap Management, (vi)

27  Cobalt, (vii) Cloudfund, (viii) BMF, (ix) Kevlar, and (x) Franklin Capital.  The motion provided that

28  relief was appropriate, under Bankruptcy Rule 3012, because each claim related to a UCC-1 financing

FOX ROTHSCHILD LLP
10250 Constellation Boulevard, Suite 900
Los Angeles, California 90067
(310) 598-4150
(310) 556-9828 (fax)

156566835.1

statement that was not terminated notwithstanding the Trustee's belief that the value of the underlying claim was $0. The Trustee also sought authority to file UCC-3 termination statements with respect to any creditor whose claim was valued at $0. None of the allegedly secured creditors subject to the motion filed responses or appeared at the hearing on the motion. On March 13, 2024, the Bankruptcy Court entered an order [Docket No. 1021] granting the motion, valuing the claims of listed secured creditors at $0, and permitting the Trustee to file UCC-3 termination statements with respect to such claims.

**E.      The Need to Move Toward Confirmation**

The liquidation analysis to be appended to the Disclosure Statement will reflect the Plan Proponents' assessment that Holders of General Unsecured Claims are likely to realize a recovery in this Bankruptcy Case. However, the estimated recovery is slim and subject to material variances. *See* Marshack Decl., ¶ 5 at 1-2. On the asset side of the equation, the recoveries from the MLG Sale may be higher or lower based on MLG's continued performance. *See id.* The liquidation analysis will not include expectations for recoveries on litigation claims given the extreme difficulty in projecting recoveries at this stage of the Bankruptcy Case, but every dollar recovered on such claims will increase distributions. *See id.* Nevertheless, the Plan Proponents are hopeful that litigation recoveries will be material. On the liabilities side of the equation, the remaining allegedly Secured Claims and potential claims concerning ownership of the assets sold to MLG—though each premised on what the Plan Proponents view as dubious legal theories—will materially affect estimated recoveries. *See id.* With the administrative cost of the Bankruptcy Case mounting, confirmation of the Plan as soon as practicable will serve to reduce administrative costs as a further hedge against dilution of recoveries to Holders of General Unsecured Claims. *See id.* Accordingly, the Plan Proponents believe that moving the Bankruptcy Case toward confirmation is appropriate, necessary, and in the best interests of the Estate and Holders of Claims. *See id.*

**II.**

**DISCLOSURE STATEMENT AND PLAN**

Concurrently herewith, the Plan Proponents filed the proposed Plan and related Disclosure Statement. The Plan Proponents worked diligently with their advisors to prepare the Plan, which

FOX ROTHSCHILD LLP
10250 Constellation Boulevard, Suite 900
Los Angeles, California 90067
(310) 598-4150
(310) 556-9828 (fax)

156566835.1

maximizes value for the estates for the benefit of creditors. The Plan will limit the ongoing accrual of administrative expenses of the Estate, permits cash payments to be made to certain creditors on or about the Effective Date of the Plan and thereafter, and provides a mechanism to do so while protecting the interest of any Holder of a valid Secured Claim in collateral, or other parties that claim an ownership interest in certain accounts receivable or certain consumer client files, pending resolution of disputes. Moreover, the Plan preserves complicated litigation claims for the benefit of a Liquidating Trust to pursue postconfirmation under a regime intended to decrease administrative cost and maximize recovery. Importantly, the Liquidating Trust contemplates continued oversight by unsecured creditors of similar composition approved by the Trustee, U.S. Trustee, and Bankruptcy Court preconfirmation to ensure the constituency most affected by the cost of recovery efforts retains a voice in postconfirmation liquidation efforts.

As set forth in the Disclosure Statement, the Plan Proponents (i) anticipate the net sale proceeds of the MLG Sale and funds earned by the Estate from consumers (to which there is no pending challenge on the Effective Date) will be the primary sources of funding for distributions under the Plan, and (ii) also anticipate other sources of recovery, including, but not limited to, recovery of certain receivables after the Effective Date and the net proceeds of Causes of Action, including Avoidance Actions, to be pursued by the Liquidating Trust.

The Plan Proponents propose the following key dates in connection with the approval of the Disclosure Statement and confirmation of the Plan. The following dates assume entry of the Disclosure Statement Order on May 22, 2024, and are subject to modification based on the relative date on which the Bankruptcy Court enters the Disclosure Statement Order:

| Event/Deadline | Deadline | Estimated Date (as applicable) |
|---|---|---|
| Voting Record Date | Hearing on this Motion | May 15, 2024 |
| Solicitation Commencement Deadline | 7 days after entry of Disclosure Statement Order | May 29, 2024 |
| Deadline to Object to Claims for Voting Purposes Only | 7 days after Solicitation Commencement Deadline | June 5, 2024 |
| Rule 3018(a) Motion Deadline | 21 days after Solicitation Commencement Deadline | June 19, 2024 |
| Fund Challenge Deadline | | |
| Ownership Challenge Deadline | | |
| Rule 3018(a) Objection Deadline | 28 days after Solicitation Commencement Deadline | June 26, 2024 |

FOX ROTHSCHILD LLP
10250 Constellation Boulevard, Suite 900
Los Angeles, California 90067
(310) 598-4150
(310) 556-9828 (fax)

156566835.1

| Voting Deadline | 35 days after Solicitation Commencement Deadline | July 3, 2024 |
|---|---|---|
| Confirmation Objection Deadline | | |
| Deadline to File Tabulation Report, Memorandum of Law in Support of Confirmation, Proposed Confirmation Order and Response to Objections to the Confirmation | 49 days after Solicitation Commencement Deadline | July 17, 2024 |
| Confirmation Hearing | 63 days after Solicitation Commencement Deadline | July 31, 2024, at 1:30 p.m. |

The Plan Proponents respectfully request entry of an order: (i) approving the Disclosure Statement as containing "adequate information," as that term is defined in § 1125(a)(1); (ii) establishing procedures for solicitation and tabulation of votes to accept or reject the Plan, including (a) approving the form and manner of the solicitation packages, including, but not limited to the Committee's proposed letter recommending approval of Holders of General Unsecured Claims, (b) approving the form and manner of notice of the hearing to confirm the Plan, (c) establishing a voting record date and approving procedures for distributing the solicitation packages, (d) approving the forms of ballots (the "Ballots"), (e) establishing the deadline for the receipt of ballots, and (f) approving procedures for tabulating acceptances and rejections of the Plan (the "Tabulation Procedures"); (iii) establishing procedures with respect to, and the deadline for filing objections to, the confirmation of the Plan; (iv) establishing June 19, 2024 as the Fund Challenge Deadline and Ownership Challenge Deadline; and (v) granting related relief.

**III.**

**THE COURT SHOULD APPROVE THE DISCLOSURE STATEMENT**

**A.      The Disclosure Requirements of the Bankruptcy Code.**

Pursuant to § 1125, a plan proponent must provide holders of impaired claims with "adequate information" regarding a proposed chapter 11 plan. In that regard, § 1125(a)(1) provides in pertinent part that:

> "adequate information" means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan . . . .

7

156566835.1

FOX ROTHSCHILD LLP
10250 Constellation Boulevard, Suite 900
Los Angeles, California 90067
(310) 598-4150
(310) 556-9828 (fax)

11 U.S.C. § 1125(a)(1). Thus, a disclosure statement must, as a whole, provide information that is reasonably designed to permit an informed judgment by impaired creditors or equity or other interest holders entitled to vote on a plan. *See In re Cal. Fidelity, Inc.*, 198 B.R. 567, 571 (B.A.P. 9th Cir. 1996) ("At a minimum, § 1125(b) seeks to guarantee that a creditor receives adequate information about the plan before the creditor is asked for a vote."); *In re Art & Architecture Books of the 21st Century*, No. 2:13-bk-14135-RK, 2016 WL 1118743, at *14 (Bankr. C.D. Cal. Mar. 18, 2016) ("The primary purpose of a disclosure statement is to give creditors and interest holders the information they need to decide whether to accept the plan.") (citing *Captain Blythers, Inc. v. Thompson (In re Captain Blythers, Inc.)*, 311 B.R. 530, 537 (B.A.P. 9th Cir. 2004)); *In re Arnold*, 471 B.R. 578, 584-85 (Bankr. C.D. Cal. 2012).

In examining the adequacy of the information contained in a disclosure statement, the Bankruptcy Court has broad discretion. *See Art & Architecture Books of the 21st Century*, 2016 WL 1118743, at *14 ("Bankruptcy judges have broad discretion in reviewing disclosure statements and what constitutes adequate information and any particular instance will develop on a case-by-case basis."); *In re Brotby*, 303 B.R. 177, 193 (B.A.P. 9th Cir. 2003) (same); *Kirk v. Texaco, Inc.,* 82 B.R. 678, 682 (S.D.N.Y. 1988) ("The legislative history could hardly be more clear in granting broad discretion to bankruptcy judges under § 1125(a)"); *Menard-Sanford v. Mabey (In re A.H. Robins Co., Inc.),* 880 F.2d 694, 696 (4th Cir. 1989); *Tex. Extrusion Corp. v. Lockheed Corp. (In re Tex. Extrusion Corp.),* 844 F.2d 1142, 1157 (5th Cir. 1988); *see also In re Oxford Homes, Inc.,* 204 B.R. 264, 269 (Bankr. D. Me. 1997) (Congress intentionally drew vague contours of what constitutes adequate information so that bankruptcy courts may exercise discretion to tailor them to each case's particular circumstances); *In re Dakota Rail Inc.,* 104 B.R. 138, 143 (Bankr. D. Minn. 1989) (a bankruptcy court has "wide discretion to determine . . . whether a disclosure statement contains adequate information, without burdensome, unnecessary, and cumbersome detail").

Accordingly, the determination of whether a disclosure statement contains adequate information is to be made on a case-by-case basis, focusing on the unique facts and circumstances of each case. *See In re Diversified Inv'rs Fund XVII*, 91 B.R. 559, 561 (Bankr. C.D. Cal. 1988) ("According to the legislative history, the parameters of what constitutes adequate information are

8

156566835.1

intended to be flexible."); *see also In re PC Liquidation Corp.,* 383 B.R. 856 at 866 (E.D.N.Y. 2008); *In re Tex. Extrusion Corp.*, 844 F.2d 1142, 1157 (5th Cir. 1988) ("The determination is largely within the discretion of the bankruptcy court."); *In re Egan*, 33 B.R. 672, 674-75 (Bankr. N.D. Ill. 1983). This discretion provides flexibility and facilitates the effective reorganization of the different types of chapter 11 debtors by accommodating the varying circumstances accompanying chapter 11 cases. *See* H.R. REP. NO. 595, at 408-09, 95th Cong. (1st Sess. 1977).

The determination of whether adequate information has been provided should take account of the expertise and resources, including outside advisors and relevant information already possessed or publicly available, of the hypothetical investor of each class of claims or interests from which classes the acceptance or rejection of the Plan is solicited after the commencement of the cases. *See In re Zenith Elec. Corp.,* 241 B.R. 92, 99-100 (Bankr. D. Del. 1999).

**B.**    **The Proposed Disclosure Statement Meets the Applicable Standards.**

The Disclosure Statement provides "adequate information" to allow Holders of Claims in the Voting Classes (as defined below) to make an informed decision about whether to vote to accept or reject the Plan. Specifically, the Disclosure Statement contains categories of information that courts consider "adequate information," including:

(i)     An overview of the Plan (*see* Disclosure Statement, Section III);

(ii)    The corporate structure and indebtedness of the Debtor (*see id.*, Sections II & III.A.);

(iii)   The operation of the Debtor's business (*see id.,* Section II);

(iv)    Key events leading to the commencement of the Bankruptcy Case (*see id.*, Section II.B.);

(v)     Significant events that occurred during the Bankruptcy Case (*see id.*, Section II.C.);

(vi)    Information regarding Litigation (*see* Sections II.C. & III.B.);

(vii)   Financial information that would be relevant to determinations of whether to accept or reject the Plan (*see id.*, Section IV);

(viii)  Tax consequences of the Plan (*see id.*, Section III.C.10.);

(ix)    Risk factors affecting the Plan and the Debtors (*see id.*, Sections III.C.9. & IV);

(x)     Requirements for confirmation of the Plan (*see id.*, Section IV);

F.OX ROTHSCHILD LLP
10250 Constellation Boulevard, Suite 900
Los Angeles, California 90067
(310) 598-4150
(310) 556-9828 (fax)

9

(xi)    A liquidation analysis under chapter 7 of the Bankruptcy Code (*see id.*, Section IV.A.); and

(xii)    Description of exculpations, releases, and injunctions (*see id.*, Sections III.B.2.ff. & III.C.4.).

The Disclosure Statement also provides adequate notice of the release, exculpation, and injunction provisions in the Plan.  Pursuant to Bankruptcy Rule 3016(c), "[i]f a plan provides for an injunction against conduct not otherwise enjoined under the Code, the plan and disclosure statement [must] describe in specific and conspicuous language all acts to be enjoined and identify the entities that would be subject to the injunction." FED. R. BANKR. P. 3016(c).  The Disclosure Statement provides a detailed description of releases and exculpations to be provided under the Plan.  *See* Disclosure Statement, §§ III.B.2.ff. & III.C.4..

Furthermore, the Disclosure Statement provides an analysis of the alternatives to confirmation and consummation of the Plan, which demonstrates that an impaired claimant or interest holder that does not accept the Plan will receive or retain under the Plan property of a value greater than the amount that such holder would receive or retain if the Debtor was forced to liquidate under chapter 7 of the Bankruptcy Code.  *See id.*, § IV.A. (setting forth the liquidation analysis).  Accordingly, the Plan Proponents recommend that holders of claims eligible to vote on the Plan vote to accept the Plan because it is the most efficient and effective means to provide remaining recoveries to holders of claims against the Debtor's estate.

The Disclosure Statement also contains a detailed description of means of implementation, which includes the transfer of assets of the Debtor's estate to the Liquidating Trust.  *See* Disclosure Statement, Section III.B.

The Plan Proponents respectfully submit that the Disclosure Statement complies with all aspects of § 1125.  The Plan Proponents will demonstrate at the hearing to approve the Disclosure Statement that the Disclosure Statement addresses the information set forth above in a manner that provides holders of impaired unsecured claims that are entitled to vote to accept or reject the Plan with adequate information within the meaning of § 1125 and should therefore be approved.

FOX ROTHSCHILD LLP
10250 Constellation Boulevard, Suite 900
Los Angeles, California 90067
(310) 598-4150
(310) 556-9828 (fax)

10

156566835.1

**IV.**

**THE COURT SHOULD APPROVE THE CONFIRMATION DEADLINES**

**A.**     **The Confirmation Hearing and Briefing Deadlines**

Bankruptcy Rule 3017(c) provides that, on or before approval of a disclosure statement, the Court "may fix the date for the hearing on confirmation." FED. R. BANKR. P. 3013(c).  In accordance with this provision, the Plan Proponents request that the Bankruptcy Court set a hearing on confirmation of the Plan (the "Confirmation Hearing") on **July 31, 2024, at 1:30 p.m. (prevailing Pacific Time) (63 days after entry of the Disclosure Statement Order)**.     The proposed Confirmation is more than 60 days after the Solicitation Commencement Deadline, which will provide ample notice to Holders of Claims in light of the unique and sizeable composition of the creditor body in this Bankruptcy Case.  The Plan Proponents request that the Confirmation Hearing be continued from time to time by the Bankruptcy Court or by joint request of the Plan Proponents without further notice other than by notices of continuance filed on the docket of the Bankruptcy Case.

Pursuant to Bankruptcy Rule 3020(b)(1), objections to confirmation of a plan must be filed and served "within a time fixed by the court."  The Confirmation Hearing Notice provides, and the Plan Proponents request the Bankruptcy Court to direct, that objections to the confirmation of the Plan or proposed modifications to the Plan, if any, must:

(i)      be in writing;

(ii)     comply with the Bankruptcy Rules and the Local Bankruptcy Rules;

(iii)    state the name and address of each objecting party and the amount and the nature of the Claim or Interest of such party;

(iv)    state with particularity the legal and factual bases for the objection and, if practicable, a proposed modification to the Plan that would resolve such objection; and

(v)     be filed with the Bankruptcy Court, together with proof of service, and served so that they are actually received by the Notice Parties (as defined below) no later than **July 3, 2024 (35 days after entry of the Disclosure Statement Order)** which deadline may be extended by mutual agreement of the Plan Proponents (the "Confirmation Objection Deadline").

F.O.X ROTHSCHILD LLP
10250 Constellation Boulevard, Suite 900
Los Angeles, California 90067
(310) 598-4150
(310) 556-2828 (fax)

11

The Plan Proponents request that Bankruptcy Court require any confirmation objection to be served on the following parties (collectively, the "Notice Parties"): (i) the Trustee's general bankruptcy counsel and bankruptcy case administrator as follows: Marshack Hays Wood LLP, 870 Roosevelt, Irvine, California 92620 (Attn: Ed Hays (ehays@marshackhays.com) & Pam Kraus (pkraus@marshackhays.com)); (ii) counsel to the Committee: Fox Rothschild LLP, 10250 Constellation Boulevard, 9th Floor, Los Angeles, California 90067 (Attn: Keith C. Owens (kowens@foxrothschild.com) & Nicholas A. Koffroth (nkoffroth@foxrothschild.com)); and (iii) counsel to the U.S. Trustee, Office of the United States Trustee, 411 West Fourth Street, Suite 7160, Santa Ana, California 92701-8000 (Attn: Kenneth M. Misken (kenneth.m.misken@usdoj.gov)).

The Plan Proponents propose that, no later than **July 17, 2024 (49 days after entry of the Disclosure Statement Order)**, the Plan Proponents will file with the Bankruptcy Court a tabulation report for Plan voting (the "Tabulation Report"), a proposed form of confirmation order, a memorandum in support of confirmation addressing the requirements of § 1129(a) and any declarations or other evidence in support thereof, and replies to any objections received by the Confirmation Objection Deadline. The deadline is consistent with the ballot tabulation deadline set forth in Local Bankruptcy Rule 3018-1(b), which requires the filing of a ballot tabulation at least 14 days prior to the confirmation hearing.

The proposed confirmation briefing deadlines and proposed modifications, if any, will afford the Bankruptcy Court, the Plan Proponents, and other parties in interest sufficient time to consider the objections and proposed modifications prior to the Confirmation Hearing.

**B.    Service of the Confirmation Hearing Notice and Supplemental Publication Notice**

Bankruptcy Rules 2002(b) and 3017(d) require not less than twenty-eight (28) days' notice to all creditors and equity security holders of the time fixed for filing objections and the hearing to consider confirmation of a chapter 11 plan. *See* FED. R. BANKR. P. 2002(b) & 3017(d). The Plan Proponents propose to provide to all creditors, interest holders, and other parties in interest a copy of either the Confirmation Hearing Notice, the Notice of Non-Voting Accepting Status and Confirmation Hearing, or the Notice of Non-Voting Rejecting Status and Confirmation Hearing as proposed herein, setting forth, among other things, (i) the date of approval of the Disclosure

12

156566835.1

FOX ROTHSCHILD LLP
10250 Constellation Boulevard, Suite 900
Los Angeles, California 90067
(310) 598-4150
(310) 556-9828 (fax)

FOX ROTHSCHILD LLP
10250 Constellation Boulevard, Suite 900
Los Angeles, California 90067
(310) 598-4150
(310) 556-9828 (fax)

Statement; (ii) the Voting Record Date; (iii) the deadline to object or to file a motion to estimate claims for voting purposes; (iv) the Voting Objection Deadline; (v) the Fund Challenge Deadline; (vi) the Ownership Challenge Deadline; (vii) the Voting Deadline; (viii) the time Confirmation Objection Deadline; and (ix) the time, date, and place for the Confirmation Hearing. Such notice will be sent at least 35 days before the Confirmation Objection Deadline by either First-Class mail or by email, including by utilizing the Debtor's LUNA system. Accordingly, the proposed service of the Confirmation Hearing Notice satisfies Bankruptcy Rules 2002(b) and 3017(d).

Bankruptcy Rule 2002(*l*) permits the Bankruptcy Court to "order notice by publication if it finds that notice by mail is impracticable or that it is desirable to supplement the notice." *See* FED. R. BANKR. P. 2002(*l*). In addition to mailing the Confirmation Hearing Notice, the Plan Proponents propose to publish the Confirmation Hearing Notice (or a version in substantially the same form, subject to publication formatting requirements) once, as soon as reasonably practical after the entry of the Disclosure Statement Order, in one of the following newspapers: *Wall Street Journal*, *New York Times*, *USA Today*, or other similar national publication. The Plan Proponents believe that publication of the Confirmation Hearing Notice will provide sufficient notice of the Confirmation Hearing, and related deadlines, to persons who do not otherwise receive actual written notice by mail as provided for in the Disclosure Statement Order.

Additionally, the Combined Hearing Notice may also be obtained (i) at no charge through the Case Website, https://omniagentsolutions.com/LPG, maintained by Omni Agent Solutions (the "Claims and Balloting Agent"); (ii) at no charge to Holders of Claims and Interests upon request by emailing LPGBallots@OmniAgnt.com, or calling (888) 741-4582 (U.S. and Canada toll free) or (747) 226-5672; or (iii) for a charge, from PACER at https://pacer.uscourts.gov.

The Plan Proponents request that the Court establish **May 29, 2024 (7 days after entry of the Disclosure Statement Order)** as the deadline to complete service of the Confirmation Hearing Notice and publication notice thereof (the "Solicitation Commencement Deadline"). The Plan Proponents submit that the foregoing procedures will provide adequate notice of the Confirmation Hearing and related deadlines, and, accordingly, request that the Bankruptcy Court approve such notice as adequate.

156566835.1

**C.    Establishment of the Voting Record Date**

Bankruptcy Rule 3018(a) provides that the Court may set the date on which a disclosure statement is approved and another date as the record date for determining which holders of securities are entitled to receive solicitation materials, including ballots, for voting on a plan. FED. R. BANKR. P. 3018(a).  The Plan Proponents propose that the Court establish the date of the hearing on this Motion as the record date (the "Voting Record Date") for purposes of determining which holders of Claims in the Voting Classes are entitled to receive a Ballot to vote to accept or reject the Plan.

**D.    Establishment of Voting Deadline**

Bankruptcy Rule 3017(c) requires the Court to "fix a time within which the holders of claims and interests may accept or reject the plan." FED. R. BANKR. P. 3017(c).  The Plan Proponents request that the Court fix **July 3, 2024 (35 days after the Plan Procedures Order)** (the "Voting Deadline") as the deadline by which all Ballots for accepting or rejecting the Plan ***must be received*** by the Claims and Balloting Agent.  In order to be counted as a vote to accept or reject the Plan, each Ballot must be properly delivered to the Claims and Balloting Agent by either: (i) first class mail, overnight courier, or hand delivery to the Claims and Balloting Agent at the following address: The Litigation Practice Group P.C. Claims Processing, c/o Omni Agent Solutions, 5955 De Soto Ave., Suite 100, Woodland Hills, CA 91367, or (ii) online upload through the Claims and Balloting Agent's balloting platform ("Ballot Portal").  In addition to accepting Ballots by regular mail, overnight courier or hand delivery, the Plan Proponents seek authority to accept Ballots via electronic transmission through the Ballot Portal.  The Ballot Portal will be available on Omni Agent Solution's website for the Bankruptcy Case.  Holders may digitally scan and upload a Ballot via the Ballot Portal. Instructions for uploading a Ballot will be available on the Case Website. For the avoidance of doubt, the Ballot Portal https://omniagentsolutions.com/LPG-Ballots shall be the sole accepted means for holders to submit their votes electronically.

**E.    Temporary Allowance of Claims for Voting Purposes**

The Plan Proponents request that the Court fix **June 19, 2024 (7 days after the Solicitation Commencement Deadline)** as the deadline to object to Claims ***for voting purposes only*** (the "Deadline to Object to Claims for Voting Purposes Only").  If a Plan Proponent files an objection to

14

FOX ROTHSCHILD LLP
10250 Constellation Boulevard, Suite 900
Los Angeles, California 90067
(310) 598-4150
(310) 556-9828 (fax)

156566835.1

a Claim by the Deadline to Object to Claims for Voting Purposes Only, the Holder of that Claim is not permitted to submit a Ballot absent obtaining an order. Pursuant to Bankruptcy Rule 3018(a), "the court after notice and hearing may temporarily allow the claim or interest in an amount which the court deems proper for the purpose of accepting or rejecting a plan." FED. R. BANKR. P. 3018(a).

To the extent a Plan Proponent objects to any Claims prior to the Deadline to Object to Claims for Voting Purposes Only, or if any claimant in a Voting Class wishes to challenge the temporary allowance of its Claim for voting purposes based on the Tabulation Procedures, the Plan Proponents request that the Court fix (i) **June 19, 2024 (21 days after entry of the Plan Procedures Order)** (the "Rule 3018(a) Motion Deadline") as the deadline for filing and serving such motions pursuant to Bankruptcy Rule 3018(a) ("Rule 3018(a) Motions"); and (ii) **June 26, 2024 (28 days after entry of the Plan Procedures Order)** (the "Rule 3018(a) Objection Deadline") as the deadline for filing any objection to a Rule 3018(a) Motion.

In accordance with Bankruptcy Rule 3018, the Plan Proponents further propose that any Ballot submitted by a Holder of a Claim that files a Rule 3018(a) Motion will be counted solely in accordance with the Tabulation Procedures and other applicable provisions contained herein unless and until the underlying Claim is temporarily Allowed by the Bankruptcy Court for voting purposes in a different amount, after notice and a hearing.

F.    **Establishment of the Ownership Challenge Deadlines**

The Plan establishes two deadlines for creditors and parties in interest to assert certain ownership claims relevant to the confirmation of the Plan. ***First***, the Trustee currently holds, in a segregated account, certain funds collected by the Estate after the Petition Date from clients of the Debtor (the "Post-Petition Funds"). It is Trustee's belief that the Post-Petition Funds have been or will be earned and are such property of the Estate, for purposes of § 541, and are not property held in trust for third parties. The Plan Proponents propose that the Court establish **June 19, 2024 (21 days after entry of the Disclosure Statement Order)** as the deadline by which any party in interest intending to dispute the characterization of the Post-Petition Funds as property of the Estate, and/or the use of the Post-Petition Funds to fund Plan payments, must commence an adversary proceeding concerning ownership of such funds (the "Fund Challenge Deadline"). The Plan Proponents request

15

156566835.1

that the Post-Petition Funds attributable to any creditor or party in interest shall be deemed property of the Estate in accordance with the Plan without further order of the Court if such creditor or party in interest does not commence an adversary proceeding disputing the characterization of such Post-Petition Funds by the Fund Challenge Deadline.

**Second**, certain parties may claim an ownership interest in client files, receivables, or other property or assets sold, pursuant to the Sale Order, and assert that such property or receivables do not constitute property of the Estate, for purposes of § 541.  The Plan Proponents propose that the Court establish **June 19, 2024 (21 days after entry of the Disclosure Statement Order)** as the deadline by which any such party in interest must commence an adversary proceeding must commence an adversary proceeding concerning ownership of such property (the "Ownership Challenge Deadline"). The Plan Proponents request that the Court provide that parties in interest that do not commence an adversary proceeding by the Ownership Challenge Deadline shall be barred from, and deemed to have waived and forfeited, any ownership or similar claim in or to the Liquidating Trust Assets.

## V.

## THE COURT SHOULD APPROVE THE SOLICITATION PROCEDURES

Consistent with the requirements of the Bankruptcy Code, Bankruptcy Rules, and Local Rules, the Plan Proponents seek approval of the following procedures to solicit acceptances or rejections of the Plan.

Under the Plan, Holders of Claims in Class 1 (Secured Claims) and Class 3 (General Unsecured Claims) are impaired, and thus, entitled to vote to accept or reject the Plan (the "Voting Classes").  Holders of Claims in Class 2 (Other Priority Claims) are unimpaired, and thus, deemed to accept the Plan and are not entitled to vote.  Holders of Claims and Interests in Class 4 (Subordinated Claims) and Class 5 (Equity Interests) are impaired and deemed to reject the Plan (together with the Holders of Claims in Class 2, the "Non-Voting Classes"). Therefore, Holders of Claims and Interests in Class 4 and Class 5 are not entitled to vote on the Plan.

## A.    Contents of the Solicitation Package

Bankruptcy Rule 3017 sets forth the materials required to be provided to Holders of Claims and Interests in the Voting Classes.  In accordance with Bankruptcy Rule 3017(d), following the entry

16

FOX ROTHSCHILD LLP
10250 Constellation Boulevard, Suite 900
Los Angeles, California 90067
(310) 598-4150
(310) 556-9828 (fax)

of the Disclosure Statement Order, the Plan Proponents propose to distribute, or cause to be distributed, to each Holder of a Claim in the Voting Classes, by first class mail or email, including using the Debtor's proprietary LUNA system, which shall contain the following materials (the "Solicitation Package"):

     (i)     the Confirmation Hearing Notice, which contains a hyperlink to the Plan and Disclosure Statement and the Disclosure Statement Order;

     (ii)     an appropriate Ballot, including voting instructions;

     (iii)     the letter from the Committee in support of confirmation of the Plan to be distributed to Holders of General Unsecured Claims and attached as **Exhibit A** to this Motion (the "Committee Support Letter"); and

     (iv)     such other materials the Court may direct.

The service of these Solicitation Packages will be completed by the Solicitation Commencement Deadline.

## B.    Form of Ballot for Voting Classes

In accordance with Bankruptcy Rules 3017(d) and 3018(c), the Plan Proponents propose to mail the holders of Claims entitled to vote on the Plan, a Ballot, substantially in the forms attached to the Disclosure Statement Order. The Ballots are substantially similar to Official Form No. 314, but have been modified so that they are consistent with specific provisions of the Plan. The Plan Proponents propose that the appropriate forms of Ballot be distributed to the Voting Classes.

## C.    Return of Notices of Solicitation Packages

Due to the number of Solicitation Packages the Plan Proponents anticipate will be served, some of the Solicitation Packages or other solicitation-related notices may be returned as undeliverable. Because sending Solicitation Packages and other notices to outdated or otherwise improper addresses results in needless expense to the Estate, the Plan Proponents request authority to not provide notice or service of any kind upon any Person to whom the Trustee mailed a notice concerning the Sale, or notice of the applicable Bar Dates, and received any of such notices returned by the United States Postal Service marked "undeliverable as addressed," "moved--left no forwarding address," "forwarding order expired" or similar marking or reason, unless the Trustee has been informed in writing by such Person of that Person's new address.

17

FOX ROTHSCHILD LLP
10250 Constellation Boulevard, Suite 900
Los Angeles, California 90067
(310) 598-4150
(310) 556-9828 (fax)

FOX ROTHSCHILD LLP
10250 Constellation Boulevard, Suite 900
Los Angeles, California 90067
(310) 598-4150
(310) 556-9828 (fax)

The Plan Proponents submit that the foregoing procedures regarding the provision of notice of the Confirmation Hearing and related matters comply with Bankruptcy Rules 2002 and 3017. Accordingly, the Plan Proponents request that the Court approve the above-described notice as good and sufficient in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules.

**D.    Non-Substantive or Immaterial Modifications**

While the Plan Proponents have endeavored to ensure that all documents contained within the Solicitation Packages are in their final form, the Plan Proponents, reserve their right to make joint, non-substantive or immaterial changes to the Plan, Disclosure Statement, and related documents without further order of the Court, including, but not limited to: changes to correct typographical and grammatical errors, and to make conforming changes among the Plan and Disclosure Statement and any other materials comprising the Solicitation Packages.

**VI.**

**THE COURT SHOULD APPROVE THE VOTING AND TABULATION PROCEDURES**

**A.    The Voting Procedures**

Section 1126(c) provides:

> A class of claims has accepted a plan if such plan has been accepted by creditors, other than any entity designated under subsection (e) of this section, that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors, other than any entity designated under subsection (e) of this section, that have accepted or rejected such plan.

11 U.S.C. § 1126(c).

The Plan Proponents propose that only the following Holders of Claims in the Voting Classes be entitled to vote with regard to such Claims:

> (i)    Holders of Claims who have filed a timely Proof of Claim that (a) has not been expunged, disallowed, disqualified, withdrawn, or superseded prior to the Voting Record Date, and (b) is not the subject of a pending objection, other than a "reduce and allow" objection. A Holder of a Claim that is the subject of a pending objection on a "reduce and allow" basis shall receive a Solicitation Package and be entitled to vote such Claim in the reduced amount contained in such objection absent a further Order of the Court.

> (ii)    Holders of Claims temporarily allowed to vote on the Plan, pursuant to Bankruptcy Rule 3018(a);

18

FOX ROTHSCHILD LLP
10250 Constellation Boulevard, Suite 900
Los Angeles, California 90067
(310) 598-4150
(310) 556-9828 (fax)

(iii)    Holders of Claims whose Claims are in an amount agreed upon by the Plan Proponents, evidenced in a document filed with the Court, in an Order entered by the Court, or otherwise memorialized document pursuant to authority granted by the Court; and

(iv)    The assignee of any Claim that was transferred on or before the Voting Record Date by any Entity described in subparagraphs (i) through (iii) above; provided that such transfer or assignment has been fully effectuated, pursuant to the procedures set forth in Bankruptcy Rule 3001(e).

**B.**     **The Tabulation Procedures**

The Plan Proponents propose that the following Ballots will not be counted or considered:

(i)    Unless otherwise provided in these Tabulation Procedures, a Claim will be deemed temporarily allowed for voting purposes only in an amount equal to the amount set forth in such a timely-filed Proof of Claim (except as provided in subsection (ii) below).

(ii)    If a Claim, for which a proof of Claim has been timely filed, has not been Disallowed and is not subject to a pending objection or adversary proceeding as of the Deadline to Object to Claims for Voting Purposes Only, is marked or otherwise referenced on its face, or as determined after a reasonable review by the Claims and Balloting Agent, as contingent, unliquidated or disputed, either in whole or in part, or if no Claim amount is specified on such proof of Claim, such Claim shall be temporarily allowed solely for voting purposes in the amount of $1.00, irrespective of how such Claim may or may not be set forth on the Schedules; *provided*, *however*, that any undisputed portion, if any, of such Claim will be deemed temporarily allowed for voting purposes, subject to the other Tabulation Procedures.

(iii)    If a Holder of a Claim identifies a Claim amount in its Ballot that is different than the amount otherwise calculated in accordance with the Tabulation Procedures, the claim will be temporarily allowed for voting purposes in the lesser amount identified on such Ballot.

(iv)    If a Plan Proponent has served an objection or request for estimation as to a Claim on or before the Deadline to Object to Claims for Voting Purposes Only, such Claim is temporarily disallowed for voting purposes only and not for purposes of allowance or distribution, except to the extent and manner as set forth in such objection.

(v)    Claims filed for $0.00 are not entitled to vote.

(vi)    Ballots that fail to indicate an acceptance or rejection of the Plan or that indicate both acceptance and rejection of the Plan, but which are otherwise properly executed and received prior to the Voting Deadline, will not be counted.

(vii)    Only Ballots that are timely received with signatures will be counted. Unsigned Ballots will not be counted.

(viii)    For purposes of the numerosity and amount requirements of § 1126(c), based on the Plan Proponents' mutual reasonable determinations, with respect to the Voting Class, separate Claims held by a single Creditor against the Debtor within the same Voting Class will be aggregated as if such Creditor held a

19

single Claim against the Debtor in such Voting Class, and the votes related to those Claims shall be treated as a single vote on the Plan.

(ix)   The method of delivery of Ballots to be sent to the Claims and Balloting Agent is at the election and risk of each Holder, and except as otherwise provided, a Ballot will be deemed delivered only when the Claims and Balloting Agent actually receives the original executed Ballot. Delivery of a Ballot by submission through the Balloting Agent's Ballot platform at https://omniagentsolutions.com/LPG-Ballots is valid provided such submission complies with the instructions to submit such Ballot detailed herein and on the applicable Ballot.

(x)    If multiple Ballots are received from the same Holder with respect to the same Claim prior to the Voting Deadline, the last properly executed Ballot timely received will be deemed to reflect such Holder's intent and will supersede and revoke any prior Ballot.

(xi)   Creditors with multiple Claims within the Voting Class must vote all such Claims in the Voting Class to either accept or reject the Plan, and may not split their vote(s).

(xii)  In the event a Claim is transferred after the transferor has executed and submitted a Ballot to the Claims and Balloting Agent, the transferee of such Claim shall be bound by any such vote (and the consequences thereof) made by the Holder of such transferred Claim as of the Voting Record Date.

(xiii) Unless otherwise provided, any party who has delivered a valid Ballot for the acceptance or rejection of the Plan may withdraw such acceptance or rejection by delivering a written notice of withdrawal to the Claims and Balloting Agent at any time prior to the Voting Deadline. To be valid, a notice of withdrawal must (a) contain the description of the Claim(s) to which it relates and the aggregate principal amount represented by such Claim(s); (b) be signed by the withdrawing party in the same manner as the Ballot being withdrawn; and (c) contain a certification that the withdrawing party owns the Claim(s) and possesses the right to withdraw the vote sought to be withdrawn. The Plan Proponents intend to consult with the Claims and Balloting Agent to determine jointly whether any withdrawals of Ballots were received and whether the requisite acceptances of the Plan have been received. The Plan Proponents expressly reserve the right to contest the validity of any such withdrawals of Ballots.

(xiv)  A Person signing a Ballot in his or her capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity of the beneficial owner of a Claim must indicate such capacity when signing.  A Ballot must be cast by the beneficial owner of the Claim or one of the foregoing duly authorized legal representatives of such beneficial owner of the voted Claim.  Ballots cast or executed by any other Person on behalf of the beneficial owner will not be counted.

(xv)   Any class that does not contain any claim eligible to vote to accept or reject the Plan (by reason of temporary allowance by the Bankruptcy Court or otherwise) as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such class pursuant to § 1129(a)(8).

20

FOX ROTHSCHILD LLP
10250 Constellation Boulevard, Suite 900
Los Angeles, California 90067
(310) 598-4150
(310) 556-9828 (fax)

(xvi)   If a class contains claims eligible to vote and no Holders of Claims eligible to vote in such Class vote to accept or reject the Plan, the Plan shall be deemed accepted by the Holders of such Claims in such Class.

(xvii)  Neither the Plan Proponents, nor any other Entity, will be under a duty to provide notification of defects or irregularities with respect to delivered Ballots, other than as provided in the Voting Report, nor will any of them incur liability for failure to provide such notification.

(xviii) Unless jointly waived by the Plan Proponents, or as ordered by the Court, any defects or irregularities in connection with deliveries of Ballots must be cured prior to the Voting Deadline, or such Ballots will not be counted.

(xix)   The Claims and Balloting Agent will date-stamp all Ballots when received.

(xx)    The Claims and Balloting Agent shall retain the original Ballots and electronic copy of the same for a period of one year after the Effective Date, unless otherwise ordered by the Court.

The Plan Proponents reserve the right to waive any of the above-specified requirements for completion and submission of Ballots upon mutual agreement.

## VII.

## CONCLUSION

For the foregoing reasons, the Plan Proponents respectfully request that the Court: (i) grant the Motion; (ii) enter the Disclosure Statement Order substantially in the form submitted as a supplement to this Motion; and (iii) grant the Plan Proponents such other and further relief as is just and appropriate under the circumstances.

DATED this 22nd day of March, 2024.

**FOX ROTHSCHILD LLP**

By:    _/s/ Nicholas A. Koffroth_
    Keith C. Owens (Bar No. 184841)
    Nicholas A. Koffroth (Bar No. 287854)
    Constellation Place
    10250 Constellation Blvd., Suite 900
    Los Angeles, California 90067
_Counsel for the Committee_

**MARSHACK HAYS WOOD LLP**

By: _D. Edward Hays_
    D. Edward Hays (Bar No. 162507)
    Laila Masud (Bar No. 311731)
    870 Roosevelt
    Irvine, California 92620
_General Counsel for Chapter 11 Trustee_

156566835.1

FOX ROTHSCHILD LLP
10250 Constellation Boulevard, Suite 900
Los Angeles, California 90067
(310) 598-4150
(310) 556-9828 (fax)

FOX ROTHSCHILD LLP
10250 Constellation Boulevard, Suite 900
Los Angeles, California 90067
(310) 598-4150
(310) 556-9828 (fax)

## DECLARATION OF RICHARD A. MARSHACK

I, Richard A. Marshack, declare as follows:

1.      I am the chapter 11 trustee appointed in the bankruptcy case of The Litigation Practice Group P.C. (the "Debtor") pending before the United States Bankruptcy Court for the Central District of California (the "Court") under the case captioned, *In re The Litigation Practice Group P.C.*, Case No. 8:23-bk-10571-SC (the "Bankruptcy Case").  I make this declaration in support of the *Joint Motion of the Chapter 11 Trustee and Official Committee of Unsecured Creditors for Entry of an Order: (I) Approving Proposed Disclosure Statement; (II) Approving Solicitation and Voting Procedures; (III) Approving Notice and Objection Procedures for Confirmation of Joint Chapter 11 Plan of Liquidation; (IV) Setting Related Deadlines; and (V) Granting Related Relief* (the "Motion")[1] filed concurrently herewith and for all other purposes authorized by law.

2.      In the capacity as chapter 11 trustee, and except as otherwise indicated, I have personal knowledge of the facts set forth below, and if called as a witness I could and would competently testify to the matters set forth in this declaration.

3.      I have reviewed the Plan, Disclosure Statement, and Motion.  Specifically, I have reviewed a draft of the liquidation analysis to be attached to the Disclosure Statement, the Plan, the Disclosure Statement, and the confirmation procedures set forth in the Motion.

4.      As of the filing of the Motion, the bar dates have passed with respect to all but a small subset of potential consumer clients that are Holders of General Unsecured Claims (not more than 2,459 individuals) and administrative claims arising after the closing of the Sale.  As such, the I believe that the liquidation analysis is not likely to materially change based on any subsequently filed claims within the pending bar dates.

5.      The liquidation analysis to be appended to the Disclosure Statement will indicate my assessment that Holders of General Unsecured Claims are likely to realize a recovery in this Bankruptcy Case.  However, the estimated recovery is slim and subject to material variances.  On the asset side of the equation, the recoveries from the MLG Sale may be higher or lower based on MLG's continued performance.  Although I am hopeful that the litigation recoveries will be material, I believe

---

[1] Unless otherwise defined herein, all capitalized terms have the definitions set forth in the Motion.

that a cautious approach is prudent and have therefore agreed to exclude from the liquidation analysis expectations for recoveries on litigation claims given the extreme difficulty in projecting recoveries at this stage of the Bankruptcy Case.  However, every dollar recovered on such claims will increase distributions.  On the liabilities side of the equation, the remaining allegedly Secured Claims and potential claims concerning ownership of the assets sold to MLG will materially affect estimated recoveries.  With the administrative cost of the Bankruptcy Case mounting, confirmation of the Plan as soon as practicable will serve to reduce administrative costs as a further hedge against dilution of recoveries to Holders of General Unsecured Claims.  Accordingly, I believe that moving the Bankruptcy Case toward confirmation is appropriate, necessary, and in the best interests of the Estate and Holders of Claims.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on March 22, 2024.

_____
Richard A. Marshack

156566835.1

**Exhibit A**

*Draft Subject to Court Approval*

## OFFICIAL COMMITTEE OF UNSECURED CREDITORS' LETTER IN SUPPORT OF JOINT PLAN OF LIQUIDATION

To:      All Holders of General Unsecured Claims ("General Unsecured Creditors")

**Re:**    *In re The Litigation Practice Group P.C.*, **Case No. 8:23-bk-10571-SC**

Dear General Unsecured Creditor:

On March 20, 2023, The Litigation Practice Group P.C. (the "Debtor") filed for bankruptcy. The Official Committee of Unsecured Creditors (the "Committee") represents the interests of the Debtor's unsecured creditors in the bankruptcy case. You are receiving this letter because you are entitled to vote on the Plan as a General Unsecured Creditor.[1] The Official Committee recommends that all General Unsecured Creditors vote to **APPROVE** the Plan on their Ballots.

### The Official Committee of Unsecured Creditors

On June 23, 2023, the Office of the United States Trustee, a component of the United States Department of Justice, appointed a five-member Committee to represent the interests of General Unsecured Creditors in the Bankruptcy Case. On June, 29, 2023, the U.S. Trustee expanded the Committee's membership to seven members in total.

The Committee's composition is based on an agreement between the chapter 11 trustee, Richard A. Marshack (the "Trustee"), overseeing the Bankruptcy Case and the U.S. Trustee. Under the agreement, a majority of the Committee's members are former consumer clients of the Debtor ("Former Clients").

The Committee does not represent the interests of any individual General Unsecured Creditor. Instead, the Committee represents the generalized interests of all General Unsecured Creditors as a group, including Former Clients, trade vendors, and service providers to the Debtor, without regard to the types of claims which individual unsecured creditors may hold against the Debtor.

One of the Committee's principal objectives is to advocate for maximizing recovery to General Unsecured Creditors in this Bankruptcy Case.

### Steps Taken by the Committee to Maximize Value to General Unsecured Creditors

The Bankruptcy Court removed the Debtor's management shortly after the Bankruptcy Case was filed because of allegations of impropriety. Upon management's removal, the

---

[1] Plan means the *Joint Chapter 11 Plan of Liquidation (Dated March 22, 2024)* as it may be altered, amended, modified or supplemented, from time to time, including in accordance with its terms, any Plan Supplement, the Bankruptcy Code or the Bankruptcy Rules. Capitalized terms used but not defined in this letter have the definitions given to them in the Plan.

154785019.1

*Draft Subject to Court Approval*

Bankruptcy Court and the U.S. Trustee appointed the Trustee to serve as an independent fiduciary to manage the Debtor's business and liquidate assets for creditors.

The Trustee proposed a sale of the Debtor's business to produce a recovery for creditors. The Committee was deeply involved in sale negotiations following its appointment and focused on two principal issues: (i) advocating and negotiating for a transaction most likely to produce the highest return to General Unsecured Creditors; and (ii) advocating for consumer protections for Former Clients to ensure the viability of a sale (including ensuring that any such sale complied with applicable non-bankruptcy law), and to remedy the Debtor's prebankruptcy behavior toward Former Clients. In addition to negotiations, the Committee also filed substantial briefing with the Bankruptcy Court analyzing the propriety of the sale under applicable laws, including consumer protection laws.

The Bankruptcy Court ultimately approved a sale of the Debtor's assets to Morning Law Group, P.C. ("MLG"), following a public auction process in open court. At the hearing to approve the Sale, the Trustee valued the MLG bid to be as high as $84,490,990, based on certain assumptions. The sale price is comprised of a $5.5 million deposit and an "earn-out" over time based on the performance of client agreements transferred to MLG. The Committee now understands that the MLG sale may yield materially less than was represented by the Trustee at the hearing on the sale. The actual amount to be received is estimated to be $14.1 million for Plan purposes, which is based on, among other things, MLG's actual retention of active and inactive client contracts.

The Committee's sale negotiations resulted in significant protections for Former Clients. Former Clients were given the opportunity to "opt-out" of transferring their legal services agreements to MLG. The Bankruptcy Court also appointed an independent monitor to ensure that MLG complies with ethical obligations to the Former Clients that continue to receive legal services from MLG.

The MLG sale closed on August 4, 2023.

## **Resources for Former Clients That Are Not MLG Clients**

Given the unique circumstances of the Bankruptcy Case, including the alleged misconduct of the Debtor before it filed the Bankruptcy Case, the Committee believes it is important to offer resources to Former Clients that are not represented by MLG. To be clear, the Committee underscores the unique oversight protections, including the employment of the ethics monitor, afforded to Former Clients that have elected representation with MLG. These consumer protections are unique to Former Clients and the MLG transaction, and no similar protections have been ordered by the Bankruptcy Court for any other provider of such services.

For those Former Clients that are not represented by MLG, the Committee has identified the following independent governmental and nongovernmental resources concerning consumer debt issues that may be helpful to Former Clients:

2

*Draft Subject to Court Approval*

### The Consumer Financial Protection Bureau

Debt Collection Home Page, CFPB, https://www.consumerfinance.gov/consumer-tools/debt-collection/ (last visited March 20, 2024)

*What is a debt relief program and how do I know if I should use one?*, CFPB (last reviewed Aug. 28, 2023), https://www.consumerfinance.gov/ask-cfpb/what-is-a-debt-relief-program-and-how-do-i-know-if-i-should-use-one-en-1457/

*What's the difference between a credit counselor and a debt settlement or debt relief company?*, CFPB (last reviewed Aug. 24, 2022), https://www.consumerfinance.gov/ask-cfpb/whats-the-difference-between-a-credit-counselor-and-a-debt-settlement-or-debt-relief-company-en-1449/

### The National Consumer Law Center

*Deciding Whether to File for Bankruptcy: Consumer Debt Advice from NCLC*, Nat'l Consumer L. Ctr. (last visited March 20, 2024), https://library.nclc.org/article/deciding-whether-file-bankruptcy-consumer-debt-advice-nclc

*How to Get Legal Assistance*, Nat'l Consumer L. Ctr. (last visited March 20, 2024), https://www.nclc.org/how-to-get-legal-assistance/

The Committee makes no recommendation concerning the foregoing and no representation concerning the accuracy of the foregoing information. The Committee provides the above resources to Former Clients that are not MLG clients for their independent review and consideration. Consumer debt issues are unique and may require immediate attention, the failure of which could have a materially negative impact on Former Clients. Former Clients must make their own independent determination as to how to address any consumer debt issues they may face and should consult their own legal and/or financial advisor(s). The Committee cannot and does not represent any of the Former Clients, but believes that the foregoing reasons may be helpful for Former Clients to make their own decisions about how to address consumer debt issues.

### <u>Distributions to General Unsecured Creditors Under the Plan</u>

The Plan provides two alternative Classes for General Unsecured Creditors—both of which will become beneficiaries of a trust that will ultimately liquidate assets and disburse recoveries. *First*, General Unsecured Creditors are treated in Class 3A by default. Class 3A General Unsecured Creditors may assert the full amount of their claims, subject to objection, and will be paid a *pro rata* amount of the ultimately allowed amount of their claim. *Second*, Former Clients may opt-in to treatment in Class 3B. As long as a Former Client's claim is properly supported, a Former Client who elects to opt-in as a Class 3B claimant will automatically receive an allowed claim at the lesser of (i) one month of payments to the Debtor under the legal services agreement, or (ii) $1,000. *This is not the amount a Class 3B creditor will ultimately recover*—allowed Class 3B claims will share *pro rata* in recoveries with other allowed Class 3A and Class 3B creditors. However, Class 3B creditors will not be subject to claims objections, which is intended to reduce legal costs incurred by the estate and Former Clients. Ultimately, each Former Client will have a

3

*Draft Subject to Court Approval*

choice as to whether to elect to be treated as a Class 3B General Unsecured Creditor, or to be treated as a Class 3A General Unsecured Creditor.

Projected recoveries are dependent on numerous variables, including the outcome of four significant and unresolved issues: *First*, recoveries will be dependent on the extent to which the Trustee is successful in litigation and motion practice to reduce secured claims. *Second*, recoveries are dependent on the "earn-out" that is ultimately due and recovered under the MLG sale. *Third*, recoveries are dependent on the outcome of other litigation to recover fraudulent transfers, preferential transfers, and other claims. *Fourth*, recoveries will be dependent on the amount of Secured, Administrative, Priority, and General Unsecured Claims that are ultimately allowed.

The Committee currently anticipates that General Unsecured Creditors will receive a distribution of approximately _____% on the allowed amount of their claims. However, as discussed above, the variability of potential recoveries and claims may materially alter this projection. As noted in the Plan and Disclosure Statement, the Trustee has commenced litigation against various defendants including the Debtor's former founder, Tony Diab, and other entities that the Trustee believes were the recipient of fraudulent transfers or otherwise engaged in wrongful conduct. It is the Trustee's and Committee's hope that this litigation will result in additional recovery for General Unsecured Creditors. Although the amount of such recoveries is necessarily uncertain, the Plan provides an efficient framework to liquidate remaining assets (including the pursuit of litigation claims) that limits expenses and is likely to prove more cost-effective than a liquidation in chapter 7.

Accordingly, the Committee believes that General Unsecured Creditors will receive a greater recovery under the terms of this negotiated Plan compared to what General Unsecured Creditors otherwise would receive if the Bankruptcy Case was converted to a liquidation under chapter 7 of the Bankruptcy Code.

### Oversight Rights for General Unsecured Creditors Under the Plan

The Committee has negotiated significant oversight rights in connection with the Plan to ensure cost-effective liquidation of assets to maximize recovery to General Unsecured Creditors. A Post-Confirmation Committee will have oversight authority over material settlements and the administrative costs of liquidation that will prove significant variables in maximizing value to General Unsecured Creditors. The Committee believes that these unique rights will serve as a further protection to enhance recoveries under the Plan.

### The Committee Recommends That You Approve the Plan

**Under the facts and circumstances of this Bankruptcy Case and the representations of the Trustee, the Committee believes that confirmation of the Plan is in the best interest of the Debtor's General Unsecured Creditors and recommends that you vote to APPROVE the Plan. Notwithstanding this recommendation, you must make your own independent determination as to whether the Plan is acceptable to you and should consult your own legal and/or financial advisor(s).**

154785019.1

*Draft Subject to Court Approval*

The Committee urges all General Unsecured Creditors, before voting, to read and review, carefully and in its entirety, the Plan and the Disclosure Statement, including the discussion of the risk factors related to the Plan and all other documents submitted to you by the Plan Proponents. This communication does not constitute, and shall not be construed, as a recommendation or solicitation by any individual member of the Committee.

The Voting Deadline is _____, **2024, at 4:00 p.m. (Pacific Time)**.  Please complete and submit your Ballot in accordance with the instructions contained in the Solicitation Package so that it is received no later than the Voting Deadline.

Any interested party desiring further information about the Plan should contact Omni Agent Solutions by: (i) mail at Omni Agent Solutions, 5955 De Soto Ave., Suite 100, Woodland Hills, California 91367; (ii) emailing LPGinquiries@omniagnt.com; or (iii) calling (888) 741-4582 (U.S. and Canada toll free) or (747) 226-5672.  You may also review the Bankruptcy Case website maintained by Omni Agent Solutions at https://omniagentsolutions.com/LPG.

Dated: May _____, 2024

Respectfully submitted,

FOX ROTHSCHILD LLP

*[DRAFT]*
_____
Keith C. Owens (SBN 184841)
Nicholas A. Koffroth (SBN 287854)
10250 Constellation Blvd., Suite 900
Los Angeles CA 90067
Telephone:    (310) 598-4150
Facsimile:    (310) 556-9828
kowens@foxrothschild.com
nkoffroth@foxrothschild.com

*Counsel to the Official Committee of*
*Unsecured Creditors*

5

**[Omitted Exhibits]**

**The following proposed forms will be filed as a supplement to this Motion in advance of the objection deadline:**

- **Disclosure Statement Order**
- **Confirmation Notice**
- **Notice of Non-Voting Accepting Status**
- **Notice of Non-Voting Rejecting Status**
- **Ballots**