D. EDWARD HAYS, #162507
ehays@marshackhays.com
ALINA MAMLYUK, #284154
amamlyuk@marshackhays.com
MARSHACK HAYS WOOD LLP
870 Roosevelt
Irvine, California 92620
Telephone: (949) 333-7777
Facsimile: (949) 333-7778

Attorneys for Chapter 11 Trustee,
RICHARD A. MARSHACK

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br><br>THE LITIGATION PRACTICE GROUP, P.C.,<br><br>Debtor. | Case No. 8:23-bk-10571-SC<br><br>Chapter 11<br><br>OPPOSITION OF CHAPTER 11 TRUSTEE TO MOTION OF GREYSON LAW CENTER PC FOR RECOVERY OF ADMINISTRATIVE EXPENSE [Dk. No. 676]; DECLARATIONS OF D. EDWARD HAYS, ALINA MAMLYUK AND SHADAE CLARKE, AND JANE DEARWESTER IN SUPPORT THEREOF<br><br>Date:     April 25, 2024<br>Time:    11:00 a.m.<br>Ctrm:    5C – Via Zoom[1]<br>Location: 411 W. Fourth Street<br>              Santa Ana, CA 92701 |

TO THE HONORABLE SCOTT C. CLARKSON, UNITED STATES BANKRUPTCY COURT

JUDGE; THE OFFICE OF THE UNITED STATES TRUSTEE; ALL INTERESTED PARTIES

INCLUDING ADMINISTRATIVE CLAIMANT GREYSON LAW CENTER PC:

---

[1] ZoomGov: Video and audio connection information for each hearing will be provided on Judge Clarkson's publicly posted hearing calendar, which may be viewed online at: http://ecf-ciao.cacb.uscourts.gov/CiaoPosted/?jid=SC, and then selecting "(SC) Scott Clarkson" from the "Select Judge" tab on the left-hand side of the page.

# TABLE OF CONTENTS

1.   Summary of Argument ...................................................................................................2

    2.   Procedural Background.........................................................................................3

3.   Pertinent Factual Background.........................................................................................5

4.   Legal Argument .............................................................................................................8

    A.   Standard for Allowance Under 11 U.S.C §503(b) and Burden of Proof ......................8

    B.   Application of Fundamental Fairness Rule to the facts of the lockout would
       not permit allowance of an administrative claim ...........................................................8

    C.   Greyson completely fails its burden of proof to show benefit to Debtor's estate........11

    D.   The Entirety of Greyson's claim is subject to disallowance pursuant to
       §502(d) ........................................................................................................................12

5.   Conclusion ...................................................................................................................13

DECLARATION OF D. EDWARD HAYS......................................................................14

DECLARATION OF ALINA MAMLYUK ....................................................................16

# TABLE OF AUTHORITIES

**Cases**

*Abercrombie v. Hayden Corp. (In re Abercrombie)*,

   139 F.3d 755, 756 (9th Cir. 1998) ................................................................... 8

*Boeing North America, Inc. v. Ybarra (In re Ybarra)*,

   424 F.3d 1018, 1025 (9th Cir. 2005) ............................................................... 8

*In re Blanchard*,

   547 B.R. 347, 352 (Bankr. C.D. Cal. 2016, Clarkson, J.) ............................... 8

*In re Gilman*,

   646 B.R. 277, 288 (Bankr. C.D. Cal. 2022, Kaufman, J.)............................... 8

*In re Kadjevich*,

   220 F.3d 1016, 1019 (9th Cir. 2000); ............................................................. 9

OPPOSITION OF CHAPTER 11 TRUSTEE TO GREYSON'S MOTION FOR RECOVERY OF ADMINISTRATIVE
EXPENSE

*In re Megafoods Stores, Inc.*,

   163 F.3d 1063, 1071 (9th Cir. 1998) ............................................................. 9, 10

*In re Ybarra*,

   424 F.3d 1018, 1025 n.10 (9th Cir. 2005) ............................................................. 9

*Kipperman v. IRS, United States (In re 800Ideas.com, Inc.)*

   *496 B.R. 165, 177 (BAP 9th Cir. 2013)* ............................................................. 10

*MicroAge, Inc. v. Viewsonic Corp. (In re MicroAge, Inc.)*,

   291 B.R. 503, 505 (BAP 9th Cir. 2002) ............................................................. 12

*Microsoft Corp. v. DAK Industries (In re DAK Industries)*,

   66 F.3d 1091, 1094 (9th Cir. 1995) ............................................................. 8

*Reading Co. v. Brown*

   *391 U.S. at 482* ............................................................. 9

*Tucker Plastics v. Pay 'N Pak Stores (In re PNP Holdings Corp.)*,

   184 B.R. 805, 807 (BAP 9th Cir. 1995) ............................................................. 12

**Statutes**

11 U.S.C. § 503(b) ............................................................. 8

11 U.S.C. § 503(b)(1)(A) ............................................................. 8

11 U.S.C. §§ 544 and 548 ............................................................. 12

11 U.S.C. §502(d) ............................................................. 12

28 U.S.C. §§ 959(b) and 960 ............................................................. 10

OPPOSITION OF CHAPTER 11 TRUSTEE TO GREYSON'S MOTION FOR RECOVERY OF ADMINISTRATIVE
EXPENSE

Richard A. Marshack, the duly appointed Chapter 11 Trustee ("Trustee") for the estate of The Litigation Practice Group, P.C. ("Debtor" or "LPG") hereby respectfully submits this opposition ("Opposition") to the entirety of the administrative claim filed as Motion Notice of Motion and Motion of Greyson Law Center PC for an Order Granting Allowance and Payment of Administrative Claim, Pursuant to 11 USC 503(b)(1), Dk. No. 674 ("Motion") and submits the declarations of D. Edward Hays ("Hays Declaration"), Jane Dearwester ("Dearwester Declaration") and Shadae Clarke ("Clarke Declaration").

# 1.    Summary of Argument

Greyson seeks an administrative expense claim in the amount of $5,434,633.00. One portion of the claim is for $300,633.00 based on an inapplicable interpretation of fundamental fairness rule whereby Debtor's estate should pay for consequences of Trustee's field agents performing a Court ordered lockout. Remaining portion of the claim is for $5,134,000.00 based on the assertion that Debtor should pay Greyson $2,000 per file for 2,567 serviced client files for a supposed benefit to Debtor's estate.

However, other than seeking to re-litigate the legitimacy of the lockout order and preliminary injunction issued by this Court, Greyson's motion does not offer any legal basis or evidentiary support for allowance of an administrative expense flowing from consequences of the lockout. Further, Greyson seeks to be paid upon a contract that Greyson has not produced, thus failing to meet its burden of proof. As described, this contract would have Debtor pay for a premeditated fraud scheme wherein Debtor would have to pay a premium for the privilege of being systematically robbed of its two assets—its client files and its network of attorneys. In essence, Greyson (and its stakeholders) are looking to get paid for committing fraud. There is absolutely no discernible benefit to Debtor's estate in the Greyson scheme. As such, Greyson's motion for administrative expense should be denied in its entirety.

Further, because Trustee initiated an adversary proceeding against Greyson seeking to recover Debtor's property through avoidance of fraudulent transfers, the entirety of Greyson's

administrative claim should be disallowed pursuant to §502(d) until full recovery of Debtor's property from Greyson.

## 2. Procedural Background

Pre-petition, Debtor was a law firm that provided consumer debt resolution services servicing more than 50,000 customers across the United States. In 2022, Debtor's annual revenue exceeded $150 million.

On March 20, 2023 ("Petition Date"), Debtor filed a voluntary petition under Chapter 11 of Title 11 of the United States Code, initiating bankruptcy Case No. 8:23-bk-10571-SC in the United States Bankruptcy Court for the Central District of California, Santa Ana Division ("Bankruptcy Case"). Prior to bankruptcy, Debtor fraudulently transferred all its assets and clients. As of the petition date, Debtor had virtually no assets or clients.

On May 8, 2023, Richard A. Marshack was appointed as the Chapter 11 Trustee of the Debtor's estate. *See* Dk. No. 65.

On June 8, 2023, Trustee filed an adversary case against numerous defendants, including Greyson Law Center PC ("Greyson") and Phoenix Law Group, Inc. ("Phoenix"), seeking, among other things, to avoid and recover Debtor's fraudulent transfers ("Adversary Case"). *See* Adv. Case No. 8:23-ap-01046-SC.

On June 15, 2023, Trustee filed an amended complaint in the Adversary Case, modifying the allegations with regard to Greyson. *See* Adv. Case No. 8:23-ap-01046-SC Dk. No. 62.

On June 18, 2023, Han Trinh ("Han"), Phuong (aka Jayde) Trinh ("Jayde"), Greyson, and Scott Eadie filed a response to the amended complaint in the Adversary Case. *See* Adv. Case No. 8:23-ap-01046-SC Dk. No. 89.

On October 16, 2023, the Court entered an Order setting the Administrative Claims Bar Date as November 21, 2023. *See* Dk. No. 577.

On November 17, 2023, Greyson filed the Motion as Dk. No. 676, seeking a $5,434,633.00 administrative claim, asserting that its attorneys handled 2,567 lawsuits in the post-petition administrative period.

1    On December 6, 2023, Greyson filed a Motion to Vacate Lockout & Preliminary Injunction

2  Order as to Greyson only; plus for order ordering Trustee's counsel Chris Celentino ("Celentino") to

3  return all Greyson's seized property; and ordering Celentino to immediately restore Greyson's

4  access to all Greyson's data, which Celentino locked Greyson out of. *See* Dk. No. 749.

5    On January 5, 2024, Trustee filed a Status report Chapter 7 Trustee's Omnibus Status Report

6  re. Motions for Allowance of Administrative Expense Claims Under 11 U.S.C. Section 503(b) (Jan.

7  5 Status Report"). *See* Dk. No. 815.

8    In the Jan. 5 Status Report, Trustee indicated that he was investigating and verifying

9  Greyson's claim, including identifying the attorneys that worked on Greyson's behalf to assure there

10  was no overlap in Greyson's claim and the claims of individual attorneys and law firms. *See* Dk. No.

11  93.

12    On January 8, 2024, the Court entered an order granting the Jan. 5 Status Report. *See* Dk. No.

13  818.

14    On January 9, 2024, Han, Jayde Trinh, and Greyson filed an objection to the Court's order

15  granting the Trustee's Jan. 5 Status Report.

16    On February 15, 2024, Trustee filed an Omnibus Unilateral Report Regarding Status of

17  Motions for Allowance of Administrative Expense Claim Under 11 U.S.C. §503(b) ("Feb. 15 Status

18  Report"). *See* Dk. No. 940.

19    In the Feb. 15 Status Report, Trustee indicated that the he was investigating and verifying

20  Greyson's claim, including identifying the attorneys that worked on Greyson's behalf to assure there

21  was no overlap in Greyson's claim and the claims of individual attorneys and law firms. *See* Dk. No.

22  940.

23    On February 19, 2024, Han, Jayde, and Greyson filed a Unilateral Status Report requesting

24  that the Trustee file a pleading with the Court stating that the Trustee did not oppose Han, Jayde, and

25  Greyson's motions for allowance and payment of administrative claims.

26    Trustee did not reply to Han, Jayde and Greyson's Unilateral Status Report.

27

28

1    **3.      Pertinent Factual Background[2]**

2          Since its inception, Debtor's main assets were consumer client files, also known as Legal

3    Service Agreements ("LSAs") and Debtor's network of attorneys throughout the country ("Local

4    Counsel"). The main stakeholders controlling the Debtor were Tony Diab ("Diab"), Dan March

5    ("March"), Han Trinh ("Han"), and Jayde Trinh ("Jayde").

6          To facilitate its growth, Debtor obtained financing by granting liens or purporting to sell its

7    future receivables. After defaulting on its loans, Debtor was sued by its secured creditors in Fall

8    2022.  Dearwester Dec., Exs. 25 and 26.

9          By January 2023, stakeholders at LPG decided to stiff the creditors by essentially "killing"

10   the Debtor by fraudulently transferring all of its assets and then filing bankruptcy. They called this

11   "the hard part."  *See*,  Declaration of Alex Rubin Dec., Ex. 23, filed on April 11, 2024, as Dk. No.

12   1099 ("Rubin Dec.").

13         To accomplish this scheme, the insiders decided on a two-step process: first, they would

14   transfer consumer client files to non-Debtor entities and second, they would force new employment

15   contracts upon its Local Counsel. When there would be no client files left behind, and Local Counsel

16   would be employed by the new non-Debtor entities, the insiders would file bankruptcy under the

17   guise of reorganization (which was impossible after fraudulently transferring all of its assets), and

18   move on to their "new ventures."  *See*, Rubin Dec., Ex. 39

19         Some of the non-Debtor entities to which stakeholders transferred Debtor's assets were

20   Oakstone Law (Oakstone) and Phoenix Law (Phoenix). Another was Movant, Greyson.

21         Unfortunately for the insiders, most of Debtor's clients rightfully became concerned when

22   began receiving notices in January-February 2023 that they were now purportedly represented by the

23   fraudulent transferee law firms. *See*, Dearwester Dec., Ex 11.  No clients signed substitutions

24   consenting to these transfers. *See*, Dearwester Dec., Ex. 13.  Also, the insiders failed to alert their

25

26   _____

27   [2] In Pertinent Factual Background, Trustee incorporates by reference Trustee's Second Amended

28   Complaint filed in the adversary proceeding, *Marshack v. Diab*, et al, case no 8:23-ap-01046

OPPOSITION OF CHAPTER 11 TRUSTEE TO GREYSON'S MOTION FOR RECOVERY OF ADMINISTRATIVE
EXPENSE

1  various Local Counsel before notifying the clients. As such, Local Counsel began demanding

2  answers about the sudden change, which is when Han and Jayde began sending out new contracts to

3  Local Counsel to sign, some of which referenced Oakstone, Phoenix, and Greyson. *See*, Dearwester

4  Dec., Ex. 16.  Several Local Counsel previously employed by Debtor, who were hired and trained

5  and acquired proprietary knowledge about debt resolution through expenditure of Debtor's

6  resources, had brand new shiny Greyson contracts presented to them the one day after the Petition

7  Date. Local Counsel including R. Reed Pruyn, Israel Orozco, and Shadae Clarke are just three of the

8  attorneys who all were presented employment agreements with Greyson dated March 21, 2023.

9  Mamlyuk Dec Ex. 33, Clarke Dec. Ex. 2.  Pruyn's contract was filed on November 21, 2023, as Dk.

10  No. 699, pg. 8.  Other Local Counsel, already concerned by the distress of their clients, refused to

11  sign with Greyson yet still carried out their ethical obligations to represent the consumer clients.

12  Dearwester Dec., Ex. 27.

13      Within the first several weeks after Trustee's appointment on May 8, 2023, he discovered

14  this massive fraud perpetuated by the insiders. In normal bankruptcy matters, unfortunate but honest

15  debtors comply with Trustee's requests and are forthcoming with documents and information so that

16  Trustee can effectively administer the estate. Here, Trustee and Trustee's counsel were thwarted at

17  every step. Mr. March, the only officer in Debtor's law firm, essentially rented his license to Mr.

18  Diab, the twice disbarred attorney. Mr. Diab, in turn, was sending out missives from his admin e-

19  mail account to Han and Jayde, who carried out his orders. Rubin Dec., Exs. 23, 24.  Under the

20  grossly mistaken impression that Debtor's Local Counsel were their personal property (Han writing

21  that it "belongs to Jayde and [her] alone" and that they "owned" the network of attorneys that Debtor

22  paid to acquire, Han and Jayde gutted Debtor's ability to survive and operate. Clarke Dec., Ex. 5.

23  By the Petition Date, all client files had been fraudulently transferred to other law firms (selected by

24  Mr. Diab) and Local Counsel appeared to have been absorbed by Greyson.  Rubin Dec. Exs. 33, 39.

25      In order to protect against concealment and destruction of evidence and to prevent further

26  harm to consumer clients, Trustee properly requested to file a motion under seal so as to obtain a

27  temporary restraining order (TRO) from this Court. After a hearing on the motion on March 26,

28

OPPOSITION OF CHAPTER 11 TRUSTEE TO GREYSON'S MOTION FOR RECOVERY OF ADMINISTRATIVE
EXPENSE

1  2023, this Court granted the TRO and authorized a lockout of the Phoenix office as a prejudgment

2  remedy for the fraud. In compliance with the Court authorization, Trustee performed a lockout at

3  Greyson's offices on June 2, 2023. After obtaining control of the Phoenix office, Trustee discovered

4  several computers which contained evidence of the fraud.

5       In the course of Trustee's investigation of Greyson, Trustee discovered that post-petition,

6  Local Counsel essentially continued working on the consumer client files under the supposed banner

7  of Greyson.[3] Trustee reached out to Local Counsel to understand what work they were performing

8  and how they received the assignments. Here, Trustee uncovered another fraudulent surprise.

9  Greyson's master plan was thuggishly straightforward: Greyson intended to charge entities like

10  Phoenix a "rental fee" for the use of "Greyson attorneys," even though they were the same attorneys

11  that had worked for Debtor.  Clarke Dec., Ex. 7.

12       After June 27, 2023, per stipulation with Phoenix, Trustee avoided and recovered Debtor's

13  fraudulent transfer of client files. Trustee also obtained authorization to compensate some of

14  Debtor's former employees to continue servicing client files and prepare the files to be properly sold

15  with notice to the clients. A few months after the Court-approved sale, Greyson filed this Motion,

16  looking to collect its "rental fee" from Debtor's estate under the guise of a legitimate administrative

17  expense that was supposedly beneficial to the Debtor. Incapable of accepting the fact that Debtor's

18  property was lawfully avoided and recovered, Greyson has taken the curious, but inaccurate position

19  that Trustee or Trustee's counsel was somehow "running" Phoenix. As such, Greyson attempts to

20  shift its inane rental fee arrangement from Phoenix to Debtor's estate. But, the order avoiding the

21  fraudulent transfers to Phoenix made clear that the bankruptcy estate was recovering the assets but

22  was not being subjected to Phoenix's debts.

23

24  _____

25       While the legal formalities of Greyson are still unclear and are heavily argued by Greyson's
attorney as having monumental legal significance, the truth remains that Greyson was a brainchild of
26  Debtor's insiders. One, Greyson shutting down on Friday and the next Greyson sprouting up over
the weekend is a corporate shell game; there was no meaningful corporate restructuring and the same
27  players remained.

28

OPPOSITION OF CHAPTER 11 TRUSTEE TO GREYSON'S MOTION FOR RECOVERY OF ADMINISTRATIVE
EXPENSE

1    In its Motion, Greyson has neither provided a copy of its alleged contract nor has it identified

2  by name any of the attorneys for whose work they are seeking recovery of $5,134,000.00. Separate

3  from this Motion, Trustee has negotiated with various of the Local Counsel to reimburse them for

4  their out-of-pocket expenses and to provide them administrative claims for work actually performed

5  for the clients after service of the Court's TRO through the date the sale to MLG closed. Unlike

6  these Local Counsel, Greyson failed to provide any benefit to the estate.

7  **4.    Legal Argument**

8    **A.    Standard for Allowance Under 11 U.S.C §503(b) and Burden of
9         Proof**

10    Claims for "the actual, necessary costs and expenses of preserving the estate, including

11  wages, salaries, or commissions for services rendered after the commencement of the case" may be

12  entitled to administrative priority. 11 U.S.C. § 503(b)(1)(A); *see Abercrombie v. Hayden Corp. (In

13  re Abercrombie)*, 139 F.3d 755, 756 (9th Cir. 1998). "Requests for allowance of administrative

14  expenses under § 503(b) must be strictly construed as they 'reduce the funds available for creditors

15  and other claimants.'" *In re Gilman*, 646 B.R. 277, 288 (Bankr. C.D. Cal. 2022, Kaufman, J.). "To

16  be deemed an administrative expense, the claim must have arisen from a transaction with the debtor

17  in possession, and directly and substantially benefited the estate." *Boeing North America, Inc. v.

18  Ybarra (In re Ybarra)*, 424 F.3d 1018, 1025 (9th Cir. 2005). "In order to keep administrative costs to

19  the estate at a minimum, 'the actual, necessary costs and expenses of preserving the estate…' are

20  construed narrowly." *Microsoft Corp. v. DAK Industries (In re DAK Industries),* 66 F.3d 1091, 1094

21  (9th Cir. 1995). "The burden of proving an administrative expense claim is on the claimant." *Id.*

22  Claimants must prove entitlement to their administrative expense by a preponderance of the

23  evidence. *In re Blanchard*, 547 B.R. 347, 352 (Bankr. C.D. Cal. 2016, Clarkson, J.).

24  "[A]dministrative claims lack presumptive validity." *Id*.

25    **B.    Application of Fundamental Fairness Rule to the facts of the lockout
26         would not permit allowance of an administrative claim**

27    Greyson argues that it is entitled to an administrative expense claim of $300,633.00,

28

OPPOSITION OF CHAPTER 11 TRUSTEE TO GREYSON'S MOTION FOR RECOVERY OF ADMINISTRATIVE
EXPENSE

1 | representing the fees lost by Greyson after Trustee's seizure of computers and client files pursuant to

2 | the lockout order. Greyson argues that Trustee's field agents were negligent, converted Greyson's

3 | property, and that this action resulted in unfair competition against Greyson. Greyson's relies in its

4 | argument on the "fundamental fairness rule," yet misses in its application and purpose.

5 | The Court in *Reading Co. v. Brown* held that "damages resulting from the negligence of a

6 | receiver acting within the scope of his authority as a receiver give rise to 'actual and necessary costs'

7 | of a Chapter XI arrangement." 391 U.S. at 485. In *Brown*, on November 16, 1962, a debtor filed a

8 | petition for bankruptcy under Chapter 11 of the Bankruptcy Act[4]. *Id.* at 473. That same day, a

9 | receiver was appointed to conduct the debtor's business. *Id.* On January 1, 1963, the debtor's only

10 | significant asset, an eight-story industrial structure, was destroyed by a fire which spread to

11 | adjoining premises and destroyed the real and personal property of Reading Company. *Id.* Reading

12 | and other claimants who suffered losses resulting from the fire filed administrative expense claims in

13 | the bankruptcy based on the asserted negligence of the receiver. *Id.*

14 | The rule's name, "fundamental fairness," is derived from the Court saying that an "fairness to

15 | all persons having claims against an insolvent" is an "important, and here decisive, statutory

16 | objective." *Id.* at 477.

17 | The Court in *Kadjevich v. Kadjevich (In re Kadjevich)*, explained that "tort claims based on a

18 | trustee's post-petition negligence are granted…priority status so that the victims of a reorganizing

19 | business' torts will be compensated ahead of the creditors who sought reorganization." 220 F.3d

20 | 1016, 1020 (9th Cir. 2000) (referencing the *Reading* Court's assertion that it "seems more natural

21 | and just" that those "injured by the operation of the business during an arrangement should

22 | …recover ahead of[] those for whose benefit the business is carried on." 391 U.S. at 482.).

23 | In *Texas Comptroller of Public Accounts v. Megafoods Stores (In re Megafoods Stores)*, 163

24 | F.3d 1063 (9th Cir. 1998), the Court found that "[d]ebtors are liable due to violation of its duties as

---

[4] There does not appear to be any argument within the 9th Circuit that *Reading* survived the enactment of the Bankruptcy Code. *See In re Ybarra*, 424 F.3d 1018, 1025 n.10 (9th Cir. 2005); *In re Kadjevich*, 220 F.3d 1016, 1019 (9th Cir. 2000); *In re Megafoods Stores, Inc.*, 163 F.3d 1063, 1071 (9th Cir. 1998).

OPPOSITION OF CHAPTER 11 TRUSTEE TO GREYSON'S MOTION FOR RECOVERY OF ADMINISTRATIVE EXPENSE

1  debtor-in-possession under 28 U.S.C. §§ 959(b) and 960" under the *Reading* exception, for debtor's
2  failure to pay Texas sales taxes.

3       In *Kipperman v. IRS, United States (In re 800Ideas.com, Inc.)*, the court explained that in
4  *Reading*, "the Court's priority decision was largely based on equitable principles and a fairness
5  rationale." 496 B.R. 165, 177 (BAP 9th Cir. 2013). Although the holding in *Reading* was initially
6  read as narrow, *In re Megafoods Stores* expanded the doctrine by "holding that postpetition interest
7  on unremitted state and local sales taxes collected prepetition were entitled to administrative priority
8  when interest charges resulted from debtors' mismanagement of their estates, i.e. failure to comply
9  with their duties under 28 U.S.C. §§ 959(b) and 960." *Id.* at 178 (citing *In re Megafoods Stores*, 163
10  F.3d at 1072).

11      The Court in *In re Um*, determined that "[i]n order to be accorded administrative priority
12  under *Reading*, the acts must arise from the operation of the debtor's business. 2015 Bankr. LEXIS
13  621, at * 20 (Bankr. W. Wa. Feb. 27, 2015).

14      The underlying thread in these holdings is that Trustees of bankruptcy estates were held
15  liable for "postpetition tortious or active wrongdoing" *In re 800Ideas.com*, 496 B.R. at 178. For the
16  *Reading* exception to §503(b) "benefit to the estate" standard to apply, there are three factors that
17  should be considered: (1) active wrongdoing by the trustee; (2) arising from the operation of the
18  debtor's business; and (3) fairness. Here, there was no wrongful conduct.

19      On May 25, 2023, Trustee filed his emergency motion for TRO ("Emergency Motion"). On
20  May 26, 2023, the Court entered an order ordering, among other things, turnover of client files to the
21  Trustee, preventing Greyson from accessing any bank accounts, and locking Greyson out of the
22  subject premises ("Emergency Order"). The Emergency Motion was not filed as part of operating
23  the Debtor's business, nor was the Debtor's business operating. Instead, all of Debtor's assets had
24  been fraudulently transferred and Trustee was seeking their avoidance and recovery. Finally, there is
25  no fairness principle that would be violated by refusing to allow a fraudulent transferee to recover, as
26  an administrative expense claim, for any damages that it may have incurred by being unable to
27  benefit from the fraudulently transferred assets. To the contrary, allowing Greyson—whose

28

OPPOSITION OF CHAPTER 11 TRUSTEE TO GREYSON'S MOTION FOR RECOVERY OF ADMINISTRATIVE
EXPENSE

1  stakeholders were formerly managing the Debtor, then proceeded to defraud the Debtor, and are now

2  intending to engage in the same business as the Debtor—to recover ahead of those injured by the

3  Debtor. Allowing Greyson an administrative claim to the detriment of the consumer clients, would

4  violate fairness principles. Moreover, as in the rest of the claim, Greyson fails to meet its burden of

5  proof, including showing how it calculates its supposed damages. Greyson's attempt to relitigate the

6  lockout order in its administrative expense motion is also inappropriate. The $300,633.00 amount of

7  Greyson's claim should be denied.

8        **C.    Greyson completely fails its burden of proof to show benefit to**

9              **Debtor's estate**

10        In its Motion, Greyson haphazardly estimates that it is owed "at least" $5,134,000.00 for

11  work of "Greyson attorneys" but fails to provide even a single name to aid in Trustee's investigation. It is

12  This appears to be yet another deliberate attempt by Greyson to obstruct Trustee's investigation. It is

13  inconceivable that Han and Trinh did not know every single name of an attorney that is listed in the

14  Motion. Two weeks ago, Han admitted in her deposition taken by the Trustee that David Orr, Esq.,

15  ("Orr") was romantically involved with her sister, Jayde. A week ago, Orr's attorney confirmed that

16  Orr's fees are included in Greyson's Motion. Mamlyuk Dec., Ex. 34.  The fact that Han and Jayde

17  withheld Orr's name, among others, and instead forced Trustee to expend considerable resources to

18  connect the dots is inexcusable.

19        Greyson's administrative claim is by far the biggest filed in this bankruptcy case. Greyson

20  simply approximates the number of files fraudulently transferred and multiplied that number by

21  $2,000. Further, to this day, Greyson has not been able to provide a copy of the contract that

22  allegedly exists between Phoenix and Greyson, the very contract upon which Greyson bases its

23  claim. Greyson simply equates Phoenix to Debtor and calls it a day. There is no serious attempt by

24  Greyson to justify its claim. It is possible that this administrative expense claim of $5+ million was

25  always a part of Debtor's insiders' fraudulent plan. In other words, what better way for the insiders

26  to finance a new venture like Greyson than to saddle Debtor's estate with a $5 million administrative

27  claim for the exorbitant fees that Debtor never paid.

28

OPPOSITION OF CHAPTER 11 TRUSTEE TO GREYSON'S MOTION FOR RECOVERY OF ADMINISTRATIVE
EXPENSE

Trustee, in investigating the totality of administrative expense claims, has diligently tracked down work done by Debtor's former attorneys (Local Counsel) on Debtor's files, and intends to fairly compensate Local Counsel based on actual benefit provided to consumers. In this calculation, there is neither room nor reason to humor Greyson' absurd notion that Greyson should get more than a 100% markup on Local Counsel's fees. The absolute audacity of Greyson's claim—the idea that Greyson should get paid for fraud perpetuated by insiders such as Mr. Diab, and Han and Jayde Trinh, flies in the face of the bankruptcy process. Greyson's request for $5,134,000.00 must be denied.

### D.     The Entirety of Greyson's claim is subject to disallowance pursuant to §502(d)

Section 502(d) provides that a court "shall disallow any claim of any entity" whose transfer is avoidable under certain subsections. 11 U.S.C. §502(d) (subsections include §§ 544 and 548). Trustee has initiated an adversary complaint against Greyson, seeking to avoid and recover fraudulent transfers made from the Debtor to Greyson, pursuant to 11 U.S.C. §§ 544 and 548, *Marshack v. Diab, et al*, case no 8:23-ap-01046. Section 502(d) applies to administrative claims. *MicroAge, Inc. v. Viewsonic Corp. (In re MicroAge, Inc.)*, 291 B.R. 503, 505 (BAP 9th Cir. 2002). "A creditor cannot reasonably expect to provoke those portions of the bankruptcy code that allow it to recover on its claims and yet avoid the legal effect of other sections that do not work in its favor." *Tucker Plastics v. Pay 'N Pak Stores (In re PNP Holdings Corp.)*, 184 B.R. 805, 807 (BAP 9th Cir. 1995). The entirety of Greyson's administrative claim must be disallowed until Greyson's receipt and retention of fraudulent transfers from the Debtor is avoided and all of Debtor's property is rightfully returned to the estate.

/ / /

/ / /

## 5.    Conclusion

For the foregoing reasons, Trustee respectfully requests that the Court deny the Motion and disallow Greyson's Motion for allowance of administrative claim in its entirety.

DATED:  April 11, 2024                    MARSHACK HAYS WOOD LLP

                                    /s/  D. Edward Hays
                              By: _____
                                    D. EDWARD HAYS
                                    ALINA MAMLYUK
                                    Attorneys for Chapter 11 Trustee,
                                    RICHARD A. MARSHACK

OPPOSITION OF CHAPTER 11 TRUSTEE TO GREYSON'S MOTION FOR RECOVERY OF ADMINISTRATIVE EXPENSE

## DECLARATION OF D. EDWARD HAYS

I, D. Edward Hays, declare and state as follows:

1.    I am an individual over 18 years of age and competent to make this Declaration.

2.    If called upon to do so, I could and would competently testify as to the facts set forth

3.    The facts set forth below are true of my personal knowledge.

4.    I am an attorney at law duly admitted to practice before this Court and all courts of the State of California.

5.    I am a partner with the law firm of Marshack Hays Wood LLP, attorneys of record for Richard A. Marshack, the duly appointed Chapter 11 Trustee ("Trustee") for the estate of The Litigation Practice Group, P.C. ("Debtor" or "LPG").

6.    I reviewed the docket in this case prior to execution of this Declaration to refresh my memory as to the dates on which particular documents were filed.

7.    I make this declaration in support of the Trustee's Opposition to the Motion of Greyson Law Center for an Order Granting Allowance and Payment of Administrative Claim, Pursuant to 11 U.S.C. § 503(b)(1)(A), Dk. No. 676 ("Motion"). Capitalized terms not defined in this declaration shall have the meaning ascribed to them in the Opposition.

8.    On March 20, 2023 ("Petition Date"), Debtor filed a voluntary petition under Chapter 11 of Title of the United States Code, initiating bankruptcy Case No. 8:23-bk-10571-SC in the United States Bankruptcy Court for the Central District of California, Santa Ana Division ("Bankruptcy Case"). Prior to bankruptcy, Debtor fraudulently transferred all its assets and clients. As of the petition date, Debtor had virtually no assets or clients.

9.    On May 8, 2023, Richard A. Marshack was appointed as the Chapter 11 Trustee of the Debtor's estate. *See* Dk. No. 65.

10.    On June 8, 2023, Trustee filed an adversary case against numerous defendants, including Greyson Law Center PC ("Greyson") and Phoenix Law Group, Inc. ("Phoenix"), seeking, among other things, to avoid and recover Debtor's fraudulent transfers ("Adversary Case"). *See* Adv. Case No. 8:23-ap-01046-SC.

14

11.     On June 15, 2023, Trustee filed an amended complaint in the Adversary Case, modifying the allegations with regard to Greyson. *See* Adv. Case No. 8:23-ap-01046-SC Dk. No. 62

12.     In investigating Greyson's claim, Trustee obtained evidence of Debtor's emails between the insiders within Debtor's company: Tony Diab, Dan March, Han Trinh and Phuong ("Jayde") Trinh that show the extensive scheme of fraud that the stakeholders were engaged in prior to and post-petition.

13.     A compendium of these emails, authenticated by Alex Rubin, has been filed on April 11, 2024, as Dk. No. 1099.

I declare under penalty of perjury that the foregoing is true and correct. Executed on April 11, 2024.

_/s/ D. Edward Hays_____
D. EDWARD HAYS

OPPOSITION OF CHAPTER 11 TRUSTEE TO GREYSON'S MOTION FOR RECOVERY OF ADMINISTRATIVE EXPENSE

## DECLARATION OF ALINA MAMLYUK

I, Alina Mamlyuk, declare and state as follows:

1.      I am an individual over 18 years of age and competent to make this Declaration.

2.      If called upon to do so, I could and would competently testify as to the facts set forth in this Declaration.

3.      The facts set forth below are true of my personal knowledge.

4.      I am an attorney at law duly admitted to practice before this Court and all courts of the State of California.

5.      I am of counsel with the law firm of Marshack Hays Wood LLP, attorneys of record for Richard A. Marshack, the duly appointed Chapter 11 Trustee ("Trustee") for the estate of The Litigation Practice Group, P.C. ("Debtor" or "LPG").

6.      I reviewed the docket in this case prior to execution of this Declaration to refresh my memory as to the dates on which particular documents were filed.

7.      I make this declaration in support of the Trustee's Opposition to Motion of Greyson for Allowance of Administrative Expense Claim [Dk. 676]. Capitalized terms not defined in this declaration shall have the meaning ascribed to them in the Opposition.

8.      In the course of my investigation of administrative claim motions filed in this case, I contacted Israel Orozco who filed a request for payment of administrative expenses based on his servicing Debtor's client files as an attorney. [Dk. 862]

9.      In exchanging emails with him, I asked Israel Orozco to forward me documentation regarding his post-petition employment with Greyson.

10.     On April 1, 2024, Israel Orozco emailed me his employment contract with Greyson.

11.     A true and correct copy of the Greyson contract for Israel Orozco is attached here as Exhibit 33.

12.     In the course of my investigation of David Orr, Esq. ("Orr's") claim [Dk. 697], Orr's counsel confirmed to me that David Orr, Esq. was "in fact the 'Florida attorney' referenced in Greyson's motion."

OPPOSITION OF CHAPTER 11 TRUSTEE TO GREYSON'S MOTION FOR RECOVERY OF ADMINISTRATIVE
EXPENSE

13.     A true and correct copy of the e-mail Orr's counsel sent me is attached here as Exhibit 34.

I declare under penalty of perjury that the foregoing is true and correct. Executed on April 11, 2024.

_/s/ Alina Mamlyuk_____
ALINA MAMLYUK

4894-7380-1654, v. 1

17

### Declaration of Shadae A. Clarke

I, Shadae A. Clarke, say and declare as follows:

1.     I am an individual over 18 years of age and competent to make this Declaration.

2.     If called upon to do so, I could and would competently testify as to the facts set forth in this Declaration.

3.     The facts set forth below are true of my personal knowledge.

4.     I am an attorney at law duly admitted to practice before all courts of the State of Georgia.

5.     I am the sole member of the law firm The Clarke Law Firm, LLC.

6.     On November 28, 2022, I began working for The Litigation Practice Group ("LPG").

7.     On or before February 17, 2023, Han Trinh ("Han") and Jayde Trinh ("Trinh") called a meeting via Microsoft Teams. On the call Han told us that LPG clients were being transferred to several different entities. Phoenix Law, PC ("Phoenix") and Oakstone Law Group PC ("Oakstone") were two of the entities named. Han also said that we needed to finish out the LPG cases previously assigned. Jayde told us that our last paycheck from LPG would be disbursed the following week. Han stated that we would be receiving employment contracts from a new entity named Oakstone, where Jayde would be the managing attorney.

8.     On February 19, 2023, I received an employment offer from Oakstone Law Group PC ("Oakstone") from Oakstone Admin from the email address admin@oakstone.com.

9.     On February 20, 2023, I executed the employment offer.  A true and correct copy of the signed employment agreement is attached to my Declaration as Exhibit 1.

10.     On or before March 24, 2023, Han and Jayde called a meeting via Microsoft Teams. In the meeting, Han said that they (Jayde and Han) were starting a new entity called Greyson Law Center PC ("Greyson") and that we would be receiving new employment contracts for Greyson. The attorneys were told that if any of our clients wanted to keep us as

their attorney, we should bring them to Greyson.

11.    On March 24, 2023, I received an employment offer from Greyson Law Center PC ("Greyson") dated for March 21, 2023, from Mary, Chief of Staff, from the email address Onboarding@greysonpc.com. On March 26, 2023, I executed the employment offer. A true and correct copy of the signed employment agreement is attached to my Declaration as Exhibit 2.

12.    On April 6, 2023, Han Trinh ("Han") sent an e-mail to Greyson attorneys after a meeting that had taken place prior to that day. At that meeting, Han told us that if we had any clients that wanted to keep us as their attorney and leave Phoenix Law, PC ("Phoenix"), Consumer Law Group, PC, or Oakstone, that we should come to Greyson. The e-mail contained a referral form. A true and correct copy of the beginning of the e-mail is attached to my Declaration as Exhibit 3. I am unable to access the full e-mail due to being locked out of Greyson's e-mail account but have accurately described the e-mail's contents.

13.    On June 13, 2023, Doug Plazak ("Plazak") sent an email to Han and Scott Eadie ("Eadie") summarizing a phone call that he had with the Trustee of LPG's bankruptcy estate's ("Trustee") counsel, Christopher Celentino, discussing, among other things, Greyson attorneys working on LPG and Phoenix Law Group client files.

14.    On June 14, 2023, Han replied to the email from Plazak stating, among other things, that …"Greyson attorney network belongs to Jayde and I alone. They were W2 attorneys for LPG until February 2023. They never belong to anything Ty Carss [] did."

15.    On June 14, 2023, I received screenshots via text message from Han showing the above-described e-mails from Han and Plazak. A true and correct copy of the screenshots sent to me of the email sent by Plazak to Han and Eadie are attached to my Declaration as Exhibit 4. A true and correct copy of the screenshots sent to me of the email sent by Han to Plazak are attached to my Declaration as Exhibit 5.

16.    On June 15, 2023, I sent an e-mail to Ty Carss from my firm's e-mail address because Greyson's e-mail domain was down. I told him that I had a list of Phoenix Law PC

18

clients that I was handling, and that I was interested in continuing to work on client case files in Georgia. I also informed him that without access to the Greyson e-mail domain that it was difficult to service my cases.

17.    That same day, Carss e-mailed me back saying that he would like to establish a relationship with me, and that the Trustee's IT people could help me access the files that I needed from Greyson, and that he could sign me up for access to Phoenix's LUNA CRM database. A true and correct copy of this email chain is attached to my Declaration as Exhibit 6.

18.    I sent a Basic Fee/Representation Agreement to Phoenix on behalf of my law firm on June 16, 2023. A true and correct copy of the fee agreement is attached to my Declaration as Exhibit 7.

19.    On June 19, 2023, I began working for Phoenix.

20.    A true and correct copy of a W2 sent to me by Greyson to me is attached to my Declaration as Exhibit 8.

I declare under penalty of perjury that the foregoing is true and correct. Executed on April 11, 2024.

_____
SHADAE A. CLARKE

DECLARATION OF SHADAE A. CLARKE

# **Declaration of Jane Dearwester**

I, Jane Dearwester, say and declare as follows:

1.     I am an individual over 18 years of age and competent to make this Declaration.

2.     If called upon to do so, I could and would competently testify as to the facts set forth in this Declaration.

3.     The facts set forth below are true of my personal knowledge.

4.     I am an attorney at law duly admitted to practice before all courts of the State of North Carolina and the Commonwealth of Kentucky.

5.     I was hired by The Litigation Practice Group ("LPG") in October 2021. A true and correct copy of the Employment Contract dated September 20, 2021 is attached to my Declaration as Exhibit 9.

6.     I was hired to set up and lead the LPG offices in North Carolina, Kentucky, and Tennessee. At the time, I was only licensed to practice law in North Carolina.

7.     I was asked by Tony Diab ("Diab") to apply to the Kentucky and Tennessee State Bars for admission by comity. LPG paid all costs and fees associated with my application to be admitted to the State Bars for Kentucky and Tennessee.

8.     Han Trinh ("Han") was the Director of Operations for LPG. Her responsibilities included handling management of LPG's staff and attorneys. She was referred to as "General Han" because she was somewhat feared by the employees of LPG. She had seemingly unlimited authority to manage the business of LPG and LPG's employees.

9.     Phuong aka Jayde Trinh ("Jayde") was introduced to me as the Attorney Liaison. I understood her job was to support the local attorneys, including myself, and make sure that the attorneys had all of the tools needed to do our job.

10.     Jayde also served as General Counsel of LPG, under Dan March ("March"). However, it was clear that Jayde was in charge of the attorneys across the country, as we rarely, if ever, had contact with March. I thought it was odd that such a young, newly licensed attorney had such a high level of responsibility within the firm. A true and correct copy of the

20

1    November 1, 2022 welcome email for new clients is attached to my Declaration as Exhibit 10.

2          11.      Shortly after I was hired, I was flown out to California to visit LPG

3    headquarters in Tustin, California. Jayde picked me up in a BMW i8 sports car from John

4    Wayne Airport in Santa Ana, California.

5          12.      When she picked me up, she gave me the keys to the car and told me to have a

6    fun weekend. She said that LPG bought the BMW i8 for her as a "perk" and that LPG had

7    bought Diab a Mercedes Benz G-Wagon.

8          13.      Later during that trip, I saw Diab driving the Mercedes Benz G-Wagon.

9          14.      Jayde helped me check in to a Marriott luxury vial in Newport Beach and I

10   spent the weekend in Southern California.

11         15.      While I was in town, I met with Han, Jayde, Diab, and March. I toured the

12   LPG headquarters and met the employees at the Tustin office. At the time, there were

13   hundreds of employees, covering three floors of office space in a large commercial building.

14         16.      In December 2021, I, and attorneys from all over the country, were flown to

15   California for an LPG Christmas party ("Christmas Party").

16         17.      All of the other attorneys and I stayed at the Surf & Sand Resort in Laguna

17   Beach, California. All expenses were covered by LPG. The other attorneys and I attended a

18   big dinner with a "red carpet." LPG also hosted a staff party at Dave & Busters.

19         18.      At the Christmas Party, LPG announced that Jayde had passed the California

20   Bar

21         19.      I thought this announcement to be odd because Jayde was previously listed as

22   General Counsel for LPG which would mean Jayde was unlicensed when working as General

23   Counsel.

24         20.      Diab and March authorized the lease of an office space that was at least 3000

25   square feet, costing over $8,000.00 per month, for myself and one other employee in North

26   Carolina ("North Carolina Office").

27         21.      Diab and March authorized over $100,000.00 to furnish the North Carolina

28   Office. The furniture and equipment purchased to furnish the North Carolina Office was paid

1    for outright. It was not financed or leased.

2        22.    In February 2023, my LPG clients began reaching out to me saying that they

3    had received communications stating that their client file had been sold/transferred to

4    Oakstone Law Group PC ("Oakstone"), Phoenix Law, PC ("Phoenix"), and Consumer Law

5    Group, PC ("CLG"). A true and correct copy of a February 3, 2023 email to clients is attached

6    to my Declaration as Exhibit 11. A true and correct copy of March 2023 emails regarding the

7    transfer of Phoenix Law clients without consent is attached to my Declaration as Exhibit 12.

8        23.    In response, I told my LPG clients that they could not be transferred without

9    their consent.

10        24.    When I, and others, brough this up to Jayde, Han, and Diab, they did not

11    respond. A true and correct copy of emails are attached to my Declaration as Exhibits 13, 14

12    and 15.

13        25.    On February 3, 2023, Jayde sent the attorneys a cryptic e-mail stating that Diab

14    and March were "stepping away" from LPG and we were transitioning to Oakstone. A true

15    and correct copy of the email is attached to my Declaration as Exhibit 16.

16        26.    Jayde and Han told the attorneys, plainly, that if we wanted to continue

17    receiving a paycheck that we had to transition over to Oakstone by March 13, 2023.  A true

18    and correct copy of the emails are attached to my Declaration as Exhibit 17 and 18.

19        27.    My LPG clients were particularly distressed by the transition to Oakstone and

20    reported that their bank accounts were being debited multiple times, in the same month, by a

21    combination of LPG, Oakstone, Phoenix, and CLG.

22        28.    Han and Jayde told me, and other attorneys, that LPG was "rebranding" to get

23    away from lawsuits that had been filed in California that dated back to when LPG was Coast

24    Processing.

25        29.    They said that Diab and March were personally implicated in those lawsuits

26    and that it was necessary to change the name of the law firm to "save the brand."

27        30.    Then, in a sudden about-face, we were told not to talk about LPG and

28    Oakstone in the same sentence and that LPG and Oakstone are completely separate entities

1    that had nothing to do with each other.

2        31.    It is my understanding that Han and Jayde were directing the consumer file

3    transfers away from Forth and Direct Pay Pro to a new customer relationship management

4    system and a new proprietary data management software.

5        32.    Han and Jayde said that the attorneys in each state were the most important

6    commodity that LPG had and that whoever controlled and maintained relationships with the

7    attorneys "held all the cards."

8        33.    Han and Jayde admitted that they could not run the business without the

9    attorneys in each state because the attorneys are the ones that are credentialed and have

10    existing relationships with LPG clients.

11        34.    Han and Jayde told the attorneys that they were there to protect us and were

12    adamant about maintaining their relationship with us.

13        35.    Han and Jayde ran LPG on the ground level. A true and correct copy of a

14    January 2023 email re: division of responsibilities between Han and Jayde is attached to my

15    Declaration as Exhibit 19.

16        36.    In early February 2023, LPG stopped paying its expenses: payroll started being

17    missed and never got back on track, rent was stopped being paid, our phones were shut off,

18    electricity was shut off multiple times at the North Carolina Office, and vendors stopped

19    being paid. A true and correct copy of emails are attached to my Declaration as Exhibits 20,

20    21, 22, and 23.

21        37.    Richard Meier ("Meier"), a trusted and respected colleague and an LPG

22    attorney based out of the Tustin office California, resigned after LPG missed the first payroll

23    in early February 2023.

24        38.    Meier's office was right next door to Jayde's in Tustin, California.

25        39.    In February 2023, Meier called and texted me to encourage me to resign and

26    "save my law license."

27        40.    Meier told me not to believe anything that Han and Jayde told me.

28        41.    Meier told me to go to PACER and look into the cases for LPG in the Central

23

1    District of California. A true and correct copy of the March 10, 2023 email from Meier is

2    attached to my Declaration as Exhibit 24.

3        42.    I logged into PACER and found the March Bein and NAZ II Holdings

4    lawsuits. After I read through the dockets of these cases, I realized that LPG was creating

5    shell companies and offloading client files so that they could keep charging the clients

6    monthly fees. A true and correct copy of the March Bein lawsuit and the NAZ II Holdings

7    lawsuits are attached to my Declaration as Exhibits 25 and 26.

8        43.    I learned that Diab was formerly an attorney that had been disbarred in two

9    states by reading through the dockets.

10       44.    Meier told me that Diab paid for Han's wedding which had cost about

11   $300,000. He also said that Diab paid for Han and Jayde's luxurious lifestyle, which included

12   sports cars, a high salary, private jets, and expensive trips to Las Vegas, Nevada for

13   "marketing" purposes.

14       45.    I was not paid my bonuses and the money I made from clients outside the

15   typical LPG sales funnel.

16       46.    I brought my own legal clients from my previous practice over to LPG and

17   took on new clients on an hourly basis.

18       47.    I was supposed to split these fees equally with LPG. I sent them the funds so

19   that taxes would be deducted, but they never sent me back my half of the money.

20       48.    I shared the information that I had received from Han and Jayde with three

21   employment law and ethics attorneys. All of them told me to resign immediately to avoid

22   being complicit in the scheme of fraud and to save my law license.

23       49.    I resigned the next day, on March 10, 2023. A true and correct copy of my

24   March 10, 2023 resignation letter addressed to Daniel S. March is attached to my Declaration

25   as Exhibit 27.

26       50.    I reported the principals of LPG, Oakstone, Phoenix, and CLG to the State Bar

27   of California, and the State Bar of North Carolina, as well as the Attorney General for

28   California, the Attorney General for North Carolina, the Consumer Financial Protection

DECLARATION OF JANE DEARWESTER

Bureau, the Federal Bureau of Investigation, Senators in California, Senators in North Carolina, Congressional Representatives in California, and Congressional Representatives in North Carolina.

51.    I notified the North Carolina State Bar that LPG was no longer able to conduct business in North Carolina after my departure because they no longer had a North Carolina licensed attorney on staff.

52.    I was a member of a Facebook group for disgruntled LPG former clients. Within that Facebook group, many of those clients shared stories of LPG, Oakstone, and Phoenix unduly debiting their bank accounts and transferring their files without authorization.

53.    A true and correct copy of a December 20, 2022 email from Diab about disgruntled vendors is attached to my Declaration as Exhibit 28.

54.    A true and correct copy of a December 9, 2022 email regarding credit cards declining in December 2022 is attached to my Declaration as Exhibit 29.

55.    A true and correct copy of the March 6, 2023 email from Jason J. Rebhun regarding further solicitation of LPG attorneys to go to other firms is attached to my Declaration as Exhibit 30.

56.    A true and correct copy of a screenshot of communication to attorneys from Han about vacation pay is attached to my Declaration as Exhibit 31.

57.    A true and correct copy of the May 11, 2023 client's communication that they were transferred from Oakstone to Phoenix on May 11. 2023, three days after appointment of Trustee is attached to my Declaration as Exhibit 32.

58.    On April 5, 2024, I spoke to one of the attorneys representing the Trustee in LPG's bankruptcy matter.

/ / /

/ / /

DECLARATION OF JANE DEARWESTER

1    LPG's bankruptcy matter.

2    ///

3    ///

4

5

6

7       59.     The exhibits attached to my Declaration were forwarded by me to Trustee's

8    counsel on or about April 5, 2024 and represent true and correct copies of e-mails, documents,

9    and screenshots that I saved from my employment with LPG.

10       I declare under penalty of perjury that the foregoing is true and correct. Executed on

11    April 11, 2024.

12

13                               JANE DEARWESTER

14      4879-3769-9254, v. 1

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<div align="center">26

DECLARATION OF JANE DEARWESTER</div>

Scanned with CamScanner

**EXHIBIT 1**



# OAKSTONE
L A W   G R O U P   P C

| +1 858-330-3009 | 888 Prospect Street, Ste 200, La Jolla, CA 92037 | support@oakstonepc.com |

Shadae Clark
Saclarke03@gmail.com

February 18, 2023

Dear Ms. Clark,

Congratulations! It is with great pleasure that Oakstone Law Group PC ("OLG") would like to offer full-time employment to you for the position of Associate Attorney. The terms and conditions of employment are outlined below. The Firm reserves the right to alter or rescind this offer at any time during the employment process. The following outlines the details of this offer.

1. **Start Date**
   February 20, 2023

2. **Compensation**
   You will be classified as an exempt employee with an annual salary of $120,000.00 per year paid in accordance with Firm payroll practices. Employee agrees to maintain a license in good standing in Georgia.

   The Employee agrees to represent all clients of OLG assigned to Employee who have active matters located in any jurisdiction in which Employee is admitted to practice law. The Employee may employ the assistance of appearance or coverage counsel at Employee's discretion to manage Employee's docket of cases, and OLG agrees to cover such cost on behalf of Employee.

   The Employee will be provided office space convenient to their current residence. All bar dues and malpractice insurance will be covered by OLG. The Employee may also retain a legal administrative assistant or paralegal to assist in the management of Employee's docket of cases.

   **Annual Salary Increase.** The Employee shall be eligible for salary increases annually of zero to three percent (0-3%). Such salary increase shall be based upon the overall performance of the Employee during the preceding twelve (12)-month period.

3. **Benefits**

   a. **Enrollment.** Should you choose to enroll, the benefits will be effective the first day of the month following your hire date. OLG offers a competitive benefit plan which includes the following:
      i. Paid Time Off.

Scanned with CamScanner

EXHIBIT 1
Page 28

- You will be eligible to accrue three (3) weeks of Vacation and forty (40) hours of Sick Time per year. You will need to inform Human Resources prior to your Vacation.
    ii. Medical, Dental, and Vision Plan
    iii. 401(k) Plan and company-match (if eligibility requirements are met)
    iv. Paid Holidays

4. **Duties**
   a. Attorney-Employees are required to represent clients of OLG in accordance with the applicable rules of professional conduct governing the jurisdiction in which such legal representation is rendered.
   b. The Employee is not required to maintain records of hours except as required by any applicable rule of professional conduct.
   c. If any ethical conflict arises, Employee may decline a case assignment, but must promptly notify OLG of such denial and must assist OLG in good faith to find representation for such client.
   d. If Employee requires any support material to provide legal services in accordance with the applicable rules of professional conduct, Employee shall promptly notify OLG of the same and OLG agrees to comply with such requests in good faith and with the exercise of reasonable diligence.
   e. The Employee agrees to permit OLG to publish Employee's profile to its website, mobile application, and on any firm letterhead or correspondence.
   f. The Employee agrees to complete all required continuing legal education coursework and to comply with ethical standards expected of any officer of the court.
   g. The Employee agrees to serve as counsel for the Firm and its clients for all purposes in the jurisdiction(s) in which Employee is licensed.
   h. The Employee agrees to use OLG's customer relations management software.
   i. The Employee agrees to use their name and information on correspondence directed to OLG's clients in the state(s) in which the attorney is licensed.

5. **Outside Activities**

   a. **General.** During the term of this Agreement you may not, without the prior written consent of the Firm, directly or indirectly as principal, agent, shareholder, partner, employee or otherwise engage in or be interested in any other business which will require your attendance or attention during the Firm's business hours or which is or may be contrary to the interest of, or in competition with, the Firm or which may require the use of confidential information of the Firm.

6. **Confidentiality**

   a. **General Confidentiality.** You shall not disclose or use either during or after your employment with the Firm any secret or confidential information, or information which in good faith and good conscience ought to be treated as confidential relating to the Firm, its employees, or its customers without the prior written consent of the Firm.
   b. **Confidential information.** Confidential information includes, but is not limited to, customer lists, supplier lists and lists of employees and contractors and information about the Firm's finances, business plans, proposals, technologies, and developments.
   c. **Absenteeism and Illness.** Punctual attendance is necessary. It is the responsibility of the Employee to inform OLG prior to your start of any absenteeism and illness. The Firm has the right to require you to supply proof of illness and fitness to return to work in the form of a doctor's certificate or other form satisfactory to the Firm.

7. **At-Will Statement**

2

a. **General At-Will.** This letter constitutes the full commitments that have been extended to you. However, OLG does not guarantee employment for a specified length of time.
b. **Mutual Consent.** Employment is at the mutual consent of each employee and OLG.
c. **Right to Terminate.** Accordingly, both parties retain the right to terminate the employment relationship at-will with or without cause.
d. **Identification Documents and Other Paperwork.** Upon employment, you will be asked to provide identification documents in accordance with the provisions of the Immigration Reform Act of 1986 and complete the I-9 form within three days of employment. You will also be given additional paperwork necessary to complete your file.

If the terms and conditions stated above are acceptable to you, please indicate by signing below and returning to me via email. Please respond within two business days of the date on this correspondence. If you have any questions, please contact me at admin@oakstonepc.com.

We look forward to a favorable reply!

Sincerely,

*Scott J. Eadie*

Managing Attorney

_____

I accept the above offer to be employed by Oakstone Law Group and understand the terms and conditions set forth in this letter.

_____    Dated: _____2|20|23_____

Shadae Clarke

3

# EXHIBIT 2



# GREYSON LAW CENTER

**Shadae Clark**                                                               **March 21, 2023**

Dear Ms. Clark,

Congratulations! It is with great pleasure that Greyson Law Center PC would like to offer full-time employment to you for the position of Associate Attorney. The terms and conditions of employment are outlined below. The Firm reserves the right to alter or rescind this offer at any time during the employment process. The following outlines the details of this offer.

### 1. Start Date
March 27, 2023

### 2. Compensation
You will be classified as an exempt employee with an annual salary of $120,000.00 per year paid in accordance with Firm payroll practices. Employee agrees to maintain a license in good standing in Georgia.

> The Employee agrees to represent all clients of Greyson Law Center assigned to Employee who have active matters located in any jurisdiction in which Employee is admitted to practice law. The Employee may employ the assistance of appearance or coverage counsel at Employee's discretion to manage Employee's docket of cases, and Greyson Law Center agrees to cover such cost on behalf of Employee.

> The Employee will be provided office space convenient to their current residence. All bar dues and malpractice insurance will be covered by Greyson Law Center. The Employee may also retain a legal administrative assistant or paralegal to assist in the management of Employee's docket of cases.

> **Annual Salary Increase.** The Employee shall be eligible for salary increases annually of zero to three percent (0-3%). Such salary increase shall be based upon the overall performance of the Employee during the preceding twelve (12)-month period.

### 3. Benefits
    a)  **Enrollment.** Should you choose to enroll, the benefits will be effective the first day of the month following your hire date. Greyson Law Center offers a competitive benefit plan which includes the following:

EXHIBIT 2
Page 32



# GREYSON LAW CENTER

    I.   Paid Time Off: You will be eligible to accrue three (3) weeks of Vacation and forty (40) hours of Sick Time per year. You will need to inform Human Resources prior to your Vacation.

    II.   Medical, Dental, and Vision Plan

    III.   401(k) Plan and company-match (if eligibility requirements are met)

    IV.   Paid Holidays

**4. Duties**

    **a)**   Attorney-Employees are required to represent clients of Greyson Law Center in accordance with the applicable rules of professional conduct governing the jurisdiction in which such legal representation is rendered.

    **b)**   The Employee is not required to maintain records of hours except as required by any applicable rule of professional conduct.

    **c)**   If any ethical conflict arises, Employee may decline a case assignment, but must promptly notify Greyson Law Center of such denial and must assist Greyson Law Center in good faith to find representation for such client.

    **d)**   If Employee requires any support material to provide legal services in accordance with the applicable rules of professional conduct, Employee shall promptly notify Greyson Law Center of the same and Greyson Law Center agrees to comply with such requests in good faith and with the exercise of reasonable diligence.

    **e)**   The Employee agrees to permit Greyson Law Center to publish Employee's profile to its website, mobile application, and on any firm letterhead or correspondence.

    **f)**   The Employee agrees to complete all required continuing legal education coursework and to comply with ethical standards expected of any officer of the court.

    **g)**   The Employee agrees to serve as counsel for the Firm and its clients for all purposes in the jurisdiction(s) in which Employee is licensed.

    **h)**   The Employee agrees to use Greyson Law Center's customer relations management software.

    **i)**   The Employee agrees to use their name and information on correspondence directed to Greyson Law Center's clients in the state(s) in which the attorney is licensed.

**5. Outside Activities**

    a)   **General.** During the term of this Agreement you may not, without the prior written consent of the Firm, directly or indirectly as principal, agent, shareholder, partner, employee or otherwise engage in or be interested in any other business which will require your attendance or attention during the Firm's business hours or which is or may be contrary to the interest of, or in competition with, the Firm or which may require the use of confidential information of the Firm.

EXHIBIT 2
Page 33



# GREYSON LAW CENTER

**6. Confidentiality**

a) **General Confidentiality.** You shall not disclose or use either during or after your employment with the Firm any secret or confidential information, or information which in good faith and good conscience ought to be treated as confidential relating to the Firm, its employees, or its customers without the prior written consent of the Firm.

b) **Confidential information.** Confidential information includes, but is not limited to, customer lists, supplier lists and lists of employees and contractors and information about the Firm's finances, business plans, proposals, technologies, and developments.

c) **Absenteeism and Illness.** Punctual attendance is necessary. It is the responsibility of the Employee to inform Greyson Law Center prior to your start of any absenteeism and illness. The Firm has the right to require you to supply proof of illness and fitness to return to work in the form of a doctor's certificate or other form satisfactory to the Firm.

**7. At-Will Statement**

a) **General At-Will.** This letter constitutes the full commitments that have been extended to you. However, Greyson Law Center does not guarantee employment for a specified length of time.

b) **Mutual Consent.** Employment is at the mutual consent of each employee and Greyson Law Center.

c) **Right to Terminate.** Accordingly, both parties retain the right to terminate the employment relationship at-will with or without cause.

d) **Identification Documents and Other Paperwork.** Upon employment, you will be asked to provide identification documents in accordance with the provisions of the Immigration Reform Act of 1986 and complete the I-9 form within three days of employment. You will also be given additional paperwork necessary to complete your file.

If the terms and conditions stated above are acceptable to you, please indicate by signing below and returning to me via email. Please respond within two business days of the date on this correspondence. If you have any questions, please contact me at admin@greysonpc.com.

We look forward to a favorable reply! Sincerely,

Sincerely,

*Scott J Eadie*

Scott J. Eadie
Managing Attorney

EXHIBIT 2
Page 34



# GREYSON LAW CENTER

I accept the above offer to be employed by Greyson Law Center PC and understand the terms and conditions set forth in this letter.

Shadae Clarke

Print: First name and last name

_____                    3/26/23

Signature                                     Date

440 N. Barranca Ave. #1331, Covina, CA 91723 • greysonpc.com

EXHIBIT 2
Page 35

# EXHIBIT 3

**From:** shadae clarke <shadae@theclarkefirm.com>
**Date:** Thursday, March 28, 2024 at 3:29 PM
**To:** Alina Mamlyuk <amamlyuk@marshackhays.com>
**Subject:** Re: LPG POC 02097; Proof of Claim filed by Shadae Clarke

Alina,
See attached the documents attached we spoke about.

The attorney referral form email below was sent to the Greyson attorney's from Han after a team meeting that took place prior to 4/6/23. I am not sure of the exact date. In the meeting Han said that if we had any clients that wanted to keep us as their attorney and leave Phoenix, Consumer Law or Oakstone, we should have them come to Greyson using the referral form in this email. I don't have access to the Greyson email anymore to actually pull up the link they gave us.



**Admin**                                                    4/6/23  >
Attorney Referral Form                                          🚩
Hello Counsels, If any of your clients (whether they be
at CLG, OLG, or PLG) would like to onboard as a Grey...

My 1st payroll deposit from Greyson was on 4/5/2023.
My last payroll deposit from Greyson was on 5/31/2023.

The invoices I provided are for the files I continued to work from 5/31/23 to 8/3/23 when Morning Law back paid the attorneys from 8/4/23.

Let me know if you need anything else.

EXHIBIT 3
Page 37

# EXHIBIT 4



EXHIBIT 4
Page 39



8:25      LTE 35

Celentino advised that the Chapter 11 Trustee/LPG will contact all attorneys who are handling LPG/Phoenix client files over the next 24 hours to either offer them some kind of deal to continue working directly for LPG/Phoenix, or they will advise the attorney that the Chapter 11 Trustee/LPG does not want them working on the file any longer. Please reach out of the Greyson attorneys toward the end of Wednesday and try to find out if they have been contacted by the Chapter 11 Trustee/LPG and told whether they will continue to work on the files.

      II.     Access to the Greyson Email Domain

Celentino questioned whether the Greyson email domain and the LPG email domain were separate. He also disputed that Greyson had purchased the domain since he contended that any monies used by Greyson were stolen from LPG. He contended that either Maverick or Prime Logic had actually purchased the domain from GoDaddy. In any event it looks like the Trustee will offer to "sell" the email domain to Greyson, but it is not clear to me how quickly the Trustee will sell. I realize you disagree with Celentino's contention, but the reality is that Clarkson does not like Greyson and in all likelihood he will accept any representations made by Celentino without much inquiry.

Therefore, until the Chapter 11 Trustee sells Greyson the Greyson email domain, you will not

EXHIBIT 4
Page 40



Therefore, until the Chapter 11 Trustee sells Greyson the Greyson email domain, you will not be able to access the domain. Therefore, attorneys who need to access the Greyson email domain will need to send an email requesting access pursuant to the above protocol.

**III.    Greyson Access to Luna**

Celentino contended that Luna accounts were not segregated, such that anyone who had access Luna could access any information on Luna. He used that purported fact to justify why Greyson would not be allowed to access Luna such time as the accounts/files contained therein were segregated. Therefore, if you need to access Luna, you will need to follow the above protocol above.

**IV.    No Payment of Greyson Invoices**

Celentino made it clear that there would be no payment of Greyson invoices by the Estate. If the invoices were pre-petition you may be able to file a proof of claim. If the invoices were post-petition, you may have an administration claim. However, be advised that it will be very tough to get any invoices approved by Clarkson because he essentially views Greyson as engaging in illegal activity. Therefore, we should probably discuss

EXHIBIT 4
Page 41



8:25    .ıl LTE 35

**IV.** No Payment of Greyson Invoices

Celentino made it clear that there would be no payment of Greyson invoices by the Estate.  If the invoices were pre-petition you may be able to file a proof of claim.  If the invoices were post-petition, you may have an administration claim.  However, be advised that it will be very tough to get any invoices approved by Clarkson because he essentially views Greyson as engaging in illegal activity.  Therefore, we should probably discuss any thoughts you have regarding getting paid from the Estate by filing either a Proof of Claim or an Administration claim.

Please let me know if you have any questions,

Doug

**From:** Celentino, Christopher <Christopher.Celentino@DINSMORE.COM>
**Sent:** Tuesday, June 13, 2023 2:43 PM
**To:** Douglas Plazak <dplazak@rhlaw.com>
**Cc:** Alex Rubin <alex.rubin@morningfinancial.com>; Celentino, Christopher <Christopher.Celentino@DINSMORE.COM>; Ty Carss <ty.carss@phoenixlaw.co>
**Subject:** Emails

EXHIBIT 4
Page 42

# EXHIBIT 5

Page 43



**Re: Protocol G0990-001**

Go tell Celentino to hire an actual fucking IT person instead of listening to Alex Rubin (our competitor) re CRMS like Luna. For example, LPG used Debt Pay Pro as their CRM. If Greyson opened an account with Debt Pay Pro, that doesn't mean we can access LPG's Debt Pay Pro account. Consumer Legal Group used Debt Pay Pro instead of Luna. They cannot access all businesses who used Debt Pay Pro as their CRM.

Pre or Post petition?! Greyson wasn't even official until 03/12 based off our Articles of Incorporation that we had to refile! The original AOI that Eng and his people filed for Greyson states that Greyson was established 03/09/2023! According to the paper trail, LPG filed for BK on 03/20/2023!! Eng fronted the money for it as an investor. We cannot confirm for sure where the money came from. We were told by Eng at the time that he's using his own personal money!

Greyson attorney network belongs to Jayde and I alone. They were W2 attorneys for LPG until February 2023. They never belong to anything Ty Carss fucking did. He's a liar and his declaration is him fucking guessing and trying to fill in the blank for shit he doesn't know. All attorneys can and will attest that they were never 1099s for Gallant/ Vallant or whatever those law firms were. I don't

EXHIBIT 5
Page 44



Greyson attorney network belongs to Jayde and I alone. They were W2 attorneys for LPG until February 2023. They never belong to anything Ty Carss fucking did. He's a liar and his declaration is him fucking guessing and trying to fill in the blank for shit he doesn't know. All attorneys can and will attest that they were never 1099s for Gallant/ Vallant or whatever those law firms were. I don't even know how to spell any of those names!!

Celentino is claiming because I used my personal card to pay for the Microsoft account that I used LPG's money to do so it belongs to LPG! How?! I haven't received my final check from LPG! the last pay I received from LPG was 03/13/2023 and that paycheck was two weeks late!! I've only received pay from Greyson twice! Once from Eng's Greyson (04/17/2023) and once from Scott's Greyson (05/16/2023)!!

MAKE IT MAKE SENSE.

On Jun 13, 2023, at 10:58 PM, Douglas Plazak <dplazak@rhlaw.com> wrote:

Han/Scott,

I had a lengthy telephone call with Celentino today. Please let this email summarize the topics.

1.   Greyson Attorneys Working On LPG/

EXHIBIT 5
Page 45

**EXHIBIT 6**

3/28/24, 5:40 PM

The Clarke Law Firm Mail - Georgia Attorney Formerly with Greyson



# Georgia Attorney Formerly with Greyson

shadae clarke <shadae@theclarkefirm.com>

Ty Carss <ty.carss@phoenixlaw.co>
To: shadae clarke <shadae@theclarkefirm.com>
Cc: "Celentino, Christopher" <Christopher.Celentino@dinsmore.com>, Gary DePew <gary.depew@resolution-processing.com>, "Ghio, Christopher"
<christopher.ghio@dinsmore.com>, Phoenix Paralegal <paralegal@phoenixlaw.co>

Mon, Jun 19, 2023 at 6:38 PM

Shadae,

Thank you so much!  This will be a huge help.

I definitely want to move forward, and have a mutually beneficial relationship .... at the moment, everything has to be reviewed and approved
by the Trustee's Team.  That is why there is a small delay.  They are working on a comprehensive plan for moving forward with Local Counsel.

Best,

ty......

On Mon, Jun 19, 2023 at 3:33 PM shadae clarke <shadae@theclarkefirm.com> wrote:
Ty,
Thanks for reaching out. I can have this matter settled fairly quickly with at the attorney of record, Shenika Collier. I will reach out to her now. Also, please advise
the status of the fee agreement I sent over on Friday for signature.

On Mon, Jun 19, 2023 at 6:27 PM Ty Carss <ty.carss@phoenixlaw.co> wrote:
Shadae,

I hope this email finds you well.  I have a GA matter that has escalated and needs attention.  I was hoping the Trustee's Team would have
been able to expound on the plan they are working on, but until then I am asking for your assistance in this matter.

Citibank vs. David Webb.
Client ID: 558176614
Date of Birth: 03/13/1948
Social Security Number: XXX-XX-8343
Primary Phone: (770) 656-2392
Secondary Phone: (770) 656-2392
Email: davidwebb2004@comcast.net
Primary Address
201 Webb drive ,
Norcross, GA 30071

It is my understanding that this client has filed a lawsuit against LPG and an Affiliate because representation has not been assigned.

https://mail.google.com/mail/u/0/?ik=83d766a95&view=pt&search=all&permmsgid=msg-f:1769172436447539115&simpl=msg-f:1769172436447539115

1/8

EXHIBIT 6
Page 47

The attached document is the only document that we have uploaded to our system.

Thanks,

Ty...

On Fri, Jun 16, 2023 at 3:45 PM shadae clarke <shadae@theclarkefirm.com> wrote:

Ty,
See my fee agreement attached.

On Fri, Jun 16, 2023 at 4:46 PM Celentino, Christopher <Christopher.Celentino@dinsmore.com> wrote:

Ty

**Dinsmore**

**Christopher Celentino**
Partner
Dinsmore & Shohl LLP • Legal Counsel
655 West Broadway
Suite 800
San Diego, CA 92101
**C (619) 218-3229 • F** (619) 400-0501 **O** (619) 400-0519
**E** christopher.celentino@dinsmore.com • dinsmore.com

**From:** shadae clarke <shadae@theclarkefirm.com>
**Sent:** Friday, June 16, 2023 8:04 AM
**To:** Celentino, Christopher <Christopher.Celentino@DINSMORE.COM>
**Cc:** Ty Carss <ty.carss@phoenixlaw.co>; Phoenix Paralegal <paralegal@phoenixlaw.co>; Ghio, Christopher <Christopher.Ghio@Dinsmore.com>
**Subject:** Re: Georgia Attorney Formerly with Greyson

Got it! For the cases I have not settled I will file substitutions under my firm. Also, as far as compensation goes. Who should I send my fee agreement to for signature?

EXHIBIT 6
Page 48

3/28/24, 5:40 PM

The Clarke Law Firm Mail - Georgia Attorney Formerly with Greyson

https://mail.google.com/mail/u/0/?ik=83676fa6d95&view=pt&search=all&permmsgid=msg-f:1769172436447539115&dsqt=1&simpl=msg-f:1769172436447539115

On Fri, Jun 16, 2023 at 1:48 AM Celentino, Christopher <Christopher.Celentino@dinsmore.com> wrote:

## In my absence, please reach out to Chris Ghio next week.

**Dinsmore**

**Christopher Celentino**
Partner
Dinsmore & Shohl LLP  •  Legal Counsel
655 West Broadway
Suite 800
San Diego, CA 92101
**C (619) 218-3229  •  F** (619) 400-0501 **O** (619) 400-0519
**E** christopher.celentino@dinsmore.com  •  dinsmore.com

**From:** Ty Carss <ty.carss@phoenixlaw.co>
**Sent:** Thursday, June 15, 2023 9:14 AM
**To:** shadae clarke <shadae@theclarkefirm.com>
**Cc:** Phoenix Paralegal <paralegal@phoenixlaw.co>; Celentino, Christopher <Christopher.Celentino@DINSMORE.COM>; Ghio, Christopher <Christopher.Ghio@Dinsmore.com>
**Subject:** Re: Georgia Attorney Formerly with Greyson

Good morning Shadae,

Thank you for reaching out to me.  We very much would like to establish a relationship and move forward with you as well.

I have CC'd the lead attorneys (Chris Celention & Chris Ghio) to this email as well as my paralegal, Sally.

EXHIBIT 6
Page 49

The Clarke Law Firm Mail - Georgia Attorney Formerly with Greyson

The Trustee's Team wants to make sure that the clients are continuing to get the representation that they need; and we are working on a comprehensive plan for moving forward. I believe the Trustee's Team is working on an email that will be sent out to all of the Local Counsel.

Best regards,

The Trustee's IT wiz can get you access to the files you need from Greyson; and we can get you signed up for our LUNA CRM database as well.

Ty...

On Thu, Jun 15, 2023 at 8:24 AM shadae clarke <shadae@theclarkefirm.com> wrote:

Good morning Ty,

I am reaching out from my firm email address since Greyson 's email is down. I have a list of Phoenix clients I am currently handling. See below. I was previously working with Sally to add notes/updates to the files but I do not have her email address. I am interested in continuing to take on Georgia case assignments on a 1099 basis under my firm. Please let me know how to set this up with you and the Trustee. Also, without having access to the Greyson email it's pretty hard to finish out the cases. Any advice on how to handle? Thank you!

**Phoenix Clients Currently Handling**

1) Kevin Parham- Case settled. Pending CJ from opposing counsel

2) Jonathan Watson- In settlement negotiations

3) Joan Anderson- Waiting on the client to accept the settlement offer. She told me that Phoenix would be reaching out to me to tell me how to handle her settlement. She said Phoenix was going to reimburse her for payments made under LPG and that those funds should be used to pay her settlement. Please advise.

4) April L. White- Case settled. Pending CJ from opposing counsel

5) Deborah Layssard- Answer due On 6/23. Need to file.

6) Deloris Duff- client unresponsive. Need copy of summons

7) Demarco Willis- client has not accepted the settlement offer.

8) Dorothy Manuel- Case settled. Pending CJ from opposing counsel

EXHIBIT 6
Page 50

3/28/24, 5:40 PM



Shadae A. Clarke

**Attorney At Law**

Direct: (470) 975-3812

Visit our website at:
www.theclarkefirm.com

*Wm. Taylor "Ty" Carss, Esq.*
**Managing Attorney | Phoenix Law PC**
ty.carss@phoenixlaw.co | Ph. **424.622.4044**

PHOENIX
L A W

https://mail.google.com/mail/u/0/?ik=c836f766a95&view=pt&search=all&permmsgid=msg-f:1769172436447539115&dsqt=1&simpl=msg-f:1769172436447539115

The Clarke Law Firm Mail - Georgia Attorney Formerly with Greyson

EXHIBIT 6
Page 51

3/28/24, 5:40 PM

The Clarke Law Firm Mail - Georgia Attorney Formerly with Greyson

NOTICE: This email message (including any attachments) may contain confidential and/or legally privileged material. Unless you are the intended recipient or are authorized to receive information for the intended recipient, you may not use, copy, or disclose any part of this message. If you have received this message in error, please notify us and delete all copies of it. Thank you.

NOTICE: This electronic mail transmission from the law firm of Dinsmore & Shohl may constitute an attorney-client communication that is privileged at law. It is not intended for transmission to, or receipt by, any unauthorized persons. If you have received this electronic mail transmission in error, please delete it from your system without copying it, and notify the sender by reply e-mail, so that our address record can be corrected.

Shadae A. Clarke
**Attorney At Law**

Direct: (470) 975-3812

THE CLARKE LAW
FIRM

Visit our website at:
www.theclarkefirm.com

https://mail.google.com/mail/u/0/?ik=c836766a95&view=pt&search=all&permmsgid=msg-f:1769172436447539115&dsqt=1&simpl=msg-f:1769172436447539115

EXHIBIT 6
Page 52

3/28/24, 5:40 PM

The Clarke Law Firm Mail - Georgia Attorney Formerly with Greyson

Shadae A. Clarke
**Attorney At Law**

Direct: (470) 975-3812

Visit our website at:
www.theclarkefirm.com



THE CLARKE LAW
FIRM

*Wm. Taylor "Ty" Carss, Esq.*

**Managing Attorney | Phoenix Law PC**

ty.carss@phoenixlaw.co | **Ph. 424.622.4044**



PHOENIX
L A W

Shadae A. Clarke
**Attorney At Law**

Direct: (470) 975-3812

NOTICE: This email message (including any attachments) may contain confidential and/or legally privileged material. Unless you are the intended recipient or are authorized to receive information for the intended recipient, you may not use, copy, or disclose any part of this message. If you have received this message in error, please notify us and delete all copies of it. Thank you.

Shadae A. Clarke
**Attorney At Law**

Direct: (470) 975-3812

https://mail.google.com/mail/u/0/?ik=c836766a8b&view=pt&search=all&permmsgid=msg-f:1769172436447539115&dsqt=1&simpl=msg-f:1769172436447539115

7/8

EXHIBIT 6
Page 53

Visit our website at:
www.theclarkefirm.com

THE CLARKE LAW
FIRM

*Wm. Taylor "Ty" Carss, Esq.*

**Managing Attorney | Phoenix Law PC**

ty.carss@phoenixlaw.co | **Ph. 424.622.4044**

PHOENIX
LAW

NOTICE: This email message (including any attachments) may contain confidential and/or legally privileged material. Unless you are the intended recipient or are authorized to receive information for the intended recipient, you may not use, copy, or disclose any part of this message. If you have received this message in error, please notify us and delete all copies of it. Thank you.

EXHIBIT 6
Page 54

**EXHIBIT 7**



**THE CLARKE LAW
FIRM**

---

## BASIC FEE/REPRESENTATION AGREEMENT

**THIS AGREEMENT** made on this **16th day of June 2023**, between **Phoenix Law P.C** Address: 6080 Center Drive 6th Floor Los Angeles, CA 90045 Phone: (424) 622- 4044 and **The Clarke Law Firm, LLC, Attorney Shadae A. Clarke**, Address: 1659 Hwy 20 W Unit 132 McDonough, GA 30253 Phone: (470) 975-3812.

Phoenix Law P.C understands and agrees that Attorney Clarke will be listed as counsel on all case assignments accepted from Phoenix Law P.C., including prior cases accepted by way of Greyson Law Center P.C., until this agreement is terminated in writing.

Phoenix Law P.C and Attorney Clarke understand and agree that Attorney Clarke will continue representation until each case is resolved through litigation (not including appeal) or settlement.

Phoenix Law P.C and Attorney Clarke understand and agree that such representation is at the cost of **$2,000 per case assignment received on or after June 16, 2023. Payment is due when the case assignment is accepted by Attorney Clarke in writing.**

Phoenix Law P.C case assignments accepted by Attorney Clarke, by way of Greyson Law Center P.C., will be billed at a reduced rate of $**1,500 per case. Payment for these cases will be due upon receipt of The Clarke Law Firm's invoice.**

**Representation fees are inclusive of all fees incidental to litigation.**

Payments will be made via ACH or wire to The Clarke Law Firm, LLC using the account information provided below.

**Banking Institution: Wells Fargo
Account Name: The Clarke Law Firm, LLC
Account# XXXXXXXXXX
ACH Routing# XXXXXXXXX
Domestic Wire Routing# XXXXXXXXX**

EXHIBIT 7
Page 56



Phoenix Law P.C understands and agrees that Attorney Clarke makes no guarantee about the resolution of cases assigned and makes no warranties about the outcome.

If any matters arise between Phoenix Law P.C and Attorney Clarke, either party agrees to arbitration at the expense of the filing party.

**AGREED TO BY:**

_____
**PHOENIX LAW P.C.**
**BY: TY CARSS, ESQ., MANAGING ATTORNEY**

*Shadae A. Clarke*
**THE CLARKE LAW FIRM, LLC**
**BY: SHADAE A. CLARKE, ESQ., SOLE MEMBER**

EXHIBIT 7
Page 57

# EXHIBIT 8

## Form W-2 Wage and Tax Statement 2023

Copy C, for employee's records

| | |
|---|---|
| c Employer's name, address, and ZIP code | d Control number 0942-16092497  0000000109 - ASSOCI  Void |
| GREYSON LAW CENTER PC  440 N BARRANCA AVE SUITE 1331  COVINA CA 91723 | Department of the Treasury - Internal Revenue Service  OMB No. 1545-0008 |

| b Employer identification number (EIN) | a Employee's social security number | 1 Wages, tips, other compensation 17176.04 | 2 Federal income tax withheld 1734.92 |
|---|---|---|---|
| 92-2834845 | | | |
| 13 Statutory employee | Retirement plan | Third-party sick pay | 3 Social security wages 17176.04 | 4 Social security tax withheld 1068.84 |

| e Employee's name, address, and ZIP code | 12 See instructions for box 12 | 14 Other | 5 Medicare wages and tips 17176.04 | 6 Medicare tax withheld 249.97 |
|---|---|---|---|---|
| SHADAE CLARKE  292 PAULOWNIA CIR  MCDONOUGH GA 30253 | | | 7 Social Security Tips | 8 Allocated Tips |
| | | | 10 Dependent care benefits | 11 Nonqualified plans |

| 15 State | Employer's state ID number | 16 State wages, tips, etc. | 17 State income tax | 18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name |
|---|---|---|---|---|---|---|
| GA | 3552685-XD | 17176.04 | 839.98 | | | |

This information is being furnished to the Internal Revenue Service. If you are required to file a tax return, a negligence penalty or other sanction may be imposed on you if this income is taxable and you fail to report it.

## Form W-2 Wage and Tax Statement 2023

Copy B, to be filed with employee's FEDERAL tax return

| | |
|---|---|
| c Employer's name, address, and ZIP code | d Control number 0942-16092497  0000000109 - ASSOCI  Void |
| GREYSON LAW CENTER PC  440 N BARRANCA AVE SUITE 1331  COVINA CA 91723 | Department of the Treasury - Internal Revenue Service  OMB No. 1545-0008 |

| b Employer identification number (EIN) | a Employee's social security number | 1 Wages, tips, other compensation 17176.04 | 2 Federal income tax withheld 1734.92 |
|---|---|---|---|
| 92-2834845 | | | |
| 13 Statutory employee | Retirement plan | Third-party sick pay | 3 Social security wages 17176.04 | 4 Social security tax withheld 1068.84 |

| e Employee's name, address, and ZIP code | 12 See instructions for box 12 | 14 Other | 5 Medicare wages and tips 17176.04 | 6 Medicare tax withheld 249.97 |
|---|---|---|---|---|
| SHADAE CLARKE  292 PAULOWNIA CIR  MCDONOUGH GA 30253 | | | 7 Social Security Tips | 8 Allocated Tips |
| | | | 10 Dependent care benefits | 11 Nonqualified plans |

| 15 State | Employer's state ID number | 16 State wages, tips, etc. | 17 State income tax | 18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name |
|---|---|---|---|---|---|---|
| GA | 3552685-XD | 17176.04 | 839.98 | | | |

This information is being furnished to the Internal Revenue Service. If you are required to file a tax return, a negligence penalty or other sanction may be imposed on you if this income is taxable and you fail to report it.

## Form W-2 Wage and Tax Statement 2023

Copy 2, to be filed with employee's tax return for GA

| | |
|---|---|
| c Employer's name, address, and ZIP code | d Control number 0942-16092497  0000000109 - ASSOCI  Void |
| GREYSON LAW CENTER PC  440 N BARRANCA AVE SUITE 1331  COVINA CA 91723 | Department of the Treasury - Internal Revenue Service  OMB No. 1545-0008 |

| b Employer identification number (EIN) | a Employee's social security number | 1 Wages, tips, other compensation 17176.04 | 2 Federal income tax withheld 1734.92 |
|---|---|---|---|
| 92-2834845 | | | |
| 13 Statutory employee | Retirement plan | Third-party sick pay | 3 Social security wages 17176.04 | 4 Social security tax withheld 1068.84 |

| e Employee's name, address, and ZIP code | 12 See instructions for box 12 | 14 Other | 5 Medicare wages and tips 17176.04 | 6 Medicare tax withheld 249.97 |
|---|---|---|---|---|
| SHADAE CLARKE  292 PAULOWNIA CIR  MCDONOUGH GA 30253 | | | 7 Social Security Tips | 8 Allocated Tips |
| | | | 10 Dependent care benefits | 11 Nonqualified plans |

| 15 State | Employer's state ID number | 16 State wages, tips, etc. | 17 State income tax | 18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name |
|---|---|---|---|---|---|---|
| GA | 3552685-XD | 17176.04 | 839.98 | | | |

This information is being furnished to the Internal Revenue Service. If you are required to file a tax return, a negligence penalty or other sanction may be imposed on you if this income is taxable and you fail to report it.

## Form W-2 Wage and Tax Statement 2023

| | |
|---|---|
| c Employer's name, address, and ZIP code | d Control number  Void X |
| | Department of the Treasury - Internal Revenue Service  OMB No. 1545-0008 |

| b Employer identification number (EIN) | a Employee's social security number | 1 Wages, tips, other compensation | 2 Federal income tax withheld |
|---|---|---|---|
| | | 3 Social security wages | 4 Social security tax withheld |
| 13 Statutory employee | Retirement plan | Third-party sick pay | | |

| e Employee's name, address, and ZIP code | 12 See instructions for box 12 | 14 Other | 5 Medicare wages and tips | 6 Medicare tax withheld |
|---|---|---|---|---|
| | | | 7 Social Security Tips | 8 Allocated Tips |
| | | | 10 Dependent care benefits | 11 Nonqualified plans |

| 15 State | Employer's state ID number | 16 State wages, tips, etc. | 17 State income tax | 18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name |
|---|---|---|---|---|---|---|
| | | | | | | |

This information is being furnished to the Internal Revenue Service. If you are required to file a tax return, a negligence penalty or other sanction may be imposed on you if this income is taxable and you fail to report it.

EXHIBIT 8
Page 59

## Notice to Employee

**Do you have to file?** Refer to the Form 1040 instructions to determine if you are required to file a tax return. Even if you don't have to file a tax return, you may be eligible for a refund if box 2 shows an amount or if you are eligible for any credit.

**Earned income credit (EIC).** You may be able to take the EIC for 2023 if your adjusted gross income (AGI) is less than a certain amount. The amount of the credit is based on income and family size. Workers without children could qualify for a smaller credit. You and any qualifying children must have valid social security numbers (SSNs). You can't take the EIC if your investment income is more than the specified amount for 2023 or if income is earned for services provided while you were an inmate at a penal institution. For 2023 income limits and more information, visit *www.irs.gov/EITC*. See also Pub. 596. **Any EIC that is more than your tax liability is refunded to you, but only if you file a tax return.**

**Employee's social security number (SSN).** For your protection, this form may show only the last four digits of your SSN. However, your employer has reported your complete SSN to the IRS and the Social Security Administration (SSA).

**Clergy and religious workers.** If you aren't subject to social security and Medicare taxes, see Pub. 517.

**Corrections.** If your name, SSN, or address is incorrect, correct Copies B, C, and 2 and ask your employer to correct your employment record. Be sure to ask the employer to file Form W-2c, Corrected Wage and Tax Statement, with the SSA to correct any name, SSN, or money amount error reported to the SSA on Form W-2. Be sure to get your copies of Form W-2c from your employer for all corrections made so you may file them with your tax return. If your name and SSN are correct but aren't the same as shown on your social security card, you should ask for a new card that displays your correct name at any SSA office or by calling 800-772-1213. You may also visit the SSA website at *www.SSA.gov*.

**Cost of employer-sponsored health coverage (if such cost is provided by the employer).** The reporting in box 12, using code DD, of the cost of employer-sponsored health coverage is for your information only. **The amount reported with code DD is not taxable.**

**Credit for excess taxes.** If you had more than one employer in 2023 and more than $9,932.40 in social security and/or Tier 1 railroad retirement (RRTA) taxes were withheld, you may be able to claim a credit for the excess against your federal income tax. See the Form 1040 instructions. If you had more than one railroad employer and more than $5,821.20 in Tier 2 RRTA tax was withheld, you may be able to claim a refund on Form 843. See the Instructions for Form 843.

---

## Instructions for Employee

**Box 1.** Enter this amount on the wages line of your tax return.

**Box 2.** Enter this amount on the federal income tax withheld line of your tax return.

**Box 5.** You may be required to report this amount on Form 8959. Additional Medicare Tax. See the Form 1040 instructions to determine if you are required to complete Form 8959.

**Box 6.** This amount includes the 1.45% Medicare Tax withheld on all Medicare wages and tips shown in box 5, as well as the 0.9% Additional Medicare Tax on any of those Medicare wages and tips above $200,000.

**Box 8.** This amount is **not** included in box 1, 3, 5, or 7. For information on how to report tips on your tax return, see the Form 1040 instructions.

You must file Form 4137 with your income tax return to report at least the allocated tip amount unless you can prove with adequate records that you received a smaller amount. If you have records that show the actual amount of tips you received, report that amount even if it is more or less than the allocated tips. Use Form 4137 to figure the social security and Medicare tax owed on tips you didn't report to your employer. Enter this amount on the wages line of your tax return. By filing Form 4137, your social security tips will be credited to your social security record (used to figure your benefits).

**Box 10.** This amount includes the total dependent care benefits that your employer paid to you or incurred on your behalf (including amounts from a section 125 (cafeteria) plan). Any amount over your employer's plan limit is also included in box 1. See Form 2441.

**Box 11.** This amount is (a) reported in box 1 if it is a distribution made to you from a nonqualified deferred compensation or nongovernmental section 457(b) plan, or (b) included in box 3 and/or box 5 if it is a prior year deferral under a nonqualified or section 457(b) plan that became taxable for social security and Medicare taxes this year because there is no longer a substantial risk of forfeiture of your right to the deferred amount. This box shouldn't be used if you had a deferral and a distribution in the same calendar year. If you made a deferral and received a distribution in the same calendar year, and you are or will be age 62 by the end of the calendar year, your employer should file Form SSA-131, Employer Report of Special Wage Payments, with the Social Security Administration and give you a copy.

**Box 12.** The following list explains the codes shown in box 12. You may need this information to complete your tax return. Elective deferrals (codes D, E, F, and S) and designated Roth contributions (codes AA, BB, and EE) under all plans are generally limited to a total of $22,500 ($15,500 if you only have SIMPLE plans; $25,500 for section 403(b) plans if you qualify for the 15-year rule explained in Pub. 571). Deferrals under code G are limited to $22,500. Deferrals under code H are limited to $7,000.

However, if you were at least age 50 in 2023, your employer may have allowed an additional deferral of up to $7,500 ($3,500 for section 401(k)(11) and 408(p) SIMPLE plans). This additional deferral amount is not subject to the overall limit on elective deferrals. For code G, the limit on elective deferrals may be higher for the last 3 years before you reach retirement age. Contact your plan administrator for more information. Amounts in excess of the overall elective deferral limit must be included in income. See the Form 1040 instructions.

**Note:** If a year follows code D through H, S, Y, AA, BB, or EE, you made a make-up pension contribution for a prior year(s) when you were in military service. To figure whether you made excess deferrals, consider these amounts for the year shown, not the current year. If no year is shown, the contributions are for the current year.

**A**—Uncollected social security or RRTA tax on tips. Include this tax on Form 1040 or 1040-SR. See the Form 1040 instructions.

**B**—Uncollected Medicare tax on tips. Include this tax on Form 1040 or 1040-SR. See the Form 1040 instructions.

**C**—Taxable cost of group-term life insurance over $50,000 (included in boxes 1, 3 (up to the social security wage base), and 5)

**D**—Elective deferrals to a section 401(k) cash or deferred arrangement. Also includes deferrals under a SIMPLE retirement account that is part of a section 401(k) arrangement.

**E**—Elective deferrals under a section 403(b) salary reduction agreement

**F**—Elective deferrals under a section 408(k)(6) salary reduction SEP

**G**—Elective deferrals and employer contributions (including nonelective deferrals) to a section 457(b) deferred compensation plan

**H**—Elective deferrals to a section 501(c)(18)(D) tax-exempt organization plan. See the Form 1040 instructions for how to deduct.

**J**—Nontaxable sick pay (information only, not included in box 1, 3, or 5)

**K**—20% excise tax on excess golden parachute payments. See the Form 1040 instructions.

**L**—Substantiated employee business expense reimbursements (nontaxable)

**M**—Uncollected social security or RRTA tax on taxable cost of group-term life insurance over $50,000 (former employees only). See the Form 1040 instructions.

**N**—Uncollected Medicare tax on taxable cost of group-term life insurance over $50,000 (former employees only). See the Form 1040 instructions.

**P**—Excludable moving expense reimbursements paid directly to a member of the U.S. Armed Forces (not included in box 1, 3, or 5)

**Q**—Nontaxable combat pay. See the Form 1040 instructions for details on reporting this amount.

**R**—Employer contributions to your Archer MSA. Report on Form 8853.

**S**—Employee salary reduction contributions under a section 408(p) SIMPLE plan (not included in box 1)

**T**—Adoption benefits (not included in box 1). Complete Form 8839 to figure any taxable and nontaxable amounts.

**V**—Income from exercise of nonstatutory stock option(s) (included in boxes 1, 3 (up to the social security wage base), and 5). See Pub. 525 for reporting requirements.

**W**—Employer contributions (including amounts the employee elected to contribute using a section 125 (cafeteria) plan) to your health savings account. Report on Form 8889.

**Y**—Deferrals under a section 409A nonqualified deferred compensation plan

**Z**—Income under a nonqualified deferred compensation plan that fails to satisfy section 409A. This amount is also included in box 1. It is subject to an additional 20% tax plus interest. See the Form 1040 instructions.

**AA**—Designated Roth contributions under a section 401(k) plan

**BB**—Designated Roth contributions under a section 403(b) plan

**DD**—Cost of employer-sponsored health coverage. **The amount reported with code DD is not taxable.**

**EE**—Designated Roth contributions under a governmental section 457(b) plan. This amount does not apply to contributions under a tax-exempt organization section 457(b) plan.

**FF**—Permitted benefits under a qualified small employer health reimbursement arrangement

**GG**—Income from qualified equity grants under section 83(i)

**HH**—Aggregate deferrals under section 83(i) elections as of the close of the calendar year

**Box 13.** If the "Retirement plan" box is checked, special limits may apply to the amount of traditional IRA contributions you may deduct. See Pub. 590-A.

**Box 14.** Employers may use this box to report information such as state disability insurance taxes withheld, union dues, uniform payments, health insurance premiums deducted, nontaxable income, educational assistance payments, or a member of the clergy's parsonage allowance and utilities. Railroad employers use this box to report railroad retirement (RRTA) compensation, Tier 1 tax, Tier 2 tax, Medicare tax, and Additional Medicare Tax. Include tips reported by the employee to the employer in railroad retirement (RRTA) compensation.

**Note:** Keep Copy C of Form W-2 for at least 3 years after the due date for filing your income tax return. However, to help **protect your social security benefits,** keep Copy C until you begin receiving social security benefits, just in case there is a question about your work record and/or earnings in a particular year.

EXHIBIT 8
Page 60

# EXHIBIT 9

## EMPLOYMENT CONTRACT

**THIS EMPLOYMENT CONTRACT (this "Agreement") dated this 20th day of September, 2021** between The Litigation Practice Group PC("LPG" or "Employer")- AND Jane Dearwester(the "Employee")

**WHEREAS,** The Employer is of the opinion that the Employee has the necessary qualifications, experience and abilities to assist and benefit the Employer in its business; and,

**WHEREAS,** The Employer desires to employ the Employee and the Employee has agreed to accept and enter such employment upon the terms and conditions set out in this Agreement; and,

**WHEREAS,** Employer and Employee agree that to the extent any term provided herein is inconsistentwith the rules promulgated by any Bar to which Employee is admitted, including but notlimited to the applicable Rule of Professional Conduct of such Bar, such rules shall govern and any contrary term herein shall be null and void. All remaining terms of this Agreement shall remain in full force and effect notwithstanding such revision to comply with State Bar rules applicable to Employee.

**NOW THEREFORE,** in consideration of the matters described above and of the mutual benefits and obligations set forth in this Agreement, the receipt and sufficiency of which consideration is hereby acknowledged, the parties to this Agreement agree as follows:

### Commencement Date and Term

1.       The Employee will commence employment with the Employer on the 11th day of October, 2021 (the "Commencement Date"). The Employee agrees to be employed by Employer pursuant to the terms and conditions set out in thisAgreement.

2.       Subject to termination as provided in this Agreement, the Employee's position has an indefinite duration, but will be reassessed for the purpose of compensation determinations on or within 12 months of the commencement of Employee'semployment. The parties acknowledge that various provisions of this Agreement survivepast termination of employment.

### Job Title and Description

3.       Employee shall be employed in the position of Attorney.  The Employee's job duties shall be as follows:  Employee shall manage all matters filed in the States of North Carolina, and once admitted, Tennessee and Kentucky, (the "States of Admission") against or on behalf of clients of LPG, and to counsel clients who reside in the these states (upon admission) with regard to state law.  Employee is not required to bill for or otherwise account for time. Employee is expected to act in good faith in connection with the completion of such tasks, and shall act in accordance with the Rules of Professional Conduct applicable to the practice of law at all times. There are no expectations regarding weekly or monthly billing, nor the location at which hours are worked.

1

EXHIBIT 9
Page 62

4.     The Employee agrees to be subject to the general supervision of and act pursuant to the orders, advice and direction of the Employer. The Employee will perform such duties as requested by the Employer that are reasonable and that are customarily performed by a person holding the position of Attorney. If Employee does not feel comfortablecompleting a task due to the Attorney's interpretation of the Rules of Professional Conduct or other ethical requirements placed on Attorney by the States of Admission, Employee shall so indicate in writing when declining to complete such activity. No adverse consequence shall befall Employee for refusing to complete a task on this basis.

5.     Employee warrants that Employee is licensed to practice in law in the State of North Carolina and agrees to pursue, in good faith, a license to practice law in Tennessee and Kentucky. There is no deadline by which Employee must obtain a license to practice in any particular jurisdiction.

### Employee Compensation

6.     In consideration for the services rendered hereunder, Employee shall be paid an annual base salary of One Hundred Eighty Thousand Dollars, less applicable tax and other authorized payroll deductions. The base salary will be paid on a biweekly basis, in accordance with Employer's standard payroll practices.

7.     Employer shall pay an admission bonus to Employee within thirty (30) days of Employee's admission to a new state bar. The admission bonus shall be Ten Thousand Dollars, less applicable taxes and withholdings, for the admission to Tennessee and/or Kentucky respectively. The admission bonus shall be Three Thousand Dollars ($3,000), less applicable taxes and withholdings, for admission to any additional state bar beyond Tennessee and Kentucky.

8.     Employee may originate her own cases and will receive an additional origination bonus equal to 50% of the revenue generated from such cases. For purposes of this provision, revenue shall mean all money received by Employer as a result of services provided on the case without the deduction of any fees or costs of any kind. To be eligible for the origination bonus, the Employee should indicate in writing to the Employer that Employee is eligible for the origination bonus on a particular case. The origination bonus shall be paid in quarterly installments, less applicable taxes and withholdings, within thirty (30) days of the close of the calendar quarter in which it is earned.

### Place of Work and Tools

9.     Employer shall provide Employee with office space, conference rooms sufficient to meet with clients, and all tools necessary to perform Employee's work. Employee may choose from time to time to work from home in Employee's discretion, so long as Employee is in the office on dates and times requested by LPG, which requests shall be made reasonably in advance of such meeting so as to allow Employee to adequately plan and prepare for such meeting. Employee shall be permitted to work from home at all other times, without limitation.

10.     Employer shall provide Employee with a laptop computer at no cost for use during

2

EXHIBIT 9
Page 63

the term of this Agreement. Employee's use of the Employer-provided laptop is unrestricted during the term of this Agreement, and Employer shall respect Employee's privacy in the use of the laptop. Employee shall return the laptop to Employer at the end of Employee's employment and is expected to delete and any all private information from the laptop prior to returning the same to Employer. Employee agrees not to delete information belonging to Employer prior to returning the laptop.

11.     Employer shall be responsible for all marketing costs, including but not limited to Employee's business cards, the use of online advertising, the maintenance of a website,and any other print or radio advertising designed to generate cases for Employer.

12.     Employer shall pay any and all dues/fees for any State Bar to which Employee isadmitted for 2021 and each calendar year thereafter.    LPG will also pay all fees and costs associated with the process of being admitted to any State or Federal Bar, including, but not limited to the Kentucky and Tennessee bars, including costs associated with the application and admission, including any course necessary to take any exam required for admission.

13.     The Employer will reimburse the Employee for all expenses associated with performing the services hereunder, including but not limited to, any travel and related expenses incurred by the Employee in connection with the business of the Employer. Employee shall submit such requests in accordance with the Employer's polices to admin@litigationpracticegroup.com. Reimbursement shall be made with thirty (30) days of Employee's submission of the request.

**Benefits**

14.     Employer shall provide malpractice insurance for Employee to cover all legal services provided by Employee during the term of this Agreement. Employee shall not be responsible for any premium or deductible due under this policy regardless of the event or circumstance giving rise to the premium or deductible.

15.     Employer shall also provide medical, dental and vision insurance at no cost to Employee. Employee shall be eligible for other insurance benefits in accordance with the terms of the applicable plans. Employee shall be eligible for all insurance benefits in accordance with the terms of the applicable plans.

16.     Employee shall also be eligible to participate in the Employer's 401K program in accordance with the terms of the applicable plan.

17.     Each calendar year Employee shall have four (4) full weeks of vacation, during which time Employee shall be relieved of all duties associated with the services provided hereunder. Employee agrees to work with Employer to arrange for coverage counsel as necessary during any vacation. Employer shall be fully responsible for any costs associated with coverage counsel necessary as a result of Employee's vacation.

**Conflict of Interest**

18.     During the term of the Employee's employment with the Employer, Employee may solicit business and pursue clients for any other legal entity owned and/or operated by

3

EXHIBIT 9
Page 64

Employee. Provided, however, Employee agrees that in every representation, whether of a client on behalf of LPG or otherwise, Employee will follow all procedures required for eliminating conflicts of interests as required by LPG's malpractice insurance policy and the Professional Rules of Conduct applicable to attorneys in the States of Admission.

### Confidential Information

19.     The Employee acknowledges that, in Employee's position, and as result of the Employee's employment by the Employer, the Employee will, or may, be making use of, acquiring or adding to information which is confidential to the Employer (the "Confidential Information"). The Confidential Information includes all data and information relating to the business of the Employer, including but not limited to, proprietary and trade secret technology and accounting records to which access is obtained by theEmployee, including Work Product, Computer Software, Other Proprietary Data, Business Operations, and Marketing and Development Operations. Except to the extent otherwise governed by the Rules of Professional Conduct of the States of Admission, the Confidential Information is the exclusive property of the Employer.  All client data shall be treated in accordance with the Rules of Professional Conduct of the States of Admission.

20.     Information that would otherwise meet the definition of Confidential Information, will not be considered Confidential Information is it:

      a.   Is generally known in the industry of the Employer;

      b.  Is now or subsequently becomes generally available to the public through nowrongful act of the Employee;

      c.   Was rightfully in the possession of the Employee prior to the disclosure to theEmployee by the Employer;

      d.  Is independently created by the Employee without direct or indirect use of theConfidential Information; or

      e.   The Employee rightfully obtains from a third party who has the right to transfer or disclose it.

21.     The Confidential Information will also not include anything developed or produced by the Employee during the Employee's term of employment with the Employer, including but not limited to, any intellectual property, process, design, development, creation, research, invention, know-how, trade name, trade-mark or copyright that:

      a.  Was developed without the use of equipment, supplies, facility or ConfidentialInformation of the Employer;

      b.  Was developed entirely on the Employee's own time;

      c.  Does not result from any work performed by the Employee for the Employer;

      d.  Does not relate to any actual or reasonably anticipated business opportunity ofthe Employer; or

      e.  Relates to matters originated by Employee.

4

EXHIBIT 9
Page 65

### Duties and Obligations Concerning Confidential Information

22.    The Employee agrees that a material term of the Employee's contract with the Employer is to keep all Confidential Information confidential and protect its release from the public. The Employee agrees not to divulge, reveal, report or use, for any purpose, any of the Confidential Information which the Employee has obtained or which was disclosed to the Employee by the Employer as a result of the Employee's employment by the Employer.

23.    The Employee agrees and acknowledges that the Confidential Information is of a proprietary and confidential nature and that any disclosure of the Confidential Information to a third party in breach of this Agreement cannot be reasonably or adequately compensated for in money damages, would cause irreparable injury to Employer, would gravely affect the effective and successful conduct of the Employer's business and goodwill, and would be a material breach of this Agreement.

24.    The obligations to ensure and protect the confidentiality of the Confidential Information imposed on the Employee in this Agreement and any obligations to provide notice under this Agreement will survive the expiration or termination, as the case may be, of this Agreement and will continue for five (5) years from the date of such expiration or termination, except in the case of any Confidential Information which is a trade secret in which case those obligations will last indefinitely.

25.    The Employee may disclose any of the Confidential Information:

a.    To a third party where Employer has consented in writing to such disclosure; or

b.    To the extent required by law or by the request or requirement of any judicial, legislative, administrative or other governmental body after providing reasonable prior notice to the Employer.

26.    If the Employee loses or makes unauthorized disclosure of any of the Confidential Information, the Employee will immediately notify the Employer and take all reasonable steps necessary to retrieve the lost or improperly disclosed Confidential Information.

### Ownership and Title to Confidential Information

27.    The Employee acknowledges and agrees that all rights, title and interest in any Confidential Information will remain the exclusive property of the Employer. Accordingly, the Employee specifically agrees and acknowledges that the Employee will have no interest in the Confidential Information, including, without limitation, no interest in know-how, copyright, trade-marks or trade names, notwithstanding the fact that the Employee may have created or contributed to the creation of the Confidential Information.

28.    The Employee agrees to execute any instruments and to do all other things reasonably requested by the Employer, both during and after the Employee's employment with the Employer, in order to vest more fully in the Employer all ownership rights in those items transferred by the Employee to the Employer.

### Return of Confidential Information

5

EXHIBIT 9
Page 66

29.    The Employee agrees that, upon request of the Employer or upon termination or expiration, as the case may be, of this agreement, the Employee will turn over to the Employer all Confidential Information belonging to the Employer, including but not limited to, all documents, plans, specifications, disks or other computer media, as well asany duplicates or backups made of that Confidential Information in whatever form or media, in the possession or control of the Employee that:

a.    May contain or be derived from ideas, concepts, creations, or trade secrets andother proprietary and Confidential Information as defined in this Agreement; or

b.    Is connected with or derived from the Employee's employment with the Employer.

Provided however, nothing herein shall require the Employee to do anything with client files that is in conflict with any of the Rules of Professional Conduct in any of the States of Admission.

### Definitions

30.    For the purpose of this Agreement the following definitions will apply:

a.    'Work Product' means work product information, including but not limited to, work product resulting from or related to work or projects performed or to be performed for the Employer or for clients of the Employer, of any type or formin any stage of actual or anticipated research and development.

b.    'Computer Software' means computer software resulting from or related to work or projects performed or to be performed for the Employer or for clients of the Employer, of any type or form in any stage of actual or anticipated research and development, including but not limited to, programs and program modules, routines and subroutines, processes, algorithms, design concepts, design specifications (design notes, annotations, documentation, flowcharts, coding sheets, and the like), source code, object code and load modules, programming, program patches and system designs.

c.    'Other Proprietary Data' means information relating to the Employer's proprietary rights prior to any public disclosure of such information, including but not limited to, the nature of the proprietary rights, production data, technical and engineering data, test data and test results, the status and details of research and development of products and services, and information regarding acquiring, protecting, enforcing and licensing proprietary rights (including patents, copyrights and trade secrets).

d.    'Business Operations' means operational information, including but not limited to, internal personnel and financial information, vendor names and other vendor information (including vendor characteristics, services and agreements), purchasing and internal cost information, internal services and operational manuals, and the manner and methods of conducting the Employer's business.

e.    'Marketing and Development Operations' means marketing and development information, including but not limited to, marketing and development plans, price and cost data, price and fee amounts, pricing and billing policies, quoting procedures, marketing techniques and methods of obtaining business, forecasts and forecast assumptions and volumes, and future plans and potential strategies of the Employer which have been or are being considered.

6

EXHIBIT 9
Page 67

### Contract Binding Authority

31.    Notwithstanding any other term or condition expressed or implied in this Agreement to the contrary, the Employee will not have the authority to enter into any contracts or commitments for or on the behalf of the Employer without first obtaining the express written consent of the Employer except for engagement agreements with clients.

### Termination of Agreement and Employment

32.    During the first ninety days of employment of Employee beginning with the Commencement Date, either Party may terminate this Agreement upon written notice to the other party.

33.    Employer may terminate this Agreement without cause upon a four week written notice to the Employee.  Employee may terminate this Agreement without cause upon a two week written notice to the Employer.

34.    Employer may terminate this Agreement for Cause upon written notice to Employee if Employee loses her North Carolina Law License or is convicted of committing a felony.  Employee may terminate this Agreement for Cause upon written notice to Employer if Employer fails to provide an office or necessary tools to perform the services hereunder or fails to pay her compensation as set forth herein and upon notice to Employer, Employer fails to so provide within forty-eight (48) hours.

35.    Once notice has been given by either party for any reason, the Employee and the Employer agree to execute their duties and obligations under this Agreement diligently and in good faith through to the end of the notice period. The Employer may not make any changes to compensation or any other term or condition of this Agreement between the time termination notice is given through to the end of the notice period.  Employer shall be responsible to make all payments due to Employee in accordance with the Employer's regularly scheduled payroll schedule.

### Severability

36.    The Employer and the Employee acknowledge that this Agreement is reasonable, valid and enforceable. However, if any term, covenant, condition or provision of this Agreement is held by a court of competent jurisdiction to be invalid, void or unenforceable, it is the parties' intent that such provision be changed in scope by the court only to the extent deemed necessary by that court to render the provision reasonable and enforceable and the remainder of the provisions of this Agreement will in no way be affected, impaired or invalidated as a result.

### Notices

37.    Any notices, deliveries, requests, demands or other communications required here will be deemed to be completed when sent to the following email address:

**Employer:**

Name: The Litigation Practice Group PC

7

EXHIBIT 9
Page 68

admin@LPGLaw.com

**Employee:**

Name: Jane Dearwester

janedearwester19@gmail.com

### Modification of Agreement

38.    Any amendment or modification of this Agreement or additional obligation assumed by either party in connection with this Agreement will only be binding if evidenced in writing signed by each party.

39.    Attorney understands and agrees that LPG may utilize certain information and images of Employee on LPG's website, mobile application, and online client portal. LPG may also affix the signature of Employee with Employee's prior, written consent, for template and other legal correspondence sent to the States of North Carolina, Tennessee, and Kentucky.

### Governing Law

40.    This Agreement will be construed in accordance with and governed by the laws of the State of North Carolina.

### General Provisions

41.    Headings are inserted for the convenience of the parties only and are not to be considered when interpreting this Agreement. Words in the singular mean and include the plural and vice versa. Words in the masculine mean and include the feminine and vice versa.

42.    No failure or delay by either party to this Agreement in exercising any power, right or privilege provided in this Agreement will operate as a waiver, nor will any single or partial exercise of such rights, powers or privileges preclude any further exercise of them or the exercise of any other right, power or privilege provided in this Agreement.

43.    This Agreement will inure to the benefit of and be binding upon the respective heirs, executors, administrators, successors and assigns, as the case may be, of the Employer and the Employee.

44.    This Agreement may be executed in counterparts. Facsimile signatures are binding and are considered to be original signatures.

45.    This Agreement constitutes the entire agreement between the parties and there are no further items or provisions, either oral or written. The parties to this Agreement stipulate that neither of them has made any representations with respect to the subject matter of this Agreement except such representations as are specifically set forth in this Agreement.

8

EXHIBIT 9
Page 69

IN WITNESS WHEREOF, the parties have duly affixed their signatures under hand and seal on this 20th day of September, 2021.

**EMPLOYER:**

Daniel S. March

**Managing Shareholder, The Litigation Practice Group PC**

**EMPLOYEE:**

Jane Dearwester

4835-7293-2606, v. 2

9

EXHIBIT 9
Page 70

# EXHIBIT 10

**Jane Dearwester**

| | |
|---|---|
| **From:** | Mario Azevedo <Mario@Azevedo.com> |
| **Sent:** | Tuesday, November 1, 2022 9:42 PM |
| **To:** | Jane Dearwester; Admin |
| **Cc:** | Jayde Trinh; Han Trinh; Laura Ceva |
| **Subject:** | RE: LPG NC - ethics compliance with C&D letters, welcome packet, etc. |

| | |
|---|---|
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Thanks Jane,

I will wait for those documents from you before we set up those states.

-Mario

**From:** Jane Dearwester [mailto:jane@lpglaw.com]
**Sent:** Tuesday, November 1, 2022 4:32 PM
**To:** Mario Azevedo; Admin
**Cc:** Jayde Trinh; Han Trinh; Laura Ceva
**Subject:** RE: LPG NC - ethics compliance with C&D letters, welcome packet, etc.

Thanks Mario.

No – the KY LSA will have to be vetted by ethics counsel as well to be in compliance with KY state bar rules and rules of professional conduct. I'll run that down while I'm getting LPG set up as a legal entity in KY. I'm also pending application to TN, but it sounds like there may already be a TN attorney for LPG in Nashville... so I'm not sure if that process has been done already in TN.

Thank you,

*Jane Dearwester*
Attorney At Law
North Carolina

Physical address:
60 N. Market St.
Suite 101
Asheville, NC 28801
Mobile: 828-301-3681

**The Litigation Practice Group PC**
**P.O. Box 513018**
**Los Angeles, CA 90051**
p: 949.715.0644
f: 949.315.4332
www.lpglaw.com

1

EXHIBIT 10
Page 72



NOTICE: This email message (including any attachments) may contain material that is confidential and/or legally privileged. Unless you are the intended recipient or are authorized to receive information for the intended recipient, you may not use, copy, or disclose any part of this message. If you have received this message in error, please notify us and delete all copies of it. Thank you

**From:** Mario Azevedo <Mario@Azevedo.com>
**Sent:** Tuesday, November 1, 2022 1:52 PM
**To:** Admin <admin@lpglaw.com>; Jane Dearwester <jane@lpglaw.com>
**Cc:** Jayde Trinh <Jayde@lpglaw.com>; Han Trinh <han@lpglaw.com>; Laura Ceva <lceva@lpglaw.com>
**Subject:** RE: LPG NC - ethics compliance with C&D letters, welcome packet, etc.

Hi Jane,

We attempted to find a better way to implement your contracts in DebtPayPro other than "if" statements for each state. Right now, that is our only option and will have in place by end of week.
They are working with us to come up with a better solution.

For Kentucky, can we use the same NC contract and just replace the name of the state?
Let me know if you need any other changes on it.

Thanks,
Mario

**From:** Admin [mailto:admin@lpglaw.com]
**Sent:** Monday, October 31, 2022 10:56 PM
**To:** Jane Dearwester
**Cc:** Jayde Trinh; Han Trinh; Laura Ceva; Mario Azevedo
**Subject:** Re: LPG NC - ethics compliance with C&D letters, welcome packet, etc.

Hi Jane -

I am looping in Mario as he can update you on the progress adding your name and information to letters directed to North Carolina creditors.  We obviously want to do the same in Kentucky now that you are admitted.  If there is a NC welcome letter, that would be easy to automate and send out to new clients, please forward once you have a draft and we will implement that process as well.

Our goal is to do this in every state, and Mario and I have discussed this process for years.  We may ask you to explain the importance of this to some of your colleagues if there is any pushback, but so far everyone seems to be on board.

2

EXHIBIT 10
Page 73

If anything else is needed Mario will let you know, otherwise we will update you once we are ready to go live.

Also, I agree completely, we always train our reps to avoid telling clients to stop paying any creditors.  If you ever see a file where that occured please let General Han know, she will address it with the rep.  That should be zero tolerance.

Thanks!

**The Litigation Practice Group PC**

**17542 E. 17th St., Ste 100**

**Tustin, CA 92780**

p: 949.715.0644

f:  949.315.4332

www.lpglaw.com



NOTICE: This email message (including any attachments) may contain material that is confidential and/or legally privileged. Unless you are the intended recipient or are authorized to receive information for the intended recipient, you may not use, copy, or disclose any part of this message. If you have received this message in error, please notify us and delete all copies of it. Thank you

**From:** Jane Dearwester <jane@lpglaw.com>
**Sent:** Monday, October 31, 2022 8:34 AM
**To:** Admin <admin@lpglaw.com>
**Cc:** Jayde Trinh <Jayde@lpglaw.com>; Han Trinh <han@lpglaw.com>; Laura Ceva <lceva@lpglaw.com>
**Subject:** LPG NC - ethics compliance with C&D letters, welcome packet, etc.

Hey there – I was looking back at my notes from my conversations with Josh, our ethics counsel – and we need to make sure that any letter sent out to a NC client or on behalf of a NC client has my signature on it.  It's my understanding that Mario was making changes in DPP to the standard LSA to incorporate the NC specific changes and to include my signature (instead of Dan March's signature).

Also, telling clients to stop paying their credit card bills/debts is considered legal advice in NC – so that advice can only be given by me or Laura (or someone at our direction).

We are working on a NC introduction letter than has our direct contact information that we want to send along to each client when they sign up.  We will send you a draft when we have it ready later this week.  We can merge this letter here with addresses with DPP, or maybe it can be done automatically in DPP once you have our form letter.  It could become part of the NC Welcome Packet.

EXHIBIT 10
Page 74

Let me know what you think.

Sincerely,

*Jane Dearwester*
Attorney At Law
North Carolina

**60 N. Market St.**
**Suite 101**
**Asheville, NC 28801**

**Office: 828-398-0057**
**Mobile: 828-301-3681**
**Fax: 828-398-4103**
**E: jane@lpglaw.com**
**www.lpglaw.com**



NOTICE: This email message (including any attachments) may contain material that is confidential and/or legally privileged. Unless you are the intended recipient or are authorized to receive information for the intended recipient, you may not use, copy, or disclose any part of this message. If you have received this message in error, please notify us and delete all copies of it.

4

EXHIBIT 10
Page 75

# EXHIBIT 11

**Jane Dearwester**

---

| | |
|---|---|
| **From:** | Jane Dearwester |
| **Sent:** | Friday, February 3, 2023 1:43 PM |
| **To:** | Attorney; Legal |
| **Subject:** | FW: Congratulations on your transition to Oakstone Law Group! |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Were we hacked??? This is the second client who said they got this notification?

---

**From:** Blair Richardson <brich11111@yahoo.com>
**Sent:** Friday, February 3, 2023 8:31 AM
**To:** Administrations LPG <administrations@lpglaw.com>
**Cc:** Reuben Galvan <RGalvan@lpglaw.com>; Jane Dearwester <jane@lpglaw.com>
**Subject:** Re: Congratulations on your transition to Oakstone Law Group!

Daniel,

Thank you for your email notifying me of this change. I look forward to your firms expertise handling my file.  I will say, there are big shoes to fill. I was/am very happy with LPG and I understand accounts get transferred etc.  all I ask is to continue doing the best your firm can do for me and my family, as did LPG. I look forward to more information when I get a call or future emails.  Have a great weekend.

James "Blair" Richardson
704-641-2019

Sent from my iPhone

> On Feb 3, 2023, at 6:35 AM, Administrations LPG <administrations@lpglaw.com> wrote:

Dear Valued Client -

I am writing to inform you of a transition in the legal services you are receiving from my firm, Litigation Practice Group, to a law firm I know and trust, Oakstone Law Group ("OLG").  After careful consideration, I have decided to transfer your file in order to ensure that you receive the best possible legal services in the industry.  This law firm, which is larger and more experienced in the area of consumer rights, is also based in California and has expertise fighting the largest banks and creditors in the nation.  Its reputation has been built by attorneys across the country with a combined experience of more than 100 years of providing legal services to clients of all types.  This transition will allow OLG, whose attorneys I have worked with multiple times during my career, to manage your account and continue to provide a high level of service to you throughout your debt resolution process.

Based on a negotiation I managed to complete, the terms of your agreement will remain the same, and you will not be required to pay anything more than what was agreed in your contract.  All of your payments have been credited, and your monthly payment will remain the same amount and will be taken on the same day.  The length of your program and

EXHIBIT 11
Page 77

contract are also the same.  To be clear, your payment, the length of your program, and the services that you are offered will remain exactly the same and comes with a guarantee that if your debts are not resolved at the conclusion of your program, you will receive a full refund of the fees paid toward such debts.  Just as with Litigation Practice Group, OLG will represent you in any lawsuit filed against you without any additional cost to you.

This transfer will be completed today, on Thursday, February 2nd, and a representative from OLG will reach out to you to welcome you to their law firm.  I wish you the best of luck and success in completion of your journey to being debt free.

If you have any questions regarding this transition, please call OLG at 858-330-3009.

Regards,
Daniel S. March

<image001.png>

NOTICE: This email message (including any attachments) may contain material that is confidential and/or legally privileged. Unless you are the intended recipient or are authorized to receive information for the intended recipient, you may not use, copy, or disclose any part of this message. If you have received this message in error, please notify us and delete all copies of it. Thank you.

EXHIBIT 11
Page 78

# EXHIBIT 12

**Jane Dearwester**

| | |
|---|---|
| **From:** | Rayshaun Thompson <tiddle96@gmail.com> |
| **Sent:** | Monday, March 6, 2023 9:17 AM |
| **To:** | Attorney |
| **Cc:** | Laura Ceva; Jane Dearwester; Legal |
| **Subject:** | Re: Welcome to Phoenix - Rayshaun Thompson (#709823381) |
| **Attachments:** | image001.png |

I appreciate the guidance. However, has LPG had any transactions with Phoenix Law in the past? If there really was a high volume account transfer, they don't seem equipped to handle it. Whether that be in staffing or care.

- Rayshaun Thompson

On Fri, Mar 3, 2023, 9:03 PM Attorney <attorney@lpglaw.com> wrote:
Hi Rayshaun,

Please request to speak to Ty Carss if an agent does not reach out shortly or provide you with substantial information. Push for it. They need to give you an explanation and help you understand what is going on.

If this is to no avail, you can try to reach out to the California State Bar to assist.

Get Outlook for iOS

---

**From:** Service Phoenix Law <service@phoenixlaw.co>
**Sent:** Friday, March 3, 2023 11:29 AM
**To:** Laura Ceva <lceva@lpglaw.com>
**Cc:** Rayshaun Thompson <tiddle96@gmail.com>; Jane Dearwester <jane@lpglaw.com>; Legal <legal@lpglaw.com>; Attorney <attorney@lpglaw.com>
**Subject:** Re: Welcome to Phoenix - Rayshaun Thompson (#709823381)

Hello,

Thank you.  An agent will be getting in touch with the client, shortly.

Best Regards,
Service Team
Phoenix Law PC
p. (424) 622-4044
PhoenixLaw.co

EXHIBIT 12
Page 80



On Thu, Mar 2, 2023 at 8:24 AM Laura Ceva <lceva@lpglaw.com> wrote:

I am sorry you are dealing with this. I saw in the file that your cancellation was completed last we communicated. I have escalated this to the back office and hope someone reaches out to you soon. At this time, I would advise you dispute the charge directly with your bank while you wait to hear back.

*Laura Ceva*

Case Manager

60 N. Market Street, Suite 101

Asheville, NC 28801

P: 828-398-0057

F: 828-398-4103

NOTICE: This email message (including any attachments) may contain material that is confidential and/or legally privileged. Unless you are the intended recipient or are authorized to receive information for the intended recipient, you may not use, copy, or disclose any part of this message. If you have received this message in error, please notify us and delete all copies of it.

2

EXHIBIT 12
Page 81

**From:** Rayshaun Thompson <tiddle96@gmail.com>
**Sent:** Thursday, March 2, 2023 11:19 AM
**To:** Laura Ceva <lceva@lpglaw.com>
**Cc:** service@phoenixlaw.co; Jane Dearwester <jane@lpglaw.com>
**Subject:** Re: Welcome to Phoenix

Hello Laura,

It seems like an amount was still debited from the account on my file for the amount $325.26 on Feb 28, 2023. I'll be reaching out to Phoenix Law later today as well.

Best,

Rayshaun Thompson

On Thu, Feb 23, 2023 at 10:31 AM Laura Ceva <lceva@lpglaw.com> wrote:

Mr. Thompson, the firm is going through a transition. I see that you were cancelled out of the program effective 2/16. You were probably sent this email by mistake. Please let me know if any more payments are drafted, but I do see that you have been cancelled out of the program.

*Laura Ceva*

Case Manager

60 N. Market Street, Suite 101

Asheville, NC 28801

3

EXHIBIT 12
Page 82

P: 828-398-0057

F: 828-398-4103



NOTICE: This email message (including any attachments) may contain material that is confidential and/or legally privileged. Unless you are the intended recipient or are authorized to receive information for the intended recipient, you may not use, copy, or disclose any part of this message. If you have received this message in error, please notify us and delete all copies of it.

**From:** Rayshaun Thompson <tiddle96@gmail.com>
**Sent:** Wednesday, February 22, 2023 8:20 PM
**To:** service@phoenixlaw.co
**Cc:** Jane Dearwester <jane@lpglaw.com>; Laura Ceva <lceva@lpglaw.com>
**Subject:** Re: Welcome to Phoenix

Hello,

Would you disclose who provided my information to Phoenix law without my consent? If you were informed by LPG, then this organization would know of my written notice of cancellation. There is no longer any account (services provided from LPG) to transfer over to Phoenix Law, as such were rendered cancelled as of Feb 15, 2023.

Best,

Rayshaun Thompson

4

EXHIBIT 12
Page 83

On Wed, Feb 22, 2023 at 4:07 PM service@phoenixlaw.co <service@phoenixlaw.co> wrote:

Dear Valued Client -


Congratulations and welcome to Phoenix Law! We are very excited to welcome you to our firm and look forward to helping you complete the journey of becoming debt free! As you were recently informed by Litigation Practice Group, your file has been transitioned to Phoenix Law due to our expertise in consumer rights. We intend to go after your creditors and force a resolution of your debts. Based on special discounted terms negotiated on your behalf, your payment amount and term will remain the same as with Litigation Practice Group, meaning your payment will draft from your account on the same date and in the same amount as before, and your payment terms will end on the same date as before. The difference is Phoenix Law's unique method of challenging creditors to resolve your debts.


As with Litigation Practice Group, Phoenix Law will dispute the validity of your debts and force creditors to show that they have complied with state and federal law in the course of underwriting and servicing your debts. In addition, as with Litigation Practice Group, Phoenix Law will represent and defend you in court if any of your creditors file suit against you, and will do so without any additional fees or costs to you. But unlike Litigation Practice Group, Phoenix Law does not simply wait for creditors to react. Rather, Phoenix Law believes the best defense is a good offense. For that reason, Phoenix Law specializes in initiating actions against creditors. We do this first by gathering information regarding the creditors' practices in general and with regard to your account. We use information gathered in thousands of lawsuits to attack creditors' weak spots and pressure them to walk away from collection activity or agree to pay damages for the violations of state and federal law that they commit. Our network of dedicated attorneys nationwide have substantial experience litigating against major creditors, and use the credibility built over years of litigation to obtain favorable results for you.


One of our legal administrative representatives will reach out to you to welcome you to our Law Firm. Our work on your behalf will begin today, and we will keep you updated regarding our progress throughout the duration of your services with Phoenix Law. We want to encourage you to reach out with any questions you have and will follow up with additional information over the coming days and weeks. Please do not hesitate to call us at (424) 622-4044 or by email at service@phoenixlaw.co. (**not .com**). We look forward to working with you to achieve financial freedom and become debt free!


Truly Yours,

**Ty Carss, Esq.**

*Managing Attorney*

Phoenix Law PC

EXHIBIT 12
Page 84

p. (424) 622-4044

[PhoenixLaw.co](PhoenixLaw.co)



NOTICE: This email message (including any attachments) may contain confidential and/or legally privileged material. Unless you are the intended recipient or are authorized to receive information for the intended recipient, you may not use, copy, or disclose any part of this message. If you have received this message in error, please notify us and delete all copies of it. Thank you.

EXHIBIT 12
Page 85

# EXHIBIT 13

## Jane Dearwester

| | |
|---|---|
| **From:** | Jane Dearwester |
| **Sent:** | Tuesday, February 28, 2023 3:05 PM |
| **To:** | dan@litigationpracticegroup.com; Admin; Legal; Attorney |
| **Subject:** | LPG NC/KY - client transfers |

| | |
|---|---|
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

After reviewing the mass emails that are being sent out to NC and KY clients over the past few weeks by LPG and after consultation with our ethics counsel, I have to make a demand for LPG to immediately stop transferring or attempting to transfer clients or client information without the prior written consent from each individual client. First and foremost, LPG owes NC and KY clients a duty of confidentiality. In NC, clients have the right to choose their legal counsel. A law firm may not make a unilateral decision to transfer representation of any client and/or client data without the client's prior written consent. By sending out these mass emails and potentially transferring client data to another unrelated entity outside of LPG, LPG is in direct violation of the Rules of Professional Conduct for NC and KY.

To that end, I need for someone at LPG to provide me with a list of all active NC and KY LPG clients, indicating which ones have been transferred to either Oakstone and/or Phoenix Law. Those transfers must be immediately rescinded in a manner that ensures confidentiality of client data. The clients must all go back to LPG so that they can be advised of their legal representation options. After the clients are back with LPG, I will draft a proper communication to each client that complies with the Rules of Professional Conduct for the respective state giving each client their options: to stay with LPG (if that is an option – someone please clarify this), go to Oakstone/Phoenix (after confirmation that Oakstone and/or Phoenix have a NC or KY licensed attorney currently on staff), or hire an attorney of their choice. I am working closely with ethics counsel to make sure that this transition is done properly, in compliance with the rules of professional conduct for NC and KY, and in the best interest of our clients.

LPG is also in breach of the terms of my employment contract – for non-compliance with the rules of professional conduct, failure to pay rent and associated operating expenses of the NC office, failure to meet payroll obligations, and failure to remit payment within 30 days for my quarterly bonuses for 2022. I sincerely hope that we can move forward with more open and transparent communications regarding these very serious issues.

Sincerely,

*Jane Dearwester*
Attorney At Law
*(Licensed in NC and KY)*

**60 N. Market St.
Suite 101
Asheville, NC 28801**

**Office: 828-398-0057
Mobile: 828-301-3681
Fax: 828-398-4103
E: jane@lpglaw.com
www.lpglaw.com**

**EXHIBIT 13
Page 87**



NOTICE: This email message (including any attachments) may contain material that is confidential and/or legally privileged. Unless you are the intended recipient or are authorized to receive information for the intended recipient, you may not use, copy, or disclose any part of this message. If you have received this message in error, please notify us and delete all copies of it.

EXHIBIT 13
Page 88

# EXHIBIT 14

## Jane Dearwester

| | |
|---|---|
| **From:** | Jane Dearwester |
| **Sent:** | Tuesday, February 28, 2023 1:37 PM |
| **To:** | dan@litigationpracticegroup.com |
| **Cc:** | Olga Esquivel |
| **Subject:** | meeting request |

| | |
|---|---|
| **Importance:** | High |

| | |
|---|---|
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Dan,

Good afternoon from NC.  In light of the confusing transition that is currently upon us, I would like to set up a call with you to discuss what's going on.  I have already reached out to my personal attorneys, and I have had all 3 attorneys now advise me that the actions of LPG/Oakstone/Phoneix are putting my law licenses in jeopardy.  The client transitions are in direct violation of the Rules of Professional Conduct for NC and KY.  LPG is also in breach of the terms of my current employment contract.

I am not having any luck getting a straight answer from anyone about the status of LPG – what's happening, is it dissolving, how do we advise the clients, etc.  I'm hoping you can provide some information and transparency around this transition.  I will make time to speak with you when you are available this week.  I'm fairly open tomorrow and Friday and also have time Thursday between 1-2pm EST.

Sincerely,

*Jane Dearwester*
Attorney At Law
*(Licensed in NC and KY)*

**60 N. Market St.**
**Suite 101**
**Asheville, NC 28801**

**Office: 828-398-0057**
**Mobile: 828-301-3681**
**Fax: 828-398-4103**
**E: jane@lpglaw.com**
**www.lpglaw.com**



NOTICE: This email message (including any attachments) may contain material that is confidential and/or legally privileged. Unless you are the intended recipient or are authorized to receive information for the

EXHIBIT 14
Page 90

intended recipient, you may not use, copy, or disclose any part of this message. If you have received this message in error, please notify us and delete all copies of it.

EXHIBIT 14
Page 91

# EXHIBIT 15

**Jane Dearwester**

| | |
|---|---|
| **From:** | Kent Cobb |
| **Sent:** | Monday, March 6, 2023 7:04 PM |
| **To:** | LPG Counsel |
| **Subject:** | I just talked to Han - - some good news |

| | |
|---|---|
| **Importance:** | High |

Hello everyone,

I just talked with Han (Monday, 3/6/23 approximately 5:55 CST).  Some good news:

1) The pay from LPG is still coming, though it will hit tomorrow and not today.  It will include vacation pay due.

2) We are getting paid by Oakstone this Friday.  CHECK YOUR PERSONAL EMAIL TONIGHT FOR PAYROLL PAPERWORK  - - AND COMPLETE IT TONIGHT AND RETURN IT!

3) You will soon be getting a new credit card…so you won't have to worry about fronting money and getting reimbursed.

Hang in there everyone.

Kent Cobb
Attorney
Licensed in Oklahoma, Arkansas, Illinois, Iowa & Wyoming
**The Litigation Practice Group PC**
**1111 Main Street, #1523**
**Conway, AR 72033**
p: 918-313-6113
p: 501-499-0203
www.lpglaw.com

1

EXHIBIT 15
Page 93

# EXHIBIT 16

**Jane Dearwester**

| | |
|---|---|
| **From:** | Attorney |
| **Sent:** | Friday, February 3, 2023 2:36 PM |
| **To:** | Jane Dearwester |
| **Subject:** | Oakstone |
| **Follow Up Flag:** | Flag for follow up |
| **Flag Status:** | Flagged |
| **Categories:** | Lawyers |

Good afternoon Jane,

Client volume has become too overwhelming at LPG, so we have begun the process of transferring certain files to other law firms.  One of those law firms is Oakstone Law Group, which I am currently managing while looking for a permanent managing attorney.  This was done to ensure that our clients will continue to receive personalized representation from licensed attorneys for all legal matters.  Moving forward, LPG will work with other law firms to ensure that its size does not hinder the representation of clients.

Existing cases that have already been assigned will remain with current counsel until they are completed.  For any clients whose profile remains in DebtPayPro/Forth, you can continue to leave updates/notes on DPP/Forth.  If you cannot locate a client file on DPP/Forth, then it means the client file has been transferred to that law firm's CRM, and you will have to email updates to Legal@LPGLaw.com.  Legal will ensure the update makes it way to the client file.  Essentially, please carry on with normal protocol for existing cases.  Any existing active lawsuits must be finished under the LPG name.  If a new file comes along, it may be assigned to you from a new entity.  In that case you will receive a contract from that new entity and will be compensated by that new entity.

Additionally, Dan, Tony and I had a conversation and came to a consensus that it would be best for them to phase out and, eventually, step down for the benefit of the firm.  Both Dan and Tony will remain with LPG for now, but will not be a part of any new ventures and will have no role in any new firms.  This decision was made based upon their desires as well as the best needs of the firms that will continue representing our ever-growing client population, which is now growing at a pace that requires multiple full-service law firms to service.

We are confident that this is the best route as regards our clients and our employees, and will improve our clients' experience and eliminate processes that did not run smoothly.


Regards,

Jayde Trinh
General Counsel
**The Litigation Practice Group PC**
17542 17th Street, Suite 100
Tustin. CA 92780

1

EXHIBIT 16
Page 95

tel. (949) 715-0644
fax (949) 315-4332
attorney@lpglaw.com



NOTICE: This email message (including any attachments) may contain material that is confidential and/or legally privileged. Unless you are the intended recipient or are authorized to receive information for the intended recipient, you may not use, copy, or disclose any part of this message. If you have received this message in error, please notify us and delete all copies of it. Thank you.

2

EXHIBIT 16
Page 96

# EXHIBIT 17

**Jane Dearwester**

---

| | |
|---|---|
| **From:** | Attorney |
| **Sent:** | Friday, March 10, 2023 8:42 PM |
| **To:** | Laura Henna; Jane Dearwester |
| **Subject:** | Re: Employment Offer |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Hi Jane and Laura,

We need a decision by Monday 10am on whether you are coming to Oakstone.
If you choose not to come to Oakstone, you have the option of keeping client themselves and representing them from there OR asking client if they wish to go to Oakstone.

LPG won't exist so staying at LPG is not an option for client since when LPG winds up, there won't be licensed counsel at LPG and LPG cannot represent client.

Get Outlook for iOS

---

**From:** Laura Henna <lauraeceva@gmail.com>
**Sent:** Friday, March 10, 2023 11:31:19 AM
**To:** Mary Harris <mary@guardianprocessing.com>
**Cc:** Oakstone Admin <admin@oakstonepc.com>; Legal <legal@lpglaw.com>; Admin <admin@lpglaw.com>; Jane Dearwester <jane@lpglaw.com>; Attorney <attorney@lpglaw.com>
**Subject:** Re: Employment Offer

Ms. Harris et al,

I would like clarification as this transition to Oakstone has been wrought with misinformation. I have copied LPG's Admin, Attorney, and Legal contacts here as this pertains to both entities, and Jane for her reference.

What you all may or may not know, is that I am actually an attorney here in North Carolina. I received my license in 2012. I chose to come on as Jane's Legal Assistant as we are a good team with a history of working well together, and I wanted to feel the company out before I chose to move into an attorney position. Tony and I discussed this in my interview call back when I was first hired. Jane and I have painstakingly put systems into place and assisted LPG in getting established in NC and KY within the bounds of the rules of professional conduct, and have been working tirelessly to correct mistakes made by prior LPG "of counsel" attorneys in both NC and KY for over a year. We have been successful in our endeavors and were poised to help LPG quickly grow within NC, KY and TN. Our commitment to the clients and the LPG mission has been paramount in our work.

That being said, I have lost a lot of confidence that LPG and/or Oakstone will agree to move forward in a way that complies with our rules of professional conduct. I have yet to receive a paycheck from LPG for any work I have performed since February 13th, 2023 to date. I have been given assurances that a

EXHIBIT 17
Page 98

paycheck was forthcoming many times. I have continued to work on LPG files as I have not been terminated nor have I resigned from LPG. The information we have gotten is that LPG will continue to operate in some capacity. Further, a large number of our clients are still enrolled at LPG. In fact, we are still getting Legal case assignments and new enrollments daily from LPG. Additionally, as Jane has told LPG, per the NC and KY State Bar rules of professional conduct, LPG files in North Carolina and Kentucky CANNOT be transferred to another entity without each client's written consent is obtained *after* they've been informed of the changes with LPG *and* been given the various options they have to move forward with some kind of debt resolution program (or not). As Jane has stated to you throughout, we have been ready to help with that process to ensure whatever transition or change is taking place is done within the constructs of the NC and KY rules of professional ethics.

You have now apparently stated that I will not be paid for work I have already performed since I have not signed the proposed employment offer letter sent to me by Oakstone. I do not understand why my relationship with Oakstone has any bearing on my work for LPG - which I have been performing ceaselessly despite the unheaval within the company. I do not know how you would expect any professional to blindly sign a contract with a new company when we have been given contradictory information for over a month about what is occurring with LPG / Oakstone / Phoenix Law / Consumer Law Group. Further, we cannot ethically allow our LPG clients to move over to Oakstone / Phoenix / CLG without first complying with our professional rules of conduct. It is especially concerning in those cases in which Jane has entered a court appearance and we are engaged in active settlement discussions. In doing so, we are risking our professional licenses for a company that does not appear to have enough respect for us to be candid about the changes that are occuring. As the LPG clients cannot be moved to a new company, we are continuing to work on these clients' files under the employ of LPG.- as is also required by our professional rules of conduct; and, frankly, is the right thing to do for these clients who put their trust in LPG for assistance. Both Jane and I have worked fighting for consumers for over a decade and we are passionate about this work.

I will need some clarification before I can make any decisions about moving forward with Oakstone. Also, if I don't have any indication from LPG about my status as an employee and my pay, I will be forced to file for unemployment and/or pursue LPG for violations of state and federal employment laws. **I would like some kind of explanation or response regarding these issues by the end of business Monday, March 13**. My direct phone number is 828-708-3149.

I have read through four lawsuits (two in federal court, one in CA, and one in TX) that are/were pending recently related to the issues LPG and Oakstone are facing. I will need some assurances that LPG and/or Oakstone are committed to not only the promises they have made to their clients, but also staying within the bounds of lawyers' professional ethics within your geographic areas of practice. I feel that as employees and professionals, we have been more than patient with LPG and these changes. Our lives have been adversely affected due to decisions made by LPG. I am asking for a little respect and professionalism from whomever is in charge at this point.

Sincerely,

Laura Ceva
*Juris Doctor*, Vermont Law School
Masters of Environmental Law and Policy, Vermont Law School
280 Black Oak Cove Road, Candler, NC 28715
lauraeceva@gmail.com
828-708-3149

EXHIBIT 17
Page 99

On Tue, Mar 7, 2023 at 10:52 AM Laura Henna <lauraeceva@gmail.com> wrote:
> Thank you for this. Jane and I will discuss moving forward and get back to you as soon as possible.
>
> On Mon, Mar 6, 2023 at 3:49 PM Mary Harris <mary@guardianprocessing.com> wrote:
>> Hi Laura,
>>
>> Please find attached your offer letter for review. Let Han or myself know if you have any questions - if not, please sign and return to me via email.
>>
>> Thank you and welcome to the team!
>>
>> Mary Harris
>> mary@guardianprocessing.com
>> *Guardian Processing*
>
>
>
> --
> Laura Ceva
> *Juris Doctor*, Vermont Law School
> Masters of Environmental Law and Policy, Vermont Law School
> 280 Black Oak Cove Road, Candler, NC 28715
> lauraeceva@gmail.com
> 828-708-3149



--
Laura Ceva
*Juris Doctor*, Vermont Law School
Masters of Environmental Law and Policy, Vermont Law School
280 Black Oak Cove Road, Candler, NC 28715
lauraeceva@gmail.com
828-708-3149

EXHIBIT 17
Page 100

**EXHIBIT 18**

**Jane Dearwester**

| | |
|---|---|
| **From:** | Kent Cobb |
| **Sent:** | Monday, March 6, 2023 7:04 PM |
| **To:** | LPG Counsel |
| **Subject:** | I just talked to Han - - some good news |

**Importance:**        High

Hello everyone,

I just talked with Han (Monday, 3/6/23 approximately 5:55 CST).  Some good news:

1) The pay from LPG is still coming, though it will hit tomorrow and not today.  It will include vacation pay due.

2) We are getting paid by Oakstone this Friday.  CHECK YOUR PERSONAL EMAIL TONIGHT FOR PAYROLL PAPERWORK  - - AND COMPLETE IT TONIGHT AND RETURN IT!

3) You will soon be getting a new credit card…so you won't have to worry about fronting money and getting reimbursed.

Hang in there everyone.

Kent Cobb
Attorney
Licensed in Oklahoma, Arkansas, Illinois, Iowa & Wyoming
**The Litigation Practice Group PC**
**1111 Main Street, #1523**
**Conway, AR 72033**
p: 918-313-6113
p: 501-499-0203
www.lpglaw.com

EXHIBIT 18
Page 102

# EXHIBIT 19

**Jane Dearwester**

| | |
|---|---|
| **From:** | Attorney |
| **Sent:** | Tuesday, January 31, 2023 3:33 PM |
| **To:** | Jane Dearwester |
| **Cc:** | Laura Ceva; Legal |
| **Subject:** | Fw: Glasser 21110905 - Discover Bank v. Barry Coleman, 22CVD3623 Guilford County |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Hi Jane,

Generally---

Handled by Legal:

- If you have trouble locating a client or a lawsuit
- Questions re: Legal Docs
- Assigning Local Counsel
- Questions re Client's file

Handled by Attorney:

- Inquiries regarding litigation
- Other questions that require authority
- Settlement reporting
- Liaison for Local Counsel

Just to avoid the process of determining the appropriate person to tag, most counsel send the message to OR tag both Legal and Attorney and we can handle it from there!

General Counsel
**The Litigation Practice Group PC**
17542 17th Street, Suite 100
Tustin. CA 92780
tel. (949) 715-0644
fax (949) 315-4332
attorney@lpglaw.com



EXHIBIT 19
Page 104

NOTICE: This email message (including any attachments) may contain material that is confidential and/or legally privileged. Unless you are the intended recipient or are authorized to receive information for the intended recipient, you may not use, copy, or disclose any part of this message. If you have received this message in error, please notify us and delete all copies of it. Thank you

**From:** Legal <legal@lpglaw.com>
**Sent:** Monday, January 30, 2023 11:44 AM
**To:** Attorney <attorney@lpglaw.com>
**Subject:** Fw: Glasser 21110905 - Discover Bank v. Barry Coleman, 22CVD3623 Guilford County

**The Litigation Practice Group PC**
**P.O. Box 513018**
**Los Angeles, CA 90051**
p: 949.715.0644
f:  949.315.4332
www.lpglaw.com



NOTICE: This email message (including any attachments) may contain material that is confidential and/or legally privileged. Unless you are the intended recipient or are authorized to receive information for the intended recipient, you may not use, copy, or disclose any part of this message. If you have received this message in error, please notify us and delete all copies of it. Thank you.

**From:** Jane Dearwester <jane@lpglaw.com>
**Sent:** Monday, January 30, 2023 11:34 AM
**To:** Legal <legal@lpglaw.com>
**Cc:** Laura Ceva <lceva@lpglaw.com>
**Subject:** RE: Glasser 21110905 - Discover Bank v. Barry Coleman, 22CVD3623 Guilford County

Well damn – all this time I thought Jayde was "Legal" – now I'm wondering if I'm tagging the right person in Forth for these random things…?

Can you clarify when I should tag "legal" versus "attorney"?

We are definitely not trying to make things more difficult.

EXHIBIT 19
Page 105

**From:** Legal <legal@lpglaw.com>
**Sent:** Monday, January 30, 2023 1:43 PM
**To:** Jane Dearwester <jane@lpglaw.com>
**Cc:** Laura Ceva <lceva@lpglaw.com>
**Subject:** Re: Glasser 21110905 - Discover Bank v. Barry Coleman, 22CVD3623 Guilford County

I cannot locate the CL in our system. But this is Han. Jayde is over at Attorney@lpglaw.com 

**The Litigation Practice Group PC**
**P.O. Box 513018**
**Los Angeles, CA 90051**
p: 949.715.0644
f:  949.315.4332
www.lpglaw.com



NOTICE: This email message (including any attachments) may contain material that is confidential and/or legally privileged. Unless you are the intended recipient or are authorized to receive information for the intended recipient, you may not use, copy, or disclose any part of this message. If you have received this message in error, please notify us and delete all copies of it. Thank you.

---

**From:** Jane Dearwester <jane@lpglaw.com>
**Sent:** Monday, January 30, 2023 10:19 AM
**To:** Legal <legal@lpglaw.com>
**Cc:** Laura Ceva <lceva@lpglaw.com>
**Subject:** FW: Glasser 21110905 - Discover Bank v. Barry Coleman, 22CVD3623 Guilford County

Jayde – can y'all find this client somewhere?  See info below provided by opp counsel for Discover…

---

**From:** Andrea Davis <adavis@glasserlaw.com>
**Sent:** Friday, January 27, 2023 12:55 PM
**To:** Jane Dearwester <jane@lpglaw.com>
**Cc:** Laura Ceva <lceva@lpglaw.com>
**Subject:** RE: Glasser 21110905 - Discover Bank v. **Barry Coleman**, 22CVD3623 Guilford County

3

EXHIBIT 19
Page 106

Hey there,
Last address we had is **1031 Oak Blossom Way, Whitsett NC 27377**.
If you can't find him, I will go ahead and remove your firm from the file.
Thank you!

## Andrea Davis
**Attorney**
Glasser and Glasser, P.L.C.
580 E. Main St. Ste 600
Norfolk, VA  23510
✉: adavis@glasserlaw.com
☎: 757-533-5555, ext. 482
☎: 888-533-0660 (toll free)
🖷: 757-533-9009 (fax)
*Licensed In North Carolina and Florida
**Glasser and Glasser, P.L.C.  ~ Est. 1932**
**Virginia, Maryland, North Carolina and Washington, D.C. Collections and Creditors' Rights**

If you no longer wish to receive emails from Glasser and Glasser, P.L.C., you can reply to this e-mail with the word STOP. You can also opt out by emailing Glasser and Glasser, P.L.C. at contactus@glasserlaw.com with the word STOP in the subject line, by mail, or by phone at 888-533-0660. Opting out of emails means that we will not be able to communicate with you via email for any reason unless you reestablish consent.

This email message and any attached files are confidential and are intended solely for the use of the addressee(s) named above. This communication may contain material protected by attorney-client, work product, or other legal privileges as well as protected under HIPAA and other Federal and State laws. If you are not the intended recipient or person responsible for delivering this confidential communication to the intended recipient, and you have received this communication in error, any review, use, dissemination, forwarding, printing, copying, or other distribution of this email message and any attached files is strictly prohibited. If you have received this confidential communication in error, please notify the sender immediately by reply email message and permanently delete the original message and attachments.  THIS COMMUNICATION IS FROM A DEBT COLLECTOR AND IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

**From:** Jane Dearwester <jane@lpglaw.com>
**Sent:** Friday, January 27, 2023 12:36 PM
**To:** Andrea Davis <adavis@glasserlaw.com>
**Cc:** Laura Ceva <lceva@lpglaw.com>
**Subject:** RE: Glasser 21110905 - Discover Bank v. Barry Coleman, 22CVD3623 Guilford County

It's not coming up for me.  Do you have more information for Mr. Coleman?  Address? DOB?

**From:** Andrea Davis <adavis@glasserlaw.com>
**Sent:** Thursday, January 26, 2023 5:47 PM
**To:** Jane Dearwester <jane@lpglaw.com>
**Cc:** Laura Ceva <lceva@lpglaw.com>
**Subject:** Glasser 21110905 - Discover Bank v. Barry Coleman, 22CVD3623 Guilford County

Good afternoon Jane,

EXHIBIT 19
Page 107

Can you please confirm if LPG is still representing Mr. Coleman in this matter? It is post-judgment.
Thank you!

**Andrea Davis**
**Attorney**
Glasser and Glasser, P.L.C.
580 E. Main St. Ste 600
Norfolk, VA  23510
✉: adavis@glasserlaw.com
☎: 757-533-5555, ext. 482
☎: 888-533-0660 (toll free)
☎: 757-533-9009 (fax)
*Licensed In North Carolina and Florida
**Glasser and Glasser, P.L.C. ~ Est. 1932**
**Virginia, Maryland, North Carolina and Washington, D.C. Collections and Creditors' Rights**
If you no longer wish to receive emails from Glasser and Glasser, P.L.C., you can reply to this e-mail with the word STOP. You can also opt out by emailing Glasser and Glasser, P.L.C. at contactus@glasserlaw.com with the word STOP in the subject line, by mail, or by phone at 888-533-0660. Opting out of emails means that we will not be able to communicate with you via email for any reason unless you reestablish consent.
This email message and any attached files are confidential and are intended solely for the use of the addressee(s) named above. This communication may contain material protected by attorney-client, work product, or other legal privileges as well as protected under HIPAA and other Federal and State laws. If you are not the intended recipient or person responsible for delivering this confidential communication to the intended recipient, and you have received this communication in error, any review, use, dissemination, forwarding, printing, copying, or other distribution of this email message and any attached files is strictly prohibited. If you have received this confidential communication in error, please notify the sender immediately by reply email message and permanently delete the original message and attachments.  THIS COMMUNICATION IS FROM A DEBT COLLECTOR AND IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

EXHIBIT 19
Page 108

# EXHIBIT 20

## Jane Dearwester

| | |
|---|---|
| **From:** | Jane Dearwester |
| **Sent:** | Friday, March 3, 2023 2:38 PM |
| **To:** | Joshua Walthall |
| **Subject:** | RE: FW: Payroll (LPG) |

Agreed!!!  It has been a stressful past several weeks over here. All of the attorneys are skeptical and distraught about what is going on.  It's a mess!

**From:** Joshua Walthall <jwalthall@bobllaw.com>
**Sent:** Friday, March 3, 2023 2:19 PM
**To:** Jane Dearwester <jane@lpglaw.com>
**Subject:** Re: FW: Payroll (LPG)

This is very disconcerting, Jane, not only from an ethics standpoint, but just from a business perspective.

Let me know when you and Jordan are free next week to chat.

Joshua Walthall
Partner | Boerema Blackton, LLP
Professional Licensing Attorney
4801 Glenwood Ave, Suite 200
Raleigh, NC 27612
919-801-6208 | jwalthall@bobllaw.com
ncprofessionallicensing.com

On Fri, Mar 3, 2023 at 11:01 AM Jane Dearwester <jane@lpglaw.com> wrote:

Josh – this is the latest on our payroll issues.  This has happened for the past 3 payroll cycles.  Each time so far our pay has been one week late.

**From:** Dan March <Dan@lpglaw.com>
**Sent:** Friday, March 3, 2023 10:40 AM
**To:** HRBlastAll <HRBlastAll@lpglaw.com>
**Subject:** Payroll

All -

I am writing to update you regarding payroll that is set for processing on Friday, March 3, 2023.  That payroll has again been delayed as we continue to struggle through our dispute with the payment processors that are

1

EXHIBIT 20
Page 110

holding client payments.  We have two active matters against these processors and had a contempt hearing earlier today.  We are at the tail end of the dispute and will have normal deposits resume this coming week. I know the past month has been terrible for all in dealing with delayed payroll processing.  The payroll that was set to process today, March 3, will now go out on Monday, March 6. The pay will be received during the day on March 6, prior to the close of business. I am again terribly sorry for this delay and the impact it has caused, and I can assure you that we have done all that we can.


Regards,

Daniel S. March

EXHIBIT 20
Page 111

**EXHIBIT 21**

**Jane Dearwester**

| | |
|---|---|
| **From:** | Han Trinh |
| **Sent:** | Thursday, February 9, 2023 5:39 PM |
| **To:** | LPG Counsel |
| **Subject:** | Re: Payroll 02/03 |

| | |
|---|---|
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Hello Counsel—

UPDATE

Direct deposits from Paychex are currently appearing now! Please be on the lookout!


Kindest Regards,

*Han Trinh*

Admin

**The Litigation Practice Group PC**
**P.O. Box 513018**
**Los Angeles, CA 90051**
p: 949.715.0644
f:  949.315.4332
www.lpglaw.com

NOTICE: This email message (including any attachments) may contain material that is confidential and/or legally privileged. Unless you are the intended recipient or are authorized to receive information for the intended recipient, you may not use, copy, or disclose any part of this message. If you have received this message in error, please notify us and delete all copies of it. Thank you.

---

**From:** Han Trinh
**Sent:** Thursday, February 9, 2023 10:17:42 AM
**To:** LPG Counsel <lpgcounsel@lpglaw.com>
**Subject:** Payroll 02/03

Hello Counsels-

I have been in communication with most of you, but there is an overdue owed explanation to those who have not reached out to upper management regarding 02/03's payroll payment processing error.

First, I would like to apologize for this life-effecting error. We have been doing our best to remedy this situation. I began personally wiring out original payroll amounts to most of you before I was told to immediately stop by our Director of Finance, Kevin Kurka, to halt so that Cecilia would be able to process

EXHIBIT 21
Page 113

the rest by Paychex. I was told that it was guaranteed to process 110% same day as long as I wired out the rest of the amount to Paychex, but clearly it did not.

If you look at your Paychex account, you will be able to see some movements re your paystub as of today. I am not quite sure as to why it has not posted in your bank account. I was informed that Cecilia has been on the phone with Paychex since this morning. Until further notice, I do not have a clear update that I can provide for you.

Penalty fees accrued during this process will be calculated and sent to those it applies to as soon as we clear this issue.

Please direct all questions regarding this to me.

Kindest Regards,

*Han Trinh*

Admin

**The Litigation Practice Group PC**
**P.O. Box 513018**
**Los Angeles, CA 90051**
p: 949.715.0644
f:  949.315.4332
www.lpglaw.com

NOTICE: This email message (including any attachments) may contain material that is confidential and/or legally privileged. Unless you are the intended recipient or are authorized to receive information for the intended recipient, you may not use, copy, or disclose any part of this message. If you have received this message in error, please notify us and delete all copies of it. Thank you.

EXHIBIT 21
Page 114

# EXHIBIT 22

**Jane Dearwester**

| | |
|---|---|
| **From:** | Jane Dearwester |
| **Sent:** | Tuesday, February 7, 2023 1:29 PM |
| **To:** | Admin |
| **Subject:** | RE: Update re Payroll |

Tony,

I'm ready for our call when you are.  Please call my personal cell at 828-713-2599 or LPG mobile # 828-301-3681.

---

**From:** Admin <admin@lpglaw.com>
**Sent:** Tuesday, February 7, 2023 4:06 AM
**To:** Jane Dearwester <jane@lpglaw.com>
**Subject:** Re: Update re Payroll

Hi Jane -

Paper checks were given out today, those out of the office will receive electronic transfers tomorrow.  You should see it between 10:00 am and noon Pacific.

For the remaining issues you raise, I think it is best that we discuss by phone.  What is a good time to speak tomorrow afternoon?

Thanks!


**The Litigation Practice Group PC**

**17542 E. 17th St., Ste 100**

**Tustin, CA 92780**

p: 949.715.0644

f:  949.315.4332

www.lpglaw.com



NOTICE: This email message (including any attachments) may contain material that is confidential and/or legally privileged. Unless you are the intended recipient or are authorized to receive information for the intended recipient, you may not use, copy, or disclose any part of this message. If you have received this message in error, please notify us and delete all copies of it. Thank you

EXHIBIT 22
Page 116

**From:** Jane Dearwester <jane@lpglaw.com>
**Sent:** Monday, February 6, 2023 4:09 PM
**To:** Admin <admin@lpglaw.com>
**Subject:** Re: Update re Payroll

Payroll for 2/3/23 has not been received by me or my staff. Please provide an update as soon as possible.

Sent from my iPhone

On Feb 5, 2023, at 9:43 AM, Jane Dearwester <jane@lpglaw.com> wrote:

Tony,

Thanks for clearing up the payroll issue.

I'm reaching out to you directly about this firm transition as you were the first person I spoke with at LPG, and you made me the offer of employment.  Can you shed some more light on this transition for the firm and (some of) our clients to Oakstone Law Group?  It would have been ideal for us as employees to know about this transition before a mass email was sent out to all of our clients.  I understand that sometimes timing isn't ideal in business.

From my reading of Jayde's email, it seems like you and Dan are phasing out of the business.  I want to take a moment to thank you both for the opportunity to join LPG.  Thank you for bringing me into the LPG fold and making me feel valued as an employee.  I sincerely wish you the best of luck with your future endeavors.  I'll send Dan a separate email thanking him and wishing him well.  It seems like the reason for the transition is the increasing volume of business – I know from our end in NC/KY, we are having lots of incoming cases daily.

I have lots of questions about how and when this transition will happen – and I acknowledge that I don't need to know to intricacies of the transition plan, but I do need to know the legalities of what's happening so I can adjust to make sure the firm is in compliance with NC/KY rules.  Is LPG dissolving as a legal entity?  Will my compensation and the terms of my employment contract with LPG be honored by Oakstone?  Also, most presently, I'm heading to Kentucky on Tuesday (2/7) for a legal conference and to look for office space.  Should I still do that?  Will those expenses be covered by the firm?  I would rather proceed with caution and understanding in light of a corporate transition than to forge ahead with a lack of clarity.  (For reference, KY rules require that a law firm has a brick & mortar office in the state – just like NC.)

I am a passionate consumer advocate and I feel like I'm just get started with this platform to have a nationwide reach to help debtors.  I have 20 years of experience as an attorney and litigator.  I would be interested in helping the firm grow and contributing in any way that I can to ensure its continued success.  I have managed my own private law practice before – and have supervised other attorneys and staff.  I think I am in a unique position to add value to the firm as it grows.  Please let me know if there is opportunity for me to grow into a managing attorney role with the new firm – or some other role that may need to be filled.  I am a stickler for ethical compliance – so that is another area where I could assist the firm from within to make sure that we are in legal compliance in all states.

I reached out to Jayde via text on Friday, but have not heard back from her.  I'm sure she is inundated with questions as well.  I'm also going to reach out to Kevin to ask the question about the expenses for

EXHIBIT 22
Page 117

the Kentucky trip – and hopefully I'll hear back from somebody tomorrow on that. I will plan to move forward with the Kentucky trip unless someone tells me specifically to stand down.

Sincerely,

*Jane Dearwester*
Attorney At Law
*(licensed in North Carolina and Kentucky)*

**60 N. Market St.**
**Suite 101**
**Asheville, NC 28801**

**Mobile: 828-301-3681**
**Main: 828-398-0057**
**Fax: 828-398-4103**
www.lpglaw.com

<image001.png>
NOTICE: This email message (including any attachments) may contain material that is confidential and/or legally privileged. Unless you are the intended recipient or are authorized to receive information for the intended recipient, you may not use, copy, or disclose any part of this message. If you have received this message in error, please notify us and delete all copies of it. Thank you

---

**From:** Admin <admin@lpglaw.com>
**Sent:** Friday, February 3, 2023 8:46 PM
**To:** HRBlastAll <HRBlastAll@lpglaw.com>
**Subject:** Update re Payroll

All -

I am writing to follow up regarding the email from earlier today. As you know, payroll did not process this morning due to an error with Paychex. Our goal was to send out payroll today using alternative means, but that was not completed in time for pay to be available today. Your pay will process on Monday, and an additional stiped for the delay in processing your payroll will also be sent separate from your pay. We apologize for this error and the inconvenience it has caused, and will make sure that pay processes on Monday.

Sincerely,

**The Litigation Practice Group PC**

**17542 E. 17th St., Ste 100**

**Tustin, CA 92780**

p: 949.715.0644

EXHIBIT 22
Page 118

f:  949.315.4332

www.lpglaw.com

<image001.png>
NOTICE: This email message (including any attachments) may contain material that is confidential and/or legally privileged. Unless you are the intended recipient or are authorized to receive information for the intended recipient, you may not use, copy, or disclose any part of this message. If you have received this message in error, please notify us and delete all copies of it. Thank you

EXHIBIT 22
Page 119

**EXHIBIT 23**

**Jane Dearwester**

| | |
|---|---|
| **From:** | Dan March |
| **Sent:** | Friday, March 3, 2023 10:40 AM |
| **To:** | HRBlastAll |
| **Subject:** | Payroll |
| | |
| **Follow Up Flag:** | Flag for follow up |
| **Flag Status:** | Flagged |

All -

I am writing to update you regarding payroll that is set for processing on Friday, March 3, 2023.  That payroll has again been delayed as we continue to struggle through our dispute with the payment processors that are holding client payments.  We have two active matters against these processors and had a contempt hearing earlier today.  We are at the tail end of the dispute and will have normal deposits resume this coming week. I know the past month has been terrible for all in dealing with delayed payroll processing.  The payroll that was set to process today, March 3, will now go out on Monday, March 6. The pay will be received during the day on March 6, prior to the close of business. I am again terribly sorry for this delay and the impact it has caused, and I can assure you that we have done all that we can.

Regards,
Daniel S. March

1

EXHIBIT 23
Page 121

# EXHIBIT 24

4/8/24, 9:46 AM                                                    Gmail - Ruling

 Gmail

Jane Dearwester <janedearwester19@gmail.com>

---

**Ruling**
2 messages

**Richard Meier** <richardmeier4@gmail.com>
To: "janedearwester19@gmail.com" <janedearwester19@gmail.com>

https://www.occourts.org/tentativerulings/rshermanrulings.htm

| 9 | **Validation Partners, LLC vs. The Litigation Practice Group PC 2022-01281911** | Plaintiff Validation Partners LLC's Motion to Appoint Receiver and Request for Preliminary Injunct court concludes that plaintiff has established that a receiver should be appointed, consistent with §564. Plaintiff has shown that it is a creditor of defendant The Litigation Practice Group PC, and property is in danger of being lost, removed or materially injured. Plaintiff also has shown that the receiver is necessary to preserve both defendant's property and plaintiff's rights. Byron Z. Mold the Receiver in this action. The court further orders the issuance of a preliminary injunction suc Litigation Practice Group PC must immediately cease all disbursements of funds from its bank ac make any asset transfers pending assumption of control by the Receiver. The required undertak §§567 and 529 is set at $10,000. |
| | | The Temporary Restraining Order which the court granted on December 21, 2022 is vacated. As Cause re Preliminary Injunction which the court issued on December 21, 2022, the court orders this action, or further court order, defendant The Litigation Practice Group PC may not sell any of Exhibit 21 of plaintiff's exhibits to third parties, and may not spend any amount of money that w having less than $4,481,960 cash on hand. |
| | | Intervenors Debt Validation Fund II, LLC, MC DVI Fund 1, LLC, and MC DVI Fund 2, LLC's Reques |
| | | Prospective Intervenor Stratcap Management, LLC's Motion to Intervene and Stay Action Pending Case is denied. Stratcap's proposed Complaint in Intervention doesn't even identify who is defe Stratcap shown that its proposed Complaint in Intervention satisfies any of the required criteria §§387(b)(1), (2) and (3). Plaintiff and Intervenors allege and have shown that Stratcap purport $40 million of The Litigation Practice Group's assets for $1, that The Litigation Practice Group ha 16,000 of its files to another law firm, Oakstone Law Group, and that Diab and The Litigation Pra Stratcap's primary owner and manager, Wesley Thomas, to file the Florida lawsuit which led to S stay of this action. Thus, it does not appear that Stratcap is either joining a plaintiff in claiming complaint, uniting with a defendant in resisting the claims of a plaintiff, or demanding anything a and a defendant, as required for intervention. |
| | | Defendants The Litigation Practice Group PC, Daniel March and Tony Diab's Ex Parte Application t 2023 Hearing Date is deemed moot by virtue of the continuance to March 10, 2023, and is order |
| | | A Case Management Conference is also set for today and will go forward. |
| | | Plaintiff is ordered to give notice of the rulings unless notice is waived. |

---

**Jane Dearwester** <janedearwester19@gmail.com>                           Fri, Mar 10, 2023 at 12:42 PM
To: Richard Meier <richardmeier4@gmail.com>

Thanks!!

[Quoted text hidden]

--
~ Jane Dearwester

EXHIBIT 24
Page 123

# EXHIBIT 25



David Kupetz (State Bar No. 120562)
david.kupetz@lockelord.com
LOCKE LORD LLP
300 S. Grand Avenue, Suite 2600
Los Angeles, CA 90071
Telephone: (213) 485-1500
Facsimile: (213) 485-1200

Shalom Jacob (*Pro Hac Vice* application forthcoming)
sjacob@lockelord.com
LOCKE LORD LLP
Brookfield Place
200 Vesey Street, 20th Floor
New York, NY 10281
Telephone: (212) 415-8600

Attorneys for Plaintiff
MARICH BEIN LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARICH BEIN LLC,<br><br>                    Plaintiff,<br><br>        vs.<br><br>THE LITIGATION PRACTICE GROUP, PC<br>and OAKSTONE LAW GROUP PC,<br><br>                    Defendants. | Case No.<br><br>**COMPLAINT FOR:**<br>**1. Breach of Contract;**<br>**2. Intentional Interference with**<br>**    Contractual Relations;**<br>**3. Conversion;**<br>**4. Avoidance and Recovery of**<br>**    Fraudulent Transfers;**<br>**5. Declaratory Relief; and**<br>**6. Temporary Restraining Order,**<br>**    and Preliminary and Permanent**<br>**    Injunctions**<br><br>**JURY TRIAL DEMANDED** |

**Locke Lord LLP**
300 S. Grand Avenue, Suite 2600
Los Angeles, CA 90071

1

EXHIBIT 25
Page 125

1    Plaintiff Marich Bein LLC ("**Plaintiff**"), demanding a jury trial for any issues

2 triable by a jury, alleges:

3                              **NATURE OF THE CASE**

4    1.    This is an action for damages and injunctive relief by which Plaintiff

5 seeks to enforce, and to enjoin defendants from interfering with, Plaintiff's lawful

6 exercise of rights and privileges granted to it by defendant The Litigation Practice

7 Group PC ("**LPG**").  LPG bills itself as a law firm that, among other things, assists

8 consumers who may be experiencing financial difficulties in obtaining debt relief.

9 LPG's clients ("**Clients**") enter legal services agreements pursuant to which they

10 authorize a series of monthly withdrawals to be made from their bank accounts.

11 Plaintiff, which is not a law firm, is in the business of servicing and purchasing

12 accounts receivable.

13    2.    This action arises from an ongoing scheme through which LPG and

14 defendant Oakstone Law Group, PC ("**Oakstone**"), both law firms under the direction

15 of a disbarred lawyer, Tony Diab ("**Diab**"), are attempting to avoid LPG's contractual

16 agreements with Plaintiff pursuant to which LPG: (a) assigned to Plaintiff the

17 exclusive right to service all of LPG's approximately 50,000 accounts receivable with

18 its Clients, including without limitation the right to withdraw monthly payments from

19 the Clients' bank accounts; and (b) assigned to Plaintiff, for value, the ownership of

20 15,000 to 20,000 of such accounts receivable.

21    3.    In furtherance of the scheme, on information and belief, LPG has

22 purported to, *inter alia*: (a) terminate contracts with at least 25,000 of its Clients; (b)

23 referred and transferred, for no or inadequate consideration, at least 15,000 of those

24 Clients to Oakstone (a newly organized law firm that is, on information and belief,

25 LPG's alter ego)[1]; (c) assisted Oakstone in entering into "new" contracts with the

26 Clients; (d) notified Plaintiff that Plaintiff's rights to the make withdrawals from the

27 _____

28 [1] On information and belief, LPG is referring and transferring other Clients to other
law firms.

2

**Locke Lord LLP**
300 S. Grand Avenue, Suite 2600
Los Angeles, CA 90071

EXHIBIT 25
Page 126

1  Clients' bank accounts has been terminated; (e) terminated Plaintiff's access to data

2  necessary to allow Plaintiff to fully exercise the rights granted to it, and to which data

3  Plaintiff is contractually entitled; and (f) disavowed LPG's agreements with Plaintiff.

4        4.    Oakstone has threatened to withdraw payments itself from Clients'

5  accounts, an action which, if carried out, would contravene Plaintiff's contractual

6  rights and result in double withdrawing from such accounts by Oakstone.  Such

7  actions would thus not only interfere with Plaintiff's ability to exercise the rights it

8  obtained from LPG but, of equal importance, would also impose hardships on the

9  Clients, many of whom are, as evidenced by their retention of LPG in the first

10  instance, already financially stressed.  In addition to the obvious deleterious financial

11  consequences, such double-withdrawals will also result in demands for refunds from

12  the Clients, the likely cancellation of their legal services agreements, and a withdrawal

13  of any authorization by them to withdraw funds from their bank accounts.

14        5.    Moreover, Oakstone has sent cease and desist letters to one or more

15  banks, notifying such banks of the above-described actions and demanding that such

16  banks cease and desist from processing debits on the Clients' bank *unless* those debits

17  have been initiated by Oakstone or others acting at Oakstone's direction.  Indeed, in at

18  least one instance, Oakstone has also filed a lawsuit against a bank, BankUnited, N.A.

19  ("**BankUnited**"), seeking temporary and permanent injunctive relief barring

20  BankUnited from processing withdrawals on the Clients' bank accounts other than

21  those consented to by Oakstone.  Plaintiff was not made a party to that suit, and the

22  same appears to reflect an effort by Oakstone to, in effect, adjudicate Plaintiff's rights

23  in and to the said accounts without providing any advance notice to Plaintiff, or any

24  opportunity to be heard, in opposition.

25        6.    The wrongful coordinated actions of LPG and Oakstone are causing

26  damage, including irreparable damage, to Plaintiff.  Plaintiff has no adequate remedy

27  at law by which it may obtain redress for the harm caused by LPG and Oakstone's

28  actions. Therefore, Plaintiff seeks recovery of damages and this Court's declaration of

**Locke Lord LLP**
300 S. Grand Avenue, Suite 2600
Los Angeles, CA  90071

3

EXHIBIT 25
Page 127

1  Plaintiff's contractual rights and entry of orders enjoining Defendants from interfering

2  with Plaintiff's exercise of such rights.

3  **PARTIES**

4       7.    Plaintiff is a limited liability company organized under the laws of the

5  state of New York.  Plaintiff's sole member is Hershy Deutsch.  He is a citizen and

6  resident of the state of New Jersey.  Plaintiff's principal place of business is located in

7  the state of New York.

8       8.    Defendant LPG is a corporation organized under the laws of the state of

9  California.  According to the records of the California Secretary of State, LPG's

10  principal place of business is located in Tustin, California.  Daniel S. March

11  ("**March**") is LPG's Director, CEO, CFO and Secretary.  LPG's website and its

12  agreements with Plaintiff further state that March is LPG's Managing Shareholder.

13       9.    Defendant Oakstone is a newly formed corporation organized under the

14  laws of the state of California.  Oakstone's initial filing with the California Secretary

15  of State was made on January 9, 2023.  Oakstone's principal place of business is in La

16  Jolla, California.

17       10.    On information and belief, at all times relevant to this Complaint, LPG

18  and Oakstone were co-conspirators, agents, servants, employees, alter egos,

19  successors-in-interest, subsidiaries, affiliated companies or corporations, and joint

20  ventures of each other, and were, as such, acting within the course, scope, and

21  authority of each other.  Further, on information and belief, each of LPG and

22  Oakstone acted in concert with, and with the consent of, each other, and each of them

23  ratified or agreed to accept the benefits of the conduct of the other.

24  **JURISDICTION AND VENUE**

25       11.    For purposes of 28 U.S.C. § 1332, Plaintiff is a citizen of the state of

26  New Jersey, and defendants are citizens of the state of California.  The matter in

27  controversy exceeds the sum of $75,000.00, exclusive of interest and costs.  This

28  Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a).

4

**Locke Lord LLP**
300 S. Grand Avenue, Suite 2600
Los Angeles, CA  90071

EXHIBIT 25
Page 128

12.     Venue is proper in this District pursuant to 28 U.S.C. § 1391.  A substantial part of the events or omissions giving rise to the claims stated herein occurred at LPG's office in Tustin, California, within this judicial district.

13.     Defendants, both California corporations with their principal places of business in such state, are subject to this Court's personal jurisdiction with respect to this action.

<div align="center">**STATEMENT OF FACTS**</div>

14.     LPG is a law firm that claims to specialize in resolution of consumer debt.  Although it claims otherwise, LPG is, in reality, run entirely by Diab, a former attorney who has been disbarred in two states following disciplinary proceedings for serious ethics violations, including stealing client funds and forging the signature of a judge.

15.     On information and belief, at times relevant to this complaint, LPG had more than 50,000 active client accounts nationwide.

16.     On or about September 18, 2022, Plaintiff and LPG entered into an *Assignment of Servicing Rights* ("***Assignment***"), pursuant to which LPG agreed, *inter alia*, as follows:

**Article I. ASSIGNMENT**

Section I.1  Assignment of Servicing Rights.  [LPG], by these presents does hereby presently,  unconditionally, absolutely and irrevocably assign, transfer, convey and set over to [Plaintiff] (it being intended by [LPG] that such assignments constitute present, absolute and unconditional assignments and not assignments for additional security only, but such assignment shall constitute security for [LPG]'s obligations to [Plaintiff] or its affiliates), all of [LPG]'s right, title and interest in and to the Servicing Rights, including, without limitation, any right of [LPG] or

**Locke Lord LLP**
300 S. Grand Avenue, Suite 2600
Los Angeles, CA 90071

<div align="center">5</div>

EXHIBIT 25
Page 129

1    any of its affiliates (whether such rights are currently

2    existing or arising in the future) to service collection of

3    subscription fees, return payment fees, or any other fee or

4    payment resulting from any Customer's engagement with

5    [LPG] or any of its affiliates, or give notices, sue for

6    payment under the Customer contracts or to take any action

7    at law or in equity relating to the Customer contracts.

8

9    **Article II.  SERVICING OF CONTRACTS**

10       Section I.2 [*sic*]  Appointment as Third-Party

11    Servicer. . . . [LPG] hereby retains [Plaintiff] to act as third-

12    party [Plaintiff] for the Receivables . . . .

13       Section I.3 [*sic*]  Servicing of Receivables.  . . . [LPG]

14    agrees to provide [Plaintiff] and its subcontractors with such

15    assistance in the servicing, collection and administration of

16    any Receivable as may be requested by [Plaintiff] from time

17    to time.

18       Section I.4 [*sic*]  Limited Power of Attorney.  [LPG]

19    hereby irrevocably appoints and empowers [Plaintiff] as

20    [LPG]'s true and lawful attorney-in-fact, with full power of

21    substitution, to endorse and promptly deposit on [LPG]'s

22    behalf any checks or other instruments made payable to

23    [LPG] and submitted by a Customer as payment on any

24    Receivable, and to take any other action relating to the

25    Receivables in [LPG]'s name and place that [Plaintiff]

26    deems advisable and consistent with the terms of this

27    Agreement.  This power of attorney shall be deemed to a

28    right coupled with an interest.

6

**Locke Lord LLP**
300 S. Grand Avenue, Suite 2600
Los Angeles, CA  90071

EXHIBIT 25
Page 130

1                            *            *            *

2        **ARTICLE III.  OBLIGATIONS OF MERCHANT**

3                Section III.1  Access to All Digital Records,

4        Databases, and Applications.  [LPG] shall provide [Plaintiff]

5        any information requested by [Plaintiff] with respect to its

6        Customers and the Customer contracts.  At all times,

7        [Plaintiff] must have unfettered access to all software

8        applications used by [LPG], including, but not limited to,

9        Debt Pay Pro, Snowflake, or any other databases used by

10       [LPG] in its ordinary course of business.

11                           *            *            *

12               Section III.3  No Impairment.  [LPG] will not take

13       any action (including placing or allowing placement of a lien

14       or security interest on any Purchased Receivable) or make

15       any omission that has, individually or in the aggregate, an

16       adverse effect on any Purchased Receivable or on

17       [Plaintiff]'s ability to collect on any Purchased Receivable.

18               Section III.4  Amounts Received.  . . . [LPG] shall not

19       in any way encourage or cause any proceeds to be paid,

20       processed, settled or delivered to any person or account

21       other than the [Plaintiff]'s account, and shall take all

22       affirmative steps at its expense and as necessary or

23       appropriate to prevent any such occurrence from recurring.

24       [LPG] is prohibited from instructing any Customer to pay

25       [LPG] or any other third party on a Receivable or otherwise

26       suggest that Customer may make a payment to [LPG] or any

27       other third party instead of paying [Plaintiff] to satisfy its

28       payment obligation.

7

**Locke Lord LLP**
300 S. Grand Avenue, Suite 2600
Los Angeles, CA  90071

EXHIBIT 25
Page 131

**Locke Lord LLP**
300 S. Grand Avenue, Suite 2600
Los Angeles, CA 90071

1              *              *              *

2    **ARTICLE VI.  MISCELLANEOUS**

3              Section I.7 [*sic*]  Term and Termination.  This

4    Assignment shall commence on [September 19, 2022] and

5    shall continue in full force and effect, until released by

6    [Plaintiff].  [LPG] may terminate this Assignment at any

7    time and for any reason provided that the total amount of

8    Purchased Receivables held by [Plaintiff] and its affiliates

9    are less than $1,000,000.00.[2]

10              *              *              *

11              Section VI.1[*sic*]  Exclusivity.  [LPG]understands and

12    agrees that the relationship set forth in this Assignment is

13    exclusive.  [LPG] forgoes any right to contract with other

14    parties for the same or similar services provided by

15    [Plaintiff] under this Assignment.

16   (Underscoring and bolding in original.)

17          17.    Since entering into the *Assignment*, Plaintiff has exercised the rights

18   granted to it therein and has complied with the terms thereof.

19          18.    In addition to the *Assignment*, on or about August 18, September 21,

20   October 6 and November 14, 2022, in return for the payment of amounts totaling in

21   excess of $10,000,000, LPG entered into *Accounts Receivable Purchase Agreements*

22   ("***Agreements***") pursuant to which LPG sold, assigned, transferred and delivered to

23   Plaintiff all of LPG's right, title and interest in and to certain of LPG's client accounts

24   ("**Purchased Accounts**"), totaling between 15,000 and 20,000 accounts.  Each of the

25   *Agreements* was executed on behalf of LPG by Daniel S. March as Managing

26   Shareholder and also by Diab.

27   _____

28   [2]  The total amount of Purchased Receivables now held by Plaintiff is in excess of
     $1,000,000.00.

8

EXHIBIT 25
Page 132

19.  In the *Agreements*, LPG warranted that:

A.  LPG was conveying to Plaintiff good, valid, transferable and marketable title to all of the Purchased Accounts, free and clear of all liens; and

B.  LPG's delivery of the Purchased Accounts to Plaintiff would not conflict with, result in any violation of, or default under, or give rise to a right of termination or modification of any obligation, or loss of any benefit, under any contract to which LPG is a party, including any assigned contract.

20.  In the *Agreements*, LPG further agreed:

A.  To indemnify and hold Plaintiff harmless against, *inter alia*, all claims, losses, liabilities, damages, deficiencies, diminutions in value, and costs sustained by Plaintiff as a result of, arising out of, or in connection with any inaccuracy in or breach of any representation or warranty or any breach or non-fulfillment of any obligation to be performed by LPG under its agreements with Plaintiff;

B.  The *Agreements* would be binding upon Plaintiff and Plaintiff's successors and permitted assigns;

C.  Neither the *Agreements* nor any rights or obligations of a party thereto shall be assigned, unless to an affiliate of the assigning party, without the prior written consent of the other party; and

D.  Irreparable damage would occur if any provision of the *Agreements* was not performed in accordance with the terms thereof and that the parties would be entitled to specific performance thereof, in addition to any other remedy to which they are entitled under the *Agreements*, at law or in equity.

9

EXHIBIT 25
Page 133

Locke Lord LLP
300 S. Grand Avenue, Suite 2600
Los Angeles, CA 90071

21.    In an abundance of caution, Plaintiff has perfected any security interests under its agreements with LPG by filing appropriate UCC financing statements. However, such perfection is unnecessary since, under the Agreements, LPG sold the Purchased Accounts to Plaintiff.

22.    Based on the foregoing agreements, and the promises, covenants, representations and warranties therein contained, and notwithstanding that the Purchased Accounts are Plaintiff's property, Plaintiff has the right to service all of LPG's accounts and make withdrawals from all of LPG's Clients.

**LPG and Oakstone Act To Contravene Plaintiff's Rights**

23.    For months after LPG's and Plaintiff's entry into the above described *Assignment* and *Agreements*, Plaintiff serviced the Clients' accounts, using data in LPG's software systems and processing withdrawals from the Clients' bank accounts, all in accordance with the parties' contractual arrangements and without objection from LPG.

24.    However, in recent weeks LPG and Oakstone have taken actions in derogation of Plaintiff's rights as aforesaid.

25.    On or about February 2, 2023, LPG implemented changes to its software systems so as to completely deny Plaintiff access thereto.  Notwithstanding Plaintiff's repeated protests about this breach of LPG's obligation to provide "unfettered access," LPG has not restored such access.  The lack of such access impairs Plaintiff's ability to accurately service the Clients' accounts.

26.    On or about February 6, 2023, Plaintiff received an unsigned email purporting to be from legal@lpglaw.com directing Plaintiff to cease and desist from processing payments on any of the Clients' accounts.  The email purports to disavow the *Assignment*, yet offers to discuss resolution of "this dispute."  *See* Exhibit A annexed hereto.

27.    On information and belief, at about the same time, most of LPG's employees were discharged from its employ, and some, including at least two lawyers,

**Locke Lord LLP**
300 S. Grand Avenue, Suite 2600
Los Angeles, CA  90071

10

EXHIBIT 25
Page 134

1    became employees of Oakstone, which had been formed only one month earlier.

2        28.    On February 10, 2023, Oakstone, through counsel, emailed Plaintiff a

3    copy of a cease and desist letter that such counsel had sent to BankUnited

4    ("**BankUnited Letter**").  *See* Exhibit B annexed hereto.  The *BankUnited Letter* states

5    that: (a) Oakstone has retained certain accounts from LPG and LPG has transferred its

6    practice to Oakstone; and (b) Oakstone terminated BankUnited's "relationship" with

7    those accounts on or about February 2, 2023, and has withdrawn any authorization to

8    process automatic withdrawals from any customer account.

9        29.    The *Assignment* prohibits LPG from taking the actions described in the

10    BankUnited Letter.

11        30.    The *BankUnited Letter* also enclosed a 300 page listing of clients, with

12    bank account numbers and bank routing numbers (which list is not included in Exhibit

13    B due to the sensitive nature of the information therein).  The list includes thousands

14    of accounts that are Purchased Accounts and, hence, Plaintiff's property.

15        31.    On February 16, 2023, Oakstone, through counsel, initiated an action (the

16    "**BankUnited Action**") against BankUnited in the District Court of Dallas County,

17    Texas, 192nd Judicial District, under Cause No. DC-23-02116, seeking, among other

18    things, a temporary restraining order and temporary and permanent injunctive relief

19    enjoining BankUnited from processing debits on the accounts on the list enclosed with

20    the *BankUnited Letter*.  A copy of Oakstone's petition is annexed hereto as Exhibit C

21    ("**Petition**").

22        32.    According to the *Petition*, on or about January 11, 2023, two days after

23    Oakstone was formed, an alleged secured creditor named PECC Corporation

24    ("**PECC**") exercised remedies under an alleged promissory note and security interest.

25    No detail was provided concerning the debt owed to PECC or the manner in which its

26    remedies were exercised.  The *Petition* further asserted that LPG terminated its

27    agreements with its clients, an action prohibited by the *Assignment*, and referred such

28    clients to Oakstone, which is described, notwithstanding that it only recently came

**Locke Lord LLP**
300 S. Grand Avenue, Suite 2600
Los Angeles, CA  90071

11

EXHIBIT 25
Page 135

1    into existence, as a consumer protection law firm capable of servicing 15,000

2    customers.  Oakstone claims to have entered new legal service agreements with the

3    15,000 clients and to have the exclusive authority to process payments from those

4    clients.

5        33.    Although there is no express statement in the *Petition* that BankUnited is

6    processing withdrawals for Plaintiff, it is clear that Oakstone and LPG believe that to

7    be the case.  Interestingly, however, and despite the fact that equitable relief sought in

8    the *Petition* would seriously impair, if not completely abrogate, Plaintiff's rights under

9    the aforesaid agreements, Oakstone failed to name Plaintiff in the *Petition*, thus

10    depriving Plaintiff with advance notice of its filing or a contemporaneous opportunity

11    to be heard in connection therewith.

12    **LPG and Oakstone are Alter Egos or Oakstone is a Mere Continuation of LPG**

13        34.    On information and belief, the LPG-Oakstone transaction was a sham

14    transaction, put together for no consideration between affiliated or alter ego parties,

15    for the sole purpose of attempting to divest Plaintiff of its exclusive rights to service

16    LPG's accounts and Plaintiff's ownership of the Purchased Accounts, accounts for

17    which Plaintiff paid in excess of $10,000,000.

18        35.    Prior to January 9, 2023, Oakstone did not exist.

19        36.    On information and belief, at the time that the LPG-Oakstone transaction

20    took place, allegedly on January 11, 2023, Oakstone had no ability to provide any

21    types of legal services to 15,000 clients, much less specialized consumer protection

22    legal services.

23        37.    On information and belief, much of LPG's staff, including at least two

24    lawyers, have been transferred to Oakstone.

25        38.    On information and belief, Diab manages Oakstone's financial affairs,

26    just as he has been doing for LPG.

27        39.    Although the California Secretary of State's records indicate that Daniel

28    S. March is the only officer of LPG, and the *Assignment* and *Agreements* were signed

**Locke Lord LLP**
300 S. Grand Avenue, Suite 2600
Los Angeles, CA  90071

12

EXHIBIT 25
Page 136

1   by March as "Managing Shareholder," Plaintiff's dealings with LPG have been with

2   Diab (excepting operations-related communications that have been with lower level

3   employees).

4       40.    From Plaintiff's recent communications with Diab, Plaintiff believes that

5   Diab directs Oakstone's operations.  Indeed, there may not be any other available

6   representative with whom an interested party can communicate.  Plaintiff's counsel

7   asked Oakstone's counsel for the name of an Oakstone representative, and counsel

8   professed not to recall the name of any such individual.  Further, Oakstone's articles

9   of incorporation identify CT Corporation System, not an individual, as Oakstone's

10   registered agent, and Oakstone has yet to file an initial statement of information with

11   the California Secretary of State.

12       41.    Additionally, until approximately one week ago, Oakstone appeared to

13   have only a single attorney, Jayde Trinh, a recent law school graduate and LPG

14   attorney whose name remained on LPG's website.

15       42.    As of February 19, 2023, Oakstone's website identified a single attorney,

16   Scott J. Eadie, as its "head attorney."  LPG's website also has a page describing Mr.

17   Eadie.  On information and belief, Mr. Eadie has become affiliated with LPG and

18   Oakstone only very recently.  On information and belief, for approximately 40 years

19   Mr. Eadie has practiced worker's compensation law at his own law firm, which is still

20   in operation. Mr. Eadie does not appear to have the experience needed to provide

21   consumer protection legal representation to 15,000 consumers located across the

22   United States, much less the background to handle such a firm's financial affairs.

23       43.    Plaintiff's investigation of this matter is incomplete and is continuing.

24   Plaintiff reserves the right to amend this Complaint to assert claims should

25   circumstances so warrant.

26

27

28

**Locke Lord LLP**
300 S. Grand Avenue, Suite 2600
Los Angeles, CA 90071

13

EXHIBIT 25
Page 137

**FIRST CLAIM FOR RELIEF**

**(Breach of Contract– Against both Defendants)**

44.     Plaintiff repeats and re-alleges each of the allegations set forth in paragraphs 1 through 43 hereof as if fully set forth herein

45.     Defendants, acting in concert and/or as alter egos, have breached the *Assignment* and the *Agreements* by engaging in the conduct described above and such additional claims as may hereafter be proven, including but not limited to: (a) denying Plaintiff unfettered access to LPG's software systems; (b) terminating legal services agreements with customers and inducing such customers to entering into new legal services agreements with Oakstone; (c) attempting to terminate Plaintiff's ability to make withdrawals from customer accounts; (d) causing withdrawals from customer accounts to be made for amounts for which only Plaintiff was authorized to withdraw; and (e) sending the *BankUnited Letter* and filing the *Petition* in an attempt to divert revenue from Plaintiff.

46.     As a result of this conduct, Plaintiff has been and will continue to be damaged.  While the full amount of Plaintiff's damages is presently unknown, Plaintiff is entitled to recover such sums, together with interest thereon at the maximum legal rate according to the proofs.

47.     Defendants, in engaging in the above-described conduct, are guilty of oppression, fraud and/or malice, and were acting with willful and conscious disregard of the rights of Plaintiff.  Plaintiff is therefore entitled to punitive damages against Defendants in an amount appropriate to properly punish those defendants for their conduct and to deter similar future conduct.

48.     Based on the foregoing, Plaintiff is also entitled to a temporary restraining order, and preliminary and permanent injunctions commanding Defendants to provide Plaintiff unfettered access to all of LPG's and Oakstone's software systems containing non-privileged client or customer data and restraining and enjoining Defendants, and anyone acting in concert with either of them, and all such parties'

**Locke Lord LLP**
300 S. Grand Avenue, Suite 2600
Los Angeles, CA  90071

14

EXHIBIT 25
Page 138

1    agents, servants, employees, and other persons or entities acting on their behalf, or

2    purportedly acting on their behalf, from any transfer of any customer and client

3    accounts, termination of any agreements with customers and clients, withdrawals from

4    any customer or client accounts, and from taking any actions that by design or effect

5    may dissuade or prevent any person from processing withdrawals submitted by or on

6    behalf of Plaintiff.

**SECOND CLAIM FOR RELIEF**

**(Intentional Interference with Contractual Relations - Against Oakstone)**

9    49.    Plaintiff repeats and re-alleges each of the allegations set forth in

10   paragraphs 1 through 48 hereof as if fully set forth herein.

11   50.    As alleged herein, Plaintiff had and has valid existing contracts with LPG

12   and has performed in accordance with such contracts.

13   51.    Oakstone, as part of its business relationship with LPG, knew of the

14   contracts between Plaintiff and LPG.

15   52.    Oakstone, with the intent of disrupting and/or destroying the contracts

16   between Plaintiff and LPG, engaged in the conduct described herein and such

17   additional conduct as may hereafter be proven, including but not limited to: (a)

18   participating in and assisting LPG in its alleged termination of legal services

19   agreements with customers and entering into new legal services agreements with

20   them; (b) causing withdrawals to be made from such customer accounts for amounts

21   which only Plaintiff was authorized to withdraw; (c) sending the *BankUnited Letter*

22   and filing the *Petition* in an attempt to diverting revenue from Plaintiff.

23   53.    Oakstone's conduct was willful and in bad faith and intended to disrupt

24   the performance of LPG's obligations under the contracts to prevent Plaintiff from

25   recovering the monies it is owed so that LPG and Oakstone could keep the revenue for

26   their own benefit.

27   54.    As a result of this conduct, Plaintiff has been and will continue to be

28   damaged. The full amount of Plaintiff's damages is presently unknown. Plaintiff is

15

**Locke Lord LLP**
300 S. Grand Avenue, Suite 2600
Los Angeles, CA  90071

EXHIBIT 25
Page 139

1 entitled to recover such sums, together with interest thereon at the maximum legal rate

2 according to the proofs.

3      55.    Oakstone, in engaging in the above-described conduct, is guilty of

4 oppression, fraud and/or malice, and was acting with willful and conscious disregard

5 of the rights of Plaintiff.  Plaintiff is therefore entitled to punitive damages against

6 Oakstone in an amount appropriate to properly punish such defendant for its conduct

7 and to deter similar future conduct.

8 <div align="center">**THIRD CLAIM FOR RELIEF**</div>

9 <div align="center">**(Conversion – Against both Defendants)**</div>

10      56.    Plaintiff repeats and re-alleges each of the allegations set forth in

11 paragraphs 1 through 55 hereof as if fully set forth herein.

12      57.    Defendants have intentionally and substantially interfered with Plaintiff's

13 property and rights without permission.

14      58.    Defendants without authority intentionally deprived Plaintiff of

15 possession and access to its personal property.

16      59.    Defendants have wrongfully exercised dominion over property of

17 Plaintiff.

18      60.    Defendants have assumed control over Plaintiff's property and have

19 precluded Plaintiff from access to Plaintiff's property.

20      61.    As a result of this conduct, Plaintiff has been and continues to be

21 damaged.  The full amount of Plaintiff's damages is presently unknown. Plaintiff is

22 entitled to recover such sums, together with interest thereon at the maximum legal rate

23 according to the proofs.

24 <div align="center">**FOURTH CLAIM FOR RELIEF**</div>

25 <div align="center">**(Avoidance and Recovery of Fraudulent Transfers – Against Oakstone)**</div>

26      62.    Plaintiff repeats and re-alleges each of the allegations set forth in

27 paragraphs 1 through 61 hereof as if fully set forth herein.

28      63.    Plaintiff is a creditor of LPG.

<div align="left">**Locke Lord LLP**
300 S. Grand Avenue, Suite 2600
Los Angeles, CA  90071</div>

<div align="center">16</div>

EXHIBIT 25
Page 140

1    64.    LPG transferred assets to Oakstone with actual intent to hinder, delay and

2    defraud its creditors.

3    65.    LPG transferred assets to Oakstone without receiving a reasonably

4    equivalent value in exchange for such transfer, and was engaged or about to engage in

5    a business or transaction for which the remaining assets or LPG were unreasonably

6    small in relation to the business or transaction, and/or intended to incur, or believed or

7    reasonably should have believed that it would incur, debts beyond LPG's ability to

8    pay as they became due.

9    66.    Plaintiff was a creditor of LPG before LPG transferred assets to

10   Oakstone.

11   67.    LPG transferred assets to Oakstone without receiving reasonably

12   equivalent value in exchange for the transfer and LPG was insolvent at the time of the

13   transfer or became insolvent as a result of the transfer.

14   68.    Plaintiff is entitled to avoidance of the transfer of LPG's assets to

15   Oakstone and recovery of the assets for the benefit of Plaintiff.

16                              **FIFTH CLAIM FOR RELIEF**

17                   **(Declaratory Relief – Against both Defendants)**

18   69.    Plaintiff repeats and re-alleges each of the allegations set forth in

19   paragraphs 1 through 68 hereof as if fully set forth herein.

20   70.    An actual conflict has arisen and now exists between Plaintiff and

21   Defendants concerning Plaintiff's contractual rights and Defendants' interference

22   with Plaintiff's rights.

23   71.    Plaintiff desires a judicial determination and declaration of the rights of

24   the parties.  Such a determination is appropriate at this time so that Plaintiff may

25   determine its rights and duties.

26   72.    Plaintiff seeks damages and other relief as prayed.

27

28

**Locke Lord LLP**
300 S. Grand Avenue, Suite 2600
Los Angeles, CA  90071

17

EXHIBIT 25
Page 141

**SIXTH CLAIM FOR RELIEF**

**(Temporary Restraining Order, and Preliminary and Permanent Injunctions –**

**Against Both Defendants)**

73.     Plaintiff repeats and re-alleges each of the allegations set forth in paragraphs 1 through 72 hereof as if fully set forth herein.

74.     Based on the foregoing, Plaintiff is also entitled to a temporary restraining order, and preliminary injunction and a permanent injunctions commanding Defendants to provide Plaintiff unfettered access to all of LPG's and Oakstone's software systems containing non-privileged client or customer data and restraining and enjoining Defendants, and anyone acting in concert with either of them, and all such parties' agents, servants, employees, and other persons or entities acting on their behalf, or purportedly acting on their behalf, from any transfer of any customer and client accounts, termination of any agreements with customers and clients, withdrawals from any customer or client accounts, and from taking any actions that by design or effect may dissuade or prevent any person from processing withdrawals submitted by or on behalf of Plaintiff.

75.     Plaintiff will be irreparably harmed if a temporary restraining order and the injunctions are not issued as set forth above.

76.     Plaintiff is likely to and will succeed on the merits of Plaintiff's claims in this action.

77.     The equities in this action favor the granting of injunctive relief in Plaintiff's favor and the injunction is in the public interest.

78.     Plaintiff has no adequate remedy at law as to future damages if the requested injunction is not issued.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1.     For judgment in favor of Plaintiff on all causes of action;

18

**Locke Lord LLP**
300 S. Grand Avenue, Suite 2600
Los Angeles, CA 90071

EXHIBIT 25
Page 142

2.    For the temporary restraining order and preliminary and permanent injunctive relief requested in this Complaint;

3.    For general damages, plus interest, according to the proofs at trial;

4.    For lost profits according to the proofs at trial;

5.    For punitive damages according to the proofs at trial;

6.    For reasonable attorneys' fees and costs incurred herein to the extent permitted by statute or contract;

7.    For prejudgment interest; and

For such other relief as the Court deems just and proper.

Dated:  February 24, 2023                Respectfully submitted,

LOCKE LORD LLP


By: _/s/ David Kupetz_____

David Kupetz

*Attorneys for Plaintiff MARICH BEIN LLC*

**Locke Lord LLP**
300 S. Grand Avenue, Suite 2600
Los Angeles, CA  90071

132011141v.1                19

EXHIBIT 25
Page 143

# EXHIBIT 26

OSTERGAR LATTIN JULANDER LLP
Treg A. Julander (State Bar No. 174759)
Allen C. Ostergar III (State Bar No. 166411)
9110 Irvine Center Drive
Irvine, CA  92618
Telephone:  949-305-4590
Facsimile:  949-305-4591

Attorney for Plaintiff
NAZ II HOLDING, LLC

## IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NAZ II HOLDING, LLC, a Nevada limited liability company,<br><br>          Plaintiff,<br><br>     vs.<br><br>THE LITIGATION PRACTICE GROUP PC; TONY DIAB; VALIDATION PARTNERS, LLC and DOES 1-10, inclusive,<br><br>          Defendants. | Case No.:  8:23-cv-00030<br><br>**COMPLAINT FOR:**<br><br>**1. INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS;**<br>**2. INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE;**<br>**3. UNFAIR COMPETITION IN VIOLATION OF CAL. BUS. & PROF. CODE §§ 17200, *ET SEQ.*;**<br>**4. CONVERSION**<br>**5. MONEY HAD AND RECEIVED**<br>**6. ACCOUNTS STATED**<br>**7. UNJUST ENRICHMENT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Naz II Holding, LLC ("Plaintiff"), demanding a jury trial for any issue triable by a jury, alleges:

### NATURE OF THE CASE

1.     This action arises from an ongoing scheme in which Defendant The Litigation Practice Group PC ("LPG"), under the direction of a disbarred and illegally practicing lawyer, Defendant Tony Diab, (collectively with DOES 1-10, the "LPG

EXHIBIT 26
Page 145

1    Defendants"), is misappropriating millions of dollars of investments Plaintiff made in
2    Defendants' debt resolution legal services business.

3        2.    Plaintiff is one of the investor-clients of Defendant Validation Partners,
4    LLC ("VP"). VP's main purpose is to raise capital for LPG's debt resolution practice.
5    To do so, VP acts as a factor: it purchases accounts receivable based on the legal fees
6    owed to LPG by its clients, who are generally individual consumers with significant
7    credit card or other consumer debt. In some instances, LPG directly assigns its
8    accounts receivable to VP. In other instances, LPG pays a portion of the fees from
9    each client account to "Marketing Affiliates" in exchange for the Marketing
10   Affiliates' services in identifying consumer clients for LPG to represent. The
11   Marketing Affiliates then assign to VP their rights to receive these payments from
12   LPG. In both instances, LPG is contractually obligated to pay the fees it receives
13   from its clients to VP.

14       3.    VP acquires the accounts receivable with funds solicited from investors
15   like Plaintiff. Plaintiff invested in VP through two separate agreements in 2021 and
16   2022. Under these agreements, VP is obligated to repay Plaintiff's principal plus a
17   return on investment out of payments it receives from LPG. As the LPG Defendants
18   know, if LPG does not pay VP, VP cannot pay Plaintiff.

19       4.    In or about June 2022, LPG, at the direction of Diab, abruptly stopped
20   paying VP. LPG was not unable to pay. Indeed, at least as recently as October 2022,
21   its revenue from fees paid by its clients was stable and substantially exceeded its
22   operating costs. Rather, LPG began rapidly diverting client-fee revenue and other
23   assets to third parties in what appears to be an effort by Diab to transfer LPG's tens
24   of thousands of revenue-generating client accounts to another entity that has no
25   obligations to VP or VP's investors, thus enabling Diab to expropriate the lion's share
26   of proceeds from LPG's lucrative debt resolution business.

27   / / /
28   / / /

<div align="center">-2-

COMPLAINT</div>

EXHIBIT 26
Page 146

## PARTIES

5.      Plaintiff Naz II Holding, LLC is a Nevada limited liability company with its principal place of business in Las Vegas, Nevada.  Plaintiff's sole member is the Naz II Family Trust, a trust organized under Nevada law.  The trustee of the Naz II Family Trust is Premier Trust, Inc., a Nevada corporation with headquarters in Las Vegas, Nevada.  Accordingly, Plaintiff is a citizen of Nevada.

6.      On information and belief, defendant Litigation Practice Group PC ("LPG") is a California professional corporation with its principal place of business in Tustin, California.  LPG is a law firm specializing in resolution of consumer debt. It claims it is an elite law firm dedicated to the practice of law.  In reality, LPG is run entirely by Tony Diab, a former attorney now disbarred in two states following disciplinary proceedings for serious ethics violations, including stealing client funds and forging the signature of a judge.  As alleged herein, the only known licensed attorney currently employed at LPG is nothing more than a figurehead who Diab impersonates to surreptitiously engage in the unauthorized practice of law.

7.      On information and belief, Defendant Tony Diab is an individual residing in Orange County, California.  Diab was disbarred from the practice of law in the state of California under Cal. Bar No. 277343 on January 10, 2020 for several ethics violations relating to Diab's fraudulent diversion a client's $375,000 settlement payment into his own personal banking account—a scheme that involved his forging the signatures of a judge in 2016.  Diab is also disbarred from the practice of law in Nevada as of January 14, 2019 for ethics violations related to the same incident under Nevada Bar No. 12954.

8.      On information and belief, Defendant Validation Partners, LLC ("VP") is a Florida limited liability company with its principal place of business in Florida. VP's members are Stratcap Management, LLC ("Stratcap"), a California/Wyoming limited liability company, and Goldtone Ventures, LLC ("Goldtone"), a Florida limited liability company.  Stratcap's members are Wes Thomas, a California

EXHIBIT 26
Page 147

1  resident, and BAE Enterprises, Inc., a Wyoming corporation with principal place of

2  business in Wyoming.  Goldtone's members are Overtone Ventures Florida, Inc., a

3  Florida corporation with principal place of business in Florida, Longclaw, Inc., a

4  Florida corporation with principal place of business in Florida, and California

5  residents Rodney Squires and Michael Loughton, who are natural persons.

6  Accordingly, VP is a citizen of California, Florida, and Wyoming.

7        9.    Plaintiff sues Defendants DOES 1 through 10 under fictitious names.

8  Their true names and capacities, whether individual, corporate, associate, or otherwise

9  are unknown to Plaintiff.  When Plaintiff ascertains their true names and capacities,

10  it will amend the Complaint to insert the true name and capacity of each fictitiously-

11  named defendant.  On information and belief, each fictitiously named defendant is

12  legally responsible in some manner for the occurrences alleged in this Complaint, and

13  those defendants directly and proximately caused Plaintiff's damages.

14        10.    On information and belief, at all times relevant to this Complaint, the

15  LPG Defendants, and each of them, were the co-conspirators, agents, servants,

16  employees, alter egos, successors-in-interest, subsidiaries, affiliated companies or

17  corporations, and joint ventures of the other LPG Defendants, and were, as such,

18  acting within the course, scope, and authority of each other LPG Defendant.  Plaintiff

19  further alleges on information and belief that each of the LPG Defendants acted in

20  concert with, and with the consent of, each of the other LPG Defendants, and that

21  each of the LPG Defendants ratified or agreed to accept the benefits of the conduct of

22  each of the LPG Defendants.

23  <strong><u>JURISDICTION AND VENUE</u></strong>

24        11.    The Court has jurisdiction over this matter based on diversity of

25  citizenship under 28 U.S.C. § 1332.  Plaintiff is a citizen of Nevada while

26  Defendants are citizens of California, Wyoming, and/or Florida.  The amount in

27  controversy, exclusive of interest and costs, exceeds the sum of $75,000.

28  / / /

-4-
COMPLAINT

EXHIBIT 26
Page 148

1       12.    The Court has personal jurisdiction over Defendants, as they are citizens of California.  Moreover, Defendants conduct significant business in California. LPG, which Diab controls, is based in Orange County.  VP exists for the sole purpose of financing LPG's activities, including in California.  VP also filed a lawsuit against LPG, Diab, and others on September 20, 2022 in California Superior Court for the County of Orange based on similar misconduct by LPG and Diab as alleged herein

13.    Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred at LPG's office in Tustin, California, within the boundaries of the Central District of California.

## FACTUAL ALLEGATIONS

### *LPG's Investment Structure*

14.    On information and belief, VP commenced business in 2021 with the primary purpose of providing financing for LPG's debt resolution business.

15.    On information and belief, LPG has traditionally obtained clients with the assistance of various Marketing Affiliates.  These Marketing Affiliates locate qualified consumers who have been the victim of predatory lending or who otherwise are subject to claims of sizeable debt that are not legally valid under applicable law.

16.    On information and belief, LPG takes on these consumers as clients and compensates the Marketing Affiliates for their services by paying them a portion of the fees LPG earns in the debt resolution process.

17.    On information and belief, LPG has approximately 50,000 active client accounts nationwide, although, as discussed further below, Diab is actively causing these accounts to be transferred to third party entities.

18.    Upon information and belief, VP finances the relationship between the Marketing Affiliates and LPG by providing factoring services to the Marketing Affiliates.  Specifically, VP purchases at discounted rates the Marketing Affiliates' accounts receivable owed to them by LPG.  In this way, the Marketing Affiliates

EXHIBIT 26
Page 149

1  assign to VP their rights to receive these payments from LPG.  On information and

2  belief, LPG acknowledged the assignment of these accounts receivable to VP and, for

3  a time, paid VP directly in accordance with the Marketing Affiliates' assignment of

4  the accounts receivable to VP.

5       19.    VP obtains the funds with which to finance LPG and the Marketing

6  Affiliates operation from investors such as Plaintiff.  VP then uses the payments from

7  LPG—ultimately based on fees paid by LPG's clients—to repay the investors'

8  principal plus a contractually agreed return.

9                           *__Plaintiff's First Investment__*

10      20.    On or around September 2021, VP's CEO, Russ Squires, and its one of

11  its managers, Gary DePue, approached Plaintiff's agent, Chris Frankian, on behalf of

12  VP to solicit Plaintiff's investment in Defendants' debt resolution business.  Squires

13  and DePue explained that the return on Plaintiff's investment would be based on a

14  portion of the fees generated by LPG's practice, the rights to which VP had acquired

15  or would acquire through factoring the Marketing Affiliates accounts receivable.

16  Squires and DePue told Frankian that the investments made by VP's investors in

17  LPG's debt resolution practice were performing well, and Plaintiff's investment

18  would result in a favorable return.   On October 4, 2021, in reliance on these

19  representations, Plaintiff agreed to invest in VP pursuant to the terms of a written

20  contract ("Agreement No. 1"), attached hereto as **Exhibit A**.

21      21.    Agreement No. 1 provides for Plaintiff to invest $2,000,000 with VP in

22  exchange for VP's obligation to repay Plaintiff's principal of $2,000,000 plus a 20

23  percent return over a series of 12 monthly payments, for a total of $2,400,000.

24  Accordingly, Plaintiff paid VP $2,000,000 by wire transfer on or about October 4,

25  2021.

26      22.    The LPG Defendants had actual knowledge and notice of Plaintiff's

27  investment under Agreement No. 1.  At the time of execution of Agreement No. 1,

28  Wes Thomas was both LPG's Chief Financial Officer, a close associate of Diab, and

1  a member of Stratcap, one of VP's owners.  Thomas was thus involved in, and

2  knowledgeable about, the activities of both companies.  In addition, Frankian

3  specifically told Thomas that Plaintiff would be investing in VP and LPG's business.

4      23.    The LPG Defendants also knew that VP's ability to repay Plaintiff

5  depended on  LPG properly remitting the fees received from its clients to VP in

6  accordance with the its obligations to Marketing Affiliates that had been assigned to

7  VP.  Indeed, on information and belief, LPG expressly recognized each assignment

8  and confirmed that VP was entitled to payment as a result.

9      24.    Plaintiff received a total of nine payments in accordance with the pay

10 schedule outlined in Agreement No. 1, with the first payment in October 2021 and the

11 last in June 2022.  These nine payments amounted to $2,034,000, leaving a shortfall

12 of $366,000.

13               ***Plaintiff's Second Investment***

14     25.    On or around March 2022, representatives of VP again approached

15 Frankian requesting that Plaintiff make a second investment into LPG's debt

16 resolution practice.  At that time, VP had not yet defaulted on its payments to Plaintiff

17 under Agreement No. 1.    However, Plaintiff was hesitant to make a second

18 investment.  To "sweeten the deal," VP told Frankian the terms of Plaintiff's second

19 investment would be more favorable.  On a phone call on or around February or March

20 2022, Squires informed Frankian that the terms of the second investment deal would

21 defer payment by 90 days, but would pay a greater return of 25 percent.

22     26.    In reliance on these representations, Plaintiff executed Agreement No. 2,

23 attached hereto as **Exhibit B** on or around March 9, 2022**.**  The overall structure of

24 Agreement No. 2 was substantially similar to Agreement No. 1, except that, consistent

25 with the above negotiations, VP's first payment was deferred 90 days and Plaintiff

26 received a contractual rate of return of 25 percent.  Plaintiff invested $2,500,000 and

27 was therefore owed a total of $3,125,000.

28 / / /

-7-
COMPLAINT

EXHIBIT 26
Page 151

27.    The LPG Defendants had actual knowledge of Plaintiff's investment under Agreement No. 2.  At the time of execution of Agreement No. 2, Thomas was both LPG's CFO, a close associate of Diab, and a member of Stratcap, one of VP's owners.  Thomas was thus involved in, and knowledgeable about, the activities of both companies.  In addition, Frankian specifically told Thomas that Plaintiff would be investing in VP and LPG's business.

28.    The LPG Defendants also knew that VP's ability to repay Plaintiff depended on  LPG properly remitting the fees received from its clients to VP in accordance with the its obligations to Marketing Affiliates that had been assigned to VP.  Indeed, on information and belief, LPG expressly recognized each assignment and confirmed that VP was entitled to payment as a result.

29.     Plaintiff received a single payment of $300,000 under Agreement No. 2 on June 22, 2022, but no further payments since, leaving a deficit of $2,825,000.

30.    In sum, as of the date of filing of this Complaint, Plaintiff is still owed $366,000 plus interest under Agreement No. 1 and $2,825,000 plus interest under Agreement No. 2, for a total outstanding balance of $3,191,000 plus interest.

### *LPG's Assurances and Nonpayment*

31.    On or around August 3, 2022, Thomas informed Frankian that LPG had stopped remitting the funds to VP needed to pay Plaintiff under the Agreements.

32.    On or around this time, Russ Squires also informed Frankian that Diab had gone "rogue," and despite LPG continuing to collect revenue from tens of thousands of client accounts, Diab was refusing to remit the funds to VP as required under VP's acquisition of the Marketing Affiliates' rights to receive a portion of the fees paid to LPG.  Squires specifically told Frankian that Diab had personal and executive control over the revenue received by LPG and Diab had unilaterally cut off any and all payments due to VP.  Squires told Frankian, and Thomas confirmed, that Diab "ran" LPG, including controlling LPG's trust and bank accounts, despite having been disbarred in California and Nevada for misappropriating client funds and

EXHIBIT 26
Page 152

1  associated ethical violations.

2      33.    Throughout August 2022, Frankian and Thomas continued to
3  communicate regarding LPG's failure to pay VP and LPG's cause of VP's default
4  under the Agreements between VP and Plaintiff.  Thomas promised that LPG would
5  soon resume making payments directly to Plaintiff, even requesting Plaintiff's wire
6  transfer information to facilitate such payments.    But after more time passed and
7  Plaintiff had still not received any further payments under either Agreement, Thomas
8  told Frankian that "Tony [Diab] was supposed to send it [the money]," and "I can't
9  control Tony."

10      34.    Frankian also interacted directly with Diab on behalf of Plaintiff between
11  August and October 2022.  On or about August 22, 2022, Diab promised Frankian
12  that LPG would "probably send [Plaintiff] $50,000 every couple of days" and again
13  requested that Frankian send the wire transfer instructions to Thomas so Diab could
14  pay Plaintiff directly for the outstanding amounts under Agreement Nos. 1 and 2.
15  Plaintiff never received any payments as Diab promised.    In truth, Diab was
16  misleading Plaintiff.  Diab had no intention to pay Plaintiff, VP, or its investors.
17  Instead, Diab had decided to keep the revenue due to VP and Plaintiff for his own
18  personal benefit, to fund his other ventures, and make payments to his friends and
19  business associates.

20      35.    On information and belief, LPG, under Diab's direction, is intentionally
21  and maliciously withholding money due and owing to VP and Plaintiff.    On
22  information and belief, LPG continues to receive a substantial stream of revenue  in
23  the form of fees from tens of thousands of client accounts.  A substantial portion of
24  this revenue was assigned to VP and comprises the source of funds upon which VP
25  depends to pay its investors, including Plaintiff, as Defendants know.

26      36.    On information and belief, Diab is in the process of misappropriating and
27  diverting the funds LPG owes to VP and Plaintiff for his own personal use and to
28  shield them from LPG's creditors, including using the funds to directly purchase

EXHIBIT 26
Page 153

1  additional client accounts.  On information and belief, one of Diab's objectives
2  appears to be to transfer LPG's client accounts to a new law firm that has no
3  obligations to VP or Plaintiff.

4      37.    As a consequence of LPG's refusal to pay VP and Diab's unlawful
5  diversion of the funds it owes to VP and Plaintiff, VP cannot pay Plaintiff and is
6  therefore in breach of its obligations to Plaintiff under the Agreements.

7                        ***Tony Diab's Role at LPG***

8      38.    Tony Diab was once a licensed attorney in the states of California and
9  Nevada.  Diab was disbarred from the practice of law in Nevada on January 14, 2019
10 for ethics violations relating to stealing large sums of client funds.  Diab was disbarred
11 from the practice of law in California on January 10, 2020 for several ethics
12 violations, including for fraudulently diversion of a client's $375,000 settlement
13 payment into his own personal banking account and forging the signatures of a judge
14 in 2016.  Since then, Diab has not been licensed to practice law in Nevada, California,
15 or in any state in the United States.

16     39.    On information and belief, Diab practiced law at his firm, Diab Law in
17 Newport Beach, California prior to and leading up to his disbarment.  On information
18 and belief, Diab's debt resolution practice commenced at Diab Law.  Upon
19 information and belief, Diab founded the LPG law firm in California one month after
20 his disbarment in Nevada.  Diab then transferred his debt resolution practice to LPG.

21     40.    On information and belief, at LPG's inception, the President and
22 Secretary of LPG were listed as John Thompson and Rosa Bianca Loli, respectively.
23 Plaintiff is informed and believes, and on that basis alleges, that neither Thompson
24 nor Loli were ever attorneys licensed to practice law in California or any other U.S.
25 state.

26     41.    At some point after LPG's inception, attorney Daniel S. March
27 assumed the roles of President and Secretary of LPG.  March is licensed to practice
28 law in California, but his  attorney profile on the California State Bar website shows

<div align="center">-10-</div>
<div align="center">COMPLAINT</div>

EXHIBIT 26
Page 154

he was subject to disciplinary action and suspension in 2008 for willful violation of the Rules of Professional Conduct related to his handling of client funds.  Plaintiff alleges that March has, and has continued to, practice law through a law firm named Law Office of Daniel S. March in Tustin, California. As of January 4, 2023, March still lists this firm as his employer with the State Bar of California, although LPG's website lists March as its "Managing Shareholder."

42.    Although March appears to be the only licensed attorney employed at LPG, on information and belief, he does not exercise or retain control over the law firm, its client trust accounts, its finances, or any business decisions of LPG, including its means of practicing law and all other aspects of the firm's business operations.

43.    On information and belief, March is merely a figurehead used by LPG to conceal the fact that a disbarred attorney—Diab—exercises complete and exclusive control over the firm's finances, IOLTA client trust account, operations, and practice of law.  On information and belief, March has permitted Diab to use his name and bar license as Diab deems fit, including signing March's signature on contracts on behalf of LPG, communicating with third parties—including Plaintiff—on LPG's behalf, and making financial decisions regarding client funds.  To hide his unlawful practice of law, Diab communicates with third parties and acts on LPG's behalf under the label "Admin" and using the email address "admin@lpglaw.com."  For example, the primary DocuSign signatory used by LPG to execute contracts goes to "admin@lpglaw.com," an e-mail account used and controlled by Diab, through which Diab signs contracts as March.

44.    On information and belief, Diab runs a substantial portion of the business operations and the practice of law through various intermediaries in the firm.  The vast majority of LPG's debt resolution work occurs without litigation, i.e., very few of LPG's clients actually end up in court.  This pre-litigation debt resolution work is almost entirely done in California by a large team of unlicensed staff.  On information

EXHIBIT 26
Page 155

and belief, neither Diab nor LPG's staff is supervised, managed, controlled, or directed by a licensed attorney, and is instead supervised, managed, controlled, and directed by Diab.  March has abdicated all responsibility for managing LPG and effectively exercises none of the traditional functions a managing partner exercises over a law firm.

45.    On information and belief, Diab treated himself as a 1099 attorney for a portion of the time after his disbarment, issuing direct payments to himself from July of 2019 through March of 2020 for "Client attorney fees" in a total amount of at least $445,000.

### *Tony Diab's Control and Diversion of LPG's Funds*

46.    On information and belief, since June 2022, the LPG Defendants intentionally have diverted revenue owned to Plaintiff and VP, with the knowledge and intention of forcing VP to default on its obligation to pay Plaintiff under the Agreements.

47.    On information and belief, Diab himself is in complete control over the finances of LPG, including LPG's bank accounts and IOLTA client trust account. These accounts receive and hold the client fee revenue assigned to VP by way of its factoring of the Marketing Affiliates' accounts receivable.

48.    Diab has repeatedly and continuously mispresented the status of LPG's finances to Plaintiff and VP to promote the falsehood that LPG lacks the funds to pay the amounts Plaintiff is owed under the Agreements.  In truth, LPG continues to receive substantial revenue from the client fees to which Plaintiff and VP have acquired the rights. Diab has intentionally and unlawfully diverted those funds to business associates and third-party entities he controls.  For example, on information and belief, between July and October 2022, Diab personally authorized LPG to pay more than $1,000,000 to marketing/lead generation firms, at least one of which Diab partially owns, which is inconsistent with LPG's business model of obtaining client accounts through its Marketing Affiliates in exchange for assignments of a share of

EXHIBIT 26
Page 156

fees generated by such accounts.

49.    In addition, on information and belief, the LPG Defendants have spent large sums on buying assets for LPG rather than paying monies owed to VP and its investors.  Specifically, LPG spent over $6 million to directly purchase new client accounts between July and October 2022.

50.    On information and belief, Diab also appears to be rapidly transferring LPG's fee-generating client accounts—many of which had already been assigned to VP—to a third-party entity called Teracel.  On information and belief, LPG did not receive any money in exchange for these accounts.

51.    Diab is thus on course to drain LPG of its assets.  If Diab's looting scheme is permitted to continue, LPG will become unable to repay VP and Plaintiff, while Diab continues LPG's debt resolution practice through another entity that has no obligations to VP or Plaintiff.

### FIRST CAUSE OF ACTION

**Breach of Contract – Agreement No. 1**

**(Against VP)**

52.    Plaintiff incorporates by reference as though fully set forth herein all preceding paragraphs of this Complaint.

53.    Plaintiff and VP entered into Agreement No. 1 on or about October 4, 2021 (attached hereto as **Exhibit A**).  According to the written contract, Plaintiff agreed to pay VP $2,000,000 and VP agreed to repay this sum plus 20 percent interest for a total of $2,400,000 over twelve monthly payments.

54.    Plaintiff paid VP the $2,000,000 required under Agreement No. 1 by wire transfer on or about October 4, 2021.

55.    VP made payments to Plaintiff through June 2022 for a total of $2,034,000, but breached Agreement No. 1 by failing to pay the remaining $366,000.  As VP's CEO, Russ Squires, has represented, VP is unable to pay Plaintiff because the funds for repayment of VP's investors consist of fees for client services that LPG

EXHIBIT 26
Page 157

is obligated to pay to VP, which LPG refuses to do.    VP has thus repudiated and anticipatorily breached Agreement No. 1 by announcing its inability to perform under that agreement.

56.    As a consequence of VP's breach of Agreement No. 1, Plaintiff has been damaged in the amount of $366,000 plus interest.

## SECOND CAUSE OF ACTION

### Breach of Contract – Agreement No. 2

### (Against VP)

57.    Plaintiff incorporates by reference as though fully set forth herein all preceding paragraphs of this Complaint.

58.    Plaintiff and VP entered into Agreement No. 2 on or about March 9, 2022 (attached hereto as **Exhibit B**).  According to the written contract, Plaintiff agreed to pay VP $2,500,000 and VP agreed to repay this sum plus 25 percent interest for a total of $3,125,000 over twelve monthly payments following a three-month deferral of VP's repayment obligation.

59.    Plaintiff paid VP the $2,500,000 required under Agreement No. 2 by wire transfer on or about March 11, 2022.

60.    VP made a single payment of $300,000 to Plaintiff in June 2022, but has failed to pay Plaintiff the remaining $2,825,000 it owes under Agreement No. 2.  As Squires has represented, VP is unable to pay Plaintiff because the funds for repayment of VP's investors consist of fees for client services that LPG is obligated to pay to VP, which LPG refuses to do.  VP has thus repudiated and anticipatorily breached Agreement No. 2 by announcing its inability to perform under that agreement.

61.    As a consequence of VP's breach of Agreement No. 2, Plaintiff has been damaged in the amount of $2,825,000 plus interest.

-14-
COMPLAINT

EXHIBIT 26
Page 158

## THIRD CAUSE OF ACTION

### Intentional Interference with Contractual Relations

### (Against LPG Defendants)

62.     Plaintiff incorporates by reference as though fully set forth herein all preceding paragraphs of this Complaint.

63.     As alleged herein, Plaintiff has and had valid existing contracts with VP—namely, Agreement No. 1 and Agreement No. 2—and substantially performed its obligations thereunder.

64.     LPG Defendants, as part of their business relationship with VP and investors like Plaintiff, knew about the contracts between VP and Plaintiff.

65.     LPG Defendants, with the intent of disrupting and/or destroying the contracts between Plaintiff and VP, engaged in the conduct described herein, including but not limited to: (a) ceasing payments to VP despite having the funds to make timely payments; (b) misrepresenting LPG's inability to make payments to VP in order for VP to perform on the contracts with Plaintiff; (c) diverting the revenue owed to VP and Plaintiff away from LPG and into Diab's personal and/or unauthorized endeavors; and (d) transferring funds and fee-generating accounts out of LPG to shield them from LPG's creditors.

66.     LPG Defendants' conduct was willful and in bad faith and intended to disrupt the performance of VP's obligations under the Agreements to prevent Plaintiff from recovering the monies it is owed so that LPG and Diab could keep the revenue for their own personal benefit.

67.     As a result of this conduct, Plaintiff has been and will continue to be damaged.  The full amount of Plaintiff's damages is presently unknown but is at least $3,191,000.  Plaintiff is entitled to recover such sums, together with interest thereon at the maximum legal rate according to proof.

/ / /

/ / /

-15-
COMPLAINT

EXHIBIT 26
Page 159

68.     LPG Defendants, in engaging in the above-described conduct, are guilty of oppression, fraud and/or malice, and were acting with willful and conscious disregard of the rights of Plaintiff.  Plaintiff is therefore entitled to punitive damages against LPG Defendants in an amount appropriate to properly punish those defendants for their conduct and to deter similar future conduct.

## FOURTH CAUSE OF ACTION

**(Intentional Interference with Prospective Economic Advantage)**

**(Against LPG Defendants)**

69.     Plaintiff incorporates by reference as though fully set forth herein all preceding paragraphs of this Complaint.

70.     Plaintiff has current and prospective economic interests with its current business partner VP through the Agreements executed between Plaintiff and VP between October 2021 and March 2022.

71.     LPG Defendants knew of this existing and prospective economic relationship and of the future economic benefit and advantage to Plaintiff from this relationship.

72.     LPG Defendants conspired to and intentionally engaged in unlawful conduct designed to interfere with and disrupt Plaintiff's business relationships and prospective economic advantage with its business partner VP, as alleged in this Complaint.  Such conduct includes, among other things: (a) diverting funds generated by Plaintiff's accounts receivable away from VP to prevent VP from performing on the contracts between Plaintiff and VP; (b) deceiving Plaintiff and VP about LPG's financial status and the revenue generated by the accounts receivable owned by Plaintiff and VP; (c) intentionally diverting revenue LPG owes to VP and Plaintiff; and (d) transferring funds and fee-generating accounts out of LPG to shield them from LPG's creditors.

73.     As a direct and proximate result of LPG Defendants' unlawful conduct, LPG Defendants interfered with and disrupted Plaintiff's relationship with its existing

EXHIBIT 26
Page 160

1  business partner, VP, and Plaintiff lost the full economic benefit and advantage
2  reasonably expected from the relationship.

3      74.    As a further direct and proximate result of LPG Defendants' conduct,
4  Plaintiff has been and will continue to be damaged.  The full amount of Plaintiff's
5  damages is presently unknown but is at least $3,191,000.  Plaintiff is entitled to
6  recover such sums, together with interest thereon at the maximum legal rate according
7  to proof.

8      75.    LPG Defendants' acts and omissions were intentional, malicious and
9  oppressive, and they were done with the intent and design to damage Plaintiff.
10  Plaintiff is entitled, therefore, to recover punitive damages, in an amount to be
11  determined at the time of trial.

12  **<u>FIFTH CAUSE OF ACTION</u>**

13  **(Unfair Competition in Violation of Cal. Bus. & Prof. Code §§ 17200, *et seq.*)**

14  **(Against LPG Defendants)**

15      76.    Plaintiff incorporates by reference as though fully set forth herein all
16  preceding paragraphs of this Complaint.

17      77.    As alleged in this Complaint, LPG Defendants have engaged in a variety
18  of conduct directed toward Plaintiff that constitutes unlawful, unfair, and fraudulent
19  business practices in violation of California Business and Professions Code section
20  17200, including without limitation: (a) fraudulent transfer of funds owed to Plaintiff
21  and VP in an effort to prevent Plaintiff and VP from collecting the money owed to
22  them and to establish a new debt resolution practice based on LPG's assets, including
23  the right to collect fees in connection with client accounts that have been assigned in
24  whole or in part to Marketing Affiliates and/or VP, but lacking LPG's liabilities; (b)
25  engaging in the unauthorized practice of law; (c) unlawfully using Plaintiff's assets
26  for LPG Defendants' benefit; and (d) interfering in Plaintiff's contractual relations
27  and prospective economic advantage.

28

-17-
COMPLAINT

EXHIBIT 26
Page 161

78.     LPG Defendants took the actions alleged in this Complaint with the intent to injure Plaintiff, to gain an unfair competitive advantage, and to diminish competition.

79.     LPG Defendants have profited and will, in the future, profit unjustly from their unfair business practices.  Accordingly, pursuant to Business and Professions Code section 17203, Plaintiff seeks an award of restitution and disgorgement.

80.     As a proximate result of LPG Defendants' conduct, Plaintiff has been and will continue to be damaged.  Unless enjoined by this Court, LPG Defendants' unlawful competition has and will continue to cause great and irreparable injury to Plaintiff.  Plaintiff has no other adequate remedy at law for such acts and threatened acts.  Plaintiff therefore requests, pursuant to Business and Professions Code section 17203, that during the pendency of this action, this Court issue a preliminary injunction, and that after trial, this Court issue a permanent injunction, restraining and enjoining LPG Defendants and their agents, employees, attorneys and representatives, and anyone acting at their direction, from engaging in the unlawful, unfair, and fraudulent business practice alleged herein.

### SIXTH CAUSE OF ACTION

#### (Conversion)

#### (Against LPG Defendants)

81.     Plaintiff incorporates by reference as though fully set forth herein all preceding paragraphs of this Complaint.

82.     LPG Defendants wrongfully converted Plaintiff's monies to their own use without right or authorization.  Plaintiff had a right to possession over these monies.

83.     Plaintiff was damaged in amounts to be proven at trial.

EXHIBIT 26
Page 162

84. LPG Defendants have acted with malice, fraud and oppression, and an award of punitive damages in a sum according to proof at trial is justified, warranted and appropriate.

### SEVENTH CAUSE OF ACTION

**(Money Had and Received)**

**(Against LPG Defendants)**

85. Plaintiff incorporates by reference as though fully set forth herein all preceding paragraphs of this Complaint.

86. Defendants received money that was intended to be used for the benefit of Plaintiff.

87. That money was not in fact used for the benefit of Plaintiff.

88. Defendants have not given the money to Plaintiff.

89. LPG owes Plaintiff money in amounts to be proven at trial, plus pre-judgment and post-judgment interest.

### EIGHTH CAUSE OF ACTION

**(Accounts Stated)**

**(Against LPG Defendants)**

90. Plaintiff incorporates by reference as though fully set forth herein all preceding paragraphs of this Complaint.

91. LPG Defendants owed Plaintiff money from previous financial transactions.

92. Plaintiff and LPG Defendants, by words and/or conduct, agreed that the amounts that Plaintiff claimed to be due from LPG was the correct amount owed.

93. LPG Defendants, by words and/or conduct, promised to pay the stated amounts to Plaintiff.

94. LPG Defendants have not paid Plaintiff all of the amounts owed under these accounts.

EXHIBIT 26
Page 163



95.    LPG  Defendants owe Plaintiff money in amounts to be proven at trial, plus pre-judgment and post-judgment interest.

## NINTH CAUSE OF ACTION

### (Unjust Enrichment)

### (Against LPG Defendants)

96.    Plaintiff incorporates by reference as though fully set forth herein all preceding paragraphs of this Complaint.

97.    LPG Defendants were wrongfully and unjustly enriched by the receipt of Plaintiff's money, which they continue to retain to the detriment of Plaintiff.

98.    Plaintiff is entitled to restitution and/or the imposition of a constructive trust to the monies wrongfully withheld by LPG Defendants.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

Plaintiff Naz II Holdings, LLC prays for judgment against Defendants as follows:

1.    For judgment in favor of Plaintiff on all causes of action;

2.    For the temporary and permanent injunctive relief requested in this Complaint;

3.    For general damages, plus interest, according to proof at trial;

4.    For lost profits according to proof at trial;

5.    For restitution and disgorgement of all profits in an amount sufficient to force Defendants to disgorge all ill-gotten gains;

6.    For treble damages;

7.    For punitive damages according to proof at trial;

8.    For reasonable attorneys' fees and costs incurred herein to the extent permitted by statute or contract;

/ / /

-20-
COMPLAINT

EXHIBIT 26
Page 164

9.    For prejudgment interest; and

10.    For such other relief as the Court deems just and proper.

Dated:  January 6, 2023                    OSTERGAR LATTIN JULANDER LLP


By: _Treg Julander_____
        Treg A. Julander
        Attorney for Plaintiff NAZ II
        HOLDING, LLC

-21-
COMPLAINT

EXHIBIT 26
Page 165

**EXHIBIT 27**



Jane Dearwester
jane@lpglaw.com

March 10, 2023

Daniel S. March
The Litigation Practice Group, PC
17542 E. 17th St., Ste. 100
Tustin, CA 92780

> RE:    Resignation

Dear Mr. March,

It is with great disappointment that I tender my resignation as the managing attorney of
the North Carolina and Kentucky offices of The Litigation Practice Group, PC.  Due to
LPG's various breaches of the terms of my employment contract this notice is effective
immediately.

Please immediately cease and desist using my signature on new enrollment
agreements and remove my photograph and contact information from the law firm
website.

I am drafting letters to send to all North Carolina and Kentucky clients per the respective
State Bar rules regarding their choice of legal representation moving forward.

Sincerely,

Jane Dearwester

EXHIBIT 27
Page 167

**EXHIBIT 28**

**Jane Dearwester**

| | |
|---|---|
| **From:** | Admin |
| **Sent:** | Tuesday, December 20, 2022 4:27 PM |
| **To:** | Jane Dearwester; Jayde Trinh |
| **Subject:** | Re: IMPT: Urgent action for LPG |

Please ignore, this is a disgruntled former vendor, we will handle.

Thanks!

**The Litigation Practice Group PC**
**17542 E. 17th St., Ste 100**
**Tustin, CA 92780**
p: 949.715.0644
f:  949.315.4332
www.lpglaw.com



NOTICE: This email message (including any attachments) may contain material that is confidential and/or legally privileged. Unless you are the intended recipient or are authorized to receive information for the intended recipient, you may not use, copy, or disclose any part of this message. If you have received this message in error, please notify us and delete all copies of it. Thank you

**From:** Jane Dearwester <jane@lpglaw.com>
**Sent:** Tuesday, December 20, 2022 11:28 AM
**To:** Admin <admin@lpglaw.com>; Jayde Trinh <Jayde@lpglaw.com>
**Subject:** FW: IMPT: Urgent action for LPG

Did y'all also get this email?  WTF????

**From:** Derek Gallimore <derek@outsourceaccelerator.com>
**Sent:** Tuesday, December 20, 2022 4:59 AM
**Subject:** IMPT: Urgent action for LPG

Hi,

This is a highly important and urgent matter.

**LPG owes $247,591.48 to 138 staff working for LPG. This has been overdue since 21 November 2022.**

**LPG falsified JP Morgan docs confirming payment had been made on 2 Dec. See attached PDF here.**

LPG is currently facing 11 lawsuits.  We are contacting all parties involved and sharing this information. Equally, LPG faces a barrage of consumer complaints, from BBB, and many others.

1

EXHIBIT 28
Page 169

Daniel S March, the stated CEO, and CFO has previously been suspended from practicing law for previous improper practice. Daniel S March and Wesley Thomas, are leaders of LPG, and are involved in the financial decisions of the company.

The staff work via Outsource Accelerator, an outsourcing staff supplier based in the Philippines (HQ in Hong Kong). The staff were given no notice of termination by LPG.  They were performing well.  This happened ten days before Christmas.  Outsource Accelerator is left picking up the pieces.

**See the growing dossier:**
https://docs.google.com/document/d/1s0ckF4Ty9NwvPb7d9zfbdiEGjfe6PUwJ-hP0kt8uRBM/edit?usp=sharing

**Full payment required now:**
Pay this final invoice - $247,591.48 by 29 Dec.  This will not cease until payment is made.

--
Regards,

Derek Gallimore



  

[About Outsource Accelerator]   [About Derek]   [How we help]

--
Regards,

Derek Gallimore



**Web:** www.outsourceaccelerator.com
**Phils:** +63 (0) 956 891 6280
**UK:** +44 (0) 778 971 1197
**Linked In:** Derek Gallimore

  

[About Outsource Accelerator]   [About Derek]   [How we help]

EXHIBIT 28
Page 170

# EXHIBIT 29

**Jane Dearwester**

| | |
|---|---|
| **From:** | Jane Dearwester |
| **Sent:** | Monday, December 12, 2022 1:12 PM |
| **To:** | Accounting |
| **Subject:** | RE: Corporate Card Declining |

Got it – thanks!

---

**From:** Accounting <accounting@lpglaw.com>
**Sent:** Friday, December 9, 2022 6:06 PM
**To:** Firas Abunada <firas@lpglaw.com>; Matt Buchner <IT@lpglaw.com>; Kent Cobb <kent@lpglaw.com>; Jane Dearwester <jane@lpglaw.com>; Collin Donner <CDonner@lpglaw.com>; Amy Ginsburg <aginsburg@lpglaw.com>; Kyle Herret <kyle@lpglaw.com>; Vincent Jackson <vincent@lpglaw.com>; Laronda Kelley <laronda@lpglaw.com>; Bianca Loli <Bianca@lpglaw.com>; Dan March <Dan@lpglaw.com>; Richard Meier <richard@lpglaw.com>; Tye Merritt <TyeM@lpglaw.com>; Branden Nakahara <Branden@lpglaw.com>; Justin Nguyen <JNguyen@lpglaw.com>; Israel Orozco <israel@lpglaw.com>; R. Reed Pruyn <Reed@lpglaw.com>; Peter Schneider <peter@lpglaw.com>; Haley Simmoneau <HSimmoneau@lpglaw.com>; Han Trinh <han@lpglaw.com>; Jayde Trinh <Jayde@lpglaw.com>; Kamaria Womack <KWomack@lpglaw.com>; Reid Wood <reid@lpglaw.com>
**Cc:** Kevin Kurka <KKurka@lpglaw.com>
**Subject:** Corporate Card Declining

Hi Team,
While we have a VERY LARGE credit line on our credit card,  there are times when the usage reaches our credit limit with over 40 cardholders.

In these cases, we usually wire funds out in between our cycles, which are every 2 weeks.

When we send the wire, they can make it immediately available but sometimes they don't post immediately.

This is the case today, and you may see your cards get declined. The wire should hit later today or Monday.

If at all possible, hold off until the first of the week on things that can wait. Either way, they will decline until the payment cycles through JP Morgan.

If you ever have any questions on this and your card does not work going forward, please email me or call me directly.  I usually can provide more information as to what is going on than the number on the back of the card.

949-292-7493
Denina@Lpglaw.com

Thank you
Denina

EXHIBIT 29
Page 172

*Accounting and Finance*

The Litigation Practice Group PC

P.O. Box 513018

Los Angeles, CA 90051

EXHIBIT 29
Page 173

**EXHIBIT 30**

## Jane Dearwester

| | |
|---|---|
| **From:** | j.rebhun@consumerlegalgroup.com |
| **Sent:** | Monday, March 6, 2023 9:34 AM |
| **To:** | Jane Dearwester |
| **Cc:** | 'Tal Hirshberg' |
| **Subject:** | New matter for us (CLG) - LPG style credit consumer matter |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Hi,

We (Consumer Legal Group) work with Litigation Practice Group (LPG) on files like LPG had where local counsel is needed to defend clients on suits. We're in the process of growing our "inventory" and taking on new files and as one of the main attorneys here at CLG, I'm tasked with engaging local counsel to have someone "up and running" should a new file come in that warrants immediate attention.

We understand that you've worked with LPG as local counsel on similar matters before and we'd like to engage you to be local counsel on TN cases. Right now, we have one "brewing" that might need representation if we cannot settle it and I wanted to have you (given your familiarity with LPG style cases and work) on standby for this case and for others that we're taking on.

Please let us know if this is something you can take on and work with us as local counsel. We can arrange a call or a remote meeting if that works for you.

Thanking you in advance for your attention,

Jason

Jason J. Rebhun, Esq.
**CONSUMER LEGAL GROUP PC**
**212.920.1247**
**Website** consumerlegalgroup.com
**Email** j.rebhun@consumerlegalgroup.com
**Address** PO Box 412 Elmsford, NY 10523

EXHIBIT 30
Page 175

# EXHIBIT 31



**8:01**

**‹** New Year Hangover LPG Attorn...    **...**
35 participants

**Chat**        Details        More

Thursday, January 5, 2023 @ 4:30 PM    **Join**

Today 8:01 PM

Kent C.

From Han:  "Can you please let all of the attorneys know that if they have any legal admins/ paralegals who are hourly that they need to have them email mary@guardianprocessing.com their hours for 02/20-03/03. They can take a screenshot from their paychex they've been logging into for LPG.

LPG will only be paying all attorneys and legal admins/ paralegals from 02/13-02/17 plus their vacation hours for their final checks."

Type a message

EXHIBIT 31
Page 177

# EXHIBIT 32

**Jane Dearwester**

| | |
|---|---|
| **From:** | Blair Richardson <brich11111@yahoo.com> |
| **Sent:** | Thursday, May 11, 2023 2:40 PM |
| **To:** | Jane Dearwester |
| **Subject:** | Fwd: Oakstone Law Center - Notice of Transition |
| | |
| **Follow Up Flag:** | Flag for follow up |
| **Flag Status:** | Flagged |

Here is a forwarded email I got again today. Just FYI.  Hope you have a great rest of your week!

Sent from my iPhone

Begin forwarded message:

> **From:** Oakstone Support <support@oakstonepc.co>
> **Date:** May 11, 2023 at 2:37:39 PM EDT
> **To:** brich11111@yahoo.com
> **Subject: Oakstone Law Center - Notice of Transition**

> Dear James B-

> Oakstone Law Group PC is no longer able to service your account in a manner that aligns with our standards for client success.  Accordingly, we have made the decision to place your file with Phoenix Law PC in order to ensure that your file receives the attention it needs.  This difficult decision was made with the best interest of you, our client, in mind.  Phoenix Law will reach out to you in order to facilitate this transfer.  If you have an active summons with Oakstone Law Group and an attorney is already representing you, please remain in communication with them as they will continue to represent you until the conclusion of your case.  Any documentation pertaining to your active lawsuit should be sent to support@Oakstonepc.co until your case concludes.  In order to reach Phoenix Law, please call 424-622-4044.  In order to contact Oakstone please use the email address support@Oakstonepc.co

> Regards,

> Scott Eadie

1

EXHIBIT 32
Page 179

# EXHIBIT 33



# GREYSON LAW CENTER

---

**Israel Orozco**                                                    March 21, 2023

Dear Mr. Orozco,

Congratulations! It is with great pleasure that Greyson Law Center PC would like to offer full-time employment to you for the position of Associate Attorney. The terms and conditions of employment are outlined below. The Firm reserves the right to alter or rescind this offer at any time during the employment process. The following outlines the details of this offer.

**1. Start Date**
March 27, 2023

**2. Compensation**
You will be classified as an exempt employee with an annual salary of $164,000.00 per year paid in accordance with Firm payroll practices. Employee agrees to maintain a license in good standing in California and New York.

   The Employee agrees to represent all clients of Greyson Law Center assigned to Employee who have active matters located in any jurisdiction in which Employee is admitted to practice law. The Employee may employ the assistance of appearance or coverage counsel at Employee's discretion to manage Employee's docket of cases, and Greyson Law Center agrees to cover such cost on behalf of Employee.

   The Employee will be provided office space convenient to their current residence. All bar dues and malpractice insurance will be covered by Greyson Law Center. The Employee may also retain a legal administrative assistant or paralegal to assist in the management of Employee's docket of cases.

   **Annual Salary Increase.** The Employee shall be eligible for salary increases annually of zero to three percent (0-3%). Such salary increase shall be based upon the overall performance of the Employee during the preceding twelve (12)-month period.

**3. Benefits**
   a)  **Enrollment.** Should you choose to enroll, the benefits will be effective the first day of the month following your hire date. Greyson Law Center offers a competitive benefit plan which includes the following:

EXHIBIT 33
Page 181



# GREYSON LAW CENTER

I. Paid Time Off: You will be eligible to accrue three (3) weeks of Vacation and forty (40) hours of Sick Time per year. You will need to inform Human Resources prior to your Vacation.
II. Medical, Dental, and Vision Plan
III. 401(k) Plan and company-match (if eligibility requirements are met)
IV. Paid Holidays

**4. Duties**
   **a)** Attorney-Employees are required to represent clients of Greyson Law Center in accordance with the applicable rules of professional conduct governing the jurisdiction in which such legal representation is rendered.
   **b)** The Employee is not required to maintain records of hours except as required by any applicable rule of professional conduct.
   **c)** If any ethical conflict arises, Employee may decline a case assignment, but must promptly notify Greyson Law Center of such denial and must assist Greyson Law Center in good faith to find representation for such client.
   **d)** If Employee requires any support material to provide legal services in accordance with the applicable rules of professional conduct, Employee shall promptly notify Greyson Law Center of the same and Greyson Law Center agrees to comply with such requests in good faith and with the exercise of reasonable diligence.
   **e)** The Employee agrees to permit Greyson Law Center to publish Employee's profile to its website, mobile application, and on any firm letterhead or correspondence.
   **f)** The Employee agrees to complete all required continuing legal education coursework and to comply with ethical standards expected of any officer of the court.
   **g)** The Employee agrees to serve as counsel for the Firm and its clients for all purposes in the jurisdiction(s) in which Employee is licensed.
   **h)** The Employee agrees to use Greyson Law Center's customer relations management software.
   **i)** The Employee agrees to use their name and information on correspondence directed to Greyson Law Center's clients in the state(s) in which the attorney is licensed.

**5. Outside Activities**
   a) **General.** During the term of this Agreement you may not, without the prior written consent of the Firm, directly or indirectly as principal, agent, shareholder, partner, employee or otherwise engage in or be interested in any other business which will require your attendance or attention during the Firm's business hours or which is or may be contrary to the interest of, or in competition with, the Firm or which may require the use of confidential information of the Firm.

EXHIBIT 33
Page 182



# GREYSON LAW CENTER

**6. Confidentiality**

a) **General Confidentiality.** You shall not disclose or use either during or after your employment with the Firm any secret or confidential information, or information which in good faith and good conscience ought to be treated as confidential relating to the Firm, its employees, or its customers without the prior written consent of the Firm.

b) **Confidential information.** Confidential information includes, but is not limited to, customer lists, supplier lists and lists of employees and contractors and information about the Firm's finances, business plans, proposals, technologies, and developments.

c) **Absenteeism and Illness.** Punctual attendance is necessary. It is the responsibility of the Employee to inform Greyson Law Center prior to your start of any absenteeism and illness. The Firm has the right to require you to supply proof of illness and fitness to return to work in the form of a doctor's certificate or other form satisfactory to the Firm.

**7. At-Will Statement**

a) **General At-Will.** This letter constitutes the full commitments that have been extended to you. However, Greyson Law Center does not guarantee employment for a specified length of time.

b) **Mutual Consent.** Employment is at the mutual consent of each employee and Greyson Law Center.

c) **Right to Terminate.** Accordingly, both parties retain the right to terminate the employment relationship at-will with or without cause.

d) **Identification Documents and Other Paperwork.** Upon employment, you will be asked to provide identification documents in accordance with the provisions of the Immigration Reform Act of 1986 and complete the I-9 form within three days of employment. You will also be given additional paperwork necessary to complete your file.

If the terms and conditions stated above are acceptable to you, please indicate by signing below and returning to me via email. Please respond within two business days of the date on this correspondence. If you have any questions, please contact me at admin@greysonpc.com.

We look forward to a favorable reply! Sincerely,

Sincerely,

*Scott J Eadie*

Scott J. Eadie
Managing Attorney

EXHIBIT 33
Page 183



# GREYSON LAW CENTER

---

I accept the above offer to be employed by Greyson Law Center PC and understand the terms and conditions set forth in this letter.

**Israel Orozco**
_____
Print: First name and last name

_____     03/24/2023
Signature                                                              _____
                                                                              Date

EXHIBIT 33
Page 184

**EXHIBIT 34**

Exhibit 34

**From:** Mark J. Markus Law Office <mark@bklaw.com>
**Date:** Thursday, April 4, 2024 at 9:50 AM
**To:** Alina Mamlyuk <amamlyuk@marshackhays.com>
**Cc:** Ed Hays <EHays@MarshackHays.com>, Layla Buchanan <LBuchanan@marshackhays.com>
**Subject:** Re: LPG Dk. No. 697; Administrative Claim filed by David Orr, Esq.

Hi Alina,

We have reviewed Greyson's claim and clarified some things with them, so I can now clarify my previously confusing statements to you.

David Orr (my client) is in fact the "Florida attorney" referenced in Greyson's Motion.   However, Mr. Orr's employment with Greyson was terminated and he did not do any work for Greyson on LPG cases after the lockout, which my understanding is was between June 2, 2023 and August 4, 2023.   He recalls being rehired to work on a couple of other NON-LPG Greyson cases in late June or July 2023 when it appeared Greyson might continue as an ongoing practice, but those were very brief and he was not otherwise employed by Greyson during that period, and definitely not on any of the LPG cases.

My client is only seeking payment for services he provided to the Florida LPG clients from June 2 until August 4, after his employment was terminated by Greyson.   Greyson's Motion seeks payment for services provided to those LPG clients PRIOR to June 2 (the pre-lockout period).  They do not overlap.

I hope this sufficiently clarifies everything for you.

Let me know if you need anything further.

Sincerely,

Mark

1

EXHIBIT 34
Page 186

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
870 Roosevelt, Irvine, CA 92620.

A true and correct copy of the foregoing document entitled: **OPPOSITION OF CHAPTER 11 TRUSTEE TO MOTION OF GREYSON LAW CENTER PC FOR RECOVERY OF ADMINISTRATIVE EXPENSE [Dk. No. 676]; DECLARATIONS OF D. EDWARD HAYS, ALINA MAMLYUK AND SHADAE CLARKE, AND JANE DEARWESTER IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On  **April 11, 2024**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**: On  ‗, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**DEBTOR – MAIL REDIRECTED TO TRUSTEE**
THE LITIGATION PRACTICE GROUP P.C.
~~17542 17TH ST, SUITE 100~~
~~TUSTIN, CA 92780-1981~~

☒  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL:** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on  **April 11, 2024**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

<div style="border:1px solid black; padding:8px;">

**VIA PERSONAL DELIVERY:**
**PRESIDING JUDGE'S COPY**
HONORABLE SCOTT C. CLARKSON
UNITED STATES BANKRUPTCY COURT
411 WEST FOURTH STREET, SUITE 5130 /
COURTROOM 5C
SANTA ANA, CA 92701-4593

</div>

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| April 11, 2024 | Layla Buchanan | /s/ Layla Buchanan |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: CONTINUED:

| | | |
|---|---|---|
| **ATTORNEY FOR CHAPTER 11 TRUSTEE RICHARD A MARSHACK (TR)** | Bradford Barnhardt | bbarnhardt@marshackhays.com, bbarnhardt@ecf.courtdrive.com,alinares@ecf.courtdrive.com |
| **ATTORNEY FOR CREDITOR AFFIRMA, LLC and CREDITOR OXFORD KNOX, LLC** | Eric Bensamochan | eric@eblawfirm.us, G63723@notify.cincompass.com |
| **ATTORNEY FOR DEFENDANT LEUCADIA ENTERPRISES, INC.** | Michael Jay Berger | michael.berger@bankruptcypower.com, yathida.nipha@bankruptcypower.com;michael.berger@ecf.inforuptcy.com |
| **ATTORNEY FOR CHAPTER 11 TRUSTEE RICHARD A MARSHACK (TR)** | Peter W Bowie | peter.bowie@dinsmore.com, caron.burke@dinsmore.com |
| **ATTORNEY FOR CREDITOR SDCO TUSTIN EXECUTIVE CENTER, INC** | Ronald K Brown | ron@rkbrownlaw.com |
| **ATTORNEY FOR CHAPTER 11 TRUSTEE RICHARD A MARSHACK (TR)** | Christopher Celentino | christopher.celentino@dinsmore.com, caron.burke@dinsmore.com |
| **INTERESTED PARTY COURTESY NEF** | Shawn M Christianson | cmcintire@buchalter.com, schristianson@buchalter.com |
| **INTERESTED PARTY COURTESY NEF** | Randall Baldwin Clark | rbc@randallbclark.com |
| **ATTORNEY FOR DEFENDANT LISA COHEN and DEFENDANT ROSA BIANCA LOLI:** | Leslie A Cohen | leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com;clare@lesliecohenlaw.com |
| **INTERESTED PARTY COURTESY NEF** | Anthony Paul Diehl | anthony@apdlaw.net, Diehl.AnthonyB112492@notify.bestcase.com,ecf@apdlaw.net |
| **ATTORNEY FOR INTERESTED PARTY NATIONAL ASSOCIATION OF CONSUMER BANKRUPTCY ATTORNEYS and INTERESTED PARTY NATIONAL CONSUMER BANKRUPTCY RIGHTS CENTER** | Jenny L Doling | jd@jdl.law, dolingjr92080@notify.bestcase.com;15994@notices.nextchapterbk.com;jdoling@jubileebk.net |
| **ATTORNEY FOR CREDITOR CAROLYN BEECH** | Daniel A Edelman | dedelman@edcombs.com, courtecl@edcombs.com |
| **CREDITOR** | Meredith Fahn | fahn@sbcglobal.net |
| **ATTORNEY FOR CREDITOR VALIDATION PARTNERS LLC** | William P Fennell | william.fennell@fennelllaw.com, luralene.schultz@fennelllaw.com;wpf@ecf.courtdrive.com;hala.hammi@fennelllaw.com;naomi.cwalinski@fennelllaw.com;samantha.larimer@fennelllaw.com |
| **INTERESTED PARTY COURTESY NEF** | Alan W Forsley | alan.forsley@flpllp.com, awf@fkllawfirm.com,awf@fl-lawyers.net,addy@flpllp.com |
| **ATTORNEY FOR DEFENDANT CLEAR VISION LLC dba LIBERTY1 FINANCIAL** | Marc C Forsythe | mforsythe@goeforlaw.com, mforsythe@goeforlaw.com;dcyrankowski@goeforlaw.com |
| **ATTORNEY FOR CHAPTER 11 TRUSTEE RICHARD A MARSHACK (TR)** | Jeremy Freedman | jeremy.freedman@dinsmore.com, nicolette.murphy@dinsmore.com |
| **ATTORNEY FOR CREDITOR HERRET CREDIT** | Eric Gassman | erg@gassmanlawgroup.com, gassman.ericb112993@notify.bestcase.com |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

_June 2012_                                                                    **F 9013-3.1.PROOF.SERVICE**

| | | |
|---|---|---|
| **ATTORNEY FOR CHAPTER 11 TRUSTEE RICHARD A MARSHACK (TR)** | Christopher Ghio | christopher.ghio@dinsmore.com, nicolette.murphy@dinsmore.com;angelica.urena@dinsmore.com;deamira.romo@dinsmore.com |
| **ATTORNEY FOR CREDITOR AMY GINSBURG; CREDITOR KENTON COBB; and CREDITOR SHANNON BELLFIELD** | Amy Lynn Ginsburg | efilings@ginsburglawgroup.com |
| **ATTORNEY FOR DEFENDANT STRIPE, INC** | Eric D Goldberg | eric.goldberg@dlapiper.com, eric-goldberg-1103@ecf.pacerpro.com |
| **ATTORNEY FOR CREDITOR AFFIRMA, LLC; CREDITOR ANAHEIM ARENA MANAGEMENT, LLC; CREDITOR ANAHEIM DUCKS HOCKEY CLUB, LLC; and CREDITOR OXFORD KNOX, LLC** | Jeffrey I Golden | jgolden@go2.law, kadele@ecf.courtdrive.com;cbmeeker@gmail.com;lbracken@wgllp.com;dfitzgerald@go2.law;golden.jeffreyi.b117954@notify.bestcase.com |
| **ATTORNEY FOR CREDITOR DEBT VALIDATION FUND II, LLC; CREDITOR MC DVI FUND 1, LLC; and CREDITOR MC DVI FUND 2, LLC** | Richard H Golubow | rgolubow@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com |
| **ATTORNEY FOR CREDITOR OPPORTUNITY FUND NORTHERN CALIFORNIA** | Mark Good | mark@markgood.com |
| ***AFFECTED PARTY ATTORNEY FOR CREDITOR UNITED PARTNERSHIPS, LLC*** | ***David M Goodrich*** | ***dgoodrich@go2.law, kadele@go2.law;dfitzgerald@go2.law;wgggllp@ecf.courtdrive.com*** |
| **ATTORNEY FOR CHAPTER 11 TRUSTEE RICHARD A MARSHACK (TR)** | D Edward Hays | ehays@marshackhays.com, ehays@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@ecf.courtdrive.com |
| **ATTORNEY FOR CREDITOR CITY CAPITAL NY** | Alan Craig Hochheiser | ahochheiser@mauricewutscher.com, arodriguez@mauricewutscher.com |
| **ATTORNEY FOR CREDITOR DEBT VALIDATION FUND II, LLC; CREDITOR MC DVI FUND 1, LLC; and CREDITOR MC DVI FUND 2, LLC** | Garrick A Hollander | ghollander@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com |
| **ATTORNEY FOR CREDITOR SHARP ELECTRONICS CORPORATION** | Brian L Holman | b.holman@musickpeeler.com |
| **INTERESTED PARTY COURTESY NEF** | Richard L. Hyde | richard@amintalati.com |
| **ATTORNEY FOR INTERESTED PARTY MERCHANTS CREDIT CORPORATION** | Peter L Isola | pisola@hinshawlaw.com |
| **ATTORNEY FOR CREDITOR, PLAINTIFF, and COUNTER-DEFENDANT OHP-CDR, LP and PLAINTIFF and COUNTER-DEFENDANT PURCHASECO 80, LLC** | Razmig Izakelian | razmigizakelian@quinnemuel.com |
| **ATTORNEY FOR CHAPTER 11 TRUSTEE RICHARD A MARSHACK (TR)** | Sara Johnston | sara.johnston@dinsmore.com |
| **ATTORNEY FOR FIDELITY NATIONAL INFORMATION SERVICES, INC. DBA FIS** | Sweeney Kelly | kelly@ksgklaw.com |
| **ATTORNEY FOR DEBTOR THE LITIGATION PRACTICE GROUP P.C.** | Joon M Khang | joon@khanglaw.com |
| **ATTORNEY FOR INTERESTED PARTY AD HOC CONSUMER CLAIMANTS COMMITTEE** | Ira David Kharasch | sikharasch@pszjlaw.com |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

**F 9013-3.1.PROOF.SERVICE**

| ATTORNEY FOR DEFENDANT GALLANT LAW GROUP | Meredith King | mking@fsl.law, ssanchez@fsl.law;jwilson@fsl.law |
|---|---|---|
| ATTORNEY FOR COMMITTEE OF UNSECURED CREDITORS | Nicholas A Koffroth | nkoffroth@foxrothschild.com, khoang@foxrothschild.com |
| ATTORNEY FOR DEFENDANT MARICH BEIN, LLC | David S Kupetz | David.Kupetz@lockelord.com, mylene.ruiz@lockelord.com |
| INTERESTED PARTY COURTESY NEF | Christopher J Langley | chris@slclawoffice.com, langleycr75251@notify.bestcase.com;ecf123@casedriver.com;john@slclawoffice.com |
| ATTORNEY FOR CHAPTER 11 TRUSTEE RICHARD A MARSHACK (TR) | Kelli Ann Lee | Kelli.lee@dinsmore.com, kristy.allen@dinsmore.com |
| ATTORNEY DEFENDANT OPTIMUMBANK HOLDINGS, INC | Matthew A Lesnick | matt@lesnickprince.com, matt@ecf.inforuptcy.com;jmack@lesnickprince.com |
| ATTORNEY FOR DEFENDANT CONSUMER LEGAL GROUP, P.C.; DEFENDANT LGS HOLDCO, LLC; INTERESTED PARTY CONSUMER LEGAL GROUP, P.C.; and INTERESTED PARTY LIBERTY ACQUISITIONS GROUP INC | Daniel A Lev | daniel.lev@gmlaw.com, cheryl.caldwell@gmlaw.com;dlev@ecf.courtdrive.com |
| ATTORNEY FOR INTERESTED PARTY REVOLV3, INC. | Britteny Leyva | bleyva@mayerbrown.com, 2396393420@filings.docketbird.com;KAWhite@mayerbrown.com;ladocket@mayerbrown.com |
| INTERESTED PARTY COURTESY NEF ADVERSARY PROCEEDING #: 8:23-AP-01148-SC | Marc A Lieberman | marc.lieberman@flpllp.com, safa.saleem@flpllp.com,addy@flpllp.com |
| ATTORNEY FOR CREDITOR PHILLIP A GREENBLATT, PLLC | Michael D Lieberman | mlieberman@lipsonneilson.com |
| ATTORNEY FOR CHAPTER 11 TRUSTEE RICHARD A MARSHACK (TR) | Yosina M Lissebeck | Yosina.Lissebeck@Dinsmore.com, caron.burke@dinsmore.com |
| ATTORNEY FOR CREDITOR FUNDURA CAPITAL GROUP | Mitchell B Ludwig | mbl@kpclegal.com, kad@kpclegal.com |
| INTERESTED PARTY AND ATTORNEY | Daniel S March | marchlawoffice@gmail.com, marchdr94019@notify.bestcase.com |
| ***ATTORNEY FOR CREDITOR and DEFENDANT GREYSON LAW CENTER PC, CREDITOR and DEFENDANT HAN TRINH; and CREDITOR and DEFENDANT PHUONG (JAYDE) TRINH*** | *Kathleen P March* | *kmarch@bkylawfirm.com, kmarch3@sbcglobal.net,kmarch@sbcglobal.net* |
| ATTORNEY FOR CREDITOR DAVID ORR | Mark J Markus | bklawr@bklaw.com, markjmarkus@gmail.com;markus.markj.r112926@notify.bestcase.com |
| CHAPTER 11 TRUSTEE | Richard A Marshack (TR) | pkraus@marshackhays.com, ecf.alert+Marshack@titlexi.com |
| ATTORNEY FOR CHAPTER 11 TRUSTEE RICHARD A MARSHACK (TR) | Laila Masud | lmasud@marshackhays.com, lmasud@ecf.courtdrive.com;lbuchanan@marshackhays.com;alinares@ecf.courtdrive.com |
| ATTORNEY FOR CHAPTER 11 TRUSTEE RICHARD A MARSHACK (TR) | Sarah S. Mattingly | sarah.mattingly@dinsmore.com |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

| INTERESTED PARTY COURTESY NEF | William McCormick | Bill.McCormick@ag.tn.gov |
|---|---|---|
| ATTORNEY FOR US TRUSTEE | Kenneth Misken | Kenneth.M.Misken@usdoj.gov |
| INTERESTED PARTY COURTESY NEF | Byron Z Moldo | bmoldo@ecjlaw.com, aantonio@ecjlaw.com,dperez@ecjlaw.com |
| ATTORNEY FOR CREDITOR ADP, INC | Glenn D. Moses | gmoses@venable.com, cascavone@venable.com;jpmalcolm@venable.com;jadelgado@venable.com |
| ATTORNEY FOR CHAPTER 11 TRUSTEE RICHARD A MARSHACK (TR) | Jamie D Mottola | Jamie.Mottola@dinsmore.com, jhanawalt@ecf.inforuptcy.com |
| INTERESTED PARTY COURTESY NEF | Alan I Nahmias | anahmias@mbn.law, jdale@mbn.law |
| INTERESTED PARTY COURTESY NEF | Victoria Newmark | vnewmark@pszjlaw.com |
| ATTORNEY FOR CHAPTER 11 TRUSTEE RICHARD A MARSHACK (TR) | Jacob Newsum-Bothamley | jacob.bothamley@dinsmore.com, angelica.urena@dinsmore.com;deamira.romo@dinsmore.com |
| ATTORNEY FOR US TRUSTEE | Queenie K Ng | queenie.k.ng@usdoj.gov |
| CREDITOR | Israel Orozco | israel@iolawcorp.com |
| ATTORNEY FOR COMMITTEE OF UNSECURED CREDITORS | Keith C Owens | kowens@foxrothschild.com, khoang@foxrothschild.com |
| ATTORNEY FOR DEFENDANT OPTIMUMBANK HOLDINGS, INC. | Lisa Patel | lpatel@lesnickprince.com, jmack@lesnickprince.com;jnavarro@lesnickprince.com |
| ATTORNEY FOR CREDITOR WELLS MARBLE AND HURST, PLLC | Michael R Pinkston | rpinkston@seyfarth.com, jmcdermott@seyfarth.com,sfocalendar@seyfarth.com,5314522420@filings.docketbird.com,bankruptcydocket@seyfarth.com |
| ATTORNEY FOR DEFENDANT SCOTT JAMES EADIE | Douglas A Plazak | dplazak@rhlaw.com |
| ATTORNEY FOR CHAPTER 11 TRUSTEE RICHARD A MARSHACK (TR) | Tyler Powell | tyler.powell@dinsmore.com, jennifer.pitcock@dinsmore.com;rosetta.mitchell@dinsmore.com |
| ATTORNEY FOR DEFENDANT TOUZI CAPITAL, LLC and DEFENDANT ENG TAING | Daniel H Reiss | dhr@lnbyg.com, dhr@ecf.inforuptcy.com |
| ATTORNEY FOR DEFENDANT CONSUMER LEGAL GROUP, PC | Ronald N Richards | ron@ronaldrichards.com, 7206828420@filings.docketbird.com |
| ATTORNEY FOR CHAPTER 11 TRUSTEE RICHARD A MARSHACK (TR) | Vanessa Rodriguez | vanessa.rodriguez@dinsmore.com, angelica.urena@dinsmore.com |
| ATTORNEY FOR CREDITOR WELLS MARBLE AND HURST, PLLC | Kevin Alan Rogers | krogers@wellsmar.com |
| ATTORNEY FOR CREDITOR MARI AGAPE | Gregory M Salvato | gsalvato@salvatoboufadel.com, calendar@salvatolawoffices.com;jboufadel@salvatoboufadel.com;gsalvato@ecf.inforuptcy.com |
| ATTORNEY FOR CREDITOR AZZURE CAPITAL LLC and CREDITOR HI BAR CAPITAL LLC | Olivia Scott | olivia.scott3@bclplaw.com |
| ATTORNEY FOR CHAPTER 11 TRUSTEE RICHARD A MARSHACK (TR) | Jonathan Serrano | jonathan.serrano@dinsmore.com |
| ATTORNEY FOR RANDALL BALDWIN CLARK ATTORNEY AT LAW PLLC | Maureen J Shanahan | Mstotaro@aol.com |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                              **F 9013-3.1.PROOF.SERVICE**

| ATTORNEY FOR CREDITORS UNITED PARTNERSHIPS, LLC and MNS FUNDING LLC | Paul R Shankman | PShankman@fortislaw.com, info@fortislaw.com |
|---|---|---|
| ATTORNEY FOR INTERESTED PARTY MORNING LAW GROUP, PC | Zev Shechtman | Zev.Shechtman@saul.com, zshechtman@ecf.inforuptcy.com;easter.santamaria@saul.com |
| ATTORNEY FOR US TRUSTEE | Leslie Skorheim | leslie.skorheim@usdoj.gov |
| ATTORNEY FOR CREDITOR PIONEER FUNDING GROUP, LLC | Adam D Stein-Sapir | info@pfllc.com |
| ATTORNEY FOR DEFENDANT BANKUNITED, N.A. | Howard Steinberg | steinbergh@gtlaw.com, pearsallt@gtlaw.com;NEF-BK@gtlaw.com;howard-steinberg-6096@ecf.pacerpro.com |
| ATTORNEY FOR CREDITOR ALTERYX, INC. | Andrew Still | astill@swlaw.com, kcollins@swlaw.com |
| ATTORNEY FOR CREDITOR RANDALL BALDWIN CLARK ATTORNEY AT LAW PLLC and INTERESTED PARTY RANDALL BALDWIN CLARK | Michael R Totaro | Ocbkatty@aol.com |
| US TRUSTEE | United States Trustee (SA) | ustpregion16.sa.ecf@usdoj.gov |
| ATTORNEY FOR WITNESS BRADFORD LEE 8:23-ap-01046-SC | William J Wall | wwall@wall-law.com |
| ATTORNEY FOR CREDITOR and DEFENDANT AZZURE CAPITAL LLC and CREDITOR HI BAR CAPITAL LLC | Sharon Z. Weiss | sharon.weiss@bclplaw.com, raul.morales@bclplaw.com,REC_KM_ECF_SMO@bclplaw.com |
| ATTORNEY FOR CREDITOR DEBT RELIEF GROUP, LLC | Johnny White | JWhite@wrslawyers.com, jlee@wrslawyers.com |
| CLAIM AGENT FOR CHAPTER 11 TRUSTEE RICHARD A MARSHACK (TR) | Reina Zepeda | rzepeda@omniagnt.com |

4870-1429-8550

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**