Christopher B. Ghio (State Bar No. 259094)
Christopher Celentino (State Bar No. 131688)
Yosina M. Lissebeck (State Bar No. 201654)
**DINSMORE & SHOHL LLP**
655 West Broadway, Suite 800
San Diego, CA 92101
Telephone:  619.400.0500
Facsimile:  619.400.0501
christopher.ghio@dinsmore.com
christopher.celentino@dinsmore.com
yosina.lissebeck@dinsmore.com

Tyler Powell (Ky. Bar No. 90520 – Admitted pro hac vice)
**DINSMORE & SHOHL LLP**
100 West Main Street, Suite 900
Lexington, KY 40507
Telephone: 859-425-1056
Facsimile:  859-425-1099
tyler.powell@dinsmore.com

Special Counsel to Richard A. Marshack, Chapter 11 Trustee

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>THE LITIGATION PRACTICE GROUP P.C.,<br><br>    Debtor.<br><br>---<br>RICHARD A. MARSHACK,<br>Chapter 11 Trustee,<br><br>        Plaintiff,<br><br>            v.<br><br>ARASH ASANTE BAYROOTI, a California resident<br><br>        Defendant. | Case No.: 8:23-bk-10571-SC<br><br>Adv. Proc. No. 8:24-ap-XXXX-SC<br><br>Chapter 11<br><br>**TRUSTEE'S COMPLAINT FOR:**<br><br>**(1) AVOIDANCE, RECOVERY, AND PRESERVATION OF FRAUDULENT TRANSFER(S); AND/OR**<br><br>**(2) AVOIDANCE, RECOVERY, AND PRESERVATION OF PREFERENTIAL TRANSFER(S);** |

#41045876v5

For his *Complaint for (1) Avoidance, Recovery, and Preservation of Fraudulent Transfer(s) and/or; (2) Avoidance, Recovery, and Preservation of Preferential Transfer(s)* (the "Complaint"), plaintiff Richard A. Marshack, the Chapter 11 Trustee (the "Trustee" or "Plaintiff") for the bankruptcy estate (the "Estate") of debtor The Litigation Practice Group P.C. (the "Debtor" or "LPG") in the above-captioned bankruptcy case (the "Bankruptcy Case"), alleges and avers as follows:

## STATEMENT OF JURISDICTION, NATURE OF PROCEEDING, AND VENUE

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 157(b)(2)(A), (E), (H) and (O), 1334(b), and General Order No. 13-05 of the District Court for the Central District of California because this is a core proceeding arising in and/or related to the Bankruptcy Case, which is a case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), and which is pending in the United States Bankruptcy Court for the Central District of California, Santa Ana Division (the "Court").

2. Regardless of whether this proceeding is core, non-core, or otherwise, the Plaintiff consents to the entry of a final order and judgment by the Bankruptcy Court.

3. Defendant is hereby notified that Rule 7008 of the Federal Rules of Bankruptcy Procedure requires him to plead whether consent is given to the entry of a final order and judgment by the bankruptcy court.

4. Venue of this adversary proceeding properly lies in this judicial district pursuant to 28 U.S.C. § 1409(a) because this proceeding is related to the Debtor's pending Bankruptcy Case.

## THE PARTIES

5. Debtor LPG is, and at all material times was, a professional corporation organized, existing, and in good standing under the laws of the State of California, with its principal place of business in Tustin, California.

6. Defendant Arash Asante Bayrooti ("Mr. Bayrooti") is, and at all material times was, a individual resident of the state of California subject to service of process at 23 Costa Del Sol, Dana Point, CA 92629-4039.

//
//

#41045876v5

# GENERAL ALLEGATIONS

**A.    The Bankruptcy Case**

7.    On March 20, 2023 ("Petition Date"), Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, commencing the Bankruptcy Case.

8.    The Office of the United States Trustee ("UST") filed its *Motion by United States Trustee to Dismiss or Convert Case Pursuant to 11 U.S.C. § 1112(b)* [Bankr. Docket No. 21] and creditors Debt Validation Fund II, LLC; MC DVI Fund 1, LLC; and MC DVI Fund 2, LLC filed the *Motion by DVF and MC DVI to Dismiss Chapter 11 Case Pursuant to 11 U.S.C. §§ 105, 305, 349, & 1112, or in the Alternative Convert This Case to Chapter 7 or Appoint a Trustee* [Bankr. Docket No. 44]. On May 4, 2023, the Court entered its *Order Directing United States Trustee to Appoint Chapter 11 Trustee* [Bankr. Docket No. 58].

9.    Pursuant to the *Acceptance of Appointment as Chapter 11 Trustee* [Bankr. Docket No. 63], on May 8, 2023, Trustee accepted his appointment as the Chapter 11 Trustee in the Bankruptcy Case, and he continues to serve in this capacity at this time. The Court approved the Trustee's appointment in its *Order Approving the U.S. Trustee's Application for the Appointment of a Chapter 11 Trustee* [Docket No. 65].

10.    Trustee was not appointed until after events of the case and, therefore, bases these allegations on information and belief. *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017) ("The *Twombly* plausibility standard . . . does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible."); *Miller v. City of Los Angeles*, 2014 U.S. Dist. LEXIS 198871, 2014 WL 12610195, at *5 (C.D. Cal. Aug. 7, 2014) (recognizing that the plaintiff's "information and belief" pleading was allowed and "necessary at times"); *see also Mireskandari v. Daily Mail and General Trust PLC*, 2013 U.S. Dist. LEXIS 194437, 2013 WL 12129642, at *4 (C.D. Cal. July 31, 2013) ("The Federal Rules of Civil Procedure allow parties to plead facts on 'information and belief' if the facts 'will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.'" (citations

//

omitted)).

11. Plaintiff brings this action solely in his capacity as the Chapter 11 Trustee for the benefit of Debtor's Estate and its creditors.

**B.    LPG**

12. LPG operated a law firm for consumers across the country who sought assistance in contesting or resolving debts they would identify.

13. The consumers would pay LPG over a period of time via monthly debits from their bank accounts.

14. The monthly payments were meant to cover all legal services LPG provided to the consumers including validation of the debts, review of documents to determine enforceability, and court appearances to halt lawsuits to obtain judgments.

15. In certain instances, LPG would file a lawsuit in an effort to eliminate a disputed debt or to prosecute affirmative claims held by the consumers.

## DETAILS OF SPECIFIC TRANSACTION

16. Upon information and belief, Mr. Bayrooti was a prior owner of forty-six (46) shares ("Stock") in B.A.T., Inc. dba Coast Processing ("Coast"). Upon information and belief based on the affidavits of Russ Squires and Darius Newbold filed in state court litigation against the Debtor, Coast was the entity that LPG used to run its marketing and client development operations.

17. Due to his ownership interest in Coast and Coast's relationship with LPG, Mr. Bayrooti was a regular presence in the offices of LPG. Employees treated Mr. Bayrooti as a *de facto* owner or officer of LPG who directed the work of LPG employees.

18. On or about June 10, 2021, Tony Diab, another shareholder in Coast, executed a Stock Purchase Agreement ("Agreement") with Mr. Bayrooti to document the terms of Mr. Diab's purchase of Mr. Bayrooti's Stock. A true and accurate copy of the Agreement without exhibits is attached hereto as **Exhibit A**.

19. The Agreement's stated purchase price for the Stock was $7,130,000.00 to be paid in a lump sum amount of $3,680,000.00 at closing followed by monthly payments thereafter until the

/ /

3

#41045876V5

purchase price was paid in full. Mr. Diab executed a promissory note and accompanying security agreement (collectively "Note") to document the amount remaining owed under the Agreement. A true and accurate copy of this Note is attached hereto as **Exhibit B**.

20. While the consideration was to be paid over time, Mr. Bayrooti delivered the Stock in Coast to Mr. Diab at closing upon the delivery of a lump sum payment.

21. Despite the Agreement being between Mr. Bayrooti and Mr. Diab, the Agreement required that LPG guaranty Mr. Diab's obligations to Mr. Bayrooti under the Agreement in a separate agreement ("Guaranty"). A true and accurate copy of this Guaranty is attached hereto as **Exhibit C**.

22. Upon information and belief, the Agreement was modified to reduce the initial lump sum payment from $3,680,000.00 to $2,000,000.00 with the remaining $5,130,000.00 to be paid in installments thereafter. An addendum to the Agreement documenting this change may have been drafted, but the Trustee does not know if this addendum was ever executed

23. Upon further information and belief, the parties performed under the Agreement on or about June 10, 2021, with Mr. Bayrooti delivering the Stock to Mr. Diab and Mr. Bayrooti receiving the reduced lump sum payment of $2,000,000.00.

24. Following the closing of the Agreement, Mr. Diab failed to make the payments that he promised to make in the Agreement, as modified or amended.

25. On September 6, 2022, LPG received a wire transfer from Sunflower Bank in the amount of $6,244,811.78 that was deposited in its checking account at Union Bank ending in X4874 ("Account"). PurchaseCo 80, LLC ("PurchaseCo") sent this wire as a partial payment for its alleged purchase of the future income from approximately 10,000 client files of LPG. This payment is the subject of another adversary proceeding in this case (Adv. No. 8:23-ap-01098), and the Trustee reserves all his rights regarding the treatment and characterization of the transaction with PurchaseCo.

26. On September 7, 2022, the end of day balance of the Account was $5,846,242.36.

27. On or about September 8, 2022, LPG paid $5,814,146.45 ("Payment") to Mr. Bayrooti via Check No. 0216 drawn on the Account. A true and accurate copy of the Check (with redactions of confidential information) is attached hereto as **Exhibit D**.

//

4

#41045876V5

28. The end of day balance of the Account on September 8, 2022 was $32,095.91. A redacted copy of the September 2022 statement from the Account is attached hereto as **Exhibit E**.

29. While the Account was designated as an IOLTA account at the bank, the Debtor did not treat the Account as a trust account and comingled its own funds with other deposits in the Account.

30. Upon information and belief the amount of the Payment was the sum of the $5,130,000.00 owed to Mr. Bayrooti under the Agreement plus another $684,146.50 that was added for payment of late fees and/or interest.

31. In early September 2023 and prior to Payment being made, LPG's financial condition was dire and continuing to deteriorate. LPG had been sued numerous times in New York state court by merchant cash advance lenders and was constantly refinancing or restructuring existing debts to avoid default.

32. As discussed above, the funds for the Payment to Mr. Bayrooti came from LPG promising to pay its future income from approximately 10,000 client files to PurchaseCo in exchange for the amount wired into the Account and other consideration.

33. While LPG told PurchaseCo that the future receivables from these client files were free and clear of liens, claims, and encumbrances, this was false.

34. LPG had already promised to pay a substantial percentage of funds it received from consumer clients to the marketing affiliates that had initially referred those consumers to LPG. While the terms of these fee sharing agreements varied, LPG often promised to pay marketing affiliates between forty and sixty percent of the payments it received on referred matters.

35. Prior to the transaction with PurchaseCo and the subsequent Payment, LPG had also previously granted security interests on all its assets to numerous lenders who had perfected these security interests in filings with the California Secretary of State.

36. As a result of these transactions, LPG had already sold or promised to pay more than 100% of its income to multiple parties before it had paid operating expenses.

37. Furthermore, as alleged by Debt Validation Fund II, LLC and related entities in their

/ /

#41045876V5

Orange County Superior Court[1] suit against LPG, on September 1, 2022 LPG entered into Note Exchange and Restructuring Agreements and Secured Promissory Notes to restructure approximately $70 million dollars in existing debt. According to this complaint, LPG obligated itself to pay Debt Validation Fund II, LLC and related entities more than $110 million dollars upon execution of these restructuring agreements.

## CLAIMS FOR RELIEF

### COUNT I

**(Avoidance, Recovery, and Preservation of Fraudulent Transfers
To or In Favor Of Mr. Bayrooti [11 U.S.C. §§ 548, 550, and 551]**

38. Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein.

39. LPG received nothing in exchange for executing the Guaranty in favor of Mr. Bayrooti to secure repayment of the Note of Mr. Diab, who was neither an owner nor officer of LPG.

40. Upon information and belief, LPG was insolvent when Mr. Diab caused it to execute the Guaranty in June 2021 as its debts exceeded the fair market value of its assets.

41. In June 2021, LPG had not only promised to pay a portion of its income from numerous client files to the marketing entities that referred those files to LPG, but it was also indebted to more than six different merchant cash advance lenders.

42. By June 10, 2021, there were eight UCC-1 statements of record filed with the California Secretary of State against LPG.

43. By June 28, 2021, two of these lenders (Ace Funding Group and Ein Cap, Inc.) that had filed UCC-1 statements had sued LPG in Kings County Superior Court Case No. 515748/2021 and 515835/2021 in New York state claiming that LPG had defaulted under agreements with them.

44. Because LPG's execution of the Guaranty was a fraudulent conveyance subject to avoidance, LPG received no benefit or value when it made the Payment to Mr. Bayrooti.

45. When LPG made the Payment in September 2022, its financial condition was worse than it was in June 2021 when it executed the Guaranty. LPG had just restructured the debts it owed

/ /

---

[1] Case No. 30-2023-01303355-CU-CO-CXC in the Superior Court for Orange County California.

6

#41045876V5

to Venture Partners by promising to pay millions of additional dollars to Venture Partners in the future. Also, numerous lawsuits filed by creditors were pending against LPG when the Payment was made.

46. LPG obtained the funds used to make the Payment by promising to pay PurchaseCo the future income from almost 10,000 of its own client files. This transaction further deepened the insolvency of LPG for the benefit of Mr. Bayrooti.

47. Accordingly, the execution of the Guaranty and the Payment to Mr. Bayrooti should be avoided as fraudulent transfers under 11 U.S.C. § 548(a)(1)(B), and the Payment should be recovered and preserved for the benefit of the Estate pursuant to 11 U.S.C. §§ 550 and 551.

## COUNT II

### Avoidance, Recovery, and Preservation of Preferential Transfers From Mr. Bayrooti [11 U.S.C. §§ 547, 550, and 551]

48. Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein.

49. In the alternative, if the execution of the Guaranty and Payment are not determined to be fraudulent conveyances, the Payment can still be recovered from Mr. Bayrooti as a preferential transfer paid to an insider within one year of the petition date.

50. Prior to the execution of the Agreement, Mr. Bayrooti was a stockholder in Coast, which worked closely with LPG. Indeed, Coast used the 'doing business as' name of LPG in many instances.

51. Upon information and belief, Mr. Bayrooti acted as an officer or manager of LPG and gave directions to employees as if he was an officer/manager of LPG.

52. As a *de facto* officer/director of LPG, Mr. Bayrooti was an insider of LPG as that term is defined in 11 U.S.C. § 101(31)(B).

53. If the Guaranty is determined to be a valid obligation of LPG, the Payment to Mr. Bayrooti satisfied its obligations under the Guaranty, and the Payment was made to or for the benefit of Mr. Bayrooti – a creditor under the Guaranty.

//

//

7

#41045876V5

54. If the Guaranty is determined to be a valid obligation of LPG, then the Payment made to satisfy LPG's obligations under the Guaranty was a payment on an antecedent debt within the meaning of 11 U.S.C. § 547(b)(2).

55. Upon information and belief, the Debtor was insolvent when the Payment was made pursuant to 11 U.S.C. § 547(b)(3). The Debtor's insolvency at this time is evidenced by large debts owed to numerous creditors, its many promises to pay substantial portions of its future income to numerous third parties, and by numerous, pending lawsuits filed against LPG claiming default under numerous agreements.

56. The Payment was made to or for the benefit of an insider within the one year period preceding the Petition Date and can be recovered pursuant to 11 U.S.C. § 547(b)(4).

57. As a result of the Payment, Mr. Bayrooti became entitled to recover more than he would have received if: (i) the Debtor's case was under chapter 7 of the Bankruptcy Code; (ii) the Payment had not been made; and (iii) Mr. Bayrooti had received payments of his debts under the provisions of the Bankruptcy Code. As evidenced by the Debtor's schedules filed in the underlying Bankruptcy Case, as well as the proofs of claim that have been received to date, the Debtor's liabilities exceed its assets to the point that unsecured creditors will not receive a full payout of their claims from the Debtor's bankruptcy estate.

58. Pursuant to the foregoing, the Payment is avoidable pursuant to 11 U.S.C. § 547(b).

59. Accordingly, the Payment should be avoided as a preferential transfer to an insider under 11 U.S.C. § 547(b), and the Payment should be recovered and preserved for the benefit of the Estate pursuant to 11 U.S.C. §§ 550 and 551.

WHEREFORE, Plaintiff respectfully requests that the Court grant judgment in his favor and against the Defendant:

A. Finding both that the execution of the Guarantee and the Payment to Mr. Bayrooti were fraudulent conveyances subject to avoidance and preservation pursuant to §§ 548(a)(1)(A) or (B) and 550; or

//

//

#41045876V5

B. If the Guaranty is determined to be a valid obligation of LPG that cannot be avoided as a fraudulent conveyance, Plaintiff asks the Court to find that Mr. Bayrooti was a non-statutory insider of LPG as the term insider is defined by 11 U.S.C. § 101(31) and that

C. the Payment to Mr. Bayrooti was a preferential transfer made between ninety days and one year before the petition date of LPG that is subject to avoidance and preservation pursuant to §§ 547(b) and 550:

D. Awarding pre-judgment interest at the maximum legal rate running from the date of the Complaint to the date of judgment herein;

E. Awarding post-judgment interest at the maximum legal rate running from the date of judgment herein until the date the judgment is paid in full, plus costs;

F. Requiring Mr. Bayrooti to pay forthwith any judgment awarded herein; and

G. Granting Plaintiff such other and further relief as the Court deems just and proper.

Dated: April 19, 2024               Respectfully submitted,

                                    DINSMORE & SHOHL LLP

                                    By: /s/ Tyler Powell
                                        Christopher B. Ghio
                                        Tyler Powell
                                        Christopher Celentino
                                        Special Counsel to
                                        Richard A. Marshack

9

#41045876V5