## Exhibit A

D. EDWARD HAYS, #162507
ehays@marshackhays.com
LAILA MASUD, #311731
lmasud@marshackhays.com
**MARSHACK HAYS WOOD LLP**
870 Roosevelt
Irvine, California 92620
Telephone: (949) 333-7777
Facsimile: (949) 333-7778

General Counsel for Chapter 11 Trustee,
RICHARD A. MARSHACK

Keith C. Owens (SBN 184841)
Nicholas A. Koffroth (SBN 287854)
**FOX ROTHSCHILD LLP**
10250 Constellation Blvd., Suite 900
Los Angeles CA 90067
Telephone: (310) 598-4150
Facsimile: (310) 556-9828
kowens@foxrothschild.com
nkoffroth@foxrothschild.com

Counsel For Official Committee of Unsecured Creditors

UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA

| | |
|---|---|
| In re | Case No. 8:23-bk-10571-SC |
| THE LITIGATION PRACTICE GROUP P.C., | Chapter 11 |
| Debtor. | **FIRST AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION (DATED ~~MARCH 22~~JUNE 3, 2024)** |
| | Disclosure Statement Hearing: |
| | Date:  May 15, 2024 |
| | Time: 1:30 p.m. |
| | Ctrm: 5C - ViaZoom[1] |
| | Place: 411 West Fourth Street |
| |         Santa Ana, CA  92701 |
| | Plan Confirmation Hearing: |
| | Date:  ~~TBD~~August 15, 2024 |
| | Time:  ~~TBD~~10:00 a.m. |
| | Ctrm: 5C - ViaZoom[2] |
| | Place: 411 West Fourth Street |
| |         Santa Ana, CA  92701 |

---

[1] ~~Check Judge Clarkson's tentative prior to hearing for further Zoom instructions.~~
[2] Check Judge Clarkson's tentative prior to hearing for further Zoom instructions.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **TABLE OF CONTENTS**

I.      Introduction ........................................................................................................1

II.     Plan Summary ...................................................................................................2

III.    Classification and Treatment of Claims and Interests under This Plan .....................4

        A.      What Creditors and Interest Holders Will Receive Under this Plan ...........................4

        B.      Unclassified Claims ....................................................................................4

                1.      Administrative Claims Including Professional Fee Claims ...............................5

                2.      Bankruptcy Court Approval of Professional Fee Claims Required...................7

                **3.**     Priority Tax Claims.............................................................................7

        C.      Classified Claims and Interests ...................................................................10

                1.      Classification of Claims and Interests................................................10

                2.      Treatment of Claims and Interests ....................................................10

                3.      Class 1 – Classes of Secured Claims .................................................11

                4.      Class 2 – Classes of Other Priority Claims..........................................15

                5.      Class 3 – Classes of General Unsecured Claims ..................................18

                6.      Class 4 – Subordinated Claims .........................................................19

                7.      Class 5 –Interests ..........................................................................20

                8.      Special Provision Governing Unimpaired Claims...............................20

                9.      Confirmation Pursuant to §§ 1129(a)(10) and 1129(b) of the
                        Bankruptcy Code ............................................................................20

                10.     Elimination of Vacant Classes; Presumed Acceptance by Non-Voting
                        Classes..........................................................................................21

IV.     Means of Effectuating This Plan.....................................................................21

        A.      Post-Effective Date Management and Dissolution of the Debtor...............21

        B.      The Liquidating Trust ...............................................................................22

                1.      Execution of Liquidating Trust Agreement .......................................22

i

159188850.1

2.    Purposes of the Liquidating Trust.................................................................22

3.    Transfer of Property to the Liquidating Trust................................................22

4.    Securities Exempt ..........................................................................................25

5.    Establishment of the Post-Confirmation Oversight Committee .....................25

6.    Governance of Liquidating Trust...................................................................25

7.    Designation of the Liquidating Trustee .........................................................25

8.    Rights, Powers, and Privileges of the Liquidating Trustee............................26

9.    Agents and Professionals ..............................................................................26

10.   Investment and Safekeeping of Liquidating Trust Assets ..............................26

11.   Limitations on Liquidating Trustee and Payment of Fees..............................27

12.   Bankruptcy Court Approval of Liquidating Trustee Actions .........................27

13.   Valuation of Liquidating Trust Assets ...........................................................28

14.   Distributions..................................................................................................28

15.   Record Date for Distributions .......................................................................29

16.   Pro Rata Share of Distributions ....................................................................29

17.   Delivery of Distributions ...............................................................................29

18.   Undelivered Property.....................................................................................29

19.   De Minimis Distributions ..............................................................................30

20.   Payments Limited to Liquidating Trust Assets...............................................30

21.   Fees and Expenses .........................................................................................30

22.   Priority of Distributions ................................................................................30

23.   Compliance with Laws ..................................................................................30

24.   Identification of Beneficiaries of the Liquidating Trust .................................31

25.   Beneficial Interest Only .................................................................................31

26.   Ownership of Beneficial Interests...................................................................31

27.   Evidence of Beneficial Interest.......................................................................31

ii

159188850.1

28. Conflicting Claims ...................................................................................31

29. Limitation on Transferability ..................................................................32

30. Parties Dealing with the Liquidating Trustee ..........................................32

31. Liquidating Trustee and Post-Confirmation Oversight Committee's
Exculpation, Indemnification, Insurance and Liability Limitation..................33

32. Injunctions and Releases .........................................................................34

33. Terms of Service of the Liquidating Trustee. ..........................................34

34. Appointment of Successor Liquidating Trustee ......................................35

35. Annual Reporting and Filing Requirements ............................................35

36. Confidentiality ........................................................................................35

37. Maintenance of Records ..........................................................................36

38. Duration and Termination of the Liquidating Trust ................................36

39. Preservation of Privilege..........................................................................36

40. No Bond ...................................................................................................37

41. No Execution ...........................................................................................37

42. Intention to Establish Grantor Trust .......................................................37

43. Amendment of the Liquidating Trust Agreement....................................37

C. Effective Date Distributions to Be Made by Trustee...................................37

D. Settlement Agreements .................................................................................37

E. Claims Administration and Prosecution and Plan Distributions..................38

F. Books and Records of the Debtor .................................................................38

G. Corporate Action............................................................................................39

H. Effectuating Documents and Further Transactions.......................................39

I. Procedures for Disputed, Contingent, or Unliquidated Claims ...................40

1. Objections to Claims.............................................................................40

2. No Distribution Pending Allowance of Claims. ..................................40

iii

3.  Distributions Upon Allowance of Disputed Claims. ........................................40

4.  Resolution of Disputed Claims. ........................................................40

5.  Estimation. ..................................................................41

J.  Distributions to Be Made Pursuant to the Plan ..................................41

K.  Conditions Precedent to Confirmation and the Effective Date of the Plan .................42

1.  Conditions Precedent to Confirmation of the Plan ..........................42

2.  Conditions Precedent to the Effective Date ...............................42

3.  Waiver of Conditions ................................................43

4.  Effect of Failure of Conditions ......................................43

L.  Executory Contracts and Unexpired Leases ..................................44

M.  Cure of Defaults for Executory Contracts and Unexpired Leases Assumed (or Assumed and Assigned)........................................................45

N.  Preexisting Obligations to the Debtors under Executory Contracts and Unexpired Leases. ................................................46

O.  Retention of Jurisdiction ............................................47

P.  Reservation of Rights..................................................49

V.  Effect of Confirmation of This Plan ........................................49

A.  Discharge ........................................................49

B.  No Revesting of Estate Property in the Debtor.............................49

C.  No Liability for Solicitation or Participation ..............................49

D.  Exculpation; Limitation of Liability .....................................50

E.  Preservation of all Litigation and Causes of Action .......................50

F.  Modification of this Plan. .............................................52

G.  Post-Confirmation Status Reports.......................................52

H.  Post Confirmation U.S. Trustee Fees....................................52

I.  Risk Factors ......................................................52

J.  Tax Consequences of the Plan ........................................53

iv

K.      Final Decree ................................................................................53

VI.  Defined Terms, Rules of Interpretation, Computation of Time, and Governing Law............55

A.      Defined Terms ...........................................................................55

B.      Rules of Interpretation ...............................................................67

C.      Computation of Time ................................................................69

D.      Governing Law .........................................................................69

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

v

159188850.1

# I.    INTRODUCTION

The Litigation Practice Group P.C. ("Debtor") is the Debtor in this Bankruptcy Case. On March 20, 2023 ("Petition Date"), Debtor commenced the Bankruptcy Case by filing a voluntary petition under Chapter 11 of Title 11 of the United States Code (as now in effect or hereafter amended, "Bankruptcy Code").  This document is a Joint Plan of Liquidation (as may be altered, amended, modified, or supplemented from time to time, "Plan") that is jointly proposed by the chapter 11 bankruptcy trustee, Richard A. Marshack ("Trustee"), and the Official Committee of Unsecured Creditors ("Committee" and, together with the Trustee, the "Plan Proponents").

The Plan Proponents propose the Plan, pursuant to § 1129 of the Bankruptcy Code. The Plan Proponents are the proponents of the Plan, within the meaning of § 1129 of the Bankruptcy Code. Capitalized terms used in this Plan have the meanings ascribed to such terms in Article VI of the Plan.

The purpose of this Plan is to provide for the liquidation of Debtor's assets including the prosecution of Litigation Claims to generate funds from which distributions can be paid to creditors. The Effective Date of this Plan will be the date that is the first Business Day which is at least 14 days after the following: entry of a Confirmation Order and satisfaction or waiver of all conditions to the occurrence of the Effective Date, as set forth in Article IV of the Plan.

Since the Petition Date, the Plan Proponents, and their respective professionals, have worked tirelessly to develop a plan that would maximize the value of the Debtor's Estate for the benefit of creditors and minimize the amount of time spent in chapter 11. After extensive negotiations, the Trustee and the Committee have reached agreement on the terms of this Plan.

The Plan Proponents believe that the Plan presents the best path forward and is in the best interests of the Debtor, the Estate, its creditors, and all parties in interest. The Plan is premised on the creation of the Liquidation Trust, which will succeed to all rights, interests, and property of the Debtor and the Estate. If confirmed, the Plan will transfer to the Liquidating Trust all assets of the Estate, including proceeds from any pre-Effective Date sales and Causes of Action of the Debtor's Estate, that are not distributed under the Plan as of the Effective Date. The Committee has agreed that Richard A. Marshack shall serve as the Liquidating Trustee, subject to an Oversight Committee comprised of

Committee members, as more particularly described in the Liquidating Trust Agreement. The Liquidating Trustee will be tasked with, among other things, monetizing the Debtor's remaining Assets and making Distributions to Holders of Allowed General Unsecured Claims in Class 3 (who will be beneficiaries of the Liquidating Trust). The Plan Proponents believe that the Plan is in the best interest of the Debtor's Estate and all stakeholders, and recommend that all Holders of Claims entitled to vote, vote in favor of the Plan.

Subject to the restrictions on modifications set forth in § 1127 of the Bankruptcy Code and Bankruptcy Rule 9019, the Plan Proponents expressly reserve the right to alter, amend, or modify the Plan one or more times before substantial consummation.

A disclosure statement is a document which explains the terms of a Chapter 11 plan. In this case, the Court approved a disclosure statement ("Disclosure Statement") at a hearing held on _____,May 15, 2024. Holders of Claims and Interests should refer to the Disclosure Statement for a discussion of the Debtor's history, business, assets, results of operations, historical financial information, projections, any future operations, as well as a summary and description of this Plan including related matters.[3]

ALL HOLDERS OF CLAIMS AND INTERESTS, TO THE EXTENT APPLICABLE, ARE ENCOURAGED TO CAREFULLY READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

## II.    PLAN SUMMARY

This Plan constitutes a liquidating chapter 11 plan for the Debtor's Estate and provides for distribution of the assets of the Debtor's Estate that are already liquidated, or will be liquidated over time, to Holders of Allowed Claims in accordance with the terms of the Plan and the priority provisions of the Bankruptcy Code. The Liquidation Trustee will implement the terms of the Plan and make distributions in accordance with the terms of the Plan and the Liquidating Trust Agreement. Except as otherwise provided by Order of the Bankruptcy Court, distributions will occur at various

---

[3] To the extent there are any capitalized terms used in this Plan that are not defined in this Plan but are defined in the Disclosure Statement, those terms shall have the same definitions as contained in the Disclosure Statement.

intervals after the Effective Date as determined by the Liquidation Trustee. Upon confirmation of the Plan, a Liquidating Trust will be created to hold, collect, distribute, liquidate, and otherwise dispose of all funds, property, claims, rights, and causes of action of the Debtor and its Estate that are not distributed under the Plan as of the Effective Date.

The beneficiaries of the Liquidating Trust will be Debtor's creditors which are grouped into various classes as set forth in detail below.

The Liquidating Trust shall be a creditors' liquidating trust for all purposes, including § 301.7701-4(d) of the Treasury Regulations, and is intended to be treated as a grantor trust for federal income tax purposes. Debtor will not be engaging in further business and will be dissolved.

Class 1 consists of potential secured claims. Each such secured creditor is placed into its own sub-class (i.e. Class 1A, Class 1B, etc.) and will receive the treatment provided for such sub-class in the Plan. Each of the Class 1 claims are Disputed Claims and will be resolved in accordance with this Plan.

Class 2 consists of all priority unsecured claims that are set forth in §§ 507(a), (4), (5), (6), and (7) of the Bankruptcy Code.[4] Each class of similarly-situated priority claims will be paid in the order specified in § 507(a) of the Bankruptcy Code. All Allowed Priority Claims will be paid in full before any distributions are made to Classes 3-5.

Class 3 consists of all Allowed, Non-Priority General Unsecured Claims other than claims that are Class 4 Subordinated Claims or Class 5 Interests in the Debtor. The deadline to file any prepetition claim, including a Class 3 Claim, was February 23, 2024, at 4:00 p.m., except as provided for certain limited parties, pursuant to that certain modification order [Docket No. 963]. The total amount of Class 3 Allowed Claims will not be known until after the resolution of any objections filed with respect to any such claims.

Class 4 under this Plan consists of all claims that are Subordinated Claims under 11 U.S.C.

---

[4] There are other types of claims entitled to priority under § 507(a) of the Bankruptcy Code. The Plan Proponents, however, do not believe that there are any such creditors in this case. If any timely-filed proofs of claim assert priority under any other section and such claims are allowed, the Plan Proponents will revise the Plan to include such classes.

§ 510. The Holders of any Allowed Class 4 Claims will not be receiving any distribution under this Plan unless all senior claims including administrative creditors, unclassified claims including tax claims, and all creditors in all senior classes are paid in full (which Plan Proponents do not believe will occur). To the extent that any Claim is subordinated under 11 U.S.C. § 510, such subordinated debts will be classified and treated under Class 4.

Class 5 consists of all equity interests in the Debtor, including any claims reclassified by the Bankruptcy Court as equity by a Final Order. The confirmation of this Plan will cancel all such equity interests. The Holders of equity interests will not receive any distributions under this Plan unless all administrative creditors, unclassified claims including tax claims, and all creditors in all senior classes are paid in full (which the Plan Proponents do not believe will occur).

## III.    CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS UNDER THIS PLAN

### A.    What Creditors and Interest Holders Will Receive Under this Plan

As required by the Bankruptcy Code, this Plan classifies claims and interests in various classes according to their rights and priorities. Similarly situated claims are included in the same class. Claims that have different rights and priorities such as secured creditors are included in their own class. The Plan also states whether the claims and rights of each class are impaired or unimpaired. Lastly, the Plan provides for the treatment of for holders of claims in each class (i.e. what will they receive on account of their claims).

### B.    Unclassified Claims

Certain types of claims are not placed into voting classes; instead they are unclassified. They are not considered impaired and they do not vote on the Plan because they are automatically entitled to specific treatment as set forth in the Bankruptcy Code. In accordance with § 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Priority Tax Claims, and Professional Fee Claims, have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III. The following claims are not classified:

1.    **Administrative Claims Including Professional Fee Claims**

Section 507(a)(2) of the Bankruptcy Code provides for priority treatment of certain claims, including fees and charges provided under chapter 123 of the Judicial Code, and administrative expenses allowed under 11 U.S.C. § 503(b). The Bankruptcy Code requires that all such allowed claims be paid in full on the Effective Date unless a particular Holder agrees to a different treatment.

**Holders of Administrative Claims that are required to, but do not, File and serve a request for payment of such Administrative Claims by the applicable Administrative Claims Bar Dates shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Estate or its property, and such Administrative Claims shall be deemed satisfied, settled, and released.** Objections to such requests, if any, must be Filed and served on the Plan Proponents, or Liquidating Trustee, as applicable, and the requesting party not later than the Administrative Claims Objection Deadline.

Unless otherwise agreed to by the Holder of an Allowed Administrative Claim and the Plan Proponents or the Liquidating Trustee, as applicable, each Holder of an Allowed Administrative Claim (other than Holders of Professional Fee Claims and Claims for fees and expenses, pursuant to § 1930 of the Judicial Code) will receive in full and final satisfaction of its Administrative Claim an amount of Cash equal to the amount of such Allowed Administrative Claim in accordance with the following: (1) if an Administrative Claim is Allowed as of the Effective Date, on the Effective Date or thereafter is agreed by any Holder of such Administrative Claim (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter); (2) if such Administrative Claim is not Allowed as of the Effective Date, no later than sixty (60) days after the date on which an order Allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; (3) if such Allowed Administrative Claim is based on liabilities incurred by Debtor or Trustee in the ordinary course of business after the Petition Date in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claim without any further action by the Holder of such Allowed Administrative Claim, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter; or (4) at such

time and upon such terms as set forth in a Final Order of the Bankruptcy Court or as agreed with the Plan Proponents or Liquidating Trustee, as applicable.

The following chart lists all known potential claims, including Professional Fee Claims, entitled to § 507(a)(2) priority treatment:

| Name | Treatment |
|---|---|
| Clerk's Office Fees | Paid in full on the Effective Date |
| Office of the U.S. Trustee Fees | Paid in full on the Effective Date |
| Marshack Hays Wood, LLP ("MHW"), general counsel to Chapter 11 Trustee | Paid in full on the later of (i) the Effective Date and (ii) the date the Bankruptcy Court enters an order allowing such fees and expenses, unless otherwise agreed by MHW |
| Dinsmore & Shohl ("Dinsmore"), special counsel to Chapter 11 Trustee | Paid in full on the later of (i) the Effective Date and (ii) the date the Bankruptcy Court enters an order allowing such fees and expenses, unless otherwise agreed by Dinsmore |
| Grobstein Teeple ("GT"), accountant to Chapter 11 Trustee | Paid in full on the later of (i) the Effective Date and (ii) the date the Bankruptcy Court enters an order allowing such fees and expenses, unless otherwise agreed by GT |
| Fox Rothschild ("FR"), counsel to the Official Committee of Unsecured Creditors | Paid in full on the later of (i) the Effective Date and (ii) the date the Bankruptcy Court enters an order allowing such fees and expenses, unless otherwise agreed by FR |
| Force 10 ("FT"), financial advisors/accountants to the Official Committee of Unsecured Creditors | Paid in full on the later of (i) the Effective Date and (ii) the date the Bankruptcy Court enters an order allowing such fees and expenses, unless otherwise agreed by FT |
| Court Appointed Monitor, Nancy Rapoport | Paid in full on the later of (i) the Effective Date and (ii) the date the Bankruptcy Court enters an order allowing such fees and expenses, unless otherwise agreed by the Monitor. |
| Court Appointed Privacy Ombudsman, Lucy H. Thomson | Paid in full on the later of the Effective Date and the date the Bankruptcy Court enters an order allowing such fees and expenses |
| Other Administrative Claims | Paid in full on the later of the Effective Date and the date the Bankruptcy Court enters an order allowing such Administrative Claims, or such later date as may be agreed by such Holder of Allowed Other Administrative Claims |
| Richard A. Marshack, Chapter 11 Trustee's statutory fees and expenses. | Paid in full on the later of (i) the Effective Date and (ii) the date the Bankruptcy Court enters an order allowing such fees and expenses, unless otherwise agreed by the Trustee. |

The administrative claim amounts set forth above simply represent the Plan Proponents' best estimate as to the identity of Holders and the amounts of projected administrative claims in this case. The actual administrative claims may be higher or lower. By voting to accept this Plan, creditors are not acknowledging the validity of, or consenting to the amount of, any of these administrative claims,

6

1 and creditors are not waiving any of their rights to object to the allowance of any administrative

2 claims.

3      **2.      Bankruptcy Court Approval of Professional Fee Claims Required**

4      Unless excepted from the need to file a motion by the Bankruptcy Code or unless the Court

5 enters an order approving such claims, all professional fees and expenses listed in the foregoing chart

6 must be approved by Court order before they may be paid. All final requests for payment of

7 Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the

8 Effective Date must be filed no later than forty-five (45) days after the Effective Date. The

9 Bankruptcy Court shall determine the amounts of such Professional Fee Claims after notice and a

10 hearing in accordance with the procedures established by the Bankruptcy Code, Bankruptcy Rules,

11 and prior Bankruptcy Court orders. Only the amount of fees and expenses allowed by the Bankruptcy

12 Court will be required to be paid under this Plan. Professionals who have been employed in this case

13 are not being deemed to have agreed that the figures contained herein represent any ceiling on the

14 amount of fees and expenses that they have incurred or are entitled to seek to be paid pursuant to

15 Bankruptcy Court order as such fees and expenses are just estimates provided at the time of the

16 preparation of the Plan.

17      **3.      Priority Tax Claims**

18      Priority Tax Claims include certain unsecured income, employment, and other taxes described

19 by 11 U.S.C. § 507(a)(8). The Bankruptcy Code requires that each Holder of a Priority Tax Claim

20 (whether secured or unsecured) must receive the present value of such claim in regular installment

21 payments in cash (i) of a total value, as of the Effective Date of the Plan, equal to the allowed amount

22 of such claim; (ii) over a period ending not later than five years after the Petition Date; and (iii) in a

23 manner not less favorable than the most favored non-priority unsecured claim provided for under the

24 Plan.

25      Except to the extent that a Holder of an Allowed Priority Tax Claim and the Plan Proponents

26 or the Liquidating Trustee agree to a less favorable treatment for such Holder, in full and final

27 satisfaction, settlement, and release of and in exchange for each Allowed Priority Tax Claim, each

28

Holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in § 1129(a)(9)(C) of the Bankruptcy Code and, for the avoidance of doubt, Holders of Allowed Priority Tax Claims will receive interest on such Allowed Priority Tax Claims after the Effective Date in accordance with §§ 511 and 1129(a)(9)(C) of the Bankruptcy Code.

All Allowed Priority Tax Claims will be paid as set forth in the below chart. The Plan Proponents reserve all rights to object to any alleged Priority Tax Claims.

The following chart lists all known § 507(a)(8) Priority Tax Claims and their treatment under the Plan:[5] The chart is based on the filed claims in this case.  Trustee shall either reserve sufficient funds in the Estate to make such payments or the Liquidating Trust shall be liable to make such payments as they become due if Trustee funds all estate assets into the Trust.

| Description | Amount Alleged[6] | Treatment |
| --- | --- | --- |
| IRS – Proof of Claim No. 2-2 filed on May 1, 2023 | $1,041,773.57[7] | Except to the extent the Holder of this Priority Tax Claim agrees to less favorable treatment with respect to the Allowed amount of such Claim, such Holder any Allowed amount of this Priority Tax Claim Unless Disallowed, equal annual Cash payments in an aggregate amount equal to the amount of such Allowed Priority Tax Claim, together with interest at the applicable rate pursuant to § 511, over a period not exceeding five (5) years from and after the Petition Date; provided, however, the Plan Proponents and Liquidating Trustee, as applicable, reserve the right to prepay all or a portion of any such amounts at any time at the discretion of the Plan Proponents and the Liquidating Trustee. |

[5] The chart is for informational purposes only and is not an admission as to the validity of any particular claim.

[6] The "Amount Alleged" column represents the amount of Priority Tax Claims that have been asserted, or that Trustee believes will be asserted, by each Holder of a Priority Tax Claim. The inclusion of such amount in this Plan is not intended to be, nor shall be construed as, an admission by Trustee of the validity, amount or priority of any such Claim.

[7] The total amount of the claim is $1,050,799.56 of which: (i) $9,025.99 is a general unsecured claim and (ii) $1,041,773.57 is a priority claim.

8

| Description | Amount Alleged[6] | Treatment |
|---|---|---|
| Franchise Tax Board – Proof of Claim No. 393 filed on August 29, 2023 | $317,416.67[8] | Except to the extent the Holder of this Priority Tax Claim agrees to less favorable treatment with respect to the Allowed amount of such Claim, such Holder any Allowed amount of this Priority Tax Claim Unless Disallowed, equal annual Cash payments in an aggregate amount equal to the amount of such Allowed Priority Tax Claim, together with interest at the applicable rate pursuant to § 511, over a period not exceeding five (5) years from and after the Petition Date; provided, however, the Plan Proponents and Liquidating Trustee, as applicable, reserve the right to prepay all or a portion of any such amounts at any time at the discretion of the Plan Proponents and the Liquidating Trustee. |
| Other Priority Tax Claims of $1,500 or Less | $0.00 (est.) | Any Allowed Priority Tax Claims of $1,500 or less will be paid in full on the Effective Date. |
| Other Priority Tax Claims over $1,500 | $0.00 (est.) | Except to the extent the Holder of this Priority Tax Claim agrees to less favorable treatment with respect to the Allowed amount of such Claim, such Holder any Allowed amount of this Priority Tax Claim Unless Disallowed, equal annual Cash payments in an aggregate amount equal to the amount of such Allowed Priority Tax Claim, together with interest at the applicable rate pursuant to § 511, over a period not exceeding five (5) years from and after the Petition Date; provided, however, the Plan Proponents and Liquidating Trustee, as applicable, reserve the right to prepay all or a portion of any such amounts at any time at the discretion of the Plan Proponents and the Liquidating Trustee. |
| **TOTAL** | **$1,359,190.24 (est.)** | |

---

[8] The total amount of the claim is $350,745.88 of which: (i) $33,329.21 is a general unsecured claim and (ii) $317,416.67 is a priority claim.

9

**C.      Classified Claims and Interests**

1.      **Classification of Claims and Interests**

Except for the Claims addressed in Section III.B of the Plan, all Claims and Interests are classified in the Classes set forth in this Section III.C for all purposes, including voting, Confirmation, and distributions pursuant to the Plan and in accordance with §§ 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or an Interest is classified in a particular Class only to the extent that such Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of such Claim or Interest qualifies within the description of such other Classes. A Claim or Interest also is classified in a particular Class for the purpose of receiving distributions under the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

The classification of Claims and Interests against the Debtor pursuant to the Plan is as set forth below:

| Class | Claim / Interest | Status | Voting Rights |
|---|---|---|---|
| 1 | Secured Claims | Impaired | Entitled to Vote |
| 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 3 | General Unsecured Claims | Impaired | Entitled to Vote |
| 4 | Subordinated Claims | Impaired | Not Entitled to Vote (Deemed to Reject under § 1126(g) of the Bankruptcy Code) |
| 5 | Equity Interests | Impaired | Not Entitled to Vote (Deemed to Reject under § 1126(g) of the Bankruptcy Code) |

2.      **Treatment of Claims and Interests**

Subject to Section III.C. of the Plan, each Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive under the Plan the treatment described below in full and final satisfaction, compromise, settlement, and release of, and in exchange for, such Holder's Allowed Claim or Allowed Interest, except to the extent less favorable treatment is agreed to by the Plan Proponents, or the

10

1   Liquidating Trustee, as applicable, and the Holder of such Allowed Claim or Allowed Interest, as

2   applicable.

3       The Classes below classify Claims (except for unclassified claims such as Administrative

4   Claims and Priority Tax Claims) against the Estate for all purposes, including voting, confirmation,

5   and distribution pursuant to the Plan.

6       3.    **Class 1 – Classes of Secured Claims**

7       Secured claims are claims that are secured by Liens on property of the Estate. The following

8   chart sets forth the description and treatment of Secured Claims.

9       The Secured Claims are subject to substantial dispute.  The Plan Proponents have objected,

10  or intend to object, to the validity, priority, perfection, and/or amount of some or all of the Secured

11  Claims on various grounds including, but not limited to, that the Liens purporting to secure the

12  Secured Claims are avoidable under 11 U.S.C. §§ 544, 547, 548, 549, 550, 551, 552, and/or 553, or

13  applicable nonbankruptcy law, or subject to subordination under 11 U.S.C. §§ 510(b) and/or 510(c).

14  To the extent that the Trustee, the Committee, or Liquidating Trustee files an adversary proceeding

15  and successfully avoids, recovers, and preserves any Lien held by any Holder of a Secured Claim,

16  the Estate or Liquidating Trust shall be entitled to rights otherwise afforded the Holders of such

17  Claims as described below.  Additionally, the Plan Proponents have objected, or intend to object, to

18  the amount of some or all of the Secured Claims on various grounds, pursuant to Bankruptcy Rule

19  3012.  In addition, the Plan Proponents believe that some or all of the Secured Claims, to the extent

20  Allowed, are subject to disallowance and/or setoff under 11 U.S.C. §§ 502(d) and 553.  Holders of

21  Allowed Secured Claims, following entry of a Final Order Allowing such Secured Claim (or any

22  portion thereof), will be entitled to the treatment specified by this Plan with respect to any Allowed

23  amount of such Secured Claim, if any.

24      The Plan sets forth the asserted amount of Secured Claims set forth in corresponding Proofs

25  of Claim or estimates the amount of the Secured Claim where no Proof of Claim is filed.  The Plan

26  does not treat as Holders of Secured Claims certain parties that filed UCC-1 financing statements

27  prepetition and whose claim is estimated in the amount of $0.00, pursuant to the Court's ruling on

28

159188850.1

that certain motion filed by the Trustee, pursuant to Bankruptcy Rule 3012.  Pursuant to the foregoing ruling, the Court has authorized the Trustee to file UCC-3 termination statements with respect to such UCC-1 financing statements, and, as such, any claim is not treated in this Plan as a Secured Claim. In other instances, the Plan estimates certain Secured Claims at $0.00 to the extent that the Holders of such Secured Claims have filed UCC-1 financing statements but have neither filed a Proof of claim nor responded to Trustee's request for information regarding the alleged Secured Claim.  The Plan Proponents believe that such claims have either been fully satisfied or are otherwise avoidable. All such holders of Secured Claims will be served with the Plan and Disclosure Statement.

Certain Holders of Secured Claims purport to relate to one or more alleged Purchase and Sale Agreements, pursuant to which the Holders of such Secured Claims may assert an ownership interest in certain consumer client files, accounts receivable, and/or revenue streams.  This Plan preserves the rights of any Holders of Secured Claims to assert an ownership interest in such client files, accounts receivable, and/or revenue streams, subject to the Ownership Challenge Deadline, and the Estate's and Liquidating Trust's rights to object to or otherwise challenge any such alleged ownership interests.

| Class | Description[9] | Impairment | Treatment |
|-------|------------|------------|-----------|
| 1A | Secured Claim of Bridge Funding Cap LLC dba Fundura ("Fundura"), as set forth in Proof of Claim No. 335-1 filed on October 16, 2023.<br><br>Alleged Collateral: All assets (UCC-1)<br><br>Total asserted amount of secured claim: $2,374,004.82 | Impaired; Entitled to Vote | Unless the Holder of an Allowed Class 1A Claim agrees to less favorable treatment, the Holder of an Allowed Class 1A Claim will receive the following treatment, at the Plan Proponents' election:<br><br>(i) the collateral securing the Class 1A Claim; or<br><br>(ii) payment of the Allowed amount of the Class 1A Claim, plus interest at the lesser of the contract rate and 8%.<br><br>The Holder of an Allowed Class 1A Claim will be entitled to the foregoing treatment ten days after |

---

[9] The collateral description and alleged amounts of the Secured Claims set forth herein are neither intended to be, nor shall be construed as, an admission by the Plan Proponents regarding the amount, validity, priority, perfection, or extent of any such Claim or Lien.

12

| Class | Description[9] | Impairment | Treatment |
|---|---|---|---|
| | | | the date on which all of the following are satisfied: (a) there are sufficient funds in the Estate or Liquidating Trust to satisfy such Allowed Class 1A Claim; and (b) the later of (1) the Effective Date, or (2) the date an order Allowing any such Class 1A Claim becomes a Final Order. |
| 1B | Secured Claim of Azzure Capital, LLC ("Azzure") as set forth in Proof of Claim No. 127-1, filed July 24, 2023<br><br>Alleged Collateral: Personal property described more fully in Claim No. 127-1<br><br>Total asserted amount of secured claim: $5,000,000 | Impaired; Entitled to Vote | Unless the Holder of an Allowed Class 1B Claim agrees to less favorable treatment, the Holder of an Allowed Class 1B Claim will receive the following treatment, at the Plan Proponents' election:<br><br>(i) the collateral securing the Class 1B Claim; or<br><br>(ii) payment of the Allowed amount of the Class 1B Claim, plus interest at the lesser of the contract rate and 8%.<br><br>The Holder of an Allowed Class 1B Claim will be entitled to the foregoing treatment ten days after the date on which all of the following are satisfied: (a) there are sufficient funds in the Estate or Liquidating Trust to satisfy such Allowed Class 1B Claim; and (b) the later of (1) the Effective Date, or (2) the date an order Allowing any such Class 1B Claim becomes a Final Order. |
| 1C | Diverse Capital LLC ("Diverse"), as set forth in:<br>-        UCC No. U210085288536, filed September 15, 2021<br>-        UCC No. U210106788229, filed December 1, 2021<br><br>Alleged Collateral: *See* descriptions provided in UCCs noted above<br><br>Total estimated amount of secured claim: $0.00 | Impaired; Entitled to Vote | Unless the Holder of an Allowed Class 1C Claim agrees to less favorable treatment, the Holder of an Allowed Class 1C Claim will receive the following treatment, at the Plan Proponents' election:<br><br>(i) the collateral securing the Class 1C Claim; or<br><br>(ii) payment of the Allowed amount of the Class 1C Claim, plus interest at the lesser of the contract rate and 8%.<br><br>The Holder of an Allowed Class 1C Claim will be entitled to the foregoing treatment ten days after |

13

| Class | Description[9] | Impairment | Treatment |
|---|---|---|---|
| | | | the date on which all of the following are satisfied: (a) there are sufficient funds in the Estate or Liquidating Trust to satisfy such Allowed Class 1C Claim; and (b) the later of (1) the Effective Date, or (2) the date an order Allowing any such Class 1C Claim becomes a Final Order. |
| 1D | OHP-CDR, LP f/k/a OHP-LPG, LP ("OHP"), as set forth in Proof of Claim No. 44-1, filed May 24, 2023<br><br>Alleged Collateral: All personal property described more fully in Claim No. 44-1<br><br>Total asserted amount of secured claim: $16,538,954 | Impaired; Entitled to Vote | Unless the Holder of an Allowed Class 1D Claim agrees to less favorable treatment, the Holder of an Allowed Class 1D Claim will receive the following treatment, at the Plan Proponents' election:<br><br>   (i) the collateral securing the Class 1D Claim; or<br><br>   (ii) payment of the Allowed amount of the Class 1D Claim, plus interest at the lesser of the contract rate and 8%.<br><br>The Holder of an Allowed Class 1D Claim will be entitled to the foregoing treatment ten days after the date on which all of the following are satisfied: (a) there are sufficient funds in the Estate or Liquidating Trust to satisfy such Allowed Class 1D Claim; and (b) the later of (1) the Effective Date, or (2) the date an order Allowing any such Class 1D Claim becomes a Final Order. |
| 1E | PECC Corp. ("PECC"), as set forth in Proof of Claim No. 740-1, filed September 14, 2023<br><br>Alleged Collateral: LPG Accounts Receivables Sold<br><br>Total asserted amount of secured claim: $28,329,336.59 | Impaired; Entitled to Vote | Unless the Holder of an Allowed Class 1E Claim agrees to less favorable treatment, the Holder of an Allowed Class 1E Claim will receive the following treatment, at the Plan Proponents' election:<br><br>   (i) the collateral securing the Class 1E Claim; or<br><br>   (ii) payment of the Allowed amount of the Class 1E Claim, plus interest at the lesser of the contract rate and 8%.<br><br>The Holder of an Allowed Class 1E Claim will be entitled to the foregoing treatment ten days after |

14

| Class | Description[9] | Impairment | Treatment |
|---|---|---|---|
| | | | the date on which all of the following are satisfied: (a) there are sufficient funds in the Estate or Liquidating Trust to satisfy such Allowed Class 1E Claim; and (b) the later of (1) the Effective Date, or (2) the date an order Allowing any such Class 1E Claim becomes a Final Order. |
| 1F | Other Secured Claims<br><br>Alleged Collateral: Unknown<br><br>Total estimated amount of secured claims: $0.00 | Impaired; Entitled to Vote | Unless the Holder of an Allowed Class 1F Claim agrees to less favorable treatment, the Holder of an Allowed Class 1F Claim will receive the following treatment, at the Plan Proponents' election:<br><br>(i) the collateral securing the Class 1F Claim; or<br><br>(ii) payment of the Allowed amount of the Class 1F Claim, plus interest at the lesser of the contract rate and 8%.<br><br>The Holder of an Allowed Class 1F Claim will be entitled to the foregoing treatment ten days after the date on which all of the following are satisfied: (a) there are sufficient funds in the Estate or Liquidating Trust to satisfy such Allowed Class 1F Claim; and (b) the later of (1) the Effective Date, or (2) the date an order Allowing any such Class 1F Claim becomes a Final Order. |

4.     **Class 2 – Classes of Other Priority Claims**

Other Priority Claims are entitled to priority, under §§ 364(c) and 507(a)(4), (a)(5), and (a)(7) of the Bankruptcy Code, including the following:

-     <u>Super-Priority Loans</u>: Section 364(c) of the Bankruptcy Code provides that certain loans may be afforded priority over any or all administrative expenses of the kind specified in §§ 503(b) and 507(b) of the Bankruptcy Code. In the Bankruptcy Case, the Court approved loans, two of which remain outstanding:

FIRST AMENDED JOINT PLAN OF LIQUIDATION (MARCH 22JUNE 3, 2024)

159188850.1

- ▪ The loan made by Resolution Ventures to the Estate, outstanding amount of $341,280, which includes a deduction of the amount of outstanding debt credited to fund the initial deposit by MLG under the Sale Order;

- ▪ The loan made by Liberty Acquisitions to the Estate, in the total amount of $594,362; and

- ▪ The loan made by Pan American to the Estate, in the total amount of $269,637.

- Wages/Commissions: Claims under § 507(a)(4) of the Bankruptcy Code include unsecured claims for wages, salaries, or commissions (up to $15,150) earned within 180 days before the Petition Date or when the Debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).

- Contributions to Employee Benefit Plan: Claims under § 507(a)(5) of the Bankruptcy Code include unsecured claims for contributions to an employee benefit plan arising from services rendered within 180 days before the Petition Date or when the Debtor's business ends, whichever is earlier. But claims for wages under (a)(4) are paid first (up to $15,150); then claims under (a)(5) for contributions to employee benefit plans can be recovered next, up to the remainder of the $15,150 ceiling.

- Deposits: Claims under § 507(a)(7) of the Bankruptcy Code include unsecured claims for amounts paid towards deposits for the purchase, lease, or rental of property or services for personal, family, or household use up to $3,350 of deposits.

Trustee shall either reserve sufficient funds in the Estate to make the payments due to Class 2 claimants or the Liquidating Trust shall be liable to make such payments as they become due if Trustee funds all estate assets into the Trust.

| **Class** | **Description** | **Impairment** | **Treatment** |
|---|---|---|---|
| 2A | Super-priority loans owed to Liberty Acquisitions and PanAmerican | Unimpaired; Deemed to Accept and Not Entitled to Vote | Unless the Holder of an Allowed Class 2A Claim agrees to less favorable treatment, the Holder of an Allowed Class 2A Claim will receive payment of such Allowed Class 2A Claim, pursuant to the terms of the court-approved financing on or before the Effective Date. *See* Dk. Nos. 413, 414, and 415. |

16

| Class | Description | Impairment | Treatment |
|---|---|---|---|
| 2B | Wage, Salary, Commission Claims<br><br>Total estimated amount: $0.00 | Impaired; Entitled to Vote | Unless the Holder of an Allowed Class 2B Claim agrees to less favorable treatment, the Holder of an Allowed Class 2B Claim will receive:<br><br>(i) if Class 2B has accepted the Plan, then, at the Plan Proponent's election, either (a) payment in full of the Allowed amount of the Class 2B Claim, or (b) deferred Cash payments of a value, as of the Effective Date, equal to the Allowed amount of such Class 2B Claim; or<br><br>(ii) if Class 2B has not accepted the Plan, payment in full of the Allowed amount of the Class 2B Claim.<br><br>The Holder of an Allowed Class 2B Claim will be entitled to the foregoing treatment ten days after the later of (a) the Effective Date, or (b) the date an order Allowing any such Class 2B Claim becomes a Final Order. |
| 2C | Contributions to Employee Benefit Plan<br><br>Total estimated amount: $0.00 | Impaired; Entitled to Vote | Unless the Holder of an Allowed Class 2C Claim agrees to less favorable treatment, the Holder of an Allowed Class 2C Claim will receive:<br><br>(i) if Class 2C has accepted the Plan, then, at the Plan Proponent's election, either (a) payment in full of the Allowed amount of the Class 2C Claim, or (b) deferred Cash payments of a value, as of the Effective Date, equal to the Allowed amount of such Class 2C Claim; or<br><br>(ii) if Class 2C has not accepted the Plan, payment in full of the Allowed amount of the Class 2C Claim.<br><br>The Holder of an Allowed Class 2C Claim will be entitled to the foregoing treatment ten days after the later of (a) the Effective Date, or (b) the date an order Allowing any such Class 2C Claim becomes a Final Order. |

17

159188850.1

| Class | Description | Impairment | Treatment |
|---|---|---|---|
| 2D | Deposits<br><br>Total estimated amount: $0.00 | Impaired; Entitled to Vote | Unless the Holder of an Allowed Class 2D Claim agrees to less favorable treatment, the Holder of an Allowed Class 2D Claim will receive:<br><br>(i) if Class 2D has accepted the Plan, then, at the Plan Proponent's election, either (a) payment in full of the Allowed amount of the Class 2D Claim, or (b) deferred Cash payments of a value, as of the Effective Date, equal to the Allowed amount of such Class 2D Claim; or<br><br>(ii) if Class 2D has not accepted the Plan, payment in full of the Allowed amount of the Class 2D Claim.<br><br>The Holder of an Allowed Class 2D Claim will be entitled to the foregoing treatment ten days after the later of (a) the Effective Date, or (b) the date an order Allowing any such Class 2D Claim becomes a Final Order. |

5.    **Class 3 – Classes of General Unsecured Claims**

General Unsecured Claims are not entitled to priority under § 507(a) of the Bankruptcy Code. The following charts identify this Plan's treatment of the classes containing the General Unsecured Claims.

While there may be a recovery for Holders of Allowed General Unsecured Claims, it is not possible at this time to estimate the ultimate recovery for such Holders based, in part, on the extent to which asserted Secured Claims are ultimately Allowed, the extent to which any asserted Other Priority Claims and General Unsecured Claims are Disallowed and/or subordinated, and the extent of recoveries from Causes of Action.

| Class | Description | Impairment | Treatment |
|---|---|---|---|
| 3A | **General Unsecured Claims**<br><br>This Class is comprised of all Holders of General Unsecured Claims. | Impaired; Entitled to Vote | Unless the Holder of an Allowed Class 3A Claim agrees to less favorable treatment, the Holder of an Allowed Class 3A Claim will receive on the Effective Date a Trust Beneficial Interest in the amount of such Allowed Class 3A Claim and become a Trust Beneficiary in full and final satisfaction of its Allowed Class 3A Claim. |
| 3B | **Consumer Client Convenience Class** | Impaired; Entitled to Vote | Unless the Holder of an Allowed Class 3B Claim agrees to less favorable treatment, the Holder of an Allowed Class 3B Claim |

18

| | This Class is comprised of any former client of the Debtor that is the Holder of a properly Filed and supported General Unsecured Claim otherwise treatable under Class 3A of this Plan that elects treatment as a member of Class 3B in lieu of treatment in Class 3A. | | that elects to treatment in Class 3B will receive on the Effective Date a Trust Beneficial Interest equal to ~~the lesser of (i) one monthly payment made by such Holder to the Debtor; or (2) $1,000.~~30% of the amounts, reflected in the Debtor's books and records, that were paid to and received by the Debtor from such former client. ***Electing treatment in Class 3B and accepting an Allowed Class3B Claim does not entitle such Holder to payment in full of such Class 3B Claim, which will be paid Pro Rata with all Allowed Class 3A and Class 3B Claims.*** Such Holder of an Allowed Class 3B Claim will become a Trust Benficiary in full and final satisfaction of its Allowed Class 3B Claim.<br><br>A Holder's affirmative election to participate in Class 3B will be deemed a vote in favor of the Plan.<br><br>Holders of Class 3B Claims will be deemed to have expressly waived any other General Unsecured Claim in excess of the Allowed amount of such Holder's Class 3B Claim. Moreover, such Holder of an Allowed ~~General Unsecured~~Class 3B Claim expressly waives all claims, rights, and defenses that would otherwise exist against the Estate. In exchange for the foregoing waiver and release, the Estate and Liquidating Trust will expressly waive any objection to a Class 3B Claim except for objections based on failure to timely file such Claim ~~or failure to provide adequate documentation or support for such Claim.~~. |

6.    **Class 4 – Subordinated Claims**

| Class | Description | Impairment | Treatment |
|---|---|---|---|
| 4 | All claims that are Subordinated Claims | Impaired; Deemed to Reject and Not Entitled to Vote | Allowed Subordinated Claims, if any, shall be canceled, released, and extinguished as of the Effective Date, and will be of no further force or effect. Holders of Allowed Subordinated Claims, if any, will not receive any distribution on account of such Allowed Subordinated Claims. |

159188850.1

Except as expressly provided herein, the allowance, classification, and treatment of all Allowed Claims and Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, § 510(b) of the Bankruptcy Code, or otherwise. Pursuant to § 510 of the Bankruptcy Code, the Plan Proponents and the Liquidating Trustee reserve the right to reclassify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

7.    **Class 5 –Interests**

| Class | Description | Impairment | Treatment |
|-------|-------------|------------|-----------|
| 5 | All Interests in the Debtor | Impaired; Deemed to Reject and Not Entitled to Vote | Allowed Interests, if any, shall be canceled, released, and extinguished as of the Effective Date, and will be of no further force or effect.  Holders of Allowed Interests, if any, will not receive any distribution on account of such Allowed Interests. |

8.    **Special Provision Governing Unimpaired Claims**

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Estate's rights in respect of any Claims that are Unimpaired, including all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Claims that are Unimpaired.  Unless otherwise Allowed, Claims that are Unimpaired shall remain Disputed Claims under the Plan.

9.    **Confirmation Pursuant to §§ 1129(a)(10) and 1129(b) of the Bankruptcy Code**

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of confirmation by acceptance of the Plan by at least one Impaired Class of Claims.  The Plan Proponents shall seek Confirmation of the Plan pursuant to § 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests. The Plan Proponents reserve the right to modify the Plan in accordance with the terms of the Plan to the extent, if any, that confirmation, pursuant to § 1129(b) of the Bankruptcy Code, requires modification, including by modifying the treatment applicable to a Class

20

of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

10.    **Elimination of Vacant Classes; Presumed Acceptance by Non-Voting Classes**

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest, or a Claim or Interest temporarily Allowed by the Bankruptcy Court in an amount greater than zero as of the date of the Confirmation Hearing, shall be considered vacant and deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class, pursuant to § 1129(a)(8) of the Bankruptcy Code.

If a Class contains Claims or Interests eligible to vote and no Holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Holders of such Claims or Interests in such Class shall be presumed to have accepted the Plan.

## IV.    MEANS OF EFFECTUATING THIS PLAN

**A.    Post-Effective Date Management and Dissolution of the Debtor**

The Debtor shall be dissolved, under applicable non-bankruptcy law, on the Effective Date or as soon thereafter as is practicable to accomplish the purposes of this Plan.  The Debtor's interests and rights shall be vested, for all purposes, in the Liquidating Trust.

On the Effective Date, the authority, power, and incumbency of the persons acting as directors and officers of the Debtor shall be deemed to have been resigned, solely in their capacities as such, and the Liquidating Trustee shall be appointed as the sole manager and sole officer of the Debtor and shall succeed to the powers of the Debtor's directors and officers.  From and after the Effective Date, the Liquidating Trustee shall be the sole representative of, and shall act for, the Debtor to the extent necessary to implement and effectuate the terms of this Plan.

The Debtor shall continue in existence solely for the following limited purposes: (i) making any Effective Date payments required under the Plan; (ii) transferring the Debtor's assets to the Liquidating Trust under the terms of this Plan; and (iii) taking all steps to execute all instruments and documents necessary to effectuate the Plan.

159188850.1

**B.     The Liquidating Trust**

      **1.      Execution of Liquidating Trust Agreement**

Upon entry of a Confirmation Order, a Liquidating Trust Agreement in a form approved by the Bankruptcy Court shall be executed, and all other necessary steps shall be taken to establish the liquidating trust (the "Liquidating Trust") and the Trust Beneficial Interests therein, which shall be for the benefit of all creditors entitled to Trust Beneficial Interests under this Plan.

      **2.      Purposes of the Liquidating Trust**

The Liquidating Trust shall be established and maintained for the purpose set forth in the Liquidating Trust Agreement, including for the purpose of collecting, distributing, and liquidating all of the funds and property assigned to the Liquidating Trust and pursuing claims and Causes of Action assigned to the Liquidating Trust under this Plan for the benefit of the creditors entitled to receive distributions under this Plan from the Liquidating Trust in accordance with the terms of the Liquidating Trust Agreement and this Plan. The Liquidating Trust shall have no objective or authority to continue or to engage in the conduct of any trade or business.

      **3.      Transfer of Property to the Liquidating Trust**

           **a)      Liquidating Trust Assets.**  On the Effective Date, all right, title, and interest of the Debtor and the Estate in property and assets of any kind, other than Effective Date distributions to Holders of Allowed Claims entitled to payment on the Effective Date under the terms of this Plan, shall be deemed irrevocably transferred, absolutely assigned, conveyed, set over and delivered to the Liquidating Trust, in trust to, and in trust for, the benefit of the Trust Beneficiaries for the uses and purposes stated herein and in the Liquidating Trust Agreement, free and clear of any and all liens, claims, encumbrances and interests (legal, beneficial or otherwise) of all other entities to the maximum extent contemplated by and permissible under § 1141(c) of the Bankruptcy Code, except as set forth in the Plan Confirmation Order or this Plan. To the extent that certain assets of the Debtor or the Estate (and its right, title and interest in such assets), because of their nature or because they will accrue subsequent to the Effective Date, cannot be irrevocably transferred, absolutely assigned, conveyed, set over or delivered to the Liquidating Trust on the Effective Date, such assets shall be

1  deemed assigned, set over, transferred and conveyed to the Liquidating Trust as soon as practicable

2  after the Effective Date. The Liquidating Trustee is hereby granted the Power of Attorney to execute

3  documents on behalf of the Debtor, as reasonably determined by the Liquidating Trustee (in

4  recordable form where necessary or appropriate) to vest or perfect in or confirm to the Liquidating

5  Trustee title to and possession of the Liquidating Trust Assets. Without limitation, the Liquidating

6  Trust Assets shall include all Cash and Causes of Action of the Estate, less: (i) Effective Date

7  payments to Holders of (a) Allowed Administrative Claims, (b) Allowed Priority Claims. and

8  (c) Allowed Class 1 Secured Claims; and (ii) any funds attributable to a creditor or party in interest

9  that makes a timely challenge by the Fund Challenge Deadline (defined below) concerning the

10  characterization of Post-Petition Funds.

11         b) **Fund Challenge Deadline.** It is Trustee's belief that the Post-Petition Funds

12  have been or will be earned and are such property of the Estate for purposes of 11 U.S.C. § 541, and

13  are not property held in trust for third parties. If any party wishes to dispute the characterization of

14  the Post-Petition Funds as property of the Estate and/or use of the Funds to fund Plan payments, such

15  parties-in-interest must commence an adversary proceeding no later than ~~_____~~,**June 19,** 2024

16  **("Fund Challenge Deadline"). The Post-Petition Funds attributable to any creditor or party in**

17  **interest shall be deemed property of the Estate in accordance with the Plan without further**

18  **order of the Court if such creditor or party in interest does not commence an adversary**

19  **proceeding disputing the characterization of such Post-Petition Funds by the Fund Challenge**

20  **Deadline.**

21         c) **Ownership Challenge Deadline.** Certain parties claim an ownership interest

22  in client files, receivables, or other property or assets sold, pursuant to the Sale Order, and that such

23  property or receivables do not constitute property of the Estate for purposes of 11 U.S.C. § 541. If

24  any party wishes to assert an ownership interest in any Liquidating Trust Assets, such parties-in-

25  interest must commence an adversary proceeding no later than ~~_____~~,**June 19,** 2024

26  **("Ownership Challenge Deadline"). Parties in interest that do not commence an adversary**

27  **proceeding by the Ownership Challenge Deadline shall be barred from, and deemed to have**

28

**waived and forfeited, any ownership or similar claim in the Liquidating Trust Assets without**

**further order of the Court.**

d) **Transfer Subject to Allowed Secured Claims and Valid, Perfected Liens.** Notwithstanding the transfer of Liquidating Trust Assets to the Liquidating Trust, such transfer shall be subject to any valid, properly perfected Liens of Holders of Allowed Class 1 Secured Claims and the provisions of this Plan concerning distributions to Holders of Allowed Secured Claims.

e) **Transfer Subject to Payments Required by Plan.** Should the Liquidating Trust receive assets prior to satisfaction of all claims required to be paid by the Plan, it shall be liable for and the Liquidating Trustee shall be authorized to make such payments (e.g. Class 2 tax payments) from the Trust.

f) **Substitution in Litigation.** On or after the Effective Date, the Liquidating Trustee, in the capacity as representative of the Liquidating Trust, shall continue as a plaintiff in all Litigation or Causes of Action (on behalf of beneficiaries of the Liquidating Trust) in which the Debtor, Trustee on behalf of the Estate, or the Committee as the assignee of the Debtor, were plaintiff prior to the Effective Date. On the Effective Date, all claims and Causes of Action including those on the list of Potential Litigation Targets that belong to the Debtor and/or the Estate shall be deemed assigned to the Liquidating Trust for analysis by, and if appropriate pursuit by, the Liquidating Trustee. All recoveries and proceeds arising from litigation and Causes of Action shall be deemed assigned, set over, transferred, and conveyed to the Liquidating Trust upon receipt thereof. All fees and costs of the Liquidating Trust (and agents thereof) arising from or relating to pursuing litigation or Causes of Action or other services performed at the request of the Liquidating Trustee on behalf of the Liquidating Trust shall be paid in accordance with the Liquidating Trust Agreement. On and after the Effective Date the Liquidating Trustee shall be duly authorized to pursue, or to continue to pursue Causes of Action transferred to the Liquidating Trust. Subject to the terms of the Liquidating Trust Agreement, the Liquidating Trustee shall have full power and authority to settle, adjust, retain, enforce, or abandon the Causes of Action transferred to the Liquidating Trust, regardless of whether the pursuit of such claims was commenced prior or subsequent to the Effective Date.

4. **Securities Exempt**

Under § 1145 of the Bankruptcy Code, the issuance of Trust Beneficial Interests to Trust Beneficiaries, to the extent such Trust Beneficial Interests are deemed to be "securities," shall be exempt from registration under the Securities Act, as amended, and all applicable state and local laws requiring registration of securities. If the Liquidating Trustee determines, with the advice of counsel, that the Liquidating Trust is required to comply with the registration and reporting requirements of the Securities and Exchange Act of 1934, as amended, or the Investment Company Act of 1940, as amended, then the Liquidating Trustee shall take any and all actions to comply with such reporting requirements and file necessary periodic reports with the Securities and Exchange Commission.

5. **Establishment of the Post-Confirmation Oversight Committee**

Prior to the Effective Date, a committee shall be appointed to serve as the Post-Confirmation Oversight Committee pursuant to the terms of an agreement to be set forth in the Plan Supplement ("Post-Confirmation Oversight Committee Bylaws"). Members of the Post-Confirmation Oversight Committee shall have the duties and oversight responsibilities set forth in the Liquidating Trust Agreement and in the Plan.

6. **Governance of Liquidating Trust**

The Liquidating Trust shall be governed by the Liquidating Trustee, subject to the oversight of the Post-Confirmation Oversight Committee, in accordance with the Liquidating Trust Agreement and consistent with this Plan.

7. **Designation of the Liquidating Trustee**

Richard A. Marshack, or any successor appointed pursuant to the terms of the Liquidating Trust Agreement ("Liquidating Trustee"), shall serve as the Liquidating Trustee, subject to the provisions of the Liquidating Trust Agreement. The Liquidating Trustee shall retain and have all the rights, powers, and duties necessary to carry out his or her responsibilities under the Plan and the Liquidating Trust Agreement, and as otherwise provided in the Confirmation Order. The duties, obligations, and responsibilities of the Liquidating Trustee shall be as set forth in the Liquidating Trust Agreement. The Liquidating Trustee's responsibilities, duties and obligations are solely to the

Trust Beneficiaries. The Liquidating Trustee shall have an independent right and standing to request relief from the Bankruptcy Court that the Liquidating Trustee believes to be in accordance with the best interests of the Trust Beneficiaries. The Liquidating Trustee and Post-Confirmation Oversight Committee shall each be deemed to be a "party in interest" within the meaning of § 1109(b) of the Bankruptcy Code and a representative of the Estate under Bankruptcy Code §§ 1123(b)(3) and 1129(a)(5).

8.    **Rights, Powers, and Privileges of the Liquidating Trustee**

The Liquidating Trustee shall have all of the rights, powers, and privileges of a chapter 11 trustee and as expressly provided in this Plan and the Liquidating Trust Agreement. The Liquidating Trustee shall have the power to take the actions granted in the Liquidating Trust Agreement and any powers reasonably incidental thereto that the Liquidating Trustee, in his reasonable discretion, deems necessary or appropriate to fulfill the purpose of the Liquidating Trust, unless otherwise specifically limited or restricted by this Plan or the Liquidating Trust Agreement. The Liquidating Trustee shall be compensated in accordance with the Liquidating Trust Agreement.

9.    **Agents and Professionals**

Subject to the provisions of the Liquidating Trust Agreement, the Liquidating Trustee shall consult with and retain attorneys, accountants, appraisers, or other parties deemed by the Liquidating Trustee to have qualifications necessary to assist in the proper administration of the Liquidating Trust. The Liquidating Trustee may pay the reasonable salaries, fees, and expenses of such persons, including contingency fees, out of the Liquidating Trust Assets in the ordinary course to the extent permitted in the Liquidating Trust Agreement.

10.    **Investment and Safekeeping of Liquidating Trust Assets**

All monies and other Liquidating Trust Assets received by the Liquidating Trustee shall, until distributed or paid over as provided in the Liquidating Trust Agreement and this Plan, be held in the Liquidating Trust for the benefit of the Trust Beneficiaries, but need not be segregated from other Liquidating Trust Assets, unless and to the extent required by law or this Plan. The Liquidating Trustee shall be under no liability for interest or producing income on any moneys received by the

Liquidating Trust and held for distribution or payment to the beneficiaries of the Liquidating Trust, except as such interest shall actually be received by the Liquidating Trustee. Investments of any moneys held by the Liquidating Trustee shall be administered in view of the manner in which individuals of ordinary prudence, discretion and judgment would act in the management of their own affairs. For the removal of doubt, the investment powers of the Liquidating Trustee, other than those reasonably necessary to maintain the value of the Liquidating Trust Assets and to further the liquidating purpose of the Liquidating Trust, are limited to powers to invest in demand and time deposits, such as short-term certificates of deposits, in banks or other savings institutions, or other temporary, liquid investments, such as treasury bills.

11. **Limitations on Liquidating Trustee and Payment of Fees**

The Liquidating Trustee shall not at any time, on behalf of the Liquidating Trust or beneficiaries of the Liquidating Trust: (i) enter into or engage in any trade or business, and no part of the Liquidating Trust Assets or the proceeds, revenue or income therefrom shall be used or disposed of by the Liquidating Trust in furtherance of any trade or business, or (ii) except as provided in the Liquidating Trust Agreement, reinvest any Liquidating Trust Assets. The Liquidating Trustee may invest funds held in the Liquidating Trust consistent with the requirements of the Liquidating Trust Agreement and the prudent person standard of care, provided that the Liquidating Trustee shall have no liability in the event of insolvency of any financial institution in which he/she has invested any funds of the Liquidating Trust to the extent such institution is on the list of approved depositories by the United States Trustee. The Liquidating Trustee shall hold, collect, conserve, protect and administer the Liquidating Trust in accordance with the provisions of the Liquidating Agreement and this Plan, and pay and distribute amounts as set forth herein for the purposes set forth in the Liquidating Trust Agreement.

12. **Bankruptcy Court Approval of Liquidating Trustee Actions**

Except as provided in this Plan or otherwise specified in the Liquidating Trust Agreement, the Liquidating Trustee need not obtain the approval of the Bankruptcy Court in the exercise of any power, rights, or discretion conferred hereunder or account to the Bankruptcy Court. Subject to the

terms of the Liquidating Trust Agreement, the Liquidating Trustee shall have the right to submit to the Bankruptcy Court any question or questions regarding which the Liquidating Trustee may desire to have explicit direction and/or approval of the Bankruptcy Court with respect to the Liquidating Trust Assets, the Liquidating Trust, the Liquidating Trust Agreement, this Plan, or the Debtor. Subject to the terms of the Liquidating Trust Agreement, the Liquidating Trustee also shall have the authority, but not the obligation, to seek Bankruptcy Court approval to sell any Liquidating Trust Assets free and clear of any and all liens, claims and encumbrances.

13.    **Valuation of Liquidating Trust Assets**

The Liquidating Trustee shall make best efforts to understand and apprise the Trust Beneficiaries of the fair market value of the Liquidating Trust Assets upon request. The valuation shall be used consistently by all parties (including the Liquidating Trustee and the Trust Beneficiaries) for all federal income tax purposes. Any dispute regarding the valuation of Liquidating Trust Assets shall be resolved by the Bankruptcy Court.

14.    **Distributions**

The Liquidating Trustee shall serve as the Disbursing Agent with the power, subject to the terms of the Liquidating Trust Agreement, to: (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in a disbursing agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Liquidating Trustee to be necessary and proper to implement the provisions hereof. In his capacity as a disbursing agent, the Liquidating Trustee shall distribute at least annually to the Trust Beneficiaries (in the order set forth in the Plan) all net cash income plus all net cash proceeds from the liquidation of Liquidating Trust Assets; provided, however, that the Liquidating Trustee shall maintain at all times adequate cash or marketable securities as reserves, as may be reasonably necessary to maintain the value of the Liquidating Trust Assets, satisfy projected expenses and meet claims and contingent liabilities of the Liquidating Trust. The Liquidating Trustee may request the Bankruptcy Court resolve any dispute or

to rule upon any inquiry regarding the adequacy of reserves.

15.      **Record Date for Distributions**

On the Distribution Record Date, the Claims Register shall be closed and any party responsible for making distributions shall instead be authorized and entitled to recognize only those record holders listed on the Claims Register as of the close of business on the Distribution Record Date.

16.      **Pro Rata Share of Distributions**

Each of the Trust Beneficiaries shall receive its Pro Rata share of any and all distributions made by the Liquidating Trustee according to the priorities set forth in this Plan. The Liquidating Trustee may withhold from amounts distributable to any beneficiary of the Liquidating Trust any and all amounts, determined in the Liquidating Trustee's reasonable sole discretion to be required by any law, regulation, rule, ruling, directive or other governmental requirement.

17.      **Delivery of Distributions**

All distributions to be made to the Trust Beneficiaries shall be made by the Liquidating Trustee in accordance with the terms of this Plan and Liquidating Trust Agreement.

18.      **Undelivered Property**

Any Trust Beneficiary that fails to claim any Cash within the time specified in the Liquidating Trust Agreement shall forfeit all rights to any distribution under this Plan, and shall not be subject to the unclaimed property or escheat laws of any Governmental Unit. Upon forfeiture, such Cash (including interest thereon) shall be made available for re-distribution to all other Trust Beneficiaries in accordance with the Liquidating Trust Agreement. Trust Beneficiaries who fail to claim Cash shall have no claim whatsoever against the Liquidating Trust or the Liquidating Trustee, as applicable, or any of the other Trust Beneficiaries to whom distributions are made under this Plan on account of such distributions; provided, however, that the Liquidating Trustee may, but is not required to, undertake reasonable efforts, in his business judgment, to locate Trust Beneficiaries whose distributions are returned as undeliverable or whose checks are not timely cashed.

159188850.1

19. **De Minimis Distributions**

Treatment of de minimis distributions shall be in accordance with the Liquidating Trust Agreement.

20. **Payments Limited to Liquidating Trust Assets**

All distributions to be made from the Liquidating Trust to or for the benefit of any Trust Beneficiary shall be made only to the extent that the Liquidating Trustee has sufficient reserves to make such payments in accordance with the Liquidating Trust Agreement and this Plan. Each Trust Beneficiary shall have recourse only to the Liquidating Trust Assets for distribution under the Liquidating Trust Agreement and this Plan.

21. **Fees and Expenses**

Subject to the limitations set forth in the Liquidating Trust Agreement and in this Plan, the Liquidating Trustee shall pay and/or reserve for the operating and administrative expenses of the Liquidating Trust before approving distributions to or for the benefit of the Trust Beneficiaries. The Liquidating Trustee shall satisfy any fees and expenses of the Liquidating Trust with Liquidating Trust Assets.

22. **Priority of Distributions**

Any unencumbered recovery by the Liquidating Trust on account of the Liquidating Trust Assets shall be applied in the following order, after making or determining whether reserves should be set aside for any remaining payments required to be made by the Plan:

a. *First*, to pay and/or reserve for any unpaid or reasonably anticipated costs and expenses of the Liquidating Trust in accordance with the Liquidating Trust Agreement, including, without limitation, reasonable professional fees and expenses and court costs; and

b. *Second*, distributed to Trust Beneficiaries in accordance with the Liquidating Trust Agreement and this Plan.

23. **Compliance with Laws**

Any and all distributions of Liquidating Trust Assets shall be in compliance with applicable laws, including, but not limited to, applicable federal and state securities laws.

24.     **Identification of Beneficiaries of the Liquidating Trust**

Each of the Trust Beneficiaries shall be recorded and set forth in a schedule ("Beneficiary Schedule") maintained by the Liquidating Trustee and based upon the information contained in the Claims Register in accordance with the terms of the Liquidating Trust Agreement.

25.     **Beneficial Interest Only**

The ownership of a Trust Beneficial Interest, shall not entitle any Trust Beneficiary, or other party, to title in or to the Liquidating Trust Assets or to any right to call for a partition or division of such Liquidating Trust Assets or to require an accounting, except as specifically provided in the Liquidating Trust Agreement. Without limiting the generality of the foregoing, the Post-Petition Funds shall be deemed property of the Estate upon expiration of the Fund Challenge Deadline if no challenges are timely made. If any party in interest timely asserts an interest in the Post-Petition Funds by the Fund Challenge Deadline, the Bankruptcy Court shall decide whether such party holds an interest in the Post-Petition Funds.

26.     **Ownership of Beneficial Interests.**

Subject to the requirements and limitations of the Liquidating Trust Agreement, each Trust Beneficiary shall own a Trust Beneficial Interest equal in amount and priority to such Trust Beneficiary's Allowed Claim as set forth in this Plan; provided, however, that distributions on account of such Trust Beneficial Interests may be made on a Pro Rata basis with other Trust Beneficiaries of the same priority as set forth in this Plan.

27.     **Evidence of Beneficial Interest.**

Ownership of a Trust Beneficial Interest shall not be evidenced by any certificate, Security, or receipt or in any other form or manner whatsoever, except as maintained on the books and records of the Liquidating Trust by the Liquidating Trustee.

28.     **Conflicting Claims**

If any conflicting claims or demands are made or asserted with respect to a Trust Beneficial Interest, the Liquidating Trustee shall be entitled, at his sole election, to refuse to comply with any such conflicting claims or demands. In so refusing, and subject to any obligations set forth in the

1  Liquidating Trust Agreement, the Liquidating Trustee may elect to make no payment or distribution

2  with respect to the Trust Beneficial Interest represented by the claims or demands involved, or any

3  part thereof, and the Liquidating Trustee shall refer such conflicting claims or demands to the

4  Bankruptcy Court, which shall have exclusive jurisdiction over resolution of such conflicting claims

5  or demands. In so doing, the Liquidating Trustee shall not be or become liable to any party for his

6  refusal to comply with any of such conflicting claims or demands. The Liquidating Trustee shall be

7  entitled to refuse to act until either (a) the rights of the adverse claimants have been adjudicated by a

8  final order or (b) all differences have been resolved by a written agreement among all of such parties

9  and the Liquidating Trustee, which agreement shall include a complete release of the Liquidating

10 Trust and the Liquidating Trustee, his agents or his professionals (the occurrence of either (a) or (b)

11 being referred to as a "Dispute Resolution" in this paragraph). Until a Dispute Resolution is reached

12 with respect to such conflicting claims or demands, the Liquidating Trustee shall hold in a segregated

13 interest-bearing account with a United States financial institution any payments or distributions from

14 the Liquidating Trust to be made with respect to the Trust Beneficial Interest at issue. Promptly after

15 a Dispute Resolution is reached, the Liquidating Trustee shall transfer the payments and distributions,

16 if any, held in the segregated account, together with any interest and income generated thereon, in

17 accordance with the terms of such Dispute Resolution.

18       29.    **Limitation on Transferability**

19       Trust Beneficial Interests shall not be assignable, other than by operation of law.

20       30.    **Parties Dealing with the Liquidating Trustee**

21       In the absence of actual knowledge to the contrary, any person dealing with the Liquidating

22 Trust or the Liquidating Trustee shall be entitled to rely on the authority of the Liquidating Trustee

23 or any of the Liquidating Trustee's agents or professionals to act in connection with the Liquidating

24 Trust Assets. No person or entity dealing with the Liquidating Trustee shall have any obligation to

25 inquire into the validity, expediency, or propriety of any transaction by the Liquidating Trustee or

26 any agent or professional of the Liquidating Trustee.

27

28

31.    **Liquidating    Trustee    and    Post-Confirmation    Oversight    Committee's Exculpation, Indemnification, Insurance and Liability Limitation**

The Liquidating Trustee, Post-Confirmation Oversight Committee, and each of their respective agents, employees, professionals, attorneys, accountants, advisors and representatives retained by the Plan (collectively, "Liquidating Trust Indemnified Parties") shall be deemed exculpated and indemnified and held harmless in all respects by the Liquidating Trust and the Estate, to the fullest extent permitted by law, solely from the Liquidating Trust Assets for any losses, claims, damages, liabilities and expenses, including, without limitation, reasonable attorneys' fees, disbursements and related expenses that the Liquidating Trust Indemnified Parties may incur or to which the Liquidating Trust Indemnified Parties may become subject in connection with any action, suit, proceeding or investigation brought or threatened against one or more of the Liquidating Trust Indemnified Parties on account of the acts or omissions of an Liquidating Trust Indemnified Party solely in its capacity as such; provided, however, that the Liquidating Trust shall not be liable to indemnify any Liquidating Trust Indemnified Party for any act or omission constituting bad faith, fraud or willful misconduct by such Liquidating Trust Indemnified Party. Notwithstanding any provision herein to the contrary, the Liquidating Trust Indemnified Parties shall be entitled to obtain advances from the Liquidating Trust to cover their reasonable expenses of defending themselves in any action brought against them as a result of the acts or omissions, actual or alleged, of a Liquidating Trust Indemnified Party in its capacity as such. The foregoing indemnity in respect of any Liquidating Trust Indemnified Party shall survive the termination of such Liquidating Trust Indemnified Party from the capacity for which it is indemnified.

The Liquidating Trustee may obtain, at the expense of the Liquidating Trust and Estate commercially reasonable liability or other appropriate insurance with respect to the indemnification obligations of the Liquidating Trust Indemnified Parties. On and after the Effective Date, the Liquidating Trustee shall be authorized to purchase D&O Liability Insurance Policies for the benefit of any Liquidating Trust Indemnified Party in the ordinary course of business.

32.    **Injunctions and Releases**

The automatic stay is lifted upon the Effective Date as to property of the bankruptcy Estate but such property will be transferred to the Liquidating Trust free and clear of liens, claims, and interests except as otherwise provided in the Plan.  However, as of the Effective Date and subject to the terms of the Plan, the Confirmation Order shall enjoin the prosecution, whether directly, derivatively or otherwise, of any claim, obligation, suit, judgment, damage, demand, debt, right, cause of action, liability or interest released, discharged, terminated, or otherwise treated pursuant to this Plan.

Except as provided in this Plan or the Confirmation Order, as of the Effective Date, all entities that have held, currently hold or may hold a Claim or other debt or liability that is provided for under this Plan or an Interest or other right of a creditor or equity security holder that is extinguished, pursuant to the terms of this Plan, are permanently enjoined from taking any of the following actions against the Debtor, the Plan Proponents, the Liquidating Trust, the Liquidating Trustee, the Post-Confirmation Oversight Committee, their property, and, except with respect to the Debtor, each of their respective agents, employees, professionals, attorneys, accountants, advisors and representatives, on account of any such discharged claims, debts or liabilities or extinguished interests or rights: (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting or enforcing any lien or encumbrance; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtor; and (v) commencing or continuing any action in any manner, in any place, that does not comply with or is inconsistent with the provisions of this Plan.

By accepting distribution pursuant to the Plan, each Holder of an Allowed Claim receiving distributions, pursuant to the Plan, will be deemed to have specifically consented to the injunctions set forth in this Section of the Plan, and the jurisdiction of the Bankruptcy Court.

33.    **Terms of Service of the Liquidating Trustee.**

The terms of service of the Liquidating Trustee, including the conditions of resignation and

removal, shall be as set forth in the Liquidating Trust Agreement.

34.    **Appointment of Successor Liquidating Trustee**

The terms of the appointment of an interim or successor Liquidating Trustee, including their respective rights and duties, shall be as set forth in the Liquidating Trust Agreement.

35.    **Annual Reporting and Filing Requirements**

The Liquidating Trustee shall file tax returns for the Liquidating Trust as a grantor trust, pursuant to § 1.671-4(a) of the Treasury Regulations and any other applicable laws or regulations, and shall furnish information statements to Trust Beneficiaries setting forth their allocable share of the income, loss, deduction or credit of the Liquidating Trust and instruct them to report such items on their federal income tax returns. The Liquidating Trustee may withhold from amounts distributable to any Trust Beneficiary any and all amounts, determined in the Liquidating Trustee's reasonable sole discretion, to be required by any law, regulation, rule, ruling, directive or other governmental requirement. The Liquidating Trustee shall have the right to employ an accountant and any other professionals needed to assist the Liquidating Trustee for this purpose. The tax returns filed by the Liquidating Trustee shall report all Liquidating Trust earnings for the taxable year being reported. All of the Liquidating Trust's income shall be treated as subject to tax on a current basis. For federal income tax purposes, items of income, gain, loss, and deduction of the Liquidating Trust will be allocated to Trust Beneficiaries in a manner, to be determined by the Liquidating Trustee, that is consistent with applicable Treasury Regulations and that reflects the  respective contributions Trust Beneficiaries and their respective interests in the interim and final distributions to be made by the Liquidating Trust, and such Trust Beneficiaries shall be responsible for the payment of taxes on a current basis that result from such allocations.

36.    **Confidentiality**

The Liquidating Trustee shall hold strictly confidential and not use for personal gain any material, non-public information of or pertaining to any entity to which any of the Liquidating Trust Assets relate or of which he (or she as the case may be) becomes aware in his capacity as Liquidating Trustee.

37.  **Maintenance of Records**

The Liquidating Trustee shall maintain books and records containing a description of all property from time to time constituting the Liquidating Trust Assets and an accounting of all receipts and disbursements. Upon sixty (60) days' prior written notice delivered to the Liquidating Trustee, such books and records shall be open to inspection by any beneficiary of the Liquidating Trust at any reasonable time during normal business hours; provided that, if so requested, such Trust Beneficiary shall have entered into a confidentiality agreement satisfactory in form and substance to the Liquidating Trustee. The Liquidating Trustee shall furnish to any Trust Beneficiary, upon written request, an annual statement of receipts and disbursements of the Liquidating Trust. Such books and records may be destroyed without further notice to parties or approval of the Bankruptcy Court upon the earlier of five (5) years after the final report to the Bankruptcy Court has been rendered by the Liquidating Trustee or one year after the funds held by the Liqidating Trust have been substantially distributed (unless such records and documents are necessary to fulfill any remaining obligations of the Liquidating Trustee pursuant to the Liquidating Trust Agreement).

38.  **Duration and Termination of the Liquidating Trust**

The Liquidating Trust shall become effective upon the Effective Date of this Plan, pursuant to the terms of the Liquidating Trust Agreement. Thereupon, the Liquidating Trust shall remain and continue in full force and effect until the Liquidating Trust is terminated in accordance with the provisions of the Liquidating Trust Agreement and this Plan.

39.  **Preservation of Privilege.**

In connection with the rights, claims, and causes of action that constitute the Liquidating Trust Assets, any attorney-client privilege, work product privilege, or other privilege or immunity attaching to any documents or communications (whether written or oral) transferred to the Liquidating Trust, pursuant to the terms of this Plan or otherwise shall vest in the Liquidating Trust and be subject to the control of the Liquidating Trustee. The Trustee is authorized to take all necessary actions to effectuate the transfer of such privileges from the Estate to the Liquidation Trust, as necessary.

36

159188850.1

40.    **No Bond**

Notwithstanding, any state law to the contrary, the Liquidating Trustee shall be exempt from giving any bond or other security in any jurisdiction.

41.    **No Execution**

All Liquidating Trust Assets shall be deemed *in custodia legis* until such times as the Liquidating Trust Assets has actually been paid to or for the benefit of a beneficiary of the Liquidating Trust, and no Trust Beneficiary or any other person can execute upon, garnish or attach the Liquidating Trust Assets or the Liquidating Trust in any manner or compel payment from the Liquidating Trust except by an order of the Bankruptcy Court that becomes a Final Order. Payment will be solely governed by the Liquidating Trust Agreement and this Plan.

42.    **Intention to Establish Grantor Trust**

The Liquidating Trust Agreement is intended to create a grantor trust for United States federal income tax purposes and, to the extent provided by law, shall be governed and construed in all respects as such a grantor trust.

43.    **Amendment of the Liquidating Trust Agreement**

The Liquidating Trust Agreement may be amended at any time, pursuant to the terms of the Liquidating Trust Agreement.

**C.    Effective Date Distributions to Be Made by Trustee**

On the Effective Date, the Trustee will pay all Effective Date payments to Holders of (i) Allowed Administrative Claims, (ii) Allowed Priority Claims. and (iii) Allowed Class 1 Secured Claims.  The Trustee shall also reserve, for subsequent determination by the Liquidating Trustee, any Post-Petition Funds attributable to a creditor or party in interest that makes a timely challenge by the Fund Challenge Deadline. After making such Effective Date payments and Post-Petition Fund reserves, Trustee shall transfer the remaining Estate property to the Liquidating Trust in the manner directed by the Liquidating Trustee.

**D.    Settlement Agreements**

Any settlement effectuated prior to the confirmation of this Plan, upon notice thereof to the

Bankruptcy Court and entry of a Final Order approving such settlement, shall be deemed incorporated into this Plan and the Confirmation Order including provisions of such settlement that shall be deemed a settlement pursuant to § 1123(b)(3)(A) of the Bankruptcy Code.

**E.      Claims Administration and Prosecution and Plan Distributions**

The Liquidating Trustee shall have the power and authority to prosecute and resolve objections to Disputed Claims as set forth in the Liquidating Trust Agreement. The Liquidating Trust shall retain all defenses, rights of setoff, recoupment, and counterclaims with respect to each of the foregoing, including but not limited to those as defined as Causes of Action. The Liquidating Trust shall also hold, manage, and distribute Plan distributions to the Holders of Allowed Claims consistent with this Plan and the Liquidating Trust Agreement.

The Court shall retain jurisdiction over any objections to claims brought by the Liquidating Trust following the Effective Date. Nothing contained in the Plan shall constitute a waiver or release by the Liquidating Trust of any rights of setoff or recoupment, or of any defense, a creditor may have with respect to any Claim. The Liquidating Trust may withhold from property to be distributed under the Plan and will place in reserve a sufficient amount of cash to be distributed on account of claims that are Disputed and have not been allowed as of the date of distribution to creditors of any particular Class as if such Claims were allowed in full.

**F.      Books and Records of the Debtor**

Unless applicable non-bankruptcy law permits the distribution or destruction of certain of the Debtor's business records at an earlier date, or the Debtor or the Liquidating Trust obtains an order of the Bankruptcy Court providing otherwise, subject to the terms and conditions of the Liquidating Trust Agreement governing the books and records of the Liquidating Trust, the Liquidating Trustee shall have the responsibility of storing and maintaining the Debtor's books and records until one year after the Effective Date, after which time such books and records may be abandoned or destroyed without further Bankruptcy Court order, unless applicable non-bankruptcy law requires the retention and maintenance of any such books and records for a longer period, in which instance the Liquidating Trustee shall retain such books and records for at least the minimum period required by applicable

38

non-bankruptcy law. For purposes of this Section of the Plan, books and records include computer generated or computer-maintained books and records and computer data, as well as electronically generated or maintained books and records or data, along with books and records of the Debtor maintained by or in possession of third parties and all of the clams and rights of the Debtor and in and to its books and records, wherever located.

**G.    Corporate Action**

Upon the Effective Date, all actions contemplated under the Plan, regardless of whether taken before, on or after the Effective Date, shall be deemed authorized and approved in all respects.  All matters provided for in the Plan or deemed necessary or desirable by the Plan Proponents or the Liquidating Trustee before, on, or after the Effective Date involving the corporate structure of the Debtor or Liquidating Trust, and any corporate action required by the Debtor or the Liquidating Trust in connection with the Plan or corporate structure of the Debtor or Liquidating Trust, shall be deemed to have occurred and shall be in effect on the Effective Date, without any requirement of further action by Holders of Interests, directors, managers, members or officers of the Debtor.  Before, on, or after the Effective Date, the Liquidating Trustee, on behalf of the Liquidating Trust, the Debtor and the Estate, as applicable, shall be authorized to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated under the Plan (or necessary or desirable to effect the transactions contemplated under the Plan) in the name of and on behalf of the Liquidating Trust, the  Debtor and the Estate, as applicable. The authorizations and approvals contemplated by this Section of the Plan shall be effective notwithstanding any requirements under non-bankruptcy law.

**H.    Effectuating Documents and Further Transactions**

On and after the Effective Date, the Liquidating Trustee is authorized to and may issue, execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement and further evidence the terms and conditions of this Plan and the Liquidating Trust Agreement in the name of and on behalf of the Debtor, the Liquidating Trust and Estate, as applicable, without the need for any approvals, authorizations, or consents except for those expressly required pursuant to the Plan.

**I.      Procedures for Disputed, Contingent, or Unliquidated Claims**

      **1.      Objections to Claims.**

The Liquidating Trustee shall be entitled to object to any and all Claims against the Estate, subject to the time limitations set forth in this Plan.

      **2.      No Distribution Pending Allowance of Claims.**

Notwithstanding any other provision of this Plan, if any portion of a Claim is a Disputed Claim, no payment or distribution provided under this Plan shall be made on account of such Disputed Claim unless and until such Disputed Claim becomes an Allowed Claim.

      **3.      Distributions Upon Allowance of Disputed Claims.**

The Holder of a Disputed Claim that becomes an Allowed Claim shall receive a distribution(s) in Cash, subject to the terms of this Plan and the Liquidating Trust Agreement. Such distributions shall be made in accordance with this Plan based upon the distributions that would have been made to such Holder under this Plan if the Disputed Claim had been an Allowed Claim on or prior to the Effective Date. No Holder of a Disputed Claim shall have any claim against the Liquidating Trust Assets with respect to such Disputed Claim until such Disputed Claim becomes an Allowed Claim, and no Holder of a Disputed Claim shall have any right to interest on such Disputed Claim unless otherwise provided in the Plan.

      **4.      Resolution of Disputed Claims.**

Unless otherwise ordered by the Bankruptcy Court after notice and a hearing and subject to the terms of the Liquidating Trust Agreement, following the Effective Date, the Liquidating Trustee shall have the right to the exclusion of all others (except as to applications for allowances of compensation and reimbursement of expenses under §§ 328(a), 330, and 503 of the Bankruptcy Code) to make and file objections to claims and shall serve a copy of each objection upon the Holder of the Claim to which the objection is made as soon as practicable, but in no event later than two hundred and seventy (270) days after the Effective Date (subject, however, to the right of the Liquidating Trustee to seek an extension of time to file such objections by seeking such extension with approval from the Bankruptcy Court). After the expiration of the 270-day period for the Liquidating Trustee

40

1  to file objections to claims (and the expiration of any extended period requested and granted by the

2  Liquidating Trustee), and the final resolution of any then-pending claims objections, all creditor

3  claims shall be deemed fixed.

4         5.      **Estimation.**

5         The Liquidating Trustee may at any time request that the Bankruptcy Court estimate any

6  contingent, unliquidated or disputed Claim pursuant to § 502(c) of the Bankruptcy Code regardless

7  of whether the Debtor of the Liquidating Trust previously objected to such Claim, and the Bankruptcy

8  Court shall retain jurisdiction to estimate any claim at any time during litigation concerning any

9  objection to any claim, including, without limitation, during the pendency of any appeal relating to

10 any such objection. In the event that the Bankruptcy Court estimates any contingent, unliquidated or

11 disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or

12 a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated

13 amount constitutes a maximum limitation on the amount of such Claim, the Liquidating Trustee may

14 pursue supplementary proceedings to object to the allowance of such Claim. All of the

15 aforementioned objection, estimation and resolution procedures are intended to be cumulative and

16 not exclusive of one another. On and after the Effective Date, Claims that have been estimated may

17 be compromised, settled, withdrawn or otherwise resolved subsequently, without further order of the

18 Bankruptcy Court.

19 **J.      Distributions to Be Made Pursuant to the Plan**

20        Distributions under the Plan on Claims that are Allowed on the Effective Date will be made

21 by the Trustee in the manner provided by the Plan. The Liquidating Trust Agreement will govern the

22 procedures for distributions made from the Liquidating Trust pursuant to the Plan.

23        Distributions made by the Trustee under the Plan may be made by check drawn on a domestic

24 bank or by wire transfer.  Except as otherwise agreed to by the Trustee in writing, distributions to be

25 made to Holders of Claims Allowed on or before the Effective Date, pursuant to this Plan, may be

26 delivered by regular mail, postage prepaid, to the address shown in the Debtor's schedules, as

27 amended or, if a different address is stated in a Proof of Claim filed with the Bankruptcy Court, to

28

such address. The Trustee may also make distributions to consumer clients by electronic means if he determines that doing so is more reliable than other methods for making payment.

Checks issued by the Trustee to pay Allowed Claims shall be null and void if not negotiated within ninety (90) days after the date of issuance thereof ("Claiming Period"). Requests for reissuance of any check shall be made to the Trustee by the Holder of the Allowed Claim to whom such check originally was issued, prior to the expiration of the Claiming Period. After such date, the unclaimed property held on account of such voided check or such claim shall vest in the Liquidating Trust free and clear of all claims and interests and be applied in accordance with the terms of the Plan.

**K.**    **Conditions Precedent to Confirmation and the Effective Date of the Plan**

1.    Conditions Precedent to Confirmation of the Plan

a)    The Plan Supplement and all of the schedules, documents, and exhibits contained therein shall have been Filed in form and substance acceptable to the Plan Proponents; and

b)    The Bankruptcy Court shall have entered a Confirmation Order with respect to the Plan in form and substance acceptable to the Plan Proponents.

2.    Conditions Precedent to the Effective Date

The Effective Date shall be the first business day that is 14 days after satisfaction (or waiver pursuant to the provisions of Section IV.K.3) of all of the following conditions:

a)    The Bankruptcy Court shall have entered the Confirmation Order, which Confirmation Order shall not have been terminated, suspended, vacated or stayed, shall not have been amended except with the consent of the Plan Proponents, and shall:

(i)    authorize the Trustee and Liquidating Trustee to take all actions necessary to enter into, implement, and consummate the contracts, instruments, releases, leases, indentures, and other agreements or documents created in connection with the Plan;

(ii)    decree that the provisions of the Confirmation Order and the Plan are nonseverable and mutually dependent;

(iii)    authorize the Trustee and Liquidating Trustee, as applicable or necessary, to the extent not previously authorized by the Sale Order, to: (a) make all distributions

required under the Plan; and (b) enter into any agreements, transactions, and sales of property as set forth in the Plan Supplement;

(iv) authorize the implementation of the Plan and Liquidating Trust Agreement in accordance with their terms; and

(v) provide that, pursuant to § 1146 of the Bankruptcy Code, the assignment or surrender of any lease or sublease, and the delivery of any deed or other instrument or transfer order, in furtherance of, or in connection with the Plan, including any deeds, bills of sale, or assignments executed in connection with any disposition or transfer of assets contemplated under the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax;

b) Sufficient Funds being available in the Estate to pay claims that must be paid on the Effective Date including Allowed Administrative Claims and Allowed Priority Claims;

c) The funding of the reserve for claimants submitting challenges to the characterization of the Post-Petition Funds by the Fund Challenge Deadline;

d) Sufficient funds being available in the Estate to fund the operations of the Liquidating Trust as reasonably determined by the Plan Proponents;

e) the Trustee shall have obtained all authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the Plan; and

f) the final version of the Plan Supplement and all of the schedules, documents, and exhibits contained therein shall have been Filed in a manner consistent in all material respects with the Plan and shall be in form and substance acceptable to the Plan Proponents.

3.    Waiver of Conditions

The conditions to Confirmation and to the Effective Date set forth in above may be waived by the Plan Proponents , without notice, leave, or order of the Bankruptcy Court or any formal action other than proceeding to confirm or consummate the Plan.

4.    Effect of Failure of Conditions

If Confirmation of the Plan does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall: (1) constitute a waiver or release of

43

any Claims by the Trustee, Estate, the Committee, any Holders, or any other Entity; (2) prejudice in any manner the rights of the Trustee, Estate, the Committee, any Holders, or any other Entity; or (3) constitute an admission, acknowledgment, offer or undertaking by the Trustee, Estate, the Committee, any Holders, or any other Entity in any respect. Notwithstanding the foregoing, the failure of Confirmation to occur shall not require or result in the voiding, rescission, reversal, or unwinding of the Sale Order.

**L.      Executory Contracts and Unexpired Leases**

Any executory contracts or unexpired leases (i) which have not expired by their own terms on or prior to the Effective Date, or (ii) which have not been assumed or assigned or rejected with the approval of the Court or pursuant to procedure established by order of the Court shall be deemed rejected by the Estate on the Effective Date. A schedule of all executory contracts and/or unexpired leases to be assumed/rejected upon confirmation of the Plan shall be included as a Plan Supplement.

The entry of the Confirmation Order by the Court shall constitute approval of such assumption and/or rejection as appropriate pursuant to 11 U.S.C. §§ 365(a) and 1123(b)(2).

Unless otherwise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases pursuant to the Plan or the Confirmation Order, if any, must be filed with the Bankruptcy Court within thirty (30) days after the later of (1) the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection, (2) the effective date of such rejection (or deemed rejection), or (3) the Effective Date. Any Claims arising from the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan or Confirmation Order not filed with the Bankruptcy Court within such time will be automatically Disallowed, forever barred from assertion, and shall not be enforceable against the Debtor, the Liquidating Trust and the Estate, or their property without the need for any objection by the Liquidating Trustee or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied and released, notwithstanding anything in the Schedules or a Proof of Claim to the contrary. For the avoidance of doubt, nothing provided

herein shall extend or modify any previously established deadline to file a claim arising from the rejection of an Executory Contract or Unexpired Lease previously rejected by the Liquidating Trustee or the Debtor._ To the extent any Claims are filed based on rejection of executory contracts or unexpired leases, such Claims shall be treated as a General Unsecured Claims in Class 3A of this Plan.

**M.    Cure of Defaults for Executory Contracts and Unexpired Leases Assumed (or Assumed and Assigned)**

Any cure obligations under each Executory Contract and Unexpired Lease to be assumed (or assumed and assigned) pursuant to the Plan shall be satisfied, pursuant to § 365(b)(1) of the Bankruptcy Code, by performance or payment of the default amount in Cash on or after the Effective Date, subject to the limitation described below, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree. In the event of a dispute regarding (1) the cure obligation, (2) the ability of the Debtor, the Liquidating Trustee or any assignee to provide "adequate assurance of future performance" (within the meaning of § 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed (or assumed and assigned), or (3) any other matter pertaining to assumption (or assumption and assignment) or the cure obligations required by § 365(b)(1) of the Bankruptcy Code, such dispute shall be determined either (x) by agreement of the parties to such dispute or (y) following the entry of a Final Order or orders resolving the dispute and approving the assumption (or assumption and assignment).

At least fourteen (14) days prior to the Confirmation Hearing, and except as to any Executory Contracts or Unexpired Leases that have been assumed or rejected by a separate order of the Court, the Liquidating Trustee shall distribute, or cause to be distributed to the applicable counterparties and their known counsel, notices of proposed assumption (or assumption and assignment), proposed cure, procedures for objecting thereto, and procedures for resolution by the Bankruptcy Court of any related disputes. Any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption (or assumption and assignment) or related cure amount must be filed, served, and actually received by the Debtors at least three (3) days prior to the Confirmation Hearing. Any counterparty

to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption (or assumption and assignment) or cure amount will be deemed to have assented to such assumption (or assumption and assignment) or cure. To the extent that the Liquidating Trustee seek to assume (or assume and assign) an Executory Contract or Unexpired Lease pursuant to the Plan, the Liquidating Trustee will (in the applicable notice and/or Schedule): (a) identify the assignee; and (b) provide "adequate assurance of future performance" (within the meaning of § 365 of the Bankruptcy Code) under the applicable Executory Contract or Unexpired Lease to be assumed (or assumed and assigned), which adequate assurance information will be provided with the notices of proposed assumption (or assumption and assignment).

Subject to cure or adequate assurance of prompt cure, as set forth in § 365(b) of the Bankruptcy Code, assumption (or assumption and assignment) of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Cure Obligations or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed (or assumed and assigned) Executory Contract or Unexpired Lease at any time prior to the effective date of assumption (or assumption and assignment). Subject to full satisfaction of Cure Obligations, any Proofs of Claim filed with respect to an Executory Contract or Unexpired Lease that has been assumed (or assumed and assigned) shall be deemed Disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court.

The Trustee or the Liquidating Trustee may settle any Cure Claim dispute without any further notice to or action, order, or approval of the Bankruptcy Court; provided that notice of such settlement will be distributed to known counsel of the applicable counterparty by electronic mail.

**N.**     **Preexisting Obligations to the Debtors under Executory Contracts and Unexpired Leases.**

Rejection of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtor or the Estate, as

46

applicable, under such Executory Contracts or Unexpired Leases. In particular, notwithstanding any non-bankruptcy law to the contrary, the Liquidating Trustee expressly reserves and does not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations on goods or services previously purchased by the Debtor contracting from non-debtor counterparties to rejected Executory Contracts or Unexpired Leases.

**O.    Retention of Jurisdiction**

After confirmation of this Plan and occurrence of the Effective Date, in addition to any jurisdiction which exists in any other court, the Bankruptcy Court will retain such jurisdiction as is legally permissible including for the following purposes:

i.    To resolve any and all disputes regarding the operation, interpretation , or enforcement of this Plan (including Plan Supplements), Confirmation Order, and Liquidating Trust Agreement;

ii.    To determine the allowability, classification, or priority of Claims upon objection by the Trustee, the Liquidating Trustee, or any other parties in interest with standing to bring such objection or proceeding and to consider any objection to claim whether such objection is filed before or after the Effective Date;

iii.    To determine the extent, validity, perfection, and priority of any Lien asserted against property of the Debtor, property of the Debtor's Estate, and property of the Liquidating Trust;

iv.    To construe and take any action to enforce this Plan, the Plan Confirmation Order, and any other order of the Bankruptcy Court, issue such orders as may be necessary for the implementation, execution, performance, and consummation of this Plan and the Confirmation Order, and all matters referred to in this Plan and the Plan Confirmation Order, and to determine all matters that may be pending before the Bankruptcy Court in this case on or before the Effective Date with respect to any person or entity related thereto;

v.    To determine (to the extent necessary) any and all applications for allowance of compensation and reimbursement of expenses of professionals for the period on or before the Effective Date;

vi.    To determine any request for payment of administrative expenses of the Estate;

vii.    To determine motions for the rejection, assumption, or assignment of executory contracts or unexpired leases filed before the Effective Date and the allowance of any claims resulting therefrom;

viii.    To determine all applications, motions, adversary proceedings, contested matters, and any other litigated matters instituted during the pendency of the Bankruptcy Case, whether before, on, or after the Effective Date including Causes of Action, and the Retained Actions. The Liquidating Trustee shall have the right and standing to commence any Causes of Action after the Effective Date and to continue with the prosecution of any Causes of Action commenced by the Debtor prior to the Effective Date including, without limitation, the Retained Actions;

ix.    To determine such other matters and for such other purposes as may be provided in the Plan Confirmation Order;

x.    To modify this Plan, under § 1127 of the Bankruptcy Code, in order to remedy any apparent defect or omission in this Plan or to reconcile any inconsistency in this Plan so as to carry out its intent and purpose;

xi.    Except as otherwise provided in this Plan or the Plan Confirmation Order, to issue injunctions, to take such other actions or make such other orders as may be necessary or appropriate to restrain interference with this Plan or the Confirmation Order, or the execution or implementation by any person or entity of this Plan or the Confirmation Order;

xii.    To issue such orders in aid of consummation of this Plan or the Confirmation Order, notwithstanding any otherwise applicable nonbankruptcy law, with respect to any person or entity, to the fullest extent authorized by the Bankruptcy Code or Bankruptcy Rules; and

xiii.    To enter a final decree closing this Bankruptcy Case.

xiv.    To interpret and enforce the terms of the Plan, the Plan Supplement, the Confirmation Order, the Liquidating Trust Agreement, and such other pleadings, documents and exhibits related to the Plan.

xv.    To determine such other matters and for such other purposes as may be provided in the Confirmation Order.

**P.      Reservation of Rights**

Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the Assumed Executory Contracts and Unexpired Leases Schedule, nor anything contained in the Plan, shall constitute an admission by the Plan Proponents or the Liquidating Trustee that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Debtor or the Estate has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Plan Proponents or the Liquidating Trustee shall have thirty (30) days following entry of a Final Order resolving such dispute to alter its treatment of such contract or lease under the Plan.

**V.      EFFECT OF CONFIRMATION OF THIS PLAN**

**A.      Discharge**

The Debtor will not receive a discharge under this Plan pursuant to and in accordance with the provisions of § 1141 of the Bankruptcy Code because this Plan contemplates and will result in a sale or liquidation of all or substantially all of the property of the Debtor's Estate.

**B.      No Revesting of Estate Property in the Debtor**

All Property of the Estate will remain Property of the Estate and/or the Liquidating Trust free and clear of all claims and interests except as provided in the Plan. No Estate assets shall revert to the Debtor as a result of confirmation. The Liquidating Trustee shall be the entity responsible for carrying out the terms of the Plan and to comply with any orders of the Court regarding the Plan or the assets of the Estate, subject to the terms of the Liquidating Trust Agreement and the Confirmation Order.

**C.      No Liability for Solicitation or Participation**

As specified in § 1125(e) of the Bankruptcy Code, persons that solicit acceptances or rejections of the Plan and/or that participate in the offer, issuance, sale, or purchase of securities offered or sold under the Plan, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, shall not be liable on account of such solicitation or participation, for violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the offer, issuance, sale, or purchase of securities.

**D.      Exculpation; Limitation of Liability**

To the maximum extent permitted by law, neither the Trustee, the Liquidating Trustee, the Estate, the Committee, the Post-Confirmation Oversight Committee, nor any of their employees, officers, directors, shareholders, agents, members, representatives, or the professionals employed or retained by any of them, whether or not by Court order shall have or incur liability to any person or entity for an act taken or omission made in good faith in connection with or related to the formulation and implementation of the Plan, the Disclosure Statement, or a contract, instrument, release, or other agreement or document created in connection therewith, the solicitation of acceptances for or confirmation of the Plan, or the consummation and implementation of the Plan and the transactions contemplated therein.; provided, however, that the foregoing exculpation shall not extend to any act or omission constituting fraud, willful misconduct, or gross negligence by the foregoing parties. Each of the exculpated persons set forth in this Section of the Plan shall in all respects be entitled to reasonably rely on the advice of counsel with respect to its duties and responsibilities under the Plan. Notwithstanding the foregoing, nothing contained in this Plan shall effectuate an exculpation, release, or injunction in favor of the Debtor's employees, officers, directors, shareholders, agents, members, representatives, Affiliates, alter egos, or the professionals employed or retained by any of them, and all rights and Causes of Action held by the Estate against any of the foregoing are expressly preserved by this Plan.

**E.      Preservation of all Litigation and Causes of Action**

After confirmation of the Plan, the Liquidating Trust shall retain all rights to continue, commence and pursue, as appropriate, any and all claims or Causes of Action, including those identified in the Plan Supplement, and objections to Claims, whether arising before or after the date on which the Debtor filed its petition, in any court or other tribunal including, without limitation, in an adversary proceeding filed in the Bankruptcy Case. The failure to list any potential or existing claims or causes of action shall not limit the rights of the Liquidating Trustee to pursue any claims or causes of action not listed or identified. After the Effective Date, the Liquidating Trustee shall have the absolute authority to prosecute, waive, adjust, or settle any and claims, including all Causes of

50

159188850.1

Action, without the need for approval by the Court, subject to the terms of the Liquidating Trust Agreement.

Unless a claim or Cause of Action against a creditor or other entity is expressly waived, relinquished, released, compromised, or settled in the Plan or any other Final Order of the Court, the Estate expressly reserves such claim or Cause of Action for later adjudication (including, without limitation, claims and causes of action not specifically identified or which the Debtor or its Estate may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to the Plan Proponents, or the Estate at this time or facts or circumstances which may change or be different from those which the Plan Proponents or the Estate now believe to exist).  No preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or otherwise) or laches shall apply to such claims, or Causes of Action upon or after the confirmation or consummation of the Plan based on the Disclosure Statement, the Confirmation Order, except where such claims and Causes of Action have been explicitly released in the Plan. In addition, the Liquidating Trust, and the Estate expressly reserve the right to pursue or adopt any claims alleged in any lawsuit in which the Debtor is a defendant or an interested party, against any person or entity, including without limitation, the plaintiff or co-defendant in such lawsuits.

Delivery (by any means) of the Plan or the Disclosure Statement approved by the Court to any person whom the Debtor and/or Estate has incurred an obligation, or who has received a transfer of money or property of the Debtor, or who has transacted business with the Debtor or the Estate shall constitute actual notice that such obligation, transfer, or transaction may be reviewed by the Trustee subsequent to the approval by the Court of the Plan and may, if appropriate, be the subject of an action after the approval by the Court of the Plan, whether or not (i) such person has field a proof of claim in this Case; (ii) such person's proof of claim has been the subject of an objection; (iii) such person's claim was included in the schedules; or (iv) such person's scheduled claim has been identified by the Trustee as disputed, contingent, or unliquidated.

159188850.1

**F.      Modification of this Plan.**

The Plan Proponents may modify this Plan at any time before confirmation. However, the Bankruptcy Court may require a new disclosure statement and/or re-voting on this Plan if the Plan Proponents materially modifies this Plan before confirmation. The Liquidating Trustee may seek to modify this Plan at any time after confirmation of this Plan so long as (1) this Plan has not been substantially consummated, (2) such modification is approved by the Post-Confirmation Oversight Committee, or (3) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

**G.      Post-Confirmation Status Reports.**

Within 120 days of the entry of the order confirming the Plan, the Liquidating Trustee shall file a status report with the Court explaining what progress has been made toward consummation of the confirmed Plan. The status report shall be served on the United States Trustee and those parties who have requested special notice. Further status reports shall be filed approximately every four months and served on the same parties until entry of a final decree or otherwise ordered by the Court.

**H.      Post Confirmation U.S. Trustee Fees**

Upon the Effective Date, the Trustee and Liquidating Trustee shall be responsible for timely payment of quarterly fees due and payable, if any, until the Case is closed, to the extent required by § 1930(a)(6) of the Judicial Code. The Liquidating Trustee may, subject to the Liquidating Trust Agreement, seek to close the case post-Effective Date. Unless otherwise adjudicated by the Court, distributions made by the Liquidating Trustee on behalf of the Liquidation Trust shall not be subject to quarterly fees.

**I.      Risk Factors**

The risk factors with respect to the Plan include, but are not limited to, the following: (1) the financial projections set forth in the Disclosure Statement may not be realized thereby causing inability to make Plan payments; (2) the uncertainty associated with the "earn-out" under the Sale Transaction; (3) the risk of business and/or economic downturn; (4) the costs and uncertainty of potential litigation; and (5) non-bankruptcy law regulations.

**J.      Tax Consequences of the Plan**

**CREDITORS AND INTEREST HOLDERS CONCERNED WITH HOW THE PLAN MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN ACCOUNTANTS, ATTORNEYS, AND/OR ADVISORS**. The following disclosure of possible tax consequences is intended solely for the purpose of alerting readers about possible tax issues this Plan may present to the Debtor. The Plan Proponents CANNOT and DO NOT represent that the tax consequences contained below are the only tax consequences of the Plan because the Tax Code embodies many complicated rules which make it difficult to state completely and accurately all the tax implications of any action.

Counsel to the Plan Proponents do not provide tax advice. The Plan Proponents recommend that you seek independent tax advice. At this time, the Plan Proponents are unaware of any negative tax consequences arising from confirmation of the Plan.

**K.      Final Decree**

Once this Estate has been fully administered, as referred to in Bankruptcy Rule 3022, the Trustee or Liquidating Trustee will file a motion with the Bankruptcy Court to obtain a final decree to close the Bankruptcy Case.

DATED: ~~March 22~~June 3, 2024          MARSHACK HAYS WOOD LLP

By: /s/ D. Edward Hays
D. EDWARD HAYS
LAILA MASUD
General Counsel for Chapter 11 Trustee,
RICHARD A. MARSHACK

DATED: ~~March 22,,~~June 3, 2024          FOX ROTHCHILD

By: /s/ Nicholas A. Koffroth
KEITH OWENS
NICHOLAS KOFFROTH
Attorneys for the Official Committee of Unsecured Creditors

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

54

FIRST AMENDED JOINT PLAN OF LIQUIDATION (MARCH 22JUNE 3, 2024)

## VI.    DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW

### A.    Defined Terms

As used in this Plan, capitalized terms have the meanings given to them below unless otherwise defined elsewhere in this Plan:

1.    "Administrative Claim" means a Claim against a Debtor arising on or after the Petition Date and before the Effective Date for the costs and expenses of administration of the Bankruptcy Case under §§ 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses of preserving the Estates and operating the businesses of the Debtor incurred on or after the Petition Date and through the Effective Date; (b) Allowed Professional Fee Claims in the Bankruptcy Case; and (c) all fees and charges assessed against the Estates, pursuant to § 1930 of the Judicial Code.

2.    "Administrative Claims Bar Date" means the applicable deadline for Filing requests for payment of Administrative Claims (other than requests for payment of Professional Fee Claims and fees and charges assessed against the Estates, pursuant to § 1930 of the Judicial Code), which shall be (a) November 21, 2023, for Administrative Claims that may have arisen, accrued, or otherwise become due and payable at any time on and subsequent to the Petition Date but on or before the Sale Closing, or (b) 45 days after the Effective Date for Administrative Claims that may have arisen, accrued, or otherwise become due and payable at any time on and subsequent to the Sale Closing.

3.    "Administrative Claims Objection Deadline" means the deadline for Filing objections to requests for payment of Administrative Claims (other than requests for payment of Professional Fee Claims and fees and charges assessed against the Estate, pursuant to § 1930 of the Judicial Code), which shall be the later of (1) 60 days after the Effective Date and (2) 60 days after the Filing of the applicable request for payment of the Administrative Claims; *provided* that the Administrative Claims Objection Bar Date may be extended by the Bankruptcy Court after notice and a hearing.

159188850.1

4.      "Affiliate" has the meaning set forth in § 101(2) of the Bankruptcy Code. With respect to any Entity that is not a Debtor, the term "Affiliate" shall apply to such Entity as if the Entity were a Debtor.

5.      "Allowed" means for distribution purposes, a Claim or Interest, or any portion thereof, or a particular Class of Claims: (a) that is Allowed by a Final Order of the Bankruptcy Court (or such other court as provided by the Plan or as the Liquidating Trustee or Holder of such Claim agree may adjudicate such Claim and objections thereto); (b) that is Allowed by this Plan and/or Confirmation Order; (c) for which a Proof of Claim in a liquidated amount has been timely Filed with the Bankruptcy Court pursuant to the Bankruptcy Code or deemed timely Filed by any Final Order of the Bankruptcy Court or other applicable bankruptcy law, and as to which (i) no objection to its allowance has been filed within the periods of limitation fixed by the Plan, the Bankruptcy Code, or any order of the Bnakurptcy Court, (ii) any objection to its allowance has been settled or withdrawn, or has been denied by a Final Order of the Bankruptcy Court, or (iii) following the Effective Date, with respect to General Unsecured Claims, as may be determined by the Liquidating Trust in accordance with the Plan and Liquidating Trust Agreement.  Except as otherwise specified in the Plan or any Final Order, and except for any Claim that is Secured by property of a value in excess of the principal amount of such Claims, the amount of an Allowed Claim shall not include interest on such Claim from and after the Petition Date. For purposes of determining the amount of an Allowed Claim, there shall be deducted therefrom an amount equal to the amount of any Claim that the Debtor may hold against the Holder thereof, to the extent such Claim may be offset, recouped, or otherwise reduced under applicable law. Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or Disputed, and for which no Proof of Claim is or has been timely Filed, is not considered Allowed and shall be deemed expunged without further action by the Trustee or Liquidating Trustee and without further notice to any party or action, approval, or order of the Bankruptcy Court. Notwithstanding anything to the contrary herein, no Claim of any Entity subject to § 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in

full the amount that it owes the Estate. "Allow," "Allowing," and "Allowance" shall have correlative meanings.

6.      "Assumed Executory Contracts and Unexpired Leases Schedule" means the schedule of Executory Contracts and Unexpired Leases to be assumed by the Debtor pursuant to the Plan, if any, which shall be included in the Plan Supplement, as the same may be amended, modified, or supplemented from time to time.

7.      "Avoidance Actions" mean any and all avoidance, recovery, or subordination actions or remedies that may be brought by or on behalf of the Debtor or its Estate under the Bankruptcy Code or applicable non-bankruptcy law, including actions or remedies under §§ 544, 547, 548, 549, 550, 551, 552, or 553 of the Bankruptcy Code.

8.      "Bankruptcy Case" means the bankruptcy case of the Debtor, pending before the Bankruptcy Court, in the case captioned *In re Litigation Practice Group P.C.*, Case No. 8:23-bk-10571-SC, filed under chapter 11 of the Bankruptcy Code.

9.      "Bankruptcy Code" has the meaning set forth in the Introduction.

10.     "Bankruptcy Court" means the United States Bankruptcy Court for the District of California having jurisdiction over the Bankruptcy Case and, to the extent of the withdrawal of reference under § 157 of the Judicial Code, the United States District Court for the District of California.

11.     "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, promulgated under § 2075 of the Judicial Code and the general, local and chambers rules of the Bankruptcy Court.

12.     "Beneficiary Schedule" has the meaning set forth in Section IV.B.24. of this Plan.

13.     "Business Day" means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)(6)).

14.     "Cash" means cash and cash equivalents, including bank deposits, checks, and other similar items in legal tender of the United States of America.

15.     "Cause of Action" or "Causes of Action" means any actions, Avoidance Actions, Claims, cross claims, third-party claims, interests, damages, controversies, remedies, causes of action,

debts, judgments, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, Liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, disputed or undisputed, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law or otherwise. Causes of Action also include: (a) any rights of setoff, counterclaim, recoupment, reclamation, and any claims under contracts or for breaches of duties imposed by law or in equity; (b) the right to object to or otherwise contest Claims or Interests; (c) claims pursuant to §§ 362, 510, 542, 543 or chapter 5 of the Bankruptcy Code; (d) any claims or defenses, including fraud, mistake, duress, and usury, and any other defenses set forth in § 558 of the Bankruptcy Code; (e) any state law fraudulent transfer claim; (f) applicable nonbankruptcy law, order in a nonbankruptcy proceeding or any agreement that fixes a period within which the Debtor may commence an action, and such period has not expired before the date of the filing of the petition; (g) applicable nonbankruptcy law, order in a nonbankruptcy proceeding or any agreement that fixes a period within which the Debtor or an individual protected under §§ 1201 or 1301 of the Bankruptcy Code may file any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar act; (h) if applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period for commencing or continuing a civil action in a court other than a Bankruptcy Court on a claim against the Debtor, or against an individual with respect to which such individual is protected under §§ 1201 or 1301 of the Bankruptcy Code; (i) the rights and powers of a trustee under §§ 544, 545, and 549 of the Bankruptcy Code that (1) permit perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of perfection; or (2) provide for the maintenance or continuation of perfection of an interest in property to be effective against an entity that acquires rights in such property before the date on which action is taken to effect such maintenance or continuation; (j) any rights or powers under the Uniform

Commercial Code; and (k) any claims that may be brought under the Bankruptcy Code or applicable nonbankruptcy law against Insiders.

16.    "Claim" means any claim, as such term is defined in § 101(5) of the Bankruptcy Code, against a Debtor or the Estate.

17.    "Claims and Noticing Agent" means Omni Agent Solutions in its capacity as claims and noticing agent for the Debtor and any successor.

18.    "Claims Bar Date" means the deadline for filing Proofs of Claim set forth in the Claims Bar Date Order.

19.    "Claims Bar Date Order" means the Final Order [Docket No. 804] entered by the Bankruptcy Court on January 2, 2024, establishing certain deadlines for filing Proofs of Claim, including the February 23, 2024 deadline for filing Proofs of Claim asserting Secured Claims and General Unsecured Claims, including as modified for limited purposes, pursuant to that certain modification order [Docket No. 963].

20.    "Claims Register" means the official register of Claims maintained by the Claims and Noticing Agent.

21.    "Class" means a class of Claims or Interests as set forth in Article III of the Plan, in accordance with § 1122(a) of the Bankruptcy Code.

22.    "Committee" has the meaning set forth in the Introduction and is comprised of the members set forth in the notices of appointment [Docket Nos. 134 & 157].

23.    "Confirmation" means the Bankruptcy Court's entry of the Confirmation Order on the docket of the Bankruptcy Case within the meaning of Bankruptcy Rules 5003 and 9021.

24.    "Confirmation Date" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Case, within the meaning of Bankruptcy Rules 5003 and 9021.

25.    "Confirmation Hearing" means the hearing held by the Bankruptcy Court to consider Confirmation of the Plan, pursuant to Bankruptcy Rule 3020(b)(2) and §§ 1128 and 1129 of the Bankruptcy Code.

26.     "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan, pursuant to § 1129 of the Bankruptcy Code, which shall be in form and substance acceptable to the Plan Proponents.

27.     "Debtor" has the meaning set forth in the Introduction.

28.     "Disallowed" means, with respect to any Claim or Interest, any Claim or Interest (i) proof of which was required to be filed by the Bankruptcy Code or an order of the Bankruptcy Court, but as to which no proof of Claim or Interest was timely or properly filed, (ii) which has been withdrawn in whole or in part, by an agreement between the Trustee or the Liquidating Trustee and the Holder thereof or unilaterally by the Holder thereof, or (iii) which has been disallowed, in whole or in part, by a Final Order or pursuant to this Plan.  In the event that a Claim is disallowed in part, then the Claim may be an Allowed Claim with respect to amounts asserted under the Claim which have not been disallowed.

29.     "Disbursing Agent" means the Liquidating Trustee, as applicable, to make or facilitate distributions contemplated under the Plan, if applicable.

30.     "Disclosure Statement" means the Disclosure Statement for the Chapter 11 Plan Debtor Pursuant to Chapter 11 of the Bankruptcy Code, as may be amended, supplemented or modified from time to time, including all exhibits and schedules thereto and references therein that relate to the Plan, that is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable law and approved by the Bankruptcy Court pursuant to the Disclosure Statement Order. The Disclosure Statement shall be acceptable to the Plan Proponents.

31.     "Disclosure Statement Order" means the order [Docket No. ____] (as may be modified, amended, or supplemented by further Final Order) approving the Disclosure Statement, entered by the Bankruptcy Court on _____ ___, 2024.

32.     "Disputed" means, with respect to any Claim or Interest, any Claim or Interest for which: (a) no Proof of Claim was filed by the applicable deadline; or (b) a Proof of Claim was filed by the applicable deadline and either (i) a corresponding Claim is listed on the Schedules as disputed, contingent, or unliquidated, (ii) a corresponding Claim is listed on the Schedules in an amount or

60

nature different from that listed on the corresponding Proof of Claim, or (iii) an objection or request for estimation has been interposed by the relevant objection deadline that, in either instance, has not been withdrawn or determined pursuant to a Final Order; or (c) is treated as disputed under the terms of this Plan.

33.    "Distribution Record Date" means the record date for purposes of determining which Holders of Allowed Claims or Allowed Interests are eligible to receive distributions under the Plan, which date shall be the Effective Date, or such other date as is designated in a Final Order of the Bankruptcy Court.

34.    "Effective Date" means the date that is the first Business Day which is at least 14 days following the date of entry of the after the Confirmation Date on which the conditions to the occurrence of the Effective Date have been satisfied or waived, pursuant to Section IV.K. of the Plan. Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable thereafter.

35.    "Entity" has the meaning set forth in § 101(15) of the Bankruptcy Code.

36.    "Estate" means the estate of the Debtor (and any successor in interest thereto) created on the Petition Date in the Bankruptcy Case, pursuant to §§ 541 and 1115 of the Bankruptcy Code, and all property (as defined in § 541 of the Bankruptcy Code) acquired by the Debtor after the Petition Date through the Effective Date.

37.    "Executory Contract" means a contract or unexpired lease to which the Debtor is a party and that is subject to assumption or rejection under §§ 365 or 1123 of the Bankruptcy Code.

38.    "File" or "Filed" or "Filing" means file, filed or filing with the Bankruptcy Court in the Bankruptcy Case, or, with respect to the filing of a Proof of Claim, the Claims and Noticing Agent.

39.    "Final Order" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter, which has not been reversed, stayed, modified or amended, and as to which the time to appeal, petition for certiorari, or move for reargument, reconsideration, or rehearing has expired and no appeal, petition for certiorari, or motion for reargument, reconsideration, or rehearing has been timely taken or Filed, or as to which

1  any appeal, petition for certiorari, or motion for reargument, reconsideration, or rehearing that has

2  been taken or any petition for certiorari that has been or may be Filed has been resolved by the highest

3  court to which the order or judgment could be appealed or from which certiorari could be sought or

4  the new trial, reargument or rehearing shall have been denied, resulted in no modification of such

5  order or has otherwise been dismissed with prejudice.

6       40.    "Fund Challenge Deadline" has the meaning set forth in Section IV.B.3(b) of the Plan.

7       41.    "General Unsecured Claim" means a Claim that is not an Administrative Claim,

8  Priority Claim, and/or Secured Claim.

9       42.    "Governmental Bar Date" means February 23, 2024, which is the date by which Proofs

10  of Claim must be Filed with respect to such Claims held by Governmental Units pursuant to the

11  Claims Bar Date Order.

12      43.    "Governmental Unit" has the meaning set forth in § 101(27) of the Bankruptcy Code.

13      44.    "Holder" means an Entity holding a Claim against or an Interest in any Debtor.

14      45.    "Impaired" means, with respect to a Class of Claims or Interests, a Class of Claims or

15  Interests that is impaired within the meaning of § 1124 of the Bankruptcy Code.

16      46.    "Interest" means any equity security in Debtor as defined in § 101(16) of the

17  Bankruptcy Code, including all issued, unissued, authorized, or outstanding shares of capital stock of

18  the Debtor and any other rights, options, warrants, stock appreciation rights, phantom stock rights,

19  restricted stock units, redemption rights, repurchase rights, convertible, exercisable, or exchangeable

20  securities, or other agreements, arrangements, or commitments of any character relating to, or whose

21  value is related to, any such interest or other ownership interest in Debtor whether or not arising under

22  or in connection with any employment agreement and whether or not certificated, transferable,

23  preferred, common, voting, or denominated "stock" or a similar Security, including any Claims

24  against Debtor subject to subordination pursuant to § 510(b) of the Bankruptcy Code arising from or

25  related to any of the foregoing.

26      47.    "Insider" generally means one who has a sufficiently close relationship with the

27  Debtor that their conduct has made them subject to closer scrutiny than those dealing at arms-length

28

159188850.1

with the Debtor. This definition includes *per se* statutory insiders as defined in § 101(31) of the Bankruptcy Code as well as non-statutory insiders, who had a sufficiently close relationship with the Debtor to fall within the definition of § 101(31) of the Bankruptcy Code as defined by prevailing law in the Ninth Circuit. *See, e.g,. U.S. Bank N.A. v. Village. at Lakeridge, LLC (In re Vilage. at Lakeridge, LLC),* 814 F.3d 993, 999 (9th Cir. 2016).

48.    "IRS" means the United States Internal Revenue Service.

49.    "Judicial Code" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

50.    "Lien" means a lien as defined in § 101(37) of the Bankruptcy Code.

51.    "Liquidating Trust" has the meaning set forth in Section IV.B.1. of this Plan.

52.    "Liquidating Trust Agreement" means that certain agreement filed as a Plan Supplement, in form acceptable to the Plan Proponents, between the Plan Proponents, the Liquidating Trustee, and the Post-Confirmation Oversight Committee, governing the disposition of Liquidating Trust Assets, the distribution of the proceeds thereof in accordance with the Plan, and setting forth the duties, obligations, and management rights of the Post-Confirmation Oversight Committee and Liquidating Trustee.

53.    "Liquidating Trust Assets" means all Estate assets transferred to the Liquidating Trust as set forth herein.

54.    "Liquidating Trust Indemnified Party" has the meaning set forth in Section IV.B.31 of this Plan.

55.    "Liquidating Trustee" has the meaning set forth in Section IV.B.7. of this Plan.

56.    "Litigation Claim" means any claims, Causes of Action, or other litigation claims or controversies.

57.    "LPG" means the Debtor, The Litigation Practice Group, P.C.

58.    "Other Priority Claim" means any Claim, to the extent such Claim has not already been paid during the Bankruptcy Case, other than an Administrative Claim or a Priority Tax Claim, entitled to priority in right of payment under § 507(a) of the Bankruptcy Code.

59.    "Ownership Challenge Deadline" has the meaning set forth in Section IV.B.3(c) of the Plan.

60.    "Person" means a person as such term as defined in § 101(41) of the Bankruptcy Code.

61.    "Petition Date" means March 20, 2023, the date the Debtor commenced the Bankruptcy Case.

62.    "Plan" has the meaning set forth in the Introduction.

63.    "Plan Proponents" has the meaning set forth in the Introduction.

64.    "Plan Supplement" means the compilation of documents and forms of documents, agreements, schedules, and exhibits to the Plan (as may be altered, amended, modified, or supplemented from time to time in accordance with the terms hereof and in accordance with the Bankruptcy Code and Bankruptcy Rules) to be Filed by the Debtor no later than the Plan Supplement Filing Date, including the following to the extent applicable: (a) Rejected Executory Contracts and Unexpired Leases Schedule, (b) Assumed Executory Contracts and Unexpired Leases Schedule, (c) list of Potential Litigation Targets, (d) any necessary documentation related to the Sale Transaction, and (e) the Liquidating Trust Agreement.

65.    "Plan Supplement Filing Date" means, the date that is (a) seven days prior to the earlier of (i) the Voting Deadline or (ii) the deadline to object to Confirmation of the Plan or (b) such later date as may be approved by the Bankruptcy Court.

66.    "Post-Confirmation Oversight Committee" means the oversight committee comprised of not less than three creditors appointed by the Committee, pursuant to the terms of the Plan, Liquidating Trust Agreement, and Post-Confirmation Oversight Committee Bylaws, and identified in the Plan Supplement.

67.    "Post-Petition Funds" means the funds collected by the Estate after the Petition Date from clients of the Debtor, which funds are currently held by the Trustee in a segregated account.

68.    "Potential Litigation Target" includes but is not limited to the list of potential defendants against whom the Liquidating Trust may assert Retained Causes of Action that is attached to the Plan Supplement.

69.     "Priority Claims" means, collectively, Priority Tax Claims and Other Priority Claims.

70.     "Priority Tax Claim" means any Claim of a Governmental Unit of the kind specified in § 507(a)(8) of the Bankruptcy Code.

71.     "Pro Rata" means the proportion that an Allowed Claim or an Allowed Interest in a particular Class bears to the aggregate amount of Allowed Claims or Allowed Interests in that Class, unless otherwise indicated.

72.     "Professional" means an Entity: (a) retained pursuant to a Bankruptcy Court order in accordance with §§ 327 or 1103 of the Bankruptcy Code and to be compensated for services rendered and expenses incurred pursuant to §§ 327, 328, 329, 330, 331, and 363 of the Bankruptcy Code; (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to § 503(b)(4) of the Bankruptcy Code; or (c) awarded compensation and reimbursement of expenses by the Bankruptcy Court, pursuant to §§ 326 and 330 of the Bankruptcy Code.

73.     "Professional Fee Claim" means a Claim by a Professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under §§ 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code.

74.     "Proof of Claim" means a written proof of Claim Filed against the Debtor in the Bankruptcy Case by the Claims Bar Date, the Administrative Claims Bar Date, or the Governmental Bar Date, as applicable.

75.     "Rejected Executory Contracts and Unexpired Leases Schedule" means the schedule of Executory Contracts and Unexpired Leases to be rejected by the Debtor pursuant to the Plan, which schedule shall be included in the Plan Supplement, as the same may be amended, modified, or supplemented from time to time.

76.     "Retained Causes of Action" or "Retained Action" means Litigation Claims including, without limitation, claims against Potential Litigation Targets.

77.     "Sale Closing" means the August 4, 2023.

78.     "Sale Order" means the order entered on August 2, 2023 in the Bankruptcy Case as Docket No. 352.

79.     "Sale Transaction" means the sale of all or substantially all of the Debtor's assets pursuant to the Sale Order.

80.     "Sale Transaction Documentation" means all motions, filings, documents, and agreements related to the Sale Transaction, including without limitation, the Asset Purchase Agreement and the Sale Order.

81.     "Schedules" means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases and statements of financial affairs Filed by the Debtor pursuant to § 521 of the Bankruptcy Code, the official bankruptcy forms, and the Bankruptcy Rules, as such schedules may be amended, modified, or supplemented from time to time.

82.     "Secured" means when referring to a Claim: (a) secured by a Lien on collateral in which the Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Final Order of the Bankruptcy Court, or that is subject to setoff pursuant to § 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in such Debtor's interest in such collateral or to the extent of the amount subject to setoff, as applicable, as determined pursuant to § 506(a) of the Bankruptcy Code or (b) Allowed pursuant to the Plan as a Secured Claim.

83.     "Securities Act" means the Securities Act of 1933, 15 U.S.C. §§ 77a-77aa, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

84.     "Security" means a security as defined in § 2(a)(1) of the Securities Act.

85.     "Subordinated Claims" means Allowed Claims that have been found to be subject to subordination, pursuant to § 510(b) or (c) of the Bankruptcy Code, pursuant to a Final Order.

86.     "Tax Code" means the United States Internal Revenue Code of 1986, as amended.

87.     "Treasury Regulations" means the regulations promulgated under the Tax Code by the United States Department of the Treasury.

88.     "Trust Beneficial Interest" means the Pro Rata interests in the Liquidating Trust of the Holders of Allowed Claims in Class 3A and Class 3B and their concomitant entitlement to

distributions to be made by the Liquidating Trust on account of Allowed General Unsecured Claims, subject to any further right to object to the validity, extent, or amount of the underlying General Unsecured Claim to the extent not Allowed on the Effective Date as set forth in this Plan and the Liquidating Trust Agreement .  The Trust Beneficial Interests shall be evidenced as set forth in this Plan and shall not be transferable, except to the limited extent provided in this Plan and related provisions of the Liquidating Trust Agreement.

89.     "Trust Beneficiary" means the holder of a Trust Beneficial Interest, as of any point in time.

90.     "Trustee" has the meaning set forth in the Introduction.

91.     "U.S. Trustee" means the Office of the United States Trustee for the District of California.

92.     "Unexpired Lease" means a lease to which the Debtor is a party that is subject to assumption or rejection under §§ 365 or 1123 of the Bankruptcy Code.

93.     "Unimpaired" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is unimpaired within the meaning of § 1124 of the Bankruptcy Code.

94.     "Voting Deadline" means the deadline established by the Bankruptcy Court by which Holders of Claims and Interests entitled to vote on approval or disapproval of the Plan must submit a ballot.

**B.     Rules of Interpretation**

For purposes of this Plan: (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, whether or not Filed, having been Filed or to be Filed shall mean that document, schedule,

159188850.1

1  or exhibit, as it may thereafter be amended, restated, supplemented, or otherwise modified in

2  accordance with the Plan or Confirmation Order, as applicable; (4) any reference to an Entity as a

3  Holder of a Claim or Interest includes that Entity's successors and assigns; (5) unless otherwise

4  specified, all references herein to "Articles" or "Sections" are references to Articles or Sections of

5  the Plan; (6) unless otherwise specified, all references herein to exhibits are references to exhibits in

6  the Plan Supplement; (7) unless otherwise specified, the words "herein," "hereof," and "hereto" refer

7  to the Plan in its entirety rather than to a particular portion of the Plan; (8) subject to the provisions

8  of any contract, certificate of incorporation, bylaw, instrument, release, or other agreement or

9  document entered into in connection with the Plan, the rights and obligations arising pursuant to the

10  Plan shall be governed by, and construed and enforced in accordance with, applicable federal law,

11  including the Bankruptcy Code and the Bankruptcy Rules, or, if no rule of law or procedure is

12  supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules) or otherwise

13  specifically stated, the laws of the State of California, without giving effect to the principles of

14  conflict of laws; (9) captions and headings to Articles and Sections are inserted for convenience of

15  reference only and are not intended to be a part of or to affect the interpretation of the Plan; (10) the

16  rules of construction set forth in § 102 of the Bankruptcy Code shall apply; (11) all references to

17  docket numbers of documents Filed in the Bankruptcy Case are references to the docket numbers

18  under the Bankruptcy Court's CM/ECF system in the Bankruptcy Case; (12) all references to statutes,

19  regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as

20  applicable to the this Bankruptcy Case, unless otherwise stated; (13) any effectuating provisions may

21  be interpreted by the Liquidating Trustee, subject to the Liquidating Trust Agreement, in such a

22  manner that is consistent with the overall purpose and intent of the Plan all without further notice to

23  or action, order, or approval of the Bankruptcy Court or any other Entity, and such interpretation shall

24  be conclusive; (14) any references herein to the Effective Date shall mean the Effective Date or as

25  soon as reasonably practicable thereafter; (15) the words "include" and "including," and variations

26  thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the

27  words "without limitation"; (16) all references herein to consent, acceptance, or approval shall be

28

deemed to include the requirement that such consent, acceptance, or approval be evidenced by a writing, which may be conveyed by counsel for the respective parties that have such consent, acceptance, or approval rights, including by electronic mail; and (17) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

**C.       Computation of Time**

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day. Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

**D.       Governing Law**

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of California, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control).

FIRST AMENDED JOINT PLAN OF LIQUIDATION (MARCH 22JUNE 3, 2024)
159188850.1

**Exhibit B**

D. EDWARD HAYS, #162507
ehays@marshackhays.com
LAILA MASUD, #311731
lmasud@marshackhays.com
**MARSHACK HAYS WOOD LLP**
870 Roosevelt
Irvine, California 92620
Telephone: (949) 333-7777
Facsimile: (949) 333-7778

General Counsel for Chapter 11 Trustee,
RICHARD A. MARSHACK

Keith C. Owens (SBN 184841)
Nicholas A. Koffroth (SBN 287854)
**FOX ROTHSCHILD LLP**
10250 Constellation Blvd., Suite 900
Los Angeles CA 90067
Telephone: (310) 598-4150
Facsimile: (310) 556-9828
kowens@foxrothschild.com
nkoffroth@foxrothschild.com

Counsel For Official Committee of Unsecured Creditors

UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA

| | |
|---|---|
| In re | Case No. 8:23-bk-10571-SC |
| THE LITIGATION PRACTICE GROUP P.C., | Chapter 11 |
| Debtor. | **DISCLOSURE STATEMENT DESCRIBING FIRST AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION (DATED ~~MARCH 22~~JUNE 3, 2024)** |

Disclosure Statement Hearing:
Date:  May 15, 2024
Time: 1:30 p.m
Ctrm: 5C - ViaZoom[1]
Place: 411 West Fourth Street
       Santa Ana, CA  92701

Plan Confirmation Hearing:
Date:  ~~TBD~~August 15, 2024
Time: ~~TBD~~10:00 a.m.
Ctrm: 5C - ViaZoom[2]
Place: 411 West Fourth Street

---

[1] ~~Check Judge Clarkson's tentative prior to hearing for further Zoom instructions.~~
[2] Check Judge Clarkson's tentative prior to hearing for further Zoom instructions.

DISCLOSURE STATEMENT DESCRIBING FIRST AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION
159188907.1

Santa Ana, CA  92701

## TABLE OF CONTENTS

I.    Introduction ..................................................................................................................1

    A.    The Purpose of This Document .................................................................................1

    B.    DISCLAIMER .........................................................................................................2

    C.    Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing.................4

        1.    Time and Place of the Confirmation Hearing ................................................4

        2.    Deadline to Vote For or Against the Plan .....................................................4

        3.    Deadline to Object to Confirmation of the Plan ............................................5

        4.    Identity of the Person to Contact for Copies of the Plan and Related
        Documents .....................................................................................................6

II.    Summary of the Debtor and the Bankruptcy Case ..........................................................6

    A.    Overview of the Debtor and the Debtor's Prepetition Business Operations .................6

        1.    The Debtor and Its Prepetition Management .................................................6

        2.    The Debtor's Prepetition Business Operations ..............................................7

    B.    The Circumstances Leading to the Filing of the Bankruptcy Case ...........................9

    C.    Significant Events During the Bankruptcy Case .......................................................10

        1.    Motions to Dismiss or Convert the Bankruptcy Case and Appointment
        of the Trustee ...............................................................................................10

        2.    Appointment of the Committee ....................................................................11

DISCLOSURE STATEMENT DESCRIBING FIRST AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION
159188907.1

**Formatted:** Font: Times New Roman, 12 pt, Font color: Auto

3.    Estate Professionals ...................................................................... 12

4.    Postpetition Financial Reporting and Disclosures ........................... 13

5.    The Injunction Action ..................................................................... 14

6.    The Postpetition Financing Motions ................................................ 16

7.    Motion to Approve Management Agreement ..................................... 18

8.    The Morning Law Group Sale .......................................................... 18

9.    The 3012 Motion ............................................................................. 22

10.    Motions to Approve Compromises .................................................. 23

11.    Adversary Proceedings .................................................................. 23

III.    Summary of the Plan ................................................................................... 26

A.    Classification and Treatment of Claims and Interests Under the Plan ...................... 26

1.    What Creditors and Interest Holders Will Receive Under the Plan ................. 26

2.    Unclassified Claims ....................................................................... 26

3.    Classified Claims and Interests ...................................................... 32

B.    Means of Effectuating the Plan .......................................................... 43

1.    Post-Effective Date Management and Dissolution of the Debtor ................. 43

2.    The Liquidating Trust ..................................................................... 44

3.    Effective Date Distributions to Be Made by Trustee ........................... 60

4.    Settlement Agreements ................................................................... 60

5.    Claims Administration and Prosecution and Plan Distributions ................ 60

6.    Books and Records of the Debtor .................................................... 61

7.    Corporate Action ........................................................................... 61

8.    Effectuating Documents and Further Transactions ............................... 62

9.    Procedures for Disputed, Contingent, or Unliquidated Claims ................ 62

10.    Distributions to Be Made Pursuant to the Plan ............................... 64

11.    Conditions Precedent to Confirmation and the Effective Date of the

Plan .................................................................................................. 64

12.     Executory Contracts and Unexpired Leases ................................ 66

13.     Cure of for Executory Contracts and Unexpired Leases Assumed (or
        Assumed and Assigned)............................................................... 67

14.     Preexisting Obligations to the Debtors under Executory Contracts and
        Unexpired Leases. ....................................................................... 69

15.     Retention of Jurisdiction ............................................................. 69

16.     Reservation of Rights .................................................................. 71

C.      Effect of Confirmation of the Plan ........................................................ 71

1.      Discharge .................................................................................... 71

2.      No Revesting of Estate Property in the Debtor........................... 72

3.      No Liability for Solicitation or Participation ............................. 72

4.      Exculpation; Limitation of Liability ........................................... 72

5.      Preservation of all Litigation and Causes of Action ................. 73

6.      Modification of the Plan ............................................................. 74

7.      Post-Confirmation Status Reports.............................................. 74

8.      Post-Confirmation U.S. Trustee Fees......................................... 74

9.      Risk Factors ............................................................................... 75

10.     Tax Consequences of the Plan ................................................... 75

11.     Final Decree ............................................................................... 81

IV.     Confirmation Requirements .......................................................................... 82

A.      Liquidation Analysis............................................................................. 82

B.      Feasibility.............................................................................................. 83

C.      Confirmation Request........................................................................... 83

CONTENTS

# I.

## INTRODUCTION

On March 20, 2023 ("Petition Date"), The Litigation Practice Group P.C. ("Debtor") filed a voluntary petition under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* ("Bankruptcy Code"),[3] which commenced the above-referenced bankruptcy case ("Bankruptcy Case").[4] On May 8, 2023, the Office of the United States Trustee ("U.S. Trustee") appointed Richard A. Marshack ("Trustee") to serve in a fiduciary capacity as the chapter 11 trustee of the Debtor's Estate. On June 23 and 29, 2023, the U.S. Trustee appointed a seven-member Official Committee of Unsecured Creditors of the Litigation Practice Group P.C. (the "Committee") to represent the general interests of unsecured creditors in the Bankruptcy Case.

On ~~March 22~~June 3, 2024, the Trustee and the Committee filed the *First Amended* Joint *Chapter 11 Plan of Liquidation (Dated ~~March 22~~June 3, 2024)* [Docket No. ___] ("Plan").[5] The Trustee and the Committee are referred to, collectively, as the "Plan Proponents" because they have jointly submitted the Plan. This document is the disclosure statement ("Disclosure Statement"), which describes the Plan.

### A.    The Purpose of This Document

The Plan is intended to establish the framework for the liquidation of the Debtor's assets and the process and priority for distribution of those assets to Holders of Claims and Interests. This Disclosure Statement summarizes the significant events in the Bankruptcy Case that led to the development of the Plan, describes significant provisions of the Plan, provides information

---

[3] All references to "§" are to the Bankruptcy Code, unless otherwise noted. All references to "Bankruptcy Rules" are to provisions of the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as may be amended from time to time. All references to "Local Bankruptcy Rules" are to provisions of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Central District of California.

[4] All references to "Docket" or "Docket No." refer, respectively, to the docket of the Bankruptcy Case or a specific docket entry in the Bankruptcy Case. The Docket can be accessed through the Court's website (www.cacb.uscourts.gov) or free of charge through the Bankruptcy Case website maintained by Omni Agent Solutions (https://omniagentsolutions.com/LPG).

[5] Unless otherwise defined, all capitalized terms have the definitions set forth in the Plan.

**Formatted:** Highlight

1  concerning the feasibility and potential distributions under the Plan, and the process the Bankruptcy

2  Court will follow to determine whether to approve the Plan.

3  The Bankruptcy Code requires that a Disclosure Statement contain "adequate information"

4  concerning the Plan.  The Bankruptcy Court has approved this document as an adequate Disclosure

5  Statement, which means that this Disclosure Statement contains adequate information to enable

6  parties affected by the Plan to make an informed judgment about the Plan.

7  **B.**  **DISCLAIMER**

8  **THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT AND**

9  **THE PLAN ARE FOR THE PURPOSES OF SOLICITING ACCEPTANCES OF THE PLAN**

10 **AND DESCRIBING TREATMENT UNDER THE PLAN.  SUCH INFORMATION MAY**

11 **NOT BE RELIED UPON FOR ANY PURPOSE OTHER THAN (I) TO DETERMINE HOW**

12 **TO VOTE ON THE PLAN AND (II) TO DESCRIBE TREATMENT UNDER AND TERMS**

13 **OF THE PLAN.**

14 **ALL CREDITORS AND PARTIES IN INTEREST ARE ADVISED AND**

15 **ENCOURAGED TO READ THIS DISCLOSURE STATEMENT AND THE PLAN IN THEIR**

16 **ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.  NEITHER THE**

17 **TRUSTEE NOR THE COMMITTEE CAN PROVIDE PARTIES WITH LEGAL ADVICE**

18 **CONCERNING THE PLAN.  YOU SHOULD CONSIDER CONSULTING YOUR OWN**

19 **ATTORNEY TO OBTAIN MORE SPECIFIC ADVICE ON HOW THE PLAN WILL**

20 **AFFECT YOU AND WHAT IS THE BEST COURSE OF ACTION FOR YOU.**

21 **READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO KNOW**

22 **ABOUT:**

23 **(1)  WHO CAN VOTE OR OBJECT, TO CONFIRMATION OF THE PLAN;**

24 **(2)  THE TREATMENT OF YOUR CLAIM OR INTEREST (*I.E.*, WHAT YOU**

25 **WILL RECEIVE ON ACCOUNT OR YOUR CLAIM OR INTEREST IF THE PLAN IS**

26 **CONFIRMED) AND HOW THIS TREATMENT COMPARES TO WHAT YOUR CLAIM**

27 **WOULD RECEIVE IN LIQUIDATION;**

28

DISCLOSURE STATEMENT DESCRIBING FIRST AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION
159188907.1

(3)     THE HISTORY OF THE DEBTOR AND SIGNIFICANT EVENTS DURING THE BANKRUPTCY CASE;

(4)     WHAT THE BANKRUPTCY COURT WILL CONSIDER IN DECIDING WHETHER TO CONFIRM THE PLAN;

(5)     THE EFFECT OF CONFIRMATION; AND

(6)     WHETHER THE PLAN IS FEASIBLE.

THE PLAN WILL CONTROL IF THERE IS AN INCONSISTENCY BETWEEN THE TERMS OF THE DISCLOSURE STATEMENT AND THE TERMS OF THE PLAN.  PLAN SUMMARIES AND STATEMENTS MADE IN THIS DISCLOSURE STATEMENT ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO THE PLAN, THIS DISCLOSURE STATEMENT, THE EXHIBITS ANNEXED TO THIS DISCLOSURE STATEMENT AND THE PLAN, AND ANY AMENDMENTS OR PLAN SUPPLEMENTS.

NO PERSON MAY GIVE ANY INFORMATION OR MAKE ANY REPRESENTATIONS REGARDING THE PLAN OR THE SOLICITATION OR ACCEPTANCES OF THE PLAN OTHER THAN THE INFORMATION AND REPRESENTATIONS CONTAINED IN THIS DISCLOSURE STATEMENT OR THE PLAN.  THE BANKRUPTCY COURT HAS NOT YET DETERMINED WHETHER THE PLAN IS CONFIRMABLE, AND THE BANKRUPTCY COURT HAS NO RECOMMENDATION AS TO WHETHER OR NOT YOU SHOULD SUPPORT OR OPPOSE THE PLAN.

THE FINANCIAL DATA RELIED UPON IN FORMULATING THE PLAN IS BASED ON THE DEBTOR'S BOOKS AND RECORDS, WHICH ARE UNAUDITED UNLESS OTHERWISE INDICATED.  THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS PROVIDED BY THE TRUSTEE AND THE COMMITTEE AFTER A REVIEW OF THE DEBTOR'S BOOKS AND RECORDS AND SUCH OTHER DOCUMENTS OR SOURCES SPECIFICALLY IDENTIFIED IN THIS DISCLOSURE STATEMENT.

1   **THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE**

2   **MADE ONLY AS OF THE DATE HEREOF, AND THERE CAN BE NO ASSURANCE THAT**

3   **THE STATEMENTS CONTAINED HEREIN SHALL BE CORRECT AT ANY TIME**

4   **AFTER THE DATE HEREOF.  ANY ESTIMATES OF CLAIMS SET FORTH IN THIS**

5   **DISCLOSURE STATEMENT MAY VARY FROM THE AMOUNTS OF CLAIMS**

6   **ULTIMATELY ALLOWED BY THE BANKRUPTCY COURT.**

7   C.    **Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing**

8   **THE BANKRUPTCY COURT HAS NOT YET CONFIRMED THE PLAN**

9   **DESCRIBED IN THIS DISCLOSURE STATEMENT.  IN OTHER WORDS, THE TERMS**

10  **OF THE PLAN ARE NOT YET BINDING ON ANYONE.  HOWEVER, IF THE**

11  **BANKRUPTCY COURT CONFIRMS THE PLAN, THEN THE PLAN WILL BE BINDING**

12  **ON ALL HOLDERS OF CLAIMS AND INTEREST AGAINST THE DEBTOR AND ITS**

13  **ESTATE IN THIS BANKRUPTCY CASE.**

14      1.    **Time and Place of the Confirmation Hearing**

15      The hearing at which the Bankruptcy Court will determine whether or not to confirm the Plan

16  (the "Confirmation Hearing") will take place on ⎯⎯⎯⎯August 15, 2024, at ⎯⎯:10:00 ⎯a.m.

17  **(Pacific Time)**, before the Honorable Scott C. Clarkson, United States Bankruptcy Judge for the

18  Bankruptcy Court.  The hearing will take place in Courtroom 5C of the Ronald Reagan Federal

19  Building and United States Courthouse, located at 411 West Fourth Street, Santa Ana, California

20  92701.  You may attend the hearing in-person or through a video and audio connection provided on

21  Judge Clarkson's publicly posted hearing calendar. You may view the calendar and hearing

22  information online by visiting: http://ecfciao.cacb.uscourts.gov/CiaoPosted/?jid=SC, and then

23  selecting "Judge Clarkson" from the tab on the lefthand side of the page.

24      2.    **Deadline to Vote For or Against the Plan**

25      If you are entitled to vote, you may only do so by timely voting on the enclosed ballot.   The

26  Court has fixed ⎯⎯⎯⎯⎯,July 3, 2024 (the "Voting Deadline") as the deadline by which all Ballots

27  for accepting or rejecting the Plan *must be received* by the Claims and Noticing Agent, Omni Agent

28

DISCLOSURE STATEMENT DESCRIBING FIRST AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION
159188907.1

1  Solutions.  In order to be counted as a vote to accept or reject the Plan, each ballot must be properly
2  delivered to the Claims and Noticing Agent by either: (i) first class mail, overnight courier, or hand
3  delivery to the Claims and Noticing Agent at the following address: The Litigation Practice Group
4  P.C. Claims Processing, c/o Omni Agent Solutions, 5955 De Soto Ave., Suite 100, Woodland Hills,
5  CA 91367; or (ii) online upload through the Claims and Noticing Agent's balloting platform ("Ballot
6  Portal").  Holders may digitally scan and upload a Ballot via the Ballot Portal. Instructions for
7  uploading a Ballot will be available on the case website maintained by the Claims and Noticing
8  Agent. For the avoidance of doubt, the Ballot Portal https://omniagentsolutions.com/LPG-Ballots
9  shall be the sole accepted means for Holders to submit their votes electronically.

10      **3.      Deadline to Object to Confirmation of the Plan**

11      To be considered by the Court, objections to confirmation of the Plan: (i) be in writing;
12  (ii) comply with the Bankruptcy Rules and the Local Bankruptcy Rules; (iii) state the name and
13  address of each objecting party and the amount and the nature of the Claim or Interest of such party;
14  (iv) state with particularity the legal and factual bases for the objection and, if practicable, a proposed
15  modification to the Plan that would resolve such objection; and (v) be filed with the Bankruptcy
16  Court, together with proof of service, and served so that they are actually received by the Notice
17  Parties (as defined below) no later than _____, **July 31,** 2024 which deadline may be extended
18  by mutual agreement of the Plan Proponents (the "Confirmation Objection Deadline").

19      Objections to confirmation of the Plan must be served on the following Notice Parties: (i) the
20  Trustee's general bankruptcy counsel and bankruptcy case administrator, as follows: Marshack Hays
21  Wood LLP, 870 Roosevelt, Irvine, California 92620 (Attn: Ed Hays (ehays@marshackhays.com) &
22  Pam Kraus (pkraus@marshackhays.com)); (ii) counsel to the Committee: Fox Rothschild LLP,
23  10250 Constellation Boulevard, 9th Floor, Los Angeles, California 90067 (Attn: Keith C. Owens
24  (kowens@foxrothschild.com) & Nicholas A. Koffroth (nkoffroth@foxrothschild.com)); and
25  (iii) counsel to the U.S. Trustee, Office of the United States Trustee, 411 West Fourth Street, Suite
26  7160, Santa Ana, California 92701-8000 (Attn: Kenneth M. Misken
27  (kenneth.m.misken@usdoj.gov)).

28

DISCLOSURE STATEMENT DESCRIBING FIRST AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION
159188907.1

**4.**     **Identity of the Person to Contact for Copies of the Plan and Related Documents**

Any interested party desiring further information about the Plan should contact Omni Agent Solutions by: (i) mail at Omni Agent Solutions, 5955 De Soto Ave., Suite 100, Woodland Hills, California 91367; (ii) emailing LPGinquiries@omniagnt.com; or (iii) calling (888) 741-4582 (U.S. and Canada toll free) or (747) 226-5672.   You may also review the Bankruptcy Case website maintained by Omni Agent Solutions at https://omniagentsolutions.com/LPG.

**II.**

**SUMMARY OF THE DEBTOR AND THE BANKRUPTCY CASE**

*The following is a brief summary of the background of the Debtor, the events leading to the commencement of the Bankruptcy Case, and significant events since the filing of the Bankruptcy Case. Given limitations on the Plan Proponents access to certain information prior to the appointment of the Trustee, certain of the background information is based on the information and belief of the Plan Proponents. This Disclosure Statement includes descriptions of facts that may be subject to litigation. Nothing contained herein shall be construed as an admission or waiver with respect to such litigation and is provided here solely for the purposes of adequate disclosure of facts or circumstances known or understood by the Plan Proponents as of the filing of this Disclosure Statement.*

**A.**     **Overview of the Debtor and the Debtor's Prepetition Business Operations**

**1.**     **The Debtor and Its Prepetition Management**

The Debtor is a professional corporation organized under the laws of the State of California with its principal place of business in Tustin, California.  As of the Petition Date, the Debtor operated as a law firm that provided consumer debt validation services to its clients.

Tony M. Diab ("Mr. Diab"), and his disbarment in California and Nevada, was the direct cause of the Debtor's formation.  On January 14, 2019, the Supreme Court of the State of Nevada entered an order disbarring Mr. Diab from the practice of law in Nevada.  The Nevada disbarment order related to significant misconduct, including stealing a $375,000 client settlement payment, forging client retainer agreements to conceal the conversion of client funds, and forging the signature of a judge on a falsified order.  On February 7, 2019, the State Bar of California entered default

6

1  against Mr. Diab on similar claims in a pending California proceeding and ordered that Mr. Diab's

2  law license be placed on involuntary inactive status.  Mr. Diab was subsequently disbarred from the

3  practice of law in California on January 10, 2020.

4        The Debtor was incorporated in California on February 22, 2019.  The timing is noteworthy:

5  the incorporation occurred less than a month after Mr. Diab's Nevada disbarment and two weeks after

6  Mr. Diab's law license was placed on involuntary inactive status in California.  The Trustee alleges

7  that the Debtor was formed to conceal the transfer and continuation of Mr. Diab's preexisting debt

8  resolution practice notwithstanding his inability to practice law.

9        The Trustee has further alleged that the Debtor's named management served as a shill to

10  permit Mr. Diab to continue *de facto* control over business operations despite no longer holding a

11  license to practice law.  John Thompson ("Mr. Thompson") was the original, sole shareholder and

12  managing partner of the Debtor between February and November 2019.  Daniel March ("Mr. March")

13  took assignment of Mr. Thompson's ownership in the Debtor in November 2019, and served as the

14  sole shareholder and managing partner of the Debtor until the appointment of the Trustee (discussed

15  below).  In each instance, the Trustee alleges that Mr. Diab effectively "rented" the law licenses of

16  Mr. Thompson and Mr. March, neither of whom exercised any actual management or control over

17  the Debtor.  During this time, Mr. Diab impersonated Mr. March and Mr. Thompson, forged Mr.

18  March's signature on documents, and purportedly provided legal advice to clients of the Debtor.

19      **2.**    **The Debtor's Prepetition Business Operations**

20          **a.**    **The Services Provided to Clients under the LSAs**

21        Prepetition, the Debtor serviced more than 50,000 consumer clients across the United States

22  with an estimated annual revenue of $150 million in 2022.  Generally, the relationship between the

23  Debtor and its consumer clients was governed by a legal services agreement (an "LSA") that

24  established an attorney-client relationship between the parties.  Consumer clients signed one of

25  multiple LSA versions that describe the services provided as follows:

26          [The Debtor] will provide debt validation services wherein it will assist
        you in removing erroneous or inaccurate information appearing on one

27          or more of your credit reports by contesting debts appearing therein.
        This service is limited to information reported by creditors or purported

28          creditors to credit bureaus. The purpose of this program is to challenge

7

the legal validity of debts appearing on or being reported to credit bureaus…

Other iterations of the LSA offered itemized lists of the services provided, including: (i) assisting clients in efforts to stop creditors and debt collectors from harassing or contacting the client in connection with specific debts; (ii) disputing the legal validity of specific debts; (iii) assisting clients in removing erroneous or inaccurate information reported on specific debts; (iv) representing clients in lawsuits filed against the client concerning specific debts; (v) initiating legal action on behalf of clients against creditors violating applicable federal or state law with respect to certain debts; and (vi) determining a client's eligibility for bankruptcy and the effects of a bankruptcy filing.

The Debtor provided services under the LSA by limiting the degree of customized services to clients to the greatest extent possible. By way of example, LPG utilized software licensed by DebtPayPro and, ultimately, a less-efficient proprietary software known as LUNA, to automate the debt dispute resolution process, facilitate client communications, and track payment information. These systems generated automated and generic template correspondence to creditors, collection agencies, and credit bureaus to challenge or dispute debt. In some cases, these programs resulted in correction of incorrectly reported debt, successful challenges based on consumer protection laws, and debt settlement. In limited circumstances, the Debtor utilized in-house or third-party attorneys to file, or defend against, lawsuits on behalf of consumer clients.

**b.    The LSA Payment Terms and Estimated Revenue**

The LSAs required that clients agree to a predetermined payment plan that required clients to pay fees monthly to the Debtor over an 18-to-30-month term. Under the LSAs, the fees were earned immediately upon receipt by the Debtor. The monthly fee installments were often automatically debited from client bank accounts by ACH transfer. The Debtor utilized the services of ACH processing companies—many of which were owned or controlled by Mr. Diab—to process the monthly ACH draws from client bank accounts. Prepetition, the Debtor's monthly gross revenue from monthly fee payments was estimated to range from $8.4 million to $11.2 million, and, as of the Petition Date, the Trustee believes that monthly gross revenue from client accounts exceeded $15 million.

**c.**    **The Debtor's Internal and Third-Party Marketing Affiliates**

The Debtor utilized both in-house and third-party marketing affiliates to obtain consumer client referrals on a massive scale.  The Debtor's "in-house" marketing efforts were operated through an entity called Coast Processing, which was acquired by Mr. Diab in 2021 and was purportedly "merged" into the Debtor's operations despite Coast Processing's previous dominion and control over the Debtor prior to Mr. Diab's acquisition.  The Debtor also utilized a network of over 100 third-party marketing affiliates to purchase referrals.  In each case, the Debtor acquired potential client data through in-house or third-party efforts that identified victims of predatory lending, significant debt potentially subject to challenge, and other methods.  Rather than pay for these referral lists upfront, the Debtor paid third-party marketing affiliates a percentage of collections earned from referred clients through revenue generated from those clients during their engagement with the Debtor.  The marketing affiliates' practices were dubious at best and, included direct solicitation and referral of clients (which may have violated the rules of professional conduct governing licensed attorneys in multiple jurisdictions).  Additionally, in some circumstances, the marketing affiliates would assist with the execution of an LSA between the Debtor and a consumer client.

**B.**    **The Circumstances Leading to the Filing of the Bankruptcy Case**

The Trustee alleges that Mr. Diab, and a series of co-conspirators, orchestrated and implemented a scheme to fraudulently transfer client files, and the related receivables, to third parties. The series of prepetition transactions involving the Debtor, Mr. Diab, Mr. Diab's co-conspirators, or their affiliates include the following:

- Repeatedly either selling, or utilizing as collateral, the same accounts receivable from the same client files to factoring companies, other lenders, or investors;

- Transferring client files to third parties selected by Mr. Diab, or his co-conspirators, and such transfers of client files were made for inadequate or no consideration without consumer client consent;

- Intercepting ACH draws from client accounts under the LSAs and diverting the funds collected to the fraudulent transferees; and

9

- Causing the fraudulent transferees to initiate redundant or duplicative, and unauthorized, ACH draws against consumer client accounts.

The foregoing transactions, among others, siphoned substantial assets from the Debtor. The Debtor also entered into a series of purportedly secured borrowings, sales, and investments on unfavorable terms to finance the Debtor's operations and pay fees owed to the Debtor's marketing affiliates that the Debtor's cash flow from accounts receivable were unable to sustain.

Creditors and clients became increasingly aware of the Debtor's misconduct, orchestrated by Mr. Diab and his co-conspirators. By way of example, between late April 2023 and May 2023, entities to which the Debtor impermissibly transferred client files began receiving significant client complaints related to duplicative or fraudulent ACH draws against their personal accounts. Other creditors who expected more significant payments under the terms of their agreements began filing lawsuits to enforce their asserted rights against the Debtor. On March 10, 2023, a California state court in one such lawsuit ordered the appointment of a receiver. The Debtor filed the Bankruptcy Case, in part, to frustrate the appointment of the receiver.

**C.    Significant Events During the Bankruptcy Case**

**1.    Motions to Dismiss or Convert the Bankruptcy Case and Appointment of the Trustee**

On March 30, 2023, the Office of the United States Trustee filed a motion [Docket No. 21] (the "U.S. Trustee Dismissal Motion") to dismiss the Bankruptcy Case or convert the Bankruptcy Case to a case under chapter 7 of the Bankruptcy Code. Although filed only shortly after the Bankruptcy Case, the U.S. Trustee observed that the Debtor had already failed to comply with a litany of reporting requirements, including: (i) failure to provide proof of insurance; (ii) failure to provide evidence the Debtor closed its prepetition bank accounts or the opening of postpetition, debtor-in-possession bank accounts at authorized depositories; (iii) failure to provide required disclosures concerning real property, cash flow, required certificates and licenses, income tax returns, financial statements, employee benefits, insiders; and (iv) failure to provide evidence that the petition was recorded.

10

1      On April 19, 2023, Debt Validation Fund II, LLC, MC DVI Fund 1, LLC, and MC DVI Fund

2 2, LLC collectively filed a motion [Docket No. 44] (the "Creditor Dismissal Motion") to dismiss the

3 Bankruptcy Case or, in the alternative, convert the Bankruptcy Case to a case under chapter 7 of the

4 Bankruptcy Code or appoint a chapter 11 trustee. The Creditor Dismissal Motion was premised on

5 allegations the Debtor engaged in a prepetition pattern of dissipating its assets to affiliates or insiders

6 for less than fair value in a scheme to hinder, delay, and defraud creditors. The Creditor Dismissal

7 Motion also alleged that the Debtor filed the Bankruptcy Case, in part, to frustrate efforts to obtain

8 appointment of a receiver in state court.

9      On May 4, 2023, the Bankruptcy Court entered an order [Docket No. 58] granting the U.S.

10 Trustee Dismissal Motion and ordering the appointment of a chapter 11 trustee. On May 15, 2023,

11 the movants withdrew the Creditor Dismissal Motion.

12      On May 8, 2023, the U.S. Trustee filed a notice of appointment [Docket No. 62] of Richard

13 A. Marshack as the chapter 11 Trustee and the Trustee accepted [Docket No. 63] the appointment.

14 On May 8, 2023, the Bankruptcy Court entered an order [Docket No. 65] approving the appointment

15 of the Trustee.

16     **2.**    **Appointment of the Committee**

17      On June 13, 2023, the Trustee filed an emergency motion [Docket No. 102] (the "Ad Hoc

18 Committee Motion") to permit the Trustee to enter into an expense reimbursement agreement with

19 an *ad hoc* committee intended to advance the interests of all consumer client claimants. The U.S.

20 Trustee objected [Docket No. 127], in part, on the grounds that the U.S. Trustee was in the process

21 of re-soliciting creditor interest in serving on an official committee of unsecured creditors. On June

22 26, 2023, creditor Carolyn Beech objected [Docket No. 144] to the expense reimbursement motion.

23 On June 26, 2023, the Trustee, U.S. Trustee, and Carolyn Beech entered into a stipulation [Docket

24 No. 149] dismissing the Ad Hoc Committee Motion provided that the U.S. Trustee agree that a

25 majority of any official committee of unsecured creditors remains comprised of consumer client

26 claimants. On June 27, 2023, the Bankruptcy Court entered an order [Docket No. 151] approving the

27 stipulation.

28

DISCLOSURE STATEMENT DESCRIBING FIRST AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION
159188907.1

On June 23, 2023, the U.S. Trustee filed a notice [Docket No. 134] of the appointment of a five-member Committee.  On June 29, 2023, the U.S. Trustee filed a notice [Docket No. 157] of the appointment of two additional members to the Committee, which resulted in a seven-member Committee.  The Committee's membership is as follows: (i) Alexandra Lufti; (ii) April Reidy; (iii) Denise Burtchell; (iv) Angela Dows, Esq.; (v) Thomas Ray; (vi) Affirma, LLC; and (vii) Abigail R. Beaudin.  Consistent with the Bankruptcy Court approved stipulation, the majority of the Committee's members are consumer client claimants.

   **3.    Estate Professionals**

On June 22, 2023, the Bankruptcy Court entered an order [Docket No. 129] approving the employment of Marshack Hays Wood LLP as general bankruptcy counsel to the Trustee.  On June 29, 2023, the Bankruptcy Court entered an order [Docket No. 155] approving employment of Bicher & Associates as field agent and forensic accountants to the Trustee.  On July 3, 2023, the Bankruptcy Court entered an order [Docket No. 169] approving the employment of Grobstein Teeple LLP as accountants to the Trustee.  On July 5, 2024, the Bankruptcy Court entered an order [Docket No. 171] approving the employment of Dinsmore & Shohl LLP as special litigation counsel to the Trustee.  On December 22, 2023, the Bankruptcy Court entered an order [Docket no. 785] approving the employment of Omni Agent Solutions as claims and noticing agent to the Trustee.

On August 11, 2023, the Bankruptcy Court entered an order [Docket No. 384] approving the Trustee's application, on behalf of the Debtor, to employ Khang & Khang LLP as general bankruptcy counsel to the Debtor from the Petition Date through the appointment of the Trustee.  The Bankruptcy Court further ordered Khang & Khang LLP to turn over the entire balance of the $80,000 retainer to the Trustee, including any amounts drawn by Khang & Khang LLP against the retainer without Bankruptcy Court approval.  On October 7, 2023, Khang & Khang LLP filed a notice [Docket No. 563] to professionals to file applications for approval of interim compensation.  On October 20, 2023, Khang & Khang LLP withdrew [Docket No. 591] the notice to professionals.

On August 24, 2023, the Bankruptcy Court entered an order [Docket No. 4444] approving the employment of Fox Rothschild LLP as general bankruptcy counsel to the Committee.  On October

16, 2023, the Bankruptcy Court entered an order [Docket No. 578] authorizing the employment of Force Ten Partners, LLC as financial advisor to the Committee.

As of the date of this Disclosure Statement, the foregoing estate professionals have not filed applications for approval of compensation and reimbursement of expenses.

**4.    Postpetition Financial Reporting and Disclosures**

On the Petition Date, the Bankruptcy Court issued certain notices [Docket Nos. 2-6] of deficiencies or omissions in documents supporting the Petition and of the Bankruptcy Court's intent to dismiss the Bankruptcy Case in the event the deficiencies were not resolved.

On March 24, 2023, the Debtor filed a list [Docket No. 16] of the top 20 creditors holding unsecured claims.  On April 4, 2023, the Debtor filed a corporate resolution [Docket No. 27] authorizing the filing of the Bankruptcy Case, a corporate ownership statement [Docket No. 28], a statement [Docket No. 29] of related cases, a disclosure [Docket No. 30] of attorney compensation, a summary [Docket No. 32] of assets and liabilities, Schedules A/B, D, E/F, G, and H [Docket No. 33], a statement of financial affairs [Docket No. 34], and a list [Docket No. 36] of equity security holders.  On May 1, 2023, the Debtor filed an amended Schedule D [Docket No. 52], Schedule G [Docket No. 53], an amended statement of financial affairs [Docket No. 54], and a monthly operating report [Docket No. 55] for the month ended March 31, 2023.  Based on the Plan Proponent's review, the Plan Proponents believe that the financial disclosures filed by the Debtor are incomplete, unreliable, and otherwise of limited value for purposes comprehensive assessment of the Debtor's financial condition on the Petition Date.

The Trustee has provided financial disclosures following his appointment.  The Trustee initially filed declarations [Docket Nos. 112, 184] in lieu of filing monthly operating reports, which cover the months ending April 30, 2023, through June 30, 2023.  The Trustee subsequently filed monthly operating reports [Docket Nos. 510, 511, 512, 541, 542, 593, 740, 741, 765, 857, 950], which, as of the date of this Disclosure Statement, cover the periods ending April 30, 2023, through January 31, 2024.

DISCLOSURE STATEMENT DESCRIBING FIRST AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION
159188907.1

**5.** **The Injunction Action**

    **a.** **The Complaint, Preliminary Injunction, and Amended Complaints**

On May 25, 2023, the Trustee filed a complaint [Adv. Docket No. 1] initiating the adversary proceeding captioned *Marshack v. Diab, et al.*, Adv. Proc. No. 8:23-ap-01046-SC ("Injunction Action"). As set forth more fully in the complaint, the Trustee filed the Injunction Action, *inter alia*, to enjoin the transfer or dissipation of assets of the Debtor, recover assets transferred pursuant to certain avoidable or fraudulent transactions, and obtain turnover of certain Debtor assets not in the possession, custody, or control of the Debtor. The Injunction Action relates primarily to the scheme, implemented by Mr. Diab, his co-conspirators, and their affiliates, to fraudulently or otherwise impermissibly transfer assets of the Debtor discussed more fully herein.

On May 25, 2023, the Trustee filed an emergency motion [Adv. Docket No. 4], *inter alia*, seeking turnover of certain estate property, a preliminary injunction, lock-out of certain parties from accessing certain estate property, and related relief. The motion and related papers [Adv. Docket Nos. 3-8] included requests for immediate turnover and preservation of critical operating information, client information, accounts, ACH processing accounts, bank accounts and client funds. On June 23, 2023, the Bankruptcy Court entered an order [Adv. Docket No. 70] granting the motion.

On June 15, 2023, the Trustee filed a first amended complaint [Adv. Docket No. 62] primarily to correct the spelling or entity designations of named defendants and add other defendants. The following defendants filed answers to the first amended complaint, but not the second amended complaint: Tony Diab [Adv. Docket No. 134]; and Scott Eadie [Adv. Docket No. 241].

On October 13, 2023, the Trustee filed a second amended complaint [Adv. Docket No. 226]. The following defendants filed answers to the second amended complaint: Greyson Law Center PC [Adv. Docket No. 251]; Marich Bein, LLC [Adv. Docket No. 263]; Daniel S. March [Adv. Docket No. 280]; CLG and LGS Holdco, LLC [Adv. Docket No. 307]; BankUnited, N.A. [Adv. Docket No. 314]; Eng Taing [Adv. Docket No. 326]; Touzi Capital, LLC [Adv. Docket No. 327]; Worldpay Group and Worldpay, LLC [Adv. Docket No. 395]; and Fidelity National Information Services, Inc. dba FIS [Adv. Docket No. 396].

DISCLOSURE STATEMENT DESCRIBING FIRST AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION
159188907.1

1          **b.      Motions to Dismiss the Injunction Action**

2          On November 3, 2023, defendants, Eng Taing and Touzi Capital, LLC, filed a motion [Adv.

3    Docket No. 265] to dismiss the second amended complaint in the Injunction Action.  On December

4    22, 2023, the Bankruptcy Court entered an order [Adv. Docket No. 299] denying the Eng Taing and

5    Touzi Capital, LLC motion to dismiss.

6          On December 22, 2023, defendants Rosa Bianca Loli and Lisa Cohen filed motions [Adv.

7    Docket Nos. 300, 301] to dismiss the second amended complaint in the Injunction Action.  On March

8    13, 2023, the Trustee filed oppositions [Adv. Docket Nos. 442, 443] to the motions.

9          **c.      Voluntary Dismissals of Defendants to the Injunction Action**

10         On July 24, 2023, the Trustee filed a notice [Adv. Docket No. 103] of dismissal, without

11   prejudice, of defendant, the United States Parcel Service.

12         On August 1, 2023, the Trustee filed a notice [Adv. Docket No. 119] of dismissal, without

13   prejudice, of defendant, Phoenix Law Group, Inc.

14         On October 6, 2023, the Bankruptcy Court entered an order [Adv. Docket No. 221] approving

15   a stipulation to dismiss without prejudice defendants, Gallant Law Group, PC and Center Pointe Law,

16   PC.

17         On October 27, 2023, the Bankruptcy Court entered an order [Adv. Docket No. 250]

18   approving a stipulation to dismiss without prejudice defendants, Han Trinh and Jayde Trinh.

19         On November 11, 2023, the Trustee filed a notice [Adv. Docket No. 270] of dismissal, without

20   prejudice, of defendants, Occams Advisory, Inc., Teracel Blockchain Fund, LLC, Chris Winslow,

21   B.A.T., Inc. d/b/a Coast Processing, Guardian, Maverick Management, LLC, Eng Tang, WorldPay,

22   Inc., William Taylor Carss, and Maria Eeyah Tan.

23         On January 30, 2023, the Trustee filed a notice [Adv. Docket No. 372] of dismissal, without

24   prejudice, of defendants, Jake Akers and Authorize.net.

25         On March 15, 2024, the Bankruptcy Court entered an order [Adv. Docket No. 446] granting

26   the Trustee's motion [Docket No. 339] to dismiss without prejudice Marich Bein, LLC and

27   BankUnited, N.A. as defendants to the Injunction Action to permit the Trustee to file a new complaint

28

DISCLOSURE STATEMENT DESCRIBING FIRST AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION
159188907.1

1  against the defendants in a separate adversary proceeding.

2          **d.**    **Defaults Entered Against Defendants to the Injunction Action**

3        The Clerk of the Bankruptcy Court has entered defaults against the following defendants:

4  Vulcan Consulting Group, LLC [Adv. Docket No. 144]; Wes Thomas [Adv. Docket No. 145];

5  Seamless Chex, Inc. [Adv. Docket No. 153]; Teracel Blockchain Fund II, LLC [Adv. Docket No.

6  154]; Jake Akers [Adv. Docket No. 163]; BAT, Inc. d/b/a Coast Processing [Adv. Docket No. 164];

7  Jimmy Chhor [Adv. Docket No. 174]; Oakstone Law Group, P.C. [Docket No. 177]; Prime Logix,

8  LLC [Adv. Docket No. 179]; Revolv3, Inc. [Adv. Docket No. 180]; and Guardian Processing, LLC

9  [Adv. Docket No. 181]. As of the date of this Disclosure Statement, the Bankruptcy Court has not

10  entered default judgments.

11          **e.**    **Settlements and Compromises of Claims Related to the Injunction Action**

12        On July 6, 2023, the Trustee filed a motion [Docket No. 176] in the Bankruptcy Case to

13  approve a stipulated judgment with Phoenix Law, PC ("Phoenix") that, among other things, provides

14  a finding that the Debtor's prepetition transfer of approximately 40,000 consumer client files to

15  Phoenix is avoided as a preferential or fraudulent transfer, and providing for the recovery of such

16  consumer client files and related material. The settlement agreement also provided for the dismissal

17  of defendants, William Taylor Carss and Maria Eeya Tan, without prejudice. On August 7, 2023, the

18  Bankruptcy Court entered an order [Docket No. 365] approving the settlement motion.

19        The Injunction Action remains pending as of the date of this Disclosure Statement.

20        **6.**    **The Postpetition Financing Motions**

21        The Trustee requested postpetition financing to fund ordinary business operations of the

22  Debtor because the estate lacked adequate available cash to fund such expenses. Specifically, the

23  U.S. Trustee objected to the use of postpetition funds collected from consumer clients by ACH draws

24  and the estate lacked significant cash on hand as of the Petition Date. The Trustee contended that

25  maintaining the Debtor's operations postpetition was necessary to preserve the going-concern value

26  of the Debtor in advance of any sale of the Debtor's business.

27        On June 16, 2023, the Trustee filed an emergency motion [Docket No. 119] (the "First

28

1  Financing Motion") to obtain postpetition financing, on an unsecured, superpriority administrative

2  basis, from Resolution Ventures in the amount of $800,000, including an initial advance of $350,000

3  and a subsequent advance of $450,000.  On June 22, 2023, the Bankruptcy Court entered an order

4  [Docket No. 131] (the "First Financing Order") approving the First Financing Motion on an interim

5  basis.

6      On June 29, 2023, the Trustee filed an *ex parte* notice [Docket No. 156] (the "Second

7  Financing Motion") of an alleged nonmaterial modification to the promissory note by and between

8  the Trustee and Resolution Ventures, pursuant to the First Financing Order.  The Second Financing

9  Motion indicated that Resolution Ventures had advanced $240,000 of the $800,000 loan amount prior

10 to entry of the First Financing Order; however, Resolution Ventures subsequently informed the

11 Trustee that it was unable to provide any further advances under the promissory note.  The Second

12 Financing Motion proposed that the non-material modification would substitute Liberty Acquisitions

13 Group, Inc. ("Liberty"), an affiliate of Consumer Legal Group PC ("CLG"), as the lender for the

14 remaining $560,000 balance of the approved, unsecured, superpriority administrative loan, and

15 repayable on a *pari passu* basis with the $240,000 loaned by Resolution Ventures.

16     On June 29, 2023, the Bankruptcy Court set [Docket No. 158] an emergency hearing on the

17 Second Financing Motion.  On July 3, 2023, the Bankruptcy Court entered an order [Docket No. 168]

18 (the "Second Financing Order") authorizing, on an interim basis, the proposed loan from Liberty

19 Acquisitions Group, Inc.

20     On July 16, 2023, the Trustee filed an emergency motion [Docket No. 249] (the "Third

21 Financing Motion") to obtain postpetition financing, on an unsecured, superpriority administrative

22 basis, from Resolution Ventures, in the amount of $249,663.98, and from Liberty, in the amount of

23 $249,663.98.  On July 18, 2023, the Committee filed an objection [Docket No. 282] to the Third

24 Financing Motion, in part, on the grounds that the proposed, amended Liberty promissory note would

25 have impermissibly permitted Liberty to obtain immediate repayment of its postpetition loans from

26 the first sale proceeds received by the estate.  On July 20, 2023, the Bankruptcy Court entered an

27 order [Docket No. 310] (the "Third Financing Order") approving the Third Financing Motion on an

28

17

1  interim basis; provided, however, that Liberty would no longer provide the additional $249,663.98 in

2  financing and would instead be replaced by PanAmerican Consulting Inc. without the immediate

3  repayment provisions in the Liberty note.

4      On August 21, 2023, the Bankruptcy Court entered orders [Docket Nos. 413, 414, 415]

5  approving on a final basis the financing authorized under the First Financing Order, the Second

6  Financing order, and the Third Financing Order.

7      **7.**    **Motion to Approve Management Agreement**

8      On July 10, 2023, the Trustee filed a motion [Docket No. 204] to authorize the Trustee to

9  enter into a management agreement with Resolution Processing to provide the services of Russell

10  Squires and Gary DePew for $60,000 for the first month of services, and $40,000 per month for each

11  month thereafter, for no more than three months.  The Trustee requested approval of the management

12  agreement to provide persons familiar with the business operations of the Debtor to maintain

13  operations until the closing of a sale.  At the hearing concerning the sale, the Committee requested

14  that Russ Squires, serving in a representative capacity for bidder, Morning Law Group, resign from

15  his management position as of the July 20, 2023, bid.  On August 21, 2023, the Bankruptcy Court

16  entered an order [Docket No. 412] approving the motion as modified on the record at the sale hearing.

17      On September 28, 2023, the Trustee filed a motion [Docket No. 545] to surcharge secured

18  creditor collateral, as applicable, to provide for the immediate payment of the management fee.  The

19  Committee objected [Docket No. 557] on the grounds that the extent of secured creditor collateral

20  was not yet determined and that the order approving the management agreement only entitled Mr.

21  Squires to an administrative claim rather than ordinary course payment.  The Committee also reserved

22  rights to the extent the payment was ultimately determined to come from unencumbered funds.  On

23  October 27, 2023, the Bankruptcy Court entered an order [Docket No. 601] granting the surcharge

24  motion and authorizing payment of the management fee.

25      **8.**    **The Morning Law Group Sale**

26      **a.**    **Asset Sale**

27      On July 7, 2023, the Trustee filed a motion [Docket No. 191] (the "Sale Motion") to approve

28

DISCLOSURE STATEMENT DESCRIBING FIRST AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION
159188907.1

1  a sale of substantially all of the Debtor's assets.  The Sale Motion sought approval of that certain

2  *Agreement of Purchase and Sale and Joint Escrow Instructions* by and between the Trustee and CLG

3  (the "CLG PSA").  Under the CLG PSA, CLG would purchase certain of the Debtor's assets for the

4  following consideration: (i) an $8 million deposit; and (ii) a post-closing "earn-out," after deducting

5  a 20% administrative fee, calculated as (a) 20% of all amounts collected by CLG on "Active

6  Executory Contracts," and (b) 15% of all amounts collected by CLG on "Inactive Executory

7  Contracts."  The CLG PSA included other provisions such as the appointment of an ethics compliance

8  monitor to ensure compliance with applicable regulations in the post-closing operations of the

9  Debtor's business.

10  On July 10, 2023, the Bankruptcy Court *sua sponte* entered an order [Docket No. 206]

11  requesting both briefing concerning the Sale Motion and optional supplemental briefing concerning

12  the Bankruptcy Court's authority to approve the sale in light of the Debtor's prepetition illegal

13  operations and the appropriate conditions and available post-sale reformations of any and all business

14  operations.

15  On July 17, 2023, the following parties filed supplemental briefing in accordance with the

16  Court's supplemental briefing order: Carolyn Beech and Diane Scarnavack [Docket No. 254]; CLG

17  [Docket No. 257]; the U.S. Trustee [Docket No. 259]; the Trustee [Docket No. 260]; the Committee

18  [Docket No. 264]; and Debt Validation Fund II, LLC, MC DVI Fund 1, LLC, and MC DVI Fund 2,

19  LLC [Docket No. 267].  The following parties filed responses to the pocket briefs: (i) the Committee

20  [Docket No. 292]; and (ii) CLG [Docket No. 307].

21  On July 19, 2023, the following parties filed responses to the Sale Motion: Affirma, LLC

22  [Docket No. 285]; Oxford Knox, LLC [Docket No. 287]; the National Association of Consumer

23  Bankruptcy Attorneys and National Consumer Bankruptcy Rights Center [Docket No. 288]; Alteryx,

24  Inc. [Docket No. 289]; Debt Validation Fund II, LLC, MC DVI Fund 1, LLC, and MC DVI Fund 2,

25  LLC [Docket No. 290]; Azzure Capital, LLC [Docket No. 294]; the U.S. Trustee [Docket No. 296];

26  OHP-CDR, LP [Docket No. 299]; and the Committee [Docket No. 300].

27  On July 20, 2023, the Trustee filed a reply [Docket No. 313] in support of the Sale Motion.

28

DISCLOSURE STATEMENT DESCRIBING FIRST AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION
159188907.1

On July 21, 2023, the Bankruptcy Court held a hearing on the Sale Motion.  At the hearing, the Trustee sought approval of a revised and further negotiated form of the CLG PSA to which the Trustee, the Committee, and CLG agreed.  The hearing resulted in a competitive bidding process between CLG, the Bensamochan Law Group, and Morning Law Group ("MLG").

The bidding process resulted in the selection of MLG as the winning bidder, pursuant to that certain *Agreement of Purchase and Sale and Joint Escrow Instructions* by and between the Trustee and MLG [Docket No. 416] (the "Purchase Agreement").  The Purchase Agreement provided for the transfer of certain of the Debtor's assets to MLG.  The purchase price was calculated as: (i) a deposit in the amount of $5.5 million; and (ii) an post-closing "earn-out" calculated as (a) 50% of all amounts collected by MLG on "Active Executory Contracts," and (b) 40% of all amounts collected by MLG on "Inactive Executory Contracts."  The Estate was not entitled to receive earn-out payments until MLG satisfied the financing it obtained to fund the deposit.  At the hearing, the Trustee valued the MLG bid and Purchase Agreement to be as high as $84,490,990, based on certain pro forma assumptions on the performance of the Active Executory Contracts and the ability of MLG to the recover Inactive Executory Contracts.  The actual amount to be received is estimated to be substantially lower based on, among other things, MLG's actual retention of active and inactive executory contracts.  As set forth more fully in this Disclosure Statement, the combined recovery under the Sale Transaction, including the deposit, is estimated at approximately $14.1 million.

On July 22, 2023, the Court entered a memorandum decision [Docket No. 320] approving the Sale Transaction.  On August 2, 2023, the Court entered an order [Docket No. 352] granting the Sale Motion.  The Sale Transaction closed on August 4, 2023.

   **b.** **Appointment of the Monitor**

On August 7, 2023, the Court entered an order [Docket No. 363] appointing Nancy Rapoport as ethics compliance monitor (the "Monitor"), pursuant to the Purchase Agreement and Sale Order.  The order of appointment provided that the role of the Monitor is strictly to monitor MLG's compliance with generally understood ethical standards and consumer protection obligations in its going-forward business servicing the Debtor's former consumer clients.

On November 27, 2023, the Monitor filed her first report [Docket No. 720] concerning MLG's compliance with ethical obligations.  On February 21, 2024, the Monitor filed her second report [Docket No. 951] concerning MLG's compliance with ethical obligations.

The Monitor has filed monthly fee statements [Docket Nos. 524, 525, 567, 614, 748, 812, 813, 913, 915, 978] since her appointment.  On November 13, 2023, the Bankruptcy Court entered an order [Docket No. 661] approving a stipulation providing for payment of the Monitor through funds held by MLG.  On February 8, 2024, the Bankruptcy Court entered an order [Docket No. 928] granting the Trustee's motion to surcharge secured creditor collateral, if any, to fund accrued fees of the Monitor.

**c.    Opt-Out Notice and Assumption and Rejection**

On August 16, 2023, the Trustee served [Docket Nos. 403, 404] a 90-day opt-out notice to consumer clients whose LSAs were potentially subject to assumption and assignment, pursuant to applicable California law.  The opt-out notice and procedure were implemented in consultation with the Trustee, Committee, Monitor, and MLG to comply with applicable law governing a sale of law firm clients.

On September 8, 2023, the Trustee filed a notice [Docket No. 489] of potential assumption an assignment of executory agreements, pursuant to the Purchase Agreement and Sale Order. Following service of the notice, the Bankruptcy Court granted [Docket Nos. 523, 555, 927] several motions to reject executory agreements, including LSA, pursuant to the terms of the Purchase Agreement and Sale Order.

**d.    Projected Recoveries and Potential Disputes**

The Plan Proponents project that recoveries under the Purchase Agreement will be materially less than the top line projected estimate existing as of the time of the sale hearing, largely because: (i) MLG encountered significant difficulty in maintaining the number of Active Executory Contracts and; (ii) due to the Monitor's position concerning the timing within which MLG was permitted to begin outreach and recovery of the Inactive Executory Contracts.  Specifically, following detailed financial analysis, the Plan Proponents believe that the ultimate recovery (excluding the deposit)

DISCLOSURE STATEMENT DESCRIBING FIRST AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION
159188907.1

1   under the earn-out portion of the Sale Transaction will be approximately $8.6 million.  Accordingly,

2   the combined recovery under the Sale Transaction, including the deposit, is estimated at

3   approximately $14.1 million.  ***This projected recovery is subject to significant variables, including***

4   ***the success of MLG's continued efforts to retain additional former consumer clients, and may be***

5   ***subject to material change.***  For purposes of the Disclosure Statement, the assumption is that MLG

6   is unable to recover a material amount of the Inactive Executory Contracts.

7         The Plan Proponents and their financial advisors are working closely with MLG to monitor

8   MLG's performance under the terms of the Purchase Agreement and financial issues that may impact

9   the ultimate recovery to the Estate.  In the course of these discussions, the Plan Proponents have

10  identified several potential points of dispute between the Estate and MLG concerning interpretations

11  of the Purchase Agreement, including: (i) the point at which MLG is required to begin remitting earn-

12  out payments to the Estate; (ii) the basis for the calculation of the earn-out; and (iii) the extent of any

13  applicable offset rights granted to MLG under the Purchase Agreement.  The Estate continues to work

14  closely with MLG on these issues and, to the extent the Estate is unable to reach a resolution, the

15  Estate will retain all claims under the Purchase Agreement.

16        **9.      The 3012 Motion**

17        On February 7, 2024, the Trustee filed a motion [Docket No. 924] to determine the amount

18  of secured claims, if any, held by: (i) Everyday Funding Group, (ii) Green Fund, (iii) World Global

19  Fund, (iv) MCA Capital Holdings, (v) StratCap Management, (vi) Cobalt, (vii) Cloudfund, (viii)

20  BMF, (ix) Kevlar, and (x) Franklin Capital.  The motion provided that relief was appropriate, under

21  Bankruptcy Rule 3012, because each claim related to a UCC-1 financing statement that was not

22  terminated notwithstanding the Trustee's belief that the value of the underlying claim was $0.  The

23  Trustee also sought authority to file UCC-3 termination statements with respect to any creditor whose

24  claim was valued at $0.  None of the allegedly secured creditors subject to the motion filed responses

25  or appeared at the hearing on the motion.  On March 13, 2024, the Bankruptcy Court entered an order

26  [Docket No. 1021] granting the motion, valuing the claims of listed secured creditors at $0, and

27  permitting the Trustee to file UCC-3 termination statements with respect to such claims.

28

**10.    Motions to Approve Compromises**

On February 16, 2024, the Trustee filed a motion [Docket No. 942] to approve a compromise with Maverick Bankcard, Inc.  The Trustee asserted that Maverick established a prepetition reserve that held approximately $628,343.18 as of the Petition Date and that Maverick has certain setoff or recoupment rights with respect to refunds, chargebacks, or ACH returns incurred while processing payments from the Debtor's consumer clients.   Pursuant to the settlement, Maverick has agreed to apply its setoff rights with respect to the reserve and release to the Debtor $216,010.65, which is attributable to the remaining reserve balance and an amount inadvertently withheld postpetition.

On March 15, 2024, the Bankruptcy Court entered an order [Docket No. 1027] approving a stipulation between the Trustee and Pioneer Funding Group II, LLC reclassifying its secured claim as an unsecured claim and deeming the unsecured claim allowed in the amount of $366,500, subject to disallowance, pursuant to § 502(d).

On March 19, 2024, the Trustee and City Capital NY filed a stipulation with the Bankruptcy Court [Docket No. 1041] reclassifying City Capitals secured claim as an unsecured claim and deeming it allowed in the amount of $2,950,000.00, subject to disallowance, pursuant to § 502(d).

**11.    Adversary Proceedings**

**a.    Debtor's Adversary Proceeding**

On April 7, 2023, the Debtor filed a complaint [Adv. Docket No. 1] initiating the adversary proceeding captioned *The Litigation Practice Group P.C. v. Validation Partners LLC, et al.*, Adv. Proc. No. 8:23-ap-01029-SC.  The complaint sought to extend the automatic stay and enjoin certain creditors that were pursuing prepetition litigation against the Debtor.  On June 9, 2023, following the Trustee's appointment, the Trustee filed a notice [Docket No. 5] of voluntary dismissal of the adversary proceeding.

**b.    The OHP Action**

On September 11, 2023, OHP-CDR, LP and PurchaseCo80, LLC (collectively, the "OHP Plaintiffs") filed a complaint [Adv. Docket No. 1] initiating the adversary proceeding captioned *OHP-CDR, LP, et al. v. Marshack, et al.*, Adv. Proc. No. 8:23-ap-01098-SC (the "OHP Action").  In the

OHP Action, the OHP Plaintiffs seek determination of lien priority and the extent of their alleged ownership interests in certain assets of the Debtor.

On October 13, 2023, the Trustee filed an answer and counterclaims [Adv. Docket No. 7] in the OHP Action. On October 13, 2023, defendant Azzure Capital, LLC filed an answer [Adv. Docket No. 10].

On November 3, 2023, the OHP Plaintiffs filed an answer [Adv. Docket No. 13] to the Trustee's counterclaims.

On February 21, 2024, the Bankruptcy Court entered an order [Adv. Docket No. 26] setting a pretrial conference and requiring the OHP Plaintiffs to submit briefing and evidence in support of their secured status. On March 15, 2024, the OHP Plaintiffs filed a brief [Adv. Docket No. 37] and related exhibits [Adv. Docket Nos. 36, 38-46]. The pretrial conference is scheduled for April 22, 2024.

**c.    The Secured Creditor Action**

On January 26, 2024, the Trustee filed a complaint [Adv. Docket No. 1] initiating the adversary proceeding captioned *Marshack v. Bridge Funding Cap, LLC d/b/a Fundura Capital, et al.*, Adv. Proc. No. 8:24-ap-01011-SC (the "Secured Creditor Action"). In the Secured Creditor Action, the Trustee seeks, with respect to certain alleged secured creditors (the "Secured Creditor Defendants"), (i) determinations of the validity, extent, and priority of certain Secured Creditor Defendants' allegedly secured claims, (ii) avoidance, recovery, and preservation of certain secured claims, and (iii) subordination with respect to certain Secured Creditor Defendants.

On February 7, 2024, the Bankruptcy Court entered an order [Adv. Docket No. 10] setting a pretrial conference and requiring the Secured Creditor Defendants to submit briefing and evidence in support of their secured status. On March 15, 2024, the following Secured Creditor Defendants filed briefs: Bridge Funding Cap, LLC D/B/A/ Fundura Capital [Adv. Docket No. 30] and PECC Corp. [Adv. Docket Nos. 37, 38]. The Trustee entered into stipulations [Adv. Docket Nos. 35, 42] to extend the briefing deadlines for MNS Funding, LLC, MC DVI Fund 1, LLC, MC DVI Fund 2 LLC, and Debt Validation Fund II, LLC pending settlement discussions. The pretrial conference is scheduled

1  for April 22, 2024.

2       On March 15, 2024, the Bankruptcy Court entered an order [Docket No. 1030] approving a

3  stipulation between the Trustee and Marich Bein, LLC treating its purportedly secured claim as

4  unsecured, subject to disallowance, pursuant to § 502(d), and authorizing the Trustee to file a UCC-

5  3 termination statement with respect to the UCC-1 filed in favor of Marich Bein, LLC.

6          **d.**     **Marketing and Receivable Purchase Ownership Claim Litigation**

7       As stated above, LPG operated a law firm for consumers across the country who sought

8  assistance in contesting or resolving certain identified debt. The consumers would pay LPG over a

9  period of time via monthly debits from their bank accounts. The monthly payments were meant to

10  cover all legal services LPG provided to the consumers including debt validation, review of

11  documents to determine enforceability, and court appearances to halt lawsuits to obtain judgments.

12  In certain instances, LPG would file a lawsuit in an effort to eliminate a disputed debt or to prosecute

13  affirmative claims held by the consumers. As set forth more fully in the relevant adversary

14  proceedings, LPG mismanaged the handling of the consumers' monthly payments.

15       To obtain consumer clients, the Trustee alleges that LPG contracted with marketing

16  companies, who engaged in illegal capping. The marketing companies would advertise or directly

17  solicit potential consumer clients for LPG. The marketing affiliates went so far as to assist with the

18  execution of engagement letters between the consumer and LPG. In exchange, LPG agreed to pay the

19  marketing affiliates a percentage of the monthly payments collected by LPG from the consumers.

20  Because LPG received payments from consumers over time, it often sought financing by borrowing

21  against its future cash flows. This borrowing was not only used to finance operations at LPG, but also

22  to pay the fees owed to the marketing companies for providing client referrals. Many of the

23  documents executed in connection with such financing described the transactions as accounts

24  receivable purchase agreements and/or the sale of client files. The Trustee is diligently investigating

25  and has filed numerous adversary proceedings against marketing affiliates and other entities who

26  allegedly sold and/or purchased receivables and/or client files. The various adversary proceedings set

27  forth facts and law to support that these agreements are void or voidable under various theories

28

25

DISCLOSURE STATEMENT DESCRIBING FIRST AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION
159188907.1

1  including that such agreements are illegal, and thus any payments made or collected by these entities,

2  should be returned to the Estate as avoidable transfers. Ten of these adversary proceedings have been

3  filed, with numerous others pending.

4          **e.    Other Adversary Proceedings**

5          The Trustee is investigating various avoidance actions and actions to recover transfers of

6  property of the estate. Trustee's attorneys have assisted with this investigation, sending numerous

7  2004 applications and subpoenas in an attempt to trace assets.  Trustee's forensic accountants have

8  provided an analysis, from various Debtor bank statements, showing what money was transferred

9  from LPG to various entities within 90 days of and within four years prior the Petition Date.  Trustee

10  has sent various entities "Preference" letters and will continue to investigate and pursue these parties

11  if reasonable.  Trustee anticipates filing these actions in the coming months.

12                          **III.**

13                 **SUMMARY OF THE PLAN**

14          *The following is a general overview only, which is qualified in its entirety by, and should be*

15  *read in conjunction with, the more detailed discussions and information appearing in the Plan.*

16  **A.    Classification and Treatment of Claims and Interests Under the Plan**

17          **1.    What Creditors and Interest Holders Will Receive Under the Plan**

18          As required by the Bankruptcy Code, the Plan classifies claims and interests in various classes

19  according to their rights and priorities. Similarly situated claims are included in the same class.

20  Claims that have different rights and priorities such as secured creditors are included in their own

21  class. The Plan also states whether the claims and rights of each class are impaired or unimpaired.

22  Lastly, the Plan provides for the treatment of for holders of claims in each class (i.e. what will they

23  receive on account of their claims).

24          **2.    Unclassified Claims**

25          Certain types of claims are not placed into voting classes; instead they are unclassified. They

26  are not considered impaired and they do not vote on the Plan because they are automatically entitled

27  to specific treatment as set forth in the Bankruptcy Code. In accordance with § 1123(a)(1) of the

28

                          26

1  Bankruptcy Code, Administrative Claims, Priority Tax Claims, and Professional Fee Claims, have
2  not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article
3  III of the Plan. The following claims are not classified:

4              **a.    Administrative Claims Including Professional Fee Claims**

5          Section 507(a)(2) of the Bankruptcy Code provides for priority treatment of certain claims,
6  including fees and charges provided under chapter 123 of the Judicial Code, and administrative
7  expenses allowed under 11 U.S.C. § 503(b). The Bankruptcy Code requires that all such allowed
8  claims be paid in full on the Effective Date unless a particular Holder agrees to a different treatment.

9          **Holders of Administrative Claims that are required to, but do not, File and serve a**
10 **request for payment of such Administrative Claims by the applicable Administrative Claims**
11 **Bar Dates shall be forever barred, estopped, and enjoined from asserting such Administrative**
12 **Claims against the Estate or its property, and such Administrative Claims shall be deemed**
13 **satisfied, settled, and released.** Objections to such requests, if any, must be Filed and served on the
14 Plan Proponents, or Liquidating Trustee, as applicable, and the requesting party not later than the
15 Administrative Claims Objection Deadline.

16         Unless otherwise agreed to by the Holder of an Allowed Administrative Claim and the Plan
17 Proponents or the Liquidating Trustee, as applicable, each Holder of an Allowed Administrative
18 Claim (other than Holders of Professional Fee Claims and Claims for fees and expenses, pursuant to
19 § 1930 of the Judicial Code) will receive in full and final satisfaction of its Administrative Claim an
20 amount of Cash equal to the amount of such Allowed Administrative Claim in accordance with the
21 following:  (1) if an Administrative Claim is Allowed as of the Effective Date, on the Effective Date
22 or thereafter is agreed by any Holder of such Administrative Claim (or, if not then due, when such
23 Allowed Administrative Claim is due or as soon as reasonably practicable thereafter); (2) if such
24 Administrative Claim is not Allowed as of the Effective Date, no later than sixty (60) days after the
25 date on which an order Allowing such Administrative Claim becomes a Final Order, or as soon as
26 reasonably practicable thereafter; (3) if such Allowed Administrative Claim is based on liabilities
27 incurred by Debtor or Trustee in the ordinary course of business after the Petition Date in accordance
28

DISCLOSURE STATEMENT DESCRIBING FIRST AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION
159188907.1

with the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claim without any further action by the Holder of such Allowed Administrative Claim, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter; or (4) at such time and upon such terms as set forth in a Final Order of the Bankruptcy Court or as agreed with the Plan Proponents or Liquidating Trustee, as applicable.

The following chart lists all known potential claims, including Professional Fee Claims, entitled to § 507(a)(2) priority treatment:

| Name | Treatment |
|---|---|
| Clerk's Office Fees | Paid in full on the Effective Date |
| Office of the U.S. Trustee Fees | Paid in full on the Effective Date |
| Marshack Hays Wood, LLP ("MHW"), general counsel to Chapter 11 Trustee | Paid in full on the later of (i) the Effective Date and (ii) the date the Bankruptcy Court enters an order allowing such fees and expenses, unless otherwise agreed by MHW |
| Dinsmore & Shohl ("Dinsmore"), special counsel to Chapter 11 Trustee | Paid in full on the later of (i) the Effective Date and (ii) the date the Bankruptcy Court enters an order allowing such fees and expenses, unless otherwise agreed by Dinsmore |
| Grobstein Teeple ("GT"), accountant to Chapter 11 Trustee | Paid in full on the later of (i) the Effective Date and (ii) the date the Bankruptcy Court enters an order allowing such fees and expenses, unless otherwise agreed by GT |
| Fox Rothschild ("FR"), counsel to the Official Committee of Unsecured Creditors | Paid in full on the later of (i) the Effective Date and (ii) the date the Bankruptcy Court enters an order allowing such fees and expenses, unless otherwise agreed by FR |
| Force 10 ("FT"), financial advisors/accountants to the Official Committee of Unsecured Creditors | Paid in full on the later of (i) the Effective Date and (ii) the date the Bankruptcy Court enters an order allowing such fees and expenses, unless otherwise agreed by FT |
| Court Appointed Monitor, Nancy Rapoport | Paid in full on the later of (i) the Effective Date and (ii) the date the Bankruptcy Court enters an order allowing such fees and expenses, unless otherwise agreed by the Monitor. |
| Court Appointed Privacy Ombudsman, Lucy H. Thomson | Paid in full on the later of the Effective Date and the date the Bankruptcy Court enters an order allowing such fees and expenses |
| Other Administrative Claims | Paid in full on the later of the Effective Date and the date the Bankruptcy Court enters an order allowing such Administrative Claims, or such later date as may be agreed by such Holder of Allowed Other Administrative Claims |
| Richard A. Marshack, Chapter 11 Trustee's statutory fees and expenses. | Paid in full on the later of (i) the Effective Date and (ii) the date the Bankruptcy Court enters an order allowing such fees and expenses, unless otherwise agreed by the Trustee. |

The administrative claim amounts set forth above simply represent the Plan Proponents' best

DISCLOSURE STATEMENT DESCRIBING FIRST AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION
159188907.1

1   estimate as to the identity of Holders and the amounts of projected administrative claims in this case.

2   The actual administrative claims may be higher or lower. By voting to accept the Plan, creditors are

3   not acknowledging the validity of, or consenting to the amount of, any of these administrative claims,

4   and creditors are not waiving any of their rights to object to the allowance of any administrative

5   claims.

6       **b.      Bankruptcy Approval of Professional Fee Claims Required**

7           Unless excepted from the need to file a motion by the Bankruptcy Code or unless the Court

8   enters an order approving such claims, all professional fees and expenses listed in the foregoing chart

9   must be approved by Court order before they may be paid. All final requests for payment of

10  Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the

11  Effective Date must be filed no later than forty-five (45) days after the Effective Date. The

12  Bankruptcy Court shall determine the amounts of such Professional Fee Claims after notice and a

13  hearing in accordance with the procedures established by the Bankruptcy Code, Bankruptcy Rules,

14  and prior Bankruptcy Court orders. Only the amount of fees and expenses allowed by the Bankruptcy

15  Court will be required to be paid under the Plan. Professionals who have been employed in this case

16  are not being deemed to have agreed that the figures contained herein represent any ceiling on the

17  amount of fees and expenses that they have incurred or are entitled to seek to be paid pursuant to

18  Bankruptcy Court order as such fees and expenses are just estimates provided at the time of the

19  preparation of the Plan.

20      **c.      Priority Tax Claims**

21          Priority Tax Claims include certain unsecured income, employment, and other taxes described

22  by 11 U.S.C. § 507(a)(8). The Bankruptcy Code requires that each Holder of a Priority Tax Claim

23  (whether secured or unsecured) must receive the present value of such claim in regular installment

24  payments in cash (i) of a total value, as of the Effective Date of the Plan, equal to the allowed amount

25  of such claim; (ii) over a period ending not later than five years after the Petition Date; and (iii) in a

26  manner not less favorable than the most favored non-priority unsecured claim provided for under the

27  Plan.

28

DISCLOSURE STATEMENT DESCRIBING FIRST AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION
159188907.1

Except to the extent that a Holder of an Allowed Priority Tax Claim and the Plan Proponents or the Liquidating Trustee agree to a less favorable treatment for such Holder, in full and final satisfaction, settlement, and release of and in exchange for each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in § 1129(a)(9)(C) of the Bankruptcy Code and, for the avoidance of doubt, Holders of Allowed Priority Tax Claims will receive interest on such Allowed Priority Tax Claims after the Effective Date in accordance with §§ 511 and 1129(a)(9)(C) of the Bankruptcy Code.

All Allowed Priority Tax Claims will be paid as set forth in the below chart. The Plan Proponents reserve all rights to object to any alleged Priority Tax Claims.

The following chart lists all known § 507(a)(8) Priority Tax Claims and their treatment under the Plan:[6] The chart is based on the filed claims in this case.  Trustee shall either reserve sufficient funds in the Estate to make such payments or the Liquidating Trust shall be liable to make such payments as they become due if Trustee funds all estate assets into the Trust.

_____

[6] The chart is for informational purposes only and is not an admission as to the validity of any particular claim.

DISCLOSURE STATEMENT DESCRIBING FIRST AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION
159188907.1

| Description | Amount Alleged[7] | Treatment |
| --- | --- | --- |
| IRS – Proof of Claim No. 2-2 filed on May 1, 2023 | $1,041,773.57[8] | Except to the extent the Holder of this Priority Tax Claim agrees to less favorable treatment with respect to the Allowed amount of such Claim, such Holder any Allowed amount of this Priority Tax Claim Unless Disallowed, equal annual Cash payments in an aggregate amount equal to the amount of such Allowed Priority Tax Claim, together with interest at the applicable rate pursuant to § 511, over a period not exceeding five (5) years from and after the Petition Date; provided, however, the Plan Proponents and Liquidating Trustee, as applicable, reserve the right to prepay all or a portion of any such amounts at any time at the discretion of the Plan Proponents and the Liquidating Trustee. |
| Franchise Tax Board – Proof of Claim No. 393 filed on August 29, 2023 | $317,416.67[9] | Except to the extent the Holder of this Priority Tax Claim agrees to less favorable treatment with respect to the Allowed amount of such Claim, such Holder any Allowed amount of this Priority Tax Claim Unless Disallowed, equal annual Cash payments in an aggregate amount equal to the amount of such Allowed Priority Tax Claim, together with interest at the applicable rate pursuant to § 511, over a period not exceeding five (5) years from and after the Petition Date; provided, however, the Plan Proponents and Liquidating Trustee, as applicable, reserve the right to prepay all or a portion of any such amounts at any time at the discretion of the Plan Proponents and the Liquidating Trustee. |

---

[7] The "Amount Alleged" column represents the amount of Priority Tax Claims that have been asserted, or that Trustee believes will be asserted, by each Holder of a Priority Tax Claim. The inclusion of such amount in the Plan is not intended to be, nor shall be construed as, an admission by Trustee of the validity, amount or priority of any such Claim.

[8] The total amount of the claim is $1,050,799.56 of which: (i) $9,025.99 is a general unsecured claim and (ii) $1,041,773.57 is a priority claim.

[9] The total amount of the claim is $350,745.88 of which: (i) $33,329.21 is a general unsecured claim and (ii) $317,416.67 is a priority claim.

31

| Description | Amount Alleged[7] | Treatment |
|---|---|---|
| Other Priority Tax Claims of $1,500 or Less | $0.00 (est.) | Any Allowed Priority Tax Claims of $1,500 or less will be paid in full on the Effective Date. |
| Other Priority Tax Claims over $1,500 | $0.00 (est.) | Except to the extent the Holder of this Priority Tax Claim agrees to less favorable treatment with respect to the Allowed amount of such Claim, such Holder any Allowed amount of this Priority Tax Claim Unless Disallowed, equal annual Cash payments in an aggregate amount equal to the amount of such Allowed Priority Tax Claim, together with interest at the applicable rate pursuant to § 511, over a period not exceeding five (5) years from and after the Petition Date; provided, however, the Plan Proponents and Liquidating Trustee, as applicable, reserve the right to prepay all or a portion of any such amounts at any time at the discretion of the Plan Proponents and the Liquidating Trustee. |
| **TOTAL** | **$1,359,190.24 (est.)** | |

3.    **Classified Claims and Interests**

a.    **Classification of Claims and Interests**

Except for the Claims addressed in Section III.B of the Plan, all Claims and Interests are classified in the Classes set forth in Section III.C of the Plan for all purposes, including voting, Confirmation, and distributions pursuant to the Plan and in accordance with §§ 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or an Interest is classified in a particular Class only to the extent that such Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of such Claim or Interest qualifies within the description of such other Classes. A Claim or Interest also is classified in a particular Class for the purpose of receiving distributions under the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

The classification of Claims and Interests against the Debtor pursuant to the Plan is as set

32

forth below:

| Class | Claim / Interest | Status | Voting Rights |
|-------|------------------|--------|---------------|
| 1 | Secured Claims | Impaired | Entitled to Vote |
| 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 3 | General Unsecured Claims | Impaired | Entitled to Vote |
| 4 | Subordinated Claims | Impaired | Not Entitled to Vote (Deemed to Reject under § 1126(g) of the Bankruptcy Code) |
| 5 | Equity Interests | Impaired | Not Entitled to Vote (Deemed to Reject under § 1126(g) of the Bankruptcy Code) |

     **b.**    **Treatment of Claims and Interests**

    Subject to Section III.C. of the Plan, each Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive under the Plan the treatment described below in full and final satisfaction, compromise, settlement, and release of, and in exchange for, such Holder's Allowed Claim or Allowed Interest, except to the extent less favorable treatment is agreed to by the Plan Proponents, or the Liquidating Trustee, as applicable, and the Holder of such Allowed Claim or Allowed Interest, as applicable.

    The Classes below classify Claims (except for unclassified claims such as Administrative Claims and Priority Tax Claims) against the Estate for all purposes, including voting, confirmation, and distribution pursuant to the Plan.

    **c.**    **Class 1 – Classes of Secured Claims**

    Secured claims are claims that are secured by Liens on property of the Estate. The following chart sets forth the description and treatment of Secured Claims.

    The Secured Claims are subject to substantial dispute. The Plan Proponents have objected, or intend to object, to the validity, priority, perfection, and/or amount of some or all of the Secured Claims on various grounds including, but not limited to, that the Liens purporting to secure the Secured Claims are avoidable under 11 U.S.C. §§ 544, 547, 548, 549, 550, 551, 552, and/or 553, or

DISCLOSURE STATEMENT DESCRIBING FIRST AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION
159188907.1

1  applicable nonbankruptcy law, or subject to subordination under 11 U.S.C. §§ 510(b) and/or 510(c).

2  To the extent that the Trustee, the Committee, or Liquidating Trustee files an adversary proceeding

3  and successfully avoids, recovers, and preserves any Lien held by any Holder of a Secured Claim,

4  the Estate or Liquidating Trust shall be entitled to rights otherwise afforded the Holders of such

5  Claims as described below.  Additionally, the Plan Proponents have objected, or intend to object, to

6  the amount of some or all of the Secured Claims on various grounds, pursuant to Bankruptcy Rule

7  3012.  In addition, the Plan Proponents believe that some or all of the Secured Claims, to the extent

8  Allowed, are subject to disallowance and/or setoff under 11 U.S.C. §§ 502(d) and 553.  Holders of

9  Allowed Secured Claims, following entry of a Final Order Allowing such Secured Claim (or any

10  portion thereof), will be entitled to the treatment specified by the Plan with respect to any Allowed

11  amount of such Secured Claim, if any.

12  　　　　The Plan sets forth the asserted amount of Secured Claims set forth in corresponding Proofs

13  of Claim or estimates the amount of the Secured Claim where no Proof of Claim is filed.  The Plan

14  does not treat as Holders of Secured Claims certain parties that filed UCC-1 financing statements

15  prepetition and whose claim is estimated in the amount of $0.00, pursuant to the Court's ruling on

16  that certain motion filed by the Trustee, pursuant to Bankruptcy Rule 3012.  Pursuant to the

17  foregoing ruling, the Court has authorized the Trustee to file UCC-3 termination statements with

18  respect to such UCC-1 financing statements, and, as such, any claim is not treated in the Plan as a

19  Secured Claim.  In other instances, the Plan estimates certain Secured Claims at $0.00 to the extent

20  that the Holders of such Secured Claims have filed UCC-1 financing statements but have neither

21  filed a Proof of claim nor responded to Trustee's request for information regarding the alleged

22  Secured Claim.  The Plan Proponents believe that such claims have either been fully satisfied or are

23  otherwise avoidable. All such holders of Secured Claims will be served with the Plan and

24  Disclosure Statement.

25  　　　　Certain Holders of Secured Claims purport to relate to one or more alleged Purchase and Sale

26  Agreements, pursuant to which the Holders of such Secured Claims may assert an ownership interest

27  in certain consumer client files, accounts receivable, and/or revenue streams.  The Plan preserves the

28

DISCLOSURE STATEMENT DESCRIBING FIRST AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION
159188907.1

rights of any Holders of Secured Claims to assert an ownership interest in such client files, accounts

receivable, and/or revenue streams, subject to the Ownership Challenge Deadline, and the Estate's

and Liquidating Trust's rights to object to or otherwise challenge any such alleged ownership

interests.

| Class | Description[10] | Impairment | Treatment |
|---|---|---|---|
| 1A | Secured Claim of Bridge Funding Cap LLC dba Fundura ("Fundura"), as set forth in Proof of Claim No. 335-1 filed on October 16, 2023.<br><br>Alleged Collateral: All assets (UCC-1)<br><br>Total asserted amount of secured claim: $2,374,004.82 | Impaired; Entitled to Vote | Unless the Holder of an Allowed Class 1A Claim agrees to less favorable treatment, the Holder of an Allowed Class 1A Claim will receive the following treatment, at the Plan Proponents' election:<br><br>(i) the collateral securing the Class 1A Claim; or<br><br>(ii) payment of the Allowed amount of the Class 1A Claim, plus interest at the lesser of the contract rate and 8%.<br><br>The Holder of an Allowed Class 1A Claim will be entitled to the foregoing treatment ten days after the date on which all of the following are satisfied: (a) there are sufficient funds in the Estate or Liquidating Trust to satisfy such Allowed Class 1A Claim; and (b) the later of (1) the Effective Date, or (2) the date an order Allowing any such Class 1A Claim becomes a Final Order. |
| 1B | Secured Claim of Azzure Capital, LLC ("Azzure") as set forth in Proof of Claim No. 127-1, filed July 24, 2023<br><br>Alleged Collateral: Personal property described more fully in Claim No. 127-1<br><br>Total asserted amount of secured claim: $5,000,000 | Impaired; Entitled to Vote | Unless the Holder of an Allowed Class 1B Claim agrees to less favorable treatment, the Holder of an Allowed Class 1B Claim will receive the following treatment, at the Plan Proponents' election:<br><br>(i) the collateral securing the Class 1B Claim; or<br><br>(ii) payment of the Allowed |

[10] The collateral description and alleged amounts of the Secured Claims set forth herein are neither intended to be, nor shall be construed as, an admission by the Plan Proponents regarding the amount, validity, priority, perfection, or extent of any such Claim or Lien.

35

| Class | Description[10] | Impairment | Treatment |
|---|---|---|---|
| | | | amount of the Class 1B Claim, plus interest at the lesser of the contract rate and 8%.

The Holder of an Allowed Class 1B Claim will be entitled to the foregoing treatment ten days after the date on which all of the following are satisfied: (a) there are sufficient funds in the Estate or Liquidating Trust to satisfy such Allowed Class 1B Claim; and (b) the later of (1) the Effective Date, or (2) the date an order Allowing any such Class 1B Claim becomes a Final Order. |
| 1C | Diverse Capital LLC ("Diverse"), as set forth in:<br>-        UCC No. U210085288536, filed September 15, 2021<br>-        UCC No. U210106788229, filed December 1, 2021<br><br>Alleged Collateral: *See* descriptions provided in UCCs noted above<br><br>Total estimated amount of secured claim: $0.00 | Impaired; Entitled to Vote | Unless the Holder of an Allowed Class 1C Claim agrees to less favorable treatment, the Holder of an Allowed Class 1C Claim will receive the following treatment, at the Plan Proponents' election:<br><br>  (i) the collateral securing the Class 1C Claim; or<br><br>  (ii) payment of the Allowed amount of the Class 1C Claim, plus interest at the lesser of the contract rate and 8%.<br><br>The Holder of an Allowed Class 1C Claim will be entitled to the foregoing treatment ten days after the date on which all of the following are satisfied: (a) there are sufficient funds in the Estate or Liquidating Trust to satisfy such Allowed Class 1C Claim; and (b) the later of (1) the Effective Date, or (2) the date an order Allowing any such Class 1C Claim becomes a Final Order. |
| 1D | OHP-CDR, LP f/k/a OHP-LPG, LP ("OHP"), as set forth in Proof of Claim No. 44-1, filed May 24, 2023<br><br>Alleged Collateral: All personal property described more fully in Claim No. 44-1<br><br>Total asserted amount of secured claim: $16,538,954 | Impaired; Entitled to Vote | Unless the Holder of an Allowed Class 1D Claim agrees to less favorable treatment, the Holder of an Allowed Class 1D Claim will receive the following treatment, at the Plan Proponents' election:<br><br>  (i) the collateral securing the Class 1D Claim; or<br><br>  (ii) payment of the Allowed |

36

| Class | Description[10] | Impairment | Treatment |
|-------|-----------------|------------|-----------|
| | | | amount of the Class 1D Claim, plus interest at the lesser of the contract rate and 8%. |
| | | | The Holder of an Allowed Class 1D Claim will be entitled to the foregoing treatment ten days after the date on which all of the following are satisfied: (a) there are sufficient funds in the Estate or Liquidating Trust to satisfy such Allowed Class 1D Claim; and (b) the later of (1) the Effective Date, or (2) the date an order Allowing any such Class 1D Claim becomes a Final Order. |
| 1E | PECC Corp. ("PECC"), as set forth in Proof of Claim No. 740-1, filed September 14, 2023<br><br>Alleged Collateral: LPG Accounts Receivables Sold<br><br>Total asserted amount of secured claim: $28,329,336.59 | Impaired; Entitled to Vote | Unless the Holder of an Allowed Class 1E Claim agrees to less favorable treatment, the Holder of an Allowed Class 1E Claim will receive the following treatment, at the Plan Proponents' election:<br><br>  (i) the collateral securing the Class 1E Claim; or<br><br>  (ii) payment of the Allowed amount of the Class 1E Claim, plus interest at the lesser of the contract rate and 8%.<br><br>The Holder of an Allowed Class 1E Claim will be entitled to the foregoing treatment ten days after the date on which all of the following are satisfied: (a) there are sufficient funds in the Estate or Liquidating Trust to satisfy such Allowed Class 1E Claim; and (b) the later of (1) the Effective Date, or (2) the date an order Allowing any such Class 1E Claim becomes a Final Order. |
| 1F | Other Secured Claims<br><br>Alleged Collateral: Unknown<br><br>Total estimated amount of secured claims: $0.00 | Impaired; Entitled to Vote | Unless the Holder of an Allowed Class 1F Claim agrees to less favorable treatment, the Holder of an Allowed Class 1F Claim will receive the following treatment, at the Plan Proponents' election:<br><br>  (i) the collateral securing the Class 1F Claim; or<br><br>  (ii) payment of the Allowed |

37

| Class | Description[10] | Impairment | Treatment |
|-------|-----------------|------------|-----------|
| | | | amount of the Class 1F Claim, plus interest at the lesser of the contract rate and 8%.

The Holder of an Allowed Class 1F Claim will be entitled to the foregoing treatment ten days after the date on which all of the following are satisfied: (a) there are sufficient funds in the Estate or Liquidating Trust to satisfy such Allowed Class 1F Claim; and (b) the later of (1) the Effective Date, or (2) the date an order Allowing any such Class 1F Claim becomes a Final Order. |

**d.    Class 2 – Classes of Other Priority Claims**

Other Priority Claims are entitled to priority, under §§ 364(c) and 507(a)(4), (a)(5), and (a)(7) of the Bankruptcy Code, including the following:

- Super-Priority Loans: Section 364(c) of the Bankruptcy Code provides that certain loans may be afforded priority over any or all administrative expenses of the kind specified in §§ 503(b) and 507(b) of the Bankruptcy Code. In the Bankruptcy Case, the Court approved loans, two of which remain outstanding:

  ▪ The loan made by Resolution Ventures to the Estate, outstanding amount of $341,280, which includes a deduction of the amount of outstanding debt credited to fund the initial deposit by MLG under the Sale Order;

  ▪ The loan made by Liberty Acquisitions to the Estate, in the total amount of $594,362; and

  ▪ The loan made by Pan American to the Estate, in the total amount of $269,637.

- Wages/Commissions: Claims under § 507(a)(4) of the Bankruptcy Code include unsecured claims for wages, salaries, or commissions (up to $15,150) earned within 180 days before the Petition Date or when the Debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).

DISCLOSURE STATEMENT DESCRIBING FIRST AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION
159188907.1

1   - <u>Contributions to Employee Benefit Plan</u>: Claims under § 507(a)(5) of the Bankruptcy

2   Code include unsecured claims for contributions to an employee benefit plan arising

3   from services rendered within 180 days before the Petition Date or when the Debtor's

4   business ends, whichever is earlier. But claims for wages under (a)(4) are paid first

5   (up to $15,150); then claims under (a)(5) for contributions to employee benefit plans

6   can be recovered next, up to the remainder of the $15,150 ceiling.

7   - <u>Deposits</u>: Claims under § 507(a)(7) of the Bankruptcy Code include unsecured claims

8   for amounts paid towards deposits for the purchase, lease, or rental of property or

9   services for personal, family, or household use up to $3,350 of deposits.

10   Trustee shall either reserve sufficient funds in the Estate to make the payments due to Class 2

11   claimants or the Liquidating Trust shall be liable to make such payments as they become due if

12   Trustee funds all estate assets into the Trust.

| **Class** | **Description** | **Impairment** | **Treatment** |
|---|---|---|---|
| 2A | Super-priority loans owed to Liberty Acquisitions and PanAmerican | Unimpaired; Deemed to Accept and Not Entitled to Vote | Unless the Holder of an Allowed Class 2A Claim agrees to less favorable treatment, the Holder of an Allowed Class 2A Claim will receive payment of such Allowed Class 2A Claim, pursuant to the terms of the court-approved financing on or before the Effective Date. *See* Dk. Nos. 413, 414, and 415. |
| 2B | Wage, Salary, Commission Claims<br><br>Total estimated amount: $0.00 | Impaired; Entitled to Vote | Unless the Holder of an Allowed Class 2B Claim agrees to less favorable treatment, the Holder of an Allowed Class 2B Claim will receive:<br><br>(i) if Class 2B has accepted the Plan, then, at the Plan Proponent's election, either (a) payment in full of the Allowed amount of the Class 2B Claim, or (b) deferred Cash payments of a value, as of the Effective Date, equal to the Allowed amount of such Class 2B Claim; or<br><br>(ii) if Class 2B has not accepted the Plan, payment in full of the Allowed amount of the Class 2B Claim.<br><br>The Holder of an Allowed Class 2B Claim will be entitled to the foregoing treatment ten days after the later of (a) the Effective Date, or (b) the date an order Allowing any such Class 2B Claim becomes a Final Order. |

39

| Class | Description | Impairment | Treatment |
|---|---|---|---|
| 2C | Contributions to Employee Benefit Plan<br><br>Total estimated amount: $0.00 | Impaired; Entitled to Vote | Unless the Holder of an Allowed Class 2C Claim agrees to less favorable treatment, the Holder of an Allowed Class 2C Claim will receive:<br><br>(i) if Class 2C has accepted the Plan, then, at the Plan Proponent's election, either (a) payment in full of the Allowed amount of the Class 2C Claim, or (b) deferred Cash payments of a value, as of the Effective Date, equal to the Allowed amount of such Class 2C Claim; or<br><br>(ii) if Class 2C has not accepted the Plan, payment in full of the Allowed amount of the Class 2C Claim.<br><br>The Holder of an Allowed Class 2C Claim will be entitled to the foregoing treatment ten days after the later of (a) the Effective Date, or (b) the date an order Allowing any such Class 2C Claim becomes a Final Order. |
| 2D | Deposits<br><br>Total estimated amount: $0.00 | Impaired; Entitled to Vote | Unless the Holder of an Allowed Class 2D Claim agrees to less favorable treatment, the Holder of an Allowed Class 2D Claim will receive:<br><br>(i) if Class 2D has accepted the Plan, then, at the Plan Proponent's election, either (a) payment in full of the Allowed amount of the Class 2D Claim, or (b) deferred Cash payments of a value, as of the Effective Date, equal to the Allowed amount of such Class 2D Claim; or<br><br>(ii) if Class 2D has not accepted the Plan, payment in full of the Allowed amount of the Class 2D Claim.<br><br>The Holder of an Allowed Class 2D Claim will be entitled to the foregoing treatment ten days after the later of (a) the Effective Date, or (b) the date an order Allowing any such Class 2D Claim becomes a Final Order. |

e. **Class 3 – Classes of General Unsecured Claims**

General Unsecured Claims are not entitled to priority under § 507(a) of the Bankruptcy Code. The following charts identify the Plan's treatment of the classes containing the General Unsecured Claims.

While there may be a recovery for Holders of Allowed General Unsecured Claims, it is not possible at this time to estimate the ultimate recovery for such Holders based, in part, on the extent

40

1 to which asserted Secured Claims are ultimately Allowed, the extent to which any asserted Other

2 Priority Claims and General Unsecured Claims are Disallowed and/or subordinated, and the extent

3 of recoveries from Causes of Action.

| Class | Description | Impairment | Treatment |
|-------|-------------|------------|-----------|
| 3A | **General Unsecured Claims**<br><br>This Class is comprised of all Holders of General Unsecured Claims. | Impaired; Entitled to Vote | Unless the Holder of an Allowed Class 3A Claim agrees to less favorable treatment, the Holder of an Allowed Class 3A Claim will receive on the Effective Date a Trust Beneficial Interest in the amount of such Allowed Class 3A Claim and become a Trust Beneficiary in full and final satisfaction of its Allowed Class 3A Claim. |
| 3B | **Consumer Client Convenience Class**<br><br>This Class is comprised of any former client of the Debtor that is the Holder of a properly Filed and supported General Unsecured Claim otherwise treatable under Class 3A of the Plan that elects treatment as a member of Class 3B in lieu of treatment in Class 3A. | Impaired; Entitled to Vote | Unless the Holder of an Allowed Class 3B Claim agrees to less favorable treatment, the Holder of an Allowed Class 3B Claim that elects to treatment in Class 3B will receive on the Effective Date a Trust Beneficial Interest equal to ~~the lesser of (i) one monthly payment made by such Holder to the Debtor; or (2) $1,000.~~ 30% of the amounts, reflected in the Debtor's books and records, that were paid to and received by the Debtor from such former client. ***Electing treatment in Class 3B and accepting an Allowed Class3B Claim does not entitle such Holder to payment in full of such Class 3B Claim, which will be paid Pro Rata with all Allowed Class 3A and Class 3B Claims.*** Such Holder of an Allowed Class 3B Claim will become a Trust Benficiary in full and final satisfaction of its Allowed Class 3B Claim.<br><br>A Holder's affirmative election to participate in Class 3B will be deemed a vote in favor of the Plan.<br><br>Holders of Class 3B Claims will be deemed to have expressly waived any other General Unsecured Claim in excess of the Allowed amount of such Holder's Class 3B Claim. Moreover, such Holder of an Allowed ~~General Unsecured~~ Class 3B Claim expressly waives all claims, rights, and defenses that would otherwise exist against |

DISCLOSURE STATEMENT DESCRIBING FIRST AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION
159188907.1

| | | | the Estate.  In exchange for the foregoing waiver and release, the Estate and Liquidating Trust will expressly waive any objection to a Class 3B Claim except for objections based on failure to timely file such Claim ~~or failure to provide adequate documentation or support for such Claim.~~ |

**f.    Class 4 – Subordinated Claims**

| Class | Description | Impairment | Treatment |
|---|---|---|---|
| 4 | All claims that are Subordinated Claims | Impaired; Deemed to Reject and Not Entitled to Vote | Allowed Subordinated Claims, if any, shall be canceled, released, and extinguished as of the Effective Date, and will be of no further force or effect.  Holders of Allowed Subordinated Claims, if any, will not receive any distribution on account of such Allowed Subordinated Claims. |

Except as expressly provided herein, the allowance, classification, and treatment of all Allowed Claims and Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, § 510(b) of the Bankruptcy Code, or otherwise. Pursuant to § 510 of the Bankruptcy Code, the Plan Proponents and the Liquidating Trustee reserve the right to reclassify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

**g.    Class 5 - Interests**

| Class | Description | Impairment | Treatment |
|---|---|---|---|
| 5 | All Interests in the Debtor | Impaired; Deemed to Reject and Not Entitled to Vote | Allowed Interests, if any, shall be canceled, released, and extinguished as of the Effective Date, and will be of no further force or effect.  Holders of Allowed Interests, if any, will not receive any distribution on account of such Allowed Interests. |

**h.    Special Provisions Governing Unimpaired Claims**

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Estate's rights in respect of any Claims that are Unimpaired, including all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Claims that are Unimpaired.  Unless otherwise

42

Allowed, Claims that are Unimpaired shall remain Disputed Claims under the Plan.

### i.    Confirmation Pursuant to §§ 1129(a)(10) and 1129(b) of the Bankruptcy Code

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of confirmation by acceptance of the Plan by at least one Impaired Class of Claims. The Plan Proponents shall seek Confirmation of the Plan pursuant to § 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests. The Plan Proponents reserve the right to modify the Plan in accordance with the terms of the Plan to the extent, if any, that confirmation, pursuant to § 1129(b) of the Bankruptcy Code, requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

### j.    Elimination of Vacant Classes; Presumed Acceptance by Non-Voting Classes

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest, or a Claim or Interest temporarily Allowed by the Bankruptcy Court in an amount greater than zero as of the date of the Confirmation Hearing, shall be considered vacant and deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class, pursuant to § 1129(a)(8) of the Bankruptcy Code.

If a Class contains Claims or Interests eligible to vote and no Holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Holders of such Claims or Interests in such Class shall be presumed to have accepted the Plan.

## B.    Means of Effectuating the Plan

### 1.    Post-Effective Date Management and Dissolution of the Debtor

The Debtor shall be dissolved, under applicable non-bankruptcy law, on the Effective Date or as soon thereafter as is practicable to accomplish the purposes of the Plan. The Debtor's interests and rights shall be vested, for all purposes, in the Liquidating Trust.

On the Effective Date, the authority, power, and incumbency of the persons acting as directors and officers of the Debtor shall be deemed to have been resigned, solely in their capacities as such, and the Liquidating Trustee shall be appointed as the sole manager and sole officer of the Debtor and shall succeed to the powers of the Debtor's directors and officers.  From and after the Effective Date, the Liquidating Trustee shall be the sole representative of, and shall act for, the Debtor to the extent necessary to implement and effectuate the terms of the Plan.

The Debtor shall continue in existence solely for the following limited purposes: (i) making any Effective Date payments required under the Plan; (ii) transferring the Debtor's assets to the Liquidating Trust under the terms of the Plan; and (iii) taking all steps to execute all instruments and documents necessary to effectuate the Plan.

**2.    The Liquidating Trust**

**a.    Execution of the Liquidating Trust Agreement**

Upon entry of a Confirmation Order, a Liquidating Trust Agreement in a form approved by the Bankruptcy Court shall be executed, and all other necessary steps shall be taken to establish the liquidating trust (the "Liquidating Trust") and the Trust Beneficial Interests therein, which shall be for the benefit of all creditors entitled to Trust Beneficial Interests under the Plan.

**b.    Purposes of the Liquidating Trust**

The Liquidating Trust shall be established and maintained for the purpose set forth in the Liquidating Trust Agreement, including for the purpose of collecting, distributing, and liquidating all of the funds and property assigned to the Liquidating Trust and pursuing claims and Causes of Action assigned to the Liquidating Trust under the Plan for the benefit of the creditors entitled to receive distributions under the Plan from the Liquidating Trust in accordance with the terms of the Liquidating Trust Agreement and the Plan. The Liquidating Trust shall have no objective or authority to continue or to engage in the conduct of any trade or business.

**c.    Transfer of Property to the Liquidating Trust**

**i.    Liquidating Trust Assets**

On the Effective Date, all right, title, and interest of the Debtor and the Estate in property and

1  assets of any kind, other than Effective Date distributions to Holders of Allowed Claims entitled to

2  payment on the Effective Date under the terms of the Plan, shall be deemed irrevocably transferred,

3  absolutely assigned, conveyed, set over and delivered to the Liquidating Trust, in trust to, and in trust

4  for, the benefit of the Trust Beneficiaries for the uses and purposes stated herein and in the Liquidating

5  Trust Agreement, free and clear of any and all liens, claims, encumbrances and interests (legal,

6  beneficial or otherwise) of all other entities to the maximum extent contemplated by and permissible

7  under § 1141(c) of the Bankruptcy Code, except as set forth in the Plan Confirmation Order or the

8  Plan. To the extent that certain assets of the Debtor or the Estate (and its right, title and interest in

9  such assets), because of their nature or because they will accrue subsequent to the Effective Date,

10  cannot be irrevocably transferred, absolutely assigned, conveyed, set over or delivered to the

11  Liquidating Trust on the Effective Date, such assets shall be deemed assigned, set over, transferred

12  and conveyed to the Liquidating Trust as soon as practicable after the Effective Date. The Liquidating

13  Trustee is hereby granted the Power of Attorney to execute documents on behalf of the Debtor, as

14  reasonably determined by the Liquidating Trustee (in recordable form where necessary or

15  appropriate) to vest or perfect in or confirm to the Liquidating Trustee title to and possession of the

16  Liquidating Trust Assets. Without limitation, the Liquidating Trust Assets shall include all Cash and

17  Causes of Action of the Estate, less: (i) Effective Date payments to Holders of (a) Allowed

18  Administrative Claims, (b) Allowed Priority Claims. and (c) Allowed Class 1 Secured Claims; and

19  (ii) any funds attributable to a creditor or party in interest that makes a timely challenge by the Fund

20  Challenge Deadline (defined below) concerning the characterization of Post-Petition Funds. Pursuant

21  to the Liquidating Trust Agreement, the Liquidating Trust will take title to such property subject to

22  certain specified claims including alleged or disputed Secured Claims. In other words, some of the

23  funds transferred to the Liquidating Trust may be used to pay Holders of Claims that are not Trust

24  Beneficiaries.

25          ii.     **Fund Challenge Deadline**

26          It is Trustee's belief that the Post-Petition Funds have been or will be earned and are such

27  property of the Estate for purposes of 11 U.S.C. § 541, and are not property held in trust for third

28

DISCLOSURE STATEMENT DESCRIBING FIRST AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION
159188907.1

1  parties. If any party wishes to dispute the characterization of the Post-Petition Funds as property of

2  the Estate and/or use of the Funds to fund Plan payments, such parties-in-interest must commence an

3  adversary proceeding no later than ~~_____,~~ June 19, 2024 (**"Fund Challenge Deadline"). The**

4  **Post-Petition Funds attributable to any creditor or party in interest shall be deemed property**

5  **of the Estate in accordance with the Plan without further order of the Court if such creditor or**

6  **party in interest does not commence an adversary proceeding disputing the characterization of**

7  **such Post-Petition Funds by the Fund Challenge Deadline.**

8     **iii.**    <u>**Ownership Challenge Deadline**</u>

9    Certain parties claim an ownership interest in client files, receivables, or other property or

10  assets sold, pursuant to the Sale Order, and that such property or receivables do not constitute property

11  of the Estate for purposes of 11 U.S.C. § 541. If any party wishes to assert an ownership interest in

12  any Liquidating Trust Assets, such parties-in-interest must commence an adversary proceeding no

13  later than ~~_____,~~ June 19, 2024 (**"**<u>**Ownership Challenge Deadline**</u>**"). Parties in interest that**

14  **do not commence an adversary proceeding by the Ownership Challenge Deadline shall be**

15  **barred from, and deemed to have waived and forfeited, any ownership or similar claim in the**

16  **Liquidating Trust Assets without further order of the Court.**

17     **iv.**    <u>**Transfer Subject to Allowed Secured Claims and Valid, Perfected**</u>

18         <u>**Liens.**</u>

19    Notwithstanding the transfer of Liquidating Trust Assets to the Liquidating Trust, such

20  transfer shall be subject to any valid, properly perfected Liens of Holders of Allowed Class 1 Secured

21  Claims and the provisions of the Plan concerning distributions to Holders of Allowed Secured Claims.

22     **v.**    <u>**Transfer Subject to Payments Required by Plan.**</u>

23    Should the Liquidating Trust receive assets prior to satisfaction of all claims required to be

24  paid by the Plan, it shall be liable for and the Liquidating Trustee shall be authorized to make such

25  payments (e.g. Class 2 tax payments) from the Trust.

26     **vi.**    <u>**Substitution in Litigation**</u>

27    On or after the Effective Date, the Liquidating Trustee, in the capacity as representative of the

28

DISCLOSURE STATEMENT DESCRIBING FIRST AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION
159188907.1

Liquidating Trust, shall continue as a plaintiff in all Litigation or Causes of Action (on behalf of beneficiaries of the Liquidating Trust) in which the Debtor, Trustee on behalf of the Estate, or the Committee as the assignee of the Debtor, were plaintiff prior to the Effective Date. On the Effective Date, all claims and Causes of Action including those on the list of Potential Litigation Targets that belong to the Debtor and/or the Estate shall be deemed assigned to the Liquidating Trust for analysis by, and if appropriate pursuit by, the Liquidating Trustee. All recoveries and proceeds arising from litigation and Causes of Action shall be deemed assigned, set over, transferred, and conveyed to the Liquidating Trust upon receipt thereof. All fees and costs of the Liquidating Trust (and agents thereof) arising from or relating to pursuing litigation or Causes of Action or other services performed at the request of the Liquidating Trustee on behalf of the Liquidating Trust shall be paid in accordance with the Liquidating Trust Agreement. On and after the Effective Date the Liquidating Trustee shall be duly authorized to pursue, or to continue to pursue Causes of Action transferred to the Liquidating Trust. Subject to the terms of the Liquidating Trust Agreement, the Liquidating Trustee shall have full power and authority to settle, adjust, retain, enforce, or abandon the Causes of Action transferred to the Liquidating Trust, regardless of whether the pursuit of such claims was commenced prior or subsequent to the Effective Date.

### d.    Securities Exempt

Under § 1145 of the Bankruptcy Code, the issuance of Trust Beneficial Interests to Trust Beneficiaries, to the extent such Trust Beneficial Interests are deemed to be "securities," shall be exempt from registration under the Securities Act, as amended, and all applicable state and local laws requiring registration of securities. If the Liquidating Trustee determines, with the advice of counsel, that the Liquidating Trust is required to comply with the registration and reporting requirements of the Securities and Exchange Act of 1934, as amended, or the Investment Company Act of 1940, as amended, then the Liquidating Trustee shall take any and all actions to comply with such reporting requirements and file necessary periodic reports with the Securities and Exchange Commission.

### e.    Establishment of Post-Confirmation Oversight Committee

Prior to the Effective Date, a committee shall be appointed to serve as the Post-Confirmation

Oversight Committee pursuant to the terms of an agreement to be set forth in the Plan Supplement ("Post-Confirmation Oversight Committee Bylaws"). Members of the Post-Confirmation Oversight Committee shall have the duties and oversight responsibilities set forth in the Liquidating Trust Agreement and in the Plan.

**f.    Governance of Liquidating Trust**

The Liquidating Trust shall be governed by the Liquidating Trustee, subject to the oversight of the Post-Confirmation Oversight Committee, in accordance with the Liquidating Trust Agreement and consistent with the Plan.

**g.    Designation of Liquidating Trustee**

Richard A. Marshack, or any successor appointed pursuant to the terms of the Liquidating Trust Agreement ("Liquidating Trustee"), shall serve as the Liquidating Trustee, subject to the provisions of the Liquidating Trust Agreement. The Liquidating Trustee shall retain and have all the rights, powers, and duties necessary to carry out his or her responsibilities under the Plan and the Liquidating Trust Agreement, and as otherwise provided in the Confirmation Order. The duties, obligations, and responsibilities of the Liquidating Trustee shall be as set forth in the Liquidating Trust Agreement. The Liquidating Trustee's responsibilities, duties and obligations are solely to the Trust Beneficiaries. The Liquidating Trustee shall have an independent right and standing to request relief from the Bankruptcy Court that the Liquidating Trustee believes to be in accordance with the best interests of the Trust Beneficiaries. The Liquidating Trustee and Post-Confirmation Oversight Committee shall each be deemed to be a "party in interest" within the meaning of § 1109(b) of the Bankruptcy Code and a representative of the Estate under Bankruptcy Code §§ 1123(b)(3) and 1129(a)(5).

**h.    Rights, Powers, and Privileges of the Liquidating Trustee**

The Liquidating Trustee shall have all of the rights, powers, and privileges of a chapter 11 trustee and as expressly provided in the Plan and the Liquidating Trust Agreement. The Liquidating Trustee shall have the power to take the actions granted in the Liquidating Trust Agreement and any powers reasonably incidental thereto that the Liquidating Trustee, in his reasonable discretion, deems

48

1  necessary or appropriate to fulfill the purpose of the Liquidating Trust, unless otherwise specifically
2  limited or restricted by the Plan or the Liquidating Trust Agreement. The Liquidating Trustee shall
3  be compensated in accordance with the Liquidating Trust Agreement.

4        **i.**    **Agents and Professionals**

5      Subject to the provisions of the Liquidating Trust Agreement, the Liquidating Trustee shall
6  consult with and retain attorneys, accountants, appraisers, or other parties deemed by the Liquidating
7  Trustee to have qualifications necessary to assist in the proper administration of the Liquidating Trust.
8  The Liquidating Trustee may pay the reasonable salaries, fees, and expenses of such persons,
9  including contingency fees, out of the Liquidating Trust Assets in the ordinary course to the extent
10 permitted in the Liquidating Trust Agreement.

11       **j.**    **Investment and Safekeeping of Liquidating Trust Assets**

12     All monies and other Liquidating Trust Assets received by the Liquidating Trustee shall, until
13 distributed or paid over as provided in the Liquidating Trust Agreement and the Plan, be held in the
14 Liquidating Trust for the benefit of the Trust Beneficiaries, but need not be segregated from other
15 Liquidating Trust Assets, unless and to the extent required by law or the Plan. The Liquidating Trustee
16 shall be under no liability for interest or producing income on any moneys received by the Liquidating
17 Trust and held for distribution or payment to the beneficiaries of the Liquidating Trust, except as such
18 interest shall actually be received by the Liquidating Trustee. Investments of any moneys held by the
19 Liquidating Trustee shall be administered in view of the manner in which individuals of ordinary
20 prudence, discretion and judgment would act in the management of their own affairs. For the removal
21 of doubt, the investment powers of the Liquidating Trustee, other than those reasonably necessary to
22 maintain the value of the Liquidating Trust Assets and to further the liquidating purpose of the
23 Liquidating Trust, are limited to powers to invest in demand and time deposits, such as short-term
24 certificates of deposits, in banks or other savings institutions, or other temporary, liquid investments,
25 such as treasury bills.

26       **k.**    **Limitations on Liquidating Trustee and Payment of Fees**

27     The Liquidating Trustee shall not at any time, on behalf of the Liquidating Trust or

28

DISCLOSURE STATEMENT DESCRIBING FIRST AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION
159188907.1

1 beneficiaries of the Liquidating Trust: (i) enter into or engage in any trade or business, and no part of

2 the Liquidating Trust Assets or the proceeds, revenue or income therefrom shall be used or disposed

3 of by the Liquidating Trust in furtherance of any trade or business, or (ii) except as provided in the

4 Liquidating Trust Agreement, reinvest any Liquidating Trust Assets. The Liquidating Trustee may

5 invest funds held in the Liquidating Trust consistent with the requirements of the Liquidating Trust

6 Agreement and the prudent person standard of care, provided that the Liquidating Trustee shall have

7 no liability in the event of insolvency of any financial institution in which he/she has invested any

8 funds of the Liquidating Trust to the extent such institution is on the list of approved depositories by

9 the United States Trustee. The Liquidating Trustee shall hold, collect, conserve, protect and

10 administer the Liquidating Trust in accordance with the provisions of the Liquidating Agreement and

11 the Plan, and pay and distribute amounts as set forth herein for the purposes set forth in the

12 Liquidating Trust Agreement.

13          **l.**      **Bankruptcy Court Approval of Liquidating Trustee Actions**

14          Except as provided in the Plan or otherwise specified in the Liquidating Trust Agreement, the

15 Liquidating Trustee need not obtain the approval of the Bankruptcy Court in the exercise of any

16 power, rights, or discretion conferred hereunder or account to the Bankruptcy Court. Subject to the

17 terms of the Liquidating Trust Agreement, the Liquidating Trustee shall have the right to submit to

18 the Bankruptcy Court any question or questions regarding which the Liquidating Trustee may desire

19 to have explicit direction and/or approval of the Bankruptcy Court with respect to the Liquidating

20 Trust Assets, the Liquidating Trust, the Liquidating Trust Agreement, the Plan, or the Debtor. Subject

21 to the terms of the Liquidating Trust Agreement, the Liquidating Trustee also shall have the authority,

22 but not the obligation, to seek Bankruptcy Court approval to sell any Liquidating Trust Assets free

23 and clear of any and all liens, claims and encumbrances.

24          **m.**      **Valuation of Liquidating Trust Assets**

25          The Liquidating Trustee shall make best efforts to understand and apprise the Trust

26 Beneficiaries of the fair market value of the Liquidating Trust Assets upon request. The valuation

27 shall be used consistently by all parties (including the Liquidating Trustee and the Trust Beneficiaries)

28

for all federal income tax purposes. Any dispute regarding the valuation of Liquidating Trust Assets shall be resolved by the Bankruptcy Court.

**n.    Distributions**

The Liquidating Trustee shall serve as the Disbursing Agent with the power, subject to the terms of the Liquidating Trust Agreement, to: (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in a disbursing agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Liquidating Trustee to be necessary and proper to implement the provisions hereof. In his capacity as a disbursing agent, the Liquidating Trustee shall distribute at least annually to the Trust Beneficiaries (in the order set forth in the Plan) all net cash income plus all net cash proceeds from the liquidation of Liquidating Trust Assets; provided, however, that the Liquidating Trustee shall maintain at all times adequate cash or marketable securities as reserves, as may be reasonably necessary to maintain the value of the Liquidating Trust Assets, satisfy projected expenses and meet claims and contingent liabilities of the Liquidating Trust. The Liquidating Trustee may request the Bankruptcy Court resolve any dispute or to rule upon any inquiry regarding the adequacy of reserves.

**o.    Record Date for Distributions**

On the Distribution Record Date, the Claims Register shall be closed and any party responsible for making distributions shall instead be authorized and entitled to recognize only those record holders listed on the Claims Register as of the close of business on the Distribution Record Date.

**p.    Pro Rata Share of Distributions**

Each of the Trust Beneficiaries shall receive its Pro Rata share of any and all distributions made by the Liquidating Trustee according to the priorities set forth in the Plan. The Liquidating Trustee may withhold from amounts distributable to any beneficiary of the Liquidating Trust any and all amounts, determined in the Liquidating Trustee's reasonable sole discretion to be required by any

51

law, regulation, rule, ruling, directive or other governmental requirement.

**q.    Delivery of Distributions**

All distributions to be made to the Trust Beneficiaries shall be made by the Liquidating Trustee in accordance with the terms of the Plan and Liquidating Trust Agreement.

**r.    Undelivered Property**

Any Trust Beneficiary that fails to claim any Cash within the time specified in the Liquidating Trust Agreement shall forfeit all rights to any distribution under the Plan, and shall not be subject to the unclaimed property or escheat laws of any Governmental Unit. Upon forfeiture, such Cash (including interest thereon) shall be made available for re-distribution to all other Trust Beneficiaries in accordance with the Liquidating Trust Agreement. Trust Beneficiaries who fail to claim Cash shall have no claim whatsoever against the Liquidating Trust or the Liquidating Trustee, as applicable, or any of the other Trust Beneficiaries to whom distributions are made under the Plan on account of such distributions; provided, however, that the Liquidating Trustee may, but is not required to, undertake reasonable efforts, in his business judgment, to locate Trust Beneficiaries whose distributions are returned as undeliverable or whose checks are not timely cashed.

**s.    De Minimis Distributions**

Treatment of de minimis distributions shall be in accordance with the Liquidating Trust Agreement.

**t.    Payments Limited to Liquidating Trust Assets**

All distributions to be made from the Liquidating Trust to or for the benefit of any Trust Beneficiary shall be made only to the extent that the Liquidating Trustee has sufficient reserves to make such payments in accordance with the Liquidating Trust Agreement and the Plan. Each Trust Beneficiary shall have recourse only to the Liquidating Trust Assets for distribution under the Liquidating Trust Agreement and the Plan.

**u.    Fees and Expenses**

Subject to the limitations set forth in the Liquidating Trust Agreement and in the Plan, the Liquidating Trustee shall pay and/or reserve for the operating and administrative expenses of the

1 Liquidating Trust before approving distributions to or for the benefit of the Trust Beneficiaries. The
2 Liquidating Trustee shall satisfy any fees and expenses of the Liquidating Trust with Liquidating
3 Trust Assets.

4       **v.**    **Priority of Distribution**

5     Any unencumbered recovery by the Liquidating Trust on account of the Liquidating Trust
6 Assets shall be applied in the following order, after making or determining whether reserves should
7 be set aside for any remaining payments required to be made by the Plan:

8     a.    *First*, to pay and/or reserve for any unpaid or reasonably anticipated costs and
9 expenses of the Liquidating Trust in accordance with the Liquidating Trust Agreement, including,
10 without limitation, reasonable professional fees and expenses and court costs; and

11     b.    *Second*, distributed to Trust Beneficiaries in accordance with the Liquidating Trust
12 Agreement and the Plan.

13       **w.**    **Compliance with Laws**

14     Any and all distributions of Liquidating Trust Assets shall be in compliance with applicable
15 laws, including, but not limited to, applicable federal and state securities laws.

16       **x.**    **Identification of Beneficiaries of the Liquidating Trust**

17     Each of the Trust Beneficiaries shall be recorded and set forth in a schedule ("Beneficiary
18 Schedule") maintained by the Liquidating Trustee and based upon the information contained in the
19 Claims Register in accordance with the terms of the Liquidating Trust Agreement.

20       **y.**    **Beneficial Interest Only**

21     The ownership of a Trust Beneficial Interest, shall not entitle any Trust Beneficiary, or other
22 party, to title in or to the Liquidating Trust Assets or to any right to call for a partition or division of
23 such Liquidating Trust Assets or to require an accounting, except as specifically provided in the
24 Liquidating Trust Agreement. Without limiting the generality of the foregoing, the Post-Petition
25 Funds shall be deemed property of the Estate upon expiration of the Fund Challenge Deadline if no
26 challenges are timely made. If any party in interest timely asserts an interest in the Post-Petition Funds
27 by the Fund Challenge Deadline, the Bankruptcy Court shall decide whether such party holds an

28

DISCLOSURE STATEMENT DESCRIBING FIRST AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION
159188907.1

interest in the Post-Petition Funds.

**z.**    **Ownership of Beneficial Interests**

Subject to the requirements and limitations of the Liquidating Trust Agreement, each Trust Beneficiary shall own a Trust Beneficial Interest equal in amount and priority to such Trust Beneficiary's Allowed Claim as set forth in the Plan; provided, however, that distributions on account of such Trust Beneficial Interests may be made on a Pro Rata basis with other Trust Beneficiaries of the same priority as set forth in the Plan.

**aa.**    **Evidence of Beneficial Interests**

Ownership of a Trust Beneficial Interest shall not be evidenced by any certificate, Security, or receipt or in any other form or manner whatsoever, except as maintained on the books and records of the Liquidating Trust by the Liquidating Trustee.

**bb.**    **Conflicting Claims**

If any conflicting claims or demands are made or asserted with respect to a Trust Beneficial Interest, the Liquidating Trustee shall be entitled, at his sole election, to refuse to comply with any such conflicting claims or demands. In so refusing, and subject to any obligations set forth in the Liquidating Trust Agreement, the Liquidating Trustee may elect to make no payment or distribution with respect to the Trust Beneficial Interest represented by the claims or demands involved, or any part thereof, and the Liquidating Trustee shall refer such conflicting claims or demands to the Bankruptcy Court, which shall have exclusive jurisdiction over resolution of such conflicting claims or demands. In so doing, the Liquidating Trustee shall not be or become liable to any party for his refusal to comply with any of such conflicting claims or demands. The Liquidating Trustee shall be entitled to refuse to act until either (a) the rights of the adverse claimants have been adjudicated by a final order or (b) all differences have been resolved by a written agreement among all of such parties and the Liquidating Trustee, which agreement shall include a complete release of the Liquidating Trust and the Liquidating Trustee, his agents or his professionals (the occurrence of either (a) or (b) being referred to as a "Dispute Resolution" in this paragraph). Until a Dispute Resolution is reached with respect to such conflicting claims or demands, the Liquidating Trustee shall hold in a segregated

54

interest-bearing account with a United States financial institution any payments or distributions from the Liquidating Trust to be made with respect to the Trust Beneficial Interest at issue. Promptly after a Dispute Resolution is reached, the Liquidating Trustee shall transfer the payments and distributions, if any, held in the segregated account, together with any interest and income generated thereon, in accordance with the terms of such Dispute Resolution.

### cc.    Limitations on Transferability

Trust Beneficial Interests shall not be assignable, other than by operation of law.

### dd.    Parties Dealing with the Liquidating Trustee

In the absence of actual knowledge to the contrary, any person dealing with the Liquidating Trust or the Liquidating Trustee shall be entitled to rely on the authority of the Liquidating Trustee or any of the Liquidating Trustee's agents or professionals to act in connection with the Liquidating Trust Assets. No person or entity dealing with the Liquidating Trustee shall have any obligation to inquire into the validity, expediency, or propriety of any transaction by the Liquidating Trustee or any agent or professional of the Liquidating Trustee.

### ee.    Liquidating Trustee and Post-Confirmation Oversight Committee's Exculpation, Indemnification, Insurance and Liability Limitation

The Liquidating Trustee, Post-Confirmation Oversight Committee, and each of their respective agents, employees, professionals, attorneys, accountants, advisors and representatives retained by the Plan (collectively, "Liquidating Trust Indemnified Parties") shall be deemed exculpated and indemnified and held harmless in all respects by the Liquidating Trust and the Estate, to the fullest extent permitted by law, solely from the Liquidating Trust Assets for any losses, claims, damages, liabilities and expenses, including, without limitation, reasonable attorneys' fees, disbursements and related expenses that the Liquidating Trust Indemnified Parties may incur or to which the Liquidating Trust Indemnified Parties may become subject in connection with any action, suit, proceeding or investigation brought or threatened against one or more of the Liquidating Trust Indemnified Parties on account of the acts or omissions of an Liquidating Trust Indemnified Party solely in its capacity as such; provided, however, that the Liquidating Trust shall not be liable to

DISCLOSURE STATEMENT DESCRIBING FIRST AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION
159188907.1

1    indemnify any Liquidating Trust Indemnified Party for any act or omission constituting bad faith,

2    fraud or willful misconduct by such Liquidating Trust Indemnified Party. Notwithstanding any

3    provision herein to the contrary, the Liquidating Trust Indemnified Parties shall be entitled to obtain

4    advances from the Liquidating Trust to cover their reasonable expenses of defending themselves in

5    any action brought against them as a result of the acts or omissions, actual or alleged, of a Liquidating

6    Trust Indemnified Party in its capacity as such. The foregoing indemnity in respect of any Liquidating

7    Trust Indemnified Party shall survive the termination of such Liquidating Trust Indemnified Party

8    from the capacity for which it is indemnified.

9        The Liquidating Trustee may obtain, at the expense of the Liquidating Trust and Estate

10    commercially reasonable liability or other appropriate insurance with respect to the indemnification

11    obligations of the Liquidating Trust Indemnified Parties. On and after the Effective Date, the

12    Liquidating Trustee shall be authorized to purchase D&O Liability Insurance Policies for the benefit

13    of any Liquidating Trust Indemnified Party in the ordinary course of business.

14        **ff.    <u>Injunctions and Releases</u>**

15        The automatic stay is lifted upon the Effective Date as to property of the bankruptcy Estate

16    but such property will be transferred to the Liquidating Trust free and clear of liens, claims, and

17    interests except as otherwise provided in the Plan.  However, as of the Effective Date and subject to

18    the terms of the Plan, the Confirmation Order shall enjoin the prosecution, whether directly,

19    derivatively or otherwise, of any claim, obligation, suit, judgment, damage, demand, debt, right, cause

20    of action, liability or interest released, discharged, terminated, or otherwise treated pursuant to the

21    Plan.

22        Except as provided in the Plan or the Confirmation Order, as of the Effective Date, all entities

23    that have held, currently hold or may hold a Claim or other debt or liability that is provided for under

24    the Plan or an Interest or other right of a creditor or equity security holder that is extinguished,

25    pursuant to the terms of the Plan, are permanently enjoined from taking any of the following actions

26    against the Debtor, the Plan Proponents, the Liquidating Trust, the Liquidating Trustee, the Post-

27    Confirmation Oversight Committee, their property, and, except with respect to the Debtor, each of

28

DISCLOSURE STATEMENT DESCRIBING <span style="color:blue">FIRST AMENDED</span> JOINT CHAPTER 11 PLAN OF LIQUIDATION
159188907.1

1  their respective agents, employees, professionals, attorneys, accountants, advisors and

2  representatives, on account of any such discharged claims, debts or liabilities or extinguished interests

3  or rights: (i) commencing or continuing, in any manner or in any place, any action or other

4  proceeding; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award,

5  decree or order; (iii) creating, perfecting or enforcing any lien or encumbrance; (iv) asserting a setoff,

6  right of subrogation or recoupment of any kind against any debt, liability or obligation due to the

7  Debtor; and (v) commencing or continuing any action in any manner, in any place, that does not

8  comply with or is inconsistent with the provisions of the Plan.

9       By accepting distribution pursuant to the Plan, each Holder of an Allowed Claim receiving

10  distributions, pursuant to the Plan, will be deemed to have specifically consented to the injunctions

11  set forth in this Section, and the jurisdiction of the Bankruptcy Court.

12       **gg.    Terms of Service of the Liquidating Trustee**

13       The terms of service of the Liquidating Trustee, including the conditions of resignation and

14  removal, shall be as set forth in the Liquidating Trust Agreement.

15       **hh.    Appointment of Successor Liquidating Trustee**

16       The terms of the appointment of an interim or successor Liquidating Trustee, including their

17  respective rights and duties, shall be as set forth in the Liquidating Trust Agreement.

18       **ii.    Annual Reporting and Filing Requirements**

19       The Liquidating Trustee shall file tax returns for the Liquidating Trust as a grantor trust,

20  pursuant to § 1.671-4(a) of the Treasury Regulations and any other applicable laws or regulations,

21  and shall furnish information statements to Trust Beneficiaries setting forth their allocable share of

22  the income, loss, deduction or credit of the Liquidating Trust and instruct them to report such items

23  on their federal income tax returns. The Liquidating Trustee may withhold from amounts distributable

24  to any Trust Beneficiary any and all amounts, determined in the Liquidating Trustee's reasonable

25  sole discretion, to be required by any law, regulation, rule, ruling, directive or other governmental

26  requirement. The Liquidating Trustee shall have the right to employ an accountant and any other

27  professionals needed to assist the Liquidating Trustee for this purpose. The tax returns filed by the

28

DISCLOSURE STATEMENT DESCRIBING FIRST AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION
159188907.1

1   Liquidating Trustee shall report all Liquidating Trust earnings for the taxable year being reported.

2   All of the Liquidating Trust's income shall be treated as subject to tax on a current basis. For federal

3   income tax purposes, items of income, gain, loss, and deduction of the Liquidating Trust will be

4   allocated to Trust Beneficiaries in a manner, to be determined by the Liquidating Trustee, that is

5   consistent with applicable Treasury Regulations and that reflects the  respective contributions Trust

6   Beneficiaries and their respective interests in the interim and final distributions to be made by the

7   Liquidating Trust, and such Trust Beneficiaries shall be responsible for the payment of taxes on a

8   current basis that result from such allocations.

9       **jj.**     **Confidentiality**

10      The Liquidating Trustee shall hold strictly confidential and not use for personal gain any

11  material, non-public information of or pertaining to any entity to which any of the Liquidating Trust

12  Assets relate or of which he (or she as the case may be) becomes aware in his capacity as Liquidating

13  Trustee.

14      **kk.**     **Maintenance of Records**

15      The Liquidating Trustee shall maintain books and records containing a description of all

16  property from time to time constituting the Liquidating Trust Assets and an accounting of all receipts

17  and disbursements. Upon sixty (60) days' prior written notice delivered to the Liquidating Trustee,

18  such books and records shall be open to inspection by any beneficiary of the Liquidating Trust at any

19  reasonable time during normal business hours; provided that, if so requested, such Trust Beneficiary

20  shall have entered into a confidentiality agreement satisfactory in form and substance to the

21  Liquidating Trustee. The Liquidating Trustee shall furnish to any Trust Beneficiary, upon written

22  request, an annual statement of receipts and disbursements of the Liquidating Trust. Such books and

23  records may be destroyed without further notice to parties or approval of the Bankruptcy Court upon

24  the earlier of five (5) years after the final report to the Bankruptcy Court has been rendered by the

25  Liquidating Trustee or one year after the funds held by the Liqidating Trust have been substantially

26  distributed (unless such records and documents are necessary to fulfill any remaining obligations of

27  the Liquidating Trustee pursuant to the Liquidating Trust Agreement).

28

DISCLOSURE STATEMENT DESCRIBING FIRST AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION
159188907.1

1     **ll.     Duration and Termination of the Liquidating Trust**

2         The Liquidating Trust shall become effective upon the Effective Date of the Plan, pursuant to

3     the terms of the Liquidating Trust Agreement. Thereupon, the Liquidating Trust shall remain and

4     continue in full force and effect until the Liquidating Trust is terminated in accordance with the

5     provisions of the Liquidating Trust Agreement and the Plan.

6     **mm.     Preservation of Privilege**

7         In connection with the rights, claims, and causes of action that constitute the Liquidating Trust

8     Assets, any attorney-client privilege, work product privilege, or other privilege or immunity attaching

9     to any documents or communications (whether written or oral) transferred to the Liquidating Trust,

10    pursuant to the terms of the Plan or otherwise shall vest in the Liquidating Trust and be subject to the

11    control of the Liquidating Trustee. The Trustee is authorized to take all necessary actions to effectuate

12    the transfer of such privileges from the Estate to the Liquidation Trust, as necessary.

13    **nn.     No Bond**

14        Notwithstanding, any state law to the contrary, the Liquidating Trustee shall be exempt from

15    giving any bond or other security in any jurisdiction.

16    **oo.     No Execution**

17        All Liquidating Trust Assets shall be deemed *in custodia legis* until such times as the

18    Liquidating Trust Assets has actually been paid to or for the benefit of a beneficiary of the Liquidating

19    Trust, and no Trust Beneficiary or any other person can execute upon, garnish or attach the

20    Liquidating Trust Assets or the Liquidating Trust in any manner or compel payment from the

21    Liquidating Trust except by an order of the Bankruptcy Court that becomes a Final Order. Payment

22    will be solely governed by the Liquidating Trust Agreement and the Plan.

23    **pp.     Intention to Establish Grantor Trust**

24        The Liquidating Trust Agreement is intended to create a grantor trust for United States federal

25    income tax purposes and, to the extent provided by law, shall be governed and construed in all

26    respects as such a grantor trust.

27

28

DISCLOSURE STATEMENT DESCRIBING FIRST AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION
159188907.1

**qq.** **Amendment of the Liquidating Trust Agreement**

The Liquidating Trust Agreement may be amended at any time, pursuant to the terms of the Liquidating Trust Agreement.

**3.** **Effective Date Distributions to Be Made by Trustee**

On the Effective Date, the Trustee will pay all Effective Date payments to Holders of (i) Allowed Administrative Claims, (ii) Allowed Priority Claims. and (iii) Allowed Class 1 Secured Claims.  The Trustee shall also reserve, for subsequent determination by the Liquidating Trustee, any Post-Petition Funds attributable to a creditor or party in interest that makes a timely challenge by the Fund Challenge Deadline. After making such Effective Date payments and Post-Petition Fund reserves, Trustee shall transfer the remaining Estate property to the Liquidating Trust in the manner directed by the Liquidating Trustee.

**4.** **Settlement Agreements**

Any settlement effectuated prior to the confirmation of the Plan, upon notice thereof to the Bankruptcy Court and entry of a Final Order approving such settlement, shall be deemed incorporated into the Plan and the Confirmation Order including provisions of such settlement that shall be deemed a settlement pursuant to § 1123(b)(3)(A) of the Bankruptcy Code.

**5.** **Claims Administration and Prosecution and Plan Distributions**

The Liquidating Trustee shall have the power and authority to prosecute and resolve objections to Disputed Claims as set forth in the Liquidating Trust Agreement. The Liquidating Trust shall retain all defenses, rights of setoff, recoupment, and counterclaims with respect to each of the foregoing, including but not limited to those as defined as Causes of Action. The Liquidating Trust shall also hold, manage, and distribute Plan distributions to the Holders of Allowed Claims consistent with the Plan and the Liquidating Trust Agreement.

The Court shall retain jurisdiction over any objections to claims brought by the Liquidating Trust following the Effective Date. Nothing contained in the Plan shall constitute a waiver or release by the Liquidating Trust of any rights of setoff or recoupment, or of any defense, a creditor may have with respect to any Claim. The Liquidating Trust may withhold from property to be distributed under

DISCLOSURE STATEMENT DESCRIBING FIRST AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION
159188907.1

the Plan and will place in reserve a sufficient amount of cash to be distributed on account of claims that are Disputed and have not been allowed as of the date of distribution to creditors of any particular Class as if such Claims were allowed in full.

**6.**    **Books and Records of the Debtor**

Unless applicable non-bankruptcy law permits the distribution or destruction of certain of the Debtor's business records at an earlier date, or the Debtor or the Liquidating Trust obtains an order of the Bankruptcy Court providing otherwise, subject to the terms and conditions of the Liquidating Trust Agreement governing the books and records of the Liquidating Trust, the Liquidating Trustee shall have the responsibility of storing and maintaining the Debtor's books and records until one year after the Effective Date, after which time such books and records may be abandoned or destroyed without further Bankruptcy Court order, unless applicable non-bankruptcy law requires the retention and maintenance of any such books and records for a longer period, in which instance the Liquidating Trustee shall retain such books and records for at least the minimum period required by applicable non-bankruptcy law. For purposes of this Section, books and records include computer generated or computer-maintained books and records and computer data, as well as electronically generated or maintained books and records or data, along with books and records of the Debtor maintained by or in possession of third parties and all of the clams and rights of the Debtor and in and to its books and records, wherever located.

**7.**    **Corporate Action**

Upon the Effective Date, all actions contemplated under the Plan, regardless of whether taken before, on or after the Effective Date, shall be deemed authorized and approved in all respects. All matters provided for in the Plan or deemed necessary or desirable by the Plan Proponents or the Liquidating Trustee before, on, or after the Effective Date involving the corporate structure of the Debtor or Liquidating Trust, and any corporate action required by the Debtor or the Liquidating Trust in connection with the Plan or corporate structure of the Debtor or Liquidating Trust, shall be deemed to have occurred and shall be in effect on the Effective Date, without any requirement of further action by Holders of Interests, directors, managers, members or officers of the Debtor. Before, on, or

DISCLOSURE STATEMENT DESCRIBING FIRST AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION
159188907.1

after the Effective Date, the Liquidating Trustee, on behalf of the Liquidating Trust, the Debtor and the Estate, as applicable, shall be authorized to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated under the Plan (or necessary or desirable to effect the transactions contemplated under the Plan) in the name of and on behalf of the Liquidating Trust, the Debtor and the Estate, as applicable. The authorizations and approvals contemplated by this Section shall be effective notwithstanding any requirements under non-bankruptcy law.

**8.**     **Effectuating Documents and Further Transactions**

On and after the Effective Date, the Liquidating Trustee is authorized to and may issue, execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement and further evidence the terms and conditions of the Plan and the Liquidating Trust Agreement in the name of and on behalf of the Debtor, the Liquidating Trust and Estate, as applicable, without the need for any approvals, authorizations, or consents except for those expressly required pursuant to the Plan.

**9.**     **Procedures for Disputed, Contingent, or Unliquidated Claims**

**a.**     **Objections to Claims**

The Liquidating Trustee shall be entitled to object to any and all Claims against the Estate, subject to the time limitations set forth in the Plan.

**b.**     **No Distributions Pending Allowance of Claims**

Notwithstanding any other provision of the Plan, if any portion of a Claim is a Disputed Claim, no payment or distribution provided under the Plan shall be made on account of such Disputed Claim unless and until such Disputed Claim becomes an Allowed Claim.

**c.**     **Distributions Upon Allowance of Disputed Claims**

The Holder of a Disputed Claim that becomes an Allowed Claim shall receive a distribution(s) in Cash, subject to the terms of the Plan and the Liquidating Trust Agreement. Such distributions shall be made in accordance with the Plan based upon the distributions that would have been made to such Holder under the Plan if the Disputed Claim had been an Allowed Claim on or prior to the Effective Date. No Holder of a Disputed Claim shall have any claim against the Liquidating Trust

DISCLOSURE STATEMENT DESCRIBING FIRST AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION
159188907.1

Assets with respect to such Disputed Claim until such Disputed Claim becomes an Allowed Claim, and no Holder of a Disputed Claim shall have any right to interest on such Disputed Claim unless otherwise provided in the Plan.

**d.**    **Resolution of Disputed Claims**

Unless otherwise ordered by the Bankruptcy Court after notice and a hearing and subject to the terms of the Liquidating Trust Agreement, following the Effective Date, the Liquidating Trustee shall have the right to the exclusion of all others (except as to applications for allowances of compensation and reimbursement of expenses under §§ 328(a), 330, and 503 of the Bankruptcy Code) to make and file objections to claims and shall serve a copy of each objection upon the Holder of the Claim to which the objection is made as soon as practicable, but in no event later than two hundred and seventy (270) days after the Effective Date (subject, however, to the right of the Liquidating Trustee to seek an extension of time to file such objections by seeking such extension with approval from the Bankruptcy Court). After the expiration of the 270-day period for the Liquidating Trustee to file objections to claims (and the expiration of any extended period requested and granted by the Liquidating Trustee), and the final resolution of any then-pending claims objections, all creditor claims shall be deemed fixed.

**e.**    **Estimation**

The Liquidating Trustee may at any time request that the Bankruptcy Court estimate any contingent, unliquidated or disputed Claim pursuant to § 502(c) of the Bankruptcy Code regardless of whether the Debtor of the Liquidating Trust previously objected to such Claim, and the Bankruptcy Court shall retain jurisdiction to estimate any claim at any time during litigation concerning any objection to any claim, including, without limitation, during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent, unliquidated or disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Liquidating Trustee may pursue supplementary proceedings to object to the allowance of such Claim. All of the

aforementioned objection, estimation and resolution procedures are intended to be cumulative and not exclusive of one another. On and after the Effective Date, Claims that have been estimated may be compromised, settled, withdrawn or otherwise resolved subsequently, without further order of the Bankruptcy Court.

**10.**    **Distributions to Be Made Pursuant to the Plan**

Distributions under the Plan on Claims that are Allowed on the Effective Date will be made by the Trustee in the manner provided by the Plan. The Liquidating Trust Agreement will govern the procedures for distributions made from the Liquidating Trust pursuant to the Plan.

Distributions made by the Trustee under the Plan may be made by check drawn on a domestic bank or by wire transfer.  Except as otherwise agreed to by the Trustee in writing, distributions to be made to Holders of Claims Allowed on or before the Effective Date, pursuant to the Plan, may be delivered by regular mail, postage prepaid, to the address shown in the Debtor's schedules, as amended or, if a different address is stated in a Proof of Claim filed with the Bankruptcy Court, to such address. The Trustee may also make distributions to consumer clients by electronic means if he determines that doing so is more reliable than other methods for making payment.

Checks issued by the Trustee to pay Allowed Claims shall be null and void if not negotiated within ninety (90) days after the date of issuance thereof ("Claiming Period"). Requests for reissuance of any check shall be made to the Trustee by the Holder of the Allowed Claim to whom such check originally was issued, prior to the expiration of the Claiming Period. After such date, the unclaimed property held on account of such voided check or such claim shall vest in the Liquidating Trust free and clear of all claims and interests and be applied in accordance with the terms of the Plan.

**11.**    **Conditions Precedent to Confirmation and the Effective Date of the Plan**

**a.**    **Conditions Precedent to Confirmation of the Plan**

i.    The Plan Supplement and all of the schedules, documents, and exhibits contained therein shall have been Filed in form and substance acceptable to the Plan Proponents; and

ii.    The Bankruptcy Court shall have entered a Confirmation Order with respect to the Plan in form and substance acceptable to the Plan Proponents.

DISCLOSURE STATEMENT DESCRIBING FIRST AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION
159188907.1

**b.** **Conditions Precedent to the Effective Date**

The Effective Date shall be the first business day that is 14 days after satisfaction (or waiver pursuant to the provisions of Section IV.K.3. of the Plan) of all of the following conditions:

i. The Bankruptcy Court shall have entered the Confirmation Order, which Confirmation Order shall not have been terminated, suspended, vacated or stayed, shall not have been amended except with the consent of the Plan Proponents, and shall:

A. authorize the Trustee and Liquidating Trustee to take all actions necessary to enter into, implement, and consummate the contracts, instruments, releases, leases, indentures, and other agreements or documents created in connection with the Plan;

B. decree that the provisions of the Confirmation Order and the Plan are nonseverable and mutually dependent;

C. authorize the Trustee and Liquidating Trustee, as applicable or necessary, to the extent not previously authorized by the Sale Order, to: (a) make all distributions required under the Plan; and (b) enter into any agreements, transactions, and sales of property as set forth in the Plan Supplement;

D. authorize the implementation of the Plan and Liquidating Trust Agreement in accordance with their terms; and

E. provide that, pursuant to § 1146 of the Bankruptcy Code, the assignment or surrender of any lease or sublease, and the delivery of any deed or other instrument or transfer order, in furtherance of, or in connection with the Plan, including any deeds, bills of sale, or assignments executed in connection with any disposition or transfer of assets contemplated under the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax;

ii. Sufficient Funds being available in the Estate to pay claims that must be paid on the Effective Date including Allowed Administrative Claims and Allowed Priority Claims;

iii. The funding of the reserve for claimants submitting challenges to the characterization of the Post-Petition Funds by the Fund Challenge Deadline;

iv. Sufficient funds being available in the Estate to fund the operations of

DISCLOSURE STATEMENT DESCRIBING FIRST AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION
159188907.1

the Liquidating Trust as reasonably determined by the Plan Proponents;

v.    the Trustee shall have obtained all authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the Plan; and

vi.    the final version of the Plan Supplement and all of the schedules, documents, and exhibits contained therein shall have been Filed in a manner consistent in all material respects with the Plan and shall be in form and substance acceptable to the Plan Proponents.

c.    **Waiver of Conditions**

The conditions to Confirmation and to the Effective Date set forth in above may be waived by the Plan Proponents , without notice, leave, or order of the Bankruptcy Court or any formal action other than proceeding to confirm or consummate the Plan.

d.    **Effect of Failure of Conditions**

If Confirmation of the Plan does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any Claims by the Trustee, Estate, the Committee, any Holders, or any other Entity; (2) prejudice in any manner the rights of the Trustee, Estate, the Committee, any Holders, or any other Entity; or (3) constitute an admission, acknowledgment, offer or undertaking by the Trustee, Estate, the Committee, any Holders, or any other Entity in any respect. Notwithstanding the foregoing, the failure of Confirmation to occur shall not require or result in the voiding, rescission, reversal, or unwinding of the Sale Order.

12.    **Executory Contracts and Unexpired Leases**

Any executory contracts or unexpired leases (i) which have not expired by their own terms on or prior to the Effective Date, or (ii) which have not been assumed or assigned or rejected with the approval of the Court or pursuant to procedure established by order of the Court shall be deemed rejected by the Estate on the Effective Date. A schedule of all executory contracts and/or unexpired leases to be assumed/rejected upon confirmation of the Plan shall be included as a Plan Supplement.

The entry of the Confirmation Order by the Court shall constitute approval of such assumption and/or rejection as appropriate pursuant to 11 U.S.C. §§ 365(a) and 1123(b)(2).

DISCLOSURE STATEMENT DESCRIBING FIRST AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION
159188907.1

Unless otherwise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases pursuant to the Plan or the Confirmation Order, if any, must be filed with the Bankruptcy Court within thirty (30) days after the later of (1) the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection, (2) the effective date of such rejection (or deemed rejection), or (3) the Effective Date. Any Claims arising from the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan or Confirmation Order not filed with the Bankruptcy Court within such time will be automatically Disallowed, forever barred from assertion, and shall not be enforceable against the Debtor, the Liquidating Trust and the Estate, or their property without the need for any objection by the Liquidating Trustee or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied and released, notwithstanding anything in the Schedules or a Proof of Claim to the contrary. For the avoidance of doubt, nothing provided herein shall extend or modify any previously established deadline to file a claim arising from the rejection of an Executory Contract or Unexpired Lease previously rejected by the Liquidating Trustee or the Debtor. To the extent any Claims are filed based on rejection of executory contracts or unexpired leases, such Claims shall be treated as a General Unsecured Claims in Class 3A of the Plan.

**13.**    **Cure of for Executory Contracts and Unexpired Leases Assumed (or Assumed and Assigned)**

Any cure obligations under each Executory Contract and Unexpired Lease to be assumed (or assumed and assigned) pursuant to the Plan shall be satisfied, pursuant to § 365(b)(1) of the Bankruptcy Code, by performance or payment of the default amount in Cash on or after the Effective Date, subject to the limitation described below, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree. In the event of a dispute regarding (1) the cure obligation, (2) the ability of the Debtor, the Liquidating Trustee or any assignee to provide "adequate assurance of future performance" (within the meaning of § 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed (or assumed and assigned), or (3) any other

DISCLOSURE STATEMENT DESCRIBING FIRST AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION
159188907.1

1  matter pertaining to assumption (or assumption and assignment) or the cure obligations required by

2  § 365(b)(1) of the Bankruptcy Code, such dispute shall be determined either (x) by agreement of the

3  parties to such dispute or (y) following the entry of a Final Order or orders resolving the dispute and

4  approving the assumption (or assumption and assignment).

5        At least fourteen (14) days prior to the Confirmation Hearing, and except as to any Executory

6  Contracts or Unexpired Leases that have been assumed or rejected by a separate order of the Court,

7  the Liquidating Trustee shall distribute, or cause to be distributed to the applicable counterparties and

8  their known counsel, notices of proposed assumption (or assumption and assignment), proposed cure,

9  procedures for objecting thereto, and procedures for resolution by the Bankruptcy Court of any related

10 disputes. Any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed

11 assumption (or assumption and assignment) or related cure amount must be filed, served, and actually

12 received by the Debtors at least three (3) days prior to the Confirmation Hearing. Any counterparty

13 to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption

14 (or assumption and assignment) or cure amount will be deemed to have assented to such assumption

15 (or assumption and assignment) or cure. To the extent that the Liquidating Trustee seek to assume

16 (or assume and assign) an Executory Contract or Unexpired Lease pursuant to the Plan, the

17 Liquidating Trustee will (in the applicable notice and/or Schedule): (a) identify the assignee; and (b)

18 provide "adequate assurance of future performance" (within the meaning of § 365 of the Bankruptcy

19 Code) under the applicable Executory Contract or Unexpired Lease to be assumed (or assumed and

20 assigned), which adequate assurance information will be provided with the notices of proposed

21 assumption (or assumption and assignment).

22       Subject to cure or adequate assurance of prompt cure, as set forth in § 365(b) of the

23 Bankruptcy Code, assumption (or assumption and assignment) of any Executory Contract or

24 Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of

25 any Cure Obligations or defaults, whether monetary or nonmonetary, including defaults of provisions

26 restricting the change in control or ownership interest composition or other bankruptcy-related

27 defaults, arising under any assumed (or assumed and assigned) Executory Contract or Unexpired

28

DISCLOSURE STATEMENT DESCRIBING FIRST AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION
159188907.1

1  Lease at any time prior to the effective date of assumption (or assumption and assignment). Subject

2  to full satisfaction of Cure Obligations, any Proofs of Claim filed with respect to an Executory

3  Contract or Unexpired Lease that has been assumed (or assumed and assigned) shall be deemed

4  Disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy

5  Court.

6        The Trustee or the Liquidating Trustee may settle any Cure Claim dispute without any further

7  notice to or action, order, or approval of the Bankruptcy Court; provided that notice of such settlement

8  will be distributed to known counsel of the applicable counterparty by electronic mail.

9      **14.**    **Preexisting Obligations to the Debtors under Executory Contracts and**

10          **Unexpired Leases.**

11        Rejection of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise

12  shall not constitute a termination of preexisting obligations owed to the Debtor or the Estate, as

13  applicable, under such Executory Contracts or Unexpired Leases. In particular, notwithstanding any

14  non-bankruptcy law to the contrary, the Liquidating Trustee expressly reserves and does not waive

15  any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued

16  maintenance obligations on goods or services previously purchased by the Debtor contracting from

17  non-debtor counterparties to rejected Executory Contracts or Unexpired Leases.

18      **15.**    **Retention of Jurisdiction**

19        After confirmation of the Plan and occurrence of the Effective Date, in addition to any

20  jurisdiction which exists in any other court, the Bankruptcy Court will retain such jurisdiction as is

21  legally permissible including for the following purposes:

22        i.    To resolve any and all disputes regarding the operation, interpretation , or enforcement

23  of the Plan (including Plan Supplements), Confirmation Order, and Liquidating Trust Agreement;

24        ii.    To determine the allowability, classification, or priority of Claims upon objection by

25  the Trustee, the Liquidating Trustee, or any other parties in interest with standing to bring such

26  objection or proceeding and to consider any objection to claim whether such objection is filed before

27  or after the Effective Date;

28

69

DISCLOSURE STATEMENT DESCRIBING FIRST AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION
159188907.1

iii.    To determine the extent, validity, perfection, and priority of any Lien asserted against property of the Debtor, property of the Debtor's Estate, and property of the Liquidating Trust;

iv.    To construe and take any action to enforce the Plan, the Plan Confirmation Order, and any other order of the Bankruptcy Court, issue such orders as may be necessary for the implementation, execution, performance, and consummation of the Plan and the Confirmation Order, and all matters referred to in the Plan and the Plan Confirmation Order, and to determine all matters that may be pending before the Bankruptcy Court in this case on or before the Effective Date with respect to any person or entity related thereto;

v.    To determine (to the extent necessary) any and all applications for allowance of compensation and reimbursement of expenses of professionals for the period on or before the Effective Date;

vi.    To determine any request for payment of administrative expenses of the Estate;

vii.    To determine motions for the rejection, assumption, or assignment of executory contracts or unexpired leases filed before the Effective Date and the allowance of any claims resulting therefrom;

viii.    To determine all applications, motions, adversary proceedings, contested matters, and any other litigated matters instituted during the pendency of the Bankruptcy Case, whether before, on, or after the Effective Date including Causes of Action, and the Retained Actions. The Liquidating Trustee shall have the right and standing to commence any Causes of Action after the Effective Date and to continue with the prosecution of any Causes of Action commenced by the Debtor prior to the Effective Date including, without limitation, the Retained Actions;

ix.    To determine such other matters and for such other purposes as may be provided in the Plan Confirmation Order;

x.    To modify the Plan, under § 1127 of the Bankruptcy Code, in order to remedy any apparent defect or omission in the Plan or to reconcile any inconsistency in the Plan so as to carry out its intent and purpose;

xi.    Except as otherwise provided in the Plan or the Plan Confirmation Order, to issue

70

injunctions, to take such other actions or make such other orders as may be necessary or appropriate to restrain interference with the Plan or the Confirmation Order, or the execution or implementation by any person or entity of the Plan or the Confirmation Order;

xii.    To issue such orders in aid of consummation of the Plan or the Confirmation Order, notwithstanding any otherwise applicable nonbankruptcy law, with respect to any person or entity, to the fullest extent authorized by the Bankruptcy Code or Bankruptcy Rules; and

xiii.    To enter a final decree closing this Bankruptcy Case.

xiv.    To interpret and enforce the terms of the Plan, the Plan Supplement, the Confirmation Order, the Liquidating Trust Agreement, and such other pleadings, documents and exhibits related to the Plan.

xv.    To determine such other matters and for such other purposes as may be provided in the Confirmation Order.

**16.    Reservation of Rights**

Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the Assumed Executory Contracts and Unexpired Leases Schedule, nor anything contained in the Plan, shall constitute an admission by the Plan Proponents or the Liquidating Trustee that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Debtor or the Estate has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Plan Proponents or the Liquidating Trustee shall have thirty (30) days following entry of a Final Order resolving such dispute to alter its treatment of such contract or lease under the Plan.

**C.    Effect of Confirmation of the Plan**

**1.    Discharge**

The Debtor will not receive a discharge under the Plan pursuant to and in accordance with the provisions of § 1141 of the Bankruptcy Code because the Plan contemplates and will result in a sale or liquidation of all or substantially all of the property of the Debtor's Estate.

DISCLOSURE STATEMENT DESCRIBING FIRST AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION
159188907.1

**2.      No Revesting of Estate Property in the Debtor**

All Property of the Estate will remain Property of the Estate and/or the Liquidating Trust free and clear of all claims and interests except as provided in the Plan. No Estate assets shall revert to the Debtor as a result of confirmation. The Liquidating Trustee shall be the entity responsible for carrying out the terms of the Plan and to comply with any orders of the Court regarding the Plan or the assets of the Estate, subject to the terms of the Liquidating Trust Agreement and the Confirmation Order.

**3.      No Liability for Solicitation or Participation**

As specified in § 1125(e) of the Bankruptcy Code, persons that solicit acceptances or rejections of the Plan and/or that participate in the offer, issuance, sale, or purchase of securities offered or sold under the Plan, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, shall not be liable on account of such solicitation or participation, for violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the offer, issuance, sale, or purchase of securities.

**4.      Exculpation; Limitation of Liability**

To the maximum extent permitted by law, neither the Trustee, the Liquidating Trustee, the Estate, the Committee, the Post-Confirmation Oversight Committee, nor any of their employees, officers, directors, shareholders, agents, members, representatives, or the professionals employed or retained by any of them, whether or not by Court order shall have or incur liability to any person or entity for an act taken or omission made in good faith in connection with or related to the formulation and implementation of the Plan, the Disclosure Statement, or a contract, instrument, release, or other agreement or document created in connection therewith, the solicitation of acceptances for or confirmation of the Plan, or the consummation and implementation of the Plan and the transactions contemplated therein; provided, however, that the foregoing exculpation shall not extend to any act or omission constituting fraud, willful misconduct, or gross negligence by the foregoing parties. Each of the exculpated persons set forth in this Section shall in all respects be entitled to reasonably rely on the advice of counsel with respect to its duties and responsibilities under the Plan. Notwithstanding the foregoing, nothing contained in the Plan shall effectuate an exculpation, release, or injunction in

DISCLOSURE STATEMENT DESCRIBING FIRST AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION
159188907.1

1   favor of the Debtor's employees, officers, directors, shareholders, agents, members, representatives,

2   Affiliates, alter egos, or the professionals employed or retained by any of them, and all rights and

3   Causes of Action held by the Estate against any of the foregoing are expressly preserved by the Plan.

4        **5.**     **Preservation of all Litigation and Causes of Action**

5        After confirmation of the Plan, the Liquidating Trust shall retain all rights to continue,

6   commence and pursue, as appropriate, any and all claims or Causes of Action, including those

7   identified in the Plan Supplement, and objections to Claims, whether arising before or after the date

8   on which the Debtor filed its petition, in any court or other tribunal including, without limitation, in

9   an adversary proceeding filed in the Bankruptcy Case. The failure to list any potential or existing

10  claims or causes of action shall not limit the rights of the Liquidating Trustee to pursue any claims or

11  causes of action not listed or identified. After the Effective Date, the Liquidating Trustee shall have

12  the absolute authority to prosecute, waive, adjust, or settle any and claims, including all Causes of

13  Action, without the need for approval by the Court, subject to the terms of the Liquidating Trust

14  Agreement.

15       Unless a claim or Cause of Action against a creditor or other entity is expressly waived,

16  relinquished, released, compromised, or settled in the Plan or any other Final Order of the Court, the

17  Estate expressly reserves such claim or Cause of Action for later adjudication (including, without

18  limitation, claims and causes of action not specifically identified or which the Debtor or its Estate

19  may presently be unaware or which may arise or exist by reason of additional facts or circumstances

20  unknown to the Plan Proponents, or the Estate at this time or facts or circumstances which may change

21  or be different from those which the Plan Proponents or the Estate now believe to exist).   No

22  preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel,

23  issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or otherwise) or laches shall

24  apply to such claims, or Causes of Action upon or after the confirmation or consummation of the Plan

25  based on the Disclosure Statement, the Confirmation Order, except where such claims and Causes of

26  Action have been explicitly released in the Plan. In addition, the Liquidating Trust, and the Estate

27  expressly reserve the right to pursue or adopt any claims alleged in any lawsuit in which the Debtor

28

DISCLOSURE STATEMENT DESCRIBING FIRST AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION
159188907.1

is a defendant or an interested party, against any person or entity, including without limitation, the plaintiff or co-defendant in such lawsuits.

Delivery (by any means) of the Plan or the Disclosure Statement approved by the Court to any person whom the Debtor and/or Estate has incurred an obligation, or who has received a transfer of money or property of the Debtor, or who has transacted business with the Debtor or the Estate shall constitute actual notice that such obligation, transfer, or transaction may be reviewed by the Trustee subsequent to the approval by the Court of the Plan and may, if appropriate, be the subject of an action after the approval by the Court of the Plan, whether or not (i) such person has field a proof of claim in this Case; (ii) such person's proof of claim has been the subject of an objection; (iii) such person's claim was included in the schedules; or (iv) such person's scheduled claim has been identified by the Trustee as disputed, contingent, or unliquidated.

**6.    Modification of the Plan**

The Plan Proponents may modify the Plan at any time before confirmation. However, the Bankruptcy Court may require a new disclosure statement and/or re-voting on the Plan if the Plan Proponents materially modifies the Plan before confirmation. The Liquidating Trustee may seek to modify the Plan at any time after confirmation of the Plan so long as (1) the Plan has not been substantially consummated, (2) such modification is approved by the Post-Confirmation Oversight Committee, or (3) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

**7.    Post-Confirmation Status Reports**

Within 120 days of the entry of the order confirming the Plan, the Liquidating Trustee shall file a status report with the Court explaining what progress has been made toward consummation of the confirmed Plan. The status report shall be served on the United States Trustee and those parties who have requested special notice. Further status reports shall be filed approximately every four months and served on the same parties until entry of a final decree or otherwise ordered by the Court.

**8.    Post-Confirmation U.S. Trustee Fees**

Upon the Effective Date, the Trustee and Liquidating Trustee shall be responsible for timely

74

payment of quarterly fees due and payable, if any, until the Case is closed, to the extent required by § 1930(a)(6) of the Judicial Code. The Liquidating Trustee may, subject to the Liquidating Trust Agreement, seek to close the case post-Effective Date. Unless otherwise adjudicated by the Court, distributions made by the Liquidating Trustee on behalf of and from the Liquidation Trust shall not be subject to quarterly fees.

**9.    Risk Factors**

The risk factors with respect to the Plan include, but are not limited to, the following: (1) the financial projections set forth in the Disclosure Statement may not be realized thereby causing inability to make Plan payments; (2) the uncertainty associated with the "earn-out" under the Sale Transaction; (3) the risk of business and/or economic downturn; (4) the costs and uncertainty of potential litigation; and (5) non-bankruptcy law regulations.

**10.    Tax Consequences of the Plan**

THE FOLLOWING IS INTENDED TO BE ONLY A SUMMARY OF SELECTED FEDERAL AND STATE INCOME TAX CONSEQUENCES OF THE PLAN AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING WITH, AND RECEIPT OF TAX ADVICE FROM, A TAX PROFESSIONAL. THE SELECTED FEDERAL AND STATE TAX CONSEQUENCES THAT ARE DESCRIBED HEREIN AND OTHER FEDERAL, STATE AND LOCAL TAX CONSEQUENCES THAT ARE NOT ADDRESSED HEREIN ARE COMPLEX AND, IN SOME CASES, UNCERTAIN. SUCH TAX CONSEQUENCES MAY ALSO VARY BASED ON THE INDIVIDUAL CIRCUMSTANCES OF EACH HOLDER OF AN ALLOWED CLAIM OR EQUITY INTEREST. ACCORDINGLY, EACH HOLDER OF AN ALLOWED CLAIM OR EQUITY INTEREST IS STRONGLY ADVISED TO CONSULT WITH ITS OWN TAX ADVISOR REGARDING THE FEDERAL, STATE AND LOCAL TAX CONSEQUENCES OF THE PLAN. THE BELOW SUMMARY OF TAX CONSEQUENCES IS NOT INTENDED TO BE AND IS NOT TAX ADVICE. THE DEBTORS DO NOT INTEND TO REQUEST A TAX RULING FROM THE INTERNAL REVENUE SERVICE OR ANY OTHER TAXING AUTHORITY WITH RESPECT TO ANY OF THE TAX CONSEQUENCES OF THE PLAN.

1  CONSEQUENTLY, THE INTERNAL REVENUE SERVICE OR ANOTHER TAXING

2  AUTHORITY MAY DISAGREE WITH AND MAY CONTEST ONE OR MORE OF THE TAX

3  CONSEQUENCES DESCRIBED HEREIN TO THE DEBTOR, HOLDERS OF CLAIMS AND

4  HOLDERS OF INTERESTS.

5          **a.      Federal Income Tax Consequences to Certain Creditors**

6                  **i.      In General**

7          Generally, a Holder of a Claim should in most, but not all circumstances, recognize gain or

8  loss equal to the difference between the "amount realized" by such Holder in exchange for its Claim

9  and such Holder's adjusted tax basis in the Claim. The "amount realized" is equal to the sum of the

10 cash and the fair market value of any other consideration received under a plan in respect of a Holder's

11 Claim. The tax basis of a Holder in a Claim will generally be equal to the Holder's cost therefor. To

12 the extent applicable, the character of any recognized gain or loss (e.g., ordinary income, or short-

13 term or long-term capital gain or loss) will depend upon the status of the Holder, the nature of the

14 Claim in the Holder's hands, the purpose and circumstances of its acquisition, the Holder's holding

15 period of the Claim, and the extent to which the Holder previously claimed a deduction for the

16 worthlessness of all or a portion of the Claim.  Generally, if the Claim is a capital asset in the Holder's

17 hands, any gain or loss realized will generally be characterized as capital gain or loss, and will

18 constitute long-term capital gain or loss if the Holder has held such Claim for more than one year.

19         A creditor who received Cash in satisfaction of its Claims may recognize ordinary income or

20 loss to the extent that any portion of such consideration is characterized as accrued interest. A creditor

21 who did not previously include in income accrued but unpaid interest attributable to its Claim, and

22 who receives a distribution on account of its Claim pursuant to the Plan, will be treated as having

23 received interest income to the extent that any consideration received is characterized for U.S. federal

24 income tax purposes as interest, regardless of whether such creditor realizes an overall gain or loss

25 as a result of surrendering its Claim. A creditor who previously included in its income accrued but

26 unpaid interest attributable to its Claim should recognize an ordinary loss to the extent that such

27 accrued but unpaid interest is not satisfied, regardless of whether such creditor realizes an overall

28

DISCLOSURE STATEMENT DESCRIBING FIRST AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION
159188907.1

gain or loss as a result of the distribution it may receive under the Plan on account of its Claim.

Under the Plan, the Holders of certain Claims will likely receive only a partial distribution of their Allowed Claims. As discussed herein, Holders of Allowed General Unsecured Claims will receive respective Trust Beneficial Interests, which is discussed further below. Whether the applicable Holder of such Claims will recognize a loss or any other tax treatment will depend upon facts and circumstances that are specific to the nature of the Holder and its Claims. Creditors should consult their own tax advisors.

### ii.    Non-United States Persons

A Holder of a Claim that is a Non-U.S. Person generally will not be subject to U.S. federal income tax with respect to property (including money) received in exchange for such Claim pursuant to the Plan, unless (i) such Holder is engaged in a trade or business in the United States to which income, gain or loss from the exchange is "effectively connected" for United States federal income tax purposes, or (ii) if such Holder is an individual, such Holder is present in the United States for 183 days or more during the taxable year of the exchange and certain other requirements are met.

### iii.    Tax Consequences in Relation to the Liquidating Trust

As of the Effective Date, the Liquidating Trust will be established for the benefit of the Holders of Allowed General Unsecured Claims. The tax consequences of the Plan in relation to the Liquidating Trust and the Trust Beneficiaries are subject to uncertainties due to the complexity of the Plan and the lack of interpretative authority regarding certain changes in the tax law.

Allocations of taxable income of the Liquidating Trust (other than taxable income allocable to the Liquidating Trust's claims reserves) among holders of Claims will be determined by reference to the manner in which an amount of cash equal to such taxable income would be distributed (were such cash permitted to be distributed at such time) if, immediately prior to such deemed distribution, the Liquidating Trust had distributed all of its assets (valued at their tax book value) to the Trust Beneficiaries, adjusted for prior taxable income and loss and taking into account all prior and concurrent distributions from the Liquidating Trust. Similarly, taxable loss of the Liquidating Trust will be allocated by reference to the manner in which an economic loss would be borne immediately

1  after a liquidating distribution of the remaining trust assets.

2  The tax book value of the trust assets for this purpose will equal their fair market value on the

3  Effective Date, adjusted in accordance with tax accounting principles prescribed by the Tax Code,

4  applicable Treasury Regulations, and other applicable administrative and judicia authorities and

5  pronouncements. Uncertainties with regard to federal income tax consequences of the Plan may arise

6  due to the inherent nature of estimates of value that will impact tax liability determinations.

7  Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary

8  (including the receipt of an IRS private letter ruling if the Liquidating Trustee so requests one, or the

9  receipt of an adverse determination by the IRS upon audit if not contested by the Liquidating Trustee),

10  the Liquidating Trustee may (a) elect to treat any trust assets allocable to, or retained on account of,

11  Disputed Claims as a "disputed ownership fund" governed by Treasury Regulation Section 1.468B-

12  9, and (b) to the extent permitted by applicable law, report consistently with the foregoing for state

13  and local income tax purposes.  Accordingly, any reserve for Disputed Claims will be subject to tax

14  annually on a separate entity basis on any net income earned with respect to the trust assets in such

15  reserves, and all distributions from such reserves will be treated as received by holders in respect of

16  their Claims as if distributed by the Debtor. All parties (including, without limitation, the Liquidating

17  Trustee and the holders of beneficial interests in the Liquidating Trust) will be required to report for

18  tax purposes consistently with the foregoing.

19  The Liquidating Trust is intended to qualify as a liquidating trust for federal income tax

20  purposes. In general, a liquidating trust is not a separate taxable entity but rather is treated for federal

21  income tax purposes as a "grantor" trust (i.e., a pass-through entity). The IRS, in Revenue Procedure

22  94-45, 1994.28 I.R.B. 124, set forth the general criteria for obtaining an IRS ruling as to the grantor

23  trust status of a liquidating trust under a chapter 11 plan. The Liquidating Trust has been structured

24  with the intention of complying with such general criteria. Pursuant to the Plan and Liquidating Trust

25  Agreement, and in conformity with Revenue Procedure 94-45, *supra*, all parties (including the

26  Liquidating Trustee and the Trust Beneficiaries) are required to treat for federal income tax purposes,

27  the Liquidating Trust as a grantor trust of which the holders of the applicable Allowed Claims are the

28

DISCLOSURE STATEMENT DESCRIBING FIRST AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION
159188907.1

owners and grantors. While the following discussion assumes that the Liquidating Trust would be so treated for federal income tax purposes, no ruling has been requested from the IRS concerning the tax status of the Liquidating Trust as a grantor trust. Accordingly, there can be no assurance that the IRS would not take a contrary position to the classification of the Liquidating Trust as a grantor trust. If the IRS were to challenge successfully such classification, the federal income tax consequences to the Liquidating Trust and the beneficiaries thereof could materially vary from those discussed herein.

In general, each creditor who is a beneficiary of the Liquidating Trust will recognize gain or loss in an amount equal to the difference between (i) the "amount realized" by such Trust Beneficiary in satisfaction of its applicable Allowed Claim, and (ii) such Trust Beneficiary's adjusted tax basis in such Claim. The "amount realized" by a Trust Beneficiary will equal the sum of Cash and the aggregate fair market value of the property received by such party pursuant to the Plan (such as a Trust Beneficiary's undivided beneficial interest in the assets transferred to the Liquidating Trust). Where gain or loss is recognized by a beneficiary in respect of its Allowed Claim, the character of such gain or loss (i.e., long-term or short-term capital, or ordinary income) will be determined by a number of factors including the tax status of the party, whether the Claim constituted a capital asset in the hands of the party and how long it had been held, whether the Claim was originally issued at a discount or acquired at a market discount and whether and to what extent the party had previously claimed a bad debt deduction in respect of the Claim.

After the Effective Date, any amount that a creditor receives as a distribution from the Liquidating Trust in respect of its Trust Beneficial Interest should not be included, for federal income tax purposes, in the party's amount realized in respect of its Allowed Claim, but should be separately treated as a distribution received in respect of such party's Trust Beneficial Interest.

In general, a beneficiary's aggregate tax basis in its undivided beneficial interest in the assets transferred to the Liquidating Trust will equal the fair market value of such undivided beneficial interest as of the Effective Date and the Trust Beneficiary's holding period in such assets will begin the day following the Effective Date. Distributions to any Trust Beneficiary will be allocated first to the original principal portion of the Trust Beneficiary's Allowed Claim as determined for federal tax

DISCLOSURE STATEMENT DESCRIBING FIRST AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION
159188907.1

purposes, and then, to the extent the consideration exceeds such amount, to the remainder of such Claim. However, there is no assurance that the IRS will respect such allocation for federal income tax purposes.

For all federal income tax purposes, all parties (including the Liquidating Trustee and the Trust Beneficiaries) will treat the transfer of assets to the Liquidating Trust, in accordance with the terms of the Plan and Liquidating Trust Agreement, as a transfer of those assets directly to the Holders of the applicable Allowed Claims followed by the transfer of such assets by such Holders to the Liquidating Trust. Consistent therewith, all parties will treat the Liquidating Trust as a grantor trust of which such Holders are to be owners and grantors. Thus, such Holders (and any subsequent Trust Beneficiaries) will be treated as the direct owners of an undivided beneficial interest in the assets of the Liquidating Trust for all federal income tax purposes. Accordingly, each holder of a Trust Beneficial Interest will be required to report on its federal income tax return(s) the Holder's allocable share of all income, gain, loss, deduction or credit recognized or incurred by the Liquidating Trust.

The Liquidating Trust's taxable income will be allocated to the Trust Beneficiaries in accordance with each such Holder's Pro Rata share. The character of items of income, deduction and credit to any Holder and the ability of such Holder to benefit from any deductions or losses may depend on the particular situation of such Holder.

The federal income tax reporting obligation of a Trust Beneficiary is not dependent upon the Liquidating Trust distributing any cash or other proceeds. Therefore, a Trust Beneficiary may incur a federal income tax liability regardless of the fact that the Liquidating Trust has not made, or will not make, any concurrent or subsequent distributions to the Holder. If a Holder incurs a federal tax liability but does not receive distributions commensurate with the taxable income allocated to it in respect of its Trust Beneficial Interests, the Holder may be allowed a subsequent or offsetting loss.

The Liquidating Trustee will file with the IRS returns for the Liquidating Trust as a grantor trust pursuant to Treasury Regulations Section 1.671-4(a). The Liquidating Trust will also send to each Trust Beneficiary a separate statement setting forth the Holder's share of items of income, gain, loss, deduction or credit and will instruct the Holder to report such items on its federal income tax

DISCLOSURE STATEMENT DESCRIBING FIRST AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION
159188907.1

1    return. For the avoidance of doubt, the Liquidating Trustee shall file with the IRS and other taxing

2    authorities all outstanding and final returns for the Debtor.

3        Events subsequent to the date of this Disclosure Statement, such as the enactment of additional

4    tax legislation, could also change the federal income tax consequences of the Plan and the transactions

5    contemplated thereunder.

6                        **iv.        Information Reporting and Withholding Backup**

7        Distributions pursuant to the Plan will be subject to any applicable federal income tax

8    reporting and withholding. The IRC imposes "backup withholding" on certain "reportable" payments

9    to certain taxpayers, including payments of interest. Under the IRC's backup withholding rules, a

10   holder of a Claim may be subject to backup withholding with respect to distributions or payments

11   made pursuant to the Plan, unless the Holder (a) comes within certain exempt categories (which

12   generally include corporations) and, when required, demonstrates this fact or (b) provides a correct

13   taxpayer identification number and certifies under penalty of perjury that the taxpayer identification

14   number is correct and that the taxpayer is not subject to backup withholding because of a failure to

15   report all dividend and interest income. Backup withholding is not an additional federal income tax,

16   but merely an advance payment that may be refunded to the extent it results in an overpayment of

17   income tax. A Holder of a Claim may be required to establish an exemption from backup withholding

18   or to make arrangements with respect to the payment of backup withholding.

19       **THE FOREGOING SUMMARY HAS BEEN PROVIDED FOR INFORMATIONAL**

20   **PURPOSES ONLY. ALL HOLDERS OF CLAIMS ARE URGED TO CONSULT THEIR**

21   **OWN TAX ADVISORS CONCERNING THE FEDERAL, STATE, LOCAL AND OTHER**

22   **TAX CONSEQUENCES APPLICABLE UNDER THE PLAN.**

23       **11.        Final Decree**

24       Once this Estate has been fully administered, as referred to in Bankruptcy Rule 3022, the

25   Trustee or Liquidating Trustee will file a motion with the Bankruptcy Court to obtain a final decree

26   to close the Bankruptcy Case.

27

28

DISCLOSURE STATEMENT DESCRIBING FIRST AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION
159188907.1

**IV.**

**CONFIRMATION REQUIREMENTS**

**A.      Liquidation Analysis**

With respect to each Impaired Class of Claims and Equity Interests, the Bankruptcy Code requires that each Holder of an Impaired Claim or Equity Interest either (i) accepts the Plan, or (ii) receives or retains under the Plan property of a value, as of the Effective Date of the Plan, that is not less than the value such Holder would receive or retain if the Debtor was liquidated under chapter 7 of the Bankruptcy Code. This analysis requires the Bankruptcy Court to determine what the Holders of Allowed Claims or Equity Interests in each Impaired Class would receive from the liquidation of the Debtors' Assets in the context of a chapter 7 liquidation case.

The liquidation analysis (the "Liquidation Analysis") of the Debtor, as prepared by the Plan Proponents, will be filed as a supplement to this Disclosure Statement. As reflected in the Liquidation Analysis, if the Bankruptcy Case was converted to a case under chapter 7 of the Bankruptcy Code, liquidation under chapter 7 would result in the incurrence of administrative costs in excess of those to be incurred under the Plan because a chapter 7 trustee that would be appointed in the Bankruptcy Case would likely seek to retain counsel and potentially other professionals that are completely unfamiliar with the Debtor, the significant complexities of this Bankruptcy Case and the pending litigation, and remaining assets and liabilities. The appointment of another group of professionals at this stage of the Bankruptcy Case, in addition to the Professionals in the bankruptcy Case, would increase administrative claims including additional professional fees. Also, a new time period for the filing of Claims would commence under FRBP 1019(2), possibly resulting in the filing of additional Claims against the Estate.  Conversion of the Bankruptcy Case to a case under chapter 7, and the appointment of a trustee, for administration of the Estate could also delay the prosecution of Causes of Action and the distributions to creditors while the chapter 7 trustee and new professionals familiarize themselves with the Bankruptcy Case and Causes of Action.

On the other hand, under the Plan, the Debtor contemplates an orderly administration and winding down of the Estate by parties that are already familiar with the Debtor, its assets, and the

DISCLOSURE STATEMENT DESCRIBING FIRST AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION
159188907.1

1  Debtor's creditors and liabilities.  Such familiarity will allow the Liquidating Trust to complete

2  liquidation of the assets and distribute the proceeds to creditors more efficiently and expeditiously

3  than a chapter 7, while maximizing the value of the assets for the benefit of creditors. In chapter 7

4  liquidation, therefore, it is highly likely that there would be less money available for distribution to

5  certain Holders of Allowed Claims than under the Plan.

6  **B.    <u>Feasibility</u>**

7        The Plan cannot be confirmed unless the Court finds that it is "feasible." In general, there are

8  two elements of feasibility. The first element is whether there will be sufficient funds to make

9  distributions required to be made on the Effective Date, or as soon thereafter as is practicable,

10  including to Holders of Allowed Secured Claims, Allowed Administrative Claims, and Allowed

11  Priority Claims.  Based upon the Estate holding over $12.7 million in Cash (projected as of the

12  Effective Date) and the estimated amounts of Allowed Secured Claims, Allowed Administrative

13  Claims, and Allowed Priority Claims, which total approximately $11.8 million, the Debtors believe

14  that the Estate will have sufficient funds to meet this element of feasibility.

15        Further, the Bankruptcy Code requires that confirmation of a plan is not likely to be followed

16  by the liquidation or the need for further financial reorganization of a debtor, unless such liquidation

17  or reorganization is proposed in such plan. Here, the Plan contemplates that all Assets ultimately will

18  be liquidated, sold, transferred, abandoned, or otherwise disposed of, and all proceeds of the Assets

19  will be utilized to pay creditors. Since no further financial reorganization of the Debtor will be

20  possible or is contemplated and the liquidation of the Debtor is provided for in the Plan, the Plan

21  satisfies this element of feasibility as well.

22        Based on the foregoing, the Plan Proponents believe that the Plan is feasible.

23  **C.    <u>Confirmation Request</u>**

24        In the event that all of the applicable requirements of § 1129(a) are met other than

25  § 1129(a)(8), if applicable, the Plan Proponents request confirmation of the Plan notwithstanding the

26  requirements of such paragraph under § 1129(b).  If and to the extent applicable, the Plan Proponents

27  will provide further support for Confirmation of the Plan under the "cram down" provisions of

28

DISCLOSURE STATEMENT DESCRIBING <u>FIRST AMENDED</u> JOINT CHAPTER 11 PLAN OF LIQUIDATION
159188907.1

1 | § 1129(b) in their brief to be filed in support of the Plan.

2 | DATED: ~~March 22~~June 3, 2024          MARSHACK HAYS WOOD LLP

3

4 |                                        By: /s/ D. Edward Hays
                                               D. EDWARD HAYS
5 |                                            LAILA MASUD
                                               General Counsel for Chapter 11 Trustee,
6 |                                            RICHARD A. MARSHACK

7

8 | DATED: ~~March 22~~June 3, 2024          FOX ROTHCHILD

9 |                                        By: /s/ Nicholas A. Koffroth
                                               KEITH OWENS
10|                                            NICHOLAS KOFFROTH
                                               Attorneys for the Official Committee of Unsecured
11|                                            Creditors

12

13| 139-5864-1551, v. 1

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

84

DISCLOSURE STATEMENT DESCRIBING FIRST AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION
159188907.1