Kathleen P. March, Esq., (CA SBN 80366)
**THE BANKRUPTCY LAW FIRM, PC**
10524 W. Pico Blvd, Suite 212, LA, CA 90064
Phone: 310-559-9224; Fax: 310-559-9133
Email: kmarch@BKYLAWFIRM.com
*Counsel of Record for Greyson Law Center PC*
*on Its Motion for Admin Claim, and in Adv.Proc.*

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA—SANTA ANA DIV.

| | |
|---|---|
| In re<br><br>THE LITIGATION PRACTICE GROUP, P.C.<br><br>RICHARD MARSHACK, CHAPTER 11 TRUSTEE<br><br>Plaintiff<br><br>vs.<br><br>TONY DIAB ET AL.<br><br>Defendants | Bankruptcy Case No. 8:23-bk-10571-SC<br>Adversary Proceeding No.:  8:23-ap-01046-SC<br>Chapter 11<br><br>**REPLY OF GREYSON LAW CENTER PC'S, TO TRUSTEE'S PORTION OF STIPULATION TO GREYSON'S LBR RULE 7026-1 MOTION [DKT.515 IN ADV., DKT.1209 IN LPG MAIN CASE, BOTH FILED 5/7/24] TO COMPEL TRUSTEE TO PRODUCE SIGNED GREYSON-PHOENIX CONTRACT, SEIZED BY TRUSTEE'S ATTORNEYS IN 6/2/23 LOCKOUT AT GREYSON, AND NOT RETURNED TO GREYSON, DESPITE GREYSON'S *REQUEST TO PRODUCE DOCUMENTS* SERVED ON TRUSTEE, TO TRUSTEE'S COUNSEL, ON 2/29/24; DECLARATIONS OF COURTNEY KELLEY, ISRAEL OROZCO, JAYDE TRINH, HAN TRINH, AND KATHLEEN MARCH TO THIS REPLY**<br><br>Hearing on Motion to Compel set for:<br>Date: June 12, 2024        Time: 1:30pm<br>Place:  Courtroom of Bankruptcy Judge Scott Clarkson, by Zoom.gov, or in person at:<br>411 West Fourth Street, Ctrm 5C Santa Ana, CA 92701-4593 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Please NOTE**;  Greyson's *Evidentiary Objection to, and Request to Strike*, portions of Jeremy Freedman Declaration to Trustee's Portion of Stipulation is being filed along with this REPLY, as a separately captioned pleading

As allowed by CD CA Bankruptcy Court LBR Rule 9013-1(g), Greyson Law Center PC ("Greyson") REPLIES to the Trustee Marshack's portion of the Stipulation to Greyson's Motion to compel Trustee/his attorneys and field agents to produce to Greyson's counsel the signed paper contract between Greyson and Phoenix, in which Phoenix contracts to pay Greyson $2,000 per case, for each state court case where Greyson attorneys appear to defend Phoenix which were being sued in state courts around the US, for alleged consumer debts.

Greyson's REPLY consists of:

(1) the attached REPLY Memorandum of Points & Authorities;

(2)  the attached Reply Declaration of Kathleen P. March, Esq., which attests that the dkt.13 Lockout & Preliminary Injunction does NOT authorize Trustee/his attorneys to seize the signed paper Greyson-Phoenix contract from Greyson's offices, so Trustee's attorneys/field agents taking the signed paper contract was conversion of Greyson's property;

(3) the attached Declarations of Courtney Kelly, Israel Orozco, Esq., Phuong Jayde Trinh, Han Trinh and Kathleen March, Esq..

1     (4) Greyson's *Evidentiary Objection to, and Request to Strike*, portions of

2

3   Jeremy Freedman Declaration to Trustee's Portion of Stipulation [Stipulation, and

4   Freedman Declaration, filed attached to Greyson Motion [dkt.515 in adv proc,

5   dkt.1209 in main LPG case] to compel Trustee/his attorneys to produce the seized

6   signed Greyson-Phoenix contract,  is being filed along

7

8   with this REPLY, as a separately captioned pleading.

9   Dated:  June 5, 2024              THE BANKRUPTCY LAW FIRM, PC
                                       ————/s/ Kathleen P. March_____
10                                     By Kathleen P. March, Esq., counsel for Greyson on
11                                     its Motion to Compel production of the signed paper
                                       contract, and on this REPLY
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
_____
**REPLY OF GREYSON TO TRUSTEE'S PORTION OF STIPULATION TO GREYSON'S MOTION [DKT.515
IN ADV.PROC, DKT.1209 IN LPG MAIN CASE] TO COMPEL TRUSTEE TO PRODUCE SIGNED
GREYSON-PHOENIX CONTRACT, SEIZED BY TRUSTEE'S ATTORNEYS IN 6/2/23 LOCKOUT AT
GREYSON, AND NOT RETURNED TO GREYSON, DESPITE GREYSON'S *REQUEST TO PRODUCE
DOCUMENTS*  SERVED 2/29/24;DECLS OF  KELLEY, OROZCO, J. TRINH, H.TRINH & K. MARCH.    iii**

1

## <u>TABLE OF CONTENTS  TO REPLY MEMORANDUM OF P & A</u>

I.    All 5 Arguments are **<u>Error</u>**, That Trustee's Attorneys Make, Against

Producing the Seized Paper Copy of the Greyson-Phoenix Contract...........1


A.  Trustee's First Erroneous Argument:  There was no "bad faith" Meet and

Confer; Greyson Counsel March and both Trustee's Law Firms, had

Extensive Meet and Confer Emails, and Trustee's Attorneys Never Said, in

Any of those Emails, that They Wanted to Talk on the Phone or in Person,

which Waived Any Argument that the Meet and Confer by Emails was

Inadequate…………………………………………….........................2


B.  Trustee's Second Erroneous Argument:  Trustee's Objections to Producing

the seized signed  Greyson-Phoenix contract are Invalid, and are

Impermissible "Stonewalling"..........................................................3


C. Trustee's Third Erroneous Argument: Ludicrous for Trustee's Part of

Stipulation to Claim Trustee's Response 2 is "Complete and

Straightforward"; It is Neither; It is Improper "Stonewalling"………….......5


D.  Trustee's Fourth Erroneous Argument: Trustee's art of the Stipulation

alleging the signed Greyson-Phoenix contract is NOT Relevant is Obvious

Error, failing to Rebut Greyson's Part of Stipulation, which Explains in

Detail, why the Seized Contract is Highly Relevant to Both Greyson's

Administrative Claim Motion, and to Defending against the Allegation in

Trustee's Adversary Proceeding that Money Paid to Greyson (for

Work) was a fraudulent transfer....................................................6

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

<u>REPLY</u> OF GREYSON TO TRUSTEE'S PORTION OF STIPULATION TO GREYSON'S MOTION [DKT.515
IN ADV.PROC, DKT.1209 IN LPG MAIN CASE] TO COMPEL TRUSTEE TO PRODUCE SIGNED
GREYSON-PHOENIX CONTRACT, SEIZED BY TRUSTEE'S ATTORNEYS IN 6/2/23 LOCKOUT AT
GREYSON, AND NOT RETURNED TO GREYSON, DESPITE GREYSON'S *REQUEST TO PRODUCE
DOCUMENTS*  SERVED 2/29/24;DECLS OF  KELLEY, OROZCO, J. TRINH, H.TRINH & K. MARCH.    iv

1

2

    1.   Trustee/Dinsmore Firm did Not Identify any Language in the Dkt.13

*Lockout & Preliminary Injunction Order* [entered 5/26/23]  authorizing

Dinsmore firm to seize the signed paper Greyson-Phoenix Contract

from Greyson's offices:  There is NO Such Language in Dkt.13;

Dinsmore firm illegally seized the Contract from Greyson……........8

7

  E.  Trustee's Fifth Erroneous Argument:  Trustee's Part of Stipulation is Error,

in alleging Greyson Fails to Cite Authority:  FRCP Rule 34 [FRBP Rule

7034]—cited in Greyson's *Request to Produce Documents* served on

Trustee--is all the authority Greyson needed……........................................9

12

II.    Everything Trustee's Part of Stipulation [Dkt.515, P.11] Says, at Lines 21-

24, is <u>False</u>..................................................................................................10

15

III.    Trustee/His Attorneys Did Not Make a "Diligent Search," or a "Reasonable

Inquiry"...................................................................................................12

18

  A. Freedman's Declaration Continues <u>Illegal use</u>, by Trustee Attorneys, of

Greyson emails, which  Dkt.13 did NOT authorize Trustee/his attorneys to

Seize, Search, or to Use for Trustee's Own Purposes; and admits Freedman

searched Greyson's Microsoft account data, which Dkt. 13 did NOT

authorize Trustee/his Attorneys to Seize, Search, or to Use for Trustee's

Own purposes.............................................................................................18

25

26

27

28

<u>REPLY</u> OF GREYSON TO TRUSTEE'S PORTION OF STIPULATION TO GREYSON'S MOTION [DKT.515
IN ADV.PROC, DKT.1209 IN LPG MAIN CASE] TO COMPEL TRUSTEE TO PRODUCE SIGNED
GREYSON-PHOENIX CONTRACT, SEIZED BY TRUSTEE'S ATTORNEYS IN 6/2/23 LOCKOUT AT
GREYSON, AND NOT RETURNED TO GREYSON, DESPITE GREYSON'S *REQUEST TO PRODUCE
DOCUMENTS*  SERVED 2/29/24;DECLS OF  KELLEY, OROZCO, J. TRINH, H.TRINH & K. MARCH.    v

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

B. Freedman's Declaration Attaches an Incomplete, so  Misleading, Portion of Han Trinh's Deposition Transcript, by attaching p.174, but Omitting p.175 of Transcript..................................................................................21

IV.    Argument in Trustee's Part of Stipulation (p.21, Lines 8-19), that Greyson is Not Entitled to Collect its Administrative Claim from LPG's Bankruptcy Estate, is **Error**, for All the Reasons Greyson Fully Briefed Previously, at pp.41-52 of Greyson's Dkt.1127 Pleading....................................................22

V.    CONCLUSION................................................................................24

Declaration of Courtney Kelley.......................................................................28

Declaration of Israel Orozco, Esq..................................................................33

Declaration of Phuong Jayde Trinh aka Jayde Trinh....................................34

Declaration of Han Trinh……….………………………………………………..38

Declaration of Kathleen P. March, Esq...........................................................43

## Table of Authorities

Cases

*Huthnance v. D.C.*, 722 F.3d 371 (D.C. Cir. 2013).........................................................17

*In re Correra*, 589 B.R. 76 (Bankr. N.D. Tex. 2018)....................................................17

*In re Furrs Supermarkets, Inc.*, No. 7-01-10779 SA, 2008 WL 820076

    (Bankr. D.N.M. Mar. 21, 2008)..........................................................................17

Rules and Secondary Sources

FRCP Rule 34..................................................................................................................8-9

FRBP Rule 7034...............................................................................................................8-9

CD CA Bankruptcy Court LBR Rule 7026-1......................................................................9

CD CA Bankruptcy Court LBR Rule 9013-1(g)..................................................................2

The Rutter Group Practice Guide: Federal Civil Trials & Evidence (2023),

    ¶8:4953.8....................................................................................................................17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## GREYSON'S REPLY MEMORANDUM OF POINTS & AUTHORITIES

## I.    ALL 5 ARGUMENTS ARE ERROR, THAT TRUSTEE'S ATTORNEYS MAKE, AGAINST PRODUCING THE SEIZED PAPER COPY OF THE GREYSON-PHOENIX CONTRACT

On 5/7/24, Greyson Law Center PC ("Greyson") filed Greyson's Motion to compel Trustee Marshack/his attorneys and their field agents, to produce, to Greyson's counsel of record, the signed paper contract between Greyson and Phoenix Law, which Trustee's special counsel Dinsmore firm, and that firm's field agents, seized from Han Trinh's locked room in the Greyson offices, on 6/2/23, when those attorneys/field agents performed the Lockout of Greyson, pursuant to dkt.13 Lockout & Preliminary Injunction Order.  Greyson's Motion is filed twice:  filed as dkt.515, on 5/7/24,  in the adversary proceeding, and filed as dkt.1209, on 5/7/24,  in the LPG main bankruptcy case.  The Motion contains Trustee's portion of the required Stipulation of parties, in which Trustee opposes producing the seized paper contract.

Trustee's portion of Stipulation to Greyson's Motion makes **5 arguments**—**each in error**—why this Court should not order Trustee Marshack/his attorneys and field agents, to produce the signed paper contract between Greyson and Phoenix, which Trustee's special counsel, the Dinsmore firm, and its field agents, seized from Han Trinh's locked room in Greyson's offices, in the 6/2/23 Lockout of Greyson, performed by Dinsmore firm pursuant to Dkt.13, the *Lockout & Preliminary*

1
2
3
4

*Injunction Order.*  CD CB Bankruptcy Court LBR Rule 9013-1(g) authorizes Greyson to file this Reply, 7 days before hearing, which Greyson is doing.  This REPLY explains why each of Trustee's 5 arguments are error:

5
6
7
8
9
10

**A.   Trustee's First Erroneous Argument:  There was no "bad faith" meet and confer; Greyson counsel March and both Trustee's Law Firms, had Extensive Meet and Confer Emails, and Trustee's Attorneys Never Said, in Any of Those Emails, That They Wanted to Talk on Phone or In Person, Which Waived Any Argument That the Meet And Confer By Emails Was Inadequate**

11
12
13
14
15
16
17
18
19
20
21
22

**Exhibit C** to Declaration of Greyson counsel Kathleen P. March, Esq. to Greyson's Motion to Compel Production of the seized signed Greyson-Phoenix contact, with the required Stipulation of Issues, attaches the many "meet and confer" emails between March and Trustee Marshack's two law firms—Dinsmore & Shohl, LLP firm, and Marshack Hays firm—trying to get Trustee's attorneys to produce the signed paper Greyson-Phoenix Contract, which Dinsmore firm personnel seized in the 6/2/23 Lockout of Greyson, performed pursuant to Dkt.13 (5/26/23 Lockout & Preliminary Injunction Order), without Greyson having to move to compel production.

23
24
25
26
27

None of the emails from Trustee's attorneys requested to talk to March by phone or in person, so Trustee has **waived** any argument that the meet and confer was inadequate because it was done by email  (March Decl to this Reply).  March would have talked to Trustee's two firms of attorneys in person or by phone if either had

28

**REPLY** OF GREYSON TO TRUSTEE'S PORTION OF STIPULATION TO GREYSON'S MOTION [DKT.515 IN ADV.PROC, DKT.1209 IN LPG MAIN CASE] TO COMPEL TRUSTEE TO PRODUCE SIGNED GREYSON-PHOENIX CONTRACT, SEIZED BY TRUSTEE'S ATTORNEYS IN 6/2/23 LOCKOUT AT GREYSON, AND NOT RETURNED TO GREYSON, DESPITE GREYSON'S *REQUEST TO PRODUCE DOCUMENTS*  SERVED 2/29/24;DECLS OF  KELLEY, OROZCO, J.TRINH, H.TRINH, & K. MARCH.     **2**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

requested that. (March Decl to this Reply).  Neither did.  (March Decl)  March only

concluded the meet and confer, when neither Trustee firm responded to her final

emails, which are part of Exhibit C to March Decl to Greyson part of Motion to

Compel.  All "meet and confers" have been by email, that March participated in, in

LPG case, not by phone or in person.  (March Decl to this Reply).  Plus, email is more

accurate than phone, because emails allow the Court to see exactly what each side said

in meet and confer  (March Decl).  Trying to talk by phone or in person to firms which

wouldn't even respond to my emails, would have been futile.  (March Decl)

Moreover, the Local Rules that Trustee's part of Stipulation [dkt.515 in

AP/dkt.1209 in BK, pp.13-14] cites to are US District Court local rules, and the cases

cited are US District Court cases—not Bankruptcy Court local rules or bankruptcy

court cases—and therefore are  inapplicable.

**B.  <u>Trustee's Second Erroneous Argument</u>:  Trustee's Objections to**
**Producing the seized signed Greyson-Phoenix Contract,  are Invalid,**
**and are Impermissible "Stonewalling"**

Greyson's part of the Stipulation quotes Trustee's Response 2, responding to

Greyson's Request for Production of Documents 2 (the request requesting Trustee to

produce the signed, original Greyson-Phoenix contract).  Greyson's Request 2, and

Trustee's Response 2, are:

"**REQUEST FOR PRODUCTION NO. 2:**
Produce to Greyson, the fully signed written contract between Greyson Law
Center PC, and Phoenix Law Center--for Phoenix to pay Greyson $2,000 per

**REPLY** OF GREYSON TO TRUSTEE'S PORTION OF STIPULATION TO GREYSON'S MOTION [DKT.515
IN ADV.PROC, DKT.1209 IN LPG MAIN CASE] TO COMPEL TRUSTEE TO PRODUCE SIGNED
GREYSON-PHOENIX CONTRACT, SEIZED BY TRUSTEE'S ATTORNEYS IN 6/2/23 LOCKOUT AT
GREYSON, AND NOT RETURNED TO GREYSON, DESPITE GREYSON'S *REQUEST TO PRODUCE
DOCUMENTS*  SERVED 2/29/24;DECLS OF  KELLEY, OROZCO, J.TRINH, H.TRINH, & K. MARCH.    **3**

1  lawsuit, for Greyson attorneys to appear for Greyson, to defend Phoenix
2  clients in lawsuits in which Phoenix consumer debtor clients were being sued
3  for alleged unpaid consumer debts--which fully signed contract was seized from
   Han Trinh's locked office in Greyson's office (3345 Michelson Drive, Suite
4  400B, Irvine, CA 92612), in the 6/2/23 Lockout.

5  **RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**
6  Objection. Vague and ambiguous. Lacks foundation. Federal Rules of Evidence
   section 901. Argumentative, misstates evidence and misleading. Subject to and
7  without waiving said objections: After a diligent search and reasonable inquiry
8  **no such document exists nor has it ever existed based on representations by**
   **Phoenix Law, PC's managing director, William Ty Carss,** who was the only
9  person who would have been authorized to sign such a contract on behalf of
10 Phoenix Law, PC absent a forgery."

11
12 Greyson's portion of the Stipulation explains in detail—and Trustee's portion of
13 Stipulation fails to rebut—that it is an invalid excuse for failing to produce the seized
14 signed contract, "based on representations by … Ty Carss".
15
16    Trustee's Opposition [dkt.1105], to Greyson's administrative claim Motion
17 [dkt.676], does not deny that Dinsmore firm attorneys/field agents seized the signed
18 Greyson-Phoenix contract, and does not deny they have it.   Han Trinh's Declaration
19
20 that is dkt.1128 signed by Han Trinh on 4/18/24, and filed 4/18/24, as part of
21 Greyson's Reply to Trustee's Opposition to Greyson's Motion [dkt.676] for allowance
22 and payment of administrative claim, at ¶¶36-42 of that Declaration, discusses both
23
24 signing of the Greyson-Phoenix contract, and Trustee personnel seizing the signed the
25 Greyson-Phoenix contract, from Han's locked room at Greyson's offices, in the 6/2/23
26 Lockout of Greyson.
27

28 _____
   **REPLY OF GREYSON TO TRUSTEE'S PORTION OF STIPULATION TO GREYSON'S MOTION [DKT.515
   IN ADV.PROC, DKT.1209 IN LPG MAIN CASE] TO COMPEL TRUSTEE TO PRODUCE SIGNED
   GREYSON-PHOENIX CONTRACT, SEIZED BY TRUSTEE'S ATTORNEYS IN 6/2/23 LOCKOUT AT
   GREYSON, AND NOT RETURNED TO GREYSON, DESPITE GREYSON'S *REQUEST TO PRODUCE
   DOCUMENTS* SERVED 2/29/24;DECLS OF  KELLEY, OROZCO, J.TRINH, H.TRINH, & K. MARCH.    4**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

However, so that the Court and counsel will not have to go dig out Han's dkt.1128 Declaration, the relevant paragraphs 36-42 of Han's Dkt.1128 Declaration are "pasted" verbatim, into Han's Declaration to this Reply, for convenience.  Han attests ¶¶36-42 were true on 4/18/24, and are still true on 6/4/24, the date Han signs and attests to her Declaration to this Reply.

Trustee is required to produce that seized signed Greyson-Phoenix document, regardless of what Ty Carss says about the document.  Note that Response 2 does NOT reveal what (if any) "representations" Ty Carss made, and note there is no Declaration of Ty Carss to Trustee's part of the Stipulation to Greyson's [dkt.515 in adv proc/dkt.1209 in LPG main case] Motion to Compel production of that document.

As Greyson counsel March pointed out in meet and confer emails to Trustee's attorneys that are in **Exhibit C** to March Decl to Greyson part of Stipulation, Trustee's attorneys alleging the seized signed contract is "fraudulent" or a "forgery" does **not excuse Trustee's attorneys from producing the seized contract**.  Trustee's part of Stipulation has no authority that excuses producing the seized signed contract, based on Trustee arguing it is a fraudulent or a forger.   Refusing to produce the seized signed contract, because  Trustee alleges that signed contract is fraudulent or a forgery, is just improper "stonewalling".

## C. **Trustee's Third Erroneous Argument**: Ludicrous for Trustee's Part of Stipulation to Claim Trustee's Response 2 is "Complete and Straightforward"; It is Neither; It is Improper "Stonewalling"

**REPLY** OF GREYSON TO TRUSTEE'S PORTION OF STIPULATION TO GREYSON'S MOTION [DKT.515 IN ADV.PROC, DKT.1209 IN LPG MAIN CASE] TO COMPEL TRUSTEE TO PRODUCE SIGNED GREYSON-PHOENIX CONTRACT, SEIZED BY TRUSTEE'S ATTORNEYS IN 6/2/23 LOCKOUT AT GREYSON, AND NOT RETURNED TO GREYSON, DESPITE GREYSON'S *REQUEST TO PRODUCE DOCUMENTS*  SERVED 2/29/24;DECLS OF  KELLEY, OROZCO, J.TRINH, H.TRINH, & K. MARCH.    **5**

1    For the reasons explained in **B**. immediately supra, it is ludicrous for Trustee's

2    part of the Stipulation to Claim Trustee's Response 2 is "complete and straight

3

4    forward.  What Response 2 says is invalid, because whatever Ty Carss may or may

5    not have "represented" (**no** content stated for what Ty Carss allegedly "represented"

6    and **no** Ty Carss Declaration to Trustee's part of Stipulation), does NOT excuse

7

8    Trustee's attorneys/field agents from producing the seized Contract.

9       **D.**  **Trustee's Fourth Erroneous Argument: Trustee's part of the**

10           **Stipulation alleging the signed Greyson-Phoenix contract is NOT**

11           **Relevant is Obvious Error, Failing to Rebut Greyson's Part of**

12           **Stipulation, Which Explains in Detail, Why the Seized Contract Is**

13           **Highly Relevant to Both Greyson's Administrative Claim Motion, And**

14           **to Defending Against the Allegation in Trustee's Adversary Proceeding**

15           **that Money Paid to Greyson (for Work) was a Fraudulent Transfer**

16   Greyson's part of the Stipulation explains the Greyson-Phoenix contract is

17   **highly relevant** to proving Greyson's [dkt.676] administrative claim motion, that

18

19   Phoenix (alter ego of debtor LPG) owes Greyson $2,000 for each case in which

20   Greyson attorneys appeared, at Phoenix' request, to defend Phoenix consumer clients,

21

22   at Phoenix' request, in state court law suits where those consumers were being sued

23   for alleged unpaid debts.

24      Greyson's part of the Stipulation additionally explains that the Greyson-

25   Phoenix contract is highly relevant to Greyson defending against the allegation in

26

27   Trustee's adversary proceeding that money Greyson was paid constituted a fraudulent

28
___

**REPLY** OF GREYSON TO TRUSTEE'S PORTION OF STIPULATION TO GREYSON'S MOTION [DKT.515
IN ADV.PROC, DKT.1209 IN LPG MAIN CASE] TO COMPEL TRUSTEE TO PRODUCE SIGNED
GREYSON-PHOENIX CONTRACT, SEIZED BY TRUSTEE'S ATTORNEYS IN 6/2/23 LOCKOUT AT
GREYSON, AND NOT RETURNED TO GREYSON, DESPITE GREYSON'S *REQUEST TO PRODUCE
DOCUMENTS*  SERVED 2/29/24;DECLS OF  KELLEY, OROZCO, J.TRINH, H.TRINH, & K. MARCH.   **6**

1  conveyance, because Greyson was being paid a (small by comparison) amount of

2  money Greyson for work Greyson attorneys did, for defending Phoenix clients in state

3

4  court suits, and being paid for work does not constitute a fraudulent convenance.

5  　　　Trustee's portion of the Stipulation **fails to refute either** of these grounds of

6  high relevance.

7

8  　　　In addition, Trustee's Opposition [dkt.1105, filed 4/11/24] to Greyson's Motion

9  [dkt.676] for Allowance and Payment of Administrative Claim,  **did not deny** that

10 Dinsmore personnel had seized the paper copy of the signed Greyson-Phoenix

11

12 contract in the 6/2/23 Lockout at Greyson's office, and **did not deny** that Trustee/his

13 attorneys and field agents had possession of the seized signed contract.  But despite

14 not denying Trustee/his attorneys seized, and still possess, the signed Greyson-

15

16 Phoenix contract, Trustee's Opposition [dkt.1105 at p.8, line 1] disingenuously

17 argues, as a grounds for denying Greyson's Motion, that Greyson has "not provided a

18 copy of its alleged contract," **knowing Greyson can't provide the contract, because**

19

20 **Dinsmore firm seized and has the signed Greyson-Phoenix contract**.  Trustee's

21 Opposition trying to defeat Greyson's dkt.676 Motion, because Greyson has not

22 produced the contract—which Dinsmore firm personnel seized at Greyson—makes it

23

24 **highly relevant** to get the seized contract back from Dinsmore firm, and Greyson

25 serving its Request to Produce Documents on Trustee/his attorneys is the proper way

26

27 to get the seized contract back.

28 _____
**REPLY OF GREYSON TO TRUSTEE'S PORTION OF STIPULATION TO GREYSON'S MOTION [DKT.515
IN ADV.PROC, DKT.1209 IN LPG MAIN CASE] TO COMPEL TRUSTEE TO PRODUCE SIGNED
GREYSON-PHOENIX CONTRACT, SEIZED BY TRUSTEE'S ATTORNEYS IN 6/2/23 LOCKOUT AT
GREYSON, AND NOT RETURNED TO GREYSON, DESPITE GREYSON'S *REQUEST TO PRODUCE
DOCUMENTS* SERVED 2/29/24;DECLS OF  KELLEY, OROZCO, J.TRINH, H.TRINH, & K. MARCH.    7**

1
2
3
4
5

The inference this Court should properly draw, from Trustee/his attorneys "stonewalling" on returning the seized signed Greyson-Phoenix contract, based on invalid excuses, is that they have the seized signed Greyson-Phoenix contract, but do not want to produce it, because it is damaging to Trustee's position.

6
7
8
9
10
11

**1. Trustee/Dinsmore Firm Did Not Identify Any Language in the Dkt.13 Lockout & Preliminary Injunction Order, entered 5/26/23, which authorizing Dinsmore firm to seize the signed paper Greyson-Phoenix Contract from Greyson's offices: There is NO Such Language in Dkt.13; Dinsmore firm illegally seized the Contract from Greyson**

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

The Dkt.13 *Lockout & Preliminary Injunction Order* did NOT authorize Trustee/Dinsmore firm/its field agents to seize the signed paper Greyson-Phoenix contract. Trustee's portion of Stipulation does **not** claim that Dinsmore firm/its field agents, seizing Greyson's signed Greyson-Phoenix contract, on 6/2/23, was authorized by Dkt.13. (March Decl to this Reply). The only part of Dkt.13 which ordered anything about Greyson is the Lockout portion of Dkt.13 (pp.8, line 7 to p.9 line 11), and that portion of the Order does NOT authorize seizing any contracts between Greyson and other entities, it doesn't authorize seizing any paper documents whatsoever. (March Decl) Dinsmore firm/its field agents, committed **conversion** of Greyson's property, when they seized the signed paper Greyson-Phoenix contract, as the only Order they had on 6/2/23 was Dkt.13, and Dkt.13 did NOT authorize seizing that contract. (March Decl)

28

**REPLY** OF GREYSON TO TRUSTEE'S PORTION OF STIPULATION TO GREYSON'S MOTION [DKT.515 IN ADV.PROC, DKT.1209 IN LPG MAIN CASE] TO COMPEL TRUSTEE TO PRODUCE SIGNED GREYSON-PHOENIX CONTRACT, SEIZED BY TRUSTEE'S ATTORNEYS IN 6/2/23 LOCKOUT AT GREYSON, AND NOT RETURNED TO GREYSON, DESPITE GREYSON'S *REQUEST TO PRODUCE DOCUMENTS* SERVED 2/29/24;DECLS OF KELLEY, OROZCO, J.TRINH, H.TRINH, & K. MARCH.    8

1
2
3
4
5

There can be no doubt that an illegally seized item (here the signed paper copy of the Greyson-Phoenix contact) must be ordered returned to Greyson,  by granting Greyson's Motion to Compel Trustee/his attorneys to produce that seized paper contract to Greyson's counsel.

6
7
8
9

**E.  Trustee's Fifth Erroneous Argument:  Trustee's Part of Stipulation is Error, in alleging Greyson fails to Cite Authority; FRCP Rule 34 [FRBP Rule 7034]—cited in Greyson's *Request to Produce Documents* served on Trustee--is All the Authority Greyson Needed**

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

Trustee's part of Stipulation is error that Greyson has no authority.  March Decl to motion in chief attaches Greyson's FRCP Rule 34 [FRBP Rule 7034] request to produce documents.  Trustee's portion of the Stipulation does not deny that Greyson had a right to serve its FRBP Rule 7034 Request to produce documents.  Serving a FRCP Rule 34 [FRBP Rule 7034] request to produce documents entitled Greyson to have Trustee/his attorneys produce the documents requested in Greyson's Request to Produce documents.  That is all the authority that Greyson needs to be entitled to production of the signed paper copy of the Greyson-Phoenix contract that Dinsmore firm/its field agents seized at Greyson on 6/2/23. The problem here is not lack of law. The problem is that Trustee's attorneys dishonestly **stonewalled** against producing the seized paper contract.

25
26
27

FRCP Rule 34 [FRBP Rule 7034] entitled Greyson to serve Greyson's FRCP Rule 34 [FRBP Rule 7034] Request to Produce Documents on Trustee.  When

28

**REPLY** OF GREYSON TO TRUSTEE'S PORTION OF STIPULATION TO GREYSON'S MOTION [DKT.515 IN ADV.PROC, DKT.1209 IN LPG MAIN CASE] TO COMPEL TRUSTEE TO PRODUCE SIGNED GREYSON-PHOENIX CONTRACT, SEIZED BY TRUSTEE'S ATTORNEYS IN 6/2/23 LOCKOUT AT GREYSON, AND NOT RETURNED TO GREYSON, DESPITE GREYSON'S *REQUEST TO PRODUCE DOCUMENTS*  SERVED 2/29/24;DECLS OF  KELLEY, OROZCO, J.TRINH, H.TRINH, & K. MARCH.    **9**

Trustee's attorneys "stonewalled" on producing the seized signed Greyson-Phoenix

contract,  Greyson was entitled to move to compel production, pursuant to CD CA

Bankruptcy Court LBR Rule 7026-1, with the Stipulation of each party's position, as

required by CD CA Bankruptcy Court LBR Rule 7026-1 (cited in title of Motion to

Compel).

It is backwards that Trustee's OPP alleges Greyson's counsel should be

sanctioned, for moving to compel, when it is the improper "stonewalling" of Trustee's

attorneys, refusing to produce the seized document, based on multiple diverse invalid

excuses, that has necessitated Greyson moving to compel production.  If anyone

should be sanctioned, its Dinsmore firm, not Greyson or Greyson's counsel:

Dinsmore firm acted illegally, in seizing the signed Greyson-Phoenix contract at

Greyson's office on 6/2/23, because Dkt.13 did not authorize seizing that contract,

which was property of Greyson.  Then then Dinsmore firm and Marshack Hays

stonewalled on returning the seized contract to Greyson, necessitating Greyson to

move to compel production.   (All in March Decl hereto)


## II.    EVERYTHING TRUSTEE'S PART OF STIPULATION [DKT.515, P.11], SAYS, AT LINES 21-24, IS <u>FALSE</u>

Everything Trustee's part of Stipulation [dkt.515,p.11, lines 21-24] says is false,

and that falsity is a good summary of why Trustee's position is improper

1  stonewalling.  Trustee's part of Stipulation [dkt.515, p.11, lines 21-24] states:

2  "On the one hand, the Trustee  cannot produce a document that does not exist,
3  **absent fraud or forgery**. Similarly, the Trustee cannot produce a document **not
   its possession, custody and control** after a **diligent search and reasonable
4  inquiry**.

5

6  First, saying Trustee cannot produce a document that does not exist, "absent
7
8  fraud or forgery," is NOT saying the document does NOT exist.  It is saying the

9  document exists (the signed paper Greyson-Phoenix contract, which Dinsmore firm

10 attorney Serrano and his field agents seized at Greyson in the 6/2/23 lockout), but
11
12 Trustee/his attorneys allege that document was the product of fraud or forgery.  So

13 claiming does not excuse them from producing the document.  Trustee/his attorneys

14 must produce it and then they can allege the signed contract is fraud or forgery.
15
16 Second, saying Trustee "cannot produce a document not in its possession, custody

17 or control, after a diligent search and reasonable inquiry" is a **false** statement, because

18 there was no "diligent search" or "reasonable inquiry", for the reasons discussed in
19
20 **III.** immediately infra**.**

21 Dinsmore firm filing only the Declaration of Dinsmore attorney Freedman, who
22
23 was **not present** at the 6/2/23 lockout, and failing to file declarations of the five

24 Dinsmore persons (Dinsmore attorney Serrano, and Dinsmore field agents Russell

25 Squires, Gary DePew, Alex Rubin and Lori Ensley) **who did the lockout** at Greyson
26
27 on 6/2/23, fails to prove there was a diligent search or reasonable inquiry.  What this

28

**REPLY OF GREYSON TO TRUSTEE'S PORTION OF STIPULATION TO GREYSON'S MOTION [DKT.515
IN ADV.PROC, DKT.1209 IN LPG MAIN CASE] TO COMPEL TRUSTEE TO PRODUCE SIGNED
GREYSON-PHOENIX CONTRACT, SEIZED BY TRUSTEE'S ATTORNEYS IN 6/2 LOCKOUT AT
GREYSON, AND NOT RETURNED TO GREYSON, DESPITE GREYSON'S *REQUEST TO PRODUCE
DOCUMENTS* SERVED 2/29/24;DECLS OF  KELLEY, OROZCO, J.TRINH, H.TRINH, & K. MARCH.    11**

1
2
3
4   situation proves is that Dinsmore firm cannot submit declarations of the people who

did the lockout, because those persons seized the signed Greyson-Phoenix contract,

and would have to perjure themselves to deny its existence/seizure.  See cases cited at

5   p.17-18 infra, that proper inference to draw regarding Dinsmore firm filing only

6   theDeclaration of Freedman, who was NOT present at the lockout, instead of filing the

7
8   Declarations of Dinsmore attorney Serrano and the 4 Dinsmore field agents,  who

9   performed the 6/2/23 lockout at Greyson, is that the Declarations of Serrano and the 4

10  field agents would be damaging to Dinsmore's position.

11

12  ### III.    TRUSTEE/HIS ATTORNEYS DID NOT MAKE A "DILIGENT
13          SEARCH," OR A "REASONABLE INQUIRY"
14

15          The only Declaration to Trustee's part of the dkt.515 Stipulation is the

16  Declaration of Dinsmore attorney Jeremy Freedman, who does not allege in his

17  declaration that he was present at the 6/2/23 lockout of Greyson.  The Declaration of

18  Greyson employee Courtney Kelley to this Reply, attaches, as **Exhibit A**, a photo

19  showing what Trustee personnel were present at the 6/2/23 lockout, and identifies

20
21  them:  Jonathan Serrano, Esq. of Dinsmore firm, two police officers, and Dinsmore

22  field agents Gary DePew, Russell Squires, Lori Ensley and Alex Rubin.

23

24          As Freedman was NOT present at the 6/2/23 lockout of Greyson from

25  Greyson's office, Freedman has **no personal knowledge** regarding what was seized

26  from Greyson's offices in that lockout, and so cannot opine as to what did or did not

27

28  ---

**REPLY** OF GREYSON TO TRUSTEE'S PORTION OF STIPULATION TO GREYSON'S MOTION [DKT.515
IN ADV.PROC, DKT.1209 IN LPG MAIN CASE] TO COMPEL TRUSTEE TO PRODUCE SIGNED
GREYSON-PHOENIX CONTRACT, SEIZED BY TRUSTEE'S ATTORNEYS IN 6/2/23 LOCKOUT AT
GREYSON, AND NOT RETURNED TO GREYSON, DESPITE GREYSON'S *REQUEST TO PRODUCE
DOCUMENTS*  SERVED 2/29/24;DECLS OF  KELLEY, OROZCO, J.TRINH, H.TRINH, & K. MARCH.    **12**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

occur.  Along with filing this Reply, Greyson is filing Greyson's *Evidentiary Objection to and Request to Strike* Freedman's Declaration, for lack of personal knowledge, inability to provide foundation, and being hearsay with no hearsay exception.  It is being filed as a separately captioned pleading.

Kelley's Declaration attests that Kelley was employed by Greyson on 6/2/23, supervising a group of other employees, and that Kelley was present at Greyson throughout the lockout on 6/2/23.  Kelley identifies the Trustee personnel who performed the lockout at Greyson on 6/2/23.

As shown in the photo that is **Exhibit A** to Kelley's Declaration, taken during the 6/2/23 lockout, showing all the Trustee personnel that did the lockout at Greyson on 6/2/23, Kelley identifies the man at the far right of the photo as being Dinsmore attorney Jonathan Serrano.  To Serrano's left is Dinsmore field agent Lori Ensley (in the light-colored blazer), with two police officers standing behind her.  Continuing left in the photo is Russell Squires (man looking toward Ensley).  To the left of Squires is Gary DePew.   Kelley's Declaration attests the Alex Rubin was also present, during the lockout, and that the person standing next to Serrano (only the paper the person is holding is visible) is Alex Rubin.  Courtney Kelley talked to Serrano on 6/2/23, and talked at length with field agents Lori Ensley and Russell Squires, and determined  the identities of all the Dinsmore personnel who performed the 6/2/23 lockout at Greyson, as Kelley's Declaration to this Reply attests.

---

**REPLY** OF GREYSON TO TRUSTEE'S PORTION OF STIPULATION TO GREYSON'S MOTION [DKT.515 IN ADV.PROC, DKT.1209 IN LPG MAIN CASE] TO COMPEL TRUSTEE TO PRODUCE SIGNED GREYSON-PHOENIX CONTRACT, SEIZED BY TRUSTEE'S ATTORNEYS IN 6/2/23 LOCKOUT AT GREYSON, AND NOT RETURNED TO GREYSON, DESPITE GREYSON'S *REQUEST TO PRODUCE DOCUMENTS*  SERVED 2/29/24;DECLS OF  KELLEY, OROZCO, J.TRINH, H.TRINH, & K. MARCH.    **13**

1
2
3
4

Kelley was present at Greyson not just on 6/2/23, but also from 6/2/23 to

6/12/23, and never observed Dinsmore attorney Jeremy Freedman at the Greyson

offices.

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

The Declaration of Greyson's IT director, Justin Nguyen, filed 1/8/24 as

dkt.325-1, also attests that Dinsmore attorney Serrano was present at the 6/2/23

lockout.   That Nguyen Declaration attests during the 6/2/23 lockout, Nguyen sat with

attorney Serrano, in Greyson's offices, and gave Serrano the passwords to Greyson's

Microsoft [M365 suite] account—which Trustee attorney Celentino had demanded

that Han Trinh instruct Nguyen provide to Serrano, telling Han the [dkt.13] Order

required her to do so—to enable Serrano to get into Greyson's full Microsoft [M365

suite] account.   Nguyen attests Serrano got into Greyson's Microsoft account, using

the passcodes that Nguyen provided, then immediately changed the passwords,

locking Greyson out of Greyson's Microsoft account, a lockout which has continued

from 6/2/23 to present.   Nothing in dkt.13 authorized Trustee to seize, and lock

Greyson out of, Greyson's whole Microsoft [M365 suite] account.   Celentino telling

Han Trinh that Han was required to have Greyson's IT director provide the codes to

Greyson's Microsoft account to Serrano was **false**.

24
25
26
27

Attorney Israel Orozco's Declaration to this Reply attests that on 6/2/23,

Orozco observed Serrano, and two men with Serrano—whom Orozco identifies as

Serrano's field agents Russell Squires and Alex Rubin—waiting at the locked door of

28

**REPLY** OF GREYSON TO TRUSTEE'S PORTION OF STIPULATION TO GREYSON'S MOTION [DKT.515
IN ADV.PROC, DKT.1209 IN LPG MAIN CASE] TO COMPEL TRUSTEE TO PRODUCE SIGNED
GREYSON-PHOENIX CONTRACT, SEIZED BY TRUSTEE'S ATTORNEYS IN 6/2/23 LOCKOUT AT
GREYSON, AND NOT RETURNED TO GREYSON, DESPITE GREYSON'S *REQUEST TO PRODUCE
DOCUMENTS*  SERVED 2/29/24;DECLS OF  KELLEY, OROZCO, J.TRINH, H.TRINH, & K. MARCH.    **14**

1
2
3
4

Han Trinh's room in the Greyson offices, while a worker with tools was opening the

locked door to Han Trinh's room.  Orozco did not observe what Serrano, Squires or

Rubin took from Han's room, once the worker got the lock unlocked.

5
6
7
8
9
10
11
12

Conducting—and proving—that Trustee had done a "diligent search" and

"reasonable inquiry" would require **filing Declarations from Dinsmore attorney**

**Serrano, and from Dinsmore field agents Russell Squires, Gary Depew, Alex**

**Rubin, and Lori Ensley,** attesting what each of them did, and what each of them

seized and saw seized, in the 6/2/23 lockout.  Those are the Trustee attorney and field

agents **who performed the 6/2/23 lockout at Greyson, not Freedman.**  As the

13
14
15
16

**Exhibit A** photo of the lockout,  to Kelley's Declaration shows, Freedman was NOT

present at the 6/2/23 lockout.  Nor does Freedman's Declaration to Trustee's part of

Dkt.515 Stipulation, claim Freedman was present at the 6/2/23 lockout

17
18
19
20
21
22
23
24

Freedman's Declaration to Trustee's part of the dkt.515 Stipulation does NOT

allege that Freedman talked to Serrano.  Nor does it allege Freedman talked to

Dinsmore field agents Russell Squires, Gary DePew, or Alex Rubin,  about what each

did, and what each seized, at the 6/2/23 lockout at Greyson. The only field agent

Freedman's Declaration says Freedman spoke to was Lori Ensley [which he misspells

as Hensely], none of the others,

25
26
27

"Diligent search" and "reasonable inquiry" cannot be proven without filing

Declarations of Dinsmore attorney Serrano, and of field agents Russell Squires, Gary

28

**REPLY** OF GREYSON TO TRUSTEE'S PORTION OF STIPULATION TO GREYSON'S MOTION [DKT.515
IN ADV.PROC, DKT.1209 IN LPG MAIN CASE] TO COMPEL TRUSTEE TO PRODUCE SIGNED
GREYSON-PHOENIX CONTRACT, SEIZED BY TRUSTEE'S ATTORNEYS IN 6/2/23 LOCKOUT AT
GREYSON, AND NOT RETURNED TO GREYSON, DESPITE GREYSON'S *REQUEST TO PRODUCE
DOCUMENTS*  SERVED 2/29/24;DECLS OF  KELLEY, OROZCO, J.TRINH, H.TRINH, & K. MARCH.    **15**

DePew, Alex Rubin and Lori Ensley, who performed the 6/2/23 lockout at Greyson's office.

But except for saying Freedman spoke to Lori Ensley, Freedman's Declaration does not even allege that Freedman spoke to Serrano, Squires, DePew, or Rubin.

Failure to talk to all these people, who did the 6/2/23 lockout, is neither a "diligent search," nor "reasonable inquiry" as to what occurred and what was seized at Greyson's offices in the 6/2/23 lockout.

Only by obtaining and filing Declarations of Dinsmore firm personnel—Serrano, Squires, and Rubin, and any additional Dinsmore firm personnel who participated in the 6/2/23 Lockout at Greyson's office—could Freedman, and Trustee's other attorneys (the Marshack Hays firm) have made a "diligent search" and "reasonable inquiry" as to what occurred and as to what was seized at Greyson's offices in the 6/2/23 lockout.

Freedman's Declaration to Trustee's part of Stipulation is **not** admissible, for lack of lack of personal knowledge, inability to lay foundation, and being hearsay with no hearsay exception.

Dinsmore firm obviously has control over Dinsmore firm attorney Serrano, and over the Dismore firm's field agents. Consequently, the proper inference to draw, regarding Dinsmore firm's **failure** to file Declarations of the persons who were present at, and performed the 6/2/23 lockout at Greyson's office—attorney Serrano

1
2
3
4   and the field agents—is that attorney Serrano and the field agents with Serrano, seized

the signed paper Greyson-Phoenix contract from Han's room at Greyson, after the

worker unlocked Han's locked room at Greyson on 6/2/23, and that it would be

5   **perjury** for Serrano/the field agents to attest they did NOT seize the signed paper
6
7   Greyson-Phoenix contract from Han's room.  Supplying weaker evidence (here, the
8
inadmissible Freedman Declaration), instead of supplying stronger evidence (here, the
9
10   Declarations of attorney Serrano, and the 4 field agents, who were present at and

performed the 6/2/23 lockout) raises the inference the stronger evidence would be
11
12   damaging to the party (here Trustee) which failed to supply the stronger evidence in
13
its control.  *Huthnance v. D.C.*, 722 F.3d 371, 378 (D.C. Cir. 2013) states this rule:
14
15      "The missing evidence rule provides that "when a party has relevant evidence
16      within his control which he fails to produce, that failure gives rise to an
        inference that the evidence is unfavorable to him." *Int'l Union, United Auto.,*
17      *Aerospace & Agricultural Implement Workers of America (UAW) v. NLRB*
        *("Int'l Union")*, 459 F.2d 1329, 1336 (D.C.Cir.1972). The idea is that "all other
18      things being equal, a party will of his own volition introduce the strongest
19      evidence available to prove his case." *Id*. at 1338. Thus, **"[t]he production of**
        **weak evidence when strong is available can lead only to the conclusion that**
20      **the strong would have been adverse. Silence then becomes evidence of the**
21      **most convincing character**." *Interstate Circuit v. United States*, 306 U.S. 208,
        226, 59 S.Ct. 467, 83 L.Ed. 610 (1939) (internal citations omitted)."
22      [bold/underline added for emphasis]
23
24   Accord: *In re Correra*, 589 B.R. 76, 130–31 (Bankr. N.D. Tex. 2018) ("...when a
25
26   party fails to call a witness who may reasonably be assumed to be favorable to the

party, an adverse inference may be drawn regarding any factual question on which the
27
28

**REPLY** OF GREYSON TO TRUSTEE'S PORTION OF STIPULATION TO GREYSON'S MOTION [DKT.515
IN ADV.PROC, DKT.1209 IN LPG MAIN CASE] TO COMPEL TRUSTEE TO PRODUCE SIGNED
GREYSON-PHOENIX CONTRACT, SEIZED BY TRUSTEE'S ATTORNEYS IN 6/2/23 LOCKOUT AT
GREYSON, AND NOT RETURNED TO GREYSON, DESPITE GREYSON'S *REQUEST TO PRODUCE*
*DOCUMENTS*  SERVED 2/29/24;DECLS OF  KELLEY, OROZCO, J.TRINH, H.TRINH, & K. MARCH.    **17**

witness is likely to have knowledge."); *In re Furrs Supermarkets, Inc.*, No. 7-01-10779 SA, 2008 WL 820076, at \*9 (Bankr. D.N.M. Mar. 21, 2008); *see also* The Rutter Group Practice Guide: Federal Civil Trials & Evidence (2023), ¶8:4953.8.

### A. Freedman's Declaration Continues <u>Illegal Use</u>, by Trustee Attorneys, of Greyson emails, which  Dkt.13 did NOT authorize Trustee/his Attorneys to Seize, Search, or to Use for Trustee's Own Purposes; and Admits Freedman searched Greyson's Microsoft Account Data, which Dkt. 13 did NOT Authorize Trustee/his Attorneys to Seize, Search, or to Use for Trustee's Own Purposes

Freedman's references the 5/26/23 email from Greyson attorney Jayde Trinh to Greyson staff attorneys, which Alex Rubin's Declaration [dkt.325-4], attaches as Exhibit 9, at ¶12 of Rubin Decl. It was illegal for Rubin to attach that Jayde Trinh email, and it is illegal for Freedman's Declaration to reference that same 5/26/23 Jayde Trinh email.  Dkt.13 did NOT authorize Trustee/his attorneys to seize, search, and file for Trustee's own purposes, any Greyson emails.

Freedman's Declaration [part of Dkt.515] admits (p.2, line 27)  additionally attests that Freedman reviewed Greyson's Microsoft account.   Freedman did so illegally, because the 5/26/23 [Dkt.13] *Lockout & Preliminary Injunction Order* did <u>not</u> allow Trustee/his attorneys to seize, or search, or use documents from Greyson's Microsoft account for Trustee's own purposes.

Greyson filed Greyson's [Dkt.477, filed 4/2/24] *Evidentiary Objection to, and Request to Strike,* Alex Rubin's dkt.325-4 Declaration and the exhibits thereto,

**REPLY OF GREYSON TO TRUSTEE'S PORTION OF STIPULATION TO GREYSON'S MOTION [DKT.515 IN ADV.PROC, DKT.1209 IN LPG MAIN CASE] TO COMPEL TRUSTEE TO PRODUCE SIGNED GREYSON-PHOENIX CONTRACT, SEIZED BY TRUSTEE'S ATTORNEYS IN 6/2/23 LOCKOUT AT GREYSON, AND NOT RETURNED TO GREYSON, DESPITE GREYSON'S *REQUEST TO PRODUCE DOCUMENTS* SERVED 2/29/24;DECLS OF  KELLEY, OROZCO, J.TRINH, H.TRINH, & K. MARCH.    18**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

including moving to strike the 5/26/23 email from Jayde Trinh from being used by

Trustee, because Dkt.13 did not authorize Trustee to search Greyson emails or to use

them as Trustee exhibits.  That Objection/Request to Strike is valid, and should be

sustained by this Court.  Greyson's [dkt477] Evidentiary Objection and Request to

Strike Alex Rubin's Declaration, and Greyson emails, including Exhibit 9, the Jayde

Trinh 5/26/23 email, objects and requests to strike, on several grounds, as follows:


   ...Statements relating to Greyson's email accounts, and attaching emails
seized from Greyson's email accounts, are all inadmissible because they were
**seized, read and attached unlawfully**. Nothing in the Court's 5/26/23 [dkt.13]
Lockout Order/Preliminary Injunction, or in the 6/23/23 [dkt.70] Continuation
Order, allow Trustee or Trustee's field agents to seize and use, for Trustee's
own purposes, Greyson's 100+ email accounts or the emails in those accounts.
...
   The lockout portion of [dkt.13], at page 8, line 7 to page 9, line 11,
enjoins certain Greyson employees—Han Trinh, Jayde Trinh, and Scott
Eadie—from accessing emails. But nothing in the lockout order authorizes the
Celentino firm, or Celentino's field agents, to seize and use Greyson's emails or
data.
   Rubin lacks foundation to attach emails which he did not send or receive.
[FRE Rule 901(a); FRE Rule 602]
   The content of emails which Rubin did not send or receive is
inadmissible hearsay as regards Rubin, with no hearsay exception, who is
seeking to put them into evidence. [hearsay with no hearsay exception is
inadmissible, per FRE Rules 801 and 802]


   It is intentional misconduct,  that Freedman's Declaration [part of Dkt.515

Stipulation to Issues on Motion to Compel Production of the signed Greyson-Phoenix

**REPLY** OF GREYSON TO TRUSTEE'S PORTION OF STIPULATION TO GREYSON'S MOTION [DKT.515
IN ADV.PROC, DKT.1209 IN LPG MAIN CASE] TO COMPEL TRUSTEE TO PRODUCE SIGNED
GREYSON-PHOENIX CONTRACT, SEIZED BY TRUSTEE'S ATTORNEYS IN 6/2/23 LOCKOUT AT
GREYSON, AND NOT RETURNED TO GREYSON, DESPITE GREYSON'S *REQUEST TO PRODUCE
DOCUMENTS*  SERVED 2/29/24;DECLS OF  KELLEY, OROZCO, J.TRINH, H.TRINH, & K. MARCH.    **19**

contract] **illegally discusses** Jayde's 5/26/23 email to Greyson staff attorneys, **a**

**second time**, because Greyson's [Dkt.477, filed 4/2/24] *Evidentiary Objection to, and*

*Request to Strike,* Alex Rubin's dkt.325-4 Declaration and the exhibits thereto, put

Trustee/his attorneys on notice that seizing, searching, and using Greyson emails for

Trustee's purposes is **illegal**.

Though Dkt.13 [Lockout and Preliminary Injunction Order], in the "Lockout"

section of the Order,  enjoins various Greyson persons from accessing their emails,

Dkt.13 does **NOT** authorize Trustee/his attorneys to seize, search, or use Greyson's

emails for Trustee's own purposes.  Dinsmore firm drafted Dkt.13, and lodged it with

the Court, so Dinsmore firm knows dkt.13 does NOT authorize what they are doing.

Jayde Trinh's Declaration to this Reply explains that Jayde's 5/26/23 email to

Greyson staff attorneys was to instruct the staff attorneys how to act, and was not

required to give them detail they did not need.  But the fact is that Rubin and

Freedman have **illegally** attached, and commented on, Jayde's 5/26/23 email, and

which should be stricken for illegal use, and if it is stricken, then paragraph 10 to

Jayde Trinh's Declaration to this Reply can be stricken, because there will be no need

to comment on the 5/26/23 email.

**B. Freedman's Declaration Attaches an Incomplete, and therefore**
**Misleading, Portion of Han Trinh's Deposition Transcript, by attaching**
**p.174, but Omitting p.175 of Transcript**

REPLY OF GREYSON TO TRUSTEE'S PORTION OF STIPULATION TO GREYSON'S MOTION [DKT.515
IN ADV.PROC, DKT.1209 IN LPG MAIN CASE] TO COMPEL TRUSTEE TO PRODUCE SIGNED
GREYSON-PHOENIX CONTRACT, SEIZED BY TRUSTEE'S ATTORNEYS IN 6/2/23 LOCKOUT AT
GREYSON, AND NOT RETURNED TO GREYSON, DESPITE GREYSON'S *REQUEST TO PRODUCE*
*DOCUMENTS*  SERVED 2/29/24;DECLS OF  KELLEY, OROZCO, J.TRINH, H.TRINH, & K. MARCH.    20

1    The Declaration of Jeremy Freedman to Trustee's part of the Dkt.515

2    Stipulation of Issues attaches as Exhibit 2 to Freedman Decl., certain pages of Han

3

4    Trinh's deposition transcript.  Exhibit 2 attaches p.174 of Han Trinh's deposition

5    transcript, **but improperly fails to attach p.175** of Han Trinh's deposition transcript.

6    At p.174 of her deposition transcript, Han Trinh is being questioned about the signed

7

8    Greyson-Phoenix $2,000 per lawsuit contract.  The last line of p.174, and the first line

9    of p.175, asks the question:

10        "Q:  So nobody that was employed by Greyson witnessed the signature of this

11        contract?"

12

13   Han  answers this question on **page 175**, at lines 2-6:

14        A    Oh, witness the signature?  Yes.
         Q    Who was that person that witnessed it?
15        A    Max Chou.
         Q    Was Max Chou ever paid by Greyson?
16        A    He was an employee of Greyson."

17

18   Han's answers on p.175 are highly relevant, but are contrary to Trustee's (false)

19
     allegation that there is no signed Greyson-Phoenix contract, so Freedman improperly
20

21   omits page 175 from Freedman's Exhibit 2.  A copy of omitted page 175, of Han's

22   official Deposition transcript, is attached to the Declaration of Kathleen P. March,

23
     Esq. to this Reply,  as **Exhibit B**.
24

25       **IV.    ARGUMENT IN TRUSTEE'S PART OF STIPULATION (p.21, lines**

26            **8-19), THAT GREYSON IS <u>NOT</u> ENTITLED TO COLLECT ITS**

27

28   **REPLY** OF GREYSON TO TRUSTEE'S PORTION OF STIPULATION TO GREYSON'S MOTION [DKT.515
IN ADV.PROC, DKT.1209 IN LPG MAIN CASE] TO COMPEL TRUSTEE TO PRODUCE SIGNED
GREYSON-PHOENIX CONTRACT, SEIZED BY TRUSTEE'S ATTORNEYS IN 6/2/23 LOCKOUT AT
GREYSON, AND NOT RETURNED TO GREYSON, DESPITE GREYSON'S *REQUEST TO PRODUCE
DOCUMENTS*  SERVED 2/29/24;DECLS OF  KELLEY, OROZCO, J.TRINH, H.TRINH, & K. MARCH.    21

**ADMINISTRATIVE CLAIM FROM LPG'S BANKRUPTCY ESTATE, IS <u>ERROR</u>, FOR ALL THE REASONS GREYSON FULLY BRIEFED PREVIOUSLY, AT PP.41-52 OF GREYSON'S DKT.1127 PLEADING**

Trustee's part of the dkt.515 Stipulation of issues, at p.21, lines 8-19, is **<u>error</u>,** in arguing that this Court's dkt.365 Order (Order granting Trustee's Motion to Order the Dkt.77 "avoidance" Stipulation between Trustee and Phoenix), excuses the LPG bankruptcy estate for being liable to pay Greyson the $2,000 per lawsuit which LPG's alter ego, Phoenix, contracted, post-petition, to pay Greyson, for Greyson sending Greyson attorneys—at Phoenix's request—to appear to defend clients LPG had transferred to Phoenix, in over 2,480 state court suits where those clients were being sued on alleged debts.

Neither the Dkt.77 Stipulation between Trustee and Phoenix, in which Phoenix agreed to return all the LPG client files to LPG's bankruptcy estate, by "avoidance", nor the Dkt.365 Order which granted Trustee's Motion to approve that Stipulation as an Order, prevent the LPG's bankruptcy estate for being liable to pay Greyson the $2,000 per state court lawsuit that LPG alter-ego Phoenix had contracted to pay Greyson, each state court suit where Greyson attorneys appeared to defend Phoenix clients.

Greyson's Reply [dkt.1127, filed 4/18/24 in LPG bankruptcy case] to Trustee's Opposition to Greyson's Motion for Payment of Administrative Claim, at p.41-52 of

---

1   dkt.1127,  briefs the multiple reasons that Greyson is NOT bound by the Dkt.77

2   Stipulation between Trustee and Phoenix, including that a party which is not a

3
4   signatory to a stipulation is not bound by the Stipulation, and **Greyson was not a**

5   **signatory to the Dkt.77 Stipulation**.  The p.41-52 briefing also briefs that the

6   Dkt.365 Order, which granted Trustee's dkt.176 Motion to order the Dkt.77

7
8   Stipulation as an Order, **does not broaden** the parties bound by the Stipulation, which

9   are only Trustee and Phoenix.  It only makes the Stipulation an Order as to the

10  signatories.  Plus, Greyson's p.41-52 briefing briefs several additional reasons why

11
12  the LPG bankruptcy estate cannot evade its liability to pay for postpetition debts

13  incurred by LPG's alter ego Phoenix, for work which directly benefitted the LPG

14  bankruptcy estate.

15
16      Greyson's p.41-52 briefing in dkt.1127 (plus the Declarations to dkt.1127

17  attesting to failure of Trustee's attorneys to serve and notice Trustee's dkt.176 Motion

18  in compliance with what the Court ordered), is incorporated here by reference, as if set

19
20  forth in full.

21      For convenience, pages 41-52 of Greyson's briefing on these issues, in

22  Greyson's [Dkt.1127] pleading,  are attached to March Decl. to this Reply as **Exhibit.**

23
24  **A**

25      At the request of LPG's alter ego, Phoenix, Greyson sent Greyson attorneys to

26  appear in over 2,480 state court suits nationwide, to defend the clients Phoenix had

27

28  _____

**REPLY** OF GREYSON TO TRUSTEE'S PORTION OF STIPULATION TO GREYSON'S MOTION [DKT.515
IN ADV.PROC, DKT.1209 IN LPG MAIN CASE] TO COMPEL TRUSTEE TO PRODUCE SIGNED
GREYSON-PHOENIX CONTRACT, SEIZED BY TRUSTEE'S ATTORNEYS IN 6/2/23 LOCKOUT AT
GREYSON, AND NOT RETURNED TO GREYSON, DESPITE GREYSON'S *REQUEST TO PRODUCE
DOCUMENTS*  SERVED 2/29/24;DECLS OF  KELLEY, OROZCO, J.TRINH, H.TRINH, & K. MARCH.    **23**

1   received from LPG, in those suits.  That work benefitted LPG's bankruptcy estate,

2   because the clients were originally LPG clients, before they were fraudulently

3

4   transferred to LPG alter ego Phoenix, and LPG's bankruptcy estate got the client files

5   back from Phoenix, by avoidance.  The result was that Trustee Marshack was able to

6   sell the client files for millions of dollars, to Morning Law, in July 2023.

7

8

9   **V.    CONCLUSION**

10      Greyson has carried its burden of proving, by a preponderance of the evidence,

11
    that the Greyson-Phoenix contract was fully signed on or about 5/19/23; that it was in
12
    Han Trinh's locked room at Greyson; and that it was seized by Dinsmore attorney
13

14  Serrano and/or his field agents on 6/2/23,  after they had a worker unlock Han's

15  locked room at Greyson.
16

17      Greyson served Trustee Marshack with a proper Greyson *Request for*

18  *Production of Documents*, including that Request 2 specifically requested Trustee
19
    Marshack to produce the signed Greyson-Phoenix contract which was seized from
20

21  Greyson in the 6/2/23 lockout.  Trustee's Response was **invalid stonewalling**,

22  including Truste Response 2 says:
23

24      "After a diligent search and reasonable inquiry no such document exists nor has
        it ever existed **based on representations by Phoenix Law, PC's managing**
25      **director, William Ty Carss**..."

26

27

28

As discussed in this Reply at **III** supra, Trustee/Dinsmore firm has failed to prove there was a "diligent search and reasonable inquiry" about what documents were seized in the 6/2/23 lockout at Greyson. The only Declarant in support of Trustee's part of the Stipulation of issues on the Motion to Compel, is Dinsmore attorney Freedman, who was **not** present at the 6/2/23 Lockout at Greyson, and whose Declaration is inadmissible for lack of personal knowledge, inability to lay foundation for what Freedman alleges happened, and because everything Freedman alleges is inadmissible hearsay, which other people (allegedly) told Freedman, for which there is no hearsay exception.

*Greyson's Evidentiary Objection to, and Request to Strike Freedman's Declaration*, being filed along with this Reply as a separately captioned document, should be granted. For Trustee to prove what happened, at the 6/2/23 lockout at Greyson, would have required Trustee to file Declarations of the Dinsmore personnel who performed that lockout, which were Dinsmore attorney Serrano and Dinsmore field agents Russell Squires, Gary DePew, Alex Rubin and Lori Ensley. No such declarations were filed by Trustee/Dinsmore firm.

When Trustee's two sets of attorneys (Dinsmore firm, and Marshack Hays firm) each stonewalled on producing the signed paper Greyson-Phoenix contract, in meet and confer, Greyson properly moved to compel production by Greyson's motion to

---

**REPLY** OF GREYSON TO TRUSTEE'S PORTION OF STIPULATION TO GREYSON'S MOTION [DKT.515 IN ADV.PROC, DKT.1209 IN LPG MAIN CASE] TO COMPEL TRUSTEE TO PRODUCE SIGNED GREYSON-PHOENIX CONTRACT, SEIZED BY TRUSTEE'S ATTORNEYS IN 6/2/23 LOCKOUT AT GREYSON, AND NOT RETURNED TO GREYSON, DESPITE GREYSON'S *REQUEST TO PRODUCE DOCUMENTS* SERVED 2/29/24;DECLS OF KELLEY, OROZCO, J.TRINH, H.TRINH, & K. MARCH.    25

compel production of the seized contract which is dkt.515 in the adversary

proceeding, and which is dkt.1209 in the LPG main bankruptcy case.

Greyson is entitled to have the seized Contract returned to Greyson's counsel of

record.  Dinsmore attorney Serrano/his field agents should never have seized the

signed paper Greyson-Phoenix contract to start with:  Dkt.13 did **not** authorize

Trustee/his attorneys or their field agents to seize that signed paper contract between

Greyson and Phoenix from Greyson's offices in the 6/2/23 lockout.  That document

was property of Greyson, which Dkt.13 did NOT authorize taking.  It was seized it

**unlawfully** by Dinsmore attorney Serrano/his field agents, which was **conversion** of

Greyson's property.  It should have been returned immediately to Greyson (without

need for Greyson to serve Trustee with  Greyson's Request to Produce the signed

contract, because Dkt.13 did not authorize seizure of written contracts between

Greyson and Phoenix.

Trustee Marshack, his attorneys and their field agents, should be ordered to

immediately return the seized signed Greyson-Phoenix contract to Greyson's counsel

of record, The Bankruptcy Law Firm, PC, to attorney Kathleen P. March Esq.  of that

firm.

If anyone should be sanctioned, that would be the Dinsmore firm, for illegally

seizing the signed Greyson-Phoenix contract [with no authority for seizing it, which

was conversion of Greyson's property], and then stonewalling on producing the seized

1  signed contract,  when Greyson served Trustee with Greyson's *Request to Produce* the

2  seized signed contract, with the result that Greyson was forced to  move to compel

3
4  Trustee to produce the seized signed Greyson-Phoenix contract.

5  Dated: June 5, 2024                          THE BANKRUPTCY LAW FIRM, PC

6                                               __/s/ Kathleen P. March_____

7                                               By: Kathleen P. March, Esq
8                                               *Attorneys for Greyson Law Center, PC*
                                                *on its Motion and on this Reply*
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

# <u>DECLARATION OF COURTNEY KELLEY</u>

I, COURTNEY KELLEY, declare:

1. On 6/2/23, I was an employee of Greyson Law Center PC ("Greyson"), supervising a team of people. I was present at Greyson throughout 6/2/23, while Dinsmore firm attorney Jonathan Serrano Esq ("Serrano"), and field agents assisting Serrano, performed a "Lockout" of Greyson at Greyson's offices.

2. If called as a witness, I could and would testify accurately regarding the same things I attest to observing, in my herein Declaration.

3. I not only observed Serrano and the field agents perform the "Lockout" of Greyson, at Greyson's offices. I also spoke to attorney Serrano, at some length. I also spoke, for over an hour, with field agents Lori Ensley and Gary DePew.

4. **Exhibit A** is a photo that accurately shows attorney Serrano, and Dinsmore firm field agents Gary Depew, Russell Squires, and Lori Ensley, at Greyson's offices on 6/2/23, while they were performing the "Lockout" on 6/2/23.

5. Serrano is the man at the far right of the **Exhibit A** photo, standing in a doorway, with his cell phone in his hand.

6. Behind Serrano in the **Exhibit A** photo, obscured by Serrano except you can see the paper the second person is holding, is Dinsmore field agent Alex Rubin.

7. Traveling further to the left across the **Exhibit A** photo, the person in the light-colored blazer is Lori Ensley, and the two police officers are behind Ensley.

1      8.   Continuing further left across the **Exhibit A** photo, the chunky man,

2  looking toward Ensley and the two police officers, is Russell Squires.

3      9.   To the far left of the **Exhibit A** photo is Gary Depew, who is partially

4  obscured by the glass doors.

5      10. No other Trustee attorneys (besides Serrano) and no other field agents

6  (besides Depew, Squires Ensley and Rubin) were present during the 6/2/23 lockout at

7  Greyson.

8      11. During the "Lockout" period at Greyson,  I did speak to Chistopher

9  Celentino and Trustee Marshack on a three way call by phone, to reemphasize what

10  other Greyson employees and myself had been continuously emailing them about. Two

11  main points I made was that Greyson employees couldn't keep working without being

12  paid by the Trustee for their services and that the field agents in the office (Lori

13  Ensley, Gary Depew, Russell Squires, and Alex Rubin) were related to Validation

14  Partners, former investors of LPG, so to have them seize and rummage through

15  Greyson's stuff seemed highly inappropriate considering they were competitors.

16  Celentino was abrasive and verbally abusive to me during that phone call. At one

17  point, he stated "You should sell one of your Range Rovers that Tony gave you to pay

18  your employees their missing pay". I was absolutely offended by the implications and

19  the disrespect I was subjected to when I was just trying to do the right thing.

20      I declare under penalty of perjury that the foregoing is true and correct and that

21

**REPLY** OF GREYSON TO TRUSTEE'S PORTION OF STIPULATION TO GREYSON'S MOTION [DKT.515
IN ADV.PROC, DKT.1209 IN LPG MAIN CASE] TO COMPEL TRUSTEE TO PRODUCE SIGNED
GREYSON-PHOENIX CONTRACT, SEIZED BY TRUSTEE'S ATTORNEYS IN 6/2/23 LOCKOUT AT
GREYSON, AND NOT RETURNED TO GREYSON, DESPITE GREYSON'S *REQUEST TO PRODUCE
DOCUMENTS*  SERVED 2/29/24;DECLS OF  COURTNEY KELLEY, ISRAEL OROZCO & K. MARCH.    29

1   This Declaration was executed at Austin, Texas on June 4,  2024.

2

3

_____

4   COURTNEY KELLEY

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

# EXHIBIT A



## DECLARATION OF ISRAEL OROZCO, ESQ.

I, ISRAEL OROZCO, declare:

1. I am an attorney in good standing, admitted to practice in California. I formerly did "local counsel" work for Greyson Law Center PC ("Greyson"), including on 6/2/23.

2. I looked into Greyson's offices on 6/2/23, toward the end of the day, and saw a person I now know is Dinsmore firm attorney Jonathan Serrano, and several additional people standing with Serrano, in front of the locked door to Han Trinh's room at Greyson. I could tell the door was locked, because a man with tools was working to open the lock. Serrano and the additional people appeared to be waiting for the worker to get the lock open, so they could go into Han Trinh's room at Greyson.

3. I did not observe what Serrano or Trustee's field agents took from Han's room, once the worker got the lock unlocked.

4. If called as a witness I could and would testify accurately to what I saw, on 6/2/23, as attested to in this Declaration.

I declare under penalty of perjury that the foregoing is true and correct and that This Declaration is executed at Brea, California on May 31, 2024.

_____

ISRAEL OROZCO

## DECLARATION OF JAYDE TRINH

I, JAYDE TRINH, declare:

1.     Everything I say in this Declaration I know of my own personal knowledge.

2.     In May 2023, I was employed by Greyson Law Center PC ("Greyson") as an attorney, reporting to Greyson's Managing attorney Scott Eadie Esq.  One of my duties was to liaison with, and keep informed, Greyson's staff attorneys.

3.     In May of 2023, Greyson had negotiations with Phoenix Law ("Phoenix") regarding Phoenix contracting with Greyson, for Greyson to supply Greyson attorneys to appear, for Phoenix, to defend Phoenix consumer clients who were being sued in state court suits, in states all over the US, for alleged unpaid debts. Phoenix needed to contract with Greyson, for that service, because Phoenix did not have attorneys outside of California, to defend Phoenix clients in those state court lawsuits.

4.     On or around May 16, 2023, Greyson came to an agreement with Phoenix for Phoenix to pay Greyson $2,000 per state court lawsuit, in which Greyson attorneys appeared for Phoenix, to defend Phoenix consumer clients who were being sued in state court lawsuits.  On or around that date, as a showing of good faith that Phoenix would perform this $2,000 per lawsuit agreement, Phoenix made a partial payment to Greyson, to pay Greyson amounts Phoenix already owed to Greyson, for previous lawsuits where Greyson attorneys, at Phoenix' request, had appeared to

defend Phoenix clients in state court lawsuits. On or around May 19, 2023, this $2,000

per state court lawsuit agreement was memorialized in a written contract, signed by

Greyson and Phoenix.

5.      Also in May 2023, Greyson had negotiations with Consumer Law Group

("CLG"), regarding CLG contracting with Greyson to supply Greyson attorneys to

appear in state court lawsuits, nationwide, to defend CLG consumer clients who were

being sued in those state court suits, for alleged unpaid debts. The contract negotiations

between Greyson and CLG were still ongoing, when the 6/2/23 lockout of Greyson

occurred. As of the 6/2/23 lockout of Greyson, no contract had been agreed to, or

signed, between Greyson and CLG, and none was ever agreed to or signed between

Greyson and CLG.

6.      The issues Greyson had with Phoenix were not the same issues Greyson

had with CLG. With CLG, no agreement had been reached. Phoenix on the other hand

agreed to a contract with Greyson, and had signed the contract with Greyson, but then

failed to pay Greyson the $2,000 for each state court suit, where Greyson attorneys

appeared, for Phoenix, to defend Phoenix clients in those state court suits.

7.      The email attached as Exhibit 9 to Rubin's Declaration [dkt.325-4, filed

1/8/24] (which is an email dated 5/26/23, which I sent to Greyson attorneys) was the

result of Dinsmore firm "field agent" Alex Rubin illegally searching Greyson's emails

(¶1 of that Rubin Declaration admits that Rubin was given access to and searched

Greyson's emails), and then illegally attaching various Greyson emails, including my

5/26/23 email to Greyson attorneys, to Rubin's dkt.325-4 Declaration.

8.     It was illegal for Trustee personnel to seize Greyson's emails, and was illegal for Trustee to allow Rubin to search Greyson's seized emails, and it was illegal for Rubin to attach Greyson emails to Rubin's [dkt.325-4] Declaration filed by Dinsmore firm--including it was illegal to attach my 5/26/23 email to Greyson attorneys.  I have read the Dkt.13 Lockout & Preliminary Injunction Order.  Nothing in the dkt.13 Lockout & Preliminary Injunction Order, authorized Dinsmore firm, or anyone for Trustee, to seize, search or use Greyson emails for Trustee's own purposes. All the "Lockout" part of Dkt.13 did was to enjoin Scott Eadie, Han Trinh, myself, and others from accessing Greyson emails.  Neither the "Lockout" part of Dkt.13, nor any other part of Dkt.13, authorized Trustee personnel to seize, search or use for Trustee's own purposes, any Greyson emails.

9.     I am aware that Greyson filed Greyson's [dkt.477, filed 4/2/24] Evidentiary Objection and Request to Strike Rubin's 325-4 Declaration, and to strike the emails attached to that Rubin Declaration, which the Court should grant but has not yet heard or ruled on. On 6/5/24 Greyson will also file an Evidentiary Objection and Request to Strike Jeremy Freedman's Declaration to Trustee's part of Stipulation of issues to Motion to compel production of the signed Greyson-Phoenix contract, referring to my 5/26/23 email, for the same reason:  it was illegal for Trustee personnel to seize, search, or use for Trustee's own purposes, any Greyson emails.

10.     I sent my 5/26/23 email to Greyson's attorneys, to advise Greyson's attorneys generally of the ongoing issues Greyson was having with Phoenix and CLG. My email did not specify the exact nature of the differing disputes/issues Greyson was having with Phoenix and CLG respectively, because there was no reason to make the email needlessly complicated.  The differences in those situations were not relevant information the Greyson attorneys needed in order to comply with my directive. Instead, the purpose of the email was to make clear to Greyson's attorneys that they should not try to deal with either Phoenix or CLG directly, but rather should allow Greyson's management to handle the situations with Phoenix and CLG.

I declare under penalty of perjury that the foregoing is true and correct, and that this Declaration is executed by me at Davie, Florida, on June 3, 2024.



JAYDE TRINH

## DECLARATION OF HAN TRINH TO THIS REPLY

I, HAN TRINH, declare:

1.  My signed Declaration [dkt.1128, signed by me on 4/18/24, and filed 4/18/24] was filed as part of Greyson's REPLY to Trustee's Opposition to Greyson's Motion [Dkt.290] for allowance and payment of administrative claim. My dkk.1128 Declaration has paragraphs 36-42 regarding the signing of the Greyson -Phoenix contract and regarding that signed paper Greyson-Phoenix contract being seized from my locked room at Greyson's office, located at 3345 Michelson Drive, Suite 400B, Irvine, CA 92612.

2.  So the Court, and counsel, will not have to go dig out my dkt.1128 Declaration signed by me on 4/18/24, I am repeating here, for convenience, paragraphs 36-42 of my dkt.1128  Declaration, *verbatim*.

3.  What I said in paragraphs 36-42 was true on 4/18/24, and is still true today, 6/4/24:

36. In my declaration to Greyson's [dkt.676] Motion in chief, I attest that the Dinsmore firm/its field agents seized the signed original Greyson-Phoenix $2000 per lawsuit contract in the 6/2/23 Lockout of Greyson from my locked room in  Greyson's office. I know they seized the original signed Greyson-Phoenix contract from my locked room, in the 06/02/23 Lockout, because that document was in my locked room before the 06/02/23 lockout. The Trustee's field agents had

the lock on my office changed during the lockout order and never handed over the

set of keys to that new lock to my office. Greyson's former attorney, Douglas

Plazak, requested multiple times that the key be handed over so that I would be

able to access my office. There was a lack of response and when there was a

response, it was vague stating they would look into who had the key. I never

entered my office again,except when I was, weeks later, escorted by field agent

Lori Bicher, to remove my 86" TV that was bolted to the wall of my office. **The

signed Greyson-Phoenix contract which had been in my locked room before

the 6/2/23 Lockout, was no longer there.** While I and my team were removing

the TV, Lori Bicher supervised us. Bicher allowed me to scavenge what was left of

my office, which was pretty much empty. I was allowed to take my painting that

was on another wall of my office and my "General Han" personalized name plate

that former LPG employees had gifted me. Everything else (that I listed in my

motion for administrative claim) was gone, including all sorts of confidential

documents, contracts, boxes of blank Greyson checks, etc.

37. OPP does NOT deny that the Dinsmore firm/its field agents seized

the signed Greyson-Phoenix $2000 per lawsuit contract in the 06/02/23 Lockout of

Greyson from Greyson's office, which my Declaration to Motion in chief attests

was in my locked office at Greyson, and was gone after the 06/02/23 lockout.  So

Dinsmore firm/their field agents, either have possession of the original signed

REPLY OF GREYSON TO TRUSTEE'S PORTION OF STIPULATION TO GREYSON'S MOTION [DKT.515
IN ADV.PROC, DKT.1209 IN LPG MAIN CASE] TO COMPEL TRUSTEE TO PRODUCE SIGNED
GREYSON-PHOENIX CONTRACT, SEIZED BY TRUSTEE'S ATTORNEYS IN 6/2/23 LOCKOUT AT
GREYSON, AND NOT RETURNED TO GREYSON, DESPITE GREYSON'S *REQUEST TO PRODUCE
DOCUMENTS* SERVED 2/29/24;DECLS OF  KELLEY, OROSCO, J.TRINH, H.TRINH, & K. MARCH.    39

Greyson-Phoenix contract, or they have destroyed it. OPP does not deny that

Dinsmore firm/their field agents, **have possession** of the seized the Greyson-

Phoenix $2,000 per state court case contract.

38. The Declaration of Greyson attorney Kathleen P. March attaches

the Request to Produce which her firm served on Trustee, to produce the seized

contract, but that it has not been produced as of date I am signing my herein

Declaration.

39. On or about 5/19/23, I had a Greyson employee hand carry the

proposed Greyson-Phoenix, $2,000 per lawsuit, Contract to Phoenix offices, for

Phoenix to sign. I had already signed for Greyson, per instruction of Greyson

managing attorney, Scott Eadie. Phoenix's office was next to Greyson's office, at

that time. A few minutes later, the Greyson employee brought the Contract back to

me, signed by Phoenix, by Rose Bianca Loli. I recognized the signature for

Phoenix as having been made by Loli, because I was familiar with Loli's signature,

which is elaborate and distinctive. Loli had authority, or at least apparent authority

to sign the contract for Phoenix.

**40.** Attached to my herein Declaration as **Exhibit C**, is a true and

correct copy of Phoenix' newsletter in February 2023. It states Loli is Phoenix'

CEO, and shows Loli on the Phoenix organizational chart as having equal stature

with Ty Carss, who is listed as "managing attorney". Just as I did not have to be an

---

**REPLY** OF GREYSON TO TRUSTEE'S PORTION OF STIPULATION TO GREYSON'S MOTION [DKT.515
IN ADV.PROC, DKT.1209 IN LPG MAIN CASE] TO COMPEL TRUSTEE TO PRODUCE SIGNED
GREYSON-PHOENIX CONTRACT, SEIZED BY TRUSTEE'S ATTORNEYS IN 6/2/23 LOCKOUT AT
GREYSON, AND NOT RETURNED TO GREYSON, DESPITE GREYSON'S *REQUEST TO PRODUCE
DOCUMENTS* SERVED 2/29/24;DECLS OF  KELLEY, OROSCO, J.TRINH, H.TRINH, & K. MARCH.    40

1    attorney, to be authorized to sign for Greyson, Loli did not have to be an attorney,

2    to be authorized to sign that Contract.

3
4        41. The $2,000 per state court lawsuit price contracted for in the

5    Greyson-Phoenix contract was **reasonable**. As I attest in my Declaration to

6    Greyson's [dkt.676] Motion in chief, at ¶9 the $2,000 per state court case payment,

7
8    was in between the $1,400 to $2,500 that other law firms were paying per state

9    court  lawsuit defended. That is consistent with Rebhun's Declaration that Trustee

10   filed:  Trustee's witness, Jason J. Rebhun, in Rebhun's Declaration (Dkt.191-4,

11
12   filed  07/07/23 in the LPG main bankruptcy docket in support of Trustee's Motion

13   to Sell  LPG's assets), at ¶0 and ¶11, attests that what CLG (Consumer Legal

14   Group) pays  the local counsel CLG uses to defend CLG consumer clients in

15   lawsuits is **$1,500 to  $2,500 per suit, sometimes more**. (Those pages of Rebhun's

16
17   Decl are attached to  March Decl to this Reply)

18       42. Greyson did **not** send Greyson attorneys to defend over 2,480+
19
20   lawsuits, nationwide, **for free**. Greyson sent Greyson attorneys to defend over

21   2,480+ suits nationwide, for the $2,000 per suit that Phoenix contracted to pay

22   Greyson, for each state court suit where Greyson attorneys appeared for Phoenix,
23
24   on a 1099 (independent contractor basis) to defend Phoenix clients who were being

25   //

26

27

28

1   sued in those state court suits.

2        I declare under penalty of perjury that the foregoing is true and correct and that

3   this Declaration is executed at _____Orange_____, California, on June 4, 2024.

4

5   _____

6        HAN TRINH

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

## DECLARATION OF KATHLEEN P. MARCH

I, KATHLEEN P. MARCH, declare:

1.  I am an attorney in good standing, admitted to practice law in California and New York.  I own and run The Bankruptcy Law Firm, PC, counsel to Greyson Law Center, PC on Greyson's [dkt.676] Motion for Allowance and Payment of Administrative Claim, and on its Motion to vacate dkt.13 Lockout & Preliminary Injunction Order, and on this Motion to compel production of the signed Greyson-Phoenix Contract.  My firm is also counsel of record defending Greyson in Trustee's adversary proceeding dkt.8:23-ap-01046-SC.  I make this Declaration in support of Greyson's herein Reply.

2.  None of the "meet and confer" emails, from either Trustee law firm, which are attached as Exhibit C to my Declaration to the Stipulation to Greyson's Motion in Chief, requested to talk to me by phone or in person, so Trustee has **waived** any argument that the meet and confer was inadequate because it was done by email.  I would have talked to Trustee's two firms of attorneys in person or by phone if either had requested that.  Neither did.

3.  I only concluded the meet and confer, when **neither** Trustee firm responded to my final emails, which are part of **Exhibit C** to my Declaration to Greyson part of Motion to Compel.  All "meet and confers" have been by email, that I participated in, in LPG case, not by phone or in person.  Plus, email is more accurate than phone, because

emails allow the Court to see exactly what each side said in meet and confer.  Trying to

talk by phone or in person to firms which wouldn't even respond to my final emails,

would have been **futile**.

4.  The Dkt.13 *Lockout & Preliminary Injunction Order* did NOT authorize

Trustee/Dinsmore firm/its field agents to seize the signed paper Greyson-Phoenix

contract.  Trustee's portion of Stipulation does **not** claim that Dinsmore firm/its field

agents, seizing Greyson's signed Greyson-Phoenix contract, on 6/2/23, was authorized

by Dkt.13.

5.  The only part of Dkt.13 which ordered anything about Greyson is the Lockout

portion of Dkt.13 (pp.8, line 7 to p.9 line 11), and that portion of the Order does NOT

authorize seizing any contracts between Greyson and other entities, it doesn't authorize

seizing any paper documents whatsoever.  Dinsmore firm/its field agents, committed

**conversion** of Greyson's property, when they seized the signed paper Greyson-Phoenix

contract, as the only Order they had on 6/2/23 was Dkt.13, and Dkt.13 did NOT

authorize seizing that contract.

6.  It is backwards that Trustee's OPP alleges Greyson's counsel should be

sanctioned, for moving to compel, when it is the improper "stonewalling" of Trustee's

attorneys, refusing to produce the seized document, based on multiple diverse invalid

excuses, that has necessitated Greyson moving to compel production.  If anyone should

be sanctioned, its Dinsmore firm, not Greyson or Greyson's counsel:   Dinsmore firm

---

**REPLY** OF GREYSON TO TRUSTEE'S PORTION OF STIPULATION TO GREYSON'S MOTION [DKT.515
IN ADV.PROC, DKT.1209 IN LPG MAIN CASE] TO COMPEL TRUSTEE TO PRODUCE SIGNED
GREYSON-PHOENIX CONTRACT, SEIZED BY TRUSTEE'S ATTORNEYS IN 6/2/23 LOCKOUT AT
GREYSON, AND NOT RETURNED TO GREYSON, DESPITE GREYSON'S *REQUEST TO PRODUCE
DOCUMENTS* SERVED 2/29/24;DECLS OF KELLEY, OROZCO, J.TRINH, H.TRINH, & K. MARCH.    44

1   acted illegally, in seizing the signed Greyson-Phoenix contract at Greyson's office on

2   6/2/23, because Dkt.13 did not authorize seizing that contract, which was property of

3

4   Greyson.  Then then Dinsmore firm and Marshack Hays stonewalled on returning the

5   seized contract to Greyson, necessitating Greyson to move to compel production.

6       7.  Trustee's part of the dkt.515 Stipulation of Issues, at p.21, lines 8-19, is **error,**

7

8   in arguing that this Court's dkt.365 Order (Order granting Trustee's Motion to Order

9   the Dkt.77 "avoidance" Stipulation between Trustee and Phoenix as an Order), excuses

10  the LPG bankruptcy estate for being liable to pay Greyson the $2,000 per lawsuit

11

12  which LPG's alter ego, Phoenix, contracted, post-petition, to pay Greyson, for Greyson

13  sending Greyson attorneys-- at Phoenix' request--to appear to defend clients LPG had

14  transferred to Phoenix, in over 2,480 state court suits where those clients were being

15

16  sued on alleged debts.  Neither the Dkt.77 Stipulation between Trustee and Phoenix, in

17  which Phoenix agreed to return all the LPG client files to LPG's bankruptcy estate, by

18  "avoidance", nor the Dkt.365 Order which granted Trustee's Motion to approve that

19

20  Stipulation as an Order, prevent or excuse the LPG's bankruptcy estate for being liable

21  to pay Greyson the $2,000 per state court lawsuit that LPG alter-ego Phoenix had

22

23  contracted to pay Greyson, each state court suit where Greyson attorneys appeared to

24  defend Phoenix clients.

25       8.  Greyson's Reply [dkt.1127, filed 4/18/24 in LPG bankruptcy case] to Trustee's

26

27  Opposition to Greyson's Motion for Payment of Administrative Claim, at p.41-52 of

28
_____

**REPLY OF GREYSON TO TRUSTEE'S PORTION OF STIPULATION TO GREYSON'S MOTION [DKT.515
IN ADV.PROC, DKT.1209 IN LPG MAIN CASE] TO COMPEL TRUSTEE TO PRODUCE SIGNED
GREYSON-PHOENIX CONTRACT, SEIZED BY TRUSTEE'S ATTORNEYS IN 6/2/23 LOCKOUT AT
GREYSON, AND NOT RETURNED TO GREYSON, DESPITE GREYSON'S *REQUEST TO PRODUCE
DOCUMENTS* SERVED 2/29/24;DECLS OF  KELLEY, OROZCO, J.TRINH, H.TRINH, & K. MARCH.**    45

dkt.1127, briefs the multiple reasons that Greyson is NOT bound by the Dkt. 7

Stipulation between Trustee and Phoenix, including that a party which is not a

signatory to a stipulation is not bound by the Stipulation, and **Greyson was not a**

**signatory to the Dkt.77 Stipulation**.  The p.41-52 briefing includes briefing that the

Dkt.365 Order, which granted Trustee's dkt.176 Motion to order the Dkt.77 Stipulation

as an Order, **does not broaden** the parties bound by the Stipulation, which are only

Trustee and Phoenix.  It only makes the Stipulation an Order as to the signatories.  Plus

Greyson's p.41-52 briefing briefs several additional reasons why the LPG bankruptcy

estate could not evade its liability to pay for postpetition debts incurred by LPG's alter

ego Phoenix, for work which directly benefitted the LPG bankruptcy estate.

9.  Greyson's p.41-52 briefing in dkt.1127 (plus the Declarations to dkt.1127

attesting to failure of Trustee's attorneys to serve and notice Trustee's dkt.176 Motion

in compliance with what the Court ordered), is incorporated here by reference, as if set

forth in full.   For convenience, pages 41-52 of dkt.1127's briefing on these issues, are

attached to March Decl to this Reply as **Exhibit A.**

10.The Declaration of Jeremy Freedman to Trustee's part of the Dkt.515

Stipulation of Issues attaches as Exhibit 2 to Freedman Decl, certain pages of Han

Trinh's deposition transcript.  Exhibit 2 attaches p.174 of Han Trinh's deposition

transcript, **but improperly fails to attach p.175** of Han Trinh's deposition transcript.

At p.174 of her deposition transcript, Han Trinh is being questioned about the signed

**REPLY** OF GREYSON TO TRUSTEE'S PORTION OF STIPULATION TO GREYSON'S MOTION [DKT.515
IN ADV.PROC, DKT.1209 IN LPG MAIN CASE] TO COMPEL TRUSTEE TO PRODUCE SIGNED
GREYSON-PHOENIX CONTRACT, SEIZED BY TRUSTEE'S ATTORNEYS IN 6/2/23 LOCKOUT AT
GREYSON, AND NOT RETURNED TO GREYSON, DESPITE GREYSON'S *REQUEST TO PRODUCE
DOCUMENTS* SERVED 2/29/24;DECLS OF  KELLEY, OROZCO, J.TRINH, H.TRINH, & K. MARCH.   46

1    Greyson-Phoenix $2,000 per lawsuit contract.  The last line of p.174, and the first line

2    of p.175 asks the question,:

3

4        "Q:  So nobody that was employed by Greyson witnessed the signature of this

5        contract?

6        Han  answers this question on page 175, at lines 2-6:

7

8        A    Oh, witness the signature?  Yes.
         Q    Who was that person that witnessed it?

9        A    Max Chou.
         Q    Was Max Chou ever paid by Greyson?

10       A    He was an employee of Greyson.

11

12

13       11.Han's answers on p.175 are highly relevant, but are contrary to Trustee's (false)

14   allegation that there is no signed Greyson-Phoenix contract, so Freedman improperly

15   omits page 174 from Freedman's Exhibit 2.  A copy of omitted page 175, of Han's

16   official Deposition transcript, is attached to this Declaration as **Exhibit B**.

17

18       I declare under penalty of perjury that the foregoing is true and correct and that

19   This Declaration is executed at Los Angeles, California on June 5,  2024.

20

21       _____/s/ Kathleen P. March_____

22       KATHLEEN P. MARCH

23

24

25

26

27

28

---

# EXHIBIT A

Due to Phoenix being LPG's, alter ego, the LPG bankruptcy estate is liable to

pay for debts Phoenix incurred, after LPG filed bankruptcy, which benefitted the LPG

bankruptcy estate, because LPG got back from Phoenix (by "avoidance") and sold all

the LPG files, including the over 2,480 files which Greyson attorneys defended in the

over 2,480 state court lawsuits, benefitted LPG, who got all the clients back from

Phoenix, and then sold those files to Morning Law.  (Dkt. 77 "Avoidance Stipulation

is **Exhibit D** to March Decl to this Reply; Dkt.365 Order ordering the Stip as an

Order, is **Exhibit E** to March Decl to this Reply.

XI.    **FOR MANY REASONS, THE DKT.77 "AVOIDANCE" STIPULATION/
       DKT.365 ORDER DO NOT EXCUSE THE LPG BANKRUPTCY ESTATE
       FROM BEING LIABLE TO PAY GREYSON'S ADMINISTRATIVE
       CLAIM MOTION [DKT.676]**

   A.    **Greyson is Not a Party to the Dkt.77 Stipulation and So is Not Bound
         by that Stipulation; Only Trustee, and Phoenix/Carss/Tan, are
         Parties to that Stipulation**

The dkt.77 Stipulation [**Exhibit E** to March Decl hereto], between Trustee on

the one hand, and Phoenix/Carss/Tan on the other hand, has no effect on Greyson,

Han Trinh, Jayde Trinh, or anyone else who is not a signatory to that Stipulation.

There are over 75 federal cases, at all levels—some of them bankruptcy court

cases—ruling that persons/entities are **NOT** bound by Stipulations those

persons/entities are not parties to. *In re Bake-Line Grp., LLC*, 312 B.R. 48, 51 (Bankr.

D. Del. 2004), holds that a trustee's stipulation with a specific party **did not bind**

**others who were not a party to that stipulation**:

**REPLY** OF *GREYSON LAW GROUP PC*, TO TRUSTEE MARSHACK'S OPPOSITION TO GREYSON'S
MOTION [DKT.676] FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE CLAIM, BROUGHT PER
11 U.S.C. §503(b)(1)(A); REPLY MEMO OF P & A; DECLS. AS STATED ON P.1 OF THIS REPLY      41

49

"In this case, the Trustee argues that the estate did not have any leasehold interest, control, or business operations at the Facility during the month of February because according to the stipulation with RIDC the Lease was rejected retroactive to January 30, 2004. However, **Dominion was not a party to that stipulation and, therefore, is not bound by its terms**." [bold/underline added]

Accord: *In re Henson*, 289 B.R. 741, 753 (Bankr. N.D. Cal. 2003) ("Other creditors were not parties to the stipulation between Creditor and Debtor and are not bound by it..."); *In re Parsons*, 505 B.R. 540, 545–46 (Bankr. D. Haw. 2014) ("OCP argues that, even if the stipulation is not binding on Ms. Parsons, the stipulation did resolve the amount and character of OCP's claims, and Ms. Parsons is stuck with the legal consequences of that determination. I disagree."); *Fuji Photo Film Co. v. Int'l Trade Comm'n*, 386 F.3d 1095, 1101 (Fed. Cir. 2004) ("Since the respondents who are affected by the claim construction in the present proceedings were not parties to that stipulation, they are not bound by it..."); *Acacia Corp. Mgmt., LLC v. United States*, No. CIV F-07-1129 AWI GS, 2010 WL 3766706, at *1–2 (E.D. Cal. Sept. 21, 2010) ("The United States argues it [']was not a party to the stipulation between Plaintiffs and the collaborating Defendants, and thus is not bound by the stipulated order.['] ... The court finds this to be an accurate statement of the facts and law in this case."); *Nature Quality Vine Ripe Tomatoes v. Rawls Brokerage, Inc*., No. 2:04-CV-0016-VEH, 2006 WL 8437347, at *4 (N.D. Ala. Aug. 24, 2006) ("Chiquita Frupac and Rice Fruit Company were not parties to the stipulation and are not bound by its provisions..."); *Aetna Ins. Co. v. Hyde*, 34 F.2d 185, 188 (W.D. Mo. 1929), aff'd sub

**REPLY** OF *GREYSON LAW GROUP PC*, TO TRUSTEE MARSHACK'S OPPOSITION TO GREYSON'S MOTION [DKT.676] FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE CLAIM, BROUGHT PER 11 U.S.C. §503(b)(1)(A); REPLY MEMO OF P & A; DECLS. AS STATED ON P.1 OF THIS REPLY      42

50

nom. *Nat'l Fire Ins. Co. of Hartford v. Thompson*, 281 U.S. 331, 50 S. Ct. 288, 74 L. Ed. 881 (1930) ("Of the present complainants, 33 were not parties to the stipulation ... and, therefore are not bound thereby.");

The [dkt.77] Stipulation between Marshack, as debtor LPG's Trustee, and Phoenix plus Phoenix personnel Carss and Tan, Phoenix stipulates that transfer of all client files, which LPG transferred to Phoenix, before LPG filed bankruptcy, is avoided, and Trustee stipulates that Phoenix, Carss and Tan (collectively "Phoenix") will be ismissed as defendants from Trustee's adversary proceeding dkt. 8:23-ap-01046-SC (*Trustee v. Tony Diab et al*). Plus in dkt.77, Trustee and Phoenix/Carss/Tan stipulate that only Phoenix, and not LPG, will be liable for debts Phoenix incurred between when Phoenix received the files, and when the files were sold by Trustee to buyer [Morning Law became the buyer].

Trustee, by his attorneys Dinsmore firm, filed that Stipulation in the 8:23-ap-01046-SC adversary proceeding, as dkt.77, on 7/6/23. Greyson, Han Trinh and Jayde Trinh are not parties to that Stipulation. None of the approximately 40 additional defendants in the adversary proceeding, are parties to that Stipulation.

B. **Trustee's dkt.176 "Motion for Order approving Stipulation" [dkt.77] Only Moves the Court to enter an Order approving the Stipulation, and does NOT move to the Court to Broaden What Persons/Entities are Bound by the Stipulation, beyond the Parties which Signed the Stipulation, which are Only Trustee on the one hand, and Phoenix/Carss/Tan on the other Hand**

**REPLY** OF *GREYSON LAW GROUP PC*, TO TRUSTEE MARSHACK'S OPPOSITION TO GREYSON'S MOTION [DKT.676] FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE CLAIM, BROUGHT PER 11 U.S.C. §503(b)(1)(A); REPLY MEMO OF P & A; DECLS. AS STATED ON P.1 OF THIS REPLY     43

51

Trustee's Dkt.176 Motion [**Exhibit G** to March Decl]  only moves the Court to

Order the dkt.77 Stipulation as an Order.  That was probably prudent for Trustee to

do, because case law holds that  Courts is not required to accept a Stipulation, if the

Court disagrees with the Stipulation.  But when the court orders the stipulation, then

the parties **to the stipulation** are ordered to comply with the Stipulation.

For 5 reasons, Trustee's dkt.176 Motion **did not broaden what persons/entities**

**are bound by the Stipulation**, beyond the parties which signed the Stipulation, which

are Trustee Marshack on the one hand, and Phoenix/Carss/Tan on the other hand

First, Dinsmore firm's dkt.176 Motion is captioned as:

"**Motion for Order approving Stipulation** re Avoidance and Recovery of
Avoidable Transfers to Defendant Phoenix Law, PC and Turnover of All
Related Property to the Trustee and Order of Dismissal Without Prejudice of
Defendants William Taylor Carss and Maria Eeya Tan"

Second, the Notice of Motion part of the dkt.176 Motion, at pacer p.2 of 18, states

that Trustee's Motion:

"moves for **entry of an order that finds and directs** as follows:
1.  **The Motion is granted**.
2.  **That certain Stipulation** for Agreed Judgment (1) Avoiding,
Recovering, and Preserving Transfers to Defendant, Phoenix Law
Group, Inc.; (2) Turning Over All of Transferred Property to Trustee;
and (3) Dismissing Without Prejudice Defendants William Taylor
Carss and Maria Eeeya Tan (the "Stipulation") by and between the
Trustee, in his capacity as the duly appointed and acting Trustee for
the Debtor, on the one hand, and Phoenix Law, PC
("Phoenix"),William Taylor "Ty" Carss, and Eeya Tan, on the other
hand, attached as **Exhibit 1** hereto, **is approved**."
[other provisions which are not relevant are not quoted here]

The **Exhibit 1,** which is attached to Trustee's dkt.176 Motion, is the Stipulation that is

1 Dkt.77 in the adversary proceeding (Stipulation Greyson is not a party to).

2 Third, Trustee's dkt.176 Motion, at pacer p.9 of 18, item III states: "III. THE

3
4 **COURT SHOULD APPROVE THE STIPULATION** UNDER BANKRUPTCY

5 RULE 9019"

6 Fourth, the dkt.176 Motion nowhere requests that this Court broaden what

7
8 persons/entities are bound by the Stipulation, other than the parties that signed the

9 Stipulation.

10 Fifth, the Court's Order [dkt.365 in LPG main bankruptcy case docket],

11
12 granting Trustee's dkt.176 Motion, does NOT contain any language broadening what

13 persons/entities are bound by the Stipulation, beyond the parties that signed the

14 Stipulation, which are only Trustee Marshack on the one hand, and  Phoenix/Carss/

15
16 Tan on the other hand.

17 **C.    This Court Granting Trustee's [dkt.176] Motion,  to order the Dkt.77**

18 **Stipulation as an Order, <u>does NOT Increase, or Change,  what parties</u>**

19 **<u>are Bound by the Stipulation;</u> the Order [dkt.365] Only Makes the**

20 **Stipulation an Order between the parties which signed the Dkt.77**

21 **Stipulation, which does NOT affect the rights of parties, such as**

22 **Greyson, which are <u>Not</u> Signatories to the dkt.77 Stipulation**

23 As discussed in A. supra, the dkt.77 Stipulation does not affect Greyson's

24
25 rights, because Greyson is **not** a party to that Stipulation.  Similarly, this Court's

26 Order [dkt.365 in main LPG bky case docket], which makes the Stipulation an Order,

27 does not affect Greyson's rights, because  Greyson is NOT a party to that Stipulation.

28

Because only Trustee on the one hand, and Phoenix/Carss/Tan on the other hand, are

parties to the dkt.77 Stipulation, this Court granting Trustee's [dkt.176] Motion, to

make the Dkt.77 Stipulation an Order [Order that is dkt.365 in the main LPG

bankruptcy case], **only means that the parties to the Dkt.77 Stipulation are**

**ordered to comply with that Stipulation, as an Order**.

Because Greyson is not a party to the dkt.77 Stipulation, Greyson is not bound to

do anything, by the Dkt.365 Order [Order is **Exhibit F** to March Decl hereto].

Consequently, just as the dkt.77 Stipulation does **not** bar Greyson from collecting the

$4,960,000 plus from LPG, which is owed by LPG alter ego Phoenix, the dkt.365

Order does **not** bar Greyson from collecting the $4,960,000 from LPG, which LPG's

alter-ego Phoenix owes Greyson.

LPG is liable to pay Phoenix' debts, because Phoenix is the alter ego of LPG.

The dkt.77 Stipulation and dkt.365 Order, may prevent Phoenix from seeking

payment from LPG for debts Phoenix incurred. But neither dkt.77 Stipulation, nor the

dkt.365 Order, affect Greyson's right to require LPG estate pay the $4,960,000 to

Greyson, which LPG alter ego Phoenix owes to Greyson, and which benefitted LPG.

> **D. Even if Greyson was subject to the Dkt.77 Stipulation or Dkt.365**
> **Order(ordered by the Dkt.365 Order)—NOT the case-- the**
> **Stipulation Language is Fatally Vague and Ambiguous regarding**
> **What Entity is Liable to Pay the $2,000 per suit owed to Greyson,**
> **After the Client Files (Returned to LPG from Phoenix by**
> **"avoidance") are sold by Trustee; Vagueness and Ambiguity which**

---

REPLY **OF** *GREYSON LAW GROUP PC*, **TO TRUSTEE MARSHACK'S OPPOSITION TO GREYSON'S
MOTION [DKT.676] FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE CLAIM, BROUGHT PER
11 U.S.C. §503(b)(1)(A); REPLY MEMO OF P & A; DECLS. AS STATED ON P.1 OF THIS REPLY      46**

**Must be Construed against Trustee/the LPG bankruptcy estate,**

**whose Attorneys wrote the Dkt.77 Stipulation**

The dkt.77 Stipulation (ordered by the Dkt.365 Order) states, in ¶4, that **until Trustee**

**closes a sale to a third-party buyer** Phoenix will be liable:

> "4. Any and all liability whether at law or equity relating in any way to
> Phoenix's handling of the Transfers including the files that arose or came into
> existence following the date of their transfer to Phoenix, **until Trustee closes a**
> **court-approved sale to a third-party buyer (Post transfer Claims") will**
> **remain with Phoenix.**

That wording leaves open who is liable to pay for that liability, after the LPG files,

"avoided" back to LPG from Phoenix, are sold by Greyson to a third-party buyer (here

Morning Law).

Because sending all client files back to LPG, from Phoenix, by "avoidance, left

Phoenix with no assets, the Bankruptcy Court could not properly have approved a

Stipulation which **permanently** left Phoenix with no assets, but with all the liability.

No Court could approve that. Rather, the wording of the Dkt.77 Stipulation is more

limited: It says Phoenix is liable **until a sale closes to a third-party buyer** (here

Morning Law). Since LPG—not Phoenix—got, and continues to get, the money that

buyer, Morning Law is required to pay LPG's bankruptcy estate, for LPG's

clients/client files, it is logical that upon close of sale, that LPG's bankruptcy estate is

liable to pay Phoenix' debts.

If liabilities Phoenix incurred, managing the client files, remained with Phoenix,

**after Trustee sold the LPG** files (files LPG was getting back from Phoenix by

REPLY OF *GREYSON LAW GROUP PC*, TO TRUSTEE MARSHACK'S OPPOSITION TO GREYSON'S
MOTION |DKT.676| FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE CLAIM, BROUGHT PER
11 U.S.C. §503(b)(1)(A); REPLY MEMO OF P & A; DECLS. AS STATED ON P.1 OF THIS REPLY      47

55

"avoidance") , the "until Trustee closes a court-approved sale to a third-party buyer"

language **would be surplusage**. That language only has a purpose, if, after a sale

closed, LPG became liable to pay debts incurred by Phoenix, during the time Phoenix

was managing the LPG files. Paragraph 4 additionally states:

"Phoenix, Mr. Carss, and Ms. Tan shall use their best efforts to cooperate with
Trustee and his retained professionals to provide services to the clients until
closing, and **nothing herein shall impose or create any liability for Post
Transfer Claims on Trustee or Debtor's Estate**"

However, it is not anything "**herein**," i.e., it is not anything in the Stipulation

that makes LPG's bankruptcy estate liable for claims against Phoenix. Rather, LPG's

bankruptcy estate is liable for claims against Phoenix/debts incurred by Phoenix,

because Phoenix is LPG's alter ego. Alter ego liability is briefed at **Section I. A**,

supra, this Reply. Because Phoenix is LPG's alter ego, Phoenix contracting to pay

Greyson to send Greyson attorneys to defend LPG clients in state court suits, is the

same as LPG contracting to pay Greyson to send Greyson attorneys to defend LPG

clients in state court suits, with the result that the LPG bankruptcy estate is liable to

pay Greyson for that work, which **benefitted LPG**.

This Court could not properly have sent all the files LPG sent Phoenix, back to

LPG, thereby leaving Phoenix with no assets, but making Phoenix alone solely liable

for paying for Greyson the $2,000 per suit for Greyson attorneys defending

Phoenix/LPG clients in 2,480 of state court suits.

REPLY OF *GREYSON LAW GROUP PC*, TO TRUSTEE MARSHACK'S OPPOSITION TO GREYSON'S
MOTION |DKT.676| FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE CLAIM, BROUGHT PER
11 U.S.C. §503(b)(1)(A); REPLY MEMO OF P & A; DECLS. AS STATED ON P.1 OF THIS REPLY    48

56

1   This Court said several times, in the 6/12/23 court hearing, that protecting the

2   consumer clients was uppermost in this Court's mind. [transcript p.39, lines 4-13;

3   p.45, lines 8-15]. Greyson's work protected 2,480 consumer clients who were being

4

5   sued on debts in state courts nationwide. **Greyson is entitled to be paid by LPG's**

6   **bankruptcy estate for that work**.

7

8   E.    **Lack Of Valid Service is an Additional Reason Why Greyson (also Han**

9          **and Jayde Trinh) are Not Bound by the Dkt.365 Order Granting**

10         **Trustee's Dkt.176 Motion: None of Greyson/Han/Jayde Were Validly**

11         **Served with the Dkt.176 Motion; Dinsmore Firm Did Not Phone Any of**

12         **the 3 Telling Them the Hearing Date; and Dinsmore Firm Failed to**

13         **File/Serve *Notice of Hearing* Court Ordered Firm to File/Serve Stating**

14         **7/11/23 Hearing Date**

15      Greyson is not bound by the Dkt.365 Order, because Greyson was not validly

16   served with Trustee's Dkt.176 Motion that obtained that Order. See Declarations

17   hereto of Douglas Plazak Esq., Scott Eadies, Esq of Greyson., Jayde Trinh Esq. of

18
    Greyson, and Han Trinh that establish that serving Plazak with Trustee's dkt.176
19

20   Motion moving Court to approve Dkt. 77 Stipulation as an Order.  That Motion was

21   only filed in the LPG main case, and Plazak had never appeared in the main case,
22
     representing Greyson, Han, Jayde, or anyone else.  Plazak had only appeared in the
23

24   adversary proceeding. Serving Plazak was not valid service of the dkt.176 Motion on

25   Greyson.  Greyson had to be served by serving Scott Eadie, its Agent for service of
26
     process, see Scott Eadie Decl. Eadie was not served with the Motion, did not receive a
27

28   phone call telling him the hearing date, and Trustee counsel failed to serve Eadie with

REPLY OF *GREYSON LAW GROUP PC*, TO TRUSTEE MARSHACK'S OPPOSITION TO GREYSON'S
MOTION [DKT.676] FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE CLAIM, BROUGHT PER
11 U.S.C. §503(b)(1)(A); REPLY MEMO OF P & A; DECLS. AS STATED ON P.1 OF THIS REPLY      49

a the *Notice of Hearing* the Court had ordered, on anyone. No one phoned Han and Jayde telling the hearing date either (no hearing date on Motion). No one served Han or Jayde with a *Notice of Hearing* pleading.

The LPG main bankruptcy case docket had hundreds of motions, oppositions, and items on it, as of 7/6/23 (date Dinsmore firm filed Trustee's dkt.176 Motion in the LPG main case docket). By now, the LPG main case docket has 1000-plus docketed items. Plazak appearing as counsel defending Greyson, and other defendants in the Trustee v. Diab et al adversary proceeding 8:23-ap-01046-SC, did NOT make Plazak/his firm the attorneys for Greyson, Han or Jayde in the LPG main case, 8:23-bk-10571-SC, on any or all of the docketed items in the LPG main case. Plus Plazak's Declaration hereto attests that no one phoned Plazak, to tell Plazak the shortened time hearing date on the Dkt.176 Motion.

An adversary proceeding, and a main bankruptcy case, are two different proceedings. An attorney representing a party in an adversary proceeding does **not** constitute actual or implied authority or authorization, for that attorney to accept service for that party in the main bankruptcy case, when that attorney has **neve**r appeared in the main bankruptcy case on behalf of that party.

The bankruptcy court in *In re Rae*, 286 B.R. 675, 676–77 (Bankr. N.D. Ind. 2002) held that serving a motion upon a corporate party, by serving the attorney who had represented the corporation in a related matter, was improper:

**REPLY** OF *GREYSON LAW GROUP PC*, TO TRUSTEE MARSHACK'S OPPOSITION TO GREYSON'S
MOTION [DKT.676] FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE CLAIM, BROUGHT PER
11 U.S.C. §503(b)(1)(A); REPLY MEMO OF P & A; DECLS. AS STATED ON P.1 OF THIS REPLY      50

58

"**The courts have consistently held that an attorney will be considered an agent for service of process only if counsel has been appointed for that precise task.** *See e.g., Schultz v. Schultz,* 436 F.2d 635 (7th Cir.1971); *Bennett v. Circus U.S.A.,* 108 F.R.D. 142, 146–147 (N.D.Ind.1985); *Davis–Wilson v. Hilton Hotels Corp.,* 106 F.R.D. 505, 508 (E.D.La.1985); *Miree v. United States,* 490 F.Supp. 768, 775 (N.D.Ga.1980). **The mere relationship between a litigant and its attorney is not sufficient to convey this authority**. *Ziegler Bolt,* 111 F.3d at 881. **Neither will it be implied from counsel's representation of the client in other litigation.** *Ziegler Bolt,* 111 F.3d at 881; *Schultz,* 436 F.2d at 639; *J & L Parking Corp. v. United States et al.,* 834 F.Supp. 99, 102 (S.D.N.Y.1993); *Bennett,* 108 F.R.D. at 147; *Olympus Corporation v. Dealer Sales & Service, Inc.,* 107 F.R.D. 300, 306 (E.D.N.Y.1985). "Instead, the record must show that the attorney exercised authority beyond the attorney-client relationship, including the power to accept service." *Ziegler Bolt,* 111 F.3d at 881. "[T]here must be evidence of actual appointment and not merely an implication from the attorney's activities." *Bennett,* 108 F.R.D. at 147." [bold/underline added for emphasis]

Accord: *In re C.P. Hall Co.*, 513 B.R. 546, 551–53 (Bankr. N.D. Ill. 2014):

"As for the service of motions, Rule 9014(b) says that a motion in a contested matter (and all motions in bankruptcy cases initiate contested matters) must be served 'in the manner provided for service of a summons and complaint by Rule 7004.' Fed. R. Bankr.P. 9014(b). Service of a motion on an individual must therefore be accomplished in the same way as service of the summons and complaint in an adversary proceeding: under Rules 7004(b)(1), (7), or (8). *Kalikow,* 602 F.3d at 92 ("In a contested matter ... the notice of hearing is treated as a summons and the motion is treated as a complaint." (internal quotation omitted)); *In re Century Elecs. Mfg., Inc.,* 284 B.R. 11, 17 (Bankr.D.Mass.2002); *Ms. Interpret,* 222 B.R. at 414. **Decisions about the implied authority of an attorney to receive service of a motion are no less persuasive because a motion rather than an adversary complaint was involved**. … …. **A party "cannot fabricate ... implied authority from whole cloth ... but must present facts and circumstances" establishing it.** *Ziegler,* 111 F.3d at 881. In determining whether an attorney has implied authority to receive service, "all the circumstances" surrounding the attorney's relationship with the party to be served must be considered. *Focus Media,* 387 F.3d at 1083; *Ms. Interpret,* 222 B.R. at 416; *see also* 4A Charles Allan Wright & Arthur R.

**REPLY** OF *GREYSON LAW GROUP PC,* TO TRUSTEE MARSHACK'S OPPOSITION TO GREYSON'S MOTION [DKT.676] FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE CLAIM, BROUGHT PER 11 U.S.C. §503(b)(1)(A); REPLY MEMO OF P & A; DECLS. AS STATED ON P.1 OF THIS REPLY      **51**

59

Miller, *supra,* § 1097 at 537 (stating that federal courts "look to the circumstances of the agency relationship")." [bold/underline added]

On 7/6/23, the date that the [dkt.176] Notice of Motion and Motion was filed in the LPG main bankruptcy case docket, that Motion was only served on attorney Plazak —and NOT on Greyson, Han, or Jayde. Serving Plazak did constitute valid service on Greyson/Han/Jayde. Plazak represented them only in the adversary proceeding, and had never appeared for anything in the LPG main bankruptcy case. [Plazak Decl hereto] Plazak's representation of Greyson in the adversary proceeding was **not sufficient** to imply that Plazak had authority to receive service of Trustee's Motion to Compromise, filed in the LPG main bankruptcy case—and not filed in the adversary proceeding—on behalf of Han, Jayde or Greyson. Han, Jayde and Greyson are not bound by this Court's Order [dkt.365] granting Trustee's Motion to Compromise with Phoenix, Carss and Tan, because they were not validly served with that Motion, and not being served, received no opportunity to oppose that Motion. [See Decls of Scott Eadie (agent for service of process for Greyson), Han and Jayde to this Reply, that none of them was validly served with Dkt.176 Motion

**XII. OPP (P2, LINES 15-17) ERRS IN ALLEGING GREYSON'S MOTION HAS NO BASIS IN FACT OR LAW FOR GREYSON'S $300,633 ADMIN CLAIM: THAT $300,663 CLAIM IS FOR DAMAGE THAT NEGLIGENCE OF, AND INTENTIONAL MISCONDUCT OF, DINSMORE FIRM/ITS FIELD AGENTS CAUSED GREYSON, WHICH LPG'S BANKRUPTCY ESTATE IS LIABLE FOR**

Greyson's Motion in chief fully briefs controlling case law holding that a

REPLY OF *GREYSON LAW GROUP PC*, TO TRUSTEE MARSHACK'S OPPOSITION TO GREYSON'S
MOTION [DKT.676] FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE CLAIM, BROUGHT PER
11 U.S.C. §503(b)(1)(A); REPLY MEMO OF P & A; DECLS. AS STATED ON P.1 OF THIS REPLY     52

60

# EXHIBIT B

Han Trinh                                                    March 20, 2024

1      Q    Um, what was the substance of that agreement?

2      A    It was a contract between Phoenix and Greyson,

3   for Greyson to take on cases at a rate of 2,000 per

4   case, every new one that was assigned or current.

5      Q    Did you -- who signed that agreement on behalf

6   of Greyson, if you know?

7      A    I did, per Scott's permission.

8      Q    Okay.  Who signed it on behalf of Phoenix?

9      A    I believe it was -- it was either Bianca

10  Loli -- I couldn't read the signature.  It's either

11  Bianca Loli or Ty Carrs.  It didn't say, like, print

12  name.  It just had a signature.

13     Q    Did you have any suspicion that Mr. Diab might

14  have signed their names?

15     A    No, because it was walked over.  And Tony Diab

16  was never present physically at 3345 Michelson Drive.

17     Q    Did Tony have a desk at 3345 Michelson Drive

18  at any of the suites, to your knowledge?

19     A    Not to my knowledge.

20     Q    Did you physically witness either Bianca or Ty

21  sign that contract?

22     A    No.  I had an employee walk it over.  It was

23  signed.  They didn't let my employee walk past the front

24  desk, signed, and handed back to us.

25     Q    So nobody that was employed by Greyson

Han Trinh                                                    March 20, 2024

1    witnessed the signature of this contract?

2          A    Oh, witness the signature?  Yes.

3          Q    Who was that person that witnessed it?

4          A    Max Chou.

5          Q    Was Max Chou ever paid by Greyson?

6          A    He was an employee of Greyson.

7          Q    Is his information in the Greyson Paychex?

8          A    Yes.

9          Q    Would that include his physical address?

10         A    Not always, no.

11         Q    Would there be a reason why a physical address

12   would not be kept for an employee in the Paychex system?

13         A    A lot of times Paychex has glitches, so it

14   erases the direct deposit information and personal

15   information.  They have to go back in and refill it out.

16   But I don't remember at this point in time if that was

17   ever fixed.

18         Q    Have you ever communicated on your cell pone

19   with Max Chou?

20         A    I have my email app that emails my Greyson

21   email to his Greyson email.

22         Q    No.  I mean, like, with respect to text

23   messaging or phone calls?

24         A    Oh, no.

25         Q    How did you meet Max Chou?

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
10524 W. Pico Blvd., Ste. 212, Los Angeles, CA 90064
A true and correct copy of the foregoing document entitled (*specify*):

**REPLY OF GREYSON LAW CENTER PC'S, TO TRUSTEE'S PORTION OF STIPULATION TO GREYSON'S  LBR RULE 7026-1 MOTION [DKT.515 IN ADV., DKT.1209 IN LPG MAIN CASE, BOTH FILED 5/7/24] TO COMPEL TRUSTEE TO PRODUCE SIGNED GREYSON-PHOENIX CONTRACT, SEIZED BY TRUSTEE'S ATTORNEYS IN 6/2/23 LOCKOUT AT GREYSON, AND NOT RETURNED TO GREYSON, DESPITE GREYSON'S REQUEST TO PRODUCE DOCUMENTS SERVED ON TRUSTEE, TO TRUSTEE'S COUNSEL, ON 2/29/24; ; DECLARATIONS OF COURTNEY KELLEY, ISRAEL OROSCO, JAYDE TRINH, HAN TRINH, AND KATHLEEN MARCH TO THIS REPLY**

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) ___6/5/24___, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

See next page

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) ___6/5/24___,  I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

The Litigation Practice Group P.C.
17542 17th St
Suite 100
Tustin, CA 92780

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) ___6/5/24__, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Hon. Scott Clarkson
United States Bankruptcy Court
Central District of California
411 West Fourth Street, Suite 5130
Santa Ana, CA 92701-4593

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 6/5/24 | Kathleen P. March | /s/ Kathleen P. March |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**

- **Bradford Barnhardt**   bbarnhardt@marshackhays.com, bbarnhardt@ecf.courtdrive.com,alinares@ecf.courtdrive.com
- **Eric Bensamochan**   eric@eblawfirm.us, G63723@notify.cincompass.com
- **Michael Jay Berger**   michael.berger@bankruptcypower.com, yathida.nipha@bankruptcypower.com;michael.berger@ecf.inforuptcy.com
- **Ethan J Birnberg**   birnberg@portersimon.com, reich@portersimon.com
- **Peter W Bowie**   peter.bowie@dinsmore.com, caron.burke@dinsmore.com
- **Ronald K Brown**   ron@rkbrownlaw.com
- **Christopher Celentino**   christopher.celentino@dinsmore.com, caron.burke@dinsmore.com
- **Shawn M Christianson**   cmcintire@buchalter.com, schristianson@buchalter.com
- **Randall Baldwin Clark**   rbc@randallbclark.com
- **Leslie A Cohen**   leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com;clare@lesliecohenlaw.com
- **Michael W Davis**   mdavis@dtolaw.com, ygodson@dtolaw.com
- **Anthony Paul Diehl**   anthony@apdlaw.net, Diehl.AnthonyB112492@notify.bestcase.com,ecf@apdlaw.net
- **Jenny L Doling**   jd@jdl.law, dolingjr92080@notify.bestcase.com;15994@notices.nextchapterbk.com;jdoling@jubileebk.net
- **Daniel A Edelman**   dedelman@edcombs.com, courtecl@edcombs.com
- **Howard M Ehrenberg**   Howard.Ehrenberg@gmlaw.com, hehrenberg@ecf.courtdrive.com;hehrenberg@ecf.inforuptcy.com;Karen.Files@gmlaw.com;denise.walker@gmlaw.com
- **Meredith Fahn**   fahn@sbcglobal.net
- **William P Fennell**   william.fennell@fennelllaw.com, luralene.schultz@fennelllaw.com;wpf@ecf.courtdrive.com;hala.hammi@fennelllaw.com;naomi.cwalinski@fennelllaw.com;samantha.larimer@fennelllaw.com
- **Alan W Forsley**   alan.forsley@flpllp.com, awf@fkllawfirm.com,awf@fl-lawyers.net,addy@flpllp.com
- **Marc C Forsythe**   mforsythe@goeforlaw.com, mforsythe@goeforlaw.com;dcyrankowski@goeforlaw.com;Forsythe.MarcR136526@notify.bestcase.com
- **Jeremy Freedman**   jeremy.freedman@dinsmore.com, nicolette.murphy@dinsmore.com
- **Eric Gassman**   erg@gassmanlawgroup.com, gassman.ericb112993@notify.bestcase.com
- **Christopher Ghio**   christopher.ghio@dinsmore.com, nicolette.murphy@dinsmore.com;angelica.urena@dinsmore.com;deamira.romo@dinsmore.com
- **Amy Lynn Ginsburg**   efilings@ginsburglawgroup.com
- **Eric D Goldberg**   eric.goldberg@dlapiper.com, eric-goldberg-1103@ecf.pacerpro.com
- **Jeffrey I Golden**   jgolden@go2.law, kadele@ecf.courtdrive.com;cbmeeker@gmail.com;lbracken@wgllp.com;dfitzgerald@go2.law;golden.jeffreyi.b117954@notify.bestcase.com
- **Richard H Golubow**   rgolubow@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com
- **Mark Mark Good**   mark@markgood.com
- **David M Goodrich**   dgoodrich@go2.law, kadele@go2.law;dfitzgerald@go2.law;wggllp@ecf.courtdrive.com
- **D Edward Hays**   ehays@marshackhays.com, ehays@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@ecf.courtdrive.com
- **Alan Craig Hochheiser**   ahochheiser@mauricewutscher.com, arodriguez@mauricewutscher.com
- **Garrick A Hollander**   ghollander@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com
- **Brian L Holman**   b.holman@musickpeeler.com
- **Richard L. Hyde**   rhyde@awglaw.com
- **Peter L Isola**   pisola@hinshawlaw.com, rmojica@hinshawlaw.com,iking@hinshawlaw.com
- **Razmig Izakelian**   razmigizakelian@quinnemanuel.com
- **Sara Johnston**   sara.johnston@dinsmore.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                    **F 9013-3.1.PROOF.SERVICE**

- **Sweeney Kelly**    kelly@ksgklaw.com
- **Joon M Khang**    joon@khanglaw.com
- **Ira David Kharasch**    ikharasch@pszjlaw.com
- **Meredith King**    mking@fsl.law, ssanchez@fsl.law;jwilson@fsl.law
- **Nicholas A Koffroth**    nkoffroth@foxrothschild.com, khoang@foxrothschild.com
- **David S Kupetz**    David.Kupetz@lockelord.com, mylene.ruiz@lockelord.com
- **Christopher J Langley**    chris@slclawoffice.com, langleycr75251@notify.bestcase.com;ecf123@casedriver.com;john@slclawoffice.com
- **Kelli Ann Lee**    Kelli.lee@dinsmore.com, kristy.allen@dinsmore.com
- **Matthew A Lesnick**    matt@lesnickprince.com, matt@ecf.inforuptcy.com;jmack@lesnickprince.com
- **Daniel A Lev**    daniel.lev@gmlaw.com, cheryl.caldwell@gmlaw.com;dlev@ecf.courtdrive.com
- **Britteny Leyva**    bleyva@mayerbrown.com, 2396393420@filings.docketbird.com;KAWhite@mayerbrown.com;ladocket@mayerbrown.com
- **Marc A Lieberman**    marc.lieberman@flpllp.com, safa.saleem@flpllp.com,addy@flpllp.com
- **Michael D Lieberman**    mlieberman@lipsonneilson.com
- **Yosina M Lissebeck**    Yosina.Lissebeck@Dinsmore.com, caron.burke@dinsmore.com
- **Mitchell B Ludwig**    mbl@kpclegal.com, kad@kpclegal.com
- **Daniel S March**    marchlawoffice@gmail.com, marchdr94019@notify.bestcase.com
- **Kathleen P March**    kmarch@bkylawfirm.com, kmarch3@sbcglobal.net,kmarch@sbcglobal.net
- **Mark J Markus**    bklawr@bklaw.com, markjmarkus@gmail.com;markus.markj.r112926@notify.bestcase.com
- **Richard A Marshack (TR)**    pkraus@marshackhays.com, ecf.alert+Marshack@titlexi.com
- **Laila Masud**    lmasud@marshackhays.com, lmasud@ecf.courtdrive.com;lbuchanan@marshackhays.com;alinares@ecf.courtdrive.com
- **Sarah S. Mattingly**    sarah.mattingly@dinsmore.com
- **William McCormick**    Bill.McCormick@ag.tn.gov
- **Kenneth Misken**    Kenneth.M.Misken@usdoj.gov
- **Byron Z Moldo**    bmoldo@ecjlaw.com, aantonio@ecjlaw.com,dperez@ecjlaw.com
- **Glenn D. Moses**    gmoses@venable.com, cascavone@venable.com;ipmalcolm@venable.com;jadelgado@venable.com
- **Jamie D Mottola**    Jamie.Mottola@dinsmore.com, jhanawalt@ecf.inforuptcy.com
- **Alan I Nahmias**    anahmias@mbn.law, jdale@mbn.law
- **Victoria Newmark**    vnewmark@pszjlaw.com
- **Jacob Newsum-Bothamley**    jacob.bothamley@dinsmore.com, angelica.urena@dinsmore.com;deamira.romo@dinsmore.com
- **Queenie K Ng**    queenie.k.ng@usdoj.gov
- **Israel Orozco**    israel@iolawcorp.com
- **Keith C Owens**    kowens@foxrothschild.com, khoang@foxrothschild.com
- **Lisa Patel**    lpatel@lesnickprince.com, jmack@lesnickprince.com;jnavarro@lesnickprince.com
- **Michael R Pinkston**    rpinkston@seyfarth.com, jmcdermott@seyfarth.com,sfocalendar@seyfarth.com,5314522420@filings.docketbird.com,bankruptcydocket@seyfarth.com
- **Douglas A Plazak**    dplazak@rhlaw.com
- **Tyler Powell**    tyler.powell@dinsmore.com, jennifer.pitcock@dinsmore.com;rosetta.mitchell@dinsmore.com
- **Daniel H Reiss**    dhr@lnbyg.com, dhr@ecf.inforuptcy.com
- **Ronald N Richards**    ron@ronaldrichards.com, 7206828420@filings.docketbird.com
- **Vanessa Rodriguez**    vanessa.rodriguez@dinsmore.com, angelica.urena@dinsmore.com
- **Kevin Alan Rogers**    krogers@wellsmar.com
- **Gregory M Salvato**    gsalvato@salvatoboufadel.com, calendar@salvatolawoffices.com;jboufadel@salvatoboufadel.com;gsalvato@ecf.inforuptcy.com
- **Olivia Scott**    olivia.scott3@bclplaw.com
- **Jonathan Serrano**    jonathan.serrano@dinsmore.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

_June 2012_    **F 9013-3.1.PROOF.SERVICE**

- **Maureen J Shanahan**    Mstotaro@aol.com
- **Paul R Shankman**    PShankman@fortislaw.com, info@fortislaw.com
- **Zev Shechtman**    Zev.Shechtman@saul.com, zshechtman@ecf.inforuptcy.com;easter.santamaria@saul.com
- **Jeffrey M Singletary**    jsingletary@swlaw.com, rmckay@swlaw.com
- **Leslie Skorheim**    leslie.skorheim@usdoj.gov
- **Adam D Stein-Sapir**    info@pfllc.com
- **Howard Steinberg**    steinbergh@gtlaw.com, pearsallt@gtlaw.com;NEF-BK@gtlaw.com;howard-steinberg-6096@ecf.pacerpro.com
- **John H. Stephens**    john.stephens@dinsmore.com, lizbeth.alonso@dinsmore.com
- **Andrew Still**    astill@swlaw.com, kcollins@swlaw.com
- **Michael R Totaro**    Ocbkatty@aol.com
- **United States Trustee (SA)**    ustpregion16.sa.ecf@usdoj.gov
- **William J Wall**    wwall@wall-law.com
- **Sharon Z. Weiss**    sharon.weiss@bclplaw.com, raul.morales@bclplaw.com,REC_KM_ECF_SMO@bclplaw.com
- **Johnny White**    JWhite@wrslawyers.com, jlee@wrslawyers.com
- **Reina Zepeda**    rzepeda@omniagnt.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                                  **F 9013-3.1.PROOF.SERVICE**