1  D. EDWARD HAYS, #162507
   ehays@marshackhays.com
2  LAILA MASUD, #311731
   lmasud@marshackhays.com
3  **MARSHACK HAYS WOOD LLP**
   870 Roosevelt
4  Irvine, California 92620
   Telephone: (949) 333-7777
5  Facsimile: (949) 333-7778

6  General Counsel for Chapter 11 Trustee,
   RICHARD A. MARSHACK
7
8  Keith C. Owens (SBN 184841)
   Nicholas A. Koffroth (SBN 287854)
9  **FOX ROTHSCHILD LLP**
   10250 Constellation Blvd., Suite 900
10 Los Angeles CA 90067
   Telephone: (310) 598-4150
11 Facsimile: (310) 556-9828
   kowens@foxrothschild.com
12 nkoffroth@foxrothschild.com

13 Counsel for Official Committee of Unsecured Creditors

14          **UNITED STATES BANKRUPTCY COURT**
      **CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION**

15 In re,                                    Case No. 8:23-bk-10571-SC

16 THE LITIGATION PRACTICE GROUP P.C.,       Chapter 11 Case

17          Debtor.

18                                           **MEMORANDUM OF LAW IN SUPPORT**
                                             **OF CONFIRMATION OF MODIFIED**
19                                           **FIRST AMENDED JOINT CHAPTER 11**
                                             **PLAN OF LIQUIDATION (DATED JUNE**
20                                           **14, 2024); DECLARATIONS OF RICHARD**
                                             **A. MARSHACK AND CHAD KURTZ IN**
21                                           **SUPPORT THEREOF**

22                                           Hearing Date and Time:
                                             Date:    August 29, 2024
23                                           Time:    10:00 A.M.
                                             Ctrm:    5C – ViaZoom[1]
24                                           Place:   411 West Fourth Street
                                                      Santa Ana, CA 92701
25

26

27  ─────────────────────────
    [1] Check Judge Clarkson's tentative prior to hearing for further Zoom instructions.
28

PRACTADMIN\LIT\160526521.4

## TABLE OF CONTENTS

I. Introduction .................................................................................................................. 1

II. Factual Background ...................................................................................................... 3

    A.     General Background .......................................................................................... 3

    B.     Plan Overview ................................................................................................... 4

    C.     The Disclosure Statement and Solicitation ...................................................... 5

    D.     Vote Tabulation ................................................................................................ 6

III. Jurisdiction, Venue, and Statutory Predicates ........................................................... 7

IV. The Plan Satisfies Each Requirement for Confirmation ............................................ 7

    A.     The Plan Complies with the Applicable Provisions of the Bankruptcy Code
          (11 U.S.C. § 1129(a)(1)). ................................................................................ 8

          1.     The Plan Satisfies the Classification Requirements of § 1122. ................. 8
          2.     The Plan Satisfies the Seven Mandatory Plan Requirements of §
                1123(a)(1)–(a)(7). ................................................................................... 10

    B.     The Plan Proponents Have Complied with the Applicable Provisions of the
          Bankruptcy Code (11 U.S.C. § 1129(a)(2)). .................................................. 11

          1.     The Plan Proponents Are Authorized to File the Joint Plan Under §
                1121. ........................................................................................................ 12
          2.     The Plan Proponents Complied with the Disclosure Statement and
                Solicitation Requirements of § 1125. ...................................................... 12
           3.     The Plan Proponents Complied with the Plan Acceptance
                Requirements of § 1126. ......................................................................... 13
          4.     Any Further Modifications to the Plan Will Constitute Non-Material
                Modifications in Compliance with § 1127. ............................................ 14

    C.     The Plan Is Proposed in Good Faith and Not by Any Means Forbidden by
          Law (11 U.S.C. § 1129(a)(3)). ...................................................................... 16

    D.     The Plan Provides for Bankruptcy Court Approval of Certain Administrative
          Payments (11 U.S.C. § 1129(a)(4)) ............................................................... 18

    E.     The Identity of the Representatives of the Debtor and the Liquidating Trust
          Are Disclosed in the Plan and Their Appointment Is Consistent with Public
          Policy (11 U.S.C. § 1129(a)(5)). ................................................................... 19

    F.     The Plan Does Not Require Governmental Regulatory Approval of Rate
          Changes (11 U.S.C. § 1129(a)(6)). ............................................................... 20

    G.     The Plan Is in the Best Interests of Creditors and Interest Holders (11 U.S.C. §
          1129(a)(7)). .................................................................................................... 20

    H.     Acceptance by Impaired Classes (11 U.S.C. § 1129(a)(8)). .................................. 22

    I.     The Plan Complies with Statutorily Mandated Payment of Priority Claims (11
          U.S.C. § 1129(a)(9)) ...................................................................................... 23

J.    Each Impaired Class of Claims Has Accepted the Plan, Excluding the Acceptances of Insiders (11 U.S.C. § 1129(a)(10)). ............................................... 24

K.    The Plan Is Feasible (11 U.S.C. § 1129(a)(11)). ....................................................... 24

L.    The Plan Provides for the Payment of All Fees under 28 U.S.C. § 1930 (11 U.S.C. § 1129(a)(12)). ................................................................................................... 25

M.    The Plan Provides for the Payment of Retiree Benefits (11 U.S.C. § 1129(a)(13)). ................................................................................................................. 25

N.    Sections 1129(a)(14) and 1129(a)(15) Do Not Apply to the Plan. ....................... 25

O.    Section 1129(a)(16)) Does Not Apply to the Plan. ................................................ 26

P.    The Plan Satisfies the "Cramdown" Requirements of Section 1129(b)(1). .......... 26

        1.    The Plan does not unfairly discriminate against the rejecting Class. ........ 27
        2.    The Plan Is Fair and Equitable as to the Rejecting Class. ........................ 28

Q.    The Principal Purpose of the Plan Is Not Avoidance of Taxes (11 U.S.C. § 1129(d)). ................................................................................................................... 28

V. The Discretionary Contents of the Plan Should Be Approved ................................................. 29

A.    The Assumption and Assignment or Rejection of the Executory Contracts and Unexpired Leases under the Plan Should Be Approved. ...................................... 29

B.    The Plan's Release, Injunction and Exculpation Provisions Are Appropriate and Should Be Approved. .................................................................................... 30

        1.    Legal Standard for Approval of Release, Injunction, and Exculpation Provisions. .................................................................................................. 30
        2.    The Plan's Releases, Injunctions, and Exculpations Should Be Approved. ................................................................................................... 33

VI. Reservation of Rights. ............................................................................................................. 34

VII. Conclusion .............................................................................................................................. 34

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 203 N. LaSalle St. Ltd. P'ship*,
190 B.R. 567 (Bankr. N.D. Ill. 1995)..................................................................... 27, 28

*In re 222 Liberty Assoc.*,
108 B.R. 971 (Bankr. E.D. Pa. 1990)........................................................................ 27

*In re Aleris Int'l, Inc.*,
No. 09-10478 (BLS), 2010 WL 3492664 (Bankr. D. Del. May 13, 2010)............................. 27

*In re Am. Solar King Corp.*,
90 B.R. 808 (Bankr. W.D. Tex. 1988) ....................................................................... 15

*In re Ambanc La Mesa Ltd. P'ship*,
115 F.3d 650 (9th Cir. 1997)..................................................................................... 7

*In re Arnold*,
471 B.R. 578 (Bankr. C.D. Cal. 2012) ....................................................................... 13

*In re Art & Architecture Books of the 21st Century*,
No. 2:13-bk-14135-RK, 2016 WL 1118743 (Bankr. C.D. Cal. Mar. 18, 2016)..................... 13

*In re Aztec Co.*,
107 B.R. 585 (Bankr. M.D. Tenn. 1989) .................................................................... 27

*In re Bally Total Fitness of Greater N.Y., Inc.*,
No. 07-12395, 2007 WL 2779438 (Bankr. S.D.N.Y. Sept. 17, 2007)................................... 7

*Barakat v. Life Ins. Co. of Va. (In re Barakat)*,
99 F.3d 1520 (9th Cir. 1996)..................................................................................... 8

*Blixseth v. Credit Suisse*,
961 F.3d 1074 (9th Cir. 2020)................................................................................... 32

*In re Cal. Fidelity, Inc.*,
198 B.R. 567 (B.A.P. 9th Cir. 1996).......................................................................... 13

*Captain Blythers, Inc. v. Thompson (In re Captain Blythers, Inc.)*,
311 B.R. 530 (B.A.P. 9th Cir. 2004).......................................................................... 13

*In re Chemtura Corp.*,
439 B.R. 561 (Bankr. S.D.N.Y. 2010) ....................................................................... 17

*In re Chi-Feng Huang*,
23 B.R. 798 (B.A.P. 9th Cir. 1982)........................................................................ 29, 30

- iii -

*Citicorp Acceptance Co., Inc. v. Ruti-Sweetwater (In re Sweetwater)*,
57 B.R. 354 (D. Utah 1985) ............................................................................................ 16

*In re Crown Vantage, Inc.*,
421 F.3d 963 (9th Cir. 2005) ........................................................................................... 31

*In re Danville Land Invs., LLC*,
Case No. 2:11-bk-62685-DS (Bankr. C.D. Cal. May 23, 2013) .................................... 31

*In re Dow Corning Corp.*,
255 B.R. 445 (E.D. Mich. 2000) ..................................................................................... 30

*In re Downtown Inv. Club III*,
89 B.R. 59 (B.A.P. 9th Cir. 1988) ............................................................................... 3, 12

*In re Drexel Burnham Lambert Group, Inc.*,
138 B.R. 723 (Bankr. S.D.N.Y. 1992) ............................................................................ 18

*Durkin v. Benedor Corp. (In re G.I. Indust., Inc.)*,
204 F.3d 1276 (9th Cir. 2000) ......................................................................................... 29

*In re Eagle-Picher Indus., Inc.*,
203 B.R. 256 (Bankr. S.D. Ohio 1996) ........................................................................... 17

*In re Elsinore Shore Assocs.*,
91 B.R. 238 (Bankr. D.N.J. 1988) ................................................................................... 18

*Enron Corp. v. New Power Co. (In re New Power Co.)*,
438 F.3d 1113 (11th Cir. 2006) ....................................................................................... 15

*FDIC v. Castetter*,
184 F.3d 1040 (9th Cir. 1999) ......................................................................................... 30

*In re Freymiller Trucking, Inc.*,
190 B.R. 913 (Bankr. W.D. Okla. 1996) ......................................................................... 27

*In re Gardens Reg'l Hosp. & Med. Ctr., Inc.*,
No. 2:16-bk-17463-ER (Bankr. C.D. Cal. Sept. 18, 2018) ............................................ 31

*In re General Teamsters, Warehousemen & Helpers Union Local*,
890, 225 B.R. 719 (Bankr. N.D. Cal. 1998) .................................................................... 17

*In re Genesis Health Ventures, Inc.*,
266 B.R. ................................................................................................................... 27, 28

*In re Harbin*,
486 F.3d 510 (9th Cir. 2007) ........................................................................................... 25

- iv -

*Heartland Fed. Sav. & Loan Ass'n v. Briscoe Enters., Ltd. II (In re Briscoe Enters., Ltd. II)*,
    994 F.2d 1160 (5th Cir. 1993) ............................................................................................. 7

*In re Howard Marshall*,
    298 B.R. 670 (Bankr. C.D. Cal. 2003) ........................................................................... 16, 17

*John Hancock Mut. Life Ins. Co. v. Route 37 Bus. Park Assocs.*,
    987 F.2d 154 (3d Cir. 1993) ............................................................................................... 26

*In re Johns-Manville Corp.*,
    68 B.R. 618 (Bankr. S.D.N.Y. 1986) ............................................................................ 12, 27

*In re Jorgensen*,
    66 B.R. 104 (B.A.P. 9th Cir. 1986) ................................................................................... 17

*Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.)*,
    843 F.2d 636 (2d Cir. 1988) ........................................................................................... 8, 24

*Lazo v. Roberts*,
    No. CV15-7037-CAS(PJWx), 2016 WL 738273 (C.D. Cal. Feb. 22, 2016) ......................... 32

*In re Lernout & Hauspie Speech Prods., N.V.*,
    301 B.R. 651 (Bankr. D. Del. 2003) .................................................................................. 27

*In re Leslie Fay Cos.*,
    207 B.R. 764 (Bankr. S.D.N.Y. 1997) ............................................................................... 17

*In re Lighthouse Lodge, LLC*,
    No. 09-52610-RLE, 2010 WL 4053984 (Bankr. N.D. Cal. Oct. 14, 2010) .......................... 32

*In re Madison Hotel Assocs.*,
    749 F.2d 410 (7th Cir. 1984) ............................................................................................. 16

*Meritage Homes of Nev. Inc. v. JPMorgan Chase Bank, N.A. (In re S. Edge LLC)*,
    478 B.R. 403 (D. Nev. 2012) ............................................................................................. 32

*In re Mirant Corp.*,
    No. 03-46590, 2007 WL 1258932 (Bankr. N.D. Tex. Apr. 27, 2007) ..................................... 8

*In re Mt. Vernon Plaza Cmty. Urban Redevelopment Corp. I*,
    79 B.R. 305 (Bankr. S.D. Ohio 1987) ............................................................................... 15

*Navellier v. Sletten*,
    262 F.3d 923 (9th Cir. 2001) ............................................................................................. 30

*NLRB v. Bildisco & Bildisco*,
    465 U.S. 513 (1984) ........................................................................................................... 29

*In re Parks Lumber Co., Inc.*,
    19 B.R. 285 (Bankr. W.D. La. 1982) ..................................................................... 20

*Pizza of Haw., Inc. v. Shakey's, Inc. (In re Pizza of Haw., Inc.)*,
    761 F.2d 1374 (9th Cir. 1985)................................................................................ 24

*In re Pomona Valley Med. Grp.*,
    476 F.3d 665 (9th Cir. 2007).................................................................................. 30

*In re Produce Hawaii, Inc.*,
    41 B.R. 301 (Bankr. D. Haw. 1984)....................................................................... 20

*In re RCS Capital Dev., LLC*,
    BAP No. AZ-12-1626-JuTaAh, 2013 WL 3619172 (B.A.P. 9th Cir. July 16,
    2013) ...................................................................................................................... 25

*In re Rexford Props., LLC*,
    558 B.R. 352 (Bankr. C.D. Cal. 2016)...................................................................... 8

*In re Rohnert Park Auto Parts, Inc.*,
    113 B.R. 610 (B.A.P. 9th Cir. 1990)....................................................................... 30

*Ryan v. Loui (In re Corey)*,
    892 F.2d 829 (9th Cir. 1989).................................................................................. 16

*In re SCI Real Estate Invs., LLC*,
    Case No. 2:11-bk-15975-PC (Bankr. C.D. Cal. June 15, 2012) ............................ 31

*In re Station Casinos, Inc.*,
    2011 WL 6012089 (Bankr. D. Nev. July 28, 2011)................................................ 24

*In re Stearns Holdings, LLC*,
    607 B.R. 781 (Bankr. S.D.N.Y. 2019).................................................................... 32

*Stolrow v. Stolrow's, Inc. (In re Stolrow's, Inc.)*,
    84 B.R. 167 (B.A.P. 9th Cir. 1988)......................................................................... 16

*In re Sylmar Plaza, L.P.*,
    314 F.3d 1070 (9th Cir. 2002)........................................................................... 16, 17

*In re T Asset Acquisition Co., LLC*,
    No. 2:09-bk-31853-ER (Bankr. C.D. Cal. June 6, 2011)....................................... 31

*In re U.S. Truck Co.*,
    47 B.R. 932 (E.D. Mich. 1985).............................................................................. 25

*In re W. Asbestos Co.*,
    313 B.R. 832 (Bankr. N.D. Cal. 2003).................................................................... 32

*In re Warren*,
    89 B.R. 87 (B.A.P. 9th Cir. 1988) ......................................................................... 18

*In re Worldcom, Inc.*,
    2003 WL 23861928 (Bankr. S.D.N.Y. Oct. 31, 2003) ........................................... 18

*In re Yellowstone Mountain Club*,
    460 B.R. ............................................................................................................ 32, 33

*In re Zenith Elecs. Corp.*,
    241 B.R. 92 (Bankr. D. Del. 1999) ....................................................................... 26

**Statutes**

11 U.S.C. § 105(a) .......................................................................................................... 30

11 U.S.C. § 365(a) .......................................................................................................... 29

11 U.S.C. § 704(a)(1) ..................................................................................................... 21

11 U.S.C. § 1121 ............................................................................................................ 12

11 U.S.C. § 1121(c) ........................................................................................................ 12

11 U.S.C. § 1122 ............................................................................................... 7, 8, 10, 16

11 U.S.C. § 1122(a) .......................................................................................................... 8

11 U.S.C. § 1123 ............................................................................................... 7, 8, 14, 16

11 U.S.C. § 1123(a) ................................................................................................... 10, 11

11 U.S.C. § 1123(a)(1) ................................................................................................ 6, 10

11 U.S.C. § 1123(a)(2) ................................................................................................... 10

11 U.S.C. § 1123(a)(3) ................................................................................................... 10

11 U.S.C. § 1123(a)(4) ................................................................................................... 10

11 U.S.C. § 1123(a)(5) ................................................................................................... 10

11 U.S.C. § 1123(a)(6) ................................................................................................... 11

11 U.S.C. § 1123(a)(7) ................................................................................................... 11

11 U.S.C. § 1123(b) ....................................................................................................... 29

11 U.S.C. § 1125 ................................................................................................... 7, 12, 13

11 U.S.C. § 1125(b) .................................................................................................. 12, 13

PRACTADMIN\LIT\160526521.4

11 U.S.C. § 1126 ................................................................................................ 7, 12, 13, 14

11 U.S.C. § 1126(c) .................................................................................................... 13, 22

11 U.S.C. § 1126(d) .......................................................................................................... 13

11 U.S.C. § 1126(f) ............................................................................................... 6, 14, 22

11 U.S.C. § 1126(g) .......................................................................................................... 22

11 U.S.C. § 1127 ..................................................................................................... 7, 12, 14

11 U.S.C. § 1127(a) .......................................................................................................... 15

11 U.S.C. § 1127(d) .................................................................................................... 15, 16

11 U.S.C. § 1129 ............................................................................................................ 2, 7

11 U.S.C. § 1129(a) ....................................................................................... 7, 12, 17, 26

11 U.S.C. § 1129(a)(1) ....................................................................................................... 8

11 U.S.C. § 1129(a)(2) .................................................................................................. 11, 12

11 U.S.C. § 1129(a)(3) ............................................................................................ 16, 17, 18

11 U.S.C. § 1129(a)(4) .................................................................................................. 18, 19

11 U.S.C. § 1129(a)(5) .................................................................................................. 19, 20

11 U.S.C. § 1129(a)(5)(B) ................................................................................................ 20

11 U.S.C. § 1129(a)(6) ..................................................................................................... 20

11 U.S.C. § 1129(a)(7) ........................................................................................ 20, 21, 22

11 U.S.C. § 1129(a)(7)(i) .................................................................................................. 21

11 U.S.C. § 1129(a)(8) .................................................................................................. 22, 26

11 U.S.C. § 1129(a)(9) .................................................................................................. 23, 24

11 U.S.C. § 1129(a)(10) .................................................................................................... 24

11 U.S.C. § 1129(a)(11) ................................................................................................ 24, 25

11 U.S.C. § 1129(a)(12) .................................................................................................... 25

11 U.S.C. § 1129(a)(13) .................................................................................................... 25

11 U.S.C. § 1129(a)(14) ................................................................................................ 25, 26

11 U.S.C. § 1129(a)(15) ........................................................................................... 26

11 U.S.C. § 1129(b) ................................................................................... 7, 23, 26, 28

11 U.S.C. § 1129(d) ......................................................................................... 28, 29

28 U.S.C. § 157 ........................................................................................................ 7

28 U.S.C. § 157(b)(2) ............................................................................................. 7

28 U.S.C. § 1334 .................................................................................................... 7

28 U.S.C. § 1408 .................................................................................................... 7

28 U.S.C. § 1409 .................................................................................................... 7

28 U.S.C. § 1930 ................................................................................................. 25

**Rules**

Fed. R. Bankr. P. 3017 .......................................................................................... 12

Fed. R. Bankr. P. 3018 .......................................................................................... 12

Fed. R. Bankr. P. 3019 .......................................................................................... 15

Fed. R. Bankr. P. 3019(a) ..................................................................................... 15

Fed. R. Bankr. P. 3020(b)(2) ............................................................................... 18

**Other Authorities**

Arturo Bris, Ivo Welch and Ning Zhu, *The Costs of Bankruptcy: Chapter 7
    Liquidation versus Chapter 11 Reorganization* ............................................. 22

7 *Collier on Bankruptc*y ¶ 1129.02 (Richard Levin & Henry J. Sommer eds., 16th
    ed.) ..................................................................................................................... 8

H.R. REP. 109-31(I),  2005 WL 832198, 2005 U.S.C.C.A.N. 88 (2005) .................... 26

H.R. Rep. No. 95-595 (1977) ............................................................................ 8, 12

S. Rep. No. 95-989 (1978) ................................................................................ 8, 12

1      Richard A. Marshack, the Chapter 11 Trustee (the "Chapter 11 Trustee") of The Litigation

2 Practice Group P.C. ("Debtor") in the above-captioned chapter 11 bankruptcy case, together with

3 the Official Committee of Unsecured Creditors (the "Committee," and collectively with the Chapter

4 11 Trustee, the "Plan Proponents"), hereby file this brief (the "Confirmation Brief"),[2] in support of

5 confirmation of the *Modified First Amended Joint Chapter 11 Plan of Liquidation (Dated June 14,*

6 *2024)* [Docket No. 1344], as may be amended and supplemented from time to time (the "Plan").[3]

7 In support of the Confirmation Brief, the Plan Proponents submit the *Declaration of Richard A.*

8 *Marshack* (the "Marshack Declaration") and the *Declaration of Chad Kurtz* (the "Kurtz

9 Declaration") attached hereto, the *Declaration of Kim D. Steverson* (the "Steverson Declaration")

10 filed concurrently herewith, and respectfully state as follows:

**I.**

**INTRODUCTION**

13      The Plan is the result of the successful and substantial efforts of two estate fiduciary

14 representatives—the Chapter 11 Trustee and the Committee—that resulted in the overwhelming

15 acceptance of General Unsecured Creditors.  Since the inception of this Bankruptcy Case, the Court

16 and estate fiduciaries have been particularly mindful that prepetition stakeholders profited (or

17 hoped to profit) handsomely off the monthly payments of thousands of individual consumers that

18 made up the Debtor's prepetition clients.  Those same clients assert serious ethical and compliance

19 complaints against the Debtor's prepetition operations that went unaddressed by other regulatory

20 agencies charged with consumer protection prepetition.  While commercial creditors in this

21 Bankruptcy Case were no less affected by the Debtor's prepetition conduct that resulted in the

22 appointment of a Chapter 11 Trustee, the consumer clients were always the economic engine

23 driving recoveries.

24      It is fitting that now—faced with a potentially fractional recovery of their claims—

---

[2] The Confirmation Brief shall also constitute the Plan Proponents notice and request for permission to file a brief or memorandum of law exceeding 35 pages, which the Bankruptcy Court may determine on notice without a hearing, pursuant to LBR 9013-1(p)(11). *See also* LBR 9013-2(b).

[3] Unless otherwise provided herein, all capitalized terms have the definitions set forth in the Plan.

- 1 -

consumer creditors make up almost the entirety of General Unsecured Creditors that have voted to overwhelmingly confirm the Plan, which has been accepted by all General Unsecured Creditor Classes. As with the sale ultimately supported by the Committee, which resulted in, among other things, the appointment of a [monitor] to ensure that the buyer would comply with all of its legal and ethical obligations to clients who decided to remain with the buyer, the Plan includes key provisions, such as the Post-Confirmation Oversight Committee, that will permit General Unsecured Creditors to have a continued voice in the liquidation of the Debtor's assets for the benefit of creditors.  These key Plan provisions are the result of successful and substantial negotiations between the Chapter 11 Trustee and the Committee.  The Plan presents the most efficient path to maximizing the value of the ultimate recoveries to all creditor groups on a fair and equitable basis and provides for a recovery to the holders of the Allowed General Unsecured Claims.

By contrast, allegedly secured commercial creditors, that have mostly remained silent during this Bankruptcy Case on key issues such as surcharge, continue to do so in the context of voting. Four of the six Classes of secured creditors did not vote to approve or reject the Plan.

The secured creditors that have voted on the Plan have either voted to accept or are subject to tentative resolutions of their claims.  MNS Funding, LLC, the only valid vote in Class 1F, has voted to accept the Plan.  OHP-CDR LP rejected the Plan; however, the Trustee and OHP-CDR LP (and its affiliate PurchaseCo 80 LLC) are finalizing a proposed resolution of claims to be submitted to the Court for approval on or before confirmation.  Based on the votes and pending resolutions, the Plan Proponents have demonstrated that the Plan satisfies each requirement of § 1129 of the Bankruptcy Code, including the cramdown requirements, as set forth more fully herein.

This brief does not address objections to the Plan which are not due to be filed for another two weeks.  Yet, every ownership or secured claim is subject to either pending challenge or an anticipated settlement preconfirmation.  The Plan Proponents are confident that by the date of the Confirmation Hearing, the estate will have resolved through litigation or compromise all ownership and secured claims to clear the deck towards confirmation.  The Plan Proponents reserve the right to address each and every objection to confirmation in an omnibus reply brief.

- 2 -

Based on the foregoing, and as set forth below, the Plan is proposed in good faith and confirmation is warranted as a matter of law.  Accordingly, the Plan Proponents submit that the Court should enter the Confirmation Order substantially in the form attached hereto as **Exhibit "A."**

## II.

## **FACTUAL BACKGROUND**

**A.    General Background**

1.    On March 20, 2023 ("Petition Date"), The Litigation Practice Group P.C. ("Debtor") filed a voluntary petition under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* ("Bankruptcy Code") in the United States Bankruptcy Court for the Central District of California, Santa Ana Division (the "Court"), commencing the above-captioned bankruptcy case ("Bankruptcy Case").

2.    On May 8, 2023, the Office of the United States Trustee ("U.S. Trustee") appointed the Chapter 11 Trustee to serve in a fiduciary capacity as the chapter 11 trustee of the Debtor's Estate.  On June 23 and 29, 2023, the U.S. Trustee appointed the Committee to represent the interests of unsecured creditors in the Chapter 11 Case.

3.    On June 14, 2024, the Court entered the *Order: (I) Approving Proposed Disclosure Statement; (II) Approving Solicitation and Voting Procedures; (III) Approving Notice and Objection Procedures for Confirmation of Joint Chapter 11 Plan of Liquidation; (IV) Setting Related Deadlines; and (V) Granting Related Relief* [Docket No. 1348]("Disclosure Statement Order").  Among other things, the Disclosure Statement Order approved the *Disclosure Statement Describing Modified First Amended Joint Chapter 11 Plan of Liquidation (Dated June 14, 2024)* [Docket No. 1345] (the "Disclosure Statement") and established the following deadlines related to confirmation of the Plan, each as defined in the Disclosure Statement Order:

| Event | Date |
|---|---|
| Voting Record Date | May 15, 2024 |
| Voting Objection Deadline | June 20, 2024 |

- 3 -

| Solicitation Commencement Deadline | June 20, 2024 |
|---|---|
| Claims Estimation Motion Deadline | July 11, 2024 |
| Claims Estimation Motion Objection Deadline | July 18, 2024 |
| Voting Deadline | July 18, 2024 |
| Claims Estimation Hearing (if applicable) | August 1, 2024 |
| Confirmation Brief Deadline | August 1, 2024 |
| Confirmation Objection Deadline | August 15, 2024 |
| Confirmation Reply Deadline | August 22 2024 |
| Confirmation Hearing | August 29, 2024 |

**B.     Plan Overview**

4.     The Plan constitutes a liquidating chapter 11 plan for the Debtor's estate and provides for distribution of assets of the Debtor's estate that are already liquidated, or will be liquidated over time, to Holders of Allowed Claims in accordance with the terms of the Plan and priority provisions of the Bankruptcy Code. The Plan liquidates the Debtor for the benefits of its creditors by transferring all assets of the Debtor's estate to the Liquidating Trust. The Chapter 11 Trustee will serve as the trustee of the Liquidating Trust (in such capacity, the "Liquidating Trustee"). The Liquidating Trustee will implement the terms of the Plan and make distributions from the Liquidating Trust in accordance with the Plan and the Liquidating Trust Agreement. Except as otherwise provided by Order of the Court, distributions will occur at various intervals after the Effective Date as determined by the Liquidating Trustee. Upon confirmation of the Plan, the Liquidating Trust will be created to hold, collect, distribute, liquidate, and otherwise dispose of all funds, property, claims, rights, and causes of action of the Debtor and its estate that are not distributed under the Plan on the Effective Date.

5.     In order to confirm the Plan, the Plan Proponents have requested that the Bankruptcy Court approve and implement the terms of the Plan and other documents necessary to effectuate the Plan.

6.     The Plan describes the specific treatment of all Claims and the distribution of

- 4 -

proceeds to Holders of Allowed Claims. As set forth in Section III of the Plan, except for Administrative Claims, Professional Claims, and Priority Tax Claims, which are not required to be classified, all Claims and Interests are divided into Classes under the Plan, as follows.

| Class | Designation |
|---|---|
| 1A | Secured Claim of Bridge Funding Cap LLC |
| 1B | Secured Claim of Azzure Capital, LLC |
| 1C | Secured Claim of Diverse Capital LLC |
| 1D | Secured Claim of OHP-CDR LP |
| 1E | Secured Claim of PECC Corp. |
| 1F | Other Secured Claims |
| 2A | Liberty Acquisitions and PanAmerican |
| 2B | Wage, Salary, Commission Claims |
| 2C | Contributions to Employee Benefit Plan |
| 2D | Deposits |
| 3A | General Unsecured Claims |
| 3B | Consumer Client Convenience Class |
| 4 | Subordinated Claims |
| 5 | All Interests in the Debtor |

**C.    The Disclosure Statement and Solicitation**

7.    On March 22, 2024, the Debtor filed a joint motion [Docket No. 1059] seeking approval of the Disclosure Statement and procedures for the solicitation and tabulation of votes to accept or reject the Plan (the "Disclosure Statement Motion"), including proposed solicitation procedures (the "Solicitation Procedures") and vote tabulation procedures (the "Tabulation Procedures"). Subsequently, on June 14, 2024, the Plan Proponents filed their Plan and Disclosure Statement.

8.    On June 17, 2024, the Bankruptcy Court entered the Disclosure Statement Order following the hearing on the Disclosure Statement Motion, which, among other things, granted the Disclosure Statement Motion and approved the Disclosure Statement, the Solicitation Procedures, and the Tabulation Procedures.

9.    On or before June 20, 2024, the Plan Proponents, through their noticing and claims agent, Omni Agent Solutions ("Omni"), timely mailed a solicitation package (the "Solicitation Package") to holders of claims entitled to vote on the Plan (*i.e.*, 28 days prior to the deadline to objection to Plan confirmation and the Voting Deadline, and 70 days prior to the hearing on confirmation of the Plan). *See* Docket No. 1449. On June 24, 2024, the Plan Proponents also

published notice of the hearing on confirmation of the Plan in *USA Today*. *See* Docket No. 1377.

10.     The Plan Proponents will also file certain documents constituting the Plan supplement (as may be amended, modified, or supplemented from time to time, the "Plan Supplement"). The Plan Supplement will be filed prior to the Effective Date in accordance with the Plan and any consensual extensions of the deadlines set forth therein. *See* Plan § VI.A.65 (providing for the Plan Supplement Filing Date).

**D.     Vote Tabulation**

11.     The deadline to file objections to the Plan is August 15, 2024, and the deadline for all holders of Claims entitled to vote on the Plan to cast their Ballots was July 18, 2024 (the "Voting Deadline"). *See* Disclosure Stmt. Order, ¶ 15. Concurrently herewith, the Chapter 11 Trustee filed the Voting Declaration and reports of their Court-appointed voting and claims agent, Omni.

12.     After the Voting Deadline, Omni tabulated the votes to accept or reject the Plan reflected in the Ballots received on or before the Voting Deadline. *See* Steverson Decl., ¶ 10. As set forth in the Steverson Declaration and the table below, all except one class eligible to vote on the Plan (the "Voting Classes") voted to accept the Plan.  Specifically, only one of the secured creditor classes, Class 1D, voted to reject the Plan (though the Trustee anticipates resolving all disputes with this creditor promptly).  The two classes of unsecured creditors, in Class 3A and Class 3B, voted to accept the Plan along with the single valid vote in Class 1F.

| CLASS | ACCEPTING | | | | REJECTING | | | |
|---|---|---|---|---|---|---|---|---|
| | Ballot Count | Ballot Count (%) | Dollar Amount | Dollar Amount (%) | Ballot Count | Ballot Count (%) | Dollar Amount | Dollar Amount (%) |
| 1A | — | — | — | — | — | — | — | — |
| 1B | — | — | — | — | — | — | — | — |
| 1C | — | — | — | — | — | — | — | — |
| 1D | 0 | 0% | $0 | 0% | 1 | 100% | $16,938,950.00 | 100% |
| 1E | — | — | — | — | — | — | — | — |
| 1F | 1 | 100% | $15,275,269.62 | 100% | — | — | — | — |
| 2B | *Deemed to Accept*[4] | | | | — | | | |
| 2C | *Deemed to Accept* | | | | — | | | |

[4] The Plan erroneously provides that Class 2B, 2C, and 2D are voting classes.  However, the Disclosure Statement Order provides that "Ballots need not be provided to holders of Administrative Claims and Priority Tax Claims and claims in Class 2A, Class 2B, Class 2C, and Class 2D (collectively, the 'Unclassified/Unimpaired Claimholders'), because such holders are either unclassified, pursuant to § 1123(a)(1), or deemed to accept the plan, pursuant to § 1126(f)." *See* Disclosure Statement Order at 6.

| 2D | | | *Deemed to Accept* | | | | — | |
|------|------|--------|--------------|--------|-----|--------|-------------|--------|
| 3A | 776 | 96.52% | $8,979,173.22 | 96.45% | 28 | 3.48% | $330,811.30 | 3.55% |
| 3B | 324 | 100% | $3,542,583.86 | 100% | 0 | 0% | $0 | 0% |

13.     The hearing on Plan confirmation (the "Confirmation Hearing") is scheduled to take place on August 29, 2024, at 10:00 a.m. (Pacific Time).

**III.**

**JURISDICTION, VENUE, AND STATUTORY PREDICATES**

14.     The Bankruptcy Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding under 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

15.     The Plan Proponents seek, in part, an order confirming the Plan. The statutory predicates for this relief are §§ 1122, 1123, 1125, 1126, 1127, 1129.

**IV.**

**THE PLAN SATISFIES EACH REQUIREMENT FOR CONFIRMATION**

16.     To confirm the Plan, the Plan Proponents must demonstrate by a preponderance of the evidence that they have satisfied the provisions of § 1129. *See In re Ambanc La Mesa Ltd. P'ship*, 115 F.3d 650, 653 (9th Cir. 1997) ("The bankruptcy court ***must*** confirm a Chapter 11 debtor's plan . . . if the debtor proves by a preponderance of the evidence" that the plan meets the requirements of § 1129.) (emphasis added); *see also Heartland Fed. Sav. & Loan Ass'n v. Briscoe Enters., Ltd. II (In re Briscoe Enters., Ltd. II)*, 994 F.2d 1160, 1165 (5th Cir. 1993) ("The combination of legislative silence, Supreme Court holdings, and the structure of the [Bankruptcy] Code leads this Court to conclude that preponderance of the evidence is the debtor's appropriate standard of proof both under § 1129(a) and in a cramdown."); *In re Bally Total Fitness of Greater N.Y., Inc.,* No. 07-12395, 2007 WL 2779438, at *3 (Bankr. S.D.N.Y. Sept. 17, 2007) ("The Debtors, as proponents of the Plan, have the burden of proving the satisfaction of the elements of Sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence."). The Plan Proponents submit that the Plan complies with all relevant sections of the Bankruptcy Code, including §§ 1122, 1123, 1125, 1126, 1127, and 1129, as well as the Bankruptcy Rules and applicable non-bankruptcy law. This memorandum addresses each requirement individually.

- 7 -

**A.      The Plan Complies with the Applicable Provisions of the Bankruptcy Code (11 U.S.C. § 1129(a)(1)).**

17.      Section 1129(a)(1) requires that a chapter 11 plan "compl[y] with the applicable provisions of [the Bankruptcy Code]." 11 U.S.C. § 1129(a)(1). The legislative history of § 1129(a)(1) explains that this provision encompasses the requirements of §§ 1122 and 1123 including, principally, rules governing classification of claims and interests and the contents of a chapter 11 plan. S. Rep. No. 95-989, at 126 (1978); H.R. Rep. No. 95-595, at 412 (1977); *see also Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 843 F.2d 636, 648-49 (2d Cir. 1988) (suggesting Congress intended the phrase "'applicable provisions' in [§ 1129(a)(1)] to mean provisions of Chapter 11 . . . such as section 1122"); *see also In re Mirant Corp.,* No. 03-46590, 2007 WL 1258932, at *7 (Bankr. N.D. Tex. Apr. 27, 2007) (noting that objective of § 1129(a)(1) is to assure compliance with sections of Bankruptcy Code governing classification and contents of a plan); 7 *Collier on Bankruptc*y ¶ 1129.02 (Richard Levin & Henry J. Sommer eds., 16th ed.). As explained below, the Plan complies with §§ 1122 and 1123 in all respects.

**1.      The Plan Satisfies the Classification Requirements of § 1122.**

18.      Section 1122 of the Bankruptcy Code governs the classification of claims and interests. Section 1122(a) requires that a plan "place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests in such class." The Ninth Circuit has recognized that, under § 1122, plan proponents have significant flexibility to place similar claims into different classes, provided there is a rational basis for doing so. *See Barakat v. Life Ins. Co. of Va. (In re Barakat)*, 99 F.3d 1520, 1524–25 (9th Cir. 1996); *see also In re Rexford Props., LLC,* 558 B.R. 352, 361 (Bankr. C.D. Cal. 2016) ("A claim that is substantially similar to other claims may be classified separately from those claims, even though section 1122(a) does not say so expressly."). For example, courts have allowed separate classification where there are good business reasons for separate classification. *See Barakat*, 99 F.3d at 1524-25 (holding that substantially similar claims may be classified separately if there is a "legitimate business or economic justification" for doing so).

19.      Section III.C of the Plan provides for the separate classification of Claims and

- 8 -

Interests into fourteen different Classes (inclusive of subclasses) based upon differences in the legal or factual nature of those Claims and Interests or other relevant and objective criteria. Each of the Claims and Interests in a particular Class under the Plan is substantially similar to the other Claims and Interests in such Class, and the classification structure is necessary to implement certain aspects of the Plan. Valid and sound factual and legal reasons exist for the separate classification of Claims and Interests, including, but not limited to the fact that each of the Claims and Interests in a particular Class are substantially similar to the other Claims or Interests in such Class and therefore the classification scheme does not discriminate unfairly between or among holders of such Claims or Interests.

20.    Specifically, the Plan divides the classified Claims and Interests into the following Classes:

| Class | Designation | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| 1A | Secured Claim of Bridge Funding Cap LLC | Impaired | Yes |
| 1B | Secured Claim of Azzure Capital, LLC | Impaired | Yes |
| 1C | Secured Claim of Diverse Capital LLC | Impaired | Yes |
| 1D | Secured Claim of OHP-CDR LP | Impaired | Yes |
| 1E | Secured Claim of PECC Corp. | Impaired | Yes |
| 1F | Other Secured Claims | Impaired | Yes |
| 2A | Liberty Acquisitions and PanAmerican | Unimpaired | No – Deemed to Accept |
| 2B | Wage, Salary, Commission Claims | Impaired | No – Deemed to Accept |
| 2C | Contributions to Employee Benefit Plan | Impaired | No – Deemed to Accept |
| 2D | Deposits | Impaired | No – Deemed to Accept |
| 3A | General Unsecured Claims | Impaired | Yes |
| 3B | Consumer Client Convenience Class | Impaired | Yes |
| 4 | Subordinated Claims | Impaired | No – Deemed to Reject |
| 5 | All Interests in the Debtor | Impaired | No – Deemed to Reject |

21.    Administrative Claims, Professional Claims, Statutory Fees, and Priority Tax Claims (the "Unclassified Claims") are not classified and are separately treated under Section III.B of the Plan.

22.    Finally, the classification structure was not designed to gerrymander the Classes to

- 9 -

create an impaired accepting Class. This is evident in part based on the fact that three of the four classes that cast votes voted overwhelmingly to accept the Plan. Importantly, one accepting class is that of secured creditor MNS Funding, LLC. Additionally, the unsecured creditor classes—Class 3A and Class 3B—are comprised almost exclusively of votes from consumer creditor clients that hold general unsecured claims. Only one secured creditor class affirmatively rejected the Plan, and the Trustee anticipates resolving the disputes concerning that claim shortly. Accordingly, the Plan Proponents submit that the Plan fully complies with the requirements of § 1122.

>        **2.        The Plan Satisfies the Seven Mandatory Plan Requirements of § 1123(a)(1)–(a)(7).**

23.        Section 1123(a) requires that the contents of a chapter 11 plan: (i) designate classes of claims and interests; (ii) specify unimpaired classes of claims and interests; (iii) specify treatment of impaired classes of claims and interests; (iv) provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim agrees to a less favorable treatment of such particular claim or interest; (v) provide adequate means for the plan's implementation; (vi) provide for the prohibition of nonvoting equity securities and provide an appropriate distribution of voting power among the classes of securities; and (vii) contain only provisions that are consistent with the interests of the creditors and equity security holders and with public policy with respect to the manner of selection of any officer, director, or trustee under the plan.

24.        The Plan satisfies the mandatory plan requirements set forth in § 1123(a). Section III of the Plan satisfies the first three requirements of § 1123(a) by designating Classes of Claims, as required by § 1123(a)(1), specifying the Classes of Claims that are Unimpaired under the Plan, as required by § 1123(a)(2), and specifying the treatment of each Class of Claims that is impaired, as required by § 1123(a)(3). The Plan also satisfies § 1123(a)(4)—the fourth mandatory requirement—because the treatment of each Allowed Claim within a Class is the same as the treatment of each other Allowed Claim in that Class, unless the holder of a Claim consents to less favorable treatment on account of its Claim.

25.        The provisions of the Plan provide adequate means for the Plan's implementation, thus satisfying the fifth requirement of § 1123(a). *See* § 1123(a)(5). The provisions of Section IV

- 10 -

of the Plan, along with the Plan Supplement, relate to, among other things: (i) the Post-Effective Date management and dissolution of the Debtor; (ii) the establishment of the Liquidating Trust; (iii) the identity of the Liquidating Trustee and the identity of the Post-Effective Date Committee; (iv) funding the distribution to creditors; and (v) the preservation and/or destruction and abandonment of books and records in accordance with applicable law.

26.     The sixth requirement of § 1123(a)—*i.e.*, that if a debtor is a corporation, its plan must prohibit the issuance of nonvoting equity securities—is also met. *See* § 1123(a)(6). The Debtor will not issue any stock or other securities under the Plan. Thus, the Plan comports with § 1123(a)(6).

27.     Finally, the Plan fulfills the seventh requirement in § 1123(a), which requires that the Plan provisions with respect to the manner of selection of any officer, director, or trustee "contain only provisions that are consistent with the interests of creditors and equity security holders and with public policy." 11 U.S.C. § 1123(a)(7). Section IV.B.5 of the Plan provides for the appointment of a Post-Confirmation Oversight Committee. Section IV.A of the Plan provides that the Liquidating Trustee shall be the sole representative for the Liquidating Trust and that the Debtor shall continue in existence solely for the limited purposes of: (i) making any Effective Date payments required under the Plan; (ii) transferring the Debtor's assets to the Liquidating Trust under the terms of the Plan; and (iii) taking all steps to execute all instruments and documents necessary to effectuate the Plan.

28.     The formation of the Post-Confirmation Oversight Committee and Liquidating Trust, and the continuing existence of the Debtor for limited purposes, is consistent with public policy and the interests of creditors. The Plan is also in compliance with the requirement that the selection of any officer, director, or trustee be made in the interests of equity security holders because the Plan does not provide for the creation of any equity security interests. *See* 11 U.S.C. § 1123(a)(7).

**B.      The Plan Proponents Have Complied with the Applicable Provisions of the Bankruptcy Code (11 U.S.C. § 1129(a)(2)).**

29.     Section 1129(a)(2) requires that the proponent of a chapter 11 plan comply with the

applicable provisions of the Bankruptcy Code. The legislative history to § 1129(a)(2) reflects that this provision is intended to encompass the disclosure and solicitation requirements set forth in § 1125 and the plan acceptance requirements set forth in § 1126. *See In re Johns-Manville Corp*., 68 B.R. 618, 630 (Bankr. S.D.N.Y. 1986), *aff'd in part, rev'd in part on other grounds*, 78 B.R. 407 (S.D.N.Y. 1987), aff'd, 843 F.2d 636 ("Objections to confirmation raised under § 1129(a)(2) generally involve the alleged failure of the plan proponent to comply with § 1125 and § 1126 of the [Bankruptcy] Code."); *In re Downtown Inv. Club III,* 89 B.R. 59, 65 (B.A.P. 9th Cir. 1988) ("Section 1129(a)(2) in turn requires that the proponent of the plan complies with the applicable provisions of Title 11."); *see also* H.R. Rep. No. 95-595, at 412 (1977); S. Rep. No. 95-989, at 126 (1978) ("Paragraph (2) [of section 1129(a)] requires that the proponent of the plan comply with the applicable provisions of chapter 11, such as section 1125 regarding disclosure."). The Plan Proponents have complied with these provisions, including §§ 1121, 1125, 1126, and 1127, as well as Bankruptcy Rules 3017 and 3018, by carrying out the Solicitation Procedures approved by the Court in its Disclosure Statement Order.

**1.     The Plan Proponents Are Authorized to File the Joint Plan Under § 1121.**

30.     Section 1121(c) provides that "[a]ny party in interest including the debtor . . . a creditors' committee, [or] . . . a creditor . . . may file a plan." 11 U.S.C. § 1121(c). Because the Committee and the Chapter 11 Trustee are co-proponents of the Plan, and the Plan Proponents are both clearly parties in interest as contemplated by § 1121(c), the requirements of § 1121 are satisfied.

**2.     The Plan Proponents Complied with the Disclosure Statement and Solicitation Requirements of § 1125.**

31.     Section 1125(b) prohibits the solicitation of acceptances or rejections of a plan "unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information." 11 U.S.C. § 1125(b). The purpose of § 1125 is to ensure that parties in interest are fully informed on the condition of the Debtor, the means for implementation of the Plan, and the treatment of all classes of Claims and Interests so they may

- 12 -

make an informed decision on whether to accept or reject the Plan. *See In re Cal. Fidelity, Inc.,* 198 B.R. 567, 571 (B.A.P. 9th Cir. 1996) ("At a minimum, § 1125(b) seeks to guarantee that a creditor receives adequate information about the plan before the creditor is asked for a vote."); *In re Art & Architecture Books of the 21st Century*, No. 2:13-bk-14135-RK, 2016 WL 1118743, at *14 (Bankr. C.D. Cal. Mar. 18, 2016) ("The primary purpose of a disclosure statement is to give creditors and interest holders the information they need to decide whether to accept the plan.") (citing *Captain Blythers, Inc. v. Thompson (In re Captain Blythers, Inc.),* 311 B.R. 530, 537 (B.A.P. 9th Cir. 2004)); *In re Arnold*, 471 B.R. 578, 584-85 (Bankr. C.D. Cal. 2012).

32.    The Plan Proponents have satisfied § 1125. On June 17, 2024, the Court entered the Disclosure Statement Order, approving the Disclosure Statement as containing adequate information, and approving the Solicitation and Tabulation Procedures. *See* Disclosure Statement Order, ¶¶ C, H, I, 9, 25. The Disclosure Statement Order approved the contents of the Solicitation Packages that the Plan Proponents provided to holders of Claims in Voting Classes and the timing and method of delivery of the Solicitation Packages. *See id*. ¶¶ H, I. As detailed in the Steverson Declaration and related proofs of service, the Plan Proponents complied in all respects with the Solicitation Procedures as outlined in the Disclosure Statement Order, including their compliance with service and publication requirements and not soliciting acceptance of the Plan from any creditor prior to sending the Solicitation Packages that contained the Court-approved Disclosure Statement. *See* Steverson Decl. at ¶¶ 5-9; Docket Nos. 1377, 1449.

**3.    The Plan Proponents Complied with the Plan Acceptance Requirements of § 1126.**

33.    Section 1126 provides that only holders of claims and equity interests in impaired classes that will receive or retain property under a plan on account of such claims or equity interests may vote to accept or reject a plan. 11 U.S.C. § 1126. Sections 1126(c) and (d) specify the requirements for acceptance of a plan by a class of claims. Specifically, § 1126(c) provides:

> A class of claims has accepted a plan if such plan has been accepted by creditors, other than any entity designated under subsection (e) of [section 1126], that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by

creditors, other than any entity designated under subsection (e) of [section 1126], that have accepted or rejected such plan.

*Id.*

34.     Classes 2A, 2B, 2C, and 2D are Unimpaired under the Plan. Pursuant to § 1126(f), holders of Claims in the Unimpaired Class are not entitled to vote on the Plan and are conclusively deemed to have accepted the Plan.

35.     Classes 4 and 5 are Impaired under the Plan, and, pursuant to § 1126(f), are not entitled to vote on the Plan because they are conclusively deemed to have rejected the Plan

36.     The Plan Proponents solicited votes on the Plan from the Voting Classes—that is, the holders of all Allowed Claims in each Impaired Class entitled to receive distributions under the Plan: Classes 1A–1F and 3A–3B. As noted above, the Voting Deadline occurred on July 19, 2024, and the Steverson Declaration details the results of the voting process in accordance with § 1126. Based on the foregoing, the Plan Proponents' solicitation of votes on the Plan was undertaken in conformity with § 1126 and the Disclosure Statement Order.

**4.      Any Further Modifications to the Plan Will Constitute Non-Material Modifications in Compliance with § 1127.**

37.     In the interest of clarifying and consensually resolving outstanding issues and informal objections to confirmation of the Plan, the Plan Proponents may make certain non-material modifications to the Plan (the "Non-Material Modifications"). Prior to the Confirmation Hearing, the Plan Proponents will file a revised version of the Plan to reflect any non-material and technical changes that do not materially or adversely affect the treatment of any holder of a Claim under the Plan. In addition, the Plan Proponents will file a redline comparison of the Plan incorporating the Non-Material Modifications to the prior version of the Plan.

38.     Section 1127 allows a plan proponent to modify the plan "at any time" before confirmation. Specifically, § 1127 provides:

(a) The proponent of a plan may modify such plan at any time before confirmation, but may not modify such plan so that such plan as modified fails to meet the requirements of sections 1122 and 1123 of the title. After the proponent of a plan files a modification of such plan with the court, the plan as modified becomes the plan . . . .

- 14 -

> (d) Any holder of a claim or interest that has accepted or rejected a plan is deemed to have accepted or rejected, as the case may be, such plan as modified, unless, within the time fixed by the court, such holder changes such holder's previous acceptance or rejection.

11 U.S.C. § 1127(a), (d).

39.    Accordingly, bankruptcy courts have typically allowed a plan proponent to make non-material changes to a plan without any special procedures or vote resolicitation. *See, e.g., Enron Corp. v. New Power Co. (In re New Power Co.),* 438 F.3d 1113, 1117-18 (11th Cir. 2006) ("[T]he bankruptcy court may deem a claim or interest holder's vote for or against a plan as a corresponding vote in relation to a modified plan unless the modification materially and adversely changes the way that claim or interest holder is treated."); *In re Am. Solar King Corp.,* 90 B.R. 808, 826 (Bankr. W.D. Tex. 1988) (stating that "if a modification does not 'materially' impact a claimant's treatment, the change is not adverse and the court may deem that prior acceptances apply to the amended plan as well.") (citation omitted); *In re Mt. Vernon Plaza Cmty. Urban Redevelopment Corp. I,* 79 B.R. 305, 306 (Bankr. S.D. Ohio 1987) (all creditors were deemed to have accepted plan as modified because "[n]one of the changes negatively affects the repayment of creditors, the length of the [p]lan, or the protected property interests of parties in interest.").

40.    In addition, Bankruptcy Rule 3019, designed to implement § 1127(d), in turn, provides in relevant part that:

> In a . . . chapter 11 case, after a plan has been accepted and before its confirmation, the proponent may file a modification of the plan. If the court finds after hearing on notice to the trustee, any committee appointed under the Code, and any other entity designated by the court that the proposed modification does not adversely change the treatment of the claim of any creditor or the interest of any equity security holder who has not accepted in writing the modification, it shall be deemed accepted by all creditors and equity security holders who have previously accepted the plan.

Bankruptcy Rule 3019(a).

41.    The Disclosure Statement Order provides that the Plan Proponents file this confirmation brief in advance of receiving any objections to the Plan.  Nevertheless, the Plan Proponents have been in communication with a number of stakeholders concerning informal or potential objections to confirmation of the Plan and related resolutions.  The Plan Proponents may

also receiver objections by the Objection Deadline. The Plan Proponents intend to address these issues with certain revisions to the Plan and Confirmation Order and, subject to further briefing and argument, will constitute Non-Material Modifications to the Plan.

42. As will be establish in any supplement in support of Non-Material Modifications, the requirements of § 1127(d) have been satisfied because all creditors in these Chapter 11 Cases have notice of the Confirmation Hearing, and will have an opportunity to object to any Non-Material Modifications at that time. *See Citicorp Acceptance Co., Inc. v. Ruti-Sweetwater (In re Sweetwater),* 57 B.R. 354, 358 (D. Utah 1985) (creditors who had knowledge of pending confirmation hearing had sufficient opportunity to raise objections to modification of the plan). Accordingly, because Non-Material Modifications that may be made prior to or at the Confirmation Hearing will be non-material and will not materially or adversely affect the treatment of any creditor that has previously accepted the Plan, and the Plan, as modified, continues to comply with the requirements of §§ 1122 and 1123, no further solicitation will be required.

**C.    The Plan Is Proposed in Good Faith and Not by Any Means Forbidden by Law (11 U.S.C. § 1129(a)(3)).**

43. Section 1129(a)(3) provides that a court may confirm a plan only if the plan is proposed "in good faith and not by any means forbidden by law." Section 1129(a)(3) does not define good faith in the context of proposing a plan of liquidation. However, the Ninth Circuit defined that standard in the case of *In re Sylmar Plaza, L.P.*, 314 F.3d 1070 (9th Cir. 2002), by holding that "a plan is proposed in good faith where it achieves a result consistent with the objectives and purposes of the Code." *Id.* at 1074; *accord Ryan v. Loui (In re Corey),* 892 F.2d 829, 835 (9th Cir. 1989); *In re Madison Hotel Assocs.*, 749 F.2d 410, 425 (7th Cir. 1984). The Ninth Circuit in Sylmar Plaza further held that "the requisite good faith determination is based on the totality of the circumstances." *Id.* at 1074; *accord Stolrow v. Stolrow's, Inc. (In re Stolrow's, Inc.),* 84 B.R. 167, 172 (B.A.P. 9th Cir. 1988).

44. A Court in this District adopted the same Ninth Circuit standards for good faith in proposing a plan of reorganization in the case of *In re Howard Marshall*, 298 B.R. 670, 675-676 (Bankr. C.D. Cal. 2003). In the *Marshall* case, the Court found that "the good faith evaluation must

- 16 -

be made on a case by case basis." *Id.* at 676; *see also Sylmar Plaza*, 314 F.3d at 1075; *Jorgensen*, 66 B.R. 104, 108-09 (B.A.P. 9th Cir. 1986). The Court further held that "this court must make its own independent evaluation of the debtors' good faith for the purpose of plan confirmation" and that "[p]art of the good faith analysis is that the plan must deal with the creditors in a fundamentally fair manner." *Id.* at 676; *see also Jorgensen*, 66 B.R. at 108–09. However, a plan proponent need not consider every feasible alternative form of a plan, so long as the proposed plan meets the requirements of §1129(a). *Id.* at 676; *see In re General Teamsters, Warehousemen & Helpers Union Local,* 890, 225 B.R. 719, 729 (Bankr. N.D. Cal. 1998).

45.    Good faith for purposes of § 1129(a)(3) may be found where the plan is supported by key creditor constituencies, or was the result of extensive arm's-length negotiations with creditors. *See In re Chemtura Corp.*, 439 B.R. 561, 608-09 (Bankr. S.D.N.Y. 2010) (finding good faith requirement met because, among other things, the debtor negotiated and reached agreements with several parties-in-interest to put forward a chapter 11 plan which "in the aggregate demonstrate a good faith effort on the part of the debtor to consider the needs and concerns of all major constituencies in this case") (quotation marks and citation omitted); *In re Leslie Fay Cos.*, 207 B.R. 764, 781 (Bankr. S.D.N.Y. 1997) ("The fact that the plan is proposed by the committee as well as the debtors is strong evidence that the plan is proposed in good faith."); *In re Eagle-Picher Indus., Inc.,* 203 B.R. 256, 274 (Bankr. S.D. Ohio 1996) (finding that chapter 11 plan was proposed in good faith when, among other things, it was based on extensive arm's-length negotiations among plan proponents and other parties-in interest).

46.    Here, the Plan is the product of months of extensive arm's-length independent and interrelated negotiations among the Chapter 11 Trustee and the Committee.  Indeed, the Plan is supported by one of the key creditor constituencies from the inception of this case: former consumer clients of the Debtor that hold general unsecured claims comprise the vast majority of the voting unsecured creditors.  This constituency has overwhelmingly voted to support the Plan.  The negotiations between the Chapter 11 Trustee and the Committee were difficult and addressed complex legal and factual issues. These settlements and compromises on some of the largest creditors' claims provided for allowed administrative and priority creditors to receive a distribution

- 17 -

under the Plan on or soon after the Effective Date and ultimately also allow for the best likelihood of a distribution to unsecured creditors. This facilitated the best possible recovery for all creditors under the totality of the circumstances. As a result of these compromises, the Plan has the support of all classes that voted on the Plan except a single secured creditor—the Class 1D Claim held by OHP-CDR LP.  However, the Trustee anticipates presenting a resolution to the dispute with OHP-CDR LP and its affiliate to the Court promptly.  The support from the constituencies voting in favor of the Plan—and the rejecting vote from just one secured creditor class—evidences the Plan Proponents' good faith and good intentions in proposing the Plan, and the totality of circumstances surrounding its formulation clearly promotes the purposes of the Bankruptcy Code.

47.    Additionally, Bankruptcy Rule 3020(b)(2) provides that the Court may determine that a plan proponent proposed a plan in good faith and not by any means forbidden by law, without receiving evidence, if no party in interest has timely objected to the plan proponent's good faith. *See* Bankruptcy Rule 3020(b)(2) ("If no objection is timely filed, the court may determine that the plan has been proposed in good faith and not by any means forbidden by law without receiving evidence on such issue."); *see also In re Warren*, 89 B.R. 87, 91 (B.A.P. 9th Cir. 1988) ("Rule 3020(b)(2) states that without objection the court "may" find that the plan was filed in good faith without receiving evidence."). Although parties may object to confirmation, the Plan Proponents do not anticipate that any party will challenge the Plan Proponents' good faith in proposing the Plan. The Plan Proponents therefore submit that the requirements of § 1129(a)(3) have been satisfied.

**D.    The Plan Provides for Bankruptcy Court Approval of Certain Administrative Payments (11 U.S.C. § 1129(a)(4)).**

48.    Section 1129(a)(4) requires that certain professional fees and expenses paid by the plan proponent, by the debtor, or by a person issuing securities or acquiring property under a plan, be subject to Court approval as reasonable. *See, e.g., In re Worldcom, Inc.,* 2003 WL 23861928, at *53-54 (Bankr. S.D.N.Y. Oct. 31, 2003); *Drexel*, 138 B.R. at 760; *In re Elsinore Shore Assocs*., 91 B.R. 238, 268 (Bankr. D.N.J. 1988) (holding that requirements of section 1129(a)(4) were satisfied where plan provided for payment of only "allowed" administrative expenses). Here, the Plan

- 18 -

mandates that all payments (except for ordinary course payments on account of Administrative Claims) made from the Debtor's estate for services, costs, or expenses in connection with this Bankruptcy Case before the Effective Date, including all Professional Fee Claims, must be approved by, or are subject to the approval of, the Bankruptcy Court as reasonable. *See* Plan §§ 2.1, 2.2.

49.    The Plan makes clear that such Professional Fee Claims are contingent on Bankruptcy Court approval and sets forth a procedure for Holders of Professional Fee Claims to submit applications for allowance of compensation for services rendered and reimbursement of expenses with the Bankruptcy Court.  Specifically, Professional Fee Claims:

> must be approved by Court order before they may be paid. All final requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Effective Date must be filed no later than forty-five (45) days after the Effective Date. The Bankruptcy Court shall determine the amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, Bankruptcy Rules, and prior Bankruptcy Court orders. Only the amount of fees and expenses allowed by the Bankruptcy Court will be required to be paid under this Plan.

Plan § III.B.2.

50.    In addition, Section IV.O of the Plan provides that the Bankruptcy Court will retain jurisdiction after the Effective Date to hear and determine all applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan. Accordingly, the Plan complies with the requirements of § 1129(a)(4).

**E.    The Identity of the Representatives of the Debtor and the Liquidating Trust Are Disclosed in the Plan and Their Appointment Is Consistent with Public Policy (11 U.S.C. § 1129(a)(5)).**

51.    Section 1129(a)(5)(A)(i) provides that a court may confirm a plan only if the plan proponent discloses 'the identity and affiliations of any individual proposed to serve, after confirmation of the plan, as a director, officer of voting trustee of the debtor . . . or a successor to the Debtor under the plan." Section 1129(a)(5)(A)(ii) requires that the appointment to, or continuance of a director, officer or voting trustee be "consistent with the best interests of creditors

- 19 -

and equity holders and with public policy." *In re Produce Hawaii, Inc.*, 41 B.R. 301, 304 (Bankr. D. Haw. 1984); *In re Parks Lumber Co., Inc.*, 19 B.R. 285, 291 (Bankr. W.D. La. 1982). Section 1129(a)(5)(B) provides that a Court may confirm a plan only if the plan proponent discloses "the identity of any insider that will be employed or retained by the reorganized debtor, and the nature of any compensation for such insider."

52.    The Plan discloses the identity of the Liquidating Trustee to be Richard A. Marshack and sets forth the process to select the members of the Post-Confirmation Oversight Committee. The Plan further provides that the Liquidating Trustee shall serve as the sole manager and officer of the Debtor. *See* Plan §§ IV.A, IV.B.5. The Liquidating Trust Agreement discloses the identities of the initial members of the Post-Confirmation Oversight Committee. *See id.* § IV.B.5. The Plan Proponents submit that the selection of the Liquidation Trustee and the members of the Post-Confirmation Oversight Committee is consistent with the best interests of creditors and public policy.

53.    Further, the process set forth in the Plan for selecting the Liquidating Trustee and the Post-Confirmation Oversight Committee complies with §1129(a)(5)(A)(ii), which essentially asks the Bankruptcy Court to ensure that the post-confirmation governance of a debtor is in "good hands." The Plan and Liquidating Trust Agreement also establishes procedures for the resignation, termination, and replacement of members of the Post-Confirmation Oversight Committee and Liquidation Trustee to ensure continuity of governance. Accordingly, the Plan Proponents have satisfied the requirements of § 1129(a)(5).

**F.    The Plan Does Not Require Governmental Regulatory Approval of Rate Changes (11 U.S.C. § 1129(a)(6)).**

54.    Section 1129(a)(6) permits confirmation of a chapter 11 plan only if any regulatory commission that will have jurisdiction over the debtor after confirmation has approved any rate change provided for in the plan. *See* 11 U.S.C. § 1129(a)(6). Section 1129(a)(6) is inapplicable here because no regulatory commission will have jurisdiction over the Debtor under the liquidating Plan.

**G.    The Plan Is in the Best Interests of Creditors and Interest Holders (11 U.S.C. § 1129(a)(7)).**

55.     The "best interests of creditors" test of § 1129(a)(7) requires that, with respect to each impaired class of claims or interests, each individual holder of a claim or interest has either accepted the plan or will receive or retain property having a present value, as of the effective date of the plan, of not less than what such holder would receive if the debtor were liquidated under chapter 7 of the Bankruptcy Code at that time. *See* 11 U.S.C. § 1129(a)(7).

56.     The Plan Proponents have satisfied the Best Interest Test with respect to Classes 3A and 3B because such Classes have voted to accept the Plan. *See*, *supra*, Section II.D. (setting forth the vote tabulation); *see* 11 U.S.C. § 1129(a)(7)(i) (providing that the Best Interest Test is satisfied when, "[w]ith respect to each impaired class of claims or interests[,] each holder of a claim or interest of such class has accepted the plan.").

57.     With respect to Classes 1A through 1F, all secured creditors will receive more under the Plan than if the case were converted to chapter 7. Generally, in a chapter 7 case, (i) the debtor's assets are usually sold by a chapter 7 trustee,(ii) secured creditors are paid first from the sales proceeds of properties on which the secured creditor has a lien, (iii) administrative claims are paid thereafter, (iv) unsecured creditors are paid after administrative claims from any remaining sales proceeds, according to their rights to priority, (v) unsecured creditors with the same priority share in proportion to the amount of their allowed claim in relationship to the amount of total allowed unsecured claims, and (vi) finally, interest holders receive the balance that remains after all creditors are paid, if any.

58.     Here, in the event of a conversion of the Bankruptcy Case to chapter 7, a chapter 7 trustee would be appointed to administer the Debtor's assets. Such chapter 7 trustee would be completely unfamiliar with the complexities of this Bankruptcy Case and would be under a statutory duty to liquidate the Debtor's assets as expeditiously as possible.  *See* 11 U.S.C. § 704(a)(1).

59.     The advantages of finishing a liquidation in chapter 11 are not just "common knowledge" among professionals. Experts have also concluded that conversion to chapter 7 offers few advantages over liquidation in chapter 11: cases converted from chapter 11 to chapter 7 take significantly longer to resolve than a "pure" chapter 11 liquidation, and such cases require similar,

if not greater, fees, and in the end provide creditors with statistically lower recovery rates—often zero—than a comparable Chapter 11 procedure. *See* Arturo Bris, Ivo Welch and Ning Zhu, *The Costs of Bankruptcy: Chapter 7 Liquidation versus Chapter 11 Reorganization*, 61(3) THE JOURNAL OF FINANCE 1253-1303 (Feb. 2006).

60.    As discussed in more detail in the Liquidation Analysis attached as Exhibit A to the Disclosure Statement, the Plan satisfies the "Best Interest Test." Accordingly, § 1129(a)(7) is satisfied because the Plan provides fair and equitable treatment of all classes of creditors and the greatest feasible recovery to all creditors.

**H.    Acceptance by Impaired Classes (11 U.S.C. § 1129(a)(8)).**

61.    Section 1129(a)(8) requires that each class of claims or interests must either accept the plan or be unimpaired. *See* 11 U.S.C. § 1129(a)(8). Pursuant to § 1126(c), a class of claims accepts a plan if holders of at least two-thirds in amount and more than one-half in number of the allowed claims in that class vote to accept the plan. *See* 11 U.S.C. § 1126(c). A class that is not impaired under a plan is conclusively presumed to have accepted the plan. *See* 11 U.S.C. § 1126(f). On the other hand, a class is deemed to reject a plan if the plan provides that the claims of that class do not receive or retain any property under the plan on account of such claims or interests. *See* 11 U.S.C. § 1126(g).

62.    The Steverson Declaration reflects that the Plan has been accepted by Classes 3A and 3B and rejected by Class 1D. Classes 2A through 2D are unimpaired by the Plan and, thus, are deemed to accept the Plan. Classes 4 and 5 are deemed to have rejected the Plan. The Voting Classes voted to accept or reject the Plan as follows:

| Class | Description | Percentage Accepting in Number | Percentage Accepting in Dollar Amount |
|-------|-------------|-------------------------------|---------------------------------------|
| 1A | Secured Claim of Bridge Funding Cap LLC | — | — |
| 1B | Secured Claim of Azzure Capital, LLC | — | — |
| 1C | Secured Claim of Diverse Capital LLC | — | — |
| 1D | Secured Claim of OHP-CDR LP | 0% | 0% |
| 1E | Secured Claim of PECC Corp. | — | — |
| 1F | Other Secured Claims | 100% | 100% |
| 3A | General Unsecured Claims | 96.52% | 96.45% |

- 22 -

| 3B | Consumer Client Convenience Class | 100% | 100% |

63.     Because not all Classes voted to accept the plan, the Plan Proponents seek confirmation of the Plan under the cramdown provisions of Bankruptcy Code section 1129(b), as discussed below.

## I.     The Plan Complies with Statutorily Mandated Payment of Priority Claims (11 U.S.C. § 1129(a)(9)).

64.     Section 1129(a)(9) requires that persons holding allowed claims entitled to priority under § 507(a) receive specified cash payments under the Plan. Unless the holder of a particular claim agrees to a different treatment with respect to such claim, § 1129(a)(9) sets forth the treatment the Plan must provide. Under Section III.B.2 of the Plan, unless they agree to different treatment, holders of Allowed Administrative Claims under § 503(b) shall receive Cash in full and final satisfaction of their Allowed Administrative Claims in accordance with the following:

> (1) if an Administrative Claim is Allowed as of the Effective Date, on the Effective Date or thereafter is agreed by any Holder of such Administrative Claim (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter); (2) if such Administrative Claim is not Allowed as of the Effective Date, no later than sixty (60) days after the date on which an order Allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; (3) if such Allowed Administrative Claim is based on liabilities incurred by Debtor or Trustee in the ordinary course of business after the Petition Date in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claim without any further action by the Holder of such Allowed Administrative Claim, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter; or (4) at such time and upon such terms as set forth in a Final Order of the Bankruptcy Court or as agreed with the Plan Proponents or Liquidating Trustee, as applicable.

Plan § III.B.1.

65.     Consequently, the Plan Proponents submit that § 1129(a)(9) is satisfied because the Plan provides for the payment of all Allowed Administrative Claims on the Effective Date, except to the extent the Holder of such Claim has agreed to different treatment.

66.     The Plan also satisfies the requirements of § 1129(a)(9)(C) in respect of the treatment of Priority Tax Claims under § 507(a)(8). Pursuant to § III.B.3 of the Plan, and except as

- 23 -

otherwise may be agreed, holders of Allowed Priority Tax Claims "shall be treated in accordance with the terms set forth in § 1129(a)(9)(C) of the Bankruptcy Code and, for the avoidance of doubt, Holders of Allowed Priority Tax Claims will receive interest on such Allowed Priority Tax Claims after the Effective Date in accordance with §§ 511 and 1129(a)(9)(C) of the Bankruptcy Code." *See* Plan § III.B.3.

67.    Based upon the foregoing, the Plan satisfies the requirements of § 1129(a)(9).

**J.    Each Impaired Class of Claims Has Accepted the Plan, Excluding the Acceptances of Insiders (11 U.S.C. § 1129(a)(10)).**

68.    Section 1129(a)(10) provides that, if a class of claims is impaired under a plan, at least one impaired class of claims must accept the plan, excluding acceptance by any insider. *See* 11 U.S.C. § 1129(a)(10); *see also In re Station Casinos, Inc.*, 2011 WL 6012089, at ¶ 118 (Bankr. D. Nev. July 28, 2011) ("The bankruptcy courts that have expressly considered the matter have uniformly held that compliance with Section 1129(a)(10) is tested on a per-plan basis, not on a per-debtor basis, and that Section 1129(a)(10) therefore does not require an accepting impaired class for each debtor under a joint plan."). As set forth above, Classes 3A and 3B are impaired and have accepted the Plan. Therefore, the Steverson Declaration confirms that the Plan satisfies § 1129(a)(10).

**K.    The Plan Is Feasible (11 U.S.C. § 1129(a)(11)).**

69.    Section 1129(a)(11) requires that the Court determine that the Plan is feasible as a condition precedent to confirmation. The feasibility test set forth in § 1129(a)(11) requires the Court to determine whether the Plan is workable and has a reasonable likelihood of success. *See Johns-Manville Corp.*, 843 F.2d at 649.  The key element of feasibility is whether there is a reasonable probability that the provisions of the plan can be performed. As noted by the United States Court of Appeals for the Ninth Circuit: "The purpose of section 1129(a)(11) is to prevent confirmation of visionary schemes which promise creditors and equity security holders more under a proposed plan than the Debtors can possibly attain after confirmation." *Pizza of Haw., Inc. v. Shakey's, Inc. (In re Pizza of Haw., Inc.),* 761 F.2d 1374, 1382 (9th Cir. 1985) (quoting 5 Collier on Bankruptcy ¶ 1129.02[11] at 1129–34 (15th ed. 1984)). However, just as speculative prospects of success cannot

- 24 -

sustain feasibility, speculative prospects of failure cannot defeat feasibility, and the mere prospect of financial uncertainty cannot defeat confirmation on feasibility grounds. *See In re U.S. Truck Co.,* 47 B.R. 932, 944 (E.D. Mich. 1985), *aff'd,* 800 F.2d 581 (6th Cir. 1986).

70.    As set forth herein, the uncontroverted evidence demonstrates that the Plan is feasible. *See* Marshack Decl.; Kurtz Decl. The Plan also satisfies § 1129(a)(11) because the Plan Proponents' feasibility analysis considers the possible effect of certain litigation. Even though the Plan is not required to provide a mechanism for addressing the claims of claimants who may subsequently recover judgments against the Debtor, the Plan provides that the Liquidation Trustee may reserve sufficient funds to address any such claims. *See In re RCS Capital Dev., LLC*, BAP No. AZ-12-1626-JuTaAh, 2013 WL 3619172, *8 (B.A.P. 9th Cir. July 16, 2013) (unpublished); *In re Harbin*, 486 F.3d 510, 519 (9th Cir. 2007); *see also* discussion, *infra*. Accordingly, the Plan satisfies the feasibility requirement set forth in § 1129(a)(11).

**L.    The Plan Provides for the Payment of All Fees under 28 U.S.C. § 1930 (11 U.S.C. § 1129(a)(12)).**

71.    Section 1129(a)(12) requires that, as a condition precedent to the confirmation of a plan, "[a]ll fees payable under section 1930 of title 28, as determined by the court at the hearing on confirmation of the plan, have been paid or the plan provides for the payment of all such fees on the effective date of the plan." 11 U.S.C. § 1129(a)(12). The Plan complies with § 1129(a)(12) by providing for the payment in full, in Cash, any statutory fees due and owing at the time of confirmation. *See* Plan § III.B.1. Accordingly, the Plan satisfies the requirements of § 1129(a)(12).

**M.    The Plan Provides for the Payment of Retiree Benefits (11 U.S.C. § 1129(a)(13)).**

72.    Section 1129(a)(13) provides that a court may confirm a plan only if "[t]he plan provides for the continuation after its effective date of payment of all retiree benefits . . . for the duration of the period the debtor has obligated itself to provide such benefits." *See* 11 U.S.C. § 1129(a)(13). This provision is inapplicable as the Debtor will not have any ongoing retiree benefit obligations as of the Effective Date.

**N.    Sections 1129(a)(14) and 1129(a)(15) Do Not Apply to the Plan.**

73.    Section 1129(a)(14) relates to the payment of domestic support obligations and

- 25 -

1    § 1129(a)(15) applies only in cases in which the debtor is an "individual" as defined in the

2    Bankruptcy Code. 11 U.S.C. §§ 1129(a)(14), (a)(15). Neither of these provisions applies to the

3    Debtor. The Debtor is not subject to any domestic support obligations, and therefore, the

4    requirements of § 1129(a)(14) do not apply. Further, the Debtor is not an "individual" and,

5    therefore, the requirements of § 1129(a)(15) do not apply.

6    **O.    Section 1129(a)(16)) Does Not Apply to the Plan.**

7        74.    Section 1129(a)(16) provides that applicable non-bankruptcy law will govern all

8    transfers of property under a plan to be made by "a corporation or trust that is not a moneyed,

9    business, or commercial corporation or trust." The legislative history of § 1129(a)(16) demonstrates

10    that this section was intended to "restrict the authority of a trustee to use, sell, or lease property by

11    a nonprofit corporation or trust."  *See* H.R. REP. 109-31(I), 145, 2005 WL 832198, 121, 2005

12    U.S.C.C.A.N. 88, 203-04 (2005). The Plan is not subject to the requirements of § 1129(a)(16)

13    because the Debtor is not a nonprofit corporation or trust.

14    **P.    The Plan Satisfies the "Cramdown" Requirements of Section 1129(b)(1).**

15        75.    Section 1129(b)(1) of the Bankruptcy Code provides that, if all applicable

16    requirements of section 1129(a) are met other than section 1129(a)(8), a plan may be confirmed so

17    long as the requirements set forth in section 1129(b) are satisfied.  To confirm a plan that has not

18    been accepted by all impaired classes (thereby failing to satisfy section 1129(a)(8) of the

19    Bankruptcy Code), the debtor must show that the plan does not "discriminate unfairly" and is "fair

20    and equitable" with respect to the non-accepting impaired classes. 11 U.S.C. § 1129(b); *see also*

21    *John Hancock Mut. Life Ins. Co. v. Route 37 Bus. Park Assocs.*, 987 F.2d 154, 157 n.5 (3d Cir.

22    1993); *In re Zenith Elecs. Corp.*, 241 B.R. 92, 105 (Bankr. D. Del. 1999) (explaining that "[w]here

23    a class of creditors or shareholders has not accepted a plan of reorganization, the court shall

24    nonetheless confirm the plan if it 'does not discriminate unfairly and is fair and equitable.'").

25        76.    As discussed above, the Plan does not meet the requirements of 1129(a)(8) because

26    Class 1D did not accept the Plan. The Plan is nonetheless confirmable because it does not

27    discriminate unfairly and is fair and equitable.

28

1.     **The Plan does not unfairly discriminate against the rejecting Class.**

77.     The Bankruptcy Code does not provide a standard for determining when "unfair discrimination" exists. *See In re 203 N. LaSalle St. Ltd. P'ship*, 190 B.R. 567, 585 (Bankr. N.D. Ill. 1995) (noting "the lack of any clear standard for determining the fairness of a discrimination in the treatment of classes under a Chapter 11 plan" and that "the limits of fairness in this context have not been established"), *rev'd on other grounds,* 526 U.S. 434 (1999). Rather, courts typically examine the facts and circumstances of the particular case to determine whether unfair discrimination exists. *See In re Genesis Health Ventures, Inc.*, 266 B.R. at 611 ("The hallmarks of the various tests have been whether there is a reasonable basis for the discrimination, and whether the debtor can confirm and consummate a plan without the proposed discrimination."); *see also In re 222 Liberty Assoc.,* 108 B.R. 971, 990-991 (Bankr. E.D. Pa. 1990); *In re Johns-Manville Corp.,* 68 B.R. at 636 ("The language and legislative history of the statute provides little guidance in applying the 'unfair discrimination' standard."), *aff'd,* 843 F.2d 636 (2d Cir. 1988); *In re Freymiller Trucking, Inc.,* 190 B.R. 913, 916 (Bankr. W.D. Okla. 1996) (holding that a determination of unfair discrimination requires a court to "consider all aspects of the case and the totality of all the circumstances"); *In re Aztec Co.*, 107 B.R. 585, 589 (Bankr. M.D. Tenn. 1989) (noting that courts "have recognized the need to consider the facts and circumstances of each case to give meaning to the proscription against unfair discrimination").

78.     In general, courts have held that a plan unfairly discriminates in violation of section 1129(b)(1) of the Bankruptcy Code only if it provides materially different treatment for creditors and interest holders with similar legal rights without compelling justifications for doing so. *See In re Lernout & Hauspie Speech Prods., N.V.*, 301 B.R. 651, 661-62 (Bankr. D. Del. 2003) (permitting different treatment of two classes of similarly situated creditors upon a determination that the debtors showed a legitimate basis for such discrimination). A threshold inquiry to assessing whether a proposed plan unfairly discriminates against a dissenting class is whether the dissenting class is equally situated to a class allegedly receiving more favorable treatment. *See In re Aleris Int'l, Inc.*, No. 09-10478 (BLS), 2010 WL 3492664, at *31 (Bankr. D. Del. May 13, 2010) (citing *In re Armstrong World Indus.*, 348 B.R. at 121).

- 27 -

79.     The Court should find that the Plan does not unfairly discriminate against Class 1D. As to such Class, there is no equally situated class that is receiving more favorable treatment under the Plan. All secured creditor classes—in Class 1A through 1F—receive identical treatment that varies based solely on the particular collateral securing each allegedly secured claim and the validity, extent, and priority of each secured claim.  Moreover, the deemed rejecting Classes are classified appropriately (based on their legal nature) and have not been classified as such for the purpose of unfair discrimination.  Accordingly, the Plan does not "discriminate unfairly" against the foregoing Classes.

**2.      The Plan Is Fair and Equitable as to the Rejecting Class.**

80.     A plan is "fair and equitable" with respect to an impaired class of claims or interests that rejects a plan (or is deemed to reject a plan) if it follows the "absolute priority" rule. *203 N. LaSalle St. P'ship*, 526 U.S. at 441–42. This requires that an impaired rejecting class of claims or interests either be paid in full or that a class junior to the impaired class not receive any distribution under a plan on account of its junior claim or interest. *Id.*

81.     Distributions under the Plan are made in the order of priority prescribed by the Bankruptcy Code and in accordance with the absolute priority rule. As shown in Article III of the Plan, no Holder of a Claim or Interest in a Class junior to any impaired rejecting Class will receive or retain any property under the Plan on account of such junior Claim or Interest. *See* Plan § III.C.1. Further, no Holder of a Claim or Interest in a Class senior to any impaired rejecting Class will receive or retain any property under the Plan in an amount in excess of such Holder's Claims or Interests. *See In re Genesis Health*, 266 B.R. at 612 ("A corollary of the absolute priority rule is that a senior class cannot receive more than full compensation for its claims.").

82.     Accordingly, the Plan satisfies the cramdown requirements of § 1129(b) of the Bankruptcy Code and may be confirmed notwithstanding the rejection of the Plan by Class 1D.

**Q.      The Principal Purpose of the Plan Is Not Avoidance of Taxes (11 U.S.C. § 1129(d)).**

83.     Section 1129(d) of the Bankruptcy Code states "the court may not confirm a plan if the principal purpose of the plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933." The purpose of the Plan is not to avoid taxes or the

1  application of section 5 of the Securities Act of 1933. Moreover, no holder of Priority Tax Claims

2  has thus far raised any objection arguing that the Plan Proponents have proposed the Plan to either

3  avoid taxes or the application of section 5 of the Securities Act of 1933, and the Plan Proponents

4  do not anticipate any such objections will be filed, particularly as all Priority Tax Claims will be

5  paid in full pursuant to the Plan. The Plan Proponents therefore submit that the Plan satisfies the

6  requirements of § 1129(d).

7                                          **V.**

8  **THE DISCRETIONARY CONTENTS OF THE PLAN SHOULD BE APPROVED**

9         84.    Section 1123(b) sets forth additional provisions that may be included in a chapter

10 11 plan. The Plan includes certain such additional provisions. By way of example, the Plan proposes

11 treatment for executory contracts and unexpired leases and seeks to implement release, exculpation,

12 and injunction provisions. *See* Plan, §§ IV.L, V.D. As discussed below, each of these provisions is

13 in the best interests of the creditors and other parties-in-interest in this Bankruptcy Case.

14 **A.     The Assumption and Assignment or Rejection of the Executory Contracts and**

15 **Unexpired Leases under the Plan Should Be Approved.**

16        85.    Section IV.L of the Plan provides, "[a]ny executory contracts or unexpired leases

17 (i) which have not expired by their own terms on or prior to the Effective Date, or (ii) which have

18 not been assumed or assigned or rejected with the approval of the Court or pursuant to procedure

19 established by order of the Court shall be deemed rejected by the Estate on the Effective Date[.]"

20 Plan, § IV.L.

21        86.    Section 365(a) provides that a debtor, "subject to the court's approval, may assume

22 or reject any executory contract or unexpired lease." 11 U.S.C. § 365(a). Courts routinely approve

23 motions to assume and assign or reject executory contracts or unexpired leases upon a showing that

24 the debtor's decision to take such action will benefit the debtor's estate and is an exercise of sound

25 business judgment. *Durkin v. Benedor Corp. (In re G.I. Indust., Inc.),* 204 F.3d 1276, 1282 (9th

26 Cir. 2000) ("a bankruptcy court applies the business judgment rule to evaluate a [debtor-in-

27 possession]'s rejection decision") (citing *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 523 (1984));

28 *see also In re Chi-Feng Huang*, 23 B.R.798, 800 (B.A.P. 9th Cir. 1982). The debtor's exercise of

- 29 -

its business judgment is entitled to deference. *See In re Pomona Valley Med. Grp.,* 476 F.3d 665, 670 (9th Cir. 2007) ("[I]n evaluating the rejection decision, the bankruptcy court should presume that the debtor-in-possession acted prudently, on an informed basis, in good faith, and in the honest belief that the action taken was in the best interests of the bankruptcy estate.") (citing *Navellier v. Sletten*, 262 F.3d 923, 946 n. 12 (9th Cir. 2001); *FDIC v. Castetter*, 184 F.3d 1040, 1043 (9th Cir. 1999); *In re Chi–Feng Huang*, 23 B.R. at 801).

87.    The Chapter 11 Trustee has reviewed and analyzed the Debtor's executory contracts and unexpired leases. In its business judgment, the Chapter 11 Trustee may conclude that certain of the Debtor's executory contracts and unexpired leases should be assumed on the Effective Date to ensure a seamless transition into the Post-Effective Date period and certain other Executory Agreements may be required to ensure that the value of the Liquidating Trust Assets are maximized. Likewise, the Chapter 11 Trustee has determined that it is in the best interest of the Estate to reject all other executory contracts and unexpired leases under the Plan as they are no longer providing a benefit to the Estate. Accordingly, for all of the foregoing reasons, the proposed assumption or rejection of the Debtor's executory contracts and unexpired leases should be approved in connection with confirmation.

**B.    The Plan's Release, Injunction and Exculpation Provisions Are Appropriate and Should Be Approved.**

**1.    Legal Standard for Approval of Release, Injunction, and Exculpation Provisions.**

88.    Section 105(a) of the Bankruptcy Code authorizes a bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [title 11]." 11 U.S.C. § 105(a). The Court may issue an injunction in connection with plan confirmation in furtherance of a settlement or in the interest of the Debtor's estate.  *See WCI Cable, Inc.,* 282 B.R. at 469 ("Section 105(a) can be used with respect to the injunction provisions of the WCI Plan only to the extent necessary and appropriate to carry out the terms of an approved settlement.") (citing *In re Dow Corning Corp.,* 255 B.R. 445, 478 (E.D. Mich. 2000)); *see also In re Rohnert Park Auto Parts, Inc.,* 113 B.R. 610, 615 (B.A.P. 9th Cir. 1990) ("[S]ection 105 permits the court to issue both

- 30 -

preliminary and permanent injunctions after confirmation of a plan to protect the debtor and the administration of the bankruptcy estate[.]"). As discussed herein, the equities favor imposition of the injunctive provisions of the Plan because, among other things, the Plan presents the best possible recovery to creditors (as evidenced by the overwhelming votes in support of the Plan) and the injunctions are necessary components to the Liquidating Trust Agreement that form the cornerstone of the Plan.

89.    Courts in this District regularly confirm liquidating plans with permanent injunctive provisions similar to those set forth in the Plan. *See, e.g.*, *In re Gardens Reg'l Hosp. & Med. Ctr., Inc.,* No. 2:16-bk-17463-ER, Docket No. 1372 at 15 (Bankr. C.D. Cal. Sept. 18, 2018) (approving injunctions, releases, and exculpations, including a permanent injunction against "all entities who have held, hold, or may hold Claims against the Debtor, the Debtor's property, the Debtor's Estate, the Liquidating Trust and/or the Liquidation Trustee"); *In re T Asset Acquisition Co., LLC*, No. 2:09-bk-31853-ER, Docket No. 741 at 4-5 (Bankr. C.D. Cal. June 6, 2011) (confirming liquidating plan and permanently enjoining "all Entities that have held, currently hold, or may hold a Claim that is satisfied or Interest that is terminated pursuant to the terms of the Plan" from taking certain actions); *In re SCI Real Estate Invs., LLC,* Case No. 2:11-bk-15975-PC, Docket No. 186 at 18 (Bankr. C.D. Cal. June 15, 2012) (providing for discharge of debtors and liquidating debtors and permanent injunction against "the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability"); *In re Danville Land Invs., LLC,* Case No. 2:11-bk-62685-DS, Docket No. 150 at 8 (Bankr. C.D. Cal. May 23, 2013) (confirming liquidating plan providing for permanent injunction). Further, the Other Injunctions, which apply to protect the Liquidation Trustee and the Post-Effective Date Oversight Committee, and related persons in their official capacities, are consistent with Ninth Circuit precedent applying the *Barton* doctrine to the successor representatives of the debtors' estates involved in liquidation under a plan. *See In re Crown Vantage, Inc.,* 421 F.3d 963, 973 (9th Cir. 2005) ("[A]s part of a liquidating Chapter 11 reorganization proceeding, the bankruptcy court chose the mechanism of a liquidating trust to liquidate and distribute the assets of the estate. The bankruptcy court retained jurisdiction over the case. In this context, the Liquidation Trustee is the

- 31 -

1    'functional equivalent' of the bankruptcy trustee and is entitled to *Barton* protection.").

2    90.    Exculpation of estate fiduciaries and Plan Proponents is customary and permissible

3    in chapter 11. Indeed, the Ninth Circuit has approved exculpation provisions that extend to plan

4    proponents, including non-debtor plan proponents. *See Blixseth v. Credit Suisse*, 961 F.3d 1074

5    (9th Cir. 2020) (approving exculpation of debtor's largest creditor that became a plan "proponent

6    through its direct participation in the negotiations that preceded the adoption of the Plan"); *see also*

7    *In re Yellowstone Mountain Club*, 460 B.R. at 277 (approving exculpation that extended to "the

8    Debtors, Committee [of Unsecured Creditors], Credit Suisse and CrossHarbor, who all became, in

9    essence, plan proponents"); *In re Lighthouse Lodge, LLC*, No. 09-52610-RLE, 2010 WL 4053984,

10   at *6, *9 (Bankr. N.D. Cal. Oct. 14, 2010) ("This release of liability except from gross negligence

11   or willful misconduct has been extended to plan proponents other than a committee."); *In re W.*

12   *Asbestos Co.,* 313 B.R. 832, 846-47 (Bankr. N.D. Cal. 2003) (approving provision that released

13   claims against the Plan Proponents other than the Debtors).

14   91.    Plan exculpations may also extend to non-estate fiduciaries when the exculpated

15   parties make substantial contributions to the reorganization, the exculpations are important to such

16   parties' participation in the reorganization efforts, and the exculpations are limited "in both scope

17   and time" to actions related to the chapter 11 cases. *See In re Yellowstone Mountain Club*, 460 B.R.

18   at 272; *Meritage Homes of Nev. Inc. v. JPMorgan Chase Bank, N.A. (In re S. Edge LLC),* 478 B.R.

19   403, 415-16 (D. Nev. 2012) (approving exculpation of third party nondebtors because exculpation

20   "sets a standard of care to be applied in the bankruptcy proceeding" and "does not improperly

21   release third party nondebtors"); *Lazo v. Roberts,* No. CV15-7037-CAS(PJWx), 2016 WL 738273,

22   at *7 (C.D. Cal. Feb. 22, 2016) ("Increasingly, however, [t]he trend among bankruptcy courts [more

23   generally] has been to confirm chapter 11 plans with express discharge or indemnification

24   provisions for nondebtors if they meet certain tailored criteria or overall necessity. This overall

25   trend is evident in the Ninth Circuit.") (internal quotation marks and citations omitted); *see also In*

26   *re Stearns Holdings, LLC*, 607 B.R. 781, 790 (Bankr. S.D.N.Y. 2019) (holding that exculpation

27   could extend to parties "who make a substantial contribution to a debtor's reorganization and play

28   an integral role in building consensus in support of a debtor's restructuring"). And exculpation

- 32 -

clauses are without a doubt essential in cases like this one that are heavily litigated. *See In re Yellowstone Mountain Club*, 460 B.R. at 274 ("An exculpation clause in this case was certainly advisable given the litigious posture of the parties.").

**2.     The Plan's Releases, Injunctions, and Exculpations Should Be Approved.**

92.     The Plan provides for the release and injunction of certain causes of action of the Debtor and other parties, releases by holders of Claims, and the exculpation of certain parties for their acts during the Bankruptcy Case.

93.     Specifically, the Plan provides, "the Confirmation Order shall enjoin the prosecution, whether directly, derivatively or otherwise, of any claim, obligation, suit, judgment, damage, demand, debt, right, cause of action, liability or interest released, discharged, terminated, or otherwise treated pursuant to this Plan." Plan, § IV.B.32. The release and injunction of claims against the Debtor provide no more limitation on creditors than, for example, the Bar Date Orders, which preclude creditors from asserting Claims against the Debtor or filing Requests for Payment beyond the applicable Bar Date. Accordingly, the release and injunction of claims against the Debtor should be approved.

94.     The Plan further provides,

> Except as provided in this Plan or the Confirmation Order, as of the Effective Date, all entities that have held, currently hold or may hold a Claim or other debt or liability that is provided for under this Plan or an Interest or other right of a creditor or equity security holder that is extinguished, pursuant to the terms of this Plan, are permanently enjoined from taking any of the following actions against the Debtor, the Plan Proponents, the Liquidating Trust, the Liquidating Trustee, the Post-Confirmation Oversight Committee, their property, and, except with respect to the Debtor, each of their respective agents, employees, professionals, attorneys, accountants, advisors and representatives, on account of any such discharged claims, debts or liabilities or extinguished interests or rights:

> (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting or enforcing any lien or encumbrance; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtor; and (v) commencing or continuing any action in any manner, in any place, that does not comply with or is inconsistent with the provisions of this Plan.

- 33 -

Plan, § IV.B.32.

95.     The Plan's release and injunction of claims against certain non-debtor parties are proper because, among other things, they are the product of arm's-length negotiations and have been critical to obtaining the support of various constituencies for the Plan. Accordingly, the Bankruptcy Court should approve the Plan's release, injunction and exculpation provisions.

<div align="center">

**VI.**

**RESERVATION OF RIGHTS**

</div>

96.     The Plan Proponents reserve the right to further amend the Plan and to submit additional documents, declarations, exhibits and other supporting documents and evidence in connection with confirmation of the Plan or any amended or modified Plan, or otherwise. While the objections to confirmation of the Plan are limited to those timely raised in written objections filed by the objection deadline, to the extent any additional or modified objections are raised in connection with the confirmation hearing, the Plan Proponents reserve the right to respond to the same and/or to argue they are untimely. Nothing contained herein shall constitute a limitation or waiver of rights with respect to any objection to confirmation of the Plan.

<div align="center">

**VII.**

**CONCLUSION**

</div>

WHEREFORE, the Plan Proponents respectfully request that the Bankruptcy Court enter an order substantially in the form of the Confirmation Order, attached hereto **as Exhibit "A,"** (i) confirming the Plan, (ii) overruling any objections to confirmation of the Plan, and (iii) granting such other and further relief as the Bankruptcy Court deems just and proper.

DATED: August 1, 2024                    MARSHACK HAYS WOOD LLP

                                         By: *D. Edward Hays*
                                         _____
                                         D. EDWARD HAYS
                                         LAILA MASUD
                                         General Counsel for Chapter 11 Trustee,
                                         RICHARD A. MARSHACK

- 34 -

DATED: August 1, 2024

FOX ROTHSCHILD LLP

By: /s/ Nicholas A. Koffroth
  KEITH OWENS
  NICHOLAS KOFFROTH
  Attorneys for the Official Committee of
  Unsecured Creditors

- 35 -

# DECLARATION OF RICHARD A. MARSHACK

I, Richard A. Marshack, declare as follows:

1.      I am the chapter 11 trustee appointed in the bankruptcy case of The Litigation Practice Group P.C. (the "Debtor") pending before the United States Bankruptcy Court for the Central District of California (the "Court") under the case captioned, *In re The Litigation Practice Group P.C.*, Case No. 8:23-bk-10571-SC (the "Bankruptcy Case"). I make this declaration in support of the *Memorandum of Law in Support of Confirmation of Modified First Amended Joint Chapter 11 Plan of Liquidation (Dated June 14, 2024)* (the "Brief")[5] and for all other purposes authorized by law.

## Background

2.      I am a founding member of the firm of Marshack Hays Wood LLP and have been a bankruptcy attorney since 1982.  My experience as an attorney includes an emphasis on commercial matters arising in bankruptcy proceedings, such as representing debtor/businesses and creditors/creditor committees in reorganization proceedings and representing bankruptcy trustees.

3.      As a professional fiduciary, I serve as a chapter 7 and chapter 11 trustee.  I have served as a trustee since 1985 and have served as a receiver, examiner, special trustee for Probate Court, Disbursing Agent, and Provisional Director.

4.      I am a frequent lecturer and presenter of seminars (over 50) on Bankruptcy and Commercial Law issues. Additionally, I have authored more than 20 articles and materials relating to the practice of law.

5.      I obtained a bachelors degree from the University of California, Irvine in 1979.  I received my law degree from the California School of Law, Magna Cum Laude, in 1982. After graduation from law school, I served as law clerk to the Honorable Folger Johnson, Chief Judge of the United States Bankruptcy Court, District of Oregon, from 1982 to 1984.  I was appointed to serve as a trustee in the 2nd Quarter of 1985 by the United States Department of Justice and am currently in my 40th year serving as trustee.

---

[5] Unless otherwise defined herein, all capitalized terms have the definitions set forth in the Brief.

160526521.4

6.      As the Chapter 11 Trustee, I am generally familiar with the operational and financial aspects of the Debtor's prepetition and postpetition operations, and am directly involved with the postpetition liquidation efforts in this Bankruptcy Case including efforts to liquidate assets and administer claims.  I have been involved in all, or almost all, aspects of the sale process, including the pre-sale negotiations and the post-sale process reconciliation.  As a co-proponent of the Plan, I was directly involved with the negotiations of the Plan and the Liquidating Trust Agreement.  Additionally, my professionals have provided material input to Force Ten Partners, LLC ("Force 10"), the financial advisor to the Committee, utilized to develop the liquidation analysis and feasibility analysis attached to the Disclosure Statement.  These analyses assume an Effective Date of November 1, 2024.

7.      Except as otherwise indicated, this Declaration is based upon my personal knowledge, my review of relevant documents, or my opinion based upon experience, knowledge, and information concerning the operations and financial condition of the estate, or upon information supplied to me by my employees or other professionals and consultants. Together with my legal advisors, I have reviewed the requirements for confirmation of the Plan pursuant to section 1129 of title 11 of the United States Code (the "Bankruptcy Code").  If called as a witness I could and would competently testify to the matters set forth in this Declaration.

**Assumptions Concerning Effective Date Cash**

8.      As of the monthly period ended June 30, 2024, the estate held approximately $10,909,402.77 of cash on hand.  *See* Docket No. 1445.  The cash on hand includes approximate $6,248,466.48 of funds collected by the Estate after the Petition Date from clients of the Debtor (plus interest), which funds are currently held by the Trustee in a segregated account and referred to as "Post-Petition Funds" in the Plan.  No party filed a challenge to the use of Post-Petition Funds by the Fund Challenge Deadline, and, as such, the liquidation analysis and feasibility analysis assumes that all such Post-Petition Funds are available for distribution on the Effective Date under the Plan.

9.      The cash on hand includes approximately $5.5 million of sale proceeds.  The Trustee currently has pending certain avoidance and other litigation claims against secured creditors that

allegedly hold a security interest in any proceeds of the sale.  In light of the status of that litigation, and certain proposed settlements to be filed prior to the Effective Date, I have informed Force 10 that the alleged security interests should be assumed not to limit the sale proceeds available for distribution on the Effective Date of the Plan.  Additionally, only one party, PurchaseCo 80, LLC, filed an ownership challenge by the Ownership Challenge Deadline; however, the Trustee anticipates resolving this claim shortly.  For reasons set forth more fully in the Brief and any reply to an objection, the liquidation analysis and feasibility analysis assumes that all such sale proceeds are available for distribution on the Effective Date under the Plan.

10.    The liquidation analysis and feasibility analysis also includes certain assumptions related to pre-Effective Date cash flow.  Specifically, my professionals have informed Force 10 that they should assume for purposes of their analysis that approximately $4.3 million of additional cash flow in excess of cash on hand should be available as of the Effective Date.  This is principally comprised of: (i) a $1,505,871 residual sale proceeds payment from Morning Law Group that the estate has already received; and (ii) approximately $2,938,000 in proceeds from litigation settlements and recoveries that I anticipate the estate will receive on or before the Effective Date. Given the contingencies concerning recovery on other litigation claims, the liquidation analysis and feasibility analysis conservatively do not include estimations of litigation recoveries beyond the Effective Date; however, I believe that there is the potential for material recovery.

11.    Based on my personal knowledge of the current cash on hand in the estate, the status of negotiations and litigation with secured creditors, alleged owners of receivables, Morning Law Group, and certain other litigation claims, I believe that the foregoing represents a reasonable and conservative set of assumptions for projecting available cash on hand to satisfy Effective Date payments under the Plan.

### **Operating Expenses of the Liquidating Trust**

12.    I or my professionals have reviewed and analyzed the operating expenses estimated for the Liquidating Trust contemplated under the Plan.  I believe that these expenses are reasonable and necessary for the Liquidating Trust to perform its duties proposed under the Plan and

- 38 -

Liquidating Trust Agreement to efficiently liquidate litigation claims and other assets, and administer claims filed against the estate and liquidating trust assets.

### Estimated Allowed Effective Date Claims

13.    I have reviewed and analyzed the estimated claims allowed and payable on the Effective Date set forth in the feasibility analysis and liquidation analysis and supplied Force 10 certain assumptions related thereto.  With respect to the estimated secured claims, based on the pending litigation and related proposed settlements I anticipate will be approved before the Effective Date of the Plan, I believe that the estimation of $1 million Allowed secured claims as of the Effective Date is a fair and reasonable estimate.  Notwithstanding the size of asserted claims, all are subject to pending litigation and have significant flaws that render them unlikely to be Allowed as of the Effective Date.  Moreover, as set forth above, I am personally involved in settlement negotiations with certain secured creditors that further form the basis of my belief that no more than $1 million of secured claims will be Allowed as of the Effective Date.

14.    I have also reviewed asserted administrative claims and priority claims and provided Force 10 with certain assumptions concerning the extent such claims will be Allowed as of the Effective Date.  The amounts set forth in the feasibility analysis and liquidation analysis are the aggregate for all such claims to avoid any interference with settlement negotiations.  I believe that my estimations are fair and reasonable in light of the asserted claims.

### Liquidation Analysis Assumptions

15.    Based on my experience as a chapter 7 and chapter 11 trustee, I provided certain assumptions concerning the costs associated with liquidation of the estate's assets under a hypothetical chapter 7 on the Effective Date.

16.    Generally, in a chapter 7 case, (i) the debtor's assets are usually sold by a chapter 7 trustee,(ii) secured creditors are paid first from the sales proceeds of properties on which the secured creditor has a lien, (iii) administrative claims are paid thereafter, (iv) unsecured creditors are paid after administrative claims from any remaining sales proceeds, according to their rights to priority, (v) unsecured creditors with the same priority share in proportion to the amount of their allowed

- 39 -

claim in relationship to the amount of total allowed unsecured claims, and (vi) finally, interest holders receive the balance that remains after all creditors are paid, if any.

17.    Here, in the event of a conversion of the Bankruptcy Case to chapter 7, a chapter 7 trustee would be appointed to administer the Debtor's assets. Such chapter 7 trustee would be completely unfamiliar with the complexities of this Bankruptcy Case and would be under a statutory duty to liquidate the Debtor's assets as expeditiously as possible.  This would result in materially increased administrative cost for a new set of professionals to become familiar with this Bankruptcy Case, particularly considering the unique complexities of this case and the extensive litigation record.

18.    In light of the foregoing, I believe the assumptions concerning the administrative cost of a chapter 7 liquidation set forth in the liquidation analysis is fair and reasonable.  Moreover, I believe that the proposed Plan presents the greatest feasible recovery to all creditors when compared with a hypothetical liquidation in chapter 7 commencing on the proposed Effective Date.

**The Plan**

19.    Based upon my personal involvement, and supervising my professionals' involvement, in the negotiation and development of the Plan and discussions with my legal and other financial advisors, and the legal and financial advisors to the Committee, I believe that the Plan complies with the applicable provisions of the Bankruptcy Code; including requirements of feasibility and that the Plan was proposed in good faith; and that the Plan Proponents, acting through their representatives and professionals, have conducted themselves in good faith and at arm's-length in relation to the formulation and negotiation of, and voting on, the Plan.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

160526521.4

20.    Based on the foregoing assumptions and the analysis of Force 10, I believe that the Debtor and the Liquidating Trust will have sufficient unencumbered cash to make timely all administrative and priority payments required to be made as of the Effective Date and as otherwise may be required pursuant to the terms of the Plan, and to otherwise implement the other provisions of the Plan, without the need for a further liquidation or reorganization of the Debtor other than as expressly proposed in Plan. I also believe that the Plan allows holders of Allowed Claims to realize the highest possible recovery under the circumstances.

I declare under penalty of perjury that the foregoing is true and correct.

Dated this 1st day of August, 2024, in Irvine, California.

_____

Richard A. Marshack

- 41 -

160526521.4

# DECLARATION OF CHAD KURTZ

I, Chad Kurtz, declare as follows:

1.      I am a managing director at Force Ten Partners, LLC ("Force 10"), the financial advisor to the Official Committee of Unsecured Creditors (the "Committee") in the bankruptcy case of The Litigation Practice Group P.C. (the "Debtor") pending before the United States Bankruptcy Court for the Central District of California (the "Court") under the case captioned, *In re The Litigation Practice Group P.C.*, Case No. 8:23-bk-10571-SC (the "Bankruptcy Case"). I make this declaration in support of the *Memorandum of Law in Support of Confirmation of Modified First Amended Joint Chapter 11 Plan of Liquidation (Dated June 14, 2024)* (the "Brief")[6] and for all other purposes authorized by law.

2.      On October 16, 2023, the Court entered an order [Docket No. 578] employing Force 10 as financial advisor to the Committee.  I am duly authorized to make this Declaration on behalf of Force 10.

## Background

3.      I obtained a bachelors degree from Williams College and received an MBA from New York University, Stern School of Business.  I obtained a certified public accounting license, although it is currently inactive.

4.      In my role with Force 10, I specialize in insolvency matters, buying and selling side mergers and acquisitions transactions, and complex modeling/financial analysis. I work closely with clients to develop cash collateral forecasts, analyze and improve business operations/cost structures, prepare bankruptcy compliance forms, develop bankruptcy plan projections, and analyze creditor claims.  My bankruptcy engagements with Force 10 include financial advising roles in the following bankruptcy cases: Rubios Costal Grill; CarbonLITE Industries; Tuesday Morning; Olympia Sports; Storcentric; Thomas Health Systems; Sugarfina; VNA California; PME Funds; YogaWorks; and Roscoe's Chicken and Waffles.

---

[6] Unless otherwise defined herein, all capitalized terms have the definitions set forth in the Brief.

- 42 -

5.    Prior to joining Force 10, I worked at BSW & Associates. I also spent 10 years at Ernst & Young LLP, including serving as a Director in its Corporate Finance practice, where I led restructuring advisory engagements. In that capacity, I have represented debtors, secured lenders, and creditors' committees, advising on businesses that ranged from start-ups to Fortune 500 companies. I started my career with Ernst & Young's audit department in New York City and ultimately transferred to the Los Angeles office, where I helped lead the West Coast restructuring group that was part of the Corporate Finance practice.

6.    As the financial advisor to the Committee, a co-proponent of the Plan, I have become familiar with the operational and financial aspects of the postpetition liquidation efforts in this Bankruptcy Case and have participated in evaluating the post-sale process and the negotiations of the Plan.  I have engaged in communications and obtained information concerning financial performance from the Chapter 11 Trustee, Morning Law Group, and other sources made available by the Chapter 11 Trustee.

7.    I was primarily responsible for preparing the feasibility analysis and the liquidation analysis attached to the Disclosure Statement and am generally familiar with the terms and provisions of the Plan and the Liquidating Trust Agreement.  The preparation of the analyses are based, in part, on assumptions and information obtained from the Chapter 11 Trustee and his professionals as indicated more specifically in those analyses.

8.    Except as otherwise indicated, this Declaration are based upon my personal knowledge, my review of relevant documents, or my opinion based upon experience, knowledge, and information concerning the operations and financial condition of the estate, or upon information supplied to me by the Chapter 11 Trustee or his employees or other professionals and consultants. Together with the Committee's legal advisors, I have reviewed the requirements for confirmation of the Plan pursuant to section 1129 of title 11 of the United States Code (the "Bankruptcy Code"). If called as a witness I could and would competently testify to the matters set forth in this Declaration.

**<u>Feasibility</u>**

9.      I prepared the feasibility analysis premised on several assumptions provided to me by the Chapter 11 Trustee and his professionals.  ***First***, the feasibility analysis assumes that approximately $14.6 million will be available as cash on hand as of the Effective Date.  This is generally consistent with the estate's most recent monthly operating report for the period ended June 30, 2024, which reports approximately $10.9 million in cash on hand.  Based on my discussions with counsel to the Chapter 11 Trustee and the Committee, I understand that none of the funds consisting of Post-Petition Funds are subject to timely challenge by the Fund Challenge Deadline and are otherwise available for the payment of Allowed claims on the Effective Date. Additionally, based on my discussions with the Chapter 11 Trustee and his professionals, I understand that none of the sale proceeds on hand will be subject to a secured or ownership claim and will be available for payment of Allowed claims on the Effective Date.

10.      ***Second***, the feasibility analysis assumes that the estate will realize an additional approximately $4.3 million in cash flow on or before the Effective Date.  Based on my discussions with the Chapter 11 Trustee and his professionals, I understand that this cash flow is primarily comprised of a residual sale proceeds payment from Morning Law Group and litigation settlements or recoveries expected prior to the Effective Date.

11.      ***Third***, the feasibility analysis assumes that certain secured, administrative, and priority claims will be Allowed as of the Effective Date.  This analysis assumes that less than all such asserted claims will be Allowed as of the Effective Date based on pending settlements, litigation, or other disputes as presented to me by the Chapter 11 Trustee and his professionals.

12.      Based on my experience, I believe that the feasibility analysis is a fair and conservative projection of the assets available on the Effective Date to pay estimated Allowed claims as appropriate under the Plan.  Given that litigation and settlement discussions are ongoing concerning certain secured and other claims, I anticipate amending the feasibility analysis in advance of the confirmation hearing, to the extent appropriate, based on any changed circumstances that would materially affect the analysis.

- 44 -

**Liquidation Analysis**

13.    I prepared the liquidation analysis by applying certain assumptions concerning the additional expense of a hypothetical chapter 7 on the Effective Date to the feasibility projections. I established the assumptions underlying the hypothetical cost of a chapter 7 case based on my own experience with input from the Chapter 11 Trustee. Based on my review of the liquidation analysis, I believe that the proposed Plan presents the greatest feasible recovery to all creditors when compared with a hypothetical liquidation in chapter 7 commencing on the proposed Effective Date.

**The Plan**

14.    I have analyzed the estate's ability to fulfill its obligations under the Plan and have taken into consideration the estimated costs of administration. After considering the Chapter 11 Trustee's expected results from operations, including the expected cash on hand to be received on or before the anticipate Effective Date of November 1, 2024, and the anticipate payments on account of Allowed claims due under the Plan on or before the Effective Date, I have concluded that the estate will sufficient cash on the Effective Date. As a result, I have also concluded the Plan Proponents have proposed the Plan in good faith, and as shown in the Disclosure Statement, this Declaration, and the Brief, that the Plan is feasible and otherwise meets all requirements for confirmation. I believe the estate will have sufficient funds to administer and consummate the Plan; to winddown the Debtor's estate, and to close the Bankruptcy Case. I also believe that all Administrative Claims allowed as of the Effective Date can and will be paid in accordance with Section 1129(a)(9) of the Bankruptcy Code.

I declare under penalty of perjury that the foregoing is true and correct.

Dated this 1st day of August, 2024, in New Albany, Ohio.

_____
Chad Kurtz

PRACTADMIN\LIT\160526521.4

## Exhibit A

**Proposed Confirmation Order**

D. EDWARD HAYS, #162507
ehays@marshackhays.com
LAILA MASUD, #311731
lmasud@marshackhays.com
**MARSHACK HAYS WOOD LLP**
870 Roosevelt
Irvine, California 92620
Telephone: (949) 333-7777
Facsimile: (949) 333-7778

General Counsel for Chapter 11 Trustee,
RICHARD A. MARSHACK

Keith C. Owens (SBN 184841)
Nicholas A. Koffroth (SBN 287854)
**FOX ROTHSCHILD LLP**
10250 Constellation Blvd., Suite 900
Los Angeles CA 90067
Telephone: (310) 598-4150
Facsimile: (310) 556-9828
kowens@foxrothschild.com
nkoffroth@foxrothschild.com
Counsel for Official Committee of Unsecured Creditors

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

| | |
|---|---|
| In re,<br><br>THE LITIGATION PRACTICE GROUP P.C.,<br><br>    Debtor. | Case No. 8:23-bk-SC<br><br>Chapter 11 Case<br><br>**ORDER CONFIRMING MODIFIED FIRST AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION (DATED JUNE 14, 2024)**<br><br>Hearing Date and Time:<br>Date:  August 29, 2024<br>Time:  10:00 A.M.<br>Ctrm:  5C – ViaZoom<br>Place:  411 West Fourth Street<br>         Santa Ana, CA 92701 |

160526478.2

1    Richard A. Marshack, the Chapter 11 Trustee (the "Chapter 11 Trustee") and the Official

2    Committee of Unsecured Creditors (the "Committee," and collectively with the Chapter 11 Trustee,

3    the "Plan Proponents") having proposed the *Modified First Amended Joint Chapter 11 Plan of*

4    *Liquidation (Dated June 14, 2024)* [Docket No. 1344] (the "Plan,");[1] the Court having conducted

5    a hearing to consider confirmation of the Plan on August 29, 2024 (the "Confirmation Hearing");

6    the Court having considered: (i) the (a) *Affidavit of Service* [Docket No. 1449] (the "Omni Service

7    Affidavit"), (b) the *Proof of Publication* [Docket No. 1377] (the "Proof of Publication"), (c) the

8    *Declaration of Kim D. Steverson re: Ballot Tabulation Report in Support of Modified First*

9    *Amended Joint Chapter 11 Plan of Liquidation* [Docket No. _____] (the "Steverson Declaration"),

10   (d) the *Declaration of Richard A. Marshack in Support of Confirmation of the Modified First*

11   *Amended Joint Chapter 11 Plan of Liquidation* [Docket No. _____] (the "Marshack Declaration"),

12   and (e) the *Declaration of Chad Kurtz in Support of Confirmation of the Modified First Amended*

13   *Joint Chapter 11 Plan of Liquidation* [Docket No. _____] (the "Kurtz Declaration"), each admitted

14   into evidence at the Confirmation Hearing; (ii) the arguments of counsel presented at the

15   Confirmation Hearing, (iii) the *Memorandum of Law in Support of Confirmation of the Modified*

16   *First Amended Joint Chapter 11 Plan of Liquidation (Dated June 14, 2024)* (the "Confirmation

17   Brief") [Docket No. _____]; (iv) the additional responses and supplements filed in support of the

18   Plan and Confirmation Brief [Docket Nos. _____]; and (v) the objections [Docket Nos. _____] (the

19   "Objections") to confirmation of the Plan, and any withdrawals or settlements thereof; and the

20   Court having taken judicial notice of the entire docket of the Bankruptcy Case maintained by the

21   Clerk of the Court and/or its duly appointed agent, and all pleadings and other documents filed, all

22   orders entered, and evidence and arguments made, proffered, or adduced at the hearings held before

23   the Court during the pendency of the Bankruptcy Case; and the Court having found that due and

24   proper notice has been given with respect to the Confirmation Hearing and the deadlines and

25   procedures for filing objections to the Plan; and the Court having heard the statements and

26   arguments made by counsel in respect of confirmation of the Plan, and all objections to

27

28   _____

[1] All capitalized terms used but not defined herein have the meanings given to them in the Plan, Disclosure Statement, or Confirmation Brief, as applicable.

confirmation (including, without limitation, any of the settlements to be approved pursuant to the Plan) having been withdrawn, resolved as stated on the record or overruled; and the appearance of all interested parties having been duly noted in the record of the Confirmation Hearing; and for the reasons set forth on the record at the Confirmation Hearing, upon the record of the Confirmation Hearing, and after due deliberation thereon, and sufficient cause appearing therefor:

I.      **FINDINGS OF FACT AND CONCLUSIONS OF LAW**

IT IS HEREBY FOUND AND CONCLUDED, that[2]:

**JURISDICTION AND VENUE**

A.      The Court has jurisdiction over this matter and this Bankruptcy Case, pursuant to 28 U.S.C. § 1334.

B.      Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L), this Court has jurisdiction to enter a final order with respect thereto, and this Court's exercise of such jurisdiction is constitutional in all respects.  The Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* as amended (the "Bankruptcy Code"),[3] and should be confirmed.

C.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

D.      The Debtor is a proper Debtor under § 109, and the Plan Proponents are proper proponents of the Plan under § 1121(a).

**COMPLIANCE WITH BANKRUPTCY RULE 3016**

E.      The Plan is dated and identifies the entities submitting and filing it, thereby complying with Bankruptcy Rule 3016(a). The filing of the Disclosure Statement complied with Bankruptcy Rule 3016(b).

---

[2] The findings of fact and conclusions of law set forth herein shall constitute findings of fact and conclusions of law, pursuant to Bankruptcy Rule 7052, made applicable to this proceeding by Bankruptcy Rule 9014. To the extent any of the findings of fact of this Bankruptcy Court constitute conclusions of law, they are adopted as such. To the extent any of the conclusions of law o fthis Bankruptcy Court constitute a findings of fact, they are adopted as such.

[3] Unless otherwise indicated, all references to "§" are to sections of the Bankruptcy Code; all references to "Bankruptcy Rules" are to provisions of the Federal Rules of Bankruptcy Practice; all references to "LBR" are to provisions of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Central District of California.

1

**PROPER NOTICE**

2        F.     As described below and as evidenced by the Omni Service Affidavit and Proof of

3  Publication, due, adequate and sufficient notice of the Disclosure Statement, the Plan, the Plan

4  Supplement, the Confirmation Hearing, the Fund Challenge Deadline, the Ownership Challenge

5  Deadline, all other deadlines for voting on or objecting to the Plan, and all other deadlines with

6  respect to confirmation, were given in compliance with applicable law, including, without

7  limitation, the Bankruptcy Rules, and no other or further notice is or shall be required.

8    **STANDARDS FOR CONFIRMATION UNDER § 1129 OF THE BANKRUPTCY CODE**

9        G.     The Plan Proponents have met their burden of proving the elements of §§ 1129(a)

10  and 1129(b) by a preponderance of the evidence, which is the applicable evidentiary standard for

11  confirmation of the Plan. Further, the Plan Proponents have proven the elements of §§ 1129(a) and

12  1129(b) by clear and convincing evidence. The evidentiary record of the Confirmation Hearing

13  supports the findings of fact and conclusions of law set forth in the following paragraphs.

14        H.     **§ 1129(a)(1).** The Plan complies with each applicable provision of the Bankruptcy

15  Code. Pursuant to §§ 1122(a) and 1123(a)(1), Section III of the Plan provides for the separate

16  classification of Claims into fourteen Classes or sub-Classes, based on reasonable and appropriate

17  differences in the legal nature or priority of such Claims (other than Administrative Claims,

18  Professional Claims, Statutory Fees (including U.S. Trustee Fees), and Priority Tax Claims, which

19  are addressed in Section III of the Plan and which are not required to be designated as separate

20  Classes pursuant to § 1123(a)(1)). In particular, the Plan complies with the requirements of §§ 1122

21  and 1123 as follows:

22           1.     In accordance with § 1122(a), Section III of the Plan classifies each Claim
23              against the Debtor into a Class containing only substantially similar Claims;

           2.     In accordance with § 1123(a)(1), Section III of the Plan properly classifies
24              all Claims that require classification. Separate classification of all Classes was not
25              done for any improper purpose and does not unfairly discriminate between or among
              holders of Claims;

26           3.     In accordance with § 1123(a)(2), Section III of the Plan properly identifies
              and describes each Class of Claims that is not Impaired under the Plan;
27

           4.     In accordance with § 1123(a)(3), Section III of the Plan properly identifies
28              and describes the treatment of each Class of Claims that is Impaired under the Plan;

- 3 -

5.      In accordance with § 1123(a)(4), the Plan provides the same treatment for each Claim within a particular Class unless the holder of such a Claim has agreed to less favorable treatment;

6.      In accordance with § 1123(a)(5), the Plan, including the Plan Supplement, provides, in detail, adequate and proper means for its implementation;

7.      In accordance with § 1123(a)(6), i.e., that, if a debtor is a corporation, its plan must prohibit the issuance of nonvoting equity securities, the Debtor will not issue any stock or other securities under the Plan and therefore the Plan comports with § 1123(a)(6);

8.      In accordance with § 1123(a)(7), the provisions of the Plan regarding the manner of selection of representatives of the Debtor and the Liquidating Trust are consistent with the interests of creditors and equity security holders and with public policy;

9.      In accordance with § 1123(b)(1), Section III of the Plan impairs or leaves unimpaired, as the case may be, each Class of Claims;

10.     In accordance with § 1123(b)(2), Section IV.L of the Plan provides for the assumption, assumption and assignment, or rejection of the executory contracts and unexpired leases of the Debtor that have not been previously assumed, assumed and assigned, or rejected pursuant to § 365 and orders of the Court;

11.     In accordance with §§ 363 and 1123(b)(3) and Bankruptcy Rule 9019, the Plan provides for the good faith compromise of all Claims and controversies relating to the contractual, legal, and subordination rights that a holder of any Claim may have with respect to any Allowed Claim or any distribution to be made on account of such an Allowed Claim, including, but not limited to, approval of any settlement agreements as set forth in Section V.D of the Plan. Section IV of the Plan further provides, in accordance with § 1123(b)(3), that the Liquidating Trust will retain and may enforce any claims, demands, rights, defenses and Causes of Action that the Debtor may hold against any entity, to the extent not expressly released under the Plan;

12.     In accordance with § 1123(b)(5), Section III of the Plan modifies or leaves unaffected, as the case may be, the rights of holders of Claims in Classes 1A through 5;

13.     In accordance with § 1123(b)(6), the Plan includes additional appropriate provisions that are not inconsistent with applicable provisions of the Bankruptcy Code; and

14.     In accordance with § 1123(d), Section IV.M of the Plan provides for the satisfaction of cure amounts associated with each executory contract or unexpired lease to be assumed pursuant to the Plan in accordance with § 365(b)(1). All cure amounts will be determined in accordance with the underlying agreements and applicable law.

I.      **§ 1129(a)(2).** The Plan Proponents have complied with all applicable provisions as required by § 1129(a)(2), including §§ 1122, 1123, 1124, 1125, 1126, 1127, and 1128, and

Bankruptcy Rules 3017, 3018, and 3019, and all other applicable rules, laws and regulations with respect to the Plan and the solicitation of acceptances or rejections thereof. In particular, acceptances or rejections of the Plan were solicited in good faith and in compliance with the requirements of §§ 1125 and 1126 as follows:

1.     In compliance with the *Order: (I) Approving Proposed Disclosure Statement; (II) Approving Solicitation and Voting Procedures; (III) Approving Notice and Objection Procedures for Confirmation of Joint Chapter 11 Plan of Liquidation; (IV) Setting Related Deadlines; and (V) Granting Related Relief* [Docket No. 1348] (the "Disclosure Statement Order"), not later than June 20, 2024, the Plan Proponents, through their claims and noticing agent, Omni Agent Solutions ("Omni"), caused copies of the following materials to be served on all holders of Claims in Classes that were entitled to vote to accept or reject the Plan; *see* Omni Service Affidavit:

- a written notice (the "Confirmation Hearing Notice") of (a) the Court's approval of the Disclosure Statement, (b) the voting deadline, (c) the date and time of the Confirmation Hearing, and (d) the Confirmation objection deadline;

- the Disclosure Statement (together with the exhibits thereto, including the Plan and the Disclosure Statement Order) in electronic format;

- the Committee Support Letter to the extent applicable to Holders of Class 3A Claims; and

- the appropriate form of Ballot.

2.     In compliance with the Disclosure Statement Order, not later than June 20, 2024, the Plan Proponents, through Omni, caused a copy of the notice of non-voting status to be served on all holders of Claims and Interests in the non-voting classes. *See* Omni Service Affidavit).

3.     In compliance with the Disclosure Statement Order, not later than June 20, 2024, the Plan Proponents, through Omni, caused a copy of the Confirmation Hearing Notice to be served on all parties in the creditor database maintained by Omni not otherwise served pursuant to paragraphs 1 and 2 above. *See* Omni Service Affidavit.

4.     The Plan Proponents have set forth the process to select the initial Liquidating Trustee and the members serving on the Post-Confirmation Oversight Committee. The Plan further provides that the Liquidating Trustee shall serve as the sole officer and representative of the Debtor. *See* Section IV.A of the Plan). The process for the selection of the Liquidating Trustee and the members of the Post-Confirmation Oversight Committee is consistent with the best interests of creditors and public policy and satisfies the requirements of § 1129(a)(5).

5.     [In the interest of clarifying and consensually resolving outstanding issues and informal objections to confirmation of the Plan, the Plan Proponents have made

certain non-material modifications to the Plan (the "<u>Non-Material Modifications</u>") as set forth more fully in the Confirmation Brief, any replies in support thereof, and related Plan Supplements.]

6.    The Confirmation Hearing Notice provided due and proper notice of the Confirmation Hearing and all relevant dates, deadlines, procedures and other information relating to the Plan and/or the solicitation of votes thereon, including, without limitation, the voting deadline, the objection deadline, the time, date and place of the Confirmation Hearing and the release, injunction, and exculpation provisions in the Plan.

7.    All persons entitled to receive notice of the Disclosure Statement, the Plan, and the Confirmation Hearing have received proper, timely and adequate notice in accordance with the Disclosure Statement Order, applicable provisions of the Bankruptcy Code and the Bankruptcy Rules, and have had an opportunity to appear and be heard with respect thereto.

8.    The Plan Proponents solicited votes with respect to the Plan in good faith and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, and the Disclosure Statement Order. Accordingly, the Plan Proponents are entitled to the protections afforded by § 1125(e) and the release, injunction, and exculpation provisions set forth in Section IV.B.32 of the Plan.

9.    Claims in Class 2A, 2B, 2C, and 2D under the Plan are unimpaired, and such Class is deemed to have accepted the Plan pursuant to § 1126(f).

10.    The Plan was voted on by all Classes of Impaired Claims that were entitled to vote pursuant to the Bankruptcy Code, the Bankruptcy Rules and the Disclosure Statement Order (*i.e.*, Classes 1A–1F and 3A–3B).

11.    Omni has made a final determination of the validity of, and tabulation with respect to, all acceptances and rejections of the Plan by holders of Claims entitled to vote on the Plan, including the amount and number of accepting and rejecting Claims in Classes 1A–1F and 3A–3B under the Plan. *See* Steverson Declaration at ¶ 10 and Exhibit A thereto.

12.    Omni has made a final determination that certain votes cast for the Plan should be determined invalid, omitted, or otherwise not counted, pursuant to the balloting and tabulation procedures set forth in the Disclosure Statement Order, as set forth more fully in the Steverson Declaration, and such invalidation, omission, or non-vote is appropriate and consistent with the provisions of the Disclosure Statement Order.

13.    Classes 1F, 3A, and 3B have accepted the Plan because holders of Claims in such Classes of at least two-thirds in amount and a majority in number of the Claims in such Classes actually voted to accept the Plan. *See* Steverson Declaration at ¶ 10 and Exhibit A thereto.

J.    **<u>Section 1129(a)(3)</u>.** The Plan has been proposed in good faith and not by any means forbidden by law. The Plan fairly achieves a result consistent with the objectives and purposes of the Bankruptcy Code. In so finding, the Court has considered the totality of the circumstances in the Bankruptcy Case. The Plan is the result of extensive good-faith, arms' length negotiations by

- 6 -

160526478.2

and among the Plan Proponents, and their respective representatives, and reflects substantial input from the principal constituencies having an interest in the Bankruptcy Case and, as evidenced by the overwhelming acceptance of the Plan, achieves as closely as possible the goal of a consensual chapter 11 plan pursuant to the requirements of the Bankruptcy Code. The Plan Proponents and each of their respective officers, directors, employees, advisors, and professionals (i) acted in good faith in negotiating, formulating, and proposing, where applicable, the Plan and agreements, compromises, settlements, transactions, and transfers contemplated thereby, and (ii) will be acting in good faith in proceeding to (a) consummate the Plan and the agreements, compromises, settlements, transactions, transfers, and documentation contemplated by the Plan, including, but not limited to, the Plan Supplement documents, and (b) take any actions authorized and directed or contemplated by this Order. Thus, the Plan satisfies the requirements of § 1129(a)(3).

K.    **§ 1129(a)(4).** The Plan provides that Professional Fee Claims submitted by professionals for services incurred prior to the Effective Date will be entitled to payment only if they are approved by, or are subject to the approval of, the Bankruptcy Court as reasonable, thereby satisfying the requirements of § 1129(a)(4).

L.    **§ 1129(a)(5).** The Plan Proponents have disclosed, or will disclose prior to the Effective Date, in one or more Plan Supplements, the identities of the Liquidating Trustee and the Post-Confirmation Oversight Committee. The Post-Confirmation Oversight Committee will not be compensated and the compensation of the Liquidating Trustee will be consistent with the Liquidating Trust Agreement. Based on the procedures to select the proposed Liquidating Trustee and members of the Post-Confirmation Oversight Committee, each as set forth in a Plan Supplement, the Liquidating Trustee and members of the Post-Confirmation Oversight Committee will be and are qualified to perform the services required of them under the Plan and their appointment to, or continuance in, such offices is consistent with the interests of holders of Claims and with public policy. The Plan Proponents have therefore satisfied the requirements of § 1129(a)(5).

M.      **§ 1129(a)(6).** The Plan does not provide for any changes in rates that require regulatory approval of any governmental agency and therefore, the requirements of § 1129(a)(6) are inapplicable to confirmation of the Plan.

N.      **§ 1129(a)(7).** The liquidation analysis set forth and an exhibit to the Disclosure Statement and other evidence proffered or adduced at or prior to the Confirmation Hearing, or in the Marshack Declaration and the Kurtz Declaration in connection with the Confirmation Hearing: (a) are reasonable, persuasive, accurate and credible; (b) utilize reasonable and appropriate methodologies and assumptions; (c) have not been controverted by any other evidence; and (d) establish that each holder of a Claim in an Impaired Class either (i) has accepted the Plan, or (ii) will receive or retain under the Plan, on account of such Claim property of a value, as of the Effective Date of the Plan, that is not less than the amount that it would receive if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code on such date.

O.      **§ 1129(a)(8).** Classes 2A, 2B, 2C, and 2D are not Impaired and are conclusively presumed to have accepted the Plan under § 1126(f). As set forth in the Steverson Declaration, Classes 1F, 3A, and 3B have each voted to accept the Plan. Class 1D voted to reject the Plan. The Plan therefore does not satisfy § 1129(a)(8). The Plan may nonetheless be confirmed because it meets the requirements of § 1129(b)(1–2) as set forth below.

P.      **§ 1129(a)(9).** The Plan provides treatment for Administrative Claims, Priority Tax Claims, and Priority Non-Tax Claims that is consistent with the requirements of § 1129(a)(9).

Q.      **§ 1129(a)(10).** Classes 1F, 3A, and 3B voted to accept the Plan and none of such accepting classes contain insiders.

R.      **§ 1129(a)(11).** The Plan is feasible, within the meaning of § 1129(a)(11). The projections of the liquidity and financial information, including, without limitation, the projections of the Plan Proponents as of the Effective Date, are reasonable and made in good faith. The evidence provided in support of the Plan or adduced by the Debtor or other Plan Proponents at, or before, the Confirmation Hearing or in the Marshack Declaration and the Kurtz Declaration: (a) is reasonable, persuasive, credible and accurate as of the dates such analysis or evidence was prepared, presented or proffered; (b) utilizes reasonable and appropriate

methodologies and assumptions; and (c) has not been controverted by any other admissible evidence. The Plan Proponents have demonstrated a reasonable assurance of the Plan's prospects for success. Further, the Bankruptcy Court (i) considered the potential Administrative Claims, (ii) estimated the aggregate amount of asserted Administrative Claims only for the purpose of determining whether the Plan can be confirmed pursuant to § 1129, and, (iii) based thereon, concludes that no administrative claim reserve is necessary.

       S.    **§ 1129(a)(12).** The Plan provides that fees payable pursuant to 28 U.S.C. § 1930 will be paid from the Debtor's Estate on or before the Effective Date.

       T.    **§ 1129(a)(13).** The Debtor is not obligated to pay any retiree benefits pursuant to § 1114, and therefore, the requirements of § 1129(a)(13) are inapplicable to confirmation of the Plan.

       U.    **§§ 1129(a)(14) and (15).** The Debtor does not owe any domestic support obligations and is not an individual. Therefore, the requirements of §§ 1129(a)(14) and 1129(a)(15) are inapplicable to confirmation of the Plan.

       V.    **§ 1129(a)(16).** The Debtor is not a nonprofit corporation. Therefore, the requirements of § 1129(a)(16) are inapplicable to confirmation of the Plan.

       W.    **§ 1129(b).** The Plan may be confirmed as to any Class that voted to reject the Plan or is deemed to have rejected the Plan (collectively, the "Rejecting Classes"), pursuant to § 1129(b), notwithstanding that the requirements of § 1129(a)(8) have not been met with respect to the Rejecting Classes, because the Plan Proponents have demonstrated by a preponderance of the evidence that the Plan (a) satisfies all of the other requirements of § 1129(a) and (b) does not "discriminate unfairly" and is "fair and equitable" with respect to the Holders of Claims and Interests in the Rejecting Classes. The Plan, therefore, satisfies the requirements of § 1129(b) and may be confirmed despite the fact that the Rejecting Classes have rejected the Plan. After entry of this Confirmation Order and upon the occurrence of the Effective Date, the Plan shall be binding upon the Holders of Claims and Interests, as applicable, in the Rejecting Classes.

       X.    **§ 1129(c).** The Plan (including previous versions thereof) is the only plan that has been filed in this Bankruptcy Case that has been found to satisfy the requirements of subsections

160526478.2

(a) and (b) of § 1129. Accordingly, confirmation of the Plan complies with the requirements of § 1129(c).

Y.    **§ 1129(d).** No party in interest has requested that the Court deny Confirmation of the Plan on grounds that the principal purpose of the Plan is the avoidance of taxes or the avoidance of the application of § 5 of the Securities Act, and the principal purpose of the Plan is not such avoidance. Accordingly, the Plan satisfies the requirements of § 1129(d).

Z.    **§ 1129(e).** This Bankruptcy Case is not a small business case within the meaning of the Bankruptcy Code.

AA.    Based upon the foregoing and all other pleadings and evidence proffered or adduced at or prior to the Confirmation Hearing, the Plan and the Plan Proponents satisfy the requirements for confirmation set forth in § 1129.

## MODIFICATIONS TO THE PLAN

BB.    The Non-Material Modifications do not materially or adversely affect or change the treatment of any Claim against any Debtor. The Non-Material Modifications do not require additional disclosure under § 1125 or the re-solicitation of acceptances or rejections of the Plan under § 1126.

CC.    The filing of the Plan and Non-Material Modifications constitute due and sufficient notice thereof under the circumstances of the Bankruptcy Case. Accordingly, the Plan is properly before the Bankruptcy Court, and all votes cast with respect to the Plan prior to the Non-Material Modifications shall be binding and shall apply with respect to the Plan.

## IMPLEMENTATION OF THE PLAN

DD.    All documents and agreements necessary to implement the Plan, including, but not limited to, the Plan Supplement documents, are essential elements of the Plan and consummation of each agreement is in the best interests of the Estate and Holders of Claims. The Plan Proponents have exercised reasonable business judgment in determining to enter into the contemplated agreements, and the agreements have been negotiated in good faith, at arms'-length, are fair and reasonable, and shall, upon execution and upon the occurrence of the Effective Date, constitute legal, valid, binding, enforceable, and authorized obligations of the respective parties thereto and

160526478.2

1   will be enforceable in accordance with their terms. Pursuant to § 1142(a), the Plan Supplement

2   documents, and any other agreements necessary to implement the Plan will apply and be

3   enforceable notwithstanding any otherwise applicable non-bankruptcy law.

4   <u>**CONDITIONS TO THE CONFIRMATION OF THE PLAN**</u>

5   EE.    Each of the conditions precedent to entry of this Order has been satisfied in

6   accordance with Section IV.K of the Plan.

7   <u>**EXECUTORY CONTRACTS AND UNEXPIRED LEASES**</u>

8   FF.    Pursuant to §§ 365 and 1123(b)(2), upon the occurrence of the Effective Date,

9   Sections IV.L and IV.M of the Plan provide for the assumption, assumption and assignment, or

10  rejection of certain executory contracts and unexpired leases. The Plan Proponents'

11  determinations regarding the assumption, assumption and assignment, or rejection of Executory

12  Contracts and Unexpired Leases are based on and within the sound business judgment of the Plan

13  Proponents, are necessary to the implementation of the Plan, and are in the best interests of the

14  Debtor's estate, Holders of Claims, and other parties in interest in the Bankruptcy Case. The Plan

15  Proponents may elect to file a "Schedule of Assumed Contracts" as part of the Plan Supplement

16  (as it may be amended or supplemented) prior to the Effective Date and will provide notice to

17  counterparties of the Plan Proponents' determinations regarding the assumption, assumption and

18  assignment, or rejection of Executory Contracts and Unexpired Leases and any related Cure

19  amounts. The Plan Proponents are authorized to make modifications to the Schedule of Assumed

20  Contracts as provided for in the Plan.

21  <u>**RELEASES, EXCULPATIONS AND INJUNCTIONS OF RELEASED PARTIES**</u>

22  GG.    Each non-Debtor party that will benefit from the releases, exculpations, and

23  related injunctions set forth in the Plan (collectively, the "<u>Plan Releases</u>") either shares an identity

24  of interest with the Debtor, was instrumental to the successful prosecution of the Bankruptcy

25  Case, and/or provided a substantial contribution to the Debtor, which value provided a significant

26  benefit to the Debtor's estate and general unsecured creditors, and which will allow for

27  distributions that would not otherwise be available but for the contributions made by such non-

28  Debtor parties. The releases in Section V.D of the Plan are, individually and collectively, integral

1  to, and necessary for the successful implementation of, the Plan and are supported by reasonable

2  consideration.

3  <center>**WAIVER OF STAY**</center>

4      HH.    Under the circumstances, it is appropriate that the 14-day stay imposed by

5  Bankruptcy Rules 3020(e) and 7062(a) be waived.

6  **II.**    **ORDER**

7      BASED ON THE FOREGOING FINDINGS OF FACT AND CONCLUSIONS OF LAW,

8  IT IS THEREFORE HEREBY ORDERED, ADJUDGED, AND DECREED AS FOLLOWS:

9      1.    **Confirmation of the Plan.** The Plan (including the Plan Supplement) and each of

10  its provisions (whether or not specifically set forth and approved in this Order), is and are

11  CONFIRMED in each and every respect, pursuant to § 1129, and the terms of the Plan and the Plan

12  Supplement are incorporated by reference into, and are an integral part of, this order ("Confirmation

13  Order"), provided, however, that if there is any direct conflict between the terms of the Plan and

14  the terms of this Confirmation Order, the terms of this Confirmation Order shall control. The

15  Effective Date of the Plan shall occur on the date when the conditions set forth in Section IV.K.2

16  of the Plan have been satisfied or, if applicable, have been waived in accordance with Section

17  IV.K.3 of the Plan. The failure to specifically include or to refer to any particular article, section, or

18  provision of the Plan, Plan Supplement, or any related document in this Confirmation Order shall

19  not diminish or impair the effectiveness of such article, section, or provision, it being the intent of

20  the Court that this Confirmation Order confirm the Plan and any related documents in their entirety.

21      2.    **Notice**. Notice of the Confirmation Hearing complied with the terms of the

22  Disclosure Statement Order, was appropriate and satisfactory based on the circumstances of the

23  Bankruptcy Case, and was in compliance with the provisions of applicable law, including, without

24  limitation, the Bankruptcy Code, the Bankruptcy Rules, and the LBRs. In addition, the procedures

25  to provide notice of any Schedule of Assumed Contracts to all counterparties to Executory

26  Contracts or Unexpired Leases with the Debtor are adequate and sufficient, in substantial

27  compliance with the Disclosure Statement Order and Bankruptcy Rules 2002(b), 3017 and 3020(b),

28

<center>- 12 -</center>

and no other or further notice is or shall be required (other than as expressly provided for in the Plan for any amendments to the Schedule of Assumed Contracts).

3.    **Objections.** The Objections to confirmation of the Plan are OVERRULED in their entirety except as otherwise set forth herein.

4.    **Plan Classification Controlling.** The terms of the Plan shall solely govern the classification of Claims for purposes of the distributions to be made thereunder. The classifications set forth on the Ballots tendered to or returned by the holders of Claims in connection with voting on the Plan pursuant to the Disclosure Statement Order: (a) were set forth on the Ballots solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims under the Plan for distribution purposes; (c) may not be relied upon by any holder of a Claim as representing the actual classification of such Claim under the Plan for distribution purposes; and (d) shall not be binding on the Plan Proponents or Liquidating Trust except for voting purposes.

5.    **Order Binding on All Parties.** Notwithstanding Bankruptcy Rules 3020(e) or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and this Order shall be immediately binding upon, and inure to the benefit of: (a) the Plan Proponents; (b) the Debtor; (c) the Liquidating Trust; (d) any and all holders of Claims (irrespective of whether such Claims are impaired under the Plan or whether the Holders of such Claims accepted, rejected or are deemed to have accepted, or rejected the Plan); (e) any other person giving, acquiring, or receiving property under the Plan; (f) any and all non-Debtor parties to executory contracts and unexpired leases with the Debtor; and (g) the respective heirs, executors, administrators, trustees, affiliates, officers, directors, agents, representatives, attorneys, beneficiaries, guardians, successors, or assigns, if any, of any of the foregoing. On the Effective Date, all settlements, compromises, releases, waivers, discharges, exculpations, and injunctions set forth in the Plan shall be effective and binding on all Persons.

6.    **Other Essential Documents and Agreements.** The form of documents comprising the Plan Supplement, any other agreements, instruments, certificates, or documents related thereto, and the transactions contemplated by each of the foregoing are approved and, upon execution and

delivery of the agreements and documents relating thereto by the applicable parties, shall be in full force and effect and valid, binding, and enforceable in accordance with their terms without the need for any further notice to or action, order, or approval of this Court, or other act or action under applicable law, regulation, order, or rule. The Plan Proponents, and after the Effective Date, the Debtor and/or the Liquidating Trustee (as may be applicable), are authorized, without further approval of this Court or any other party, to execute and deliver all agreements, documents, instruments, securities, and certificates relating to such agreements and perform their obligations thereunder, including, without limitation, payment of all fees due thereunder or in connection therewith.

7.      **Unclassified Claims.** On and after the Effective Date, the treatment of the Unclassified Claims of the Debtor shall be effectuated pursuant to Section III of the Plan, which is specifically approved in all respects, is incorporated herein in its entirety, and is so ordered.

8.      **Administrative Claims Bar Date**. Pursuant to Section VI.A.3 of the Plan, and except as otherwise provided in the Plan, requests for payment of Administrative Claims, including Professional Fee Claims (excluding requests for payment of Professional Fee Claims and fees and charges assessed against the Debtor's estate pursuant to § 1930 of the Judicial Code) are required to be filed by (a) November 21, 2023, for Administrative Claims that may have arisen, accrued, or otherwise become due and payable at any time on and subsequent to the Petition Date but on or before the Sale Closing, or (b) 45 days after the Effective Date for Administrative Claims that may have arisen, accrued, or otherwise become due and payable at any time on and subsequent to the Sale Closing. Holders of Administrative Claims that are required to, but do not, File and serve a request for payment of such Administrative Claims by the applicable Administrative Claims Bar Dates shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Estate or its property, and such Administrative Claims shall be deemed satisfied, settled, and released. For the avoidance of doubt, Administrative Claims that arise in the ordinary course of the Debtor's ongoing business (if any) are not subject to the Administrative Claims Bar Date and shall be paid in the ordinary course of business in accordance with the terms and conditions of any agreements governing, instruments evidencing, or other documents relating to such transactions.

9.      **Fund Challenge Deadline.** Pursuant to Section IV.B.3(b) of the Plan, any party that wished to dispute the characterization of the Post-Petition Funds as property of the Estate and/or use of the Funds to fund Plan payments, was required to commence an adversary proceeding no later than July 11, 2024 ("Fund Challenge Deadline"). No party commenced a challenge by the Fund Challenge Deadline and, accordingly, all Post-Petition Funds shall be deemed property of the Estate in accordance with the Plan.

10.     **Ownership Challenge Deadline.** Pursuant to Section IV.B.3(b) of the Plan, any party that wished to assert an ownership interest in any Liquidating Trust Assets, were required to commence an adversary proceeding no later than July 11, 2024 ("Ownership Challenge Deadline"). PurchaseCo 80, LLC is the only entity that commenced an adversary proceeding by the Ownership Challenge Deadline, which remains subject to final resolution through such litigation, except to the extent provided herein.  Accordingly, all other parties shall be, and hereby are, barred from, and deemed to have waived and forfeited, any ownership or similar claim in the Liquidating Trust Assets.

11.     **Post-Effective Date Governance.** On and after the Effective Date, the post-Effective Date governance of the Debtor shall be effectuated pursuant to Section IV of the Plan, which is specifically approved in all respects, is incorporated herein in its entirety, and is so ordered.

(a)      **Continued Corporate Existence and Vesting of Assets.** Pursuant to Section IV of the Plan, and except as set forth in the Plan: (i) the Debtor shall be dissolved, under applicable non-bankruptcy law, on the Effective Date or as soon thereafter as is practicable to accomplish the purposes of the Plan; (ii) the Debtor's interests and rights shall be vested, for all purposes, in the Liquidating Trust; (iii) on the Effective Date, the authority, power, and incumbency of the persons acting as directors and officers of the Debtor shall be deemed to have been resigned, solely in their capacities as such, and the Liquidating Trustee shall be appointed as the sole manager and sole officer of the Debtor and shall succeed to the powers of the Debtor's directors and officers; (iv) from and after the Effective Date, the Liquidating Trustee shall be the sole representative of, and shall act for, the Debtor to the extent necessary to implement and effectuate the terms of the Plan, except as provided in the Liquidating Trust Agreement with respect to certain rights of the

Post-Confirmation Committee to appear and be heard. On and after the Effective Date, the Debtor shall continue in existence solely for the following limited purposes: (i) making any Effective Date payments required under the Plan; (ii) transferring the Debtor's assets to the Liquidating Trust under the terms of the Plan; and (iii) taking all steps to execute all instruments and documents necessary to effectuate the Plan. Without limiting the foregoing, the Debtor may pay the charges that they incur from and after the Effective Date for Professional Claims, disbursements, expenses or related support services without application to, or the approval of, the Court, in accordance with the Plan.

(b)    **Dissolution of the Committee.** Pursuant to Section 2.10(a) of the Liquidating Trust Agreement, on the Effective Date, the Committee shall be dissolved (except with respect to any Professional compensation matters), and the members, employees, agents, advisors, affiliates, and representatives (including, without limitation, attorneys, financial advisors, or other professionals) of each thereof shall thereupon be released from and discharged of and from all further authority, duties, responsibilities, and obligations related thereto, arising from and in connection with or related to the Bankruptcy Case; provided, however, that obligations arising under confidentiality agreements, joint interest agreements, and protective orders; if any, entered during the Bankruptcy Case shall remain in full force and effect according to their terms.

(c)    **Formation of the Post-Effective Date Committee.** Pursuant to Section IV.B.V of the Plan, prior to the Effective Date, a committee shall be appointed to serve as the Post-Confirmation Oversight Committee, pursuant to the terms of the Post-Confirmation Oversight Committee Bylaws to be established by the Post-Confirmation Oversight Committee. Members of the Post-Confirmation Oversight Committee shall have the duties and oversight responsibilities set forth in the Liquidating Trust Agreement and in the Plan.

12.    **Means for Implementation of the Plan.** On and after the Effective Date, the Plan's implementation shall be effectuated pursuant to Section IV of the Plan, which is specifically approved in all respects, is incorporated herein in its entirety, and is so ordered.

(a)    **No Further Court Authorization.** Except as otherwise set forth in the Plan or this Confirmation Order, on and after the Effective Date, the Debtor, the Chapter 11 Trustee, and the Liquidating Trustee shall not be required to obtain any approvals from the Bankruptcy Court,

- 16 -

any court or governmental body and/or provide any notices or seek approvals under the to implement the terms of the Plan, including, without limitation, the transfer of any assets of the Debtor pursuant to the terms of the Plan and the Liquidating Trust Agreement.

(b)     Except as set forth in the Plan, all actions authorized to be taken pursuant to the Plan shall be effective on, prior to, or after the Effective Date pursuant to this Confirmation Order, without further application to, or order of, this Court, or further action by the respective trustees, directors, or members of the Debtor and the Liquidating Trust.

(c)     To the extent that, under applicable non-bankruptcy law, any of the foregoing actions would otherwise require the consent or approval of the directors of any of the Debtor or the Liquidating Trust, this Confirmation Order shall, pursuant to § 1142, constitute such consent or approval, and such actions are deemed to have been taken by unanimous action of the directors of the Debtor or the Liquidating Trust, unless the Plan expressly provides that such party must provide such consent after the Effective Date.

(d)     Each federal, state, commonwealth, local, foreign, or other governmental agency is hereby directed and authorized to accept any and all documents, mortgages, and instruments necessary or appropriate to effectuate, implement, or consummate the transactions contemplated by the Plan and this Confirmation Order.

(e)     All transactions effected by the Debtor during the pendency of the Bankruptcy Case from the Petition Date through the Confirmation Date are approved and ratified.

(f)     **Preservation of Insurance.** Nothing in the Plan shall diminish, impair, or otherwise affect distributions from the proceeds or the enforceability of any insurance policies that may cover (a) Claims by the Debtor, or (b) Claims against the Debtor or covered Persons thereunder.

13.     **Plan Distributions.** On and after the Effective Date, distributions on account of Allowed Claims and the resolution and treatment of Disputed Claims shall be effectuated pursuant to Section IV.B of the Plan, which is specifically approved in all respects, incorporated herein in its entirety, and is so ordered. The record date for making distributions under the Plan shall be the Effective Date.

160526478.2

14.     **Procedures for Treating and Resolving Disputed Claims.** On and after the Effective Date, the procedures for the treatment and resolution of Disputed Claims shall be effectuated pursuant to Section 10 of the Plan, which is specifically approved in all respects, is incorporated herein in its entirety, and is so ordered.

15.     **Resolution of Disputed Claims.** The Liquidating Trustee shall have the right to file, settle, compromise, withdraw, or litigate objections to certain Claims pursuant to the Disputed Claims resolution procedures outlined in Section IV.I of the Plan. The Liquidating Trustee may settle, compromise, or withdraw any objections or proceedings without Court approval or may seek Court approval without notice to any Person.

16.     **Executory Contracts and Unexpired Leases.** On and after the Effective Date, the treatment of Executory Contracts and Unexpired Leases shall be effectuated pursuant to Sections IV.L and IV.M of the Plan, which are specifically approved in all respects, are incorporated herein in their entirety, and are so ordered.

(a)     **General Treatment.** Pursuant to Section IV.L of the Plan, on the Effective Date, all Executory Contracts and Unexpired Leases to which the Debtor is a party shall be deemed rejected as of the Effective Date and will receive a Notice of Rejection of Executory Contract and/or Unexpired Lease, substantially in the form annexed hereto as **Exhibit "A,"** except for those Executory Contracts and Unexpired Leases that (a) have been assumed or rejected pursuant to a Final Order of the Bankruptcy Court (including pursuant to the Rejection Procedures), (b) are the subject of a separate motion to assume, assume and assign, or reject filed under § 365 on or before the Effective Date, or (c) are specifically designated as a contract or lease to be assumed on any Schedule of Assumed Contracts and no timely objection to the proposed assumption has been filed, provided, however, that the Plan Proponents reserve the right to amend the Plan Supplement at any time. If the party to the Executory Contract or Unexpired Lease listed to be assumed in any Schedule of Assumed Contracts wishes to object to the proposed assumption (including with respect to the cure amounts), it shall do so within thirty (30) days from the service of the Schedule of Assumed Contracts.

(b) **Cure of Defaults**. Pursuant to Section IV.M of the Plan, Any cure obligations under each Executory Contract and Unexpired Lease to be assumed (or assumed and assigned) pursuant to the Plan shall be satisfied, pursuant to § 365(b)(1) of the Bankruptcy Code, by performance or payment of the default amount in Cash on or after the Effective Date, subject to the limitations described in Section IV.M of the Plan, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree. In the event of a dispute regarding (1) the cure obligation, (2) the ability of the Debtor, the Liquidating Trustee or any assignee to provide "adequate assurance of future performance" (within the meaning of § 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed (or assumed and assigned), or (3) any other matter pertaining to assumption (or assumption and assignment) or the cure obligations required by § 365(b)(1) of the Bankruptcy Code, such dispute shall be determined either (x) by agreement of the parties to such dispute or (y) following the entry of a Final Order or orders resolving the dispute and approving the assumption (or assumption and assignment). Notwithstanding the foregoing, at all times through the date that is fifteen (15) days after the Bankruptcy Court enters a Final Order resolving and fixing the amount of a disputed cure amount, the Debtor or the Liquidating Trustee (as applicable) shall have the right to remove such Executory Contract or Unexpired Lease from the Schedule of Assumed Contracts and such Executory Contract or Unexpired Lease shall be deemed rejected.

(c) **Bar Date for Rejection Damages**. Pursuant to Section IV.L of the Plan, Claims arising out of the rejection of an Executory Contract or Unexpired Lease with the Debtor pursuant to the Plan must be filed with the Bankruptcy Court no later than thirty (30) days after the later of (1) the date of entry of an order of the Bankruptcy Court (including this Confirmation Order) approving such rejection, (2) the effective date of such rejection (or deemed rejection), or (3) the Effective Date. Any Claims arising from the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan or Confirmation Order not filed with the Bankruptcy Court within such time will be automatically Disallowed, forever barred from assertion, and shall not be enforceable against the Debtor, the Liquidating Trust and the Estate, or their property without the need for any objection by the Liquidating Trustee or further notice to, or action, order, or

approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied and released, notwithstanding anything in the Schedules or a Proof of Claim to the contrary. For the avoidance of doubt, nothing provided herein shall extend or modify any previously established deadline to file a claim arising from the rejection of an Executory Contract or Unexpired Lease previously rejected by the Liquidating Trustee or the Debtor. To the extent any Claims are filed based on rejection of Executory Contracts or Unexpired Leases, such Claims shall be treated as a General Unsecured Claims in Class 3A of the Plan.

17.    **Conditions Precedent to the Effective Date.** On and after the Effective Date, the conditions precedent to the Confirmation of the Plan, the conditions precedent to the Effective Date, and the waiver provisions therefor pursuant to Section IV.K of the Plan are specifically approved in all respects, are incorporated herein in their entirety, and are so ordered.

18.    **Effect of Confirmation.** On and after the Effective Date, the Plan shall be effectuated pursuant to Section V of the Plan, which is specifically approved in all respects, is incorporated herein in its entirety, and is so ordered.

(a)    **No Revesting of Assets.** Upon the Effective Date, pursuant to Section V.B of the Plan, all Property of the Estate will remain Property of the Estate and/or the Liquidating Trust free and clear of all claims and interests except as provided in the Plan. No Estate assets shall revert to the Debtor as a result of confirmation. The Liquidating Trustee shall be the entity responsible for carrying out the terms of the Plan and to comply with any orders of the Court regarding the Plan or the assets of the Estate, subject to the terms of the Liquidating Trust Agreement and the Confirmation Order

(b)    **General Settlement of Claims and Interests.** Unless otherwise authorized by another order of the Bankruptcy Court, pursuant to § 1123(b)(3) and Bankruptcy Rule 9019, and in consideration for the distributions and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all Causes of Actions relating to the rights that a Holder of a Claim may have against the Debtor with respect to any Allowed Claim or any distribution to be made pursuant to the Plan on account of any

Allowed Claim. Unless otherwise authorized, the entry of this Confirmation Order shall constitute the Bankruptcy Court's approval, as of the Effective Date, of the compromise or settlement of all such Causes of Action and the Bankruptcy Court's finding that all such Causes of Action are in the best interests of the Debtor, their Estates, their respective property, and Claim Holders and are fair, equitable and reasonable.

(c)     **Plan Releases, Injunctions, and Exculpation.** The Plan release and injunction provisions set forth in Sections IV.B.31, IV.B.32, and V.D of the Plan are approved in all respects, are incorporated herein in their entirety, are so ordered and shall be immediately effective on the Effective Date of the Plan without further order or action on the part of the Court or any other party.

(d)     **Releases.** The Plan release provisions set forth in Section IV.B.31, IV.B.32, and V.D of the Plan are approved in all respects, are incorporated herein in their entirety, are so ordered, and shall be immediately effective on the Effective Date of the Plan without further order or action on the part of the Court or any other party:

(i)     *WAIVER OF LIMITATIONS ON RELEASES. THE LAWS OF SOME STATES (FOR EXAMPLE, CALIFORNIA CIVIL CODE § 1542) PROVIDE, IN WORDS OR SUBSTANCE, THAT A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS/HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS/HER DECISION TO RELEASE. THE RELEASING PARTIES IN SECTION IV.B.32 OF THE PLAN ARE DEEMED TO HAVE WAIVED ANY RIGHTS THEY MAY HAVE UNDER SUCH STATE LAWS AS WELL AS UNDER ANY OTHER STATUTES OR COMMON LAW PRINCIPLES OF SIMILAR EFFECT.*

(e)     **General Injunction.** The Plan Injunction provision set forth in Section IV.B.32 of the Plan is approved in all respects, is incorporated herein in its entirety, is so ordered, and shall be immediately effective on the Effective Date of the Plan without further order or action on the part of the Court or any other party:

(f)     **Exculpation.** The Plan Exculpation provision set forth in Section V.D of the Plan is approved in all respects, is incorporated herein in its entirety, is so ordered, and shall be

- 21 -

immediately effective on the Effective Date of the Plan without further order or action on the part

of the Court or any other party:

> To the maximum extent permitted by law, neither the Trustee, the Liquidating Trustee, the Estate, the Committee, the Post-Confirmation Oversight Committee, nor any of their employees, officers, directors, shareholders, agents, members, representatives, or the professionals employed or retained by any of them, whether or not by Court order shall have or incur liability to any person or entity for an act taken or omission made in good faith in connection with or related to the formulation and implementation of the Plan, the Disclosure Statement, or a contract, instrument, release, or other agreement or document created in connection therewith, the solicitation of acceptances for or confirmation of the Plan, or the consummation and implementation of the Plan and the transactions contemplated therein; provided, however, that the foregoing exculpation shall not extend to any act or omission constituting fraud, willful misconduct, or gross negligence by the foregoing parties. Each of the exculpated persons set forth in this Section of the Plan shall in all respects be entitled to reasonably rely on the advice of counsel with respect to its duties and responsibilities under the Plan. Notwithstanding the foregoing, nothing contained in this Plan shall effectuate an exculpation, release, or injunction in favor of the Debtor's employees, officers, directors, shareholders, agents, members, representatives, Affiliates, alter egos, or the professionals employed or retained by any of them, and all rights and Causes of Action held by the Estate against any of the foregoing are expressly preserved by this Plan.

19.     **Preservation of Causes of Action.**   After confirmation of the Plan, the

Liquidating Trust shall retain all rights to continue, commence and pursue, as appropriate, any

and all claims or Causes of Action, including those identified in the Plan Supplement, and

objections to Claims, whether arising before or after the date on which the Debtor filed its

petition, in any court or other tribunal including, without limitation, in an adversary proceeding

filed in the Bankruptcy Case. The failure to list any potential or existing claims or causes of

action shall not limit the rights of the Liquidating Trustee to pursue any claims or causes of action

not listed or identified. After the Effective Date, the Liquidating Trustee shall have the absolute

authority to prosecute, waive, adjust, or settle any and claims, including all Causes of Action,

without the need for approval by the Court, subject to the terms of the Liquidating Trust

Agreement. Unless a claim or Cause of Action against a creditor or other entity is expressly

waived, relinquished, released, compromised, or settled in the Plan or any other Final Order of

the Court, the Estate expressly reserves such claim or Cause of Action for later adjudication

(including, without limitation, claims and causes of action not specifically identified or which

the Debtor or its Estate may presently be unaware or which may arise or exist by reason of

additional facts or circumstances unknown to the Plan Proponents, or the Estate at this time or

facts or circumstances which may change or be different from those which the Plan Proponents or the Estate now believe to exist). No preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or otherwise) or laches shall apply to such claims, or Causes of Action upon or after the confirmation or consummation of the Plan based on the Disclosure Statement, the Confirmation Order, except where such claims and Causes of Action have been explicitly released in the Plan. In addition, the Liquidating Trust, and the Estate expressly reserve the right to pursue or adopt any claims alleged in any lawsuit in which the Debtor is a defendant or an interested party, against any person or entity, including without limitation, the plaintiff or co-defendant in such lawsuits. Delivery (by any means) of the Plan or the Disclosure Statement approved by the Court to any person whom the Debtor and/or Estate has incurred an obligation, or who has received a transfer of money or property of the Debtor, or who has transacted business with the Debtor or the Estate shall constitute actual notice that such obligation, transfer, or transaction may be reviewed by the Trustee subsequent to the approval by the Court of the Plan and may, if appropriate, be the subject of an action after the approval by the Court of the Plan, whether or not (i) such person has field a proof of claim in this Case; (ii) such person's proof of claim has been the subject of an objection; (iii) such person's claim was included in the schedules; or (iv) such person's scheduled claim has been identified by the Trustee as disputed, contingent, or unliquidated.

20.    **Retention of Jurisdiction.** Unless otherwise provided in the Plan or in this Confirmation Order, on and after the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising in, arising under, or related to the Chapter 11 Cases as is legally permissible, including jurisdiction over those matters and issues described in Section IV.O of the Plan, which is specifically approved in all respects, is incorporated herein in its entirety, and is so ordered.

21.    **Severability.** In the event that the Bankruptcy Court determines, prior to the Effective Date, that any provision of the Plan is invalid, void or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistently with the original purpose of the term

or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. This Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

22.    **Binding Effect of Prior Orders.** Pursuant to § 1141, effective as of the Confirmation Date, but subject to the occurrence of the Effective Date and subject to the terms of the Plan and this Order, all prior orders entered in the Chapter 11 Cases, all documents and agreements executed by the Debtor as authorized and directed thereunder, and all motions or requests for relief by the Debtor pending before the Court as of the Effective Date shall be binding upon and shall inure to the benefit of the Chapter 11 Trustee, the Debtor, the Liquidating Trust, and their respective successors and assigns.

23.    **Notice of Confirmation of the Plan.** Pursuant to Bankruptcy Rules 2002(f)(7) and 3020(c)(2), the Chapter 11 Trustee will serve a notice of the entry of this Order substantially in the form of **Exhibit "B"** attached hereto and incorporated herein by reference (the "Confirmation Notice"), to all parties in the creditor database maintained by Omni, no later than five (5) Business Days after the Confirmation Date; provided, however, that the Chapter 11 Trustee will serve the Confirmation Notice only on the record Holders of Claims as of the Confirmation Date. As soon as practicable after the entry of this Order, the Plan Proponent will make copies of this Order and the Confirmation Notice available on the Debtor's restructuring website at https://cases.omniagentsolutions.com/home?clientId=3675. As soon as practicable after the occurrence of the Effective Date pursuant to the terms of the Plan, the Plan Proponents will serve the notice of Effective Date, substantially in the form attached hereto as **Exhibit "C"** (the "Notice of Effective Date") on all parties served with the Confirmation Notice.

24.    **Modification of the Plan.** After the entry of this Confirmation Order, the Plan Proponents may, upon order of the Bankruptcy Court, amend or modify this Plan, in accordance

- 24 -

with § 1127(b), or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan. A Holder of an Allowed Claim that is deemed to have accepted the Plan shall be deemed to have accepted the Plan as modified if the proposed modification does not materially and adversely change the treatment of the Claim of such Holder. Notwithstanding the foregoing, the Plan Proponents are authorized to file Plan Supplements on or before the Effective Date of the Plan.

25.    **Governing Law.** Pursuant to Section VI.D of the Plan, unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of California, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control)..

26.    **Notice.** Except as otherwise provided in the Plan and this Confirmation Order, as of the Effective Date, notice of all subsequent pleadings in the Bankruptcy Case shall be limited to counsel to the Plan Proponents, counsel to the Post-Effective Date Committee, the U.S. Trustee, and any party known to be directly affected by the relief sought.

27.    **References to Plan.** Any document related to the Plan that refers to a chapter 11 plan of the Plan Proponents other than the Plan confirmed by this Order shall be, and it hereby is, deemed to be modified such that the reference to a chapter 11 plan of the Plan Proponents in such document shall mean the Plan confirmed by this Confirmation Order, as appropriate.

28.    **Reconciliation of Inconsistencies.** Without intending to modify any prior Order of this Court (or any agreement, instrument or document addressed by any prior Order), in the event of an inconsistency between the Plan, on the one hand, and any other agreement, instrument, or document intended to implement the provisions of the Plan, on the other, the provisions of the Plan shall govern (unless otherwise expressly provided for in such agreement, instrument, or document). In the event of any inconsistency between the Plan or any agreement, instrument, or document

- 25 -

intended to implement the Plan, on the one hand, and this Order, on the other, the provisions of this Order shall govern.

29.    **Automatic Stay.** Pursuant to Section IV.B.32 of the Plan, the Automatic Stay is lifted upon the Effective Date as to property of the bankruptcy Estate but such property will be transferred to the Liquidating Trust free and clear of liens, claims, and interests except as otherwise provided in the Plan.

30.    **Order Effective Immediately**. Notwithstanding Bankruptcy Rules 3020(e) or 7062 or otherwise, the stay provided for under Bankruptcy Rule 3020(e) shall be waived and this Order shall be effective and enforceable immediately upon entry. The Plan Proponents are authorized to consummate the Plan and the transactions contemplated thereby immediately after entry of this Order and upon, or concurrently with, satisfaction of the conditions set forth in the Plan.

###

**Exhibit A to Proposed Confirmation Order**

1  D. EDWARD HAYS, #162507
   ehays@marshackhays.com
2  LAILA MASUD, #311731
   lmasud@marshackhays.com
3  **MARSHACK HAYS WOOD LLP**
   870 Roosevelt
4  Irvine, California 92620
   Telephone: (949) 333-7777
5  Facsimile: (949) 333-7778

6  General Counsel for Chapter 11 Trustee,
   RICHARD A. MARSHACK
7
   Keith C. Owens (SBN 184841)
8  Nicholas A. Koffroth (SBN 287854)
   **FOX ROTHSCHILD LLP**
9  10250 Constellation Blvd., Suite 900
   Los Angeles CA 90067
10 Telephone: (310) 598-4150
   Facsimile: (310) 556-9828
11 kowens@foxrothschild.com
   nkoffroth@foxrothschild.com
12 Counsel for Official Committee of Unsecured Creditors

13              **UNITED STATES BANKRUPTCY COURT**
14        **CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION**

15 In re                                    Case No. 8:23-bk-10571-SC

16 LITIGATION PRACTICE GROUP P.C.,          Chapter 11 Case

17        Debtor.
                                            **NOTICE OF REJECTION OF**
18                                          **EXECUTORY CONTRACTS AND**
                                            **UNEXPIRED LEASES**
19

20 **PLEASE TAKE NOTICE OF THE FOLLOWING:**

21        1.    By Order dated _____, 2024 [Docket No. _____] (the "<u>Confirmation Order</u>"),
   the United States Bankruptcy Court for the Central District of California (the "<u>Bankruptcy Court</u>")
22 confirmed the *Modified First Amended Joint Chapter 11 Plan of Liquidation (Dated June 14,*
   *2024)*[Docket No. 1344] (including all exhibits thereto, any plan supplement, and as amended,
23 modified, or supplemented from time to time, the "<u>Plan</u>")[1] filed by Richard A. Marshack, the Chapter
   11 Trustee ("<u>Chapter 11 Trustee</u>") for the debtor (the "<u>Debtor</u>") in the above-captioned chapter 11
24 case, and the Official Committee of Unsecured Creditors (the "<u>Committee</u>," and together with the
   Chapter 11 Trustee, the "<u>Plan Proponents</u>"), as satisfying the requirements of § 1129 of title 11 of the
25 United States Code, 11 U.S.C. §§ 101 et seq. (the "<u>Bankruptcy Code</u>").

26

27 _____
   [1] Capitalized terms used but not otherwise defined herein have the definitions set forth in the Plan.
28

160864637.1

2.      On _____, 2024, the Effective Date of the Plan occurred and the Plan was substantially consummated.

3.      **YOU ARE OR MIGHT BE A COUNTERPARTY TO AN EXECUTORY CONTRACT OR UNEXPIRED LEASE DEEMED REJECTED BY THE PLAN AS OF THE EFFECTIVE DATE.**

4.      <u>Rejection of Executory Contracts and Unexpired Leases</u>. Pursuant to Section IV.L of the Plan, on the Effective Date, all Executory Contracts and Unexpired Leases to which any Debtor is a party shall be deemed rejected as of the Effective Date, other than those Executory Agreements that (a) have been assumed or rejected pursuant to a Final Order of the Bankruptcy Court (including pursuant to the Rejection Procedures), (b) are the subject of a separate motion to assume, assume and assign, or reject filed under § 365 on or before the Effective Date, or (c) are specifically designated as a contract or lease to be assumed on any Schedule of Assumed Contracts and no timely objection to the proposed assumption has been filed, provided, however, that the Plan Proponents reserve the right to amend the Plan Supplement at any time.

5.      <u>Bar Date for Rejection Damages</u>. Pursuant to Section IV.L of the Plan, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases pursuant to the Plan or the Confirmation Order, if any, must be filed with the Bankruptcy Court within thirty (30) days after the later of (1) the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection, (2) the effective date of such rejection (or deemed rejection), or (3) the Effective Date. Any Claims not filed within such time period will be forever barred from assertion against the Debtor, its property, its Estate, and/or the Liquidating Trust.

6.      <u>Viewing the Plan and Confirmation Order</u>. The Plan and the Confirmation Order may be obtained: (a) via download from the Bankruptcy Court's website at ecf.cacb.uscourts.gov for registered users of the PACER and/or CM/ECF systems; (b) via download from https://cases.omniagentsolutions.com/home?clientId=3675; or (c) by written request to:

<div align="center">

The Litigation Practice Group P.C.
c/o Omni Agent Solutions
5955 De Soto Ave., Suite 100
Woodland Hills, CA 91367

</div>

DATED: _____, 2024          MARSHACK HAYS WOOD LLP


By: _____
     D. EDWARD HAYS
     LAILA MASUD
     General Counsel for Chapter 11 Trustee,
     RICHARD A. MARSHACK

DATED: _____, 2024          FOX ROTHSCHILD LLP


By: _____
     KEITH OWENS
     NICHOLAS KOFFROTH
     Attorneys for the Official Committee of
     Unsecured Creditors

<div align="center">2</div>

160864637.1

**Exhibit B to Proposed Confirmation Order**

D. EDWARD HAYS, #162507
ehays@marshackhays.com
LAILA MASUD, #311731
lmasud@marshackhays.com
**MARSHACK HAYS WOOD LLP**
870 Roosevelt
Irvine, California 92620
Telephone: (949) 333-7777
Facsimile: (949) 333-7778

General Counsel for Chapter 11 Trustee,
RICHARD A. MARSHACK

Keith C. Owens (SBN 184841)
Nicholas A. Koffroth (SBN 287854)
**FOX ROTHSCHILD LLP**
10250 Constellation Blvd., Suite 900
Los Angeles CA 90067
Telephone: (310) 598-4150
Facsimile: (310) 556-9828
kowens@foxrothschild.com
nkoffroth@foxrothschild.com
Counsel for Official Committee of Unsecured Creditors

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

|  |  |
|---|---|
| In re | Case No. 8:23-bk-10571-SC |
| LITIGATION PRACTICE GROUP P.C., | Chapter 11 Case |
| Debtor. | **NOTICE OF CONFIRMATION OF MODIFIED FIRST JOINT PLAN OF LIQUIDATION (DATED JUNE 14,2024)** |

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.      By Order dated August ___, 2024 [Docket No. ____] (the "Confirmation Order"), the United States Bankruptcy Court for the Central District of California (the "Bankruptcy Court") confirmed the *Modified First Amended Joint Chapter 11 Plan of Liquidation (Dated June 14, 2024)* [Docket No. 1344] (including all exhibits thereto, any plan supplement, and as amended, modified, or supplemented from time to time, the "Plan")[9] filed by Richard A. Marshack, the Chapter 11 Trustee ("Chapter 11 Trustee") for the debtor (the "Debtor") in the above-captioned chapter 11 case, and the Official Committee of Unsecured Creditors (the "Committee," and together with the

---

[9] Capitalized terms used but not otherwise defined herein have the definitions set forth in the Plan.

- 1 -

Chapter 11 Trustee, the "<u>Plan Proponents</u>"), as satisfying the requirements of § 1129 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "<u>Bankruptcy Code</u>").

      2.     The Plan and the Confirmation Order may be obtained:

      (a) via download from the Bankruptcy Court's website at ecf.cacb.uscourts.gov for registered users of the PACER and/or CM/ECF systems;

      (b) via download from https://cases.omniagentsolutions.com/home?clientId=3675; or

      (c) by written request to:

<div align="center">

The Litigation Practice Group P.C.
c/o Omni Agent Solutions
5955 De Soto Ave., Suite 100
Woodland Hills, CA 91367

</div>

DATED: _____, 2024         MARSHACK HAYS WOOD LLP

By: _____
     D. EDWARD HAYS
     LAILA MASUD
     General Counsel for Chapter 11 Trustee,
     RICHARD A. MARSHACK

DATED: _____, 2024         FOX ROTHSCHILD LLP

By: _____
     KEITH OWENS
     NICHOLAS KOFFROTH
     Attorneys for the Official Committee of
     Unsecured Creditors

160865509.1

**Exhibit C to Proposed Confirmation Order**

D. EDWARD HAYS, #162507
ehays@marshackhays.com
LAILA MASUD, #311731
lmasud@marshackhays.com
**MARSHACK HAYS WOOD LLP**
870 Roosevelt
Irvine, California 92620
Telephone: (949) 333-7777
Facsimile: (949) 333-7778

General Counsel for Chapter 11 Trustee,
RICHARD A. MARSHACK

Keith C. Owens (SBN 184841)
Nicholas A. Koffroth (SBN 287854)
**FOX ROTHSCHILD LLP**
10250 Constellation Blvd., Suite 900
Los Angeles CA 90067
Telephone: (310) 598-4150
Facsimile: (310) 556-9828
kowens@foxrothschild.com
nkoffroth@foxrothschild.com

Counsel for Official Committee of Unsecured Creditors

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

In re

LITIGATION PRACTICE GROUP P.C.,

Debtor.

Case No. 8:23-bk-10571-SC

Chapter 11 Case

**NOTICE OF OCCURRENCE OF EFFECTIVE DATE OF MODIFIED FIRST AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION (DATED JUNE 14, 2024)**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.     By Order dated August ___, 2024 [Docket No. ____] (the "Confirmation Order"), the United States Bankruptcy Court for the Central District of California (the "Bankruptcy Court") confirmed the *Modified First Amended Joint Chapter 11 Plan of Liquidation (Dated June 14, 2024)* [Docket No. 1344] (including all exhibits thereto, any plan supplement, and as amended, modified, or supplemented from time to time, the "Plan")[1] filed by Richard A. Marshack, the Chapter 11 Trustee ("Chapter 11 Trustee") for the debtor (the "Debtor") in the above-captioned chapter 11 case, and the Official Committee of Unsecured Creditors (the "Committee," and together with the Chapter 11 Trustee, the "Plan Proponents"), as satisfying the requirements of § 1129 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code").

2.     **Effective Date**. On _____, 2024, the Effective Date of the Plan occurred and the Plan was substantially consummated. All conditions precedent to the Effective Date of the

---

[1] Capitalized terms used but not otherwise defined herein have the definitions set forth in the Plan.

160862004.1

Plan set forth in Section IV.K of the Plan have either been satisfied or waived in accordance with the Plan and the Confirmation Order.

3. **Bar Date for Rejection Damages**. Pursuant to Section IV.L of the Plan, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases pursuant to the Plan or the Confirmation Order, if any, must be filed with the Bankruptcy Court within thirty (30) days after the later of (1) the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection, (2) the effective date of such rejection (or deemed rejection), or (3) the Effective Date (i.e.,          , 2024). Any Claims not filed within such time period will be forever barred from assertion against the Debtor, its property, its Estate, and/or the Liquidating Trust.

4. **Bar Date for Professional Claims**. Pursuant to Section III.B of the Plan, all Professionals seeking an award by the Bankruptcy Court of a Professional Claim (other than the Ordinary Course Professionals) shall file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred by the date that is forty-file (45) days after the Effective Date (i.e., _____, 2024). Objections to any final applications covering Professional Claims must be filed and served on the Post-Effective Date Debtors, the Liquidating Trustee, and the requesting Professional by the later of (1) sixty (60) days after the Effective Date and (2) sixty (60) days after the filing of the applicable request for payment of the Administrative Claims.

5. **Releases, Injunctions, and Exculpation**:  Pursuant to the Confirmation Order, the releases and injunctions set forth in Section IV.B.32 of the Plan, and the exculpation provisions set forth in Section V.D of the Plan are now in full force and effect.

6. **Viewing the Plan and Confirmation Order**.  The Plan and the Confirmation Order may be obtained: (a) via download from the Bankruptcy Court's website at ecf.cacb.uscourts.gov for registered users of the PACER and/or CM/ECF systems; (b) via download from https://cases.omniagentsolutions.com/home?clientId=3675; or (c) by written request to:

<div align="center">

The Litigation Practice Group P.C.
c/o Omni Agent Solutions
5955 De Soto Ave., Suite 100
Woodland Hills, CA 91367

</div>

DATED: _____, 2024          MARSHACK HAYS WOOD LLP


                               By: _____
                                   D. EDWARD HAYS
                                   LAILA MASUD
                                   General Counsel for Chapter 11 Trustee,
                                   RICHARD A. MARSHACK

DATED: _____, 2024          FOX ROTHSCHILD LLP


                               By: _____
                                   KEITH OWENS
                                   NICHOLAS KOFFROTH
                                   Attorneys for the Official Committee of
                                   Unsecured Creditors

160862004.1

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 10250 Constellation Boulevard, Suite 900, Los Angeles, CA 90067.

A true and correct copy of the foregoing documents entitled: MEMORANDUM OF LAW IN SUPPORT OF CONFIRMATION OF MODIFIED FIRST AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION (DATED JUNE 14, 2024); DECLARATIONS OF RICHARD A. MARSHACK AND CHAD KURTZ IN SUPPORT THEREOF on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.      TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On 8/01/2024, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Bradford Barnhardt    bbarnhardt@marshackhays.com, bbarnhardt@ecf.courtdrive.com,alinares@ecf.courtdrive.com
- Eric Bensamochan    eric@eblawfirm.us, G63723@notify.cincompass.com
- Michael Jay Berger    michael.berger@bankruptcypower.com, yathida.nipha@bankruptcypower.com;michael.berger@ecf.inforuptcy.com
- Ethan J Birnberg    birnberg@portersimon.com, reich@portersimon.com
- Peter W Bowie    peter.bowie@dinsmore.com, caron.burke@dinsmore.com
- Ronald K Brown    ron@rkbrownlaw.com
- Christopher Celentino    christopher.celentino@dinsmore.com, caron.burke@dinsmore.com
- Shawn M Christianson    cmcintire@buchalter.com, schristianson@buchalter.com
- Randall Baldwin Clark    rbc@randallbclark.com
- Leslie A Cohen    leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com;clare@lesliecohenlaw.com
- Michael W Davis    mdavis@dtolaw.com, ygodson@dtolaw.com
- Anthony Paul Diehl    anthony@apdlaw.net, Diehl.AnthonyB112492@notify.bestcase.com,ecf@apdlaw.net
- Jenny L Doling    jd@jdl.law, dolingjr92080@notify.bestcase.com;15994@notices.nextchapterbk.com;jdoling@jubileebk.net
- Daniel A Edelman    dedelman@edcombs.com, courtecl@edcombs.com
- Meredith Fahn    fahn@sbcglobal.net
- William P Fennell    william.fennell@fennelllaw.com, luralene.schultz@fennelllaw.com;wpf@ecf.courtdrive.com;hala.hammi@fennelllaw.com;naomi.c walinski@fennelllaw.com;samantha.larimer@fennelllaw.com
- Alan W Forsley    alan.forsley@flpllp.com, awf@fkllawfirm.com,awf@fl-lawyers.net,addy@flpllp.com
- Marc C Forsythe    mforsythe@goeforlaw.com, mforsythe@goeforlaw.com;dcyrankowski@goeforlaw.com
- Jeremy Freedman    jeremy.freedman@dinsmore.com, nicolette.murphy@dinsmore.com
- Eric Gassman    erg@gassmanlawgroup.com, gassman.ericb112993@notify.bestcase.com
- Christopher Ghio    christopher.ghio@dinsmore.com, nicolette.murphy@dinsmore.com;angelica.urena@dinsmore.com;deamira.romo@dinsmore.com
- Amy Lynn Ginsburg    efilings@ginsburglawgroup.com
- Eric D Goldberg    eric.goldberg@dlapiper.com, eric-goldberg-1103@ecf.pacerpro.com
- Jeffrey I Golden    jgolden@go2.law, kadele@ecf.courtdrive.com;cbmeeker@gmail.com;lbracken@wgllp.com;dfitzgerald@go2.law;gol den.jeffreyi.b117954@notify.bestcase.com

- Richard H Golubow    rgolubow@wghlawyers.com,
  jmartinez@wghlawyers.com;svillegas@wghlawyers.com
- Mark Mark Good    mark@markgood.com
- David M Goodrich    dgoodrich@go2.law,
  kadele@go2.law;dfitzgerald@go2.law;wggllp@ecf.courtdrive.com
- D Edward Hays    ehays@marshackhays.com,
  ehays@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@ecf.courtdrive.com
- Alan Craig Hochheiser    ahochheiser@mauricewutscher.com, arodriguez@mauricewutscher.com
- Garrick A Hollander    ghollander@wghlawyers.com,
  jmartinez@wghlawyers.com;svillegas@wghlawyers.com
- Brian L Holman    b.holman@musickpeeler.com
- Richard L. Hyde    rhyde@awglaw.com
- Peter L Isola    pisola@hinshawlaw.com, rmojica@hinshawlaw.com,iking@hinshawlaw.com
- Razmig Izakelian    razmigizakelian@quinnemanuel.com
- Sara Johnston    sara.johnston@dinsmore.com
- Sweeney Kelly    kelly@ksgklaw.com
- Joon M Khang    joon@khanglaw.com
- Ira David Kharasch    ikharasch@pszjlaw.com
- Meredith King    mking@fsl.law, ssanchez@fsl.law;jwilson@fsl.law
- Nicholas A Koffroth    nkoffroth@foxrothschild.com, khoang@foxrothschild.com
- David S Kupetz    David.Kupetz@lockelord.com, mylene.ruiz@lockelord.com
- Christopher J Langley    chris@slclawoffice.com,
  langleycr75251@notify.bestcase.com;ecf123@casedriver.com;john@slclawoffice.com
- Kelli Ann Lee    Kelli.lee@dinsmore.com, kristy.allen@dinsmore.com
- Matthew A Lesnick    matt@lesnickprince.com,
  matt@ecf.inforuptcy.com;jmack@lesnickprince.com
- Daniel A Lev    daniel.lev@gmlaw.com, cheryl.caldwell@gmlaw.com;dlev@ecf.courtdrive.com
- Britteny Leyva    bleyva@mayerbrown.com,
  2396393420@filings.docketbird.com;KAWhite@mayerbrown.com;ladocket@mayerbrown.com
- Marc A Lieberman    marc.lieberman@flpllp.com, safa.saleem@flpllp.com,addy@flpllp.com
- Michael D Lieberman    mlieberman@lipsonneilson.com
- Yosina M Lissebeck    Yosina.Lissebeck@Dinsmore.com, caron.burke@dinsmore.com
- Mitchell B Ludwig    mbl@kpclegal.com, kad@kpclegal.com
- Daniel S March    marchlawoffice@gmail.com, marchdr94019@notify.bestcase.com
- Kathleen P March    kmarch@bkylawfirm.com, kmarch3@sbcglobal.net,kmarch@sbcglobal.net
- Mark J Markus    bklawr@bklaw.com,
  markjmarkus@gmail.com;markus.markj.r112926@notify.bestcase.com
- Richard A Marshack (TR)    pkraus@marshackhays.com, ecf.alert+Marshack@titlexi.com
- Laila Masud    lmasud@marshackhays.com,
  lmasud@ecf.courtdrive.com;lbuchanan@marshackhays.com;alinares@ecf.courtdrive.com
- Sarah S. Mattingly    sarah.mattingly@dinsmore.com
- William McCormick    Bill.McCormick@ag.tn.gov
- Kenneth Misken    Kenneth.M.Misken@usdoj.gov
- Byron Z Moldo    bmoldo@ecjlaw.com, aantonio@ecjlaw.com,dperez@ecjlaw.com
- Glenn D. Moses    gmoses@venable.com,
  cascavone@venable.com;ipmalcolm@venable.com;jadelgado@venable.com
- Jamie D Mottola    Jamie.Mottola@dinsmore.com, jhanawalt@ecf.inforuptcy.com
- Alan I Nahmias    anahmias@mbn.law, jdale@mbn.law
- Victoria Newmark    vnewmark@pszjlaw.com
- Jacob Newsum-Bothamley    jacob.bothamley@dinsmore.com,
  angelica.urena@dinsmore.com;deamira.romo@dinsmore.com
- Queenie K Ng    queenie.k.ng@usdoj.gov
- Israel Orozco    israel@iolawcorp.com

- Keith C Owens    kowens@foxrothschild.com, khoang@foxrothschild.com
- Lisa Patel    lpatel@lesnickprince.com, jmack@lesnickprince.com;jnavarro@lesnickprince.com
- Michael R Pinkston    rpinkston@seyfarth.com, jmcdermott@seyfarth.com,sfocalendar@seyfarth.com,5314522420@filings.docketbird.com,bankruptcydocket@seyfarth.com
- Douglas A Plazak    dplazak@rhlaw.com
- Tyler Powell    tyler.powell@dinsmore.com, jennifer.pitcock@dinsmore.com;rosetta.mitchell@dinsmore.com
- Daniel H Reiss    dhr@lnbyg.com, dhr@ecf.inforuptcy.com
- Ronald N Richards    ron@ronaldrichards.com, 7206828420@filings.docketbird.com
- Vanessa Rodriguez    vanessa.rodriguez@dinsmore.com, angelica.urena@dinsmore.com
- Kevin Alan Rogers    krogers@wellsmar.com
- Gregory M Salvato    gsalvato@salvatoboufadel.com, calendar@salvatolawoffices.com;jboufadel@salvatoboufadel.com;gsalvato@ecf.inforuptcy.com
- Olivia Scott    olivia.scott3@bclplaw.com
- Jonathan Serrano    jonathan.serrano@dinsmore.com
- Maureen J Shanahan    Mstotaro@aol.com
- Paul R Shankman    PShankman@fortislaw.com, info@fortislaw.com
- Zev Shechtman    Zev.Shechtman@saul.com, zshechtman@ecf.inforuptcy.com;easter.santamaria@saul.com
- Jeffrey M Singletary    jsingletary@swlaw.com, rmckay@swlaw.com
- Leslie Skorheim    leslie.skorheim@usdoj.gov
- Adam D Stein-Sapir    info@pfllc.com
- Howard Steinberg    steinbergh@gtlaw.com, pearsallt@gtlaw.com;NEF-BK@gtlaw.com;howard-steinberg-6096@ecf.pacerpro.com
- Andrew Still    astill@swlaw.com, kcollins@swlaw.com
- Michael R Totaro    Ocbkatty@aol.com
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov
- William J Wall    wwall@wall-law.com
- Sharon Z. Weiss    sharon.weiss@bclplaw.com, raul.morales@bclplaw.com,REC_KM_ECF_SMO@bclplaw.com
- Johnny White    JWhite@wrslawyers.com, jlee@wrslawyers.com
- Reina Zepeda    rzepeda@omniagnt.com

**2.    SERVED BY UNITED STATES MAIL**: On 6/14/2024, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows.

Debtor
The Litigation Practice Group P.C.
17542 17th St., Suite 100
Tustin, CA 92780

<p align="center">**See attached for additional parties**</p>

**3.    SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on 8/01/2024, I served the following persons and/or entities by personal delivery, mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

The Honorable Scott C. Clarkson
United States Bankruptcy Court, Central District of California

1  411 West Fourth Street, Suite 5130 / Courtroom 5C
   Santa Ana, CA 92701-4593
2  I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

3  ___8/01/2024_____Kimberly Hoang_____    ___/s/ Kimberly Hoang____
4      Date                        Printed Name                            Signature

5

6

7

8              **Additional Parties Served by U.S. Mail**

9  **Creditors who have the 20 largest unsecured claims**

10  Debt Validation Fund II, LLC
11  5075 Lower Valley Road,
    Atglen, PA 19310

12  MC DVI Fund 1, LLC; MC
13  DVI Fund 2, LLC
    598 Cottonwood Dr.,
14  Glenview, IL 60026

15  Validation Partners LLC
    1300 Sawgrass Pkwy, Ste. 110
16  Sunrise, FL 33323

17  Marich Bein LLC
    99 Wall Street, Ste 2669
18  New York, NY 10005

19  Business Centers of America
    1100 Sir Francis Drake Blvd,
20  Ste 1, Kentfield, CA 94904

21  JP Morgan Chase
    3 Park Plaza, Ste 900
22  Irvine, CA 92614

23  CA Franchise Tax Board
    PO Box 942857
24  Sacramento, CA 94257-0511

25  Outsource Accelerator Ltd
    City Marque Limited
26  Unit 8801-2 Bldg. 244-248
    Des Voeux Rd.
27  Central Hong Kong

28  Collaboration Advisors
    400 Dorla Court
    Zephyr Cove, NV 89448

1

2  Anthem Blue Cross
   PO Box 511300
3  Los Angeles, CA 90051-7855

4  Azevedo Solutions Groups, Inc.
   420 Adobe Canyon Rd.
5  Kenwood, CA 95452

6  Debt Pay Pro
   1900 E Golf Road, Suite 550
7  Schaumburg, IL 60173

8  Sharp Business Systems
   8670 Argent St
9  Santee, CA 92071

10 Tustin Executive Center
   1630 S Sunkist Steet, Ste A
11 Anaheim, CA 92806

12 Exela Enterprise Solutions
   2701 E. Grauwyler Road
13 Irving, TX 75061

14 Netsuite-Oracle
   2300 Oracle Way
15 Austin, TX 78741

16 Credit Reporting Service Inc
   548 Market St, Suite 72907
17 San Francisco, CA 94104-5401

18 Document Fulfillment Services
   2930 Ramona Ave #100
19 Sacramento, CA 95826

20 Executive Center LLC
   5960 South Jones Blvd
21 Las Vegas, NV 89118

22 LexisNexus
   15500 B Rockfield Blvd
23 Irvine, CA 92618

24
   **<u>Secured Creditors</u>**
25
   Diverse Capital LLC
26 323 Sunny Isles Blvd., Suite 503
   Sunny Isles, FL 33154
27
   City Capital NY
28 1135 Kane Concourse
   Bay Harbour Islands, FL 33154