Kathleen P. March, Esq., (CA SBN 80366)
**THE BANKRUPTCY LAW FIRM, PC**
10524 W. Pico Blvd, Suite 212, LA, CA 90064
Phone: 310-559-9224; Fax: 310-559-9133
Email: kmarch@BKYLAWFIRM.com
*Attorneys for Greyson Law Center, PC*
*Han Trinh & Jayde Trinh on this Objection*

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA—SANTA ANA DIV.

| | |
|---|---|
| In re | Bankruptcy Case No. 8:23-bk-10571-SC |
| THE LITIGATION PRACTICE GROUP, P.C., | Chapter 11 |
| Debtor. | **<u>OBJECTION</u> OF *GREYSON LAW CENTER PC, JAYDE TRINH & HAN TRINH,* TO TRUSTEE-CREDITOR COMMITTEES' PROPOSED MODIFIED FIRST AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION [DKT.1344 FILED 6/14/24] BEING CONFIRMED,  AS INFEASIBLE, AND BECAUSE MULTIPLE PROVISIONS ARE IMPROPER; THIS <u>OBJECTION</u> ALSO POINTS OUT DEFECTS IN TRUSTEE-CREDITOR COMMITTEE'S CONFIRMATION BRIEF [DKT.1481, FILED 8/1/24]** |
| | <u>Hearing on Trustee-Creditors Committee proposed Plan [dkt.1344 filed 6/14/24] is set for:</u> |
| | Date:  August 29, 2024 |
| | Time:  10:00am |
| | Place:  Courtroom 5C of Bankruptcy Judge Scott Clarkson, 411 West Fourth Street, Santa Ana, CA 92701-4593 |
| | Hearing to be held by Zoom.Gov, with accessibility information to be provided by the Court in its tentative ruling prior to the hearing |

1
2

## TO CHAPTER 11 TRUSTEE RICHARD MARSHACK, TO

3

## CREDITORS COMMITTEE, TO THE OFFICE OF THE UNITED STATES

4

## TRUSTEE, TO DEBTOR LITIGATION PRACTICE GROUP, PC ("LPG"), TO

5
6

## ALL OTHER PARTIES IN INTEREST, AND TO COUNSEL OF RECORD

7

## FOR ALL OF THESE PARTIES:

8

     Greyson Law Center PC, Jayde Trinh & Han Trinh—each of which filed timely

9
10

11 USC §503(b)(1)(A) Motions for allowance and payment of administrative

11

expenses (plus Han and Jayde filed timely prepetition Proofs of Claims)—object, **as**

12

**discussed below**, to specific provisions in the Modified First Amended Joint Chapter

13
14

11 Plan of Liquidation [dkt.1344 filed 6/14/24] (referred to as "proposed Plan"

15

hereinafter) of Trustee-Creditors Committee, which prevent the proposed Plan from

16

being confirmed, unless each revision stated in this Objection is made to the proposed

17
18

Plan, because the objected-to provisions make said proposed Plan **nonconfirmable on**

19

**its face,** for violating specific sections of the Bankruptcy Code, and for violating

20

controlling case law.

21

Dated:  August 7, 2024     THE BANKRUPTCY LAW FIRM, PC

22
                    ____/s/ Kathleen P. March_____
23
                    By Kathleen P. March, Esq., counsel for
24
                    Greyson Law Center PC, Han Trinh & Jayde Trinh

25
26
27
28

# <u>TABLE OF CONTENTS</u>

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

I.    Brief [Dkt.1481, Filed 8/1/24] of Trustee-Creditors Committee, in Favor of Confirmation of Proposed Plan [Dkt.1344], Fails to Address (and Couldn't Justify) the Fatal Errors Briefed in This Objection to Confirmation....................1

II.    The Proposed Plan, and Confirmation Brief, are Both Fatally Defective, for Failure to "Do the Math",  Comparing Dollar Amount of Items Which 11 USC §1129(a)(9) Requires to be Paid on Effective Date of Plan, To Cash on Hand; Neither Does the Math, Because Cash on Hand is Far Short of Dollar Amount Which Must be Paid on Effective Date, Making Plan Nonconfirmable...............2

III.    The Plan Cannot Properly Be Confirmed, Unless It is Revised to Require That Plan, and The Liquidating Trust, <u>Reserve</u> (Aka Set Aside in a <u>Separate Escrow Account</u>, Not to Be Distributed to Anyone Else, Money Sufficient to Pay The <u>$6,857,986</u> Sought by Timely Filed Administrative Expense Motions, as to Which Trustee Has Filed Oppositions, and That Have <u>Not</u> Been Granted (Allowed) Before the Plan Confirmation Hearing, But Which May Be Granted (Allowed) after The Plan Confirmation Hearing, Either By This Court, or on Appeal.................................................................................................................7

    A. Wording is Illusory and Fatally Vague..........................................9

    B. Plan Will Default on Paying Disputed Administrative Claims That Are Later Allowed, Unless Plan Is Revised to Require <u>Reserving</u>, in an Escrow Account, Money Equal to the Amount of All Disputed Administrative Claims........................................................................................10

1
2
3
4

    C. Motions For Allowance and Payment of Administrative Expenses Will No Longer Be "Disputed", If They Have Been Granted (aka Allowed) Before Confirmation; or Plan Confirmation Hearing Can be Continued, Until Those Motions are Ruled On....................................................................................12

5
6
7

IV.   Proposed Plan is So Obviously Infeasible, Due to the Over 47 Million Dollars of Secured Claims, that Plan is in Bad Faith.......................................................12

8
9
10

V.   This Court Must Properly <u>Deny Confirmation</u> of The Plan, Unless the <u>Exculpation Language</u> is Omitted from The Plan................................................13

11
12
13
14

    A. The Creditors Committee, The Office of US Trustee, and Trustee Marshack, <u>Should All Investigate</u> Why Dinsmore & Shohl LLP Did Not Give the Highly Relevant Negative Information About Russell Squires to This Court..............16

15
16
17
18
19
20

VI.   This Court Should <u>Deny Confirmation</u> of The Plan Unless the Provision in the Plan that "The Liquidating Trustee Shall Be Exempt from Giving Any Bond or Other Security In Any Jurisdiction", is Deleted, and is Replaced with a Provision Requiring the Liquidating Trustee to Post a Bond in a Dollar Amount Sufficient to Protect Claimants, If The Money to Pay Claimants "Goes Missing".............20

21
22
23
24

VII.   For All Reasons Briefed Herein, the Proposed Plan is Not Confirmable, for Violating the 11 USC §1129(a)(3) Requirement that a Plan Must be Proposed in <u>Good Faith</u>...........................................................................................22

25
26
27
28

VIII.   The <u>Liquidating Trust Should Be Deleted</u>:  There is No Need to Have a Liquidating Trust, a Liquidating Plan Can be Performed by a Plan Disbursing Agent, without Needing a Liquidating Trust; Contrary to Serving Any Beneficial

**OBJECTION OF GREYSON LAW CENTER PC, JAYDE TRINH & HAN TRINH, TO TRUSTEE-CREDITOR COMMITTEE'S PROPOSED MODIFIED FIRST AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION [DKT.1273 FILED 6/3/24] BEING CONFIRME; THIS OBJECTION ALSO POINTS OUT DEFECTS IN TRUSTEE-CREDITOR COMMITTEE'S CONFIRMATION BRIEF [DKT.1481, FILED 8/1/24]**

iv

Purpose for Claimants in the LPG Bankruptcy Case, the Liquidating Trust is
Detrimental, for Multiple Reasons.......................................................................23

IX.    Conclusion..........................................................................................................27

Declaration of Kathleen P. March with Exhibits.............................................30

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>TABLE OF AUTHORITIES</u>

*Cases*

*Harrington v. Purdue Pharma, LP ("Purdue"),*
 603 US___, 144 S.Ct. 2071 (6/27/24)......................................................14-15, 20

*In re Winn-Dixie Stores, Inc.,*
 356 BR 239 (Bankr. MD Fla. 2006)....................................................................26


*Statutes*

11 USC §330.............................................................................................................26

11 USC §503(b)(1).......................................................1, 2-4, 7, 10, 18, 29

11 USC §507(a)(2)........................................................................................2-3

11 USC §1123(b)(6)...........................................................................2, 14

11 USC §1129(a)(3).......................................................................22, 28

11 USC §1129(a)(4)........................................................................8, 26

11 USC §1129(a)(9)..........................................2-5, 8, 11, 22, 27-28

**OBJECTION OF GREYSON LAW CENTER PC, HAN TRINH & JAYDE TRINH TO CONFIRMATION OF TRUSTEE-CREDITOR COMMITTEE'S PROPOSED PLAN [DKT.1344]; THIS OBJECTION ALSO POINTS OUT DEFECTS IN TRUSTEE-CREDITOR COMMITTEE's PLAN CONFIRMATION BRIEF [DKT.1481]**

**I.     BRIEF [DKT.1481, FILED 8/1/24] OF TRUSTEE-CREDITOR COMMITTEE,  IN FAVOR OF CONFIRMATION OF PROPOSED PLAN [DKT.1344],  FAILS TO ADDRESS (AND COULDN'T JUSTIFY) THE FATAL ERRORS BRIEFED IN THIS OBJECTION TO CONFIRMATION**

Greyson Law Center PC, Jayde Trinh & Han Trinh—each of which filed timely 11 USC §503(b)(1)(A) Motions for allowance and payment of administrative expenses (plus Han and Jayde filed timely prepetition Proofs of Claims)—object, **as discussed below**, to specific provisions in the Modified First Amended Joint Chapter 11 Plan of Liquidation [dkt.1344 filed 6/14/24] (referred to as "proposed Plan" hereinafter) of Trustee-Creditors Committee, which prevent the proposed Plan from being confirmed, unless each revisions stated in this Objection is made to the proposed Plan, because the objected-to provisions make said proposed Plan **nonconfirmable on its face**, for violating specific sections of the Bankruptcy Code, and for violating controlling case law.

The Brief [dkt.1481] in favor of confirmation of the proposed Plan [dkt.1344], filed on 8/1/24 by Trustee-Creditor Committee, fails to address—much less justify— the fatal problems discussed in this Objection to confirmation.  The proposed Plan

[dkt.1344] cannot properly be confirmed unless each revision stated in this Objection is made to the proposed Plan [dkt.1344].

**II.    THE PROPOSED PLAN, AND CONFIRMATION BRIEF, ARE BOTH FATALLY DEFECTIVE, FOR FAILURE TO "DO THE MATH", COMPARING DOLLAR AMOUNT OF ITEMS WHICH 11 USC §1129(a)(9) REQURIES TO BE PAID ON EFFECTIVE DATE OF PLAN, TO CASH ON HAND; NEITHER DOES THE MATH, BECAUSE CASH ON HAND IS FAR SHORT OF DOLLAR AMOUNT WHICH MUST BE PAID ON EFFECTIVE DATE, MAKING PLAN NONCONFIRMABLE**

11 USC §1129(a)(9)(A) requires allowed administrative expense claims to be paid in full, in cash, on the effective date of the Plan, unless the claimant agrees otherwise, and Trustee/Creditor Committees brief does not allege any administrative expense claimant has agreed otherwise.  11 USC §1129(a)(9)(A) states:

> "(a)   The court shall confirm a plan only if all of the following requirements are met;
>
> …
> (9) Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the plan provides that—
>
> (A) with respect to a claim of a kind specified in section 507(a)(2) or 507(a)(3) of this title, on the effective date of the plan, the holder of such claim will receive on account of such claim cash equal to the allowed amount of such claim; ..."

Note that 11 USC §507(a)(2) claims, referred to in (9)(A), are:

> "2. Administrative expenses allowed under section 503(b) of this title…"

1  Han Trinh's, Jayde Trinh's and Greyson Law Center PC's Motions for Allowance and

2  Payment of Administrative Expenses—which are dkts.674, 675 and 676 respectively,

3
4  each timely filed 11/17/23—are each brought pursuant to 11 USC §503(b)(1)(A).

5        Both the proposed Plan, and Confirmation brief [dkt.1481, filed 8/1/24] are

6  **fatally defective** for failure to add up the dollar amount all the claims which 11 USC

7
8  §1129(a)(9) requires to be paid on the effective date of the Plan, and then compare

9  that dollar amount to the dollar amount of cash on hand, to prove that it is feasible for

10 the proposed Plan to pay all the payments required to be paid on the effective date of

11
12 the proposed Plan.

13       The proposed Plan, and the Confirmation Brief, **both fail to do the math**,

14 because the cash on hand, per MORs, is far less than cash needed to pay items which

15
16 11 USC §1129(a)(9) requires to be paid on the effective date of the Plan, if the

17 proposed Plan is confirmed.

18       Specifically, neither the proposed Plan, nor the Confirmation Brief add up the

19
20 dollar amounts required on effective date, to pay Trustee's fees, attorneys fees to

21 Trustee's 2 law firms of attorneys (Marshack Hays and Dinsmore & Shohl LLP),

22
23 attorneys fees to creditors committee counsel, plus allowed administrative claims, on

24 the effective date.  Note that proposed Plan, at p.6, lists categories of claims entitled to

25 11 USC §507(a)(2) priority treatment (aka 11 USC §503(b)(1)(A)), but fails to state

26
27 the **present dollar amounts** that will be sought by Trustee and his attorneys.  There

28

1   are NO dollar amounts listed on p.6 of proposed Plan.  Nor are any dollar amounts for

2   those items listed in the Confirmation Brief.

3
        As attorneys fees of Trustee's 2 firms of attorneys, and of creditors committee
4
5   attorneys, continue to increase, the likelihood of the Plan/Liquidating Trust having

6   cash on hand sufficient to pay all those items keeps decreasing.

7
        To the dollar amounts sought by Trustee and his professionals, next add the
8
9   dollar amounts of additional cash which must be paid, on the effective date, to the

10  many claimants which filed 11 USC §503(b)(1)(A)  Motions for allowance and

11
12  payment of administrative expenses, which have already been granted (allowed).  As

13  of 8/4/24, $735,807 of Motions for allowance and payment of administrative expenses

14  have already been allowed.  **Exhibit B** to March Declaration hereto itemizes the

15
16  **$735,897** of Motions for allowance and payment of administrative expenses that have

17  already been allowed, as of 8/4/24.

18
        The reason that the proposed Plan and the Confirmation Brief both fail to state
19
20  those dollar amounts, is **because there is NOT enough cash to even come close to**

21  **paying** the items 11 USC §1129(a)(9) requires to be paid on the effective date of the

22
    Plan.  The most recently filed MOR [dkt.1445, filed 7/22/24], at p.1 of part 1 of MOR,
23
24  states that it reports as of 6/30/24, and states on p.2 that "**postpetition payables**

25  **(excluding taxes)**" are **$9,865,519**.  That amount appears to be professional fees being

26  sought as of the 6/30/24 closing date for reporting in the dkt.1445 MOR. Professional

27
28  fees obviously have increased from then to 8/1/24 date of Trustee-Creditor

Committee's Brief, and will increase even more by the 8/29/24 confirmation hearing date. These MOR pages are attached as **Exhibit A** to Declaration of Kathleen P. March, Esq. hereto, downloaded from the LPG main bankruptcy case docket. It is a fatal lack of information that the proposed Plan, and the Confirmation Brief, each fail to disclose any of these dollar amounts—a failure intended to conceal proposed Plan's **infeasibility**.  (March Decl).

The dkt.1455 MOR, at p.2, reports that as of the end of the period reported on (which ended on 6/30/24), cash on hand was $10,915,324, plus there is a receivable of $6,216,946.  MOR dkt.1455-3, p.2, states this $6,216,946 receivable is:

> "The most recent status report received from Morning Law Group states that as of April 17, 2024, the Estate's estimated share of client receivables is $6,216,945.50 subject to any adjustments per the Purchase Agreement. Form 2 is attached reflecting any funds received by Trustee and source of funds. Trustee has not received a status report from MLG since April 17, 2024".

(All MOR pages referred to here are attached as **Exhibit A** to March Decl hereto). Trustee, Creditors Committee, and Morning Law are doing mediation regarding Morning Law's contention that Morning Law is owed considerable refunds of amount it contracted to pay for LPG client files, for alleged bad files.  (March Decl hereto, based on what LPG main case pacer docket, and pleadings filed therein show).

The proposed Plan, p.8-9 states priority tax required to be paid to IRS on effective date of Plan, per 11 USC §1129(a)(9)(C), is **$1,041,773**, and priority tax required to be paid to California Franchise Tax Board on effective date of Plan is **$174,416**.  Those priority taxes together total **$1,359,190**.

This $1,359,190 of priority taxes, required to be paid on the effective date to the taxing agencies, plus the "postpetition payables (excluding taxes)" shown in MOR [dkt.1445], reporting as of 6/30/24, establishes the proposed Plan is unconfirmable on its face.  There is not sufficient cash on hand to pay (1) the **$1,359,190** of priority tax on effective date of Plan; (2)  plus to pay the professional fees shown in that July 22, 2024 MOR as "**postpetition payables (excluding taxes)**" of **$9,865,519**, and which due to additional work done will have increased significantly, to present, because July 22, 2024 MOR reports as of 6/30/24, all of which are required to be paid on the effective date; (3)  plus to pay amounts owed, on effective date, to pay claimants which filed Motions for Allowance and Payment of Administrative Expenses, which have already been granted (allowed), which is **$735,897** allowed as of 8/4/24, but may increase before Plan confirmation hearing; (4) plus as discussed in **III.** immediately infra, cash must be reserved, to use to pay the **$6,857, 986** of Motions for allowance and payment of administrative expense claims, timely filed, but "disputed" by Trustee, when those Motions are granted (allowed) in future, in the amounts that are allowed.

To try to hide this fatal problem, the proposed Plan, and the Confirmation Brief both fail to do this math.  The Court should order the proposed Plan be revised:

(1) With Revised Plan to state that $8,865,519 dollar amounts owed trustee and his professionals at of 6/30/24 reporting date of dkt.1445 MOR, and to require that Trustee-Creditor Committee state the present, updated dollar amount, for those items, as of date Revision of Plan is filed;

(2) With Revised Plan to state the dollar amounts owed on 11 USC

§503(b)(1)(A) Motions for allowance and payment of administrative claims

that have been granted to date Plan is revised ($735,897 allowed as of

8/4/24, but may increase), because those amounts are also required to be

paid on the effective date of the Plan; and

(3) To state the dollar amounts owed on 11 USC §503(b)(1)(A) Motions for

allowance and payment of administrative claims that Trustee has filed

Oppositions to, but which which may be granted (allowed) in future by this

Court or on appeal, and which will be required to be paid in cash the

amounts allowed, when allowed.  As discussed at V. infra, this Court should

order the cash equal to the amounts those Motions seek to be reserved (aka

escrowed), and be held, to pay the amounts allowed cash, when allowed.

When this Court requires the proposed Plan and Confirmation Brief to be

revised to state those dollar amounts, it will be obvious that the proposed Plan is not

confirmable, **because there is not enough money to pay things that must be paid**

**on the effective date of the plan**, and neither the proposed Plan, nor the Confirmation

Brief say anyone has agreed to not being paid on effective date.

**III.    THE PLAN CANNOT PROPERLY BE CONFIRMED, UNLESS IT IS
REVISED TO REQUIRE THAT THE PLAN, AND THE LIQUIDATING
TRUST, <u>RESERVE</u> (AKA SET ASIDE IN A <u>SEPARATE ESCROW
ACCOUNT,</u>  NOT BE DISTRIBUTED TO ANYONE ELSE) MONEY
SUFFICIENT TO PAY THE <u>$6,857,986</u> SOUGHT BY TIMELY FILED**

**ADMINISTRATIVE EXPENSE MOTIONS, AS TO WHICH TRUSTEE HAS FILED OPPOSITIONS, AND THAT HAVE <u>NOT</u> BEEN GRANTED (ALLOWED) BEFORE THE PLAN CONFIRMATION HEARING, BUT WHICH MAY BE GRANTED (ALLOWED) AFTER THE PLAN CONFIRMATION HEARING, EITHER BY THIS COURT, OR ON APPEAL**

As briefed in **II**. supra, pursuant to 11 USC §1129(a)(9) the proposed Plan [dkt.1344] cannot be approved, unless there is cash on hand to pay all allowed administrative claims on the effective date of the Plan, or as soon as allowed.

That includes there must be cash to pay the total of Trustee fees, and fees to trustee's 2 firms of attorneys, fees to trustee's accountants, and all other trustee professionals, which have already been allowed, as of effective date, or for which fee applications will be filed, and for which payment in cash will be required, as soon as allowed. 11 USC §1129(a)(4) requires Court approval of all such fees.  Cash to pay those expected final amounts must be reserved (escrowed) to have to pay those items, or the Plan would default in paying such fees as soon as the Court allows them.

In addition, the proposed Plan cannot properly be confirmed, **<u>unless it is revised to require</u>** that the **<u>$6,857,986</u>** sought in Motions for Allowance and Payment of Administrative Expenses, if not yet allowed as of Plan Confirmation hearing, be **<u>reserved</u>** (aka put in an escrow account, and not be distributed to anyone else, to be held to be used to pay disputed claims which are later allowed, as soon as disputed claims are allowed), so that there will be money to pay administrative claims in full, as soon as administrative claims are allowed, after the Plan is confirmed.

March Declaration hereto itemizes that $6,857,986 amount.

The proposed Plan, at p.40, Item I. 1, states the Liquidating Trustee can object to

any and all claims, and states a p.40 Item I. 2 that if any part of a claim is disputed

NOTHING will be paid on the claim, until such disputed claim becomes an allowed

claim:

> " 2. **No Distribution Pending Allowance of Claims**.
> Notwithstanding any other provision of this Plan, if any portion of a Claim is a
> Disputed Claim**, no payment or distribution** provided under this Plan shall be
> made on account of such Disputed Claim unless and **until such Disputed Claim
> becomes an Allowed Claim.**

But p.40 of proposed Plan, lines 2-10, which is one of the provisions under IV.

at I. 3. (Means of Effectuating the Plan), states:

> "3. **Distributions Upon Allowance of Disputed Claims**.
> The Holder of a **Disputed Claim that becomes an Allowed Claim shall
> receive distribution(s) in Cash**, subject to the terms of this Plan and the
> Liquidating Trust Agreement. Such distributions shall be made in accordance
> with this Plan based upon the **distributions that would have been made to
> such Holder under this Plan if the Disputed Claim had been an Allowed
> Claim on or prior to the  Effective Date**. No Holder of a Disputed Claim shall
> have any claim against the Liquidating Trust Assets with respect to such
> Disputed Claim until such Disputed Claim becomes an Allowed Claim, and no
> Holder of a Disputed Claim shall have any right to interest on such Disputed
> Claim unless otherwise provided in the Plan."

**A. Wording is Illusory and Fatally Vague**:

The just quoted Plan provision, IV. I. 3., requires the Plan/Liqudating Trustee to

pay Disputed administrative claims that become allowed, after the Plan is confirmed,

in cash, "based on the distributions that would have been made to such Holder under this Plan".

However, that wording in IV. I. 3. **does NOT say when (if ever)**, such cash payments will be paid by the Plan/Liquidating Trust to the administrative claim that was disputed, but thereafter is allowed.  That defect makes the wording in 3. **illusory** and **fatally vague**.

The Court must properly order that the wording in IV. I. 3. be revised to state that the Plan/Liquidating Trust "shall pay the allowed amount of a disputed administrative claim, in cash, **as soon as that administrative claim is allowed**".

**B. Plan will Default on Paying Disputed Administrative Claims that are Later Allowed, Unless Plan is Revised to Require Reserving, in an Escrow Account, Money Equal to the Amount of All Disputed Administrative Claims**

As soon as disputed administrative claims are allowed, the Plan will default on paying the amounts allowed, unless the Court requires the proposed Plan to be **amended** to require that the money that will be needed to pay disputed administrative claims, in the amounts thereafter **allowed**, is **reserved** (aka put in a separate escrow account, only to be used to pay disputed administrative claims that are later allowed, as soon as disputed claims are allowed).

Unless the proposed Plan is revised to order that Plan/Liquidating Trust **reserve** (aka escrow), before confirmation, sufficient money to pay the **full amounts** of all disputed 11 USC §503(b)(1)(A) Motions for allowance and payment of administrative

expenses, the **proposed Plan is not confirmable—for violation of 11 USC**

**§1129(a)(9)(A)**—because if the disputed administrative claims are allowed after

confirmation (by this Court, or on appeal), there will not be sufficient cash on hand to

pay those administrative claims in full, as soon as those claims are allowed, and the

Plan will default.

Provision 2.9  in the Liquidating Trust Agreement is titled "Establishment of

Reserves" (Liquidating Trust Agreement is attached at pacer page 76 et seq. of Plan).

Though provision 2.9 is titled Establishment of Reserves, that provision is **illusory**,

because everything in in it worded "may", not "shall", so provision 2.9 does not

require the Liquidation Trustee to reserve any amounts, or to distribute any amounts,

whatsoever:

> **"2.9 Establishment of Reserves**
>
> The Liquidation Trustee **may** maintain, in accordance with the Liquidation
> Trustee's powers and responsibilities under the Plan and this Agreement, a
> Disputed Claims Reserve. The Liquidation Trustee **may**, in his reasonable
> discretion, in consultation with the Post-Confirmation Committee, distribute
> such amounts (net of any expenses, including any taxes relating thereto), as
> provided herein, as Disputed Claims are resolved pursuant to the Plan, and such
> amounts **may** be distributed on account of such Disputed Claims as if such
> Disputed Claims were Allowed Claims as of the Effective Date."

//

**C. Motions for allowance and payment of Administrative Expenses Will No Longer be "Disputed", if they have been Granted (aka allowed) before Confirmation; or Plan Confirmation Hearing can be Continued, until those Motions are Ruled On**

The fewer administrative expense claims there are disputed, at time plan is confirmed, the smaller the problem will be, of reserving amounts sought by disputed administrative claims.  Ruling on disputed administrative expense claims before the 8/29/24 confirmation hearing date is one solution to being able to determine the dollar amount of cash there must be on hand, before the proposed Plan can be confirmed.

Another solution is to continue the plan confirmation hearing on the proposed Plan, until the 6 outstanding (timely filed, but opposed by Trustee) Motions for allowance and payment of administrative claims are decided

**IV.   PROPOSED PLAN IS SO OBVIOUSLY INFEASIBLE, DUE TO THE OVER 47 MILLION DOLLARS OF SECURED CLAIMS, THAT PLAN IS IN BAD FAITH**

In addition to infeasibility briefed in **II** and **III** immediately supra, the proposed Plan is obviously infeasible due to the over $47,000,000 of secured claims, listed at classes 1A-1F, which Plan confirmation Brief ignores.  Those claims state the creditor can elect to be given its collateral, or to be paid in cash plus interest.  However, the bankruptcy estate no longer has most of these creditor's collateral, because the collateral for most of those creditors is LPG client files, which Trustee sold to Morning Law, and Morning Law no longer has most of those files, and would have no duty to

1 give those back to Trustee if Morning Law did have those.  Or the collateral is LPG

2 receivables, which LPG does not have either.  Thus, the only option would be for the

3

4 Plan/Liquidating Trust to pay over $47,000,000 million to those secured creditors, plus

5 interest.  The 7/22/24 MOR discussed supra shows there is no money to pay anything

6 like that, so little money that the Plan is proposed in bad faith, flunking 11 USC

7

8 §1129(a)(3), discussed infra.

9 **V.    THIS COURT MUST PROPERLY <u>DENY CONFIRMATION</u> OF THE**

10 **PLAN, UNLESS THE <u>EXCULPATION LANGUAGE</u> IS OMITTED**

11 **FROM THE PLAN**

12         In addition, the proposed Plan could not properly be confirmed unless Item 31,

13 the Exculpation and Indemnification Provision, is deleted.  That provision in the

14

15 proposed Chapter 11 plan, is at ¶IV(B)(31), at p.32-33 of Plan and states:

16

17         "31. **Liquidating Trustee and Post-Confirmation Oversight Committee's**

18         **<u>Exculpation, Indemnification</u>, Insurance and Liability Limitation**

19         The Liquidating Trustee, Post-Confirmation Oversight Committee, and each of
        their respective agents, employees, professionals, attorneys, accountants,
20        advisors and representatives retained by the Plan (collectively, "<u>Liquidating</u>
        <u>Trust Indemnified Parties</u>") **shall be deemed exculpated and indemnified and**
21        **held harmless in all respects by the Liquidating Trust and the Estate**, to the
22        fullest extent permitted by law, solely from the Liquidating Trust Assets for any
        losses, claims, amages, liabilities and expenses, including, without limitation,
23        reasonable attorneys' fees, disbursements and related expenses that the
24        Liquidating Trust Indemnified Parties may incur or to which the Liquidating
        Trust Indemnified Parties may become subject in connection with any action,
25        suit, proceeding or investigation brought or threatened against one or more of
26        the Liquidating Trust Indemnified Parties on account of the acts or omissions of

27

28

an Liquidating Trust Indemnified Party solely in its capacity as such; provided, however, that the Liquidating Trust shall not be liable to indemnify any Liquidating Trust Indemnified Party for any act or omission constituting bad faith, fraud or willful misconduct by such Liquidating Trust Indemnified Party. Notwithstanding any provision herein to the contrary, the Liquidating Trust Indemnified Parties shall be entitled to obtain advances from the Liquidating Trust to cover their reasonable expenses of defending themselves in any action brought against them as a result of the acts or omissions, actual or alleged, of a Liquidating Trust Indemnified Party in its capacity as such. The foregoing indemnity in respect of any Liquidating Trust Indemnified Party shall survive the termination of such Liquidating Trust Indemnified Party from the capacity for which it is indemnified.

The Liquidating Trustee may obtain, **at the expense of the Liquidating Trust and Estate commercially reasonable liability or other appropriate insurance with respect to the indemnification obligations of the Liquidating Trust Indemnified Parties**. On and after the Effective Date, the Liquidating Trustee shall be authorized to purchase D&O Liability Insurance Policies for the benefit of any Liquidating Trust Indemnified Party in the ordinary course of business." [bold/underline added for emphasis]

The recent US Supreme Court decision *Harrington v. Purdue Pharma, LP ("Purdue")*, 603 US___, 144 S.Ct. 2071 (6/27/24) holds (at 144 S.Ct. 2081-2087), that the Bankruptcy Code, specifically 11 USC §1123(b)(6), does NOT authorize a Chapter 11 plan to grant nonconsensual releases to non-debtor persons/entities.

All the persons/entities named in the foregoing exculpation and indemnification provision 31 are NON-debtor parties.  Consequently, the Plan violates 11 USC §1123, and violates *Purdue*, in stating that "To the fullest extent permitted by law" none of the many non-debtor parties named in the foregoing provision "shall have or incur liability".  The "fullest extent permitted by law" is ZERO percent, i.e., nonconsensual

1

2

releases of non-debtor persons/entities are not allowed by the Bankruptcy Code, or by

the US Supreme Court in *Purdue*.

3

4

In light of the US Supreme Court *Purdue* decision, this Court cannot confirm

5

the proposed Plan, unless the present "Exculpation" provision is removed.  Greyson,

6

Han Trinh and Jayde Trinh most certainly do NOT consent to any of the non-debtor

7

8

persons/entities listed in this Exculpation clause being released of liability. Consenting

9

means affirmatively consenting, not failing to file an Objection.

10

This exculpation clause is an invitation to the "exculpated" persons to

11

12

misbehave, because this exculpation clause, if left in the Plan, prevents them, **and**

13

**their attorneys**, from being liable for misbehavior.

14

15

Trustee Marshack, and his attorneys, being included in the list of people

16

"exculpated" is particularly wrong, because Trustees have statutory duties pursuant to

17

the Bankruptcy Code, and people, such as Trustee Marshack, apply to become

18

Trustees.  Trustees, and their attorneys, should be subject to all liability provided by

19

20

law, instead of this Exculpation clause narrowing/limiting/reducing their liability to

21

the "maximum extent permitted by law".

22

The limited Objection [dkt.1160, filed 5/1/24] of the Office of the US Trustee,

23

24

to this Exculpation clause, says:

25

"The Exculpation Clause Should Be Revised to Provide a Carve-Out for Fraud,
Willful Misconduct or Gross Negligence".

26

27

28

The US Trustee objection recognizes that the Exculpation Clause **as presently underline:written**, would allow Trustee Marshack, the Liquidating Trustee, and their attorneys, and employees and agents, etc. to **commit fraud, willful misconduct and/or gross negligence**, and still NOT be liable for doing any of those illegal things.

Giving people a free pass on committing misconduct only encourages them to commit misconduct.

**A. The Creditors Committee, the Office of US Trustee, and Trustee Marshack, Should All Investigate why Dinsmore & Shohl LLP did NOT give the Highly Relevant Negative Information about Russell Squires to this Court**

There is already a serious question in the LPG bankruptcy case (see briefing at VI., of Greyson's REPLY, with Declaration of Kathleen P. March, Esq. thereto [dkt.501 in 8:23-ap-01046-SC, filed 4/24/24]), regarding why Trustee Marshack's special counsel, Dinsmore & Shohl, LLP, **did not tell this Court** that Russell Squires had been accused of having recently misappropriated 5.5 million dollars from Validation Partners, and had not been cleared from that accusation.  Russell Squires was not a lawyer, but by using a moribund law firm, Morning Law, was determined by this Court to be the winning bidder to buy debtor LPG's clients files from the LPG bankruptcy estate in July 2023 (see briefing at VI., of Greyson's REPLY, with Declaration of Kathleen P. March, Esq. thereto [dkt.501 in 8:23-ap-01046-SC, filed 4/24/24] about this).  See March Decl hereto, which repeats this information, again under oath.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Dinsmore & Shohl, LLP had been given that information, by Wes Thomas, in a meeting Thomas had with Dinsmore attorneys.  Thomas had supplied Dinsmore firm with a lengthy written document regarding the unresolved allegation against Russell Squires, that Squires had recently misappropriated 5.5 million dollars from Validation Partners.  The undersigned counsel for Greyson/Han/Jayde also has a copy of that document, if the Dinsmore attorneys have "misplaced" the copy Wes Thomas gave the Dinsmore firm, in a meeting with Dinsmore firm attorneys.

Unresolved allegations that Russ Squires had misappropriated 5.5 million dollars from Validation Partners—if Dinsmore & Shohl, LLP had given that information to this Court—should certainly have weighed against this Court proclaiming Russell Squires (through Morning Law) as the winning bidder for the LPG bankruptcy estate's client files.

However, it appears that Dinsmore & Shohl LLP did NOT give that highly relevant information to this Court.  There should be an investigation into why Dinsmore & Shohl LLP did NOT give this highly relevant information to this Court, including investigation regarding the possibility that attorney Christopher Celentino, Esq., or someone else at Dinsmore & Shohl LLP received some past, present or future consideration/inducement from Russell Squires, or from some other person/entity, to withhold giving this Court that extremely important negative information about Russell Squires.

1
2
3
4
5
6
7
8
9
10
11
12

The need for investigation has become more and more pressing, as months pass, because Morning Law has reportedly lost most of its consumer clients that it purchased from the LPG bankruptcy estate, and will likely fail, with the result that Morning Law will NOT pay the money (estimated to be 40 million dollars) that Morning Law contracted to pay the LPG bankruptcy estate, as the winning bidder for LPG's client files.  Instead of performing, pleadings filed in the LPG bankruptcy case main docket show that Morning Law, at present, is demanding that Trustee/LPG bankruptcy estate pay back to Morning Law, some of the money that Morning Law has, to date, paid to Trustee/LPG bankruptcy estate.

13
14
15
16
17
18
19
20
21

Plus, the most recent Monthly Operating Report filed by Trustee Marshack [dkt.1445, filed 7/22/24], when compared to the immediately previous Monthly Operating Report [dkt.1359, filed 6/20/24] by Trustee, does **not** show that Morning Law is continuing to pay money to the LPG bankruptcy estate (money which was being put into an escrow account), to perform Morning Law's Purchase Contract with the LPG bankruptcy estate.  Instead the "accounts receivable" amount in both those MORs is the same, $6,219,946.

22
23
24
25
26
27
28

If Morning Law does not pay the LPG bankruptcy estate what Morning Law contracted to pay, there will almost certainly be zero money to pay general unsecured claims, and there may not be sufficient money to pay, in full, LPG 11 USC §503(b)(1) administrative claimants (which administrative claims include Trustee fees, attorneys fees sought by Trustee's 2 law firms (Marshack Hays and Dinsmore & Shohl), and

1    attorneys fees sought by creditors committee counsel, fees of CPA for LPG

2    bankruptcy estate, etc.) and include all Motions for allowance and payment of

3
4    administrative expense claims, including Greyson's (dkt.676), Han Trinh's (dkt.674)

5    and Jayde Trinh's (dkt.675) such Motions.

6        **The Court, Trustee Marshack, the Office of US Trustee, and the Creditors'**

7    **Committee, should all investigate WHY Dinsmore & Shohl LLP failed to give**

8
9    **this Court this highly relevant, unfavorable information about Russ Squires, who**

10   **is said to now be running Morning Law**.  Was Dinsmore attorney Christopher

11
12   Celentino, Esq. or someone else at Dinsmore & Shohl LLP promised or provided past,

13   present or future consideration to withhold this highly relevant, unfavorable

14   information about Russ Squires, from this Court?  That possibility should be

15
16   considered and investigated.  The general unsecured creditor body—whose interests

17   the Creditors Committee are supposed to protecting—will be the first to be paid zero,

18   when Morning Law fails to perform its Purchase Contract with Trustee/LPG
19
20   bankruptcy estate.

21       Particularly with the issues here raised, the Trustee-Creditors Committee

22   proposed Plan and Liquidating Trust  should NOT have the proposed Exculpation
23
24   clause, or any exculpation clause.  This Court should order stricken, before allowing

25   the proposed Plan to proceed any further.

26       The Disclosure Statement (Section III(C)(4)) quotes the Exculpation clause in
27
28   the proposed Plan (quoted supra), but is deficient for failing to explain to the reader

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

that the Plan's Exculpation Clause is so broad that it would excuse the named

persons—including Chapter 11 Trustee Marshack and his attorneys, and including

whoever is appointed as the Liquidating Trustee, and that person's attorneys, from

being liable if any of them **commit fraud, willful misconduct and/or gross**

**negligence**.

Even the Office of US Attorney objected that the Exculpation Clause should not

include releasing the non-debtors for those things.  Now, in light of *Purdue*, the plan

cannot be confirmed if it has ANY exculpation clause.

**VI.    THIS COURT SHOULD <u>DENY CONFIRMATION</u> OF THE PLAN
UNLESS THE PROVISION IN THE PLAN THAT "THE LIQUIDATING
TRUSTEE SHALL BE EXEMPT FROM GIVING ANY BOND OR
OTHER SECURITY IN ANY JURISDICTION", IS DELETED, AND IS
REPLACED WITH A PROVISION REQUIRING THE LIQUIDATING
TRUSTEE TO POST A BOND IN A DOLLAR AMOUNT SUFFICIENT
TO PROTECT CLAIMANTS, IF THE MONEY TO PAY CLAIMANTS
"GOES MISSING"**

All bankruptcy trustees, including Trustee Marshack, have been required to post

a bond, to be the Chapter 11 Trustee in the LPG bankruptcy case.  Trustee posted a

bond of over 20 million dollars.  The proposed Plan, p.1 bottom of page, states

Marshack will be the Liquidating Trustee:

> "The Committee has agreed that Richard A. Marshack shall serve as the
> Liquidating Trustee, subject to an Oversight Committee comprised of
> Committee members, as more particularly described in the Liquidating Trust
> Agreement."

It would make no sense that Marshack has been required to obtain and provide a  bond as chapter 11 Trustee, but that as soon as Marshack becomes the liquidating trustee, that Marshack takes possession of all the LPG bankruptcy estate assets, but **without** having to post a bond.

Yet the Plan at p.IV(B)(40), at p.36 of Plan, states no bond is required to be posted by the liquidating trustee:

> "40. **No Bond**
> Notwithstanding, any state law to the contrary, the Liquidating Trustee shall be exempt from giving any bond or other security in any jurisdiction."

The Court must properly require the "no bond" language to be deleted, and that the "no bond" language be replaced with language requiring that—before Liquidating Trustee takes possession of any assets of the LPG bankruptcy estate—the **Liquidating Trustee shall obtain a bond, in favor of all claimants in the LPG bankruptcy case,** that is not less than the value of the LPG bankruptcy estate assets that the Liquidating Trustee is receiving from the LPG bankruptcy estate.

Bonds are necessary and prudent because every now and then, people do take the money entrusted to them, and flee, or their employees or agents do so, or money is lost due to negligence, or failure of whatever institution is holding the money.  The proceedings against attorney Thomas Girardi, accused of stealing approximately 200 million dollars from his law firm's client trust account, is a recent reminder of this.  A plan which exculpates the Liquidating Trustee from liability, and which does NOT require the Liquidating Trustee to post a bond, **is an invitation to steal**.

## VII.  FOR ALL REASONS BRIEFED HEREIN, THE PROPOSED PLAN IS NOT CONFIRMABLE, FOR VIOLATING THE 11 USC §1129(a)(3) REQUIREMENT THAT A PLAN MUST BE PROPOSED IN <u>GOOD FAITH,</u>

Per 11 USC §1129(a)(3), a plan cannot be confirmed unless:

"(3)  The plan has been proposed in **<u>good faith</u>** and not by any means forbidden by law."

The proposed Plan (and Liquidating Trust) are NOT in good faith, FOR ALL REASONS BRIEFED herein, unless both are revised to: (1) delete exculpation clause, (2) require Liquidating Trustee to post a bond, and (3) require **<u>reserving (escrowing)</u>**, before confirmation, money sufficient to pay all disputed administrative claims, in cash, as soon as those disputed administrative claims are allowed.

Unless money sufficient to pay all disputed administrative claims is reserved, before the plan is confirmed, Plan provisions  2. and 3., quoted immediately supra, are simply a **<u>bad faith tactic</u>** to evade the requirement of 11 USC §1129(a)(9), (quoted in **II**. supra) which states a plan cannot be confirmed, unless the Plan proponent has sufficient cash to pay, on the effective date of the plan, cash equal to the allowed amount of such claim (except for administrative claims that agree to later payment, which is rare).

In addition, Plan provision IV. I. 2., quoted supra (the don't pay if disputed clause), is **<u>bad faith</u>**, because this provision would allow paying zero, on the Plan effective date, on a $1,000,000 administrative claim, by disputing $1 of that

$1,000,000 claim, or by disputing the whole $1,000,000 amount, but disputing the

whole $1,000,000 amount, without having any law or facts to justify disputing that

administrative claim.  Both those things are wrong.  This Court should require Plan

provision 2, quoted supra, to be amended to read that no payment or distribution shall

be made on the disputed portion of an administrative claim, until that disputed portion

becomes allowed, but that any undisputed portion of the claim shall be paid in cash on

the effective date of the Plan.

It would violate the rights of a claimant whose claim is disputed, for that

claimant to have to litigate the claimant's claim to get that claim allowed—in this

Court and possibly on appeal—only to discover that the money the liquidating trust

had, to pay that claim, had been paid out to someone else, while the claim was being

disputed, so there is nothing left to pay the disputed claim, once it is allowed.

## VIII.  THE <u>LIQUIDATING TRUST SHOULD BE DELETED</u>:  THERE IS NO NEED TO HAVE A LIQUIDATING TRUST, A LIQUIDATING PLAN CAN BE PERFORMED BY A PLAN DISBURSING AGENT, WITHOUT NEEDING A LIQUIDATING TRUST; CONTRARY TO SERVING ANY BENEFICIAL PURPOSE FOR CLAIMANTS IN THE LPG CASE, THE LIQUIDATING TRUST IS DETRIMENTAL,  FOR MULTIPLE REASONS

Having a Liquidating Trust is neither a requirement, nor a necessity, to having

and performing a liquidating plan.  All that is needed to perform a liquidating plan, is a

Plan Disbursing Agent (which could be Marshack, or could be someone else).   The

Court should order that the Liquidating Trust be deleted from the proposed Plan, and should order the proposed Plan be revised, to be a Plan performed by a Plan Disbursing Agent, without a Liquidating Trust.

**Contrary to being beneficial to claimants** of the LPG bankruptcy estate, the proposed Liquidating Trust is **detrimental** to claimants of the LPG bankruptcy estate, including because (1) having a Plan PLUS a Liquidating Trust is unnecessarily complicated, because all that is needed is a Plan, to be performed by a Plan Disbursing Agent; (2) the proposed Liquidating Trust adds an unnecessary layer of expense, and (3) the Liquidating Trust is error in specifying that awarding/paying fees to the Liquidating Trust, and to the Liquidating Trustee's attorneys and other professionals, will **no**t require applications to or approval/orders of the Bankruptcy Court.

The Court should require that Plan p.26, Item 9, and Liquidating Trust, p.23, Item 13.2, be deleted, because both say that NO Court approval is required to pay fees to  the Liquidating Trustee,  and to the Liquidating Trustee's attorneys and other professionals.  Specifically, Paragraph 9, on page 26 of the Modified First Amended Plan (PACER page 32) states:

> "9. Agents and Professionals
> Subject to the provisions of the Liquidating Trust Agreement, the Liquidating Trustee shall onsult with and retain attorneys, accountants, appraisers, or other parties deemed by the Liquidating Trustee to have qualifications necessary to assist in the proper administration of the Liquidating Trust. The Liquidating Trustee may pay the reasonable salaries, fees, and expenses of such persons, including contingency fees, out of the Liquidating Trust Assets in the ordinary course to the extent permitted in the Liquidating Trust Agreement."

1    In addition, Paragraph 13.2, on pages 32-33 of the Liquidating Trust (PACER pages

2    98-99) states:

3

4    "13.2 <u>Payment to Liquidation Trustee Professionals and Liquidation Trustee
Non- Professionals</u>

5

6        "(a) After the Effective Date, Liquidation Trustee Professionals and
Committee Professionals shall be required to submit to the Liquidation Trustee

7    and the Post- Confirmation Committee periodic invoices containing information
with sufficient detail to assess the reasonableness of the fees and charges. Such

8    information shall include a description of the work performed, who performed
such work, and if billing on an hourly basis, the hourly rate of each such person,

9    plus an itemized statement of expenses. The Liquidation Trustee shall pay those

10    invoices twenty-one (21) calendar days after an electronic copy of such invoices
is provided to the Liquidation Trustee and the Post-Confirmation Committee,

11    without Bankruptcy Court approval, unless the Liquidation Trustee or the Post-

12    Confirmation Committee objects in writing within fourteen (14) days after their
receipt of such invoices. If there is a dispute as to a part of an invoice, the

13    Liquidation Trustee shall pay the undisputed portion and the Bankruptcy Court

14    shall resolve any disputed amount.

15        "(b) After the Effective Date, Liquidation Trustee Non-Professionals
shall be required to submit to the Liquidation Trustee and the Post-

16    Confirmation Committee periodic invoices containing information with

17    sufficient detail to assess the reasonableness of the fees and charges. The
Liquidation Trustee shall pay those invoices twenty-one (21) calendar days

18    after a copy of such invoices is electronically provided to the Liquidation

19    Trustee and the Post-Confirmation Committee, without Bankruptcy Court
approval, unless the Liquidation Trustee or the Post-Confirmation Committee

20    objects in writing within fourteen (14) days after their receipt of such invoices.

21    If there is a dispute as to a part of an invoice, the Liquidation Trustee shall pay
the undisputed portion and the Bankruptcy Court shall resolve any disputed

22    amount.

23        "(c) All payments to Liquidation Trustee Professionals, Liquidation
Trustee Non-Professionals, and Committee Professionals shall be paid out of

24    the Liquidation Trust Assets including the Liquidation Trustee Funds.

25    Notwithstanding anything to the contrary herein, the Liquidation Trustee may
retain Liquidation Trustee Professionals on a contingent basis, to be paid out of

26    litigation recoveries, under such terms and conditions as the Liquidation Trustee

27    deems appropriate on terms and conditions deemed satisfactory by the Post-

28    Confirmation Committee."

These provisions to pay Liquidating Trustee, and to pay attorneys and other professionals, from LPG bankruptcy estate money (when the LPG bankruptcy estate money is turned over the Liquidating Trust), **without the Bankruptcy Court having any oversight or control over such payments**, constitute giving a blank check to the Liquidating Trustee to drain off whatever bankruptcy estate assets/funds Trustee Marshack turns over to himself as Liquidating Trustee,  to pay Liquidating Trustee and his professionals, potentially leaving NOTHING to pay claims the proposed Plan states are to be paid.  That is too risky for claimants.

The Bankruptcy Court, in *In re Winn-Dixie Stores, Inc*., 356 BR 239, 257-59 (Bankr. MD Fla. 2006), **declined** to allow post-confirmation payments to be made, to pay Indenture Trustee expenses, without there being a fee application to the Bankruptcy Court.  That Court held it was not enough oversight that the Indenture Trustee was to file detailed expense reports with the bankruptcy debtor.   The Court held:  "…the court finds it ill-advised and is unwilling to sign a blank check for the Indenture Trustee Expenses."  The Bankruptcy Court instead required the Indenture Trustee to file an Expense Application with the Court, served on parties in interest, and ruled that the Bankrjuptcy Court would hold a hearing to determine whether those expenses were reasonable.

11 USC §1129(a)(4), and 11 USC §330, require that trustees, and trustee's attorneys and other professionals, and creditor committee attorneys, all file and serve Fee Applications with the Bankruptcy Court, and get those Fee Applications granted,

1   before they can be paid any amounts from the bankruptcy estate.  The monies the

2   Liquidating Trustee proposes to pay to himself and his professionals—with no

3
    oversight of the Court or of anyone else—**is LPG bankruptcy estate money**, that is to
4

5   be transferred to the Liquidating Trust if the proposed Plan is confirmed.

6           The Court is entitled to require, and should require, that the Liquidating Trustee

7
8   and his professionals each file Fee Applications with the Court, and serve those on

9   parties in interest, and to require that the Court rule on those Fee Applications, before

10  the Liquidating Trustee can pay the money received from the LPG bankruptcy estate

11
12  out to the Liquidating Trustee and his professionals.  This is particularly necessary

13  because, as briefed in **II**. supra, the proposed Plan is already infeasible, because there

14  will not be enough cash to pay the things that 11 USC §1129(a)(9) requires paying on
15

16  the effective date of the Plan, and siphoning off some of that (already inadequate) cash

17  to pay Liquidating Trustee and his professionals, will make the Plan even more

18  infeasible.  (March Decl hereto).
19

20  ## IX.    CONCLUSION:

21           As briefed in II. supra, doing the math as to what dollar amounts must be paid

22  on effective date—which neither proposed Plan, nor Confirmation Brief does—proves

23  that the proposed Plan is NOT confirmable, because there is not enough cash on hand
24

25  to pay those things on the effective date, and neither the proposed Plan, nor the

26  Confirmation Brief, says anyone has agreed NOT to be paid on the effective date,

27  amounts which 11 USC §1129(a)(9) requires they be paid on the effective date.

28

---

As briefed in III. supra, the Plan is not confirmable unless it is revised to require that the Plan, and the liquidating trust, <u>reserve</u> (aka set aside in a <u>separate escrow account,</u> not to be distributed to anyone else, money sufficient to pay the <u>$6,857,986</u> sought by timely filed administrative expense motions, as to which Trustee has filed oppositions, and that have <u>not</u> been granted (allowed) before the plan confirmation hearing, but which may be granted (allowed) after the plan confirmation hearing, either by this court, or on appeal.  Making that revision will reveal even more obviously that the Plan is infeasible of being performed, for not enough cash to pay items that must be paid.

As briefed in IV, the 47 million dollars of secured claims make the Plan so infeasible that it is proposed in Bad Faith.

Even if there were enough money to pay everything which 11 USC §1129(a)(9) requires to be paid on the effective date—which is NOT the case—the proposed Plan is not confirmable unless the changes briefed at III-VII are made in the Plan, and in the Liquidating Trust.

As briefed in V. supra, the exculpation language fust be Omitted from the Plan and Liquidating Trust.

As briefed in VI. supra, the "no bond required" provision must be deleted and replace with requirement of posting bond.

As briefed in VII. supra, the Plan is not confirmable for violating the 11 USC §1129(A)(3) requirement that a plan must be proposed in <u>good faith.</u>

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

As briefed in VIII. supra, the Liquidating Trust should be deleted, as not needed, and as being detrimental to claimants, instead of beneficial to claimants.

The Court should deny confirmation of the present proposed Plan as infeasible for lack of cash to pay items that much be paid on the effective date of the Plan; and as regards 11 USC §503(b)(1)(A) Motions filed but not yet granted, for inability to **reserve** cash to have to pay those Motions, when granted, in the amounts granted (allowed).

Even if that fatal problem is ignored, all defects briefed herein would have to be fixed, in the Plan, which would require the Court to order Trustee-Creditors Committee to file a Second Amended Joint Chapter 11 Plan of Liquidation, containing all those revisions, served as the Court directs, to file an Confirmation Brief on the Revised Plan (that does the math to prove cash on hand needed to perform the plan, or to admit there is not sufficient cash) and the Court should set a  continued Plan Confirmation hearing to ensure that the revisions briefed  herein have all been made.

Dated: August 7, 2024                    THE BANKRUPTCY LAW FIRM, PC

                                         __/s/ Kathleen P. March_____
                                         By: Kathleen P. March, Esq
                                         *Attorneys for Greyson Law Center, PC*
                                         *Han Trinh & Jayde Trinh on this Objection*

1

## DECLARATION OF KATHLEEN P. MARCH

2

3

I, KATHLEEN P. MARCH, declare:

4

1.      I am an attorney in good standing, admitted to practice law in California

5

and New York.  I own and run The Bankruptcy Law Firm, PC, counsel to

6

7

administrative claimants Greyson Law Center PC, Han Trinh and Jayde Trinh.  For

8

each of these 3 clients, my firm, on 11/17/23, filed timely 11 USC §503(b)(1)(A)

9

Motions for Allowance and Payment of Administrative Expenses, in the LPG main

10

11

bankruptcy case, as follows:

12

a.      Han Trinh Motion [Dkt.674], amount $136,280.56 sought for 11

13

14

weeks of postpetition W-2 salary owed by LPG, plus for salary related

15

items.  Plus Han is owed $14,443 additional sought for items personally

16

owned by Han that Dinsmore firm seized in 6/2/23 Lockout, with no

17

18

authority to seize those items, then "lost" so never returned to Han. Total

19

sought is therefore $150,723.56.

20

b.      Phuong (Jayde) Trinh Motion [dkt.675], amount $114,825.14

21

22

sought for 11 weeks of postpetition W-2 salary owed by LPG, plus salary

23

related items.

24

c.      Greyson Law Center PC Motion [Dkt676], amount sought is

25

26

minimum of $2,000 per case where Greyson attorneys appeared for LPG

27

alter ego Phoenix, to defend Phoenix clients in state court suits,

28

multiplied by over 2,480 suits = minimum of $4,960,000,  plus an

additional $300,663 for negligent or intentional misconduct of Dismore

firm/its field agents, which included giving Phoenix access to the 48

Greyson client files they seized (without authorization) in 6/2/23

Lockout. $4,960,000 + $300,663= minimum of $5,260,663 sought.

d.  Those 3 administrative claim motions, together seek **$5,526,211.**

2.    Trustee Marshack filed Oppositions to these 3 Motions, but the evidence,

and law, on each of these 3 Motions is uncontroverted in favor of Han, Jayde and

Greyson.  My firm expects these Motions will be granted (allowed) by this Court, or

will be granted on appeal.

3.    The MOR pages referred to in **II.** supra  are attached to hereto as **Exhibit**

**A**, for convenience, downloaded by me from LPG main bankruptcy case pacer docket.

It is a fatal lack of information that the proposed Plan, and the Confirmation Brief,

each fail to disclose any of these dollar amounts—a failure intended to conceal

proposed Plan's **infeasibility. I did the math using the dollar amounts reported in**

**the  Exhibit A MOR pages,  plus added the priority tax liability stated in the**

**proposed Plan, added the amount of allowed administrative claims, and there is**

**not enough case to pay all those things, all required to be paid on the effective**

**date of the Plan.**

4.    The proposed Plan **becomes even more infeasible**, when this Court

orders, as it should order, that the proposed Plan must require setting up a reserve

(escrow), as briefed in **V.** supra, to hold money to use to pay not-yet-allowed

administrative claim motions, when those Motions are allowed later, in the amounts

allowed later.

5.      My firm has reviewed the LPG main bankruptcy case pacer docket, and

has added up the Motions for allowance and payment of administrative expense **which**

**have been granted** as of 8/2/24.  The granted amounts add to $735,897 as of 8/4/24.

An itemization of that $735,897 is **Exhibit B** to this Declaration.  All those amounts

are required to be paid to the claimants which filed those Motions, on the effective date

of the plan.

6.      My firm has searched the LPG main case pacer docket, and none of those

already allowed administrative motion claimants, nor any of the currently opposed by

Trustee, but may be allowed later, administrative motion claimants, nor any of

Trustee/his attorneys and professionals, nor the creditor committee attorneys and

professionals, have filed anything saying they are willing to be paid later than the

effective date of the Plan, or that they are willing to be paid less than their allowed

amounts.

7.      My firm searched the LPG main case pacer docket, and made a list of

Motions for administrative expenses—in addition to the Han/Jayde/Greyson

administrative expense Motions listed in paragraph 1. a., b., and c. supra—which have

been filed, but have been opposed by Trustee, and therefore have not yet been allowed,

though they may be allowed in future.

8.    The Han/Jayde/Greyson Motions together seek **$5,526,211.**  In addition to the Han/Jayde/Greyson administrative claim motions, my firm found, on the LPG main case docket, 3 additional motions for allowance and payment of administrative expenses, which together seek **$1,331,775.60**, and which have not yet been ruled on, due to Trustee filing Oppositions to those 3 Motions.

9.    Those 3 additional administrative expense Motions are: United Partnerships LLC Motion [dkt.761] seeking $178,665.70.  Herret Credit Consultants Motion [dkt.708] seeking $450,000.  Alteryx, Inc.'s motion [dkt.750] seeking $703,089.94.

10.    As noted supra, the Greyson/Han/Jayde administrative expense motions, listed at paragraph 1. a., b., c. together total to $5,526,211.  Add to that the $1,331,775, sought by the United Partnerships LLC, Herret Credit Consulants, and Alteryx, Inc. motions, and the total amount that should be ordered to be **reserved**  (aka escrowed) pre-confirmation, to have money to pay those 6 administrative expense Motions, if they are later allowed by this Court or on appeal, is **$6,857,986**.  The Court should order $6,857,986 reserved (aka escrowed), for the reasons briefed at **V**. supra, so there will be money to pay that $6,857,986 of claims, when they are allowed, in the amounts allowed.  However, there is not enough cash to fund that reserve,  which renders the Plan **even more infeasible**, and therefore **even more non-confirmable**.

11.    In addition, Plan classes 1A-1F list over $47,000,000 million dollars. The proposed Plan is obviously infeasible due to the over $47,000,000 of secured claims,

listed at classes 1A-1F, which Plan confirmation Brief ignores. Those claims state the

creditor can elect to be given its collateral, or to be paid in cash plus interest.

However, the bankruptcy estate no longer has most of these creditor's collateral,

because the collateral for most of those creditors is LPG client files, which Trustee sold

to Morning Law, and Morning Law no longer has most of those files, and would have

no duty to give those back to Trustee, if Morning Law did have those. Or the collateral

is LPG receivables, which LPG does not have either. Thus, return of collateral is not

an option, so the only option would be for the Plan/Liquidating Trust to pay over

$47,000,000 million to those secured creditors, plus interest. The 7/22/24 MOR

discussed supra shows there is no money to pay anything like that, so little money that

the Plan is proposed in bad faith.

12.    There is already a serious question in the LPG bankruptcy case (see

briefing at VI., of Greyson's REPLY, with Declaration of Kathleen P. March, Esq.

thereto [dkt.501 in 8:23-ap-01046-SC, filed 4/24/24]), regarding why Trustee

Marshack's special counsel, Dinsmore & Shohl, LLP, **did not tell this Court** that

Russell Squires had been accused of having recently misappropriated 5.5 million

dollars from Validation Partners, and had not been cleared from that accusation.

Russell Squires was not a lawyer, but by using a moribund law firm, Morning Law,

was determined by this Court to be the winning bidder to buy debtor LPG's clients

files from the LPG bankruptcy estate in July 2023) (see briefing at VI., of Greyson's

---

1    REPLY, with Declaration of Kathleen P. March, Esq. thereto [dkt.501 in 8:23-ap-

2    01046-SC, filed 4/24/24] about this).

3

4    13.    Dinsmore & Shohl, LLP had been given that information, by Wes

5    Thomas, in a meeting Thomas had with Dinsmore attorneys.  Thomas had supplied

6    Dinsmore firm with a lengthy written document regarding the unresolved allegation

7
     against Russell Squires, that Squires had recently misappropriated 5.5 million dollars
8

9    from Validation Partners.  The undersigned counsel for Greyson/Han/Jayde also has a

10   copy of that document, if the Dinsmore attorneys have "misplaced" the copy Wes

11
     Thomas gave the Dinsmore firm, in a meeting with Dinsmore firm attorneys.
12

13   14.    Unresolved allegations that Russ Squires had misappropriated 5.5 million

14   dollars from Validation Partners—if Dinsmore & Shohl, LLP had given that

15
     information to this Court—should certainly have weighed against this Court
16

17   proclaiming Russell Squires (through Morning Law) as the winning bidder for the LPG

18   bankruptcy estate's client files.

19

20   15.    However, it appears that Dinsmore & Shohl LLP did NOT give that

21   highly relevant information to this Court.  There should be an investigation into why

22   Dinsmore & Shohl LLP did NOT give this highly relevant information to this Court,

23

24   including investigation regarding the possibility that attorney Christopher Celentino,

25   Esq., or someone else at Dinsmore & Shohl LLP received some past, present or future

26
     consideration/inducement from Russell Squires, or from some other person/entity, to
27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

withhold giving this Court that extremely important negative information about Russell Squires.

16.    The need for investigation has become more and more pressing, as months pass, because Morning Law has reportedly lost most of its consumer clients that it purchased from the LPG bankruptcy estate, and will likely fail, with the result that Morning Law will NOT pay the money (estimated to be 40 million dollars) that Morning Law contracted to pay the LPG bankruptcy estate, as the winning bidder for LPG's client files.  Instead of performing, pleadings filed in the LPG bankruptcy case main docket show that Morning Law, at present, is demanding that Trustee/LPG bankruptcy estate pay back to Morning Law some of the money that Morning Law has, to date, paid to Trustee/LPG bankruptcy estate.

17.    Plus, the most recent Monthly Operating Report filed by Trustee Marshack [dkt.1445, filed 7/22/24], when compared to the immediately previous Monthly Operating Report [dkt.1359, filed 6/20/24] by Trustee, does **not** show that Morning Law is continuing to pay money to the LPG bankruptcy estate (money which was being put into an escrow account), to perform Morning Law's Purchase Contract with the LPG bankruptcy estate.  Instead the "accounts receivable" amount in both those MORs is the same, $6,219,946.

18.    If Morning Law does not pay the LPG bankruptcy estate what Morning Law contracted to pay, there will almost certainly be zero money to pay general unsecured claims, and there may not be sufficient money to pay, in full, LPG 11 USC

1

2    §503(b)(1) administrative claimants (which administrative claims include Trustee fees,

3    attorneys fees sought by Trustee's 2 law firms (Marshack Hays and Dinsmore &

4    Shohl), and attorneys fees sought by creditors committee counsel, fees of CPA for LPG

5    bankruptcy estate, etc.) and include all Motions for allowance and payment of

6    administrative expense claims, including Greyson's (dkt.676), Han Trinh's (dkt.674)

7

8    and Jayde Trinh's (dkt.675) such Motions.

9        19.    The Court, Trustee Marshack, the Office of US Trustee, and the

10   Creditors' Committee, should all investigate WHY Dinsmore & Shohl LLP failed to

11

12   give this Court the highly relevant, unfavorable information about Russ Squires, who is

13   said to now be running Morning Law, that there were unresolved allegations against

14   Squires that Squires had recently misappropriated 5.5 million dollars, at Validation

15

16   Partners, a corporation Squires was involved in.   Was Dinsmore attorney Christopher

17   Celentino, Esq. or someone else at Dinsmore & Shohl LLP promised or provided past,

18
     present or future consideration to withhold this highly relevant, unfavorable
19

20   information about Russ Squires, from this Court?  That possibility should be

21   considered and investigated.  The general unsecured creditor body—whose interests

22
     the Creditors Committee are supposed to protecting—will be the first to be paid zero,
23

24   when Morning Law fails to perform its Purchase Contract with Trustee/LPG

25   bankruptcy estate, which seems to be what is already happening.

26
         20.    11 USC §1129(a)(4), and 11 USC §330, require that trustees, and
27

28   trustee's attorneys and other professionals, and creditor committee attorneys, all file

and serve Fee Applications with the Bankruptcy Court, and get those Fee Applications

granted, before they can be paid any amounts from the bankruptcy estate. The monies

the same person—Marshack, as Liquidating Trustee—proposes to pay to himself and

his professionals, with no oversight of the Court or of anyone else, is LPG estate

money, that is to be transferred to the Liquidating Trust if the proposed Plan is

confirmed.

21.    The Court is entitled to require, and should require, that the Liquidating

Trustee and his professionals each file Fee Applications with the Court, and serve

those on parties in interest, and to require that the Court rule on those Fee Applications,

before the Liquidating Trustee can pay the money received from the LPG bankruptcy

estate out to the Liquidating Trustee and his professionals. This is particularly

necessary because, as briefed in **II**. supra, the proposed Plan is already infeasible,

because there will not be enough cash to pay the things that 11 USC §1129(a)(9)

requires paying on the effective date of the Plan, and siphoning off some of that

(already inadequate) cash to pay Liquidating Trustee and his professionals, will make

the Plan even more infeasible.

I declare under penalty of perjury that the foregoing is true and correct and that

this Declaration is executed at Los Angeles, California on August 7, 2024.

__/s/ Kathleen P. March __
KATHLEEN P. MARCH

# EXHIBIT A

## UNITED STATES BANKRUPTCY COURT

CENTRAL   DISTRICT OF   CALIFORNIA

SANTA ANA DIVISION

| | | |
|---|---|---|
| In Re. THE LITIGATION PRACTICE GROUP P.C. | § | Case No.  23-10571 |
| | § | |
| | § | |
| Debtor(s) | § | |
| | | ☐ Jointly Administered |

# Monthly Operating Report

Chapter 11

Reporting Period Ended: 06/30/2024

Petition Date: 03/20/2023

Months Pending: 16

Industry Classification: | 5 | 4 | 1 | 1 |

Reporting Method:          Accrual Basis ○          Cash Basis ⦿

Debtor's Full-Time Employees (current):          0

Debtor's Full-Time Employees (as of date of order for relief):          0

**Supporting Documentation** (check all that are attached):

(For jointly administered debtors, any required schedules must be provided on a non-consolidated basis for each debtor)

- ☒ Statement of cash receipts and disbursements
- ☒ Balance sheet containing the summary and detail of the assets, liabilities and equity (net worth) or deficit
- ☒ Statement of operations (profit or loss statement)
- ☒ Accounts receivable aging
- ☒ Postpetition liabilities aging
- ☒ Statement of capital assets
- ☒ Schedule of payments to professionals
- ☐ Schedule of payments to insiders
- ☒ All bank statements and bank reconciliations for the reporting period
- ☐ Description of the assets sold or transferred and the terms of the sale or transfer

/s/ Richard A. Marshack
Signature of Responsible Party

Richard Marshack - Chapter 11 Trustee
Printed Name of Responsible Party

07/22/2024
Date

870 Roosevelt
Irvine, CA 92620
Address

STATEMENT: This Periodic Report is associated with an open bankruptcy case; therefore, Paperwork Reduction Act exemption 5 C.F.R. § 1320.4(a)(2) applies.

UST Form 11-MOR (12/01/2021)                    1

40

Debtor's Name THE LITIGATION PRACTICE GROUP P.C.                                    Case No. 23-10571

| Part 1: Cash Receipts and Disbursements | Current Month | Cumulative |
|---|---|---|
| a. Cash balance beginning of month | $12,228,739 | |
| b. Total receipts (net of transfers between accounts) | $188,946 | $14,124,085 |
| c. Total disbursements (net of transfers between accounts) | $1,502,361 | $3,208,761 |
| d. Cash balance end of month (a+b-c) | $10,915,324 | |
| e. Disbursements made by third party for the benefit of the estate | $0 | $248,823 |
| f. Total disbursements for quarterly fee calculation (c+e) | $1,502,361 | $3,457,583 |

| Part 2: Asset and Liability Status<br>(Not generally applicable to Individual Debtors. See Instructions.) | Current Month | |
|---|---|---|
| a. Accounts receivable (total net of allowance) | $6,216,946 | |
| b. Accounts receivable over 90 days outstanding (net of allowance) | $0 | |
| c. Inventory  (Book ○   Market ○   Other ◉   (attach explanation)) | $0 | |
| d. Total current assets | $6,216,946 | |
| e. Total assets | $6,216,946 | |
| f. Postpetition payables (excluding taxes) | $9,865,519 | |
| g. Postpetition payables past due (excluding taxes) | $0 | |
| h. Postpetition taxes payable | $0 | |
| i. Postpetition taxes past due | $0 | |
| j. Total postpetition debt (f+h) | $9,865,519 | |
| k. Prepetition secured debt | $0 | |
| l. Prepetition priority debt | $0 | |
| m. Prepetition unsecured debt | $0 | |
| n. Total liabilities (debt) (j+k+l+m) | $9,865,519 | |
| o. Ending equity/net worth (e-n) | $-3,648,573 | |

| Part 3: Assets Sold or Transferred | Current Month | Cumulative |
|---|---|---|
| a. Total cash sales price for assets sold/transferred outside the ordinary course of business | $0 | $5,500,000 |
| b. Total payments to third parties incident to assets being sold/transferred outside the ordinary course of business | $0 | $0 |
| c. Net cash proceeds from assets sold/transferred outside the ordinary course of business (a-b) | $0 | $5,500,000 |

| Part 4: Income Statement (Statement of Operations)<br>(Not generally applicable to Individual Debtors. See Instructions.) | Current Month | Cumulative |
|---|---|---|
| a. Gross income/sales (net of returns and allowances) | $0 | |
| b. Cost of goods sold (inclusive of depreciation, if applicable) | $0 | |
| c. Gross profit (a-b) | $0 | |
| d. Selling expenses | $0 | |
| e. General and administrative expenses | $0 | |
| f. Other expenses | $0 | |
| g. Depreciation and/or amortization (not included in 4b) | $0 | |
| h. Interest | $0 | |
| i. Taxes (local, state, and federal) | $0 | |
| j. Reorganization items | $9,115,855 | |
| k. Profit (loss) | $0 | $0 |

UST Form 11-MOR (12/01/2021)                                    2

Case 8:23-bk-10571-SC   Doc 1445-3   Filed 07/22/24   Entered 07/22/24 08:47:52   Desc
Addendum   Page 2 of 5

| | |
|---|---|
| Statement of operations (profit or loss statement) | Form 2 is attached. |
| Accounts receivable aging | The most recent status report received from Morning Law Group states that as of April 17, 2024, the Estate's estimated share of client receivables is $6,216,945.50 subject to any adjustments per the Purchase Agreement. Form 2 is attached reflecting any funds received by Trustee and source of funds. Trustee has not received a status report from MLG since April 17, 2024. |
| Post-petition liabilities aging | Trustee does not have any post-petition liabilities other than accrued professional fees and quarterly fees owed to the U.S. Trustee which are listed under Part 2, Line f. An administrative claims bar date was set. Prior to the deadline, various motions asserting administrative claims were filed. Trustee is reviewing the motions to determine if he will oppose any. |
| Statement of capital assets | Trustee does not have any additional information other than the information provided in the attached Form 2. |
| Schedule of payments to professionals | See attached schedule. The accrued fees, less any payments, for professionals are included under Part 2, Line f. |
| Schedule of payments to insiders | Trustee does not have this information and no payments to insiders have been made after he was appointed. |
| All bank statements and bank reconciliations for the reporting period | Trustee has not received additional bank statements for the Debtor. All of Trustee's transactions are reported on Form 2. |
| Description of the assets sold or transferred and the terms of the sale or transfer | No assets were sold or transferred in the month of June 2024. |
| | |
| Part 2, a | The most recent status report received from Morning Law Group states that as of April 17, 2024, the Estate's estimated share of client receivables is $6,216,945.50 subject to any adjustments per the Purchase Agreement. Form 2 is attached reflecting any funds received by Trustee and source of funds. Trustee has not received a status report from MLG since April 17, 2024. |
| Part 2, b | Trustee is not aware of any outstanding A/R, other than the client receivables listed in Part 2a. |

# UNITED STATES BANKRUPTCY COURT

## CENTRAL  DISTRICT OF  CALIFORNIA

### SANTA ANA DIVISION

| | | |
|---|---|---|
| In Re. THE LITIGATION PRACTICE GROUP P.C. | § | Case No.  23-10571 |
| | § | |
| | § | |
| Debtor(s) | § | |
| | | ☐ Jointly Administered |

## Monthly Operating Report                                Chapter 11

Reporting Period Ended: 05/31/2024          Petition Date: 03/20/2023

Months Pending: 15          Industry Classification: 5 4 1 1

Reporting Method:          Accrual Basis ○          Cash Basis ◉

Debtor's Full-Time Employees (current):          0

Debtor's Full-Time Employees (as of date of order for relief):          0

**Supporting  Documentation**  (check all that are attached):

(For jointly administered debtors, any required schedules must be provided on a non-consolidated basis for each debtor)

- ☒ Statement of cash receipts and disbursements
- ☒ Balance sheet containing the summary and detail of the assets, liabilities and equity (net worth) or deficit
- ☒ Statement of operations (profit or loss statement)
- ☒ Accounts receivable aging
- ☒ Postpetition liabilities aging
- ☒ Statement of capital assets
- ☒ Schedule of payments to professionals
- ☐ Schedule of payments to insiders
- ☒ All bank statements and bank reconciliations for the reporting period
- ☐ Description of the assets sold or transferred and the terms of the sale or transfer

/s/ Richard A. Marshack          Richard Marshack - Chapter 11 Trustee
_____          _____
Signature of Responsible Party          Printed Name of Responsible Party

06/20/2024          870 Roosevelt
_____          Irvine, CA 92620
Date          _____
          Address

STATEMENT: This Periodic Report is associated with an open bankruptcy case; therefore, Paperwork Reduction Act exemption 5 C.F.R.
§ 1320.4(a)(2) applies.

UST Form 11-MOR (12/01/2021)          1

Debtor's Name THE LITIGATION PRACTICE GROUP P.C.                              Case No. 23-10571

| Part 1: Cash Receipts and Disbursements | Current Month | Cumulative |
|---|---|---|
| a. Cash balance beginning of month | $12,204,407 | |
| b. Total receipts (net of transfers between accounts) | $30,370 | $13,935,139 |
| c. Total disbursements (net of transfers between accounts) | $6,039 | $1,706,400 |
| d. Cash balance end of month (a+b-c) | $12,228,739 | |
| e. Disbursements made by third party for the benefit of the estate | $0 | $248,823 |
| f. Total disbursements for quarterly fee calculation (c+e) | $6,039 | $1,955,223 |

| Part 2: Asset and Liability Status<br>(Not generally applicable to Individual Debtors. See Instructions.) | Current Month | |
|---|---|---|
| a. Accounts receivable (total net of allowance) | $6,216,946 | |
| b. Accounts receivable over 90 days outstanding (net of allowance) | $0 | |
| c. Inventory   (Book ◯   Market ◯   Other ◉   (attach explanation)) | $0 | |
| d. Total current assets | $6,216,946 | |
| e. Total assets | $6,216,946 | |
| f. Postpetition payables (excluding taxes) | $9,161,510 | |
| g. Postpetition payables past due (excluding taxes) | $0 | |
| h. Postpetition taxes payable | $0 | |
| i. Postpetition taxes past due | $0 | |
| j. Total postpetition debt (f+h) | $9,161,510 | |
| k. Prepetition secured debt | $0 | |
| l. Prepetition priority debt | $0 | |
| m. Prepetition unsecured debt | $0 | |
| n. Total liabilities (debt) (j+k+l+m) | $9,161,510 | |
| o. Ending equity/net worth (e-n) | $-2,944,565 | |

| Part 3: Assets Sold or Transferred | Current Month | Cumulative |
|---|---|---|
| a. Total cash sales price for assets sold/transferred outside the ordinary course of business | $0 | $5,500,000 |
| b. Total payments to third parties incident to assets being sold/transferred outside the ordinary course of business | $0 | $0 |
| c. Net cash proceeds from assets sold/transferred outside the ordinary course of business (a-b) | $0 | $5,500,000 |

| Part 4: Income Statement (Statement of Operations)<br>(Not generally applicable to Individual Debtors. See Instructions.) | Current Month | Cumulative |
|---|---|---|
| a. Gross income/sales (net of returns and allowances) | $0 | |
| b. Cost of goods sold (inclusive of depreciation, if applicable) | $0 | |
| c. Gross profit (a-b) | $0 | |
| d. Selling expenses | $0 | |
| e. General and administrative expenses | $0 | |
| f. Other expenses | $0 | |
| g. Depreciation and/or amortization (not included in 4b) | $0 | |
| h. Interest | $0 | |
| i. Taxes (local, state, and federal) | $0 | |
| j. Reorganization items | $8,411,847 | |
| k. Profit (loss) | $0 | $0 |

UST Form 11-MOR (12/01/2021)          2

| Statement of operations (profit or loss statement) | Form 2 is attached. |
|---|---|
| Accounts receivable aging | The most recent status report received from Morning Law Group states that as of April 17, 2024, the Estate's estimated share of client receivables is $6,216,945.50 subject to any adjustments per the Purchase Agreement. Form 2 is attached reflecting any funds received by Trustee and source of funds. Trustee has not received a status report from MLG since April 17, 2024. |
| Post-petition liabilities aging | Trustee does not have any post-petition liabilities other than accrued professional fees and quarterly fees owed to the U.S. Trustee which are listed under Part 2, Line f. An administrative claims bar date was set. Prior to the deadline, various motions asserting administrative claims were filed. Trustee is reviewing the motions to determine if he will oppose any. |
| Statement of capital assets | Trustee does not have any additional information other than the information provided in the attached Form 2. |
| Schedule of payments to professionals | See attached schedule. The accrued fees, less any payments, for professionals are included under Part 2, Line f. |
| Schedule of payments to insiders | Trustee does not have this information and no payments to insiders have been made after he was appointed. |
| All bank statements and bank reconciliations for the reporting period | Trustee has not received additional bank statements for the Debtor. All of Trustee's transactions are reported on Form 2. |
| Description of the assets sold or transferred and the terms of the sale or transfer | No assets were sold or transferred in the month of May 2024. |
|  |  |
| Part 2, a | The most recent status report received from Morning Law Group states that as of April 17, 2024, the Estate's estimated share of client receivables is $6,216,945.50 subject to any adjustments per the Purchase Agreement. Form 2 is attached reflecting any funds received by Trustee and source of funds. Trustee has not received a status report from MLG since April 17, 2024. |
| Part 2, b | Trustee is not aware of any outstanding A/R, other than the client receivables listed in Part 2a. |

45

# EXHIBIT B

| Docket | Amount Granted | Name of Claimant | Notes |
|---|---|---|---|
| 1429 | $ 188,947.83 | ADP Inc. | Phoenix's Payroll Vendor |
| 1235 | $ 17,593.58 | Randall Baldwin Clark [Attorney] | Attorney |
| 1175 | $ 26,255.52 | Wells, Marble and Hurst, PLLC | Attorney |
| 1174 | $ 41,539.20 | Robert Reed Pruyn | Attorney |
| 1461 | $ 119,273.88 | Sharp Electronics Corporation | LPG's Vendor |
| 1409 | $ 31,068.45 | David Orr | Attorney |
| 1410 | $ 44,923.88 | Israel Orosco | Attorney |
| 1408 | $ 31,538.46 | Amy L.B. Ginsburg | Attorney |
| 1408 | $ 6,400.00 | Shannon Bellfield | Legal Admin |
| 1408 | $ 29,481.15 | Kenton Cobb | Attorney |
| 1407 | $ 67,252.77 | Peter Schneider | Attorney |
| 1459 | $ 3,786.18 | Jaslynn Sanchez | Maverick Management Employee |
| 1458 | $ 6,080.00 | Melina Beltran | Maverick Management Employee |
| 1457 | $ 4,000.00 | Kimberly Torres | Maverick Management Employee |
| 1460 | $ 4,164.80 | Jorge E. Sanchez | Maverick Management Employee |
| 1206 | $ 113,591.47 | SDCO Tustin Executive Center, Inc. | LPG's Office (Suite 100, 105, 250, 350) |
| | | | |
| | $ 735,897.17 | | |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
10524 W. Pico Blvd., Ste. 212, Los Angeles, CA 90064
A true and correct copy of the foregoing document entitled (*specify*):

**OBJECTION OF GREYSON LAW CENTER PC, JAYDE TRINH & HAN TRINH, TO TRUSTEE-CREDITOR COMMITEES'
PROPOSED MODIFIED FIRST AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION [DKT.1344 FILED 6/14/24]
BEING CONFIRMED,  AS INFEASIBLE, AND BECAUSE MULTIPLE PROVISIONS ARE IMPROPER; THIS OBJECTION
ALSO POINTS OUT DEFECTS IN TRUSTEE-CREDITOR COMMITTEE'S CONFIRMATION BRIEF [DKT.1481, FILED
8/1/24]**

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in
the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General
Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)
___8/7/24___, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the
following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

See next page

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) ___8/7/24___,  I served the following persons and/or entities at the last known addresses in this bankruptcy
case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail,
first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the
judge will be completed no later than 24 hours after the document is filed.

The Litigation Practice Group P.C.
17542 17th St
Suite 100
Tustin, CA 92780

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method
for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) __8/7/24_, I served the
following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to
such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration
that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is
filed.

Hon. Scott Clarkson
United States Bankruptcy Court
Central District of California
411 West Fourth Street, Suite 5130
Santa Ana, CA 92701-4593

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 8/7/24 | Kathleen P. March | /s/ Kathleen P. March |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

**F 9013-3.1.PROOF.SERVICE**

48

1.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**

- **Kyra E Andrassy**    kandrassy@raineslaw.com, bclark@raineslaw.com;jfisher@raineslaw.com
- **Bradford Barnhardt**    bbarnhardt@marshackhays.com, bbarnhardt@ecf.courtdrive.com,alinares@ecf.courtdrive.com
- **Eric Bensamochan**    eric@eblawfirm.us, G63723@notify.cincompass.com
- **Michael Jay Berger**    michael.berger@bankruptcypower.com, yathida.nipha@bankruptcypower.com;michael.berger@ecf.inforuptcy.com
- **Ethan J Birnberg**    birnberg@portersimon.com, kdwyer@portersimon.com
- **Peter W Bowie**    peter.bowie@dinsmore.com, caron.burke@dinsmore.com
- **Ronald K Brown**    ron@rkbrownlaw.com
- **Christopher Celentino**    christopher.celentino@dinsmore.com, caron.burke@dinsmore.com
- **Shawn M Christianson**    cmcintire@buchalter.com, schristianson@buchalter.com
- **Randall Baldwin Clark**    rbc@randallbclark.com
- **Leslie A Cohen**    leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com;clare@lesliecohenlaw.com
- **Michael W Davis**    mdavis@dtolaw.com, ygodson@dtolaw.com
- **Anthony Paul Diehl**    anthony@apdlaw.net, Diehl.AnthonyB112492@notify.bestcase.com,ecf@apdlaw.net,9143954420@filings.docketbird.com
- **Ashley Dionisio**    adionisio@omniagnt.com
- **Jenny L Doling**    jd@jdl.law, dolingjr92080@notify.bestcase.com;15994@notices.nextchapterbk.com;jdoling@jubileebk.net
- **Daniel A Edelman**    dedelman@edcombs.com, courtecl@edcombs.com
- **Howard M Ehrenberg**    Howard.Ehrenberg@gmlaw.com, hehrenberg@ecf.courtdrive.com;hehrenberg@ecf.inforuptcy.com;Karen.Files@gmlaw.com;denise.walker@gmlaw.com
- **Meredith Fahn**    fahn@sbcglobal.net
- **Jeremy Faith**    Jeremy@MarguliesFaithlaw.com, Angela@MarguliesFaithlaw.com;Vicky@MarguliesFaithlaw.com
- **William P Fennell**    william.fennell@fennelllaw.com, wpf@ecf.courtdrive.com;hala.hammi@fennelllaw.com;naomi.cwalinski@fennelllaw.com;samantha.larimer@fennelllaw.com;office@fennelllaw.com;Brendan.Bargmann@fennelllaw.com
- **Alan W Forsley**    alan.forsley@flpllp.com, awf@fkllawfirm.com,awf@fl-lawyers.net,addy@flpllp.com
- **Marc C Forsythe**    mforsythe@goeforlaw.com, mforsythe@goeforlaw.com;dcyrankowski@goeforlaw.com;Forsythe.MarcR136526@notify.bestcase.com
- **Jeremy Freedman**    jeremy.freedman@dinsmore.com, bonnie.connolly@dinsmore.com
- **Eric Gassman**    erg@gassmanlawgroup.com, gassman.ericb112993@notify.bestcase.com
- **Christopher Ghio**    christopher.ghio@dinsmore.com, angelica.urena@dinsmore.com
- **Amy Lynn Ginsburg**    efilings@ginsburglawgroup.com
- **Eric D Goldberg**    eric.goldberg@dlapiper.com, eric-goldberg-1103@ecf.pacerpro.com
- **Jeffrey I Golden**    jgolden@go2.law, kadele@ecf.courtdrive.com;cbmeeker@gmail.com;lbracken@wgllp.com;dfitzgerald@go2.law;golden.jeffreyi.b117954@notify.bestcase.com
- **Richard H Golubow**    rgolubow@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com
- **David M Goodrich**    dgoodrich@go2.law, kadele@go2.law;dfitzgerald@go2.law;wggllp@ecf.courtdrive.com
- **D Edward Hays**    ehays@marshackhays.com, ehays@ecf.courtdrive.com;alinares@marshackhays.com;cmendoza@marshackhays.com;cmendoza@ecf.courtdrive.com
- **Alan Craig Hochheiser**    ahochheiser@mauricewutscher.com, arodriguez@mauricewutscher.com
- **Garrick A Hollander**    ghollander@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com
- **Brian L Holman**    b.holman@musickpeeler.com
- **Richard L. Hyde**    rhyde@awglaw.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012    **F 9013-3.1.PROOF.SERVICE**
49

- **Peter L Isola**    pisola@hinshawlaw.com, rmojica@hinshawlaw.com,iking@hinshawlaw.com
- **Razmig Izakelian**    razmigizakelian@quinnemanuel.com
- **Sara Johnston**    sara.johnston@dinsmore.com
- **Sweeney Kelly**    kelly@ksgklaw.com
- **Joon M Khang**    joon@khanglaw.com
- **Ira David Kharasch**    ikharasch@pszjlaw.com
- **Meredith King**    mking@fsl.law, ssanchez@fsl.law;jwilson@fsl.law
- **Nicholas A Koffroth**    nkoffroth@foxrothschild.com, khoang@foxrothschild.com;ca.dkt@foxrothschild.com
- **David S Kupetz**    David.Kupetz@lockelord.com, mylene.ruiz@lockelord.com
- **Christopher J Langley**    chris@slclawoffice.com, langleycr75251@notify.bestcase.com;ecf123@casedriver.com;john@slclawoffice.com
- **Kelli Ann Lee**    Kelli.lee@dinsmore.com, kristy.allen@dinsmore.com
- **Matthew A Lesnick**    matt@lesnickprince.com, matt@ecf.inforuptcy.com;jmack@lesnickprince.com
- **Daniel A Lev**    daniel.lev@gmlaw.com, cheryl.caldwell@gmlaw.com;dlev@ecf.courtdrive.com
- **Britteny Leyva**    bleyva@mayerbrown.com, 2396393420@filings.docketbird.com;KAWhite@mayerbrown.com;ladocket@mayerbrown.com
- **Marc A Lieberman**    marc.lieberman@flpllp.com, addy@flpllp.com,andrea@flpllp.com
- **Michael D Lieberman**    mlieberman@lipsonneilson.com
- **Yosina M Lissebeck**    Yosina.Lissebeck@Dinsmore.com, caron.burke@dinsmore.com;Wendy.Yones@Dinsmore.com
- **Mitchell B Ludwig**    mbl@kpclegal.com, kad@kpclegal.com
- **Daniel S March**    marchlawoffice@gmail.com, marchdr94019@notify.bestcase.com
- **Kathleen P March**    kmarch@bkylawfirm.com, kmarch3@sbcglobal.net,kmarch@sbcglobal.net
- **Mark J Markus**    bklawr@bklaw.com, markjmarkus@gmail.com;markus.markj.r112926@notify.bestcase.com
- **Richard A Marshack (TR)**    pkraus@marshackhays.com, ecf.alert+Marshack@titlexi.com
- **Laila Masud**    lmasud@marshackhays.com, lmasud@ecf.courtdrive.com;lbuchanan@marshackhays.com;alinares@ecf.courtdrive.com
- **Sarah S. Mattingly**    sarah.mattingly@dinsmore.com
- **William McCormick**    Bill.McCormick@ag.tn.gov
- **Kenneth Misken**    Kenneth.M.Misken@usdoj.gov
- **Byron Z Moldo**    bmoldo@ecjlaw.com, aantonio@ecjlaw.com,dperez@ecjlaw.com
- **Glenn D. Moses**    gmoses@venable.com, cascavone@venable.com;ipmalcolm@venable.com;jadelgado@venable.com
- **Jamie D Mottola**    Jamie.Mottola@dinsmore.com, jhanawalt@ecf.inforuptcy.com
- **Alan I Nahmias**    anahmias@mbn.law, jdale@mbn.law
- **Victoria Newmark**    vnewmark@pszjlaw.com
- **Queenie K Ng**    queenie.k.ng@usdoj.gov
- **Israel Orozco**    israel@iolawcorp.com
- **Keith C Owens**    kowens@foxrothschild.com, khoang@foxrothschild.com
- **Lisa Patel**    lpatel@lesnickprince.com, jmack@lesnickprince.com;jnavarro@lesnickprince.com
- **Michael R Pinkston**    rpinkston@seyfarth.com, jmcdermott@seyfarth.com,sfocalendar@seyfarth.com,5314522420@filings.docketbird.com,bankruptcydocket@seyfarth.com
- **Douglas A Plazak**    dplazak@rhlaw.com
- **Tyler Powell**    tyler.powell@dinsmore.com, jennifer.pitcock@dinsmore.com;caitlin.brock@dinsmore.com
- **Daniel H Reiss**    dhr@lnbyg.com, dhr@ecf.inforuptcy.com
- **Ronald N Richards**    ron@ronaldrichards.com, 7206828420@filings.docketbird.com
- **Vanessa Rodriguez**    vanessa.rodriguez@dinsmore.com, angelica.urena@dinsmore.com
- **Kevin Alan Rogers**    krogers@wellsmar.com
- **Gregory M Salvato**    gsalvato@salvatoboufadel.com, calendar@salvatolawoffices.com;jboufadel@salvatoboufadel.com;gsalvato@ecf.inforuptcy.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

56

- **Olivia Scott**   olivia.scott@hklaw.com
- **Jonathan Serrano**   jonathan.serrano@dinsmore.com
- **Maureen J Shanahan**   Mstotaro@aol.com
- **Paul R Shankman**   PShankman@fortislaw.com, info@fortislaw.com
- **Zev Shechtman**   Zev.Shechtman@saul.com, zshechtman@ecf.inforuptcy.com;easter.santamaria@saul.com
- **Jeffrey M Singletary**   jsingletary@swlaw.com, rmckay@swlaw.com
- **Leslie Skorheim**   leslie.skorheim@usdoj.gov
- **Adam D Stein-Sapir**   info@pfllc.com
- **Howard Steinberg**   steinbergh@gtlaw.com, pearsallt@gtlaw.com;NEF-BK@gtlaw.com;howard-steinberg-6096@ecf.pacerpro.com
- **John H. Stephens**   john.stephens@dinsmore.com, lizbeth.alonso@dinsmore.com
- **Andrew Still**   astill@swlaw.com, kcollins@swlaw.com
- **Michael R Totaro**   Ocbkatty@aol.com
- **United States Trustee (SA)**   ustpregion16.sa.ecf@usdoj.gov
- **William J Wall**   wwall@wall-law.com
- **Sharon Z. Weiss**   sharon.weiss@bclplaw.com,
  raul.morales@bclplaw.com,REC_KM_ECF_SMO@bclplaw.com
- **Johnny White**   JWhite@wrslawyers.com, jlee@wrslawyers.com
- **Reina Zepeda**   rzepeda@omniagnt.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

51