Keith C. Owens (Bar No 184841)
Nicholas A. Koffroth (Bar No. 287854)
**FOX ROTHSCHILD LLP**
10250 Constellation Blvd., Suite 900
Los Angeles, CA 90067
Telephone:    (310) 598-4150
Facsimile:    (310) 556-9828
kowens@foxrothschild.com
nkoffroth@foxrothschild.com

*Counsel for Official Committee of Unsecured Creditors*

D. Edward Hays (Bar No. 162507)
Laila Masud (Bar No. 311731)
**MARSHACK HAYS WOOD LLP**
870 Roosevelt
Irvine, CA 92620
Telephone:    (949) 333-7777
Facsimile:    (949) 333-7778
ehays@marshackhays.com
lmasud@marshackhays.com

*General Counsel for Chapter 11 Trustee*

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SANTA ANA DIVISION**

In re:

THE LITIGATION PRACTICE GROUP, P.C.,

            Debtor.

Chapter 11

Case No. 8:23-bk-10571-SC

**JOINT OMNIBUS REPLY OF THE CHAPTER 11 TRUSTEE AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS IN SUPPORT OF CONFIRMATION OF MODIFIED FIRST AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION (DATED JUNE 14, 2024)**

**Hearing Date and Time**
Date:    August 29, 2024
Time:    10:00 a.m.
Place:    *In Person or Via ZoomGov*
        Courtroom 5C
        411 West Fourth Street
        Santa Ana, California 92701

161840227.2

## TABLE OF CONTENTS

I.    Omnibus Reply ........................................................................................................ 1

    A.    The Anthem Objection ................................................................................ 1

    B.    The Greyson Parties Objection ................................................................... 2

        1.    The Greyson Parties Incorrectly Attempt to "Reverse Engineer" the Feasibility Analysis They Clearly Overlooked and, in Doing So, Misstate the Timing of Key Payments........................................................... 3

        2.    The Greyson Parties Ignore the Ample Case Law Already Cited in the Disclosure Statement Briefing That Administrative Reserves Are Not Required for Disputed Claims............................................................... 4

        3.    The Greyson Parties Objection Premised on Secured Claims Ignores Pending Settlements and Motions for Summary Judgment That Leave the Estate Poised to Resolve All Secured Claims. ..................................... 7

        4.    The Exculpation Is Appropriate, Commonly Permitted, and Consistent with the Language Requested by the United States Trustee. ..................... 8

        5.    The Bankruptcy Code's Bond Requirement Does Not Apply to Postconfirmation Liquidating Trusts........................................................ 10

        6.    The Objection to the Liquidating Trust Establish No Basis to Deny Confirmation of the Plan and Ignore Both Continued Committee and Court Supervision............................................................................... 11

        7.    The Good Faith Confirmation Objection Merely Restates the Greyson Parties' Flawed Objections Once Again. ................................................. 11

    C.    The Investment Funds Opposition ............................................................. 12

        1.    The Investment Funds' Qualm with the Post-Confirmation Oversight Committee Would Effect a Material Modification of the Plan That Would Require Resolicitation and Materially More Administrative Cost. 12

        2.    The Investment Funds Double-Down on Their Claim That Consumer-Creditors Have "Virtually No Economic Stake" in Recoveries While Making No Effort to Vote on the Plan. .................................................... 13

        3.    The Investment Funds Opposition Does Not Raise a Confirmation Objection. ...................................................................................... 14

II.    Response to Informal Objection ............................................................................ 16

III.    Reservation of Rights ........................................................................................... 16

IV.    Conclusion............................................................................................................ 17

F.OX ROTHSCHILD LLP
10250 Constellation Boulevard, Suite 900
Los Angeles, California 90067
(310) 598-4150
(310) 556-9828 (fax)

i

161840227.2

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Adelphia Bus. Sols., Inc.*,
  341 B.R. 415 (Bankr. S.D.N.Y. 2003) ................................................................. 6

*In re Am. Physician Partners, LLC*,
  No. 23-11469 (BLS) (Bankr. D. Del. Mar. 15, 2024) ....................................... 15

*In re Am. Solar King Corp.*,
  90 B.R. 808 (Bankr. W.D. Tex. 1988) .............................................................. 12

*In re Art & Architecture Books of the 21st Century*,
  No. 2:13-bk-14135-RK, 2016 WL 1118743 (Bankr. C.D. Cal. Mar. 18, 2016) ...................... 4

*Blixseth v. Credit Suisse*,
  961 F.3d 1074 (9th Cir. 2020) ....................................................................... 8, 9

*In re Boxed, Inc.*,
  No. 23-10397 (BLS) (Bankr. D. Del. Aug. 31, 2023) ....................................... 15

*In re Brotby*,
  303 B.R. 177 (B.A.P. 9th Cir. 2003) .................................................................. 4

*In re Chemtura Corp.*,
  448 B.R. 635 (Bankr. S.D.N.Y. 2011) ............................................................... 6

*In re Corey*,
  892 F.2d 829 (9th Cir. 1989) .......................................................................... 14

*In re Downtown Inv. Club III*,
  89 B.R. 59 (B.A.P. 9th Cir. 1988) ................................................................... 12

*Harrington v. Purdue Pharma L.P.*,
  603 U.S. —, 144 S.Ct. 2071 (2024) ............................................................ 8, 10

*In re Legacy IMBDS, Inc.*,
  No. 23-10852 (KBO) (Bankr. D. Del. Feb. 21, 2024) ....................................... 15

*In re Lighthouse Lodge, LLC*,
  No. 09-52610-RLE, 2010 WL 4053984 (Bankr. N.D. Cal. Oct. 14, 2010) ...................... 8, 10

*Mutual Life Ins. Co. of N.Y. v. Patrician St. Joseph Partners Ltd. P'ship (In re
  Patrician St. Joseph Partners Ltd. P'ship)*,
  169 B.R. 669 (D. Ariz. 1994) .......................................................................... 5

*In re North Valley Mall, LLC*,
  432 B.R. 825 (Bankr. C.D. Cal. 2010) .............................................................. 5

FOX ROTHSCHILD LLP
10250 Constellation Boulevard, Suite 900
Los Angeles, California 90067
(310) 598-4150
(310) 556-9828 (fax)

161840227.2

*In re PG & E Corp.*,
    617 B.R. 671 (Bankr. N.D. Cal. 2020) .................................................. 16

*In re PG & E Corp.*,
    No. 19-30088 (Bankr. N.D. Cal. June 20, 2020) ................................... 15

*In re Quanergy Sys., Inc.*,
    No. 22-111305 (CTG) (Bankr. D. Del. Nov. 8, 2023) ........................... 15

*Sherman v. Harbin (In re Harbin)*,
    486 F.3d 510 (9th Cir. 2007) .................................................................. 5

*In re Spansion, Inc.*,
    426 B.R. 114 (Bankr. D. Del. 2010) ........................................................ 6

*In re Verity Health Sys. of Cal., Inc.*,
    No. 2:18-bk-20151-ER (Bankr. C.D. Cal. Aug. 12, 2020) ............... 6, 15

*In re W. Asbestos Co.*,
    313 B.R. 832 (Bankr. N.D. Cal. 2003) .................................................. 8, 9

*In re Yellowstone Mountain Club, LLC*,
    460 B.R. 254 (Bankr. D. Mont. 2011) ............................................. 8, 9, 10

**Statutes**

11 U.S.C. 322(a) ............................................................................................ 10

11 U.S.C. § 1127(c) ....................................................................................... 12

11 U.S.C. § 1129(a)(9)(A) .............................................................................. 3

11 U.S.C. § 1129(a)(9)(C) .............................................................................. 4

11 U.S.C. §1129(a)(11) ........................................................................... 4, 5, 6

FOX ROTHSCHILD LLP
10250 Constellation Boulevard, Suite 900
Los Angeles, California 90067
(310) 598-4150
(310) 556-9828 (fax)

iii

The Official Committee of Unsecured Creditors (the "Committee") of The Litigation Practice Group P.C. (the "Debtor"), in the above-referenced bankruptcy case (the "Bankruptcy Case") pending under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code")[1] and Richard A. Marshack, in his capacity as the chapter 11 trustee of the Debtor (the "Trustee" and, together with the Committee, the "Plan Proponents"), jointly submit this omnibus reply (the "Reply"): (i) in support of the *Memorandum of Law in Support of Confirmation of Modified First Amended Joint Chapter 11 Plan of Liquidation (Dated June 14, 2024)* [Docket No. 1481] (the "Memorandum") related to the *Modified First Amended Joint Chapter 11 Plan of Liquidation (Dated June 14, 2024)* [Docket No. 1344] (the "Plan");[2] and (ii) in response to (a) the objection [Docket No. 1540] (the "Anthem Objection") filed by Blue Cross of California d/b/a Anthem Blue Cross and Anthem Blue Cross Life and Health Insurance Company (collectively "Anthem"), (b) the objection [Docket No. 1490] (the "Greyson Parties Objection") filed by Greyson Law Center, PC, Han Trinh, and Jayde Trinh (collectively, the "Greyson Parties"), and (c) the opposition [Docket No. 1511] (the "Investment Fund Opposition" and, together with the Anthem Objection and the Greyson Parties Objection, the "Oppositions") filed by Debt Validation Fund II, LLC, MC DVI Fund 1, LLC, and MC DVI Fund 2, LLC (the "Investment Fund Parties"). In support of the Reply, the Plan Proponents refer to the record in this Bankruptcy Case, and respectfully state as follows:

**I.**

**OMNIBUS REPLY**

**A.    The Anthem Objection**

The Anthem Objection raises two central objections—Anthem wants payment in full of its Allowed priority claim on the Effective Date and objects to the period of time the Liquidating Trustee has to object to its claim—that the Plan Proponents believe can be and is already resolved by agreement. ***First***, the Plan permits the Plan Proponents, at their election, to either pay Allowed Class 2C Claims (Contributions to Employee Benefit Plans) in full on the Effective Date or through deferred

---

[1] Unless otherwise noted, all references to "Section" or "§" refer to a section of the Bankruptcy Code.

[2] Unless otherwise defined herein, all capitalized terms have the definitions set forth in the Memorandum.

161840227.2

cash payments. *See* Plan, § III.C.4. at 17. ***Second***, the Plan provides that the Liquidating Trustee may object to claims up to 270 days following the Effective Date, given the number of claims that must be administered in this Bankruptcy Case. *See* Plan, § IV.I.4. at 40.

As a result of the Anthem Objection, the Trustee analyzed potential bases for objection to the Anthem Claim. The Trustee then entered into negotiations with Anthem and has reached a proposed compromise resolving the treatment and allowance of Anthem's claim. In summary, Anthem will have an allowed priority unsecured claim equal to one-half of its approximate $200,000 asserted priority unsecured claim with the balance of the claim to be treated as a general unsecured claim. In exchange, the Estate is waiving its Chapter 5 avoidance claims against Anthem. Specifically, Anthem received two payments in January 2023, during the preference period. Anthem asserts affirmative defenses to avoidance including ordinary course of business and subsequent new value because after the payments were received in January 2023, they provided insurance to Debtor's employees in February and March 2023. The Trustee has confirmed that the employees which were provided insurance were on the Debtor's (and not any fraudulent transferee's) payroll during these months.

In light of the proposed compromise reached with Anthem, the Plan Proponents believe that this objection is resolved, and Anthem will receive it's allowed priority unsecured payment within 10 days after the Effective Date.

**B.** **The Greyson Parties Objection**

The Greyson Parties Objection seeks to derail the Plan based on a litany of rehashed objections that this Court has already overruled. While under submission, the Plan Proponents note that the Greyson Parties continue pursuing their unfounded objections notwithstanding the Court's posted tentative ruling that it was inclined to deny their motions for allowance of administrative claims. As set forth more fully below, each of the Greyson Parties' seven objections are substantively unavailing and, as importantly, serve little apparent purpose other than to squeeze what perceived leverage they think they can from case constituents that have overwhelmingly voted in favor of approving the Plan.

FOX ROTHSCHILD LLP
10250 Constellation Boulevard, Suite 900
Los Angeles, California 90067
(310) 598-4150
(310) 556-9828 (fax)

1. **The Greyson Parties Incorrectly Attempt to "Reverse Engineer" the Feasibility Analysis They Clearly Overlooked and, in Doing So, Misstate the Timing of Key Payments.**

The Greyson Parties object on the basis that the Plan and related feasibility analysis does not "do the math" on account of administrative claims and priority tax claims—that the Plan Proponents do not demonstrate sufficient funds are on hand to pay *all* administrative claims, even if not yet allowed, and priority tax claims on the Effective Date. This criticism is based on two fundamental flaws.

*First*, the Greyson Parties appear not to have reviewed the feasibility analysis attached to the Disclosure Statement. The Greyson Parties claim that the Plan provides no estimate of allowed Professional Fee Claims. *See* Greyson Parties Obj. at 4. Not so. Professional Fee Claims are accounted for in the feasibility analysis attached to the Disclosure Statement and even itemized by professional. *See* Disclosure Stmt., Ex. at 2, 5. The Greyson Parties also calculate that $735,807 of non-professional administrative claims are already allowed by the Court, but not specifically accounted for in the Plan. *See* Greyson Parties Obj. at 4. Wrong again. The feasibility analysis reflects payment of $959,458 in *allowed* administrative claims on the Effective Date—an amount well in excess of the Greyson Parties' calculation. *See* Disclosure Stmt., Ex. at 2. The feasibility analysis demonstrates that both of these amounts are payable with cash on hand anticipated as of the Effective Date.

*Second*, the Greyson Parties are mistaken about when certain payments must be made to satisfy § 1129. With respect to administrative claims, the Bankruptcy Code only requires that, "on the effective date of the plan, the holder of such claim will receive on account of such claim cash equal to the *allowed* amount of such claim." 11 U.S.C. § 1129(a)(9)(A) (emphasis added). The Plan and the feasibility analysis provide for exactly that. *See* Plan, § III.B.1. at 5; *see also* Disclosure Stmt., Ex. at 2. As set forth more fully below, the Plan is not required to reserve for administrative claims that are not allowed on the Effective Date, particularly those of the Greyson Parties that are already under submission (after a tentative ruling to deny them). Additionally, the Greyson Parties presume that all Priority Tax Claims must be paid in full on the Effective Date. *See* Greyson Parties

FOX ROTHSCHILD LLP
10250 Constellation Boulevard, Suite 900
Los Angeles, California 90067
(310) 598-4150
(310) 556-9828 (fax)

FOX ROTHSCHILD LLP
10250 Constellation Boulevard, Suite 900
Los Angeles, California 90067
(310) 598-4150
(310) 556-9828 (fax)

Obj., at 5.  But, § 1129(a)(9)(C) only requires regular cash installment payments over five years from the Petition Date.  *See* 11 U.S.C. § 1129(a)(9)(C).  The Plan provides for exactly that and no Holder of a Priority Tax Claim has objected to the treatment provided consistent with the Bankruptcy Code. *See* Plan, § III.B.3. at 8-9.  As such, the presumption that the estate must pay $1,359,190 to Holders of Priority Tax Claims on the Effective Date is facially inconsistent with the Plan and the Bankruptcy Code.

Accordingly, the Greyson Parties Objection mistakes—and inaccurately reconstructs—the Plan Proponents' feasibility analysis which demonstrates sufficient funds will be on hand to pay all allowed claims required to be paid on the Effective Date.

**2.      The Greyson Parties Ignore the Ample Case Law Already Cited in the Disclosure Statement Briefing That Administrative Reserves Are Not Required for Disputed Claims.**

The Greyson Parties' again object that the Plan does not establish a reserve for the payment of the Greyson Parties' alleged administrative claim.  This objection is premised on the faulty assumption—without citation to authority—that the Plan must reserve the full face amount of all asserted administrative claims not yet allowed.  *See* Greyson Parties Obj., at 8.  Not surprisingly, nearly all of the $6.8 million reserve proposed by the Greyson Parties would be allocable to their combined, alleged $5,526,211 administrative claim.  *See id.* at 8; *see also* Declaration of Kathleen March, ¶ 10 at 33.  As set forth below, this argument fails to establish patent unconfirmability because it is contrary to applicable case law and fails to acknowledge the disputed factual issues raised in the pending briefing on the Greyson Parties' meritless requests for administrative claims.

The Bankruptcy Court must find that "confirmation of the [P]lan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the [P]lan, unless such liquidation or reorganization is proposed in the [P]lan." 11 U.S.C. §1129(a)(11) (emphasis added). The key word in the Bankruptcy Code for satisfaction of this subsection is "likely," *i.e.*, that success of the Plan is reasonably assured—not guaranteed and not inevitable. *See Acequia, Inc*., 787 F.2d at 1364; *In re Brotby*, 303 B.R. 177, 191 (B.A.P. 9th Cir. 2003) ("The Code does not require the debtor to prove that success is inevitable . . . ."); *In re Art &*

4

FOX ROTHSCHILD LLP
10250 Constellation Boulevard, Suite 900
Los Angeles, California 90067
(310) 598-4150
(310) 556-9828 (fax)

1   *Architecture Books of the 21st Century*, No. 2:13-bk-14135-RK, 2016 WL 1118743, at *20 (Bankr.

2   C.D. Cal. Mar. 18, 2016) ("The feasibility standard is whether the plan offers a reasonable assurance

3   of success. Success need not be guaranteed and the court is not required to determine that the future

4   success of the Post–Confirmation Debtor is inevitable in order to find that the plan is feasible.")

5   (citation omitted); *In re North Valley Mall, LLC*, 432 B.R. 825, 838 (Bankr. C.D. Cal. 2010) ("The

6   Code does not require debtor to prove that success is inevitable or assured, and a relatively low

7   threshold of proof will satisfy § 1129(a)(11) so long as adequate evidence supports a finding of

8   feasibility. . . . The Court finds that the plan more likely than not can be performed as promised and

9   that it is therefore feasible and complies with § 1129(a)(11).") (internal citations omitted); *see also*

10  *Mutual Life Ins. Co. of N.Y. v. Patrician St. Joseph Partners Ltd. P'ship (In re Patrician St. Joseph*

11  *Partners Ltd. P'ship)*, 169 B.R. 669, 674 (D. Ariz. 1994) ("A plan meets this feasibility standard if

12  the plan offers a reasonable prospect of success and is workable. . . . The prospect of financial

13  uncertainty does not defeat plan confirmation on feasibility grounds since a guarantee of the future is

14  not required. . . . The mere potential for failure of the plan is insufficient to disprove feasibility.")

15  (citing *In re Drexel Burnham Lambert Group, Inc.*, 138 B.R. 723, 762 (Bankr. S.D.N.Y. 1992)).

16      In assessing the feasibility of the Plan, the Court must evaluate "the possibility that a potential

17  creditor may, following confirmation, recover a large judgment against the debtor."  *Sherman v.*

18  *Harbin (In re Harbin)*, 486 F.3d 510, 517 (9th Cir. 2007).  The Court is required to "exercise its sound

19  discretion in considering how such litigation may affect the feasibility of any specific plan." *Id.*

20  Where the amount of an administrative claim remains subject to litigation, courts may estimate the

21  allowed amount of the administrative claim for confirmation purposes by using:

22          whatever method is best suited to the contingencies of the case, so long
            as the procedure is consistent with the fundamental policy of Chapter
23          11 that a reorganization "must be accomplished quickly and
            efficiently." *Bittner v. Borne Chemical Co.*, 691 F.2d at 135–37; *see*
24          *also, e.g., In re Brints Cotton Mktg., Inc.*, 737 F.2d 1338, 1341 (5th Cir.
            1984), citing 3 Collier on Bankruptcy ¶ 502.03, at 502–77 (15th ed.
25          1983). Bankruptcy Courts have employed a wide variety of methods to
            estimate claims, including summary trial, *In re Baldwin–United Corp.*,
26          55 B.R. 885, 899 (Bankr. S.D. Ohio 1985), a full-blown evidentiary
            hearing, *In re Nova Real Estate Inv. Trust*, 23 B.R. 62, 65 (Bankr. E.D.
27          Va. 1982), and a review of pleadings and briefs followed by oral
            argument of counsel, *In re Lane*, 68 B.R. 609, 613 (Bankr. D. Haw.
28          1986). In so doing, courts specifically have recognized that it is often

5

> "inappropriate to hold time-consuming proceedings which would defeat the very purpose of 11 U.S.C. § 502(c)(1) to avoid undue delay."

*In re Adelphia Bus. Sols., Inc.*, 341 B.R. 415, 422–23 (Bankr. S.D.N.Y. 2003). Bankruptcy courts routinely estimate administrative claims for plan confirmation purposes, with the understanding that the ultimate amount of the claim will be determined through the underlying litigation. *See, e.g.*, *id.* at 422; *In re Spansion, Inc.*, 426 B.R. 114, 146 (Bankr. D. Del. 2010) (estimating administrative claim alleged to be $100 million at $4.2 million for plan confirmation purposes); *In re Chemtura Corp.*, 448 B.R. 635, 649 (Bankr. S.D.N.Y. 2011); *In re Verity Health Sys. of Cal., Inc.*, No. 2:18-bk-20151-ER, Docket No. 5475, at ECF p. 23 (Bankr. C.D. Cal. Aug. 12, 2020) (estimating $45.2 million administrative claim at $0 for plan confirmation purposes).[3]

Here, the Greyson Parties each filed motions for payment of an administrative claim [Docket Nos. 674-676]. The Court has taken under submission these motions, which have been opposed by the Trustee. Although they remain pending as of the filing of this reply, it is entirely possible that the Court will issue its rulings prior to the confirmation hearing. If so, the amount of any administrative claims will be resolved. If not, the Court has the authority to estimate the amount of the asserted administrative claims for purposes of a reserve necessary to confirm the Plan. Because these issues are subject to material disputes , and pending briefing, the Greyson Parties cannot demonstrate at this stage that "no dispute of material fact remains" concerning whether the Plan must reserve for the claims to pass muster under § 1129(a)(11). Moreover, as alleged administrative claims subject to pending objections, the alleged administrative claims are not entitled to presumptive validity and not currently "allowed" for purposes of § 1129(a)(9). Accordingly, the Plan is not infeasible because the Greyson Parties' administrative claims are not currently "allowed"—which can be revisited if the Court rules on the administrative claims prior to confirmation.

Additionally, the Plan in fact provides that the effective date will not occur until the Trustee is in possession of sufficient unencumbered funds to pay all claims that are due on the effective date. *See* Plan, § IV.C at 37 ("On the Effective Date, the Trustee will pay all Effective Date payments to Holders of (i) Allowed Administrative Claims…"); *id.*, § IV.K.2 at 42-43 (Effective Date condition

---

[3] The Plan Proponents will provide a supplement of unpublished decisions cited in this reply upon request of the Court.

161840227.2

requiring "Sufficient Funds being available in the Estate to pay claims that must be paid on the Effective Date including Allowed Administrative Claims"). In other words, in the unlikely event that the Court grants the Greyson Parties' request for an allowed administrative claim, such claim will be paid on the later of the Effective Date or such date as the Greyson Parties' claims become allowed.

### 3. The Greyson Parties Objection Premised on Secured Claims Ignores Pending Settlements and Motions for Summary Judgment That Leave the Estate Poised to Resolve All Secured Claims.

The Greyson Parties do little more than repeat the face value of secured claims without reviewing the status of settlements and litigation related to the allowed amount of such claims. Greyson is correct that the face value of secured claims far exceed $47 million. *See* Greyson Parties Obj., at 12-13. Each of these claims, however, is subject to pending dispositive motions for summary judgment or settlement as follows:

- **Fundura.** The total amount of the asserted Fundura claim is $2,374,004.82. *See* Claim No. 335-1. The Court has taken under submission the Trustee's motion for partial summary judgment with respect to the Fundura claim. *See* Adv. Proc. No. 8:24-01011, Docket No. 120. If granted, this secured claim will be avoided and preserved for the benefit of the Estate.

- **Azzure.** The total amount of the asserted Azzure claim is $5 million. *See* Claim No. 127-1. The Plan Proponents and Azzure have stipulated [Docket No. 1518] to permit the use of its alleged cash collateral for the Estate to make all Effective Date payments (among others) and grant Azzure a replacement lien to the extent of any diminution in value of its collateral. The stipulation will permit the Plan to go effective and settlement discussions continue in advance of a continued November 2024 hearing on the Trustee's motion for partial summary judgment.

- **MNS.** The total amount of the asserted MNS claim is $15,275,269.62. *See* Claim No. 1060-1. The parties have filed a motion to approve a compromise [Docket No. 1491] set for hearing in advance of confirmation. The proposed allowed amount of the MNS secured claim will be $500,000 (only $166,666.66 of which must be paid on the Effective Date).

- **Diverse.** The total amount of the asserted Diverse claim is $1,217,700. *See* Claim No. 2489-1. The parties have filed a motion to approve a compromise [Docket No. 1492] set for hearing in advance of confirmation. The proposed allowed amount of the Diverse's secured claim will be $675,000 (only $375,000 of which must be paid on the Effective Date and $70,000 of that will be "returned" to the Estate to settle the avoidance actions).

- **OHP.** The total amount of the asserted OHP claim is $16,938,954. *See* Claim No. 44-1. The parties have filed a motion to approve a compromise [Docket No. 1494] set for hearing in advance of confirmation. The proposed settlement disallows OHP's secured claim, but requires payment on the ownership claim advanced by its affiliate,

FOX ROTHSCHILD LLP
10250 Constellation Boulevard, Suite 900
Los Angeles, California 90067
(310) 598-4150
(310) 556-9828 (fax)

7

in the amount of $250,000, on the Effective Date.

- **PECC.**  The total amount of the asserted PECC claim is $27,929,336.59.  *See* Claim No. 740-2.  On August 15, 2024, the Court entered an order granting partial summary judgment in favor of the Trustee and avoiding the PECC lien as a preference.  *See* Adv. Proc. No. 8:24-01011, Docket No. 144.

Accordingly, the projected Effective Date payments to Holders of Secured Claims is easily in-line with the estimations in the feasibility analysis and future payments are principally contingent on further estate recoveries.

> **4.**    **The Exculpation Is Appropriate, Commonly Permitted, and Consistent with the Language Requested by the United States Trustee.**

The Greyson Parties object to the exculpation provision of the Plan.  The objections appear to range from the unsupported notion that exculpating estate professionals invite "persons to misbehave," Greyson Parties Obj. at 15, to the claim that exculpations of estate professionals are identical to the types of third-party releases rejected by the Supreme Court's decision in *Purdue Pharma*, *id.* at 14.  Neither objection has legs to stand on.[4]

***First***, exculpation of estate fiduciaries and Plan Proponents is customary and permissible in chapter 11. Indeed, the Ninth Circuit has approved exculpation provisions that extend to non-debtor plan proponents. *See Blixseth v. Credit Suisse*, 961 F.3d 1074 (9th Cir. 2020) (approving exculpation of debtor's largest creditor that became a plan "proponent through its direct participation in the negotiations that preceded the adoption of the Plan"); *see also In re Yellowstone Mountain Club, LLC*, 460 B.R. 254, 277 (Bankr. D. Mont. 2011) (approving exculpation that extended to "the Debtors, Committee [of Unsecured Creditors], Credit Suisse and CrossHarbor, who all became, in essence, plan proponents"); *In re Lighthouse Lodge, LLC*, No. 09-52610-RLE, 2010 WL 4053984, at *7 (Bankr. N.D. Cal. Oct. 14, 2010) ("courts have approved exculpation provisions that limited liability to gross negligence, willful misconduct, or breach of fiduciary duty"); *In re W. Asbestos Co.*, 313

---

[4] The exculpation objection is also premised on inadequately supported (and procedurally improper) allegations that have no bearing on confirmation of the Plan.  The factual allegations are presented in a stream of consciousness form without material evidentiary support.  Without adequate support or connection to a legally relevant analytical framework, the Plan Proponents have no basis to offer a substantive response.  The absence of a response to the factual allegations should not be construed as a waiver, forfeiture, limitation of rights or defenses, or election of remedies with respect to the same. All rights are expressly reserved.

FOX ROTHSCHILD LLP
10250 Constellation Boulevard, Suite 900
Los Angeles, California 90067
(310) 598-4150
(310) 556-9828 (fax)

161840227.2

B.R. 832, 846-47 (Bankr. N.D. Cal. 2003) (approving provision that released claims against the plan proponents other than the debtors).

The notion that exculpation permits misbehavior ignores the carve-out requested by the United States Trustee. The exculpation provision in the Plan (including as cited in the Greyson Parties' Objection) expressly excludes exculpations of estate fiduciaries and their professionals from fraud, willful misconduct, and gross negligence. *See* Plan, § IV.B.31 at 32-33. This is a standard provision approved in the Ninth Circuit and other jurisdictions. There is no requirement that any other breaches of professional duties be excluded from a plan exculpation provision. *See In re W. Asbestos Co.*, 313 B.R. at 846 (approving provision that "neither the Plan Proponents nor any of their agents, including their attorneys, shall be liable, other than for willful misconduct, with respect to any action or omission prior to the effective date in connection with the Debtors' operations, the Plan, or the conduct of the bankruptcy case") (emphasis added).

The exculpation provision approved in *Blixseth* is particularly instructive. *See* 961 F.3d 1074. There, as here, the exculpation provision was limited both temporally and in scope to actions related to the reorganization; specifically, "any act or omission in connection with, relating to or arising out of the Chapter 11 Cases, the formulation, negotiation, implementation, confirmation or consummation of this Plan, the Disclosure Statement, or any contract, instrument, release or other agreement or document entered into during the Chapter 11 Cases or otherwise created in connection with this Plan." *Id.* at 1078-79. Furthermore, like here, the exculpation clause extended to major stakeholders who had negotiated the plan of which the exculpation was a "cornerstone." *Id.*; *see also Yellowstone Mountain Club*, 460 B.R. at 277. The exculpation clause also similarly covered the various agents, professionals, and other related parties of the exculpated parties—specifically, "with respect to each of the foregoing Persons, each of their respective directors, officers, employees, agents . . . representatives, shareholders, partners, members, attorneys, investment bankers, restructuring consultants and financial advisors." *Id.* at 267. Here, the Plan exculpation extends only to the major fiduciaries in this case who collectively engaged in countless hours of negotiation to reach a consensual Plan. Finally, as with the exculpation in *Blixseth*, the Plan exculpation excludes fraud, willful misconduct, and gross negligence. *Compare Blixseth*, 961 F.3d at 1079 with Plan, § IV.B.31

FOX ROTHSCHILD LLP
10250 Constellation Boulevard, Suite 900
Los Angeles, California 90067
(310) 598-4150
(310) 556-9828 (fax)

9

at 32-33.  Accordingly, the exculpation provision, as modified, does not render the Plan patently unconfirmable and is, in fact, a permissible provision that the Court may approve at the confirmation hearing.

**Second**, the Greyson Parties make no effort to explain how an exculpation is comparable to a prohibited release under *Harrington v. Purdue Pharma L.P.*, 603 U.S. —, 144 S.Ct. 2071 (2024). Courts predating the *Purdue* decision regularly observe the distinction between nonconsensual third-party releases of prepetition claims and postpetition exculpations of estate fiduciaries.  *See, e.g., Yellowstone Mountain Club, LLC*, 460 B.R. at 271 (providing for postpetition exculpation); *Lighthouse Lodge, LLC*, *supra*, No. 09-52610-RLE, 2010 WL 4053984, at *6 (accord).  Indeed, the dissent in *Purdue* made just that observation.  *See, e.g., Purdue Pharma*, 603 U.S. —, 144 S.Ct. at 2109-2110 (Kavanaugh, J. dissenting) ("Paragraphs [*sic*] 1123(b)(3) and (b)(6) already allow plans to affect creditor claims against non-debtors, such as through releases of creditors' derivative claims, consensual releases, full-satisfaction releases, and exculpation clauses.") (citing *U.S. v. Energy Resources Co.*, 495 U.S. 545 (1990)).  Moreover, even if *Purdue* were read to expansively limit exculpations, the exculpation language is clear that its limit reaches "[t]o the maximum extent permitted by law."  Plan, § V.D. at 49.  This provision obviates the Greyson Parties' effort to prospectively litigate an alleged dispute—if a viable claim is raised, the Court can then decide the scope of the exculpation which it is permitted to do under its retention of jurisdiction.  Accordingly, the Greyson Parties have not established that the exculpation clause as written is prohibited under *Purdue*.

> **5.    The Bankruptcy Code's Bond Requirement Does Not Apply to Postconfirmation Liquidating Trusts.**

The Greyson Parties again object to the provision that the Liquidating Trustee is not required to post a bond.  *See* Greyson Parties Obj., at 20-21.  The Greyson Parties correctly observe that the Trustee is required to post a bond during the pendency of his role as an estate professional.  *See id.*  Indeed, the Trustee complied with his statutory obligation. However, the Greyson Parties fail to acknowledge (as previously cited) that this requirement arises from the Bankruptcy Code.  *See* 11 U.S.C. 322(a) ("a person selected . . . **to serve as trustee in a case under this title** qualifies if before

FOX ROTHSCHILD LLP
10250 Constellation Boulevard, Suite 900
Los Angeles, California 90067
(310) 598-4150
(310) 556-9828 (fax)

FOX ROTHSCHILD LLP
10250 Constellation Boulevard, Suite 900
Los Angeles, California 90067
(310) 598-4150
(310) 556-9828 (fax)

seven days after such selection, and before beginning official duties, such person has filed with the court a bond in favor of the United States conditioned on the faithful performance of such official duties") (emphasis added). The Greyson Parties do not cite to any similar Bankruptcy Code provision (there is none) requiring post-effective date administrators of a liquidating trust to post a bond. Moreover, the proposed Liquidating Trust is a grantor trust that will be established under nonbankruptcy law, which provides for no such requirement. *See, e.g.*, Plan § IV.B.42, at 37. Accordingly, the Greyson Parties have failed to establish that the Liquidating Trustee is required to post a bond before the Plan can be confirmed.

> **6.** **The Objection to the Liquidating Trust Establish No Basis to Deny Confirmation of the Plan and Ignore Both Continued Committee and Court Supervision.**

The Greyson Parties complain that the Liquidating Trust is not in the interests of creditors because it is both inefficient and grants the Trustee too much unfettered discretion. The assertion is both inconsistent and inaccurate. The paramount efficiency achieved by a liquidating trust is the operation of the claims administration process and liquidation without the attendant administrative cost associated with the same degree of Court intervention as a pending bankruptcy case. To insist that the Bankruptcy Case effectively remain pending, yet complain of costs of administration, misses the point of the Liquidating Trust and associated postconfirmation efficiencies. Moreover, the Liquidating Trust includes certain protective features that permit continued creditor oversight through the Post-Confirmation Oversight Committee and requires any disputes to go before the Bankruptcy Court. The unfounded claim that a Liquidating Trust will permit expensive mismanagement ignores the fundamental deals struck by the Trustee and Committee in the Liquidating Trust Agreement.

> **7.** **The Good Faith Confirmation Objection Merely Restates the Greyson Parties' Flawed Objections Once Again.**

The contention that the Plan does not satisfy the good faith confirmation requirements admittedly restates the Greyson Parties' prior objections. As set forth above, and in the Plan Proponents' response to those prior objections, each is without merit. Accordingly, the Court should overrule the Greyson Parties Objection in its entirety.

**C.**     **The Investment Funds Opposition**

The Investment Funds raise a single objection to the negotiated Plan—that it should not provide for the Post-Confirmation Oversight Committee—that does not raise a cognizable objection to the confirmability of the Plan.  The Investment Funds object to the establishment of an oversight committee in an effort to substitute their judgment for that of the Plan Proponents.  The only permissible avenue for the Investment Funds to challenge the negotiated oversight provisions of the Liquidating Trust was through voting.  However, the irony of the Investment Fund Opposition—in which they complain of appropriate creditor representation—is that none of the Investment Funds bothered to vote on the Plan.  *See* Docket No. 1482.  Instead, consumer creditors (the same group derided by the Investment Funds as lacking a material interest) represent almost the totality of voting Class 3A claimants.  *See id.*  Moreover, OHP-CDR, LP, an ***active*** consumer claimant in this case has agreed to amend its vote from rejecting the Plan to accepting the Plan in specific reliance on the protective features of the Post-Confirmation Oversight Committee provisions of the Plan.  *See* Docket No. 1495 at 6.  As discussed more fully below, the Investment Funds Opposition should be overruled.

**1.**     **The Investment Funds' Qualm with the Post-Confirmation Oversight Committee Would Effect a Material Modification of the Plan That Would Require Resolicitation and Materially More Administrative Cost.**

The Investment Funds bury the lede: their proposal would require resolicitation of the Plan with attendant delay and cost to the Estate for an objection that finds no basis in § 1129.  Section 1127(c) provides that a modified plan "shall comply with section 1125 of this title with respect to the plan as modified."  11 U.S.C. § 1127(c).  The resolicitation requirement is triggered by modifications where a claimant "would be apt to *reconsider* acceptance"—"[t]he severity of the modification need not be such as would motivate a claimant to *change* their vote."  *In re Am. Solar King Corp.*, 90 B.R. 808, 824 (Bankr. W.D. Tex. 1988); *see also In re Downtown Inv. Club III*, 89 B.R. 59, 65 (B.A.P. 9th Cir. 1988) ("Material plan modifications require a formal disclosure statement and court approval.").  Here, aside from a key feature of the Plan and Liquidating Trust Agreement, the Post-Confirmation Oversight Committee was a central highlight of the Committee Support Letter solicited to Class 3A General Unsecured Creditors—a group that overwhelmingly voted in favor of the Plan.  *See* Docket

FOX ROTHSCHILD LLP
10250 Constellation Boulevard, Suite 900
Los Angeles, California 90067
(310) 598-4150
(310) 556-9828 (fax)

12

161840227.2

No. 1347 (Confirmation Procedures Order Exs., Ex. E at 4); Docket No. 1482 (ballot tabulation). Indeed, as set forth above, OHP has sought to change its vote to accepting the Plan explicitly because "[t]he [Liquidating] Trust will be subject to an oversight committee, populated by members of the Committee. What this means is that under the Plan, both the Trustee and the Committee will have a role to play in prosecuting claims. OHP therefore supports confirmation, which will ensure that multiple bodies of stakeholders (the Trustee, the Committee, and secured creditors/owners) are aligned in pursuing recovery against wrongdoers." Docket No. 1495 at 6. The Investment Funds do not grapple with the extraordinary administrative burden of their proposal—an odd omission given the purported concern about administrative expense.

**2.      The Investment Funds Double-Down on Their Claim That Consumer-Creditors Have "Virtually No Economic Stake" in Recoveries While Making No Effort to Vote on the Plan.**

The Investment Funds Opposition is once again premised on its own, skewed view that institutional investors are the only meaningful stakeholders in this Bankruptcy Case. The Investment Funds derisively describe the consumer-creditor members of the Committee (who will subsequently become members of the Post-Confirmation Oversight Committee) as "individual member[s that] have no material economic stake in the administration of the Liquidation Trust." Inv. Funds Opp'n, at 5. But the Investment Funds—who assert claims seeking to profit enormous sums off these same consumer-creditors—ignore the composition of the creditor body in this case: approximately 2,000 consumer creditors have asserted claims totaling $280 million on their face. Another class proof of claim filed by the Trustee asserts claims on behalf of another 19,000 potential consumer claimants. While the three Investment Funds combined, asserted claims of $102 million are undoubtedly large, their view that consumer creditors should simply be sidelined because their claims are not meaningful, in the eyes of the Investment Funds, is at best myopic.

More importantly, creditor voting similarly reflects that consumer creditors are the vast majority of Class 3 creditors that bothered to participate in voting. General unsecured creditors voted more than $10 million in claims to approve the Plan in Classes 3A and 3B. *See* Docket No. 1482 (Ballot Tabulation at 4). These over 1,000 approving ballots were completed almost exclusively by

FOX ROTHSCHILD LLP
10250 Constellation Boulevard, Suite 900
Los Angeles, California 90067
(310) 598-4150
(310) 556-9828 (fax)

161840227.2

FOX ROTHSCHILD LLP
10250 Constellation Boulevard, Suite 900
Los Angeles, California 90067
(310) 598-4150
(310) 556-9828 (fax)

1  consumer creditors—those with the same "immaterial" economic stake in the Plan. *See id.* The

2  Investment Funds were not among this group. *See id.* But some commercial creditors did vote—

3  OHP, an undoubtedly active and involved commercial creditor in this case has sought to change its

4  vote to approve the plan specifically in reliance on the Post-Confirmation Oversight Committee. *See*

5  Docket No. 1495 at 6.

6      The premise that creditors like the Investment Funds are the only creditors that have an

7  economic stake in postconfirmation oversight—or that other active commercial creditors would take

8  issue with the current structure—ignores the parties that are actually actively involved in these

9  Bankruptcy Cases. The Investment Funds' questionable opposition is amplified by the fact that they

10  could have voted to accept or reject the Plan but chose not to vote at all. This calls into question their

11  allegation that the Post-Confirmation Oversight Committee comprised mostly of consumer creditors

12  is less likely to participate than large commercial creditors like the Investment Funds.

13      ### 3.    The Investment Funds Opposition Does Not Raise a Confirmation Objection.

14      The Investment Funds shoehorn in a good faith objection under § 1129(a)(3) as window

15  dressing to appear to raise a confirmation issue. *See* Inv. Funds Opp'n, at 13-14. However, the

16  Investment Funds do little more than cite general principles of law and claim that the Plan Proponents

17  do not satisfy the good faith standard with respect to the Post-Confirmation Oversight Committee.

18  But "[i]n order to satisfy the statutory requirement of good faith, a plan must be intended to achieve

19  a result consistent with the objectives of the Bankruptcy Code." *In re Corey*, 892 F.2d 829, 835 (9th

20  Cir. 1989). The opposition cites to no inconsistencies with the Bankruptcy Code. Instead, the

21  opposition appears aimed at upsetting the terms of a heavily negotiated feature of the Plan: the

22  Liquidating Trust Agreement. The Plan Proponents submit that the only avenue to raise this

23  complaint was through voting which the Investment Funds opted to skip.

24      The Investment Funds' principal complaint is that the establishment of a Liquidating Trustee

25  and Post-Confirmation Oversight Committee raises the specter of duplicative administrative costs.

26  Inv. Funds Opp'n, at 9. However, despite reviewing the document in detail, the Investment Funds do

27  not identify a single scenario where they anticipate duplicative expense based on the language of the

28  Liquidating Trust Agreement. The Investment Funds acknowledge that the Post-Confirmation

Oversight Committee's rights are limited to specifically enumerated decisions. *See* Inv. Funds Opp'n, at 11 (citing Liquidating Trust Agmt., Art. 2.10(c)). But in their effort to couch the Post-Confirmation Oversight Committee's rights as unfettered, the Investment Funds ignore that disputes will be resolved by the Court:

> If the Liquidation Trustee believes that the Post-Confirmation Committee's decision with respect to the actions described in Section 2.10(c)(i), (iii), and (iv) would result in a breach of the Liquidation Trustee's fiduciary duty or duties, the Liquidation Trustee may seek an order from the Bankruptcy Court resolving such dispute, subject to the Post-Confirmation Committee's right to object.

Liquidating Trust Agmt., Art. 2.10(d). They Investment Funds' claim that this release valve is "moot" simply ignores the structure of the agreed provisions of the Liquidating Trust Agreement. *See* Investment Funds Opp'n, at 13. Indeed, these limited provisions—and the Plan language granting exclusive objection rights—advances the efficient administration of postconfirmation liquidation efforts by curtailing individual creditor challenges to decisions of the Liquidating Trustee. *See* Liquidating Trust Agmt., Art. 2.10(c).

The Investment Funds find little support for their bare "duplication" catchphrase in the limited authority cited in the opposition. The Investment Funds acknowledge that their citations to cases finding committees "duplicative and unnecessary" are "not strictly controlling" in the context of plan confirmation. Inv. Fund Opp'n, at 10. By contrast, it is common practice, in this Circuit and others, to include a liquidating trustee and a committee in postconfirmation governance of complex cases. *See, e.g.*, *In re Verity Health Sys. of Cal., Inc.*, No. 2:18-bk-20151-ER, Docket No. 5475, at ECF p. 11, 38, 41 (Bankr. C.D. Cal. Aug. 12, 2020) (confirming plan with postconfirmation committee, postconfirmation board of directors, and liquidating trustee); *In re PG & E Corp.*, No. 19-30088, Docket No. 8053, ECF pp. 22-23 (Bankr. N.D. Cal. June 20, 2020) (establishing Fire Victims Trust Oversight Committee, Fire Victim Trustee, and Claims Administrator); *In re Boxed, Inc.*, No. 23-10397 (BLS), Docket No. 424 (Bankr. D. Del. Aug. 31, 2023); *In re Am. Physician Partners, LLC*, No. 23-11469 (BLS), Docket No. 1131 (Bankr. D. Del. Mar. 15, 2024); *In re Quanergy Sys., Inc.*, No. 22-111305 (CTG), Docket No. 479 (Bankr. D. Del. Nov. 8, 2023); *In re Legacy IMBDS, Inc.*, No. 23-10852 (KBO), Docket No. 997 (Bankr. D. Del. Feb. 21, 2024). The notion that a post-

FOX ROTHSCHILD LLP
10250 Constellation Boulevard, Suite 900
Los Angeles, California 90067
(310) 598-4150
(310) 556-9828 (fax)

15

161840227.2

1    confirmation committee with expressly limited powers would result in unarticulated "duplication"

2    hardly suggests the Plan is proposed in bad faith.

3          The Investment Funds' appropriate method of voicing concern over the provisions of the joint

4    Plan was through voting.  The Investment Funds are not entitled to dictate terms of a plan of which

5    they are not proponents—particularly concerning the Plan Proponents' selection of postconfirmation

6    oversight.  *See In re PG & E Corp.*, 617 B.R. 671, 686 n.7 (Bankr. N.D. Cal. 2020) ("Creditors here

7    also asserted that they should be permitted to vet Trust Oversight Committee members as they are

8    appointed, and the court OVERRULES this objection as there is no legal basis for the court to order

9    this.").  Accordingly, the Investment Fund Opposition should be overruled because it fails to identify

10    any issue that concerns the confirmability of the Plan and ignores the negotiated resolution between

11    the Trustee and Committee along with the voice of creditors that have (unlike the Investment Funds)

12    actually voted.

**II.**

**<u>RESPONSE TO INFORMAL OBJECTION</u>**

15          The Plan Proponents were contacted by counsel to Resolution Ventures with an informal

16    request for clarification of the Plan language concerning the amount of outstanding super-priority

17    loans, under § 364(c).  In light of certain surcharge orders, the Plan does not reflect the current amount

18    of certain outstanding super-priority loans.  Additionally, Resolution Ventures was omitted from the

19    list of potential Holders of Class 2A claims.  The Plan Proponents propose to resolve the informal

20    objection by incorporating agreed clarifying language in the Confirmation Order that (i) Resolution

21    Ventures is among the Holders of Class 2A claims, and (ii) Holders of Allowed Class 2A claims are

22    entitled to payment in accordance with the Plan to the extent such Holder holds an Allowed Class 2A

23    claim on the Effective Date.  The Plan Proponents submit that any language included in the

24    Confirmation Order to the satisfaction of Resolution Ventures clarifying these issues will resolve the

25    informal objection.

**III.**

**<u>RESERVATION OF RIGHTS</u>**

28          The Plan Proponents reserve all rights to make further revisions and modifications to the Plan

FOX ROTHSCHILD LLP
10250 Constellation Boulevard, Suite 900
Los Angeles, California 90067
(310) 598-4150
(310) 556-9828 (fax)

16

or Confirmation Order, as provided herein, and under applicable law.  Moreover, the Plan Proponents anticipate submitting a revised form of Confirmation Order to the extent necessary to address any other modifications as may be required by the Court at the hearing on confirmation of the Plan.  The Plan Proponents expressly reserve all rights with respect to the foregoing.

## IV.

## CONCLUSION

For the foregoing reasons, the Plan Proponents respectfully request that the Court: (i) overrule the Oppositions; (ii) find that the evidence submitted by the Plan Proponents is sufficient to satisfy their burden of proof for the Court to confirm the Plan, pursuant to LBR 9013-1(i); (iii) find that the Plan can and should be confirmed, pursuant to applicable provisions of the Bankruptcy Code, including § 1129; and (iv) grant the Plan Proponents such other and further relief as is just and appropriate under the circumstances.

DATED this 22nd day of August 2024

**FOX ROTHSCHILD LLP**

By:    */s/ Nicholas A. Koffroth*
    Keith C. Owens (Bar No. 184841)
    Nicholas A. Koffroth (Bar No. 287854)
    Constellation Place
    10250 Constellation Blvd., Suite 900
    Los Angeles, California 90067

*Counsel for the Committee*

**MARSHACK HAYS WOOD LLP**

By:  *D. Edward Hays*
    D. Edward Hays (Bar No. 162507)
    Laila Masud (Bar No. 311731)
    870 Roosevelt
    Irvine, California 92620

*General Counsel for Chapter 11 Trustee*

FOX ROTHSCHILD LLP
10250 Constellation Boulevard, Suite 900
Los Angeles, California 90067
(310) 598-4150
(310) 556-9828 (fax)

161840227.2

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is 10250 Constellation Boulevard, Suite 900, Los Angeles, CA 90067.

A true and correct copy of the foregoing documents entitled:  JOINT OMNIBUS REPLY OF THE CHAPTER 11 TRUSTEE AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS IN SUPPORT OF CONFIRMATION OF MODIFIED FIRST AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION (DATED JUNE 14, 2024) on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.**      **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document.  On 8/22/2024, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Bradford Barnhardt     bbarnhardt@marshackhays.com, bbarnhardt@ecf.courtdrive.com,alinares@ecf.courtdrive.com
- Eric Bensamochan     eric@eblawfirm.us, G63723@notify.cincompass.com
- Michael Jay Berger     michael.berger@bankruptcypower.com, yathida.nipha@bankruptcypower.com;michael.berger@ecf.inforuptcy.com
- Ethan J Birnberg     birnberg@portersimon.com, reich@portersimon.com
- Peter W Bowie     peter.bowie@dinsmore.com, caron.burke@dinsmore.com
- Ronald K Brown     ron@rkbrownlaw.com
- Christopher Celentino     christopher.celentino@dinsmore.com, caron.burke@dinsmore.com
- Shawn M Christianson     cmcintire@buchalter.com, schristianson@buchalter.com
- Randall Baldwin Clark     rbc@randallbclark.com
- Leslie A Cohen     leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com;clare@lesliecohenlaw.com
- Michael W Davis     mdavis@dtolaw.com, ygodson@dtolaw.com
- Anthony Paul Diehl     anthony@apdlaw.net, Diehl.AnthonyB112492@notify.bestcase.com,ecf@apdlaw.net
- Jenny L Doling     jd@jdl.law, dolingjr92080@notify.bestcase.com;15994@notices.nextchapterbk.com;jdoling@jubileebk.net
- Daniel A Edelman     dedelman@edcombs.com, courtecl@edcombs.com
- Meredith Fahn     fahn@sbcglobal.net
- William P Fennell     william.fennell@fennelllaw.com, luralene.schultz@fennelllaw.com;wpf@ecf.courtdrive.com;hala.hammi@fennelllaw.com;naomi.c walinski@fennelllaw.com;samantha.larimer@fennelllaw.com
- Alan W Forsley     alan.forsley@flpllp.com, awf@fkllawfirm.com,awf@fl-lawyers.net,addy@flpllp.com
- Marc C Forsythe     mforsythe@goeforlaw.com, mforsythe@goeforlaw.com;dcyrankowski@goeforlaw.com
- Jeremy Freedman     jeremy.freedman@dinsmore.com, nicolette.murphy@dinsmore.com
- Eric Gassman     erg@gassmanlawgroup.com, gassman.ericb112993@notify.bestcase.com
- Christopher Ghio     christopher.ghio@dinsmore.com, nicolette.murphy@dinsmore.com;angelica.urena@dinsmore.com;deamira.romo@dinsmore.com
- Amy Lynn Ginsburg     efilings@ginsburglawgroup.com
- Eric D Goldberg     eric.goldberg@dlapiper.com, eric-goldberg-1103@ecf.pacerpro.com
- Jeffrey I Golden     jgolden@go2.law, kadele@ecf.courtdrive.com;cbmeeker@gmail.com;lbracken@wgllp.com;dfitzgerald@go2.law;gol den.jeffreyi.b117954@notify.bestcase.com

- Richard H Golubow    rgolubow@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com
- Mark Mark Good    mark@markgood.com
- David M Goodrich    dgoodrich@go2.law, kadele@go2.law;dfitzgerald@go2.law;wgglip@ecf.courtdrive.com
- D Edward Hays    ehays@marshackhays.com, ehays@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@ecf.courtdrive.com
- Alan Craig Hochheiser    ahochheiser@mauricewutscher.com, arodriguez@mauricewutscher.com
- Garrick A Hollander    ghollander@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com
- Brian L Holman    b.holman@musickpeeler.com
- Richard L. Hyde    rhyde@awglaw.com
- Peter L Isola    pisola@hinshawlaw.com, rmojica@hinshawlaw.com,iking@hinshawlaw.com
- Razmig Izakelian    razmigizakelian@quinnemanuel.com
- Sara Johnston    sara.johnston@dinsmore.com
- Sweeney Kelly    kelly@ksgklaw.com
- Joon M Khang    joon@khanglaw.com
- Ira David Kharasch    ikharasch@pszjlaw.com
- Meredith King    mking@fsl.law, ssanchez@fsl.law;jwilson@fsl.law
- Nicholas A Koffroth    nkoffroth@foxrothschild.com, khoang@foxrothschild.com
- David S Kupetz    David.Kupetz@lockelord.com, mylene.ruiz@lockelord.com
- Christopher J Langley    chris@slclawoffice.com, langleycr75251@notify.bestcase.com;ecf123@casedriver.com;john@slclawoffice.com
- Kelli Ann Lee    Kelli.lee@dinsmore.com, kristy.allen@dinsmore.com
- Matthew A Lesnick    matt@lesnickprince.com, matt@ecf.inforuptcy.com;jmack@lesnickprince.com
- Daniel A Lev    daniel.lev@gmlaw.com, cheryl.caldwell@gmlaw.com;dlev@ecf.courtdrive.com
- Britteny Leyva    bleyva@mayerbrown.com, 2396393420@filings.docketbird.com;KAWhite@mayerbrown.com;ladocket@mayerbrown.com
- Marc A Lieberman    marc.lieberman@flpllp.com, safa.saleem@flpllp.com,addy@flpllp.com
- Michael D Lieberman    mlieberman@lipsonneilson.com
- Yosina M Lissebeck    Yosina.Lissebeck@Dinsmore.com, caron.burke@dinsmore.com
- Mitchell B Ludwig    mbl@kpclegal.com, kad@kpclegal.com
- Daniel S March    marchlawoffice@gmail.com, marchdr94019@notify.bestcase.com
- Kathleen P March    kmarch@bkylawfirm.com, kmarch3@sbcglobal.net,kmarch@sbcglobal.net
- Mark J Markus    bklawr@bklaw.com, markjmarkus@gmail.com;markus.markj.r112926@notify.bestcase.com
- Richard A Marshack (TR)    pkraus@marshackhays.com, ecf.alert+Marshack@titlexi.com
- Laila Masud    lmasud@marshackhays.com, lmasud@ecf.courtdrive.com;lbuchanan@marshackhays.com;alinares@ecf.courtdrive.com
- Sarah S. Mattingly    sarah.mattingly@dinsmore.com
- William McCormick    Bill.McCormick@ag.tn.gov
- Kenneth Misken    Kenneth.M.Misken@usdoj.gov
- Byron Z Moldo    bmoldo@ecjlaw.com, aantonio@ecjlaw.com,dperez@ecjlaw.com
- Glenn D. Moses    gmoses@venable.com, cascavone@venable.com;ipmalcolm@venable.com;jadelgado@venable.com
- Jamie D Mottola    Jamie.Mottola@dinsmore.com, jhanawalt@ecf.inforuptcy.com
- Alan I Nahmias    anahmias@mbn.law, jdale@mbn.law
- Victoria Newmark    vnewmark@pszjlaw.com
- Jacob Newsum-Bothamley    jacob.bothamley@dinsmore.com, angelica.urena@dinsmore.com;deamira.romo@dinsmore.com
- Queenie K Ng    queenie.k.ng@usdoj.gov
- Israel Orozco    israel@iolawcorp.com

- Keith C Owens    kowens@foxrothschild.com, khoang@foxrothschild.com
- Lisa Patel    lpatel@lesnickprince.com, jmack@lesnickprince.com;jnavarro@lesnickprince.com
- Michael R Pinkston    rpinkston@seyfarth.com, jmcdermott@seyfarth.com,sfocalendar@seyfarth.com,5314522420@filings.docketbird.com,bankruptcydocket@seyfarth.com
- Douglas A Plazak    dplazak@rhlaw.com
- Tyler Powell    tyler.powell@dinsmore.com, jennifer.pitcock@dinsmore.com;rosetta.mitchell@dinsmore.com
- Daniel H Reiss    dhr@lnbyg.com, dhr@ecf.inforuptcy.com
- Ronald N Richards    ron@ronaldrichards.com, 7206828420@filings.docketbird.com
- Vanessa Rodriguez    vanessa.rodriguez@dinsmore.com, angelica.urena@dinsmore.com
- Kevin Alan Rogers    krogers@wellsmar.com
- Gregory M Salvato    gsalvato@salvatoboufadel.com, calendar@salvatolawoffices.com;jboufadel@salvatoboufadel.com;gsalvato@ecf.inforuptcy.com
- Olivia Scott    olivia.scott3@bclplaw.com
- Jonathan Serrano    jonathan.serrano@dinsmore.com
- Maureen J Shanahan    Mstotaro@aol.com
- Paul R Shankman    PShankman@fortislaw.com, info@fortislaw.com
- Zev Shechtman    Zev.Shechtman@saul.com, zshechtman@ecf.inforuptcy.com;easter.santamaria@saul.com
- Jeffrey M Singletary    jsingletary@swlaw.com, rmckay@swlaw.com
- Leslie Skorheim    leslie.skorheim@usdoj.gov
- Adam D Stein-Sapir    info@pfllc.com
- Howard Steinberg    steinbergh@gtlaw.com, pearsallt@gtlaw.com;NEF-BK@gtlaw.com;howard-steinberg-6096@ecf.pacerpro.com
- Andrew Still    astill@swlaw.com, kcollins@swlaw.com
- Michael R Totaro    Ocbkatty@aol.com
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov
- William J Wall    wwall@wall-law.com
- Sharon Z. Weiss    sharon.weiss@bclplaw.com, raul.morales@bclplaw.com,REC_KM_ECF_SMO@bclplaw.com
- Johnny White    JWhite@wrslawyers.com, jlee@wrslawyers.com
- Reina Zepeda    rzepeda@omniagnt.com

**2.    SERVED BY UNITED STATES MAIL**:  On 8/22/2024, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows.

Debtor
The Litigation Practice Group P.C.
17542 17th St., Suite 100
Tustin, CA 92780

**See attached for additional parties**

**3.    SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on 8/22/2024, I served the following persons and/or entities by personal delivery,  mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

1

**Served By Personal Delivery**

2

The Honorable Scott C. Clarkson
United States Bankruptcy Court, Central District of California

3

411 West Fourth Street, Suite 5130 / Courtroom 5C
Santa Ana, CA 92701-4593

4

5

**Additional Parties Served by U.S. Mail**

6

7

**Creditors who have the 20 largest unsecured claims**

8

Debt Validation Fund II, LLC
5075 Lower Valley Road,

9

Atglen, PA 19310

10

MC DVI Fund 1, LLC; MC
DVI Fund 2, LLC

11

598 Cottonwood Dr.,
Glenview, IL 60026

12

13

Validation Partners LLC
1300 Sawgrass Pkwy, Ste. 110
Sunrise, FL 33323

14

15

Marich Bein LLC
99 Wall Street, Ste 2669
New York, NY 10005

16

17

Business Centers of America
1100 Sir Francis Drake Blvd,
Ste 1, Kentfield, CA 94904

18

19

JP Morgan Chase
3 Park Plaza, Ste 900
Irvine, CA 92614

20

21

CA Franchise Tax Board
PO Box 942857
Sacramento, CA 94257-0511

22

23

Outsource Accelerator Ltd
City Marque Limited

24

Unit 8801-2 Bldg. 244-248
Des Voeux Rd.

25

Central Hong Kong

26

Collaboration Advisors
400 Dorla Court
Zephyr Cove, NV 89448

27

28

Anthem Blue Cross
PO Box 511300
Los Angeles, CA 90051-7855

Azevedo Solutions Groups, Inc.
420 Adobe Canyon Rd.
Kenwood, CA 95452

Debt Pay Pro
1900 E Golf Road, Suite 550
Schaumburg, IL 60173

Sharp Business Systems
8670 Argent St
Santee, CA 92071

Tustin Executive Center
1630 S Sunkist Steet, Ste A
Anaheim, CA 92806

Exela Enterprise Solutions
2701 E. Grauwyler Road
Irving, TX 75061

Netsuite-Oracle
2300 Oracle Way
Austin, TX 78741

Credit Reporting Service Inc
548 Market St, Suite 72907
San Francisco, CA 94104-5401

Document Fulfillment Services
2930 Ramona Ave #100
Sacramento, CA 95826

Executive Center LLC
5960 South Jones Blvd
Las Vegas, NV 89118

LexisNexus
15500 B Rockfield Blvd
Irvine, CA 92618

**<u>Secured Creditors</u>**

Diverse Capital LLC
323 Sunny Isles Blvd., Suite 503
Sunny Isles, FL 33154

City Capital NY
1135 Kane Concourse
Bay Harbour Islands, FL 33154

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 8/22/2024 | Kimberly Hoang | /s/ Kimberly Hoang |
| --- | --- | --- |
| *Date* | *Printed Name* | *Signature* |