

FILED & ENTERED

AUG 27 2024

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY bolte        DEPUTY CLERK

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – Santa Ana Division

In re:

The Litigation Practice Group P.C.

                                    Debtor(s).
_____
Richard A. Marshack, Chapter 11 Trustee,

                                    Plaintiff(s),

     v.

Tony Diab, et al.,

                                    Defendant(s).
_____

CHAPTER 11

Case No.:  8:23-bk-10571-SC
Adv No:   8:23-ap-01046-SC

**ORDER DENYING GREYSON'S MOTION TO VACATE THE PRELIMINARY INJUNCTION**

Date:      May 1, 2024
Time:      1:30 PM
Courtroom: 5C

   Before the Court is the "Motion of Greyson Law Center PC, for an Order, Made in Both Adversary Proceeding and LPG's Main BKY Case: (1) Vacating the 5/6/23 Lockout and Preliminary Injunction Order, as to Greyson, Because that Order was Obtained, as to Greyson, Based on the False Allegation in the Sealed, Ex Parte, Motion Trustee Marshack's Attorney, Celentino, Filed, Moving for that Order, that Greyson was an Alter Ego of LPG; and (2) Ordering Celentino to Immediately Return all Greyson's Seized Propert [sic] to Greyson, and to Immediately Restore Greyson's Access to all of

Greyson's Data, Which Celentino Seized and Locked Greyson out of on 5/26/23 and on 6/12/23, A Lockout Continuing to Present"[1] ("Motion") filed December 6, 2023 [1046 Adv. Dk. 290],[2] which came for hearing on May 1, 2024. Appearances are as noted on the record.

The Motion seeks to vacate, as to Greyson Law Center, P.C. ("Greyson") only, the Order on the Trustee, Richard Marshack's Omnibus Emergency Motion for (1) Turnover of Estate Property and Recorded Information Pursuant to 11 U.S.C. §542; (2) Preliminary Injunction; (3) Lock-Out; (4) Re-direction of United States Parcel Services Mail; (5) Order to Show Cause re Compliance with Court Order; and (6) Other Relief as Necessary to Efficient Administration of This Matter, entered May 26, 2023 [1046 Adv. Dk. 13] ("Temporary Restraining Order" or "TRO"). The Motion also seeks to order the Chapter 11 Trustee, Richard Marshack's counsel, Christopher Celentino and his field agents to immediately, within 48 hours of the Court's ruling, restore Greyson's access to all Greyson's email accounts, the emails thereon and to Greyson's website. Movant seeks the foregoing relief, arguing that the TRO and Preliminary Injunction Order were obtained on the false allegation that Greyson was an alter ego of Debtor.

Based upon the Motion, the evidence listed below, the lack of evidence as also set forth below, and the docket as a whole, the discussion on the record at the hearing, including the agreement by the parties that an evidentiary hearing was not required, and as set forth in detail within this decision, the Motion is DENIED.[3] The evidentiary objections raised by both parties are OVERRULED.[4]

---

[1] All stylistic and formatting emphases by Greyson in its pleadings, including bolding, underling, and capitalization, have been omitted from the quotes herein, unless otherwise noted.

[2] Greyson Law Center PC filed the same motion in the main bankruptcy case [Dk. 749] and the adversary on December 6, 2023 [1046 Adv. Dk. 290]. All references to the adversary docket will be cited to as "[1046 Adv. Dk. ___]" and all references to the main case will be cited to as "[Dk. ___]." This order shall be entered in both the main case and the adversary case.

[3] The Court does, however, approve the Trustee's offer to return Greyson's website and domain to Greyson based upon the conditions ordered herein.

[4] All evidentiary objections by all parties are overruled and the Court gives the evidence the weight it deserves. Further, the Court does not use the evidence objected to substantively in reaching its

## I. Background – Litigation Practice Group, P.C.

The Litigation Practice Group ("LPG" or "Debtor") filed its Chapter 11 bankruptcy on March 20, 2023 ("Petition Date").  Through the various proceedings and evidence produced in both the main case and the various adversary proceedings, including but not limited to various Motions for Temporary Restraining Orders, Preliminary Injunctions, Motions to Dismiss, a Motion for Appointment of a Chapter 11 Trustee, a Motion to Sell Assets, a multitude of pleadings filed by both secured and unsecured creditors (supported by evidence presented under oath) in support of their claims, and especially the pleadings and evidence presented by the "Watchdog of the Bankruptcy System" aka the Office of the United States Trustee (an arm of the United States Department of Justice), *it is clear to this Court that Debtor, since its pre-petition inception (and through the time of the appointment of the Chapter 11 Trustee) was, in the Court's opinion, operating a criminal enterprise.* It is also clear to this Court that the motion to vacate the TRO and Preliminary Injunction as to Greyson has no merit, is not supported by the evidence before the Court, and that the evidence provided by Greyson is based on declarative evidence arising from principals of Debtor, operators of Greyson, and operators of Debtor's previous illegal or unethical pre-petition activities, and is simply unconvincing, fabricated, and/or uncredible to this Court.

The Court also finds that Greyson Law Center, PC ("Greyson") and the two related individuals Phuong (aka Jayde) Trinh ("Jayde") and Han Trinh ("Han") (together, the "Trinhs" or "Trinh Sisters"), were closely associated with the fraudulent, unethical practices of Debtor, and that Greyson was a byproduct entity spun-off from Debtor with the direct assistance of the Trinhs. As Debtor's enterprise spiraled out of control from fraudulent, unethical mismanagement, as well as possible criminal activities, the evidence demonstrates that the Trinhs were powerful employees of Debtor

---

determination herein but recites portions to present a fulsome picture of the events which have transpired related to this case as a whole.

who in the end disembarked from Debtor's sinking ship and participated in significant

aspects of the creation and management of Greyson.

Pre-petition, Debtor was a law firm that allegedly provided consumer debt

resolution services on a nationwide basis, with client files numbering in the several tens

of thousands, if not more.[5]  To be clear, operations of law firms with a declared specialty

of assisting consumer debtors with financial difficulties are not normally criminal

enterprises. The distinction to be made is *how* any law firm, and its lawyers and staff,

operates the legal services entity, as well as its truly intended purpose.[6]

---

[5] It is important to note that this Court has never received any significant and trustworthy evidence that Debtor accomplished meaningful results for its clients, but only anecdotal examples of viable success for its clients. By reviewing the Estate's claims register, there is evidence of consumer claims for the fraud and demanded but undelivered refunds of approximately $500 million. There is ample evidence that the pre-petition Debtor never placed the collected funds into an attorney-client trust account, and that Debtor or its principals simply looted the payments received through the client automatic withdrawals, stiffing both the clients and outside attorneys who may have been working on client cases with the hopes of being paid. There is also evidence before the Court that Debtor was running a Ponzi scheme and paying some outside (or "network") attorneys with funds obtained from new clients. In this case, it appears that some of the "lenders" may have been serving as "investors," hoping for very high returns before "the music stopped." The Ninth Circuit has recently explained, "[b]y definition, a Ponzi scheme is destined to fail because the pool of available investors is not limitless. When the Ponzi scheme operator's pool of investors inevitably runs dry, the scheme collapses and the swindler and their entities often end up in bankruptcy or equitable receivership. *See generally* David R. Hague, Expanding the Ponzi Scheme Presumption, 64 DePaul L. Rev. 867 (2015).  In bankruptcy, the court-appointed trustee is tasked with taking immediate control of the entity, ceasing ongoing fraudulent activity, locating and collecting assets for the bankruptcy or receivership estate, and achieving a final, equitable distribution of the remaining assets. *See* 11 U.S.C. § 704." *Kirkland v. Rund (In re EPD Inv. Co., LLC)*, 2024 U.S. App. LEXIS 21363, at *15 (9th Cir. Aug. 23, 2024). Finally, there is evidence that Debtor was encumbering (or as some creditors assert, "double or triple selling") their accounts or receivables to multiple lenders. With respect to Greyson's requested Administrative Claim [Dk. 676], and as more fully described in the concurrently entered order denying the claim, there has been no evidence presented that any work allegedly performed by Greyson assisted any clients or added any value to the Estate. This will be further explained in this decision.

[6] This, of course, was the early major concern raised by this Court, the Office of the U.S. Trustee, and proponents of allowing Debtor to remain in Chapter 11 as a going concern after the appointment of the Chapter 11 Trustee on May 8, 2023. Straightforwardly, the Court and others had to consider whether a business (the law firm) could be operationally reformed by the Trustee to morph into strict compliance with various state and federal laws that regulate law firm/lawyer operations as well as consumer protection regulations. The U.S. Trustee vigorously, honestly, and in good faith advocated that Debtor (pre-appointment of the Trustee) should be sent to the dust pile of all illegally or unethically operated law firms. The Trustee, vigorously, honestly, and in good faith, advocated that the law firm be reformed and then monetized for the benefit of the creditors of the bankruptcy Estate. After careful consideration, and with significant consideration of all creditors, including the over 40,000 consumer creditors/clients of the Debtor, the Court provided the Chapter 11 Trustee and the Committee of Unsecured Creditors with the opportunity to (1) end the illegal practices of Debtor and (2) attempt to recapture estate value and provide recovery to the creditors of the Estate. At the time of this writing, the Court, through various status reports, the reports of a Court Appointed Ethics Compliance Monitor, and the pleadings and evidence

Through a system of advertising and a network of referring lawyers throughout the country, this Debtor "signed up" clients facing significant financial difficulty and promised results (i.e. meaningful relief from creditor pressure) with a full money-back guarantee. *See* Adv. 24-01011, Dk. 104-1, Decl. Nancy Rapoport, ¶ 7. As more explicitly stated below, Debtor's unethical and most likely illegal enterprise was in operations at all times prior to the appointment of the Trustee.  Once a client was signed up, the client was required to pay Debtor, primarily through the automatic system of monthly withdrawals controlled by Debtor from the clients' bank accounts. Like almost every streaming system in the country, the automatic withdrawals were made monthly, where it is made difficult for the consumer to cancel or "make it stop."[7]

An important protection (perhaps one of the most important protections) afforded clients represented by lawyers requires that funds paid lawyers must be maintained in a client trust account until earned. Debtor did not provide this protection. The Court has evidence from both the reports filed by the Trustee, the schedules and statements of financial affairs presented by Debtor, and the State Bar of California (received pursuant to Judicial Notice) that almost all of the funds which were not transferred to complaining secured creditors or unhappy "network" counsels (just to placate them enough) may have been looted by the principal or principals controlling the pre-petition Debtor.

---

presented to it throughout this case, concludes that at least the first goal may have been reached. Concerning the second goal (creditor recovery), the Court and the creditors still await revealing results.

[7] Streaming enterprises didn't invent this process. For those senior enough to remember, the "Book of the Month Club" and various iterations (including hard copy Encyclopedia sales, where the companies "sold" the stream of books arriving each month and immediately sold the monthly payments to a third party) developed the highly successful automatic invoicing process, which if ignored would result in massive bill collector harassment and legal judgments to the unsuspecting consumer. Gym memberships were sold and their accounts were laid off in a similar fashion. These activities eventually resulted in the passage of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 –1692, which was approved in 1977 (and subsequently amended). It is a consumer protection law, attempting to prevent abusive debt collection practices. The Act created guidelines under which debt collectors may conduct business, defines rights of consumers involved with debt collectors, and prescribes penalties and remedies for violations of the Act.

Richard Marshack ("Marshack" or "Trustee") was appointed as Chapter 11 Trustee on May 8, 2023, following the entry of an order directing the United States Trustee to Appoint a Chapter 11 Trustee. *See* Order [Dk. 58]. Shortly after his appointment, on May 25, 2023[8], the Trustee filed an adversary complaint alleging that Debtor was secretly being operated by a California disbarred attorney, Anthony Diab ("Tony Diab" or "Diab") and operating in a manner inconsistent with federal and state law. As alleged by the Trustee, Diab created a web of affiliated businesses designed to locate and funnel clients who were victims of predatory lending or subject to uncollectible debts to various other law firms, which were either alter egos or significantly connected to Debtor.

Greyson and Phoenix Law, P.C. ("Phoenix") were among the entities originally identified in the Trustee's complaint as alter egos[9]. The complaint also alleged that at or around the Petition Date, Diab transferred approximately 40,000 files to Phoenix. Greyson serviced some of those clients.[10]

Phoenix returned all the client files it had received from Debtor back to Debtor pursuant to a Stipulation for Judgment (1) Avoiding, Recovery, and Preserving Transfers to Defendant, Phoenix Law Group, Inc., (2) Turning Over All Transferred Property to the Trustee and (3) Dismissing Without prejudice Defendants William Taylor Carss and Marie Eeya Tan filed June 27, 2023 ("Avoidance Stipulation") [1046 Adv. Dk. 77], approved after a hearing held on July 21, 2023, by an order entered August 7, 2023 [Dk. 365][11]. Pursuant to the Avoidance Stipulation, its parties agreed that the

---

[8] The adversary proceeding was filed without notice to parties based upon the assertion of exigent circumstances, and the entry of a temporary restraining order issued the next day, on May 26, 2023 [1046 Adv. Dk. 13, and then was amended at 1046 Adv. Dk. 21]. The adversary proceeding was subsequently numbered 8:23-ap-01046-SC and a preliminary injunction was subsequently issued on June 23, 2024 [1046 Adv. Dk. 70].

[9] *See,* ¶ 59 of the complaint. The Trustee subsequently revised his allegation as to the alter ego status of Greyson in the amended complaint filed June 15, 2023 [1046 Adv. Dk. 62].

[10] *See*, ¶ 61 of the complaint.

[11] Mr. Plazak, Greyson, Han, and Jayde's former counsel received NEF notice of the entered order.

transfers of client files and all material and property related thereto including but not limited to, payments, communications, and documents to Phoenix were fraudulent and the Trustee was entitled to judgment avoiding, recovering, and preserving, the transfers pursuant to 11 U.S.C. § 547, 548, and 550.

The Avoidance Stipulation further provided, inter alia, that:

> Any and all liability whether at law or equity relating in any way to Phoenix's handling of the Transfers including the Files that arose or came into existence following the date of their transfer to Phoenix until Trustee closes a court-approved sale to a third-party buyer ("Post Transfer Claims") will remain with Phoenix. Phoenix, Mr. Carss, and Ms. Tan shall use their best efforts to cooperate with Trustee and his retained professionals to provide services to the clients until closing, and nothing herein shall impose or create any liability for Post Transfer Claims on Trustee or Debtor's Estate.

Avoidance Stipulation, ¶4 [1046 Adv. Dk. 77].

The Trustee moved for the sale of the business, which sale was approved by an order entered August 2, 2023 [Dk. 352].[12]

On December 6, 2023, Greyson filed its Motion seeking to (1) vacate the May 26, 2023 Lockout and Preliminary Injunction Order as to Greyson, and (2) have returned certain seized property [1046 Adv. Dk. 290].[13]

## II. Han Trinh, Jayde Trinh, and the Two Greyson Entities

### A. Han Trinh and Jayde Trinh

From January 2021 to December 2022, Han Trinh was the Legal Assistant for LPG, and then in January 2023, Han became the Administrator of LPG. [*See* 1046 Adv. Dk. 47-2, Decl. Han Trinh, ¶2]. Han asserts that when she first started working at LPG, she earned an hourly rate of $17.31, but by June 2, 2023, she was earning an annual

---

[12] A Federal and State consumer law compliance monitor was appointed by the Court to monitor the buyer's compliance with various consumer protection requirements.

[13] Due the voluminous pleadings filed in connection with the Motion, this decision attempts to recite all the pleadings and evidence before it, with the caveat that if its written recitation has missed a listing, all of the evidence and the pleadings have been considered. The parties should be assured that this Court has carefully reviewed all of the pleadings and evidence before it.

salary of $300,000. [Dk. 674, Decl. Han Trinh, ¶ 7]. Jane Dearwester, an attorney who previously worked for LPG, states in her declaration that Han was referred to as "General Han" by Tony Diab and others at LPG and was somewhat feared by LPG's staff and attorneys with her "unlimited authority to manage the business of LPG and LPG's employees." [*See* 1046 Adv. Dk. 493-4, Decl. Jane Dearwester, pg. 2 at ¶8; 1046 Adv. Dk. 493-3, Decl. Hershy Deutsch, pg. 3 at ¶9]. An email sent from Tony Diab to Han Trinh and Jayde Trinh refers to Han Trinh as "Gen. Han." [1046 Adv. Dk. 493-10, Ex. 49].

From November 30, 2020, Jayde Trinh asserts she was employed as a W-2 employee of LPG. [*See* 1046 Adv.  Dk. 675, pg. 1:26-28]. As early as of October 2021, Jayde held herself out to be the "General Counsel of LPG."[14] [*See* 1046 Adv. Dk. 493-4, pg. 2 at ¶¶5,10]. Jayde asserts when she first started working at LPG, she earned an annual salary of $120,000, but by June 2, 2023, she was earning an annual salary of $250,000, plus LPG repaid Jayde's student loans from law school [1046 Adv. Dk. 675, Decl. Jayde Trinh, ¶7;  Dk. 1125, Ex. A, pg. 55]. Though Jayde's official title at LPG was "General Counsel" or "Attorney," Jayde was also referred to as "Hammer Jayde" by Tony Diab [*See* 1046 Adv. Dk. 493-10, Ex. 49]. An email sent from Tony Diab to Han Trinh and Jayde Trinh refers to Jayde Trinh as "Hammer Jayde." [*Id*.].

The roles of the Jayde and Han Trinh at LPG were described by Jayde in an email correspondence [*See* 1046 Adv. Dk. 493-3, Ex. 19]. Jayde, or "Attorney,"[15] handled inquiries regarding litigation, other questions that require authority, settlement reporting, and liaison for Local Counsel." [*Id*.]. Han, or "Legal," was responsible for locating clients or lawsuits, questions regarding legal docs, assigning local counsel, and questions regarding client files. [*Id*.].

---

[14] Jayde was provisionally licensed by the California State Bar on December 2, 2020. [Dk. 1125, Decl. Jayde Trinh, ¶33] and was admitted as an attorney to the California State Bar on November 24, 2021.

[15] "Attorney" was known to be Jayde Trinh, and "Legal" was Han Trinh. [*See* 1046 Adv. Dk. 493-4, pg. 54 at Ex. 19].

Jayde and Han Trinh were also heavily intertwined with Tony Diab. According to the managing member of Marich Bein, Hershy Deutsch, who made frequent trips to LPG's offices[16], Han shared an office with Diab, and she was considered "Diab's right-hand person." [*See* 1046 Adv. Dk. 493-3, pg.3 at ¶9]. However, according to Mr. Deutsch, it was evident to him that LPG and its employees did not just consider Han to be "an extension of Diab" but rather a "top-level executive of LPG in her own right," even without an official title as such. [*Id.*].

The manner and behavior of Han and Jayde while employed for LPG has been described for the Court, especially when LPG employees began resigning once they learned of LPG's impending closure and the stoppage of payments to its employees. For instance, when an employee, Rocio Prado-Garcia, sent Han a resignation email explaining their inability to continue working while not having "gainful employment" and without being appropriately compensated, Han forwarded this employee's troubling resignation email to Jayde (amongst other recipients) and stated, "Wanna bet she did not write this herself?" [1046 Adv. Dk. 493-10, Decl. Alex Rubin, Ex. 30, pg. 68]. In the same email chain, Jayde in reference to another impending resignation of another employee ("Anthony") stated "[h]e probably thinks we need them and if he takes them, then we'll drown. LMAO. This is hilarious." [*Id.*].

Further, Han, in one instance, received an email from an attorney regarding LPG's continual lack of payment for services performed and his unanswered phone calls to Han. [*See* 1046 Adv. Dk. 493-10, Ex. 32]. In the email, the attorney explained his spouse's cancer spreading at a rapid rate, which had required immediate medical attention at a local hospital, and how he had a small firm that could not absorb a write-off of the overdue payment of $35,383.66. [*Id.*]. Han, using her LPG credentials, responded, "Please send the invoice to *admin@oakstonepc.com*. Thank you!" [*Id.*] (*emphasis added*).

---

[16] Hershy Deutsch made frequent trips to LPG's offices after Marich Bein and LPG entered into various Assignment of Servicing Rights Agreements and Account Receivable Purchase Agreement in 2022.

Again, on March 29, 2023, in a different email chain, Han sent Jayde a message from an attorney (Randall Clark) regarding Mr. Clark's inability to give extremely distraught clients information regarding their accounts being transferred from "LPG Oakstone."[17] [*See* 1046 Adv. Dk. 493-10, Ex. 40]. Jayde responded to the concerns by stating, "Hans [sic] problem. She was supposed to call last week." [*Id*]. On April 13, 2023, a different attorney reached out to LPG stating, "My fear is that if Oakstone signs her [former LPG client] up and Phoenix begins billing her account, she will be double-charged until this can be straightened out." [*See* 1046 Adv. Dk. 493-10, Ex. 42]. This attorney's email was forwarded to Jayde and Han, to which Jayde replied, "Linda, you need to text Han. Cause I'm pretty sure we can start but it's not Oakstone. Clear up with her cause she changes sh*t (expletive modified) every other day." [*Id*.]. This evidence presents a continual demonstration of their indifference to concerned clients seeking debt resolution services, as well as their personal knowledge of the asset transfers and manipulations of Debtor.

As the client transfers occurred from LPG to other entities, no one at LPG, including Han and Jayde who had specific knowledge of the transfers (as evidenced by LPG attorneys reaching out to the Trinhs confused about the client transfers) informed clients or the attorneys representing them of their completed or impending transfers.[18] Debtor's clients rightfully became concerned when they began receiving notices in January-February 2023 that they were now purportedly represented by the fraudulent transferee law firms. [*See* 1046 Adv. Dk. 493-4, Decl. Dearwester, Ex. 11]. Clients involved in the transfers had not signed substitutions consenting to their files being transferred. [*Id., Ex.* 13]. Attorneys began demanding answers about the sudden change, which is when Han and Jayde began sending out new contracts to attorneys to sign with different entities. [*Id.*, Ex. 16].

---

[17] Oakstone is alleged by the Trustee to be an alter ego of LPG. [See 1046 Adv. Dk. 583].

[18] This is especially concerning given Jayde Trinh's status as an attorney.

An example of this chaos, in February 2023, an out-of-state attorney, Jane Dearwester, began receiving emails from concerned LPG clients explaining they had received communications that their client files were being transferred and/or sold to Oakstone, Consumer, and Phoenix. [*See* 1046 Adv. Dk. 493-4, pg. 4: 22]. When Ms. Dearwester sent an email to Han, Jayde, and Diab, informing them that LPG clients could not be transferred without the clients' consent, Ms. Dearwester never received a response. [*See* 1046 Adv. Dk. 493-4, Ex. 13]. In fact, Han and Jayde began telling LPG attorneys that they needed answers quickly on whether the attorneys were "coming to Oakstone." [*See* 1046 Adv. Dk. 493-4, Exs. 17, 18].

In yet another instance of an unauthorized transfer, on February 7, 2023, an attorney forwarded the "welcome email" its client had received from Oakstone. [*See* 1046 Adv. Dk. 493-10, Ex. 26]. The attorney emailed the Trinh sisters and Diab, stating "[i]n another email, I inform you that Illinois clients must consent to the transfer of their files." [*Id.*]. No response was provided. [*Id.*]. No action was taken.

On January 26, 2023, another attorney reached out to Jayde and Trinh, writing "[i]t seems that his [the client] DPP[19] file has also been completely wiped and we cannot retrieve the necessary documents that we need for his case. He is emailing us for clarification about the email above [client received a "welcome email" from Consumer Legal Group] but we have no idea what to tell him . . ." [*See* Dk. 1099, pg. 9, Ex. 25].

The foregoing examples are just a few from the submitted evidence demonstrating Han and Jayde's personal involvement with Diab, as well as their knowledge and participation in the improper and most likely systematically improper transfer of clients' files. In addition, Han and Jayde, while working for LPG, concurrently worked for Greyson, as discussed below. [Dk. 1124, Decl. Han Trinh, ¶6, 12;  Dk. 1125, Decl. Jayde Trinh, ¶ 2, 13]. This is despite Greyson, Han Trinh, and Jayde Trinh vehemently arguing that LPG was a direct competitor of Greyson. *See, e.g.*, [1046

---

[19] DPP, Debt Pay Pro, is analogous to "LUNA" and "Forth" since these are all client relationship management accounts, which contained information regarding a clients' data, files, and accounting information.

Adv. Dk. 290-1, Decl. Han Trinh, ¶33]. This is also despite Han and Jayde claiming no involvement in the transfer of files to entities such as Phoenix, where Phoenix then used Greyson attorneys to work on LPG files that were fraudulently transferred. In fact, Han attached to one of her declarations "screenshots of a list of some emails from han@lpglaw.com and legal@lpglaw.com" proving that while allegedly performing "essential work" for LPG, she knew exactly which client files were transferred and to which entity, including Phoenix, which was a pipeline of work for concurrent employer, Greyson. [Dk. 1124, Decl. Han Trinh, Ex. B].

**B. The Greyson Entities**

On March 9, 2023, Greyson Law Center PC (5561924) ("Greyson One") was incorporated with the California Secretary of State. [1046 Adv. Dk. 290-1, Decl. Han Trinh ¶ 5]. Greyson One came to be in March of 2023, when Scott Eadie, a former LPG attorney, advised Han Trinh that he wanted to create a new organization that had a similar business as that performed by LPG. [1046 Adv. Dk. 47-1, Decl. Eadie, ¶2-3; 1046 Adv. Dk. 47-2, Decl. Han Trinh, ¶3]. Greyson One was set up by Mr. Eadie, Eng Taing ('Mr. Taing"), and Han Trinh. [1046 Adv. Dk. 47-1, ¶ 4]. When discussing the name "Greyson" in a group text message with Jayde Trinh and Mr. Taing, Han stated "your baby's name, Jayde! Your idea is coming to fruition lol." [1046 Adv. Dk. 493-11, pg. 24, Ex. O].[20]

Greyson One was seemingly "receiving assistance from Eng Taing, Dongliang Jaing, and Anthony Gabriel." [1046 Adv. Dk. 47-2, ¶7]. Greyson One was stationed in the office space at 3161 Michelson Drive. [*Id.*]. Greyson One moved into the premises under the impression that the sublease included Greyson One. [*Id.*]. Han and Jayde both supervised the team of Greyson One attorneys.[21] [*Id.*]. However, restrictive access

---

[20] On March 8, 2023, Jayde also sent text messages in which she inquires "Can we spell Greyson with an 'E'? Grayson with an 'a' is fine for my dog but it looks fratty. LOL let me know your thoughts." [*See* 1046 Adv. Dk. 493-11, pg. 24, Ex. O].

[21] On March 21, 2023 (one day post-petition), Greyson One sent employment contracts to several attorney who were previously employed by Debtor, for which the start date was stated to be March 27, 2023. [*See* Dk. 1105, Decl. Mamlyuk, Ex. 33; *see also* Clarke Dec. Ex. 2; *See also*, Dk. 699, pg.8 (R. Pryun's Greyson

was put into place only allowing Mr. Taing, Mr. Jaing, Mr. Arthur, and Mr. Gabriel to enter the premises. Therefore, Mr. Eadie claims to have severed ties with Mr. Taing and, according to Mr. Eadie, Mr. Taing closed Greyson One's bank accounts. [*Id.*, ¶9]. Thereafter, Mr. Eadie and Han Trinh opened new bank accounts for Greyson One at Citibank. [1046 Adv. Dk. 47-1, ¶9].

Greyson One, however, was short lived as it was dissolved in May of 2023, and the records from the California Secretary of State report Greyson One as "terminated." [*Id.*; Decl. Kathleen March]. Han Trinh and Mr. Eadie learned of Greyson One's dissolution on May 10, 2023. [1046 Adv. Dk. 47-1, ¶9]. When Mr. Eadie and Han Trinh checked online, they then realized that Greyson One's Articles of Incorporation were never applied for under Mr. Eadie's name. [1046 Adv. Dk. 47-1, ¶9]. Therefore, on May 12, 2023, Mr. Eadie and Han Trinh filed new Articles of Incorporation when they discovered they could not reinstate the original business (Greyson One). [1046 Adv. Dk. 47-1, ¶9]. This is when Mr. Eadie changed the domain name from "Greyson PC" to "GreysonLaw PC" to avoid any further association with Greyson One. [1046 Adv. Dk. 47-1, ¶9].

Greyson represents that it is owned 100% by Scott Eadie, Esq., who is identified as the managing attorney and President of Greyson with Mr. Eadie's declarations and various exhibits provided in support. [Dk. 1127, Decl. Soctt Eadie dated 2/8/24;  Dk. 1127, Decl. Scott Eadie dated 3/27/24]. [22] However, Han Trinh has provided an email to the Court wherein Israel Orozco states that Jayde Trinh serves as the supervising attorney for Greyson. [Dk. 676, Decl. Han Trinh, Exhibit W].

---

contract)]. Local counsel R. Reed Pruyn, Israel Orozco, and Shadae Clarke were just three of the attorneys who received employment agreements with Greyson One [*Id.*].

[22] Greyson states Mr. Eadie never managed Debtor. Notably, however, exhibits have been provided evidencing Mr. Eadie's involvement in both LPG and Oakstone [Dk. 1105, Exhibit 32;  Dk. 1099, Exhibits 33, 44, 46, 47]. Oakstone is alleged by the Trustee to be an alter ego of LPG [*See* 1046 Adv. Dk. 583]. For instance, there is a letter from Daniel March to Mr. Eadie "to document the agreement" that LPG will transfer clients to Oakstone" [Dk. 1105, Exhibit 47] and there is an email from Han's LPG email account to Mr. Eadie attaching the "master client list" which shows numerous clients at the law firm Oakstone [Dk. 1099, Exhibit 33].

Han Trinh and Scott Eadie declare under penalty of perjury that Greyson had no involvement with Tony Diab. [Dk. 676-1, Decl. Han Trinh, ¶20; Dk. 1127, Decl. Scott Eadie dated 2/8/24, ¶8]. Han goes as far as saying she hated Diab, and that Diab had no link to, or part in, Greyson. [Dk. 676-1, Decl. Han Trinh, ¶21]. However, on "May 19," Tony Diab sent a text message to William "Ty" Carss, Phoenix's principal, stating "[u]ntil **we** close Greyson, the plan is the following. For any new assignment, email it to: legal@greysonlawpc.com and attorney@greysonlawpc.com Bianca is working on a new flow but for now send all assignments there. As for a card expenses, they will continue using the Greyson card for now." (emphasis added). [1046 Adv. Dk. 493-2, Decl. William 'Ty' Carss, Ex. B]. Tony Diab, on "May 23" responded to Mr. Carss' question "Do we or Greyson have access to a GA attorney?" by answering, "[y]es, greyson does." [1046 Adv. Dk. 493-2, Decl. William 'Ty' Carss, Ex. B]. Yet, Tony Diab declares that "[a]ny discussion I had with any individual at Greyson regarding file transfer was in my capacity as transferor, not transferee, of any file. No file was ever transferred to any Greyson entity by me, even though numerous discussions regarding file transfer took place." [Dk. 1127, Decl. Diab dated 2/12/24, ¶5e]. Diab clearly had a link to, and part in, Greyson. Han, Jayde, and Diab appear to argue that despite all of their involvement in illegally transferring client files to Phoenix, who then used Greyson to service files, Diab did not have a part in, or say toward, Greyson.

Due to the failure of Greyson One, Han Trinh and her "team" were looking for a new office space for Greyson. [1046 Adv. Dk. 47-2, ¶10]. Han Trinh was advised by Wes Thomas, LPG's former Chief Financial Officer and close associate of Diab[23], that there was an open office space available where Greyson could use the office space, existing furniture, and existing IT equipment for free. [1046 Adv. Dk. 47-2, ¶10]. That available office space was the prior office of Oakstone, an LPG affiliate. [Dk. 1125, Decl. Han Trinh, ¶27]. The tenant, at that time, of the office space was Phoenix, the recipient of

---

[23] A Notice that Clerk has Entered Default Against Wes Thomas was entered on August 22, 2023 [1046 Adv. Dk. 145].

fraudulent transfers from Debtor, who then provided those client files to Greyson to allegedly service. Han Trinh accepted Mr. Thomas' offer on behalf of Greyson as the Administrator. [1046 Adv. Dk. 47-2, ¶10]. Greyson then moved its office to the free space located at 3345 Michelson Drive, Suite 400B, in Irvine, CA on April 29, 2023. [1046 Adv. Dk. 47-2, ¶10-11].

From May 3, 2023, Greyson employed approximately 140 people at the Suite 400B location, with 94 of the employees working remotely in California and approximately 60 employees working remotely in other states. [1046 Adv. Dk. 47-2, ¶ 12].[24] As of June 2, 2023, however, Greyson only had 48 clients of its own. [1046 Adv. Dk. 47-1, ¶ 11-12].[25] To Han and Jayde, however, their most important asset was the "network of attorneys." Han believed that the "Greyson attorney network belong[ed] to Jayde and [her] alone" and that they "owned" the network of attorneys. [*See* Dk. 1105, pg. Decl. Shadae Clark, Ex. 5]. Han admitted that the Greyson attorney network "were W2 attorneys for LPG until February 2023." [*Id.*].

As noted *supra*, and detrimental to the credibility of Han and Jayde, at the same time the Greyson entities were incorporated, and operating, Jayde Trinh and Han Trinh were also working for LPG. [Dk. 1124, Decl Han Trinh, ¶6, 12; Dk. 1125, Decl. Jayde Trinh, ¶ 2, 13]. Again, this is despite Greyson, Han Trinh, and Jayde Trinh vehemently arguing that LPG was a direct competitor of Greyson. [*See, e.g*., 1046 Adv. Dk. 290-1, Decl. Han Trinh, ¶33].

### III. History of Hearings and Proceedings Relevant to the Motion

The Motion was originally set for hearing on January 17, 2024, at 11:00 a.m. As a result of significant pleadings and exhibits having been filed, including but not limited

---

[24] Greyson even had an employee, Brad Lee, who worked for Greyson and Phoenix at the same time. [Dk. 1127, Decl. Diab dated 2/12/24 ¶5e].

[25] Of the 48 clients, approximately 20 were obtained after LPG clients elected to follow their attorney who "belonged" to Greyson. [1046 Adv. Dk. 47-1, ¶11]. Further, while attorneys who work with Greyson are W-2 employees of Greyson, they typically perform work for other clients wholly outside Greyson for their own private practices. [*Id.*]

to certain evidentiary objections and requests to strike portions of declarations, on January 16, 2024, the Court entered, as Docket 333, an Order (1) Continuing Motion of Greyson Law Center PC to Vacate 5/26/23 Lockout and Preliminary Injunction Order as to Greyson Law, Order Trustee Atty Celentino to Return all Greyson's Seized Property, and Order Celentino to Immediately Restore Greyson's Access to all Greyson Law PC [1046 Adv. Dk. 290]; (2) Establishing Briefing Schedule; And (3) Denying Trustee's Ex Parte Motion To Strike [1046 Adv. Dk. 331] continuing the hearing to February 28, 2024, at 11:00 a.m.

The hearing was further continued to March 27, 2024, after the Court held a hearing on an emergency motion brought by an intended deponent of Greyson, by an order entered on January 31, 2024 [1046 Adv. Dk. 373]. The Court, on February 28, 2024, after consideration of a protective order sought by Han Trinh entered an Order Continuing Motion to Vacate the Preliminary Injunction [1046 Adv. Dk. 290] to May 1, 2024, at 1:30 p.m. [1046 Adv. Dk. 417].

The hearing was held on May 1, 2024, at 1:30 p.m.

## IV. Pleadings and Evidence on the Record

### 1. Relevant Pleadings Filed Before Motion

#### A. The Adversary, Temporary Restraining Order, and Preliminary Injunction

On May 25, 2023, the Trustee[26] filed, under seal, an adversary complaint against multiple defendants, including Tony Diab ("Diab"), Greyson Law Center PC ("Greyson"), Han Trinh, and Jayde Trinh. [1046 Adv. Dk. 1]. On May 25, 2023, the Trustee also filed:

(1) Trustee's Emergency Notice of Motion and Motion for Permission to File Omnibus Emergency Motion After Service of Courtesy Copy and After Hearing, and Under Seal [1046 Adv. Dk. 2].

---

[26] The U.S. Trustee filed a motion to convert the Bankruptcy Case pursuant to 11 U.S.C. § 1112(b). As a result, Richard A. Marshack was appointed as Debtor's Chapter 11 Trustee. [Dk. 21].

(2) Memorandum of Points and Authorities in Support of Trustee, Richard A. Marshack's Motion for Permission to File Omnibus Emergency Motion After Service of Courtesy Copy and After Hearing, and Under Seal [1046 Adv. Dk. 3].

(3) Omnibus Emergency Motion for (1) Turnover of Estate Property and Recorded Information Pursuant to 11 U.S.C. §542; (2) Preliminary Injunction; (3) Lock-Out; (4) Re-direction of United States Parcel Services Mail; (5) Order to Show Cause re Compliance with Court Order; and (6) Other Relief as Necessary to Efficient Administration of This Matter ("Emergency Motion") [1046 Adv. Dk. 4].

(4) Declaration of Russ Squires in support of Emergency Motion [1046 Adv. Dk. 5].

(5) Declaration of Darius Newbold in support of Emergency Motion [1046 Adv. Dk. 6].

(6) Declaration of Christopher B. Ghio in support of Emergency Motion [1046 Adv. Dk. 7].

(7) Declaration of Trustee Richards Marshack in support of Emergency Motion [1046 Adv. Dk. 8].

The Court set and held a hearing for the Emergency Motion for the same day. [1046 Adv. Dk. 9]. On May 26, 2023, the Court entered an order granting the Trustee's Emergency Motion ("May 26 TRO") [1046 Adv. Dk. 13].

On May 30, 2023, the Court set a hearing on the Preliminary Injunction for June 12, 2023.

On June 2, 2023, the Trustee filed the Declaration of Christopher Ghio in Support of Issuance of Amended Order [1046 Adv. Dk. 19]. On June 2, 2023, the Court issued an amended order ("June 2 TRO") [1046 Adv. Dk. 21].

On June 7, 2023, the Trustee filed a Motion to Unseal Case [1046 Adv. Dk. 26] which the Court granted by Order the same day [1046 Adv. Dk. 27].

///

On June 12, 2023, Greyson filed an opposition to the Trustee's Motion for Turnover, Preliminary Injunction, Lock-Out, Redirection of US Mail. 1046 Adv. [1046 Adv. Dk. 46].[27] The opposition was refiled as Docket 47 with the following declarations attached:

(1) Scott Eadie[28];

(2) Han Trinh;

(3) Sally Yde;

(4) Peter Yde III;

(5) Steven Mader;

(6) Thomas Ayen;

(7) Lynn Kohn;

(8) Danita Goss;

(9) Leann Babcock-McCallu;

(10) Debora Jones;

(11) Keith Weaver; and,

(12) Tamer Fawzy.

On June 12, 2023, after a lengthy hearing was held, the Court granted the Trustee's Motion for the preliminary injunction against multiple defendants, including Greyson.

On June 14, 2023, the Trustee filed his first amended complaint. [1046 Adv. Dk. 62].

On June 16, 2023, the Trustee filed a Notice of Lodgment of Order or Judgement in Adversary Proceeding relating to the Emergency Motion [1046 Adv. Dk.65]. Also on

---

[27] Greyson was originally represented by Doug Plazak, Esq., who filed the opposition to the motion for turnover, preliminary injunction, lock-out, re-direction of mail [1046 Adv. Dk. 46]. However, Greyson since employed new counsel, Kathleen March, Esq. Ms. March is who filed the Motion on behalf of Greyson.

[28] On June 12, 2023, Greyson, filed the declaration of Scott Eadie with the following exhibits attached [1046 Adv. Dk. 48]: (1) Exhibit A - the Articles of Incorporation for Greyson One; (2) Exhibit B - the Articles of Incorporation for Greyson.

June 16, 2023, the Trustee filed the declaration of Christopher Celentino in Support of Notice of Lodgment of Preliminary Injunction. [1046 Adv. Dk. 66]. Mr. Celentino's declaration includes, as Exhibit 1, a redlined comparison of the June 2 TRO and the order lodged as docket 65 as a result of discussions with the Office of the United States Trustee and Doug Plazak as counsel to Greyson.

On June 23, 2023, the Court entered the Order, as modified by Doug Plazak, for the Preliminary Injunction ("Preliminary Injunction Order") [1046 Adv. Dk. 70].

**2. The Motion [1046 Adv. Dk. 290]**

Approximately 6 months later, on December 6, 2023, Greyson filed a "Notice Of Motion and Motion Of Greyson Law Center PC, For an Order, Made in Both Adversary Proceeding and LPG's Main BKY Case: (1) Vacating The 5/26/23 Lockout and Preliminary Injunction Order, as to Greyson, Because that Order was Obtained, as to Greyson, Based on the False Allegation in the Sealed, Ex Parte Motion Trustee Marshack's Attorney, Celentino, Filed Moving for that Order, that Greyson was an Alter Ego of LPG; And (2) Ordering Celentino to Immediately Return all Greyson's Seized Propert [Sic] to Greyson, and to Immediately Restore Greyson's Access to all Of Greyson's Data, Which Celentino Seized and Locked Greyson out of on 5/26/23 and on 6/12/23, a Lockout Continuing to Present" [1046 Adv. Dk. 290].

**A. Declaration of Han Trinh**

Attached to the Motion is the declaration of Han Trinh [1046 Adv. Dk. 290-1], which in turns attached another declaration of Han Trinh dated November 17, 2023. Attached to Han Trinh's November 17, 2023, declaration are the following exhibits:

(1) Exhibit A - An email from Christopher Celentino to Han Trinh saying Han consented to the use of email and including attachments of documents served.

(2) Exhibit B - An email from Jonathan Serrano to Han asking for Han's home address for mailing purposes.

(3) Exhibit C - An email from Jonathan Serrano to Han asking for a list of Greyson's employees, their titles, and their salaries in a spreadsheet.

(4) Exhibit D - An email from Christopher Celentino to Han sharing a statement this Court provided, that everyone must cooperate with the Trustee and also states that Han and Jayde Trinh can share this message with employees.

(5) Exhibit E - An email from Celentino to Serrano, Jonathan, and Han informing Han the order she was served requires an appearance before this Court on June 12, 2023.

(6) Exhibit F - An email from Celentino to Serrano and Han saying Han was left out of the first part of the order but that will be fixed for future appearances because Celentino does not want Han to miss out on sharing that she and Jayde were the "brainchildren behind Greyson" and her anger and disassociation from Tony Diab.

(7) Exhibit G - A continuation of the email from Exhibit F wherein Celentino adds there is no reason to meet with Han before the hearing with this Court.

(8) Exhibit H - An email from Morgan Antenucci to HR and 6 others stating that Antenucci, whose signature block indicates Antenucci is from Greyson's document department, has not been paid for the pay date May 26 and cannot pay bills without the paycheck;

(9) Exhibit I - An email from Antenucci to Celentino and 6 others inquiring whether there is a date by which late pay will be received and also stating that operations are "falling apart due to lack of direction."

(10) Exhibit J - An email from Courtney Kelley to HR, GLC Accounting, and 47 others stating that Kelley recognized former LPG competitors in the office who were making announcements that they are officers of the Trustee. Kelley specifically states that she recognized Russ, Gary, and Alex from Validation Partners and Morning Financial.

(11) Exhibit K - An email relaying that Lori announced she was affiliated with LPG, Phoenix, and Greyson and that her team is taking over Greyson. The email expresses confusion for why Greyson is being treated as connected to Phoenix and LPG.

(12) Exhibit L - A continuation from the email in Exhibit K stating that the sender

will resign if forced to work with Phoenix or LPG, and the rest of the team at Greyson only wants to work for Greyson and Han.

(13) Exhibit M - A further continuation of the email from Exhibit K relaying that the team at Greyson only wants to be working with Greyson clients and that the team is lost without direction from Han.

(14) Exhibit N – A draft email from Reid Wood to Celentino and 4 others seeking clarification on who is in charge of Greyson in Han's absence because Lori stated she is a representative of the Trustee, but Wood fears Greyson will completely break down without Han.

(15) Exhibit O - An email dated June 8 from Aly Housel to Celentino and 5 others stating that Lori shared that she and her colleagues would be taking over Greyson but that Housel does not want to be affiliated with Phoenix or LPG and is uncomfortable with restricted access to Luna.

(16) Exhibit P - A continuation of the email from Exhibit O and asks where Han and Scott are and if employees will be paid on Friday.

(17) Exhibit Q - A handwritten statement by Aly Housel conveying that on June 5, 2023, several people entered the Greyson office and claimed to be the Trustees of the Chapter 11 bankruptcy and were from LPG. It also states that Greyson employees were restricted in their use of Zoom and CM and that holds were placed on their paychecks.

(18) Exhibit R - An email wherein the sender states their home will be foreclosed because Greyson did not prioritize its employees' needs. It also includes a response from "AC" to GLC Admin, HR, and 8 others asking to help Barry.

(19) Exhibit S - An email to HR from Christopher Ghio stating he was told to reach out to HR regarding payroll and asked for further instructions on how to move forward.

(20) Exhibit T - An email dated June 7 from Maria Thach to Greyson employees stating that payroll for the week has been processed but not submitted, and that she is waiting for the Trustee to approve payroll for May 26.

(21) Exhibit U - An email from Jonathan Serrano to Barry Katipunan stating that no one can be paid absent a court order.

(22) Exhibit V - An email from Celentino inquiring whether Scott Eadie is a lawyer, stating that Jayde is not a lawyer, and inquiring into who is the lawyer supervising the law firm.

(23) Exhibit W - An email from Israel Orozco to Celentino advising that Scott is a lawyer, with his bar number, that Jayde Trinh is a lawyer, with her bar number and that Jayde is the supervising attorney for Greyson, while Han Trinh is not an attorney but handles much of the administrative tasks.

(24) Exhibit X - An email from Orozco to Celentino stating that without Scott and Jayde, no one is supervising the attorneys but that the attorneys are competent and continue to do what is best for the clients.

(25) Exhibit Y - An email from Celentino responding to Orozco's email from Exhibit X thanking him for the information.

(26) Exhibit CC - An email from Celentino to Alyssa Calaro stating that Alyssa Calaro accessed the email AlyssaCalaro@greysonlawpc.com and sent an email, so he is asking to check that all access is cut off.

(27) Exhibit DD - An email, with the "to" line and emails redacted, dated September 6, 2023, from optout@morninglawgroup.com thanking the receiver for contacting Morning Law and discussing the process for opting out of the legal services agreement with the "Previous Firms."

(28) Exhibit EE - An email continuation of Exhibit DD which states Greyson is an affiliated entity of Phoenix and LPG.

(29) Exhibit FF - An email with all sender and receiver information redacted, sharing that the sender signed another opt-out form from Phoenix Law and is inquiring whether that also means they opted-out of services with Greyson accidentally.

(30) Exhibit GG - An email from Gina Kripotos to Doug Plazak providing login information for Luna to access data on client files for 2 weeks.

(31) Exhibit HH - A list described to be the "high fee" clients Greyson lost and the total fees Greyson would have collected of $300,663.62.

(32) Exhibit II - A list described to be "low fee" clients Greyson lost and the total fees Greyson would have collected of $154,093.11.

(33) Exhibit JJ - A service agreement addendum.

**B. Declaration of Kathleen P. March**

Attached to the Motion is the Declaration of Kathleen P. March [1046 Adv. Dk. 290-2], which in turn attached the following exhibits:

(1) Exhibit A - A portion of LPG's pacer bankruptcy docket, with docket numbers 52 through 167.

(2) Exhibit B - An order from this Court entered on May 8, 2023, approving the U.S. Trustee's application for the appointment of a Chapter 11 Trustee.

(3) Exhibit C - A portion of LPG's pacer docket for adversary 8:23-ap-01046-SC, with docket numbers 1 through 82.

(4) Exhibit D - An order entered by this Court on May 26, 2023, for turnover of estate property and recorded information, preliminary injunction, lock-out, re-direction of United States Parcel Services mail, order to show cause re compliance with court order, and other relief as necessary for efficient administration of this matter.

(5) Exhibit E – The Trustee's memorandum of points and authorities in support of his motion for permission to file an omnibus emergency motion after service of courtesy copy and after hearing, and under seal, dated May 25, 2023.

(6) Exhibit F - This Court's order entered on May 26, 2023, granting the Trustee's motion to seal.

(7) Exhibit G - Transcript of the hearing held before this Court on June 12, 2023, regarding the preliminary injunction and a status conference regarding a case management conference and requiring a status report.

(8) Exhibit H - A screenshot from the California Secretary of State's website showing a search of "greyson law" with results of a terminated "Greyson Law Center PC" and an active "Greyson law Center PC," with Scott Eadie as the agent.

**3. Order Setting Hearing on Motion [1046 Adv. Dk. 293]**

On December 7, 2023, the Court entered an "Order (1) Setting Hearing On Motion Of Greyson Law Center PC To Vacate 5/26/23 Lockout And Preliminary Injunction Order As To Greyson Law, Order Trustee Atty Celentino To Return All Greyson's Seized Property, And Order Celentino To Immediately Restore Greyson's Access To All Greyson Law Center PC; (2) Consolidating Related Motions, And, (3) Requiring The Parties To Meet And Confer." [1046 Adv. Dk. 293]. The Order required the parties to meet and confer and to file a joint statement [*Id.* at ¶ 3].

**4. The Joint Statement [1046 Adv. Dk. 325]**

On January 8, 2024, Greyson and the Trustee filed a "Joint Statement of Movant Greyson Law Center PC, and of Respondent Trustee, Richard A. Marshack, of Issues for this Court to Decide Relating to Greyson's Motion to Vacate—as to Greyson—This Court's 5/26/23 Lockout and Preliminary Injunction [dkt. 13] and the 6/23/23 Order [dkt. 70] Which Continued Dkt. 13 In Effect Until This Court Rules Otherwise" ("Joint Motion") [1046 Adv. Dk. 325].

**A. Greyson's Evidence in Support of its Position**

Attached to the Joint Statement in support of Greyson's position are the following declarations and exhibits:

(1) Declaration of Justin Nguyen, which attaches the following exhibits:

(i) Exhibit A - A credit card statement for H3 Computer Services addressed to Sherri Chen, with Justin Nguyen as a cardholder, account ending in 6967 for a Costco Anywhere Visa Business Card by Citi.[29]

---

[29] Nguyen declares, contrary to what the evidence shows, that this is his personal credit card bill showing charges for 24 beelinks. All charges are redacted except for a $40.53 charge from godaddy.com. There also appears to be a screenshot from an Amazon order for $3,776.52, however, the account used is a visa ending in 9344 and order method lists "Business."

(ii) Exhibit B – What appears to be a screenshot of Amazon Orders from a Visa ending in 9344 for $5,417.64, $392.21, and $537.67.[30]

(2) Declaration of Han Trinh, which attaches the following exhibits:

(i) Exhibit A – A statement for a Wells Fargo Propel American Express Card ending in 5434 for Han Trinh with charges redacted except for (1) $254.50 to Airtable.com; (2) $2,312.25 to Microsoft; (3) $74.19 to Anytime Mailbox; (4) $30.16 to godaddy.com.

(ii) Exhibit B – An email from Celentino to Han regarding access to Greyson M365 suite and the godaddy.com host site.

(3) Declaration of Kathleen P. March, which attaches the following exhibit:

(i) Exhibit A – Emails from December 8, 2023, through January 3, 2024, between Kathleen March and Celentino and related attorneys.

**B. The Trustee's Evidence in Support of His Position**

Attached to the Joint Statement in support of the Trustee's position are the following declarations and exhibits:

(1) Declaration of Alex Rubin, which attaches the following exhibits:

(i) Exhibit 1 – An email dated May 1, 2023, from Han's Greyson email account to Tony Diab attaching invoices.

(ii) Exhibit 2 – An email dated May 3, 2023, from Han's Greyson email account to Tony Diab attaching "Guardian Employees Banking and Pay for 4/27 Excel Sheet."

(iii) Exhibit 3 –Emails dated May 9, 2023, from Han's Greyson email account to Greyson Attorneys regarding case transfers.

(iv) Exhibit 4 – An email dated May 9, 2023, from Han's Greyson email account to ops@greysonlawpc.com attaching "LPG Directory of Counsel Cover State by State."

---

[30] Nguyen declares this exhibit is also his personal credit card bill showing a charge for godaddy.com.

(v) Exhibit 5 - An email dated May 9, 2023, from Han's Greyson email account to hr@greysonlaw.pc.com attaching "Handbook LPG DO NOT USE YET – REVISION 2023."

(vi) Exhibit 6 – An email dated May 17, 2023, from Brad Lee to Han's Greyson email account and "Admin Prime" with Greyson's Revolv3/Payliance contract.

(vii) Exhibit 7 – An email chain dated May 23, 2023, between kent@lpglaw.com, Kathleen Stevens, 24him4ever@gmail.com, and admin@greysonlawpc.com.

(viii) Exhibit 8 – An email dated May 23, 2023, from admin@greysonlawpc.com to Brad Lee including an attached scheduled wire document.[31]

(ix) Exhibit 9 - An email dated May 26, 2023, from attorney@greysonlawpc.com to "GLC Attorneys" advising to stop onboarding CLG and Phoenix cases as there was no master agreement yet.

(x) Exhibit 10 – Emails dated May 28, 2023, from Han regarding Reed Pruyn's (a Greyson attorney) understanding of onboarding CLG cases and an email from "Your Admin" about Greyson's struggles.

(xi) Exhibit 11 – An email dated May 31, 2023, from GC@greysonlawpc.com to AllCounsel@greysonlawpc.com and Han's Greyson email account advising not to speak to attorneys for the Trustee.

(xii) Exhibit 12 – An email dated May 2, 2023, from Han to accounting@greysonlawpc.com, among others, directing Greyson's payroll be "sen[t] out from BAT Inc, Chase account" and attached Greyson's payroll spreadsheet.

---

[31] The wire was from a Chase account ending in 0830 which belonged to BAT and the email from admin@greysonlawpc.com states "Done. This is coming from me at BAT, Inc." The Court notes that evidence has been provided showing Han Trinh was the CEO, CFO, and Secretary of BAT, Inc. [*See, 1046 Adv.* Dk. 325-8, Declaration of Jeremy Freedman, Exhibit B (BAT, Inc.'s March 2, 2023, Statement of Information with the California Secretary of State showing Han Trinh as the CEO, CFO, and secretary and Tony Diab as the Agent for Service of Process)].

(xiii) Exhibit 13 – An email dated May 24, 2023, from accounting@greysonlawpc.com to HR@greysonlawpc.com providing proof Scott Eadie was paid and attached wire confirmation.

(xiv) Exhibit 14 – Emails dated May 30, 2023, between Han and accounting@greysonlawpc.com regarding a scheduled wire to David Orr from BAT, Inc.'s account and attached wire confirmation.

(xv) Exhibit 15 – An email dated June 7, 2023, accounting@greysonlawpc.com to HR@greysonlawpc.com attaching a May 2023 Citibank statement for account ending in 6370.

(xvi) Exhibit 16 – An email dated May 18, 2023, from Han to Ops with Greyson's Local Counsel Directory: Coverage State by State.

(xvii) Exhibit 17 – A comparison between LPG's Local Counsel and Greyson's Local Counsel with those shared highlighted.

(xviii) Exhibit 18 – Emails dated May 9, 2023, between HR@greysonlawpc.com and Monroy Gabriel regarding payroll checks and a bounced check from Vulcan Consulting Group LLC.

(xix) Exhibit 19 – Emails dated May 10, 2023, between HR@greysonlawpc.com and Brittney Cole regarding a Prime Logix LLC bounced check.

(xx) Exhibit 20 – Emails dated June 1, 2023, between HR@greysonlawpc.com and accounting@greysonlawpc.com regarding bounced checked being paid with wires from B.A.T.'s account and attached wire confirmations.

(xxi) Exhibit 21 – Emails dated June 13, 2023, from israel@lpglaw.com to various others including GLCIsrael@gerysonlawpc.com about a client.

(xxii) Exhibit 22 – Emails dated June 12, 2023, between Reid Wood, kylecherret@greysonlawpc.com, kyle@lpg.com, and David Weaver comingling Greyson and LPG email accounts and discussing "moving" Greyson clients, after the TRO was served and Preliminary Injunction, with an attached list of the Greyson clients.

(2) Declaration of Bradford Lee, which attaches to the following exhibits:

(i) Exhibit A – A comparison between LPG's Local Counsel and Greyson's Local Counsel with those shared highlighted.

(ii) Exhibit B – Photographs of computers and office equipment in a van described as LPG equipment moved from LPG's Tustin office to Greyson's office.

(iii) Exhibit C – Phoenix task reports and data identifying issues and poor performance.[32]

(iv) Exhibit D – An emailed dated May 27, 2023, from Eric Martinson with a "Pan America affiliate agreement" to Brad Lee, Tony Diab, and Rose Romo.

(v) Exhibit E – A contract between Greyson and Verbeya LLC with the metadata showing Tony Diab was the author of the agreement.

(vi) Exhibit F – A Phoenix retainer agreement provided by Kenneth Hu to Brad Lee.

(vii) Exhibit G – A screenshot of what is asserted to be LPG's Revolv3 account showing transferred funds to PrimeLogix.

(3) Declaration of Christopher Celentino, which attached the following exhibits:

(i) Exhibit A – Emails between Han and Celentino dated June 2-7 of 2023, regarding service by email.

(ii) Exhibit B – An email chain between Doug Plazak to Celentino and Ghio re "DAP Insertions for PI Order" with Plazak's "proposed edits" attached.

(iii) Exhibit C – An email chain between Celentino, Ghio and Plazak discussing email account, Greyson retainer agreements, and being locked out of office.

(iv) Exhibit D – An email chain between Plazak, Ghio, and Celentino regarding Greyson's access to emails.

---

[32] The Court notes the continuing poor display of professionalism by those in control of LPG and its affiliates given there is a table with Agent names detailing their "Total F*ck Ups" and "F*ck Up Ratio" (expletives modified). *Id.* at pgs. 163-164.

(4) Declaration of Christopher Ghio, which attaches the following exhibits:

(i) Exhibit A – Emails between Ghio and Kathleen March, among others, regarding a meet and confer.

(5) Declaration of Jeremy Freedman, which attaches the following exhibits:

(i) Exhibit A – An email dated August 7, 2023, from Doug Plazak detailing furniture storage costs with invoices attached showing it was prepared for Han Trinh, Litigation Practice Group.

(ii) Exhibit B – BAT, Inc.'s March 2, 2023, Statement of Information with the California Secretary of State showing Han Trinh as the CEO, CFO, and secretary and Tony Diab as the Agent for Service of Process.

(iii) Exhibit C – Maverick's Wells Fargo Bank Account statement for April 2023.

(iv) Exhibit D – PrimeLogix's Bank of America Account Statement for April 2023.

(v) Exhibit E – PrimeLogix's Bank of America Account Statement for May 2023.

(vi) Exhibit F – Vulcan's Bank of America Account Statement for May 2023.

(vii) Exhibit G – An email dated December 28, 2023, from Freedman to Kathleen March, among others, requesting status of the Joint Statement.

(viii) Exhibit H – An email dated January 2, 2023, from Freedman to Greyson following up on status of the Joint Statement.

(ix) Exhibit I – Further emails between Freedman and Kathleen March regarding the Joint Statement.

(x) Exhibit J – An email dated July 7, 2023, from Gina Kripotos to Doug Plazak and others providing Greyson access to the LUNA CRM for two weeks.

(xi) Exhibit K – Login data for the LUNA CRM showing las login as "7/20/23 16:16" by Doug Plazak.

(6) Declaration of Jonathan Serrano, which has no exhibits.

**5. Greyson's Evidentiary Objections to Joint Statement and Related Pleadings**

On January 12, 2024, Greyson filed its "Evidentiary Objections to, and Requests to Strike, Portions of the 1/8/24 Declaration Of Bradford ("Brad") Lee, Submitted by Celentino Firm in Support of Celentino Firm's Portion of Joint Statement Re: Greyson's Motion to Vacate 5/26/23 Lockout And Preliminary Injunction Order and 6/23/23 Continuation Order" [1046 Adv. Dk. 328].

On January 12, 2024, Greyson also filed an "Evidentiary Objection to, and Request to Strike, Portions of 1/5/24 Declaration of Alex Rubin [Dkt. 325-4] Filed by Celentino Firm as Part of Celentino's Submission in Joint Statement Filed 1/8/24 for 1/17/24 at 11:00am Hearing on Greyson's Motion to Vacate 5/26/24 [Dkt.13] Lockout and Preliminary Injunction, and 6/23/23 Continuation Order, as to Greyson" [1046 Adv. Dk. 329].

Greyson further filed, on January 12, 2024, the "Declaration Of Han Trinh, Correcting Inaccuracies in Bradford Lee Declaration that was Filed 1/8/24 by Celentino Firm, as Part of Joint Statement; for 1/17/24 at 11:00am Hearing on Greyson Motion to Vacate—as to Greyson—the 5/26/23 [Dkt.13] Lockout and Preliminary Injunction Order (and the 6/23/23 Order Continuing Dkt.13 on Effect)" [1046 Adv. Dk. 330].

On January 15, 2023, the Trustee filed "Chapter 11 Trustee, Richard Marshack's Ex Parte Application to Strike: 1) Greyson Law Center, PC's Evidentiary Objections to the Declaration of Bradford Lee [Adv. Dkt No. 328] and Alex Rubin [Adv. Dkt. No. 329]; and the Declaration of Han Trinh [Adv. Dkt No. 330] all of Which are in Violation of this Court's Order [Adv. Dkt No. 293]; and to Grant Leave to File this Sur-Reply and Supporting Supplemental Declaration of Bradford Lee." [1046 Adv. Dk. 331]. Attached to this Ex Parte Application to Strike is the Supplemental Declaration of Bradford Lee, which in turn attached the following exhibits:

(1) Exhibit H – Emails between GLC Ops, Brad Lee, and Gabe LaRusso (Director

of Sale & Business Development for Nation Data Systems), discussing different matters for Greyson.

(2) Exhibit I – Emails between Brad Lee and GLC Admin regarding "OHP" files assigned and LUNA files.

(3) Exhibit J – A text dated "Mar 17" from "Tony" stating "[t]oday is the last day for DPP. It shuts down forever at 3:00 pm sharp. We need to blast the termination representation letter. Is that done through DPP or elsewhere?"

(4) Exhibit K – Screenshots of text messages described as being from Diab regarding a Recolv3 account.

**6. Order Continuing Hearing [1046 Adv. Dk. 333]**

On January 16, 2023, due to the significant pleadings having been filed, the Court enter an "Order (1) Continuing Motion of Greyson Law Center PC to Vacate 5/26/23 Lockout And Preliminary Injunction Order as to Greyson Law, Order Trustee Atty Celentino to Return all Greyson's Seized Property, and Order Celentino to Immediately Restore Greyson's Access to all Greyson Law PC [1046 Adv. Dk. 290]; (2) Establishing Briefing Schedule; and (3) Denying Trustee's Ex Parte Motion to Strike [1046 Adv. Dk. 331]." (January 16 Scheduling Order) [1046 Adv. Dk. 333]. The continued hearing was set for February 28, 2024. [*Id.*].

**7. Greyson's Subsequent Response to Court's Tentative Ruling**

Prior to the Court continuing the January 17, 2024, hearing, the Court posted the following tentative, in relevant part:

> Movant should be prepared to draw the Court's attention to the appropriate legal authority stated in the Motion or Joint Stipulation upon which it relies to dissolve an injunction and discuss how it has met that standard. The Court may continue this matter if the Movant would like to provide further written briefing on the subject (and permit responses, if desired).

> Virtual appearances are required.

On January 16, 2023, *after* the Court continued the January 17 hearing by Order, as noted above, Greyson filed a "Response of Greyson Law Center PC, to Court's

Tentative Ruling Posted 1/14/24, Asking Greyson What is Greyson's Authority for Greyson's [dkt. 290] Motion (1) Vacating the 5/26/23 Lockout and Preliminary Injunction Order, as to Greyson, Because that Order was Obtained, as to Greyson, Based on the False Allegation in the Sealed, Ex Parte, Motion Trustee Marshack's Attorney Celentino, Filed, Moving for that Order, that Greyson was an Alter Ego of LPG; and (2) Ordering Celentino to Immediately Return all of Greyson's Seized Property to Greyson, and to Immediately Restore Greyson's Access to all of Greyson's Data, Which Celentino Seized and Locked Greyson out of on 5/26/23 and on 6/12/23, a Lockout Continuing to Present" [1046 Adv. Dk. 338].  In support, Greyson attached the declaration of Kathleen March with an Exhibit A, which was the Court's tentative ruling for the January 17, 2024, hearing [*Id.*].

**8. Pleadings Related to January 16 Scheduling Order**

On January 26, 2024, the Trustee filed a Notice of Lodgment of a Proposed Order Amending Docket No. 333. [1046 Adv. Dk. 362].

On January 30, 2024, Greyson filed a "Notice of Lodgment of Redlined Proposed Order, Showing Greyson Law Center, PC's Proposed Changes to Wording of Celentino Firm's (Proposed) Order Amending Dkt. 333; Redlined Version Being E-filed per Court's Direction, and is Being E-lodged as Word Document, as Attached." [1046 Adv. Dk. 368].

On February 28, 2024, the Court entered an "Order Continuing Motion to Vacate the Preliminary Injunction [1046 Adv. Dk. 417].[33] The continued hearing was set for May 1, 2024, at which time it occurred. [*Id.*].

**9. Greyson's Further Briefing in Support of Motion [1046 Adv. Dk. 474]**

On April 2, 2024, Greyson filed its "Further Briefing Of Greyson Law Center PC, in Support Of Greyson's Motion [Dkt.290;Dkt.749] to: (1) Vacate 5/26/23 Lockout and

---

[33] The hearing was also continued due to related motions for protective orders filed by Bradford Lee on January 24, 2024 [1046 Adv. Dk. 347], Morning Law Group on January 29, 2024 [1046 Adv. Dk. 364], and Han Trinh on February 22, 2024, along with their relevant pleadings and respective hearings.

Preliminary Injunction Order [Dkt.13], as to Greyson, Because that Order was Obtained, as to Greyson, Based on the False Allegation in the Sealed, Ex Parte, Motion Trustee Marshack's Attorney, Celentino Firm Filed, Moving for that Order, that Greyson was an Alter Ego of LPG; and (2) Ordering Celentino Firm to Immediately Return all Items Seized at Greyson's Office on 6/2/23, Including Computers, Data, Documents, Emails & Website, and not Returned to Present" [1046 Adv. Dk. 474]. Attached thereto are the following declarations and exhibits:

(1) Declaration of Scott Eadie, which attached the following exhibits:

(i) Exhibit A – A stock ledger listing Eadie as the 100% stockholder of Greyson Law Center PC.

(ii) Exhibit B - The Articles of Incorporation filed May 12, 2023, with the California Secretary of State for Greyson Law Center PC.

(iii) Exhibit C - The Statement of Information filed October 24, 2023, with the California Secretary of State for Greyson Law Center PC.

(iv) Exhibit D - A screenshot of the search "greyson law center" in the California Secretary of State's website, showing a terminated Greyson Law Center PC and an active Greyson Law Center PC.

(v) Exhibit E - Pages 33 and 34 of the transcript from the June 12, 2023, hearing.

(2) Declaration of Tony Diab, which does not attach any exhibits.

(3) Declaration of Han Trinh, which attaches the following exhibits:

(i) Exhibit A – Greyson's Citi Bank account ending 6370 statement for May 2024.

(4) Further Declaration of Kathleen P. March, which attaches the following exhibits:

(i) Exhibit A – Transcript of Bradford Lee's February 2, 2024, deposition.

### 10. Greyson's Further Evidentiary Objections and Related Pleadings

On April 2, 2024, Greyson filed "Greyson Law Center PC's Evidentiary Objections to, and Requests to Strike, Portions of the 1/8/24 Declaration of Bradford ("Brad") Lee, Submitted by Celentino Firm in Support of Celentino Firm's Portion of Joint Statement Re: Greyson's Motion to 5/26/23 Lockout and Preliminary Injunction Order and 6/23/23 Continuation Order." [1046 Adv. Dk. 475].

On April 2, 2024, Greyson also filed "Greyson Law Center PC's Evidentiary Objections to, and Requests to Strike, Portions of the 1/15/24 Supplemental Declaration of Bradford ("Brad") Lee and Exhibits H-K Thereto [Filed 1/15/24 by Celentino Firm as Dkt. 331-3]" [1046 Adv. Dk. 476].

On April 2, 2024, Greyson further filed "Greyson Law Center Pc's Evidentiary Objection to, and Request to Strike, Portions of 1/5/24 Declaration of Alex Rubin [Dkt. 325-4], and Exhibits Thereto, Filed by Celentino Firm as Part of Celentino's Submission in Joint Statement Filed 1/8/24 Re: Greyson's Motion [Dkt.290 in Adv. Pro; Dkt.749 in Main Case] to Vacate [Dkt.13] 5/26/24 Lockout and Preliminary Injunction, as to Greyson, and for Return of Seized Items" [1046 Adv. Dk. 477].

On April 2, 2024, Greyson also filed "Greyson Law Center PC's Evidentiary Objections to, and Requests to Strike, Portions of Declaration of Jeremy Freedman, Esq. and Exhibits Thereto [Freedman Decl. [Dkt.325-8] Filed1/8/24 as Part of Joint Stmt [Dkt.325]" [1046 Adv. Dk. 478].

### 11. The Trustee's Further Briefing in Opposition to Motion

On April 18, 2024, the Trustee filed "Plaintiff Richard A. Marshack, Chapter 11 Trustee's Further Briefing in Opposition to Greyson Law Center, PC's Frivolous Motion to Vacate [1046 Dkt No. 290] and Supplemental Briefing Filed in Support Thereof [1046

Dkt. No. 474]" [1046 Adv. Dk. 493].[34] Attached to the Trustee's Supplemental Briefing are the following:

(1) Declaration of William "Ty" Carss, which attaches the following exhibits:

(i) Exhibit A – Phoenix's Statement of Information filed April 11, 2023, with the California Secretary of State.

(ii) Exhibit B – Text messages between Carss and Diab between May 19, 2023, and May 23, 2023.

(2) Declaration of Hershy Deutsch, which does not attach any exhibits.

(3) Declaration of Jane Dearwester, which attaches the following exhibits:

(i) Exhibit 9 – An employment contract between LPG and Jane Dearwester dated September 20, 2021, signed by Daniel March and Dearwester.

(ii) Exhibit 10 – An email chain between Mario Azevedo and Dearwester regarding working in North Carolina and Kentucky.

(iii) Exhibit 11 – An email from Dearwester asking if they were hacked and forwarding an email from a client acknowledging that a case was transferred from LPG to Oakstone.

(iv) Exhibit 12 - An email dated March 6, 2023, from Rayshaun Thompson to "Attorney" discussing issues with a case being transferred to Phoenix without client consent.

---

[34] On April 30, 2024, the Court entered an Order [1046 Adv. Dk. 508] granting the Trustee's request for leave re: timely filing of the further briefing, deeming adversary docket 493 timely filed and as amending adversary docket 492, and deeming the declaration of Randall Baldwin Clark [1046 Adv. Dk. 495] as timely. The Court notes that in this further briefing, the Trustee states: "the current language provided for in the Court's Preliminary Injunction, to which the Trustee agreed to, was based on Han's false assertion that Diab was not involved with Greyson in any fashion. A fact that the evidence now shows is false. As such, the Trustee respectfully requests all conditions set forth in the Preliminary Injunction as to Greyson and specifically identified herein should be removed.  Based on the additional evidence submitted herewith, it is clear Greyson, Diab, Han, Jayde and Eadie intend to continue to use any means necessary to misappropriate LPG assets, proprietary information and client data and use it for improper purposes. As such, the Trustee respectfully request this Court set a hearing and briefing schedule to amend and expand the scope of the Preliminary Injunction as specifically detailed herein." The Trustee's request is denied. Any modification of the Preliminary Injunction must be sought be a regularly noticed motion.

On May 14, 2024, the Trustee filed a notice of lodgment of the March 20, 2024, Deposition Transcript of Han Trinh in support of the further briefing [1046 Adv. Dk. 527].

(v) Exhibit 13 - An email dated February 28, 2023, from Dearwester to dan@litigationpraticegroup.com stating LPG must stop transferring clients without receiving client consent and stating LPG has breached Dearwester's employment contract.

(vi) Exhibit 14 - An email dated February 28, 2023, from Dearwester to dan@litigationpraticegroup.com asking for a phone call to understand what has been happening with client transfers.

(vii) Exhibit 15 - An email dated March 6, 2023, from Kent Cobb to LPG Counsel stating he talked with Han on March 6, 2023, and learned LPG will be paying them the next day and that Oakstone will pay them that Friday.

(viii) Exhibit 16 - An email from Jayde Trinh to Dearwester dated February 3, 2023, that explains files were transferred to other firms, including Oakstone, because client volume was too overwhelming for LPG. It also states Dan and Tony will not be involved in any new firms other than LPG moving forward.

(iv) Exhibit 17 - An email chain between Laura Ceva, Laura Henna, and Dearwester regarding employment offers for Oakstone and information on the transition to Oakstone.

(x) Exhibit 18 - The same email as the one in Exhibit 15.

(xi) Exhibit 19 - An email dated January 31, 2023, from General Counsel at LPG to Dearwester sharing who the appropriate contacts are for matters handled by "Legal" and by "Attorney."

(xii) Exhibit 20 - An email chain between Dearwester and Joshua Walthall concerning payroll issues.

(xiii) Exhibit 21 - An email dated February 9, 2023, from Han Trinh to LPG Counsel stating direct deposits from Paychex were coming through.

(xiv) Exhibit 22 - An email chain between "Admin" and Dearwester regarding paychecks, and Dearwester stating to "Tony" she is ready for their call.

(xv) Exhibit 23 - An email dated March 3, 2023, from Daniel March to "HRBlastAll" saying payroll will go out on March 6.

(xvi) Exhibit 24 - An email between Dearwester and Richard Meier about *Validation Partner, LLC vs. The Litigation Practice Group PC.*

(xvii) Exhibit 25 - A complaint dated February 24, 2023, filed by Marich Bein LLC in *Marich Bein LLC vs. The Litigation Practice Group, PC and Oakstone Law Group, PC* for breach of contract; intentional interference with contractual relations; conversion; avoidance and recovery of fraudulent transfers; declaratory relief; and temporary restraining order, and preliminary and permanent injunctions.

(xviii) Exhibit 26 - A complaint dated January 9, 2023, filed by Naz II Holding, LLC in *Naz II Holding, LLC vs. The Litigation Practice Group, PC, Tony Diab, Validation Partners, LLC and DOES 1-10* for intentional interference with contractual relations; intentional interference with prospective economic advantage; unfair competition in violation of Cal. Bus. & Prof. Code §§ 17200, et seq.; conversion; money had and received; accounts stated; and unjust enrichment.

(xix) Exhibit 27 - A letter to Daniel March from Dearwester dated March 10, 2023, stating Dearwester's resignation from LPG.

(xx) Exhibit 28 - An email chain between Dearwester and Admin about an email from Outsource Accelerator stating LPG owes $247,591.48 to 138 staff.

(xxi) Exhibit 29 - An email about LPG having a large credit line on its credit card and wiring funds to avoid cards being declined.

(xxii) Exhibit 30 - An email from Jason Rebhun to Dearwester asking for Dearwester to be local counsel for Consumer Legal Group on Tennessee cases given her prior work with LPG.

(xxiii) Exhibit 31 - A screenshot of a message in a group called "New Year Hangover LPG Attorn…" from Kent C. relaying a message from Han that any legal administrators or paralegals who are hourly need to send their hours to mary@guardianprocessing.com.

(xxiv) Exhibit 32 - An email Blair Richardson forwarded to Dearwester regarding his case being transferred from Oakstone to Phoenix, signed off by Scott Eadie.

(4) Evidentiary Objections to the Declaration of Defendant Tony Diab in Support of Defendant Greyson Law Center PC's Supplemental Briefing in Support of the Motion to Vacate the May 26, 2023, Lockout and Preliminary Injunction Order.

(5) Response to Evidentiary Objections to Declaration of Jeremy B. Freeman.

(6) Plaintiff Richard A. Marshack, Chapter 11 Trustee's Response to Evidentiary Objections to Declaration of Bradford ("Brad") Lee.

(7) Response to Evidentiary Objections to Supplemental Declaration pf Bradford ("Brad") Lee.

(8) Plaintiff Richard A. Marshack, Chapter 11 Trustee's Response to Evidentiary Objections to Declaration of Alex Rubin.

(9) First Supplemental Declaration of Alex Rubin, which attaches the following exhibits:

(i) Exhibit 23 - An email from Admin to Han and Reid Wood dated January 23, 2023, which discusses files being moved.

(ii) Exhibit 24 - A January 23, 2023, email from Han to Jayde Trinh forwarding Jayde the email contained in Exhibit 23.

(iii) Exhibit 25 – A January 26, 2023, email from Richard Meier to Admin, Han, and Mario Azevedo forwarding a welcoming email sent to Daniel Wine for having his case transferred from LPG to Consumer Legal Group.

(iv) Exhibit 26 - An email dated February 7, 2023, sharing an email sent to Arnold saying his case was transferred from LPG to Oakstone Law Group.

(v) Exhibit 27 – An email string dated February 8, 2023, between Jayde Trinh, Han Trinh, Reid Wood, and Pamella Moraes regarding a client whose case was transferred to Oakstone Legal Group.

(vi) Exhibit 28 - An email dated February 9, 2023, from Han to

Accounting sharing an email from Anthony Osborn regarding payments. It also includes invoices dated December 1, 2022, and January 3, 2023, from Gehling Osborn Law Firm, PLC.

(vii) Exhibit 29 - Two emails dated February 13, 2023, from Reid Wood to Han sharing guidelines and scripts on how to answer client questions for being moved to new file groups.

(viii) Exhibit 30 - An email dated February 23, 2023, from Jayde to Israel Orozco and Han discussing resignations from Samer and Rocio Prado-Garcia. The emails also make light of the resignations and how Vanessa did not feel comfortable.

(ix) Exhibit 31 - An email dated March 21, 2023, from Admin to Han and Jayde Trinh stating the list attached to the email is the full list of clients transferred to Phoenix and Oakstone. Only one page of each list is included in the exhibit, as the rest are intentionally left out "for brevity."

(x) Exhibit 32 - An email dated March 23, 2023, from Han to Anthony Osborn telling Osborn to send an invoice to admin@oakstonepc.com. This is in response to an email dated March 22, 2023, from Osborn explaining that his wife is battling cancer and that he has tried calling twice regarding an overdue payment of $35,383.66 to his law firm.

(xi) Exhibit 33 - An email dated March 23, 2023, from Han to Scott Eadie stating that the attached list is a master client list for clients that "went to CLG." That full list is intentionally not included in the exhibit "for brevity."

(xii) Exhibit 34 - An email chain dated April 10, 2023, between Han and Jennifer McLaughlin concerning McLaughlin's offer letter for "Greystone" and informing McLaughlin that LPG's work phones were shut off and reactivated on April 10.

(xiii) Exhibit 35 - An email dated April 14, 2023, from Melissa Wilkes to Han inquiring as to when cases were transferred from LPG to Phoenix. It also includes an email discussing disconnection of the phones.

(xiv) Exhibit 36 - An email dated April 24, 2023, from Peter Osterman to Han and Jayde Trinh stating that he does not have email accounts for "CLG" or "PLG" but does have them for "LPG, GLC and OLG."

(xv) Exhibit 37 - An email dated May 11, 2023, from Han to Joshua Figueroa, Chance Typhair, and Cayden Cohen, regarding money Paychex is holding. It also includes a CitiBusiness Account Opening Confirmation for Greyson Law Center PC.

(xvi) Exhibit 38 - An email dated May 16, 2023, from Han to ctyphair@paychex.com, aharth@paychex.com, and Cora Devine stating Greyson's company ID is 16092497.

(xvii) Exhibit 39 - An email chain dated March 21, 2023, between Jayde, Randall Clark, and Han stating Pamella Moraes does not have access to Forth and nor does anyone else because they were locked out. It also states that all files have been moved to different firms and that Legal LPG has access to some of them. There is also a line addressed to Clark that appears to be from "Ty" asking for him to reach out regarding a new venture.

(xviii) Exhibit 40 - An email dated March 29, 2023, from Jayde to Legal and Attorney saying it is Han's "problem" to talk with Randall Clark about transfers.

(xix) Exhibit 41 - An email chain dated April 7, 2023, between Jayde and Denise Mikrut regarding the LPG phones.

(xx) Exhibit 42 - An email chain between Legal, Jayde, and Attorney regarding whether a client can reach out to Oakstone.

(xxi) Exhibit 43 - An email chain dated May 11, 2023, between Jayde and Ana Gurrola regarding "AG complaints" and stating they were shredded.

(xxii) Exhibit 44 - An email from Attorney dated April 26, 2023, instructing employees not to use Oakstone's Luna and to instead use Greyson's Luna. It also instructions not to use Fresh Sales and Slack.

(xxiii) Exhibit 45 - An email dated March 21, 2023, from Jayde to Daniel March, Admin, and Mona Montiero stating that Mona and Jayde are no longer employed by LPG.

(xxiv) Exhibit 46 - An email dated March 23, 2023, from Scott Eadie to Nicole Filtz, Vanessa Buchner, and Carl Summer stating that he believes the mail is being sent to "Dan's office." It also discusses files and scans.

(xxv) Exhibit 47 - An email dated April 30, 2023, from Tony Diab to Daniel March stating that attached to the email is an agreement for Oakstone referrals sent to Joon, which also includes that agreement.

(10) Supplemental Declaration of Jeremy B. Freedman in Support of Plaintiff Richard A. Marshack, Chapter 11 Trustee's Further Briefing in Opposition to Greyson Law Center, PC's Frivolous Motion to Vacate [1046 Dkt No. 290] and Supplemental Briefing Filed on Support Thereof [1046 Dkt. No. 474], which attaches the following exhibits:

(i) Exhibit L – Deposition transcript excerpts of Han Trinh dated March 20, 2024.

(ii) Exhibit M – Emails between "admin@lpglaw.com, dan@litigationpracticegroup.com, and joon@khanglaw.com regarding LPG's Bankruptcy Petition.

(iii) Exhibit N – Screenshot of the electronic signature properties inserted into LPG's Bankruptcy Petition showing the author as "AdminLPG."

(iv) Exhibit O – Text messages between Eng Taing and Jayde Trinh discussing the name Greyson.

(v) Exhibit P – Deposition transcript excerpts of Bradford Lee dated February 2, 2024.

(vi) Exhibit Q – BAT, Inc's Statement of Information on March 2, 2023 showing CEO, CFO, and Secretary as Han Trinh.

(vii) Exhibit R - BAT Inc's statement of Information on March 13, 2023 showing CEO, CFO, and, Secretary as Tony Diab.

(viii) Exhibit S - Han Trinh's "Index of Which of 68 Categories of Requested Documents Han Trinh Possesses and is Producing, Pursuant to Deposition Subpoena Served on Han Trinh by Dinsmore & Shohl LLP, for Han Trinh Deposition Which is Currently set to be Taken on 3/20/24, Starting at 10am, for 7 Hours Maximum; Privilege Log."

(ix) Exhibit T – Email from Maurice Diab to Trustee and his attorneys regarding Legacy Law Partners.

(x) Exhibit U – Excerpts from the April 23, 2023, 341(a) Meeting of Creditors.

On April 18, 2024, the Trustee also filed the Declaration of Randall Baldwin Clark [1046 Adv. Dk. 495]. On April 19, 2024, the Trustee filed "Exhibits A-J to Declaration of Randall Baldwin Clark," which contained the following exhibits:

(1) Exhibit A - An email from "Legal" to "debt-defense@randallclark.org" dated May 9, 2022, regarding a client's debt and monthly payment information.

(2) Exhibit B - An email dated February 8, 2023, to Pamella Moraes, with sender information redacted, showing a forwarded message from Oakstone Law Group PC telling a client their filed was transitioned to Oakstone from LPG.

(3) Exhibit C - An email chain between Randall Clark, Jayde Trinh (jayde@lpglaw.com), and Han Trinh (han@lpglaw.com) regarding access to "Forth."

(4) Exhibit D - An email dated April 18, 2023, from Randall Clark to "admin@greysonpc.com" thanking the receiver for a phone call, saying he awaits a spreadsheet.

(5) Exhibit E - Emails dated May 8 and 12, 2023, involving legal@greysonlawpc.com sending Randall Clark a new case assignment and Randall Clark providing Greyson his new intake email (info@lastmilelegal.com) for a new firm he started to take on debt-settlement cases.

(6) Exhibit F - An email dated May 18, 2023, from GLC Legal, sharing information about a client's case to Randall Clark's firm.

(7) Exhibit G - Emails dated June 5 and 8, 2023, from Randall Clark to Greyson saying attached are invoices for two cases Clark worked on for Greyson, with the total being $1,285.52, and requesting information on payment.

(8) Exhibit H - An email dated March 29, 2023, from Randall Clark asking for a phone call from Oakstone Legal to answer questions about files transferred from LPG to Oakstone, stating clients are incessantly calling wanting to know what is happening.

(9) Exhibit I - An email dated May 18, 2023, from "Phoenix Paralegal" to Clark sharing Clark's credentials to access Luna. It also includes emails regarding a case that came to Clark from Oakstone.

(10) Exhibit J - An email chain between Randall Clark and Ty Carss regarding the Trustee, hearings, the lockout, and Clark responding "LPG is the gift that keeps on giving. Pass the penicillin."

**12. Greyson's Reply, Related Pleadings, and Evidence**

**A. Greyson's Reply [1046 Adv. Dk. 501]**

On April 24, 2024, Greyson filed "Reply of Greyson Law Center PC, to Trustee Marshack's [Dkt.493/Dkt.492] Opposition to Greyson's Motion [Dkt.290 in Ap; Dkt.749 Main Case] to (1) Vacate Dkt. 13 Lockout/Preliminary Injunction Order, and Vacate the Successor [dkt. 70] Order, as to Greyson, and (2) Order Trustee/Dinsmore Firm to Return to Greyson 4 Categories of Items Seized in 6/2/23 Lockout, Which Dkt. 13 Order did not Authorize Seizure of, and which were Therefore Seized Illegally;" [1046 Adv. Dk. 501]. The Reply attached the following declarations and exhibits:

(1) Declaration of Doug Plazak, Esq.

(2) Declaration of Daniel S. March.

(3) Declaration of Han Trinh to Reply, which attached the following exhibit:

(i) Exhibit A - Greyson's Citi Bank account ending 6370 statement for May 2024.

(4) Declaration of Phuong Jayde Trinh to Reply.

(5) Declaration of "Attorney Isael Orozco Regarding Working for Greyson Law Center PC," which attached the following exhibits:

(i) Exhibit A – An email dated February 9, 2023, from Richard Meier to Orozco regarding filing a substitution of attorney as it was Meier's last day.

(ii) Exhibit B – An email from Richard Meier dated February 15, 2023, regarding cases that need substitutions.

(6) Declaration of "Attorney Haley Simmoneau regarding working for Greyson Law Center PC."

(7) Declaration of "Attorney Collin O. Donner in Support of Greyson Law Center PC's Motion for Administrative Claim."[35]

(8) Declaration of "Attorney Denise Mikurt, Esq. in Support of Greyson Law Center PC's Motion for Administrative Claim."[36]

(9) Declaration of "Attorney David Orr Regarding Working for Greyson Law Center PC."

(10) Declaration of "Attorney George Chamberlain Regarding Working for Greyson Law Center PC."

(11) Declaration of "Attorney Peter R Osterman Regarding Working for Greyson Law Center PC."

(12) Declaration of R. Reed Pruyn.

(13) Declaration of Mallory McCarthy.

(14) Declaration of Brenda Mendez.

(15) Declaration of Esmeralda Guzman.

---

[35] The Court notes that the title of the declaration references support to a different motion.

[36] See footnote 29.

(16) Declaration of Kennedy Martinez.

(17) Declaration of Kathleen P March to Reply, which attaches the following exhibits:

(i) Exhibit A – Pages 32 and 33 of the transcript of the June 12, 2023 hearing re Preliminary Injunction.

(ii) Exhibit B - Pages 73 and 74 of the transcript of the June 12, 2023 hearing re Preliminary Injunction.

**B. Greyson's Response to Evidentiary Objections [1046 Adv. Dk. 502]**

On April 24, 2034, Greyson filed **"**Response of Greyson Law Center PC, to Trustee Marshack Evidentiary Objections [Dkt. 493-5 (Also Filed as Dkt.492-3)] to Declaration of Tony Diab, Which Diab Declaration is Filed as Part of Greyson's Supplemental Briefing [Dkt. 474 Filed 4/2/24] in Support of Greyson Motion Moving to Vacate Lockout Order and Preliminary Injunction; and Moving for Return of Seized Items [Dkt. 290 in AP.; Dkt. 749 Main Case]" [1046 Adv. Dk. 502].

**C. Greyson's Evidentiary Objections and Requests to Strike**

On April 24, 2024, Greyson filed "Greyson Law Center PC's Evidentiary Objection to, and Request to Strike, Declaration of Ty Carss [Dkt. 493-2, Filed[sic] 4/18/24 (Also Filed as Dkt.492-1[sic] on 4/17/24, as Part of Trustee Marshack's Opposition to Greyson's Supplemental Briefing [Dkt.474[sic]] Filed by Greyson on 4/2/24, in Support of Greyson's Motion to Vacate Dkt.13/Have Items Dkt. 13 did not Authorize Seizing Returned to Greyson." [1046 Adv. Dk. 503].

On April 24, 2024, Greyson also filed "Greyson Law Center PC's Evidentiary Objection to, and Request to Strike, Declaration of Hershy Deutsch Decl [Dkt. 493-3 Filed 4/18/24; also Filed 4/17/24 As Dkt. 492-2] as Part of Trustee OPP to Greyson's Motion to Vacate Dkt. 13 and for Return of Illegally Seized Items. Deutsch Decl. is Objected to for Deutsch's Complete Lack of Personal Knowledge, and as Being Fictional as Regards Han Trinh and Greyson, Because Deutsch Never saw or Communicated with

Han, Anywhere[sic], and as a Deutsch/Marich Bein LLC Never had any Dealing with, Or Contact with, Greyson, at all." [1046 Adv. Dk. 504].

Again, on April 24, 2024, Greyson filed "Greyson Law Center PC's Evidentiary Objection to, and Request to Strike, Portions of "First Supplemental Declaration of Alex Rubin filed 4/18/24 [Dkt. 493-10], and Exhibits Thereto, Filed in Support of Trustee Marshack's Opposition to Greyson's Motion [Dkt. 290 In Adv. Pro; Dkt. 749 in Main Case] to Vacate [Dkt. 13] Lockout/ Pre. Inj. & for Return of Items." [1046 Adv. Dk. 505].

**13. Post-Hearing Briefs**

On May 1, 2024, the Court held a hearing regarding Greyson's Motion to Vacate the Preliminary Injunction. The Court took the matter under submission and ordered that the parties could submit a Post-Hearing Brief of Finding of Fact and Conclusions of Law by May 15, 2024.

**A. Greyson's Post-Hearing Pleadings**

On May 15, 2024, Greyson filed its "(Proposed) Findings of Fact and Conclusions of Law of Greyson Law Center PC, Relating to Greyson's Motion [Dkt. 290 in AP; Dkt.749[sic] Main Case] to: (1) Vacate Dkt. 13 Lockout & Preliminary Injunction Order, and Vacate the Successor Order as to Order, and Vacate the Successor Order as to Greyson, and to (2) Order Trustee/ Dinsmore Firm to Return to Greyson 4 Categories of Items Seized in 6/2/23 Lockout, Which Dkt. 13 Order did not Authorize Seizure of, and Which Were Therefore Seized Illegally." [1046 Adv. Dk. 532].

On May 15, 2024, Greyson also filed a "Declaration Of Kathleen P. March (Signed 5/14/24, Attaching Relevant Portions of 4 Transcripts as Exhibits A-D, Being Filed on 5/15/24, Along with Greyson's (Proposed) Findings of Fact and Conclusions pf Law." [1046 Adv. Dk. 533]. Attached to the Declaration of Ms. March are the following exhibits:

(1) Exhibit A – Portions of the May 1, 2024, hearing transcript.

(2) Exhibit B – Portions of the May 25, 2023, hearing transcript.

(3) Exhibit C – Pages 214-218 and pages 249-250 of Bradford Lee's February 2, 2024, deposition transcript.

(4) Exhibit D – The same as Exhibit C plus emails with Brad Lee, GLC Ops, and Keneth Hu, a Phoenix Retainer Agreement, and a Greyson Legal Services Agreement.

(5) Exhibit D[37] - The full transcript of Han Trinh's March 20, 2024, deposition.

On May 15, 2024, Greyson also filed the "Declaration of Jayde Trinh—Being Filed on 5/15/24—Rebutting Dinsmore Attorney Ghio's False Argument, Made at 5/1/24 Hearing Alleging (With Zero Evidence) that Greyson used LPG's Propriety Documents and Information; Which did not Happen." [1046 Adv. Dk. 534].

Finally, on May 15, 2024, Greyson also filed the "Declaration Of Han Trinh— Being Filed on 5/15/24—Rebutting Dinsmore Attorney Ghio's False Argument, Made at 5/1/24 Hearing, Alleging (With Zero Evidence) that Greyson used LPG's Propriety Documents and Information." [1046 Adv. Dk. 535].

### B. The Trustee's Post-Hearing Pleadings

On May 15, 2024, the Trustee filed "Plaintiff Richard A. Marshack's Objection to Greyson's Finding of Fact and Conclusions of Law [1046 Dkt. No. 532] in Violation of Local Bankruptcy Rule 7052-1" [1046 Adv. Dk. 536].

On May 15, 2024, the Trustee also filed "Plaintiff Richard A. Marshack's Finding of Fact and Conclusion of Law re: Greyson Law Center, PC's Motion to Vacate [1046 Dkt. No. 290] and Supplemental Briefing Filed in Support Thereof [1046 Dkt. No. 474]." [1046 Adv. Dk. 537].

### V. Discussion

The Court understands it can review its own dockets and advises that in this instance, it has examined the docket of the main bankruptcy case, as well as this adversary proceeding, as a whole. In reviewing the relevant evidence, the Court now understands through the records of the State Bar of California that Mr. March, days after he swore within his declaration that he was a member in good standing with the

---

[37] The Court notes that Greyson provided two Exhibit Ds.

State Bar, attempted to resign from the State Bar, and was later disbarred by the State Bar, allegedly for behavior with respect to activities of Debtor. Mr. March failed to mention in his declaration that, while he was attesting to the fact that he was a member of good standing at the time he signed the declaration, he was under active investigation for looting millions of dollars of client money from Debtor.[38]

Further, as noted above, Greyson also submitted declarations from Tony Diab in support of its Motion. Diab, however, has been disbarred by both the State of California and Nevada, for offenses such as stealing clients' funds and forging a judge's signature. [1046 Adv. Dk. 1, p. 7.]. Allegedly, Diab had been operating LPG by renting out Daniel March's law license, while he still had it, impersonating Mr. March, and forging Mr. March's signature. [1046 Adv. Dk. 1, pg. 7-8 at ¶46]. Given Diab's history, his uncorroborated declaration lacks credibility on its face.[39]

For the reasons set forth below, after consideration of all the pleadings filed in connection with the Motion, as well as the docket as a whole, the Court finds that Greyson has failed to meet its burden to vacate the Preliminary Injunction and has failed to meet its burden for the return of Greyson's alleged property. The Court

---

[38] *See*, Request for Judicial Notice of Actions of State Bar of California filed by the Trustee as Docket 64 in Adv. No. 8:23-ap-01098, of which the Court takes judicial notice. "[T]he Court can take judicial notice of the documents filed in the Cases . . . [and] the Adversary Proceeding . . . *Tuma v. Firstmark Leasing Corp. (In re Tuma)*, 916 F.2d 488, 491 (9th Cir. 1990) (noting that a court may take judicial notice of its own docket)." *King v. Exp. Dev. Can. (In re Zetta Jet USA, Inc.)*, 644 B.R. 12, 25 (Bankr. C.D. Cal. 2022). "The Court may not, however, infer the truth of the facts stated in those documents. *In re Harmony Holdings, LLC*, 393 B.R. 409, 413 (Bankr. D.S.C. 2008) (indicating that bankruptcy judges may take judicial notice of bankruptcy court records but may not 'infer the truth of the facts contained in documents, unfettered by rules of evidence or logic, simply because such documents were filed with the court')." *Id.* The Court may, however, take judicial notice of facts in the public record "not subject to reasonable dispute that are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Kihagi v. City of San Francisco*, 2016 U.S. Dist. LEXIS 5651, *7-8 (USDC NDCA 2016). *See also, Talos v. Spearman*, 2018 U.S. Dist. LEXIS 16943, *1 (USDC CDCA 2018) (Court took judicial notice of attorney's state bar admission status). In this case, the truth of the offer of State Bar resignation and then the disbarment of Mr. March is accepted by the Court.

[39] Though ordinarily credibility determinations are not proper absent an evidentiary hearing, the Court is using this credibility determination as a finding that Greyson did not meet its burden of proof. *See Burton v. Maney (In re Burton)*, 610 B.R. 633, 639 n.11 (B.A.P. 9th Cir. 2020).

approves the Trustee's offer to return Greyson's domain and website to Greyson based upon the conditions outlined below.

## VI. Analysis

In determining Greyson's Motion to Vacate, the Court addresses both the temporary restraining order and the preliminary injunction, in turn, as set forth below.

### A. Vacating The Temporary Restraining Order

Greyson, in its Motion, seeks to vacate the Court's temporary restraining order entered on May 26, 2023 ("May 26 TRO"). A temporary restraining order, however, is intended to preserve the status quo and prevent irreparable harm only until a preliminary injunction hearing can be held. *Snitko v. United States*, 2021 U.S. Dist. LEXIS 117574, at *4 (C.D. Cal. June 22, 2021) (internal citation omitted); *Cobos v. Robinhood Fin. LLC*, 2021 U.S. Dist. LEXIS 54562, at *4 (C.D. Cal. Feb. 10, 2021) (internal citation omitted). It therefore logically follows that, if a court enters a preliminary injunction, the temporary restraining order is superseded and loses its force, even if all terms are the same. *See e.g.*, *Richter v. KRG Trading, Inc.*, 2024 U.S. Dist. LEXIS 94771, at *4 (C.D. Cal. May 28, 2024).

Here, the Court, after notice and a hearing, issued a Preliminary Injunction on June 23, 2023 [1046 Adv. Dk. 70]. Upon the issuance of the Court's order entering the Preliminary Injunction, the May 26 TRO, as amended by the June 2 TRO, was superseded and lost all force. Greyson has provided no grounds upon which a temporary restraining order should be vacated after the entry of a preliminary injunction. Thus, Greyson's Motion to vacate the May 26 TRO, as modified by the June 2 TRO, is DENIED.

### B. Vacating the Preliminary Injunction Order

Greyson states that it also seeks to vacate the Preliminary Injunction Order, as to Greyson only. Greyson has not met is burden demonstrating that it is entitled to the relief sought.

### 1. No Significant Change in Factual or Legal Circumstances

"A district court has 'wide discretion' to dissolve, modify, or reconsider a preliminary injunction based on a change in factual or legal circumstances." (*See Latimore v. County of Contra Costa*, 1996 U.S. App. LEXIS 3524 (9th Cir. 1996) (quoting *Sys. Fed'n No. 91 v. Wright*, 364 U.S. 642, 647, 81 S. Ct. 368, 5 L. Ed. 2d 349 (1961)). The Court may only vacate or modify a preliminary injunction upon a motion for reconsideration and a showing of changed circumstances. *FTC v. Magui Publishers, Inc.*, 1990 U.S. Dist. LEXIS 17009, at *6 (C.D. Cal. Apr. 23, 1990); *See also*, *Credit Suisse First Bos. Corp. v. Grunwald*, 400 F.3d 1119, 1124 (9th Cir. 2005) (holding, as a general rule, that the denial of a motion to modify or dissolve an injunction, or to reconsider a request for an injunction, will be appealable only if the motion raises new matter not considered when the injunction was first issued). Greyson, however, provides no change in factual or legal circumstances that would warrant reconsideration of the Preliminary Injunction.

The Ninth Circuit has "long recognized 'the well-established rule that a district judge always has power to modify or to overturn an interlocutory order or decision while it remains interlocutory.'" *See Credit Suisse First Boston Corp. v. Grunwald*, 400 F.3d 1119, 1124 (quoting *Tanner Motor Livery, Ltd v. Avis, Inc.*, 316 F.2d 804, 809 (9th Cir. 1963)). However, for a court to modify, dissolve, or vacate a preliminary injunction, the motion must be "based on new circumstances that have arisen after the district court granted the injunction . . ." *Id.* It is the "party seeking modification or dissolution of an injunction [that] bears the burden of establishing that a significant change in facts or law warrants revision or dissolution of the injunction." *Karnoski v. Trump*, 926 F.3d 1180, 1198 (9th Cir. 2019) (quoting *Sharp v. Weston*, 233 F.3d 1166, 1170 (9th Cir. 2000)); *SEC v. Christian Stanley, Inc.*, 2012 U.S. Dist. LEXIS 200586, *4 (quoting *Sharp v. Weston*, 233 F.3d 1166, 1170 (9th Cir. 2000)).

Greyson, however, does not argue that there has been a significant change in law or fact. Instead, Greyson repeatedly argues that the May 26 TRO was granted based on

the "misrepresentation that Greyson was an alter ego of LPG," which was a false allegation[40]. The Court may, in deciding whether to issue a preliminary injunction, consider evidence which would otherwise be inadmissible to prevent irreparable harm. *Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009) (internal citations omitted). The Ninth Circuit has held:

> The urgency of obtaining a preliminary injunction necessitates a prompt determination and makes it difficult to obtain affidavits from persons who would be competent to testify at trial. The trial court may give even inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable harm before trial.

*Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984) (citing 11 C. Wright and A. Miller, *Federal Practice and Procedure, Civil*, § 2949 at 471 (1973)); *Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984).[41] A district court, when relying on not only the challenged evidence but also the many exhibits, affidavits, declarations and factual allegations which have been submitted by all parties throughout the course of the litigation, does not abuse its discretion. *Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009).  Here, the Court was entitled to rely upon the submitted evidence to prevent the allegations and evidence in support of irreparable harm.[42]

Further, at the June 12, 2023, hearing regarding the Preliminary Injunction, the Trustee made clear to the Court that Greyson was not an alter ego of Greyson. A fact of which Movant is certainly aware as it is repeated in most, if not all, pleadings filed by Greyson.

---

[40] For example, Greyson complains that the Court relied on evidence which was hearsay. *See*, Dk. 474, pg. 9:21-24 (referring to the declaration of Ty Carss at ¶8.d. at Dk. 47-6, which was on "information and belief").

[41] *See also*, *Ross-Whitney Corp. v. Smith Kline & French Labs.*, 207 F.2d 190, 198 (9th Cir. 1953) (holding a preliminary injunction may be granted upon affidavits and that a full hearing on the merits would defeat the purpose of a preliminary injunction which is to give speedy relief from irreparable injury).

[42] The Court notes that the two disbarments of Messrs. Diab and March, as well as the evidence detailed herein, provide further credence to the Trustee's fears, after the fact.

Therefore, the Court's order granting the Preliminary Injunction, as to Greyson, was not based upon any alter ego allegation but rather Greyson's intimate involvement with Debtor, as described herein, and in fraudulent transfers relating to Debtor.

### 2. A Preliminary Injunction is Appropriate in Adversaries Alleging Fraudulent Transfers

Greyson further argues that the allegation that it received fraudulent transfers from LPG/LPG alter egos would not have entitled the Trustee to a lockout, TRO, preliminary injunction. Greyson's counsel, Kathleen March states in a declaration that "[i]n 35 years of bankruptcy work, I have never seen a lockout and preliminary injunction order, as was issued here, issued in a fraudulent transfer case." [1046 Adv. Dk. 290-2, pg. 28, ¶ 24]. However, the Ninth Circuit Court of Appeals has held that the issuance of a preliminary injunction in an adversary proceeding that alleges fraudulent conveyances or other equitable causes of action is appropriate. *Rubin v. Pringle (In re Focus Media Inc.)*, 387 F.3d 1077, 1084-85 (9th Cir. 2004).[43] The Court in *Glasser v. Desert Ranch LLLP (In re Yellowstone Mt. Club, LLC)*, also granted a preliminary injunction due to the defendant's fraudulent transfers in connection with the debtors and where the plaintiff, as here, persuasively alleged serious fraudulent activity on the part of the defendants. 2013 Bankr. LEXIS 5225 (Bankr. D. Mont. Dec. 13, 2013).

As noted by the Ninth Circuit, the "Supreme Court has expressly stated that a preliminary injunction barring asset transfer is available where the suit seeks equitable relief." *Johnson v. Couturier*, 572 F.3d 1067, 1083-84 (9th Cir. 2009) (citing *Grupo Mexicano De Desarrollo v. All. Bond Fund*, 527 U.S. 308, 324-25, (1999)).

Therefore, the Court had authority to issue a preliminary injunction against an alleged fraudulent transferee.

---

[43] The Court notes that the Ninth Circuit in *In re Focus Media, Inc* was affirming the decision of then-Bankruptcy Judge Kathleen March, Movant's counsel herein.

**3. A Preliminary Injunction Cannot be Dissolved Under FRCP 60(b)(3)**

Further, Greyson erroneously cites to FRCP 60(b)(3) as a basis to vacate the Preliminary Injunction. FRCP 60(b)(3) provides:

> Grounds for Relief from a Final Judgment, Order, or Proceeding. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party

A preliminary injunction, however, is not a "final judgment, order or proceeding," that may be addressed by a motion under Rule 60(b). *Prudential Real Est. Affiliates, Inc. v. PPR Realty, Inc.*, 204 F.3d 867, 880 (9th Cir. 2000); *SEC v. Christian Stanley, Inc.*, 2012 U.S. Dist. LEXIS 200586, at *3 (C.D. Cal. Apr. 3, 2012); *Addaday, Inc. v. Artist Int'l Co.*, 2022 U.S. Dist. LEXIS 91155, at *7 (C.D. Cal. Apr. 19, 2022) (internal citations omitted); *See also,* Advisory Comm. Note to Fed. R. Civ P. 60(b) ("The addition of the qualifying word 'final' emphasizes the character of the judgments, orders or proceedings from which Rule 60(b) affords relief; and hence interlocutory judgments are not brought within the restrictions of the rule, but rather they are left subject to the complete power of the court rendering them to afford such relief from them as justice requires").

It is therefore clear that the grant of a preliminary injunction is not a final order but rather is interlocutory in nature and not covered by Rule 60(b). *FTC v. Magui Publishers, Inc.*, 1990 U.S. Dist. LEXIS 17009, at *5 (C.D. Cal. Apr. 23, 1990); *Waco-Porter Corporation v. Tubular Structures Corporation of America*, 222 F.Supp. 332, 333 (S.D.Cal. 1963); *Washington Capitols Basketball Club, Inc. v. Barry*, 419 F.2d 472, 475 (9th Cir. 1969); *Craig v. M/V Peacock*, 760 F.2d 953, 955 fn. 1 (9th Cir. 1985).

Further, Greyson's moving papers acknowledge that the Court's Preliminary Injunction is not a final order. In Greyson's Response to this Court's tentative ruling for the January 17, 2024, hearing, Greyson points out that the Preliminary Injunction is in

effect "until further Order of this Court." This language emphasizes the interlocutory nature of the Preliminary Injunction. Greyson has failed to establish, therefore, that the Preliminary Injunction is a "final order" subject to Rule 60(b)(3) as required. *See Alcantara v. Archambeault*, 2020 U.S. Dist. LEXIS 211655, at *4 (S.D. Cal. Nov. 12, 2020). Thus, Greyson's request for relief under FRCP 60(b)(3) is denied[44].

As Greyson has failed to meet its burden that there was a significant change in facts or law warranting revision, modification, or dissolution of the Preliminary injunction, the Motion is DENIED.

## C. Request for the Return of Greyson's Alleged Property

Greyson further seeks an order requiring "Trustee/Dinsmore firm to return to Greyson 4 categories of items seized in 6/2/23 lockout." Greyson seeks the return of the listed items under the argument that their seizure exceeded the scope of the Preliminary Injunction and/or are items purchased with non-LPG related funds. The following "categories" are what Greyson seeks return of:

(1) approximately 50 computers seized (including beelinks).

(2) Greyson's Microsoft account data and documents, including the one drive backup to Greyson's Microsoft account.

(3) Greyson's domain and website www.greysonlawpc.com on godaddy.com.

(4) Greyson's 100+ email accounts.

As a preliminary matter, Greyson argues that the May 26 TRO and Preliminary Injunction should be interpreted against the Trustee as the party which drafted the orders due to the doctrine of *contra proferentem*. The United States Supreme Court has

---

[44] To the extent that Greyson intended its request to encompass any additional section under Rule 60(b), such relief is similarly denied.  Reconsideration is an "extraordinary remedy" which should be used "sparingly in the interests of finality and the conservation of judicial resources." *Kona Enter., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000); see also *Sch. Dist. No. 1J, Multonomah Cnty. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993) (stating that reconsideration should only be granted in "highly unusual circumstances"). A motion for reconsideration "should not merely present arguments previously raised, or which could have been raised in the initial . . . motion." *United States v. Westlands Water Dist.*, 134 F.Supp.2d 1111, 1130 (E.D. Cal. 2001) (citing *Backlund v. Barnhart*, 778 F.2d 1386, 1388 (9th Cir. 1985)).

held that *contra proferentem* is by definition triggered only after a court determines that it cannot discern the intent of the parties. *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 187, 139 S. Ct. 1407, 1417 (2019). The Court finds no ambiguity of intent in its relevant orders. Regardless, a bankruptcy court has the inherent power to interpret and enforce its own orders and clarify its own orders. *See Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 137 (2009); *In re Palmdale Hills Prop., LLC*, 2011 Bankr. LEXIS 2300, at *8-9 (Bankr. C.D. Cal. June 13, 2011) (citing *Aspen Specialty Ins. Co. v. Muniz Eng'g Inc.*, 2006 U.S. Dist. LEXIS 39800, (S.D. Tex. June 15, 2006)). Here, the Court will interpret its own orders, specifically the May 26 TRO and the Preliminary Injunction, and does not find any sound reason why the doctrine of *contra proferentem* would be triggered in this instance.

### 1. Category One: Computers

On June 2, 2023, the Trustee, under Court order, locked Greyson out if its offices and seized various items. According to Greyson, the Trustee seized approximately 50 computers that belonged to Greyson. Greyson argues that that Han Trinh personally paid for "some of the approximately 50 Greyson computers: and Justin Nguyen also paid for "some of the approximately 50 Greyson computers." Greyson further argues that, contrary to the Trustee's assertions, there is no evidence that any of Greyson's approximately 50 computers were purchased by LPG, Phoenix, or any other alter ego of LPG.

The Trustee argues that there are fewer than 50 computers[45], which were initially identified as laptops, that Greyson claims they own. The Trustee states that Greyson "refuses to provide the Trustee with further information" to establish that Greyson own the computers, to show Han and Nguyen's credit cards were not paid with LPG funds (from whatever source) or identification/serial numbers for the equipment.

---

[45] It is unclear to the Court how the Trustee is aware that there are less than 50 computers that could potentially be Greyson's but does not know which. The Court expects that if the Trustee is aware that any items in its possession through the authority provided under the Preliminary Injunction are not that of Debtor, that the Trustee would make every effort to rightfully return such items.

The Court notes that the evidence provided by the parties demonstrates, as noted *supra*, that Han Trinh was advised by Wes Thomas, LPG's former Chief Financial Officer and close associate of Diab, that there was an open office space available where Greyson could use the office space, existing furniture, and existing IT equipment for free. [1046 Adv. Dk. 47-2, ¶10]. Han Trinh admits that she accepted Mr. Thomas' offer on behalf of Greyson as the Administrator and that the office space was the prior office of Oakstone, an LPG affiliate with Phoenix being the tenant. [1046 Adv. Dk. 47-2, ¶10]. Accordingly, Greyson was provided computers and "IT equipment" by LPG. [*Id.*]

Greyson has failed to identify exactly what property, which "computers," belong to them. For example, Exhibit A to Nguyen's declaration [1046 Adv. Dk. 325] is a credit card statement for H3 Computer Services addressed to Sherri Chen, with Justin Nguyen as a cardholder, account ending in 6967 for a Costco Anywhere Visa Business Card by Citi. Yet, Nguyen declares under penalty of perjury that the exhibit is his personal credit card bill showing charges for 24 beelinks, but all charges are redacted except for a $40.53 charge from godaddy.com. There also appears to be a screenshot from an Amazon order for $3,776.52, however, the account used is a visa ending in 9344 and order method lists "Business." Nguyen's declaration does not show that Sherri Chen and/or H3 Computer Services purchased any "computers" for Greyson, or even if they did, which specific ones. Han Trinh likewise provided no convincing evidence that she personally purchased any "computers" for Greyson, or if she did, which ones. Greyson's assertion that Han Trinh and Justin Nguyen personally purchased "some" computers, each for Greyson, is insufficient to show that Greyson owns any specific computers in the Trustee's possession.[46]

---

[46] The Court notes that the Trustee requested receipts and serial numbers of computers Greyson alleges as its own [1046 Adv. Dk. 325-7, Exhibit A], but Greyson did not provide any such information. Instead, Greyson's counsel stated "[i]t is not Greyson's burden of proof to supply receipts and serial numbers for the computers you seized at Greyson's office on 6/2/23. It would be your firm's burden of proof to prove that the 50 computers...belong to an entity other than Greyson..." [1046 Adv. Dk. 325-8, Exhibit H]. However, the Court, in granting the Preliminary Injunction, in reviewing the relevant evidence, and as explained herein, notes that the Trustee *did* meet its burden in establishing that the computers in the Greyson offices belonged to LPG.

Therefore, Greyson's request that "approximately 50 computers" be returned is DENIED.[47]

**2. Categories Two and Four: Greyson's Microsoft Account and Greyson's Email Accounts**

Greyson argues that the May 26 TRO and the Preliminary Injunction did not authorize the Trustee to seize and lock Greyson out of Greyson's Microsoft account, except from the Microsoft Sharepoint Feature. Further, Greyson states there is no language in the May 26 TRO or Preliminary Injunction authorizing the Trustee to seize Greyson's email accounts and therefore, they should be returned.

Greyson's assertions are simply incorrect. The Preliminary Injunction authorized the seizure of certain Greyson data, accounts, and emails. The following are just a few examples of the language authorizing such seizures in the Preliminary Injunction:

(1) In regard to the turnover of Estate property:

(i) "All accounting records, files, data and information for LPG; ... Greyson;... stored on NetSuite, Quickbooks and Microsoft SharePoint, G-Suite or *other permanent or cloud based systems*" (emphasis added) [1046 Adv. Dk. 70, pg. 4: ¶8],

(ii) "All email accounts related to LPG;...Greyson; .... stored maintained and/or hosted on Office 365, g-suite or any other email server, whether physical or cloud based servers (hereinafter "Email Data")".

(2) In regard to ordering a lockout out of Estate property:

(i) "All persons identified below are enjoined and shall not access or attempt to gain access whether physically, remotely, electronically, or virtually to the following locations associated with ...Greyson.... Accounting Data and/or accounts on

---

[47] The denial of this portion of the Motion does not prevent Greyson from providing the Trustee with further identifying information, if any, of exactly which computers Greyson is referring to with proof that Nguyen and Han Trinh's credit card charges were not paid by LPG funds directly, or indirectly to establish that any computers in the Trustee's possession do in fact belong to Greyson, which could warrant their return to the extent permissible under other portions of the Preliminary Injunction.

NetSuite, Quickbooks and Microsoft SharePoint, G-Suite or *other permanent or cloud based systems...*" [*Id.* at pg. 10: ¶1] (emphasis added).

Therefore, the seizure of Greyson's Microsoft Account and emails falls squarely within the authority of the Preliminary Injunction.

However, the Preliminary Injunction does provide that nothing therein is intended to require Greyson or its owner, Scott Eadie, or Greyson employees Jayde Trinh or Han Trinh to turn over certain items which Greyson did not obtain from or through any access to data or personnel, including affiliated attorneys, from LPG, or other named entities. [*Id.* at pg. 5: ¶14]. The Preliminary Injunction was also not intended to prevent Greyson from storing, maintaining, and/or hosting email accounts and domains on Office 365, g-suite or any other email server, whether physical or cloud based, that is unrelated to LPG or other named entities, provided that such email accounts and domains were not funded through, or acquired or developed by funds the genesis of which was the legacy files of LPG. [*Id.*].

Greyson argues that Han Trinh personally paid for the $2,300 Microsoft monthly fee for Greyson's account, not LPG, and therefore the account and data should be returned. In support of Greyson's opposition, attached to Han Trinh's declaration in the Joint Statement, as Exhibit A, is a statement for a Wells Fargo Propel American Express Card ending in 5434 for Han Trinh with charges redacted except for (1) $254.50 to Airtable.com; (2) $2,312.25 to Microsoft; (3) $74.19 to Anytime Mailbox; and (4) $30.16 to godaddy.com.

The Trustee argues that Greyson's reliance on the credit card statement provided by Han to show she paid for the Microsoft account out of personal funds is insufficient as Han "reasonably had access to and most likely paid her credit card using BATs account, if not from other sources of LPG funds such as Maverick who held accounts at Wells Fargo."[48]  The Trustee asserts this would be consistent with Han's use of the BAT

---

[48] Han Trinh testified "I was explained that LPG bought out BAT, so BAT belongs to LPG." [1046 Adv. Dk. 493-11, Exhibit L, pg. 137].

account in May 2023 to pay other Greyson expenses and payroll and refusal to show the source of payment for her credit card.[49] As such, and considering the evidence throughout showing the commingling of LPG funds and assets with Greyson, the credit card statement of Han Trinh, for *one* month, for *one* Microsoft payment, without proof of what funds or account paid the statement, is insufficient given the circumstances to show, by a preponderance of the evidence, that Greyson's Microsoft Account, which includes Greyson's emails, was not paid for with LPG assets. Therefore, this request is DENIED.

### 3. Category Three: Greyson's domain and website www.greysonlawpc.com on godaddy.com

Greyson again argues that the Preliminary Injunction did not authorize seizure of Greyson's domain and website.

The Preliminary Injunction specifically notes that "nothing herein is intended to prevent Greyson from storing, maintaining, and/or hosting email accounts and domains on Office 365, g-suite or any other email server, whether physical or cloud based, that is unrelated to LPG, Phoenix, Oakstone, LGS Holdco, LLC, CLG, or Gallant, and provided that such email accounts and domains were not funded through, acquired or developed by funds the genesis of which was the legacy files of LPG…" [1046 Adv. Dk. 70, pg 5:26 – 6:2].

Greyson provides the declaration Justin Nguyen stating that he paid for the domain on his personal credit card. However, multiple bank statements, including that of Han Trinh and Maverick Management Group LLC, show payments to godaddy.com. No evidence has been provided showing that Nguyen's godaddy.com charge was related to Greyson. Further, Greyson does not provide evidence or an explanation as to why Nguyen, an employee of Greyson, paid for the domain.

---

[49] See, for example, the wire confirmation of payment to Scott Eadie on May 23, 2023, from BAT, Inc's account paid at the behest of Greyson [Dk. 325-4, Exhibit 13] and the email from Admin@greysonlawpc.com to other Greyson email accounts regarding "Greyson Payroll Wires 04/28" instructing to "send out from BAT Inc Chase account. $500k is daily limit (I can always change it)." [1046 Adv. Dk. 325-4, Exhibit 12].

Regardless, the Trustee agreed to relinquish control over Greyson's former website as being inconsequential at this time subject to further and immediate turnover in the event it is discovered the website and/or domain contains hidden gateways, paths or logins providing access to other restricted accounts, CRMs, or cloud storage facilities or other LPG proprietary information, documents, client information and ACH information that remain subject to the Court's Preliminary Injunction. [1046 Adv. Dk. 325, pg. 33: 15-22].

Therefore, based upon the Trustee's agreement noted above, the Court finds good cause to order the Trustee to return Greyson's website and domain name to Greyson. Greyson must, however, advise the Trustee should it decide to change the domain, hosting or other credentials necessary for the Trustee to monitor for unauthorized conduct and the domain and website will be subject to further and immediate turnover in the event it is discovered the website and/or domain contains hidden gateways, paths or logins providing access to other restricted accounts, CRMs, or cloud storage facilities or other LPG proprietary information, documents, client information and ACH information that remain subject to the Court's Preliminary Injunction.

///

## VII. Conclusion

For the reasons stated above, the Court finds that Greyson has failed to meet its burden to show that the May 26 TRO, as modified by the June 2 TRO, or the Preliminary Injunction should be vacated. Further, the Court finds that Greyson has failed to establish by a preponderance of the evidence, that any items sought to be returned are not property of the Estate. Therefore, the Motion is DENIED in its entirety with the exception of the Trustee returning Greyson's website and domain to Greyson based upon the conditions set forth herein.

**IT IS SO ORDERED.**

Date: August 27, 2024

Scott C. Clarkson
United States Bankruptcy Judge