Christopher Celentino (State Bar No. 131688)
Christopher B. Ghio (State Bar No. 259094)
Yosina M. Lissebeck (State Bar No. 201654)
**DINSMORE & SHOHL LLP**
655 West Broadway, Suite 800
San Diego, CA 92101
Telephone:  619.400.0500
Facsimile:  619.400.0501
christopher.ghio@dinsmore.com
christopher.celentino@dinsmore.com
yosina.lissebeck@dinsmore.com

Tyler Powell (Ky. Bar No. 90520 – Admitted pro hac vice)
**DINSMORE & SHOHL LLP**
100 West Main Street, Suite 900
Lexington, KY 40507
Telephone: 859-425-1056
Facsimile: 859-425-1099
tyler.powell@dinsmore.com

Special Counsel to Richard A. Marshack, Chapter 11 Trustee

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION**

| | |
|---|---|
| In re: | Case No.: 8:23-bk-10571-SC |
| THE LITIGATION PRACTICE GROUP P.C., | Adv. Proc. No. 8:24-ap-XXXX-SC |
| Debtor. | Chapter 11 |
| RICHARD A. MARSHACK,<br>Chapter 11 Trustee,<br><br>Plaintiff,<br><br>v.<br><br>COLONNA COHEN LAW, PLLC, a New York professional service limited liability company<br><br>Defendant. | **TRUSTEE'S COMPLAINT FOR:**<br><br>**(1) AVOIDANCE OF OBLIGATION TO PAY REVERSE CONTINGENT FEES AS FRAUDULENT TRANSFER(S);**<br><br>**(2) AVOIDANCE, RECOVERY, AND PRESERVATION OF THE PAYMENT OF REVERSE CONTINGENT FEES AND AVOIDANCE OF THE OBLIGATION TO PAY REVERSE CONTINGENT FEES AS FRAUDULENT TRANSFER(S)**<br><br>**(3) DECLARATORY JUDGMENT TO DETERMINE THE NATURE, EXTENT, AND PRIORITY OF DEFENDANT'S ASSERTED LIEN;**<br><br>**(4) AVOIDANCE, RECOVERY, AND PRESERVATION OF POST-PETITION TRANSFER(S); AND**<br><br>**(5) OBJECTION TO PROOF OF CLAIM** |

For his Complaint for *(1) Avoidance of Obligation to Pay Reverse Contingent Fees as Fraudulent Transfers; (2) Avoidance, Recovery, and Preservation of the Payment of Reverse Contingent Fees and the Obligation to Pay Reverse Contingent Fees as Fraudulent Transfers; (3) Declaratory Judgment to Determine the Nature, Extent, and Priority of Defendant's Asserted Lien; (4) Avoidance, Recovery, and Preservation of Post-Petition Transfer(s); and (5) Objection to Proof of Claim* (the "Complaint"), Plaintiff Richard A. Marshack, the Chapter 11 Trustee (the "Trustee" or "Plaintiff") for the bankruptcy estate (the "Estate") of debtor The Litigation Practice Group P.C. (the "Debtor" or "LPG") in the above-captioned bankruptcy case (the "Bankruptcy Case"), alleges and avers as follows:

## STATEMENT OF JURISDICTION, NATURE OF PROCEEDING AND VENUE

1.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 157(b)(2)(A), (E), (H) and (O), 1334(b), and General Order No. 13-05 of the District Court for the Central District of California because this is a core proceeding arising in and/or related to the Bankruptcy Case, which is a case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), and which is pending in the United States Bankruptcy Court for the Central District of California, Santa Ana Division (the "Court").

2.      Regardless of whether this proceeding is core, non-core, or otherwise, the Plaintiff consents to the entry of a final order and judgment by the Bankruptcy Court.

3.      Defendant is hereby notified that Rule 7008 of the Federal Rules of Bankruptcy Procedure requires it to plead whether consent is given to the entry of a final order and judgment by the Bankruptcy Court.

4.      Venue of this adversary proceeding properly lies in this judicial district pursuant to 28 U.S.C. § 1409(a) because this proceeding is related to the Debtor's pending Bankruptcy Case.

## THE PARTIES

5.      Debtor LPG is, and at all material times was, a professional corporation organized, existing, and in good standing under the laws of the State of California, with its principal place of business in Tustin, California.

6.      Defendant Colonna Cohen Law, PLLC ("Firm") is, and at all material times was, a professional service limited liability company formed in the state of New York and is subject to service of process at 46 N. Henry Street, Attn: Ashlee Colonna Cohen, Brooklyn, NY 11222.

## GENERAL ALLEGATIONS

**A.      The Bankruptcy Case**

7.      On March 20, 2023 ("Petition Date"), Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, commencing the Bankruptcy Case.

8.      The Office of the United States Trustee ("UST") filed its *Motion by United States Trustee to Dismiss or Convert Case Pursuant to 11 U.S.C. § 1112(b)* [Bankr. Docket No. 21] and creditors Debt Validation Fund II, LLC; MC DVI Fund 1, LLC; and MC DVI Fund 2, LLC filed the *Motion by DVF and MC DVI to Dismiss Chapter 11 Case Pursuant to 11 U.S.C. §§ 105, 305, 349, & 1112, or in the Alternative Convert This Case to Chapter 7 or Appoint a Trustee* [Bankr. Docket No. 44]. On May 4, 2023, the Court entered its *Order Directing United States Trustee to Appoint Chapter 11 Trustee* [Bankr. Docket No. 58].

9.      Pursuant to the *Acceptance of Appointment as Chapter 11 Trustee* [Bankr. Docket No. 63], on May 8, 2023, Trustee accepted his appointment as the Chapter 11 Trustee in the Bankruptcy Case, and he continues to serve in this capacity at this time. The Court approved the Trustee's appointment in its *Order Approving the U.S. Trustee's Application for the Appointment of a Chapter 11 Trustee* [Docket No. 65].

10.      Trustee was not appointed until after events of the case and, therefore, bases these allegations on information and belief. *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017) ("The *Twombly* plausibility standard . . . does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible."); *Miller v. City of Los Angeles*, 2014 U.S. Dist. LEXIS 198871, 2014 WL 12610195, at *5 (C.D. Cal. Aug. 7, 2014) (recognizing that the plaintiff's "information and belief" pleading was allowed and "necessary at times"); *see also Mireskandari v. Daily Mail and General Trust PLC*, 2013 U.S. Dist. LEXIS 194437, 2013 WL 12129642, at *4 (C.D. Cal. July 31, 2013) ("The Federal Rules

of Civil Procedure allow parties to plead facts on 'information and belief' if the facts 'will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.'" (citations omitted)).

11.     Plaintiff brings this action solely in his capacity as the Chapter 11 Trustee for the benefit of Debtor's Estate and its creditors.

**B.     LPG**

12.     LPG operated a law firm for consumers across the country who sought assistance in contesting or resolving debts they would identify.

13.     The consumers would pay LPG over a period of time via monthly debits from their bank accounts.

14.     The monthly payments were meant to cover all legal services LPG provided to the consumers including validation of the debts, review of documents to determine enforceability, and court appearances to halt lawsuits to obtain judgments.

15.     In certain instances, LPG would file a lawsuit in an effort to eliminate a disputed debt or to prosecute affirmative claims held by the consumers.

## LITIGATION WITH MERCHANT CASH ADVANCE LENDERS

16.     LPG frequently obtained operating capital through merchant cash advance agreements ("MCA Agreements"). According to the MCA Agreement, the lender would "purchase" a set amount of the Debtor's future receivables in exchange for a payment at execution.[1]  The Debtor was obligated to repay the lender for these purchased receivables via daily or weekly debits from its bank account.

17.     These weekly or daily debits often drained the Debtor's cash on hand since they were not tied to the Debtor's actual receipt of funds. The Debtor's inability to make payments as promised would cause the lender to declare the Debtor in default under the MCA Agreement.

18.     The MCA Agreements typically provided that New York law governed the agreement and that the parties agreed New York would the forum to resolve any dispute under the MCA

---

[1] While the terms of an MCA Agreement can vary, the Trustee believes most if not all of these agreements are disguised loans and not true sales of receivables. The Trustee is merely repeating the assertions in the agreements for the purposes of this complaint and reserves all his rights.

4

Agreement.

19.     Given these venue provisions, the MCA Agreement lenders frequently sued the Debtor in New York state courts.

20.     On or about August 26, 2021, the Debtor executed an engagement letter with the Firm to represent it in one or more suits filed in New York by MCA Agreement lenders. The Trustee does not have a copy of this letter.

21.      This August engagement letter is referenced in an October 11, 2021 letter from the Firm to the Debtor that purported to expand the scope of the Firm's engagement and to change the compensation structure of the Firm ("Engagement Letter"). In the Engagement Letter, the Firm stated that it would continue to represent the Debtor under a hybrid fee structure. The Firm would receive $210.00 per hour for time billed and would be entitled to a "reverse contingent fee" of twenty-five percent of the difference between the amount that a Plaintiff sought to recover from LPG and the ultimate amount that the Debtor paid or promised to pay to settle the Plaintiff's claims against it ("Contingent Fee"). A true and accurate copy of the Engagement Letter is attached hereto as **Exhibit A**.

22.     Under the Engagement Letter, the Debtor was obligated to pay the Contingent Fee even if it defaulted under the settlement agreement, or if it had to borrow the money or sell assets to pay a settlement payment.

23.     The Firm negotiated several "settlements" to resolve lawsuits filed to enforce MCA Agreements against the Debtor, and the Firm charged fees to the Debtor based not only on the time spent on the matters at the agreed upon hourly rate, but also based on the Contingent Fee assessed on "settlements" obtained.

24.     Prior to the Petition Date, the Debtor made several payments to the Firm that paid not only some of the hourly charges, but also some of the Contingent Fees.

25.     After the Petition Date, the Firm filed Proof of Claim 204 on August 14, 2023 asserting it was owed $808,704.37 on an unsecured basis.

26.     As part of the Trustee's investigation of claims of the estate and determination of potential secured claims, the Trustee requested that the Firm turn over its client files with the Debtor

#45235102V3

1  (the "Files") since the Firm had represented the Debtor against some of the same entities that were

2  asserting secured claims against the estate.

3       27.    The Firm refused to turn over the Files, and the Court ultimately entered an Order

4  Directing the Firm to turn over the Files [Dkt. No. 926 in the main case] with all rights being reserved.

5       28.    In advance of the hearing on the Trustee's Motion for Turn Over, the Firm amended

6  its Claim on January 30, 2024 to assert a secured claim of $1,201,156.38 ("Amended Claim'). The

7  Firm asserted the Amended Claim was secured by virtue of the Firm attorney's lien against both the

8  Files and against any recoveries on the claims that the Firm had filed on behalf of the Debtor

9  (collectively "Lien").

10       29.    As counsel for the Debtor in litigation against one or more MCA Agreement lenders,

11  the Firm asserted claims or defenses against these lenders that were unresolved as of the Petition Date.

12       30.    While the Amended Claim was not itemized, the Firm included an accounting of the

13  payments it had received from the Debtor and the Contingent Fees it still claimed to be owed when it

14  turned over documents to the Trustee ("Accounting"). A true and accurate copy of the Accounting is

15  attached hereto as **Exhibit B**.

16       31.    According to the Accounting, the amount of the Amended Claim is composed of

17  Contingent Fees of (i) $265,074.50 ("BMF Fee") owed for a settlement between the Debtor and BMF

18  Advance, LLC  ("BMF"); (ii) $277,377.50 ("Diverse Fee") owed for a settlement between the Debtor

19  and Diverse Capital, LLC ("Diverse"); and (iii) $658,704.38 outstanding on a $808,704.38 ("Cobalt

20  Fee") charged for a settlement between the Debtor and Cobalt Funding Solutions, LLC ("Cobalt").

21       32.    The Accounting also stated that two other Contingent Fees had been charged and paid

22  by the Debtor. The Accounting stated that $57,547.36 ("Liberty Fee") had been paid to the Firm for

23  a Contingent Fee charged for a settlement with Liberty Fund Group, LLC ("Liberty") and $23,325.00

24  ("Bridge Fee") had been paid to the Firm for a Contingent Fee owed for a settlement with Hamilton

25  Advance, Inc. dba Bridge Capital ("Bridge").[2]

26

27

---

28  [2] This is a different, but similarly named entity, to Bridge Funding Cap, LLC, which is a defendant in
Adversary Proceeding No. 8:24-ap-01011.

#45235102V3

33.    According to the Accounting, the Debtor made payments that were applied both to hourly fees as well as Contingent Fees ("Payments"). Payments from the Debtor to the Firm are identified on **Exhibit C** hereto. The Debtor made other transfers to the Firm that the Trustee believes were subsequently paid to third parties pursuant to negotiated settlements. Because the Firm appears to have been a conduit for these payments, the Trustee is not asserting any claims against the Firm regarding these transfers at this time. However, the Trustee reserves all his rights with respect to these transfers and payments.

<div align="center">

**RESERVATION OF RIGHTS**

</div>

34.    Plaintiff reserves the right to bring all other claims or causes of action that Plaintiff may have against the Defendant herein or subsequently added as a party with leave of court, on any and all grounds, as allowed under the law or in equity, including but not limited to, those claims not known by the Trustee at this time but that he may discover during the pendency of this adversary proceeding or that he may be entitled to assert based on the relief granted in this adversary proceeding. These reserved claims include, but are not limited to, actions to avoid and recover payments or other transfers made to parties herein pursuant to applicable law and objections to allowance and treatment of claims of any Defendants.

<div align="center">

**FIRST CLAIM FOR RELIEF**

**Avoidance of Obligation to Pay BMF Fee and Diverse Fee as Fraudulent Transfers**

**[11 U.S.C. § 548(a)(1)(B)]**

</div>

35.    Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 34 as though set forth in full.

36.    11 U.S.C. § 548(a)(1)(B), in relevant part, permits a debtor or trustee to avoid "any obligation … incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition" if the debtor failed to receive reasonably equivalent value in exchange for such transfer or obligation and if the debtor:

(I)    was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

(II)    was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;

<div align="center">

7

</div>

(III)    intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured . . .

37.    Pursuant to the Engagement Letter, the Debtor was obligated to pay the BMF Fee when it executed a settlement agreement with BMF Advance, LLC ("BMF Settlement") on or about February 23, 2023. A true and accurate copy of the BMF Settlement is attached hereto as **Exhibit D**.

38.    As the BMF Settlement noted, the Debtor paid part of its settlement payment with funds borrowed from City Capital NY, LLC ("City Capital"). The Debtor's MCA Agreement with City Capital is attached to Proof of Claim No. 89 filed in the main bankruptcy case. To obtain the $1,100,000.00 it paid to BMF and additional funding, the Debtor promised to repay City Capital the sum of $3,000,000.00.

39.    As a result of the BMF Settlement and City Capital transaction, the Debtor's financial condition was worse after the BMF Settlement than it was before the BMF Settlement was executed.

40.    The Debtor did not receive reasonably equivalent value when it became obligated to pay the Firm the BMF Fee because it realized no benefit under the BMF Settlement.

41.    The Debtor was insolvent at the time of the BMF Settlement as it occurred weeks before the Petition Date and after many of the Debtor's assets had been pledged or transferred to third parties. Additional evidence of LPG's insolvency is provided by the lawsuits that the Firm was retained to fight. LPG was not only borrowing against its assets and future income, often on unfavorable terms, in MCA transactions, but it was also having to pay fees owed to the marketing affiliates for providing it clients. Pursuant to the agreements with the marketing companies, significant percentages of future payments were already promised to be paid to the marketing affiliates from whatever future income the Debtor would receive.

42.    The Debtor entered into a settlement agreement with Diverse ("Diverse Settlement") on or about January 24, 2022. A true and accurate copy of the Diverse Settlement is attached hereto as **Exhibit E**.

43.    Under the Diverse Settlement, the Debtor was to pay Diverse the sum of $1,025,000.00 over time. The Debtor failed to pay all amounts owed under the Diverse Settlement before the Petition Date.

#45235102V3

44. According to the Engagement Letter, the Debtor became obligated to pay the Diverse Fee when it executed the Diverse Settlement whether or not it realized the benefits of the Diverse Settlement.

45. Because the Debtor failed to complete the Diverse Settlement, Diverse remained a creditor of the Debtor on the Petition Date. Diverse filed Proof of Claim No. 2489 asserting that the Debtor owed it more than $1,200,000 as of the Petition Date and that this amount was secured by a lien against the Debtor's assets. The Trustee has sued Diverse in Adversary Proceeding No. 8:24-ap-01011 to resolve the claim of Diverse.

46. The Debtor did not receive reasonably equivalent value when it became obligated to pay the Diverse Fee to the Firm because the Debtor realized no benefit from the Diverse Settlement.

47. The Debtor was insolvent at the time of the Diverse Settlement as it was already using unearned client funds to pay for operating expenses and had granted numerous creditors liens against its assets. Additional evidence of LPG's insolvency is provided by the lawsuits that the Firm was retained to fight. LPG was not only borrowing against its assets and future income, often on unfavorable terms, in MCA transactions, but it was also having to pay fees owed to the marketing affiliates for providing it clients. Pursuant to the agreements with the marketing companies, significant percentages of future payments were already promised to be paid to the marketing affiliates from whatever future income the Debtor would receive.

48. The Debtor's obligation to pay the Diverse Fee and the BMF Fee to the Firm should be avoided as fraudulent transfers under 11 U.S.C. § 548(a)(1)(B) as the Debtor incurred these obligations while it was insolvent and because the Debtor did not receive reasonably equivalent value in exchange for incurring these obligations.

## SECOND CLAIM FOR RELIEF

### Avoidance, Recovery, and Preservation of Actual Fraudulent Transfers Related to Cobalt Fee, Liberty Fee, and Bridge Fee and Related Payments

### [11 U.S.C. §§ 548(a)(1)(B), 550, and 551]

49. Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 48 as though set forth in full.

#45235102V3

50.     11 U.S.C. § 548(a)(1)(B), in relevant part, permits a debtor or trustee to avoid "any transfer … or any obligation … incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition" if the debtor failed to receive reasonably equivalent value in exchange for such transfer or obligation and if the debtor

(I)     was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

(II)     was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;

(III)     intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured…[.]

51.     Pursuant to the Engagement Letter, the Debtor was obligated to pay the Liberty Fee when it executed a settlement agreement with Liberty ("Liberty Settlement") on or about October 8, 2021. A true and accurate copy of the Liberty Settlement is attached hereto as **Exhibit F**.

52.     Pursuant to the Engagement Letter, the Debtor was obligated to pay the Bridge Fee when it executed a settlement agreement with Bridge ("Bridge Settlement") on or about October 20, 2021. A true and accurate copy of the Bridge Settlement is attached hereto as **Exhibit G**.

53.     Pursuant to the Engagement Letter, the Debtor was obligated to pay the Cobalt Fee when it executed a settlement agreement with Cobalt ("Cobalt Settlement") on or about February 8, 2022. A true and accurate copy of the Cobalt Settlement is attached hereto as **Exhibit H**.

54.     The Liberty Settlement, Bridge Settlement, and Cobalt Settlement were executed within two years of the Petition Date, and the Engagement Letter obligated the Debtor to pay these Fees when the Settlements executed.

55.     The Debtor paid the Liberty Fee and Bridge Fee to the Firm when it made certain Payments. The Debtor paid $150,000 of the Cobalt Fee in Payments made before the Petition Date.

56.     Liberty's lawsuit against the Debtor was filed on October 7, 2021, and the Liberty Settlement was executed on October 8, 2021. To pay the Liberty Fee, the Debtor paid $57,547.36 plus time at an hourly rate to the Firm for two days of work.

57.     Bridge's lawsuit against the Debtor was filed on September 17, 2021. The Bridge

Settlement was executed on October 20, 2021. To pay the Bridge Fee, the Debtor paid $23,325.00 plus time at an hourly rate to the Firm for just over a month of representation.

58.    The Debtor did not receive reasonably equivalent value when it incurred and paid the Liberty Fee and Bridge Fee because the Fees were excessive within the meaning of Rule 1.5 of the New York Rules of Professional Conduct as a reasonable lawyer reviewing the facts would conclude the two Fees were excessive given the work and time required to resolve the matters.

59.    Cobalt's lawsuit against the Debtor was filed on October 14, 2021. The Cobalt Settlement was executed on February 8, 2022. The Firm charged the Debtor the sum of $808,704.38 for the Cobalt Fee, and the Debtor paid $150,000 of this Fee prior to the Petition Date.

60.    The Debtor did not receive reasonably equivalent value when it incurred the Cobalt Fee or when it paid $150,000 of the Cobalt Fee to the Firm because the Fees were excessive within the meaning of Rule 1.5 of the New York Rules of Professional Conduct as a reasonable lawyer reviewing the facts would conclude the Cobalt Fee was excessive given the work and time required to resolve the matter.

61.    The Debtor also did not receive reasonably equivalent value in exchange for incurring the Liberty, Bridge, and Cobalt Fees because the Fees were based on the difference between the amount demanded in the complaint and the amount the Debtor agreed to pay. The amount demanded in the complaint included excessive fees and costs that may not have been recoverable. These inflated demands increased the amount of the Contingent Fees when the matter settled.

62.    Upon information and belief, the Debtor likely borrowed money from other creditors to pay the amounts owed under the Liberty Settlement, Bridge Settlement, and Cobalt Settlement. Because the Debtor borrowed money to pay these Settlements, the Debtor received little to no benefit from the Settlements because this borrowing and the obligation to pay the Contingent Fee increased the debt owed by the Debtor.

63.    The Debtor was insolvent at the time of the BMF Settlement as it occurred weeks before the Petition Date and after many of the Debtor's assets had been pledged or transferred to third parties. Additional evidence of LPG's insolvency is provided by the lawsuits that the Firm was retained to fight. LPG was not only borrowing against its assets and future income, often on

#45235102V3

unfavorable terms, in MCA transactions, but it was also having to pay fees owed to the marketing affiliates for providing it clients. Pursuant to the agreements with the marketing companies, significant percentages of future payments were already promised to be paid to the marketing affiliates from whatever future income the Debtor would receive.

64.    The obligation to pay the Liberty Fee and Bridge Fee and the actual payment of these two Fees should be avoided as fraudulent transfers under 11 U.S.C. § 548(a)(1)(B), and the estate should be relieved from the payment of these obligations and/or any such transferred property, or the value thereof, should be recovered and preserved for the benefit of the Estate pursuant to 11 U.S.C. §§ 550 and 551.

65.    The obligation to pay the Cobalt Fee and the payment of $150,000 of the Cobalt Fee to the Firm should be avoided as fraudulent transfers under 11 U.S.C. § 548(a)(1)(B), and the estate should be relieved from the payment of these obligations and/or any such transferred property, or the value thereof, should be recovered and preserved for the benefit of the Estate pursuant to 11 U.S.C. §§ 550 and 551.

## THIRD CLAIM FOR RELIEF

### Declaratory Judgment and Valuation of Secured Claim

### [11 U.S.C. § 506 and 28 U.S.C. § 2201(a)]

66.    Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 65 as though set forth in full.

67.    28 U.S.C. § 2201(a) provides that "In a case of actual controversy within its jurisdiction…any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."

68.    Federal Rule of Bankruptcy Procedure 7001 requires any proceeding "to determine the validity, priority, or extent of a lien or other interest in property" or "to obtain a declaratory judgment related to" determining the validity, priority, or extent of a lien or other interest in property to be filed as an adversary proceeding.

#45235102V3

69.     If the Court finds in favor of the Trustee on Counts One and Two, nothing will be owed on the Amended Claim. However, if any portion of the Amended Claim remains outstanding after resolution of Counts One and Two, the Defendant has asserted that this Amended Claim is a secured claim pursuant to 11 U.S.C. § 506 by virtue of an attorneys' lien provided under New York state law.

70.     As discussed above, New York state law may recognize the right of an attorney to assert a Lien both against a client's property and//or the claim(s) that have been placed with an attorney for litigation.

71.     When ordered to turn over the Files to the Trustee, the Firm asserted that the entire amount of its Amended Claim was secured by its lien against the Files for all matters.

72.     The Firm asserted a lien against and refused to turn over all Files of the Debtor even those for matters where it had been paid in full or for matters where no Contingent Fee was owed.

73.     11 U.S.C. § 506(a) limits the amount of a secured claim to "the extent of the value of such creditor's interest in the estate's interest in such property" with such "value" being determined "in light of the purpose of the valuation … [.]" Thus, the amount of the Amended Claim that can be secured by the Files is limited at the "value" of the Files.

74.     Pursuant to 11 U.S.C. § 506, the value of the Files should be determined in light of the potential cost to the Trustee's to replace the Files.

75.     The Trustee used the Files to prepare for litigation and assert claims against certain parties in this case; however, the Trustee could have obtained the information in the Files via public records, discovery, or Rule 2004 examination.

76.     Thus, the "replacement value" of the Files would the cost in attorneys' fees and costs to gather the same information via discovery or Rule 2004 examination.

77.     The Trustee also seeks entry of a declaratory judgment that the Firm does not have any lien against or claim to any of the Trustee's claims, rights, or causes of action against any entity where the Firm asserted claims against that entity on behalf of the Debtor.

78.     Pursuant to the Bankruptcy Code, the Trustee is vested with certain powers, rights, and causes of action that did not exist prior to the filing of the bankruptcy case.

#45235102V3

79.    To the extent the Trustee seeks to adjudicate the priority or validity of a lien, the Firm cannot assert a lien against a claim for declaratory relief.

80.    An actual controversy exists regarding the validity, existence, and rights and obligations of the parties herein with respect to the Amended Claim and the Firm's asserted lien rights under New York state law.

81.    Pursuant to 28 U.S.C. § 2201, and for the foregoing reasons, Trustee seeks a declaration from the Court that if any amount is owed to the Firm pursuant to the Amended Claim (i) that such amount is limited to the fees and costs the Estate saved in not having to obtain the same documents and information contained in the Files and (ii) that the Firm does not have a lien against or claim to any of the Trustee's claims, rights, or causes of action against any entity where the Firm asserted claims against that entity on behalf of the Debtor.

## FOURTH CLAIM FOR RELIEF

### Avoidance, Recovery, and Preservation of Post-Petition Transfer(s)

### [11 U.S.C. §§ 549, 550, and 551]

82.    Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 81 as though set forth in full.

83.    This is an action to pursuant to 11 U.S.C. §§ 549 and 550 to avoid and recover unauthorized post-petition transfers made from the Debtor or the Debtor's property to the Firm.

84.    The Debtor established PrimeLogix, LLC ("PrimeLogix") to process ACH transactions for client files that the Debtor had fraudulently transferred to related entities in advance of its bankruptcy filing.

85.    On May 18, 2023, PrimeLogix wired the sum of $30,000.00 ("Payment") to the Firm from its account at Bank of America ending in 9201 ("Logix Account").

86.    Upon information and belief, fees from LPG clients were the source of all funds deposited into the Logix account.

87.    This Payment to the Firm was not authorized or approved by the Court.

88.    Pursuant to 11 U.S.C. §§ 549 and 550, Plaintiff is entitled to avoid and recover the Payment identified above along with any other unauthorized post-petition transfers to the Firm.

#45235102V3

## FIFTH CLAIM FOR RELIEF

### Disallowance of Claim

### [11 U.S.C. § 502(d)]

89.     Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 88 as though set forth in full.

90.     Defendant is a transferee of transfers avoidable under 11 U.S.C. §§§ 544, 547, 548, and/or 549, which property is recoverable under § 550.

91.     Defendant has not paid the amount of the transfers identified above, or turned over such property, for which Defendant is liable under 11 U.S.C. § 550.

92.     Pursuant to § 502(d), any and all claims of Defendant and/or its assignee, against Debtor's chapter 11 estate or the Trust must be disallowed until such time as Defendant pays to Plaintiff an amount equal to the aggregate amount of the Avoidable Transfer(s), plus interest thereon and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for a judgment as follows:

1.     Entry of a judgment finding that the Debtor's obligation to pay the Diverse Fee and Liberty Fee are avoidable as fraudulent transfers pursuant to 11 U.S.C. § 548(a)(1)(B) such that the Debtor is no longer liable to pay either Fee;

2.     Entry of a judgment finding that the Debtor's obligation to pay and actual payment of the Liberty Fee of $57,574.36 and Bridge Fee of $23,325.00 are avoidable as fraudulent transfers that are recoverable by and preserved for the benefit of the estate pursuant to 11 U.S.C. §§ 548(a)(1)(B), 550, and 551;

3.     Entry of a judgment finding that the Debtor's obligation to pay and partial payment of $150,000 of the Cobalt Fee are avoidable as fraudulent transfers that are recoverable by and preserved for the benefit of the estate pursuant to 11 U.S.C. § 548(a)(1)(B), 550, and 551;

4.     Entry of a judgment finding that the payment of $30,000 by Prime Logix to the Firm was made with funds that were property of the estate and that this payment is avoidable as a unauthorized post-petition transfer that is recoverable by and preserved for the benefit of the estate

15

1    pursuant to 11 U.S.C. §§ 549, 550, and 551;

2        5.      Entry of a declaratory judgment (i) adjudicating the nature, extent, and priority of any

3    security interest asserted by the Firm as part of the Amended Claim; (ii) determining the amount of

4    the Firm's claim, including the secured and unsecured portions of such claim, pursuant to 11 U.S.C.

5    § 506(a); and (iii) finding that the Firm has no lien against or claim to any claims, causes of action,

6    or remedies that may be asserted by the Trustee against any party where the Firm was previously

7    adverse to that party on behalf of the Debtor;

8        6.      Entry of a judgment disallowing the Amended Claim of the Firm pursuant to 11 U.S.C.

9    § 502(d);

10       7.      Awarding costs of suit incurred here; and

11       8.      Granting any other and further relief as the Court deems just and proper.

12

13   Dated:  August 30, 2024                Respectfully submitted,

14                                          DINSMORE & SHOHL LLP

15

16                                          By: /s/ Tyler Powell
                                                 Tyler Powell (*pro hac vice*)
17                                               Yosina M. Lissebeck
                                                 Christopher Celentino
18                                               Special Counsel to Richard A. Marshack

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

# COLONNA COHEN LAW, PLLC

46 N Henry St.
Brooklyn, NY 11222
516.567.0885
ashlee@colonnacohenlaw.com

October 11, 2021

### *Privileged Attorney/Client Communication*

**VIA EMAIL**

Daniel S. March
&lt;admin@lpglaw.com&gt;
20160 Nob Hill Dr
Yorba Linda, CA 92886

Tony Diab
&lt;tony@coastprocessing.com&gt;
20160 Nob Hill Dr
Yorba Linda, CA 92886

Vulcan Consulting Group,
LLC
1351 Calle Avanzado, Suite 2
San Clemente, CA 92673
949.229.6262, ext. 1013

The Litigation Practice Group,
P.C.
17542 E. 17th St., Ste 100
Tustin, CA 92780
p: 949.715.0644

Bat, Inc. d/b/a Coast Processing
1351 Calle Avanzado, Suite 2
San Clemente, CA 92673
949.229.6262, ext. 1013

### RE: Retaining Colonna Cohen Law, PLLC

This agreement is in addition to the Letter of Engagement/Retainer Agreement dated August 26, 2021, under which Colonna Cohen Law, PLLC ("CCL," "we," or "us") undertook representation of The Litigation Practice Group, P.C., Bat, Inc. d/b/a Coast Processing, Vulcan Consulting Group, LLC, Daniel S. March and Tony Diab and any other related entities that have been sued (the "Clients," or "you") in three (3) limited matters. The instant Letter of Engagement/Retainer Agreement is being executed to expand the scope of my firm's work and sets forth the terms and conditions under which my firm will undertake the additional representation. You agree to the terms and conditions of this retainer by signing it in the space provided below.

### 1. Professional Undertaking

In addition to the scope of work outlined in our previous Letter of Engagement, dated August 26, 2021, my firm has also agreed to represent you in connection with the negotiation and resolution of your companies' merchant cash advance debts as listed in Schedule "A[1]" and to prosecute and/or defend any claims associated with the debts.

I want to thank you for selecting my law firm to represent you. Although I endeavor to represent your interests vigorously and efficiently, I cannot guarantee success in any given case. You acknowledge that my firm has made no promises or guarantees concerning the outcome of the matter, and nothing in this agreement, or in any prior discussions we may have had, can be construed as such a promise or guarantee.

---

[1] Schedule "A" shall be amended as required by CCL.

1

# COLONNA COHEN LAW, PLLC

46 N Henry St.
Brooklyn, NY 11222
516.567.0885
ashlee@colonnacohenlaw.com

You acknowledge that my firm's performance depends, in part, upon:
a. Our prompt receipt of documentation, information, authorization, and instructions from you;
b. Your prompt review and execution of documents; and
c. Your cooperation in general.

You therefore agree to cooperate with my firm:
a. In the investigation, preparation, and drafting of the legal documents;
b. By providing us with all requested documents and information;
c. In disclosing truthfully and fully all facts and information;
d. In keeping us advised of all developments relating to the matter; and
e. By attending telephonic meetings, hearings, and other proceedings upon request.

### 2. Fees and Billing

I also wish to set forth our agreement as to payment of the firm's legal fees. In connection with the matters listed in Schedule "A," my firm will be compensated by a combination of reduced hourly fees retainer and a reduced contingency fee based upon the reduction of merchant cash advance debt.

If litigation is required, my firm will charge two-hundred and ten dollars (**$210.00**) per hour that will be deducted from the initial Retainer (as detailed in the Engagement Letter/Retainer Agreement dated August 26, 2021) until the Retainer is depleted to five-thousand-dollars ($5,000) upon which the firm will require you to replenish the Retainer back to $25,000[2]. You will then be sent legal invoices on a monthly basis which will describe the legal work done on your cases and the time in tenths per hour billed at the same rate of $210.00 per hour.

My firm is also hereby assigned a twenty-five-percent (25%) reduced contingency fee upon the reduced amount of merchant cash advance debt listed in Schedule "A," however denominated[3]. With respect to the contingency fee interest being conveyed here, when you sign this agreement, you are conveying to us an irrevocable 25% interest in all reductions of debt, whether obtained by settlement, court order, by judgment or otherwise, however denominated and in whatever form they may take[4]. My firm may memorialize its interest by making appropriate filings where appropriate. The 25% contingency fee is due upon your execution of the instrument used to resolve the debts listed in Schedule "A[5]."

(escrow account information on next page)

---

[2] This is a 40% discount on my firm's normal hourly rate of $350.00.

[3] This is a 10% discount on my firm's normal contingency fee of 30% of the reduced debts.

[4] For example, if the amount claimed by the cash advance funder, inclusive of all fees and costs, is $100,000 and my firm negotiates a resolution where you only have to pay the cash advance funder $80,000, my firm will be compensated by a rate of 25% of the savings, or $5,000 ($100,000 - $80,000 = $20,000, $20,000 x .25 = $5,000) for negotiation and resolution of your cash advance debt.

[5] If resolved by settlement agreement, the contingency fee is due upon your execution of the settlement agreement. If resolved by release, the contingency fee is due upon your execution of the release. If resolved by payment, the contingency fee is due simultaneously when the payment is made to the funder.

2

# COLONNA COHEN LAW, PLLC

46 N Henry St.
Brooklyn, NY 11222
516.567.0885
ashlee@colonnacohenlaw.com

The firm's escrow account information is below; please wire, or deposit, fees to this account:

**CHASE BANK**
**ROUTING NUMBER:** ▮▮▮▮▮
**ACCOUNT NUMBER:** ▮▮▮▮▮

### 3. Termination

You have the right to terminate my firm's representation at any time. You agree that my firm will have the same right to withdraw from the representation under the following circumstances: a. If you breach this agreement; b. If you fail to cooperate with my firm in this representation; c. If, for professional or ethical reasons (such as a presently unknown conflict of interest), my firm cannot proceed with the representation. If my firm elects to withdraw, we shall give you reasonable notice to enable you to secure other counsel, and you agree to execute any documents necessary to complete the withdrawal. Should you breach this agreement in such a manner that we are reasonably required to withdraw or to terminate the agreement, we will attempt to accommodate new counsel should you choose to hire new counsel, but while we may choose to do so, under no circumstances are we required to relinquish any part of the contingency fee provided herein in order to make that accommodation.

### 4. Record Retention Policy

I may send you pleadings, documents, correspondence, and other information throughout the case. These copies will be your file copies. Please retain them. I will also keep the information in a file in my office, which will be my file. When I have completed all the legal work necessary for your case, I will close my file and return original documents to you.

### 5. Integration, Choice of Law, Disciplinary Rules, Lawyer's Creed, Arbitration

This agreement represents the entire agreement between us. In entering this agreement, CCL has not made, and you are not relying upon, any representations or promises other than those contained in writing in this letter. To avoid any misunderstanding over the terms of this representation, this agreement shall not be modified or waived in any respect except in writing signed by both parties.

This Agreement shall be governed by the law of the State of New York. Any litigation relating to this Agreement shall be filed in New York. The parties agree that jurisdiction and venue is proper in New York. Any dispute arising under this Agreement or in connection with my firm's services hereunder, including any claims by you against my firm for malpractice or other tort claim, may be resolved under the New York State Fee Dispute Resolution Program pursuant to Part 137 of the Rules of the Chief Administrator if both parties agree to arbitrate.

3

EXHIBIT A
Page 20

## COLONNA COHEN LAW, PLLC
46 N Henry St.
Brooklyn, NY 11222
516.567.0885
ashlee@colonnacohenlaw.com

Please review this agreement carefully, sign, and return to me via email. If any of the information in this letter is not consistent with your understanding of our agreement, please contact me before signing the letter. Otherwise, please sign and return it to me.

On behalf of the firm, thank you, we are happy to represent you. If you have any questions, please contact me at your convenience.

Very truly yours,

/s/Ashlee Colonna Cohen
Ashlee Colonna Cohen, Esq.

I have read this letter and consent to it. Furthermore, I grant and give my informed consent after Ashlee Colonna Cohen, Esq. has proposed the course of conduct, has communicated adequate information, and has explained all material risks of and reasonable available alternatives to the proposed course of conduct.

Signature: _____    Date: 10/11/2021
Tony Diab, individually,
and on behalf of
Bat, Inc. d/b/a Coast
Processing and Vulcan
Consulting Group, LLC

Signature: _____    Date: 10-11-2021
Daniel S. March,
individually and on behalf
of The Litigation Practice
Group, P.C.

4

**Schedule "A"**

1. Liberty Funding Group, LLC

2. Diverse Capital, LLC

3. Cobalt Funding Solutions, LLC

4. Bridge Funding Cap, LLC d/b/a Fundura

5. _____

6. _____

7. _____

8. _____

9. _____

10. _____

Schedule "A" shall be amended as required to negotiate and resolve debts as needed.

Signature: _____      Date: 10/11/2021
Tony Diab, individuallyand
on behalf of
Bat, Inc. d/b/a Coast Processing
and Vulcan Consulting Group,
LLC

Signature: _____      Date: 10 - 11 - 2021
Daniel S. March,
individuallyand on behalf of
The Litigation Practice
Group, P.C.

EXHIBIT A

Page 22

# EXHIBIT B

# Exhibit B - Firm's Calculation of Contingent Fees

| Funder | Claim | Settlement | Difference | Savings Fee | Status |
|---|---|---|---|---|---|
| Liberty Fund | $ 830,189.45 | $ 600,000.00 | $ 230,189.45 | $ 57,547.36 | Paid |
| Bridge | $ 308,300.00 | $ 215,000.00 | $ 93,300.00 | $ 23,325.00 | Paid |
| Cobalt | $ 4,734,817.50 | $ 1,500,000.00 | $ 3,234,817.50 | $ 808,704.38 | $658,704.38 |
| Diverse | $ 2,359,510.00 | $ 1,250,000.00 | $ 1,109,510.00 | $ 277,377.50 | $277,377.50 |
| BMF | $ 3,135,840.00 | $ 2,075,541.99 | $ 1,060,298.01 | $ 265,074.50 | $265,074.50 |
| **Total** | **$ 11,368,656.95** | **$ 5,640,541.99** | **$ 5,728,114.96** | **$ 1,432,028.74** | **$1,201,156.38** |

# EXHIBIT C

EXHIBIT C

Page 25

Case 8:23-bk-10571-SC   Doc 1596   Filed 08/30/24   Entered 08/30/24 16:32:58   Desc
Main Document   Page 26 of 71

# EXHIBIT C PAYMENTS TO FIRM

| Date | Amount | Purpose | Date Out | Amount | Purpose |
|------|--------|---------|----------|--------|---------|
| 8/26/2021 | $ 25,000.00 | initial retainer | | | |
| 11/8/2021 | $ 600,000.00 | Payment to Liberty | 11/9/2021 | $ 600,000.00 | Payment to Klein Firm for Liberty |
| 12/3/2021 | $ 57,547.36 | Savings on Liberty | | | |
| 1/20/2022 | $ 34,076.00 | August - Nov Billing | | | |
| 2/11/2022 | $ 75,000.00 | Settlement (escrow) | 2/14/2022 | $ 75,000.00 | Payment to Klein Firm for Cobalt |
| 2/25/2022 | $ 48,913.75 | Settlement (escrow) | 2/28/2022 | $ 48,913.75 | Payment to Klein Firm for Cobalt |
| 3/15/2022 | $ 75,000.00 | Settlement (escrow) | 3/16/2022 | $ 75,000.00 | Payment to Klein Firm for Cobalt |
| 3/22/2022 | $ 75,000.00 | Settlement (escrow) | 3/23/2022 | $ 75,000.00 | Payment to Klein Firm for Cobalt |
| 4/5/2022 | $ 25,077.50 | December Billing | | | |
| 6/7/2022 | $ 25,000.00 | May Billing | | | |
| 9/9/2022 | $ 50,000.00 | Savings | | | |
| **Total In:** | **$ 1,090,614.61** | | **Total Out:** | **$ 873,913.75** | |

EXHIBIT C
Page 26

# EXHIBIT D



<div align="center">

17542 E 17ᵗʰ Street
Ste 100
Tustin, CA 92780
Tel 949.715.0648
Fax 949.315.4332

</div>

---

<div align="center">

Daniel S. March | admin@lpglaw.com

</div>

February 23, 2023

**<u>VIA EMAIL</u>**

Gavriel Yitzchakov
Empire Recovery Solutions LLC
10 W. 37ᵗʰ St.
RM 602
New York, NY 10018
c/o joel@citycapitalny.com

      **Re:    Settlement Agreement**

Dear Mr. Yitzchakov:

I am writing in connection with the attached Settlement Agreement, which was negotiated as part of the Purchase and Sale of Future Receivables. Pursuant to that Receivables Agreement, Litigation Practice Group executed a release of the funds being held by First Data and also executed the attached Settlement Agreement. I enclose said Settlement Agreement, which has been properly executed, but instruct you not to file the same until after Litigation Practice Group receives the net of $675,000.00 to its Union Bank account pursuant to the Receivables Agreement. Further, I enclose the Release directed to First Data / Fiserv and again instruct you not to serve said Release until after Litigation Practice Group receives the net of $675,000.00 to its Union Bank account pursuant to the Receivables Agreement.

Very truly yours,

Daniel S. March

Enclosure: Settlement Agreement

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF **KINGS**

| | |
|---|---|
| **BMF ADVANCE LLC**<br><br>                              Plaintiffs,<br><br>        -against-<br>**THE LITIGATION PRACTICE GROUP PC; BAT INC D/B/A COAST PROCESSING; VULCAN CONSULTING GROUP LLC; DANIEL STEPHEN MARCH**<br>**TONY M DIAB**<br><br>                              Defendants. | **Index No.: 531948/2021**<br><br>**STIPULATION OF SETTLEMENT WITH LEAVE TO APPLY FOR CLERK DEFAULT JUDGMENT PURSUANT TO CPLR 3215(i)** |

THIS SETTLEMENT AGREEMENT AND RELEASE (this "SETTLEMENT AGREEMENT") is entered into by and between **THE LITIGATION PRACTICE GROUP PC; BAT INC D/B/A COAST PROCESSING; VULCAN CONSULTING GROUP LLC** ("Seller"), **DANIEL STEPHEN MARCH TONY M DIAB** ("Guarantor(s),") and referred to herein together with Seller collectively and individually as (the "Sellers"), and **BMF ADVANCE LLC** ("Purchaser") and referred to herein collectively with the Sellers as (the "Parties") on this **February 23, 2023** (the "Effective Date").

WHEREAS, the Parties entered into a receivables purchase agreement on August 10, 2021; ("Purchase Agreement")

WHEREAS, the Sellers are indebted to Purchaser in the amount of $2,613,200.00 **plus attorneys' fees and costs for a total balance of $3,135,840.00 ("Total Balance")**

WHEREAS, Purchaser filed an action against Sellers in **KINGS** County New York, Case No. **531948/2021**. (the "Action")

WHEREAS, the Parties desire to fully and finally resolve the Dispute;

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED BETWEEN THE PARTIES AS FOLLOWS:

1.      Sellers shall pay to Purchaser the agreed **"Settlement Amount" of $2,075,541.99** as full and final satisfaction of the Purchase Agreement by wire or ACH to Purchaser's attorney as follows:

- $975,541.99 to be conditionally released from restrained funds held at First Data.  If First Data fails to remit funds then Purchaser shall take legal action to recover such funds, and Seller shall assist in such action.  If, after 90 days, First Data continues to refuse to remit funds, Seller shall become responsible for payment of $975,541.99.
- $1,100,000.00 to be paid by City Capital NY, LLC by end of business February 24, 2023.

The mailing address/wiring instructions for Purchaser's attorney is as follows:

**Empire Recovery Solutions, LLC**
10 W 37th St, RM 602, New York, NY 10018

**JPMorgan Chase Bank**
**Account Number:** ▓▓▓▓▓▓▓
**Routing:** ▓▓▓▓▓▓▓

1.      DEFAULT. There shall be no cure period. If any payment is not received on the aforementioned dates, Purchaser shall have leave to enforce the Total Balance due less any payments made hereunder.

2.      RELEASE. Purchaser hereby covenants not to sue and forever releases, acquits, and discharges Sellers and any of their guarantors, agents, employees, officers, partners, principals, insurers, representatives, successors, transferees or assigns, from any and all liability, claims, damages or demands Purchaser has now or may have in connection with said Purchase Agreement, unless there is a breach of this Settlement Agreement.

Upon Sellers' fulfillment of its obligations hereunder and the clearance of all payments in accordance with the terms of this Settlement Agreement, Sellers and any applicable guarantor of the sums due under the Receivables Purchase Agreement shall be relieved of any such further liability.

3.      TERMINATION OF LIENS AND DISCONTINUANCE OF THE ACTION. Within five (5) business days after Sellers' fulfillment of its obligations hereunder and the clearance of all payments in accordance with the terms of this Settlement Agreement, Purchaser shall discontinue the Action, terminate any/all UCC filings and liens previously filed by Purchaser against Sellers, and release any/all of Sellers' obligations to Purchaser pursuant to the Receivables Purchase Agreement.

4.      WAIVER OF PURCHASER'S LIABILITY. Upon the Effective Date, the Sellers for itself and on behalf of all parents, divisions, subsidiaries, affiliates, related entities, representatives, successors, directors, officers, owners, agents, employees, insurance carriers, attorneys and assigns, hereby releases and forever discharges Purchaser and its respective parents, divisions, subsidiaries, affiliates, related entities, representatives, successors, directors, officers, owners, agents, employees, insurance carriers, attorneys and assigns of and from any and all claims, counterclaims, demands, damages, debts, liabilities, accounts, actions, causes of action and suits, known or unknown, liquidated or contingent, arising from, which may arise in the future from, or which are related in any manner to the Purchase Agreement, including any claims that were or could have been asserted, other than Purchaser's obligations under this Settlement Agreement.

5.      Default Judgment pursuant to CPLR 3215(i). There shall be no cure period for the settlement payments set forth above. In the event that a settlement payment is not made, the Parties hereby acknowledge, consent and agree that the Purchaser may file an application for a default judgment to the County Clerk in the Actions pursuant to CPLR 3215(i) for the Total Balance less payments made pursuant to this Agreement plus the sum of 25% of the amount due at the time of default for attorneys' fees (based upon standard contingency fee rates), plus interest at the rate of 16% per annum from the date of default to the date of entry of judgment. The Parties agree that it shall be sufficient for the entry of such default judgment for the Purchaser's attorney of record to submit an affirmation stating the amount paid pursuant to this Stipulation of Settlement, the date of the default hereunder, the amount outstanding, and an amount for attorneys' fees to be included in the default judgment calculated as 25% of the Settlement Amount less payments made pursuant to this Stipulation of Settlement. The Parties agree that the application to the County Clerk for a default judgment may be made without notice to the Obligated Parties and that this Stipulation of Settlement shall not be required to be filed in the Action unless and

until there is a default hereunder.

6.    WAIVER OF SERVICE OF PROCESS. The Sellers further agree to waive personal service of process and that service by electronic mail at Admin@lpglaw.com on behalf of Sellers or by USPS mail at 25961 GLEN CANYON DR, LAGUNA HILLS, CA 92653 on behalf of the Sellers, of any process required by any such court will constitute valid and lawful service of process against them, without the necessity for service by any other means provided by statute or rule of court, but without invalidating service performed in accordance with such other provisions. Sellers' email and mailing address shall be presumed to be valid and current. If either address for service changes, Seller must promptly notify Purchaser.

7.    CONSENT TO JURISDICTION. This Agreement shall be governed by and construed exclusively in accordance with the laws of the State of New York, without regards to any applicable principles of conflicts of law. Seller(s) and Guarantor(s) irrevocably submits to the exclusive jurisdiction of any New York Supreme Court or any federal court sitting within the State of New York over any suit, action or proceeding arising out of or relating to this Agreement Seller(s) and Guarantor(s) irrevocably waive, to the fullest extent permitted by law, any objection which it may now or hereafter have to the laying of venue of any such suit, action or proceeding brought in such a court and any claim that any such suit, action or proceeding has been brought in an inconvenient forum. Seller(s) and Guarantor(s) agree that final judgment in any such suit, action or proceeding brought in such a court shall be enforced in any court of proper jurisdiction by a suit upon such judgment, provided that service of process in such action, suit or proceeding shall have been effected upon the Seller(s) and Guarantor(s) in a manner permitted by law.

8.    PENDING ENFORCEMENT ACTION. In the event Purchaser has captured any funds in a levy, garnishment, UCC enforcement prior to execution of this Agreement, Purchaser shall be entitled to said funds and Seller shall promptly sign a release or execute or provide any documents necessary to release said funds to Purchaser. The funds shall be applied to the Settlement Amount.

THE UNDERSIGNED REPRESENT AND WARRANT THAT THEY HAVE READ THIS STIPULATED SETTLEMENT AGREEMENT IN ITS ENTIRETY AND HAVE THE FULL CAPACITY, POWER, AND AUTHORITY TO MAKE THIS AGREEMENT AS SET FORTH ABOVE, AND THAT NO OTHER REPRESENTATIONS OR INDUCEMENTS APART FROM THIS STIPULATED SETTLEMENT AGREEMENT, EITHER WRITTEN OR ORAL, HAVE BEEN MADE.

IN WITNESS WHEREOF, Sellers and Purchaser have hereunder set their hands and seals on **February 23, 2023**.

| THE LITIGATION PRACTICE GROUP PC; BAT INC D/B/A COAST PROCESSING; VULCAN CONSULTING GROUP LLC "Seller" | REPRESENTATIVE FOR **BMF ADVANCE LLC** a/k/a "PURCHASER" |
|---|---|
| X _____<br>Name: **DANIEL STEPHEN MARCH**<br>Title:<br><br>X _____<br>Name: **TONY M DIAB**<br>Title:<br><br>**DANIEL STEPHEN MARCH** a/k/a "GUARANTOR"<br><br>X _____<br>Individually<br><br>**TONY M DIAB** a/k/a "GUARANTOR"<br><br>X _____<br>Individually | X _____<br>Name: GAVRIEL YITZCHAKOV<br>Title:    Member |

# THE LAW OFFICES OF STEVEN ZAKHARYAYEV, PLLC

**10 W 37th St, RM 602, New York, NY 10018**

| | |
|---|---|
| Steven Zakharyayev, Esq. | (201) 716-0681 |
| Managing Attorney | Steven@EmpireRecover.com |

January 25, 2023

TO: First Data/Fiserv

Re: BMF ADVANCE LLC - v. - THE LITIGATION PRACTICE GROUP PC; BAT INC D/B/A
COAST PROCESSING; VULCAN CONSULTING GROUP LLC and DANIEL STEPHEN
MARCH

| | |
|---|---|
| **THE LITIGATION PRACTICE GROUP PC;** | **Tax ID:** ███████████ |
| **BAT INC D/B/A COAST PROCESSING;** | ██████ |
| **VULCAN CONSULTING GROUP LLC** | |
| **DANIEL STEPHEN MARCH** | **SSN:** ████████ |

THE LITIGATION PRACTICE GROUP PC; BAT INC D/B/A COAST PROCESSING;
VULCAN CONSULTING GROUP LLC and DANIEL STEPHEN MARCH (hereinafter,
collectively "Defendants") hereby authorize the release of **$975,541.99**, by bank or certified check
payable to **The LAW OFFICES OF STEVEN ZAKHARYAYEV, PLLC., Attorney Escrow
Account**, from its account. The check must be mailed to:

**LAW OFFICES OF STEVEN ZAKHARYAYEV, PLLC**
**10 W 37th St, RM 602,**
**New York, NY 10018**

Once the bank creates the check and the above-mentioned funds are removed from the
account, the levy/hold may be removed from the account.

FOR THE DEFENDANTS:

Daniel S. March
_____
Print Name

_____
Signature

Sworn to me on  2/7/2023
_____

_____
Notary Signature

FOR THE PLAINTIFF:

_/s/ Steven Zakharyayev_
Steven Zakharyayev, Esq.

# ACKNOWLEDGMENT

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of _____ Orange _____ )

On _Febmuary 7, 2023_ before me, _Olga Lucia Esquivel, Notary Public_
(insert name and title of the officer)

personally appeared _Daniel S. March_ _____
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _Olga Esquivel_ (Seal)

OLGA LUCIA ESQUIVEL
COMM. # 2282791
NOTARY PUBLIC-CALIFORNIA
ORANGE COUNTY
My Comm. Exp. Mar. 25, 2023

# EXHIBIT E

## STIPULATION OF SETTLEMENT

**THIS SETTLEMENT AGREEMENT AND GENERAL RELEASE** ("Settlement Agreement")
is entered into as of January 24, 2022 (the "Execution Date"), by and between Diverse Capital, including
all individuals or entities who operated under such platform or syndicated into any merchant cash advance
agreement with the same ("PLAINTIFF") and THE LITIGATION PRACTICE GROUP PC and VULCAN
CONSULTING GROUP LLC and BAT INC and COAST PROCESSING.COM D/B/A/ COAST
PROCESSING and DANIEL S MARCH and TONY M DIAB ("Defendants") (collectively, the "Parties").

**WHEREAS,** Plaintiff commenced an action against Defendants by the filing of a Summons and
Complaint on October 14, 2021, in the New York State Supreme Court for the County of Nassau under
Index Number [] (the "Action"); and

**WHEREAS,** the Parties wish to settle all disputes between them including, without limitation,
all claims that were, or could have been, asserted in the Action, pursuant to the terms and conditions
set forth in this Agreement;

**NOW, THEREFORE,** for good and valuable consideration, the receipt and sufficiency of which
are hereby acknowledged, the parties agree as follows:

1. <u>Settlement Amount</u>. Plaintiff hereby agrees to accept the sum of $1,250,000.00 (the "Settlement
Amount") in full satisfaction of any and all claims Plaintiff may have against Defendants including, without
limitation, the claims that could be asserted in the Action. The Settlement Amount shall be paid in full
within three months of the execution of this agreement from a portion of the Defendants' business profits.
If the Defendant is unable to meet this obligation within the three-month period, Plaintiff will grant a three
month extension to Defendant on condition that Defendant has made every effort to fulfill this obligation.
If Defendant is unable to fulfill such obligation within six months Plaintiff will grant another six-month
extension to Defendant for a maximum of one year to fulfill this obligation. If Defendant does not pay in
full the above-mentioned amount, this agreement shall be null and void. No Extension should be granted if
Defendant has made payments equaling less than an aggregate of $125,000.00 a month from the beginning
of this agreement.

2.   Forbearance of Litigation: Providing full compliance with the terms of this Agreement, all litigation and legal actions between the parties are to be dismissed.

3.   Dismissals. Contemporaneously with the execution of this Agreement, the Parties, and/or their counsel, shall execute and file the enclosed Stipulation of Discontinuance with Prejudice.

4.   Effective Date. The Agreement shall become binding and be closed by the execution hereof by all parties.

5.   Waiver of Plaintiff's Liability. As of the date that Defendants obligations to Plaintiff as detailed herein have been fully satisfied, the Defendants for itself and on behalf of all parents, divisions, subsidiaries, affiliates, related entities, representatives, successors, directors, officers, owners, agents, employees, insurance carriers, attorneys and assigns, hereby releases and forever discharges Plaintiff and its respective parents, divisions, subsidiaries, affiliates, related entities, representatives, successors, directors, officers, owners, agents, employees, insurance carriers, attorneys and assigns of and from any and all claims, counterclaims, demands, damages, debts, liabilities, accounts, actions, causes of action and suits, known or unknown, liquidated or contingent, arising from, which may arise in the future from, or which are related in any manner to the underlying Agreement, including any claims that were or could have been asserted, other than Plaintiff's obligations under this Settlement Agreement. Defendants acknowledges that any and all legal claims it maintains must be brought by a breach of this settlement agreement.

6.   Waiver of Defendants' Liability. As of the date that Defendants obligations to Plaintiff as detailed herein have been fully satisfied, the Plaintiff for itself and on behalf of all parents, divisions, subsidiaries, affiliates, related entities, representatives, successors, directors, officers, owners, agents, employees, insurance carriers, attorneys and assigns, hereby releases and forever discharges Defendants and their respective parents, divisions, subsidiaries, affiliates, related entities, representatives, successors, directors, officers, owners, agents, employees, insurance carriers, attorneys and assigns of and from any and all claims, counterclaims, demands, damages, debts, liabilities, accounts, actions, causes of action and suits, known or unknown, liquidated or contingent, arising from, which may arise in the future from, or which are related in any manner to the underlying Agreement, including any claims that were or could have been

2

asserted, other than Defendants' obligations under this Settlement Agreement. Plaintiff acknowledges that any and all legal claims it maintains must be brought by a breach of this settlement agreement.

7.  Default and Right to Cure. A default under this Stipulation will occur if payment is not received on the date it is due. Defendants shall have a ten (10) day cure period within which to cure any default hereunder upon notice via email to Defendants at **tony@coastprocessing.com**.

8.  Judgment. In the event that this Stipulation is breached by Defendants, all terms of this Stipulation except for those detailed in this Paragraph, will be void *ab initio* and Plaintiff may at its option, apply for entry of a judgment against all Defendants, pursuant to CPLR §3215(i). Such application for entry of default judgment will include an affidavit or affirmation specifying the default and the amount of the unpaid balance of the entire abovementioned obligation. Any Default Judgment entered hereunder will be for $2,500,000, less any payments made under this Agreement, plus any accrued interest, costs and disbursements.

9.  Venue. The Defendants recognize that because payment is to be made in the state of New York, This Agreement shall be governed by and construed according to the laws of the State of New York, without giving effect to its choice of law principles. The parties agree that all actions and proceedings arising out of or relating directly or indirectly to this Agreement or any ancillary agreement or any other related obligations shall be litigated solely and exclusively in in the Supreme Court of the State of New York County of Nassau, and that such courts are convenient forums. Each party hereby submits to the personal jurisdiction of such courts for purposes of any such actions or proceedings. The Defendants waive their right to service of process of any complaint or other process commenced arising from their obligations hereunder, and agree to accept service of any commencement documents including but not limited to a Summons and Complaint via email to Defendant at tony@coastprocessing.com.

10. Confidentiality: The Parties agree that they will not disclose to any entity or other person the terms or conditions of this Settlement Agreement (subject to the exceptions expressly stated in this paragraph) without the prior written consent of the other Party. Notwithstanding the foregoing, the Parties may otherwise disclose the terms of this Settlement Agreement only in the following

3

situations: (i) to his or her legal, insurance, or tax professionals; (ii) in any action or proceeding to enforce the terms and conditions of this Settlement Agreement; (iii) as required by a lawfully issued subpoena after notification to the other Party so as to give the other Party time to move to quash said subpoena; and (iv) to the extent necessary to the holder of a mortgage or security interest in any property. Any disclosure in violation of this section shall be deemed a material breach of this Stipulation of Settlement.

11. Execution and Delivery of Documents. The Parties agree that they respectively shall, upon request by another party to this Agreement, execute and deliver promptly any and all such documentation, or documents of any and every kind and character as may be reasonably required, necessary or proper for the purpose of giving full force and effect to this agreement and to the covenants, conditions, and agreements contained herein. Furthermore, the parties agree to cooperate and to do all things necessary to accomplish the intention of this agreement.

12. Incorporation by Reference, Recitals. All documents referred to in this Agreement are made a part hereof and incorporated herein by reference.

13. Copies. Any true executed copy of the Agreement shall be deemed to constitute an original of the same.

14. Construction and Interpretation. No provision in this Agreement shall be interpreted for or against another party because that party's attorney drafted such provision.

15. Entire Agreement. This Agreement represents the full, complete and entire agreement between the parties and supersedes any previous agreement between the parties. This Agreement may only be modified in writing, accepted, and approved in writing by all Parties.

16. Attorney Review. Defendants acknowledge they had ample time to consult with an attorney of its choosing with respect to the terms of this Agreement, and has been advised to do so.

### *Signature Page to Follow*

4

IN WITNESS WHEREOF, this Stipulation and Settlement Agreement has been agreed to and executed by the undersigned this 23 day of ___March___, 2022.


_____

*Error! Reference source not found.*, individually, and on behalf of
*VULCAN CONSULTING GROUP LLC and BAT INC and COAST
PROCESSING.COM D/B/A/ COAST PROCESSING*


_____

*Daniel S. March*, individually, and on behalf of
*THE LITIGATION PRACTICE GROUP PC*


_____

[Diverse Capital]

5

# EXHIBIT F

## SETTLEMENT AGREEMENT

This Settlement Agreement and Release ("Settlement Agreement") is made and entered into this 8th day of October 2021 (the "Effective Date"), by and among Plaintiffs LIBERTY FUND GROUP LLC, ( "Plaintiff") and THE LITIGATION PRACTICE GROUP PC and VULCAN CONSULTING GROUP LLC and BAT INC and COAST PROCESSING.COM D/B/A/ COAST PROCESSING    and TONY M DIAB   (collectively, "Defendants").   As provided herein, Plaintiff hereby stipulates and agrees that, in consideration of the promises and covenants set forth in this Settlement Agreement, all claims against Defendants in the action titled *Liberty Fund Group LLC v. The Litigation Practice Group PC et al.*, now pending in the Supreme Court of New York for the County of Nassau, Index No. 612800/2021 (the "Action"), shall be settled and compromised upon the terms and conditions contained herein and dismissed with prejudice. Plaintiff and Defendants are each referred to in this Settlement Agreement individually as a "Party" and collectively as the "Parties."

**IT IS HEREBY STIPULATED AND AGREED** that this action, and the underlying contract from which this action stemmed, is settled for the sum of $600,000.00 which sum shall be paid by or on behalf of Defendants to Plaintiff, as follows:

A) $300,000.00 via wire transfer on behalf of Defendants to the escrow account of Plaintiff's counsel on or before the close of business on October 12, 2021; and then

B) $100,000.00 via wire transfer on behalf of Defendants to the escrow account of Plaintiff's counsel on or before the close of business on October 19, 2021; and then

C) $200,000.00 via wire transfer on behalf of Defendants to the escrow account of Plaintiff's counsel on or before the close of business on October 26, 2021; and then

Plaintiff and Defendants shall also stipulate to:

(1) the withdrawal of Plaintiff's Order to Show Cause currently pending before the Court (stipulation enclosed as Exhibit "A"). Upon the execution of the Settlement Agreement, Plaintiff shall notify the Court via email and copy counsel for Defendants that the Order to Show Cause is withdrawn. Should the Court require it, the Stipulation of Withdrawal shall be filed to the appropriate court docket. Should this not be required, the Stipulation of Withdrawal shall be held in escrow by the parties' counsel; and

(2) the discontinuance of the action with prejudice (stipulation enclosed as Exhibit "B")., The Stipulation of Discontinuance with Prejudice shall be held in escrow by the parties' counsel pending Defendants' satisfaction of its obligations pursuant to Clauses A, B, and C above.

Within 48 hours after Defendants' final wire transfer, either counsel for Plaintiff or counsel for Defendants, shall file the enclosed Stipulation of Discontinuance with Prejudice with the applicable court and provide the other party with notice of same.

**IN THE EVENT OF A DEFAULT** in any of the above payments or in any of the other terms of this Stipulation of Settlement, Plaintiff shall have the right, without any notice to the Defendants and without further application to the court, to enter judgment for $827,500.00 (the amount demanded in Plaintiff's Verified Complaint), together with costs, interest and disbursements less any amounts paid hereunder.

**IT IS FURTHER UNDERSTOOD** and agreed that:

1. Plaintiff shall not take any further action or proceedings in the above entitled matter as long as the Defendants timely make the payments herein provided.

2. As of the date that Defendants' obligations to Plaintiff as detailed herein shall have been fully satisfied, Plaintiff for itself and on behalf of all parents, divisions, subsidiaries, affiliates, related entities, representatives, successors, directors, officers, owners, agents,

employees, insurance carriers, attorneys and assigns, hereby releases and forever discharges

Defendants and their respective parents, divisions, subsidiaries, affiliates, related entities,

representatives, successors, directors, officers, owners, agents, employees, insurance carriers,

attorneys and assigns of and from any and all claims, counterclaims, demands, damages, debts,

liabilities, accounts, actions, causes of action and suits, known or unknown, liquidated or

contingent, arising from, which may arise in the future from, or which are directly or indirectly

related in any manner to the agreement(s) that gave rise to Defendants obligations as was

previously detailed in the instant litigation, including but not limited to any claims that were or

could have been asserted. Despite the foregoing, Plaintiff shall not be released from performing

its obligations as are detailed in this Stipulation of Settlement. Defendants acknowledge that any

and all legal claims they maintain must be brought by a breach of this Stipulation of Settlement.

Additionally, Plaintiff is hereby released by Defendants from any and all claims they may have

by virtue of Plaintiff's performance of this Stipulation of Settlement.

3. As of the date hereof: (i) Defendants hereby release and forever discharge Plaintiff its

respective parents, divisions, subsidiaries, affiliates, related entities, representatives, successors,

directors, officers, owners, agents, employees, insurance carriers, attorneys and assigns of and

from any and all claims, counterclaims, demands, damages, debts, liabilities, accounts, actions,

causes of action and suits, known or unknown, liquidated or contingent, arising from, which may

arise in the future from, or which are directly or indirectly related in any manner to the

Agreement referenced in Plaintiff's Verified Complaint in the instant litigation (the

"Agreement"), including but not limited to any claims that were or could have been asserted.

5. Defendants: (a) consent to the jurisdiction of this court, and (b) waive all jurisdictional

defenses.

6. The undersigned individual appears herein

7. The undersigned individual represents and admits that they are not in armed services of the United States.

7. Electronically transmitted copies of this Stipulation of Settlement shall be considered to have the same effect as an original ink-signed document.

Dated: _____ 2021

Dated: _____ , 2021

_____

DANIEL S MARCH,  Individually and as an authorized officer on behalf of THE LITIGATION PRACTICE GROUP PC and VULCAN CONSULTING GROUP LLC and BAT INC and COAST PROCESSING.COM D/B/A/ COAST PROCESSING

Yehuda Klein, Esq.

*The Klein Law Firm, LLC*

PO Box 714

Lakewood, NJ 08701

Phone: (646)330-9077

Email: jay@thekleinfirm.com

_____

TONY M DIAB, Individually and as an authorized officer on behalf of THE LITIGATION PRACTICE GROUP PC and VULCAN CONSULTING GROUP LLC and BAT INC and COAST PROCESSING.COM D/B/A/ COAST PROCESSING

**Exhibit "A"**

SUPREME COURT OF THE STATE OF NEW YORK                    Index No.: 612800/2021
COUNTY OF NASSAU

LIBERTY FUND GROUP LLC,

                                                    Plaintiff,    IAS Judge: Helen Voutsinas

                         -against-

THE LITIGATION PRACTICE GROUP PC and VULCAN         Motion No. 001
CONSULTING GROUP LLC and BAT INC and COAST
PROCESSING.COM D/B/A/ COAST PROCESSING   and
TONY M DIAB  ,

                                                    Defendants.

## <u>WITHDRAWAL OF ORDER TO SHOW CAUSE</u>

The undersigned, counsel for all parties, hereby stipulate and agree that the above-referenced

motion is withdrawn, with prejudice and without costs to either party.


/s/Ashlee Colonna Cohen
_____           _____
Ashlee Colonna Cohen, Esq.                  Yehuda Klein, Esq.

*Attorney for Defendants*                   *Attorney for Plaintiff*
46 N Henry St                               PO Box 714

Brooklyn NY 11222                           Lakewood, NJ 08701

Phone: 516-567-0885                         Phone: (646) 330-9077

Email: ashleecohenesq@gmail.com             Email: jay@thekleinfirm.com


Dated: October 8, 2021                      Dated: October 8, 2021

**Exhibit "B"**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

| | |
|---|---|
| LIBERTY FUND GROUP LLC,<br><br>                            Plaintiff,<br><br>      -against-<br><br><br>THE LITIGATION PRACTICE GROUP PC and<br>VULCAN CONSULTING GROUP LLC and BAT INC<br>and COAST PROCESSING.COM D/B/A/ COAST<br>PROCESSING   and<br>TONY M DIAB  ,<br><br>                          Defendants. | Index No.: 612800/2021<br><br>**STIPULATION OF<br>DISCONTINUANCE WITH<br>PREJUDICE** |

The undersigned stipulate and agree that the above-entitled action, be and the same is, **hereby discontinued as against all Defendants with prejudice** and without costs to any party and this notice may be filed with the Clerk of the Court without further notice.

/s/Ashlee Colonna Cohen

| | |
|---|---|
| Ashlee Colonna Cohen, Esq. | Yehuda Klein, Esq. |
| *Attorney for Defendants* | *Attorney for Plaintiff* |
| 46 N Henry St | PO Box 714 |
| Brooklyn NY 11222 | Lakewood, NJ 08701 |
| Phone: 516-567-0885 | Phone: (646) 330-9077 |
| Email: ashleecohenesq@gmail.com | Email: jay@thekleinfirm.com |

Dated:  October 8, 2021                          Dated:  October 8, 2021

# EXHIBIT G

## SETTLEMENT AGREEMENT

This Settlement Agreement and Release ("Settlement Agreement") is made and entered into this 20ᵗʰ day of October 2021 (the "Effective Date"), by and among Plaintiffs Bridge Capital ( "Plaintiff") and The Litigation Practice Group PC d/b/a Litigation Practice Group, Vulcan Consulting Group LLC, Litigation Practice Group PC, LPG, March PS Law Offices, Daniel March, Chase Newport & Co., Inc, Daniel S March Law Offices, Technology Systems, Inc., Lind Non Force Chiropractic Inc, and Daniel Stephen March (collectively, "Defendants"). As provided herein, Plaintiff hereby stipulates and agrees that, in consideration of the promises and covenants set forth in this Settlement Agreement, all claims against Defendants in the action titled *Bridge Capital v. The Litigation Practice Group PC d/b/a Litigation Practice Group et al.*, now pending in the Supreme Court of New York for the County of Kings, Index No. 521526/2021 (the "Action"), shall be settled and compromised upon the terms and conditions contained herein and dismissed with prejudice. Plaintiff and Defendants are each referred to in this Settlement Agreement individually as a "Party" and collectively as the "Parties."

## RECITALS

WHEREAS, the Defendants were solicited for financing by "Bridge Consolidation;"

WHEREAS, the Defendants were offered financing from "Bridge Capital;"

WHEREAS, the Defendants accepted financing from "Bridge Capital" and executed a certain "Revenue Purchase Agreement" dated June 16, 2021;

WHEREAS, the proceeds of the Revenue Purchase Agreement were wired to Defendants from "Bridge Consolidation;"

WHEREAS, the Defendants made each payment pursuant to the Revenue Purchase Agreement to "Bridge Consolidation;"

WHEREAS, on August 11, 2021, "Bridge Consolidation" offered Defendants a "Settlement Letter" to satisfy the Revenue Purchase Agreement in full and to release all UCC Liens Plaintiff had perfected against Defendants. The "Settlement Letter" directed Defendants to wire $215,000 to Optimum Bank account ███████ for account of "Hamilton Advance, Inc;"

WHEREAS, Defendants accepted the terms of the "Settlement Letter," executed the "Settlement Letter," and in wired $215,000 to "Hamilton Advance, Inc" on August 19, 2021;

WHEREAS, on August 23, 2021, the Action, was commenced asserting various claims for relief against Defendants, all of which claims are disputed by Defendants; and

WHEREAS, the Parties desire to promptly and fully resolve and settle with finality the Action without further litigation;

NOW, THEREFORE, the Parties, in consideration of the promises, covenants, and agreements herein described, and for other good and valuable consideration, acknowledged by

1

each of them to be satisfactory and adequate, and intending to be legally bound, do hereby mutually agree as follows:

1.   <u>RELEASE OF LIENS</u>. Upon receipt of the fully executed Settlement Agreement, within 48 hours, Plaintiff shall terminate any and all UCC liens perfected against Defendants, rescind any and all restraints sent on behalf of Plaintiff to enforce any debts or claims against Defendants (and CC counsel for Defendants on any emailed rescissions), and issue Defendants a Zero Balance Letter evidencing the Revenue Purchase Agreement has been paid in full and there is currently no outstanding debt owed to Plaintiff as of October 20, 2021. The Zero Balance Letter shall be emailed to counsel for Defendants (ashlee@colonnacohenlaw.com).

2.   <u>STIPULATION OF DISCONTINUANCE OF THE ACTION WITH PREJUDICE</u>. Simultaneously with the execution of this Settlement Agreement, counsel for Plaintiff and Defendants, shall execute and electronically return a Stipulation of Discontinuance with Prejudice of the Action, in the form attached hereto as **Exhibit "A."** Within 24 hours of receipt of the fully executed Settlement Agreement, counsel for Defendants shall electronically file the executed Stipulation of Discontinuance with Prejudice to the NYSCEF docket under Index Number 521526/2021. It is expressly agreed and understood that the purpose of this Paragraph is to ensure that all aspects of the Action are terminated and fully withdrawn, dismissed and discontinued, with prejudice. Accordingly, counsel for Plaintiff further agrees to fully cooperate and to promptly prepare, deliver and/or file any other documentation that might be required by the Court to ensure that the Action is terminated and fully withdrawn, dismissed and discontinued, with prejudice as to the Defendants.

3.   <u>MUTUAL RELEASE OF CLAIMS</u>.

(A) Defendants, on their own behalf, and on behalf of their direct and indirect owners, parents, subsidiaries, principals, partners, affiliates, members, owners, managers, officers, employees, agents, representatives, contractors, sub-contractors, attorneys, administrators and insurers, beneficiaries, heirs, successors and assigns, and any other person or entity who may in any fashion claim any interest in the subject matter of claims released by, through or on behalf of any of the foregoing (the "Defendants Releasors"), hereby releases, acquits, waives and forever discharges: Plaintiff Bridge Capital, its direct and indirect owners, parents, subsidiaries, principals, partners, affiliates, members, owners, managers, officers, employees, agents, representatives, contractors, sub-contractors, attorneys, administrators and insurers, beneficiaries, heirs, successors and assigns (the "Released Parties"), from any and all manner of actions, causes of action, suits, debts, accounts, covenants, agreements, controversies, damages, liabilities, obligations, payments, judgments, costs, charges, penalties, forfeitures, expenses, attorneys' fees, claims and demands whatsoever, whether at law or in equity, known or unknown, foreseen or unforeseen, from the beginning of time to and including the execution of this Settlement Agreement, including but not limited to any direct or indirect claim against the Released Parties, that is related, in any way whatsoever, to the subject matter of the Action. Failure to comply with the obligations in this provisions will constitute a material breach of this Settlement Agreement.

2

(B) Plaintiff, on their own behalf, and on behalf of their direct and indirect owners, parents, subsidiaries, principals, partners, affiliates, members, owners, managers, officers, employees, agents, representatives, contractors, sub-contractors, attorneys, administrators and insurers, beneficiaries, heirs, successors and assigns, and any other person or entity who may in any fashion claim any interest in the subject matter of claims released by, through or on behalf of any of the foregoing (the "Plaintiff Releasor"), hereby releases, acquits, waives and forever discharges: The Litigation Practice Group PC d/b/a Litigation Practice Group, Vulcan Consulting Group LLC, Bat, Inc. d/b/a Coast Processing, Litigation Practice Group PC, LPG, March PS Law Offices, Tony M. Diab, Chase Newport & Co., Inc, Daniel S March Law Offices, Technology Systems, Inc., Lind Non Force Chiropractic Inc, and Daniel Stephen March, their direct and indirect owners, parents, subsidiaries, principals, partners, affiliates, members, owners, managers, officers, employees, agents, representatives, contractors, sub-contractors, attorneys, administrators and insurers, beneficiaries, heirs, successors and assigns (the "Released Parties"), from any and all manner of actions, causes of action, suits, debts, accounts, covenants, agreements, controversies, damages, liabilities, obligations, payments, judgments, costs, charges, penalties, forfeitures, expenses, attorneys' fees, claims and demands whatsoever, whether at law or in equity, known or unknown, foreseen or unforeseen, from the beginning of time to and including the execution of this Settlement Agreement, including but not limited to any direct or indirect claim against the Released Parties, that is related, in any way whatsoever, to the subject matter of the Action. Failure to comply with the obligations in this provisions will constitute a material breach of this Settlement Agreement. This Release explicitly excludes, and does not extend to, Bridge Funding, Cap, LLC, Fundura Capital Group, or any and all of their direct and indirect owners, parents, subsidiaries, principals, partners, joint-venturers, affiliates, members, owners, managers, officers, employees, agents, representatives, contractors, sub-contractors, attorneys, administrators and insurers, beneficiaries, heirs, successors and assigns.

4.      JURISDICTION.  The parties agree that the Supreme Court of New York, Kings County, shall retain jurisdiction of the Action for purposes of enforcing this Settlement Agreement.

5.      MUTUALLY DRAFTED SETTLEMENT AGREEMENT. Each of the Parties has been fully and competently represented by counsel of their own choosing in the negotiations and drafting of this Settlement Agreement. Accordingly, the Parties agree that any rule of construction of contracts resolving any ambiguities against the drafting Party shall be inapplicable to this Settlement Agreement. Each term of this Settlement Agreement is contractual, not a mere recital, and is the result of negotiations between the Parties.

6.      NO ADMISSION OF LIABILITY. Neither this Settlement Agreement nor anything contained within it shall be admissible in any proceeding as evidence of liability or wrongdoing on the part of any of the Released Parties.  However, this Settlement Agreement may be introduced in any proceeding instituted to enforce its terms.

7.      FINAL WRITTEN EXPRESSION. This Settlement Agreement is integrated and once accepted according to its terms is intended by the Parties as a final and complete expression of their agreement with respect to the subject matter addressed herein. This Settlement Agreement

3

supersedes any and all prior or contemporaneous agreements, negotiations, or understandings, written or oral, between the Parties regarding the subject matter addressed herein. The Parties hereto, and each of them, acknowledge that no other Party nor any agent or attorney for any other Party has made any promise, representation, or warranty whatsoever, express or implied, written or oral, not contained herein, concerning the subject matter hereof to induce the execution of this Settlement Agreement, and each of the Parties acknowledges that it has not executed this Settlement Agreement in reliance on any promise, representation, or warranty not contained herein.

8.    AMENDMENT. This Settlement Agreement may not be amended, modified, or terminated, in whole or in part, except by an instrument in writing duly executed by the Parties or their authorized representatives.

9.    CONFIDENTIALITY. Except as set forth below, the Parties agree to keep confidential and not disclose, describe, or discuss, either directly or indirectly, in any manner whatsoever, any information regarding the terms or substance of this Settlement Agreement to or with any person or entity. The Parties may disclose only that the dispute was satisfactorily resolved.

9.1    Notwithstanding the provisions of Paragraph 9 above, the Parties may disclose in confidence to their Board of Directors, employees, lawyers, accountants, insurers, financial advisors, creditors, and consultants such information concerning the terms of this Settlement Agreement as is necessary for such individuals to perform their professional functions, such information as may be required for compliance with statute or regulation or requested by governmental or regulatory authorities, such information as may be necessary to defend legal action brought by third parties, and such information as may be necessary to enforce this Settlement Agreement.

9.2    If disclosure of the terms of this Settlement Agreement is sought by court order, subpoena, or via some other discovery request, the Party from whom such disclosure is sought must notify the other Party in writing via email as soon as practicable, but in no event later than five (5) business days from the receipt of the court order, subpoena, or other discovery request, and, to the extent possible, no later than three (3) business days prior to the requested production (the "Notification Email"). The notifying Party shall email Defendants' attorney at Ashlee@colonnacohenlaw.com or the Plaintiff's attorney at levi@ainsworthgorkin.com to alert the other Party of the disclosure being sought. If, after being notified of the court order, subpoena, or some other discovery request, the Party decides to seek a protective order or other relief from the court, that Party shall notify the other Party from whom disclosure is sought in writing via email of their intent to seek judicial intervention and a demand to stay disclosure, as soon as practicable, but in no event later than three (3) business days from the date of the Notification Email (the "Notice of Intent to Seek Judicial Intervention"). Once the Party sends the Notice of Intent to Seek Judicial Intervention via email to the other Party, the Party from whom disclosure is sought shall be stayed from making the disclosure pending the outcome of the Party's motion for a protective order or other relief from the court. The Party from whom disclosure is sought shall not oppose any effort by the other Party for a protective order or other relief from the court order or subpoena.

10. **NON-DISPARAGEMENT.** The Parties further agree not to make any statements, written or verbal, or cause or encourage others to make any statements, written or verbal, that defame, disparage or in any way criticize the business reputation, practices, or conduct of the other.

11. **GOVERNING LAW.** This Settlement Agreement shall be governed by, construed, and enforced in accordance with the laws of the State of New York, without giving effect to its choice of law provisions.

12. **ATTORNEYS' FEES/COSTS.** The Parties shall bear their own attorneys' fees, expenses, and costs in connection with, related to, or arising from this Settlement Agreement or otherwise relating to the matters released herein.

13. **SEVERABILITY.** If any provision of this Settlement Agreement is declared invalid by any tribunal, then such provision shall be deemed automatically adjusted to the minimum extent necessary to conform to the requirements for validity as declared at such time and, as so adjusted, shall be deemed a provision of this Settlement Agreement as though originally included herein. In the event that the provision invalidated is of such a nature that it cannot be so adjusted, the provision shall be deemed deleted from this Settlement Agreement as though such provision had never been included herein. In either case, the remaining provisions of this Settlement Agreement shall remain in full force and effect.

14. **GENDER/PLURAL/CONNECTIVES.** Whenever in this Settlement Agreement the context may require, the masculine gender shall be deemed to include the feminine and/or neuter, and vice versa, the singular to include the plural, and vice versa, and (to give the releases herein the broadest interpretation and scope, as is desired by the Parties hereto) the connectives "and" and "or" to mean "and/or."

15. **HEADINGS.** Headings as used in this Settlement Agreement are for convenience only and are not a part of this Settlement Agreement. The Parties acknowledge that they have read the full substance of each paragraph and are not relying upon the headings.

16. **NOTICES.** Any notice appropriate or required to be given hereunder shall be by email to the following addresses, or such other address as is subsequently noticed in writing to all Parties:

<u>**If to Defendants:**</u>
ashlee@colonnacohenlaw.com

<u>**If to Plaintiff**</u>
levi@ainsworthgorkin.com

17. **EXECUTION IN COUNTERPARTS.** The Parties may execute this Settlement Agreement by facsimile or PDF and in counterparts, each one of which shall have the same force and effect as an original, and all of which together shall constitute one and the same instrument.

IN WITNESS WHEREOF, the Parties have each caused this Settlement Agreement to be duly executed as of the Effective Date.

5

FOR **PLAINTIFF** BRIDGE CAPITAL

Dated: 11/1/2021

By _____
Signature

Joe   Hurwitz
Print Name

Owner
Title

Dated: _____

By _____
Levi Ainsworth, Esq.
Ainsworth Gorkin PLLC
*Counsel for Plaintiff*

FOR **DEFENDANTS** THE LITIGATION PRACTICE GROUP PC D/B/A LITIGATION
PRACTICE GROUP, VULCAN CONSULTING GROUP LLC, LITIGATION PRACTICE
GROUP PC, LPG, MARCH PS LAW OFFICES, DANIEL MARCH, CHASE NEWPORT &
CO., INC, DANIEL S MARCH LAW OFFICES, TECHNOLOGY SYSTEMS, INC., LIND
NON FORCE CHIROPRACTIC INC, AND DANIEL STEPHEN MARCH

Dated: 11/1/2021

By _____
Daniel S. March

Dated: 11/2/21

By *Ashlee Colonna Cohen*
Ashlee Colonna Cohen, Esq.
Colonna Cohen Law, PLLC
*Counsel for Defendants*

# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

-----------------------------------------------------------------------x

BRIDGE CAPITAL,

                Plaintiffs,

      -against-

THE LITIGATION PRACTICE GROUP PC D/B/A
LITIGATION PRACTICE GROUP, VULCAN
CONSULTING GROUP LLC, LITIGATION PRACTICE
GROUP PC, LPG, MARCH PS LAW OFFICES, DANIEL
MARCH, CHASE NEWPORT & CO., INC, DANIEL S
MARCH LAW OFFICES, TECHNOLOGY SYSTEMS,
INC., LIND NON FORCE CHIROPRACTIC INC and
DANIEL STEPHEN MARCH,

                Defendants.

-----------------------------------------------------------------------x

Index No.  521526/2021

**STIPULATION OF
DISCONTINUANCE
WITH PREJUDICE**

    **IT IS HEREBY STIPULATED AND AGREED** by and between Plaintiffs Bridge

Capital, by their undersigned counsel, on the one hand, and Defendants THE LITIGATION

PRACTICE GROUP PC D/B/A LITIGATION PRACTICE GROUP, VULCAN CONSULTING

GROUP LLC, LITIGATION PRACTICE GROUP PC, LPG, MARCH PS LAW OFFICES,

DANIEL MARCH, CHASE NEWPORT & CO., INC, DANIEL S MARCH LAW OFFICES,

TECHNOLOGY SYSTEMS, INC., LIND NON FORCE CHIROPRACTIC INC and DANIEL

STEPHEN MARCH (collectively, "Defendants"), by their undersigned counsel, on the other hand,

that the above action including all claims that have been asserted or could have been asserted in

that action is settled for good and valuable consideration, that all claims, counterclaims, causes of

action and requests for relief in this action are withdrawn, in their entirety, and hereby

discontinued, with prejudice, with the parties to bear their own attorneys' fees and costs.

7

**IT IS FURTHER STIPULATED AND AGREED** that no party on whose behalf this stipulation is being executed is an infant, an incompetent person for whom a committee or a conservatee has been appointed, and no person not a party to this lawsuit has an interest in the subject matter of the action.

**IT IS FURTHER STIPULATED AND AGREED** that this Stipulation may be filed without further notice with the Clerk of the Court and that facsimile, pdf or electronic copies of this document shall have the same force and effect as an original, and this Stipulation can be executed in counterparts, it being understood and agreed that all such counterparts, taken together, shall constitute one and the same instrument or document.

Dated: October 7, 2021
     New York, New York

**COLONNA COHEN LAW, PLLC**

By: *Ashlee Colonna Cohen*
    Ashlee Colonna Cohen, Esq.
    46 N. Henry Street
    Brooklyn New York 11222
    (516) 567-0885
    ashlee@colonnacohenlaw.com

**AINSWORTH GORKIN, PLLC**

By: _____
    Levi Ainsworth, Esq.
    111 John Street, 12th Floor
    New York, New York 10038
    (212) 913-0217 x 101
    levi@ainsworthgorkin.com

8

# EXHIBIT H

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

COBALT FUNDING SOLUTIONS, LLC

                                        Plaintiff,                    Index No: 613095/2021

     -against-

THE LITIGATION PRACTICE GROUP PC and VULCAN
CONSULTING GROUP LLC and BAT INC and COAST
PROCESSING.COM D/B/A/ COAST PROCESSING and
DANIEL S MARCH and TONY M DIAB,

                                        Defendants.

## STIPULATION OF SETTLEMENT

**THIS SETTLEMENT AGREEMENT AND GENERAL RELEASE** ("Settlement Agreement")
is entered into as of February 8, 2022 (the "Execution Date"), by and between Cobalt Funding Solutions,
LLC ("PLAINTIFF") and THE LITIGATION PRACTICE GROUP PC and VULCAN CONSULTING
GROUP LLC and BAT INC and COAST PROCESSING.COM D/B/A/ COAST PROCESSING and
DANIEL S MARCH and TONY M DIAB ("Defendants") (collectively, the "Parties").

**WHEREAS**, Plaintiff commenced an action against Defendants by the filing of a Summons and

Complaint on October 14, 2021, in the New York State Supreme Court for the County of Nassau under

Index Number 613095/2021 (the "Action"); and

**WHEREAS**, the Parties wish to settle all disputes between them including, without limitation,

all claims that were, or could have been, asserted in the Action, pursuant to the terms and conditions

set forth in this Agreement;

**NOW, THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which

are hereby acknowledged, the parties agree as follows:

1. <u>Settlement Amount</u>.  Plaintiff hereby agrees to accept the sum of $1,500,000 (the "Settlement

Amount") in full satisfaction of any and all claims Plaintiff may have against Defendants including, without

limitation, the claims that could be asserted in the Action. The Settlement Amount shall be paid as follows:

(a)  Seven payments in the amount of $75,000.00 respectively via wire transfer. Payments will commence on Thursday, February 10, 2022 and continue on the next 6 Thursdays thereafter.

(b)  Nine payments in the amount of $100,000.00 respectively via wire transfer. Payments will commence on Thursday, March 31, 2022 and continue on the next 8 Thursdays thereafter.

(c)  A final payment in the amount of $75,000.00 via wire transfer. Payments will made on Thursday, June 2, 2022.

(d)  The Attorney Trust Account for Plaintiff's counsel is below:

**The Klein Law Firm LLC Attorney Trust Account**
**ADDRESS:** 233 Benjamin St., Toms River, New Jersey 08755

**LAKELAND BANK**
**ACCOUNT #:** ▉
**ROUTING #:** ▉

If the due date of any payment falls on a bank holiday or weekend, said payment shall be due on the very next workday that is not a bank holiday.

2.  Forbearance of Litigation: Providing full compliance with the terms of this Agreement, all litigation and legal actions between the parties are hereby stayed. The parties also agree to:

(a)  withdraw their respective outstanding motions (Mtn Seq. #001 and #002) with the enclosed executed Stipulation of Withdrawal;

3.  Dismissals. Contemporaneously with the execution of this Agreement, the Parties, and/or their counsel, shall execute the enclosed Stipulation of Discontinuance without Prejudice to be filed within 3 business days after the third $75,000 payment is wired to Plaintiff.

4.  Assignment of UCC. Upon execution of this Settlement Agreement, Plaintiff shall also deliver to Bae Enterprises, Inc. the enclosed Assignment of UCC Financing Statements and Evidence of Assignment relating to the assignment of the UCC-1 financing statement, filed under number U210050853928, both of which are to be held in escrow pending the final $75,000 payment to Plaintiff

as contemplated herein. Upon Plaintiff's receipt of the final $75,000 payment, due on or before June 2, 2022, the Assignment Agreement of UCC Financing Statements and Evidence of Assignment will take full force and effect.

5.  <u>Effective Date</u>.  The Agreement shall become binding and be closed by the execution hereof by all parties.

6.  <u>Waiver of Plaintiff's Liability</u>. As of the date that Defendants obligations to Plaintiff as detailed herein have been fully satisfied, the Defendants for itself and on behalf of all parents, divisions, subsidiaries, affiliates, related entities, representatives, successors, directors, officers, owners, agents, employees, insurance carriers, attorneys and assigns, hereby releases and forever discharges Plaintiff and its respective parents, divisions, subsidiaries, affiliates, related entities, representatives, successors, directors, officers, owners, agents, employees, insurance carriers, attorneys and assigns of and from any and all claims, counterclaims, demands, damages, debts, liabilities, accounts, actions, causes of action and suits, known or unknown, liquidated or contingent, arising from, which may arise in the future from, or which are related in any manner to the underlying Agreement, including any claims that were or could have been asserted, other than Plaintiff's obligations under this Settlement Agreement. Defendants acknowledges that any and all legal claims it maintains must be brought by a breach of this settlement agreement.

7.  <u>Waiver of Defendants' Liability</u>. As of the date that Defendants obligations to Plaintiff as detailed herein have been fully satisfied,  the Plaintiff for itself and on behalf of all parents, divisions, subsidiaries, affiliates, related entities, representatives, successors, directors, officers, owners, agents, employees, insurance carriers, attorneys and assigns, hereby releases and forever discharges Defendants and their respective parents, divisions, subsidiaries, affiliates, related entities, representatives, successors, directors, officers, owners, agents, employees, insurance carriers, attorneys and assigns of and from any and all claims, counterclaims, demands, damages, debts, liabilities, accounts, actions, causes of action and suits, known or unknown, liquidated or contingent, arising from, which may arise in the future from, or which are related in any manner to the underlying Agreement, including any claims that were or could have been

asserted, other than Defendants' obligations under this Settlement Agreement. Plaintiff acknowledges that any and all legal claims it maintains must be brought by a breach of this settlement agreement.

8. <u>Default and Right to Cure</u>. A default under this Stipulation will occur if payment is not received on the date it is due. Defendants shall have a seven (7) day cure period within which to cure any default hereunder upon notice via email to Defendants counsel at **ashlee@colonnacohenlaw.com** and Defendant at **tony@coastprocessing.com**.

9. <u>Judgment</u>. In the event that this Stipulation is breached by Defendants, all terms of this Stipulation except for those detailed in this Paragraph 9, will be void *ab initio* and Plaintiff may at its option, apply for entry of a judgment against all Defendants, pursuant to CPLR §3215(i). Such application for entry of default judgment will include an affidavit or affirmation specifying the default and the amount of the unpaid balance of the entire abovementioned obligation.  Any Default Judgment entered hereunder will be for $3,000,000, less any payments made under this Agreement, plus any accrued interest, costs and disbursements. Defendants agree to accept service by email and waive any objections to service.

10. <u>Venue.</u> The Defendants recognize that because payment is to be made in the state of New York, this Agreement shall be governed by and construed according to the laws of the State of New York, without giving effect to its choice of law principles. The parties agree that all actions and proceedings arising out of or relating directly or indirectly to this Agreement or any ancillary agreement or any other related obligations shall be litigated solely and exclusively in in the Supreme Court of the State of New York County of Nassau, and that such courts are convenient forums. Each party hereby submits to the personal jurisdiction of such courts for purposes of any such actions or proceedings. The Defendants waive their right to service of process of any complaint or other process commenced arising from their obligations hereunder, and agree to accept service of any commencement documents including but not limited to a Summons and

Complaint via email to their counsel **ashlee@colonnacohenlaw.com** and the Defendant at tony@coastprocessing.com.

11. <u>Confidentiality:</u>  The Parties agree that they will not disclose to any entity or other person the terms or conditions of this Settlement Agreement (subject to the exceptions expressly stated in this paragraph) without the prior written consent of the other Party. Notwithstanding the foregoing, the Parties may otherwise disclose the terms of this Settlement Agreement only in the following situations: (i) to his or her legal, insurance, or tax professionals; (ii) in any action or proceeding to enforce the terms and conditions of this Settlement Agreement; (iii) as required by a lawfully issued subpoena after notification to the other Party so as to give the other Party time to move to quash said subpoena; and (iv) to the extent necessary to the holder of a mortgage or security interest in any property. Any disclosure in violation of this section shall be deemed a material breach of this Stipulation of Settlement.

12. <u>Execution and Delivery of Documents.</u>  The Parties agree that they respectively shall, upon request by another party to this Agreement, execute and deliver promptly any and all such documentation, or documents of any and every kind and character as may be reasonably required, necessary or proper for the purpose of giving full force and effect to this agreement and to the covenants, conditions, and agreements contained herein.  Furthermore, the parties agree to cooperate and to do all things necessary to accomplish the intention of this agreement.

13. <u>Incorporation by Reference, Recitals.</u>  All documents referred to in this Agreement are made a part hereof and incorporated herein by reference.

14. <u>Copies</u>.   Any true executed copy of the Agreement shall be deemed to constitute an original of the same.

15. <u>Construction and Interpretation.</u>  No provision in this Agreement shall be interpreted for or against another party because that party's attorney drafted such provision.

16. <u>Entire Agreement</u>.    This Agreement represents the full, complete and entire agreement between the parties and supersedes any previous agreement between the parties. This Agreement may only be modified in writing, accepted, and approved in writing by all Parties.

17. <u>Attorney Review</u>. Defendants acknowledge they had ample time to consult with an attorney of its choosing with respect to the terms of this Agreement, and has been advised to do so.

***<u>Signature Page to Follow</u>***

IN WITNESS WHEREOF, this Stipulation and Settlement Agreement has been agreed to and executed by the undersigned this 11<u>TH</u> day of <u>FEBRUARY</u>, 2022.


## Tony Diab

*Tony Diab*, individually, and on behalf of
*VULCAN CONSULTING GROUP LLC and BAT INC and COAST*
*PROCESSING.COM D/B/A/ COAST PROCESSING*


## Daniel S. March

*Daniel S. March*, individually, and on behalf of
*THE LITIGATION PRACTICE GROUP PC*


Yehuda Klein, Esq.
Authorized Representative/Counsel for
*Cobalt Funding Solutions, LLC*
The Klein Law Firm LLC
P.O. Box 714
Lakewood, NJ 08701
646-330-9077

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

COBALT FUNDING SOLUTIONS, LLC

Plaintiff,

-against-

THE LITIGATION PRACTICE GROUP PC and
VULCAN CONSULTING GROUP LLC and BAT
INC and COAST PROCESSING.COM D/B/A/
COAST PROCESSING and DANIEL S MARCH
and TONY M DIAB,

Defendants.

INDEX NUMBER: 613095/2021

**STIPULATION TO WITHDRAW
MOTION SEQ. #001 AND #002**

      **IT IS HEREBY STIPULATED AND AGREED,** Plaintiff's motion for a preliminary

injunction (Motion Seq. #001) and Defendants' motion to dismiss (Motion Seq. #002), are both

hereby withdrawn.

Dated: Brooklyn, New York
      February 11, 2022

**COLONNA COHEN LAW, PLLC**

/s/Ashlee Colonna Cohen
Ashlee Colonna Cohen, Esq.
*Attorneys for Defendants*
46 N Henry Street
Brooklyn, New York, 11222
Tel: (516) 567-0885
E-Mail: ashlee@colonnacohenlaw.com

**THE KLEIN LAW FIRM LLC**

Yehuda Klein, Esq.
*Attorney for Plaintiff*
P.O. Box 714
Lakewood, NJ 08701
646-330-9077
Email: jay@thekleinfirm.com

EXHIBIT H

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

COBALT FUNDING SOLUTIONS, LLC

Plaintiff,

-against-

THE LITIGATION PRACTICE GROUP PC and
VULCAN CONSULTING GROUP LLC and BAT
INC and COAST PROCESSING.COM D/B/A/
COAST PROCESSING and DANIEL S MARCH
and TONY M DIAB,

Defendants.

INDEX NUMBER: 613095/2021

**STIPULATION OF
DISCONTINUANCE
WITHOUT PREJUDICE**

**IT IS HEREBY STIPULATED AND AGREED,** by and between the parties, Plaintiff

COBALT FUNDING SOLUTIONS, LLC and Defendants THE LITIGATION PRACTICE GROUP PC

and VULCAN CONSULTING GROUP LLC and BAT INC and COAST PROCESSING.COM D/B/A/

COAST PROCESSING and DANIEL S MARCH and TONY M DIAB, pursuant to CPLR § 3217, that

whereas no party hereto is an infant or incompetent person for whom a committee has been

appointed and no person not a party has an interest in the subject matter of the action, the above-

entitled action be, and the same hereby is **DISCONTINUED WITHOUT PREJUDICE**,

without costs to either party as against the other. This stipulation may be filed without further

notice with the Clerk of the Court.

Dated: Brooklyn, New York
February 11, 2022

**COLONNA COHEN LAW, PLLC**

/s/Ashlee Colonna Cohen
Ashlee Colonna Cohen, Esq.
*Attorneys for Defendants*
46 N Henry Street
Brooklyn, New York, 11222
Tel: (516) 567-0885
ashlee@colonnacohenlaw.com

**THE KLEIN LAW FIRM LLC**

Yehuda Klein, Esq.
*Attorney for Plaintiff*
P.O. Box 714
Lakewood, NJ 08701
646-330-9077
jay@thekleinfirm.com

## ASSIGNMENT OF UCC FINANCING STATEMENTS

Assignment of UCC Financing Statement ("Assignment") executed and delivered as of February ___, 2022, by Queen Funding, LLC and Cobalt Funding Solutions, LLC (each an "Assignor", and together the "Assignors") to Bae Enterprises, Inc. ("Assignee").

## RECITALS:

Assignee desires to purchase from Assignors, and Assignors have agreed to sell and assign their respective UCC financing statements filed against The Litigation Practice Group PC, Bat, Inc.,  (together as "Company") and Daniel  Stephen March, and as more specifically described as filing number U210050853928, filed with the California Secretary of State on May 28, 2021, respectively ("UCC Financing Statement"), and all of Assignors' rights under the UCC Financing Statements, including without limitation any and all collateral secured by the UCC financing Statements, for a purchase price of $1,500,000.00 (the "Purchase Price").

For good and valuable consideration, the receipt and adequacy of which is acknowledged, Assignors agree as follows:

1.    Contemporaneously with the execution of this Agreement,

    (a)    Assignors sell, transfer and assign to Assignee the UCC Financing Statements and all of Assignors' rights,title, and interest under the UCC Financing Statements; and

    (b)    Assignee is authorized to file a UCC-3 assignments, assigning from Assignors to Assignee the UCCFinancing Statements.

2.    Assignors represent and warrant to Assignee that (i) each Assignor's exact legal name is as set forth in the preamble above, and (ii) Assignors have not sold, assigned, or transferred the UCC Financing Statements to any other party. The sale, transfer and assignment is made without recourse, representations or warranties of any kind, except as set forthabove.

3.    Assignors shall execute the Evidence of Assignment attached hereto as Exhibit 1, which Assignee, Company, or any designee of any of the foregoing may, at any time after receipt by Assignors of the Purchase Price, provide to any other person as evidence of this Assignment.

4.    This Assignment and any dispute, controversy or claim (whether or not arising out of or in connection with this Assignment) between Assignors and Assignee shall be governed by and construed in accordance with the laws of the State of Wyoming, without reference to conflicts of laws and shall waive any right to trial by jury. Nothing shall limit the right of Assignee to bring any action or proceeding in the courts of any other jurisdiction if necessary or convenient to effect the relief sought.

5.    Assignors agree to indemnify and hold Assignee, and Assignee agrees to indemnify

and hold Assignors, harmless from and against all losses, costs, damages, liabilities and expenses, including, without limitation, in-house and outside attorneys' fees and disbursements, incurred in connection with this Assignment or the transactions contemplated hereby, or enforcing the obligations of Assignors and Assignee under this Assignment, or in exercising any rights or remedies of Assignor or Assignee or in the prosecution or defense of any action or proceeding concerning any matter arising under or in connection with this Assignment. Upon the date of this Agreement, Assignors and Assignee, for themselves, as well as their members, officers, agents, representatives, and attorneys, mutually release and discharge each other from any and all claims, known or unknown, from the beginning of time until this day.

6.     Electronic and/or facsimile signatures on this Assignment shall be effective for all purposes.

7.     Assignor's wire instructions are as set forth below:

**The Klein Law Firm LLC Attorney Trust Account**
**ADDRESS:** 233 Benjamin St., Toms River, New Jersey 08755

**LAKELAND BANK**
**ACCOUNT #:** ▮▮▮▮▮▮▮▮
**ROUTING #:** ▮▮▮▮▮▮▮

**ASSIGNORS:**

**QUEEN FUNDING, LLC**

By: _____

Its: _Managing Member_____

**COBALT FUNDING SOLUTIONS, LLC**

By: _____

Its: _Managing Member_____

## **EXHIBIT 1**

[Evidence of Assignment attached]

## Evidence of Assignment

To Whom It May Concern:


Reference is made to that certain UCC financing statement, filing number U210050853928, filed with the California Secretary of State on May 28, 2021, respectively, against Bat, Inc. and The Litigation Practice Group PC (together as "Company") and Daniel Stephen March ("UCC Financing Statements").

Queen Funding, LLC and Cobalt Funding Solutions, LLC (together, the "Assignors") hereby confirm that in connection with that certain Assignment of UCC Financing Agreements, dated as of February _____, 2022, between Assignors and Bae Enterprises, Inc. ("Assignee"), (i) Assignors have sold, transferred and assigned all of their rights, titles and interests in the UCC Financing Statements to Assignee, (ii) Assignors no longer have any rights or interest in the UCC Financing Statements, and (iii) this Evidence of Assignment may be relied upon by any person as evidence of the foregoing.


**ASSIGNORS:**

**QUEEN FUNDING, LLC**

By: _____

Its: Managing Member_____


**COBALT FUNDING SOLUTIONS, LLC**

By: _____

Its: Managing Member_____


Signature: *Daniel S. March*
Daniel S. March (Feb 11, 2022 10:09 PST)
**Email:** admin@lpglaw.com

Signature: _____
Tony Diab (Feb 11, 2022 10:47 PST)
**Email:** tony@coastprocessing.com


13

# Settlement Agreement Draft_ACC edits -2-11

**Final Audit Report**                                                                      2022-02-11

| | |
|---|---|
| Created: | 2022-02-11 |
| By: | Ashlee Colonna Cohen (ashleecohenesq@gmail.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAA-6GeEbPxFWens-iFq4E-giOfoaswP81T |

## "Settlement Agreement Draft_ACC edits -2-11" History

Document created by Ashlee Colonna Cohen (ashleecohenesq@gmail.com)
2022-02-11 - 5:43:34 PM GMT- IP address: 190.167.196.210

Document emailed to Daniel S. March (admin@lpglaw.com) for signature
2022-02-11 - 5:44:22 PM GMT

Email viewed by Daniel S. March (admin@lpglaw.com)
2022-02-11 - 6:08:38 PM GMT- IP address: 70.181.82.230

Document e-signed by Daniel S. March (admin@lpglaw.com)
Signature Date: 2022-02-11 - 6:09:17 PM GMT - Time Source: server- IP address: 70.181.82.230

Document emailed to Tony Diab (tony@coastprocessing.com) for signature
2022-02-11 - 6:09:19 PM GMT

Email viewed by Tony Diab (tony@coastprocessing.com)
2022-02-11 - 6:47:10 PM GMT- IP address: 66.249.84.27

Document e-signed by Tony Diab (tony@coastprocessing.com)
Signature Date: 2022-02-11 - 6:47:51 PM GMT - Time Source: server- IP address: 70.181.82.230

Agreement completed.
2022-02-11 - 6:47:51 PM GMT

**Adobe Sign**

EXHIBIT H