KEITH C. OWENS (SBN 184841)
kowens@foxrothschild.com
NICHOLAS A. KOFFROTH (SBN 287854)
nkoffroth@foxrothschild.com
**FOX ROTHSCHILD LLP**
Constellation Place
10250 Constellation Boulevard, Suite 900
Los Angeles, California 90067
Telephone:    310.598.4150
Facsimile:    310.556.9828

Counsel for The Official Committee of
Unsecured Creditors

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SANTA ANA DIVISION**

| | |
|---|---|
| In re | Case No. : 8:23-bk-10571-SC |
| THE LITIGATION PRACTICE GROUP P.C., | Chapter 11 |
| Debtor. | **FOX ROTHSCHILD LLP'S FIRST INTERIM APPLICATION FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR THE INTERIM FEE PERIOD JUNE 29,2023 THROUGH JULY 31, 2024; DECLARATIONS OF APRIL RIEDY AND NICHOLAS A. KOFFROTH IN SUPPORT THEREOF** |
| | <u>Hearing</u><br>Date:  September 24, 2024<br>Time: 10:00 a.m.<br>Ctrm: Courtroom 5C<br>Place: 411 West Fourth Street<br>            Santa Ana, CA  92701 |

161333913.3

# TABLE OF CONTENTS

I.     Introduction ...................................................................................................... 1

II.    Factual Background ........................................................................................... 2

       A.     General Background ............................................................................... 2

       B.     Fox's Appointment as Counsel to the Committee (LBR 2016-1(a)(1)(B)) ........... 3

       C.     Fees And Expenses Sought by Fox Rothschild LLP ............................. 3

       D.     Guidelines Pursuant to Which This Application Has Been Prepared .................... 3

       E.     Appointment of the Fee Examiner ......................................................... 4

       F.     Incorporation by Reference of Narrative (LBR 2016-1(a)(1)(A)) ......................... 4

III.   Summary of Compensation Request .................................................................. 4

       A.     Fees Sought and Reimbursement of Expenses Incurred by Fox (LBR 2016-1(a)(1)(C)) ....... 4

       B.     Summary of Hours and Fees by Professional (LBR 2016-1(a)(1)(G) & (I)) ......... 5

       C.     Professional Background and Experience (LBR 2016-1(a)(1)(H)) ...................... 6

       D.     Previously Paid Compensation (LBR 2016-1(a)(1)(C)) ......................................... 6

       E.     Project Billing and Detailed Listing of Services (LBR 2016-1(a)(1)(E)) .............. 6

IV.    Review and Certification ................................................................................... 8

       A.     Client Review (LBR 2016-1(a)(1)(J)) .................................................... 8

       B.     Certification of Counsel (LBR 2016-1(a)(1)(K)) .................................. 8

V.     Description of Services LBR 2016-1(a)(1)(D) .................................................. 9

       A.     Asset Analysis & Recovery (AA) .......................................................... 9

       B.     Litigation/Adversary Proceedings (AP) ............................................... 10

       C.     Case Administration (CA) ..................................................................... 10

       D.     Court Hearings (CH) .............................................................................. 11

       E.     Creditor Inquiries (CI) ........................................................................... 11

       F.     Creditor Committee Meetings and Communications (CM) ................... 12

G.    Cash Collateral/DIP Financing (CR) ................................................................. 12

H.    Disclosure Statement (DS) ............................................................................... 13

I.    Employment Application of Fox Rothschild LLP (EA1) .................................... 13

J.    Employment Application of Other Professionals (EA2) .................................... 13

K.    Lease/Executory Contract Issues (EC) ............................................................. 13

L.    Fee Application of Fox Rothschild LLP (FA1) .................................................. 14

M.    Fee Application of Other Professionals (FA2) .................................................. 14

N.    General Investigation (GI) ................................................................................ 14

O.    Stay Relief Matters (MR) .................................................................................. 15

P.    Claims, Analysis, Objections & Resolutions (PC) ............................................ 15

Q.    Plan (PL) .......................................................................................................... 15

R.    Use, Sale or Lease of Property (SA) .................................................................. 16

S.    Trustee Reporting/Schedules (TR) .................................................................... 17

T.    Travel (TV) ....................................................................................................... 17

VI.    Costs and Summary of Expenses LBR 2016-1(a)(1)(F) ................................................. 18

VII.    Legal Argument ............................................................................................................. 19

VIII.    Reservation of Rights ...................................................................................................... 21

IX.    Conclusion ...................................................................................................................... 21

161333913.3

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Blanchard v. Bergeron,*
489 U.S. 87 (1989) ........................................................................................................19

*Blum v. Stenson,*
465 U.S. 886 (1984) ......................................................................................................19

*Dang v. Cross,*
422 F.3d 800 (9th Cir. 2005) ........................................................................................20

*Hensley v. Eckerhart,*
461 U.S. 424 (1983) ......................................................................................................19

*Johnson v Georgia Highway Express, Inc.,*
488 F.2d 714 (5th Cir. 1974) ........................................................................................19

*Kerr v. Screen Extras Guild, Inc.,*
526 F.2d 67 (9th Cir. 1975) ..........................................................................................19

*In re Manoa Finance Co., Inc.,*
853 F.2d 687 (9th Cir. 1988) ...................................................................................19, 20

*Pennsylvania v. Del. Valley Citizens' Council for Clean Air,*
478 U.S. 546 (1986) ......................................................................................................19

*Unsecured Creditors' Comm. v. Puget Sound Plywood, Inc.,*
924 F.2d 955 (9th Cir. 1991) ........................................................................................20

**Statutes and Rules**

11 U.S.C. § 331 ......................................................................................................................4

Bankruptcy Rule 2019 .........................................................................................................13

iii

Fox Rothschild LLP ("Fox"), in its capacity as counsel to the Official Committee of Unsecured Creditors (the "Committee") in the above-captioned bankruptcy case (the "Bankruptcy Case") of The Litigation Practice Group, P.C. (the "Debtor") filed under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"),[1] hereby submits this interim application (the "Application") for approval of fees in the amount of $1,050,894.00 and reimbursement of expenses in the amount of $19,823.67 (the "Requested Compensation") for the period between June 29, 2023 and July 31, 2024 (the "First Interim Fee Period"). In support of this Application, Fox refers to the Declarations of April Riedy (the "Riedy Declaration") and Nicholas A. Koffroth (the "Koffroth Declaration") annexed hereto, the record in the Bankruptcy Case, and respectfully states as follows:

## I.

## INTRODUCTION

Fox was engaged to represent the Committee and the diverse interests of general unsecured creditors in this Bankruptcy Case after the appointment of a chapter 11 trustee (the "Trustee"). This Bankruptcy Case has raised novel and challenging issues from the start given the now infamous prepetition operations of the Debtor's business to the detriment of hundreds of millions of asserted unsecured creditor claims, including those of thousands of the Debtor's former clients. Fox, on behalf of the Committee, quickly evaluated the moving pieces of this case—a sale of the Debtor's business operations, assignment of client relationships to a new purchaser, and financing requests from parties already subject to investigation—and made difficult decisions that took into consideration not only a number of novel legal issues but the practical realities of the case including the need to keep an eye on administrative expenses by working collaboratively with the Trustee whenever possible, and being judicious about picking fights where necessary all with an eye towards protecting the interests of unsecured creditors. Those decisions and the collaborative relationship built with the Trustee have resulted in confirmation of a plan supported by all classes casting votes, including the overwhelming support of unsecured creditors.

---

[1] Unless otherwise indicated herein, all references to "Section" or "§" refer to a section of the Bankruptcy Code.

Fox's diligent and judicious approach to this Bankruptcy Case has brought significant value. Fox did not approach this case as a license to bill—instead the Committee's professionals intentionally and assiduously avoided duplication of the work performed by the Trustee. Fox held weekly meetings with the Trustee's professionals to avoid unnecessarily objecting to requests by the Trustee, to offer strategic advice and input before papers were filed, to negotiate settlements and indicate the Committee's position with respect to pending matters, and limit the amount of unnecessary investigation already pursued by the Trustee. Fox and the Trustee's professionals negotiated a common interest agreement that facilitated the free exchange of information and documents between the Committee and Trustee. The Committee's and Fox's intentional decision to limit billing on this Bankruptcy Case and work collaboratively with the Trustee resulted most notably in the development, solicitation, and approval of the joint plan [Docket No. 1344] (the "Plan") that will provide the best avenue for creditor recovery and a seat at the table as the process unfolds postconfirmation. In addition, Fox's negotiation, analysis and briefing of legal issues regarding the Trustee's ability to sell the Debtor's client files in accordance with applicable nonbankruptcy law, and insistence on certain consumer protections culminating in the appointment of an ethics compliance monitor, helped to facilitate a sale that enabled the estate to monetize assets that was generally opposed by the Office of the United States Trustee while affording consumer clients the ability to opt out of the sales process with other consumer clients having the benefit of an ethics compliance monitor to ensure that the buyer remained in compliance with its legal and ethical obligations. As set forth more fully below, the skill and effort of Fox's attorneys and professionals, along with their diligence in balancing the needs and position of the Committee with the realities of this Bankruptcy Case, have brought material value to the estate and creditors.

## II.

## FACTUAL BACKGROUND

### A.    General Background

On March 20, 2023 ("Petition Date"), Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Central District of California, Santa Ana Division (the "Court"), commencing the above-captioned Bankruptcy Case.

On May 8, 2023, the Office of the United States Trustee ("U.S. Trustee") appointed the Trustee to serve in a fiduciary capacity as the chapter 11 trustee of the Debtor's estate. On June 23 and 29, 2023, the U.S. Trustee appointed the Committee to represent the interests of unsecured creditors in the Bankruptcy Case.

**B.**     **Fox's Appointment as Counsel to the Committee (LBR 2016-1(a)(1)(B))**

On July 28, 2023, Fox filed the *Application for Order Authorizing Employment of Fox Rothschild LLP as Counsel for the Official Committee of Unsecured Creditors, Effective as of June 29, 2023* [Docket No. 344] ("Employment Application"). On August 24, 2023, the Court entered its *Order Authorizing Employment of Fox Rothschild LLP as Counsel for the Official Committee of Unsecured Creditors, Effective as of June 29, 2023* [Docket No. 444] (the "Employment Order") authorizing the Committee to employ Fox as its counsel as of June 29, 2023. A copy of the Employment Order is attached hereto as **Exhibit A**.

**C.**     **Fees And Expenses Sought by Fox Rothschild LLP**

On July 16, 2024, the Trustee filed the *Notice to Retained Professionals re: Hearings on Interim Fee Applications* [Docket No. 1427] which established September 3, 2024 as the deadline to file interim fee applications. Pursuant to the notice to professionals, Fox files this Application seeking an Order from this Court allowing interim approval of the Requested Compensation for services rendered and expenses incurred during the First Interim Fee Period comprised of (i) fees in the amount of $1,050,894.00 and (ii) reimbursement of expenses in the amount of $19,823.67. No party sought, and the Court did not approve, interim compensation procedures in this Bankruptcy Case. Accordingly, all fees and expenses incurred during the First Interim Fee Period remain unpaid and outstanding as of the date of this Application.

**D.**     **Guidelines Pursuant to Which This Application Has Been Prepared**

Fox submits this Application in accordance with the Guidelines For Compensation And Expense Reimbursement Of Professionals And Trustees issued by the United States Bankruptcy Court for the Central District of California ("Central District Guidelines"), the United States Trustee Guidelines For Reviewing Applications For Compensation And Reimbursement Of Expenses Filed

3

Under 11 U.S.C. § 331 ("UST Guidelines"), and the Local Bankruptcy Rules of the United States Bankruptcy Court for the Central District of California ("LBR").

**E.      Appointment of the Fee Examiner**

On August 7, 2024, the Court entered an order [Docket No. 1489] appointing Nancy B. Rapoport (the "Fee Examiner") as the fee examiner in the Bankruptcy Case.  Pursuant to the order, the Application is subject to the review and comment of the Fee Examiner.  Fox will submit its fees and expenses for review to the Fee Examiner, pursuant to the procedures requested by the Fee Examiner, including as set forth in the notice to professionals [Docket No. 1498] filed on August 9, 2024.

**F.      Incorporation by Reference of Narrative (LBR 2016-1(a)(1)(A))**

LBR 2016-1 requires that an applicant for approval of interim fees provide a brief narrative history and report concerning the status of the case.  *See* LBR 2016-1(a)(1)(A).  However, if more than one application for interim fees is noticed for hearing at the same date and time, the narrative from one application may be incorporated by reference into the other interim fee applications.  *See* LBR 2016-1(a)(1)(A)(iv).  Fox hereby incorporates by this reference the narrative set forth in the *First Interim Application for Allowance of Fees and Costs filed by Marshack Hays Wood LLP as General Counsel* filed concurrently herewith in satisfaction of the narrative requirement set forth in LBR 2016-1(a)(1)(A).

**III.**

**SUMMARY OF COMPENSATION REQUEST**

**A.      Fees Sought and Reimbursement of Expenses Incurred by Fox (LBR 2016-1(a)(1)(C))**

Fox: (i) seeks an allowance of compensation for services rendered and expenses incurred during the First Interim Period, in a total amount of $1,070,717.67, which includes (a) fees in the amount of $1,050,894.00 and (b) reimbursement of expenses in the amount of $19,823.67; and (ii) requests an order authorizing immediate payment of such fees and expenses.  The Requested Compensation includes a complimentary fee and expense reduction to omit any fees or expenses associated with travel in this matter as a courtesy notwithstanding Fox's engagement agreement.  Fox further reserves the right to reduce additional fees in the exercise of Fox's billing judgment.

4

**B.**      **Summary of Hours and Fees by Professional (LBR 2016-1(a)(1)(G) & (I))**

The names of all of the Attorneys and Paraprofessionals who have been responsible for providing services to the Committee, their applicable rate including annual rate changes,[2] total number of hours spent on the case and total fees charged as a result of service they each provided to the Committee during the First Interim Fee Period is set forth below:

### SUMMARY OF PROFESSIONALS
June 29,2023 through July 31, 2024

| ATTORNEY | HOURLY RATE | APPLICATION HOURS | TOTAL FEES |
|---|---|---|---|
| Michael A. Sweet – Partner | $980.00 | 0.5 | $490.00 |
| Michael A. Sweet – Partner | $890.00 | 32.1 | $28,569.00 |
| Keith C. Owens – Partner | $895.00 | 170.8 | $152,866.00 |
| Keith C. Owens – Partner | $820.00 | 351.4 | $288,148.00[3] |
| Howard A. Cohen – Partner | $755.00 | 3.1 | $2,340.50 |
| M.A. Milano – Partner | $715.00 | 14.3 | $10,224.50 |
| Michael R. Herz – Partner | $620.00 | 45.5 | $28,210.00 |
| Elanor Vaida Gerhards – Partner | $645.00 | 2.0 | $1,290.00 |
| Nicholas A. Koffroth – Partner | $725.00 | 337.7 | $244,832.50 |
| Nicholas A. Koffroth – Associate | $640.00 | 363.0 | $232,320.00[4] |
| Jack Praetzellis – Partner | $620.00 | 13.4 | $8,308.00 |
| Robert F. Elgidely – Partner | $670.00 | 24.4 | $16,348.00 |
| C. Pippett - Counsel | $780.00 | 7.6 | $5,928.00 |
| M.H. Tirtasaputra – Associate | $490.00 | 11.0 | $5,390.00 |
| Stephanie S. Ward – Associate | $455.00 | 6.1 | $2,775.50 |
| Mary Gilmore - Associate | $480.00 | 7.7 | $3,696.00 |
| Matt Higgins – Associate | $455.00 | 14.3 | $7,078.50 |
| Zach Williams – Associate | $385.00 | 1.3 | $500.5 |
| **Subtotal** | | **1,406.2** | **$1,039,315.00** |
| **Blended Rate (Attorneys only)** | | | **$739.09** |

---

[2] Rates include regular modifications to hourly rates on an annual basis as set forth more fully in the *Notice of Change to Fox Rothschild LLP's Hourly Rates Effective January 1, 2024* [Docket No. 805].

[3] This is inclusive of 4.2 hours billed at "No Charge" related to travel time.
[4] This is inclusive of 2.1 hours billed at "No Charge" related to travel time.

161333913.3

| PARAPROFESSIONAL | HOURLY RATE | APPLICATION HOURS | TOTAL FEES |
|---|---|---|---|
| K. Misialek – Law Clerk | $370.00 | 1.6 | $592.00 |
| Robin I. Solomon – Paralegal | $460.00 | 1.1 | $506.00 |
| J. A. Dodds – Paralegal | $440.00 | 12.2 | $5,368.00 |
| Patricia M. Chlum – Paralegal | $375.00 | 4.5 | $1,687.50 |
| Patricia M. Chlum – Paralegal | $400.00 | 6.5 | $2,600.00 |
| S. Pennebaker – Research Analyst | $255.00 | 0.8 | $204.00 |
| S. Pennebaker – Research Analyst | $225.00 | 0.4 | $90.00 |
| M. Alsip – Research Analyst | $230.00 | 0.7 | $161.00 |
| T. M. Cherepski – Research Analyst | $285.00 | 1.3 | $370.50 |
| **Subtotal** | | **29.1** | **$11,579.00** |
| | | **APPLICATION HOURS** | **TOTAL FEES** |
| **GRAND TOTAL** | | **1,435.3** | **$1,050,894.00** |
| **Combined Blended Rate (Attorneys and Paraprofessionals)** | | | **$732.18** |

**C.    Professional Background and Experience (LBR 2016-1(a)(1)(H))**

Fox represented the Committee as effectively and efficiently as possible during the First Interim Period through considered allocation of tasks among the professionals.  In general, tasks were allocated among the professionals and paraprofessionals based upon their comparative expertise, taking into consideration the knowledge and experience of Fox's professionals and paraprofessionals and their familiarity with the case to avoid duplicative work. Resumes on the background and qualifications of each of the attorneys who rendered services to the Committee during the First Interim Fee Period are attached collectively hereto as **Exhibit B**.

**D.    Previously Paid Compensation (LBR 2016-1(a)(1)(C))**

During the First Interim Fee Period, Fox has received no payment and no promises for payment from any source for services rendered or yet to be rendered in any capacity whatsoever in connection with the matters covered by this Application.  Further, there is no agreement or understanding between Fox and any other person other than the equity holders of Fox for the sharing of compensation to be received for services rendered in this Bankruptcy Case.

**E.    Project Billing and Detailed Listing of Services (LBR 2016-1(a)(1)(E))**

In accordance with the Central District Guidelines and UST Guidelines, Fox classified all

161333913.3

services performed for each into Categories of Service ("Task Codes").  Fox attempted to place the services performed in the appropriate Task Code that best related to the service provided. The following chart summarizes the project billing categories utilized and the total hours expended for each category during the First Interim Fee Period:[5]

| Task | Description | Hours | Amount |
|------|-------------|-------|--------|
| AA | ASSET ANALYSIS & RECOVERY | 21.2 | $15,314.00 |
| AP | LITIGATION/ADVERSARY PROCEEDINGS | 98.8 | $67,480.00 |
| CA | CASE ADMINISTRATION | 95.7 | $75,806.50 |
| CH | COURT HEARINGS | 6.2 | $5,126.50 |
| CI | CREDITOR INQUIRIES | 8.2 | $6,987.50 |
| CM | CREDITOR COMMITTEE MEETINGS AND COMMUNICATIONS | 73.0 | $55,398.00 |
| CR | CASH COLLATERAL/DIP FINANCING | 27.9 | $20,422.50 |
| DS | DISCLOSURE STATEMENT | 51.4 | $37,906.50 |
| EA1 | EMPLOYMENT APPLICATION OF FOX ROTHSCHILD LLP | 8.3 | $5,268.50 |
| EA2 | EMPLOYMENT APPLICATION OF OTHER PROFESSIONALS | 15.2 | $11,769.00 |
| EC | LEASE/EXECUTORY CONTRACT ISSUES | 8.9 | $6,484.00 |
| FA1 | FEE APPLICATION OF FOX ROTHSCHILD LLP | 7.9 | $3,475.00 |
| FA2 | FEE APPLICATION OF OTHER PROFESSIONALS | 3.1 | $2,744.50 |
| GI | GENERAL INVESTIGATION | 61.4 | $46,648.00 |
| MR | STAY RELIEF MATTERS | 1.3 | $1,066.00 |
| PC | CLAIMS, ANALYSIS, OBJECTIONS & RESOLUTIONS | 154.1 | $115,918.50 |
| PL | PLAN | 469.2 | $341,912.00 |
| SA | USE, SALE OR LEASE OF PROPERTY | 322.4 | $230,265.00 |
| TR | TRUSTEE REPORTING/SCHEDULES | 1.1 | $902.00 |
| TV | TRAVEL | 6.3 | $0.00 |
| | TOTAL | 1,441.6 | $1,050,894.00 |

The Invoice attached as **Exhibit C** contains summaries and daily logs of the actual and necessary expenses paid by Fox during the First Interim Fee Period.  While certain services may relate to one or more Task Codes, services arguably pertaining to one Task Code may, in fact, be included in another Task Code.

---

[5] Some of the services rendered could reasonably be categorized in more than one of the billing categories.  Consequently, different attorneys sometimes billed their services on the same matter in different categories.

161333913.3

## IV.

## REVIEW AND CERTIFICATION

**A.      Client Review (LBR 2016-1(a)(1)(J))**

Fox has previously provided the Committee with copies of the invoices for the First Interim Fee Period and will provide a copy of this First Interim Application to the Committee.  As set forth more fully in the Riedy declaration, the Committee has reviewed the Requested Compensation set forth in this Application and has no objection to it.

**B.      Certification of Counsel (LBR 2016-1(a)(1)(K))**

As set forth more fully in the Koffroth Declaration, Fox has provided the certification of Fox required pursuant to LBR 2016-1(a)(1)(K).  The certification includes the following:

- •      the compensation and expense reimbursement requested are billed at rates, in accordance with practices, no less favorable that those customarily employed by Fox and generally accepted by Fox' clients;

- •      at all relevant times, Fox has been a disinterested person as that term is defined in § 101(14) and has not represented or held an interest adverse to the interest of the Committee;

- •      neither Fox nor any employee of Fox has any agreement or understanding of any kind or nature to divide, pay over or share any portion of the fees or expenses to be awarded to Fox with any other person or attorney except as among the members and associates of Fox;

- •      no time has been billed to the Committee outside the scope of work authorized by the Order authorizing employment of the Firm; and

- •      the compensation and expense reimbursement sought herein is in conformity with the LBR, the Compensation Guidelines for the United States Bankruptcy Court for the Central District of California and the Guidelines of the Office of the United States Trustee, except as otherwise noted herein.

161333913.3

# V.

## DESCRIPTION OF SERVICES

### LBR 2016-1(A)(1)(D)

The primary Fox attorneys who rendered professional services to or on behalf of the Committee in this Bankruptcy Case were Keith C. Owens and Nicholas A. Koffroth. Fox utilized other attorneys as needs arose and based on their various skills, experience, and billable rate. Notably, Fox took significant effort to limit unnecessary or duplicative work already being pursued by the Trustee, which struck an appropriate balance between fulsome advocacy for the interests of the Committee and conscious management of administrative expenses. While balancing these objectives, Fox performed the following services on behalf of the Committee during the First Interim Period:

**A.    Asset Analysis & Recovery (AA)**

The principal effort in the asset analysis and recovery category concerns the enforcement of the estate's rights under the asset purchase agreement [Docket No. 416, Ex. 1] (the "APA") by and between the Trustee, as representative of the estate, and Morning Law Group P.C. ("MLG").[6] Most notably, the purchase price of the assets under the APA provided for a deposit and a significant "earn-out" represented by the Trustee and MLG to represent up to $84 million in value to the estate. However, the "earn-out" was subject to calculation based on the operations of MLG post-closing. As a result, Fox and the Committee's financial advisor prepared initial document requests to MLG under the oversight and audit rights set forth in the APA, negotiated a stipulated protective order with MLG concerning MLG's allegation that the disclosures would compromise confidential client information, analyzed MLG's disclosures, presented further demands to MLG when the disclosures were inadequate, and ultimately agreed to participate in mediation with MLG. As a result of these efforts, MLG agreed to make an initial payment of the earn-out to the estate subject to the parties' rights, which proved necessary for the estate to have sufficient resources for the Plan to become effective.

Additional asset analysis performed by the Committee includes investigation of the Debtor's malpractice policy, related exclusions, and whether claims were made timely under the policy and

---

[6] As set forth above, some of these disputes and APA enforcement efforts are also included under the SA task code.

related policies that may provide a source of recovery to the estate.  The Committee also analyzed the impact of a postpetition failure to renew certain insurance policies and the availability of avenues of recovery to reach policy proceeds.

**B.    Litigation/Adversary Proceedings (AP)**

Fox attorneys dedicated significant resources to supporting and focusing the Trustee's preconfirmation litigation efforts, with particular emphasis on secured claims.  Mindful of the size of secured claims and the potential impact on confirmation or unsecured creditor recovery, the Committee's counsel collaborated with the Trustee's professionals and offered strategic guidance on potential claims, counterclaims, and defenses associated with the secured creditor litigations.  Fox carefully coordinated with the Trustee's professionals before undertaking extensive analysis and research of secured and administrative claims, and potential defenses, and regularly shared its analysis and research with the Trustee's counsel and vice versa.  This was necessary to ensure that the joint Plan was placed on a path where secured claims would or could be resolved in advance of confirmation.

The Committee's research and analysis of potentially significant claims also included review and input on proposed settlement agreements to avoid the need for post-facto litigation concerning settlements that were unacceptable to the Committee.  As a result of this prophylactic work, the Committee did not object to settlements proposed by the Trustee necessary to resolve secured creditor claims, which served to limit unnecessary administrative expenses.

Fox attorneys also billed under the Task Code for discovery efforts concerning postpetition loans from CLG, the initial proposed purchaser of the Debtor's assets and a fraudulent transfer target.  These efforts were necessary to permit unsecured creditors to evaluate the relationship between CLG and the Debtor, the terms of the postpetition loans from a CLG affiliate, and served to further negotiations between the parties in the development of the stalking horse APA that ultimately formed the basis of the approved APA with MLG.

**C.    Case Administration (CA)**

The most significant commitment of time in the Case Administration category was aimed at limiting administrative expense.  Early after its engagement, Fox requested that the Trustee's professionals participate in weekly calls to discuss outstanding items, analyze case strategy (under the

10

terms of a negotiated common interest agreement), proactively address and resolve potential disputes and disagreements, and ensure that the work of the estate fiduciaries was non-duplicative and aligned. These weekly professional meetings served to significantly limit duplicative expenses and ultimately created the dialogue that led to the development of a joint Plan.

Additional expenses under this category concern the Committee's preparation of a joint motion to establish a claims bar date necessary to ensure a timely plan confirmation timetable, coordination with Omni Agent Solutions, and address other case matters often collaboratively with the Trustee.

### D.    Court Hearings (CH)

Fox intentionally avoided unnecessary appearances at hearings to the extent practicable and did not bill time when simply monitoring hearings. As a result, Fox billed just 6.2 hours of time to the category: mostly limited to the hearings on matters for which the Committee filed papers such as its limited oppositions to surcharge and postpetition financing. Fox judiciously monitored adversary proceedings commenced by the Trustee but did not intervene in such adversary proceedings or appear in person at hearings. Additional time concerning the sale and confirmation hearings were billed to those Task Codes.

### E.    Creditor Inquiries (CI)

Given the significant number of creditors in this case, Fox quickly developed a process to respond to most creditor inquiries. Shortly after its selection as counsel, Fox's offices were inundated by a significant volume of creditor inquiries. Fox's attorneys established screening guidelines for these calls that were disseminated to reception and office services staff, among legal assistants and paralegals, and to attorneys assigned to the case. These procedures allowed lower or non-billing staff of Fox to direct the majority of creditor inquiries concerning case status and other information requests without requiring attorneys to bill time. More complicated or nonstandard inquiries were ultimately fielded by Fox attorneys, which limited attorney time billed under this category to just 8.2 hours.

Additionally, Fox advocated early after its involvement for the selection and appointment of a claims agent that could provide a free case website with critical information for creditors. In addition to the important claims administration and voting agent work performed by Omni Agent Solutions, the case website became an important resource for creditors that further limited administrative expense and

offered an reliable source for case information free to the general public. The decision to retain Omni enabled the estate to reduce expenses that would otherwise be incurred to respond to the mounting number of creditor inquiries regarding administrative and procedural matters, and to automate as much as possible while enabling Fox professionals to respond to inquiries that were more of a legal nature.

**F.      Creditor Committee Meetings and Communications (CM)**

The Committee has been actively engaged in this Bankruptcy Case from its formation. Fox attorneys worked to keep Committee members regularly informed through email updates, regular meetings, and presentations at meetings to allow Committee members to become familiarized with bankruptcy topics and their relationship to issues in this Bankruptcy Case. These Committee meetings provided a significant platform to address the complexities of the case, furthered the Committee's decision to and ongoing collaboration with the Trustee, and the ultimate development of the joint Plan with Committee support.

**G.      Cash Collateral/DIP Financing (CR)**

The initial issue presented by the Committee, shortly after its selection of Fox as counsel, was how to address the atypical proposed postpetition financings sought by the Trustee in advance of the sale of the Debtor's assets. Importantly, the initial filing opposed by the Committee was the motion for a purported "nonmaterial" modification of financing, which would have modified the terms of the loan (namely, the lender) without notice to creditors. In the course of this process, Fox attorneys also analyzed financial projections prepared by the Trustee's counsel, engaged a financial advisor to perform financial analyses of the need for financing, and conducted discovery with respect to financings and its impact on a potential sale. Chief among the Committee's concerns was that the postpetition financing would limit estate recovery or serve as a basis to limit the cash proceeds to the estate with respect to any sale. Although the Court ultimately approved the financings, the Committee's scrutiny was significant—the Trustee now challenges payment of a CLG-affiliated lender. Although Fox believed that it was necessary that the Committee retain its own financial advisor to address a variety of financial issues including monitoring the earn out and litigation recoveries with an eye towards plan confirmation, Fox was also mindful that it was unnecessary for the Committee and Trustee to retain

separate financial advisors. Accordingly, the Committee freely granted the Trustee and his professionals with access to Force Ten Partners, LLC to analyze a variety of financial issues throughout the case.

**H.    Disclosure Statement (DS)**

The Committee and Trustee agreed to delegate the drafting of the disclosure statement and the motion to establish confirmation procedures to Fox. Fox took the laboring oar to provide adequate disclosure in connection with Plan solicitation, established procedures that would bar parties from asserting ownership claims to certain cash held by the Trustee, provided for a fulsome noticing process, coordinated with Omni Agent Solutions and the Trustee concerning the procedure for solicitation, and drafted a Committee letter in support of the Plan ultimately approved for solicitation to all unsecured creditors entitled to vote. The Court approved the Disclosure Statement and the solicitation procedures. These efforts and particularly the "bar dates" for claims concerning the disposition of certain estate funds have unlocked some of the most significant value in the Bankruptcy Case realized to date.

**I.    Employment Application of Fox Rothschild LLP (EA1)**

Fox prepared, then filed on July 28, 2023, its Employment Application [Docket No. 344], which was approved by the Court pursuant to an order entered on August 24, 2023 [Docket No. 444]. Fox also billed to this Task Code for periodic disclosure checks as required by Bankruptcy Rule 2019.

**J.    Employment Application of Other Professionals (EA2)**

Fox prepared the employment application [Docket No. 526] for Force Ten Partners, LLC, as financial advisor to the Committee which the Court approved [Docket No. 578], and also developed and implemented a fulsome interview and pitch process for potential financial advisor candidates to ensure the Committee selected a financial advisor among a group of well-qualified candidates. Fox also billed to this category when reviewing the retention of other estate professionals proposed by the Trustee.

**K.    Lease/Executory Contract Issues (EC)**

The APA provided for a two-step mechanism to provide notices to the Debtor's clients required under state law and ultimately assume and assign their reformed legal services agreements under the Bankruptcy Code. These procedures also enabled the Debtor's clients to "opt out" of any sale and assignment of their files to the winning bidder. Fox was involved in both the negotiation of this

process—including inserting into the APA an assumption and assignment procedure—as well as ensuring timely compliance with the noticing requirement for assumption and assignment. This also included insisting that MLG permit the notices to be served, which MLG initially pushed-back on based on the asserted concern that additional legal notices would cause concern among its clients. However, given that the "earn out" under the APA was based on clients that transferred to MLG, the prompt and accurate compliance with the process was necessary to maximize the potential "earn-out" under the APA. The estate and MLG ultimately complied with the noticing requirements.

**L.**    **Fee Application of Fox Rothschild LLP (FA1)**

This Task Code was used for periodic review of Fox's invoices. Additionally, Fox regularly circulated the invoices to the Committee chair and addressed questions from the Committee chair on any matters on a regular basis rather than awaiting review of the entire invoice during this Application process.

**M.**    **Fee Application of Other Professionals (FA2)**

Fox attorneys regularly analyzed billing updates from other estate professionals. In part, the regular review was necessary for purposes of evaluating potential administrative claims associated with the Plan confirmation process.

**N.**    **General Investigation (GI)**

Fox attorneys did significant diligence, particularly early in their retention, to bring the Committee up to speed on the Debtor's operations and the potential avenues through which consumers and creditors could be protected during a sale process. During the first few months of Fox's retention as Committee counsel, Fox necessarily drank from the proverbial fire hose by quickly getting its arms around as many critical issues as possible in what was represented to be a "melting ice cube" case. This Task Code included communications with the United States Trustee concerning their perspective on certain case and sale issues, the Debtor's call center operations and financial need associated with financing requests, review of the Bankruptcy Case history, and propounding initial diligence and information requests on the Trustee necessary to provide initial strategy recommendations.

14

**O.      Stay Relief Matters (MR)**

The Committee limited its involvement in stay relief matters to review of motions for relief from the automatic stay to analyze the impact of pending requests on the estate and report the same to the Committee.  The Committee communicated with the Trustee concerning pending relief from stay motions to address the Trustee's position.  In an effort to limit administrative expenses, and after fulsome analysis, the Committee did not find it necessary to undertake the time and expense of responding to relief from stay matters given their dialogue with the Trustee.

**P.      Claims, Analysis, Objections & Resolutions (PC)**

As set forth above, the Committee was keenly aware of the need to evaluate and reduce potential secured claims to ensure a recovery.  The Committee concluded that a number of secured claims were defective on their face, and others were facially valid, but avoidable under a variety of legal theories. Fox attorneys billed under this Task Code for their collaborative or complimentary work with the Trustee's professionals related to the evaluation of secured creditor claims and disclosures or documents related to the same, quantification of potential claims that (in one case) dramatically reduced the potential ceiling of a secured creditor's claim.  Indeed, the Trustee's professionals provided discovery and disclosures obtained from secured creditors to offer the Committee an opportunity to review the potential weaknesses of the claims and to collaborate concerning strategies to limit the potential secured claims. In a number of instances, Fox conducted independent  research to analyze the validity, amount, perfection and priority of purported secured claims and/or rights under various receivable purchase agreements, and possible grounds for avoidance or objection.

Fox attorneys also billed under this Task Code for work related to administrative claims bar date and unsecured claim bar date work, including the work delegated to Fox attorneys to draft and file the joint motion to establish a claims bar date.

**Q.      Plan (PL)**

The Committee, through Fox, was actively involved in Plan negotiations that ultimately resulted in the confirmation of the joint Plan with the Trustee.  Fox attorneys were provided an initial draft of the Plan and worked to revise the Plan document to incorporate the result of these extensive negotiations, which included limiting potential sources of administrative expense such as liquidating

15

trustee compensation and providing for oversight of terms of retention (e.g., hourly versus contingency). Additionally, Fox attorneys drafted the liquidating trust agreement that would govern the postconfirmation liquidation of assets and claims for the benefit of unsecured creditors. This Plan included an oversight feature that will permit creditor representation and continued involvement in significant decisions of the postconfirmation trust that might materially affect creditor recoveries. Moreover, the oversight feature will streamline and further limit administrative expense associated with multiple individual creditors objecting to trustee actions by providing a single representative of such interests. Fox attorneys also spent time in this category to address the effort by a commercial creditor to reconstitute the Committee as a means of leveraging Plan negotiations, which were ultimately defeated without the need for Court intervention.

Fox attorneys also spent significant time in this category evaluating liquidation and feasibility analyses developed by the Committee's financial advisor, Force Ten, to ensure the Plan was confirmable, feasible, and included assumptions consistent with the legal strategy developed by the Committee and Trustee.

**R.    Use, Sale or Lease of Property (SA)**

The Committee provided material input in negotiating and ultimately establishing the legal framework for approving the sale of the Debtor's assets. Fox attorneys immediately scrutinized the potential proposed stalking horse purchaser and negotiated significant provisions in the asset purchase agreement that ultimately served as a stalking horse agreement. Those provisions were ultimately incorporated into the APA, including Committee audit rights, the appointment of an ethics compliance monitor, a procedure for assuming and assigning client agreements that was consistent with the Bankruptcy Code, and a procedure that would permit MLG to operate the Debtor's business before the assumption and assignment of agreements under an interim management agreement that limited estate liability.

Fox attorneys also submitted thorough briefing establishing a legal basis to support the sale process, with certain carefully crafted provisions which obligated the Trustee to reform legal services agreements to comply with applicable law and rules of professional responsibility prior to assuming and assign those agreements to MLG. As the Court observed, "[t]he Committee, with well-articulated

briefing, has played an important role in the development of a crafted solution brought to market by Trustee and his professionals." Docket No. 320 at 3. "Had this Motion been heard on four days' notice, without the benefit of sophisticated briefing or participation of a Creditors Committee, significantly more pressure would exist." *Id.* at 6 (citing to the Committee's legal argument as a basis to approve the opt-out provisions). Ultimately, with respect to the detailed legal briefing prepared by the Committee, "[t]he Court agree[d], and herein adopt[ed] the Committee's position." *Id.* at 21.

As set forth more fully above under the Asset Analysis and Recovery Task Code, much of Fox's post-sale hearing efforts have been directed and pushing MLG to provide fulsome responses to audit requests, evaluating the positions of MLG with respect to the "earn-out" owed to the estate, and ensuring that potential claims against MLG and its affiliates related to both the obligations under the APA and the procurement of the bid at the sale hearing are preserved for subsequent evaluation. In each case, these efforts have produced significant value realization to the estate, including the funds necessary for the Plan to become effective.

**S.    Trustee Reporting/Schedules (TR)**

Fox attorneys have limited their time associated with this Task Code to reviewing the monthly operating reports (and earlier substitutes) during the pendency of the case to monitor estate assets.

**T.    Travel (TV)**

Fox's retention agreement permits Fox to bill for attorney travel time. Fox incurred 6.3 hours of compensable time during the period associated with attending Court hearings and appearing at the Debtor's offices to review the Debtor's operations and associated needs with the pending financing and sale requests. However, **Fox has voluntarily elected to bill as "no charge" the $4,788 in fees associated with attorney travel time.** Additionally, as set forth below, Fox has voluntarily elected to not seek reimbursement of expenses associated with attorney travel.

161333913.3

# VI.

## COSTS AND SUMMARY OF EXPENSES

### LBR 2016-1(A)(1)(F)

The Fee Guidelines require that an application seeking reimbursement of expenses include a summary identifying all expenses by category. The total costs and expenses incurred during the First Interim Fee Period for which Fox seeks reimbursement is $19,823.67.

To assist the Court in reviewing Fox's request for reimbursement of the expenses incurred in connection with its representation of the Committee during the First Interim Period Fox's accounting procedures for the general categories of costs and expenses for which it seeks reimbursement by this Application are described in the Declaration attached hereto. The requested expenses are charged at rates customarily applied to Fox's debtor clients. Those charges are:

| Description | Amount |
|---|---|
| REPROGRAPHICS - BLACK/WHITE | $294.80 |
| WESTLAW, RESEARCH | $393.62 |
| MESSENGER SERVICE/DELIVERY | $13,165.35 |
| DEPOSITION/TRANSCRIPT | $4,007.00 |
| DOCUMENT RETRIEVAL | $49.02 |
| MILES - OUT-OF-TOWN TRAVEL EXPENSE | $0.00 |
| SECRETARIAL OVERTIME | $1,702.05 |
| REPROGRAPHICS - COLOR | $69.50 |
| POSTAGE CHARGES | $36.57 |
| MEALS - OUT-OF-TOWN TRAVEL EXPENSE | $0.00 |
| MESSENGER SERVICE/FEDERAL EXPRESS | $105.76 |
| HOTEL - OUT-OF-TOWN TRAVEL EXPENSE | $0.00 |

The Invoice attached as **Exhibit C** includes an itemized statement of expenses incurred during the First Interim Period.  **As set forth above, Fox voluntarily billed as "no charge" any expenses associated with attorney travel.**

18

# VII.

## __LEGAL ARGUMENT__

In determining the amount of allowable fees under § 330, courts are to be guided by the same "general principles" as are to be applied in determining awards under the federal fee-shifting statutes, with "some accommodation to the peculiarities of bankruptcy matters." *In re Manoa Finance Co., Inc.*, 853 F.2d 687, 691 (9th Cir. 1988); *see Meronk v. Arter & Hadden, LLP* (In re Meronk), 249 B.R. 208, 213 (B.A.P. 9th Cir. 2000) (reiterating that Manoa Finance is the controlling authority and characterizing the factor test identified in *Johnson v Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) and *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), *cert. denied*, 425 U.S. 951 (1976), as an "obsolete laundry list" now subsumed within more refined analyses).

The Supreme Court has evaluated the lodestar approach and endorses its usage.  In *Hensley v. Eckerhart*, 461 U.S. 424 (1983), a civil rights case, the Supreme Court held that while the Johnson factors might be considered in setting fees, the lodestar amount subsumed many of those factors. *Hensley*, at 434, n. 9. The following year, another civil rights case *Blum v. Stenson*, 465 U.S. 886 (1984), provided the so-called lodestar calculation: "The initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate . . . Adjustments to that fee then may be made as necessary in the particular case." *Blum*, 465 U.S. at 888.

Then, in 1986, the Supreme Court more explicitly indicated that the factors relevant to determining fees should be applied using the lodestar approach, rather than an ad hoc approach. While holding that the attorney's fee provision of the Clean Air Act, 42 U.S.C. § 7401, et seq., should be interpreted like that of the Civil Rights Act, the Supreme Court expressly rejected the ad hoc application of the factors set forth in Johnson and thus Kerr stating that "the lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee . . . ." *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 563-66 (1986); see also *Blanchard v. Bergeron*, 489 U.S. 87, 94 (1989) ("we have said repeatedly that the initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate").

While the lodestar approach is the primary basis for determining fee awards under the federal fee-shifting statutes and Bankruptcy Code, some of the Johnson/Kerr factors previously applied in an ad hoc fashion, can still apply in calculating the appropriate hourly rate to use under the lodestar approach. *In re Charles Russell Buckridge*, Jr., 367 B.R. 191 201 (C.D.Cal. 2007) ("a court is permitted to adjust the lodestar up or down using a multiplier based on the criteria listed in § 330 and its consideration of the Kerr factors not subsumed within the initial calculations of the lodestar"); *see also Dang v. Cross*, 422 F.3d 800, 812 (9th Cir. 2005) (court may "adjust the lodestar amount after considering other factors that bear on the reasonableness of the fee"); *Unsecured Creditors' Comm. v. Puget Sound Plywood, Inc.*, 924 F.2d 955, 960 (9th Cir. 1991) ("Although *Manoa* suggests that starting with the 'lodestar' is customary, it does not mandate such an approach in all cases... Fee shifting cases are persuasive, but due to the uniqueness of bankruptcy proceedings, they are not controlling.").

Fox respectfully submits that the hourly rates for its attorneys and paraprofessionals are reasonable and appropriate in the relevant community and in view of the circumstances of this case and the successful results thus far achieved by Fox on behalf of the Committee. By this Application, Fox requests that the Court approve the allowance of compensation and the reimbursement of expenses during the First Interim Fee Period. The full scope of the services provided and the related expenses incurred are fully described herein and/or in the attached Invoice. All services for which Fox requests compensation were performed for or on behalf of the Committee.

The professional services and related expenses for which Fox requests allowance of compensation and reimbursement of expenses were rendered and incurred in connection with this case in the discharge of Fox's professional responsibilities as attorneys for the Committee in this chapter 11 case. Fox's services were necessary and beneficial to the Committee and the estate creditors and other parties in interest.

In accordance with the factors enumerated in § 330, Fox respectfully submits that the amount requested by Fox is fair and reasonable given (a) the complexity of the case, (b) the time expended, (c) the nature and extent of the services rendered, (d) the value of such services and (e) the costs of comparable services other than in a case under the Bankruptcy Code.

161333913.3

Therefore, for the reasons set forth above, Fox respectfully submits that the foregoing establishes that Fox's requested fees and expenses are reasonable and appropriate and should be approved by this Court.

## VIII.

## **RESERVATION OF RIGHTS**

The Plan provides that holders of Professional Fee Claims must file final applications for payment of fees and reimbursement of expenses no later than 45 days after the effective date of the plan. *See* Docket No. 1344 at 7. Although the notice to professionals [Docket No. 1427] provides that further fee applications may not be filed within 120 days, Fox reserves all rights to file its final application for fees and expenses consistent with the requirement set forth in the plan.

## IX.

## **CONCLUSION**

Fox respectfully requests that the Court enter an order (i) approving the Application in its entirety; (ii) approving the allowance, and authorizing Debtor's payment to Fox, of the full amount of the Requested Compensation in the total amount of $1,070,717.67, which includes (a) fees in the amount of $1,050,894.00 and (b) reimbursement of expenses in the amount of $19,823.67; (iii) authorizing immediate payment of such Requested Compensation; and (iv) granting Fox such other and further relief as the Court may deem just and proper.

Dated: September 3, 2024                     **FOX ROTHSCHILD LLP**


By:    */s/ Nicholas A. Koffroth*
         Keith C. Owens (SBN 184841)
         Nicholas A. Koffroth (SBN 287854)
         10250 Constellation Blvd., Suite 900
         Los Angeles CA 90067
         *Counsel for the Official Committee of Unsecured*
         *Creditors of The Litigation Practice Group PC*

161333913.3

**DECLARATION OF APRIL RIEDY**

I, April Riedy, declare as follows:

1.      I am the chair of the Official Committee of Unsecured Creditors (the "Committee") in the above-captioned bankruptcy case (the "Bankruptcy Case") of The Litigation Practice Group P.C. (the "Debtor") . I make this Declaration in support of *Fox Rothschild LLP's First Interim Application for Compensation and Reimbursement of Expenses for the Interim Fee Period June 29,2023 through July 31, 2024* (the "Application"). [7] I am over the age of 18, have personal knowledge of the facts in this matter, and if called upon to testify, could and would do so.

2.      During the First Interim Fee Period, Fox incurred Requested Compensation in the total amount of $1,070,717.67, which includes (a) fees in the amount of $1,050,894.00 and (b) reimbursement of expenses in the amount of $19,823.67.  The Application seeks an order approving, allowing and authorizing Debtor's payment of the Requested Compensation.

3.      Fox provided me with its monthly invoices for the period from June 29, 2023, through July 31, 2024.  I have reviewed and approved Fox's invoices for each of those months.  I believe that the Requested Compensation sought by Fox is fair and reasonable given (a) the complexity of this Bankruptcy Case, (b) the time expended, (c) the nature and extent of the services rendered, (d) the value of such services, and (e) the costs of comparable services in a case other than under this title.

4.      I have reviewed the Application and, on behalf of the Committee, I support the approval of the Application in its entirety and payment of the Requested Compensation, and have no objection to the Application.

/ / /

/ / /

/ / /

/ / /

/ / /

---

[7] Capitalized terms not defined herein have the meanings assigned to them in the Application.

161333913.3

1    I declare under penalty of perjury that the foregoing is true and correct.

2

3    Executed this 3rd day of September 2024.

4

5

6    _____
     April Riedy, Committee Chair

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                          23

## DECLARATION OF NICHOLAS A. KOFFROTH

I, Nicholas A. Koffroth, declare as follows:

1.       I am a partner at the offices of Fox Rothschild LLP, counsel to the Official Committee of Unsecured Creditors (the "Committee") in the above-captioned bankruptcy case (the "Bankruptcy Case") of The Litigation Practice Group P.C. (the "Debtor").   I make this Declaration in support of *Fox Rothschild LLP's First  Interim Application for Compensation and Reimbursement of Expenses for the Interim Fee Period June 29,2023 through July 31, 2024* (the "Application"). [8]  I am over the age of 18, except as otherwise indicated herein I have personal knowledge of the facts set forth herein or have obtained familiarity with such facts from persons knowledgeable of them at Fox, and if called upon to testify, could and would do so.

A.       **Summary of Application and Certification**

2.       By the Application, Fox seeks an Order from this Court allowing interim approval of the Requested Compensation for services rendered and expenses incurred during the First Interim Fee Period comprised of (i) fees in the amount of $1,050,894.00 and (ii) reimbursement of expenses in the amount of $19,823.67.   No party sought, and the Court did not approve, interim compensation procedures in this Bankruptcy Case.  Accordingly, all fees and expenses incurred during the First Interim Fee Period remain unpaid and outstanding as of the date of this Application.

3.       I have reviewed the requirements of LBR 2016-1 and believe that the Application complies with that rule.  I further certify as follows with respect to the Application:

- •       I have read the Application and believe the facts stated therein and herein are true and correct to the best of my knowledge and belief;

- •       the compensation and expense reimbursement requested are billed at rates, in accordance with practices, no less favorable that those customarily employed by Fox and generally accepted by Fox' clients;

- •       at all relevant times, Fox has been a disinterested person as that term is defined in § 101(14) and has not represented or held an interest adverse to the interest of the Committee;

- •       neither Fox nor any employee of Fox has any agreement or understanding of any kind or nature to divide, pay over or share any portion of the fees or expenses to be awarded to Fox with any other person or attorney except as among the

---

[8] Capitalized terms not defined herein have the meanings assigned to them in the Application.

members and associates of Fox;

- no time has been billed to the Committee outside the scope of work authorized by the Order authorizing employment of the Firm; and

- the compensation and expense reimbursement sought herein is in conformity with the LBR, the Compensation Guidelines for the United States Bankruptcy Court for the Central District of California and the Guidelines of the Office of the United States Trustee, except as otherwise noted herein.

**B.    Summary of Hours and Fees by Professional**

4.    Based on my review of the Fox invoices in this matter, the names of all of the Attorneys and Paraprofessionals who have been responsible for providing services to the Committee, their applicable rate including annual rate changes,[9] total number of hours spent on the case and total fees charged as a result of service they each provided to the Committee during the First Interim Fee Period is set forth below:

### SUMMARY OF PROFESSIONALS
June 29,2023 through July 31, 2024

| ATTORNEY | HOURLY RATE | APPLICATION HOURS | TOTAL FEES |
|---|---|---|---|
| Michael A. Sweet – Partner | $980.00 | 0.5 | $490.00 |
| Michael A. Sweet – Partner | $890.00 | 32.1 | $28,569.00 |
| Keith C. Owens – Partner | $895.00 | 170.8 | $152,866.00 |
| Keith C. Owens – Partner | $820.00 | 351.4 | $288,148.00[10] |
| Howard A. Cohen – Partner | $755.00 | 3.1 | $2,340.50 |
| M.A. Milano – Partner | $715.00 | 14.3 | $10,224.50 |
| Michael R. Herz – Partner | $620.00 | 45.5 | $28,210.00 |
| Elanor Vaida Gerhards – Partner | $645.00 | 2.0 | $1,290.00 |
| Nicholas A. Koffroth – Partner | $725.00 | 337.7 | $244,832.50 |
| Nicholas A. Koffroth – Associate | $640.00 | 363.0 | $232,320.00[11] |
| Jack Praetzellis – Partner | $620.00 | 13.4 | $8,308.00 |
| Robert F. Elgidely – Partner | $670.00 | 24.4 | $16,348.00 |
| C. Pippett - Counsel | $780.00 | 7.6 | $5,928.00 |
| M.H. Tirtasaputra – Associate | $490.00 | 11.0 | $5,390.00 |
| Stephanie S. Ward – Associate | $455.00 | 6.1 | $2,775.50 |

[9] Rates include regular modifications to hourly rates on an annual basis as set forth more fully in the *Notice of Change to Fox Rothschild LLP's Hourly Rates Effective January 1, 2024* [Docket No. 805].

[10] This is inclusive of 4.2 hours billed at "No Charge" related to travel time.

[11] This is inclusive of 2.1 hours billed at "No Charge" related to travel time.

161333913.3

| | HOURLY RATE | APPLICATION HOURS | TOTAL FEES |
|---|---|---|---|
| Mary Gilmore - Associate | $480.00 | 7.7 | $3,696.00 |
| Matt Higgins – Associate | $455.00 | 14.3 | $7,078.50 |
| Zach Williams – Associate | $385.00 | 1.3 | $500.50 |
| **Subtotal** | | **1,406.2** | **$1,039,315.00** |
| **Blended Rate (Attorneys only)** | | | **$739.09** |
| **PARAPROFESSIONAL** | **HOURLY RATE** | **APPLICATION HOURS** | **TOTAL FEES** |
| K. Misialek – Law Clerk | $370.00 | 1.6 | $592.00 |
| Robin I. Solomon – Paralegal | $460.00 | 1.1 | $506.00 |
| J. A. Dodds – Paralegal | $440.00 | 12.2 | $5,368.00 |
| Patricia M. Chlum – Paralegal | $375.00 | 4.5 | $1,687.50 |
| Patricia M. Chlum – Paralegal | $400.00 | 6.5 | $2,600.00 |
| S. Pennebaker – Research Analyst | $255.00 | 0.8 | $204.00 |
| S. Pennebaker – Research Analyst | $225.00 | 0.4 | $90.00 |
| M. Alsip – Research Analyst | $230.00 | 0.7 | $161.00 |
| T. M. Cherepski – Research Analyst | $285.00 | 1.3 | $370.50 |
| **Subtotal** | | **29.1** | **$11,579.00** |
| | | **APPLICATION HOURS** | **TOTAL FEES** |
| **GRAND TOTAL** | | **1,435.3** | **$1,050,894.00** |
| **Combined Blended Rate (Attorneys and Paraprofessionals)** | | | **$732.18** |

## C.    Professional Background and Experience

5.    Fox represented the Committee as effectively and efficiently as possible during the First Interim Period through considered allocation of tasks among the professionals.  In general, tasks were allocated among the professionals and paraprofessionals based upon their comparative expertise, taking into consideration the knowledge and experience of Fox's professionals and paraprofessionals and their familiarity with the case to avoid duplicative work. A true and correct copy of the background and qualifications of each of the attorneys who rendered services to the Committee during the First Interim Fee Period are attached collectively to the Application as **Exhibit B**.

## D.    Previously Paid Compensation

6.    During the First Interim Fee Period, Fox has received no payment and no promises for payment from any source for services rendered or yet to be rendered in any capacity whatsoever in connection with the matters covered by this Application.  Further, there is no agreement or

understanding between Fox and any other person other than the equity holders of Fox for the sharing

of compensation to be received for services rendered in this Bankruptcy Case.

**E.    Project Billing and Detailed Listing of Services**

7.    In accordance with the Central District Guidelines and UST Guidelines, Fox classified

all services performed for each into Categories of Service ("Task Codes").  Fox attempted to place the

services performed in the appropriate Task Code that best related to the service provided. The

following chart summarizes the project billing categories utilized and the total hours expended for

each category during the First Interim Fee Period:[12]

| Task | Description | Hours | Amount |
|------|-------------|------:|-------:|
| AA | ASSET ANALYSIS & RECOVERY | 21.2 | $15,314.00 |
| AP | LITIGATION/ADVERSARY PROCEEDINGS | 98.8 | $67,480.00 |
| CA | CASE ADMINISTRATION | 95.7 | $75,806.50 |
| CH | COURT HEARINGS | 6.2 | $5,126.50 |
| CI | CREDITOR INQUIRIES | 8.2 | $6,987.50 |
| CM | CREDITOR COMMITTEE MEETINGS AND COMMUNICATIONS | 73.0 | $55,398.00 |
| CR | CASH COLLATERAL/DIP FINANCING | 27.9 | $20,422.50 |
| DS | DISCLOSURE STATEMENT | 51.4 | $37,906.50 |
| EA1 | EMPLOYMENT APPLICATION OF FOX ROTHSCHILD LLP | 8.3 | $5,268.50 |
| EA2 | EMPLOYMENT APPLICATION OF OTHER PROFESSIONALS | 15.2 | $11,769.00 |
| EC | LEASE/EXECUTORY CONTRACT ISSUES | 8.9 | $6,484.00 |
| FA1 | FEE APPLICATION OF FOX ROTHSCHILD LLP | 7.9 | $3,475.00 |
| FA2 | FEE APPLICATION OF OTHER PROFESSIONALS | 3.1 | $2,744.50 |
| GI | GENERAL INVESTIGATION | 61.4 | $46,648.00 |
| MR | STAY RELIEF MATTERS | 1.3 | $1,066.00 |
| PC | CLAIMS, ANALYSIS, OBJECTIONS & RESOLUTIONS | 154.1 | $115,918.50 |
| PL | PLAN | 469.2 | $341,912.00 |
| SA | USE, SALE OR LEASE OF PROPERTY | 322.4 | $230,265.00 |
| TR | TRUSTEE REPORTING/SCHEDULES | 1.1 | $902.00 |
| TV | TRAVEL | 6.3 | $0.00 |
| | TOTAL | 1,441.6 | $1,050,894.00 |

A true and correct copy of the Fox, which contains summaries and daily logs of the actual and necessary

---

[12] Some of the services rendered could reasonably be categorized in more than one of the billing
categories.  Consequently, different attorneys sometimes billed their services on the same matter in
different categories.

fees incurred and expenses paid by Fox during the First Interim Fee Period, is attached to the Application asas **<u>Exhibit C</u>**.  While certain services may relate to one or more Task Codes, services arguably pertaining to one Task Code may, in fact, be included in another Task Code.

8.  All services for which Fox requests compensation were performed for or on behalf of the Committee.  Fox performed services for or on behalf of Committee during the First Interim Fee Period, and I believe such services were necessary and reasonable.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 3rd day of September 2024.


*/s/ Nicholas A. Koffroth*

_____

Nicholas A. Koffroth

161333913.3