Ira D. Kharasch (CA Bar No. 109084)
Victoria A. Newmark (CA Bar No. 183581)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: 310/277-6910
Facsimile:  310/201-0760
E-mail:  ikharasch@pszjlaw.com
          vnewmark@pszjlaw.com

Attorneys for Consumer Legal Group, PC

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>THE LITIGATION PRACTICE GROUP P.C.,<br><br>Debtor. | Case No.: 8:23-bk-10571-SC<br><br>Chapter 11<br><br>**OPPOSITION TO CHAPTER 11 TRUSTEE, RICHARD A. MARSHACK'S MOTION FOR ORDER APPROVING COMPROMISE OF CONTROVERSY PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019 AS TO DEFENDANT OPTIMUMBANK AND OPTIMUMBANK HOLDINGS, INC.**<br><br>**Hearing:**<br>Date:    September 12, 2024<br>Time:    10:00 AM<br>Judge:   Hon. Scott C. Clarkson<br>Place:   Courtroom 5C - ViaZoom<br>         411 Fourth Street<br>         Santa Ana, CA 92701 |

4886-3001-2382.4

# TABLE OF CONTENTS

**Page**

I. PRELIMINARY STATEMENT ..................................................................................................1

II. BACKGROUND ........................................................................................................................2

    A. CLG Was Vetted in Connection with the Asset Sale Process Run by the Trustee ..................................................................................................................................3

    B. CLG's Only Relationship to the Debtor or Tony Diab Was in Connection with Its Acquisition of LPG Client Files Pursuant to Prepetition Arm's Length Transactions ..................................................................................................................3

    C. The Trustee's Instant Motion Is Predicated on the Incorrect Assumption That CLG's Bank Account at Optimum Is "Estate Property", Which Is a Disputed Issue ............................................................................................................................4

III. THE MOTION SHOULD BE DENIED ...................................................................................5

    A. The Motion Does Not Satisfy the Standards of Bankruptcy Rule 9019 Because A Settlement With Optimum Does Not Resolve Disputes With CLG That Will Be Necessary to Adjudicate the Estate's Alleged Interests in the Funds .......................5

    B. The Settlement is Not Fair and Equitable Because It Circumvents CLG's Property Interest in the Funds Without Due Process .....................................................5

    C. The Proposed "Free and Clear" Finding Pursuant to Bankruptcy Code Section 552 Is Improper ............................................................................................................8

    D. Turnover Must Be Adjudicated Pursuant to an Adversary Proceeding, Not a 9019 Motion ..................................................................................................................8

IV. CONCLUSION .........................................................................................................................9

# TABLE OF AUTHORITIES

## CASES

*Golden v. Cal. Emergency Physicians Med. Grp.*,
    782 F.3d 1083 (9th Cir. 2015) .................................................................................................. 7

*In re Century City Doctors Hosp., LLC*,
    446 B.R. 1 (Bankr. C.D. Cal. 2012) ......................................................................................... 8

*In re Clark*,
    2009 WL 2849785 (Bankr. D. D.C. 2009) ............................................................................... 8

*In re Hodge*,
    2009 WL 3645172 (Bankr. W.D. Tex. 2009) ........................................................................... 8

*In re Mavrode*,
    205 B.R. 716 (Bankr. D. N.J. 1997) ........................................................................................ 6

*In re MF Global Inc.*,
    531 B.R. 424 (Bankr. S.D. N.Y. 2015) .................................................................................... 8

*In re Nortel Networks, Inc.*,
    522 B.R. 491 (Bankr. D. Del. 2014) ........................................................................................ 6

*In re Nutraquest*,
    434 F.3d 639 (3d. Cir. 2006) .................................................................................................... 6

*In re Spence*,
    2009 WL 3756621 (Bankr. W.D. Tex. 2009) ........................................................................... 8

*Liberty Bank, F.S.B. v. D.J. Christie, Inc.*,
    681 Fed.Appx. 664 (10th Cir. 2017) ........................................................................................ 6

*Local No. 93, International Ass'n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland*,
    478 U.S. 501 (1986) ................................................................................................................. 6

*Lopez v. Charles Schwab & Co., Inc.*,
    118 Cal. App. 4th 1224 (Cal. Ct. App. 2004) .......................................................................... 7

*Martin v. Kane (In re A & C Properties)*,
    784 F.2d 1377 (9th Cir. 1986) ............................................................................................. 5, 6

*Overton's, Inc. v. Interstate Fire & Cas. Ins. Co. (In re Sportstuff, Inc.)*,
    430 B.R. 170 (B.A.P. 8th Cir. 2010) .................................................................................... 6, 9

*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*,
    390 U.S. 414 (1968) ................................................................................................................. 6

*United States v. Alaska National Bank (In re Walsh Constr., Inc.)*,
    669 F.2d 1325 (9th Cir. 1982) ................................................................................................. 6

*Urmann v. Walsh*,
    523 B.R. 472 (W.D. Pa. 2014) ................................................................................................. 6

## STATUTES

11 U.S.C. § 541 ............................................................................................................................. 5

11 U.S.C. § 542(a) ........................................................................................................................ 8

11 U.S.C. § 542(b) ........................................................................................................................ 8

11 U.S.C. § 543(a) ........................................................................................................................ 8

11 U.S.C. § 552 ............................................................................................................................. 2

11 U.S.C. § 552(a) ........................................................................................................................ 8

11 U.S.C. § 552(b) ........................................................................................................................ 8

Cal. Civ. Code § 1550 ................................................................................................................... 7

## RULES

Fed. R. Bankr. P. 7001(1) ............................................................................................................. 8

Fed. R. Bankr. P. 9019 ......................................................................................................... 2, 5, 6

Consumer Legal Group, PC ("CLG") hereby files this opposition (the "Opposition") to the Chapter 11 Trustee, Richard A. Marshack (the "Trustee")'s *Motion for Order Approving Compromise of Controversy Pursuant to Federal Rule of Bankruptcy Procedure 9019 as to Defendant OptimumBank and OptimumBank Holdings, Inc.* [Docket No. 1530] (the "Motion"). In support of this Opposition, CLG respectfully states as follows:

## I.

## PRELIMINARY STATEMENT

The relief requested in the Motion exceeds the limits of what the Trustee and Optimum Bank/OptimumBank Holdings, Inc. ("Optimum") can possibly achieve in a settlement of interests in the subject funds. First and foremost, the Motion is *not* asking for a simple turnover of the funds in the Optimum account to be held by the Trustee in a trust account subject to the preservation of all parties' rights to those funds. Rather, it is asking that property titled in CLG's name and claimed by CLG to be its property pursuant to valid pre-petition purchase agreements be turned over and paid to the Trustee because it somehow has been transmuted to estate property, subject to disputed recoupment rights of Optimum. There is no proposed consideration offered provided for CLG in exchange for this deprivation of property and the consequential prejudice and detrimental impact to CLG.

The basis of the Trustee's argument appears to be that because the Trustee filed an adversary action last year alleging, among other things, alter ego and fraudulent transfer with regard to the inadequacy of the purchase price, that somehow title to the assets has shifted from CLG to the estate pre-petition, but without any judicial determination of the allegations of the complaint, and thus proceeds of CLG's purchase collected by CLG post-petition, are also estate property.

Moreover, this is a motion not made under an adversary proceeding. It was filed without the Trustee consulting CLG, and does not name CLG as a party, though it effectively seeks declaratory relief against CLG as to the title of the property in dispute that was set forth in the Trustee's adversary action filed last year. Notably, the Trustee sought and obtained approval of CLG's affiliate as his postpetition lender, and approved CLG as the stalking horse bidder of the estate's assets in a process

4886-3001-2382.4

expressly limited to potential buyers that proved themselves to be both "compliant with applicable rules and regulations" as well as agreeable "to additional provisions to protect consumers."[1]

Due to its deficiencies, the Motion fails the most fundamental standards of Bankruptcy Rule 9019. The proposed settlement with Optimum does not resolve disputes with CLG – which of course it cannot since CLG is not a party to it. CLG maintains that the subject funds are their property, not the Trustee's. It is not an alter ego or instrumentality connected to Tony Diab; it acquired the LPG clients for reasonably equivalent value in an arm's length transaction, and the funds belong to CLG not the bankruptcy estate or Optimum. The proposed settlement does nothing to resolve these disputes. Moreover, the settlement cannot satisfy the fair and equitable requirement because it circumvents CLG's asserted property interest in the funds without due process. Interests of non-settling parties, here CLG, must be considered in any Rule 9019 analysis. When CLG's interests are considered, the Motion fails.

Finally, the proposed "free and clear" finding pursuant to Bankruptcy Code section 552 is improper. By its plain language, section 552 applies to property acquired postpetition *by the estate or the debtor*. Here, the funds in the Optimum account were not acquired post-petition by the estate, but rather were acquired by CLG after the petition date from CLG's own assets. Moreover, as the Trustee acknowledges, the bank account in which the funds were collected by CLG (and where they currently remain) is titled in CLG's name.

CLG would not be opposed to the subject funds being turned over to the Trustee to be held in a trust account; provided, however, that all of CLG's rights are preserved including, without limitation, that CLG owns the property, is not an alter ego of the Debtor or Tony Diab, and that the prepetition purchase agreements are not avoidable fraudulent transfers.

## II.

## BACKGROUND

---

[1] In the sale pleadings, the Trustee also describes CLG's operations as "legally providing case specific legal services tailored to the consumer's needs"; "A model very different that the boiler plate legal services offered by LPG"; and "a reputable law firm providing valuable legal services in compliance with applicable law." All glowing characterizations that distinctly contrast with the portrait the Trustee paints of Tony Diab's predatory associates, alter egos and "other transferees."

A. **CLG Was Vetted in Connection with the Asset Sale Process Run by the Trustee**

In connection with the sale of the Debtor's assets, the Trustee sought authorization to enter an asset purchase agreement with CLG as a "good faith purchaser." CLG hereby refers to and incorporates the Trustee's description of CLG's history and business in the sale pleadings.[2]

B. **CLG's Only Relationship to the Debtor or Tony Diab Was in Connection with Its Acquisition of LPG Client Files Pursuant to Prepetition Arm's Length Transactions**

Prior to the petition date, CLG acquired via purchase or forgiveness of indebtedness approximately 6,000 performing client files from the Debtor (the "LPG Acquired Clients"). These were arm's length transactions completed over the approximately 3-month period leading up to the bankruptcy filing.[3]

Although the Trustee's initial "Complaint for: (1) Injunctive Relief; (2) Avoidance, Recovery, and Preservation of Two-Year Actual Fraudulent Transfers; (3) Avoidance, Recovery, and Preservation of Two-Year Constructive Fraudulent Transfers; (4) Avoidance, Recovery, and Preservation of Four-Year Actual Fraudulent Transfers; (5) Avoidance, Recovery, and Preservation of Four-Year Constructive Fraudulent Transfers; and (6) Turnover," bearing Adv. No. 8:23-ap-01046-SC, alleged that CLG was an alter ego of the Debtor, CLG has since demonstrated to the Trustee that this is inaccurate, and that CLG is not an insider of, controlled by, or affiliated with the Debtor.

Despite the Trustee's allegations of alter ego, the Trustee has never sought to shut down CLG's business of servicing the Acquired LPG Clients. Moreover, shortly after he was appointed, the Trustee sought and obtained Court approval to borrow from CLG's affiliate Liberty Acquisitions Group, Inc., enabling the Trustee to fund employee payroll and other operational costs.[4] Additionally, the Trustee

---

[2] *Notice of Motion and Motion of Trustee Richard A. Marshack for Entry of an Order (a) Approving Sale, Subject to Overbid, of Assets Free and Clear of All Liens, Claims, Encumbrances and Interests Pursuant to 11 U.S.C. § 363(b) and (b) Approving Assumption and Assignment of Certain Executory Contracts and Unexpired Leases and Other Agreements* (the "Sale Motion"), at pp. 9-11; Declaration of Jason J. Rebhun dated July 7, 2023 [Dkt. No. 191].

[3] CLG has furnished evidence of wire transfers and other documentation to the Trustee on an informal basis.

[4] *Trustee's Notice of Motion and Emergency Motion (i) For Entry of a Second Interim Order; (a) Authorizing the Trustee to Obtain Additional Post-Petition Financing and Superpriority Administrative Expense Claim Pursuant to 11 U.S.C. § 364; and (b) Setting Final Hearing; and Pursuant to Final Hearing, (ii) For Entry of Final Order Approving Post-Petition Financing on a Final Basis; Memorandum of Points and Authorities; Declaration of Richard A. Marshack in Support* [Dkt. No. 249].

also filed a motion seeking authority to enter into an Asset Purchase Agreement with CLG for the purchase of the Debtor's remaining assets, subject to overbid at auction, pursuant to a process that limited potential buyers to those "compliant with applicable rules and regulations" as well as agreeable "to additional provisions to protect consumers."[5] In connection with this process, the Trustee requested a finding that CLG was a "good faith purchaser."[6] The Trustee described CLG's operations as "legally providing case specific legal services tailored to the consumer's needs"; "A model very different than the boiler plate legal services offered by LPG"; and "a reputable law firm providing valuable legal services in compliance with applicable law." *Id.*

In short, any concerns that CLG has any relationship to Tony Diab or the Debtor have been addressed. There is no evidence that any such relationship ever existed beyond the arm's length acquisition of client files by CLG and related dealings as described above.

## C. The Trustee's Instant Motion Is Predicated on the Incorrect Assumption That CLG's Bank Account at Optimum Is "Estate Property", Which Is a Disputed Issue

The centerpiece of the proposed Settlement Agreement with Optimum at issue here is the divvying up of funds in an account in CLG's name at Optimum between Optimum ($200,000) and the Trustee ($800,000)[7] on the asserted grounds that such funds are an excess reserve for LPG clients serviced by the Debtor prepetition. The Trustee has alleged in the Motion, his pending Complaint[8] and related proceedings for injunctive relief that turnover of such proceeds even if directed to CLG is mandated based on various alternative alter ego and/or fraudulent transfer theories. But, either this Court must rule on the Trustee's underlying theories or the Trustee must settle his claims directly with

---

[5] *Notice of Motion and Motion of Trustee Richard A. Marshack for Entry of an Order (a) Approving Sale, Subject to Overbid, of Assets Free and Clear of All Liens, Claims, Encumbrances and Interests Pursuant to 11 U.S.C. § 363(b) and (b) Approving Assumption and Assignment of Certain Executory Contracts and Unexpired Leases and Other Agreements* [Dkt. No. 191] (the "Sale Motion"). CLG was not the prevailing bidder at the auction and the assets were sold to another, higher bidder.

[6] *Id.* The requested good faith finding was not objected to by the United States Trustee or other party in interest.

[7] Settlement Agreement, at §§ 2-4.

[8] *Fourth Amended Complaint For: (1) Injunctive Relief; (2) Avoidance, Recovery, and Preservation of Two-Year Actual Fraudulent Transfers; (3) Avoidance, Recovery, and Preservation of Two-Year Constructive Fraudulent Transfers; (4) Avoidance, Recovery, and Preservation of Four-Year Actual Fraudulent Transfers; (5) Avoidance, Recovery, and Preservation of Four-Year Constructive Fraudulent Transfers; (6) Turnover; and (7) Negligence*, Adv. Proc No. 8:23-ap-01046-SC [Dkt. No. 583].

CLG. Moreover, CLG also disputes Optimum's alleged right to recoup and offset $200,000 of CLG's funds from CLG's account. Instead, through the instant Motion, the Trustee purports to accomplish this via the Court's preliminary injunction and a Settlement Agreement with Optimum. The operative effect is to circumvent CLG's basic due process rights and defenses with respect to funds in CLG's bank account on files that CLG acquired.

## III.

## THE MOTION SHOULD BE DENIED

### A. The Motion Does Not Satisfy the Standards of Bankruptcy Rule 9019 Because A Settlement With Optimum Does Not Resolve Disputes With CLG That Will Be Necessary to Adjudicate the Estate's Alleged Interests in the Funds

As discussed above and as the Trustee has acknowledged,[9] the Debtor transferred LPG Acquired Clients to CLG prepetition in exchange for certain consideration. While the Trustee has alleged certain legal theories challenging the validity of the transfers to CLG and/or the receipt of reasonably equivalent value by the Debtor from CLG, none of the underlying factual or legal issues have been adjudicated or settled by CLG in the Trustee's favor. Specifically, the Court has not found alter ego, fraudulent transfer or that the Acquired LPG Clients and the proceeds thereof are property of the estate under Bankruptcy Code section 541.

In order to approve a compromise under Bankruptcy Rule 9019, the trustee must demonstrate at a minimum that the compromise will resolve disputes.[10] But the proposed settlement with Optimum does nothing of the kind. CLG maintains that it is not an alter ego, that it acquired the Acquired LPG Clients for reasonably equivalent value in an arm's length transaction, and that the funds, collected in CLG's bank account, belong to CLG not the bankruptcy estate or Optimum.[11]

Nothing in the proposed settlement resolves these disputes.

### B. The Settlement is Not Fair and Equitable Because It Circumvents CLG's Property Interest in the Funds Without Due Process

---

[9] *See, e.g.*, Sale Motion at 6:20-23.

[10] *Martin v. Kane (In re A & C Properties)*, 784 F.2d 1377, 1380-81 (9th Cir. 1986), *cert. denied* 479 U.S. 854 (1986). ("The purpose of a compromise agreement is to allow the [Trustee] and the creditors to avoid the expenses and burdens associated with litigating sharply contested and dubious claims.").

[11] CLG disputes and reserves all rights with respect to Optimum's alleged rights of recoupment and offset.

It is well-settled that, in approving a settlement agreement, the court need not conduct an exhaustive investigation of the claims sought to be compromised.[12] However, it is incumbent upon the court to find that the settlement was negotiated in good faith and is reasonable, fair, and equitable.[13] This standard extends to the interests of non-settling parties effected by the proposed settlement.[14]

The Motion fails on this count. While a motion brought under Rule 9019 typically may compromise claims among the estate and other willing parties, here the Trustee effectively seeks an end-run of CLG's rights and interests in property, when the Court has never adjudicated their merits. Rule 9019 does not authorize such abuse of CLG's basic due process rights.

Among other disputed issues that have been incorporated into the proposed settlement between the Trustee and Optimum are the following:

- "Optimum may recoup, set off, or otherwise retain and apply funds in the Debtor Reserve to satisfy and pay any Optimum Recoupment …."

- Optimum may have access and/or be provided a copy of client contracts for which CLG has initiated ACH transactions.

---

[12] *See United States v. Alaska National Bank (In re Walsh Constr., Inc.)*, 669 F.2d 1325, 1328 (9th Cir. 1982).

[13] *See In re A & C Properties*, 784 F.2d at 1381.

[14] *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 424 (1968) (it is the court's job to apprise itself of "*all* facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated," and to "make an informed and independent judgment as to whether a proposed compromise is "fair and equitable.") (emphasis added); *Liberty Bank, F.S.B. v. D.J. Christie, Inc.*, 681 Fed.Appx. 664 (10th Cir. 2017) ("we recognize a settlement 'cannot dispose of the valid claims of nonconsenting intervenors' and cannot 'impose[] obligations on a party that did not consent,' (quoting *Local No. 93, International Ass'n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland*, 478 U.S. 501. 529 (1986)); *Overton's, Inc. v. Interstate Fire & Cas. Ins. Co. (In re Sportstuff, Inc.)*, 430 B.R. 170, 181 (B.A.P. 8th Cir. 2010) ("A 'settlement' between only two parties to a multi-party lawsuit is not a settlement, and the procedure to approve a compromise under Fed. R. Bankr. P. 9019(a) cannot be used to impose an injunction on the non-settling parties; *In re Nutraquest*, 434 F.3d 639, 645 (3d. Cir. 2006) (Courts are to "look to the fairness of the settlement to other persons, *i.e.*, the parties who did not settle."); *In re Nortel Networks, Inc*., 522 B.R. 491, 512-13 (Bankr. D. Del. 2014) (J. Gross) ("the Court is duty-bound to consider the affect [*sic*] of the Settlement Agreement on non-settling parties"; "[E]very constituency affected by a proposed settlement agreement may not be a signatory to the agreement or even involved in the settlement negotiations and so requires that the Court conduct an independent review of the fairness of the proposed settlement agreement."); *Urmann v. Walsh*, 523 B.R. 472 (W.D. Pa. 2014) ("Even if a settlement is fair and equitable to the parties to the settlement, approval is not appropriate if the rights of others who are not parties to the settlement will be unduly prejudiced. We must determine that 'no one has been set apart for unfair treatment'. Ignoring the effect of a settlement on rights of third parties 'contravenes a basic notion of fairness'." (citation omitted)); *In re Mavrode*, 205 B.R. 716, 721 (Bankr. D. N.J. 1997) ("It is the duty of the bankruptcy court to ensure that the proposed settlement will not result in further injury to the other creditors. A proposed settlement will necessarily fail where one creditor benefits at the other creditors' expense.").

- Optimum shall release and pay over to the Chapter 11 Trustee all funds (approximately $800,000), other than $200,000 that Optimum will maintain in reserve, remaining in any account titled to the Debtor "*or any of its Affiliates*."[15] [16]

These are effectively legal determinations – which the Trustee would have the Court make without any investigation of the facts or consideration of the merits – against CLG. This Court has never concluded – let alone after reviewing the claims on the merits – that $1,000,000 of post-petition collections in CLG's account constitute property of the estate. The Trustee cannot effectively decide this contested issue in his favor by settling with the bank.

To be sure, the Trustee has authority to settle disputed legal issues with consenting parties, including Optimum. However, neither the Trustee nor any of the other defendants are authorized to settle these disputes on CLG's behalf. The disputes between CLG and the Trustee concerning the treatment of the LPG Acquired Clients and the proceeds thereof as property of the estate most certainly has not been "settled" by CLG.

"Assessing the validity of a settlement agreement . . . is a question of state contract law."[17] Under California law, a valid contract requires parties capable of contracting, *consent*, a lawful object, and consideration.[18]

No valid and enforceable settlement agreement exists between the Trustee and CLG concerning the disputed issues that are the subject of the Motion. To the contrary, CLG is still in litigation with the Trustee precisely with respect to the Trustee's contention that CLG must turnover assets based on alternative alter ego and/or fraudulent transfer theories. As a matter of basic due process, the Trustee cannot unilaterally "settle" these issues in his own favor.

---

[15] Settlement Agreement, at §§ 2-4 (emphasis added).

[16] The term "Affiliates" is defined in the Settlement Agreement specifically to include CLG. *Id.*, Recital A ("Optimum performed certain ACH payment processing services for the Debtor and its 'Affiliates' (namely, LGS Clearinghouse LLC, KLYR Capital Inc., Collegg LLC dba Phoenix LG Fee, and *Consumer Legal Group PC*) pursuant to an agreement between the Debtor and Optimum dated June 12, 2022….") (emphasis added).

[17] *Golden v. Cal. Emergency Physicians Med. Grp.*, 782 F.3d 1083, 1087 (9th Cir. 2015) ("Typically, the construction and enforcement of settlement agreements are governed by principles of local law which apply to interpretation of contracts generally." (internal quotation marks and citation omitted)).

[18] Cal. Civ. Code § 1550; *Lopez v. Charles Schwab & Co., Inc.*, 118 Cal. App. 4th 1224, 1230 (Cal. Ct. App. 2004).

### C. The Proposed "Free and Clear" Finding Pursuant to Bankruptcy Code Section 552 Is Improper

The Trustee's request that the Court order that the funds in CLG's bank account at Optimum are "free and clear of any and all secured liens" pursuant to Bankruptcy Code section 552(b) is improper. Bankruptcy Code section 552(a) provides in pertinent part that "property acquired *by the estate or by the debtor* after the commencement of the case is not subject to any *lien resulting from any security agreement* entered by the debtor before the commencement of the case."[19] Here, as the Trustee acknowledges, the funds at issue are derived from the LPG Acquired Clients and that the account is titled in CLG's name. The funds, therefore, are CLG's property, not the Trustee's nor Optimum's. As discussed above, there has been no ruling otherwise.

### D. Turnover Must Be Adjudicated Pursuant to an Adversary Proceeding, Not a 9019 Motion

Federal Rule of Bankruptcy Procedure 7001(1)[20] includes in the list of relief requiring the commencement of an adversary proceeding, "a proceeding to recover money or property, other than a proceeding to compel the debtor to deliver property to the trustee." Thus, Rule 7001(1) generally requires an action for turnover of property that is not a document, against a third party who is not the debtor, under § 542(a) and (b) and § 543(a) to be commenced by an adversary proceeding.[21]

Even though the turnover duty of estate property is considered to be self-executing, this is not the case where, as here, the estate's alleged interest in the asset is disputed. The court's decision in *In re Century City Doctors Hosp., LLC*[22] is instructive. In *Century City Doctors*, Judge Carroll acknowledged that the duty to turn over property of the estate is not contingent on any order or demand, and arises on the filing of the petition. The court emphasized, though, that these obligations apply only to *undisputed* funds or other estate property. Because the trustee had "made no allegations in the complaint or submitted any evidence in opposition to the summary judgment motion to suggest

---

[19] 11 U.S.C. § 552(a) (emphasis added).

[20] Fed. R. Bankr. P. 7001(1).

[21] *See, e.g.*, *In re MF Global Inc.*, 531 B.R. 424, 431 (Bankr. S.D. N.Y. 2015); *In re Spence*, 2009 WL 3756621 (Bankr. W.D. Tex. 2009); *In re Hodge*, 2009 WL 3645172 (Bankr. W.D. Tex. 2009); *In re Clark*, 2009 WL 2849785 (Bankr. D. D.C. 2009).

[22] 466 B.R. 1 (Bankr. C.D. Cal. 2012).

that the transferred funds" were "*indisputably* estate property subject to the turnover requirements under § 542," and the defendant had disputed the trustee's right to recovery under any theory of recovery, the defendant was entitled to summary judgment on the turnover count "because there simply [was] no legal basis for a stand-alone 'turnover' claim" in the case.[23]

Here, as discussed above, rights in the Optimum reserve account are disputed. Thus, an adversary proceeding is required.

## IV.

## CONCLUSION

For the foregoing reasons, CLG respectfully requests that the Court deny the Motion in its entirety and grant such further relief as is just and proper.

Dated: September 5, 2024         **PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Ira D. Kharasch*
Ira D. Kharasch (CA Bar No. 109084)
Victoria A. Newmark (CA Bar No. 183581)
10100 Santa Monica Boulevard, 13th Floor
Los Angeles, CA 90067
Tel: (310) 277-6910
Fax: (310) 201-0760
Email:    ikharasch@pszjlaw.com
          vnewmark@pszjlaw.com

*Counsel for Consumer Legal Group, PC*

---

[23] *Id.* at 19; *see also In re Sportstuff, Inc.*, 430 B.R. at 181 ("The opportunity to object to a settlement does not take the place of a trial on the merits.") (construing Fed. R. Bank. P. 7001(7)).

4886-3001-2382.4                         9