D. EDWARD HAYS, #162507
ehays@marshackhays.com
BRADFORD N. BARNHARDT, #328705
bbarnhardt@marshackhays.com
MARSHACK HAYS WOOD LLP
870 Roosevelt
Irvine, California 92620
Telephone: (949) 333-7777
Facsimile: (949) 333-7778

Attorneys for Chapter 11 Trustee and
Liquidating Trustee, RICHARD A.
MARSHACK

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>THE LITIGATION PRACTICE GROUP P.C.,<br><br>Debtor. | Case No: 8-23-bk-10571-SC<br><br>Chapter 11<br><br>MOTION TO: (1) EXTEND DURATION OF ETHICS COMPLIANCE MONITOR'S APPOINTMENT; (2) INCREASE COMPENSATION FOR FEE EXAMINER SERVICES PREVIOUSLY RENDERED; AND (3) CLARIFY APPOINTMENT OF FEE EXAMINER REGARDING FINAL APPLICATIONS FOR APPROVAL OF FEES AND EXPENSES; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF RICHARD A. MARSHACK AND NANCY B. RAPOPORT IN SUPPORT<br><br>Hearing:<br>Date:   November 6, 2024<br>Time:  1:30 p.m.<br>Judge: Hon. Scott C. Clarkson<br>Place:  Courtroom 5C<br>       411 W. Fourth Street<br>       Santa Ana, CA 92701 |

1

MOTION TO: (1) EXTEND DURATION OF ETHICS COMPLIANCE MONITOR'S APPOINTMENT; (2) INCREASE
COMPENSATION FOR FEE EXAMINER SERVICES PREVIOUSLY RENDERED;  AND (3) CLARIFY APPOINTMENT OF
FEE EXAMINER REGARDING FINAL APPLICATIONS FOR APPROVAL OF FEES AND EXPENSES
4887-5831-6646

TO THE HONORABLE SCOTT C. CLARKSON, UNITED STATES BANKRUPTCY JUDGE,

THE OFFICE OF THE UNITED STATES TRUSTEE, AND ALL INTERESTED PARTIES:

Richard A. Marshack, in his capacities as Chapter 11 Trustee of the Bankruptcy Estate

("Estate") of The Litigation Practice Group P.C. ("Debtor") and liquidating trustee of the LPG

Liquidation Trust (collectively, "Trustee"), hereby submits this motion to (1) extend the duration of

the ethics compliance monitor's appointment, (2) increase compensation for fee examiner services

previously rendered, and (3) clarify the appointment of the fee examiner regarding final

applications for approval of fees and expenses ("Motion"). In support of the Motion, Trustee

submits the following Memorandum of Points and Authorities and the Declarations of Richard A.

Marshack ("Marshack Declaration") and Nancy B. Rapoport ("Rapoport Declaration").

## 1.    Introduction

This Court previously entered an order appointing Nancy Rapoport ("Ms. Rapoport") as the

ethics compliance monitor in this case to oversee the court-approved buyer's compliance with

consumer protection laws. The Court separately entered an order appointing Ms. Rapoport as the fee

examiner in this case. Ms. Rapoport has provided tremendous benefit to the estate in both of her

capacities. Her original one-year term has expired, and the Trustee believes that it is in the best

interest of the estate and the liquidation trust for the Court to extend Ms. Rapoport's employment as

Monitor until MLG has fully paid its purchase obligations and to extend her employment as fee

examiner until after the Court rules on final fee applications which will be filed prior to the end of

this year.

## 2.    Factual Background

### A.    The Bankruptcy Filing

On March 20, 2023, Debtor filed a voluntary petition for relief under Chapter 11 of the

Bankruptcy Code in the United States Bankruptcy Court for the Central District of California,

initiating Case No. 8:23-bk-10571-SC.

On May 8, 2023, Richard A. Marshack was appointed as Chapter 11 Trustee of Debtor's Bankruptcy Estate and assumed all authority to administer Debtor's Estate in this case. Docket No. 65.

## B.    The Sale Motion and the Monitor's Appointment

On July 7, 2023, as Docket No. 191, Trustee filed a "Motion . . . for Entry of an Order (A) Approving Sale, Subject to Overbid, of Assets Free and Clear of All Liens, Claims, Encumbrances and Interests Pursuant to 11 U.S.C. § 363(b) and (B) Approving Assumption and Assignment of Certain Executory Contracts and Unexpired Leases and Other Agreements" ("Sale Motion"). The Sale Motion sought Court approval for a sale of Debtor's assets, and proposed appointment of a one-year monitor to ensure compliance with consumer protection laws. *Id.* at 26-27.

On August 2, 2023, as Docket No. 352, the Court entered an "Order (A) Approving Sale of Assets Free and Clear of All Liens, Claims, Encumbrances and Interests Pursuant to 11 U.S.C. § 363(b), (B) Approving Assumption and Assignment of Certain Executory Contracts and Unexpired Leases and Other Agreements, and (C) Granting Related Relief" ("Sale Order"). A true and correct copy of the Sale Order is attached to the Marshack Declaration as **Exhibit 1**. The Sale Order, *inter alia*, approved the asset purchase agreement ("APA") between Trustee and Morning Law Group, P.C. ("Morning Law" or "Purchaser"), and provided that the Court would appoint a monitor "to strictly monitor Purchaser's compliance with generally understood ethical standards and certain consumer protection obligations." Marshack Decl., Ex. 1 at 27. The Sale Order indicated that the specific duties and mechanisms for support of a monitor would be set forth in a separate order of appointment, with the terms "based upon Judge Drain's appointment of a compliance Monitor as set forth in the *Purdue Pharma L.P., et al., v. Commonwealth of Massachusetts (In re Purdue Pharma, L.P.)*, S.D.N.Y. Case No. 19-23649 (RDD) Adv. Pro. No. 19-08289 (Bankr. S.D.N.Y. 2019), and appointment in this case is pursuant to the Bankruptcy Court's power under 11 U.S.C. § 105(a) which has been consented to by Purchaser." *Id.* at 27.

MOTION TO: (1) EXTEND DURATION OF ETHICS COMPLIANCE MONITOR'S APPOINTMENT; (2) INCREASE COMPENSATION FOR FEE EXAMINER SERVICES PREVIOUSLY RENDERED;  AND (3) CLARIFY APPOINTMENT OF FEE EXAMINER REGARDING FINAL APPLICATIONS FOR APPROVAL OF FEES AND EXPENSES
4887-5831-6646

On August 7, 2023, as Docket No. 363, the Court entered an "Order Appointing Nancy Rapoport as Ethics Compliance Monitor" ("Monitor Order"). A true and correct copy of the Monitor Order is attached to the Marshack Declaration as **Exhibit 2**. The Monitor Order appointed Ms. Rapoport as monitor ("Monitor") pursuant to 11 U.S.C. § 105(a), and based on the explicit written consent of Morning Law. Marshack Decl., Ex. 2 at 109. The Monitor Order provided for the Monitor's fees and expenses to be paid by the Estate, up to the first $100,000, upon proper application to the Court, with additional fees and expenses to be paid by Morning Law, up to $100,000. *Id.* Any amount exceeding $200,000 would be the responsibility of the Estate. *Id.* The full scope of the Monitor's duties is set forth in § 6 of the Monitor Order. *Id.* at 110-111. The Monitor Order provided that the Monitor would serve for a period of one year from the date of appointment "unless such period is extended by the Bankruptcy Court." *Id.* at 112.

The sale closing date was on August 4, 2023. *See* Docket No. 416 at 2 ("Chapter 11 Trustee, Richard Marshack's Report of Sale"). The Monitor, however, began her services on August 9, 2023, with additional pre-appointment services that began on July 25, 2023. Rapoport Decl, ¶ 5. The Monitor accordingly believes her appointment became effective on August 9, 2023. As such, the Monitor's appointment expired on August 8, 2024, and she has been operating on a month-to-month basis, subject to extension by the Court.

## C.    The Fee Examiner's Appointment

On August 5, 2024, as Docket No. 1486, Trustee filed an "Application for an Order Pursuant to 11 U.S.C. § 105 and LBR 2016-1(d) Authorizing the Retention of Nancy B. Rapoport as Fee Examiner and Approving Stipulation Governing Same" ("Fee Examiner Application"). A true and correct copy of the Fee Examiner Application is attached to the Marshack Declaration as **Exhibit 3**.

On August 7, 2024, as Docket No. 1489, the Court entered an "Order Pursuant to 11 U.S.C. § 105 and LBR 2016-1(d) Authorizing the Retention of Nancy B. Rapoport as Fee Examiner and Expanding Scope to Include All Retained Professionals" ("Fee Examiner Order"). A true and correct copy of the Fee Examiner Order is attached to the Marshack Declaration as **Exhibit 4**. The Fee Examiner Order provided that Ms. Rapoport would be appointed as the fee examiner ("Fee

Examiner") in this case regarding all retained professionals. Marshack Decl., Ex. 4 at 272. The Fee

Examiner was tasked with reviewing "all professionals' fees . . . with respect to the requests for fees

and reimbursement of costs from the initial period of employment through the designated first

interim period." *Id.* at 272. Compensation for the Fee Examiner was to be paid by the Estate as

follows:

> $30,000 for examination of fees and reimbursable expenses of the Professionals who
>
> have entered into the accompanying Stipulation for Appointment of Fee Examiner.
>
> With respect to examination of the remaining professionals not party to the
>
> Stipulation, if the initial amount of the fees sought by all professionals cumulatively
>
> exceed $8,000,000, the Fee Examiner may apply for further compensation pursuant to
>
> 11 U.S.C. § 330 for services rendered for efforts due to professionals not parties to
>
> the presented Stipulation.

*Id.*

On September 6, 2024, as Docket No. 1642, the Court entered an "Order Clarifying Fee

Examiner Order" ("Clarifying Order"), which specified that the Court would review the following

fee applications:

1) The Interim Fee Application of Ms. Rapoport, the Court Appointed Ethics Compliance
   Monitor, filed September 3, 2024 [Dk. 1613];

2) The First and Final Application of Lucy Thomson, Consumer Privacy Ombudsman, filed
   September 3, 2024 [Dk. 1622]; and

3) The Interim Fee Application of Khang & Khang, filed September 3, 2024 [Dk. 1623].

A true and correct copy of the Clarifying Order is attached to the Marshack Declaration as

**Exhibit 5**.

On September 12, 2024, as Docket No. 1673, the Fee Examiner filed a "Report of Fee

Examiner Nancy B. Rapoport." *See also* Docket No. 1697 ("Statement to Report of Fee Examiner

Nancy B. Rapoport," filed on September 17, 2024).

On October 1, 2024, the Court entered its order approving interim fee applications of the various professionals whose fees were reviewed by the Fee Examiner.

Pursuant to the terms of the Plan and Confirmation Order, final fee applications must be filed on or before November 8, 2024. The Trustee believes that the Fee Examiner should review these final fee applications. As noted below, the Fee Examiner is requesting $5,000 as an additional fee for her review of the interim fee applications. It is anticipated that the Fee Examiner will be requesting approximately $15,000 for her services to review the final fee applications, under the assumption that the total fees to be reviewed will not exceed $3,200,000.

## 3.    Legal Argument

### A.    Good cause exists for entry of an order extending the Monitor's appointment.

Title 11 U.S.C. § 105(a) provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

A bankruptcy court's § 105(a) and inherent powers "may not be exercised in contravention of the Code." *Law v. Siegel*, 571 U.S. 415, 423 (2014). Rather, § 105(a) confers authority to "carry out" the provisions of the Bankruptcy Code. *Id.* at 421.

This Court has previously entered an order appointing the Monitor pursuant to § 105(a), with an allowance for an extension of the Monitor's term with Court approval. *See* Marshack Decl., Ex. 2 (Monitor Order).

By this Motion, Trustee requests an extension of the Monitor's appointment to the earlier of July 1, 2025, or the date that Morning Law no longer has an obligation to pay the estate pursuant to the APA ("Extension Period"). Under the terms of the Plan and Confirmation Order, the liquidating trustee does not need to file applications to employ professionals post-confirmation. In an abundance

of caution and to the extent that the services of the Monitor could conceivably be to the Estate until the Trust is fully funded, the Trustee requests that the Court enter an order confirming the Monitor's employment is extended as requested.[1]

The responsibilities and scope of the Monitor's employment will be the same as they were pursuant to the Monitor Order. Unless otherwise ordered, the Monitor will still file monthly statements with the Court. The Estate will benefit from the Monitor's work to ensure compliance with consumer protection laws. Accordingly, good cause exists for an extension of the Monitor's appointment to the end of the Extension Period.

## B.    Good cause exists for increasing the compensation to the Fee Examiner for reviewing additional applications covered by the Court's Fee Examiner Order.

In its Order appointing the Fee Examiner, the Court made it clear that the Fee Examiner would review all Estate Professional applications, not just those of the Trustee's professionals. Ms. Rapoport completed her role in that regard, and by Declaration herein, states that the additional fees for the review of the applications added by the Order resulted in an additional obligation of $5,000, divided evenly between Legal Decoder and Ms. Rapoport.  Trustee seeks authority to pay the additional $5,000 as requested.

## C.    Good cause exists for extending the Fee Examiner's appointment with respect to final fee applications

Local Bankruptcy Rule 2016-1(d) provides: "The court may, either on its own motion or on the motion of a party in interest, with or without a hearing, exercise its discretion to appoint a fee examiner to review fee applications and make recommendations to the court for approval."

In complex cases, a number of bankruptcy courts have appointed fee examiners pursuant to 11 U.S.C. § 105. *See, e.g.*, *In re PG&E Corporation*, Case No. 19-30088 (DM), ECF No. 2267

---

[1] To the extent Trustee's deadline to seek to extend the Monitor's appointment has passed, the Court may still extend its own deadline pursuant to Rule 9006(b)(1)(2) of the Federal Rules of Bankruptcy Procedure ("FRBP"). *Harkey v. Grobstein (In re Point Ctr. Fin., Inc.)*, 957 F.3d 990, 997 (9th Cir. 2020).

7

1  (Bankr. N.D. Cal. May 28, 2019); *In re Zetta Jet USA, Inc.*, Case No. 2:17-bk-21386-SK, ECF No.

2  1285 (Bankr. C.D. Cal. July 8, 2020).

3     Here, as before, it would benefit the parties and assist the Court and the U.S. Trustee were a

4  fee examiner appointed regarding the forthcoming final fee applications.

5     If her appointment is extended by this Court, the Fee Examiner will review and assess, on an

6  hourly basis, all final fee applications submitted by retained professionals (with the exceptions of the

7  Monitor and Khang & Khang) for approval to this Court for final awards sought. Such review shall

8  include all the fees and reimbursement of expenses for which allowance is sought for compliance

9  with 11 U.S.C. §§ 328, 329, 330, and 331; Fed. R. Bankr. P. 2016; any applicable Local Bankruptcy

10  Rules; and the U.S. Trustee's Guidelines for Reviewing Applications for Compensation. Notably,

11  the Fee Examiner has reviewed interim fees and expenses, which will expedite her review of final

12  fees and expenses. The Fee Examiner will further perform such other duties as this Court requires.

13     Ms. Rapoport anticipates that the additional services to review the Final Fee Applications,

14  which are estimated to total below $3,200,000, will be an amount not to exceed $7,500 for Legal

15  Decoder and $7,500 for Ms. Rapoport, and Trustee proposes that the Estate pay such fee to Ms.

16  Rapoport.

17     Ms. Rapoport is well qualified to serve as Fee Examiner and has already been approved as

18  such regarding interim fees and expenses in this case. Her qualifications are set forth in the Fee

19  Examiner Application. The Fee Examiner's declaration of disinterestedness and resume have

20  previously been filed with the Court in connection with her duties as ethics compliance monitor. *See*

21  Docket No. 283. A true and correct copy of the Fee Examiner's prior declaration and resume is

22  attached to the Marshack Declaration as **Exhibit 6**.

23  / / /

24  / / /

25

26

27

28

# 4.    Conclusion

Trustee respectfully requests that this Court enter an order:

1.      Granting the Motion;

2.      Extending the Monitor's appointment to the earlier of July 1, 2025, or the date that Morning Law no longer has an obligation to pay the Estate or the Liquidation Trust pursuant to the APA;

3.      Authorizing the Estate to pay the Monitor to and including the end of the Extension Period (subject to further extension with Court approval);

4.      Authorizing Trustee to pay the Fee Examiner $5,000 as compensation for her services in reviewing the applications added by the Fee Examiner Order;

5.      Extending the Fee Examiner's duties to including review of all final applications for fees and costs in this case;

6.      Authorizing the Estate to pay the Fee Examiner up to $15,000 for her services in connection with the final applications for fees and costs (subject to increase upon further Court order for cause shown), provided that the total fee applications are no more than $3,200,000; and

7.      For such other relief as the Court deems just and proper.

DATED:  October 8, 2024                          MARSHACK HAYS WOOD LLP

                                                 /s/ D. Edward Hays
                                         By:_____
                                                 D. EDWARD HAYS
                                                 BRADFORD N. BARNHARDT
                                                 Attorneys for Chapter 11 Trustee and
                                                 Liquidating Trutsee, RICHARD A.
                                                 MARSHACK

MOTION TO: (1) EXTEND DURATION OF ETHICS COMPLIANCE MONITOR'S APPOINTMENT; (2) INCREASE
COMPENSATION FOR FEE EXAMINER SERVICES PREVIOUSLY RENDERED;  AND (3) CLARIFY APPOINTMENT OF
FEE EXAMINER REGARDING FINAL APPLICATIONS FOR APPROVAL OF FEES AND EXPENSES
4887-5831-6646

# Declaration of Richard A. Marshack

I, RICHARD A. MARSHACK, say and declare as follows:

1.      I am an individual over 18 years of age and competent to make this Declaration.

2.      I am the duly appointed and acting Chapter 11 Trustee for the bankruptcy estate ("Estate") of The Litigation Practice Group, P.C. ("Debtor") and the Liquidating Trustee for the LPG Liquidation Trust.

3.      I make this declaration in support of my motion ("Motion") to (1) extend the duration of the ethics compliance monitor's appointment, (2) increase compensation for fee examiner services previously rendered, and (3) appoint the fee examiner regarding final applications for approval of fees and expenses. All capitalized terms not otherwise defined in this declaration shall have the meaning ascribed to them in the Motion.

4.      If called as a witness, I could and would competently testify to the following of my own personal knowledge.

5.      I believe that Estate will benefit from the Monitor's work to ensure compliance with consumer protection laws. Accordingly, I request that the Court enter an order extending the duration of the Monitor's appointment to the earlier of July 1, 2025, or the date that Morning Law no longer has an obligation to pay the Estate pursuant to the APA (subject to further extension with Court approval).

6.      I further request that the Court extend the appointment of the Fee Examiner to review final applications of retained professionals (with the exceptions of any final applications of the Monitor and Khang & Khang) on the terms set forth in the Motion. I believe that the Fee Examiner will assist the parties, the Court, and the U.S. Trustee in analyzing the reasonableness of the professionals' fees and expenses in this case.

7.      A true and correct copy of the Sale Order is attached as Exhibit 1.

8.      A true and correct copy of the Monitor Order is attached as Exhibit 2.

9.      A true and correct copy of the Fee Examiner Application is attached as Exhibit 3.

10.     A true and correct copy of the Fee Examiner Order is attached as Exhibit 4.

1       11.    A true and correct copy of the Clarifying Order is attached as Exhibit 5.

2       12.    A true and correct copy of the fee examiner's prior declaration and resume is attached

3 as Exhibit 6.

4     I declare under penalty of perjury that the foregoing is true and correct. Executed on October

5 _8_, 2024.

6                              RICHARD A. MARSHACK

## Declaration of Nancy B. Rapoport

I, Nancy B. Rapoport, say and declare as follows:

1.    I am an individual over 18 years of age and competent to make this Declaration.

2.    I am an attorney and a member of the faculty of the William S. Boyd School of Law, University of Nevada, Las Vegas.

3.    I make this declaration in support of the motion ("Motion") of Richard A. Marshack, in his capacity as Chapter 11 Trustee of the Bankruptcy Estate ("Estate") of The Litigation Practice Group P.C. ("Debtor") and liquidating trustee of the LPG Liquidation Trust (collectively, "Trustee"), to (1) extend the duration of the ethics compliance monitor's appointment, (2) increase compensation for fee examiner services previously rendered, and (3) appoint the fee examiner regarding final applications for approval of fees and expenses.

4.    If called as a witness, I could and would competently testify to the following of my own personal knowledge.

5.    I began performing services as Monitor in this case on August 9, 2023, with additional pre-appointment services that began on July 25, 2023.

6.    My review of the applications added by the "Order Pursuant to 11 U.S.C. § 105 and LBR 2016-1(d) Authorizing the Retention of Nancy B. Rapoport as Fee Examiner and Expanding Scope to Include All Retained Professionals" resulted in an additional obligation of $5,000, divided evenly between Legal Decoder and myself.

7.    I anticipate that the additional services to review the final fee applications in this case will be an amount not to exceed $7,500 for Legal Decoder and $7,500 for myself, under the assumption that the total fees to be reviewed will not exceed $3,200,000.

I declare under penalty of perjury that the foregoing is true and correct. Executed on October 8, 2024.

NANCY B. RAPOPORT

12

**EXHIBIT 1**

1  Christopher B. Ghio (State Bar No. 259094)
   Christopher Celentino (State Bar No. 131688)
2  Yosina M. Lissebeck (State Bar No. 201654)
   **DINSMORE & SHOHL LLP**
3  655 West Broadway, Suite 800
   San Diego, CA 92101
4  Telephone:  619.400.0500
   Facsimile:  619.400.0501
5  christopher.ghio@dinsmore.com
   christopher.celentino@dinsmore.com
6  yosina.lissebeck@dinsmore.com

7  Special Counsel to Richard A. Marshack

8

9

10

11

| FILED & ENTERED |
| --- |
| AUG 02 2023 |
| CLERK U.S. BANKRUPTCY COURT |
| Central District of California |
| BY bolte      DEPUTY CLERK |

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION**

12  In re:

13  THE LITIGATION PRACTICE GROUP P.C.,

14                    Debtor.

Case No. 8:23-bk-10571-SC

Chapter 11

**ORDER (A) APPROVING SALE OF ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS PURSUANT TO 11 U.S.C. § 363(b), (B) APPROVING ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND OTHER AGREEMENTS, AND (C) GRANTING RELATED RELIEF**

Date:     July 21, 2023
Time:     10:00 a.m.
Ctrm:     5C

147759571.1

1    On July 21, 2023, at 10:00 a.m., in Courtroom 5C of the United States Bankruptcy Court,

2    Central District of California, Santa Ana Division ("Bankruptcy Court"), located at 411 West Fourth

3    Street, the Honorable Scott C. Clarkson, United States Bankruptcy Judge, conducted a hearing

4    ("Hearing") regarding above-referenced debtor, The Litigation Practice Group, P.C. ("LPG" or the

5    "Debtor") relating to the within bankruptcy estate ("Estate"); on the Motion of Trustee Richard A.

6    Marshack ("Trustee")For Entry of an Order: (A) Approving Sale of Assets Free and Clear of All

7    Liens, Claims, Encumbrances  and Interests Pursuant to 11 U.S.C. § 363(b); and (B) Approving the

8    Assumption and Assignment of Certain Executory Contracts and Unexpired Leases and Other

9    Agreements [Dkt. No. 191] (the "Motion")[1] filed by Richard A. Marshack on July 7, 2023 in the

10   above-captioned Chapter 11 bankruptcy case ("Case"), along with the Declaration of Richard A.

11   Marshack in Support by Richard A. Marshack, Chapter 11 Trustee [Dkt. No. 191-1] ; Declaration

12   of Mr. Carss [Dkt. No. 191-2]; Declaration of Mr. Pruyn [Dkt. No. 191-3]; Declaration of Mr.

13   Rebhun [Dkt. No. 191-4]; and Declaration of Mr. Schneider [Dkt. No. 191-5], along with all

14   supplemental documents requested by the Bankruptcy Court to be filed on July 17, 2023, including

15   but not limited to Trustee's Pocket Brief [Dkt. No. 260]; the Supplemental Declaration of Mr.

16   Rebhun [Dkt. No. 260-1]; the Supplemental Declaration of Mr. Pruyn [Dkt. No. 260-2]; and

17   Supplemental Declaration of Mr. Carss [Dkt. No. 260-3]. Christopher Celentino, Christopher Ghio,

18   Yosina Lissebeck and Peter W. Bowie of Dinsmore & Shohl LLP appeared on behalf of Trustee.

19   Keith C. Owens and Nicholas A. Koffroth at Fox Rothschild LLP appeared on behalf of the Official

20   Committee of Unsecured Creditors ("Committee"). The Office of the United States Trustee appeared

21   by and through Kenneth Misken, Leslie Skorheim and Queenie Ng. The consumer privacy

22   ombudsman, Lucy Thomson, appeared. The proposed monitor, Nancy Rapoport, appeared. Other

23   interested parties and bidders appeared as reflected on the record.  Any other appearances were as

24   stated on the record.

25    Due notice of the sale hearing having been given and the Bankruptcy Court having heard

26   argument of counsel and any evidence presented in support of the relief requested in the Motion;

27

28
---
[1] Terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

1

any objections to the Sale having been overruled, and it appearing that the relief requested in the Motion is in the best interests of the Debtor, the Estate, the Estate's creditors and other parties in interest; and after due deliberation thereon, the Bankruptcy Court having entered its Order Approving Motion of Trustee Richard A. Marshack For Entry of an Order: (A) Approving Sale of Assets Free and Clear of All Liens, Claims, Encumbrances and Interests Pursuant to 11 U.S.C. § 363(b); and (B) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases and Other Agreements [Dkt. No. 320] entered on July 22, 2023, the Bankruptcy Court hereby makes the following findings of fact and conclusions of law:

**Findings of Fact and Conclusions of Law:[2]**

A.      The Bankruptcy Court has jurisdiction over the Motion and this matter pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (M), (N), and (O).  Venue of this Case and the Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409. This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).

B.      The statutory predicates for the relief sought in the Motion are Sections 102, 105, 363 and 365 of Title 11 of the United States Code ("Bankruptcy Code") and Rules 2002, 4001, 6004, 6006, 9006, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"). Trustee has established the necessary facts to support the entry of an order for the sale of the Property as provided in the Asset Purchase Agreement (as defined below).

C.      The Notice of Sale of Estate Property ("Sale Notice"), the Motion, including overbid procedures set forth therein, the Notice of Entry of Order: (I)(A) Approving Sale of Assets Free and Clear of All Liens, Claims, Encumbrances and Interests Pursuant to 11 U.S.C. § 363(b) and the Asset Purchase Agreement; and (B) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases and Other Agreements, (II)(A) Approving the form and manner of Notice to Consumers, subject to the review of the Monitor, (B) Approving the form and manner of  Legal Service Agreement, subject to the review of the Monitor, (C) Approving

---

[2] Pursuant to Bankruptcy Rule 7052, findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, when appropriate.

EXHIBIT 1, PAGE 15

1  Procedures for Determining Cure Amounts, and (D) Approving Procedures for Notice to Consumer;

2  were served and filed.

3      D.      Due and adequate notice of the Motion, the Sale Notice, and Sale Order (collectively

4  the "Sale") has been given in accordance with Sections 102(1), 105(a), 363 and 365 of the

5  Bankruptcy Code and Bankruptcy Rules 2002, 4001, 6004, 6006, 9006, 9007, 9008 and 9014, and

6  any other applicable provision, including, but not limited to, and no other or further notice of the

7  Sale is or shall be required, but forth the required notice to consumers set forth herein.  A reasonable

8  opportunity to object and be heard regarding Sale and the transactions contemplated thereunder and

9  under the APA has been afforded and reasonably calculated to apprise: (i) all holders of liens, claims,

10  encumbrances and interests (including, without limitation, all of the holders of liens, claims,

11  encumbrances and interests set forth in Paragraph P below) asserted in or against the assets; (ii) the

12  Office of the United States Trustee; (iii) all applicable federal, state and local regulatory or taxing

13  authorities, recording offices or any governmental entity which have a reasonably known interest in

14  the relief requested in the Sale; and (iv) all parties entitled to receive notice as of the date hereof

15  pursuant to the Bankruptcy Code, the Bankruptcy Rules and/or orders of this Bankruptcy Court, and

16  no other or further notice of the Sale is required.  A reasonable opportunity to object or be heard

17  regarding the relief requested has been afforded to all interested persons and entities.

18      E.      The Trustee, having been previously authorized to borrow funds to continue the

19  operations of the business, undertook, and the Debtor's assets have been the subject of, an

20  appropriate marketing and sale process. Trustee solicited bids and other offers in accordance with

21  the Motion and Notice of Sale.  As set forth in the Supplemental Declaration of Trustee, the only

22  Qualified Bidders were Morning Law Group and Bensamochan Law Group, consistent with the

23  Notice of Sale. Trustee has appropriately and adequately marketed the assets and the Motion and

24  Notice of Sale has complied with procedures. The price for the assets are fair and reasonable and

25  constitute the best offer.

26      F.      After an auction conducted on the record during the hearing, Morning Law Group,

27  P.C. ("Morning Law"), was approved as the highest and best offer and is the successful purchaser.

28  At the hearing, approval was sought of the APA by and among Trustee and Morning Law (also

3

sometimes referred to as "Purchaser" or "Buyer") on the terms and conditions announced on the record at the hearing, and substantially memorialized and to be executed in substantially the form attached hereto as Exhibit "1."

G.      The Trustee and Morning Law are presently negotiating terms of a revised Asset Purchase Agreement that will be consistent with this Order (the "APA").  Upon the full execution of the APA, the Trustee will file a copy of the fully-executed APA as a supplement to this Order.

H.      At the Sale hearing, Bensamochan Law Group ("Backup Bidder") was selected and approved as the Backup Bidder in accordance with the Sale procedures.  The Backup Bid by the Backup Bidder, to wit, was the next highest bid below the Purchaser.  If Backup Bidder becomes the purchaser of the assets as provided in the Sale and this Order below, Bensamochan Law Group, as the purchaser in that circumstance is purchasing the assets in good faith and is a good faith purchaser of the assets within the meaning of Section 363(m) of the Bankruptcy Code and is, therefore, entitled to all of the protections afforded by that provision.  Backup Bidder and its representatives have proceeded in good faith in all respects in connection with the Sale.  Backup Bidder will execute the APA in substantially the form attached hereto as Exhibit "1."

I.      Qualified bidders who were not the successful bidder, nor a back-up bidder, shall have their deposit returned as soon as possible after the conclusion of the hearing, at the discretion of Trustee. The Deposit of the successful bidder, and Backup Bidder, shall be controlled by the terms of the Sale, APA and this Order.

J.      Trustee and the Estate has full organizational and other power and authority to execute and deliver the APA and all other documents contemplated thereby, and the sale of the assets and, as applicable, the assumption and assignment of the Assumed Contracts (as defined in the APA), by Trustee and the Estate to Purchaser has been duly and validly authorized by all necessary action. Trustee and the Estate has all of the organizational and other power and authority necessary to consummate the transactions contemplated by the APA, and no consents or approvals, other than those expressly provided for in the APA, are required for Trustee or the Estate to consummate such transactions.  Trustee, as duly appointed and acting trustee in this case, is authorized to bind the Estate.

4

EXHIBIT 1, PAGE 17

K.    The APA was negotiated, proposed and entered into (or if not yet executed, when entered into) without collusion, in good faith and from arm's-length bargaining positions. Neither Trustee, the Estate nor Purchaser, nor any of their respective representatives, have engaged in any conduct that would cause or permit the APA to be avoided under Section 363(n) of the Bankruptcy Code. The terms and conditions of the APA and the transactions contemplated thereby (including, without limitation, the consideration provided in respect thereof) are fair and reasonable and shall not be avoided under Section 363(n) of the Bankruptcy Code. The Sale and procedures set forth in and approved by this Order were non-collusive, proposed and executed in good faith as a result of arm's length negotiations, and substantively and procedurally fair to all parties.  The hearing was conducted, including, without limitation, the selection of the purchaser and the backup purchaser (as defined below) at the conclusion of the hearing and approval of Morning Law as the purchaser, is in accordance with the Sale.  Trustee solicited offers in accordance with, and has otherwise complied in all respects with, the Sale. The sale process set forth in the Sale afforded a full, fair and reasonable opportunity for any person or entity to make a higher or otherwise better offer to purchase the assets, with Purchaser ultimately having been determined by the Bankruptcy Court to be the successful bidder for the assets after consideration of all of the facts and circumstances relevant and necessary for the Bankruptcy Court to make the findings set forth herein.

L.    Purchaser has complied with Sections 363 and 365 of the Bankruptcy Code with respect to the Sale pursuant to the terms of the APA and this Order. Upon closing, Purchaser shall receive the assets free and clear of the liens, claims, encumbrances and interests except as otherwise permitted by the APA or set forth herein.

M.    Morning Law, as Purchaser, is purchasing the assets in good faith and is a good faith purchaser within the meaning of Section 363(m) of the Bankruptcy Code and is, therefore, entitled to all of the protections afforded by that provision. Purchaser and its representatives have proceeded in good faith in all respects in connection with the Sale. The proposed Sale was conducted pursuant to commercially reasonable procedures, approved by this Bankruptcy Court, and constitutes reasonably equivalent value and reasonable market value for the property.  The APA was negotiated, proposed and entered in good faith, from arm's length bargaining positions and without collusion,

5

EXHIBIT 1, PAGE 18

and Purchaser is entitled to the protections of Section 363(m) of the Bankruptcy Code. None of Trustee, the Estate nor Purchaser has engaged in conduct that would cause or permit the APA to be avoided under Section 363(n) of the Bankruptcy Code or any other provision of the Bankruptcy Code or Bankruptcy Rules or any other provision of applicable law.

N.      Purchaser is not an "insider" as that term is defined in section 101(31) of the Bankruptcy Code. No common identity of directors or controlling stockholders exists between Purchaser and the Debtor.

O.      Trustee's decision to (i) enter into the APA, and (ii) perform under the APA, is a reasonable exercise of Trustee's sound business judgment consistent with his fiduciary duties and applicable law.

P.      The Sale is in the best interests of the Debtor, the Estate and creditors. Good and sufficient reasons for approval of the APA, and the Sale have been articulated, and the relief requested in the Motion and granted herein is in the best interest of the Debtor, the Estate, creditors and other parties in interest. Approval of the APA and consummation of the Sale and other transactions contemplated thereby at this time are in the best interests of the Debtor, the Estate, creditors and other parties in interest.

Q.      The consideration provided by Purchaser pursuant to the APA is fair and reasonable and constitutes fair market value. In addition, the consideration provided by Purchaser constitutes reasonably equivalent value or fair consideration under the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, the Bankruptcy Code, and the laws of the United States, the State of California, and any other state, territory, possession thereof or the District of Columbia, as applicable.

R.      Time is of the essence in effectuating the transactions contemplated by the APA and proceeding with the sale of the property without interruption. Based upon the record of the Sale, and for the reasons stated on the record at the hearing and in the Motion, cause exists to lift the stay to the extent necessary, as contemplated by Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062 and/or 9014, and permit the immediate effectiveness of this Order.

///

6

S.    The transfer of the assets to Purchaser under the APA will constitute a legal, valid, and effective transfer of the assets and will vest Purchaser with all right, title, and interest of the Debtor and the Estate (including Trustee on behalf of the Estate) to the property free and clear of all liens (as defined in Section 101(37) of the Bankruptcy Code, whether consensual, statutory, possessory, judicial or otherwise), claims (as defined in Section 101(5) of the Bankruptcy Code and including, without limitation, successor liability claims), encumbrances or other interests, of any kind or nature whatsoever, whether known or unknown, legal or equitable, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, asserted or unasserted, whether arising prior to or after the Petition Date, and whether imposed by agreement, understanding, law, equity or otherwise, accruing, arising or relating thereto, at any time prior to the date of closing of the APA ("Closing Date"), except as otherwise expressly provided in the APA, or as otherwise provided in this Order (all of such liens, claims, encumbrances and/or interests as to which the property is sold free and clear of under this Order, including, without limitation, those specifically listed in this Paragraph P below, are collectively referred to herein as the "Free and Clear Liens").  Without limiting the foregoing, the sale and transfer of title shall be free and clear of the following:

| Creditor | UCC No. | Status | Filing Date | Lapse Date | Scope | Claim Amount if Known |
|---|---|---|---|---|---|---|
| OHP – LPG, LP AUSTIN, TX | U230005834326 | ACTIVE | 1/25/2023 | 1/25/2028 | All Assets Filing | Proof of Claim No. 44 in the amount of at least $16,938,954.00 |
| C T CORPORATION SYSTEM, AS REPRESENTATIVE - GLENDALE, CA | U230006246724 | ACTIVE | 1/26/2023 | 1/26/2028 | All Assets Filing | |
| FIRST CORPORATE SOLUTIONS, AS REPRESENTATIVE - SACRAMENTO, CA | U230009059730 | ACTIVE | 2/2/2023 | 2/2/2028 | "All accounts of Debtor attached hereto as Exhibit A with all proceeds and all rights associated with such accounts." | |
| PROOFPOSITIVE LLC - SHERIDAN, WY | U230009725118 | ACTIVE | 2/9/2023 | 2/9/2028 | "$1,053,690.00 in Litigation Practice Group and associated Litigation Practice | |

7

EXHIBIT 1, PAGE 20

| Creditor | UCC No. | Status | Filing Date | Lapse Date | Scope | Claim Amount if Known |
|---|---|---|---|---|---|---|
| | | | | | Group Affiliate customer accounts receivables files." | |
| MC DVI FUND 2 LLC, MC DVI FUND 2 LLC, DEBT VALIDATION FUND II LLC- GLENVIEW, IL | U230009923531 | ACTIVE | 2/10/2023 | 2/10/2028 | All Assets Filing | |
| VENTURE PARTNERS LLC- SHERIDAN, WY | U230016377733 | ACTIVE | 3/9/2023 | 3/9/2028 | "Executed Accounts Receivables Purchase Agreements in the amount of $15,959,308.55 Debt Enrolled" | |
| CITY CAPITAL NY | U230018278331 | ACTIVE | 3/16/2023 | 3/16/2028 | All Assets Filing | Proof of Claim No. 89 filed in the amount of $2,950,000 |
| MNS FUNDING LLC - BROOKLYN, NY | U210050823723 | ACTIVE | 5/28/2021 | 5/28/2026 | "All accounts receivable, receipts, instruments, contract rights and other rights to receive the payment of money, patents, chattel paper, licenses, leases and general intangibles, whether now owned acquired or arising, and all of the debtor's books and records relating to any of the foregoing." | |
| CT CORPORATION SYSTEM) CORP. | U210050853928 | ACTIVE | 5/28/2021 | 5/28/2026 | All Assets Filing | |
| CORPORATION SERVICE COMPANY, AS REPRESENTATIVE - SPRINGFIELD, IL | U210052792122 | ACTIVE | 6/4/2021 | 6/4/2026 | All Assets Filing | |
| C T CORPORATION SYSTEM, AS REPRESENTATIVE - GLENDALE, CA | U210057670018 | ACTIVE | 6/17/2021 | 6/17/2026 | All Assets Filing | |

8

| Creditor | UCC No. | Status | Filing Date | Lapse Date | Scope | Claim Amount if Known |
|---|---|---|---|---|---|---|
| WORLD GLOBAL FUNDLLC - BROOKLYN, NY | U210059750525 | ACTIVE | 6/24/2021 | 6/24/2026 | "All accounts receivable, receipts, instruments, contract rights and other rights to receive the payment of money, patents, chattel paper, licenses, leases and general intangibles, whether now owned acquired or arising, and all of the debtor's books and records relating to any of the foregoing." | |
| C T CORPORATION SYSTEM, AS REPRESENTATIVE [unknown as to who they represent] | U210062497027 | ACTIVE | 7/6/2021 | 7/6/2026 | All Assets Filing | |
| BMF ADVANCE - BROOKLYN, NY | U210090322021 | ACTIVE | 10/4/2021 | 10/4/2026 | All Assets Filing | |
| DIVERSE CAPITAL | U210106788229 and U210085288536 | ACTIVE | 12/1/2021 | 12/1/2026 | "All accounts receivable, receipts, instruments, contract rights and other rights to receive the payment of money, patents chattel paper, licenses, leases and general intangibles, whether now owned acquired or arising, and all of debtor's books and records relating to any of the foregoing." | Debtor Scheduled at $1,224,810.00 on Schedule D |
| Fundura Capital Group 80 Broad Street, Suite 3303 New York, NY 10004 | | | | | | Debtor Scheduled at $2,100,000.00 on Schedule D |

Each holder of any Free and Clear Lien: (i) has, subject to the terms and conditions of this Order,

consented to the Sale or is deemed to have consented to the Sale, including by failing to object to

EXHIBIT 1, PAGE 22

the Motion or withdrawing any such objections, pursuant to Section 363(f)(2) of the Bankruptcy Code; (ii) could be compelled in a legal or equitable proceeding to accept money satisfaction of such lien, claim, encumbrance and/or interest; or (iii) otherwise falls within the provisions of Section 363(f) of the Bankruptcy Code, including, without limitation, that such liens, claims, and/or interests is/are in bona fide dispute.  All rights asserted by third parties related to their Liens and/or in the Debtors' receivables, including ownership rights by third parties, shall attach to the net proceeds of the Sale received by the Estate, with the same validity, force and effect which existed prior to the Closing of the Sale, subject to any rights, claims, objections, arguments and defenses Trustee, the Estate, the Debtor or any other party in interest, as applicable, may possess with respect thereto.

T.      The Bankruptcy Court has the inherent equitable power, under section 105(a) of the Bankruptcy Code, to order the reformation of the legal services agreements by and between the Debtor and Consumers to be consistent with applicable nonbankruptcy law.

U.      To the extent necessary, the requirements of Bankruptcy Code Section 365 have been satisfied, including, without limitation, Sections 365(b)(l) and 365(f)(2), in connection with the assumption and assignment, as applicable, of the contracts and leases and other agreements assumed as set forth in the APA.  The assumption and assignment of the executory contracts and unexpired leases and other agreements of the Debtor and/or the Estate, and the procedures relating thereto, as provided in the Sale and APA, are permissible and appropriate.  The terms of this Order and the APA, governing the procedures for assumption and assignment of executory contracts and unexpired leases, including the consumer contracts (as detailed in Paragraphs 14-22 below), satisfy the requirements of the Bankruptcy Code.

V.      The procedures to assume and assign the reformed LSAs (defined below) as set forth herein, and as may be further ordered by the Bankruptcy Court with recommendations from the Monitor (defined below), is appropriate and consistent with applicable law.

W.      APA Section 1(c), related to the executory contracts, provides that Purchaser may revise the schedule of Assumed Contracts until 90-days have elapsed from the Notice of Assumption and Assignment and Opt Out Notice. APA Section 2(a) provides that, within the first 90-days after Notice of Assumption and Assignment and Opt Out Notice, that if more than 5% of the Active

10

Executory Contracts opt out or are excluded, then Purchaser is entitled to a $400 per client reduction in the quarterly Fee due under the Agreement. The exclusion of contracts under 1(c) in the first 90-days affects the purchase price due to Seller and is fair and reasonable.

X.      The specific duties and mechanisms for support of a Monitor will be set forth in a separate Order of Appointment that shall be entered by the Bankruptcy Court.  The findings made by the Bankruptcy Court at the Hearing and as set forth in the Order Approving Motion of Trustee Richard A. Marshack for Entry of an Order (A) Approving Sale, Subject to Overbid, of Assets Free and Clear of all Liens, Claims, Encumbrances, and Interests Pursuant to 11 U.S.C. §363(b) and (B) Approving Assumption and Assignment of Certain Executory Contracts and Unexpired Lease and Other Agreements entered on July 22, 2023 [Dkt. No. 320] ("Findings") are incorporated here by this reference. Without limiting the foregoing, in the Findings the Court discussed a deposition of Morning Law's and Back-Up Bidders' principal.  See Docket No 320 at page 19, lines 8-15, Such depositions were held and concluded on July 26, 2023.

**NOW, THEREFORE, THE BANKRUPTCY COURT HEREBY ORDERS, ADJUDGES AND DECREES AS FOLLOWS:**

**Approval of the APA and Sale**

1.      The Motion and the relief requested therein is GRANTED and APPROVED, as set forth here and on the record during the Hearing, and in the Findings, which are incorporated here in its entirety, and the Sale and other transactions as contemplated thereby is granted and approved.

2.      All objections to the Motion and Sale, or the relief requested therein that have not been withdrawn, waived, or settled, and all reservations of rights included in such objections, are overruled on the merits.

3.      This Order is deemed to be the Sale Order as provided in the APA.

4.      The APA and all other ancillary documents, and all of the terms and conditions thereof, are authorized and approved pursuant to sections 105, 363, and 365 of the Bankruptcy Code and Rules 2002, 4001, 6004, 6006, and 9014 of the Bankruptcy Rules.

5.      Pursuant to Section 363(b) of the Bankruptcy Code, Trustee and the Estate are authorized, directed, and empowered to take any and all actions necessary or appropriate to:

11

EXHIBIT 1, PAGE 24

a.      Consummate, as set forth in the APA, the sale of executory client consumer contracts, goodwill, and proprietary DMS, among other assets to Purchaser.

b.      Close the sale as contemplated in the APA;

c.      Execute and deliver the assumption and assignment of the Assumed Contracts which, for purposes of this Order, shall mean those unexpired leases and executory contracts of the Debtors designated by Purchaser by delivering a Schedule of Assumed Contracts, as provided for in the APA. Further, Purchaser shall provide a written schedule of Excluded Executory Contracts, before the 90th day after entry of the Notice of Assumption and Assignment and Opt Out Notice, as provided for in the APA. Purchaser will pay any prepetition cure amounts associated with the Assumed Contracts. All other contracts are rejected;

d.      Morning Law shall comply with the Notice to Consumer procedures set and such Consumer Protections, as defined in Section 12(m) of the APA, and as may be modified by the Bankruptcy Court, including consent in accordance with California Model Rule 1.17(b)(1) and remedial measures, including the future performance requirements, as detailed in Section 12(j) of the APA.

e.      Execute and deliver, perform under, consummate, implement, and close fully the proposed sale transaction contemplated in the APA, together with all additional instruments and documents that may be reasonably necessary or mutually desirable to implement the APA and the sale including, without limitation, any other ancillary documents, or as may be reasonably necessary or appropriate to the performance of the obligations as contemplated by the APA and such other ancillary documents.  Morning Law, or its agents, agree to retain Eeyah Tan as Head of Operations, and agree to provide the Trustee with electronic access and all passwords related to the property acquired by Morning Law under the APA and related data bases and accounts, until such time as the APA is paid in full.

f.      Pursuant to the APA, Seller shall retain a purchase money security interest in the Assumed Contracts sold to Buyer, and a first-in-priority blanket lien in and against all Property (subordinate only to a lien, if any, created in securing financing of the Second Deposit) sold for so long as monetary and non-monetary obligations to the Estate remain outstanding. As a condition of

EXHIBIT 1, PAGE 25

Closing, Buyer shall execute any documents requested by Seller to perfect the subject security interest on all assets including Fees, accounts receivable, and inventory as further detailed in the APA. To the extent such documents are not presented prior to Closing, Buyer agrees to execute and deliver any further documentation necessary to perfect and maintain perfection of its security interests within five business days after presentation.

6.    Trustee's Sale is free and clear of all claims, liens and interests, with the exception of the mandatory implementation of the Consumer Protections. Purchaser and any affiliates and their respective predecessors, successors, assigns, members, partners, principals, directors, officers, and shareholders (or equivalent) shall have no obligations with respect to any liabilities of the Debtor other than as set forth in the APA.

7.    Any and all valid and perfected Free and Clear Liens, other than as set forth in the APA, shall attach to the proceeds from the Sale, upon receipt of such proceeds by Trustee in the order of priority, and with the same validity, force and effect which existed prior to the Closing of the Sale, subject to any rights, claims, objections, arguments, and defenses Trustee, the Estate, the Debtor or any other party in interest, as applicable, may possess with respect thereto.

8.    The terms and provisions of this Order shall be binding in all respects upon Purchaser, the Debtor, Trustee, and any subsequent trustees appointed pursuant to Chapter 11 or Chapter 7 of the Bankruptcy Code, the Estate, all creditors and interest holders of the Debtor and the Estate, and all interested parties, and their respective successors and assigns including, but not limited to, any creditor asserting a lien in the Property. The Debtor and its respective agents and representatives shall cooperate with respect to consummation of the sale and not take any action to interfere with the implementation or administration of the Sale.

9.    The APA was negotiated and entered into in good faith, in an arm's-length transaction, and Purchaser is acting in good faith within the meaning of 11 U.S.C. § 363(m) and without collusion or fraud. The terms and conditions of the Sale, including the total consideration to be realized by the Estate pursuant to the APA is fair and reasonable, and the Sale is in the best interest of the Estate and its creditors. Purchaser is not an "insider" as that term is defined in section 101(31) of the Bankruptcy Code.

EXHIBIT 1, PAGE 26

10.     Adequate notice of the Sale with reasonable opportunity to object was given including, without limitation, the APA, the Motion, the Notice of Sale, the hearing, and the procedure for assumption and assignment of the Assumed Contracts. The purchase and sale procedures are approved based on the exigent circumstances of the Estate related to the consumer contracts. No other or further notice of the Sale Motion, APA, the assumption and assignment of the Assumed Contracts, is necessary or shall be required, except as expressly provided otherwise.

**Reformation of Prepetition LSAs**

11.     All prepetition legal services agreements entered into by and between the Debtor and a Consumer (defined below) that are executory as of the date of the entry of this Order shall be and are reformed to comply with applicable nonbankruptcy law ("Reformed LSAs") and shall remain binding and in full force and effect with respect to all provisions that are consistent with applicable law.  As soon as practicable, Trustee shall file a notice of Reformed LSA setting forth the Reformed LSA in form and substance acceptable to the Monitor and the Committee. Such Reformed LSA shall constitute the terms of the legal services agreement by and between each Consumer and the Estate, subject to the assumption, assignment, and transfer procedures set forth herein.

**Appointment of the Monitor**

12.     Pursuant to the APA, the Bankruptcy Court shall appoint a monitor in this case ("Monitor") to strictly monitor Purchaser's compliance with generally understood ethical standards and certain consumer protection obligations.  The specific duties and mechanisms for support of a Monitor will be as set forth in a separate Order of Appointment consistent with the APA. Such proposed form of Order of Appointment will be in substance and form reasonably acceptable to Trustee and Committee.  For the avoidance of doubt and subject to a more definitive order, the proposed terms of the Monitor are based upon Judge Drain's appointment of a compliance Monitor as set forth in the Purdue Pharma L.P., et al., v, Commonwealth of Massachusetts (In re Purdue Pharma, L.P.), S.D.N.Y. Case No. 19-23649 (RDD) Adv. Pro. No. 19-08289 (Bankr. S.D.N.Y. 2019), and appointment in this case is pursuant to the Bankruptcy Court's power under 11 U.S.C. § 105(a) which has been consented to by Purchaser.

///

14

13.    The Bankruptcy Court approves the sections of the APA related to the Monitor, subject to the Order of Appointment.

**Procedures for the Transfer of Potentially Assumed Agreements**

**and Legal Services Agreements**

14.    Within 7 days after entry of this Order, Trustee shall file and serve a notice ("Cure Notice"), substantially in the form attached hereto as Exhibit "2," on all counterparties to executory contracts and unexpired leases that may potentially be assumed by Trustee and assigned to Purchaser ("Potentially Assumed Agreements").  The proposed form of Cure Notice is approved. The Cure Notice shall include an exhibit listing the counterparty to the Potentially Assumed Agreement, a general description of the Potentially Assumed Agreement, and any cure amount (if any) the Debtor's books and records indicate may be outstanding and payable to the counterparty to a Potentially Assumed Agreement to cure any defaults that exist under such Potentially Assumed Agreement if it is ultimately assumed by Trustee ("Cure Amounts").

15.    The inclusion of a contract, lease, or other agreement on the Cure Notice shall not constitute or be deemed a determination or admission by Trustee or the Debtor's estate or any other party in interest that such contract, lease, or other agreement is, in fact, an executory contract or unexpired lease within the meaning of the Bankruptcy Code, and any and all rights with respect thereto shall be reserved.

16.    Trustee is expressly permitted to serve the Cure Notice on consumer counterparties to legal services agreements with the Debtor through electronic means, including by providing notice utilizing the Debtor's proprietary software and service by such means shall be deemed to be appropriate and adequate under the circumstances.

17.    If any counterparty to a Potentially Assumed Agreement wishes to file an objection to the Cure Amount or any other objection to Trustee's assumption and assignment of a Potentially Assumed Agreement including, without limitation, an objection based on adequate assurance of future performance by Purchaser (collectively, an "Assumption Objection"), such counterparty must file the Assumption Objection with the Bankruptcy Court and serve it so as to be actually received by the Assumption Notice Parties (defined below) by no later than: (i) August 31, 2023 **at 5:00 p.m.**

15

EXHIBIT 1, PAGE 28

**(prevailing Pacific Time)**, (ii) such later date otherwise specified in the Cure Notice, or (iii) solely with respect to those counterparties to Potentially Assumed Agreements who are not initially served with a Cure Notice, seven (7) days after service by overnight mail of such Cure Notice ("Assumption Objection Deadline").

18.    Any Assumption Objection shall be served on the following parties ("Assumption Notice Parties") not later than the applicable Assumption Objection Deadline:  (i) general counsel to Trustee: Marshack Hays LLP, 870 Roosevelt, Irvine, California 92620 (Attn: D. Edward Hays (ehays@marshackhays.com)); (ii) special counsel to Trustee: Dinsmore & Shohl LLP, 655 West Broadway, Suite 800, San Diego, California 92101 (Attn: Christopher B. Ghio (christopher.ghio@dinsmore.com)); (iii) counsel the Official Committee of Unsecured Creditors: Fox Rothschild LLP, 10250 Constellation Boulevard, Suite 900, Los Angeles, California 90067 (Attn:   Keith   C.   Owens   (kowens@foxrothschild.com)  &   Nicholas   A.   Koffroth (nkoffroth@foxrothschild.com); (iv) counsel to Purchaser: Joshua Armstrong, Morning Law Group, P.C.,   2625   Townsgate   Road,   Suite   330,   Westlake   Village,   CA   91361 (jarmstrong@invictusadvisors.com) and Danning, Gill, Israel & Krasnoff, LLP, 1901 Avenue of the Stars, Suite 450, Los Angeles CA 90067-6006, Attn.: Zev Shechtman, Email: zs@DanningGill.com; (v) the proposed Monitor Nancy Rapoport, William S. Boyd School of Law, University of Nevada, Las Vegas, 4505 S. Maryland Parkway, Box 451003, Las Vegas, Nevada 89154-1003 (nancy.rapoport@unlv.edu); and (vi) the Office of the United States Trustee ("U.S. Trustee"): 411 West Fourth Street, Suite 7160, Santa Ana, CA 92701 (Attn: Kenneth M. Misken (Kenneth.M.Misken@usdoj.gov)).

19.    The Bankruptcy Court shall hold a hearing on September 14, 2023 **at 11:00 a.m. (prevailing Pacific Time) at 411 West Fourth Street, Santa Ana, CA 92701, in Courtroom 5C or via ZoomGov (if permitted by the Court)**, ("Assumption Hearing") on any Objections and make its determinations concerning, among other things, §§ 365(b) and (f), including the adequacy of any proposed Cure Amount and adequate assurance of future performance under the Potentially Assumed Agreements.  Parties wishing to make an appearance by Zoom for Government, a free service that provides audioconference capabilities, should review the Bankruptcy Court's tentative

EXHIBIT 1, PAGE 29

rulings page, which can be accessed through https://www.cacb.uscourts.gov/judges/honorable-scott-c-clarkson. Parties should also consult the NOTICE OF VIDEO AND TELEPHONIC APPEARANCE PROCEDURES FOR JUDGE SCOTT CLARKSON'S CASES for specific procedures and further information. The Bankruptcy Court shall enter an order or orders following the Assumption Hearing authorizing Trustee to assume Potentially Assumed Agreements and assign such Potentially Assumed Agreements to Purchaser ("Assumption Order").

20. Subject to the procedures for assumption and assignment of Potentially Assumed Agreements pursuant to § 365, the procedure to transfer legal services agreements to Purchaser, consistent will applicable law, is as follows:

i. Within seven (7) days of the closing of the Sale authorized by this Order, Purchaser to email the 90-day notice to consumers, pursuant to California Model Rule 1.17(b), substantially in the form attached hereto as Exhibit "3," which is hereby approved ("Consumer Notice"). Purchaser is expressly permitted to serve the Consumer Notice on consumer counterparties to legal services agreements with the Debtor ("Consumers") through electronic means, including by providing notice utilizing the Debtor's proprietary software and service by such means shall be deemed to be appropriate and adequate under the circumstances. The Trustee shall assist Purchaser as necessary to facilitate such notice.

ii. As set forth more fully therein, the Consumer Notice shall inform Consumers of their rights as required under California Model Rule 1.17(b). The Consumer Notice may also inform Consumers of: (i) the fact that their prepetition legal services agreement with the Debtor has been reformed, pursuant to this Order; (ii) their right to "opt-in" to a Purchaser LSA (defined below) with Purchaser; and (iii) the impact of (a) "opting-out" of their Reformed LSA, under California Model Rule 1.17(b), (b) "opting-in" to a Purchaser LSA, or (c) taking no action.

iii. Subject to the oversight of the Monitor, Purchaser may offer Consumers the option to enter into a Legal Services Agreement ("Purchaser LSA") in substantially the form attached hereto as Exhibit "4" (but subject to potential further modifications based upon the recommendations of the Monitor or order of this Bankruptcy Court), which may be provided to Consumers contemporaneously with the Consumer Notice, and which is hereby approved.

17

iv.     If the consumer client takes no action on the Consumer Notice within ninety (90) days from the date of service ("Consumer Notice Expiration Date"), the Consumer will be deemed to have consented to the assumption and assignment of its Reformed LSA to Purchaser subject to the assumption and assignment provisions set forth herein.

v.     Nothing contained in this Order shall permit the transfer to Purchaser Consumer of personally identifiable information, except for the following: the Consumer's name and contact information (emails, phone number, address) ("Consumer Information"). Notwithstanding anything in the APA to the contrary, Trustee shall not transfer Consumer Information to Purchaser until the earlier of the following: (a) the Consumer executes a Purchaser LSA; and (b) the occurrence of the Consumer Notice Expiration Date, with respect to Reformed LSAs for which the Consumer did not "opt-out" under California Model Rule 1.17(b), and entry of an Assumption Order with respect to such Reformed LSA.  Notwithstanding the foregoing, Purchaser may have access to the Consumer Information subject to the Interim Association Agreement to service the consumer legal file and provide services during the Gap Period (defined below) as set forth more fully herein.

21.    As set forth in the APA, Purchaser may revise the schedule of Potentially Assumed Agreements in its exercise of its' legal judgment if, on Purchaser's review, any of the Active Executory Contracts have been mishandled to the point where a cure is not possible prior to the Consumer Notice Expiration Date.  Purchaser's right to exclude Reformed LSAs from the Potentially Assumed Agreement list may reduce the purchase price due to the Estate; however, such right to exclude is fair and reasonable

22.    At Closing, Trustee's possession of the premises is quitclaimed and transferred to Purchaser without further court order, and without representation and warranty.

### Gap Period Operations and Interim Association Agreement

23.    Trustee and Purchaser shall enter into an association agreement ("Interim Association Agreement") between the Closing Date and the first date by which the following have occurred: (a) the Consumer Notice Expiration Date; and (b) entry of the Assumption Order ("Gap Period"). The Interim Association Agreement shall be in form and substance reasonably acceptable

18

1  to Trustee, Purchaser, and the Committee, and shall provide for Purchaser's management, operation,

2  funding, and sole and exclusive liability for satisfying the estate's obligations under the Reformed

3  LSAs during the Gap Period with such indemnification provisions in form and substance reasonably

4  acceptable to Trustee and Committee.  Purchaser's operations with respect to the Reformed LSAs

5  during the Gap Period shall be subject to the oversight of the Monitor. Upon the conclusion of the

6  Gap Period, Trustee and Committee, on the one hand, and Purchaser, on the other hand, shall

7  reconcile fees collected and held by Purchaser relative to the Reformed LSAs that were either

8  assumed and assigned, terminated, or rejected. To ensure the absence of doubt, until the moment of

9  Closing, Purchaser assumes the responsibilities for the consumer files and account until opt-out or

10 rejection, and shall indemnify, defend and hold Trustee, the Estate and Estate professionals harmless

11 from any and all claims related to Purchaser's operation of the Debtor's business and servicing of

12 the Reformed LSAs during or after the Gap Period.

13                                **Injunctive Relief**

14        24.      Pursuant to 11 U.S.C. § 105(a) and other applicable authorities, the Court

15 hereby enjoins any and all claims (as defined in Section 101(5) of the Bankruptcy Code and

16 including, without limitation, successor liability claims) against Purchaser arising from: (A) any and

17 all actions or omissions of the Debtor, the Trustee, the Estate, or anyone acting or purporting to act

18 for them, or   any affiliates thereof prior to the Closing Date; and (B) any and all actions omissions

19 or any other party relating to the Assumed Contracts arising prior to the Closing Date.

20                            **Miscellaneous Provisions**

21        25.      A certified copy of this Order may be filed with the appropriate clerk and/or recorded

22 with the county recorder to evidence conclusively the release or cancellation of the claims, liens,

23 and interests as set forth in this Order.

24        26.      This Order may be presented to and shall be binding upon and govern the acts of all

25 persons and entities, including, without limitation, all filing agents, filing officers, title agents, title

26 companies, escrow agents, recorders of mortgages, recorders of deeds, registrars of deeds,

27 administrative agencies, federal, state and local governmental agencies or departments, secretaries

28 of state, federal and local officials, and all other persons and entities who may be required by

EXHIBIT 1, PAGE 32

operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any property; and directs each of the foregoing persons and entities to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the APA.

27.    The failure to specifically include any particular provision of the APA in this Order does not diminish or impair the effectiveness of such provision, it being the intent of the Bankruptcy Court that the APA is authorized and approved in its entirety.

28.    To the extent that this Order is inconsistent with any prior order or pleading, the terms of this Order shall govern.  To the extent the terms of this Order are inconsistent with the terms of the APA, the terms of this Order shall govern.

29.    This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).  The fourteen (14) day stay period set forth in Federal Rule of Bankruptcy Procedure 6004(h) is waived; and notwithstanding Federal Rule of Bankruptcy Procedure 6004(h), this Order shall be immediately effective and enforceable upon its entry and there shall be no stay of this Order. In the absence of any person or entity obtaining a stay pending appeal of this Order, Trustee, the Estate and Purchaser are free to close the sale under the APA at any time, subject to the terms of the APA.

30.    The Bankruptcy Court has jurisdiction over the Sale and APA pursuant to 28 U.S.C §§ 157 and 1334 and may enter a final order on the Sale consistent with Article III of the United States Constitution. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue in this district is proper under 28 U.S.C. § 1408 and 1409. The Bankruptcy Court retains jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and the APA, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which Trustee or the Estate are a party or which will be assigned by the Estate to Purchaser, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale.  The Bankruptcy Court hereby also retains jurisdiction over any matter or dispute arising from or relating to the implementation of this Order.  Without

EXHIBIT 1, PAGE 33

limiting the foregoing, the Bankruptcy Court retains jurisdiction, pursuant to its statutory powers under 28 U.S.C. § 157(b)(2), to, among other things, interpret, implement, and enforce the terms and provisions of this Order, the APA, all amendments thereto and any waivers and consents thereunder and any documents executed in connection therewith to which Trustee is a party, including, but not limited to, retaining jurisdiction to: (a) compel delivery of the assets to Purchaser; (b) interpret, implement and enforce the provisions of this Order and any related order; (c) determine any challenge to the sale and/or the conduct of the sale hearing; (d) protect Purchaser against any liens, claims, encumbrances and interests in the assets as to which is sold free and clear of under this Order;(e) authorize any ambiguous retention or disbursements subject to the Escrow Holder's Account; (f) compel compliance with the Consumer Protections, as further detailed in the APA; and (g) any determine disputes related to the APA or this Order.

31.     Purchaser shall (1) be subject to the jurisdiction of this Court, which includes all civil contempt liability arising from violation of this Order or the APA or federal or state (arising from any state) consumer protection statutes and regulations, as well as any and all issues related to the Monitor and/or monitoring of the Purchaser, as addressed and consented to in Court and in accordance with the Order, the APA, any plan of reorganization and 28 U.S.C. Section 1334(b); (2) not sell or transfer any assets, whether sold outright or by licensee, lease, or contract, or otherwise, sold under the APA or this Order without further order of the Court, and (3) comply with all applicable federal and state(s) statutory and legal requirements including the debt resolution, privacy, data breach notification, data disposal, and cybersecurity laws and laws prohibiting unfair, deceptive or abusive practices 'UDAP", "do-not-track", "do-not-call" and "no spam" laws, with respect to all future operations of the business (and not just the consumer contracts transferred) until the last remaining client/customer/consumer contract being transferred in the sale has been concluded.

32.     The findings of fact and conclusions of law set forth herein and at Sale hearing shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, as made applicable here by Bankruptcy Rule 9014, and the findings and conclusions made at the Sale hearing
///

21

EXHIBIT 1, PAGE 34

1  are incorporated herein by reference. To the extent any finding of fact shall be determined to be a

2  conclusion of law, it shall be so deemed, and vice versa.

3      33.    The Backup Bid shall remain open, irrevocable and binding on the Backup Bidder

4  until the closing of the Sale to Morning Law.  If Morning Law fails to close for any reason and

5  Trustee notifies the Backup Bidder that Trustee has elected to sell the assets to the Backup Bidder,

6  then the Backup Bidder shall close the Sale with no contingencies whatsoever within two (2)

7  business days of receipt of written notice from Trustee of such election (subject to extension in

8  Trustee's sole discretion).  In the event Trustee determines to close the Sale with the Backup Bidder,

9  all relevant findings of fact, conclusions of law and other provisions of this Order shall be deemed

10  to apply to the Sale to the Backup Bidder as the replaced "Purchaser" without further order of the

11  Bankruptcy Court; provided, Trustee or the Backup Bidder may in their discretion seek a

12  supplemental order or an amendment to this Order with respect to the foregoing. Trustee and Backup

13  Bidder may modify the final form of the APA to conform to its purchase (as approved as the Backup

14  Bid) to effectuate the Sale, if applicable.

15      34.    In the event any given qualified bidder is not the successful bidder, nor a back-up

16  bidder, their deposit, shall be returned as soon as possible after the conclusion of the hearing, at the

17  discretion of Trustee.

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

EXHIBIT 1, PAGE 35

35.     Upon the Closing of the Sale to Morning Law, Backup Bidder's deposit shall be returned as soon as possible, at the discretion of Trustee.

36.     To the extent exhibits to, or other documents contemplated in, this Sale Order are not complete at the time of entry of this Sale Order, the Trustee and Purchaser shall submit amended documents, and may lodge an amended order, or supplements thereto, as necessary and appropriate to consummate the transaction.

# # #

Date: August 2, 2023

Scott C. Clarkson
United States Bankruptcy Judge

23

**EXHIBIT "1"**

**AGREEMENT OF PURCHASE AND SALE**

**AND**
**JOINT ESCROW INSTRUCTIONS**

# AGREEMENT OF PURCHASE AND SALE

## AND

## <u>JOINT ESCROW INSTRUCTIONS</u>

[TRUSTEE ACCOUNT]                    Escrow No.:
                                     Escrow Officer:
                                     Title Order No.:
("Escrow Holder")                    Title Officer:

THIS AGREEMENT OF PURCHASE AND SALE AND JOINT ESCROW INSTRUCTIONS ("<u>Agreement</u>"), dated as of August __ 2023 ("<u>Effective Date</u>"), is made by and between, Richard A. Marshack, solely in his capacity as the duly appointed and acting Chapter 11 Trustee ("<u>Trustee</u>") in the Bankruptcy Case (as defined below) of Debtor (as defined below) ("<u>Seller</u>"), and Morning Law Group, P.C., as Buyer ("<u>Buyer</u>" with any designation requiring mutual written agreement and Bankruptcy Court approval), with reference to the following:

## <u>RECITALS</u>

**A.**     On March 20, 2023 ("<u>Petition Date</u>"), Litigation Practice Group, PC, a California professional corporation ("<u>Debtor</u>"), filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code in the United States Bankruptcy Court for the Central District of California, Case No. 8:23-bk-10571-SC ("<u>Bankruptcy Case</u>").

**B.**     On May 4, 2023, an Order Directing the United States Trustee to Appoint Chapter 11 Trustee was entered whereby the Court, as further set forth therein, approved the appointment of a Chapter 11 trustee in the Bankruptcy Case. On or about May 8, 2023, the Trustee filed the Application for Order Approving Appointment of Chapter 11 Trustee and, on the same day, the Bankruptcy Court approved the appointment of the Trustee as the Chapter 11 Trustee in the Bankruptcy Case.

**C.**     One June 23, 2023, the Office of the United States Trustee appointed [Docket No. 134] an Official Committee of Unsecured Creditors (the "<u>Committee</u>") in the Bankruptcy Case. On June 29, 2023, the Office of the United States Trustee amended [Docket No. 157] the membership of the Committee.

**D.**     The bankruptcy estate ("<u>Estate</u>") of Debtor is the owner of certain personal property leases, personal property, receivables, prepayments, legal service agreements, intellectual property, permits, licenses, books and files, and various other assets and rights (as defined in Section 1(a), the "<u>Property</u>").

**E.**     Seller desires to sell all of the Estate's right, title, and interest in and to the Property, whatever that may be, AS IS, WHERE-IS, WITHOUT REPRESENTATIONS OR WARRANTY,

EXHIBIT "1"
Page 25

EXHIBIT 1, PAGE 38

and in its PRESENT condition to Buyer, and Buyer desires to purchase all of the Estate's right, title, and interest in and to the Property upon the terms and subject to the conditions hereinafter set forth and in the Sale Order (as defined herein).

**F.**    Seller has filed with the Bankruptcy Court, the Expedited Motion of Trustee Richard A. Marshack for Entry of (I) an Order (A) Approving Sale of Assets Free and Clear of all Liens, Claims, Encumbrances and Interests Pursuant to 11 U.S.C. 363(b) and (II) Approving Assumption and Assignment of Certain Executory Contracts and Unexpired Leases and Other Agreements; Declaration of Richard A. Marshack in Support Thereof ("Sale Motion"). This Agreement is subject to entry by the Bankruptcy Court of an order ("Sale Order") approving the sale to the Buyer A true and accurate copy of the proposed Sale Order is attached as Exhibit "A." The Sale Order has not yet been entered by the Bankruptcy Court.

## AGREEMENTS

**NOW THEREFORE,** in consideration of the mutual covenants and agreements herein contained, including the above Recitals, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Seller and Buyer agree, subject to the Sale Order becoming final, that the terms and conditions of this Agreement and the instructions to Escrow Holder with regard to the escrow to be created as set forth below ("Escrow") are as follows:

**1.**    **Purchase and Sale.** Subject to the entry of the Sale Order, Seller agrees to sell, transfer, and convey to Buyer, and Buyer agrees to purchase from Seller, all of Seller's and the Estate's right, title, and interest in and to the Property, whatever that may be, AS IS, WHERE-IS, WITHOUT REPRESENTATION OR WARRANTY, and in its PRESENT condition. **Except as otherwise specifically set forth herein, Buyer is not assuming any of Seller's or Debtor's liabilities.**

**(a)**    The Property shall consist of all of Seller's and the Estate's right, title, and interest in and to the following property AS IS, WHERE IS, WITHOUT REPRESENTATION OR WARRANTY, and in its PRESENT condition (collectively, "Property"). Seller makes absolutely no representations or warranties of any kind whatsoever concerning the Property, except for the representations expressly set forth in this Agreement. Buyer understands the condition of the Property and is not relying on any representation from Seller or any other person or entity except for the representations, if any, expressly set forth in this Agreement:

**(1)**    The Estate's interest in personal property leases only as identified on Exhibit "A-1" ("Leases");

**(2)**    The Estate's interest in equipment and furniture only as identified on Exhibit "A-2" ("Personal Property");

**(3)**    The Estate's interest in certain consumer client-related accounts receivable and notes receivable only as identified on Exhibit "A-3" (the "Receivables"). These generally consist of approximately 22,000 active paying files. These will be defined as "Active Executory Contracts" in this Agreement. For avoidance of doubt, the Receivables are only those that come due, or are paid, on or after the Closing date not otherwise paid by clients prior to Closing as of 5:00 p.m. PT

on the Closing date that arise from, relate to, or are generated as a result of, the assumption, assignment and/or reformation of the consumer client LSAs (defined below) and the underlying obligation to deliver services including legal services and for which such services were actually delivered, by or for Debtor and any alleged transferee of such files including, but not limited to: Phoenix Law, PC, and Oakstone Law Group, PC. The sale of such Receivables shall comply with all applicable laws including the notice to client requirements applicable to the sale of a law firm, as further described below. Failure to transfer any such Receivables because of the refusal of one or more clients to consent to the transfer, assumption, assignment and/or reformation of any LSAs shall not represent a condition precedent to Buyer's performance of its obligations, or otherwise permit Buyer to terminate this Agreement;

       **(4)**     The Estate's interest in prepaid expenses, deposits, and advances only as identified on Exhibit "A-4" ("Prepayments"). The Prepayments specifically do not include any funds received by the Debtor or Seller prior to the Closing Date from any source including but not limited to ACH processing of consumer client accounts pursuant to a legal services agreement entered into by a consumer client and the Debtor ("LSA" and collectively, the LSAs");

       **(5)**     The Estate's interest in the LSAs only as identified on Exhibit "A-5" subject to the consumer clients' right to opt out of the assumption, assignment and transfer of their respective LSAs to Buyer by serving a timely Opt-Out Notice as set forth herein and in the Sale Order. The inability to transfer any Property or LSA to Buyer because of the refusal of one or more clients to: (i) consent to the transfer of their file to Buyer by serving an Opt-Out Notice; or (ii) sign an amended LSA with Buyer in the form attached as Exhibit "A-5" ("Modified LSA") shall not represent a condition precedent to Buyer's performance of its obligations, or otherwise permit Buyer to terminate this Agreement;

       **(6)**     The Estate's interest in the intellectual property owned including, but not limited to, patents, copyrights, trademarks, trade secrets, telephone numbers, data, and the server on which such intellectual property is stored and maintained, and any and all logins and related passwords ("Intellectual Property"), including, without limitation, Intellectual Property as identified on Exhibit "A-6." Buyer agrees to provide Seller and his agents with any data, documents, or electronic records or files on purchased computers and equipment within two business days after request, which request shall be made via email to Buyer and Buyer's attorneys. This shall include logins and passwords for e-mail and other outside accounts used by Seller which shall be provided to Buyer by the Closing Date, or as soon thereafter as available to the Seller. An agreement as to what constitutes material covered by this Section 1(a)(6) is a material term of this Agreement and is subject to an express contingency removal;

       **(7)**     The Estate's interest in the pending applications, authorizations, and licenses relating to the Property including, but not limited to the agreements in connection with administrative, promotion, advertising, and marketing services related to destination management services provided as a marketing cooperative (inasmuch as same are terminable in the event of a sale of the assets to a "competitor" these do not appear to have significant value) only as identified on Exhibit "A-7" (collectively, the Assumed Permits"). Seller's obligation to transfer any Assumed Permits is to the extent assignable or transferable in accordance with the terms and conditions of such permits and/or pending applications therefore or applicable law;

**(8)**    The Estate's interest in debtor's proprietary CRM database, Luna, to the extent such transfer does not violate any laws, copyrights, licenses, and/or trademarks, to which Seller makes no representations or warranties and all books, files, documents, and records, electronic or otherwise, including without limitation information stored on CRM databases Debt Pay Pro and Luna ("CRM Databases"), relating to the Property sold pursuant to this Agreement (provided, however, Buyer will provide Seller with a login and password and other reasonable access to such documents and records during the two-year period following Closing) (collectively, the "Books and Records"), only as identified on Exhibit "A-8;"

**(9)**    The Estate's interest in the assets, properties, and rights identified in due diligence and only as identified on Exhibit "A-9" ("Later Identified Assets"); and,

**(10)**    The Estate's interest in those executory contracts and unexpired leases and other related agreements of Debtor and/or the Estate (collectively, "Executory Contracts") only as identified on Exhibit "A-10" ("Schedule of Assumed Contracts"), as such may be amended from time to time, all subject to Section 1(c) below, and with a specific designation of such active executory contracts ("Active Executory Contracts") and inactive executory contracts ("Inactive Executory Contracts" and collectively with the Active Executory Contracts, "Assumed Contracts") to the extent assignable or transferable in accordance with the terms and conditions of such executory contracts and unexpired leases and other related agreements or applicable law; provided, however, that any Assumed Contracts that contain provisions that violate applicable federal or state law including, without limitation, the applicable rules of professional conduct governing the practice of law, and to the extent applicable, if ever, the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), the Telemarketing Sales Rule, 16 C.F.R. Part 310 (the "TSR"), and the Credit Repair Organizations Act, 15 U.S.C. § 1679 (the "CROA"), will be reformed by the Bankruptcy Court to comply with appliable law. To the extent the Schedule of Assumed Contracts conflicts with the aforementioned final schedules, the Schedule of Assumed Contracts shall control. Seller makes no representations or warranties as any of the Assumed Contracts which will be assigned as-is, where-is, and without any representations or warranties. Buyer acknowledges and represents that Buyer, by and through its agents and representatives, reviewed and/or had access to documents and information, including but not limited to the Executory Contracts prior to executing this Agreement. From and after entry of the Sale Order, Buyer shall service and promptly perform all Assumed Contracts in accordance with the Interim Association Agreement (as defined in the Sale Order) until such time as a consumer client serves an Opt-Out Notice, a consumer client executed a Modified LSA, or Buyer removes an LSA from the Schedule of Assumed Contracts.  Buyer shall perform all services to consumer clients at no cost to the Estate in compliance with applicable law, and shall indemnify, defend and hold the Trustee, the Debtor's Estate, and all professionals and agents employed by the Trustee or the bankruptcy estate from any claims that arise from Buyer's servicing of such LSAs;

**(11)**    All software licenses and access are included in the sale and will be immediately provided to Buyer on or before the Closing Date;

**(12)**    On or before the Closing Date, Seller shall coordinate with Buyer to turn over access to, custody and control of the ACH payment processing portal(s) utilized by Seller including, but not limited to, FIS/Worldpay, subject to the Interim Association Agreement and Sale Order.

**(13)**      All documents and corporate records necessary, appropriate, or otherwise supporting the other Property acquired by Buyer.

**(b)**      For the avoidance of doubt, the following assets, properties, or rights of Debtor, Seller, and/or the Estate, whether or not relating to the Property, shall be expressly excluded from the Property (collectively, "Excluded Assets"):

**(1)**      All of Seller's and the Estate's cash on hand and/or in financial institutions (other than deposits included in Section 1(a)(4) above), deposit accounts, cash equivalents, surety bonds (or related deposits), marketable securities, bonds, and short-term investments, but excluding all cash proceeds from any accounts receivable paid by a client through an ACH transfer or otherwise after 5:00 p.m. PT on the Closing Date;

**(2)**      All rights relating to the overpayment or rebates of taxes paid, credits, or tax refunds, only to the extent they relate to tax periods through the Closing date;

**(3)**      All claims for insurance proceeds and any and all rights to and under any insurance policies in place prior to the Closing, without prejudice to Buyer's right to request from the Estate reimbursement from insurance proceeds for claims against Buyer;

**(4)**      All tax records and information, and all corporate books and records, board minutes, organizational documents including financial information not already disclosed; (provided, however, Seller shall provide Buyer reasonable access to such documents and records during the 2-year period following Closing);

**(5)**      All rights, suits, claims, choses in action, causes of action, defenses, rights of setoff, judgments, damages, rights to payment, litigation rights of any kind or nature whatsoever (whether arising in contract, tort or otherwise), or any equitable remedy for breach of performance if such breach gives rise to a right to payment ("Claims") (including, without limitation, Seller's right to prosecute avoidance actions under Chapter 5 of Title 11 of the United States Code) or any interest in any of the foregoing, except to the extent that Buyer may require such rights to defend any claims brought against Buyer, in which case Buyer and Seller shall have joint rights therein;

**(6)**      All real property leases of any kind for any location of the Debtor unless specifically requested by Buyer prior to Closing and, if requested and agreed to by Seller, Buyer will be liable for all cure amounts and all other payments, and liabilities not disclaimed by the Sale Order, arising under such lease from and after closing and notwithstanding anything in this subparagraph, under no circumstances shall any such Buyer request, or Seller's response to said request, result in the termination of this Agreement

**(7)**      All Executory Contracts which are not Assumed Contracts, including those listed as Rejected Contracts as of the date that is the 90th day after the Notice of Assumption and Assignment and Opt Out Notice ("Excluded Contracts");

**(8)**      All of Seller's or the Estate's claims, causes of action, rights of setoff, and rights of recovery, except with respect to claims that arise post-Closing and relate to property acquired by Buyer;

(9)     Seller's rights under this Agreement and all documents expressly required or contemplated hereunder and in the Sale Order (the "Transaction Documents");

(10)     All claims for refunds, and/or credits for taxes applicable to the period prior to the Closing;

(11)     All records relating to Excluded Assets, except that, upon Buyer's request, Seller shall provide complete copies thereof to Buyer;

(12)     All personnel records and other records that Debtor or Seller is required by law to retain in its possession and any retained copies of any record or document included in the Property (collectively, "Retained Records"), except that, upon Buyer's request, Seller shall provide complete copies thereof to Buyer;

(13)     All actions or causes of action arising in favor of Seller, if arising before the Closing Date, or that are property of the Estate pursuant to the Bankruptcy Code, including all preference, avoidance, and/or similar other rights, claims, and actions of Debtor, Seller, and/or the Estate including, without limitation, any such rights, claims, and actions arising under Chapter 5 of Title 11 of the United State Code, except to the extent that Buyer may require such rights to defend any claims brought against Buyer, in which case Buyer and Seller shall have joint rights therein;

(14)     Those items excluded pursuant to the provisions of Section 1(a) above.

(15)     All records, writings, and other items that are protected from discovery by the attorney-client privilege, the attorney work product doctrine or any other cognizable privilege or protection except to the extent necessary, permitted, consented to, and/or authorized to effectuate the transfer of Contracts and/or Assumed Contracts and other Property pursuant to the foregoing terms of this Agreement; and

(16)     All rights, claims, offsets, credits, causes of action, defenses, counterclaims, affirmative defenses, rights of setoff, and/or avoidance actions with respect to or relating to any liens, claims, encumbrances or interests against, in, with respect to or relating to the Property held by any person and including, without limitation, any claims relating to claims or liens of  Tony Diab, Rosa Bianca Loli, Lisa Cohen, Eng Taing, Heng Taing, and their affiliates and/or the related relief from stay proceeding(s), the appeal(s) relating thereto and/or the surety bonds and related deposits).

(17)     All claims, causes of actions, rights, offsets, defenses, counterclaims, defenses, avoidance actions, affirmative defenses that are Property of the Estate as defined by the case law and/or by the Bankruptcy Code and/or any other statutes or common law

(c)     Until 90 days have elapsed after the date of Notice of Assumption and Assignment and Opt Out Notice (the "Revision Period"), Buyer may revise **A-10 (Schedule of Assumed Contracts)** to include or exclude any Executory Contract as an Assumed Contract. To the extent that any cure amounts arise in connection with any Assumed Contract that remains an Assumed Contract per **A-10 (Schedule of Assumed Contracts)** after the date of Notice of Assumption and Assignment and Opt Out Notice, as to such obligation, Buyer shall be liable for satisfying in full any such prepetition cure amount and no other cure amounts. Buyer's exercise of

its exclusive and/or independent legal judgment in revising Schedule A-10 (the Schedule of Assumed Contracts) within 90-days of the date of Notice of Assumption and Assignment and Opt Out Notice shall not be construed as a breach of this Agreement.  Within 7 days after the earlier of (a) removal of an LSA from the Schedule of Assumed Contracts or (b) the last day of the Revision Period (or first business day thereafter), Buyer shall refund to Seller all ACH pulls received by Buyer from any consumer clients whose LSAs are removed from the Schedule of Assumed Contracts under this Section 1(c).

**(d)**    **Gap Period Operations and Interim Management Agreement**.  Buyer shall enter into an association agreement (the "Interim Association Agreement") with Seller and agree to be bound by its terms through the later of: (a) the Consumer Notice Expiration Date; and (b) entry of the Assumption Order (the "Gap Period") as set forth in the Sale Order. Buyer shall comply with all applicable laws and rules of professional conduct related to the transfer or termination of any LSAs being serviced by Buyer.

**(e)**    Without limiting the provisions of this Section 1 or any other provision of this Agreement, Buyer acknowledges that Seller is not selling or otherwise transferring to Buyer any property that Seller may not sell or transfer under applicable law including, without limitation, any such property the sale, transfer, or use of which is restricted under applicable licensing, copyright, patent, trademark, or other similar laws or which may not be transferred without the consent of a third party (including any licensor), and the use, disposition, sale, or disposition of certain of the Property by Buyer may be limited as a result

**(f)**    Buyer assumes responsibility for obtaining all required licenses, copyrights, patents trademarks, permits and/or other agreements and/or rights as may be required so that Buyer may lawfully use, sell, operate, or dispose of the Property and/or businesses thereon.

**2.**    **Purchase Price; Deposit; Payment of Purchase Price; Assumption of Liability.**

(a)    The aggregate purchase price ("Purchase Price") for the Property shall be the sum of Five Million Five Hundred Thousand Dollars ($5,500,000), to be paid as follows: (i) an initial deposit of Five Hundred Thousand dollars ($500,000) (the "Initial Deposit"), the receipt of which from Resolution Ventures, LLC on behalf of Buyer is hereby acknowledged by Seller; (ii) the balance of Five Million dollars ($5,000,000) (the "Second Deposit," together with the Initial Deposit, the "Deposit")) shall be due within 72 hours after entry of Sale Order. The Buyer shall provide proof of funds to the Trustee for the Second Deposit on or before August 1, 2023, regardless of the status of entry of the Sale Order.

(b)    In additional to the foregoing, Buyer shall pay a fee equal to: (a) fifty percent (50%) of all amounts collected by Buyer on Active Executory Contracts (defined above) from and after the Closing, plus (b) forty percent (40%) of all amounts collected by Buyer on Inactive Executory Contracts (defined above), each calculated on a quarterly basis, (subsections (a) and (b) collectively, the "Fee"), and paid into the Escrow Holder's Account within 15 days of the end of each fiscal quarter (March 31, June 30, September 30, and December 31). The quarterly payments for the Fee shall commence once the $5,500,000 in loans obtained by Buyer to pay the Purchase Price have been fully paid pursuant to the terms of the loans; provided, however, that Buyer's ability to obtain any loans is not a condition precedent to Closing under this Agreement. There shall be no setoffs or offsets against the Fee unless otherwise provided herein or ordered by the Court. This provision shall not be construed to interfere with Buyer's custody and/or control over the disposition of the amounts

received, post-Closing, from the Active Executory Contracts or Inactive Executory Contracts in accordance with the other provisions of this Agreement.

If Buyer sells, transfers, or assigns any Assumed Contracts, the buyer, transferee, or assignee shall take such Assumed Contract subject to this Agreement and this Section 2(a). Any such sale, transfer or assignment must be made with approval from the Bankruptcy Court.

Prior to Closing, the Buyer shall have full inspection of and access rights to the Active Executory Contracts. If, in the 90-day period following the Notice of Assumption and Assignment and Opt Out Notice, there is a 5% or greater variance below the number of Active Executory Contracts as of the Closing date, then the Fee shall be reduced by $400.00 for each Active Executory Contract cancelled in the 90-days after the Notice of Assumption and Assignment and Opt Out Notice. The reduction shall be offset against any Fees owed. No court order is needed for Buyer to apply this offset. This will be a self-executing provision.

The source of the Purchase Price shall not be from the ACH draws made post-petition and held by the Trustee, nor shall the Purchase Price derive from any proceeds related to the Assumed Contracts or related Property ("Source of Funds"), collected prior to Closing, or as further detailed in Section 12(h)-(i), nor shall the source of any funds for the purchase be from any person or entity known to have an affiliation with Tony Diab, or any of the Debtor's principals or insiders.

Seller shall retain a purchase money security interest in the Assumed Contracts sold to Buyer, and a first-in-priority blanket lien in and against all Property (subordinate only to a lien, if any, created in securing financing of the Second Deposit) sold for so long as monetary and non-monetary obligations to the Estate remain outstanding. As a condition of Closing, Buyer shall execute any documents requested by Seller to perfect the subject security interest on all assets including Fees, accounts receivable, and inventory as further detailed in Sections 7 and 8. To the extent such documents are not presented prior to Closing Buyer agrees to execute and deliver any further documentation necessary to perfect and maintain perfection of its security interests within five business days after presentation. The Sale Order shall specifically provide that Seller shall have a senior lien, subject to the limited exception above, on all property sold and all other assets of Buyer.

Seller shall seek injunctive relief in the Sale Order so that no creditor of Seller shall file a lawsuit against Buyer, as Seller's assignee or successor-in-interest, for its servicing and acquisition of the Active Executory Contracts or Inactive Executory Contracts for acts that occur prior to the date of the Closing except to the extent of any claims that may arise or exist solely related to Buyer's servicing or acquisition of the Active Executory Contracts or Inactive Executory Contracts under the Interim Association Agreement and applicable law. Buyer, Seller and the Committee shall agree upon that language.  This is a material term of this Agreement and if this language is not agreed upon or rejected by the Court the Buyer shall be entitled to a return of its Deposit.

Nothing herein shall prevent the Seller or any other estate representative including the Committee or Monitor (defined below) from retaining any and all right to make reasonable demands for accountings and audits with respect to the Assumed Contracts or related inquiries and Buyer therefore agrees to comply with requests of Seller and the Committee related to the same ("Audit Rights"). Further, Buyer shall make available to Seller's designee and the Committee's designee full access to all books and records of Buyer with no less than five business days' notice.

Buyer agrees that any dispute concerning the Audit Rights shall be exclusively determined by the Bankruptcy Court.

Except as otherwise set forth herein, the Deposit shall only be returned to Buyer if Trustee chooses not to execute the Agreement or if the Bankruptcy Court does not approve the proposed sale. The Deposit shall be held by Seller and shall be nonrefundable except as otherwise expressly provided in this Section 2(a)(1) and Section 13 below. The Deposit (without any interest thereon) shall be a component of the Purchase Price upon the Closing.

**BUYER AND SELLER AGREE THAT BASED UPON THE CIRCUMSTANCES NOW EXISTING, KNOWN OR UNKNOWN, IT WOULD BE IMPRACTICAL OR EXTREMELY DIFFICULT TO ESTABLISH SELLER'S DAMAGE BY REASON OF BUYER'S DEFAULT UNDER THIS AGREEMENT AND FAILURE TO CLOSE ESCROW. ACCORDINGLY, BUYER AND SELLER AGREE THAT IN THE EVENT OF A FAILURE TO CLOSE ESCROW AS A RESULT OF SECTION 13(a)(3) HEREUNDER, SUBJECT TO BUYER'S OBLIGATIONS TO PAY ALL COSTS AND EXPENSES AS DUE HEREUNDER, IT WOULD BE REASONABLE AT SUCH TIME TO AWARD SELLER, AS SELLER'S SOLE AND EXCLUSIVE REMEDY AT LAW, "LIQUIDATED DAMAGES" EQUAL TO THE AMOUNT REPRESENTED BY THE DEPOSIT. THEREFORE, IF THE PARTIES HERETO FAIL TO CLOSE ESCROW AS A RESULT OF SECTION 13(a)(3) HEREUNDER, SELLER SHALL RETAIN THE DEPOSIT AND/OR CANCEL THE ESCROW AS ITS SOLE AND EXCLUSIVE REMEDY THEREFOR, WHEREUPON (A) SELLER SHALL IMMEDIATELY BE ENTITLED TO RETAIN THE DEPOSIT, (B) SELLER SHALL BE RELIEVED FROM ALL OBLIGATIONS AND LIABILITIES HEREUNDER, AND, (C) PROMPTLY FOLLOWING ESCROW HOLDER'S RECEIPT OF SUCH INSTRUCTION TO CANCEL THE ESCROW, ESCROW HOLDER SHALL CANCEL THE ESCROW.**

_____          _____
Seller Initials                  Buyer Initials

Prior to the Closing, Buyer shall deposit or cause to be deposited with Escrow Holder, who shall be a party acceptable to both the Debtor and Buyer, in immediately available funds the Deposit plus Escrow Holder's estimate of Buyer's share of closing costs (including asset transfer taxes or other fees and expenses related to the asset purchase), pro-rations and charges payable pursuant to this Agreement.

(c)     Buyer consents to the appointment of a Monitor (defined below) to be agreed upon by Buyer, Seller and Committee and approved by the Bankruptcy Court, and will cooperate with and provide for assurances that may be reasonably required from a Monitor, as set forth in Section 2.2 of this Agreement, that the Buyer is in compliance with all applicable consumer protection laws, and that regulations are being followed from and after the Closing Date with respect to the Property.

Monitor shall have neither the right nor the standing to pursue any claims against the Seller. Nothing in this paragraph is intended to give anyone including the Monitor access to Buyer's current clients or unrelated files due to attorney client privilege and the privacy rights of those clients of the firm, that do not constitute the Property. The review by the Monitor shall be limited to the Active Executory Contracts and Inactive Executory Contracts being purchased hereunder.

(d)     The Purchase Price shall be allocated among the Property as determined by the Seller at Closing. The following assets shall, for purposes of this sale, be valued at $4,000,000.00 unless the Trustee otherwise designates another value: (i) Assumed Executory Contracts; (ii) CRM Databases; (iii) Goodwill, (iv) Intellectual Property; (v) equipment and furniture; and (vi) purchased assets that are priceless in value.

(e)     Upon entry of a Sale Order, Buyer agrees to fund payroll and operating expenses of the Debtor's business, and any such amount paid prior to the Closing Date shall be credited against the Purchase Price amount above the Deposit.

**2.1.     Compliance with California State Bar Rule 1.17 and other Applicable Law regarding Sale of a Law Practice**

**(a)     Buyer shall comply with California State Bar Rule 1.17(b), the ABA Model rules, and the laws of any state in which Buyer does business regarding the sale of a law practice. Buyer shall provide prompt notice to all clients that are parties to an Assumed Contract advising them of any such rights to opt out of any sale to Buyer in compliance with the laws of the applicable states.  Buyer shall approve and cooperate with the Seller and the Committee to have an agreed upon notice.**

**2.2     Court Appointed Monitor.**  Buyer and Seller acknowledge and agree and jointly request that the Bankruptcy Court order appointment of an independent Monitor ("Monitor") for a one-year period, subject to approval of the Committee, the terms of which appointment shall govern the Monitor's duties. The duties of the Monitor shall include but are not limited to: Buyer's compliance with all applicable federal and state laws and regulations related to the acquisition, handling and performance of the Active Executory Contracts and Inactive Executory Contracts that are subject to assumption, assignment and/or reformation pursuant to this Agreement including, but not limited to: (a) the Telemarketing Sales Rule, 16 C.F.R. § 310 et seq.; (b) Credit Repair Organization Act, 15 U.S.C. § 1679, et seq.; (c) California Business and Professions Code § 17200; (d) the California Rules of Professional Responsibility, Model Rules and any other rules, regulations or laws governing an attorney's practice of law; and (3) all other laws and regulations applicable to the operation of the business or the Purchased Assets, from and after the Closing Date with respect to the Property. Buyer and Seller further acknowledge and agree that the Monitor shall have the right, but not the obligation, to review and inspect all data relating or referring to Buyer's handling of the Active Executory Contracts and Inactive Executory Contracts which Monitor deems necessary for the performance of his or her duties, but that a random sampling of less than 1% of the Active Executory Contracts and Inactive Executory Contracts shall be sufficient. Upon consultation with the Committee and approval of the Bankruptcy Court, the Monitor is authorized to retain professionals to assist in the performance of his or her duties, subject to Bankruptcy Court approval.  Buyer and Seller further acknowledge and agree that the Monitor may seek further instruction and clarification of his or her duties from the Bankruptcy Court.  The Monitor's term shall be no greater than one (1) year unless otherwise ordered by the

Bankruptcy Court.  Monitor shall file status reports every four (4) months or as otherwise ordered by the Bankruptcy Court; provided that Monitor shall provide access to information and reports upon written request. Fees and expenses of the Monitor shall be paid by Seller, up to the first $100,000.00 (the "Initial Coverage"), upon proper application to the Bankruptcy Court, and additional fees and expenses of the Monitor shall be paid by Buyer, up to $100,000.00.  Any amounts in excess of $200,000.00 will be shared equally by the Buyer and Seller's bankruptcy estate.  The Court shall have retained jurisdiction to resolve any disputes over such fees and costs. Buyer agrees that any dispute concerning the fees and expenses of the Monitor shall be exclusively determined by the Bankruptcy Court. The Monitor's role shall be terminated not later than one year after the Closing Date, or such other date as ordered by the Court.

**2.3**    **Consumer Privacy Protection.**  In connection with the proposed sale, Buyer agrees to comply with all applicable provisions of state and federal law in the handling of consumer personal identifying information.  If ordered by the Bankruptcy Court within one year after the Closing Date, unless that period is extended by Court order,  Buyer and Seller agree that the Monitor shall be authorized to audit a random sampling of less than 1% of Active Executory Contracts and Inactive Executory Contracts for compliance with applicable consumer privacy protection laws in as part of the Monitor's duties pursuant to Section 2.2, above, including, but not limited to the provision for payment of the Monitor's fee, the first $100,000.00 of which shall be paid by Seller and additional fees and costs of Monitor to be paid by Buyer, up to $100,000.00.   Should the allowed fees of the Monitor exceed $200,000.00, the Buyer and Seller shall each pay 50% of the allowed fees in excess of this amount.

**3.**    **Opening of Escrow.** For purposes of this Agreement, Escrow shall be deemed opened on the Date the Seller files the Sale Motion and Escrow Holder has received Buyer's executed original of this Agreement from Buyer, and Escrow Holder shall notify Buyer and Seller, in writing, of the date Escrow is opened and provide each of the parties hereto with a full set of signature pages to this Agreement. Buyer and Seller agree to execute, deliver, and be bound by any reasonable and customary supplemental escrow instructions of Escrow Holder or other instruments as may reasonably be required by Escrow Holder in order to consummate the transactions contemplated by this Agreement; provided, however, that any such supplemental instructions shall not conflict with, amend, or supersede any portions of this Agreement or the Sale Order. To the extent of any inconsistency between the provisions of such supplemental instructions and the provisions of this Agreement and the Sale Order, the provisions of this Agreement and the Sale Order shall control. Buyer and Seller shall agree on mutually acceptable Escrow Holder.

**4.**    **Closing of Escrow.** The consummation of the contemplated transactions ("Closing") shall be held at the offices of the Escrow Holder on the date ("Closing Date") that is the one Business Day after occurrence of both (i) entry of the Sale Order and (ii) deposit and availability of funds from the Deposit in the Escrow Holder's Account; if the Court waives the 14-day stay set forth in Bankruptcy Rule 6004(h). If the Court does not waive the 14-day stay set forth in Bankruptcy Rule 6004(h), then Closing will occur on the fifteenth (15th) day after the entry in the Bankruptcy Case of the Sale Order, provided that the entirety of the Deposit has been made.  If the Closing Date does not occur by such date because of an uncured breach of this Agreement by Buyer, Seller shall have the right to extend the Closing Date; provided further, Buyer and Seller may mutually agree to extend the Closing Date in writing. At the Closing, Seller and Buyer shall perform the obligations set forth in, respectively, Sections 7 and 8 hereof, the performance of which obligations

shall be concurrent conditions; provided that any Transaction Documents or other documents requiring recording shall not be recorded until Escrow Holder has received in escrow the full amount of the Cash and executed Transaction Documents from Buyer, adjusted as set forth herein and approval from Seller and Buyer to proceed with the Closing. The Cash and all documents associated with the Purchase Price shall be deposited with the Escrow Holder.

5.      **Condition of the Property.**   Buyer acknowledges having had the opportunity to review and investigate, in its sole discretion, all aspects as to the condition of the Property, to the extent review and investigation is applicable including, without limitation, the suitability for Buyer's intended use. Notwithstanding the foregoing, Buyer expressly acknowledges and agrees that Buyer is purchasing the Property on an "as is, where is" basis and that neither Seller nor any Person has made any representations, warranties, covenants or agreements of whatsoever kind and nature concerning the Property, including, without limitation, its merchantability, condition or use, which are not expressly set forth herein. As such, there are no such conditions to Buyer's obligation to consummate the transactions contemplated herein. Buyer further acknowledges and agrees that Buyer has retained independent counsel and advisors, and has had the opportunity to review and discuss this Agreement and the other Transaction Document, and understands the terms and conditions set forth in the Transaction Documents and the status and condition of the Property, all prior to entering into this Agreement and the other Transaction Documents. To the extent that Buyer has not undertaken investigations or other forms of due diligence in regard to the condition of the Property, Buyer hereby expressly acknowledges that Buyer is relying solely on Buyer's own due diligence and investigations, and further expressly waives any and all claims and causes of action of whatsoever kind and nature as to any matters which may have been disclosed if such investigations were undertaken. Notwithstanding the foregoing, for the avoidance of doubt, Buyer is buying Seller's interests in the Property free and clear of all liens, claims, and interests.

**BUYER AGREES THAT SELLER SHALL HAVE NO LIABILITY OR OBLIGATION WHATSOEVER FOR ANY INACCURACY IN OR OMISSION FROM ANY REPORT FURNISHED TO BUYER, AND BUYER HAS CONDUCTED ITS OWN INVESTIGATION OF THE CONDITION OF THE PROPERTY TO THE EXTENT BUYER DEEMS SUCH AN INVESTIGATION TO BE NECESSARY OR APPROPRIATE.**

**Without limiting the foregoing provisions of this Section 5, Buyer expressly acknowledges and agrees that: THE PROPERTY IS BEING TRANSFERRED "AS IS" AND "WHERE IS;" BUYER AGREES TO ACQUIRE THE PROPERTY FROM SELLER "AS IS" AND "WHERE IS", AND ACKNOWLEDGES THAT SELLER MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND WHATSOEVER WITH RESPECT TO THE PROPERTY (INCLUDING AS TO THE ACTUAL NATURE, QUALITY, QUANTITY, OWNERSHIP, LOCATION OR VALUE), LIABILITIES, ASSUMED CONTRACTS OR ASSUMED LIABILITIES, EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO ANY REPRESENTATION OR WARRANTY REGARDING TITLE TO OR CONDITION OF THE PROPERTY, OR THE VALUE THEREOF, OR THE FITNESS, DESIRABILITY, OR MERCHANTABILITY THEREOF OR SUITABILITY THEREOF FOR ANY PARTICULAR PURPOSE, OR THE EXISTENCE OR AMOUNT OF ACCOUNTS, LIABILITIES, ASSUMED LIABILITIES, LIENS, CLAIMS OR ENCUMBRANCES. BUYER FURTHER ACKNOWLEDGES AND REPRESENTS THAT IT IS FULLY INFORMED AND**

**ADVISED WITH RESPECT TO THE PROPERTY, ASSUMED CONTRACTS, ASSUMED LIABILITIES AND OPERATIONS OF THE PROPERTY, IT HAS REVIEWED AND INSPECTED THE PROPERTY, HAS HAD THE OPPORTUNITY TO INSPECT THE BOOKS AND RECORDS RELATING TO THE PROPERTY AND THE PUBLIC FILING RECORDS AND ENTERS INTO THIS AGREEMENT AFTER INDEPENDENT INVESTIGATION OF THE FACTS AND CIRCUMSTANCES RELATING TO THE PROPERTY AND THE TRANSACTIONS DESCRIBED IN THIS AGREEMENT. BUYER FURTHER ACKNOWLEDGES THAT SELLER IS THE TRUSTEE APPOINTED IN THE BANKRUPTCY CASE AND HAS LITTLE OR NO INFORMATION RELATING TO THE PROPERTY AND MATTERS PERTAINING THERETO AND THAT ANY INFORMATION PROVIDED BY THE TRUSTEE OR HIS AGENTS OR REPRESENTATIVES IS BASED UPON INFORMATION AND BELIEF AS PROVIDED BY DEBTOR OR ITS REPRESENTATIVES OR AGENTS AND/OR MATTERS FILED IN THE BANKRUPTCY CASE BY OTHER PERSONS OR PUBLIC RECORDS, AND SELLER HAS NOT INDEPENDENTLY REVIEWED ANY SUCH INFORMATION FOR ACCURACY OR COMPLETENESS. SELLER HAS NO OBLIGATION OR LIABILITY WHATSOEVER WITH RESPECT TO ANY SEPARATE AGREEMENTS, INDEMNITIES, REPRESENTATIONS OR WARRANTIES ENTERED INTO BY BUYER WITH ANY OTHER PERSON.**

6.    **Conditions to Closing.**

(a)    **Conditions to Buyer's Obligations.** Buyer's obligation to consummate the transactions contemplated by this Agreement at the Closing is subject to the satisfaction of the following conditions, unless waived in writing by Seller after consultation with the Committee:

(1)    The Bankruptcy Court shall have entered the Sale Order, expressly approved by Buyer, which, among other things, approves and authorizes pursuant to applicable provisions of the Bankruptcy Code the sale and transfer of the Property to Buyer approved and enacted with all Property transferred free and clear of liens, liabilities, adverse claims of ownership, and other interests of any kind and nature, with such liens, liabilities, adverse claims of ownership and other interests, if any, to attach to the proceeds of the sale and provides (or related findings provide) a finding that Buyer is a good faith buyer of the Property under Section 363(m) of the Bankruptcy Code; and

(2)    Seller shall have delivered to or for the benefit of Buyer all of Seller's Deliverables (as defined at Section 7 below), in a manner acceptable to Buyer, and otherwise timely performed all of the obligations required by the terms of this Agreement. By way of illustration and not of limitation, Buyer expressly acknowledges and agrees that, except as expressly set forth in this Section 6(a), there are no "contingencies" to Closing, including, without limitation, no due diligence or financing contingency as a condition to Buyer's obligations hereunder.

(b)    **Conditions to Seller's Obligations.** Seller's obligation to consummate the transactions contemplated by this Agreement at the Closing is subject to the satisfaction of the following conditions for Seller's benefit (or Seller's waiver thereof, it being agreed that Seller may waive any or all of such conditions at his sole discretion):

(1)    The Bankruptcy Court shall have entered the Sale Order, which, among other things, approves and authorizes pursuant to applicable provisions of the Bankruptcy Code the sale and transfer of the Property to Buyer approved and enacted with all Property transferred free and clear of liens, liabilities, adverse claims of ownership, and other interests of any kind and nature, with such liens, liabilities, adverse claims of ownership and other interests, if any, to attach to the proceeds of the sale and provides (or related findings provide) a finding that Buyer is a good faith buyer of the Property under Section 363(m) of the Bankruptcy Code;

(2)    No stay or injunction is in effect under applicable law or court order of the Sale Order or otherwise restraining or prohibiting the consummation of the transactions contemplated by this Agreement; and

(3)    Buyer shall have delivered to or for the benefit of Seller all of the items as set forth in Section 8 below, and otherwise timely performed all of the obligations required by the terms of this Agreement to be performed by Buyer; and

(4)    Buyer shall execute an Interim Association Agreement.

**7.**    **Deposits by Seller**. At or prior to the Closing, Seller shall deposit or cause to be deposited with Escrow Holder the following documents and instruments ("Seller's Deliverables"), each of which shall have been duly executed and, where applicable, acknowledged and/or sworn on behalf of Seller and shall be dated as of the Closing Date:

**(a)**    An affidavit by Seller certifying that Seller is not a "foreign person" within the meaning of Section 1445 of the Internal Revenue Code of 1986, as amended, which affidavit shall be in such form as may be prescribed by federal regulations;

**(b)**    A duly executed California Form 593-C with respect to California withholding requirements;

**(c)**    A Bill of Sale, in a form approved by Buyer, the form of which is attached hereto and incorporated herein as Exhibit "D" ("Bill of Sale");

**(d)**    Any necessary security agreements, financing statements, etc. as applicable, pursuant to Section 2(a) (collectively, "Financial Documents");

**(e)**    A General Assignment and Assumption Agreement, ("Assumption Agreement"), to the extent necessary, and prepared or approved by Buyer;

**(f)**    Documentation related to the Consumer Protections, including consent protocol and Modified LSAs; and

**(g)**    Any other documents, certificates, instruments, and agreements reasonably necessary to consummate the sale of the Property as contemplated herein, including, but not limited to, registered Intellectual Property (including trademarks).

**8.**    **Deposits by Buyer.** At or prior to the Closing, (a) Buyer shall deposit or cause to be deposited with Escrow Holder the balance of the Deposit in immediately available funds, and (b) Buyer shall deliver for the benefit of Seller the following, each of which shall have been duly

executed and, where applicable, acknowledged and/or sworn on behalf of Buyer and shall be dated as of the Closing Date:

    **(a)**    The Assumption Agreement;

    **(b)**    Resolutions (in form and substance reasonable to Seller) from Buyer duly authorizing Buyer to enter into and perform its obligations under this Agreement and the other Transaction Documents; and

    **(c)**    Any other documents, instruments, certificates and agreements reasonably requested by Seller to consummate the sale of the Property as contemplated herein.

**9.**    **Taxes; Costs and Expenses.** The cost of all documentary transfer taxes and all taxes, fees, charges, costs, and liabilities due in connection with the sale of the Property (other than income taxes due by Seller in connection with said sale) shall be the obligation of and promptly paid by Buyer. The escrow fee of Escrow Holder shall be shared equally by Seller and Buyer. Buyer and Seller shall pay, respectively, the Escrow Holder's reasonable and customary charges to buyers and sellers for document drafting and miscellaneous charges, which charges shall be provided in advance and in writing by each of Buyer and Seller prior to the Closing.

**10.**    **Disbursements and Other Actions by Escrow Holder; Actions at Closing.**

    **(a)**    Upon the Closing, Escrow Holder shall promptly undertake all of the following in the manner indicated:

        **(1)**    **Closing Statement.** Escrow Holder shall generate and circulate to each of Buyer and Seller a written closing statement ("Closing Statement"), listing, among other things, the flow of funds, and require that each of Buyer and Seller execute and deliver said Closing Statement as a condition of Closing.

        **(2)**    **Funds.** Pursuant to the Closing Statement, and subject to limitations provided in Section 2(a)(1), disburse from funds deposited by Buyer with Escrow Holder towards payment of the Purchase Price to Seller and payment of expenses expressly agreed to by Seller pursuant to the terms and conditions hereof and set forth in the Closing Statement,

        **(3)**    Deliver to Buyer, Seller's signatures and duly executed documents, originals as necessary, with respect to the documents in Section 7 and to Seller, Buyer's signatures and duly executed documents, originals as necessary, with respect to the documents in Section 8.

    **(b)**    Except as otherwise provided herein, upon the Closing (and subject to satisfaction of all of Buyer's obligations in connection therewith), whatever interest the Estate and Seller has in the Property shall pass to Buyer, subject to the terms and conditions hereof.

**11.**    **Seller Affirmations.**

    **(a)**    Seller is not a "foreign person" within the meaning of Section 1445 of the Internal Revenue Code of 1986, as amended (i.e., Seller is not a non-resident alien, foreign corporation, foreign partnership, foreign trust or foreign estate as those terms are defined in the Code and regulations promulgated thereunder).

(b)    Seller's Estate will fund the costs, fees, and expenses related to any court-appointed Monitor for its services up to one hundred thousand dollars ($100,000.00) (the "Initial Coverage") and shall timely pay any other amounts required by Seller under section 2.2.

(c)    Seller's onsite agent Lori Ensley shall represent and warrant that the data being provided to Buyer has not been tampered with to the best of her knowledge since June 2, 2023 through the Closing Date.

(d)    Seller shall execute any and all documents reasonably requested by Buyer as necessary to close the sale and/or support, evidence or effectuate the transfers of any and all acquired Property and otherwise effectuate the transactions under this Agreement.

**12.    Buyer's Covenants, Representations and Warranties.** In    consideration    of    Seller entering into this Agreement and as an inducement to Seller to consummate the transactions contemplated herein, Buyer hereby makes the following representations and warranties to Seller as of the Effective Date of this Agreement:

(a)    Buyer is a professional corporation duly organized and validly existing under the laws of California and is in good standing in California and in every jurisdiction where Buyer practices law, and in which the failure to be in good standing may have a material adverse effect on Buyer, its business, and/or assets. Buyer has full organizational power and authority to enter into and execute this Agreement and the other Transaction Documents to which it is a party and the transactions contemplated hereby and thereby. This Agreement and such Transaction Documents and all transactions required hereunder and thereunder to be performed by Buyer have, subject to the Sale Order, been duly and validly authorized and approved by all necessary action on the part of Buyer. This Agreement and such other Transaction Documents have been duly and validly executed and delivered on behalf of Buyer by its duly authorized partners/ officers, as the case may be, and constitute the valid and legally binding obligations of Buyer and are enforceable, subject to the Sale Order and general equity principles, in accordance with their respective terms, except as enforceability may be limited by bankruptcy, insolvency, reorganization, or similar laws affecting the rights of creditors generally. Furthermore, the undersigned represents and warrants that he/she is duly authorized to execute and deliver this Agreement by and on behalf of Buyer. Buyer represents and warrants that it is not the subject of any disciplinary or regulatory investigations.

(b)    Neither the execution and delivery of this Agreement or such Transaction Documents, nor the consummation of the transactions hereby or thereby contemplated, will constitute a violation or breach of any provision of any contract or other instrument to which Buyer is a party or by which any of the assets of such Buyer may be affected or secured, or any order, writ, injunction, decree, statute, rule, or regulation to which Buyer is subject, or will result in an acceleration of any debt or the creation of any lien, charge, or encumbrance on any of the assets of Buyer which will prevent or interfere with the consummation of the transactions contemplated herein and in the other Transaction Documents, or which might be deemed to adversely affect Buyer's ability to fully and promptly perform its obligations hereunder or under the other Transaction Documents.

(c)    The execution and delivery by Buyer of this Agreement and the other Transaction Documents, and the consummation of the transactions contemplated hereby and thereby in

accordance with the Sale Order will not require the consent, approval or action of, or any filing with or notice to, any Person or any public, governmental, judicial, or regulatory authority, other than the Bankruptcy Court. There are no material actions, suits, claims, investigations, hearings, or proceedings of any type pending (or, to the knowledge of Buyer, threatened) whether at law or in equity, which will prevent the consummation of the transactions as contemplated herein or which might otherwise affect Buyer's ability to close the transactions contemplated herein and in the other Transaction Documents.

(d)    Buyer expressly acknowledges and agrees that Buyer has sufficient financial resources, including, without limitation, the necessary liquid funds, to promptly pay the balance of the Purchase Price and to pay and perform the Assumed Contracts and the Assumed Liabilities as and when due, and to consummate the transactions contemplated herein and in the other Transaction Documents, to assume and pay in full as due any claims, charges, expenses or liabilities due with respect to the Conditions of Title or otherwise arising in connection with the Assumed Contracts or any other Property, and to perform all of Buyer's obligations hereunder and under the other Transaction Documents. Furthermore, with respect to the Assumed Contracts, Buyer shall provide evidence demonstrating adequate assurance of the future performance of such Assumed Contracts as required by Sections 365(b)(1)(C) and/or 365(f)(2)(B) of the Bankruptcy Code, as applicable, and further agrees to comply with all applicable federal and state laws and regulations, which shall be subject to oversight by the Monitor as set forth herein.

(e)    There are no actions, suits, claims, investigations, hearings, or proceedings of any type pending (or, to the knowledge of Buyer, threatened), at law or in equity, that might affect Buyer's ability to close the transactions contemplated hereby.

**(f)    BY CLOSING THIS TRANSACTION, BUYER ACKNOWLEDGES TO SELLER THAT BUYER HAS HAD THE OPPORTUNITY TO CONDUCT PRIOR TO THE EFFECTIVE DATE AND WILL CONDUCT PRIOR TO THE CLOSING DATE SUCH INSPECTIONS AND INVESTIGATIONS OF THE PROPERTY AS BUYER DEEMS NECESSARY OR DESIRABLE TO SATISFY ITSELF AS TO THE PROPERTY AND ITS ACQUISITION THEREOF AND THE OBLIGATIONS IN CONNECTION THEREWITH. BUYER FURTHER WARRANTS AND REPRESENTS TO SELLER THAT BUYER WILL RELY SOLELY ON ITS OWN REVIEW AND OTHER INSPECTIONS AND INVESTIGATIONS IN THIS TRANSACTION AND NOT UPON ANY INFORMATION PROVIDED BY OR ON BEHALF OF SELLER, OR ITS REPRESENTATIVES OR ANY OTHER PERSON WITH RESPECT THERETO. BUYER HEREBY ASSUMES THE RISK ON ANY RELATED MATTERS AND EXPRESSLY ACKNOWLEDGES AND AGREES THAT IT HAS CONCLUDED ITS DUE DILIGENCE.**

(g)    Buyer represents and warrants that all materials submitted by Buyer, its Affiliates and its and their duly authorized representatives to Seller prior to the Effective Date in connection with Buyer, any such Affiliate, and its and their financial ability to consummate the transactions contemplated herein and in the other Transaction Documents (the "Bid Documentation") are true, correct, complete in all material respects and sets forth in a manner that is not misleading as of the Effective Date hereof and as of such date received by Seller through the Closing Date.

(h)    The Purchase Price consists of amounts which are not the Property as defined in Section 1(a) and therefore excludes any and all consumer payments held by Trustee on or before the Closing Date as a source of funds related to the Purchase Price; provided that Buyer shall be able to seek financing of the Second Deposit as set forth herein, provided further that the Buyer's ability to obtain financing shall not being a condition by Buyer to Closing.

(i)    Any subsequent amounts paid to Seller, including any Fee from Buyer or its transferee or assignee, shall not derive from any proceeds resulting from the Assumed Contracts or related Property.

(j)    Buyer represents and warrants that all LSA's presented to clients identified in the Assumed Executory Contracts and the implementation thereof will have been modified ("Modified LSA's") for compliance with the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), the Telemarketing Sales Rule, 16 C.F.R. Part 310 (the "TSR"), and to the extent applicable, if ever, the Credit Repair Organizations Act, 15 U.S.C. § 1679 (the "CROA"), as well as all applicable laws and regulations as well as any Order of the Bankruptcy Court.t

(k)    Buyer represents and warrants that the performance of the Modified LSA's will similarly comply with the TCPA, TSR, and to the extent applicable, if ever, the CROA, as well as all applicable federal and state laws and regulations as well as any Order of the U.S. Bankruptcy Court;

(l)    Under no circumstances shall an Assumed Contract be assigned to Buyer unless and until such LSAs comply with all applicable federal and state laws and regulations including, without limitation, the TCPA, TSR, and CROA.  Buyer is solely responsible for ensuring compliance with all applicable law, and consents to oversight by the court-appointed Monitor as set forth herein.

(m)    Buyer represents and warrants that it will cooperate with the requests, oversight, and inquiries of the court-appointed Monitor whose appointment shall be for a one (1) year term unless otherwise ordered by the Court, the Seller and the Committee, as further provided in the Sale Order;

(n)    Buyer represents and warrants that it will share in the costs, fees, and expenses related to the court-appointed Monitor as further provided in the Sale Order;

(o)    Buyer shall execute documentation related to the Consumer Protections, including consent protocol and Modified LSA's, as specified in subsections (h)-(n) (collectively, the "Consumer Protections");

(p)    Buyer covenants to provide profit and loss statements, balance sheets and other financial information in connection with the filing of the Sale Motion, as may be requested by Seller, Committee and Monitor from time to time, related to the Active Executory Contracts and Inactive Executory Contracts being purchased by Buyer;

(q)    Buyer covenants to provide Seller, Committee and Monitor with visibility into Buyer's ACH processing merchant account and related bank accounts, as well as customer relationship management software, such as Debt Pay Pro (or other similar software) for the purpose of monitoring Buyer's compliance with this Agreement as it relates to Active and Inactive

Executory Contracts it is purchasing.  In furtherance of this paragraph, Buyer covenants to provide any reports relating to the foregoing ACH merchant account, related bank accounts and customer relationship management software;

(r)    Buyer will maintain books and records the sufficiency of which will enable Seller to identify the following information:

(i)    Detailed calculation of any and all monies paid to Buyer from Seller related to this Agreement including

(a)    Details of any and all monies received in whatever form by Buyer from each client from all Active Executory Contracts and Inactive Executory Contracts including, but not necessarily limited to, client name, date received, amount, reference number, currency, remitting account, remitting accountholder name, etc.;

(b)    Details of the nature and application of each transaction described above; and

(c)    Detailed status and progress report of Buyer's work with regard to each client related to the Property.

(ii)    Such books and records must be maintained reasonably separate from Buyer's other operations such that Seller, the Committee and the Monitor can readily determine activity related to Clients.  Buyer shall have the right to inspect Seller's original, unaltered documentation other materials in Buyer's possession or under its control with respect to the subject matter and terms of this Agreement.  Such documentation may include, but is not necessarily limited to, bank statements, deposit slips, check registers, Client files, and information contained in Buyer's credit management software or other such electronic platform used by Buyer to service Clients.  Buyer agrees that it will maintain and preserve these books and records until such time that a final decree is obtained in the bankruptcy proceeding underlying this matter or as otherwise instructed by Seller.

(iii)    Buyer shall have the right to inspect, or have an agent, accountant, or other representative, inspect such books and records upon thirty days' notice.

(s)    Upon execution of an appropriate Non-Disclosure Agreement and waiver of all contingencies, Buyer shall have the right to manage, operate, and control all key personnel at the current law firms serving the receivables.  Buyer shall be given access to the firm's data bases, employees, software, and client management.

(t)    Upon Closing. Buyer shall be allowed to transition the Active Executory Contracts and Inactive Executory Contracts to its own employees and attorneys for servicing in coordination with the Seller's existing personnel.

**(u)**    Buyer shall not have any formal or informal business arrangements with Tony Diab or any other person or entity that is named as a defendant in the Adversary Proceeding during any time period for which a Fee is due to Seller under this Agreement.

**13.    Termination; Return of the Balance of the Deposit.**

**(a)**    This Agreement may be terminated at any time prior to the Closing as follows:

**(1)**    By mutual written consent of the parties;

**(2)**    By Seller, after consultation with the Committee, if Seller determines that proceeding with seeking Bankruptcy Court approval of this Agreement is not in the best interest of the Estate;

**(3)**    By Seller if Buyer breaches, in any material respect, its representations or warranties or fails to perform in any material respect its covenants or agreements set forth in this Agreement or in the other Transaction Documents, and such breach has not been waived in writing by the Seller, in consultation with the Committee;

**(4)**    By Seller or Buyer if the proposed sale is not approved by the Bankruptcy Court; and

**(5)**    By Buyer, if Seller breaches, in any material respect, its representations or warranties or fails to perform in any material respect its covenants or agreements set forth in this Agreement or in the other Transaction Documents;

**(b)**    Upon termination of this Agreement as set forth in Section 13(a)(3) or 13(a)(5) above, the non-breaching party shall retain any and all of its rights and remedies against the breaching party, subject to the provisions of Section 2, above relating to liquidated damages.

**(c)**    With respect to the Deposit:

**(1)**    Upon the termination of this Agreement by Seller pursuant to Section 13(a)(3) and written notice thereof to Buyer and Escrow Holder, Seller shall retain the Deposit, together with any and all interest that may have accrued thereon.

**(2)**    Upon the termination of this Agreement by Buyer pursuant to Section 13(a)(5) and written notice thereof to Seller and Escrow Holder, Buyer shall be entitled to a return of the Deposit, together with any and all interest that may have accrued thereon.

**(3)**    In the event that this Agreement is terminated by Buyer or Seller, as applicable pursuant to Sections 13(a)(1), (a)(2), and (a)(4), and subject to the other terms hereof, then Seller shall promptly refund the Deposit, without interest thereon, to Buyer.

**(d)**    Without limiting the other provisions of Section 13, Buyer acknowledges that the Deposit is subject to forfeiture if:

(1)    Buyer seeks to terminate this Agreement before Bankruptcy Court approval is obtained;

(2)    Buyer attempts to modify or withdraw its offer or terminate this Agreement without closing the transactions contemplated hereby; or

(3)    if Buyer fails to close without any fault of Seller.

**14.    Bankruptcy Court Approval; and Sale Hearing.**

(a)    Seller has filed, or will file, consistent with this Agreement, such pleadings and exhibits related thereto, and all other documents contemplated under this Agreement and in the Sale Motion to request approval of this Agreement. Buyer will provide evidence and testimony that it is a good faith purchaser entitled to the protections set forth in 11 U.S.C. § 363(m).

(b)    In the event this Agreement and the contemplated sale and assignments are not approved by the Bankruptcy Court, this Agreement shall be null and void and the Deposit (without interest) shall be promptly returned to Buyer as set forth in Section 13, unless any modifying condition or term to this Agreement imposed or proposed by the Bankruptcy Court to this Agreement is reasonably acceptable to Seller and Buyer, in which event this Agreement will be modified accordingly. Except as otherwise provided in this Agreement or order of the Bankruptcy Court, upon Buyer being approved as the buyer, or if there is an overbid, the Successful Bidder, at the Sale Hearing, the Deposit will remain non-refundable and in the event of default by Buyer will be forfeited to Seller. In the event of any breach by Seller, the Buyer shall have a general, unsecured prepetition claim for damages.

(c)    Escrow Holder shall close the Escrow, pursuant to any applicable escrow instructions, only after all conditions herein have been met and all distributions and/or refunds made.

(d)    For purposes hereof:

(1)    **"Affiliate"** shall mean, as applied to any Person, any other Person directly or indirectly controlling, controlled by, or under common control with, that Person;

(2)    **"Person"** means and includes natural persons, corporations, limited partnerships, limited liability companies, general partnerships, joint stock companies, joint ventures, associations, companies, trusts, banks, trust companies, land trusts, business trusts, Indian tribes or other organizations, whether or not legal entities;

**15.    Notices.** All notices or other communications required or permitted hereunder shall be in writing, and shall be personally delivered or delivered by facsimile or email (provided a duplicate copy is also sent via pre-paid, first class, certified or registered air mail (or the functional equivalent in any country), return receipt requested, to the intended recipient thereof at its email, and/or facsimile number set out below) or by overnight courier such as FedEx, Express Mail, etc., for the next Business Day delivery, and shall be deemed received upon the earlier of (i) if personally delivered or sent via facsimile or email, the Business Day of delivery to the address of the person to receive such notice, or (ii) if delivered by overnight courier, the next Business Day.

EXHIBIT "1"
Page 45

If to Buyer, addressed to:

> Morning Law Group, P.C.
> 2625 Townsgate Road, Suite 330
> Westlake Village, CA 91361
> Attn: Joshua Armstrong
> Email: Joshua.armstrong@morninglawgroup.com

With a copy simultaneously by like means (but which shall not constitute notice), addressed to:

> Danning, Gill, Israel & Krasnoff, LLP
> 1901 Avenue of the Stars, Suite 450
> Los Angeles CA 90067-6006
> Attn: Zev Shechtman
> Email:  zs@DanningGill.com

If to Seller or Trustee, addressed to:

> Marshack Hays LLP
> 870 Roosevelt
> Irvine, California 92620
> Attn: D. Edward Hays
> Email: ehays@marshackhays.com

With copies simultaneously by like means (but which shall not constitute notice), addressed to:

> Dinsmore & Shohl LLP
> 655 West Broadway, Suite 800
> San Diego, CA 92101
> Attention: Christopher Celentino; Yosina Lissebeck
> Email: christopher.celentino@dinsmore.com
> yosina.lissebeck@dinsmore.com

**Notice of change of address shall be given by written notice in the manner detailed in this Section 15. Rejection or other refusal to accept or the inability to deliver because of changed address of which no notice was given shall be deemed to constitute receipt of the notice, demand, request or communication sent. Failure to provide "courtesy-only" copies shall not invalidate the notice otherwise given.**

**Notice to Consumers**

Buyer and Seller, as applicable, shall cause to be served the Notice of Assumption and Assignment and Opt Out Notice to consumers pursuant to this Agreement and the Sale Order.

**16.    Assignment.** This Agreement may not be assigned, nor may the obligations be delegated by, the parties hereto without the prior written consent of the other party or parties hereto, provided, however, that Buyer may assign its rights under this Agreement to an entity or entities (formed or to be formed) upon notice to Seller , the Committee and the Monitor, as applicable (provided,

however, that Buyer directly or indirectly holds not less than a majority ownership interest in, and exercises exclusive control over, all such permitted assignee, and such assignment shall not limit, modify, amend or terminate any obligations of Buyer and/or assignee, as Buyer hereunder). Any assignment must be made and notice provided to Seller, the Committee and the Monitor, as applicable, no later than prior to the Sale Hearing Nothing in this Section 16 shall prevent Buyer from assigning any of the Purchased Assets in accordance with this Agreement.

**17.    Confidentiality.** As a condition of entering into this Agreement and discussing the transactions contemplated herein, Buyer represents, warrants and covenants to Seller that:

(a)    Except as required by applicable law, or as mutually agreed upon by the parties in writing, Buyer shall maintain the confidentiality of, and may not disclose to any Person any confidential, secret, or proprietary information of or regarding Seller, the Estate and/or Debtor which is either marked "confidential" or "proprietary" or, by its nature, is confidential or proprietary to Seller, the Estate and/or Debtor **("Confidential Information"),** including, without limitation, any Confidential Information obtained by Buyer and its officers, directors, Affiliates, agents and representatives, during its due diligence investigation of the Property. Seller makes no representations or warranties as to the accuracy or completeness of the Confidential Information. Buyer shall hold all Confidential Information of Seller in confidence and shall protect the same with reasonable care.

(b)    For purposes hereof, the parties acknowledge and agree that any documents or information that are otherwise in the public domain (through no fault of Buyer) or are disclosed in connection with the Bankruptcy Case, and are not "sealed" by the Bankruptcy Court, shall not be deemed Confidential Information hereunder.

(c)    Buyer reaffirms its obligations contained in the Confidentiality and Non-Disclosure Agreement previously executed by Buyer and/or its Affiliates in favor of Seller and the Estate. In the event of a conflict between the previously executed agreement and this Agreement, this Agreement shall control.

**18.        Cooperation; Bankruptcy Court Approvals.**

(a)    Buyer agrees to use commercially reasonable good faith efforts to assist Seller, and cooperate with their respective legal counsel and accountants in connection with any steps required to be taken as part of their respective obligations under this Agreement and the other Transaction Documents; and all parties shall use their commercially reasonable good faith efforts to promptly consummate the transactions contemplated herein and to fulfill their obligations hereunder. Buyer further agrees to cooperate with Seller, the Committee, and the Monitor after the Closing, as to matters pertinent to this Agreement.

(b)    If, following the Closing, Seller receives or becomes aware that it holds any property, right, claim, demand or asset which constitutes Purchased Assets, then Seller shall transfer such Property to Buyer as promptly as practicable for no additional consideration. If, following the Closing, Buyer receives or becomes aware that it holds any property, right, claim, demand or asset which does not constitute Purchased Assets, then Buyer shall transfer or return such property, right, claim, demand or asset which does not constitute Property to Seller as promptly as practicable for no additional consideration.

**(c)** Buyer acknowledges that this Agreement and its terms will be made public as part of the Bankruptcy Case and filings therein.

**(d)** Buyer acknowledges that notwithstanding its execution of this Agreement, and/or the reference to the "Effective Date" herein, Seller's execution of and entry into this Agreement and the other Transaction Documents is expressly subject to obtaining approval of the Bankruptcy Court and that, except as it relates to the Deposit, this Agreement is not valid until entry of a Bankruptcy Court Order approving said Agreement.

**(e)** Buyer shall indemnify, defend and hold harmless Seller and Seller's Estate from and against any and all claims arising from to Buyer's operation of its business and the Property, and performance of its obligations under the Assumed Contracts after the Closing Date, including during and after the Gap Period under the Interim Association Agreement.

**19.** **Refunds**. Any refund request related to money received on an Active Executory Contract from June 2, 2023, through the date of the Closing shall be paid by Seller upon noticed motion and order of the Bankruptcy Court. Any refund request related to money received on an Active Executory Contract or Inactive Executory Contract after the Closing shall be paid by Buyer. For refunds requested for amounts paid on an Active Executory Contract or Inactive Executory Contract for the period before June 2, 2023, a claim shall be filed in the U.S. Bankruptcy Court. Nothing in this paragraph shall be construed to prevent clients from requesting a refund for any reason. Buyer shall not be in breach of this Agreement to the extent a client seeks a refund only from Seller; Seller shall not be in breach of this Agreement to the extent a client seeks a refund only from Buyer.

**20.** **Miscellaneous.**

**(a)** **Time of Essence**. Time is of the essence of each and every term, condition, obligation and provision hereof.

**(b)** **Captions.** Any captions or headings of the sections, subsections, paragraphs or subparagraphs of this Agreement are solely for the convenience of the parties hereto, are not a part of this Agreement, and shall not be used for the interpretation or determination of the validity of this Agreement or any provision hereof.

**(c)** **No Obligation to Third Parties.** Except as otherwise expressly provided herein, the execution and delivery of this Agreement shall not be deemed to confer any rights upon nor obligate either of Buyer or Seller to, any person or entity other than the parties.

**(d)** **Exhibits and Recitals.** The Exhibits attached hereto are hereby incorporated herein by this reference for all purposes. The Recitals set forth above are hereby incorporated by reference.

**(e)** **Amendment to this Agreement.** The terms of this Agreement may not be modified or amended except by an instrument in writing executed by each of the parties hereto, and may need approval by the Bankruptcy Court if the Trustee or Buyer believes the amendment or modification needs further court approval.

    **(f)**    **Waiver.** Any term or condition of this Agreement may be waived at any time by the party that is entitled to the benefit thereof, but only if such waiver is evidenced by a writing signed by such party. No failure on the part of any party hereto to exercise, and no delay in exercising any right, power or remedy created hereunder, shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power or remedy by any such party preclude any other or further exercise thereof or the exercise of any other right, power or remedy. No waiver by any party hereto of any breach of or default in any term or condition of this Agreement shall constitute a waiver of or assent to any succeeding breach of or default in the same or any other term or condition hereof.

    **(g)**    **Governing Law.** This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of California without regards to the rules of such state relating to the conflict of laws. Subject to **Section 21(i) below,** the parties hereto hereby submit to personal jurisdiction in the United States Bankruptcy Court Central District of California, Santa Ana Division, or the United States District Court for the Central District of California in the event that the Bankruptcy Court abstains from exercising or is otherwise unable to exercise jurisdiction.

    **(h)**    **Bankruptcy Court Jurisdiction.** The parties hereto agree that the Bankruptcy Court shall have exclusive jurisdiction over all disputes and other matters relating to the interpretation and enforcement of this Agreement and the other Transaction Documents (and/or any ancillary document executed pursuant hereto) and/or the Property, provided, however, that if the Bankruptcy Court abstains from exercising, or declines to exercise jurisdiction with respect to any such action: (A) such abstention or refusal shall have no effect upon, and shall not control, prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such action, and (B) the parties hereto expressly agree that any disputes between such parties shall be submitted to any other court of competent jurisdiction in the Central District of California; Orange County, California.

    **(i)**    **Fees and Other Expenses.** If either Party incurs attorneys' fees to enforce this Agreement because of a breach of this Agreement by the other Party, the prevailing Party shall be entitled to recover reasonable attorneys' fees as set forth by the court from the other Party.

    **(j)**    **Entire Agreement.** This Agreement supersedes any prior agreements, negotiations and communications, oral or written, and contains the entire agreement between Buyer and Seller as to the subject matter hereof; provided, however, that this Agreement and the other Transaction Documents remain subject to the Sale Order or such Order related to the Sale of the Property as the Bankruptcy Court may enter, as applicable. No subsequent agreement, representation or promise made by either party hereto, or by or to an employee, officer, agent or representative of either party shall be of any effect unless it is in writing and executed by the party to be bound thereby.

    **(k)**    **Successors and Assigns.** This Agreement shall be binding upon and shall inure to the benefit of the successors and permitted assigns of the parties hereto.

    **(l)**    **Business Days.** As used in this Agreement, the term "Business Day" or "Business Days" shall be defined as any day on which national banking institutions in Orange County, California, are open for the transaction of banking business (excepting any Saturday or Sunday).

**(m)** **Signatures by Electronic Delivery.** Any and all documents to be executed by any party hereto (including this Agreement) may when executed be transmitted to the other party and to Escrow Holder (as applicable) by facsimile and/or by email of a .pdf or other electronic data format, and such facsimile and/or email of a .pdf or other electronic data format transmission shall constitute delivery of such document, provided, however, that the original of such document bearing the original signature(s) is sent on the date of the facsimile or email of the .pdf or other electronic data format transmission to the recipient via overnight courier for the next Business Day delivery.

**(n)** **Counterparts.** This Agreement may be executed in multiple counterparts, each of which shall be deemed an original, but all of which, together, shall constitute one and the same instrument.

**(o)** **Partial Invalidity.** All rights and restrictions contained herein may be exercised and shall be applicable and binding only to the extent that they do not violate any applicable laws, and are intended to be limited to the extent necessary to render this Agreement legal, valid and enforceable. If any term of this Agreement, or part thereof, not essential to the commercial purpose of this Agreement shall be held to be illegal, invalid or unenforceable by a court of competent jurisdiction, it is the intention of the parties that the remaining terms hereof, or part thereof shall constitute their agreement with respect to the subject matter hereof and all such remaining terms, or parts thereof, shall remain in full force and effect. To the extent legally permissible, any illegal, invalid or unenforceable provision of this Agreement shall be replaced by a valid provision that will implement the commercial purpose of the illegal, invalid or unenforceable provision.

**(p)** **No Construction Against Preparer.** No provision of this Agreement or the other Transaction Documents shall be construed against or interpreted to the disadvantage of any party by any court or other governmental or judicial authority by reason of such party's having or being deemed to have prepared or imposed such provision.

**(q)** **LIMITATION OF LIABILITY SELLER, THE ESTATE AND THEIR REPRESENTATIVES.** THIS AGREEMENT, THE OTHER TRANSACTION DOCUMENTS, AND ANY CLAIM OF BUYER AGAINST SELLER AND/OR THE ESTATE SHALL BE EXPRESSLY LIMITED TO SELLER'S AND THE ESTATE'S INTEREST IN THE PROPERTY AND IN NO EVENT OR CIRCUMSTANCE WILL ANY OF SELLER, THE ESTATE OR THEIR RESPECTIVE EMPLOYEES, AGENTS, ATTORNEYS OR OTHER REPRESENTATIVES HAVE ANY LIABILITY FOR ANY CLAIM, CAUSE OF ACTION, OR OTHER LIABILITY ARISING OUT OF OR IN CONNECTION WITH ANY ONE OR MORE OF THE FOLLOWING: (1) THIS AGREEMENT, (2) ANY ONE OR MORE OF THE OTHER TRANSACTION DOCUMENTS, OR (3) ANY OTHER AGREEMENT CONTEMPLATED UNDER THIS AGREEMENT, WHETHER BASED ON CONTRACT, COMMON LAW, STATUTE, EQUITY, OR OTHERWISE. NOTWITHSTANDING ANYTHING IN THIS AGREEMENT OR THE OTHER TRANSACTION DOCUMENTS TO THE CONTRARY, IN NO EVENT OR CIRCUMSTANCE WILL SELLER, THE ESTATE OR THEIR RESPECTIVE EMPLOYEES, AGENTS, ATTORNEYS OR OTHER REPRESENTATIVES BE LIABLE FOR NOR SHALL BUYER SEEK ANY CONSEQUENTIAL, SPECIAL OR PUNITIVE DAMAGES OF ANY TYPE OR NATURE WHATSOEVER. THE PROVISIONS OF THIS SECTION 21(q) SHALL SURVIVE BOTH

**THE CLOSING AND THE TERMINATION OF THIS AGREEMENT REGARDLESS OF THE BASIS OR REASON FOR ANY SUCH TERMINATION.**

**FURTHER, NOTWITHSTANDING ANY OTHER PROVISION IN THIS AGREEMENT OR THE OTHER TRANSACTION DOCUMENTS, THE LIABILITY OF SELLER HEREUNDER AND THEREUNDER SHALL BE NONRECOURSE. SELLER IS SELLING THE PROPERTY SOLELY IN HIS CAPACITY AS TRUSTEE APPOINTED IN THE BANKRUPTCY CASE, AND NO LIABILITY OR OBLIGATION SHALL BE ASSERTED AGAINST OR ACCRUE TO THE TRUSTEE INDIVIDUALLY AS A RESULT OF THE SALE OR OTHER TRANSACTIONS CONTEMPLATED HEREIN OR THE OTHER TRANSACTION DOCUMENTS OR OTHERWISE.**

**(r)**      On a motion by Seller presented to the Bankruptcy Court presiding over this case, the court may enforce or direct compliance with this Agreement.

**(s)**    Richard Marshack is signing in his official capacity as the Chapter 11 trustee for the Estate and there shall be no scenario relating in any manner to the administration of the Debtor's case or this Agreement or this sale or the operation of Debtor's business where Buyer or any agents or representatives of the Buyer shall have any  recourse to Richard Marshack personally or to any professionals, agents and employees of the Debtor's business or the Estate and no recourse to members of the creditors committee or professionals of the creditors committee.  Buyer acknowledges that none of the above individuals or entities including the trustee in his official capacity or his personal capacity is making any representations or warranties or promises or covenants.

**Seller:**

RICHARD A. MARSHACK, Chapter 11 Trustee of the Litigation Practice Group


By: _____                    Dated:

Richard A. Marshack, solely in his capacity as Chapter 11 Trustee

**Buyer:**

Morning Law Group, P.C.


By: _____                    Dated:
        Joshua Armstrong
Its:____Managing Shareholder_____

EXHIBIT "1"
Page 52

EXHIBIT 1, PAGE 65

**EXHIBIT A**

**SALE ORDER**

[Seller to Deliver at Closing]

**EXHIBIT A-1**

**LEASES**

[Buyer to Deliver at Closing]



**EXHIBIT A-2**

**PERSONAL PROPERTY**

[Buyer to Deliver at Closing]



**EXHIBIT A-3**

**RECEIVABLES**

[Buyer to Deliver at Closing]



**EXHIBIT A-4**

**PRE-PAYMENTS**

[Buyer to Deliver at Closing]



**EXHIBIT A-5**

**MODIFIED LEGAL SERVICE AGREEMENT**

[Buyer to Deliver at Closing]



**EXHIBIT A-6**

**INTELLECTUAL PROPERTY**

[Buyer to Deliver at Closing]

**EXHIBIT A-7**

**ASSUMED PERMITS**

[Buyer to Deliver at Closing]



## EXHIBIT A-8

## BOOKS AND RECORDS

[Buyer to Deliver at Closing]



**EXHIBIT A-9**

**LATER IDENTIFIED ASSETS**

[Buyer to Deliver at Closing]



**EXHIBIT 1-10**

**SCHEDULE OF ASSUMED CONTRACTS**

[Buyer to Deliver at Closing]



**EXHIBIT B**

**BILL OF SALE**

[Seller to Deliver at Closing]



EXHIBIT 1, PAGE 77

**EXHIBIT C**

**CURE NOTICE – ASSUMPTION AGREEMENT**

[Buyer to Deliver at Closing]



**EXHIBIT "2"**

**CURE NOTICE – ASSUMPTION AGREEMENT**

1  Christopher B. Ghio (State Bar No. 259094)
2  Christopher Celentino (State Bar No. 131688)
   Yosina M. Lissebeck (State Bar No. 201654)
3  **DINSMORE & SHOHL LLP**
   655 West Broadway, Suite 800
4  San Diego, CA 92101
   Telephone:    619.400.0500
5  Facsimile:    619.400.0501
6  christopher.ghio@dinsmore.com
   christopher.celentino@dinsmore.com
7  yosina.lissebeck@dinsmore.com

8  Special Counsel to Richard A. Marshack

9

10              **UNITED STATES BANKRUPTCY COURT**

11      **CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION**

12

13  In re:                                   Chapter 11

14  THE LITIGATION PRACTICE GROUP,           Case No. 8:23-bk-10571-SC
    P.C.,
15                                           **NOTICE OF POTENTIAL**
16                                           **ASSUMPTION AND ASSIGNMENT TO**
                                             **COUNTERPARTIES TO EXECUTORY**
17       Debtor.                             **CONTRACTS AND UNEXPIRED**
                                             **LEASES OF THE LITIGATION**
18                                           **PRACTICE GROUP, P.C.**

19                                           **Assumption Hearing**
20                                           Date:      [●], 2023
                                             Time:      [●]:00 [●].m. (Pacific Time)
21                                           Location:  Courtroom 9C
22                                                      411 West Fourth Street
                                                        Santa Ana, CA 92701
23                                                              or
                                                        *via ZoomGov*
24

25

26       **PLEASE TAKE NOTICE** that on July 22, 2023, the Court entered an order [Docket

27  No. 320] (the "Sale Order") approving the sale of substantially all of the assets of the

28

1  Litigation Practice Group, P.C. (the "Debtor") to Morning Law Group PC(the "Buyer"),
2  pursuant to the terms of that certain Asset Purchase Agreement (the "APA").  As set forth
3  more fully in the Sale Order, the Court approved procedures for the assumption by the Debtor
4  and assignment to the Buyer of certain executory contracts and unexpired leases (the
   "Potentially Assumed Agreements"), pursuant to § 365 of title 11 of the United States Code
5  (the "Bankruptcy Code").[3]  The Potentially Assumed Agreements are described in **Exhibit
6  A** attached to this Notice.  The amount shown on **Exhibit A** with respect to each Potentially
7  Assumed Agreement is the "Cure Amount," which is the amount (if any) the chapter 11
8  trustee (the "Trustee") asserts is owed to cure any defaults existing under a Potentially
9  Assumed Agreement.  The Potentially Assumed Agreements are those contracts and leases
10 that the Trustee believes may be assumed and assigned as part of the orderly transfer of assets
   under the APA; however, the Buyer may choose to exclude certain of the Potentially
11 Assumed Agreements from the list of executory contracts and unexpired leases that are
12 ultimately assumed and assigned under the APA, as provided for in the APA.  Removal of a
13 Potentially Assumed Agreement from this list will remove it from the Assumed Agreements
14 being assigned to Buyer.  ***You may be a party to a Potentially Assumed Agreement and***
15 ***should carefully review this Notice in its entirety***.  **If you signed a contract with Litigation**
16 **Practice Group regarding your debt, this Notice may affect you.  Please read this notice**
17 **and the attached Exhibit A carefully, and please seek legal counsel if you do not**
18 **understand the Notice."  If none of them would be affected by this Ex A, then no need**
   **to add.**

19         **PLEASE TAKE FURTHER NOTICE** that if you object to the assumption and
20 assignment of your Potentially Assumed Agreement (including an objection based on
21 adequate assurance of future performance by the Buyer under the Potentially Assumed
22 Agreement) or if you disagree with the Cure Amount shown for your Potentially Assumed
23 Agreement on **Exhibit A** to which you are a party, you must file in writing with the United
   States Bankruptcy Court for the Central District of California, 411 West Fourth Street, Santa
24 Ana, CA 92701, an objection (an "Assumption Objection") on or before **[●] at 5:00 p.m.**
25 **(prevailing Pacific Time)**.  Any Assumption Objection must set forth the specific default or
26
27
   _____
28 [3] Unless otherwise defined herein, all references to "Section" or "§" refer to a section of the Bankruptcy Code.

defaults alleged and set forth any cure amount as alleged by you. If a Potentially Assumed Agreement is assumed and assigned pursuant to a Court order approving same, then unless you have filed an Assumption Objection, you will be paid the Cure Amount set forth herein, if any, and Buyer will assume (take over) your Agreement.  Any counterparty to a Potentially Assumed Agreement that fails to timely file and serve an Assumption Objection shall be forever barred from asserting that a Cure Amount is owed in an amount in excess of the amount, if any, set forth in the attached **Exhibit A**.

**Any Assumption Objection must be filed with the Court and actually received by the Assumption Notice Parties (defined below) by no later than: (i) [●] at 5:00 p.m. (prevailing Pacific Time), (ii) such later date otherwise specified in the Cure Notice, or (iii) solely with respect to those counterparties to Potentially Assumed Agreements who are not initially served with a Cure Notice, seven days after service by overnight mail of such Cure Notice ("Assumption Objection Deadline").**

**PLEASE TAKE FURTHER NOTICE** that any Assumption Objection you may file must be served on the following parties ("Assumption Notice Parties") not later than the applicable Assumption Objection Deadline:  (i) general counsel to the Trustee: Marshack Hays LLP, 870 Roosevelt, Irvine, California 92620 (Attn: D. Edward Hays (ehays@marshackhays.com) and Laila Masud (lmasud@marshackhays.com)); (ii) special counsel to the Trustee: Dinsmore & Shohl LLP, 655 West Broadway, Suite 800, San Diego, California 92101 (Attn: Christopher B. Ghio (christopher.ghio@dinsmore.com)); (iii) counsel to the Official Committee of Unsecured Creditors: Fox Rothschild LLP, 10250 Constellation Boulevard, Suite 900, Los Angeles, California 90067 (Attn: Keith C. Owens (kowens@foxrothschild.com) & Nicholas A. Koffroth (nkoffroth@foxrothschild.com) ; (iv) counsel to the Buyer: [●]; Joshua Armstrong, INVICTUS ADVISORS LLP, 2625 Townsgate Road, Suite 330, Westlake Village, CA 91361 (jarmstrong@invictusadvisors.com)     (v) the Monitor, Nancy Rapoport, at nancy.rapoport@unlv.edu; and (vi) the Office of the United States Trustee ("U.S. Trustee"): 411 West Fourth Street, Suite 7160, Santa Ana, CA 92701 (Attn: Kenneth M. Misken

(Kenneth.M.Misken@usdoj.gov).

**PLEASE TAKE FURTHER NOTICE** that the Buyer shall be responsible for satisfying any requirements regarding adequate assurance of future performance that may be imposed under §§ 365(b) and (f) in connection with the proposed assignment of any Potentially Assumed Agreement. The Court shall hold a hearing on **[●] at [●]:00 [●].m. (prevailing Pacific Time) at 411 West Fourth Street, Santa Ana, CA 92701, in Courtroom 9C or via ZoomGov**, (the "Assumption Hearing") on any Objections and make its determinations concerning, among other things, §§ 365(b) and (f), including the adequacy of any proposed Cure Amount and adequate assurance of future performance under the Potentially Assumed Agreements. Parties wishing to make an appearance by Zoom for Government, a free service that provides audioconference capabilities, should review the Court's tentative rulings page, which can be accessed through https://www.cacb.uscourts.gov/judges/honorable-scott-c-clarkson. Parties should also consult the NOTICE OF VIDEO AND TELEPHONIC APPEARANCE PROCEDURES FOR JUDGE SCOTT CLARKSON'S CASES for specific procedures and further information.

**PLEASE TAKE FURTHER NOTICE** (i) that Objections may be resolved by the Court at the Assumption Hearing, (ii) except to the extent otherwise provided in the APA with the Buyer, pursuant to § 365(k), the Debtor and its estate shall be relieved of all liability accruing or arising after the effective date of assumption and assignment of the Potentially Assumed Agreements, and (iii) nothing contained herein shall obligate the Trustee or the Debtor's estate to assume any Potentially Assumed Agreement or to pay any Cure Amount.

**PLEASE TAKE FURTHER NOTICE THAT IF YOU DO NOT TIMELY FILE AND SERVE AN ASSUMPTION OBJECTION AS STATED ABOVE, THE COURT MAY APPROVE ASSUMPTION AND ASSIGNMENT OF THE POTENTIALLY ASSUMED AGREEMENTS WITH NO FURTHER NOTICE.**

**ANY COUNTERPARTY TO ANY POTENTIALLY ASSUMED AGREEMENT WHO DOES NOT FILE A TIMELY ASSUMPTION OBJECTION TO THE CURE AMOUNT FOR SUCH POTENTIALLY ASSUMED AGREEMENT IS DEEMED TO HAVE CONSENTED TO SUCH CURE AMOUNT.**

**PLEASE TAKE FURTHER NOTICE THAT CONSUMERS MAY ALSO RECEIVE A SEPARATE NOTICE CONCERNING THEIR "OPT-OUT" RIGHTS UNDER RULE 1.17 OF THE CALIFORNIA RULES OF PROFESSIONAL CONDUCT THAT MAY BE APPLICABLE TO A POTENTIALLY ASSUMED**

**AGREEMENT. NOTHING CONTAINED IN THIS NOTICE IS INTENDED TO ADDRESS OR MODIFY SUCH RIGHTS AND THIS NOTICE SHOULD BE READ IN CONJUNCTION WITH ANY "OPT-OUT" NOTICE APPLICABLE TO CONSUMERS.**

Dated: July [●], 2023

Respectfully submitted,

**DINSMORE & SHOHL LLP**

By: /s/ _____

Special Counsel to Richard A. Marshack

**EXHIBIT "3"**

**90 DAY CONSUMER NOTICE**

**NOTICE TO CONSUMERS**

**In Re LITIGATION PRACTICE GROUP, PC**
**Case No. 8:23-bk-10571**
**90-DAY NOTICE OF SALE AND FILE TRANSFER**

Please be advised that pursuant to Court order entered July ___, 2023, Morning Law Group, P.C. (the "Purchaser") has agreed to provide you with legal services for which you originally signed up with the Litigation Practice Group, PC ("LPG"). In accordance with the Court's order and Rule 1.17 of the California Rules of Professional Conduct you have the following rights during the 90-Day Notice Period that ends on October/ November ___, 2023 ("Notice Period"):

**Your Current Agreement**

You are receiving this Notice because LPG's records indicate that you are a party to a legal services agreement (the "Original Agreement") with LPG.

On March 20, 2023, LPG filed a bankruptcy case (the "Bankruptcy Case") in the United States Bankruptcy Court for the Central District of California (the "Bankruptcy Court"). On July [●], 2023, the Bankruptcy Court entered an order approving a sale of LPG's law practice to the Purchaser. The Bankruptcy Court also ordered that the Original Agreement must be "reformed" to remove provisions that may violate applicable law. We refer to your modified legal services agreement, which removes any provisions that violate applicable law, as the "Reformed Agreement."

In connection with the sale, the Purchaser intends to perform legal services on your behalf subject to the terms of the Reformed Agreement on an interim and, potentially, longer term basis.

**Your Rights Upon the Sale**

California law gives you the right to "opt out" of the transfer of your Reformed Agreement to the Purchaser.

Under Rule 1.17 of the California Rules of Professional Conduct this Notice is intended to inform you that the Litigation Practice Group, PC's law practice is being transferred to the Purchaser. You have the right to retain other counsel; you may take possession of any client materials and property, as required by Rule 1.16(e)(1) of the California Rules of Professional Conduct; and if no response is received to this Notice within 90 days after it is sent, or if your rights would be prejudiced by a failure of the Purchaser to act during that time, the Purchaser may act on your behalf until otherwise notified.

## Your Three Options

➢ **1.  Opt-In:**
You may consent to the Purchaser providing you with legal services and opt-in to the transfer of your file by reviewing, signing, and returning the enclosed Legal Services Agreement directly to the Purchaser at the address or e-mail address provided below.  The enclosed Legal Services Agreement will then replace your Reformed Agreement.

➢ **2.  Opt-Out:**
If you do not want the Purchaser to provide you with legal services or have your file transferred to the Purchaser, you have the right to opt out and request a refund and a copy of your file by notifying the Purchaser within the Notice Period at the address or e-mail address provided below. If you choose to opt out, your Reformed Agreement with LPG will be rejected and terminated pursuant to applicable Bankruptcy Law. **PLEASE BE AWARE THAT YOUR MATTER MAY HAVE URGENT DEADLINES, SO YOU SHOULD SEEK LEGAL COUNSEL AS SOON AS POSSIBLE IF YOU ELECT TO OPT OUT.**

➢ **3.  Do Nothing Within the Notice Period:**
If you choose not to opt in or opt out, and you take no action during the Notice Period, you will be deemed to have opted in to representation by the Purchaser, and your file will be transferred to the Purchaser after the expiration of the Notice Period under the terms of your Reformed Agreement. Choosing to take no action during the Notice Period, however, does not prevent you from terminating the Purchaser's services and requesting a refund and a copy of your file at any time.

➢ **Personal Identifiable Information**
Your name and contact information (phone and e-mail address) will be provided to the Purchaser. Other personal identifiable information included in your client file (including but not limited to date of birth, social security number, and account information) will not be transferred to the Purchaser, unless you: 1) opt in; or 2) do nothing within the Notice Period, except as necessary to provide legal services before you take action. If you do nothing within the Notice Period, the Purchaser may have to access your legal file to provide services that might be needed to preserve your matter and your rights, and any such review will not be deemed a violation of this section.

**DURING THE NOTICE PERIOD, THE PURCHASER WILL ALSO HAVE THE RIGHT TO DETERMINE WHETHER IT WILL TAKE ASSIGNMENT OF, AND CONTINUE TO SERVICE, YOUR REFORMED AGREEMENT.  YOU WILL RECEIVE A SEPARATE NOTICE CONCERNING "ASSUMPTION AND ASSIGNMENT" PROCEDURES THAT ADDRESSES THAT PROCESS, WHICH YOU SHOULD READ CAREFULLY.  YOU MAY ALSO WISH TO CONSULT WITH AN INDEPENDENT ATTORNEY.**

LPG's bankruptcy estate has contracted with the Purchaser to provide interim services under your

Reformed Agreement until you opt in, opt out, the Purchaser elects to not take assignment of your Reformed Agreement, or the Notice Period expires.

Please contact the Purchaser directly at _____, Telephone: _____, or email address: _____, with all questions, your request to Opt In (with your signed Legal Services Agreement), or your request to Opt Out.

Sincerely,

[Signatory name]

Enclosure: Legal Services Agreement

**EXHIBIT "4"**

**LEGAL SERVICES AGREEMENT**

**Services Provided**

Morning Law Group, P.C., a licensed law corporation and its employed and affiliated attorneys (collectively referred to in this agreement as "MLG") will provide legal services wherein it will represent you (this agreement will refer to you as "You" or "Your," as the case may be) in connection with disputes You (may) currently have with the creditors listed below in the section called "Enrolled Accounts" over any debts in the Enrolled Accounts You believe and advise MLG are invalid, inaccurate, or otherwise without a legal basis (collectively, the "Disputed Debts").   If any of the Enrolled Accounts include co-applicants, the co-applicants are included in the term "You" in this Agreement solely with respect to those Enrolled Accounts on which they are a co-applicant.  MLG is prepared to do the following as part of its representation of You:

- Assist You in handling communications with creditors and any related debt collectors in connection with any of the Disputed Debts identified below;
- Assess, and if appropriate dispute, the legal validity of the Disputed Debts identified below based upon information provided by You;
- Assist You in disputing and addressing erroneous or inaccurate information in connection with the Disputed Debts identified below;
- Represent You in the event a creditor or related debt collector files a lawsuit against You to collect payment of a Disputed Debt identified below;
- Defend You against any collection activity or lawsuit brought by a creditor or related debt collector on any Disputed Debt identified below;
- Initiate legal action in a court of competent jurisdiction against any creditor or related debt collector that violates any applicable state or federal law in connection with Disputed Debt identified below; and
- MLG does not engage in the practice of bankruptcy law.  If bankruptcy is something You are considering, we encourage You to seek independent legal advice from an attorney who practices bankruptcy law.

**MLG will use its best efforts to represent You as specified in this letter. However, pursuant to relevant Rules of Professional Conduct, by way of general information and as a disclaimer, MLG makes no representation or guarantee that it will accomplish all of the tasks identified herein given that some matters, information, and ability are outside and beyond MLG's control.**

MLG (or its local counsel as designated on a case-by-case basis) will serve as Your attorney for all purposes in connection with the disputes You (may) currently have related to the Enrolled Accounts and will be available to render legal assistance necessary to resolve these disputes.  Except as noted in the section "Description of Services to be Performed" below, the fees that are set forth below are flat fees that are all-inclusive, meaning they include MLG's attorneys' service fees, the service fees for local counsel (if applicable), and any costs that may be incurred such as court filing costs, messenger costs, copying, and postage.  MLG will not charge any additional fee or cost at any time during the duration of our representation of You relating to Your Disputed Debts.  Fees paid to MLG are in connection with and contemplation of the legal services

described herein and, unless prohibited by the applicable regulations or state law, are earned by MLG at the time they are paid and are for services rendered to You as set forth herein. For sake of clarification, where MLG does not employ attorneys licensed in Your jurisdiction, MLG will affiliate with competent local counsel on your behalf.  As always, the choice of whether to use the local counsel we select belongs to You. If You prefer to use different local counsel, please inform us.

You understand that You are hiring a California law firm that employs attorneys who are licensed to practice law in [38] states. You acknowledge that MLG performs services pursuant to the Fair Debt Collections Practices Act as well as other federal statutes and You have an issue which may arise thereunder. If You reside in a state outside of the 38 states in which MLG is licensed, MLGYou authorize MLG to affiliate with local counsel in the individual state where You reside to assist in Your representation. MLGAs always, the choice of such local counsel belongs to You.

### Co-Applicant(s)

If you are a co-applicant on any Enrolled Accounts, the terms of this Agreement apply to you only with respect to the Enrolled Accounts on which you are a co-applicant.

### Client Authorization

You authorize MLG to challenge, where applicable and based on the information You provide, each of the Disputed Debts listed below, which You believe and advise MLG to be in any way invalid, inaccurate, or otherwise without a legal basis. You also authorize MLG to obtain a copy of Your credit report to assist in the process of analyzing Your account and developing a strategy regarding the resolution of debts that are excessive or otherwise unauthorized by law and to communicate with the Enrolled Account creditors or related debt collectors on Your behalf. If required by the Enrolled Account creditor or related debt collector, you agree to provide us with a Power of Attorney for these limited purposes.  Although MLG will obtain a copy of Your credit report to provide the legal services specified in this agreement, You expressly understand and agree that MLG is not a credit repair organization, as further explained in the section "Services MLG DOES NOT Perform" below. Finally, You authorize MLG to communicate with You via email, text message, telephone, and facsimile. You can revoke any of the authorizations listed in this Client Authorization paragraph at any time by simply sending MLG a written request by letter or email.  For example, if you wish to revoke MLG's authorization to communicate with you by text message, simply send us a letter or email stating: "I am revoking my authorization for MLG to communicate with me by text message. Please acknowledge receipt."

You understand that failure to pay debts as they become due will adversely affect Your credit score and that unpaid debts will almost certainly continue to incur late fees and penalties on the accounts during our period of representation.

### Description of Services to be Performed

MLG will obtain Your credit reports, analyze them, and develop strategies for correcting Disputed Debts for which You should not be held legally responsible. Where appropriate, MLG will use existing laws and interact with creditors and credit bureaus on Your behalf to seek invalidation of Your Disputed Debts and removal of any verified invalid Disputed Debts from Your credit reports (please see "Services MLG DOES NOT Perform" below for further information on the differences between our services and a credit repair service). MLG will also interact with collection agencies, as applicable, to seek to invalidate Your Disputed Debts by requiring them to supply evidence of Your indebtedness to them, or any other legal mechanism(s). MLG will also investigate Your "delinquent" accounts in the Enrolled Accounts to determine potential methods for the invalidation of any such Disputed Debts or otherwise determine your legal liability for such debts, up to and including the initiation of lawsuits on Your behalf against the Enrolled Account creditors and their third-party debt collectors if supported by the documents and information we are provided.

In addition, if an Enrolled Account creditor or their debt collector files a lawsuit against You relating solely to the Disputed Debt (referred to in this Agreement as an "Enrolled Account Lawsuit"), MLG, and local counsel You approve, will represent You in such lawsuit (but excluding any appeals). If an Enrolled Account Lawsuit was initiated **after** the date You sign this Agreement and after at least one payment to MLG has been made in accordance with the schedule listed in this Agreement, MLG will not charge any additional fees for such representation. If, however, and Enrolled Account Lawsuit was initiated against You **before** the date You sign this Agreement and You choose to have MLG represent You, You must first pay MLG an additional fee of $500.00, which additional fee will also cover local counsel's fees, if applicable. Any costs incurred in an Enrolled Account Lawsuit will be paid by MLG out of the fees set forth below, including the fees of any local counsel with whom MLG affiliates on Your behalf in a jurisdiction in which MLG is not admitted to practice law.

Where appropriate, if legal fees are recovered from an adverse party in an Enrolled Account Lawsuit, MLG will credit You with a pro rata portion of the legal fees paid with respect to the debt settled and the remainder will be paid directly to MLG.

MLG'MLG

You will, however, be responsible for any damages resulting from any Enrolled Account Lawsuits or any settlements reached with Your consent during such lawsuits. To this end, MLG is not providing debt settlement services, and the fees paid under this Agreement are not being escrowed for settlement of any debts, but as payment for legal services provided by MLG or by local counsel as applicable. For further explanation of the differences between debt settlement services and legal services for settling a lawsuit, see the next section.

**Services MLG DOES NOT Perform:**

MLG does not, as part of its representation of You, include the following services: (i) tax, financial planning, or accounting advice (note that the discharge of debt can trigger a taxable event, so You should make an appointment with an appropriate tax professional before agreeing to MLG's suggested resolution of a Disputed Debt or an Enrolled Account Lawsuit, (ii) modification,

collection, or improvement of Your credit reports or credit score, or credit repair services (see below), (iii) bankruptcy services, (iv) except as provided for in this Agreement, representation in any matter before any court or arbitration hearing, including but not limited to foreclosure proceedings; (v) guarantee elimination of harassment or collection calls from credits or collectors (though we will do our best to cause them to be ceased); or (vi) debt settlement services (see below). MLG does not guarantee any services nor any outcome in Your (or any) legal matter.

You expressly understand and agree that MLG is not a credit repair organization, is not engaged in credit repair, and will not be undertaking any work as to Your credit repair, even though MLG's legal services towards resolving Your Disputed Debt may have an indirect effect on Your credit, whether negative or positive (i.e., your credit may get better or worse). But that debt resolution legal work is different than the work done by a credit repair organization, which works with the specific purpose of improving your credit score, dealing with credit report issues regardless of invalidity or illegality of the debt, and helping you develop smart credit habits. MLG does not provide credit repair services. If that is the work that You need, we encourage you to seek the advice of a credit repair organization or credit repair attorney as soon as possible.

You also expressly understand and agree that MLG is not providing debt settlement services, even though MLG's legal services may involve settling an Enrolled Accounts Lawsuit, which may involve a debt. For the sake of clarity, although the terms sound similar, settlement of a lawsuit is different from debt settlement services. A debt settlement service provider negotiates directly with a creditor to settle a specific debt on the client's account. A lawyer representing a client in a lawsuit defends the client from the creditor's claims and may negotiate settlement of the lawsuit, which can involve agreeing on the amount of the debt the client will pay, but also on claims relating to attorneys' fees, costs, confidentiality, and other rights the client may have. With debt settlement, there is no lawsuit to defend, no court filings to prepare, and lawyers might not be involved. Unless also licensed to practice law, debt settlement service providers cannot advise clients on the law, cannot defend clients in court, and cannot initiate a lawsuit on a client's behalf. By contrast, lawyers representing clients can, and do, advise clients on the law, resolve legal issues regarding disputed debts, and, if necessary, represent clients in lawsuits. MLG is providing You with legal services, not debt settlement services, and the fees paid under this Agreement are for the services of MLG's attorneys. Again, MLG, or local counsel, will not settle any Enrolled Account Lawsuit without your prior written consent.

**Fees**

You will pay the fees set forth below for the legal services provided by MLG, which are outlined above. MLG will not charge or collect any other fee or cost beyond the flat fee set forth below (except for the $500 charge for a lawsuit that was initiated prior to Your signing this Agreement and for which you consent to MLG and local counsel, if applicable, representing you). This flat fee includes MLG's attorney services fees, local counsel's service fees (if applicable) and any costs, associated with MLG's representation of You, such as court filing costs, messenger costs, copying, and postage, process server fees, administrative costs, or any other vendor fees necessary for providing the services. Each payment of a portion of this fee is not escrowed but rather is earned when such portion of the fee is received by MLG. This fee does NOT, however, include

any settlement that You may have to pay to any creditor if You opt to settle a debt prior to or during the course of an Enrolled Account Lawsuit. As explained previously, MLG will not settle any Enrolled Account Lawsuit without your express prior written consent.

### Secured Debt

If You incur any debt that is legally deemed "secured" (which is subject to and governed by a security interest), such as a car loan, in which you agree that a lender has a right to repossess the vehicle or other secured item if you do not pay, You understand that the item may be repossessed or You may otherwise lose possession of the item while MLG works its process to challenge and dispute the underlying debt. MLG does not guarantee that it will be able to challenge all of your debts, whether those debts are secured (the creditor has a right to foreclose) or unsecured (the creditor has no such right).

### Actions Required of You

You expressly understand and agree to provide MLG (or local counsel if applicable and as instructed by MLG) with all correspondence You receive from any creditor, credit bureau, attorney, or court of law. You further agree to keep a log of all communications, including telephonic and electronic communications, from any creditor or credit reporting agency to You from the date You execute this Agreement until the conclusion of MLG's representation of You. The "log" should include the date and time of any such calls or emails, the name of the person calling or emailing and the company they work for (if known), how long the call lasted, and accurate details of what was said by You and the caller.

You expressly understand and agree to: provide MLG with all information and documents regarding the debt(s) You seek to modify, including, to the best of your knowledge, the current account balance and the name of the creditor and account number; and all information related to the debt as requested by MLG. These obligations continue until the end of MLG's representation of You (see the Termination section below), so You should provide MLG with anything that relates to the debts for which you are seeking MLG's help to resolve.

You expressly understand and agree that all information provided by You must be truthful and accurate. MLG will use reasonable efforts to verify the information You provide but that does not relieve You of the obligation to be accurate and truthful. You will forward all correspondence from creditors and collection agencies, including collection letters, demands and complaints within five (5) days to MLG. If you have access to email and the ability to scan or take pictures of the correspondence, You can email it to our office at: [INSERT EMAIL], or fax it to us at [INSERT FAX]. Alternatively, You can mail the correspondence to our address [INSERT ADDRESS], however, due to the delays that can occur with mail delivery, we encourage you to send it priority mail. If a creditor or collection agency telephones You, You agree to refer all such calls to MLG. If a creditor or collection agency engages in harassing or abusive conduct, You will promptly notify MLG and provide complete and accurate information regarding such contacts.

You expressly understand and agree that You will promptly respond to all requests, communications, or documentation from MLG or its representatives (in other words, within five business days of receiving such requests, communications, or documentation) and that You will promptly provide MLG with any change of address or other contact information.

You expressly understand and agree to make payments as set forth in this Agreement, with the amount of those payments set forth in the schedule that is attached to this Agreement. You agree to make all the payments on the designated dates, and You agree to timely and fully pay all debt modification resolutions negotiated by MLG and approved by You.

You expressly understand and agree that communication with MLG and personnel (including counsel and local counsel) engaged by MLG to act on Your behalf is of paramount importance. MLG cannot provide You with proper representation and service if You cease or fail to communicate with MLG or its agent(s). If MLG attempts to contact You and is unsuccessful because You do not answer, timely return calls, or respond to communication, You understand and acknowledge that such (in)action can have significant consequences, including potential judgments or garnishments. If such (in)action occurs more than three (3) times or if You do not respond within thirty (30) days of MLG's efforts to contact You, MLG reserves the right to cease representing You and to terminate this Agreement, in accordance with relevant state bar ethical and court obligations and considerations.

Your participation in defense of an Enrolled Account Lawsuit is not only welcome but required as part of our Agreement to represent You.  Your participation may include, without limitation, responding to communications from MLG in a timely manner, providing truthful and accurate information, reviewing court filings, participating in settlement negotiations, and being available for any required legal proceedings, such as court hearings or depositions.

**Right to Conduct Business Electronically and Contact You**

You agree that MLG will conduct its business primarily, if not exclusively, through electronic and telephonic means and You consent to MLG contacting You electronically and telephonically. You further agree that MLG may transmit data, including that regarding Your credit profile, electronically in accordance with its privacy policy provided with this Agreement.  You further agree that any electronic communication carries the risk of disclosure to a third party and that if MLG is using commercially reasonable means to protect such information in accordance with its privacy policy, then any such inadvertent disclosure of information will not give rise to additional damages against MLG. A facsimile or email transmission of this signed Agreement, via an email attachment or otherwise, will be as valid as the original signed Agreement. This Agreement may not be modified except in writing by both parties.

**Malpractice Insurance**

MLG hereby discloses that it maintains a malpractice insurance policy that covers and insures its representation of You. If You desire to make a claim against that insurance policy, You must first contact MLG and disclose Your claim and the nature of the claim, at which point MLG agrees to

assist You in obtaining any and all information necessary to prepare a file a claim. Any claim brought against MLG must be brought within six (6) months of the claimed offense.

**Applicable Law and Confidentiality**

You understand and agree that MLG is based out of the State of California, is a licensed law corporation under the State Bar of California, and that California law applies to this Agreement. You further understand that MLG is bound to strict rules of confidentiality and attorney-client privilege in connection with the rules applicable to attorneys licensed to practice law in the State of California. You further understand and agree that You have sought the representation of MLG with full knowledge of its location and licensing, and that MLG works with other/local/outside attorneys licensed in nearly all 50 states and the District of Columbia as affiliated counsel to allow MLG to provide a complete representation of You in nearly every state in which You are sued or in which a dispute might arise. You have the right to know the licensed attorney with whom MLG has affiliated in any state and at any time but understand and agree that MLG may choose to change the local attorney with whom it is affiliated in any given jurisdiction, always provided only that MLG shall have an affiliated attorney engaged to represent Your interests and always provided that any change in attorney shall not cause a delay that materially affects your rights. At any time that You would like to know the identity of local counsel who is working with MLG on Your file, please contact us. As part of our protocol, we often introduce You to local counsel as the matter develops. As the client, You have the right to local counsel satisfactory to You.

This Agreement constitutes the entire agreement of MLG and You relating to MLG's representation of You and the scope of services to be performed. Nothing that anyone has said to You before You sign this Agreement relating to its terms, the scope of MLG's services to be performed, or any guarantees of what MLG will do, whether made by MLG or any of its employees or agents, will become a part of this Agreement unless whatever MLG or its employees or agents has said is written into this Agreement itself. You have read and understand this Agreement and are entering into it after full investigation and are not relying upon any statement or representation from MLG or any of its employees or agents, that is not written in this Agreement.

Fee Dispute Resolution: If You are a California resident, pursuant to California law, You have the option of asking for mandatory fee arbitration with the appropriate local bar association program for any fee disputes. If You are disputing the fees to be paid to MLG, You must initiate the mandatory fee arbitration within the applicable time period allowed in which to bring a civil action for judicial resolution of a fee dispute. If MLG claims You owe an outstanding balance, it must provide to you a "Notice of Client's Right to Fee Arbitration" form approved by the California State Bar before or at the time of filing a lawsuit, or other proceeding to collect the amount. You will then have the option of asking for mandatory fee arbitration with the appropriate local bar association program within 30 days of receiving that notice, or with the California State Bar if the appropriate local bar association does not offer mandatory fee arbitration. If you fail to request the mandatory fee arbitration within 30 days, You will have waived Your right to arbitration, and MLG may take legal action to collect the fees or costs.

Arbitration is considered to be an efficient and less costly method of resolving disputes. If You choose arbitration as a forum, the arbitration result will be non-binding unless You and MLG both agree that the arbitration is binding, in which case the results are final.  Depending upon the amount of the fee dispute, the arbitration panel will consist of either a single attorney arbitrator or a panel of three arbitrators, one member of which is not an attorney.  Arbitrators are usually chosen by an independent arbitration association and are impartial as well as being familiar with the areas of law and/or facts involved in the dispute.  Should there be a dispute regarding fees, the law of California shall apply in arbitration as well as civil litigation. If You are not a California resident, the laws and rules of Your state of residence will apply in any fee dispute.

**Termination**

You have the right to terminate this Agreement and MLG's representation at any time by providing us a written notice, such as a letter, fax, or an email stating You wish to terminate MLG's representation of You, which termination will take effect three (3) days after the date of the notice.  Please note that any payment due within three days of the date of written termination shall be processed and shall not be refunded.  Your notice of termination must be sent to one of the following:

[INSERT ADDRESS, FAX, AND EMAIL]

Subject to relevant state bar ethical and court obligations and considerations, and upon written notice, MLG has the right to terminate this Agreement and its representation of You for the following reasons:  (1) MLG completes the services it is to perform under this Agreement, such as by resolving the Disputed Debts; (2) MLG determines the Disputed Debts are valid so that no challenges can be made to them leaving no further services for MLG to perform; or (3) for any of the reasons listed in the Client Acknowledgements section below.

**Client Acknowledgements**

By signing this agreement, You acknowledge that MLG has not instructed You to breach any contract, fail to make any required payment, or fail to perform any obligation You have lawfully incurred; in particular, you acknowledge that MLG has not instructed you to stop payment on any debts.

MLG reserves the right to terminate this Agreement if (a) required by the State Bar of California Rules of Professional Conduct or the state bar rules of the local counsel's state, if applicable, (b) You refuse repeatedly to communicate with MLG or to respond to reasonable requests for information necessary to represent You in an effective way, (c) You fail to make timely payment of the amount due under this Agreement, or (d) Your payments are returned (i.e., not accepted by the applicable creditor or debt collector or their financial institution) more than two times for any reason (such as for insufficient funds or account information errors). MLG will not pay any of the debts identified below and does not guarantee that any debt You now have or may incur will be invalidated or settled in association with MLG's representation of You.  If You terminate this Agreement according to the procedures stated in the Termination section, You shall not be responsible for any payments due after the date of termination except for any payment due within three days of the date of written termination, which payment shall be processed and shall not be refunded.

If, during the course of representation, MLG believes a creditor or agent of any creditor may have violated a federal or state consumer protection law (including, but not limited to, the Fair Debt Collection Practices Act or Truth in Lending Act) with respect to You, You authorize MLG to pursue such claim against such party on Your behalf. You recognize that MLG may incur additional attorney fees in pursuing such a claim. MLG may recover any additional fees from the creditor using federal or state consumer protection laws that permit attorney's fees to be recovered from the creditor or creditor's agent if the claim is successful. If a debt listed hereon is settled together with a claim against the creditor for a violation of consumer protection law, and the creditor pays MLG's attorney's fees incurred in pursuing the claim, MLG may credit You with a pro rata portion of fees paid with respect to the debt settled.

**You may cancel this contract without penalty or obligation at any time before midnight of the 3rd business day after the date on which You signed the contract. A separate though related "Notice of Right to Cancel" is being provided to You contemporaneous with this Agreement. See the attached Notice of Cancellation form for an explanation of this right.**

| | |
|---|---|
| Your Signature: | {SIGNATURE} |
| Date: | {SIGNDATE} |
| Co-Applicant Signature: | {COSIGNATURE} |
| Date: | {COSIGNDATE} |

**MORNING LAW GROUP, P.C.**

[INSERT Contact Info]

Program Acknowledgements

The monthly payments I am making go towards Morning Law Group, P.C. attorney representation fees.

Initial:

{{INITIAL}}

The attorney fees I am paying to Morning Law Group, P.C. are not monies that will be used to pay my creditors. These attorney fees do not accumulate towards a settlement, and they will not be used to pay my creditors / debts.

Initial:

{{INITIAL}}

As explained in the Agreement, Morning Law Group, P.C. is a law firm specializing in debt resolution, NOT debt settlement. I understand the difference as explained in this Agreement.

Initial:

{{INITIAL}}

If I receive a lawsuit on an enrolled account (called an Enrolled Account Lawsuit in this Agreement), Morning Law Group, P.C. will represent me and handle all legal proceedings at no additional cost, except if the Enrolled Account Lawsuit was initiated before I signed this Agreement, in which case I must pay an additional $500.

Initial:

{{INITIAL}}

I understand that if any of the enrolled debts are secured debts, such as auto loans or loans for any other type of collateral, those items may be repossessed and that MLG may not be able to stop that repossession.

Initial:

{{INITIAL}}

**Enrolled Accounts**

{Creditor List}

### Client Intake Form

**Name:** {FULLNAME}
**Address:** {FULLADDRESS}

**Home Phone:** {PHONE}
**Cell Phone:** {PHONE3}
**Email:** {EMAIL}
**Last 4 SSN:** {ENCSSN}

**Schedule of Payments**

I agree to this payment schedule – **Client Initials:** {INITIAL}

{Draft Schedule}

**Electronic Payment Authorization**

| | |
|---|---|
| **Bank Name:** | {BANKNAME} |
| **Name on Account:** | {NAMEONACCT} |
| **Account Type:** | {ACCTTYPE} |
| | Other (specify: {INPUT}) |
| **Routing Number:** | {ROUTINGNUM} |
| **Account Number:** | {ACCOUNTNUM} |
| **Next Payment Date:** | {PM1_DATE}          **Amount:** $\{PM1\} |
| **Recurring Payment Start Date:** | {StartDate} |

By signing below, I authorize and permit MLG or their designees to initiate electronic funds transfer via an Automated Clearing House system (ACH) from my account listed above.  I will also provide MLG with a voided check or savings deposit slip.

If necessary, MLG shall make adjustments if errors have occurred during the transaction.  The monthly date of the draft is listed above; however, if the draft date falls on a weekend or bank holiday, the debit transaction will take place on the next business day.  This authority will remain in effect until MLG is notified by the Client in writing at least three (3) days prior to the next scheduled draft date that Client is terminating this Agreement.   If the debit is returned because of non-sufficient funds or uncollected funds, then the originator and its financial institution may reinitiate the entry up to two (2) times.  MLG

**Acknowledgment of Refunds & Draft Date Changes**

ACH Refunds: If a refund is due to You, such refund will be made through the ACH process only.  Refunds may take up to 10 days to process.  In the event Your EFT or draft is returned from Your bank unpaid, You agree that a fee of $25.00 or as allowed by law may be charged to Your account via draft or EFT, if permitted by applicable laws and state bar rules.  Furthermore, You affirm that You are authorized to execute this payment authorization and that the above information is true and correct.  Draft Date Changes: You may stop any ACH debit by providing written notice to MLG of termination of this Agreement at least three (3) business days prior to the scheduled payment.  If You should need to notify MLG of Your intent to terminate and/or revoke this authorization, You must notify MLG in writing not less than three (3) business days prior to the questioned debit being initiated.

| | |
|---|---|
| **Client Signature:** | {SIGNATURE} |
| **Date:** | {SIGNDATE} |
| **Printed Name:** | {FULLNAME} |

**Preauthorized Checking and ACH Authorization Form**

**Account Owner Name:** {NAMEONACCT}

**Address:** {ADDRESS} {ADDRESS2}     **City:** {CITY}  **State:** {STATE}  **Zip:** {ZIP}

**Mobile Phone #:**     {PHONE2}        **E-Mail:**     {EMAIL}


## DESIGNATED BANK ACCOUNT INFORMATION

**Bank Name:** {BANKNAME}

**Name as it appears on bank ACCOUNT:**                         {NAMEONACCT}

| **Routing Number:** | {ROUTINGNUM} | **Account Number:** | {ACCOUNTNUM} | **Checking or Saving:** | {ACCTTYPE} |

## DESIGNATED CREDIT/DEBIT INFORMATION

**Card Holder Name:** {CC_NAME}

**Card Number:**     {CC_NUM}

**Expiration Date:**     {CC_EXP}

**CVC:**           {CC_CVV}


## DESIGNATED ACCOUNT PAYMENT AUTHORIZATION SCHEDULE

**Total Amount of Debit:**       ${PM1}     **Date of Next Debit:**       {PM1_DATE}


I hereby apply for and agree to establish a non-interest bearing special purpose account (the "Account") with a bank ("Bank") selected by MLG and/or its successors for the purpose of accumulating funds to pay for such goods and services as I so direct, or any other service provider selected by MLG, to perform.  This application is subject to Bank's customer identification program, as required by the USA PATRIOT ACT and other applicable laws, and accordingly, I hereby represent that the above information is true and complete to the best of my knowledge and

Case 8:23-bk-10571-SC    Doc 352    Filed 08/02/23    Entered 08/02/23 15:03:42    Desc
                    Main Document    Page 94 of 94

belief. The bank account information provided above may be subject to account validation processes to include pre-notation and a $0.01 micro-deposit.

I hereby authorize Bank, directly or any other service provider selected by MLG, to administer the Account on my behalf by (a) periodically transferring and depositing funds to the Account, via any payment media currently in use, and (b) periodically disbursing funds from the Account pursuant to instructions that I may give from time to time. I hereby authorize payments from the Account for the fees and charges provided for in this application and in the agreement. I hereby grant permission for Bank to share information regarding the Account with any service provider to facilitate the transactions I may initiate that involve the Account, and with any other party that is essential to the administration of the Account on my behalf. My signature below provides permission to be contacted by phone at the number provided with this authorization. A payment reminder may be sent to my phone number via text messaging prior to the payment schedule above.

This authorization shall remain in full force and effect until I provide a verbal or written termination notice to MLG or such other service provider as is selected by MLG. Any such notice, and any other written notice that is provided for in this Application or the Agreement, shall be sent to MLG directly at the address set forth in the Agreement.

Account Holder's
Signature:                  {SIGNATURE}                    Date:      {SIGNDATE}

EXHIBIT "3"
Page 93

EXHIBIT 1, PAGE 106

**EXHIBIT 2**

Christopher B. Ghio (State Bar No. 259094)
Christopher Celentino (State Bar No. 131688)
Yosina M. Lissebeck (State Bar No. 201654)
**DINSMORE & SHOHL LLP**
655 West Broadway, Suite 800
San Diego, CA 92101
Telephone:  619.400.0500
Facsimile:  619.400.0501
christopher.ghio@dinsmore.com
christopher.celentino@dinsmore.com
yosina.lissebeck@dinsmore.com

FILED & ENTERED

AUG 07 2023

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY bolte      DEPUTY CLERK

Special Counsel to Richard A. Marshack, Chapter 11 Trustee

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>THE LITIGATION PRACTICE GROUP P.C.,<br><br>    Debtor. | Case No.: 8:23-bk-10571<br><br>Chapter 11<br><br>**ORDER APPOINTING NANCY RAPOPORT AS ETHICS COMPLIANCE MONITOR**<br><br>Date:   July 21, 2023<br>Time:   10:00 a.m.<br>Judge: Hon. Scott C. Clarkson<br>Place:  Courtroom 5C<br>        411 W. Fourth Street<br>        Santa Ana, CA  92701 |

On July 21, 2023, at 10:00 a.m., in Courtroom 5C of the United States Bankruptcy Court, Central District of California, Santa Ana Division ("Bankruptcy Court"), located at 411 West Fourth Street, the Honorable Scott C. Clarkson, United States Bankruptcy Judge, conducted a hearing ("Hearing") regarding above-referenced debtor, The Litigation Practice Group, P.C. ("LPG" or the "Debtor") relating to the within bankruptcy estate ("Estate"); on the Motion of Trustee Richard A. Marshack ("Trustee")For Entry of an Order: (A) Approving Sale of Assets Free and Clear of All Liens, Claims, Encumbrances  and Interests Pursuant to 11 U.S.C. § 363(b); and (B) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases and Other

1

1    Agreements [Dkt. No. 191] (the "Motion")[1]  filed by Richard A. Marshack on July 7, 2023 in the

2    above-captioned Chapter 11 bankruptcy case ("Case"), along with the Declaration of Richard A.

3    Marshack in Support by Richard A. Marshack, Chapter 11 Trustee [Dkt. No. 191-1] ; Declaration of

4    Mr. Carss [Dkt. No. 191-2]; Declaration of Mr. Pruyn [Dkt. No. 191-3]; Declaration of Mr. Rebhun

5    [Dkt. No. 191-4]; and Declaration of Mr. Schneider [Dkt. No. 191-5], along with all supplemental

6    documents requested by the Bankruptcy Court to be filed on July 17, 2023, including but not limited

7    to Trustee's Pocket Brief [Dkt. No. 260]; the Supplemental Declaration of Mr. Rebhun [Dkt. No. 260-

8    1]; the Supplemental Declaration of Mr. Pruyn [Dkt. No. 260-2]; and Supplemental Declaration of Mr.

9    Carss [Dkt. No. 260-3]. Christopher Celentino, Christopher Ghio, Yosina Lissebeck and Peter W.

10   Bowie of Dinsmore & Shohl LLP appeared on behalf of Trustee. Keith C. Owens and Nicholas A.

11   Koffroth at Fox Rothschild LLP appeared on behalf of the Official Committee of Unsecured Creditors

12   ("Committee"). The Office of the United States Trustee appeared by and through Kenneth Misken,

13   Leslie Skorheim and Queenie Ng. The consumer privacy ombudsman, Lucy Thomson, appeared. The

14   proposed monitor, Nancy Rapoport, appeared. Other interested parties and bidders appeared as

15   reflected on the record.  Any other appearances were as stated on the record. The Bankruptcy Court

16   having entered its Order Approving Motion of Trustee Richard A. Marshack For Entry of an Order:

17   (A) Approving Sale of Assets Free and Clear of All Liens, Claims, Encumbrances and Interests

18   Pursuant to 11 U.S.C. § 363(b); and (B) Approving the Assumption and Assignment of Certain

19   Executory Contracts and Unexpired Leases and Other Agreements [Dkt. No. 320] entered on July 22,

20   2023.

21            As set forth in the ORDER (A) APPROVING SALE OF ASSETS FREE AND CLEAR OF

22   ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS PURSUANT TO 11 U.S.C. §

23   363(b), (B) APPROVING ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY

24   CONTRACTS AND UNEXPIRED LEASES AND OTHER AGREEMENTS, AND (C) GRANTING

25   RELATED RELIEF ("Sale Order") [Dkt. No. 352] the Bankruptcy Court GRANTED Trustee's

26   Motion.

27   ///

28

---

[1] Terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

2

EXHIBIT 2, PAGE 108

In connection therewith, the Bankruptcy Court approved the appointment of Nancy Rapoport as ethics compliance monitor ("Monitor") pursuant to 11 U.S.C. section 105(a), as set forth in Purdue Pharma L.P., et al., v, Commonwealth of Massachusetts (In re Purdue Pharma, L.P.), Bankr. S.D.N.Y. Case No. 19-23649 (RDD) Adv. Pro. No. 19-08289, and based on the explicit written consent of the buyer identified in the Sale Order ("Buyer"), based on the following facts:

The Asset Purchase Agreement attached to the Sale Order ("APA") states that the Estate and the Buyer will each advance $100,000 at the Closing, as initial funding for employment of the Monitor; and that subsequent fees over that amount shall be pursued by the Monitor, from funds of the Estate after consideration and approval by the Bankruptcy Court.

**NOW, THEREFORE, THE BANKRUPTCY COURT HEREBY ORDERS, ADJUDGES, AND DECREES AS FOLLOWS:**

**Appointment of Nancy Rapoport as Monitor**

1.    Nancy Rapoport is appointed as Monitor pursuant to 11 U.S.C. section 105(a), as set forth in Purdue Pharma L.P., et al., v, Commonwealth of Massachusetts (In re Purdue Pharma, L.P.), Bankr. S.D.N.Y. Case No. 19-23649 (RDD) Adv. Pro. No. 19-08289, and based on the explicit written consent of the Buyer.

2.    The role of the Monitor in this case is strictly to monitor the Buyer's compliance with generally understood ethical standards and consumer protection obligations relating thereto and not to act as an attorney or to provide any legal advice whatsoever to the Buyer or to any of the Buyer's to-be-assumed clients. Given the reach of the operations, Monitor's role shall not include specific compliance with any given state's ethics rules but will be based on generally established legal ethics principles.

3.    Fees and expenses of the Monitor shall be paid by the Estate, up to the first $100,000.00, upon proper application to the Bankruptcy Court, and additional fees and expenses of the Monitor shall be paid by Buyer, up to $100,000.00.  Any amounts in excess of $200,000.00 will be the responsibility of the Seller's Estate.

4.    The role of a Monitor in this case is strictly to monitor the Buyer's compliance with generally understood ethical standards and certain consumer protection obligations and not to act as

EXHIBIT 2, PAGE 109

1  an attorney or to provide any legal advice whatsoever to the Buyer or any of the Buyer's to-be-assumed

2  clients. Given the reach of the operations, Monitor's role shall not include specific compliance with

3  any given state's ethics rules.

4       5.    The Monitor shall perform her duties according to the terms of the APA and this Order

5  of Appointment, pursuant to which the Monitor shall be vested with all rights and powers reasonably

6  necessary to carry out such powers, duties, authority, and responsibilities. In the event of any conflict

7  between the APA and this Order, the terms of this Order shall control.

8       6.    The Monitor shall:

9          a.    work with all diligence to confirm and oversee compliance with the ethical

10  issues raised as part of the representations and warranties of the Buyer as set forth in the APA,

11  including but not limited to sections 12(j) through 12(k), section 12(m) and sections 12(q), as follows

12  (all capitalized terms not otherwise defined herein shall have the definition set forth in the APA):

13             i.  Buyer's LSAs and the implementation thereof have been modified

14               ("Modified LSA's") for compliance with the Telephone Consumer

15               Protection Act, 47 U.S.C. § 227 ("TCPA"), the Telemarketing Sales Rule,

16               16 C.F.R. Part 310 (the "TSR"), and the Credit Repair Organizations Act,

17               15 U.S.C. § 1679 (the "CROA"), as well as all applicable laws and

18               regulations as well as any Order of the Bankruptcy Court;

19           ii.  The performance of the Modified LSAs will similarly comply with the

20               TCPA, TSR, and the CROA, as well as all applicable laws and regulations

21               as well as any Order of the U.S. Bankruptcy Court;

22          iii.  Review and recommend the procedures to assume and assign the reformed

23               LSAs as set forth in the APA, and as may be further ordered by the

24               Bankruptcy Court;

25          iv.  Buyer's cooperation with the requests, oversight, and inquiries of the

26               Monitor;

27  ///

28  ///

4

EXHIBIT 2, PAGE 110

v.   Buyer's provision of profit and loss statements, balance sheets, deposit accounts, and other financial information related to the Active Executory Contracts and Inactive Executory Contracts being purchased by Buyer; and

vi.   Buyer's provision of both reports and administrative access into Buyer's ACH processing merchant account and related bank accounts, as well as customer relationship management software, such as Debt Pay Pro (or other similar software) for the purpose of monitoring Buyer's compliance with the APA as it relates to Active and Inactive Executory Contracts it is purchasing.

b.   work with all diligence to confirm and oversee reformation of the terms of Buyer's Legal Services Agreement;

c.   provide regular reports to the Bankruptcy Court, which reports shall be filed on the Bankruptcy Court's docket, with electronic notice to the Trustee and Committee, and which reports may include a discussion of the Buyer's possible violation of generally accepted legal ethics principles, if any.

7.   The Monitor shall, among other things, and subject to this Order of Appointment:

a.   subject to any legally recognized privilege, rights of confidentiality or privacy, and as necessary or to perform her duties, have full and complete access to the Buyer's personnel, books, records, and facilities, and to any other information, as she may request. The Buyer, in conjunction with the Trustee and the Committee, shall develop such information as the Monitor may request and shall fully, completely, and promptly cooperate with the Monitor. The Monitor may raise with the Trustee, Committee and the Bankruptcy Court any issues relating to any failure of or delay in such cooperation for an expedited resolution by the Bankruptcy Court;

b.   serve, without bond or other security, with the Monitor's fees subject to final approval by the Bankruptcy Court, subject to the fee allocation provisions between the Estate and Buyer, as set forth at section 3, above; the Monitor may submit interim fee applications no more often than every 120 days pursuant to the Local Bankruptcy Rules. In the interim, the

EXHIBIT 2, PAGE 111

Bankruptcy Court will authorize the payment of 80% of fees and 100% expenses each month, based on a monthly fee statement to be filed with the Bankruptcy Court. A fee application shall be filed no sooner than every 120 days. It is further provided that the Monitor shall be authorized to use the services of Special Counsel to the Trustee for the purpose of preparing and submitting such fee applications and in filing any reports or other pleadings with the Bankruptcy Court;

c.      have the authority to employ, upon Bankruptcy Court approval, at the cost and expense of the Estate (subject to the fee allocation provisions between the Estate and Buyer, as set forth at section 3, above), such consultants, accountants, attorneys, and other representatives and assistants (including law students) as are necessary to carry out her responsibilities. It is further provided that, subject to the provisions of this Order, Monitor's employment of law students as assistants shall be considered expenses, such that interim payment shall be made at 100% as set forth in section 7(b), above. The Monitor shall be authorized to use the services of the Trustee's Special Counsel and the Trustee's accountants to conduct forensic analysis of data for the Monitor, at the expense of the Estate. The Monitor shall serve for a period of one year from date of appointment unless such period is extended by the Bankruptcy Court, at which time the Monitor shall submit a final report and be discharged;

d.      have no obligation, responsibility, or liability for the operations of the Buyer; and the Estate shall indemnify, defend, and hold harmless the Monitor from any and all liability and expenses incurred in accordance with the Monitor's duties to be performed hereunder. Moreover, it is provided that the Monitor shall not be liable for damages in connection with the discharge of her duties, but shall remain subject to the oversight and discipline of the Bankruptcy Court (*see, e.g.,* East Coast Foods, Inc. v. Development Sepcialists, Inc., et. al., (In re: East Coast Foods, Inc.), Case. No. 2:16-bk-13852-BB (BAP No. CC-23-1034-FILS), NOT FOR PUBLICATION, entered July 19, 2023);

e.      file a first report on the 120th day after the Closing; and thereafter not less than every 90 days regarding compliance by the Buyer with the terms of the APA and this Order of

6

Appointment; provided that elements of any such report may be filed under seal, the discretion of the Monitor but with unredacted copies served on a confidential basis to Buyer, Trustee, UST, and Committee, if dealing with any confidential customer or proprietary information, or subject to such other confidentiality Restrictions contained in this Order of Appointment. The Bankruptcy Court may, in response to such reports, provide such further direction to the Monitor as it deems appropriate, said determination to be made after notice and a hearing in conjunction with the Bankruptcy Court's calendar and as directed by the Bankruptcy Court;

    f.    maintain, to the best of her abilities and consistent with the Buyer's privacy policies and applicable privacy law requirements, as confidential the data of Buyer and each of the Monitor's consultants, accountants, attorneys, and other representatives and assistants shall also maintain such confidentiality as deemed necessary by the parties; provided, however, that nothing shall restrict the Monitor from providing any information to the Bankruptcy Court and the parties consistent with the terms of any Protective Order; and

8.    Disputes concerning the Buyer's compliance with its obligations under the APA, and specifically section 12 thereof (Buyer's representations and warranties, except with respect to section 12(o)), and with all other matters subject to the supervision of the Monitor, shall be addressed as follows:

    a.    If the Monitor should develop a reasonable basis to believe the Buyer is not in compliance with the terms of the APA or the Buyer's duties as reiterated in section 6 of this Order of Appointment, the Monitor shall notify the Buyer, via the Buyer's principal, Joshua Armstrong, and  Buyer's bankruptcy counsel (and/or other counsel designated by Mr. Armstrong), Danning, Gill, Israel & Krasnoff, Attn.: Zev Shechtman (via email at zs@DanningGill.com),  in writing of the specific objection, including identifying the provisions of the APA, the Appointment Order, or any legal ethics rule or general legal ethics principle that the practice appears to violate, and give the Buyer thirty (30) days to respond to the notification and cure the conduct at issue, if necessary, unless the Monitor believes that a shorter period to respond is necessary under the circumstances.  If a shorter period is necessary, Buyer shall comply with that shortened period, as reasonably determined by Monitor.

EXHIBIT 2, PAGE 113

b.      To the extent that the Buyer fails to cure the alleged conduct within the thirty (30) day period or the shorter period as referenced in subparagraph (a) (but not less than 7 days unless such shorter period is expressly approved or ratified by the Court), the Monitor shall have ten (10) days from the cure deadline to determine the appropriate action and response, and shall notify the Trustee, the Committee, and the Bankruptcy Court of the alleged violative practice and may, but shall not be required to, recommend an appropriate action, response, or remedy to be implemented by the Bankruptcy Court; based upon the Monitor's notification, and recommendation, if any, either the Trustee or the Committee may seek an appropriate remedy from the Bankruptcy Court via Noticed Motion, or in the event of an emergency, in accordance with the Emergency procedures set forth in the Local Rules of the United States Bankruptcy Court for the Central District of California, and all other applicable rules.

c.      Pursuant to the Sale Order, Buyer agreed to be bound by the jurisdiction of this Bankruptcy Court, which includes all civil contempt liability arising from violation of this Order or the APA or federal or state (arising from any state) consumer protection statutes and regulations, including the debt resolution, privacy, data breach notification, data disposal, cybersecurity laws, and laws prohibiting unfair, deceptive, or abusive practices ("UDAP"), "do-not-track", "do-not-call," and "no spam" laws, as well as any and all issues related to the Monitor and/or the Monitor's discharge of her duties to monitor the Buyer, as addressed and consented to in Bankruptcy Court and in accordance with the Sale Order, this Order, the APA, any plan of reorganization, and 28 U.S.C. Section 1334(b).

# # #

Date: August 7, 2023

Scott C. Clarkson
United States Bankruptcy Judge

8

**EXHIBIT 3**

1   Nancy B. Rapoport
    William S. Boyd School of Law
2   University of Nevada, Las Vegas
    4505 S. Maryland Parkway
3   Mail Stop 451003
    Las Vegas, Nevada  89154-1003
4   nancy.rapoport@unlv.edu

5   Court-Appointed Ethics Compliance Monitor

6

7

8                    **UNITED STATES BANKRUPTCY COURT**

9          **CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION**

10

11  In re                                    Case No. 8:23-bk-10571-SC

12  THE LITIGATION PRACTICE GROUP P.C.,      Chapter 11

13              Debtor.                      **APPLICATION FOR AN ORDER**
                                             **PURSUANT TO 11 U.S.C. § 105 AND**
14                                           **LBR 2016-1(d) AUTHORIZING THE**
                                             **RETENTION OF NANCY B.**
15                                           **RAPOPORT AS FEE EXAMINER AND**
                                             **APPROVING STIPULATION**
16                                           **GOVERNING SAME**

17                                           **[No Hearing Required - LBR 2016-1(d)]**

18

19          TO THE HONORABLE SCOTT C. CLARKSON, UNITED STATES

20  BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, AND ALL

21  INTERESTED PARTIES:

22          Nancy B. Rapoport, Court-Appointed Ethics Compliance Monitor, hereby submits this

23  Application, at the request of the Trustee and Special Litigation Counsel for the Trustee, for an

24  Order Appointing her as Fee Examiner for this Court pursuant to 11 U.S.C. § 105 and LBR 2016

25  (d).  The facts and circumstances supporting this Application are set forth in the Declaration of

26  Nancy B. Rapoport in Support of the Application, filed concurrently herewith. In further support of

27  this Application, Rapoport respectfully represents as follows:

28  ///

                                    1

## **PROCEDURAL HISTORY**

1.    The Debtor commenced this chapter 11 cases on March 20, 2023.

2.    On May 8, 2023, the Office of the United States Trustee (the "U.S. Trustee") appointed Richard A. Marshack to serve in a fiduciary capacity as the chapter 11 trustee of the Debtor's Estate [Dkt. No. 62]. On or about May 8, 2023, the Trustee filed his Acceptance of Appointment as Chapter 11 Trustee [Dkt. No. 63]. On or about May 8, 2023, the Court approved the appointment of the Trustee as the Chapter 11 trustee in the Case [Dkt. No. 65].

3.    On June 23 and 29, 2023, the U.S. Trustee appointed a seven-member Official Committee of Unsecured Creditors of the Litigation Practice Group P.C. (the "Committee") to represent the general interests of unsecured creditors in the Bankruptcy Case [Dkt. Nos. 134 and 157].

4.    Trustee has retained (1) Marshack Hays Wood as general counsel, Docket No. 129; (2) Grobstein Teeple LLP as accountants, Docket No. 169; and (3) Dinsmore & Shohl LLP as special litigation counsel [Dkt. No. 171].

5.    On June 23, 2023, the United States Trustee appointed the Committee [Dkt. No. 134].

6.    The Committee has retained (1) Fox Rothschild LLP as counsel [Dkt. No. 444], and (2) Force Ten Partners LLC, as financial advisor [Dkt. No. 578].

7.    The hearing on approval of interim fees and expenses for retained professionals is scheduled to be held on September 24, 2024. *See* Dkt. No. 1427.

8.    11 U.S. C. §§ 327, 328, and 330 require courts to conduct a detailed review of fee applications.

9.    The Trustee, Richard Marshack, has reached out to Rapoport and requested that Rapoport consider serving as a fee examiner for Trustee and Trustee's professionals. Trustee expressed that he believed that such appointment would both aid this Court and the U.S. Trustee in their duties to review and evaluate the lengthy and detailed fee applications anticipated to be filed in this Case, and would offer an extra layer of transparency in light of the public interest in this Case. Based upon her experience as the Monitor in this Case, and her experience serving as the fee

2

1  examiner in many cases of public interest, Rapoport believes her report could assist the Court and

2  the U.S. Trustee regarding its determination of reasonableness and the necessity of the requested

3  fees and expenses.

4  **LEGAL MEMORANDUM**

5      LBR 2016-1 of the Local Bankruptcy Rules for the Central District of California,

6  denominated COMPENSATION OF PROFESSIONAL PERSONS, provides:

7          (d) Fee Examiner. The court may, either on its own motion or on the motion of a party

8          in interest, with or without a hearing, exercise its discretion to appoint a fee examiner

9          to review fee applications and make recommendations to the court for approval.

10      10.    In complex cases, a number of bankruptcy courts have appointed fee examiners

11  pursuant to 11 U.S.C. § 105. *See, e.g.*, *In re PG&E Corporation*, Case No. 19-30088 (DM), ECF

12  No. 2267 (Bankr. N.D. Cal. May 28, 2019) ("Order Appointing Fee Examiner and Establishing

13  Procedures for Consideration of Requested Fee Compensation and Reimbursement of Expenses");

14  *In re Zetta Jet USA, Inc.*, Case No. 2:17-bk-21386-SK, ECF No. 1285 (Bankr. C.D. Cal. July 8,

15  2020) ("Order Appointing a Fee Examiner").

16      11.    As a result of the modifications to section 330(a)(7) of the Bankruptcy Code was

17  added, the primary effect of the change is that, in the majority of cases, absent extraordinary

18  circumstances, a trustee's allowed fee will be based on the statutory commission rates provided in

19  section 326(a).  In other words, Chapter 7 trustees are no longer subject to Section 330(a)(3).

20  Chapter 11 trustees have always been subject to Section 330(a)(3) but now both Chapter 7 and

21  Chapter 11 trustees are entitled to the presumption that a reasonable fee is the amount set forth in

22  Section 326. Case law uniformly holds that absent extraordinary circumstances, there should be no

23  deviation from Section 326.  *See Hopkins v. Asset Acceptance LLC (In re Salgado-Nava)*, 473 B.R.

24  911, (B.A.P. 9th Cir. 2012)  Here, Rapoport has been informed by the Trustee that he believes that

25  the extraordinary circumstances present in this Case could support a bonus, and not a reduction in

26  that which is provided by Section 326.  As a result, the Stipulation also provides for the Fee

27  Examiner to review the fee application of the Trustee.

28  ///

3

12.     Rapoport has also been informed by the Trustee and Trustee's professionals, who are the parties to the Stipulation for Appointment of Nancy B. Rapoport as Fee Examiner (the "Stipulation"),[1] that they believe that it would benefit the Parties and assist the Court and the U.S. Trustee to appoint a fee examiner and would be helpful in the analysis of the reasonableness of the professionals' fees and expenses in this Case; therefore, the Parties have asked Rapoport to prepare this Application and a Declaration in Support of this Application, and to seek appointment by way of the accompanying Stipulation.

13.     Rapoport hereby moves this Court to approve the Stipulation that confirms the appointment of a fee examiner, pursuant to LBR 2016-1(d), without a hearing, to allow for a speedy process of fee application review.

14.     <u>Jurisdiction, venue, and core proceeding.</u> This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

15.     <u>Services to be performed.</u> If she is appointed as the fee examiner, Rapoport shall review and assess, as appropriate, all interim fee applications submitted by Trustee and Trustee's professionals for approval to this Court for awards sought at the hearing set for September 24, 2024. Such review shall include all the fees and reimbursement of expenses for which allowance is sought for compliance with 11 U.S.C. §§ 328, 329, 330, and 331; Fed. R. Bankr. P. 2016, any applicable Local Bankruptcy Rules, and the United States Trustee Guidelines for Reviewing Applications for Compensation, as set forth in the Stipulation.  Pursuant to the Stipulation, the following parties have consented to this review of their interim fee applications (the "Covered Professionals"):

          a.     Richard A. Marshack;

          b.     Marshack Hays Wood LLP;

          c.     Grobstein Teeple LLP; and

          d.     Dinsmore & Shohl LLP.

16.     As fee examiner, Rapoport shall perform such other and further duties as this Court shall require.

---

[1] The Stipulation is being filed concurrently herewith.

4

17. <u>Rapoport's qualifications.</u> Rapoport has been a fee examiner for several years and has served as a fee examiner in multiple bankruptcy cases (primarily Chapter 11 bankruptcy cases). Rapoport's declaration of disinterestedness and resume have previously been filed with the Court in connection with her Ethics Compliance Monitor duties in this case ("Declaration"). *See* Dkt. No. 283. A true and correct of the Declaration is attached as **Exhibit 1.** Rapoport has served as fee examiner in the following matters:

- Fee examiner in *In re Zetta Jet USA, Inc.* (2:17-bk-21386-SK) and *In re Zetta Jet PTE, Ltd.*, Case No. 2:17-bk-21387-SK, United States Bankruptcy Court for the Central District of California—Los Angeles Division (2020-present).
- Fee examiner in *In re Toys "R" Us Property Company I, LLC*, United States Bankruptcy Court for the Eastern District of Virginia, Case No. 18-31429 (KLP) (2018-2019).
- Fee examiner in *In re Toys "R" Us, Inc.*, United States Bankruptcy Court for the Eastern District of Virginia, Case No. 17-34665 (KLP) (2018-2019).
- Independent member of Fee Committee, *In re Caesars Entertainment Operating Co., Inc.*, U.S. Bankruptcy Court, Northern District of Illinois, Case No. 15-01145 (ABG) (2015-2018).
- Fee examiner in *In re Station Casinos, Inc.*, U.S. Bankruptcy Court, District of Nevada, Case Nos. BK-09-52477 through BK-11-51219 (2011).
- Court's fee expert and chair of the Fee Review Committee in *In re Pilgrim's Pride Corp.*, U.S. Bankruptcy Court, Northern District of Texas, Case No. 08-45664 (DML) (2009-2010).
- Court's fee expert and chair of the Fee Review Committee in *In re Mirant Corporation*, U.S. Bankruptcy Court, Northern District of Texas, Case No. 03-46590 (2003-2006; 2011-2012).

18. <u>Proposed compensation.</u> Rapoport has agreed to serve as the Fee Examiner in this case and has agreed to accept a flat fee of $30,000 for, her services as Fee Examiner in connection with the fee applications described herein. To assist her in her duties, Rapoport will retain Legal Decoder Inc. as her initial data analyst; fees incurred from Legal Decoder Inc. are included in the flat fee set forth herein. In terms of connections, Rapoport has reviewed the fees of several of the appointed professionals in this Case in other matters, including but not limited to Fox Rothschild LLP and Omni Agent Solutions, who themselves are not parties to the within Stipulation as submitted. It is Rapoport's understanding that the Committee does not wish to sign the Stipulation. Rapoport believes that she has no conflict that prevents her service as the fee examiner.

19. It is expected that all fees and expenses requested for the professionals in the fee applications filed in 2024 will not exceed $8 million. The $30,000 flat fee is premised on the $8

///

5

million figure.  Any additional fees to be reviewed may require additional compensation for Rapoport and Legal Decoder.

20.    WHEREFORE, Rapoport respectfully requests that this Court approve the Stipulation, without hearing, as its order authorizing her appointment as the Fee Examiner in this Case, and the terms and conditions of that appointment as set forth therein.  Rapoport further moves for any such other relief as is just and proper.

Respectfully submitted,

Dated:  August 4, 2024

Nancy Rapoport
Ethics Compliance Monitor

6

EXHIBIT "1"

1   Christopher B. Ghio (State Bar No. 259094)
    Christopher Celentino (State Bar No. 131688)
2   Yosina M. Lissebeck (State Bar No. 201654)
    **DINSMORE & SHOHL LLP**
3   655 West Broadway, Suite 800
    San Diego, CA 92101
4   Telephone: 619.400.0500
    Facsimile: 619.400.0501
5   christopher.ghio@dinsmore.com
    christopher.celentino@dinsmore.com
6   yosina.lissebeck@dinsmore.com

7   Special Counsel to Richard A. Marshack

8

9

10                **UNITED STATES BANKRUPTCY COURT**

11        **CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION**

12

13   In re:                                Case No.: 8:23-bk-10571-SC

14   THE LITIGATION PRACTICE GROUP P.C.,   Chapter 11

15        Debtor.                          **DECLARATION OF NANCY RAPOPORT
                                           IN SUPPORT OF MOTION OF TRUSTEE
16                                         RICHARD A. MARSHACK FOR ENTRY
                                           OF AN ORDER (A) APPROVING SALE
17                                         OF ASSETS FREE AND CLEAR OF ALL
                                           LIENS, CLAIMS, ENCUMBRANCES AND
18                                         INTERESTS PURSUANT TO 11 U.S.C.
                                           § 363(b) AND (B) APPROVING
19                                         ASSUMPTION AND ASSIGNMENT OF
                                           CERTAIN EXECUTORY CONTRACTS
20                                         AND UNEXPIRED LEASES AND OTHER
                                           AGREEMENTS**
21
                                           Date:  July 21, 2023
22                                         Time:  10:00 a.m.
                                           Judge: Hon. Scott C. Clarkson
23                                         Place: Courtroom 5C
                                                  411 W. Fourth Street
24                                                Santa Ana, CA  92701

25

26

27

28

EXHIBIT 3, PAGE 122

I, Nancy Rapoport, declare as follows:

1.  I am an attorney and a member of the faculty of the William S. Boyd School of Law, University of Nevada, Las Vegas.  A true and correct copy of my CV is attached hereto and incorporated herein by reference.  I have been contacted by Christopher Celentino, with whom I was involved in cases when I was a practicing attorney with Morrison and Foerster LLP in the earlier part of my career, to consider the possibility of appointment by the Court as the Monitor for compliance pursuant to a proposed Asset Purchase Agreement (the "APA"), to be considered by the Court at hearing noted herein.  I am in receipt of, and have reviewed, the proposed APA; for the purposes of this Declaration, there are comments and clarifications to my duties that I would request become part of the Appointment Order.  These comments and clarifications differ from the text of the current APA.  Mr. Celentino will propose those changes to the Court, the OUST, the Trustee, and the Committee in advance of the sale hearing on July 21, 2023.  Before my Dean can consider and approve my outside employment request, I will need to explain my duties to her; thus, it would be helpful to ensure that my duties are clearly set forth in the Appointment Order.  Based upon my discussions with Mr. Celentino, as set forth herein, I have expressed an interest to be considered for the role of Monitor, subject to the following disclosures and further subject to the proviso that the final terms of my proposed appointment, as set forth in the anticipated Appointment Order, are acceptable to my Dean and to me.

2.  I have personal knowledge of the matters set forth herein. If called as a witness in this matter, I could and would testify competently thereto.

3.  I serve on the ABI's Veterans and Servicemembers Task Force with Judge Clarkson. I know lawyers at many of the firms involved in this case, including lawyers at Pachulski Stang Ziehl & Jones and Bryan Cave Leighton Paisner (especially Sharon Weiss), Fox Rothschild, and Locke Lord.  I also have connections with the Office of the United States Trustee (the "USTO") on a nationwide basis, having done some expert work for the USTO in the past.

4.  I understand that the proposed terms of my employment as Monitor, as currently contemplated, are based upon Judge Drain's appointment of a compliance Monitor as set forth in the Purdue Pharma L.P., et al., v. Commonwealth of Massachusetts (In re Purdue Pharma, L.P., Bankr.

1

1    <u>S.D.N.Y. Case No. 19-23649 (RDD) Adv. Pro. No. 19-08289</u>, and that the appointment in this case

2    would be pursuant to the Court's power under 11 U.S.C. section 105(a) and the explicit written consent

3    of the Buyer pursuant to the APA to be executed in conjunction with the sale.

4         5.     I further understand that the APA contemplates that the Estate and the Buyer will each

5    advance $100,000 at the Closing of the APA as initial funding for my employment as a Monitor; and

6    that subsequent fees over that amount to be pursued by me and considered by the Court will be paid

7    from funds of the Estate, as approved.

8         6.     My current hourly rate is $975.00 per hour, adjusted each January.  Moreover,

9    pursuant to my employment arrangement with UNLV, the Estate will have to remit to "UNLV

10    Foundation-Boyd Law" $250.00 per month for any inadvertent use of state resources.  I have a

11    minimum monthly fee of $5,000.00.

12         7.     Because of my residence in Las Vegas, because of my teaching schedule, and to

13    preserve resources, I prefer for any court appearances to be by Zoom, so that I don't have to incur

14    unnecessary travel expenses.

15         8.     I am interested in exploring further with the Court and the parties the specific duties

16    that I am to perform.  I am concerned that my appointment as a Monitor pursuant to 11 U.S.C. § 105

17    may be subject to appeal and will want to address that issue with the Court and the Parties to ensure

18    that the appointment can survive any appeal, and is consented to by the confirmed Buyer, the Trustee,

19    the OUST, and the Creditors' Committee, or is otherwise a binding order of the Court concerning

20    said parties, prior to Closing of the proposed sale.

21         9.     The following represents the currently contemplated terms of employment as a

22    Monitor; however, prior to undertaking the role, I would expect to finalize the specifics of the role to

23    the Court's, my Dean's, and my satisfaction before agreeing to serve in this role.  It is my

24    understanding that the overarching role of a Monitor in this case is strictly to monitor the Buyer's

25    compliance with generally understood ethical standards and certain consumer protection obligations

26    and not to act as an attorney or to provide any legal advice whatsoever to the Buyer or any of the

27    Buyer's to-be-assumed clients.  Given the reach of the operations, my role shall not include specific

28    compliance with any given state's ethics rules. It shall be the role of the Buyer, and not the Monitor,

2

1 │ to seek legal counsel in terms of compliance with any specific state's legal ethics rules. It is not my

2 │ desire or expectation to be involved in any post-plan confirmation role in the case.

3 │ **Anticipated Duties:**

4 │ Appointment and Responsibilities of Monitor.

5 │ Pursuant to the APA, the Buyer shall consent to the appointment of, and the Court, in

6 │ light of such consent, shall appoint a Monitor with detailed, specified duties; among those will be:

7 │ 1.    The Monitor shall perform her duties according to the terms of the APA and

8 │ the Order of the Court Approving the APA and the Order Appointing Monitor, pursuant to which the

9 │ Monitor shall be vested with all rights and powers reasonably necessary to carry out such powers,

10 │ duties, authority, and responsibilities enumerated therein.

11 │ 2.    The Monitor shall work with all diligence to confirm and oversee compliance

12 │ with the ethical issues raised as part of the representations and warranties of the Buyer -- and the

13 │ underlying ethical compliance and consumer protections of the operations of its legal services

14 │ agreements with its clients -- as set forth in the APA. I understand the specific duties and mechanisms

15 │ for support of my role as Monitor will be set forth in a separate Order of Appointment that shall be

16 │ entered by the Court. I understand that I shall provide periodic (to be determined) reports to the

17 │ Trustee, the Committee, and the Bankruptcy Court as outlined below.

18 │ 3.    The Monitor shall:

19 │ a.    subject to any legally recognized privilege and as necessary or to

20 │ perform her duties hereunder, have full and complete access to the Buyer's personnel, books, records,

21 │ and facilities, and to any other information, as the Monitor may request. The Buyer, in conjunction

22 │ with the Trustee and the Committee, shall develop such information as the Monitor may request and

23 │ shall fully, completely, and promptly cooperate with the Monitor. The Monitor may raise with the

24 │ Trustee, Committee and the Court any issues relating to any failure of or delay in such cooperation

25 │ for an expedited resolution by the Court;

26 │ b.    serve, without bond or other security, at the cost and expense of the

27 │ Estate and the Buyer in accordance with the APA, with the Monitor's fees subject to final approval

28 │ by the Court; the Monitor shall submit fee applications every 120 days, and it is contemplated that

3

1 | the Court will authorize the payment of 80% of fees and 100% expenses each month, with a fee

2 | application to be filed every 120 days. It is further contemplated that the Monitor shall be authorized

3 | to use the services of Special Counsel to the Trustee for the purpose of preparing and submitting such

4 | fee applications and in filing any reports or other pleadings with the Court;

5 |       c.    have the authority to employ, upon Court approval, at the cost and

6 | expense of the debtor's estate, such consultants, accountants, attorneys, and other representatives and

7 | assistants as are necessary to carry out the Monitor's and responsibilities. The Monitor shall be

8 | authorized to use the services of the Trustee's Special Counsel and the Trustee's accountants to

9 | conduct forensic analysis of data for the Monitor, at the expense of the Estate. The Monitor shall

10 | serve     for     a     period     of     one     year     from

11 | date of appointment unless extended by the Court, at which time the Monitor shall submit a final

12 | report, and be discharged;

13 |       d.    have no obligation, responsibility or liability for the operations of the

14 | Buyer; and the Estate shall indemnify, defend and hold harmless the Monitor from any and all liability

15 | and expenses incurred in accordance with the Monitor's duties to be performed hereunder;

16 |       e.    file a first report on the 120th day after the Closing; and thereafter not

17 | less than every 90 days regarding compliance by the Buyer with the terms of the APA and the Order

18 | of Appointment of the Monitor; provided that elements of any such report may be filed under seal or

19 | subject to such other confidentiality Restrictions contained in the Appointment Order. The Court may,

20 | in response to such reports, provide such further direction to the Monitor as it deems appropriate, said

21 | determination to be made after notice and a hearing in conjunction with the Court's calendar and as

22 | directed by the Court.

23 |       f.    maintain as confidential the data of Buyer pursuant to guidelines as

24 | may be established in the appointment order; and each of the Monitor's consultants, accountants,

25 | attorneys and other representatives and assistants shall also maintain such confidentiality as deemed

26 | necessary by the parties; provided, however, that nothing shall restrict the Monitor from providing

27 | any information to the Court and the parties consistent with the terms of the Protective Order; and

28 |

4

1        g.     promptly seek an order requiring compliance or such other remedies as

2  may be appropriate under the circumstances should the Buyer not comply with its obligations under

3  the APA, and specifically section 12 thereof (Buyer's representations and warranties, except wth

4  respect to section 12(o), as section 12(o) shall be solely the responsibility of the Trustee):

5        4.    Disputes Regarding Compliance

6        a.     If the Monitor should develop a reasonable basis to believe the Buyer

7  is not in compliance with the terms of the APA or the Buyer's duties as set forth inthe Appointment

8  Order, the Monitor shall notify the Buyer, via the Buyer's General Counsel, in writing of the specific

9  objection, including identifying the provisions of the APA, the Appointment Order, or any ethics rule

10  that the practice appears to violate, and give the Buyer thirty (30) days to respond to the notification

11  and cure the conduct at issue, if necessary.

12        b.     To the extent that the Buyer fails to cure the alleged conduct within the

13  thirty (30) day period, the Monitor shall have ten (10) days to determine the appropriate action and

14  response, and shall notify the Trustee, the Committee, and the Court of the alleged violative practice

15  and may, but shall not be required to, recommend an appropriate action, response, or remedy to be

16  implemented by the Court; based upon the Monitor's notification, and recommendation, if any, either

17  the Trustee or the Committee may seek an appropriate remedy from the Bankruptcy Court via Noticed

18  Motion, or in the event of an emergency, in accordance with the Emergency procedures set forth in

19  the Local Rules of the United States Bankruptcy Court for the Central District of California, and all

20  other applicable rules.

21     I declare under penalty of perjury under the laws of the United States of America that the

22  foregoing is true and correct, and that this declaration is executed on this 17th day of July, 2023 at

23  Las Vegas, Nevada.

24

25

Nancy Rapoport

26

27

28

5

# NANCY B. RAPOPORT, J.D.

William S. Boyd School of Law
University of Nevada, Las Vegas
4505 S. Maryland Parkway
Mail Stop 451003
Las Vegas, NV 89154-1003
nancy.rapoport@unlv.edu
Cell:  713-202-1881

SSRN author page:  http://ssrn.com/author=260022
Google Scholar page:  http://scholar.google.com/citations?user=s7ElcsEAAAAJ&hl=en
IMDB.com page:  http://imdb.com/name/nm1904564/
Blog:  https://nancyrapoports.blog/

## EDUCATION

**Stanford Law School, J.D. (1985)**

*Selected activities and honors:*

- Note Editor, STANFORD LAW REVIEW (1984-85).
- Thesis:  *Computer Program for Secured Transactions* (1985).
- Technical assistant in various law school and all-university plays (1983-85).
- First Place, Stanford Women's Intramural Powerlifting Competition (1985).

**Rice University, B.A., *summa cum laude,* Legal Studies and Honors Psychology (1982)**

*Selected activities, honors, and scholarships:*

- Senior Thesis:  *The Effects of Time of Day on Cognitive Performance,* Psychology Department (1982).
- Phi Beta Kappa (1981).
- Houston Psychological Association Award for Excellence in Psychology (1982).
- Jones College Scholar (1981-82) and Academic Coordinator, Jones College (1980-82).
- President, Rice Hillel (1980-82).
- Student Advisor, Lovett College (1979-80).
- Member, Student Admissions Committee (1979-82).
- Founder, Rapoport Prize in Legal Studies (1982).
- Scholarships:  Max Roy Scholarship (1979-80, 1981-82); Jones College Scholarship (1981-82); Board of Governors Scholarship (1980-81).

**EMPLOYMENT**

**University of Nevada, Las Vegas**

- **Special Counsel to the President (2016-18).**
- **Acting Senior Vice President for Finance and Business (summer of 2017).**
- **Acting Executive Vice President & Provost (2015-16).**
- **Senior Advisor to the UNLV President (2014-15) (member of UNLV's Cabinet).**
- **Provost's Leadership Development Academy Coordinator (2013-14); Co-Coordinator (2014-15).**

- **William S. Boyd School of Law, University of Nevada, Las Vegas**
  - **UNLV Distinguished Professor (awarded in 2022).**
  - **Garman Turner Gordon Professor of Law (2007-present) (formerly the Gordon Silver Professor of Law).**
  - **Interim Dean (2012-13).**

  *Courses:* Basic Bankruptcy Law; Contracts; Professional Responsibility; Seminar on Corporate Scandals; Colloquium on Lawyers in Pop Culture; Business Law & Ethics; Bankruptcy Ethics.

- **Affiliate Professor of Business Law and Ethics, Lee Business School (renewable; 2014-present)**
  - **Co-Chair, Task Force on Scholarship, Lee Business School Strategic Planning Team (2014).**

*Responsibilities and Accomplishments as Special Counsel to the President:*

- The Executive Director of the Office of Compliance, the Ombuds Panel, the Special Projects Director, and the Interim Executive Director of the Office of Community Engagement reported to me.
- Coordinated, with Kyle Kaalberg (Special Projects Director), the continued implementation of UNLV's strategic plan (Top Tier).  In late 2018, UNLV was added to the list of Carnegie R1 institutions.
- Served as a member of the President's Cabinet.
- Coordinated and monitored compliance activities across UNLV.
- Interacted frequently with members of the Board of Regents and the Nevada System of Higher Education.

*Responsibilities and Accomplishments as Acting Executive Vice President and Provost:*

- The deans of the School of Allied Health Sciences, the Lee Business School, the School of Community Health Sciences (now the School of Public Health), the School of Dental Medicine, the College of Education, the Howard R. Hughes College of Engineering, the College of Fine Arts, the Graduate College, the Honors College, the William F. Harrah

College of Hotel Administration, the William S. Boyd School of Law, the College of Liberal Arts, the School of Medicine (co-reporting to the President), the School of Nursing, the College of Sciences, and the Greenspun College of Urban Affairs all reported to me, as did the Senior Vice Provost, the Vice Provost for Information Technology, the Assistant Vice President of Academic Resources, the Associate Vice Provost for the Office of Decision Support, and the Special Assistant to the Executive Vice President and Provost.

- Chaired the board of directors of UNLV Singapore Ltd.
- Worked with President Jessup, two co-chairs of the Top Tier Plan, and the chairs and co-chairs of five committees, to implement year one of the Top Tier strategic plan.
- Repaired relationships with the Faculty Senate.
- Hired three new deans (Liberal Arts, Fine Arts, and Allied Health) and one acting dean (Sciences).
- Reinstituted the three-year dean review process and provided more autonomy to the deans of schools and colleges.

*Responsibilities and Accomplishments as Acting Senior Vice President for Finance & Business:*

- The departments of Planning and Construction, Budgets, Campus Audit, Human Resources, Facilities Management, Administration (Delivery Service, Telecommunication Services, Parking Services, and Real Estate), Risk Management and Safety, Purchasing, and the Controller reported to me.
- Served as a member of the negotiating team for the Las Vegas Stadium (Las Vegas Raiders).
- Repaired a challenging set of internal management issues.

*Responsibilities and Accomplishments as Senior Advisor to the UNLV President:*

- Developed the strategic plan (Top Tier) by working in concert with former Presidents Donald Snyder and Len Jessup, Jim Thomson (the Special Advisor to the President for Regional Development and also the former CEO of the RAND Corp.), our consultants (Academic Leadership Associates), Kyle Kaalberg (then the Special Assistant to the President's Chief of Staff), over 200 stakeholders inside and outside UNLV.
- Continued to serve as the point person for the execution of UNLV's strategic plan during all other central administration roles.

*Responsibilities and Accomplishments as Interim Dean of Boyd School of Law:*

- The Associate Dean for Academic Affairs, the Associate Dean for Student Affairs, the Associate Dean for Administration and External Affairs, the Associate Dean for Faculty Development and Research, the Director of the Wiener-Rogers Law Library, the Director of Information Technology and the Budget Director all reported to me.
- Managed a budget of roughly $20 million.
- Facilitated the conversion process for legal writing professors to move from long-term contracts to tenure-track positions and facilitated the hiring of two new tenure-track professors.

- Significant fundraising success; systematized certain internal functions; and facilitated a review of our curriculum.
- *Honors:* Named "Faculty Member of the Year" (and faculty commencement speaker) by Boyd law students in 2021; named "Dean of the Year" by Boyd law students in 2013.

**University of Houston Law Center**
**Professor of Law (2006-07).**
**Dean (2000-06).**

*Responsibilities and Accomplishments as Dean:*

- The Associate Dean for Academic Affairs, the Associate Dean for Student Affairs, the Director of the O'Quinn Law Library, the Associate Dean for Information Technology, the Associate Dean for Finance and Administration and Chief Operating Officer of the Law Foundation, the Associate Dean for External Affairs and Executive Director of the Law Foundation, and the Director of CLE all reported to me.
- Presided over a record increase in the amount and size of gifts to the Law Center, even during a downturn in the economy; raised seven new Law Center professorships, in partnership with a special campaign of the University of Houston, in under two months.
- Facilitated the establishment of several new centers, programs, and institutes, including the Criminal Justice Institute, the Institute for Energy, Law & Enterprise (now the Program in Energy, Environment & Natural Resources), and the Center for Consumer Law.
- Reinvigorated the Blakely Advocacy Institute (BAI) and acquired the A.A. White Center for Dispute Resolution as part of the BAI.
- Encouraged the first major revamping of the Law Center's curriculum in twenty years.
- Hired fourteen new faculty members (three of which hold endowed chairs at the Law Center).
- Facilitated the Law Center's recovery from the devastation caused by Tropical Storm Allison on June 9, 2001, which poured over 12 feet of water into the Law Center's sub-basement and destroyed much of its library collection (over 175,000 volumes and 1,000,000 microfiche lost) and all of the Law Center's facilities. As part of the lessons learned during our recovery, hosted Loyola University New Orleans College of Law after Hurricane Katrina, until it could recover and return to New Orleans.

**University of Nebraska College of Law**
**Dean and Professor of Law (1998-00).**

*Responsibilities and Accomplishments as Dean:*

- The Associate Dean, the Assistant Dean for Administration and Student Services, the Assistant Dean for Career Services and Alumni Relations, the Director of the Law Library, the Director of Development, the Office Manager, and the Acting Head of the Nebraska Institute for Technology in the Practice of Law all reported to me.

Case 8:23-bk-10571-SC    Doc 1496    Filed 08/05/24    Entered 08/05/24 19:13:41    Desc
                    Main Document      Page 18 of 47

- Instituted the creation of a new Access database to enable all Law College administrative units to organize and share information; improved our systems for the scheduling of Law College events, the timely review of employees, and the cultivation and stewardship of donors; initiated the design of the new "image" of the Law College; and revamped the furnishings of the student lounge (at zero cost to the Law College).
- Raised significant funds for such needs as scholarships and professorships.
- Encouraged the establishment of new student organizations (including an organization for law students who preferred non-traditional career paths and a GLBT student organization).
- Encouraged the development of a link between an undergraduate "learning community" and the Law College.

**Moritz College of Law, The Ohio State University**
**Professor (1998).**
**Associate Dean for Student Affairs (1996-98).**
**Associate Professor (with tenure) (1995-98).**
**Assistant Professor (1991-95).**

*Responsibilities and Accomplishments as Associate Dean for Student Affairs:*

- Assistant Dean of Admissions and Financial Aid, the Financial Aid Counselor and Staff Assistant, and the Placement Director reported to me.
- Counseled potential applicants regarding admission to College of Law and counseled existing students on academic and non-academic issues.
- With our Development Director, facilitated the establishment and maintenance of scholarships and other relationships with donors.

**Morrison & Foerster LLP**
**Associate, Bankruptcy and Workouts Group, Business Department (1986-91).**

- Bankruptcy cases included *In re Toy Liquidating Co. (Worlds of Wonder), Plexus, Greyhound, Nucorp,* and *California Land & Cattle Co.*
- Significant experience in bankruptcies involving industries such as toy manufacturers, computers, livestock, and television stations.

**The Hon. Joseph T. Sneed, United States Court of Appeals for the Ninth Circuit**
**Judicial Clerk (1985-86).**

**PUBLICATIONS, GRANTS, SPECIAL TRAINING, AND PRESENTATIONS**

**Works in progress**

- Nancy B. Rapoport, *Training Law Students to Model Civility When Social Media Makes Civility Harder to Maintain,* ___ U. PITT. L. REV. ___ (2023) (invited speaker at *The Jurisprudence and Legacy of the Honorable Joseph F. Weis Jr. Symposium).*

- Nancy B. Rapoport & Joseph R. Tiano, Jr., *Reimagining "Reasonableness" Under Section 330(a) in a World of Technology, Data, and Artificial Intelligence,* ___ AM. BANKR. L.J. ___ (forthcoming 2023) (peer-reviewed).
- Nancy B. Rapoport, *Review of 2022 Books on Legal Education,* ___ GREEN BAG ___ (2023) (solicited manuscript).
- Nancy B. Rapoport, *Training Law Students to Model Civility When Social Media Makes Civility Harder to Maintain,* University of Pittsburgh School of Law, Symposium on the Jurisprudence and Legacy of the Honorable Joseph F. Weis Jr., ___ U. PITT. L. REV. ___ (2023) (invited speaker).
- Aspen Practice Perfect Series, *Professional Responsibility* (forthcoming 2024) (with Andrew M. Perlman and Melissa B. Shultz).

**Books**

- BERNARD A. BURK, VERONICA J. FINKELSTEIN & NANCY B. RAPOPORT, ETHICAL LAWYERING: A GUIDE FOR THE WELL-INTENTIONED (Aspen Publishing 2021) (second edition forthcoming 2024).
- NANCY B. RAPOPORT & JEFFREY D. VAN NIEL, CORPORATE SCANDALS AND THEIR IMPLICATIONS (3d ed.) (West Academic 2018).
- BLOOMBERG BNA BANKRUPTCY LAW TREATISE, A TREATISE WITH REAL-TIME UPDATES (contributing editor) (Bloomberg BNA 2014).
- NANCY B. RAPOPORT & JEFFREY D. VAN NIEL, LAW FIRM JOB SURVIVAL MANUAL: FROM FIRST INTERVIEW TO PARTNERSHIP (Wolters Kluwer 2014).
- NANCY B. RAPOPORT & JEFFREY D. VAN NIEL, LAW SCHOOL SURVIVAL MANUAL: FROM LSAT TO BAR EXAM (Aspen Publishers / Wolters Kluwer 2010).
- NANCY B. RAPOPORT, JEFFREY D. VAN NIEL & BALA G. DHARAN, ENRON AND OTHER CORPORATE FIASCOS: THE CORPORATE SCANDAL READER (Foundation Press 2d ed. 2009).
- STEVEN L. EMANUEL, STRATEGIES & TACTICS FOR THE MBE (Aspen Publishers / Wolters Kluwer 2009) (one of several revision authors).
- NANCY B. RAPOPORT & BALA G. DHARAN, ENRON: CORPORATE FIASCOS AND THEIR IMPLICATIONS (Foundation Press 2004).
- DAVID B. GOODWIN & NANCY B. RAPOPORT, AN ORAL HISTORY OF THE HONORABLE JOSEPH T. SNEED, Ninth Circuit Historical Society (1994) (solicited oral history).

**Reports**

- Reporter, American College of Bankruptcy Diversity, Equity, and Inclusion Committee (2022-present).
- Reporter, American College of Bankruptcy Select Commission on Diversity, Equity, and Inclusion (2021-2022).

- Lois R. Lupica & Nancy B. Rapoport, Co-Reporters, Final Report of the ABI National Ethics Task Force (2013), available at https://abi-org-corp.s3.amazonaws.com/materials/Final_Report_ABI_Ethics_Task_Force.pdf.

**Book chapters**

- Nancy B. Rapoport, *Compromising One's Principles: The Lesson of Mahlon Perkins and the Berkey-Kodak Case,* in Nancy B. Rapoport & Jeffrey D. Van Niel, Corporate Scandals and Their Implications 545 (3d ed.) (West Academic 2018).
- Nancy B. Rapoport, *Social Media Ethics Missteps for Lawyers (and Others),* Proceedings of the Sixtieth Annual Rocky Mountain Mineral Law Institute 3-1 (July 2014), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2557095.
- Nancy B. Rapoport, *Analysis and the Arts,* in Zenon Bankowski, Maksymilian Del Mar & Paul Maharg, The Arts and the Legal Academy: Beyond Text in Legal Education 101 (Ashgate Press 2012) (solicited essay), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2464202.
- Collier Compensation, Employment and Appointment of Trustees and Professionals in Bankruptcy Cases (Lexis-Nexis 2009) (one of several revision authors).
- Nancy B. Rapoport, *Swimming with Shark,* in Lawyers In Your Living Room! Law On Television 163 (Michael Asimow, ed., 2009) (solicited manuscript), chapter available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1157053.
- Nancy B. Rapoport, *Reflections of a Former Dean, in* Law School Leadership Strategies: Top Deans on Benchmarking Success, Incorporating Feedback from Faculty and Students, and Building the Endowment 199 (Aspatore Books 2006) (solicited), abstract available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=979321.
- Nancy B. Rapoport, *Bankruptcy Ethics Issues for Solos and Small Firms, in* Attorney Liability in Bankruptcy (Corinne Cooper, ed. & Catherine E. Vance, contributing ed., ABA 2006) (solicited manuscript).
- Nancy B. Rapoport, *Lord of the Flies: The Development of Rules Within an Adolescent Culture, in* Screening Justice—The Cinema of Law: Fifty Significant Films of Law, Order and Social Justice 253 (Rennard Strickland, Teree Foster & Taunya Banks, eds. 2006) (solicited manuscript), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=949168.
- Nancy B. Rapoport & Jeffrey D. Van Niel, *Dr. Jekyll & Mr. Skilling: How Enron's Public Image Morphed from the Most Innovative Company in the* Fortune 500 *to the Most Notorious Company Ever, in* Enron: Corporate Fiascos and Their Implications 77 (Nancy B. Rapoport & Bala G. Dharan, eds.) (Foundation Press 2004), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=505662.

**Articles, book reviews, and essays**

- John G. Cameron & Nancy B. Rapoport, *Ethics For Real Estate Lawyers and Practice Today,* 39 The Practical Real Estate Lawyer 30 (ALI CLE, May 2023), available at https://papers.ssrn.com/sol3/papers.cfm?abstract_id=4417451.

- Nancy Rapoport, *Stanford Law Protest Highlights Rise of Incivility,* LAW360 (Mar. 28, 2023), available at https://www.law360.com/personal-injury-medical-malpractice/articles/1590537/stanford-law-protest-highlights-rise-of-incivility-in-discourse.

- Nancy B. Rapoport & Joseph R. Tiano, Jr., *Billing Judgment,* 96 AM. BANKR. L.J. 311 (2022) (peer-reviewed publication), available at https://papers.ssrn.com/sol3/papers.cfm?abstract_id=4172409.

- Joseph R. Tiano, Nancy B. Rapoport & William J. Siroky, *The Specter of Malpractice: When Law Firm General Counsel and Risk Management Professionals Are Confronted With Potential Malpractice Claims and Ethics Violations,* 81 MARYLAND L. REV. (ONLINE) 1 (2021), available at https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3932534.

- Nancy B. Rapoport, *Being a First—Over and Over Again,* DENVER L. REV. FORUM (7/31/2021) available at https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3897378.

- Nancy B. Rapoport, *Telling the Story on Your Timesheets: A Fee Examiner's Tips for Creditors' Lawyers and Bankruptcy Estate Professionals,* 15 BROOK. J. OF CORP. FIN. & COM. L. 359 (2021), available at https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3853962.

- Nancy B. Rapoport & Joe Tiano, *Biglaw Surprises Some With Record Profits in 2020—Now What?,* Above the Law (April 30, 2021), available at https://abovethelaw.com/2021/04/biglaw-surprises-some-with-record-profits-in-2020-now-what/.

- Nancy B. Rapoport & Joseph R. Tiano, Jr., *The Legal Industry's Second Chance To Get It Right,* 57 WILLAMETTE L. REV. 1 (2021), available at https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3773197.

- Nancy B. Rapoport & Joseph R. Tiano, Jr., *Using Data Analytics to Predict an Individual Lawyer's Legal Malpractice Risk Profile (Becoming an LPL "Precog"),* 6 U. PA. J. L. & PUB. AFF. 267 (2020), available at https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3760626.

- Nancy B. Rapoport, *Help Your Provost Help You During Promotion and Tenure Decisions,* 24 THE GREEN BAG 83 (2020) (peer-reviewed), available at https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3748896.

- Nancy B. Rapoport, *Want to Take Control of Professional Fees in Large Chapter 11 Bankruptcy Cases? Talking With Your Client's General Counsel is a Good First Step,* Harvard Law School Bankruptcy Roundtable, July 28, 2020, available at http://blogs.harvard.edu/bankruptcyroundtable/2020/07/28/want-to-take-control-of-professional-fees-in-large-chapter-11-bankruptcy-cases-talking-with-your-clients-general-counsel-is-a-good-first-step/.

- Nancy B. Rapoport, *Training Law Students To Maintain Civility in Their Law Practices as a Way To Improve Public Discourse,* North Carolina Law Review 2019 Symposium, 98 N.C. L. REV. 1143 (2020) (solicited manuscript), available at https://ssrn.com/abstract=3616995.

- Nancy B. Rapoport & Joe Tiano, *COVID-19 Could Catalyze The Legal Industry Renaissance,* Above the Law (April 29, 2020), available at https://abovethelaw.com/2020/04/covid-19-could-catalyze-the-legal-industry-renaissance/.

- Nancy B. Rapoport, *Using General Counsel to Set the Tone for Work in Large Chapter 11 Cases,* 88 FORDHAM L. REV. 1727 (2020) (solicited manuscript) (presented at the Stein Center for Law and Ethics Colloquium on Corporate Lawyers (October 2019)), available at https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3591118.

- Nancy B. Rapoport, *Client-Focused Management of Expectations for Legal Fees in Large Chapter 11 Cases,* 28 AM. BANKR. INST. L. REV. 39 (2020), available at https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3541347.

- Nancy B. Rapoport & Joseph R. Tiano, Jr., *Leveraging Legal Analytics and Spend Data as a Law Firm Self-Governance Tool,* XIII J. BUS., ENTREPRENEURSHIP & L. 171 (2019) (presented at Arizona State University's 7th Annual Conference on the Governance of Emerging Technologies & Science: Law, Policy & Ethics (May 2019)), available at https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3525660.

- Nancy B. Rapoport & Joseph R. Tiano, Jr., *Legal Analytics, Social Science, and Legal Fees: Reimagining "Legal Spend" Decisions in an Evolving Industry*, Georgia State Symposium on Legal Analytics, 35 GA. ST. U. L. REV. 1269 (2019), available at https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3418465.

- Dwayne J. Hermes, Erica R. LaVarnway & Nancy B. Rapoport, *A Solutions-Oriented Approach: Changing How Insurance Litigation Is Handled by Defense Law Firms,* 2017 J. PROF'L L. 129 (peer-reviewed annual journal of the Center for Professional Responsibility of the American Bar Association), available at https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3104055.

- Nancy B. Rapoport, *How Teams Can Help You (or Hurt You) When It Comes to Ethics,* December 2017 ABI J. 24, available at https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3085229.

- Nancy B. Rapoport & Charlie Douglas, *High Performance Organizational Teams,* LISI Estate Planning Newsletter #2563 (July 3, 2017), available at http://www.leimbergservices.com and at https://papers.ssrn.com/sol3/papers.cfm?abstract_id=2998424.

- Nancy B. Rapoport, *In Praise of Margaret Howard,* 74 WASH. & LEE L. REV. 641 (2017), available at https://papers.ssrn.com/sol3/papers.cfm?abstract_id=2981404.

- Nancy B. Rapoport, *Ethics: Why We Must Play Well with Others (and Why We Don't),* Rocky Mountain Mineral Law Foundation, MANUAL OF THE ADVANCED PUBLIC LANDS SPECIAL INSTITUTE 587 (2017), available at https://papers.ssrn.com/sol3/papers.cfm?abstract_id=2917346.

- Nancy B. Rapoport, *On Shared Governance, Missed Opportunities, and Student Protests*, 17 NEV. L.J. 1 (2016), available at http://ssrn.com/abstract=2885539.

- Randy D. Gordon & Nancy B. Rapoport, *Virtuous Billing,* 15 NEV. L.J. 698 (2015), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2670628.

- Nancy B. Rapoport, *"Nudging" Better Lawyer Behavior: Using Default Rules and Incentives to Change Behavior in Law Firms,* 4 ST. MARY'S J. L. ETHICS & MALP. 42 (2014) (solicited manuscript for symposium on Legal Malpractice and Ethics), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2460078.

- Nancy B. Rapoport, *The Client Who Did Too Much,* 47 AKRON L. REV. 121 (2014) (solicited as part of the Joseph G. Miller and William C. Becker Center for Professional Responsibility's Symposium on Navigating the Practice of Law in the Wake of Ethics 20/20), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2412496.

- Nancy B. Rapoport, *Plus Ça Change, Plus C'est La Même Chose,* 17 GREEN BAG 55 (2013) (solicited manuscript), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2404069.

- Lois R. Lupica & Nancy B. Rapoport, *Best Practices for Working with Fee Examiners,* 32 AM. BANKR. INST. J. 20 (June 2013), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2279642.

- Nancy B. Rapoport, *Rethinking U.S. Legal Education: No More "Same Old, Same Old,"* 45 CONN. L. REV. 1409 (2013), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2275315.
- Nancy B. Rapoport, *Managing U.S. News & World Report—The Enron Way,* 42 GONZAGA L. REV. 423 (2013), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2255194.
- Nancy B. Rapoport, Book Review, Brian Z. Tamanaha, *Failing Law Schools* (2012), 47 L. & SOC. REV. 229 (2013) (solicited review), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2233617.
- Nancy B. Rapoport, *Black Swans, Ostriches, and Ponzi Schemes,* 42 GOLDEN GATE L. REV. 627 (2012) (solicited manuscript for symposium), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2131393.
- Nancy B. Rapoport, *The Case for Value Billing in Chapter 11,* 7 J. BUS. L. & TECH. LAW 117 (2012), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2039506.
- Nancy B. Rapoport, *Changing the Modal Law School: Rethinking U.S. Legal Education in (Most) Schools,* 116 PENN ST. L. REV. 1119 (2012), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2038409 (republished at 122 DICKINSON L. REV. 189 (2017)).
- Jennifer Gross & Nancy B. Rapoport, *Is the Attorney-Client Privilege Under Attack?,* GP | SOLO MAGAZINE 47 (October-November 2010), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1704026.
- Nancy B. Rapoport, *Rethinking Fees in Chapter 11 Bankruptcy Cases,* 5 J. BUS. & TECH. LAW 263 (2010) (solicited manuscript for University of Maryland School of Law's symposium on *Examining Government Reform in the Financial Crisis*), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1625102.
- Nancy B. Rapoport, *Through Gritted Teeth and Clenched Jaw: Court-Initiated Sanctions Opinions in Bankruptcy Courts,* 41 ST. MARY'S L.J. 701 (2010) (solicited manuscript for St. Mary's 9th Annual Symposium on *Legal Malpractice and Professional Responsibility),* available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1628275.
- C.R. Bowles & Nancy B. Rapoport, *Debtor Counsel's Fiduciary Duty: Is There a Duty to Rat in Chapter 11?,* 29 AM. BANKR. INST. JOURNAL 16 (2010), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1544930.
- Nancy B. Rapoport, *Academic Freedom and Academic Responsibility* (reviewing MATTHEW W. FINKIN & ROBERT C. POST, FOR THE COMMON GOOD: PRINCIPLES OF AMERICAN ACADEMIC FREEDOM (Yale University Press 2009)), in 13 GREEN BAG 2D 189 (Winter 2010) (solicited manuscript), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1544932.
- Eric Van Horn & Nancy B. Rapoport, *Restructuring the Misperception of Lawyers: Another Task for Bankruptcy Professionals,* 28 AM. BANKR. INST. JOURNAL 44 (2009), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1472211.
- Nancy B. Rapoport, *Where Have All the (Legal) Stories Gone?,* M/E INSIGHTS 7 (Fall 2009) (publication of the Association of Media and Entertainment Counsel), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1545443.

- Nancy B. Rapoport, *The real reason why businesses make bad decisions* (reviewing JONATHAN R. MACEY, CORPORATE GOVERNANCE: PROMISES KEPT, PROMISES BROKEN (Princeton University Press 2008)), in 18 BUS. LAW TODAY 52 (July/Aug. 2009) (solicited manuscript), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1425118.

- Nancy B. Rapoport, *Lessons From Enron—And Why We Don't Learn From Them,* May/June 2009 COMMERCIAL LENDING REVIEW 23, available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1413937.

- Colin Marks & Nancy B. Rapoport, *Corporate Ethical Responsibility and the Lawyer's Role in a Contemporary Democracy,* 77 FORDHAM L. REV. 1269 (2009) (solicited manuscript), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1376475.

- Nancy B. Rapoport & Roland Bernier III, *(Almost) Everything We Learned About Pleasing Bankruptcy Judges, We Learned in Kindergarten,* 27 AM. BANKR. INST. J. 16 (July/August 2008), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1157103.

- Nancy B. Rapoport, *The Curious Incident of the Law Firm That Did Nothing in the Night-Time* (reviewing MILTON C. REGAN, JR., EAT WHAT YOU KILL: THE FALL OF A WALL STREET LAWYER (Univ. of Michigan Press 2004)), in 10 LEGAL ETHICS 98 (2007), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1017627 and at http://www.tandfonline.com/doi/abs/10.1080/1460728X.2007.11423884.

- Nancy B. Rapoport & Roland Bernier, *Bankruptcy Pro Bono Representation of Consumers: The Seven Deadly Sins,* 44 HOUS. LAWYER 18 (June 2007), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1051221.

- Nancy B. Rapoport, *Not Quite "Them," Not Quite "Us": Why It's Difficult for Former Deans to Go Home Again,* 38 U. TOLEDO L. REV. 581 (2006) (solicited manuscript), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=936251.

- Nancy B. Rapoport, *Eating Our Cake and Having It, Too: Why Real Change Is So Difficult in Law Schools,* 81 IND. L.J. 359 (2006) (solicited manuscript) (symposium at Indiana University-Bloomington School of Law—*The Next Generation of Law School Rankings*), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=703843.

- Nancy B. Rapoport, *Enron and the New Disinterestedness—The Foxes Are Guarding the Henhouse,* 13 AM. BANKR. INST. L. REV. 521 (2005) (solicited manuscript), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=936167.

- Nancy B. Rapoport, *Decanal Haiku,* 37 U. TOLEDO L. REV. 131 (2005) (solicited manuscript), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=936166.

- Nancy B. Rapoport, *Recent Developments in Bankruptcy Law,* 35 TEXAS TECH. L. REV. 543 (2004) (solicited manuscript), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=938551.

- Nancy B. Rapoport, *"Venn" and the Art of Shared Governance,* 35 U. TOLEDO L. REV. 169 (2003) (solicited manuscript), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=936247.

- Nancy B. Rapoport, *Examining Enron's enablers: Watkins' perspective makes Swartz's account stand out,* HOUSTON CHRONICLE, March 23, 2003, at *Zest* 15 (solicited book review).

- Nancy B. Rapoport, *Enron, Titanic, and the Perfect Storm*, 71 FORDHAM L. REV. 1373 (2003) (solicited manuscript for a special issue on ethics), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=498122; also included as an essay in ENRON: CORPORATE FIASCOS AND THEIR IMPLICATIONS 927 (Nancy B. Rapoport & Bala G. Dharan, eds.) (Foundation Press 2004).
- Nancy B. Rapoport, *The Intractable Problem of Bankruptcy Ethics: Square Peg, Round Hole,* 30 HOFSTRA L. REV. 977 (2002) (solicited manuscript for ethics symposium), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=936235.
- Nancy B. Rapoport, *In Memoriam: Yale Rosenberg*, 39 HOUS. L. REV. 869 (2002) (solicited essay), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1598446.
- Nancy B. Rapoport & Jeffrey D. Van Niel, *"Retail Choice" Is Coming: Have You Hugged Your Utilities Lawyer Today? (Part II),* August 2002 NORTON BANKRUPTCY LAW ADVISER 2, available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=963913.
- Nancy B. Rapoport, *Multidisciplinary Practice After In Re Enron: Should the Debate on MDP Change At All?,* TEXAS BAR JOURNAL 446 (May 2002), available at http://www.texasbar.com/Template.cfm?Section=Home&Template=/ContentManagement/ContentDisplay.cfm&ContentID=5999.
- Nancy B. Rapoport & Jeffrey D. Van Niel, *"Retail Choice" Is Coming: Have You Hugged Your Utilities Lawyer Today? (Part I),* February 2002 NORTON BANKRUPTCY LAW ADVISER 4, available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=963912.
- Nancy B. Rapoport, *Is "Thinking Like a Lawyer" Really What We Want to Teach?,* in *Erasing Lines: Integrating the Law School Curriculum,* 2001 ALWD CONF. PROCEEDINGS 91, available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=936248.
- Nancy B. Rapoport, *When Local IS Global: Using a Consortium of Law Schools to Encourage Global Thinking,* 20 PENN STATE INT'L LAW REVIEW 19 (2001) (transcript of AALS Annual Meeting session).
- Nancy B. Rapoport, *Of Cat-Herders, Conductors, Fearless Leaders, and Tour Guides,* 33 U. TOLEDO L. REV. 161 (2001) (solicited manuscript), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=936245.
- Nancy B. Rapoport, *Presidential Ethics: Should a Law Degree Make a Difference?,* 14 GEO. J. L. ETHICS 725 (2001), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=260021.
- Nancy B. Rapoport, *Going from "Us" to "Them" in Sixty Seconds,* 31 U. TOLEDO L. REV. 703 (2000) (solicited manuscript), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=936171.
- Nancy B. Rapoport, *Dressed for Excess: How Hollywood Affects the Professional Behavior of Lawyers,* 14 NOTRE DAME J. OF LAW, ETHICS & PUBLIC POLICY 49 (2000) (solicited manuscript), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=936188.
- Nancy B. Rapoport, *Ratings, Not Rankings: Why* U.S. News & World Report *Shouldn't Want To Be Compared To* Time *and* Newsweek—*or* The New Yorker, 60 OHIO ST. L.J. 1097 (1999), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=936246.
- Nancy B. Rapoport, *Living "Top-Down" in a "Bottom-Up" World: Musings on the Relationship Between Jewish Ethics and Legal Ethics,* 78 NEB. L. REV. 18 (1999), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=936241.

- Nancy B. Rapoport, *Moral Bankruptcy: Modeling Appropriate Attorney Behavior in Bankruptcy Cases,* THE NEBRASKA LAWYER 14 (March 1999) (solicited manuscript), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1598447.

- Nancy B. Rapoport, *The Need For New Bankruptcy Ethics Rules: How Can "One Size Fits All" Fit Anybody?,* 10 PROFESSIONAL LAWYER 20 (1998) (solicited manuscript), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=939448.

- Nancy B. Rapoport, *Our House, Our Rules: The Need for a Uniform Code of Bankruptcy Ethics,* 6 AM. BANKR. INST. L. REV. 45 (1998) (solicited manuscript), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=936343.

- C.R. Bowles & Nancy B. Rapoport, *Has the DIP's Attorney Become the Ultimate Creditors' Lawyer in Bankruptcy Reorganization Cases?,* 5 AM. BANKR. INST. L. REV. 47 (1997) (symposium manuscript), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=936240.

- Nancy B. Rapoport, *Ethics: Is Disinterestedness Still a Viable Concept?  A Roundtable Discussion,* 5 AM. BANKR. INST. L. REV. 201 (1997) (solicited transcript) (with co-panelists John D. Ayer, the Hon. Charles N. Clevert, the Hon. Joel Pelofsky & Bettina Whyte), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=936340.

- Nancy B. Rapoport, *Turning the Microscope on Ourselves: Self-Assessment by Bankruptcy Lawyers of Potential Conflicts of Interest in Columbus, Ohio,* 58 OHIO ST. L.J. 1421 (1997), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=938611.

- Nancy B. Rapoport, *Avoiding Judicial Wrath: The Ten Commandments for Bankruptcy Practitioners,* 5 J. BANKR. L. & PRAC. 615 (September/October 1996) (solicited manuscript), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=940769.

- Nancy B. Rapoport, *Seeing the Forest* and *The Trees: The Proper Role of the Bankruptcy Attorney,* 70 IND. L.J. 783 (1995), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=938527.

- Nancy B. Rapoport, *Worth Reading: Review of Annual Survey of Bankruptcy Law,* TURNAROUNDS AND WORKOUTS (Beard Group, Inc.), January 15, 1995, at 6 (solicited book review).

- Nancy B. Rapoport, *Turning and Turning in the Widening Gyre: The Problem of Potential Conflicts of Interest in Bankruptcy,* 26 CONN. L. REV. 913 (1994), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=936337.

**Op-eds**

- Nancy Rapoport & Mary Langsner, *Why does the bankruptcy code discriminate against disabled veterans?,* THE HILL (Jan. 24, 2019), available at https://thehill.com/opinion/finance/426854-why-does-the-bankruptcy-code-discriminate-against-disabled-veterans.

- Lois R. Lupica & Nancy Rapoport, *Consumer Debtors Should Not Have To Go It Alone,* DOW JONES DAILY BANKRUPTCY REVIEW (May 1, 2013), available at http://bankruptcynews.dowjones.com/article?an=DJFDBR0020130501e951qbfa8&from=alert&pid=10&ReturnUrl=http%3a%2f%2fbankruptcynews.dowjones.com%3a80%2farticle%3fan%3dDJFDBR0020130501e951qbfa8%26from%3dalert%26pid%3d10.

- Nancy Rapoport, *Board Smart Not to Raise the Superintendent Salary Stakes,* LAS VEGAS SUN, September 5, 2010, available at http://www.lasvegassun.com/news/2010/sep/05/board-smart-not-raise-superintendent-salary-stakes/.

- Nancy B. Rapoport, *Enron an Example: Grads Lost in Trees,* HOUSTON CHRONICLE, February 24, 2002, at 4H.
- Nancy B. Rapoport, *Wrestling with the Problem of Potential Conflicts of Interest in Bankruptcy,* 26 BANKRUPTCY COURT DECISIONS WEEKLY NEWS AND COMMENT (LRP Publications), March 7, 1995, at A3 (solicited editorial).

**Grants**

- 2002 participant, Harvard Institutes for Higher Education Management and Leadership in Education (MLE) Program (partial scholarship from Harvard, $1,000 in 2001—had to withdraw, due to the aftermath of Tropical Storm Allison, but returned to participate in 2002).
- 1999 participant, Harvard Institutes for Higher Education Management Development Program (MDP) (partial scholarship from Harvard, $1,000).
- 1995 Instructional Technology Small Grant (Ohio State funds; $850).
- 1995 West Publishing/NCAIR Fellow ($15,000 grant for developing a computer program that teaches law students about conflicts of interest in bankruptcy law).
- 1994 participant in Summer Institute of the Law & Society Association (Wellesley, Massachusetts).
- 1993 University Seed Grant for the study of creditor representation in bankruptcy (1993 grant from Ohio State University's Office of Research & the College of Law).

**Podcasts (as guest speaker)**

- PLUS blog (with Joseph R. Tiano, Jr.), *Becoming an LPL "Precog",* https://plusblog.org/2022/10/10/plus-podcast-becoming-an-lpl-precog/.
- Jay Edelson, NON-COMPLIANT, *Episode 13: The One Where Professor Nancy Rapoport Discusses the Future of Law Firms,* July 1, 2020, available at https://podcasts.apple.com/us/podcast/episode-13-one-where-professor-nancy-rapoport-discusses/id1491233296?i=1000481718338.
- Jay Edelson, NON-COMPLIANT, *Episode 14: The (Second) One Where Professor Nancy Rapoport Discusses the Future of Law Firms,* July 13, 2020, available at https://podcasts.apple.com/us/podcast/episode-14-second-one-where-professor-nancy-rapoport/id1491233296?i=1000484787064.

**Selected academic presentations**

*Anthropology of higher education / higher education generally*

- Society for Applied Anthropology's 79th annual meeting, *Moving Seamlessly From Faculty Status to Administrator and Then Back Again* (March 2019).
- Society for Applied Anthropology's 78th annual meeting, *Concentric and Overlapping Circles of Leadership in Higher Education* (April 2018).
- Society for Applied Anthropology's 77th annual meeting, *Women and Diversity: Being a "First"* (March 2017).

- Presentation at 2010 Annual Meeting of Association of American Law Schools, Section on Women in Legal Education, *Succeeding in Legal Education* (January 2010).
- Presentation at 2009 Annual Meeting of Association of American Law Schools, Committee on Curriculum Issues, *Redesigning Legal Education* (January 2009).
- Presentations at the 2007 Annual Meeting of Association of American Law Schools:
  - *Workshop on the Ratings Game (or Not!):  The Search for Sensible Assessment,* moderator for plenary discussion, *We Didn't Even Bring the Box: A Roundtable Discussion on Creative Alternatives,* http://www.aals.org/am2007/wednesday/ratings.html.
  - Panelist, Section on Continuing Legal Education, Co-Sponsored by Section on
  - Professional Responsibility, *Legal Ethics CLE in the Law School Setting: Can It Be Practical, Academic, and Interesting at the Same Time?*
  - Panelist, Section for the Law School Dean, *What I Wish I Had Known Then: A Conversation Among Deans.*
- Symposium at Indiana University-Bloomington School of Law, *Eating Our Cake and Having It, Too: Why Real Change Is So Difficult in Law Schools* (March 2005).
- "Better Learning, Better Lawyers" Conference, *Legal Education in the 21st Century: Radical Design for a Changing Profession* (August 2002).
- Moderator of plenary session of the Annual Meeting of Association of American Law Schools, *Mini-Workshop on Major Issues of the 21st Century: The Impact on the Legal Academy and Law Students* (January 2000).

*Social science and ethics / social science and governance / social science and lawyer behavior / bankruptcy law*

- University of Pittsburgh School of Law, *Irrepressible Civility, Professionalism, and Ethics in Defining the Lawyering Career,* Symposium on The Jurisprudence and Legacy of the Honorable Joseph F. Weis Jr. (with Abraham C. Reich and Nathan M. Crystal) (March 2023).
- The Stein Center for Law and Ethics, Fordham University School of Law, Colloquium on Corporate Lawyers, *Using General Counsel to Set the Tone for Work in Large Chapter 11 Cases* (October 2019).
- Pontificia Universidad Javeriana Cali (Colombia)'s International Congress of Corporate Law, *Corporate Social Responsibility and Social Science* (November 2017) (invited speaker).
- Colombia's Superintendency of Companies, *Corporate Governance, Compliance and Business Ethics* (May 2016) (invited speaker).
- Colombia's Superintendency of Companies, Responsibility of Administrators and Business Ethics Seminar, *Why Smart People Make Bad Decisions* (March 2015) (invited speaker).
- Boyd School of Law, Conference on Psychology and Lawyering: Coalescing the Field, *Using Psychology to Change Law Firms' Default Incentive Structures* (with Randy D. Gordon) (invited panelist) (February 2014).
- The Ohio State University Moritz College of Law, faculty workshop presentation on *"Nudging" Better Lawyer Behavior: Using Default Rules and Incentives to Change Behavior in Law Firms* (November 2013).
- The Joseph G. Miller and William C. Becker Center for Professional Responsibility's Symposium on Navigating the Practice of Law in the Wake of Ethics 20/20, *What It Means To Be a Lawyer in These Uncertain Times (Part I)* (invited panelist) (April 2013).

Case 8:23-bk-10571-SC    Doc 1486    Filed 08/05/24    Entered 08/05/24 19:36:41    Desc
Main Document    Page 29 of 47

- Roger Williams University School of Law, Women Who Lead Series, *Why the World Needs Nay-Sayers* (keynote speaker) (March 2010).
- Distinguished Lecturer, The Chapman Dialogue Series, Chapman University School of Law, *Why No Amount of Regulation Is Likely to Prevent Corporate Scandals* (February 2010).
- Association of American Law Schools, Annual Meeting, Section on Continuing Legal Education (co-sponsored by Section for the Law School Dean), *Exploring the Options for the Future of Legal Education* (with Kellye Y. Teste, Daniel McCarroll, Gary A. Munneke, and Ellen Y. Suni) (January 2010).
- Presentation at Fordham Law School's Colloquium, *The Lawyers' Role in a Contemporary Democracy* (with Colin Marks) (September 2008).
- Adjunct professor, St. John's University School of Law, LL.M. in Bankruptcy Program (Enron seminar), St. John's University School of Law Faculty, *Enron: Is It Still Relevant?* (March 2006 & March-April 2007).
- AALS Workshop—Do You Know Where Your Students Are?  Langdell Logs On to the 21st Century, AALS Annual Meeting, *The Changing Face of the Deanship* (January 2002).
- The 2001 Legal Ethics Conference, Hofstra University School of Law, *Legal Ethics—What Needs Fixing?* (September 2001).
- AALS Bankruptcy Workshop, *Teaching Bankruptcy as a Vehicle for Teaching Other Values* (May 2001).
- ALWD (Association of Legal Writing Directors) Biennial Conference, *Do "Best Practices" in Legal Education Include an Obligation to the Legal Profession to Integrate Theory, Skills, and Doctrine in the Law School Curriculum?* (July 2001).
- AALS Workshop for New Law Teachers, *Satisfying Your Multiple Constituencies (How Your Dean Can Help)* (July 2000 & July 1999).
- Annual Meeting of the Association of American Law Schools, Creditors' & Debtors' Rights Section, *Local Cultures + Judicial Discretion = National Confusion?: Equities, Equations, and the "Uniformity" of the Bankruptcy Code* (January 1998).

**Selected continuing legal education programs and other professional presentations**

*Legal education / the legal profession generally*

- *Convergence of Legal Risk Management and Business Strategy Consulting,* Legal Foresight Summit (with David Kamien, Scott Leeb, and Mark Ford) (March 2023).
- *Using Data Analytics to Predict an Individual Lawyer's Legal Malpractice Risk Profile,* General Counsel Roundtable (with Joseph R. Tiano, Jr.) (June 2022).
- *Navigating Ethical Issues in the New Remote World,* 128th Annual Convention of the Commercial Law League of America (keynote) (May 2022).
- *Ethics in the Movies:  Lessons for Real Life,* United States District Court Conference, District of Nevada (plenary) (May 2022).
- *The Specter of Malpractice,* General Counsel Roundtable (with Joseph R. Tiano, Jr.) (April 2022).

- *Leveraging Legal Analytics and Spend Data as a Law Firm Self-Governance Tool,* Arizona State University's 7th Annual Conference on the Governance of Emerging Technologies & Science: Law, Policy & Ethics (with Joseph R. Tiano, Jr.) (May 2019).
- 2019 Mid-Year Meeting, National Organization of Bar Counsel, *A Look Inside the Incubator— The Challenges Facing Today's Law Students, Law Schools, and Newly-Minted Lawyers* (with Nelson Page and Ari Telisman) (January 2019).
- Law School Admission Council's Annual Meeting, *"Soothing the Savage Beast": The Art of Working Effectively With Difficult People* (with Floyd Weatherspoon) (June 2011).
- Houston Bar Minority Opportunities in the Legal Profession Committee & Minority Corporate Counsel Association: Business Development in a Belt-Tightening Economy, *Overcoming Barriers and Opening Doors to Your Personal Success* (February 2002).
- LSAC Academic Support Conference, *Why Support Academic Support Programs?* (June 2000).
- LSAC Annual Meeting, *Establishing a Partnership With a New Dean* (June 2000).
- American Bar Association's Workshop for New Law Deans, *Reflections of an Ex-Novice Dean* (June 1999).
- Annual Conference of the National Association for Law Placement, *Reliable Evaluation of Law Schools: Going Beyond Law School Rankings* (April 1999).

*Bankruptcy / Ethics*

- American College of Bankruptcy, *Attorney Fees in Consumer Cases: A Policy and Ethics Discussion* (with Joyce Babin and Areya Holder Aurzada) (March 2023).
- American Bankruptcy Institute, Winter Leadership Conference, *Don't Just Say No: Technology, Ethics and the Changing Practice of Law* (with Prof. Lois Lupica and Joseph R. Tiano, Jr.) (December 2022).
- State Bar of Montana, Annual Meeting of Bankruptcy Section, *Billing Judgment* (July 2022).
- Annual meeting of the National Association of Chapter 13 Trustees, *Ethical Implications of Remote Lawyering Post-Pandemic* (plenary) (July 2022).
- Ninth Circuit Conference of Chief Bankruptcy Judges, Bankruptcy Court Clerks and Bankruptcy Lawyer Representatives, *Billing Judgment* (March 2022).
- Annual Meeting of National Conference of Bankruptcy Judges, *Start Your Engines! Jeopardy— the Broken Bench Edition* (with Demetra Liggins and Judges Pamela Pepper and Catherine J. Furay) (October 2021).
- Los Angeles Chapter, Federal Bar Association, 17th Annual Bankruptcy Ethics Symposium, keynote address, *Telling the Story on Your Timesheets: A Fee Examiner's Tips for Creditors' Lawyers and Bankruptcy Estate Professionals* (November 2020).
- AMERICAN BANKRUPTCY INSTITUTE LAW REVIEW panel discussion, *Professional Fees in Bankruptcy* (with co-panelists Judge Kevin Carey, attorney Douglas Deutsch, Professor Stephen Lubben, and Professor John Pottow) (April 2019).
- National Conference of Bankruptcy Judges, *NCBJ Plenary: Broken Bench Awards Show: The Best Little Show in Texas* (October 2018).
- ABI 38th Annual Midwestern Bankruptcy Institute, *Sanctions and Social Science* (October 2018) (with Adam Miller).

- Fifth Annual James T. King Bankruptcy Symposium, *Ethics and Getting Paid* (July 2018) (with the Hon. Erithe A. Smith and M. Jonathan Hayes).

- American Bankruptcy Institute, VALCON 2018, *Special Problems Presenting Financial Consultants as Expert Witnesses and Ethics Hot Topics* (May 2018) (with Michael Richman, George Angelich, and Ted Gavin).

- American Bankruptcy Institute's Annual Spring Meeting, *Ethics Jeopardy* (with Nan Roberts Eitel, Lois Lupica, and Bill Rochelle) (April 2017).

- American Bankruptcy Institute's Annual Spring Meeting, *A Primer on Dealing with Fee Examiner*s (with Van Durrer, II, William K. Harrington, Robert J. Keach, and John F. Theil) (April 2016).

- 29th Annual Central California Bankruptcy Institute, *How to Use Social Science to Improve Ethics in a Law Firm* (September 2015).

- 89th Annual National Conference of Bankruptcy Judges, *Ethics and Social Media* (panel discussion with the Hon. Hannah Blumenstiel and Peter Fessenden) (September 2015).

- National Association of Legal Fee Analysts (NALFA) webinar, *Bankruptcy Fee Examiners in Large Chapter 11 Cases* (panel discussion with Walter W. Theus, Jr., Senior Trial Attorney, USDOJ U.S. Trustee Program and Jeffrey L. Cohen, Partner, Cooley, LLP) (May 2015).

- Bankruptcy Section of the Federal Bar Association and the Los Angeles Chapter of the Federal Bar Association, 11th Annual Bankruptcy Ethics Symposium, *An Ethics Conversation* (with Gillian N. Brown) (November 2014).

- Texas Bankruptcy Law Section Bench/Bar Conference, *Recent Attorney Fee Issues* (June 2013).

- Rocky Mountain Bankruptcy Conference:  IWIRC session on bankruptcy ethics; keynote speaker on *Bankruptcy Ethics in Pop Culture* (January 2013).

- Speaker at three sessions of the 86th Annual National Conference of Bankruptcy Judges: ABA session on *Ethical Issues Involving Pro Bono Representation:  Spotting the Issues, Solving the Problems;* NCBJ session on *The Ethics of Organizers—Ethical Challenges in Forming Official and Unofficial Committees;* and CLLA session on *Pre-Bankruptcy Ethics—How to Avoid the Minefields Before Battle Begins* (October 2012).

- Sacramento Valley Bankruptcy Forum's 11th Annual Northern California Bankruptcy Conference, *Stupid Lawyer Tricks* (March 2012).

- National Association of Bankruptcy Trustees' Spring Meeting, panelist on *Friend Me? Ethics and Professionalism Issues Related to the Use of Social Media* (March 2012).

- ABA Business Law Section's Annual Spring Meeting, panelist for the sessions on *Ethical Issues in Commercial Transactions, Should In-House Counsel Be Navigating in the Choppy Waters of Corporate Compliance?,* and *Consumer Bankruptcy Clinics for Law Schools* (March 2012).

- Southeastern Bankruptcy Law Institute, SBLI Visiting Scholar Presentation, *The Case for Value Billing in Chapter 11* (October 2011).

- Bankruptcy Law Section of the State Bar of Texas Bench/Bar Conference, *"Money, Money, Money" -- Red Flags to Fee Examiners and Solutions to Those Red Flags* (with the Hon. H. Christopher Mott, Kemp Sawers, and Warren H. Smith) (June 2011).

- American Bankruptcy Institute's Annual Spring Meeting, *Fulfilling the Fiduciary Duty in a Complex Commercial World* (with Richard M. Meth & Judith Greenstone Miller (plenary) (April 2011).

- Annual Meeting of National Conference of Bankruptcy Judges, *(Almost) Everything You Wanted to Know About…Getting Retained* and *Committee Solicitation Issues – The Problems, the Rules and the Enforcers* (October 2009).

- ABI Southwest Bankruptcy Conference, *Multimedia Ethics Presentation; Perspectives from the Bench and Ethical Issues;* and *Ethics—Walking in the Grey Areas: Advising Clients and Avoiding Pitfalls in Ethically Unsettled Areas* (September 2009).

- ALI-ABI Live Telephone Seminar and Audio Webcast: Ethics and Professionalism Series, *When Bankruptcy Comes Calling on Your Client: Five Common Ethical Mistakes* (April 2009).

- ABI Annual Spring Meeting, *Multimedia Ethics Presentation* (plenary) (April 2009).

- Alaska Bar Association and Alaska Bankruptcy Bar, *Ethics and Popular Culture* and *Issues in Bankruptcy Ethics* (March 2009).

- National Conference of Bankruptcy Judges, 82d Annual Conference, *Ethical Fee Limits: Getting Paid and Getting What You Deserve* (Sept. 2008).

- American Bankruptcy Institute's 16th Annual Southwest Bankruptcy Conference, *Multimedia Ethics Extravaganza* (plenary) (Sept. 2008).

- National Conference of Consumer Bankruptcy Attorneys, 16th Annual Conference, *Ethics Issues* (May 2008).

- American Bankruptcy Institute's 26th Anniversary Annual Spring Meeting, *Beyond Ethics: The Coexistence of Zealousness, Professionalism and Civility in the Insolvency Community* (April 2008).

- American Bankruptcy Institute's 19th Annual Winter Leadership Conference, *Presentation of Fee Study* (February 2008).

- National Conference of Bankruptcy Judges, 81st Annual Conference, Commercial Law League of America's 22nd Annual Educational Program's panel on *Preemption and Federalism Issues in Bankruptcy* (October 2007).

- American Bankruptcy Institute's 15th Annual Southwest Bankruptcy Conference, *Ethics: Negotiating the Sanctions Minefield* (September 2007).

- American Bankruptcy Institute's 25th Annual Spring Meeting, *The Application of State Ethics Rules in Bankruptcy: Are We Just Holding Our Noses and Looking the Other Way?* (April 2007).

- 25th Anniversary Jay L. Westbrook Bankruptcy Conference, University of Texas CLE (with Martin Bienenstock), *Conflicts Writ Large: Intercreditor Issues and Issues with Fees and Overbilling* (November 2006).

- Annual Meeting of National Conference of Bankruptcy Judges, ABA Luncheon Meeting, *Examining the Examiner* (October 2004).

- Annual Meeting of National Conference of Bankruptcy Judges, *Current Bankruptcy Ethics Issues: It's Not That You Ought To! It's That You "Got To!"* (October 2004).

- Commercial Law League of America, Annual Meeting, *Bankruptcy Ethics* (April 2003).

- 4th Annual Barry L. Zaretsky Roundtable, Brooklyn Law School, *Ethics, Governance, and Bankruptcy After Enron* (April 2003).

- The University of Texas School of Law CLE: The 21st Annual Bankruptcy Conference & Personal Injury Conference, *Debtor Wrongdoing: Ethical Implications for Lawyers* (November 2002).

- National Association of Bankruptcy Trustees, Annual Conference, *What's Wrong With Us??!!—A Fascinating Look at Ourselves, Through the Eyes of Judges and Others* (August 2002).

- 10th Annual Southwest Bankruptcy Conference, American Bankruptcy Institute, A *Look Inside the Mega-Case* (September 2002).
- 20th Annual Bankruptcy Conference, University of Texas Law School, *Bankruptcy Ethics— How Do We Find Out What We're Doing Wrong (Or Right)?* (November 2001).
- Annual Meeting of National Conference of Bankruptcy Judges, *Tell Me What You Really Want—How Behavior (On Both Sides of the Bench) Can Impact Your Case* (October 2001).
- Winter Leadership Conference, American Bankruptcy Institute, *Bankruptcy Ethics* (December 2000).
- Twenty-Fourth Annual Bankruptcy Law & Practice Seminar, Stetson University College of Law, *Ethical Problems: Dual Representation in Chapter 11,* and *Ethics: Pre-Bankruptcy Planning and Ethical Limitations* (December 1999).
- Annual Meeting of National Conference of Bankruptcy Judges, *Disinterestedness and the Chapter 11 Professional* (October 1997).
- Eastern District of Pennsylvania Bankruptcy Conference, *Bankruptcy Issues* (January 1996, January 1997, January 1998, and January 1999).

*Social science generally / social science and ethics*

- General session, International Conference of Shopping Centers, U.S. Law Conference, *Ethics Wise and Wonderful: Traditional Rules, Modern Trends* (general session) (with John G. Cameron, Jr.) (October 2022).
- The Annual CLLA Luncheon at the National Conference of Bankruptcy Judges, B*rave New World: Ethics Issues That We Never Knew We Had* (October 2022).
- General session, *Teams, Cognitive Errors, and Legal Ethics,* International Council of Shopping Centers, U.S. Law Conference (October 2020) (virtual presentation).
- Southeastern Bankruptcy Law Institute, *Life in the Time of COVID: Ethical Issues Facing Attorneys During the Pandemic* (with Judges Bess Creswell and James Sacca and George L. Washington, Jr.) (May 2021).
- Plenary session, *Ethics and Professionalism: Why Lawyers Do Dumb Things—The Social Science Reasons,* National Association of Chapter 13 Trustees, 54th Annual Meeting (with Mary K. Viegelahn (July 2019).
- *What Social Science Can Teach Us About Good People and Bad Choices* and *Images of Lawyers in Film: Legal Ethics and the Movies,* 2018 American Bankruptcy Institute Midwest Regional Seminar (August 2018).
- 2017 Mutual Funds and Investment Management Conference, *Building Successful and Ethical Teams* (March 2017).
- National Association of Estate Planners' 52nd Annual Conference, *Nudging More Ethical Behavior Through Incentives and Checklists* (November 2015).
- The Eugene Kuntz Conference on Natural Resources Law and Policy, *Nudging Better Behavior: How Social Science Can Help Us Make Better Decisions* (November 2015).
- Institute for Energy Law, 66th Annual Oil & Gas Conference, *"Nudging" Better Behavior* (February 2015).
- National Association of Estate Planners and Councils, 50th Annual Conference, *Social Science, Human Error & Behavior* (November 2013).

- ABA Annual Meeting, Business Law Section, *Cognitive Biases, Blind Spots, and Other Impairments of Ethical Vision: How Good Lawyers Can Go Astray* (with Dr. Larry Richard, James Jones, and Charles McCallum) (August 2013).

*Judicial ethics*

- Federal Judicial Center Workshop for Bankruptcy Judges, *(NOT) Ripped from the Headlines: Navigating Ethical Issues and Instilling Public Confidence in the Judicial System"* (with the Hon. Christopher M. Alston, the Hon. D. Sims Crawford, and the Hon. Michele J. Kim) (plenary sessions) (April 2022; July 2022).
- Federal Judicial Center Workshop for Bankruptcy Judges, Plenary Session, *Judicial Ethics— Words Matter* (with the Hon. John Hoffman, Jr. and the Hon. Peter W. Bowie (Ret.)) (plenary sessions) (April 2021; July 2021).
- Federal Judicial Center, *Judicial Ethics* (with the Hon. Peter Bowie, the Hon. Arthur Federman, and Prof. Elizabeth Thornburg) (plenary sessions) (April 2013; August 2013).
- College for New Judges, Texas Center for the Judiciary, *Images of Judges in Movies* (December 2002 & November 2003).

*Corporate ethics*

- Summit for Corporate Governance, *"If You Don't Know, Now You Know": A Guide to a Board's Role in Managing (Unexpected) Risk in the Aftermath of the COVID-19 Pandemic* (with Michael J. Bonner, John Holland, and Jordan Rae Kelly) (September 2021).
- Boyd School of Law Summit on Corporate Governance, in partnership with Greenberg Traurig, LLP: as a moderator, *Asleep at the Switch: Lessons Learned from the Failure of Board Oversight In Recent Corporate Scandals and Cybersecurity Gaffes* (with panelists Cuneyt Akay, Paul Ferrillo, and Jordan Kelly, and as a panelist, *Not Too Much, Not Too Little: What is Just Right?: Challenges Faced in Executive and Board Compensation* (with co-panelist Laura Wanlass and moderator Flora Perez (November 2019).
- Department of Energy & Contractor Attorneys' Association, Inc.'s Annual Meeting, *Ethics in the Corporate World* (May 2009).
- *Lessons To Be Learned From the Rise and Fall of High-Profile Corporate Entities—The Scandals—How to Identify Red Flags in Revenue Reporting and Financial Statements* (NACD Houston Chapter, Sept. 2004) (with Bala G. Dharan and Steven C. Currall).
- State Bar of Texas Annual Meeting, Business Law & Corporate Counsel Sections, *Moral Independence of Lawyers vs. Moral Interdependence* (June 2003).
- Southeastern Finance Association and Southern Academy of Legal Studies, *Corporate Scandals (Enron, Andersen, Tyco & World Com)—What Went Wrong?* (keynote speaker) (March 2003).
- The University of Texas School of Law CLE: The 24th Annual Corporate Counsel Institute, *Conflicts, Ethical Duties and Independence: Lessons from Enron* (August 2002).
- NASA National Managers Association, *Lessons in Character from Enron* (April 2002).
- The University of Texas School of Law CLE: The 25th Annual Page Keeton Products Liability & Personal Injury Conference, *Dressed for Excess* (November 2001).

*Women*

- Gardere Women's Council Ethics CLE, keynote speaker, *Women on Boards* (June 2013).
- State Bar of Texas Annual Meeting, Women & the Law Section, *Images of Women Lawyers in the Media* (June 2003).

*Miscellaneous*

- Emanuel Bar Review Lecturer (2008-2010).
- BAR/BRI, lecturer on *Succeeding in Law School* (2002-2006).

**Selected media appearances**

- Appearances on a variety of local, national, and international news broadcasts, and in local, national, and international news articles, on various bankruptcy, corporate law, and other legal issues, including the Enron bankruptcy case, the Arthur Andersen trial, and the Anna Nicole death (December 2001-present).
- Appeared in Academy Award®-nominated documentary, *Enron: The Smartest Guys in the Room* (Magnolia Pictures 2005).

**Special training**

- Attended three Harvard Institutes of Higher Education leadership programs (IEM in 2016, MLE in 2002, and MDP in 1999).
- Attended STAR: A Systematic Approach to Mediation Strategies, Straus Institute for Dispute Resolution, Pepperdine University School of Law (June 2008) (attended on a grant from Pepperdine).

**Contributor to the following blogs**

- ABOVE THE LAW, https://abovethelaw.com/.
- NANCY RAPOPORT'S BLOG, https://nancyrapoports.blog/.
- NANCY RAPOPORT'S BLOGSPOT (former blog), http://nancyrapoport.blogspot.com/.
- LAW SCHOOL SURVIVAL MANUAL, http://lawschoolsurvivalmanual.blogspot.com/.
- CORPORATE SCANDAL WATCH, http://corporatescandalwatch.blogspot.com/.
- UNLV LAW BLOG, Contributing Editor, http://unlvlawblog.blogspot.com.
- MONEYLAW, Contributing Editor, http://money-law.blogspot.com/.
- LEGAL PROFESSION, Contributing Editor: http://lawprofessors.typepad.com/legal_profession/.
- JURIST, Contributing Editor, http://jurist.law.pitt.edu/.
- CREDIT SLIPS, Guest Blogger, http://www.creditslips.org/.
- THE FACULTY LOUNGE, Guest Blogger, http://www.thefacultylounge.org/.
- THE CONGLOMERATE, Guest Blogger, http://www.theconglomerate.org/.
- FEMINIST LAW PROFESSORS, Guest Blogger, http://feministlawprofs.law.sc.edu/.

- RACE TO THE BOTTOM, Guest Blogger, http://www.theracetothebottom.org/home/.

## HONORS, BAR ADMISSIONS, MEMBERSHIPS, AND COMMUNITY SERVICE

**Selected honors**

- Recipient of the 2022 UNLV Alumni Association's Outstanding Faculty Member of the Year Award.
- Named a UNLV Distinguished Professor in 2022.
- ABI Task Force For Veterans and Servicemembers' Affairs Challenge Coin (2019).
- Recipient of one of the NAACP Legacy Builder Awards (Las Vegas Branch #1111) (2018).
- Commercial Law League of America's Lawrence P. King Award for Excellence in Bankruptcy (2017).
- Inducted into Phi Kappa Phi, Chapter 100 (2017).
- Southeastern Bankruptcy Law Institute Distinguished Visiting Scholar (week-long visits at Georgia State College of Law) (2011).
- 2008 Public Service Counsel of the Year, 4th annual event, Association of Media and Entertainment Counsel (2009).
- Fellow, American College of Bankruptcy (2005-present) (Class 16).
- Named a "Woman of Vision" by the Houston Delta Gamma Foundation (2004).
- Admitted to American Leadership Forum, Class XXII (2004).  Withdrew due to family illness.
- Named "Best Local Girl Made Good," HOUSTON PRESS, September 25, 2003, at 24.
- Fellow, American Bar Foundation (2002-present; Life Fellow since 2015).
- Rice University Distinguished Alumna (2002).
- Named by the Greater Houston Area Chapter of the National Council of Jewish Women as a "Woman of Influence" (2001).
- Elected to membership in the American Law Institute (2001).
- Named a Legal Pioneer for Women in the Law (first woman to serve as the dean of a Nebraska law school), Nebraska State Bar Association (2000).
- Louis Nemzer Memorial Lecture (yearly lecture honoring a Jewish member of the Ohio State faculty) (1998).
- Outstanding Professor of the Year, The Ohio State University College of Law (third-year students voting) (co-winner, with Professor Barbara Rook Snyder) (1997).

**Bar admissions**

- United States District Court, District of Nevada (2009).
- Nevada Supreme Court (2007).
- United States District Court, Northern District of Texas (2003).
- Texas Supreme Court (2001).
- United States Supreme Court (2000).

- Nebraska Supreme Court (1999).
- Ohio Supreme Court (1993).
- United States District Court for the District of Hawaii (1988).
- California Supreme Court (1987).
- United States Court of Appeals for the Ninth Circuit (1987).
- United States District Courts for the Northern, Eastern, Central, and Southern Districts of California (1987).

**Editorial boards**

- AMERICAN BANKRUPTCY LAW JOURNAL ADVISORY BOARD (three-year term, starting in 2023).
- THE BUSINESS LAWYER (2014-present).
- REYNOLDS COURTS & MEDIA LAW JOURNAL (2011-2013).
- Association of American Law Schools, JOURNAL OF LEGAL EDUCATION (2007-2010).
- State Bar of Texas, TEXAS BAR JOURNAL Board of Editors (2003-06); State Bar of Texas, TEXAS BAR JOURNAL, Editorial Board Committee (2001-2004).
- CALIFORNIA BANKRUPTCY JOURNAL (1995-2002).

**Selected board memberships**

- Claremont Graduate University Board of Trustees (2021-present) (serving on Academic Affairs, Audit, and Student Success committees, 2021-23); Vice-Chair, Audit and Risk Management Committee, 2022-2023); Chair, Audit and Risk Management Committee (2023-present).
- Setona Sub-HOA Board (President, 2021-present).
- Rice University, External Advisory Board, Center for Teaching Excellence (2019-present); Chair (2022-present).
- Nevada Board of Bar Examiners (2018-2020).
- Economic Club of Las Vegas (2017-present).
- National Museum of Organized Crime & Law Enforcement ("The Mob Museum") (2013-2022); Secretary of the Board (2016-2022); Member, Advisory Council (2022-present).
- JURIST Board of Directors (http://jurist.law.pitt.edu/) (2008-2014).
- American Bankruptcy Institute Board of Directors (2008-2017); Executive Committee (2012-2016); Vice President of Research Grants (2013-2016).
- American Board of Certification (board certification for bankruptcy lawyers) (2007-2014) (Dean of Faculty, 2011-2013).
- Association of Rice Alumni Board (2006-2009).
- NALP Foundation for Law Career Research and Education (2005-2009).
- Texas Center for Legal Ethics (2004-2006).
- Texas Supreme Court Historical Society (2004); Advisory Board (2004-2006).
- Vinson & Elkins Women's Initiative Advisory Board (2003-2010).
- Houston Area Women's Center (2003-2006).

- Advisory Council Member, WWW United, Inc. (2002-2006).
- Texas Environmental Health Institute (a joint project of the Texas Department of Health & the Texas Natural Resource Conservation Commission, which is the Texas Commission on Environmental Quality (TCEQ)) (2002-2004).
- Houston World Affairs Council (2002-2005).
- Houston Hillel (2002-2007).
- Mayor's Advisory Board of World Energy Cities Partnership (2001-2004).
- Houston Disaster Relief Advisory Board (2001-2004).
- Houston Chapter of the Texas General Counsel Forum (2001-2005).
- Anti-Defamation League Southwest Regional Board (2001-2006).
- Law School Admission Council Board of Trustees (2001-2004).

**Selected service activities and memberships**

- Member, Foundational Subject Requirement and Performance Test Task Force, Nevada Supreme Court Bar Licensing Commission (2023-present).
- Member, American Bar Association's Business Law Section, Corporate Governance Committee, Academic Affairs Subcommittee (2022-present).
- Member, Association of Professional Responsibility Lawyers (2022-present; 2014-16).
- (Co-Chair (with Joseph R. Tiano, Jr.) of SALI project to develop a bankruptcy taxonomy (2021-present) (sali.org).
- Member, Operation Stand-By, militaryprobono.org (2021-present).
- Secretary and Reporter, American Bankruptcy Institute's Task Force for Veterans and Servicemembers Affairs (2018-present).
- Member, Federal Bar Association's Professional Ethics Committee (2018-present); Ethics Hotline subcommittee (2018-2019); Co-Chair, Speakers' Bureau, 2019-present).
- Member, Heterodox Academy (2017-present).
- Member, Society for Applied Anthropology (2017-present).
- Member, National Association of Legal Fee Analysts (2014-2018) (resigned).
- Member, Law School Admission Council Diversity Retention Workshop 2015 Planning Work Group (2014-2015).
- Member, Federalist Society (2013-present).
- Member, Federal Bar Association (2012-present).
- Member, Advisory Committee to the American Bankruptcy Institute's Commission to Study the Reform of Chapter 11 (2012-2015) (Governance Subcommittee).
- Co-Reporter, American Bankruptcy Institute's National Ethics Standards Task Force (2011-2013).
- Co-Chair, American Bankruptcy Institute's Task Force on Young and New Members (2011-2012).
- Association of Media and Entertainment Counsel, Law School Section (Co-Chair, 2010-2011; member and temporary Co-Chair, 2012-2013); member, Law School Advisory Board (2014); Chair, Law School Advisory Board (January 2018-present).

Case 8:23-bk-10571-SC    Doc 1436    Filed 08/05/24    Entered 08/05/24 19:13:21    Desc
Main Document      Page 32 of 47

- American Bar Association, Section on Legal Education, Committee on Law School Administration (2008-2010); Chair-Elect (2010); Chair (2011-2013).
- American Bar Association, Section on Business Law, Committee on Corporate Counsel, Subcommittee on Corporate Governance (co-chair, with Roberta Torian) (2007-2010).
- Advisory Committee, American Bankruptcy Institute's consumer bankruptcy fee study (advisor to Professor Lois Lupica) (2008-2011).
- Rice Alumni Volunteers for Admission (2007-present) and liaison for RAVA to Association of Rice Alumni Board (2007-2009); involved in Rice Annual Fund solicitations since 2007.
- Advisory Committee, American Bankruptcy Institute's Chapter 11 fee study (advisor to Professor Stephen Lubben) (2005-2007).
- American Bankruptcy Institute's Task Force on Pro Bono (2007).
- American Bar Association's Task Force on Attorney Discipline (2005).
- Planning committee for 2007 Annual Meeting of Association of American Law Schools, *Workshop on The Ratings Game* (2006-2007).
- City of Houston Mayor's Pension Governance Advisory Committee (2004-2006).
- American Bar Association, Advisory Group on Loan Repayment, Standing Committee on Legal Aid & Indigent Defendants (SCLAID) (2003-2006).
- Faculty member, ABA New Deans' School (May-June 2003, June 2004, and June 2005).
- Advisory Committee, Baylor College of Medicine-UH Law Center MD/JD Program (2004-2006).
- Academic advisor, National Governmental Affairs Committee, Commercial Law League of America (CLLA) (2002-2006).
- Co-chair (with Dean Stuart Deutsch), ABA Deans' Workshop (for mid-year ABA meeting in 2003).
- Advisory Committee, *The Birth of the Dot-Com Era,* project for the Library of Congress (Project Manager, Prof. David Kirsch, University of Maryland) (advising the Library of Congress on what to do with the records of now-defunct law firm of Brobeck, Phleger & Harrison) (2004-2007).
- National Association of Corporate Directors (2004-2006).
- Commercial Law League of America, Professional Responsibility Committee (2003-2005).
- Member, ABA Commission on Loan Repayment & Forgiveness (2001-2003).
- Member, AALS Professional Development Committee (2000-2003).
- Communication Skills Committee, ABA Section of Legal Education and Admissions to the Bar (1998-2002).
- Chair, AALS Planning Committee for the *Mini-Workshop on Major Issues of the 21ˢᵗ Century: the Impact on the Legal Academy and Law Students* (1999-2000).
- Member, Law School Admission Council (LSAC) Services & Programs Committee (1999-2000), Workgroup on Alternative Admissions Models (2000-2003), and Gay, Lesbian, Bisexual & Transgendered Issues Workgroup (2000-2001).
- Nebraska State Bar Association (1999-present).
- National Association of College & University Attorneys (1998-2006).
- Commercial Law League of America (1998-present).
- Ohio State Bar Association (1997-present).

- American Bankruptcy Institute (1994-present).
- AIDS Legal Referral Panel of the Bar Association of San Francisco (1989-91).
- Bar Association of San Francisco (1987-91).
- American Bar Association (1987-present).

## EXPERT AND EXPERT WITNESS ACTIVITY

- Expert for Legal Aid Center of Southern Nevada in In the Matter of the Guardianship of the Person and Estate of Katherine June Jones, Case No. G-19-, 052263-A, District Court, Clark County, Nevada (2023-present).
- Expert for McDermott Will & Emery LLP in *In re* Power Property Management, Cause No. DC-19-00695, 134th Judicial District Court, Dallas County, Texas (2023-present).
- Expert for McDonald Carano LLP in 4R4 Sons, LLC, Horizon Kids dba Kidz, Kidz, Kidz v. Tru G. Wilhelm, Inc. and counterclaim Tru G. Wilhelm v. Horizon Kidz, 4R4 Sons, LLC, Chrisetta M. Rush and Arthur T. Rush, individually and in their capacities as trustees of the Rush Family Revocable Trust (2022-present).
- Expert for Shumaker, Loop & Kendrick, LLP, in Adela 117, LLC v. JP Morgan Chase Bank, Case No. 2021-CF-004270-NC, Circuit Court of the Twelfth Judicial Circuit in and for Sarasota County, Florida (2022-2023) (testified in deposition and at trial).
- Expert for The Claro Group in *In re* Diocese of Camden, New Jersey, Case No. 20-21257, United States Bankruptcy Court, District of New Jersey (2022-present).
- Expert for Lowenstein Sandler LLP in *In re* Diocese of Camden, New Jersey, Case No. 20-21257, United States Bankruptcy Court, District of New Jersey (2022).
- Expert for Wynn Resorts and Orrick Herrington & Sutcliffe LLP in Nielsen v. Wynn Resorts, Ltd., Case No. A-19-803879-C, Eighth Judicial District Court, Clark County, NV (2022-present).
- Expert for Lipson Neilson PC in Estate of Tony Hsieh v. Premsrirut, Clark County District Court, Case No. A-22-847455-B, Las Vegas, NV (2022-present).
- Expert for Shumaker, Loop & Kendrick, LLP, in Adela 117, LLC and Newport Sports Mgmt., Inc. v. JPMorgan Chase Bank et al., Case No., 2021-CA-004270-NC, Circuit Court of the Twelfth Judicial Circuit in and for Sarasota County, Florida (2022).
- Expert for Krevolin & Horst Law Firm in Blackhall Real Estate, LLC v. Smith, JAMS Arbitration No. 1440007245, Atlanta, Georgia (2021).
- Expert for the United States Trustee in *In re* Star Mountain Resources, Inc., Case No. 2:18-bk-01594-DPC, United States Bankruptcy Court for the District of Arizona (2021).
- Expert for the Chapter 7 Trustee in *In re* Green-Light International, LLC, Case No. 2:17-bk-18265-BB, United States Bankruptcy Court for the Central District of California (2021).
- Consultant for law firms regarding a disclosure issue (2021).
- Expert for Beasley Allen Law Firm in *In re* Imerys Talc America, Inc., Case No. 19-10289, United States Bankruptcy Court for the District of Delaware (2020-present) and *In re* LTL Management LLC, Case No. 21-30589, United States Bankruptcy Court for the Western District of North Carolina, transferred to the United States Bankruptcy Court for the District of New Jersey (2021-present).

- Expert for Bonds Ellis Eppich Schafer Jones LLP in *In re* Highland Capital Management, L.P., Case No. 19-34054, United States Bankruptcy Court for the Northern District of Texas (2020).
- Fee examiner in *In re* Zetta Jet USA, Inc. (2:17-bk-21386-SK) and *In re* Zetta Jet PTE, Ltd., Case No. 2:17-bk-21387-SK, United States Bankruptcy Court for the Central District of California—Los Angeles Division (2020-present).
- Expert for Sidley Austin LLP in *In re* Boy Scouts of America and Delaware BSA, LLC, United States Bankruptcy Court for the District of Delaware, Case No. 20-10343 (LSS) (2020-2022) (testified at hearing in 2020; testified in arbitration in 2022).
- Expert for Porter Hedges LLP in *In re* McDermott Int'l, United States Bankruptcy Court for the Southern District of Texas, Case No. 20-30336 (DRJ) (2020-present).
- Expert for Diamond McCarthy LLP and Snow Covered Capital, LLC in Snow Covered Capital, LLC v. Weidner, United States District Court for the District of Nevada, Case No. 2:19-cv-00595-JAD-NJK (2019-present) (testified at deposition).
- Expert for The Richter Firm and Shumaker, Loop & Kendrick in Wise v. Smith et al., Court of Common Pleas, State of South Carolina, Case No. 2019-CP-3300017 (2019-2020) (testified at deposition).
- Independent monitor for UpRight Law (2018-2023).
- Fee examiner in *In re* Toys "R" Us Property Company I, LLC, United States Bankruptcy Court for the Eastern District of Virginia, Case No. 18-31429 (KLP) (2018-2019).
- Fee examiner in *In re* Toys "R" Us, Inc., United States Bankruptcy Court for the Eastern District of Virginia, Case No. 17-34665 (KLP) (2018-2019).
- Expert for the Trustee in two *In re* ICPW Liquidation Corp. cases, United States Bankruptcy Court for the Central District of California, Case Nos. 1:17-bk-12408-MB and 1:17-bk-12409-MB (2018).
- Expert for Hoover Slovacek LLP in Midstates Petroleum Company v. Production Specialists, Inc. dba Regal Oilfield Sup., United States Bankruptcy Court for the Southern District of Texas, Case No. 4:16-bk-32237 (2017-2019).
- Expert for Panish Shea & Boyle LLP in Moradi v. Nevada Property 1, LLC, District Court, Clark County, Nevada, Case No. A-14-698824-C (2017).
- Expert for Diamond State Insurance Company in Gieseke v. Diamond State Insurance Company, U.S. District Court for the District of Nevada, Case No. 3:16-cv-00103-MMD-WGC (2016).
- Expert for Mar-Bow Value Partners, LLC, and Lakeview Capital, Inc., on a confidential matter involving Federal Rule of Bankruptcy Procedure 2014 (2016-present).
- Independent member of Fee Committee, *In re* Caesars Entertainment Operating Co., Inc., U.S. Bankruptcy Court, Northern District of Illinois, Case No. 15-01145 (ABG) (2015-2018).
- Expert for Craig Marquiz in Home Gambling Network, Inc. v. Piche, United States District Court for the District of Nevada, Case No. 2:05-cv-00610-DAE-VCF (2015).
- Expert for the Debtor in *In re* The Catholic Bishop of Spokane, a/k/a The Catholic Diocese of Spokane, United States Bankruptcy Court, Eastern District of Washington, Case No. 04-08822-FPC11 (2014).

- Expert for the Trustee in *In re* Fundamental Long Term Care, Inc., United States Bankruptcy Court, Middle District of Florida, Case No. 8:11-bk-22258-MGW (2014-2015) (testified at deposition and at trial).
- Expert for the Liquidating Trustee in Mukamal v. Fulbright & Jaworski L.L.P. (*In re* Palm Beach Finance Partners, L.P. and Palm Beach Finance Partners II, L.P.), United States Bankruptcy Court, Southern District of Florida, Case No. 09-36379-BKC-PGH (2014) (withdrew due to scheduling issues).
- Expert for the law firm of Lipson Neilson Cole Seltzer Garin, P.C. in a case involving conflicts of interest (2014).
- Consultant for the Liquidating Trust for *In re* Residential Capital, LLC, United States Bankruptcy Court, Southern District of New York, Case No. 12-12020 (MG), regarding the reasonableness of fees (2014).
- Expert for the law firm of Frank J. Cremen in Grievance File #SG 1-1156, State Bar of Nevada (2013-2014) (testified at hearing).
- Expert for Irell & Manella LLP, in State of Nevada v. Gary Trafford, et al., Clark County District Court, Case No. C-11-277573-1 (2013).
- Expert for a Nevada law firm (firm and client names kept confidential) in a matter involving attorney disciplinary procedures (2012).
- Expert for the Fee Examiner in Matter of Lehman Brothers Holdings, Inc., U.S. Bankruptcy Court, Southern District of New York, Case No. 08-13555-jmp (2012).
- Expert for the Fee Examiner in *In re* Motors Liquidation Co. (f/k/a General Motors Corp.), U.S. Bankruptcy Court, Southern District of New York, Case No. 09-50026 (2011-2012).
- Expert for Alverson Taylor Mortensen & Sanders in Stanish et al. v. Catholic Healthcare West, Nevada District Court, Clark County, Case No. A-11-639674-C (2011).
- Fee examiner in *In re* Station Casinos, Inc., U.S. Bankruptcy Court, District of Nevada, Case Nos. BK-09-52477 through BK-11-51219 (2011).
- Expert for the Office of the United States Trustee in three cases:  *In re* Mark Andrew Brown, U.S. Bankruptcy Court, Western District of Maryland, Case No. 09-44254-jwv7; *In re* Tracy L. Quarm, U.S. Bankruptcy Court, Northern District of Ohio, Case No. 09-20498; and *In re* John W. Young, U.S. Bankruptcy Court, Northern District of Ohio, Case No. 10-11404 (2010) (testified in discovery depositions and at trial; deposition and trial testimony done via videotape).
- Expert for the Trustee in The Pappg Grantor Trust v. Scott (*In re* Baltimore Emergency Services II, LLC, et al.), U.S. Bankruptcy Court, District of Maryland, Adversary No. 03-8294-esd (2010).
- Expert for Lionel, Sawyer & Collins in Michael Racusin v. Lionel Sawyer & Collins, American Arbitration Association, Case No. 79 194 Y 00108 08 (2009-2010) (testified in arbitration).
- Expert for the Reorganized Debtor in *In re* ASARCO, LLC, et al., U.S. Bankruptcy Court, Southern District of Texas, Case No. 05-21207 (2010) (testified at trial).
- Expert for BuckleySandler LLP in Pulte Homes, Inc. v. Terry Goddard, In His Official Capacity as Attorney General for the State of Arizona and Catherine Cortez Masto, In Her Official Capacity as Attorney General for the State of Nevada, D.C. Circuit, Civil Action No. 1:10-cv-00377 (2010).

- Court's fee expert and chair of the Fee Review Committee in *In re* Pilgrim's Pride Corp., U.S. Bankruptcy Court, Northern District of Texas, Case No. 08-45664 (DML) (2009-2010) (testified at hearing).
- Expert for plaintiff in Judy M. Jackson, M.D. v. Ira Levine et al., Nevada District Court, Clark County, Case No. A538983 (2009-2010) (testified in deposition and at trial).
- Expert for the Trustee in Asset Funding Group, L.L.C., Scobar Adventures, L.L.C., AFG Investment Fund 2, L.L.C., and HW Burbank, L.L.C. v. Adams and Reese, L.L.P., U.S. District Court, Eastern District of Louisiana, Case No. 07-2965 (2009) (testified in deposition; made available for trial, but case settled).
- Expert for Clausen Miller in *In re* Raymond Professional Group, Inc. (Raymond Professional Group, Inc. v. William A. Pope Company), Adv. No. 07-A-00639, U.S. Bankruptcy Court, Northern District of Illinois (2008-2009) (testified in deposition and at hearing).
- Expert for the plaintiff in Todd v. Guidance Software, Inc., U.S. District Court, Central District of California, Case No. SACV 08-1354 JVS (ANx) (2008-2009).
- Expert for the Debtor in Sports Shinko Co. v. Franklin K. Mukai, U.S. District Court, D. Hawaii, Case No. CV 04-00127 ACK/BMK (2007-2008).
- Expert for the Trustee in *In re* Mego Financial Corp., et al., U.S. Bankruptcy Court, D. Nev., Case Nos. BK-N-03-52300-GWZ through BK-N-03-52304-GWZ and BK-N-03-52470-GWZ through BK-N-03-52474-GWZ (2007-2008) (testified at deposition).
- Expert for Pillsbury Winthrop in *In re* SONICBlue Incorporated, U.S. Bankruptcy Court, Northern District of California, Case Nos. 03-51775 through 03-51778 MM (2007) (made available to testify in court early in the case; did not testify).
- Expert for the Trustee in *In re* Southwest Florida Heart Group, P.A., U.S. Bankruptcy Court, Middle District of Florida, Case No. 9:05-bk-17167-ALP (2007) (testified in deposition).
- Expert for Beirne, Maynard & Parsons in Brazos Electric Power Cooperative, Inc. v. Tenaska IV Texas Partners and related cases (2003-2004; 2006-2007) (testified in depositions).
- Expert for Beirne, Maynard & Parsons in Hicks v. Charles Pfizer & Co., U.S. District Court, Eastern District of Texas, Civil Action No. 1:04CV201 (2006).
- Expert for Benjamin Hall, Esq., in Costilla Energy, Inc., by and through its litigation trustee, George Hicks v. Joint Energy Development Investments II, 49th Judicial District, Zapata County, Texas (2006-2008) (testified in deposition).
- Expert for Winstead, Secrest & Minick in an issue involving conflicts of interest (2005).
- Expert for Beckley, Singleton in Fremont Investment & Loan v. Beckley Singleton, Chtd. and Sidney Bailey, U.S. District Court, D. Nevada, Case No. CV-S-03-1406-JCM-RJJ (2003) (2005-2006) (testified in deposition).
- Expert for the debtor in *In re* ACandS, Inc., U.S. Bankruptcy Court, D. Delaware, Case No. 02-12687 (2004-2005) (testified at hearing).
- Court's fee expert and chair of the Fee Review Committee in *In re* Mirant Corporation, U.S. Bankruptcy Court, Northern District of Texas, Case No. 03-46590 (2003-2006; 2011-2012) (testified in deposition and at hearing).
- Expert witness for Latham & Watkins regarding Section 414 of H.R. 333 (changes in "disinterestedness" standard of 11 U.S.C. § 101(14)) (March-April 2003).

- Expert witness for the Office of Disciplinary Counsel, *In re* Charles William Ewing, Case No. 97-5, before the Board of Commissioners on Grievances and Discipline of the Bar of the Supreme Court of Ohio (1998).

## PUBLIC TESTIMONY

- Testified at the June 2012 public meeting of the United States Trustee Program regarding the proposed new fee guidelines for larger chapter 11 cases (testimony available at http://www.justice.gov/ust/eo/rules_regulations/guidelines/docs/proposed/Prof_Rapoport_Comment.pdf, http://www.justice.gov/ust/eo/rules_regulations/guidelines/docs/proposed/Prof_Rapoport_SupplementalComment.pdf, and http://www.justice.gov/ust/eo/rules_regulations/guidelines/docs/proposed/Prof_Rapoport_Comment2.pdf; transcript available at http://www.justice.gov/ust/eo/rules_regulations/guidelines/docs/proposed/Transcript_June4_Public_Meeting.pdf; Director Clifford J. White III's statement on the adopted guidelines, available at http://www.justice.gov/ust/eo/rules_regulations/guidelines/docs/Fee_Guidelines_Cliff_White_Statement.pdf).

## ADVICE COLUMN

- "Ms. Ps and Qs": ethics advice column for the National Association of Chapter 13 Trustees (2011-present).

## SELECTED AMICUS BRIEFS

- *Brief for Amici Erwin Chemerinsky and Other Legal Scholars in Support of Appellees,* Aearo Technologies, LLC v. Those Parties Listed on Appendix A to the Complaint and Jone & Jane Does, 1-1000 (In re Aearo Technologies, LLC), United States Court of Appeals for the Seventh Circuit, Case No. 22-2606 (Feb. 1, 2023).
- *Brief of 83 Legal Ethics Professors as Amici Curiae in Support of Hearing En Banc,* United States v. Varner, United States Court of Appeals for the Fifth Circuit, Case No. 19-40016 (Mar. 20, 2020).
- *Amicus Brief of Neutral Fee Examiners Supporting Neither Party,* Baker Botts L.L.P. v. ASARCO LLC, Case No. 14-103, United States Supreme Court (Dec. 10, 2014), 2014 WL 6984132.
- *Brief of Amici Curiae, In re* David Marshall Brown, Case No. 12-Cv-60016-KAM, United States District Court, Southern District of Florida (filed by co-counsel George Castrataro) (April 11, 2012), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2038267.

- *Brief in Support of Respondent for Amici Curiae Professors Richard Aaron, Laura Beth Bartell, Jagdeep S. Bhandari, Susan Block-Lieb, Robert D'Agostino, Jessica Dawn Gabel, Kenneth N. Klee, George W. Kuney, C. Scott Pryor, Nancy B. Rapoport, Marie T. Reilly, Lynne F. Riley, Keith Sharfman, and Michael Sousa,* RadLAX Gateway Hotel, LLC and RadLAX Gateway Deck, LLC v. Amalgamated Bank, Case No. 11-166, United States Supreme Court (March 5, 2012).
- *Brief of Legal Ethics Professors and Practitioners and the Ethics Bureau at Yale as Amici Curiae in Support of Petitioner,* Maples v. Thomas, Case No. 10-63, United States Supreme Court (May 25, 2011).
- *Brief of Amicus Curiae,* Warren v. Seidel, United States District Court for the District of Ohio, Case No. 2:10-cv-01049-MHW (2010), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1843496.
- *Brief of 30 Leading Ethicists as Amici Curiae in Support of the Petitioner,* Charles Dean Hood v. State of Texas, Case No. 09-8610, United States Supreme Court (February 18, 2010), available at 2010 WL 638469.
- *Brief of Amicus Curiae,* Danny Joe McClure and Kimberly Deskins McClure, Plaintiffs, v. Bank of America, Creditors Financial Group, LLC, and Peter Rebelo, Defendants, Bankr. N.D. Tex. 2010, Adv. No. 08-04000-DML, available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1550353.

## INTERESTS (INCLUDING SELECTED BALLROOM DANCE COMPETITION RESULTS)

- Ailurophile; Jane Austen and Aaron Sorkin fan.
- Obsessed with the history of the Titanic and with the U.S. space program.

*Ballroom dance*

- Pro/am competition results:

  o United States Dance Championships (ballroom dance's national competition):

    - 5th in S1 US Open to the World Pro/Am Rhythm Scholarship Championship; 4th in "C" Open to the World 9-Dance Championship (with Igor Dogoter) (2022).
    - 4th in S1 Open Gold US National Pro/Am Rhythm Scholarship Championship; 5th in S1 Open Gold US National Pro/Am Smooth Scholarship Championship; 4th in "C" Open Gold US Open to the World 9-Dance Championship (with Igor Dogoter) (2021).
    - 6th in "C" U.S. National Open Gold Rhythm Scholarship & 4th in "C" Open to the World Pro/Am American Style 9-Dance Championship (with Sergei Shapoval) (2019).
    - 4th in "C" Open to the World Pro/Am American Style 9-Dance Championship (with Sergei Shapoval) (2018).

- 2nd in "C" Open to the World Pro/Am American Style 9-Dance Championship (with Sergei Shapoval) (2017).
- 5th in "C" Open to the World Pro/Am American Style 9-Dance Championship (with Sergei Shapoval) (2016).
- 4th in the "C" Open to the World Pro/Am American Style 9-Dance Championship (with Sergei Shapoval) (2015).
- 5th in U.S. Open Pro/Am American Style 9-Dance Championship "B" Division (missed 4th by a Rule 11 tie) & 1st in U.S. Open Pro/Am Rising Star American Smooth Competition "B" Division (with Sergei Shapoval) (2014).
- 6th in U.S. National Pro/Am American Rhythm 5 Dance Scholarship "B" Division; 2nd in U.S. Open Pro/Am American Style 9-Dance Championship ("B" Division") and 5th in U.S. Open Pro/Am Rising Star American Smooth Competition (with Sergei Shapoval) (2013).
- 5th in Open "B" 9-Dance Championship and 6th in Rising Star "B" American Smooth Competition (with Sergei Shapoval) (2012).
- 4th in Open "B" Rhythm Scholarship and 4th in Open "B" 9-Dance Championship (with Sergei Shapoval) (2011).

o Las Vegas Lights Dance Challenge: 1st in Open Gold American Style 6-Dance; 1st in Open CM Rhythm Multi-Dance; 1st in Open CM Smooth Multi-Dance; 1st in Open CM Rhythm Scholarship; 1st in Open CM Smooth Scholarship (with Igor Dogoter) (2022).

o Vegas Open: 2d in S1 Open Multi-dance Rhythm; 2n in Senior Open Rhythm Scholarship; 2d in S1 Open Multi-dance Smooth; 1st in Open "C" 9-dance Scholarship; 3rd in S1 Open Smooth Scholarship (with Igor Dogoter) (2023); 1st in S1 9-Dance; 2d in S1 Open Rhythm Multi-Dance Challenge; 2d in S1 Open Rhythm Scholarship; 2d in S1 Open Smooth Multi-Dance Challenge; 4th in S1 Open Smooth Scholarship (with Igor Dogoter) (2022).

o Holiday Dance Classic: 2d in "C" DanceSport Series Rhythm Championship; 6th in "C" Open Rhythm Scholarship; 2d in "C" DanceSport Series Smooth Championship (2022) (with Igor Dogoter); 4th in "C" DanceSport Series Rhythm Championship; 5th in "C" DanceSport Series Smooth Championship; 5th in S1 Smooth Scholarship (with Igor Dogoter) (2021).

o Great Gatsby Gala: 1st in World DanceSport Series "S1" American Rhythm; 2d in 9-Dance; 2d in World DanceSport Series "S1" American Smooth; 4th in "S1" Scholarship American Smooth (missed 3d by a Rule 11 tie) (with Igor Dogoter) (2021).

o Viva Las Vegas: 1st in World Challenge American Smooth Open (L-B); 1st in World Challenge American Rhythm Open (L-B); top Gold student (with Igor Dogoter) (2022); 1st in World Challenge American Smooth Open (L-B); 2d in World Challenge American Rhythm Open (L-B) (with Igor Dogoter) (2021).

- o Ballroom Beach Bash: 3$^d$ in Senior Open Rhythm Scholarship; 2$^d$ in "C" Open 9-dance; 4th in Senior Open Smooth Scholarhip (with Igor Dogoter) (2023); 1st in S1 Open Rhythm Scholarship, 1st in "C" 9-dance; 4th in SR Open Smooth (with Igor Dogoter) (2022); 1st in "C" Open Gold Smooth Scholarship; 7th in "C" Open Advanced Smooth Scholarship (with Igor Dogoter) (2021).

- o California Open DanceSport Championships (online competition):  3$^d$ in "B" Open Smooth Championship & 2$^d$ in "C" Best of the Best Open Smooth (with Igor Dogoter) (2021).

- o Fred Astaire National Dance Championships:  4th place in Open B Rhythm Scholarship, 2nd place in American Rhythm 9-Dance Division, and 6th place in Open B Smooth Scholarship (with Sergei Shapoval) (2018).

- o Fred Astaire World Championships:  5th in Open B Rhythm Scholarship & 6th in Open B Smooth Scholarship (with Sergei Shapoval) (2017).

- o Emerald Ball:  5th in Open S1 Rhythm Championship and 5th in Open B American 9-Dance (with Igor Dogoter) (2023); 5th in Open B American 9-Dance Championship (2019) (with Sergei Shapoval); 4th in Open B American Rhythm Scholarship (with Sergei Shapoval) (2011).

- o California Star Ball:  1st in Pro/Am Open Rhythm Scholarship Competition and 3rd in the Open American Smooth Competition (2010); 1st in Open Rhythm Scholarship (with Sergei Shapoval) (2009).

- o Embassy Ball:  1st in the B Division, Open-to-the-World Latin Pro/Am Competition (with Billy King) (2005).

- o Ohio Star Ball:  DanceSport SuperBowl Region 5 Representative, Ladies' B Latin (with Billy King) (2005); 1st in International Latin (B) Scholarship (with Bill Sparks) (1993).

- Amateur competition results:

  - o Vegas Open Dance Challenge:
    - 2023, 3rd in Pre-Novice Smooth; 5th in Novice Smooth (with Ben Ow).

  - o Holiday Dance Classic:
    - 2022, 1st in Amateur "C" Smooth Novice (with Ben Ow).

  - o United States Amateur Dance Sport Competition (national amateur ranking competition):

    - 1996, 3rd place, American Rhythm Division (with Christopher Holgate).

Case 8:23-bk-10571-SC    Doc 1486    Filed 08/05/24    Entered 08/05/24 19:36:41    Desc
Main Document      Page 48 of 67

    ■ 1994 & 1995, 2nd place, American Rhythm Division (with Christopher Holgate).

   ○ Ohio Star Ball:  1st in Amateur American Rhythm & 6th place, Amateur American Smooth Division (with David Freeman) (1993).

## PERSONAL INFORMATION

- Native Texan (born in Bryan, Texas).
- Married to Jeffrey D. Van Niel; no children; two cats (Diana Prince and Shadow Grace).

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:      655 W. Broadway, Suite 800, San Diego, California  92101

A true and correct copy of the foregoing document entitled (*specify*):

**DECLARATION OF NANCY RAPOPORT IN SUPPORT OF MOTION OF TRUSTEE RICHARD A. MARSHACK FOR ENTRY OF AN ORDER (A) APPROVING SALE OF ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS PURSUANT TO 11 U.S.C. § 363(b) AND (B) APPROVING ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND OTHER AGREEMENTS**

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On July 18, 2023, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒      Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On July 18, 2023, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐      Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on July 18, 2023, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**JUDGE'S COPY**
The Honorable Scott C. Clarkson
United States Bankruptcy Court
Central District of California
Ronald Reagan Federal Building and Courthouse
411 West Fourth Street, Suite 5130 / Courtroom 5C
Santa Ana, CA 92701-4593

☐      Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| July 18, 2023 | Caron Burke | /s/ Caron Burke |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August  2010*                                                                    **F 9013-3.1.PROOF.SERVICE**

1.      **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

Eric Bensamochan on behalf of Interested Party Courtesy NEF
eric@eblawfirm.us, G63723@notify.cincompass.com

Eric Bensamochan on behalf of Interested Party Eric Bensamochan
eric@eblawfirm.us, G63723@notify.cincompass.com

Ronald K Brown on behalf of Creditor SDCO Tustin Executive Center, Inc.
ron@rkbrownlaw.com

Christopher Celentino on behalf of Plaintiff Richard A. Marshack
christopher.celentino@dinsmore.com, caron.burke@dinsmore.com

Christopher Celentino on behalf of Trustee Richard A Marshack (TR)
christopher.celentino@dinsmore.com, caron.burke@dinsmore.com

Shawn M Christianson on behalf of Interested Party Courtesy NEF
cmcintire@buchalter.com, schristianson@buchalter.com

Randall Baldwin Clark on behalf of Interested Party Randall Baldwin Clark
rbc@randallbclark.com

Leslie A Cohen on behalf of Interested Party Courtesy NEF
leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com;clare@lesliecohenlaw.com

Jenny L Doling on behalf of Interested Party INTERESTED PARTY
jd@jdl.law, dolingjr92080@notify.bestcase.com;15994@notices.nextchapterbk.com

Daniel A Edelman on behalf of Creditor Carolyn Beech
dedelman@edcombs.com, courtecl@edcombs.com

Christopher Ghio on behalf of Plaintiff Richard A. Marshack
christopher.ghio@dinsmore.com, Kristina.Heller@Dinsmore.com

Christopher Ghio on behalf of Trustee Richard A Marshack (TR)
christopher.ghio@dinsmore.com, Kristina.Heller@Dinsmore.com

Jeffrey I Golden on behalf of Creditor Anaheim Arena Management, LLC
jgolden@go2.law,
kadele@ecf.courtdrive.com;cbmeeker@gmail.com;lbracken@wgllp.com;gestrada@wgllp.com;golden.jeff
reyi.b117954@notify.bestcase.com

Jeffrey I Golden on behalf of Creditor Anaheim Ducks Hockey Club, LLC
jgolden@go2.law,
kadele@ecf.courtdrive.com;cbmeeker@gmail.com;lbracken@wgllp.com;gestrada@wgllp.com;golden.jeff
reyi.b117954@notify.bestcase.com

Jeffrey I Golden on behalf of Interested Party Courtesy NEF
jgolden@go2.law,
kadele@ecf.courtdrive.com;cbmeeker@gmail.com;lbracken@wgllp.com;gestrada@wgllp.com;golden.jeff
reyi.b117954@notify.bestcase.com

Richard H Golubow on behalf of Creditor Debt Validation Fund II, LLC
rgolubow@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                               **F 9013-.1.PROOF.SERVICE**

EXHIBIT 3, PAGE 164

Richard H Golubow on behalf of Creditor MC DVI Fund 1, LLC
rgolubow@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com

Richard H Golubow on behalf of Creditor MC DVI Fund 2, LLC
rgolubow@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com

D Edward Hays on behalf of Interested Party Courtesy NEF
ehays@marshackhays.com,
ehays@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@
ecf.courtdrive.com

D Edward Hays on behalf of Trustee Richard A Marshack (TR)
ehays@marshackhays.com,
ehays@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@
ecf.courtdrive.com

Alan Craig Hochheiser on behalf of Creditor City Capital NY
ahochheiser@mauricewutscher.com, arodriguez@mauricewutscher.com

Garrick A Hollander on behalf of Creditor Debt Validation Fund II, LLC
ghollander@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com

Garrick A Hollander on behalf of Creditor MC DVI Fund 1, LLC
ghollander@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com

Garrick A Hollander on behalf of Creditor MC DVI Fund 2, LLC
ghollander@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com

Razmig Izakelian on behalf of Creditor OHP-CDR, LP
razmigizakelian@quinnemanuel.com

Joon M Khang on behalf of Debtor The Litigation Practice Group P.C.
joon@khanglaw.com

Ira David Kharasch on behalf of Interested Party Ad Hoc Consumer Claimants Committee
ikharasch@pszjlaw.com

Ira David Kharasch on behalf of Interested Party Courtesy NEF
ikharasch@pszjlaw.com

Meredith King on behalf of Interested Party Courtesy NEF
mking@fsl.law, ssanchez@fsl.law;jwilson@fsl.law

Nicholas A Koffroth on behalf of Creditor Committee Committee of Unsecured Creditors
nkoffroth@foxrothschild.com, khoang@foxrothschild.com

David S Kupetz on behalf of Defendant Marich Bein, LLC
David.Kupetz@lockelord.com, mylene.ruiz@lockelord.com

David S Kupetz on behalf of Interested Party Courtesy NEF
David.Kupetz@lockelord.com, mylene.ruiz@lockelord.com

Christopher J Langley on behalf of Interested Party Courtesy NEF

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                          F 9013-.1.PROOF.SERVICE

EXHIBIT 3, PAGE 165

chris@slclawoffice.com,
omar@slclawoffice.com;langleycr75251@notify.bestcase.com;ecf123@casedriver.com

Daniel A Lev on behalf of Defendant Consumer Legal Group, P.C.
daniel.lev@gmlaw.com, cheryl.caldwell@gmlaw.com;dlev@ecf.courtdrive.com

Daniel A Lev on behalf of Interested Party Courtesy NEF
daniel.lev@gmlaw.com, cheryl.caldwell@gmlaw.com;dlev@ecf.courtdrive.com

Daniel A Lev on behalf of Interested Party Liberty Acquisitions Group Inc.
daniel.lev@gmlaw.com, cheryl.caldwell@gmlaw.com;dlev@ecf.courtdrive.com

Michael D Lieberman on behalf of Creditor Phillip A. Greenblatt, PLLC
mlieberman@lipsonneilson.com

Yosina M Lissebeck on behalf of Trustee Richard A Marshack (TR)
Yosina.Lissebeck@Dinsmore.com, caron.burke@dinsmore.com

Richard A Marshack (TR)
pkraus@marshackhays.com, rmarshack@iq7technology.com;ecf.alert+Marshack@titlexi.com

Laila Masud on behalf of Interested Party Courtesy NEF
lmasud@marshackhays.com, lmasud@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com

Laila Masud on behalf of Interested Party Richard A. Marshack
lmasud@marshackhays.com, lmasud@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com

Laila Masud on behalf of Plaintiff Richard Marshack
lmasud@marshackhays.com, lmasud@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com

Laila Masud on behalf of Trustee Richard A Marshack (TR)
lmasud@marshackhays.com, lmasud@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com

Kenneth Misken on behalf of U.S. Trustee United States Trustee (SA)
Kenneth.M.Misken@usdoj.gov

Byron Z Moldo on behalf of Interested Party Byron Moldo
bmoldo@ecjlaw.com, amatsuoka@ecjlaw.com,dperez@ecjlaw.com

Alan I Nahmias on behalf of Interested Party Courtesy NEF
anahmias@mbn.law, jdale@mbnlawyers.com

Victoria Newmark on behalf of Interested Party Courtesy NEF
vnewmark@pszjlaw.com

Queenie K Ng on behalf of U.S. Trustee United States Trustee (SA)
queenie.k.ng@usdoj.gov

Keith C Owens on behalf of Creditor Committee Committee of Unsecured Creditors
kowens@foxrothschild.com, khoang@foxrothschild.com

Teri T Pham on behalf of Attorney Teri Pham
tpham@epglawyers.com, ttpassistant@epglawyers.com

Douglas A Plazak on behalf of Defendant Greyson Law Center PC

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                   **F 9013-.1.PROOF.SERVICE**

EXHIBIT 3, PAGE 166

dplazak@rhlaw.com

Douglas A Plazak on behalf of Defendant Han Trinh
dplazak@rhlaw.com

Douglas A Plazak on behalf of Defendant Jayde Trinh
dplazak@rhlaw.com

Douglas A Plazak on behalf of Defendant Scott James Eadie
dplazak@rhlaw.com

Ronald N Richards on behalf of Defendant Consumer Legal Group, PC
ron@ronaldrichards.com, 7206828420@filings.docketbird.com

Ronald N Richards on behalf of Interested Party Courtesy NEF
ron@ronaldrichards.com, 7206828420@filings.docketbird.com

Gregory M Salvato on behalf of Creditor Mari Agape
gsalvato@salvatoboufadel.com,
calendar@salvatolawoffices.com;jboufadel@salvatoboufadel.com;gsalvato@ecf.inforuptcy.com

Gregory M Salvato on behalf of Interested Party Courtesy NEF
gsalvato@salvatoboufadel.com,
calendar@salvatolawoffices.com;jboufadel@salvatoboufadel.com;gsalvato@ecf.inforuptcy.com

Olivia Scott on behalf of Creditor Azzure Capital LLC
olivia.scott3@bclplaw.com

Olivia Scott on behalf of Creditor Hi Bar Capital LLC
olivia.scott3@bclplaw.com

Jonathan Serrano on behalf of Plaintiff Richard A. Marshack
jonathan.serrano@dinsmore.com

Jonathan Serrano on behalf of Trustee Richard A Marshack (TR)
jonathan.serrano@dinsmore.com

Paul R Shankman on behalf of Attorney Paul R. Shankman
PShankman@fortislaw.com, info@fortislaw.com

Paul R Shankman on behalf of Creditor United Partnerships, LLC
PShankman@fortislaw.com, info@fortislaw.com

Leslie Skorheim on behalf of U.S. Trustee United States Trustee (SA)
leslie.skorheim@usdoj.gov

Howard Steinberg on behalf of Defendant BankUnited, N.A.
steinbergh@gtlaw.com, pearsallt@gtlaw.com;howard-steinberg-6096@ecf.pacerpro.com

Andrew Still on behalf of Interested Party Courtesy NEF
astill@swlaw.com, kcollins@swlaw.com

United States Trustee (SA)
ustpregion16.sa.ecf@usdoj.gov

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

Sharon Z. Weiss on behalf of Creditor Azzure Capital LLC
sharon.weiss@bclplaw.com, raul.morales@bclplaw.com,REC_KM_ECF_SMO@bclplaw.com

Sharon Z. Weiss on behalf of Creditor Hi Bar Capital LLC
sharon.weiss@bclplaw.com, raul.morales@bclplaw.com,REC_KM_ECF_SMO@bclplaw.com

Johnny White on behalf of Creditor Debt Relief Group, LLC
JWhite@wrslawyers.com, jlee@wrslawyers.com

Johnny White on behalf of Interested Party Courtesy NEF
JWhite@wrslawyers.com, jlee@wrslawyers.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

**F 9013-.1.PROOF.SERVICE**

EXHIBIT 3, PAGE 168

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:      655 W. Broadway, Suite 800, San Diego, California  92101

A true and correct copy of the foregoing document: **APPLICATION FOR AN ORDER PURSUANT TO 11 U.S.C. § 105 AND LBR 2016-1(d) AUTHORIZING THE RETENTION OF NANCY B. RAPOPORT AS FEE EXAMINER AND APPROVING STIPULATION GOVERNING SAME**

will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On <u>August 5, 2024</u>, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

⊠      Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On <u>August 5, 2024</u>, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

YCIR Inc.
Hector Ocegueda
535 S Barranca St #4
Covina, CA 91723

☐      Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on <u>August 5, 2024</u>, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**JUDGE'S COPY - VIA FEDEX**
The Honorable Scott C. Clarkson
United States Bankruptcy Court
Central District of California
Ronald Reagan Federal Building and Courthouse
411 West Fourth Street, Suite 5130 / Courtroom 5C
Santa Ana, CA 92701-4593

☐      Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| August 5, 2024 | Caron Burke | /s/ Caron Burke |
| --- | --- | --- |
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August  2010*                                           **F 9013-3.1.PROOF.SERVICE**

1.      **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

Kyra E Andrassy on behalf of Interested Party Courtesy NEF
kandrassy@raineslaw.com, bclark@raineslaw.com;jfisher@raineslaw.com

Bradford Barnhardt on behalf of Interested Party Courtesy NEF
bbarnhardt@marshackhays.com, bbarnhardt@ecf.courtdrive.com,alinares@ecf.courtdrive.com

Bradford Barnhardt on behalf of Plaintiff Richard A. Marshack
bbarnhardt@marshackhays.com, bbarnhardt@ecf.courtdrive.com,alinares@ecf.courtdrive.com

Bradford Barnhardt on behalf of Trustee Richard A Marshack (TR)
bbarnhardt@marshackhays.com, bbarnhardt@ecf.courtdrive.com,alinares@ecf.courtdrive.com

Eric Bensamochan on behalf of Creditor Affirma, LLC
eric@eblawfirm.us, G63723@notify.cincompass.com

Eric Bensamochan on behalf of Creditor Oxford Knox, LLC
eric@eblawfirm.us, G63723@notify.cincompass.com

Eric Bensamochan on behalf of Interested Party Courtesy NEF
eric@eblawfirm.us, G63723@notify.cincompass.com

Eric Bensamochan on behalf of Interested Party Eric Bensamochan
eric@eblawfirm.us, G63723@notify.cincompass.com

Michael Jay Berger on behalf of Defendant Leucadia Enterprises, Inc
michael.berger@bankruptcypower.com,
yathida.nipha@bankruptcypower.com;michael.berger@ecf.inforuptcy.com

Ethan J Birnberg on behalf of Defendant BMF Advance, LLC
birnberg@portersimon.com, kdwyer@portersimon.com

Ethan J Birnberg on behalf of Defendant Diverse Capital LLC
birnberg@portersimon.com, kdwyer@portersimon.com

Peter W Bowie on behalf of Trustee Richard A Marshack (TR)
peter.bowie@dinsmore.com, caron.burke@dinsmore.com

Ronald K Brown on behalf of Creditor SDCO Tustin Executive Center, Inc.
ron@rkbrownlaw.com

Christopher Celentino on behalf of Plaintiff Richard A. Marshack
christopher.celentino@dinsmore.com, caron.burke@dinsmore.com

Christopher Celentino on behalf of Trustee Richard A Marshack (TR)
christopher.celentino@dinsmore.com, caron.burke@dinsmore.com

Shawn M Christianson on behalf of Interested Party Courtesy NEF
cmcintire@buchalter.com, schristianson@buchalter.com

Randall Baldwin Clark on behalf of Interested Party Randall Baldwin Clark
rbc@randallbclark.com

Leslie A Cohen on behalf of Defendant Rosa Bianca Loli
leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com;clare@lesliecohenlaw.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*                                          **F 9013-3.1.PROOF.SERVICE**

EXHIBIT 3, PAGE 170

Leslie A Cohen on behalf of Interested Party Courtesy NEF
leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com;clare@lesliecohenlaw.com

Michael W Davis on behalf of Defendant Morning Law Group, P.C.
mdavis@dtolaw.com, ygodson@dtolaw.com

Anthony Paul Diehl on behalf of Interested Party Courtesy NEF
anthony@apdlaw.net,
Diehl.AnthonyB112492@notify.bestcase.com,ecf@apdlaw.net,9143954420@filings.docketbird.com

Ashley Dionisio on behalf of Other Professional Omni Agent Solutions
adionisio@omniagnt.com

Jenny L Doling on behalf of Interested Party INTERESTED PARTY
jd@jdl.law,
dolingjr92080@notify.bestcase.com;15994@notices.nextchapterbk.com;jdoling@jubileebk.net

Jenny L Doling on behalf of Interested Party National Association of Consumer Bankruptcy Attorneys
jd@jdl.law,
dolingjr92080@notify.bestcase.com;15994@notices.nextchapterbk.com;jdoling@jubileebk.net

Jenny L Doling on behalf of Interested Party National Consumer Bankruptcy Rights Center
jd@jdl.law,
dolingjr92080@notify.bestcase.com;15994@notices.nextchapterbk.com;jdoling@jubileebk.net

Daniel A Edelman on behalf of Creditor Carolyn Beech
dedelman@edcombs.com, courtecl@edcombs.com

Howard M Ehrenberg on behalf of Defendant New Horizon Finance LLC
Howard.Ehrenberg@gmlaw.com,
hehrenberg@ecf.courtdrive.com;hehrenberg@ecf.inforuptcy.com;Karen.Files@gmlaw.com;denise.walker@gmlaw.com

Meredith Fahn on behalf of Creditor Meredith Fahn
fahn@sbcglobal.net

Jeremy Faith on behalf of Defendant Colbalt Funding Solutions, LLC
Jeremy@MarguliesFaithlaw.com, Angela@MarguliesFaithlaw.com;Vicky@MarguliesFaithlaw.com

Jeremy Faith on behalf of Interested Party Courtesy NEF
Jeremy@MarguliesFaithlaw.com, Angela@MarguliesFaithlaw.com;Vicky@MarguliesFaithlaw.com

William P Fennell on behalf of Creditor Validation Partners LLC
william.fennell@fennelllaw.com,
wpf@ecf.courtdrive.com;hala.hammi@fennelllaw.com;naomi.cwalinski@fennelllaw.com;samantha.larimer@fennelllaw.com;office@fennelllaw.com;Brendan.Bargmann@fennelllaw.com

Alan W Forsley on behalf of Defendant JGW Solutions, LLC
alan.forsley@flpllp.com, awf@fkllawfirm.com,awf@fl-lawyers.net,addy@flpllp.com

Alan W Forsley on behalf of Interested Party Courtesy NEF
alan.forsley@flpllp.com, awf@fkllawfirm.com,awf@fl-lawyers.net,addy@flpllp.com

Marc C Forsythe on behalf of Defendant Clear Vision Financial LLC
mforsythe@goeforlaw.com,
mforsythe@goeforlaw.com;dcyrankowski@goeforlaw.com;Forsythe.MarcR136526@notify.bestcase.com

Marc C Forsythe on behalf of Defendant Perfect Financial, LLC

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-.1.PROOF.SERVICE**

EXHIBIT 3, PAGE 171

mforsythe@goeforlaw.com,
mforsythe@goeforlaw.com;dcyrankowski@goeforlaw.com;Forsythe.MarcR136526@notify.bestcase.com

Marc C Forsythe on behalf of Defendant Point Break Holdings LLC
mforsythe@goeforlaw.com,
mforsythe@goeforlaw.com;dcyrankowski@goeforlaw.com;Forsythe.MarcR136526@notify.bestcase.com

Jeremy Freedman on behalf of Plaintiff Richard A. Marshack
jeremy.freedman@dinsmore.com, nicolette.murphy@dinsmore.com

Jeremy Freedman on behalf of Trustee Richard A Marshack (TR)
jeremy.freedman@dinsmore.com, nicolette.murphy@dinsmore.com

Eric Gassman on behalf of Creditor Herret Credit
erg@gassmanlawgroup.com, gassman.ericb112993@notify.bestcase.com

Christopher Ghio on behalf of Plaintiff Richard A. Marshack
christopher.ghio@dinsmore.com,
nicolette.murphy@dinsmore.com;angelica.urena@dinsmore.com;deamira.romo@dinsmore.com

Christopher Ghio on behalf of Plaintiff Richard A. Marshack
christopher.ghio@dinsmore.com,
nicolette.murphy@dinsmore.com;angelica.urena@dinsmore.com;deamira.romo@dinsmore.com

Christopher Ghio on behalf of Trustee Richard A Marshack (TR)
christopher.ghio@dinsmore.com,
nicolette.murphy@dinsmore.com;angelica.urena@dinsmore.com;deamira.romo@dinsmore.com

Amy Lynn Ginsburg on behalf of Creditor Amy Ginsburg
efilings@ginsburglawgroup.com

Amy Lynn Ginsburg on behalf of Creditor Kenton Cobb
efilings@ginsburglawgroup.com

Amy Lynn Ginsburg on behalf of Creditor Shannon Bellfield
efilings@ginsburglawgroup.com

Eric D Goldberg on behalf of Defendant Stripe, Inc.
eric.goldberg@dlapiper.com, eric-goldberg-1103@ecf.pacerpro.com

Jeffrey I Golden on behalf of Creditor Affirma, LLC
jgolden@go2.law,
kadele@ecf.courtdrive.com;cbmeeker@gmail.com;lbracken@wgllp.com;dfitzgerald@go2.law;golden.jeff
reyi.b117954@notify.bestcase.com

Jeffrey I Golden on behalf of Creditor Anaheim Arena Management, LLC
jgolden@go2.law,
kadele@ecf.courtdrive.com;cbmeeker@gmail.com;lbracken@wgllp.com;dfitzgerald@go2.law;golden.jeff
reyi.b117954@notify.bestcase.com

Jeffrey I Golden on behalf of Creditor Anaheim Ducks Hockey Club, LLC
jgolden@go2.law,
kadele@ecf.courtdrive.com;cbmeeker@gmail.com;lbracken@wgllp.com;dfitzgerald@go2.law;golden.jeff
reyi.b117954@notify.bestcase.com

Jeffrey I Golden on behalf of Creditor Oxford Knox, LLC

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

jgolden@go2.law,
kadele@ecf.courtdrive.com;cbmeeker@gmail.com;lbracken@wgllp.com;dfitzgerald@go2.law;golden.jeff
reyi.b117954@notify.bestcase.com

Jeffrey I Golden on behalf of Interested Party Courtesy NEF
jgolden@go2.law,
kadele@ecf.courtdrive.com;cbmeeker@gmail.com;lbracken@wgllp.com;dfitzgerald@go2.law;golden.jeff
reyi.b117954@notify.bestcase.com

Richard H Golubow on behalf of Creditor Debt Validation Fund II, LLC
rgolubow@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com

Richard H Golubow on behalf of Creditor MC DVI Fund 1, LLC
rgolubow@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com

Richard H Golubow on behalf of Creditor MC DVI Fund 2, LLC
rgolubow@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com

Richard H Golubow on behalf of Defendant Debt Validation Fund II, LLC
rgolubow@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com

Richard H Golubow on behalf of Defendant MC DVI Fund 1, LLC
rgolubow@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com

Richard H Golubow on behalf of Defendant MC DVI Fund 2, LLC
rgolubow@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com

David M Goodrich on behalf of Creditor United Partnerships, LLC
dgoodrich@go2.law, kadele@go2.law;dfitzgerald@go2.law;wggllp@ecf.courtdrive.com

David M Goodrich on behalf of Interested Party Courtesy NEF
dgoodrich@go2.law, kadele@go2.law;dfitzgerald@go2.law;wggllp@ecf.courtdrive.com

D Edward Hays on behalf of Creditor Committee Committee of Unsecured Creditors
ehays@marshackhays.com,
ehays@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@ec
f.courtdrive.com

D Edward Hays on behalf of Interested Party Courtesy NEF
ehays@marshackhays.com,
ehays@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@ec
f.courtdrive.com

D Edward Hays on behalf of Interested Party Courtesy NEF
ehays@marshackhays.com,
ehays@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@ec
f.courtdrive.com

D Edward Hays on behalf of Trustee Richard A Marshack (TR)
ehays@marshackhays.com,
ehays@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@ec
f.courtdrive.com

D Edward Hays on behalf of Trustee Richard A Marshack (TR)
ehays@marshackhays.com,
ehays@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@ec
f.courtdrive.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                              **F 9013-.1.PROOF.SERVICE**

EXHIBIT 3, PAGE 173

Alan Craig Hochheiser on behalf of Creditor City Capital NY
ahochheiser@mauricewutscher.com, arodriguez@mauricewutscher.com

Garrick A Hollander on behalf of Creditor Debt Validation Fund II, LLC
ghollander@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com

Garrick A Hollander on behalf of Creditor MC DVI Fund 1, LLC
ghollander@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com

Garrick A Hollander on behalf of Creditor MC DVI Fund 2, LLC
ghollander@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com

Brian L Holman on behalf of Creditor Sharp Electronics Corporation
b.holman@musickpeeler.com

Richard L. Hyde on behalf of Interested Party Courtesy NEF
rhyde@awglaw.com

Peter L Isola on behalf of Interested Party Merchants Credit Corporation
pisola@hinshawlaw.com, rmojica@hinshawlaw.com,iking@hinshawlaw.com

Razmig Izakelian on behalf of Counter-Defendant OHP-CDR, LP
razmigizakelian@quinnemanuel.com

Razmig Izakelian on behalf of Counter-Defendant PurchaseCo 80, LLC
razmigizakelian@quinnemanuel.com

Razmig Izakelian on behalf of Creditor OHP-CDR, LP
razmigizakelian@quinnemanuel.com

Razmig Izakelian on behalf of Plaintiff OHP-CDR, LP
razmigizakelian@quinnemanuel.com

Razmig Izakelian on behalf of Plaintiff PurchaseCo 80, LLC
razmigizakelian@quinnemanuel.com

Sara Johnston on behalf of Trustee Richard A Marshack (TR)
sara.johnston@dinsmore.com

Sweeney Kelly on behalf of Defendant Fidelity National Information Services, Inc.
kelly@ksgklaw.com

Sweeney Kelly on behalf of Defendant Fidelity National Information Services, Inc. dba FIS
kelly@ksgklaw.com

Sweeney Kelly on behalf of Defendant Worldpay Group
kelly@ksgklaw.com

Sweeney Kelly on behalf of Defendant Worldpay, LLC
kelly@ksgklaw.com

Joon M Khang on behalf of Attorney Khang & Khang LLP
joon@khanglaw.com

Joon M Khang on behalf of Debtor The Litigation Practice Group P.C.
joon@khanglaw.com

Ira David Kharasch on behalf of Interested Party Ad Hoc Consumer Claimants Committee

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-.1.PROOF.SERVICE**

ikharasch@pszjlaw.com

Ira David Kharasch on behalf of Interested Party Courtesy NEF
ikharasch@pszjlaw.com

Meredith King on behalf of Defendant Gallant Law Group
mking@fsl.law, ssanchez@fsl.law;jwilson@fsl.law

Meredith King on behalf of Interested Party Courtesy NEF
mking@fsl.law, ssanchez@fsl.law;jwilson@fsl.law

Nicholas A Koffroth on behalf of Creditor Committee Committee of Unsecured Creditors
nkoffroth@foxrothschild.com, khoang@foxrothschild.com;ca.dkt@foxrothschild.com

David S Kupetz on behalf of Defendant Marich Bein LLC
David.Kupetz@lockelord.com, mylene.ruiz@lockelord.com

David S Kupetz on behalf of Defendant Marich Bein, LLC
David.Kupetz@lockelord.com, mylene.ruiz@lockelord.com

David S Kupetz on behalf of Interested Party Courtesy NEF
David.Kupetz@lockelord.com, mylene.ruiz@lockelord.com

Christopher J Langley on behalf of Interested Party Courtesy NEF
chris@slclawoffice.com,
langleycr75251@notify.bestcase.com;ecf123@casedriver.com;john@slclawoffice.com

Kelli Ann Lee on behalf of Trustee Richard A Marshack (TR)
Kelli.lee@dinsmore.com, kristy.allen@dinsmore.com

Matthew A Lesnick on behalf of Defendant OptimumBank Holdings, Inc.
matt@lesnickprince.com, matt@ecf.inforuptcy.com;jmack@lesnickprince.com

Daniel A Lev on behalf of Defendant Consumer Legal Group, PC
daniel.lev@gmlaw.com, cheryl.caldwell@gmlaw.com;dlev@ecf.courtdrive.com

Daniel A Lev on behalf of Defendant LGS Holdco, LLC
daniel.lev@gmlaw.com, cheryl.caldwell@gmlaw.com;dlev@ecf.courtdrive.com

Daniel A Lev on behalf of Interested Party Consumer Legal Group, P.C.
daniel.lev@gmlaw.com, cheryl.caldwell@gmlaw.com;dlev@ecf.courtdrive.com

Daniel A Lev on behalf of Interested Party Courtesy NEF
daniel.lev@gmlaw.com, cheryl.caldwell@gmlaw.com;dlev@ecf.courtdrive.com

Daniel A Lev on behalf of Interested Party Liberty Acquisitions Group Inc.
daniel.lev@gmlaw.com, cheryl.caldwell@gmlaw.com;dlev@ecf.courtdrive.com

Britteny Leyva on behalf of Interested Party Revolv3, Inc.
bleyva@mayerbrown.com,
2396393420@filings.docketbird.com;KAWhite@mayerbrown.com;ladocket@mayerbrown.com

Marc A Lieberman on behalf of Defendant JGW Solutions, LLC
marc.lieberman@flpllp.com, addy@flpllp.com,andrea@flpllp.com

Marc A Lieberman on behalf of Interested Party Courtesy NEF
marc.lieberman@flpllp.com, addy@flpllp.com,andrea@flpllp.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                              **F 9013-.1.PROOF.SERVICE**

Michael D Lieberman on behalf of Creditor Phillip A. Greenblatt, PLLC
mlieberman@lipsonneilson.com

Yosina M Lissebeck on behalf of Counter-Claimant Richard A. Marshack
Yosina.Lissebeck@Dinsmore.com, caron.burke@dinsmore.com;Wendy.Yones@Dinsmore.com

Yosina M Lissebeck on behalf of Defendant Richard A. Marshack
Yosina.Lissebeck@Dinsmore.com, caron.burke@dinsmore.com;Wendy.Yones@Dinsmore.com

Yosina M Lissebeck on behalf of Plaintiff Richard A. Marshack
Yosina.Lissebeck@Dinsmore.com, caron.burke@dinsmore.com;Wendy.Yones@Dinsmore.com

Yosina M Lissebeck on behalf of Trustee Richard A Marshack (TR)
Yosina.Lissebeck@Dinsmore.com, caron.burke@dinsmore.com;Wendy.Yones@Dinsmore.com

Mitchell B Ludwig on behalf of Creditor Fundura Capital Group
mbl@kpclegal.com, kad@kpclegal.com

Mitchell B Ludwig on behalf of Defendant Bridge Funding Cap, LLC
mbl@kpclegal.com, kad@kpclegal.com

Daniel S March on behalf of Defendant Daniel S. March
marchlawoffice@gmail.com, marchdr94019@notify.bestcase.com

Daniel S March on behalf of Interested Party INTERESTED PARTY
marchlawoffice@gmail.com, marchdr94019@notify.bestcase.com

Kathleen P March on behalf of Creditor Greyson Law Center PC
kmarch@bkylawfirm.com, kmarch3@sbcglobal.net,kmarch@sbcglobal.net

Kathleen P March on behalf of Creditor Han Trinh
kmarch@bkylawfirm.com, kmarch3@sbcglobal.net,kmarch@sbcglobal.net

Kathleen P March on behalf of Creditor Phuong (Jayde) Trinh
kmarch@bkylawfirm.com, kmarch3@sbcglobal.net,kmarch@sbcglobal.net

Kathleen P March on behalf of Defendant Greyson Law Center PC
kmarch@bkylawfirm.com, kmarch3@sbcglobal.net,kmarch@sbcglobal.net

Kathleen P March on behalf of Defendant Han Trinh
kmarch@bkylawfirm.com, kmarch3@sbcglobal.net,kmarch@sbcglobal.net

Kathleen P March on behalf of Defendant Jayde Trinh
kmarch@bkylawfirm.com, kmarch3@sbcglobal.net,kmarch@sbcglobal.net

Mark J Markus on behalf of Creditor David Orr
bklawr@bklaw.com, markjmarkus@gmail.com;markus.markj.r112926@notify.bestcase.com

Richard A Marshack (TR)
pkraus@marshackhays.com, ecf.alert+Marshack@titlexi.com

Laila Masud on behalf of Interested Party Courtesy NEF
lmasud@marshackhays.com,
lmasud@ecf.courtdrive.com;lbuchanan@marshackhays.com;alinares@ecf.courtdrive.com

Laila Masud on behalf of Interested Party Courtesy NEF
lmasud@marshackhays.com,
lmasud@ecf.courtdrive.com;lbuchanan@marshackhays.com;alinares@ecf.courtdrive.com

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                    **F 9013-.1.PROOF.SERVICE**

EXHIBIT 3, PAGE 176

Case 8:23-bk-10571-SC    Doc 1486    Filed 08/05/24    Entered 08/05/24 11:36:41    Desc
Main Document      Page 63 of 66

Laila Masud on behalf of Interested Party Richard A. Marshack
lmasud@marshackhays.com,
lmasud@ecf.courtdrive.com;lbuchanan@marshackhays.com;alinares@ecf.courtdrive.com

Laila Masud on behalf of Plaintiff Richard Marshack
lmasud@marshackhays.com,
lmasud@ecf.courtdrive.com;lbuchanan@marshackhays.com;alinares@ecf.courtdrive.com

Laila Masud on behalf of Trustee Richard A Marshack (TR)
lmasud@marshackhays.com,
lmasud@ecf.courtdrive.com;lbuchanan@marshackhays.com;alinares@ecf.courtdrive.com

Sarah S. Mattingly on behalf of Defendant Clearcube LLC
sarah.mattingly@dinsmore.com

Sarah S. Mattingly on behalf of Plaintiff Richard A. Marshack, Chapter 11 Trustee
sarah.mattingly@dinsmore.com

Sarah S. Mattingly on behalf of Plaintiff Richard A. Marshack
sarah.mattingly@dinsmore.com

Sarah S. Mattingly on behalf of Trustee Richard A Marshack (TR)
sarah.mattingly@dinsmore.com

William McCormick on behalf of Creditor TN Dept of Revenue
Bill.McCormick@ag.tn.gov

Kenneth Misken on behalf of U.S. Trustee United States Trustee (SA)
Kenneth.M.Misken@usdoj.gov

Byron Z Moldo on behalf of Interested Party Byron Moldo
bmoldo@ecjlaw.com, aantonio@ecjlaw.com,dperez@ecjlaw.com

Glenn D. Moses on behalf of Creditor ADP, Inc
gmoses@venable.com, cascavone@venable.com;ipmalcolm@venable.com;jadelgado@venable.com

Jamie D Mottola on behalf of Plaintiff Richard A. Marshack, Chapter 11 Trustee
Jamie.Mottola@dinsmore.com, jhanawalt@ecf.inforuptcy.com

Alan I Nahmias on behalf of Interested Party Courtesy NEF
anahmias@mbn.law, jdale@mbn.law

Victoria Newmark on behalf of Interested Party Courtesy NEF
vnewmark@pszjlaw.com

Jacob Newsum-Bothamley on behalf of Plaintiff Richard A. Marshack
jacob.bothamley@dinsmore.com, angelica.urena@dinsmore.com;deamira.romo@dinsmore.com

Jacob Newsum-Bothamley on behalf of Trustee Richard A Marshack (TR)
jacob.bothamley@dinsmore.com, angelica.urena@dinsmore.com;deamira.romo@dinsmore.com

Queenie K Ng on behalf of U.S. Trustee United States Trustee (SA)
queenie.k.ng@usdoj.gov

Israel Orozco on behalf of Creditor Israel Orozco
israel@iolawcorp.com

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

**F 9013-.1.PROOF.SERVICE**

Keith C Owens on behalf of Creditor Committee Committee of Unsecured Creditors
kowens@foxrothschild.com, khoang@foxrothschild.com

Lisa Patel on behalf of Defendant OptimumBank Holdings, Inc.
lpatel@lesnickprince.com, jmack@lesnickprince.com;jnavarro@lesnickprince.com

Michael R Pinkston on behalf of Creditor Wells Marble and Hurst, PLLC
rpinkston@seyfarth.com,
jmcdermott@seyfarth.com,sfocalendar@seyfarth.com,5314522420@filings.docketbird.com,bankruptcyd
ocket@seyfarth.com

Douglas A Plazak on behalf of Defendant Scott James Eadie
dplazak@rhlaw.com

Tyler Powell on behalf of Counter-Claimant Richard A Marshack (TR)
tyler.powell@dinsmore.com, jennifer.pitcock@dinsmore.com;caitlin.brock@dinsmore.com

Tyler Powell on behalf of Counter-Claimant Richard A. Marshack
tyler.powell@dinsmore.com, jennifer.pitcock@dinsmore.com;caitlin.brock@dinsmore.com

Tyler Powell on behalf of Defendant Richard A. Marshack
tyler.powell@dinsmore.com, jennifer.pitcock@dinsmore.com;caitlin.brock@dinsmore.com

Tyler Powell on behalf of Plaintiff Richard A. Marshack
tyler.powell@dinsmore.com, jennifer.pitcock@dinsmore.com;caitlin.brock@dinsmore.com

Tyler Powell on behalf of Trustee Richard A Marshack (TR)
tyler.powell@dinsmore.com, jennifer.pitcock@dinsmore.com;caitlin.brock@dinsmore.com

Daniel H Reiss on behalf of Defendant PECC Corp
dhr@lnbyg.com, dhr@ecf.inforuptcy.com

Daniel H Reiss on behalf of Defendant Touzi Capital, LLC
dhr@lnbyg.com, dhr@ecf.inforuptcy.com

Daniel H Reiss on behalf of Defendant Eng Taing
dhr@lnbyg.com, dhr@ecf.inforuptcy.com

Ronald N Richards on behalf of Defendant Consumer Legal Group, PC
ron@ronaldrichards.com, 7206828420@filings.docketbird.com

Ronald N Richards on behalf of Defendant LGS Holdco, LLC
ron@ronaldrichards.com, 7206828420@filings.docketbird.com

Ronald N Richards on behalf of Interested Party Courtesy NEF
ron@ronaldrichards.com, 7206828420@filings.docketbird.com

Vanessa Rodriguez on behalf of Plaintiff Richard A. Marshack
vanessa.rodriguez@dinsmore.com, angelica.urena@dinsmore.com

Vanessa Rodriguez on behalf of Trustee Richard A Marshack (TR)
vanessa.rodriguez@dinsmore.com, angelica.urena@dinsmore.com

Kevin Alan Rogers on behalf of Creditor Wells Marble and Hurst, PLLC
krogers@wellsmar.com

Gregory M Salvato on behalf of Creditor Mari Agape

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

**F 9013-.1.PROOF.SERVICE**

EXHIBIT 3, PAGE 178

gsalvato@salvatoboufadel.com,
calendar@salvatolawoffices.com;jboufadel@salvatoboufadel.com;gsalvato@ecf.inforuptcy.com

Gregory M Salvato on behalf of Interested Party Courtesy NEF
gsalvato@salvatoboufadel.com,
calendar@salvatolawoffices.com;jboufadel@salvatoboufadel.com;gsalvato@ecf.inforuptcy.com

Olivia Scott on behalf of Creditor Azzure Capital LLC
olivia.scott@hklaw.com

Olivia Scott on behalf of Creditor Hi Bar Capital LLC
olivia.scott@hklaw.com

Jonathan Serrano on behalf of Plaintiff Richard A. Marshack
jonathan.serrano@dinsmore.com

Jonathan Serrano on behalf of Special Counsel Dinsmore & Shohl LLP
jonathan.serrano@dinsmore.com

Jonathan Serrano on behalf of Trustee Richard A Marshack (TR)
jonathan.serrano@dinsmore.com

Maureen J Shanahan on behalf of Creditor Randall Baldwin Clark Attorney at Law PLLC
Mstotaro@aol.com

Paul R Shankman on behalf of Attorney Paul R. Shankman
PShankman@fortislaw.com, info@fortislaw.com

Paul R Shankman on behalf of Creditor United Partnerships, LLC
PShankman@fortislaw.com, info@fortislaw.com

Zev Shechtman on behalf of Interested Party Danning Gill Israel & Krasnoff LLP
Zev.Shechtman@saul.com, zshechtman@ecf.inforuptcy.com;easter.santamaria@saul.com

Zev Shechtman on behalf of Interested Party Morning Law Group, P.C.
Zev.Shechtman@saul.com, zshechtman@ecf.inforuptcy.com;easter.santamaria@saul.com

Jeffrey M Singletary on behalf of Plaintiff Alteryx, Inc.
jsingletary@swlaw.com, rmckay@swlaw.com

Leslie Skorheim on behalf of U.S. Trustee United States Trustee (SA)
leslie.skorheim@usdoj.gov

Adam D Stein-Sapir on behalf of Creditor Pioneer Funding Group, LLC
info@pfllc.com

Howard Steinberg on behalf of Defendant BankUnited, N.A.
steinbergh@gtlaw.com, pearsallt@gtlaw.com;NEF-BK@gtlaw.com;howard-steinberg-
6096@ecf.pacerpro.com

John H. Stephens on behalf of Plaintiff Richard A Marshack
john.stephens@dinsmore.com, lizbeth.alonso@dinsmore.com

John H. Stephens on behalf of Plaintiff Richard A Marshack
john.stephens@dinsmore.com, lizbeth.alonso@dinsmore.com

Andrew Still on behalf of Creditor Alteryx, Inc.
astill@swlaw.com, kcollins@swlaw.com

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-.1.PROOF.SERVICE**

Andrew Still on behalf of Interested Party Courtesy NEF
astill@swlaw.com, kcollins@swlaw.com

Andrew Still on behalf of Plaintiff Alteryx, Inc.
astill@swlaw.com, kcollins@swlaw.com

Michael R Totaro on behalf of Creditor Randall Baldwin Clark Attorney at Law PLLC
Ocbkatty@aol.com

Michael R Totaro on behalf of Interested Party Randall Baldwin Clark
Ocbkatty@aol.com

United States Trustee (SA)
ustpregion16.sa.ecf@usdoj.gov

William J Wall on behalf of Witness Bradford Lee
wwall@wall-law.com

Sharon Z. Weiss on behalf of Creditor Azzure Capital LLC
sharon.weiss@bclplaw.com, raul.morales@bclplaw.com,REC_KM_ECF_SMO@bclplaw.com

Sharon Z. Weiss on behalf of Creditor Hi Bar Capital LLC
sharon.weiss@bclplaw.com, raul.morales@bclplaw.com,REC_KM_ECF_SMO@bclplaw.com

Sharon Z. Weiss on behalf of Defendant Azzure Capital LLC
sharon.weiss@bclplaw.com, raul.morales@bclplaw.com,REC_KM_ECF_SMO@bclplaw.com

Johnny White on behalf of Creditor Debt Relief Group, LLC
JWhite@wrslawyers.com, jlee@wrslawyers.com

Johnny White on behalf of Interested Party Courtesy NEF
JWhite@wrslawyers.com, jlee@wrslawyers.com

Reina Zepeda on behalf of Other Professional Omni Agent Solutions
rzepeda@omniagnt.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

Case 8:23-bk-10571-SC    Doc 1800    Filed 10/08/24    Entered 10/08/24 18:19:16    Desc
Main Document      Page 184 of 332

Case 8:23-bk-10571-SC    Doc 1486-1    Filed 08/05/24    Entered 08/05/24 11:36:41
Desc  Declaration of Nancy B. Rapoport In Support    Page 1 of 75

1

Nancy B. Rapoport
William S. Boyd School of Law
2  University of Nevada, Las Vegas
4505 S. Maryland Parkway
3  Mail Stop 451003
Las Vegas, Nevada  89154-1003
4  nancy.rapoport@unlv.edu

5  Court-Appointed Ethics Compliance Monitor

6

7

8                    **UNITED STATES BANKRUPTCY COURT**

9         **CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION**

10

11  In re                                          Case No. 8:23-bk-10571-SC

12  THE LITIGATION PRACTICE GROUP P.C.,            Chapter 11

13           Debtor.                               **DECLARATION OF NANCY B.
                                                   RAPOPORT IN SUPPORT OF**
14                                                 **APPLICATION FOR AN ORDER**
                                                   **PURSUANT TO 11 U.S.C. § 105 AND**
15                                                 **LBR 2016-1(d) AUTHORIZING THE**
                                                   **RETENTION OF NANCY B.**
16                                                 **RAPOPORT AS FEE EXAMINER AND**
                                                   **APPROVING STIPULATION**
17                                                 **GOVERNING SAME**

18                                                 **[No Hearing Required - LBR 2016-1(d)]**

19

20

21

22

23

24

25

26

27

28

Case 8:23-bk-10571-SC    Doc 1800    Filed 10/08/24    Entered 10/08/24 18:19:16    Desc
Main Document      Page 185 of 332

Case 8:23-bk-10571-SC    Doc 1486-1    Filed 08/05/24    Entered 08/05/24 11:36:41
Desc    Declaration of Nancy B. Rapoport In Support    Page 2 of 75

## DECLARATION OF NANCY B. RAPOPORT

1.     I am an individual over 18 years of age and competent to make this Declaration.

2.     If called upon to do so, I could and would competently testify as to the facts set forth in this Declaration.

3.     I am the Court-appointed Ethics Compliance Monitor ("Monitor") of the Bankruptcy Estate ("Estate") of The Litigation Practice Group P.C. ("Debtor").

4.     The facts set forth below are true and based on my personal knowledge.

5.     I make this Declaration in support of the APPLICATION FOR AN ORDER PURSUANT TO 11 U.S.C. § 105 AND LBR 2016-1(d) AUTHORIZING THE RETENTION OF NANCY B. RAPOPORT AS FEE EXAMINER AND APPROVING STIPULATION GOVERNING SAME ("Motion").

6.     Attached hereto as Exhibit "A" and incorporated herein by reference is the Stipulation for Appointment of Nancy B. Rapoport as Fee Examiner ("Stipulation").  I have read the attached Stipulation.  It was modified, and I approved the final version.

7.     I have no conflict that would prevent me from being appointed as set forth in the Stipulation.

8.     My connections, pursuant to Rule 2019, include having reviewed the fees of Fox Rothschild and Omni Agent Solutions before, and having known Christopher Celentino for many years.

9.     I support the request that the Court enter an order approving the Stipulation.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on August 1, 2024.

Nancy B. Rapoport

1

EXHIBIT "A"

D. EDWARD HAYS, #162507
ehays@marshackhays.com
LAILA MASUD, #311731
lmasud@marshackhays.com
BRADFORD N. BARNHARDT, #328705
bbarnhardt@marshackhays.com
MARSHACK HAYS WOOD LLP
870 Roosevelt
Irvine, California 92620
Telephone: (949) 333-7777
Facsimile: (949) 333-7778

Attorneys for Chapter 11 Trustee,
RICHARD A. MARSHACK

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

| In re | Case No: 8:23-bk-10571-SC |
|---|---|
| THE LITIGATION PRACTICE GROUP P.C., | Chapter 11 |
| Debtor. | STIPULATION FOR APPOINTMENT OF NANCY B. RAPOPORT AS FEE EXAMINER |
| | [No Hearing Required - LBR 2016-1] |

TO THE HONORABLE SCOTT C. CLARKSON, UNITED STATES BANKRUPTCY JUDGE,

THE OFFICE OF THE UNITED STATES TRUSTEE, AND ALL INTERESTED PARTIES:

This Stipulation ("Stipulation") is entered into by and among (1) Richard A. Marshack, in his

capacity as Chapter 11 Trustee ("Trustee") of the Bankruptcy Estate ("Estate") of The Litigation

Practice Group P.C. ("Debtor") (through counsel Marshack Hays Wood LLP); (2) Grobstein Teeple

LLP; and (3) Dinsmore & Shohl LLP; (collectively, Trustee, Marshack Hays Wood LLP, and

Dinsmore & Shohl LLP shall be referred to as the "Parties"), with regard to the following:

**Recitals**

A.      On March 20, 2023, Debtor filed a voluntary petition under Chapter 11 of Title 11 of

the United States Code, commencing this bankruptcy case.

1

B.    On May 8, 2023, the United States Trustee appointed Richard A. Marshack as the Chapter 11 Trustee of the Estate. Docket No. 62.

C.    Trustee has retained (1) Marshack Hays Wood as general counsel [Dkt. No. 129]; (2) Bicher & Associates as field agent and forensic analyst [Dkt. No. 155]; (3) Grobstein Teeple LLP as accountants [Dkt. No. 169]; (4) Dinsmore & Shohl LLP as special litigation counsel [Dkt. No. 171]; and (5) Omni Agent Solutions as claims and noticing agent [Dkt. No. 785].

D.    On June 23, 2023, the United States Trustee appointed the Committee [Dkt. No. 134].

E.    The Committee has retained (1) Fox Rothschild LLP as counsel [Dkt. No. 444], and (2) Force Ten Partners LLC, as financial advisor [Dkt. No. 578].

F.    The hearing on approval of interim fees and expenses for retained professionals will be held on September 24, 2024. *See* Dkt. No. 1427.

G.    In complex cases, a number of bankruptcy courts have appointed fee examiners pursuant to 11 U.S.C. § 105. *See, e.g.*, *In re PG&E Corporation*, Case No. 19-30088 (DM), ECF No. 2267 (Bankr. N.D. Cal. May 28, 2019) ("Order Appointing Fee Examiner and Establishing Procedures for Consideration of Requested Fee Compensation and Reimbursement of Expenses"); *In re Zetta Jet USA, Inc.*, Case No. 2:17-bk-21386-SK, ECF No. 1285 (Bankr. C.D. Cal. July 8, 2020) ("Order Appointing a Fee Examiner").

H.    The Parties the parties hereto recommend that Ms. Rapoport shall be appointed as the Fee Examiner in this case.

I.    Nancy Rapoport ("Ms. Rapoport" or "Fee Examiner") has been a fee examiner for several years and has served as a fee examiner in multiple bankruptcy cases (primarily Chapter 11 bankruptcy cases).[1] Ms. Rapoport's declaration of disinterestedness and resume have previously been filed with the Court in connection with her Ethics Compliance Monitor duties in this case ("Declaration"). *See*, Dkt. No. 283. A true and correct of the Declaration is attached as **Exhibit "2."** Specifically, Ms. Rapoport has served as fee examiner in the following matters:

///

---

[1] A copy of Ms. Rapoport's current resume is attached hereto as **Exhibit "1."**

EXHIBIT 3, PAGE 185

- Fee examiner in *In re Zetta Jet USA, Inc*. (2:17-bk-21386-SK) and *In re Zetta Jet PTE, Ltd.*, Case No. 2:17-bk-21387-SK, United States Bankruptcy Court for the Central District of California—Los Angeles Division (2020-present).
- Fee examiner in *In re Toys "R" Us Property Company I, LLC*, United States Bankruptcy Court for the Eastern District of Virginia, Case No. 18-31429 (KLP) (2018-2019).
- Fee examiner in *In re Toys "R" Us, Inc*., United States Bankruptcy Court for the Eastern District of Virginia, Case No. 17-34665 (KLP) (2018-2019).
- Independent member of Fee Committee, *In re Caesars Entertainment Operating Co., Inc.*, U.S. Bankruptcy Court, Northern District of Illinois, Case No. 15-01145 (ABG) (2015-2018).
- Fee examiner in *In re Station Casinos, Inc*., U.S. Bankruptcy Court, District of Nevada, Case Nos. BK-09-52477 through BK-11-51219 (2011).
- Court's fee expert and chair of the Fee Review Committee in *In re Pilgrim's Pride Corp.*, U.S. Bankruptcy Court, Northern District of Texas, Case No. 08-45664 (DML) (2009-2010) (testified at hearing).
- Court's fee expert and chair of the Fee Review Committee in *In re Mirant Corporation*, U.S. Bankruptcy Court, Northern District of Texas, Case No. 03-46590 (2003-2006; 2011-2012) (testified in deposition and at hearing).

J.    As noted above, Ms. Rapoport is currently serving as the Ethics Compliance Monitor in this case. *See* Docket No. 363. As such, Ms. Rapoport is familiar with all significant issues related to this case.

K.    The Parties agree to have Ms. Rapoport be appointed as Fee Examiner in this case due to her familiarity with this case and her experience as a fee examiner in other cases.

L.    Subject to the terms hereof, Ms. Rapoport has agreed to serve as the Fee Examiner in this case and has agreed to accept a flat fee of, and not to exceed $30,000 for her services as Fee Examiner in connection with fee applications filed in 2024. To assist her in her duties, Ms. Rapoport will retain Legal Decoder Inc. as her initial data analyst; fees incurred from Legal Decoder Inc. are included in the flat fee set forth herein.  In terms of connections, Ms. Rapoport has reviewed the fees of several of the named professionals' fees in other matters, including but not limited to Fox Rothschild LLP and Omni Agent Solutions; although those persons are not governed by the within Stipulation as drafted.  It is expected that all fees and expenses requested for the professionals in the fee applications filed in 2024 will not exceed $8 million.  The $30,000 flat fee is premised on the $8 million figure.  Any additional fees to be reviewed may require additional compensation for Ms. Rapoport.

M.    The Parties believe that Ms. Rapoport's services as Fee Examiner will save time and money for the Estate.

3

## **STIPULATION**

For the foregoing reasons, the Parties agree and STIPULATE as follows:

1.      Pursuant to 11 U.S.C. §§ 105(a) and 330, the parties recommend that Ms. Rapoport shall be appointed as the Fee Examiner in this case.

2.      Regarding all the fee applications filed in 2024 by the Parties, Ms. Rapoport will receive a flat fee of $30,000 for her services as Fee Examiner.  This flat fee covers payment of any persons Ms. Rapoport decides, in her sole discretion, to utilize to assist her with the review of the fee applications, including any outside vendors, unless the Court orders otherwise as outlined in paragraph 11 below. Ms. Rapoport in her sole discretion, may reduce the $30,000 flat fee payment if the her review does not include the fees of the Fox Rothschild LLP.

3.      Trustee shall have authorization to disburse $30,000 from the Estate to Ms. Rapoport forthwith, unless the court directs that the professionals will absorb the fee. If the Court so directs, then all professionals whose fees are being evaluated will divide the cost pro-rata.

4.      The Fee Examiner is deemed to be a party in interest in this case for all matters related to the discharge of Fee Examiner's duties and shall have standing to object to the allowance of fees and expenses of any retained professional on any ground.

5.      The Fee Examiner is appointed as an officer of this Court with respect to the performance of her duties and provided the maximum immunity permitted by law from civil actions for all acts taken or omitted in the performance of all her duties and powers. No action may be commenced against the Fee Examiner in connection with the Fee Examiner matters except in this Court and only with prior approval of this Court, which retains exclusive jurisdiction.

6.      The Fee Examiner shall review and assess, as appropriate, all interim fee applications, and final fee applications submitted for approval to this Court. Such review shall include all the fees and reimbursement of expenses for which allowance is sought for compliance with 11 U.S.C. §§ 326, 328, 329, 330, and 331; Fed. R. Bankr. P. 2016, any applicable Local Bankruptcy Rules, and the United States Trustee Guidelines for Reviewing Applications for Compensation.

///

///

4

7.    The professionals listed above shall cooperate with the Fee Examiner in the discharge of her duties and shall promptly respond to any reasonable requests for information, meetings or communications from the Fee Examiner.

8.    The Fee Examiner is authorized to:

    i.    File reports on the public docket of the Court regarding any application for fees filed by a retained professional;

    ii.    Communicate concerns regarding any application to the applicant and request further information, as appropriate;

    iii.    Establish procedures to facilitate the preparation and review of applications by retained professionals and file said procedures with the Court;

    iv.    Appear and be heard before the Court related to the fee applications and advocating positions regarding the application;

    v.    File, negotiate, and litigate objections to the allowance of any fee application;

    vi.    Appear and be heard on any matter before the Court to consider the applications filed by the above professionals (or any other professionals seeking compensation from the Estate) including, without limitation, advocating positions asserted in the Fee Examiner's final reports ("Final Reports"); and

    vii.    Appear in any appeal regarding a fee application filed by the above professionals (or any other professionals seeking compensation from the Estate).

9.    If a retained professional or its client provides privileged or work product information to the Fee Examiner and identifies the nature of such information to the Fee Examiner, the Fee Examiner shall treat such information as privileged and confidential. The disclosure of such information to the Fee Examiner shall not be deemed a waiver by the disclosing party of applicable work product, attorney client, or other privilege. Nothing in this Order, however, prohibits the Fee Examiner from sharing or disclosing any information with her professionals or independent contractors on a confidential basis.

5

10.     After reviewing each fee application, the Fee Examiner shall prepare a preliminary report that shall be sent to the fee applicant, but not filed with the Court, setting forth any objection or issue(s). This preliminary report shall be treated as part of a settlement discussion between the Fee Examiner and the fee applicant and shall not be discoverable. After providing an opportunity for the fee applicant to resolve concerns over the preliminary report, the Fee Examiner may file her Final Reports or fee objections with the Court at least seven days before the date of a hearing on any fee application. The Fee Examiner may, but is not required to, include a summary in the Final Reports of any objections previously raised and resolved before filing the Final Reports.

11.     Should the Fee Examiner deem it necessary to retain additional fee reviewers, not included in the $30,000 cap outlined in paragraph 2 above, she shall file a Statement with the Court setting forth such additional fee reviewers' names, qualifications, and rates. Parties in interest shall have seven (7) days from the date of such filing to object to any additional fee reviewer, after that time the fee reviewer will be deemed approved without the need for further Court order.

12.     For this flat fee engagement, the Fee Examiner will not keep detailed time records for the engagement.  The flat fee incurred herein is not to be confused with, and is indeed different from, her obligations (and fees) incurred pursuant to her duties as the Court-appointed Monitor in the within case.   If Ordered by the Court, the Fee Examiner, as well as the fee reviewers shall be entitled to reasonable, actual, and necessary compensation and reimbursement of expenses under the same standards and procedures which apply to other fee applicants (with the exception of the aforementioned $30,000 flat fee).

13.     With respect to the Fee Examiner's services, if any, to be retained to review future not yet filed fee applications in the Case, the Fee Examiner's compensation will be subject to further agreement between the Fee Examiner and the parties and/or Court approval.

14.     The Fee Examiner may retain attorneys and other professionals or consultants, if she deems it necessary to discharge her duties. The Fee Examiner's retention of professionals shall be subject to Court approval under standards equivalent to 11 U.S.C. § 327.

15.     By no later than August 7, 2024, unless excused by the Fee Examiner, (1) all previously filed interim and final fee applications and related fee details shall be provided to the Fee

6

1   Examiner by each professional seeking fees and reimbursement of expenses; and (2) all Parties shall

2   submit all materials supporting their fee applications to the Fee Examiner. All previously filed fee

3   applications, all future fee applications, and all other documents, notices, or pleadings required to be

4   sent to or served in connection with such fee applications shall be served upon the Fee Examiner by

5   email only at nancy.rapoport@unlv.edu.  The data comprising all fee applications, whether prior,

6   current, or future fee applications, shall be transmitted to the Fee Examiner in LEDES format, if

7   possible, or in Excel if LEDES format is not available.

8          16.     No paper copies shall be served on the Fee Examiner or any of her attorneys,

9   professionals, assistants, or consultants.

10         17.     Nothing in this Order shall alter or impair the right of the U.S. Trustee or any party in

11  interest to object to Applications subject to this Order. Nothing in this Order shall alter or modify

12  prior orders governing the retention of professionals.

13         18.     The Fee Examiner is authorized to take any and all actions necessary to implement

14  and effectuate the terms of this Order. The terms and conditions of this Order shall be immediately

15  effective and enforceable upon its entry.

16         19.     Professional persons or entities submitting fee applications whom are not signatories

17  hereto are not covered by this Stipulation, and the Fee Examiner will not perform services in review

18  of said applications absent further order of the Court.

19         20.     This Court shall retain jurisdiction over all matters arising from or related to the

20  interpretation and implementation of this Order. Notwithstanding any provisions of this Order to the

21  contrary, this Court shall retain the ultimate authority to determine whether fees and expenses

22  requested are necessary and reasonable under 11 U.S.C. § 330.

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

EXHIBIT 3, PAGE 190

21.     This Stipulation may be executed in one or more counterparts, and facsimile or electronic signatures may be used in filing this document with the Court.

DATED: August 2, 2024                    MARSHACK HAYS WOOD LLP

                                         By: _____
                                             D. EDWARD HAYS
                                             LAILA MASUD
                                             BRADFORD N. BARNHARDT
                                             Attorneys for Chapter 11 Trustee,
                                             RICHARD A. MARSHACK

                                         GROBSTEIN TEEPLE LLP
DATED: August 2, 2024

                                         By: _____
                                             JOSHUA R. TEEPLE, CPA

DATED: August 2, 2024                    DINSMORE & SHOHL LLP

                                         By: _____
                                             CHRISTOPHER CELENTINO

                                         _____
DATED:  August 2, 2024                       RICHARD A. MARSHACK

DATED: August 2, 2024                    _____
                                             NANCY B. RAPOPORT

8

21.     This Stipulation may be executed in one or more counterparts, and facsimile or electronic signatures may be used in filing this document with the Court.

DATED: August 2, 2024                    MARSHACK HAYS WOOD LLP


                                         By: _____
                                              D. EDWARD HAYS
                                              LAILA MASUD
                                              BRADFORD N. BARNHARDT
                                              Attorneys for Chapter 11 Trustee,
                                              RICHARD A. MARSHACK

DATED: August 2, 2024                    GROBSTEIN TEEPLE LLP


                                         By: _____
                                              JOSHUA R. TEEPLE, CPA

DATED: August 2, 2024                    DINSMORE & SHOHL LLP


                                         By: _____
                                              CHRISTOPHER CELENTINO


                                         _____
DATED:  August 2, 2024                        RICHARD A. MARSHACK


                                         _____
DATED: August 2, 2024                         NANCY B. RAPOPORT

8

Case 8:23-bk-10571-SC    Doc 1800    Filed 10/08/24    Entered 10/08/24 18:19:16    Desc
Main Document      Page 196 of 332

Case 8:23-bk-10571-SC    Doc 1486-1    Filed 08/05/24    Entered 08/05/24 11:36:41
Desc  Declaration of Nancy B. Rapoport In Support    Page 13 of 75

21.    This Stipulation may be executed in one or more counterparts, and facsimile or electronic signatures may be used in filing this document with the Court.

DATED: August 2, 2024                    MARSHACK HAYS WOOD LLP

                                         By:_____
                                             D. EDWARD HAYS
                                             LAILA MASUD
                                             BRADFORD N. BARNHARDT
                                             Attorneys for Chapter 11 Trustee,
                                             RICHARD A. MARSHACK

DATED: August 2, 2024                    GROBSTEIN TEEPLE LLP

                                         By:_____
                                             JOSHUA R. TEEPLE, CPA

DATED: August 2, 2024                    DINSMORE & SHOHL LLP

                                         By:_____
                                             CHRISTOPHER CELENTINO

                                         _____
                                             RICHARD A. MARSHACK

DATED: August 2, 2024

DATED: August 2, 2024

                                         _____
                                             NANCY B. RAPOPORT

8

EXHIBIT "1"

# NANCY B. RAPOPORT, J.D.

William S. Boyd School of Law
University of Nevada, Las Vegas
4505 S. Maryland Parkway
Mail Stop 451003
Las Vegas, NV 89154-1003
nancy.rapoport@unlv.edu
Cell:  713-202-1881

SSRN author page:  http://ssrn.com/author=260022
Google Scholar page:  http://scholar.google.com/citations?user=s7ElcsEAAAAJ&hl=en
IMDB.com page:  http://imdb.com/name/nm1904564/
Blog:  https://nancyrapoports.blog/

## FEE EXAMINATION ACTIVITY

- Fee examiner in *In re* Zetta Jet USA, Inc. (2:17-bk-21386-SK) and *In re* Zetta Jet PTE, Ltd., Case No. 2:17-bk-21387-SK, United States Bankruptcy Court for the Central District of California—Los Angeles Division (2020-present).

- Fee examiner in *In re* Toys "R" Us Property Company I, LLC, United States Bankruptcy Court for the Eastern District of Virginia, Case No. 18-31429 (KLP) (2018-2019).

- Fee examiner in *In re* Toys "R" Us, Inc., United States Bankruptcy Court for the Eastern District of Virginia, Case No. 17-34665 (KLP) (2018-2019).

- Independent member of Fee Committee, *In re* Caesars Entertainment Operating Co., Inc., U.S. Bankruptcy Court, Northern District of Illinois, Case No. 15-01145 (ABG) (2015-2018).

- Fee examiner in *In re* Station Casinos, Inc., U.S. Bankruptcy Court, District of Nevada, Case Nos. BK-09-52477 through BK-11-51219 (2011).

- Court's fee expert and chair of the Fee Review Committee in *In re* Pilgrim's Pride Corp., U.S. Bankruptcy Court, Northern District of Texas, Case No. 08-45664 (DML) (2009-2010) (testified at hearing).

- Court's fee expert and chair of the Fee Review Committee in *In re* Mirant Corporation, U.S. Bankruptcy Court, Northern District of Texas, Case No. 03-46590 (2003-2006; 2011-2012) (testified in deposition and at hearing).

EXHIBIT"2"

1 | Christopher B. Ghio (State Bar No. 259094)
Christopher Celentino (State Bar No. 131688)
2 | Yosina M. Lissebeck (State Bar No. 201654)
**DINSMORE & SHOHL LLP**
3 | 655 West Broadway, Suite 800
San Diego, CA 92101
4 | Telephone: 619.400.0500
Facsimile:  619.400.0501
5 | christopher.ghio@dinsmore.com
christopher.celentino@dinsmore.com
6 | yosina.lissebeck@dinsmore.com

7 | Special Counsel to Richard A. Marshack

8

9

10 | **UNITED STATES BANKRUPTCY COURT**

11 | **CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION**

12

13 | In re:  | Case No.: 8:23-bk-10571-SC

14 | THE LITIGATION PRACTICE GROUP P.C.,  | Chapter 11

15 |  Debtor.  | **DECLARATION OF NANCY RAPOPORT**

16 |  | **IN SUPPORT OF MOTION OF TRUSTEE RICHARD A. MARSHACK FOR ENTRY OF AN ORDER (A) APPROVING SALE**

17 |  | **OF ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND**

18 |  | **INTERESTS PURSUANT TO 11 U.S.C. § 363(b) AND (B) APPROVING**

19 |  | **ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS**

20 |  | **AND UNEXPIRED LEASES AND OTHER AGREEMENTS**

21 |  | 

22 |  | Date:    July 21, 2023
Time:   10:00 a.m.
23 |  | Judge: Hon. Scott C. Clarkson
Place:  Courtroom 5C
24 |  |            411 W. Fourth Street
              Santa Ana, CA  92701

25

26

27

28

EXHIBIT 3, PAGE 197

I, Nancy Rapoport, declare as follows:

1.      I am an attorney and a member of the faculty of the William S. Boyd School of Law, University of Nevada, Las Vegas.  A true and correct copy of my CV is attached hereto and incorporated herein by reference.  I have been contacted by Christopher Celentino, with whom I was involved in cases when I was a practicing attorney with Morrison and Foerster LLP in the earlier part of my career, to consider the possibility of appointment by the Court as the Monitor for compliance pursuant to a proposed Asset Purchase Agreement (the "APA"), to be considered by the Court at hearing noted herein.  I am in receipt of, and have reviewed, the proposed APA; for the purposes of this Declaration, there are comments and clarifications to my duties that I would request become part of the Appointment Order.  These comments and clarifications differ from the text of the current APA.  Mr. Celentino will propose those changes to the Court, the OUST, the Trustee, and the Committee in advance of the sale hearing on July 21, 2023.  Before my Dean can consider and approve my outside employment request, I will need to explain my duties to her; thus, it would be helpful to ensure that my duties are clearly set forth in the Appointment Order.  Based upon my discussions with Mr. Celentino, as set forth herein, I have expressed an interest to be considered for the role of Monitor, subject to the following disclosures and further subject to the proviso that the final terms of my proposed appointment, as set forth in the anticipated Appointment Order, are acceptable to my Dean and to me.

2.      I have personal knowledge of the matters set forth herein. If called as a witness in this matter, I could and would testify competently thereto.

3.      I serve on the ABI's Veterans and Servicemembers Task Force with Judge Clarkson. I know lawyers at many of the firms involved in this case, including lawyers at Pachulski Stang Ziehl & Jones and Bryan Cave Leighton Paisner (especially Sharon Weiss), Fox Rothschild, and Locke Lord.  I also have connections with the Office of the United States Trustee (the "USTO") on a nationwide basis, having done some expert work for the USTO in the past.

4.      I understand that the proposed terms of my employment as Monitor, as currently contemplated, are based upon Judge Drain's appointment of a compliance Monitor as set forth in the Purdue Pharma L.P., et al., v. Commonwealth of Massachusetts (In re Purdue Pharma, L.P., Bankr.

1

1  S.D.N.Y. Case No. 19-23649 (RDD) Adv. Pro. No. 19-08289, and that the appointment in this case

2  would be pursuant to the Court's power under 11 U.S.C. section 105(a) and the explicit written consent

3  of the Buyer pursuant to the APA to be executed in conjunction with the sale.

4       5.    I further understand that the APA contemplates that the Estate and the Buyer will each

5  advance $100,000 at the Closing of the APA as initial funding for my employment as a Monitor; and

6  that subsequent fees over that amount to be pursued by me and considered by the Court will be paid

7  from funds of the Estate, as approved.

8       6.    My current hourly rate is $975.00 per hour, adjusted each January.  Moreover,

9  pursuant to my employment arrangement with UNLV, the Estate will have to remit to "UNLV

10  Foundation-Boyd Law" $250.00 per month for any inadvertent use of state resources.  I have a

11  minimum monthly fee of $5,000.00.

12       7.    Because of my residence in Las Vegas, because of my teaching schedule, and to

13  preserve resources, I prefer for any court appearances to be by Zoom, so that I don't have to incur

14  unnecessary travel expenses.

15       8.    I am interested in exploring further with the Court and the parties the specific duties

16  that I am to perform.  I am concerned that my appointment as a Monitor pursuant to 11 U.S.C. § 105

17  may be subject to appeal and will want to address that issue with the Court and the Parties to ensure

18  that the appointment can survive any appeal, and is consented to by the confirmed Buyer, the Trustee,

19  the OUST, and the Creditors' Committee, or is otherwise a binding order of the Court concerning

20  said parties, prior to Closing of the proposed sale.

21       9.    The following represents the currently contemplated terms of employment as a

22  Monitor; however, prior to undertaking the role, I would expect to finalize the specifics of the role to

23  the Court's, my Dean's, and my satisfaction before agreeing to serve in this role.  It is my

24  understanding that the overarching role of a Monitor in this case is strictly to monitor the Buyer's

25  compliance with generally understood ethical standards and certain consumer protection obligations

26  and not to act as an attorney or to provide any legal advice whatsoever to the Buyer or any of the

27  Buyer's to-be-assumed clients.  Given the reach of the operations, my role shall not include specific

28  compliance with any given state's ethics rules. It shall be the role of the Buyer, and not the Monitor,

2

to seek legal counsel in terms of compliance with any specific state's legal ethics rules.  It is not my desire or expectation to be involved in any post-plan confirmation role in the case.

**Anticipated Duties:**

        Appointment and Responsibilities of Monitor.

        Pursuant to the APA, the Buyer shall consent to the appointment of, and the Court, in light of such consent, shall appoint a Monitor with detailed, specified duties; among those will be:

        1.     The Monitor shall perform her duties according to the terms of the APA and the Order of the Court Approving the APA and the Order Appointing Monitor, pursuant to which the Monitor shall be vested with all rights and powers reasonably necessary to carry out such powers, duties, authority, and responsibilities enumerated therein.

        2.     The Monitor shall work with all diligence to confirm and oversee compliance with the ethical issues raised as part of the representations and warranties of the Buyer -- and the underlying ethical compliance and consumer protections of the operations of its legal services agreements with its clients -- as set forth in the APA. I understand the specific duties and mechanisms for support of my role as Monitor will be set forth in a separate Order of Appointment that shall be entered by the Court.  I understand that I shall provide periodic (to be determined) reports to the Trustee, the Committee, and the Bankruptcy Court as outlined below.

        3.     The Monitor shall:

        a.     subject to any legally recognized privilege and as necessary or to perform her duties hereunder, have full and complete access to the Buyer's personnel, books, records, and facilities, and to any other information, as the Monitor may request. The Buyer, in conjunction with the Trustee and the Committee, shall develop such information as the Monitor may request and shall fully, completely, and promptly cooperate with the Monitor. The Monitor may raise with the Trustee, Committee and the Court any issues relating to any failure of or delay in such cooperation for an expedited resolution by the Court;

        b.     serve, without bond or other security, at the cost and expense of the Estate and the Buyer in accordance with the APA, with the Monitor's fees subject to final approval by the Court; the Monitor shall submit fee applications every 120 days, and it is contemplated that

3

Case 8:23-bk-10571-SC    Doc 1800    Filed 10/08/24    Entered 10/08/24 18:19:16    Desc
Main Document    Page 204 of 332

Case 8:23-bk-10571-SC    Doc 1486    Filed 07/18/24    Entered 07/18/24 21:13:04    Desc
Declaration of Amy Bentropp in Support    Page 21 of 75

1    the Court will authorize the payment of 80% of fees and 100% expenses each month, with a fee

2    application to be filed every 120 days. It is further contemplated that the Monitor shall be authorized

3    to use the services of Special Counsel to the Trustee for the purpose of preparing and submitting such

4    fee applications and in filing any reports or other pleadings with the Court;

5         c.    have the authority to employ, upon Court approval, at the cost and

6    expense of the debtor's estate, such consultants, accountants, attorneys, and other representatives and

7    assistants as are necessary to carry out the Monitor's and responsibilities. The Monitor shall be

8    authorized to use the services of the Trustee's Special Counsel and the Trustee's accountants to

9    conduct forensic analysis of data for the Monitor, at the expense of the Estate.  The Monitor shall

10    serve       for       a       period       of       one       year       from

11    date of appointment unless extended by the Court, at which time the Monitor shall submit a final

12    report, and be discharged;

13         d.    have no obligation, responsibility or liability for the operations of the

14    Buyer; and the Estate shall indemnify, defend and hold harmless the Monitor from any and all liability

15    and expenses incurred in accordance with the Monitor's duties to be performed hereunder;

16         e.    file a first report on the 120th day after the Closing; and thereafter not

17    less than every 90 days regarding compliance by the Buyer with the terms of the APA and the Order

18    of Appointment of the Monitor; provided that elements of any such report may be filed under seal or

19    subject to such other confidentiality Restrictions contained in the Appointment Order. The Court may,

20    in response to such reports, provide such further direction to the Monitor as it deems appropriate, said

21    determination to be made after notice and a hearing in conjunction with the Court's calendar and as

22    directed by the Court.

23         f.    maintain as confidential the data of Buyer pursuant to guidelines as

24    may be established in the appointment order; and each of the Monitor's consultants, accountants,

25    attorneys and other representatives and assistants shall also maintain such confidentiality as deemed

26    necessary by the parties; provided, however, that nothing shall restrict the Monitor from providing

27    any information to the Court and the parties consistent with the terms of the Protective Order; and

28

4

Case 8:23-bk-10571-SC    Doc 1800    Filed 10/08/24    Entered 10/08/24 18:19:16    Desc
Main Document    Page 205 of 332

Case 8:23-bk-10571-SC    Doc 2848    Filed 07/10/24    Entered 07/10/24 21:13:04    Desc
Declaration of Nancy Rapoport in Support    Page 22 of 75

      g.    promptly seek an order requiring compliance or such other remedies as may be appropriate under the circumstances should the Buyer not comply with its obligations under the APA, and specifically section 12 thereof (Buyer's representations and warranties, except wth respect to section 12(o), as section 12(o) shall be solely the responsibility of the Trustee):

    4.    Disputes Regarding Compliance

      a.    If the Monitor should develop a reasonable basis to believe the Buyer is not in compliance with the terms of the APA or the Buyer's duties as set forth inthe Appointment Order, the Monitor shall notify the Buyer, via the Buyer's General Counsel, in writing of the specific objection, including identifying the provisions of the APA, the Appointment Order, or any ethics rule that the practice appears to violate, and give the Buyer thirty (30) days to respond to the notification and cure the conduct at issue, if necessary.

      b.    To the extent that the Buyer fails to cure the alleged conduct within the thirty (30) day period, the Monitor shall have ten (10) days to determine the appropriate action and response, and shall notify the Trustee, the Committee, and the Court of the alleged violative practice and may, but shall not be required to, recommend an appropriate action, response, or remedy to be implemented by the Court; based upon the Monitor's notification, and recommendation, if any, either the Trustee or the Committee may seek an appropriate remedy from the Bankruptcy Court via Noticed Motion, or in the event of an emergency, in accordance with the Emergency procedures set forth in the Local Rules of the United States Bankruptcy Court for the Central District of California, and all other applicable rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this declaration is executed on this 17th day of July, 2023 at Las Vegas, Nevada.

Nancy Rapoport

5

# NANCY B. RAPOPORT, J.D.

William S. Boyd School of Law
University of Nevada, Las Vegas
4505 S. Maryland Parkway
Mail Stop 451003
Las Vegas, NV 89154-1003
nancy.rapoport@unlv.edu
Cell:  713-202-1881

SSRN author page:  http://ssrn.com/author=260022
Google Scholar page:  http://scholar.google.com/citations?user=s7ElcsEAAAAJ&hl=en
IMDB.com page:  http://imdb.com/name/nm1904564/
Blog:  https://nancyrapoports.blog/

---

## EDUCATION

**Stanford Law School, J.D. (1985)**

*Selected activities and honors:*

- Note Editor, STANFORD LAW REVIEW (1984-85).
- Thesis:  *Computer Program for Secured Transactions* (1985).
- Technical assistant in various law school and all-university plays (1983-85).
- First Place, Stanford Women's Intramural Powerlifting Competition (1985).

**Rice University, B.A., *summa cum laude,* Legal Studies and Honors Psychology (1982)**

*Selected activities, honors, and scholarships:*

- Senior Thesis:  *The Effects of Time of Day on Cognitive Performance,* Psychology Department (1982).
- Phi Beta Kappa (1981).
- Houston Psychological Association Award for Excellence in Psychology (1982).
- Jones College Scholar (1981-82) and Academic Coordinator, Jones College (1980-82).
- President, Rice Hillel (1980-82).
- Student Advisor, Lovett College (1979-80).
- Member, Student Admissions Committee (1979-82).
- Founder, Rapoport Prize in Legal Studies (1982).
- Scholarships:  Max Roy Scholarship (1979-80, 1981-82); Jones College Scholarship (1981-82); Board of Governors Scholarship (1980-81).

**EMPLOYMENT**

**University of Nevada, Las Vegas**

- **Special Counsel to the President (2016-18).**
- **Acting Senior Vice President for Finance and Business (summer of 2017).**
- **Acting Executive Vice President & Provost (2015-16).**
- **Senior Advisor to the UNLV President (2014-15) (member of UNLV's Cabinet).**
- **Provost's Leadership Development Academy Coordinator (2013-14); Co-Coordinator (2014-15).**

- **William S. Boyd School of Law, University of Nevada, Las Vegas**
  - **UNLV Distinguished Professor (awarded in 2022).**
  - **Garman Turner Gordon Professor of Law (2007-present) (formerly the Gordon Silver Professor of Law).**
  - **Interim Dean (2012-13).**

  *Courses:* Basic Bankruptcy Law; Contracts; Professional Responsibility; Seminar on Corporate Scandals; Colloquium on Lawyers in Pop Culture; Business Law & Ethics; Bankruptcy Ethics.

- **Affiliate Professor of Business Law and Ethics, Lee Business School (renewable; 2014-present)**
  - **Co-Chair, Task Force on Scholarship, Lee Business School Strategic Planning Team (2014).**

*Responsibilities and Accomplishments as Special Counsel to the President:*

- The Executive Director of the Office of Compliance, the Ombuds Panel, the Special Projects Director, and the Interim Executive Director of the Office of Community Engagement reported to me.
- Coordinated, with Kyle Kaalberg (Special Projects Director), the continued implementation of UNLV's strategic plan (Top Tier).  In late 2018, UNLV was added to the list of Carnegie R1 institutions.
- Served as a member of the President's Cabinet.
- Coordinated and monitored compliance activities across UNLV.
- Interacted frequently with members of the Board of Regents and the Nevada System of Higher Education.

*Responsibilities and Accomplishments as Acting Executive Vice President and Provost:*

- The deans of the School of Allied Health Sciences, the Lee Business School, the School of Community Health Sciences (now the School of Public Health), the School of Dental Medicine, the College of Education, the Howard R. Hughes College of Engineering, the College of Fine Arts, the Graduate College, the Honors College, the William F. Harrah

College of Hotel Administration, the William S. Boyd School of Law, the College of Liberal Arts, the School of Medicine (co-reporting to the President), the School of Nursing, the College of Sciences, and the Greenspun College of Urban Affairs all reported to me, as did the Senior Vice Provost, the Vice Provost for Information Technology, the Assistant Vice President of Academic Resources, the Associate Vice Provost for the Office of Decision Support, and the Special Assistant to the Executive Vice President and Provost.

- Chaired the board of directors of UNLV Singapore Ltd.
- Worked with President Jessup, two co-chairs of the Top Tier Plan, and the chairs and co-chairs of five committees, to implement year one of the Top Tier strategic plan.
- Repaired relationships with the Faculty Senate.
- Hired three new deans (Liberal Arts, Fine Arts, and Allied Health) and one acting dean (Sciences).
- Reinstituted the three-year dean review process and provided more autonomy to the deans of schools and colleges.

*Responsibilities and Accomplishments as Acting Senior Vice President for Finance & Business:*

- The departments of Planning and Construction, Budgets, Campus Audit, Human Resources, Facilities Management, Administration (Delivery Service, Telecommunication Services, Parking Services, and Real Estate), Risk Management and Safety, Purchasing, and the Controller reported to me.
- Served as a member of the negotiating team for the Las Vegas Stadium (Las Vegas Raiders).
- Repaired a challenging set of internal management issues.

*Responsibilities and Accomplishments as Senior Advisor to the UNLV President:*

- Developed the strategic plan (Top Tier) by working in concert with former Presidents Donald Snyder and Len Jessup, Jim Thomson (the Special Advisor to the President for Regional Development and also the former CEO of the RAND Corp.), our consultants (Academic Leadership Associates), Kyle Kaalberg (then the Special Assistant to the President's Chief of Staff), over 200 stakeholders inside and outside UNLV.
- Continued to serve as the point person for the execution of UNLV's strategic plan during all other central administration roles.

*Responsibilities and Accomplishments as Interim Dean of Boyd School of Law:*

- The Associate Dean for Academic Affairs, the Associate Dean for Student Affairs, the Associate Dean for Administration and External Affairs, the Associate Dean for Faculty Development and Research, the Director of the Wiener-Rogers Law Library, the Director of Information Technology and the Budget Director all reported to me.
- Managed a budget of roughly $20 million.
- Facilitated the conversion process for legal writing professors to move from long-term contracts to tenure-track positions and facilitated the hiring of two new tenure-track professors.

- Significant fundraising success; systematized certain internal functions; and facilitated a review of our curriculum.
- *Honors:* Named "Faculty Member of the Year" (and faculty commencement speaker) by Boyd law students in 2021; named "Dean of the Year" by Boyd law students in 2013.

**University of Houston Law Center**
**Professor of Law (2006-07).**
**Dean (2000-06).**

*Responsibilities and Accomplishments as Dean:*

- The Associate Dean for Academic Affairs, the Associate Dean for Student Affairs, the Director of the O'Quinn Law Library, the Associate Dean for Information Technology, the Associate Dean for Finance and Administration and Chief Operating Officer of the Law Foundation, the Associate Dean for External Affairs and Executive Director of the Law Foundation, and the Director of CLE all reported to me.
- Presided over a record increase in the amount and size of gifts to the Law Center, even during a downturn in the economy; raised seven new Law Center professorships, in partnership with a special campaign of the University of Houston, in under two months.
- Facilitated the establishment of several new centers, programs, and institutes, including the Criminal Justice Institute, the Institute for Energy, Law & Enterprise (now the Program in Energy, Environment & Natural Resources), and the Center for Consumer Law.
- Reinvigorated the Blakely Advocacy Institute (BAI) and acquired the A.A. White Center for Dispute Resolution as part of the BAI.
- Encouraged the first major revamping of the Law Center's curriculum in twenty years.
- Hired fourteen new faculty members (three of which hold endowed chairs at the Law Center).
- Facilitated the Law Center's recovery from the devastation caused by Tropical Storm Allison on June 9, 2001, which poured over 12 feet of water into the Law Center's sub-basement and destroyed much of its library collection (over 175,000 volumes and 1,000,000 microfiche lost) and all of the Law Center's facilities.  As part of the lessons learned during our recovery, hosted Loyola University New Orleans College of Law after Hurricane Katrina, until it could recover and return to New Orleans.

**University of Nebraska College of Law**
**Dean and Professor of Law (1998-00).**

*Responsibilities and Accomplishments as Dean:*

- The Associate Dean, the Assistant Dean for Administration and Student Services, the Assistant Dean for Career Services and Alumni Relations, the Director of the Law Library, the Director of Development, the Office Manager, and the Acting Head of the Nebraska Institute for Technology in the Practice of Law all reported to me.

- Instituted the creation of a new Access database to enable all Law College administrative units to organize and share information; improved our systems for the scheduling of Law College events, the timely review of employees, and the cultivation and stewardship of donors; initiated the design of the new "image" of the Law College; and revamped the furnishings of the student lounge (at zero cost to the Law College).
- Raised significant funds for such needs as scholarships and professorships.
- Encouraged the establishment of new student organizations (including an organization for law students who preferred non-traditional career paths and a GLBT student organization).
- Encouraged the development of a link between an undergraduate "learning community" and the Law College.

**Moritz College of Law, The Ohio State University**
**Professor (1998).**
**Associate Dean for Student Affairs (1996-98).**
**Associate Professor (with tenure) (1995-98).**
**Assistant Professor (1991-95).**

*Responsibilities and Accomplishments as Associate Dean for Student Affairs:*

- Assistant Dean of Admissions and Financial Aid, the Financial Aid Counselor and Staff Assistant, and the Placement Director reported to me.
- Counseled potential applicants regarding admission to College of Law and counseled existing students on academic and non-academic issues.
- With our Development Director, facilitated the establishment and maintenance of scholarships and other relationships with donors.

**Morrison & Foerster LLP**
**Associate, Bankruptcy and Workouts Group, Business Department (1986-91).**

- Bankruptcy cases included *In re Toy Liquidating Co. (Worlds of Wonder), Plexus, Greyhound, Nucorp,* and *California Land & Cattle Co.*
- Significant experience in bankruptcies involving industries such as toy manufacturers, computers, livestock, and television stations.

**The Hon. Joseph T. Sneed, United States Court of Appeals for the Ninth Circuit**
**Judicial Clerk (1985-86).**

**PUBLICATIONS, GRANTS, SPECIAL TRAINING, AND PRESENTATIONS**

**Works in progress**

- Nancy B. Rapoport, *Training Law Students to Model Civility When Social Media Makes Civility Harder to Maintain,* ___ U. PITT. L. REV. ___ (2023) (invited speaker at *The Jurisprudence and Legacy of the Honorable Joseph F. Weis Jr. Symposium).*

- Nancy B. Rapoport & Joseph R. Tiano, Jr., *Reimagining "Reasonableness" Under Section 330(a) in a World of Technology, Data, and Artificial Intelligence,* ___ AM. BANKR. L.J. ___ (forthcoming 2023) (peer-reviewed).
- Nancy B. Rapoport, *Review of 2022 Books on Legal Education,* ___ GREEN BAG ___ (2023) (solicited manuscript).
- Nancy B. Rapoport, *Training Law Students to Model Civility When Social Media Makes Civility Harder to Maintain,* University of Pittsburgh School of Law, Symposium on the Jurisprudence and Legacy of the Honorable Joseph F. Weis Jr., ___ U. PITT. L. REV. ___ (2023) (invited speaker).
- Aspen Practice Perfect Series, *Professional Responsibility* (forthcoming 2024) (with Andrew M. Perlman and Melissa B. Shultz).

### Books

- BERNARD A. BURK, VERONICA J. FINKELSTEIN & NANCY B. RAPOPORT, ETHICAL LAWYERING: A GUIDE FOR THE WELL-INTENTIONED (Aspen Publishing 2021) (second edition forthcoming 2024).
- NANCY B. RAPOPORT & JEFFREY D. VAN NIEL, CORPORATE SCANDALS AND THEIR IMPLICATIONS (3d ed.) (West Academic 2018).
- BLOOMBERG BNA BANKRUPTCY LAW TREATISE, A TREATISE WITH REAL-TIME UPDATES (contributing editor) (Bloomberg BNA 2014).
- NANCY B. RAPOPORT & JEFFREY D. VAN NIEL, LAW FIRM JOB SURVIVAL MANUAL: FROM FIRST INTERVIEW TO PARTNERSHIP (Wolters Kluwer 2014).
- NANCY B. RAPOPORT & JEFFREY D. VAN NIEL, LAW SCHOOL SURVIVAL MANUAL: FROM LSAT TO BAR EXAM (Aspen Publishers / Wolters Kluwer 2010).
- NANCY B. RAPOPORT, JEFFREY D. VAN NIEL & BALA G. DHARAN, ENRON AND OTHER CORPORATE FIASCOS: THE CORPORATE SCANDAL READER (Foundation Press 2d ed. 2009).
- STEVEN L. EMANUEL, STRATEGIES & TACTICS FOR THE MBE (Aspen Publishers / Wolters Kluwer 2009) (one of several revision authors).
- NANCY B. RAPOPORT & BALA G. DHARAN, ENRON: CORPORATE FIASCOS AND THEIR IMPLICATIONS (Foundation Press 2004).
- DAVID B. GOODWIN & NANCY B. RAPOPORT, AN ORAL HISTORY OF THE HONORABLE JOSEPH T. SNEED, Ninth Circuit Historical Society (1994) (solicited oral history).

### Reports

- Reporter, American College of Bankruptcy Diversity, Equity, and Inclusion Committee (2022-present).
- Reporter, American College of Bankruptcy Select Commission on Diversity, Equity, and Inclusion (2021-2022).

- Lois R. Lupica & Nancy B. Rapoport, Co-Reporters, Final Report of the ABI National Ethics Task Force (2013), available at https://abi-org-corp.s3.amazonaws.com/materials/Final_Report_ABI_Ethics_Task_Force.pdf.

**Book chapters**

- Nancy B. Rapoport, *Compromising One's Principles: The Lesson of Mahlon Perkins and the Berkey-Kodak Case,* in Nancy B. Rapoport & Jeffrey D. Van Niel, Corporate Scandals and Their Implications 545 (3d ed.) (West Academic 2018).
- Nancy B. Rapoport, *Social Media Ethics Missteps for Lawyers (and Others),* Proceedings of the Sixtieth Annual Rocky Mountain Mineral Law Institute 3-1 (July 2014), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2557095.
- Nancy B. Rapoport, *Analysis and the Arts,* in Zenon Bankowski, Maksymilian Del Mar & Paul Maharg, The Arts and the Legal Academy: Beyond Text in Legal Education 101 (Ashgate Press 2012) (solicited essay), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2464202.
- Collier Compensation, Employment and Appointment of Trustees and Professionals in Bankruptcy Cases (Lexis-Nexis 2009) (one of several revision authors).
- Nancy B. Rapoport, *Swimming with Shark,* in Lawyers In Your Living Room! Law On Television 163 (Michael Asimow, ed., 2009) (solicited manuscript), chapter available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1157053.
- Nancy B. Rapoport, *Reflections of a Former Dean, in* Law School Leadership Strategies: Top Deans on Benchmarking Success, Incorporating Feedback from Faculty and Students, and Building the Endowment 199 (Aspatore Books 2006) (solicited), abstract available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=979321.
- Nancy B. Rapoport, *Bankruptcy Ethics Issues for Solos and Small Firms, in* Attorney Liability in Bankruptcy (Corinne Cooper, ed. & Catherine E. Vance, contributing ed., ABA 2006) (solicited manuscript).
- Nancy B. Rapoport, *Lord of the Flies: The Development of Rules Within an Adolescent Culture, in* Screening Justice—The Cinema of Law: Fifty Significant Films of Law, Order and Social Justice 253 (Rennard Strickland, Teree Foster & Taunya Banks, eds. 2006) (solicited manuscript), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=949168.
- Nancy B. Rapoport & Jeffrey D. Van Niel, *Dr. Jekyll & Mr. Skilling: How Enron's Public Image Morphed from the Most Innovative Company in the* Fortune 500 *to the Most Notorious Company Ever, in* Enron: Corporate Fiascos and Their Implications 77 (Nancy B. Rapoport & Bala G. Dharan, eds.) (Foundation Press 2004), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=505662.

**Articles, book reviews, and essays**

- John G. Cameron & Nancy B. Rapoport, *Ethics For Real Estate Lawyers and Practice Today,* 39 The Practical Real Estate Lawyer 30 (ALI CLE, May 2023), available at https://papers.ssrn.com/sol3/papers.cfm?abstract_id=4417451.

- Nancy Rapoport, *Stanford Law Protest Highlights Rise of Incivility,* LAW360 (Mar. 28, 2023), available at https://www.law360.com/personal-injury-medical-malpractice/articles/1590537/stanford-law-protest-highlights-rise-of-incivility-in-discourse.

- Nancy B. Rapoport & Joseph R. Tiano, Jr., *Billing Judgment,* 96 AM. BANKR. L.J. 311 (2022) (peer-reviewed publication), available at https://papers.ssrn.com/sol3/papers.cfm?abstract_id=4172409.

- Joseph R. Tiano, Nancy B. Rapoport & William J. Siroky, *The Specter of Malpractice: When Law Firm General Counsel and Risk Management Professionals Are Confronted With Potential Malpractice Claims and Ethics Violations,* 81 MARYLAND L. REV. (ONLINE) 1 (2021), available at https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3932534.

- Nancy B. Rapoport, *Being a First—Over and Over Again,* DENVER L. REV. FORUM (7/31/2021) available at https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3897378.

- Nancy B. Rapoport, *Telling the Story on Your Timesheets: A Fee Examiner's Tips for Creditors' Lawyers and Bankruptcy Estate Professionals,* 15 BROOK. J. OF CORP. FIN. & COM. L. 359 (2021), available at https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3853962.

- Nancy B. Rapoport & Joe Tiano, *Biglaw Surprises Some With Record Profits in 2020—Now What?,* Above the Law (April 30, 2021), available at https://abovethelaw.com/2021/04/biglaw-surprises-some-with-record-profits-in-2020-now-what/.

- Nancy B. Rapoport & Joseph R. Tiano, Jr., *The Legal Industry's Second Chance To Get It Right,* 57 WILLAMETTE L. REV. 1 (2021), available at https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3773197.

- Nancy B. Rapoport & Joseph R. Tiano, Jr., *Using Data Analytics to Predict an Individual Lawyer's Legal Malpractice Risk Profile (Becoming an LPL "Precog"),* 6 U. PA. J. L. & PUB. AFF. 267 (2020), available at https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3760626.

- Nancy B. Rapoport, *Help Your Provost Help You During Promotion and Tenure Decisions,* 24 THE GREEN BAG 83 (2020) (peer-reviewed), available at https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3748896.

- Nancy B. Rapoport, *Want to Take Control of Professional Fees in Large Chapter 11 Bankruptcy Cases? Talking With Your Client's General Counsel is a Good First Step,* Harvard Law School Bankruptcy Roundtable, July 28, 2020, available at http://blogs.harvard.edu/bankruptcyroundtable/2020/07/28/want-to-take-control-of-professional-fees-in-large-chapter-11-bankruptcy-cases-talking-with-your-clients-general-counsel-is-a-good-first-step/.

- Nancy B. Rapoport, *Training Law Students To Maintain Civility in Their Law Practices as a Way To Improve Public Discourse,* North Carolina Law Review 2019 Symposium, 98 N.C. L. REV. 1143 (2020) (solicited manuscript), available at https://ssrn.com/abstract=3616995.

- Nancy B. Rapoport & Joe Tiano, *COVID-19 Could Catalyze The Legal Industry Renaissance,* Above the Law (April 29, 2020), available at https://abovethelaw.com/2020/04/covid-19-could-catalyze-the-legal-industry-renaissance/.

- Nancy B. Rapoport, *Using General Counsel to Set the Tone for Work in Large Chapter 11 Cases,* 88 FORDHAM L. REV. 1727 (2020) (solicited manuscript) (presented at the Stein Center for Law and Ethics Colloquium on Corporate Lawyers (October 2019)), available at https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3591118.

- Nancy B. Rapoport, *Client-Focused Management of Expectations for Legal Fees in Large Chapter 11 Cases,* 28 AM. BANKR. INST. L. REV. 39 (2020), available at https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3541347.

- Nancy B. Rapoport & Joseph R. Tiano, Jr., *Leveraging Legal Analytics and Spend Data as a Law Firm Self-Governance Tool,* XIII J. BUS., ENTREPRENEURSHIP & L. 171 (2019) (presented at Arizona State University's 7th Annual Conference on the Governance of Emerging Technologies & Science: Law, Policy & Ethics (May 2019)), available at https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3525660.

- Nancy B. Rapoport & Joseph R. Tiano, Jr., *Legal Analytics, Social Science, and Legal Fees: Reimagining "Legal Spend" Decisions in an Evolving Industry*, Georgia State Symposium on Legal Analytics, 35 GA. ST. U. L. REV. 1269 (2019), available at https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3418465.

- Dwayne J. Hermes, Erica R. LaVarnway & Nancy B. Rapoport, *A Solutions-Oriented Approach: Changing How Insurance Litigation Is Handled by Defense Law Firms,* 2017 J. PROF'L L. 129 (peer-reviewed annual journal of the Center for Professional Responsibility of the American Bar Association), available at https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3104055.

- Nancy B. Rapoport, *How Teams Can Help You (or Hurt You) When It Comes to Ethics,* December 2017 ABI J. 24, available at https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3085229.

- Nancy B. Rapoport & Charlie Douglas, *High Performance Organizational Teams,* LISI Estate Planning Newsletter #2563 (July 3, 2017), available at http://www.leimbergservices.com and at https://papers.ssrn.com/sol3/papers.cfm?abstract_id=2998424.

- Nancy B. Rapoport, *In Praise of Margaret Howard,* 74 WASH. & LEE L. REV. 641 (2017), available at https://papers.ssrn.com/sol3/papers.cfm?abstract_id=2981404.

- Nancy B. Rapoport, *Ethics: Why We Must Play Well with Others (and Why We Don't),* Rocky Mountain Mineral Law Foundation, MANUAL OF THE ADVANCED PUBLIC LANDS SPECIAL INSTITUTE 587 (2017), available at https://papers.ssrn.com/sol3/papers.cfm?abstract_id=2917346.

- Nancy B. Rapoport, *On Shared Governance, Missed Opportunities, and Student Protests*, 17 NEV. L.J. 1 (2016), available at http://ssrn.com/abstract=2885539.

- Randy D. Gordon & Nancy B. Rapoport, *Virtuous Billing,* 15 NEV. L.J. 698 (2015), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2670628.

- Nancy B. Rapoport, *"Nudging" Better Lawyer Behavior: Using Default Rules and Incentives to Change Behavior in Law Firms,* 4 ST. MARY'S J. L. ETHICS & MALP. 42 (2014) (solicited manuscript for symposium on Legal Malpractice and Ethics), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2460078.

- Nancy B. Rapoport, *The Client Who Did Too Much,* 47 AKRON L. REV. 121 (2014) (solicited as part of the Joseph G. Miller and William C. Becker Center for Professional Responsibility's Symposium on Navigating the Practice of Law in the Wake of Ethics 20/20), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2412496.

- Nancy B. Rapoport, *Plus Ça Change, Plus C'est La Même Chose,* 17 GREEN BAG 55 (2013) (solicited manuscript), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2404069.

- Lois R. Lupica & Nancy B. Rapoport, *Best Practices for Working with Fee Examiners,* 32 AM. BANKR. INST. J. 20 (June 2013), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2279642.

- Nancy B. Rapoport, *Rethinking U.S. Legal Education: No More "Same Old, Same Old,"* 45 CONN. L. REV. 1409 (2013), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2275315.
- Nancy B. Rapoport, *Managing U.S. News & World Report—The Enron Way,* 42 GONZAGA L. REV. 423 (2013), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2255194.
- Nancy B. Rapoport, Book Review, Brian Z. Tamanaha, *Failing Law Schools* (2012), 47 L. & SOC. REV. 229 (2013) (solicited review), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2233617.
- Nancy B. Rapoport, *Black Swans, Ostriches, and Ponzi Schemes,* 42 GOLDEN GATE L. REV. 627 (2012) (solicited manuscript for symposium), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2131393.
- Nancy B. Rapoport, *The Case for Value Billing in Chapter 11,* 7 J. BUS. L. & TECH. LAW 117 (2012), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2039506.
- Nancy B. Rapoport, *Changing the Modal Law School: Rethinking U.S. Legal Education in (Most) Schools,* 116 PENN ST. L. REV. 1119 (2012), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2038409 (republished at 122 DICKINSON L. REV. 189 (2017)).
- Jennifer Gross & Nancy B. Rapoport, *Is the Attorney-Client Privilege Under Attack?,* GP | SOLO MAGAZINE 47 (October-November 2010), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1704026.
- Nancy B. Rapoport, *Rethinking Fees in Chapter 11 Bankruptcy Cases,* 5 J. BUS. & TECH. LAW 263 (2010) (solicited manuscript for University of Maryland School of Law's symposium on *Examining Government Reform in the Financial Crisis*), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1625102.
- Nancy B. Rapoport, *Through Gritted Teeth and Clenched Jaw: Court-Initiated Sanctions Opinions in Bankruptcy Courts,* 41 ST. MARY'S L.J. 701 (2010) (solicited manuscript for St. Mary's 9th Annual Symposium on *Legal Malpractice and Professional Responsibility),* available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1628275.
- C.R. Bowles & Nancy B. Rapoport, *Debtor Counsel's Fiduciary Duty: Is There a Duty to Rat in Chapter 11?,* 29 AM. BANKR. INST. JOURNAL 16 (2010), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1544930.
- Nancy B. Rapoport, *Academic Freedom and Academic Responsibility* (reviewing MATTHEW W. FINKIN & ROBERT C. POST, FOR THE COMMON GOOD: PRINCIPLES OF AMERICAN ACADEMIC FREEDOM (Yale University Press 2009)), in 13 GREEN BAG 2D 189 (Winter 2010) (solicited manuscript), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1544932.
- Eric Van Horn & Nancy B. Rapoport, *Restructuring the Misperception of Lawyers: Another Task for Bankruptcy Professionals,* 28 AM. BANKR. INST. JOURNAL 44 (2009), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1472211.
- Nancy B. Rapoport, *Where Have All the (Legal) Stories Gone?,* M/E INSIGHTS 7 (Fall 2009) (publication of the Association of Media and Entertainment Counsel), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1545443.

- Nancy B. Rapoport, *The real reason why businesses make bad decisions* (reviewing JONATHAN R. MACEY, CORPORATE GOVERNANCE: PROMISES KEPT, PROMISES BROKEN (Princeton University Press 2008)), in 18 BUS. LAW TODAY 52 (July/Aug. 2009) (solicited manuscript), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1425118.

- Nancy B. Rapoport, *Lessons From Enron—And Why We Don't Learn From Them,* May/June 2009 COMMERCIAL LENDING REVIEW 23, available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1413937.

- Colin Marks & Nancy B. Rapoport, *Corporate Ethical Responsibility and the Lawyer's Role in a Contemporary Democracy,* 77 FORDHAM L. REV. 1269 (2009) (solicited manuscript), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1376475.

- Nancy B. Rapoport & Roland Bernier III, *(Almost) Everything We Learned About Pleasing Bankruptcy Judges, We Learned in Kindergarten,* 27 AM. BANKR. INST. J. 16 (July/August 2008), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1157103.

- Nancy B. Rapoport, *The Curious Incident of the Law Firm That Did Nothing in the Night-Time* (reviewing MILTON C. REGAN, JR., EAT WHAT YOU KILL: THE FALL OF A WALL STREET LAWYER (Univ. of Michigan Press 2004)), in 10 LEGAL ETHICS 98 (2007), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1017627 and at http://www.tandfonline.com/doi/abs/10.1080/1460728X.2007.11423884.

- Nancy B. Rapoport & Roland Bernier, *Bankruptcy Pro Bono Representation of Consumers: The Seven Deadly Sins,* 44 HOUS. LAWYER 18 (June 2007), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1051221.

- Nancy B. Rapoport, *Not Quite "Them," Not Quite "Us": Why It's Difficult for Former Deans to Go Home Again,* 38 U. TOLEDO L. REV. 581 (2006) (solicited manuscript), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=936251.

- Nancy B. Rapoport, *Eating Our Cake and Having It, Too: Why Real Change Is So Difficult in Law Schools,* 81 IND. L.J. 359 (2006) (solicited manuscript) (symposium at Indiana University-Bloomington School of Law—*The Next Generation of Law School Rankings*), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=703843.

- Nancy B. Rapoport, *Enron and the New Disinterestedness—The Foxes Are Guarding the Henhouse,* 13 AM. BANKR. INST. L. REV. 521 (2005) (solicited manuscript), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=936167.

- Nancy B. Rapoport, *Decanal Haiku,* 37 U. TOLEDO L. REV. 131 (2005) (solicited manuscript), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=936166.

- Nancy B. Rapoport, *Recent Developments in Bankruptcy Law,* 35 TEXAS TECH. L. REV. 543 (2004) (solicited manuscript), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=938551.

- Nancy B. Rapoport, *"Venn" and the Art of Shared Governance,* 35 U. TOLEDO L. REV. 169 (2003) (solicited manuscript), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=936247.

- Nancy B. Rapoport, *Examining Enron's enablers: Watkins' perspective makes Swartz's account stand out,* HOUSTON CHRONICLE, March 23, 2003, at *Zest* 15 (solicited book review).

- Nancy B. Rapoport, *Enron, Titanic, and the Perfect Storm*, 71 FORDHAM L. REV. 1373 (2003) (solicited manuscript for a special issue on ethics), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=498122; also included as an essay in ENRON: CORPORATE FIASCOS AND THEIR IMPLICATIONS 927 (Nancy B. Rapoport & Bala G. Dharan, eds.) (Foundation Press 2004).

- Nancy B. Rapoport, *The Intractable Problem of Bankruptcy Ethics: Square Peg, Round Hole,* 30 HOFSTRA L. REV. 977 (2002) (solicited manuscript for ethics symposium), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=936235.

- Nancy B. Rapoport, *In Memoriam: Yale Rosenberg,* 39 HOUS. L. REV. 869 (2002) (solicited essay), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1598446.

- Nancy B. Rapoport & Jeffrey D. Van Niel, *"Retail Choice" Is Coming: Have You Hugged Your Utilities Lawyer Today? (Part II),* August 2002 NORTON BANKRUPTCY LAW ADVISER 2, available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=963913.

- Nancy B. Rapoport, *Multidisciplinary Practice After In Re Enron: Should the Debate on MDP Change At All?,* TEXAS BAR JOURNAL 446 (May 2002), available at http://www.texasbar.com/Template.cfm?Section=Home&Template=/ContentManagement/ContentDisplay.cfm&ContentID=5999.

- Nancy B. Rapoport & Jeffrey D. Van Niel, *"Retail Choice" Is Coming: Have You Hugged Your Utilities Lawyer Today? (Part I),* February 2002 NORTON BANKRUPTCY LAW ADVISER 4, available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=963912.

- Nancy B. Rapoport, *Is "Thinking Like a Lawyer" Really What We Want to Teach?,* in *Erasing Lines: Integrating the Law School Curriculum,* 2001 ALWD CONF. PROCEEDINGS 91, available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=936248.

- Nancy B. Rapoport, *When Local IS Global: Using a Consortium of Law Schools to Encourage Global Thinking,* 20 PENN STATE INT'L LAW REVIEW 19 (2001) (transcript of AALS Annual Meeting session).

- Nancy B. Rapoport, *Of Cat-Herders, Conductors, Fearless Leaders, and Tour Guides,* 33 U. TOLEDO L. REV. 161 (2001) (solicited manuscript), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=936245.

- Nancy B. Rapoport, *Presidential Ethics: Should a Law Degree Make a Difference?,* 14 GEO. J. L. ETHICS 725 (2001), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=260021.

- Nancy B. Rapoport, *Going from "Us" to "Them" in Sixty Seconds,* 31 U. TOLEDO L. REV. 703 (2000) (solicited manuscript), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=936171.

- Nancy B. Rapoport, *Dressed for Excess: How Hollywood Affects the Professional Behavior of Lawyers,* 14 NOTRE DAME J. OF LAW, ETHICS & PUBLIC POLICY 49 (2000) (solicited manuscript), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=936188.

- Nancy B. Rapoport, *Ratings, Not Rankings: Why* U.S. News & World Report *Shouldn't Want To Be Compared To* Time *and* Newsweek—*or* The New Yorker, 60 OHIO ST. L.J. 1097 (1999), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=936246.

- Nancy B. Rapoport, *Living "Top-Down" in a "Bottom-Up" World: Musings on the Relationship Between Jewish Ethics and Legal Ethics,* 78 NEB. L. REV. 18 (1999), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=936241.

- Nancy B. Rapoport, *Moral Bankruptcy: Modeling Appropriate Attorney Behavior in Bankruptcy Cases,* THE NEBRASKA LAWYER 14 (March 1999) (solicited manuscript), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1598447.

- Nancy B. Rapoport, *The Need For New Bankruptcy Ethics Rules: How Can "One Size Fits All" Fit Anybody?,* 10 PROFESSIONAL LAWYER 20 (1998) (solicited manuscript), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=939448.

- Nancy B. Rapoport, *Our House, Our Rules: The Need for a Uniform Code of Bankruptcy Ethics,* 6 AM. BANKR. INST. L. REV. 45 (1998) (solicited manuscript), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=936343.

- C.R. Bowles & Nancy B. Rapoport, *Has the DIP's Attorney Become the Ultimate Creditors' Lawyer in Bankruptcy Reorganization Cases?,* 5 AM. BANKR. INST. L. REV. 47 (1997) (symposium manuscript), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=936240.

- Nancy B. Rapoport, *Ethics: Is Disinterestedness Still a Viable Concept? A Roundtable Discussion,* 5 AM. BANKR. INST. L. REV. 201 (1997) (solicited transcript) (with co-panelists John D. Ayer, the Hon. Charles N. Clevert, the Hon. Joel Pelofsky & Bettina Whyte), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=936340.

- Nancy B. Rapoport, *Turning the Microscope on Ourselves: Self-Assessment by Bankruptcy Lawyers of Potential Conflicts of Interest in Columbus, Ohio,* 58 OHIO ST. L.J. 1421 (1997), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=938611.

- Nancy B. Rapoport, *Avoiding Judicial Wrath: The Ten Commandments for Bankruptcy Practitioners,* 5 J. BANKR. L. & PRAC. 615 (September/October 1996) (solicited manuscript), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=940769.

- Nancy B. Rapoport, *Seeing the Forest* and *The Trees: The Proper Role of the Bankruptcy Attorney,* 70 IND. L.J. 783 (1995), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=938527.

- Nancy B. Rapoport, *Worth Reading: Review of Annual Survey of Bankruptcy Law,* TURNAROUNDS AND WORKOUTS (Beard Group, Inc.), January 15, 1995, at 6 (solicited book review).

- Nancy B. Rapoport, *Turning and Turning in the Widening Gyre: The Problem of Potential Conflicts of Interest in Bankruptcy,* 26 CONN. L. REV. 913 (1994), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=936337.

**Op-eds**

- Nancy Rapoport & Mary Langsner, *Why does the bankruptcy code discriminate against disabled veterans?,* THE HILL (Jan. 24, 2019), available at https://thehill.com/opinion/finance/426854-why-does-the-bankruptcy-code-discriminate-against-disabled-veterans.

- Lois R. Lupica & Nancy Rapoport, *Consumer Debtors Should Not Have To Go It Alone,* DOW JONES DAILY BANKRUPTCY REVIEW (May 1, 2013), available at http://bankruptcynews.dowjones.com/article?an=DJFDBR0020130501e951qbfa8&from=alert&pid=10&ReturnUrl=http%3a%2f%2fbankruptcynews.dowjones.com%3a80%2farticle%3fan%3dDJFDBR0020130501e951qbfa8%26from%3dalert%26pid%3d10.

- Nancy Rapoport, *Board Smart Not to Raise the Superintendent Salary Stakes,* LAS VEGAS SUN, September 5, 2010, available at http://www.lasvegassun.com/news/2010/sep/05/board-smart-not-raise-superintendent-salary-stakes/.

- Nancy B. Rapoport, *Enron an Example: Grads Lost in Trees,* HOUSTON CHRONICLE, February 24, 2002, at 4H.
- Nancy B. Rapoport, *Wrestling with the Problem of Potential Conflicts of Interest in Bankruptcy,* 26 BANKRUPTCY COURT DECISIONS WEEKLY NEWS AND COMMENT (LRP Publications), March 7, 1995, at A3 (solicited editorial).

## Grants

- 2002 participant, Harvard Institutes for Higher Education Management and Leadership in Education (MLE) Program (partial scholarship from Harvard, $1,000 in 2001—had to withdraw, due to the aftermath of Tropical Storm Allison, but returned to participate in 2002).
- 1999 participant, Harvard Institutes for Higher Education Management Development Program (MDP) (partial scholarship from Harvard, $1,000).
- 1995 Instructional Technology Small Grant (Ohio State funds; $850).
- 1995 West Publishing/NCAIR Fellow ($15,000 grant for developing a computer program that teaches law students about conflicts of interest in bankruptcy law).
- 1994 participant in Summer Institute of the Law & Society Association (Wellesley, Massachusetts).
- 1993 University Seed Grant for the study of creditor representation in bankruptcy (1993 grant from Ohio State University's Office of Research & the College of Law).

## Podcasts (as guest speaker)

- PLUS blog (with Joseph R. Tiano, Jr.), *Becoming an LPL "Precog",* https://plusblog.org/2022/10/10/plus-podcast-becoming-an-lpl-precog/.
- Jay Edelson, NON-COMPLIANT, *Episode 13: The One Where Professor Nancy Rapoport Discusses the Future of Law Firms,* July 1, 2020, available at https://podcasts.apple.com/us/podcast/episode-13-one-where-professor-nancy-rapoport-discusses/id1491233296?i=1000481718338.
- Jay Edelson, NON-COMPLIANT, *Episode 14: The (Second) One Where Professor Nancy Rapoport Discusses the Future of Law Firms,* July 13, 2020, available at https://podcasts.apple.com/us/podcast/episode-14-second-one-where-professor-nancy-rapoport/id1491233296?i=1000484787064.

## Selected academic presentations

*Anthropology of higher education / higher education generally*

- Society for Applied Anthropology's 79th annual meeting, *Moving Seamlessly From Faculty Status to Administrator and Then Back Again* (March 2019).
- Society for Applied Anthropology's 78th annual meeting, *Concentric and Overlapping Circles of Leadership in Higher Education* (April 2018).
- Society for Applied Anthropology's 77th annual meeting, *Women and Diversity: Being a "First"* (March 2017).

- Presentation at 2010 Annual Meeting of Association of American Law Schools, Section on Women in Legal Education, *Succeeding in Legal Education* (January 2010).
- Presentation at 2009 Annual Meeting of Association of American Law Schools, Committee on Curriculum Issues, *Redesigning Legal Education* (January 2009).
- Presentations at the 2007 Annual Meeting of Association of American Law Schools:
  - *Workshop on the Ratings Game (or Not!): The Search for Sensible Assessment,* moderator for plenary discussion, *We Didn't Even Bring the Box: A Roundtable Discussion on Creative Alternatives,* http://www.aals.org/am2007/wednesday/ratings.html.
  - Panelist, Section on Continuing Legal Education, Co-Sponsored by Section on
  - Professional Responsibility, *Legal Ethics CLE in the Law School Setting: Can It Be Practical, Academic, and Interesting at the Same Time?*
  - Panelist, Section for the Law School Dean, *What I Wish I Had Known Then: A Conversation Among Deans.*
- Symposium at Indiana University-Bloomington School of Law, *Eating Our Cake and Having It, Too: Why Real Change Is So Difficult in Law Schools* (March 2005).
- "Better Learning, Better Lawyers" Conference, *Legal Education in the 21ˢᵗ Century: Radical Design for a Changing Profession* (August 2002).
- Moderator of plenary session of the Annual Meeting of Association of American Law Schools, *Mini-Workshop on Major Issues of the 21ˢᵗ Century: The Impact on the Legal Academy and Law Students* (January 2000).

*Social science and ethics / social science and governance / social science and lawyer behavior / bankruptcy law*

- University of Pittsburgh School of Law, *Irrepressible Civility, Professionalism, and Ethics in Defining the Lawyering Career,* Symposium on The Jurisprudence and Legacy of the Honorable Joseph F. Weis Jr. (with Abraham C. Reich and Nathan M. Crystal) (March 2023).
- The Stein Center for Law and Ethics, Fordham University School of Law, Colloquium on Corporate Lawyers, *Using General Counsel to Set the Tone for Work in Large Chapter 11 Cases* (October 2019).
- Pontificia Universidad Javeriana Cali (Colombia)'s International Congress of Corporate Law, *Corporate Social Responsibility and Social Science* (November 2017) (invited speaker).
- Colombia's Superintendency of Companies, *Corporate Governance, Compliance and Business Ethics* (May 2016) (invited speaker).
- Colombia's Superintendency of Companies, Responsibility of Administrators and Business Ethics Seminar, *Why Smart People Make Bad Decisions* (March 2015) (invited speaker).
- Boyd School of Law, Conference on Psychology and Lawyering: Coalescing the Field, *Using Psychology to Change Law Firms' Default Incentive Structures* (with Randy D. Gordon) (invited panelist) (February 2014).
- The Ohio State University Moritz College of Law, faculty workshop presentation on *"Nudging" Better Lawyer Behavior: Using Default Rules and Incentives to Change Behavior in Law Firms* (November 2013).
- The Joseph G. Miller and William C. Becker Center for Professional Responsibility's Symposium on Navigating the Practice of Law in the Wake of Ethics 20/20, *What It Means To Be a Lawyer in These Uncertain Times (Part I)* (invited panelist) (April 2013).

- Roger Williams University School of Law, Women Who Lead Series, *Why the World Needs Nay-Sayers* (keynote speaker) (March 2010).
- Distinguished Lecturer, The Chapman Dialogue Series, Chapman University School of Law, *Why No Amount of Regulation Is Likely to Prevent Corporate Scandals* (February 2010).
- Association of American Law Schools, Annual Meeting, Section on Continuing Legal Education (co-sponsored by Section for the Law School Dean), *Exploring the Options for the Future of Legal Education* (with Kellye Y. Teste, Daniel McCarroll, Gary A. Munneke, and Ellen Y. Suni) (January 2010).
- Presentation at Fordham Law School's Colloquium, *The Lawyers' Role in a Contemporary Democracy* (with Colin Marks) (September 2008).
- Adjunct professor, St. John's University School of Law, LL.M. in Bankruptcy Program (Enron seminar), St. John's University School of Law Faculty, *Enron: Is It Still Relevant?* (March 2006 & March-April 2007).
- AALS Workshop—Do You Know Where Your Students Are?  Langdell Logs On to the 21st Century, AALS Annual Meeting, *The Changing Face of the Deanship* (January 2002).
- The 2001 Legal Ethics Conference, Hofstra University School of Law, *Legal Ethics—What Needs Fixing?* (September 2001).
- AALS Bankruptcy Workshop, *Teaching Bankruptcy as a Vehicle for Teaching Other Values* (May 2001).
- ALWD (Association of Legal Writing Directors) Biennial Conference, *Do "Best Practices" in Legal Education Include an Obligation to the Legal Profession to Integrate Theory, Skills, and Doctrine in the Law School Curriculum?* (July 2001).
- AALS Workshop for New Law Teachers, *Satisfying Your Multiple Constituencies (How Your Dean Can Help)* (July 2000 & July 1999).
- Annual Meeting of the Association of American Law Schools, Creditors' & Debtors' Rights Section, *Local Cultures + Judicial Discretion = National Confusion?: Equities, Equations, and the "Uniformity" of the Bankruptcy Code* (January 1998).

**Selected continuing legal education programs and other professional presentations**

*Legal education / the legal profession generally*

- *Convergence of Legal Risk Management and Business Strategy Consulting,* Legal Foresight Summit (with David Kamien, Scott Leeb, and Mark Ford) (March 2023).
- *Using Data Analytics to Predict an Individual Lawyer's Legal Malpractice Risk Profile,* General Counsel Roundtable (with Joseph R. Tiano, Jr.) (June 2022).
- *Navigating Ethical Issues in the New Remote World,* 128th Annual Convention of the Commercial Law League of America (keynote) (May 2022).
- *Ethics in the Movies:  Lessons for Real Life,* United States District Court Conference, District of Nevada (plenary) (May 2022).
- *The Specter of Malpractice,* General Counsel Roundtable (with Joseph R. Tiano, Jr.) (April 2022).

Case 8:23-bk-10571-SC    Doc 1800    Filed 10/08/24    Entered 10/08/24 18:19:16    Desc
                          Main Document        Page 222 of 332

Case 8:23-bk-10571-SC Doc 2286 Filed 07/18/2024 Entered 07/18/2024 21:13:16 Desc
Desc  Declaration Main Document Bar Report Page 23 of 47    Page 39 of 75

- *Leveraging Legal Analytics and Spend Data as a Law Firm Self-Governance Tool,* Arizona State University's 7th Annual Conference on the Governance of Emerging Technologies & Science: Law, Policy & Ethics (with Joseph R. Tiano, Jr.) (May 2019).
- 2019 Mid-Year Meeting, National Organization of Bar Counsel, *A Look Inside the Incubator— The Challenges Facing Today's Law Students, Law Schools, and Newly-Minted Lawyers* (with Nelson Page and Ari Telisman) (January 2019).
- Law School Admission Council's Annual Meeting, *"Soothing the Savage Beast": The Art of Working Effectively With Difficult People* (with Floyd Weatherspoon) (June 2011).
- Houston Bar Minority Opportunities in the Legal Profession Committee & Minority Corporate Counsel Association: Business Development in a Belt-Tightening Economy, *Overcoming Barriers and Opening Doors to Your Personal Success* (February 2002).
- LSAC Academic Support Conference, *Why Support Academic Support Programs?* (June 2000).
- LSAC Annual Meeting, *Establishing a Partnership With a New Dean* (June 2000).
- American Bar Association's Workshop for New Law Deans, *Reflections of an Ex-Novice Dean* (June 1999).
- Annual Conference of the National Association for Law Placement, *Reliable Evaluation of Law Schools: Going Beyond Law School Rankings* (April 1999).

*Bankruptcy / Ethics*

- American College of Bankruptcy, *Attorney Fees in Consumer Cases: A Policy and Ethics Discussion* (with Joyce Babin and Areya Holder Aurzada) (March 2023).
- American Bankruptcy Institute, Winter Leadership Conference, *Don't Just Say No: Technology, Ethics and the Changing Practice of Law* (with Prof. Lois Lupica and Joseph R. Tiano, Jr.) (December 2022).
- State Bar of Montana, Annual Meeting of Bankruptcy Section, *Billing Judgment* (July 2022).
- Annual meeting of the National Association of Chapter 13 Trustees, *Ethical Implications of Remote Lawyering Post-Pandemic* (plenary) (July 2022).
- Ninth Circuit Conference of Chief Bankruptcy Judges, Bankruptcy Court Clerks and Bankruptcy Lawyer Representatives, *Billing Judgment* (March 2022).
- Annual Meeting of National Conference of Bankruptcy Judges, *Start Your Engines! Jeopardy— the Broken Bench Edition* (with Demetra Liggins and Judges Pamela Pepper and Catherine J. Furay) (October 2021).
- Los Angeles Chapter, Federal Bar Association, 17th Annual Bankruptcy Ethics Symposium, keynote address, *Telling the Story on Your Timesheets: A Fee Examiner's Tips for Creditors' Lawyers and Bankruptcy Estate Professionals* (November 2020).
- AMERICAN BANKRUPTCY INSTITUTE LAW REVIEW panel discussion, *Professional Fees in Bankruptcy* (with co-panelists Judge Kevin Carey, attorney Douglas Deutsch, Professor Stephen Lubben, and Professor John Pottow) (April 2019).
- National Conference of Bankruptcy Judges, *NCBJ Plenary: Broken Bench Awards Show: The Best Little Show in Texas* (October 2018).
- ABI 38th Annual Midwestern Bankruptcy Institute, *Sanctions and Social Science* (October 2018) (with Adam Miller).

- Fifth Annual James T. King Bankruptcy Symposium, *Ethics and Getting Paid* (July 2018) (with the Hon. Erithe A. Smith and M. Jonathan Hayes).

- American Bankruptcy Institute, VALCON 2018, *Special Problems Presenting Financial Consultants as Expert Witnesses and Ethics Hot Topics* (May 2018) (with Michael Richman, George Angelich, and Ted Gavin).

- American Bankruptcy Institute's Annual Spring Meeting, *Ethics Jeopardy* (with Nan Roberts Eitel, Lois Lupica, and Bill Rochelle) (April 2017).

- American Bankruptcy Institute's Annual Spring Meeting, *A Primer on Dealing with Fee Examiner*s (with Van Durrer, II, William K. Harrington, Robert J. Keach, and John F. Theil) (April 2016).

- 29th Annual Central California Bankruptcy Institute, *How to Use Social Science to Improve Ethics in a Law Firm* (September 2015).

- 89th Annual National Conference of Bankruptcy Judges, *Ethics and Social Media* (panel discussion with the Hon. Hannah Blumenstiel and Peter Fessenden) (September 2015).

- National Association of Legal Fee Analysts (NALFA) webinar, *Bankruptcy Fee Examiners in Large Chapter 11 Cases* (panel discussion with Walter W. Theus, Jr., Senior Trial Attorney, USDOJ U.S. Trustee Program and Jeffrey L. Cohen, Partner, Cooley, LLP) (May 2015).

- Bankruptcy Section of the Federal Bar Association and the Los Angeles Chapter of the Federal Bar Association, 11th Annual Bankruptcy Ethics Symposium, *An Ethics Conversation* (with Gillian N. Brown) (November 2014).

- Texas Bankruptcy Law Section Bench/Bar Conference, *Recent Attorney Fee Issues* (June 2013).

- Rocky Mountain Bankruptcy Conference: IWIRC session on bankruptcy ethics; keynote speaker on *Bankruptcy Ethics in Pop Culture* (January 2013).

- Speaker at three sessions of the 86th Annual National Conference of Bankruptcy Judges: ABA session on *Ethical Issues Involving Pro Bono Representation: Spotting the Issues, Solving the Problems;* NCBJ session on *The Ethics of Organizers—Ethical Challenges in Forming Official and Unofficial Committees;* and CLLA session on *Pre-Bankruptcy Ethics—How to Avoid the Minefields Before Battle Begins* (October 2012).

- Sacramento Valley Bankruptcy Forum's 11th Annual Northern California Bankruptcy Conference, *Stupid Lawyer Tricks* (March 2012).

- National Association of Bankruptcy Trustees' Spring Meeting, panelist on *Friend Me? Ethics and Professionalism Issues Related to the Use of Social Media* (March 2012).

- ABA Business Law Section's Annual Spring Meeting, panelist for the sessions on *Ethical Issues in Commercial Transactions, Should In-House Counsel Be Navigating in the Choppy Waters of Corporate Compliance?,* and *Consumer Bankruptcy Clinics for Law Schools* (March 2012).

- Southeastern Bankruptcy Law Institute, SBLI Visiting Scholar Presentation, *The Case for Value Billing in Chapter 11* (October 2011).

- Bankruptcy Law Section of the State Bar of Texas Bench/Bar Conference, *"Money, Money, Money" -- Red Flags to Fee Examiners and Solutions to Those Red Flags* (with the Hon. H. Christopher Mott, Kemp Sawers, and Warren H. Smith) (June 2011).

- American Bankruptcy Institute's Annual Spring Meeting, *Fulfilling the Fiduciary Duty in a Complex Commercial World* (with Richard M. Meth & Judith Greenstone Miller (plenary) (April 2011).

- Annual Meeting of National Conference of Bankruptcy Judges, *(Almost) Everything You Wanted to Know About…Getting Retained* and *Committee Solicitation Issues – The Problems, the Rules and the Enforcers* (October 2009).

- ABI Southwest Bankruptcy Conference, *Multimedia Ethics Presentation; Perspectives from the Bench and Ethical Issues;* and *Ethics—Walking in the Grey Areas: Advising Clients and Avoiding Pitfalls in Ethically Unsettled Areas* (September 2009).

- ALI-ABI Live Telephone Seminar and Audio Webcast:  Ethics and Professionalism Series, *When Bankruptcy Comes Calling on Your Client: Five Common Ethical Mistakes* (April 2009).

- ABI Annual Spring Meeting, *Multimedia Ethics Presentation* (plenary) (April 2009).

- Alaska Bar Association and Alaska Bankruptcy Bar, *Ethics and Popular Culture* and *Issues in Bankruptcy Ethics* (March 2009).

- National Conference of Bankruptcy Judges, 82d Annual Conference, *Ethical Fee Limits: Getting Paid and Getting What You Deserve* (Sept. 2008).

- American Bankruptcy Institute's 16th Annual Southwest Bankruptcy Conference, *Multimedia Ethics Extravaganza* (plenary) (Sept. 2008).

- National Conference of Consumer Bankruptcy Attorneys, 16th Annual Conference, *Ethics Issues* (May 2008).

- American Bankruptcy Institute's 26th Anniversary Annual Spring Meeting, *Beyond Ethics: The Coexistence of Zealousness, Professionalism and Civility in the Insolvency Community* (April 2008).

- American Bankruptcy Institute's 19th Annual Winter Leadership Conference, *Presentation of Fee Study* (February 2008).

- National Conference of Bankruptcy Judges, 81st Annual Conference, Commercial Law League of America's 22nd Annual Educational Program's panel on *Preemption and Federalism Issues in Bankruptcy* (October 2007).

- American Bankruptcy Institute's 15th Annual Southwest Bankruptcy Conference, *Ethics: Negotiating the Sanctions Minefield* (September 2007).

- American Bankruptcy Institute's 25th Annual Spring Meeting, *The Application of State Ethics Rules in Bankruptcy: Are We Just Holding Our Noses and Looking the Other Way?* (April 2007).

- 25th Anniversary Jay L. Westbrook Bankruptcy Conference, University of Texas CLE (with Martin Bienenstock), *Conflicts Writ Large: Intercreditor Issues and Issues with Fees and Overbilling* (November 2006).

- Annual Meeting of National Conference of Bankruptcy Judges, ABA Luncheon Meeting, *Examining the Examiner* (October 2004).

- Annual Meeting of National Conference of Bankruptcy Judges, *Current Bankruptcy Ethics Issues: It's Not That You Ought To!  It's That You "Got To!"* (October 2004).

- Commercial Law League of America, Annual Meeting, *Bankruptcy Ethics* (April 2003).

- 4th Annual Barry L. Zaretsky Roundtable, Brooklyn Law School, *Ethics, Governance, and Bankruptcy After Enron* (April 2003).

- The University of Texas School of Law CLE: The 21st Annual Bankruptcy Conference & Personal Injury Conference, *Debtor Wrongdoing: Ethical Implications for Lawyers* (November 2002).

- National Association of Bankruptcy Trustees, Annual Conference, *What's Wrong With Us??!!—A Fascinating Look at Ourselves, Through the Eyes of Judges and Others* (August 2002).

- 10th Annual Southwest Bankruptcy Conference, American Bankruptcy Institute, *A Look Inside the Mega-Case* (September 2002).
- 20th Annual Bankruptcy Conference, University of Texas Law School, *Bankruptcy Ethics—How Do We Find Out What We're Doing Wrong (Or Right)?* (November 2001).
- Annual Meeting of National Conference of Bankruptcy Judges, *Tell Me What You Really Want—How Behavior (On Both Sides of the Bench) Can Impact Your Case* (October 2001).
- Winter Leadership Conference, American Bankruptcy Institute, *Bankruptcy Ethics* (December 2000).
- Twenty-Fourth Annual Bankruptcy Law & Practice Seminar, Stetson University College of Law, *Ethical Problems: Dual Representation in Chapter 11,* and *Ethics: Pre-Bankruptcy Planning and Ethical Limitations* (December 1999).
- Annual Meeting of National Conference of Bankruptcy Judges, *Disinterestedness and the Chapter 11 Professional* (October 1997).
- Eastern District of Pennsylvania Bankruptcy Conference, *Bankruptcy Issues* (January 1996, January 1997, January 1998, and January 1999).

*Social science generally / social science and ethics*

- General session, International Conference of Shopping Centers, U.S. Law Conference, *Ethics Wise and Wonderful: Traditional Rules, Modern Trends* (general session) (with John G. Cameron, Jr.) (October 2022).
- The Annual CLLA Luncheon at the National Conference of Bankruptcy Judges, B*rave New World: Ethics Issues That We Never Knew We Had* (October 2022).
- General session, *Teams, Cognitive Errors, and Legal Ethics,* International Council of Shopping Centers, U.S. Law Conference (October 2020) (virtual presentation).
- Southeastern Bankruptcy Law Institute, *Life in the Time of COVID: Ethical Issues Facing Attorneys During the Pandemic* (with Judges Bess Creswell and James Sacca and George L. Washington, Jr.) (May 2021).
- Plenary session, *Ethics and Professionalism: Why Lawyers Do Dumb Things—The Social Science Reasons,* National Association of Chapter 13 Trustees, 54th Annual Meeting (with Mary K. Viegelahn (July 2019).
- *What Social Science Can Teach Us About Good People and Bad Choices* and *Images of Lawyers in Film: Legal Ethics and the Movies,* 2018 American Bankruptcy Institute Midwest Regional Seminar (August 2018).
- 2017 Mutual Funds and Investment Management Conference, *Building Successful and Ethical Teams* (March 2017).
- National Association of Estate Planners' 52nd Annual Conference, *Nudging More Ethical Behavior Through Incentives and Checklists* (November 2015).
- The Eugene Kuntz Conference on Natural Resources Law and Policy, *Nudging Better Behavior: How Social Science Can Help Us Make Better Decisions* (November 2015).
- Institute for Energy Law, 66th Annual Oil & Gas Conference, *"Nudging" Better Behavior* (February 2015).
- National Association of Estate Planners and Councils, 50th Annual Conference, *Social Science, Human Error & Behavior* (November 2013).

- ABA Annual Meeting, Business Law Section, *Cognitive Biases, Blind Spots, and Other Impairments of Ethical Vision: How Good Lawyers Can Go Astray* (with Dr. Larry Richard, James Jones, and Charles McCallum) (August 2013).

*Judicial ethics*

- Federal Judicial Center Workshop for Bankruptcy Judges, *(NOT) Ripped from the Headlines: Navigating Ethical Issues and Instilling Public Confidence in the Judicial System* (with the Hon. Christopher M. Alston, the Hon. D. Sims Crawford, and the Hon. Michele J. Kim) (plenary sessions) (April 2022; July 2022).
- Federal Judicial Center Workshop for Bankruptcy Judges, Plenary Session, *Judicial Ethics— Words Matter* (with the Hon. John Hoffman, Jr. and the Hon. Peter W. Bowie (Ret.)) (plenary sessions) (April 2021; July 2021).
- Federal Judicial Center, *Judicial Ethics* (with the Hon. Peter Bowie, the Hon. Arthur Federman, and Prof. Elizabeth Thornburg) (plenary sessions) (April 2013; August 2013).
- College for New Judges, Texas Center for the Judiciary, *Images of Judges in Movies* (December 2002 & November 2003).

*Corporate ethics*

- Summit for Corporate Governance, *"If You Don't Know, Now You Know": A Guide to a Board's Role in Managing (Unexpected) Risk in the Aftermath of the COVID-19 Pandemic* (with Michael J. Bonner, John Holland, and Jordan Rae Kelly) (September 2021).
- Boyd School of Law Summit on Corporate Governance, in partnership with Greenberg Traurig, LLP:  as a moderator, *Asleep at the Switch: Lessons Learned from the Failure of Board Oversight In Recent Corporate Scandals and Cybersecurity Gaffes* (with panelists Cuneyt Akay, Paul Ferrillo, and Jordan Kelly, and as a panelist, *Not Too Much, Not Too Little: What is Just Right?:  Challenges Faced in Executive and Board Compensation* (with co-panelist Laura Wanlass and moderator Flora Perez (November 2019).
- Department of Energy & Contractor Attorneys' Association, Inc.'s Annual Meeting, *Ethics in the Corporate World* (May 2009).
- *Lessons To Be Learned From the Rise and Fall of High-Profile Corporate Entities—The Scandals—How to Identify Red Flags in Revenue Reporting and Financial Statements* (NACD Houston Chapter, Sept. 2004) (with Bala G. Dharan and Steven C. Currall).
- State Bar of Texas Annual Meeting, Business Law & Corporate Counsel Sections, *Moral Independence of Lawyers vs. Moral Interdependence* (June 2003).
- Southeastern Finance Association and Southern Academy of Legal Studies, *Corporate Scandals (Enron, Andersen, Tyco & World Com)—What Went Wrong?* (keynote speaker) (March 2003).
- The University of Texas School of Law CLE: The 24th Annual Corporate Counsel Institute, *Conflicts, Ethical Duties and Independence: Lessons from Enron* (August 2002).
- NASA National Managers Association, *Lessons in Character from Enron* (April 2002).
- The University of Texas School of Law CLE: The 25th Annual Page Keeton Products Liability & Personal Injury Conference, *Dressed for Excess* (November 2001).

*Women*

- Gardere Women's Council Ethics CLE, keynote speaker, *Women on Boards* (June 2013).
- State Bar of Texas Annual Meeting, Women & the Law Section, *Images of Women Lawyers in the Media* (June 2003).

*Miscellaneous*

- Emanuel Bar Review Lecturer (2008-2010).
- BAR/BRI, lecturer on *Succeeding in Law School* (2002-2006).

**Selected media appearances**

- Appearances on a variety of local, national, and international news broadcasts, and in local, national, and international news articles, on various bankruptcy, corporate law, and other legal issues, including the Enron bankruptcy case, the Arthur Andersen trial, and the Anna Nicole death (December 2001-present).
- Appeared in Academy Award®-nominated documentary, *Enron: The Smartest Guys in the Room* (Magnolia Pictures 2005).

**Special training**

- Attended three Harvard Institutes of Higher Education leadership programs (IEM in 2016, MLE in 2002, and MDP in 1999).
- Attended STAR: A Systematic Approach to Mediation Strategies, Straus Institute for Dispute Resolution, Pepperdine University School of Law (June 2008) (attended on a grant from Pepperdine).

**Contributor to the following blogs**

- ABOVE THE LAW, https://abovethelaw.com/.
- NANCY RAPOPORT'S BLOG, https://nancyrapoports.blog/.
- NANCY RAPOPORT'S BLOGSPOT (former blog), http://nancyrapoport.blogspot.com/.
- LAW SCHOOL SURVIVAL MANUAL, http://lawschoolsurvivalmanual.blogspot.com/.
- CORPORATE SCANDAL WATCH, http://corporatescandalwatch.blogspot.com/.
- UNLV LAW BLOG, Contributing Editor, http://unlvlawblog.blogspot.com.
- MONEYLAW, Contributing Editor, http://money-law.blogspot.com/.
- LEGAL PROFESSION, Contributing Editor: http://lawprofessors.typepad.com/legal_profession/.
- JURIST, Contributing Editor, http://JURIST.law.pitt.edu/.
- CREDIT SLIPS, Guest Blogger, http://www.creditslips.org/.
- THE FACULTY LOUNGE, Guest Blogger, http://www.thefacultylounge.org/.
- THE CONGLOMERATE, Guest Blogger, http://www.theconglomerate.org/.
- FEMINIST LAW PROFESSORS, Guest Blogger, http://feministlawprofs.law.sc.edu/.

- RACE TO THE BOTTOM, Guest Blogger, http://www.theracetothebottom.org/home/.

## HONORS, BAR ADMISSIONS, MEMBERSHIPS, AND COMMUNITY SERVICE

### Selected honors

- Recipient of the 2022 UNLV Alumni Association's Outstanding Faculty Member of the Year Award.
- Named a UNLV Distinguished Professor in 2022.
- ABI Task Force For Veterans and Servicemembers' Affairs Challenge Coin (2019).
- Recipient of one of the NAACP Legacy Builder Awards (Las Vegas Branch #1111) (2018).
- Commercial Law League of America's Lawrence P. King Award for Excellence in Bankruptcy (2017).
- Inducted into Phi Kappa Phi, Chapter 100 (2017).
- Southeastern Bankruptcy Law Institute Distinguished Visiting Scholar (week-long visits at Georgia State College of Law) (2011).
- 2008 Public Service Counsel of the Year, 4th annual event, Association of Media and Entertainment Counsel (2009).
- Fellow, American College of Bankruptcy (2005-present) (Class 16).
- Named a "Woman of Vision" by the Houston Delta Gamma Foundation (2004).
- Admitted to American Leadership Forum, Class XXII (2004). Withdrew due to family illness.
- Named "Best Local Girl Made Good," HOUSTON PRESS, September 25, 2003, at 24.
- Fellow, American Bar Foundation (2002-present; Life Fellow since 2015).
- Rice University Distinguished Alumna (2002).
- Named by the Greater Houston Area Chapter of the National Council of Jewish Women as a "Woman of Influence" (2001).
- Elected to membership in the American Law Institute (2001).
- Named a Legal Pioneer for Women in the Law (first woman to serve as the dean of a Nebraska law school), Nebraska State Bar Association (2000).
- Louis Nemzer Memorial Lecture (yearly lecture honoring a Jewish member of the Ohio State faculty) (1998).
- Outstanding Professor of the Year, The Ohio State University College of Law (third-year students voting) (co-winner, with Professor Barbara Rook Snyder) (1997).

### Bar admissions

- United States District Court, District of Nevada (2009).
- Nevada Supreme Court (2007).
- United States District Court, Northern District of Texas (2003).
- Texas Supreme Court (2001).
- United States Supreme Court (2000).

- Nebraska Supreme Court (1999).
- Ohio Supreme Court (1993).
- United States District Court for the District of Hawaii (1988).
- California Supreme Court (1987).
- United States Court of Appeals for the Ninth Circuit (1987).
- United States District Courts for the Northern, Eastern, Central, and Southern Districts of California (1987).

**Editorial boards**

- AMERICAN BANKRUPTCY LAW JOURNAL ADVISORY BOARD (three-year term, starting in 2023).
- THE BUSINESS LAWYER (2014-present).
- REYNOLDS COURTS & MEDIA LAW JOURNAL (2011-2013).
- Association of American Law Schools, JOURNAL OF LEGAL EDUCATION (2007-2010).
- State Bar of Texas, TEXAS BAR JOURNAL Board of Editors (2003-06); State Bar of Texas, TEXAS BAR JOURNAL, Editorial Board Committee (2001-2004).
- CALIFORNIA BANKRUPTCY JOURNAL (1995-2002).

**Selected board memberships**

- Claremont Graduate University Board of Trustees (2021-present) (serving on Academic Affairs, Audit, and Student Success committees, 2021-23); Vice-Chair, Audit and Risk Management Committee, 2022-2023); Chair, Audit and Risk Management Committee (2023-present).
- Setona Sub-HOA Board (President, 2021-present).
- Rice University, External Advisory Board, Center for Teaching Excellence (2019-present); Chair (2022-present).
- Nevada Board of Bar Examiners (2018-2020).
- Economic Club of Las Vegas (2017-present).
- National Museum of Organized Crime & Law Enforcement ("The Mob Museum") (2013-2022); Secretary of the Board (2016-2022); Member, Advisory Council (2022-present).
- JURIST Board of Directors (http://jurist.law.pitt.edu/) (2008-2014).
- American Bankruptcy Institute Board of Directors (2008-2017); Executive Committee (2012-2016); Vice President of Research Grants (2013-2016).
- American Board of Certification (board certification for bankruptcy lawyers) (2007-2014) (Dean of Faculty, 2011-2013).
- Association of Rice Alumni Board (2006-2009).
- NALP Foundation for Law Career Research and Education (2005-2009).
- Texas Center for Legal Ethics (2004-2006).
- Texas Supreme Court Historical Society (2004); Advisory Board (2004-2006).
- Vinson & Elkins Women's Initiative Advisory Board (2003-2010).
- Houston Area Women's Center (2003-2006).

- Advisory Council Member, WWW United, Inc. (2002-2006).
- Texas Environmental Health Institute (a joint project of the Texas Department of Health & the Texas Natural Resource Conservation Commission, which is the Texas Commission on Environmental Quality (TCEQ)) (2002-2004).
- Houston World Affairs Council (2002-2005).
- Houston Hillel (2002-2007).
- Mayor's Advisory Board of World Energy Cities Partnership (2001-2004).
- Houston Disaster Relief Advisory Board (2001-2004).
- Houston Chapter of the Texas General Counsel Forum (2001-2005).
- Anti-Defamation League Southwest Regional Board (2001-2006).
- Law School Admission Council Board of Trustees (2001-2004).

**Selected service activities and memberships**

- Member, Foundational Subject Requirement and Performance Test Task Force, Nevada Supreme Court Bar Licensing Commission (2023-present).
- Member, American Bar Association's Business Law Section, Corporate Governance Committee, Academic Affairs Subcommittee (2022-present).
- Member, Association of Professional Responsibility Lawyers (2022-present; 2014-16).
- (Co-Chair (with Joseph R. Tiano, Jr.) of SALI project to develop a bankruptcy taxonomy (2021-present) (sali.org).
- Member, Operation Stand-By, militaryprobono.org (2021-present).
- Secretary and Reporter, American Bankruptcy Institute's Task Force for Veterans and Servicemembers Affairs (2018-present).
- Member, Federal Bar Association's Professional Ethics Committee (2018-present); Ethics Hotline subcommittee (2018-2019); Co-Chair, Speakers' Bureau, 2019-present).
- Member, Heterodox Academy (2017-present).
- Member, Society for Applied Anthropology (2017-present).
- Member, National Association of Legal Fee Analysts (2014-2018) (resigned).
- Member, Law School Admission Council Diversity Retention Workshop 2015 Planning Work Group (2014-2015).
- Member, Federalist Society (2013-present).
- Member, Federal Bar Association (2012-present).
- Member, Advisory Committee to the American Bankruptcy Institute's Commission to Study the Reform of Chapter 11 (2012-2015) (Governance Subcommittee).
- Co-Reporter, American Bankruptcy Institute's National Ethics Standards Task Force (2011-2013).
- Co-Chair, American Bankruptcy Institute's Task Force on Young and New Members (2011-2012).
- Association of Media and Entertainment Counsel, Law School Section (Co-Chair, 2010-2011; member and temporary Co-Chair, 2012-2013); member, Law School Advisory Board (2014); Chair, Law School Advisory Board (January 2018-present).

- American Bar Association, Section on Legal Education, Committee on Law School Administration (2008-2010); Chair-Elect (2010); Chair (2011-2013).
- American Bar Association, Section on Business Law, Committee on Corporate Counsel, Subcommittee on Corporate Governance (co-chair, with Roberta Torian) (2007-2010).
- Advisory Committee, American Bankruptcy Institute's consumer bankruptcy fee study (advisor to Professor Lois Lupica) (2008-2011).
- Rice Alumni Volunteers for Admission (2007-present) and liaison for RAVA to Association of Rice Alumni Board (2007-2009); involved in Rice Annual Fund solicitations since 2007.
- Advisory Committee, American Bankruptcy Institute's Chapter 11 fee study (advisor to Professor Stephen Lubben) (2005-2007).
- American Bankruptcy Institute's Task Force on Pro Bono (2007).
- American Bar Association's Task Force on Attorney Discipline (2005).
- Planning committee for 2007 Annual Meeting of Association of American Law Schools, *Workshop on The Ratings Game* (2006-2007).
- City of Houston Mayor's Pension Governance Advisory Committee (2004-2006).
- American Bar Association, Advisory Group on Loan Repayment, Standing Committee on Legal Aid & Indigent Defendants (SCLAID) (2003-2006).
- Faculty member, ABA New Deans' School (May-June 2003, June 2004, and June 2005).
- Advisory Committee, Baylor College of Medicine-UH Law Center MD/JD Program (2004-2006).
- Academic advisor, National Governmental Affairs Committee, Commercial Law League of America (CLLA) (2002-2006).
- Co-chair (with Dean Stuart Deutsch), ABA Deans' Workshop (for mid-year ABA meeting in 2003).
- Advisory Committee, *The Birth of the Dot-Com Era,* project for the Library of Congress (Project Manager, Prof. David Kirsch, University of Maryland) (advising the Library of Congress on what to do with the records of now-defunct law firm of Brobeck, Phleger & Harrison) (2004-2007).
- National Association of Corporate Directors (2004-2006).
- Commercial Law League of America, Professional Responsibility Committee (2003-2005).
- Member, ABA Commission on Loan Repayment & Forgiveness (2001-2003).
- Member, AALS Professional Development Committee (2000-2003).
- Communication Skills Committee, ABA Section of Legal Education and Admissions to the Bar (1998-2002).
- Chair, AALS Planning Committee for the *Mini-Workshop on Major Issues of the 21st Century: the Impact on the Legal Academy and Law Students* (1999-2000).
- Member, Law School Admission Council (LSAC) Services & Programs Committee (1999-2000), Workgroup on Alternative Admissions Models (2000-2003), and Gay, Lesbian, Bisexual & Transgendered Issues Workgroup (2000-2001).
- Nebraska State Bar Association (1999-present).
- National Association of College & University Attorneys (1998-2006).
- Commercial Law League of America (1998-present).
- Ohio State Bar Association (1997-present).

- American Bankruptcy Institute (1994-present).
- AIDS Legal Referral Panel of the Bar Association of San Francisco (1989-91).
- Bar Association of San Francisco (1987-91).
- American Bar Association (1987-present).

## EXPERT AND EXPERT WITNESS ACTIVITY

- Expert for Legal Aid Center of Southern Nevada in In the Matter of the Guardianship of the Person and Estate of Katherine June Jones, Case No. G-19-, 052263-A, District Court, Clark County, Nevada (2023-present).
- Expert for McDermott Will & Emery LLP in *In re* Power Property Management, Cause No. DC-19-00695, 134th Judicial District Court, Dallas County, Texas (2023-present).
- Expert for McDonald Carano LLP in 4R4 Sons, LLC, Horizon Kids dba Kidz, Kidz, Kidz v. Tru G. Wilhelm, Inc. and counterclaim Tru G. Wilhelm v. Horizon Kidz, 4R4 Sons, LLC, Chrisetta M. Rush and Arthur T. Rush, individually and in their capacities as trustees of the Rush Family Revocable Trust (2022-present).
- Expert for Shumaker, Loop & Kendrick, LLP, in Adela 117, LLC v. JP Morgan Chase Bank, Case No. 2021-CF-004270-NC, Circuit Court of the Twelfth Judicial Circuit in and for Sarasota County, Florida (2022-2023) (testified in deposition and at trial).
- Expert for The Claro Group in *In re* Diocese of Camden, New Jersey, Case No. 20-21257, United States Bankruptcy Court, District of New Jersey (2022-present).
- Expert for Lowenstein Sandler LLP in *In re* Diocese of Camden, New Jersey, Case No. 20-21257, United States Bankruptcy Court, District of New Jersey (2022).
- Expert for Wynn Resorts and Orrick Herrington & Sutcliffe LLP in Nielsen v. Wynn Resorts, Ltd., Case No. A-19-803879-C, Eighth Judicial District Court, Clark County, NV (2022-present).
- Expert for Lipson Neilson PC in Estate of Tony Hsieh v. Premsrirut, Clark County District Court, Case No. A-22-847455-B, Las Vegas, NV (2022-present).
- Expert for Shumaker, Loop & Kendrick, LLP, in Adela 117, LLC and Newport Sports Mgmt., Inc. v. JPMorgan Chase Bank et al., Case No., 2021-CA-004270-NC, Circuit Court of the Twelfth Judicial Circuit in and for Sarasota County, Florida (2022).
- Expert for Krevolin & Horst Law Firm in Blackhall Real Estate, LLC v. Smith, JAMS Arbitration No. 1440007245, Atlanta, Georgia (2021).
- Expert for the United States Trustee in *In re* Star Mountain Resources, Inc., Case No. 2:18-bk-01594-DPC, United States Bankruptcy Court for the District of Arizona (2021).
- Expert for the Chapter 7 Trustee in *In re* Green-Light International, LLC, Case No. 2:17-bk-18265-BB, United States Bankruptcy Court for the Central District of California (2021).
- Consultant for law firms regarding a disclosure issue (2021).
- Expert for Beasley Allen Law Firm in *In re* Imerys Talc America, Inc., Case No. 19-10289, United States Bankruptcy Court for the District of Delaware (2020-present) and *In re* LTL Management LLC, Case No. 21-30589, United States Bankruptcy Court for the Western District of North Carolina, transferred to the United States Bankruptcy Court for the District of New Jersey (2021-present).

- Expert for Bonds Ellis Eppich Schafer Jones LLP in *In re* Highland Capital Management, L.P., Case No. 19-34054, United States Bankruptcy Court for the Northern District of Texas (2020).

- Fee examiner in *In re* Zetta Jet USA, Inc. (2:17-bk-21386-SK) and *In re* Zetta Jet PTE, Ltd., Case No. 2:17-bk-21387-SK, United States Bankruptcy Court for the Central District of California—Los Angeles Division (2020-present).

- Expert for Sidley Austin LLP in *In re* Boy Scouts of America and Delaware BSA, LLC, United States Bankruptcy Court for the District of Delaware, Case No. 20-10343 (LSS) (2020-2022) (testified at hearing in 2020; testified in arbitration in 2022).

- Expert for Porter Hedges LLP in *In re* McDermott Int'l, United States Bankruptcy Court for the Southern District of Texas, Case No. 20-30336 (DRJ) (2020-present).

- Expert for Diamond McCarthy LLP and Snow Covered Capital, LLC in Snow Covered Capital, LLC v. Weidner, United States District Court for the District of Nevada, Case No. 2:19-cv-00595-JAD-NJK (2019-present) (testified at deposition).

- Expert for The Richter Firm and Shumaker, Loop & Kendrick in Wise v. Smith et al., Court of Common Pleas, State of South Carolina, Case No. 2019-CP-3300017 (2019-2020) (testified at deposition).

- Independent monitor for UpRight Law (2018-2023).

- Fee examiner in *In re* Toys "R" Us Property Company I, LLC, United States Bankruptcy Court for the Eastern District of Virginia, Case No. 18-31429 (KLP) (2018-2019).

- Fee examiner in *In re* Toys "R" Us, Inc., United States Bankruptcy Court for the Eastern District of Virginia, Case No. 17-34665 (KLP) (2018-2019).

- Expert for the Trustee in two *In re* ICPW Liquidation Corp. cases, United States Bankruptcy Court for the Central District of California, Case Nos. 1:17-bk-12408-MB and 1:17-bk-12409-MB (2018).

- Expert for Hoover Slovacek LLP in Midstates Petroleum Company v. Production Specialists, Inc. dba Regal Oilfield Sup., United States Bankruptcy Court for the Southern District of Texas, Case No. 4:16-bk-32237 (2017-2019).

- Expert for Panish Shea & Boyle LLP in Moradi v. Nevada Property 1, LLC, District Court, Clark County, Nevada, Case No. A-14-698824-C (2017).

- Expert for Diamond State Insurance Company in Gieseke v. Diamond State Insurance Company, U.S. District Court for the District of Nevada, Case No. 3:16-cv-00103-MMD-WGC (2016).

- Expert for Mar-Bow Value Partners, LLC, and Lakeview Capital, Inc., on a confidential matter involving Federal Rule of Bankruptcy Procedure 2014 (2016-present).

- Independent member of Fee Committee, *In re* Caesars Entertainment Operating Co., Inc., U.S. Bankruptcy Court, Northern District of Illinois, Case No. 15-01145 (ABG) (2015-2018).

- Expert for Craig Marquiz in Home Gambling Network, Inc. v. Piche, United States District Court for the District of Nevada, Case No. 2:05-cv-00610-DAE-VCF (2015).

- Expert for the Debtor in *In re* The Catholic Bishop of Spokane, a/k/a The Catholic Diocese of Spokane, United States Bankruptcy Court, Eastern District of Washington, Case No. 04-08822-FPC11 (2014).

EXHIBIT 3, PAGE 230

- Expert for the Trustee in *In re* Fundamental Long Term Care, Inc., United States Bankruptcy Court, Middle District of Florida, Case No. 8:11-bk-22258-MGW (2014-2015) (testified at deposition and at trial).

- Expert for the Liquidating Trustee in Mukamal v. Fulbright & Jaworski L.L.P (*In re* Palm Beach Finance Partners, L.P. and Palm Beach Finance Partners II, L.P.), United States Bankruptcy Court, Southern District of Florida, Case No. 09-36379-BKC-PGH (2014) (withdrew due to scheduling issues).

- Expert for the law firm of Lipson Neilson Cole Seltzer Garin, P.C. in a case involving conflicts of interest (2014).

- Consultant for the Liquidating Trust for *In re* Residential Capital, LLC, United States Bankruptcy Court, Southern District of New York, Case No. 12-12020 (MG), regarding the reasonableness of fees (2014).

- Expert for the law firm of Frank J. Cremen in Grievance File #SG 1-1156, State Bar of Nevada (2013-2014) (testified at hearing).

- Expert for Irell & Manella LLP, in State of Nevada v. Gary Trafford, et al., Clark County District Court, Case No. C-11-277573-1 (2013).

- Expert for a Nevada law firm (firm and client names kept confidential) in a matter involving attorney disciplinary procedures (2012).

- Expert for the Fee Examiner in Matter of Lehman Brothers Holdings, Inc., U.S. Bankruptcy Court, Southern District of New York, Case No. 08-13555-jmp (2012).

- Expert for the Fee Examiner in *In re* Motors Liquidation Co. (f/k/a General Motors Corp.), U.S. Bankruptcy Court, Southern District of New York, Case No. 09-50026 (2011-2012).

- Expert for Alverson Taylor Mortensen & Sanders in Stanish et al. v. Catholic Healthcare West, Nevada District Court, Clark County, Case No. A-11-639674-C (2011).

- Fee examiner in *In re* Station Casinos, Inc., U.S. Bankruptcy Court, District of Nevada, Case Nos. BK-09-52477 through BK-11-51219 (2011).

- Expert for the Office of the United States Trustee in three cases:  *In re* Mark Andrew Brown, U.S. Bankruptcy Court, Western District of Maryland, Case No. 09-44254-jwv7; *In re* Tracy L. Quarm, U.S. Bankruptcy Court, Northern District of Ohio, Case No. 09-20498; and *In re* John W. Young, U.S. Bankruptcy Court, Northern District of Ohio, Case No. 10-11404 (2010) (testified in discovery depositions and at trial; deposition and trial testimony done via videotape).

- Expert for the Trustee in The Pappg Grantor Trust v. Scott (*In re* Baltimore Emergency Services II, LLC, et al.), U.S. Bankruptcy Court, District of Maryland, Adversary No. 03-8294-esd (2010).

- Expert for Lionel, Sawyer & Collins in Michael Racusin v. Lionel Sawyer & Collins, American Arbitration Association, Case No. 79 194 Y 00108 08 (2009-2010) (testified in arbitration).

- Expert for the Reorganized Debtor in *In re* ASARCO, LLC, et al., U.S. Bankruptcy Court, Southern District of Texas, Case No. 05-21207 (2010) (testified at trial).

- Expert for BuckleySandler LLP in Pulte Homes, Inc. v. Terry Goddard, In His Official Capacity as Attorney General for the State of Arizona and Catherine Cortez Masto, In Her Official Capacity as Attorney General for the State of Nevada, D.C. Circuit, Civil Action No. 1:10-cv-00377 (2010).

- Court's fee expert and chair of the Fee Review Committee in *In re* Pilgrim's Pride Corp., U.S. Bankruptcy Court, Northern District of Texas, Case No. 08-45664 (DML) (2009-2010) (testified at hearing).

- Expert for plaintiff in Judy M. Jackson, M.D. v. Ira Levine et al., Nevada District Court, Clark County, Case No. A538983 (2009-2010) (testified in deposition and at trial).

- Expert for the Trustee in Asset Funding Group, L.L.C., Scobar Adventures, L.L.C., AFG Investment Fund 2, L.L.C., and HW Burbank, L.L.C. v. Adams and Reese, L.L.P., U.S. District Court, Eastern District of Louisiana, Case No. 07-2965 (2009) (testified in deposition; made available for trial, but case settled).

- Expert for Clausen Miller in *In re* Raymond Professional Group, Inc. (Raymond Professional Group, Inc. v. William A. Pope Company), Adv. No. 07-A-00639, U.S. Bankruptcy Court, Northern District of Illinois (2008-2009) (testified in deposition and at hearing).

- Expert for the plaintiff in Todd v. Guidance Software, Inc., U.S. District Court, Central District of California, Case No. SACV 08-1354 JVS (ANx) (2008-2009).

- Expert for the Debtor in Sports Shinko Co. v. Franklin K. Mukai, U.S. District Court, D. Hawaii, Case No. CV 04-00127 ACK/BMK (2007-2008).

- Expert for the Trustee in *In re* Mego Financial Corp., et al., U.S. Bankruptcy Court, D. Nev., Case Nos. BK-N-03-52300-GWZ through BK-N-03-52304-GWZ and BK-N-03-52470-GWZ through BK-N-03-52474-GWZ (2007-2008) (testified at deposition).

- Expert for Pillsbury Winthrop in *In re* SONICBlue Incorporated, U.S. Bankruptcy Court, Northern District of California, Case Nos. 03-51775 through 03-51778 MM (2007) (made available to testify in court early in the case; did not testify).

- Expert for the Trustee in *In re* Southwest Florida Heart Group, P.A., U.S. Bankruptcy Court, Middle District of Florida, Case No. 9:05-bk-17167-ALP (2007) (testified in deposition).

- Expert for Beirne, Maynard & Parsons in Brazos Electric Power Cooperative, Inc. v. Tenaska IV Texas Partners and related cases (2003-2004; 2006-2007) (testified in depositions).

- Expert for Beirne, Maynard & Parsons in Hicks v. Charles Pfizer & Co., U.S. District Court, Eastern District of Texas, Civil Action No. 1:04CV201 (2006).

- Expert for Benjamin Hall, Esq., in Costilla Energy, Inc., by and through its litigation trustee, George Hicks v. Joint Energy Development Investments II, 49th Judicial District, Zapata County, Texas (2006-2008) (testified in deposition).

- Expert for Winstead, Secrest & Minick in an issue involving conflicts of interest (2005).

- Expert for Beckley, Singleton in Fremont Investment & Loan v. Beckley Singleton, Chtd. and Sidney Bailey, U.S. District Court, D. Nevada, Case No. CV-S-03-1406-JCM-RJJ (2003) (2005-2006) (testified in deposition).

- Expert for the debtor in *In re* ACandS, Inc., U.S. Bankruptcy Court, D. Delaware, Case No. 02-12687 (2004-2005) (testified at hearing).

- Court's fee expert and chair of the Fee Review Committee in *In re* Mirant Corporation, U.S. Bankruptcy Court, Northern District of Texas, Case No. 03-46590 (2003-2006; 2011-2012) (testified in deposition and at hearing).

- Expert witness for Latham & Watkins regarding Section 414 of H.R. 333 (changes in "disinterestedness" standard of 11 U.S.C. § 101(14)) (March-April 2003).

- Expert witness for the Office of Disciplinary Counsel, *In re* Charles William Ewing, Case No. 97-5, before the Board of Commissioners on Grievances and Discipline of the Bar of the Supreme Court of Ohio (1998).

## PUBLIC TESTIMONY

- Testified at the June 2012 public meeting of the United States Trustee Program regarding the proposed new fee guidelines for larger chapter 11 cases (testimony available at http://www.justice.gov/ust/eo/rules_regulations/guidelines/docs/proposed/Prof_Rapoport_Comment.pdf, http://www.justice.gov/ust/eo/rules_regulations/guidelines/docs/proposed/Prof_Rapoport_SupplementalComment.pdf, and http://www.justice.gov/ust/eo/rules_regulations/guidelines/docs/proposed/Prof_Rapoport_Comment2.pdf; transcript available at http://www.justice.gov/ust/eo/rules_regulations/guidelines/docs/proposed/Transcript_June4_Public_Meeting.pdf; Director Clifford J. White III's statement on the adopted guidelines, available at http://www.justice.gov/ust/eo/rules_regulations/guidelines/docs/Fee_Guidelines_Cliff_White_Statement.pdf.

## ADVICE COLUMN

- "Ms. Ps and Qs": ethics advice column for the National Association of Chapter 13 Trustees (2011-present).

## SELECTED AMICUS BRIEFS

- *Brief for Amici Erwin Chemerinsky and Other Legal Scholars in Support of Appellees,* Aearo Technologies, LLC v. Those Parties Listed on Appendix A to the Complaint and Jone & Jane Does, 1-1000 (In re Aearo Technologies, LLC), United States Court of Appeals for the Seventh Circuit, Case No. 22-2606 (Feb. 1, 2023).
- *Brief of 83 Legal Ethics Professors as Amici Curiae in Support of Hearing En Banc,* United States v. Varner, United States Court of Appeals for the Fifth Circuit, Case No. 19-40016 (Mar. 20, 2020).
- *Amicus Brief of Neutral Fee Examiners Supporting Neither Party,* Baker Botts L.L.P. v. ASARCO LLC, Case No. 14-103, United States Supreme Court (Dec. 10, 2014), 2014 WL 6984132.
- *Brief of Amici Curiae, In re* David Marshall Brown, Case No. 12-Cv-60016-KAM, United States District Court, Southern District of Florida (filed by co-counsel George Castrataro) (April 11, 2012), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2038267.

- *Brief in Support of Respondent for Amici Curiae Professors Richard Aaron, Laura Beth Bartell, Jagdeep S. Bhandari, Susan Block-Lieb, Robert D'Agostino, Jessica Dawn Gabel, Kenneth N. Klee, George W. Kuney, C. Scott Pryor, Nancy B. Rapoport, Marie T. Reilly, Lynne F. Riley, Keith Sharfman, and Michael Sousa,* RadLAX Gateway Hotel, LLC and RadLAX Gateway Deck, LLC v. Amalgamated Bank, Case No. 11-166, United States Supreme Court (March 5, 2012).
- *Brief of Legal Ethics Professors and Practitioners and the Ethics Bureau at Yale as Amici Curiae in Support of Petitioner,* Maples v. Thomas, Case No. 10-63, United States Supreme Court (May 25, 2011).
- *Brief of Amicus Curiae,* Warren v. Seidel, United States District Court for the District of Ohio, Case No. 2:10-cv-01049-MHW (2010), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1843496.
- *Brief of 30 Leading Ethicists as Amici Curiae in Support of the Petitioner,* Charles Dean Hood v. State of Texas, Case No. 09-8610, United States Supreme Court (February 18, 2010), available at 2010 WL 638469.
- *Brief of Amicus Curiae,* Danny Joe McClure and Kimberly Deskins McClure, Plaintiffs, v. Bank of America, Creditors Financial Group, LLC, and Peter Rebelo, Defendants, Bankr. N.D. Tex. 2010, Adv. No. 08-04000-DML, available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1550353.

## INTERESTS (INCLUDING SELECTED BALLROOM DANCE COMPETITION RESULTS)

- Ailurophile; Jane Austen and Aaron Sorkin fan.
- Obsessed with the history of the Titanic and with the U.S. space program.

*Ballroom dance*

- Pro/am competition results:

  o United States Dance Championships (ballroom dance's national competition):

    ▪ 5th in S1 US Open to the World Pro/Am Rhythm Scholarship Championship; 4th in "C" Open to the World 9-Dance Championship (with Igor Dogoter) (2022).
    ▪ 4th in S1 Open Gold US National Pro/Am Rhythm Scholarship Championship; 5th in S1 Open Gold US National Pro/Am Smooth Scholarship Championship; 4th in "C" Open Gold US Open to the World 9-Dance Championship (with Igor Dogoter) (2021).
    ▪ 6th in "C" U.S. National Open Gold Rhythm Scholarship & 4th in "C" Open to the World Pro/Am American Style 9-Dance Championship (with Sergei Shapoval) (2019).
    ▪ 4th in "C" Open to the World Pro/Am American Style 9-Dance Championship (with Sergei Shapoval) (2018).

- 2nd in "C" Open to the World Pro/Am American Style 9-Dance Championship (with Sergei Shapoval) (2017).
- 5th in "C" Open to the World Pro/Am American Style 9-Dance Championship (with Sergei Shapoval) (2016).
- 4th in the "C" Open to the World Pro/Am American Style 9-Dance Championship (with Sergei Shapoval) (2015).
- 5th in U.S. Open Pro/Am American Style 9-Dance Championship "B" Division (missed 4th by a Rule 11 tie) & 1st in U.S. Open Pro/Am Rising Star American Smooth Competition "B" Division (with Sergei Shapoval) (2014).
- 6th in U.S. National Pro/Am American Rhythm 5 Dance Scholarship "B" Division; 2nd in U.S. Open Pro/Am American Style 9-Dance Championship ("B" Division") and 5th in U.S. Open Pro/Am Rising Star American Smooth Competition (with Sergei Shapoval) (2013).
- 5th in Open "B" 9-Dance Championship and 6th in Rising Star "B" American Smooth Competition (with Sergei Shapoval) (2012).
- 4th in Open "B" Rhythm Scholarship and 4th in Open "B" 9-Dance Championship (with Sergei Shapoval) (2011).

o Las Vegas Lights Dance Challenge: 1st in Open Gold American Style 6-Dance; 1st in Open CM Rhythm Multi-Dance; 1st in Open CM Smooth Multi-Dance; 1st in Open CM Rhythm Scholarship; 1st in Open CM Smooth Scholarship (with Igor Dogoter) (2022).

o Vegas Open: 2d in S1 Open Multi-dance Rhythm; 2n in Senior Open Rhythm Scholarship; 2d in S1 Open Multi-dance Smooth; 1st in Open "C" 9-dance Scholarship; 3rd in S1 Open Smooth Scholarship (with Igor Dogoter) (2023); 1st in S1 9-Dance; 2d in S1 Open Rhythm Multi-Dance Challenge; 2d in S1 Open Rhythm Scholarship; 2d in S1 Open Smooth Multi-Dance Challenge; 4th in S1 Open Smooth Scholarship (with Igor Dogoter) (2022).

o Holiday Dance Classic: 2d in "C" DanceSport Series Rhythm Championship; 6th in "C" Open Rhythm Scholarship; 2d in "C" DanceSport Series Smooth Championship (2022) (with Igor Dogoter); 4th in "C" DanceSport Series Rhythm Championship; 5th in "C" DanceSport Series Smooth Championship; 5th in S1 Smooth Scholarship (with Igor Dogoter) (2021).

o Great Gatsby Gala: 1st in World DanceSport Series "S1" American Rhythm; 2d in 9-Dance; 2d in World DanceSport Series "S1" American Smooth; 4th in "S1" Scholarship American Smooth (missed 3d by a Rule 11 tie) (with Igor Dogoter) (2021).

o Viva Las Vegas: 1st in World Challenge American Smooth Open (L-B); 1st in World Challenge American Rhythm Open (L-B); top Gold student (with Igor Dogoter) (2022); 1st in World Challenge American Smooth Open (L-B); 2d in World Challenge American Rhythm Open (L-B) (with Igor Dogoter) (2021).

- Ballroom Beach Bash: 3[d] in "Senior Open Rhythm Scholarship; 2[d] in "C" Open 9-dance; 4th in Senior Open Smooth Scholarhip (with Igor Dogoter) (2023); 1st in S1 Open Rhythm Scholarship, 1st in "C" 9-dance; 4th in SR Open Smooth (with Igor Dogoter) (2022); 1st in "C" Open Gold Smooth Scholarship; 7th in "C" Open Advanced Smooth Scholarship (with Igor Dogoter) (2021).

- California Open DanceSport Championships (online competition):  3[d] in "B" Open Smooth Championship & 2[d] in "C" Best of the Best Open Smooth (with Igor Dogoter) (2021).

- Fred Astaire National Dance Championships:  4th place in Open B Rhythm Scholarship, 2nd place in American Rhythm 9-Dance Division, and 6th place in Open B Smooth Scholarship (with Sergei Shapoval) (2018).

- Fred Astaire World Championships:  5th in Open B Rhythm Scholarship & 6th in Open B Smooth Scholarship (with Sergei Shapoval) (2017).

- Emerald Ball:  5th in Open S1 Rhythm Championship and 5th in Open B American 9-Dance (with Igor Dogoter) (2023); 5th in Open B American 9-Dance Championship (2019) (with Sergei Shapoval) (2019); 4th in Open B American Rhythm Scholarship (with Sergei Shapoval) (2011).

- California Star Ball:  1st in Pro/Am Open Rhythm Scholarship Competition and 3rd in the Open American Smooth Competition (2010); 1st in Open Rhythm Scholarship (with Sergei Shapoval) (2009).

- Embassy Ball:  1st in the B Division, Open-to-the-World Latin Pro/Am Competition (with Billy King) (2005).

- Ohio Star Ball:  DanceSport SuperBowl Region 5 Representative, Ladies' B Latin (with Billy King) (2005); 1st in International Latin (B) Scholarship (with Bill Sparks) (1993).

- Amateur competition results:

  - Vegas Open Dance Challenge:
    - 2023, 3rd in Pre-Novice Smooth; 5th in Novice Smooth (with Ben Ow).

  - Holiday Dance Classic:
    - 2022, 1st in Amateur "C" Smooth Novice (with Ben Ow).

  - United States Amateur Dance Sport Competition (national amateur ranking competition):

    - 1996, 3rd place, American Rhythm Division (with Christopher Holgate).

- 1994 & 1995, 2nd place, American Rhythm Division (with Christopher Holgate).

  o Ohio Star Ball:  1st in Amateur American Rhythm & 6th place, Amateur American Smooth Division (with David Freeman) (1993).

**PERSONAL INFORMATION**

- Native Texan (born in Bryan, Texas).
- Married to Jeffrey D. Van Niel; no children; two cats (Diana Prince and Shadow Grace).

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:      655 W. Broadway, Suite 800, San Diego, California  92101

A true and correct copy of the foregoing document entitled (*specify*):

**DECLARATION OF NANCY RAPOPORT IN SUPPORT OF MOTION OF TRUSTEE RICHARD A. MARSHACK FOR ENTRY OF AN ORDER (A) APPROVING SALE OF ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS PURSUANT TO 11 U.S.C. § 363(b) AND (B) APPROVING ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND OTHER AGREEMENTS**

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.   TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On July 18, 2023, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒    Service information continued on attached page

**2.   SERVED BY UNITED STATES MAIL**:
On July 18, 2023, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐    Service information continued on attached page

**3.   SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on July 18, 2023, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**JUDGE'S COPY**
The Honorable Scott C. Clarkson
United States Bankruptcy Court
Central District of California
Ronald Reagan Federal Building and Courthouse
411 West Fourth Street, Suite 5130 / Courtroom 5C
Santa Ana, CA 92701-4593

☐    Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| July 18, 2023 | Caron Burke | /s/ Caron Burke |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August  2010*                                                      **F 9013-3.1.PROOF.SERVICE**

1.    **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

Eric Bensamochan on behalf of Interested Party Courtesy NEF
eric@eblawfirm.us, G63723@notify.cincompass.com

Eric Bensamochan on behalf of Interested Party Eric Bensamochan
eric@eblawfirm.us, G63723@notify.cincompass.com

Ronald K Brown on behalf of Creditor SDCO Tustin Executive Center, Inc.
ron@rkbrownlaw.com

Christopher Celentino on behalf of Plaintiff Richard A. Marshack
christopher.celentino@dinsmore.com, caron.burke@dinsmore.com

Christopher Celentino on behalf of Trustee Richard A Marshack (TR)
christopher.celentino@dinsmore.com, caron.burke@dinsmore.com

Shawn M Christianson on behalf of Interested Party Courtesy NEF
cmcintire@buchalter.com, schristianson@buchalter.com

Randall Baldwin Clark on behalf of Interested Party Randall Baldwin Clark
rbc@randallbclark.com

Leslie A Cohen on behalf of Interested Party Courtesy NEF
leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com;clare@lesliecohenlaw.com

Jenny L Doling on behalf of Interested Party INTERESTED PARTY
jd@jdl.law, dolingjr92080@notify.bestcase.com;15994@notices.nextchapterbk.com

Daniel A Edelman on behalf of Creditor Carolyn Beech
dedelman@edcombs.com, courtecl@edcombs.com

Christopher Ghio on behalf of Plaintiff Richard A. Marshack
christopher.ghio@dinsmore.com, Kristina.Heller@Dinsmore.com

Christopher Ghio on behalf of Trustee Richard A Marshack (TR)
christopher.ghio@dinsmore.com, Kristina.Heller@Dinsmore.com

Jeffrey I Golden on behalf of Creditor Anaheim Arena Management, LLC
jgolden@go2.law,
kadele@ecf.courtdrive.com;cbmeeker@gmail.com;lbracken@wgllp.com;gestrada@wgllp.com;golden.jeff
reyi.b117954@notify.bestcase.com

Jeffrey I Golden on behalf of Creditor Anaheim Ducks Hockey Club, LLC
jgolden@go2.law,
kadele@ecf.courtdrive.com;cbmeeker@gmail.com;lbracken@wgllp.com;gestrada@wgllp.com;golden.jeff
reyi.b117954@notify.bestcase.com

Jeffrey I Golden on behalf of Interested Party Courtesy NEF
jgolden@go2.law,
kadele@ecf.courtdrive.com;cbmeeker@gmail.com;lbracken@wgllp.com;gestrada@wgllp.com;golden.jeff
reyi.b117954@notify.bestcase.com

Richard H Golubow on behalf of Creditor Debt Validation Fund II, LLC
rgolubow@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

Richard H Golubow on behalf of Creditor MC DVI Fund 1, LLC
rgolubow@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com

Richard H Golubow on behalf of Creditor MC DVI Fund 2, LLC
rgolubow@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com

D Edward Hays on behalf of Interested Party Courtesy NEF
ehays@marshackhays.com,
ehays@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@
ecf.courtdrive.com

D Edward Hays on behalf of Trustee Richard A Marshack (TR)
ehays@marshackhays.com,
ehays@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@
ecf.courtdrive.com

Alan Craig Hochheiser on behalf of Creditor City Capital NY
ahochheiser@mauricewutscher.com, arodriguez@mauricewutscher.com

Garrick A Hollander on behalf of Creditor Debt Validation Fund II, LLC
ghollander@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com

Garrick A Hollander on behalf of Creditor MC DVI Fund 1, LLC
ghollander@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com

Garrick A Hollander on behalf of Creditor MC DVI Fund 2, LLC
ghollander@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com

Razmig Izakelian on behalf of Creditor OHP-CDR, LP
razmigizakelian@quinnemanuel.com

Joon M Khang on behalf of Debtor The Litigation Practice Group P.C.
joon@khanglaw.com

Ira David Kharasch on behalf of Interested Party Ad Hoc Consumer Claimants Committee
ikharasch@pszjlaw.com

Ira David Kharasch on behalf of Interested Party Courtesy NEF
ikharasch@pszjlaw.com

Meredith King on behalf of Interested Party Courtesy NEF
mking@fsl.law, ssanchez@fsl.law;jwilson@fsl.law

Nicholas A Koffroth on behalf of Creditor Committee Committee of Unsecured Creditors
nkoffroth@foxrothschild.com, khoang@foxrothschild.com

David S Kupetz on behalf of Defendant Marich Bein, LLC
David.Kupetz@lockelord.com, mylene.ruiz@lockelord.com

David S Kupetz on behalf of Interested Party Courtesy NEF
David.Kupetz@lockelord.com, mylene.ruiz@lockelord.com

Christopher J Langley on behalf of Interested Party Courtesy NEF

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                      **F 9013-.1.PROOF.SERVICE**

EXHIBIT 3, PAGE 240

chris@slclawoffice.com,
omar@slclawoffice.com;langleycr75251@notify.bestcase.com;ecf123@casedriver.com

Daniel A Lev on behalf of Defendant Consumer Legal Group, P.C.
daniel.lev@gmlaw.com, cheryl.caldwell@gmlaw.com;dlev@ecf.courtdrive.com

Daniel A Lev on behalf of Interested Party Courtesy NEF
daniel.lev@gmlaw.com, cheryl.caldwell@gmlaw.com;dlev@ecf.courtdrive.com

Daniel A Lev on behalf of Interested Party Liberty Acquisitions Group Inc.
daniel.lev@gmlaw.com, cheryl.caldwell@gmlaw.com;dlev@ecf.courtdrive.com

Michael D Lieberman on behalf of Creditor Phillip A. Greenblatt, PLLC
mlieberman@lipsonneilson.com

Yosina M Lissebeck on behalf of Trustee Richard A Marshack (TR)
Yosina.Lissebeck@Dinsmore.com, caron.burke@dinsmore.com

Richard A Marshack (TR)
pkraus@marshackhays.com, rmarshack@iq7technology.com;ecf.alert+Marshack@titlexi.com

Laila Masud on behalf of Interested Party Courtesy NEF
lmasud@marshackhays.com, lmasud@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com

Laila Masud on behalf of Interested Party Richard A. Marshack
lmasud@marshackhays.com, lmasud@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com

Laila Masud on behalf of Plaintiff Richard Marshack
lmasud@marshackhays.com, lmasud@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com

Laila Masud on behalf of Trustee Richard A Marshack (TR)
lmasud@marshackhays.com, lmasud@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com

Kenneth Misken on behalf of U.S. Trustee United States Trustee (SA)
Kenneth.M.Misken@usdoj.gov

Byron Z Moldo on behalf of Interested Party Byron Moldo
bmoldo@ecjlaw.com, amatsuoka@ecjlaw.com,dperez@ecjlaw.com

Alan I Nahmias on behalf of Interested Party Courtesy NEF
anahmias@mbn.law, jdale@mbnlawyers.com

Victoria Newmark on behalf of Interested Party Courtesy NEF
vnewmark@pszjlaw.com

Queenie K Ng on behalf of U.S. Trustee United States Trustee (SA)
queenie.k.ng@usdoj.gov

Keith C Owens on behalf of Creditor Committee Committee of Unsecured Creditors
kowens@foxrothschild.com, khoang@foxrothschild.com

Teri T Pham on behalf of Attorney Teri Pham
tpham@epglawyers.com, ttpassistant@epglawyers.com

Douglas A Plazak on behalf of Defendant Greyson Law Center PC

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                    F 9013-.1.PROOF.SERVICE

EXHIBIT 3, PAGE 241

dplazak@rhlaw.com

Douglas A Plazak on behalf of Defendant Han Trinh
dplazak@rhlaw.com

Douglas A Plazak on behalf of Defendant Jayde Trinh
dplazak@rhlaw.com

Douglas A Plazak on behalf of Defendant Scott James Eadie
dplazak@rhlaw.com

Ronald N Richards on behalf of Defendant Consumer Legal Group, PC
ron@ronaldrichards.com, 7206828420@filings.docketbird.com

Ronald N Richards on behalf of Interested Party Courtesy NEF
ron@ronaldrichards.com, 7206828420@filings.docketbird.com

Gregory M Salvato on behalf of Creditor Mari Agape
gsalvato@salvatoboufadel.com,
calendar@salvatolawoffices.com;jboufadel@salvatoboufadel.com;gsalvato@ecf.inforuptcy.com

Gregory M Salvato on behalf of Interested Party Courtesy NEF
gsalvato@salvatoboufadel.com,
calendar@salvatolawoffices.com;jboufadel@salvatoboufadel.com;gsalvato@ecf.inforuptcy.com

Olivia Scott on behalf of Creditor Azzure Capital LLC
olivia.scott3@bclplaw.com

Olivia Scott on behalf of Creditor Hi Bar Capital LLC
olivia.scott3@bclplaw.com

Jonathan Serrano on behalf of Plaintiff Richard A. Marshack
jonathan.serrano@dinsmore.com

Jonathan Serrano on behalf of Trustee Richard A Marshack (TR)
jonathan.serrano@dinsmore.com

Paul R Shankman on behalf of Attorney Paul R. Shankman
PShankman@fortislaw.com, info@fortislaw.com

Paul R Shankman on behalf of Creditor United Partnerships, LLC
PShankman@fortislaw.com, info@fortislaw.com

Leslie Skorheim on behalf of U.S. Trustee United States Trustee (SA)
leslie.skorheim@usdoj.gov

Howard Steinberg on behalf of Defendant BankUnited, N.A.
steinbergh@gtlaw.com, pearsallt@gtlaw.com;howard-steinberg-6096@ecf.pacerpro.com

Andrew Still on behalf of Interested Party Courtesy NEF
astill@swlaw.com, kcollins@swlaw.com

United States Trustee (SA)
ustpregion16.sa.ecf@usdoj.gov

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                    **F 9013-.1.PROOF.SERVICE**

Sharon Z. Weiss on behalf of Creditor Azzure Capital LLC
sharon.weiss@bclplaw.com, raul.morales@bclplaw.com,REC_KM_ECF_SMO@bclplaw.com

Sharon Z. Weiss on behalf of Creditor Hi Bar Capital LLC
sharon.weiss@bclplaw.com, raul.morales@bclplaw.com,REC_KM_ECF_SMO@bclplaw.com

Johnny White on behalf of Creditor Debt Relief Group, LLC
JWhite@wrslawyers.com, jlee@wrslawyers.com

Johnny White on behalf of Interested Party Courtesy NEF
JWhite@wrslawyers.com, jlee@wrslawyers.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-.1.PROOF.SERVICE**

EXHIBIT 3, PAGE 243

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:      655 W. Broadway, Suite 800, San Diego, California  92101

A true and correct copy of the foregoing document:  DECLARATION OF NANCY B. RAPOPORT IN SUPPORT OF **APPLICATION FOR AN ORDER PURSUANT TO 11 U.S.C. § 105 AND LBR 2016-1(d) AUTHORIZING THE RETENTION OF NANCY B. RAPOPORT AS FEE EXAMINER AND APPROVING STIPULATION GOVERNING SAME**

will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On August 5, 2024, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒      Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On August 5, 2024, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

YCIR Inc.
Hector Ocegueda
535 S Barranca St #4
Covina, CA 91723

☐      Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on August 5, 2024, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**JUDGE'S COPY - VIA FEDEX**
The Honorable Scott C. Clarkson
United States Bankruptcy Court
Central District of California
Ronald Reagan Federal Building and Courthouse
411 West Fourth Street, Suite 5130 / Courtroom 5C
Santa Ana, CA 92701-4593

☐      Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| August 5, 2024 | Caron Burke | /s/ Caron Burke |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August  2010*                                                    **F 9013-3.1.PROOF.SERVICE**

1.      **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

Kyra E Andrassy on behalf of Interested Party Courtesy NEF
kandrassy@raineslaw.com, bclark@raineslaw.com;jfisher@raineslaw.com

Bradford Barnhardt on behalf of Interested Party Courtesy NEF
bbarnhardt@marshackhays.com, bbarnhardt@ecf.courtdrive.com,alinares@ecf.courtdrive.com

Bradford Barnhardt on behalf of Plaintiff Richard A. Marshack
bbarnhardt@marshackhays.com, bbarnhardt@ecf.courtdrive.com,alinares@ecf.courtdrive.com

Bradford Barnhardt on behalf of Trustee Richard A Marshack (TR)
bbarnhardt@marshackhays.com, bbarnhardt@ecf.courtdrive.com,alinares@ecf.courtdrive.com

Eric Bensamochan on behalf of Creditor Affirma, LLC
eric@eblawfirm.us, G63723@notify.cincompass.com

Eric Bensamochan on behalf of Creditor Oxford Knox, LLC
eric@eblawfirm.us, G63723@notify.cincompass.com

Eric Bensamochan on behalf of Interested Party Courtesy NEF
eric@eblawfirm.us, G63723@notify.cincompass.com

Eric Bensamochan on behalf of Interested Party Eric Bensamochan
eric@eblawfirm.us, G63723@notify.cincompass.com

Michael Jay Berger on behalf of Defendant Leucadia Enterprises, Inc
michael.berger@bankruptcypower.com,
yathida.nipha@bankruptcypower.com;michael.berger@ecf.inforuptcy.com

Ethan J Birnberg on behalf of Defendant BMF Advance, LLC
birnberg@portersimon.com, kdwyer@portersimon.com

Ethan J Birnberg on behalf of Defendant Diverse Capital LLC
birnberg@portersimon.com, kdwyer@portersimon.com

Peter W Bowie on behalf of Trustee Richard A Marshack (TR)
peter.bowie@dinsmore.com, caron.burke@dinsmore.com

Ronald K Brown on behalf of Creditor SDCO Tustin Executive Center, Inc.
ron@rkbrownlaw.com

Christopher Celentino on behalf of Plaintiff Richard A. Marshack
christopher.celentino@dinsmore.com, caron.burke@dinsmore.com

Christopher Celentino on behalf of Trustee Richard A Marshack (TR)
christopher.celentino@dinsmore.com, caron.burke@dinsmore.com

Shawn M Christianson on behalf of Interested Party Courtesy NEF
cmcintire@buchalter.com, schristianson@buchalter.com

Randall Baldwin Clark on behalf of Interested Party Randall Baldwin Clark
rbc@randallbclark.com

Leslie A Cohen on behalf of Defendant Rosa Bianca Loli
leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com;clare@lesliecohenlaw.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August  2010*                                             **F 9013-3.1.PROOF.SERVICE**

EXHIBIT 3, PAGE 245

Leslie A Cohen on behalf of Interested Party Courtesy NEF
leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com;clare@lesliecohenlaw.com

Michael W Davis on behalf of Defendant Morning Law Group, P.C.
mdavis@dtolaw.com, ygodson@dtolaw.com

Anthony Paul Diehl on behalf of Interested Party Courtesy NEF
anthony@apdlaw.net,
Diehl.AnthonyB112492@notify.bestcase.com,ecf@apdlaw.net,9143954420@filings.docketbird.com

Ashley Dionisio on behalf of Other Professional Omni Agent Solutions
adionisio@omniagnt.com

Jenny L Doling on behalf of Interested Party INTERESTED PARTY
jd@jdl.law,
dolingjr92080@notify.bestcase.com;15994@notices.nextchapterbk.com;jdoling@jubileebk.net

Jenny L Doling on behalf of Interested Party National Association of Consumer Bankruptcy Attorneys
jd@jdl.law,
dolingjr92080@notify.bestcase.com;15994@notices.nextchapterbk.com;jdoling@jubileebk.net

Jenny L Doling on behalf of Interested Party National Consumer Bankruptcy Rights Center
jd@jdl.law,
dolingjr92080@notify.bestcase.com;15994@notices.nextchapterbk.com;jdoling@jubileebk.net

Daniel A Edelman on behalf of Creditor Carolyn Beech
dedelman@edcombs.com, courtecl@edcombs.com

Howard M Ehrenberg on behalf of Defendant New Horizon Finance LLC
Howard.Ehrenberg@gmlaw.com,
hehrenberg@ecf.courtdrive.com;hehrenberg@ecf.inforuptcy.com;Karen.Files@gmlaw.com;denise.walke
r@gmlaw.com

Meredith Fahn on behalf of Creditor Meredith Fahn
fahn@sbcglobal.net

Jeremy Faith on behalf of Defendant Colbalt Funding Solutions, LLC
Jeremy@MarguliesFaithlaw.com, Angela@MarguliesFaithlaw.com;Vicky@MarguliesFaithlaw.com

Jeremy Faith on behalf of Interested Party Courtesy NEF
Jeremy@MarguliesFaithlaw.com, Angela@MarguliesFaithlaw.com;Vicky@MarguliesFaithlaw.com

William P Fennell on behalf of Creditor Validation Partners LLC
william.fennell@fennelllaw.com,
wpf@ecf.courtdrive.com;hala.hammi@fennelllaw.com;naomi.cwalinski@fennelllaw.com;samantha.larime
r@fennelllaw.com;office@fennelllaw.com;Brendan.Bargmann@fennelllaw.com

Alan W Forsley on behalf of Defendant JGW Solutions, LLC
alan.forsley@flpllp.com, awf@fkllawfirm.com,awf@fl-lawyers.net,addy@flpllp.com

Alan W Forsley on behalf of Interested Party Courtesy NEF
alan.forsley@flpllp.com, awf@fkllawfirm.com,awf@fl-lawyers.net,addy@flpllp.com

Marc C Forsythe on behalf of Defendant Clear Vision Financial LLC
mforsythe@goeforlaw.com,
mforsythe@goeforlaw.com;dcyrankowski@goeforlaw.com;Forsythe.MarcR136526@notify.bestcase.com

Marc C Forsythe on behalf of Defendant Perfect Financial, LLC

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

mforsythe@goeforlaw.com,
mforsythe@goeforlaw.com;dcyrankowski@goeforlaw.com;Forsythe.MarcR136526@notify.bestcase.com

Marc C Forsythe on behalf of Defendant Point Break Holdings LLC
mforsythe@goeforlaw.com,
mforsythe@goeforlaw.com;dcyrankowski@goeforlaw.com;Forsythe.MarcR136526@notify.bestcase.com

Jeremy Freedman on behalf of Plaintiff Richard A. Marshack
jeremy.freedman@dinsmore.com, nicolette.murphy@dinsmore.com

Jeremy Freedman on behalf of Trustee Richard A Marshack (TR)
jeremy.freedman@dinsmore.com, nicolette.murphy@dinsmore.com

Eric Gassman on behalf of Creditor Herret Credit
erg@gassmanlawgroup.com, gassman.ericb112993@notify.bestcase.com

Christopher Ghio on behalf of Plaintiff Richard A. Marshack
christopher.ghio@dinsmore.com,
nicolette.murphy@dinsmore.com;angelica.urena@dinsmore.com;deamira.romo@dinsmore.com

Christopher Ghio on behalf of Plaintiff Richard A. Marshack
christopher.ghio@dinsmore.com,
nicolette.murphy@dinsmore.com;angelica.urena@dinsmore.com;deamira.romo@dinsmore.com

Christopher Ghio on behalf of Trustee Richard A Marshack (TR)
christopher.ghio@dinsmore.com,
nicolette.murphy@dinsmore.com;angelica.urena@dinsmore.com;deamira.romo@dinsmore.com

Amy Lynn Ginsburg on behalf of Creditor Amy Ginsburg
efilings@ginsburglawgroup.com

Amy Lynn Ginsburg on behalf of Creditor Kenton Cobb
efilings@ginsburglawgroup.com

Amy Lynn Ginsburg on behalf of Creditor Shannon Bellfield
efilings@ginsburglawgroup.com

Eric D Goldberg on behalf of Defendant Stripe, Inc.
eric.goldberg@dlapiper.com, eric-goldberg-1103@ecf.pacerpro.com

Jeffrey I Golden on behalf of Creditor Affirma, LLC
jgolden@go2.law,
kadele@ecf.courtdrive.com;cbmeeker@gmail.com;lbracken@wgllp.com;dfitzgerald@go2.law;golden.jeff
reyi.b117954@notify.bestcase.com

Jeffrey I Golden on behalf of Creditor Anaheim Arena Management, LLC
jgolden@go2.law,
kadele@ecf.courtdrive.com;cbmeeker@gmail.com;lbracken@wgllp.com;dfitzgerald@go2.law;golden.jeff
reyi.b117954@notify.bestcase.com

Jeffrey I Golden on behalf of Creditor Anaheim Ducks Hockey Club, LLC
jgolden@go2.law,
kadele@ecf.courtdrive.com;cbmeeker@gmail.com;lbracken@wgllp.com;dfitzgerald@go2.law;golden.jeff
reyi.b117954@notify.bestcase.com

Jeffrey I Golden on behalf of Creditor Oxford Knox, LLC

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

jgolden@go2.law,
kadele@ecf.courtdrive.com;cbmeeker@gmail.com;lbracken@wgllp.com;dfitzgerald@go2.law;golden.jeff
reyi.b117954@notify.bestcase.com

Jeffrey I Golden on behalf of Interested Party Courtesy NEF
jgolden@go2.law,
kadele@ecf.courtdrive.com;cbmeeker@gmail.com;lbracken@wgllp.com;dfitzgerald@go2.law;golden.jeff
reyi.b117954@notify.bestcase.com

Richard H Golubow on behalf of Creditor Debt Validation Fund II, LLC
rgolubow@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com

Richard H Golubow on behalf of Creditor MC DVI Fund 1, LLC
rgolubow@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com

Richard H Golubow on behalf of Creditor MC DVI Fund 2, LLC
rgolubow@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com

Richard H Golubow on behalf of Defendant Debt Validation Fund II, LLC
rgolubow@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com

Richard H Golubow on behalf of Defendant MC DVI Fund 1, LLC
rgolubow@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com

Richard H Golubow on behalf of Defendant MC DVI Fund 2, LLC
rgolubow@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com

David M Goodrich on behalf of Creditor United Partnerships, LLC
dgoodrich@go2.law, kadele@go2.law;dfitzgerald@go2.law;wggllp@ecf.courtdrive.com

David M Goodrich on behalf of Interested Party Courtesy NEF
dgoodrich@go2.law, kadele@go2.law;dfitzgerald@go2.law;wggllp@ecf.courtdrive.com

D Edward Hays on behalf of Creditor Committee Committee of Unsecured Creditors
ehays@marshackhays.com,
ehays@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@ec
f.courtdrive.com

D Edward Hays on behalf of Interested Party Courtesy NEF
ehays@marshackhays.com,
ehays@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@ec
f.courtdrive.com

D Edward Hays on behalf of Interested Party Courtesy NEF
ehays@marshackhays.com,
ehays@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@ec
f.courtdrive.com

D Edward Hays on behalf of Trustee Richard A Marshack (TR)
ehays@marshackhays.com,
ehays@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@ec
f.courtdrive.com

D Edward Hays on behalf of Trustee Richard A Marshack (TR)
ehays@marshackhays.com,
ehays@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@ec
f.courtdrive.com

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

Alan Craig Hochheiser on behalf of Creditor City Capital NY
ahochheiser@mauricewutscher.com, arodriguez@mauricewutscher.com

Garrick A Hollander on behalf of Creditor Debt Validation Fund II, LLC
ghollander@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com

Garrick A Hollander on behalf of Creditor MC DVI Fund 1, LLC
ghollander@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com

Garrick A Hollander on behalf of Creditor MC DVI Fund 2, LLC
ghollander@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com

Brian L Holman on behalf of Creditor Sharp Electronics Corporation
b.holman@musickpeeler.com

Richard L. Hyde on behalf of Interested Party Courtesy NEF
rhyde@awglaw.com

Peter L Isola on behalf of Interested Party Merchants Credit Corporation
pisola@hinshawlaw.com, rmojica@hinshawlaw.com,iking@hinshawlaw.com

Razmig Izakelian on behalf of Counter-Defendant OHP-CDR, LP
razmigizakelian@quinnemanuel.com

Razmig Izakelian on behalf of Counter-Defendant PurchaseCo 80, LLC
razmigizakelian@quinnemanuel.com

Razmig Izakelian on behalf of Creditor OHP-CDR, LP
razmigizakelian@quinnemanuel.com

Razmig Izakelian on behalf of Plaintiff OHP-CDR, LP
razmigizakelian@quinnemanuel.com

Razmig Izakelian on behalf of Plaintiff PurchaseCo 80, LLC
razmigizakelian@quinnemanuel.com

Sara Johnston on behalf of Trustee Richard A Marshack (TR)
sara.johnston@dinsmore.com

Sweeney Kelly on behalf of Defendant Fidelity National Information Services, Inc.
kelly@ksgklaw.com

Sweeney Kelly on behalf of Defendant Fidelity National Information Services, Inc. dba FIS
kelly@ksgklaw.com

Sweeney Kelly on behalf of Defendant Worldpay Group
kelly@ksgklaw.com

Sweeney Kelly on behalf of Defendant Worldpay, LLC
kelly@ksgklaw.com

Joon M Khang on behalf of Attorney Khang & Khang LLP
joon@khanglaw.com

Joon M Khang on behalf of Debtor The Litigation Practice Group P.C.
joon@khanglaw.com

Ira David Kharasch on behalf of Interested Party Ad Hoc Consumer Claimants Committee

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

ikharasch@pszjlaw.com

Ira David Kharasch on behalf of Interested Party Courtesy NEF
ikharasch@pszjlaw.com

Meredith King on behalf of Defendant Gallant Law Group
mking@fsl.law, ssanchez@fsl.law;jwilson@fsl.law

Meredith King on behalf of Interested Party Courtesy NEF
mking@fsl.law, ssanchez@fsl.law;jwilson@fsl.law

Nicholas A Koffroth on behalf of Creditor Committee Committee of Unsecured Creditors
nkoffroth@foxrothschild.com, khoang@foxrothschild.com;ca.dkt@foxrothschild.com

David S Kupetz on behalf of Defendant Marich Bein LLC
David.Kupetz@lockelord.com, mylene.ruiz@lockelord.com

David S Kupetz on behalf of Defendant Marich Bein, LLC
David.Kupetz@lockelord.com, mylene.ruiz@lockelord.com

David S Kupetz on behalf of Interested Party Courtesy NEF
David.Kupetz@lockelord.com, mylene.ruiz@lockelord.com

Christopher J Langley on behalf of Interested Party Courtesy NEF
chris@slclawoffice.com,
langleycr75251@notify.bestcase.com;ecf123@casedriver.com;john@slclawoffice.com

Kelli Ann Lee on behalf of Trustee Richard A Marshack (TR)
Kelli.lee@dinsmore.com, kristy.allen@dinsmore.com

Matthew A Lesnick on behalf of Defendant OptimumBank Holdings, Inc.
matt@lesnickprince.com, matt@ecf.inforuptcy.com;jmack@lesnickprince.com

Daniel A Lev on behalf of Defendant Consumer Legal Group, PC
daniel.lev@gmlaw.com, cheryl.caldwell@gmlaw.com;dlev@ecf.courtdrive.com

Daniel A Lev on behalf of Defendant LGS Holdco, LLC
daniel.lev@gmlaw.com, cheryl.caldwell@gmlaw.com;dlev@ecf.courtdrive.com

Daniel A Lev on behalf of Interested Party Consumer Legal Group, P.C.
daniel.lev@gmlaw.com, cheryl.caldwell@gmlaw.com;dlev@ecf.courtdrive.com

Daniel A Lev on behalf of Interested Party Courtesy NEF
daniel.lev@gmlaw.com, cheryl.caldwell@gmlaw.com;dlev@ecf.courtdrive.com

Daniel A Lev on behalf of Interested Party Liberty Acquisitions Group Inc.
daniel.lev@gmlaw.com, cheryl.caldwell@gmlaw.com;dlev@ecf.courtdrive.com

Britteny Leyva on behalf of Interested Party Revolv3, Inc.
bleyva@mayerbrown.com,
2396393420@filings.docketbird.com;KAWhite@mayerbrown.com;ladocket@mayerbrown.com

Marc A Lieberman on behalf of Defendant JGW Solutions, LLC
marc.lieberman@flpllp.com, addy@flpllp.com,andrea@flpllp.com

Marc A Lieberman on behalf of Interested Party Courtesy NEF
marc.lieberman@flpllp.com, addy@flpllp.com,andrea@flpllp.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                          **F 9013-.1.PROOF.SERVICE**

EXHIBIT 3, PAGE 250

Michael D Lieberman on behalf of Creditor Phillip A. Greenblatt, PLLC
mlieberman@lipsonneilson.com

Yosina M Lissebeck on behalf of Counter-Claimant Richard A. Marshack
Yosina.Lissebeck@Dinsmore.com, caron.burke@dinsmore.com;Wendy.Yones@Dinsmore.com

Yosina M Lissebeck on behalf of Defendant Richard A. Marshack
Yosina.Lissebeck@Dinsmore.com, caron.burke@dinsmore.com;Wendy.Yones@Dinsmore.com

Yosina M Lissebeck on behalf of Plaintiff Richard A. Marshack
Yosina.Lissebeck@Dinsmore.com, caron.burke@dinsmore.com;Wendy.Yones@Dinsmore.com

Yosina M Lissebeck on behalf of Trustee Richard A Marshack (TR)
Yosina.Lissebeck@Dinsmore.com, caron.burke@dinsmore.com;Wendy.Yones@Dinsmore.com

Mitchell B Ludwig on behalf of Creditor Fundura Capital Group
mbl@kpclegal.com, kad@kpclegal.com

Mitchell B Ludwig on behalf of Defendant Bridge Funding Cap, LLC
mbl@kpclegal.com, kad@kpclegal.com

Daniel S March on behalf of Defendant Daniel S. March
marchlawoffice@gmail.com, marchdr94019@notify.bestcase.com

Daniel S March on behalf of Interested Party INTERESTED PARTY
marchlawoffice@gmail.com, marchdr94019@notify.bestcase.com

Kathleen P March on behalf of Creditor Greyson Law Center PC
kmarch@bkylawfirm.com, kmarch3@sbcglobal.net,kmarch@sbcglobal.net

Kathleen P March on behalf of Creditor Han Trinh
kmarch@bkylawfirm.com, kmarch3@sbcglobal.net,kmarch@sbcglobal.net

Kathleen P March on behalf of Creditor Phuong (Jayde) Trinh
kmarch@bkylawfirm.com, kmarch3@sbcglobal.net,kmarch@sbcglobal.net

Kathleen P March on behalf of Defendant Greyson Law Center PC
kmarch@bkylawfirm.com, kmarch3@sbcglobal.net,kmarch@sbcglobal.net

Kathleen P March on behalf of Defendant Han Trinh
kmarch@bkylawfirm.com, kmarch3@sbcglobal.net,kmarch@sbcglobal.net

Kathleen P March on behalf of Defendant Jayde Trinh
kmarch@bkylawfirm.com, kmarch3@sbcglobal.net,kmarch@sbcglobal.net

Mark J Markus on behalf of Creditor David Orr
bklawr@bklaw.com, markjmarkus@gmail.com;markus.markj.r112926@notify.bestcase.com

Richard A Marshack (TR)
pkraus@marshackhays.com, ecf.alert+Marshack@titlexi.com

Laila Masud on behalf of Interested Party Courtesy NEF
lmasud@marshackhays.com,
lmasud@ecf.courtdrive.com;lbuchanan@marshackhays.com;alinares@ecf.courtdrive.com

Laila Masud on behalf of Interested Party Courtesy NEF
lmasud@marshackhays.com,
lmasud@ecf.courtdrive.com;lbuchanan@marshackhays.com;alinares@ecf.courtdrive.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                    **F 9013-.1.PROOF.SERVICE**

EXHIBIT 3, PAGE 251

Laila Masud on behalf of Interested Party Richard A. Marshack
lmasud@marshackhays.com,
lmasud@ecf.courtdrive.com;lbuchanan@marshackhays.com;alinares@ecf.courtdrive.com

Laila Masud on behalf of Plaintiff Richard Marshack
lmasud@marshackhays.com,
lmasud@ecf.courtdrive.com;lbuchanan@marshackhays.com;alinares@ecf.courtdrive.com

Laila Masud on behalf of Trustee Richard A Marshack (TR)
lmasud@marshackhays.com,
lmasud@ecf.courtdrive.com;lbuchanan@marshackhays.com;alinares@ecf.courtdrive.com

Sarah S. Mattingly on behalf of Defendant Clearcube LLC
sarah.mattingly@dinsmore.com

Sarah S. Mattingly on behalf of Plaintiff Richard A. Marshack, Chapter 11 Trustee
sarah.mattingly@dinsmore.com

Sarah S. Mattingly on behalf of Plaintiff Richard A. Marshack
sarah.mattingly@dinsmore.com

Sarah S. Mattingly on behalf of Trustee Richard A Marshack (TR)
sarah.mattingly@dinsmore.com

William McCormick on behalf of Creditor TN Dept of Revenue
Bill.McCormick@ag.tn.gov

Kenneth Misken on behalf of U.S. Trustee United States Trustee (SA)
Kenneth.M.Misken@usdoj.gov

Byron Z Moldo on behalf of Interested Party Byron Moldo
bmoldo@ecjlaw.com, aantonio@ecjlaw.com,dperez@ecjlaw.com

Glenn D. Moses on behalf of Creditor ADP, Inc
gmoses@venable.com, cascavone@venable.com;jpmalcolm@venable.com;jadelgado@venable.com

Jamie D Mottola on behalf of Plaintiff Richard A. Marshack, Chapter 11 Trustee
Jamie.Mottola@dinsmore.com, jhanawalt@ecf.inforuptcy.com

Alan I Nahmias on behalf of Interested Party Courtesy NEF
anahmias@mbn.law, jdale@mbn.law

Victoria Newmark on behalf of Interested Party Courtesy NEF
vnewmark@pszjlaw.com

Jacob Newsum-Bothamley on behalf of Plaintiff Richard A. Marshack
jacob.bothamley@dinsmore.com, angelica.urena@dinsmore.com;deamira.romo@dinsmore.com

Jacob Newsum-Bothamley on behalf of Trustee Richard A Marshack (TR)
jacob.bothamley@dinsmore.com, angelica.urena@dinsmore.com;deamira.romo@dinsmore.com

Queenie K Ng on behalf of U.S. Trustee United States Trustee (SA)
queenie.k.ng@usdoj.gov

Israel Orozco on behalf of Creditor Israel Orozco
israel@iolawcorp.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

Keith C Owens on behalf of Creditor Committee Committee of Unsecured Creditors
kowens@foxrothschild.com, khoang@foxrothschild.com

Lisa Patel on behalf of Defendant OptimumBank Holdings, Inc.
lpatel@lesnickprince.com, jmack@lesnickprince.com;jnavarro@lesnickprince.com

Michael R Pinkston on behalf of Creditor Wells Marble and Hurst, PLLC
rpinkston@seyfarth.com,
jmcdermott@seyfarth.com,sfocalendar@seyfarth.com,5314522420@filings.docketbird.com,bankruptcyd
ocket@seyfarth.com

Douglas A Plazak on behalf of Defendant Scott James Eadie
dplazak@rhlaw.com

Tyler Powell on behalf of Counter-Claimant Richard A Marshack (TR)
tyler.powell@dinsmore.com, jennifer.pitcock@dinsmore.com;caitlin.brock@dinsmore.com

Tyler Powell on behalf of Counter-Claimant Richard A. Marshack
tyler.powell@dinsmore.com, jennifer.pitcock@dinsmore.com;caitlin.brock@dinsmore.com

Tyler Powell on behalf of Defendant Richard A. Marshack
tyler.powell@dinsmore.com, jennifer.pitcock@dinsmore.com;caitlin.brock@dinsmore.com

Tyler Powell on behalf of Plaintiff Richard A. Marshack
tyler.powell@dinsmore.com, jennifer.pitcock@dinsmore.com;caitlin.brock@dinsmore.com

Tyler Powell on behalf of Trustee Richard A Marshack (TR)
tyler.powell@dinsmore.com, jennifer.pitcock@dinsmore.com;caitlin.brock@dinsmore.com

Daniel H Reiss on behalf of Defendant PECC Corp
dhr@lnbyg.com, dhr@ecf.inforuptcy.com

Daniel H Reiss on behalf of Defendant Touzi Capital, LLC
dhr@lnbyg.com, dhr@ecf.inforuptcy.com

Daniel H Reiss on behalf of Defendant Eng Taing
dhr@lnbyg.com, dhr@ecf.inforuptcy.com

Ronald N Richards on behalf of Defendant Consumer Legal Group, PC
ron@ronaldrichards.com, 7206828420@filings.docketbird.com

Ronald N Richards on behalf of Defendant LGS Holdco, LLC
ron@ronaldrichards.com, 7206828420@filings.docketbird.com

Ronald N Richards on behalf of Interested Party Courtesy NEF
ron@ronaldrichards.com, 7206828420@filings.docketbird.com

Vanessa Rodriguez on behalf of Plaintiff Richard A. Marshack
vanessa.rodriguez@dinsmore.com, angelica.urena@dinsmore.com

Vanessa Rodriguez on behalf of Trustee Richard A Marshack (TR)
vanessa.rodriguez@dinsmore.com, angelica.urena@dinsmore.com

Kevin Alan Rogers on behalf of Creditor Wells Marble and Hurst, PLLC
krogers@wellsmar.com

Gregory M Salvato on behalf of Creditor Mari Agape

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                    **F 9013-.1.PROOF.SERVICE**

EXHIBIT 3, PAGE 253

gsalvato@salvatoboufadel.com,
calendar@salvatolawoffices.com;jboufadel@salvatoboufadel.com;gsalvato@ecf.inforuptcy.com

Gregory M Salvato on behalf of Interested Party Courtesy NEF
gsalvato@salvatoboufadel.com,
calendar@salvatolawoffices.com;jboufadel@salvatoboufadel.com;gsalvato@ecf.inforuptcy.com

Olivia Scott on behalf of Creditor Azzure Capital LLC
olivia.scott@hklaw.com

Olivia Scott on behalf of Creditor Hi Bar Capital LLC
olivia.scott@hklaw.com

Jonathan Serrano on behalf of Plaintiff Richard A. Marshack
jonathan.serrano@dinsmore.com

Jonathan Serrano on behalf of Special Counsel Dinsmore & Shohl LLP
jonathan.serrano@dinsmore.com

Jonathan Serrano on behalf of Trustee Richard A Marshack (TR)
jonathan.serrano@dinsmore.com

Maureen J Shanahan on behalf of Creditor Randall Baldwin Clark Attorney at Law PLLC
Mstotaro@aol.com

Paul R Shankman on behalf of Attorney Paul R. Shankman
PShankman@fortislaw.com, info@fortislaw.com

Paul R Shankman on behalf of Creditor United Partnerships, LLC
PShankman@fortislaw.com, info@fortislaw.com

Zev Shechtman on behalf of Interested Party Danning Gill Israel & Krasnoff LLP
Zev.Shechtman@saul.com, zshechtman@ecf.inforuptcy.com;easter.santamaria@saul.com

Zev Shechtman on behalf of Interested Party Morning Law Group, P.C.
Zev.Shechtman@saul.com, zshechtman@ecf.inforuptcy.com;easter.santamaria@saul.com

Jeffrey M Singletary on behalf of Plaintiff Alteryx, Inc.
jsingletary@swlaw.com, rmckay@swlaw.com

Leslie Skorheim on behalf of U.S. Trustee United States Trustee (SA)
leslie.skorheim@usdoj.gov

Adam D Stein-Sapir on behalf of Creditor Pioneer Funding Group, LLC
info@pfllc.com

Howard Steinberg on behalf of Defendant BankUnited, N.A.
steinbergh@gtlaw.com, pearsallt@gtlaw.com;NEF-BK@gtlaw.com;howard-steinberg-
6096@ecf.pacerpro.com

John H. Stephens on behalf of Plaintiff Richard A Marshack
john.stephens@dinsmore.com, lizbeth.alonso@dinsmore.com

John H. Stephens on behalf of Plaintiff Richard A Marshack
john.stephens@dinsmore.com, lizbeth.alonso@dinsmore.com

Andrew Still on behalf of Creditor Alteryx, Inc.
astill@swlaw.com, kcollins@swlaw.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

Andrew Still on behalf of Interested Party Courtesy NEF
astill@swlaw.com, kcollins@swlaw.com

Andrew Still on behalf of Plaintiff Alteryx, Inc.
astill@swlaw.com, kcollins@swlaw.com

Michael R Totaro on behalf of Creditor Randall Baldwin Clark Attorney at Law PLLC
Ocbkatty@aol.com

Michael R Totaro on behalf of Interested Party Randall Baldwin Clark
Ocbkatty@aol.com

United States Trustee (SA)
ustpregion16.sa.ecf@usdoj.gov

William J Wall on behalf of Witness Bradford Lee
wwall@wall-law.com

Sharon Z. Weiss on behalf of Creditor Azzure Capital LLC
sharon.weiss@bclplaw.com, raul.morales@bclplaw.com,REC_KM_ECF_SMO@bclplaw.com

Sharon Z. Weiss on behalf of Creditor Hi Bar Capital LLC
sharon.weiss@bclplaw.com, raul.morales@bclplaw.com,REC_KM_ECF_SMO@bclplaw.com

Sharon Z. Weiss on behalf of Defendant Azzure Capital LLC
sharon.weiss@bclplaw.com, raul.morales@bclplaw.com,REC_KM_ECF_SMO@bclplaw.com

Johnny White on behalf of Creditor Debt Relief Group, LLC
JWhite@wrslawyers.com, jlee@wrslawyers.com

Johnny White on behalf of Interested Party Courtesy NEF
JWhite@wrslawyers.com, jlee@wrslawyers.com

Reina Zepeda on behalf of Other Professional Omni Agent Solutions
rzepeda@omniagnt.com

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

Case 8:23-bk-10571-SC    Doc 1800    Filed 10/08/24    Entered 10/08/24 18:19:16    Desc
Main Document    Page 259 of 332

Case 8:23-bk-10571-SC    Doc 1486-2    Filed 08/05/24    Entered 08/05/24 11:36:41
Desc  Declaration of Richard A. Marshack In Support    Page 1 of 15

Nancy B. Rapoport
William S. Boyd School of Law
University of Nevada, Las Vegas
4505 S. Maryland Parkway
Mail Stop 451003
Las Vegas, Nevada  89154-1003
nancy.rapoport@unlv.edu

Court-Appointed Ethics Compliance Monitor

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

| | |
|---|---|
| In re | Case No. 8:23-bk-10571-SC |
| THE LITIGATION PRACTICE GROUP P.C., | Chapter 11 |
| Debtor. | **DECLARATION OF RICHARD A. MARSHACK IN SUPPORT OF APPLICATION FOR AN ORDER PURSUANT TO 11 U.S.C. § 105 AND LBR 2016-1(d) AUTHORIZING THE RETENTION OF NANCY B. RAPOPORT AS FEE EXAMINER AND APPROVING STIPULATION GOVERNING SAME** |
| | **[No Hearing Required - LBR 2016-1(d)]** |

Case 8:23-bk-10571-SC    Doc 1800    Filed 10/08/24    Entered 10/08/24 18:19:16    Desc
Main Document    Page 260 of 332

Case 8:23-bk-10571-SC    Doc 1486-2    Filed 08/05/24    Entered 08/05/24 11:36:41
Desc  Declaration of Richard A. Marshack In Support    Page 2 of 15

**DECLARATION OF RICHARD A. MARSHACK**

1.    I am an individual over 18 years of age and competent to make this Declaration.

2.    If called upon to do so, I could and would competently testify as to the facts set forth in this Declaration.

3.    I am the appointed Trustee ("Trustee") of the Bankruptcy Estate ("Estate") of The Litigation Practice Group P.C. ("Debtor").

4.    The facts set forth below are true of my personal knowledge.

5.    I make this Declaration in support of the APPLICATION FOR AN ORDER PURSUANT TO 11 U.S.C. § 105 AND LBR 2016-1(d) AUTHORIZING THE RETENTION OF NANCY B. RAPOPORT AS FEE EXAMINER AND APPROVING STIPULATION GOVERNING SAME  ("Motion").

6.    I asked Nancy B. Rapoport to serve as Fee Examiner in the within case.  Me and my professionals are embracing the goal of full transparency in the fee application process.  Therefore, in an effort to provide greater assistance to the Court and the OUST in their review of the fee applications and yet preserve the importance of attorney-client and attorney-work product privileges of the Trustee, the Trustee and his professionals have agreed – of their own volition – to stipulate to the appointment of a fee examiner to review their fee applications and provide a report for the Court and the OUST, and other parties as may be ordered by the Court.

7.    As noted in the Application, Trustee believes that the extraordinary circumstances present in this Case, and the factors that Bankruptcy Courts generally use to evaluate such circumstances, support a request for the statutory maximum and, if otherwise permitted by law, a bonus.  In that circumstance, and for the interest of full disclosure and evaluation, I have agreed that the Fee Examiner review my fee application as part of her duties and report provided to the Court.

8.    The case has involved herculean efforts by me and my professionals.  I support the Stipulation to provide transparency and an appropriate check and balance on the compensation requests in conjunction with those efforts.

///

///

9.      I support the request that the Court enter an order approving the Stipulation.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on

August 2, 2024.

Richard A. Marshack

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:      655 W. Broadway, Suite 800, San Diego, California  92101

A true and correct copy of the foregoing document: **DECLARATION OF RICHARD A. MARSHACK IN SUPPORT OF APPLICATION FOR AN ORDER PURSUANT TO 11 U.S.C. § 105 AND LBR 2016-1(d) AUTHORIZING THE RETENTION OF NANCY B. RAPOPORT AS FEE EXAMINER AND APPROVING STIPULATION GOVERNING SAME**

will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On August 5, 2024, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒      Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On August 5, 2024, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

YCIR Inc.
Hector Ocegueda
535 S Barranca St #4
Covina, CA 91723

☐      Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on August 5, 2024, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**JUDGE'S COPY - VIA FEDEX**
The Honorable Scott C. Clarkson
United States Bankruptcy Court
Central District of California
Ronald Reagan Federal Building and Courthouse
411 West Fourth Street, Suite 5130 / Courtroom 5C
Santa Ana, CA 92701-4593

☐      Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| August 5, 2024 | Caron Burke | /s/ Caron Burke |
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

1.    **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

Kyra E Andrassy on behalf of Interested Party Courtesy NEF
kandrassy@raineslaw.com, bclark@raineslaw.com;jfisher@raineslaw.com

Bradford Barnhardt on behalf of Interested Party Courtesy NEF
bbarnhardt@marshackhays.com, bbarnhardt@ecf.courtdrive.com,alinares@ecf.courtdrive.com

Bradford Barnhardt on behalf of Plaintiff Richard A. Marshack
bbarnhardt@marshackhays.com, bbarnhardt@ecf.courtdrive.com,alinares@ecf.courtdrive.com

Bradford Barnhardt on behalf of Trustee Richard A Marshack (TR)
bbarnhardt@marshackhays.com, bbarnhardt@ecf.courtdrive.com,alinares@ecf.courtdrive.com

Eric Bensamochan on behalf of Creditor Affirma, LLC
eric@eblawfirm.us, G63723@notify.cincompass.com

Eric Bensamochan on behalf of Creditor Oxford Knox, LLC
eric@eblawfirm.us, G63723@notify.cincompass.com

Eric Bensamochan on behalf of Interested Party Courtesy NEF
eric@eblawfirm.us, G63723@notify.cincompass.com

Eric Bensamochan on behalf of Interested Party Eric Bensamochan
eric@eblawfirm.us, G63723@notify.cincompass.com

Michael Jay Berger on behalf of Defendant Leucadia Enterprises, Inc
michael.berger@bankruptcypower.com,
yathida.nipha@bankruptcypower.com;michael.berger@ecf.inforuptcy.com

Ethan J Birnberg on behalf of Defendant BMF Advance, LLC
birnberg@portersimon.com, kdwyer@portersimon.com

Ethan J Birnberg on behalf of Defendant Diverse Capital LLC
birnberg@portersimon.com, kdwyer@portersimon.com

Peter W Bowie on behalf of Trustee Richard A Marshack (TR)
peter.bowie@dinsmore.com, caron.burke@dinsmore.com

Ronald K Brown on behalf of Creditor SDCO Tustin Executive Center, Inc.
ron@rkbrownlaw.com

Christopher Celentino on behalf of Plaintiff Richard A. Marshack
christopher.celentino@dinsmore.com, caron.burke@dinsmore.com

Christopher Celentino on behalf of Trustee Richard A Marshack (TR)
christopher.celentino@dinsmore.com, caron.burke@dinsmore.com

Shawn M Christianson on behalf of Interested Party Courtesy NEF
cmcintire@buchalter.com, schristianson@buchalter.com

Randall Baldwin Clark on behalf of Interested Party Randall Baldwin Clark
rbc@randallbclark.com

Leslie A Cohen on behalf of Defendant Rosa Bianca Loli
leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com;clare@lesliecohenlaw.com

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August  2010*                    **F 9013-3.1.PROOF.SERVICE**

Leslie A Cohen on behalf of Interested Party Courtesy NEF
leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com;clare@lesliecohenlaw.com

Michael W Davis on behalf of Defendant Morning Law Group, P.C.
mdavis@dtolaw.com, ygodson@dtolaw.com

Anthony Paul Diehl on behalf of Interested Party Courtesy NEF
anthony@apdlaw.net,
Diehl.AnthonyB112492@notify.bestcase.com,ecf@apdlaw.net,9143954420@filings.docketbird.com

Ashley Dionisio on behalf of Other Professional Omni Agent Solutions
adionisio@omniagnt.com

Jenny L Doling on behalf of Interested Party INTERESTED PARTY
jd@jdl.law,
dolingjr92080@notify.bestcase.com;15994@notices.nextchapterbk.com;jdoling@jubileebk.net

Jenny L Doling on behalf of Interested Party National Association of Consumer Bankruptcy Attorneys
jd@jdl.law,
dolingjr92080@notify.bestcase.com;15994@notices.nextchapterbk.com;jdoling@jubileebk.net

Jenny L Doling on behalf of Interested Party National Consumer Bankruptcy Rights Center
jd@jdl.law,
dolingjr92080@notify.bestcase.com;15994@notices.nextchapterbk.com;jdoling@jubileebk.net

Daniel A Edelman on behalf of Creditor Carolyn Beech
dedelman@edcombs.com, courtecl@edcombs.com

Howard M Ehrenberg on behalf of Defendant New Horizon Finance LLC
Howard.Ehrenberg@gmlaw.com,
hehrenberg@ecf.courtdrive.com;hehrenberg@ecf.inforuptcy.com;Karen.Files@gmlaw.com;denise.walke
r@gmlaw.com

Meredith Fahn on behalf of Creditor Meredith Fahn
fahn@sbcglobal.net

Jeremy Faith on behalf of Defendant Colbalt Funding Solutions, LLC
Jeremy@MarguliesFaithlaw.com, Angela@MarguliesFaithlaw.com;Vicky@MarguliesFaithlaw.com

Jeremy Faith on behalf of Interested Party Courtesy NEF
Jeremy@MarguliesFaithlaw.com, Angela@MarguliesFaithlaw.com;Vicky@MarguliesFaithlaw.com

William P Fennell on behalf of Creditor Validation Partners LLC
william.fennell@fennelllaw.com,
wpf@ecf.courtdrive.com;hala.hammi@fennelllaw.com;naomi.cwalinski@fennelllaw.com;samantha.larime
r@fennelllaw.com;office@fennelllaw.com;Brendan.Bargmann@fennelllaw.com

Alan W Forsley on behalf of Defendant JGW Solutions, LLC
alan.forsley@flpllp.com, awf@fkllawfirm.com,awf@fl-lawyers.net,addy@flpllp.com

Alan W Forsley on behalf of Interested Party Courtesy NEF
alan.forsley@flpllp.com, awf@fkllawfirm.com,awf@fl-lawyers.net,addy@flpllp.com

Marc C Forsythe on behalf of Defendant Clear Vision Financial LLC
mforsythe@goeforlaw.com,
mforsythe@goeforlaw.com;dcyrankowski@goeforlaw.com;Forsythe.MarcR136526@notify.bestcase.com

Marc C Forsythe on behalf of Defendant Perfect Financial, LLC

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                   **F 9013-.1.PROOF.SERVICE**

mforsythe@goeforlaw.com,
mforsythe@goeforlaw.com;dcyrankowski@goeforlaw.com;Forsythe.MarcR136526@notify.bestcase.com

Marc C Forsythe on behalf of Defendant Point Break Holdings LLC
mforsythe@goeforlaw.com,
mforsythe@goeforlaw.com;dcyrankowski@goeforlaw.com;Forsythe.MarcR136526@notify.bestcase.com

Jeremy Freedman on behalf of Plaintiff Richard A. Marshack
jeremy.freedman@dinsmore.com, nicolette.murphy@dinsmore.com

Jeremy Freedman on behalf of Trustee Richard A Marshack (TR)
jeremy.freedman@dinsmore.com, nicolette.murphy@dinsmore.com

Eric Gassman on behalf of Creditor Herret Credit
erg@gassmanlawgroup.com, gassman.ericb112993@notify.bestcase.com

Christopher Ghio on behalf of Plaintiff Richard A. Marshack
christopher.ghio@dinsmore.com,
nicolette.murphy@dinsmore.com;angelica.urena@dinsmore.com;deamira.romo@dinsmore.com

Christopher Ghio on behalf of Plaintiff Richard A. Marshack
christopher.ghio@dinsmore.com,
nicolette.murphy@dinsmore.com;angelica.urena@dinsmore.com;deamira.romo@dinsmore.com

Christopher Ghio on behalf of Trustee Richard A Marshack (TR)
christopher.ghio@dinsmore.com,
nicolette.murphy@dinsmore.com;angelica.urena@dinsmore.com;deamira.romo@dinsmore.com

Amy Lynn Ginsburg on behalf of Creditor Amy Ginsburg
efilings@ginsburglawgroup.com

Amy Lynn Ginsburg on behalf of Creditor Kenton Cobb
efilings@ginsburglawgroup.com

Amy Lynn Ginsburg on behalf of Creditor Shannon Bellfield
efilings@ginsburglawgroup.com

Eric D Goldberg on behalf of Defendant Stripe, Inc.
eric.goldberg@dlapiper.com, eric-goldberg-1103@ecf.pacerpro.com

Jeffrey I Golden on behalf of Creditor Affirma, LLC
jgolden@go2.law,
kadele@ecf.courtdrive.com;cbmeeker@gmail.com;lbracken@wgllp.com;dfitzgerald@go2.law;golden.jeff
reyi.b117954@notify.bestcase.com

Jeffrey I Golden on behalf of Creditor Anaheim Arena Management, LLC
jgolden@go2.law,
kadele@ecf.courtdrive.com;cbmeeker@gmail.com;lbracken@wgllp.com;dfitzgerald@go2.law;golden.jeff
reyi.b117954@notify.bestcase.com

Jeffrey I Golden on behalf of Creditor Anaheim Ducks Hockey Club, LLC
jgolden@go2.law,
kadele@ecf.courtdrive.com;cbmeeker@gmail.com;lbracken@wgllp.com;dfitzgerald@go2.law;golden.jeff
reyi.b117954@notify.bestcase.com

Jeffrey I Golden on behalf of Creditor Oxford Knox, LLC

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                    **F 9013-.1.PROOF.SERVICE**

EXHIBIT 3, PAGE 262

jgolden@go2.law,
kadele@ecf.courtdrive.com;cbmeeker@gmail.com;lbracken@wgllp.com;dfitzgerald@go2.law;golden.jeff
reyi.b117954@notify.bestcase.com

Jeffrey I Golden on behalf of Interested Party Courtesy NEF
jgolden@go2.law,
kadele@ecf.courtdrive.com;cbmeeker@gmail.com;lbracken@wgllp.com;dfitzgerald@go2.law;golden.jeff
reyi.b117954@notify.bestcase.com

Richard H Golubow on behalf of Creditor Debt Validation Fund II, LLC
rgolubow@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com

Richard H Golubow on behalf of Creditor MC DVI Fund 1, LLC
rgolubow@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com

Richard H Golubow on behalf of Creditor MC DVI Fund 2, LLC
rgolubow@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com

Richard H Golubow on behalf of Defendant Debt Validation Fund II, LLC
rgolubow@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com

Richard H Golubow on behalf of Defendant MC DVI Fund 1, LLC
rgolubow@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com

Richard H Golubow on behalf of Defendant MC DVI Fund 2, LLC
rgolubow@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com

David M Goodrich on behalf of Creditor United Partnerships, LLC
dgoodrich@go2.law, kadele@go2.law;dfitzgerald@go2.law;wggllp@ecf.courtdrive.com

David M Goodrich on behalf of Interested Party Courtesy NEF
dgoodrich@go2.law, kadele@go2.law;dfitzgerald@go2.law;wggllp@ecf.courtdrive.com

D Edward Hays on behalf of Creditor Committee Committee of Unsecured Creditors
ehays@marshackhays.com,
ehays@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@ec
f.courtdrive.com

D Edward Hays on behalf of Interested Party Courtesy NEF
ehays@marshackhays.com,
ehays@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@ec
f.courtdrive.com

D Edward Hays on behalf of Interested Party Courtesy NEF
ehays@marshackhays.com,
ehays@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@ec
f.courtdrive.com

D Edward Hays on behalf of Trustee Richard A Marshack (TR)
ehays@marshackhays.com,
ehays@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@ec
f.courtdrive.com

D Edward Hays on behalf of Trustee Richard A Marshack (TR)
ehays@marshackhays.com,
ehays@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@ec
f.courtdrive.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                               **F 9013-.1.PROOF.SERVICE**

EXHIBIT 3, PAGE 263

Alan Craig Hochheiser on behalf of Creditor City Capital NY
ahochheiser@mauricewutscher.com, arodriguez@mauricewutscher.com

Garrick A Hollander on behalf of Creditor Debt Validation Fund II, LLC
ghollander@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com

Garrick A Hollander on behalf of Creditor MC DVI Fund 1, LLC
ghollander@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com

Garrick A Hollander on behalf of Creditor MC DVI Fund 2, LLC
ghollander@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com

Brian L Holman on behalf of Creditor Sharp Electronics Corporation
b.holman@musickpeeler.com

Richard L. Hyde on behalf of Interested Party Courtesy NEF
rhyde@awglaw.com

Peter L Isola on behalf of Interested Party Merchants Credit Corporation
pisola@hinshawlaw.com, rmojica@hinshawlaw.com,iking@hinshawlaw.com

Razmig Izakelian on behalf of Counter-Defendant OHP-CDR, LP
razmigizakelian@quinnemanuel.com

Razmig Izakelian on behalf of Counter-Defendant PurchaseCo 80, LLC
razmigizakelian@quinnemanuel.com

Razmig Izakelian on behalf of Creditor OHP-CDR, LP
razmigizakelian@quinnemanuel.com

Razmig Izakelian on behalf of Plaintiff OHP-CDR, LP
razmigizakelian@quinnemanuel.com

Razmig Izakelian on behalf of Plaintiff PurchaseCo 80, LLC
razmigizakelian@quinnemanuel.com

Sara Johnston on behalf of Trustee Richard A Marshack (TR)
sara.johnston@dinsmore.com

Sweeney Kelly on behalf of Defendant Fidelity National Information Services, Inc.
kelly@ksgklaw.com

Sweeney Kelly on behalf of Defendant Fidelity National Information Services, Inc. dba FIS
kelly@ksgklaw.com

Sweeney Kelly on behalf of Defendant Worldpay Group
kelly@ksgklaw.com

Sweeney Kelly on behalf of Defendant Worldpay, LLC
kelly@ksgklaw.com

Joon M Khang on behalf of Attorney Khang & Khang LLP
joon@khanglaw.com

Joon M Khang on behalf of Debtor The Litigation Practice Group P.C.
joon@khanglaw.com

Ira David Kharasch on behalf of Interested Party Ad Hoc Consumer Claimants Committee

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

ikharasch@pszjlaw.com

Ira David Kharasch on behalf of Interested Party Courtesy NEF
ikharasch@pszjlaw.com

Meredith King on behalf of Defendant Gallant Law Group
mking@fsl.law, ssanchez@fsl.law;jwilson@fsl.law

Meredith King on behalf of Interested Party Courtesy NEF
mking@fsl.law, ssanchez@fsl.law;jwilson@fsl.law

Nicholas A Koffroth on behalf of Creditor Committee Committee of Unsecured Creditors
nkoffroth@foxrothschild.com, khoang@foxrothschild.com;ca.dkt@foxrothschild.com

David S Kupetz on behalf of Defendant Marich Bein LLC
David.Kupetz@lockelord.com, mylene.ruiz@lockelord.com

David S Kupetz on behalf of Defendant Marich Bein, LLC
David.Kupetz@lockelord.com, mylene.ruiz@lockelord.com

David S Kupetz on behalf of Interested Party Courtesy NEF
David.Kupetz@lockelord.com, mylene.ruiz@lockelord.com

Christopher J Langley on behalf of Interested Party Courtesy NEF
chris@slclawoffice.com,
langleycr75251@notify.bestcase.com;ecf123@casedriver.com;john@slclawoffice.com

Kelli Ann Lee on behalf of Trustee Richard A Marshack (TR)
Kelli.lee@dinsmore.com, kristy.allen@dinsmore.com

Matthew A Lesnick on behalf of Defendant OptimumBank Holdings, Inc.
matt@lesnickprince.com, matt@ecf.inforuptcy.com;jmack@lesnickprince.com

Daniel A Lev on behalf of Defendant Consumer Legal Group, PC
daniel.lev@gmlaw.com, cheryl.caldwell@gmlaw.com;dlev@ecf.courtdrive.com

Daniel A Lev on behalf of Defendant LGS Holdco, LLC
daniel.lev@gmlaw.com, cheryl.caldwell@gmlaw.com;dlev@ecf.courtdrive.com

Daniel A Lev on behalf of Interested Party Consumer Legal Group, P.C.
daniel.lev@gmlaw.com, cheryl.caldwell@gmlaw.com;dlev@ecf.courtdrive.com

Daniel A Lev on behalf of Interested Party Courtesy NEF
daniel.lev@gmlaw.com, cheryl.caldwell@gmlaw.com;dlev@ecf.courtdrive.com

Daniel A Lev on behalf of Interested Party Liberty Acquisitions Group Inc.
daniel.lev@gmlaw.com, cheryl.caldwell@gmlaw.com;dlev@ecf.courtdrive.com

Britteny Leyva on behalf of Interested Party Revolv3, Inc.
bleyva@mayerbrown.com,
2396393420@filings.docketbird.com;KAWhite@mayerbrown.com;ladocket@mayerbrown.com

Marc A Lieberman on behalf of Defendant JGW Solutions, LLC
marc.lieberman@flpllp.com, addy@flpllp.com,andrea@flpllp.com

Marc A Lieberman on behalf of Interested Party Courtesy NEF
marc.lieberman@flpllp.com, addy@flpllp.com,andrea@flpllp.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                **F 9013-.1.PROOF.SERVICE**

EXHIBIT 3, PAGE 265

Michael D Lieberman on behalf of Creditor Phillip A. Greenblatt, PLLC
mlieberman@lipsonneilson.com

Yosina M Lissebeck on behalf of Counter-Claimant Richard A. Marshack
Yosina.Lissebeck@Dinsmore.com, caron.burke@dinsmore.com;Wendy.Yones@Dinsmore.com

Yosina M Lissebeck on behalf of Defendant Richard A. Marshack
Yosina.Lissebeck@Dinsmore.com, caron.burke@dinsmore.com;Wendy.Yones@Dinsmore.com

Yosina M Lissebeck on behalf of Plaintiff Richard A. Marshack
Yosina.Lissebeck@Dinsmore.com, caron.burke@dinsmore.com;Wendy.Yones@Dinsmore.com

Yosina M Lissebeck on behalf of Trustee Richard A Marshack (TR)
Yosina.Lissebeck@Dinsmore.com, caron.burke@dinsmore.com;Wendy.Yones@Dinsmore.com

Mitchell B Ludwig on behalf of Creditor Fundura Capital Group
mbl@kpclegal.com, kad@kpclegal.com

Mitchell B Ludwig on behalf of Defendant Bridge Funding Cap, LLC
mbl@kpclegal.com, kad@kpclegal.com

Daniel S March on behalf of Defendant Daniel S. March
marchlawoffice@gmail.com, marchdr94019@notify.bestcase.com

Daniel S March on behalf of Interested Party INTERESTED PARTY
marchlawoffice@gmail.com, marchdr94019@notify.bestcase.com

Kathleen P March on behalf of Creditor Greyson Law Center PC
kmarch@bkylawfirm.com, kmarch3@sbcglobal.net,kmarch@sbcglobal.net

Kathleen P March on behalf of Creditor Han Trinh
kmarch@bkylawfirm.com, kmarch3@sbcglobal.net,kmarch@sbcglobal.net

Kathleen P March on behalf of Creditor Phuong (Jayde) Trinh
kmarch@bkylawfirm.com, kmarch3@sbcglobal.net,kmarch@sbcglobal.net

Kathleen P March on behalf of Defendant Greyson Law Center PC
kmarch@bkylawfirm.com, kmarch3@sbcglobal.net,kmarch@sbcglobal.net

Kathleen P March on behalf of Defendant Han Trinh
kmarch@bkylawfirm.com, kmarch3@sbcglobal.net,kmarch@sbcglobal.net

Kathleen P March on behalf of Defendant Jayde Trinh
kmarch@bkylawfirm.com, kmarch3@sbcglobal.net,kmarch@sbcglobal.net

Mark J Markus on behalf of Creditor David Orr
bklawr@bklaw.com, markjmarkus@gmail.com;markus.markj.r112926@notify.bestcase.com

Richard A Marshack (TR)
pkraus@marshackhays.com, ecf.alert+Marshack@titlexi.com

Laila Masud on behalf of Interested Party Courtesy NEF
lmasud@marshackhays.com,
lmasud@ecf.courtdrive.com;lbuchanan@marshackhays.com;alinares@ecf.courtdrive.com

Laila Masud on behalf of Interested Party Courtesy NEF
lmasud@marshackhays.com,
lmasud@ecf.courtdrive.com;lbuchanan@marshackhays.com;alinares@ecf.courtdrive.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                **F 9013-.1.PROOF.SERVICE**

EXHIBIT 3, PAGE 266

Laila Masud on behalf of Interested Party Richard A. Marshack
lmasud@marshackhays.com,
lmasud@ecf.courtdrive.com;lbuchanan@marshackhays.com;alinares@ecf.courtdrive.com

Laila Masud on behalf of Plaintiff Richard Marshack
lmasud@marshackhays.com,
lmasud@ecf.courtdrive.com;lbuchanan@marshackhays.com;alinares@ecf.courtdrive.com

Laila Masud on behalf of Trustee Richard A Marshack (TR)
lmasud@marshackhays.com,
lmasud@ecf.courtdrive.com;lbuchanan@marshackhays.com;alinares@ecf.courtdrive.com

Sarah S. Mattingly on behalf of Defendant Clearcube LLC
sarah.mattingly@dinsmore.com

Sarah S. Mattingly on behalf of Plaintiff Richard A. Marshack, Chapter 11 Trustee
sarah.mattingly@dinsmore.com

Sarah S. Mattingly on behalf of Plaintiff Richard A. Marshack
sarah.mattingly@dinsmore.com

Sarah S. Mattingly on behalf of Trustee Richard A Marshack (TR)
sarah.mattingly@dinsmore.com

William McCormick on behalf of Creditor TN Dept of Revenue
Bill.McCormick@ag.tn.gov

Kenneth Misken on behalf of U.S. Trustee United States Trustee (SA)
Kenneth.M.Misken@usdoj.gov

Byron Z Moldo on behalf of Interested Party Byron Moldo
bmoldo@ecjlaw.com, aantonio@ecjlaw.com,dperez@ecjlaw.com

Glenn D. Moses on behalf of Creditor ADP, Inc
gmoses@venable.com, cascavone@venable.com;jpmalcolm@venable.com;jadelgado@venable.com

Jamie D Mottola on behalf of Plaintiff Richard A. Marshack, Chapter 11 Trustee
Jamie.Mottola@dinsmore.com, jhanawalt@ecf.inforuptcy.com

Alan I Nahmias on behalf of Interested Party Courtesy NEF
anahmias@mbn.law, jdale@mbn.law

Victoria Newmark on behalf of Interested Party Courtesy NEF
vnewmark@pszjlaw.com

Jacob Newsum-Bothamley on behalf of Plaintiff Richard A. Marshack
jacob.bothamley@dinsmore.com, angelica.urena@dinsmore.com;deamira.romo@dinsmore.com

Jacob Newsum-Bothamley on behalf of Trustee Richard A Marshack (TR)
jacob.bothamley@dinsmore.com, angelica.urena@dinsmore.com;deamira.romo@dinsmore.com

Queenie K Ng on behalf of U.S. Trustee United States Trustee (SA)
queenie.k.ng@usdoj.gov

Israel Orozco on behalf of Creditor Israel Orozco
israel@iolawcorp.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

Case 8:23-bk-10571-SC   Doc 1800   Filed 10/08/24   Entered 10/08/24 18:19:16   Desc
Main Document      Page 271 of 332

Case 8:23-bk-10571-SC   Doc 1486-2   Filed 08/05/24   Entered 08/05/24 11:36:41
Desc  Declaration of Richard A. Marshack In Support   Page 13 of 15

Keith C Owens on behalf of Creditor Committee Committee of Unsecured Creditors
kowens@foxrothschild.com, khoang@foxrothschild.com

Lisa Patel on behalf of Defendant OptimumBank Holdings, Inc.
lpatel@lesnickprince.com, jmack@lesnickprince.com;jnavarro@lesnickprince.com

Michael R Pinkston on behalf of Creditor Wells Marble and Hurst, PLLC
rpinkston@seyfarth.com,
jmcdermott@seyfarth.com,sfocalendar@seyfarth.com,5314522420@filings.docketbird.com,bankruptcyd
ocket@seyfarth.com

Douglas A Plazak on behalf of Defendant Scott James Eadie
dplazak@rhlaw.com

Tyler Powell on behalf of Counter-Claimant Richard A Marshack (TR)
tyler.powell@dinsmore.com, jennifer.pitcock@dinsmore.com;caitlin.brock@dinsmore.com

Tyler Powell on behalf of Counter-Claimant Richard A. Marshack
tyler.powell@dinsmore.com, jennifer.pitcock@dinsmore.com;caitlin.brock@dinsmore.com

Tyler Powell on behalf of Defendant Richard A. Marshack
tyler.powell@dinsmore.com, jennifer.pitcock@dinsmore.com;caitlin.brock@dinsmore.com

Tyler Powell on behalf of Plaintiff Richard A. Marshack
tyler.powell@dinsmore.com, jennifer.pitcock@dinsmore.com;caitlin.brock@dinsmore.com

Tyler Powell on behalf of Trustee Richard A Marshack (TR)
tyler.powell@dinsmore.com, jennifer.pitcock@dinsmore.com;caitlin.brock@dinsmore.com

Daniel H Reiss on behalf of Defendant PECC Corp
dhr@lnbyg.com, dhr@ecf.inforuptcy.com

Daniel H Reiss on behalf of Defendant Touzi Capital, LLC
dhr@lnbyg.com, dhr@ecf.inforuptcy.com

Daniel H Reiss on behalf of Defendant Eng Taing
dhr@lnbyg.com, dhr@ecf.inforuptcy.com

Ronald N Richards on behalf of Defendant Consumer Legal Group, PC
ron@ronaldrichards.com, 7206828420@filings.docketbird.com

Ronald N Richards on behalf of Defendant LGS Holdco, LLC
ron@ronaldrichards.com, 7206828420@filings.docketbird.com

Ronald N Richards on behalf of Interested Party Courtesy NEF
ron@ronaldrichards.com, 7206828420@filings.docketbird.com

Vanessa Rodriguez on behalf of Plaintiff Richard A. Marshack
vanessa.rodriguez@dinsmore.com, angelica.urena@dinsmore.com

Vanessa Rodriguez on behalf of Trustee Richard A Marshack (TR)
vanessa.rodriguez@dinsmore.com, angelica.urena@dinsmore.com

Kevin Alan Rogers on behalf of Creditor Wells Marble and Hurst, PLLC
krogers@wellsmar.com

Gregory M Salvato on behalf of Creditor Mari Agape

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

**F 9013-.1.PROOF.SERVICE**

EXHIBIT 3, PAGE 268

gsalvato@salvatoboufadel.com,
calendar@salvatolawoffices.com;jboufadel@salvatoboufadel.com;gsalvato@ecf.inforuptcy.com

Gregory M Salvato on behalf of Interested Party Courtesy NEF
gsalvato@salvatoboufadel.com,
calendar@salvatolawoffices.com;jboufadel@salvatoboufadel.com;gsalvato@ecf.inforuptcy.com

Olivia Scott on behalf of Creditor Azzure Capital LLC
olivia.scott@hklaw.com

Olivia Scott on behalf of Creditor Hi Bar Capital LLC
olivia.scott@hklaw.com

Jonathan Serrano on behalf of Plaintiff Richard A. Marshack
jonathan.serrano@dinsmore.com

Jonathan Serrano on behalf of Special Counsel Dinsmore & Shohl LLP
jonathan.serrano@dinsmore.com

Jonathan Serrano on behalf of Trustee Richard A Marshack (TR)
jonathan.serrano@dinsmore.com

Maureen J Shanahan on behalf of Creditor Randall Baldwin Clark Attorney at Law PLLC
Mstotaro@aol.com

Paul R Shankman on behalf of Attorney Paul R. Shankman
PShankman@fortislaw.com, info@fortislaw.com

Paul R Shankman on behalf of Creditor United Partnerships, LLC
PShankman@fortislaw.com, info@fortislaw.com

Zev Shechtman on behalf of Interested Party Danning Gill Israel & Krasnoff LLP
Zev.Shechtman@saul.com, zshechtman@ecf.inforuptcy.com;easter.santamaria@saul.com

Zev Shechtman on behalf of Interested Party Morning Law Group, P.C.
Zev.Shechtman@saul.com, zshechtman@ecf.inforuptcy.com;easter.santamaria@saul.com

Jeffrey M Singletary on behalf of Plaintiff Alteryx, Inc.
jsingletary@swlaw.com, rmckay@swlaw.com

Leslie Skorheim on behalf of U.S. Trustee United States Trustee (SA)
leslie.skorheim@usdoj.gov

Adam D Stein-Sapir on behalf of Creditor Pioneer Funding Group, LLC
info@pfllc.com

Howard Steinberg on behalf of Defendant BankUnited, N.A.
steinbergh@gtlaw.com, pearsallt@gtlaw.com;NEF-BK@gtlaw.com;howard-steinberg-
6096@ecf.pacerpro.com

John H. Stephens on behalf of Plaintiff Richard A Marshack
john.stephens@dinsmore.com, lizbeth.alonso@dinsmore.com

John H. Stephens on behalf of Plaintiff Richard A Marshack
john.stephens@dinsmore.com, lizbeth.alonso@dinsmore.com

Andrew Still on behalf of Creditor Alteryx, Inc.
astill@swlaw.com, kcollins@swlaw.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                    **F 9013-.1.PROOF.SERVICE**

EXHIBIT 3, PAGE 269

Andrew Still on behalf of Interested Party Courtesy NEF
astill@swlaw.com, kcollins@swlaw.com

Andrew Still on behalf of Plaintiff Alteryx, Inc.
astill@swlaw.com, kcollins@swlaw.com

Michael R Totaro on behalf of Creditor Randall Baldwin Clark Attorney at Law PLLC
Ocbkatty@aol.com

Michael R Totaro on behalf of Interested Party Randall Baldwin Clark
Ocbkatty@aol.com

United States Trustee (SA)
ustpregion16.sa.ecf@usdoj.gov

William J Wall on behalf of Witness Bradford Lee
wwall@wall-law.com

Sharon Z. Weiss on behalf of Creditor Azzure Capital LLC
sharon.weiss@bclplaw.com, raul.morales@bclplaw.com,REC_KM_ECF_SMO@bclplaw.com

Sharon Z. Weiss on behalf of Creditor Hi Bar Capital LLC
sharon.weiss@bclplaw.com, raul.morales@bclplaw.com,REC_KM_ECF_SMO@bclplaw.com

Sharon Z. Weiss on behalf of Defendant Azzure Capital LLC
sharon.weiss@bclplaw.com, raul.morales@bclplaw.com,REC_KM_ECF_SMO@bclplaw.com

Johnny White on behalf of Creditor Debt Relief Group, LLC
JWhite@wrslawyers.com, jlee@wrslawyers.com

Johnny White on behalf of Interested Party Courtesy NEF
JWhite@wrslawyers.com, jlee@wrslawyers.com

Reina Zepeda on behalf of Other Professional Omni Agent Solutions
rzepeda@omniagnt.com

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

**F 9013-.1.PROOF.SERVICE**

EXHIBIT 3, PAGE 270

**EXHIBIT 4**

Nancy B. Rapoport
William S. Boyd School of Law
University of Nevada, Las Vegas
4505 S. Maryland Parkway
Mail Stop 451003
Las Vegas, Nevada  89154-1003
nancy.rapoport@unlv.edu

Court-Appointed Ethics Compliance Monitor

**FILED & ENTERED**

**AUG 07 2024**

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY bolte        DEPUTY CLERK

**CHANGES MADE BY COURT**

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION**

| | |
|---|---|
| In re | Case No. 8:23-bk-10571-SC |
| THE LITIGATION PRACTICE GROUP P.C., | Chapter 11 |
| Debtor. | **ORDER PURSUANT TO 11 U.S.C. § 105 AND LBR 2016-1(d) AUTHORIZING THE RETENTION OF NANCY B. RAPOPORT AS FEE EXAMINER AND EXPANDING SCOPE TO INCLUDE ALL RETAINED PROFESSIONALS** |
| | **[No Hearing Required - LBR2016-1(d)]** |

On August 5, 2024, Nancy B. Rapoport, Court-Appointed Ethics Compliance Monitor, filed her APPLICATION FOR ORDER PURSUANT TO 11 U.S.C. § 105 AND LBR 2016-1(d) AUTHORIZING THE RETENTION OF NANCY B. RAPOPORT AS FEE EXAMINER AND APPROVING STIPULATION GOVERNING SAME [Dkt. No. 1486] (the "Application").

The Court having considered the Application, the Declarations in Support and the Stipulation attached thereto, the docket as a whole, and finding good cause, orders as follows:

1.  The Application is GRANTED, and expanded, as set forth herein.

2.  Nancy B. Rapoport shall be appointed as the Fee Examiner ("Fee Examiner") in this case.

3.  Pursuant to the authority of this Court under § 105(a) of the Bankruptcy Code, having

1

considered the particular facts of this case, this order shall apply to ***all*** *retained*

*professionals*, including Fox Rothschild LLP as counsel for the Committee of Unsecured

Creditors and Force Ten Partners, LLC, as financial advisor for the Committee of

Unsecured Creditors, whose fee applications shall also be subject to review by the Fee

Examiner.

4.  To be clear, all professionals' fees, including those not party to the accompanying

Stipulation, shall be reviewed by the Fee Examiner with respect to the requests for fees

and reimbursement of costs from the initial period of employment through the

designated first interim period.  For such services the Fee Examiner shall receive

compensation as follows:

$30,000 for examination of fees and reimbursable expenses of the Professionals who

have entered into the accompanying Stipulation for Appointment of Fee

Examiner.  With respect to examination of the remaining professionals not party to the

Stipulation, if the initial amount of the fees sought by all professionals cumulatively

exceed $8,000,000, the Fee Examiner may apply for further compensation pursuant to

11 U.S.C. § 330 for services rendered for efforts due to professionals not parties to the

presented Stipulation.

5.  All compensation to the Fee Examiner shall be paid by the Estate.


**IT IS SO ORDERED.**

# # #

Date: August 7, 2024

Scott C. Clarkson
United States Bankruptcy Judge

2

**EXHIBIT 5**

FILED & ENTERED

SEP 06 2024

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY bolte        DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SANTA ANA DIVISION

|  |  |
|---|---|
| In re:<br><br>The Litigation Practice Group P.C.,<br><br><br><br><br>Debtor(s). | Case No.: 8:23-bk-10571-SC<br><br>CHAPTER 11<br><br>**ORDER CLARIFYING FEE EXAMINER ORDER [DK. 1489]**<br><br>Fee Application Hearings:<br>Date:        September 24, 2024<br>Time:        10:00 AM<br>Courtroom: 5C |

On August 7, 2024 [Dk. 1489], this Court entered an order authorizing the retention and appointment of Nancy B. Rapoport as the Fee Examiner in this case [Dk. 1489] ("August 7 Order"). The August 7 Order was issued by the Court "having considered the particular facts of this case" and noted that its terms applied to "all retained professionals." [Dk. 1489, pg. 2:1-5]. In furtherance of the foregoing order, the Court clarifies that the Court will review the following applications without the assistance of a review by Ms. Rapoport in her capacity as the Court Appointed Fee Examiner under the August 7 Order:

-1-

EXHIBIT 5, PAGE 273

1    (1) The Interim Fee Application of Nancy Rapoport, the Court Appointed Ethics

2  Compliance Monitor, filed September 3, 2024 [Dk. 1613];

3    (2) The First and Final Application of Lucy Thomson, Consumer Privacy

4  Ombudsman, filed September 3, 2024 [Dk. 1622]; and,

5    (3) The Interim Fee Application of Khang & Khang, filed September 3, 2024 [Dk.

6  1623].

7    **IT IS SO ORDERED.**

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Date: September 6, 2024

Scott C. Clarkson
United States Bankruptcy Judge

26

27

28

-2-

**EXHIBIT 6**



1 | Christopher B. Ghio (State Bar No. 259094)
Christopher Celentino (State Bar No. 131688)
2 | Yosina M. Lissebeck (State Bar No. 201654)
**DINSMORE & SHOHL LLP**
3 | 655 West Broadway, Suite 800
San Diego, CA 92101
4 | Telephone: 619.400.0500
Facsimile:  619.400.0501
5 | christopher.ghio@dinsmore.com
christopher.celentino@dinsmore.com
6 | yosina.lissebeck@dinsmore.com

7 | Special Counsel to Richard A. Marshack

8

9

10 | **UNITED STATES BANKRUPTCY COURT**

11 | **CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION**

12

13 | In re:

    Case No.: 8:23-bk-10571-SC

14 | THE LITIGATION PRACTICE GROUP P.C.,

    Chapter 11

15 |     Debtor.

16 |     **DECLARATION OF NANCY RAPOPORT
IN SUPPORT OF MOTION OF TRUSTEE
RICHARD A. MARSHACK FOR ENTRY
OF AN ORDER (A) APPROVING SALE
OF ASSETS FREE AND CLEAR OF ALL
LIENS, CLAIMS, ENCUMBRANCES AND
INTERESTS PURSUANT TO 11 U.S.C.
§ 363(b) AND (B) APPROVING
ASSUMPTION AND ASSIGNMENT OF
CERTAIN EXECUTORY CONTRACTS
AND UNEXPIRED LEASES AND OTHER
AGREEMENTS**

17

18

19

20

21 | Date:  July 21, 2023
22 | Time:  10:00 a.m.
Judge: Hon. Scott C. Clarkson
23 | Place:  Courtroom 5C
    411 W. Fourth Street
24 |     Santa Ana, CA  92701

25

26

27

28

EXHIBIT 6, PAGE 275

I, Nancy Rapoport, declare as follows:

1.      I am an attorney and a member of the faculty of the William S. Boyd School of Law, University of Nevada, Las Vegas.   A true and correct copy of my CV is attached hereto and incorporated herein by reference.  I have been contacted by Christopher Celentino, with whom I was involved in cases when I was a practicing attorney with Morrison and Foerster LLP in the earlier part of my career, to consider the possibility of appointment by the Court as the Monitor for compliance pursuant to a proposed Asset Purchase Agreement (the "APA"), to be considered by the Court at hearing noted herein.  I am in receipt of, and have reviewed, the proposed APA; for the purposes of this Declaration, there are comments and clarifications to my duties that I would request become part of the Appointment Order.   These comments and clarifications differ from the text of the current APA.   Mr. Celentino will propose those changes to the Court, the OUST, the Trustee, and the Committee in advance of the sale hearing on July 21, 2023. Before my Dean can consider and approve my outside employment request, I will need to explain my duties to her; thus, it would be helpful to ensure that my duties are clearly set forth in the Appointment Order.  Based upon my discussions with Mr. Celentino, as set forth herein, I have expressed an interest to be considered for the role of Monitor, subject to the following disclosures and further subject to the proviso that the final terms of my proposed appointment, as set forth in the anticipated Appointment Order, are acceptable to my Dean and to me.

2.      I have personal knowledge of the matters set forth herein. If called as a witness in this matter, I could and would testify competently thereto.

3.      I serve on the ABI's Veterans and Servicemembers Task Force with Judge Clarkson. I know lawyers at many of the firms involved in this case, including lawyers at Pachulski Stang Ziehl & Jones and Bryan Cave Leighton Paisner (especially Sharon Weiss), Fox Rothschild, and Locke Lord.  I also have connections with the Office of the United States Trustee (the "USTO") on a nationwide basis, having done some expert work for the USTO in the past.

4.      I understand that the proposed terms of my employment as Monitor, as currently contemplated, are based upon Judge Drain's appointment of a compliance Monitor as set forth in the Purdue Pharma L.P., et al., v. Commonwealth of Massachusetts (In re Purdue Pharma, L.P., Bankr.

1

EXHIBIT 6, PAGE 276

S.D.N.Y. Case No. 19-23649 (RDD) Adv. Pro. No. 19-08289, and that the appointment in this case would be pursuant to the Court's power under 11 U.S.C. section 105(a) and the explicit written consent of the Buyer pursuant to the APA to be executed in conjunction with the sale.

5.    I further understand that the APA contemplates that the Estate and the Buyer will each advance $100,000 at the Closing of the APA as initial funding for my employment as a Monitor; and that subsequent fees over that amount to be pursued by me and considered by the Court will be paid from funds of the Estate, as approved.

6.    My current hourly rate is $975.00 per hour, adjusted each January.  Moreover, pursuant to my employment arrangement with UNLV, the Estate will have to remit to "UNLV Foundation-Boyd Law" $250.00 per month for any inadvertent use of state resources.  I have a minimum monthly fee of $5,000.00.

7.    Because of my residence in Las Vegas, because of my teaching schedule, and to preserve resources, I prefer for any court appearances to be by Zoom, so that I don't have to incur unnecessary travel expenses.

8.    I am interested in exploring further with the Court and the parties the specific duties that I am to perform.  I am concerned that my appointment as a Monitor pursuant to 11 U.S.C. § 105 may be subject to appeal and will want to address that issue with the Court and the Parties to ensure that the appointment can survive any appeal, and is consented to by the confirmed Buyer, the Trustee, the OUST, and the Creditors' Committee, or is otherwise a binding order of the Court concerning said parties, prior to Closing of the proposed sale.

9.    The following represents the currently contemplated terms of employment as a Monitor; however, prior to undertaking the role, I would expect to finalize the specifics of the role to the Court's, my Dean's, and my satisfaction before agreeing to serve in this role.  It is my understanding that the overarching role of a Monitor in this case is strictly to monitor the Buyer's compliance with generally understood ethical standards and certain consumer protection obligations and not to act as an attorney or to provide any legal advice whatsoever to the Buyer or any of the Buyer's to-be-assumed clients.  Given the reach of the operations, my role shall not include specific compliance with any given state's ethics rules. It shall be the role of the Buyer, and not the Monitor,

2

EXHIBIT 6, PAGE 277

1   to seek legal counsel in terms of compliance with any specific state's legal ethics rules.  It is not my

2   desire or expectation to be involved in any post-plan confirmation role in the case.

3       **Anticipated Duties**:

4           Appointment and Responsibilities of Monitor.

5           Pursuant to the APA, the Buyer shall consent to the appointment of, and the Court, in

6   light of such consent, shall appoint a Monitor with detailed, specified duties; among those will be:

7           1.      The Monitor shall perform her duties according to the terms of the APA and

8   the Order of the Court Approving the APA and the Order Appointing Monitor, pursuant to which the

9   Monitor shall be vested with all rights and powers reasonably necessary to carry out such powers,

10  duties, authority, and responsibilities enumerated therein.

11          2.      The Monitor shall work with all diligence to confirm and oversee compliance

12  with the ethical issues raised as part of the representations and warranties of the Buyer -- and the

13  underlying ethical compliance and consumer protections of the operations of its legal services

14  agreements with its clients -- as set forth in the APA. I understand the specific duties and mechanisms

15  for support of my role as Monitor will be set forth in a separate Order of Appointment that shall be

16  entered by the Court.  I understand that I shall provide periodic (to be determined) reports to the

17  Trustee, the Committee, and the Bankruptcy Court as outlined below.

18          3.      The Monitor shall:

19              a.      subject to any legally recognized privilege and as necessary or to

20  perform her duties hereunder, have full and complete access to the Buyer's personnel, books, records,

21  and facilities, and to any other information, as the Monitor may request. The Buyer, in conjunction

22  with the Trustee and the Committee, shall develop such information as the Monitor may request and

23  shall fully, completely, and promptly cooperate with the Monitor. The Monitor may raise with the

24  Trustee, Committee and the Court any issues relating to any failure of or delay in such cooperation

25  for an expedited resolution by the Court;

26              b.      serve, without bond or other security, at the cost and expense of the

27  Estate and the Buyer in accordance with the APA, with the Monitor's fees subject to final approval

28  by the Court; the Monitor shall submit fee applications every 120 days, and it is contemplated that

3

1  the Court will authorize the payment of 80% of fees and 100% expenses each month, with a fee

2  application to be filed every 120 days. It is further contemplated that the Monitor shall be authorized

3  to use the services of Special Counsel to the Trustee for the purpose of preparing and submitting such

4  fee applications and in filing any reports or other pleadings with the Court;

5          c.    have the authority to employ, upon Court approval, at the cost and

6  expense of the debtor's estate, such consultants, accountants, attorneys, and other representatives and

7  assistants as are necessary to carry out the Monitor's and responsibilities. The Monitor shall be

8  authorized to use the services of the Trustee's Special Counsel and the Trustee's accountants to

9  conduct forensic analysis of data for the Monitor, at the expense of the Estate. The Monitor shall

10 serve      for      a      period      of      one      year      from

11 date of appointment unless extended by the Court, at which time the Monitor shall submit a final

12 report, and be discharged;

13         d.    have no obligation, responsibility or liability for the operations of the

14 Buyer; and the Estate shall indemnify, defend and hold harmless the Monitor from any and all liability

15 and expenses incurred in accordance with the Monitor's duties to be performed hereunder;

16         e.    file a first report on the 120th day after the Closing; and thereafter not

17 less than every 90 days regarding compliance by the Buyer with the terms of the APA and the Order

18 of Appointment of the Monitor; provided that elements of any such report may be filed under seal or

19 subject to such other confidentiality Restrictions contained in the Appointment Order. The Court may,

20 in response to such reports, provide such further direction to the Monitor as it deems appropriate, said

21 determination to be made after notice and a hearing in conjunction with the Court's calendar and as

22 directed by the Court.

23         f.    maintain as confidential the data of Buyer pursuant to guidelines as

24 may be established in the appointment order; and each of the Monitor's consultants, accountants,

25 attorneys and other representatives and assistants shall also maintain such confidentiality as deemed

26 necessary by the parties; provided, however, that nothing shall restrict the Monitor from providing

27 any information to the Court and the parties consistent with the terms of the Protective Order; and

28

4

1              g.      promptly seek an order requiring compliance or such other remedies as

2 may be appropriate under the circumstances should the Buyer not comply with its obligations under

3 the APA, and specifically section 12 thereof (Buyer's representations and warranties, except wth

4 respect to section 12(o), as section 12(o) shall be solely the responsibility of the Trustee):

5             4.      Disputes Regarding Compliance

6              a.      If the Monitor should develop a reasonable basis to believe the Buyer

7 is not in compliance with the terms of the APA or the Buyer's duties as set forth inthe Appointment

8 Order, the Monitor shall notify the Buyer, via the Buyer's General Counsel, in writing of the specific

9 objection, including identifying the provisions of the APA, the Appointment Order, or any ethics rule

10 that the practice appears to violate, and give the Buyer thirty (30) days to respond to the notification

11 and cure the conduct at issue, if necessary.

12             b.      To the extent that the Buyer fails to cure the alleged conduct within the

13 thirty (30) day period, the Monitor shall have ten (10) days to determine the appropriate action and

14 response, and shall notify the Trustee, the Committee, and the Court of the alleged violative practice

15 and may, but shall not be required to, recommend an appropriate action, response, or remedy to be

16 implemented by the Court; based upon the Monitor's notification, and recommendation, if any, either

17 the Trustee or the Committee may seek an appropriate remedy from the Bankruptcy Court via Noticed

18 Motion, or in the event of an emergency, in accordance with the Emergency procedures set forth in

19 the Local Rules of the United States Bankruptcy Court for the Central District of California, and all

20 other applicable rules.

21      I declare under penalty of perjury under the laws of the United States of America that the

22 foregoing is true and correct, and that this declaration is executed on this 17th day of July, 2023 at

23 Las Vegas, Nevada.

24

25

Nancy Rapoport

26

27

28

5

# NANCY B. RAPOPORT, J.D.

William S. Boyd School of Law
University of Nevada, Las Vegas
4505 S. Maryland Parkway
Mail Stop 451003
Las Vegas, NV 89154-1003
nancy.rapoport@unlv.edu
Cell:  713-202-1881

SSRN author page:  http://ssrn.com/author=260022
Google Scholar page:  http://scholar.google.com/citations?user=s7ElcsEAAAAJ&hl=en
IMDB.com page:  http://imdb.com/name/nm1904564/
Blog:  https://nancyrapoports.blog/

## EDUCATION

**Stanford Law School, J.D. (1985)**

*Selected activities and honors:*

- Note Editor, STANFORD LAW REVIEW (1984-85).
- Thesis:  *Computer Program for Secured Transactions* (1985).
- Technical assistant in various law school and all-university plays (1983-85).
- First Place, Stanford Women's Intramural Powerlifting Competition (1985).

**Rice University, B.A., *summa cum laude,* Legal Studies and Honors Psychology (1982)**

*Selected activities, honors, and scholarships:*

- Senior Thesis:  *The Effects of Time of Day on Cognitive Performance,* Psychology Department (1982).
- Phi Beta Kappa (1981).
- Houston Psychological Association Award for Excellence in Psychology (1982).
- Jones College Scholar (1981-82) and Academic Coordinator, Jones College (1980-82).
- President, Rice Hillel (1980-82).
- Student Advisor, Lovett College (1979-80).
- Member, Student Admissions Committee (1979-82).
- Founder, Rapoport Prize in Legal Studies (1982).
- Scholarships:  Max Roy Scholarship (1979-80, 1981-82); Jones College Scholarship (1981-82); Board of Governors Scholarship (1980-81).

Nancy B. Rapoport
Page 2

## EMPLOYMENT

**University of Nevada, Las Vegas**

- **Special Counsel to the President (2016-18).**
- **Acting Senior Vice President for Finance and Business (summer of 2017).**
- **Acting Executive Vice President & Provost (2015-16).**
- **Senior Advisor to the UNLV President (2014-15) (member of UNLV's Cabinet).**
- **Provost's Leadership Development Academy Coordinator (2013-14); Co-Coordinator (2014-15).**

- **William S. Boyd School of Law, University of Nevada, Las Vegas**
  - **UNLV Distinguished Professor (awarded in 2022).**
  - **Garman Turner Gordon Professor of Law (2007-present) (formerly the Gordon Silver Professor of Law).**
  - **Interim Dean (2012-13).**

  *Courses:* Basic Bankruptcy Law; Contracts; Professional Responsibility; Seminar on Corporate Scandals; Colloquium on Lawyers in Pop Culture; Business Law & Ethics; Bankruptcy Ethics.

- **Affiliate Professor of Business Law and Ethics, Lee Business School (renewable; 2014-present)**
  - **Co-Chair, Task Force on Scholarship, Lee Business School Strategic Planning Team (2014).**

*Responsibilities and Accomplishments as Special Counsel to the President:*

- The Executive Director of the Office of Compliance, the Ombuds Panel, the Special Projects Director, and the Interim Executive Director of the Office of Community Engagement reported to me.
- Coordinated, with Kyle Kaalberg (Special Projects Director), the continued implementation of UNLV's strategic plan (Top Tier). In late 2018, UNLV was added to the list of Carnegie R1 institutions.
- Served as a member of the President's Cabinet.
- Coordinated and monitored compliance activities across UNLV.
- Interacted frequently with members of the Board of Regents and the Nevada System of Higher Education.

*Responsibilities and Accomplishments as Acting Executive Vice President and Provost:*

- The deans of the School of Allied Health Sciences, the Lee Business School, the School of Community Health Sciences (now the School of Public Health), the School of Dental Medicine, the College of Education, the Howard R. Hughes College of Engineering, the College of Fine Arts, the Graduate College, the Honors College, the William F. Harrah

Nancy B. Rapoport
Page 3

College of Hotel Administration, the William S. Boyd School of Law, the College of Liberal Arts, the School of Medicine (co-reporting to the President), the School of Nursing, the College of Sciences, and the Greenspun College of Urban Affairs all reported to me, as did the Senior Vice Provost, the Vice Provost for Information Technology, the Assistant Vice President of Academic Resources, the Associate Vice Provost for the Office of Decision Support, and the Special Assistant to the Executive Vice President and Provost.

- Chaired the board of directors of UNLV Singapore Ltd.
- Worked with President Jessup, two co-chairs of the Top Tier Plan, and the chairs and co-chairs of five committees, to implement year one of the Top Tier strategic plan.
- Repaired relationships with the Faculty Senate.
- Hired three new deans (Liberal Arts, Fine Arts, and Allied Health) and one acting dean (Sciences).
- Reinstituted the three-year dean review process and provided more autonomy to the deans of schools and colleges.

*Responsibilities and Accomplishments as Acting Senior Vice President for Finance & Business:*

- The departments of Planning and Construction, Budgets, Campus Audit, Human Resources, Facilities Management, Administration (Delivery Service, Telecommunication Services, Parking Services, and Real Estate), Risk Management and Safety, Purchasing, and the Controller reported to me.
- Served as a member of the negotiating team for the Las Vegas Stadium (Las Vegas Raiders).
- Repaired a challenging set of internal management issues.

*Responsibilities and Accomplishments as Senior Advisor to the UNLV President:*

- Developed the strategic plan (Top Tier) by working in concert with former Presidents Donald Snyder and Len Jessup, Jim Thomson (the Special Advisor to the President for Regional Development and also the former CEO of the RAND Corp.), our consultants (Academic Leadership Associates), Kyle Kaalberg (then the Special Assistant to the President's Chief of Staff), over 200 stakeholders inside and outside UNLV.
- Continued to serve as the point person for the execution of UNLV's strategic plan during all other central administration roles.

*Responsibilities and Accomplishments as Interim Dean of Boyd School of Law:*

- The Associate Dean for Academic Affairs, the Associate Dean for Student Affairs, the Associate Dean for Administration and External Affairs, the Associate Dean for Faculty Development and Research, the Director of the Wiener-Rogers Law Library, the Director of Information Technology and the Budget Director all reported to me.
- Managed a budget of roughly $20 million.
- Facilitated the conversion process for legal writing professors to move from long-term contracts to tenure-track positions and facilitated the hiring of two new tenure-track professors.

Nancy B. Rapoport
Page 4

- Significant fundraising success; systematized certain internal functions; and facilitated a review of our curriculum.
- *Honors:* Named "Faculty Member of the Year" (and faculty commencement speaker) by Boyd law students in 2021; named "Dean of the Year" by Boyd law students in 2013.

**University of Houston Law Center**
**Professor of Law (2006-07).**
**Dean (2000-06).**

*Responsibilities and Accomplishments as Dean:*

- The Associate Dean for Academic Affairs, the Associate Dean for Student Affairs, the Director of the O'Quinn Law Library, the Associate Dean for Information Technology, the Associate Dean for Finance and Administration and Chief Operating Officer of the Law Foundation, the Associate Dean for External Affairs and Executive Director of the Law Foundation, and the Director of CLE all reported to me.
- Presided over a record increase in the amount and size of gifts to the Law Center, even during a downturn in the economy; raised seven new Law Center professorships, in partnership with a special campaign of the University of Houston, in under two months.
- Facilitated the establishment of several new centers, programs, and institutes, including the Criminal Justice Institute, the Institute for Energy, Law & Enterprise (now the Program in Energy, Environment & Natural Resources), and the Center for Consumer Law.
- Reinvigorated the Blakely Advocacy Institute (BAI) and acquired the A.A. White Center for Dispute Resolution as part of the BAI.
- Encouraged the first major revamping of the Law Center's curriculum in twenty years.
- Hired fourteen new faculty members (three of which hold endowed chairs at the Law Center).
- Facilitated the Law Center's recovery from the devastation caused by Tropical Storm Allison on June 9, 2001, which poured over 12 feet of water into the Law Center's sub-basement and destroyed much of its library collection (over 175,000 volumes and 1,000,000 microfiche lost) and all of the Law Center's facilities. As part of the lessons learned during our recovery, hosted Loyola University New Orleans College of Law after Hurricane Katrina, until it could recover and return to New Orleans.

**University of Nebraska College of Law**
**Dean and Professor of Law (1998-00).**

*Responsibilities and Accomplishments as Dean:*

- The Associate Dean, the Assistant Dean for Administration and Student Services, the Assistant Dean for Career Services and Alumni Relations, the Director of the Law Library, the Director of Development, the Office Manager, and the Acting Head of the Nebraska Institute for Technology in the Practice of Law all reported to me.

Nancy B. Rapoport
Page 5

- Instituted the creation of a new Access database to enable all Law College administrative units to organize and share information; improved our systems for the scheduling of Law College events, the timely review of employees, and the cultivation and stewardship of donors; initiated the design of the new "image" of the Law College; and revamped the furnishings of the student lounge (at zero cost to the Law College).
- Raised significant funds for such needs as scholarships and professorships.
- Encouraged the establishment of new student organizations (including an organization for law students who preferred non-traditional career paths and a GLBT student organization).
- Encouraged the development of a link between an undergraduate "learning community" and the Law College.

**Moritz College of Law, The Ohio State University**
**Professor (1998).**
**Associate Dean for Student Affairs (1996-98).**
**Associate Professor (with tenure) (1995-98).**
**Assistant Professor (1991-95).**

*Responsibilities and Accomplishments as Associate Dean for Student Affairs:*

- Assistant Dean of Admissions and Financial Aid, the Financial Aid Counselor and Staff Assistant, and the Placement Director reported to me.
- Counseled potential applicants regarding admission to College of Law and counseled existing students on academic and non-academic issues.
- With our Development Director, facilitated the establishment and maintenance of scholarships and other relationships with donors.

**Morrison & Foerster LLP**
**Associate, Bankruptcy and Workouts Group, Business Department (1986-91).**

- Bankruptcy cases included *In re Toy Liquidating Co. (Worlds of Wonder), Plexus, Greyhound, Nucorp,* and *California Land & Cattle Co.*
- Significant experience in bankruptcies involving industries such as toy manufacturers, computers, livestock, and television stations.

**The Hon. Joseph T. Sneed, United States Court of Appeals for the Ninth Circuit**
**Judicial Clerk (1985-86).**

## PUBLICATIONS, GRANTS, SPECIAL TRAINING, AND PRESENTATIONS

### Works in progress

- Nancy B. Rapoport, *Training Law Students to Model Civility When Social Media Makes Civility Harder to Maintain,* ___ U. PITT. L. REV. ___ (2023) (invited speaker at *The Jurisprudence and Legacy of the Honorable Joseph F. Weis Jr. Symposium*).

Nancy B. Rapoport
Page 6

- Nancy B. Rapoport & Joseph R. Tiano, Jr., *Reimagining "Reasonableness" Under Section 330(a) in a World of Technology, Data, and Artificial Intelligence,* ___ AM. BANKR. L.J. ___ (forthcoming 2023) (peer-reviewed).
- Nancy B. Rapoport, *Review of 2022 Books on Legal Education,* ___ GREEN BAG ___ (2023) (solicited manuscript).
- Nancy B. Rapoport, *Training Law Students to Model Civility When Social Media Makes Civility Harder to Maintain,* University of Pittsburgh School of Law, Symposium on the Jurisprudence and Legacy of the Honorable Joseph F. Weis Jr., ___ U. PITT. L. REV. ___ (2023) (invited speaker).
- Aspen Practice Perfect Series, *Professional Responsibility* (forthcoming 2024) (with Andrew M. Perlman and Melissa B. Shultz).

**Books**

- BERNARD A. BURK, VERONICA J. FINKELSTEIN & NANCY B. RAPOPORT, ETHICAL LAWYERING: A GUIDE FOR THE WELL-INTENTIONED (Aspen Publishing 2021) (second edition forthcoming 2024).
- NANCY B. RAPOPORT & JEFFREY D. VAN NIEL, CORPORATE SCANDALS AND THEIR IMPLICATIONS (3d ed.) (West Academic 2018).
- BLOOMBERG BNA BANKRUPTCY LAW TREATISE, A TREATISE WITH REAL-TIME UPDATES (contributing editor) (Bloomberg BNA 2014).
- NANCY B. RAPOPORT & JEFFREY D. VAN NIEL, LAW FIRM JOB SURVIVAL MANUAL: FROM FIRST INTERVIEW TO PARTNERSHIP (Wolters Kluwer 2014).
- NANCY B. RAPOPORT & JEFFREY D. VAN NIEL, LAW SCHOOL SURVIVAL MANUAL: FROM LSAT TO BAR EXAM (Aspen Publishers / Wolters Kluwer 2010).
- NANCY B. RAPOPORT, JEFFREY D. VAN NIEL & BALA G. DHARAN, ENRON AND OTHER CORPORATE FIASCOS: THE CORPORATE SCANDAL READER (Foundation Press 2d ed. 2009).
- STEVEN L. EMANUEL, STRATEGIES & TACTICS FOR THE MBE (Aspen Publishers / Wolters Kluwer 2009) (one of several revision authors).
- NANCY B. RAPOPORT & BALA G. DHARAN, ENRON: CORPORATE FIASCOS AND THEIR IMPLICATIONS (Foundation Press 2004).
- DAVID B. GOODWIN & NANCY B. RAPOPORT, AN ORAL HISTORY OF THE HONORABLE JOSEPH T. SNEED, Ninth Circuit Historical Society (1994) (solicited oral history).

**Reports**

- Reporter, American College of Bankruptcy Diversity, Equity, and Inclusion Committee (2022-present).
- Reporter, American College of Bankruptcy Select Commission on Diversity, Equity, and Inclusion (2021-2022).

Nancy B. Rapoport
Page 7

- LOIS R. LUPICA & NANCY B. RAPOPORT, CO-REPORTERS, FINAL REPORT OF THE ABI NATIONAL ETHICS TASK FORCE (2013), available at https://abi-org-corp.s3.amazonaws.com/materials/Final_Report_ABI_Ethics_Task_Force.pdf.

**Book chapters**

- Nancy B. Rapoport, *Compromising One's Principles: The Lesson of Mahlon Perkins and the Berkey-Kodak Case,* in NANCY B. RAPOPORT & JEFFREY D. VAN NIEL, CORPORATE SCANDALS AND THEIR IMPLICATIONS 545 (3d ed.) (West Academic 2018).
- Nancy B. Rapoport, *Social Media Ethics Missteps for Lawyers (and Others),* PROCEEDINGS OF THE SIXTIETH ANNUAL ROCKY MOUNTAIN MINERAL LAW INSTITUTE 3-1 (July 2014), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2557095.
- Nancy B. Rapoport, *Analysis and the Arts,* in ZENON BANKOWSKI, MAKSYMILIAN DEL MAR & PAUL MAHARG, THE ARTS AND THE LEGAL ACADEMY: BEYOND TEXT IN LEGAL EDUCATION 101 (Ashgate Press 2012) (solicited essay), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2464202.
- COLLIER COMPENSATION, EMPLOYMENT AND APPOINTMENT OF TRUSTEES AND PROFESSIONALS IN BANKRUPTCY CASES (Lexis-Nexis 2009) (one of several revision authors).
- Nancy B. Rapoport, *Swimming with Shark,* in LAWYERS IN YOUR LIVING ROOM! LAW ON TELEVISION 163 (Michael Asimow, ed., 2009) (solicited manuscript), chapter available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1157053.
- Nancy B. Rapoport, *Reflections of a Former Dean, in* LAW SCHOOL LEADERSHIP STRATEGIES: TOP DEANS ON BENCHMARKING SUCCESS, INCORPORATING FEEDBACK FROM FACULTY AND STUDENTS, AND BUILDING THE ENDOWMENT 199 (Aspatore Books 2006) (solicited), abstract available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=979321.
- Nancy B. Rapoport, *Bankruptcy Ethics Issues for Solos and Small Firms, in* ATTORNEY LIABILITY IN BANKRUPTCY (Corinne Cooper, ed. & Catherine E. Vance, contributing ed., ABA 2006) (solicited manuscript).
- Nancy B. Rapoport, *Lord of the Flies: The Development of Rules Within an Adolescent Culture, in* SCREENING JUSTICE—THE CINEMA OF LAW: FIFTY SIGNIFICANT FILMS OF LAW, ORDER AND SOCIAL JUSTICE 253 (Rennard Strickland, Teree Foster & Taunya Banks, eds. 2006) (solicited manuscript), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=949168.
- Nancy B. Rapoport & Jeffrey D. Van Niel, *Dr. Jekyll & Mr. Skilling: How Enron's Public Image Morphed from the Most Innovative Company in the* Fortune 500 *to the Most Notorious Company Ever, in* ENRON: CORPORATE FIASCOS AND THEIR IMPLICATIONS 77 (Nancy B. Rapoport & Bala G. Dharan, eds.) (Foundation Press 2004), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=505662.

**Articles, book reviews, and essays**

- John G. Cameron & Nancy B. Rapoport, *Ethics For Real Estate Lawyers and Practice Today,* 39 THE PRACTICAL REAL ESTATE LAWYER 30 (ALI CLE, May 2023), available at https://papers.ssrn.com/sol3/papers.cfm?abstract_id=4417451.

Nancy B. Rapoport
Page 8

- Nancy Rapoport, *Stanford Law Protest Highlights Rise of Incivility,* LAW360 (Mar. 28, 2023), available at https://www.law360.com/personal-injury-medical-malpractice/articles/1590537/stanford-law-protest-highlights-rise-of-incivility-in-discourse.

- Nancy B. Rapoport & Joseph R. Tiano, Jr., *Billing Judgment,* 96 AM. BANKR. L.J. 311 (2022) (peer-reviewed publication), available at https://papers.ssrn.com/sol3/papers.cfm?abstract_id=4172409.

- Joseph R. Tiano, Nancy B. Rapoport & William J. Siroky, *The Specter of Malpractice: When Law Firm General Counsel and Risk Management Professionals Are Confronted With Potential Malpractice Claims and Ethics Violations,* 81 MARYLAND L. REV. (ONLINE) 1 (2021), available at https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3932534.

- Nancy B. Rapoport, *Being a First—Over and Over Again,* DENVER L. REV. FORUM (7/31/2021) available at https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3897378.

- Nancy B. Rapoport, *Telling the Story on Your Timesheets: A Fee Examiner's Tips for Creditors' Lawyers and Bankruptcy Estate Professionals,* 15 BROOK. J. OF CORP. FIN. & COM. L. 359 (2021), available at https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3853962.

- Nancy B. Rapoport & Joe Tiano, *Biglaw Surprises Some With Record Profits in 2020—Now What?,* Above the Law (April 30, 2021), available at https://abovethelaw.com/2021/04/biglaw-surprises-some-with-record-profits-in-2020-now-what/.

- Nancy B. Rapoport & Joseph R. Tiano, Jr., *The Legal Industry's Second Chance To Get It Right,* 57 WILLAMETTE L. REV. 1 (2021), available at https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3773197.

- Nancy B. Rapoport & Joseph R. Tiano, Jr., *Using Data Analytics to Predict an Individual Lawyer's Legal Malpractice Risk Profile (Becoming an LPL "Precog"),* 6 U. PA. J. L. & PUB. AFF. 267 (2020), available at https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3760626.

- Nancy B. Rapoport, *Help Your Provost Help You During Promotion and Tenure Decisions,* 24 THE GREEN BAG 83 (2020) (peer-reviewed), available at https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3748896.

- Nancy B. Rapoport, *Want to Take Control of Professional Fees in Large Chapter 11 Bankruptcy Cases? Talking With Your Client's General Counsel is a Good First Step,* Harvard Law School Bankruptcy Roundtable, July 28, 2020, available at http://blogs.harvard.edu/bankruptcyroundtable/2020/07/28/want-to-take-control-of-professional-fees-in-large-chapter-11-bankruptcy-cases-talking-with-your-clients-general-counsel-is-a-good-first-step/.

- Nancy B. Rapoport, *Training Law Students To Maintain Civility in Their Law Practices as a Way To Improve Public Discourse,* North Carolina Law Review 2019 Symposium, 98 N.C. L. REV. 1143 (2020) (solicited manuscript), available at https://ssrn.com/abstract=3616995.

- Nancy B. Rapoport & Joe Tiano, *COVID-19 Could Catalyze The Legal Industry Renaissance,* Above the Law (April 29, 2020), available at https://abovethelaw.com/2020/04/covid-19-could-catalyze-the-legal-industry-renaissance/.

- Nancy B. Rapoport, *Using General Counsel to Set the Tone for Work in Large Chapter 11 Cases,* 88 FORDHAM L. REV. 1727 (2020) (solicited manuscript) (presented at the Stein Center for Law and Ethics Colloquium on Corporate Lawyers (October 2019)), available at https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3591118.

Nancy B. Rapoport
Page 9

- Nancy B. Rapoport, *Client-Focused Management of Expectations for Legal Fees in Large Chapter 11 Cases,* 28 AM. BANKR. INST. L. REV. 39 (2020), available at https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3541347.

- Nancy B. Rapoport & Joseph R. Tiano, Jr., *Leveraging Legal Analytics and Spend Data as a Law Firm Self-Governance Tool,* XIII J. BUS., ENTREPRENEURSHIP & L. 171 (2019) (presented at Arizona State University's 7th Annual Conference on the Governance of Emerging Technologies & Science: Law, Policy & Ethics (May 2019)), available at https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3525660.

- Nancy B. Rapoport & Joseph R. Tiano, Jr., *Legal Analytics, Social Science, and Legal Fees: Reimagining "Legal Spend" Decisions in an Evolving Industry*, Georgia State Symposium on Legal Analytics, 35 GA. ST. U. L. REV. 1269 (2019), available at https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3418465.

- Dwayne J. Hermes, Erica R. LaVarnway & Nancy B. Rapoport, *A Solutions-Oriented Approach: Changing How Insurance Litigation Is Handled by Defense Law Firms,* 2017 J. PROF'L L. 129 (peer-reviewed annual journal of the Center for Professional Responsibility of the American Bar Association), available at https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3104055.

- Nancy B. Rapoport, *How Teams Can Help You (or Hurt You) When It Comes to Ethics,* December 2017 ABI J. 24, available at https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3085229.

- Nancy B. Rapoport & Charlie Douglas, *High Performance Organizational Teams,* LISI Estate Planning Newsletter #2563 (July 3, 2017), available at http://www.leimbergservices.com and at https://papers.ssrn.com/sol3/papers.cfm?abstract_id=2998424.

- Nancy B. Rapoport, *In Praise of Margaret Howard,* 74 WASH. & LEE L. REV. 641 (2017), available at https://papers.ssrn.com/sol3/papers.cfm?abstract_id=2981404.

- Nancy B. Rapoport, *Ethics: Why We Must Play Well with Others (and Why We Don't),* Rocky Mountain Mineral Law Foundation, MANUAL OF THE ADVANCED PUBLIC LANDS SPECIAL INSTITUTE 587 (2017), available at https://papers.ssrn.com/sol3/papers.cfm?abstract_id=2917346.

- Nancy B. Rapoport, *On Shared Governance, Missed Opportunities, and Student Protests*, 17 NEV. L.J. 1 (2016), available at http://ssrn.com/abstract=2885539.

- Randy D. Gordon & Nancy B. Rapoport, *Virtuous Billing,* 15 NEV. L.J. 698 (2015), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2670628.

- Nancy B. Rapoport, *"Nudging" Better Lawyer Behavior: Using Default Rules and Incentives to Change Behavior in Law Firms,* 4 ST. MARY'S J. L. ETHICS & MALP. 42 (2014) (solicited manuscript for symposium on Legal Malpractice and Ethics), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2460078.

- Nancy B. Rapoport, *The Client Who Did Too Much,* 47 AKRON L. REV. 121 (2014) (solicited as part of the Joseph G. Miller and William C. Becker Center for Professional Responsibility's Symposium on Navigating the Practice of Law in the Wake of Ethics 20/20), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2412496.

- Nancy B. Rapoport, *Plus Ça Change, Plus C'est La Même Chose,* 17 GREEN BAG 55 (2013) (solicited manuscript), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2404069.

- Lois R. Lupica & Nancy B. Rapoport, *Best Practices for Working with Fee Examiners,* 32 AM. BANKR. INST. J. 20 (June 2013), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2279642.

Nancy B. Rapoport
Page 10

- Nancy B. Rapoport, *Rethinking U.S. Legal Education: No More "Same Old, Same Old,"* 45 CONN. L. REV. 1409 (2013), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2275315.
- Nancy B. Rapoport, *Managing U.S. News & World Report—The Enron Way,* 42 GONZAGA L. REV. 423 (2013), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2255194.
- Nancy B. Rapoport, Book Review, Brian Z. Tamanaha*, Failing Law Schools* (2012), 47 L. & SOC. REV. 229 (2013) (solicited review), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2233617.
- Nancy B. Rapoport, *Black Swans, Ostriches, and Ponzi Schemes,* 42 GOLDEN GATE L. REV. 627 (2012) (solicited manuscript for symposium), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2131393.
- Nancy B. Rapoport, *The Case for Value Billing in Chapter 11,* 7 J. BUS. L. & TECH. LAW 117 (2012), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2039506.
- Nancy B. Rapoport, *Changing the Modal Law School: Rethinking U.S. Legal Education in (Most) Schools,* 116 PENN ST. L. REV. 1119 (2012), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2038409 (republished at 122 DICKINSON L. REV. 189 (2017)).
- Jennifer Gross & Nancy B. Rapoport, *Is the Attorney-Client Privilege Under Attack?,* GP | SOLO MAGAZINE 47 (October-November 2010), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1704026.
- Nancy B. Rapoport*, Rethinking Fees in Chapter 11 Bankruptcy Cases,* 5 J. BUS. & TECH. LAW 263 (2010) (solicited manuscript for University of Maryland School of Law's symposium on *Examining Government Reform in the Financial Crisis*), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1625102.
- Nancy B. Rapoport, *Through Gritted Teeth and Clenched Jaw: Court-Initiated Sanctions Opinions in Bankruptcy Courts,* 41 ST. MARY'S L.J. 701 (2010) (solicited manuscript for St. Mary's 9th Annual Symposium on *Legal Malpractice and Professional Responsibility),* available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1628275.
- C.R. Bowles & Nancy B. Rapoport, *Debtor Counsel's Fiduciary Duty: Is There a Duty to Rat in Chapter 11?,* 29 AM. BANKR. INST. JOURNAL 16 (2010), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1544930.
- Nancy B. Rapoport, *Academic Freedom and Academic Responsibility* (reviewing MATTHEW W. FINKIN & ROBERT C. POST, FOR THE COMMON GOOD: PRINCIPLES OF AMERICAN ACADEMIC FREEDOM (Yale University Press 2009)), in 13 GREEN BAG 2D 189 (Winter 2010) (solicited manuscript), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1544932.
- Eric Van Horn & Nancy B. Rapoport, *Restructuring the Misperception of Lawyers: Another Task for Bankruptcy Professionals,* 28 AM. BANKR. INST. JOURNAL 44 (2009), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1472211.
- Nancy B. Rapoport, *Where Have All the (Legal) Stories Gone?,* M/E INSIGHTS 7 (Fall 2009) (publication of the Association of Media and Entertainment Counsel), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1545443.

Nancy B. Rapoport
Page 11

- Nancy B. Rapoport, *The real reason why businesses make bad decisions* (reviewing JONATHAN R. MACEY, CORPORATE GOVERNANCE: PROMISES KEPT, PROMISES BROKEN (Princeton University Press 2008)), in 18 BUS. LAW TODAY 52 (July/Aug. 2009) (solicited manuscript), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1425118.

- Nancy B. Rapoport, *Lessons From Enron—And Why We Don't Learn From Them,* May/June 2009 COMMERCIAL LENDING REVIEW 23, available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1413937.

- Colin Marks & Nancy B. Rapoport, *Corporate Ethical Responsibility and the Lawyer's Role in a Contemporary Democracy,* 77 FORDHAM L. REV. 1269 (2009) (solicited manuscript), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1376475.

- Nancy B. Rapoport & Roland Bernier III, *(Almost) Everything We Learned About Pleasing Bankruptcy Judges, We Learned in Kindergarten,* 27 AM. BANKR. INST. J. 16 (July/August 2008), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1157103.

- Nancy B. Rapoport, *The Curious Incident of the Law Firm That Did Nothing in the Night-Time* (reviewing MILTON C. REGAN, JR., EAT WHAT YOU KILL: THE FALL OF A WALL STREET LAWYER (Univ. of Michigan Press 2004)), in 10 LEGAL ETHICS 98 (2007), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1017627 and at http://www.tandfonline.com/doi/abs/10.1080/1460728X.2007.11423884.

- Nancy B. Rapoport & Roland Bernier, *Bankruptcy Pro Bono Representation of Consumers: The Seven Deadly Sins,* 44 HOUS. LAWYER 18 (June 2007), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1051221.

- Nancy B. Rapoport, *Not Quite "Them," Not Quite "Us": Why It's Difficult for Former Deans to Go Home Again,* 38 U. TOLEDO L. REV. 581 (2006) (solicited manuscript), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=936251.

- Nancy B. Rapoport, *Eating Our Cake and Having It, Too: Why Real Change Is So Difficult in Law Schools,* 81 IND. L.J. 359 (2006) (solicited manuscript) (symposium at Indiana University-Bloomington School of Law—*The Next Generation of Law School Rankings*), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=703843.

- Nancy B. Rapoport, *Enron and the New Disinterestedness—The Foxes Are Guarding the Henhouse,* 13 AM. BANKR. INST. L. REV. 521 (2005) (solicited manuscript), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=936167.

- Nancy B. Rapoport, *Decanal Haiku,* 37 U. TOLEDO L. REV. 131 (2005) (solicited manuscript), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=936166.

- Nancy B. Rapoport, *Recent Developments in Bankruptcy Law,* 35 TEXAS TECH. L. REV. 543 (2004) (solicited manuscript), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=938551.

- Nancy B. Rapoport, *"Venn" and the Art of Shared Governance,* 35 U. TOLEDO L. REV. 169 (2003) (solicited manuscript), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=936247.

- Nancy B. Rapoport, *Examining Enron's enablers: Watkins' perspective makes Swartz's account stand out,* HOUSTON CHRONICLE, March 23, 2003, at *Zest* 15 (solicited book review).

Nancy B. Rapoport
Page 12

- Nancy B. Rapoport, *Enron, Titanic, and the Perfect Storm*, 71 FORDHAM L. REV. 1373 (2003) (solicited manuscript for a special issue on ethics), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=498122; also included as an essay in ENRON: CORPORATE FIASCOS AND THEIR IMPLICATIONS 927 (Nancy B. Rapoport & Bala G. Dharan, eds.) (Foundation Press 2004).

- Nancy B. Rapoport, *The Intractable Problem of Bankruptcy Ethics: Square Peg, Round Hole,* 30 HOFSTRA L. REV. 977 (2002) (solicited manuscript for ethics symposium), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=936235.

- Nancy B. Rapoport, *In Memoriam: Yale Rosenberg,* 39 HOUS. L. REV. 869 (2002) (solicited essay), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1598446.

- Nancy B. Rapoport & Jeffrey D. Van Niel, *"Retail Choice" Is Coming: Have You Hugged Your Utilities Lawyer Today? (Part II),* August 2002 NORTON BANKRUPTCY LAW ADVISER 2, available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=963913.

- Nancy B. Rapoport, *Multidisciplinary Practice After In Re Enron: Should the Debate on MDP Change At All?,* TEXAS BAR JOURNAL 446 (May 2002), available at http://www.texasbar.com/Template.cfm?Section=Home&Template=/ContentManagement/ContentDisplay.cfm&ContentID=5999.

- Nancy B. Rapoport & Jeffrey D. Van Niel, *"Retail Choice" Is Coming: Have You Hugged Your Utilities Lawyer Today? (Part I),* February 2002 NORTON BANKRUPTCY LAW ADVISER 4, available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=963912.

- Nancy B. Rapoport, *Is "Thinking Like a Lawyer" Really What We Want to Teach?,* in *Erasing Lines: Integrating the Law School Curriculum,* 2001 ALWD CONF. PROCEEDINGS 91, available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=936248.

- Nancy B. Rapoport, *When Local IS Global: Using a Consortium of Law Schools to Encourage Global Thinking,* 20 PENN STATE INT'L LAW REVIEW 19 (2001) (transcript of AALS Annual Meeting session).

- Nancy B. Rapoport, *Of Cat-Herders, Conductors, Fearless Leaders, and Tour Guides,* 33 U. TOLEDO L. REV. 161 (2001) (solicited manuscript), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=936245.

- Nancy B. Rapoport, *Presidential Ethics: Should a Law Degree Make a Difference?,* 14 GEO. J. L. ETHICS 725 (2001), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=260021.

- Nancy B. Rapoport, *Going from "Us" to "Them" in Sixty Seconds,* 31 U. TOLEDO L. REV. 703 (2000) (solicited manuscript), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=936171.

- Nancy B. Rapoport, *Dressed for Excess: How Hollywood Affects the Professional Behavior of Lawyers,* 14 NOTRE DAME J. OF LAW, ETHICS & PUBLIC POLICY 49 (2000) (solicited manuscript), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=936188.

- Nancy B. Rapoport, *Ratings, Not Rankings: Why* U.S. News & World Report *Shouldn't Want To Be Compared To* Time *and* Newsweek—*or* The New Yorker, 60 OHIO ST. L.J. 1097 (1999), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=936246.

- Nancy B. Rapoport, *Living "Top-Down" in a "Bottom-Up" World: Musings on the Relationship Between Jewish Ethics and Legal Ethics,* 78 NEB. L. REV. 18 (1999), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=936241.

Nancy B. Rapoport
Page 13

- Nancy B. Rapoport, *Moral Bankruptcy: Modeling Appropriate Attorney Behavior in Bankruptcy Cases,* THE NEBRASKA LAWYER 14 (March 1999) (solicited manuscript), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1598447.

- Nancy B. Rapoport, *The Need For New Bankruptcy Ethics Rules: How Can "One Size Fits All" Fit Anybody?,* 10 PROFESSIONAL LAWYER 20 (1998) (solicited manuscript), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=939448.

- Nancy B. Rapoport, *Our House, Our Rules: The Need for a Uniform Code of Bankruptcy Ethics,* 6 AM. BANKR. INST. L. REV. 45 (1998) (solicited manuscript), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=936343.

- C.R. Bowles & Nancy B. Rapoport, *Has the DIP's Attorney Become the Ultimate Creditors' Lawyer in Bankruptcy Reorganization Cases?,* 5 AM. BANKR. INST. L. REV. 47 (1997) (symposium manuscript), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=936240.

- Nancy B. Rapoport, *Ethics: Is Disinterestedness Still a Viable Concept?  A Roundtable Discussion,* 5 AM. BANKR. INST. L. REV. 201 (1997) (solicited transcript) (with co-panelists John D. Ayer, the Hon. Charles N. Clevert, the Hon. Joel Pelofsky & Bettina Whyte), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=936340.

- Nancy B. Rapoport, *Turning the Microscope on Ourselves: Self-Assessment by Bankruptcy Lawyers of Potential Conflicts of Interest in Columbus, Ohio,* 58 OHIO ST. L.J. 1421 (1997), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=938611.

- Nancy B. Rapoport, *Avoiding Judicial Wrath: The Ten Commandments for Bankruptcy Practitioners,* 5 J. BANKR. L. & PRAC. 615 (September/October 1996) (solicited manuscript), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=940769.

- Nancy B. Rapoport, *Seeing the Forest* and *The Trees: The Proper Role of the Bankruptcy Attorney,* 70 IND. L.J. 783 (1995), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=938527.

- Nancy B. Rapoport, *Worth Reading: Review of Annual Survey of Bankruptcy Law,* TURNAROUNDS AND WORKOUTS (Beard Group, Inc.), January 15, 1995, at 6 (solicited book review).

- Nancy B. Rapoport, *Turning and Turning in the Widening Gyre: The Problem of Potential Conflicts of Interest in Bankruptcy,* 26 CONN. L. REV. 913 (1994), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=936337.

**Op-eds**

- Nancy Rapoport & Mary Langsner, *Why does the bankruptcy code discriminate against disabled veterans?,* THE HILL (Jan. 24, 2019), available at https://thehill.com/opinion/finance/426854-why-does-the-bankruptcy-code-discriminate-against-disabled-veterans.

- Lois R. Lupica & Nancy Rapoport, *Consumer Debtors Should Not Have To Go It Alone,* DOW JONES DAILY BANKRUPTCY REVIEW (May 1, 2013), available at http://bankruptcynews.dowjones.com/article?an=DJFDBR0020130501e951qbfa8&from=alert&pid=10&ReturnUrl=http%3a%2f%2fbankruptcynews.dowjones.com%3a80%2farticle%3fan%3dDJFDBR0020130501e951qbfa8%26from%3dalert%26pid%3d10.

- Nancy Rapoport, *Board Smart Not to Raise the Superintendent Salary Stakes,* LAS VEGAS SUN, September 5, 2010, available at http://www.lasvegassun.com/news/2010/sep/05/board-smart-not-raise-superintendent-salary-stakes/.

Nancy B. Rapoport
Page 14

- Nancy B. Rapoport, *Enron an Example: Grads Lost in Trees,* HOUSTON CHRONICLE, February 24, 2002, at 4H.
- Nancy B. Rapoport, *Wrestling with the Problem of Potential Conflicts of Interest in Bankruptcy,* 26 BANKRUPTCY COURT DECISIONS WEEKLY NEWS AND COMMENT (LRP Publications), March 7, 1995, at A3 (solicited editorial).

**Grants**

- 2002 participant, Harvard Institutes for Higher Education Management and Leadership in Education (MLE) Program (partial scholarship from Harvard, $1,000 in 2001—had to withdraw, due to the aftermath of Tropical Storm Allison, but returned to participate in 2002).
- 1999 participant, Harvard Institutes for Higher Education Management Development Program (MDP) (partial scholarship from Harvard, $1,000).
- 1995 Instructional Technology Small Grant (Ohio State funds; $850).
- 1995 West Publishing/NCAIR Fellow ($15,000 grant for developing a computer program that teaches law students about conflicts of interest in bankruptcy law).
- 1994 participant in Summer Institute of the Law & Society Association (Wellesley, Massachusetts).
- 1993 University Seed Grant for the study of creditor representation in bankruptcy (1993 grant from Ohio State University's Office of Research & the College of Law).

**Podcasts (as guest speaker)**

- PLUS blog (with Joseph R. Tiano, Jr.), *Becoming an LPL "Precog",* https://plusblog.org/2022/10/10/plus-podcast-becoming-an-lpl-precog/.
- Jay Edelson, NON-COMPLIANT, *Episode 13: The One Where Professor Nancy Rapoport Discusses the Future of Law Firms,* July 1, 2020, available at https://podcasts.apple.com/us/podcast/episode-13-one-where-professor-nancy-rapoport-discusses/id1491233296?i=1000481718338.
- Jay Edelson, NON-COMPLIANT, *Episode 14: The (Second) One Where Professor Nancy Rapoport Discusses the Future of Law Firms,* July 13, 2020, available at https://podcasts.apple.com/us/podcast/episode-14-second-one-where-professor-nancy-rapoport/id1491233296?i=1000484787064.

**Selected academic presentations**

*Anthropology of higher education / higher education generally*

- Society for Applied Anthropology's 79th annual meeting, *Moving Seamlessly From Faculty Status to Administrator and Then Back Again* (March 2019).
- Society for Applied Anthropology's 78th annual meeting, *Concentric and Overlapping Circles of Leadership in Higher Education* (April 2018).
- Society for Applied Anthropology's 77th annual meeting, *Women and Diversity: Being a "First"* (March 2017).

Nancy B. Rapoport
Page 15

- Presentation at 2010 Annual Meeting of Association of American Law Schools, Section on Women in Legal Education, *Succeeding in Legal Education* (January 2010).
- Presentation at 2009 Annual Meeting of Association of American Law Schools, Committee on Curriculum Issues, *Redesigning Legal Education* (January 2009).
- Presentations at the 2007 Annual Meeting of Association of American Law Schools:
  - *Workshop on the Ratings Game (or Not!): The Search for Sensible Assessment,* moderator for plenary discussion, *We Didn't Even Bring the Box: A Roundtable Discussion on Creative Alternatives,* http://www.aals.org/am2007/wednesday/ratings.html.
  - Panelist, Section on Continuing Legal Education, Co-Sponsored by Section on
  - Professional Responsibility, *Legal Ethics CLE in the Law School Setting: Can It Be Practical, Academic, and Interesting at the Same Time?*
  - Panelist, Section for the Law School Dean, *What I Wish I Had Known Then: A Conversation Among Deans.*
- Symposium at Indiana University-Bloomington School of Law, *Eating Our Cake and Having It, Too: Why Real Change Is So Difficult in Law Schools* (March 2005).
- "Better Learning, Better Lawyers" Conference, *Legal Education in the 21st Century: Radical Design for a Changing Profession* (August 2002).
- Moderator of plenary session of the Annual Meeting of Association of American Law Schools, *Mini-Workshop on Major Issues of the 21st Century: The Impact on the Legal Academy and Law Students* (January 2000).

*Social science and ethics / social science and governance / social science and lawyer behavior / bankruptcy law*

- University of Pittsburgh School of Law, *Irrepressible Civility, Professionalism, and Ethics in Defining the Lawyering Career,* Symposium on The Jurisprudence and Legacy of the Honorable Joseph F. Weis Jr. (with Abraham C. Reich and Nathan M. Crystal) (March 2023).
- The Stein Center for Law and Ethics, Fordham University School of Law, Colloquium on Corporate Lawyers, *Using General Counsel to Set the Tone for Work in Large Chapter 11 Cases* (October 2019).
- Pontificia Universidad Javeriana Cali (Colombia)'s International Congress of Corporate Law, *Corporate Social Responsibility and Social Science* (November 2017) (invited speaker).
- Colombia's Superintendency of Companies, *Corporate Governance, Compliance and Business Ethics* (May 2016) (invited speaker).
- Colombia's Superintendency of Companies, Responsibility of Administrators and Business Ethics Seminar, *Why Smart People Make Bad Decisions* (March 2015) (invited speaker).
- Boyd School of Law, Conference on Psychology and Lawyering: Coalescing the Field, *Using Psychology to Change Law Firms' Default Incentive Structures* (with Randy D. Gordon) (invited panelist) (February 2014).
- The Ohio State University Moritz College of Law, faculty workshop presentation on *"Nudging" Better Lawyer Behavior: Using Default Rules and Incentives to Change Behavior in Law Firms* (November 2013).
- The Joseph G. Miller and William C. Becker Center for Professional Responsibility's Symposium on Navigating the Practice of Law in the Wake of Ethics 20/20, *What It Means To Be a Lawyer in These Uncertain Times (Part I)* (invited panelist) (April 2013).

Nancy B. Rapoport
Page 16

- Roger Williams University School of Law, Women Who Lead Series, *Why the World Needs Nay-Sayers* (keynote speaker) (March 2010).
- Distinguished Lecturer, The Chapman Dialogue Series, Chapman University School of Law, *Why No Amount of Regulation Is Likely to Prevent Corporate Scandals* (February 2010).
- Association of American Law Schools, Annual Meeting, Section on Continuing Legal Education (co-sponsored by Section for the Law School Dean), *Exploring the Options for the Future of Legal Education* (with Kellye Y. Teste, Daniel McCarroll, Gary A. Munneke, and Ellen Y. Suni) (January 2010).
- Presentation at Fordham Law School's Colloquium, *The Lawyers' Role in a Contemporary Democracy* (with Colin Marks) (September 2008).
- Adjunct professor, St. John's University School of Law, LL.M. in Bankruptcy Program (Enron seminar), St. John's University School of Law Faculty, *Enron: Is It Still Relevant?* (March 2006 & March-April 2007).
- AALS Workshop—Do You Know Where Your Students Are?  Langdell Logs On to the 21st Century, AALS Annual Meeting, *The Changing Face of the Deanship* (January 2002).
- The 2001 Legal Ethics Conference, Hofstra University School of Law, *Legal Ethics—What Needs Fixing?* (September 2001).
- AALS Bankruptcy Workshop, *Teaching Bankruptcy as a Vehicle for Teaching Other Values* (May 2001).
- ALWD (Association of Legal Writing Directors) Biennial Conference, *Do "Best Practices" in Legal Education Include an Obligation to the Legal Profession to Integrate Theory, Skills, and Doctrine in the Law School Curriculum?* (July 2001).
- AALS Workshop for New Law Teachers, *Satisfying Your Multiple Constituencies (How Your Dean Can Help)* (July 2000 & July 1999).
- Annual Meeting of the Association of American Law Schools, Creditors' & Debtors' Rights Section, *Local Cultures + Judicial Discretion = National Confusion?: Equities, Equations, and the "Uniformity" of the Bankruptcy Code* (January 1998).

**Selected continuing legal education programs and other professional presentations**

*Legal education / the legal profession generally*

- *Convergence of Legal Risk Management and Business Strategy Consulting,* Legal Foresight Summit (with David Kamien, Scott Leeb, and Mark Ford) (March 2023).
- *Using Data Analytics to Predict an Individual Lawyer's Legal Malpractice Risk Profile,* General Counsel Roundtable (with Joseph R. Tiano, Jr.) (June 2022).
- *Navigating Ethical Issues in the New Remote World,* 128th Annual Convention of the Commercial Law League of America (keynote) (May 2022).
- *Ethics in the Movies:  Lessons for Real Life,* United States District Court Conference, District of Nevada (plenary) (May 2022).
- *The Specter of Malpractice,* General Counsel Roundtable (with Joseph R. Tiano, Jr.) (April 2022).

Nancy B. Rapoport
Page 17

- *Leveraging Legal Analytics and Spend Data as a Law Firm Self-Governance Tool,* Arizona State University's 7th Annual Conference on the Governance of Emerging Technologies & Science: Law, Policy & Ethics (with Joseph R. Tiano, Jr.) (May 2019).
- 2019 Mid-Year Meeting, National Organization of Bar Counsel, *A Look Inside the Incubator— The Challenges Facing Today's Law Students, Law Schools, and Newly-Minted Lawyers* (with Nelson Page and Ari Telisman) (January 2019).
- Law School Admission Council's Annual Meeting, *"Soothing the Savage Beast": The Art of Working Effectively With Difficult People (*with Floyd Weatherspoon) (June 2011).
- Houston Bar Minority Opportunities in the Legal Profession Committee & Minority Corporate Counsel Association: Business Development in a Belt-Tightening Economy, *Overcoming Barriers and Opening Doors to Your Personal Success* (February 2002).
- LSAC Academic Support Conference, *Why Support Academic Support Programs?* (June 2000).
- LSAC Annual Meeting, *Establishing a Partnership With a New Dean* (June 2000).
- American Bar Association's Workshop for New Law Deans, *Reflections of an Ex-Novice Dean* (June 1999).
- Annual Conference of the National Association for Law Placement, *Reliable Evaluation of Law Schools: Going Beyond Law School Rankings* (April 1999).

*Bankruptcy / Ethics*

- American College of Bankruptcy, *Attorney Fees in Consumer Cases: A Policy and Ethics Discussion* (with Joyce Babin and Areya Holder Aurzada) (March 2023).
- American Bankruptcy Institute, Winter Leadership Conference, *Don't Just Say No: Technology, Ethics and the Changing Practice of Law* (with Prof. Lois Lupica and Joseph R. Tiano, Jr.) (December 2022).
- State Bar of Montana, Annual Meeting of Bankruptcy Section, *Billing Judgment* (July 2022).
- Annual meeting of the National Association of Chapter 13 Trustees, *Ethical Implications of Remote Lawyering Post-Pandemic* (plenary) (July 2022).
- Ninth Circuit Conference of Chief Bankruptcy Judges, Bankruptcy Court Clerks and Bankruptcy Lawyer Representatives, *Billing Judgment* (March 2022).
- Annual Meeting of National Conference of Bankruptcy Judges, *Start Your Engines! Jeopardy— the Broken Bench Edition* (with Demetra Liggins and Judges Pamela Pepper and Catherine J. Furay) (October 2021).
- Los Angeles Chapter, Federal Bar Association, 17th Annual Bankruptcy Ethics Symposium, keynote address, *Telling the Story on Your Timesheets: A Fee Examiner's Tips for Creditors' Lawyers and Bankruptcy Estate Professionals* (November 2020).
- AMERICAN BANKRUPTCY INSTITUTE LAW REVIEW panel discussion, *Professional Fees in Bankruptcy* (with co-panelists Judge Kevin Carey, attorney Douglas Deutsch, Professor Stephen Lubben, and Professor John Pottow) (April 2019).
- National Conference of Bankruptcy Judges, *NCBJ Plenary: Broken Bench Awards Show: The Best Little Show in Texas* (October 2018).
- ABI 38th Annual Midwestern Bankruptcy Institute, *Sanctions and Social Science* (October 2018) (with Adam Miller).

Nancy B. Rapoport
Page 18

- Fifth Annual James T. King Bankruptcy Symposium, *Ethics and Getting Paid* (July 2018) (with the Hon. Erithe A. Smith and M. Jonathan Hayes).

- American Bankruptcy Institute, VALCON 2018, *Special Problems Presenting Financial Consultants as Expert Witnesses and Ethics Hot Topics* (May 2018) (with Michael Richman, George Angelich, and Ted Gavin).

- American Bankruptcy Institute's Annual Spring Meeting, *Ethics Jeopardy* (with Nan Roberts Eitel, Lois Lupica, and Bill Rochelle) (April 2017).

- American Bankruptcy Institute's Annual Spring Meeting, *A Primer on Dealing with Fee Examiner*s (with Van Durrer, II, William K. Harrington, Robert J. Keach, and John F. Theil) (April 2016).

- 29th Annual Central California Bankruptcy Institute, *How to Use Social Science to Improve Ethics in a Law Firm* (September 2015).

- 89th Annual National Conference of Bankruptcy Judges, *Ethics and Social Media* (panel discussion with the Hon. Hannah Blumenstiel and Peter Fessenden) (September 2015).

- National Association of Legal Fee Analysts (NALFA) webinar, *Bankruptcy Fee Examiners in Large Chapter 11 Cases* (panel discussion with Walter W. Theus, Jr., Senior Trial Attorney, USDOJ U.S. Trustee Program and Jeffrey L. Cohen, Partner, Cooley, LLP) (May 2015).

- Bankruptcy Section of the Federal Bar Association and the Los Angeles Chapter of the Federal Bar Association, 11th Annual Bankruptcy Ethics Symposium, *An Ethics Conversation* (with Gillian N. Brown) (November 2014).

- Texas Bankruptcy Law Section Bench/Bar Conference, *Recent Attorney Fee Issues* (June 2013).

- Rocky Mountain Bankruptcy Conference:  IWIRC session on bankruptcy ethics; keynote speaker on *Bankruptcy Ethics in Pop Culture* (January 2013).

- Speaker at three sessions of the 86th Annual National Conference of Bankruptcy Judges: ABA session on *Ethical Issues Involving Pro Bono Representation:  Spotting the Issues, Solving the Problems;* NCBJ session on *The Ethics of Organizers—Ethical Challenges in Forming Official and Unofficial Committees;* and CLLA session on *Pre-Bankruptcy Ethics—How to Avoid the Minefields Before Battle Begins* (October 2012).

- Sacramento Valley Bankruptcy Forum's 11th Annual Northern California Bankruptcy Conference, *Stupid Lawyer Tricks* (March 2012).

- National Association of Bankruptcy Trustees' Spring Meeting, panelist on *Friend Me? Ethics and Professionalism Issues Related to the Use of Social Media* (March 2012).

- ABA Business Law Section's Annual Spring Meeting, panelist for the sessions on *Ethical Issues in Commercial Transactions, Should In-House Counsel Be Navigating in the Choppy Waters of Corporate Compliance?,* and *Consumer Bankruptcy Clinics for Law Schools* (March 2012).

- Southeastern Bankruptcy Law Institute, SBLI Visiting Scholar Presentation, *The Case for Value Billing in Chapter 11* (October 2011).

- Bankruptcy Law Section of the State Bar of Texas Bench/Bar Conference, *"Money, Money, Money" -- Red Flags to Fee Examiners and Solutions to Those Red Flags* (with the Hon. H. Christopher Mott, Kemp Sawers, and Warren H. Smith) (June 2011).

- American Bankruptcy Institute's Annual Spring Meeting, *Fulfilling the Fiduciary Duty in a Complex Commercial World* (with Richard M. Meth & Judith Greenstone Miller (plenary) (April 2011).

Nancy B. Rapoport
Page 19

- Annual Meeting of National Conference of Bankruptcy Judges, *(Almost) Everything You Wanted to Know About…Getting Retained* and *Committee Solicitation Issues – The Problems, the Rules and the Enforcers* (October 2009).
- ABI Southwest Bankruptcy Conference, *Multimedia Ethics Presentation; Perspectives from the Bench and Ethical Issues;* and *Ethics—Walking in the Grey Areas: Advising Clients and Avoiding Pitfalls in Ethically Unsettled Areas* (September 2009).
- ALI-ABI Live Telephone Seminar and Audio Webcast:  Ethics and Professionalism Series, *When Bankruptcy Comes Calling on Your Client: Five Common Ethical Mistakes* (April 2009).
- ABI Annual Spring Meeting, *Multimedia Ethics Presentation* (plenary) (April 2009).
- Alaska Bar Association and Alaska Bankruptcy Bar, *Ethics and Popular Culture* and *Issues in Bankruptcy Ethics* (March 2009).
- National Conference of Bankruptcy Judges, 82d Annual Conference, *Ethical Fee Limits: Getting Paid and Getting What You Deserve* (Sept. 2008).
- American Bankruptcy Institute's 16th Annual Southwest Bankruptcy Conference, *Multimedia Ethics Extravaganza* (plenary) (Sept. 2008).
- National Conference of Consumer Bankruptcy Attorneys, 16th Annual Conference, *Ethics Issues* (May 2008).
- American Bankruptcy Institute's 26th Anniversary Annual Spring Meeting, *Beyond Ethics: The Coexistence of Zealousness, Professionalism and Civility in the Insolvency Community* (April 2008).
- American Bankruptcy Institute's 19th Annual Winter Leadership Conference, *Presentation of Fee Study* (February 2008).
- National Conference of Bankruptcy Judges, 81st Annual Conference, Commercial Law League of America's 22nd Annual Educational Program's panel on *Preemption and Federalism Issues in Bankruptcy* (October 2007).
- American Bankruptcy Institute's 15th Annual Southwest Bankruptcy Conference, *Ethics: Negotiating the Sanctions Minefield* (September 2007).
- American Bankruptcy Institute's 25th Annual Spring Meeting, *The Application of State Ethics Rules in Bankruptcy: Are We Just Holding Our Noses and Looking the Other Way?* (April 2007).
- 25th Anniversary Jay L. Westbrook Bankruptcy Conference, University of Texas CLE (with Martin Bienenstock), *Conflicts Writ Large: Intercreditor Issues and Issues with Fees and Overbilling* (November 2006).
- Annual Meeting of National Conference of Bankruptcy Judges, ABA Luncheon Meeting, *Examining the Examiner* (October 2004).
- Annual Meeting of National Conference of Bankruptcy Judges, *Current Bankruptcy Ethics Issues: It's Not That You Ought To!  It's That You "Got To!"* (October 2004).
- Commercial Law League of America, Annual Meeting, *Bankruptcy Ethics* (April 2003).
- 4th Annual Barry L. Zaretsky Roundtable, Brooklyn Law School, *Ethics, Governance, and Bankruptcy After Enron* (April 2003).
- The University of Texas School of Law CLE: The 21st Annual Bankruptcy Conference & Personal Injury Conference, *Debtor Wrongdoing: Ethical Implications for Lawyers* (November 2002).
- National Association of Bankruptcy Trustees, Annual Conference, *What's Wrong With Us??!!—A Fascinating Look at Ourselves, Through the Eyes of Judges and Others* (August 2002).

Nancy B. Rapoport
Page 20

- 10th Annual Southwest Bankruptcy Conference, American Bankruptcy Institute, A *Look Inside the Mega-Case* (September 2002).
- 20th Annual Bankruptcy Conference, University of Texas Law School, *Bankruptcy Ethics—How Do We Find Out What We're Doing Wrong (Or Right)?* (November 2001).
- Annual Meeting of National Conference of Bankruptcy Judges, *Tell Me What You Really Want—How Behavior (On Both Sides of the Bench) Can Impact Your Case* (October 2001).
- Winter Leadership Conference, American Bankruptcy Institute, *Bankruptcy Ethics* (December 2000).
- Twenty-Fourth Annual Bankruptcy Law & Practice Seminar, Stetson University College of Law, *Ethical Problems: Dual Representation in Chapter 11,* and *Ethics: Pre-Bankruptcy Planning and Ethical Limitations* (December 1999).
- Annual Meeting of National Conference of Bankruptcy Judges, *Disinterestedness and the Chapter 11 Professional* (October 1997).
- Eastern District of Pennsylvania Bankruptcy Conference, *Bankruptcy Issues* (January 1996, January 1997, January 1998, and January 1999).

*Social science generally / social science and ethics*

- General session, International Conference of Shopping Centers, U.S. Law Conference, *Ethics Wise and Wonderful: Traditional Rules, Modern Trends* (general session) (with John G. Cameron, Jr.) (October 2022).
- The Annual CLLA Luncheon at the National Conference of Bankruptcy Judges, B*rave New World: Ethics Issues That We Never Knew We Had* (October 2022).
- General session, *Teams, Cognitive Errors, and Legal Ethics,* International Council of Shopping Centers, U.S. Law Conference (October 2020) (virtual presentation).
- Southeastern Bankruptcy Law Institute, *Life in the Time of COVID: Ethical Issues Facing Attorneys During the Pandemic* (with Judges Bess Creswell and James Sacca and George L. Washington, Jr.) (May 2021).
- Plenary session, *Ethics and Professionalism: Why Lawyers Do Dumb Things—The Social Science Reasons,* National Association of Chapter 13 Trustees, 54th Annual Meeting (with Mary K. Viegelahn (July 2019).
- *What Social Science Can Teach Us About Good People and Bad Choices* and *Images of Lawyers in Film: Legal Ethics and the Movies,* 2018 American Bankruptcy Institute Midwest Regional Seminar (August 2018).
- 2017 Mutual Funds and Investment Management Conference, *Building Successful and Ethical Teams* (March 2017).
- National Association of Estate Planners' 52nd Annual Conference, *Nudging More Ethical Behavior Through Incentives and Checklists* (November 2015).
- The Eugene Kuntz Conference on Natural Resources Law and Policy, *Nudging Better Behavior: How Social Science Can Help Us Make Better Decisions* (November 2015).
- Institute for Energy Law, 66th Annual Oil & Gas Conference, *"Nudging" Better Behavior* (February 2015).
- National Association of Estate Planners and Councils, 50th Annual Conference, *Social Science, Human Error & Behavior* (November 2013).

Nancy B. Rapoport
Page 21

- ABA Annual Meeting, Business Law Section, *Cognitive Biases, Blind Spots, and Other Impairments of Ethical Vision: How Good Lawyers Can Go Astray* (with Dr. Larry Richard, James Jones, and Charles McCallum) (August 2013).

*Judicial ethics*

- Federal Judicial Center Workshop for Bankruptcy Judges, *(NOT) Ripped from the Headlines: Navigating Ethical Issues and Instilling Public Confidence in the Judicial System* (with the Hon. Christopher M. Alston, the Hon. D. Sims Crawford, and the Hon. Michele J. Kim) (plenary sessions) (April 2022; July 2022).
- Federal Judicial Center Workshop for Bankruptcy Judges, Plenary Session, *Judicial Ethics— Words Matter* (with the Hon. John Hoffman, Jr. and the Hon. Peter W. Bowie (Ret.)) (plenary sessions) (April 2021; July 2021).
- Federal Judicial Center, *Judicial Ethics* (with the Hon. Peter Bowie, the Hon. Arthur Federman, and Prof. Elizabeth Thornburg) (plenary sessions) (April 2013; August 2013).
- College for New Judges, Texas Center for the Judiciary, *Images of Judges in Movies* (December 2002 & November 2003).

*Corporate ethics*

- Summit for Corporate Governance, *"If You Don't Know, Now You Know": A Guide to a Board's Role in Managing (Unexpected) Risk in the Aftermath of the COVID-19 Pandemic* (with Michael J. Bonner, John Holland, and Jordan Rae Kelly) (September 2021).
- Boyd School of Law Summit on Corporate Governance, in partnership with Greenberg Traurig, LLP:  as a moderator, *Asleep at the Switch: Lessons Learned from the Failure of Board Oversight In Recent Corporate Scandals and Cybersecurity Gaffes* (with panelists Cuneyt Akay, Paul Ferrillo, and Jordan Kelly, and as a panelist, *Not Too Much, Not Too Little: What is Just Right?: Challenges Faced in Executive and Board Compensation* (with co-panelist Laura Wanlass and moderator Flora Perez (November 2019).
- Department of Energy & Contractor Attorneys' Association, Inc.'s Annual Meeting, *Ethics in the Corporate World* (May 2009).
- *Lessons To Be Learned From the Rise and Fall of High-Profile Corporate Entities—The Scandals—How to Identify Red Flags in Revenue Reporting and Financial Statements* (NACD Houston Chapter, Sept. 2004) (with Bala G. Dharan and Steven C. Currall).
- State Bar of Texas Annual Meeting, Business Law & Corporate Counsel Sections, *Moral Independence of Lawyers vs. Moral Interdependence* (June 2003).
- Southeastern Finance Association and Southern Academy of Legal Studies, *Corporate Scandals (Enron, Andersen, Tyco & World Com)—What Went Wrong?* (keynote speaker) (March 2003).
- The University of Texas School of Law CLE: The 24th Annual Corporate Counsel Institute, *Conflicts, Ethical Duties and Independence: Lessons from Enron* (August 2002).
- NASA National Managers Association, *Lessons in Character from Enron* (April 2002).
- The University of Texas School of Law CLE: The 25th Annual Page Keeton Products Liability & Personal Injury Conference, *Dressed for Excess* (November 2001).

Nancy B. Rapoport
Page 22

*Women*

- Gardere Women's Council Ethics CLE, keynote speaker, *Women on Boards* (June 2013).
- State Bar of Texas Annual Meeting, Women & the Law Section, *Images of Women Lawyers in the Media* (June 2003).

*Miscellaneous*

- Emanuel Bar Review Lecturer (2008-2010).
- BAR/BRI, lecturer on *Succeeding in Law School* (2002-2006).

**Selected media appearances**

- Appearances on a variety of local, national, and international news broadcasts, and in local, national, and international news articles, on various bankruptcy, corporate law, and other legal issues, including the Enron bankruptcy case, the Arthur Andersen trial, and the Anna Nicole death (December 2001-present).
- Appeared in Academy Award®-nominated documentary, *Enron: The Smartest Guys in the Room* (Magnolia Pictures 2005).

**Special training**

- Attended three Harvard Institutes of Higher Education leadership programs (IEM in 2016, MLE in 2002, and MDP in 1999).
- Attended STAR: A Systematic Approach to Mediation Strategies, Straus Institute for Dispute Resolution, Pepperdine University School of Law (June 2008) (attended on a grant from Pepperdine).

**Contributor to the following blogs**

- ABOVE THE LAW, https://abovethelaw.com/.
- NANCY RAPOPORT'S BLOG, https://nancyrapoports.blog/.
- NANCY RAPOPORT'S BLOGSPOT (former blog), http://nancyrapoport.blogspot.com/.
- LAW SCHOOL SURVIVAL MANUAL, http://lawschoolsurvivalmanual.blogspot.com/.
- CORPORATE SCANDAL WATCH, http://corporatescandalwatch.blogspot.com/.
- UNLV LAW BLOG, Contributing Editor, http://unlvlawblog.blogspot.com.
- MONEYLAW, Contributing Editor, http://money-law.blogspot.com/.
- LEGAL PROFESSION, Contributing Editor: http://lawprofessors.typepad.com/legal_profession/.
- JURIST, Contributing Editor, http://jurist.law.pitt.edu/.
- CREDIT SLIPS, Guest Blogger, http://www.creditslips.org/.
- THE FACULTY LOUNGE, Guest Blogger, http://www.thefacultylounge.org/.
- THE CONGLOMERATE, Guest Blogger, http://www.theconglomerate.org/.
- FEMINIST LAW PROFESSORS, Guest Blogger, http://feministlawprofs.law.sc.edu/.

Nancy B. Rapoport
Page 23

- RACE TO THE BOTTOM, Guest Blogger, http://www.theracetothebottom.org/home/.

## HONORS, BAR ADMISSIONS, MEMBERSHIPS, AND COMMUNITY SERVICE

**Selected honors**

- Recipient of the 2022 UNLV Alumni Association's Outstanding Faculty Member of the Year Award.
- Named a UNLV Distinguished Professor in 2022.
- ABI Task Force For Veterans and Servicemembers' Affairs Challenge Coin (2019).
- Recipient of one of the NAACP Legacy Builder Awards (Las Vegas Branch #1111) (2018).
- Commercial Law League of America's Lawrence P. King Award for Excellence in Bankruptcy (2017).
- Inducted into Phi Kappa Phi, Chapter 100 (2017).
- Southeastern Bankruptcy Law Institute Distinguished Visiting Scholar (week-long visits at Georgia State College of Law) (2011).
- 2008 Public Service Counsel of the Year, 4th annual event, Association of Media and Entertainment Counsel (2009).
- Fellow, American College of Bankruptcy (2005-present) (Class 16).
- Named a "Woman of Vision" by the Houston Delta Gamma Foundation (2004).
- Admitted to American Leadership Forum, Class XXII (2004).  Withdrew due to family illness.
- Named "Best Local Girl Made Good," HOUSTON PRESS, September 25, 2003, at 24.
- Fellow, American Bar Foundation (2002-present; Life Fellow since 2015).
- Rice University Distinguished Alumna (2002).
- Named by the Greater Houston Area Chapter of the National Council of Jewish Women as a "Woman of Influence" (2001).
- Elected to membership in the American Law Institute (2001).
- Named a Legal Pioneer for Women in the Law (first woman to serve as the dean of a Nebraska law school), Nebraska State Bar Association (2000).
- Louis Nemzer Memorial Lecture (yearly lecture honoring a Jewish member of the Ohio State faculty) (1998).
- Outstanding Professor of the Year, The Ohio State University College of Law (third-year students voting) (co-winner, with Professor Barbara Rook Snyder) (1997).

**Bar admissions**

- United States District Court, District of Nevada (2009).
- Nevada Supreme Court (2007).
- United States District Court, Northern District of Texas (2003).
- Texas Supreme Court (2001).
- United States Supreme Court (2000).

Nancy B. Rapoport
Page 24

- Nebraska Supreme Court (1999).
- Ohio Supreme Court (1993).
- United States District Court for the District of Hawaii (1988).
- California Supreme Court (1987).
- United States Court of Appeals for the Ninth Circuit (1987).
- United States District Courts for the Northern, Eastern, Central, and Southern Districts of California (1987).

**Editorial boards**

- AMERICAN BANKRUPTCY LAW JOURNAL ADVISORY BOARD (three-year term, starting in 2023).
- THE BUSINESS LAWYER (2014-present).
- REYNOLDS COURTS & MEDIA LAW JOURNAL (2011-2013).
- Association of American Law Schools, JOURNAL OF LEGAL EDUCATION (2007-2010).
- State Bar of Texas, TEXAS BAR JOURNAL Board of Editors (2003-06); State Bar of Texas, TEXAS BAR JOURNAL, Editorial Board Committee (2001-2004).
- CALIFORNIA BANKRUPTCY JOURNAL (1995-2002).

**Selected board memberships**

- Claremont Graduate University Board of Trustees (2021-present) (serving on Academic Affairs, Audit, and Student Success committees, 2021-23); Vice-Chair, Audit and Risk Management Committee, 2022-2023); Chair, Audit and Risk Management Committee (2023-present).
- Setona Sub-HOA Board (President, 2021-present).
- Rice University, External Advisory Board, Center for Teaching Excellence (2019-present); Chair (2022-present).
- Nevada Board of Bar Examiners (2018-2020).
- Economic Club of Las Vegas (2017-present).
- National Museum of Organized Crime & Law Enforcement ("The Mob Museum") (2013-2022); Secretary of the Board (2016-2022); Member, Advisory Council (2022-present).
- JURIST Board of Directors (http://jurist.law.pitt.edu/) (2008-2014).
- American Bankruptcy Institute Board of Directors (2008-2017); Executive Committee (2012-2016); Vice President of Research Grants (2013-2016).
- American Board of Certification (board certification for bankruptcy lawyers) (2007-2014) (Dean of Faculty, 2011-2013).
- Association of Rice Alumni Board (2006-2009).
- NALP Foundation for Law Career Research and Education (2005-2009).
- Texas Center for Legal Ethics (2004-2006).
- Texas Supreme Court Historical Society (2004); Advisory Board (2004-2006).
- Vinson & Elkins Women's Initiative Advisory Board (2003-2010).
- Houston Area Women's Center (2003-2006).

Nancy B. Rapoport
Page 25

- Advisory Council Member, WWW United, Inc. (2002-2006).
- Texas Environmental Health Institute (a joint project of the Texas Department of Health & the Texas Natural Resource Conservation Commission, which is the Texas Commission on Environmental Quality (TCEQ)) (2002-2004).
- Houston World Affairs Council (2002-2005).
- Houston Hillel (2002-2007).
- Mayor's Advisory Board of World Energy Cities Partnership (2001-2004).
- Houston Disaster Relief Advisory Board (2001-2004).
- Houston Chapter of the Texas General Counsel Forum (2001-2005).
- Anti-Defamation League Southwest Regional Board (2001-2006).
- Law School Admission Council Board of Trustees (2001-2004).

**Selected service activities and memberships**

- Member, Foundational Subject Requirement and Performance Test Task Force, Nevada Supreme Court Bar Licensing Commission (2023-present).
- Member, American Bar Association's Business Law Section, Corporate Governance Committee, Academic Affairs Subcommittee (2022-present).
- Member, Association of Professional Responsibility Lawyers (2022-present; 2014-16).
- (Co-Chair (with Joseph R. Tiano, Jr.) of SALI project to develop a bankruptcy taxonomy (2021-present) (sali.org).
- Member, Operation Stand-By, militaryprobono.org (2021-present).
- Secretary and Reporter, American Bankruptcy Institute's Task Force for Veterans and Servicemembers Affairs (2018-present).
- Member, Federal Bar Association's Professional Ethics Committee (2018-present); Ethics Hotline subcommittee (2018-2019); Co-Chair, Speakers' Bureau, 2019-present).
- Member, Heterodox Academy (2017-present).
- Member, Society for Applied Anthropology (2017-present).
- Member, National Association of Legal Fee Analysts (2014-2018) (resigned).
- Member, Law School Admission Council Diversity Retention Workshop 2015 Planning Work Group (2014-2015).
- Member, Federalist Society (2013-present).
- Member, Federal Bar Association (2012-present).
- Member, Advisory Committee to the American Bankruptcy Institute's Commission to Study the Reform of Chapter 11 (2012-2015) (Governance Subcommittee).
- Co-Reporter, American Bankruptcy Institute's National Ethics Standards Task Force (2011-2013).
- Co-Chair, American Bankruptcy Institute's Task Force on Young and New Members (2011-2012).
- Association of Media and Entertainment Counsel, Law School Section (Co-Chair, 2010-2011; member and temporary Co-Chair, 2012-2013); member, Law School Advisory Board (2014); Chair, Law School Advisory Board (January 2018-present).

Nancy B. Rapoport
Page 26

- American Bar Association, Section on Legal Education, Committee on Law School Administration (2008-2010); Chair-Elect (2010); Chair (2011-2013).
- American Bar Association, Section on Business Law, Committee on Corporate Counsel, Subcommittee on Corporate Governance (co-chair, with Roberta Torian) (2007-2010).
- Advisory Committee, American Bankruptcy Institute's consumer bankruptcy fee study (advisor to Professor Lois Lupica) (2008-2011).
- Rice Alumni Volunteers for Admission (2007-present) and liaison for RAVA to Association of Rice Alumni Board (2007-2009); involved in Rice Annual Fund solicitations since 2007.
- Advisory Committee, American Bankruptcy Institute's Chapter 11 fee study (advisor to Professor Stephen Lubben) (2005-2007).
- American Bankruptcy Institute's Task Force on Pro Bono (2007).
- American Bar Association's Task Force on Attorney Discipline (2005).
- Planning committee for 2007 Annual Meeting of Association of American Law Schools, *Workshop on The Ratings Game* (2006-2007).
- City of Houston Mayor's Pension Governance Advisory Committee (2004-2006).
- American Bar Association, Advisory Group on Loan Repayment, Standing Committee on Legal Aid & Indigent Defendants (SCLAID) (2003-2006).
- Faculty member, ABA New Deans' School (May-June 2003, June 2004, and June 2005).
- Advisory Committee, Baylor College of Medicine-UH Law Center MD/JD Program (2004-2006).
- Academic advisor, National Governmental Affairs Committee, Commercial Law League of America (CLLA) (2002-2006).
- Co-chair (with Dean Stuart Deutsch), ABA Deans' Workshop (for mid-year ABA meeting in 2003).
- Advisory Committee, *The Birth of the Dot-Com Era,* project for the Library of Congress (Project Manager, Prof. David Kirsch, University of Maryland) (advising the Library of Congress on what to do with the records of now-defunct law firm of Brobeck, Phleger & Harrison) (2004-2007).
- National Association of Corporate Directors (2004-2006).
- Commercial Law League of America, Professional Responsibility Committee (2003-2005).
- Member, ABA Commission on Loan Repayment & Forgiveness (2001-2003).
- Member, AALS Professional Development Committee (2000-2003).
- Communication Skills Committee, ABA Section of Legal Education and Admissions to the Bar (1998-2002).
- Chair, AALS Planning Committee for the *Mini-Workshop on Major Issues of the 21st Century: the Impact on the Legal Academy and Law Students* (1999-2000).
- Member, Law School Admission Council (LSAC) Services & Programs Committee (1999-2000), Workgroup on Alternative Admissions Models (2000-2003), and Gay, Lesbian, Bisexual & Transgendered Issues Workgroup (2000-2001).
- Nebraska State Bar Association (1999-present).
- National Association of College & University Attorneys (1998-2006).
- Commercial Law League of America (1998-present).
- Ohio State Bar Association (1997-present).

Nancy B. Rapoport
Page 27

- American Bankruptcy Institute (1994-present).
- AIDS Legal Referral Panel of the Bar Association of San Francisco (1989-91).
- Bar Association of San Francisco (1987-91).
- American Bar Association (1987-present).


## EXPERT AND EXPERT WITNESS ACTIVITY

- Expert for Legal Aid Center of Southern Nevada in In the Matter of the Guardianship of the Person and Estate of Katherine June Jones, Case No. G-19-, 052263-A, District Court, Clark County, Nevada (2023-present).
- Expert for McDermott Will & Emery LLP in *In re* Power Property Management, Cause No. DC-19-00695, 134th Judicial District Court, Dallas County, Texas (2023-present).
- Expert for McDonald Carano LLP in 4R4 Sons, LLC, Horizon Kids dba Kidz, Kidz, Kidz v. Tru G. Wilhelm, Inc. and counterclaim Tru G. Wilhelm v. Horizon Kidz, 4R4 Sons, LLC, Chrisetta M. Rush and Arthur T. Rush, individually and in their capacities as trustees of the Rush Family Revocable Trust (2022-present).
- Expert for Shumaker, Loop & Kendrick, LLP, in Adela 117, LLC v. JP Morgan Chase Bank, Case No. 2021-CF-004270-NC, Circuit Court of the Twelfth Judicial Circuit in and for Sarasota County, Florida (2022-2023) (testified in deposition and at trial).
- Expert for The Claro Group in *In re* Diocese of Camden, New Jersey, Case No. 20-21257, United States Bankruptcy Court, District of New Jersey (2022-present).
- Expert for Lowenstein Sandler LLP in *In re* Diocese of Camden, New Jersey, Case No. 20-21257, United States Bankruptcy Court, District of New Jersey (2022).
- Expert for Wynn Resorts and Orrick Herrington & Sutcliffe LLP in Nielsen v. Wynn Resorts, Ltd., Case No. A-19-803879-C, Eighth Judicial District Court, Clark County, NV (2022-present).
- Expert for Lipson Neilson PC in Estate of Tony Hsieh v. Premsrirut, Clark County District Court, Case No. A-22-847455-B, Las Vegas, NV (2022-present).
- Expert for Shumaker, Loop & Kendrick, LLP, in Adela 117, LLC and Newport Sports Mgmt., Inc. v. JPMorgan Chase Bank et al., Case No., 2021-CA-004270-NC, Circuit Court of the Twelfth Judicial Circuit in and for Sarasota County, Florida (2022).
- Expert for Krevolin & Horst Law Firm in Blackhall Real Estate, LLC v. Smith, JAMS Arbitration No. 1440007245, Atlanta, Georgia (2021).
- Expert for the United States Trustee in *In re* Star Mountain Resources, Inc., Case No. 2:18-bk-01594-DPC, United States Bankruptcy Court for the District of Arizona (2021).
- Expert for the Chapter 7 Trustee in *In re* Green-Light International, LLC, Case No. 2:17-bk-18265-BB, United States Bankruptcy Court for the Central District of California (2021).
- Consultant for law firms regarding a disclosure issue (2021).
- Expert for Beasley Allen Law Firm in *In re* Imerys Talc America, Inc., Case No. 19-10289, United States Bankruptcy Court for the District of Delaware (2020-present) and *In re* LTL Management LLC, Case No. 21-30589, United States Bankruptcy Court for the Western District of North Carolina, transferred to the United States Bankruptcy Court for the District of New Jersey (2021-present).

Nancy B. Rapoport
Page 28

- Expert for Bonds Ellis Eppich Schafer Jones LLP in *In re* Highland Capital Management, L.P., Case No. 19-34054, United States Bankruptcy Court for the Northern District of Texas (2020).
- Fee examiner in *In re* Zetta Jet USA, Inc. (2:17-bk-21386-SK) and *In re* Zetta Jet PTE, Ltd., Case No. 2:17-bk-21387-SK, United States Bankruptcy Court for the Central District of California—Los Angeles Division (2020-present).
- Expert for Sidley Austin LLP in *In re* Boy Scouts of America and Delaware BSA, LLC, United States Bankruptcy Court for the District of Delaware, Case No. 20-10343 (LSS) (2020-2022) (testified at hearing in 2020; testified in arbitration in 2022).
- Expert for Porter Hedges LLP in *In re* McDermott Int'l, United States Bankruptcy Court for the Southern District of Texas, Case No. 20-30336 (DRJ) (2020-present).
- Expert for Diamond McCarthy LLP and Snow Covered Capital, LLC in Snow Covered Capital, LLC v. Weidner, United States District Court for the District of Nevada, Case No. 2:19-cv-00595-JAD-NJK (2019-present) (testified at deposition).
- Expert for The Richter Firm and Shumaker, Loop & Kendrick in Wise v. Smith et al., Court of Common Pleas, State of South Carolina, Case No. 2019-CP-3300017 (2019-2020) (testified at deposition).
- Independent monitor for UpRight Law (2018-2023).
- Fee examiner in *In re* Toys "R" Us Property Company I, LLC, United States Bankruptcy Court for the Eastern District of Virginia, Case No. 18-31429 (KLP) (2018-2019).
- Fee examiner in *In re* Toys "R" Us, Inc., United States Bankruptcy Court for the Eastern District of Virginia, Case No. 17-34665 (KLP) (2018-2019).
- Expert for the Trustee in two *In re* ICPW Liquidation Corp. cases, United States Bankruptcy Court for the Central District of California, Case Nos. 1:17-bk-12408-MB and 1:17-bk-12409-MB (2018).
- Expert for Hoover Slovacek LLP in Midstates Petroleum Company v. Production Specialists, Inc. dba Regal Oilfield Sup., United States Bankruptcy Court for the Southern District of Texas, Case No. 4:16-bk-32237 (2017-2019).
- Expert for Panish Shea & Boyle LLP in Moradi v. Nevada Property 1, LLC, District Court, Clark County, Nevada, Case No. A-14-698824-C (2017).
- Expert for Diamond State Insurance Company in Gieseke v. Diamond State Insurance Company, U.S. District Court for the District of Nevada, Case No. 3:16-cv-00103-MMD-WGC (2016).
- Expert for Mar-Bow Value Partners, LLC, and Lakeview Capital, Inc., on a confidential matter involving Federal Rule of Bankruptcy Procedure 2014 (2016-present).
- Independent member of Fee Committee, *In re* Caesars Entertainment Operating Co., Inc., U.S. Bankruptcy Court, Northern District of Illinois, Case No. 15-01145 (ABG) (2015-2018).
- Expert for Craig Marquiz in Home Gambling Network, Inc. v. Piche, United States District Court for the District of Nevada, Case No. 2:05-cv-00610-DAE-VCF (2015).
- Expert for the Debtor in *In re* The Catholic Bishop of Spokane, a/k/a The Catholic Diocese of Spokane, United States Bankruptcy Court, Eastern District of Washington, Case No. 04-08822-FPC11 (2014).

Nancy B. Rapoport
Page 29

- Expert for the Trustee in *In re* Fundamental Long Term Care, Inc., United States Bankruptcy Court, Middle District of Florida, Case No. 8:11-bk-22258-MGW (2014-2015) (testified at deposition and at trial).

- Expert for the Liquidating Trustee in Mukamal v. Fulbright & Jaworski L.L.P (*In re* Palm Beach Finance Partners, L.P. and Palm Beach Finance Partners II, L.P.), United States Bankruptcy Court, Southern District of Florida, Case No. 09-36379-BKC-PGH (2014) (withdrew due to scheduling issues).

- Expert for the law firm of Lipson Neilson Cole Seltzer Garin, P.C. in a case involving conflicts of interest (2014).

- Consultant for the Liquidating Trust for *In re* Residential Capital, LLC, United States Bankruptcy Court, Southern District of New York, Case No. 12-12020 (MG), regarding the reasonableness of fees (2014).

- Expert for the law firm of Frank J. Cremen in Grievance File #SG 1-1156, State Bar of Nevada (2013-2014) (testified at hearing).

- Expert for Irell & Manella LLP, in State of Nevada v. Gary Trafford, et al., Clark County District Court, Case No. C-11-277573-1 (2013).

- Expert for a Nevada law firm (firm and client names kept confidential) in a matter involving attorney disciplinary procedures (2012).

- Expert for the Fee Examiner in Matter of Lehman Brothers Holdings, Inc., U.S. Bankruptcy Court, Southern District of New York, Case No. 08-13555-jmp (2012).

- Expert for the Fee Examiner in *In re* Motors Liquidation Co. (f/k/a General Motors Corp.), U.S. Bankruptcy Court, Southern District of New York, Case No. 09-50026 (2011-2012).

- Expert for Alverson Taylor Mortensen & Sanders in Stanish et al. v. Catholic Healthcare West, Nevada District Court, Clark County, Case No. A-11-639674-C (2011).

- Fee examiner in *In re* Station Casinos, Inc., U.S. Bankruptcy Court, District of Nevada, Case Nos. BK-09-52477 through BK-11-51219 (2011).

- Expert for the Office of the United States Trustee in three cases:  *In re* Mark Andrew Brown, U.S. Bankruptcy Court, Western District of Maryland, Case No. 09-44254-jwv7; *In re* Tracy L. Quarm, U.S. Bankruptcy Court, Northern District of Ohio, Case No. 09-20498; and *In re* John W. Young, U.S. Bankruptcy Court, Northern District of Ohio, Case No. 10-11404 (2010) (testified in discovery depositions and at trial; deposition and trial testimony done via videotape).

- Expert for the Trustee in The Pappg Grantor Trust v. Scott (*In re* Baltimore Emergency Services II, LLC, et al.), U.S. Bankruptcy Court, District of Maryland, Adversary No. 03-8294-esd (2010).

- Expert for Lionel, Sawyer & Collins in Michael Racusin v. Lionel Sawyer & Collins, American Arbitration Association, Case No. 79 194 Y 00108 08 (2009-2010) (testified in arbitration).

- Expert for the Reorganized Debtor in *In re* ASARCO, LLC, et al., U.S. Bankruptcy Court, Southern District of Texas, Case No. 05-21207 (2010) (testified at trial).

- Expert for BuckleySandler LLP in Pulte Homes, Inc. v. Terry Goddard, In His Official Capacity as Attorney General for the State of Arizona and Catherine Cortez Masto, In Her Official Capacity as Attorney General for the State of Nevada, D.C. Circuit, Civil Action No. 1:10-cv-00377 (2010).

Nancy B. Rapoport
Page 30

- Court's fee expert and chair of the Fee Review Committee in *In re* Pilgrim's Pride Corp., U.S. Bankruptcy Court, Northern District of Texas, Case No. 08-45664 (DML) (2009-2010) (testified at hearing).

- Expert for plaintiff in Judy M. Jackson, M.D. v. Ira Levine et al., Nevada District Court, Clark County, Case No. A538983 (2009-2010) (testified in deposition and at trial).

- Expert for the Trustee in Asset Funding Group, L.L.C., Scobar Adventures, L.L.C., AFG Investment Fund 2, L.L.C., and HW Burbank, L.L.C. v. Adams and Reese, L.L.P., U.S. District Court, Eastern District of Louisiana, Case No. 07-2965 (2009) (testified in deposition; made available for trial, but case settled).

- Expert for Clausen Miller in *In re* Raymond Professional Group, Inc. (Raymond Professional Group, Inc. v. William A. Pope Company), Adv. No. 07-A-00639, U.S. Bankruptcy Court, Northern District of Illinois (2008-2009) (testified in deposition and at hearing).

- Expert for the plaintiff in Todd v. Guidance Software, Inc., U.S. District Court, Central District of California, Case No. SACV 08-1354 JVS (ANx) (2008-2009).

- Expert for the Debtor in Sports Shinko Co. v. Franklin K. Mukai, U.S. District Court, D. Hawaii, Case No. CV 04-00127 ACK/BMK (2007-2008).

- Expert for the Trustee in *In re* Mego Financial Corp., et al., U.S. Bankruptcy Court, D. Nev., Case Nos. BK-N-03-52300-GWZ through BK-N-03-52304-GWZ and BK-N-03-52470-GWZ through BK-N-03-52474-GWZ (2007-2008) (testified at deposition).

- Expert for Pillsbury Winthrop in *In re* SONICBlue Incorporated, U.S. Bankruptcy Court, Northern District of California, Case Nos. 03-51775 through 03-51778 MM (2007) (made available to testify in court early in the case; did not testify).

- Expert for the Trustee in *In re* Southwest Florida Heart Group, P.A., U.S. Bankruptcy Court, Middle District of Florida, Case No. 9:05-bk-17167-ALP (2007) (testified in deposition).

- Expert for Beirne, Maynard & Parsons in Brazos Electric Power Cooperative, Inc. v. Tenaska IV Texas Partners and related cases (2003-2004; 2006-2007) (testified in depositions).

- Expert for Beirne, Maynard & Parsons in Hicks v. Charles Pfizer & Co., U.S. District Court, Eastern District of Texas, Civil Action No. 1:04CV201 (2006).

- Expert for Benjamin Hall, Esq., in Costilla Energy, Inc., by and through its litigation trustee, George Hicks v. Joint Energy Development Investments II, 49th Judicial District, Zapata County, Texas (2006-2008) (testified in deposition).

- Expert for Winstead, Secrest & Minick in an issue involving conflicts of interest (2005).

- Expert for Beckley, Singleton in Fremont Investment & Loan v. Beckley Singleton, Chtd. and Sidney Bailey, U.S. District Court, D. Nevada, Case No. CV-S-03-1406-JCM-RJJ (2003) (2005-2006) (testified in deposition).

- Expert for the debtor in *In re* ACandS, Inc., U.S. Bankruptcy Court, D. Delaware, Case No. 02-12687 (2004-2005) (testified at hearing).

- Court's fee expert and chair of the Fee Review Committee in *In re* Mirant Corporation, U.S. Bankruptcy Court, Northern District of Texas, Case No. 03-46590 (2003-2006; 2011-2012) (testified in deposition and at hearing).

- Expert witness for Latham & Watkins regarding Section 414 of H.R. 333 (changes in "disinterestedness" standard of 11 U.S.C. § 101(14)) (March-April 2003).

Nancy B. Rapoport
Page 31

- Expert witness for the Office of Disciplinary Counsel, *In re* Charles William Ewing, Case No. 97-5, before the Board of Commissioners on Grievances and Discipline of the Bar of the Supreme Court of Ohio (1998).


**PUBLIC TESTIMONY**

- Testified at the June 2012 public meeting of the United States Trustee Program regarding the proposed new fee guidelines for larger chapter 11 cases (testimony available at http://www.justice.gov/ust/eo/rules_regulations/guidelines/docs/proposed/Prof_Rapoport_Comment.pdf, http://www.justice.gov/ust/eo/rules_regulations/guidelines/docs/proposed/Prof_Rapoport_SupplementalComment.pdf, and http://www.justice.gov/ust/eo/rules_regulations/guidelines/docs/proposed/Prof_Rapoport_Comment2.pdf; transcript available at http://www.justice.gov/ust/eo/rules_regulations/guidelines/docs/proposed/Transcript_June4_Public_Meeting.pdf; Director Clifford J. White III's statement on the adopted guidelines, available at http://www.justice.gov/ust/eo/rules_regulations/guidelines/docs/Fee_Guidelines_Cliff_White_Statement.pdf).


**ADVICE COLUMN**

- "Ms. Ps and Qs":  ethics advice column for the National Association of Chapter 13 Trustees (2011-present).


**SELECTED AMICUS BRIEFS**

- *Brief for Amici Erwin Chemerinsky and Other Legal Scholars in Support of Appellees,* Aearo Technologies, LLC v. Those Parties Listed on Appendix A to the Complaint and Jone & Jane Does, 1-1000 (In re Aearo Technologies, LLC), United States Court of Appeals for the Seventh Circuit, Case No. 22-2606 (Feb. 1, 2023).
- *Brief of 83 Legal Ethics Professors as Amici Curiae in Support of Hearing En Banc,* United States v. Varner, United States Court of Appeals for the Fifth Circuit, Case No. 19-40016 (Mar. 20, 2020).
- *Amicus Brief of Neutral Fee Examiners Supporting Neither Party,* Baker Botts L.L.P. v. ASARCO LLC, Case No. 14-103, United States Supreme Court (Dec. 10, 2014), 2014 WL 6984132.
- *Brief of Amici Curiae, In re* David Marshall Brown, Case No. 12-Cv-60016-KAM, United States District Court, Southern District of Florida (filed by co-counsel George Castrataro) (April 11, 2012), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2038267.

Nancy B. Rapoport
Page 32

- *Brief in Support of Respondent for Amici Curiae Professors Richard Aaron, Laura Beth Bartell, Jagdeep S. Bhandari, Susan Block-Lieb, Robert D'Agostino, Jessica Dawn Gabel, Kenneth N. Klee, George W. Kuney, C. Scott Pryor, Nancy B. Rapoport, Marie T. Reilly, Lynne F. Riley, Keith Sharfman, and Michael Sousa,* RadLAX Gateway Hotel, LLC and RadLAX Gateway Deck, LLC v. Amalgamated Bank, Case No. 11-166, United States Supreme Court (March 5, 2012).
- *Brief of Legal Ethics Professors and Practitioners and the Ethics Bureau at Yale as Amici Curiae in Support of Petitioner,* Maples v. Thomas, Case No. 10-63, United States Supreme Court (May 25, 2011).
- *Brief of Amicus Curiae,* Warren v. Seidel, United States District Court for the District of Ohio, Case No. 2:10-cv-01049-MHW (2010), available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1843496.
- *Brief of 30 Leading Ethicists as Amici Curiae in Support of the Petitioner,* Charles Dean Hood v. State of Texas, Case No. 09-8610, United States Supreme Court (February 18, 2010), available at 2010 WL 638469.
- *Brief of Amicus Curiae,* Danny Joe McClure and Kimberly Deskins McClure, Plaintiffs, v. Bank of America, Creditors Financial Group, LLC, and Peter Rebelo, Defendants, Bankr. N.D. Tex. 2010, Adv. No. 08-04000-DML, available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1550353.


**INTERESTS (INCLUDING SELECTED BALLROOM DANCE COMPETITION RESULTS)**

- Ailurophile; Jane Austen and Aaron Sorkin fan.
- Obsessed with the history of the Titanic and with the U.S. space program.

*Ballroom dance*

- Pro/am competition results:

  - United States Dance Championships (ballroom dance's national competition):

    - 5th in S1 US Open to the World Pro/Am Rhythm Scholarship Championship; 4th in "C"  Open to the World 9-Dance Championship (with Igor Dogoter) (2022).
    - 4th in S1 Open Gold US National Pro/Am Rhythm Scholarship Championship; 5th in S1 Open Gold US National Pro/Am Smooth Scholarship Championship; 4th in "C" Open Gold US Open to the World 9-Dance Championship (with Igor Dogoter) (2021).
    - 6th in "C" U.S. National Open Gold Rhythm Scholarship & 4th in "C" Open to the World Pro/Am American Style 9-Dance Championship (with Sergei Shapoval) (2019).
    - 4th in "C" Open to the World Pro/Am American Style 9-Dance Championship (with Sergei Shapoval) (2018).

Nancy B. Rapoport
Page 33

- 2nd in "C" Open to the World Pro/Am American Style 9-Dance Championship (with Sergei Shapoval) (2017).
- 5th in "C" Open to the World Pro/Am American Style 9-Dance Championship (with Sergei Shapoval) (2016).
- 4th in the "C" Open to the World Pro/Am American Style 9-Dance Championship (with Sergei Shapoval) (2015).
- 5th in U.S. Open Pro/Am American Style 9-Dance Championship "B" Division (missed 4th by a Rule 11 tie) & 1st in U.S. Open Pro/Am Rising Star American Smooth Competition "B" Division (with Sergei Shapoval) (2014).
- 6th in U.S. National Pro/Am American Rhythm 5 Dance Scholarship "B" Division; 2nd in U.S. Open Pro/Am American Style 9-Dance Championship ("B" Division") and 5th in U.S. Open Pro/Am Rising Star American Smooth Competition (with Sergei Shapoval) (2013).
- 5th in Open "B" 9-Dance Championship and 6th in Rising Star "B" American Smooth Competition (with Sergei Shapoval) (2012).
- 4th in Open "B" Rhythm Scholarship and 4th in Open "B" 9-Dance Championship (with Sergei Shapoval) (2011).

o Las Vegas Lights Dance Challenge: 1st in Open Gold American Style 6-Dance; 1st in Open CM Rhythm Multi-Dance; 1st in Open CM Smooth Multi-Dance; 1st in Open CM Rhythm Scholarship; 1st in Open CM Smooth Scholarship (with Igor Dogoter) (2022).

o Vegas Open: 2d in S1 Open Multi-dance Rhythm; 2n in Senior Open Rhythm Scholarship; 2d in S1 Open Multi-dance Smooth; 1st in Open "C" 9-dance Scholarship; 3rd in S1 Open Smooth Scholarship (with Igor Dogoter) (2023); 1st in S1 9-Dance; 2d in S1 Open Rhythm Multi-Dance Challenge; 2d in S1 Open Rhythm Scholarship; 2d in S1 Open Smooth Multi-Dance Challenge; 4th in S1 Open Smooth Scholarship (with Igor Dogoter) (2022).

o Holiday Dance Classic: 2d in "C" DanceSport Series Rhythm Championship; 6th in "C" Open Rhythm Scholarship; 2d in "C" DanceSport Series Smooth Championship (2022) (with Igor Dogoter); 4th in "C" DanceSport Series Rhythm Championship; 5th in "C" DanceSport Series Smooth Championship; 5th in S1 Smooth Scholarship (with Igor Dogoter) (2021).

o Great Gatsby Gala: 1st in World DanceSport Series "S1" American Rhythm; 2d in 9-Dance; 2d in World DanceSport Series "S1" American Smooth; 4th in "S1" Scholarship American Smooth (missed 3d by a Rule 11 tie) (with Igor Dogoter) (2021).

o Viva Las Vegas: 1st in World Challenge American Smooth Open (L-B); 1st in World Challenge American Rhythm Open (L-B); top Gold student (with Igor Dogoter) (2022); 1st in World Challenge American Smooth Open (L-B); 2d in World Challenge American Rhythm Open (L-B) (with Igor Dogoter) (2021).

Nancy B. Rapoport
Page 34

o   Ballroom Beach Bash: 3$^d$ in Senior Open Rhythm Scholarship; 2$^d$ in "C" Open 9-dance; 4th in Senior Open Smooth Scholarhip (with Igor Dogoter) (2023); 1st in S1 Open Rhythm Scholarship, 1st in "C" 9-dance; 4th in SR Open Smooth (with Igor Dogoter) (2022); 1st in "C" Open Gold Smooth Scholarship; 7th in "C" Open Advanced Smooth Scholarship (with Igor Dogoter) (2021).

o   California Open DanceSport Championships (online competition):  3$^d$ in "B" Open Smooth Championship & 2$^d$ in "C" Best of the Best Open Smooth (with Igor Dogoter) (2021).

o   Fred Astaire National Dance Championships:  4th place in Open B Rhythm Scholarship, 2nd place in American Rhythm 9-Dance Division, and 6th place in Open B Smooth Scholarship (with Sergei Shapoval) (2018).

o   Fred Astaire World Championships:  5th in Open B Rhythm Scholarship & 6th in Open B Smooth Scholarship (with Sergei Shapoval) (2017).

o   Emerald Ball:  5th in Open S1 Rhythm Championship and 5th in Open B American 9-Dance (with Igor Dogoter) (2023); 5th in Open B American 9-Dance Championship (2019) (with Sergei Shapoval); 4th in Open B American Rhythm Scholarship (with Sergei Shapoval) (2011).

o   California Star Ball:  1st in Pro/Am Open Rhythm Scholarship Competition and 3rd in the Open American Smooth Competition (2010); 1st in Open Rhythm Scholarship (with Sergei Shapoval) (2009).

o   Embassy Ball:  1st in the B Division, Open-to-the-World Latin Pro/Am Competition (with Billy King) (2005).

o   Ohio Star Ball:  DanceSport SuperBowl Region 5 Representative, Ladies' B Latin (with Billy King) (2005); 1st in International Latin (B) Scholarship (with Bill Sparks) (1993).

• Amateur competition results:

o   Vegas Open Dance Challenge:
   ▪  2023, 3rd in Pre-Novice Smooth; 5th in Novice Smooth (with Ben Ow).

o   Holiday Dance Classic:
   ▪  2022, 1st in Amateur "C" Smooth Novice (with Ben Ow).

o   United States Amateur Dance Sport Competition (national amateur ranking competition):

   ▪  1996, 3rd place, American Rhythm Division (with Christopher Holgate).

Nancy B. Rapoport
Page 35

- 1994 & 1995, 2nd place, American Rhythm Division (with Christopher Holgate).

  o Ohio Star Ball:  1st in Amateur American Rhythm & 6th place, Amateur American Smooth Division (with David Freeman) (1993).

**PERSONAL INFORMATION**

- Native Texan (born in Bryan, Texas).
- Married to Jeffrey D. Van Niel; no children; two cats (Diana Prince and Shadow Grace).

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:      655 W. Broadway, Suite 800, San Diego, California  92101

A true and correct copy of the foregoing document entitled (*specify*):

**DECLARATION OF NANCY RAPOPORT IN SUPPORT OF MOTION OF TRUSTEE RICHARD A. MARSHACK FOR ENTRY OF AN ORDER (A) APPROVING SALE OF ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS PURSUANT TO 11 U.S.C. § 363(b) AND (B) APPROVING ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND OTHER AGREEMENTS**

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On July 18, 2023, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒      Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On July 18, 2023, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐      Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on July 18, 2023, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**JUDGE'S COPY**
The Honorable Scott C. Clarkson
United States Bankruptcy Court
Central District of California
Ronald Reagan Federal Building and Courthouse
411 West Fourth Street, Suite 5130 / Courtroom 5C
Santa Ana, CA 92701-4593

☐      Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| July 18, 2023 | Caron Burke | /s/ Caron Burke |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August  2010*                                                      **F 9013-3.1.PROOF.SERVICE**

1.    <u>**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**</u>:

Eric Bensamochan on behalf of Interested Party Courtesy NEF
eric@eblawfirm.us, G63723@notify.cincompass.com

Eric Bensamochan on behalf of Interested Party Eric Bensamochan
eric@eblawfirm.us, G63723@notify.cincompass.com

Ronald K Brown on behalf of Creditor SDCO Tustin Executive Center, Inc.
ron@rkbrownlaw.com

Christopher Celentino on behalf of Plaintiff Richard A. Marshack
christopher.celentino@dinsmore.com, caron.burke@dinsmore.com

Christopher Celentino on behalf of Trustee Richard A Marshack (TR)
christopher.celentino@dinsmore.com, caron.burke@dinsmore.com

Shawn M Christianson on behalf of Interested Party Courtesy NEF
cmcintire@buchalter.com, schristianson@buchalter.com

Randall Baldwin Clark on behalf of Interested Party Randall Baldwin Clark
rbc@randallbclark.com

Leslie A Cohen on behalf of Interested Party Courtesy NEF
leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com;clare@lesliecohenlaw.com

Jenny L Doling on behalf of Interested Party INTERESTED PARTY
jd@jdl.law, dolingjr92080@notify.bestcase.com;15994@notices.nextchapterbk.com

Daniel A Edelman on behalf of Creditor Carolyn Beech
dedelman@edcombs.com, courtecl@edcombs.com

Christopher Ghio on behalf of Plaintiff Richard A. Marshack
christopher.ghio@dinsmore.com, Kristina.Heller@Dinsmore.com

Christopher Ghio on behalf of Trustee Richard A Marshack (TR)
christopher.ghio@dinsmore.com, Kristina.Heller@Dinsmore.com

Jeffrey I Golden on behalf of Creditor Anaheim Arena Management, LLC
jgolden@go2.law,
kadele@ecf.courtdrive.com;cbmeeker@gmail.com;lbracken@wgllp.com;gestrada@wgllp.com;golden.jeff
reyi.b117954@notify.bestcase.com

Jeffrey I Golden on behalf of Creditor Anaheim Ducks Hockey Club, LLC
jgolden@go2.law,
kadele@ecf.courtdrive.com;cbmeeker@gmail.com;lbracken@wgllp.com;gestrada@wgllp.com;golden.jeff
reyi.b117954@notify.bestcase.com

Jeffrey I Golden on behalf of Interested Party Courtesy NEF
jgolden@go2.law,
kadele@ecf.courtdrive.com;cbmeeker@gmail.com;lbracken@wgllp.com;gestrada@wgllp.com;golden.jeff
reyi.b117954@notify.bestcase.com

Richard H Golubow on behalf of Creditor Debt Validation Fund II, LLC
rgolubow@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                              **F 9013-.1.PROOF.SERVICE**

EXHIBIT 6, PAGE 317

Richard H Golubow on behalf of Creditor MC DVI Fund 1, LLC
rgolubow@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com

Richard H Golubow on behalf of Creditor MC DVI Fund 2, LLC
rgolubow@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com

D Edward Hays on behalf of Interested Party Courtesy NEF
ehays@marshackhays.com,
ehays@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@
ecf.courtdrive.com

D Edward Hays on behalf of Trustee Richard A Marshack (TR)
ehays@marshackhays.com,
ehays@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@
ecf.courtdrive.com

Alan Craig Hochheiser on behalf of Creditor City Capital NY
ahochheiser@mauricewutscher.com, arodriguez@mauricewutscher.com

Garrick A Hollander on behalf of Creditor Debt Validation Fund II, LLC
ghollander@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com

Garrick A Hollander on behalf of Creditor MC DVI Fund 1, LLC
ghollander@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com

Garrick A Hollander on behalf of Creditor MC DVI Fund 2, LLC
ghollander@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com

Razmig Izakelian on behalf of Creditor OHP-CDR, LP
razmigizakelian@quinnemanuel.com

Joon M Khang on behalf of Debtor The Litigation Practice Group P.C.
joon@khanglaw.com

Ira David Kharasch on behalf of Interested Party Ad Hoc Consumer Claimants Committee
ikharasch@pszjlaw.com

Ira David Kharasch on behalf of Interested Party Courtesy NEF
ikharasch@pszjlaw.com

Meredith King on behalf of Interested Party Courtesy NEF
mking@fsl.law, ssanchez@fsl.law;jwilson@fsl.law

Nicholas A Koffroth on behalf of Creditor Committee Committee of Unsecured Creditors
nkoffroth@foxrothschild.com, khoang@foxrothschild.com

David S Kupetz on behalf of Defendant Marich Bein, LLC
David.Kupetz@lockelord.com, mylene.ruiz@lockelord.com

David S Kupetz on behalf of Interested Party Courtesy NEF
David.Kupetz@lockelord.com, mylene.ruiz@lockelord.com

Christopher J Langley on behalf of Interested Party Courtesy NEF

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

chris@slclawoffice.com,
omar@slclawoffice.com;langleycr75251@notify.bestcase.com;ecf123@casedriver.com

Daniel A Lev on behalf of Defendant Consumer Legal Group, P.C.
daniel.lev@gmlaw.com, cheryl.caldwell@gmlaw.com;dlev@ecf.courtdrive.com

Daniel A Lev on behalf of Interested Party Courtesy NEF
daniel.lev@gmlaw.com, cheryl.caldwell@gmlaw.com;dlev@ecf.courtdrive.com

Daniel A Lev on behalf of Interested Party Liberty Acquisitions Group Inc.
daniel.lev@gmlaw.com, cheryl.caldwell@gmlaw.com;dlev@ecf.courtdrive.com

Michael D Lieberman on behalf of Creditor Phillip A. Greenblatt, PLLC
mlieberman@lipsonneilson.com

Yosina M Lissebeck on behalf of Trustee Richard A Marshack (TR)
Yosina.Lissebeck@Dinsmore.com, caron.burke@dinsmore.com

Richard A Marshack (TR)
pkraus@marshackhays.com, rmarshack@iq7technology.com;ecf.alert+Marshack@titlexi.com

Laila Masud on behalf of Interested Party Courtesy NEF
lmasud@marshackhays.com, lmasud@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com

Laila Masud on behalf of Interested Party Richard A. Marshack
lmasud@marshackhays.com, lmasud@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com

Laila Masud on behalf of Plaintiff Richard Marshack
lmasud@marshackhays.com, lmasud@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com

Laila Masud on behalf of Trustee Richard A Marshack (TR)
lmasud@marshackhays.com, lmasud@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com

Kenneth Misken on behalf of U.S. Trustee United States Trustee (SA)
Kenneth.M.Misken@usdoj.gov

Byron Z Moldo on behalf of Interested Party Byron Moldo
bmoldo@ecjlaw.com, amatsuoka@ecjlaw.com,dperez@ecjlaw.com

Alan I Nahmias on behalf of Interested Party Courtesy NEF
anahmias@mbn.law, jdale@mbnlawyers.com

Victoria Newmark on behalf of Interested Party Courtesy NEF
vnewmark@pszjlaw.com

Queenie K Ng on behalf of U.S. Trustee United States Trustee (SA)
queenie.k.ng@usdoj.gov

Keith C Owens on behalf of Creditor Committee Committee of Unsecured Creditors
kowens@foxrothschild.com, khoang@foxrothschild.com

Teri T Pham on behalf of Attorney Teri Pham
tpham@epglawyers.com, ttpassistant@epglawyers.com

Douglas A Plazak on behalf of Defendant Greyson Law Center PC

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

**F 9013-.1.PROOF.SERVICE**

EXHIBIT 6, PAGE 319

dplazak@rhlaw.com

Douglas A Plazak on behalf of Defendant Han Trinh
dplazak@rhlaw.com

Douglas A Plazak on behalf of Defendant Jayde Trinh
dplazak@rhlaw.com

Douglas A Plazak on behalf of Defendant Scott James Eadie
dplazak@rhlaw.com

Ronald N Richards on behalf of Defendant Consumer Legal Group, PC
ron@ronaldrichards.com, 7206828420@filings.docketbird.com

Ronald N Richards on behalf of Interested Party Courtesy NEF
ron@ronaldrichards.com, 7206828420@filings.docketbird.com

Gregory M Salvato on behalf of Creditor Mari Agape
gsalvato@salvatoboufadel.com,
calendar@salvatolawoffices.com;jboufadel@salvatoboufadel.com;gsalvato@ecf.inforuptcy.com

Gregory M Salvato on behalf of Interested Party Courtesy NEF
gsalvato@salvatoboufadel.com,
calendar@salvatolawoffices.com;jboufadel@salvatoboufadel.com;gsalvato@ecf.inforuptcy.com

Olivia Scott on behalf of Creditor Azzure Capital LLC
olivia.scott3@bclplaw.com

Olivia Scott on behalf of Creditor Hi Bar Capital LLC
olivia.scott3@bclplaw.com

Jonathan Serrano on behalf of Plaintiff Richard A. Marshack
jonathan.serrano@dinsmore.com

Jonathan Serrano on behalf of Trustee Richard A Marshack (TR)
jonathan.serrano@dinsmore.com

Paul R Shankman on behalf of Attorney Paul R. Shankman
PShankman@fortislaw.com, info@fortislaw.com

Paul R Shankman on behalf of Creditor United Partnerships, LLC
PShankman@fortislaw.com, info@fortislaw.com

Leslie Skorheim on behalf of U.S. Trustee United States Trustee (SA)
leslie.skorheim@usdoj.gov

Howard Steinberg on behalf of Defendant BankUnited, N.A.
steinbergh@gtlaw.com, pearsallt@gtlaw.com;howard-steinberg-6096@ecf.pacerpro.com

Andrew Still on behalf of Interested Party Courtesy NEF
astill@swlaw.com, kcollins@swlaw.com

United States Trustee (SA)
ustpregion16.sa.ecf@usdoj.gov

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

Sharon Z. Weiss on behalf of Creditor Azzure Capital LLC
sharon.weiss@bclplaw.com, raul.morales@bclplaw.com,REC_KM_ECF_SMO@bclplaw.com

Sharon Z. Weiss on behalf of Creditor Hi Bar Capital LLC
sharon.weiss@bclplaw.com, raul.morales@bclplaw.com,REC_KM_ECF_SMO@bclplaw.com

Johnny White on behalf of Creditor Debt Relief Group, LLC
JWhite@wrslawyers.com, jlee@wrslawyers.com

Johnny White on behalf of Interested Party Courtesy NEF
JWhite@wrslawyers.com, jlee@wrslawyers.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                    **F 9013-.1.PROOF.SERVICE**

                                                               EXHIBIT 6, PAGE 321

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 870 Roosevelt, Irvine, CA 92620.

A true and correct copy of the foregoing document entitled: **MOTION TO: (1) EXTEND DURATION OF ETHICS COMPLIANCE MONITOR'S APPOINTMENT; (2) INCREASE COMPENSATION FOR FEE EXAMINER SERVICES PREVIOUSLY RENDERED; AND (3) CLARIFY APPOINTMENT OF FEE EXAMINER REGARDING FINAL APPLICATIONS FOR APPROVAL OF FEES AND EXPENSES; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF RICHARD A. MARSHACK AND NANCY B. RAPOPORT IN SUPPORT** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **October 8, 2024**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**: On **October 8, 2024**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**DEBTOR – MAIL REDIRECTED TO TRUSTEE**
THE LITIGATION PRACTICE GROUP P.C.
~~17542 17TH ST, SUITE 100~~
~~TUSTIN, CA 92780-1981~~

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **October 8, 2024**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**VIA PERSONAL DELIVERY:**
**PRESIDING JUDGE'S COPY**
HONORABLE SCOTT C. CLARKSON
UNITED STATES BANKRUPTCY COURT
411 WEST FOURTH STREET, SUITE 5130 / COURTROOM 5C
SANTA ANA, CA 92701-4593

**MONITOR**
NANCY RAPOPORT
nancy.rapoport@unlv.edu

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| October 8, 2024 | Layla Buchanan | /s/ Layla Buchanan |
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: CONTINUED:

- **ATTORNEY FOR DEFENDANT ARAH ASANTE BAYROOTI:** Kyra E Andrassy kandrassy@raineslaw.com, bclark@raineslaw.com; jfisher@raineslaw.com
- **ATTORNEY FOR PLAINTIFF AND TRUSTEE RICHARD A MARSHACK:** Bradford Barnhardt bbarnhardt@marshackhays.com, bbarnhardt@ecf.courtdrive.com, alinares@ecf.courtdrive.com
- **ATTORNEY FOR CREDITOR AFFIRMA, LLC and CREDITOR OXFORD KNOX, LLC:** Eric Bensamochan eric@eblawfirm.us, G63723@notify.cincompass.com
- **ATTORNEY FOR DEFENDANT LEUCADIA ENTERPRISES, INC:** Michael Jay Berger michael.berger@bankruptcypower.com, yathida.nipha@bankruptcypower.com; michael.berger@ecf.inforuptcy.com
- **ATTORNEY FOR DEFENDANT BMF ADVANCE, LLC and DEFENDANT DIVERSE CAPITAL LLC:** Ethan J Birnberg birnberg@portersimon.com, kdwyer@portersimon.com
- **ATTORNEY FOR TRUSTEE RICHARD A MARSHACK:** Peter W Bowie peter.bowie@dinsmore.com, caron.burke@dinsmore.com
- **ATTORNEY FOR CREDITOR SDCO TUSTIN EXECUTIVE CENTER, INC.:** Ronald K Brown ron@rkbrownlaw.com
- **ATTORNEY FOR PLAINTIFF AND TRUSTEE RICHARD A MARSHACK:** Christopher Celentino christopher.celentino@dinsmore.com, caron.burke@dinsmore.com
- **INTERESTED PARTY COURTESY NEF:** Shawn M Christianson cmcintire@buchalter.com, schristianson@buchalter.com
- **INTERESTED PARTY COURTESY NEF:** Randall Baldwin Clark rbc@randallbclark.com
- **ATTORNEY FOR DEFENDANT ROSA BIANCA LOLI:** Leslie A Cohen leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com; clare@lesliecohenlaw.com
- **ATTORNEY FOR DEFENDANT MORNING LAW GROUP, PC:** Michael W Davis mdavis@dtolaw.com, ygodson@dtolaw.com
- **ATTORNEY FOR TRUSTEE RICHARD A MARSHACK:** Aaron E. DE Leest    adeleest@marshackhays.com, adeleest@marshackhays.com,alinares@ecf.courtdrive.com
- **INTERESTED PARTY COURTESY NEF:** Anthony Paul Diehl anthony@apdlaw.net, Diehl.AnthonyB112492@notify.bestcase.com, ecf@apdlaw.net, 9143954420@filings.docketbird.com
- **OTHER PROFESSIONAL OMNI AGENT SOLUTIONS:** Ashley Dionisio adionisio@omniagnt.com
- **ATTORNEY FOR INTERESTED PARTY NATIONAL ASSOCIATION OF CONSUMER BANKRUPTCY ATTORNEYS and INTERESTED PARTY NATIONAL CONSUMER BANKRUPTCY RIGHTS CENTER:** Jenny L Doling jd@jdl.law, dolingjr92080@notify.bestcase.com; 15994@notices.nextchapterbk.com; jdoling@jubileebk.net
- **ATTORNEY FOR CREDITOR CAROLYN BEECH:** Daniel A Edelman dedelman@edcombs.com, courtecl@edcombs.com
- **ATTORNEY FOR DEFENDANT NEW HORIZON FINANCE LLD:** Howard M Ehrenberg Howard.Ehrenberg@gmlaw.com, hehrenberg@ecf.courtdrive.com; hehrenberg@ecf.inforuptcy.com; Karen.Files@gmlaw.com; denise.walker@gmlaw.com
- **INTERESTED PARTY CREDITOR MEREDITH FAHN:** Meredith Fahn fahn@sbcglobal.net
- **ATTORNEY FOR DEFENDANT COLBALT FUNDING SOLUTIONS, LLC:** Jeremy Faith Jeremy@MarguliesFaithlaw.com, Angela@MarguliesFaithLaw.com; Vicky@MarguliesFaithLaw.com; Amber@MarguliesFaithLaw.com
- **ATTORNEY FOR CREDITOR VALIDATION PARTNERS LLC:** William P Fennell william.fennell@fennelllaw.com, wpf@ecf.courtdrive.com; hala.hammi@fennelllaw.com; naomi.cwalinski@fennelllaw.com; samantha.larimer@fennelllaw.com; office@fennelllaw.com; Brendan.Bargmann@fennelllaw.com
- **ATTORNEY FOR CREDITOR ANTHEM BLUE CROSS OF CALIFORNIA and DEFENDANT JGW SOLUTIONS, LLC:** Alan W Forsley alan.forsley@flpllp.com, awf@fkllawfirm.com, awf@fl-lawyers.net, addy@flpllp.com
- **ATTORNEY FOR DEFENDANT CLEAR VISION FINANCIAL LLC; DEFENDANT PERFECT FINANCIAL, LLC; and POINT BREAK HOLDINGS LLC:** Marc C Forsythe mforsythe@goeforlaw.com, mforsythe@goeforlaw.com; dcyrankowski@goeforlaw.com; Forsythe.MarcR136526@notify.bestcase.com
- **ATTORNEY FOR PLAINTIFF AND TRUSTEE RICHARD A MARSHACK:** Jeremy Freedman jeremy.freedman@dinsmore.com, bonnie.connolly@dinsmore.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                      **F 9013-3.1.PROOF.SERVICE**

- **ATTORNEY FOR CREDITOR HERRET CREDIT:** Eric Gassman erg@gassmanlawgroup.com, gassman.ericb112993@notify.bestcase.com
- **ATTORNEY FOR PLAINTIFF AND TRUSTEE RICHARD A MARSHACK:** Christopher Ghio christopher.ghio@dinsmore.com, angelica.urena@dinsmore.com
- **ATTORNEY FOR CREDITOR AMY GINSBURG; CREDITOR KENTON COBB; and CREDITOR SHANNON BELLFIELD:** Amy Lynn Ginsburg efilings@ginsburglawgroup.com
- **ATTORNEY FOR DEFENDANT STRIP, INC.:** Eric D Goldberg eric.goldberg@dlapiper.com, eric-goldberg-1103@ecf.pacerpro.com
- **ATTORNEY FOR CREDITOR AFFIRMA, LLC; CREDITOR ANAHEIM ARENA MANAGEMENT, LLC; and CREDITOR ANAHEIM DUCKS HOCKEY CLUB, LLC: and CREDITOR OXFORD KNOX:** Jeffrey I Golden jgolden@go2.law, kadele@ecf.courtdrive.com; cbmeeker@gmail.com; lbracken@wgllp.com; dfitzgerald@go2.law; golden.jeffreyi.b117954@notify.bestcase.com
- **ATTORNEY FOR CREDITOR AND DEFENDANT DEBT VALIDATION FUND II, LLC; CREDITOR AND DEFENDANT MC DVI FUND 1, LLC; and CREDITOR AND DEFENDANT MC DVI FUND 2, LLC:** Richard H Golubow rgolubow@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com
- **ATTORNEY FOR CREDITOR UNITED PARTNERSHIPS, LLC:** David M Goodrich dgoodrich@go2.law, kadele@go2.law; dfitzgerald@go2.law; wggllp@ecf.courtdrive.com
- **ATTORNEY FOR PLAINTIFF RICHARD A MARSHACK:** Spencer Keith Gray spencer.gray@dinsmore.com
- **INTERESTED PARTY COURTESY NEF:** Stella A Havkin    stella@havkinandshrago.com, shavkinesq@gmail.com
- **ATTORNEY FOR TRUSTEE RICHARD A MARSHACK:** D Edward Hays ehays@marshackhays.com, ehays@ecf.courtdrive.com; alinares@ecf.courtdrive.com; cmendoza@marshackhays.com; cmendoza@ecf.courtdrive.com
- **ATTORNEY FOR CREDITOR CITY CAPITAL NY:** Alan Craig Hochheiser ahochheiser@mauricewutscher.com, arodriguez@mauricewutscher.com
- **ATTORNEY FOR CREDITOR DEBT VALIDATION FUND II, LLC; CREDITOR MC DVI FUND 1, LLC; and CREDITOR MC DVI FUND 2, LLC:** Garrick A Hollander ghollander@wghlawyers.com, jmartinez@wghlawyers.com; svillegas@wghlawyers.com
- **ATTORNEY FOR CREDITOR SHARP ELECTRONICS CORPORATION:** Brian L Holman b.holman@musickpeeler.com
- **INTERESTED PARTY COURTESY NEF:** Richard L. Hyde rhyde@awglaw.com
- **ATTORNEY FOR INTERESTED PARTY MERCHANTS CREDIT CORPORATION:** Peter L Isola pisola@hinshawlaw.com, rmojica@hinshawlaw.com, iking@hinshawlaw.com
- **ATTORNEY FOR COUNTER-DEFENDANT, CREDITOR, AND PLAINTIFF OHP-CDR, LP; COUNTER-DEFENDANT AND PLAINTIFF PURCHASECO 80, LLC:** Razmig Izakelian razmigizakelian@quinnemanuel.com
- **ATTORNEY FOR PLAINTIFF AND TRUSTEE RICHARD A MARSHACK:** Veneeta Jaswal veneeta.jaswal@dinsmore.com, bonnie.connolly@dinsmore.com
- **ATTORNEY FOR TRUSTEE RICHARD A MARSHACK:** Sara Johnston sara.johnston@dinsmore.com
- **ATTORNEY FOR DEFENDANT FIDELITY NATIONAL INFORMATION SERVICES, INC. dba FIS; DEFENDANT WORLDPAY GROUP; and DEFENDANT WORLDPAY, LLC:** Sweeney Kelly kelly@ksgklaw.com
- **ATTORNEY FOR DEBTOR THE LITIGATION PRACTICE GROUP PC:** Joon M Khang joon@khanglaw.com
- **ATTORNEY FOR INTERESTED PARTY AD HOC CONSUMER CLAIMANTS COMMITTEE:** Ira David Kharasch ikharasch@pszjlaw.com
- **ATTORNEY FOR DEFENDANT GALLANT LAW GROUP:** Meredith King mking@fsl.law, ssanchez@fsl.law; jwilson@fsl.law
- **ATTORNEY FOR COMMITTEE OF UNSECURED CREDITORS:** Nicholas A Koffroth nkoffroth@foxrothschild.com, khoang@foxrothschild.com; ca.dkt@foxrothschild.com
- **ATTORNEY FOR DEFENDANT MARICH BEIN LLC:** David S Kupetz David.Kupetz@lockelord.com, mylene.ruiz@lockelord.com
- **INTERESTED PARTY COURTESY NEF:** Christopher J Langley chris@slclawoffice.com, langleycr75251@notify.bestcase.com; ecf123@casedriver.com; john@slclawoffice.com
- **ATTORNEY FOR TRUSTEE RICHARD A MARSHACK:** Kelli Ann Lee Kelli.lee@dinsmore.com, kristy.allen@dinsmore.com

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

- **ATTORNEY FOR DEFENDANT OPTIMUMBANK HOLDINGS, INC.:** Matthew A Lesnick matt@lesnickprince.com, matt@ecf.inforuptcy.com; jmack@lesnickprince.com
- **ATTORNEY FOR DEFENDANT CONSUMER LEGAL GROUP, PC; DEFENDANT LGS HOLDCO, LLC; and INTERESTED PARTY LIBERTY ACQUISITIONS GROUP INC.:** Daniel A Lev daniel.lev@gmlaw.com, cheryl.caldwell@gmlaw.com; dlev@ecf.courtdrive.com
- **ATTORNEY FOR INTERESTED PARTY REVOLV3, INC.:** Britteny Leyva bleyva@mayerbrown.com, 2396393420@filings.docketbird.com; KAWhite@mayerbrown.com; ladocket@mayerbrown.com
- **ATTORNEY FOR DEFENDANT JGW SOLUTIONS, LLC:** Marc A Lieberman marc.lieberman@flpllp.com, addy@flpllp.com, andrea@flpllp.com
- **ATTORNEY FOR CREDITOR PHILLIP A GREENBLATT, PLLC:** Michael D Lieberman mlieberman@lipsonneilson.com
- **ATTORNEY FOR COUNTER-CLAIMANT, DEFENDANT, PLAINTIFF, AND TRUSTEE RICHARD A MARSHACK:** Yosina M Lissebeck Yosina.Lissebeck@Dinsmore.com, caron.burke@dinsmore.com; Wendy.Yones@Dinsmore.com
- **ATTORNEY FOR CREDITOR FUNDURA CAPITAL GROUP and DEFENDANT BRIDGE FUNDING CAP, LLC:** Mitchell B Ludwig mbl@kpclegal.com, kad@kpclegal.com
- **ATTORNEY FOR DEFENDANT DANIEL S MARCH:** Daniel S March marchlawoffice@gmail.com, marchdr94019@notify.bestcase.com
- **ATTORNEY FOR CREDITOR AND DEFENDANT GREYSON LAW CENTER PC; CREDITOR AND DEFENDANT HAN TRINH; CREDITOR AND DEFENDANT PHUONG (JAYDE) TRINH:** Kathleen P March on behalf of Creditor Greyson Law Center PC kmarch@bkylawfirm.com, kmarch3@sbcglobal.net, kmarch@sbcglobal.net
- **ATTORNEY FOR CREDITOR DAVID ORR:** Mark J Markus bklawr@bklaw.com, markjmarkus@gmail.com; markus.markj.r112926@notify.bestcase.com
- **TRUSTEE RICHARD A MARSHACK:** Richard A Marshack (TR) pkraus@marshackhays.com, ecf.alert+Marshack@titlexi.com
- **ATTORNEY FOR PLAINTIFF AND TRUSTEE RICHARD A MARSHACK:** Laila Masud lmasud@marshackhays.com, lmasud@ecf.courtdrive.com; lbuchanan@marshackhays.com; alinares@ecf.courtdrive.com
- **ATTORNEY FOR DEFENDANT CLEARCUBE LLC:** Sarah S. Mattingly sarah.mattingly@dinsmore.com
- **ATTORNEY FOR CREDITOR TN DEPT OF REVENUE:** William McCormick Bill.McCormick@ag.tn.gov
- **ATTORNEY FOR US TRUSTEE:** Kenneth Misken Kenneth.M.Misken@usdoj.gov
- **INTERESTED PARTY COURTESY NEF:** Byron Z Moldo bmoldo@ecjlaw.com, aantonio@ecjlaw.com, dperez@ecjlaw.com
- **ATTORNEY FOR CREDITOR ADP, INC:** Glenn D. Moses gmoses@venable.com, cascavone@venable.com; ipmalcolm@venable.com; jadelgado@venable.com
- **ATTORNEY FOR PLAINTIFF AND TRUSTEE RICHARD A MARSHACK:** Jamie D Mottola Jamie.Mottola@dinsmore.com, jhanawalt@ecf.inforuptcy.com
- **INTERESTED PARTY COURTESY NEF:** Alan I Nahmias anahmias@mbn.law, jdale@mbn.law
- **INTERESTED PARTY COURTESY NEF:** Victoria Newmark vnewmark@pszjlaw.com
- **ATTORNEY FOR PLAINTIFF AND TRUSTEE RICHARD A MARSHACK:** Jacob Newsum-Bothamley jacob.bothamley@dinsmore.com, bonnie.connolly@dinsmore.com
- **ATTORNEY FOR US TRUSTEE:** Queenie K Ng queenie.k.ng@usdoj.gov
- **CREDITOR ISRAEL OROZCO:** Israel Orozco israel@iolawcorp.com
- **ATTORNEY FOR COMMITTEE OF UNSECURED CREDITORS:** Keith C Owens kowens@foxrothschild.com, khoang@foxrothschild.com
- **ATTORNEY FOR DEFENDANT OPTIMUMBANK HOLDINGS, INC.:** Lisa Patel lpatel@lesnickprince.com, jmack@lesnickprince.com; jnavarro@lesnickprince.com
- **ATTORNEY FOR CREDITOR WELLS MARBLE AND HURST, PLLC:** Michael R Pinkston rpinkston@seyfarth.com, jmcdermott@seyfarth.com, sfocalendar@seyfarth.com, 5314522420@filings.docketbird.com, bankruptcydocket@seyfarth.com
- **ATTORNEY FOR DEFENDANT SCOTT JAMES EADIE:** Douglas A Plazak dplazak@rhlaw.com

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                **F 9013-3.1.PROOF.SERVICE**

- **ATTORNEY FOR COUNTER-CLAIMANT, DEFENDANT, PLAINTIFF, AND TRUSTEE RICHARD A MARSHACK:** Tyler Powell tyler.powell@dinsmore.com, jennifer.pitcock@dinsmore.com; caitlin.brock@dinsmore.com
- **ATTORNEY FOR DEFENDANT PECC CORP; DEFENDANT TOUZI CAPITAL, LLC; and DEFENDANT ENG TAKING:** Daniel H Reiss dhr@lnbyg.com, dhr@ecf.inforuptcy.com
- **ATTORNEY FOR DEFENDANT CONSUMER LEGAL GROUP, PC and DEFENDANT LGS HOLDCO, LLC:** Ronald N Richards ron@ronaldrichards.com, 7206828420@filings.docketbird.com
- **ATTORNEY FOR PLAINTIFF AND TRUSTEE RICHARD A MARSHACK:** Vanessa Rodriguez vanessa.rodriguez@dinsmore.com, angelica.urena@dinsmore.com
- **ATTORNEY FOR CREDITOR WELLS MARBLE AND HURST, PLLC:** Kevin Alan Rogers krogers@wellsmar.com
- **ATTORNEY FOR CREDITOR MARI AGAPE:** Gregory M Salvato gsalvato@salvatoboufadel.com, calendar@salvatolawoffices.com; jboufadel@salvatoboufadel.com; gsalvato@ecf.inforuptcy.com
- **ATTORNEY FOR CREDITOR AZZURE CAPITAL LLC and CREDITOR HI BAR CAPITAL LLC:** Olivia Scott olivia.scott@hklaw.com
- **ATTORNEY FOR PLAINTIFF AND TRUSTEE RICHARD A MARSHACK:** Jonathan Serrano jonathan.serrano@dinsmore.com
- **ATTORNEY FOR CREDITOR RANDALL BALDWIN CLARK ATTORNEY AT LAW PLLC:** Maureen J Shanahan Mstotaro@aol.com
- **ATTORNEY FOR CREDITOR UNITED PARTNERSHIPS, LLC:** Paul R Shankman PShankman@fortislaw.com, info@fortislaw.com
- **ATTORNEY FOR INTERESTED PARTY MORNING LAW GROUP, PC:** Zev Shechtman Zev.Shechtman@saul.com, zshechtman@ecf.inforuptcy.com; easter.santamaria@saul.com
- **ATTORNEY FOR PLAINTIFF ALTERYX, INC.:** Jeffrey M Singletary jsingletary@swlaw.com, rmckay@swlaw.com
- **ATTORNEY FOR CREDITOR PIONEER FUNDING GROUP, LLC:** Adam D Stein-Sapir info@pfllc.com
- **ATTORNEY FOR DEFENDANT BANKUNITED, NA:** Howard Steinberg steinbergh@gtlaw.com, pearsallt@gtlaw.com; NEF-BK@gtlaw.com; howard-steinberg-6096@ecf.pacerpro.com
- **ATTORNEY FOR PLAINTIFF RICHARD MARSHACK:** John H. Stephens john.stephens@dinsmore.com, lizbeth.alonso@dinsmore.com
- **ATTORNEY FOR CREDITOR AND PLAINTIFF ALTERYX, INC.:** Andrew Still astill@swlaw.com, kcollins@swlaw.com
- **ATTORNEY FOR PLAINTIFF RICHARD A MARSHACK:** Matthew J Stockl matthew.stockl@dinsmore.com, katrice.ortiz@dinsmore.com
- **ATTORNEY FOR CREDITOR RANDALL BALDWIN CLARK ATTORNEY AT LAW PLLC:** Michael R Totaro Ocbkatty@aol.com
- **US TRUSTEE:** United States Trustee (SA) ustpregion16.sa.ecf@usdoj.gov
- **ATTORNEY FOR WITNESS BRADFORD LEE:** William J Wall wwall@wall-law.com
- **ATTORNEY FOR CREDITOR AND DEFENDANT AZZURE CALPITAL LLC and CREDITOR HI BAR CAPITAL LLC:** Sharon Z. Weiss sharon.weiss@bclplaw.com, raul.morales@bclplaw.com, REC_KM_ECF_SMO@bclplaw.com
- **ATTORNEY FOR CREDITOR DEBT RELIEF GROUP, LLC:** Johnny White JWhite@wrslawyers.com, jlee@wrslawyers.com
- **OTHER PROFESSIONAL OMNI AGENT SOLUTIONS:** Reina Zepeda on behalf of Other Professional Omni Agent Solutions rzepeda@omniagnt.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                   **F 9013-3.1.PROOF.SERVICE**