1
2
3
4
5

Kathleen P. March, Esq., (CA SBN 80366)
**THE BANKRUPTCY LAW FIRM, PC**
10524 W. Pico Blvd, Suite 212, LA, CA 90064
Phone: 310-559-9224; Fax: 310-559-9133
Email: kmarch@BKYLAWFIRM.com
*Attorneys for Greyson Law Center, PC*
*Han Trinh & Jayde Trinh on this Objection*

6
7

### UNITED STATES BANKRUPTCY COURT

### CENTRAL DISTRICT OF CALIFORNIA—SANTA ANA DIV.

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

| In re | Bankruptcy Case No. 8:23-bk-10571-SC |
|---|---|
| THE LITIGATION PRACTICE GROUP, P.C., | Chapter 11 |
| Debtor. | **OBJECTION** OF GREYSON LAW CENTER PC, HAN TRINH & JAYDE TRINH, TO COURT GRANTING ANY OF THE FEE APPLICATIONS FILED ON OR ABOUT 11/8/24, ITEMIZED HEREIN, ON A **FINAL BASIS**--INCLUDING OBJECTING TO COURT GRANTING ANY FEE APPLICATIONS, ON A **FINAL BASIS**, WHILE GREYSON/HAN/JAYDE APPEALS ARE ONGOING—INCLUDING GREYSON/HAN/JAYDE OBJECT TO THE FEE APPLICATIONS OF TRUSTEE MARSHACK, MARSHACK HAYS WOOD LLP, DINSMORE & SHOHL LLP, CREDITORS' COMMITTEE COUNSEL,  TRUSTEE'S ACCOUNTANT, CREDITOR COMMITTEE'S ACCOUNTANT; **UNLESS** MONEY IN THE FULL AMOUNT OF THE GREYSON/HAN/JAYDE ADMINISTRTIVE EXPENSE MOTIONS IS PUT IN A BLOCKED ACCOUNT, SO THAT MONEY WILL BE AVAILABLE TO PAY WHATEVER AMOUNTS ARE ALLOWED ON GREYSON/HAN/JAYDE'S APPEALS; KPMARCH DECL, ATTACHING PORTION OF PLAN CONF. HRG. TRANSCRIPT |
| | Hearing on All Final Fee Applications is set for: 1/14/25 at 10am |

28

OBJECTION OF GREYSON LAW CENTER PC, HAN TRINH &  JAYDE TRINH, TO COURT GRANTING ANY OF THE FEE APPLICATIONS FILED ON OR ABOUT 11/8/24, ON A **FINAL BASIS**, AS ITEMIZED IN THIS OBJECTION; UNLESS MONEY IN THE FULL AMOUNT OF THE GREYSON/HAN/JAYDE ADMINISTRTIVE EXPENSE MOTIONS IS PUT IN A BLOCKED ACCOUNT, SO THAT MONEY WILL BE AVAILABLE TO PAY WHATEVER AMOUNTS ARE ALLOWED ON APPEALS; KMARCH DECL W/EX. 1

1

2

3

Place:  By zoom.gov, or in person at Ctrm 5C of Bankruptcy Judge
Scott Clarkson, 411 West Fourth Street, Santa Ana, CA 92701-4593
NOTE:  Zoom.gov accessibility information will be provided by the
Court in its tentative ruling posted online prior to 1/14/25 hearing

4

5

6

7

8

9

10

11

12

13

14

Greyson Law Center PC ("Greyson"), Han Trinh ("Han") and Phuong Jayde

Trinh ("Jayde") make their herein OBJECTION to Bankruptcy Court granting any fee

applications in the Litigation Practice Group PC ("LPG") bankruptcy case,  of any of

the fee applicants listed in the Chart on p.3-4 hereof, **on a FINAL basis**, while

Greyson/Han/Jayde's appeals are ongoing, at any level, appealing Bankruptcy Court's

denials of Greyson/Han/Jayde's Motions for allowance and payment of administrative

expenses.

15

16

17

18

19

The confirmed Trustee/Creditors' Committee Plan requires allowed 11 USC

§503(b)(1)(A) expenses to be paid in full, within 10 days after such administrative

expenses are allowed. (Kathleen March Decl to this Objection, relevant page of Plan

is attached as **Exhibit A** to Decl. )

20

21

22

23

24

25

26

27

At the plan confirmation hearing held 8/29/24, Trustee counsel Hays told this

Court, repeatedly, in response to this Court's questions, that Greyson/Han/Jayde

would be entitled to recover/get back fees paid to Trustee Marshack, Trustee's firm

Marshack Hays Wood LLP, and Trustee's special counsel Dinsmore & Shohl LLP,

and all other professionals,  if recovering fees paid to all those fee applicants was

necessary, to have enough money to pay whatever amounts Greyson/Han/Jayde are

28

**OBJECTION** OF GREYSON LAW CENTER PC, HAN TRINH &  JAYDE TRINH, TO COURT GRANTING
ANY OF THE FEE APPLICATIONS FILED ON OR ABOUT 11/8/24, ON A FINAL BASIS, AS ITEMIZED IN
THIS OBJECTION; UNLESS MONEY IN THE FULL AMOUNT OF THE GREYSON/HAN/JAYDE
ADMINISTRTIVE EXPENSE MOTIONS IS PUT IN A BLOCKED ACCOUNT, SO THAT MONEY WILL BE
AVAILABLE TO PAY WHATEVER AMOUNTS ARE ALLOWED ON APPEALS; KMARCH DECL W/EX. **2**

1
2
3
4
5

finally granted,  on their appeals of this Court's denial of Greyson's, Han's and

Jayde's administrative expense Motions.  (KPMarch Decl hereto attaches the

officially transcribed transcript of the 8/29/24 plan confirmation hearing, as **Exhibit B**

to March Decl).

6
7
8
9
10
11
12
13

Disgorging fees paid to fee applicants is discussed at p.30:17-25, p.31:1-20,

p.102:14 -104:19, p.107:16-22, and pp.122:22 – 123:13, of Transcript.  Both Trustee's

attorney Hays, and the Court, stated that fees paid to professionals could and would be

subject to being disgorged, if disgorgment was necessary to get money to pay the 11

USC 503(b)(1)(A) administrative expense motions of Greyson, Han and/or Jayde, if

their administrative expense motions are granted on appeal.

14
15
16
17
18
19

Per the confirmed plan, 11 USC 503(b)(1)(A), allowed administrative expenses

are required to be paid 100% within 60 days of when allowed (within 10 days for

wage claims of Han and Jayde Trinh).   **Exhibit A** to KPMarch Decl hereto, which is

relevant plan provisions, and the page of Order confirming plan.

20
21
22
23

 At present, those denials are on appeal to US District Court, CD CA.  But those

denials  could eventually be appealed, by one side or another, to a Circuit or higher

Court. (March Decl hereto)

24
25
26
27

Interim fees are governed by 11 USC §331.  Final fees are governed by 11 USC

§330.  Fees allowed on an interim basis are always subject to recapture, if the

bankruptcy estate does not have money to pay allowed priority claims, including

28

**OBJECTION** OF GREYSON LAW CENTER PC, HAN TRINH &  JAYDE TRINH, TO COURT GRANTING
ANY OF THE FEE APPLICATIONS FILED ON OR ABOUT 11/8/24, ON A <u>FINAL BASIS</u>, AS ITEMIZED IN
THIS OBJECTION; UNLESS MONEY IN THE FULL AMOUNT OF THE GREYSON/HAN/JAYDE
ADMINISTRTIVE EXPENSE MOTIONS IS PUT IN A BLOCKED ACCOUNT, SO THAT MONEY WILL BE
AVAILABLE TO PAY WHATEVER AMOUNTS ARE ALLOWED ON APPEALS; KMARCH DECL W/EX. 3

1    amounts sought/granted by 11 USC §503(b)(1)(A) administrative expense motions. 11

2    USC §330(a)(5); *In re Taxman Clothing Co., Inc.*, 134 B.R. 286, 291 (N.D. Ill. 1991):

3

4       "In the fee petition scheme of things, " '[i]nterim allowances are always subject
        to the court's re-examination and adjustment during the course of the case....' "
5       *In re Callister*, 673 F.2d 305, 307 (10th Cir.1982) (quoting 2 Collier on
        Bankruptcy ¶ 331.03 (15th ed. 1981)). In short, "[i]nterim awards ... are in no
6       respect final adjudications on the question of compensation," id., and, because
        they are "subject to review by a bankruptcy judge at any time during the
7       proceeding," **may be ordered to be returned in full or in part**. *In re Wilson
8       Foods Corp.,* 36 B.R. 317, 322 (Bankr.W.D.Okla.1984). [bold/underline added
        for emphasis]
9

10   Accord: *Specker Motor Sales Co. v. Eisen*, 300 B.R. 687, 689–90 (W.D. Mich. 2003),

11

12   *aff'd*, 393 F.3d 659 (6th Cir. 2004); California Practice Guide: Bankruptcy (The Rutter

13   Group 2023) ¶4:803.

14        In contrast, **fees allowed on a final basis, pursuant to 11 USC §330,  are**

15
     **NOT subject to recapture**, even if the bankruptcy estate does not have money to pay
16
17   allowed priority claims.  *In re St. Joseph Cleaners, Inc.*, 346 B.R. 430, 438–39

18   (Bankr. W.D. Mich. 2006) ("Consequently, the right to recover fees under Section
19
20   330(a)(5) **ceases** once the final Section 330 award is made.");  *Specker Motor Sales

21   *Co. v. Eisen,* 300 B.R. 687, 690 (W.D. Mich. 2003) ("Were these [interim] payments

22   final, §§ 330 and 331 would be given no effect as the court would be denied the
23
24   opportunity to correct excessive compensation ...").

25        Consequently, it would be **reversible error** for this Court to allow any of the

26   Final Fee Applications filed on or about 11/8/24—and (at present) set for hearing on
27

28   _____
     **OBJECTION** OF GREYSON LAW CENTER PC, HAN TRINH &  JAYDE TRINH, TO COURT GRANTING
     ANY OF THE FEE APPLICATIONS FILED ON OR ABOUT 11/8/24, ON A **FINAL BASIS**, AS ITEMIZED IN
     THIS OBJECTION; UNLESS MONEY IN THE FULL AMOUNT OF THE GREYSON/HAN/JAYDE
     ADMINISTRTIVE EXPENSE MOTIONS IS PUT IN A BLOCKED ACCOUNT, SO THAT MONEY WILL BE
     AVAILABLE TO PAY WHATEVER AMOUNTS ARE ALLOWED ON APPEALS; KMARCH DECL W/EX.  4

1  1/14/25 at 10am—on a final basis, so long as Greyson/Han/Jayde have appeals

2  ongoing, at any level.  It is only by keeping the allowed fees allowed **on an interim**

3
4  **basis**, that fees can be recovered from (aka required to be disgorged by) interim fee

5  recipients, as necessary to pay Greyson/Han/Jayde 100% of whatever amounts they

6  are finally allowed, on appeal(s).

7
8  The following is a chart listing all of the **interim fee applications** previously

9  filed and listing the present **final fee applications**.  Each final fee application asks the

10  Court to allow, on a final basis, all fees/costs previously allowed on an interim basis,

11
12  plus asks for additional fees/costs to be allowed on a final basis:

| FINAL FEE APPLICATIONS—requesting Interim Fees & more fees, all be Allowed Final | | | | |
|---|---|---|---|---|
| Dkt.#/ Date Final App filed | Party/ Role | Fees and expenses **requested** by Interim Fee Application | Fees and expenses **allowed** on an interim basis by Order [dkt.1778] on interim fee applications | **Additional** Fees and expenses requested by Final Fee Application |
| 1898 11/8/24 | Richard Marshack Chapter 11 Trustee | $500,547.33 in fees; $1,458.15 in expenses | $452,700.34 in fees; $1,458.15 in expenses | $504,579.06 in fees; $250.45 in expenses |
| 1896 11/8/24 | Marshack Hays Wood LLP Trustee's general counsel | $1,332,851.00 in fees; $46,897.69 in expenses | $1,332,352.00 in fees; $46,897.69 in expenses | $340,416.00 in fees; $2,224.32 in expenses |
| 1900 11/8/24 | Dinsmore & Shohl LLP Trustee's special counsel | $4,745,825.25 in fees; $57,379.11 in expenses | $4,745,825.25 in fees; $57,379.11 in expenses | $1,202,050.00 in fees; $5,812.54 in expenses |

27
28
**OBJECTION** OF GREYSON LAW CENTER PC, HAN TRINH &  JAYDE TRINH, TO COURT GRANTING
ANY OF THE FEE APPLICATIONS FILED ON OR ABOUT 11/8/24, ON A **FINAL BASIS**, AS ITEMIZED IN
THIS OBJECTION; UNLESS MONEY IN THE FULL AMOUNT OF THE GREYSON/HAN/JAYDE
ADMINISTRTIVE EXPENSE MOTIONS IS PUT IN A BLOCKED ACCOUNT, SO THAT MONEY WILL BE
AVAILABLE TO PAY WHATEVER AMOUNTS ARE ALLOWED ON APPEALS; KMARCH DECL W/EX. 5

| | | | | |
|---|---|---|---|---|
| 1897<br>11/8/24 | Fox Rothschild LLP<br>Attorneys for Creditors Committee | $1,050,894.00 in fees;<br>$19,823.67 in expenses | $1,044,173.50 in fees;<br>$17,421.62 in expenses | $1,056,669.00 in fees;<br>$19,939.22 in expenses |
| 1899<br>11/8/24 | Force Ten Partners, LLC<br>Financial advisors for Creditors Committee | $187,620.00 in fees;<br>$0.00 in expenses | $187,620.00 in fees;<br>$0.00 in expenses | $250,724.00 in fees;<br>$0.00 in expenses |
| 1885<br>11/6/24 | Grobstein Teeple LLP<br>Accountants | $307,466.50 in fees;<br>$51.03 in expenses | $261,346.52 in fees;<br>$51.03 in expenses | $77,390.00 in fees;<br>$46.03 in expenses |
| 1901<br>11/8/24 | Nancy Rapoport<br>Ethics compliance monitor | FIRST INTERIM:<br>$37,533.75 in fees;<br>$2484.20 in expenses<br>[dkt.921]<br><br>SECOND INTERIM:<br>$71,958.75 in fees;<br>$2,276.19 in expenses<br>[dkt.1613] | FIRST INTERIM:<br>$37,533.75 in fees;<br>$2,584.20 in expenses<br>[dkt.973]<br><br>SECOND INTERIM:<br>$71,958.75 in fees;<br>$2,276.19 in expenses<br>[dkt.1778] | $17,678.18 in fees;<br>$575.00 in expenses |
| N/A | Khang & Khang LLP<br>Attorney for debtor | $82,500.00 in fees;<br>$1,857.30 in expenses | $0.00 in fees;<br>$1,857.30 in expenses<br>[dkt.1847] | N/A – only interim fee application filed |
| N/A | Robert F. Bicher and Associates<br>Field agent and forensic analyst | $70,478.00 in fees;<br>$1,259.27 in expenses | $70,180.00 in fees;<br>$1,259.27 in expenses | N/A – only interim fee application filed |

**OBJECTION OF GREYSON LAW CENTER PC, HAN TRINH & JAYDE TRINH, TO COURT GRANTING ANY OF THE FEE APPLICATIONS FILED ON OR ABOUT 11/8/24, ON A FINAL BASIS, AS ITEMIZED IN THIS OBJECTION; UNLESS MONEY IN THE FULL AMOUNT OF THE GREYSON/HAN/JAYDE ADMINISTRTIVE EXPENSE MOTIONS IS PUT IN A BLOCKED ACCOUNT, SO THAT MONEY WILL BE AVAILABLE TO PAY WHATEVER AMOUNTS ARE ALLOWED ON APPEALS; KMARCH DECL W/EX. 6**

| 1959<br>11/27/24<br>(late) | Omni Agent<br>Solutions, Inc.<br>Noticing agent | $826,644.60<br>in fees;<br>$72,399.12<br>in expenses | $826,644.60<br>in fees;<br>$72,399.12<br>in expenses | $884,506.05<br>in fees;<br>$106,286.63<br>in expenses |
|---|---|---|---|---|
| | <u>Total of amounts<br>of fees and costs<br>sought:</u> | $9,214,319.18<br>in interim<br>fees;<br>$205,885.73<br>in interim<br>expenses<br>**requested** | $9,030,334.71<br>in interim fees;<br>$203,583.68<br>in interim expenses<br>**granted** | $4,334,012.29<br>in final fees;<br>$135,134.19<br>in final expenses<br>(in addition to<br>interim awards)<br>**requested** |

<u>Total of all interim fees and expenses allowed, plus all final fees and expenses
requested, if requested final fees are allowed in full</u>: **$13,703,064.87**

   The only way that this Court could properly grant any of these Fee

Applications, on a **<u>final basis</u>**, before Greyson/Han/Jayde's appeals, at all levels, are

resolved, is if, as a **<u>condition</u>** of allowing any fee applications on a final basis, and

**<u>before</u>** any previously granted intermin fees are allowed on a final basis, and **<u>before</u>**

any additionally sought final fees are granted,  this Court orders Trustee to escrow, in

a blocked account, money sufficient to pay Greyson's, Han's and Jayde's

administrative expense motions, so money will be available to pay Greyson's, Han's

and Jayde's administrative expense Motions whatever amounts are ultimately allowed

on Greyson/Han/Jaydes' appeals.  Greyson's administrative expense claim is for

$5,434,633.  Han's administrative expense claim is for $150,714.  Jayde's

administrative expense claim is for $114,825.  Adding those amounts together, this

<u>OBJECTION</u> OF GREYSON LAW CENTER PC, HAN TRINH &  JAYDE TRINH, TO COURT GRANTING
ANY OF THE FEE APPLICATIONS FILED ON OR ABOUT 11/8/24, ON A <u>FINAL BASIS</u>, AS ITEMIZED IN
THIS OBJECTION; UNLESS MONEY IN THE FULL AMOUNT OF THE GREYSON/HAN/JAYDE
ADMINISTRTIVE EXPENSE MOTIONS IS PUT IN A BLOCKED ACCOUNT, SO THAT MONEY WILL BE
AVAILABLE TO PAY WHATEVER AMOUNTS ARE ALLOWED ON APPEALS; KMARCH DECL W/EX.  7

1    Court would be required to order **$5,700,172** put in a separate escrow account, with

2    signatories being Trustee Marshack,  and Greyson/Han/Jayde counsel Kathleen March

3
4    of  The Bankruptcy Law Firm, PC, with funds only to be released from said account

5    upon signatures of both Marshack and March, or upon further order of this Court, or

6    of an appellate Court.

7
8    Dated:  December 4,  2024          THE BANKRUPTCY LAW FIRM, PC
                                        ____/s/ Kathleen P. March_____
9                                       By Kathleen P. March, Esq., counsel for
                                        Greyson Law Center PC, Han Trinh & Jayde Trinh
10                                      on this Objection

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
        **OBJECTION** OF GREYSON LAW CENTER PC, HAN TRINH &  JAYDE TRINH, TO COURT GRANTING
        ANY OF THE FEE APPLICATIONS FILED ON OR ABOUT 11/8/24, ON A **FINAL BASIS,** AS ITEMIZED IN
        THIS OBJECTION; UNLESS MONEY IN THE FULL AMOUNT OF THE GREYSON/HAN/JAYDE
        ADMINISTRTIVE EXPENSE MOTIONS IS PUT IN A BLOCKED ACCOUNT, SO THAT MONEY WILL BE
        AVAILABLE TO PAY WHATEVER AMOUNTS ARE ALLOWED ON APPEALS; KMARCH DECL W/EX. 8

## DECLARATION OF KATHLEEN P. MARCH

I, KATHLEEN P. MARCH, declare:

1.      I am an attorney in good standing, admitted to practice law in California

and New York.  I own and run The Bankruptcy Law Firm, PC, counsel to

administrative expense claimants Greyson Law Center PC, Han Trinh and Jayde

Trinh.  For each of these 3 clients, my firm, on 11/17/23, filed timely 11 USC

§503(b)(1)(A) Motions, which this Court denied by 3 orders, each entered 8/27/24.

The 3 orders are at present on appeal, in US District Court.  My firm is counsel of

record on those appeals.

2.      The confirmed Trustee/Creditors' Committee Plan requires allowed 11

USC §503(b)(1)(A) expenses to be paid in full, within 60 days after such

administrative expenses are allowed (10 days after allowance for wage claims).  The

relevant Plan pages, and relevant page of confirmation Order, are attached as **Exhibit**

**A** to this Declaration.

3.      Disgorging fees paid to fee applicants is discussed at p.30:17-25, p.31:1-

20, p.102:14 -104:19, p.107:16-22, and pp.122:22 – 123:13, of confirmation hearing

transcript (Exhibit B hereto).  Both Trustee's attorney Hays, and the Court, stated

repeatedly that fees paid to professionals would be subject to being disgorged, if

disgorment was necessary to get money to pay the 11 USC 503(b)(1)(A)

administrative expense motions of Greyson, Han and/or Jayde, if their administrative

---

**OBJECTION** OF GREYSON LAW CENTER PC, HAN TRINH &  JAYDE TRINH, TO COURT GRANTING
ANY OF THE FEE APPLICATIONS FILED ON OR ABOUT 11/8/24, ON A **FINAL BASIS**, AS ITEMIZED IN
THIS OBJECTION; UNLESS MONEY IN THE FULL AMOUNT OF THE GREYSON/HAN/JAYDE
ADMINISTRTIVE EXPENSE MOTIONS IS PUT IN A BLOCKED ACCOUNT, SO THAT MONEY WILL BE
AVAILABLE TO PAY WHATEVER AMOUNTS ARE ALLOWED ON APPEALS; KMARCH DECL W/EX. 9

1
2
3
4
5
6
7
8
9
10
11
12

expense motions are granted on appeal, and if  recovering fees paid to fee applicants

was necessary, to have enough money to pay whatever amounts Greyson/Han/Jayde

are finally granted,  on their appeals of this Court's denial of Greyson's, Han's and

Jayde's administrative expense Motions.  In that transcript, at p.30:17-25, p.31:1-20,

p.102:14 -104:19, p.107:16, and pp.122:22 – 123:13, this Court repeatedly asked

Trustee counsel whether fees could be recaptured to pay Greyson/Han/Jayde whatever

they were ultimately allowed on appeal, and Trustee counsel repeatedly told this Court

that fees could be recaptured if necessary to pay whatever Greyson/Han/Jayde were

ultimately allowed on appeal, and the Court said that was correct.

13
14
15
16

    4.    At present, those 3 denial Orders are on appeal to US District Court, CD

CA.  My law firm is counsel of record.  But those denials could eventually be

appealed, by one side or another, to a Circuit Court, or higher.

17
18
19
20
21
22
23
24

    5.    Interim fees are governed by 11 USC §331.  Final fees are governed by

11 USC §330.  Fees allowed on an interim basis are always subject to recapture, if the

bankruptcy estate does not have money to pay allowed priority claims, including

amounts sought/granted by 11 USC §503(b)(1)(A) administrative expense motions. In

contrast, **fees allowed on a final basis are NOT subject to recapture**, if the

bankruptcy estate does not have money to pay allowed priority claims.

25
26
27

    6.    Consequently, it would be **reversible error** for this Court to allow any of

the Final Fee Applications filed on or about 11/8/24—and set for hearing on 1/14/25

28

**OBJECTION** OF GREYSON LAW CENTER PC, HAN TRINH &  JAYDE TRINH, TO COURT GRANTING
ANY OF THE FEE APPLICATIONS FILED ON OR ABOUT 11/8/24, ON A <u>FINAL BASIS</u>, AS ITEMIZED IN
THIS OBJECTION; UNLESS MONEY IN THE FULL AMOUNT OF THE GREYSON/HAN/JAYDE
ADMINISTRTIVE EXPENSE MOTIONS IS PUT IN A BLOCKED ACCOUNT, SO THAT MONEY WILL BE
AVAILABLE TO PAY WHATEVER AMOUNTS ARE ALLOWED ON APPEALS; KMARCH DECL W/EX.  10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

at 10am, at present—on a final basis, so long as Greyson/Han/Jayde have appeals

ongoing, at any level.  It is only by keeping the allowed fees allowed, on **an interim**

**basis**, that fees can be recovered from interim fee recipients, as necessary to pay

Greyson/Han/Jayde whatever amounts they are finally allowed, on appeal.

   7.    The only way that this Court could properly grant any of these Fee

Applications, on a **final basis**, before Greyson/Han/Jayde's appeals, at all levels, are

resolved, is if, as a **condition** of allowing any fee applications on a final basis, and

**before** any previously granted interim fees are allowed on a final basis, and before

any additionally sought final fees are granted,  this Court orders Trustee to escrow, in

a blocked account, money sufficient to pay Greyson's, Han's and Jayde's

administrative expense motions, so money will be available to pay Greyson's, Han's

and Jayde's administrative expense Motions whatever amounts are ultimately allowed

on Greyson/Han/Jaydes' appeals.

   8.    Greyson's administrative expense claim is for $5,434,633.  Han's

administrative expense claim is for $150,714.  Jayde's administrative expense claim is

for $114,825.  Adding those amounts together, this Court would be required to order

**$5,700,172** put in a separate escrow account, with signatories being Trustee

Marshack,  and Greyson/Han/Jayde counsel Kathleen March, with funds only to be

released from said account upon signatures of both Marshack and March, or upon

//

**OBJECTION** OF GREYSON LAW CENTER PC, HAN TRINH &  JAYDE TRINH, TO COURT GRANTING
ANY OF THE FEE APPLICATIONS FILED ON OR ABOUT 11/8/24, ON A **FINAL BASIS,** AS ITEMIZED IN
THIS OBJECTION; UNLESS MONEY IN THE FULL AMOUNT OF THE GREYSON/HAN/JAYDE
ADMINISTRTIVE EXPENSE MOTIONS IS PUT IN A BLOCKED ACCOUNT, SO THAT MONEY WILL BE
AVAILABLE TO PAY WHATEVER AMOUNTS ARE ALLOWED ON APPEALS; KMARCH DECL W/EX. 11

1

2    further order of this Court, or of an appellate Court.

3
     I declare under penalty of perjury that the foregoing is true and correct, and
4

5    that this Declaration is executed at Los Angeles, California on December 4, 2024.

6

7
     ___/s/ Kathleen P. March_____
8    KATHLEEN P. MARCH

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

FILED & ENTERED

SEP 09 2024

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY bolte        DEPUTY CLERK

1  D. EDWARD HAYS (SBN 162507)
   ehays@marshackhays.com
2  LAILA MASUD (SBN 311731)
   lmasud@marshackhays.com
3  **MARSHACK HAYS WOOD LLP**
   870 Roosevelt
4  Irvine, California 92620
   Telephone: (949) 333-7777
5  Facsimile: (949) 333-7778

6  General Counsel for Chapter 11 Trustee,
   RICHARD A. MARSHACK
7
   Keith C. Owens (SBN 184841)
8  Nicholas A. Koffroth (SBN 287854)
   **FOX ROTHSCHILD LLP**
9  10250 Constellation Blvd., Suite 900
   Los Angeles CA 90067
10 Telephone: (310) 598-4150
   Facsimile: (310) 556-9828
11 kowens@foxrothschild.com
   nkoffroth@foxrothschild.com
12
   Counsel for Official Committee of Unsecured Creditors
13
14 **UNITED STATES BANKRUPTCY COURT**
   **CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION**
15

16 In re,                                        Case No. 8:23-bk-10571-SC

17 THE LITIGATION PRACTICE GROUP              Chapter 11 Case
   P.C.,
18                                             **ORDER CONFIRMING MODIFIED**
      Debtor.                                  **FIRST AMENDED JOINT CHAPTER 11**
19                                             **PLAN OF LIQUIDATION (DATED JUNE**
                                               **14, 2024)**
20
                                               Hearing Date and Time:
21                                             Date:  August 29, 2024
                                               Time:  10:00 A.M.
22                                             Ctrm:  5C and ViaZoom
                                               Place: 411 West Fourth Street
23                                                      Santa Ana, CA 92701
24
25
26
27
28

                                                                                    14

    (a)    The Holder of a late-filed General Unsecured Claim not filed by the applicable Bar Date that subsequently is adjudicated by Final Order to constitute an Allowed General Unsecured Claim shall be entitled to such treatment (including, without limitation the right to Trust Beneficial Interests) as accorded to other Holders of Allowed General Unsecured Claims under the terms of the Plan; and

    (b)    The treatment of Disputed Administrative Claims that are subsequently Allowed by Final Order following the Effective Date shall be as set forth in Section III.B.1 of the Plan.

36.    **OHP/PurchaseCo Settlement.**  Notwithstanding anything to the contrary in this Order, the claim(s) of OHP-CDR LP and interest(s) of PurchaseCo 80, LLC shall be treated as set forth in the agreement between the chapter 11 trustee, OHP-CDR, LP, and PurchaseCo 80, LLC, which was approved by the Court on August 28, 2024 [Docket No. 1563] (the "OHP/PurchaseCo Settlement" and the "OHP/PurchaseCo Settlement Order").  For the avoidance of doubt, the OHP/PurchaseCo Settlement Order is expressly incorporated into this Order.

37.    **Postconfirmation Status Conference.**  The Court shall hold a postconfirmation status conference on November 6, 2024, at 1:30 p.m. (the "Postconfirmation Status Conference"). The Liquidating Trustee shall (and any other party in interest may) file a postconfirmation status report not later than 14 days prior to the Postconfirmation Status Conference.

38.    **Order Effective Immediately**. Notwithstanding Bankruptcy Rules 3020(e) or 7062 or otherwise, the stay provided for under Bankruptcy Rule 3020(e) shall be waived and this Order shall be effective and enforceable immediately upon entry. The Plan Proponents are authorized to consummate the Plan and the transactions contemplated thereby immediately after entry of this Order and upon, or concurrently with, satisfaction of the conditions set forth in the Plan.

###

Date: September 9, 2024

Scott C. Clarkson
United States Bankruptcy Judge

- 29 -

15

D. EDWARD HAYS, #162507
ehays@marshackhays.com
LAILA MASUD, #311731
lmasud@marshackhays.com
**MARSHACK HAYS WOOD LLP**
870 Roosevelt
Irvine, California 92620
Telephone: (949) 333-7777
Facsimile: (949) 333-7778

General Counsel for Chapter 11 Trustee,
RICHARD A. MARSHACK

Keith C. Owens (SBN 184841)
Nicholas A. Koffroth (SBN 287854)
**FOX ROTHSCHILD LLP**
10250 Constellation Blvd., Suite 900
Los Angeles CA 90067
Telephone: (310) 598-4150
Facsimile: (310) 556-9828
kowens@foxrothschild.com
nkoffroth@foxrothschild.com

Counsel For Official Committee of Unsecured Creditors

## UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA

| | |
|---|---|
| In re | Case No. 8:23-bk-10571-SC |
| | Chapter 11 |
| THE LITIGATION PRACTICE GROUP P.C., | |
| | **MODIFIED[1] FIRST AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION (DATED JUNE 14, 2024)** |
| Debtor. | |
| | Disclosure Statement Hearing: |
| | Date:  May 15, 2024 |
| | Time: 1:30 p.m. |
| | Ctrm: 5C - ViaZoom |
| | Place: 411 West Fourth Street |
| | Santa Ana, CA  92701 |
| | Plan Confirmation Hearing: |
| | Date:  August 29, 2024 |
| | Time: 10:00 a.m. |
| | Ctrm: 5C - ViaZoom[2] |
| | Place: 411 West Fourth Street |
| | Santa Ana, CA  92701 |

---

[1] Modified to amend certain confirmation dates and deadlines per Court order [Dkt. No. 1343].

[2] Check Judge Clarkson's tentative prior to hearing for further Zoom instructions.

1.      **Administrative Claims Including Professional Fee Claims**

Section 507(a)(2) of the Bankruptcy Code provides for priority treatment of certain claims, including fees and charges provided under chapter 123 of the Judicial Code, and administrative expenses allowed under 11 U.S.C. § 503(b). The Bankruptcy Code requires that all such allowed claims be paid in full on the Effective Date unless a particular Holder agrees to a different treatment.

**Holders of Administrative Claims that are required to, but do not, File and serve a request for payment of such Administrative Claims by the applicable Administrative Claims Bar Dates shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Estate or its property, and such Administrative Claims shall be deemed satisfied, settled, and released.** Objections to such requests, if any, must be Filed and served on the Plan Proponents, or Liquidating Trustee, as applicable, and the requesting party not later than the Administrative Claims Objection Deadline.

Unless otherwise agreed to by the Holder of an Allowed Administrative Claim and the Plan Proponents or the Liquidating Trustee, as applicable, each Holder of an Allowed Administrative Claim (other than Holders of Professional Fee Claims and Claims for fees and expenses, pursuant to § 1930 of the Judicial Code) will receive in full and final satisfaction of its Administrative Claim an amount of Cash equal to the amount of such Allowed Administrative Claim in accordance with the following: (1) if an Administrative Claim is Allowed as of the Effective Date, on the Effective Date or thereafter is agreed by any Holder of such Administrative Claim (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter); (2) if such Administrative Claim is not Allowed as of the Effective Date, no later than sixty (60) days after the date on which an order Allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; (3) if such Allowed Administrative Claim is based on liabilities incurred by Debtor or Trustee in the ordinary course of business after the Petition Date in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claim without any further action by the Holder of such Allowed Administrative Claim, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter; or (4) at such

time and upon such terms as set forth in a Final Order of the Bankruptcy Court or as agreed with the

Plan Proponents or Liquidating Trustee, as applicable.

The following chart lists all known potential claims, including Professional Fee Claims,

entitled to § 507(a)(2) priority treatment:

| Name | Treatment |
|---|---|
| Clerk's Office Fees | Paid in full on the Effective Date |
| Office of the U.S. Trustee Fees | Paid in full on the Effective Date |
| Marshack Hays Wood, LLP ("MHW"), general counsel to Chapter 11 Trustee | Paid in full on the later of (i) the Effective Date and (ii) the date the Bankruptcy Court enters an order allowing such fees and expenses, unless otherwise agreed by MHW |
| Dinsmore & Shohl ("Dinsmore"), special counsel to Chapter 11 Trustee | Paid in full on the later of (i) the Effective Date and (ii) the date the Bankruptcy Court enters an order allowing such fees and expenses, unless otherwise agreed by Dinsmore |
| Grobstein Teeple ("GT"), accountant to Chapter 11 Trustee | Paid in full on the later of (i) the Effective Date and (ii) the date the Bankruptcy Court enters an order allowing such fees and expenses, unless otherwise agreed by GT |
| Fox Rothschild ("FR"), counsel to the Official Committee of Unsecured Creditors | Paid in full on the later of (i) the Effective Date and (ii) the date the Bankruptcy Court enters an order allowing such fees and expenses, unless otherwise agreed by FR |
| Force 10 ("FT"), financial advisors/accountants to the Official Committee of Unsecured Creditors | Paid in full on the later of (i) the Effective Date and (ii) the date the Bankruptcy Court enters an order allowing such fees and expenses, unless otherwise agreed by FT |
| Court Appointed Monitor, Nancy Rapoport | Paid in full on the later of (i) the Effective Date and (ii) the date the Bankruptcy Court enters an order allowing such fees and expenses, unless otherwise agreed by the Monitor. |
| Court Appointed Privacy Ombudsman, Lucy H. Thomson | Paid in full on the later of the Effective Date and the date the Bankruptcy Court enters an order allowing such fees and expenses |
| Other Administrative Claims | Paid in full on the later of the Effective Date and the date the Bankruptcy Court enters an order allowing such Administrative Claims, or such later date as may be agreed by such Holder of Allowed Other Administrative Claims |
| Richard A. Marshack, Chapter 11 Trustee's statutory fees and expenses. | Paid in full on the later of (i) the Effective Date and (ii) the date the Bankruptcy Court enters an order allowing such fees and expenses, unless otherwise agreed by the Trustee. |

The administrative claim amounts set forth above simply represent the Plan Proponents' best

estimate as to the identity of Holders and the amounts of projected administrative claims in this case.

The actual administrative claims may be higher or lower. By voting to accept this Plan, creditors are

not acknowledging the validity of, or consenting to the amount of, any of these administrative claims,

| Class | Description[9] | Impairment | Treatment |
|---|---|---|---|
| | | | the date on which all of the following are satisfied: (a) there are sufficient funds in the Estate or Liquidating Trust to satisfy such Allowed Class 1E Claim; and (b) the later of (1) the Effective Date, or (2) the date an order Allowing any such Class 1E Claim becomes a Final Order. |
| 1F | Other Secured Claims<br><br>Alleged Collateral: Unknown<br><br>Total estimated amount of secured claims: $0.00 | Impaired; Entitled to Vote | Unless the Holder of an Allowed Class 1F Claim agrees to less favorable treatment, the Holder of an Allowed Class 1F Claim will receive the following treatment, at the Plan Proponents' election:<br><br>(i) the collateral securing the Class 1F Claim; or<br><br>(ii) payment of the Allowed amount of the Class 1F Claim, plus interest at the lesser of the contract rate and 8%.<br><br>The Holder of an Allowed Class 1F Claim will be entitled to the foregoing treatment ten days after the date on which all of the following are satisfied: (a) there are sufficient funds in the Estate or Liquidating Trust to satisfy such Allowed Class 1F Claim; and (b) the later of (1) the Effective Date, or (2) the date an order Allowing any such Class 1F Claim becomes a Final Order. |

4.    **Class 2 – Classes of Other Priority Claims**

Other Priority Claims are entitled to priority, under §§ 364(c) and 507(a)(4), (a)(5), and (a)(7) of the Bankruptcy Code, including the following:

-    <u>Super-Priority Loans</u>: Section 364(c) of the Bankruptcy Code provides that certain loans may be afforded priority over any or all administrative expenses of the kind specified in §§ 503(b) and 507(b) of the Bankruptcy Code. In the Bankruptcy Case, the Court approved loans, two of which remain outstanding:

- The loan made by Resolution Ventures to the Estate, outstanding amount of $341,280, which includes a deduction of the amount of outstanding debt credited to fund the initial deposit by MLG under the Sale Order;

- The loan made by Liberty Acquisitions to the Estate, in the total amount of $594,362; and

- The loan made by Pan American to the Estate, in the total amount of $269,637.

- <u>Wages/Commissions</u>: Claims under § 507(a)(4) of the Bankuptcy Code include unsecured claims for wages, salaries, or commissions (up to $15,150) earned within 180 days before the Petition Date or when the Debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).

- <u>Contributions to Employee Benefit Plan</u>: Claims under § 507(a)(5) of the Bankuptcy Code include unsecured claims for contributions to an employee benefit plan arising from services rendered within 180 days before the Petition Date or when the Debtor's business ends, whichever is earlier. But claims for wages under (a)(4) are paid first (up to $15,150); then claims under (a)(5) for contributions to employee benefit plans can be recovered next, up to the remainder of the $15,150 ceiling.

- <u>Deposits</u>: Claims under § 507(a)(7) of the Bankuptcy Code include unsecured claims for amounts paid towards deposits for the purchase, lease, or rental of property or services for personal, family, or household use up to $3,350 of deposits.

Trustee shall either reserve sufficient funds in the Estate to make the payments due to Class 2 claimants or the Liquidating Trust shall be liable to make such payments as they become due if Trustee funds all estate assets into the Trust.

| Class | Description | Impairment | Treatment |
|---|---|---|---|
| 2A | Super-priority loans owed to Liberty Acquisitions and PanAmerican | Unimpaired; Deemed to Accept and Not Entitled to Vote | Unless the Holder of an Allowed Class 2A Claim agrees to less favorable treatment, the Holder of an Allowed Class 2A Claim will receive payment of such Allowed Class 2A Claim, pursuant to the terms of the court-approved financing on or before the Effective Date. *See* Dk. Nos. 413, 414, and 415. |

MODIFIED FIRST AMENDED JOINT PLAN OF LIQUIDATION (JUNE 14, 2024)

159789101.1

| Class | Description | Impairment | Treatment |
|---|---|---|---|
| 2B | Wage, Salary, Commission Claims<br><br>Total estimated amount: $0.00 | Impaired; Entitled to Vote | Unless the Holder of an Allowed Class 2B Claim agrees to less favorable treatment, the Holder of an Allowed Class 2B Claim will receive:<br><br>(i) if Class 2B has accepted the Plan, then, at the Plan Proponent's election, either (a) payment in full of the Allowed amount of the Class 2B Claim, or (b) deferred Cash payments of a value, as of the Effective Date, equal to the Allowed amount of such Class 2B Claim; or<br><br>(ii) if Class 2B has not accepted the Plan, payment in full of the Allowed amount of the Class 2B Claim.<br><br>The Holder of an Allowed Class 2B Claim will be entitled to the foregoing treatment ten days after the later of (a) the Effective Date, or (b) the date an order Allowing any such Class 2B Claim becomes a Final Order. |
| 2C | Contributions to Employee Benefit Plan<br><br>Total estimated amount: $0.00 | Impaired; Entitled to Vote | Unless the Holder of an Allowed Class 2C Claim agrees to less favorable treatment, the Holder of an Allowed Class 2C Claim will receive:<br><br>(i) if Class 2C has accepted the Plan, then, at the Plan Proponent's election, either (a) payment in full of the Allowed amount of the Class 2C Claim, or (b) deferred Cash payments of a value, as of the Effective Date, equal to the Allowed amount of such Class 2C Claim; or<br><br>(ii) if Class 2C has not accepted the Plan, payment in full of the Allowed amount of the Class 2C Claim.<br><br>The Holder of an Allowed Class 2C Claim will be entitled to the foregoing treatment ten days after the later of (a) the Effective Date, or (b) the date an order Allowing any such Class 2C Claim becomes a Final Order. |

17

| Class | Description | Impairment | Treatment |
|-------|-------------|------------|-----------|
| 2D | Deposits<br><br>Total estimated amount: $0.00 | Impaired; Entitled to Vote | Unless the Holder of an Allowed Class 2D Claim agrees to less favorable treatment, the Holder of an Allowed Class 2D Claim will receive:<br><br>(i) if Class 2D has accepted the Plan, then, at the Plan Proponent's election, either (a) payment in full of the Allowed amount of the Class 2D Claim, or (b) deferred Cash payments of a value, as of the Effective Date, equal to the Allowed amount of such Class 2D Claim; or<br><br>(ii) if Class 2D has not accepted the Plan, payment in full of the Allowed amount of the Class 2D Claim.<br><br>The Holder of an Allowed Class 2D Claim will be entitled to the foregoing treatment ten days after the later of (a) the Effective Date, or (b) the date an order Allowing any such Class 2D Claim becomes a Final Order. |

5.    **Class 3 – Classes of General Unsecured Claims**

General Unsecured Claims are not entitled to priority under § 507(a) of the Bankruptcy Code. The following charts identify this Plan's treatment of the classes containing the General Unsecured Claims.

While there may be a recovery for Holders of Allowed General Unsecured Claims, it is not possible at this time to estimate the ultimate recovery for such Holders based, in part, on the extent to which asserted Secured Claims are ultimately Allowed, the extent to which any asserted Other Priority Claims and General Unsecured Claims are Disallowed and/or subordinated, and the extent of recoveries from Causes of Action.

| Class | Description | Impairment | Treatment |
|-------|-------------|------------|-----------|
| 3A | **General Unsecured Claims**<br><br>This Class is comprised of all Holders of General Unsecured Claims. | Impaired; Entitled to Vote | Unless the Holder of an Allowed Class 3A Claim agrees to less favorable treatment, the Holder of an Allowed Class 3A Claim will receive on the Effective Date a Trust Beneficial Interest in the amount of such Allowed Class 3A Claim and become a Trust Beneficiary in full and final satisfaction of its Allowed Class 3A Claim. |
| 3B | **Consumer Client Convenience Class** | Impaired; Entitled to Vote | Unless the Holder of an Allowed Class 3B Claim agrees to less favorable treatment, the Holder of an Allowed Class 3B Claim |

18

# EXHIBIT B

1

<pre>
 1                  UNITED STATES BANKRUPTCY COURT

 2                  CENTRAL DISTRICT OF CALIFORNIA

 3                             -oOo-

 4   In Re:                        ) Case No. 23-10571-SC
                                   ) Chapter 11
 5   THE LITIGATION PRACTICE GROUP )
     P.C.                          ) Santa Ana, California
 6                                 )Thursday, August 29, 2024
                        Debtor.    ) 10:00 AM
 7   _____ )

 8                                 ADV#: 24-01068
                                   MARSHACK v. BAYROOTI
 9
                                   #1.00 CONT'D HEARING RE:
10                                 CONFIRMATION OF MODIFIED
                                   FIRST AMENDED JOINT CHAPTER
11                                 11 PLAN OF LIQUIDATION (DATED
                                   JUNE 14, 2024 (SET AT D.S.
12                                 HELD 5/15/2024) (MODIFIED
                                   FIRST AMENDED D.S. FILED
13                                 6/14/2024) FR: 8-15-24

14                                 #1.10 HEARING RE: MOTION OF
                                   GREYSON LAW CENTER PC, JAYDE
15                                 TRINH AND HAN TRINH: (1) TO
                                   CONTINUE THE 8/29/24 AT 10
16                                 A.M. HEARING ON TRUSTEE-
                                   CREDITOR COMMITTEE'S PROPOSED
17                                 PLAN [DOCKET [13441 TO A
                                   LATER DATE, BECAUSE PLAN IS
18                                 FATALLY OUT-OF-DATE, PER
                                   INFORMATION IN TRUSTEES
19                                 CHAPTER 11 STATUS REPORT
                                   [DOCKET 1512, FILED
20                                 08/15/24], AND (2) TO ORDER
                                   TRUSTEE-CREDITOR COMMITTEE TO
21                                 REVISE PROPOSED PLAN TO
                                   CURRENT INFORMATION (MOTION
22                                 FILED 8/23/2024)

23                                 #2.00 CONT'D STATUS
                                   CONFERENCE HEARING RE: (1)
24                                 CASE MANAGEMENT CONFERENCE
                                   AND (2) REQUIRING STATUS
25                                 REPORT (PETITION FILED
</pre>

2

1    3/20/2023) FR: ADVANCED FROM
     6-14-23; 6-12-23; 7-19-23; 8-
2    10-23; 11-8-23; 2-7-24;
     4-24-24; 5-15-24; 8-15-24
3
     #3.00 HEARING RE: CHAPTER 11
4    TRUSTEE'S MOTION FOR ORDER
     APPROVING THE SETTLEMENT
5    AGREEMENT BETWEEN THE
     TRUSTEE, OHP-CDR, LP AND
6    PURCHASECO 80, LLC (MOTION
     FILED 8/8/2024)
7
     #3.10 HEARING RE: CHAPTER 11
8    TRUSTEE'S MOTION FOR ORDER
     APPROVING STIPULATION BETWEEN
9    TRUSTEE, THE OFFICIAL
     COMMITTEE OF UNSECURED
10   CREDITORS, AND DISPUTED
     SECURED CREDITOR, AZZURE
11   CAPITAL, LLC FOR (1) CONSENT
     TO USE OF DISPUTED CASH
12   COLLATERAL; AND (2)
     REPLACEMENT LIEN (MOTION
13   FILED 8/16/24) (SET PER OST
     ENTERED 8/18/2024)
14
     #3.20 HEARING RE: MOTION TO
15   APPROVE COMPROMISE BETWEEN
     TRUSTEE AND BLUE CROSS OF
16   CALIFORNIA D/B/A ANTHEM BLUE
     CROSS (MOTION FILED
17   8/27/2024) (SET PER OST
     ENTERED 8-27-2024)
18
     #4.00 HEARING RE.' MOTION
19   PURSUANT TO FEDERAL RULE OF
     BANKRUPTCY PROCEDURE 3018 TO
20   CHANGE VOTE ON PLAN
     (MOTION FILED 8/8/2024)
21
     #4.10 CONT'D HEARING RE:
22   PLAINTIFFS EMERGENCY
     APPLICATION FOR A TEMPORARY
23   PROTECTIVE ORDER AND
     PRELIMINARY INJUNCTION
24   (APPLICATION FILED 8/13/2024)
     FR: 8-15-24
25

```
 1                              #4.20 CONT'D STATUS
                                CONFERENCE HEARING RE:
 2                              TRUSTEE'S FIRST AMENDED
                                COMPLAINT FOR: (1) AVOIDANCE,
 3                              RECOVERY, AND PRESERVATION OF
                                FRAUDULENT TRANSFER(S); (2)
 4                              AVOIDANCE, RECOVERY, AND
                                PRESERVATION OF 4-YEAR
 5                              CONSTRUCTIVE VOIDABLE
                                TRANSFER(S); AND/OR (3)
 6                              AVOIDANCE, RECOVERY, AND
                                PRESERVATION OF PREFERENTIAL
 7                              TRANSFER(S) (COMPLAINT FILED
                                4/19/2024) (ANOTHER SUMMONS
 8                              ISSUED 6/4/2024) (FIRST
                                AMENDED COMPLAINT FILED
 9                              7/12/2024) FR: 7-3-24; 8-28-
                                24
10
                       TRANSCRIPT OF PROCEEDINGS
11            BEFORE THE HONORABLE SCOTT C. CLARKSON
                UNITED STATES BANKRUPTCY JUDGE
12
     APPEARANCES:
13   For Chapter 11 Trustee:    D. EDWARD HAYS, ESQ.
                                Marshack Hays Wood LLP
14                              870 Roosevelt
                                Irvine, CA 92620
15                              (949)333-7777

16   Special Counsel for        YOSINA M. LISSEBECK, ESQ.
     Chapter 11 Trustee:        CHRISTOPHER B. GHIO, ESQ.
17                              CHRISTOPHER CELENTINO, ESQ.
                                Dinsmore & Shohl, LLP
18                              655 West Broadway
                                Suite 800
19                              San Diego, CA 92129
                                (619)400-0473
20
     For Committee of Unsecured NICHOLAS A. KOFFROTH, ESQ.
21   Creditors:                 KEITH C. OWENS, ESQ.
                                Fox Rothschild LLP
22                              10250 Constellation Boulevard
                                Suite 900
23                              Los Angeles, CA 90067
                                (310)598-4150
24

25
```

4

```
 1   For Validation Partners      WILLIAM P. FENNELL, ESQ.
     LLC:                         Law Office of William P. Fennell,
 2                                 APLC
                                  600 West Broadway
 3                                Suite 930
                                  San Diego, CA 92101
 4                                (619)325-1560

 5   For Greyson Law Center PC,   KATHLEEN P. MARCH, ESQ. (ZOOM)
     Han Trinh, and Jayde         The Bankruptcy Law Firm, PC
 6   Trinh:                       10524 West Pico Boulevard
                                   Suite 212
 7                                Los Angeles, CA 90064
                                  (310)559-9224
 8
     For Anthem Blue Cross of     ALAN W. FORSLEY, ESQ. (ZOOM)
 9   California:                  FLP Law Group LLP
                                   1875 Century Park East
10                                Suite 2230
                                  Los Angeles, CA 90067
11                                (310)284-7350

12   For Office of the U.S.       QUEENIE K. NG, ESQ. (ZOOM)
     Trustee:                     KENNETH MISKEN, AUST (ZOOM)
13                                 U.S. Department of Justice
                                   411 West Fourth Street
14                                Suite 7160
                                  Santa Ana, CA 92701
15                                (714)338-3403

16   For Debt Validation Fund     RICHARD H. GOLUBOW, ESQ. (ZOOM)
     II, LLC, MC DVI Fund 1,      Winthrop Golubow Hollander, LLP
17   LLC, and  MC DVI Fund 2,     1301 Dove Street
     LLC                          Suite 500
18                                 Newport Beach, CA 92660
                                   (949)720-4100
19
     For OHP-CDR, LP and          RAZMIG Y. IZAKELIAN, ESQ. (ZOOM)
20   PurchaseCo 80, LLC:          Quinn Emanuel Urquhart & Sullivan
                                   LLP
21                                 865 South Figueroa Street
                                  10th Floor
22                                Los Angeles, CA 90017
                                  (213)443-3668
23

24

25
```

```
 1   For Azure Capital LLC:      SHARON Z. WEISS, ESQ. (ZOOM)
                                  Bryan Cave Leighton Paisner LLP
 2                                120 Broadway
                                  Suite 300
 3                                Santa Monica, CA 90401
                                  310-576-2100
 4
     For Bridge Capital:         MITCHELL B. LUDWIG, ESQ. (ZOOM)
 5                                Knapp, Petersen & Clake, P.C.
                                  550 North Brand Boulevard
 6                                Suite 1500
                                  Glendale, CA 91203
 7                                (818)547-5000

 8   For Morning Law Group,      ZEV M. SHECHTMAN, ESQ. (ZOOM)
     P.C.:                       Danning, Gill, Israel & Krasnoff,
 9                                LLP
                                  1901 Avenue of the Stars
10                                Suite 450
                                  Los Angeles, CA 90067
11                                (310)277-0077

12   Also Present:               John Henry Valades (ZOOM)

13                               Adam Meislik

14                               Chad Kurtz (ZOOM)

15                               Kim Steverson (ZOOM)

16

17

18

19

20

21

22

23

24

25
```

eScribers, LLC

6

Court Recorder:                TAMIKA LAW
                               United States Bankruptcy Court
                               Ronald Reagan Federal Building
                               411 West Fourth Street
                               Santa Ana, CA 92701
                               (855)460-9641

Transcriber:                   RIVER WOLFE
                               eScribers, LLC
                               7227 N. 16th Street
                               Suite #207
                               Phoenix, AZ 85020
                               (800) 257-0885

Proceedings recorded by electronic sound recording;
transcript provided by transcription service.

Case 8:23-bk-10571-SC   Doc 1072   Filed 09/03/24   Entered 09/03/24 06:50:40   Desc
Main Document    Page 30 of 176
**The Litigation Practice Group P.C.; Marshack v. Bayrooti**

7

1        SANTA ANA, CALIFORNIA, THURSDAY, AUGUST 29, 2024, 10:17 AM

2                              -oOo-

3        (Call to order of the Court.)

4        THE COURT:  (Audio begins midsentence) -- matters on

5    the 10 o'clock calendar.  They have all been vacated by orders

6    already entered by the Court.  The first is item number 1.10,

7    and that is the motion to continue the plan confirmation

8    hearing.  Item number 3, which was the motion to approve

9    compromise with OHP.  That order was entered on the 28th of

10   this month. It's docket number 1563.  We have item number 3.10,

11   which is the motion for an order approving the stipulation

12   between the trustee and the official committee of unsecured

13   creditors and the disputed secured creditor Azzure.  And that

14   is docket number 1564.  And finally, we have item number 4

15   vacated.  That is the motion to change a vote of plan by OHP.

16   And that order was entered yesterday docket number 1562.

17        That leaves us with apparently two matters in the LPG,

18   or The Litigation Practice Group, case.  One is the status

19   conference, and two is the plan confirmation.

20        Let's talk to the plan proponents and ask them which

21   they would take up first.

22        MR. HAYS:  Your Honor, good morning, again.  For the

23   trustee, Ed Hays of Marshack Hays Wood LLP.  I would suggest we

24   start with the confirmation hearing.

25        MR. KOFFROTH:  And Your Honor, good morning.  Nicholas

**The Litigation Practice Group P.C.; Marshack v. Bayrooti**

8

1    Koffroth with Fox Rothschild LLP.  The committee would agree

2    with that.

3              MR. OWENS:  Just for the record, Your Honor, good

4    morning.  Keith Owens of Fox Rothschild, also appearing for the

5    committee.

6              MS. LISSEBECK:  And also for the record, Your Honor,

7    Yosina Lissebeck of Dinsmore & Shohl, special counsel to

8    Richard Marshack, Chapter 11 trustee.

9              THE COURT:  Well, I guess we're taking the

10   appearances.  So please continue.

11             MR. GHIO:  Again, Your Honor, Christopher Ghio of

12   Dinsmore & Shohl for Chapter 11 Trustee Richard Marshack.

13             THE COURT:  Are there any other parties inside the

14   courtroom first that would like to make an appearance?

15             MR. FENNELL:  Good morning, Your Honor.  William

16   Fennell on behalf of Validation Partners, who's in favor of the

17   plan.  Thank you.

18             THE COURT:  Good morning.

19             It looks like we've completed the courtroom.  On the

20   Zoom, because this is a hybrid hearing, we have parties.  Let's

21   identify the parties on Zoom.

22             Ms. March.

23             MS. MARCH:  Good morning, Your Honor.  Attorney

24   Kathleen March of The Bankruptcy Law Firm representing Greyson

25   Law Firm (sic) PC, Han Trinh, and Jayde Trinh.  I apologize I

**The Litigation Practice Group P.C.; Marshack v. Bayrooti**

9

```
 1   couldn't come in person.  But Your Honor didn't post the

 2   tentative till kind of late in the afternoon, and I just could

 3   not clear the rest of my calendar to be able to come in person.

 4          THE COURT:  You're always welcome at any time, Ms.

 5   March.  I thank you for your comment.

 6          MR. FORSLEY:  Good morning, Your Honor.  Alan Forsley

 7   on behalf of creditor Anthem Blue Cross.

 8          THE COURT:  Good morning to you.

 9          MR. FORSLEY:  Good morning, Your Honor.

10          MS. NG:  Good morning, Your Honor.  Queenie Ng for the

11   U.S. Trustee, and the AUST Ken Misken is also listening in.

12          THE COURT:  Good morning to both of you.

13          Next.

14          MR. GOLUBOW:  Good morning, Your Honor.  Richard

15   Golubow, Winthrop Golubow Hollander, appearing on behalf of

16   Debt Validation Fund II, MC DVI Fund 1, and MC DVI Fund 2.

17          THE COURT:  Good morning.

18          MR. IZAKELIAN:  Good morning, Your Honor.  Razmig

19   Izakelian of Quinn Emanuel for OHP-CDR and PurchaseCo 80.

20          THE COURT:  Good morning.

21          MS. WEISS:  Good morning, Your Honor.  Sharon Weiss,

22   Bryan Cave Leighton Paisner LLP, on behalf of secure creditor

23   Azzure Capital LLC.

24          THE COURT:  Good morning to you.

25          MR. VALADES:  Good morning, Your Honor.
```

**eScribers, LLC**

**The Litigation Practice Group P.C.; Marshack v. Bayrooti**

10

1              THE COURT:  Please tell us your name.

2              MR. VALADES:  John Henry Valades (phonetic).  I'm a

3      petitioner.

4              THE COURT:  Are you a claimant in this case?

5              MR. VALADES:  Yes, sir.

6              THE COURT:  Well, welcome.  I appreciate you being

7      here.

8              MR. VALADES:  Okay.  Thank you, sir.

9              THE COURT:  Thank you.

10             Are there other appearances?

11             MR. LUDWIG:  Yes.  Good morning, Your Honor.  Mitchell

12     Ludwig -- good morning, Your Honor.  Ludwig representing Bridge

13     Capital (indiscernible).

14             THE COURT:  Very good.  Your appearance is noted.

15             MR. SCHECHTMAN:  Good morning, Your Honor.  Zev

16     Schechtman on behalf of Morning Law Group.

17             THE COURT:  Good morning to you.

18             I think we might be concluded.

19             Mr. Koffroth.

20             MR. KOFFROTH:  Yes, Your Honor.  Nicholas Koffroth for

21     the committee, and again, just for the sake of the record, I'd

22     also like to indicate that Mr. Adam Meislik and Mr. Chad Kurtz

23     are available.  Mr. Meislik is in the courtroom.  Mr. Kurtz is

24     on the phone.  They're both from Force 10, the committee's

25     financial adviser.  Mr. Kurtz had submitted a declaration.  And

Case 8:23-bk-10571-SC   Doc 1072   Filed 02/03/24   Entered 02/03/24 06:50:40   Desc
Main Document    Page 34 of 176
The Litigation Practice Group P.C.; Marshack v. Bayrooti

11

1   Kim Steverson from Omni Asian Solutions, who also submitted a

2   declaration, is on Zoom.

3        THE COURT:  Very good.  The Court has carefully

4   reviewed the confirmation briefs, the oppositions, the evidence

5   in support and in opposition to the confirmation of the plan of

6   reorganization.  It has also reviewed all of the supplemental

7   work that's been sent in.  What I think we ought to do is take

8   the time for the plan proponents to present to us what they are

9   exactly intending with this plan.  And then, of course, we will

10  go over the requirements of confirmation of the plan of

11  reorganization.  And then what we will do is we will give

12  everyone a complete opportunity to voice their support or

13  opposition with any discussion that they feel is necessary.

14       So who would like to start with respect to the plan

15  proponents?

16       MR. HAYS:  Your Honor, I would.

17       THE COURT:  Thank you, Mr. Hays.

18       MR. CELENTINO:  Your Honor.  Your Honor, if I may

19  interrupt.  I am so sorry.  I was put on mute by the court.

20  This is Christopher Celentino of Dinsmore & Shohl.  I didn't

21  want to miss this momentous occasion.  Unfortunately, I am out

22  of the country, and I'm at the hospital with my uncle, who's

23  not faring very well.  We represent, as you know, the trustee,

24  Richard Marshack, who I believe is in very good hands with my

25  partners Yosina Lissebeck and Chris Ghio.  I just wanted to

1 make sure that you knew that I understood the momentous of the

2 occasion and that I made sure to call in and let you know with

3 all heartfelt respect I'm deferring to my partners because of

4 the situation I am in.  And Mr. Marshack is in very good shape

5 with Mr. Hays from his firm and with my partners Yosina

6 Lissebeck and Christopher Ghio.

7          I will return back to mute and allow the proceedings

8 to continue.  But I was only able to get unmuted after you did

9 your nice introduction, and I apologize for that.  But I wanted

10 the record to make it clear that I made sure to let you know

11 that I was paying attention and this is an important moment for

12 Mr. Marshack and we are all here to support him.  Thank you,

13 Your Honor.

14          THE COURT:  Well, don't forget to bill it.

15          MR. CELENTINO:  I don't.  I will not, Your Honor.  Of

16 course, there will be no participation or bill --

17          THE COURT:  Oh, no.

18          MR. CELENTINO:  -- on my behalf for this particular

19 participation.

20          THE COURT:  You misunderstood me.

21          MR. CELENTINO:  I will not.

22          THE COURT:  Thank you.

23          MR. CELENTINO:  No, I understood.  I appreciated the

24 joke.  And I meant to say, of course, that my time will not be

25 billed for participation.  I wanted to make sure, though, that

1    the parties understood everybody, the committee, the creditors,

2    the consumers on the line understood that this is a very

3    important moment for Mr. Marshack.  And notwithstanding where I

4    am, I wanted to make sure that you, the Court, and the parties

5    understood I understood the importance of the occasion.

6          THE COURT:  Mr. Hays, please proceed.

7          MR. HAYS:  Thank you, Your Honor.  Before the Court

8    today is the trustee's and the committee's joint plan of --

9    joint plan of liquidation and joint motion to confirm that

10   plan.  The plan is the product of extensive negotiations

11   between the two estate fiduciaries, the Chapter 11 trustee, and

12   the official committee of unsecured creditors.  Having

13   participated personally in those negotiations, I can represent

14   that the parties did not always see eye to eye on the best path

15   forward.  The plan that has been filed is the product of

16   extensive and several months of negotiations with respect to

17   what was in the best interest of the creditors and the estate.

18         For the reasons set forth in the confirmation brief

19   and reply, we believe the plan complies with all of the

20   requirements of Sections 1129(a) and (b).  The plan has been

21   overwhelmingly supported by creditors, including the unsecured

22   consumer creditors who were the clients of the debtor's former

23   law operations and who were harmed by the illegal manner in

24   which they were being undertaken by the debtor and its

25   principles.

Case 8:23-bk-10571-SC   Doc 1072   Filed 09/03/24   Entered 09/03/24 06:50:40   Desc
Main Document   Page 37 of 176
The Litigation Practice Group P.C.; Marshack v. Bayrooti

14

1       There are only four classes of claims that have voted.
2   All four classes have voted to accept the plan.  There are two
3   secured classes, the OHP and the MNS -- or the OHP is in class
4   1(d) voted to accept the plan.  MNS is in class 1(f), both of
5   which were secured creditors voted to accept the plan.  There
6   are two classes of unsecured creditors that voted to accept the
7   plan.  Those are classes 3(a) and 3(b).  3(a) is the class of
8   general unsecured creditors, and 3(b) was an opt-in class that
9   provided consumer claimants with the opportunity to opt in and
10  have a deemed allowed claim equal to thirty percent of the
11  funds that the debtor's records reflect were paid to the debtor
12  by that consumer creditor.
13       THE COURT:  Mr. Hays.
14       MR. HAYS:  Yes.
15       THE COURT:  One aspect is missing from your discussion
16  with respect to the classes.  How many voted?  How many did not
17  vote?
18       MR. HAYS:  There were four classes that voted to
19  accept the plan.  And I have the classes that did not vote to
20  accept the plan.  There were six --
21       THE COURT:  Well, we say they did not cast a vote.
22       MR. HAYS:  That is correct.
23       THE COURT:  Let's make sure that there's a distinction
24  between voting in opposition and not voting at all.  So I think
25  that we owe everyone an explanation because it's totally

Case 8:23-bk-10571-SC   Doc 1072   Filed 02/03/24   Entered 02/03/24 06:50:40   Desc
Main Document    Page 38 of 176
**The Litigation Practice Group P.C.; Marshack v. Bayrooti**

15

1   missing out of your confirmation brief about the inferences

2   with respect to a plan confirmation where you have classes that

3   did not vote.

4          MR. HAYS:  Some classes that don't vote are not

5   allowed to vote because they're either deemed to accept or

6   they're deemed to reject.  And if a class is entitled to vote

7   and doesn't vote, the Court can still confirm the plan over

8   their lack of acceptance --

9          THE COURT:  No, I understand that.  But let's forget

10  cramdown for a second.  Have all classes in your plan that were

11  entitled to vote, did they cast a vote?

12         MR. HAYS:  No.

13         THE COURT:  Okay.  What do you believe the

14  ramification is with respect to confirmation when there is a

15  class that the proponents have designated that they haven't

16  received a vote in favor.  You have to cram it down.

17         MR. HAYS:  Correct.

18         THE COURT:  Okay.  What I'm making sure of is, and I'm

19  making reference to the issue of whether or not a lack of a

20  vote means that they've accepted.

21         MR. HAYS:  No, it does not.

22         THE COURT:  What is your position on that?

23         MR. HAYS:  I do not believe that a lack of a vote

24  means they accept, and we do have to proceed with the cramdown

25  provisions of 1129(b).

1          THE COURT:  Okay.  Thank you very much.

2          MR. HAYS:  Okay.  I got confused by the question when

3    you said don't go to cramdown, and I was, like, missing it.  So

4    I apologize.

5          So circling back to the summary here, there are

6    currently no classes of creditors that have voted to reject the

7    plan.  And the plan is a plan of liquidation, which is effected

8    and implemented by the creation of a liquidation trust that

9    will be funded by the estates, transfer of assets to the trust,

10   including pending and future litigation claims.  The

11   beneficiaries of the trust are the unsecured creditors of the

12   debtor's estate, and the liquidation trust provides that

13   distributions will be made to the beneficiaries from time to

14   time as assets are recovered through litigation recoveries or

15   otherwise, and payments will then be distributed to the

16   creditors.

17         The Chapter 11 trustee, Mr. Marshack, will serve as

18   the trustee of the liquidating trust, and there will be a post-

19   confirmation oversight committee that will be staffed by

20   members of the existing committee, the official committee of

21   unsecured creditors, that provides certain oversight and input

22   to the trustee in terms of the operation and direction of the

23   trust.

24         We believe the evidence before the Court satisfies all

25   of the various elements.  And under 1129, there's really only

**The Litigation Practice Group P.C.; Marshack v. Bayrooti**

17

```
 1   two of the elements under Sections 1129(a) or (b) that we're
 2   faced with an objection on here today.  And so I don't want to
 3   spend too much time going over the elements that are really not
 4   in dispute and nobody's objected to.  So I'll try to be a
 5   little bit brief on that, unless the Court has any detailed
 6   questions with respect to any one particular element.
 7           Section 1129(a) provides that the plan must comply
 8   with applicable provisions of Title 11.  We believe that the
 9   evidence shows that that's the case, and nobody's objected on
10   that ground.
11           THE COURT:  Has anyone objected to the classification
12   of claims and interest or the disclosure requirements and the
13   contents of the plan?
14           MR. HAYS:  No, Your Honor.
15           THE COURT:  Okay.
16           UNIDENTIFIED SPEAKER:  No, Your Honor.
17           THE COURT:  No, I'm just asking Mr. Hays at that time
18   at this time.  Everyone else should just wait.  You can
19   contradict him later.
20           Mr. Hays, please proceed.
21           MR. HAYS:  Thank you.  Section 1129(a)(2) requires
22   that the proponents comply with applicable provisions of Title
23   11.  We believe that the proponents have complied with those
24   applicable provisions, and there is no objection on that
25   ground.
```

**The Litigation Practice Group P.C.; Marshack v. Bayrooti**

18

1          1129(a)(3) requires that the plan be proposed in good

2     faith and not by any means forbidden by law.  There is an

3     objection raised by three alleged creditors.  That's the

4     Greyson Law Center, Han Trinh, and Jayde Trinh, who are all

5     represented by Ms. March, who has made an appearance at the

6     hearing today.  So I'll skip over that for a second and run

7     through the other unopposed elements and then go back and

8     detail and discuss the good faith issues.

9          Section 1129(a)(4) requires that professional fees be

10     approved before they are paid.  That is a requirement of the

11     plan.  And professionals are in the process of putting together

12     interim fee applications that will be filed, and no

13     professional will be paid until the Court has approved those

14     fees by entered order.

15          Section 1129(a)(5) requires the disclosure of the

16     identity of persons to serve under the confirmed plan.  That

17     would be, again, the trustee will serve as the liquidating

18     trustee, and the committee members will be part of the

19     oversight committee.  There is no objection that the plan does

20     comply with that applicable provision by disclosing the

21     identity of those individuals.

22          Section 1129(a)(6) pertains to regulatory approval for

23     rate changes, which is inapplicable to the plan that has been

24     proposed.

25          Section 1129(a)(7) is known as the best interest of

1    creditors, and it generally requires that creditors receive at

2    least as much as they would receive if this were a liquidation

3    under Chapter 7.  There is no objection that the plan complies

4    with the best interest of creditors test.

5         Section 1129(a)(8) requires acceptance by impaired

6    classes.  There is no objection to the plan on this ground, but

7    I will note that not all impaired classes have accepted, which

8    will require us to run through the elements of Section 1129(b),

9    also known as cramdown.

10        Section 1129(a)(9) requires that priority creditors

11   receive specified cash payments.  There is no objection on this

12   ground, but the plan does provide that the holder of any

13   allowed priority claim will be paid in cash on the effective

14   date, or if there's a dispute and the claim is not yet allowed,

15   they will be paid within sixty days after entry of a final

16   order allowing that priority claim.  So we believe that the

17   required element in that category has been met.

18        1129(a)(10) requires that each impaired class has

19   accepted the plan, excluding insiders.  There is, again, no

20   objection on this ground, but we believe the element has been

21   satisfied with the acceptance of the creditors that have voted

22   in favor of the plan.  And again, there's more than one.

23   There's four classes of creditors that have voted to accept,

24   and no class of creditors that have voted to object.

25        Section 1129(a)(11) requires that the plan be feasible

Case 8:23-bk-10571-SC   Doc 1072   Filed 09/03/24   Entered 09/03/24 06:50:40   Desc
Main Document   Page 20 of 176
The Litigation Practice Group P.C.; Marshack v. Bayrooti

20

1 and not likely to be followed by the need for further financial

2 reorganization.  We believe the plan satisfies this element,

3 but there is an objection by Ms. March's clients to this

4 particular element.  And so we'll go back and discuss that from

5 a plan proponents point of view in a moment.

6   Section 1129(a)(12) requires that certain fees be

7 paid.  The plan does provide for that.  There is no objection

8 that the plan does not satisfy that element.

9   And then the other provisions of 1129(a)(13), (14),

10 (15), and (16) basically don't apply to the plan before the

11 Court, and there is no objection or assertion that the plan

12 violates those provisions.

13   So in summary, we've got objections on two grounds

14 under 1129, that the plan has not been proposed in good faith

15 and that the plan is not feasible.

16   First, with respect to the two objections that remain

17 pending, one by Mr. Golubow's clients, the investment funds,

18 they don't really object to the plan on any of the grounds of

19 1129(a) or (b) that we just ran through.  They've raised their

20 issue.  Mr. Koffroth will discuss that on behalf of the plan

21 proponents.  So what we're really left with, I think, are the

22 objections raised by Ms. March's clients.

23   I would like to start by noting that Ms. March's

24 clients, at the time they filed the objection to the plan, had

25 disputed administrative claims that were pending with various

Case 8:23-bk-10571-SC   Doc 1072   Filed 09/03/24   Entered 09/03/24 06:50:40   Desc
Main Document     Page 44 of 176
**The Litigation Practice Group P.C.; Marshack v. Bayrooti**

21

1   motions that Mr. Hays.

2          THE COURT:  Well, Mr. Hays, are you addressing the

3   Court with respect to a standing issue?  Is that where you're

4   going?

5          MR. HAYS:  A little bit.

6          THE COURT:  Okay.  Well, you can stop.  They have

7   standing.

8          MR. HAYS:  Okay.  I understand that it's standing to

9   appear and be heard on confirmation.

10         THE COURT:  Exactly.

11         MR. HAYS:  I'm just putting into context what their

12   pecuniary interest now is in the outcome of confirmation.  So

13   it's not necessarily standing.

14         THE COURT:  It's not relevant.  They have a pecuniary

15   interest in an opportunity to recover from the estate.  They

16   still have that.

17         MR. HAYS:  Yes, I understand.

18         THE COURT:  And so that's not an issue.  They have

19   complete standing, and let's move on.

20         MR. HAYS:  Understand on the standing, but just for

21   the record, the administrative claims have been denied because

22   that does dovetail back into --

23         THE COURT:  Well, and I assume that those orders are

24   going to be appealed.  But also, they can renew those if they

25   provide, if you read the orders carefully, more evidence of

22

1    their losses, for instance, of Jayde and Han of computers and

2    other personal property.  The orders have invited them to

3    provide more information at a later date.  So that's not an

4    issue.

5            MR. HAYS:  I understand, Your Honor.  I think it

6    factors into the feasibility discussion.

7            THE COURT:  It  doesn't matter.

8            MR. HAYS:  Yeah.  Okay.  So now circling back to the

9    good faith issue, I don't think that there's really any

10   evidence that the plan has not been proposed in good faith by

11   the trustee and the committee through the evidence that's

12   before the Court on the amount of negotiations that went into

13   the plan and how the plan satisfies all of the various

14   different elements of 1129(a) and (b) and how the creditors

15   have voted overwhelmingly -- the classes of creditors have

16   voted overwhelmingly in support of that.

17           THE COURT:  Is there any statutory authority or

18   definition of good faith?

19           MR. HAYS:  There is, Your Honor and – a plan is

20   determined to be in good faith, where it achieves a result that

21   is consistent with the Bankruptcy Code and that is a finding to

22   be based on the totality of circumstances before the court.

23           THE COURT:  Would you give me a citation for that?

24           MR. HAYS:  Yes, Your Honor, I will.  The Ninth Circuit

25   in the case of In re: Sylmar Plaza, 314 F.3d 1070, which is a

The Litigation Practice Group P.C.; Marshack v. Bayrooti

1   2002 case, found, and I quote, "A plan is proposed in good

2   faith where it achieves a result consistent with the objectives

3   and purposes of the Code."

4          THE COURT:  My point was that there is no -- there is

5   no definition of good faith in the statute.

6          MR. HAYS:  Itself, that is correct.

7          THE COURT:  It has to be derived from interpretations

8   by the Ninth Circuit.

9          MR. HAYS:  That is correct.

10         THE COURT:  Thank you.

11         MR. HAYS:  So I think where the crux or the biggest

12  argument raised by Ms. March's clients comes down is with

13  respect to feasibility of the plan, and we believe the plan is

14  feasible.  But in her objection, Ms. March's clients raise the

15  issue that there was no disclosure of certain amounts of

16  claims, such as professional fees or administrative claims,

17  priority claims, and the like.  That's not the case, and

18  attached to the disclosure statement was the trustee's proposed

19  feasibility analysis, and that was filed with the Court back in

20  June.  And there's been a number of developments that have

21  happened since June, many of them this week with respect to

22  allowance and disallowance of claims and approvals of proposed

23  settlements.

24         So to the extent it would be helpful, I have prepared

25  a demonstrative exhibit that can show the -- one column is the

**The Litigation Practice Group P.C.; Marshack v. Bayrooti**

24

1   original projections of feasibility.  The second is an updated

2   column with where we find ourselves here today, based on orders

3   entered as recently as yesterday.  These are all things that

4   are based on documents filed with the Court.  I think they're

5   all subject to judicial notice.  So in terms of just walking

6   through and seeing the original projections to where we

7   currently stand to see that the projections are all coming out

8   as the plan proponents thought they would and we're actually in

9   a better position than where we thought we would.

10          I do have the demonstrative exhibit.  I've got

11  multiple copies to the extent the Court would entertain looking

12  at it.  And I also have a copy -- and I'm not sure of -- I know

13  how to share screen on Zoom, and I'm not sure if I have the

14  authority, if you will, to try to do that right now.  And I

15  don't want to connect to Zoom and create feedback, but I do

16  have the potential to also share it with the parties that are

17  appearing here on Zoom today with the Court's --

18          THE COURT:  Are you able to email it specifically to

19  anyone who has an active opposition --

20          MR. HAYS:  Yes, I can do that.

21          THE COURT:   -- to the confirmation?

22          MS. MARCH:  Yeah, I object.  A pleading needs to be

23  filed, not just emailed.  And the idea that it's going to be

24  emailed -- it hasn't been filed, it's going to be emailed, and

25  my firm is going to look at it on the fly, I think that is

**The Litigation Practice Group P.C.; Marshack v. Bayrooti**

25

1   inappropriate.  And it should have been filed long before this

2   because we --

3            THE COURT:  Ms. March.

4            MS. MARCH:  -- filed the objection.

5            THE COURT:  Ms. March, I don't want to be interrupted

6   again by you.  If you were making an evidentiary objection,

7   nobody is submitting any evidence.  And we're going to be

8   running this hearing in an orderly fashion for as long as it

9   takes.  And if it requires a continuance, that's fine too.  But

10  do not interrupt this Court again.

11           MS. MARCH:  What would be the appropriate time to make

12  evidentiary -- it was an evidentiary objection that it wasn't

13  evidence to just email it to people when it hasn't been filed.

14           THE COURT:  Okay.  Well, let me --

15           MS. MARCH:  What's the appropriate time to make an

16  objection?

17           THE COURT:  Let the Court instruct you.  When someone

18  says, Your Honor, I'd like to offer this into evidence, that's

19  when you say, I'd like to object.

20           MS. MARCH:  Yes, Your Honor.

21           THE COURT:  Thank you.

22           MS. MARCH:  I object.

23           THE COURT:  Okay.  Denied.  It hasn't been offered.

24  And quit disrupting this hearing, Ms. March.

25           Mr. Hays, I apologize for the interruption.

**The Litigation Practice Group P.C.; Marshack v. Bayrooti**

26

1          MR. HAYS:  Thank you, Your Honor.  So --

2          THE COURT:  So you're telling me that you have new

3    information for the Court; is that correct?

4          MR. HAYS:  In essence.  It's a summary of the things

5    that have happened.

6          THE COURT:  Let me ask you this.  Is that information

7    required to confirm the plan today?

8          MR. HAYS:  I don't believe it's required to confirm

9    the plan.  I believe the existing record is more than

10   sufficient to confirm the plan.

11         MR. HAYS:  So you have an update?

12         MR. HAYS:  This is only an update because somebody

13   objected on the grounds that we didn't provide this feasibility

14   analysis.

15         THE COURT:  Oh, I understand that.

16         MR. HAYS:  Yeah.  So this is merely in response or

17   rebuttal to the objection to show the current status.  There is

18   no new evidence.

19         THE COURT:  That's fine.  But Ms. March is absolutely

20   right.  We're not going to be emailing that to anybody.

21         MR. HAYS:  That's fine, Your Honor.

22         THE COURT:  Ms. March, I'm going to now address you.

23   And I want you to pay very close attention.  This Court knows

24   how to do a confirmation hearing.  It doesn't need to be

25   instructed by you how to hold a confirmation hearing.

1          Now, Mr. Hays has suggested to the Court, in a very
2    polite way, that he wants to provide new information to the
3    Court.  I'm not going to permit that.  Now, do you still want
4    to object to him wanting to do that, now that I've told you
5    that he isn't going to do it?

6          MS. MARCH:  Is it okay to speak?

7          THE COURT:  I am addressing you, Ms. March.  You don't
8    need to be --

9          MS. MARCH:  Thank you.

10          THE COURT:  -- obnoxious about this.

11          MS. MARCH:  I'm not trying to be obnoxious, Your
12    Honor.  I'm just trying to have admissible evidence and --

13          THE COURT:  Well, listen to me very carefully.  I am
14    not accepting the information he is giving in argument.  Okay.
15    He's not offering it for evidence.  And if he did offer it for
16    evidence, I would not accept it.

17          Now, is there any --

18          MS. MARCH:  Yes, Your Honor.

19          THE COURT:  -- other issue that you have with respect
20    to what Mr. Hays is discussing about new projections?

21          MS. MARCH:  I think he needs updated figures to be
22    able to confirm his plan today.

23          MR. HAYS:  Then you may address that issue when it's
24    your time to speak.

25          MS. MARCH:  Yes, Your Honor.  Thank you.

**The Litigation Practice Group P.C.; Marshack v. Bayrooti**

28

1          THE COURT:  Thank you.

2          Mr. Hays, continue.

3          MR. HAYS:  Thank you, Your Honor.  The plan proponents

4   provided a feasibility analysis, which was attached to the

5   disclosure statement, which was filed as docket number 1345.

6   And that appears on page 89 of 98, I believe.  And so there is

7   the feasibility analysis that has been provided that is before

8   the Court as part of the record here today.  It shows that the

9   Trustee will have over 580,000 dollars of cash remaining on the

10  effective date after making payments to projected amounts that

11  will need to be paid on the effective date.  The update that I

12  would provide based on the recent rulings by --

13         THE COURT:  You're not providing an update.

14         MR. HAYS:  Okay.

15         THE COURT:  I would rather you not even discuss it.

16         MR. HAYS:  Okay.  I'm not going to go there.  I think,

17  then, that what we can proceed with from the plan proponents'

18  point of view is there is evidence before the Court showing

19  that we can make all of the plan payments that need to be made

20  as of the effective date.  To the extent that anybody who

21  doesn't have an allowed administrative claim, such as Ms.

22  March's clients, who ultimately do receive an allowed

23  administrative claim after plan confirmation the plan

24  specifically provides that those administrative claims or

25  priority claims.  Will be paid within sixty days of entry of a

**The Litigation Practice Group P.C.; Marshack v. Bayrooti**

29

1   final order allowing them.  So the --

2           THE COURT:  And I want to make sure that the record is

3   clear, because I want to discover that you used the word "or".

4   You said administrative claims "or" priority claims.  Am I

5   correct about that?

6           MR. HAYS:  That is absolutely correct, Your Honor.

7           THE COURT:  Thank you.  Please proceed.

8           MR. HAYS:  Thank you.  So the objecting parties have

9   objected, arguing that reserves must be provided for in the

10  plan to cover asserted or disputed administrative claims.  We

11  do not believe that to be the law, and the law does provide for

12  the Court to look at the totality of the circumstances and

13  estimate what those claims might end up being, based on the

14  Court's familiarity with the pleadings.  And the largest of

15  those administrative claims was the 5-1/2 dollar -- 5.5-million

16  dollars of administrative claims asserted by Ms. March's

17  clients, which were recently disallowed by the Court this week.

18          THE COURT:  So let's talk about practicality and have

19  a discussion about that, Mr. Hays.  Let us suppose that this

20  Court's rulings on the administrative claims of Ms. March's

21  clients were to be overturned, were to be this Court being

22  reversed, and then they say, let's just give it the best-case

23  analysis for Ms. March's clients, that they say, oh, no,

24  they're entitled to 5.5 million dollars as an administrative

25  claim.  And that is discounting anything that they might do

Case 8:23-bk-10571-SC    Doc 1072    Filed 02/03/24    Entered 02/03/24 06:50:40    Desc
Main Document    Page 53 of 176
The Litigation Practice Group P.C.; Marshack v. Bayrooti

30

1   about ordering me to come back and redo it.  But just say that

2   they do have a claim today to confirm this plan, when they do

3   not have an allowed claim, do you have to have the funds

4   available today?

5           MR. HAYS:  No, Your Honor, we do not.

6           THE COURT:  Now, let's suppose that we confirmed the

7   plan today and six months from now, an administrative claim

8   comes up and it's revived for some reason.  What is the -- what

9   is the effect of that to this liquidating plan?

10          MR. HAYS:  Your Honor, it would become payable under

11  the terms of the plan within sixty days of entry of the final

12  order approving that claim, at which point it would have to be

13  paid in full in cash.

14          THE COURT:  And what would happen if the estate did

15  not have sufficient funds within that period of time under the

16  terms of the plan?

17          MR. HAYS:  I believe that the law is that the

18  administrative claims are all entitled to be paid pari passu on

19  par with each other, and if some administrative claimants had

20  been paid a hundred percent of their claims and other

21  administrative claimants had not been, then I believe it is the

22  law that the other administrative claimants who have already

23  received payment of interim fees would have to potentially

24  disgorge fees in order to equalize distributions at each level

25  of priority.

Case 8:23-bk-10571-SC    Doc 1072    Filed 09/03/24    Entered 09/03/24 06:50:40    Desc
Main Document    Page 54 of 176
The Litigation Practice Group P.C.; Marshack v. Bayrooti

31

```
 1          THE COURT:  Would this Court have the authority to do
 2   such disgorgement?
 3          MR. HAYS:  Yes, Your Honor.
 4          THE COURT:  And so there is a complete remedy for any
 5   administrative claim holder who has originally been denied, as
 6   of today, an administrative claim, but it is revived in the
 7   future to first of all be paid under the terms of the plan and
 8   if not because of lack of funds, there would be a remedy
 9   afforded to them by the Court taking action against other
10   administrative claimants to, if they've been paid, disgorge the
11   correct amounts or restrict payments to other administrative
12   claimants who have already been allowed but only giving them
13   their pro rata share?
14          MR. HAYS:  That is absolutely correct, Your Honor.
15          THE COURT:  Okay.  So any administrative claim holder
16   under this plan has a complete and full remedy if their
17   administrative claims are revived and come into existence in at
18   the future time?
19          MR. HAYS:  Yes, Your Honor.  That is correct.
20          THE COURT:  All right.  Thank you.  Please proceed.
21          MR. HAYS:  Thank you.  There was an objection that the
22   proposed exculpation provisions in the plan were inappropriate
23   or not authorized by law.  The plan proponents dispute that the
24   exculpation provisions specifically exclude any claims arising
25   from fraud, willful misconduct, or gross negligence, and that's
```

**The Litigation Practice Group P.C.; Marshack v. Bayrooti**

32

1   in the plan, part 4(b)(31), at pages 32 and 33.  That was put

2   in specifically at the request of the United States Trustee

3   that had objected to the form of the original exculpations, and

4   the United States Trustee, nor any other party has objected to

5   the existing form and provisions and extent of the exculpation.

6          The provision is also consistent with Ninth Circuit

7   law from the Yellowstone Club, which, I believe, the objection

8   had been filed by Mr. Blixseth, its former principal.

9          The objection by Ms. March's clients also take issue

10  that the liquidating trust does not require the liquidating

11  trustee to obtain and post a bond.  There is no requirement in

12  law for that to occur.  And the liquidating trust is a grantor

13  trust, and there is no provision of nonbankruptcy law requiring

14  that the trustee of a grantor trust post a bond as a condition

15  of serving.  So we believe that objection fails and does not

16  result in denial of confirmation.

17         And there was also an objection by Ms. March's clients

18  that there was basically no reason to have a liquidating trust

19  and that everything should just remain property of the

20  bankruptcy estate and stay in the bankruptcy court.  And again,

21  we believe and the plan proponents believe that the cheaper and

22  more efficient solution, which will maximize payments to

23  creditors and minimize administrative expenses, is to proceed

24  by way of the proposed liquidating trust.  And so again, it's

25  not a ground to deny confirmation of a plan.  And the proposed

```
 1   implementation of the plan is something that is commonly
 2   accepted and confirmed by various courts.  So --
 3              THE COURT:  Mr. Hays.
 4              MR. HAYS:  Yes.
 5              THE COURT:  We will be hearing later from the
 6   representative of the Office of the United States Trustee.
 7              MR. HAYS:  That is correct.
 8              THE COURT:  Although I don't see that representative
 9   on the Zoom, and Ms. Ng is not here in court.
10              MR. HAYS:  I see Ms. Ng on my Zoom.
11              THE COURT:  I'm not getting a full -- there she is.
12   Okay.  I'm not getting the full group.  I see her now.  Thank
13   you.
14              So we'll be hearing from her later.  But it is your --
15   is it your understanding that now the United States Trustee,
16   the watchdog of the bankruptcy system and for years have come
17   before me objecting to exculpation clauses and injunctions that
18   are offered in proposed plans of liquidation or plans of
19   reorganization, do you believe it is their view that the
20   current exculpation and injunctive relief provided in the plan
21   is acceptable to the United States Trustee?
22              MR. HAYS:  That is our understanding, Your Honor.
23              THE COURT:  All right.  And again, we will be
24   listening to the U.S. Trustee later.  But thank you very much
25   for that.
```

34

1          Now, one more thing.  The decision of Purdue Pharma by

2    the Supreme Court has been raised in objections.  And so now I

3    ask you to tell me whether or not I'm misreading Purdue Pharma

4    when I say that Purdue Pharma was a very narrow decision and

5    that there's very little, if anything, to do with the decision

6    of Purdue Pharma as it connects to this proposed plan of

7    liquidation.  And I'd like you to amplify on that.

8          MR. HAYS:  Thank you, Your Honor.  We don't believe

9    that the Supreme Court's recent decision in Purdue Pharma has

10   any application to the case before the Court.  My understanding

11   of Purdue Pharma is that the Supreme Court held that a

12   bankruptcy court did not have the ability or authority to

13   confirm a plan that extinguished a nondebtor's claim against a

14   nondebtor third-party.

15          And under that context of and my understanding of that

16   decision, we and through this plan are not extinguishing any

17   third party's claim against a third party, as was discussed and

18   prohibited by the Purdue Pharma decision.  And instead, this

19   proposed exculpation is narrowly limited, and there is Ninth

20   Circuit case on it.  Again, it's the Blixseth v. Credit Suisse

21   case, which approves exculpation for the professionals that

22   were involved in proposing and confirming the plan.  And as

23   long as it does not release those professionals from willful

24   misconduct or gross negligence, then those are appropriate

25   provisions of a plan and there's --

**The Litigation Practice Group P.C.; Marshack v. Bayrooti**

35

1          THE COURT:  Or fraud.

2          MR. HAYS:  What's that?

3          THE COURT:  Or fraud.

4          MR. HAYS:  Or fraud.  Exactly.  That was the third

5     category.  Thank you.  And nothing in the Purdue Pharma

6     overrules those lines of cases with respect to exculpation

7     provisions.

8          THE COURT:  Thank you.

9          MR. HAYS:  So lastly, I don't believe we've covered

10    crammed down in its totality yet.  But if there is an impaired

11    class that has not voted to accept the plan, then the Court has

12    the ability to nevertheless confirm the plan as long as the

13    class is not unfairly discriminated against and the plan

14    provisions are fair and equitable.  And here, the --

15         THE COURT:  Well, let's finish that sentence.

16         MR. HAYS:  Yes.

17         THE COURT:  Fair and equitable with respect to each

18    nonaccepting impaired class.

19         MR. HAYS:  Yes.  Thank you.  So the two classes of

20    unsecured creditors have voted to accept.  So I think where the

21    cramdown provisions come into play and should be discussed are

22    with respect to the classes of secured creditors.  And the

23    class 1(a) -- well, to take one step back, the plan provides

24    that any alleged secured creditor will retain their alleged

25    lien and their alleged rights, and if they ultimately do

Case 8:23-bk-10571-SC   Doc 1072   Filed 09/03/24   Entered 09/03/24 06:50:40   Desc
Main Document      Page 59 of 176
The Litigation Practice Group P.C.; Marshack v. Bayrooti

36

1   prevail that they have a secured claim, then those creditors

2   will be paid.  So they're not being unfairly -- they're not

3   being treated inequitably because they're keeping all of their

4   alleged rights and ability to assert liens against property of

5   the bankruptcy estate.  Specifically, the class 1(a) class of

6   the plan which contains the creditor --

7        Well, let me take one more step back.  As far as

8   classification goes, the classes of secured creditors are six

9   in number, classes 1(a) through class 1(f).  And the plan

10  proponents put each secured creditor in their own class because

11  they each have certain rights under certain documentation, and

12  they each have different levels of priority with respect to

13  their asserted rights.  And so the plan does not seek to alter

14  any of those rights.  And with respect to class 1(a), which is

15  Bridge, which did not vote in favor of the plan, the Court

16  recently granted summary judgment to the trustee disallowing

17  that claim.  So I don't believe that there's anything that's

18  discriminatory or unfair or inequitable with respect to the

19  Court confirming the plan with respect to that class because

20  they now no longer have a secured claim.

21        Class 1(b) is Azzure, represented by Ms. Weiss, who

22  has appeared here today.  Azzure has separately consented to

23  the trustee's use of existing cash, and in exchange, they will

24  receive a replacement lien on assets that will also extend to

25  litigation recoveries.  And the Court has approved that

The Litigation Practice Group P.C.; Marshack v. Bayrooti

1    stipulation.  And they do not object to their treatment here.

2    And there's nothing unfair or inequitable about them retaining

3    their rights.  The parties will attempt to settle.  If we don't

4    settle, we will litigate the issue, and the Court will resolve

5    it.  If Azzure prevails in that litigation, it will have a lien

6    on all assets, and it will be paid in its order of priority.

7    So there's, again, nothing unfair or discriminatory, and we

8    believe that the Court can and should confirm the plan with

9    respect to Azzure.

10            Class 1(c) is Diverse, that the plan provides that

11   they retain their liens, but the trustee has recently entered

12   into a settlement with Diverse, and they will receive a certain

13   amount of cash on the effective date with respect to their

14   allowed secured claim.  And they'll receive a right to retain

15   future payments off into the future.  So again, there's nothing

16   unfair or discriminatory, and we believe that the Court can and

17   should confirm the plan with respect to class 1(c)

18            With respect to class 1(d), that's OHP's claim,

19   represented by Mr. Izakelian, who is present at the hearing

20   today, the trustee recently settled that matter.  They support

21   the plan.  Voted in favor of the plan.  So we think that that

22   can and should be done by way of consent.

23            Class 1(e) is PECC, P-E-C-C.  The trustee recently

24   obtained summary judgment avoiding their alleged lien as a

25   preferential transfer.  So we believe that the cramdown

**The Litigation Practice Group P.C.; Marshack v. Bayrooti**

38

1    requirements have been met there because they no longer have a

2    lien as of now.  They could obviously try to go appeal or do

3    something, but they've retained all of their rights.

4         Lastly, it's class 1(f) of any other creditors that

5    had asserted secured claims.  Again, they've all retained their

6    rights, but the trustee has a vote in favor by that class,

7    which is MNS.  And the trustee has an agreement with MNS.  And

8    I believe the trustee has obtained orders disallowing the other

9    claims.  But again, if any of those orders were appealed and

10   reversed, they still retain their rights under the plan.  So we

11   believe that the elements for the Court finding that they have

12   not been unfairly discriminated against and they're being

13   treated fairly and equitably have been met.

14        And then the last thing that I think deserves maybe

15   fifteen seconds is Section 1129(d) requires that a plan may not

16   be proposed for the principal purpose of avoiding tax.  That's

17   not what's been done here, and we don't believe that that

18   really has any application to what's in front of the Court.

19        So for all of these reasons, the plan proponents

20   believe that the plan can and should be confirmed.  And I know

21   that Mr. Koffroth, on behalf of the committee, had some

22   comments that he would like to make in support of the joint

23   plan.

24        THE COURT:  I have a few more questions.

25        MR. HAYS:  Yes.

**The Litigation Practice Group P.C.; Marshack v. Bayrooti**

39

1          THE COURT:  I'm concerned about not only the objection

2     that has been raised with respect to the effective date, but my

3     own concern.  The effective date has a condition precedent or

4     several.  It states that the effective date will be the first

5     business date, that is, fourteen days after satisfaction or

6     waiver pursuant to the provisions of section Roman IV(k)(3).

7     And there is a list there of the conditions.  The Court, first

8     of all, has to enter a confirmation order, and that order

9     hasn't been terminated, suspended, vacated, or stayed.

10          And we have to provide in that confirmation order the

11     trustee and the liquidating trustee may take all actions

12     necessary to implement the plan.  There has to be a decree that

13     the provisions of the confirmation order and the plan are

14     nonseverable and mutually dependent.  There has to be an

15     authorization that the trustee and the liquidating trustee make

16     all distributions required under the plan.

17          But the one I'm mostly concerned about is B,

18     sufficient funds being available in the estate to pay claims

19     that must be paid on the effective date, including allowed

20     administrative claims and allowed priority claims.  And here's

21     my question.  With the evidence before the Court today, when

22     will the plan or the estate be able to have sufficient funds to

23     pay the claims that must be paid on the effective date with

24     respect to the evidence before the Court today?

25          MR. HAYS:  Your Honor, with respect to the evidence

**eScribers, LLC**

1   before the Court today, we believe that the effective date can

2   be as early as November 1st of 2024.

3       THE COURT:  And with the evidence that we have before

4   us today, how do you draw that conclusion?

5       MR. HAYS:  By looking at the cash on hand that the

6   trustee has already in possession and by looking at the what we

7   believe to be imminent recoveries from litigation and then

8   comparing the total amount of cash that we believe we will have

9   by October 31st of 2024 to the various different expenses that

10  must be paid on the effective date, which include professional

11  fees.  It includes the superpriority administrative loans that

12  the estate borrowed, which will be repaid in full on the

13  effective date.  It includes the secured creditors who now have

14  allowed secured claims, mostly by way of court-approved

15  settlements.  And looking at the people who already have

16  allowed priority claims and the like, we get to a position

17  where the estate has or will have cash that will be 11,067,000

18  dollars compared to the --

19      THE COURT:  I'm sorry.  11,000,067 dollars?

20      MR. HAYS:  67,000.

21      THE COURT:  Thank you.

22      MR. HAYS:  Less the projected expenses of 10,487,000,

23  and all of this is in exhibit A to the disclosure statement,

24  which leaves ending cash of 580,000 dollars.

25      And I would also note that this is a conservative

**The Litigation Practice Group P.C.; Marshack v. Bayrooti**

41

1  projection because the amount of professional fees set forth in

2  this feasibility analysis includes the amounts that will have

3  accrued through the effective date.  But the professionals are

4  all in the process of filing first interim fee applications and

5  setting them for hearing in late September, and under the local

6  rules, you can't file multiple interim fee apps in less than --

7  I forget if it's 90 or 120 days.  So what we're anticipating is

8  the amount of fee apps that will be filed in gross.  And the

9  Court may not allow them in the amounts requested, but if all

10  of the amounts were allowed as requested, that number is going

11  to be 2.5-million dollars or so less than the amount that we

12  have provided for in the feasibility analysis, meaning we will

13  end up having 3,080,000 dollars of projected funds available on

14  the effective date of the plan.

15        THE COURT:  Who declares under the terms of this plan

16  when the effective date conditions are met?

17        MR. HAYS:  It would be within the trustee's authority

18  and discretion to say, I now have enough money that is

19  unencumbered, and I'm in a position to pay all of the allowed

20  claims which have been allowed by court order.  And therefore,

21  I can declare the plan to be effective and implement all of the

22  payments that need to be made to the various parties.

23        THE COURT:  So you're expecting that to be a

24  discretion on behalf of the trustee and not a requirement?

25        MR. HAYS:  That's the way I believe the plan is

42

1   proposed.  It is entirely up to the Court, however, to make

2   that --

3           THE COURT:  Yes.  It's unacceptable --

4           MR. HAYS:  Okay.

5           THE COURT:  -- to the Court.  It is completely

6   unacceptable to the Court that I give a trustee or anyone else

7   that's managing a plan the unfettered discretion to determine

8   whether or not it should go effective.  I cannot do that.

9   It was raised also in Ms. March's papers, and I did it

10  individually.  I will not do it.

11          You're going to have to have some benchmark and

12  trigger and mandatory requirement.  We're not going to allow a

13  trustee to indiscriminately decide whether a plan should go

14  effective or effective or not, depending on outside forces or

15  outside considerations that this Court can appreciate and would

16  have no control over.

17          So what do you propose to do today to amend or resolve

18  my problem on the benchmark for the Trustee to declare the

19  effective date?

20          MR. KOFFROTH:  Your Honor, two items immediately come

21  to mind.

22          THE COURT:  You know what we should do?  We've been

23  doing this for approximately an hour and ten minutes.  We will

24  take a ten-minute break.  And you will come back to me, and we

25  will continue this discussion.  But what we'll do is

**The Litigation Practice Group P.C.; Marshack v. Bayrooti**

43

1  specifically tell me what exactly you're going to do about my

2  problem.

3  MR. HAYS:  Understood, Your Honor.  Thank you.

4  THE COURT:  Thank you.

5  Court is in recess until ten minutes from now.

6  (Recess from 11:13 a.m., until 11:43 a.m.)

7  THE CLERK:  Please remain seated and come to order.

8  This United States Bankruptcy Court is again in session, the

9  Honorable Scott C. Clarkson, bankruptcy judge, presiding.

10  THE COURT:  Mr. Hays.

11  MR. HAYS:  Yes.

12  THE COURT:  How can I help you?

13  MR. HAYS:  Your Honor, I think the plan proponents

14  have a proposed solution.  And the proposed solution would be

15  and the plan provides that the confirmation order can make

16  nonmaterial changes to what's set forth in the plan.  The

17  professionals have and the plan proponents have all agreed that

18  that provision, which is provision B appearing on page 49 of

19  109, in the plan, which is docket number 1344.

20  THE COURT:  Well, one second.

21  MR. HAYS:  Yeah.

22  THE COURT:  Let me pull it up.  1344?

23  MR. HAYS:  Is the docket number.  Page 49 of 109.

24  UNIDENTIFIED SPEAKER:  We're back on.

25  THE COURT:  Okay.  I'm on page 49.  I'm sorry.  Page

Case 8:23-bk-10571-SC   Doc 1072   Filed 09/03/24   Entered 09/03/24 06:50:40   Desc
Main Document    Page 67 of 176
**The Litigation Practice Group P.C.; Marshack v. Bayrooti**

44

1   49 of --

2             MR. HAYS:  Of 109.

3             THE COURT:  I'm sorry.

4             MR. HAYS:  The top Bates stamp, which the --

5             THE COURT:  I am there now.

6             MR. HAYS:  -- bottom page number is 43.

7             THE COURT:  All right.

8             MR. HAYS:  On lines 3 and 4, which is provision B,

9    which is a condition precedent to the effectiveness of the

10   plan, reads as follows.  "Sufficient funds being available in

11   the estate to pay claims that must be paid on the effective

12   date, including allowed administrative claims and allowed

13   priority claims".  The plan proponents would propose that the

14   Court enter an order confirming the plan that does not include

15   that provision and does not approve that provision and instead

16   will provide that the plan will become effective the first

17   business day after fourteen days after entry of the order

18   confirming the plan.  So in theory, if the plan were -- a

19   confirmation order were entered today, we would go effective in

20   fifteen days.  And --

21            THE COURT:  And so that solves my problem of allowing

22   someone to have discretion on the effective date?

23            MR. HAYS:  Yes.

24            THE COURT:  So you're telling me that you would like

25   to amend the -- or include in the order striking out of the

Case 8:23-bk-10571-SC   Doc 1072   Filed 09/03/24   Entered 09/03/24 06:50:40   Desc
Main Document     Page 68 of 176
**The Litigation Practice Group P.C.; Marshack v. Bayrooti**

45

1   provision in the condition precedence B and insert somewhere, I

2   don't care where, that the effective date will be fourteen days

3   following entry of confirmation order unless stayed?

4          MR. HAYS:  It would be the first business day after

5   fourteen days, so if it --

6          THE COURT:  I understand.

7          MR. HAYS:  Yeah.  Okay.

8          THE COURT:  If it falls on a Saturday or Sunday or a

9   holiday, it'll be the day after.

10          MR. HAYS:  That is correct.

11          THE COURT:  Okay.

12          MR. HAYS:  And then separately to account for

13   professional fees which will not yet be approved, because we're

14   aiming for hearings in the end of September, there wouldn't be

15   a nonmaterial modification that would need to happen to the

16   plan that would address the timing for transfer of property of

17   the bankruptcy estate to the liquidating trust.  And right now,

18   the plan provides on page 28 of 109 at the top Bates stamp

19   of --

20          THE COURT:  One second.  Let me find it.

21          MR. HAYS:  Yeah.

22          THE COURT:  Page 27?  I'm there.

23          MR. HAYS:  28 of 109, starting at line 11, number 3,

24   transfer of property to the liquidating trust.  Right now, it

25   reads, "on the effective date on line 12.  And I'll summarize

Case 8:23-bk-10571-SC   Doc 1072   Filed 02/03/24   Entered 02/03/24 06:50:40   Desc
Main Document     Page 69 of 176
**The Litigation Practice Group P.C.; Marshack v. Bayrooti**

46

1  slightly, rather than reading the entire paragraph.  "All of

2  the property shall be deemed irrevocably transferred to the

3  liquidating trust".  And then if you skip down to lines 19 and

4  20, except as set forth in the plan confirmation order.

5       And what we would propose is that the plan goes

6  effective.  It pays all nonprofessionals that are entitled to

7  be paid as of the effective date, but the transfer of property

8  from the bankruptcy estate to the liquidating trust would be

9  deferred until the Court rules on professional fees, allows

10  professional fees, and anything that is allowed is paid to the

11  professionals, at which time the property would then -- the

12  excess monies would then be transferred to the liquidating

13  trust.  So we'll basically be holding a reserve for the

14  professional fees to be allowed until --

15       THE COURT:  Within the estate?

16       MR. HAYS:  Within the estate until such time as they

17  are allowed to be paid, at which point they will all be

18  transferred to the liquidating trust.

19       THE COURT:  And since the trustee of this estate and

20  the administrator of the liquidating trust, or the trustee of

21  the liquidating trust, not to be confusing, is the same person,

22  they will have that authority?

23       MR. HAYS:  Yes, Your Honor.  And then lastly, because

24  holders of allowed administrative claims have to be paid on the

25  effective date, the professionals all understand and agree that

1    the plan will go effective without them yet having allowed

2    administrative claims.  So the trustee's professionals, the

3    committee's professionals are all going to allow the plan to go

4    effective knowing that they will not be paid on the effective

5    date, that the Court will hear and approve fees which will then

6    be paid, and then the balance of the money will be transferred

7    to the liquidating trust.  So we can speed up this process.

8            THE COURT:  Have you obtained all of those consents?

9            MR. HAYS:  We have consents from the professionals

10   here today, which is my firm, the Marshack Hays Wood LLP firm,

11   the Dinsmore firm, the committee's counsel at Fox Rothschild,

12   who Mr. Koffroth and Mr. Owens are here, and the committee's

13   financial analyst Force 10.  Mr. Meislik is here.  Those

14   professionals have all understood and agreed to this.  And the

15   plan --

16           THE COURT:  Who are we missing?

17           MR. HAYS:  I don't know if we're --

18           THE COURT:  Is the moderator --

19           MR. HAYS:  Grobstein Teeple.

20           THE COURT:  Is the monitor involved in this, the

21   monitor of consumer affairs?

22           MR. HAYS:  The monitor would not be involved in this,

23   and any fees that are already allowed for the monitor would get

24   paid to the monitor without any deferral or waiting period.

25           THE COURT:  Okay.  So tell me who is missing in that

48

1  list.

2       MR. HAYS:  I think that the Grobstein Teeple firm are

3  accountants to the trustee.  But again, the plan provides that

4  the effective date payments are only made to people who are

5  holders of allowed claims, and no retained professional yet has

6  an allowed claim.  So the plan as drafted already contemplates

7  and provides that nobody gets paid till the Court approves it.

8  And those are the people that will, in essence, be affected but

9  not really affected by this going effective sooner.  Said the

10 word "effective" too many times.

11      But the point is that this will all happen faster.

12 This is not a material change because the language of the plan

13 already requires there to be allowed claims before payment.

14 And the only real change to the plan, besides deleting the

15 provision of discretion in the trustee to go effective, will be

16 that there will be the delay in the transfer and funding of the

17 trust.

18      THE COURT:  Okay.  So let me eliminate another

19 ambiguity, if I may.

20      MR. HAYS:  Yes.

21      THE COURT:  There is no discharge being afforded under

22 this liquidating plan; is that correct?

23      MR. HAYS:  That is correct.

24      THE COURT:  And all the assets sooner or later will be

25 transferred to the liquidating trust, correct?

49

 1          MR. HAYS:  That is absolutely correct.

 2          THE COURT:  So if, for instance, someone were to --

 3   will there be an injunction against any lawsuits in the future

 4   against LPG?

 5          MR. HAYS:  No.

 6          THE COURT:  Okay.  So what assets would be available

 7   to someone who decided to sue LPG because they don't have an

 8   injunction and there's no injunction against those suits?  How

 9   do they get to the trust?

10          MR. HAYS:  The trust is -- the beneficiaries of the

11   trust are going to be the holders of allowed claims so --

12          THE COURT:  Yes, but what if in the future there is a

13   person out there who didn't get notice of this bankruptcy and

14   didn't get a notice of the barred date and didn't get an

15   opportunity to file a proof of claim, they then sue LPG, and

16   they obtain a judgment.  Who do they see about collecting the

17   judgment?  You see, this is something that the Greyson people

18   have raised, the need for the liquidating trust.  And they

19   didn't specifically identify that particular problem.  But when

20   I carefully read the objection, I recognized that that might be

21   one of the more significant issues that we need to address.

22          MR. HAYS:  I see Mr. Koffroth has a thought, Your

23   Honor, and maybe I'd defer to him while I look up language in

24   the plan to see if the plan already addresses that possibility.

25          THE COURT:  Okay.  That would be fine.  And now what

50

1    we will do is talk to the other plan proponent representative

2    Mr. Koffroth of the unsecured creditors committee

3    representation.

4          MR. KOFFROTH:  Thank you, Your Honor.  Nicholas

5    Koffroth, Fox Rothschild, for the committee.  The one issue

6    that I was trying to flag was we have been keenly aware

7    throughout the course of this case that the list of creditors

8    is significant and that the scheme that was going on pre-

9    petition was widespread throughout the United States.  As a

10   matter of ensuring as best as possible that we could provide

11   notice -- we did provide notice to everyone with whom the

12   debtor had records, which was significant, through whatever

13   means necessary.  And that's including notice of the claims bar

14   date and notice of the confirmation hearing.  Notice of the

15   disclosure statement.

16         In addition to that, we also insisted, and both

17   professionals insisted, both estate representatives insisted,

18   that there be publication notice of the claims bar date and

19   publication notice of the confirmation hearing.  Both of those

20   notices were published as indicated on the -- I believe it's

21   the declaration of -- the proof of the solicitation material is

22   docket number 1449.  I believe there's a separate notice of

23   publication as well in this case.

24         So we've attempted as best as possible to provide

25   widespread notice to all potential claimants in advance.  And

1    that's one thing that we did want to flag.  This has been kind

2    of prospectively addressed as best as we can.

3         THE COURT:  I don't think you're answering my

4    question.  Were you planning on answering my question, or is

5    that left to another person?

6         MR. KOFFROTH:  Well, to finish the thought, Your

7    Honor, the fact that there has been widespread publication

8    notice as much as possible, we believe at this point we have

9    channeled as much as possible --

10        THE COURT:  I believe you probably have.  Now, answer

11   my question.  What do you do when a person sues and there is no

12   discharge and they get a judgment against the debtor?  Does the

13   money come from the trust?  In other words, are they a -- let's

14   assume that the suit is based upon a pre-petition claim.  Does

15   the money come from the trust, or does it get sent over to the

16   former Chapter 11 trustee, now the trustee of the trust, and

17   the trustee of the Chapter 11 trust says, not my problem.  It's

18   a late filed claim, but they show and I determine that they

19   didn't get notice appropriately for some reason.  Maybe they

20   didn't discover their injury.  Even though the injury occurred

21   pre-petition, they didn't discover it until weeks, days and

22   months, years after the confirmation of this case and the

23   effective date.  How do they recover money on their judgment?

24   I'm not arguing with you.  I'm asking you a practical question.

25        MR. KOFFROTH:  At this point, Your Honor, the trust

Case 8:23-bk-10571-SC   Doc 1072   Filed 09/03/24   Entered 09/03/24 06:50:40   Desc
Main Document    Page 52 of 176
**The Litigation Practice Group P.C.; Marshack v. Bayrooti**

52

1   does not provide a mechanism to send funds back into the estate

2   for such a claimant.  The position would be that they are

3   indeed claim barred.  The trustee, in addition to what has been

4   performed as far as noticing, also filed an omnibus proof of

5   claim at the insistence of a number of state attorneys general,

6   and those claimants may be included within that proof of claim.

7           THE COURT:  Yes, but those aren't subject to my

8   hypothetical.

9           MR. KOFFROTH:  That's correct, Your Honor.

10          THE COURT:  And whose phone is vibrating?

11          MR. KOFFROTH:  I think that's my phone, Your Honor.

12          THE COURT:  Well, it could be.  Thank you.  Keep

13  going.  You have to address my hypothetical.  A person who I

14  would -- let's assume I rule.  They didn't get noticed.  They

15  were not able to get notice.  They have a judgment now that was

16  undefended by the debtor.  And it's a clear pre-petition

17  obligation that's turned into a judgment.  How do they get

18  paid?

19          MR. KOFFROTH:  If they are determined to be a claimant

20  in this case, the plan provides that they would receive a trust

21  beneficial interest and be treated the same as any other

22  claimant.

23          THE COURT:  Just point out to me where the plan is,

24  and I'll be satisfied.

25          MR. KOFFROTH:  Yes, Your Honor.  It is both in the

1  definition of trust beneficial interest, which you can find at

2  ECF page number 71 onto 72 of docket number 1344, which is the

3  plan.

4          THE COURT:  So I should go to page 71?

5          MR. KOFFROTH:  Yes Your Honor.

6          THE COURT:  Okay.  And where should I look?

7          MR. KOFFROTH:  Paragraph 88, the definition of trust,

8  beneficial interest.

9          THE COURT:  So to make it perfectly clear, this

10 provision allows someone who acquires a judgment after the

11 effective date and after the funds go from the estate to the

12 trust to still be included in a trust for any appropriate

13 distribution?

14         MR. KOFFROTH:  Yes, Your Honor.

15         THE COURT:  Thank you.  Do you have anything else to

16 add?

17         MR. KOFFROTH:  Nothing additional, Your Honor.  Thank

18 you.

19         THE COURT:  All right.  Ms. March, you have provided

20 the Court with extensive, comprehensive, excellent observations

21 and objections to the confirmation of this plan.  I appreciate

22 your patience.  And the floor is now yours.

23         MS. MARCH:  Thank you, Your Honor.  First, I want to

24 start by commenting on some things that Mr. Hays said.  He

25 referred to the fact that the motions for allowance and payment

54

1    of administrative expense under 503(b)(1)(A) of my firm's

2    clients, Greyson Law Center PC, Han Trinh, and Jayde Trinh,

3    were denied by the Court.  That is correct.  They were denied

4    on 8/27/24.  I don't usually make -- oh, by the way, Han and

5    Jayde Trinh also had timely filed pre-petition proofs of

6    claims, which are no one objected to and are not effective.

7         But I don't usually make predictions, but I will

8    predict that, A, that those rulings, the denial of the three

9    administrative claims, are reversible error and that a

10   appellate court will not agree that Greyson is entitled to zero

11   administrative claim when Greyson deployed -- Greyson's

12   attorneys at the request of LPG, alter ego Phoenix (phonetic),

13   to defend over 2,480 superior court suits where LPG clients

14   were being sued for consumer debts.  And then the trustee got

15   all the files back from Phoenix by the avoidance stipulation

16   and sold those.

17        So I don't usually predict, but I will predict that.

18   And I'll also point out I can't think of a single case where W-

19   2 employees of the debtor who did services post-petition were

20   not allowed wage claims for their post-petition services.  But

21   that, of course, will be up to appellate courts.

22        The next thing I want to point out is that Mr. Hays

23   talked extensively about, well, if it turns out there's not

24   enough money to pay allowed administrative claims a hundred

25   percent.  Of course, the 1.3 million of tax claims also have to

**The Litigation Practice Group P.C.; Marshack v. Bayrooti**

55

1   be paid a hundred percent.  But if there's not enough money,

2   then he says, well, fees that were allowed on an interim basis

3   to professionals could be recovered or to other administrative

4   claimants, and then everything could be paid pro rata.

5        That that is not correct under the plan.  The plan

6   provides that allowed administrative plans will be paid a

7   hundred percent.  And it says, well, under 11 U.S.C.

8   1129(a)(9)(A), a plan has to pay cash equal to allowed

9   507(a)(2) and 507(a)(3) claims, and 507(a)(2) claims are

10  include administrative expenses allowed under a 503(b).  So

11  those have to be paid a hundred percent.  There is no option.

12  It violates 11 U.S.C. 1129(a)(9)(A) if the plan is not able,

13  does not pay one hundred percent of allowed administrative

14  claims.

15       So there's no option of, oh, well, we'll redistribute

16  money and recover money and pay pro rata.  That would be a

17  default in the plan if the plan does not have the money to pay

18  a hundred percent.  So what Mr. Hays suggested was the solution

19  is simply a wrong.  Under 1129(a)(9)(A), it has to be payment

20  of one hundred percent of allowed administrative claims.

21       The next thing that I want to -- that there was a

22  discussion of that I want to comment about was Purdue Pharma,

23  the U.S. Supreme Court case.  Blixseth, which Mr. Hays referred

24  to, it's a circuit case and it's out-of-date in light of Purdue

25  Pharma.  Purdue Pharma, this is how he described Purdue Pharma,

Case 8:23-bk-10571-SC    Doc 1072    Filed 02/03/24    Entered 02/03/24 06:50:40    Desc
Main Document    Page 79 of 176
The Litigation Practice Group P.C.; Marshack v. Bayrooti

56

1    that Purdue Pharma says you cannot exculpate the claim of a

2    third party against another third party.  Greyson is a third

3    party, not a debtor.  And Trustee Marshack, his attorneys, his

4    agents, his employees, all of those are not debtors either.

5    They're third parties.

6          So exculpation clause is not allowable.  And not only

7    is it not allowable under Purdue Pharma, it should not be

8    allowed as a matter of policy because a exculpation clause,

9    even though at the urging of the U.S. Trustee, the plan says,

10   oh well, okay, we won't have an exculpation clause of and fraud

11   and intentional misconduct, but why give a pass on -- or gross

12   negligence, why give a pass on negligence?  That's just an

13   encouragement of people to be negligent.  So I believe, I would

14   say, that pursuant to Purdue Pharma, any exculpation clause

15   makes confirming this plan reversible error.

16         Now, the next thing that I want to talk about is this

17   effective date of the plan thing.  I'm concerned about the

18   plan.  This is docket 1344.  Page 43.  If the Court would turn

19   to page 43, please, of the plan and look at paragraph 3, which

20   is short.  So I'll read it into the record.  Is the Court

21   there?

22         THE COURT:  I can follow instructions.

23         MS. MARCH:  This is what paragraph 3 says at page 43:

24   "Waiver of conditions.  The conditions to consummation and to

25   the effective date set forth in the above may be waived by the

**The Litigation Practice Group P.C.; Marshack v. Bayrooti**

57

1   plan proponents without notice, leave, or order of the

2   bankruptcy court or any formal action other than proceeding to

3   confirm or consummate the plan."  Okay.

4          That's the broadest discretion I've ever seen.  That

5   just says, oh, well, okay.  We can get rid of the conditions of

6   confirmation.  We can get rid of the conditions for effective

7   date, everything before, like having enough money to pay claims

8   on the effective date.  It says they can waive all that stuff

9   that is in the paragraph that the Court was looking at earlier,

10  which is paragraph 2, page 42 of the plan, to paragraph 3, down

11  to right above paragraph 3.  That is, hey, with this plan, we

12  won't need a court at all.

13         THE COURT:  Well, may I ask you a question?  If I

14  struck that, would you be satisfied with that argument?

15         MS. MARCH:  Well, that needs to be stricken, but that

16  doesn't solve the problem of saying, okay, well, this

17  plan'll -- the effective date'll be fifteen days after the plan

18  is confirmed, whether or not there are sufficient funds to pay

19  the claims that have to be paid a hundred percent on the

20  effective date.  All that does is if, say they don't need the

21  money, they can have an effective date without having the money

22  to pay claims, such as allowed administrative claims that have

23  to be paid a hundred percent on the effective date.  So no.

24         THE COURT:  Okay.  What's your next argument?

25         MS. MARCH:  The next thing I'd like to point out is we

1   don't know how many dollars of fee applications the

2   professionals will file, which Mr. Hays said they'll be filing

3   soon.  So we don't know how many dollars of fee applications

4   will be filed by Trustee Marshack, by the Marshack Hays firm,

5   by the Dinsmore firm, by the creditors committee firm, by the

6   accounting for all of those, by any other people that can file

7   fee applications.

8         So without at least waiting to see how many dollars of

9   fee applications are filed, which, according to Mr. Hays, will

10  be pretty soon, there is no way of determining whether there

11  will be money to pay allowed administrative claims, the 1.3-

12  million-dollar tax claims, and all the fee applications if

13  allowed, there's no way of determining if there's going to be

14  enough money and which is a -- which is a -- I would suggest

15  that the Court should continue confirmation until after those

16  are at least filed, maybe until after they're allowed.  But in

17  addition, that the plan proponent has the burden of showing

18  that there is enough money to pay items that must be paid a

19  hundred percent.  And there is no we-can-just-pay-pro-rata

20  option.  That would violate 11 U.S.C. 1129(a)(9)(A).

21        So there is no -- the only liquidation analysis is the

22  one that is attached to the disclosure statement.  Mind you,

23  not attached to the plan.  It's attached to the disclosure

24  statement.  It's in docket 1554 filed -- no, that's the wrong

25  one.  It was filed on the same day as the docket 1344 plan was

Case 8:23-bk-10571-SC   Doc 1072   Filed 02/03/24   Entered 02/03/24 06:50:40   Desc
Main Document   Page 82 of 176
The Litigation Practice Group P.C.; Marshack v. Bayrooti

59

1   filed.  And so that was on 6/14/24.  So that is very out-of-

2   date.

3          So as the objection that my firm filed for Greyson,

4   Han, and Jayde points out, a lot of things have changed.  I

5   attached the trustee's status report for the Chapter 11 status

6   report.  I think that's for today.  And it talks about and

7   we've seen in PACER as there have been many compromises

8   reached.  So there's no longer forty-seven-million dollars of

9   secured claims, and there's some different number than what's

10  in the plan for administrative claims.  But we don't actually

11  know the numbers because the plan proponents have not done the

12  math.  And it's their burden to show that they have enough

13  money, and they haven't done the math.

14         And the other thing is, I can't imagine that they

15  would want a plan confirmed that has forty-seven-million-

16  dollars of secured claims as their clear claim amount, in a

17  larger amount than there presently should be due to compromise

18  of administrative claims because if a plan is confirmed, it

19  binds everybody.  So why would they want a plan confirmed

20  that's got outdated, unduly high figures for things they have

21  to pay?  I mean, that's just, it's just common sense that the

22  plan needs to be updated.

23         And I also noted, there are still -- well, let's see.

24  There was the Anthem motion to compromise.  That was heard

25  today.  But there are some motions to compromise that have been

1    continued and won't be heard September, I think, or like,

2    September 11th, up to mid-September.  So the fact is that the

3    plan needs to it needs to be updated.  What can be -- what is

4    going to be done about compromises reached later?  If the plan

5    is confirmed, everybody is bound by what's in the plan.

6          And that's going to be -- that's going to be

7    disadvantageous, very disadvantageous, for the people that are

8    asking the Court to confirm the plan without updating it.  It

9    would make a lot more sense to update the plan, wait and see

10   applications for trustee's fees, professional fees, et cetera,

11   which Mr. Hays are going to be filing -- soon on file and then

12   update the plan and then have the plan proponents who have the

13   burden of proving that they have enough money to pay the things

14   that have to be paid a hundred percent.  Have the plan

15   proponents do the math.

16         They complained, oh, they didn't like how the Greyson,

17   Han, Jayde objection did the math.  But guess what?  It's their

18   burden to do the math, and they haven't done it.  And the only

19   liquidation analysis thing is from 6/14/24.  It's totally out-

20   of-date.

21         So again, I would suggest this plan needs to be

22   updated to all the revised figures and that that would be to

23   the benefit of the plan proponents and that they need to be

24   required by this Court to do the math.  And they haven't done

25   it.  And a plan should not be confirmed that's fatally out-of-

**The Litigation Practice Group P.C.; Marshack v. Bayrooti**

61

1    date, and this one is fatally out-of-date.  Now, there was

2    discussion by Mr. Hays about what is good faith under 11 U.S.C.

3    1129(a)(3).  And it's a totality of the circumstances.  That's

4    what the cases say.

5        So but in addition to they didn't do the math and

6    their plan's out-of-date, the provisions in the plan, which

7    Greyson, Han, and Jayde's objection objects to, you take those

8    provisions singly, or you put them together, if you put them

9    together, it flunks the good faith requirement.  So I would

10   like to talk about that.  No bond.  Okay.

11       So now, I think Mr. Girardi just has allegedly took

12   200 million out of his client trust account.  I mean, people do

13   steal money that belongs to others.  But to say no bond right

14   now, the trustee, Mr. Marshack, has a bond because he's

15   required to do that.  But to say that money gets turned over to

16   the liquidating trust and then there's no bond, that doesn't

17   protect the claimants here.  And so that's a bad -- that's a

18   bad idea, having no bond.

19       Then the Court should require that there be a bond.

20   That the liquidating trust have a bond, a bond for the money

21   turned over and a bond for all those causes of actions, the

22   adversary proceeding causes of action would be turned over for

23   the value of those.  Otherwise, that money is collected and

24   goes missing.  And it's just gone, and there's no recourse.

25       Then we have the exculpation clause.  Not only is

**eScribers, LLC**

1   there no recourse because there's no bond.  There's no money

2   because there's no bond to pay the money that was stolen.  But

3   oh, there's exculpation, so there's no ability to proceed

4   against Mr. Marshack and his attorneys and his agents.  And as

5   a matter of fact, Greyson's position fully briefed is that the

6   trustee seized on 6/2/23, that the Dinsmore firm and their

7   fields agents seized several items that were not authorized to

8   be seized by the docket 13 lockout and preliminary injunction

9   order and still have most of them, except this week, the Court

10  ordered one thing, the domain returned to Greyson.

11       That's conversion, seizing things that you're not

12  authorized to seize.  And so Greyson will have a claim for that

13  conversion.  And conversion allows you to get your attorney's

14  fees for chasing the items that were converted.  So Greyson

15  will have a claim.  Those people should not be exculpated for

16  seizing things they weren't authorized to seize because the

17  court order, where you seize things you're not authorized to

18  seize, that is not a alibi by the court order.

19       Okay.  Then we have the problem of administrative

20  claims allowed later, such as on appeal, the present situation

21  of Han, Jayde, and Greyson.  Mr. Hays kept saying, oh, well,

22  they'll be paid within a certain number of days when they're

23  allowed.  But we quoted language in the plan and in the

24  objection, which doesn't actually seem to require that.  So and

25  by this point, the actual language, let me just turn to it

**The Litigation Practice Group P.C.; Marshack v. Bayrooti**

63

1   because it would be silly to appeal, but then the plan doesn't

2   actually say that payment has to be made at a specific -- at a

3   specific time.

4           So I point the Court's attention to the Greyson, Han,

5   Jayde objection at pages 9 and 10, where I quote plain language

6   that says that there's no distribution until a administrative

7   claim is allowed.  Okay.  And then there's paragraph 3, and it

8   says holder of the disputed claim that becomes an allowed

9   claims shall receive distribution in cash.  Okay.  But it

10  doesn't say when the payment will be made.  I couldn't find

11  anything in there that said when the payment would be made.

12          So it has to say if a claim becomes an allowed claim,

13  there should be language that says that shall be paid a hundred

14  percent as soon as the administrative claim is allowed.  And I

15  looked at such language.  I couldn't see it.  So that needs to

16  be -- that needs to be fixed because there should be a specific

17  wording that says if the claim is allowed, administrative claim

18  is allowed by an appellate court, it's got to be paid within X

19  days a hundred percent of the amount the appellate court

20  allowed.  So we have that problem.

21          Okay.  And then there's the reserve account problem

22  that the plan doesn't require the liquidating trust to set up a

23  reserve account.  The briefing on 8/22, actually suggested,

24  well, the Court could allow some amount to be reserved as to

25  Han, Jayde, and Greyson.  The Court, for right now, it solves

**The Litigation Practice Group P.C.; Marshack v. Bayrooti**

64

1   the problem by just allowing an error of law, I would say, and

2   clear error of fact, disallowing those administrative claims.

3   But there should be reserve accounts because if those claims

4   are allowed on appeal or if other disputed administrative

5   claims are allowed, they are entitled, they are required to be

6   paid a hundred percent.  And if they don't have the money, the

7   plan will default.  And the Court is not supposed to confirm a

8   plan that will default.  So let me --

9           THE COURT:  Well, hold on.  Hold on.  Hold on.  Are

10  you telling me that I can never confirm a plan that might

11  default?

12          MS. MARCH:  No.

13          THE COURT:  Okay.

14          MS. MARCH:  This is liquidating plan, Your Honor.

15          THE COURT:  No, I understand that.  I'm asking you

16  whether or not I am enabled or forbidden to confirm a plan,

17  whether a liquidating plan or a reorganization plan, that might

18  default.  And I can't confirm it because there's a one-percent

19  chance that it might default.

20          MS. MARCH:  The Court cannot confirm a plan where the

21  plan proponents have not proven that it is effective to perform

22  the plan and for payments such as administrative claims that

23  have to be paid in full, one hundred percent, of what they're

24  allowed and cannot be paid pro rata.  If the plan proponents

25  have not proven that they have the money to do that and it's a

65

1    liquidating plan, no, the Court violates the Bankruptcy Code,

2    11 U.S.C. Section 1129(a) --

3            THE COURT:  Well, you're incorrect, Ms. March, but

4    please continue.

5            MS. MARCH:  So back to the exculpation.  I do not

6    believe that the Court can exculpate the Dinsmore firm and its

7    field agents' conversion of Graceland property by seizing

8    things on 6/2/23 that the docket 13 lockout and preliminary

9    injunction order did not authorize to be seized.  So this is

10   what I think is likely to happen if the plan is confirmed

11   without fixing the things that are in the objection.

12           What will happen is I think that likely the plan is

13   out-of-date.  There's no evidence that the proponents have the

14   money to pay the things one hundred percent that need to be

15   paid a hundred percent on the effective date or for admin

16   claims allowed later, as soon as they're allowed.  And with no

17   bond, if the money goes missing, there will be nothing to pay

18   anything to our claims, including the general unsecured claims,

19   who are all at risk.

20           And the Court has the authority to order that if the

21   Court is going to allow the liquidating trust, which is not

22   necessary to have.  You can just have a dispersing agent.  But

23   if the Court is going to have the liquidating trust, the Court

24   should exercise its discretion to require that the

25   administrative trust people, Mr. Marshack, the various

1   attorneys, cannot just pay themselves whatever they want with

2   no application to the Court for fees and with no court approval

3   of the fees, which is what the liquidating trust provides at

4   present.

5          And, oh, yes.  No notice to anybody.  So the creditors

6   the allowed claims, they won't even know what's happening

7   because there's not even any notice to anyone.  So this will

8   be, in effect, behind closed doors.  Nobody will even know how

9   much money comes in from adversary proceedings.  Nobody will

10  know how much money is paid to all of Mr. Marshack, as the

11  liquidating trustee, and the various professionals.  There's no

12  requirement of anything being filed.

13         The Court expressly says, the liquidating trust says

14  the Court doesn't get to approve any of the fees, the Court

15  should exercise its discretion to fix that, which the Court can

16  do, so that there has to be fee applications to pay Mr.

17  Marshack as the liquidating trustee and to pay the

18  professionals.  Otherwise, I think it's fair to predict that

19  whatever money comes in from adversary proceedings, nobody will

20  even know about because there'll be no requirement for notice,

21  and it will just disappear into the pockets of Mr. Marshack and

22  the other professionals.  And that is inherently wrong.

23         Let me just check my notes.  I think I have covered

24  everything but --

25         THE COURT:  I'll give you a few minutes to check your

The Litigation Practice Group P.C.; Marshack v. Bayrooti

1   notes.

2          MS. MARCH:  No, I think I've covered it.  But I do

3   want to point out that I do not believe that making an

4   evidentiary objection is "obnoxious", as the Court said.  I

5   think that is improper for the Court to say that.  And I also

6   want to, in a general way, object to the fact that on 8/15 in

7   the adversary proceeding, Trustee v. Bayrooti, the Court made

8   comments about me and the other female attorney, that, oh, we

9   both talk too fast.  And I don't even represent a party in that

10  adversary proceeding.

11         So I guess today is better because the Court made a

12  abusive comment to my face instead of making an abusive comment

13  in an adversary proceeding, where I wasn't even representing

14  any party and was not present but --

15         THE COURT:  You obviously didn't read the entire

16  transcript when I came back and clarified my remark that I

17  thought that you were a brilliant lawyer, well-posed, and that

18  the only comment I made to Ms. Andrassy was that she was

19  speaking so fast that I couldn't write down everything that she

20  was saying at the moment.  But if you did not read the rest of

21  the transcript, I encourage you to do it because I called you

22  brilliant and a well-posed attorney who made insightful and

23  helpful comments.  So if you feel that I owe you an apology, I

24  apologize, and I apologize completely.

25         But with respect to interrupting a court with respect,

Case 8:23-bk-10571-SC   Doc 1072   Filed 02/03/24   Entered 02/03/24 06:50:40   Desc
Main Document    Page 91 of 176
**The Litigation Practice Group P.C.; Marshack v. Bayrooti**

68

1   after I told everybody that there's going to get a complete

2   chance to say their piece, I consider it obnoxious.  But I

3   withdraw that, Ms. March.  I withdraw that I called you

4   obnoxious.

5          And I just beg everyone to stop being in civil by

6   interrupting speakers like Mr. Hays.  Because, in fact, I

7   wasn't offended.  I'm not even sure Mr. Hays was offended.  But

8   the fact is the entire civility of our U.S. court system is

9   today at risk for people who won't act civilly.  And so if you

10  perceived me calling you obnoxious, I apologize.  But I'm

11  telling you one more time that there's no reason in my court to

12  interrupt anybody.  And the reason is because everybody gets

13  their shot.

14         And so two things.  One, read the rest of the

15  transcript that you're referring to where I called you

16  brilliant.  And I then made sure that anyone reading the

17  transcript would understand that my comment to Ms. Andrassy was

18  only respecting the speed and the agility and the skill of oral

19  argument that she and you both present to this Court.  And I

20  was pleading with her just to slow down.

21         I note today that I was able to write everything down

22  that you said.  You slowed down, and I appreciate it because I

23  appreciate everything you say.  I appreciate every guidance

24  that you give this Court.

25         So one more time, if you felt that you are owed an

1  apology, I apologize sincerely.

2          Now, is there anyone --

3          MS. MARCH:  Your Honor, could I respond please?

4          THE COURT:  To what?  My apology?

5          MS. MARCH:  No, I did read the whole transcript, but I

6  think it is inappropriate for the Court to refer -- to talk

7  about an attorney that's not present, whatever the Court is

8  saying.  That's the first thing.  And the second thing is --

9          THE COURT:  Well, I am truly admonished.  Thank you

10 very much, Ms. March.

11         MS. MARCH:  The second thing is I've tried cases on

12 and off for fifty years, and making an evidentiary objection is

13 one of the exceptions to wait to the end.  In fact, evidentiary

14 objections are supposed to be made immediately.

15         THE COURT:  But nobody offered any evidence.

16         MS. MARCH:  The trustee was trying to put something he

17 hadn't filed up on the screen.  He was asking permission to do

18 that, Your Honor.  That is why --

19         THE COURT:  And did I -- and did I grant that?

20         MS. MARCH:  Well, Your Honor, I think it was necessary

21 to object.  And I will also say that I don't think that I and

22 my firm, doing our best to represent our clients effectively,

23 in an often-uphill playing field, I do not think that that is

24 properly characterized as obnoxious.  No, I don't think that.

25         THE COURT:  Okay.  Who would like to address the

Case 8:23-bk-10571-SC   Doc 1072   Filed 09/03/24   Entered 09/03/24 06:50:40   Desc
Main Document       Page 70 of 176
**The Litigation Practice Group P.C.; Marshack v. Bayrooti**

70

1    confirmation of this case next?

2              Let's talk to the U.S. Trustee.

3              MS. NG:  Thank you, Your Honor.  I think Your Honor

4    had an issue or question regarding the exculpation clause and

5    the U.S. Trustee view; is that right, Your Honor?

6              THE COURT:  Would you like to address the exculpation

7    clause?

8              MS. NG:  Yes, Your Honor.  Our office initially filed

9    an objection to the disclosure statement because the initial

10   exculpation clause did not provide a carve-out for fraud,

11   willful misconduct, or gross negligence.  And since then, the

12   plan proponent had revised the exculpation language, and that

13   is now consistent with the Ninth Circuit's case law.  Except

14   for that reason, we did not have any further objection to the

15   exculpation clause, Your Honor.

16             THE COURT:  Thank you very much.  Is there anything

17   else you'd like to address, especially with the suggested

18   amendment to the plan with respect to the effective date?

19             MS. NG:  I think we'll defer to Your Honor on that

20   issue.

21             THE COURT:  Thank you.  Is there anything else?

22             MS. NG:  I think that's it, Your Honor.  Thank you.

23             THE COURT:  Thank you.

24             Are there other parties who would like to discuss the

25   confirmation, whether pro or against?

1          MR. GOLUBOW:  Yes, Your Honor.  Richard Golubow on

2    behalf of Debt Validation Fund II and MC DVI Fund 1 and Fund 2.

3          So we filed an objection to the plan.  I do want to at

4    the outset make it clear, we support plan confirmation.  We

5    just do not support the ideological construct that the plan

6    requires a post-confirmation committee with powers that appear

7    to evade or usurp this Court's decision making, authority, and

8    power.  That was primarily the basis for our objection.  Now,

9    I'll get into some more specifics.

10         We simply think that the liquidating trustee -- that

11   to have a liquidating trustee and a post-confirmation committee

12   is unnecessary and duplicative.  And it will inevitably lead to

13   inefficient administration of the liquidating trust and the

14   incurrence of excessive professional fees and expenses.  The

15   trustee and the proposed post-confirmation committee would both

16   be representing the interests of creditors.  There is no good

17   economic purpose of having two sets of independent fiduciaries,

18   both of which have the right to employ professionals at the

19   expense of the estate.

20         And we did raise the issue, with respect to the

21   establishment of the post-confirmation committee, that the

22   individual committee members who default into that role have

23   virtually no economic stake in the administration of the

24   liquidating trust.  All but one of the members hold relatively

25   small claims, and the projection based upon the plan

**The Litigation Practice Group P.C.; Marshack v. Bayrooti**

72

1    proponent's projected distribution to unsecured creditors of

2    approximately 2.5 percent, recognizing that, of course, there

3    is pending and prospective litigation that could result in a

4    substantial increase in that, nonetheless, utilizing that

5    figure, of the seven members of the committee, we have six that

6    would receive a distribution on account of their claim of less

7    than 2,500 dollars.  As a matter of fact, five of them would

8    receive a distribution, I believe, of less than 1,000 dollars.

9          So my clients are objecting on the basis that the

10   proposed members of the post-confirmation committee have vastly

11   outsized control over the administration of the liquidated

12   trust relative to their de minimis economic stake in the case.

13   In addition, my clients submit that irrespective of the

14   economic stake of the individual committee members, the

15   appointment of both the liquidating trust trustee and the post-

16   confirmation committee is simply unnecessary and duplicative.

17         One thing that I wanted to point out is with respect

18   to our objection, the plan proponents mischaracterize it

19   insofar as they are trying to ignore or sidestep actual

20   arguments that have been raised by my clients.  Specifically,

21   my clients do not dispute that consumer creditors are important

22   stakeholders in this case.  So to the extent that anyone is

23   saying that, that is flat-out incorrect.  It's never been

24   explicit, and it's never even been implicitly stated.  So

25   that's just an incorrect narrative.

1          My clients aren't advocating that they or others that

2   are investor creditors should be given a larger representation

3   on the post-confirmation committee, should such a committee be

4   approved.  Rather, my clients are just simply concerned that

5   these individual committee members have such a small economic

6   stake.  And given their likely de minimis distributions, they

7   virtually have no incentive to accurately oversee the

8   administration of the liquidating trust.

9          Now, with the trustee and his professionals having

10  crafted and initiated and prosecuted the overall case

11  litigation strategy, coupled with the fact that there is a

12  projected de minimis distribution to unsecured creditors, the

13  post-confirmation committee just seems to be entirely

14  duplicative.

15         One thing that we also pointed out in our objection

16  is, while we don't believe that a post-confirmation committee

17  is necessary, we're not saying that post-confirmation -- or

18  excuse me, that pre or the existing committee's professionals

19  cannot be retained by the trustee post-confirmation.  That's

20  already baked into the liquidating trust.  So once again, this

21  thought that we need a separate independent fiduciary body

22  separate and apart from the trustee, it just doesn't appear to

23  be reasonable or necessary.

24         While the post-confirmation committee is referred to

25  as a mere oversight committee, that, we believe, appears to be

1  a misnomer, specifically because of the fact that there appears

2  to be substantial powers with veto rights that is conferred

3  upon the committee.  And we just believe that that is

4  inappropriate, especially given the dynamics of this case.

5       THE COURT:  Mr. Golubow.

6       MR. GOLUBOW:  Yes.

7       THE COURT:  Could I ask -- could I ask you a question?

8       MR. GOLUBOW:  Of course.

9       THE COURT:  Would you please provide me with one

10 example of one of the substantial powers that the oversight, or

11 pardon me, the post-confirmation committee could veto that

12 would affect your client?

13      MR. GOLUBOW:  Well, I'm looking at it from the

14 standpoint that this is --

15      THE COURT:  Yeah, but I'm asking you from my -- I'm

16 asking you a specific question.  What is one decision that they

17 could make that could affect your client?

18      MR. GOLUBOW:  The selection of professionals on a go-

19 forward basis.

20      THE COURT:  And how does that affect your client?

21      MR. GOLUBOW:  Well, because of the fact that the

22 existing professionals are the ones that have developed,

23 implemented, and prosecuted the litigation strategy.  And I

24 don't know why it is that the committee should have that veto

25 power, those rights to --

75

1          THE COURT:  I hear your -- I hear your argument, Mr.

2     Golubow.  I'm trying to ask you a very specific question.  Let

3     me ask it again.  Give me one example of a substantial power,

4     i.e., a veto, that would affect your client.

5          MR. GOLUBOW:  Well, Your Honor, frankly, I'm looking

6     at it from the standpoint of it would affect all creditors.

7          THE COURT:  Then I will suggest that you can't give me

8     an example of how your client would be affected by a veto that

9     could be exercised by the post-confirmation committee.  Would I

10    be correct that you cannot identify one?

11         MR. GOLUBOW:  I just did, from the standpoint of

12    selecting professionals, making decisions about --

13         THE COURT:  Well, let's think about it for a second.

14         MR. GOLUBOW:  Okay.

15         THE COURT:  Who would be selecting a professional?

16    The trustee of --

17         MR. GOLUBOW:  The committee.

18         THE COURT:  -- the trust, right?

19         MR. GOLUBOW:  Well, yes, or the committee.

20         THE COURT:  Well, they don't veto the -- if they're

21    not going to -- they don't exercise a veto over their own

22    selection.  Oh, let's pick Richard Golubow as our counsel.  Oh,

23    no, we veto it.  Now, let's get back to the real world.  Tell

24    me one thing that the post-confirmation committee could veto

25    that would be arising from the trustee of the trust that would

76

1   affect your particular client?

2          MR. GOLUBOW:  Well, once again, Your Honor, I don't

3   think that my argument or my statement is going to change.  I

4   view my clients as being --

5          THE COURT:  No, I just wanted a -- I want an answer to

6   my question.  That's all.

7          MR. GOLUBOW:  And I'll repeat --

8          THE COURT:  I don't care about your argument with

9   respect to my question.  I'm asking you a specific question.

10  Name one veto that could occur by the post-confirmation

11  committee of a decision by the trustee of the trust that would

12  affect your client.

13         MR. GOLUBOW:  And once again, I'll say, it's the

14  selection of professionals.

15         THE COURT:  All right.  How would it affect your

16  client if attorney A or attorney B were selected?

17         MR. GOLUBOW:  Well, to the extent that they have a

18  veto power or a veto right, it could substantially, materially

19  affect how the litigation is prosecuted and whether or not

20  there would be benefit realized from changing one set of

21  professionals over to another.

22         THE COURT:  So let's say that the post-confirmation

23  committee couldn't veto the selection of counsel of the trustee

24  of the trust.  Would that satisfy you?

25         MR. GOLUBOW:  Yes.

**The Litigation Practice Group P.C.; Marshack v. Bayrooti**

77

```
1              THE COURT:  Okay.  Thank you.  Please proceed.
2              MR. GOLUBOW:  Okay.  So sorry, Your Honor.  Just
3    wanted to pick up -- I want to -- because we've covered some
4    things that -- so I'm just going over my notes, and I --
5              THE COURT:  Take your time.
6              MR. GOLUBOW:  -- am trying to avoid duplication.
7              THE COURT:  No, take your time.
8              MR. GOLUBOW:  So if the committee's professionals
9    believe that there's a bona fide need to have a post-
10   confirmation committee separate and apart from the trustee, I'm
11   not seeing any evidence to that effect.  The one thing that we
12   were presented with in their reply to our objection is what I
13   would consider to be a contrived argument that OHP, the
14   creditor that just settled litigation as to its claim sought to
15   change its vote on the plan expressly because of creation of a
16   post-confirmation oversight committee.  That argument was
17   specifically made in an attempt to simply justify what is
18   otherwise an unnecessary, cumbersome, and I believe wasteful
19   process in an attempt to provide credibility to a committee
20   with veto powers that's otherwise unnecessary.
21             And I'm confident that the allegation and whatever
22   negotiations were ongoing to resolve the OHP matter or in
23   furtherance of an ask from the committee's professionals to
24   distract from the lack of evidence that this proposed process
25   is once again not reasonable, necessary, or appropriate.  OHP's
```

**The Litigation Practice Group P.C.; Marshack v. Bayrooti**

78

1  alleged endorsement of a post-confirmation committee should not

2  be viewed as a credible endorsement that creation of that

3  committee with veto powers and an attempt to usurp this Court's

4  powers is anything other than directly in response to the very

5  issues that we raised in our initial objection to the

6  disclosure statement and now the objection to the plan.  The

7  endorsement's intended to create an appearance of the necessity

8  of a committee that is anything but.

9          THE COURT:  So let me get your argument straight here

10 so I appreciate it.  You're both against the creation of the

11 post-confirmation committee and the membership that is

12 designated as of to date?

13         MR. GOLUBOW:  That is correct.

14         THE COURT:  Does it matter what -- if you were the

15 post-confirmation committee, would you change your view?

16         MR. GOLUBOW:  No.

17         THE COURT:  Oh, so you have no dog in this fight with

18 respect to the membership.  You just don't like the members

19 because they are only -- they have minimal or de minimis

20 claims?

21         MR. GOLUBOW:  Well, the membership has de minimis

22 claims, but the creation of the committee is --

23         THE COURT:  No, you're conflating the two, Mr.

24 Golubow.  My question is, one, do you object to the membership?

25         MR. GOLUBOW:  Yes.

**The Litigation Practice Group P.C.; Marshack v. Bayrooti**

79

1          THE COURT:  Okay.  So how would you change the

2     membership?

3          MR. GOLUBOW:  I don't have a proposed plan for how

4     membership would be changed.

5          THE COURT:  Very good.  And so you believe that the

6     post-confirmation committee is excessive.  Overwrought.  It's

7     duplicative.  It's going to be a waste of money, et cetera.

8          MR. GOLUBOW:  That is correct.

9          THE COURT:  Oh, and one more thing, that they were

10    going -- they're going to exercise substantial power, that was

11    your words, that shouldn't be put into the hands of a post-

12    confirmation committee.

13         MR. GOLUBOW:  That is correct.

14         THE COURT:  Have I missed any of your arguments?

15         MR. GOLUBOW:  So far, no.

16         THE COURT:  Okay.  Please proceed.

17         MR. GOLUBOW:  Okay.  And getting to the composition of

18    the committee

19         THE COURT:  Well, we've already talked about it.  It

20    doesn't matter who they are.

21         MR. GOLUBOW:  Yeah, but I did want to make a

22    statement.  I did want to make a statement so that what I'm

23    suggesting is not taken out of context, or so that --

24         THE COURT:  Well, I wouldn't want to do that, Mr.

25    Golubow.

Case 8:23-bk-10571-SC   Doc 1072   Filed 09/03/24   Entered 09/03/24 06:50:40   Desc
Main Document   Page 103 of 176
**The Litigation Practice Group P.C.; Marshack v. Bayrooti**

80

1        MR. GOLUBOW:  I'm not suggesting you would, but the

2    plan proponents may.  So that's the reason why I might as well

3    just be proactive in making this statement so that we eliminate

4    the issue, or at least eliminate it in my mind.

5        Bottom line is, is that I am not here to take a shot

6    at members of the committee, a cheap shot or otherwise, or to

7    embarrass anyone.  It's just simply an acknowledgment that

8    members of the committee likely, and understandably, do not

9    have the sophistication independent of the committee's

10   professionals to steer the plan implementation in this case.

11   So the creation of the post-confirmation committee appears to

12   be nothing more than a vehicle to support the committee's

13   professionals to have veto power and other rights that are not

14   justified.

15       Now, note, I have the utmost respect for the

16   committee's professionals.  So that's another point that should

17   be very, very clear.  I'm not taking a shot at the

18   professionals.  All that I'm saying is, is that they could be

19   part of the liquidating trustee's team to the extent that the

20   liquidating trustee believes that there is substantial benefit

21   from having them as part of the post-confirmation team of

22   professionals to implement the plan.

23       So now, as far as striking certain provisions from the

24   liquidating trust agreement, because of course, we're

25   advocating there's no need for a post-confirmation committee.

81

1 But to the extent that the Court does still want to confirm a

2 plan where there is a committee, then we need to start to take

3 a look at some of the substantial powers that are conferred

4 upon the committee. And in that regard, those can certainly be

5 struck from the proposed liquidating trust.

6       There was an argument made in the reply, which we

7 believe is a false characterization of a legal standard about

8 modifying the plan. The plan proponents have incorrectly

9 argued that any material modification to the plan requires a

10 new disclosure statement and resolicitation of vote, and that

11 is simply not true. Resolicitation is only required when the

12 modification materially and adversely changes the treatment of

13 creditors under the plan. Here, the elimination of the post-

14 confirmation committee or certain provisions under the terms of

15 the trust don't alter the plan treatment of any class of

16 creditors under the plan. The plan's proposed treatment of

17 creditors would remain unchanged as a result of the

18 modifications that we're requesting.

19       So considering the minimal projected distribution to

20 general unsecured creditors, the considerable fees and expenses

21 that have accumulated so far, the significant public interest

22 and the national scrutiny that this case has attracted, we just

23 believe it's incredibly important that this process remain

24 transparent. And rigorous bankruptcy court oversight is

25 absolutely essential.

82

1           THE COURT:  Well, thank you, Mr. Golubow.

2           MR. GOLUBOW:  So based upon the --

3           THE COURT:  Oh, there's more?  Okay.

4           MR. GOLUBOW:  Based upon the four votes, Your Honor, I

5    would just suggest that the plan as presently proposed, with

6    the liquidating trust provisions that have a committee in

7    place, that that shouldn't be confirmed.  To the extent that

8    the Court does want to still confirm the plan, then it's our

9    request that there be a substantial limit of the powers of the

10   post-confirmation committee, including its ability to retain

11   professionals at the expense of the trust and absent there

12   being bankruptcy court approval.

13          THE COURT:  Thank you.  I have to now express that I

14   have a little bit of cognitive dissonance with respect to your

15   last statement.  You started off your discussion with the

16   fact -- or the statement that your client did not oppose

17   confirmation of the plan, and now you're opposing confirmation

18   of the plan.

19          MR. GOLUBOW:  Well, only under -- I said that we don't

20   oppose confirmation, given the -- excuse me ,that we don't

21   oppose confirmation.  We oppose the ideological construct that

22   it's necessary to have a post-confirmation committee in place.

23   And to the extent that the Court disagrees, then we have the

24   opposition to some of these far-reaching provisions that appear

25   to give the post-confirmation committee unwieldy power to

**The Litigation Practice Group P.C.; Marshack v. Bayrooti**

83

1   control the case.  It just doesn't seem to be justified.

2        THE COURT:  I'm just trying to understand my simple

3   question, and that is you started off saying you don't oppose

4   confirmation, and now you say you do.

5        MR. GOLUBOW:  The plan itself, we don't oppose.

6        THE COURT:  Yeah, the ideological construct there.

7   It's very Frederick Nietzsche of you, but I don't know what to

8   do about that.

9        MR. GOLUBOW:  Well, you could eliminate the post-

10  confirmation committee, and short of that, you could eliminate

11  a lot of the provisions that give the committee the ability to

12  go ahead and make decisions or to --

13       THE COURT:  But then I run into the Immanuel Kant

14  issue of free will.

15       MR. GOLUBOW:  Well, ultimately, we do have a process

16  in place where transparency is going to be -- is going to be

17  important.  It's been extremely important in this case.  And it

18  will remain important post-confirmation.

19       THE COURT:  Thank you.

20       Anyone else?

21       MS. WEISS:  Your Honor.  Yes, Your Honor.  May I be

22  heard?

23       THE COURT:  Ms. Weiss.

24       MS. WEISS:  Good morning, Your Honor.  Sharon Weiss on

25  behalf of Azzure Capital.

Case 8:23-bk-10571-SC   Doc 1072   Filed 09/03/24   Entered 09/03/24 06:50:40   Desc
Main Document    Page 107 of 176
The Litigation Practice Group P.C.; Marshack v. Bayrooti

84

1           THE COURT:  Good afternoon.

2           MS. WEISS:  Good afternoon.  I wanted to add to what

3    Mr. Golubow was saying.  We also do not oppose plan

4    confirmation.  In fact, we support it.  But just listening to

5    the construct here, I do have issues, and I do believe that my

6    client would be directly harmed with the oversight committee's

7    complete veto power.  And if I may, I think there's a big

8    difference between a fiduciary being able to exercise their

9    business judgement --

10          THE COURT:  Well, Ms. Weiss, may I cut -- may I cut

11   the argument short?

12          MS. WEISS:  Sure.

13          THE COURT:  Let me just quickly ask, Mr. Hays, what is

14   the virtue of the oversight committee?

15          MR. HAYS:  Your Honor, that was one of the provisions

16   of the plan that was probably the most negotiated between the

17   fiduciaries of the committee and the trustee, and the purpose

18   was for the --

19          THE COURT:  Well, who negotiated?

20          MR. HAYS:  Counsel for the --

21          THE COURT:  Who are the parties to this negotiation?

22          MR. HAYS:  The committee and the trustee.

23          THE COURT:  Be specific.

24          MR. HAYS:  The committee and the trustee in

25   negotiating the --

**The Litigation Practice Group P.C.; Marshack v. Bayrooti**

85

1           THE COURT:  The committee, or the committee's

2   attorneys?

3           MR. HAYS:  Committee counsel on behalf of the

4   committee negotiated these provisions.  We had no direct

5   negotiations with the individual committee members.

6           THE COURT:  And what position did you take?

7           MR. HAYS:  We took the position that there should be

8   no veto.

9           THE COURT:  And should be a -- what?

10          MR. HAYS:  There should not -- the oversight committee

11  should not have a veto right over the trustee.

12          THE COURT:  Well, I don't think that's the primary

13  issue right now.  Let's talk about the existence at all of the

14  of the post-confirmation committee.  Did anyone take the

15  position in the negotiations between the plan proponents that

16  there shouldn't be a post-confirmation committee?

17          MR. HAYS:  If my memory serves me correct, I believe

18  initially the trustee took the position of what is the added

19  benefit of an oversight committee, and it was something that

20  committee counsel came back and negotiated strongly for.

21          THE COURT:  Then I'm talking to the wrong person.

22          Mr. Koffroth or Mr. Owens, what is the virtue of a

23  post-confirmation committee in the committee's view ?

24          MR. KOFFROTH:  Your Honor, in the committee's view, it

25  has to do with pragmatism.  We've seen some very --

**The Litigation Practice Group P.C.; Marshack v. Bayrooti**

86

```
 1          THE COURT:  Now you're getting into Rousseau.

 2          MR. KOFFROTH:  It would be a great lesson for everyone

 3   today in philosophy.

 4          The issue with pragmatism here is we have had some

 5   very active and very vociferous creditors.  And the issue with

 6   trying to limit costs post-confirmation is to permit one body

 7   to speak with one voice.  When we talk about this veto concept,

 8   I'm not really sure where it comes from.  When you look at

 9   section 2.10(d) of liquidating trust agreement, if there's a

10   dispute on these few limited issues that impact the creditor

11   body, or in this case, the beneficiary body as a whole, if

12   there's a dispute between the post-confirmation committee and

13   the trustee, the parties come to court.

14          THE COURT:  That's what I thought.

15          MR. KOFFROTH:  That's correct.

16          THE COURT:  Okay.  So now, what is the number one

17   potential issue that could arise that could perhaps create a

18   veto by the post-confirmation committee?

19          MR. KOFFROTH:  The trust identifies four provisions

20   that might create a veto right, subject to coming to the court.

21          THE COURT:  Well, read me the first one.

22          MR. KOFFROTH:  The first one is selection of -- excuse

23   me, let me scroll down so I'm being perfectly accurate.

24          "The settlement or compromise or other resolution of

25   any cause of action where the stated amount in controversy is
```

**The Litigation Practice Group P.C.; Marshack v. Bayrooti**

1  one million dollars or more."

2  THE COURT:  Okay.  So let's just put it into layman's

3  terms for myself.  If the trustee of the liquidating trust

4  agrees to a settlement of 950,000 dollars to be paid to the

5  estate, obviously, the committee would be advised of that, but

6  they would not be able to say, let us consider no.

7  MR. KOFFROTH:  With one caveat, if the claim itself

8  that was being settled was 999,000 dollars or less.

9  THE COURT:  Yeah, that was my purpose.

10  MR. KOFFROTH:  That's correct.

11  THE COURT:  Now we're getting into Aristotle.  So now

12  the premise is it's a 950,000-dollar settlement that the

13  trustee wants agree to and receive.  They let the post-

14  confirmation committee know, but they can't say no.

15  MR. KOFFROTH:  Correct.

16  THE COURT:  But if he wants 1,000,001 dollars, you can

17  say no?

18  MR. KOFFROTH:  Correct.

19  THE COURT:  Okay.  Now, and is there any provision

20  that says reasonably rejected or reasonably turned down, or is

21  it just they don't have to explain why?

22  MR. KOFFROTH:  Your Honor, they don't have to explain

23  why, except all fiduciaries are governed under state law at

24  this point.

25  THE COURT:  I'm sorry.  Say that again.

**The Litigation Practice Group P.C.; Marshack v. Bayrooti**

88

```
1          MR. KOFFROTH:  All fiduciaries of the trust are

2    governed --

3          THE COURT:  Yeah, there are fiduciaries.  I understand

4    that, so but they don't have to say why.

5          MR. KOFFROTH:  Correct.

6          THE COURT:  Okay.  And then what happens is the

7    trustee goes, won't you say why?  And they go, no, we don't

8    have to because Mr. Koffroth said we didn't have to.  And

9    therefore, what can the trustee do to bring that 1,000,001-

10   dollar settlement to the Court for approval?

11         MR. KOFFROTH:  He can bring a motion before this

12   Court.

13         THE COURT:  Okay.  With respect to the "veto powers"

14   that have been discussed here today, are there any vetoes that

15   could be made that could not be later addressed by the

16   bankruptcy court?

17         MR. KOFFROTH:  The only limitation is a modification

18   or amendment to this agreement, this being the trust agreement.

19         THE COURT:  Okay.  That's fair.  Now, tell me, because

20   Mr. Hays has told me, the composition of the post-confirmation

21   committee, they are generally consumers?

22         MR. KOFFROTH:  Yes, Your Honor.

23         THE COURT:  All right.  And who selected them, or was

24   it a volunteer situation?

25         MR. KOFFROTH:  They were selected by the Office of the
```

Case 8:23-bk-10571-SC   Doc 1072   Filed 02/03/24   Entered 02/03/24 06:50:40   Desc
Main Document   Page 112 of 176
**The Litigation Practice Group P.C.; Marshack v. Bayrooti**

89

1  United States Trustee initially.  They are the same members of
2  this committee currently.

3          THE COURT:  Very good.  And what happens if one
4  decides to resign?

5          MR. HAYS:  If one decides to resign, currently they
6  would be replaced by the United States Trustee.

7          THE COURT:  What if, after the plan is potentially
8  confirmed, what would happen in a year?

9          MR. KOFFROTH:  It would be governed by the bylaws of
10 the post-confirmation committee so they could be replaced --

11         THE COURT:  So what do the bylaws say?

12         MR. KOFFROTH:  They could be replaced, or the
13 committee could appoint no one else.

14         THE COURT:  All right.  So what if seven resigned
15 because they've lost interest, they're tired of being on the
16 telephone in these meetings and they don't have any dog in the
17 fight.  And there are no further members of the post-
18 confirmation committee.  The trustee sends the notice of the
19 action of the 1,000,001-dollar settlement, and there's nobody
20 to vote on it.  What is the result?

21         MR. KOFFROTH:  If there is nobody to vote on it, the
22 alternatives are there must be a minimum of three members.  So
23 one would be added from the pool of trust beneficiaries.

24         THE COURT:  Who does that?

25         MR. KOFFROTH:  Under the bylaws --

**The Litigation Practice Group P.C.; Marshack v. Bayrooti**

90

1          THE COURT:  Who does?

2          MR. KOFFROTH:  -- the committee does.

3          THE COURT:  The committee is gone.  Try it again.

4          MR. KOFFROTH:  And if they all departed --

5          THE COURT:  The committee has all resigned at one

6    time.  Better yet, there is a flight to Milwaukee, and it goes

7    down.  And all seven are on.  There are no longer any members

8    of the committee.  Now, who appoints the new members?

9          MR. KOFFROTH:  The committee would have to be

10   dissolved at that point.

11         THE COURT:  Okay.  All right.  So that's the real

12   answer.  If there are five resignations and two remaining, what

13   happens?

14         MR. KOFFROTH:  They would need to appoint an

15   additional member.

16         THE COURT:  All right.  And one additional member?

17         MR. KOFFROTH:  At a minimum, yes.

18         THE COURT:  Yes?  So that would be three members.  All

19   right.  And except for modification of the plan where there is

20   a veto right, everything else can be brought to the bankruptcy

21   court?

22         MR. KOFFROTH:  Yes, Your Honor.

23         THE COURT:  Now, let me ask you this.  Can the trustee

24   or the professionals of the committee bring a motion to the

25   Court to modify the plan?

**eScribers, LLC**

Case 8:23-bk-10571-SC   Doc 1072   Filed 09/03/24   Entered 09/03/24 06:50:40   Desc
Main Document     Page 114 of 176
**The Litigation Practice Group P.C.; Marshack v. Bayrooti**

91

 1          MR. KOFFROTH:  No, Your Honor.  To modify the trustee

 2   agreement, I'm sorry, or the plan?

 3          THE COURT:  The trust agreement.

 4          MR. KOFFROTH:  Yes, the trust agreement.

 5          THE COURT:  Not the plan, the trust agreement.

 6          MR. KOFFROTH:  No.

 7          THE COURT:  Okay.  So now, the trust agreement is now

 8   in place.  What happens if you find out that there is a flaw in

 9   the trust agreement for some reason, or there is a tax change

10   under federal law and the trust is affected somehow and if you

11   can't get an agreement from the committee to approve that

12   modification, what happens then?

13          MR. KOFFROTH:  If there's no ability -- if there's no

14   agreement among the parties, I would presume at that point we'd

15   have to go before the Court.

16          THE COURT:  Let me ask you this.  What is your problem

17   with letting me look at that trust agreement and seeing if a

18   modification has to be made for some good cause?

19          MR. KOFFROTH:  No concern, Your Honor.

20          THE COURT:  Well, then why don't you just agree to

21   that?

22          MR. KOFFROTH:  We can.

23          THE COURT:  Okay.  So now what we've had is a nice

24   discussion about dealing with the problem of the trust and the

25   post-confirmation committee.  Do you believe that in the course

**The Litigation Practice Group P.C.; Marshack v. Bayrooti**

92

```
 1   of this case that your committee -- and I have to ask you
 2   because there's no one else to ask, except Mr. Owen -- because
 3   of their de minimis fiscal issues, have they lost interest in
 4   this case just because they're only owed a couple of thousand
 5   dollars?
 6            MR. KOFFROTH:  Not at all, Your Honor.
 7            THE COURT:  Have they been involved with the issues of
 8   consumer protection and the issues of, for instance, the sale
 9   that came forth and the appointment of a moderator to the
10   buyer?  Are they interested in that?
11            MR. KOFFROTH:  Very, Your Honor.
12            THE COURT:  And what do you -- do you think that the
13   small amount that they're owed had any effect on their interest
14   with respect to consumer affairs and their fiduciary duties to
15   the other members of the creditor class of this company?
16            MR. KOFFROTH:  Not at all, Your Honor.
17            THE COURT:  What about after they become fiduciaries
18   up to the trust and the beneficiaries of which they may have --
19   pardon me, they will have fiduciary duties.  Will they lose
20   interest in that simply because they're owed less money?
21            MR. KOFFROTH:  No, Your Honor.
22            THE COURT:  Okay.  Thank you.  Is there anything else
23   you'd like to tell me?
24            MR. KOFFROTH:  Nothing additional, Your Honor.
25            THE COURT:  Thank you.
```

**eScribers, LLC**

**The Litigation Practice Group P.C.; Marshack v. Bayrooti**

93

1          MR. KOFFROTH:  Thank you.

2          Are there any other parties wishing to be heard with

3     respect to the confirmation of the plan, either pro or con?

4          I see that there's a hand raised with --

5          Oh, yes, Mr. Izakelian.

6          MR. IZAKELIAN:  And good afternoon, Your Honor.

7     Razmig Izakelian for OHP and PurchaseCo.  I heard my client's

8     name mentioned.  I don't have any arguments to make.  We

9     support the plan.  If Your Honor has any questions, I'm here.

10    That's all I wanted to say.

11         THE COURT:  Well, first of all, I appreciate you being

12    here because you and your colleagues in the community of

13    lenders and perhaps investors or whatever you want to

14    characterize your client as have added value to this entire

15    case.  Your insights have been very helpful, and I appreciate

16    all of them.

17         MR. IZAKELIAN:  I appreciate that, Your Honor.

18         THE COURT:  Okay.  I believe there's a hand raised,

19    but maybe not.

20         Mr. Valades.

21         You're on mute.

22         We'll get you unmuted in a second.  If you can do it

23    on your computer, that would be helpful.

24         MR. VALADES:  Here you go.

25         THE COURT:  Thank you.

**The Litigation Practice Group P.C.; Marshack v. Bayrooti**

94

1          MR. VALADES:  I'd like to -- before I confirm, I'd

2     like to find out the total amount that's going to be paid out

3     to me by somebody respectful of the Court.  And I don't mean to

4     disrupt you, Your Honor.

5          THE COURT:  You're not.  How much are you owed, Mr.

6     Valades?

7          MR. VALADES:  Well, I did the paperwork, and I sent it

8     all in.  I'll give you a total of 6,501 dollars.

9          THE COURT:  Okay.  And were you a client of LPG,

10    Litigation Practice Group?

11         MR. VALADES:  Yes, Your Honor.

12         THE COURT:  Okay.  And you have put your claim in for

13    6,301 dollars?

14         MR. VALADES:  6,501 thousand.

15         THE COURT:  Six-thousand-and-five?  Actually --

16         MR. VALADES:  Yes and --

17         THE COURT:  -- I have a note, and I hope I brought it

18    with me, with respect to the issue of all of the claims.  If

19    you added up all of the claims in this case, it comes to at

20    least 450 million dollars and maybe more.  450 million.  A lot

21    of those claims --

22         MR. VALADES:  Yes, sir.

23         THE COURT:  -- are secured claims, which have a higher

24    priority than general unsecured claims.  And then there are

25    priority claims, which are like taxes and if this was a

**The Litigation Practice Group P.C.; Marshack v. Bayrooti**

95

1  individual perhaps some alimony or student loans.  But that's

2  not the case here.  But taxes mostly.

3         And then after that, the general unsecured claims,

4  classes 1 and class -- not class 1 and class 2, but class (a)

5  and (b), how is that described?

6         MR. GHIO:  3(a) and (3)(b), Your Honor.

7         THE COURT:  3(a) and 3(b)?  Now, Mr. Hays will tell

8  us -- he doesn't have to get up to the podium, but he will tell

9  us again what is the condition of the payment under 3(b)?

10        MR. HAYS:  The 3(b) class for people who opted in

11  allows them a claim against the estate in the amount of thirty

12  percent of the monies that they paid to the debtor that are

13  reflected on the debtor's records, and then there will be no

14  objection to their claim.  They will have that allowed claim,

15  and that it will be entitled to pro rata distributions with

16  other unsecured claims.

17        THE COURT:  For the remainder?

18        MR. HAYS:  For the remainder.

19        THE COURT:  So there's really no benefit except that

20  they're buying peace?

21        MR. HAYS:  They're buying peace by anybody objecting

22  because in theory, some people may have gotten the benefit of

23  their bargain with LPG and therefore they have no creditor

24  claim and we're not damaged.  This is avoiding all of the costs

25  and administrative expenses associated with claims objections

1  and going through that for these relatively smaller numbers.  I

2  know these numbers mean a lot to the individual consumers, but

3  in the grand scheme of things, it was a way to facilitate

4  allowance of claims for individuals.  And I don't know offhand

5  if Mr. Valades opted for treatment of a class 3(b) or not, but

6  that is what 3(b) was.

7         THE COURT:  So Mr. Valades, I needed to ask Mr. Hays

8  that question to give you a better answer and an answer that

9  you and all other creditors are well deserving of having --

10  deserved of having.

11         MR. VALADES:  Thank you, Your Honor.

12         THE COURT:  This case arises from a very significant,

13  troubled process before it went into bankruptcy.  I have

14  recently written a decision regarding my factual interpretation

15  of what occurred before this case was filed in bankruptcy.  And

16  in fact, it continued to occur between the time it filed and

17  the appointment of the Chapter 11 trustee.

18         In most bankruptcies in these types of situations, I

19  will give you the bad news right up front, and that is that

20  unsecured creditors will most likely get pennies, if anything,

21  on the dollars.  And it does not matter to you, I don't

22  believe, of whether you opted in or out of the thirty percent

23  because if the trustee does do a great job, you will get your

24  funds if your claim is not objected to.  The only benefit that

25  you would have derived from inserting yourself into class 3(b)

**The Litigation Practice Group P.C.; Marshack v. Bayrooti**

97

1  was that you would be buying peace.  In other words, you

2  wouldn't have to come to court and argue that you were owed

3  6,500 dollars or whatever the amount is.  And you would have

4  agreed for that to just receive thirty percent of that claim --

5  a percentage of thirty percent of that claim.

6       And so the bad news in this particular bankruptcy is

7  the unsecured creditors like yourself may not be able to

8  receive much at all.  And for that, I apologize.  This Court

9  was dealt a case the trustee and the United States Trustee and

10  the committee of creditors and all of the secured creditors,

11  especially, and administrative claim holders have added to the

12  development of a plan that is being considered today.  But that

13  doesn't change the fact that the money has to be recovered if

14  it's going to be distributed to you.

15       Now, there are times when things like that work out.

16  For instance, and I don't know if you've ever heard of a fellow

17  named Madoff, but that was a Ponzi scheme in New York.

18  Nationwide.  And he went to jail.  And in fact, the trustee was

19  able to recover an incredible amount of money for the victims

20  of that Ponzi scheme.

21       I'm not able to predict and I don't believe anybody

22  can predict what the final outcome will be.  But what we're

23  doing here today is considering a plan of liquidation that, if

24  it's adopted, will create a mechanism for an attempt to collect

25  your money and send it to you.  And that's the best I can offer

**The Litigation Practice Group P.C.; Marshack v. Bayrooti**

98

1    to you at this point.  And I'm sorry that's all I can provide

2    you.

3          MR. VALADES:  Okay, Your Honor.  I really appreciate

4    that.  And I appreciate the other attorneys in the courtroom

5    allowing me to speak.  I thank you.

6          THE COURT:  Well, you're an important part of this,

7    and we appreciate your presence today.

8          MR. VALADES:  Oh, can you explain one more thing to

9    me, Your Honor?  The vote amount is in different increments.

10   Is that what I'm should be expecting, if at all?

11         THE COURT:  I'm sorry.  The amount?  I don't

12   understand your question.

13         MR. VALADES:  The vote amount.

14         THE COURT:  Are you saying "vote", as in V-O-T-E?

15         MR. VALADES:  Yes, sir.

16         THE COURT:  Oh, the bankruptcy law requires or allows

17   persons like yourself to vote in favor or against this

18   particular plan of liquidation.  And you may have been sent,

19   I'm sure you were, a ballot to support or not support the

20   confirmation of this plan of reorganization or plan of

21   liquidation.  What we've heard today is evidence that persons

22   situated like yourself have voted overwhelmingly to give the

23   trustee the framework to continue on over the next couple of

24   years to collect money on everyone's behalf.

25         And so the vote is something that I had to look at to

**The Litigation Practice Group P.C.; Marshack v. Bayrooti**

99

1   make sure that there were creditors who supported the plan or

2   did not support the plan.  So it doesn't really matter how many

3   people voted.  That does not affect your claim.  It does not

4   affect how much people will receive.  It's just a ministerial

5   act.

6          MR. VALADES:  Okay, sir.  I understand all that.  I

7   did complete everything on the ballot.  I did approve the

8   ballot, so now I know my understanding.  And I want to thank

9   you so much again for your time.

10          THE COURT:  Do you have your ballot in front of you?

11          MR. VALADES:  No.  No, I don't.  I'm going to have

12   to --

13          THE COURT:  Oh that's okay.  Because I think on the

14   ballot, if I'm not mistaken, there is a choice that you check-

15   boxed on whether or not the class you were in was 3(a) or 3(b).

16   And you don't need to look at it now.  But if you go back and

17   look and see if you checked 3(b), they will not object to your

18   claim.

19          MR. VALADES:  Okay.

20          THE COURT:  All right.

21          MR. VALADES:  That's what I checked.  Yeah, now that I

22   remember.

23          THE COURT:  That's right.

24          MR. VALADES:  I'm an old soldier, sir, you know.

25          THE COURT:  Thank you.

**eScribers, LLC**

**The Litigation Practice Group P.C.; Marshack v. Bayrooti**

100

1          MR. VALADES:  I appreciate it.

2          THE COURT:  Mr. Hays, you now have an opportunity to

3    respond to all of the comments that were made.

4          MR. HAYS:  Thank you, Your Honor.

5          THE COURT:  Or do you want a break?  Let's take a

6    vote.

7          Do we need a ten-minute break, ladies and gentlemen?

8          We do.  We're going to take a ten-minute break, and

9    then Mr. Hays will be taking the podium next.  We're in recess.

10        (Recess from 1:14 p.m., until 1:31 p.m.)

11         THE COURT:  Please remain seated and come to order.

12   This United States Bankruptcy Court is again in session, the

13   Honorable Scott C. Clarkson, bankruptcy judge, presiding.

14         THE COURT:  Mr. Hays.  You're up.

15         MS. WEISS:  I'm sorry, Your Honor.  May I interrupt

16   for just one moment?

17         THE COURT:  Oh, I'm sorry.  Ms. Weiss.

18         MS. WEISS:  I'm sorry.  I'm sorry to interrupt, Your

19   Honor.  I am asking if I could please excused.  I have an

20   appointment that I cannot miss, and I've said my piece.  So I

21   was asking if I could please be excused from the hearing.

22         THE COURT:  It's always a pleasure to have you here.

23   You're excused.  Thank you for coming.

24         MS. WEISS:  Thank you, Your Honor.

25         THE COURT:  Thank you.

Case 8:23-bk-10571-SC   Doc 1072   Filed 02/03/24   Entered 02/03/24 06:50:40   Desc
Main Document        Page 104 of 170
**The Litigation Practice Group P.C.; Marshack v. Bayrooti**

101

 1          Mr. Hays.

 2          MR. HAYS:  Your Honor.  This is Mitchell Ludwig, Your

 3   Honor.

 4          THE COURT:  Yes, Mr. Ludwig.

 5          MR. LUDWIG:  While Mr. Hays is preparing himself, I

 6   just have a quick -- I have an ask Mr. Hays if he could explain

 7   the mechanics of a certain provision to me so I understand it a

 8   little bit better, if that's permissible.

 9          THE COURT:  Well, why don't you ask me, and we'll see.

10          MR. LUDWIG:  It's section (d), paragraph 22, and it's

11   on page 36 of 109.  And it has to do with the set aside by the

12   liquidating trust as to resolution of names and so forth.  And

13   I want to know if Mr. Hays has an understanding of how much is

14   going to be set aside until those issues are resolved.

15          As you know, you recently ruled on a partial summary

16   judgment.  Time for appeal is not past.  I don't know if it's

17   going to be appealed or not, but it does raise a question in my

18   mind is what happens if the appeal is successful, if they do

19   file it.  I heard Your Honor's comments about the

20   administrative claims and how there will be some type of

21   clawback on that.  But as to that provision, I was wondering if

22   Mr. Hays could perhaps explain his thoughts.

23          THE COURT:  Mr. Hays.

24          MR. LUDWIG:  And that's it.

25          MR. HAYS:  Your Honor, to answer Counsel's question

Case 8:23-bk-10571-SC   Doc 1072   Filed 09/03/24   Entered 09/03/24 06:50:40   Desc
Main Document      Page 102 of 176
**The Litigation Practice Group P.C.; Marshack v. Bayrooti**

102

 1    about reserves, the Court has issued its order.  And unless or

 2    until there's a stay of that order, then there is no allowed

 3    secured claim that would get paid.  If that order is

 4    successfully appealed and there becomes an allowed secured

 5    claim, then it's entitled to be paid by way of whatever final

 6    order ultimately comes out.  But in the meantime, absent the

 7    stay, the plan will go effective, and there will not be a

 8    specific set aside for potential claims or potential losses on

 9    appeal or other matters like that.

10              THE COURT:  Thank you.

11              MR. HAYS:  Thank you.  I'm going to keep my comments

12    fairly short.

13              THE COURT:  Well, I'd rather you be extensive.

14              MR. HAYS:  Okay.  I can go a little bit more

15    extensively.  Ms. March raised the objection that the plan

16    requires administrative claims to be a hundred percent -- be

17    paid one hundred percent.  That is correct.  And that's

18    required by the Code.  And that's what the plan provides.  And

19    if there is an allowed administrative claim, it will be paid in

20    full on the effective date.  Or alternatively, if it's not

21    allowed as of the effective date but later becomes allowed.

22    The plan is very specific that it will be paid within sixty

23    days of the date that a final order is entered, which renders

24    that claim allowed.

25              And I can invite attention to page 11 of 109 of the

Case 8:23-bk-10571-SC   Doc 1072   Filed 09/03/24   Entered 09/03/24 06:50:40   Desc
Main Document   Page 108 of 140
**The Litigation Practice Group P.C.; Marshack v. Bayrooti**

103

1  plan, docket 1344.  And that page starts at line 1, addressing

2  the treatment for administrative claims.  And if you scroll

3  down the page to line 20, near the end of that sentence, it

4  starts with parenthetical number 2, "If such administrative

5  claim is not allowed as of the effective date, then it becomes

6  payable no later than sixty days after the date on which an

7  order allowing such administrative claim becomes a final

8  order."

9           And on the following page, page 12 of 109 of the plan,

10  there's a chart.  And starting at line 19 of the chart, there's

11  a listing of other administrative claims, which would include

12  potentially Ms. March's clients' claims if they were to

13  eventually become allowed.  And it specifically specifies paid

14  in full on the later of the effective date and the date the

15  bankruptcy court enters an order allowing such an

16  administrative claim so --

17           THE COURT:  So let's then address the next issue.  And

18  that is what if the estate does not have money enough to make a

19  payment within sixty days?

20           MR. HAYS:  And that's exactly where I was going.  So

21  if a payment becomes due and the bankruptcy estate, or probably

22  by that time the liquidating trust, doesn't have enough money

23  to pay it, there will be a breach of the terms of the plan.

24  And then the Court -- anybody who's the on the losing side of

25  that breach, let's say hypothetically, Ms. March's client --

Case 8:23-bk-10571-SC   Doc 1072   Filed 09/03/24   Entered 09/03/24 06:50:40   Desc
Main Document   Page 127 of 176
**The Litigation Practice Group P.C.; Marshack v. Bayrooti**

104

1        THE COURT:  It's called "the injured party".

2        MR. HAYS:  The injured party.  Thank you.

3        THE COURT:  Thank you.

4        MR. HAYS:  If the injured party comes to court saying

5   there's a breach and I haven't been paid, the Court has a

6   remedy to take care of that breach, which --

7        THE COURT:  Why?  Do I have to pay it out of my

8   pocket?

9        MR. HAYS:  You do not.  And as we discussed earlier,

10  the professionals who receive allowance of administrative

11  claims would have to disgorge their fees in order to achieve a

12  pro rata distribution at that level.

13       THE COURT:  So that it would be equalization?

14       MR. HAYS:  There would be an equalization at that

15  level.  And so yes, the plan could not go forward any further.

16  It would be in breach if the estate was or the trust was

17  without the money.  But there would be a remedy for that, and

18  everybody would be put back into the position they should have

19  been put in.

20       THE COURT:  Have you ever been involved in an

21  administratively insolvent case?

22       MR. HAYS:  Yes, Your Honor.

23       THE COURT:  And is this the normal procedures that

24  occur in the instance of an administratively insolvent case?

25       MR. HAYS:  Yes, Your Honor.  It is.

**The Litigation Practice Group P.C.; Marshack v. Bayrooti**

105

1           THE COURT:  Nothing unusual about it at all?

2           MR. HAYS:  Nothing unusual about it at all.

3           THE COURT:  Thank you.

4           MR. HAYS:  Counsel then argued about the not being

5    enough money in the case to pay all of these potential

6    administrative claims, including her clients' claim.  But at

7    this point in time, her client doesn't have an allowed

8    administrative claim.  And the evidence before the Court on

9    exhibit A to the disclosure statement shows the trustee has a

10   little over, I think it's, eleven million dollars.  And the

11   amount of money that's now going to get paid on the effective

12   date, when you remove professionals and exclude people who do

13   not currently have allowed administrative claims, I think that

14   number is around 600-or-so-thousand dollars so --

15          THE COURT:  Well, I have another piece of evidence

16   that is in the record already.  And it is the docket number

17   1554 of the main case.  Docket number 1554.  It is the monthly

18   operating report for the period ending 7/31/24, which was

19   approximately thirty days ago.  Do you happen to have access to

20   that piece of pleading?

21          MR. HAYS:  Yes, Your Honor.  I do.

22          THE COURT:  Okay.  Would you, just for the record,

23   describe what that is?

24          MR. HAYS:  It's the monthly operating report filed by

25   the Chapter 11 trustee.  The Court has identified the document

**The Litigation Practice Group P.C.; Marshack v. Bayrooti**

106

1   by filing date and docket number.  And on page 2 of 12 of that

2   document, there's a line item at the top on part 1, line (a) of

3   cash balance beginning of month, and that number is 10.9

4   million dollars, a little over 10.9 million dollars.

5          THE COURT:  And to your knowledge, can you proffer if

6   that number is up or down as of today?

7          MR. HAYS:  I think it's a relatively the same as of

8   today.

9          THE COURT:  Okay.  Thank you.  When will you be filing

10  your next operating report?

11         MR. HAYS:  I believe they are -- this is for the

12  period ending July 31st.  So for the operating report ending on

13  August 31st, I believe it would be due on the 15th or the 21st

14  day of September.  I'm forgetting the exact deadline.

15         THE COURT:  Perhaps Ms. Ng knows.

16         MS. NG:  Yes, Your Honor.  It is due on the 21st of

17  September.

18         THE COURT:  The 21st?

19         MS. NG:  Correct.

20         THE COURT:  Very good.  Okay.  Thank you.

21         MS. NG:  Thank you.

22         MR. HAYS:  One of the other issues I'd like to

23  address, Your Honor, is Purdue Pharma did not overrule the

24  Ninth Circuit decision in Blixseth.  And I went back and double

25  checked.  There's nothing in the majority decision that even

107

1    contains the word "exculpation".  And the word "exculpation"

2    appears only in the dissent.  And as the Court likely knows,

3    undoubtedly knows, the dissent wasn't arguing that there can't

4    be releases of claims as part of a plan.  The dissent was

5    saying that a bankruptcy court should be able to release any

6    and all claims.  So there's nothing in the Purdue Pharma

7    decision that would indicate that the Supreme Court has

8    overruled or would not approve of exculpation provisions.  And

9    so we believe the Blixseth case by the Ninth Circuit to still

10   be good law.

11          And on the issue of exculpation, Ms. March made the

12   point, what if we can prove up wrongdoing by the trustee.  They

13   made allegations, which are vehemently disputed, that the

14   Dinsmore firm did things that they shouldn't have done.  All of

15   that was the subject of the motion for allowance of

16   administrative claim, which for now is denied.  But if Ms.

17   March appeals that or if she were to file a renewed pleading,

18   pursuant to the Court's order, if an administrative claim can

19   be proved up, then we're back to it must be paid in full within

20   sixty days of entry of a final order.  And if not, there's a

21   breach.  And people have to disgorge to equalize payments at

22   the administrative priority level.

23          With respect to --

24          THE COURT:  Well, I'd like you to discuss the comments

25   made by Ms. March, that there's no way of knowing if there's

**The Litigation Practice Group P.C.; Marshack v. Bayrooti**

108

1   enough money to go effective.

2           MR. HAYS:  Well, there's certainly enough money to go

3   effective with the 10.9 million dollars that the trustee

4   currently has in his possession.  The amount, according to the

5   disclosure statement, exhibit A, feasibility analysis, if I

6   can -- it's roughly, if you remove the professional fees that

7   will now not get paid as of the effective date, then there is

8   approximately, I think, 3.7 million dollars of other claims

9   that would need to be paid, if I'm doing my math correctly.

10          THE COURT:  All right.  Would you please address the

11  good-faith arguments?

12          MR. HAYS:  Yes.  The allegation or contention of lack

13  of good faith was made in connection with the liquidating trust

14  not providing for a bond for the trustee to serve.  And I

15  believe I addressed it before, but if not, I want to make sure

16  it's on the record.  We don't believe there's any requirement

17  under the law the liquidating trust trustee have a bond in

18  order to serve.  And the liquidating trust is a grantor trust.

19  And under applicable nonbankruptcy law, there is no requirement

20  that the trustee of a grantor trust have a bond as a condition

21  of operating.

22          I would also note that the proposed liquidating

23  trustee, Mr. Marshack, has been a Chapter 7 panel trustee, I

24  believe, for approximately thirty-nine years and is still

25  supervised by the Department of Justice as a panel trustee.

**The Litigation Practice Group P.C.; Marshack v. Bayrooti**

109

1   And this isn't like we're appointing somebody that nobody knows

2   or has a sketchy history or past.  I believe that his

3   reputation speaks for itself as a very honest fiduciary.  And

4   there has never been any allegation of wrongdoing on his part

5   by dipping into trust or doing anything else like that.

6          I would also note that the liquidating trust provides

7   for the post-confirmation oversight committee.  So that

8   committee has the ability to request records.  Understand

9   what's going on.  Monitor receipts.  Monitor disbursements.

10  The post-confirmation committee will be represented, I believe,

11  by its same counsel that is currently counsel for the official

12  committee of unsecured creditors, which is certainly a very

13  highly regarded firm.  And the individuals representing the

14  committee now that are involved in this case are certainly very

15  competent.  So there is oversight here.  And this isn't a

16  situation where money is simply going to disappear.

17         So the plan has been proposed in good faith.  It's not

18  asking for anything that is not provided by law, including the

19  exculpation provisions, which are, I think, fairly standard,

20  and the Ninth Circuit has approved.  So this plan has been

21  proposed in good faith.  And I think based on the totality of

22  the record before the Court and the evidence in the record,

23  that that is certainly a finding that can and should be made.

24         And I don't think there's really anything else that I

25  would address in response to the comments made by counsel

**The Litigation Practice Group P.C.; Marshack v. Bayrooti**

110

1  speaking in opposition of confirmation.  But certainly, if the

2  Court has questions, I will do my best to answer them.

3      THE COURT:  Would you please explain the virtue of the

4  existence of a post-confirmation committee?

5      MR. HAYS:  I believe that the purpose to be served and

6  the virtue and the benefit to be added is that there will be

7  oversight.  This will not simply be a trustee who is making

8  decisions with perhaps less court supervision than would be

9  involved in the bankruptcy pre-confirmation.  And they do speak

10  for the body of creditors.  And that was one of the main

11  reasons why the committee was asking for the formation of a

12  post-confirmation oversight committee was to monitor things.

13      At the end of the day, these are the creditors, and

14  this is their money.  And they should have a say and some

15  oversight into what is happening.  And I think with the

16  comments on the record when the Court was speaking with Mr.

17  Koffroth made clear, there will now not be a situation where

18  this Court can't resolve any difference, should there be a

19  difference of opinion as to what action the trust should be

20  taking.  Because in the event of a dispute on these issues

21  between the liquidating trustee and the post-confirmation

22  oversight committee, it will be up to this Court to decide what

23  is in the best interest of the creditors, and that is the

24  standard that we have all agreed to is this Court should be

25  resolving any disputes based on its conclusions as to what is

Case 8:23-bk-10571-SC   Doc 1072   Filed 09/03/24   Entered 09/03/24 06:50:40   Desc
Main Document    Page 134 of 176
**The Litigation Practice Group P.C.; Marshack v. Bayrooti**

111

1  in the best interest of creditors.

2        THE COURT:  If the Court were to confirm this plan of

3  liquidation today, what are the modifications that have been

4  discussed that all of the parties are in agreement on that

5  would be inserted into a confirmation order?

6        MR. HAYS:  The first one, and I don't have a list, so

7  I'm going to have to go from memory but --

8        THE COURT:  Well, we'll work with everyone in the

9  room.

10        MR. HAYS:  Yes.

11        THE COURT:  If anyone understands that Mr. Hays has

12  missed something, speak up.

13        MR. HAYS:  So the first one that comes to mind is the

14  effective date.  And the parties have agreed that the effective

15  date will not be when the trustee believes he has enough money

16  to go effective and that provision (b) will be stricken and

17  that will not be the effective date.  Instead, the effective

18  date will be the first business day after the fourteen-day --

19  fourteen days after entry of the confirmation order so it --

20        THE COURT:  Unless a stay has been --

21        MR. HAYS:  Unless a stay has been granted.  Yes,

22  absolutely.

23        And then second, all of the professionals, and we have

24  conferred with the Grobstein Teeple firm, who are accountants

25  for the trustee, that they also understand and have no

**The Litigation Practice Group P.C.; Marshack v. Bayrooti**

112

1    objection that the professional fees are not going to be paid

2    on the effective date because as of now, none of them are

3    allowed, and the plan provides for payment of allowed

4    professional fees on the effective date.  And instead, all of

5    the professionals will be filing their fee applications.  I

6    believe the date is set for later in September.  The Court will

7    decide what, if anything, is allowed and what, if anything, is

8    to be paid, at which point those payments will be made by the

9    trustee.

10        Another modification to the plan is that the plan

11   provides that on the effective date, after the payments are

12   made to people due money on the effective date, all of the rest

13   of the money was going to go into the liquidating trust.  That

14   is going to be modified, which the plan provided for, such

15   modification in the confirmation order to be after the

16   professional fees are determined and paid.  That way, we don't

17   find ourselves in a position where the liquidating trust has

18   taken the money free and clear of creditor claims, and now the

19   professionals can't get paid.  So that is a second

20   modification.

21        A third one is that counsel for the committee, and now

22   speaking on behalf of the trustee, we agree and concur that if

23   any creditor should later become aware of the bankruptcy and

24   file a motion and seek allowance of an otherwise timely claim

25   that would otherwise be time barred, that they will also be the

**The Litigation Practice Group P.C.; Marshack v. Bayrooti**

113

1    holder of a trust beneficial interest and be entitled to

2    participate in the distributions of the liquidating trust.  So

3    I remember that provision.

4            THE COURT:  Mr. Koffroth, do you have any additions

5    that we can be reminded of?

6            MR. KOFFROTH:  Your Honor, nothing additional from the

7    committee.

8            MR. HAYS:  The other matter that I'm remembering now,

9    in terms of the changes to the terms of the liquidating trust

10   as currently attached to the plan, is there was one provision,

11   and I just want to make this clear about the Court resolving

12   all disputes, that if there was a dispute over the modification

13   of the trust itself or the terms of the trust itself, that is

14   now also within the Court's ability to resolve, and the Court

15   will have the jurisdiction to resolve that dispute over whether

16   an amendment should be made?

17           THE COURT:  Is that correctly stated, Mr. Koffroth?

18           MR. KOFFROTH:  That's correct, Your Honor.  And we can

19   work on that language.

20           THE COURT:  Thank you.

21           MR. HAYS:  And Your Honor, I'm not aware of any other

22   changes off the top of my head, but one moment while I confer

23   with client.

24           So the change that I just recited on the record was

25   the change that Mr. Marshack wanted to ensure had been made.

114

1  So I'm not aware of anything further that would go into the

2  confirmation order.  There was one informal modification, was

3  it Resolution Ventures, that we did address, I believe in the

4  reply brief but hasn't been addressed here on the record today,

5  and that is that they are entitled to their superpriority

6  administrative claim and that it will be paid on the effective

7  date as required.

8          THE COURT:  Okay.

9          MR. HAYS:  Nothing further, Your Honor.

10         THE COURT:  Have a seat.

11         MR. HAYS:  Thank you.

12         THE COURT:  The Court has before it the --

13         MS. MARCH:  Your Honor, could I be heard?  I think

14  there was a provision that we talked about earlier, which is

15  page 43, item 3 of the docket 1344 plan.  It's the one the

16  Court said would not allow -- the Court wouldn't allow total

17  discretion to somebody other than the Court.  And that was the

18  waiver of conditions provision, which says, "conditions of

19  confirmation and to the effective date set forth in above may

20  be waived by plan proponents without notice, leave, or order of

21  the bankruptcy court, or any formal actions other than

22  proceeding to confirm or consummate the plan."  I thought the

23  Court said that should be omitted.

24         And in addition, I want to point out that when Mr.

25  Hays said the parties have agreed the effective date is the

**The Litigation Practice Group P.C.; Marshack v. Bayrooti**

115

1     first business day fourteen days after entry of the

2     confirmation order.  Greyson absolutely does not agree to that

3     because the plan proponent has not proven that they will have

4     sufficient money to pay those things that have to be paid a

5     hundred percent if they pay some administrative claims.

6            And then a week or two later, the fee petitions are

7     filed by all of the professionals, and that doesn't leave

8     enough money, the plan will default at that point.  So that's

9     one of the things I pointed out in the objection.  The plan

10    should not be confirmed unless the proponent has proven it has

11    enough money to pay those things.  And the figures are

12    completely out-of-date that we have.

13           THE COURT:  Thank you, Ms. March.

14           Mr. Golubow, you wanted to chime in?

15           MR. GOLUBOW:  Yes, Your Honor.  There was one other

16    provision that I just wanted the Court -- or to bring to the

17    court's attention that we argued about in our objection, but I

18    don't believe that it was necessarily covered during my oral

19    argument.  And in particular, its section 13.2 of the trust

20    agreement.  I believe that that provision provides where

21    payment of professional fees can be done without any bankruptcy

22    court approval or oversight, unless there's a dispute --

23           THE COURT:  You objected to that, right, Mr. Golubow?

24    Yeah --

25           MR. GOLUBOW:  I did.

**The Litigation Practice Group P.C.; Marshack v. Bayrooti**

116

1          THE COURT:  -- that's overruled.  Anything else?

2          MR. GOLUBOW:  No.

3          THE COURT:  Thank you.

4          Mr. Hays, do you want to respond to the comments and

5     insightfulness of Ms. March?

6          MR. HAYS:  Your Honor.  First, I want to thank Ms.

7     March for correcting me on saying "parties".  I was referring

8     to the plan proponents and the retained professionals.  But she

9     is correct.  Nobody is suggesting --

10         THE COURT:  Yes, she absolutely is.

11         MR. HAYS:  Yes.  So I appreciate that.

12         Second, on the waiver of conditions, I believe that

13    what we've already agreed to and discussed about the date

14    certain for the plan to go effective, basically, we can't

15    change that or waive that.  That is going to be the effective

16    date.  So we will make clear in the confirmation order that

17    what we have now said is going to be the effective date cannot

18    be unilaterally waived or changed by the --

19         THE COURT:  Can we strike out that provision?

20         MR. HAYS:  Yeah, we can just strike that out.

21         THE COURT:  It's struck.

22         MR. HAYS:  Very good.  Thank you, Your Honor.

23         THE COURT:  Thank you.  I think that's what I

24    suggested an hour ago.

25         MR. HAYS:  I believe that was.

**The Litigation Practice Group P.C.; Marshack v. Bayrooti**

117

1          THE COURT:  Thank you.

2          Ms. March, thank you for helping us clarify that

3   particular issue.

4          I don't intend on being interrupted at this point.

5          The Court has before it the motion of the plan

6   proponents to confirm this plan of liquidation.  This case has

7   been around for quite some time.  The Court has carefully

8   considered every pleading with respect to the plan

9   confirmation, and that begins with the disclosure statements,

10  the original plan, the first amended plan, and all of the

11  briefing with respect to opposition to and support of the

12  confirmation of this Chapter 11 liquidation plan.

13         The Court has its own obligations to carefully review

14  the substance of and the tenor of the plan of reorganization or

15  plan of liquidation.  And in fact, this Court follows the

16  Supreme Court's Espinoza case in Chapter 13, where the Court

17  has its own responsibility to carefully review all of the plan

18  provisions and including the subterranean documents that belong

19  to the plan of liquidation, including the trust agreements.

20         The Court has also considered, again, the evidence

21  that is in front of the Court, and by that, I mean all the

22  pleadings in this case, including those that were involved in

23  adversaries and the main case.

24         The Court has also considered carefully several other

25  documents in addition to those that I've mentioned, especially

**The Litigation Practice Group P.C.; Marshack v. Bayrooti**

118

1   docket number 1112, which was the trustee's Chapter 11 status

2   report filed on April 17, 2024, and docket number 1512, which

3   is the Chapter 11 trustee's status report filed on 8/15/24.

4        And the Court has also reviewed all of the monthly

5   operating reports, starting from 1 through number 17.  But more

6   particularly relevant to this plan of reorganization or

7   liquidation, the monthly operating report for the sixteenth

8   month, which was docket number 1445, filed on 7/22/24, with

9   respect to the reporting period ending 6/30/2024.  And then

10  docket number 1554, filed on 8/27/2024, for the reporting

11  period of 7/31/2024, less than one month before today.  That is

12  again, the reporting period ending July 31st.

13       The Court has carefully reviewed the entirety of the

14  documents and the figures and facts involved in that monthly

15  operating report.  The Court has also reviewed the evidence

16  that's been submitted in favor of confirmation and in

17  opposition to confirmation.

18       With respect to 11 U.S.C. 1129(a)(1), the plan must

19  comply with applicable provisions of the Bankruptcy Code,

20  including classification of claims and interest, disclosure

21  requirements, and the contents of the plan.  The Court finds

22  that the Section 1129(a)(1) has been met by the plan

23  proponents.  Section 1129(a)(2) states that the plan proponent

24  must comply with the applicable provisions of the Bankruptcy

25  Code.   In reviewing the entirety of the procedures and

**The Litigation Practice Group P.C.; Marshack v. Bayrooti**

119

1   operations and activities in this case, and specifically with

2   respect to the plan and the process of confirming a plan, the

3   Court determines that the plan proponents have complied with

4   the applicable provisions of the Bankruptcy Code.

5        With respect to 1129(a)(3), the plan must be proposed

6   in good faith and not by any means forbidden by law.

7   Objections have been raised with respect to alleged bad faith.

8   As it was pointed out in court, the subject of good faith and

9   the consideration of good faith has been designated by the

10  Ninth Circuit as one that I won't repeat here but was correctly

11  amplified and articulated by Mr. Hays.  The Court finds,

12  through the totality of the evidence, and specifically the

13  evidence before the Court, that the plan has been proposed in

14  good faith and not by any means forbidden by law.

15       With respect to 1129(a)(4), any payments for services

16  of cost associated with the case must be approved by the court

17  as reasonable.  The plan provides exactly for that, as does the

18  Bankruptcy Code.  And so the proponents have met that

19  requirement.

20       Under 1129(a)(5), the plan must disclose the identity

21  and affiliations of any individual who will serve as the

22  director, officer, or voting trustee under the plan, as well as

23  the appointment or continuation of any insider of the debtor in

24  such positions.  The Court has reviewed the plan and finds that

25  the plan has met these requirements.

Case 8:23-bk-10571-SC    Doc 1072    Filed 09/03/24    Entered 09/03/24 06:50:40    Desc
Main Document    Page 120 of 170
The Litigation Practice Group P.C.; Marshack v. Bayrooti

120

1          1129(a)(6) is not applicable.  It involves

2     governmental regulatory commissions.

3          1129(a)(7) is what we call the best interest of

4     creditor test.  The Court will not go into all of the details

5     of what the best interest of creditor test is at this point,

6     but all of the professionals here know what it is.  The

7     standard is that each holder of an impaired claim must either

8     accept the plan or receive at least as much as they would in a

9     Chapter 7 liquidation.  As determined by the evidence before

10    the Court and all of it, including the monthly operating

11    reports and the reports by the trustee and the proffer from Mr.

12    Hays, the Court finds that the best interest of creditor test

13    has been met under 1129(a)(7), and thus, the plan proponents

14    have complied with that requirement.

15         1129(a)(8) requires that each class of -- or claims of

16    interest must accept the plan or be unimpaired, except as

17    provided by the cramdown provisions that I'll discuss soon.  I

18    find that most have accepted the plan, but the fact is that

19    some classes have not voted, and therefore we must deal with

20    the cramdown provisions of the Bankruptcy Code.

21         Treatment of priority claims fall under 11 U.S.C.

22    1129(a)(9).  The plan must provide for the full payment in full

23    of certain priority claims, including administrative expenses

24    and certain tax obligations.  And this is what people are

25    forgetting.  The last part of this sentence, "unless the holder

**The Litigation Practice Group P.C.; Marshack v. Bayrooti**

121

1   of such claim agrees to a different treatment".  The Court

2   finds that the plan proponents have met the requirements under

3   1129(a)(9), as set forth in the proposed modifications that

4   have already been articulated in this court today.

5         1129(a)(10) requires an acceptance by at least one

6   impaired class.  At least one impaired class must accept the

7   plan, excluding the votes of insiders.  The Court will observe

8   that OHP class 1(d) has voted in favor of the plan, as well as

9   the general unsecured creditors of 3(a) and 3(b).  The plan

10  meets that requirement.

11        With respect to feasibility, there have been

12  objections with respect to feasibility.  11 U.S.C. Section

13  1129(a)(11) requires that the plan must be feasible, meaning it

14  is not likely to be followed by liquidation or further

15  financial reorganization unless proposed in the plan.  The

16  Court has taken pains to listen to valid arguments, highly

17  valid arguments regarding the feasibility issues here.

18        The Court, however, also has listened to the

19  debtors -- pardon me, the plan proponents with respect to the

20  issue of what happens if feasibility fails because it's not

21  perfect.  The system of confirmation of a bankruptcy plan is

22  never perfect.  It's like projections that are given to one in

23  the beginning of a case when someone seeks cash collateral.

24  They say these were our actuals before the case, and now these

25  are our projections.  They are projections.  And what the Court

Case 8:23-bk-10571-SC   Doc 1072   Filed 09/03/24   Entered 09/03/24 06:50:40   Desc
Main Document     Page 123 of 170
**The Litigation Practice Group P.C.; Marshack v. Bayrooti**

122

1 has to do is utilize its own experience and its own ability to

2 look at the evidence before it and discern whether or not there

3 is a high likelihood of feasibility.  And that's my standard.

4 High likelihood of feasibility.  Other standards are less-than-

5 high likelihood.

6   I believe that because I have reasonable knowledge of

7 the efforts of the current Chapter 11 trustee and the attorneys

8 for that trustee, and the committee and their professionals,

9 that they will be able to fund this liquidation plan to an

10 extent where it will not be administratively insolvent.  I

11 believe that there will be a recovery, and I believe it because

12 of the evidence before me today.

13   It is not a hope and a prayer.  It is actually divined

14 from my examination of the efforts by the professionals in this

15 case, by the actual results that have been reported in this

16 case, that by the amount of settlements that have already come

17 in and the very significant reductions in claims that have been

18 negotiated, all of that melds into my belief, based upon the

19 evidence, that this plan is feasible and not likely to be

20 followed by an additional activity in court, understanding that

21 this is already a liquidation plan.

22   The worst that can happen is it defaults.  The worst

23 that can happen is it becomes administratively insolvent.  I

24 don't know what the current ratio of administratively insolvent

25 Chapter 11 cases are compared to those that survive and

123

1  actually make a distribution to secured and/or unsecured
2  claimants, but I do know that it exists.  And it doesn't have
3  to be a pure perfect result.  It has to be feasible, and it has
4  to mean something that is not followed by a disaster.
5       Disaster comes from those who may have to disgorge
6  fees.  That would be a disaster, but it's an unavoidable
7  disaster.  It's something that the professionals, who have
8  worked hard in this case for over a year, have understood, that
9  if they don't succeed in the efforts, first in providing a
10 liquidation plan, and then second, administering a trust and
11 administering the recovery actions by that trust, if they don't
12 succeed, they will be their own subjective troubles.  They will
13 be their own cause of troubles.
14      If this case had gone into a Chapter 7 liquidation
15 immediately, there would be nothing for anyone in my opinion.
16 Or significantly less, because the Chapter 7 trustee probably
17 would not have had all of the necessary implements to recover
18 the amounts that they are planning on recovering and have
19 already recovered.  That is the Court's view of this, and
20 therefore I believe that the plan is feasible, and therefore
21 the plan proponents have met the requirements of 1129(a)(11).
22      Payment of fees.  All fees payable under 28 U.S.C.
23 1930 must be paid or provided for under the plan.  That is a
24 requirement of Section 1129(a)(12).  I believe that we have met
25 that inside the plan.

124

1          There are no retiree benefits here, and so

2     1129(a)(13).

3          There is no -- there are no domestic support

4     obligations involved, and therefore 1129(a)(14) are not

5     applicable.

6          This is not an individual case and therefore

7     1129(a)(15) is not applicable.

8          Transfer of properties under 1129(a)(16), let me just

9     clarify this.  If the plan proposes the transfer of property by

10    a nonprofit entity, it must comply with applicable laws.

11    That's not involved here.

12          So now we have to go to cramdown because we don't have

13    the necessary votes to confirm a consensual plan.  1129(b)

14    states that if all the requirements of 1129(a) are met, except

15    for the acceptance of all impaired classes, that would be

16    1129(a)(8), the plan can still be confirmed if it does not

17    discriminate unfairly and is fair and equitable with respect to

18    each nonaccepting impaired class.  The Court has reviewed all

19    of the claims of the nonaccepting impaired classes, and the

20    Court determines that there is no discrimination at all with

21    respect to the treatment, and it is fair and equitable, as Mr.

22    Hays has described.  They're getting basically what their

23    claims state they get.

24          Mr. Hays, am I wrong about that?

25          MR. HAYS:  You're absolutely correct about that, Your

Case 8:23-bk-10571-SC   Doc 1072   Filed 09/03/24   Entered 09/03/24 06:50:40   Desc
Main Document    Page 128 of 140
**The Litigation Practice Group P.C.; Marshack v. Bayrooti**

125

1    Honor.

2           THE COURT:  Thank you.

3           Each of the requirements must be satisfied by this

4    Court to confirm this Chapter 11 plan.  There's also what we

5    call "discretionary contents" of plans under 1123(b), for

6    instance assumption and rejection of executory contracts and

7    leases.  And the injunction and --

8           THE COURT:  Exculpatory.

9           THE COURT:  -- exculpation -- thank you.  Talking too

10   fast and too long.  I apologize.  I should slow down.

11          Those have been resolved.  I find that I am in

12   agreement with the United States Trustee that the injunction

13   provisions as set forth in the plan meet all of the

14   requirements under the Ninth Circuit current law.  And that law

15   has not been changed by the results of any Supreme Court

16   ruling, including, but not limited to, Purdue Pharma.

17          So with that, I confirm the plan, with the

18   modifications that have been set out in inventory on the

19   record.  And I would like to ask for any suggestions with

20   respect to a post-confirmation status conference date.  How far

21   out?

22          MR. HAYS:  Your Honor, I would either suggest the very

23   end of October or the very beginning of November.  And I think,

24   by that point in time, fee apps will have been heard and

25   resolved, and the balance of the money in the estate will have

126

1   been transferred to the liquidating trust.

2          THE COURT:  With respect to only the issue of a date

3   to be selected for a post-confirmation hearing.  Does anyone

4   have anything to add on the selection of the date?

5          Let's pick November 6th at 1:30.  November 6th, 1:30,

6   with a report due by anyone.  I invite everyone and anyone to

7   file a report fourteen days before.  Please serve it on anyone

8   who has been present today at this hearing.

9          Is there anything else I can help you with?

10         MR. HAYS:  Nothing further, Your Honor.  Thank you.

11         THE COURT:  Will you prepare a written order, Mr.

12  Hays?

13         MR. HAYS:  Yes, Your Honor.  There was the draft that

14  was attached to the papers.  We will modify it as we discussed,

15  and we will get that uploaded as quickly as possible, hopefully

16  by tomorrow.

17         THE COURT:  Will you share that with the creditors

18  committee and the U.S. Trustee?

19         MR. HAYS:  Yes, of course.

20         THE COURT:  Thank you very much.

21         MR. HAYS:  Thank you.

22         THE COURT:  All right.  Court is adjourned.  Thank

23  you.

24      (Whereupon these proceedings were concluded at 2:14 PM)

25

127

1                               I N D E X

2   RULINGS:                                        PAGE LINE

3   Plan is confirmed, with modifications as set     125    17

4   forth on the record

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

128

1              C E R T I F I C A T I O N

2

3   I, River Wolfe, certify that the foregoing transcript is a true

4   and accurate record of the proceedings.

5

6

7

8   _____

9   /s/ RIVER WOLFE, CDLT-265

10

11   eScribers

12   7227 N. 16th Street, Suite #207

13   Phoenix, AZ 85020

14

15   Date:  September 3, 2024

16

17

18

19

20

21

22

23

24

25

Case 8:23-bk-10571-SC   Doc 1072   Filed 09/03/24   Entered 09/03/24 06:50:40   Desc
In Re: The Litigation Practice Group   Main Document   Page 152 of 176

August 29, 2024

## A

**ability (10)**
34:12;35:12;36:4;
62:3;82:10;83:11;
91:13;109:8;113:14;
122:1
**able (15)**
9:3;12:8;24:18;
27:22;39:22;52:15;
55:12;68:21;84:8;
87:6;97:7,19,21;
107:5;122:9
**above (3)**
56:25;57:11;114:19
**absent (2)**
82:11;102:6
**absolutely (9)**
26:19;29:6;31:14;
49:1;81:25;111:22;
115:2;116:10;124:25
**abusive (2)**
67:12,12
**accept (15)**
14:2,4,5,6,19,20;
15:5,24;19:23;27:16;
35:11,20;120:8,16;
121:6
**acceptable (1)**
33:21
**acceptance (5)**
15:8;19:5,21;121:5;
124:15
**accepted (5)**
15:20;19:7,19;33:2;
120:18
**accepting (1)**
27:14
**access (1)**
105:19
**according (2)**
58:9;108:4
**account (5)**
45:12;61:12;63:21,
23;72:6
**accountants (2)**
48:3;111:24
**accounting (1)**
58:6
**accounts (1)**
64:3
**accrued (1)**
41:3
**accumulated (1)**
81:21
**accurate (1)**
86:23
**accurately (1)**
73:7
**achieve (1)**
104:11
**achieves (2)**

22:20;23:2
**acknowledgment (1)**
80:7
**acquires (1)**
53:10
**act (2)**
68:9;99:5
**action (6)**
31:9;57:2;61:22;
86:25;89:19;110:19
**actions (4)**
39:11;61:21;
114:21;123:11
**active (2)**
24:19;86:5
**activities (1)**
119:1
**activity (1)**
122:20
**actual (3)**
62:25;72:19;122:15
**actually (8)**
24:8;59:10;62:24;
63:2,23;94:15;
122:13;123:1
**actuals (1)**
121:24
**Adam (1)**
10:22
**add (3)**
53:16;84:2;126:4
**added (6)**
85:18;89:23;93:14;
94:19;97:11;110:6
**addition (7)**
50:16;52:3;58:17;
61:5;72:13;114:24;
117:25
**additional (6)**
53:17;90:15,16;
92:24;113:6;122:20
**additions (1)**
113:4
**address (13)**
26:22;27:23;45:16;
49:21;52:13;69:25;
70:6,17;103:17;
106:23;108:10;
109:25;114:3
**addressed (4)**
51:2;88:15;108:15;
114:4
**addresses (1)**
49:24
**addressing (3)**
21:2;27:7;103:1
**adjourned (1)**
126:22
**admin (1)**
65:15
**administering (2)**
123:10,11
**administration (4)**

71:13,23;72:11;
73:8
**administrative (70)**
20:25;21:21;23:16;
28:21,23,24;29:4,10,
15,16,20,24;30:7,18,
19,21,22;31:5,6,10,
11,15,17;32:23;
39:20;40:11;44:12;
46:24;47:2;54:1,9,11,
24;55:3,6,10,13,20;
57:22;58:11;59:10,
18;62:19;63:6,14,17;
64:2,4,22;65:25;
95:25;97:11;101:20;
102:16,19;103:2,4,7,
11,16;104:10;105:6,8,
13;107:16,18,22;
114:6;115:5;120:23
**administratively (5)**
104:21,24;122:10,
23,24
**administrator (1)**
46:20
**admissible (1)**
27:12
**admonished (1)**
69:9
**adopted (1)**
97:24
**advance (1)**
50:25
**adversaries (1)**
117:23
**adversary (6)**
61:22;66:9,19;67:7,
10,13
**adversely (1)**
81:12
**advised (1)**
87:5
**adviser (1)**
10:25
**advocating (2)**
73:1;80:25
**affairs (2)**
47:21;92:14
**affect (11)**
74:12,17,20;75:4,6;
76:1,12,15,19;99:3,4
**affected (4)**
48:8,9;75:8;91:10
**affiliations (1)**
119:21
**afforded (2)**
31:9;48:21
**afternoon (4)**
9:2;84:1,2;93:6
**again (31)**
7:22;8:11;10:21;
18:17;19:19,22;25:6,
10;32:20,24;33:23;
34:20;37:7,15;38:5,9;

43:8;48:3;60:21;
73:20;75:3;76:2,13;
77:25;87:25;90:3;
95:9;99:9;100:12;
117:20;118:12
**against (11)**
31:9;34:13,17;
35:13;36:4;38:12;
49:3,4,8;51:12;56:2;
62:4;70:25;78:10;
95:11;98:17
**agent (1)**
65:22
**agents (3)**
56:4;62:4,7
**agents' (1)**
65:7
**agility (1)**
68:18
**ago (2)**
105:19;116:24
**agree (7)**
8:1;46:25;54:10;
87:13;91:20;112:22;
115:2
**agreed (7)**
43:17;47:14;97:4;
110:24;111:14;
114:25;116:13
**agreement (17)**
38:7;80:24;86:9;
88:18,18;91:2,3,4,5,7,
9,11,14,17;111:4;
115:20;125:12
**agreements (1)**
117:19
**agrees (2)**
87:4;121:1
**ahead (1)**
83:12
**aiming (1)**
45:14
**Alan (1)**
9:6
**alibi (1)**
62:18
**alimony (1)**
95:1
**allegation (3)**
77:21;108:12;109:4
**allegations (1)**
107:13
**alleged (8)**
18:3;35:24,24,25;
36:4;37:24;78:1;
119:7
**allegedly (1)**
61:11
**allow (8)**
12:7;41:9;42:12;
47:3;63:24;65:21;
114:16,16
**allowable (2)**

56:6,7
**allowance (6)**
23:22;53:25;96:4;
104:10;107:15;
112:24
**allowed (70)**
14:10;15:5;19:13,
14;28:21,22;30:3;
31:12;37:14;39:19,
20;40:14,16;41:10,19,
20;44:12,12;46:10,14,
17,24;47:1,23;48:5,6,
13;49:11;54:20,24;
55:2,6,8,10,13,20;
56:8;57:22;58:11,13,
16;62:20,23;63:7,8,
12,14,17,18,20;64:4,
5,24;65:16,16;66:6;
95:14;102:2,4,19,21,
21,24;103:5,13;105:7,
13;112:3,3,7
**allowing (7)**
19:16;29:1;44:21;
64:1;98:5;103:7,15
**allows (5)**
46:9;53:10;62:13;
95:11;98:16
**alter (3)**
36:13;54:12;81:15
**alternatively (1)**
102:20
**alternatives (1)**
89:22
**Although (1)**
33:8
**always (3)**
9:4;13:14;100:22
**ambiguity (1)**
48:19
**amend (2)**
42:17;44:25
**amended (1)**
117:10
**amendment (3)**
70:18;88:18;113:16
**among (1)**
91:14
**amount (22)**
22:12;37:13;40:8;
41:1,8,11;59:16,17;
63:19,24;86:25;
92:13;94:2;95:11;
97:3,19;98:9,11,13;
105:11;108:4;122:16
**amounts (7)**
23:15;28:10;31:11;
41:2,9,10;123:18
**amplified (1)**
119:11
**amplify (1)**
34:7
**ANA (1)**
7:1

Case 8:23-bk-10571-SC   Doc 1072   Filed 09/03/24   Entered 09/03/24 06:50:40   Desc
In Re: The Litigation Practice Group   Main Document      Page 153 of 176

August 29, 2024

analysis (10)
23:19;26:14;28:4,7;
29:23;41:2,12;58:21;
60:19;108:5
analyst (1)
47:13
and/or (1)
123:1
Andrassy (2)
67:18;68:17
Anthem (2)
9:7;59:24
anticipating (1)
41:7
apart (2)
73:22;77:10
apologize (10)
8:25;12:9;16:4;
25:25;67:24,24;
68:10;69:1;97:8;
125:10
apology (3)
67:23;69:1,4
apparently (1)
7:17
appeal (7)
38:2;62:20;63:1;
64:4;101:16,18;102:9
appealed (4)
21:24;38:9;101:17;
102:4
appeals (1)
107:17
appear (4)
21:9;71:6;73:22;
82:24
appearance (4)
8:14;10:14;18:5;
78:7
appearances (2)
8:10;10:10
appeared (1)
36:22
appearing (4)
8:4;9:15;24:17;
43:18
appears (5)
28:6;73:25;74:1;
80:11;107:2
appellate (4)
54:10,21;63:18,19
applicable (12)
17:8,22,24;18:20;
108:19;118:19,24;
119:4;120:1;124:5,7,
10
application (3)
34:10;38:18;66:2
applications (10)
18:12;41:4;58:1,3,
7,9,12;60:10;66:16;
112:5
apply (1)

20:10
appoint (2)
89:13;90:14
appointing (1)
109:1
appointment (5)
72:15;92:9;96:17;
100:20;119:23
appoints (1)
90:8
appreciate (15)
10:6;42:15;53:21;
68:22,23,23;78:10;
93:11,15,17;98:3,4,7;
100:1;116:11
appreciated (1)
12:23
appropriate (5)
25:11,15;34:24;
53:12;77:25
appropriately (1)
51:19
approval (5)
18:22;66:2;82:12;
88:10;115:22
approvals (1)
23:22
approve (7)
7:8;44:15;47:5;
66:14;91:11;99:7;
107:8
approved (7)
18:10,13;36:25;
45:13;73:4;109:20;
119:16
approves (2)
34:21;48:7
approving (2)
7:11;30:12
approximately (5)
42:23;72:2;105:19;
108:8,24
apps (3)
41:6,8;125:24
April (1)
118:2
argue (1)
97:2
argued (3)
81:9;105:4;115:17
arguing (3)
29:9;51:24;107:3
argument (14)
23:12;27:14;57:14,
24;68:19;75:1;76:3,8;
77:13,16;78:9;81:6;
84:11;115:19
arguments (6)
72:20;79:14;93:8;
108:11;121:16,17
arise (1)
86:17
arises (1)

96:12
arising (2)
31:24;75:25
Aristotle (1)
87:11
around (2)
105:14;117:7
articulated (2)
119:11;121:4
Asian (1)
11:1
aside (3)
101:11,14;102:8
aspect (1)
14:15
assert (1)
36:4
asserted (4)
29:10,16;36:13;
38:5
assertion (1)
20:11
assets (6)
16:9,14;36:24;37:6;
48:24;49:6
associated (2)
95:25;119:16
assume (3)
21:23;51:14;52:14
assumption (1)
125:6
attached (8)
23:18;28:4;58:22,
23,23;59:5;113:10;
126:14
attempt (5)
37:3;77:17,19;78:3;
97:24
attempted (1)
50:24
attention (5)
12:11;26:23;63:4;
102:25;115:17
Attorney (6)
8:23;67:8,22;69:7;
76:16,16
attorneys (8)
52:5;54:12;56:3;
62:4;66:1;85:2;98:4;
122:7
attorney's (1)
62:13
attracted (1)
81:22
Audio (1)
7:4
AUGUST (2)
7:1;106:13
AUST (1)
9:11
authority (8)
22:17;24:14;31:1;
34:12;41:17;46:22;

65:20;71:7
authorization (1)
39:15
authorize (1)
65:9
authorized (5)
31:23;62:7,12,16,
17
available (6)
10:23;30:4;39:18;
41:13;44:10;49:6
avoid (1)
77:6
avoidance (1)
54:15
avoiding (3)
37:24;38:16;95:24
aware (4)
50:6;112:23;
113:21;114:1
Azzure (7)
7:13;9:23;36:21,22;
37:5,9;83:25

## B

back (22)
12:7;16:5;18:7;
20:4;21:22;22:8;
23:19;30:1;35:23;
36:7;42:24;43:24;
52:1;54:15;65:5;
67:16;75:23;85:20;
99:16;104:18;106:24;
107:19
bad (5)
61:17,18;96:19;
97:6;119:7
baked (1)
73:20
balance (3)
47:6;106:3;125:25
ballot (5)
98:19;99:7,8,10,14
bankruptcies (1)
96:18
Bankruptcy (37)
8:24;22:21;32:20,
20;33:16;34:12;36:5;
43:8,9;45:17;46:8;
49:13;57:2;65:1;
81:24;82:12;88:16;
90:20;96:13,15;97:6;
98:16;100:12,13;
103:15,21;107:5;
110:9;112:23;114:21;
115:21;118:19,24;
119:4,18;120:20;
121:21
bar (2)
50:13,18
bargain (1)
95:23

barred (3)
49:14;52:3;112:25
based (12)
22:22;24:2,4;28:12;
29:13;51:14;71:25;
82:2,4;109:21;
110:25;122:18
basically (5)
20:10;32:18;46:13;
116:14;124:22
basis (4)
55:2;71:8;72:9;
74:19
Bates (2)
44:4;45:18
Bayrooti (1)
67:7
become (5)
30:10;44:16;92:17;
103:13;112:23
becomes (8)
63:8,12;102:4,21;
103:5,7,21;122:23
beg (1)
68:5
beginning (3)
106:3;121:23;
125:23
begins (2)
7:4;117:9
behalf (14)
8:16;9:7,15,22;
10:16;12:18;20:20;
38:21;41:24;71:2;
83:25;85:3;98:24;
112:22
behind (1)
66:8
belief (1)
122:18
believes (2)
80:20;111:15
belong (1)
117:18
belongs (1)
61:13
benchmark (2)
42:11,18
beneficial (4)
52:21;53:1,8;113:1
beneficiaries (5)
16:11,13;49:10;
89:23;92:18
beneficiary (1)
86:11
benefit (8)
60:23;76:20;80:20;
85:19;95:19,22;
96:24;110:6
benefits (1)
124:1
besides (1)
48:14

Case 8:23-bk-10571-SC Doc 1072 Filed 09/03/24 Entered 09/03/24 06:50:40 Desc
In Re: The Litigation Practice Group Main Document Page 154 of 176

August 29, 2024

**best (15)**
13:14,17;18:25;
19:4;50:10,24;51:2;
69:22;97:25;110:2,
23;111:1;120:3,5,12

**best-case (1)**
29:22

**better (5)**
24:9;67:11;90:6;
96:8;101:8

**big (1)**
84:7

**biggest (1)**
23:11

**bill (2)**
12:14,16

**billed (1)**
12:25

**binds (1)**
59:19

**bit (5)**
17:5;21:5;82:14;
101:8;102:14

**Blixseth (5)**
32:8;34:20;55:23;
106:24;107:9

**Blue (1)**
9:7

**body (5)**
73:21;86:6,11,11;
110:10

**bona (1)**
77:9

**bond (17)**
32:11,14;61:10,13,
14,16,18,19,20,20,21;
62:1,2;65:17;108:14,
17,20

**borrowed (1)**
40:12

**both (13)**
9:12;10:24;14:4;
50:16,17,19;52:25;
67:9;68:19;71:15,18;
72:15;78:10

**bottom (2)**
44:6;80:5

**bound (1)**
60:5

**boxed (1)**
99:15

**breach (6)**
103:23,25;104:5,6,
16;107:21

**break (4)**
42:24;100:5,7,8

**Bridge (2)**
10:12;36:15

**brief (4)**
13:18;15:1;17:5;
114:4

**briefed (1)**
62:5

**briefing (2)**
63:23;117:11

**briefs (1)**
11:4

**brilliant (3)**
67:17,22;68:16

**bring (4)**
88:9,11;90:24;
115:16

**broadest (1)**
57:4

**brought (2)**
90:20;94:17

**Bryan (1)**
9:22

**burden (4)**
58:17;59:12;60:13,
18

**business (6)**
39:5;44:17;45:4;
84:9;111:18;115:1

**buyer (1)**
92:10

**buying (3)**
95:20,21;97:1

**bylaws (1)**
89:9,11,25

# C

**calendar (2)**
7:5;9:3

**CALIFORNIA (1)**
7:1

**Call (4)**
7:3;12:2;120:3;
125:5

**called (4)**
67:21;68:3,15;
104:1

**calling (1)**
68:10

**came (3)**
67:16;85:20;92:9

**can (60)**
13:13;15:7;17:18;
21:6,24;23:25;24:20;
28:17,19;37:8,16,22;
38:20;40:1;41:21;
42:15;43:12,15;47:7;
51:2;53:1;56:22;57:5,
6,8,21;58:6;60:3;
64:10;65:6,22;66:15;
81:4;87:16;88:9,11;
90:20,23;91:22;
93:22;97:22,25;98:1,
8;102:14,25;106:5;
107:12,18;108:6;
109:23;113:5,18;
115:21;116:19,20;
122:22,23;124:16;
126:9

**Capital (3)**

9:23;10:13;83:25

**care (3)**
45:2;76:8;104:6

**carefully (9)**
11:3;21:25;27:13;
49:20;117:7,13,17,24;
118:13

**carve-out (1)**
70:10

**case (54)**
7:18;10:4;17:9;
22:25;23:1,17;34:10,
20,21;50:7,23;51:22;
52:20;54:18;55:23,
24;70:1,13;72:12,22;
73:10;74:4;80:10;
81:22;83:1,17;86:11;
92:1,4;93:15;94:19;
95:2;96:12,15;97:9;
104:21,24;105:5,17;
107:9;109:14;117:6,
16,22,23;119:1,16;
121:23,24;122:15,16;
123:8,14;124:6

**cases (4)**
35:6;61:4;69:11;
122:25

**cash (14)**
19:11,13;28:9;
30:13;36:23;37:13;
40:5,8,17,24;55:8;
63:9;106:3;121:23

**cast (2)**
14:21;15:11

**category (2)**
19:17;35:5

**cause (3)**
86:25;91:18;123:13

**causes (2)**
61:21,22

**Cave (1)**
9:22

**caveat (1)**
87:7

**CELENTINO (6)**
11:18,20;12:15,18,
21,23

**Center (2)**
18:4;54:2

**certain (13)**
16:21;20:6;23:15;
36:11,11;37:12;
62:22;80:23;81:14;
101:7;116:14;120:23,
24

**certainly (6)**
81:4;108:2;109:12,
14,23;110:1

**cetera (2)**
60:10;79:7

**Chad (1)**
10:22

**chance (2)**

64:19;68:2

**change (12)**
7:15;48:12,14;76:3;
77:15;78:15;79:1;
91:9;97:13;113:24,
25;116:15

**changed (4)**
59:4;79:4;116:18;
125:15

**changes (5)**
18:23;43:16;81:12;
113:9,22

**changing (1)**
76:20

**channeled (1)**
51:9

**Chapter (21)**
8:8,12;13:11;16:17;
19:3;51:16,17;59:5;
96:17;105:25;108:23;
117:12,16;118:1,3;
120:9;122:7,25;
123:14,16;125:4

**characterization (1)**
81:7

**characterize (1)**
93:14

**characterized (1)**
69:24

**chart (2)**
103:10,10

**chasing (1)**
62:14

**cheap (1)**
80:6

**cheaper (1)**
32:21

**check (2)**
66:23,25

**check- (1)**
99:14

**checked (3)**
99:17,21;106:25

**chime (1)**
115:14

**choice (1)**
99:14

**Chris (1)**
11:25

**Christopher (3)**
8:11;11:20;12:6

**circling (2)**
16:5;22:8

**Circuit (10)**
22:24;23:8;32:6;
34:20;55:24;106:24;
107:9;109:20;119:10;
125:14

**Circuit's (1)**
70:13

**circumstances (3)**
22:22;29:12;61:3

**citation (1)**

22:23

**civil (1)**
68:5

**civility (1)**
68:8

**civilly (1)**
68:9

**claim (69)**
14:10;19:13,14,16;
28:21,23;29:25;30:2,
3,7,12;31:5,6,15;
34:13,17;36:1,17,20;
37:14,18;48:6;49:15;
51:14,18;52:3,5,6;
54:11;56:1;59:16;
62:12,15;63:7,8,12,
12,14,17,17;72:6;
77:14;87:7;94:12;
95:11,14,14,24;96:24;
97:4,5,11;99:3,18;
102:3,5,19,24;103:5,
7,16;105:6,8;107:16,
18;112:24;114:6;
120:7;121:1

**claimant (1)**
10:4;52:2,19,22

**claimants (11)**
14:9;30:19,21,22;
31:10,12;50:25;52:6;
55:4;61:17;123:2

**claims (104)**
14:1;16:10;17:12;
20:25;21:21;23:16,
16,17,22;28:24,25;
29:4,4,10,13,15,16,
20;30:18,20;31:17,
24;38:5,9;39:18,20,
20,23;40:14,16;
41:20;44:11,12,13;
46:24;47:2;48:5,13;
49:11;50:13,18;54:6,
9,20,24,25;55:9,9,14,
20;57:7,19,22,22;
58:11,12;59:9,10,16,
18;62:20;63:9;64:2,3,
5,22;65:16,18,18;
66:6;71:25;78:20,22;
94:18,19,21,23,24,25;
95:3,16,25;96:4;
101:20;102:8,16;
103:2,11,12;104:11;
105:6,13;107:4,6;
108:8;112:18;115:5;
118:20;120:15,21,23;
122:17;124:19,23

**clarified (1)**
67:16

**clarify (2)**
117:2;124:9

**Clarkson (2)**
43:9;100:13

**class (40)**
14:3,4,7,8;15:6,15;

Case 8:23-bk-10571-SC   Doc 1072   Filed 09/03/24   Entered 09/03/24 06:50:40   Desc
In Re: The Litigation Practice Group   Main Document   Page 155 of 176

August 29, 2024

19:18,24;35:11,13,18,
23;36:5,5,9,10,14,19,
21;37:10,17,18,23;
38:4,6;81:15;92:15;
95:4,4,4,4,10;96:5,25;
99:15;120:15;121:6,
6,8;124:18
**classes (24)**
14:1,2,3,6,7,16,18,
19;15:2,4,10;16:6;
19:6,7,23;22:15;
35:19,22;36:8,9;95:4;
120:19;124:15,19
**classification (3)**
17:11;36:8;118:20
**clause (9)**
56:6,8,10,14;61:25;
70:4,7,10,15
**clauses (1)**
33:17
**clawback (1)**
101:21
**clear (13)**
9:3;12:10;29:3;
52:16;53:9;59:16;
64:2;71:4;80:17;
110:17;112:18;
113:11;116:16
**CLERK (1)**
43:7
**client (16)**
61:12;74:12,17,20;
75:4,8;76:1,12,16;
82:16;84:6;93:14;
94:9;103:25;105:7;
113:23
**clients (23)**
13:22;20:3,17,22,
24;23:12,14;28:22;
29:17,21,23;32:9,17;
54:2,13;69:22;72:9,
13,20,21;73:1,4;76:4
**clients' (2)**
103:12;105:6
**client's (1)**
93:7
**close (1)**
26:23
**closed (1)**
66:8
**Club (1)**
32:7
**Code (9)**
22:21;23:3;65:1;
102:18;118:19,25;
119:4,18;120:20
**cognitive (1)**
82:14
**collateral (1)**
121:23
**colleagues (1)**
93:12
**collect (2)**

97:24;98:24
**collected (1)**
61:23
**collecting (1)**
49:16
**column (2)**
23:25;24:2
**coming (3)**
24:7;86:20;100:23
**comment (6)**
9:5;55:22;67:12,12,
18;68:17
**commenting (1)**
53:24
**comments (10)**
38:22;67:8,23;
100:3;101:19;102:11;
107:24;109:25;
110:16;116:4
**commissions (1)**
120:2
**committee (112)**
7:12;8:1,5;10:21;
13:1,12;16:19,20,20;
18:18,19;22:11;
38:21;50:2,5;58:5;
71:6,11,15,21,22;
72:5,10,14,16;73:3,3,
5,13,16,24,25;74:3,
11,24;75:9,17,19,24;
76:11,23;77:10,16,19;
78:1,3,8,11,15,22;
79:6,12,18;80:6,8,11,
25;81:2,4,14;82:6,10,
22,25;83:10,11;84:14,
17,22,24;85:1,3,4,5,
10,14,16,19,20,23;
86:12,18;87:5,14;
88:21;89:2,10,13,18;
90:2,3,5,8,9,24;91:11,
25;92:1;97:10;109:7,
8,10,12,14;110:4,11,
12,22;112:21;113:7;
122:8;126:18
**committee's (15)**
10:24;13:8;47:3,11,
12;73:18;77:8,23;
80:9,12,16;84:6;85:1,
23,24
**common (1)**
59:21
**commonly (1)**
33:1
**community (1)**
93:12
**company (1)**
92:15
**compared (2)**
40:18;122:25
**comparing (1)**
40:8
**competent (1)**
109:15

**complained (1)**
60:16
**complete (7)**
11:12;21:19;31:4,
16;68:1;84:7;99:7
**completed (1)**
8:19
**completely (3)**
42:5;67:24;115:12
**complied (3)**
17:23;119:3;120:14
**complies (2)**
13:19;19:3
**comply (6)**
17:7,22;18:20;
118:19,24;124:10
**composition (2)**
79:17;88:20
**comprehensive (1)**
53:20
**compromise (5)**
7:9;59:17,24,25;
86:24
**compromises (2)**
59:7;60:4
**computer (1)**
93:23
**computers (1)**
22:1
**con (1)**
93:3
**concept (1)**
86:7
**concern (2)**
39:3;91:19
**concerned (4)**
39:1,17;56:17;73:4
**concluded (2)**
10:18;126:24
**conclusion (1)**
40:4
**conclusions (1)**
110:25
**concur (1)**
112:22
**condition (6)**
32:14;39:3;44:9;
45:1;95:9;108:20
**conditions (9)**
39:7;41:16;56:24,
24;57:5,6;114:18,18;
116:12
**confer (1)**
113:22
**conference (2)**
7:19;125:20
**conferred (3)**
74:2;81:3;111:24
**confident (1)**
77:21
**confirm (27)**
13:9;15:7;26:7,8,
10;27:22;30:2;34:13;

35:12;37:8,17;57:3;
60:8;64:7,10,16,18,
20;81:1;82:8;94:1;
111:2;114:22;117:6;
124:13;125:4,17
**confirmation (63)**
7:7,19,24;11:4,5,
10;13:18;15:1,2,14;
16:19;21:9,12;24:21;
26:24,25;28:23;
32:16,25;39:8,10,13;
43:15;44:19;45:3;
46:4;50:14,19;51:22;
53:21;57:6;58:15;
70:1,25;71:4;72:16;
77:10;79:12;81:14;
82:17,17,20,21;83:4,
10;84:4;87:14;89:18;
93:3;98:20;110:1;
111:5,19;112:15;
114:2,19;115:2;
116:16;117:9,12;
118:16,17;121:21
**confirmed (15)**
18:16;30:6;33:2;
38:20;57:18;59:15,
18,19;60:5,25;65:10;
82:7;89:8;115:10;
124:16
**confirming (6)**
34:22;36:19;44:14,
18;56:15;119:2
**conflating (1)**
78:23
**confused (1)**
16:2
**confusing (1)**
46:21
**connect (1)**
24:15
**connection (1)**
108:13
**connects (1)**
34:6
**consensual (1)**
124:13
**consent (1)**
37:22
**consented (1)**
36:22
**consents (2)**
47:8,9
**conservative (1)**
40:25
**consider (3)**
68:2;77:13;87:6
**considerable (1)**
81:20
**consideration (1)**
119:9
**considerations (1)**
42:15
**considered (4)**

97:12;117:8,20,24
**considering (2)**
81:19;97:23
**consistent (4)**
22:21;23:2;32:6;
70:13
**construct (4)**
71:5;82:21;83:6;
84:5
**consumer (8)**
13:22;14:9,12;
47:21;54:14;72:21;
92:8,14
**consumers (3)**
13:2;88:21;96:2
**consummate (2)**
57:3;114:22
**consummation (1)**
56:24
**contains (2)**
36:6;107:1
**contemplates (1)**
48:6
**contention (1)**
108:12
**contents (3)**
17:13;118:21;125:5
**context (3)**
21:11;34:15;79:23
**continuance (1)**
25:9
**continuation (1)**
119:23
**continue (8)**
7:7;8:10;12:8;28:2;
42:25;58:15;65:4;
98:23
**continued (2)**
60:1;96:16
**contracts (1)**
125:6
**contradict (1)**
17:19
**contrived (1)**
77:13
**control (3)**
42:16;72:11;83:1
**controversy (1)**
86:25
**conversion (4)**
62:11,13,13;65:7
**converted (1)**
62:14
**copies (1)**
24:11
**copy (1)**
24:12
**correcting (1)**
116:7
**correctly (3)**
108:9;113:17;
119:10
**cost (1)**

Case 8:23-bk-10571-SC   Doc 1072   Filed 09/03/24   Entered 09/03/24 06:50:40   Desc
In Re: The Litigation Practice Group   Main Document   Page 156 of 176

August 29, 2024

119:16
**costs (2)**
86:6;95:24
**counsel (12)**
8:7;47:11;75:22;
76:23;84:20;85:3,20;
105:4;109:11,11,25;
112:21
**Counsel's (1)**
101:25
**country (1)**
11:22
**couple (2)**
92:4;98:23
**coupled (1)**
73:11
**course (11)**
11:9;12:16,24;50:7;
54:21,25;72:2;74:8;
80:24;91:25;126:19
**Court (508)**
7:3,4,6;8:9,13,18;
9:4,8,12,17,20,24;
10:1,4,6,9,14,17;11:3,
3,17,19;12:14,17,20,
22;13:4,6,7;14:13,15,
21,23;15:7,9,13,18,
22;16:1,24;17:5,11,
15,17;18:13;20:11;
21:2,3,6,10,14,18,23;
22:7,12,17,22,23;
23:4,7,10,19;24:4,11,
18,21;25:3,5,10,14,
17,17,21,23;26:2,3,6,
15,19,22,23;27:1,3,7,
10,13,19;28:1,8,13,
15,18;29:2,7,12,17,
18,21;30:6,14;31:1,1,
4,9,15,20;32:20;33:3,
5,8,9,11,23;34:2,10,
11,12;35:1,3,8,11,15,
17;36:15,19,25;37:4,
8,16;38:11,18,24;
39:1,7,21,24;40:1,3,
19,21;41:9,15,20,23;
42:1,3,5,5,6,15,22;
43:4,5,8,10,12,20,22,
25;44:3,5,7,14,21,24;
45:6,8,11,20,22;46:9,
15,19;47:5,8,16,18,
20,25;48:7,18,21,24;
49:2,6,12,25;51:3,10;
52:7,10,12,23;53:4,6,
9,15,19,20;54:3,10,
13;55:23;56:18,20,
22;57:2,9,12,13,24;
58:15;60:8,24;61:19;
62:9,17,18;63:18,19,
24,25;64:7,9,13,15,
20;65:1,3,6,20,21,23,
23;66:2,2,13,14,14,
15,25;67:4,5,7,11,15,
25;68:8,11,19,24;

69:4,6,7,9,15,19,25;
70:6,16,21,23;74:5,7,
9,15,20;75:1,7,13,15,
18,20;76:5,8,15,22;
77:1,5,7;78:9,14,17,
23;79:1,5,9,14,16,19,
24;81:1,24;82:1,3,8,
12,13,23;83:2,6,13,
19,23;84:1,10,13,19,
21,23;85:1,6,9,12,21;
86:1,13,14,16,20,21;
87:2,9,11,16,19,25;
88:3,6,10,12,13,16,19,
23;89:3,7,11,14,24;
90:1,3,5,11,16,18,21,
23,25;91:3,5,7,15,16,
20,23;92:7,12,17,22,
25;93:11,18,25;94:3,
5,9,12,15,17,23;95:7,
17,19;96:7,12;97:2,8;
98:6,11,14,16;99:10,
13,20,23,25;100:2,5,
11,12,14,17,22,25;
101:4,9,23;102:1,10,
13;103:15,17,24;
104:1,3,4,5,7,13,20,
23;105:1,3,8,15,22,
25;106:5,9,15,18,20;
107:2,5,7,24;108:10;
109:22;110:2,3,8,16,
18,22,24;111:2,2,8,
11,20;112:6;113:4,11,
14,17,20;114:8,10,12,
12,16,16,17,21,23;
115:13,16,22,23;
116:1,3,10,19,21,23;
117:1,5,7,13,15,16,20,
21,24;118:4,13,15,21;
119:3,8,11,13,16,24;
120:4,10,12;121:1,4,
7,16,18,25;122:20;
124:18,20;125:2,4,8,
9,15;126:2,11,17,20,
22,22
**court-approved (1)**
40:14
**courtroom (4)**
8:14,19;10:23;98:4
**courts (2)**
33:2;54:21
**Court's (12)**
24:17;29:14,20;
34:9;63:4;71:7;78:3;
107:18;113:14;
115:17;117:16;
123:19
**cover (1)**
29:10
**covered (5)**
35:9;66:23;67:2;
77:3;115:18
**crafted (1)**
73:10

**cram (1)**
15:16
**cramdown (9)**
15:10,24;16:3;19:9;
35:21;37:25;120:17,
20;124:12
**crammed (1)**
35:10
**create (5)**
24:15;78:7;86:17,
20;97:24
**creation (6)**
16:8;77:15;78:2,10,
22;80:11
**credibility (1)**
77:19
**credible (1)**
78:2
**Credit (1)**
34:20
**creditor (16)**
7:13;9:7,22;14:12;
35:24;36:6,10;77:14;
86:10;92:15;95:23;
112:18,23;120:4,5,12
**creditors (58)**
7:13;13:1,12,17,21,
22;14:5,6,8;16:6,11,
16,21;18:3;19:1,1,4,
10,21,23,24;22:14,15;
32:23;35:20,22;36:1,
8;38:4;40:13;50:2,7;
58:5;66:5;71:16;72:1,
21;73:2,12;75:6;
81:13,16,17,20;86:5;
96:9,20;97:7,10,10;
99:1;109:12;110:10,
13,23;111:1;121:9;
126:17
**Cross (1)**
9:7
**crux (1)**
23:11
**cumbersome (1)**
77:18
**current (5)**
26:17;33:20;122:7,
24;125:14
**currently (8)**
16:6;24:7;89:2,5;
105:13;108:4;109:11;
113:10
**cut (2)**
84:10,10

**D**

**damaged (1)**
95:24
**date (72)**
19:14;22:3;28:10,
11,20;37:13;39:2,3,4,
5,19,23;40:1,10,13;

41:3,14,16;42:19;
44:12,22;45:2,25;
46:7,25;47:5;48:4;
49:14;50:14,18;
51:23;53:11;56:17,
25;57:7,8,20,21,23;
59:2;61:1;65:15;
70:18;78:12;102:20,
21,23;103:5,6,14,14;
105:12;106:1;108:7;
111:14,15,17,18;
112:2,4,6,11,12;
114:7;19,25;116:13,
16,17;125:20;126:2,4
**date'll (1)**
57:17
**day (8)**
44:17;45:4,9;58:25;
106:14;110:13;
111:18;115:1
**days (21)**
19:15;28:25;30:11;
39:5;41:7;44:17,20;
45:2,5;51:21;57:17;
62:22;63:19;102:23;
103:6,19;105:19;
107:20;111:19;115:1;
126:7
**de (6)**
72:12;73:6,12;
78:19,21;92:3
**deadline (1)**
106:14
**deal (1)**
120:19
**dealing (1)**
91:24
**dealt (1)**
97:9
**Debt (2)**
9:16;71:2
**debtor (9)**
13:24;14:11;50:12;
51:12;52:16;54:19;
56:3;95:12;119:23
**debtors (2)**
56:4;121:19
**debtor's (4)**
13:22;14:11;16:12;
95:13
**debts (1)**
54:14
**decide (3)**
42:13;110:22;112:7
**decided (1)**
49:7
**decides (2)**
89:4,5
**decision (13)**
34:1,4,5,9,16,18;
71:7;74:16;76:11;
96:14;106:24,25;
107:7

**decisions (3)**
75:12;83:12;110:8
**declaration (3)**
10:25;11:2;50:21
**declare (2)**
41:21;42:18
**declares (1)**
41:15
**decree (1)**
39:12
**deemed (2)**
14:10;15:5,6;46:2
**default (8)**
55:17;64:7,8,11,18,
19;71:22;115:8
**defaults (1)**
122:22
**defend (1)**
54:13
**defer (2)**
49:23;70:19
**deferral (1)**
47:24
**deferred (1)**
46:9
**deferring (1)**
12:3
**definition (4)**
22:18;23:5;53:1,7
**delay (1)**
48:16
**deleting (1)**
48:14
**demonstrative (2)**
23:25;24:10
**denial (2)**
32:16;54:8
**denied (6)**
21:21;25:23;31:5;
54:3,3;107:16
**deny (1)**
32:25
**departed (1)**
90:4
**Department (1)**
108:25
**dependent (1)**
39:14
**depending (1)**
42:14
**deployed (1)**
54:11
**derived (2)**
23:7;96:25
**describe (1)**
105:23
**described (3)**
55:25;95:5;124:22
**deserved (1)**
96:10
**deserves (1)**
38:14
**deserving (1)**

Case 8:23-bk-10571-SC   Doc 1072   Filed 09/03/24   Entered 09/03/24 06:50:40   Desc
In Re: The Litigation Practice Group   Main Document   Page 157 of 176

August 29, 2024

96:9

**designated (3)**
15:15;78:12;119:9

**detail (1)**
18:8

**detailed (1)**
17:5

**details (1)**
120:4

**determine (2)**
42:7;51:18

**determined (4)**
22:20;52:19;
112:16;120:9

**determines (2)**
119:3;124:20

**determining (2)**
58:10,13

**developed (1)**
74:22

**development (1)**
97:12

**developments (1)**
23:20

**difference (3)**
84:8;110:18,19

**different (6)**
22:14;36:12;40:9;
59:9;98:9;121:1

**Dinsmore (8)**
8:7,1;11:20;47:11;
58:5;62:6;65:6;
107:14

**dipping (1)**
109:5

**direct (1)**
85:4

**direction (1)**
16:22

**directly (2)**
78:4;84:6

**director (1)**
119:22

**disadvantageous (2)**
60:7,7

**disagrees (1)**
82:23

**disallowance (1)**
23:22

**disallowed (1)**
29:17

**disallowing (3)**
36:16;38:8;64:2

**disappear (2)**
66:21;109:16

**disaster (4)**
123:4,5,6,7

**disbursements (1)**
109:9

**discern (1)**
122:2

**discharge (2)**
48:21;51:12

**disclose (1)**
119:20

**disclosing (1)**
18:20

**disclosure (16)**
17:12;18:15;23:15,
18;28:5;40:23;50:15;
58:22,23;70:9;78:6;
81:10;105:9;108:5;
117:9;118:20

**discounting (1)**
29:25

**discover (3)**
29:3;51:20,21

**discretion (9)**
41:18,24;42:7;
44:22;48:15;57:4;
65:24;66:15;114:17

**discretionary (1)**
125:5

**discriminate (1)**
124:17

**discriminated (2)**
35:13;38:12

**discrimination (1)**
124:20

**discriminatory (3)**
36:18;37:7,16

**discuss (7)**
18:8;20:4,20;28:15;
70:24;107:24;120:17

**discussed (7)**
34:17;35:21;88:14;
104:9;111:4;116:13;
126:14

**discussing (1)**
27:20

**discussion (9)**
11:13;14:15;22:6;
29:19;42:25;55:22;
61:2;82:15;91:24

**disgorge (5)**
30:24;31:10;
104:11;107:21;123:5

**disgorgement (1)**
31:2

**dispersing (1)**
65:22

**dispute (10)**
17:4;19:14;31:23;
72:21;86:10,12;
110:20;113:12,15;
115:22

**disputed (6)**
7:13;20:25;29:10;
63:8;64:4;107:13

**disputes (2)**
110:25;113:12

**disrupt (1)**
94:4

**disrupting (1)**
25:24

**dissent (3)**

107:2,3,4

**dissolved (1)**
90:10

**dissonance (1)**
82:14

**distinction (1)**
14:23

**distract (1)**
77:24

**distributed (2)**
16:15;97:14

**distribution (10)**
53:13;63:6,9;72:1,
6,8;73:12;81:19;
104:12;123:1

**distributions (6)**
16:13;30:24;39:16;
73:6;95:15;113:2

**Diverse (2)**
37:10,12

**divined (1)**
122:13

**docket (22)**
7:10,14,16;28:5;
43:19,23;50:22;53:2;
56:18;58:24,25;62:8;
65:8;103:1;105:16,
17;106:1;114:15;
118:1,2,8,10

**document (2)**
105:25;106:2

**documentation (1)**
36:11

**documents (4)**
24:4;117:18,25;
118:14

**dog (2)**
78:17;89:16

**dollar (1)**
29:15;88:10

**dollars (31)**
28:9;29:16,24;
40:18,19,24;41:11,13;
58:1,3,8;59:8,16;72:7,
8;87:1,4,8,16;92:5;
94:8,13,20;96:21;
97:3;105:10,14;
106:4,4;108:3,8

**domain (1)**
62:10

**domestic (1)**
124:3

**done (9)**
37:22;38:17;59:11,
13;60:4,18,24;
107:14;115:21

**doors (1)**
66:8

**double (1)**
106:24

**dovetail (1)**
21:22

**down (15)**

15:16;23:12;35:10;
46:3;57:10;67:19;
68:20,21,22;86:23;
87:20;90:7;103:3;
106:6;125:10

**draft (1)**
126:13

**drafted (1)**
48:6

**draw (1)**
40:4

**due (6)**
59:17;103:21;
106:13,16;112:12;
126:6

**duplication (1)**
77:6

**duplicative (4)**
71:12;72:16;73:14;
79:7

**during (1)**
115:18

**duties (2)**
92:14,19

**DVI (3)**
9:16,16;71:2

**dynamics (1)**
74:4

---

**E**

**earlier (3)**
57:9;104:9;114:14

**early (1)**
40:2

**ECF (1)**
53:2

**economic (5)**
71:17,23;72:12,14;
73:5

**Ed (1)**
7:23

**effect (4)**
30:9;66:8;77:11;
92:13

**effected (1)**
16:7

**effective (75)**
19:13;28:10,11,20;
37:13;39:2,3,4,19,23;
40:1,10,13;41:3,14,
16,21;42:8,14,14,19;
44:11,16,19,22;45:2,
25;46:6,7,25;47:1,4,4;
48:4,9,10,15;51:23;
53:11;54:6;56:17,25;
57:6,8,17,20,21,23;
64:21;65:15;70:18;
102:7,20,21;103:5,14;
105:11;108:1,3,7;
111:14,14,16,17,17;
112:2,4,11,12;114:6,
19,25;116:14,15,17

**effectively (1)**
69:22

**effectiveness (1)**
44:9

**efficient (1)**
32:22

**efforts (3)**
122:7,14;123:9

**ego (1)**
54:12

**either (5)**
15:5;56:4;93:3;
120:7;125:22

**element (6)**
17:6;19:17,20;20:2,
4,8

**elements (7)**
16:25;17:1,3;18:7;
19:8;22:14;38:11

**eleven (1)**
105:10

**eliminate (5)**
48:18;80:3,4;83:9,
10

**elimination (1)**
81:13

**else (14)**
17:18;42:6;53:15;
70:17,21;83:20;
89:13;90:20;92:2,22;
109:5,24;116:1;126:9

**email (2)**
24:18;25:13

**emailed (3)**
24:23,24,24

**emailing (1)**
26:20

**Emanuel (1)**
9:19

**embarrass (1)**
80:7

**employ (1)**
71:18

**employees (2)**
54:19;56:4

**enabled (1)**
64:16

**encourage (1)**
67:21

**encouragement (1)**
56:13

**end (7)**
29:13;41:13;45:14;
69:13;103:3;110:13;
125:23

**ending (6)**
40:24;105:18;
106:12,12;118:9,12

**endorsement (2)**
78:1,2

**endorsement's (1)**
78:7

**enough (16)**

Case 8:23-bk-10571-SC   Doc 1072   Filed 09/03/24   Entered 09/03/24 06:50:40   Desc
In Re: The Litigation Practice Group   Main Document   Page 158 of 176

August 29, 2024

41:18;54:24;55:1;
57:7;58:14,18;59:12;
60:13;103:18,22;
105:5;108:1,2;
111:15;115:8,11
**ensure (1)**
  113:25
**ensuring (1)**
  50:10
**enter (2)**
  39:8;44:14
**entered (8)**
  7:6,9,16;18:14;
  24:3;37:11;44:19;
  102:23
**enters (1)**
  103:15
**entertain (1)**
  24:11
**entire (4)**
  46:1;67:15;68:8;
  93:14
**entirely (2)**
  42:1;73:13
**entirety (2)**
  118:13,25
**entitled (11)**
  15:6,11;29:24;
  30:18;46:6;54:10;
  64:5;95:15;102:5;
  113:1;114:5
**entity (1)**
  124:10
**entry (8)**
  19:15;28:25;30:11;
  44:17;45:3;107:20;
  111:19;115:1
**equal (2)**
  14:10;55:8
**equalization (2)**
  104:13,14
**equalize (2)**
  30:24;107:21
**equitable (4)**
  35:14,17;124:17,21
**equitably (1)**
  38:13
**error (4)**
  54:9;56:15;64:1,2
**especially (4)**
  70:17;74:4;97:11;
  117:25
**Espinoza (1)**
  117:16
**essence (2)**
  26:4;48:8
**essential (1)**
  81:25
**establishment (1)**
  71:21
**estate (27)**
  13:11,17;16:12;
  21:15;30:14;32:20;

36:5;39:18,22;40:12,
17;44:11;45:17;46:8,
15,16,19;50:17;52:1;
53:11;71:19;87:5;
95:11;103:18,21;
104:16;125:25
**estates (1)**
  16:9
**estimate (1)**
  29:13
**et (2)**
  60:10;79:7
**evade (1)**
  71:7
**even (12)**
  28:15;51:20;56:9;
  66:6,7,8,20;67:9,13;
  68:7;72:24;106:25
**event (1)**
  110:20
**eventually (1)**
  103:13
**everybody (6)**
  13:1;59:19;60:5;
  68:1,12;104:18
**everyone (8)**
  11:12;14:25;17:18;
  50:11;68:5;86:2;
  111:8;126:6
**everyone's (1)**
  98:24
**evidence (34)**
  11:4;16:24;17:9;
  21:25;22:10,11;25:7,
  13,18;26:18;27:12,15,
  16;28:18;39:21,24,
  25;40:3;65:13;69:15;
  77:11,24;98:21;
  105:8,15;109:22;
  117:20;118:15;
  119:12,13;120:9;
  122:2,12,19
**evidentiary (6)**
  25:6,12,12;67:4;
  69:12,13
**exact (1)**
  106:14
**exactly (6)**
  11:9;21:10;35:4;
  43:1;103:20;119:17
**examination (1)**
  122:14
**example (3)**
  74:10;75:3,8
**excellent (1)**
  53:20
**except (9)**
  46:4;62:9;70:13;
  87:23;90:19;92:2;
  95:19;120:16;124:14
**exceptions (1)**
  69:13
**excess (1)**

46:12
**excessive (2)**
  71:14;79:6
**exchange (1)**
  36:23
**exclude (2)**
  31:24;105:12
**excluding (2)**
  19:19;121:7
**exculpate (2)**
  56:1;65:6
**exculpated (1)**
  62:15
**exculpation (26)**
  31:22,24;32:5;
  33:17,20;34:19,21;
  35:6;56:6,8,10,14;
  61:25;62:3;65:5;70:4,
  6,10,12,15;107:1,1,8,
  11;109:19;125:9
**exculpations (1)**
  32:3
**Exculpatory (1)**
  125:8
**excuse (3)**
  73:18;82:20;86:22
**excused (3)**
  100:19,21,23
**executory (1)**
  125:6
**exercise (5)**
  65:24;66:15;75:21;
  79:10;84:8
**exercised (1)**
  75:9
**exhibit (5)**
  23:25;24:10;40:23;
  105:9;108:5
**existence (3)**
  31:17;85:13;110:4
**existing (6)**
  16:20;26:9;32:5;
  36:23;73:18;74:22
**exists (1)**
  123:2
**expecting (2)**
  41:23;98:10
**expense (3)**
  54:1;71:19;82:11
**expenses (8)**
  32:23;40:9,22;
  55:10;71:14;81:20;
  95:25;120:23
**experience (1)**
  122:1
**explain (6)**
  87:21,22;98:8;
  101:6,22;110:3
**explanation (1)**
  14:25
**explicit (1)**
  72:24
**express (1)**

82:13
**expressly (2)**
  66:13;77:15
**extend (1)**
  36:24
**extensive (4)**
  13:10,16;53:20;
  102:13
**extensively (2)**
  54:23;102:15
**extent (11)**
  23:24;24:11;28:20;
  32:5;72:22;76:17;
  80:19;81:1;82:7,23;
  122:10
**extinguished (1)**
  34:13
**extinguishing (1)**
  34:16
**extremely (1)**
  83:17
**eye (2)**
  13:14,14

---

## F

**F3d (1)**
  22:25
**face (1)**
  67:12
**faced (1)**
  17:2
**facilitate (1)**
  96:3
**fact (20)**
  51:7;53:25;60:2;
  62:5;64:2;67:6;68:6,
  8;69:13;72:7;73:11;
  74:1,21;82:16;84:4;
  96:16;97:13,18;
  117:15;120:18
**factors (1)**
  22:6
**facts (1)**
  118:14
**factual (1)**
  96:14
**fails (2)**
  32:15;121:20
**fair (6)**
  35:14,17;66:18;
  88:19;124:17,21
**fairly (3)**
  38:13;102:12;
  109:19
**faith (19)**
  18:2,8;20:14;22:9,
  10,18,20;23:2,5;61:2,
  9;108:13;109:17,21;
  119:6,7,8,9,14
**fall (1)**
  120:21
**falls (1)**

45:8
**false (1)**
  81:7
**familiarity (1)**
  29:14
**far (6)**
  36:7;52:4;79:15;
  80:23;81:21;125:20
**faring (1)**
  11:23
**far-reaching (1)**
  82:24
**fashion (1)**
  25:8
**fast (3)**
  67:9,19;125:10
**faster (1)**
  48:11
**fatally (2)**
  60:25;61:1
**favor (9)**
  8:16;15:16;19:22;
  36:15;37:21;38:6;
  98:17;118:16;121:8
**feasibility (16)**
  22:6;23:13,19;24:1;
  26:13;28:4,7;41:2,12;
  108:5;121:11,12,17,
  20;122:3,4
**feasible (7)**
  19:25;20:15;23:14;
  121:13;122:19;123:3,
  20
**federal (1)**
  91:10
**fee (13)**
  18:12;41:4,6,8;
  58:1,3,7,9,12;66:16;
  112:5;115:6;125:24
**feedback (1)**
  24:15
**feel (2)**
  11:13;67:23
**fees (32)**
  18:9,14;20:6;23:16;
  30:23,24;40:11;41:1;
  45:13;46:9,10,14;
  47:5,23;55:2;60:10,
  10;62:14;66:2,3,14;
  71:14;81:20;104:11;
  108:6;112:1,4,16;
  115:21;123:6,22,22
**fellow (1)**
  97:16
**felt (1)**
  68:25
**female (1)**
  67:8
**FENNELL (2)**
  8:15,16
**few (3)**
  38:24;66:25;86:10
**fide (1)**

Case 8:23-bk-10571-SC   Doc 1072   Filed 09/03/24   Entered 09/03/24 06:50:40   Desc
In Re: The Litigation Practice Group   Main Document   Page 159 of 176

August 29, 2024

77:9

**fiduciaries (7)**
13:11;71:17;84:17;
87:23;88:1,3;92:17

**fiduciary (5)**
73:21;84:8;92:14,
19;109:3

**field (2)**
65:7;69:23

**fields (1)**
62:7

**fifteen (3)**
38:15;44:20;57:17

**fifty (1)**
69:12

**fight (2)**
78:17;89:17

**figure (1)**
72:5

**figures (5)**
27:21;59:20;60:22;
115:11;118:14

**file (9)**
41:6;49:15;58:2,6;
60:11;101:19;107:17;
112:24;126:7

**filed (35)**
13:15;18:12;20:24;
23:19;24:4,23,24;
25:1,4,13;28:5;32:8;
41:8;51:18;52:4;54:5;
58:4,9,16,24,25;59:1,
3;66:12;69:17;70:8;
71:3;96:15,16;
105:24;115:7;118:2,
3,8,10

**files (1)**
54:15

**filing (6)**
41:4;58:2;60:11;
106:1,9;112:5

**final (8)**
19:15;29:1;30:11;
97:22;102:5,23;
103:7;107:20

**finally (1)**
7:14

**financial (4)**
10:25;20:1;47:13;
121:15

**find (9)**
24:2;45:20;53:1;
63:10;91:8;94:2;
112:17;120:18;
125:11

**finding (3)**
22:21;38:11;109:23

**finds (5)**
118:21;119:11,24;
120:12;121:2

**fine (4)**
25:9;26:19,21;
49:25

**finish (2)**
35:15;51:6

**Firm (18)**
8:24,25;12:5;24:25;
47:10,10,11;48:2;
58:4,5,5;59:3;62:6;
65:6;69:22;107:14;
109:13;111:24

**firm's (1)**
54:1

**first (22)**
7:6,21;8:14;20:16;
31:7;39:4,7;41:4;
44:16;45:4;53:23;
69:8;86:21,22;93:11;
111:6,13,18;115:1;
116:6;117:10;123:9

**fiscal (1)**
92:3

**five (2)**
72:7;90:12

**fix (1)**
66:15

**fixed (1)**
63:16

**fixing (1)**
65:11

**flag (2)**
50:6;51:1

**flat-out (1)**
72:23

**flaw (1)**
91:8

**flight (1)**
90:6

**floor (1)**
53:22

**flunks (1)**
61:9

**fly (1)**
24:25

**follow (1)**
56:22

**followed (4)**
20:1;121:14;
122:20;123:4

**following (2)**
45:3;103:9

**follows (2)**
44:10;117:15

**forbidden (4)**
18:2;64:16;119:6,
14

**Force (2)**
10:24;47:13

**forces (1)**
42:14

**forget (3)**
12:14;15:9;41:7

**forgetting (2)**
106:14;120:25

**form (2)**
32:3,5

**formal (2)**
57:2;114:21

**formation (1)**
110:11

**former (3)**
13:22;32:8;51:16

**Forsley (3)**
9:6,6,9

**forth (10)**
13:18;41:1;43:16;
46:4;56:25;92:9;
101:12;114:19;121:3;
125:13

**forty-seven-million (1)**
59:8

**forty-seven-million- (1)**
59:15

**forward (3)**
13:15;74:19;104:15

**found (1)**
23:1

**four (6)**
14:1,2,18;19:23;
82:4;86:19

**fourteen (7)**
39:5;44:17;45:2,5;
111:19;115:1;126:7

**fourteen-day (1)**
111:18

**Fox (4)**
8:1,4;47:11;50:5

**framework (1)**
98:23

**frankly (1)**
75:5

**fraud (6)**
31:25;35:1,3,4;
56:10;70:10

**Frederick (1)**
83:7

**free (2)**
83:14;112:18

**front (4)**
38:18;96:19;99:10;
117:21

**full (11)**
30:13;31:16;33:11,
12;40:12;64:23;
102:20;103:14;
107:19;120:22,22

**fully (1)**
62:5

**Fund (7)**
9:16,16,16;71:2,2,
2;122:9

**funded (1)**
16:9

**funding (1)**
48:16

**funds (13)**
14:11;20:17;30:3,
15;31:8;39:18,22;
41:13;44:10;52:1;

53:11;57:18;96:24

**further (8)**
20:1;70:14;89:17;
104:15;114:1,9;
121:14;126:10

**furtherance (1)**
77:23

**future (7)**
16:10;31:7,18;
37:15,15;49:3,12

**G**

**general (8)**
14:8;52:5;65:18;
67:6;81:20;94:24;
95:3;121:9

**generally (2)**
19:1;88:21

**gentlemen (1)**
100:7

**gets (3)**
48:7;61:15;68:12

**Ghio (5)**
8:11,11;11:25;12:6;
95:6

**Girardi (1)**
61:11

**given (5)**
73:2,6;74:4;82:20;
121:22

**giving (2)**
27:14;31:12

**go- (1)**
74:18

**goes (6)**
36:8;46:5;61:24;
65:17;88:7;90:6

**GOLUBOW (52)**
9:14,15,15;71:1,1;
74:5,6,8,13,18,21;
75:2,5,11,14,17,19,
22;76:2,7,13,17,25;
77:2,6,8;78:13,16,21,
24,25;79:3,8,13,15,
17,21,25;80:1;82:1,2,
4,19;83:5,9,15;84:3;
115:14,15,23,25;
116:2

**Golubow's (1)**
20:17

**good (55)**
7:22,25;8:3,15,18,
23;9:6,8,9,10,12,14,
17,18,20,21,24,25;
10:11,12,14,15,17;
11:3,24;12:4;18:1,8;
20:14;22:9,10,18,20;
23:1,5;61:2,9;71:16;
79:5;83:24;84:1,2;
89:3;91:18;93:6;
106:20;107:10;
108:13;109:17,21;

116:22;119:6,8,9,14

**good-faith (1)**
108:11

**governed (3)**
87:23;88:2;89:9

**governmental (1)**
120:2

**Graceland (1)**
65:7

**grand (1)**
96:3

**grant (1)**
69:19

**granted (2)**
36:16;111:21

**grantor (4)**
32:12,14;108:18,20

**great (2)**
86:2;96:23

**Greyson (17)**
8:24;18:4;49:17;
54:2,10,11;56:2;59:3;
60:16;61:7;62:10,12,
14,21;63:4,25;115:2

**Greyson's (2)**
54:11;62:5

**Grobstein (3)**
47:19;48:2;111:24

**gross (5)**
31:25;34:24;41:8;
56:11;70:11

**ground (6)**
17:10,25;19:6,12,
20;32:25

**grounds (3)**
20:13,18;26:13

**Group (4)**
7:18;10:16;33:12;
94:10

**guess (3)**
8:9;60:17;67:11

**guidance (1)**
68:23

**H**

**Han (11)**
8:25;18:4;22:1;
54:2,4;59:4;60:17;
61:7;62:21;63:4,25

**hand (3)**
40:5;93:4,18

**hands (1)**
11:24;79:11

**happen (9)**
30:14;45:15;48:11;
65:10,12;89:8;
105:19;122:22,23

**happened (2)**
23:21;26:5

**happening (2)**
66:6;110:15

**happens (7)**

Case 8:23-bk-10571-SC    Doc 1072    Filed 09/03/24    Entered 09/03/24 06:50:40    Desc
In Re: The Litigation Practice Group    Main Document    Page 160 of 176

August 29, 2024

88:6;89:3;90:13;
91:8,12;101:18;
121:20
**hard (1)**
123:8
**harmed (2)**
13:23;84:6
**HAYS (198)**
7:22,23,23;11:16,
17;12:5;13:6,7;14:13,
14,18,22;15:4,12,17,
21,23;16:2;17:14,17,
20,21;21:1,2,5,8,11,
17,20;22:5,8,19,24;
23:6,9,11;24:20;
25:25;26:1,4,8,11,12,
16,21;27:1,20,23;
28:2,3,14,16;29:6,8,
19;30:5,10,17;31:3,
14,19,21;33:3,4,7,10,
22;34:8;35:2,4,9,16,
19;38:25;39:25;40:5,
20,22;41:17,25;42:4;
43:3,10,11,13,21,23;
44:2,4,6,8,23;45:4,7,
10,12,21,23;46:16,23;
47:9,10,17,19,22;
48:2,20,23;49:1,5,10,
22;53:24;54:22;
55:18,23;58:2,4,9;
60:11;61:2;62:21;
68:6,7;84:13,15,20,
22,24;85:3,7,10,17;
88:20;89:5;95:7,10,
18,21;96:7;100:2,4,9,
14;101:1,2,5,6,13,22,
23,25;102:11,14;
103:20;104:2,4,9,14,
22,25;105:2,4,21,24;
106:7,11,22;108:2,12;
110:5;111:6,10,11,13,
21;113:8,21;114:9,11,
25;116:4,6,11,20,22,
25;119:11;120:12;
124:22,24,25;125:22;
126:10,12,13,19,21
**head (1)**
113:22
**hear (1)**
47:5;75:1,1
**heard (11)**
21:9;59:24;60:1;
83:22;93:2,7;97:16;
98:21;101:19;114:13;
125:24
**hearing (17)**
7:8,24;8:20;18:6;
25:8,24;26:24,25;
33:5,14;37:19;41:5;
50:14,19;100:21;
126:3,8
**hearings (1)**
45:14

**heartfelt (1)**
12:3
**held (1)**
34:11
**help (2)**
43:12;126:9
**helpful (4)**
23:24;67:23;93:15,
23
**helping (1)**
117:2
**Henry (1)**
10:2
**here's (1)**
39:20
**hey (1)**
57:11
**high (4)**
59:20;122:3,4,5
**higher (1)**
94:23
**highly (2)**
109:13;121:16
**himself (1)**
101:5
**history (1)**
109:2
**hold (5)**
26:25;64:9,9,9;
71:24
**holder (7)**
19:12;31:5,15;63:8;
113:1;120:7,25
**holders (4)**
46:24;48:5;49:11;
97:11
**holding (1)**
46:13
**holiday (1)**
45:9
**Hollander (1)**
9:15
**honest (1)**
109:3
**Honor (126)**
7:22,25;8:3,6,11,15,
23;9:1,6,9,10,14,18,
21,25;10:11,12,15,20;
11:16,18,18;12:13,15;
13:7;17:14,16;22:5,
19,24;25:18,20;26:1,
21;27:12,18,25;28:3;
29:6;30:5,10;31:3,14,
19;33:22;34:8;39:25;
42:20;43:3,13;46:23;
49:23;50:4;51:7,25;
52:9,11,25;53:5,14,
17,23;64:14;69:3,18,
20;70:3,3,5,8,15,19,
22;71:1;75:5;76:2;
77:2;82:4;83:21,21,
24;84:15;85:24;
87:22;88:22;90:22;

91:1,19;92:6,11,16,
21,24;93:6,9,17;94:4,
11;95:6;96:11;98:3,9;
100:4,15,19,24;101:2,
3,25;104:22,25;
105:21;106:16,23;
113:6,18,21;114:9,13;
115:15;116:6,22;
125:1,22;126:10,13
**Honorable (2)**
43:9;100:13
**Honor's (1)**
101:19
**hope (2)**
94:17;122:13
**hopefully (1)**
126:15
**hospital (1)**
11:22
**hour (2)**
42:23;116:24
**hundred (21)**
30:20;54:24;55:1,7,
11,13,18,20;57:19,23;
58:19;60:14;63:13,
19;64:6,23;65:14,15;
102:16,17;115:5
**hybrid (1)**
8:20
**hypothetical (2)**
52:8,13
**hypothetically (1)**
103:25

# I

**idea (2)**
24:23;61:18
**identified (1)**
105:25
**identifies (1)**
86:19
**identify (3)**
8:21;49:19;75:10
**identity (3)**
18:16,21;119:20
**ideological (3)**
71:5;82:21;83:6
**ie (1)**
75:4
**ignore (1)**
72:19
**II (2)**
9:16;71:2
**illegal (1)**
13:23
**imagine (1)**
59:14
**Immanuel (1)**
83:13
**immediately (3)**
42:20;69:14;123:15
**imminent (1)**

40:7
**impact (1)**
86:10
**impaired (11)**
19:5,7,18;35:10,18;
120:7;121:6,6;
124:15,18,19
**implement (3)**
39:12;41:21;80:22
**implementation (2)**
33:1;80:10
**implemented (2)**
16:8;74:23
**implements (1)**
123:17
**implicitly (1)**
72:24
**importance (1)**
13:5
**important (8)**
12:11;13:3;72:21;
81:23;83:17,17,18;
98:6
**improper (1)**
67:5
**inapplicable (1)**
18:23
**inappropriate (4)**
25:1;31:22;69:6;
74:4
**incentive (1)**
73:7
**include (5)**
40:10;44:14,25;
55:10;103:11
**included (2)**
52:6;53:12
**includes (3)**
40:11,13;41:2
**including (16)**
13:21;16:10;39:19;
44:12;50:13;65:18;
82:10;105:6;109:18;
117:18,19,22;118:20;
120:10,23;125:16
**incorrect (3)**
65:3;72:23,25
**incorrectly (1)**
81:8
**increase (1)**
72:4
**incredible (1)**
97:19
**incredibly (1)**
81:23
**increments (1)**
98:9
**incurrence (1)**
71:14
**indeed (1)**
52:3
**independent (3)**
71:17;73:21;80:9

**indicate (2)**
10:22;107:7
**indicated (1)**
50:20
**indiscernible (1)**
10:13
**indiscriminately (1)**
42:13
**individual (8)**
71:22;72:14;73:5;
85:5;95:1;96:2;
119:21;124:6
**individually (1)**
42:10
**individuals (3)**
18:21;96:4;109:13
**inefficient (1)**
71:13
**inequitable (2)**
36:18;37:2
**inequitably (1)**
36:3
**inevitably (1)**
71:12
**inferences (1)**
15:1
**informal (1)**
114:2
**information (5)**
22:3;26:3,6;27:2,14
**inherently (1)**
66:22
**initial (2)**
70:9;78:5
**initially (3)**
70:8;85:18;89:1
**initiated (1)**
73:10
**injunction (7)**
49:3,8,8;62:8;65:9;
125:7,12
**injunctions (1)**
33:17
**injunctive (1)**
33:20
**injured (3)**
104:1,2,4
**injury (2)**
51:20,20
**input (1)**
16:21
**insert (1)**
45:1
**inserted (1)**
111:5
**inserting (1)**
96:25
**inside (2)**
8:13;123:25
**insider (1)**
119:23
**insiders (2)**
19:19;121:7

Case 8:23-bk-10571-SC    Doc 1072    Filed 09/03/24    Entered 09/03/24 06:50:40    Desc
In Re: The Litigation Practice Group    Main Document    Page 162 of 176

August 29, 2024

**insightful (1)**
67:22
**insightfulness (1)**
116:5
**insights (1)**
93:15
**insisted (3)**
50:16,17,17
**insistence (1)**
52:5
**insofar (1)**
72:19
**insolvent (1)**
104:21,24;122:10,
23,24
**instance (6)**
22:1;49:2;92:8;
97:16;104:24;125:6
**instead (5)**
34:18;44:15;67:12;
111:17;112:4
**instruct (1)**
25:17
**instructed (1)**
26:25
**instructions (1)**
56:22
**intend (1)**
117:4
**intended (1)**
78:7
**intending (1)**
11:9
**intentional (1)**
56:11
**interest (22)**
13:17;17:12;18:25;
19:4;21:12,15;52:21;
53:1,8;81:21;89:15;
92:3,13,20;110:23;
111:1;113:1;118:20;
120:3,5,12,16
**interested (1)**
92:10
**interests (1)**
71:16
**interim (5)**
18:12;30:23;41:4,6;
55:2
**interpretation (1)**
96:14
**interpretations (1)**
23:7
**interrupt (5)**
11:19;25:10;68:12;
100:15,18
**interrupted (2)**
25:5;117:4
**interrupting (1)**
67:25;68:6
**interruption (1)**
25:25
**into (32)**

21:11,22;22:6,12;
25:18;31:17;35:21;
37:12,15;52:1,17;
56:20;66:21;71:9,22;
73:20;79:11;83:13;
86:1;87:2,11;96:13,
25;104:18;109:5;
110:15;111:5;112:13;
114:1;120:4;122:18;
123:14
**introduction (1)**
12:9
**inventory (1)**
125:18
**investment (1)**
20:17
**investor (1)**
73:2
**investors (1)**
93:13
**invite (2)**
102:25;126:6
**invited (1)**
22:2
**involved (11)**
34:22;47:20,22;
92:7;104:20;109:14;
110:9;117:22;118:14;
124:4,11
**involves (1)**
120:1
**irrespective (1)**
72:13
**irrevocably (1)**
46:2
**issue (27)**
15:19;20:20;21:3,
18;22:4,9;23:15;
27:19,23;32:9;37:4;
50:5;70:4,20;71:20;
80:4;83:14;85:13;
86:4,5,17;94:18;
103:17;107:11;117:3;
121:20;126:2
**issued (1)**
102:1
**issues (12)**
18:8;49:21;78:5;
84:5;86:10;92:3,7,8;
101:14;106:22;
110:20;121:17
**item (6)**
7:6,8,10,14;106:2;
114:15
**items (4)**
42:20;58:18;62:7,
14
**IVk3 (1)**
39:6
**IZAKELIAN (7)**
9:18,19;37:19;93:5,
6,7,17

**J**

**jail (1)**
97:18
**Jayde (10)**
8:25;18:4;22:1;
54:2,5;59:4;60:17;
62:21;63:5,25
**Jayde's (1)**
61:7
**job (1)**
96:23
**John (1)**
10:2
**joint (4)**
13:8,9,9;38:22
**joke (1)**
12:24
**judge (2)**
43:9;100:13
**judgement (1)**
84:9
**judgment (10)**
36:16;37:24;49:16,
17;51:12,23;52:15,
17;53:10;101:16
**judicial (1)**
24:5
**July (2)**
106:12;118:12
**June (2)**
23:20,21
**jurisdiction (1)**
113:15
**Justice (1)**
108:25
**justified (2)**
80:14;83:1
**justify (1)**
77:17

**K**

**Kant (1)**
83:13
**Kathleen (1)**
8:24
**keenly (1)**
50:6
**Keep (2)**
52:12;102:11
**keeping (1)**
36:3
**Keith (1)**
8:4
**Ken (1)**
9:11
**kept (1)**
62:21
**Kim (1)**
11:1
**kind (2)**

9:2;51:1
**knew (1)**
12:1
**knowing (2)**
47:4;107:25
**knowledge (2)**
106:5;122:6
**known (2)**
18:25;19:9
**knows (5)**
26:23;106:15;
107:2,3;109:1
**KOFFROTH (68)**
7:25;8:1;10:19,20,
20;20:20;38:21;
42:20;47:12;49:22;
50:2,4,5;51:6,25;52:9,
11,19,25;53:5,7,14,
17;85:22,24;86:2,15,
19,22;87:7,10,15,18,
22;88:1,5,8,11,17,22,
25;89:9,12,21,25;
90:2,4,9,14,17,22;
91:1,4,6,13,19,22;
92:6,11,16,21,24;
93:1;110:17;113:4,6,
17,18
**Kurtz (3)**
10:22,23,25

**L**

**lack (6)**
15:8,19,23;31:8;
77:24;108:12
**ladies (1)**
100:7
**language (9)**
48:12;49:23;62:23,
25;63:5,13,15;70:12;
113:19
**larger (2)**
59:17;73:2
**largest (1)**
29:14
**last (3)**
38:14;82:15;120:25
**lastly (3)**
35:9;38:4;46:23
**late (3)**
9:2;41:5;51:18
**later (16)**
17:19;22:3;33:5,14,
24;48:24;60:4;62:20;
65:16;88:15;102:21;
103:6,14;112:6,23;
115:6
**Law (28)**
8:24,25;10:16;
13:23;18:2,4;29:11,
11;30:17,22;31:23;
32:7,12,13;54:2;64:1;
70:13;87:23;91:10;

98:16;107:10;108:17,
19;109:18;119:6,14;
125:14,14
**laws (1)**
124:10
**lawsuits (1)**
49:3
**lawyer (1)**
67:17
**layman's (1)**
87:2
**lead (1)**
71:12
**leases (1)**
125:7
**least (8)**
19:2;58:8,16;80:4;
94:20;120:8;121:5,6
**leave (1)**
57:1;114:20;115:7
**leaves (2)**
7:17;40:24
**left (2)**
20:21;51:5
**legal (1)**
81:7
**Leighton (1)**
9:22
**lenders (1)**
93:13
**Less (10)**
40:22;41:6,11;72:6,
8;87:8;92:20;110:8;
118:11;123:16
**lesson (1)**
86:2
**less-than- (1)**
122:4
**letting (1)**
91:17
**level (4)**
30:24;104:12,15;
107:22
**levels (1)**
36:12
**lien (5)**
35:25;36:24;37:5,
24;38:2
**liens (2)**
36:4;37:11
**light (1)**
55:24
**likelihood (3)**
122:3,4,5
**likely (9)**
20:1;65:10,12;73:6;
80:8;96:20;107:2;
121:14;122:19
**limit (2)**
82:9;86:6
**limitation (1)**
88:17
**limited (3)**

Case 8:23-bk-10571-SC    Doc 1072    Filed 09/03/24    Entered 09/03/24 06:50:40    Desc
In Re: The Litigation Practice Group    Main Document    Page 162 of 176

August 29, 2024

34:19;86:10;125:16

**line (9)**
13:2;45:23,25;80:5;
103:1,3,10;106:2,2
**lines (3)**
35:6;44:8;46:3
**liquidated (1)**
72:11
**liquidating (61)**
16:18;18:17;30:9;
32:10,10,12,18,24;
39:11,15;45:17,24;
46:3,8,12,18,20,21;
47:7;48:22,25;49:18;
61:16,20;63:22;
64:14,17;65:1,21,23;
66:3,11,13,17;71:10,
11,13,24;72:15;73:8,
20;80:19,20,24;81:5;
82:6;86:9;87:3;
101:12;103:22;
108:13,17,18,22;
109:6;110:21;112:13,
17;113:2,9;126:1
**liquidation (24)**
13:9;16:7,8,12;
19:2;33:18;34:7;
58:21;60:19;97:23;
98:18,21;111:3;
117:6,12,15,19;118:7;
120:9;121:14;122:9,
21;123:10,14
**LISSEBECK (4)**
8:6,7;11:25;12:6
**list (4)**
39:7;48:1;50:7;
111:6
**listen (2)**
27:13;121:16
**listened (1)**
121:18
**listening (3)**
9:11;33:24;84:4
**listing (1)**
103:11
**litigate (1)**
37:4
**Litigation (12)**
7:18;16:10,14;
36:25;37:5;40:7;72:3;
73:11;74:23;76:19;
77:14;94:10
**little (8)**
17:5;21:5;34:5;
82:14;101:8;102:14;
105:10;106:4
**LLC (1)**
9:23
**LLP (4)**
7:23;8:1;9:22;
47:10
**loans (2)**
40:11;95:1

**local (1)**
41:5
**lockout (2)**
62:8;65:8
**long (5)**
25:1,8;34:23;35:12;
125:10
**longer (4)**
36:20;38:1;59:8;
90:7
**look (12)**
24:25;29:12;49:23;
53:6;56:19;81:3;86:8;
91:17;98:25;99:16,
17;122:2
**looked (1)**
63:15
**looking (7)**
24:11;40:5,6,15;
57:9;74:13;75:5
**looks (1)**
8:19
**lose (1)**
92:19
**losing (1)**
103:24
**losses (2)**
22:1;102:8
**lost (2)**
89:15;92:3
**lot (5)**
59:4;60:9;83:11;
94:20;96:2
**LPG (8)**
7:17;49:4,7,15;
54:12,13;94:9;95:23
**LUDWIG (8)**
10:11,12,12;101:2,
4,5,10,24

**M**

**Madoff (1)**
97:17
**main (3)**
105:17;110:10;
117:23
**majority (1)**
106:25
**makes (1)**
56:15
**making (11)**
15:18,19;25:6;
28:10;67:3,12;69:12;
71:7;75:12;80:3;
110:7
**managing (1)**
42:7
**mandatory (1)**
42:12
**manner (1)**
13:23
**many (9)**

14:16,16;23:21;
48:10;58:1,3,8;59:7;
99:2
**March (50)**
8:22,23,24;9:5;
18:5;24:22;25:3,4,5,
11,15,20,22,24;26:19,
22;27:6,7,9,11,18,21,
25;53:19,23;56:23;
57:15,25;64:12,14,20;
65:3,5;67:2;68:3;
69:3,5,10,11,16,20;
102:15;107:11,17,25;
114:13;115:13;116:5,
7;117:2
**March's (14)**
20:3,22,23;23:12,
14;28:22;29:16,20,
23;32:9,17;42:9;
103:12,25
**Marshack (20)**
7:23;8:8,12;11:24;
12:4,12;13:3;16:17;
47:10;56:3;58:4,4;
61:14;62:4;65:25;
66:10,17,21;108:23;
113:25
**material (3)**
48:12;50:21;81:9
**materially (2)**
76:18;81:12
**math (8)**
59:12,13;60:15,17,
18,24;61:5;108:9
**matter (12)**
22:7;37:20;50:10;
56:8;62:5;72:7;77:22;
78:14;79:20;96:21;
99:2;113:8
**matters (3)**
7:4,17;102:9
**maximize (1)**
32:22
**may (21)**
11:18;27:23;38:15;
39:11;41:9;48:19;
52:6;56:25;57:13;
80:2;83:21;84:7,10,
10;92:18;95:22;97:7;
98:18;100:15;114:19;
123:5
**maybe (6)**
38:14;49:23;51:19;
58:16;93:19;94:20
**MC (3)**
9:16,16;71:2
**mean (6)**
59:21;61:12;94:3;
96:2;117:21;123:4
**meaning (2)**
41:12;121:13
**means (6)**
15:20,24;18:2;

50:13;119:6,14
**meant (1)**
12:24
**meantime (1)**
102:6
**mechanics (1)**
101:7
**mechanism (2)**
52:1;97:24
**meet (1)**
125:13
**meetings (1)**
89:16
**meets (1)**
121:10
**Meislik (3)**
10:22,23;47:13
**melds (1)**
122:18
**member (2)**
90:15,16
**members (19)**
16:20;18:18;71:22,
24;72:5,10,14;73:5;
78:18;80:6,8;85:5;
89:1,17,22;90:7,8,18;
92:15
**membership (6)**
78:11,18,21,24;
79:2,4
**memory (2)**
85:17;111:7
**mentioned (2)**
93:8;117:25
**mere (1)**
73:25
**merely (1)**
26:16
**met (12)**
19:17;38:1,13;
41:16;118:22;119:18,
25;120:13;121:2;
123:21,24;124:14
**midsentence (1)**
7:4
**mid-September (1)**
60:2
**might (9)**
10:18;29:13,25;
49:20;64:10,17,19;
80:2;86:20
**million (11)**
29:24;54:25;61:12;
87:1;94:20,20;
105:10;106:4,4;
108:3,8
**million-dollar (1)**
58:12
**Milwaukee (1)**
90:6
**mind (5)**
42:21;58:22;80:4;
101:18;111:13

**minimal (2)**
78:19;81:19
**minimis (6)**
72:12;73:6,12;
78:19,21;92:3
**minimize (1)**
32:23
**minimum (2)**
89:22;90:17
**ministerial (1)**
99:4
**minutes (3)**
42:23;43:5;66:25
**mischaracterize (1)**
72:18
**misconduct (4)**
31:25;34:24;56:11;
70:11
**Misken (1)**
9:11
**misnomer (1)**
74:1
**misreading (1)**
34:3
**miss (1)**
11:21;100:20
**missed (2)**
79:14;111:12
**missing (7)**
14:15;15:1;16:3;
47:16,25;61:24;65:17
**mistaken (1)**
99:14
**misunderstood (1)**
12:20
**Mitchell (2)**
10:11;101:2
**MNS (2)**
14:3,4;38:7,7
**moderator (2)**
47:18;92:9
**modification (12)**
45:15;81:9,12;
88:17;90:19;91:12,
18;112:10,15,20;
113:12;114:2
**modifications (4)**
81:18;111:3;121:3;
125:18
**modified (1)**
112:14
**modify (3)**
90:25;91:1;126:14
**modifying (1)**
81:8
**moment (6)**
12:11;13:3;20:5;
67:20;100:16;113:22
**momentous (1)**
11:21;12:1
**money (54)**
41:18;47:6;51:13,
15,23;54:24;55:1,16,

16,17;57:7,21,21;
58:11,14,18;59:13;
60:13;61:13,15,20,23;
62:1,2;64:6,25;65:14,
17;66:9,10,19;79:7;
92:20;97:13,19,25;
98:24;103:18,22;
104:17;105:5,11;
108:1,2;109:16;
110:14;111:15;
112:12,13,18;115:4,8,
11;125:25
**monies (2)**
46:12;95:12
**monitor (8)**
47:20,21,22,23,24;
109:9,9;110:12
**month (4)**
7:10;106:3;118:8,
11
**monthly (6)**
105:17,24;118:4,7,
14;120:10
**months (3)**
13:16;30:7;51:22
**more (21)**
19:22;21:25;22:3;
26:9;32:22;34:1;36:7;
38:24;49:21;60:9;
68:11,25;71:9;79:9;
80:12;82:3;87:1;
94:20;98:8;102:14;
118:5
**morning (24)**
7:22,25;8:4,15,18,
23;9:6,8,9,10,12,14,
17,18,20,21,24,25;
10:11,12,15,16,17;
83:24
**most (5)**
62:9;84:16;96:18,
20;120:18
**mostly (3)**
39:17;40:14;95:2
**motion (11)**
7:7,8,11,15;13:9;
59:24;88:11;90:24;
107:15;112:24;117:5
**motions (3)**
21:1;53:25;59:25
**move (1)**
21:19
**much (17)**
16:1;17:3;19:2;
33:24;51:8,9;66:9,10;
69:10;70:16;94:5;
97:8;99:4,9;101:13;
120:8;126:20
**multiple (2)**
24:11;41:6
**must (23)**
17:7;29:9;39:19,23;
40:10;44:11;58:18;

89:22;107:19;118:18,
24;119:5,16,20;120:7,
16,19,22;121:6,13;
123:23;124:10;125:3
**mute (3)**
11:19;12:7;93:21
**mutually (1)**
39:14
**myself (1)**
87:3

# N

**name (3)**
10:1;76:10;93:8
**named (1)**
97:17
**names (1)**
101:12
**narrative (1)**
72:25
**narrow (1)**
34:4
**narrowly (1)**
34:19
**national (1)**
81:22
**Nationwide (1)**
97:18
**near (1)**
103:3
**necessarily (2)**
21:13;115:18
**necessary (11)**
11:13;39:12;50:13;
65:22;69:20;73:17,
23;77:25;82:22;
123:17;124:13
**necessity (1)**
78:7
**need (21)**
20:1;26:24;27:8;
28:11,19;41:22;
45:15;49:18,21;
57:12,20;60:23;
65:14;73:21;77:9;
80:25;81:2;90:14;
99:16;100:7;108:9
**needed (1)**
96:7
**needs (9)**
24:22;27:21;57:15;
59:22;60:3,3,21;
63:15,16
**negligence (5)**
31:25;34:24;56:12,
12;70:11
**negligent (1)**
56:13
**negotiated (5)**
84:16,19;85:4,20;
122:18
**negotiating (1)**

84:25
**negotiation (1)**
84:21
**negotiations (7)**
13:10,13,16;22:12;
77:22;85:5,15
**nevertheless (1)**
35:12
**new (7)**
26:2,18;27:2,20;
81:10;90:8;97:17
**news (2)**
96:19;97:6
**Next (11)**
9:13;54:22;55:21;
56:16;57:24,25;70:1;
98:23;100:9;103:17;
106:10
**NG (12)**
9:10,10;33:9,10;
70:3,8,19,22;106:15,
16,19,21
**nice (2)**
12:9;91:23
**Nicholas (3)**
7:25;10:20;50:4
**Nietzsche (1)**
83:7
**Ninth (10)**
22:24;23:8;32:6;
34:19;70:13;106:24;
107:9;109:20;119:10;
125:14
**nobody (10)**
25:7;48:7;66:8,9,
19;69:15;89:19,21;
109:1;116:9
**nobody's (2)**
17:4,9
**nonaccepting (3)**
35:18;124:18,19
**nonbankruptcy (2)**
32:13;108:19
**nondebtor (1)**
34:14
**nondebtor's (1)**
34:13
**none (1)**
112:2
**nonetheless (1)**
72:4
**nonmaterial (2)**
43:16;45:15
**nonprofessionals (1)**
46:6
**nonprofit (1)**
124:10
**nonseverable (1)**
39:14
**nor (1)**
32:4
**normal (1)**
104:23

**note (7)**
19:7;40:25;68:21;
80:15;94:17;108:22;
109:6
**noted (2)**
10:14;59:23
**notes (3)**
66:23;67:1;77:4
**notice (21)**
24:5;49:13,14;
50:11,11,13,14,18,
19,22,25;51:8,19;
52:15;57:1;66:5,7,20;
89:18;114:20
**noticed (1)**
52:14
**notices (1)**
50:20
**noticing (1)**
52:4
**noting (1)**
20:23
**notwithstanding (1)**
13:3
**November (4)**
40:2;125:23;126:5,
5
**number (34)**
7:6,8,10,10,14,14,
16;23:20;28:5;36:9;
41:10;43:19,23;44:6;
45:23;50:22;52:5;
53:2,2;59:9;62:22;
86:16;103:4;105:14,
16,17;106:1,3,6;
118:1,2,5,8,10
**numbers (3)**
59:11;96:1,2

# O

**object (11)**
19:24;20:18;24:22;
25:19,22;27:4;37:1;
67:6;69:21;78:24;
99:17
**objected (10)**
17:4,9,11;26:13;
29:9;32:3,4;54:6;
96:24;115:23
**objecting (4)**
29:8;33:17;72:9;
95:21
**objection (47)**
17:2,24;18:3,19;
19:3,6,11,20;20:3,7,
11,24;23:14;25:4,6,
12,16;26:17;31:21;
32:7,9,15,17;39:1;
49:20;59:3;60:17;
61:7;62:24;63:5;
65:11;67:4;69:12;
70:9,14;71:3,8;72:18;

73:15;77:12;78:5,6;
95:14;102:15;112:1;
115:9,17
**objections (9)**
20:13,16,22;34:2;
53:21;69:14;95:25;
119:7;121:12
**objectives (1)**
23:2
**objects (1)**
61:7
**obligation (1)**
52:17
**obligations (3)**
117:13;120:24;
124:4
**obnoxious (7)**
27:10,11;67:4;68:2,
4,10;69:24
**observations (1)**
53:20
**observe (1)**
121:7
**obtain (2)**
32:11;49:16
**obtained (3)**
37:24;38:8;47:8
**obviously (1)**
38:2;67:15;87:5
**occasion (3)**
11:21;12:2;13:5
**occur (4)**
32:12;76:10;96:16;
104:24
**occurred (2)**
51:20;96:15
**o'clock (1)**
7:5
**October (2)**
40:9;125:23
**of-date (1)**
60:20
**off (5)**
37:15;69:12;82:15;
83:3;113:22
**offended (2)**
68:7,7
**offer (3)**
25:18;27:15;97:25
**offered (3)**
25:23;33:18;69:15
**offering (1)**
27:15
**offhand (1)**
96:4
**Office (3)**
33:6;70:8;88:25
**officer (1)**
119:22
**official (4)**
7:12;13:12;16:20;
109:11
**often-uphill (1)**

Case 8:23-bk-10571-SC    Doc 1072    Filed 02/03/24    Entered 02/03/24 06:50:40    Desc
In Re: The Litigation Practice Group    Main Document    Page 164 of 176

August 29, 2024

69:23

**OHP (8)**
7:9,15;14:3,3;
77:13,22;93:7;121:8

**OHP-CDR (1)**
9:19

**OHP's (2)**
37:18;77:25

**old (1)**
99:24

**omitted (1)**
114:23

**Omni (1)**
11:1

**omnibus (1)**
52:4

**once (4)**
73:20;76:2,13;
77:25

**One (76)**
7:18;14:15;17:6;
19:22;20:17;23:25;
34:1;35:23;36:7;
39:17;43:20;45:20;
49:21;50:5;51:1;54:6;
55:13,20;58:22,25;
61:1;62:10;64:23;
65:14;68:11,14,25;
69:13;71:24;72:17;
73:15;74:9,10,16;
75:3,10,24;76:10,20;
77:11;78:24;79:9;
84:15;86:6,7,16,21,
22;87:1,7;89:3,5,13,
23;90:5,16;92:2;98:8;
100:16;102:17;
106:22;110:10;111:6,
13;112:21;113:10,22;
114:2,15;115:9,15;
118:11;119:10;121:5,
6,22

**one-percent (1)**
64:18

**ones (1)**
74:22

**ongoing (1)**
77:22

**only (22)**
12:8;14:1;16:25;
26:12;31:12;39:1;
48:4,14;56:6;58:21;
60:18;61:25;67:18;
68:18;78:19;81:11;
82:19;88:17;92:4;
96:24;107:2;126:2

**onto (1)**
53:2

**oOo- (1)**
7:2

**operating (9)**
105:18,24;106:10,
12;108:21;118:5,7,
15;120:10

**operation (1)**
16:22

**operations (2)**
13:23;119:1

**opinion (2)**
110:19;123:15

**opportunity (5)**
11:12;14:9;21:15;
49:15;100:2

**oppose (7)**
82:16,20,21,21;
83:3,5;84:3

**opposing (1)**
82:17

**opposition (8)**
11:5,13;14:24;
24:19;82:24;110:1;
117:11;118:17

**oppositions (1)**
11:4

**opt (1)**
14:9

**opted (3)**
95:10;96:5,22

**opt-in (1)**
14:8

**option (3)**
55:11,15;58:20

**oral (2)**
68:18;115:18

**order (50)**
7:3,9,11,16;18:14;
19:16;29:1;30:12,24;
37:6;39:8,8,10,13;
41:20;43:7,15;44:14,
17,19,25;45:3;46:4;
57:1;62:9,17,18;65:9,
20;100:11;102:1,2,3,
6,23;103:7,8,15;
104:11;107:18,20;
108:18;111:5,19;
112:15;114:2,20;
115:2;116:16;126:11

**ordered (1)**
62:10

**ordering (1)**
30:1

**orderly (1)**
25:8

**orders (7)**
7:5;21:23,25;22:2;
24:2;38:8,9

**original (4)**
24:1,6;32:3;117:10

**originally (1)**
31:5

**others (2)**
61:13;73:1

**otherwise (8)**
16:15;61:23;66:18;
77:18,20;80:6;
112:24,25

**ought (1)**

11:7

**ourselves (2)**
24:2;112:17

**out (30)**
11:21;15:1;24:7;
44:25;49:13;52:23;
54:18,22,23;57:25;
59:4;61:12;67:3;
72:17;73:15;79:23;
91:8;94:2,2;96:22;
97:15;102:6;104:7;
114:24;115:9;116:19,
20;119:8;125:18,21

**out- (1)**
60:19

**outcome (2)**
21:12;97:22

**outdated (1)**
59:20

**out-of- (2)**
59:1;60:25

**out-of-date (5)**
55:24;61:1,6;65:13;
115:12

**outset (1)**
71:4

**outside (2)**
42:14,15

**outsized (1)**
72:11

**over (22)**
11:10;15:7;17:3;
18:6;28:9;42:16;
51:15;54:13;61:15,
21,22;72:11;75:21;
76:21;77:4;85:11;
98:23;105:10;106:4;
113:12,15;123:8

**overall (1)**
73:10

**overrule (1)**
106:23

**overruled (2)**
107:8;116:1

**overrules (1)**
35:6

**oversee (1)**
73:7

**oversight (18)**
16:19,21;18:19;
73:25;74:10;77:16;
81:24;84:6,14;85:10,
19;109:7,15;110:7,12,
15,22;115:22

**overturned (1)**
29:21

**overwhelmingly (4)**
13:21;22:15,16;
98:22

**Overwrought (1)**
79:6

**owe (2)**
14:25;67:23

**owed (6)**
68:25;92:4,13,20;
94:5;97:2

**Owen (1)**
92:2

**OWENS (4)**
8:3,4;47:12;85:22

**own (9)**
36:10;39:3;75:21;
117:13,17;122:1,1;
123:12,13

**P**

**PACER (1)**
59:7

**page (22)**
28:6;43:18,23,25,
25;44:6;45:18,22;
53:2,4;56:18,19,23;
57:10;101:11;102:25;
103:1,3,9,9;106:1;
114:15

**pages (2)**
32:1;63:5

**paid (65)**
14:11;18:10,13;
19:13,15;20:7;28:11,
25;30:13,18,20;31:7,
10;36:2;37:6;39:19,
23;40:10;44:11;46:7,
10,17,24;47:4,6,24;
48:7;52:18;55:1,4,6,
11;57:19,23;58:18;
60:14;62:22;63:13,
18;64:6,23,24;65:15;
66:10;87:4;94:2;
95:12;102:3,5,17,19,
22;103:13;104:5;
105:11;107:19;108:7,
9;112:1,8,16,19;
114:6;115:4;123:23

**pains (1)**
121:16

**Paisner (1)**
9:22

**panel (2)**
108:23,25

**papers (2)**
42:9;126:14

**paperwork (1)**
94:7

**par (1)**
30:19

**paragraph (10)**
46:1;53:7;56:19,23;
57:9,10,10,11;63:7;
101:10

**pardon (3)**
74:11;92:19;121:19

**parenthetical (1)**
103:4

**pari (1)**

30:18

**part (10)**
18:18;28:8;32:1;
80:19,21;98:6;106:2;
107:4;109:4;120:25

**partial (1)**
101:15

**participate (1)**
113:2

**participated (1)**
13:13

**participation (3)**
12:16,19,25

**particular (9)**
12:18;17:6;20:4;
49:19;76:1;97:6;
98:18;115:19;117:3

**particularly (1)**
118:6

**parties (20)**
8:13,20,21;13:1,4,
14;24:16;29:8;37:3;
41:22;56:5;70:24;
84:21;86:13;91:14;
93:2;111:4,14;
114:25;116:7

**Partners (4)**
8:16;11:25;12:3,5

**party (10)**
32:4;34:17;56:2,2,
3;67:9,14;104:1,2,4

**party's (1)**
34:17

**pass (2)**
56:11,12

**passu (1)**
30:18

**past (2)**
101:16;109:2

**path (1)**
13:14

**patience (1)**
53:22

**pay (29)**
26:23;39:18,23;
41:19;44:11;54:24;
55:8,13,16,17;57:7,
18,22;58:11,18;
59:21;60:13;62:2;
65:14,17;66:1,16,17;
103:23;104:7;105:5;
115:4,5,11

**payable (3)**
30:10;103:6;123:22

**paying (1)**
12:11

**payment (14)**
30:23;48:13;53:25;
55:19;63:2,10,11;
95:9;103:19,21;
112:3;115:21;120:22;
123:22

**payments (14)**

Case 8:23-bk-10571-SC    Doc 1072    Filed 09/03/24    Entered 09/03/24 06:50:40    Desc
In Re: The Litigation Practice Group    Main Document    Page 162 of 170

August 29, 2024

16:15;19:11;28:10,
19;31:11;32:22;
37:15;41:22;48:4;
64:22;107:21;112:8,
11;119:15
**pays (1)**
46:6
**PC (2)**
8:25;54:2
**peace (3)**
95:20,21;97:1
**PECC (1)**
37:23
**P-E-C-C (1)**
37:23
**pecuniary (2)**
21:12,14
**pending (4)**
16:10;20:17,25;
72:3
**pennies (1)**
96:20
**people (20)**
25:13;40:15;48:4,8;
49:17;56:13;58:6;
60:7;61:12;62:15;
65:25;68:9;95:10,22;
99:3,4;105:12;
107:21;112:12;
120:24
**perceived (1)**
68:10
**percent (27)**
14:10;30:20;54:25;
55:1,7,11,13,18,20;
57:19,23;58:19;
60:14;63:14,19;64:6,
23;65:14,15;72:2;
95:12;96:22;97:4,5;
102:16,17;115:5
**percentage (1)**
97:5
**perfect (3)**
121:21,22;123:3
**perfectly (2)**
53:9;86:23
**perform (1)**
64:21
**performed (1)**
52:4
**perhaps (6)**
86:17;93:13;95:1;
101:22;106:15;110:8
**period (7)**
30:15;47:24;
105:18;106:12;118:9,
11,12
**permissible (1)**
101:8
**permission (1)**
69:17
**permit (2)**
27:3;86:6

**person (8)**
9:1,3;46:21;49:13;
51:5,11;52:13;85:21
**personal (1)**
22:2
**personally (1)**
13:13
**persons (3)**
18:16;98:17,21
**pertains (1)**
18:22
**petition (1)**
50:9
**petitioner (1)**
10:3
**petitions (1)**
115:6
**Pharma (18)**
34:1,3,4,6,9,11,18;
35:5;55:22,25,25,25;
56:1,7,14;106:23;
107:6;125:16
**philosophy (1)**
86:3
**Phoenix (2)**
54:12,15
**phone (3)**
10:24;52:10,11
**phonetic (2)**
10:2;54:12
**pick (3)**
75:22;77:3;126:5
**piece (4)**
68:2;100:20;
105:15,20
**place (4)**
82:7,22;83:16;91:8
**plain (1)**
63:5
**plan (322)**
7:7,15,19,20;8:17;
11:5,8,9,10,14;13:8,9,
10,10,15,19,20;14:2,
4,5,7,19,20;15:2,7,10;
16:7,7,7,7;17:7,13;18:1,
11,16,19,23;19:3,6,
12,19,22,25;20:2,5,7,
8,10,11,14,15,18,20,
24;22:10,13,13,19;
23:1,13,13;24:8;26:7,
9,10;27:22;28:3,17,
19,23,23;29:10;30:2,
7,9,11,16;31:7,16,22,
23;32:1,21,25;33:1,
20;34:6,13,16,22,25;
35:11,12,13,23;36:6,
9,13,15,19;37:8,10,
17,21,21;38:10,15,19,
20,23;39:12,13,16,22;
41:14,15,21,25;42:7,
13;43:13,15,16,17,19;
44:10,13,14,16,18,18;
45:16,18;46:4,5;47:1,

3,15;48:3,6,12,14,22;
49:24,24;50:1;52:20,
23;53:3,21;55:5,5,8,
12,17,17;56:9,15,17,
18,19;57:1,3,10,11,
17;58:17,23,25;59:10,
11,15,18,19,22;60:3,
4,5,8,9,12,12,14,21,
23,25;61:6;62:23;
63:1,22;64:7,8,10,14,
16,17,17,20,21,22,24;
65:1,10,12;70:12,18;
71:3,4,5,25;72:18;
77:15;78:6;79:3;80:2,
10,22;81:2,8,8,9,13,
15,16;82:5,8,17,18;
83:5;84:3,16;85:15;
89:7;90:19,25;91:2,5;
93:3,9;97:12,23;
98:18,20,20;99:1,2;
102:7,15,18,22;103:1,
9,23;104:15;107:4;
109:17,20;111:2;
112:3,10,10,14;
113:10;114:15,20,22;
115:3,8,9;116:8,14;
117:5,6,8,10,10,12,14,
15,17,19;118:6,18,21,
22,23;119:2,2,3,5,13,
17,20,22,24,25;120:8,
13,16,18,22;121:2,7,
8,9,13,15,19,21;
122:9,19,21;123:10,
20,21,23,25;124:9,13,
16;125:4,13,17
**plan'll (1)**
57:17
**planning (2)**
3:4;123:18
**plans (4)**
33:18,18;55:6;
125:5
**plan's (2)**
61:6;81:16
**play (1)**
35:21
**playing (1)**
69:23
**Plaza (1)**
22:25
**pleading (5)**
24:22;68:20;
105:20;107:17;117:8
**pleadings (2)**
29:14;117:22
**please (19)**
8:10;10:1;13:6;
17:20;29:7;31:20;
43:7;56:19;65:4;69:3;
74:9;77:1;79:16;
100:11,19,21;108:10;
110:3;126:7
**pleasure (1)**

100:22
**pm (3)**
100:10,10;126:24
**pocket (1)**
104:8
**pockets (1)**
66:21
**podium (2)**
95:8;100:9
**point (29)**
20:5;23:4;28:18;
30:12;46:17;48:11;
51:8,25;52:23;54:18,
22;57:25;62:25;63:4;
67:3;72:17;80:16;
87:24;90:10;91:14;
98:1;105:7;107:12;
112:8;114:24;115:8;
117:4;120:5;125:24
**pointed (3)**
73:15;115:9;119:8
**points (1)**
59:4
**policy (1)**
56:8
**polite (1)**
27:2
**Ponzi (2)**
97:17,20
**pool (1)**
89:23
**position (12)**
15:22;24:9;40:16;
41:19;52:2;62:5;85:6,
7,15,18;104:18;
112:17
**positions (1)**
119:24
**possession (2)**
40:6;108:4
**possibility (1)**
49:24
**possible (5)**
50:10,24;51:8,9;
126:15
**post (3)**
9:1;32:11,14
**post- (8)**
16:18;72:15;77:9;
79:11;81:13;83:9;
87:13;89:17
**post-confirmation (44)**
71:6,11,15,21;
72:10;73:3,13,16,17,
19,24;74:11;75:9,24;
76:10,22;77:16;78:1,
11,15;79:6;80:11,21,
25;82:10,22,25;
83:18;85:14,16,23;
86:6,12,18;88:20;
89:10;91:25;109:7,
10;110:4,12,21;
125:20;126:3

**post-petition (1)**
54:19,20
**potential (6)**
24:16;50:25;86:17;
102:8,8;105:5
**potentially (3)**
30:23;89:7;103:12
**power (8)**
71:8;74:25;75:3;
76:18;79:10;80:13;
82:25;84:7
**powers (9)**
71:6;74:2,10;77:20;
78:3,4;81:3;82:9;
88:13
**practical (1)**
51:24
**practicality (1)**
29:18
**Practice (2)**
7:18;94:10
**pragmatism (2)**
85:25;86:4
**prayer (1)**
122:13
**pre (1)**
73:18
**pre- (1)**
50:8
**precedence (1)**
45:1
**precedent (2)**
39:3;44:9
**pre-confirmation (1)**
110:9
**predict (6)**
54:8,17,17;66:18;
97:21,22
**predictions (1)**
54:7
**preferential (1)**
37:25
**preliminary (2)**
62:8;65:8
**premise (1)**
87:12
**prepare (1)**
126:11
**prepared (1)**
23:24
**preparing (1)**
101:5
**pre-petition (4)**
51:14,21;52:16;
54:5
**presence (1)**
98:7
**present (8)**
11:8;37:19;62:20;
66:4;67:14;68:19;
69:7;126:8
**presented (1)**
77:12

Case 8:23-bk-10571-SC    Doc 1072    Filed 09/03/24    Entered 09/03/24 06:50:40    Desc
In Re: The Litigation Practice Group    Main Document    Page 166 of 170

August 29, 2024

**presently (2)**
59:17;82:5
**presiding (2)**
43:9;100:13
**presume (1)**
91:14
**pretty (1)**
58:10
**prevail (1)**
36:1
**prevails (1)**
37:5
**primarily (1)**
71:8
**primary (1)**
85:12
**principal (2)**
32:8;38:16
**principles (1)**
13:25
**priority (17)**
19:10,13,16;23:17;
28:25;29:4;30:25;
36:12;37:6;39:20;
40:16;44:13;94:24,
25;107:22;120:21,23
**pro (8)**
31:13;55:4,16;
64:24;70:25;93:3;
95:15;104:12
**proactive (1)**
80:3
**probably (4)**
51:10;84:16;
103:21;123:16
**problem (12)**
42:18;43:2;44:21;
49:19;51:17;57:16;
62:19;63:20,21;64:1;
91:16,24
**procedures (2)**
104:23;118:25
**proceed (10)**
13:6;15:24;17:20;
28:17;29:7;31:20;
32:23;62:3;77:1;
79:16
**proceeding (6)**
57:2;61:22;67:7,10,
13;114:22
**proceedings (4)**
12:7;66:9,19;
126:24
**process (9)**
18:11;41:4;47:7;
77:19,24;81:23;
83:15;96:13;119:2
**product (2)**
13:10,15
**professional (18)**
18:9,13;23:16;
40:10;41:1;45:13;
46:9,10,14;48:5;

60:10;71:14;75:15;
108:6;112:1,4,16;
115:21
**professionals (45)**
18:11;34:21,23;
41:3;43:17;46:11,25;
47:2,3,9,14;50:17;
55:3;58:2;66:11,18,
22;71:18;73:9,18;
74:18,22;75:12;
76:14,21;77:8,23;
80:10,13,16,18,22;
82:11;90:24;104:10;
105:12;111:23;112:5,
19;115:7;116:8;
120:6;122:8,14;123:7
**proffer (2)**
106:5;120:11
**prohibited (1)**
34:18
**projected (6)**
28:10;40:22;41:13;
72:1;73:12;81:19
**projection (2)**
41:1;71:25
**projections (7)**
24:1,6,7;27:20;
121:22,25,25
**proof (4)**
49:15;50:21;52:4,6
**proofs (1)**
54:5
**properly (1)**
69:24
**properties (1)**
124:8
**property (10)**
22:2;32:19;36:4;
45:16,24;46:2,7,11;
65:7;124:9
**proponent (6)**
50:1;58:17;70:12;
115:3,10;118:23
**proponents (39)**
7:20;11:8,15;15:15;
17:22,23;20:5,21;
24:8;28:3;31:23;
32:21;36:10;38:19;
43:13,17;44:13;57:1;
59:11;60:12,15,23;
64:21,24;65:13;
72:18;80:2;81:8;
85:15;114:20;116:8;
117:6;118:23;119:3,
18;120:13;121:2,19;
123:21
**proponents' (1)**
28:17
**proponent's (1)**
72:1
**propose (3)**
42:17;44:13;46:5
**proposed (31)**

18:1,24;20:14;
22:10;23:1,18,22;
31:22;32:24,25;
33:18;34:6,19;38:16;
42:1;43:14,14;71:15;
72:10;77:24;79:3;
81:5,16;82:5;108:22;
109:17,21;119:5,13;
121:3,15
**proposes (1)**
124:9
**proposing (1)**
34:22
**prosecuted (3)**
73:10;74:23;76:19
**prospective (1)**
72:3
**prospectively (1)**
51:2
**protect (1)**
61:17
**protection (1)**
92:8
**prove (1)**
107:12
**proved (1)**
107:19
**proven (4)**
64:21,25;115:3,10
**provide (19)**
19:12;20:7;21:25;
22:3;26:13;27:2;
28:12;29:11;39:10;
44:16;50:10,11,24;
52:1;70:10;74:9;
77:19;98:1;120:22
**provided (11)**
14:9;28:4,7;29:9;
33:20;41:12;53:19;
109:18;112:14;
120:17;123:23
**provides (19)**
16:12,21;17:7;
28:24;35:23;37:10;
43:15;45:18;48:3,7;
52:20;55:6;66:3;
102:18;109:6;112:3,
11;115:20;119:17
**providing (3)**
28:13;108:14;123:9
**proving (1)**
60:13
**provision (22)**
18:20;32:6,13;
43:18,18;44:8,15,15;
45:1;48:15;53:10;
87:19;101:7,21;
111:16;113:3,10;
114:14,18;115:16,20;
116:19
**provisions (34)**
15:25;17:8,22,24;
20:9,12;31:22,24;

32:5;34:25;35:7,14,
21;39:6,13;61:6,8;
80:23;81:14;82:6,24;
83:11;84:15;85:4;
86:19;107:8;109:19;
117:18;118:19,24;
119:4;120:17,20;
125:13
**public (1)**
81:21
**publication (4)**
50:18,19,23;51:7
**published (1)**
50:20
**pull (1)**
43:22
**PurchaseCo (2)**
9:19;93:7
**Purdue (18)**
34:1,3,4,6,9,11,18;
35:5;55:22,24,25,25;
56:1,7,14;106:23;
107:6;125:16
**pure (1)**
123:3
**purpose (5)**
38:16;71:17;84:17;
87:9;110:5
**purposes (1)**
23:3
**pursuant (3)**
39:6;56:14;107:18
**put (11)**
11:19;32:1;36:10;
61:8,8;69:16;79:11;
87:2;94:12;104:18,19
**putting (2)**
18:11;21:11

## Q

**Queenie (1)**
9:10
**quick (1)**
101:6
**quickly (2)**
84:13;126:15
**Quinn (1)**
9:19
**quit (1)**
25:24
**quite (1)**
117:7
**quote (2)**
23:1;63:5
**quoted (1)**
62:23

## R

**raise (3)**
23:14;71:20;101:17
**raised (14)**

18:3;20:19,22;
23:12;34:2;39:2;42:9;
49:18;72:20;78:5;
93:4,18;102:15;119:7
**ramification (1)**
15:14
**ran (1)**
20:19
**rata (6)**
31:13;55:4,16;
64:24;95:15;104:12
**rate (1)**
18:23
**rather (4)**
28:15;46:1;73:4;
102:13
**ratio (1)**
122:24
**Razmig (2)**
9:18;93:7
**re (1)**
22:25
**reached (2)**
59:8;60:4
**read (8)**
21:25;49:20;56:20;
67:15,20;68:14;69:5;
86:21
**reading (2)**
46:1;68:16
**reads (2)**
44:10;45:25
**real (3)**
48:14;75:23;90:11
**realized (1)**
76:20
**really (12)**
16:25;17:3;20:18,
21;22:9;38:18;48:9;
86:8;95:19;98:3;99:2;
109:24
**reason (8)**
30:8;32:18;51:19;
68:11,12;70:14;80:2;
91:9
**reasonable (4)**
73:23;77:25;
119:17;122:6
**reasonably (2)**
87:20,20
**reasons (3)**
13:18;38:19;110:11
**rebuttal (1)**
26:17
**receipts (1)**
109:9
**receive (17)**
19:1,2,11;28:22;
36:24;37:12,14;
52:20;63:9;72:6,8;
87:13;97:4,8;99:4;
104:10;120:8
**received (2)**

Case 8:23-bk-10571-SC   Doc 1072   Filed 09/03/24   Entered 09/03/24 06:50:40   Desc
In Re: The Litigation Practice Group   Main Document   Page 167 of 176

August 29, 2024

15:16;30:23

**recent (2)**
28:12;34:9

**recently (8)**
24:3;29:17;36:16;
37:11,20,23;96:14;
101:15

**recess (4)**
43:5,6;100:9,10

**recited (1)**
113:24

**recognized (1)**
49:20

**recognizing (1)**
72:2

**record (18)**
8:3,6;10:21;12:10;
21:21;26:9;28:8;29:2;
56:20;105:16,22;
108:16;109:22,22;
110:16;113:24;114:4;
125:19

**records (4)**
14:11;50:12;95:13;
109:8

**recourse (2)**
61:24;62:1

**recover (4)**
21:15;51:23;55:16;
97:19;123:17

**recovered (4)**
16:14;55:3;97:13;
123:19

**recoveries (3)**
16:14;36:25;40:7

**recovering (1)**
123:18

**recovery (2)**
122:11;123:11

**redistribute (1)**
55:15

**redo (1)**
30:1

**reductions (1)**
122:17

**refer (1)**
69:6

**reference (1)**
15:19

**referred (3)**
53:25;55:23;73:24

**referring (2)**
68:15;116:7

**reflect (1)**
14:11

**reflected (1)**
95:13

**regard (1)**
81:4

**regarded (1)**
109:13

**regarding (3)**
70:4;96:14;121:17

**regulatory (2)**
18:22;120:2

**reject (2)**
15:6;16:6

**rejected (1)**
87:20

**rejection (1)**
125:6

**relative (1)**
72:12

**relatively (3)**
71:24;96:1;106:7

**release (2)**
34:23;107:5

**releases (1)**
107:4

**relevant (2)**
21:14;118:6

**relief (1)**
33:20

**remain (7)**
20:16;32:19;43:7;
81:17,23;83:18;
100:11

**remainder (2)**
95:17,18

**remaining (2)**
28:9;90:12

**remark (1)**
67:16

**remedy (5)**
31:4,8,16;104:6,17

**remember (2)**
99:22;113:3

**remembering (1)**
113:8

**reminded (1)**
113:5

**remove (2)**
105:12;108:6

**renders (1)**
102:23

**renew (1)**
21:24

**renewed (1)**
107:17

**reorganization (9)**
11:6,11;20:2;33:19;
64:17;98:20;117:14;
118:6;121:15

**repaid (1)**
40:12

**repeat (2)**
76:7;119:10

**replaced (3)**
89:6,10,12

**replacement (1)**
36:24

**reply (4)**
13:19;77:12;81:6;
114:4

**report (12)**
59:5,6;105:18,24;

106:10,12;118:2,3,7,
15;126:6,7

**reported (1)**
122:15

**reporting (3)**
118:9,10,12

**reports (3)**
118:5;120:11,11

**represent (4)**
11:23;13:13;67:9;
69:22

**representation (2)**
50:3;73:2

**representative (3)**
33:6,8;50:1

**representatives (1)**
50:17

**represented (4)**
18:5;36:21;37:19;
109:10

**representing (5)**
8:24;10:12;67:13;
71:16;109:13

**reputation (1)**
109:3

**request (4)**
32:2;54:12;82:9;
109:8

**requested (2)**
41:9,10

**requesting (1)**
81:18

**require (6)**
19:8;32:10;61:19;
62:24;63:22;65:24

**required (10)**
19:17;26:7,8;39:16;
60:24;61:15;64:5;
81:11;102:18;114:7

**requirement (13)**
18:10;32:11;41:24;
42:12;61:9;66:12,20;
108:16,19;119:19;
120:14;121:10;
123:24

**requirements (11)**
11:10;13:20;17:12;
38:1;118:21;119:25;
121:2;123:21;124:14;
125:3,14

**requires (20)**
17:21;18:1,9,15;
19:1,5,10,18,25;20:6;
25:9;38:15;48:13;
71:6;81:9;98:16;
102:16;120:15;121:5,
13

**requiring (1)**
32:13

**reserve (4)**
46:13;63:21,23;
64:3

**reserved (1)**

63:24

**reserves (2)**
29:9;102:1

**resign (2)**
89:4,5

**resignations (1)**
90:12

**resigned (2)**
89:14;90:5

**resolicitation (2)**
81:10,11

**resolution (3)**
86:24;101:12;114:3

**resolve (6)**
37:4;42:17;77:22;
110:18;113:14,15

**resolved (3)**
101:14;125:11,25

**resolving (2)**
110:25;113:11

**respect (55)**
11:14;12:3;13:16;
14:16;15:2,14;17:6;
20:16;21:3;23:13,21;
27:19;35:6,17,22;
36:12,14,18,19;37:9,
13,17,18;39:2,24,25;
67:25,25;70:18;
71:20;72:17;76:9;
78:18;80:15;82:14;
88:13;92:14;93:3;
94:18;107:23;117:8,
11;118:9,18;119:2,5,
7,15;121:11,12,19;
124:17,21;125:20;
126:2

**respectful (1)**
94:3

**respecting (1)**
68:18

**respond (3)**
69:3;100:3;116:4

**response (3)**
26:16;78:4;109:25

**responsibility (1)**
117:17

**rest (4)**
9:3;67:20;68:14;
112:12

**restrict (1)**
31:11

**result (7)**
22:20;23:2;32:16;
72:3;81:17;89:20;
123:3

**results (2)**
122:15;125:15

**retain (5)**
35:24;37:11,14;
38:10;82:10

**retained (5)**
38:3,5;48:5;73:19;
116:8

**retaining (1)**
37:2

**retiree (1)**
124:1

**return (1)**
12:7

**returned (1)**
62:10

**reversed (2)**
29:22;38:10

**reversible (2)**
54:9;56:15

**review (2)**
117:13,17

**reviewed (7)**
11:4,6;118:4,13,15;
119:24;124:18

**reviewing (1)**
118:25

**revised (2)**
60:22;70:12

**revived (3)**
30:8;31:6,17

**Richard (6)**
8:8,12;9:14;11:24;
71:1;75:22

**rid (2)**
57:5,6

**right (32)**
24:14;26:20;31:20;
33:23;37:14;44:7;
45:17,24;53:19;
57:11;61:13;63:25;
70:5;71:18;75:18;
76:15,18;85:11,13;
86:20;88:23;89:14;
90:11,16,19,20;96:19;
99:20,23;108:10;
115:23;126:22

**rights (12)**
35:25;36:4,11,13,
14;37:3;38:3,6,10;
74:2,25;80:13

**rigorous (1)**
81:24

**risk (2)**
65:19;68:9

**role (1)**
71:22

**Roman (1)**
39:6

**room (1)**
111:9

**Rothschild (4)**
8:1,4;47:11;50:5

**roughly (1)**
108:6

**Rousseau (1)**
86:1

**rule (1)**
52:14

**ruled (1)**
101:15

Case 8:23-bk-10571-SC    Doc 1072    Filed 09/03/24    Entered 09/03/24 06:50:40    Desc
In Re: The Litigation Practice Group    Main Document    Page 168 of 176

August 29, 2024

**rules (2)**
41:6;46:9
**ruling (1)**
125:16
**rulings (3)**
28:12;29:20;54:8
**run (3)**
18:6;19:8;83:13
**running (1)**
25:8

## S

**sake (1)**
10:21
**sale (1)**
92:8
**same (6)**
46:21;52:21;58:25;
89:1;106:7;109:11
**SANTA (1)**
7:1
**satisfaction (1)**
39:5
**satisfied (4)**
19:21;52:24;57:14;
125:3
**satisfies (3)**
16:24;20:2;22:13
**satisfy (2)**
20:8;76:24
**Saturday (1)**
45:8
**saying (13)**
57:16;62:21;67:20;
69:8;72:23;73:17;
80:18;83:3;84:3;
98:14;104:4;107:5;
116:7
**SCHECHTMAN (2)**
10:15,16
**scheme (4)**
50:8;96:3;97:17,20
**Scott (2)**
43:9;100:13
**screen (2)**
24:13;69:17
**scroll (2)**
86:23;103:2
**scrutiny (1)**
81:22
**seat (1)**
114:10
**seated (2)**
43:7;100:11
**second (13)**
15:10;18:6;24:1;
43:20;45:20;69:8,11;
75:13;93:22;111:23;
112:19;116:12;
123:10
**seconds (1)**
38:15

**Section (21)**
17:7,21;18:9,15,22,
25;19:5,8,10,25;20:6;
38:15;39:6;65:2;86:9;
101:10;115:19;
118:22,23;121:12;
123:24
**Sections (2)**
13:20;17:1
**secure (1)**
9:22
**secured (20)**
7:13;14:3,5;35:22,
24;36:1,8,10,20;
37:14;38:5;40:13,14;
59:9,16;94:23;97:10;
102:3,4;123:1
**seeing (3)**
24:6;77:11;91:17
**seek (2)**
36:13;112:24
**seeks (1)**
121:23
**seem (2)**
62:24;83:1
**seems (1)**
73:13
**seize (4)**
62:12,16,17,18
**seized (4)**
62:6,7,8;65:9
**seizing (3)**
62:11,16;65:7
**selected (4)**
76:16;88:23,25;
126:3
**selecting (2)**
75:12,15
**selection (6)**
74:18;75:22;76:14,
23;86:22;126:4
**send (2)**
52:1;97:25
**sends (1)**
89:18
**sense (2)**
59:21;60:9
**sent (4)**
11:7;51:15;94:7;
98:18
**sentence (3)**
35:15;103:3;120:25
**separate (4)**
50:22;73:21,22;
77:10
**separately (2)**
36:22;45:12
**September (7)**
41:5;45:14;60:1,2;
106:14,17;112:6
**serve (7)**
16:17;18:16,17;
108:14,18;119:21;

126:7
**served (1)**
110:5
**serves (1)**
85:17
**services (3)**
54:19,20;119:15
**serving (1)**
32:15
**session (2)**
43:8;100:12
**set (15)**
13:18;41:1;43:16;
46:4;56:25;63:22;
76:20;101:11,14;
102:8;112:6;114:19;
121:3;125:13,18
**sets (1)**
71:17
**setting (1)**
41:5
**settle (2)**
37:3,4
**settled (3)**
37:20;77:14;87:8
**settlement (6)**
37:12;86:24;87:4,
12;88:10;89:19
**settlements (3)**
23:23;40:15;122:16
**seven (3)**
72:5;89:14;90:7
**several (4)**
13:16;39:4;62:7;
117:24
**shall (3)**
46:2;63:9,13
**shape (1)**
12:4
**share (4)**
24:13,16;31:13;
126:17
**Sharon (2)**
9:21;83:24
**Shohl (3)**
8:7,12;11:20
**short (4)**
56:20;83:10;84:11;
102:12
**shot (4)**
68:13;80:5,6,17
**show (4)**
23:25;26:17;51:18;
59:12
**showing (2)**
28:18;58:17
**shows (3)**
17:9;28:8;105:9
**sic (1)**
8:25
**side (1)**
103:24
**sidestep (1)**

72:19
**significant (6)**
49:21;50:8,12;
81:21;96:12;122:17
**significantly (1)**
123:16
**silly (1)**
63:1
**simple (1)**
83:2
**simply (10)**
55:19;71:10;72:16;
73:4;77:17;80:7;
81:11;92:20;109:16;
110:7
**sincerely (1)**
69:1
**single (1)**
54:18
**singly (1)**
61:8
**situated (1)**
98:22
**situation (5)**
12:4;62:20;88:24;
109:16;110:17
**situations (1)**
96:18
**six (4)**
14:20;30:7;36:8;
72:5
**sixteenth (1)**
118:7
**Six-thousand-and-five (1)**
94:15
**sixty (7)**
19:15;28:25;30:11;
102:22;103:6,19;
107:20
**sketchy (1)**
109:2
**skill (1)**
68:18
**skip (2)**
18:6;46:3
**slightly (1)**
46:1
**slow (2)**
68:20;125:10
**slowed (1)**
68:22
**small (3)**
71:25;73:5;92:13
**smaller (1)**
96:1
**sold (1)**
54:16
**soldier (1)**
99:24
**solicitation (1)**
50:21
**solution (4)**
32:22;43:14,14;

55:18
**Solutions (1)**
11:1
**solve (1)**
57:16
**solves (2)**
44:21;63:25
**somebody (4)**
26:12;94:3;109:1;
114:17
**somehow (1)**
91:10
**someone (6)**
25:17;44:22;49:2,7;
53:10;121:23
**somewhere (1)**
45:1
**soon (6)**
58:3,10;60:11;
63:14;65:16;120:17
**sooner (2)**
48:9,24
**sophistication (1)**
80:9
**sorry (13)**
11:19;40:19;43:25;
44:3;77:2;87:25;91:2;
98:1,11;100:15,17,18,
18
**sought (1)**
77:14
**speak (6)**
27:6,24;86:7;98:5;
110:9;111:12
**SPEAKER (2)**
17:16;43:24
**speakers (1)**
68:6
**speaking (4)**
67:19;110:1,16;
112:22
**speaks (1)**
109:3
**special (1)**
8:7
**specific (9)**
63:2,3,16;74:16;
75:2;76:9;84:23;
102:8,22
**specifically (13)**
24:18;28:24;31:24;
32:2;36:5;43:1;49:19;
72:20;74:1;77:17;
103:13;119:1,12
**specifics (1)**
71:9
**specified (1)**
19:11
**specifies (1)**
103:13
**speed (2)**
47:7;68:18
**spend (1)**

Case 8:23-bk-10571-SC    Doc 1072    Filed 09/03/24    Entered 09/03/24 06:50:40    Desc
In Re: The Litigation Practice Group    Main Document    Page 160 of 170

August 29, 2024

17:3
**staffed (1)**
16:19
**stake (4)**
71:23;72:12,14;
73:6
**stakeholders (1)**
72:22
**stamp (2)**
44:4;45:18
**stand (1)**
24:7
**standard (5)**
81:7;109:19;
110:24;120:7;122:3
**standards (1)**
122:4
**standing (6)**
21:3,7,8,13,19,20
**standpoint (3)**
74:14;75:6,11
**start (5)**
7:24;11:14;20:23;
53:24;81:2
**started (2)**
82:15;83:3
**starting (3)**
45:23;103:10;118:5
**starts (2)**
103:1,4
**state (3)**
52:5;87:23;124:23
**stated (3)**
72:24;86:25;113:17
**statement (17)**
23:18;28:5;40:23;
50:15;58:22,24;70:9;
76:3;78:6;79:22,22;
80:3;81:10;82:15,16;
105:9;108:5
**statements (1)**
117:9
**States (15)**
32:2,4;33:6,15,21;
39:4;43:8;50:9;89:1,
6;97:9;100:12;
118:23;124:14;
125:12
**status (7)**
7:18;26:17;59:5,5;
118:1,3;125:20
**statute (1)**
23:5
**statutory (1)**
22:17
**stay (5)**
32:20;102:2,7;
111:20,21
**stayed (2)**
39:9;45:3
**steal (1)**
61:13
**steer (1)**

80:10
**step (2)**
35:23;36:7
**Steverson (1)**
11:1
**still (12)**
15:7;21:16;27:3;
38:10;53:12;59:23;
62:9;81:1;82:8;107:9;
108:24;124:16
**stipulation (3)**
7:11;37:1;54:15
**stolen (1)**
62:2
**stop (2)**
21:6;68:5
**straight (1)**
78:9
**strategy (2)**
73:11;74:23
**stricken (2)**
57:15;111:16
**strike (2)**
116:19,20
**striking (2)**
44:25;80:23
**strongly (1)**
85:20
**struck (3)**
57:14;81:5;116:21
**student (1)**
95:1
**stuff (1)**
57:8
**subject (5)**
24:5;52:7;86:20;
107:15;119:8
**subjective (1)**
123:12
**submit (1)**
72:13
**submitted (3)**
10:25;11:1;118:16
**submitting (1)**
25:7
**substance (1)**
117:14
**substantial (8)**
72:4;74:2,10;75:3;
79:10;80:20;81:3;
82:9
**substantially (1)**
76:18
**subterranean (1)**
117:18
**succeed (2)**
123:9,12
**successful (1)**
101:18
**successfully (1)**
102:4
**sue (2)**
49:7,15

**sued (1)**
54:14
**sues (1)**
51:11
**sufficient (7)**
26:10;30:15;39:18,
22;44:10;57:18;115:4
**suggest (6)**
7:23;58:14;60:21;
75:7;82:5;125:22
**suggested (5)**
27:1;55:18;63:23;
70:17;116:24
**suggesting (3)**
79:23;80:1;116:9
**suggestions (1)**
125:19
**Suisse (1)**
34:20
**suit (1)**
51:14
**suits (2)**
49:8;54:13
**summarize (1)**
45:25
**summary (6)**
16:5;20:13;26:4;
36:16;37:24;101:15
**Sunday (1)**
45:8
**superior (1)**
54:13
**superpriority (2)**
40:11;114:5
**supervised (1)**
108:25
**supervision (1)**
110:8
**supplemental (1)**
11:6
**support (16)**
11:5,12;12:12;
22:16;37:20;38:22;
71:4,5;80:12;84:4;
93:9;98:19,19;99:2;
117:11;124:3
**supported (2)**
13:21;99:1
**suppose (2)**
29:19;30:6
**supposed (2)**
64:7;69:14
**Supreme (7)**
34:2,9,11;55:23;
107:7;117:16;125:15
**sure (17)**
12:1,2,10,25;13:4;
14:23;15:18;24:12,
13;29:2;68:7,16;
84:12;86:8;98:19;
99:1;108:15
**survive (1)**
122:25

**suspended (1)**
39:9
**Sylmar (1)**
22:25
**system (3)**
33:16;68:8;121:21

---

**T**

**talk (10)**
7:20;29:18;50:1;
56:16;61:10;67:9;
69:6;70:2;85:13;86:7
**talked (3)**
54:23;79:19;114:14
**talking (2)**
85:21;125:9
**talks (1)**
59:6
**tax (5)**
38:16;54:25;58:12;
91:9;120:24
**taxes (2)**
94:25;95:2
**team (2)**
80:19,21
**Teeple (3)**
47:19;48:2;111:24
**telephone (1)**
89:16
**telling (4)**
26:2;44:24;64:10;
68:11
**ten (2)**
42:23;43:5
**ten-minute (3)**
42:24;100:7,8
**tenor (1)**
117:14
**tentative (1)**
9:2
**terminated (1)**
39:9
**terms (12)**
16:22;24:5;30:11,
16;31:7;41:15;81:14;
87:3;103:23;113:9,9,
13
**test (4)**
19:4;120:4,5,12
**theory (2)**
44:18;95:22
**therefore (8)**
41:20;88:9;95:23;
120:19;123:20,20;
124:4,6
**there'll (1)**
66:20
**third (8)**
34:17,17;35:4;56:2,
2,2,5;112:21
**third-party (1)**
34:14

**thirty (6)**
14:10;95:11;96:22;
97:4,5;105:19
**thirty-nine (1)**
108:24
**though (3)**
12:25;51:20;56:9
**thought (8)**
24:8,9;49:22;51:6;
67:17;73:21;86:14;
114:22
**thoughts (1)**
101:22
**thousand (2)**
92:4;94:14
**three (4)**
18:3;54:8;89:22;
90:18
**throughout (2)**
50:7,9
**THURSDAY (1)**
7:1
**thus (1)**
120:13
**till (2)**
9:2;48:7
**timely (2)**
54:5;112:24
**times (2)**
48:10;97:15
**timing (1)**
45:16
**tired (1)**
89:15
**Title (2)**
17:8,22
**today (40)**
13:8;17:2;18:6;
24:2,17;26:7;27:22;
28:8;30:2,4,7;31:6;
36:22;37:20;39:21,
24;40:1,4;42:17;
44:19;47:10;59:6,25;
67:11;68:9,21;86:3;
88:14;97:12,23;98:7,
21;106:6,8;111:3;
114:4;118:11;121:4;
122:12;126:8
**together (3)**
18:11;61:8,9
**told (3)**
27:4;68:1;88:20
**tomorrow (1)**
126:16
**took (3)**
61:11;85:7,18
**top (4)**
44:4;45:18;106:2;
113:22
**total (4)**
40:8;94:2,8;114:16
**totality (6)**
22:22;29:12;35:10;

Case 8:23-bk-10571-SC    Doc 1072    Filed 09/03/24    Entered 09/03/24 06:50:40    Desc
In Re: The Litigation Practice Group    Main Document    Page 170 of 176

August 29, 2024

61:3;109:21;119:12
**totally (2)**
14:25;60:19
**transcript (5)**
67:16,21;68:15,17;
69:5
**transfer (8)**
16:9;37:25;45:16,
24;46:7;48:16;124:8,
9
**transferred (6)**
46:2,12,18;47:6;
48:25;126:1
**transparency (1)**
83:16
**transparent (1)**
81:24
**treated (3)**
36:3;38:13;52:21
**treatment (9)**
37:1;81:12,15,16;
96:5;103:2;120:21;
121:1;124:21
**tried (1)**
69:11
**trigger (1)**
42:12
**Trinh (7)**
8:25,25;18:4,4;
54:2,2,5
**troubled (1)**
96:13
**troubles (2)**
123:12,13
**true (1)**
81:11
**truly (1)**
69:9
**trust (99)**
16:8,9,11,12,18,23;
32:10,12,13,14,18,24;
45:17,24;46:3,8,13,
18,20,21;47:7;48:17,
25;49:9,10,11,18;
51:13,15,16,17,25;
52:20;53:1,7,12,12;
61:12,16,20;63:22;
65:21,23,25;66:3,13;
71:13,24;72:12,15;
73:8,20;75:18,25;
76:11,24;80:24;81:5,
15;82:6,11;86:9,19;
87:3;88:1,18;89:23;
91:3,4,5,7,9,10,17,24;
92:18;101:12;103:22;
104:16;108:13,17,18,
18,20;109:5,6;
110:19;112:13,17;
113:1,2,9,13,13;
115:19;117:19;
123:10,11;126:1
**trustee (115)**
7:12,23;8:8,12;

9:11;11:23;13:11;
16:17,18,22;18:17,18;
22:11;28:9;32:2,4,11,
14;33:6,15,21,24;
36:16;37:11,20,23;
38:6,7,8;39:11,11,15,
15;40:6;41:24;42:6,
13,18;46:19,20;48:3,
15;51:16,16,17;52:3;
54:14;56:3,9;58:4;
61:14;62:6;66:11,17;
67:7;69:16;70:2,5;
71:10,11,15;72:15;
73:9,19,22;75:16,25;
76:11,23;77:10;
80:20;84:17,22,24;
85:11,18;86:13;87:3,
13;88:7,9;89:1,6,18;
90:23;91:1;96:17,23;
97:9,9,18;98:23;
105:9,25;107:12;
108:3,14,17,20,23,23,
25;110:7,21;111:15,
25;112:9,22;119:22;
120:11;122:7,8;
123:16;125:12;
126:18
**trustee's (10)**
13:8;23:18;36:23;
41:17;47:2;59:5;
60:10;80:19;118:1,3
**try (4)**
17:4;24:14;38:2;
90:3
**trying (9)**
27:11,12;50:6;
69:16;72:19;75:2;
77:6;83:2;86:6
**turn (2)**
56:18;62:25
**turned (5)**
52:17;61:15,21,22;
87:20
**turns (1)**
54:23
**two (15)**
7:17,19;13:11;14:2,
6;17:1;20:13,16;
35:19;42:20;68:14;
71:17;78:23;90:12;
115:6
**type (1)**
101:20
**types (1)**
96:18

**U**

**ultimately (4)**
28:22;35:25;83:15;
102:6
**unacceptable (2)**
42:3,6

unavoidable (1)
123:6
**unchanged (1)**
81:17
**uncle (1)**
11:22
**undefended (1)**
52:16
**under (43)**
16:25;17:1;18:16;
19:3;20:14;30:10,15;
31:7,16;34:15;36:11;
38:10;39:16;41:5,15;
48:21;54:1;55:5,7,10,
19;56:7;61:2;81:13,
14,16;82:19;87:23;
89:25;91:10;95:9;
108:17,19;119:20,22;
120:13,21;121:2;
123:22,23;124:8;
125:5,14
**understandably (1)**
80:8
**understands (1)**
111:11
**understood (9)**
12:1,23;13:1,2,5,5;
43:3;47:14;123:8
**undertaken (1)**
13:24
**undoubtedly (1)**
107:3
**unduly (1)**
59:20
**unencumbered (1)**
41:19
**unfair (4)**
36:18;37:2,7,16
**unfairly (4)**
35:13;36:2;38:12;
124:17
**unfettered (1)**
42:7
**Unfortunately (1)**
11:21
**UNIDENTIFIED (2)**
17:16;43:24
**unilaterally (1)**
116:18
**unimpaired (1)**
120:16
**United (12)**
32:2,4;33:6,15,21;
43:8;50:9;89:1,6;
97:9;100:12;125:12
**unless (9)**
17:5;45:3;102:1;
111:20,21;115:10,22;
120:25;121:15
**unmuted (2)**
12:8;93:22
**unnecessary (4)**
71:12;72:16;77:18,

20
**unopposed (1)**
18:7
**unsecured (21)**
7:12;13:12,21;14:6,
8;16:11,21;35:20;
50:2;65:18;72:1;
73:12;81:20;94:24;
95:3,16;96:20;97:7;
109:12;121:9;123:1
**unusual (2)**
105:1,2
**unwieldy (1)**
82:25
**up (23)**
7:21;29:13;30:8;
41:13;42:1;43:22;
47:7;49:23;54:21;
60:2;63:22;69:17;
77:3;92:18;94:19;
95:8;96:19;100:14;
106:6;107:12,19;
110:22;111:12
**update (6)**
26:11,12;28:11,13;
60:9,12
**updated (5)**
24:1;27:21;59:22;
60:3,22
**updating (1)**
60:8
**uploaded (1)**
126:15
**upon (7)**
51:14;71:25;74:3;
81:4;82:2,4;122:18
**urging (1)**
56:9
**USC (9)**
55:7,12;58:20;61:2;
65:2;118:18;120:21;
121:12;123:22
**use (1)**
36:23
**used (1)**
29:3
**usually (3)**
54:4,7,17
**usurp (2)**
71:7;78:3
**utilize (1)**
122:1
**utilizing (1)**
72:4
**utmost (1)**
80:15

**V**

**vacated (3)**
7:5,15;39:9
**VALADES (27)**
9:25;10:2,2,5,8;

20
**unopposed (1)**
18:7

93:20,24;94:1,6,7,11,
14,16,22;96:5,7,11;
98:3,8,13,15;99:6,11,
19,21,24;100:1
**valid (2)**
121:16,17
**Validation (3)**
8:16;9:16;71:2
**value (2)**
61:23;93:14
**various (8)**
16:25;20:25;22:13;
33:2;40:9;41:22;
65:25;66:11
**vastly (1)**
72:10
**vehemently (1)**
107:13
**vehicle (1)**
80:12
**Ventures (1)**
114:3
**veto (24)**
74:2,11,24;75:4,8,
20,21,23,24;76:10,18,
18,23;77:20;78:3;
80:13;84:7;85:8,11;
86:7,18,20;88:13;
90:20
**vetoes (1)**
88:14
**vibrating (1)**
52:10
**victims (1)**
97:19
**view (9)**
20:5;28:18;33:19;
70:5;76:4;78:15;
85:23,24;123:19
**viewed (1)**
78:2
**violate (1)**
58:20
**violates (3)**
20:12;55:12;65:1
**virtually (2)**
71:23;73:7
**virtue (4)**
84:14;85:22;110:3,
6
**vociferous (1)**
86:5
**voice (2)**
11:12;86:7
**volunteer (1)**
88:24
**vote (26)**
7:15;14:17,19,21;
15:3,4,5,6,7,11,11,16,
20,23;36:15;38:6;
77:15;81:10;89:20,
21;98:9,13,14,17,25;
100:6

Case 8:23-bk-10571-SC    Doc 1072    Filed 09/03/24    Entered 09/03/24 06:50:40    Desc
In Re: The Litigation Practice Group    Main Document    Page 173 of 176

August 29, 2024

**V-O-T-E (1)**
98:14
**voted (20)**
14:1,2,4,5,6,16,18;
16:6;19:21,23,24;
22:15,16;35:11,20;
37:21;98:22;99:3;
120:19;121:8
**votes (3)**
82:4;121:7;124:13
**voting (3)**
14:24,24;119:22

**W**

**W- (1)**
54:18
**wage (1)**
54:20
**wait (3)**
17:18;60:9;69:13
**waiting (2)**
47:24;58:8
**waive (2)**
57:8;116:15
**waived (3)**
56:25;114:20;
116:18
**waiver (4)**
39:6;56:24;114:18;
116:12
**walking (1)**
24:5
**wants (3)**
27:2;87:13,16
**waste (1)**
79:7
**wasteful (1)**
77:18
**watchdog (1)**
33:16
**way (13)**
27:2;32:24;37:22;
40:14;41:25;54:4;
58:10,13;67:6;96:3;
102:5;107:25;112:16
**we-can-just-pay-pro-rata (1)**
58:19
**week (4)**
23:21;29:17;62:9;
115:6
**weeks (1)**
51:21
**WEISS (14)**
9:21,21;36:21;
83:21,23,24,24;84:2,
10,12;100:15,17,18,
24
**welcome (2)**
9:4;10:6
**well-posed (2)**
67:17,22
**weren't (1)**

62:16
**What's (10)**
25:15;35:2;38:17,
18;43:16;57:24;59:9;
60:5;66:6;109:9
**Whereupon (1)**
126:24
**whole (2)**
69:5;86:11
**who's (3)**
8:16;11:22;103:24
**whose (1)**
52:10
**widespread (3)**
50:9,25;51:7
**willful (3)**
31:25;34:23;70:11
**William (1)**
8:15
**Winthrop (1)**
9:15
**wishing (1)**
93:2
**withdraw (2)**
68:3,3
**within (14)**
19:15;28:25;30:11,
15;41:17;46:15,16;
52:6;62:22;63:18;
102:22;103:19;
107:19;113:14
**without (10)**
47:1;24;57:1,21;
58:8;60:8;65:11;
104:17;114:20;
115:21
**wondering (1)**
101:21
**Wood (2)**
7:23;47:10
**word (4)**
29:3;48:10;107:1,1
**wording (1)**
63:17
**words (3)**
51:13;79:11;97:1
**work (4)**
11:7;97:15;111:8;
113:19
**worked (1)**
123:8
**world (1)**
75:23
**worst (2)**
122:22,22
**write (2)**
67:19;68:21
**written (2)**
96:14;126:11
**wrong (5)**
55:19;58:24;66:22;
85:21;124:24
**wrongdoing (2)**

107:12;109:4

**Y**

**year (2)**
89:8;123:8
**years (5)**
33:16;51:22;69:12;
98:24;108:24
**Yellowstone (1)**
32:7
**yesterday (2)**
7:16;24:3
**York (1)**
97:17
**Yosina (1)**
8:7;11:25;12:5

**Z**

**zero (1)**
54:10
**Zev (1)**
10:15
**Zoom (8)**
8:20,21;11:2;24:13,
15,17;33:9,10

**1**

**1 (7)**
9:16;71:2;95:4,4;
103:1;106:2;118:5
**1,000 (1)**
72:8
**1,000,001 (1)**
87:16
**1,000,001- (1)**
88:9
**1,000,001-dollar (1)**
89:19
**1.10 (1)**
7:6
**1.3 (1)**
54:25
**1.3- (1)**
58:11
**1:14 (1)**
100:10
**1:30 (2)**
126:5,5
**1:31 (1)**
100:10
**10 (4)**
7:5;10:24;47:13;
63:5
**10,487,000 (1)**
40:22
**10.9 (3)**
106:3,4;108:3
**10:17 (1)**
7:1
**1070 (1)**

22:25
**109 (8)**
43:19,23;44:2;
45:18,23;101:11;
102:25;103:9
**11 (27)**
8:8,12;13:11;16:17;
17:8,23;45:23;51:16,
17;55:7,12;58:20;
59:5;61:2;65:2;96:17;
102:25;105:25;
117:12;118:1,3,18;
120:21;121:12;122:7,
25;125:4
**11,000,067 (1)**
40:19
**11,067,000 (1)**
40:17
**11:13 (1)**
43:6
**11:43 (1)**
43:6
**1112 (1)**
118:1
**1123b (1)**
125:5
**1129 (2)**
16:25;20:14
**1129a (7)**
13:20;17:1,7;20:19;
22:14;65:2;124:14
**1129a1 (2)**
118:18,22
**1129a10 (2)**
19:18;121:5
**1129a11 (3)**
19:25;121:13;
123:21
**1129a12 (2)**
20:6;123:24
**1129a13 (2)**
20:9;124:2
**1129a14 (1)**
124:4
**1129a15 (1)**
124:7
**1129a16 (1)**
124:8
**1129a2 (2)**
17:21;118:23
**1129a3 (3)**
18:1;61:3;119:5
**1129a4 (2)**
18:9;119:15
**1129a5 (2)**
18:15;119:20
**1129a6 (2)**
18:22;120:1
**1129a7 (3)**
18:25;120:3,13
**1129a8 (3)**
19:5;120:15;124:16
**1129a9 (3)**

19:10;120:22;121:3
**1129a9A (4)**
55:8,12,19;58:20
**1129b (3)**
15:25;19:8;124:13
**1129d (1)**
38:15
**11th (1)**
60:2
**12 (3)**
45:25;103:9;106:1
**120 (1)**
41:7
**13 (3)**
62:8;65:8;117:16
**13.2 (1)**
115:19
**1344 (7)**
43:19,22;53:2;
56:18;58:25;103:1;
114:15
**1345 (1)**
28:5
**14 (1)**
20:9
**1445 (1)**
118:8
**1449 (1)**
50:22
**15 (1)**
20:10
**1512 (1)**
118:2
**1554 (4)**
58:24;105:17,17;
118:10
**1562 (1)**
7:16
**1563 (1)**
7:10
**1564 (1)**
7:14
**15th (1)**
106:13
**16 (1)**
20:10
**17 (2)**
118:2,5
**19 (2)**
46:3;103:10
**1930 (1)**
123:23
**1a (4)**
35:23;36:5,9,14
**1b (1)**
36:21
**1c (2)**
37:10,17
**1d (3)**
14:4;37:18;121:8
**1e (1)**
37:23
**1f (3)**

Case 8:23-bk-10571-SC    Doc 1072    Filed 09/03/24    Entered 09/03/24 06:57:40    Desc
In Re: The Litigation Practice Group    Main Document    Page 172 of 176

August 29, 2024

14:4;36:9;38:4
**1st (1)**
40:2

**2**

**2 (7)**
9:16;54:19;57:10;
71:2;95:4;103:4;
106:1
**2,480 (1)**
54:13
**2,500 (1)**
72:7
**2.10d (1)**
86:9
**2.5 (1)**
72:2
**2.5-million (1)**
41:11
**2:14 (1)**
126:24
**20 (2)**
46:4;103:3
**200 (1)**
61:12
**2002 (1)**
23:1
**2024 (4)**
7:1;40:2,9;118:2
**21st (3)**
106:13,16,18
**22 (1)**
101:10
**27 (1)**
45:22
**28 (3)**
45:18,23;123:22
**28th (1)**
7:9
**29 (1)**
7:1

**3**

**3 (9)**
7:8;44:8;45:23;
56:19,23;57:10,11;
63:7;114:15
**3,080,000 (1)**
41:13
**3.10 (1)**
7:10
**3.7 (1)**
108:8
**314 (1)**
22:25
**31st (4)**
40:9;106:12,13;
118:12
**32 (1)**
32:1
**33 (1)**

32:1
**36 (1)**
101:11
**3a (6)**
14:7,7;95:6,7;
99:15;121:9
**3b (12)**
14:7,8;95:6,7,9,10;
96:5,6,25;99:15,17;
121:9

**4**

**4 (2)**
7:14;44:8
**42 (1)**
57:10
**43 (5)**
44:6;56:18,19,23;
114:15
**450 (2)**
94:20,20
**49 (4)**
43:18,23,25;44:1
**4b31 (1)**
32:1

**5**

**5.5 (1)**
29:24
**5.5-million (1)**
29:15
**503b (1)**
55:10
**503b1A (1)**
54:1
**507a2 (2)**
55:9,9
**507a3 (1)**
55:9
**5-1/2 (1)**
29:15
**580,000 (2)**
28:9;40:24

**6**

**6,301 (1)**
94:13
**6,500 (1)**
97:3
**6,501 (2)**
94:8,14
**6/14/24 (2)**
59:1;60:19
**6/2/23 (2)**
62:6;65:8
**6/30/2024 (1)**
118:9
**600-or-so-thousand (1)**
105:14
**67,000 (1)**

40:20
**6th (2)**
126:5,5

**7**

**7 (5)**
19:3;108:23;120:9;
123:14,16
**7/22/24 (1)**
118:8
**7/31/2024 (1)**
118:11
**7/31/24 (1)**
105:18
**71 (2)**
53:2,4
**72 (1)**
53:2

**8**

**8/15 (1)**
67:6
**8/15/24 (1)**
118:3
**8/22 (1)**
63:23
**8/27/2024 (1)**
118:10
**8/27/24 (1)**
54:4
**80 (1)**
9:19
**88 (1)**
53:7
**89 (1)**
28:6

**9**

**9 (1)**
63:5
**90 (1)**
41:7
**950,000 (1)**
87:4
**950,000-dollar (1)**
87:12
**98 (1)**
28:6
**999,000 (1)**
87:8

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
10524 W. Pico Blvd., Ste. 212, Los Angeles, CA 90064
A true and correct copy of the foregoing document entitled (*specify*): **OBJECTION OF GREYSON LAW CENTER PC, HAN TRINH &  JAYDE TRINH, TO COURT GRANTING ANY OF THE FEE APPLICATIONS FILED ON OR ABOUT 11/8/24, ITEMIZED HEREIN, ON A FINAL BASIS--INCLUDING OBJECTING TO COURT GRANTING ANY FEE APPLICATIONS, ON A FINAL BASIS, WHILE GREYSON/HAN/JAYDE APPEALS ARE ONGOING—INCLUDING GREYSON/HAN/JAYDE OBJECT TO THE FEE APPLICATIONS OF TRUSTEE MARSHACK, MARSHACK HAYS WOOD LLP, DINSMORE & SHOHL LLP, CREDITORS' COMMITTEE COUNSEL,  TRUSTEE'S ACCOUNTANT, CREDITOR COMMITTEE'S ACCOUNTANT; UNLESS MONEY IN THE FULL AMOUNT OF THE GREYSON/HAN/JAYDE ADMINISTRTIVE EXPENSE MOTIONS IS PUT IN A BLOCKED ACCOUNT, SO THAT MONEY WILL BE AVAILABLE TO PAY WHATEVER AMOUNTS ARE ALLOWED ON GREYSON/HAN/JAYDE'S APPEALS; KPMARCH DECL, ATTACHING PORTION OF PLAN CONF. HRG. TRANSCRIPT** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) ___12/4/24___, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

See next page

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) ___12/4/24___, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

The Litigation Practice Group P.C.
17542 17th St
Suite 100
Tustin, CA 92780

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) __12/4/24__, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

Hon. Scott Clarkson
United States Bankruptcy Court
Central District of California
411 West Fourth Street, Suite 5130
Santa Ana, CA 92701-4593

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| 12/4/24 | Kathleen P. March | /s/ Kathleen P. March |
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**
173

## 1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**

- **Kyra E Andrassy**    kandrassy@raineslaw.com, bclark@raineslaw.com;jfisher@raineslaw.com
- **Bradford Barnhardt**    bbarnhardt@marshackhays.com, bbarnhardt@ecf.courtdrive.com,alinares@ecf.courtdrive.com
- **Eric Bensamochan**    eric@eblawfirm.us, G63723@notify.cincompass.com
- **Michael Jay Berger**    michael.berger@bankruptcypower.com, yathida.nipha@bankruptcypower.com;michael.berger@ecf.inforuptcy.com
- **Ethan J Birnberg**    birnberg@portersimon.com, kdwyer@portersimon.com
- **Peter W Bowie**    peter.bowie@dinsmore.com, caron.burke@dinsmore.com
- **Ronald K Brown**    ron@rkbrownlaw.com
- **Christopher Celentino**    christopher.celentino@dinsmore.com, caron.burke@dinsmore.com
- **Shawn M Christianson**    cmcintire@buchalter.com, schristianson@buchalter.com
- **Randall Baldwin Clark**    rbc@randallbclark.com
- **Leslie A Cohen**    leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com;clare@lesliecohenlaw.com
- **Michael W Davis**    mdavis@dtolaw.com, ygodson@dtolaw.com
- **Aaron E. De Leest**    adeleest@marshackhays.com, adeleest@marshackhays.com,alinares@ecf.courtdrive.com
- **Anthony Paul Diehl**    anthony@apdlaw.net, Diehl.AnthonyB112492@notify.bestcase.com,ecf@apdlaw.net,9143954420@filings.docketbird.com
- **Ashley Dionisio**    adionisio@omniagnt.com
- **Jenny L Doling**    jd@jdl.law, dolingjr92080@notify.bestcase.com;15994@notices.nextchapterbk.com;jdoling@jubileebk.net
- **Daniel A Edelman**    dedelman@edcombs.com, courtecl@edcombs.com
- **Howard M Ehrenberg**    Howard.Ehrenberg@gmlaw.com, hehrenberg@ecf.courtdrive.com;hehrenberg@ecf.inforuptcy.com;Karen.Files@gmlaw.com;denise.walker@gmlaw.com
- **Meredith Fahn**    fahn@sbcglobal.net
- **Jeremy Faith**    Jeremy@MarguliesFaithlaw.com, Angela@MarguliesFaithLaw.com;Vicky@MarguliesFaithLaw.com;Amber@MarguliesFaithLaw.com
- **William P. Fennell**    william.fennell@fennelllaw.com, wpf@ecf.courtdrive.com;hala.hammi@fennelllaw.com;naomi.cwalinski@fennelllaw.com;samantha.larimer@fennelllaw.com;office@fennelllaw.com;Brendan.Bargmann@fennelllaw.com
- **Alan W Forsley**    alan.forsley@flpllp.com, awf@fkllawfirm.com,awf@fl-lawyers.net,addy@flpllp.com,andrea@flpllp.com
- **Marc C Forsythe**    mforsythe@goeforlaw.com, mforsythe@goeforlaw.com;dcyrankowski@goeforlaw.com;Forsythe.MarcR136526@notify.bestcase.com
- **Jeremy Freedman**    jeremy.freedman@dinsmore.com, bonnie.connolly@dinsmore.com
- **Eric Gassman**    erg@gassmanlawgroup.com, gassman.ericb112993@notify.bestcase.com
- **Yisrael Gelb**    yisrael@gelblawapc.com
- **Christopher Ghio**    christopher.ghio@dinsmore.com, angelica.urena@dinsmore.com
- **Amy Lynn Ginsburg**    efilings@ginsburglawgroup.com
- **Eric D Goldberg**    eric.goldberg@dlapiper.com, eric-goldberg-1103@ecf.pacerpro.com
- **Jeffrey I Golden**    jgolden@go2.law, kadele@ecf.courtdrive.com;cbmeeker@gmail.com;lbracken@wgllp.com;dfitzgerald@go2.law;golden.jeffreyi.b117954@notify.bestcase.com
- **Richard H Golubow**    rgolubow@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com
- **David M Goodrich**    dgoodrich@go2.law, kadele@go2.law;dfitzgerald@go2.law;wgGllp@ecf.courtdrive.com
- **Spencer Keith Gray**    spencer.gray@dinsmore.com, wendy.yones@dinsmore.com
- **Stella A Havkin**    stella@havkinandshrago.com, shavkinesq@gmail.com
- **D Edward Hays**    ehays@marshackhays.com, ehays@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@ecf.courtdrive.com
- **Alan Craig Hochheiser**    ahochheiser@mauricewutscher.com, arodriguez@mauricewutscher.com
- **Garrick A Hollander**    ghollander@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com
- **Brian L Holman**    b.holman@musickpeeler.com
- **Richard L. Hyde**    rhyde@awglaw.com
- **Peter L Isola**    pisola@hinshawlaw.com, rmojica@hinshawlaw.com,iking@hinshawlaw.com
- **Razmig Izakelian**    razmigizakelian@quinnemanuel.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

- **Veneeta Jaswal**    veneeta.jaswal@dinsmore.com, bonnie.connolly@dinsmore.com
- **Sara Johnston**    sara.johnston@dinsmore.com
- **Sweeney Kelly**    kelly@ksgklaw.com
- **Joon M Khang**    joon@khanglaw.com
- **Ira David Kharasch**    ikharasch@pszjlaw.com
- **Meredith King**    mking@fsl.law, ssanchez@fsl.law;jwilson@fsl.law
- **Nicholas A Koffroth**    nkoffroth@foxrothschild.com, khoang@foxrothschild.com;ca.dkt@foxrothschild.com
- **David S Kupetz**    David.Kupetz@lockelord.com, mylene.ruiz@lockelord.com
- **Christopher J Langley**    chris@slclawoffice.com,
  langleycr75251@notify.bestcase.com;ecf123@casedriver.com;john@slclawoffice.com
- **Kelli Ann Lee**    Kelli.lee@dinsmore.com, kristy.allen@dinsmore.com
- **Matthew A Lesnick**    matt@lesnickprince.com, matt@ecf.inforuptcy.com;jmack@lesnickprince.com
- **Daniel A Lev**    daniel.lev@gmlaw.com, cheryl.caldwell@gmlaw.com;dlev@ecf.courtdrive.com
- **Britteny Leyva**    bleyva@mayerbrown.com,
  2396393420@filings.docketbird.com;KAWhite@mayerbrown.com;ladocket@mayerbrown.com
- **Marc A Lieberman**    marc.lieberman@flpllp.com, addy@flpllp.com,andrea@flpllp.com
- **Michael D Lieberman**    mlieberman@lipsonneilson.com
- **Yosina M Lissebeck**    Yosina.Lissebeck@Dinsmore.com, caron.burke@dinsmore.com;Wendy.Yones@Dinsmore.com
- **Mitchell B Ludwig**    mbl@kpclegal.com, kad@kpclegal.com
- **Charity J Manee**    cmanee@goeforlaw.com, kmurphy@goeforlaw.com
- **Daniel S March**    marchlawoffice@gmail.com, marchdr94019@notify.bestcase.com
- **Kathleen P March**    kmarch@bkylawfirm.com, kmarch3@sbcglobal.net,kmarch@sbcglobal.net
- **Mark J Markus**    , markjmarkus@gmail.com,markus.markj.r112926@notify.bestcase.com
- **Richard A Marshack (TR)**    pkraus@marshackhays.com, ecf.alert+Marshack@titlexi.com
- **Laila Masud**    lmasud@marshackhays.com,
  lmasud@ecf.courtdrive.com;lbuchanan@marshackhays.com;alinares@ecf.courtdrive.com
- **Sarah S. Mattingly**    sarah.mattingly@dinsmore.com
- **Tony May**    tmay@maybrocklaw.com
- **William McCormick**    Bill.McCormick@ag.tn.gov
- **Kenneth Misken**    Kenneth.M.Misken@usdoj.gov
- **Byron Z Moldo**    bmoldo@ecjlaw.com, aantonio@ecjlaw.com,dperez@ecjlaw.com
- **Glenn D. Moses**    gmoses@venable.com,
  cascavone@venable.com;ipmalcolm@venable.com;imalcolm@ecf.courtdrive.com;jadelgado@venable.com
- **Jamie D Mottola**    Jamie.Mottola@dinsmore.com, jhanawalt@ecf.inforuptcy.com
- **Alan I Nahmias**    anahmias@mbn.law, jdale@mbn.law
- **Victoria Newmark**    vnewmark@pszjlaw.com, hdaniels@pszjlaw.com
- **Jacob Newsum-Bothamley**    jacob.bothamley@dinsmore.com, bonnie.connolly@dinsmore.com
- **Queenie K Ng**    queenie.k.ng@usdoj.gov
- **Israel Orozco**    israel@iolawcorp.com
- **Keith C Owens**    kowens@foxrothschild.com, khoang@foxrothschild.com
- **Lisa Patel**    lpatel@lesnickprince.com, jmack@lesnickprince.com;jnavarro@lesnickprince.com
- **Michael R Pinkston**    rpinkston@seyfarth.com,
  jmcdermott@seyfarth.com,sfocalendar@seyfarth.com,5314522420@filings.docketbird.com,bankruptcydocket@seyfarth.com
- **Douglas A Plazak**    dplazak@rhlaw.com
- **Tyler Powell**    tyler.powell@dinsmore.com,
  jennifer.pitcock@dinsmore.com;caitlin.brock@dinsmore.com;wendy.yones@dinsmore.com
- **Daniel H Reiss**    dhr@lnbyg.com, dhr@ecf.inforuptcy.com
- **Vincent Renda**    vr@pinlegal.com, ld@pinlegal.com
- **Ronald N Richards**    ron@ronaldrichards.com, 7206828420@filings.docketbird.com
- **Vanessa Rodriguez**    vanessa.rodriguez@dinsmore.com, katherine.hemphill@dinsmore.com
- **Kevin Alan Rogers**    krogers@wellsmar.com
- **Gregory M Salvato**    gsalvato@salvatoboufadel.com,
  calendar@salvatolawoffices.com;jboufadel@salvatoboufadel.com;gsalvato@ecf.inforuptcy.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

- **Olivia Scott**    olivia.scott@hklaw.com
- **Jonathan Serrano**    jonathan.serrano@serrano.law,
  vicky@marguliesfaithlaw.com;angela@marguliesfaithlaw.com;amber@marguliesfaithlaw.com
- **Maureen J Shanahan**    Mstotaro@aol.com
- **Paul R Shankman**    PShankman@fortislaw.com, info@fortislaw.com
- **Zev Shechtman**    Zev.Shechtman@saul.com,
  zshechtman@ecf.inforuptcy.com;hannah.richmond@saul.com;LitigationDocketing@saul.com
- **Jeffrey M Singletary**    jsingletary@swlaw.com, rmckay@swlaw.com
- **Adam D Stein-Sapir**    info@pfllc.com
- **Howard Steinberg**    steinbergh@gtlaw.com, pearsallt@gtlaw.com;NEF-BK@gtlaw.com;howard-steinberg-
  6096@ecf.pacerpro.com
- **John H. Stephens**    john.stephens@dinsmore.com, lizbeth.alonso@dinsmore.com
- **Andrew Still**    astill@swlaw.com, kcollins@swlaw.com
- **Matthew J Stockl**    matthew.stockl@dinsmore.com, katrice.ortiz@dinsmore.com
- **Brett N Taylor**    btaylor@cozen.com, arincon@cozen.com
- **Michael R Totaro**    Ocbkatty@aol.com
- **United States Trustee (SA)**    ustpregion16.sa.ecf@usdoj.gov
- **William J Wall**    wwall@wall-law.com
- **Sharon Z. Weiss**    sharon.weiss@bclplaw.com, raul.morales@bclplaw.com,REC_KM_ECF_SMO@bclplaw.com
- **Johnny White**    JWhite@wrslawyers.com, jlee@wrslawyers.com
- **Reina Zepeda**    rzepeda@omniagnt.com

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                 **F 9013-3.1.PROOF.SERVICE**