CHRISTOPHER CELENTINO (131688)
Christopher.Celentino@dinsmore.com
YOSINA M. LISSEBECK (State Bar No. 201654)
yosina.lissebeck@dinsmore.com
CHRISTOPHER B. GHIO (259094)
Christopher.Ghio@dinsmore.com
**DINSMORE & SHOHL LLP**
655 West Broadway, Suite 800
San Diego, CA 92101
Telephone: 619.400.0500
Facsimile:  619.400.0501

Sara A. Johnston (KY Bar No. 96769)
**DINSMORE & SHOHL, LLP**
100 W Main Street, Suite 900
Lexington, KY 40507
Telephone: 859.425.1021
Facsimile: 859.425.1109
Sara.johnston@dinsmore.com
(Admitted pro hac vice)

*Special Counsel to Richard A. Marshack, Former*
*Chapter 11 Trustee for the Bankruptcy Estate of The*
*Litigation Practice Group PC and Current*
*Liquidating Trustee of the LPG Liquidation Trust*

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION

| | |
|---|---|
| In re: | Case No. 8:23-bk-10571-SC |
| THE LITIGATION PRACTICE GROUP P.C., | Chapter 11 |
| | Adv. Proc. No. 8:25-ap-_____-SC |
| Debtor. | **COMPLAINT FOR:** |
| | **(1) AVOIDANCE, RECOVERY, AND PRESERVATION OF 2-YEAR ACTUAL FRAUDULENT TRANSFERS;** |
| RICHARD A. MARSHACK, Former Chapter 11 Trustee for the Bankruptcy Estate of The Litigation Practice Group PC and Current Liquidating Trustee of the LPG Liquidation Trust, | **(2) AVOIDANCE, RECOVERY, AND PRESERVATION OF 2-YEAR CONSTRUCTIVE FRAUDULENT TRANSFERS;** |
| Plaintiff, | **(3) AVOIDANCE, RECOVERY, AND PRESERVATION OF 4-YEAR ACTUAL FRAUDULENT TRANSFERS;** |
| v. | |
| RELIANCE ASSISTANCE GROUP, INC. and YURIY DRAHUNTSOV | **(4) AVOIDANCE, RECOVERY, AND PRESERVATION OF 4-YEAR CONSTRUCTIVE FRAUDULENT TRANSFERS;** |

1

Defendants.

**(5)  AVOIDANCE, RECOVERY AND PRESERVATION OF PREFERENTIAL TRANSFER MADE WITHIN NINETY DAYS OF THE PETITION DATE;**

**(6) AVOIDANCE, RECOVERY AND PRESERVATION OF POST-PETITION TRANSFERS;**

**(7) AIDING AND ABETTING;**

**(8) TURNOVER; AND**

**(9) DISALLOWANCE OF CLAIMS**

Judge:  Hon. Scott C. Clarkson

Dept:. 5C

For his *Complaint for (1) Avoidance, Recovery, and Preservation of 2-Year Actual Fraudulent Transfers; (2) Avoidance, Recovery, and Preservation of 2-Year Constructive Fraudulent Transfers; (3) Avoidance, Recovery, and Preservation of 4-Year Actual Fraudulent Transfers; (4) Avoidance, Recovery, and Preservation of 4-Year Constructive Fraudulent Transfers; (5) Avoidance, Recovery, and Preservation of Preferential Transfer; (6) Avoidance, Recovery and Preservation of Post-Petition Transfers; (7) Aiding and Abetting; (8) Turnover; and (9) Disallowance of Claims* ("Complaint"), plaintiff Richard A. Marshack, the Former Chapter 11 Trustee for the Bankruptcy Estate ("Estate") of The Litigation Practice Group PC and Current Liquidating Trustee of the LPG Liquidation Trust ("Debtor" or "LPG") (together the ("Trustee" or "Plaintiff") in the above-captioned bankruptcy case ("Bankruptcy Case"), alleges and avers as follows:

## STATEMENT OF JURISDICTION, NATURE OF PROCEEDING, AND VENUE

1.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 157(b)(2)(A), (E), (H) and (O), 1334(b), and General Order No. 13-05 of the District Court for the Central District of California because this is a core proceeding arising in and/or related to the Bankruptcy Case, which is a case under Chapter 11 of Title 11 of the United States Code ("Bankruptcy Code"), and which is pending in the United States Bankruptcy Court for the Central District of California, Santa Ana Division ("Bankruptcy Court").

2.      Regardless of whether this proceeding is core, non-core, or otherwise, Plaintiff consents to the entry of a final order and judgment by the Bankruptcy Court.

3.      Defendants are notified that Rule 7008 of the Federal Rules of Bankruptcy Procedure requires defendants to plead whether consent is given to the entry of a final order and judgment by the Bankruptcy Court.

4.      Venue of this adversary proceeding properly lies in this judicial district pursuant to 28 U.S.C. § 1409(a) because this proceeding is related to Debtor's pending Bankruptcy Case.

## THE PARTIES

5.      Plaintiff, Richard A. Marshack, was the duly-appointed, qualified, and former Chapter 11 Trustee of Debtor's Estate, and is now the current duly-appointed, qualified, and acting Liquidating Trustee of the LPG Liquidation Trust.

6.      Debtor is, and at all material times was, a professional corporation organized, existing, and in good standing under the laws of the State of California, with its principal place of business in Tustin, California.

7.      Defendant, Reliance Assistance Group, Inc. ("Reliance" ), is, and at all material times represented that it was, a California Corporation, existing under the laws of the State of California.

8.      Reliance may be served by first class mail postage prepaid upon its registered agents for service of process, John Goldberg at 5318 E 2nd St. Suite 226, Long Beach, CA 92803.

9.      Defendant, Yuriy Drahuntsov ("Yuriy") is an individual who is the Chief Executive Officer, Sole Director on the Board of Reliance, Chief Financial Officer, and Secretary. Yuriy may be served at 535 E 1st St. Suite 202, Tustin, CA 92780.

10.     Reliance and Yuriy are collectively known as "Defendants".

## GENERAL ALLEGATIONS

### A.      The Bankruptcy Case

11.     On March 20, 2023 ("Petition Date"), Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, commencing the Bankruptcy Case.

12.     The Office of the United States Trustee ("UST") filed its *Motion by United States Trustee to Dismiss or Convert Case Pursuant to 11 U.S.C. § 1112(b)* [Bankr. Docket No. 21] and

creditors Debt Validation Fund II, LLC; MC DVI Fund 1, LLC; and MC DVI Fund 2, LLC filed the *Motion by DVF and MC DVI to Dismiss Chapter 11 Case Pursuant to 11 U.S.C. §§ 105, 305, 349, & 1112, or in the Alternative Convert This Case to Chapter 7 or Appoint a Trustee* [Bankr. Docket No. 44]. On May 4, 2023, the Court entered its *Order Directing United States Trustee to Appoint Chapter 11 Trustee* [Bankr. Docket No. 58].

**13.**    Pursuant to the *Acceptance of Appointment as Chapter 11 Trustee* [Bankr. Docket No. 63], on May 8, 2023, Trustee accepted his appointment as the Chapter 11 Trustee in the Bankruptcy Case, and he continues to serve in this capacity at this time, in addition to the Liquidating Trustee. The Court approved the Trustee's appointment in its *Order Approving the U.S. Trustee's Application for the Appointment of a Chapter 11 Trustee* [Bankr. Docket No. 65].

**14.**    Trustee was not appointed until after events of the case and, therefore, bases these allegations on information and belief. *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017) ("The *Twombly* plausibility standard . . . does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible."); *Miller v. City of Los Angeles*, 2014 U.S. Dist. LEXIS 198871, 2014 WL 12610195, at *5 (C.D. Cal. Aug. 7, 2014) (recognizing that the plaintiff's "information and belief" pleading was allowed and "necessary at times"); *see also Mireskandari v. Daily Mail and General Trust PLC*, 2013 U.S. Dist. LEXIS 194437, 2013 WL 12129642, at *4 (C.D. Cal. July 31, 2013) ("The Federal Rules of Civil Procedure allow parties to plead facts on 'information and belief' if the facts 'will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.'" (citations omitted)).

**15.**    Pursuant to the Order Confirming Modified First Amended Joint Chapter 11 Plan of Liquidation entered September 9, 2024, and the Notice of Occurrence of Effective Date of Modified First Amended Joint Chapter 11 Plan of Liquidation filed September 24, 2024, Richard A. Marshack became the Liquidating Trustee of the LPG Liquidation Trust, effective September 24, 2024. [Bankr. Docket Nos. 1646 & 1762].

///

4

**16.** All claims have been transferred to the Liquidating Trust pursuant to the confirmed plan and Plaintiff brings this action solely in his capacity as the former Chapter 11 Trustee and current Liquidating Trustee of the LPG Liquidation Trust for the benefit of Debtor's Estate and its creditors.

**B.** **<u>Protective Order</u>**

**17.** On or about May 2, 2024, Plaintiff filed a certain Notice and Motion for Entry of Protective Order (the "Protective Order").

**18.** On June 3, 2024, the Court entered its Order Granting Motion for Entry of Protective Order and the Protective Order [Bankr. Docket No. 1270] (the "Protective Order"). A true and accurate copy of the Protective Order is attached as **<u>Exhibit 1</u>** and incorporated herein.

**19.** By its own terms, the Protective Order applies to this adversary proceeding and governs all discovery conducted herein.

**C.** **<u>LPG</u>**

**20.** LPG operated a law firm for consumers across the country who sought assistance in contesting or resolving debts they would identify.

**21.** The consumers would pay LPG over a period of time via monthly debits from their bank accounts.

**22.** The monthly payments were meant to cover all legal services LPG provided to the consumers including validation of the debts, review of documents to determine enforceability, and court appearances to halt lawsuits to obtain judgments.

**23.** In certain instances, LPG would file a lawsuit in an effort to eliminate a disputed debt or to prosecute affirmative claims held by the consumers.

**24.** LPG mismanaged the consumers' monthly payments.

**25.** Diab and other defendants devised a plan to fraudulently transfer funds, client files, client funds and assets in the form of ACH Receivables (the "ACH Receivables" or "Accounts Receivable") out of LPG to third parties prior to the filing of bankruptcy.

**26.** To obtain consumer clients, LPG contracted with marketing companies, who engaged in illegal capping and would advertise or call to solicit consumers to become clients of LPG in exchange for a percentage of the ACH Receivables collected by LPG from the consumers.

**27.**    The marketing affiliate went so far as to assist with the execution of an engagement letter between the consumer and LPG.

**28.**    In exchange, LPG agreed to pay the marketing affiliates a percentage the monthly payments collected by LPG from the consumers.

29.    Because LPG received payments from consumers over time, it often sought financing by borrowing against its future cash flows. This borrowing was not only used to finance operations at LPG, but also to pay the fees owed to the marketing companies for providing the client referrals.

30.    Many of the documents executed in connection with such financing described the transactions as accounts receivable purchase agreements.

31.    Diab used entities he controlled including, without limitation, Vulcan, Coast Processing, PrimeLogix, and/or Maverick to divert LPG consumer funds and ACH Receivables. Diab would use numerous ACH processing companies in order to easily transfer millions of dollars from Debtor to these entities he controlled, without oversight or detection, and to avoid payment disputes and complications. The money that flowed from Debtor through these bank accounts to defendants consisted of Client Funds that Debtor funneled to these entities by means of the ACH processing companies. Debtor also made deposits into these entities bank account such that they received Client Funds directly from Debtor in addition to future Accounts Receivable.

**D.**    **Defendants Reliance and Yuriy**

**32.**    Reliance was one of the marketing companies that procured clients for LPG.

**33.**    Based on information and belief Reliance and Yuriy through Reliance, acted as a marketing affiliate for LPG.

**34.**    LPG agreed to pay, and in fact paid Reliance a portion of the monthly payments received from consumers referred by Reliance.

**35.**    Based on information and belief, Reliance also likely entered into agreements pursuant to which they purported to sell accounts receivable back to LPG. Pursuant to these agreements, Debtor purported to buy from Reliance a portion of its income stream.

///

///

6

### i.    **Affiliate Agreements**

**36.**    Based upon the Trustee's review of the business operations of the marketing affiliates, Reliance's Proof of Claim (as defined herein) signed by Yuriy—stating that Reliance was owed for locating and onboarding clients to LPG, performing customer service tasks, and helping retain clients, (Proof of Claim No. 2499-1 Page 1 of 1)and the Debtor's banking records, including transactions between Reliance and Debtor, upon information and belief, Defendants operated as a marketing affiliate for the Debtor and such arrangement was dictated by an oral or written affiliate agreement with Defendants (whether memorialized by written or oral agreement, the "Affiliate Agreement(s)"). A true and accurate copy of the summary of the banking transaction history is attached as **Exhibit 2** and incorporated herein ("Transaction History").

**37.**    Reliance owns and operates a system of generating leads consisting of consumers interested in the legal services offered by LPG. *See e.g.,* Proof of Claim, Exhibit 7.

**38.**    Pursuant to the Debtor's other Affiliate Agreements, the marketing affiliate would be required to generate leads consisting of consumers interested in the legal services offered by LPG and refer those consumers to Debtor.  Based on Reliance's , Proof of Claim, Exhibit 7, that is also what Reliance did for Debtor.

**39.**    In exchange for the referrals, Debtor paid its marketing affiliates, including Reliance a percentage of the fees associated with the client files. *See* Transaction History.

**40.**    Affiliate Agreements and any associated referral activity conducted by Defendants violate Sections 6151 and 6155 of the California Business and Professional Code, which prohibit referrals of potential clients to attorneys unless registered with the State Bar of California. CAL. BUS. & PROF. CODE § 6155. "Referral activity" includes "any entity 'which, in person, electronically, or otherwise, refers the consumer to an attorney or law firm not identified' in the advertising." *Jackson v. LegalMatch.com*, 42 Cal. App. 5th 760, 775 (2019). A referral includes receiving information from potential clients and sending that information to lawyers, even when the advertiser does not advertise the name of the attorneys and the clients do not clear the name of the potential attorney after the referral occurred. *Id.*

///

41.     Further, if any effect of an agreement is to accomplish an unlawful purpose, the agreement may be declared illegal regardless of the intention of the parties. *Stockton Morris Plan Co. v. Cal. Tractor & Equip. Corp.*, 112 Cal. App. 2d 684, 690 (1952) (citing *Fewel & Dawes, Inc. v. Pratt*, 17 Cal. 2d 85, 91 (1941)). This remains true regardless of whether the contract has been performed. *Stevens v. Boyes Hot Springs Co.*, 113 Cal. App. 479, 483 (1931) (A contract by a corporation to purchase its own stock has the effect of illegally withdrawing and paying to a stockholder a part of the capital stock of the corporation and is illegal and void, regardless of the fact that the contract is fully performed by the sellers and partially performed by the corporation.); *Mansfield v. Hyde*, 112 Cal. App. 2d 133, 139 (1952), overruled, *Fomco, Inc. v. Joe Maggio, Inc.*, 8 Cal. Rptr. 459 (1960) (Where object of statute requiring licenses is to prevent improper persons from engaging in particular activity, or is for purpose of regulating occupation or business for protection of public, imposition of penalty amounts to prohibition against engaging in occupation or business without license, and contract made by unlicensed person in violation of statute is invalid.); *Firpo v. Murphy*, 72 Cal. App. 249, 252 (1925) (A contract to pay commissions to a real estate broker is illegal and he is not entitled to recover thereon where he fails to secure the license required by law to carry on his business.).

42.     Because Affiliate Agreements and associated referral activity violate federal and state law since the named Defendants have not registered with the State Bar of California as required by Cal. Bus. & Prof. Code § 6155, they are void, unenforceable, and subject to avoidance as fraudulent. Any alleged consideration provided to Debtor under the Affiliate Agreements (defined hereafter below) was unlawful.

43.     Unlawful consideration is that which is: "(1) contrary to an express provision of law; (2) contrary to the policy of express law, though not expressly prohibited; or (3) otherwise contrary to good morals." Cal. Civ. Code § 1667. "If any part of a single consideration for one or more objects, or of several considerations for a single object, is unlawful, the entire contract is void." Cal. Civ. Code § 1608.

///

///

ii.    **Account Receivable Purchase Agreements**

**44.**    Based upon the Trustee's review of the Debtor's records, the Debtor entered into several accounts receivable purchase agreements (whether memorialized by oral or written agreement, "ARPA Agreement(s)") with its marketing affiliates.

**45.**    Defendants intended to acquire "cash flow streams representing interests in customer payments for debt validation"." Upon information and belief, Reliance executed at least one ARPA.

**46.**    Pursuant to the ARPA Agreements generally, the Debtor purports to buy from its marketing affiliates' accounts receivable from consumers that were supposed to be held in trust until earned.

**47.**    In the 4 years prior to bankruptcy and after the Petition Date, LPG transferred to Reliance not less than $781,291.64.

**48.**    By entering into the ARPA Agreements and/or agreeing to enter into such a transaction, Debtor and Reliance violated federal and state laws by selling unearned legal fees or funds that were supposed to be held in trust or used for the benefit of consumers.

**49.**    The effect of the ARPA Agreements and/or related transactions was to accomplish an unlawful purpose. Thus, the agreement may be declared illegal regardless of the intention of the parties. *Stockton Morris Plan Co. v. Cal. Tractor & Equip. Corp.*, 112 Cal. App. 2d 684, 690 (1952) (citing *Fewel & Dawes, Inc. v. Pratt*, 17 Cal. 2d 85, 91 (1941)). This remains true regardless of whether the contract has been performed. *Stevens v. Boyes Hot Springs Co.*, 113 Cal. App. 479, 483 (1931) (A contract by a corporation to purchase its own stock has the effect of illegally withdrawing and paying to a stockholder a part of the capital stock of the corporation and is illegal and void, regardless of the fact that the contract is fully performed by the sellers and partially performed by the corporation.); *Mansfield v. Hyde*, 112 Cal. App. 2d 133, 139 (1952), overruled, *Fomco, Inc. v. Joe Maggio, Inc.*, 8 Cal. Rptr. 459 (1960) (Where object of statute requiring licenses is to prevent improper persons from engaging in particular activity, or is for purpose of regulating occupation or business for protection of public, imposition of penalty amounts to prohibition against engaging in occupation or business without license, and contract made by unlicensed person in violation of statute is invalid.); *Firpo v. Murphy*, 72 Cal. App. 249, 252 (1925) (A contract to pay commissions to a real estate broker is illegal

and he is not entitled to recover thereon where he fails to secure the license required by law to carry on his business.).

50.     Because the ARPA Agreements and/or related transactions violate federal and state laws, it is void, unenforceable, and subject to avoidance as fraudulent. Any alleged consideration provided to Debtor under the ARPA Agreements and/or related transactions was unlawful.

51.     Unlawful consideration is that which is: "(1) contrary to an express provision of law; (2) contrary to the policy of express law, though not expressly prohibited; or (3) otherwise contrary to good morals." Cal. Civ. Code § 1667. "If any part of a single consideration for one or more objects, or of several considerations for a single object, is unlawful, the entire contract is void." Cal. Civ. Code § 1608.

### iii.     **Demand Letter**

52.     On or about November 20, 2024, Trustee sent a demand letter to Reliance ( "Demand Letter 1"). A true and accurate copy of Demand Letter 2 is attached as **Exhibit 3**, and incorporated here.

53.     On or about November 25, 2025, Trustee sent a demand letter to Reliance ("Demand Letter 2"). A true and accurate copy of Demand Letter 2 is attached as **Exhibit 4**, and incorporated here.

54.     Demand Letter 1 and Demand Letter 2 discussed certain transfers from Debtor that were made to Reliance within the 4 year reach-back period, the 90-days. prior to the Petition Date, and transfers made after the petition date. The 4-year transfers, 90-day transfers, and post petition transfers were listed showing the date and amount, according to Debtor's books and records, of each transfer or other payment ("Transfer Schedules"). Trustee requested Reliance provide information to assess whether any claim or defenses exist related to the transfers. No response was received from Reliance.

55.     Based on the information available to Trustee and considering the nature of the relationship between Debtor and Defendants, no potential defenses were identified that could reduce Defendants' liability for the preference payment.

///

**E.**    **Payments to Reliance**

**56.**    During the applicable reach-back period, Debtor paid Reliance the sum of at least $275,870.15 between October 2022 and March 2023 ("Transfers"). *See* Exhibit 2.

**57.**    LPG paid, through Maverick Management Group LLC, at least $15,352.00 of LPG client funds through its accounts in order to pay marketing affiliates according to a review of LPG bank records. *See* Exhibit 2.

**58.**    LPG paid, through Prime Logix LLC, at least $571,834.44 of LPG client funds through its accounts in order to pay marketing Affiliates according to a review of LPG bank records. *See* Exhibit 2 and 6.

**59.**    LPG paid, through Vulcan Consulting, at least $11,266.29 of LPG client funds through its accounts in order to pay marketing Affiliates according to a review of LPG bank records. *See* Exhibit 6.

**60.**    At least $231,169.20 of the Transfers from Debtor to Reliance occurred during the 90-day preference period ("Preference Transfers"). A true and accurate list of the payments made during the Preference Transfers is attached as **Exhibit 5**, and incorporated here.

**61.**    Reliance received transfers in the amount of at least $505,421.49 after the bankruptcy petition was filed ("Post-Petition Transfers"). A true and accurate summary of the Post-Petition Transfers is attached as **Exhibit 6**, and incorporated herein.

**F.**    **LPG's Ponzi Scheme**

**62.**    The Ponzi Scheme Presumption exists in this Bankruptcy.

**63.**    The Ponzi Scheme Presumption can be utilized to establish a debtor's "intent to defraud future undertakers [investors] from the mere fact that a debtor was running a Ponzi scheme. Indeed, no other reasonable inference is possible. A Ponzi scheme cannot work forever. The investor pool is a limited resource and will eventually run dry. The perpetrator must know that the scheme will eventually collapse as a result of the inability to attract new investors. The perpetrator nevertheless makes payments to present investors, which, by definition, are meant to attract new investors. He must know all along, from the very nature of his activities, that investors at the end of the line will lose their money. Knowledge to a substantial certainty constitutes intent in the eyes of the law, *cf. Restatement*

*(Second) of Torts § 8A (1963 & 1964)*, and a debtor's knowledge that future investors will not be paid is sufficient to establish his actual intent to defraud them. *Cf. Coleman Am. Moving Servs., Inc. v. First Nat'l Bank & Trust Co. (In re American Properties, Inc.)* (Bankr.D.Kan. 1981)14 B.R. 637, 643 (intentionally carrying out a transaction with full knowledge that its effect will be detrimental to creditors is sufficient for actual intent to hinder, delay or defraud within the meaning of § 548(a) (1)).” *Merrill v. Abbott (In re Independent Clearing House Co.)* (D. Utah 1987) 77 B.R. 843, 860. A trustee in bankruptcy is not required to show that an operator of a Ponzi scheme was subjectively aware his Ponzi scheme was destined to fail. *In re EPD Inv. Co., LLC*, 114 F.4th at 1153 (9th Cir. 2024) (“[a] trustee's action to recover assets fraudulently conveyed in the course of a Ponzi scheme does not require that the trustee also prove the Ponzi-scheme operator was subjectively aware his Ponzi scheme was destined to fail.”)

**64.**     “But if all the debtor receives in return for a transfer is the use of the defendant's money to run a Ponzi scheme, there is nothing in the bankruptcy estate for creditors to share. In fact, by helping the debtor perpetuate his scheme, the transfers exacerbate the harm to creditors by increasing the amount of claims while diminishing the debtor's estate. In such a situation, the use of the defendant's money cannot objectively be called “reasonably equivalent value. *“In re Independent Clearing House Co.* 77 B.R.at 859. Therefore, “[t]he trustee can avoid the transfers if they were preferential or fraudulent. Transfers to investors in a Ponzi scheme are preferential and fraudulent. Therefore, they constitute “property of the estate,” and the trustee can recover them. *Id.* at 853 n.17 (citations omitted).

**65.**     Debtor was operating a Ponzi scheme that utilized Reliance and Yuriy through Reliance, and several other entities as investors to continue its unlawful business practices by using funds provided by current investors to attract new investors hoping for very high returns. Therefore, the Debtor was running a Ponzi scheme and the Ponzi Scheme Presumption can be utilized to infer that the Debtor had the intent to defraud investors within the meaning of 11 U.S.C. section 548(a)(1).

**66.**     Moreover, since the Transfers were made with the intent to further the Ponzi scheme, the Debtor did not receive an objectively reasonable equivalent value for the Transfers, and the Trustee can avoid the Transfers because they were preferential and fraudulent.

### G.    LPG's Prepetition Creditors

**67.**    Debtor was insolvent when each Transfer was made. This insolvency is evidenced in part by the fact that 14 separate UCC-1 statements were of record securing debts of the Debtor as of September 1, 2022. These statements remained unreleased as of the Petition Date. These statements either reflected secured liens against the Debtor's assets then owned or thereafter acquired, or provided evidence of the assignment or sale of substantial portions of the Debtor's future income.

**68.**    Plaintiff directs Defendants to the Order Denying Greyson's Motion to Vacate the Preliminary Injunction entered as Bankr. Docket No. 1545 ("Order") where the Court found "it is clear to this Court that Debtor, since its pre-petition inception (and through the time of the appointment of the Chapter 11 Trustee) was, in the Court's opinion operating a criminal enterprise" and that "[t]here is also evidence before the Court that the Debtor was running a Ponzi scheme and paying some outside (or 'network') attorneys with funds obtained from new clients." Order p. 3, l. 11-13; p. 4, l. 14-15. Insolvency is presumed as a matter of law if the debtor operated a Ponzi scheme. *See, e.g., Glob. Money Mgmt., L.P. v. McDonnold*, No. 06CV34, 2008 U.S. Dist. LEXIS 128733, at *15 (S.D. Cal. Feb. 27, 2008) (concluding that "if a Ponzi scheme is proven, then the debtor is proven insolvent from the time of its inception").

**69.**    When the Transfers were made, these prior UCC-1 statements secured the repayment of the following claimed amounts that are currently known to Trustee and are allegedly owed by the Debtor: (i) $2,374,004.82 owed to Fundura Capital Group as evidenced by Proof of Claim No. 335 purportedly secured by a UCC statement filed on or about May 19, 2021; (ii) approximately $15 million dollars owed to MNS Funding, LLC as evidenced by Proof of Claim No. 1060 purportedly secured by a UCC statement filed on or about May 28, 2021; (iii) approximately $5,000,000 owed to Azzure Capital, LLC as evidenced by Proof of Claim No. 127 purportedly secured by a UCC statement filed on or about May 28, 2021; and (iv) approximately $1.5 million dollars owed to Diverse Capital, LLC purportedly secured by UCC statements filed on or about September 15, 2021, and December 1, 2021.[1]

---

[1] Trustee reserves all rights, claims, and defenses with respect to these and any other purported secured or unsecured claims.

70.     As alleged above, LPG was borrowing against its assets and future income, often on unfavorable terms, not only to finance operations at LPG, but also to pay the fees owed to the marketing affiliates for providing it with consumer clients. Pursuant to the agreements with the marketing companies, significant percentages of future payments were already promised to be paid to the marketing affiliates from whatever future income the Debtor would receive.

71.     In addition, on Debtor's Schedule E/F [Bankr. Docket No. 33], Debtor scheduled 11 unsecured creditors with priority unsecured claims totaling $374,060.04. These priority unsecured creditors include Indiana Dept. of Revenue, Dept. of Labor and Industries, Arizona Dept. of Economic Security, Arkansas Dept. of Finance & Admin., California Franchise Tax Board, Georgia Dept. of Labor, Internal Revenue Service, Mississippi Dept. of Revenue, Nevada Dept. of Taxation, Utah State Tax Commission, and Wisconsin Dept. of Revenue (collectively, "Priority Unsecured Creditors").

72.     Another group of creditors that Debtor listed on its Schedule E/F [Bankr. Docket No. 33] are nonpriority unsecured creditors. Those 58 creditors have scheduled claims totaling $141,439,158.05 and include Ajilon; Anthem Blue Cross; Azevedo Solutions Groups, Inc.; Carolina Technologies & Consulting Invoice; Collaboration Advisors; Credit Reporting Service Inc.; CT Corporation – Inv.; Debt Pay Pro; Document Fulfillment Services; EnergyCare, LLC; Exela Enterprise Solutions; First Legal Network, LLC; GHA Technologies Inc.; Harrington Electric, Inc.; Imagine Reporting; Juize, Inc.; Krisp Technologies, Inc.; Liberty Mutual; Marc Lemauviel – Allegra; MarkSYS Holdings, LLC; Netsuite-Oracle; Pitney Bowes; Rapid Credit, Inc.; SBS Leasing A Program of De Lage Landen; Security Solutions; Sharp Business Systems; Streamline Performance, Inc.; Thomson Reuters; Twilio, Inc.; Nationwide Appearance Attorneys; Executive Center, LLC; Outsource Accelerator, Ltd.; TaskUs Holdings, Inc.; Marich Bein, LLC; Validation Partners; MC DVI Fund 1, LLC; MC DVI Fund 2, LLC; Debt Validation Fund II, LLC; Tustin Executive Center; LexisNexus; JP Morgan Chase; Business Centers of America; Michael Schwartz; Anibal Colon Jr.; Kathleen Lacey; David Ulery; Kimberly Birdsong; Kevin Carpenter; Karen Suell; Gloria Eaton; Carolyn Beech; Debra Price; Kenneth Topp; Darcey Williamson, Trustee; James Hammett; Johnny Rizo; Beverly Graham; Kathleen Scarlett; and Geneve and Myranda Sheffield (collectively, //.

"Nonpriority Unsecured Creditors" and, together with the Secured Creditors and Priority Unsecured Creditors, "Prepetition Creditors").

**73.**     As of the date that the complaint was drafted, approximately 5,771 claims have been filed with the bankruptcy Court. While Trustee has not reviewed all claims as of the date of this complaint, and reserves all rights to object to those claims, the total amount is in excess of approximately $717,507,462.29.

**74.**     Debtor's profit and loss statements reflect at least $115,000,000 of "Total Income" for the three-year period ending December 31, 2021, and based on information and belief that a substantial portion of this income had not actually been earned by Debtor. Proper accounting treatment of this unearned "income" would have been to record the unearned portion as cash received in client trust or IOLTA bank account with an offsetting client retainer liability account in the same amount. Thus, the unearned portion of the income would be present only on the balance sheet and not on Debtor's profit and loss statement. Debtor's balance sheets reflect two trust accounts, the highest balance of which was approximately $346,000 in November 2021. The balance sheets do not reflect a client retainer liability account. Thus, it appears that Debtor overstated its income during the three years ending December 31, 2021, though the extent to which it is overstated remains unknown. Further, assuming (as it appears to be the case) Debtor did not properly record its unearned income on its balance sheets using a trust account and offsetting client retainer liability account then Debtor's assets and liabilities on those balance sheets would be inaccurate.

**75.**     Additionally, just because Debtor had incoming cash that does not necessarily mean it was solvent. Based on information and belief Debtor's incoming cash was related to unearned income and should have been held in an appropriate trust account and recorded on its balance sheet with an offsetting client retainer payable account until it was earned. This treatment is further reinforced as appropriate by the fact that Debtor offered its clients a refund for unearned income. Thus, Debtor's incoming cash neither increased its assets (due to the offsetting client retainer liability in the same amount) nor would it increase its profitability until services were rendered and the income was actually earned.

///

**76.** Debtor's balance sheets for the 36 months ending December 31, 2021 show only approximately $17,900,000 in total assets (primarily comprised of accounts receivable and merchant loans receivable) at its highest point in November 2021. Obviously, this amount is significantly less than the $700,000,000 of claims filed, further evidencing Debtor's state of insolvency.

**FIRST CLAIM FOR RELIEF**

**Count I - Avoidance, Recovery, and Preservation of Actual Fraudulent Transfers**

**Against Reliance**

**[11 U.S.C. §§ 544, 548(a) (1) (A), 550, and 551]**

**77.** Plaintiff realleges and incorporates here by reference each and every allegation contained in paragraphs 1 through 76 as though set forth in full.

**78.** All or a portion of the Transfers occurred within the two years prior to the Petition Date and thus, any agreements between the Debtor and the Reliance did as well, whether or not memorialized in Affiliate Agreements, ARPA Agreements, or other agreements.

**79.** On or after the date that any such agreements were entered or executed and the Transfers were made, entities to which Debtor was or became indebted include the Prepetition Creditors.

**80.** The Transfers happened while Debtor was insolvent or rendered Debtor insolvent.

**81.** Despite Debtor's obligation to the Prepetition Creditors, Debtor continued to pay Reliance sums received from consumers under such Affiliate Agreements, which constitute illegal capping agreements between Reliance and Debtor. Any obligation of the Debtor arising from such agreement is avoidable as fraudulent.

**82.** Despite Debtor's obligation to the Prepetition Creditors, Reliance continued to sell portions of the illegal accounts receivables generated under the ARPA Agreements to Debtor, which is illegal under federal and state laws.

**83.** The Transfers were made with actual intent to hinder, delay, or defraud creditors of Debtor.

///

///

**84.**     The Debtor was operating a Ponzi scheme and the Ponzi Scheme Presumption can be utilized to infer the Debtor's actual intent to defraud within the meaning of 11 U.S.C. Section 548(a)(1).

**85.**     The Affiliate Agreements, ARPA Agreements, and the Transfers of Debtor's funds are avoidable as fraudulent pursuant to 11 U.S.C. §§ 544, 548(a)(1)(A), 550, and 551, and the common law tort of intentional fraudulent transfers by one or more creditors who held and hold unsecured claims against Debtor that were and are allowable against his Estate under 11 U.S.C. § 502 or that were not and are not allowable only under 11 U.S.C. § 502(e), including, without limitation, the Prepetition Creditors.

**86.**     The Affiliate Agreements, ARPA Agreements, and Transfers should be avoided as fraudulent under 11 U.S.C. § 548(a)(1)(A) and under the common law tort of intentional fraudulent transfers, and such transferred property, or the value thereof, should be recovered and preserved for the benefit of the Estate pursuant to 11 U.S.C. §§ 550 and 551.

<u>**SECOND CLAIM FOR RELIEF**</u>

**Count II - Avoidance, Recovery, and Preservation of Constructive Fraudulent Transfers**

<u>**Against Reliance**</u>

**[11 U.S.C. §§ 544, 548(a) (1) (B), 550, and 551]**

**87.**     Plaintiff realleges and incorporates here by reference each and every allegation contained in paragraphs 1 through 86 as though set forth in full.

**88.**     The Affiliate Agreements, ARPA Agreements, and all or a portion of the Transfers occurred within the two years prior to the Petition Date.

**89.**     On or after the date that such agreements were executed and such Transfers were made, entities to which Debtor was or became indebted include the Prepetition Creditors.

**90.**     The Transfers happened while Debtor:

      a.      was insolvent or became insolvent was a result;

      b.      was engaged or was about to engage in a transaction for which any property remaining with Debtor had unreasonably small capital; or

///

c.    intended to incur, or believed that it would incur, debts beyond its ability to pay as such debts matured.

91.    Because the referrals from Reliance to Debtor are illegal under federal and state law, they are void and subject to avoidance as fraudulent. Any purported consideration constitutes unlawful consideration, which cannot constitute reasonably equivalent value. Thus, at the time the agreements were executed and the Transfers made, Debtor received less than reasonably equivalent value.

92.    Furthermore, the Debtor did not receive the reasonably equivalent value of the Transfers to Reliance because by using Reliance's money to run a Ponzi Scheme, there is nothing in the Estate for the creditors to share and no benefit to the estate. Rather, the Transfers exacerbated the harm to creditors by increasing the amount of claims while diminishing the Debtor's Estate. In this situation, the use of Reliance's money to further the Debtor's Ponzi scheme cannot be consideration for the Transfers and cannot objectively be called reasonably equivalent value.

93.    Reliance were acting as investors in the Debtor's Ponzi scheme. Because the sale of the accounts receivable from Reliance to Debtor is illegal under federal and state law, the sale is void and subject to avoidance as fraudulent. Any purported consideration constitutes unlawful consideration, which cannot constitute reasonably equivalent value. Thus, at the time the agreements were executed and the Transfers made, Debtor received less than reasonably equivalent value.

94.    The Affiliate Agreements, ARPA Agreements, and the Transfers should be avoided as fraudulent under 11 U.S.C. §§ 544 and 548(a)(1)(B), and such transferred property, or the value thereof, should be recovered and preserved for the benefit of the Estate pursuant to 11 U.S.C. §§ 550 and 551.

## THIRD CLAIM FOR RELIEF

### Count III - Avoidance, Recovery, and Preservation of Actual Fraudulent Transfers

### Against Reliance

**[11 U.S.C. §§ 544(b), 550, and 551; CAL. CIV. CODE §§ 3439.04(a), 3430.04(b), and 3439.07]**

95.    Plaintiff realleges and incorporates here by reference each and every allegation contained in paragraphs 1 through 94 as though set forth in full.

///

96.     The Affiliate Agreements, ARPA Agreements, and all or a portion of the Transfers occurred within the four years prior to the Petition Date.

97.     On or after the date that such agreements were entered and such Transfers were made, entities to which Debtor was or became indebted include the Prepetition Creditors.

98.     Despite Debtor's obligation to the Prepetition Creditors, Debtor continued to pay Reliance sums received from consumers under the Affiliate Agreements, which constitutes an illegal capping agreement between Reliance and Debtor.

99.     The Transfers happened while Debtor was insolvent or Debtor became insolvent shortly after the Transfers were made as is evidenced by the filing of the voluntary petition.

100.    The value of the consideration received by Debtor for such Transfers was not reasonably equivalent to the value of the Transfers because the Transfers were used to further assist Debtor in its Ponzi scheme.

101.    Because the referrals from Reliance to Debtor are illegal under federal and state law, they are void and subject to avoidance as fraudulent. Any purported consideration constitutes unlawful consideration, which cannot constitute reasonably equivalent value. Thus, at the time the agreements were executed and the Transfers made, Debtor received less than reasonably equivalent value.

102.    Despite Debtor's obligation to the Prepetition Creditors, Debtor continued to buy accounts receivables from Reliance which is illegal under federal and state law. Because they are illegal under federal and state law, they are void and subject to avoidance as fraudulent.

103.    The Transfers were made with actual intent to hinder, delay, or defraud creditors of Debtor.

104.    The Debtor's conduct was done with oppression, fraud, and malice, as defined in Civil Code section 3294, based on the Ponzi Scheme Presumption, entitling the Trustee to, in addition to the actual damages, exemplary or punitive damages for making an example of the Debtor and to punish the Debtor.

105.    The Affiliate Agreements the ARPA Agreements and the Transfers of Debtor's funds are avoidable as fraudulent pursuant to 11 U.S.C. § 544(b) and Cal. Civ. Code §§ 3439.04(a), 3439.04(b), and 3439.07 by one or more creditors who held and hold unsecured claims against Debtor

that were and are allowable against the Estate under 11 U.S.C. § 502 or that were not allowable only under 11 U.S.C. § 502(e) including, without limitation, the Prepetition Creditors. The Affiliate Agreements, the ARPA Agreements, and the Transfers of Debtor's funds are avoidable as fraudulent pursuant to 11 U.S.C. § 544(b) and CAL. CIV. CODE §§ 3439.04(a) and 3439.07 by one or more creditors who held and hold unsecured claims against Debtor that were and are allowable against his Estate under 11 U.S.C. § 502 or that were not and are not allowable only under 11 U.S.C. § 502(e), including, without limitation, the Prepetition Creditors.

**106.** Accordingly, the Affiliate Agreements, the ARPA Agreements, and the Transfers should be avoided as fraudulent under 11 U.S.C. §§ 544(b) and CAL. CIV. CODE §§ 3439.04(a) and 3439.07, and under the common law tort of intentional fraudulent transfers, and such transferred property, or the value thereof, should be recovered and preserved for the benefit of the Estate pursuant to 11 U.S.C. §§ 550 and 551 and CAL. CIV. CODE § 3439.07.

## FOURTH CLAIM FOR RELIEF

### Count IV - Avoidance, Recovery, and Preservation of Constructive Fraudulent Transfers

### Against Reliance

### [11 U.S.C. §§ 544(b), 550, and 551; CAL. CIV. CODE §§ 3439.05, and 3439.07]

**107.** Plaintiff realleges and incorporates here by reference each and every allegation contained in paragraphs 1 through 106 as though set forth in full.

**108.** The Affiliate Agreements, the ARPA Agreements, and all or a portion of the Transfers occurred within the four years prior to the Petition Date.

**109.** The Transfers happened while Debtor:

    a.    was insolvent or became insolvent as a result;

    b.    was engaged or was about to engage in a transaction for which any property remaining with Debtor was of unreasonably small capital; or

    c.    intended to incur, or believed that it would incur, debts beyond its ability to pay as such debts matured.

**110.** Because the referrals from Reliance to Debtor are illegal under federal and state law, the agreements are void and subject to avoidance as fraudulent. Any purported consideration

constitutes unlawful consideration, which cannot constitute reasonably equivalent value. Thus, at the time the agreements were executed and the Transfers made, Debtor received less than reasonably equivalent value.

**111.** Furthermore, the Debtor did not receive the reasonably equivalent value of the Transfers to Reliance because by using Reliance's money to run a Ponzi Scheme, there is nothing in Estate for the creditors to share. Rather, the Transfers exacerbated the harm to creditors by increasing the amount of claims while diminishing the Debtor's Estate. In this situation, the use of Reliance's money to further the Debtor's Ponzi Scheme cannot be consideration for the Transfers and cannot objectively be called reasonably equivalent value.

**112.** Reliance were therefore acting as an investor in the Debtor's Ponzi scheme and any Transfers made to Reliance can be avoided by the Plaintiff since the Transfers to Reliance are preferential and fraudulent such that they constitute property of the Estate in which the Plaintiff can recover.

**113.** Because the sale of the accounts receivable from Reliance to Debtor are illegal under federal and state law, they are void and subject to avoidance as fraudulent. Any purported consideration constitutes unlawful consideration, which cannot constitute reasonably equivalent value. Thus, at the time the agreements were executed and the Transfers made, Debtor received less than reasonably equivalent value.

**114.** The Affiliate Agreements, the ARPA Agreements, and the Transfers of Debtor's funds are avoidable as fraudulent pursuant to 11 U.S.C. § 544(b) and CAL. CIV. CODE §§ 3439.05 and 3439.07 by one or more creditors who held and hold unsecured claims against Debtor that were and are allowable against his Estate under 11 U.S.C. § 502 or that were not and are not allowable only under 11 U.S.C. § 502(e), including, without limitation, the Prepetition Creditors.

**115.** Accordingly, the Affiliate Agreements, the ARPA Agreements, and the Transfers should be avoided as fraudulent under 11 U.S.C. §§ 544(b) and CAL. CIV. CODE §§ 3439.05 and 3439.07, and such transferred property, or the value thereof, should be recovered and preserved for the benefit of the Estate pursuant to 11 U.S.C. §§ 550 and 551 and CAL. CIV. CODE § 3439.07.

///

**FIFTH CLAIM FOR RELIEF**

**Count V - Avoidance, Recovery, and Preservation of Preferential Transfer to Reliance in**

**Preference Period**

**Against Reliance**

**[11 U.S.C. §§ 547, 550, and 551]**

**116.**    Plaintiff realleges and incorporates here by reference each and every allegation contained in paragraphs 1 through 115 as though set forth in full.

**117.**    The Preference Transfers were made for, or on account of, an antecedent debt or debts owed by the LPG to Reliance each of which constituted a "debt" or "claim" (as those terms are defined in the Bankruptcy Code) of Reliance.

**118.**    The Preference Transfers happened while LPG was insolvent.

**119.**    Debtor is also entitled to the presumption of insolvency when the Preference Transfers happened pursuant to 11 U.S.C. § 547(f).

**120.**    As a result of the Preference Transfers, Reliance recovered more than it would have received if: (i) the Debtor's case was under chapter 7 of the Bankruptcy Code; (ii) the Preference Transfers had not been made; and (iii) Reliance received payments of its debts under the provisions of the Bankruptcy Code. As evidenced by the Debtor's schedules filed in the underlying Bankruptcy Case, as well as the proofs of claim that have been received to date, the Debtor's liabilities exceed its assets to the point that unsecured creditors will not receive a full payout of their claims from the Debtor's Estate.

**121.**    In accordance with the foregoing, the Preference Transfers are voidable pursuant to 11 U.S.C. § 547(b), and may be recovered and preserved for the benefit of the estate pursuant to 11 U.S.C. §§ 550 and 551.

///

///

///

///

///

## SIXTH CLAIM FOR RELIEF

**Count VI - Avoidance, Recovery, and Preservation of Post-Petition Transfers to Reliance**

**Against Reliance**

**[11 U.S.C. §§ 549, 550, and 551]**

**122.** Plaintiff realleges and incorporates here by reference each and every allegation contained in paragraphs 1 through 121 as though set forth in full.

**123.** Reliance received transfers in the amount of at least $505,421.49 after the bankruptcy petition was filed. *See* Ex. 5.

**124.** Under 11 U.S.C. §549(a), the trustee may avoid a transfer of property of the estate that occurs after the commencement of the case and that is not authorized by the court with jurisdiction over the Bankruptcy Estate.

**125.** Reliance received the Post-Petition Transfers after the Petition Date and the Post-Petition Transfers were not authorized.

126. In accordance with the foregoing, the Post-Petition Transfers are voidable pursuant to 11 U.S.C. § 549, and may be recovered and preserved for the benefit of the estate pursuant to 11 U.S.C. §§ 550 and 551.

## SEVENTH CLAIM FOR RELIEF

**Aiding and Abetting**

**Against Defendants**

**[11 U.S.C. §§ 544(b), 550, and 551; CAL. CIV. CODE §§ 3439.04(a), 3439.04(b), and 3439.07]**

127. Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 126 as though set forth in full.

128. Defendants, based upon information and belief and based on the Ponzi Scheme Presumption, had knowledge of the fraudulent transactions, transfers and illegal agreements that were used to perpetuate and conceal the Ponzi scheme and fraudulent transfers.

129. Defendants, with the foregoing knowledge, intended to, and did, help the Debtor in perpetuating and concealing the Ponzi scheme and fraudulent transfers of money.

///

130.     At all material times, Defendants had the intent to facilitate and conceal the Ponzi scheme and fraudulent transfers of money by aiding and abetting the illegal capping scheme and signing up consumer clients to keep the business going.

131.     Defendants, upon information and belief, assisted, and did actually engage in, the commission of fraud and the Ponzi scheme by coordinating, facilitating, and directing payments and transfers of monies and executing documents in furtherance of concealing the true nature of their fraudulent and criminal activity related to the Ponzi scheme.

132.     The injuries to Plaintiff, the Debtor's Estate and to its creditors directly, proximately and reasonably foreseeably resulting from and caused by violations of Sections 6151 and 6155 of the California Business and Professional Code include, without limitation, hundreds of thousands of dollars in improperly transferred and acquired monies.

133.     Plaintiff and the Debtor's Estate also suffered damages by incurring attorney's fees and costs associated with the prosecution of Defendants' unlawful activities.

### **EIGHTH CLAIM FOR RELIEF**

**Count VI- Turnover of Estate Property**

**Against Defendants**

**[11 U.S.C. § 542]**

134.     Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 133 as though set forth in full.

135.     Defendants have possession or control over property of the Estate including, but not limited to the Transfers, Preference Transfers, and Post-Petition Transfers made pursuant to illegal and unenforceable agreements.

136.     The property, including but not limited to the Transfers, Preference Transfers, and Post-Petition Transfers are not of inconsequential value to the Estate.

137.     The funds that are the subject of the Transfers, Preference Transfers, and Post-Petition Transfers are paramount to Debtor's ability to pay creditors.

///

138.     Accordingly, Trustee is entitled to a judgment for turnover of the Transfers, Preference Transfers, and Post-Petition Transfers pursuant to 11 U.S.C. § 542.

**NINTH CLAIM FOR RELIEF**

**Disallowance of Claims**

**Against Reliance**

**[11 U.S.C. § 502(d)]**

139.     Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 138 as through set forth in full.

140.     On February 23, 2024 Reliance filed a proof of claim as Claim No. 2499 (the "Proof of Claim), in the amount of One Dollar ($1.00). A true and accurate copy of the Proof of Claim is attached here as **Exhibit 7** and incorporated herein. This Proof of Claim was signed by Yuriy on behalf of Reliance.

141.     The Proof of Claim's attachment states that it is owed funds for, "[l]ocating and onboarding clients to LPG… [p]erforming customer service tasks…" and, among other things, "[p]roviding a retention function to encourage clients of LPG to remain with LPG or encouraging client who had terminated their relationship with LPG to resume such relationship…". Proof of Claim No. 2499-1, Page 1 of 1.

142.     Based on the Defendants' conduct set forth in paragraphs 1 through 137, the Proof of Claim and any other claims having been filed or to be filed by Reliance in the Bankruptcy case should be disallowed pursuant to 1 U.S.C. § 502(d).

**RESERVATION OF RIGHTS**

143.     Plaintiff reserves the right to bring all other claims or causes of action that Plaintiff may have against Defendants, on any and all grounds, as allowed under the law or in equity, including but not limited to, those claims not known by the Trustee at this time but that he may discover during the pendency of this adversary proceeding.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for a judgment as follows:

**On The First, Second, Third, and Fourth Claims for Relief:**

1.      Avoiding, recovering, and preserving the Transfers against Reliance;

**On the Fifth Claim for Relief:**

2.      Avoiding, recovering, and preserving the Preference Transfers against Reliance;

**On the Sixth Claim for Relief:**

3.       Avoiding, recovering, and preserving the Post-petition Transfers against Reliance;

**On the Seventh Claim for Relief**

4.       Awarding Plaintiff monetary damages in the amount of all fraudulent transfers obtained by Defendants from Debtor;

**On the Eighth Claim for Relief**

5.      Ordering Reliance and Yuriy to immediately turn over the property of the estate, including, but not limited to, the Transfers, Preference Transfers, and/or Post-Petition Transfers it received from Debtor;

**On the Ninth Claim for Relief**

6.      Disallowing the Proof of Claim and all other Claims filed by Reliance as the funds requested are based on fraudulent activities;

**On All Claims for Relief:**

7.      Awarding costs of suit incurred here;

8.      Awarding punitive damages against Reliance and Yuriy; and

9.      Awarding attorney's fees;

10.      Awarding pre-judgement and post-judgement interest; and

11.      Granting any other and further relief as the Court deems just and proper.

Dated: February 25, 2025                         Respectfully submitted,

                                                                 DINSMORE & SHOHL LLP


                                                                 By: /s/ Sara A. Johnston
                                                                       Sara A. Johnston
                                                                       *Special Counsel to Richard A. Marshack, Former*
                                                                       *Chapter 11 Trustee for the Bankruptcy Estate of The*
                                                                       *Litigation Practice Group PC and Current*
                                                                       *Liquidating Trustee of the LPG Liquidation Trust*

# Exhibit 1.

1  CHRISTOPHER B. GHIO (259094)
christopher.ghio@dinsmore.com
2  CHRISTOPHER CELENTINO (131688)
christopher.celentino@dinsmore.com
3  YOSINA M. LISSEBECK (201654)
yosina.lissebeck@dinsmore.com
4  DINSMORE & SHOHL LLP
655 West Broadway, Suite 800
5  San Diego, California 92101
Tele: 619.400.0500
6  Fax: 619.400.0501
7
8  Sarah S. Mattingly (Ky. Bar 94257)
sarah.mattingly@dinsmore.com
9  DINSMORE & SHOHL, LLP
101 S. Fifth Street, Suite 2500
10 Louisville, Kentucky 40202
Tele: 859-425-1096
11 Fax: 502-585-2207
12 (Admitted pro hac vice)
13 Special Counsel to Richard A. Marshack

> **FILED & ENTERED**
>
> **JUN 03 2024**
>
> **CLERK U.S. BANKRUPTCY COURT**
> **Central District of California**
> **BY mccall     DEPUTY CLERK**

14                **UNITED STATES BANKRUPTCY COURT**

15         **CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION**

16 In Re                                  Case No: 23-bk-10571-SC

17                                        Chapter 11

18
   The Litigation Practice Group P.C.,     **ORDER GRANTING MOTION FOR**
19                                          **ENTRY OF PROTECTIVE ORDER AND**
                    Debtor(s),             **THE PROTECTIVE ORDER**
20

21                                         Date:   May 23, 2024
22                                         Time:   1:30 p.m.
                                           Judge:  Hon. Scott C. Clarkson
23                                         Place:  Courtroom 5C (via Zoom)[1]
                                                   411 West Fourth Street
24                                                 Santa Ana, CA 92701
25

26

27 ─────────────────────

28 [1] Video and audio connection information for each hearing will be provided on Judge Clarkson's
   publicly posted hearing calendar, which may be viewed online at:
   http://ecf-ciao.cacb.uscourts.gov/CiaoPosted/?jid=SC.

The Court has read and considered the Notice of Motion and Motion for Entry of Protective Order (the "Motion") filed by Richard A. Marshack, in his capacity as the Chapter 11 Trustee (the "Trustee") of the Bankruptcy Estate ("Estate") of The Litigation Practice Group P.C., on May 2, 2024, pursuant to Federal Rule of Bankruptcy Procedure 7026 and Federal Rule of Civil Procedure 26(c)(1), as Dk. No. 1164 ("Motion"), and has found good cause to grant the Motion.

IT IS HEREBY ORDERED that:

1.  The Motion is granted;

2.  The below Protective Order shall apply to any contested matter arising in the main bankruptcy case and in all adversary proceedings filed by or against Trustee, present and future; and

3.  Govern the discovery conducted therein.

**PROTECTIVE ORDER**

**1.  DEFINITIONS**

1.1  "Confidential Information" as used in this Protective Order shall mean documents and other information (regardless of how generated, stored or maintained) that a Party or non-party reasonably believes to contain or reflect non-public financial or business information, bank records, financial records, such as social security numbers, non-public financial or personal information of a Party or non-party, account numbers, sensitive digital information and identifiers, information subject to confidentiality agreements or provisions other than this Protective Order, and other non-public research, development, or commercial information that derives value or avoids injury by virtue of not being known to the public.

1.2  This "Action" is defined and hereby means any contested matter arising in the main bankruptcy case and in all adversary proceedings filed by or against Trustee, present and future.

1.3  "Designating Party" means a Party or non-party that designates Confidential Information during the Action.

1.4  "Receiving Party" means a Party that receives Confidential Information during the Action.

2

1.5     "Party" or "Parties" means person or entity subject to this Protective Order.

**2.      SCOPE OF THIS PROTECTIVE ORDER**

2.1     Unless otherwise ordered, this Protective Order shall govern certain documents and other products of discovery obtained in the Action from the Parties there to, and from third parties. As well as certain information copied or derived therefrom, excerpts, summaries or compilations thereof, including, but not limited to, documents voluntarily exchanged as part of early settlement discussions, documents produced pursuant to initial disclosures, requests authorized by the Federal Rules of Civil Procedure made applicable herein by the Federal Rules of Bankruptcy Procedure, answers to interrogatories, deposition transcripts, responses to requests for production, responses to requests for admission, subpoenas, affidavits, declarations, expert reports, and other such material and information as may be produced during the course of the Action and designated as Confidential Information.

**3.      DESIGNATION OF CONFIDENTIAL INFORMATION**

3.1     This Protective Order shall govern the production and handling of any Confidential Information in this Action. Any Party or non-party who produces Confidential Information in this Action may designate it as "Confidential" or "Attorneys' Eyes Only" consistent with the terms of this Protective Order. Whenever possible, the Designating Party must designate only those portions of a document, written discovery responses, deposition, transcript, or other material that contain the Confidential Information and refrain from designating entire documents. Regardless of any designations made hereunder, the Designating Party is not otherwise restricted from use or disclosure of its Confidential Information outside of this Action or for any business purposes. In addition, any Party may move to modify or seek other relief from any of the terms of this Protective Order if it has first tried in writing and in good faith to resolve its needs or disputes with the other Parties or Party as the case may be under the terms of this Protective Order. Further, nothing in this Protective Order shall prevent a Party from redacting documents consistent with the Federal Rules of Civil Procedure and utilizing the documents as needed through-out the Action.

3.2     <u>Application to Non-Parties:</u> Before a non-party is given copies of documents or materials designated as Confidential Information or Attorneys' Eyes Only as permitted hereunder, it

must first sign an acknowledgment to be bound to these terms that is attached hereto as <u>Exhibit A</u>; if it fails to do so, the Parties to this Action must resolve any such dispute before making disclosure of designated information as permitted hereunder to the non-party. If a non-party wishes to make designations hereunder, it must first sign attached <u>Exhibit A.</u>

3.3    <u>Timing and Provisional Protection:</u> Designations of Confidential Information may be made at any time. To avoid potential waiver of protection hereunder, the Designating Party should designate documents or materials containing Confidential Information at the time of production or disclosure, including on the record during the taking of any deposition. Deposition testimony will be deemed provisionally protected for a period of thirty (30) days after the transcript is released to the Parties by the court reporter, although the Parties may agree at any time to different timelines of provisional protection of information as Confidential or Attorneys' Eyes Only as part of one or more specific depositions. To retain any designations beyond the provisional period, a Designating Party must designate specific pages and lines of deposition testimony before the provisional period has expired. Such designations must be made in writing so that all counsel and court reporters may append the designation to all copies of the transcripts.

3.4    <u>Manner of Designation:</u> Confidential Information may be designated hereunder in any reasonable manner or method that notifies the Receiving Party of the designation level and identifies with specificity the information to which the designation applies. If made verbally, the Designating Party must promptly confirm the designation in writing. Whenever possible, the Designating Party should stamp, affix, or embed a legend of "CONFIDENTIAL" or "ATTORNEYS' EYES ONLY" on each designated page of the document or electronic image that contains Confidential Information.

**4.    CHALLENGES TO DESIGNATED INFORMATION**

4.1    In the event that a Receiving Party disagrees at any time with any designation(s) made by the Designating Party, the Receiving Party must first try to resolve such challenge in good faith on an informal basis with the Designating Party. The Receiving Party must provide written notice of the challenge and the grounds therefor to the Designating Party, who must respond in writing to the challenge within fifteen (15) days. At all times, the Designating Party carries the burden of establishing the propriety of the designation and protection level. Unless and until the challenge is

4

resolved by the Parties or ruled upon by the Court, the designated information shall remain protected under this Protective Order. The failure of any Receiving Party to challenge a designation does not constitute a concession that the designation is proper or an admission that the designated information is otherwise competent, relevant, or material.

**5.    LIMITED ACCESS/USE OF PROTECTED INFORMATION**

5.1    <u>Restricted Use:</u> Information that is produced or exchanged in the course of the Action and designated under this Protective Order may be used for preparation for trial and preparation for any appeal of any and all matters in the Action, as well as related settlement negotiations, and for no other purpose, without the written consent of the Designating Party. No Confidential Information may be disclosed to any person except in accordance with the terms of this Protective Order, unless the parties are co-counsel or have entered into joint defense agreements. All persons in possession of Confidential Information agree to exercise reasonable care with regard to the custody, use, or storage of such information to ensure that its confidentiality is maintained. This obligation includes, but is not limited to, the Receiving Party providing to the Designating Party prompt notice of the receipt of any subpoena that seeks production or disclosure of any designated information and consulting with the Designating Party before responding to the subpoena. Any use or disclosure of Confidential or Attorneys' Eyes Only information in violation of the terms of this Protective Order may subject the disclosing person or party to sanctions.

5.2    <u>Access to "Confidential" Information:</u> The Party(ies) and all persons subject to this Protective Order agree that information designated as "CONFIDENTIAL" may only be accessed or reviewed by the following:

a)    The Court, its personnel, and court reporters;

b)    Counsel of record, or co-counsel for any Party, or other party that has entered into a joint defense agreement in the Action and their employees who assist counsel of record, or co-counsel in the Action and are informed of the duties and obligations imposed hereunder;

c)    The Parties, including their clients, agents and employees who are assisting or have reason to know of the Action;

/ / /

5

d)      Experts or consultants employed by the Parties or their counsel, or co-counsel, for purposes of an Action, so long as each such expert or consultant has signed attached <u>Exhibit A;</u> and

e)      Other witnesses or persons with the Designating Party's consent or by court order.

5.3      <u>Access to "Attorneys' Eyes Only" Designations:</u> The Parties and all persons subject to this Protective Order agree that information designated as "ATTORNEYS' EYES ONLY" may only be accessed or reviewed by the following:

a)      The Court, its personnel, and court reporters;

b)      Counsel of record, or co-counsel for any Party, or other party that has entered into a joint defense agreement in the Action and their employees who assist counsel of record in the Action and are informed of the duties hereunder;

c)      In-house counsel for any Party in the Action and Richard A. Marshack, as Chapter 11 Trustee of The Litigation Practice Group P.C. who is informed of the duties and obligations imposed hereunder;

d)      Experts or consultants employed by the Parties or their counsel, or co-counsel for purposes of the Action,  and so long as each such expert or consultant has signed attached <u>Exhibit A;</u> and

e)      Other witnesses or persons to whom the Designating Party agrees in advance of disclosure or by court order.

5.4      <u>Non-Waiver Effect of Designations:</u> Neither the taking of, nor the failure to take, any action to enforce the provisions of this Protective Order, nor the failure to object to any designation, will constitute a waiver of any Party(ies)'s claim or defense in the Action or any other action or proceeding, including, but not limited to, a claim or defense that any designated information is or is not Confidential, is or is not entitled to particular protection, or embodies or does not embody information protectable by law.

5.5      <u>In-Court Use of Designated Information:</u> If information designated under this Protective Order will or may be offered in evidence at a hearing or trial related to any matter in the Action, then the offering party must give advance notice to the party or non-party that designated prior to offering the information so that any use or disclosure may be addressed in accordance with

6

the Court's case-management or other pre-trial order, or by a motion *in limine.* Nothing in this Protective Order shall be construed as a waiver by a Party of any objections that may be raised as to the admissibility at trial of any evidentiary materials.

**6.    CLAW-BACK REQUESTS**

6.1    <u>Failure to Make Designation:</u>  If, at any time, a Party or non-party discovers that it produced or disclosed Confidential Information without designation, it may promptly notify the Receiving Party and identify with particularity the Confidential Information to be designated and the level of designation (the claw-back notification). The Receiving Party may then request substitute production of the newly-designated information. Within thirty (30) days of receiving the claw-back notification, the Receiving Party must: (1) certify to the Designating Party it has appropriately marked or, if substitute production has been requested, destroyed all unmarked copies that it received, made, and/or distributed; and (2) if it was practicably unable to mark or destroy any information because disclosures occurred while the Receiving Party was under no duty of confidentiality under the terms of this Protective Order regarding that information, the Receiving Party must reasonably provide as much information as practicable to aid the Designating Party in protecting the information, consistently with the Receiving Party's attorney-client, work-product, and/or trial-preparation privileges.

6.2    <u>Inadvertent Production of Privileged Information:</u> If, at any time, a Party discovers that it produced information that it reasonably believes is subject to protection under the attorney/client, work-product, or trial-preparation privileges, then it must promptly notify each Receiving Party of the claim for protection, the basis for it, amend its privilege log accordingly, and comply with Fed. R. Civ. P. 26(b)(5). Whenever possible, the producing party must produce substitute information that redacts the information subject to the claimed protection. The Receiving Party must thereupon comply with Fed. R. Civ. P. 26(b)(5)(B) as to the information subject to the claimed protection.

/ / /

/ / /

/ / /

**7.    DURATION/CONTINUED RESTRICTIONS**

7.1    <u>Handling of Designated Information Upon Conclusion of the Main Bankruptcy Case:</u>
Upon conclusion of the Main Bankruptcy Case, by way of dismissal or closing of the case, the
Designating Party(ies) is/are responsible for ensuring that any Party or person to whom the
Designating Party shared or disclosed designated information in any of the matters under the Action
returns or destroys all of its copies, regardless of the medium in which it was stored. No witness or
Party may retain designated information that it received from any other Party or non-party under this
Protective Order; only counsel of record, or co-counsel, are the authorized agents who may retain one
copy for their respective legal files, and who must also describe to the Designating Party the extra
steps taken to protect its legal file containing paper and/or electronic copies of the designated
information so that it is not accessed, used, or disclosed inconsistently with the obligations under this
Protective Order. This provision does not apply to the Court or Court staff. Moreover, this provision
does not apply to Trustee, who may retain and use – consistent with this Order – Confidential
Information received in any Action during the entirety of the Bankruptcy.

7.2    <u>Continued Restrictions Under this Protective Order:</u> The restrictions on disclosure and
use of Confidential Information shall survive the conclusion of the Bankruptcy case and any matter
in the Action.

**8.    PRIVILEGED OR PROTECTED INFORMATION**

8.1    Nothing in this Protective Order shall require disclosure of information that is
protected by the attorney-client privilege, the work-product protection, or any other legally cognizable
privilege (a "Privilege or Protection").  If information subject to a claim of Privilege or Protection is
inadvertently produced, pursuant to Federal Rule of Evidence 502(d) such production shall not
constitute a waiver of, or estoppel as to, any claim of Privilege or Protection for such information or
any other information that may be protected from disclosure by a Privilege or Protection in any
proceeding.

8.2    If a Party receives a document that appears to be subject to a Privilege or Protection,
then it shall refrain from examining the document any more than is essential to ascertain if it is
privileged or protected and shall promptly notify the producing Party in writing that the receiving

8

Party possesses material that appears to be subject to a Privilege or Protection. The producing Party shall have seven (7) days after receiving such notice to assert a Privilege or Protection over the identified material. If the producing Party does not assert a claim of Privilege or Protection within the seven (7)-day period, the material in question shall be deemed not privileged or protected.

8.3     If a producing Party has produced a document subject to a claim of Privilege or Protection, upon written request by the producing Party, the document for which a claim of Privilege or Protection is made shall be sequestered or destroyed to the extent reasonably practicable, and the receiving Party shall not use the document for any purpose other than in connection with analyzing or disputing a claim of Privilege or Protection or in connection with a motion to compel the production of the document.

8.4     The receiving Party sequestering or destroying such material may then move the Court for an order compelling production of the material. The applicable producing Party bears the burden of establishing the applicable Privilege or Protection of any clawed-back document or information as and to the same extent that it would have borne such burden had it not produced the document or information.  Nothing in this Protective Order shall limit the Court's right or any receiving Party's right to request an in camera review of any information subject to a claim of Privilege or Protection.

###

Date: June 3, 2024

Scott C. Clarkson
United States Bankruptcy Judge

Exhibit "1"
Page 36

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT "A"

1

1  Christopher B. Ghio (State Bar No. 259094)
   Christopher Celentino (State Bar No. 131688)
2  Yosina M. Lissebeck (State Bar No. 201654)
   **DINSMORE & SHOHL LLP**
3  655 West Broadway, Suite 800
   San Diego, CA 92101
4  Telephone:  619.400.0500
   Facsimile:  619.400.0501
5  christopher.ghio@dinsmore.com
   christopher.celentino@dinsmore.com
6  yosina.lissebeck@dinsmore.com

7  Sarah S. Mattingly (Ky. Bar 94257)
   DINSMORE & SHOHL, LLP
8  101 S. Fifth Street, Suite 2500
   Louisville, KY 40202
9  Telephone: 859-425-1096
   Facsimile: 502-585-2207
10 Sarah.mattingly@dinsmore.com
   (Admitted pro hac vice)

11

12 Special Counsel to Richard A. Marshack,
   Chapter 11 Trustee

13

14

15                **UNITED STATES BANKRUPTCY COURT**

16                **CENTRAL DISTRICT OF CALIFORNIA**

17

18 In Re                          | Case No. 8:23-BK-10571-SC

19                                   Chapter 11

20 The Litigation Practice Group P.C.,  | **EXHIBIT A TO STIPULATED**
                                          **ORDER**
   Debtor(s),
21                                   Date:   May 23, 2024
22                                   Time:   1:30 p.m.
23                                   Judge:  Hon. Scott C. Clarkson
                                     Place:  Courtroom 5C[1] - Via Zoom
24                                           411 W. Fourth Street
                                             Santa Ana, CA  92701
25

26

27 ───────────────────

28 [1] Video and audio connection information for each hearing will be provided on Judge Clarkson's
    publicly posted hearing calendar, which may be viewed online at:
    http://ecf-ciao.cacb.uscourts.gov/CiaoPosted/?jid=SC.

                                    1

1  This is to certify that:

2      (a)    I am being given access to Confidential Information pursuant to the

3  Stipulated Protective Order that was entered into the main bankruptcy case for

4  Litigation Practice Group, but which is binding and controlling as set forth by the

5  Court's Order on any and all contested matters and  any and all litigation commenced

6  by Trustee;

7      (b)    I have read the Stipulated Protective Order; and

8      (c)    I agree to be bound by the terms and conditions thereof, including,

9  without limitation, to the obligations regarding the use, non-disclosure and return of

10  such Confidential Information. I further agree that in addition to being contractually

11  bound by the Stipulated Protective Order, I am subject to the jurisdiction of the above

12  reference Court for any violation thereof.

13

14  Date: _____

15

16                                    _____

17                                              Signature

18

19                                    _____

20                                              Printed Name

21

22

23

24

25

26

27

28

# Exhibit 2.

In re: The Litigation Practice Group PC
Disbursement Details by Payee
4 Years Pre-Petition (03/20/2019 - 03/20/2023)

Reliance Assistance Group

**GROBSTEIN TEEPLE**

| Bank Name | Account Name | Account Number | Statement Date | Transaction Date | Check Number | Debit/Charge | Memo |
|---|---|---|---|---|---|---|---|
| Bank of America | Prime Logix LLC |  | 10/31/2022 | 10/14/2022 |  | 95.44 | WIRE TYPE:WIRE OUT DATE221 014 TIME:1 134 ET TRN:20221 0140332958 SERVICE REF009029 BNF:RELIANCE ASSISTANCE GROUP ID:281 3251 23 BNF BK:JPMORGAN CHASE BANK, NA ID322271 627 PMT DET:40891 1118 |
| Bank of America | Prime Logix LLC |  | 10/31/2022 | 10/21/2022 |  | 626.09 | WIRE TYPE:WIRE OUT DATE:221021 TIME:1229 ET TRN:2022102100353038 SERVICE REF011374 BNF:RELIANCE ASSISTANCE GROUP ID:281325123 BNF BK:JPMORGAN CHASE BANK, NA ID322271 627 PMT DET:40981 7052 |
| Bank of America | Prime Logix LLC |  | 10/31/2022 | 10/21/2022 |  | 210.53 | WIRE TYPE:WIRE OUT DATE221 028 TIME1 333 ET TRN:20221 02800419736 SERVICE REF013338 BNF:RELIANCE ASSISTANCE GROUP ID:281325123 BNF BK:JPMORGAN CHASE BANK, NA ID322271 627 PMT DET:41 0777922 |
| Bank of America | Prime Logix LLC |  | 10/31/2022 | 10/28/2022 |  | 1,435.08 | WIRE TYPE:WIRE OUT DATE221 104 TIME1 439 ET TRN:20221 1040040710 SERVICE REF012818 BNF:RELIANCE ASSISTANCE GROUP ID:281325123 BNF BK:JPMORGAN CHASE BANK, NA ID322271 627 PMT DET:41 194 9844 |
| Bank of America | Prime Logix LLC |  | 11/30/2022 | 11/4/2022 |  | 22,500.00 | WIRE TYPE:WIRE OUT DATE221 109 TIME1 356 ET TRN:20221 10900373381 SERVICE REF011529 BNF:RELIANCE ASSISTANCE GROUP ID:281325123 BNF BK:PMORGAN CHASE BANK, NA ID322271 627 PMT DET:41252 3730 |
| Bank of America | Prime Logix LLC |  | 11/30/2022 | 11/9/2022 |  | 461.02 | WIRE TYPE:WIRE OUT DATE221 110 TIME1 140 ET TRN:20221 11000331231 SERVICE REF008928 BNF:RELIANCE ASSISTANCE GROUP ID:281 3251 23 BNF BK:JPMORGAN CHASE BANK, NA ID322271 627 PMT DET:41270 3230 |
| Bank of America | Prime Logix LLC |  | 11/30/2022 | 11/10/2022 |  | 869.10 | WIRE TYPE:WIRE OUT DATE 221 118 TIME:1 350 ET TRN:20221 11800364 SERVICE REF01 2627 BNF:RELIANCE ASSISTANCE GROUP ID:281325123 BNF BK:JPMORGAN CHASE BANK, NA ID322271 627 PMT DET:41 375 2620 |
| Bank of America | Prime Logix LLC |  | 11/30/2022 | 11/18/2022 |  | 669.02 | WIRE TYPE:WIRE OUT DATE 221 122 TIME:1 454 ET TRN:20221 12200411796 SERVICE REF01 2880 BNF:RELIANCE ASSISTANCE GROUP ID:281325123 BNF BK:JPMORGAN CHASE BANK, NA ID322271 627 PMT DET:41415 6136 |
| Bank of America | Prime Logix LLC |  | 11/30/2022 | 11/22/2022 |  | 2,522.86 | WIRE TYPE:WIRE OUT DATE:221 202 TIME:1 152 ET TRN:20221 20200370056 SERVICE REF009403 BNF:RELIANCE ASSISTANCE GROUP ID:281 3251 23 BNF BK:JPMORGAN CHASE BANK, NA ID322271 627 PMT DET:41 569 0492 |
| Bank of America | Prime Logix LLC |  | 12/31/2022 | 12/2/2022 |  | 13,500.00 | WIRE TYPE:WIRE OUT DATE221205 TIME16 1O ET TRN:2022120500523664 SERVICE REF014794 BNF:RELIANCE ASSISTANCE GROUP ID:281 3251 23 BNF BK:JPMORGAN CHASE BANK, NA ID322271 627 PMT DET:41 602 8642 FILE PURCHASE, 9 FILES |
| Bank of America | Prime Logix LLC |  | 12/31/2022 | 12/5/2022 |  | 1,811.81 | WIRE TYPE:WIRE OUT DATE221 209 TIME1 141 ET TRN:20221 20900326720 SERVICE REF008621 BNF:RELIANCE ASSISTANCE GROUP ID:281 3251 23 BNF BK:JPMORGAN CHASE BANK, NA ID322271 627 PMT DET:41 666 2086 |
| Bank of America | Prime Logix LLC |  | 12/31/2022 | 12/9/2022 |  | 1,326.47 | WIRE TYPE:WIRE OUT DATE221 223 TIME1O46 ET TRN:2022122300383555 SERVICE REF008907 BNF:RELIANCE ASSISTANCE GROUP ID:281325123 BNF BK:JPMORGAN CHASE BANK, NA ID322271 627 PMT DET:41856 7422 |
| Bank of America | Prime Logix LLC |  | 12/31/2022 | 12/23/2022 |  | 2,716.77 | WIRE TYPE:WIRE OUT DATE221 229 TIME1 223 ET TRN:20221 22900394976 SERVICE REF01 2446 BNF:RELIANCE ASSISTANCE GROUP ID:281325123 BNF BK:JPMORGAN CHASE BANK, NA ID322271 627 PMT DET:41 922 5230 |
| Bank of America | Prime Logix LLC |  | 12/31/2022 | 12/29/2022 |  | 10,090.93 | WIRE TYPE:WIRE OUT DATE2301 13 TIME1536 ET TRN:2023O1 1300462356 SERVICE REF-O1 6563 BNF:RELIANCE ASSISTANCE GROUP ID:281325123 BNF BK:JPMORGAN CHASE BANK, NA ID:322271 627 PMT DET:42148 6578 |
| Bank of America | Prime Logix LLC |  | 1/31/2023 | 1/13/2023 |  | 9,085.93 | WIRE TYPE:WIRE OUT DATE23012O TIME1435 ET TRN:2023012000388864 SERVICE REF01 3373 BNF:RELIANCE ASSISTANCE GROUP ID:281325123 BNF BK:JPMORGAN CHASE BANK, NA ID322271 627 PMT DET:42230 0114 |
| Bank of America | Prime Logix LLC |  | 1/31/2023 | 1/20/2023 |  | 2,097.93 | WIRE TYPE:WIRE OUT DATE23012O TIME1351 ET TRN:2023012700386809 SERVICE REF-O1 2647 BNF:RELIANCE ASSISTANCE GROUP ID:281325123 BNF BK:JPMORGAN CHASE BANK, NA ID322271 627 PMT DET:42320 1136 JAN 16 TO JAN 22 |
| Bank of America | Prime Logix LLC |  | 1/31/2023 | 1/27/2023 |  | 3,897.31 | WIRE TYPE:WIRE OUT DATE230203 TIME1 200 ET TRN2023020300365415 SERVICE REF009673 BNF:RELIANCE ASSISTANCE GROUP ID:281325123 BNF BK:JPMORGAN CHASE BANK, NA ID322271 627 PMT DET:42434 8616 JAN 23 TO JAN 29 |
| Bank of America | Litigation Practice Group PC |  | 2/28/2023 | 2/7/2023 |  | 182,500.00 | TRANSFER LITIGATION PRACTICE - Reliance Assistance Confirmation#10381891112 |
| Bank of America | Prime Logix LLC |  | 2/28/2023 | 2/10/2023 |  | 3,763.10 | WIRE TYPE:WIRE OUT DATE23021 O TIME1 444 ET TRN:2023021 0004077 16 SERVICE REF014321 BNF:RELIANCE ASSISTANCE GROUP ID:281325123 BNF BK:JPMORGAN CHASE BANK, NA ID322271627 PMT DET:42534148 JAN 30TO FEBO |

**GROBSTEIN TEEPLE**

In re: The Litigation Practice Group PC
Disbursement Details by Payee
4 Years Pre-Petition (03/20/2019 - 03/20/2023)

Reliance Assistance Group

| Bank Name | Account Name | Account Number | Statement Date | Transaction Date | Check Number | Debit/Charge | Memo |
|---|---|---|---|---|---|---|---|
| Bank of America | Litigation Practice Group PC | ■ | 2/28/2023 | 2/10/2023 | | 338.76 | WIRE TYPE:WIRE OUT DATE230210TIME:0759 ETTRN2023020900487233 SERVICE REF317664 BNF:RELIANCE IDQB1 3251 23 BNF BK/PMORGAN CHASE BA NK, N. ID0002 PMT DET:97/RWYTG4 POP Other |
| Wells Fargo | Maverick Management Group LLC | | 3/31/2023 | 3/17/2023 | | 15,352.00 | WT Fed#08070 4morgan Chase Ban /Ftr/Bnf= Reliance Assistance Group Inc Sf# 0000960076380725 Trn#2303171717805 Rfb# |
| | | | | | | **275,870.15** | |

DRAFT FORM - SUBJECT TO CHANGE

2 of 2

# Exhibit 3.



*Legal Counsel.*

DINSMORE & SHOHL LLP
100 West Main Street, Suite 900
Lexington, Kentucky 40507
www.dinsmore.com

Sara A. Johnston
(859) 425-1021 (direct)  (859) 425 1099 (fax)
Sara.johnston@dinsmore.com

November 20, 2024

Reliance Assistance Group Inc.
Attn: John Goldberg
14351 Myford Rd, Ste 200
Tustin, CA 92780-7038

Reliance Assistance Group Inc.
Attn: John Goldberg
202 Fashion Ln, Ste 226
Tustin, CA 92780-3319

Reliance Assistance Group Inc.
Attn: John Goldberg
2522 Chambers Rd, Ste 100
Tustin, CA 92780-6962

Reliance Assistance Group Inc.
Attn: John Goldberg
535 E. 1st St., #202
Tustin, CA 92780-3312

Re:   *In re The Litigation Practice Group P.C.*
U.S. Bankruptcy Court, Central District of California, Case No. 8:23-bk-10571-SC

Dear Sir/Madam:

This firm represents Richard A. Marshack, solely in his capacity as Chapter 11 Trustee ("Trustee") for the bankruptcy estate of The Litigation Practice Group P.C. ("Debtor") in the above-referenced bankruptcy case. Pursuant to 11 U.S.C. § 1107 and his appointment as Trustee, the Trustee has the obligation to investigate and pursue claims, including fraudulent transfers, preferential transfers, and post-petition transfers.

After a review of the Debtor's books and records, the Trustee believes that he may have claims against Reliance Assistance Group Inc. ("Reliance") to avoid and recover post-petition transfers, preferential transfers, and fraudulent transfers. This letter is written in an attempt to investigate such claims which include substantially more claims than those mentioned in our September 15, 2023 correspondence.

Section 547 of the Bankruptcy Code permits a trustee or debtor-in-possession to avoid certain payments made to creditors within the 90-day period preceding the filing of a bankruptcy case. Sections 544 and 548 of the Bankruptcy Code permit a trustee or debtor-in-possession to avoid certain payments made to creditors within the two-year period preceding the filing of a bankruptcy case. Sections 3439.04 and 3439.05 of the

Exhibit "3"
Page 44

California Civil Code also permit a trustee to avoid certain payments made to creditors within the applicable reach back period. Section 549 of the Bankruptcy Code permits a trustee or debtor-in-possession to avoid certain transfers made after the filing of a bankruptcy case known as post-petition transfers. Our preliminary investigation has identified transfers from the Debtor to Reliance both within the reach back period for both preferential transfers and fraudulent transfers as well as post-petition. These transfers are listed on the attached summaries below showing the date and amount, according to the Debtor's books and records, of each transfer or other payment to you. The payments referenced on the summaries total $781,291.64.

It appears that ten of these transfers, totaling $231,169.20, may constitute preferential transfers, which can be avoided and recovered by the Trustee pursuant to 11 U.S.C. § 547(b), and that twenty-one (21) of these transfers, totaling $275,870.15, may constitute fraudulent transfers, which can be avoided and recovered by the Trustee pursuant to 11 U.S.C. §§ 544 and 548 and Cal. Civ. Code. §§ 3439.04 and 3439.05, and that fourteen (14) of these transfers, totaling $505,421.49, may constitute improper post-petition transfers, which can be avoided and recovered by the Trustee pursuant to 11 U.S.C. § 549(a). In sum, and depending on your response to this letter, the Trustee may file suit in the bankruptcy court to avoid and recover these transfers. The Trustee is also authorized to pursue pre and post judgment interest, as well as punitive damages.

As to the preferential transfers, the Trustee has been unable to determine if any viable defenses exist that would reduce or eliminate your liability for such claims. If you engaged with the Debtor in the "ordinary course of business," or if you believe that you provided "new value" to the Debtor subsequent to each transfer, as those terms are defined in 11 U.S.C. § 547(a)(2) and (c)(2), then please provide information for the relevant period to substantiate the applicable defenses.

As to the fraudulent transfers, the Trustee has been unable to determine why such transfers were made to you and what was provided to the Debtor in exchange for such transfers. Please respond to this letter, attaching any evidence you have related to these transfers, including, but not limited to, contracts, agreements, subscriptions, invoices, and any other documentation showing the date, terms, and amounts for the transfers received and any documents evidencing shipment dates as to goods and services provided by you to the Debtor. Documents showing the date of receipt of the Debtor's payment and the amount, deposit date, and any proof of deposit for any or all of the transfers will be helpful in determining what value the Debtor received in return for payments made to you.

As to the post-petition transfers, the Trustee has been unable to determine why such transfers were made to Reliance. Please respond to this letter, attaching any evidence you have related to these transfers, including, but not limited to, contracts, agreements, subscriptions, invoices, and any other documentation showing the date, terms, and amounts for the transfers received and any documents evidencing anything of value

2

provided by you to the Debtor. Documents showing the course of dealing between you and the Debtor will be helpful in determining the permissibility of the transfers.

Additionally, the proof of claim number 2499-1 against the Debtor, that claim may be disallowed pursuant to Section 502(d) of the Bankruptcy Code for failure to return an avoidable transfer. This means that if the preference claims against you are not resolved, then you may not receive a distribution from the Debtor's bankruptcy estate. The Trustee reserves the right to object to any proof of claim that you have filed or may file in the debtors' bankruptcy cases.

Please provide the requested documents and information to us on or before October 8, 2024, so that we can assess whether any claim or defenses exists.

Finally, to the extent not already received, this letter serves as formal notice for the preservation of all documents, data, and evidence related to the above matter as litigation is reasonably anticipated in this matter. Therefore, you are under a **legal obligation to preserve** all potentially relevant information. To comply with your preservation obligations, you must take immediate steps to preserve all documents and electronically stored information ("ESI") in your possession custody, or control that relate to, or may lead to the discovery of admissible evidence regarding this matter. Please ensure that all automated deletion or data destruction procedures, including recycling of backup tapes, are suspended immediately to prevent the loss of any potentially relevant information. Failure to preserve this information could result in severe legal consequences including sanctions or other penalties by the court.

If you have any questions, we are happy to discuss this matter with you or your counsel.

Sincerely,

Sara A. Johnston

Enclosures

3

### Fraudulent Transfers

| Transaction Date | Amount |
|---|---|
| 10/14/2022 | $95.44 |
| 10/21/2022 | $626.09 |
| 10/28/2022 | $210.53 |
| 11/4/2022 | $22,500.00 |
| 11/9/2022 | $461.02 |
| 11/18/2022 | $869.10 |
| 11/22/2022 | $669.02 |
| 12/2/2022 | $2,522.86 |
| 12/5/2022 | $13,500.00 |
| 12/9/2022 | $1,811.81 |
| 12/23/2022 | $1,326.47 |
| 12/29/2022 | $2,716.77 |
| 1/13/2023 | $10,090.93 |
| 1/20/2023 | $9,085.93 |
| 1/27/2023 | $2,097.93 |
| 2/3/2023 | $3,897.31 |
| 2/7/2023 | $182,500.00 |
| 2/10/2023 | $3,763.10 |
| 2/10/2023 | $388.76 |
| 3/17/2023 | $15,352.00 |
| **Total** | **$275,870.15** |

### Preference Transfers

| Transaction Date | Amount |
|---|---|
| 12/23/2022 | $1,326.47 |
| 12/29/2022 | $2,716.77 |
| 1/13/2023 | $10,090.93 |
| 1/20/2023 | $9,085.93 |
| 1/27/2023 | $2,097.93 |
| 2/3/2023 | $3,897.31 |
| 2/7/2023 | $182,500.00 |
| 2/10/2023 | $3,763.10 |
| 2/10/2023 | $388.76 |
| 3/17/2023 | $15,352.00 |
| **Total** | **$231,169.20** |

4

### Post Petition Transfers

| Transaction Date | Amount |
|---|---|
| 3/24/2023 | $6,819.25 |
| 4/4/2023 | $95,000.00 |
| 4/7/2023 | $8,978.66 |
| 4/12/2023 | $50,000.00 |
| 4/27/2023 | $27,806.00 |
| 4/282023 | $50,000.00 |
| 5/52023 | $50,000.00 |
| 5/9/2023 | $11,266.29 |
| 5/11/2023 | $17,119.09 |
| 5/18/2023 | $50,000.00 |
| 5/18/2023 | $17,540.73 |
| 5/25/2023 | $15,891.47 |
| 5/30/2023 | $55,000.00 |
| 6/2/2023 | $50,00.00 |
| **Total** | **$505,421.49** |

5

# Exhibit 4.

HOHL LLP

n Street ∧ Suite 900
Y 40507

re

LOUISVILLE KY 400

25 NOV 2024PM 3 L

quadient

FIRST-CLASS MAIL
IMI
$000.69 ⁰
11/25/2024 ZIP 40507
043M31253925

US POSTAGE

Reliance Assistance Group Inc.
Attn: John Goldberg
535 E. 1st St.. #202
Tustin, CA          NIXIE          911    DE 1          0012/06/24

RETURN TO SENDER
ATTEMPTED - NOT KNOWN
UNABLE TO FORWARD

F W∧NK        BC: 40507183925    *1670-03617-25-
9378563839

Exhibit "4"

50



*Legal Counsel.*

DINSMORE & SHOHL LLP
100 West Main Street, Suite 900
Lexington, Kentucky 40507
www.dinsmore.com

Sara A. Johnston
(859) 425-1021 (direct)  (859) 425 1099 (fax)
Sara.johnston@dinsmore.com

November 25, 2024

Reliance Assistance Group Inc.          Reliance Assistance Group Inc.
Attn: John Goldberg                     Attn: John Goldberg
14351 Myford Rd, Ste 200                202 Fashion Ln, Ste 226
Tustin, CA 92780-7038                   Tustin, CA 92780-3319

Reliance Assistance Group Inc.          Reliance Assistance Group Inc.
Attn: John Goldberg                     Attn: John Goldberg
2522 Chambers Rd, Ste 100               535 E. 1st St., #202
Tustin, CA 92780-6962                   Tustin, CA 92780-3312

Re:   *In re The Litigation Practice Group P.C.*
      U.S. Bankruptcy Court, Central District of California, Case No. 8:23-bk-
      10571-SC

Dear Sir/Madam:

This firm represents Richard A. Marshack, solely in his capacity as Chapter 11 Trustee ("Trustee") for the bankruptcy estate of The Litigation Practice Group P.C. ("Debtor") in the above-referenced bankruptcy case. Pursuant to 11 U.S.C. § 1107 and his appointment as Trustee, the Trustee has the obligation to investigate and pursue claims, including fraudulent transfers, preferential transfers, and post-petition transfers.

After a review of the Debtor's books and records, the Trustee believes that he may have claims against Reliance Assistance Group Inc. ("Reliance") to avoid and recover post-petition transfers, preferential transfers, and fraudulent transfers. This letter is written in an attempt to investigate such claims which include substantially more claims than those mentioned in our September 15, 2023 correspondence.

Section 547 of the Bankruptcy Code permits a trustee or debtor-in-possession to avoid certain payments made to creditors within the 90-day period preceding the filing of a bankruptcy case. Sections 544 and 548 of the Bankruptcy Code permit a trustee or debtor-in-possession to avoid certain payments made to creditors within the two-year period preceding the filing of a bankruptcy case. Sections 3439.04 and 3439.05 of the

California Civil Code also permit a trustee to avoid certain payments made to creditors within the applicable reach back period. Section 549 of the Bankruptcy Code permits a trustee or debtor-in-possession to avoid certain transfers made after the filing of a bankruptcy case known as post-petition transfers. Our preliminary investigation has identified transfers from the Debtor to Reliance both within the reach back period for both preferential transfers and fraudulent transfers as well as post-petition. These transfers are listed on the attached summaries below showing the date and amount, according to the Debtor's books and records, of each transfer or other payment to you. The payments referenced on the summaries total $781,291.64.

It appears that ten of these transfers, totaling $231,169.20, may constitute preferential transfers, which can be avoided and recovered by the Trustee pursuant to 11 U.S.C. § 547(b), and that twenty-one (21) of these transfers, totaling $275,870.15, may constitute fraudulent transfers, which can be avoided and recovered by the Trustee pursuant to 11 U.S.C. §§ 544 and 548 and Cal. Civ. Code. §§ 3439.04 and 3439.05, and that fourteen (14) of these transfers, totaling $505,421.49, may constitute improper post-petition transfers, which can be avoided and recovered by the Trustee pursuant to 11 U.S.C. § 549(a). In sum, and depending on your response to this letter, the Trustee may file suit in the bankruptcy court to avoid and recover these transfers. The Trustee is also authorized to pursue pre and post judgment interest, as well as punitive damages.

As to the preferential transfers, the Trustee has been unable to determine if any viable defenses exist that would reduce or eliminate your liability for such claims. If you engaged with the Debtor in the "ordinary course of business," or if you believe that you provided "new value" to the Debtor subsequent to each transfer, as those terms are defined in 11 U.S.C. § 547(a)(2) and (c)(2), then please provide information for the relevant period to substantiate the applicable defenses.

As to the fraudulent transfers, the Trustee has been unable to determine why such transfers were made to you and what was provided to the Debtor in exchange for such transfers. Please respond to this letter, attaching any evidence you have related to these transfers, including, but not limited to, contracts, agreements, subscriptions, invoices, and any other documentation showing the date, terms, and amounts for the transfers received and any documents evidencing shipment dates as to goods and services provided by you to the Debtor. Documents showing the date of receipt of the Debtor's payment and the amount, deposit date, and any proof of deposit for any or all of the transfers will be helpful in determining what value the Debtor received in return for payments made to you.

As to the post-petition transfers, the Trustee has been unable to determine why such transfers were made to Reliance. Please respond to this letter, attaching any evidence you have related to these transfers, including, but not limited to, contracts, agreements, subscriptions, invoices, and any other documentation showing the date, terms, and amounts for the transfers received and any documents evidencing anything of value

2

Exhibit "4"

provided by you to the Debtor. Documents showing the course of dealing between you and the Debtor will be helpful in determining the permissibility of the transfers.

Additionally, the proof of claim number 2499-1 against the Debtor, that claim may be disallowed pursuant to Section 502(d) of the Bankruptcy Code for failure to return an avoidable transfer. This means that if the preference claims against you are not resolved, then you may not receive a distribution from the Debtor's bankruptcy estate. The Trustee reserves the right to object to any proof of claim that you have filed or may file in the debtors' bankruptcy cases.

Please provide the requested documents and information to us on or before December 10, 2024, so that we can assess whether any claim or defenses exists.

Finally, to the extent not already received, this letter serves as formal notice for the preservation of all documents, data, and evidence related to the above matter as litigation is reasonably anticipated in this matter. Therefore, you are under a **legal obligation to preserve** all potentially relevant information. To comply with your preservation obligations, you must take immediate steps to preserve all documents and electronically stored information ("ESI") in your possession custody, or control that relate to, or may lead to the discovery of admissible evidence regarding this matter. Please ensure that all automated deletion or data destruction procedures, including recycling of backup tapes, are suspended immediately to prevent the loss of any potentially relevant information. Failure to preserve this information could result in severe legal consequences including sanctions or other penalties by the court.

If you have any questions, we are happy to discuss this matter with you or your counsel.

Sincerely,

Sara A. Johnston

Enclosures

3

### Fraudulent Transfers

| Transaction Date | Amount |
|---|---|
| 10/14/2022 | $95.44 |
| 10/21/2022 | $626.09 |
| 10/28/2022 | $210.53 |
| 11/4/2022 | $22,500.00 |
| 11/9/2022 | $461.02 |
| 11/18/2022 | $869.10 |
| 11/22/2022 | $669.02 |
| 12/2/2022 | $2,522.86 |
| 12/5/2022 | $13,500.00 |
| 12/9/2022 | $1,811.81 |
| 12/23/2022 | $1,326.47 |
| 12/29/2022 | $2,716.77 |
| 1/13/2023 | $10,090.93 |
| 1/20/2023 | $9,085.93 |
| 1/27/2023 | $2,097.93 |
| 2/3/2023 | $3,897.31 |
| 2/7/2023 | $182,500.00 |
| 2/10/2023 | $3,763.10 |
| 2/10/2023 | $388.76 |
| 3/17/2023 | $15,352.00 |
| **Total** | **$275,870.15** |

### Preference Transfers

| Transaction Date | Amount |
|---|---|
| 12/23/2022 | $1,326.47 |
| 12/29/2022 | $2,716.77 |
| 1/13/2023 | $10,090.93 |
| 1/20/2023 | $9,085.93 |
| 1/27/2023 | $2,097.93 |
| 2/3/2023 | $3,897.31 |
| 2/7/2023 | $182,500.00 |
| 2/10/2023 | $3,763.10 |
| 2/10/2023 | $388.76 |
| 3/17/2023 | $15,352.00 |
| **Total** | **$231,169.20** |

4

Exhibit "4"

54

## Post Petition Transfers

| Transaction Date | Amount |
|---|---|
| 3/24/2023 | $6,819.25 |
| 4/4/2023 | $95,000.00 |
| 4/7/2023 | $8,978.66 |
| 4/12/2023 | $50,000.00 |
| 4/27/2023 | $27,806.00 |
| 4/282023 | $50,000.00 |
| 5/52023 | $50,000.00 |
| 5/9/2023 | $11,266.29 |
| 5/11/2023 | $17,119.09 |
| 5/18/2023 | $50,000.00 |
| 5/18/2023 | $17,540.73 |
| 5/25/2023 | $15,891.47 |
| 5/30/2023 | $55,000.00 |
| 6/2/2023 | $50,00.00 |
| **Total** | **$505,421.49** |

5

# Exhibit 5.

**GROBSTEIN TEEPLE**

In re: The Litigation Practice Group PC
Disbursement Details by Payee
90 Days Pre-Petition (12/20/2022 - 03/20/2023)

Reliance Assistance Group Inc

| Bank Name | Account Name | Account Number | Statement Date | Transaction Date | Check Number | Debit/Charge | Memo |
|---|---|---|---|---|---|---|---|
| Bank of America | Prime Logix LLC | | 12/31/2022 | 12/23/2022 | | 1,326.47 | WIRETYPE:WIRE OUT DATE221223 TIME1046 ETTRN:2022122300383555 SERVICE REF008907 BNF-RELIANCE ASSISTANCE GROUP ID:281 325123 BNF BK:JPMORGAN CHASE BANK, NA ID322271 627 PMT DET:41856 7422 |
| Bank of America | Prime Logix LLC | | 12/31/2022 | 12/29/2022 | | 2,716.77 | WIRE TYPE:WIRE OUT DATE221 229 TIME1 223 ET TRN:2022122900394976 SERVICE REFO1 2446 BNF-RELIANCE ASSISTANCE GROUP ID:281325123 BNF BK:JPMORGAN CHASE BANK. NA ID:322271 627 PMT DET:41 922 5230 |
| Bank of America | Prime Logix LLC | | 1/31/2023 | 1/13/2023 | | 10,090.93 | WIRE TYPE:WIRE OUT DATE:2301 13 TIME:1536 ETTRN:2023013 1300462356 SERVICE REF:OI 6563 BNF-RELIANCE ASSISTANCE GROUP ID:28325123 BNF BK:JPMORGAN CHASE BANK, NA ID:322271 627 PMT DET:42148 6578 |
| Bank of America | Prime Logix LLC | | 1/31/2023 | 1/20/2023 | | 9,085.93 | WIRE TYPE:WIRE OUT DATE:23012OTIME1435 ETTRN:2023012000398864 SERVICE REFO1 3373 BNF-RELIANCE ASSISTANCE GROUP ID:281325123 BNF BK:JPMORGAN CHASE BANK, NA ID322271 627 PMT DET:42230 0114 |
| Bank of America | Prime Logix LLC | | 1/31/2023 | 1/27/2023 | | 2,097.93 | WIRE TYPE:WIRE OUT DATE3O127 TIME1351 ETTRN:2023012700386809 SERVICE REF:O1 2647 BNF-RELIANCE ASSISTANCE GROUP ID:281 325123 BNF BK: JPMORGAN CHASE BANK, NA ID322271 627 PMT DET:42320 1136 JAN 16 TO JAN 22 |
| Bank of America | Prime Logix LLC | | 2/28/2023 | 2/3/2023 | | 3,897.31 | WIRE TYPE:WIRE OUT DATE:20203 TIME1 200 ET TRN2020203000036541 S SERVICE REF009673 BNF-RELIANCE ASSISTANCE GROUP ID:28132S123 BNF BK:JPMORGAN CHASE BANK, NA ID:322271 627 PMT DET:42434 8616 JAN 23 TO JAN 29 |
| Bank of America | Litigation Practice Group PC | | 2/28/2023 | 2/7/2023 | | 182,500.00 | TRANSFER LITIGATION PRACTICE -Reliance Assistance ConfirmationII 0381893112 |
| Bank of America | Prime Logix LLC | | 2/28/2023 | 2/10/2023 | | 3,763.10 | WIRE TYPE:WIRE OUT DATE:23021 0 TIME:1 444 ET TRN:2023021 000407716 SERVICE REF014321 BNF-RELIANCE ASSISTANCE GROUP ID:281325123 BNF BK:JPMORGAN CHASE BANK, NA ID:322271627 |
| Bank of America | Litigation Practice Group PC | | 2/28/2023 | 2/10/2023 | | 338.76 | WIRE TYPE:WIRE OUT DATE:23021OTIME:0759 ETTRN:2023021009OO487233 SERVICE REF317664 BNF-RELIANCE ASSISTANCE GROUP ID:3251 23 BNF BK:PMORGAN CHASE BA NK, N. ID0002 PMT DET:97:IRWYTG4 POP Other |
| Wells Fargo | Maverick Management Group LLC | | 3/31/2023 | 3/17/2023 | | 15,352.00 | WT Fed#08070 4morgan Chase Ban /Ftr/Bnf=Reliance Assistance Group Inc Sr# 0000960076380725 Trn#230317177805 Rb# |
| | | | | | | **231,169.20** | |

DRAFT FORM - SUBJECT TO CHANGE

# Exhibit 6.

**GROBSTEIN TEEPLE**

In re: The Litigation Practice Group PC
Summary of Disbursements
Post-Petition Activity (3/20/2023 - Present)

Reliance Assistance Group, Inc.

| Bank Name | Account Type | Account Name | Account Number | Statement Date | Transaction Date | Check Number | Debit/Charge | Memo |
|---|---|---|---|---|---|---|---|---|
| Bank of America Checking | Prime Logix LLC | | | 3/31/2023 | 3/24/2023 | | 6,819.25 | WIRE TYPE:WIRE OUT DATE:230324 TIME:1 600 ET TRN:20230324005007088 SERVICE REF:01 6247 BNF:RELIANCE ASSISTANCE GROUP ID:281325123 BNF BK:JPMORGAN CHASE BANK, NA ID:322271627 PMT DET:431 153800 AFFILIATE 031323 031923 |
| Bank of America Checking | Prime Logix LLC | | | 4/30/2023 | 4/4/2023 | | 95,000.00 | WIRE TYPE:WIRE OUT DATE:230404 TIME:1 523 ET TRN:20230404004052599 SERVICE REF01 3379 BNF:RELIANCE P_SSISTANCE GROUP ID:281 3251 23 BNF BK.JPMORGAN CHASE BANK, NA ID322271 627 PMT DET 432757480 |
| Bank of America Checking | Prime Logix LLC | | | 4/30/2023 | 4/7/2023 | | 8,978.66 | WIRE TYPEWIRE OUT DATE:230407 TIME:1 432 ET TRN20230407002488887 SERVICE REF008270 BNF:RELIANCE ASSISTANCE GROUP ID:281325123BNF BK.JPMORGAN CHASE BANK, NA ID322271 627 PMT DET:43324 9986 MAR27 APR02 |
| Bank of America Checking | Prime Logix LLC | | | 4/30/2023 | 4/12/2023 | 1370 | 50,000.00 | File Purchase Partial Payment |
| Bank of America Checking | Prime Logix LLC | | | 4/30/2023 | 4/27/2023 | | 27,806.00 | TRANSFER PRIME LOGIX LLCReliance Assistance Confirmation# 2962581128 |
| Bank of America Checking | Prime Logix LLC | | | 4/30/2023 | 4/28/2023 | 1371 | 50,000.00 | File Purchase Partial Payment |
| Bank of America Checking | Prime Logix LLC | | | 5/31/2023 | 5/5/2023 | 1313 | 50,000.00 | File Purchase |
| Bank of America Checking | Vulcan Consulting | | | 5/31/2023 | 5/9/2023 | | 11,266.29 | WIRE TYPE:WIRE OUT DATE:230509 TIME:051 1 ET TRN20230509001 5502 SERVICE REF002734 BNF:RELIANCE PISSISTANCE GROUP ID:281325123BNF BK.JPMORGAN CHASE BANK, NA ID:322271 627 PMT DET:43747 7972 |
| Bank of America Checking | Prime Logix LLC | | | 5/31/2023 | 5/11/2023 | | 17,119.09 | TRANSFER PRIME LOGIX LLCReliance Assistance Confirmation!! 0482396134 |
| Bank of America Checking | Prime Logix LLC | | | 5/31/2023 | 5/18/2023 | 1312 | 50,000.00 | File Purchase |
| Bank of America Checking | Prime Logix LLC | | | 5/31/2023 | 5/18/2023 | | 17,540.73 | WIRE TYPEWIRE OUT DATE:2305 18 TIME:1 425 ET TRN:20230518 800369462 SERVICE REF:01 2314 BNF:RELIANCE ASSISTANCE GROUP ID:281325123 BNF BK.JPMORGAN CHASE BANK, NA ID:322271 627 PMT DET:9LCRU BG88 POP Other MARKETING FEE |
| Bank of America Checking | Prime Logix LLC | | | 5/31/2023 | 5/25/2023 | | 15,891.47 | WIRE TYPEWIRE OUT DATE:230525 TIME:1 447 ET TRN;2023052500432214 SERVICE REF526492 BNF:RELIANCE ASSISTANCE CREW I ID:281 3251 23 BNF BK:JPMORGAN CHASE BANK, N. ID:0002 PMT DET:78R CKAF75 POP Services |
| Bank of America Checking | Prime Logix LLC | | | 5/31/2023 | 5/30/2023 | 1364 | 55,000.00 | |
| Bank of America Checking | Prime Logix LLC | | | 6/30/2023 | 6/2/2023 | 1380 | 50,000.00 | |
| | | | | | | | **505,421.49** | |

DRAFT FORM - SUBJECT TO CHANGE

# Exhibit 7.

<table>
<tr><td>

**Fill in this information to identify the case:**

Debtor 1   The Litigation Practice Group P.C.

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court   **Central District of California**

Case number:  **23–10571**

</td><td>

FILED

**U.S. Bankruptcy Court**
**Central District of California**

2/23/2024

**Kathleen J. Campbell, Clerk**

</td></tr>
</table>

## Official Form 410
## Proof of Claim

04/22

**Read the instructions before filling out this form.** This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed.** That date is on the notice of bankruptcy (Form 309) **that you received.**

### Part 1:   Identify the Claim

| | |
|---|---|
| **1.Who is the current creditor?** | Reliance Assistance Group Inc<br><br>Name of the current creditor (the person or entity to be paid for this claim)<br><br>Other names the creditor used with the debtor |
| **2.Has this claim been acquired from someone else?** | ☑ No<br>☐ Yes. From whom? |

**3.Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
|---|---|
| Reliance Assistance Group Inc | |
| Name | Name |
| 2522 Chambers Rd<br>100<br>TUSTIN, CA 92780 | |
| Contact phone _____7149162592_____ | Contact phone _____ |
| Contact email ____yuriyd@my–reliance.com____ | Contact email _____ |
| Uniform claim identifier for electronic payments in chapter 13 (if you use one):<br>_____ | |

| | |
|---|---|
| **4.Does this claim amend one already filed?** | ☑ No<br>☐ Yes. Claim number on court claims registry (if known) _____   Filed on _____<br>MM / DD / YYYY |
| **5.Do you know if anyone else has filed a proof of claim for this claim?** | ☑ No<br>☐ Yes. Who made the earlier filing? _____ |

Exhibit "7"
Page 61

**Part 2:**  Give Information About the Claim as of the Date the Case Was Filed

| | |
|---|---|
| **6.** Do you have any number you use to identify the debtor? | ☑ No<br>☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _____ |
| **7.** How much is the claim? | $ ____1.00____   **Does this amount include interest or other charges?**<br>☑ No<br>☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |
| **8.** What is the basis of the claim? | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).<br>Limit disclosing information that is entitled to privacy, such as healthcare information.<br><br>    See Attachement A _____ |
| **9. Is all or part of the claim secured?** | ☑ No<br>☐ Yes. The claim is secured by a lien on property.<br>   **Nature of property:**<br>   ☐ Real estate.   If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410–A) with this *Proof of Claim.*<br>   ☐ Motor vehicle<br>   ☐ Other. Describe: _____<br><br>   **Basis for perfection:** _____<br><br>   Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>   **Value of property:**   $ _____<br><br>   **Amount of the claim that is secured:**   $ _____<br><br>   **Amount of the claim that is unsecured:**   $ _____   (The sum of the secured and unsecured amounts should match the amount in line 7.)<br><br>   **Amount necessary to cure any default as of the date of the petition:**   $ _____<br><br>   **Annual Interest Rate** (when case was filed)   ____ %<br><br>   ☐ Fixed<br>   ☐ Variable |
| **10.** Is this claim based on a lease? | ☑ No<br>☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $ _____ |
| **11.** Is this claim subject to a right of setoff? | ☑ No<br>☐ Yes. Identify the property: _____ |

Official Form 410                          Proof of Claim                          page 2

Exhibit "7"

Page 62

| 12. | Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No |
|---|---|---|
| | | ☐ Yes. *Check all that apply:* | **Amount entitled to priority** |

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

$ _____

☐ Up to $3,350 * of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).

$ _____

☐ Wages, salaries, or commissions (up to $15,150 *) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).

$ _____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).

$ _____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).

$ _____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies

$ _____

* Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3:  Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157 and 3571.**

Check the appropriate box:

☑ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    2/23/2024

MM / DD / YYYY

/s/  Yuriy Drahuntsov

Signature

Print the name of the person who is completing and signing this claim:

Name    Yuriy Drahuntsov

First name    Middle name    Last name

Title    President

Company    Reliance Assistance Group Inc

Identify the corporate servicer as the company if the authorized agent is a servicer

Address    2522 Chambers Rd, 100

Number   Street
TUSTIN, CA 92780

City   State   ZIP Code

Contact phone    7149162592    Email    yuriyd@my−reliance.com

In re: The Litigation Practice Group P.C.

Case No. 8:23-bk-10571-SC

### ATTACHEMENT A

Reliance Assistance Center provided marketing and customer support services to The Litigation Practice Group PC ("LPG"). The claim submitted herein is to preserve our right to collect the amount due for the hard costs that we incurred in providing the following services to LPG:

-Locating and onboarding clients to LPG

-Performing customer service tasks such as providing updates and fielding questions from LPG clients that we had onboarded to LPG

-Providing a retention function to encourage clients of LPG to remain with LPG or encouraging clients who had terminated their relationship with LPG to resume such relationship

The hard costs referenced above included the cost of acquiring leads, payroll, our phone system, our customer relations management software, and our proportionate cost of space. We are not seeking any margin on our actual out-of-pocket expenses, just the recovery of the amount actually expended in providing the above-referenced services.

We are still in the process of obtaining and reviewing records to determine the full extent of our out-of-pocket expenses incurred. We will amend this claim upon a complete review of all records, including records obtained from the Trustee regarding clients onboarded by Reliance to LPG.

B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS<br>Richard A. Marshack, former Chapter 11 Trustee for the Bankruptcy Estate of The Litigation Practice Group PC and current liquidating trustee of the LPG Liquidation Trust | DEFENDANTS<br>Reliance Assistance Group, Inc. and Yuriy Drahuntsov |
|---|---|

| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>Christopher B. Ghio    Dinsmore & Shohl LLP<br>Christopher Celentino    655 West Broadway, Suite 800<br>Yosina M. Lissebeck    San Diego, California 92101<br>Sara A. Johnston (pro hac vice)    619.400.0500 | ATTORNEYS (If Known) |
|---|---|

| PARTY (Check One Box Only)<br>□ Debtor    □ U.S. Trustee/Bankruptcy Admin<br>□ Creditor    □ Other<br>☐ Trustee | PARTY (Check One Box Only)<br>□ Debtor    □ U.S. Trustee/Bankruptcy Admin<br>□ Creditor    ☐X Other<br>□ Trustee |
|---|---|

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

(1) Avoidance, Recovery, and Preservation of 2-Year Actual Fraudulent Transfers; (2) Avoidance, Recovery, and Preservation of 2-Year Constructive Fraudulent Transfers; (3) Avoidance, Recovery, and Preservation of 4-Year Actual Fraudulent Transfers; (4) Avoidance, Recovery, and Preservation of 4-Year Constructive Fraudulent Transfers; (5) Avoidance, Recovery, and Preservation of Preferential Transfer; (6) Avoidance, Recovery and Preservation of Post-Petition Transfers; (7) Aiding and Abetting; (8) Turnover; and (9) Disallowance of Claims

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☒ 11-Recovery of money/property - §542 turnover of property
☒ 12-Recovery of money/property - §547 preference
☒ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| □ Check if this case involves a substantive issue of state law | □ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| □ Check if a jury trial is demanded in complaint | Demand $ $781,291.64 |

Other Relief Sought
   Disallowing Defendant's Proof of Claim

**B1040 (FORM 1040) (12/15)**

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br><br> The Litigation Practice Group P.C. | BANKRUPTCY CASE NO.<br> 8:23-bk-10571-SC | |
| DISTRICT IN WHICH CASE IS PENDING<br><br> Central District of California | DIVISION OFFICE<br><br> Santa Ana | NAME OF JUDGE<br> Hon. Scott C. Clarkson |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY<br> PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | |
| DATE<br><br> February 25, 2025 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br><br> /s/ Sara A. Johnston | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located.  Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate.  There also may be lawsuits concerning the debtor's discharge.  If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF).  (CM/ECF captures the information on Form 1040 as part of the filing process.)  When completed, the cover sheet summarizes basic information on the adversary proceeding.  The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court.  The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney).  A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.**  Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.**  Give the names and addresses of the attorneys, if known.

**Party**.  Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.**  Enter the dollar amount being demanded in the complaint.

**Signature.**  This cover sheet must be signed by the attorney of record in the box on the second page of the form.  If the plaintiff is represented by a law firm, a member of the firm must sign.  If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.