CHRISTOPHER CELENTINO (131688)
Christopher.Celentino@dinsmore.com
YOSINA M. LISSEBECK (201654)
Yosina.Lissebeck@dinsmore.com
**DINSMORE & SHOHL LLP**
655 West Broadway, Suite 800
San Diego, California 92101
Tele: (619) 400-0500
Fax:  (619) 400-0501

RICHARD D. POROTSKY, JR. (Ohio Bar No. 0067234) (Admitted pro hac vice)
Richard.Porotsky@dinsmore.com
CARA DAGGITT (Ohio Bar No. 0098927) (Admitted pro hac vice)
Cara.Daggitt@dinsmore.com
**DINSMORE & SHOHL LLP**
255 E. Fifth Street, Suite 1900
Cincinnati, OH 45202
Tele: 513-922-8200
Fax: 513-977-8141

Special Counsel to Richard A. Marshack, former Chapter
11 Trustee for the Bankruptcy Estate of The Litigation
Practice Group PC and current liquidating trustee of the
LPG Liquidation Trust

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION

| | |
|---|---|
| In re: | Case No. 8:23-bk-10571-SC |
| THE LITIGATION PRACTICE GROUP P.C., | Adv. Proc. No. _____ |
| Debtor. | Chapter 11 |
| RICHARD A. MARSHACK, former Chapter 11 Trustee for the Bankruptcy Estate of The Litigation Practice Group PC and current liquidating trustee of the LPG Liquidation Trust, | **COMPLAINT FOR:** |
| Plaintiff, | **(1) AVOIDANCE, RECOVERY, AND PRESERVATION OF 2-YEAR ACTUAL FRAUDULENT TRANSFERS;** |
| v. | **(2) AVOIDANCE, RECOVERY, AND PRESERVATION OF 2-YEAR CONSTRUCTIVE FRAUDULENT TRANSFERS;** |
| COUNTDOWN CAPITAL, INC., a Wyoming corporation; and CORY BELL-WHEELANS, individually | **(3) AVOIDANCE, RECOVERY, AND PRESERVATION OF 4-YEAR ACTUAL FRAUDULENT TRANSFERS;** |
| Defendants. | **(4) AVOIDANCE, RECOVERY, AND PRESERVATION OF 4-YEAR** |



**CONSTRUCTIVE FRAUDULENT TRANSFERS;**

**(5)  AVOIDANCE, RECOVERY AND PRESERVATION OF PREFERENTIAL TRANSFER MADE WITHIN NINETY DAYS OF THE PETITION DATE;**

**(6) TURNOVER; AND**

**(7) AIDING AND ABETTING**

Judge:        Hon. Scott C. Clarkson

For his *Complaint for (1) Avoidance, Recovery, and Preservation of 2-Year Actual Fraudulent Transfers; (2) Avoidance, Recovery, and Preservation of 2-Year Constructive Fraudulent Transfers; (3) Avoidance, Recovery, and Preservation of 4-Year Actual Fraudulent Transfers; (4) Avoidance, Recovery, and Preservation of 4-Year Constructive Fraudulent Transfers; (5) Avoidance, Recovery, and Preservation of Preferential Transfer; (6) Turnover; and (7) Aiding and Abetting as to Defendant Cory Bell-Wheelans ("Complaint"),* plaintiff Richard A. Marshack, the former Chapter 11 Trustee for the bankruptcy estate ("Estate") of debtor The Litigation Practice Group P.C. ("Debtor" or "LPG") and current liquidating trustee of the LPG Liquidation Trust (collectively, "Trustee" or "Plaintiff") in the above-captioned bankruptcy case ("Bankruptcy Case"), alleges and avers as follows:

## STATEMENT OF JURISDICTION, NATURE OF PROCEEDING, AND VENUE

1.        This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 157(b)(2)(A), (E), (H) and (O), 1334(b), and General Order No. 13-05 of the District Court for the Central District of California because this is a core proceeding arising in and/or related to the Bankruptcy Case, which is a case under Chapter 11 of Title 11 of the United States Code ("Bankruptcy Code"), and which is pending in the United States Bankruptcy Court for the Central District of California, Santa Ana Division ("Bankruptcy Court").

///

**2.**      Regardless of whether this proceeding is core, non-core, or otherwise, Plaintiff consents to the entry of a final order and judgment by the Bankruptcy Court.

**3.**      Defendant is notified that Rule 7008 of the Federal Rules of Bankruptcy Procedure requires Defendant to plead whether consent is given to the entry of a final order and judgment by the Bankruptcy Court.

**4.**      Venue of this adversary proceeding properly lies in this judicial district pursuant to 28 U.S.C. § 1409(a) because this proceeding is related to Debtor's pending Bankruptcy Case.

## **THE PARTIES**

**5.**      Plaintiff, Richard A. Marshack, was the duly-appointed, qualified Chapter 11 Trustee of Debtor's Estate and is now the current liquidating trustee of the LPG Liquidation Trust.

**6.**      Debtor is, and at all material times was, a professional corporation organized, existing, and in good standing under the laws of the State of California, with its principal place of business in Tustin, California.

**7.**      Defendant, Countdown Capital, Inc. ("Defendant"), is, and at all material times represented that it was, a corporation existing under the laws of the State of Wyoming.

**8.**      Defendant may be served by first class mail postage prepaid upon its registered agent for service of process, 3347 Michelson Drive, Suite 400, Irvine, CA 92612.

**9.**      Defendant Cory Bell-Wheelans ("Defendant Wheelans") is, and at all material times was, an individual residing in Orange County, California. Upon information and belief, Defendant Wheelans is the controlling principal of Defendant Countdown Capital.

## **GENERAL ALLEGATIONS**

**A.      THE BANKRUPTCY CASE**

**10.**      On March 20, 2023 ("Petition Date"), Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, commencing the Bankruptcy Case.

**11.**      The Office of the United States Trustee ("UST") filed its *Motion by United States Trustee to Dismiss or Convert Case Pursuant to 11 U.S.C. § 1112(b)* [Bankr. Docket No. 21] and creditors Debt Validation Fund II, LLC; MC DVI Fund 1, LLC; and MC DVI Fund 2, LLC filed the *Motion by DVF and MC DVI to Dismiss Chapter 11 Case Pursuant to 11 U.S.C. §§ 105, 305,*

*349, & 1112, or in the Alternative Convert This Case to Chapter 7 or Appoint a Trustee* [Bankr. Docket No. 44]. On May 4, 2023, the Court entered its *Order Directing United States Trustee to Appoint Chapter 11 Trustee* [Bankr. Docket No. 58].

**12.**     Pursuant to the *Acceptance of Appointment as Chapter 11 Trustee* [Bankr. Docket No. 63], on May 8, 2023, Trustee accepted his appointment as the Chapter 11 Trustee in the Bankruptcy Case, and he continues to serve in this capacity at this time. The Court approved the Trustee's appointment in its *Order Approving the U.S. Trustee's Application for the Appointment of a Chapter 11 Trustee* [Docket No. 65].

**13.**     Pursuant to the Order Confirming Modified First Amended Joint Chapter 11 Plan of Liquidation entered September 9, 2024, and the Notice of Occurrence of Effective Date of Modified First Amended Joint Chapter 11 Plan of Liquidation filed September 24, 2024, Richard A. Marshack became the Liquidating Trustee of the LPG Liquidation Trust, effective September 24, 2024. [Bankr. Docket Nos. 1646 & 1762].

**14.**     Trustee was not appointed until after events of the case and, therefore, bases these allegations on information and belief. *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017) ("The *Twombly* plausibility standard . . . does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible."); *Miller v. City of Los Angeles*, 2014 U.S. Dist. LEXIS 198871, 2014 WL 12610195, at *5 (C.D. Cal. Aug. 7, 2014) (recognizing that the plaintiff's "information and belief" pleading was allowed and "necessary at times"); *see also Mireskandari v. Daily Mail and General Trust PLC*, 2013 U.S. Dist. LEXIS 194437, 2013 WL 12129642, at *4 (C.D. Cal. July 31, 2013) ("The Federal Rules of Civil Procedure allow parties to plead facts on 'information and belief' if the facts 'will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.'" (citations omitted)).

**15.**     All claims have been transferred to the Liquidating Trust pursuant to the confirmed plan and Plaintiff brings this action solely in his capacity as the Chapter 11 Trustee for the benefit of Debtor's Estate and its creditors.

**B.      PROTECTIVE ORDER**

**16.**      On or about May 2, 2024, Plaintiff filed that certain Notice and Motion for Entry of Protective Order (the "Protective Order Motion"). On June 3, 2024, the Court entered its Order Granting Motion for Entry of Protective Order and the Protective Order [Docket No. 1270] (the "Protective Order"). A true and accurate copy of the Protective Order is attached as **<u>Exhibit 1</u>**, and incorporated here.

**17.**      By its own terms, the Protective Order applies to this adversary proceeding and governs all discovery conducted herein.

**C.      LPG AND TONY DIAB**

**18.**      LPG operated a law firm for consumers across the country who sought assistance in contesting or resolving debts they would identify.

**19.**      The consumers would pay LPG over a period of time via monthly debits from their bank accounts.

**20.**      The monthly payments were meant to cover all legal services LPG provided to the consumers including validation of the debts, review of documents to determine enforceability, and court appearances to halt lawsuits to obtain judgments.

**21.**      In certain instances, LPG would file a lawsuit in an effort to eliminate a disputed debt or to prosecute affirmative claims held by the consumers.

**22.**      LPG mismanaged the consumers' monthly payments.

**23.**      Tony Diab is, and at all relevant times was, an individual who operated, dominated and controlled LPG ("Diab"). Diab and other defendants devised a plan to fraudulently transfer funds, client files, client funds and assets in the form of ACH Receivables (the "ACH Receivables" or "Accounts Receivable") out of LPG to third parties prior to the filing of bankruptcy.

**24.**      To obtain consumer clients, LPG contracted with marketing companies, who engaged in illegal capping and would advertise or call to solicit consumers to become clients of LPG in exchange for a percentage of the ACH Receivables collected by LPG from the consumers. The marketing companies would advertise to or call to solicit them to become clients of LPG.

///

25.     The marketing affiliate went so far as to assist with the execution of an engagement letter between the consumer and LPG.

26.     In exchange, LPG agreed to pay the marketing affiliates a percentage of the monthly payments collected by LPG from the consumers.

27.     Because LPG received payments from consumers over time, it often sought financing by borrowing against its future cash flows. This borrowing was not only used to finance operations at LPG, but also to pay the fees owed to the marketing companies for providing the client referrals.

28.     Many of the documents executed in connection with such financing described the transactions as accounts receivable purchase agreements.

29.     Diab used entities he controlled, and were his alter egos, including, without limitation, Vulcan Consulting Group LLC ("Vulcan"), Coast Processing, PrimeLogix LLC ("Primelogix"), and/or Maverick to divert LPG consumer funds and ACH Receivables. Diab would use numerous ACH processing companies in order to easily transfer millions of dollars from Debtor to these entities he controlled, without oversight or detection, and to avoid payment disputes and complications. The money that flowed from Debtor through these bank accounts to Defendants consisted of Client Funds that Debtor funneled to these entities by means of the ACH processing companies. Debtor regularly made deposits into these entities' bank accounts such that they received Client Funds directly from Debtor in addition to future Accounts Receivable.

30.     In early 2023, Diab decided that he wanted to have his own "in house" marketing affiliate. He and Defendant Cory Bell-Wheelans created Countdown. Diab used money from LPG as "seed money" to start Countdown.

31.     At that time, Diab was already starting to fraudulently transfer funds, customers and assets away from LPG into other entities he controlled. Thus, Countdown solicited consumers to become clients of: (a) Phoenix Law Group ("Phoenix"), an entity created by Diab for receiving the transfer of LPG's business, assets and clients; and/or (b) Consumer Legal Group aka CLG, a business Diab had dealings with, and whom is a defendant in adversary proceeding #23-1046

32.     The transfer of all consumer client files to Phoenix was ultimately avoided, per Court order, and clawed back in these proceedings.

**33.**     Pursuant to the agreements, Countdown received a percentage of payments generated from each consumer client file transferred to Pheonix or CLG.  The diversion or transfer of these clients away from LPG, and to these other entities, harmed the debtor in the amount of money that Countdown received from Phoenix and CLG.

**D.     DEFENDANTS COUNTDOWN CAPITAL AND CORY BELL WHELANS**

**34.**     As set forth in paragraphs 30-33 incorporated herein, Defendant was a marketing affiliate created by Defendant Cory Bell-Wheelans and Diab, and funded by LPG to "enroll" clients directly to Phoenix and CLG, two entities named as Defendants in the main adversary proceeding.

**35.**     LPG transferred at least $326,769.70 to Defendant.

**36.**     On information and belief, the bulk of the transfers of LPG funds to Defendant, including larger lump sums of $20,000 or more, were considered to be "Seed Money" for Defendant's operations.

**37.**     Other transfers of funds were made due to an express oral agreement wherein Defendant would receive half of the client funds that were generated for each client enrolled.

**38.**     Upon information and belief, these clients were enrolled with Phoenix and/or CLG and diverted away from LPG, due to LPG's impending bankruptcy. Thus, despite LPG funding and creating Countdown, LPG was not receiving any value received from Countdown in return for the transfers.

**39.**     Further, all client funds collected or received by Countdown (regardless of where the clients were enrolled) should never have gone to Countdown; instead, these funds should have been held in trust until earned.

**40.**     Upon information and belief, Defendant Bell-Wheelans had knowledge that LPG's funds, including consumer (client) funds, were being sent to Countdown and used there instead of being held in trust until earned.

**i.      Demand Letter**

**41.**     On or about October 9, 2024, the Trustee sent a demand letter to Defendant (the "Demand Letter"). A true and accurate copy of the Demand Letter is attached as **Exhibit 2**, and incorporated here.

**42.** The Demand Letter discussed certain transfers that totaled $326,769.70 from Debtor that were made to Defendant within the applicable reach back period.

**43.** It further stated that eight transfers totaling $90,202.43, were made to Defendant within the 90-day period prior to the Petition Date ("Preference Period").

**44.** Trustee has yet to receive any response or payment from Defendant pursuant to the Demand Letter.

### ii. Fee Sharing Agreement

**45.** As noted above, LPG transferred least $326,769.70 to Defendant as seed money or through the express oral fee-sharing Agreement referenced above.  See Exhibits 3, 4, and 5 for a listing of transfer dates and amounts.

**46.** The effect of the Agreement was to accomplish an unlawful purpose. Thus, the Agreement may be declared illegal regardless of the intention of the parties. *Stockton Morris Plan Co. v. Cal. Tractor & Equip. Corp.*, 112 Cal. App. 2d 684, 690 (1952) (citing *Fewel & Dawes, Inc. v. Pratt*, 17 Cal. 2d 85, 91 (1941)). This remains true regardless of whether the contract has been performed. *Stevens v. Boyes Hot Springs Co.*, 113 Cal. App. 479, 483 (1931) (A contract by a corporation to purchase its own stock has the effect of illegally withdrawing and paying to a stockholder a part of the capital stock of the corporation and is illegal and void, regardless of the fact that the contract is fully performed by the sellers and partially performed by the corporation.); *Mansfield v. Hyde*, 112 Cal. App. 2d 133, 139 (1952), overruled, *Fomco, Inc. v. Joe Maggio, Inc.*, 8 Cal. Rptr. 459 (1960) (Where object of statute requiring licenses is to prevent improper persons from engaging in particular activity, or is for purpose of regulating occupation or business for protection of public, imposition of penalty amounts to prohibition against engaging in occupation or business without license, and contract made by unlicensed person in violation of statute is invalid.);  *Firpo v. Murphy*, 72 Cal. App. 249, 252 (1925) (A contract to pay commissions to a real estate broker is illegal and he is not entitled to recover thereon where he fails to secure the license required by law to carry on his business.).

**47.** Because the Agreement violates federal and state laws, it is void, unenforceable, and subject to avoidance as fraudulent. Any alleged consideration provided to Debtor under the

Agreement was unlawful. Unlawful consideration is that which is: "(1) contrary to an express provision of law; (2) contrary to the policy of express law, though not expressly prohibited; or (3) otherwise contrary to good morals." Cal. Civ. Code § 1667. "If any part of a single consideration for one or more objects, or of several considerations for a single object, is unlawful, the entire contract is void." Cal. Civ. Code § 1608.

### E.    PAYMENTS TO DEFENDANT

**48.**    During the applicable reach-back period, Debtor paid Defendant the sum of at least $326,769.70 between July 2021 and March 2023, subject to proof at trial ("Transfers"). A true and accurate list of the known payments made by Debtor to Defendant is attached as **Exhibits 3, 4, and 5** and incorporated here.

**49.**    At least $90,202.43 of the Transfers from Debtor to Defendant occurred during the 90-day preference period ("Preference Transfers"). A true and accurate list of the Preference Transfers is attached as **Exhibit 4 and 5** and incorporated here.

**50.**    The Transfers are based on updated figures as of January of 2025.

### F.    LPG's PONZI SCHEME

**51.**    The Ponzi Scheme Presumption exists in bankruptcy proceedings.

**52.**    The Ponzi Scheme Presumption can be utilized to establish a debtor's "intent to defraud future undertakers [investors] from the mere fact that a debtor was running a Ponzi scheme. Indeed, no other reasonable inference is possible. A Ponzi scheme cannot work forever. The investor pool is a limited resource and will eventually run dry. The perpetrator must know that the scheme will eventually collapse as a result of the inability to attract new investors. The perpetrator nevertheless makes payments to present investors, which, by definition, are meant to attract new investors. He must know all along, from the very nature of his activities, that investors at the end of the line will lose their money. Knowledge to a substantial certainty constitutes intent in the eyes of the law, *cf. Restatement (Second) of Torts § 8A (1963 & 1964)*, and a debtor's knowledge that future investors will not be paid is sufficient to establish his actual intent to defraud them. *Kirkland v. Rund (In re EPD Inv. Co., LLC)*, 114 F.4th 1148, 1153 (9th Cir. 2024) (by definition Ponzi scheme is destined to fail and the swindler and their entities often end in bankruptcy or equitable receivership);

*Cf. Coleman Am. Moving Servs., Inc. v. First Nat'l Bank & Trust Co.* (*In re American Properties, Inc.*) (Bankr.D.Kan. 1981)14 B.R. 637, 643 (intentionally carrying out a transaction with full knowledge that its effect will be detrimental to creditors is sufficient for actual intent to hinder, delay or defraud within the meaning of § 548(a)(1))." *Merrill v. Abbott* (*In re Independent Clearing House Co.*) (D. Utah 1987) 77 B.R. 843, 860. A trustee in bankruptcy is not required to show that an operator of a Ponzi scheme was subjectively aware his Ponzi scheme was destined to fail. *In re EPD Inv. Co., LLC*, 114 F.4th at 1153 ("[a] trustee's action to recover assets fraudulently conveyed in the course of a Ponzi scheme does not require that the trustee also prove the Ponzi-scheme operator was subjectively aware his Ponzi scheme was destined to fail."

53.      "But if all the debtor receives in return for a transfer is the use of the defendant's money to run a Ponzi scheme, there is nothing in the bankruptcy estate for creditors to share. In fact, by helping the debtor perpetuate his scheme, the transfers exacerbate the harm to creditors by increasing the amount of claims while diminishing the debtor's estate. In such a situation, the use of the defendant's money cannot objectively be called "reasonably equivalent value." *In re Independent Clearing House Co.* 77 B.R. at 859. Therefore, "[t]he trustee can avoid the transfers if they were preferential or fraudulent. Transfers to investors in a Ponzi scheme are preferential and fraudulent. Therefore, they constitute "'property of the estate,'" and the trustee can recover them." *Id*. at 853 n.17 (citations omitted).

54.      Debtor was operating a Ponzi scheme that utilized affiliates and several other entities as investors to continue its unlawful business practices by using funds provided by current investors to attract new investors hoping for very high returns.  Therefore, the Debtor was running a Ponzi scheme and the Ponzi Scheme Presumption can be utilized to infer that the Debtor had the intent to defraud investors within the  meaning of 11 U.S.C. section 548(a)(1). This is evidenced by the Court in this Bankruptcy Case declaring that Debtor was operating a Ponzi scheme when it stated the  following:

> It is important to note that this Court has never received any significant and trustworthy evidence that Debtor accomplished meaningful results for its clients, but only anecdotal examples of viable success for its clients. By reviewing the

Estate's claims register, there is evidence of consumer claims for the fraud and demanded but undelivered refunds of approximately $500 million. There is ample evidence that the pre-petition Debtor never placed the collected funds into an attorney-client trust account, and that Debtor or its principals simply looted the payments received through the client automatic withdrawals, stiffing both the clients and outside attorneys who may have been working on client cases with the hopes of being paid. There is also evidence before the Court that Debtor was running a Ponzi scheme and paying some outside (or "network") attorneys with funds obtained from new clients. In this case, it appears that some of the "lenders" may have been serving as "investors," hoping for very high returns before "the music stopped." The Ninth Circuit has recently explained, "[b]y definition, a Ponzi scheme is destined to fail because the pool of available investors is not limitless. When the Ponzi scheme operator's pool of investors inevitably runs dry, the scheme collapses and the swindler and their entities often end up in bankruptcy or equitable receivership. *See generally* David R. Hague, Expanding the Ponzi Scheme Presumption, 64 DePaul L. Rev. 867 (2015). In bankruptcy, the court-appointed trustee is tasked with taking immediate control of the entity, ceasing ongoing fraudulent activity, locating and collecting assets for the bankruptcy or receivership estate, and achieving a final, equitable distribution of the remaining assets. *See* 11 U.S.C. § 704." *Kirkland v. Rund* (*In re EPD Inv. Co., LLC*), 2024 U.S. App. LEXIS 21363, at *15 (9th Cir. Aug. 23, 2024). Finally, there is evidence that Debtor was encumbering (or as some creditors assert, "double or triple selling") their accounts or receivables to multiple lenders. With respect to Greyson's requested Administrative Claim [Dk. 676], and as more fully described in the concurrently entered order denying the claim, there has been no evidence presented that any work allegedly performed by Greyson assisted any clients or added any value to the Estate.

*See*, Case No. 8:23-bk-10571-SC, [Bankr. Docket No. 1545 Fn. 5].

**55.**    Moreover, since the Transfers were made with the intent to further the Ponzi scheme, the Debtor did not receive an objectively reasonable equivalent value for the Transfers, and the Trustee can avoid the Transfers because they were preferential and fraudulent.

**56.**    The transactions between Defendants and the Debtor were loans, not the sales of receivables, and as such Defendants were serving as an "investor," hoping for very high returns before "the music stopped."

**G.    LPG's PREPETITION CREDITORS**

**57.**    Debtor was insolvent when each Transfer was made. This insolvency is evidenced in part by the fact that 14 separate UCC-1 statements were of record securing debts of the Debtor as of September 1, 2022. These statements remained unreleased as of the Petition Date. These statements either reflected secured liens against the Debtor's assets then owned or thereafter

acquired, or provided evidence of the assignment or sale of substantial portions of the Debtor's future income.

58.    When the Transfers were made, these prior UCC-1 statements secured the repayment of the following claimed amounts that are currently known to Trustee and are allegedly owed by the Debtor: (i) $2,374,004.82 owed to Fundura Capital Group as evidenced by Proof of Claim No. 335 purportedly secured by a UCC statement filed on or about May 19, 2021; (ii) approximately $15 million dollars owed to MNS Funding, LLC as evidenced by Proof of Claim No. 1060 purportedly secured by a UCC statement filed on or about May 28, 2021; (iii) approximately $5,000,000 owed to Azzure Capital, LLC as evidenced by Proof of Claim No. 127 secured by a UCC statement filed on or about May 28, 2021; and (iv) approximately $1.5 million dollars owed to Diverse Capital, LLC purportedly secured by UCC statements filed on or about September 15, 2021, and December 1, 2021.[1]

59.    As alleged above, LPG was borrowing against its assets and future income, often on unfavorable terms, not only to finance operations at LPG, but also to pay the fees owed to the marketing affiliates for providing it with consumer clients. Pursuant to the agreements with the marketing companies, significant percentages of future payments were already promised to be paid to the marketing affiliates from whatever future income the Debtor would receive.

60.    In addition, on Debtor's Schedule E/F [Bankr. Docket No. 33], Debtor scheduled 11 unsecured creditors with priority unsecured claims totaling $374,060.04. These priority unsecured creditors include Indiana Dept. of Revenue, Dept. of Labor and Industries, Arizona Dept. of Economic Security, Arkansas Dept. of Finance & Admin., California Franchise Tax Board, Georgia Dept. of Labor, Internal Revenue Service, Mississippi Dept. of Revenue, Nevada Dept. of Taxation, Utah State Tax Commission, and Wisconsin Dept. of Revenue (collectively, "Priority Unsecured Creditors").

61.    Another group of creditors that Debtor listed on its Schedule E/F [Bankr. Docket No. 33] are nonpriority unsecured creditors. Those 58 creditors have scheduled claims totaling

---

[1] Trustee reserves all rights, claims, and defenses with respect to these and any other purported secured or unsecured claims.

$141,439,158.05 and include Ajilon; Anthem Blue Cross; Azevedo Solutions Groups, Inc.; Carolina Technologies & Consulting Invoice; Collaboration Advisors; Credit Reporting Service Inc.; CT Corporation – Inv.; Debt Pay Pro; Document Fulfillment Services; EnergyCare, LLC; Exela Enterprise Solutions; First Legal Network, LLC; GHA Technologies Inc.; Harrington Electric, Inc.; Imagine Reporting; Juize, Inc.; Krisp Technologies, Inc.; Liberty Mutual; Marc Lemauviel – Allegra; MarkSYS Holdings, LLC; Netsuite-Oracle; Pitney Bowes; Rapid Credit, Inc.; SBS Leasing A Program of De Lage Landen; Security Solutions; Sharp Business Systems; Streamline Performance, Inc.; Thomson Reuters; Twilio, Inc.; Nationwide Appearance Attorneys; Executive Center, LLC; Outsource Accelerator, Ltd.; TaskUs Holdings, Inc.; Marich Bein, LLC; Validation Partners; MC DVI Fund 1, LLC; MC DVI Fund 2, LLC; Debt Validation Fund II, LLC; Tustin Executive Center; LexisNexus; JP Morgan Chase; Business Centers of America; Michael Schwartz; Anibal Colon Jr.; Kathleen Lacey; David Ulery; Kimberly Birdsong; Kevin Carpenter; Karen Suell; Gloria Eaton; Carolyn Beech; Debra Price; Kenneth Topp; Darcey Williamson, Trustee; James Hammett; Johnny Rizo; Beverly Graham; Kathleen Scarlett; and Geneve and Myranda Sheffield (collectively, "Nonpriority Unsecured Creditors" and, together with the Secured Creditors and Priority Unsecured Creditors, "Prepetition Creditors").

62.    As of the filing of this complaint, approximately 5,771 claims have been filed with the bankruptcy Court. While Trustee has not reviewed all claims as of the date of this complaint, and reserves all rights to object to those claims, the total amount is in excess of approximately $717,507,462.29.

**FIRST CLAIM FOR RELIEF**

**Count I - Avoidance, Recovery, and Preservation of Actual Fraudulent Transfers**

**[11 U.S.C. §§ 548(a)(1)(A), 550, and 551]**

63.    Plaintiff realleges and incorporates here by reference each and every allegation contained in paragraphs 1 through 62 as though set forth in full.

64.    All or a portion of the Transfers occurred within the two years prior to the Petition Date.

///

**65.**    On or after the date the Transfers were made, entities to which Debtor was or became indebted include the Prepetition Creditors.

**66.**    The Transfers happened while Debtor was insolvent or rendered Debtor insolvent.

**67.**    Despite Debtor's obligation to the Prepetition Creditors, Debtor continued to pay Defendant sums received from consumers under the Agreement, which constitutes an illegal capping agreement between Defendant and Debtor. Any obligation of the Debtor arising from such agreement is also avoidable as fraudulent.

**68.**    Despite Debtor's obligation to the Prepetition Creditors, Defendant continued to sell or transfer portions of its accounts receivable to Debtor, which is illegal under federal and state laws.

**69.**    The Transfers were made with actual intent to hinder, delay, or defraud creditors of Debtor.

**70.**    The Debtor was operating a Ponzi scheme and the Ponzi Scheme Presumption can be utilized to infer the Debtor's actual intent to defraud within the meaning of 11 U.S.C. section 548(a)(1).

**71.**    The Debtor's conduct was done with oppression, fraud, and malice, as defined in Civil Code section 3294, entitling the Trustee to, in addition to the actual damages, exemplary or punitive damages for making an example of the Debtor and to punish the Debtor.

**72.**    The Agreement and the Transfers of Debtor's funds are avoidable as fraudulent pursuant to 11 U.S.C. §§ 548(a)(1)(A), 550, and 551, and the common law tort of intentional fraudulent transfers by one or more creditors who held and hold unsecured claims against Debtor that were and are allowable against the Estate under 11 U.S.C. § 502 or that were not and are not allowable only under 11 U.S.C. § 502(e), including, without limitation, the Prepetition Creditors.

**73.**    The Agreement and Transfers should be voided as fraudulent under 11 U.S.C. § 548(a)(1)(A) and under the common law tort of intentional fraudulent transfers, and such transferred property, or the value thereof, should be recovered and preserved for the benefit of the Estate pursuant to 11 U.S.C. §§ 550 and 551.

///

## SECOND CLAIM FOR RELIEF

**Count II - Avoidance, Recovery, and Preservation of Constructive Fraudulent Transfers**

**Against Defendant**

**[11 U.S.C. §§ 548(a)(1)(B), 550, and 551]**

**74.**    Plaintiff realleges and incorporates here by reference each and every allegation contained in paragraphs 1 through 73 as though set forth in full.

**75.**    The Agreement and all or a portion of the Transfers occurred within the two years prior to the Petition Date.

**76.**    On or after the date that such agreements were executed and such Transfers were made, entities to which Debtor was or became indebted include the Prepetition Creditors.

**77.**    The Transfers happened while Debtor:

    a.   was insolvent or became insolvent as a result;

    b.   was engaged or was about to engage in a transaction for which any property remaining with Debtor was of unreasonably small capital; or

    c.   intended to incur, or believed that it would incur, debts beyond its ability to pay as such debts matured.

**78.**    Because the referrals from Defendant to Debtor are illegal under federal and state law, they are void and subject to avoidance as fraudulent. Any purported consideration constitutes unlawful consideration, which cannot constitute reasonably equivalent value. Thus, at the time the agreements were executed and the Transfers made, Debtor received less than reasonably equivalent value.

**79.**    Furthermore, the Debtor did not receive the reasonably equivalent value of the Transfers to the Defendant because by using the Defendant's money to run a Ponzi scheme there is nothing in Estate for the creditors to share. Rather, the Transfers exacerbated the harm to creditors by increasing the amount of claims while diminishing the Debtor's Estate. In this situation, the use of the Defendant's money to further the Debtor's Ponzi scheme cannot be consideration for the Transfers and cannot objectively be called reasonably equivalent value.

///

**80.**    Therefore, the Defendant was acting as an investor in the Debtor's Ponzi scheme. Any transfers made to the Defendant can be avoided by the Plaintiff since the Transfers are preferential and fraudulent such that they constitute property of the Estate in which the Plaintiff can recover.

**81.**    The Agreement and the Transfers should be avoided as fraudulent under 11 U.S.C. § 548(a)(1)(B), and such transferred property, or the value thereof, should be recovered and preserved for the benefit of the Estate pursuant to 11 U.S.C. §§ 550 and 551.

**THIRD CLAIM FOR RELIEF**

**Count III - Avoidance, Recovery, and Preservation of Actual Fraudulent Transfers Against Defendant**

**[11 U.S.C. §§ 544(b), 550, and 551; Cal. Civ. Code §§ 3439.04(a), 3439.04(b), and 3439.07]**

**82.**    Plaintiff realleges and incorporates here by reference each and every allegation contained in paragraphs 1 through 81 as though set forth in full.

**83.**    The Agreement and all or a portion of the Transfers occurred within the four years prior to the Petition Date.

**84.**    On or after the date that such agreements were entered and such Transfers were made, entities to which Debtor was or became indebted include the Prepetition Creditors.

**85.**    Despite Debtor's obligation to the Prepetition Creditors, Debtor continued to pay Defendant sums received from consumers under the Agreement which constitutes an illegal capping agreement between Defendant and Debtor.

**86.**    The Transfers happened while Debtor was insolvent or Debtor became insolvent shortly after the Transfers were made as is evidenced by the filing of the voluntary petition.

**87.**    The value of the consideration received by Debtor for such Transfers was not reasonably equivalent to the value of the Transfers because the Transfers were used to further assist Debtor in its Ponzi scheme.

**88.**    Because the referrals from Defendant to Debtor are illegal under federal and state law, they are void and subject to avoidance as fraudulent. Any purported consideration constitutes unlawful consideration, which cannot constitute reasonably equivalent value. Thus, at the time the

agreements were executed and the Transfers made, Debtor received less than reasonably equivalent value.

**89.** The Transfers were made with actual intent to hinder, delay, or defraud creditors of Debtor.

**90.** The Debtor was operating a Ponzi scheme and the Ponzi Scheme Presumption can be utilized to infer the Debtor's actual intent to defraud within the meaning of 11 U.S.C. section 548(a)(1).

**91.** The Debtor's conduct was done with oppression, fraud, and malice, as defined in Civil Code section 3294, entitling the Trustee to, in addition to the actual damages, exemplary or punitive damages for making an example of the Debtor and to punish the Debtor. The Agreement and the Transfers of Debtor's funds are avoidable as fraudulent pursuant to 11 U.S.C. § 544(b) and Cal. Civ. Code §§ 3439.04(a), 3439.04(b), and 3439.07, and the common law tort of intentional fraudulent transfers by one or more creditors who held and hold unsecured claims against Debtor that were and are allowable against the Estate under 11 U.S.C. § 502 or that were not and are not allowable only under 11 U.S.C. § 502(e), including, without limitation, the Prepetition Creditors.

**92.** Accordingly, the Agreement and the Transfers should be avoided as fraudulent under 11 U.S.C. §§ 544(b) and Cal. Civ. Code §§ 3439.04(a), 3439.04(b), and 3439.07, and under the common law tort of intentional fraudulent transfers, and such transferred property, or the value thereof, should be recovered and preserved for the benefit of the Estate pursuant to 11 U.S.C. §§ 550 and 551 and Cal. Civ. Code § 3439.07.

## FOURTH CLAIM FOR RELIEF

**Count IV - Avoidance, Recovery, and Preservation of Constructive Fraudulent Transfers Against Defendant**

**[11 U.S.C. §§ 544(b), 550, and 551; Cal. Civ. Code §§ 3439.05, and 3439.07]**

**93.** Plaintiff realleges and incorporates here by reference each and every allegation contained in paragraphs 1 through 92 as though set forth in full.

**94.** The Agreement and all or a portion of the Transfers occurred within the four years prior to the Petition Date.

**95.**    The Transfers happened while Debtor:

    a.    was insolvent or became insolvent as a result;

    b.    was engaged or was about to engage in a transaction for which any property remaining with Debtor was of unreasonably small capital; or

    c.    intended to incur, or believed that it would incur, debts beyond its ability to pay as such debts matured.

**96.**    Because the referrals from Defendant to Debtor are illegal under federal and state law, the agreements are void and subject to avoidance as fraudulent. Any purported consideration constitutes unlawful consideration, which cannot constitute reasonably equivalent value. Thus, at the time the agreements were executed and the Transfers made, Debtor received less than reasonably equivalent value.

**97.**    Furthermore, the Debtor did not receive the reasonably equivalent value of the Transfers to the Defendant because by using the Defendant's money to run a Ponzi scheme there is nothing in Estate for the creditors to share. Rather, the Transfers exacerbated the harm to creditors by increasing the amount of claims while diminishing the Debtor's Estate. In this situation, the use of the Defendant's money to further the Debtor's Ponzi scheme cannot be consideration for the Transfers and cannot objectively be called reasonably equivalent value.

**98.**    The Defendant was therefore acting as an investor in the Debtor's Ponzi scheme and any Transfers made to the Defendant can be avoided by the Plaintiff since the Transfers to the Defendant are preferential and fraudulent such that they constitute property of the Estate in which the Plaintiff can recover.

**99.**    The Agreements and the Transfers of Debtor's funds are avoidable as fraudulent pursuant to 11 U.S.C. § 544(b) and Cal. Civ. Code §§ 3439.05 and 3439.07 by one or more creditors who held and hold unsecured claims against Debtor that were and are allowable against the Estate under 11 U.S.C. § 502 or that were not and are not allowable only under 11 U.S.C. § 502(e), including, without limitation, the Prepetition Creditors.

**100.**    Accordingly, the Agreement and the Transfers should be avoided as fraudulent under 11 U.S.C. §§ 544(b) and Cal. Civ. Code §§ 3439.05 and 3439.07, and such transferred property, or

the value thereof, should be recovered and preserved for the benefit of the Estate pursuant to 11 U.S.C. §§ 550 and 551 and Cal. Civ. Code § 3439.07.

**FIFTH CLAIM FOR RELIEF**

**Count V - Avoidance, Recovery, and Preservation of Preferential Transfer to Defendant in Preference Period**

**[11 U.S.C. §§ 547, 550, and 551]**

101.    Plaintiff realleges and incorporates here by reference each and every allegation contained in paragraphs 1 through 100 as though set forth in full.

102.    The Preference Transfers were made for, or on account of, an antecedent debt or debts owed by LPG to Defendant, each of which constituted a "debt" or "claim" (as those terms are defined in the Bankruptcy Code) of Defendant.

103.    The Preference Transfers happened while LPG was insolvent.

104.    Debtor is also entitled to the presumption of insolvency when the Preference Transfers happened pursuant to 11 U.S.C. § 547(f).

105.    As a result of the Preference Transfers, Defendant recovered more than it would have received if: (i) the Debtor's case was under chapter 7 of the Bankruptcy Code; (ii) the Preference Transfers had not been made; and (iii) Defendant received payments of its debts under the provisions of the Bankruptcy Code. As evidenced by the Debtor's schedules filed in the underlying Bankruptcy Case, as well as the proofs of claim that have been received to date, the Debtor's liabilities exceed its assets to the point that unsecured creditors will not receive a full payout of their claims from the Debtor's Estate.

106.    In accordance with the foregoing, the Preference Transfers are voidable pursuant to 11 U.S.C. § 547(b), and may be recovered and preserved for the benefit of the estate pursuant to 11 U.S.C. §§ 550 and 551.

///

///

///

///

## SIXTH CLAIM FOR RELIEF

### Count VI - Turnover of Estate Property Against Defendant

### [11 U.S.C. § 542]

**107.** Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 106 as though set forth in full.

**108.** Defendant has possession or control over property of the Estate in the form of the Transfers made pursuant to illegal and unenforceable agreements.

**109.** The Transfers are not of inconsequential value to the Estate.

**110.** The funds that are the subject of the Transfers are paramount to Debtor's ability to pay creditors.

**111.** Accordingly, Trustee is entitled to a judgment for turnover of the Transfer pursuant to 11 U.S.C. § 542.

## SEVENTH CLAIM FOR RELIEF

### Count VII – Aiding and Abetting (Defendant Bell-Wheelans)

### [11 U.S.C. §§ 544(b), 550, and 551; CAL. CIV. CODE §§ 3439.04(a), 3439.04(b), and 3439.07]

**112.** Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 111 as though set forth in full.

**113.** Defendant Bell-Wheelans, upon information and belief, individually and through Countdown Capital, had knowledge of the fraudulent transfers, transactions, and illegal agreements that were used to perpetuate and conceal the Ponzi Scheme and fraudulent transfers.

**114.** Defendant Bell-Wheelans with the foregoing knowledge, intended to, and did, help Debtor in perpetuating and concealing the Ponzi scheme and fraudulent transfers of money.

**115.** Upon information and belief, Defendant Bell-Wheelans assisted, and did actually engage in, the commission of fraud, unlawful Enterprise, and Ponzi scheme by coordinating, facilitating, and enrolling consumer clients as part of their fraudulent and criminal activity related to the Enterprise and the Ponzi scheme.

**116.** The injuries to Plaintiff, the Debtor's Estate and to its creditors directly, proximately and reasonably foreseeably resulting from and caused by these violations of Sections

6151 and 6155 of the California Business and Professional Code include, without limitation, hundreds of thousands of dollars in improperly transferred and acquired monies.

117.    Plaintiff and the Debtor's Estate also suffered damages by incurring attorney's fees and costs associated with the prosecution of Defendant Bell-Wheelans unlawful activities.

**RESERVATION OF RIGHTS**

118.    Plaintiff reserves the right to bring all other claims or causes of action that Plaintiff may have against Defendant, on any and all grounds, as allowed under the law or in equity, including but not limited to, those claims not known by the Trustee at this time but that he may discover during the pendency of this adversary proceeding.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for a judgment as follows:

**On The First, Second, Third, and Fourth Claims for Relief:**

1.    Avoiding, recovering, and preserving the Transfers against Defendant; and

2.    Exemplary and punitive damages to set example of Defendant commensurate to its wealth.

**On the Fifth Claim for Relief:**

3.    Avoiding, recovering, and preserving the Preference Transfers against Defendant;

**On the Sixth Claim for Relief:**

4.    Ordering Defendant to immediately turn over the Transfers and/or Preference Transfers;

**On the Seventh Claim for Relief:**

5.    Awarding damages and costs of suit, including attorneys' fees.

///

///

///

///

///

///

**On All Claims for Relief:**

6.    Awarding costs of suit incurred here;

7.    Awarding pre- and post-judgment interest; and

8.    Granting any other and further relief as the Court deems just and proper.

Dated: February 25, 2025

Respectfully submitted,

DINSMORE & SHOHL LLP

By: _/s/ Richard Porotsky_
Yosina M. Lissebeck
Richard Porotsky
Cara Daggitt
*Special Counsel to Richard A. Marshack,
Former Chapter 11 Trustee and current
liquidating trustee of the LPG Liquidation
Trust*

# Exhibit 1

1   CHRISTOPHER B. GHIO (259094)
    christopher.ghio@dinsmore.com
2   CHRISTOPHER CELENTINO (131688)
    christopher.celentino@dinsmore.com
3   YOSINA M. LISSEBECK (201654)
    yosina.lissebeck@dinsmore.com
4   DINSMORE & SHOHL LLP
    655 West Broadway, Suite 800
5   San Diego, California 92101
    Tele:  619.400.0500
6   Fax:  619.400.0501
7
8   Sarah S. Mattingly (Ky. Bar 94257)
    sarah.mattingly@dinsmore.com
9   DINSMORE & SHOHL, LLP
    101 S. Fifth Street, Suite 2500
10  Louisville, Kentucky 40202
    Tele: 859-425-1096
11  Fax: 502-585-2207
12  (Admitted pro hac vice)
13  Special Counsel to Richard A. Marshack

<strong style="color:blue">FILED & ENTERED</strong>

<span style="color:red">JUN 03 2024</span>

**CLERK U.S. BANKRUPTCY COURT**
**Central District of California**
**BY mccall      DEPUTY CLERK**

14              **UNITED STATES BANKRUPTCY COURT**

15        **CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION**

16  In Re                              Case No: 23-bk-10571-SC

17                                     Chapter 11

18
19  The Litigation Practice Group P.C.,   **ORDER GRANTING MOTION FOR
                                          ENTRY OF PROTECTIVE ORDER AND
                                          THE PROTECTIVE ORDER**
20              Debtor(s),

21                                     Date:    May 23, 2024
22                                     Time:    1:30 p.m.
                                       Judge:   Hon. Scott C. Clarkson
23                                     Place:   Courtroom 5C (via Zoom)[1]
24                                                411 West Fourth Street
                                                  Santa Ana, CA 92701
25
26
27 ──────────────────────

28  [1] Video and audio connection information for each hearing will be provided on Judge Clarkson's
    publicly posted hearing calendar, which may be viewed online at:
    http://ecf-ciao.cacb.uscourts.gov/CiaoPosted/?jid=SC.

The Court has read and considered the Notice of Motion and Motion for Entry of Protective Order (the "Motion") filed by Richard A. Marshack, in his capacity as the Chapter 11 Trustee (the "Trustee") of the Bankruptcy Estate ("Estate") of The Litigation Practice Group P.C., on May 2, 2024, pursuant to Federal Rule of Bankruptcy Procedure 7026 and Federal Rule of Civil Procedure 26(c)(1), as Dk. No. 1164 ("Motion"), and has found good cause to grant the Motion.

IT IS HEREBY ORDERED that:

1.    The Motion is granted;

2.    The below Protective Order shall apply to any contested matter arising in the main bankruptcy case and in all adversary proceedings filed by or against Trustee, present and future; and

3.    Govern the discovery conducted therein.

**PROTECTIVE ORDER**

**1.    DEFINITIONS**

1.1    "Confidential Information" as used in this Protective Order shall mean documents and other information (regardless of how generated, stored or maintained) that a Party or non-party reasonably believes to contain or reflect non-public financial or business information, bank records, financial records, such as social security numbers, non-public financial or personal information of a Party or non-party, account numbers, sensitive digital information and identifiers, information subject to confidentiality agreements or provisions other than this Protective Order, and other non-public research, development, or commercial information that derives value or avoids injury by virtue of not being known to the public.

1.2    This "Action" is defined and hereby means any contested matter arising in the main bankruptcy case and in all adversary proceedings filed by or against Trustee, present and future.

1.3    "Designating Party" means a Party or non-party that designates Confidential Information during the Action.

1.4    "Receiving Party" means a Party that receives Confidential Information during the Action.

2

1.5    "Party" or "Parties" means person or entity subject to this Protective Order.

**2.    SCOPE OF THIS PROTECTIVE ORDER**

2.1    Unless otherwise ordered, this Protective Order shall govern certain documents and other products of discovery obtained in the Action from the Parties there to, and from third parties. As well as certain information copied or derived therefrom, excerpts, summaries or compilations thereof, including, but not limited to, documents voluntarily exchanged as part of early settlement discussions, documents produced pursuant to initial disclosures, requests authorized by the Federal Rules of Civil Procedure made applicable herein by the Federal Rules of Bankruptcy Procedure, answers to interrogatories, deposition transcripts, responses to requests for production, responses to requests for admission, subpoenas, affidavits, declarations, expert reports, and other such material and information as may be produced during the course of the Action and designated as Confidential Information.

**3.    DESIGNATION OF CONFIDENTIAL INFORMATION**

3.1    This Protective Order shall govern the production and handling of any Confidential Information in this Action. Any Party or non-party who produces Confidential Information in this Action may designate it as "Confidential" or "Attorneys' Eyes Only" consistent with the terms of this Protective Order. Whenever possible, the Designating Party must designate only those portions of a document, written discovery responses, deposition, transcript, or other material that contain the Confidential Information and refrain from designating entire documents. Regardless of any designations made hereunder, the Designating Party is not otherwise restricted from use or disclosure of its Confidential Information outside of this Action or for any business purposes. In addition, any Party may move to modify or seek other relief from any of the terms of this Protective Order if it has first tried in writing and in good faith to resolve its needs or disputes with the other Parties or Party as the case may be under the terms of this Protective Order. Further, nothing in this Protective Order shall prevent a Party from redacting documents consistent with the Federal Rules of Civil Procedure and utilizing the documents as needed through-out the Action.

3.2    <u>Application to Non-Parties:</u> Before a non-party is given copies of documents or materials designated as Confidential Information or Attorneys' Eyes Only as permitted hereunder, it

must first sign an acknowledgment to be bound to these terms that is attached hereto as <u>Exhibit A</u>; if it fails to do so, the Parties to this Action must resolve any such dispute before making disclosure of designated information as permitted hereunder to the non-party. If a non-party wishes to make designations hereunder, it must first sign attached <u>Exhibit A.</u>

   3.3 <u>Timing and Provisional Protection:</u> Designations of Confidential Information may be made at any time. To avoid potential waiver of protection hereunder, the Designating Party should designate documents or materials containing Confidential Information at the time of production or disclosure, including on the record during the taking of any deposition. Deposition testimony will be deemed provisionally protected for a period of thirty (30) days after the transcript is released to the Parties by the court reporter, although the Parties may agree at any time to different timelines of provisional protection of information as Confidential or Attorneys' Eyes Only as part of one or more specific depositions. To retain any designations beyond the provisional period, a Designating Party must designate specific pages and lines of deposition testimony before the provisional period has expired. Such designations must be made in writing so that all counsel and court reporters may append the designation to all copies of the transcripts.

   3.4 <u>Manner of Designation:</u> Confidential Information may be designated hereunder in any reasonable manner or method that notifies the Receiving Party of the designation level and identifies with specificity the information to which the designation applies. If made verbally, the Designating Party must promptly confirm the designation in writing. Whenever possible, the Designating Party should stamp, affix, or embed a legend of "CONFIDENTIAL" or "ATTORNEYS' EYES ONLY" on each designated page of the document or electronic image that contains Confidential Information.

   **4. CHALLENGES TO DESIGNATED INFORMATION**

   4.1 In the event that a Receiving Party disagrees at any time with any designation(s) made by the Designating Party, the Receiving Party must first try to resolve such challenge in good faith on an informal basis with the Designating Party. The Receiving Party must provide written notice of the challenge and the grounds therefor to the Designating Party, who must respond in writing to the challenge within fifteen (15) days. At all times, the Designating Party carries the burden of establishing the propriety of the designation and protection level. Unless and until the challenge is

4

resolved by the Parties or ruled upon by the Court, the designated information shall remain protected under this Protective Order. The failure of any Receiving Party to challenge a designation does not constitute a concession that the designation is proper or an admission that the designated information is otherwise competent, relevant, or material.

**5.** **LIMITED ACCESS/USE OF PROTECTED INFORMATION**

5.1    Restricted Use: Information that is produced or exchanged in the course of the Action and designated under this Protective Order may be used for preparation for trial and preparation for any appeal of any and all matters in the Action, as well as related settlement negotiations, and for no other purpose, without the written consent of the Designating Party. No Confidential Information may be disclosed to any person except in accordance with the terms of this Protective Order, unless the parties are co-counsel or have entered into joint defense agreements. All persons in possession of Confidential Information agree to exercise reasonable care with regard to the custody, use, or storage of such information to ensure that its confidentiality is maintained. This obligation includes, but is not limited to, the Receiving Party providing to the Designating Party prompt notice of the receipt of any subpoena that seeks production or disclosure of any designated information and consulting with the Designating Party before responding to the subpoena. Any use or disclosure of Confidential or Attorneys' Eyes Only information in violation of the terms of this Protective Order may subject the disclosing person or party to sanctions.

5.2    Access to "Confidential" Information: The Party(ies) and all persons subject to this Protective Order agree that information designated as "CONFIDENTIAL" may only be accessed or reviewed by the following:

a)    The Court, its personnel, and court reporters;

b)    Counsel of record, or co-counsel for any Party, or other party that has entered into a joint defense agreement in the Action and their employees who assist counsel of record, or co-counsel in the Action and are informed of the duties and obligations imposed hereunder;

c)    The Parties, including their clients, agents and employees who are assisting or have reason to know of the Action;

/ / /

Exhibit "1"
Page 28

d)      Experts or consultants employed by the Parties or their counsel, or co-counsel, for purposes of an Action, so long as each such expert or consultant has signed attached <u>Exhibit A;</u> and

e)      Other witnesses or persons with the Designating Party's consent or by court order.

5.3     <u>Access to "Attorneys' Eyes Only" Designations:</u> The Parties and all persons subject to this Protective Order agree that information designated as "ATTORNEYS' EYES ONLY" may only be accessed or reviewed by the following:

a)      The Court, its personnel, and court reporters;

b)      Counsel of record, or co-counsel for any Party, or other party that has entered into a joint defense agreement in the Action and their employees who assist counsel of record in the Action and are informed of the duties hereunder;

c)      In-house counsel for any Party in the Action and Richard A. Marshack, as Chapter 11 Trustee of The Litigation Practice Group P.C. who is informed of the duties and obligations imposed hereunder;

d)      Experts or consultants employed by the Parties or their counsel, or co-counsel for purposes of the Action,  and so long as each such expert or consultant has signed attached <u>Exhibit A;</u> and

e)      Other witnesses or persons to whom the Designating Party agrees in advance of disclosure or by court order.

5.4     <u>Non-Waiver Effect of Designations:</u> Neither the taking of, nor the failure to take, any action to enforce the provisions of this Protective Order, nor the failure to object to any designation, will constitute a waiver of any Party(ies)'s claim or defense in the Action or any other action or proceeding, including, but not limited to, a claim or defense that any designated information is or is not Confidential, is or is not entitled to particular protection, or embodies or does not embody information protectable by law.

5.5     <u>In-Court Use of Designated Information:</u> If information designated under this Protective Order will or may be offered in evidence at a hearing or trial related to any matter in the Action, then the offering party must give advance notice to the party or non-party that designated prior to offering the information so that any use or disclosure may be addressed in accordance with

6

the Court's case-management or other pre-trial order, or by a motion *in limine.* Nothing in this Protective Order shall be construed as a waiver by a Party of any objections that may be raised as to the admissibility at trial of any evidentiary materials.

## 6.    CLAW-BACK REQUESTS

6.1    <u>Failure to Make Designation:</u>  If, at any time, a Party or non-party discovers that it produced or disclosed Confidential Information without designation, it may promptly notify the Receiving Party and identify with particularity the Confidential Information to be designated and the level of designation (the claw-back notification). The Receiving Party may then request substitute production of the newly-designated information. Within thirty (30) days of receiving the claw-back notification, the Receiving Party must: (1) certify to the Designating Party it has appropriately marked or, if substitute production has been requested, destroyed all unmarked copies that it received, made, and/or distributed; and (2) if it was practicably unable to mark or destroy any information because disclosures occurred while the Receiving Party was under no duty of confidentiality under the terms of this Protective Order regarding that information, the Receiving Party must reasonably provide as much information as practicable to aid the Designating Party in protecting the information, consistently with the Receiving Party's attorney-client, work-product, and/or trial-preparation privileges.

6.2    <u>Inadvertent Production of Privileged Information:</u> If, at any time, a Party discovers that it produced information that it reasonably believes is subject to protection under the attorney/client, work-product, or trial-preparation privileges, then it must promptly notify each Receiving Party of the claim for protection, the basis for it, amend its privilege log accordingly, and comply with Fed. R. Civ. P. 26(b)(5). Whenever possible, the producing party must produce substitute information that redacts the information subject to the claimed protection. The Receiving Party must thereupon comply with Fed. R. Civ. P. 26(b)(5)(B) as to the information subject to the claimed protection.

/ / /

/ / /

/ / /

**7.    DURATION/CONTINUED RESTRICTIONS**

7.1    <u>Handling of Designated Information Upon Conclusion of the Main Bankruptcy Case:</u> Upon conclusion of the Main Bankruptcy Case, by way of dismissal or closing of the case, the Designating Party(ies) is/are responsible for ensuring that any Party or person to whom the Designating Party shared or disclosed designated information in any of the matters under the Action returns or destroys all of its copies, regardless of the medium in which it was stored. No witness or Party may retain designated information that it received from any other Party or non-party under this Protective Order; only counsel of record, or co-counsel, are the authorized agents who may retain one copy for their respective legal files, and who must also describe to the Designating Party the extra steps taken to protect its legal file containing paper and/or electronic copies of the designated information so that it is not accessed, used, or disclosed inconsistently with the obligations under this Protective Order. This provision does not apply to the Court or Court staff. Moreover, this provision does not apply to Trustee, who may retain and use – consistent with this Order – Confidential Information received in any Action during the entirety of the Bankruptcy.

7.2    <u>Continued Restrictions Under this Protective Order:</u> The restrictions on disclosure and use of Confidential Information shall survive the conclusion of the Bankruptcy case and any matter in the Action.

**8.    PRIVILEGED OR PROTECTED INFORMATION**

8.1    Nothing in this Protective Order shall require disclosure of information that is protected by the attorney-client privilege, the work-product protection, or any other legally cognizable privilege (a "Privilege or Protection").  If information subject to a claim of Privilege or Protection is inadvertently produced, pursuant to Federal Rule of Evidence 502(d) such production shall not constitute a waiver of, or estoppel as to, any claim of Privilege or Protection for such information or any other information that may be protected from disclosure by a Privilege or Protection in any proceeding.

8.2    If a Party receives a document that appears to be subject to a Privilege or Protection, then it shall refrain from examining the document any more than is essential to ascertain if it is privileged or protected and shall promptly notify the producing Party in writing that the receiving

8

Party possesses material that appears to be subject to a Privilege or Protection. The producing Party shall have seven (7) days after receiving such notice to assert a Privilege or Protection over the identified material. If the producing Party does not assert a claim of Privilege or Protection within the seven (7)-day period, the material in question shall be deemed not privileged or protected.

8.3     If a producing Party has produced a document subject to a claim of Privilege or Protection, upon written request by the producing Party, the document for which a claim of Privilege or Protection is made shall be sequestered or destroyed to the extent reasonably practicable, and the receiving Party shall not use the document for any purpose other than in connection with analyzing or disputing a claim of Privilege or Protection or in connection with a motion to compel the production of the document.

8.4     The receiving Party sequestering or destroying such material may then move the Court for an order compelling production of the material. The applicable producing Party bears the burden of establishing the applicable Privilege or Protection of any clawed-back document or information as and to the same extent that it would have borne such burden had it not produced the document or information.  Nothing in this Protective Order shall limit the Court's right or any receiving Party's right to request an in camera review of any information subject to a claim of Privilege or Protection.

### 

Date: June 3, 2024

Scott C. Clarkson
United States Bankruptcy Judge

1

2

3

4

5

6                                    EXHIBIT "A"

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

1  Christopher B. Ghio (State Bar No. 259094)
   Christopher Celentino (State Bar No. 131688)
2  Yosina M. Lissebeck (State Bar No. 201654)
   **DINSMORE & SHOHL LLP**
3  655 West Broadway, Suite 800
   San Diego, CA 92101
4  Telephone:  619.400.0500
   Facsimile:  619.400.0501
5  christopher.ghio@dinsmore.com
   christopher.celentino@dinsmore.com
6  yosina.lissebeck@dinsmore.com

7  Sarah S. Mattingly (Ky. Bar 94257)
   DINSMORE & SHOHL, LLP
8  101 S. Fifth Street, Suite 2500
   Louisville, KY 40202
9  Telephone: 859-425-1096
   Facsimile: 502-585-2207
10 Sarah.mattingly@dinsmore.com
   (Admitted pro hac vice)
11
   Special Counsel to Richard A. Marshack,
12 Chapter 11 Trustee

13

14                **UNITED STATES BANKRUPTCY COURT**

15                **CENTRAL DISTRICT OF CALIFORNIA**

16

17
   In Re                              Case No. 8:23-BK-10571-SC
18
                                      Chapter 11
19
   The Litigation Practice Group P.C.,  **EXHIBIT A TO STIPULATED**
20                                        **ORDER**
                Debtor(s),
21                                     Date:   May 23, 2024
22                                     Time:   1:30 p.m.
                                       Judge:  Hon. Scott C. Clarkson
23                                     Place:  Courtroom 5C[1] - Via Zoom
24                                             411 W. Fourth Street
                                               Santa Ana, CA  92701
25

26

27  ──────────────────
    [1] Video and audio connection information for each hearing will be provided on Judge Clarkson's
28   publicly posted hearing calendar, which may be viewed online at:
     http://ecf-ciao.cacb.uscourts.gov/CiaoPosted/?jid=SC.

1  This is to certify that:

2      (a)    I am being given access to Confidential Information pursuant to the

3  Stipulated Protective Order that was entered into the main bankruptcy case for

4  Litigation Practice Group, but which is binding and controlling as set forth by the

5  Court's Order on any and all contested matters and  any and all litigation commenced

6  by Trustee;

7      (b)    I have read the Stipulated Protective Order; and

8      (c)    I agree to be bound by the terms and conditions thereof, including,

9  without limitation, to the obligations regarding the use, non-disclosure and return of

10  such Confidential Information. I further agree that in addition to being contractually

11  bound by the Stipulated Protective Order, I am subject to the jurisdiction of the above

12  reference Court for any violation thereof.

13

14  Date: _____

15

16                                    _____
                                              Signature

17

18                                    _____
19                                              Printed Name

20

21

22

23

24

25

26

27

28

# Exhibit 2



*Legal Counsel.*

DINSMORE & SHOHL LLP
655 West Broadway, Suite 800
San Diego, CA 92101
www.dinsmore.com

Yosina Lissebeck
(619) 400-0473 (direct) · (619) 400-0501 (fax)
Yosina.Lissebeck@Dinsmore.com

*VIA U.S. Mail Only*

October 9, 2024

Countdown Capital Inc.
Corey Bell-Wheelans, Registered Agent
3347 Michelson Drive Suite 400
Irvine, CA 92612

   Re: *In re The Litigation Practice Group P.C.*
     U.S. Bankruptcy Court, Central District of California
     Case No. 8:23-bk-10571-SC

Dear Sir/Madam:

This constitutes a demand to provide any and all documents and information evidencing the basis for, accounting of, and any defenses to my client's claims to avoid and recover, the transfers to Countdown Capital Inc. from The Litigation Practice Group P.C. ("Debtor").

This firm represents Richard A. Marshack, Chapter 11 Trustee for the bankruptcy estate of The Litigation Practice Group P.C. and liquidating trustee of the LPG Liquidation Trust (collectively, "Trustee") in the above-referenced bankruptcy case. Pursuant to 11 U.S.C. § 1107 and his appointment as Trustee, the Trustee has the obligation to investigate and pursue claims, including fraudulent transfers, preferential transfers, and unauthorized post-petition transfers. Under the Bankruptcy Code, the Trustee has the power to file lawsuits seeking to avoid, recover, and preserve such transfers for the benefit of the Estate. *See* 11 U.S.C. §§ 544 *et seq.*

A review of the Debtor's books and records confirms that Countdown Capital Inc. received 17 potential fraudulent conveyances totaling $288,192.62, which can be avoided and recovered by the Trustee pursuant to 11 U.S.C. §§ 544 and 548 and Cal. Civ. Code. §§ 3439.04 and 3439.05; 8 potential preferential transfers totaling $90,202.43, which can be avoided and recovered by the Trustee pursuant to 11 U.S.C. §§ 544 and 548 and Cal. Civ. Code. §§ 3439.04 and 3439.05; and 1 unauthorized post-petition transfer totaling $38,577.08, which can be avoided and recovered by the Trustee pursuant to 11 U.S.C. § 549(a).

The Trustee has been unable to determine why such transfers were made to Countdown Capital Inc., what was provided to the Debtor in exchange for such transfers, and whether defenses exist to the Trustee's claims to avoid and recover the transfers. Please respond to this letter attaching any evidence you have related to these transfers including contracts, agreements, subscriptions, invoices, and any other documentation showing the date, terms, and amounts for the transfers

Countdown Capital Inc.
October 9, 2024
Page 2

received and any documents evidencing shipment dates as to goods and services provided by
Countdown Capital Inc. to the Debtor. Documents showing the course of dealing between
Countdown Capital Inc. and the Debtor, the date of receipt of the Debtor's payment and the
amount, deposit date, and any proof of deposit for any or all of the transfers will be helpful in
determining the permissibility of the transfers and what, if any, value the Debtor received in return
for payments made to Countdown Capital Inc.

You are further notified that the claims against Countdown Capital Inc. will be governed by the
Federal Rules of Bankruptcy Procedure and the Federal Rules of Civil Procedure, which apply to
lawsuits filed in federal bankruptcy courts such as the one in the Central District of California.
Pursuant to these rules, every party to a lawsuit has a duty to preserve all evidence which could be
relevant to the suit. These obligations also arise when, as here, litigation is reasonably foreseeable.
This includes the duty to preserve all electronic evidence, such as emails discussing the incident
or related to matters at issue in the suit. This duty to preserve evidence is broad and extends to all
documents, regardless of whether the document is stored electronically (such as email) or in hard-
copy and regardless of the type of document. For example, reports, spreadsheets, photographs and
videotapes are all considered documents that must be preserved. Furthermore, the duty to preserve
this documentary evidence extends to all documents in existence as of the time you reasonably
anticipated this litigation.

To ensure that all relevant documents are preserved, you should communicate directly with all
employees who have possession or control of potentially relevant evidence, including but not
limited to personnel who deal with email retention, deletion, and archiving. You should advise
each of these employees to preserve any relevant documents in their custody. Furthermore, you
should advise all such persons that any regularly scheduled and/or automatic deletion of email or
other electronic documents must be discontinued with respect to any relevant data. In addition,
any document destruction (such as shredding of documents) must cease with respect to any
relevant documents. All relevant documents, both electronic and paper, must be preserved for the
duration of this litigation.

The deadline to respond to this request is October 25, 2024. Failure to respond and/or provide the
requested documents will likely result in the Trustee filing an adversary complaint to avoid,
recover, and preserve the subject transfers for the benefit of the Estate. If you would like to discuss
this matter, please feel free to contact me by telephone (619) 400-0500 or e-mail at
yosina.lissebeck@dinsmore.com.

Sincerely,

Yosina Lissebeck

YML/way

# Exhibit 3

In re: The Litigation Practice Group PC
Disbursement Details by Payee
4 Years Pre-Petition (03/20/2019 - 03/20/2023)

Countdown Capital Inc.

Prepared by: Grobstein Teeple LLP

| Bank Name | Account Name | Account Number | Statement Date | Transaction Date | Check Number | Memo | Debit/Charge |
|---|---|---|---|---|---|---|---|
| Bank of America | Vulcan Consulting Group LLC dba DRD | 9551 | 9/30/2022 | 9/27/2022 | | WIRE TYPE:WIRE OUT DATE:220927 TIME:1 137 ET TRN:20220927003334989 SERVICE REF007865 BNF:COUNTDOWN CAPITAL INC. ID:8001 3903695 BNF BK:FI RST REPUBLIC BANK ID:321 081 669 | 100,000.00 |
| Bank of America | Vulcan Consulting Group LLC dba DRD | 9551 | 10/31/2022 | 10/3/2022 | | WIRE TYPE:WIRE OUT DATE:221 003 TIME:1449 ET TRN:20221 003005531 44 SERVICE REF01 7284 BNF:COUNTDOWN CAPITAL INC. ID:80013903695 BNF BK:FI RST REPUBLIC BANK ID321 081669 PMT DET:407284720 | 50,000.00 |
| Bank of America | Prime Logix LLC | 9201 | 11/30/2022 | 11/4/2022 | | WIRE TYPE:WIRE OUT DATE:221104 TIME:1 456 ET TRN:20221 10400408061 SERVICE REF013152 BNF:COUNTDOWN CAPITAL INC. ID:8001 3903695 BNF BK:FI RST REPUBLIC BANK ID321081 669 PMT DET:411953352 | 1,633.28 |
| Bank of America | Prime Logix LLC | 9201 | 11/30/2022 | 11/10/2022 | | WIRE TYPE:WIRE OUT DATE:221 110 TIME:1 148 ET TRN:20221 11000335023 SERVICE REF:008920 BNF:COUNTDOWN CAPITAL INC. ID:8001 3903695 BNF BK:FI RST REPUBLIC BANK ID321 081 669 PMT DET:41 2704924 | 377.46 |
| Bank of America | Prime Logix LLC | 9201 | 11/30/2022 | 11/21/2022 | | WIRE TYPE:WIRE OUT DATE:221121 TIMEO700 ET TRN:20221118003683132 SERVICE REF005194 BNF:COUNTDOWN CAPITAL INC. ID:80013903695 BNF BK:F IRST REPUBLIC BANK ID321 081 669 PMT DET:41 3753748 | 298.86 |
| Bank of America | Prime Logix LLC | 9201 | 11/30/2022 | 11/22/2022 | | WIRE TYPE:WIRE OUT DATE:221 122 TIME:1 453 ET TRN:20221 12200409162 SERVICE REF013158 BNF:COUNTDOWN CAPITAL INC. ID:8001 3903695 BNF BK:F IRST REPUBLIC BANK ID321 081 669 PMT DET:4141 54940 | 949.52 |
| Bank of America | Prime Logix LLC | 9201 | 12/31/2022 | 12/2/2022 | | WIRE TYPE:WIRE OUT DATE:221202 TIME:1203 ETTRN20221220037 5328 SERVICE REFO1 0092 BNF:COUNTDOWN CAPITAL INC. ID:80013903695 BNF BK:F IRST REPUBLIC BANK ID:321 081669 PMT DET:41 5692954 | 1,981.79 |
| Bank of America | Vulcan Consulting Group LLC dba DRD | 9551 | 12/31/2022 | 12/6/2022 | | WIRE TYPE:WIRE OUT DATE:221 206 TIME:1 411 ET TRN:20221 20600395907 SERVICE REF:010881 BNF:COUNTDOWN CAPITAL INC. ID:80013903695 BNF BK:F IRST REPUBLIC BANK ID:321 081669 PMT DET:543z9WX0D POP Services | 40,000.00 |
| Bank of America | Prime Logix LLC | 9201 | 12/31/2022 | 12/9/2022 | | WIRE TYPE:WIRE OUT DATE:221 209 TIME:1 149 ET TRN:20221209003329661 SERVICE REF008758 BNF:COUNTDOWN CAPITAL INC. ID:8001 3903695 BNF BK:F IRST REPUBLIC BANK ID:321 081 669 PMT DET:41 6663420 | 2,749.28 |
| Bank of America | Prime Logix LLC | 9201 | 12/31/2022 | 12/23/2022 | | WIRE TYPE:WIRE OUT DATE:221 223 TIME:1051 ETTRN:20221223003385796 SERVICE REF009192 BNF:COUNTDOWN CAPITAL INC. ID:80013903695 BNF BK:F IRST REPUBLIC BANK ID321 081 669 PMT DET:41 8568270 | 2,987.02 |
| Bank of America | Prime Logix LLC | 9201 | 12/31/2022 | 12/29/2022 | | WIRE TYPE:WIRE OUT DATE:221229 TIME:1229 ETTRN:20221229003977767 SERVICE REF:01 2047 BNF:COUNTDOWN CAPITAL INC. ID:8001 3903695 BNF BK:F IRST REPUBLIC BANK ID:321 081 669 PMT DET:41 9226542 | 3,413.41 |
| Bank of America | Prime Logix LLC | 9201 | 1/31/2023 | 1/13/2023 | | WIRE TYPE:WIRE OUT DATE:2301 13 TIME:1 544 ET TRN:20230113004666 1 3'SERVICE REFO1 6598 BNF:COUNTDOWN CAPITAL INC. ID:80013903695 BNF BK:F IRST REPUBLIC BANK ID321 081 669 PMT DET:421488150 | 9,291.85 |
| Bank of America | Prime Logix LLC | 9201 | 1/31/2023 | 1/31/2023 | | WIRE TYPE:WIRE OUT DATE:230131 TIME:0440 ETTRN:20230131000033045 SERVICE REF:004512 BNF:COUNTDOWN CAPITAL INC. ID:80013903695 BNF BK:F IRST REPUBLIC BANK ID:321081669 PMT DET:423519508 | 3,271.20 |
| Bank of America | Prime Logix LLC | 9201 | 2/28/2023 | 2/1/2023 | | WIRETYPE:WIRE OUT DATE:2302.01 TIME:1612 ETTRN:20230201004929478 SERVICE REFO1 6893 BNF:COUNTDOWN CAPITAL INC. ID:80013903695 BNF BK:F IRST REPUBLIC BANK ID321 081 669 PMT DET:423984662 JAN 09 TO JAN 15 | 10,607.39 |
| Bank of America | Prime Logix LLC | 9201 | 2/28/2023 | 2/10/2023 | | WIRE TYPE:WIRE OUT DATE:230201 TIME:1441 ETTRN:202302100040 6728 SERVICE REF014271 BNF:COUNTDOWN CAPITAL INC. ID:80013903695 BNF BK:F IRST REPUBLIC BANK ID321 081 669 PMT DET:425323508 INCLUDES 10018.39 | 34,631.56 |
| Bank of America | Prime Logix LLC | 9201 | 3/31/2023 | 3/2/2023 | | WIRE TYPE:WIRE OUT DATE:230302 TIME:1 336 ET TRN:20230302000423735 SERVICE REF:013117 BNF:COUNTDOWN CAPITAL INC. ID:80013903695 BNF BK:F IRST REPUBLIC BANK ID:321 081 669 PMT DET:4281 5123# FEE TO MARKETER | 5,000.00 |
| Bank of America | Vulcan Consulting Group LLC dba DRD | 9551 | 3/31/2023 | 3/14/2023 | | WIRE TYPE:WIRE OUT DATE:230314 TIME:1 022 ET TRN:20230314002884 1 2 SERVICE REF:006222 BNF:COUNTDOWN CAPITAL INC. ID:8001 3903695 BNF BK:FI RST REPUBLIC BANK ID321 081 669 PMT DET:429695596 | 21,000.00 |
| | | | | | | | **288,192.62** |

DRAFT FORM - SUBJECT TO CHANGE

Exhibit "3"
Page 40

# Exhibit 4

In re: The Litigation Practice Group PC
Disbursement Details by Payee
90 Days Pre-Petition (12/20/2022 - 03/20/2023)

Countdown Capital Inc.

GROBSTEIN TEEPLE

| Bank Name | Account Name | Account Number | Statement Date | Transaction Date | Check Number | Debit/Charge | Memo |
|---|---|---|---|---|---|---|---|
| Bank of America | Prime Logix LLC | 9201 | 12/31/2022 | 12/23/2022 | | 2,987.02 | WIRE TYPE:WIRE OUT DATE:221 223 TIME:1051 ET TRN:2022122230038S796 SERVICE REF:009192 BNF:COUNTDOWN CAPITAL INC. ID:80013903695 BNF BK:F IRST REPUBLIC BANK ID321 081669 PMT DET:41 8568270 |
| Bank of America | Prime Logix LLC | 9201 | 12/31/2022 | 12/29/2022 | | 3,413.41 | WIRETYPE:WIRE OUT DATE:221229 TIME:1229 ET TRN:2022122900397767 SERVICE REF:01 2047 BNF:COUNTDOWN CAPITAL INC. ID:80013903695 BNF BK:F IRST REPUBLIC BANK ID:321 081 669 PMT DET:41 9226542 |
| Bank of America | Prime Logix LLC | 9201 | 1/31/2023 | 1/13/2023 | | 9,291.85 | WIRE TYPE:WIRE OUT DATE2301 13 TIME1 S44 ET TRN:2023011 30046661 3 SERVICE REF01 6598 BNF:COUNTDOWN CAPITAL INC. ID:80013903695 BNF BK:F IRST REPUBLIC BANK ID321 081 669 PMT DET:421488150 |
| Bank of America | Prime Logix LLC | 9201 | 1/31/2023 | 1/31/2023 | | 3,271.20 | WIRETYPE:WIRE OUT DATE:230131 TIME:0440 ET TRN:2023013100033045 SERVICE REF:004512 BNF:COUNTDOWN CAPITAL INC. 10:80013903695 BNF BK:F IRST REPUBLIC BANK 10:3210816669 PMT DET:42351 9508 |
| Bank of America | Prime Logix LLC | 9201 | 2/28/2023 | 2/1/2023 | | 10,607.39 | WIRETYPE:WIRE OUT DATE:230201 TIME1612 ET TRN:2023020100049247B SERVICE REF01 6893 BNF:COUNTDOWN CAPITAL INC. ID:80013903695 BNF BK:F IRST REPUBLIC BANK ID321 081669 PMT DET:423984662 JAN 09 TO JAN 15 |
| Bank of America | Prime Logix LLC | 9201 | 2/28/2023 | 2/10/2023 | | 34,631.56 | WIRE TYPE:WIRE OUT DATE:23021OTIME:1441 ET TRN:2023021000406728 SERVICE REF014271 BNF:COUNTDOWN CAPITAL INC. ID:80013903695 BNF BK:F IRST REPUBLIC BANK 1D321 081 669 PMT DET:42532SS08 INCLUDES 10018.39 |
| Bank of America | Prime Logix LLC | 9201 | 3/31/2023 | 3/2/2023 | | 5,000.00 | WIRE TYPE:WIRE OUT DATE:230302 TIME:1 336 ET TRN:20230302004237SS SERVICE REF:013117 BNF:COUNTDOWN CAPITAL INC. ID:80013903695 BNF BK:F IRST REPUBLIC BANK 10:321 081 669 PMT DET:4281 S1234 FEE TO MARKETER |
| Bank of America | Vulcan Consulting Group LLC dba DRD | 9551 | 3/31/2023 | 3/14/2023 | | 21,000.00 | WIRE TYPE:WIRE OUT DATE2303314 TIME1 022 ET TRN:2023031400284412 SERVICE REF:006222 BNF:COUNTDOWN CAPITAL INC ID:8001 3903695 BNF BK:F IRST REPUBLIC BANK 1D321 081 669 PMT DET:429695596 |
| | | | | | | **90,202.43** | |

DRAFT FORM - SUBJECT TO CHANGE

Exhibit "4"
Page 42

# Exhibit 5

In re: The Litigation Practice Group PC
Summary of Disbursements
Post-Petition Activity (3/20/2023 - Present)

Countdown Capital Inc.

| Bank Name | Account Type | Account Name | Account Number | Statement Date | Transaction Date | Check Number | Debit/Charge | Memo |
|---|---|---|---|---|---|---|---|---|
| Bank of America | Checking | Prime Logix LLC | 9201 | 3/31/2023 | 3/24/2023 | | 38,577.08 | WIRE TYPE:WIRE OUT DATE:230324 TIME:1603 ET TRN:20230324005088 99 SERVICE REF:015866 BNF:COUNTDOWN CAPITAL INC. ID:8001390369 5 BNF BK:FIRST REPUBLIC BANK ID:321081 669 PMT DET:431154426 |
| | | | | | | | **38,577.08** | |

DRAFT FORM - SUBJECT TO CHANGE

1 of 1

B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

**PLAINTIFFS**
RICHARD A. MARSHACK, Former Chapter 11 Trustee, for the Bankruptcy Estate of Debtor The Litigation Practice Group P.C. and Current Liquidating Trustee of the LPG Liquidation Trust

**DEFENDANTS**
COUNTDOWN CAPITAL, INC., a Wyoming corporation; and CORY BELL-WHEELANS, individually

**ATTORNEYS** (Firm Name, Address, and Telephone No.)
Christopher Celentino
Yosina M. Lissebeck
Richard Porotsky (pro hac vice)
Cara Daggitt (pro hac vice)

Dinsmore & Shohl LLP
655 West Broadway, Suite 800
San Diego, California 92101
619.400.0500

**ATTORNEYS** (If Known)

**PARTY** (Check One Box Only)
☐ Debtor     ☐ U.S. Trustee/Bankruptcy Admin
☐ Creditor   ☐ Other
☒ Trustee

**PARTY** (Check One Box Only)
☐ Debtor     ☐ U.S. Trustee/Bankruptcy Admin
☐ Creditor   ☐ Other
☐ Trustee

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
(1) Avoidance, Recovery, and Preservation of 2-Year Actual Fraudulent Transfers; (2) Avoidance, Recovery, and Preservation of 2-Year Constructive Fraudulent Transfers; (3) Avoidance, Recovery, and Preservation of 4-Year Actual Fraudulent Transfers; (4) Avoidance, Recovery, and Preservation of 4-Year Constructive Fraudulent Transfers; (5) Avoidance, Recovery, and Preservation of Preferential Transfer; (6) Turnover; and (7) Aiding and Abetting

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☒ 11-Recovery of money/property - §542 turnover of property
☒ 12-Recovery of money/property - §547 preference
☒ 13-Recovery of money/property - §548 fraudulent transfer
☒ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand  $ 326,769.70 |

Other Relief Sought
Disallowing Defendant's Proof of Claim

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>The Litigation Practice Group P.C. | BANKRUPTCY CASE NO.<br>8:23-bk-10571-SC | |
| DISTRICT IN WHICH CASE IS PENDING<br>Central District of California | DIVISION OFFICE<br>Santa Ana | NAME OF JUDGE<br>Hon. Scott C. Clarkson |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | |
| DATE<br><br>2/25/2025 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br><br>/s/ Richard Porotsky | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.