CHRISTOPHER CELENTINO (131688)
Christopher.Celentino@dinsmore.com
YOSINA M. LISSEBECK (201654)
Yosina.Lissebeck@dinsmore.com
CHRISTOPHER B. GHIO (259094)
Christopher.Ghio@dinsmore.com
**DINSMORE & SHOHL LLP**
655 West Broadway, Ste 800
San Diego, California 92101
Tele: (619) 400-0500
Fax:  (619) 400-0501

JOSHUA I. MARRONE (Co. Bar 58503)
Joshua.marrone@dinsmore.com
JEANA M. MASON (Co. Bar 54302)
Jeana.mason@dinsmore.com
**DINSMORE & SHOHL LLP**
1775 Sherman St. Ste 2600
Denver, CO 80203
Tele: (303) 831-6958
Fax:  (303) 296-0344
(Admitted pro hac vice)

Attorneys for Richard A. Marshack, Plaintiff and Trustee of the LPG Liquidation Trust

### UNITED STATES BANKRUPTCY COURT

### CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION

| | |
|---|---|
| In re: | CHAPTER 11 |
| The Litigation Practice Group P.C., | Case No. 8:23-bk-10571-SC |
| Debtor. | Adv. Proc. No. _____ |
| | **COMPLAINT FOR:** |
| Richard A. Marshack, Trustee of the LPG Liquidation Trust, | **(1) AVOIDANCE, RECOVERY, AND PRESERVATION OF 2-YEAR ACTUAL FRAUDULENT TRANSFERS;** |
| Plaintiff, | |
| v. | **(2) AVOIDANCE, RECOVERY, AND PRESERVATION OF 2-YEAR CONSTRUCTIVE FRAUDULENT TRANSFERS;** |
| Herret Credit Consultants, Inc., a Utah Corporation and Thomas Kyle Herret, individually | |
| | **(3) AVOIDANCE, RECOVERY, AND PRESERVATION OF 4-YEAR ACTUAL FRAUDULENT TRANSFERS;** |
| Defendants. | |
| | **(4) AVOIDANCE, RECOVERY, AND PRESERVATION OF 4-YEAR CONSTRUCTIVE FRAUDULENT TRANSFERS;** |

**(5) AVOIDANCE, RECOVERY AND PRESERVATION OF PREFERENTIAL TRANSFER MADE WITHIN NINETY DAYS OF THE PETITION DATE;**

**(6) TURNOVER;**

**(7) DISALLOWANCE OF CLAIMS; AND**

**(8) AIDING AND ABETTING AGAINST THOMAS KYLE HERRET**

Judge:    Hon. Scott C. Clarkson

For his *Complaint for (1) Avoidance, Recovery, and Preservation of 2-Year Actual Fraudulent Transfers; (2) Avoidance, Recovery, and Preservation of 2-Year Constructive Fraudulent Transfers; (3) Avoidance, Recovery, and Preservation of 4-Year Actual Fraudulent Transfers; (4) Avoidance, Recovery, and Preservation of 4-Year Constructive Fraudulent Transfers; (5) Avoidance, Recovery, and Preservation of Preferential Transfer; (6) Turnover; (7) Disallowance of Claim; and (8) Aiding and Abetting* ("Complaint"), Plaintiff Richard A. Marshack, the former Chapter 11 Trustee and current trustee of the LPG Liquidation Trust ("Trustee" or "Plaintiff") for the bankruptcy estate ("Estate") of debtor The Litigation Practice Group P.C. ("Debtor" or "LPG") in the above-captioned bankruptcy case ("Bankruptcy Case"), alleges and avers as follows:

**STATEMENT OF JURISDICTION, NATURE OF PROCEEDING, AND VENUE**

1.    This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 157(b)(2)(A), (E), (H) and (O), 1334(b), and General Order No. 13-05 of the District Court for the Central District of California because this is a core proceeding arising in and/or related to the Bankruptcy Case, which is a case under Chapter 11 of Title 11 of the United States Code ("Bankruptcy Code"), and which is pending in the United States Bankruptcy Court for the Central District of California, Santa Ana Division ("Bankruptcy Court"). Additionally, Herret Credit has consented to jurisdiction of this Court pursuant to its filing of the Proof of Claim (as defined herein).

2.    Regardless of whether this proceeding is core, non-core, or otherwise, Plaintiff consents to the entry of a final order and judgment by the Bankruptcy Court.

3.      Defendant is notified that Rule 7008 of the Federal Rules of Bankruptcy Procedure requires Defendant to plead whether consent is given to the entry of a final order and judgment by the Bankruptcy Court.

4.      Venue of this adversary proceeding properly lies in this judicial district pursuant to 28 U.S.C. § 1409(a) because this proceeding is related to Debtor's pending Bankruptcy Case.

## THE PARTIES

5.      Plaintiff is Richard A. Marshack, the former Chapter 11 Trustee for the bankruptcy estate ("Estate") of debtor The Litigation Practice Group P.C. ("Debtor" or "LPG") and current liquidating trustee of the LPG Liquidation Trust (collectively, "Trustee" or "Plaintiff").

6.      Debtor LPG is, and at all material times was, a professional corporation organized, existing, and in good standing under the laws of the State of California, with its principal place of business in Tustin, California.

7.      Defendant, Herret Credit Consultants, Inc. ("Herret Credit"), is, and at all material times represented that it was, a corporation existing under the laws of the State of Utah.

8.      Upon information and belief, Defendant Thomas Kyle Herret ("Herret") is, and at all material times was, an individual residing in the State of Utah. Defendant Herret owned, operated, managed, and/or controlled Defendant Herret Credit.

9.      Defendant Herret Credit may be served by first class mail postage prepaid upon its registered agent for service of process, Thomas Herret, 1946 N. Sunset Mesa Loop, Washington, UT 84780.

10.      Defendant Herret may be served by first class mail postage prepaid to his residence at 1946 N. Sunset Mesa Loop, Washington, UT 84780.

## GENERAL ALLEGATIONS

**A.      The Bankruptcy Case**

9.      On March 20, 2023 ("Petition Date"), Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, commencing the Bankruptcy Case.

10.      Tony Diab ("Diab") is, and at all relevant times was, an individual who operated, dominated and controlled LPG.

11.    Diab made the decision for LPG to file for bankruptcy in order to avoid numerous pending lawsuits.

12.    The Office of the United States Trustee ("UST") filed its *Motion by United States Trustee to Dismiss or Convert Case Pursuant to 11 U.S.C. § 1112(b)* [Bankr. Docket No. 21] and creditors Debt Validation Fund II, LLC; MC DVI Fund 1, LLC; and MC DVI Fund 2, LLC filed the *Motion by DVF and MC DVI to Dismiss Chapter 11 Case Pursuant to 11 U.S.C. §§ 105, 305, 349, & 1112, or in the Alternative Convert This Case to Chapter 7 or Appoint a Trustee* [Bankr. Docket No. 44]. On May 4, 2023, the Court entered its *Order Directing United States Trustee to Appoint Chapter 11 Trustee* [Bankr. Docket No. 58].

13.    Pursuant to the *Acceptance of Appointment as Chapter 11 Trustee* [Bankr. Docket No. 63], on May 8, 2023, Trustee accepted his appointment as the Chapter 11 Trustee in the Bankruptcy Case. The Court approved the Trustee's appointment in its *Order Approving the U.S. Trustee's Application for the Appointment of a Chapter 11 Trustee* [Docket No. 65].

14.    Pursuant to the Order Confirming Modified First Amended Joint Chapter 11 Plan of Liquidation entered September 9, 2024, and the Notice of Occurrence of Effective Date of Modified First Amended Joint Chapter 11 Plan of Liquidation filed September 24, 2024, Richard A. Marshack became the Liquidating Trustee of the LPG Liquidation Trust, effective September 24, 2024.  [Bankr. Docket Nos. 1646 & 1762].

15.    Trustee was not appointed until after events of the case and, therefore, bases these allegations on information and belief. *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017) ("The *Twombly* plausibility standard . . . does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible."); *Miller v. City of Los Angeles*, 2014 U.S. Dist. LEXIS 198871, 2014 WL 12610195, at *5 (C.D. Cal. Aug. 7, 2014) (recognizing that the plaintiff's "information and belief" pleading was allowed and "necessary at times"); *see also Mireskandari v. Daily Mail and General Trust PLC*, 2013 U.S. Dist. LEXIS 194437, 2013 WL 12129642, at *4 (C.D. Cal. July 31, 2013) ("The Federal Rules of Civil Procedure allow parties to plead facts on 'information and belief'

4

if the facts 'will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.'" (citations omitted)).

16.　　All claims have been transferred to the Liquidating Trust pursuant to the confirmed plan and Plaintiff brings this action solely in his capacity as the Chapter 11 Trustee for the benefit of Debtor's Estate and its creditors.

**B.　　Protective Order**

17.　　On or about May 2, 2024, Plaintiff filed that certain Notice and Motion for Entry of Protective Order (the "Protective Order Motion"). On June 3, 2024, the Court entered its Order Granting Motion for Entry of Protective Order and the Protective Order [Docket No. 1270] (the "Protective Order").

18.　　By its own terms, the Protective Order applies to this adversary proceeding and governs all discovery conducted herein.

**C.　　LPG**

19.　　LPG operated a law firm for consumers across the country who sought assistance in contesting or resolving debts they would identify.

20.　　The consumers would pay LPG over a period of time via monthly debits via ACH pulls from their bank accounts.

21.　　The monthly payments were meant to cover all legal services LPG provided to the consumers including validation of the debts, review of documents to determine enforceability, and court appearances to halt lawsuits to obtain judgments.

22.　　In certain instances, LPG would file a lawsuit in an effort to eliminate a disputed debt or to prosecute affirmative claims held by the consumers.

23.　　LPG mismanaged the consumers' monthly payments.

24.　　Diab and others devised a plan to fraudulently transfer funds, client files, client funds and assets in the form of ACH Receivables (the "ACH Receivables" or "Accounts Receivable") out of LPG to third parties prior to the filing of bankruptcy.

25.　　To obtain consumer clients, LPG contracted with marketing companies, who engaged in illegal capping and would advertise or call to solicit consumers to become clients of LPG

in exchange for a percentage of the ACH Receivables collected by LPG from the consumers. The marketing affiliate went so far as to assist with the execution of an engagement letter between the consumer and LPG.

26.    In exchange, LPG agreed to pay the marketing affiliates a percentage the monthly payments collected by LPG from the consumers.

27.    Because LPG received payments from consumers over time, it often sought financing by borrowing against its future cash flows. This borrowing not only was used to finance operations at LPG, but also to pay fees owed to the marketing companies for providing client referrals.

28.    Many of the documents executed in connection with such financing described the transactions as accounts receivable purchase agreements.

29.    Diab used entities he controlled including, without limitation, Vulcan Consulting Group, Coast Processing, PrimeLogix, LLC, LGS Holdco, LLC,  and/or Maverick Management LLC to divert LPG consumer funds and ACH Receivables. Diab would use numerous ACH processing companies in order to easily transfer millions of dollars from Debtor to these entities he  controlled,  without oversight or detection, and to avoid payment disputes and complications. The money that flowed from Debtor through these bank account to Defendants consisted of Client Funds that Debtor funneled to these entities by means of the ACH processing companies.  Debtor also made deposits into these entities bank account such that they received Client Funds directly from Debtor in addition to future Accounts Receivable.

**D.    LPG's Ponzi Scheme**

30.    Debtor was running a Ponzi scheme that utilized the Defendants and others as a facilitator and investor, and the Debtor attracted new investors by making Transfers to them using the funds provided by another investor, thereby continuing the Ponzi scheme with each new investor that the Debtor could find.

31.    Moreover, since the Transfers were made with the intent to further the Ponzi scheme, the Debtor did not receive an objectively reasonable equivalent value for the Transfers, and the Trustee can avoided the Transfers because they were preferential and fraudulent.

### E.     Defendant Herret Credit

32.     Defendant Herret Credit was the entity in charge of recruiting and managing the marketing companies that procured consumer clients for LPG.

33.     LPG agreed to pay, and in fact paid, Defendant Herret Credit a portion of the monthly payments received from consumers and marketing companies referred by Defendant Herret Credit.

34.     On or about December 27, 2022, Debtor entered into an Independent Contractor Agreement with Defendant Herret Credit ("Agreement"). A true and accurate copy of the Agreement is attached as **Exhibit 1**, and incorporated here.

35.     The Agreement states that Defendant Herret Credit "will provide the following services (collectively, the "Services"): Recruitment of marketing floors to sell the validation product serviced by Recipient." *See* **Ex. 1**.

36.     Pursuant to the Agreement, Defendant Herret Credit recruited affiliates who would generate leads consisting of consumers interested in the legal services offered by LPG and referred those consumers to Debtor. *See* **Ex. 1**.

37.     Pursuant to the Agreement, Debtor agreed to pay Defendant Herret Credit as follows:

A commission of 2.5% of all fees generated from a referral of floors, and a 1.5% commission for all floors serviced, up to a maximum of $25,000.00 per week, for an annual total of $1,300,000.00.

*See* **Ex. 1**.

38.     The Agreement violates Sections 6151 and 6155 of the California Business and Professional Code, which prohibit referrals of potential clients to attorneys unless registered with the State Bar of California. Cal. Bus. & Prof. Code § 6155. "Referral activity" includes "any entity 'which, in person, electronically, or otherwise, refers the consumer to an attorney or law firm not identified' in the advertising." *Jackson v. LegalMatch.com*, 42 Cal. App. 5th 760, 775 (2019). A referral includes receiving information from potential clients and sending that information to lawyers, even when the advertiser does not advertise the name of the attorneys and the clients do not clear the name of the potential attorney after the referral occurred. *Id.*

39.     Further, if any effect of an agreement is to accomplish an unlawful purpose, the agreement may be declared illegal regardless of the intention of the parties. *Stockton Morris Plan Co. v. Cal. Tractor & Equip. Corp.*, 112 Cal. App. 2d 684, 690 (1952) (citing *Fewel & Dawes, Inc. v. Pratt*, 17 Cal. 2d 85, 91 (1941)). This remains true regardless of whether the contract has been performed. *Stevens v. Boyes Hot Springs Co.*, 113 Cal. App. 479, 483 (1931) (A contract by a corporation to purchase its own stock has the effect of illegally withdrawing and paying to a stockholder a part of the capital stock of the corporation and is illegal and void, regardless of the fact that the contract is fully performed by the sellers and partially performed by the corporation.); *Mansfield v. Hyde*, 112 Cal. App. 2d 133, 139 (1952), overruled, *Fomco, Inc. v. Joe Maggio, Inc.*, 8 Cal. Rptr. 459 (1960) (Where object of statute requiring licenses is to prevent improper persons from engaging in particular activity, or is for purpose of regulating occupation or business for protection of public, imposition of penalty amounts to prohibition against engaging in occupation or business without license, and contract made by unlicensed person in violation of statute is invalid.); *Firpo v. Murphy*, 72 Cal. App. 249, 252 (1925) (A contract to pay commissions to a real estate broker is illegal and he is not entitled to recover thereon where he fails to secure the license required by law to carry on his business.).

40.     Because the Agreement violates federal and state law, it is void, unenforceable, and subject to avoidance as fraudulent.

41.     Unlawful consideration is that which is: "(1) contrary to an express provision of law; (2) contrary to the policy of express law, though not expressly prohibited; or (3) otherwise contrary to good morals." Cal. Civ. Code § 1667. "If any part of a single consideration for one or more objects, or of several considerations for a single object, is unlawful, the entire contract is void." Cal. Civ. Code § 1608.

**F.     Defendant Herret**

42.     On information and belief, Diab had a close connection and insider relationship with Defendant Herret, who was the principal of Defendant Herret Credit.

43.     At all relevant times, Defendant Herret, through Defendant Herret Credit, managed and controlled LPG's relationships and dealings with affiliate marketing companies.

8

44.     Defendant Herret, upon information and belief, individually and through Defendant Herret Credit, had knowledge of the fraudulent transfers, transactions, and agreements that were used to perpetuate and conceal the Ponzi scheme.

45.     Defendant Herret with the foregoing knowledge, intended to, and did, help Debtor in perpetuating and concealing the Ponzi scheme and fraudulent transfers of money and the continuing retention of consumer and client engagements through various marketing companies.

46.     Defendant Herret assisted, and did actually engage in, the commission of fraud, unlawful Enterprise, and Ponzi scheme by coordinating, facilitating, and executing documents in furtherance of concealing the true nature of the fraudulent and criminal activity related to the Enterprise and the Ponzi scheme.

**G.      Defendant Herret Credit's Administrative Claims**

47.     On or about November 11, 2023, Defendant Herret Credit filed a Motion asserting an unsecured administrative claim in the amount of $450,000 pursuant to 11 U.S.C. § 503 ("Claim 1"). A true and accurate copy of Claim 1 is attached as **Exhibit 2**, and incorporated here.

48.     On January 8, 2024, the Court continued the hearing on Defendant Herret Credit's Claim 1 to permit the parties to exchange documents to analyze relevant claims and defenses.

49.     In compliance with the Informal Discovery Order, Trustee made repeated requests via telephone and email to obtain evidence from Defendant Herret Credit that would support his Claim 1.

50.     The only evidence Defendant Herret Credit provided was the prepetition Independent Contractor Agreement and a text message from Russ Squires to Kyle Herret stating "No new accounts can be enrolled to any company associated with LPG per the judge at this time.  That includes LPG, Phoenix, Oakstone, CLG and Greyson."

51.     The Court ultimately dismissed Defendant Herret Credit's Claim 1 without prejudice after a hearing on December 5, 2024, there being insufficient evidence to support it.

52.     On or about September 12, 2023, Defendant Herret Credit also filed unsecured Claims 680 and 680-1 in the amount of $256,701.98. A true and correct copy of Claims 680 and 680-1 is attached as **Exhibit 3**, and incorporated here.

53. Upon information and belief, Claims 680 and 680-1 remain pending.

**H.    Payments to Defendant Herret Credit**

54. During the applicable reach-back period, Debtor paid Defendant Herret Credit the sum of at least $1,275,632.61 between July 2021 and February 2023, subject to proof at trial ("Transfers"). A true and accurate list of the known payments made by Debtor to Defendant Herret Credit is attached as **Exhibit 4**, and incorporated here.

55. An additional $125,104.23 of the Transfers from Debtor to Defendant Herret Credit occurred during the 90-day preference period ("Preference Transfers"). A true and accurate list of the payments made during the Preference Transfers is attached as **Exhibit 5**, and incorporated here.

56. The Transfers are based on updated figures as of January of 2025.

57. On or about October 23, 2024, the Trustee sent a demand letter to Defendant Herret Credit ("Demand Letter"). A true and accurate copy of the Demand Letter is attached hereto as **Exhibit 6**, and incorporated here.

58. The Demand Letter discussed applicable reach-back period and the Preference Transfers made within the 90-day period prior to the Petition Date.

59. Trustee has yet to receive any response, information, or payments from Defendant Herret Credit pursuant to the Demand Letter.

**I.    LPG's Prepetition Creditors**

60. Debtor was insolvent when each Transfer was made. This insolvency is evidenced in part by the fact that 14 separate UCC-1 statements were of record securing debts of the Debtor as of September 1, 2022. These statements remained unreleased as of the Petition Date. These statements either reflected secured liens against the Debtor's assets then owned or thereafter acquired, or provided evidence of the assignment or sale of substantial portions of the Debtor's future income.

61. When the Transfers were made, these prior UCC-1 statements secured the repayment of the following claimed amounts that are currently known to Trustee and are allegedly owed by the Debtor: (i) $2,374,004.82 owed to Fundura Capital Group as evidenced by Proof of Claim No. 335 purportedly secured by a UCC statement filed on or about May 19, 2021; (ii) approximately $15

million dollars owed to MNS Funding, LLC as evidenced by Proof of Claim No. 1060 purportedly secured by a UCC statement filed on or about May 28, 2021; (iii) approximately $5,000,000 owed to Azzure Capital, LLC as evidenced by Proof of Claim No. 127 secured by a UCC statement filed on or about May 28, 2021; and (iv) approximately $1.5 million dollars owed to Diverse Capital, LLC purportedly secured by UCC statements filed on or about September 15, 2021, and December 1, 2021.[1]

62.    As alleged above, LPG was borrowing against its assets and future income, often on unfavorable terms, not only to finance operations at LPG, but also to pay the fees owed to the Defendants and marketing affiliates for providing it with consumer clients. Pursuant to the agreements with the marketing companies, significant percentages of future payments were already promised to be paid to the marketing affiliates from whatever future income the Debtor would receive.

63.    In addition, on Debtor's Schedule E/F [Bankr. Docket No. 33], Debtor scheduled 11 unsecured creditors with priority unsecured claims totaling $374,060.04. These priority unsecured creditors include Indiana Dept. of Revenue, Dept. of Labor and Industries, Arizona Dept. of Economic Security, Arkansas Dept. of Finance & Admin., California Franchise Tax Board, Georgia Dept. of Labor, Internal Revenue Service, Mississippi Dept. of Revenue, Nevada Dept. of Taxation, Utah State Tax Commission, and Wisconsin Dept. of Revenue (collectively, "Priority Unsecured Creditors").

64.    Another group of creditors that Debtor listed on its Schedule E/F [Bankr. Docket No. 33] are nonpriority unsecured creditors. Those 58 creditors have scheduled claims totaling $141,439,158.05 and include Ajilon; Anthem Blue Cross; Azevedo Solutions Groups, Inc.; Carolina Technologies & Consulting Invoice; Collaboration Advisors; Credit Reporting Service Inc.; CT Corporation – Inv.; Debt Pay Pro; Document Fulfillment Services; EnergyCare, LLC; Exela Enterprise Solutions; First Legal Network, LLC; GHA Technologies Inc.; Harrington Electric, Inc.; Imagine Reporting; Juize, Inc.; Krisp Technologies, Inc.; Liberty Mutual; Marc Lemauviel –

---

[1] Trustee reserves all rights, claims, and defenses with respect to these and any other purported secured or unsecured claims.

Allegra; MarkSYS Holdings, LLC; Netsuite-Oracle; Pitney Bowes; Rapid Credit, Inc.; SBS Leasing A Program of De Lage Landen; Security Solutions; Sharp Business Systems; Streamline Performance, Inc.; Thomson Reuters; Twilio, Inc.; Nationwide Appearance Attorneys; Executive Center, LLC; Outsource Accelerator, Ltd.; TaskUs Holdings, Inc.; Marich Bein, LLC; Validation Partners; MC DVI Fund 1, LLC; MC DVI Fund 2, LLC; Debt Validation Fund II, LLC; Tustin Executive Center; LexisNexus; JP Morgan Chase; Business Centers of America; Michael Schwartz; Anibal Colon Jr.; Kathleen Lacey; David Ulery; Kimberly Birdsong; Kevin Carpenter; Karen Suell; Gloria Eaton; Carolyn Beech; Debra Price; Kenneth Topp; Darcey Williamson, Trustee; James Hammett; Johnny Rizo; Beverly Graham; Kathleen Scarlett; and Geneve and Myranda Sheffield (collectively, "Nonpriority Unsecured Creditors" and, together with the Secured Creditors and Priority Unsecured Creditors, "Prepetition Creditors").

65.     As of the filing of this complaint, 2543 claims have been filed with the bankruptcy Court. As of July 1, 2024, Omni Agent Solutions, has received an additional 5675 claims. While Trustee has not reviewed all claims as of the date of this complaint, and reserves all rights to object to those claims, the total amount is in excess of $500,000,000.

## FIRST CLAIM FOR RELIEF

### Count I - Avoidance, Recovery, and Preservation of Actual Fraudulent Transfers

### [11 U.S.C. §§ 548(a)(1)(A), 550, and 551]

66.     Plaintiff realleges and incorporates here by reference each and every allegation contained in paragraphs 1 through 65 as though set forth in full.

67.     The Agreement and all or a portion of the Transfers occurred within the two years prior to the Petition Date.

68.     On or after the date that such agreements were executed and the Transfers were made, entities to which Debtor was or became indebted include the Prepetition Creditors.

69.     The Transfers happened while Debtor was insolvent or rendered Debtor insolvent.

70.     Despite Debtor's obligation to the Prepetition Creditors, Debtor continued to pay Defendant Herret Credit sums received from consumers under the Agreement, which constitutes

an illegal capping agreement between Defendant Herret Credit and Debtor. Any obligation of the Debtor arising from such agreement is also avoidable as fraudulent.

71.    Despite Debtor's obligation to the Prepetition Creditors, Defendant Herret Credit continued to sell or transfer portions of its accounts receivable to Debtor, which is illegal under federal and state laws.

72.    The Transfers were made with actual intent to hinder, delay, or defraud creditors of Debtor.

73.    The Debtor's conduct was done with oppression, fraud, and malice, as defined in Civil Code section 3294, entitling the Trustee to, in addition to the actual damages, exemplary or punitive damages for making an example of the Debtor and to punish the Debtor.

74.    The Agreement and the Transfers of Debtor's funds are avoidable as fraudulent pursuant to 11 U.S.C. §§ 548(a)(1)(A), 550, 551, and the common law tort of intentional fraudulent transfers by one or more creditors who held and hold unsecured claims against Debtor that were and are allowable against the Estate under 11 U.S.C. § 502 or that were not and are not allowable only under 11 U.S.C. § 502(e), including, without limitation, the Prepetition Creditors.

75.    The Agreement and Transfers should be avoided as fraudulent under 11 U.S.C. § 548(a)(1)(A) and under the common law tort of intentional fraudulent transfers, and such transferred property, or the value thereof, should be recovered and preserved for the benefit of the Estate pursuant to 11 U.S.C. §§ 550 and 551.

## SECOND CLAIM FOR RELIEF

**Count II - Avoidance, Recovery, and Preservation of Constructive Fraudulent Transfers**

**Against Defendants**

**[11 U.S.C. §§ 548(a)(1)(B), 550, and 551]**

76.    Plaintiff realleges and incorporates here by reference each and every allegation contained in paragraphs 1 through 75 as though set forth in full.

77.    The Agreement and all or a portion of the Transfers occurred within the two years prior to the Petition Date.

78.    On or after the date that such agreements were executed and such Transfers were

made, entities to which Debtor was or became indebted include the Prepetition Creditors.

79.     The Transfers happened while Debtor:

a.      was insolvent or became insolvent as a result;

b.      was engaged or was about to engage in a transaction for which any property remaining with Debtor was of unreasonably small capital; or

c.      intended to incur, or believed that it would incur, debts beyond its ability to pay as such debts matured.

80.     Because the referrals from Defendant Herret Credit to Debtor are illegal under federal and state law, they are void and subject to avoidance as fraudulent. Any purported consideration constitutes unlawful consideration, which cannot constitute reasonably equivalent value. Thus, at the time the agreements were executed and the Transfers made, Debtor received less than reasonably equivalent value.

81.     Furthermore, the Debtor did not receive the reasonably equivalent value of the Transfers to the Defendant Herret Credit because by using the money coming through the Defendant Herret Credit to run a Ponzi scheme there is nothing in Estate for the creditors to share. Rather, the Transfers exacerbate the harm to creditors by increasing the amount of claims while diminishing the Debtor's Estate. In this situation, the use of the funds to further the Debtor's Ponzi scheme cannot be consideration for the Transfers and cannot objectively be called reasonably equivalent value.

82.     Any transfers made to the Defendant Herret Credit can be avoided by the Plaintiff since the Transfers to the investor Defendant are preferential and fraudulent such that they constitute property of the Estate in which the Plaintiff can recover.

83.     The Agreement and the Transfers should be avoided as fraudulent under 11 U.S.C. § 548(a)(1)(B), and such transferred property, or the value thereof, should be recovered and preserved for the benefit of the Estate pursuant to 11 U.S.C. §§ 550 and 551.

### THIRD CLAIM FOR RELIEF

**Count III - Avoidance, Recovery, and Preservation of Actual Fraudulent**

**Transfers Against Defendants**

**[11 U.S.C. §§ 544(b), 550, and 551; Cal. Civ. Code §§ 3439.04(a) and 3439.07]**

84.    Plaintiff realleges and incorporates here by reference each and every allegation contained in paragraphs 1 through 70 as though set forth in full.

85.    The Agreement and all or a portion of the Transfers occurred within the four years prior to the Petition Date.

86.    On or after the date that such agreements were entered and such Transfers were made, entities to which Debtor was or became indebted include the Prepetition Creditors.

87.    Despite Debtor's obligation to the Prepetition Creditors, Debtor continued to pay Defendant Herret Credit sums received from consumers under the Agreement, which constitutes an illegal capping agreement between Defendant Herret Credit and Debtor.

88.    Because the referrals from Defendant Herret Credit to Debtor are illegal under federal and state law, they are void and subject to avoidance as fraudulent. Any purported consideration constitutes unlawful consideration, which cannot constitute reasonably equivalent value. Thus, at the time the agreements were executed and the Transfers made, Debtor received less than reasonably equivalent value.

89.    The Transfers were made with actual intent to hinder, delay, or defraud creditors of Debtor.

90.    The Debtor's conduct was done with oppression, fraud, and malice, as defined in Civil Code section 3294, entitling the Trustee to, in addition to the actual damages, exemplary or punitive damages for making an example of the Debtor and to punish the Debtor.

91.    The Agreement and the Transfers of Debtor's funds are avoidable as fraudulent pursuant to 11 U.S.C. § 544(b) and Cal. Civ. Code §§ 3439.04(a) and 3439.07 by one or more creditors who held and hold unsecured claims against Debtor that were and are allowable against the Estate under 11 U.S.C. § 502 or that were not and are not allowable only under 11 U.S.C. § 502(e), including, without limitation, the Prepetition Creditors.

92.     Accordingly, the Agreement and the Transfers should be avoided as fraudulent under 11 U.S.C. §§ 544(b) and Cal. Civ. Code §§ 3439.04(a) and 3439.07, and such transferred property, or the value thereof, should be recovered and preserved for the benefit of the Estate pursuant to 11 U.S.C. §§ 550 and 551 and Cal. Civ. Code § 3439.07.

**FOURTH CLAIM FOR RELIEF**

**Count IV - Avoidance, Recovery, and Preservation of Constructive**

**Fraudulent Transfers Against Defendants**

**[11 U.S.C. §§ 544(b), 550, and 551; Cal. Civ. Code §§ 3439.05, and 3439.07]**

93.     Plaintiff realleges and incorporates here by reference each and every allegation contained in paragraphs 1 through 92 as though set forth in full.

94.     The Agreement and all or a portion of the Transfers occurred within the four years prior to the Petition Date.

95.     The Transfers happened while Debtor:

d.     was insolvent or became insolvent as a result;

e.     was engaged or was about to engage in a transaction for which any property remaining with Debtor was of unreasonably small capital; or

f.     intended to incur, or believed that it would incur, debts beyond its ability to pay as such debts matured.

96.     Because the referrals from Defendant Herret Credit to Debtor are illegal under federal and state law, the agreements are void and subject to avoidance as fraudulent. Any purported consideration constitutes unlawful consideration, which cannot constitute reasonably equivalent value. Thus, at the time the Agreement was executed and the Transfers made, Debtor received less than reasonably equivalent value.

97.     The Agreement and the Transfers of Debtor's funds are avoidable as fraudulent pursuant to 11 U.S.C. § 544(b) and Cal. Civ. Code §§ 3439.05 and 3439.07 by one or more creditors who held and hold unsecured claims against Debtor that were and are allowable against the Estate under 11 U.S.C. § 502 or that were not and are not allowable only under 11 U.S.C. § 502(e), including, without limitation, the Prepetition Creditors.

16

98.     Accordingly, the Agreement and the Transfers should be avoided as fraudulent under 11 U.S.C. §§ 544(b) and Cal. Civ. Code §§ 3439.05 and 3439.07, and such transferred property, or the value thereof, should be recovered and preserved for the benefit of the Estate pursuant to 11 U.S.C. §§ 550 and 551 and Cal. Civ. Code § 3439.07.

## FIFTH CLAIM FOR RELIEF

**Count V - Avoidance, Recovery, and Preservation of Preferential Transfer to Defendant in**

**Preference Period**

**[11 U.S.C. §§ 547, 550, and 551]**

99.     Plaintiff realleges and incorporates here by reference each and every allegation contained in paragraphs 1 through 95 as though set forth in full.

100.     Plaintiff send a demand letter to Defendant Herret Credit on October 23, 2024. *See* **Ex. 6.**

101.     Plaintiff received no response to the Demand Letter.

102.     The Preference Transfers were made for, or on account of, an antecedent debt or debts owed by LPG to Defendant Herret Credit, each of which constituted a "debt" or "claim" (as those terms are defined in the Bankruptcy Code) of Defendant Herret Credit.

103.     The Preference Transfers happened while LPG was insolvent.

104.     Debtor is also entitled to the presumption of insolvency when the Preference Transfers happened pursuant to 11 U.S.C. § 547(f).

105.     As a result of the Preference Transfers, Defendant Herret Credit recovered more than it would have received if: (i) the Debtor's case was under chapter 7 of the Bankruptcy Code; (ii) the Preference Transfers had not been made; and (iii) Defendant Herret Credit received payments of its debts under the provisions of the Bankruptcy Code. As evidenced by the Debtor's schedules filed in the underlying Bankruptcy Case, as well as the proofs of claim that have been received to date, the Debtor's liabilities exceed its assets to the point that unsecured creditors will not receive a full payout of their claims from the Debtor's Estate.

106.     In accordance with the foregoing, the Preference Transfers are voidable pursuant to 11 U.S.C. § 547(b), and may be recovered and preserved for the benefit of the estate pursuant to 11 U.S.C. §§ 550 and 551.

### SIXTH CLAIM FOR RELIEF

**Count VI - Turnover of Estate Property Against Defendants**

**[11 U.S.C. § 542]**

107.     Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 106 as though set forth in full.

108.     Defendant Herret Credit has possession or control over property of the Estate in the form of the Transfers made pursuant to illegal and unenforceable agreements.

109.     The Transfers are not of inconsequential value to the Estate.

110.     The funds that are the subject of the Transfers are paramount to Debtor's ability to pay creditors.

111.     Accordingly, Trustee is entitled to a judgment for turnover of the Transfer pursuant to 11 U.S.C. § 542.

### SEVENTH CLAIM FOR RELIEF

**Count VII - Disallowance of Claims Against Defendants**

**[11 U.S.C. § 502(d)]**

112.     Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 107 as though set forth in full.

113.     On November 11, 2023, Defendant Herret Credit filed a proof of claim as Claim No. 101403 in the amount of $450,000.

114.     On November 13, 2023, Defendant Herret Credit filed additional proof of claims, numbered 680 and 680-1, both in the amount of $256,701.98. (Collectively "Proof of Claims").

115.     The Proof of Claims amounts are based on activities from the Agreement, which included Defendant Herret Credit's unlawful procurement and management of marketing affiliates that generated leads for LPG in furtherance of the Ponzi scheme.

116.    The Court dismissed Defendant Herret Credit's administrative Claim 1 on December 4, 2024, without prejudice.

117.    Upon information and belief, Claims 680 and 680-1 remain pending.

118.    Based on Defendant Herret Credit's unlawful conduct as set forth in paragraphs 1 through 112, the Proof of Claims and any other claims having been filed or to be filed by Defendants in the Bankruptcy case should be disallowed pursuant to 11 U.S.C. § 502(d).

**EIGHTH CLAIM FOR RELIEF**

**Aiding and Abetting**

**(Against Defendant Herret)**

**[11 U.S.C. §§ 544(b), 550, AND 551; Cal. Civ. Code §§ 3439.04(a), 3439.04(b), and 3439.07]**

119.    Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 118 as though set forth in full.

120.    Defendants, based upon information and belief and based on the Ponzi Scheme Presumption, had knowledge of the fraudulent transactions, transfers and illegal agreements that were used to perpetuate and conceal the Ponzi scheme and fraudulent transfers.

121.    Defendants, with the foregoing knowledge, intended to, and did, help the Debtor in perpetuating and concealing the Ponzi scheme and fraudulent transfers of money.

122.    At all material times, Defendants had the intent to facilitate and conceal the Ponzi scheme and fraudulent transfers of money by aiding and abetting the illegal capping scheme and signing up consumer clients to keep the business going.

123.    Defendants, upon information and belief, assisted, and did actually engage in, the commission of fraud and the Ponzi scheme by coordinating, facilitating, and directing payments and transfers of monies and executing documents in furtherance of concealing the true nature of their fraudulent and criminal activity related to the Ponzi scheme.

124.    The injuries to Plaintiff, the Debtor's Estate and to its creditors directly, proximately and reasonably foreseeably resulting from and caused by violations of Sections 6151 and 6155 of the California Business and Professional Code include, without limitation, hundreds of thousands of dollars in improperly transferred and acquired monies.

125.    Plaintiff and the Debtor's Estate also suffered damages by incurring attorney's fees and costs associated with the prosecution of Defendants' unlawful activities.

## **RESERVATION OF RIGHTS**

126.    Plaintiff reserves the right to bring all other claims or causes of action that Plaintiff may have against Defendants, on any and all grounds, as allowed under the law or in equity, including but not limited to, those claims not known by the Trustee at this time but that he may discover during the pendency of this adversary proceeding.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for a judgment as follows:

**On The First, Second, Third, and Fourth Claims for Relief:**

1.    Avoiding, recovering, and preserving the Transfers against Defendant;

**On the Fifth Claim for Relief:**

2.    Avoiding, recovering, and preserving the Preference Transfers against Defendant;

**On the Sixth Claim for Relief:**

3.    Ordering Defendant to immediately turn over the Transfers and/or Preference Transfers;

**On the Seventh Claim for Relief:**

4.    Disallowing all past filed and any future claims for relief;

**On the Eighth Claim for Relief:**

5.    Awarding Plaintiff compensatory damages in an amount to be determined at trial;

**On All Claims for Relief:**

6.    Awarding costs of suit incurred here; and

7.    Granting any other and further relief as the Court deems just and proper.

[Remainder of page intentionally left blank]

1   Dated: March 12, 2025

2

Respectfully submitted,

DINSMORE & SHOHL LLP

3

4   By:  */s/Jeana M. Mason*_____

Joshua I. Marrone

5   Jeana M. Mason

Yosina M. Lissebeck

6

7   *Attorneys for Richard A. Marshack
Liquidation Trustee of the LPG Liquidation
Trust*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT 1

EXHIBIT 1 PAGE 01

DocuSign Envelope ID: 8CDF5A0B-C8E8-425S-BA1B-F61D421H55A2

# *INDEPENDENT CONTRACTOR AGREEMENT*

This Independent Contractor Agreement (this "Agreement") is made effective as of January 1, 2023, by and between The Litigation Practice Group PC (the "Recipient") and Herret Credit Consultants LLC (the "Contractor"). In this Agreement, the party who is contracting to receive the services shall be referred to as "Recipient", and the party who will be providing the services shall be referred to as "Contractor."

**1. DESCRIPTION OF SERVICES.** Beginning on January 1, 2023, the Contractor will provide the following services (collectively, the "Services"): Recruitment of marketing floors to sell the validation product serviced by Recipient.

Furthermore, the Contractor has the right of control over how the Contractor will perform the services. The Recipient does not have this right of control over how the Contractor will perform the services.

**2. PAYMENT FOR SERVICES.** The Recipient will pay compensation to the Contractor for the Services. Payments will be made as follows:

A commission of 2.5% of all fees generated from a referral of floors, and a 1.5% commission for all floors serviced, up to a maximum of $25,000.00 per week, for an annual total of $1,300,000.00.

No other fees and/or expenses will be paid to the Contractor, unless such fees and/or expenses have been approved in advance by the appropriate executive on behalf of the Recipient in writing. The Contractor shall be solely responsible for any and all taxes, Social Security contributions or payments, disability insurance, unemployment taxes, and other payroll type taxes applicable to such compensation. The Contractor has the right of control over the method of payment for services.

**3. TERM/TERMINATION.** This Agreement shall terminate automatically on December 31, 2023.

A regular, ongoing relationship of indefinite term is not contemplated. The Recipient has no right to assign services to the Contractor other than as specifically contemplated by this Agreement. However, the parties may mutually agree that the Contractor shall perform other services for the Recipient, pursuant to the terms of this Agreement.

On or before December 31, 2023, Contractor and Recipient shall negotiate a new contract for the services contemplated herein.

**4. RELATIONSHIP OF PARTIES.** It is understood by the parties that the Contractor is an independent contractor with respect to the Recipient, and not an employee of the Recipient. The Recipient will not provide fringe benefits, including health insurance benefits, paid vacation, or any other employee benefit, for the benefit of the Contractor.

1



EXHIBIT 1 PAGE 02

DocuSign Envelope ID: 8CDF5A0B-C8E3-425S-BA1B-561D43H5EA2

It is contemplated that the relationship between the Contractor and the Recipient shall be a non-exclusive one. The Contractor also performs services for other organizations and/or individuals. The Recipient has no right to further inquire into the Contractor's other activities.

**5. RECIPIENT'S CONTROL.** The Recipient has no right or power to control or otherwise interfere with the Contractor's mode of effecting performance under this Agreement. The Recipient's only concern is the result of the Contractor's work, and not the means of accomplishing it. Except in extraordinary circumstances and when necessary, the Contractor shall perform the Services without direct supervision by the Recipient.

**6. PROFESSIONAL CAPACITY.** The Contractor is a professional who uses his or her own professional and business methods to perform services. The Contractor has not and will not receive training from the Recipient regarding how to perform the Services.

**7. PERSONAL SERVICES NOT REQUIRED.** The Contractor is not required to render the Services personally and may employ others to perform the Services on behalf of the Recipient without the Recipient's knowledge or consent. If the Contractor has assistants, it is the Contractor's responsibility to hire them and to provide materials for them.

**8. NO LOCATION ON PREMISES.** The Contractor has no desk or other equipment either located at or furnished by the Recipient. Except to the extent that the Contractor works in a territory as defined by the Recipient, his or her services are not integrated into the mainstream of the Recipient's business.

**9. NO SET WORK HOURS.** The Contractor has no set hours of work. There is no requirement that the Contractor work full time or otherwise account for work hours.

**10. EXPENSES PAID BY CONTRACTOR.** The Contractor's business and travel expenses are to be paid by the Contractor and not by the Recipient.

**11. CONFIDENTIALITY.** Contractor may have had access to proprietary, private and/or otherwise confidential information ("Confidential Information") of the Recipient. Confidential Information shall mean all non-public information which constitutes, relates or refers to the operation of the business of the Recipient, including without limitation, all financial, investment, operational, personnel, sales, marketing, managerial and statistical information of the Recipient, and any and all trade secrets, customer lists, or pricing information of the Recipient. The nature of the information and the manner of disclosure are such that a reasonable person would understand it to be confidential. The Contractor will not at any time or in any manner, either directly or indirectly, use for the personal benefit of the Contractor, or divulge, disclose, or communicate in any manner any Confidential Information. The Contractor will protect such information and treat the Confidential Information as strictly confidential. This provision shall continue to be effective after the termination of this Agreement. Upon termination of this Agreement, the Contractor will return to the Recipient all Confidential Information, whether physical or electronic, and other items that were used, created, or controlled by the Contractor during the term of this Agreement.

2

EXHIBIT 1 PAGE 03

DocuSign Envelope ID: 8CDF5A0B-C8E8-425B-BA1B-561D421H55A2

This Agreement is in compliance with the Defend Trade Secrets Act and provides civil or criminal immunity to any individual for the disclosure of trade secrets: (i) made in confidence to a federal, state, or local government official, or to an attorney when the disclosure is to report suspected violations of the law; or (ii) in a complaint or other document filed in a lawsuit if made under seal.

**12. INJURIES.** The Contractor acknowledges the Contractor's obligation to obtain appropriate insurance coverage for the benefit of the Contractor (and the Contractor's employees, if any). The Contractor waives any rights to recovery from the Recipient for any injuries that the Contractor (and/or Contractor's employees) may sustain while performing services under this Agreement and that are a result of the negligence of the Contractor or the Contractor's employees. Contractor will provide the Recipient with a certificate naming the Recipient as an additional insured party.

**13. INDEMNIFICATION.** The Contractor agrees to indemnify and hold harmless the Recipient from all claims, losses, expenses, fees including attorney fees, costs, and judgments that may be asserted against the Recipient that result from the acts or omissions of the Contractor, the Contractor's employees, if any, and the Contractor's agents.

**14. NO RIGHT TO ACT AS AGENT.** An "employer-employee" or "principal-agent" relationship is not created merely because (1) the Recipient has or retains the right to supervise or inspect the work as it progresses in order to ensure compliance with the terms of the contract or (2) the Recipient has or retains the right to stop work done improperly. The Contractor has no right to act as an agent for the Recipient and has an obligation to notify any involved parties that it is not an agent of the Recipient.

**15. ENTIRE AGREEMENT.** This Agreement constitutes the entire contract between the parties. All terms and conditions contained in any other writings previously executed by the parties regarding the matters contemplated herein shall be deemed to be merged herein and superseded hereby. No modification of this Agreement shall be deemed effective unless in writing and signed by the parties hereto.

**16. WAIVER OF BREACH.** The waiver by the Recipient of a breach of any provision of this Agreement by Contractor shall not operate or be construed as a waiver of any subsequent breach by Contractor.

**17. SEVERABILITY.** If any provision of this Agreement shall be held to be invalid or unenforceable for any reason, the remaining provisions shall continue to be valid and enforceable. If a court finds that any provision of this Agreement is invalid or unenforceable, but that by limiting such provision it would become valid and enforceable, then such provision shall be deemed to be written, construed, and enforced as so limited.

**18. APPLICABLE LAW.** This Agreement shall be governed by the laws of the State of California.



EXHIBIT 1 PAGE 04

**19. SIGNATORIES.** This Agreement shall be signed by Daniel S. March on behalf of The Litigation Practice Group PC and by Kyle Herret on behalf of Herret Credit Consultants LLC. This Agreement is effective as of the date first above written.

RECIPIENT:
The Litigation Practice Group PC

By: _Daniel S March_____    Date: _12/27/2022_____
Daniel S. March
Managing Shareholder

CONTRACTOR:
Herret Credit Consultants LLC

By: _Kyle Herret_____    Date: _12/27/2022_____

Kyle Herret, Managing Member

4

EXHIBIT 1 PAGE 05

# EXHIBIT 2

EXHIBIT 2 PAGE 06

1  GASSMAN LAW
2  ERIC R. GASSMAN, (State Bar No. 260693)
   erg@gassmanlawgroup.com
3  16133 Ventura Blvd, Suite 700
   Encino, CA 91436
4  Tel. 818.206.2444

5  Attorney for Creditor, Herret Credit Consultants, LLC

6

7

8                    UNITED STATES BANKRUPTCY COURT

9        FOR THE CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

10

11 | In re,                          | Case No. 8:23-bk-10571-SC
                                     | Chapter 11
12 | THE LITIGATION PRACTICE GROUP P.C.,
                                     | MOTION FOR ALLOWANCE OF
13 |                    Debtor.      | ADMINISTRATIVE CLAIM PURSUANT
                                     | TO 11 U.S.C. § 503; DECLARATION OF
14 |                                 | KYLE HERRET IN SUPPORT

15 |                                 | DATE:  January 19, 2024
                                     | TIME:  11:00 a.m.
16 |                                 | CTRM:  5C/Via ZoomGov
                                     |        411 W. Fourth Street
17 |                                 |        Santa Ana, California, 92107

18

19

20       **TO THE HONORABLE SCOTT C. CLARKSON, UNITED STATES**

21  **BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE AND**

22  **ALL PARTIES IN INTEREST:**

23

24        Herret Credit Consultants, ("HCC"), creditor in the above-captioned Chapter 11

25  Bankruptcy Case of The Litigation Practice Group P.C. ("LPG" or "Debtor"), submits the

26  following *Motion for Allowance of Administrative Claim* in the amount of $450,000.00 pursuant

27  to 11 U.S.C. §503(b), for post-petition services managing nearly 65,000 consumer clients and a

28                                      1

EXHIBIT 2 PAGE 07

myriad of LPG affiliate firms.  In support of the Motion, HCC represents as follows:

## I.

### STATEMENT OF FACTS

In February 2021, HCC was hired to provide operational support for LPG and its network of independent companies ("LPG affiliates") which marketed LPG services to consumers with unsecured debt looking for legal assistance.   Kyle Herret, "Herret" is HCC's principal with over twenty years of operational experience with "debt resolution services."   LPG and HCC entered into an Independent Contractor Agreement wherein Herret was responsible for growing LPG's book of clients through the recruitment and management of LPG Affiliates. This included working with affiliates to develop appropriate marketing strategies, training customer representatives, addressing updating and further ensuring compliance with LPG policies and guidelines.

LPG agreed to pay HCC compensation equal to 2.5% of the weekly client payments received by LPG, up to a maximum of $25,000 per week.  A true and correct copy of the Independent Contractor Agreement is attached to the Declaration of Kyle Herret as **EXHIBIT 1**.

Under Herret's management LPG had grown from having approximately 15 affiliates and 15,000 consumer clients in 2021, to approximately fifty LPG affiliates and 65,000 consumer-clients, generating weekly revenue of approximately $4 million.

Herret further provided an immediate point of contact to address client issues such as proving timely updates on payment programs, facilitating calls with an appropriate customer service representative or LPG attorney.

2

EXHIBIT 2 PAGE 08

In the months leading up to LPG's Bankruptcy filing, Herret was fielding calls, texts and emails, from often confused or angry clients as well as LPG Affiliates on account of their case being transferred to Phoenix Law Firm.

On March 20, 2023, Debtor filed a voluntary petition under Chapter 11 of Title 11 of the United States Code, initiating bankruptcy Case No. 8:23-bk-10571-SC in the United States Bankruptcy Court for the Central District of California, Santa Ana Division.

LPG requested Herret continue providing management and support services to LPG's affiliates and the nearly 65,000 clients.

On May 4, 2023, the Court entered an "Order Directing United States Trustee to Appoint Chapter 11 Trustee." Docket No. 58.

Richard A. Marshack was appointed as the Chapter 11 trustee of the Debtor's estate. Docket Nos. 62-65.

On June 7, 2023, Trustee filed for entry of an order to approve the management agreement with Resolution Processing to take over the operations and management of client files. Russ Squires and Gary DePew's employment was approved by the Court effective as of June 2, 2023. Docket Nos. 189, 409.

In anticipation of Resolution Processing taking over the control and management, Herret was asked by Trustee's special Counsel to assist Russ Squires and Gary DePew, principals of Resolution Processing in securing the book of business and the affiliates and clients during this transition.

On July 7, 2023, Trustee filed a sale motion in the Bankruptcy seeking to sell substantially all of Debtor's assets including, leases, equipment, furniture, consumer client accounts, prepayments, legal service agreements, intellectual property, pending licenses, and

3

EXHIBIT 2 PAGE 09

certain proprietary property, all of which is defined in Section V.A. of the sale motion ("Sale Motion"). Docket No. 191.  On July 22, 2023, The Court authorized Trustee's sale of the Debtor's property. Docket No. 320.  On August 4, 2023, the sale funded and closed.

On October 13, 2023,  a stipulation setting a deadline for the filing of administrative claims that arose or accrued on or before the August 4, 2023, date that the sale closed was filed. Docket. No. 575.

Herret continued to provide services that were critical to preserving the substantial asset of the estate from March 20, 2023 up to August 4, 2023.  While Herret does not have access to the weekly revenues received by the estate, such information may be readily obtained through discovery.   However, based on the volume of clients, Herret should be entitled to weekly fee of 25,000 for the above referenced period, less two payments received by Herret in April and May. Accordingly, Herret is entitled to $450,000.

## II.

### ARGUMENT

11 U.S.C. § 503 provides, in relevant part: (b) After notice and a hearing, there shall be allowed administrative expenses, . . . (1) (A) the actual, necessary costs and expenses of preserving the estate including…A claimant must show that the debt asserted to be an administrative expense arose from a transaction with the debtor-in-possession or trustee as opposed to the preceding entity or that the claimant gave consideration to the debtor-in-possession or trustee and that the claim directly and substantially benefitted the estate. *In re DAK Indus.*, 66 F.3d 1091, 1094 (9th Cir.1995).

As of the petition date, LPG had a book of nearly 65,000 clients, generating approximately $4 million dollars in weekly revenue.  At the request of Debtor, Herret continued

4

EXHIBIT 2 PAGE 10

to diligently provide the necessary services to ensure clients were services and the revenue

remained a relative constant.  Even after Trustee took over the management,  Herret continued at

Trustee's request, to provide his services to secure the book of business and facilitate the

transition to Trustee's management.  Herret believes that as a direct result of his services

provided post-petition, the estate realized a sale of assets in excess of $5,500,000.  Accordingly,

the Court should allow an administrative expense claim based pursuant to the Independent

Contract Agreement between LPG and HCC.

## II.

## __CONCLUSION__

For the reasons set forth above, Creditor Herret Credit Consulting, respectfully requests

the Count authorize HCC's claim in the amount of $450,000 as an administrative expense claim

pursuant to 11 U.S.C. §503(b),

Dated: Nov 21, 2023                          Respectfully Submitted:

_____/s/ Eric Gassman_____
Eric R Gassman, Attorney for Creditor
Herret Credit Consultants, LLC

5

EXHIBIT 2 PAGE 11

## DECLARATION OF KYLE HERRET

I, Kyle Herret, declare as follows:

1.      In February 2021, HCC was hired to provide operational support for LPG and its network of independent companies ("LPG affiliates") which marketed LPG services to consumers with unsecured debt looking for legal assistance. I am the HCC's principal and have over twenty years of operational experience with "debt resolution services."   LPG and HCC entered into an Independent Contractor Agreement in which I was responsible for growing LPG's book of clients through the recruitment and management of LPG Affiliates. This included working with affiliates to develop appropriate marketing strategies, training customer representatives, addressing updating and further ensuring compliance with LPG policies and guidelines.

LPG agreed to pay HCC compensation equal to 2.5% of the weekly client payments received by LPG, up to a maximum of $25,000 per week.  A true and correct copy of the Independent Contractor Agreement is attached as **EXHIBIT 1**.

Under my management, LPG had grown from having approximately 15 affiliates and 15,000 consumer clients in 2021, to approximately fifty LPG affiliates and 65,000 consumer-clients, generating weekly revenue of approximately $4 million.

I further provided an immediate point of contact to address client issues such as proving timely updates on payment programs, facilitating calls with an appropriate customer service representative or LPG attorney.

EXHIBIT 2 PAGE 12

In the months leading up to LPG's Bankruptcy filing, I was fielding calls, texts and emails, from often confused or angry clients as well as LPG Affiliates on account of their case being transferred to Phoenix Law Firm.

LPG requested I continue providing management and support services to LPG's affiliates and the nearly 65,000 clients after LPG filed its Bankruptcy.

In anticipation of Resolution Processing taking over the control and management, I was asked by Trustee's special Counsel to assist Russ Squires and Gary DePew, principals of Resolution Processing in securing the book of business and the affiliates and clients during this transition.

I continued to provide services that were critical to preserving the substantial asset of the estate from March 20, 2023 up to August 4, 2023. I do not have access to the weekly revenues received by the estate, I believe such information may be readily obtained through discovery. However, based on the volume of clients, I should be entitled to the weekly fee of 25,000 for the above referenced period, less two payments I received in April and May. Accordingly, I believe I am entitled to $450,000.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this _21___ day of November, 2023 at Los Angeles, California.

KYLE HERRET

7

EXHIBIT 2 PAGE 13

# EXHIBIT 1

EXHIBIT 2 PAGE 14

DocuSign Envelope ID: 9CDF5A9B-C858-4259-8A1B-F61D4714F5A2

# *INDEPENDENT CONTRACTOR AGREEMENT*

This Independent Contractor Agreement (this "Agreement") is made effective as of January 1, 2023, by and between The Litigation Practice Group PC (the "Recipient") and Herret Credit Consultants LLC (the "Contractor"). In this Agreement, the party who is contracting to receive the services shall be referred to as "Recipient", and the party who will be providing the services shall be referred to as "Contractor."

**1. DESCRIPTION OF SERVICES.** Beginning on January 1, 2023, the Contractor will provide the following services (collectively, the "Services"): Recruitment of marketing floors to sell the validation product serviced by Recipient.

Furthermore, the Contractor has the right of control over how the Contractor will perform the services. The Recipient does not have this right of control over how the Contractor will perform the services.

**2. PAYMENT FOR SERVICES.** The Recipient will pay compensation to the Contractor for the Services. Payments will be made as follows:

A commission of 2.5% of all fees generated from a referral of floors, and a 1.5% commission for all floors serviced, up to a maximum of $25,000.00 per week, for an annual total of $1,300,000.00.

No other fees and/or expenses will be paid to the Contractor, unless such fees and/or expenses have been approved in advance by the appropriate executive on behalf of the Recipient in writing. The Contractor shall be solely responsible for any and all taxes, Social Security contributions or payments, disability insurance, unemployment taxes, and other payroll type taxes applicable to such compensation. The Contractor has the right of control over the method of payment for services.

**3. TERM/TERMINATION.** This Agreement shall terminate automatically on December 31, 2023.

A regular, ongoing relationship of indefinite term is not contemplated. The Recipient has no right to assign services to the Contractor other than as specifically contemplated by this Agreement. However, the parties may mutually agree that the Contractor shall perform other services for the Recipient, pursuant to the terms of this Agreement.

On or before December 31, 2023, Contractor and Recipient shall negotiate a new contract for the services contemplated herein.

**4. RELATIONSHIP OF PARTIES.** It is understood by the parties that the Contractor is an independent contractor with respect to the Recipient, and not an employee of the Recipient. The Recipient will not provide fringe benefits, including health insurance benefits, paid vacation, or any other employee benefit, for the benefit of the Contractor.

1

EXHIBIT 2 PAGE 15

DocuSign Envelope ID: 9CDF5ABB-CBEB-4259-8A1B-F61D4714F5A2

It is contemplated that the relationship between the Contractor and the Recipient shall be a non-exclusive one. The Contractor also performs services for other organizations and/or individuals. The Recipient has no right to further inquire into the Contractor's other activities.

**5. RECIPIENT'S CONTROL.** The Recipient has no right or power to control or otherwise interfere with the Contractor's mode of effecting performance under this Agreement. The Recipient's only concern is the result of the Contractor's work, and not the means of accomplishing it. Except in extraordinary circumstances and when necessary, the Contractor shall perform the Services without direct supervision by the Recipient.

**6. PROFESSIONAL CAPACITY.** The Contractor is a professional who uses his or her own professional and business methods to perform services. The Contractor has not and will not receive training from the Recipient regarding how to perform the Services.

**7. PERSONAL SERVICES NOT REQUIRED.** The Contractor is not required to render the Services personally and may employ others to perform the Services on behalf of the Recipient without the Recipient's knowledge or consent. If the Contractor has assistants, it is the Contractor's responsibility to hire them and to provide materials for them.

**8. NO LOCATION ON PREMISES.** The Contractor has no desk or other equipment either located at or furnished by the Recipient. Except to the extent that the Contractor works in a territory as defined by the Recipient, his or her services are not integrated into the mainstream of the Recipient's business.

**9. NO SET WORK HOURS.** The Contractor has no set hours of work. There is no requirement that the Contractor work full time or otherwise account for work hours.

**10. EXPENSES PAID BY CONTRACTOR.** The Contractor's business and travel expenses are to be paid by the Contractor and not by the Recipient.

**11. CONFIDENTIALITY.** Contractor may have had access to proprietary, private and/or otherwise confidential information ("Confidential Information") of the Recipient. Confidential Information shall mean all non-public information which constitutes, relates or refers to the operation of the business of the Recipient, including without limitation, all financial, investment, operational, personnel, sales, marketing, managerial and statistical information of the Recipient, and any and all trade secrets, customer lists, or pricing information of the Recipient. The nature of the information and the manner of disclosure are such that a reasonable person would understand it to be confidential. The Contractor will not at any time or in any manner, either directly or indirectly, use for the personal benefit of the Contractor, or divulge, disclose, or communicate in any manner any Confidential Information. The Contractor will protect such information and treat the Confidential Information as strictly confidential. This provision shall continue to be effective after the termination of this Agreement. Upon termination of this Agreement, the Contractor will return to the Recipient all Confidential Information, whether physical or electronic, and other items that were used, created, or controlled by the Contractor during the term of this Agreement.

EXHIBIT 2 PAGE 16

This Agreement is in compliance with the Defend Trade Secrets Act and provides civil or criminal immunity to any individual for the disclosure of trade secrets: (i) made in confidence to a federal, state, or local government official, or to an attorney when the disclosure is to report suspected violations of the law; or (ii) in a complaint or other document filed in a lawsuit if made under seal.

**12. INJURIES.** The Contractor acknowledges the Contractor's obligation to obtain appropriate insurance coverage for the benefit of the Contractor (and the Contractor's employees, if any). The Contractor waives any rights to recovery from the Recipient for any injuries that the Contractor (and/or Contractor's employees) may sustain while performing services under this Agreement and that are a result of the negligence of the Contractor or the Contractor's employees. Contractor will provide the Recipient with a certificate naming the Recipient as an additional insured party.

**13. INDEMNIFICATION.** The Contractor agrees to indemnify and hold harmless the Recipient from all claims, losses, expenses, fees including attorney fees, costs, and judgments that may be asserted against the Recipient that result from the acts or omissions of the Contractor, the Contractor's employees, if any, and the Contractor's agents.

**14. NO RIGHT TO ACT AS AGENT.** An "employer-employee" or "principal-agent" relationship is not created merely because (1) the Recipient has or retains the right to supervise or inspect the work as it progresses in order to ensure compliance with the terms of the contract or (2) the Recipient has or retains the right to stop work done improperly. The Contractor has no right to act as an agent for the Recipient and has an obligation to notify any involved parties that it is not an agent of the Recipient.

**15. ENTIRE AGREEMENT.** This Agreement constitutes the entire contract between the parties. All terms and conditions contained in any other writings previously executed by the parties regarding the matters contemplated herein shall be deemed to be merged herein and superseded hereby. No modification of this Agreement shall be deemed effective unless in writing and signed by the parties hereto.

**16. WAIVER OF BREACH.** The waiver by the Recipient of a breach of any provision of this Agreement by Contractor shall not operate or be construed as a waiver of any subsequent breach by Contractor.

**17. SEVERABILITY.** If any provision of this Agreement shall be held to be invalid or unenforceable for any reason, the remaining provisions shall continue to be valid and enforceable. If a court finds that any provision of this Agreement is invalid or unenforceable, but that by limiting such provision it would become valid and enforceable, then such provision shall be deemed to be written, construed, and enforced as so limited.

**18. APPLICABLE LAW.** This Agreement shall be governed by the laws of the State of California.

3

EXHIBIT 2 PAGE 17

DocuSign Envelope ID: 9CDF5A9B-C8EB-4259-BA1B-F61D4714F8A2
Case 8:23-bk-10571-SC    Doc 708    Filed 11/21/23    Entered 11/21/23 23:55:39    Desc
Main Document    Page 12 of 15

**19. SIGNATORIES.** This Agreement shall be signed by Daniel S. March on behalf of The Litigation Practice Group PC and by Kyle Herret on behalf of Herret Credit Consultants LLC. This Agreement is effective as of the date first above written.

RECIPIENT:
The Litigation Practice Group PC

By: _____    Date: _12/27/2022_____
    Daniel S. March
    Managing Shareholder


CONTRACTOR:
Herret Credit Consultants LLC

By: _____    Date: _12/27/2022_____


    Kyle Herret, Managing Member

4

EXHIBIT 2 PAGE 18

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

16133 Ventura Blvd, Suite 700, Encino CA. 91436

**A true and correct copy of the foregoing document entitled (*specify*):** MOTION FOR ALLOWANCE OF ADMINISTRATIVE CLAIM PURSUANT TO 11 U.S.C. § 503; DECLARATION OF KYLE HERRAT IN SUPPORT

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) _Nov. 21 , 2023_____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL:**
On (*date*) _____Nov 21,2023_____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served):**  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| 11/21 | ERic GASSMAN | *(signature)* |
| Date | Printed Name | Signature |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                              **F 9013-3.1.PROOF.SERVICE**

EXHIBIT 2 PAGE 19

**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**

Eric Bensamochan    eric@eblawfirm.us, G63723@notify.cincompass.com
Peter W Bowie    peter.bowie@dinsmore.com, caron.burke@dinsmore.com
Ronald K Brown    ron@rkbrownlaw.com
Christopher Celentino    christopher.celentino@dinsmore.com, caron.burke@dinsmore.com
Shawn M Christianson    cmcintire@buchalter.com, schristianson@buchalter.com
Randall Baldwin Clark    rbc@randallbclark.com
Leslie A Cohen    leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com;clare@lesliecohenlaw.com
Aaron E. DE Leest    adeleest@DanningGill.com, danninggill@gmail.com;adeleest@ecf.inforuptcy.com
Jenny L Doling    jd@jdl.law,
dolingjr92080@notify.bestcase.com;15994@notices.nextchapterbk.com;jdoling@jubileebk.net
Daniel A Edelman    dedelman@edcombs.com, courtecl@edcombs.com
William P Fennell    william.fennell@fennelllaw.com,
luralene.schultz@fennelllaw.com;wpf@ecf.courtdrive.com;hala.hammi@fennelllaw.com;naomi.cwalinski@fennelllaw.com;
samantha.larimer@fennelllaw.com
Christopher Ghio    christopher.ghio@dinsmore.com,
nicolette.murphy@dinsmore.com;angelica.urena@dinsmore.com;deamira.romo@dinsmore.com
Eric D Goldberg    eric.goldberg@dlapiper.com, eric-goldberg-1103@ecf.pacerpro.com
Jeffrey I Golden    jgolden@go2.law,
kadele@ecf.courtdrive.com;cbmeeker@gmail.com;lbracken@wgllp.com;dfitzgerald@go2.law;golden.jeffreyi.b117954@n
otify.bestcase.com
Richard H Golubow    rgolubow@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com
David M Goodrich    dgoodrich@go2.law, kadele@go2.law;dfitzgerald@go2.law;wggllp@ecf.courtdrive.com
D Edward Hays    ehays@marshackhays.com,
ehays@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@ecf.courtdrive.co
m
Alan Craig Hochheiser    ahochheiser@mauricewutscher.com, arodriguez@mauricewutscher.com
Garrick A Hollander    ghollander@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com
Richard L. Hyde    richard@amintalati.com
Razmig Izakelian    razmigizakelian@quinnemanuel.com
Joon M Khang    joon@khanglaw.com
Ira David Kharasch    ikharasch@pszjlaw.com
Meredith King    mking@fsl.law, ssanchez@fsl.law;jwilson@fsl.law
Nicholas A Koffroth    nkoffroth@foxrothschild.com, khoang@foxrothschild.com
David S Kupetz    David.Kupetz@lockelord.com, mylene.ruiz@lockelord.com
Christopher J Langley    chris@slclawoffice.com,
omar@slclawoffice.com;langleycr75251@notify.bestcase.com;ecf123@casedriver.com
Matthew A Lesnick    matt@lesnickprince.com, matt@ecf.inforuptcy.com;jmack@lesnickprince.com
Daniel A Lev    daniel.lev@gmlaw.com, cheryl.caldwell@gmlaw.com;dlev@ecf.courtdrive.com
Britteny Leyva    bleyva@mayerbrown.com,
2396393420@filings.docketbird.com;KAWhite@mayerbrown.com;ladocket@mayerbrown.com
Michael D Lieberman    mlieberman@lipsonneilson.com
Yosina M Lissebeck    Yosina.Lissebeck@Dinsmore.com, caron.burke@dinsmore.com
Mitchell B Ludwig    mbl@kpclegal.com, kad@kpclegal.com
Daniel S March    marchlawoffice@gmail.com, marchdr94019@notify.bestcase.com
Kathleen P March    kmarch@bkylawfirm.com, kmarch3@sbcglobal.net,kmarch@sbcglobal.net
Richard A Marshack (TR)    pkraus@marshackhays.com,
rmarshack@iq7technology.com;ecf.alert+Marshack@titlexi.com
Laila Masud    lmasud@marshackhays.com, lmasud@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com
Kenneth Misken    Kenneth.M.Misken@usdoj.gov
Byron Z Moldo    bmoldo@ecjlaw.com, amatsuoka@ecjlaw.com,dperez@ecjlaw.com
Alan I Nahmias    anahmias@mbn.law, jdale@mbn.law
Victoria Newmark    vnewmark@pszjlaw.com
Queenie K Ng    queenie.k.ng@usdoj.gov
Keith C Owens    kowens@foxrothschild.com, khoang@foxrothschild.com
Lisa Patel    lpatel@lesnickprince.com, jmack@lesnickprince.com;jnavarro@lesnickprince.com
Michael R Pinkston    rpinkston@seyfarth.com,
jmcdermott@seyfarth.com,sfocalendar@seyfarth.com,5314522420@filings.docketbird.com,bankruptcydocket@seyfarth.c
om

EXHIBIT 2 PAGE 20

Douglas A Plazak   dplazak@rhlaw.com
Daniel H Reiss   dhr@lnbyg.com, dhr@ecf.inforuptcy.com
Ronald N Richards   ron@ronaldrichards.com, 7206828420@filings.docketbird.com
Gregory M Salvato   gsalvato@salvatoboufadel.com,
calendar@salvatolawoffices.com;jboufadel@salvatoboufadel.com;gsalvato@ecf.inforuptcy.com
Olivia Scott   olivia.scott3@bclplaw.com
Jonathan Serrano   jonathan.serrano@dinsmore.com
Paul R Shankman   PShankman@fortislaw.com, info@fortislaw.com

Zev Shechtman   zs@DanningGill.com, danninggill@gmail.com;zshechtman@ecf.inforuptcy.com
Leslie Skorheim   leslie.skorheim@usdoj.gov
Adam D Stein-Sapir   info@pfllc.com
Howard Steinberg   steinbergh@gtlaw.com, pearsallt@gtlaw.com;NEF-BK@gtlaw.com;howard-steinberg-6096@ecf.pacerpro.com
Andrew Still   astill@swlaw.com, kcollins@swlaw.com
United States Trustee (SA)   ustpregion16.sa.ecf@usdoj.gov
Sharon Z. Weiss   sharon.weiss@bclplaw.com, raul.morales@bclplaw.com,REC_KM_ECF_SMO@bclplaw.com
Johnny White   JWhite@wrslawyers.com, jlee@wrslawyers.com

**SERVED BY UNITED STATES MAIL:**

Honorable Scott C. Clarkson
United States Bankruptcy Court
Central District of California, Santa Ana
411 W. Fourth Street, Suite 5130/Ctrm 5C
Santa Ana, CA  92701-4593

The Litigation Practice Group, P.C.
17542 17th St, Suite 100
 ,  CA  92780-1981
DEBTOR

EXHIBIT 2 PAGE 21

# EXHIBIT 3

EXHIBIT 3 PAGE 22

**Fill in this information to identify the case:**

Debtor 1    The Litigation Practice Group P.C.

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court    **Central District of California**

Case number:  **23–10571**

**FILED**

**U.S. Bankruptcy Court**
**Central District of California**

9/13/2023

**Kathleen J. Campbell, Clerk**

## Official Form 410
# Proof of Claim

04/22

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy** (Form 309) **that you received.**

| Part 1: | Identify the Claim |
| --- | --- |

**1. Who is the current creditor?**

Herret Credit Consultants

Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom?

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

Herret Credit Consultants

Name

1946 N Sunset Mesa Loop
Washington, UT 84780

Contact phone     801–699–3334

Contact email
     hodie2@mindspring.com

Where should payments to the creditor be sent? (if different)

Name

Contact phone

Contact email

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

**4. Does this claim amend one already filed?**

☑ No
☐ Yes. Claim number on court claims registry (if known)

Filed on

MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing?

EXHIBIT 3 PAGE 23

**Part 2:** **Give Information About the Claim as of the Date the Case Was Filed**

| | |
|---|---|
| 6. **Do you have any number you use to identify the debtor?** | ☑ No<br>☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _____ |

| | | |
|---|---|---|
| 7. **How much is the claim?** | $ 256701.98 | **Does this amount include interest or other charges?**<br>☑ No<br>☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |

| | |
|---|---|
| 8. **What is the basis of the claim?** | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).<br>Limit disclosing information that is entitled to privacy, such as healthcare information.<br><br>Contract, attached |

| | |
|---|---|
| 9. **Is all or part of the claim secured?** | ☑ No<br>☐ Yes. The claim is secured by a lien on property.<br>**Nature of property:**<br>☐ Real estate.    If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410–A) with this *Proof of Claim.*<br>☐ Motor vehicle<br>☐ Other. Describe: _____<br><br>**Basis for perfection:** _____<br><br>Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>**Value of property:**    $ _____<br><br>**Amount of the claim that is secured:**    $ _____<br><br>**Amount of the claim that is unsecured:**    $ _____    (The sum of the secured and unsecured amounts should match the amount in line 7.)<br><br>**Amount necessary to cure any default as of the date of the petition:**    $ _____<br><br>**Annual Interest Rate** (when case was filed)    _____ %<br>☐ Fixed<br>☐ Variable |

| | |
|---|---|
| 10. **Is this claim based on a lease?** | ☑ No<br>☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $ _____ |

| | |
|---|---|
| 11. **Is this claim subject to a right of setoff?** | ☑ No<br>☐ Yes. Identify the property: _____ |

EXHIBIT 3 PAGE 24

| 12. | Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No<br>☐ Yes. *Check all that apply*: | | Amount entitled to priority |
|---|---|---|---|---|

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).  $ _____

☐ Up to $3,350 * of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).  $ _____

☐ Wages, salaries, or commissions (up to $15,150 *) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).  $ _____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).  $ _____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).  $ _____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(_) that applies  $ _____

\* Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3:  Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157 and 3571.**

Check the appropriate box:

☑ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    9/13/2023
                     MM / DD / YYYY

/s/  Kyle Herret

Signature

Print the name of the person who is completing and signing this claim:

Name    Kyle Herret

First name    Middle name    Last name

Title    Managing Member

Company    Herret Credit Consultants

Identify the corporate servicer as the company if the authorized agent is a servicer

Address    1946 N Sunset Mesa Loop

Number  Street

Washington, UT 84780

City  State  ZIP Code

Contact phone    801–699–3334    Email    hodie2@mindspring.com

Official Form 410    Proof of Claim    page 3

EXHIBIT 3 PAGE 25

**Fill in this information to identify the case:**

Debtor 1   The Litigation Practice Group P.C.

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court   **Central District of California**

Case number:  **23–10571**

**FILED**

**U.S. Bankruptcy Court**
**Central District of California**

9/13/2023

**Kathleen J. Campbell, Clerk**

## Official Form 410
## Proof of Claim

04/22

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy** (Form 309) **that you received.**

### Part 1:  Identify the Claim

| | |
|---|---|
| 1. **Who is the current creditor?** | Herret Credit Consultants<br><br>Name of the current creditor (the person or entity to be paid for this claim)<br><br>Other names the creditor used with the debtor |
| 2. **Has this claim been acquired from someone else?** | ☑ No<br>☐ Yes. From whom? |

| | | |
|---|---|---|
| 3. **Where should notices and payments to the creditor be sent?**<br><br>Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **Where should notices to the creditor be sent?**<br><br>Herret Credit Consultants<br>Name<br><br>1946 N Sunset Mesa Loop<br>Washington, UT 84780<br><br><br>Contact phone _____801–699–3334_____<br>Contact email<br>___hodie2@mindspring.com___<br><br>Uniform claim identifier for electronic payments in chapter 13 (if you use one): | **Where should payments to the creditor be sent?** (if different)<br><br>Name<br><br><br><br><br>Contact phone _____<br>Contact email _____ |

| | |
|---|---|
| 4. **Does this claim amend one already filed?** | ☑ No<br>☐ Yes. Claim number on court claims registry (if known) _____    Filed on _____<br><div align="right">MM / DD / YYYY</div> |
| 5. **Do you know if anyone else has filed a proof of claim for this claim?** | ☑ No<br>☐ Yes. Who made the earlier filing? _____ |

Official Form 410                     Proof of Claim                     page 1

EXHIBIT 3 PAGE 26

**Part 2:** **Give Information About the Claim as of the Date the Case Was Filed**

| | |
|---|---|
| 6. **Do you have any number you use to identify the debtor?** | ☑ No<br>☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _____ |

| | |
|---|---|
| 7. **How much is the claim?** | $ 256701.98   **Does this amount include interest or other charges?**<br>☑ No<br>☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |

8. **What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as healthcare information.

Contract, attached

9. **Is all or part of the claim secured?**

☑ No
☐ Yes. The claim is secured by a lien on property.

**Nature of property:**
☐ Real estate.    If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410–A) with this *Proof of Claim.*
☐ Motor vehicle
☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**  $ _____

**Amount of the claim that is secured:**  $ _____

**Amount of the claim that is unsecured:**  $ _____   (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**  $ _____

**Annual Interest Rate** (when case was filed) _____ %

☐ Fixed
☐ Variable

| | |
|---|---|
| 10. **Is this claim based on a lease?** | ☑ No<br>☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $ _____ |

| | |
|---|---|
| 11. **Is this claim subject to a right of setoff?** | ☑ No<br>☐ Yes. Identify the property: _____ |

Official Form 410                         Proof of Claim                         page 2

EXHIBIT 3 PAGE 27

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No<br>☐ Yes. *Check all that apply*: | Amount entitled to priority |
|---|---|---|
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $ |
| | ☐ Up to $3,350 * of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $ |
| | ☐ Wages, salaries, or commissions (up to $15,150 *) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(_) that applies | $ |
| | * Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment. | |

## Part 3:  Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157 and 3571.**

Check the appropriate box:

☑ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date        9/13/2023

                        MM / DD / YYYY

/s/  Kyle Herret

Signature

Print the name of the person who is completing and signing this claim:

Name            Kyle Herret

                First name        Middle name        Last name

Title           Managing Member

Company         Herret Credit Consultants

                Identify the corporate servicer as the company if the authorized agent is a servicer

Address         1946 N Sunset Mesa Loop

                Number  Street
                Washington, UT 84780

                City  State  ZIP Code

Contact phone   801–699–3334        Email    hodie2@mindspring.com

**Fill in this information to identify the case:**

Debtor 1  Litigation Practice Group PC

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the: Central District of California

Case number  8:23-bk-10571-SC

---

Official Form 410

# Proof of Claim

04/22

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed.** That date is on the notice of bankruptcy (Form 309) that you received.

---

| Part 1: | Identify the Claim |
|---|---|

| | | |
|---|---|---|
| 1. **Who is the current creditor?** | Herret Credit Consultants | |
| | Name of the current creditor (the person or entity to be paid for this claim) | |
| | Other names the creditor used with the debtor | |

| 2. **Has this claim been acquired from someone else?** | ☑ No<br>☐ Yes. From whom? _____ |
|---|---|

| 3. **Where should notices and payments to the creditor be sent?**<br><br>Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **Where should notices to the creditor be sent?**<br><br>Herret Credit Consultants<br>Name<br>1946 N Sunset Mesa Loop<br>Number        Street<br>Washington        UT        84780<br>City              State        ZIP Code<br><br>Contact phone  801-699-3334<br><br>Contact email  hodie2@mindspring.com | **Where should payments to the creditor be sent? (if different)**<br><br>Name<br><br>Number        Street<br><br>City              State        ZIP Code<br><br>Contact phone<br><br>Contact email |
|---|---|---|
| | Uniform claim identifier for electronic payments in chapter 13 (if you use one):<br><br>__ __ __ __ — __ __ __ __ — __ __ __ __ — __ __ __ __ | |

| 4. **Does this claim amend one already filed?** | ☑ No<br>☐ Yes. Claim number on court claims registry (if known) _____ | Filed on ____ / ____ / _____<br>MM / DD / YYYY |
|---|---|---|

| 5. **Do you know if anyone else has filed a proof of claim for this claim?** | ☑ No<br>☐ Yes. Who made the earlier filing? _____ |
|---|---|

---

**Part 2:** **Give Information About the Claim as of the Date the Case Was Filed**

| | |
|---|---|
| 6. **Do you have any number you use to identify the debtor?** | ☑ No<br>☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____ |
| 7. **How much is the claim?** | $_____256,701.98_. **Does this amount include interest or other charges?**<br>☑ No<br>☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |
| 8. **What is the basis of the claim?** | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.<br>Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).<br>Limit disclosing information that is entitled to privacy, such as health care information.<br><br>Contract, attached _____ |
| 9. **Is all or part of the claim secured?** | ☑ No<br>☐ Yes. The claim is secured by a lien on property.<br>**Nature of property:**<br>☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*<br>☐ Motor vehicle<br>☐ Other. Describe: _____<br><br>**Basis for perfection:** _____<br>Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>**Value of property:** $_____<br>**Amount of the claim that is secured:** $_____<br>**Amount of the claim that is unsecured:** $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)<br><br>**Amount necessary to cure any default as of the date of the petition:** $_____<br><br>**Annual Interest Rate** (when case was filed) _____%<br>☐ Fixed<br>☐ Variable |
| 10. **Is this claim based on a lease?** | ☑ No<br>☐ Yes. Amount necessary to cure any default as of the date of the petition. $_____ |
| 11. **Is this claim subject to a right of setoff?** | ☑ No<br>☐ Yes. Identify the property: _____ |

EXHIBIT 3 PAGE 30

| 12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?** | ☑ No | | |
| --- | --- | --- | --- |
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Yes. *Check one:* | | **Amount entitled to priority** |
| | | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| | | ☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | | ☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| | | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | $_____ |
| | | * Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment. | |

---

**Part 3:  Sign Below**

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☑ I am the creditor.
☐ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    09/12/2023
                    MM / DD / YYYY

_Signature_

**Print the name of the person who is completing and signing this claim:**

| Name | Kyle Herret | | |
| --- | --- | --- | --- |
| | First name | Middle name | Last name |
| Title | Managing Member | | |
| Company | Herret Credit Consultants | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 1946 N Sunset Mesa Loop | | |
| | Number      Street | | |
| | Washington | UT | 84780 |
| | City | State | ZIP Code |
| Contact phone | 801-699-3334 | Email | hodie2@mindspring.com |

Official Form 410                              Proof of Claim                                    page 3

EXHIBIT 3 PAGE 31

DocuSign Envelope ID: 9CDF5A3B-Q85B-4259-BA3B-F61D47A4F5A2

## *INDEPENDENT CONTRACTOR AGREEMENT*

This Independent Contractor Agreement (this "Agreement") is made effective as of January 1, 2023, by and between The Litigation Practice Group PC (the "Recipient") and Herret Credit Consultants LLC (the "Contractor"). In this Agreement, the party who is contracting to receive the services shall be referred to as "Recipient", and the party who will be providing the services shall be referred to as "Contractor."

**1. DESCRIPTION OF SERVICES.** Beginning on January 1, 2023, the Contractor will provide the following services (collectively, the "Services"): Recruitment of marketing floors to sell the validation product serviced by Recipient.

Furthermore, the Contractor has the right of control over how the Contractor will perform the services. The Recipient does not have this right of control over how the Contractor will perform the services.

**2. PAYMENT FOR SERVICES.** The Recipient will pay compensation to the Contractor for the Services. Payments will be made as follows:

A commission of 2.5% of all fees generated from a referral of floors, and a 1.5% commission for all floors serviced, up to a maximum of $25,000.00 per week, for an annual total of $1,300,000.00.

No other fees and/or expenses will be paid to the Contractor, unless such fees and/or expenses have been approved in advance by the appropriate executive on behalf of the Recipient in writing. The Contractor shall be solely responsible for any and all taxes, Social Security contributions or payments, disability insurance, unemployment taxes, and other payroll type taxes applicable to such compensation. The Contractor has the right of control over the method of payment for services.

**3. TERM/TERMINATION.** This Agreement shall terminate automatically on December 31, 2023.

A regular, ongoing relationship of indefinite term is not contemplated. The Recipient has no right to assign services to the Contractor other than as specifically contemplated by this Agreement. However, the parties may mutually agree that the Contractor shall perform other services for the Recipient, pursuant to the terms of this Agreement.

On or before December 31, 2023, Contractor and Recipient shall negotiate a new contract for the services contemplated herein.

**4. RELATIONSHIP OF PARTIES.** It is understood by the parties that the Contractor is an independent contractor with respect to the Recipient, and not an employee of the Recipient. The Recipient will not provide fringe benefits, including health insurance benefits, paid vacation, or any other employee benefit, for the benefit of the Contractor.

1

EXHIBIT 3 PAGE 32

It is contemplated that the relationship between the Contractor and the Recipient shall be a non-exclusive one. The Contractor also performs services for other organizations and/or individuals. The Recipient has no right to further inquire into the Contractor's other activities.

**5. RECIPIENT'S CONTROL.** The Recipient has no right or power to control or otherwise interfere with the Contractor's mode of effecting performance under this Agreement. The Recipient's only concern is the result of the Contractor's work, and not the means of accomplishing it. Except in extraordinary circumstances and when necessary, the Contractor shall perform the Services without direct supervision by the Recipient.

**6. PROFESSIONAL CAPACITY.** The Contractor is a professional who uses his or her own professional and business methods to perform services. The Contractor has not and will not receive training from the Recipient regarding how to perform the Services.

**7. PERSONAL SERVICES NOT REQUIRED.** The Contractor is not required to render the Services personally and may employ others to perform the Services on behalf of the Recipient without the Recipient's knowledge or consent. If the Contractor has assistants, it is the Contractor's responsibility to hire them and to provide materials for them.

**8. NO LOCATION ON PREMISES.** The Contractor has no desk or other equipment either located at or furnished by the Recipient. Except to the extent that the Contractor works in a territory as defined by the Recipient, his or her services are not integrated into the mainstream of the Recipient's business.

**9. NO SET WORK HOURS.** The Contractor has no set hours of work. There is no requirement that the Contractor work full time or otherwise account for work hours.

**10. EXPENSES PAID BY CONTRACTOR.** The Contractor's business and travel expenses are to be paid by the Contractor and not by the Recipient.

**11. CONFIDENTIALITY.** Contractor may have had access to proprietary, private and/or otherwise confidential information ("Confidential Information") of the Recipient. Confidential Information shall mean all non-public information which constitutes, relates or refers to the operation of the business of the Recipient, including without limitation, all financial, investment, operational, personnel, sales, marketing, managerial and statistical information of the Recipient, and any and all trade secrets, customer lists, or pricing information of the Recipient. The nature of the information and the manner of disclosure are such that a reasonable person would understand it to be confidential. The Contractor will not at any time or in any manner, either directly or indirectly, use for the personal benefit of the Contractor, or divulge, disclose, or communicate in any manner any Confidential Information. The Contractor will protect such information and treat the Confidential Information as strictly confidential. This provision shall continue to be effective after the termination of this Agreement. Upon termination of this Agreement, the Contractor will return to the Recipient all Confidential Information, whether physical or electronic, and other items that were used, created, or controlled by the Contractor during the term of this Agreement.

2

EXHIBIT 3 PAGE 33

DocuSign Envelope ID: 9CDF5A9B-C8E9-4259-8A1B-F61D47145FA3

This Agreement is in compliance with the Defend Trade Secrets Act and provides civil or criminal immunity to any individual for the disclosure of trade secrets: (i) made in confidence to a federal, state, or local government official, or to an attorney when the disclosure is to report suspected violations of the law; or (ii) in a complaint or other document filed in a lawsuit if made under seal.

**12. INJURIES.** The Contractor acknowledges the Contractor's obligation to obtain appropriate insurance coverage for the benefit of the Contractor (and the Contractor's employees, if any). The Contractor waives any rights to recovery from the Recipient for any injuries that the Contractor (and/or Contractor's employees) may sustain while performing services under this Agreement and that are a result of the negligence of the Contractor or the Contractor's employees. Contractor will provide the Recipient with a certificate naming the Recipient as an additional insured party.

**13. INDEMNIFICATION.** The Contractor agrees to indemnify and hold harmless the Recipient from all claims, losses, expenses, fees including attorney fees, costs, and judgments that may be asserted against the Recipient that result from the acts or omissions of the Contractor, the Contractor's employees, if any, and the Contractor's agents.

**14. NO RIGHT TO ACT AS AGENT.** An "employer-employee" or "principal-agent" relationship is not created merely because (1) the Recipient has or retains the right to supervise or inspect the work as it progresses in order to ensure compliance with the terms of the contract or (2) the Recipient has or retains the right to stop work done improperly. The Contractor has no right to act as an agent for the Recipient and has an obligation to notify any involved parties that it is not an agent of the Recipient.

**15. ENTIRE AGREEMENT.** This Agreement constitutes the entire contract between the parties. All terms and conditions contained in any other writings previously executed by the parties regarding the matters contemplated herein shall be deemed to be merged herein and superseded hereby. No modification of this Agreement shall be deemed effective unless in writing and signed by the parties hereto.

**16. WAIVER OF BREACH.** The waiver by the Recipient of a breach of any provision of this Agreement by Contractor shall not operate or be construed as a waiver of any subsequent breach by Contractor.

**17. SEVERABILITY.** If any provision of this Agreement shall be held to be invalid or unenforceable for any reason, the remaining provisions shall continue to be valid and enforceable. If a court finds that any provision of this Agreement is invalid or unenforceable, but that by limiting such provision it would become valid and enforceable, then such provision shall be deemed to be written, construed, and enforced as so limited.

**18. APPLICABLE LAW.** This Agreement shall be governed by the laws of the State of California.

3

EXHIBIT 3 PAGE 34

DocuSign Envelope ID: 9CDF5A9B-C8E8-4E59-BA3B-F61D4714E5A3

**19. SIGNATORIES.** This Agreement shall be signed by Daniel S. March on behalf of The Litigation Practice Group PC and by Kyle Herret on behalf of Herret Credit Consultants LLC. This Agreement is effective as of the date first above written.

RECIPIENT:
The Litigation Practice Group PC

By: _Daniel S March_                Date: _12/27/2022_
DocuSigned by:
9D494DB18933341E...
Daniel S. March
Managing Shareholder

CONTRACTOR:
Herret Credit Consultants LLC

By: _kyle Herret_                Date: _12/27/2022_
DocuSigned by:
26C038AEC176446...

Kyle Herret, Managing Member

4

EXHIBIT 3 PAGE 35

# Invoice

DATE: 1/16/20223

INVOICE # 11623

**FROM:**  **Herret Credit Consultants**
herretcreditconsultants@yahoo.com
**1946 N Sunset Mesa Loop**
**Washington, UT 84780**
**801-699-3334**

**TO:**      **Litigation Practice Group**

**TERMS:**  **All in dollar bills**
**DUE:**     **Yesterday**

| Item Description | Quantity | Price | Amount |
|---|---|---|---|
| 5 weeks of back pay 12/12/2022 thru 1/13/2023 | 5 | $25,000.00 | $125,000.00 |

|  | Subtotal |  |
|---|---|---|
|  | Tax |  |
|  | **BALANCE DUE** | $125,000.00 |

## Notes

Click here to add notes or terms of service.

EXHIBIT 3 PAGE 36

# Invoice

DATE: 5/5/2023

INVOICE # 5523

**FROM:**  Herret Credit Consultants

1946 N Sunset Mesa Loop
Washington, UT 84780
801-699-3334

**TO:**  Litigation Practice Group

17542 E 17th St

Tustin, CA 92780

**TERMS:**
**DUE:**    **6/2/2023**

| Item Description | Quantity | Price | Amount |
|---|---|---|---|
| Weekly Past Due Commission - LPG clients Weeks of March 3, March 10, March 17, March 24, March 31. | 5 | $25,000.00 | $125,000.00 |
| | | Subtotal | |
| | | Tax | |
| | | **BALANCE DUE** | $125,000.00 |

## Notes

Missing Weekly Commissions - LPG

EXHIBIT 3 PAGE 37

# Invoice

DATE: 3/16/2023

INVOICE # 31623

**FROM:** Herret Credit Consultants
herretcreditconsultants@yahoo.com
1946 N Sunset Mesa Loop
Washington, UT 84780
801-699-3334

**TO:**      Litigation Practice Group

**TERMS:**
**DUE:**

| Item Description | Quantity | Price | Amount |
|---|---|---|---|
| LPG Cancellation Refund – Kathleen Post | 1 | $744.00 | $744.00 |
| LPG PPE Refund – Kathleen Post | 1 | $544.18 | $544.18 |
| LPG PPE Refund – Jon Price | 1 | $343.48 | $343.48 |
| LPG PPE Refund – Samuel Jones | 1 | $750.00 | $750.00 |
| LPG PPE Refund – Inge Havel | 1 | $357.96 | $357.96 |
| LPG PPE Refund – Cynthis Rodriguez | 1 | $271.81 | $271.81 |
| LPG PPE Refund – Vartivar Sabounjian | 1 | $856.60 | $856.60 |
| LPG PPE Refund – Ragina Hilliard | 1 | $731.78 | $731.78 |
| LPG PPE Refund – Kathleen Post | 1 | $544.18 | $544.18 |

|  |  |
|---|---|
| Subtotal | |
| Tax | |
| **BALANCE DUE** | $5,143.99 |

## Notes

Click here to add notes or terms of service.

EXHIBIT 3 PAGE 38

# Invoice

DATE: 4/4/2023

INVOICE # 4423

FROM:   **Herret Credit Consultants**
herretcreditconsultants@yahoo.com
1946 N Sunset Mesa Loop
Washington, UT 84780
801-699-3334

TO:     **Litigation Practice Group**

**TERMS:**
**DUE:**

| Item Description | Quantity | Price | Amount |
|---|---|---|---|
| LPG PPE Refund – Shannon Dorn | 1 | $479.76 | $479.76 |
| LPG PPE Refund – Gary Couto | 1 | $265.70 | $265.70 |
| LPG PPE Refund – Renee Douvier | 1 | $471.59 | $471.59 |
| LPG PPE Refund – Maria DePalma | 1 | $340.94 | $340.94 |

| | |
|---|---|
| Subtotal | |
| Tax | |
| **BALANCE DUE** | $1,557.99 |

## Notes

Click here to add notes or terms of service.

EXHIBIT 3 PAGE 39

# EXHIBIT 4

EXHIBIT 4 PAGE 40



In re: The Litigation Practice Group PC

Disbursement Details by Payee

4 Years Pre-Petition (03/20/2019 - 03/20/2023)

| Bank Name | Account Name | Account Number | Statement Date | Transaction Date | Check Number | Debit/Charge | Memo |
|---|---|---|---|---|---|---|---|
| UnionBank | The Litigation Practice Group PC | 4858 | 7/31/2021 | 7/28/2021 | | 9,914.50 | WIRE TRANS TRN 0728027702 072821 UBOC930 UB132531 N Sent To: UNIVERSITY FIRST ECU Beneficiary: 1/Herret Credit Consultants |
| UnionBank | The Litigation Practice Group PC | 4858 | 8/31/2021 | 8/4/2021 | | 10,820.75 | WIRE TRANS TRN 0804022018 080421 UBOC UB094593N Sent To: UNIVERSITY FIRST FCU Beneficiary: 1/Herret Credit Consultants |
| UnionBank | The Litigation Practice Group PC | 4858 | 8/31/2021 | 8/11/2021 | | 14,179.25 | WIRE TRANS TRN 0811021540 081121 UBOC UB059931 N Sent To: UNIVERSITY FIRST FCU Beneficiary: 1/Herret Credit Consultants |
| UnionBank | The Litigation Practice Group PC | 4858 | 9/30/2021 | 9/1/2021 | | 11,121.23 | WIRE TRANS TRN 0901027863 090121 UBOC UB944349N Sent To: UNIVERSITY FIRST FCU Beneficiary: 1/Herret Credit Consultants |
| UnionBank | The Litigation Practice Group PC | 4858 | 9/30/2021 | 9/9/2021 | | 11,677.85 | WIRE TRANS TRN 0909021764 090921 UBOC UB909012N Sent To: UNIVERSITY FIRST FCU Beneficiary: 1/Herret Credit Consultants |
| Chase | The Litigation Practice Group PC | 3158 | 9/30/2021 | 9/14/2021 | | 1,050.62 | 09/14 Online Domestic Wire Transfer Via: Univ of UT CU Slc/324079416 NC: Herret Credit Consultants Washington UT 84780 US Ret: Expense Report No. 8302 1/Bnf/Expense Report No. 83021 Imad: 091 4B1 Qgc07C002629 Tm: 3039571257Es |
| UnionBank | The Litigation Practice Group PC | 4858 | 9/30/2021 | 9/16/2021 | | 14,359.03 | WIRE TRANS TRN 0916025611 091621 UBOC UB868494N Sent To: UNIVERSITY FIRST FCU Beneficiary: 1/Herret Credit Consultants |
| UnionBank | The Litigation Practice Group PC | 4858 | 9/30/2021 | 9/22/2021 | | 6,844.35 | WIRE TRANS TRN 0922021 189 092221 UBOC UB842688N Sent To: UNIVERSITY FIRST FCU Beneficiary: 1/Herret Credit Consultants |
| Optimum Bank | Coast Processing LLC dba LPG | 6738 | 9/30/2021 | 9/30/2021 | | 5,994.93 | WIRE TO Herret Credit Consultants |
| Optimum Bank | Coast Processing LLC dba LPG | 6738 | 10/29/2021 | 10/7/2021 | | 9,717.02 | WIRE TO Herret Credit Consultants |
| Optimum Bank | Coast Processing LLC dba LPG | 6738 | 10/29/2021 | 10/14/2021 | | 13,922.05 | WIRE TO Herret Credit Consultants |
| Optimum Bank | Coast Processing LLC dba LPG | 6738 | 10/29/2021 | 10/22/2021 | | 6,839.29 | WIRE TO Herret Credit Consultants |
| Optimum Bank | Coast Processing LLC dba LPG | 6738 | 11/30/2021 | 11/5/2021 | | 11,064.40 | WIRE TO Herret Credit Consultants |
| Optimum Bank | Coast Processing LLC dba LPG | 6738 | 11/30/2021 | 11/12/2021 | | 10,983.96 | WIRE TO Herret Credit Consultants |
| Optimum Bank | Coast Processing LLC dba LPG | 6738 | 11/30/2021 | 11/12/2021 | | 2,335.09 | WIRE TO Herret Credit Consultants |
| Optimum Bank | Coast Processing LLC dba LPG | 6738 | 11/30/2021 | 11/18/2021 | | 9,904.54 | WIRE TO Herret Credit Consultants |
| Chase | The Litigation Practice Group PC | 3158 | 11/30/2021 | 11/19/2021 | | 531.62 | 11/19 Online Domestic Wire Transfer Via: Univ of UT CU Slc/324407941 6 NC: Herret Credit Consultants Washington UT 84780 US Ref: Docs Pro Distribution Imad: iii 9B1 Qgc08C036694 Tm: 3502321 323Es |
| Optimum Bank | Coast Processing LLC dba LPG | 6738 | 11/30/2021 | 11/26/2021 | | 12,389.13 | WIRE TO Herret Credit Consultants |
| Chase | The Litigation Practice Group PC | 3158 | 11/30/2021 | 11/30/2021 | | 2,365.45 | 11/30 Online Domestic Wire Transfer Via: Univ of UT CU Slc/324079416 NC: Herret Credit Consultants Washington UT 84780 US Ref: Docs Pro Distribution 11.15-11.l9Imad: 1 130B1Qgc02C012884 Tm: 330461 1334Es |
| Optimum Bank | Coast Processing LLC dba LPG | 6738 | 12/31/2021 | 12/2/2021 | | 9,160.68 | WIRE TO Herret Credit Consultants |
| Optimum Bank | Secure Payment Services LLC dba Litigation Practice Group | 0045 | 12/31/2021 | 12/3/2021 | | 1,416.01 | WIRE TO Herret Credit Consultants |
| UnionBank | The Litigation Practice Group PC | 4858 | 12/31/2021 | 12/9/2021 | | 8,938.60 | WIRE TRANS TRN 1209021663 120921 UBOC UB426462N Sent To: UNIVERSITY FIRST FCU Beneficiary: 1/Herret Credit Consultants |
| UnionBank | The Litigation Practice Group PC | 4858 | 12/31/2021 | 12/10/2021 | | 13,646.52 | WIRE TRANS TAN 1210023644 121021 UBOC UB418317N Sent To: UNIVERSITY FIRST FCU Beneficiary: 1/Herret Credit Consultants |
| UnionBank | The Litigation Practice Group PC | 4858 | 12/31/2021 | 12/10/2021 | | 3,212.94 | WIRE TRANS TRN 1210023631 121021 UBOC UB418347N Sent To: UNIVERSITY FIRST FCU Beneficiary: 1/Herret Credit Consultants |
| Chase | The Litigation Practice Group PC | 3158 | 12/31/2021 | 12/16/2021 | | 500.00 | Fedwire Debit Via: Univ of UT CU Slc/324079416 NC: Herret Credit Consultants Washington, UT, 84780 US Ret: Gift Card For Drd Xmas Party Imad: 1216B1Qgc03C016144 Tm: 7360100350Jo |
| Chase | The Litigation Practice Group PC | 3158 | 12/31/2021 | 12/17/2021 | | 11,907.78 | Fedwire Debit Via: Univ of UT CU Slc/32407941 6 NC: Herret Credit Consultants Washington, UT, 84780 US Ref: Weekly Disbursement Imad: 1217B1Qgc08C022654 Tm: 4080200351Jo |
| UnionBank | The Litigation Practice Group PC | 4858 | 12/31/2021 | 12/17/2021 | | 570.93 | WIRE TRANS TAN 1217018979 121721 UBOC UB381525N Sent To: UNIVERSITY FIRST FCU Beneficiary: 1/Herret Credit Consultants |
| UnionBank | The Litigation Practice Group PC | 4858 | 12/31/2021 | 12/22/2021 | | 85.65 | WIRE TRANS TRN 1222019645 122221 UBOC UB353763N Sent To: UNIVERSITY FIRST FCU Beneficiary: 1/Herret Credit Consultants |
| UnionBank | The Litigation Practice Group PC | 4858 | 12/31/2021 | 12/23/2021 | | 5,793.19 | WIRE TRANS TRN 1223024575 122321 UBOC UB341277N Sent To: UNIVERSITY FIRST FCU Beneficiary: 1/Herret Credit Consultants |
| Chase | The Litigation Practice Group PC | 3158 | 12/31/2021 | 12/28/2021 | | 1,261.43 | Fedwire Debit Via: Univ of UT CU CU/32407946 NC: Herret Credit Consultants Washington, UT, 84780 US Ret: Hotel Reimbursement Imad: 1 228B1 Qgc05COO684i Tm: 4907800362Jo |
| UnionBank | The Litigation Practice Group PC | 4858 | 12/31/2021 | 12/30/2021 | | 518.80 | WIRE TRANS TRN 1230018740 123021 UBOC UB314898N Sent To: UNIVERSITY FIRST FCU Beneficiary: 1/Herret Credit Consultants |
| UnionBank | The Litigation Practice Group PC | 4858 | 12/31/2021 | 12/31/2021 | | 11,587.91 | WIRE TRANS TRN 1231023073 123121 UBOC UB305853N Sent To: UNIVERSITY FIRST FCU Beneficiary: 1/Herret Credit Consultants |

DRAFT FORM - SUBJECT TO CHANGE

EXHIBIT 4 PAGE 41

In re: The Litigation Practice Group PC
Disbursement Details by Payee
4 Years Pre-Petition (03/20/2019 - 03/20/2023)

Herret Credit Consultants



| Bank Name | Account Name | Account Number | Statement Date | Transaction Date | Check Number | Debit/Charge | Memo |
|---|---|---|---|---|---|---|---|
| UnionBank | The Litigation Practice Group PC | 4858 | 1/31/2022 | 1/7/2022 | | 7,853.01 | WIRE TRANS TAN 0107023242 010722 UBOC UB274212N Sent To: UNIVERSITY FIRST FCU Beneficiary:1/Herret Credit Consultants |
| UnionBank | The Litigation Practice Group PC | 4858 | 1/31/2022 | 1/7/2022 | | 218.83 | WIRE TRANS TAN 0107015724 010722 UBOC UB279315N Sent To: UNIVERSITY FIRST FCU Beneficiary: 1/Herret Credit Consultants |
| UnionBank | The Litigation Practice Group PC | 4858 | 1/31/2022 | 1/13/2022 | | 9,810.03 | WIRE TRANS TRN 0113021471 011322 UBOC UB246552N Sent To: UNIVERSITY FIRST ECU Beneficiary: 1/Herret Credit Consultants |
| Chase | The Litigation Practice Group PC | 3158 | 1/31/2022 | 1/20/2022 | | 4,618.41 | Fedwire Debit Via: ufirst CU/324079416 NC: Herret Credit Consultants Washington, uT, 84780 us Ref: FL Affiliate Trip Imad: 0120B1Qgc06C010357 Tm: 6082600020Jo |
| UnionBank | The Litigation Practice Group PC | 4858 | 1/31/2022 | 1/21/2022 | | 7,015.25 | WIRE TRANS TRN 0121016146 012122 UBOC UB210927N Sent To: UNIVERSITY FIRST FCU Beneficiary: 1/Herret Credit Consultants |
| Chase | The Litigation Practice Group PC | 3158 | 1/31/2022 | 1/24/2022 | | 706.92 | Fedwire Debit Via: Ufirst CU/324079416 A/C: Herret Credit Consultants Washington, UT, 84780 US Ref: Expense Report 11722- Springhill Imad: 01 24B1 Qgc08C034269 Tm: 6778600024Jo |
| UnionBank | The Litigation Practice Group PC | 4858 | 1/31/2022 | 1/28/2022 | | 9,617.04 | WIRE TRANS TRN 0128019448 012822 UBOC UB169989N Sent To: UNIVERSITY FIRST FCU Beneficiary: 1/Herret Credit Consultants |
| UnionBank | The Litigation Practice Group PC | 4858 | 2/28/2022 | 2/4/2022 | | 7,988.36 | WIRE TRANS TRN 0204022669 020422 UBOC UB131193N Sent To: UNIVERSITY FIRST ECU Beneficiary: 1/Herret Credit Consultants |
| UnionBank | The Litigation Practice Group PC | 4858 | 2/28/2022 | 2/11/2022 | | 8,304.49 | WIRE TRANS TRN 0211017122 021122 UBOC UB102906N Sent To: UNIVERSITY FIRST FCU Beneficiary: 1/Herret Credit Consultants |
| Chase | The Litigation Practice Group PC | 3133 | 2/28/2022 | 2/18/2022 | | 8,049.29 | Fedwire Debit Via: ufirst CU/324079416 NC: Herret Credit Consultants Washington, uT, 84780 us Ref: Weekly Disbursement Imad: 021 8B1 Qgc06C0l 3147 Tm: 51 85900049Jo |
| Chase | The Litigation Practice Group PC | 3133 | 2/28/2022 | 2/25/2022 | | 8,584.84 | Fedwire Debit Via: ufirst CU/324079416 A/C: Herret Credit Consultants Washington, uT, 84780 us Ref: Weekly Disbursement Imad: 0225B1 QgcO5COi 3791 Tm: 636i 500056Jo |
| Chase | The Litigation Practice Group PC | 3133 | 2/28/2022 | 2/25/2022 | | 3,046.43 | Fedwire Debit Via: U1324079416 A/C: Herret Credit Consultants Washington, uT, 84780 us Ref: Reimbursement-Travel/Lodging Imad: 0225B1 Qgc08COi 9981 Tm: 7685900056Jo |
| Chase | The Litigation Practice Group PC | 3133 | 3/31/2022 | 3/4/2022 | | 7,781.09 | Fedwire Debit Via: ufirst CU/324079416 A/C: Herret Credit Consultants Washington, uT, 84780 us Ref: Weekly Disbursement Imad: 0304B1Qgc06C018333 Tm: 53631 00063Jo |
| Chase | The Litigation Practice Group PC | 3133 | 3/31/2022 | 3/10/2022 | | 9,075.62 | Fedwire Debit Via: ufirst CU/324079416 A/C: Herret Credit Consultants Washington, uT, 84780 us Ref: Weekly Disbursement Imad: 031 OB1 QgcO4COi 1839 Tm: 741 2200069Jo |
| Chase | The Litigation Practice Group PC | 3133 | 3/31/2022 | 3/18/2022 | | 8,371.64 | Fedwire Debit Via: Ufirst CU/324079416 A/C: Herret Credit Consultants Washington, UT 84780 U5 Ref: Weekly Disbursement Imad: 031 8B1 Qgc02COO8i28 Tm: 4567900077Jo |
| Chase | The Litigation Practice Group PC | 3158 | 3/31/2022 | 3/23/2022 | | 1,064.80 | Fedwire Debit Via: Ut irst CU/324079416 A/C: Herret Credit Consultants Washington, UT 84780 US Ref: 30622 Imad: 0323B1Qgc04C007776 Tm: 5279400082Jo |
| Chase | The Litigation Practice Group PC | 3133 | 3/31/2022 | 3/25/2022 | | 8,210.68 | Fedwire Debit Via: Ut irst CU/324079416 A/C: Herret Credit Consultants Washington, UT 84780 US Ref: Weekly Disbursement Imad: 0325B1Qgc05C009320 Tm: 5350700084Jo |
| Chase | The Litigation Practice Group PC | 3158 | 3/31/2022 | 3/25/2022 | | 2,212.17 | Fedwire Debit Via: Ut irst CU/324079416 NC: Herret Credit Consultants Washington, UT 84780 US Ret: 32322 Imad: 0325B1Qgc01C012284 Tm: 6799000084Jo |
| Chase | The Litigation Practice Group PC | 3133 | 4/30/2022 | 4/1/2022 | | 7,125.75 | Fedwire Debit Via: Ufirst CU/324079416 A/C: Herret Credit Consultants Washington, uT, 84780 us Ref: Weekly Disbursement Imad: 0401 B1Qgc04C014263 Tm: 50i600009iJo |
| Chase | The Litigation Practice Group PC | 3133 | 4/30/2022 | 4/7/2022 | | 5,807.21 | Fedwire Debit Via: ufirst CU/324079416 NC: Herret Credit Consultants Washington, uT, 84780 us Ref: Weekly Disbursement Imad: 0407B1Qgc07C011466 Tm: 5698200097Jo |
| Chase | The Litigation Practice Group PC | 3158 | 4/30/2022 | 4/12/2022 | | 3,821.41 | Fedwire Debit Via: Ufirst CU/324079416 A/C: Herret Credit Consultants Washington, UT 84780 US Ref: Reimbursement For Exprep#: 40422 Imad: 041 2B1 QgcO5COO9i 06 Tm: 44368001 O2Jo |
| Chase | The Litigation Practice Group PC | 3133 | 4/30/2022 | 4/18/2022 | | 8,419.81 | Fedwire Debit Via: Ufirst CU/324079416 6 NC: Herret Credit Consultants Washington, UT 84780 US Ref: Weekly Disbursement Imad: 041 8B1 Qgc06COii676 Tm: 4353300i08Jo |
| Chase | The Litigation Practice Group PC | 3133 | 4/30/2022 | 4/21/2022 | | 6,565.79 | Fedwire Debit Via: Ufirst CU/324079416 A/C: Herret Credit Consultants Washington, uT, 84780 us Ref: Weekly Disbursement Imad: 0421B1Qgc07C0i0992 Tm: 4877900iiiJo |
| Chase | The Litigation Practice Group PC | 3133 | 4/30/2022 | 4/28/2022 | | 6,890.51 | Fedwire Debit Via: Ufirst CU/324079416 A/C: Herret Credit Consultants Washington, uT, 84780 us Ret: Weekly Disbursement Imad: 0428B1 Qgc08C026870 Tm: 59258001 i8Jo |
| Chase | The Litigation Practice Group PC | 3158 | 5/31/2022 | 5/3/2022 | | 1,213.53 | Fedwire Debit Via: Ufirst CU/324079416 NC: Herret Credit Consultants Washington, UT 84780 US Ref: Expense Report 41822 Imad: 0503B1 Qgc0300059Ol Tm: 43045001 23Jo |
| Chase | The Litigation Practice Group PC | 3133 | 5/31/2022 | 5/5/2022 | | 5,180.15 | Fedwire Debit Via: Ufirst CU/324079416 6 A/C: Herret Credit Consultants Washington, UT 84780 US Ref: Weekly Disbursement Imad: 0505B1QgcO7C0i9372 Tm: 7i20i00i25Jo |
| Chase | The Litigation Practice Group PC | 3133 | 5/31/2022 | 5/13/2022 | | 7,453.80 | Fedwire Debit Via: Ufirst CU/324079i46 A/C: Herret Credit Consultants Washington, UT 84780 US Ref: Weekly Disbursement Imad: 0513B1Qgc08C029739 Tm: 7440900i33Jo |
| Chase | The Litigation Practice Group PC | 3133 | 5/31/2022 | 5/19/2022 | | 6,349.25 | Fedwire Debit Via: Ufirst CU/324079416 NC: Herret Credit Consultants Washington, UT 84780 US Ref: Weekly Disbursement Imad: 051 9B1 Qgc08C024372 Tm: 55441001 39Jo |

DRAFT FORM - SUBJECT TO CHANGE

EXHIBIT 4 PAGE 42



In re: The Litigation Practice Group PC
Disbursement Details by Payee
4 Years Pre-Petition (03/20/2019 - 03/20/2023)

| Bank Name | Account Name | Account Number | Statement Date | Transaction Date | Check Number | Debit/Charge | Memo |
|-----------|--------------|----------------|----------------|------------------|--------------|--------------|------|
| Chase | The Litigation Practice Group PC | 3158 | 5/31/2022 | 5/19/2022 | | 728.81 | Fedwire Debit Via: Ufirst CU/324079416 A/C: Herret Credit Consultants Washington, UT 84780 US Ref: Expense Report 5.19.2022 Imad: 051 9B1 Qgc06COi 0352 Tm: 52318001 39Jo |
| Chase | The Litigation Practice Group PC | 3133 | 5/31/2022 | 5/27/2022 | | 6,966.74 | Fedwire Debit Via: Ufirst CU/324079416 NC: Herret Credit Consultants Washington, UT, 84780 us Ref: Weekly Disbursement Imad: 0527B1 Qgc08C030881 Tm: 71569001 47Jo |
| Chase | The Litigation Practice Group PC | 3133 | 6/30/2022 | 6/3/2022 | | 25,166.87 | Fedwire Debit Via: Ufirst CU/324079416 A/C: Herret Credit Consultants Washington, UT, 84780 US Ref: Weekly Disbursement Imad: 0603B1Qgc07C018772 Tm: 6202700154Jo |
| Chase | The Litigation Practice Group PC | 3133 | 6/30/2022 | 6/10/2022 | | 25,000.00 | Fedwire Debit Via: ufirst CU/324079416 NC: Herret Credit Consultants Washington, UT, 84780 us Ref: Weekly Disbursement Imad: 0610B1Qgc04C006747 Tm: 5i4020016iJo |
| Chase | The Litigation Practice Group PC | 3158 | 6/30/2022 | 6/13/2022 | | 1,562.66 | Fedwire Debit Via: Ufirst CU/324079416 A/C: Herret Credit Consultants Washington UT 84780 US Ref: Expense Report Dated 6.6.2022 Imad: 0613B1Qgc05CO1 1493 Tm: 5515700164Jo |
| Chase | The Litigation Practice Group PC | 3133 | 6/30/2022 | 6/17/2022 | | 25,000.00 | Fedwire Deiit Via: CU/324079i46 A/C: Herret Credit Consultants Washington, UT 84780 US Ref: Weekly Disbursement Imad: 0617B1Qgc06C010063 Tm: 482i000i68Jo |
| Chase | The Litigation Practice Group PC | 3133 | 6/30/2022 | 6/23/2022 | | 25,000.00 | Fedwire Debit Via: ufirst CU/324079416 A/C: Herret Credit Consultants Washington, UT, 84780 US Ref: Weekly Disbursement Imad: 0623B1Qgc01C007880 Tm: 6508500174Jo |
| Chase | The Litigation Practice Group PC | 3158 | 6/30/2022 | 6/24/2022 | | 2,272.67 | Fedwire Debit Via: CU/324079416 A/C: Herret Credit Consultants Washington, UT 84780 U5 Ref: Expense Report 6.24.2022 Imad: 0624Bi Qgc05COi 2788 Tm: 65205001 75Jo |
| Chase | The Litigation Practice Group PC | 3133 | 6/30/2022 | 6/30/2022 | | 25,166.87 | Fedwire Debit Via: Ufirst CU/324079416 NC: Herret Credit Consultants Washington, UT, 84780 us Ref: Weekly Disbursement Imad: 0630B1Qgc06C029509 Tm: 5589300118iJo |
| Chase | The Litigation Practice Group PC | 3158 | 6/30/2022 | 6/30/2022 | | 3,739.81 | Fedwire Debit Via: CU/324079i46 NC: Herret Credit Consultants Washington UT 84780 US Imad: 0630B1Qgc08C063177 Tm: 9212300181Jo |
| Chase | The Litigation Practice Group PC | 3133 | 7/31/2022 | 7/8/2022 | | 25,000.00 | Fedwire Debit Via: CU/324079i46 NC: Herret Credit Consultants Washington, uT, 84780 us Ref: Weekly Disbursement Imad: 0708B1 QgcO8COi 9667 Tm: 40444001 89Jo |
| Chase | The Litigation Practice Group PC | 3133 | 7/31/2022 | 7/14/2022 | | 25,000.00 | Fedwire Debit Via: ufirst CU/324079416 A/C: Herret Credit Consultants Washington, UT, 84780 us Ref: Weekly Disbursement Imad: 0714B1Qgc05C006849 Tm: 5i05000i95Jo |
| Chase | The Litigation Practice Group PC | 3133 | 7/31/2022 | 7/21/2022 | | 25,000.00 | Fedwire Debit Via: Ufirst CU/324079416 A/C: Herret Credit Consultants Washington, UT 84780 US Ref: Weekly Disbursement Imad: 0721 B1Qgc2C006744 Tm: 5236700202Jo |
| Chase | The Litigation Practice Group PC | 3133 | 7/31/2022 | 7/29/2022 | | 25,000.00 | Fedwire Debit Via: Ufirst CU/324079416 A/C: Herret Credit Consultants Washington, UT 84780 US Ref: Weekly Disbursement Imad: 0729B1 Qgc08C02496i Tm: 370510021 OJo |
| Chase | The Litigation Practice Group PC | 3133 | 8/31/2022 | 8/5/2022 | | 25,000.00 | Fedwire Debit Via: Ufirst CU/324079416 A/C: Herret Credit Consultants Washington, UT, 84780 us Ref: Weekly Disbursement Imad: 0805B1 Qgc04C004751 Tm: 309860021 7Jo |
| Chase | The Litigation Practice Group PC | 3133 | 8/31/2022 | 8/11/2022 | | 25,000.00 | Fedwire Debit Via: Ufirst CU/324079416 A/C: Herret Credit Consultants Washington, UT, 84780 us Ref: Weekly Disbursement Imad: 0811 B1Qgc02COO5916 Tm: 3912100223Jo |
| Chase | The Litigation Practice Group PC | 3158 | 8/31/2022 | 8/12/2022 | | 2,661.27 | Fedwire Debit Via: ufirst CU/324079416 A/C: Herret Credit Consultants Washington, UT 84780 us Ref: Expense Report 8/11/22 mad: 081 2B1 Qgc06C008771 Tm: 4239500224Jo |
| Chase | The Litigation Practice Group PC | 3133 | 8/31/2022 | 8/19/2022 | | 25,000.00 | Fedwire Debit Via: Ufirst CU/324079416 A/C: Herret Credit Consultants Washington, UT, 84780 US Ret Weekly Disbursement Imad: 0819B1Qgc08C010875 Tm: 2832800231 Jo |
| Chase | The Litigation Practice Group PC | 3133 | 8/31/2022 | 8/26/2022 | | 25,000.00 | Fedwire Debit Via: CU/324079i46 A/C: Herret Credit Consultants Washington, UT, 84780 us Ref: Weekly Disbursement Imad: 0826B1 Qgc07C008520 Tm: 4491 200238Jo |
| Chase | The Litigation Practice Group PC | 3133 | 9/30/2022 | 9/2/2022 | | 25,065.00 | Fedwire Debit Via: CU132407941 6 NC: Herret Credit Consultants Washington, UT, 84780 us Ref: Weekly Disbursement Imad: 090 2B1 Qgc08C009723 Tm: 3724800245Jo |
| Chase | The Litigation Practice Group PC | 3133 | 9/30/2022 | 9/9/2022 | | 25,000.00 | Fedwire Debit Via: Ufirst CU/324079416 A/C: Herret Credit Consultants Washington, UT, 84780 us Ref: Weekly Disbursement mad: 0909B1 Qgc08C00639i Tm: 3433400252Jo |
| Chase | The Litigation Practice Group PC | 3133 | 9/30/2022 | 9/16/2022 | | 25,000.00 | Fedwire Debit Via: Ufirst CU/324079416 NC: Herret Credit Consultants Washington, uT, 84780 us Ref: Weekly Disbursement Imad: 091 6B1 QgcO5COi08i5 Tm: 6654500259Jo |
| Chase | The Litigation Practice Group PC | 3133 | 9/30/2022 | 9/23/2022 | | 25,000.00 | Fedwire Debit Via: Ufirst CU/324079416 A/C: Herret Credit Consultants Washington, UT, 84780 us Ref: Weekly Disbursement mad: 0923B1Qgc07C008957 Tm: 3i01400266iJo |
| Chase | The Litigation Practice Group PC | 3133 | 9/30/2022 | 9/30/2022 | | 25,065.00 | Fedwire Debit Via: CU/324079416 A/C: Herret Credit Consultants Washington, UT, 84780 us Ref: Weekly Disbursement Imad: 0930B1 Qgc08C056458 Tm: 8678800273Jo |
| Chase | The Litigation Practice Group PC | 3133 | 10/31/2022 | 10/6/2022 | | 25,312.01 | Fedwire Debit Via: ufirst CU/324079i46 NC: Herret Credit Consultants Washington, uT, 84780 us Ref: Weekly Disbursement Imad: 1006B1Qgc05C009472 Tm: 4307200279Jo |
| Chase | The Litigation Practice Group PC | 3133 | 10/31/2022 | 10/14/2022 | | 25,000.00 | Fedwire Debit Via: Ufirst CU/324079416 NC: Herret Credit Consultants Washington, UT, 84780 US Ref: Weekly Disbursement Imad: 101 4B1 Qgc07C008258 Tm: 6306900287Jo |
| Chase | The Litigation Practice Group PC | 3133 | 10/31/2022 | 10/21/2022 | | 25,000.00 | Fedwire Debit Via: CU1324079416 A/C: Herret Credit Consultants Washington, UT 84780 US Ref: Weekly Disbursement Imad: 1021 Bi Qgc08C024846 Tm: 5063400294Jo |
| Chase | The Litigation Practice Group PC | 3133 | 11/30/2022 | 11/3/2022 | | 25,000.00 | Fedwire Debit Via: ufirst CU/324079415 NC: Herret Credit Consultants Washington, uT, 84780 us Ret: Weekly Disbursement Imad: 1 103B1Qgc08C015757 Tm: 5161300307Jo |

DRAFT FORM - SUBJECT TO CHANGE

EXHIBIT 4 PAGE 43

In re: The Litigation Practice Group PC
Disbursement Details by Payee
4 Years Pre-Petition (03/20/2019 - 03/20/2023)



| Bank Name | Account Name | Account Number | Statement Date | Transaction Date | Check Number | Debit/Charge | Memo |
|---|---|---|---|---|---|---|---|
| Chase | The Litigation Practice Group PC | 3133 | 11/30/2022 | 11/10/2022 | | 249.37 | Fedwire Debit Vie: Utirst CU/324079416 NC: Herret Credit Consultants Washington, UT, 84780 US Ret: Weekly Disbursement Imed: 11 10B1Qgc08CO4847O Tm: 805640031 4Jo |
| Chase | The Litigation Practice Group PC | 3133 | 11/30/2022 | 11/15/2022 | | 50,000.00 | Fsdwirs Debit Vie: Utiret CU/324079416 NC: Hsrret Credit Consultants Washington, UT, 84780 US Ret: Weekly Disbursement Imad: 111581 OgoO7COl 4416 Tm: 520510031 9Jo |
| Chase | The Litigation Practice Group PC | 3133 | 11/30/2022 | 11/17/2022 | | 25,000.00 | Fedwire Debit Vie: Utiret CU/324079i6 NC: Herret Credit Coesultents Washington, UT, 84780 US Ret: Weekly Disbursement Imad: 11 17B1Cgo08C029297 Tm: 5489400321Jo |
| Chase | The Litigation Practice Group PC | 3158 | 11/30/2022 | 11/30/2022 | | 25,000.00 | Fedwire Debit Vie: Utirst CU/324079416 NC: Herret Credit Consultants Washington, UT 84780 US Ret: Weekly Diaburcement Imad: 11 30B1 Ogo08C057355 Tm: 6932400334Jo |
| Chase | The Litigation Practice Group PC | 3133 | 12/31/2022 | 12/5/2022 | | 104.23 | Fadwira Dabit Vie: Utirat CU/324079416 NC: Harrat Credit Consultants Waabington, UT, 84780 US Ret: Weekly Disbursement Imad: 120581 Ogc08C038670 Tm: 5590200335to |
| Chase | The Litigation Practice Group PC | 3158 | 12/31/2022 | 12/8/2022 | | 25,000.00 | Fedwire Debit Vie: Utirst CU/324079416 NC: Herret Credit Consultants Washington, UT 84780 US Ret File Purchase Imad 1208B1Qgc08003861 1 Tm 71 64500342Jo |
| Chase | The Litigation Practice Group PC | 3158 | 12/31/2022 | 12/13/2022 | | 25,000.00 | Pedwire Debit Vie: Utirat CU/324079416 NC: Herret Credit Consultants Washington, UT, 84780 US Ret: Weekly Diabureement mmcd: 121 3B1 Qgo020004557 Tm: 4060900347Jo |
| Chase | The Litigation Practice Group PC | 3133 | 12/31/2022 | 12/19/2022 | | 247.73 | Fedwire Debit Vie: Utirst CU/324079416 NC: Herret Credit Consultants Washington, UT, 84780 US Rot: Weekly Disbursement Imad: 121981 Qgc08C042837 Tm: 8058200353Jo |
| Chase | The Litigation Practice Group PC | 3133 | 12/31/2022 | 12/30/2022 | | 104.23 | Fedwira Debit Vie: Utirst CU/324D79416 NC: Herret Credit Consultants Washington, UT, 8478D US Ret: Weekly Disbursement Imad: 123DB 1 QgcD8CD67741 Tm: 5572BDD364Jo |
| Bank of America | Litigation Practice Group PC | 6538 | 1/31/2023 | 1/13/2023 | | 247.73 | WIRE TYPE:WIRE OUT DATE230113 TIME1 632 ETTRN:2023011300490017 SERVICE REFO1 8089 BNF:HERRET CREDIT CONSULTANTS 1D3609161 BNF BK:UF IRST CREDIT UNION 1D324079416 PMT DET:421497340 01.1323 WEEKLY DISBURSEMENT |
| Chase | The Litigation Practice Group PC | 3133 | 1/31/2023 | 1/24/2023 | | 25,000.00 | Fedwire Debit Vie: Utirst CU/324079416 NC: Herret Credit Consultants Washington, UT, 84780 US Ret: Weekly Disbursement Imad: 012461 Qgc06C006070 Tm: 5651 300024Jc |
| Chase | The Litigation Practice Group PC | 3133 | 1/31/2023 | 1/27/2023 | | 25,000.00 | Fedwire Debit Vie: Utirst CU/324079416 NC: Herret Credit Consultants Washington, UT, 84700 US Ret: Weekly Disbursement Imad: 01 27B1 QgcO7CO3l 494 Tm: 7445800027Jo |
| Bank of America | Litigation Practice Group PC | 6538 | 2/28/2023 | 2/9/2023 | | 25,000.00 | WIRE TYPEWIRE OUT DATE230209 TIME1 531 ET TRN:2023020900422725 SERVICE REF013944 BNF:HERRET CONSULTANTS ID3609161 BNF BKUFIRSTCR EDIT UNION ID324O7941 6 PMT DET:GSHYWW2CH POP Othe r |
| UnionBank | The Litigation Practice Group PC | 4858 | 2/28/2023 | 2/27/2023 | | 75,000.00 | WIRE TRANS TRN 0227020839 022723 UBOC UB278196N Sent To: UNIVERSITY FIRST FCU Beneficiary: 1/Herret Credit Consultants |
| | | | | | | 1,275,632.61 | |

DRAFT FORM - SUBJECT TO CHANGE

EXHIBIT 4 PAGE 44

# EXHIBIT 5

EXHIBIT 5 PAGE 45

In re: The Litigation Practice Group PC
Disbursement Details by Payee
90 Days Pre-Petition (12/20/2022 - 03/20/2023)

| Bank Name | Account Name | Account Number | Statement Date | Transaction Date | Check Number | Debit/Charge | Memo |
|---|---|---|---|---|---|---|---|
| UnionBank | The Litigation Practice Group PC | 4858 | 2/28/2023 | 2/27/2023 | | 75,000.00 | WIRE TRANS TRN 0227020839 022723 UBOC UB278196N Sent To: UNIVERSITY FIRST FCU Beneficiary: 1/Herret Credit Consultants |
| Chase | The Litigation Practice Group PC | 3133 | 1/31/2023 | 1/27/2023 | | 25,000.00 | Fedwire Debit Via: Utirst CU/324079416 NC: Herret Credit Consultants Washington, UT, 84700 US Ret: Weekly Disbursement Imad: 01 27B1 QgcO7CO3l 494 Tm: 7445800027Jo |
| Chase | The Litigation Practice Group PC | 3133 | 1/31/2023 | 1/24/2023 | | 25,000.00 | Fedwire Debit Vie: Utirst CU}324079416 NC: Herret Credit Consultants Washington, UT, 84780 US Ret: Weekly Disbursement Imad: 012461 0gc06C006070 Tm: 5651 300024Jc |
| Chase | The Litigation Practice Group PC | 3133 | 12/31/2022 | 12/30/2022 | | 104.23 | Fadwira Debit Via: Utirst CU/324D79416 NC: Herrat Cradit Consultants Washington, UT, 8478D US Ret: Weekly Disbursement Imad: 123DB 1 QgcDBCD67741 Tm: 5572BDD364Jo |
| | | | | | | 125,104.23 | |

DRAFT FORM - SUBJECT TO CHANGE

EXHIBIT 5 PAGE 46

# EXHIBIT 6

EXHIBIT 6 PAGE 47

*Legal Counsel.*



**DINSMORE & SHOHL** LLP
1775 Sherman St., Suite 2600
Denver, CO 80203
www.dinsmore.com

Joshua I. Marrone
(303) 831-6958 (direct) · (303) 296-0344 (fax)
Joshua.marrone@Dinsmore.com

**_VIA U.S. Mail Only_**

October 23, 2024

Herret Credit Consultants
C/O Eric R. Gassman
16133 Ventura Blvd, Suite 700
Encino, CA 91436
(818) 206-2444

      Re:    *In re The Litigation Practice Group P.C.*
              U.S. Bankruptcy Court, Central District of California
              Case No. 8:23-bk-10571-SC

Dear Mr. Gassman:

This constitutes a demand to provide any and all documents and information evidencing the basis for, accounting of, and any defenses to my client's claims to avoid and recover, the transfers to Herret Credit Consultants from The Litigation Practice Group P.C. ("Debtor").

As you know, our firm represents Special Counsel to Richard A. Marshack, Chapter 11 Trustee for the bankruptcy estate of The Litigation Practice Group P.C. and liquidating trustee of the LPG Liquidation Trust (collectively, "Trustee") in the above-referenced bankruptcy case. Pursuant to 11 U.S.C. § 1107 and his appointment as Trustee, the Trustee has the obligation to investigate and pursue claims, including fraudulent transfers, preferential transfers, and unauthorized post-petition transfers. Under the Bankruptcy Code, the Trustee has the power to file lawsuits seeking to avoid, recover, and preserve such transfers for the benefit of the Estate. *See* 11 U.S.C. §§ 544 *et seq*. We are aware that you have been in contact with the Trustee for months, and you have received requests that you provide relevant documents and otherwise fully cooperate with the investigation. To date, you have not provided documents.

A review of the Debtor's books and records confirms that Herret Credit Consultants received at least 102 potential fraudulent conveyances totaling at least $1,275,632.61, which can be avoided and recovered by the Trustee pursuant to 11 U.S.C. §§ 544 and 548 and Cal. Civ. Code. §§ 3439.04 and 3439.05; at least 6 potential preferential transfers totaling $150,351.96, which can be avoided and recovered by the Trustee pursuant to 11 U.S.C. §§ 544 and 548 and Cal. Civ. Code. §§ 3439.04 and 3439.05; and at least 1 unauthorized post-petition transfer totaling at least $25,000, which can be avoided and recovered by the Trustee pursuant to 11 U.S.C. § 549(a).

EXHIBIT 6 PAGE 48

Herret Credit Consultants
October 23, 2024
Page 2

The Trustee has been unable to determine why such transfers were made to Herret Credit Consultants, what was provided to the Debtor in exchange for such transfers, and whether defenses exist to the Trustee's claims to avoid and recover the transfers. We demand a response to this letter with any evidence you have related to these transfers including contracts, agreements, subscriptions, invoices, and any other documentation showing the date, terms, and amounts for the transfers received and any documents evidencing shipment dates as to goods and services provided by Herret Credit Consultants to the Debtor. Documents showing the course of dealing between Herret Credit Consultants and the Debtor, the date of receipt of the Debtor's payment and the amount, deposit date, and any proof of deposit for any or all of the transfers will be helpful in determining the permissibility of the transfers and what, if any, value the Debtor received in return for payments made to Herret Credit Consultants.

You are further notified that the claims against Herret Credit Consultants will be governed by the Federal Rules of Bankruptcy Procedure and the Federal Rules of Civil Procedure, which apply to lawsuits filed in federal bankruptcy courts such as the one in the Central District of California. Pursuant to these rules, every party to a lawsuit has a duty to preserve all evidence which could be relevant to the suit. These obligations also arise when, as here, litigation is reasonably foreseeable. This includes the duty to preserve all electronic evidence, such as emails discussing the incident or related to matters at issue in the suit. This duty to preserve evidence is broad and extends to all documents, regardless of whether the document is stored electronically (such as email) or in hard-copy and regardless of the type of document. For example, reports, spreadsheets, photographs and videotapes are all considered documents that must be preserved. Furthermore, the duty to preserve this documentary evidence extends to all documents in existence as of the time you reasonably anticipated this litigation.

To ensure that all relevant documents are preserved, you should communicate directly with all Herret Credit Consultants employees who have possession or control of potentially relevant evidence, including but not limited to personnel who deal with email retention, deletion, and archiving. You should advise each of these employees to preserve any relevant documents in their custody. Furthermore, you should advise all such persons that any regularly scheduled and/or automatic deletion of email or other electronic documents must be discontinued with respect to any relevant data. In addition, any document destruction (such as shredding of documents) must cease with respect to any relevant documents. All relevant documents, both electronic and paper, must be preserved for the duration of this litigation.

The deadline to respond to this request is November 1, 2024. A failure to respond and/or provide the requested documents will result in the Trustee filing an adversary complaint to avoid, recover, and preserve the subject transfers for the benefit of the Estate. Govern yourself accordingly.

If you would like to discuss this matter, please feel free to contact me by telephone (303) 831-6958 or e-mail at Joshua.marrone@dinsmore.com.

Sincerely,

Joshua I. Marrone

EXHIBIT 6 PAGE 49

B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS<br>Richard A. Marshack, Trustee of the LPG Liquidation Trust | DEFENDANTS<br>Herret Credit Consultants, Inc. and Thomas Kyle Herret |
|---|---|

| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>Christopher Celentino     Dinsmore & Shohl LLP<br>Yosina M. Lissebeck      655 West Broadway, Suite 800<br>Joshua Marrone (pro hac vice)  San Diego, California 92101<br>Jeana Mason (pro hac vice)   619.400.0500 | ATTORNEYS (If Known) |
|---|---|

| PARTY (Check One Box Only)<br>☐ Debtor          ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor        ☐ Other<br>☒ Trustee | PARTY (Check One Box Only)<br>☐ Debtor          ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor        ☐ Other<br>☐ Trustee |
|---|---|

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
(1) Avoidance, Recovery, and Preservation of 2-Year Actual Fraudulent Transfers; (2) Avoidance, Recovery, and Preservation of 2-Year Constructive Fraudulent Transfers; (3) Avoidance, Recovery, and Preservation of 4-Year Actual Fraudulent Transfers; (4) Avoidance, Recovery, and Preservation of 4-Year Constructive Fraudulent Transfers; (5) Avoidance, Recovery, and Preservation of Preferential Transfer; (6) Turnover; (7) Disallowance of Claims; and (8) Aiding and Abetting

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☒ 11-Recovery of money/property - §542 turnover of property
☒ 12-Recovery of money/property - §547 preference
☒ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
☒ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ 1,425,984 |

Other Relief Sought
Disallowing Defendant's Proof of Claim ∨

**B1040 (FORM 1040) (12/15)**

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>The Litigation Practice Group P.C. | BANKRUPTCY CASE NO.<br>8:23-bk-10571-SC | |
| DISTRICT IN WHICH CASE IS PENDING<br>Central District of California | DIVISION OFFICE<br>Santa Ana | NAME OF JUDGE<br>Hon. Scott C. Clarkson |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | |
| DATE<br>3/12/25 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Joshua I. Marrow | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.