CHRISTOPHER CELENTINO (131688)
Christopher.Celentino@dinsmore.com
YOSINA M. LISSEBECK (201654)
Yosina.Lissebeck@dinsmore.com
CHRISTOPHER B. GHIO (259094)
Christopher.Ghio@dinsmore.com
JAMIE D. MOTTOLA (309934)
Jamie.Mottola@dinsmore.com
**DINSMORE & SHOHL LLP**
655 West Broadway, Suite 800
San Diego, California 92101
Tele: (619) 400-0500
Fax: (619) 400-0501

SARA A. JOHNSTON (Ky. Bar 96769 – Admitted pro hac vice)
Sara.Johnston@dinsmore.com
**DINSMORE & SHOHL LLP**
101 West Main Street, Ste 900
Lexington, Kentucky 40507
Tele: (859) 425-1000
Fax: (859) 425-1099

*Attorneys for Richard A. Marshack, Plaintiff*
*and Trustee of the LPG Liquidation Trust*

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION

| | |
|---|---|
| In re: | CHAPTER 11 |
| The Litigation Practice Group P.C., | Case No.: 8:23-bk-10571-SC |
| Debtor. | Adv. Proc.: No. 8:25-ap-_____-SC |
| | **COMPLAINT FOR:** |
| Richard A. Marshack, Trustee of the LPG Liquidation Trust | **(1) AVOIDANCE, RECOVERY, AND PRESERVATION OF 2-YEAR ACTUAL FRAUDULENT TRANSFERS;** |
| Plaintiff, | |
| v. | **(2) AVOIDANCE, RECOVERY, AND PRESERVATION OF 2-YEAR CONSTRUCTIVE FRAUDULENT TRANSFERS;** |
| All Service Financial, L.L.C., a Florida limited liability company; Bonnie Silver, individually; Joshua Stomel, individually; and Vivian Stomel, individually | **(3) AVOIDANCE, RECOVERY, AND PRESERVATION OF 4-YEAR ACTUAL FRAUDULENT TRANSFERS;** |
| Defendants. | |
| | **(4) AVOIDANCE, RECOVERY, AND PRESERVATION OF 4-YEAR CONSTRUCTIVE FRAUDULENT TRANSFERS;** |

**(5)  TURNOVER;**

**(6) DISALLOWANCE OF CLAIMS; AND**

**(7) AIDING AND ABETTING FRAUD**

Date:  [To Be Set]
Time:  [To Be Set]

Place:  Courtroom 5C
         411 West Fourth Street
         Santa Ana, California 92701
Judge:  Hon. Scott C. Clarkson

For his *Complaint for (1) Avoidance, Recovery, and Preservation of 2-Year Actual Fraudulent Transfers; (2) Avoidance, Recovery, and Preservation of 2-Year Constructive Fraudulent Transfers; (3) Avoidance, Recovery, and Preservation of 4-Year Actual Fraudulent Transfers; (4) Avoidance, Recovery, and Preservation of 4-Year Constructive Fraudulent Transfers; (5) Turnover; (6) Disallowance of Claims; and (7) Aiding and Abetting Fraud* ("Complaint"), plaintiff Richard A. Marshack, the former Chapter 11 Trustee for the bankruptcy estate ("Estate") of debtor The Litigation Practice Group P.C. ("Debtor" or "LPG") and current liquidating trustee of the LPG Liquidation Trust (collectively "Trustee" or "Plaintiff")  in the above-captioned bankruptcy case ("Bankruptcy Case"), alleges and avers as follows:

**STATEMENT OF JURISDICTION, NATURE OF PROCEEDING,  AND VENUE**

1.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 157(b)(2)(A), (E), (H) and (O), 1334(b), and General Order No. 13-05 of the District Court for the Central District of California because this is a core proceeding arising in and/or related to the Bankruptcy Case, which is a case under Chapter 11 of Title 11 of the United States Code ("Bankruptcy Code"), and which is pending in the United States Bankruptcy Court for the Central District of California, Santa Ana Division ("Bankruptcy Court").

2.      Regardless of whether this proceeding is core, non-core, or otherwise, Plaintiff consents to the entry of a final order and judgment by the Bankruptcy Court.

3.      Defendants, All Service Financial, L.L.C., a Florida limited liability company ("All Service Financial"), Bonnie Silver, individually ("Silver"), Joshua Stomel, individually ("J.

Stomel"), and Vivian Stomel, individually ("V. Stomel" and collectively with All Service Financial, Silver and J. Stomel, "Defendants") are notified that Rule 7008 of the Federal Rules of Bankruptcy Procedure requires Defendants to plead whether consent is given to the entry of a final order and judgment by the Bankruptcy Court.

4.      Venue of this adversary proceeding properly lies in this judicial district pursuant to 28 U.S.C. § 1409(a) because this proceeding is related to Debtor's pending Bankruptcy Case.

## THE PARTIES

5.      Plaintiff, Richard A. Marshack, was the duly-appointed, qualified Chapter 11 Trustee of Debtor's Estate and is now the current liquidating trustee of the LPG Liquidation Trust.

6.      Debtor is, and at all material times was, a professional corporation organized, existing, and in good standing under the laws of the State of California, with its principal place of business in Tustin, California.

7.      Defendant All Service Financial is, and at all material times represented that it was, a limited liability company existing under the laws of the State of Florida. Defendant  All Service Financial may be served by first class mail postage prepaid upon its registered agent for service of process, Registered Agents Inc., at 7901 4th St N, STE 300, St. Petersburg, FL 33702.

8.      Defendant Silver is, and at all material times was, an individual believed to be residing in Wellington, Florida and may be served at 10714 Greenbriar Villa Drive, Wellington, Florida 33449. Silver controlled Defendant All Service Financial.

9.      Defendant J. Stomel is, and at all material times was, an individual believed to be residing in Westlake Village, California and may be served at 4947 Summit View Dr., Westlake Village, California 91362.  J. Stomel also controlled Defendant All Service Financial.

10.      Defendant V. Stomel is, and at all material times was, an individual believed to be residing in Westlake Village, California and may be served at 4947 Summit View Dr., Westlake Village, California 91362. V. Stomel also controlled Defendant All Service Financial.

11.      Upon information and belief, each of the Defendants were the agent, servant, employee, partner, alter ego, or joint venture of the other Defendants, and in doing the things hereinafter alleged, each was acting within the scope of said agency, employment, partnership or

venture, and with the knowledge, permission, consent and ratification of other Defendants in doing, or failing to do, the things alleged herein.

## GENERAL ALLEGATIONS

### A.    LPG's Bankruptcy Case

**12.**    On March 20, 2023 ("Petition Date"), Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, commencing the Bankruptcy Case.

**13.**    The Office of the United States Trustee ("UST") filed its *Motion by United States Trustee to Dismiss or Convert Case Pursuant to 11 U.S.C. § 1112(b)* [Bankr. Docket No. 21] and creditors Debt Validation Fund II, LLC; MC DVI Fund 1, LLC; and MC DVI Fund 2, LLC filed the *Motion by DVF and MC DVI to Dismiss Chapter 11 Case Pursuant to 11 U.S.C. §§ 105, 305, 349, & 1112, or in the Alternative Convert This Case to Chapter 7 or Appoint a Trustee* [Bankr. Docket No. 44]. On May 4, 2023, the Court entered its *Order Directing United States Trustee to Appoint Chapter 11 Trustee* [Bankr. Docket No. 58], thereby granting the UST's motion and directing the UST to appoint a Chapter 11 Trustee in the Bankruptcy case.

**14.**    Pursuant to the *Acceptance of Appointment as Chapter 11 Trustee* [Bankr. Docket No. 63], on May 8, 2023, Trustee accepted his appointment as the Chapter 11 Trustee in the Bankruptcy Case. The Court approved the Trustee's appointment in its *Order Approving the U.S. Trustee's Application for the Appointment of a Chapter 11 Trustee* [Docket No. 65].

**15.**    Pursuant to the Order Confirming Modified First Amended Joint Chapter 11 Plan of Liquidation entered September 9, 2024, and the Notice of Occurrence of Effective Date of Modified First Amended Joint Chapter 11 Plan of Liquidation filed September 24, 2024, Richard A. Marshack became the Liquidating Trustee of the LPG Liquidation Trust, effective September 24, 2024.  [Bankr. Docket Nos. 1646 & 1762].

**16.**    Trustee was not appointed until after events of the case and, therefore, bases these allegations on information and belief. *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017) ("The *Twombly* plausibility standard . . . does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of

culpability plausible."); *Miller v. City of Los Angeles*, 2014 U.S. Dist. LEXIS 198871, 2014 WL 12610195, at \*5 (C.D. Cal. Aug. 7, 2014) (recognizing that the plaintiff's "information and belief" pleading was allowed and "necessary at times"); *see also Mireskandari v. Daily Mail and General Trust PLC*, 2013 U.S. Dist. LEXIS 194437, 2013 WL 12129642, at \*4 (C.D. Cal. July 31, 2013) ("The Federal Rules of Civil Procedure allow parties to plead facts on 'information and belief' if the facts 'will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.'" (citations omitted)).

17.     All claims have been transferred to the Liquidating Trust pursuant to the confirmed Plan and Plaintiff brings this action solely in his capacity as the former Chapter 11 Trustee and current Liquidating Trustee for the Liquidation Trust for the benefit of Debtor's Estate and its creditors.

### B.     **Protective Order**

18.     On or about May 2, 2024, Plaintiff filed that certain Notice and Motion for Entry of Protective Order (the "Protective Order Motion").

19.     On June 3, 2024, the Court entered its Order Granting Motion for Entry of Protective Order and the Protective Order [Docket No. 1270] (the "Protective Order"). A true and accurate copy of the Protective Order is attached as **Exhibit 6**, and incorporated here.

20.     By its own terms, the Protective Order applies to this adversary proceeding and governs all discovery conducted herein.

### C.     **LPG and Tony Diab**

21.     LPG operated a law firm for consumers across the country who sought assistance in contesting or resolving debts they would identify.

22.     The consumers would pay LPG over a period of time via monthly debits and/or ACH debits from their bank accounts.

23.     The monthly payments were meant to cover all legal services LPG provided to the consumers including validation of the debts, review of documents to determine enforceability, and court appearances to halt lawsuits to obtain judgments.

///

///

24.     In certain instances, LPG would file a lawsuit in an effort to eliminate a disputed debt or to prosecute affirmative claims held by the consumers.

25.     LPG mismanaged the consumers' monthly payments.

26.     Tony Diab is, and at all relevant times was, an individual who operated, dominated and controlled LPG ("Diab"). Diab and others devised a plan to fraudulently transfer funds, client files, client funds and assets in the form of ACH Receivables (the "ACH Receivables" or "Accounts Receivable") out of LPG to third parties prior to the filing of bankruptcy.

27.     To obtain consumer clients, LPG contracted with marketing companies, who engaged in illegal capping and would advertise or call to solicit consumers to become clients of LPG in exchange for a percentage of the ACH Receivables collected by LPG from the consumers.

28.     The marketing affiliate went so far as to assist with the execution of an engagement letter between the consumer and LPG.

29.     In exchange, LPG agreed to pay the marketing affiliates a percentage the monthly payments collected by LPG from the consumers.

30.     Because LPG received payments from consumers over time, it often sought financing by borrowing against its future cash flows. This borrowing was not only used to finance operations at LPG, but also to pay the fees owed to the marketing companies for providing the client referrals.

31.     Many of the documents executed in connection with such financing described the transactions as accounts receivable purchase agreements.

32.     Diab used entities he controlled, and were his alter egos, including, without limitation, Vulcan, Coast Processing and thereafter becoming Coast Processing, LLC dba LPG ("Coast Processing"), PrimeLogix, Maverick Management, LLC, Validation Partners LLC and/or Validation, LLC ("Validation") to divert LPG consumer funds and ACH Receivables. Diab would use numerous ACH processing companies in order to easily transfer millions of dollars from Debtor to these entities he controlled, without oversight or detection, and to avoid payment disputes and complications. The money that flowed from Debtor through these bank accounts to defendants consisted of Client Funds that Debtor funneled to these entities by means of the ACH processing

companies.[1] Debtor also made deposits into these entities bank account such that they received Client Funds directly from Debtor in addition to future Accounts Receivable.

33.      The money that flowed from LPG through Coast Processing's bank account to Defendant All Service Financial consisted of Client Funds that LPG funneled to Coast Processing by means of the ACH processing companies.

34.      LPG's monthly revenue from client files was primarily received via ACH payments. In order to process ACH payments, LPG was required to enlist the services of ACH payment processing companies who handle high risk transactions. In this regard, Diab enlisted numerous ACH processing companies[2] in order to easily switch between different vendors and quickly transfer millions of dollars of LPG funds to entities he controlled, generally in less than three days from receipt of funds by the processing company. One reason for the plethora of processing company vendors was to avoid payment disputes and complications with the vendor itself. Switching between ACH processing companies further facilitated unauthorized double pulls, and made it more difficult for LPG clients to dispute, prevent or stop unauthorized ACH transactions, even where the Client disputed the transactions, had cancelled their services, and/or requested a refund.

**D.      LPG's Ponzi Scheme**

35.      The Ponzi Scheme Presumption exists in bankruptcy proceedings.

36.      The Ponzi Scheme Presumption can be utilized to establish a debtor's "intent to defraud future undertakers [investors] from the mere fact that a debtor was running a Ponzi scheme. Indeed, no other reasonable inference is possible. A Ponzi scheme cannot work forever. The investor pool is a limited resource and will eventually run dry. The perpetrator must know that the scheme will eventually collapse as a result of the inability to attract new investors. The perpetrator nevertheless makes payments to present investors, which, by definition, are meant to attract new investors. He must know all along, from the very nature of his activities, that investors at the end of

---

[1]    The ACH processing companies LPG used and which Diab controlled includes, but is not limited to, EPPS; EquiPay; Merit Fund; Authorize.net; World Global; Optimum Bank; BankUnited; Marich Bein; Revolv3; Maverick Bankcard; FIS; and/or Guardian.

[2]    The ACH processing companies LPG also used and which Diab controlled includes, but is not limited to, EPPS; EquiPay; Merit Fund; Authorize.net; World Global; Optimum Bank; BankUnited; Marich Bein; Revolv3; Maverick Bankcard; FIS; and/or Guardian.

the line will lose their money. Knowledge to a substantial certainty constitutes intent in the eyes of the law, *cf. Restatement (Second) of Torts § 8A (1963 & 1964)*, and a debtor's knowledge that future investors will not be paid is sufficient to establish his actual intent to defraud them. *Cf. Coleman Am. Moving Servs., Inc. v. First Nat'l Bank & Trust Co. (In re American Properties, Inc.)* (Bankr.D.Kan. 1981)14 B.R. 637, 643 (intentionally carrying out a transaction with full knowledge that its effect will be detrimental to creditors is sufficient for actual intent to hinder, delay or defraud within the meaning of § 548(a)(1))." *Merrill v. Abbott (In re Independent Clearing House Co.* 77 B.R. 843, 860 (D. Utah 1987).

37.    "But if all the debtor receives in return for a transfer is the use of the defendant's money to run a Ponzi scheme, there is nothing in the bankruptcy estate for creditors to share. In fact, by helping the debtor perpetuate his scheme, the transfers exacerbate the harm to creditors by increasing the amount of claims while diminishing the debtor's estate. In such a situation, the use of the defendant's money cannot objectively be called "reasonably equivalent value." *Id*. at 859. Therefore, "[t]he trustee can avoid the transfers if they were preferential or fraudulent. Transfers to investors in a Ponzi scheme are preferential and fraudulent. Therefore, they constitute "property of the estate," and the trustee can recover them. *Id.* at 853 n.17 (citations omitted).

38.    Debtor was operating a Ponzi scheme that utilized Defendant All Service Financial and several other entities as investors to continue its unlawful business practices by using funds provided by current investors to attract new investors hoping for very high returns. Therefore, the Debtor was running a Ponzi scheme and the Ponzi Scheme Presumption can be utilized to infer that the Debtor had the intent to defraud investors within the meaning of 11 U.S.C. section 548(a)(1).

39.    Moreover, since the Transfers were made with the intent to further the Ponzi scheme, the Debtor did not receive an objectively reasonable equivalent value for the Transfers, and the Trustee can avoided the Transfers because they were preferential and fraudulent.

E.    **The Criminal Enterprise**

40.    Debtor's operations, activities and transfers done in furtherance of the Ponzi scheme, including those in conjunction with its affiliates and its dealings with Defendants, also constituted a criminal enterprise.

41.     This, too, is evidenced by the Court's order in the 1046 Action wherein it denied the

Motion of Greyson Law Center to Vacate the Preliminary Injunction previously entered in Debtor's

main case, and the Court offered the opinion:

> Through the various proceedings and evidence produced in both the main case and the various adversary proceedings, including but not limited to various Motions for Temporary Restraining Orders, Preliminary Injunctions, Motions to Dismiss, a Motion for Appointment of a Chapter 11 Trustee, a Motion to Sell Assets, a multitude of pleadings filed by both secured and unsecured creditors (supported by evidence presented under oath) in support of their claims, and especially the pleadings and evidence presented by the "Watchdog of the Bankruptcy System" aka the Office of the United States Trustee (an arm of the United States Department of Justice), *it is clear to this Court that Debtor, since its pre-petition inception (and through the time of the appointment of the Chapter 11 Trustee) was in the Court's opinion, operating a criminal enterprise.*

Case No. 8:23-bk-10571-SC; Adv. No. 8:23-ap-01046-SC [Bankr. Docket No. 1545, p.3

(emphasis in original)].

42.     As part of this criminal enterprise, Debtor and Defendants engaged in fraudulent

transfers of its accounts receivables pursuant to various agreements, including the Affiliate

Agreement (as defined below).

**F.      Defendant All Service Financial**

43.     Upon information and belief, Defendants Silver, J. Stomel, and V. Stomel, is, and at

all material times were, the controlling parties of Defendant All Service Financial.

44.     Defendant All Service Financial was one of the marketing companies that procured

clients for LPG.

45.     LPG agreed to pay, and in fact paid, Defendant  All Service Financial a portion of the

monthly payments received from consumers referred by Defendant All Service Financial.

46.     Defendant All Service Financial also entered into agreements pursuant to which it

purported to sell accounts receivable back to LPG.

**i.       Affiliate Agreement**

47.     On or about February 19, 2020, LPG, through BAT Inc., doing business as Coast

Processing which became a dba of LPG (also "LPG" or "Debtor"), entered into an Amended and

Restated Affiliate Agreement with Defendant All Service Financial which amends and restates that

certain Affiliate Agreement dated September 1, 2019 (collectively the "Affiliate Agreement"). A true and accurate copy of the Affiliate Agreement is attached as **Exhibit 1**, and incorporated here.

48.    The Affiliate Agreement states that LPG, through BAT Inc., doing business as Coast Processing, *inter alia*, "is in the business of providing a package debtor's rights services in the form of debt validation, consultation, and litigation defense through law firms for which BAT provides administrative support services (those law firms include but are not limited to The Litigation Practice Group PC and Sonoma County Law). *See* **Ex. 1**.

49.    The Affiliate Agreement also states that Defendant All Service Financial "owns and operates a system of generating leads consisting of consumers interested in the legal services offered by BAT." *See* **Ex. 1**.

50.    Pursuant to the Affiliate Agreement, Defendant All Service Financial generated leads consisting of consumers interested in the legal services offered by Debtor and referred those consumers to Debtor. *See* **Ex. 1**.

51.    Defendant All Service Financial went so far as to assist with the execution of an engagement letter with the consumer. *See* **Ex. 1**.

52.    Pursuant to the Affiliate Agreement, Debtor agreed to pay Defendant All Service Financial as follows:

> Affiliate shall be entitled to receive the following as full and complete compensation for its services to BAT: BAT shall pay 69% per file for each file that Affiliate places with BAT, not counting the monthly maintenance fee of $71.38, which BAT shall retain to cover administrative costs for each file. BAT shall calculate the amount of each file, apply the above-identified percentage fee, and remit the same to Affiliate pursuant to an agreed-upon schedule not to exceed one remittance per seven (7) calendar days. If any consumer cancels BAT's services, or demands a refund for payment for such services, or both, then Affiliate shall be responsible for returning the entirety of its fees collected on such file to BAT (in such percentage as is set forth herein). BAT has exclusive discretion to grant or deny a requested refund or cancellation. BAT shall be entitled to offset any future payments to Affiliate in order to recover a refund awarded by BAT. Finally, BAT may treat a consumer's failure to remit payment in a timely manner as a cancellation of the legal services agreement executed by consumer with BAT, and has sole discretion to make such determination. *See* **Ex. 1**.

53.    On or about April 6, 2022, Defendant All Service Financial, Debtor and BAT Inc. dba

as Coast Processing entered into Settlement Agreement and Mutual Release ("Settlement Agreement") whereby the parties agreed to settle certain disputes that arose from the Affiliate Agreement. A true and accurate copy of the Settlement Agreement is attached as **Exhibit 2**, and incorporated here.

54.    Pursuant to the Settlement Agreement, Defendant All Service Financial again describes its services as generating leads consisting of consumers interested in the legal services offered by Debtor and referred those consumers to Debtor. *See* **Ex. 2**.

55.    Further, pursuant to the Settlement Agreement, Debtor took over BAT Inc. dba Coast Processing's obligations under the Affiliate Agreement. *See* **Ex. 2**.

56.    Pursuant to the Affiliate Agreement and as evidenced by the Settlement Agreement, Defendant All Service Financial purported to sell Debtor streams of monthly payments from consumers that were supposed to be held in trust until earned. *See* **Ex. 1 and Ex. 2**.

57.    By entering into the Affiliate Agreement, Debtor and Defendant All Service Financial violated federal and state laws by selling unearned legal fees or funds there were supposed to be held in trust or used for the benefit of consumers.

58.    The Affiliate Agreement violates Sections 6151 and 6155 of the California Business and Professional Code, which prohibit referrals of potential clients to attorneys unless registered with the State Bar of California. Cal. Bus. & Prof. Code § 6155. "Referral activity" includes "any entity 'which, in person, electronically, or otherwise, refers the consumer to an attorney or law firm not identified' in the advertising." *Jackson v. LegalMatch.com*, 42 Cal. App. 5th 760, 775 (2019). A referral includes receiving information from potential clients and sending that information to lawyers, even when the advertiser does not advertise the name of the attorneys and the clients do not clear the name of the potential attorney after the referral occurred. *Id.*

59.    Further, if any effect of an agreement is to accomplish an unlawful purpose, the agreement may be declared illegal regardless of the intention of the parties. *Stockton Morris Plan Co. v. Cal. Tractor & Equip. Corp.*, 112 Cal. App. 2d 684, 690 (1952) (citing *Fewel & Dawes, Inc. v. Pratt*, 17 Cal. 2d 85, 91 (1941)). This remains true regardless of whether the contract has been performed. *Stevens v. Boyes Hot Springs Co.*, 113 Cal. App. 479, 483 (1931) (A contract by a

corporation to purchase its own stock has the effect of illegally withdrawing and paying to a stockholder a part of the capital stock of the corporation and is illegal and void, regardless of the fact that the contract is fully performed by the sellers and partially performed by the corporation.); *Mansfield v. Hyde*, 112 Cal. App. 2d 133, 139 (1952), overruled, *Fomco, Inc. v. Joe Maggio, Inc.*, 8 Cal. Rptr. 459 (1960) (Where object of statute requiring licenses is to prevent improper persons from engaging in particular activity, or is for purpose of regulating occupation or business for protection of public, imposition of penalty amounts to prohibition against engaging in occupation or business without license, and contract made by unlicensed person in violation of statute is invalid.);  *Firpo v. Murphy*, 72 Cal. App. 249, 252 (1925) (A contract to pay commissions to a real estate broker is illegal and he is not entitled to recover thereon where he fails to secure the license required by law to carry on his business.).

**60.**    Because the Affiliate Agreement violates federal and state law, it is void, unenforceable, and subject to avoidance as fraudulent. Any alleged consideration provided under the Affiliate Agreement was unlawful.

**61.**     Unlawful consideration is that which is: "(1) contrary to an express provision of law; (2) contrary to the policy of express law, though not expressly prohibited; or (3) otherwise contrary to good morals." Cal. Civ. Code § 1667. "If any part of a single consideration for one or more objects, or of several considerations for a single object, is unlawful, the entire contract is void." Cal. Civ. Code § 1608.

### ii.    Demand Letter

**62.**    On or about October 10, 2024, Trustee sent a demand letter to Defendant All Service Financial (the "Demand Letter"). A true and accurate copy of the Demand Letter is attached as **Exhibit 3**, and incorporated here.

**63.**    The Demand Letter discussed certain known transfers from Debtor that were made to Defendant All Service Financial prior to the Petition Date. The transfers were listed on the attached "Transfer Schedule" showing the date and amount, according to Debtor's books and records, of each transfer or other payment ("Transfer Schedule"). Trustee requested payment of the total amount due under the Transfer Schedule that amounted to $866,462.06, in exchange for a waiver and release

from all claims that could be asserted by Trustee against Defendant pursuant to 11 U.S.C. §§ 547 and 550.

64.     Based on the information available to Trustee and considering the nature of the relationship between Debtor and Defendant All Service Financial, no potential defenses were identified that could reduce Defendant All Service Financial's liability for the transfers. Consequently, Defendant All Service Financial was requested to provide any facts and valid defenses that could substantiate its position and potentially mitigate or prevent some or all of the transfers made by Debtor.

65.     Defendant All Service Financial did not respond to the Demand Letter.

**G.     Payments to Defendant All Service Financial**

66.     During the applicable reach-back period, Debtor paid Defendant All Service Financial the sum of at least $866,462.06 between December 2021 and November 2022, subject to proof at trial ("Transfers"). A true and accurate list of the known payments made by Debtor to Defendant All Service Financial is attached as **Exhibit 4**, and incorporated here.

**H.     Defendant All Service Financial's Proof of Claim**

67.     Defendant All Service Financial filed a proof of claim on December 29, 2023 alleging that Debtor owes it an unsecured claim in the amount of $1,392,206.24 as Claim No. 2303 ("Proof of Claim"). A true and accurate copy of the Proof of Claim is attached as **Exhibit 5**, and incorporated here.

68.     As the basis of the Proof of Claim, All Service Financial indicates the amounts owed are for "procuring and sale of consumer leads for LPG legal services." *See* **Ex. 5**, Proof of Claim, Part 2, Number 8.

**I.     Defendant Silver**

69.     Defendant Silver was, at all times mentioned herein, in an executive position, such as President, Chief Executive Office, Authorized Member and/or Authorized Agent, with Defendant All Service Financial.

70.     As an executive of Defendant All Service Financial, Defendant Silver had control of and authorized Defendant All Service Financial's financial operations.

**71.**    Defendant Silver executed agreements, such as the Affiliate Agreement and the Settlement Agreement, with Debtor, or one of its ACH processing companies, on behalf of Defendant All Service Financial. *See* **Ex. 1** and **Ex. 2**.

**72.**    As an executive of Defendant All Service Financial, Defendant Silver had knowledge of the business dealings with Debtor, including but not limited to the payment structure between consumers of Debtor and Debtor's ACH processing companies, and Defendant All Service Financial.

**73.**    Defendant Silver, through authorizing actions of Defendant All Service Financial, facilitated Debtor's criminal enterprise by advertising and marketing Debtor's services to potential consumers and thereafter enrolling consumers to pay for Debtor's services.

**74.**    Defendant Silver used the business operations between Defendant All Service Financial and Debtor for her personal gain.

**J.**    **Defendant J. Stomel**

**75.**    Defendant J. Stomel was, at all times mentioned herein, in an executive position, such as Authorized Member and/or Authorized Agent, with Defendant All Service Financial.

**76.**    As an executive of Defendant All Service Financial, Defendant J. Stomel had control of and authorized Defendant All Service Financial's financial operations.

**77.**    Defendant J. Stomel executed agreements, such as the Settlement Agreement, with Debtor, or one of its ACH processing companies, on behalf of Defendant All Service Financial. ***See*** **Ex. 2**.

**78.**    As an executive of Defendant All Service Financial, Defendant J. Stomel had knowledge of the business dealings with Debtor, including but not limited to the payment structure between consumers of Debtor and Debtor's ACH processing companies, and Defendant All Service Financial.

**79.**    Defendant J. Stomel, through authorizing actions of Defendant All Service Financial, facilitated Debtor's criminal enterprise by advertising and marketing Debtor's services to potential consumers and thereafter enrolling consumers to pay for Debtor's services.

**80.**    Defendant J. Stomel used the business operations between Defendant All Service Financial and Debtor for his personal gain.

### K.    **Defendant V. Stomel**

**81.**    Defendant V. Stomel was, at all times mentioned herein, in an executive position, such as an Authorized Member, with Defendant All Service Financial.

**82.**    As an executive of Defendant All Service Financial, Defendant V. Stomel had control of and authorized Defendant All Service Financial's financial operations.

**83.**    As an executive of Defendant All Service Financial, Defendant V. Stomel had knowledge of the business dealings with Debtor, including but not limited to the payment structure between consumers of Debtor and Debtor's ACH processing companies, and Defendant All Service Financial.

**84.**    Defendant V. Stomel, through authorizing actions of Defendant All Service Financial, facilitated Debtor's criminal enterprise by advertising and marketing Debtor's services to potential consumers and thereafter enrolling consumers to pay for Debtor's services.

**85.**    Defendant V. Stomel used the business operations between Defendant All Service Financial and Debtor for her personal gain.

### L.    **LPG's Prepetition Creditors**

**86.**    Debtor was insolvent when each Transfer was made. This insolvency is evidenced in part by the fact that 14 separate UCC-1 statements were of record securing debts of the Debtor as of September 1, 2022. These statements remained unreleased as of the Petition Date. These statements either reflected secured liens against the Debtor's assets then owned or thereafter acquired, or provided evidence of the assignment or sale of substantial portions of the Debtor's future income.

**87.**    When the Transfers were made, these prior UCC-1 statements secured the repayment of the following claimed amounts that are currently known to Trustee and are allegedly owed by the Debtor: (i) $2,374,004.82 owed to Fundura Capital Group as evidenced by Proof of Claim No. 335 purportedly secured by a UCC statement filed on or about May 19, 2021; (ii) approximately $15 million dollars owed to MNS Funding, LLC as evidenced by Proof of Claim No. 1060 purportedly secured by a UCC statement filed on or about May 28, 2021; (iii) approximately $5,000,000 owed to Azzure Capital, LLC as evidenced by Proof of Claim No. 127 secured by a UCC statement filed on or about May 28, 2021; and (iv) approximately $1.5 million dollars owed to Diverse Capital, LLC

purportedly secured by UCC statements filed on or about September 15, 2021, and December 1, 2021.[3]

88.     As alleged above, LPG was borrowing against its assets and future income, often on unfavorable terms, not only to finance operations at LPG, but also to pay the fees owed to the marketing affiliates for providing it with consumer clients. Pursuant to the agreements with the marketing companies, significant percentages of future payments were already promised to be paid to the marketing affiliates from whatever future income the Debtor would receive.

89.     In addition, on Debtor's Schedule E/F [Bankr. Docket No. 33], Debtor scheduled 11 unsecured creditors with priority unsecured claims totaling $374,060.04. These priority unsecured creditors include Indiana Dept. of Revenue, Dept. of Labor and Industries, Arizona Dept. of Economic Security, Arkansas Dept. of Finance & Admin., California Franchise Tax Board, Georgia Dept. of Labor, Internal Revenue Service, Mississippi Dept. of Revenue, Nevada Dept. of Taxation, Utah State Tax Commission, and Wisconsin Dept. of Revenue (collectively, "Priority Unsecured Creditors").

90.     Another group of creditors that Debtor listed on its Schedule E/F [Bankr. Docket No. 33] are nonpriority unsecured creditors. Those 58 creditors have scheduled claims totaling $141,439,158.05 and include Ajilon; Anthem Blue Cross; Azevedo Solutions Groups, Inc.; Carolina Technologies & Consulting Invoice; Collaboration Advisors; Credit Reporting Service Inc.; CT Corporation – Inv.; Debt Pay Pro; Document Fulfillment Services; EnergyCare, LLC; Exela Enterprise Solutions; First Legal Network, LLC; GHA Technologies Inc.; Harrington Electric, Inc.; Imagine Reporting; Juize, Inc.; Krisp Technologies, Inc.; Liberty Mutual; Marc Lemauviel – Allegra; MarkSYS Holdings, LLC; Netsuite-Oracle; Pitney Bowes; Rapid Credit, Inc.; SBS Leasing A Program of De Lage Landen; Security Solutions; Sharp Business Systems; Streamline Performance, Inc.; Thomson Reuters; Twilio, Inc.; Nationwide Appearance Attorneys; Executive Center, LLC; Outsource Accelerator, Ltd.; TaskUs Holdings, Inc.; Marich Bein, LLC; Validation Partners; MC DVI Fund 1, LLC; MC DVI Fund 2, LLC; Debt Validation Fund II, LLC; Tustin Executive Center;

---

[3] Trustee reserves all rights, claims, and defenses with respect to these and any other purported secured or unsecured claims.

LexisNexus; JP Morgan Chase; Business Centers of America; Michael Schwartz; Anibal Colon Jr.; Kathleen Lacey; David Ulery; Kimberly Birdsong; Kevin Carpenter; Karen Suell; Gloria Eaton; Carolyn Beech; Debra Price; Kenneth Topp; Darcey Williamson, Trustee; James Hammett; Johnny Rizo; Beverly Graham; Kathleen Scarlett; and Geneve and Myranda Sheffield (collectively, "Nonpriority Unsecured Creditors" and, together with the Secured Creditors and Priority Unsecured Creditors, "Prepetition Creditors").

91. As of the filing of this complaint, approximately 5,771 claims have been filed with the bankruptcy Court. While Trustee has not reviewed all claims as of the date of this complaint, and reserves all rights to object to those claims, the total amount is in excess of approximately $717,507,462.29.

**FIRST CLAIM FOR RELIEF**

**Count I - Avoidance, Recovery, and Preservation of Actual Fraudulent Transfers Against**

**Defendant All Service Financial**

**[11 U.S.C. §§ 548(a)(1)(A), 550, and 551]**

92. Plaintiff realleges and incorporates here by reference each and every allegation contained in paragraphs 1 through 91 as though set forth in full.

93. The Affiliate Agreement as modified by the Settlement Agreement and all or a portion of the Transfers occurred within the two years prior to the Petition Date.

94. On or after the date that such agreements were executed and the Transfers were made, entities to which Debtor was or became indebted include the Prepetition Creditors.

95. The Transfers happened while Debtor was insolvent or rendered Debtor insolvent.

96. Despite Debtor's obligation to the Prepetition Creditors, Debtor continued to pay Defendant All Service Financial sums received from consumers under the Affiliate Agreement and Settlement Agreement, which constitutes an illegal capping agreement between Defendant All Service Financial and Debtor. Any obligation of the Debtor arising from such agreement is also avoidable as fraudulent.

///

///

97.     Despite Debtor's obligation to the Prepetition Creditors, Defendant All Service Financial continued to sell or transfer portions of its accounts receivable to Debtor, which is illegal under federal and state laws.

98.     The Transfers were made with actual intent to hinder, delay, or defraud creditors of Debtor.

99.     The Debtor was operating a Ponzi scheme and the Ponzi Scheme Presumption can be utilized to infer the Debtor's actual intent to defraud within the meaning of 11 U.S.C. section 548(a)(1).

100.     The Debtor's conduct was done with oppression, fraud, and malice, as defined in Civil Code section 3294, entitling the Trustee to, in addition to the actual damages, exemplary or punitive damages for making an example of the Debtor and to punish the Debtor.

101.     The Affiliate Agreement, Settlement Agreement and the Transfers of Debtor's funds are avoidable as fraudulent pursuant to 11 U.S.C. §§ 548(a)(1)(A), 550, and 551, and the common law tort of intentional fraudulent transfers by one or more creditors who held and hold unsecured claims against Debtor that were and are allowable against the Estate under 11 U.S.C. § 502 or that were not and are not allowable only under 11 U.S.C. § 502(e), including, without limitation, the Prepetition Creditors.

102.     The Affiliate Agreement, Settlement Agreement and the Transfers should be avoided as fraudulent under 11 U.S.C. § 548(a)(1)(A) and under the common law tort of intentional fraudulent transfers, and such transferred property, or the value thereof, should be recovered and preserved for the benefit of the Estate pursuant to 11 U.S.C. §§ 550 and 551.

## SECOND CLAIM FOR RELIEF

**Count II - Avoidance, Recovery, and Preservation of Constructive Fraudulent Transfers**

**Against Defendant All Service Financial**

**[11 U.S.C. §§ 548(a)(1)(B), 550, and 551]**

103.     Plaintiff realleges and incorporates here by reference each and every allegation contained in paragraphs 1 through 102 as though set forth in full.

104.     The Affiliate Agreement as modified by the Settlement Agreement and all or a portion

of the Transfers occurred within the two years prior to the Petition Date.

**105.** On or after the date that such agreements were executed and such Transfers were made, entities to which Debtor was or became indebted include the Prepetition Creditors.

**106.** The Transfers happened while Debtor:

a. was insolvent or became insolvent as a result;

b. was engaged or was about to engage in a transaction for which any property remaining with Debtor was of unreasonably small capital; or

c. intended to incur, or believed that it would incur, debts beyond its ability to pay as such debts matured.

**107.** Because the referrals from Defendant All Service Financial to Debtor are illegal under federal and state law, they are void and subject to avoidance as fraudulent. Any purported consideration constitutes unlawful consideration, which cannot constitute reasonably equivalent value. Thus, at the time the agreements were executed and the Transfers made, Debtor received less than reasonably equivalent value.

**108.** Furthermore, the Debtor did not receive the reasonably equivalent value of the Transfers to Defendant All Service Financial because by using Defendant All Service Financial's money to run a Ponzi scheme there is nothing in Estate for the creditors to share. Rather, the Transfers exacerbated the harm to creditors by increasing the amount of claims while diminishing the Debtor's Estate. In this situation, the use of Defendant All Service Financial's money to further the Debtor's Ponzi scheme cannot be consideration for the Transfers and cannot objectively be called reasonably equivalent value.

**109.** Therefore, Defendant All Service Financial was acting as an investor in the Debtor's Ponzi scheme. Any transfers made to Defendant All Service Financial can be avoided by the Plaintiff since the Transfers are preferential and fraudulent such that they constitute property of the Estate in which the Plaintiff can recover.

**110.** The Affiliate Agreement, Settlement Agreement and the Transfers should be avoided as fraudulent under 11 U.S.C. § 548(a)(1)(B), and such transferred property, or the value thereof, should be recovered and preserved for the benefit of the Estate pursuant to 11 U.S.C. §§ 550 and

551.

### THIRD CLAIM FOR RELIEF

**Count III - Avoidance, Recovery, and Preservation of Actual Fraudulent Transfers Against**

**Defendant All Service Financial**

**[11 U.S.C. §§ 544(b), 550, and 551; Cal. Civ. Code §§ 3439.04(a), 3439.04(b), and 3439.07]**

111.    Plaintiff realleges and incorporates here by reference each and every allegation contained in paragraphs 1 through 110 as though set forth in full.

112.    The Affiliate Agreement, Settlement Agreement, and all or a portion of the Transfers occurred within the four years prior to the Petition Date.

113.    On or after the date that such agreements were entered and such Transfers were made, entities to which Debtor was or became indebted include the Prepetition Creditors.

114.    Despite Debtor's obligation to the Prepetition Creditors, Debtor continued to pay Defendant All Service Financial sums received from consumers under the Affiliate Agreement and Settlement Agreement, which constitutes an illegal capping agreement between Defendant All Service Financial and Debtor.

115.    Because the referrals from Defendant All Service Financial to Debtor are illegal under federal and state law, they are void and subject to avoidance as fraudulent. Any purported consideration constitutes unlawful consideration, which cannot constitute reasonably equivalent value. Thus, at the time the agreements were executed and the Transfers made, Debtor received less than reasonably equivalent value.

116.    The Transfers were made with actual intent to hinder, delay, or defraud creditors of Debtor.

117.    The Debtor was operating a Ponzi scheme and the Ponzi Scheme Presumption can be utilized to infer the Debtor's actual intent to defraud within the meaning of 11 U.S.C. § 548(a)(1). The Debtor's conduct was done with oppression, fraud, and malice, as defined in Civil Code § 3294, based on the Ponzi Scheme Presumption, entitling the Trustee to, in addition to actual damages, exemplary or punitive damages.

118.    The Affiliate Agreement, Settlement Agreement and the Transfers of Debtor's funds

are avoidable as fraudulent pursuant to 11 U.S.C. § 544(b) and Cal. Civ. Code §§ 3439.04(a) and 3439.07 by one or more creditors who held and hold unsecured claims against Debtor that were and are allowable against the Estate under 11 U.S.C. § 502 or that were not and are not allowable only under 11 U.S.C. § 502(e), including, without limitation, the Prepetition Creditors.

119.    Accordingly, the Affiliate Agreement, Settlement Agreement and the Transfers should be avoided as fraudulent under 11 U.S.C. §§ 544(b) and Cal. Civ. Code §§ 3439.04(a) and 3439.07, and such transferred property, or the value thereof, should be recovered and preserved for the benefit of the Estate pursuant to 11 U.S.C. §§ 550 and 551 and Cal. Civ. Code § 3439.07.

## FOURTH CLAIM FOR RELIEF

**Count IV - Avoidance, Recovery, and Preservation of Constructive Fraudulent Transfers Against Defendant All Service Financial**

**[11 U.S.C. §§ 544(b), 550, and 551; Cal. Civ. Code §§ 3439.05, and 3439.07]**

120.    Plaintiff realleges and incorporates here by reference each and every allegation contained in paragraphs 1 through 119 as though set forth in full.

121.    The Affiliate Agreement, the Settlement Agreement, and all or a portion of the Transfers occurred within the four years prior to the Petition Date.

122.    The Transfers happened while Debtor:

a.    was insolvent or became insolvent as a result;

b.    was engaged or was about to engage in a transaction for which any property remaining with Debtor was of unreasonably small capital; or

c.    intended to incur, or believed that it would incur, debts beyond its ability to pay as such debts matured.

123.    Because the referrals from Defendant All Service Financial to Debtor are illegal under federal and state law, the agreements are void and subject to avoidance as fraudulent. Any purported consideration constitutes unlawful consideration, which cannot constitute reasonably equivalent value. Thus, at the time the agreements were executed and the Transfers made, Debtor received less than reasonably equivalent value.

124.    The Debtor was operating a Ponzi scheme and the Ponzi Scheme Presumption can be

utilized to infer the Debtor's actual intent to defraud within the meaning of 11 U.S.C. § 548(a)(1). The Debtor's conduct was done with oppression, fraud, and malice, as defined in Civil Code § 3294, based on the Ponzi Scheme Presumption, entitling the Trustee to, in addition to actual damages, exemplary or punitive damages.

125.     Because the sale of the accounts receivable, as more fully described above, are illegal under federal and state law, they are void and subject to avoidance as fraudulent. Any purported consideration constitutes unlawful consideration, which cannot constitute reasonably equivalent value. Thus, at the time the agreements were executed and the Transfers made, Debtor received less than reasonably equivalent value.

126.     The Affiliate Agreement, Settlement Agreement and the Transfers of Debtor's funds are avoidable as fraudulent pursuant to 11 U.S.C. § 544(b) and Cal. Civ. Code §§ 3439.05 and 3439.07 by one or more creditors who held and hold unsecured claims against Debtor that were and are allowable against the Estate under 11 U.S.C. § 502 or that were not and are not allowable only under 11 U.S.C. § 502(e), including, without limitation, the Prepetition Creditors.

127.     Accordingly, the Affiliate Agreement, Settlement Agreement and the Transfers should be avoided as fraudulent under 11 U.S.C. §§ 544(b) and Cal. Civ. Code §§ 3439.05 and 3439.07, and such transferred property, or the value thereof, should be recovered and preserved for the benefit of the Estate pursuant to 11 U.S.C. §§ 550 and 551 and Cal. Civ. Code § 3439.07.

## FIFTH CLAIM FOR RELIEF

### Count V - Turnover of Estate Property Against Defendants

### [11 U.S.C. § 542]

128.     Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 127 as though set forth in full.

129.     Defendants have possession or control over property of the Estate but not limited to the Transfers, any preference transfers, and any post-petition transfers made pursuant to illegal and unenforceable agreements.

130.     The property, including but not limited to the Transfers, any preference transfers, and any post-petition transfers are not of inconsequential value to the Estate.

**131.** The funds that are the subject of the Transfers, any preference transfers, and any post-petition transfers are paramount to Debtor's ability to pay creditors.

**132.** Accordingly, Trustee is entitled to a judgment for turnover of the Transfer pursuant to 11 U.S.C. § 542.

## SIXTH CLAIM FOR RELIEF

### Count VI – Disallowance of Claims Against Defendant All Service Financial

### [11 U.S.C. § 502(d)]

**133.** Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 132 as though set forth in full.

**134.** Defendant All Service Financial filed its Proof of Claim on December 29, 2023 alleging that Debtor owes it an unsecured claim in the amount of $1,392,206.24 as Claim No. 2303. *See* **Ex. 5**.

**135.** Based on the Defendants' conduct set forth above, the Proof of Claim and any other claims having been filed or to be filed by Defendant All Service Financial in the Bankruptcy case should be disallowed pursuant to 11 U.S.C. § 502(d).

## SEVENTH CLAIM FOR RELIEF

### Count VII - Aiding and Abetting Fraudulent Transfer Against Defendants

### [11 U.S.C. §§ 544(b), 550, and 551; Cal. Civ. Code §§ 3439.04(a), 3439.04(b), and 3439.07

**136.** Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 135 as though set forth in full.

**137.** Defendants have possession or control over property of the Estate including, but not limited to the Transfers, any preference transfers, and/or any post-petition Transfers made pursuant to illegal and unenforceable agreements.

**138.** Defendants had knowledge of the fraudulent transactions, transfers, and agreements that were used to perpetuate and conceal the Ponzi scheme and fraudulent transfers.

**139.** Defendants, with the foregoing knowledge, intended to, and did, help the Debtor and other scheme participants in perpetuating and concealing the Ponzi scheme and fraudulent transfers of money.

**140.** At all material times, Defendants had the intent to facilitate and conceal the Ponzi scheme and fraudulent transfers of money by aiding and abetting the illegal capping scheme and signing up consumer clients to keep the business going.

**141.** Defendants assisted, and did actually engage in, LPG's commission of fraud and Ponzi scheme by coordinating, facilitating, and directing payments and transfers of monies and executing documents in furtherance of concealing the true nature of their fraudulent and criminal activity related to the Ponzi scheme.

**142.** Without in any way limiting the foregoing, as President, Chief Executive Office, Authorized Member and/or Authorized Agent, Defendant Silver used her control over Defendant All Service Financial to support, participate in, and benefit from LPG's Ponzi scheme and fraudulent transfers.

**143.** Without in any way limiting the foregoing, as Authorized Member and/or Authorized Agent, J. Stomel used his control over Defendant All Service Financial to support, participate in, and benefit from LPG's Ponzi scheme and fraudulent transfers.

**144.** Without in any way limiting the foregoing, as Authorized Member, V. Stomel used her control over Defendant All Service Financial to support, participate in, and benefit from LPG's Ponzi scheme and fraudulent transfers.

**145.** The injuries to Plaintiff, the Debtor's Estate and to its creditors directly, proximately and reasonably foreseeably resulting from and caused by these fraudulent transfers and Ponzi scheme include, without limitation, hundreds of thousands of dollars in improperly transferred and acquired monies.

**146.** The property, including but not limited to the Transfers are not of inconsequential value to the Estate and recovering these funds is paramount to Debtor's ability to pay creditors.

**147.** Plaintiff and the Debtor's Estate also suffered damages by incurring attorney's fees and costs associated with the prosecution of Defendants' unlawful activities.

## **RESERVATION OF RIGHTS**

Plaintiff reserves the right to bring all other claims or causes of action that Plaintiff may have against Defendants, on any and all grounds, as allowed under the law or in equity, including but not

limited to, those claims not known by the Trustee at this time but that he may discover during the pendency of this adversary proceeding.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for a judgment as follows:

**On The First, Second, Third, and Fourth Claims for Relief:**

1.     Avoiding, recovering, and preserving the Transfers against Defendant All Service Financial;

**On the Fifth Claim for Relief:**

2.     Ordering Defendant All Service Financial to immediately turn over the Transfers;

**On the Sixth Claim for Relief:**

3.     Order disallowing Defendant All Service Financial's proof of claim.

**On the Seventh Claim for Relief:**

4.     Awarding Plaintiff compensatory damages in an amount to be determined at trial;

**On All Claims for Relief:**

5.     Awarding pre-judgment interest at the maximum legal rate;

6.     Awarding post-judgment interest at the maximum rate from the date of the last Transfer until the judgment is paid in pull;

7.     Awarding costs of suit incurred here; and

8.     Granting any other and further relief as the Court deems just and proper.


Dated: March 12, 2025                          Respectfully submitted,

                                               DINSMORE & SHOHL LLP

                                               By: _/s/ Jamie D. Mottola_____
                                                   Yosina M. Lissebeck
                                                   Jamie D. Mottola

                                               *Attorneys for Richard A. Marshack, Plaintiff*
                                               *and Trustee of the LPG Liquidation Trust*

1
2                                    **EXHIBIT "1"**
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EXHIBIT 1
Page 26

## Amended and Restated

## BAT Inc. (dba Coast Processing) – Affiliate Agreement

This Amended and Restated Affiliate Agreement (this "Agreement") is effective as of February 19, 2020 (the "Effective Date"), by and between All Services Financial, LLC, a Florida limited liability company ("ASF") and BAT Inc. (dba Coast Processing), a California corporation ("Coast", and together with ASF, the "Parties").

WHEREAS, the Parties entered into a certain affiliate agreement on September 1, 2019 (the "Original Affiliate Agreement"), whereby Coast provides administrative support services to law firms that provide a package of debtor's rights services to the consumer (the "Services");

WHEREAS, ASF owns and operates a system of generating leads consisting of consumers interested in the Services (each, an "Account"), and Coast pays a fee to ASF for each Account, each as listed on Addendum 1 attached hereto;

WHEREAS, the Parties now desire to amend and restate the Original Affiliate Agreement, to allow, among other things, ASF to assign certain rights and obligations under this Agreement to Validation Partners Fund I LLC, a Delaware limited liability company.

NOW, THEREFORE, the Parties, intending to be legally bound, agree as follows:

## Article 1. Definitions

"Account" means each file generated by ASF and placed with Coast, each as listed on Addendum 1.

"Active Account" means any Account for which Coast receives a payment from an Account Debtor within the last sixty days.

"Account Debtor" shall include any person liable on any Account, each as listed on Addendum 1.

"Confidential Information" means any information regarding contracts, customer or client lists or information, hardware, software, screens, specifications, designs, plans, drawings, data, prototypes, discoveries, research, developments, methods, processes, procedures, improvements, "know-how", compilations, market research, marketing techniques and plans, marketing materials, business plans and strategies, documents, scripts, guidelines, price lists, pricing policies and financial information or other business and/or technical information and materials, in oral, demonstrative, written, graphic or machine-readable form, which is unpublished, not available to the general public or trade, and which is maintained as confidential and proprietary information by the disclosing party for regulatory, customer relations, and/or competitive reasons.

"Cure Period" is defined in Section 4.2.

"Monthly Maintenance Fee" means the administrative cost per Account of $91.38.

"NSF Fee" is defined in Section 2.2(b).

EXHIBIT 1
Page 27

DocuSign Envelope ID: 6574EBB7-BA42-48EB-9A12-2347D4D5E545

"Pro Rata Defense Fees" means the amount *equal to* 69% of all legal fees greater than $750, but less than $1,750, incurred by all counsel in the defense of an Account Debtor in court.

"Purchase Price" means 69% of *x* (revenue produced per Account) – *y* (Monthly Maintenance Fee)

## Article 2. Purchase of Accounts

**2.1 Purchase Price and Manner of Payment.** Coast shall pay ASF the Purchase Price, subject to any adjustments set forth in Section 2.2, pursuant to an agreed-upon schedule, not to exceed one remittance per seven days.

### 2.2 Adjustments.

(a) If any Account Debtor either, or both, (i) cancels the Services or (ii) demands a refund for payment for the Services, then ASF shall be responsible for returning the entirety of its fees collected on such Account to Coast. Coast has exclusive discretion to grant or deny an Account Debtor's requested refund or cancellation. Coast shall be entitled to offset any future payments to ASF in order to recover the Account Debtor's requested refund. Coast may treat an Account Debtor's failure to remit payment in a timely manner as a cancellation of the Services, and has sole discretion to make such determination. Coast reserves all rights with regard to rejection of cancellation of an Account Debtor, but will do so only in accordance with the recommendation of the law firm utilized in providing such service, and subject to the applicable state bar rules for such representation.

(b) If, after an Account Debtor cancels the Services, Coast incurs a fee in connection with an Account Debtor's "non-sufficient funds" charge (the "NSF Fee"), the NSF Fee shall be borne mutually between the Parties in the following amounts: 69% of the NSF Fee shall be borne by ASF, and 31% of the NSF Fee shall be borne by Coast.

(c) ASF shall be responsible for all Pro Rata Defense Fees, which amount shall be offset on a monthly basis from any fees due to ASF.

## Article 3. Representations, Warranties, and Covenants

**3.1 Marketing Materials**. If requested by Coast, ASF shall provide a copy of all marketing materials used by ASF to Coast within ten business days of such request.

**3.2 Confidentiality.** ASF shall not use the name of Coast in any advertising, publicity release, or sales presentation designed to promote ASF's service, unless Coast provides prior written consent to such use. Neither Party may disclose the Confidential Information of the other Party without the express consent of the other Party. If compelled by law, such Party shall promptly provide notice to the other Party, and the disclosing party will only disclose that portion of Confidential Information that is legally required to be disclosed and will use best efforts to ensure any such information so disclosed will be afforded confidential treatment. The disclosure of information in connection with a judicial proceeding shall not constitute a violation of this Section 3.2. The Parties agree to notify the other Party if any inadvertent disclosure of Confidential Information occurs, within two days of becoming aware of such disclosure. A Party whose Confidential Information is disclosed shall be entitled to injunctive relief. Failure to abide by this Section 3.2 shall entitle the Party whose Confidential Information was disclosed to a reasonable sum not less than $50,000.00, nor more than $200,000.00.

**3.3 Compliance with Laws**. Each Party shall comply with state and Federal laws in performing its obligations hereunder.

EXHIBIT 1
Page 28

**3.4 Costs and Expenses**. Each Party shall be responsible for bearing its own costs and expenses incurred in performing its responsibilities under this Agreement, including all tariffs, filings, licensing or other fees.

**3.5 Indemnity.** Each Party shall indemnify and harmless each other, and their respective officers, directors, affiliates, shareholders, customers and employees from and against any and all liabilities, losses, damages and expenses (including legal expenses) of any kind or character arising from claims threatened or asserted and legal proceedings instituted in respect of (a) any breach of this Agreement by itself or its affiliates or (b) any act, omission or misrepresentation by any Party, including, without limitation, any claims related to the performance of the Services.

**3.6 Disclaimer of Warranties. EXCEPT FOR THE EXPRESS WARRANTIES SET FORTH HEREIN, NEITHER PARTY MAKES ANY REPRESENTATIONS OR GRANTS ANY WARRANTIES, EXPRESS OR IMPLIED, EITHER IN FACT OR BY OPERATION OF LAW, BY STATUTE OR OTHERWISE, AND EACH PARTY SPECIFICALLY DISCLAIMS ANY OTHER WARRANTIES, WHETHER WRITTEN OR ORAL, OR EXPRESS OR IMPLIED, INCLUDING ANY WARRANTY OF QUALITY, MERCHANTABILITY, OR FITNESS FOR A PARTICULAR USE OR PURPOSE OR ANY WARRANTY AS TO THE VALIDITY OF ANY PATENTS OR THE NON-INFRINGEMENT OF ANY INTELLECTUAL PROPERTY RIGHTS OF THIRD PARTIES.**

### Article 4. Term and Termination

**4.1 Term.** This Agreement shall continue for a period of 18 months from the Effective Date (the "Renewal Date"), and will automatically renew for an additional 18 month term unless terminated (i) as set forth in Section 4.2, or (ii) by either party upon 30 days written notice prior to the Renewal Date (such date, the "Termination").

**4.2 Default**. If either Party fails to materially comply with any of the obligations in this Agreement, such defaulting party shall have thirty days from the date it receives notice of default from the non-defaulting Party to cure (the "Cure Period"). If the defaulting Party fails to cure within the Cure Period, the non-defaulting Party may terminate this Agreement at any time within the next 10 days upon written notice to the defaulting Party.

**4.3. Obligations Following Termination**. Upon Termination of this Agreement for any reason:

(a) Coast and ASF shall refrain from making any disparaging or negative comment, remark, statement, or implication, whether written or oral about the other Party.

(b) Coast shall pay all fees due to ASF until all Active Accounts have completed or withdrawn from the Services.

### Article 5. Miscellaneous Provisions

**5.1 Binding Effect of Agreement.** This Agreement shall be binding on and inure to the benefit of the Parties and their respective heirs, successors, representatives, and assigns.

**5.2 Assignment**. The rights and obligations under this Agreement, including any rights to current or future receivables, shall be fully assignable by ASF to any third party and if assigned by ASF to any third party, such third party shall be an intended third party beneficiary of this Agreement with full rights to enforce any rights assigned to it by ASF, as if such third party is ASF under this Agreement.

**5.3  Governing Law; Submission to Jurisdiction**. The validity, interpretation, enforcement, and effect of this Agreement shall be governed by the laws of the State of California. Coast and ASF hereby consent to the jurisdiction of all state and Federal courts in California.

**5.4  Entire Agreement; Severability.** This Agreement contains the entire agreement between the Parties respecting the matters herein set forth and supersedes all prior agreements, whether written or oral, between the Parties respecting such matters. Any amendments or modifications hereto, in order to be effective, shall be in writing and executed by the Parties hereto.  A determination that any provision of this Agreement is unenforceable or invalid shall not affect the enforceability or validity of any other provision, and any determination that the application of any provision of this Agreement to any person or circumstance is illegal or unenforceable shall not affect the enforceability or validity of such provision as it may apply to any other persons or circumstances.

**5.5 Attorneys' Fees**. If a dispute between the Parties arises out of this Agreement, the prevailing party of such dispute will be entitled to recover from the non-prevailing party, any and all costs and expenses, including, without limitation, collection costs, reasonable attorneys' fees and appeal costs, incurred by the prevailing party.

**5.6 Effect of Headings**. Headings of articles and paragraphs in this Agreement shall not have any legal effect but are provided only to facilitate the reading of the text.

[*Signature page follows*]

**BAT Inc. (dba Coast Processing)**

By: _Brian Reale_

Name: Brian Reale

Title: Chief Executive Officer

**All Services Financial, LLC**

By: _Bonnie Silver_

Name: Bonnie Silver

Title: Chief Executive Officer

## **Addendum A**

| Date | Account Number | Account Debtor |
|------|----------------|----------------|
|      |                |                |
|      |                |                |
|      |                |                |

**B.A.T. Inc. dba Coast Processing - Affiliate Agreement**

THIS AGREEMENT (the "Agreement") is made and effective as of this 1st of September, 2019 by and between B.A.T. Inc. dba Coast Processing ("BAT") and **All Service Financial** (hereinafter "Affiliate").

RECITALS:

BAT is in the business of providing a package debtor's rights services in the form of debt validation, consultation, and litigation defense through law firms for which BAT provides administrative support services (those law firms include but are not limited to The Litigation Practice Group PC and Sonoma County Law). Among the services offered by BAT through the law firms handling each client file are the following:

- Removal of invalid debts through correspondence directly with the three credit bureaus;
- Validation of consumer debts through correspondence includes disputes with original creditors, validation demands to third party debt collectors and assignees, and disputes with all three credit bureaus;
- Defense of collection actions initiated by original creditors or third party assignees;
- Negotiation of advantageous settlements of consumer debts both pre and post litigation;
- Education of clients regarding federal laws applicable to consumer debt and credit reporting, and consultation regarding risk mitigation and litigation defense through its network of attorneys across the country.

Each of these services is offered without regard to the identity of the creditor or third-party debt collector or assignee. BAT reviews all client files prior to the execution of the client's legal services agreement with the appropriate law firm, and maintains oversight through its administrative services over all file placements.

Affiliate owns and operates a system of generating leads consisting of consumers interested in the legal services offered by BAT. Affiliate, acting in accordance with direction from BAT, shall obtain the names of Consumers and will market in a lawful manner, complying with the restrictions of the jurisdiction in which the consumer resides. For consumers interested in utilizing BAT's services, Affiliate will assist BAT in having consumers execute an approved legal services agreement with a law firm to which BAT provides administrative support services, at which point consumers will become clients of that law firm, and that law firm will be exclusively responsible for and liable for the representation of consumers in the context of the provision of legal services. Nothing in this Agreement nor in the eventual legal services agreement shall restrict Affiliate from offering any other service of any kind to consumer, including credit repair or debt relief programs. Nor is Affiliate restricted from marketing on behalf of credit repair or debt relief entities, including but not limited to other law firms. BAT and Affiliate hereby agree that any and all prior agreements entered into by BAT and Affiliate or any law firm to which BAT provides administrative support services and Affiliate are null and void and unenforceable, and this Agreement shall become the operative agreement for all files previously placed through the use of BAT's administrative support services.

1

EXHIBIT 1
Page 33

BAT and Affiliate hereby agree to the following:

1.    Each Party shall be solely responsible for bearing its own costs and expenses incurred in performing its responsibilities under this Agreement, including all tariffs, filings, licensing and/or other fees.

2.    Affiliate shall comply with state and federal laws in communicating with consumers regarding BAT or any of its programs.

3.    BAT shall comply with state and federal laws in performing its obligations under the legal services agreement entered into between BAT and the consumers referred by Affiliate.

4.    If requested by BAT, Affiliate shall provide a copy of all marketing materials to BAT upon receiving a request from BAT.  Affiliate shall endeavor to provide such materials within 10 business days of such request, but may provide such materials in any time frame that is commercially reasonable.

5.    Affiliate agrees to keep any and all documents or communications between itself and BAT confidential pursuant to the provisions set forth below.

6.    Affiliate shall be entitled to receive the following as full and complete compensation for its services to BAT: BAT shall pay **69%** per file for each file that Affiliate places with BAT, not counting the monthly maintenance fee of $71.38, which BAT shall retain to cover administrative costs for each file.  BAT shall calculate the amount of each file, apply the above-identified percentage fee, and remit the same to Affiliate pursuant to an agreed-upon schedule not to exceed one remittance per seven (7) calendar days.  If any consumer cancels BAT's services, or demands a refund for payment for such services, or both, then Affiliate shall be responsible for returning the entirety of its fees collected on such file to BAT (in such percentage as is set forth herein).  BAT has exclusive discretion to grant or deny a requested refund or cancellation.  BAT shall be entitled to offset any future payments to Affiliate in order to recover a refund awarded by BAT.  Finally, BAT may treat a consumer's failure to remit payment in a timely manner as a cancellation of the legal services agreement executed by consumer with BAT, and has sole discretion to make such determination.

7.    Commencing with all placements that occur on or after the date of execution of this agreement, , BAT shall bear all expenses related to the services it offers to consumers, and Affiliate shall bear all expenses related to its marketing of the same except as is set forth in this Paragraph.  Neither BAT nor Affiliate shall be required to pay the expenses of the other, except that Affiliate shall bear a percentage of local counsel fees associated with the defense of consumers in court in an amount equal to the per file percentage above $750.00 to which the Affiliate is entitled as set forth in Paragraph 6 above.  This means that Affiliate shall not bear any portion of the fees up to a cap of $750.00, and shall bear a pro rata share of fees beyond $750.00, which shall be resolved on a monthly basis and deducted from the fees remitted pursuant to Paragraph 6, above.  In no event shall local counsel fees exceed $2,500.00 on any individual file, inclusive of the $750.00 fee to be borne exclusively by BAT.  This means that the pro rata percentage of fees to be shared by Affiliate shall be capped at $1,750.00 ($2,500.00 minus the$750.00 fee to be borne exclusively by BAT).  No other charge of any kind not described in this

2

EXHIBIT 1
Page 34

Agreement shall be imposed upon Affiliate by the law firm to which any individual client file should happen to be placed.

8.      BAT reserves all rights with regard to rejection or cancellation of a consumer, but will do so only in accordance with the recommendation of the law firm utilized in providing such service, and only subject to the applicable state bar rules for such representation.

9.      This agreement shall continue to operate and bind BAT and Affiliate for a period of 18 months from the date of execution of this Agreement.  At that time, this Agreement will automatically renew for an additional 18 month term unless, 30 days prior to the automatic renewal date, BAT or Affiliate shall postmark a cancellation letter clearly stating the intent of that party to terminate this Agreement on the automatic renewal date.

10.     If either party shall default under this Agreement, defined as a failure to comply with any of the obligations set forth above, the Agreement shall terminate following notice of default and a cure period of 30 days from the date postmarked on the notice of default.  The notice of default must state with specificity the act of default alleged.

11.     Upon termination of this Agreement for any reason whatsoever, BAT and Affiliate will refrain from making any disparaging or negative comment, remark, statement, or implication, whether written or oral.

12.     The confidential information of BAT or Affiliate shall include information regarding contracts, customer or client lists or information, hardware, software, screens, specifications, designs, plans, drawings, data, prototypes, discoveries, research, developments, methods, processes, procedures, improvements, 'Know-how', compilations, market research, marketing techniques and plans, marketing materials, business plans and strategies, documents, scripts, guidelines, price lists, pricing policies and financial information or other business and/or technical information and materials, in oral, demonstrative, written, graphic or machine-readable form, which is unpublished, not available to the general public or trade, and which is maintained as confidential and proprietary information by the disclosing party for regulatory, customer relations, and/or competitive reasons.  Neither BAT nor Affiliate may disclose the confidential information of the other with the express written consent of the other.   A failure to abide by this confidentiality term shall entitle the party whose confidential information was compromised to a reasonable sum not less than $50,000.00, nor more than $200,000.00.  The disclosure of information in connection with a judicial proceeding shall not constitute a violation of this term.   The parties agree to notify the other if any inadvertent disclosure of information occurs within 48 hours of becoming aware of such disclosure.  The parties agree to work together in good faith to remediate any disclosure of confidential information.   A party whose confidential information is disclosed shall be entitled to injunctive relief in any court of competent jurisdiction.

13.     If, after the passage of six months of the date of this Agreement, Affiliate fails, in any one calendar month, to have at least fifty (50) active consumers, BAT shall withhold 20% of the fees due to Affiliate for said month in an escrow account.  Such fees shall be held in escrow until, in a single calendar

3

EXHIBIT 1
Page 35

month, Affiliate has fifty (50) or more active consumers, at which point, within five (5) business days of the end of such calendar month, BAT shall transfer the balance of such escrow account to Affiliate and retain nothing in such escrow account. If Affiliate shall cease operations for any reason, or this Agreement shall terminate for any reason, Affiliate will continue to receive fees due to it under this Agreement until all active consumers have completed or withdrawn from the program, at which point any remaining amounts being held in escrow shall be released to Affiliate in full.

14.     Affiliate agrees not to use the name BAT in any advertising, publicity release, or sales presentation designed to promote Affiliate's service, unless BAT provides prior written consent to such specific use.

15.     Any fees incurred by BAT in connection with a customer's Non-Sufficient Funds ("NSF") fee shall be borne mutually by both BAT and Affiliate if and only if the customer cancels the program after such NSF. The Affiliate shall bear that portion of the NSF fee commensurate with its share of the per file fee set forth in Paragraph 6, above. This amount shall be deducted from the fees remitted to Affiliate in the month in which the client having an outstanding NSF charge cancels the program without remitting such NSF fee.

16.     This Agreement may not be assigned or transferred without the prior written consent of the other. This Agreement shall be binding upon and shall inure to the benefit of the Parties and their respective successors and assigns.

17.     In the event of a breach, the prevailing party shall be entitled to reasonable attorneys' fees and collection costs, including all fees and costs on appeal.

18.     This Agreement contains the entire Agreement between the Parties, and shall not be modified, amended or supplemented, or any rights therein waived, unless specifically agreed upon in writing by BAT and Affiliate.


**BAT**

_____

**By: Brian Reale, Chief Executive Officer**


**All Silver Financial**



By: Bonnie Silver

Title: Bonnie Silver, President

4

EXHIBIT 1
Page 36

## Electronic Funds Transfer Authorization

This Electronic Funds Transfer (EFT) authorization is for use in connection with the foregoing Agreement, and permits BAT to transfer any and all amounts due to All Service Financial ("Affiliate") under the foregoing Agreement by EFT.  By signing below, Affiliate hereby authorizes BAT to initiate EFT transfers at its discretion, with all fees and costs incurred by Affiliate in connection with such transfer to be borne by Affiliate, while all fees and costs incurred by BAT in connection with such transfer to be borne by BAT.

Account Holder Signature: _____ Date: _____11/20/2019_____

DocuSigned by:
*Bonnie Silver*
08AD43A8FCB9439...

By: Bonnie Silver

Title: Bonnie Silver, President

Account Owner Name:  **All Service Financial, LLC**

Social Security Number / FEIN Number associated with account listed below: ▮▮▮▮▮▮▮

Address: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

City: ▮▮▮▮▮▮    State: ▮▮    Zip: ▮▮▮▮    Tel: ▮▮▮▮▮▮▮▮

Bank Name:    ▮▮▮▮▮▮
Routing Number:    ▮▮▮▮▮▮
Account Number:    ▮▮▮▮▮▮
Account type :    **Checking**

5

EXHIBIT 1
Page 37

1

2                                     **EXHIBIT "2"**

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT 2
Page 38

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Settlement Agreement and Mutual Release ("Agreement") is made and entered into as of April 6, 2022 (the "Effective Date"), by and between All Service Financial, LLC, a Florida limited liability company and Joshua Stomel and Bonnie Silver, members of All Service Financial, LLC (collectively "ASF") on the one hand, and The Litigation Practice Group PC, a California professional corporation ("LPG") and BAT Inc. dba Coast Processing ("BAT") on the other hand, according to the terms and conditions set forth herein. ASF and LPG or BAT may be referred to individually in this Agreement or as a "party" or collectively as the "parties." In consideration of the promises made herein, the parties agree as follows:

This Agreement is a compromise of disputed claims and shall not be construed or deemed to be an admission of liability or wrongdoing by the parties. By executing this Agreement, the parties intend to and do hereby extinguish their respective and collective rights, claims, defenses and counterclaims which are, or could have been, alleged in relation to the Affiliate Agreement between ASF and BAT (the "Affiliate Contract").

## RECITALS

A.     ASF owns and operates a system of generating leads consisting of consumers interested debtor's rights services.

B.     LPG provides debtor rights services to consumers and support services to law firms regarding these services previously in conjunction with BAT, a now defunct but not yet dissolved entity that ceased operations in July 2021.

1

3/4/2022

EXHIBIT 2
Page 39

C.      ASF entered into an affiliate agreement with BAT Inc. dba Coast Processing, a California corporation on or around September 1, 2019.   This affiliate agreement was amended and restated on or around February 19, 2020 ("Amended Affiliate Agreement").

D.      Sometime thereafter, BAT ceased operations and all clients onboarded by way of the Amended Affiliate Agreement were serviced exclusively by LPG; ASF continued to provide services to LGP upon the same terms as stated in the Amended Affiliate Agreement and LPG continued to accept such services.

E.      ASF has ceased active operations and no longer generates new leads for consumers interested debtor's rights services.

F.      Per the terms of the Amended Affiliate Agreement, ASF alleges that BAT and LPG have an ongoing obligation to pay ASF a Purchase Price on all accounts generated by ASF's leads. LPG disputes that it has such an obligation.   The parties now desire to terminate their contractual relationship per the terms of this Agreement and resolve and settle all disputes on the terms and for and in consideration of the promises and agreements set forth below.

## COVENANTS

THEREFORE, in consideration of the mutual covenants herein contained and in performance of this Agreement, for good and valuable consideration, receipt of which is hereby acknowledged, the parties agree as follows:

1.      **Incorporation of Recitals.**

The Recitals set forth above are incorporated herein by this reference and are expressly made as covenants of this Agreement.

BS

ASF

3/4/2022

2

LPG

TD

EXHIBIT 2
Page 40

2.    **Settlement Payments.**

BAT and LPG, jointly and severally, shall pay ASF a total of ONE MILLION FIVE HUNDRED THOUSAND DOLLARS ($1,500,000) based on the payment schedule below:

   a.  Within seven (7) days of the full execution of this Agreement by the parties, LPG shall make a payment to ASF in amount of NINE HUNDRED THOUSAND DOLLARS ($900,000.00) ("First Payment");

   b.  On or before April 15, 2022, LPG shall make a second payment to ASF in the amount of TWO HUNDRED THOUSAND DOLLARS ($200,000) ("Second Payment");

   c.  On or before May 31, 2022, LPG shall make a third payment to ASF in the amount of TWO HUNDRED THOUSAND DOLLARS ($200,000) ("Third Payment"); and

   d.  On or before July 1, 2022, LPG shall make a fourth and final payment to ASF in the amount of TWO HUNDRED THOUSAND DOLLARS ($200,000) ("Fourth Payment").

In the event of a failure of BAT or LPG to remit payment as set forth above, ASF shall notify BAT and LPG of such default, at which point BAT and LPG shall have the right to cure such breach and shall not be in default of this Agreement provided such missed payment is remitted within forty-eight ("48") hours of such notice.   Notice shall be deemed effective on the date and at the time email is sent to Tony@Coastprocessing.com.

3

BS

ASF

3/4/2022

LPG

EXHIBIT 2
Page 41

3.    **Solicitation of LPG Clients.**

For a period of two (2) years from the Effective Date, ASF agrees that it shall not purposely initiate contact with any current clients of LPG, of which ASF is aware and of which ASF was credited a Purchase Price ("ASF Client"), to purposely generate leads for another company providing the same debt relief or credit repair service as provided by LPG to the ASF Clients ("Prohibited Solicitation").  However, ASF is not prohibited from contacting any ASF Client that clicked on, provided information or otherwise responded to an advertisement placed on the internet by ASF.   In the event of a Prohibited Solicitation, LPG and BAT shall be deemed to have suffered damages in the amount of $250 per client that was deemed to be a Prohibited Solicitation.

4.    **Fees and Costs.**

Each of the parties hereto shall bear their own costs and attorneys' fees with respect to the dispute including, but not limited to, those incurred in connection with the negotiation and preparation of this Agreement and each party hereby waives any statute, rule of court, or other law or provision otherwise awarding costs, fees, or expenses.

5.    **Mutual Release.**

Except for the obligations of each party contained herein, ASF, on the one hand, and LPG or BAT, on the other hand, each on behalf of itself and each of their respective predecessors, successors, assigns, officers, directors, shareholders, managers, members, attorneys, insurers, heirs, executors, administrators, agents, servants, partners, employees, independent contractors, representatives, and affiliates (ASF, on the one hand, and LPG or BAT, on the other hand, each respectively referred to as "RELEASORS"), each hereby fully releases and discharges

BS

ASF

3/4/2022

4

LPG

EXHIBIT 2
Page 42

each other party and each of its respective officers, directors, managers, members, shareholders, predecessors, successors, assigns, attorneys, insurers, heirs, executors, administrators, agents, servants, partners, employees, independent contractors, representatives, principals, beneficiaries, and any and all affiliated individuals and entities (collectively "RELEASEES") from all rights, claims, actions, causes of action, suits, debts, charges, complaints, liabilities, obligations, promises, agreements, controversies, damages, and expenses (including attorneys' fees and costs) whatsoever, known and unknown, which RELEASORS, or any of them, now have or may have against RELEASEES, or any of them, arising out of or attributable to the disputes or any claims that could have been raised regarding the Amended Affiliate Agreement.

      6.     **Mutual Waiver of Civil Code Section 1542.**

ASF, on the one hand, and LPG, on the other hand, each intends to, and does, release all claims each may have against the other (except for the obligations contained in this Agreement), pertaining to any disputes or claims regarding or relating to the Amended Affiliate Agreement and/or described in the Recitals of this Agreement, whether or not they know or suspect the same to exist in their favor, and in this connection, ASF, on the one hand, and LPG, on the other hand, each expressly waives the provisions of section 1542 of the California Civil Code, which each has read and understood and which has been explained to each of them by their attorneys and which reads as follows:

> "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."

      7.     **No Admission of Liability.**

BS
ASF

3/4/2022

5


LPG

EXHIBIT 2
Page 43

This settlement is a compromise of the above-mentioned disputes, and shall never be treated as an admission of liability by any party for any purpose.

**8.     No Assignment of Rights.**

ASF represents and warrants to LPG and LPG represents and warrants to ASF that it has not heretofore assigned or transferred to any person, firm or corporation, any claim, debt, liability, demand, obligation, cost, expense, action or cause of action herein released, and ASF, on the one hand, and LPG, on the other hand, shall indemnify, defend, and hold harmless the other party against any claim, debt, liability, demand, obligation, cost, expense, action or cause of action, based on, arising out of, or in connection with the alleged assignment of any matter referred to in this Agreement.

**9.     Assumption of Risk of Different Facts.**

It is understood by ASF, on the one hand, and LPG, on the other hand, that the facts and acts that they believe to exist with regard to this matter may turn out to be other than or different from facts and acts as they understand them today and that there may be other facts and acts not known to ASF, on the one hand, and LPG, on the other hand, or believed by them to be true. ASF, on the one hand, and LPG, on the other hand, each expressly assumes the risk of any or all acts and facts subsequently turning out to be different and this Agreement shall be effective and not subject to termination, rescission, or modification by reason of any such difference in fact or facts.

**10.     Entire Agreement.**

6

ASF

3/4/2022

LPG

EXHIBIT 2
Page 44

This Agreement constitutes the entire agreement between the parties, and all prior negotiations, discussions, statements, agreements and understandings, pertaining to the subject matter of the Recitals. Any statement, representation, warranty, promise or condition not specifically set forth herein shall not be binding upon any of the parties to this Agreement.

11. **Representations and Warranties.**

ASF represents and warrants to LPG, and LPG represents and warrants to ASF as follows:

(a) Each party has received independent legal advice from its attorneys with respect to the contents and advisability of making this Agreement and executes this Agreement after having consulted with counsel;

(b) Each party has not relied upon any statement, representation or promise, oral or written, of any other party to this Agreement except as expressly set forth herein. Any representation, warranty, promise, or condition, whether written or oral, not specifically incorporated herein, shall not be binding upon any of the parties hereto;

(c) Each party has not made any complaint, either administrative, legal or otherwise, against any other party to this Agreement as of the date of this Agreement.

12. **Venue and Severability.**

This Agreement shall be construed in accordance with and governed by the laws of the State of California and in any action brought in connection with the enforcement or interpretation of this Agreement, venue shall be in Ventura County, California and no other venue shall be proper. If, for any reason, any provision hereof is determined to be unenforceable, the remainder of this Agreement shall nonetheless remain binding and in effect.

7

ASF

3/4/2022

LPG

EXHIBIT 2
Page 45

13.     **Confidentiality and Non-Disparagement.**

        The Parties agree that the terms of this Agreement are confidential, and that they
will not disclose to any other person any information contained herein with the exception of
retained counsel or accountant.  ASF will not take any action or make any verbal or written
statement which disparages LPG or BAT.   Further, ASF will not directly or indirectly release any
information or encourage others to make any statements, make any oral, written or recorded private
or public statement or comment that is disparaging, or defamatory of LPG or BAT, or provide any
information designed to embarrass, disparage or criticize LPG or BAT, provided that it shall not
be a violation of this paragraph for ASF to make truthful statements when required to do so by a
court of law, by any governmental agency having supervisory authority over or by any
administrative or legislative body (including a committee thereof) with jurisdiction to order such
disclosure.

14.     **Effective Date.**

        This Agreement shall become effective upon execution by all of the parties hereto.

15.     **Attorneys' Fees.**

        In any action to enforce this Agreement, or in any action arising out of this
Agreement, whether by way of judicial, arbitration, mediation or administrative proceedings or
otherwise, the prevailing party in such proceeding shall be entitled to recover reasonable costs and
attorneys' fees from the non-prevailing party.

16.     **Mutual Drafting of Agreement.**

8

ASF

3/4/2022

LPG

EXHIBIT 2
Page 46

No provision of this Agreement shall be interpreted for or against any party because that party or his or its legal representative drafted the provisions; this Agreement shall be deemed to have been drafted by all parties hereto.

17.    **Agreement Freely Executed.**

The terms of this Agreement are contractual and not a mere recital.    This Agreement is executed without reliance upon any representation by any person concerning the nature and extent of damages or legal liability therefor, and the undersigned have carefully read and understood the contents of the releases contained in this Agreement and all other provisions of this Agreement and sign this Agreement of their own free will.

18.    **Binding Effect of Agreement.**

This Agreement, and all of the terms and provisions hereof, shall be binding upon and shall inure to the benefit of the parties hereto and their respective heirs, legal representatives, predecessors, successors, and assigns.

19.    **Execution in Counterparts and Facsimile.**

This Agreement may be executed in counterparts by the respective parties hereto. Facsimile or electronic copies of the executed Agreement shall be as valid as the originals. The undersigned have read, understood and agree to all of the terms and conditions of this Agreement.

[*SIGNATURES ON FOLLOWING PAGE*]

9

ASF

3/4/2022

LPG

EXHIBIT 2
Page 47

**ALL SERVICE FINANCIAL, LLC**

Dated:   April 6, 2022

By: *Bonnie Silver*
BONNIE SILVER, authorized agent

By:
JOSH STOMEL, authorized agent

**THE LITIGATION PRACTICE GROUP PC**

Dated: April 6, 2022

By:
Daniel S. March

**BAT INC. dba Coast Processing**

Dated: April 6, 2022

By: *Tony Diab*
Tony Diab

W:\STOMEL, JOSH & VIVIAN\LPG LAWSUIT\SETTLEMENT AGREEMENT (FINAL 4.6.22).docx

BS

ASF

3/4/2022

10

LPG

EXHIBIT 2
Page 48

1
2                                  **EXHIBIT "3"**
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EXHIBIT 3
Page 49



*Legal Counsel.*

DINSMORE & SHOHL LLP
655 West Broadway
San Diego, California 92101
www.dinsmore.com

Jamie D. Mottola
(619) 400-0474 Ext 4474 (direct)
Jamie.Mottola@Dinsmore.com

October 10, 2024

*VIA U.S. MAIL ONLY*

ALL SERVICE FINANCIAL, L.L.C.
Attn: John A. Silver, Manager
12276 San Jose Blvd., Suite 420
Jacksonville, FL 32223

> Re:  *In re The Litigation Practice Group P.C.*
> U.S. Bankruptcy Court, Central District of California,
> Case No. 8:23-bk-10571-SC

Dear Sir:

This constitutes a demand to provide any and all documents and information evidencing the basis for, accounting of, and any defenses to my client's claims to avoid and recover, the transfers to All Service Financial, L.L.C., a Florida limited liability company (All Service Financial" or "you(r)") from The Litigation Practice Group P.C. ("Debtor").

This firm represents Richard A. Marshack, solely in his capacity as Chapter 11 Trustee and liquidating trustee of the LPG Liquidation Trust (collectively, "Trustee") for the bankruptcy estate of The Litigation Practice Group P.C. ("Debtor") in the above-referenced bankruptcy case. Pursuant to 11 U.S.C. § 1107 and his appointment as Trustee, the Trustee has the obligation to investigate and pursue claims, including fraudulent transfers. Under the Bankruptcy Code, the Trustee has the power to file lawsuits seeking to avoid, recover, and preserve such transfers for the benefit of the Estate. *See* 11 U.S.C. §§ 544 *et seq*.

A review of the Debtor's books and records confirms that All Service Financial received potential fraudulent conveyances totaling $866,462.06, which can be avoided and recovered by the Trustee pursuant to 11 U.S.C. §§ 544 and 548 and Cal. Civ. Code. §§ 3439.04 and 3439.05. Sections 544 and 548 of the Bankruptcy Code permit a trustee or debtor-in-possession to avoid certain payments made to creditors within the two-year period preceding the filing of a bankruptcy case. Sections 3439.04 and 3439.05 of the California Civil Code also permit a trustee to avoid certain payments made to creditors within the applicable reach back period. Our preliminary investigation has identified transfers between July 28, 2021 through December 17, 2021 from the Debtor to All Service Financial all of which are within the fraudulent transfer reach back period.

EXHIBIT 3
Page 50

All Service Financial
Page **2** of **3**

These transfers are listed on the attached "Transfer Schedule" showing the date and amount, according to the Debtor's books and records, of each transfer or other payment to All Service Financial. The payments referenced on the Transfer Schedule total $866,462.06. These transfers may constitute fraudulent transfers, which can be avoided and recovered by the Trustee pursuant to 11 U.S.C. §§ 544 and 548 and Cal. Civ. Code. §§ 3439.04 and 3439.05. In sum, and depending on your response to this letter, the Trustee may file suit in the bankruptcy court to avoid and recover these transfers.

The Trustee has been unable to determine why such transfers were made to All Service Financial and what was provided to the Debtor in exchange for such transfers, and whether defenses exist to the Trustee's claims to avoid and recover the transfers. Please respond to this letter, attaching any unaltered evidence you have related to these transfers, including, but not limited to, contracts, agreements, subscriptions, invoices, and any other documentation showing the date, terms, and amounts for the transfers received and any documents evidencing shipment dates as to goods and services provided by All Service Financial to the Debtor. Documents showing the course of dealing between All Service Financial and the Debtor, the date of receipt of the Debtor's payment and the amount, deposit date, and any proof of deposit for any or all of the transfers will be helpful in determining the permissibility of the transfers and what, if any, value the Debtor received in return for payments made to All Service Financial.

You are further notified that the claims against All Service Financial will be governed by the Federal Rules of Bankruptcy Procedure and the Federal Rules of Civil Procedure, which apply to lawsuits filed in federal bankruptcy courts such as the one in the Central District of California. Pursuant to these rules, **every party to a lawsuit has a duty to preserve all evidence** which could be relevant to the suit. These obligations also arise when, as here, litigation is reasonably foreseeable. This includes the duty to preserve all electronic evidence, such as emails discussing the incident or related to matters at issue in the suit. This duty to preserve evidence is broad and extends to all documents, regardless of whether the document is stored electronically (such as email) or in hard-copy and regardless of the type of document. For example, reports, spreadsheets, photographs and videotapes are all considered documents that must be preserved. Furthermore, the duty to preserve this documentary evidence extends to all documents in existence as of the time you reasonably anticipated this litigation.

To ensure that all relevant documents are preserved, **you should communicate directly with all employees who have possession or control of potentially relevant evidence**, including but not limited to personnel who deal with email retention, deletion, and archiving. You should advise each of these employees to preserve any relevant documents in their custody. Furthermore, you should advise all such persons that any regularly scheduled and/or automatic deletion of email or other electronic documents must be discontinued with respect to any relevant data. In addition, any document destruction (such as shredding of documents) must cease with respect to any relevant documents. All relevant documents, both electronic and paper, must be preserved for the duration of this litigation.

The deadline to respond to this request is October 24, 2024. Failure to respond and/or provide the requested documents will likely result in the Trustee filing an adversary complaint to avoid, recover, and preserve the subject transfers for the benefit of the Estate. If you would like to

EXHIBIT 3
Page 51

All Service Financial
Page **3** of **3**

discuss this matter, please feel free to contact me by telephone (619) 400-0500 or e-mail at jamie.mottola@dinsmore.com.

Sincerely,

*J. Mottola*

Jamie D. Mottola

Enclosures:
        Transfer Schdule

EXHIBIT 3
Page 52

# TRANSFER SCHEUDLE

| TRANSACTION DATE | TRANSACTION AMOUNT |
|---|---|
| 7/28/2021 | $87,643.21 |
| 8/4/20221 | $58,182.64 |
| 8/11/2021 | $15,624.88 |
| 8/20/2021 | $74,110.45 |
| 8/20/2021 | $25,094.08 |
| 8/25/2021 | $66,455.27 |
| 8/25/2021 | $1,469.62 |
| 9/1/2021 | $56,421.34 |
| 9/1/2021 | $9,675.48 |
| 9/9/2021 | $51,339.87 |
| 9/9/2021 | $11,041.17 |
| 9/16/2021 | $44,921.94 |
| 9/16/2021 | $17,534.81 |
| 9/22/2021 | $54,633.69 |
| 9/22/2021 | $4,051.40 |
| 9/30/2021 | $13,033.53 |
| 10/5/2021 | $79,967.43 |
| 10/7/2021 | $43,530.44 |
| 10/7/2021 | $6,168.72 |
| 10/26/2021 | $98,424.85 |
| 10/26/2021 | $12,747.29 |
| 11/5/2021 | $6,351.04 |
| 11/12/2021 | $2,574.13 |
| 11/18/2021 | $7,677.74 |
| 11/26/2021 | $2,711.20 |
| 12/2/2021 | $4,766.34 |
| 12/9/2021 | $2,604.20 |
| 12/17/2021 | $7,705.30 |

EXHIBIT 3
Page 53

**EXHIBIT "4"**

EXHIBIT 4
Page 54

In re: The Litigation Practice Group PC
Disbursement Details by Payee
4 Years Pre-Petition (03/20/2019 - 03/20/2023)

Prepared by: Grobstein Teeple LLP

| Bank Name | Account Name | Account Number | Statement Date | Transaction Date | Check Number | Debit/Charge | Memo |
|---|---|---|---|---|---|---|---|
| UnionBank | The Litigation Practice Group PC | | 7/31/2021 | 7/28/2021 | | 87,643.21 | WIRE TRANS TRN █ Sent To: █ Beneficiary: 1/All Service Financial, LLC |
| UnionBank | The Litigation Practice Group PC | | 8/31/2021 | 8/4/2021 | | 58,182.64 | WIRE TRANS TRN █ Sent To: █ Beneficiary: 1/All Service Financial, LLC |
| UnionBank | The Litigation Practice Group PC | | 8/31/2021 | 8/11/2021 | | 15,624.88 | WIRE TRANS TRN █ Sent To: █ Beneficiary: 1/All Service Financial, LLC |
| UnionBank | The Litigation Practice Group PC | | 8/31/2021 | 8/20/2021 | | 74,110.45 | WIRE TRANS TRN █ Sent To: █ Beneficiary: 1/All Service Financial, LLC |
| UnionBank | The Litigation Practice Group PC | | 8/31/2021 | 8/20/2021 | | 25,094.08 | WIRE TRANS TRN █ Sent To: █ Beneficiary: 1/All Service Financial, LLC |
| UnionBank | The Litigation Practice Group PC | | 8/31/2021 | 8/25/2021 | | 66,455.27 | WIRE TRANS TRN █ Sent To: █ Beneficiary: 1/All Service Financial, LLC |
| UnionBank | The Litigation Practice Group PC | | 8/31/2021 | 8/25/2021 | | 1,469.62 | WIRE TRANS TRN █ Sent To: █ Beneficiary: 1/All Service Financial, LLC |
| UnionBank | The Litigation Practice Group PC | | 9/30/2021 | 9/1/2021 | | 56,421.34 | WIRE TRANS TRN █ Sent To: █ Beneficiary: 1/All Service Financial, LLC |
| UnionBank | The Litigation Practice Group PC | | 9/30/2021 | 9/1/2021 | | 9,675.48 | WIRE TRANS TRN █ Sent To: █ Beneficiary: 1/All Service Financial, LLC |
| UnionBank | The Litigation Practice Group PC | | 9/30/2021 | 9/9/2021 | | 51,339.87 | WIRE TRANS TRN █ Sent To: █ Beneficiary: 1/All Service Financial, LLC |
| UnionBank | The Litigation Practice Group PC | | 9/30/2021 | 9/9/2021 | | 11,041.17 | WIRE TRANS TRN █ Sent To: █ Beneficiary: 1/All Service Financial, LLC |
| UnionBank | The Litigation Practice Group PC | | 9/30/2021 | 9/16/2021 | | 44,921.94 | WIRE TRANS TRN █ Sent To: █ Beneficiary: 1/All Service Financial, LLC |
| UnionBank | The Litigation Practice Group PC | | 9/30/2021 | 9/16/2021 | | 17,534.81 | WIRE TRANS TRN █ Sent To: █ Beneficiary: 1/All Service Financial, LLC |
| UnionBank | The Litigation Practice Group PC | | 9/30/2021 | 9/22/2021 | | 54,633.69 | WIRE TRANS TRN █ Sent To: █ Beneficiary: 1/All Service Financial, LLC |
| UnionBank | The Litigation Practice Group PC | | 9/30/2021 | 9/22/2021 | | 4,051.40 | WIRE TRANS TRN █ Sent To: █ Beneficiary: 1/All Service Financial, LLC |
| Optimum Bank | Coast Processing LLC dba LPG | | 9/30/2021 | 9/30/2021 | | 13,033.53 | WIRE TO All Service Financial, LL |
| Optimum Bank | Coast Processing LLC dba LPG | | 10/29/2021 | 10/5/2021 | | 79,967.43 | WIRE TO All Service Financial, LL |
| Optimum Bank | Coast Processing LLC dba LPG | | 10/29/2021 | 10/7/2021 | | 43,530.44 | WIRE TO All Service Financial, LL |
| Optimum Bank | Coast Processing LLC dba LPG | | 10/29/2021 | 10/7/2021 | | 6,168.72 | WIRE TO All Service Financial, LL |
| Optimum Bank | Coast Processing LLC dba LPG | | 10/29/2021 | 10/26/2021 | | 98,424.85 | WIRE TO All Service Financial, LL |
| Optimum Bank | Coast Processing LLC dba LPG | | 10/29/2021 | 10/26/2021 | | 12,747.29 | WIRE TO All Service Financial, LL |
| Optimum Bank | Coast Processing LLC dba LPG | | 11/30/2021 | 11/5/2021 | | 6,351.04 | WIRE TO All Service Financial, LL |
| Optimum Bank | Coast Processing LLC dba LPG | | 11/30/2021 | 11/12/2021 | | 2,574.13 | WIRE TO All Service Financial, LL |
| Optimum Bank | Coast Processing LLC dba LPG | | 11/30/2021 | 11/18/2021 | | 7,677.74 | WIRE TO All Service Financial, LL |
| Optimum Bank | Coast Processing LLC dba LPG | | 11/30/2021 | 11/26/2021 | | 2,711.20 | WIRE TO All Service Financial, LL |
| Optimum Bank | Coast Processing LLC dba LPG | | 12/31/2021 | 12/2/2021 | | 4,766.34 | WIRE TO All Service Financial, LL |
| UnionBank | The Litigation Practice Group PC | | 12/31/2021 | 12/9/2021 | | 2,604.20 | WIRE TRANS TAN █ Sent To: █ Beneficiary: 1/All Service Financial, LLC |
| UnionBank | The Litigation Practice Group PC | | 12/31/2021 | 12/17/2021 | | 7,705.30 | WIRE TRANS TAN █ Sent To: █ Beneficiary: 1/All Service Financial, LLC |
| | | | | | | 866,462.06 | |

1 of 1

DRAFT FORM - SUBJECT TO CHANGE

EXHIBIT 4
Page 55

1

2                                    **EXHIBIT "5"**

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT 5
Page 56

4839

**Fill in this information to identify the case:**

Debtor 1   The Litigation Practice Group P.C.

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court   **Central District of California**

Case number: **23-10571**

**FILED**

FILED

**U.S. Bankruptcy Court
Central District of California**

12/29/2023

**Kathleen J. Campbell, Clerk**

FEB 2 2 2024

## Official Form 410
# Proof of Claim

By Omni Agent Solutions, Claims Agent
For U.S. Bankruptcy Court
Central District of California

04/22

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed.** That date is on the notice of bankruptcy (Form 309) that you received.

## Part 1:   Identify the Claim

| | |
|---|---|
| 1. Who is the current creditor? | All Service Financial, LLC |
| | Name of the current creditor (the person or entity to be paid for this claim) |
| | Other names the creditor used with the debtor |
| 2. Has this claim been acquired from someone else? | ☑ No<br>☐ Yes. From whom? |
| 3. Where should notices and payments to the creditor be sent?<br><br>Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **Where should notices to the creditor be sent?**<br>All Service Financial, LLC<br><br>Name<br>1860 Bridgegate Street<br>Suite 100<br>Westlake Village, CA 91361-1409<br><br>Contact phone _____805-495-4044_____<br>Contact email<br>_vstomel@allservicefinancial.com_<br><br>Uniform claim identifier for electronic payments in chapter 13 (if you use one):<br>_____ | **Where should payments to the creditor be sent?** (if different)<br><br>Name<br><br><br><br>Contact phone _____<br><br>Contact email _____ |
| 4. Does this claim amend one already filed? | ☑ No<br>☐ Yes. Claim number on court claims registry (if known) _____   Filed on _____<br>                                               MM / DD / YYYY |
| 5. Do you know if anyone else has filed a proof of claim for this claim? | ☑ No<br>☐ Yes. Who made the earlier filing? |

Official Form 410                          Proof of Claim                          page 1

102118-1 SCK)

EXHIBIT 5
Page 57

**Part 2:** Give Information About the Claim as of the Date the Case Was Filed

| | | |
|---|---|---|
| 6. **Do you have any number you use to identify the debtor?** | ☑ No<br>☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: | _____ |

7. **How much is the claim?**   $ _____1392206.24_____

**Does this amount include interest or other charges?**
☑ No
☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

8. **What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as healthcare information.

Procuring and sale of consumer leads for LPG legal services.

9. **Is all or part of the claim secured?**

☑ No
☐ Yes. The claim is secured by a lien on property.

**Nature of property:**
☐ Real estate.   If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410–A) with this *Proof of Claim*.
☐ Motor vehicle
☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**   $ _____

**Amount of the claim that is secured:**   $ _____

**Amount of the claim that is unsecured:**   $ _____   (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**   $ _____

**Annual Interest Rate** (when case was filed)   _____ %

☐ Fixed
☐ Variable

10. **Is this claim based on a lease?**
☑ No
☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $ _____

11. **Is this claim subject to a right of setoff?**
☑ No
☐ Yes. Identify the property: _____

Official Form 410                    Proof of Claim                    page 2

EXHIBIT 5
Page 58

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No<br>☐ Yes. *Check all that apply:* | Amount entitled to priority |
|---|---|---|
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $ _____ |
| | ☐ Up to $3,350 * of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $ _____ |
| | ☐ Wages, salaries, or commissions (up to $15,150 *) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $ _____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $ _____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $ _____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(_) that applies | $ _____ |
| | * Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment. | |

## Part 3:  Sign Below

| The person completing this proof of claim must sign and date it. FRBP 9011(b).<br><br>If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.<br><br>A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.<br>18 U.S.C. §§ 152, 157 and 3571. | Check the appropriate box:<br><br>☐  I am the creditor.<br>☑  I am the creditor's attorney or authorized agent.<br>☐  I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.<br>☐  I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.<br><br>I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.<br><br>I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.<br><br>I declare under penalty of perjury that the foregoing is true and correct. |
|---|---|

Executed on date     12/29/2023

                 MM / DD / YYYY

/s/  Jeffrey A. Meinhardt

Signature

Print the name of the person who is completing and signing this claim:

| Name | Jeffrey A. Meinhardt |
|---|---|
| | First name     Middle name     Last name |
| Title | Attorney |
| Company | Silver & Arsht |
| | Identify the corporate servicer as the company if the authorized agent is a servicer |
| Address | 1860 Bridgegate Street, Suite 100 |
| | Number  Street |
| | Westlake Village, CA 91361–1409 |
| | City  State  ZIP Code |
| Contact phone | 805–495–4044     Email    jmeinhardt@silverandarsht.com |

EXHIBIT 5
Page 59

**VP LLC - All Service Financial LLC**          8/1/2022

| | | |
|---|---|---|
| Net Amount | $32,007.24 | EPPS $0.00 |
| MFees | $7,428.92 | SeamlessChex $231.87 |
| Net Amount to Disburse | $24,578.32 | USA E Pay $267.17 |
| | | AuthorizeNet $425.85 |
| | | Equipay $32,008.75 |
| | | $32,933.74 |

| | | | | |
|---|---|---|---|---|
| All Service Financial LLC Total | Chargeback | $24,578.32 | 69.00% 69.00% | $16,989.04 $0.00 $16,989.04 |
| Validation Partners LLC Total | Chargeback | $24,578.32 | 31.00% 31.00% | $7,619.28 $0.00 $7,619.28 |
| Verified Balance | | $24,578.32 | | |

RETURNS

| | | |
|---|---|---|
| Company | All Service Financial, LLC | |
| Company - Partner | (blank) | |
| Lead Vendor | VP, LLC | |

| Custodial Account | Full Name | Customer ID | Process Date | Enrolled Date | Amount | Fee | Amount - Fee | MFee | Sum of Amount | Sum of Amount - Fee | Sum of Fee | Sum of MFees |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| AuthorizeNet | | BATLLC-471249860 | 7/21/2022 | 10/12/2021 | $128.79 | 8.5 | 120.29 | 87.88 | 128.79 | 120.29 | 8.5 | 87.88 |
| AuthorizeNet | | BATLLC-839857249 | 7/21/2022 | 9/3/2019 | $297.06 | 8.5 | 288.56 | 62.88 | 297.06 | 288.56 | 8.5 | 62.88 |
| AuthorizeNet Total | | | | | | | | | 425.85 | 408.85 | 17 | 150.76 |
| Equipay | | BATLLC-343028516 | 7/22/2022 | 8/28/2019 | $313.57 | 8.5 | 305.07 | 62.88 | 313.57 | 305.07 | 8.5 | 62.88 |
| Equipay | | BATLLC-355705845 | 7/22/2022 | 11/7/2019 | $125.13 | 8.5 | 116.63 | 92.88 | 125.13 | 116.63 | 8.5 | 62.88 |
| Equipay | | BATLLC-362975847 | 7/25/2022 | 12/12/2019 | $164.92 | 8.5 | 156.42 | 62.88 | 164.92 | 156.42 | 8.5 | 62.88 |
| Equipay | | BATLLC-366906599 | 7/20/2022 | 1/9/2020 | $414.89 | 8.5 | 406.39 | 92.88 | 414.89 | 406.39 | 8.5 | 62.88 |
| Equipay | | BATLLC-373171920 | 7/21/2022 | 1/23/2020 | $166.50 | 8.5 | 157.8 | 62.88 | 166.3 | 157.8 | 8.5 | 62.88 |
| Equipay | | BATLLC-373775757 | 7/25/2022 | 1/24/2020 | $157.87 | 8.5 | 149.37 | 62.88 | 157.87 | 149.37 | 8.5 | 62.88 |
| Equipay | | BATLLC-375735554 | 7/25/2022 | 1/30/2020 | $217.67 | 8.5 | 209.17 | 92.88 | 217.67 | 209.17 | 8.5 | 62.88 |
| Equipay | | BATLLC-381299044 | 7/22/2022 | 6/27/2019 | $129.07 | 8.5 | 120.57 | 62.88 | 129.07 | 120.57 | 8.5 | 62.88 |
| Equipay | | BATLLC-348600626 | 7/22/2022 | 9/30/2019 | $218.61 | 8.5 | 210.11 | 92.88 | 218.61 | 210.11 | 8.5 | 62.88 |
| Equipay | | BATLLC-348074339 | 7/22/2022 | 10/11/2019 | $79.39 | 8.5 | 70.89 | 92.88 | 79.39 | 70.89 | 8.5 | 62.88 |
| Equipay | | BATLLC-351050519 | 7/22/2022 | 10/15/2019 | $186.07 | 8.5 | 177.57 | 62.88 | 186.07 | 177.57 | 8.5 | 62.88 |
| Equipay | | BATLLC-351189806 | 7/22/2022 | 10/18/2019 | $145.22 | 8.5 | 134.72 | 62.88 | 134.72 | 143.22 | 8.5 | 62.88 |
| Equipay | | BATLLC-362595905 | 7/22/2022 | 12/11/2019 | $129.32 | 8.5 | 120.82 | 62.88 | 129.32 | 120.82 | 8.5 | 62.88 |
| Equipay | | BATLLC-363534472 | 7/25/2022 | 12/18/2019 | $63.58 | 8.5 | 55.08 | 92.88 | 63.58 | 55.08 | 8.5 | 62.88 |
| Equipay | | BATLLC-364797244 | 7/25/2022 | 12/19/2019 | $119.42 | 8.5 | 110.92 | 62.88 | 119.42 | 110.92 | 8.5 | 62.88 |
| Equipay | | BATLLC-369419930 | 7/22/2022 | 1/14/2020 | $190.55 | 8.5 | 182.05 | 62.88 | 190.55 | 182.05 | 8.5 | 62.88 |
| Equipay | | BATLLC-373027285 | 7/21/2022 | 1/21/2020 | $128.55 | 8.5 | 120.05 | 62.88 | 128.55 | 120.05 | 8.5 | 62.88 |
| Equipay | | BATLLC-373143258 | 7/20/2022 | 1/22/2020 | $156.78 | 8.5 | 148.28 | 62.88 | 156.78 | 148.28 | 8.5 | 62.88 |
| Equipay | | BATLLC-373058791 | 7/25/2022 | 1/24/2020 | $19.02 | 8.5 | 10.52 | 92.88 | 19.02 | 10.52 | 8.5 | 62.88 |
| Equipay | | BATLLC-374420516 | 7/22/2022 | 1/24/2020 | $116.81 | 8.5 | 108.31 | 62.88 | 116.81 | 108.31 | 8.5 | 62.88 |
| Equipay | | BATLLC-375236862 | 7/25/2022 | 1/28/2020 | $130.74 | 8.5 | 122.24 | 62.88 | 130.74 | 122.24 | 8.5 | 62.88 |
| Equipay | | BATLLC-373888104 | 7/25/2022 | 1/28/2020 | $179.68 | 8.5 | 171.18 | 92.88 | 179.68 | 171.18 | 8.5 | 62.88 |
| Equipay | | BATLLC-375501556 | 7/22/2022 | 1/29/2020 | $277.02 | 8.5 | 268.52 | 62.88 | 277.02 | 268.52 | 8.5 | 62.88 |
| Equipay | | BATLLC-376259079 | 7/20/2022 | 1/31/2020 | $156.18 | 8.5 | 147.68 | 92.88 | 156.18 | 147.68 | 8.5 | 62.88 |
| Equipay | | BATLLC-376271081 | 7/21/2022 | 2/3/2020 | $100.49 | 8.5 | 91.99 | 92.88 | 100.49 | 91.99 | 8.5 | 62.88 |
| Equipay | | BATLLC-376817422 | 7/23/2022 | 2/4/2020 | $160.32 | 8.5 | 151.82 | 62.88 | 160.32 | 151.82 | 8.5 | 62.88 |
| Equipay | | BATLLC-375517899 | 7/26/2022 | 2/5/2020 | $60.76 | 8.5 | 57.26 | 92.88 | 90.76 | 57.26 | 8.5 | 62.88 |
| Equipay | | BATLLC-377055523 | 7/22/2022 | 2/5/2020 | $298.49 | 8.5 | 289.99 | 62.88 | 298.49 | 289.99 | 8.5 | 62.88 |
| Equipay | | BATLLC-384595631 | 7/22/2022 | 3/2/2020 | $224.14 | 8.5 | 215.64 | 87.88 | 224.14 | 215.64 | 8.5 | 87.88 |
| Equipay | | BATLLC-384886227 | 7/22/2022 | 3/3/2020 | $212.24 | 8.5 | 203.74 | 87.88 | 212.24 | 203.74 | 8.5 | 87.88 |
| Equipay | | BATLLC-390044400 | 7/22/2022 | 3/12/2020 | $291.00 | 8.5 | 282.5 | 87.88 | 291 | 282.5 | 8.5 | 87.88 |
| Equipay | | BATLLC-390293199 | 7/22/2022 | 3/13/2020 | $69.13 | 8.5 | 60.63 | 87.88 | 69.13 | 60.63 | 8.5 | 87.88 |
| Equipay | | BATLLC-392069079 | 7/21/2022 | 3/20/2020 | $232.52 | 8.5 | 224.02 | 87.88 | 232.52 | 224.02 | 8.5 | 87.88 |
| Equipay | | BATLLC-396778450 | 7/22/2022 | 4/14/2020 | $100.03 | 8.5 | 91.53 | 87.88 | 100.03 | 91.53 | 8.5 | 87.88 |
| Equipay | | BATLLC-397010750 | 7/25/2022 | 4/16/2020 | $131.12 | 8.5 | 122.62 | 87.88 | 131.12 | 122.62 | 8.5 | 87.88 |
| Equipay | | BATLLC-397231532 | 7/21/2022 | 4/17/2020 | $92.53 | 8.5 | 84.03 | 87.88 | 92.53 | 84.03 | 8.5 | 87.88 |
| Equipay | | BATLLC-397869581 | 7/22/2022 | 4/22/2020 | $130.00 | 8.5 | 121.5 | 87.88 | 130 | 121.5 | 8.5 | 87.88 |
| Equipay | | BATLLC-400562513 | 7/20/2022 | 5/7/2020 | $258.85 | 8.5 | 250.35 | 87.88 | 258.85 | 250.35 | 8.5 | 87.88 |
| Equipay | | BATLLC-338957324 | 7/22/2022 | 7/26/2019 | $250.57 | 8.5 | 242.07 | 62.88 | 250.57 | 242.07 | 8.5 | 62.88 |
| Equipay | | BATLLC-343234070 | 7/22/2022 | 8/20/2019 | $760.60 | 8.5 | 752.1 | 62.88 | 760.6 | 752.1 | 8.5 | 62.88 |
| Equipay | | BATLLC-343244108 | 7/22/2022 | 8/22/2019 | $87.79 | 8.5 | 79.29 | 62.88 | 87.79 | 79.29 | 8.5 | 62.88 |
| Equipay | | BATLLC-344373497 | 7/20/2022 | 9/3/2019 | $19.73 | 8.5 | 11.23 | 62.88 | 19.73 | 11.23 | 8.5 | 62.88 |
| Equipay | | BATLLC-345990598 | 7/20/2022 | 9/11/2019 | $287.88 | 8.5 | 279.38 | 62.88 | 287.88 | 279.38 | 8.5 | 62.88 |
| Equipay | | BATLLC-346496903 | 7/20/2022 | 9/16/2019 | $236.60 | 8.5 | 228.1 | 62.88 | 236.6 | 228.1 | 8.5 | 62.88 |
| Equipay | | BATLLC-347465411 | 7/20/2022 | 9/23/2019 | $353.76 | 8.5 | 345.26 | 62.88 | 353.76 | 345.26 | 8.5 | 62.88 |
| Equipay | | BATLLC-348601691 | 7/21/2022 | 9/30/2019 | $266.94 | 8.5 | 258.44 | 62.88 | 266.94 | 258.44 | 8.5 | 62.88 |
| Equipay | | BATLLC-349923025 | 7/20/2022 | 10/3/2019 | $121.53 | 8.5 | 113.03 | 62.88 | 121.53 | 113.03 | 8.5 | 62.88 |
| Equipay | | BATLLC-350149628 | 7/21/2022 | 10/10/2019 | $789.43 | 8.5 | 780.93 | 62.88 | 789.43 | 780.93 | 8.5 | 62.88 |
| Equipay | | BATLLC-351041561 | 7/21/2022 | 10/15/2019 | $185.43 | 8.5 | 176.93 | 62.88 | 185.43 | 176.93 | 8.5 | 62.88 |
| Equipay | | BATLLC-351166242 | 7/20/2022 | 10/17/2019 | $220.22 | 8.5 | 211.72 | 62.88 | 220.22 | 211.72 | 8.5 | 62.88 |
| Equipay | | BATLLC-352043115 | 7/20/2022 | 10/30/2019 | $253.90 | 8.5 | 245.4 | 62.88 | 253.9 | 245.4 | 8.5 | 62.88 |
| Equipay | | BATLLC-352577544 | 7/22/2022 | 10/30/2019 | $265.33 | 8.5 | 256.83 | 62.88 | 265.33 | 256.83 | 8.5 | 62.88 |
| Equipay | | BATLLC-355436558 | 7/22/2022 | 11/4/2019 | $352.13 | 8.5 | 343.63 | 62.88 | 352.13 | 343.63 | 8.5 | 62.88 |
| Equipay | | BATLLC-355471392 | 7/21/2022 | 11/5/2019 | $567.47 | 8.5 | 558.97 | 62.88 | 567.47 | 558.97 | 8.5 | 62.88 |
| Equipay | | BATLLC-355844005 | 7/22/2022 | 11/8/2019 | $258.23 | 8.5 | 249.73 | 62.88 | 258.23 | 249.73 | 8.5 | 62.88 |
| Equipay | | BATLLC-357750010 | 7/21/2022 | 11/15/2019 | $250.00 | 8.5 | 241.5 | 62.88 | 250 | 241.5 | 8.5 | 62.88 |
| Equipay | | BATLLC-361290397 | 7/21/2022 | 12/4/2019 | $150.00 | 8.5 | 141.5 | 62.88 | 150 | 141.5 | 8.5 | 62.88 |
| Equipay | | BATLLC-361350013 | 7/20/2022 | 12/5/2019 | $310.98 | 8.5 | 302.48 | 62.88 | 310.98 | 302.48 | 8.5 | 62.88 |
| Equipay | | BATLLC-361663574 | 7/20/2022 | 12/6/2019 | $591.84 | 8.5 | 583.34 | 62.88 | 591.84 | 583.34 | 8.5 | 62.88 |
| Equipay | | BATLLC-361501114 | 7/20/2022 | 12/6/2019 | $810.64 | 8.5 | 802.14 | 62.88 | 810.64 | 802.14 | 8.5 | 62.88 |
| Equipay | | BATLLC-355497819 | 7/20/2022 | 12/11/2019 | $632.51 | 8.5 | 624.01 | 62.88 | 632.51 | 624.01 | 8.5 | 62.88 |
| Equipay | | BATLLC-364204162 | 7/21/2022 | 12/17/2019 | $204.39 | 8.5 | 195.89 | 62.88 | 204.39 | 195.89 | 8.5 | 62.88 |
| Equipay | | BATLLC-361454515 | 7/20/2022 | 12/24/2019 | $253.64 | 8.5 | 245.14 | 62.88 | 253.64 | 245.14 | 8.5 | 62.88 |
| Equipay | | BATLLC-366929792 | 7/21/2022 | 1/13/2020 | $511.68 | 8.5 | 503.38 | 62.88 | 511.88 | 503.38 | 8.5 | 62.88 |
| Equipay | | BATLLC-375321690 | 7/21/2022 | 1/28/2020 | $146.05 | 8.5 | 137.55 | 62.88 | 146.05 | 137.55 | 8.5 | 62.88 |
| Equipay | | BATLLC-388852748 | 7/20/2022 | 3/11/2020 | $458.87 | 8.5 | 450.37 | 87.88 | 458.87 | 450.37 | 8.5 | 87.88 |
| Equipay | | BATLLC-392435205 | 7/20/2022 | 3/23/2020 | $703.81 | 8.5 | 695.31 | 87.88 | 703.81 | 695.31 | 8.5 | 87.88 |
| Equipay | | BATLLC-394935208 | 7/19/2022 | 4/8/2020 | $307.89 | 8.5 | 299.39 | 87.88 | 307.89 | 299.39 | 8.5 | 87.88 |
| Equipay | | BATLLC-396715950 | 7/20/2022 | 4/14/2020 | $420.68 | 8.5 | 412.18 | 87.88 | 420.68 | 412.18 | 8.5 | 87.88 |
| Equipay | | BATLLC-396848044 | 7/22/2022 | 4/17/2020 | $103.00 | 8.5 | 94.5 | 87.88 | 103 | 94.5 | 8.5 | 87.88 |
| Equipay | | BATLLC-399057231 | 7/22/2022 | 5/1/2020 | $88.36 | 8.5 | 79.86 | 87.88 | 88.36 | 79.86 | 8.5 | 87.88 |
| Equipay | | BATLLC-401404692 | 7/22/2022 | 5/14/2020 | $250.07 | 8.5 | 241.57 | 87.88 | 250.07 | 241.57 | 8.5 | 87.88 |
| Equipay | | BATLLC-378199723 | 7/21/2022 | 6/30/2021 | $414.05 | 8.5 | 405.55 | 87.88 | 414.05 | 405.55 | 8.5 | 87.88 |
| Equipay | | BATLLC-308456643 | 7/25/2022 | 3/21/2019 | $596.04 | 8.5 | 587.54 | 62.88 | 596.04 | 587.54 | 8.5 | 62.88 |
| Equipay | | BATLLC-332045405 | 7/22/2022 | 7/5/2019 | $350.00 | 8.5 | 341.5 | 62.88 | 350 | 341.5 | 8.5 | 62.88 |
| Equipay | | BATLLC-343196111 | 7/25/2022 | 8/20/2019 | $443.20 | 8.5 | 434.7 | 62.88 | 443.2 | 434.7 | 8.5 | 62.88 |
| Equipay | | BATLLC-346182290 | 7/25/2022 | 9/16/2019 | $491.01 | 8.5 | 482.51 | 62.88 | 491.01 | 482.51 | 8.5 | 62.88 |
| Equipay | | BATLLC-346940459 | 7/26/2022 | 9/19/2019 | $355.48 | 8.5 | 346.98 | 62.88 | 346.98 | 355.48 | 8.5 | 62.88 |

EXHIBIT 5
Page 60

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Equipay | | | BATLLC-346404572 | 7/25/2022 | 9/20/2019 | $267.66 | 8.5 | 259.16 | 62.88 | 267.66 | 259.16 | 8.5 | 62.88 |
| Equipay | | | BATLLC-349401875 | 7/25/2022 | 10/8/2019 | $588.37 | 8.5 | 579.87 | 62.88 | 588.37 | 579.87 | 8.5 | 62.88 |
| Equipay | | | BATLLC-350036655 | 7/25/2022 | 10/9/2019 | $433.90 | 8.5 | 425.4 | 62.88 | 433.9 | 425.4 | 8.5 | 62.88 |
| Equipay | | | BATLLC-350110484 | 7/25/2022 | 10/9/2019 | $651.17 | 8.5 | 642.67 | 62.88 | 651.17 | 642.67 | 8.5 | 62.88 |
| Equipay | | | BATLLC-350751818 | 7/25/2022 | 10/15/2019 | $193.03 | 8.5 | 124.53 | 62.88 | 193.03 | 124.53 | 8.5 | 62.88 |
| Equipay | | | BATLLC-351403076 | 7/25/2022 | 10/17/2019 | $467.56 | 8.5 | 459.06 | 62.88 | 467.56 | 459.06 | 8.5 | 62.88 |
| Equipay | | | BATLLC-355951213 | 7/25/2022 | 11/8/2019 | $44.44 | 8.5 | 35.94 | 62.88 | 44.44 | 35.94 | 8.5 | 62.88 |
| Equipay | | | BATLLC-357227529 | 7/25/2022 | 11/12/2019 | $388.59 | 8.5 | 380.09 | 62.88 | 388.59 | 380.09 | 8.5 | 62.88 |
| Equipay | | | BATLLC-358165123 | 7/25/2022 | 11/18/2019 | $524.91 | 8.5 | 516.41 | 62.88 | 524.91 | 516.41 | 8.5 | 62.88 |
| Equipay | | | BATLLC-358648128 | 7/25/2022 | 11/20/2019 | $454.84 | 8.5 | 446.34 | 62.88 | 454.84 | 446.34 | 8.5 | 62.88 |
| Equipay | | | BATLLC-357243102 | 7/25/2022 | 11/26/2019 | $321.76 | 8.5 | 313.26 | 62.88 | 321.76 | 313.26 | 8.5 | 62.88 |
| Equipay | | | BATLLC-360430198 | 7/25/2022 | 12/3/2019 | $261.77 | 8.5 | 253.27 | 62.88 | 261.77 | 253.27 | 8.5 | 62.88 |
| Equipay | | | BATLLC-361691950 | 7/25/2022 | 12/11/2019 | $698.99 | 8.5 | 690.49 | 62.88 | 698.99 | 690.49 | 8.5 | 62.88 |
| Equipay | | | BATLLC-364402533 | 7/25/2022 | 12/18/2019 | $205.17 | 8.5 | 196.67 | 62.88 | 205.17 | 196.67 | 8.5 | 62.88 |
| Equipay | | | BATLLC-366623028 | 7/25/2022 | 1/8/2020 | $223.97 | 8.5 | 215.47 | 62.88 | 223.97 | 215.47 | 8.5 | 62.88 |
| Equipay | | | BATLLC-372951180 | 7/25/2022 | 1/21/2020 | $255.79 | 8.5 | 247.29 | 62.88 | 255.79 | 247.29 | 8.5 | 62.88 |
| Equipay | | | BATLLC-371014198 | 7/25/2022 | 1/21/2020 | $540.92 | 8.5 | 532.42 | 62.88 | 540.92 | 532.42 | 8.5 | 62.88 |
| Equipay | | | BATLLC-380431827 | 7/25/2022 | 2/17/2020 | $637.43 | 8.5 | 628.93 | 62.88 | 637.43 | 628.93 | 8.5 | 62.88 |
| Equipay | | | BATLLC-380845157 | 7/26/2022 | 2/20/2020 | $267.59 | 8.3 | 259.09 | 62.88 | 267.59 | 259.09 | 8.3 | 62.88 |
| Equipay | | | BATLLC-395542626 | 7/25/2022 | 4/2/2020 | $307.93 | 8.3 | 299.43 | 87.88 | 307.93 | 299.43 | 8.5 | 87.88 |
| Equipay | | | BATLLC-396006434 | 7/25/2022 | 4/7/2020 | $679.02 | 8.5 | 670.52 | 87.88 | 679.02 | 670.52 | 8.5 | 87.88 |
| Equipay | | | BATLLC-397066262 | 7/25/2022 | 4/16/2020 | $468.99 | 8.5 | 460.49 | 87.88 | 468.99 | 460.49 | 8.5 | 87.88 |
| Equipay | | | BATLLC-397253339 | 7/25/2022 | 4/17/2020 | $183.00 | 8.5 | 174.5 | 87.88 | 183 | 174.5 | 8.5 | 87.88 |
| Equipay | | | BATLLC-359958679 | 7/20/2022 | 8/1/2019 | $1,374.84 | 8.5 | 1366.34 | 62.88 | 1374.84 | 1366.34 | 8.5 | 62.88 |
| Equipay | | | BATLLC-377364622 | 7/20/2022 | 2/6/2020 | $574.63 | 8.5 | 566.13 | 62.88 | 574.63 | 566.13 | 8.5 | 62.88 |
| Equipay | | | BATLLC-366602051 | 7/22/2022 | 1/8/2020 | $315.27 | 8.5 | 306.77 | 62.88 | 315.27 | 306.77 | 8.5 | 62.88 |
| Equipay | | | BATLLC-357170923 | 7/25/2022 | 11/12/2019 | $264.36 | 8.5 | 255.86 | 62.88 | 264.36 | 255.86 | 8.5 | 62.88 |
| **Equipay Total** | | | | | | | | | | **32008.75** | **31116.25** | **892.5** | **7152.4** |
| USA E-Pay | | | BATLLC-358281555 | 7/22/2022 | 11/11/2019 | $267.17 | 8.5 | 258.67 | 62.88 | 267.17 | 258.67 | 8.5 | 62.88 |
| **USA E-Pay Total** | | | | | | | | | | **267.17** | **258.67** | **8.5** | **62.88** |
| SeamlessChex | | | BATLLC-366625181 | 7/11/2022 | 1/21/2020 | $291.97 | 8.5 | 223.47 | 62.88 | 291.97 | 223.47 | 8.5 | 62.88 |
| **SeamlessChex Total** | | | | | | | | | | **291.97** | **223.47** | **8.5** | **62.88** |
| **Grand Total** | | | | | | | | | | **32933.74** | **32007.24** | **926.5** | **7428.92** |

EXHIBIT 5
Page 61



**VP LLC - Escrow**    8/1/2022

| | | | | | | |
|---|---|---|---|---|---|---|
| Net Amount | | $4,443.96 | | EPPS | $0.00 | |
| MFees | * | $1,230.32 | | SeamlessChex | $0.00 | |
| Net Amount to Disburse | | $3,213.64 | | USA E-Pay | $0.00 | |
| | | | | AuthorizeNet | $0.00 | |
| Chargeback | $3,213.64 | 69.00% | $2,217.41 | Equipay | $4,562.96 | |
| ASF - Escrow Total | | 69.00% | $0.00 | | | |
| | | | $2,217.41 | | $4,562.96 | |
| Chargeback | $3,213.64 | 31.00% | $996.23 | | | |
| Validation Partners LLC Total | | 31.00% | $0.00 | | | |
| | | | $996.23 | | | |
| Verified Balance | | $3,213.64 | | | | |

RETURNS

Company           All Service Financial, LLC
Company - Partner ASF - Escrow - Partner
Lead Vendor       VP, LLC

| Custodial Account | Full Name | Customer ID | Process Date | Enrolled Date | Amount | Fee | Amount - Fee | MFee | Sum of Amount | Sum of Amount - Fee | Sum of Fee | Sum of MFee |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Equipay | | BATLLC-496083345 | 7/21/2022 | 9/7/2021 | $358.24 | 8.5 | 349.74 | 87.88 | 358.24 | 349.74 | 8.5 | 87.88 |
| Equipay | | BATLLC-495954708 | 7/22/2022 | 9/8/2021 | $242.22 | 8.5 | 233.72 | 87.88 | 242.22 | 233.72 | 8.5 | 87.88 |
| Equipay | | BATLLC-496001109 | 7/22/2022 | 9/13/2021 | $123.15 | 8.5 | 114.65 | 87.88 | 123.15 | 114.65 | 8.5 | 87.88 |
| Equipay | | BATLLC-494012589 | 7/22/2022 | 8/26/2021 | $125.54 | 8.5 | 117.04 | 87.88 | 125.54 | 117.04 | 8.5 | 87.88 |
| Equipay | | BATLLC-491820372 | 7/21/2022 | 8/30/2021 | $127.19 | 8.5 | 118.69 | 87.88 | 127.19 | 118.69 | 8.5 | 87.88 |
| Equipay | | BATLLC-495945624 | 7/22/2022 | 9/7/2021 | $136.02 | 8.5 | 127.52 | 87.88 | 136.02 | 127.52 | 8.5 | 87.88 |
| Equipay | | BATLLC-450565415 | 7/21/2022 | 9/7/2021 | $843.05 | 8.5 | 834.55 | 87.88 | 843.05 | 834.55 | 8.5 | 87.88 |
| Equipay | | BATLLC-496678572 | 7/20/2022 | 9/8/2021 | $380.99 | 8.5 | 372.49 | 87.88 | 380.99 | 372.49 | 8.5 | 87.88 |
| Equipay | | BATLLC-499058827 | 7/22/2022 | 9/16/2021 | $278.54 | 8.5 | 270.04 | 87.88 | 278.54 | 270.04 | 8.5 | 87.88 |
| Equipay | | BATLLC-484133752 | 7/25/2022 | 7/28/2021 | $144.80 | 8.5 | 136.3 | 87.88 | 144.8 | 136.3 | 8.5 | 87.88 |
| Equipay | | BATLLC-491828928 | 7/25/2022 | 8/24/2021 | $755.63 | 8.5 | 747.13 | 87.88 | 755.63 | 747.13 | 8.5 | 87.88 |
| Equipay | | BATLLC-495617571 | 7/25/2022 | 9/1/2021 | $569.81 | 8.5 | 561.31 | 87.88 | 569.81 | 561.31 | 8.5 | 87.88 |
| Equipay | | BATLLC-498250078 | 7/25/2022 | 9/13/2021 | $343.32 | 8.5 | 334.82 | 87.88 | 343.32 | 334.82 | 8.5 | 87.88 |
| Equipay | | BATLLC-496682010 | 7/20/2022 | 9/9/2021 | $134.46 | 8.5 | 125.96 | 87.88 | 134.46 | 125.96 | 8.5 | 87.88 |
| Equipay Total | | | | | | | | | 4562.96 | 4443.96 | 119 | 1230.32 |
| Grand Total | | | | | | | | | 4562.96 | 4443.96 | 119 | 1230.32 |

EXHIBIT 5
Page 62

Begin forwarded message:

**From:** Brice Long <brice@lpglaw.com>
**Subject: Weekly Total Update - ASF, Escrow**
**Date:** August 2, 2022 at 6:23:01 AM PDT
**To:** Vivian Stomel <vstomel@allservicefinancial.com>

Good morning,
(ASF) -- We added income from the secondary revenue sheet totaling ($16,959.04), which brings your total wire to $19,052.58. Please let me know if you have any questions or concerns.
(Escrow) -- We added income from the secondary revenue sheet totaling ($2,217.41), which brings your total wire to $2,217.41. Please let me know if you have any questions or concerns.
ASF TOTAL: $1,297,319.47
ESCROW TOTAL: $94,886.77

Thanks,

Brice Long
*Treasury Accountant*
P.O. Box 513018
Los Angeles, CA 90051

 **LITIGATION**
**PRACTICE GROUP**

NOTICE: This email message (including any attachments) may contain material that is confidential and/or legally privileged. Unless you are the intended recipient or are authorized to receive information for the intended recipient, you may not use, copy, or disclose any part of this message. If you have received this message in error, please notify us and delete all copies of it.

1

EXHIBIT 5
Page 63

**PROOF OF SERVICE**

STATE OF CALIFORNIA    )
                       ) ss.
COUNTY OF VENTURA      )

I am employed in the County of Ventura, State of California; I am over the age of eighteen years and not a party to the within action; my business address is 1860 Bridgegate Street, Westlake Village, California 91361-1409.

On February 21, 2024, I served the foregoing document described as **PROOF OF CLAIM; PROOF OF CLAIM FINANCIAL SPREADSHEET; PROOF OF CLAIM ESCROW SPREADSHEET; EMAIL FROM LPG RE: WIRE TRANSFER** on the interested parties in said action, by placing sending a true copy thereof by email, addressed as follows:

| | |
|---|---|
| The Litigation Practice Group P.C.<br>Claims Processing<br>c/o Omni Agent Solutions<br>5955 De Soto Avenue<br>Suite 100<br>Woodland Hills, CA 91367<br>Telephone # 818-906-8300 | |

[XX]  [VIA FEDERAL EXPRESS (FEDEX® EXPRESS)]  I enclosed the documents in an envelope or package in accordance with the guidelines provided by Federal Express® and addressed to the person(s) listed above.  I placed the envelope or package for collection at our office in Westlake Village by an authorized representative of Federal Express®, using Tracking No. 7752 6590 2225.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on February 21, 2024, at Westlake Village, California.

JESSICA BURGESS

1

PROOF OF SERVICE - PROOF OF CLAIM - ASF

EXHIBIT 5
Page 64



ORIGIN ID:JSNA    (805) 495-4044
SAMUEL J. ARSHT, ESQ.
SILVER & ARSHT.
1880 BRIDGEGATE STREET
WESTLAKE VILLAGE, CA 91361
UNITED STATES US

TO   LITIGATION PRACTICE GROUP-CLAIMS
OMNI AGENT SOLUTIONS
5955 DESOTO AVENUE
SUITE 100
WOODLAND HILLS CA 91367
(818) 906-8300
INV:
PO:                    REF: ALL SERVICE FINANCIAL
                       DEPT:

SHIP DATE: 21FEB24
ACTWGT: 0.20 LB
CAD: 41623/INET14535

BILL SENDER

TRK#
0201   7752 6590 2225

CZ SFRA

FRI  -  23 FEB 10:30A
MORNING 2DAY

CA-US  BUR

91367

FedEx
Express

583J6/194B/9AE3

RECEIVED
FEB 2 2 2024
Omni Agent Solutions

After printing this label:
**CONSIGNEE COPY - PLEASE PLACE IN FRONT OF POUCH**
1. Fold the printed page along the horizontal line.
2. Place label in shipping pouch and affix it to your shipment.

Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com. FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is $1,000, e.g. jewelry, precious metals, negotiable instruments and other items listed in our Service Guide. Written claims must be filed within strict time limits, see current FedEx Service Guide.

EXHIBIT 5
Page 65

1

2                                    **EXHIBIT "6"**

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT 6
Page 66

1  CHRISTOPHER B. GHIO (259094)
   christopher.ghio@dinsmore.com
2  CHRISTOPHER CELENTINO (131688)
   christopher.celentino@dinsmore.com
3  YOSINA M. LISSEBECK (201654)
   yosina.lissebeck@dinsmore.com
4  DINSMORE & SHOHL LLP
5  655 West Broadway, Suite 800
   San Diego, California 92101
6  Tele:  619.400.0500
7  Fax:  619.400.0501

8  Sarah S. Mattingly (Ky. Bar 94257)
   sarah.mattingly@dinsmore.com
9  DINSMORE & SHOHL, LLP
   101 S. Fifth Street, Suite 2500
10 Louisville, Kentucky 40202
   Tele: 859-425-1096
11 Fax: 502-585-2207
12 (Admitted pro hac vice)

13 Special Counsel to Richard A. Marshack

**FILED & ENTERED**

**JUN 03 2024**

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY mccall    DEPUTY CLERK

14               **UNITED STATES BANKRUPTCY COURT**

15        **CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION**

16 In Re                          Case No: 23-bk-10571-SC

17                                Chapter 11

18                                **ORDER GRANTING MOTION FOR**
   The Litigation Practice Group P.C.,  **ENTRY OF PROTECTIVE ORDER AND**
19                                **THE PROTECTIVE ORDER**
20              Debtor(s),

21                                Date:    May 23, 2024
22                                Time:    1:30 p.m.
                                 Judge:   Hon. Scott C. Clarkson
23                                Place:   Courtroom 5C (via Zoom)[1]
24                                         411 West Fourth Street
                                          Santa Ana, CA 92701
25

26

27 ─────────────────────────

28 [1] Video and audio connection information for each hearing will be provided on Judge Clarkson's
   publicly posted hearing calendar, which may be viewed online at:
   http://ecf-ciao.cacb.uscourts.gov/CiaoPosted/?jid=SC.

EXHIBIT 6
Page 67

1       The Court has read and considered the Notice of Motion and Motion for Entry of Protective

2   Order (the "Motion") filed by Richard A. Marshack, in his capacity as the Chapter 11 Trustee (the

3   "Trustee") of the Bankruptcy Estate ("Estate") of The Litigation Practice Group P.C., on May 2, 2024,

4   pursuant to Federal Rule of Bankruptcy Procedure 7026 and Federal Rule of Civil Procedure 26(c)(1),

5   as Dk. No. 1164 ("Motion"), and has found good cause to grant the Motion.

6       IT IS HEREBY ORDERED that:

7       1.      The Motion is granted;

8       2.      The below Protective Order shall apply to any contested matter arising

9       in the main bankruptcy case and in all adversary proceedings filed by or against Trustee,

10      present and future; and

11      3.      Govern the discovery conducted therein.

12

13                                  **PROTECTIVE ORDER**

14      **1.      DEFINITIONS**

15      1.1     "Confidential Information" as used in this Protective Order shall mean documents and

16  other information (regardless of how generated, stored or maintained) that a Party or non-party

17  reasonably believes to contain or reflect non-public financial or business information, bank records,

18  financial records, such as social security numbers, non-public financial or personal information of a

19  Party or non-party, account numbers, sensitive digital information and identifiers, information subject

20  to confidentiality agreements or provisions other than this Protective Order, and other non-public

21  research, development, or commercial information that derives value or avoids injury by virtue of not

22  being known to the public.

23      1.2     This "Action" is defined and hereby means any contested matter arising in the main

24  bankruptcy case and in all adversary proceedings filed by or against Trustee, present and future.

25      1.3     "Designating Party" means a Party or non-party that designates Confidential

26  Information during the Action.

27      1.4     "Receiving Party" means a Party that receives Confidential Information during the

28  Action.

EXHIBIT 6
Page 68

1.5     "Party" or "Parties" means person or entity subject to this Protective Order.

**2.     SCOPE OF THIS PROTECTIVE ORDER**

2.1     Unless otherwise ordered, this Protective Order shall govern certain documents and other products of discovery obtained in the Action from the Parties there to, and from third parties. As well as certain information copied or derived therefrom, excerpts, summaries or compilations thereof, including, but not limited to, documents voluntarily exchanged as part of early settlement discussions, documents produced pursuant to initial disclosures, requests authorized by the Federal Rules of Civil Procedure made applicable herein by the Federal Rules of Bankruptcy Procedure, answers to interrogatories, deposition transcripts, responses to requests for production, responses to requests for admission, subpoenas, affidavits, declarations, expert reports, and other such material and information as may be produced during the course of the Action and designated as Confidential Information.

**3.     DESIGNATION OF CONFIDENTIAL INFORMATION**

3.1     This Protective Order shall govern the production and handling of any Confidential Information in this Action. Any Party or non-party who produces Confidential Information in this Action may designate it as "Confidential" or "Attorneys' Eyes Only" consistent with the terms of this Protective Order. Whenever possible, the Designating Party must designate only those portions of a document, written discovery responses, deposition, transcript, or other material that contain the Confidential Information and refrain from designating entire documents. Regardless of any designations made hereunder, the Designating Party is not otherwise restricted from use or disclosure of its Confidential Information outside of this Action or for any business purposes. In addition, any Party may move to modify or seek other relief from any of the terms of this Protective Order if it has first tried in writing and in good faith to resolve its needs or disputes with the other Parties or Party as the case may be under the terms of this Protective Order. Further, nothing in this Protective Order shall prevent a Party from redacting documents consistent with the Federal Rules of Civil Procedure and utilizing the documents as needed through-out the Action.

3.2     <u>Application to Non-Parties:</u> Before a non-party is given copies of documents or materials designated as Confidential Information or Attorneys' Eyes Only as permitted hereunder, it

must first sign an acknowledgment to be bound to these terms that is attached hereto as <u>Exhibit</u> A; if it fails to do so, the Parties to this Action must resolve any such dispute before making disclosure of designated information as permitted hereunder to the non-party. If a non-party wishes to make designations hereunder, it must first sign attached <u>Exhibit A.</u>

3.3     <u>Timing and Provisional Protection:</u> Designations of Confidential Information may be made at any time. To avoid potential waiver of protection hereunder, the Designating Party should designate documents or materials containing Confidential Information at the time of production or disclosure, including on the record during the taking of any deposition. Deposition testimony will be deemed provisionally protected for a period of thirty (30) days after the transcript is released to the Parties by the court reporter, although the Parties may agree at any time to different timelines of provisional protection of information as Confidential or Attorneys' Eyes Only as part of one or more specific depositions. To retain any designations beyond the provisional period, a Designating Party must designate specific pages and lines of deposition testimony before the provisional period has expired. Such designations must be made in writing so that all counsel and court reporters may append the designation to all copies of the transcripts.

3.4     <u>Manner of Designation:</u> Confidential Information may be designated hereunder in any reasonable manner or method that notifies the Receiving Party of the designation level and identifies with specificity the information to which the designation applies. If made verbally, the Designating Party must promptly confirm the designation in writing. Whenever possible, the Designating Party should stamp, affix, or embed a legend of "CONFIDENTIAL" or "ATTORNEYS' EYES ONLY" on each designated page of the document or electronic image that contains Confidential Information.

**4.     CHALLENGES TO DESIGNATED INFORMATION**

4.1     In the event that a Receiving Party disagrees at any time with any designation(s) made by the Designating Party, the Receiving Party must first try to resolve such challenge in good faith on an informal basis with the Designating Party. The Receiving Party must provide written notice of the challenge and the grounds therefor to the Designating Party, who must respond in writing to the challenge within fifteen (15) days. At all times, the Designating Party carries the burden of establishing the propriety of the designation and protection level. Unless and until the challenge is

EXHIBIT 6
Page 70

resolved by the Parties or ruled upon by the Court, the designated information shall remain protected under this Protective Order. The failure of any Receiving Party to challenge a designation does not constitute a concession that the designation is proper or an admission that the designated information is otherwise competent, relevant, or material.

### 5.    LIMITED ACCESS/USE OF PROTECTED INFORMATION

5.1    Restricted Use: Information that is produced or exchanged in the course of the Action and designated under this Protective Order may be used for preparation for trial and preparation for any appeal of any and all matters in the Action, as well as related settlement negotiations, and for no other purpose, without the written consent of the Designating Party. No Confidential Information may be disclosed to any person except in accordance with the terms of this Protective Order, unless the parties are co-counsel or have entered into joint defense agreements. All persons in possession of Confidential Information agree to exercise reasonable care with regard to the custody, use, or storage of such information to ensure that its confidentiality is maintained. This obligation includes, but is not limited to, the Receiving Party providing to the Designating Party prompt notice of the receipt of any subpoena that seeks production or disclosure of any designated information and consulting with the Designating Party before responding to the subpoena. Any use or disclosure of Confidential or Attorneys' Eyes Only information in violation of the terms of this Protective Order may subject the disclosing person or party to sanctions.

5.2    Access to "Confidential" Information: The Party(ies) and all persons subject to this Protective Order agree that information designated as "CONFIDENTIAL" may only be accessed or reviewed by the following:

a)    The Court, its personnel, and court reporters;

b)    Counsel of record, or co-counsel for any Party, or other party that has entered into a joint defense agreement in the Action and their employees who assist counsel of record, or co-counsel in the Action and are informed of the duties and obligations imposed hereunder;

c)    The Parties, including their clients, agents and employees who are assisting or have reason to know of the Action;

///

EXHIBIT 6
Page 71

d)      Experts or consultants employed by the Parties or their counsel, or co-counsel, for purposes of an Action, so long as each such expert or consultant has signed attached Exhibit A; and

e)      Other witnesses or persons with the Designating Party's consent or by court order.

5.3      Access to "Attorneys' Eyes Only" Designations: The Parties and all persons subject to this Protective Order agree that information designated as "ATTORNEYS' EYES ONLY" may only be accessed or reviewed by the following:

a)      The Court, its personnel, and court reporters;

b)      Counsel of record, or co-counsel for any Party, or other party that has entered into a joint defense agreement in the Action and their employees who assist counsel of record in the Action and are informed of the duties hereunder;

c)      In-house counsel for any Party in the Action and Richard A. Marshack, as Chapter 11 Trustee of The Litigation Practice Group P.C. who is informed of the duties and obligations imposed hereunder;

d)      Experts or consultants employed by the Parties or their counsel, or co-counsel for purposes of the Action,  and so long as each such expert or consultant has signed attached Exhibit A; and

e)      Other witnesses or persons to whom the Designating Party agrees in advance of disclosure or by court order.

5.4      Non-Waiver Effect of Designations: Neither the taking of, nor the failure to take, any action to enforce the provisions of this Protective Order, nor the failure to object to any designation, will constitute a waiver of any Party(ies)'s claim or defense in the Action or any other action or proceeding, including, but not limited to, a claim or defense that any designated information is or is not Confidential, is or is not entitled to particular protection, or embodies or does not embody information protectable by law.

5.5      In-Court Use of Designated Information: If information designated under this Protective Order will or may be offered in evidence at a hearing or trial related to any matter in the Action, then the offering party must give advance notice to the party or non-party that designated prior to offering the information so that any use or disclosure may be addressed in accordance with

6

EXHIBIT 6
Page 72

the Court's case-management or other pre-trial order, or by a motion *in limine*.  Nothing in this Protective Order shall be construed as a waiver by a Party of any objections that may be raised as to the admissibility at trial of any evidentiary materials.

### 6. CLAW-BACK REQUESTS

6.1    <u>Failure to Make Designation:</u>  If, at any time, a Party or non-party discovers that it produced or disclosed Confidential Information without designation, it may promptly notify the Receiving Party and identify with particularity the Confidential Information to be designated and the level of designation (the claw-back notification). The Receiving Party may then request substitute production of the newly-designated information. Within thirty (30) days of receiving the claw-back notification, the Receiving Party must: (1) certify to the Designating Party it has appropriately marked or, if substitute production has been requested, destroyed all unmarked copies that it received, made, and/or distributed; and (2) if it was practicably unable to mark or destroy any information because disclosures occurred while the Receiving Party was under no duty of confidentiality under the terms of this Protective Order regarding that information, the Receiving Party must reasonably provide as much information as practicable to aid the Designating Party in protecting the information, consistently with the Receiving Party's attorney-client, work-product, and/or trial-preparation privileges.

6.2    <u>Inadvertent Production of Privileged Information:</u> If, at any time, a Party discovers that it produced information that it reasonably believes is subject to protection under the attorney/client, work-product, or trial-preparation privileges, then it must promptly notify each Receiving Party of the claim for protection, the basis for it, amend its privilege log accordingly, and comply with Fed. R. Civ. P. 26(b)(5). Whenever possible, the producing party must produce substitute information that redacts the information subject to the claimed protection. The Receiving Party must thereupon comply with Fed. R. Civ. P. 26(b)(5)(B) as to the information subject to the claimed protection.

/ / /

/ / /

/ / /

**7.    DURATION/CONTINUED RESTRICTIONS**

7.1    <u>Handling of Designated Information Upon Conclusion of the Main Bankruptcy Case:</u> Upon conclusion of the Main Bankruptcy Case, by way of dismissal or closing of the case, the Designating Party(ies) is/are responsible for ensuring that any Party or person to whom the Designating Party shared or disclosed designated information in any of the matters under the Action returns or destroys all of its copies, regardless of the medium in which it was stored. No witness or Party may retain designated information that it received from any other Party or non-party under this Protective Order; only counsel of record, or co-counsel, are the authorized agents who may retain one copy for their respective legal files, and who must also describe to the Designating Party the extra steps taken to protect its legal file containing paper and/or electronic copies of the designated information so that it is not accessed, used, or disclosed inconsistently with the obligations under this Protective Order. This provision does not apply to the Court or Court staff. Moreover, this provision does not apply to Trustee, who may retain and use – consistent with this Order – Confidential Information received in any Action during the entirety of the Bankruptcy.

7.2    <u>Continued Restrictions Under this Protective Order:</u> The restrictions on disclosure and use of Confidential Information shall survive the conclusion of the Bankruptcy case and any matter in the Action.

**8.    PRIVILEGED OR PROTECTED INFORMATION**

8.1    Nothing in this Protective Order shall require disclosure of information that is protected by the attorney-client privilege, the work-product protection, or any other legally cognizable privilege (a "Privilege or Protection").  If information subject to a claim of Privilege or Protection is inadvertently produced, pursuant to Federal Rule of Evidence 502(d) such production shall not constitute a waiver of, or estoppel as to, any claim of Privilege or Protection for such information or any other information that may be protected from disclosure by a Privilege or Protection in any proceeding.

8.2    If a Party receives a document that appears to be subject to a Privilege or Protection, then it shall refrain from examining the document any more than is essential to ascertain if it is privileged or protected and shall promptly notify the producing Party in writing that the receiving

EXHIBIT 6
Page 74

Party possesses material that appears to be subject to a Privilege or Protection. The producing Party shall have seven (7) days after receiving such notice to assert a Privilege or Protection over the identified material. If the producing Party does not assert a claim of Privilege or Protection within the seven (7)-day period, the material in question shall be deemed not privileged or protected.

8.3    If a producing Party has produced a document subject to a claim of Privilege or Protection, upon written request by the producing Party, the document for which a claim of Privilege or Protection is made shall be sequestered or destroyed to the extent reasonably practicable, and the receiving Party shall not use the document for any purpose other than in connection with analyzing or disputing a claim of Privilege or Protection or in connection with a motion to compel the production of the document.

8.4    The receiving Party sequestering or destroying such material may then move the Court for an order compelling production of the material. The applicable producing Party bears the burden of establishing the applicable Privilege or Protection of any clawed-back document or information as and to the same extent that it would have borne such burden had it not produced the document or information.  Nothing in this Protective Order shall limit the Court's right or any receiving Party's right to request an in camera review of any information subject to a claim of Privilege or Protection.

###

Date: June 3, 2024

Scott C. Clarkson
United States Bankruptcy Judge

EXHIBIT 6
Page 75

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT "A"

1

EXHIBIT 6
Page 76

1  Christopher B. Ghio (State Bar No. 259094)
   Christopher Celentino (State Bar No. 131688)
2  Yosina M. Lissebeck (State Bar No. 201654)
   **DINSMORE & SHOHL LLP**
3  655 West Broadway, Suite 800
   San Diego, CA 92101
4  Telephone:  619.400.0500
   Facsimile:  619.400.0501
5  christopher.ghio@dinsmore.com
   christopher.celentino@dinsmore.com
6  yosina.lissebeck@dinsmore.com

7  Sarah S. Mattingly (Ky. Bar 94257)
   DINSMORE & SHOHL, LLP
8  101 S. Fifth Street, Suite 2500
   Louisville, KY 40202
9  Telephone: 859-425-1096
   Facsimile: 502-585-2207
10 Sarah.mattingly@dinsmore.com
   (Admitted pro hac vice)

11
   Special Counsel to Richard A. Marshack,
12 Chapter 11 Trustee

13

14                 **UNITED STATES BANKRUPTCY COURT**

15                 **CENTRAL DISTRICT OF CALIFORNIA**

16

17 In Re                                  Case No. 8:23-BK-10571-SC
18
                                          Chapter 11
19
   The Litigation Practice Group P.C.,    **EXHIBIT A TO STIPULATED**
20                                         **ORDER**
               Debtor(s),
21                                         Date:   May 23, 2024
22                                         Time:   1:30 p.m.
                                           Judge:  Hon. Scott C. Clarkson
23                                         Place:  Courtroom 5C[1] - Via Zoom
24                                                 411 W. Fourth Street
                                                   Santa Ana, CA  92701
25

26

27  _____

28  [1] Video and audio connection information for each hearing will be provided on Judge Clarkson's
    publicly posted hearing calendar, which may be viewed online at:
    http://ecf-ciao.cacb.uscourts.gov/CiaoPosted/?jid=SC.

                                1

EXHIBIT 6
Page 77

1    This is to certify that:

2       (a)    I am being given access to Confidential Information pursuant to the

3    Stipulated Protective Order that was entered into the main bankruptcy case for

4    Litigation Practice Group, but which is binding and controlling as set forth by the

5    Court's Order on any and all contested matters and  any and all litigation commenced

6    by Trustee;

7       (b)    I have read the Stipulated Protective Order; and

8       (c)    I agree to be bound by the terms and conditions thereof, including,

9    without limitation, to the obligations regarding the use, non-disclosure and return of

10   such Confidential Information. I further agree that in addition to being contractually

11   bound by the Stipulated Protective Order, I am subject to the jurisdiction of the above

12   reference Court for any violation thereof.

13

14   Date: _____

15

16                                    _____
                                            Signature

17

18                                    _____
19                                          Printed Name

20

21

22

23

24

25

26

27

28

EXHIBIT 6
Page 78

# ADVERSARY PROCEEDING COVER SHEET

B1040 (FORM 1040) (12/24)

## ADVERSARY PROCEEDING COVER SHEET
(Instructions on Reverse)

**ADVERSARY PROCEEDING NUMBER**
(Court Use Only)

| PLAINTIFFS | DEFENDANTS |
|---|---|
| Richard A. Marshack, Trustee of the LPG Liquidation Trust | All Service Financial, L.L.C., a Florida limited liability company; Bonnie Silver, individually; Joshua Stomel, individually; and Vivian Stomel, individually |

**ATTORNEYS** (Firm Name, Address, and Telephone No.)

Christopher Celentino (SBN 131688)
Yosina M. Lissebeck (SBN 201654)
Christopher B. Ghio (SBN 259094)
Jamie D. Mottola (SBN 309934)
DINSMORE & SHOHL LLP
655 West Broadway, Ste 800
San Diego, CA 92101    Telephone (619) 400-0500
christopher.celentino@dinsmore.com
yosina.lissebeck@dinsmore.com
christopher.ghio@dinsmore.com
jamie.mottola@dinsmore.com

**ATTORNEYS** (If Known)

**PARTY** (Check One Box Only)
☐ Debtor        ☐ U.S. Trustee/Bankruptcy Admin
☐ Creditor      ☐ Other
☐ Trustee

**PARTY** (Check One Box Only)
☐ Debtor        ☐ U.S. Trustee/Bankruptcy Admin
☐ Creditor      ☐ Other
☒ Trustee

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
(1) Avoidance, Recovery, and Preservation of 2-Year Actual Fraudulent Transfers; (2) Avoidance, Recovery, and Preservation of 2-Year Constructive Fraudulent Transfers; (3) Avoidance, Recovery, and Preservation of 4-Year Actual Fraudulent Transfers; (4) Avoidance, Recovery, and Preservation of 4-Year Constructive Fraudulent Transfers; (5)  Turnover; (6) Disallowance of Claims; and (7) Aiding and Abetting Fraud

### NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(a) – Recovery of Money/Property**
☒ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☒ 13-Recovery of money/property - §548 fraudulent transfer
☒ 14-Recovery of money/property - other

**FRBP 7001(b) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(c) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(d) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(e) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(f) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(f) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(g) – Injunctive Relief**
☐ 71-Injunctive relief- imposition of stay
☐ 72-Injunctive relief - other

**FRBP 7001(h) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(i) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(j) Determination of Removed Action**
☐ 01-Determination of remove d claim or cause

**Other**
☒ SS-SIPA Case - 15 U.S.C. §§78aaa *et.seq.*
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23
☐ Check if a jury trial is demanded in complaint | Demand $ greater than $866,463

Other Relief Sought
Disallowing Defendant All Service Financial L.L.C.'s Proof of Claim

B1040 (FORM 1040) (12/24)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>The Litigation Practice Group P.C. | BANKRUPTCY CASE NO.<br>8:23-bk-10571-SC | |
| DISTRICT IN WHICH CASE IS PENDING<br>Central District of California | DIVISION OFFICE<br>Santa Ana | NAME OF JUDGE<br>Scott C. Clarkson |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br><br>/s/ Jamie D. Mottola | | |
| DATE<br>March 12, 2025 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Yosina M. Lissebeck<br>Jamie D. Mottola | |

## INSTRUCTIONS

      The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

      A party filing an adversary proceeding must also complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

      The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.