CHRISTOPHER CELENTINO (131688)
Christopher.Celentino@dinsmore.com
YOSINA M. LISSEBECK (201654)
Yosina.Lissebeck@dinsmore.com
CHRISTOPHER B. GHIO (259094)
Christopher.Ghio@dinsmore.com
VANESSA E. RODRIGUEZ (349425)
Vanessa.Rodriguez@dinsmore.com
**DINSMORE & SHOHL LLP**
655 West Broadway, Ste 800
San Diego, California 92101
Tele: (619) 400-0500
Fax:  (619) 400-0501

*Attorneys for Richard A. Marshack,*
*Trustee of the LPG Liquidation Trust*

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>The Litigation Practice Group P.C.,<br><br>        Debtor(s). | CHAPTER 11<br><br>Case No.:  8:23-bk-10571-SC<br>Adv No.:  8:25-ap-_____-SC<br><br><br>**TRUSTEE'S COMPLAINT FOR:**<br>**(1) AIDING AND ABETTING** |
| Richard A. Marshack, Trustee of the LPG Liquidation Trust,<br><br>        Plaintiff(s),<br><br>  v.<br><br>Matthew Clegg, an individual; Richard Senitte, an individual; and David Nearing, an individual,<br><br>        Defendant(s). | |

   For his *Trustee's Complaint for: (1) Aiding and Abetting* ("Complaint"), plaintiff Richard A. Marshack, the Trustee of the LPG Liquidation Trust ("Trustee" or "Plaintiff") for the bankruptcy estate ("Estate") of debtor The Litigation Practice Group P.C. ("Debtor" or "LPG") in the above-captioned bankruptcy case ("Bankruptcy Case"), alleges and avers as follows:

1

## STATEMENT OF JURISDICTION, NATURE OF PROCEEDING, AND VENUE

1.    This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 157(b)(2)(A), (E), (H) and (O), 1334(b), and General Order No. 13-05 of the District Court for the Central District of California because this is a core proceeding arising in and/or related to the Bankruptcy Case, which is a case under Chapter 11 of Title 11 of the United States Code ("Bankruptcy Code"), and which is pending in the United States Bankruptcy Court for the Central District of California, Santa Ana Division ("Bankruptcy Court"). Regardless of whether this proceeding is core, non-core, or otherwise, Plaintiff consents to the entry of a final order and judgment by the Bankruptcy Court.

2.    Defendant Matthew Clegg ("Defendant Clegg"), defendant Richard Senitte ("Defendant Senitte"), and defendant David Nearing ("Defendant Nearing" together with Defendant Clegg and Defendant Senitte, the "Defendants") are notified that Rule 7008 of the Federal Rules of Bankruptcy Procedure requires Defendants to plead whether consent is given to the entry of a final order and judgment by the Bankruptcy Court.

3.    Venue of this adversary proceeding properly lies in this judicial district pursuant to 28 U.S.C. § 1409(a) because this proceeding is related to Debtor's pending Bankruptcy Case.

## THE PARTIES

4.    Plaintiff, Richard A. Marshack, was the duly appointed, qualified, and acting Chapter 11 Trustee of Debtor's Estate and is now the current duly-appointed, qualified, and acting Trustee of the LPG Liquidation Trust.

5.    Debtor is, and at all material times was, a professional corporation organized, existing, and in good standing under the laws of the State of California, with its principal place of business in Tustin, California.

6.    MRD Marketing LLC ("MRD") an interested party herein, is, and at all material times represented that it was, a corporation existing under the laws of the State of California.

7.    Defendant Clegg is, and at all material times was, an individual residing in San Diego, California and may be served at 3965 Bandini St, San Diego, California 92103. Defendant Clegg, upon information and belief, is and at all material times was, the Managing Partner and a controlling principal of MRD.

**8.** Defendant Senitte is, and at all material times was, an individual residing in West Sacramento, California and may be served at 3060 Rubicon Way, West Sacramento, California 95691. Defendant Senitte, upon information and belief, is and at all material times was, a member and a controlling principal of MRD.

**9.** Defendant Nearing is, and at all material times was, an individual residing in Santee, California and may be served at 9209 Dalehurst Rd, Santee, California 92071. Defendant Nearing, upon information and belief, is and at all material times was, a member and a controlling principal of MRD.

**10.** Upon information and belief, each of the Defendants were the agent, servant, employee, partner, alter ego, or joint venture of the other Defendants and MRD, and in doing the things hereinafter alleged, each was acting within the scope of said agency, employment, partnership or venture, and with the knowledge, permission, consent and ratification of other Defendants and MRD in doing, or failing to do, the things alleged herein.

## **GENERAL ALLEGATIONS**

**A.    The Bankruptcy Case**

**11.** On March 20, 2023 ("Petition Date"), Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, commencing the Bankruptcy Case.

**12.** The Office of the United States Trustee ("UST") filed its *Motion by United States Trustee to Dismiss or Convert Case Pursuant to 11 U.S.C. § 1112(b)* [Bankr. Docket No. 21] and creditors Debt Validation Fund II, LLC; MC DVI Fund 1, LLC; and MC DVI Fund 2, LLC filed the *Motion by DVF and MC DVI to Dismiss Chapter 11 Case Pursuant to 11 U.S.C. §§ 105, 305, 349, & 1112, or in the Alternative Convert This Case to Chapter 7 or Appoint a Trustee* [Bankr. Docket No. 44]. On May 4, 2023, the Court entered its *Order Directing United States Trustee to Appoint Chapter 11 Trustee* [Bankr. Docket No. 58], thereby granting the UST's motion and directing the UST to appoint a Chapter 11 Trustee in the Bankruptcy case.

**13.** Pursuant to the *Acceptance of Appointment as Chapter 11 Trustee* [Bankr. Docket No. 63], on May 8, 2023, Trustee accepted his appointment as the Chapter 11 Trustee in the

3

Bankruptcy Case. The Court approved the Trustee's appointment in its *Order Approving the U.S. Trustee's Application for the Appointment of a Chapter 11 Trustee* [Docket No. 65].

14.    Pursuant to the Order Confirming Modified First Amended Joint Chapter 11 Plan of Liquidation entered September 9, 2024, and the Notice of Occurrence of Effective Date of Modified First Amended Joint Chapter 11 Plan of Liquidation filed September 24, 2024, Richard A. Marshack became the Liquidating Trustee of the LPG Liquidation Trust, effective September 24, 2024. [Bankr. Docket Nos. 1646 & 1762].

15.    Trustee was not appointed until after events of the case and, therefore, bases these allegations on information and belief. *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017) ("The *Twombly* plausibility standard . . . does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible."); *Miller v. City of Los Angeles*, 2014 U.S. Dist. LEXIS 198871, 2014 WL 12610195, at *5 (C.D. Cal. Aug. 7, 2014) (recognizing that the plaintiff's "information and belief" pleading was allowed and "necessary at times"); *see also Mireskandari v. Daily Mail and General Trust PLC*, 2013 U.S. Dist. LEXIS 194437, 2013 WL 12129642, at *4 (C.D. Cal. July 31, 2013) ("The Federal Rules of Civil Procedure allow parties to plead facts on 'information and belief' if the facts 'will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.'" (citations omitted)).

16.    All claims have been transferred to the Liquidating Trust pursuant to the confirmed Plan and Plaintiff brings this action solely in his capacity as Trustee of the LPG Liquidation Trust for the benefit of Debtor's Estate and its creditors.

**B.    Protective Order**

17.    On or about May 2, 2024, Plaintiff filed that certain Notice and Motion for Entry of Protective Order (the "Protective Order Motion"). On June 3, 2024, the Court entered its Order Granting Motion for Entry of Protective Order and the Protective Order [Docket No. 1270] (the "Protective Order"). A true and accurate copy of the Protective Order is attached as **<u>Exhibit 1</u>**, and incorporated here.

**18.**     By its own terms, the Protective Order applies to this adversary proceeding and governs all discovery conducted herein.

**C.     LPG and Tony Diab**

**19.**     LPG operated a law firm for consumers across the country who sought assistance in contesting or resolving debts they would identify.

**20.**     The consumers would pay LPG over a period of time via monthly debits and/or ACH debits from their bank accounts.

**21.**     The monthly payments were meant to cover all legal services LPG provided to the consumers including validation of the debts, review of documents to determine enforceability, and court appearances to halt lawsuits to obtain judgments.

**22.**     In certain instances, LPG would file a lawsuit in an effort to eliminate a disputed debt or to prosecute affirmative claims held by the consumers.

**23.**     LPG mismanaged the consumers' monthly payments.

**24.**     Tony Diab is, and at all relevant times was, an individual who operated, dominated and controlled LPG ("Diab"). Diab and others devised a plan to fraudulently transfer funds, client files, client funds and assets in the form of ACH Receivables (the "ACH Receivables" or "Accounts Receivable") out of LPG to third parties prior to the filing of bankruptcy.

**25.**     To obtain consumer clients, LPG contracted with marketing companies, who engaged in illegal capping and would advertise or call to solicit consumers to become clients of LPG in exchange for a percentage of the ACH Receivables collected by LPG from the consumers.

**26.**     The marketing affiliate went so far as to assist with the execution of an engagement letter between the consumer and LPG.

**27.**     In exchange, LPG agreed to pay the marketing affiliates a percentage of the monthly payments collected by LPG from the consumers.

**28.**     Because LPG received payments from consumers over time, it often sought financing by borrowing against its future cash flows. This borrowing was not only used to finance operations at LPG, but also to pay the fees owed to the marketing companies for providing the client referrals.

29.     Many of the documents executed in connection with such financing described the transactions as accounts receivable purchase agreements.

30.     Diab used entities he controlled, and were his alter egos, including, without limitation, Vulcan Consulting Group, BAT dba Coast Processing, Prime Logix, LLC, Maverick Management LLC, PurchaseCo80, LLC ("PurchaseCo80"), Marich Bein, LLC ("Marich Bein") and/or Validation Partners, LLC ("Validation Partners")[1] to divert LPG consumer funds and ACH Receivables. Diab would use numerous ACH processing companies in order to easily transfer millions of dollars from Debtor to these entities he controlled, without oversight or detection, and to avoid payment disputes and complications. The money that flowed from Debtor through these bank accounts to defendants consisted of Client Funds that Debtor funneled to these entities by means of the ACH processing companies.[2] Debtor also made deposits into these entities bank account such that they received Client Funds directly from Debtor in addition to future Accounts Receivable.

31.     The money that flowed from Debtor's bank account to MRD consisted of Client Funds.

32.     LPG's monthly revenue from client files was primarily received via ACH payments. In order to process ACH payments, LPG was required to enlist the services of ACH payment processing companies who handle high risk transactions. In this regard, Diab enlisted numerous ACH processing companies[3] in order to easily switch between different vendors and quickly transfer millions of dollars of LPG funds to entities he controlled, generally in less than three days from receipt of funds by the processing company. One reason for the plethora of processing company vendors was to avoid payment disputes and complications with the vendor itself. Switching between ACH processing companies further facilitated unauthorized double pulls, and made it more difficult

---

[1]     The entities referenced in this paragraph are also incorporated by reference into "LPG" or "Debtor."

[2]     The ACH processing companies LPG used and which Diab controlled includes, but is not limited to, EPPS; EquiPay; Merit Fund; Authorize.net; World Global; Optimum Bank; BankUnited; Marich Bein; Revolv3; Maverick Bankcard; FIS; and/or Guardian.

[3]     The ACH processing companies LPG also used and which Diab controlled includes, but is not limited to, EPPS; EquiPay; Merit Fund; Authorize.net; World Global; Optimum Bank; BankUnited; Marich Bein; Revolv3; Maverick Bankcard; FIS; and/or Guardian.

for LPG clients to dispute, prevent or stop unauthorized ACH transactions, even where the Client disputed the transactions, had cancelled their services, and/or requested a refund.

**D.    MRD Marketing LLC, Defendant Matthew Clegg, Defendant Richard Senitte, and Defendant David Nearing**

33.    Upon information and belief, Defendant Clegg, Defendant Senitte, and Defendant Nearing, are and at all material times were, the controlling principals of MRD.

34.    MRD was one of the marketing companies that procured clients for LPG.

35.    LPG agreed to pay, and in fact paid, MRD a portion of the monthly payments received from consumers referred by MRD.

36.    MRD also entered into agreements pursuant to which it purported to sell accounts receivable back to LPG.

37.    Defendant Clegg, Defendant Senitte, and Defendant Nearing, were, at all times mentioned herein, in an executive positions, such as members of MRD, with MRD.

38.    As an executive of MRD, Defendant Clegg, Defendant Senitte, and Defendant Nearing had control of and authorized MRD's financial operations.

39.    Defendant Clegg executed agreements, such as the Affiliate Agreement and/or the ARPA Agreements, with Validation Partners, Marich Bein, and PurchaseCo80, acting as the alter ego of Diab, the Debtor, or one of its ACH processing companies, on behalf of MRD.

40.    As an executive of MRD, Defendant Clegg, Defendant Senitte, and Defendant Nearing had knowledge of the business dealings with Debtor, including but not limited to the payment structure between consumers of Debtor and Debtor's ACH processing companies, and MRD.

41.    Defendant Clegg, Defendant Senitte, and Defendant Nearing, through authorizing actions of MRD, facilitated Debtor's criminal enterprise by advertising and marketing Debtor's services to potential consumers and thereafter enrolling consumers to pay for Debtor's services. Defendant Clegg, Defendant Senitte, and Defendant Nearing used the business operations between MRD and Debtor for their personal gain.

### i.    Related Adversary Proceeding Against MRD; 8:24-ap-01018-SC

**42.**    On or about February 6, 2024, Trustee filed the Complaint against MRD for: (1) Avoidance, Recovery, and Preservation of 2-Year Actual Fraudulent Transfers; (2) Avoidance, Recovery, and Preservation of 2-Year Constructive Fraudulent Transfers; (3) Avoidance, Recovery, and Preservation of 4-Year Actual Fraudulent Transfers; (4) Avoidance, Recovery, and Preservation of 4-Year Constructive Fraudulent Transfers; (5) Avoidance, Recovery, and Preservation of Preferential Transfers made within Ninety Day of the Petition Date; and (6) Turnover ("MRD Complaint"). [Related A.P. Docket No. 1].

**43.**    On or about April 1, 2024, Trustee filed the First Amended Complaint against MRD for: (1) Avoidance, Recovery, and Preservation of 2-Year Actual Fraudulent Transfers; (2) Avoidance, Recovery, and Preservation of 2-Year Constructive Fraudulent Transfers; (3) Avoidance, Recovery, and Preservation of 4-Year Actual Fraudulent Transfers; (4) Avoidance, Recovery, and Preservation of 4-Year Constructive Fraudulent Transfers; (5) Avoidance, Recovery, and Preservation of Preferential Transfers made within Ninety Day of the Petition Date; and (6) Turnover ("MRD FAC"). [Related A.P. Docket No. 7].

**44.**    On or about April 2, 2024, Another Summons and Notice of  Status Conference in Adversary Proceeding [LBR 7004-1] was issued by the Court that included a deadline for MRD to file a response to the MRD FAC on May 2, 2024. [Related A.P. Docket No. 9-1].

**45.**    All facts and allegations contained in the MRD FAC, Related A.P. Docket No. 7, are herein incorporated by reference.

**46.**    On or about April 30, 2024, the Trustee provided MRD with a two-week extension to file a response to the MRD FAC with a deadline of May 16, 2024.

**47.**    On or about May 16, 2024, MRD did not file a response to the MRD FAC.

**48.**    On or about June 18, 2024, the Trustee filed a Request for Clerk to Enter Default Under LBR 7055-1(a). On this same day, the clerk entered default against MRD. [Related A.P. Docket Nos. 16 and 17].

**49.**    On or about August 2, 2024, the Trustee filed the Plaintiff's Motion for Default Judgment Under LBR 7055-1. [Related A.P. Docket No. 20].

**50.** On or about September 18, 2024, Default Judgment (Without Prior Judgment) ("Default Judgment") was entered against MRD. The Trustee was awarded damages in the amount of $1,662,611, plus interest at the rate set forth in 28 U.S.C 1961 per year from the date of entry of the judgment. The Default Judgment also stated that the judgment, either in the form of the property transferred or the value of the property, is recoverable by the Trustee for the benefit of the Estate. [Related A.P. Docket No. 27].

**51.** On or about October 29, 2024, an Amended Default Judgment (Without Prior Judgment) ("Amended Default Judgment") was entered. The Amended Default Judgment was filed to recover the costs of filing the MRD FAC for the Estate. The Trustee was awarded damages in the amount of $1,662,611, $350 for costs, plus interest at the rate set forth in 28 U.S.C 1961 per year from the date of entry of the judgment. The Default Judgment also stated that the judgment, either in the form of the property transferred or the value of the property, is recoverable by the Trustee for the benefit of the Estate. [Related A.P. Docket No. 34].

**52.** Therefore, based on the Amended Default Judgment entered in the Trustee's favor, the Trustee's claims against MRD in the MRD FAC were adjudicated on its merits and do not warrant further litigation in this matter. The only claim presented in this Complaint, which was not included in the MRD FAC, is aiding and abetting the fraudulent transfers by the Defendants.

**E.    Payments to MRD Marketing LLC**

**53.** During the applicable reach-back period, Debtor paid MRD the sum of at least $1,676,352 between January 2022 and February 2023, subject to proof at trial ("Transfers"). A true and accurate list of the known payments made by Debtor to MRD is attached as **Exhibit 2**, and incorporated here.

**54.** Not less than $245,462 of the Transfers from Debtor to MRD occurred during the 90-day preference period ("Preference Transfers"). A true and accurate list of the payments made during the Preference Transfers is attached as **Exhibit 3**, and incorporated here.

**55.** The Preference Transfers are based on updated figures as of February of 2025.

**F.    LPG's Ponzi Scheme**

**56.** The Ponzi Scheme Presumption exists in this Bankruptcy.

57.    The Ponzi Scheme Presumption can be utilized to establish a debtor's "intent to defraud future undertakers [investors] from the mere fact that a debtor was running a Ponzi scheme. Indeed, no other reasonable inference is possible. A Ponzi scheme cannot work forever. The investor pool is a limited resource and will eventually run dry. The perpetrator must know that the scheme will eventually collapse as a result of the inability to attract new investors. The perpetrator nevertheless makes payments to present investors, which, by definition, are meant to attract new investors. He must know all along, from the very nature of his activities, that investors at the end of the line will lose their money. Knowledge to a substantial certainty constitutes intent in the eyes of the law, *cf. Restatement (Second) of Torts § 8A (1963 & 1964)*, and a debtor's knowledge that future investors will not be paid is sufficient to establish his actual intent to defraud them. *Kirkland v. Rund (In re EPD Inv. Co., LLC)*, 114 F.4th 1148, 1153 (9th Cir. 2024) (by definition a Ponzi scheme is destined to fail and the swindler and their entities often end in bankruptcy or equitable receivership); *Cf. Coleman Am. Moving Servs., Inc. v. First Nat'l Bank & Trust Co. (In re American Properties, Inc.)* (Bankr.D.Kan. 1981)14 B.R. 637, 643 (intentionally carrying out a transaction with full knowledge that its effect will be detrimental to creditors is sufficient for actual intent to hinder, delay or defraud within the meaning of § 548(a)(1))." *Merrill v. Abbott (In re Independent Clearing House Co.)*, 77 B.R. 843, 860 (D. Utah 1987). A trustee in bankruptcy is not required to show that an operator of a Ponzi scheme was subjectively aware his Ponzi scheme was destined to fail. *In re EPD Inv. Co., LLC*, 114 F.4th at 1153 (9th Cir. 2024) ("[a] trustee's action to recover assets fraudulently conveyed in the course of a Ponzi scheme does not require that the trustee also prove the Ponzi-scheme operator was subjectively aware his Ponzi scheme was destined to fail.")

58.    "But if all the debtor receives in return for a transfer is the use of the defendant's money to run a Ponzi scheme, there is nothing in the bankruptcy estate for creditors to share. In fact, by helping the debtor perpetuate his scheme, the transfers exacerbate the harm to creditors by increasing the amount of claims while diminishing the debtor's estate. In such a situation, the use of the defendant's money cannot objectively be called "reasonably equivalent value." *In re Independent Clearing House Co.,* 77 B.R. at 859. Therefore, "[t]he trustee can avoid the transfers if they were preferential or fraudulent. Transfers to investors in a Ponzi scheme are preferential and

fraudulent. Therefore, they constitute 'property of the estate,' and the trustee can recover them." *Id.* at 853 n.17 (citations omitted).

59. Debtor was operating a Ponzi scheme that utilized the Defendants and several other entities as investors to continue its unlawful business practices by using funds provided by current investors to attract new investors hoping for very high returns. Therefore, the Debtor was running a Ponzi scheme, and the Ponzi Scheme Presumption can be utilized to infer that the Debtor had the intent to defraud investors within the meaning of 11 U.S.C. section 548(a)(1). This is evidenced by the Court in this Bankruptcy Case declaring that Debtor was operating a Ponzi scheme when it stated the following:

> It is important to note that this Court has never received any significant and trustworthy evidence that Debtor accomplished meaningful results for its clients, but only anecdotal examples of viable success for its clients. By reviewing the Estate's claims register, there is evidence of consumer claims for the fraud and demanded but undelivered refunds of approximately $500 million. There is ample evidence that the pre-petition Debtor never placed the collected funds into an attorney-client trust account, and that Debtor or its principals simply looted the payments received through the client automatic withdrawals, stiffing both the clients and outside attorneys who may have been working on client cases with the hopes of being paid. There is also evidence before the Court that Debtor was running a Ponzi scheme and paying some outside (or "network") attorneys with funds obtained from new clients. In this case, it appears that some of the "lenders" may have been serving as "investors," hoping for very high returns before "the music stopped." The Ninth Circuit has recently explained, "[b]y definition, a Ponzi scheme is destined to fail because the pool of available investors is not limitless. When the Ponzi scheme operator's pool of investors inevitably runs dry, the scheme collapses and the swindler and their entities often end up in bankruptcy or equitable receivership. *See generally* David R. Hague, Expanding the Ponzi Scheme Presumption, 64 DePaul L. Rev. 867 (2015). In bankruptcy, the court-appointed trustee is tasked with taking immediate control of the entity, ceasing ongoing fraudulent activity, locating and collecting assets for the bankruptcy or receivership estate, and achieving a final, equitable distribution of the remaining assets. *See* 11 U.S.C. § 704." *Kirkland v. Rund* (*In re EPD Inv. Co., LLC*), 2024 U.S. App. LEXIS 21363, at *15 (9th Cir. Aug. 23, 2024). Finally, there is evidence that Debtor was encumbering (or as some creditors assert, "double or triple selling") their accounts or receivables to multiple lenders. With respect to Greyson's requested Administrative Claim [Dk. 676], and as more fully described in the concurrently entered order denying the claim, there has been no evidence presented that any work allegedly performed by Greyson assisted any clients or added any value to the Estate.

1  *See*, Case No. 8:23-bk-10571-SC, [Bankr. Docket No. 1545 Fn. 5].

2  **60.**    Moreover, since the Transfers were made with the intent to further the Ponzi scheme,

3  the Debtor did not receive an objectively reasonable equivalent value for the Transfers, and the

4  Trustee can avoid the Transfers because they were preferential and fraudulent.

5  **G.    Criminal Enterprise**

6  **61.**    Debtor's operations, activities and transfers done in furtherance of the Ponzi scheme,

7  including those in conjunction with its affiliates and its dealings with Defendants, also constituted

8  a criminal enterprise.

9  **62.**    This, too, is evidenced by the Court's order in the 1046 Action wherein it denied the

10  Motion of Greyson Law Center to Vacate the Preliminary Injunction previously entered in Debtor's

11  main case, and the Court offered the opinion:

12  
13  > Through the various proceedings and evidence produced in both the main case and
> the various adversary proceedings, including but not limited to various Motions for
> Temporary Restraining Orders, Preliminary Injunctions, Motions to Dismiss, a
14  > Motion for Appointment of a Chapter 11 Trustee, a Motion to Sell Assets, a
> multitude of pleadings filed by both secured and unsecured creditors (supported by
15  > evidence presented under oath) in support of their claims, and especially the
> pleadings and evidence presented by the "Watchdog of the Bankruptcy System"
16  > aka the Office of the United States Trustee (an arm of the United States Department
17  > of Justice), *it is clear to this Court that Debtor, since its pre-petition inception (and
> through the time of the appointment of the Chapter 11 Trustee) was in the Court's
18  > opinion, operating a criminal enterprise.*

19  Case No. 8:23-bk-10571-SC; Adv. No. 8:23-ap-01046-SC [Bankr. Docket No. 1545, p.3

20  (emphasis in original)].

21  **63.**    As part of this criminal enterprise, Debtor and MRD, and thus Defendants, engaged

22  in fraudulent transfers of its accounts receivables pursuant to various agreements, including the

23  ARPAs.

24  **H.    LPG's Prepetition Creditors**

25  **64.**    Debtor was insolvent when each Transfer was made. This insolvency is evidenced in

26  part by the fact that 14 separate UCC-1 statements were of record securing debts of the Debtor as

27  of September 1, 2022. These statements remained unreleased as of the Petition Date. These

28  statements either reflected secured liens against the Debtor's assets then owned or thereafter

acquired, or provided evidence of the assignment or sale of substantial portions of the Debtor's future income.

65.    When the Transfers were made, these prior UCC-1 statements secured the repayment of the following claimed amounts that are currently known to Trustee and are allegedly owed by the Debtor: (i) $2,374,005 owed to Fundura Capital Group as evidenced by Proof of Claim No. 335 purportedly secured by a UCC statement filed on or about May 19, 2021; (ii) approximately $15 million dollars owed to MNS Funding, LLC as evidenced by Proof of Claim No. 1060 purportedly secured by a UCC statement filed on or about May 28, 2021; (iii) approximately $5,000,000 owed to Azzure Capital, LLC as evidenced by Proof of Claim No. 127 purportedly secured by a UCC statement filed on or about May 28, 2021; and (iv) approximately $1.5 million dollars owed to Diverse Capital, LLC purportedly secured by UCC statements filed on or about September 15, 2021, and December 1, 2021.[4]

66.    As alleged above, LPG was borrowing against its assets and future income, often on unfavorable terms, not only to finance operations at LPG, but also to pay the fees owed to the marketing affiliates for providing it with consumer clients. Pursuant to the agreements with the marketing companies, significant percentages of future payments were already promised to be paid to the marketing affiliates from whatever future income the Debtor would receive.

67.    In addition, on Debtor's Schedule E/F [Bankr. Docket No. 33], Debtor scheduled 11 unsecured creditors with priority unsecured claims totaling $374,061. These priority unsecured creditors include Indiana Dept. of Revenue, Dept. of Labor and Industries, Arizona Dept. of Economic Security, Arkansas Dept. of Finance & Admin., California Franchise Tax Board, Georgia Dept. of Labor, Internal Revenue Service, Mississippi Dept. of Revenue, Nevada Dept. of Taxation, Utah State Tax Commission, and Wisconsin Dept. of Revenue (collectively, "Priority Unsecured Creditors").

68.    Another group of creditors that Debtor listed on its Schedule E/F [Bankr. Docket No. 33] are nonpriority unsecured creditors. Those 58 creditors have scheduled claims totaling

---

[4] Trustee reserves all rights, claims, and defenses with respect to these and any other purported secured or unsecured claims.

$141,439,159 and include Ajilon; Anthem Blue Cross; Azevedo Solutions Groups, Inc.; Carolina Technologies & Consulting Invoice; Collaboration Advisors; Credit Reporting Service Inc.; CT Corporation – Inv.; Debt Pay Pro; Document Fulfillment Services; EnergyCare, LLC; Exela Enterprise Solutions; First Legal Network, LLC; GHA Technologies Inc.; Harrington Electric, Inc.; Imagine Reporting; Juize, Inc.; Krisp Technologies, Inc.; Liberty Mutual; Marc Lemauviel – Allegra; MarkSYS Holdings, LLC; Netsuite-Oracle; Pitney Bowes; Rapid Credit, Inc.; SBS Leasing A Program of De Lage Landen; Security Solutions; Sharp Business Systems; Streamline Performance, Inc.; Thomson Reuters; Twilio, Inc.; Nationwide Appearance Attorneys; Executive Center, LLC; Outsource Accelerator, Ltd.; TaskUs Holdings, Inc.; Marich Bein, LLC; Validation Partners; MC DVI Fund 1, LLC; MC DVI Fund 2, LLC; Debt Validation Fund II, LLC; Tustin Executive Center; LexisNexus; JP Morgan Chase; Business Centers of America; Michael Schwartz; Anibal Colon Jr.; Kathleen Lacey; David Ulery; Kimberly Birdsong; Kevin Carpenter; Karen Suell; Gloria Eaton; Carolyn Beech; Debra Price; Kenneth Topp; Darcey Williamson, Trustee; James Hammett; Johnny Rizo; Beverly Graham; Kathleen Scarlett; and Geneve and Myranda Sheffield (collectively, "Nonpriority Unsecured Creditors" and, together with the Secured Creditors and Priority Unsecured Creditors, "Prepetition Creditors").

69.    As of the filing of this complaint, approximately 5,771 claims have been filed with the bankruptcy Court. While Trustee has not reviewed all claims as of the date of this complaint, and reserves all rights to object to those claims, the total amount is in excess of approximately $717,507,463.

70.    Debtor's profit and loss statements reflect at least $115,000,000 of "Total Income" for the three-year period ending December 31, 2021, and based on information and belief that a substantial portion of this income had not actually been earned by Debtor. Proper accounting treatment of this unearned "income" would have been to record the unearned portion as cash received in client trust or IOLTA bank account with an offsetting client retainer liability account in the same amount. Thus, the unearned portion of the income would be present only on the balance sheet and not on Debtor's profit and loss statement. Debtor's balance sheets reflect two trust accounts, the highest balance of which was approximately $346,000 in November 2021. The balance

sheets do not reflect a client retainer liability account. Thus, it appears that Debtor overstated its income during the three years ending December 31, 2021, though the extent to which it is overstated remains unknown. Further, assuming (as it appears to be the case) Debtor did not properly record its unearned income on its balance sheets using a trust account and offsetting client retainer liability account then Debtor's assets and liabilities on those balance sheets would be inaccurate.

71.     Based on information and belief Debtor's incoming cash was related to unearned income and should have been held in an appropriate trust account and recorded on its balance sheet with an offsetting client retainer payable account until it was earned. This treatment is further reinforced as appropriate by the fact that Debtor offered its clients a refund for unearned income. Thus, Debtor's incoming cash neither increased its assets (due to the offsetting client retainer liability in the same amount) nor would it increase its profitability until services were rendered and the income was actually earned.

### FIRST CLAIM FOR RELIEF

**Count I - Aiding and Abetting Fraudulent Transfers**

**(Against Defendants)**

**[11 U.S.C. §§ 544(b), 550, and 551; Cal. Civ. Code §§ 3439.04(a), 3439.04(b), and 3439.07]**

72.     Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 71 as though set forth in full.

73.     Defendants have possession or control over property of the Estate including, but not limited to the Transfers and Preference Transfers made to MRD pursuant to illegal and unenforceable agreements.

74.     Defendants had knowledge of the fraudulent transactions, transfers, and agreements that were used to perpetuate and conceal the Ponzi scheme and fraudulent transfers.

75.     Defendants, with the foregoing knowledge, intended to, and did, help the Debtor, MRD and other scheme participants in perpetuating and concealing the Ponzi scheme and fraudulent transfers of money.

///

///

**76.**    At all material times, Defendants had the intent to facilitate and conceal the Ponzi scheme and fraudulent transfers of money by aiding and abetting MRD in the illegal capping scheme and signing up consumer clients to keep the business going.

**77.**    Defendants assisted, and did actually engage in, LPG's commission of fraud and Ponzi scheme by coordinating, facilitating, and directing payments and transfers of monies with MRD and executing documents in furtherance of concealing the true nature of their fraudulent and criminal activity related to the Ponzi scheme.

**78.**    Without in any way limiting the foregoing, as members of MRD, Defendant Clegg, Defendant Senitte, and Defendant Nearing used their control over MRD to support, participate in, and benefit from LPG's Ponzi scheme and fraudulent transfers.

**79.**    The injuries to Plaintiff, the Debtor's Estate and to its creditors directly, proximately and reasonably foreseeably resulting from and caused by these fraudulent transfers and Ponzi scheme include, without limitation, hundreds of thousands of dollars in improperly transferred and acquired monies.

**80.**    The property, including but not limited to the Transfers are not of inconsequential value to the Estate and recovering these funds is paramount to Debtor's ability to pay creditors.

**81.**    Plaintiff and the Debtor's Estate also suffered damages by incurring attorney's fees and costs associated with the prosecution of Defendants' unlawful activities.

## RESERVATION OF RIGHTS

Plaintiff reserves the right to bring all other claims or causes of action that Plaintiff may have against Defendants, on any and all grounds, as allowed under the law or in equity, including but not limited to, those claims not known by the Trustee at this time but that he may discover during the pendency of this adversary proceeding.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for a judgment as follows:

1.    Awarding Plaintiff compensatory damages in an amount to be determined at trial;

2.    Awarding costs of suit incurred here;

3.    Awarding punitive damages against Defendants;

4.      Awarding attorney's fees;

5.      Awarding pre-judgment and post-judgment interest; and

6.      Granting any other and further relief as the Court deems just and proper.


                                            Respectfully submitted,

Dated: March 17, 2025                      DINSMORE & SHOHL LLP

                                            By: */s/ Vanessa E. Rodriguez*
                                                 Yosina M. Lissebeck
                                                 Vanessa E. Rodriguez
                                            Attorneys for Richard A. Marshack,
                                            Trustee of the LPG Liquidation Trust

# EXHIBIT 1

EXHIBIT 1
Page 18

CHRISTOPHER B. GHIO (259094)
christopher.ghio@dinsmore.com
CHRISTOPHER CELENTINO (131688)
christopher.celentino@dinsmore.com
YOSINA M. LISSEBECK (201654)
yosina.lissebeck@dinsmore.com
DINSMORE & SHOHL LLP
655 West Broadway, Suite 800
San Diego, California 92101
Tele:  619.400.0500
Fax:  619.400.0501

Sarah S. Mattingly (Ky. Bar 94257)
sarah.mattingly@dinsmore.com
DINSMORE & SHOHL, LLP
101 S. Fifth Street, Suite 2500
Louisville, Kentucky 40202
Tele: 859-425-1096
Fax: 502-585-2207
(Admitted pro hac vice)

Special Counsel to Richard A. Marshack

FILED & ENTERED

JUN 03 2024

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY mccall     DEPUTY CLERK

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

| | |
|---|---|
| In Re | Case No: 23-bk-10571-SC |
| | Chapter 11 |
| The Litigation Practice Group P.C., | **ORDER GRANTING MOTION FOR ENTRY OF PROTECTIVE ORDER AND THE PROTECTIVE ORDER** |
| Debtor(s), | |
| | Date:    May 23, 2024 |
| | Time:    1:30 p.m. |
| | Judge:   Hon. Scott C. Clarkson |
| | Place:   Courtroom 5C (via Zoom)[1] |
| | 411 West Fourth Street |
| | Santa Ana, CA 92701 |

---

[1] Video and audio connection information for each hearing will be provided on Judge Clarkson's publicly posted hearing calendar, which may be viewed online at:
http://ecf-ciao.cacb.uscourts.gov/CiaoPosted/?jid=SC.

EXHIBIT 1
Page 19

The Court has read and considered the Notice of Motion and Motion for Entry of Protective Order (the "Motion") filed by Richard A. Marshack, in his capacity as the Chapter 11 Trustee (the "Trustee") of the Bankruptcy Estate ("Estate") of The Litigation Practice Group P.C., on May 2, 2024, pursuant to Federal Rule of Bankruptcy Procedure 7026 and Federal Rule of Civil Procedure 26(c)(1), as Dk. No. 1164 ("Motion"), and has found good cause to grant the Motion.

IT IS HEREBY ORDERED that:

1.      The Motion is granted;

2.      The below Protective Order shall apply to any contested matter arising

in the main bankruptcy case and in all adversary proceedings filed by or against Trustee, present and future; and

3.      Govern the discovery conducted therein.

## PROTECTIVE ORDER

**1.      DEFINITIONS**

1.1      "Confidential Information" as used in this Protective Order shall mean documents and other information (regardless of how generated, stored or maintained) that a Party or non-party reasonably believes to contain or reflect non-public financial or business information, bank records, financial records, such as social security numbers, non-public financial or personal information of a Party or non-party, account numbers, sensitive digital information and identifiers, information subject to confidentiality agreements or provisions other than this Protective Order, and other non-public research, development, or commercial information that derives value or avoids injury by virtue of not being known to the public.

1.2      This "Action" is defined and hereby means any contested matter arising in the main bankruptcy case and in all adversary proceedings filed by or against Trustee, present and future.

1.3      "Designating Party" means a Party or non-party that designates Confidential Information during the Action.

1.4      "Receiving Party" means a Party that receives Confidential Information during the Action.

EXHIBIT 1
Page 20

1.5    "Party" or "Parties" means person or entity subject to this Protective Order.

**2.    SCOPE OF THIS PROTECTIVE ORDER**

2.1    Unless otherwise ordered, this Protective Order shall govern certain documents and other products of discovery obtained in the Action from the Parties there to, and from third parties. As well as certain information copied or derived therefrom, excerpts, summaries or compilations thereof, including, but not limited to, documents voluntarily exchanged as part of early settlement discussions, documents produced pursuant to initial disclosures, requests authorized by the Federal Rules of Civil Procedure made applicable herein by the Federal Rules of Bankruptcy Procedure, answers to interrogatories, deposition transcripts, responses to requests for production, responses to requests for admission, subpoenas, affidavits, declarations, expert reports, and other such material and information as may be produced during the course of the Action and designated as Confidential Information.

**3.    DESIGNATION OF CONFIDENTIAL INFORMATION**

3.1    This Protective Order shall govern the production and handling of any Confidential Information in this Action. Any Party or non-party who produces Confidential Information in this Action may designate it as "Confidential" or "Attorneys' Eyes Only" consistent with the terms of this Protective Order. Whenever possible, the Designating Party must designate only those portions of a document, written discovery responses, deposition, transcript, or other material that contain the Confidential Information and refrain from designating entire documents. Regardless of any designations made hereunder, the Designating Party is not otherwise restricted from use or disclosure of its Confidential Information outside of this Action or for any business purposes. In addition, any Party may move to modify or seek other relief from any of the terms of this Protective Order if it has first tried in writing and in good faith to resolve its needs or disputes with the other Parties or Party as the case may be under the terms of this Protective Order. Further, nothing in this Protective Order shall prevent a Party from redacting documents consistent with the Federal Rules of Civil Procedure and utilizing the documents as needed through-out the Action.

3.2    <u>Application to Non-Parties:</u> Before a non-party is given copies of documents or materials designated as Confidential Information or Attorneys' Eyes Only as permitted hereunder, it

EXHIBIT 1
Page 21

must first sign an acknowledgment to be bound to these terms that is attached hereto as <u>Exhibit</u> A; if it fails to do so, the Parties to this Action must resolve any such dispute before making disclosure of designated information as permitted hereunder to the non-party. If a non-party wishes to make designations hereunder, it must first sign attached <u>Exhibit A.</u>

3.3    <u>Timing and Provisional Protection:</u> Designations of Confidential Information may be made at any time. To avoid potential waiver of protection hereunder, the Designating Party should designate documents or materials containing Confidential Information at the time of production or disclosure, including on the record during the taking of any deposition. Deposition testimony will be deemed provisionally protected for a period of thirty (30) days after the transcript is released to the Parties by the court reporter, although the Parties may agree at any time to different timelines of provisional protection of information as Confidential or Attorneys' Eyes Only as part of one or more specific depositions. To retain any designations beyond the provisional period, a Designating Party must designate specific pages and lines of deposition testimony before the provisional period has expired. Such designations must be made in writing so that all counsel and court reporters may append the designation to all copies of the transcripts.

3.4    <u>Manner of Designation:</u> Confidential Information may be designated hereunder in any reasonable manner or method that notifies the Receiving Party of the designation level and identifies with specificity the information to which the designation applies. If made verbally, the Designating Party must promptly confirm the designation in writing. Whenever possible, the Designating Party should stamp, affix, or embed a legend of "CONFIDENTIAL" or "ATTORNEYS' EYES ONLY" on each designated page of the document or electronic image that contains Confidential Information.

**4.    CHALLENGES TO DESIGNATED INFORMATION**

4.1    In the event that a Receiving Party disagrees at any time with any designation(s) made by the Designating Party, the Receiving Party must first try to resolve such challenge in good faith on an informal basis with the Designating Party. The Receiving Party must provide written notice of the challenge and the grounds therefor to the Designating Party, who must respond in writing to the challenge within fifteen (15) days. At all times, the Designating Party carries the burden of establishing the propriety of the designation and protection level. Unless and until the challenge is

EXHIBIT 1
Page 22

resolved by the Parties or ruled upon by the Court, the designated information shall remain protected under this Protective Order. The failure of any Receiving Party to challenge a designation does not constitute a concession that the designation is proper or an admission that the designated information is otherwise competent, relevant, or material.

**5.      LIMITED ACCESS/USE OF PROTECTED INFORMATION**

5.1      <u>Restricted Use:</u> Information that is produced or exchanged in the course of the Action and designated under this Protective Order may be used for preparation for trial and preparation for any appeal of any and all matters in the Action, as well as related settlement negotiations, and for no other purpose, without the written consent of the Designating Party. No Confidential Information may be disclosed to any person except in accordance with the terms of this Protective Order, unless the parties are co-counsel or have entered into joint defense agreements. All persons in possession of Confidential Information agree to exercise reasonable care with regard to the custody, use, or storage of such information to ensure that its confidentiality is maintained. This obligation includes, but is not limited to, the Receiving Party providing to the Designating Party prompt notice of the receipt of any subpoena that seeks production or disclosure of any designated information and consulting with the Designating Party before responding to the subpoena. Any use or disclosure of Confidential or Attorneys' Eyes Only information in violation of the terms of this Protective Order may subject the disclosing person or party to sanctions.

5.2      <u>Access to "Confidential" Information:</u> The Party(ies) and all persons subject to this Protective Order agree that information designated as "CONFIDENTIAL" may only be accessed or reviewed by the following:

a)      The Court, its personnel, and court reporters;

b)      Counsel of record, or co-counsel for any Party, or other party that has entered into a joint defense agreement in the Action and their employees who assist counsel of record, or co-counsel in the Action and are informed of the duties and obligations imposed hereunder;

c)      The Parties, including their clients, agents and employees who are assisting or have reason to know of the Action;

/ / /

EXHIBIT 1
Page 23

d)       Experts or consultants employed by the Parties or their counsel, or co-counsel, for purposes of an Action, so long as each such expert or consultant has signed attached Exhibit A; and

e)       Other witnesses or persons with the Designating Party's consent or by court order.

5.3       Access to "Attorneys' Eyes Only" Designations: The Parties and all persons subject to this Protective Order agree that information designated as "ATTORNEYS' EYES ONLY" may only be accessed or reviewed by the following:

a)       The Court, its personnel, and court reporters;

b)       Counsel of record, or co-counsel for any Party, or other party that has entered into a joint defense agreement in the Action and their employees who assist counsel of record in the Action and are informed of the duties hereunder;

c)       In-house counsel for any Party in the Action and Richard A. Marshack, as Chapter 11 Trustee of The Litigation Practice Group P.C. who is informed of the duties and obligations imposed hereunder;

d)       Experts or consultants employed by the Parties or their counsel, or co-counsel for purposes of the Action,  and so long as each such expert or consultant has signed attached Exhibit A; and

e)       Other witnesses or persons to whom the Designating Party agrees in advance of disclosure or by court order.

5.4       Non-Waiver Effect of Designations: Neither the taking of, nor the failure to take, any action to enforce the provisions of this Protective Order, nor the failure to object to any designation, will constitute a waiver of any Party(ies)'s claim or defense in the Action or any other action or proceeding, including, but not limited to, a claim or defense that any designated information is or is not Confidential, is or is not entitled to particular protection, or embodies or does not embody information protectable by law.

5.5       In-Court Use of Designated Information: If information designated under this Protective Order will or may be offered in evidence at a hearing or trial related to any matter in the Action, then the offering party must give advance notice to the party or non-party that designated prior to offering the information so that any use or disclosure may be addressed in accordance with

6

EXHIBIT 1
Page 24

the Court's case-management or other pre-trial order, or by a motion *in limine.*  Nothing in this Protective Order shall be construed as a waiver by a Party of any objections that may be raised as to the admissibility at trial of any evidentiary materials.

## 6.    CLAW-BACK REQUESTS

6.1    <u>Failure to Make Designation:</u>  If, at any time, a Party or non-party discovers that it produced or disclosed Confidential Information without designation, it may promptly notify the Receiving Party and identify with particularity the Confidential Information to be designated and the level of designation (the claw-back notification). The Receiving Party may then request substitute production of the newly-designated information. Within thirty (30) days of receiving the claw-back notification, the Receiving Party must: (1) certify to the Designating Party it has appropriately marked or, if substitute production has been requested, destroyed all unmarked copies that it received, made, and/or distributed; and (2) if it was practicably unable to mark or destroy any information because disclosures occurred while the Receiving Party was under no duty of confidentiality under the terms of this Protective Order regarding that information, the Receiving Party must reasonably provide as much information as practicable to aid the Designating Party in protecting the information, consistently with the Receiving Party's attorney-client, work-product, and/or trial-preparation privileges.

6.2    <u>Inadvertent Production of Privileged Information:</u> If, at any time, a Party discovers that it produced information that it reasonably believes is subject to protection under the attorney/client, work-product, or trial-preparation privileges, then it must promptly notify each Receiving Party of the claim for protection, the basis for it, amend its privilege log accordingly, and comply with Fed. R. Civ. P. 26(b)(5). Whenever possible, the producing party must produce substitute information that redacts the information subject to the claimed protection. The Receiving Party must thereupon comply with Fed. R. Civ. P. 26(b)(5)(B) as to the information subject to the claimed protection.

/ / /

/ / /

/ / /

EXHIBIT 1
Page 25

## 7.    DURATION/CONTINUED RESTRICTIONS

7.1    <u>Handling of Designated Information Upon Conclusion of the Main Bankruptcy Case:</u> Upon conclusion of the Main Bankruptcy Case, by way of dismissal or closing of the case, the Designating Party(ies) is/are responsible for ensuring that any Party or person to whom the Designating Party shared or disclosed designated information in any of the matters under the Action returns or destroys all of its copies, regardless of the medium in which it was stored. No witness or Party may retain designated information that it received from any other Party or non-party under this Protective Order; only counsel of record, or co-counsel, are the authorized agents who may retain one copy for their respective legal files, and who must also describe to the Designating Party the extra steps taken to protect its legal file containing paper and/or electronic copies of the designated information so that it is not accessed, used, or disclosed inconsistently with the obligations under this Protective Order. This provision does not apply to the Court or Court staff. Moreover, this provision does not apply to Trustee, who may retain and use – consistent with this Order – Confidential Information received in any Action during the entirety of the Bankruptcy.

7.2    <u>Continued Restrictions Under this Protective Order:</u> The restrictions on disclosure and use of Confidential Information shall survive the conclusion of the Bankruptcy case and any matter in the Action.

## 8.    PRIVILEGED OR PROTECTED INFORMATION

8.1    Nothing in this Protective Order shall require disclosure of information that is protected by the attorney-client privilege, the work-product protection, or any other legally cognizable privilege (a "Privilege or Protection").  If information subject to a claim of Privilege or Protection is inadvertently produced, pursuant to Federal Rule of Evidence 502(d) such production shall not constitute a waiver of, or estoppel as to, any claim of Privilege or Protection for such information or any other information that may be protected from disclosure by a Privilege or Protection in any proceeding.

8.2    If a Party receives a document that appears to be subject to a Privilege or Protection, then it shall refrain from examining the document any more than is essential to ascertain if it is privileged or protected and shall promptly notify the producing Party in writing that the receiving

8

EXHIBIT 1
Page 26

Party possesses material that appears to be subject to a Privilege or Protection. The producing Party shall have seven (7) days after receiving such notice to assert a Privilege or Protection over the identified material. If the producing Party does not assert a claim of Privilege or Protection within the seven (7)-day period, the material in question shall be deemed not privileged or protected.

8.3    If a producing Party has produced a document subject to a claim of Privilege or Protection, upon written request by the producing Party, the document for which a claim of Privilege or Protection is made shall be sequestered or destroyed to the extent reasonably practicable, and the receiving Party shall not use the document for any purpose other than in connection with analyzing or disputing a claim of Privilege or Protection or in connection with a motion to compel the production of the document.

8.4    The receiving Party sequestering or destroying such material may then move the Court for an order compelling production of the material. The applicable producing Party bears the burden of establishing the applicable Privilege or Protection of any clawed-back document or information as and to the same extent that it would have borne such burden had it not produced the document or information.  Nothing in this Protective Order shall limit the Court's right or any receiving Party's right to request an in camera review of any information subject to a claim of Privilege or Protection.

### 

Date: June 3, 2024

Scott C. Clarkson
United States Bankruptcy Judge

EXHIBIT 1
Page 27

1
2
3
4
5

EXHIBIT "A"

6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1  Christopher B. Ghio (State Bar No. 259094)
   Christopher Celentino (State Bar No. 131688)
2  Yosina M. Lissebeck (State Bar No. 201654)
   **DINSMORE & SHOHL LLP**
3  655 West Broadway, Suite 800
   San Diego, CA 92101
4  Telephone:  619.400.0500
   Facsimile:  619.400.0501
5  christopher.ghio@dinsmore.com
   christopher.celentino@dinsmore.com
6  yosina.lissebeck@dinsmore.com

7  Sarah S. Mattingly (Ky. Bar 94257)
   DINSMORE & SHOHL, LLP
8  101 S. Fifth Street, Suite 2500
   Louisville, KY 40202
9  Telephone: 859-425-1096
   Facsimile: 502-585-2207
10 Sarah.mattingly@dinsmore.com
   (Admitted pro hac vice)
11
   Special Counsel to Richard A. Marshack,
12 Chapter 11 Trustee

13

14                    **UNITED STATES BANKRUPTCY COURT**

15                    **CENTRAL DISTRICT OF CALIFORNIA**

16

17 In Re                              Case No. 8:23-BK-10571-SC
18
                                      Chapter 11
19
   The Litigation Practice Group P.C.,  **EXHIBIT A TO STIPULATED**
20                                       **ORDER**
        Debtor(s),
21                                    Date:   May 23, 2024
22                                    Time:   1:30 p.m.
                                      Judge:  Hon. Scott C. Clarkson
23                                    Place:  Courtroom 5C[1] - Via Zoom
24                                            411 W. Fourth Street
                                              Santa Ana, CA  92701
25

26

27 _____

28 [1] Video and audio connection information for each hearing will be provided on Judge Clarkson's
   publicly posted hearing calendar, which may be viewed online at:
   http://ecf-ciao.cacb.uscourts.gov/CiaoPosted/?jid=SC.

                                  1
EXHIBIT 1
                                                    Page 29

This is to certify that:

(a)     I am being given access to Confidential Information pursuant to the Stipulated Protective Order that was entered into the main bankruptcy case for Litigation Practice Group, but which is binding and controlling as set forth by the Court's Order on any and all contested matters and  any and all litigation commenced by Trustee;

(b)     I have read the Stipulated Protective Order; and

(c)     I agree to be bound by the terms and conditions thereof, including, without limitation, to the obligations regarding the use, non-disclosure and return of such Confidential Information. I further agree that in addition to being contractually bound by the Stipulated Protective Order, I am subject to the jurisdiction of the above reference Court for any violation thereof.

Date: _____

_____
Signature

_____
Printed Name

EXHIBIT 1
Page 30

# EXHIBIT 2

In re: The Litigation Practice Group PC
Disbursement Details by Payee
4 Years Pre-Petition (03/20/2019 - 03/20/2023)

MRD Marketing LLC



| Bank Name | Account Name | Account Number | Statement Date | Transaction Date | Check Number | Debit/Charge | Memo |
|---|---|---|---|---|---|---|---|
| UnionBank | The Litigation Practice Group PC | | 1/31/2022 | 1/21/2022 | | 1,430.31 | WIRE TRANS TRN 0121016122 012122 UBOC UB210984N Sent To: WELLS FARGO BANK Beneficiary: 1/MRD Marketing LLC |
| UnionBank | The Litigation Practice Group PC | | 1/31/2022 | 1/28/2022 | | 2,803.53 | WIRE TRANS TRN 0128019431 012822 UBOC UB170028N Sent To: WELLS FARGO BANK Beneficiary: 1/MAD Marketing LLC |
| UnionBank | The Litigation Practice Group PC | | 2/28/2022 | 2/4/2022 | | 3,462.38 | WIRE TRANS TRN 0204022663 020422 UBOC UB131208N Sent To: WELLS FARGO BANK Beneficiary: 1/MAD Marketing LLC |
| UnionBank | The Litigation Practice Group PC | | 2/28/2022 | 2/11/2022 | | 5,849.91 | WIRE TRANS TRN 0211017120 021122 UBOC UB102909N Sent To: WELLS FARGO BANK Beneficiary: 1/MRD Marketing LLC |
| Chase | The Litigation Practice Group PC | | 2/28/2022 | 2/22/2022 | | 8,476.60 | Fedwire Debit Via: Wells Fargo NA/121000248 A/C: Mrd Marketing LLC 5an Diego, CA 92108 us Ref: Weekly Disbursement/Time/i 7:52 Imad: 0222B1 QgcOl COl 8475 Tm: 7923400053Jo |
| Chase | The Litigation Practice Group PC | | 2/28/2022 | 2/25/2022 | | 12,927.26 | Fedwire Debit Via: Wells Fargo NN121000248 NC: Mrd Marketing LLC San Diego, CA 92108 US Ref: Weekly Disbursement/Time/i 5:26 Imad: 0225B1 QgcO5COi 3798 Tm: 6365800056Jo |
| Chase | The Litigation Practice Group PC | | 3/31/2022 | 3/3/2022 | | 20,764.63 | Fedwire Debit Via: Wells Fargo NN121000248 NC: Mrd Marketing LLC San Diego, CA 92108 US Ref: Weekly Disbursement/Time/i 3:44 Imad: 0303B1Qgc08C009193 Tm: 5162300062Jo |
| Chase | The Litigation Practice Group PC | | 3/31/2022 | 3/10/2022 | | 21,941.75 | Fedwire Debit Via: Wells Fargo NN1 21000248 NC: Mrd Marketing LLC San Diego, CA 92108 us Ref: Weekly Disbursement/Time/i 6:56 Imad: 031 0B1 Qgc08COi 4637 Tm: 741 3700069Jo |
| Chase | The Litigation Practice Group PC | | 3/31/2022 | 3/17/2022 | | 10,060.56 | Fedwire Debit Via: Wells Fargo NA/i 21000248 A/C: Mrd Marketing LLC San Diego, CA 92108 U5 Ref: Weekly Disbursement/Time/16:21 Imad: 031 7B1 QgcO3COl 2240 Tm: 83261 00076Jo |
| Chase | The Litigation Practice Group PC | | 3/31/2022 | 3/24/2022 | | 15,917.83 | Fedwire Debit Via: Wells Fargo NN121000248 NC: Mrd Marketing LLC San Diego, CA 92108 us Ref: Weekly Disbursement/Time/i 5:08 Imad: 0324B1 Qgc07C009072 Tm: 5970400083Jo |
| Chase | The Litigation Practice Group PC | | 4/30/2022 | 4/1/2022 | | 8,803.39 | Fedwire Debit Via: Wells Fargo NN121000248 NC: Mrd Marketing LLC San Diego, CA 92108 us Ref: Weekly Disbursement/Time/i 3:49 Imad: 0401 B1QgcO5CO13471 Tm: 5022800091 Jo |
| Chase | The Litigation Practice Group PC | | 4/30/2022 | 4/7/2022 | | 6,665.95 | Fedwire Debit Via: Wells Fargo N21000248 NC: Mrd Marketing LLC San Diego, CA 92108 us Ret: Weekly Disbursement/Time/i 4:50 Imad: 0407B1 QgcO7COi 1460 Tm: 5690000097Jo |
| Chase | The Litigation Practice Group PC | | 4/30/2022 | 4/15/2022 | | 12,149.11 | Fedwire Debit Via: Wells Fargo NN1 21000248 A/C: Mrd Marketing LLC San Diego, CA 92108 US Ref: Weekly Disbursement/Time/i 2:37 Imad: 041 5B1 QgcO3COO7i 13 Tm: 3234800i05Jo |
| Chase | The Litigation Practice Group PC | | 4/30/2022 | 4/21/2022 | | 10,672.32 | Fedwire Debit Via: Wells Fargo NN121000248 NC: Mrd Marketing LLC San Diego, CA 92108 us Ref: Weekly Disbursement/Time/i 3:12 Imad: 0421 B1QgcO4CO08O5O Tm: 486620011 1J0 |
| Chase | The Litigation Practice Group PC | | 4/30/2022 | 4/28/2022 | | 17,017.39 | Fedwire Debit Via: Wells Fargo NN121000248 A/C: Mrd Marketing LLC San Diego, CA 92108 US Ref: Weekly Disbursement/Time/i 3:54 Imad: 0428B1Qgc08C026887 Tm: 5927400ii8Jo |
| Chase | The Litigation Practice Group PC | | 5/31/2022 | 5/5/2022 | | 17,060.21 | Fedwire Debit Via: Wells Fargo NN121000248 NC: Mrd Marketing LLC San Diego, CA 92108 US Ref: Weekly Disbursement/Time/i 7:05 Imad: 0505B1 Qgc03C0i1308 Tm: 7i32600125Jo |
| Chase | The Litigation Practice Group PC | | 5/31/2022 | 5/13/2022 | | 29,517.70 | Fedwire Debit Via: Wells Fargo N21000248 A/C: Mrd Marketing LLC San Diego, CA 92108 US Ref: Weekly Disbursement/Time/04:57 Imad: 051 3B1 Qgc02C000682 Tm: 80503001 32Jo |
| Chase | The Litigation Practice Group PC | | 5/31/2022 | 5/18/2022 | | 25,771.32 | Fedwire Debit Via: Wells Fargo NN121000248 NC: Mrd Marketing LLC San Diego, CA 92108 US Ref: Weekly Disbursement/Time/i 5:11 Imad: 051 8B1 QgcOl C005224 Tm: 5590900138Jo |
| Chase | The Litigation Practice Group PC | | 5/31/2022 | 5/27/2022 | | 31,884.03 | Fedwire Debit Via: Wells Fargo NN121000248 NC: Mrd Marketing LLC San Diego, CA 92108 us Ref: Weekly Disbursement/Time/i 6:49 Imad: 0527B1 QgcO3O9i 6 Tm: 71606001 47Jo |
| Chase | The Litigation Practice Group PC | | 6/30/2022 | 6/3/2022 | | 23,543.95 | Fedwire Debit Via: Wells Fargo NA/121000248 A/C: Mrd Marketing LLC San Diego, CA 92108 US Ref: Weekly Disbursement/Time/i 7:20 Imad: 0603B1 Qgc08C03002i Tm: 62039001 54Jo |
| Chase | The Litigation Practice Group PC | | 6/30/2022 | 6/10/2022 | | 34,276.94 | Fedwire Debit Via: Wells Fargo N12i000248 NC: Mrd Marketing LLC San Diego, CA 92i08 us Ref: Weekly Disbursement/Time/i 4:45 Imad: 0610B1Qgc03C005553 Tm: 5i4190016iJo |
| Chase | The Litigation Practice Group PC | | 6/30/2022 | 6/16/2022 | | 6,703.68 | Fedwire Debit Via: Wells Fargo NA/121000248 A/C: Mrd Marketing LLC San Diego, CA 92108 US Ref: Weekly Disbursement/Time/ii:59 Imad: 061 6B1 Qgc02C004576 Tm: 37476001 67Jo |
| Chase | The Litigation Practice Group PC | | 6/30/2022 | 6/23/2022 | | 14,067.70 | Fedwire Debit Via: Wells Fargo NA/i 21000248 A/C: Mrd Marketing LLC San Diego, CA 92108 us Ref: Weekly Disbursement/Time/15:31 Imad: 0623B1Qgc01C007882 Tm: 6509900i74Jo |
| Chase | The Litigation Practice Group PC | | 6/30/2022 | 6/30/2022 | | 16,506.83 | Fedwire Debit Via: Wells Fargo NN121000248 NC: Mrd Marketing LLC San Diego, CA 92108 us Ref: Weekly Disbursement/Time/i 3:37 Imad: 0630B1Qgc04C023116 Tm: 5590500i8iJo |
| Chase | The Litigation Practice Group PC | | 7/31/2022 | 7/8/2022 | | 12,562.29 | Fedwire Debit Via: Wells Fargo NN1 21000248 NC: Mrd Marketing LLC San Diego, CA 92108 us Ref: Weekly Disbursement/Time/i 2:47 Imad: O7O8B1QgcO7CO1 1544 Tm: 4046000i89Jo |
| Chase | The Litigation Practice Group PC | | 7/31/2022 | 7/14/2022 | | 17,371.66 | Fedwire Debit Via: Wells Fargo NN121000248 A/C: Mrd Marketing LLC San Diego, CA 92108 US Ref: Weekly Disbursement/Time/i 2:54 Imad: 0714B1Qgc03C009604 Tm: 5i06700i95Jo |
| Chase | The Litigation Practice Group PC | | 7/31/2022 | 7/21/2022 | | 18,168.74 | Fedwire Debit Via: Wells Fargo NA1121000248 A/C: Mrd Marketing LLC 5an Diego, CA 92108 us Ret: Weekly Disbursement/Time/i 3:55 Imad: 0721 Bi Qgc04C006663 Tm: 5238000022Jo |
| Chase | The Litigation Practice Group PC | | 7/31/2022 | 7/29/2022 | | 44,045.11 | Fedwire Debit Via: Wells Fargo N/i 21000248 A/C: Mrd Marketing LLC San Diego, CA 92108 US Ref: Weekly Disbursement/Time/i 1:24 Imad: 0729B1 QgcO COi 0366 Tm: 370630021 OJo |

DRAFT FORM - SUBJECT TO CHANGE

EXHBIT 2
Page 32

In re: The Litigation Practice Group PC
Disbursement Details by Payee
4 Years Pre-Petition (03/20/2019 - 03/20/2023)



MRd Marketing LLC

| Bank Name | Account Name | Account Number | Statement Date | Transaction Date | Check Number | Debit/Charge | Memo |
|---|---|---|---|---|---|---|---|
| Chase | The Litigation Practice Group PC | | 8/31/2022 | 8/5/2022 | | 17,227.53 | Fedwire Debit Via: Wells Fargo NA/i 21000248 A/C: Mrd Marketing LLC 5an Diego, CA 92108 US Ref: Weekly Disbursement/Time/ii:27 Imad: 0805B1 Qgc07C007567 Tm: 310020021 7Jo |
| Chase | The Litigation Practice Group PC | | 8/31/2022 | 8/11/2022 | | 21,469.40 | Fedwire Debit Via: Wells Fargo NN121000248 A/C: Mrd Marketing LLC San Diego, CA 92108 US Ref: Weekly Disbursementl/Time/11:28 Imad: 0811 Bi Qgc02C005897 Tm: 3896400223Jo |
| Chase | The Litigation Practice Group PC | | 8/31/2022 | 8/19/2022 | | 11,192.48 | Fedwire Debit Via: Wells Fargo NN1 21000248 NC: Mrd Marketing LLC 5an Diego, CA 92108 U5 Ref: Weekly Disbursement/Time/i 0:44 Imad: 081 9B1 Qgc08COi0936 Tm: 283430023Jo |
| Chase | The Litigation Practice Group PC | | 8/31/2022 | 8/26/2022 | | 17,226.90 | Fedwire Debit Via: Wells Fargo NA1i2i000248 A/C: Mrd Marketing LLC San Diego, CA 92108 US Ref: Weekly Disbursement/Time/i 3:43 Imad: 0826B1Qgc08C0i4592 Tm: 4483500238Jo |
| Chase | The Litigation Practice Group PC | | 9/30/2022 | 9/2/2022 | | 8,013.28 | Fedwire Debit Via: Wells Fargo NNi000248 NC: Mrd Marketing LLC San Diego, CA92i08 US Ref: Weekly Disbursement/Time/ii:50 Imad: O9O2BlQgc04COO7Ji2 Tm: 3739000245Jo |
| Chase | The Litigation Practice Group PC | | 9/30/2022 | 9/8/2022 | | 23,878.44 | Fedwire Debit Via: Wells Fargo NN121000248 NC: Mrd Marketing LLC San Diego, CA 92108 US Ref: File Purchase/Time/i 2:34 Imad: 0908B1Qgc07C009489 Tm: 4543700251Jo |
| Chase | The Litigation Practice Group PC | | 9/30/2022 | 9/9/2022 | | 5,943.93 | Fedwire Debit Via: Wells Fargo NNi21000248 A/C: Mrd Marketing LLC San Diego, CA 92108 us Ref: Weekly Disbursement/Time/i1:57 Imad: 0909B1 Qgc05COO69i 9 Tm: 3435000252Jo |
| Chase | The Litigation Practice Group PC | | 9/30/2022 | 9/16/2022 | | 12,044.38 | Fedwire Debit Via: Wells Fargo NN121000248 NC: Mrd Marketing LLC San Diego, CA 92108 US Ref: File Purchase/Time/i 4:09 Imad: 091 6B1Qgc08C017808 Tm: 5259400259Jo |
| Chase | The Litigation Practice Group PC | | 9/30/2022 | 9/16/2022 | | 7,119.72 | Fedwire Debit Via: Wells Fargo NA/12i000248 A/C: Mrd Marketing LLC San Diego, CA 92108 US Ref: Weekly Disbursement/Time/i 6:44 Imad: O9I6BlQgc05COiO8i6Trn: 6656i00259Jo |
| Chase | The Litigation Practice Group PC | | 9/30/2022 | 9/23/2022 | | 3,569.83 | Fedwire Debit Via: Wells Fargo NA/i2i000248 A/C: Mrd Marketing LLC San Diego, CA 92108 US Ref: Weekly Disbursement/Time/ii:02 Imad: 0923B1 Qgc08COi 1086 Tm: 3i0280026Jo |
| Chase | The Litigation Practice Group PC | | 10/31/2022 | 10/3/2022 | | 8,604.94 | Fedwire Debit Via: Wells Fargo NNi21000248 NC: Mrd Marketing LLC San Diego, CA 92108 US Ref: Weekly Disbursement/Time/i 7:25 Imad: 1 003B1 Qgc03C02i 585 Tm: 8037000276Jo |
| Chase | The Litigation Practice Group PC | | 10/31/2022 | 10/6/2022 | | 6,764.50 | Fedwire Debit Via: Wells Fargo NNi21000248 NC: Mrd Marketing LLC San Diego, CA 92108 us Ref: Weekly Disbursement/Time/i2:29 Imad: 1 006B1 Qgc05C009473 Tm: 4308900279Jo |
| Chase | The Litigation Practice Group PC | | 10/31/2022 | 10/7/2022 | | 676,811.11 | Fedwire Debit Via: Wells Fargo NNi2i000248 A/C: Mrd Marketing LLC San Diego, CA 92108 US Ref: File Purchase/Time/i6:13 Imad: 1007B1Qgc07C01O39O Tm: 641 9700280Jo |
| Chase | The Litigation Practice Group PC | | 10/31/2022 | 10/14/2022 | | 6,504.21 | Fedwire Debit Via: Wells Fargo NA/i 21000248 A/C: Mrd Marketing LLC San Diego, CA 92108 US Ref: Weekly Disbursement/Time/i 3:06 Imad: lOl4BlQgc08COii326 Tm: 6294600287Jo |
| Chase | The Litigation Practice Group PC | | 10/31/2022 | 10/21/2022 | | 3,403.39 | Fedwire Debit Via: Wells Fargo NN121000248 NC: Mrd Marketing LLC San Diego, CA 92108 US Ref: Weekly Disbursement/Time/ii 4:23 Imad: 1021B1Qgc07COi9846 Tm: 5051700294Jo |
| Chase | The Litigation Practice Group PC | | 10/31/2022 | 10/28/2022 | | 419.02 | Fedwire Debit Via: Wells Fargo NA/i 21000248 NC: Mrd Marketing LLC San Diego, CA 92108 us Ref: Weekly Disbursement/Time/i 6:57 Imad: 1 028B1 Qgc02COI 1574 Tm: 7395400301Jo |
| Chase | The Litigation Practice Group PC | | 11/30/2022 | 11/2/2022 | | 26,000.00 | Fedwire Debit Via: Wells Fargo NA/121000248 NC: Mrd Marketing LLC San Diego, CA 92108 US Ref: Weekly Disbursement/Time/i 6:28 Imad: 1102B1Qgc08C037659 Tm: 6581600306Jo |
| Chase | The Litigation Practice Group PC | | 11/30/2022 | 11/9/2022 | | 5,461.71 | Fedwire Debit Via Wells Fargo NN121000246 NC Mrd Marketing LLC San Diego, CA 92108 US Ret: Weekly Disbursement/Time/12:01 Imad: 1 109B1Qgc03C003782 Tm: 387200031 3J0 |
| Chase | The Litigation Practice Group PC | | 11/30/2022 | 11/9/2022 | | 3,257.39 | Fedwire Debit Via Wells Fargo NN121000248 NC Mrd Marketing LLC San Diego, CA 92108 US Ret: Weekly Disbursement/Time/i 2:00 Imad: 1 i09BiGgc08C020872 Tm: 386590031 3Jo |
| Chase | The Litigation Practice Group PC | | 11/30/2022 | 11/10/2022 | | 3,314.40 | Fedwire Debit Via. Wells Fargo NN121000248 NC. Mrd Marketing LLC San Diego, CA 92108 US Ret: Weekly Disbursement/Time/i 7:26 Imad: 11 1DB1Ogc08CD48492 Tm: 805800031 4Jo |
| Chase | The Litigation Practice Group PC | | 11/30/2022 | 11/15/2022 | | 61,045.65 | Fedwire Debit Via. Wells Fargo NN121000248 NC. Mrd Marketing LLC San Diego, CA 92108 US Ret: Weekly Disbursement/Time/ii 4:01 Imad: 11 15R1Ggc07C013627 Tm: 814090031 4Jo |
| Chase | The Litigation Practice Group PC | | 11/30/2022 | 11/18/2022 | | 2,638.55 | Fedwire Debit Via. Wells Fargo NN121000248 NC. Mrd Marketing LLC San Diego, CA 92108 US Ret: Weekly Disbursement/Time/i 3:14 Imad: 11 18B1Ogc08C028257 Trn: 5040300322io |
| Chase | The Litigation Practice Group PC | | 11/30/2022 | 11/25/2022 | | 2,579.21 | Fedwire Debit Via. Wells Fargo NN121000248 NC Mrd Marketing LLC San Diego, CA 92108 US Ret: Weekly Disbursement/Time/i 7:53 Imad: 1 125B1Ogc050009832 Tm: 4226200329io |
| Chase | The Litigation Practice Group PC | | 11/30/2022 | 11/25/2022 | | 203.20 | Fedwire Debit Vie Wells Fargo NN121000248 NC Mrd Marketing LLC San Diego, CA 92106 US Ret: Weekly Disbursement/Time/i 7:53 Imad: 11 25B1 Qgc08C02473B Tm: 4229600329io |
| Chase | The Litigation Practice Group PC | | 11/30/2022 | 11/28/2022 | | 31,718.57 | Fedwire Debit Via Wells Fargo NN1 21000248 NC Mrd Marketing LLC San Diego, CA 92108 US Ret: File Purchese/Time/16:36 mmcd: 1 128B1Cgo06C013739 Tm: ii 481 00332Jo |
| Chase | The Litigation Practice Group PC | | 12/31/2022 | 12/5/2022 | | 8,694.51 | Fedwire Debit Via Wells Fargo NN121000248 NC Mrd Marketing [[C San Diego, CA 92108 us Ret: Weekly Disbursement/Time/i 4:59 Imad: 120591 Cgc06COI 2085 Tm: 5569500339Jo |
| Chase | The Litigation Practice Group PC | | 12/31/2022 | 12/5/2022 | | 105.37 | Fedwire Debit Via Wells Fargo NN121000248 NC Mrd Marketing LLC San Diego, CA 92108 US Ret: Weekly Disbursement/Time/i 5:00 Imad: I2O5BlQgcO700l 1748 Tm: 5591 600339,Jo |
| Chase | The Litigation Practice Group PC | | 12/31/2022 | 12/9/2022 | | 2,168.57 | Fedwire Debit Via Wells Fargo NN121000248 NC. Mrd Marketing LLC San Diego, CA 92108 US Ret: Weekly Disbursement/Time/i 7:00 Imad: 1 209B1 Ogc0BC034B45 Tm: 6503200343Jo |

DRAFT FORM - SUBJECT TO CHANGE

EXHBIT 2
Page 33

In re: The Litigation Practice Group PC
Disbursement Details by Payee
4 Years Pre-Petition (03/20/2019 - 03/20/2023)

MRD Marketing LLC



| Bank Name | Account Name | Account Number | Statement Date | Transaction Date | Check Number | Debit/Charge | Memo |
|---|---|---|---|---|---|---|---|
| Chase | The Litigation Practice Group PC | | 12/31/2022 | 12/9/2022 | | 296.14 | Fedwire Debit Vie Wells Fargo NN121000248 NC Mrd Marketing LLC San Diego, CA 92108 US Ret: Weekly Diebureement/Time/1 7:00 Imad: 120981 Ogc08C034838 Tm: 65831 00343Jo |
| Chase | The Litigation Practice Group PC | | 12/31/2022 | 12/19/2022 | | 2,685.00 | Fedwire Debit Vie. Wells Fargo NN121000248 NC. Mrd Marketing LLC San Diego, DA 92108 US Ret: Weekly Diebureement/Time/1 7:25 Imad: 121981 Ogc08C042795 Tm: 8040900353Jo |
| Chase | The Litigation Practice Group PC | | 12/31/2022 | 12/19/2022 | | 105.37 | Fedwire Debit Via. Wells Fargo NN121000248 NC. Mrd Marketing LLC san Diego, CA 92108 US Ret: Weekly Disbursement/Time/i 7:25 Imad: 1219B1Ogc060017812 Tm: 8041000353Jo |
| Chase | The Litigation Practice Group PC | | 12/31/2022 | 12/27/2022 | | 6,942.49 | Fedwire Debit Via Wells Fargo NN121000248 NC Mrd Marketing LLC San Diego, CA 92108 US Ret: Weekly Disbursement/Time/i 6:32 Imad: 122761 Ogc02CCO08I 83 Tm: 6980400381 Jo |
| Chase | The Litigation Practice Group PC | | 12/31/2022 | 12/27/2022 | | 230.60 | Fedwire Debit Via. Wells Fargo NN121000248 NC. Mrd Marketing LLC San Diego, CA 92108 US Ret: Weekly Disbursement/Time/i 3:58 Imad: 1227B1Qgc01C016234 Tm: 4803200361Jo |
| Chase | The Litigation Practice Group PC | | 12/31/2022 | 12/30/2022 | | 518.45 | Fedwire Debit Via Wells Fargo NN121000248 NC Mrd Marketing LLC San Diego, CA 92108 US Ret: Weekly Disbursement/Time/i 4:38 Imad: 123081 Qgo07CD44076 Tm: 557D800364Jo |
| Chase | The Litigation Practice Group PC | | 1/31/2023 | 1/3/2023 | | 1,624.98 | Fedwire Debit Vie: Wells Fargo NN121000248 NC. Mmd Marketing LLC San Diego, CA 92108 US Ref: Weekly Disbursement/Time/14:43 Imad: O1O3B1Qg0O1C0O9T67 Tm: 6122300003Jo |
| Chase | The Litigation Practice Group PC | | 1/31/2023 | 1/6/2023 | | 901.62 | Fedwire Debit Via: Wells Fargo NN121000248 NC. Mrd Marketing LLC San Diego, CA 92108 US Ref: Weekly Disbursement/Time/i 4:47 Imad: 010681 Qgc06C029364 Tm: 471 8000006,Jo |
| Chase | The Litigation Practice Group PC | | 1/31/2023 | 1/11/2023 | | 3,509.81 | Fedwire Debit Via Wells Fargo NN121000248 NC Mrd Marketing [[C sen Diego, CA 92108 us Ret: Weekly Disbursement/Time/i 6:50 Imad: 011181 0gc07C034046 Tm: 6646600011 Jo |
| Bank of America | Litigation Practice Group PC | | 1/31/2023 | 1/13/2023 | | 1,434.13 | WIRE TYPEWIRE OUT DATEQ301 13 TIME1 652 ET TRNQO23O1 1300499741 SERVICE REF018154 BNF:MRD MARKETING LLC ID:981 0662784 BNF BK.WELLS FARGO BANK, NA ID:1 21 000248 PMT DET:421 500464 01. 1323 WEEKLY DISBURSEMENT |
| Bank of America | Litigation Practice Group PC | | 1/31/2023 | 1/18/2023 | | 1,161.88 | WIRE TYPE:WIRE OUT DATE:2301 18 TIME1 537 ET TRN202301 1800475657 SERVICE REF013707 BNF:MRD MARKETING LLC ID:981 0662784 BNF BK:WELLS FARGO BANK, NA ID:1 21000248 PMT DET:421 954960 WEE KLY DISBURSEMENT |
| Chase | The Litigation Practice Group PC | | 1/31/2023 | 1/24/2023 | | 2,244.80 | Fedwire Debit Via. Wells Fargo NN121000248 NC. Mrd Marketing LLC San Diego, CA 92108 US Ret: Weekly Disbursement/Time/i 5:47 Imad: 012491 OgoO5COl 2520 Tm: 5654000024Jo |
| Chase | The Litigation Practice Group PC | | 1/31/2023 | 1/24/2023 | | 1,360.84 | Fedwire Debit Via: Wells Fargo NN121000248 NC: Mmd Marketing LLC San Diego, CA 92108 US Ret: Weekly Disbursement/Time/i 5:47 Imad: 012461 Ogc08C032058 Tm: 5652700024Jc |
| Chase | The Litigation Practice Group PC | | 2/28/2023 | 2/7/2023 | | 2,357.36 | Fedwire Debit Via: Wells Fargo NN121000248 NC: Mrd Marketing LLC San Diego, CA 92108 US Ref: Weekly Disbursement/Time/17:47 Imad: 0207B1Qgc07C031930 Tm: 6648200038Jo |
| Chase | The Litigation Practice Group PC | | 2/28/2023 | 2/7/2023 | | 2,070.25 | Fedwire Debit Via: Wells Fargo NN121000248 NC: Mrd Marketing LLC San Diego, CA 92108 US Ref: Weekly Disbursement/Time/17:47 Imad: 0207B1Qgc07C031929 Tm: 6648300038Jo |
| Bank of America | Litigation Practice Group PC | | 2/28/2023 | 2/9/2023 | | 1,209.43 | WIRE TYPE:WIRE OUT DATE:230209 TIME:1 647 ET TRNQ023020900456247 SERVICE REF:015349 BNF:MRD MARKETING LLC ID:981 0662784 BNF BK:WELLS FARGO BANK. NA ID:1 21 000248 PMT DET:CZPD6HVL7 POP Other |
| Bank of America | Litigation Practice Group PC | | 2/28/2023 | 2/10/2023 | | 1,784.82 | WIRE TYPEWIRE OUT DATE230210 TIMEO759 ETTRN2023020900488652 SERVICE REF0O5759 BNF:MRD MARKETING LLC ID:981 0662784 BNF BK:WELLS F ARGO BANK, NA ID:1 21 000248 PMT DET:6T2GT867X POP Other |
| UnionBank | The Litigation Practice Group PC | | 2/28/2023 | 2/27/2023 | | 218,109.78 | WIRE TRANS TRN 0227020482 022723 UBOC UB278610N Sent To: WELLS FARGO BANK NA Beneficiary: 1/MRD Marketing |
| | | | | | | **1,676,351.02** | |

DRAFT FORM - SUBJECT TO CHANGE

EXHBIT 2
Page 34

# EXHIBIT 3

EXHIBIT 3
Page 35

In re: The Litigation Practife Group PC

MRD Marketing LLC

Disbursement Details by Payee

90 Days Pre-Petition (12/20/2022 - 03/20/2023)

| Bank Name | Account Type | Account Name | Account Number | Statement Date | Transaction Date | Check Number | Debit/Charge | Memo |
|---|---|---|---|---|---|---|---|---|
| UnionBank | Checking | The Litigation Practice Group PC | | 2/28/2023 | 2/27/2023 | | 218,109.78 | WIRE TRANS TRN 0227020482 022723 UBOC UB278610N Sent To: WELLS FARGO BANK NA Beneficiary: 1/MRD Marketing |
| Bank of America | Checking | Litigation Practice Group PC | | 2/28/2023 | 2/10/2023 | | 1,784.82 | WIRE TYPE:WIRE OUT DATE230210 TIMEO759 ETTRN20232020900488652 SERVICE REFOO5759 BNF:MRD MARKETING LLC ID:981 0662784 BNF BK:WELLS F ARGO BANK, NA ID:21 000248 PMT DET:6T2GT867X POP Other |
| Bank of America | Checking | Litigation Practice Group PC | | 2/28/2023 | 2/9/2023 | | 1,209.43 | WIRE TYPE:WIRE OUT DATE:230209 TIME:1 647 ET TRNQ023020900456247 SERVICE REF:015349 BNF:MRD MARKETING LLC ID:981 0662784 BNF BK:WELLS BANK. NA ID:1 21 000248 PMT DET:CZPD6HVL7 POP Other |
| Chase | Checking | The Litigation Practice Group PC | | 2/28/2023 | 2/7/2023 | | 2,070.25 | Fedwire Debit Via: Wells Fargo NN121000248 NC: Mrd Marketing LLC San Diego, CA 92108 US Ref: Weekly Disbursement/Time/17:47 Imad: 0207B1Qgc07C031929 Trn: 6648300038Jo |
| Chase | Checking | The Litigation Practice Group PC | | 2/28/2023 | 2/7/2023 | | 2,357.36 | Fedwire Debit Via: Wells Fargo NN121000248 NC: Mrd Marketing LLC San Diego, CA 92108 US Ref: Weekly Disbursement/Time/17:47 Imad: 0207B1Qgc07C031930 Trn: 6648200038Jo |
| Chase | Checking | The Litigation Practice Group PC | | 1/31/2023 | 1/24/2023 | | 1,360.84 | Fedwire Debit Via: Wells Fargo NN121000248 NC. Mrd Marketing LLC San Diego, CA 92108 US Ret: Weekly Disbursement/Time/i 5:47 Imad: 012461 Ogc08C032058 Tm: 5652700024Jc |
| Chase | Checking | The Litigation Practice Group PC | | 1/31/2023 | 1/24/2023 | | 2,244.80 | Fedwire Debit Via: Wells Fargo NN121000248 NC. Mrd Marketing LLC San Diego, CA 92108 US Ret: Weekly Disbursement/Time/i 5:47 Imad: 012491 OgcO5COI 2520 Tm: 5654000024Jo |
| Bank of America | Checking | Litigation Practice Group PC | | 1/31/2023 | 1/18/2023 | | 1,161.88 | WIRE TYPE:WIRE OUT DATE:2301 18 TIME1 537 ET TRN202301 1800475657 SERVICE REF013707 BNF:MRD MARKETING LLC ID:981 0662784 BNF BK:WELLS FARGO BANK, NA ID:21 000248 PMT DET:421 954960 WEE KLY DISBURSEMENT |
| Bank of America | Checking | Litigation Practice Group PC | | 1/31/2023 | 1/13/2023 | | 1,434.13 | WIRE TYPE:WIRE OUT DATEQ301 13 TIME1 652 ET TRNQ023O1 1300499741 SERVICE REF018154 BNF:MRD MARKETING LLC ID:981 0662784 BNF BK:WELLS FARGO BANK, NA ID:21 000248 PMT DET:421 500464 01. 1323 WEEKLY DISBURSEMENT |
| Chase | Checking | The Litigation Practice Group PC | | 1/31/2023 | 1/11/2023 | | 3,509.81 | Fedwire Debit Via Wells Fargo NN121000248 NC Mrd Marketing [[C sen Diego, CA 92108 us Ret: Weekly Disbursement/Time/i 6:50 Imad: 011181 Ogc07C034046 Tm: 6646600011 Jo |
| Chase | Checking | The Litigation Practice Group PC | | 1/31/2023 | 1/6/2023 | | 901.62 | Fedwire Debit Via Wells Fargo NN121000248 NC: Mrd Marketing LLC San Diego, CA 92108 US Ret: Weekly Disbursement/Time/i 4:47 Imad: 010681 Ogc06C029364 Tm: 471 8000006,Jo |
| Chase | Checking | The Litigation Practice Group PC | | 1/31/2023 | 1/3/2023 | | 1,624.98 | Fedwire Debit Vie: Wells Fargo NN121000248 NC. Mmd Marketing LLC San Diego, CA 92108 US Ref: Weekly Disbursement/Tima/14:43 Imad: O1O3B1Qg0O1C0O9T67 Tm: 6122300003Jo |
| Chase | Checking | The Litigation Practice Group PC | | 12/31/2022 | 12/30/2022 | | 518.45 | Fedwire Debit Via Wells Fargo NN121000248 NC Mrd Marketing LLC San Diego, CA 92108 US Ret: Weekly Disbursement/Time/i 4:38 Imad: 123081 Qgc07D44076 Tm: 557D800364Jo |
| Chase | Checking | The Litigation Practice Group PC | | 12/31/2022 | 12/27/2022 | | 230.60 | Fedwire Debit Via. Wells Fargo NN121000248 NC. Mrd Marketing LLC San Diego, CA 92108 US Ret: Weekly Disbursement/Time/i 3:58 Imad: 1227B1Qgc01C016234 Tm: 4803200361Jo |
| Chase | Checking | The Litigation Practice Group PC | | 12/31/2022 | 12/27/2022 | | 6,942.49 | Fedwire Debit Via Wells Fargo NN121000248 NC Mrd Marketing LLC San Diego, CA 92108 US Ret: Weekly Disbursement/Time/i 6:32 Imad: 122761 OgcO2COO8l 83 Tm: 6980400381 Jo |
| | | | | | | | 245,461.24 | |

DRAFT FORM - SUBJECT TO CHANGE

Payor Accounts: BAT, Coast Processing LLC, EZ Debt Relief, Maverick Managment Group, Prim Logix, The Litigation Practice Group, Vulcan Consulting Group LLC

EXHIBIT 3
Page 36

**ADVERSARY PROCEEDING COVER SHEET**

B1040 (FORM 1040) (12/24)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS<br>Richard A. Marshack, Trustee of the LPG Liquidation Trust | DEFENDANTS<br>Matthew Clegg, an individual; Richard Senitte, an individual; and David Nearing, an individual |
|---|---|

**ATTORNEYS** (Firm Name, Address, and Telephone No.)

Christopher Celentino (SBN 131688)
Yosina M. Lissebeck (SBN 201654)
Christopher B. Ghio (SBN 259094)
Vanessa E. Rodriguez (SBN 349425)
DINSMORE & SHOHL LLP
655 West Broadway, Ste 800
San Diego, CA 92101    Telephone (619) 400-0500
christopher.celentino@dinsmore.com
yosina.lissebeck@dinsmore.com
christopher.ghio@dinsmore.com
vanessa.rodriguez@dinsmore.com

**ATTORNEYS** (If Known)

**PARTY** (Check One Box Only)
☐ Debtor        ☐ U.S. Trustee/Bankruptcy Admin
☐ Creditor      ☐ Other
☐ Trustee

**PARTY** (Check One Box Only)
☐ Debtor        ☐ U.S. Trustee/Bankruptcy Admin
☐ Creditor      ☐ Other
☒ Trustee

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

**Count I - Aiding and Abetting Fraudulent Transfers**

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(a) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☒ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(b) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(c) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner – §363(h)

**FRBP 7001(d) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(e) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(f) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(f) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation
        (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(g) – Injunctive Relief**
☐ 71-Injunctive relief- imposition of stay
☐ 72-Injunctive relief - other

**FRBP 7001(h) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(i) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(j) Determination of Removed Action**
☐ 01-Determination of remove d claim or cause

**Other**
☐ SS-SIPA Case - 15 U.S.C. §§78aaa *et.seq.*
☐ 02-Other (e.g. other actions that would have been brought in state court
        if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $1,676,352 |

Other Relief Sought

ATTACHMENT

B1040 (FORM 1040) (12/24)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>The Litigation Practice Group P.C. | BANKRUPTCY CASE NO.<br>8:23-bk-10571-SC | |
| DISTRICT IN WHICH CASE IS PENDING<br>Central District of California | DIVISION OFFICE<br>Santa Ana | NAME OF JUDGE<br>Scott C. Clarkson |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br><br>/s/ Vanessa E. Rodriguez | | |
| DATE<br>March 17, 2025 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Yosina M. Lissebeck<br>Vanessa E. Rodriguez | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.