Christopher Celentino (131688)
Yosina M. Lissebeck (State Bar No. 201654)
Christopher B. Ghio (State Bar No. 259094)
**DINSMORE & SHOHL LLP**
655 West Broadway, Suite 800
San Diego, CA 92101
Telephone:  619.400.0500
Facsimile:  619.400.0501
christopher.celentino@dinsmore.com
yosina.lissebeck@dinsmore.com
christopher.ghio@dinsmore.com

Tyler Powell (Ky. Bar No. 90520 – Admitted pro hac vice)
**DINSMORE & SHOHL, LLP**
100 West Main Street, Suite 900
Lexington, KY  40507
Telephone:  859-425-1056
Facsimile:  859-425-1099
tyler.powell@dinsmore.com

Special Counsel to Richard A. Marshack,
Trustee of the LPG Liquidation Trust

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>The Litigation Practice Group P.C.,<br><br>    Debtor. | Chapter 11<br><br>Case No. 8:23-bk-10571-SC<br>Adv No. 8:25-ap-_____-SC<br><br>**COMPLAINT FOR:** |
| Richard A. Marshack, Trustee of the LPG Liquidation Trust,<br><br>    Plaintiff,<br><br>v.<br><br>Brian Olsen, a California resident; Olsenite, LLC, a California limited liability company.<br><br>    Defendants. | **(1) AVOIDANCE, RECOVERY, AND PRESERVATION OF TRANSFERS MADE WITHIN THE NINETY DAY PERIOD BEFORE THE PETITION DATE PURSUANT TO 11 U.S.C. §§ 547, 550, AND 551;**<br><br>**(2) AVOIDANCE, RECOVERY, AND PRESERVATION OF POST-PETITION TRANSFERS PURSUANT TO 11 U.S.C. §§ 549, 550, AND 551;**<br><br>**(3) AVOIDANCE, RECOVERY, AND PRESERVATION OF TRANSFERS MADE WITH INTENT TO DEFRAUD PURSUANT TO 11 U.S.C. §§ 548(A)(1)(B), 550, AND 551;**<br><br>**(4) AVOIDANCE, PRESERVATION, AND RECOVERY OF CONSTRUCTIVELY FRAUDULENT TWO-YEAR TRANSFERS PURSUANT TO 11 U.S.C. §§ 548(A)(1)(B),** |

1

550 & 551;

**(5) AVOIDANCE, PRESERVATION, AND RECOVERY OF TRANSFERS WITHIN FOUR YEARS PURSUANT TO 11 U.S.C. §§ 544, 550, 551; CAL. CIV. CODE §§ 3439.04(A)(2), 3439.05 AND 3439.07;**

**(6) AVOIDANCE, RECOVERY, AND PRESERVATION OF TRANSFERS MADE WITHIN FOUR YEARS PURSUANT TO 11 U.S.C. §§ 544(B), 550, AND 551; CAL. CIV. CODE §§ 3439.05, AND 3439.07**

Dept 5C
Honorable Scott C. Clarkson

For his *Complaint for (1) Avoidance, Recovery, and Preservation of Transfers Made Within the Ninety Day Period Before the Petition Date Pursuant to 11 U.S.C. §§ 547, 550, and 551; (2) Avoidance, Recovery, and Preservation of Post-Petition Transfers Pursuant to 11 U.S.C. §§ 549, 550, and 551; (3) Avoidance, Recovery, and Preservation of Transfers Made With Intent to Defraud Pursuant to 11 U.S.C. §§ 548(a)(1)(B), 550, and 551; (4) Avoidance, Preservation, and Recovery of Constructively Fraudulent Two-Year Transfers Pursuant to 11 U.S.C. §§ 548(a)(1)(B), 550 & 551; (5) Avoidance, Preservation, and Recovery of Transfers Within Four Years Pursuant to 11 U.S.C. §§ 544, 550, 551; Cal. Civ. Code §§ 3439.04(a)(2), 3439.05 and 3439.07; and (6) Avoidance, Recovery, and Preservation of Transfers Made Within Four Years Pursuant to 11 U.S.C. §§ 544(b), 550, and 551; Cal. Civ. Code §§ 3439.05, and 3439.07,* Plaintiff Richard A. Marshack, the Trustee of the LPG Liquidation Trust (the "Trustee" or "Plaintiff") in the above-captioned bankruptcy case (the "Bankruptcy Case"), alleges and avers as follows:

### STATEMENT OF JURISDICTION, NATURE OF PROCEEDING, AND VENUE

1.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 157(b)(2)(A), (E), (H) and (O), 1334(b), and General Order No. 13-05 of the District Court for the Central District of California because this is a core proceeding arising in and/or related to the Bankruptcy Case, which is a case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), and which is pending in the United States Bankruptcy Court for the Central District of California, Santa Ana Division (the "Court").

2.    Regardless of whether this proceeding is core, non-core, or otherwise, the Plaintiff consents to the entry of a final order and judgment by the Bankruptcy Court.

3.    Defendants are hereby notified that Rule 7008 of the Federal Rules of Bankruptcy Procedure requires them to plead whether consent is given to the entry of a final order and judgment by the bankruptcy court.

4.    Venue of this adversary proceeding properly lies in this judicial district pursuant to 28 U.S.C. § 1409(a) because this proceeding is related to the Debtor's pending Bankruptcy Case.

## THE PARTIES

5.    Plaintiff, Richard A. Marshack, was the duly-appointed, qualified Chapter 11 Trustee of Debtor's Estate and is now the current liquidating trustee of the LPG Liquidation Trust.

6.    Debtor LPG is, and at all material times was, a professional corporation organized, existing, and in good standing under the laws of the State of California, with its principal place of business in Tustin, California.

7.    Defendant Brian Olsen is, and at all material times represented that he was, a resident of the State of California ("Mr. Olsen").

8.    Defendant Mr. Olsen may be served by first class mail postage prepaid upon him at 4916 Florence Circle, Anaheim, California 92807.

9.    Defendant Olsenite, LLC is, and at all material times represented that it was, a California limited liability company ("Olsenite").

10.    Defendant Olsenite may be served by first class mail postage prepaid upon its agent, Mr. Olsen at the above address.

## GENERAL ALLEGATIONS

A.    **The Bankruptcy Case**

11.    On March 20, 2023 ("Petition Date"), Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, commencing the Bankruptcy Case.

12.    The Office of the United States Trustee ("UST") filed its *Motion by United States Trustee to Dismiss or Convert Case Pursuant to 11 U.S.C. § 1112(b)* [Bankr. Docket No. 21] and creditors Debt Validation Fund II, LLC; MC DVI Fund 1, LLC; and MC DVI Fund 2, LLC filed the

*Motion by DVF and MC DVI to Dismiss Chapter 11 Case Pursuant to 11 U.S.C. §§ 105, 305, 349, & 1112, or in the Alternative Convert This Case to Chapter 7 or Appoint a Trustee* [Bankr. Docket No. 44]. On May 4, 2023, the Court entered its *Order Directing United States Trustee to Appoint Chapter 11 Trustee* [Bankr. Docket No. 58].

13.    Pursuant to the *Acceptance of Appointment as Chapter 11 Trustee* [Bankr. Docket No. 63], on May 8, 2023, Trustee accepted his appointment as the Chapter 11 Trustee in the Bankruptcy Case. The Court approved the Trustee's appointment in its *Order Approving the U.S. Trustee's Application for the Appointment of a Chapter 11 Trustee* [Docket No. 65].

14.    Trustee was not appointed until after events of the case and, therefore, bases these allegations on information and belief. *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017) ("The *Twombly* plausibility standard . . . does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible."); *Miller v. City of Los Angeles*, 2014 U.S. Dist. LEXIS 198871, 2014 WL 12610195, at *5 (C.D. Cal. Aug. 7, 2014) (recognizing that the plaintiff's "information and belief" pleading was allowed and "necessary at times"); *see also Mireskandari v. Daily Mail and General Trust PLC*, 2013 U.S. Dist. LEXIS 194437, 2013 WL 12129642, at *4 (C.D. Cal. July 31, 2013) ("The Federal Rules of Civil Procedure allow parties to plead facts on 'information and belief' if the facts 'will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.'" (citations omitted)).

15.    Pursuant to the *Order Confirming Modified First Amended Joint Chapter 11 Plan of Liquidation* entered September 9, 2024, and the *Notice of Occurrence of Effective Date of Modified First Amended Joint Chapter 11 Plan of Liquidation* filed September 24, 2024, Richard A. Marshack became the Liquidating Trustee of the LPG Liquidation Trust, effective September 24, 2024. [Bankr. Docket Nos. 1646 & 1762].

16.    All claims have been transferred to the Liquidating Trust pursuant to the confirmed plan and Plaintiff brings this action solely in his capacity as the Liquidating Trustee of the LPG Liquidation Trust, for the benefit of Debtor's Estate and its creditors.

**B.**    **Protective Order**

17.    On or about May 2, 2024, Plaintiff filed that certain Notice and Motion for Entry of Protective Order (the "Protective Order").

18.    On June 3, 2024, the Court entered its *Order Granting Motion for Entry of Protective Order and the Protective Order* [Bankr. Docket No. 1270] (the "Protective Order"). A true and accurate copy of the Protective Order is attached as **Exhibit 1**, and incorporated herein.

19.    By its own terms, the Protective Order applies to this adversary proceeding and governs all discovery conducted herein.

**C.**    **LPG's Ownership and Management**

20.    Prior to the Petition Date, LPG operated a law firm for consumers across the country who sought assistance in contesting or resolving debts they would identify. At all relevant times, LPG was controlled and operated by the individual named Tony Diab ("Diab").

21.    The consumers would pay LPG over a period of time via monthly debits from their bank accounts.

22.    The monthly payments were meant to cover all legal services LPG provided to the consumers including validation of the debts, review of documents to determine enforceability, and court appearances to halt lawsuits to obtain judgments.

23.    In certain instances, LPG would file a lawsuit in an effort to eliminate a disputed debt or to prosecute affirmative claims held by the consumers.

24.    LPG mismanaged the consumers' monthly payments.

25.    Diab and other defendants devised a plan to fraudulently transfer funds, client files, client funds and assets in the form of ACH Receivables (the "ACH Receivables" or "Accounts Receivable") out of LPG to third parties prior to the filing of bankruptcy.

26.    To obtain consumer clients, LPG contracted with marketing companies, who engaged in illegal capping and would advertise or call to solicit consumers to become clients of LPG in exchange for a percentage of the ACH Receivables collected by LPG from the consumers. The marketing affiliate went so far as to assist with the execution of an engagement letter between the consumer and LPG.

27.    In exchange, LPG agreed to pay the marketing affiliates a percentage the monthly payments collected by LPG from the consumers.

28.    Because LPG received payments from consumers over time, it often sought financing by borrowing against its future cash flows. This borrowing was not only used to finance operations at LPG, but also to pay the fees owed to the marketing companies for providing the client referrals.

29.    Many of the documents executed in connection with such financing described the transactions as accounts receivable purchase agreements.

30.    Diab used entities he controlled including, without limitation, Vulcan Consulting, LLC ("Vulcan") and B.A.T., Inc. dba Coast Processing ("Coast") to process payments from LPG consumer clients and to divert LPG consumer funds and ACH Receivables. Diab would use numerous ACH processing companies in order to easily transfer millions of dollars from Debtor to these entities he controlled, without oversight or detection, and to avoid payment disputes and complications. The money that flowed from Debtor through these bank account to Defendants consisted of Client Funds that Debtor funneled to these entities by means of the ACH processing companies. Debtor also made deposits into these entities bank account such that they received Client Funds directly from Debtor in addition to direct Accounts Receivables.

**D.    Ponzi Scheme Presumption**

31.    The Ponzi Scheme Presumption exists in bankruptcy proceedings.

32.    The Ponzi Scheme Presumption can be utilized to establish a debtor's "intent to defraud future undertakers [investors] from the mere fact that a debtor was running a Ponzi scheme. Indeed, no other reasonable inference is possible. A Ponzi scheme cannot work forever. The investor pool is a limited resource and will eventually run dry. The perpetrator must know that the scheme will eventually collapse as a result of the inability to attract new investors. The perpetrator nevertheless makes payments to present investors, which, by definition, are meant to attract new investors. He must know all along, from the very nature of his activities, that investors at the end of the line will lose their money. Knowledge to a substantial certainty constitutes intent in the eyes of the law," *cf. Restatement (Second) of Torts § 8A* (1963 & 1964), and a debtor's knowledge that future investors will not be paid is sufficient to establish his actual intent to defraud them. *Kirkland v. Rund*

*(In re EPD Inv. Co., LLC)*, 114 F.4th 1148, 1153 (9th Cir. 2024) (by definition Ponzi scheme is destined to fail and the swindler and their entities often end in bankruptcy or equitable receivership); *Cf. Coleman Am. Moving Servs., Inc. v. First Nat'l Bank & Trust Co. (In re American Properties, Inc.)* 14 B.R. 637, 643 (Bankr. D. Kan. 1981) (intentionally carrying out a transaction with full knowledge that its effect will be detrimental to creditors is sufficient for actual intent to hinder, delay or defraud within the meaning of § 548(a)(1))." *Merrill v. Abbott (In re Independent Clearing House Co.)* (D. Utah 1987) 77 B.R. 843, 860. A trustee in bankruptcy is not required to show that an operator of a Ponzi scheme was subjectively aware his Ponzi scheme was destined to fail. *In re EPD Inv. Co., LLC*, 114 F.4th at 1153 ("[a] trustee's action to recover assets fraudulently conveyed in the course of a Ponzi scheme does not require that the trustee also prove the Ponzi-scheme operator was subjectively aware his Ponzi scheme was destined to fail.").

33.     "But if all the debtor receives in return for a transfer is the use of the defendant's money to run a Ponzi scheme, there is nothing in the bankruptcy estate for creditors to share. In fact, by helping the debtor perpetuate his scheme, the transfers exacerbate the harm to creditors by increasing the amount of claims while diminishing the debtor's estate. In such a situation, the use of the defendant's money cannot objectively be called 'reasonably equivalent value.'" *In re Independent Clearing House Co.* 77 B.R. at 859. Therefore, "[t]he trustee can avoid the transfers if they were preferential or fraudulent. Transfers to investors in a Ponzi scheme are preferential and fraudulent. Therefore, they constitute "property of the estate," and the trustee can recover them. *Id.* at 853 n.17 (citations omitted).

34.     Debtor was operating a Ponzi scheme that utilized affiliates and several other entities as investors/lenders to continue its unlawful business practices by using funds provided by current investors to attract new investors hoping for very high returns. Therefore, the Debtor was running a Ponzi scheme and the Ponzi Scheme Presumption can be utilized to infer that the Debtor had the intent to defraud investors within the meaning of 11 U.S.C. section 548(a)(1). This is evidenced by the Court in this Bankruptcy Case declaring that Debtor was operating a Ponzi scheme when it stated the following:

> It is important to note that this Court has never received any significant and trustworthy evidence that Debtor accomplished meaningful results for its clients, but only anecdotal examples of

viable success for its clients. By reviewing the Estate's claims register, there is evidence of consumer claims for the fraud and demanded but undelivered refunds of approximately $500 million. There is ample evidence that the pre-petition Debtor never placed the collected funds into an attorney-client trust account, and that Debtor or its principals simply looted the payments received through the client automatic withdrawals, stiffing both the clients and outside attorneys who may have been working on client cases with the hopes of being paid. There is also evidence before the Court that Debtor was running a Ponzi scheme and paying some outside (or "network") attorneys with funds obtained from new clients. In this case, it appears that some of the "lenders" may have been serving as "investors," hoping for very high returns before "the music stopped." The Ninth Circuit has recently explained, "[b]y definition, a Ponzi scheme is destined to fail because the pool of available investors is not limitless. When the Ponzi scheme operator's pool of investors inevitably runs dry, the scheme collapses and the swindler and their entities often end up in bankruptcy or equitable receivership. *See generally* David R. Hague, Expanding the Ponzi Scheme Presumption, 64 DePaul L. Rev. 867 (2015). In bankruptcy, the court-appointed trustee is tasked with taking immediate control of the entity, ceasing ongoing fraudulent activity, locating and collecting assets for the bankruptcy or receivership estate, and achieving a final, equitable distribution of the remaining assets. *See* 11 U.S.C. § 704; *Kirkland v. Rund (In re EPD Inv. Co., LLC)*, 2024 U.S. App. LEXIS 21363, at *15 (9th Cir. Aug. 23, 2024). Finally, there is evidence that Debtor was encumbering (or as some creditors assert, "double or triple selling") their accounts or receivables to multiple lenders. With respect to Greyson's requested Administrative Claim [Dk. 676], and as more fully described in the concurrently entered order denying the claim, there has been no evidence presented that any work allegedly performed by Greyson assisted any clients or added any value to the Estate.

*See, Case 8:23-bk-10571-SC*, Doc 1545 n. 5.

35.    The Ponzi Scheme Presumption establishes a debtor's "intent to defraud future undertakers [investors] from the mere fact that a debtor was running a Ponzi scheme." *Merrill v. Abbott (In re Independent Clearing House Co.)*, 77 B.R. 843, 860 (D. Utah 1987). "Knowledge to a substantial certainty constitutes intent in the eyes of the law, *cf. Restatement (Second) of Torts* § 8A (1963 & 1964), and a debtor's knowledge that future investors will not be paid is sufficient to establish his actual intent to defraud them." *Id*. A trustee in bankruptcy is not required to show that an operator of a Ponzi scheme was subjectively aware his Ponzi scheme was destined to fail. *In re EPD Inv. Co., LLC*, 114 F.4th at 1153 (9th Cir. 2024).

36.    "[I]f all the debtor receives in return for a transfer is the use of the defendant's money to run a Ponzi scheme, there is nothing in the bankruptcy estate for creditors to share." *In re Independent Clearing House Co.* 77 B.R. at 859. In such a situation, the use of the defendant's money cannot objectively be called "reasonably equivalent value." *Id*. Therefore, "[t]he trustee can avoid the transfers if they were preferential or fraudulent. Transfers to investors in a Ponzi scheme are preferential and fraudulent. Therefore, they constitute 'property of the estate,' and the trustee can recover them." *Id*. at 853 n.17 (citations omitted).

37.    Based on the Ponzi Scheme presumption the Court can infer that the Debtor had the intent to defraud investors within the meaning of 11 U.S.C. § 548(a)(1). Since the transfers to the Defendants were made with the intent to further the Ponzi scheme, the Debtor did not receive an objectively reasonable equivalent value for such transfers, and the Trustee can avoid any such transfers because they were actually fraudulent as to the Debtor's creditors..

**E.**    **Prepetition Litigation and Creditors**

38.    Debtor's Schedule E/F, filed on April 4, 2023, as Dk. No. 33, lists: (a) 11 unsecured creditors with priority unsecured claims totaling $374,060.04; and (b) 58 nonpriority unsecured creditors with scheduled claims totaling $141,439,158.05.

39.    The claims register in this Bankruptcy Case includes 2,554 proofs of claim, totaling in excess of $424 million of claims asserted against the Estate.

40.    At least 14 UCC-1 statements were of record securing alleged debts of the Debtor as of the Petition Date. These statements either reflected secured liens against the Debtor's assets then owned or thereafter acquired or provided evidence of the assignment or sale of substantial portions of the Debtor's future income. They secured the repayment of the following claimed amounts that are currently known to Trustee and are allegedly owed by the Debtor: (a) $2,374,004.82 owed to Fundura Capital Group as evidenced by Proof of Claim No. 335 purportedly secured by a UCC statement filed on or about May 19, 2021; (b) approximately $15 million dollars owed to MNS Funding, LLC as evidenced by Proof of Claim No. 1060 purportedly secured by a UCC statement filed on or about May 28, 2021; (c) approximately $5,000,000 owed to Azzure Capital, LLC as evidenced by Proof of Claim No. 127 purportedly secured by a UCC statement filed on or about May

28, 2021; and (d) approximately $1.5 million dollars owed to Diverse Capital, LLC purportedly secured by UCC statements filed on or about September 15, 2021, and December 1, 2021.

41.    Debtor's balance sheets for the 36 months ending December 31, 2021, show approximately $17,900,000 in total assets at its highest point in November 2021. This amount is significantly less than the $424 million of claims filed.

42.    Debtor's Statement of Financial Affairs, filed on April 4, 2023, as Dk. No. 34, reflects 15 pending lawsuits against Debtor as of the Petition Date. The lawsuits date back to October 18, 2021 (*Fundura v. The Litigation Practice Group P.C. et al.*, Supreme Court of New York Index No. 613192-2021) and are as recent as March 10, 2023 (*Diverse Capital LLC v. The Litigation Practice Group P.C. et al.*, Supreme Court of New York Index No. 135614-2023).

**F.    Debtor's Insolvency**

43.    Debtor was insolvent when the Transfers occurred as evidenced by: (a) the 14 UCC-1 statements reflecting secured liens against the Debtor's owned and after-acquired assets and the assignment or sale of substantial portions of the Debtor's future income; (b) the priority and non-priority unsecured debt of nearly $142 million listed in Debtor's schedules; (c) the $424 million of creditor claims filed in this Bankruptcy Case; and (d) Debtor's balance sheets reflecting, at its highest point, $17.9 million of assets in November 2021.

44.    Moreover, insolvency is presumed as a matter of law where, as in this Bankruptcy Case, the debtor operated a Ponzi scheme. *See, e.g., Glob. Money Mgmt., L.P. v. McDonnold*, No. 06CV34, 2008 U.S. Dist. LEXIS 128733, at *15 (S.D. Cal. Feb. 27, 2008) (concluding that "if a Ponzi scheme is proven, then the debtor is proven insolvent from the time of its inception").

## SPECIFIC ALLEGATIONS

45.    Beginning in 2022, the Debtor began borrowing money from multiple third parties pursuant to loan agreements administered by Spot On Consulting, Inc. ("Spot On"). Upon information and belief, Spot On or any other party that referred a lender to the Debtor and Spot On received a commission of a percentage of the principal amount of the loan.

46.    The Debtor and the third-party lender executed a loan agreement (generally "Spot On Notes") that Spot On joined as an "administrative liaison/servicing company." The terms of the Spot

On Notes could vary, but typically they provided that the lender would lend a fixed amount to the Debtor. The Debtor, in turn, would pay eight to ten percent interest **per month** on the principal amount of the loan for twelve or twenty-four months. At maturity, the Debtor promised to repay the lender the entire principal amount of the Spot On Note.

47.     By borrowing under these terms, the Debtor was obligating itself to repay each lender two to four times the amount that was borrowed. The Debtor "borrowed" hundreds of thousands of dollars through the Spot On Notes **each week** beginning in the fall of 2022.

48.     Upon information and belief, some Spot On Notes may not document a true loan transaction where the principal amount of the note was lent to the Debtor. In some instances, the Trustee believes that the principal balance of some Spot On Notes may represent an amount that was owed to the holder from another transaction or investment with the Debtor or related entity that was converted into a Spot On Note to extend the time to repay the amount owed.

49.     In some instances, lenders would have multiple outstanding Spot On Notes between them and the Debtor at the same time. Upon information and belief, the existence of multiple Spot On Notes by one lender may not be evidence of actual funds advanced to the Debtor.

50.     Upon information and belief, when the Debtor first began making payments to lenders on the Spot On Notes, it made a lump sum payment to Spot On equal to the total amount needed to pay the installments due to the lenders for that week. Spot On would then pay the individual lenders from its bank account. Upon information and belief, Spot On disbursed payments from two bank accounts it held at JPMorgan Chase Bank with account numbers ending in XX7662 and XX2777 ("Accounts").

51.     Ultimately, the Debtor was not able to pay Spot On a sufficient amount from its operations to make the weekly payments to the holders of the Spot On Notes. After this, upon information and belief, Spot On began using funds it obtained the execution of new Spot On Notes to make payments owed on existing Spot On Notes.

52.     The funds deposited in the Spot On account pursuant to new Spot On Notes was the Debtor's property as the Debtor had borrowed the money and was entitled to the use of it.

53.     The Debtor may have also made payments directly to the holders of Spot On Notes

1  from its own bank accounts or the bank accounts of a related entity.

2       54.    Upon information and belief, payments to lenders on account of the Spot On Notes

3  may have continued after the Petition Date.

4       55.    According to the proof of claim filed by Affirma, LLC discussed below, the

5  Defendants executed four notes with the Debtor and Spot On: a January 6, 2023 note for $50,000 that

6  would be receive $441,477 over the life of the note; a January 6, 2023 note for $300,000 that would

7  receive $576,000 over the life of the note; a January 13, 2023 note for $35,000 that would receive

8  $66,500 over the life of the note; and a January 27, 2023 note for $50,000 that would receive $170,000

9  over the life of the note (collectively "Defendant Note").  As of the filing date of this complaint the

10  Trustee has been unable to locate any copy of the Defendant Note.

11       56.    The payments made to the Defendant known to the Trustee are set forth on **Exhibit 2**.

12  Exhibit 2 includes payments made to the Defendant from Spot On and from the Debtor, if any. These

13  payments are collectively referred to as the "Transfers."

14       57.    All Transfers on Exhibit 2 may not relate to the Defendant Note, and the Trustee may

15  have filed a separate adversary against the Defendants or seek to amend this complaint to assert claims

16  based on other transactions or relationships with the Debtor. All Transfers to Defendant known to the

17  Trustee are listed on Exhibit 2 out of an abundance of caution, but the relief sought in this Complaint

18  is limited to those Transfers involved or connected with Spot On.

19       58.    After the Debtor filed for bankruptcy, the Defendant, and many other holders of Spot

20  On Notes, assigned and transferred their Spot On Notes to Affirma, LLC ("Affirma"). On June 28,

21  2023, Affirma filed Proof of Claim No. 91 in the original amount of $66,855,310.45 (as amended the

22  "Affirma Claim").

23       59.    The Trustee has filed a separate adversary against Affirma that seeks to avoid the

24  Debtor's execution of the Spot On Notes as a fraudulent or voidable conveyance under applicable

25  law. This action only seeks to recover the payments made to the Defendant prior to the assignment

26  of the Defendant Note to Affirma. Accordingly, the Court's ruling on the claims asserted against

27  Affirma in its adversary will impact what claims and defense may be asserted in this action.

28

## COUNT ONE

**Avoidance, Recovery, and Preservation of Transfers Made Within the Ninety Day Period**

**Before the Petition Date**

**[11 U.S.C. §§ 547, 550, and 551]**

60.     Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though set forth in full herein.

61.     In the ninety-day period preceding the Petition Date, the Debtor made or caused to be made one or more Transfers to the Defendant (collectively "90 Day Transfers"). These 90 Day Transfers are identified on Exhibit 2.

62.     The 90 Day Transfers were paid to the Defendant on account of a preexisting debt owed to that Defendant.

63.     The 90 Day Transfers were made to or for the benefit of a creditor within the meaning of 11 U.S.C. § 547(b)(1) because the 90 Day Transfers were payments made on account of debts nominally owed by the Debtor.

64.     A transfer of the Debtor's assets occurred when the 90 Day Transfers were paid to the Defendant.

65.     The 90 Day Transfers were made on account of antecedent debt nominally owed by the Debtor to the Defendant due to an "investment" or other document evidencing indebtedness. The Debtor's payment obligations to the transferees constituted a "debt" (as defined in the Bankruptcy Code).

66.     The 90 Day Transfers occurred when the Debtor actually was insolvent. However, Plaintiff is also entitled to the presumption of insolvency when the 90 Day Transfers were made pursuant to 11 U.S.C. § 547(f).

67.     The 90 Day Transfers were made in the ninety-day period before the Petition Date.

68.     To the extent any transfers were made by the Debtor to the Defendant within the ninety-day period preceding the Petition Date and are not identified herein, Plaintiff reserves the right to avoid and recover such transfers pursuant to 11 U.S.C. §§ 547 and 550.

69.     As the holder of an unsecured claim(s) or as party who has not filed a claim, the

payment of the 90 Day Transfers to the Defendant enabled it to recover more than it would have received if: (i) the Debtor's case was under chapter 7 of the Bankruptcy Code; (ii) the 90 Day Transfers had not been made; and (iii) the debts owed to the Defendant upon which payments were made were paid pursuant to the provisions of the Bankruptcy Code. As evidenced by the Debtor's schedules filed in the underlying Bankruptcy Case, as well as the proofs of claim that have been received to date, the Debtor's liabilities exceed its assets to the point that unsecured creditors will not receive a full payout of their claims from the Debtor's bankruptcy estate.

70.    In accordance with the foregoing, the 90 Day Transfers are avoidable pursuant to 11 U.S.C. § 547(b), and may be recovered and preserved for the benefit of the estate pursuant to 11 U.S.C. §§ 550 and 551.

## COUNT TWO

### Avoidance, Recovery, and Preservation of Post-Petition Transfers

### [11 U.S.C. §§ 549, 550, and 551]

71.    Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though set forth in full herein.

72.    This is an action to pursuant to 11 U.S.C. §§ 549 and 550 to avoid and recover unauthorized post-petition transfers made by Debtor to the Defendant ("Post-Petition Transfers").

73.    To the extent any Post-Petition Transfers were made by the Debtor to the Defendant and are not identified herein, Plaintiff reserves the right to amend the Complaint to identify the Post-Petition Transfers and seek the avoidance and recovery of them pursuant to 11 U.S.C. §§ 549 and 550.

74.    Those Post-Petition transfers to Defendant that are known to the Trustee at this time are identified on **Exhibit 2** hereto.

## COUNT THREE

### Avoidance, Recovery, and Preservation of Transfers Made With Intent to Defraud

### [11 U.S.C. §§ 548(a)(1)(B), 550, and 551]

75.    Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though set forth in full herein.

76.    The Transfers were property of the Debtor's Estate prior to their conveyance to the Defendant. The Transfers to the Defendant made within two years of the Petition Date are identified on Exhibit 2 ("Two-Year Transfers").

77.    When the Two-Year Transfers were made, the Debtor was indebted to the Prepetition Creditors and Defendant.

78.    The Two-Year Transfers occurred when the Debtor was insolvent or was rendered insolvent as a result of the Transfers.

79.    The Two-Year Transfers to the Defendant were made with actual intent to hinder, delay or defraud the creditors of Debtor because the Debtor's borrowing through the Spot On Notes was a Ponzi scheme. This fact permits the Court to infer that the Debtor's intent was fraudulent within the meaning of 11 U.S.C. section 548(a)(1).

80.    The Two-Year Transfers are avoidable as fraudulent pursuant to 11 U.S.C. §§ 548(a)(1)(A), 550, and 551 by one or more creditors who held and hold unsecured claims against Debtor that were and are allowable against Debtor's Estate under 11 U.S.C. § 502, or that were not and are not allowable only under 11 U.S.C. § 502(e), including, without limitation, the Prepetition Creditors.

81.    The Two-Year Transfers should be avoided as fraudulent under 11 U.S.C. § 548(a)(1)(A), and such transferred property, or the value thereof, should be recovered and preserved for the benefit of the Estate pursuant to 11 U.S.C. §§ 550 and 551.

## <u>COUNT FOUR</u>

**Avoidance, Preservation, and Recovery of Constructively Fraudulent Two-Year Transfers**

**11 U.S.C. §§ 548(a)(1)(B), 550 & 551**

82.    Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though set forth in full herein.

83.    The Two-Year Transfers were made within two years of the Petition Date.

84.    Debtor did not receive reasonably value in exchange for the Two-Year Transfers because (i) the Debtor was not liable on the debts originally owed to the Defendant, (ii) the debts allegedly owed to Defendant arose from investments in the Debtor or entities related to the Debtor

that were subsequently treated as the Debtor's debt, or (iii) the obligations to the Defendant were usurious and unenforceable as a matter of law.

85.    The Two-Year Transfers were made at a time when Debtor was insolvent and/or rendered insolvent by virtue of said transfers.

86.    When the Two-Year Transfers occurred, Debtor's business was undercapitalized, and Debtor was engaged in business for which its capital was unreasonably small.

87.    When the Two-Year Transfers occurred, Debtor had incurred or was about to incur debts that were beyond its ability to pay. The allegations in the preceding paragraphs are supported by the fact that the Debtor was consistently borrowing money from merchant cash advance lenders, purporting to sell the same groups of receivables to multiple parties, and as of August 2022 had begun a separate Ponzi scheme of borrowing through the Spot On Notes as discussed herein.

88.    At the time each Two-Year Transfer was made, Debtor was indebted to one or more creditors that held a claim against Debtor on the date of each Two-Year Transfer and on the Petition Date.

89.    Plaintiff alleges that Defendants did not receive the Two-Year Transfers in good faith, for value, and without knowledge of their avoidability.

90.    Each Defendant knew that the Debtor was a law firm who was required by law to escrow client payments until earned. Each Defendant knew the terms of their Defendant Note, and Defendant knew or should have known that the terms were usurious.

91.    However, the Transfers paid to Defendant were either made from (i) money borrowed from new lenders in the Spot On Ponzi scheme, or (ii) client payments that had not been placed in trust and earned.

92.    Each Defendant had to know or should have known that they were being paid with funds borrowed from other lenders, or with client funds that had not been placed into trust and been disbursed before they were earned.

93.    Each Defendant knew or should have known that were receiving payment on a debt that was not valid or enforceable at law to the extent it arose from the Defendant Note.

94.    Based on the foregoing, Plaintiff may recover and preserve the avoided Two-Year

1  Transfers from Defendant as the initial transferee or, alternatively, as the subsequent transferee for

2  the benefit of the Estate under 11 U.S.C. §§ 550 and 551 from Defendant.

3  **COUNT FIVE**

4  **Avoidance, Preservation, and Recovery of Transfers Within Four Years**

5  **11 U.S.C. §§ 544, 550, 551; Cal. Civ. Code §§ 3439.04(a)(2), 3439.05 and 3439.07**

6  95.    Plaintiff realleges and incorporates by reference each and every allegation contained

7  in the preceding paragraphs as though set forth in full herein.

8  96.    Under 11 U.S.C. § 544(b)(1), Plaintiff may avoid transfers of an interest of Debtor

9  which are voidable under applicable law by an unsecured creditor of Debtor, including under

10  California Civil Code §§ 3439.04(a)(1) and 3439.05.

11  97.    The Transfers occurred within four years prior to the Petition Date.

12  98.    On or after the date that such Transfer were made, entities to which Debtor was or

13  became indebted include the Prepetition Creditors.

14  99.    Despite Debtor's obligation to the Prepetition Creditors, Debtor made the Transfers to

15  Defendant.

16  100.    The Transfers to Defendant were made with actual intent to hinder, delay or defraud

17  the creditors of Debtor as the Debtor was operating a Ponzi scheme through its borrowing from Spot

18  On.

19  101.    Defendant's conduct relating to the Transfers was done with oppression, fraud and

20  malice, as defined in California Civil Code section 3294, entitling Plaintiff to exemplary and punitive

21  damages.

22  102.    The Transfers are avoidable as fraudulent pursuant to 11 U.S.C. § 544(b) and Cal.

23  Civ. Code §§ 3439.04(a)(1) and 3439.07 by one or more creditors who held and hold unsecured

24  claims against Debtor that were and are allowable against its Estate under 11 U.S.C. § 502 or that

25  were not and are not allowable only under 11 U.S.C. § 502(e), including, without limitation, the

26  Prepetition Creditors.

27  103.    Accordingly, the Transfers should be avoided as fraudulent under 11 U.S.C. §§ 544(b)

28  and Cal. Civ. Code §§ 3439.04(a)(1) and 3439.07, and such transferred property, or the value thereof,

1    should be recovered and preserved for the benefit of the Estate pursuant to 11 U.S.C. §§ 550 and 551

2    and Cal. Civ. Code § 3439.07.

3        104.    Under 11 U.S.C. § 544(b)(1), Plaintiff may avoid transfers of an interest of Debtor

4    which are voidable under applicable law by an unsecured creditor of Debtor, including under

5    California Civil Code §§ 3439.04(a)(2) and 3439.05.

6        105.    Debtor did not receive reasonably equivalent value in exchange for the Transfers. The

7    Transfers were made to (i) entities that were not creditors of the Debtor, (ii) entities that had made

8    equity or other investments with the Debtor or in assets, (iii) the Defendant pursuant to an illegal

9    agreement, and/or (iv) entities who claimed to be owed far more than any value that was ever given

10    to the Debtor.

11        106.    The Transfers were made at a time when Debtor was insolvent and/or rendered

12    insolvent by virtue of said transfers.

13        107.    At the time each Transfer was made, Debtor was engaged or was about to engage in a

14    business or a transaction for which the remaining assets of Debtor were unreasonably small in relation

15    to the business or transaction.

16        108.    At the time each Transfer was made, Debtor intended to incur, or believed or

17    reasonably should have believed that Debtor would incur, debts beyond Debtor's ability to pay as

18    they became due.

19        109.    At the time each Transfer was made, Debtor was indebted to one or more creditors

20    that held a claim against Debtor on the date of each Transfer and on the Petition Date.

21        110.    Plaintiff alleges that Defendants did not receive the Transfers in good faith, for value,

22    and without knowledge of their avoidability.

23        111.    Defendant knew that the Debtor was a law firm who was required by law to escrow

24    client payments until earned. However, Defendant received payment either from (i) funds borrowed

25    from another lender, or (ii) from client payments that had not been placed in trust and earned.

26        112.    Each Defendant knew or should have known that were receiving payment on a debt

27    that was not valid or enforceable at law to the extent it arose from the Defendant Note.

28        113.    Based on the foregoing, Plaintiff may avoid the Transfers pursuant to 11 U.S.C. § 544

and California Civil Code §§ 3439.04(a)(2) and 3439.05.

114.    Based on the foregoing, Plaintiff may recover and preserve the Transfers from the Defendants as the initial transferee or, alternatively, as the subsequent transferee for the benefit of the Estate pursuant to 11 U.S.C. §§ 550 and 551, and Cal. Civ. Code § 3439.07.

### COUNT SIX

**Avoidance, Recovery, and Preservation of Transfers Made Within Four Years**

**[11 U.S.C. §§ 544(b), 550, and 551; Cal. Civ. Code §§ 3439.05, and 3439.07]**

115.    Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though set forth in full herein.

116.    Under 11 U.S.C. § 544(b)(1), Plaintiff may avoid transfers of an interest of Debtor which are voidable under applicable law by an unsecured creditor of Debtor, including under California Civil Code §§ 3439.04(a)(2) and 3439.05.

117.    Debtor did not receive reasonably equivalent value in exchange for the Transfers as (i) the Debtor was not liable on the debts owed to Defendant, (ii) the debts allegedly owed to Defendant arose from equity investments in entities related to the Debtor that were subsequently treated as the Debtor's debt, (iii) the Defendant pursuant to an illegal agreement, and/or (iv) entities who claimed to be owed far more than any value that was ever given to the Debtor.

118.    The Transfers were made at a time when Debtor was insolvent and/or rendered insolvent by virtue of said transfers.

119.    At the time each Transfer was made, Debtor was engaged or was about to engage in a business or a transaction for which the remaining assets of Debtor were unreasonably small in relation to the business or transaction.

120.    At the time each Transfer was made, Debtor intended to incur, or believed or reasonably should have believed that Debtor would incur, debts beyond Debtor's ability to pay as they became due.

121.    At the time each Transfer was made, Debtor was indebted to one or more creditors that held a claim against Debtor on the date of each Transfer and on the Petition Date.

122.    Plaintiff alleges that Defendant did not receive the Transfers in good faith, for value,

1  and without knowledge of their avoidability.

2      123.    Defendant knew that the Debtor was a law firm who was required by law to escrow

3  client payments until earned. However, Defendant received payment either from (i) funds borrowed

4  from another lender, or (ii) from client payments that had not been placed in trust and earned.

5      124.    Defendant knew or should have known that were receiving payment on a debt that

6  was not valid or enforceable at law to the extent it arose from the Defendant Note.

7      125.    Based on the foregoing, Plaintiff may avoid the Transfers pursuant to 11 U.S.C. § 544

8  and California Civil Code §§ 3439.04(a)(2) and 3439.05.

9      126.    Based on the foregoing, Plaintiff may recover and preserve the Transfers from the

10  Defendants as the initial transferee or, alternatively, as the subsequent transferee for the benefit of the

11  Estate pursuant to 11 U.S.C. §§ 550 and 551, and Cal. Civ. Code § 3439.07.

12      WHEREFORE, Plaintiffs prays for a judgment as follows:

13  **<u>On the First, Second, Third, Fourth, Fifth, and Sixth Counts</u>:**

14      1.    Avoiding recovering, and preserving the Transfers to the Defendant in such amounts

15  as the Court may determine based on applicable law;

16      2.    Awarding pre-judgment and post-judgment as permitted;

17      3.    Granting any other and such further relief as the Court deems just and proper.

18  DATED: March 17, 2025                    DINSMORE AND SHOHL LLP

19

20                              By: */s/ Tyler Powell*
                                    Yosina M. Lissebeck
21                                  Tyler Powell (*admitted pro hac vice*)
                                    Special Counsel to Richard A. Marshack, Trustee
                                    of the LPG Liquidation Trust

22

23

24

25

26

27

28

# EXHIBIT 1

Exhibit 1
Page 21

1  CHRISTOPHER B. GHIO (259094)
   christopher.ghio@dinsmore.com
2  CHRISTOPHER CELENTINO (131688)
   christopher.celentino@dinsmore.com
3  YOSINA M. LISSEBECK (201654)
   yosina.lissebeck@dinsmore.com
4  DINSMORE & SHOHL LLP
5  655 West Broadway, Suite 800
   San Diego, California 92101
6  Tele:  619.400.0500
7  Fax:   619.400.0501

8  Sarah S. Mattingly (Ky. Bar 94257)
   sarah.mattingly@dinsmore.com
9  DINSMORE & SHOHL, LLP
   101 S. Fifth Street, Suite 2500
10 Louisville, Kentucky 40202
   Tele: 859-425-1096
11 Fax: 502-585-2207
12 (Admitted pro hac vice)

13 Special Counsel to Richard A. Marshack

**FILED & ENTERED**

**JUN 03 2024**

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY mccall    DEPUTY CLERK

14              **UNITED STATES BANKRUPTCY COURT**

15       **CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION**

16 | In Re | Case No: 23-bk-10571-SC |
|---|---|

17 Chapter 11

18
19 The Litigation Practice Group P.C.,    **ORDER GRANTING MOTION FOR**
                                          **ENTRY OF PROTECTIVE ORDER AND**
                                          **THE PROTECTIVE ORDER**
20              Debtor(s),

21                                        Date:    May 23, 2024
22                                        Time:    1:30 p.m.
                                          Judge:   Hon. Scott C. Clarkson
23                                        Place:   Courtroom 5C (via Zoom)[1]
                                                   411 West Fourth Street
24                                                 Santa Ana, CA 92701
25
26
27  _____

28  [1] Video and audio connection information for each hearing will be provided on Judge Clarkson's
    publicly posted hearing calendar, which may be viewed online at:
    http://ecf-ciao.cacb.uscourts.gov/CiaoPosted/?jid=SC.

Exhibit 1
Page 22

The Court has read and considered the Notice of Motion and Motion for Entry of Protective Order (the "Motion") filed by Richard A. Marshack, in his capacity as the Chapter 11 Trustee (the "Trustee") of the Bankruptcy Estate ("Estate") of The Litigation Practice Group P.C., on May 2, 2024, pursuant to Federal Rule of Bankruptcy Procedure 7026 and Federal Rule of Civil Procedure 26(c)(1), as Dk. No. 1164 ("Motion"), and has found good cause to grant the Motion.

IT IS HEREBY ORDERED that:

1.      The Motion is granted;

2.      The below Protective Order shall apply to any contested matter arising in the main bankruptcy case and in all adversary proceedings filed by or against Trustee, present and future; and

3.      Govern the discovery conducted therein.

## PROTECTIVE ORDER

**1.    DEFINITIONS**

1.1     "Confidential Information" as used in this Protective Order shall mean documents and other information (regardless of how generated, stored or maintained) that a Party or non-party reasonably believes to contain or reflect non-public financial or business information, bank records, financial records, such as social security numbers, non-public financial or personal information of a Party or non-party, account numbers, sensitive digital information and identifiers, information subject to confidentiality agreements or provisions other than this Protective Order, and other non-public research, development, or commercial information that derives value or avoids injury by virtue of not being known to the public.

1.2     This "Action" is defined and hereby means any contested matter arising in the main bankruptcy case and in all adversary proceedings filed by or against Trustee, present and future.

1.3     "Designating Party" means a Party or non-party that designates Confidential Information during the Action.

1.4     "Receiving Party" means a Party that receives Confidential Information during the Action.

Exhibit 1
Page 23

1.5 "Party" or "Parties" means person or entity subject to this Protective Order.

**2.  SCOPE OF THIS PROTECTIVE ORDER**

2.1 Unless otherwise ordered, this Protective Order shall govern certain documents and other products of discovery obtained in the Action from the Parties there to, and from third parties. As well as certain information copied or derived therefrom, excerpts, summaries or compilations thereof, including, but not limited to, documents voluntarily exchanged as part of early settlement discussions, documents produced pursuant to initial disclosures, requests authorized by the Federal Rules of Civil Procedure made applicable herein by the Federal Rules of Bankruptcy Procedure, answers to interrogatories, deposition transcripts, responses to requests for production, responses to requests for admission, subpoenas, affidavits, declarations, expert reports, and other such material and information as may be produced during the course of the Action and designated as Confidential Information.

**3.  DESIGNATION OF CONFIDENTIAL INFORMATION**

3.1 This Protective Order shall govern the production and handling of any Confidential Information in this Action. Any Party or non-party who produces Confidential Information in this Action may designate it as "Confidential" or "Attorneys' Eyes Only" consistent with the terms of this Protective Order. Whenever possible, the Designating Party must designate only those portions of a document, written discovery responses, deposition, transcript, or other material that contain the Confidential Information and refrain from designating entire documents. Regardless of any designations made hereunder, the Designating Party is not otherwise restricted from use or disclosure of its Confidential Information outside of this Action or for any business purposes. In addition, any Party may move to modify or seek other relief from any of the terms of this Protective Order if it has first tried in writing and in good faith to resolve its needs or disputes with the other Parties or Party as the case may be under the terms of this Protective Order. Further, nothing in this Protective Order shall prevent a Party from redacting documents consistent with the Federal Rules of Civil Procedure and utilizing the documents as needed through-out the Action.

3.2 <u>Application to Non-Parties:</u> Before a non-party is given copies of documents or materials designated as Confidential Information or Attorneys' Eyes Only as permitted hereunder, it

Exhibit 1
Page 24

must first sign an acknowledgment to be bound to these terms that is attached hereto as <u>Exhibit</u> A; if it fails to do so, the Parties to this Action must resolve any such dispute before making disclosure of designated information as permitted hereunder to the non-party. If a non-party wishes to make designations hereunder, it must first sign attached <u>Exhibit A.</u>

3.3     <u>Timing and Provisional Protection:</u> Designations of Confidential Information may be made at any time. To avoid potential waiver of protection hereunder, the Designating Party should designate documents or materials containing Confidential Information at the time of production or disclosure, including on the record during the taking of any deposition. Deposition testimony will be deemed provisionally protected for a period of thirty (30) days after the transcript is released to the Parties by the court reporter, although the Parties may agree at any time to different timelines of provisional protection of information as Confidential or Attorneys' Eyes Only as part of one or more specific depositions. To retain any designations beyond the provisional period, a Designating Party must designate specific pages and lines of deposition testimony before the provisional period has expired. Such designations must be made in writing so that all counsel and court reporters may append the designation to all copies of the transcripts.

3.4     <u>Manner of Designation:</u> Confidential Information may be designated hereunder in any reasonable manner or method that notifies the Receiving Party of the designation level and identifies with specificity the information to which the designation applies. If made verbally, the Designating Party must promptly confirm the designation in writing. Whenever possible, the Designating Party should stamp, affix, or embed a legend of "CONFIDENTIAL" or "ATTORNEYS' EYES ONLY" on each designated page of the document or electronic image that contains Confidential Information.

**4.     CHALLENGES TO DESIGNATED INFORMATION**

4.1     In the event that a Receiving Party disagrees at any time with any designation(s) made by the Designating Party, the Receiving Party must first try to resolve such challenge in good faith on an informal basis with the Designating Party. The Receiving Party must provide written notice of the challenge and the grounds therefor to the Designating Party, who must respond in writing to the challenge within fifteen (15) days. At all times, the Designating Party carries the burden of establishing the propriety of the designation and protection level. Unless and until the challenge is

4

Exhibit 1
Page 25

1  resolved by the Parties or ruled upon by the Court, the designated information shall remain protected

2  under this Protective Order. The failure of any Receiving Party to challenge a designation does not

3  constitute a concession that the designation is proper or an admission that the designated information

4  is otherwise competent, relevant, or material.

5      **5.**      **LIMITED ACCESS/USE OF PROTECTED INFORMATION**

6      5.1      <u>Restricted Use:</u> Information that is produced or exchanged in the course of the Action

7  and designated under this Protective Order may be used for preparation for trial and preparation for

8  any appeal of any and all matters in the Action, as well as related settlement negotiations, and for no

9  other purpose, without the written consent of the Designating Party. No Confidential Information may

10  be disclosed to any person except in accordance with the terms of this Protective Order, unless the

11  parties are co-counsel or have entered into joint defense agreements. All persons in possession of

12  Confidential Information agree to exercise reasonable care with regard to the custody, use, or storage

13  of such information to ensure that its confidentiality is maintained. This obligation includes, but is

14  not limited to, the Receiving Party providing to the Designating Party prompt notice of the receipt of

15  any subpoena that seeks production or disclosure of any designated information and consulting with

16  the Designating Party before responding to the subpoena. Any use or disclosure of Confidential or

17  Attorneys' Eyes Only information in violation of the terms of this Protective Order may subject the

18  disclosing person or party to sanctions.

19      5.2      <u>Access to "Confidential" Information:</u> The Party(ies) and all persons subject to this

20  Protective Order agree that information designated as "CONFIDENTIAL" may only be accessed or

21  reviewed by the following:

22      a)      The Court, its personnel, and court reporters;

23      b)      Counsel of record, or co-counsel for any Party, or other party that has entered into a

24  joint defense agreement in the Action and their employees who assist counsel of record, or co-counsel

25  in the Action and are informed of the duties and obligations imposed hereunder;

26      c)      The Parties, including their clients, agents and employees who are assisting or have

27  reason to know of the Action;

28  / / /

d)      Experts or consultants employed by the Parties or their counsel, or co-counsel, for purposes of an Action, so long as each such expert or consultant has signed attached Exhibit A; and

e)      Other witnesses or persons with the Designating Party's consent or by court order.

5.3      Access to "Attorneys' Eyes Only" Designations: The Parties and all persons subject to this Protective Order agree that information designated as "ATTORNEYS' EYES ONLY" may only be accessed or reviewed by the following:

a)      The Court, its personnel, and court reporters;

b)      Counsel of record, or co-counsel for any Party, or other party that has entered into a joint defense agreement in the Action and their employees who assist counsel of record in the Action and are informed of the duties hereunder;

c)      In-house counsel for any Party in the Action and Richard A. Marshack, as Chapter 11 Trustee of The Litigation Practice Group P.C. who is informed of the duties and obligations imposed hereunder;

d)      Experts or consultants employed by the Parties or their counsel, or co-counsel for purposes of the Action,  and so long as each such expert or consultant has signed attached Exhibit A; and

e)      Other witnesses or persons to whom the Designating Party agrees in advance of disclosure or by court order.

5.4      Non-Waiver Effect of Designations: Neither the taking of, nor the failure to take, any action to enforce the provisions of this Protective Order, nor the failure to object to any designation, will constitute a waiver of any Party(ies)'s claim or defense in the Action or any other action or proceeding, including, but not limited to, a claim or defense that any designated information is or is not Confidential, is or is not entitled to particular protection, or embodies or does not embody information protectable by law.

5.5      In-Court Use of Designated Information: If information designated under this Protective Order will or may be offered in evidence at a hearing or trial related to any matter in the Action, then the offering party must give advance notice to the party or non-party that designated prior to offering the information so that any use or disclosure may be addressed in accordance with

the Court's case-management or other pre-trial order, or by a motion *in limine.* Nothing in this Protective Order shall be construed as a waiver by a Party of any objections that may be raised as to the admissibility at trial of any evidentiary materials.

6. **CLAW-BACK REQUESTS**

6.1    <u>Failure to Make Designation:</u>  If, at any time, a Party or non-party discovers that it produced or disclosed Confidential Information without designation, it may promptly notify the Receiving Party and identify with particularity the Confidential Information to be designated and the level of designation (the claw-back notification). The Receiving Party may then request substitute production of the newly-designated information. Within thirty (30) days of receiving the claw-back notification, the Receiving Party must: (1) certify to the Designating Party it has appropriately marked or, if substitute production has been requested, destroyed all unmarked copies that it received, made, and/or distributed; and (2) if it was practicably unable to mark or destroy any information because disclosures occurred while the Receiving Party was under no duty of confidentiality under the terms of this Protective Order regarding that information, the Receiving Party must reasonably provide as much information as practicable to aid the Designating Party in protecting the information, consistently with the Receiving Party's attorney-client, work-product, and/or trial-preparation privileges.

6.2    <u>Inadvertent Production of Privileged Information:</u> If, at any time, a Party discovers that it produced information that it reasonably believes is subject to protection under the attorney/client, work-product, or trial-preparation privileges, then it must promptly notify each Receiving Party of the claim for protection, the basis for it, amend its privilege log accordingly, and comply with Fed. R. Civ. P. 26(b)(5). Whenever possible, the producing party must produce substitute information that redacts the information subject to the claimed protection. The Receiving Party must thereupon comply with Fed. R. Civ. P. 26(b)(5)(B) as to the information subject to the claimed protection.

/ / /

/ / /

/ / /

**7.    DURATION/CONTINUED RESTRICTIONS**

7.1    <u>Handling of Designated Information Upon Conclusion of the Main Bankruptcy Case:</u>
Upon conclusion of the Main Bankruptcy Case, by way of dismissal or closing of the case, the
Designating Party(ies) is/are responsible for ensuring that any Party or person to whom the
Designating Party shared or disclosed designated information in any of the matters under the Action
returns or destroys all of its copies, regardless of the medium in which it was stored. No witness or
Party may retain designated information that it received from any other Party or non-party under this
Protective Order; only counsel of record, or co-counsel, are the authorized agents who may retain one
copy for their respective legal files, and who must also describe to the Designating Party the extra
steps taken to protect its legal file containing paper and/or electronic copies of the designated
information so that it is not accessed, used, or disclosed inconsistently with the obligations under this
Protective Order. This provision does not apply to the Court or Court staff. Moreover, this provision
does not apply to Trustee, who may retain and use – consistent with this Order – Confidential
Information received in any Action during the entirety of the Bankruptcy.

7.2    <u>Continued Restrictions Under this Protective Order:</u> The restrictions on disclosure and
use of Confidential Information shall survive the conclusion of the Bankruptcy case and any matter
in the Action.

**8.    PRIVILEGED OR PROTECTED INFORMATION**

8.1    Nothing in this Protective Order shall require disclosure of information that is
protected by the attorney-client privilege, the work-product protection, or any other legally cognizable
privilege (a "Privilege or Protection").  If information subject to a claim of Privilege or Protection is
inadvertently produced, pursuant to Federal Rule of Evidence 502(d) such production shall not
constitute a waiver of, or estoppel as to, any claim of Privilege or Protection for such information or
any other information that may be protected from disclosure by a Privilege or Protection in any
proceeding.

8.2    If a Party receives a document that appears to be subject to a Privilege or Protection,
then it shall refrain from examining the document any more than is essential to ascertain if it is
privileged or protected and shall promptly notify the producing Party in writing that the receiving

8

Exhibit 1
Page 29

Party possesses material that appears to be subject to a Privilege or Protection. The producing Party shall have seven (7) days after receiving such notice to assert a Privilege or Protection over the identified material. If the producing Party does not assert a claim of Privilege or Protection within the seven (7)-day period, the material in question shall be deemed not privileged or protected.

8.3     If a producing Party has produced a document subject to a claim of Privilege or Protection, upon written request by the producing Party, the document for which a claim of Privilege or Protection is made shall be sequestered or destroyed to the extent reasonably practicable, and the receiving Party shall not use the document for any purpose other than in connection with analyzing or disputing a claim of Privilege or Protection or in connection with a motion to compel the production of the document.

8.4     The receiving Party sequestering or destroying such material may then move the Court for an order compelling production of the material. The applicable producing Party bears the burden of establishing the applicable Privilege or Protection of any clawed-back document or information as and to the same extent that it would have borne such burden had it not produced the document or information.  Nothing in this Protective Order shall limit the Court's right or any receiving Party's right to request an in camera review of any information subject to a claim of Privilege or Protection.

###

Date: June 3, 2024

Scott C. Clarkson
United States Bankruptcy Judge

Exhibit 1
Page 30

EXHIBIT "A"

1  Christopher B. Ghio (State Bar No. 259094)
   Christopher Celentino (State Bar No. 131688)
2  Yosina M. Lissebeck (State Bar No. 201654)
   **DINSMORE & SHOHL LLP**
3  655 West Broadway, Suite 800
   San Diego, CA 92101
4  Telephone:  619.400.0500
   Facsimile:  619.400.0501
5  christopher.ghio@dinsmore.com
   christopher.celentino@dinsmore.com
6  yosina.lissebeck@dinsmore.com

7  Sarah S. Mattingly (Ky. Bar 94257)
   DINSMORE & SHOHL, LLP
8  101 S. Fifth Street, Suite 2500
   Louisville, KY 40202
9  Telephone: 859-425-1096
   Facsimile: 502-585-2207
10 Sarah.mattingly@dinsmore.com
   (Admitted pro hac vice)

11
   Special Counsel to Richard A. Marshack,
12 Chapter 11 Trustee

13

14                    **UNITED STATES BANKRUPTCY COURT**

15                    **CENTRAL DISTRICT OF CALIFORNIA**

16

17 In Re                          | Case No. 8:23-BK-10571-SC

18                                   Chapter 11

19 The Litigation Practice Group P.C.,  **EXHIBIT A TO STIPULATED
20                                       ORDER**
              Debtor(s),
21                                   Date:   May 23, 2024
22                                   Time:   1:30 p.m.
                                     Judge:  Hon. Scott C. Clarkson
23                                   Place:  Courtroom 5C[1] - Via Zoom
24                                           411 W. Fourth Street
                                             Santa Ana, CA  92701
25

26

27 _____

28 [1] Video and audio connection information for each hearing will be provided on Judge Clarkson's
   publicly posted hearing calendar, which may be viewed online at:
   http://ecf-ciao.cacb.uscourts.gov/CiaoPosted/?jid=SC.

                                   1                    Exhibit 1
                                                        Page 32

This is to certify that:

(a)      I am being given access to Confidential Information pursuant to the Stipulated Protective Order that was entered into the main bankruptcy case for Litigation Practice Group, but which is binding and controlling as set forth by the Court's Order on any and all contested matters and  any and all litigation commenced by Trustee;

(b)      I have read the Stipulated Protective Order; and

(c)      I agree to be bound by the terms and conditions thereof, including, without limitation, to the obligations regarding the use, non-disclosure and return of such Confidential Information. I further agree that in addition to being contractually bound by the Stipulated Protective Order, I am subject to the jurisdiction of the above reference Court for any violation thereof.

Date: _____

_____
Signature

_____
Printed Name

# EXHIBIT 2

Exhibit 2
Page 34

| Date | Account | Payee | Amount | 90 Day Transfer | Post-Petition Transfer |
|---|---|---|---|---|---|
| 1/6/2023 | Spot On Acct No. #7662 | Brianolsen (#####9893) | $17,500.00 | Y | N |
| 1/12/2023 | Spot On Acct No. #7662 | Brianolsen (_######9893) | $1,750.00 | Y | N |
| 1/19/2023 | Spot On Acct No. #7662 | Brianolsen (_######9893) | $22,500.00 | Y | N |
| 1/26/2023 | Spot On Acct No. #7662 | Brianolsen (_######9893) | $2,625.00 | Y | N |
| 2/9/2023 | Spot On Acct No. #7662 | Brianolsen (_######9893) | $5,000.00 | Y | N |
| 2/16/2023 | Spot On Acct No. #7662 | Brianolsen (_######9893) | $22,500.00 | Y | N |
| 2/23/2023 | Spot On Acct No. #7662 | Brianolsen (_#0O9893) | $2,625.00 | Y | N |
| 3/9/2023 | Spot On Acct No. #7662 | Brianolsen (_######9893) | $5,000.00 | Y | N |
| 3/20/2023 | Spot On Acct No. #7662 | Brianolsen (_######9893) | $22,500.00 | Y | N |
| 3/27/2023 | Spot On Acct No. #7662 | Brianolsen (_######9893) | $2,625.00 | N | Y |
|  |  |  |  |  |  |
|  |  | **Total** | **$104,625.00** |  |  |
|  |  |  |  |  |  |
| **Post-Petition Payments** |  |  |  |  |  |
|  |  |  |  |  |  |

| Account Name | Account Number | Date | Amount | Payee | Post-Petition Transfer |
|---|---|---|---|---|---|
| Vulcan Consulting Group LLC dba DRD | X9551 at BoA | 5/8/2023 | $15,000.00 | Brian Olsen | Y |
| Vulcan Consulting Group LLC dba DRD | X9551 at BoA | 5/26/2023 | $20,000.00 | Brian Olsen | Y |
|  |  |  |  |  |  |
|  |  | **Total** | **$35,000.00** |  |  |

Exhibit 2
Page 35

# Adversary Cover Sheet

B1040 (FORM 1040) (12/24)

| ADVERSARY PROCEEDING COVER SHEET (Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER (Court Use Only) |
|---|---|

| **PLAINTIFFS** Richard A. Marshack, Trustee of the LPG Liquidation Trust | **DEFENDANTS** Brian Olsen, a California resident; Olsenite, LLC, a California limited liability company |
|---|---|

| **ATTORNEYS** (Firm Name, Address, and Telephone No.) Yosina M. Lissebeck (SBN 201654) Tyler Powell (Ky. Bar No. 90520) (*Admitted pro hac vice*) DINSMORE & SHOHL LLP 655 West Broadway, Suite 800 San Diego, CA 92101    Telephone (619) 400-0500 yosina.lissebeck@dinsmore.com tyler.powell@dinsmore.com | **ATTORNEYS** (If Known) |
|---|---|

| | **PARTY** (Check One Box Only) ☐ Debtor   ☐ U.S. Trustee/Bankruptcy Admin ☐ Creditor   ☐ Other ☐ Trustee |
|---|---|

**PARTY** (Check One Box Only)
☐ Debtor   ☐ U.S. Trustee/Bankruptcy Admin
☐ Creditor   ☐ Other
☒ Trustee

---

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

((1) Avoidance, Recovery, and Preservation of Transfers Made Within the Ninety Day Period Before the Petition Date; (2) Avoidance, Recovery, and Preservation of Post-Petition Transfers; (3) Avoidance, Recovery, and Preservation of Transfers Made With Intent to Defraud; (4) Avoidance, Preservation, and Recovery of Constructively Fraudulent Two-Year Transfers; (5) Avoidance, Preservation, and Recovery of Transfers Within Four Years ; and (6) Avoidance, Recovery, and Preservation of Transfers Made Within Four Years

---

**NATURE OF SUIT**

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(a) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☒ 12-Recovery of money/property - §547 preference
☒ 13-Recovery of money/property - §548 fraudulent transfer
☒ 14-Recovery of money/property - other

**FRBP 7001(b) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(c) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(d) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(e) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(f) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

(continued next column)

**FRBP 7001(f) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(g) – Injunctive Relief**
☐ 71-Injunctive relief- imposition of stay
☐ 72-Injunctive relief - other

**FRBP 7001(h) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(i) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(j) Determination of Removed Action**
☐ 01-Determination of remove d claim or cause

**Other**
☐ SS-SIPA Case - 15 U.S.C. §§78aaa *et.seq.*
☒ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

---

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ 139,625.00 |
| Other Relief Sought | |

B1040 (FORM 1040) (12/24)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>The Litigation Practice Group P.C. | BANKRUPTCY CASE NO.<br>8:23-bk-10571-SC | |
| DISTRICT IN WHICH CASE IS PENDING<br>Central District of California | DIVISION OFFICE<br>Santa Ana | NAME OF JUDGE<br>Scott C. Clarkson |
| **RELATED ADVERSARY PROCEEDING (IF ANY)** | | |
| PLAINTIFF | DEFENDANT | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br>/s/ Tyler Powell | | |
| DATE<br>March 17, 2025 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Yosina M. Lissebeck<br>Tyler Powell (admitted pro hac vice)<br>Special Counsel to Richard A. Marshack, Trustee of the LPG<br>Liquidation Trust | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.