**EXHIBIT "1"**

## The Litigation Practice Group PC - Affiliate Agreement

THIS AGREEMENT (the "Agreement") is made and effective as of the 30th day of September, 2022 by and between The Litigation Practice Group PC ("LPG") and **Debt Relief Group LLC** (hereinafter "Affiliate").

RECITALS:

LPG is in the business of providing a package debtor's rights services in the form of debt validation, consultation, and litigation defense through a network of attorneys licensed to practice law in all 50 states and the District of Columbia.  The legal services offered include:

- Removal of invalid debts through correspondence directly with the three credit bureaus;
- Validation of consumer debts through correspondence including disputes with original creditors, validation demands to third party debt collectors and assignees, and disputes with all three credit bureaus;
- Defense of collection actions initiated by original creditors or third party assignees;
- Negotiation of advantageous settlements of consumer debts both pre and post litigation;
- Education of clients regarding federal laws applicable to consumer debt and credit reporting, and consultation regarding risk mitigation and litigation defense through its network of attorneys across the country.

Each of these services is offered without regard to the identity of the creditor or third-party debt collector or assignee.  LPG reviews all client files prior to the execution of the client's legal services agreement with the appropriate law firm, and maintains oversight through its administrative services over all file placements.

Affiliate owns and operates a system of generating leads consisting of consumers interested in the legal services offered by LPG.  Affiliate, acting in accordance with direction from LPG, shall obtain the names of Consumers and will market in a lawful manner, complying with the restrictions of the jurisdiction in which the consumer resides.  For consumers interested in utilizing LPG's services, Affiliate will assist LPG in having consumers execute an approved legal services agreement with a law firm to which LPG provides administrative support services, at which point consumers will become clients of that law firm, and that law firm will be exclusively responsible for and liable for the representation of consumers in the context of the provision of legal services.  Nothing in this Agreement nor in the eventual legal services agreement shall restrict Affiliate from offering any other service of any kind to consumer, including credit repair or debt relief programs.  Nor is Affiliate restricted from marketing on behalf of credit repair or debt relief entities, including but not limited to other law firms.  LPG and Affiliate hereby agree that any and all prior agreements entered into by LPG and Affiliate or any law firm to which LPG provides administrative support services and Affiliate are null and void and unenforceable, and this Agreement shall become the operative agreement for all files previously placed through the use of LPG's administrative support services.

Affiliate is being retained by LPG to provide marketing and customer service functions only.  All payments made to Affiliate are for services actually rendered, and do not constitute a revenue or fee sharing agreement.  The method used to determine the value of the services rendered by Affiliate to LPG were



DocuSign Envelope ID: 2DEB355C-4C9B-4737-97SF-DA9B12E38790

selected by both parties based upon industry standard and effective valuation, and not for any other purpose.

LPG and Affiliate hereby agree to the following:

1.      Each Party shall be solely responsible for bearing its own costs and expenses incurred in performing its responsibilities under this Agreement, including all tariffs, filings, licensing and/or other fees.

2.      Affiliate shall comply with state and federal laws in communicating with consumers regarding LPG, any law firm utilized by LPG, or any of the programs of LPG or the assigned law firm.

3.      Both LPG and the law firm it utilizes shall comply with all state and federal laws in performing its obligations under the legal services agreement entered into between LPG and the consumers referred by Affiliate.

4.      If requested by LPG, Affiliate shall provide a copy of all marketing materials to LPG upon receiving a request from LPG.  Affiliate shall endeavor to provide such materials within 10 business days of such request, but may provide such materials in any time frame that is commercially reasonable.

5.      Affiliate agrees to keep any and all documents or communications between itself and LPG confidential pursuant to the provisions set forth below, and shall not share of disclose such documents to any party with prior, express written consent.

6.      Affiliate shall be entitled to receive the following as full and complete compensation for its services to LPG: LPG shall pay 65% per file for each file that Affiliate places with LPG, not counting the monthly maintenance fee of $96.38, which LPG shall retain to cover administrative costs for each file.  LPG shall calculate the amount of each file, apply the above-identified percentage fee, and remit the same to Affiliate pursuant to an agreed-upon schedule not to exceed one remittance per seven (7) calendar days.  If any consumer cancels LPG's services, or demands a refund for payment for such services, or both, then LPG shall be solely responsive for such cost and Affiliate shall not have to share such expense.  LPG has exclusive discretion to grant or deny a requested refund or cancellation.  Finally, LPG may treat a consumer's failure to remit payment in a timely manner as a cancellation of the legal services agreement executed by consumer with LPG, and has sole discretion to make such determination.

7.      LPG shall bear all expenses related to the services it offers to consumers, and Affiliate shall bear all expenses related to its marketing of the same except as is set forth in this Paragraph.  Neither LPG nor Affiliate shall be required to pay the expenses of the other.

8.      LPG reserves all rights with regard to rejection or cancellation of a consumer, but will do so only in accordance with the recommendation of the law firm utilized in providing such service, and only subject to the applicable state bar rules for such representation.

9.      This agreement shall continue to operate and bind LPG and Affiliate for a period of twelve (12) months from the date of execution of this Agreement.  At that time, this Agreement will automatically renew until either party sends written notice of cancellation of this Agreement, which shall be effective

30 days after LPG or Affiliate postmarks or emails a cancellation letter stating the intent of that party to terminate this Agreement.  If such cancellation letter is sent by either party, it shall be effective 30 days from the date of postmark or email, and shall terminate this Agreement and release either party from the obligations contained herein.

10.     If either party shall default under this Agreement, defined as a failure to comply with any of the obligations set forth above, the Agreement shall terminate following notice of default and a cure period of 30 days from the date postmarked on the notice of default.  The notice of default must state with specificity the act of default alleged.

11.     Upon termination of this Agreement for any reason whatsoever, LPG and Affiliate will refrain from making any disparaging or negative comment, remark, statement, or implication, whether written or oral.

12.     The confidential information of LPG or Affiliate shall include information regarding contracts, customer or client lists or information, hardware, software, screens, specifications, designs, plans, drawings, data, prototypes, discoveries, research, developments, methods, processes, procedures, improvements, 'Know-how', compilations, market research, marketing techniques and plans, marketing materials, business plans and strategies, documents, scripts, guidelines, price lists, pricing policies and financial information or other business and/or technical information and materials, in oral, demonstrative, written, graphic or machine-readable form, which is unpublished, not available to the general public or trade, and which is maintained as confidential and proprietary information by the disclosing party for regulatory, customer relations, and/or competitive reasons.  Neither LPG nor Affiliate may disclose the confidential information of the other with the express written consent of the other.  A failure to abide by this confidentiality term shall entitle the party whose confidential information was compromised to a reasonable sum not less than $50,000.00, nor more than $200,000.00.  The disclosure of information in connection with a judicial proceeding shall not constitute a violation of this term.  The parties agree to notify the other if any inadvertent disclosure of information occurs within 48 hours of becoming aware of such disclosure.  The parties agree to work together in good faith to remediate any disclosure of confidential information.  A party whose confidential information is disclosed shall be entitled to injunctive relief in any court of competent jurisdiction.

13.     If, after the passage of six months of the date of this Agreement, Affiliate fails, in any one calendar month, to have at least fifty (50) active consumers, LPG shall withhold 20% of the fees due to Affiliate for said month in an escrow account.  Such fees shall be held in escrow until, in a single calendar month, Affiliate has fifty (50) or more active consumers, at which point, within five (5) business days of the end of such calendar month, LPG shall transfer the balance of such escrow account to Affiliate and retain nothing in such escrow account.  If Affiliate shall cease operations for any reason, or this Agreement shall terminate for any reason, Affiliate will continue to receive fees due to it under this Agreement until all active consumers have completed or withdrawn from the program, at which point any remaining amounts being held in escrow shall be released to Affiliate in full.

14.     Affiliate agrees not to use the name LPG or any law firm  in any advertising, publicity release, or sales presentation designed to promote Affiliate's service, unless LPG provides prior written consent to such specific use.

3



15.	Any fees incurred by LPG in connection with a customer's Non-Sufficient Funds ("NSF") fee shall be borne exclusively by LPG.

16.	This Agreement may not be assigned or transferred without the prior written consent of the other. This Agreement shall be binding upon and shall inure to the benefit of the Parties and their respective successors and assigns.

17.	In the event of a breach, the prevailing party shall be entitled to reasonable attorneys' fees and collection costs, including all fees and costs on appeal.

18.	This Agreement contains the entire Agreement between the Parties, and shall not be modified, amended or supplemented, or any rights therein waived, unless specifically agreed upon in writing by LPG and Affiliate.


**The Litigation Practice Group PC**



**By: Daniel S. March, Managing Shareholder**


**Debt Relief Group LLC**



By: Billy Burns

Title:  Managing Member

## Electronic Funds Transfer Authorization

This Electronic Funds Transfer (EFT) authorization is for use in connection with the foregoing Agreement, and permits LPG to transfer any and all amounts due to **Debt Relief Group LLC** ("Affiliate") under the foregoing Agreement by EFT.  By signing below, Affiliate hereby authorizes LPG to initiate EFT transfers at its discretion, with all fees and costs incurred by Affiliate in connection with such transfer to be borne by Affiliate, while all fees and costs incurred by LPG in connection with such transfer to be borne by LPG.

Account Holder Signature: _____ *Billy Burns* _____ Date: ___9/30/2022___

DocuSigned by:
3ECDDBC6C1774C9...

By: Billy Burns

Title:  Managing Member

Account Owner Name: Debt Relief Group LLC

Social Security Number / FEIN Number associated with account listed below: ▮▮▮▮▮

Address: 1800 Old Okeechobee Rd, Suite 200

City: West Palm Beach, FL 33409

Bank Name: Chase Bank

Routing Number: ▮▮▮▮▮▮▮▮▮▮

Account Number: ▮▮▮▮▮

Account type :  Checking

**EXHIBIT "2"**

DocuSign Envelope ID: 46D61534E5DD0-4680-A65A-2C4AE874493A

**ACCOUNTS RECEIVABLE PURCHASE AGREEMENT**

This ACCOUNTS RECEIVABLE PURCHASE AGREEMENT (this "**Agreement**") is made as of November 7, 2022 (the "**Agreement Date**"), by and between The Litigation Practice Group PC (collectively the "**Buyer**"), and Debt Relief Group (the "**Seller**" or "**LPG**", and together with the Buyer, the "**Parties**"), and The Litigation Practice Group PC ("**LPG**").

**RECITALS**

WHEREAS, in the regular course of business, the Seller originates account receivables from **LPG** in connection with client on-boarding services provided by the Seller to LPG and its affiliates;

WHEREAS, the account receivables represent an obligation of various clients to pay Seller for services that Seller previously provided, but which LPG shall provide from the date of execution of this Agreement;

WHEREAS, the Seller desires to sell, assign, transfer, and deliver to the Buyer, and the Buyer desires to purchase, acquire, and accept from the Seller, certain of these account receivables (the "**Purchased Accounts**").

NOW, THEREFORE, in consideration of the covenants and representations set forth herein, the Parties, intending to be legally bound, agree as follows:

**ARTICLE 1.**
**DEFINITIONS**

Section 1.1    <u>Certain Definitions</u>.  Certain defined terms used in this Agreement are set forth on **<u>Exhibit A</u>**.

**ARTICLE 2.**
**ASSIGNMENT AND TRANSFER AND CONSIDERATION**

Section 2.1    <u>Assignment of the Purchased Accounts to the Buyer</u>.  Upon execution of this Agreement and subject to the terms and conditions set forth herein, the Seller shall sell, assign, transfer, and deliver, and the Buyer shall purchase, acquire, and accept from the Seller, all of the Seller's right, title, and interest in and to the Purchased Accounts set forth on the spreadsheet attached to this Agreement, free and clear of any Liens.  Other than the Purchased Accounts, the Buyer shall not purchase or acquire any other assets of the Seller (collectively, the "**Excluded Assets**").

Section 2.2    <u>No Assumption of Liabilities</u>.  The Buyer shall not assume any Liabilities of the Seller of any kind, whether known or unknown, contingent, matured, or otherwise, whether currently existing or hereinafter created (collectively, the "**Excluded Liabilities**").

Section 2.3    <u>Payment of Purchase Price</u>.  Buyer shall pay $62,626.75 (total purchase price) for the Purchased Accounts (the "**Purchase Price**") by wire transfer of immediately available funds in accordance with the wire transfer instructions set forth in **<u>Schedule 2.3</u>** (the "**Wire Instructions**").  The Purchased Accounts are set forth on the attached spreadsheet.

Section 2.4    <u>Guarantee of LPG</u>.  If any file acquired by buyer shall fail to make a first payment, LPG will replace the file and bear any cost associated with such replacement.  The replacement file shall yield no less than the receivable of the failed file.  In addition, if any any calendar month a total of less than 80% of files make a cleared payment, LPG shall replace any non-performing files in such month so that the performance of the file

DocuSign Envelope ID: 46D61F34-5DD0-4680-A65A-2C4AE874409A

package as a whole equals 80%. This guarantee shall continue until the completion of the 24th month following execution of this agreement.

## ARTICLE 3.
## REPRESENTATIONS AND WARRANTIES OF THE SELLER

The Seller represents and warrants to the Buyer, as of the Agreement Date and as of the Closing Date, or, if expressly made as of a specified date, as of such specified date, as follows:

Section 3.1    Organization; Good Standing.  The Seller is a Limited Liability Company duly organized, validly existing, and in good standing under the Laws of the State of Delaware and is duly qualified to do business and is in good standing as a foreign corporation in each jurisdiction where the ownership or operation of the Business requires such qualification, except where the failure to be so qualified would not reasonably be expected to have, individually or in the aggregate, a material adverse effect on the business, results of operations, financial condition, or assets of the Seller.

Section 3.2    Power and Authority.  The Seller has all requisite right, power, and authority to execute, deliver, and perform this Agreement and the Transaction Agreements to which it is a party, to consummate the transactions contemplated hereby and thereby, and to perform its obligations hereunder and thereunder.  The execution and delivery of this Agreement and the Transaction Agreements by the Seller, and the consummation by the Seller of the transactions contemplated hereby and thereby, have been duly approved by the Seller, and no further action is required on the part of the Seller to authorize this Agreement, any Transaction Agreement to which it is a party, or the transactions contemplated hereby and thereby.  This Agreement has been, and each of the Transaction Agreements will be, duly and validly executed and delivered by the Seller and, assuming the due and valid authorization, execution, and delivery of this Agreement by the other Parties, and of each such Transaction Agreement by the other parties thereto, constitutes, or will constitute, a valid and binding obligation of the Seller, enforceable against it in accordance with its terms and conditions, except as enforcement may be limited by applicable bankruptcy, insolvency, reorganization, moratorium, and other Laws affecting enforcement of creditor's rights generally and except insofar as the availability of equitable remedies may be limited by applicable Law.

Section 3.3    Title to, and Sufficiency of, the Purchased Accounts.  The Seller has and shall convey to the Buyer, at the Closing, good, valid, transferable, and marketable title to, or valid leasehold interests in, all of the Purchased Accounts, free and clear of all Liens.

Section 3.4    Consents.  The Seller is not required to give any notice to, make any filing with, or obtain any authorization, consent, or approval of, any Governmental Body or Third Party, including a party to any assigned contract, in connection with the execution, delivery, and performance by the Seller of this Agreement or any of the Transaction Agreements to which it is a party or the consummation of the transactions contemplated hereby and thereby.

Section 3.5    No Conflicts. The execution and delivery by the Seller of this Agreement and each of the Transaction Agreements, and the consummation of the transactions contemplated hereby and thereby, will not conflict with, result in any violation of, or default under (with or without notice or lapse of time, or both), or give rise to an additional payment obligation, a right of termination, cancellation, modification, or acceleration of any obligation, or loss of any benefit, under: (a) any provision of the Organizational Documents of the Seller; (b) any contract to which the Seller is party, including, without limitation, any assigned contract; or (c) any Law or order applicable to the Seller or any of the Purchased Accounts.

Section 3.6    <u>Compliance with Laws</u>.  The Seller has materially complied, and is now materially complying, with all Laws applicable to the ownership and use of the Purchased Accounts.

Section 3.7    <u>Legal Proceedings</u>.  There is no Action of any nature pending or, to the Knowledge of the Seller, threatened against or by the Seller: (a) relating to or affecting the Purchased Accounts or (b) that challenges or seeks to prevent, enjoin, or otherwise delay the transactions contemplated by this Agreement and the Transaction Agreements.  No event has occurred or circumstance exists that may give rise to, or serve as a basis for, any such Action.

Section 3.8    <u>Condition of Purchased Accounts</u>.  Each Purchased Account shall have received no less than one processed payment.

Section 3.9    <u>Confidentiality</u>. Seller agrees and acknowledges that all Purchased Accounts, the pricing, and all terms set forth in this Agreement are confidential (together, the "**Confidential Information**").  Seller will at all times keep the  Confidential Information in confidence and trust.  Seller will not, without the prior written consent of an authorized officer of Buyer, (A) copy, use or disclose any Confidential Information, (B) deliver or disclose any Confidential Information to any person or entity outside the Buyer, or (C) use the Confidential Information for Seller's own use or use it to the detriment of Buyer.  Notwithstanding the foregoing, Seller may, without consent, use the Confidential Information and disclose and deliver same to Seller's employees or agents, if applicable, who have a need to know, provided such employees or agents have entered into written agreements approved by Buyer and containing provisions at least as restrictive as these provisions.  Seller agrees that violation of this Section 3.9.  The Parties agree that the disclosure of the Confidential Information in violation of this Agreement may cause the Buyer irreparable harm and that any breach or threatened breach by the Seller entitles Buyer to seek injunctive relief, in addition to any other legal or equitable remedies available to it, in any court of competent jurisdiction.

**ARTICLE 4.**
**REPRESENTATIONS AND WARRANTIES OF THE BUYER**

The Buyer represents and warrants to the Seller, as of the Agreement Date and as of the Closing Date, or, if expressly made as of a specified date, as of such specified date, as follows:

Section 4.1    <u>Organization; Good Standing</u>.  The Buyer is a limited liability company, duly organized, validly existing, and in good standing under the Laws of the State of Florida.

Section 4.2    <u>Power and Authority</u>.  The Buyer has all requisite right, power, and authority to execute, deliver, and perform this Agreement and the Transaction Agreements to which it is a party, to consummate the transactions contemplated hereby and thereby, and to perform its obligations hereunder and thereunder.  The execution and delivery of this Agreement and the Transaction Agreements by the Buyer, and the consummation by the Buyer of the transactions contemplated hereby and thereby, have been duly approved by the Buyer, and no further action is required on the part of the Buyer to authorize this Agreement, any Transaction Agreement to which it is a party, or the transactions contemplated hereby and thereby.  This Agreement has been, and each of the Transaction Agreements will be, duly and validly executed and delivered by the Buyer and, assuming the due and valid authorization, execution, and delivery of this Agreement by the other Parties, and of each such Transaction Agreement by the other parties thereto, constitutes, or will constitute, a valid and binding obligation of the Buyer, enforceable against it in accordance with its terms and conditions, except as enforcement may be limited by applicable bankruptcy, insolvency, reorganization, moratorium and other Laws affecting enforcement of creditor's rights generally and except insofar as the availability of equitable remedies may be limited by applicable Law.

DocuSign Envelope ID: 46D61F341FDD04680A65AC2C4AF874409A

Section 4.3    <u>No Conflicts</u>.  The execution and delivery by the Buyer of this Agreement and each of the Transaction Agreements, and the consummation of the transactions contemplated hereby and thereby, will not conflict with, result in any violation of, or default under (with or without notice or lapse of time, or both), or give rise to an additional payment obligation, a right of termination, cancellation, modification, or acceleration of, any obligation, or loss of any benefit under: (a) any provision of the Buyer's Organizational Documents; (b) any contract to which the Buyer is party, other than the Buyer Representation Agreement; or (c) any Law applicable to the Buyer.

Section 4.4    <u>Sufficient Funds</u>.  The Buyer has, and will have, sufficient funds available to make payment of the Purchase Price and consummate the transactions contemplated by this Agreement and the Transaction Agreements.

<div align="center">

**ARTICLE 5.**
**COVENANTS**

</div>

Section 5.1    <u>Appropriate Actions</u>.

(a)    <u>General</u>.  Each of the Parties shall use commercially reasonable efforts to take all actions necessary to consummate the transactions contemplated by this Agreement as soon as reasonably practicable after the execution of this Agreement, including taking all actions necessary to comply promptly with all applicable Laws that may be imposed on it or any of its Affiliates with respect to the Closing.

<div align="center">

**ARTICLE 6.**
**CLOSING**

</div>

Section 6.1    <u>Closing</u>.  The closing of the transactions contemplated by this Agreement (the "**Closing**") will take place upon the execution and delivery of this Agreement or at such other time, date, and place as the Parties may agree in writing.  The date on which the Closing occurs is hereinafter referred to as the "**Closing Date**." The Parties agree that the Closing may take place by the electronic exchange of executed counterpart documents and the electronic transfer of funds.

Section 6.2    <u>Closing Deliverables of the Seller</u>.  At or prior to the Closing, Seller shall deliver to Buyer any of the following if requested by Buyer:  (i) a bill of sale and assignment and assumption agreement substantially in the form attached hereto as **<u>Exhibit B</u>** (the "**Bill of Sale and Assignment and Assumption Agreement**"), duly executed by the Seller, effecting the transfer and assignment to, and assumption by, the Buyer of the Purchased Accounts; and (ii) such other customary instruments of transfer, assumption, filings, or documents, in form and substance reasonably satisfactory to the Buyer, as may be required to give effect to this Agreement.

Section 6.3    <u>Closing Deliverables of the Buyer</u>.  At or prior to the Closing, the Seller shall have received the following: (i) the Upfront Cash Payment; and (ii) if requested pursuant to <u>Section 6.2</u>, the Bill of Sale and Assignment and Assumption Agreement, duly executed by the Buyer.

Section 6.4    <u>Indemnification by the Seller</u>.  Subject to the limitations set forth in this <u>Article 6</u>, the Seller agrees to indemnify and hold harmless the Buyer, including its shareholders, members, directors, managers, officers, employees, Affiliates, and agents (each, a "**Buyer Indemnified Party**" and, collectively, the "**Buyer Indemnified Parties**"), against all claims, losses, Liabilities, damages, deficiencies, diminutions in value, costs, interest, awards, judgments, penalties, and expenses, including reasonable out-of-pocket attorneys' and consultants' fees and expenses and including any such reasonable expenses incurred in connection with investigating, defending against, or settling any of the foregoing (each, a "**Loss**" and, collectively, the "**Losses**") paid, suffered, incurred, sustained, or accrued by any Buyer Indemnified Party, directly or indirectly, as a result of,

arising out of, or in connection with: (a) any inaccuracy in, or breach of, any of the representations or warranties of the Seller contained in this Agreement, (b) any breach or non-fulfillment of any covenant, agreement, or obligation to be performed by the Seller pursuant to this Agreement, (c) any Excluded Asset or any Excluded Liability.

Section 6.5    Indemnification by the Buyer.  Subject to the limitations set forth in this Article 6, the Buyer agrees to indemnify and hold harmless the Seller, including its Affiliates and agents (each, a "**Seller Indemnified Party**" and, collectively, the "**Seller Indemnified Parties**"), against all Losses paid, suffered, incurred, sustained, or accrued by any Seller Indemnified Party, directly or indirectly, as a result of, arising out of, or in connection with: (a) any inaccuracy in, or breach of, any of the representations or warranties of the Buyer contained in this Agreement; (b) any breach or non-fulfillment of any covenant, agreement, or obligation to be performed by the Buyer pursuant to this Agreement; (c) any event or occurance related to the Purchased Accounts or Buyer occurring after the Closing; or (d) resulting from any omissions or misstatements made by Buyer to investors or potential investors.

Section 6.6    Indemnification Procedures.

(a)    No Restraints.  Promptly following receipt by an Indemnified Party of notice by a Third Party (including any Governmental Body) of any complaint, dispute, or claim or the commencement of any audit, investigation, Action or proceeding with respect to which such Indemnified Party may be entitled to indemnification pursuant hereto (a "**Third-party Claim**"), such Indemnified Party shall provide written notice thereof to the Indemnifying Party, provided, however, that the failure to so notify the Indemnifying Party shall relieve the Indemnifying Party from Liability hereunder with respect to such Third-party Claim only if, and only to the extent that, such failure to so notify the Indemnifying Party results in the forfeiture by the Indemnifying Party of rights and defenses otherwise available to the Indemnifying Party with respect to such Third-party Claim.  The Indemnifying Party shall have the right, upon written notice delivered to the Indemnified Party within twenty days thereafter assuming full responsibility for any Losses resulting from such Third-party Claim, to assume the defense of such Third-party Claim, including the employment of counsel reasonably satisfactory to the Indemnified Party and the payment of the fees and disbursements of such counsel; provided, however, if the Indemnifying Party declines or fails to assume the defense of such Third-party Claim on the terms provided above or to employ counsel reasonably satisfactory to the Indemnified Party, in either case within such twenty day period, then any Losses shall include the reasonable fees and disbursements of counsel for the Indemnified Party as incurred.  In any Third-party Claim for which indemnification is being sought hereunder the Indemnified Party or the Indemnifying Party, whichever is not assuming the defense of such Third-party Claim, shall have the right to participate in such matter and to retain its own counsel at such Party's own expense.  The Indemnifying Party or the Indemnified Party (as the case may be) shall at all times use reasonable efforts to keep the Indemnifying Party or Indemnified Party (as the case may be) reasonably apprised of the status of the defense of any matter, the defense of which it is maintaining, and to cooperate in good faith with each other with respect to the defense of any such matter.

(b)    No Indemnified Party may settle or compromise any Third-party Claim or consent to the entry of any judgment with respect to which indemnification is being sought hereunder without the prior written consent of the Indemnifying Party (which may not be unreasonably withheld or delayed), unless (i) the Indemnifying Party fails to assume and maintain the defense of such Third-party Claim or (ii) such settlement, compromise, or consent includes an unconditional release of the Indemnifying Party and its officers, directors, employees and Affiliates from all Liability arising out of, or related to, such Third-party Claim.  An Indemnifying Party may not, without the prior written consent of the Indemnified Party, settle or compromise any Third-party Claim or consent to the entry of any judgment with respect to which indemnification is being sought hereunder unless such settlement, compromise, or consent (A) includes an unconditional release of the Indemnified Party and its officers, directors, employees, and Affiliates from all Liability arising out of, or related to, such Third-party

Claim, (B) does not contain any admission or statement suggesting any wrongdoing or Liability on behalf of the Indemnified Party, and (C) does not contain any equitable order, judgment, or term that in any manner affects, restrains, or interferes with the business of the Indemnified Party or any of the Indemnified Party's Affiliates.

(c)     If an Indemnified Party claims a right to payment pursuant hereto with respect to any matter not involving a Third-party Claim (a "**Direct Claim**"), such Indemnified Party shall send written notice of such claim to the appropriate Indemnifying Party (each, a "**Notice of Claim**").  Such Notice of Claim shall specify the basis for such Direct Claim.  The failure by any Indemnified Party so to notify the Indemnifying Party shall not relieve the Indemnifying Party from any Liability that it may have to such Indemnified Party with respect to any Direct Claim made pursuant to this Section 6.6(c).  If the Indemnifying Party does not notify the Indemnified Party within thirty days following its receipt of such Notice of Claim that the Indemnifying Party disputes its Liability to the Indemnified Party under this Article 6 or the amount thereof, the Direct Claim specified by the Indemnified Party in such Notice of Claim shall be conclusively deemed a Liability of the Indemnifying Party under this Article 6, and the Indemnifying Party shall pay the amount of such Liability to the Indemnified Party on demand or, in the case of any Notice of Claim in which the amount of the Direct Claim (or any portion of the Direct Claim) is estimated, on such later date when the amount of such Direct Claim (or such portion of such Direct Claim) becomes finally determined.  In the event that the Indemnifying Party has timely disputed its Liability with respect to such Direct Claim as provided above, as promptly as possible, such Indemnified Party and the appropriate Indemnifying Party shall establish the merits and amount of such Direct Claim (by mutual agreement, litigation, arbitration or otherwise) and, within five business days following the final determination of the merits and amount of such Direct Claim, the Indemnifying Party shall pay to the Indemnified Party an amount equal to such Direct Claim as determined hereunder.

## ARTICLE 7.
## MISCELLANEOUS

Section 7.1     Entire Agreement; Amendment.  This Agreement and the Transaction Agreements (including the exhibits hereto and thereto and the documents referred to therein) constitute the entire agreement among the Parties with respect to the subject matter hereof and supersede any prior understandings, agreements, or representations by or among the Parties, written or oral, to the extent they related in any way to the subject matter hereof.  This Agreement may be amended with the written consent of each of the Parties or any successor thereto by execution of an instrument in writing.

Section 7.2     Waivers.  The rights and remedies of the Parties to this Agreement are cumulative and not alternative.  To the maximum extent permitted by applicable Law: (a) no claim or right arising out of this Agreement or the documents referred to in this Agreement can be discharged by one Party, in whole or in part, by a waiver or renunciation of the claim or right unless in writing signed by the other Parties; (b) no waiver that may be given by a Party will be applicable except in the specific instance for what it is given; and (c) no notice to, or demand on, one Party will be deemed to be a waiver of any obligation of such Party or of the right of the Party giving such notice or demand to take further action without notice or demand as provided in this Agreement or the Transaction Agreements.

Section 7.3     Notices.  All notices and other communications required or permitted hereunder shall be made to the address of a Party listed on the signature page to this Agreement and shall be (a) in writing, (b) effective when given, and (c), in any event, deemed to be given upon receipt or, if earlier: (i) upon delivery, if delivered by hand; (ii) two business days after deposit with FedEx Express or similar recognized international overnight courier service, freight prepaid; or (iii) one business day after facsimile or electronic mail transmission. A Party may change the address to which notices, requests, demands, claims, and other communications hereunder are to be delivered by giving the other Parties advance written notice pursuant to the provisions above.

Section 7.4    <u>Successors and Assigns</u>.  This Agreement shall be binding upon, and inure to the benefit of, the Parties named herein and their respective successors and permitted assigns.  Neither this Agreement nor any rights or obligations of a Party hereunder shall be assigned by a Party (unless to an Affiliate of such Party) without the prior written consent of the other Parties.  This Agreement will be binding upon any permitted assignee of any Party.  No assignment shall have the effect of relieving any Party to this Agreement of any of its obligations hereunder.

Section 7.5    <u>Public Disclosure</u>.  Except as may be required by Law, the Seller shall not issue any statement or communication to any Third Party (other than its respective agents) regarding the subject matter of this Agreement or the transactions contemplated hereby, including, if applicable, the termination of this Agreement and the reasons therefor, without the prior written consent of the Buyer.

Section 7.6    <u>Expenses and Fees</u>.  Whether or not the Closing occurs, all fees and expenses incurred in connection with this transactions contemplated by this Agreement, including all legal, accounting, financial advisory, consulting and all other fees and expenses of Third Parties incurred by a Party in connection with the negotiation and effectuation of the terms and conditions of this Agreement and the transactions contemplated hereby, shall be the obligation of the respective Party incurring such fees and expenses.

Section 7.7    <u>Specific Performance</u>.  The Parties agree that irreparable damage would occur if any provision of this Agreement was not performed in accordance with the terms hereof and that the Parties shall be entitled to specific performance of the terms hereof, in addition to any other remedy to which they are entitled hereunder, at Law or in equity.

Section 7.8    <u>Counterparts</u>.  This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement.  A signed copy of this Agreement delivered by facsimile, electronic mail, or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

Section 7.9    <u>Governing Law</u>.  This Agreement shall, in all respects, be construed in accordance with, and governed by, the Laws of the State of California without regard to conflict of Laws principles.

Section 7.10    <u>Severability</u>.  Any term or provision of this Agreement that is invalid or unenforceable in any situation in any jurisdiction shall not affect the validity or enforceability of the remaining terms and provisions hereof or the validity or enforceability of the offending term or provision in any other situation or in any other jurisdiction.

Section 7.11    <u>Construction</u>.  The Parties have participated jointly in the negotiation and drafting of this Agreement.  In the event an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the Parties and no presumption or burden of proof shall arise favoring or disfavoring any Party by virtue of the authorship of any of the provisions of this Agreement.

DocuSign Envelope ID: 46D61F341FDD04E80A65A2C4AE874403A

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the Agreement Date.

**BUYER:**

**The Litigation Practice Group P.C.**

By: _____
Name: Daniel S March
Title: Managing Shareholder

**SELLER:**

**Debt Relief Group**

By: _____
Name: William Burns
Title: CEO

**APPROVAL OF ASSIGNMENT AND GUARANTEE**

The assignment of the Purchased Accounts set forth in this Agreement as well as the guarantee included therein is hereby approved, and with respect to the Purchased Accounts, the Buyer shall have all rights of Buyer as set forth in this agreement.

**The Litigation Practice Group P.C.**

By: _____
Name: Daniel S. March
Title: Managing Shareholder

*[Signature Page to Accounts Receivable Purchase Agreement]*

DocuSign Envelope ID: 46D61534 5DD0 4689 A65A 2C4AE8741039

## EXHIBIT A

## DEFINITIONS

As used in this Agreement, the following terms have the following meanings (terms defined in the singular to have a correlative meaning when used in the plural and vice versa).

(a)       "**Action**" shall mean any civil, criminal, or administrative action, claim, suit, demand, charge, citation, reexamination, opposition, interference, decree, injunction, mediation, hearing, notice of violation, demand letter, litigation, proceeding, labor dispute, arbitral action, governmental or other audit, inquiry, criminal prosecution, investigation, unfair labor practice charge, or complaint.

(b)       "**Agreement**" shall have the meaning set forth in the preamble to this Agreement.

(c)       "**Agreement Date**" shall have the meaning set forth in the preamble to this Agreement.

(d)       "**Affiliate**" shall mean (i) with respect to any non-natural Person, any Person that, directly or indirectly, through one or more intermediaries, controls, is controlled by, or is under common control with, such Person and (ii), with respect to any individual, (A) family members of such individual, by blood, adoption, or marriage, (B) such individual's spouse or ex-spouse and (C) any Person that is directly or indirectly under the control of any of the foregoing individuals.  For purposes of this definition, "control" (including with correlative meanings, the terms "controlling," "controlled by," and under "common control with") means the possession, directly or indirectly, of the power to direct the management and policies of a Person, whether through the ownership of voting securities, by contract, or otherwise.

(e)       "**Bill of Sale and Assignment and Assumption Agreement**" shall have the meaning set forth in Section 6.2.

(f)       "**Business**" shall mean the business of the Seller as conducted on the Agreement Date.

(g)       "**Buyer**" shall have the meaning set forth in the preamble to this Agreement.

(h)       "**Buyer Indemnified Parties**" shall have the meaning set forth in Section 6.4.

(i)        "**Closing**" shall have the meaning set forth in Section 6.1.

(j)        "**Closing Date**" shall have the meaning set forth in Section 6.1.

(k)       "**Direct Claim**" shall have the meaning set forth in Section 6.6(c).

(l)        "**Excluded Assets**" shall have the meaning set forth in Section 2.1.

(m)       "**Excluded Liabilities**" shall have the meaning set forth in Section 2.2.

(n)       "**Governmental Body**" shall mean any: (i) nation, province, state, county, city, town, village, district, or other jurisdiction of any nature; (ii) federal, provincial, state, local, municipal, foreign, or other government; (iii) governmental or quasi-governmental authority of any nature (including any governmental agency, branch, department, official, or entity and any court or other tribunal); (iv) multi-national organization or body; or (v) body exercising, or entitled to exercise, any administrative, executive, judicial, legislative, police, regulatory, or taxing authority or power of any nature.

DocuSign Envelope ID: 46D61534-FDD0-4680-A65A-2C4AE874409A

(o)    "**Indebtedness**" means, without duplication and with respect to the Seller, all: (i) indebtedness for borrowed money; (ii) obligations for the deferred purchase price of property or services, (iii) long or short-term obligations evidenced by notes, bonds, debentures or other similar instruments; (iv) obligations under any interest rate, currency swap, or other hedging agreement or arrangement; (v) capital lease obligations; (vi) reimbursement obligations under any letter of credit, banker's acceptance or similar credit transactions; (vii) guarantees made by the Seller on behalf of any third party in respect of obligations of the kind referred to in the foregoing clauses (i) through (vi); and (viii) any unpaid interest, prepayment penalties, premiums, costs and fees that would arise or become due as a result of the prepayment of any of the obligations referred to in the foregoing clauses (i) through (vii).

(p)    "**Indemnified Party**" shall mean a Buyer Indemnified Party or a Seller Indemnified Party, as the case may be, making a claim for indemnification under Article 6.

(q)    "**Indemnifying Party**" shall mean a Party against whom a claim for indemnification is asserted under Article 6.

(r)    "**Knowledge**" shall mean, with respect to the Seller, the actual or constructive knowledge of all facts relevant to this transaction and the transacting parties, after due inquiry.

(s)    "**Law**" shall mean any law, statute, ordinance, regulation, rule, code, notice requirement, court decision, or agency guideline, of any foreign, federal, state, or local Governmental Body.

(t)    "**Liabilities**" shall mean any direct or indirect liability, Indebtedness, obligation, commitment, expense, claim, deficiency, guaranty, or endorsement of, or by, any Person of any type, known or unknown, and whether accrued, absolute, contingent, matured, unmatured, determined or undeterminable, on- or off-balance sheet, or other.

(u)    "**Lien**" shall mean any mortgage, pledge, lien, charge, claim, security interest, adverse claims of ownership or use, restrictions on transfer, defect of title, or other encumbrance of any sort.

(v)    "**Losses**" shall have the meaning set forth in Section 6.4.

(w)    "**Notice of Claim**" shall have the meaning set forth in Section 6.6(c).

(x)    "**Organizational Documents**" shall mean, with respect to a Person, the charter, bylaws, limited liability company agreement, and other organizational documents of such Person, in each case, as amended.

(y)    "**Party**" or "**Parties**" shall have the meaning set forth in the preamble to this Agreement.

(z)    "**Permitted Liens**" shall mean (i) Liens for Taxes not yet delinquent or being contested in good faith by appropriate proceedings, (ii) statutory Liens (including materialmen's, warehousemen's, mechanic's, repairmen's, landlord's, and other similar Liens) arising in the ordinary course of business securing payments not yet delinquent or being contested in good faith by appropriate proceedings, and (iii) restrictive covenants, easements, and defects, imperfections or irregularities of title, if any, of a nature that do not materially and adversely affect the assets or properties subject thereto.

(aa)    "**Person**" shall mean any individual, corporation (including any non-profit corporation), general or limited partnership, limited liability company, joint venture, estate, trust, association, organization, labor union, Governmental Body, or other entity.

DocuSign Envelope ID: 46D61E34-5DD0-4E80-A65A-2C4AE874403A

(bb)    "**Purchase Price**" shall have the meaning set forth in <u>Section 2.3</u>.

(cc)    "**Purchased Accounts**" shall have the meaning set forth in the Recitals.

(dd)    "**Seller**" shall have the meaning set forth in the preamble to this Agreement.

(ee)    "**Seller Indemnified Parties**" shall have the meaning set forth in <u>Section 6.5</u>.

(ff)    "**Tax**" or "**Taxes**" shall mean any U.S. federal, state, local or non-U.S. income, gross receipts, license, payroll, employment, excise, severance, stamp, occupation, premium, windfall profits, environmental, customs duties, capital stock, escheat, franchise, profits, withholding, social security, unemployment, disability, real property, personal property, sales, use, transfer, registration, value added, alternative or add-on minimum, estimated, or other tax of any kind whatsoever, including any interest, penalty, or addition thereto, whether disputed or not.

(gg)    "**Tax Returns**" means any return, declaration, report, claim for refund, or information return or statement relating to Taxes, including any schedule or attachment thereto, and including any amendment thereof.

(hh)    "**Third Party**" or "**Third Parties**" shall mean any Person other than the Parties or their respective Affiliates.

(ii)    "**Third-party Claim**" shall have the meaning set forth in <u>Section 6.6(a)</u>.

(jj)    "**Transaction Agreements**" shall mean the Bill of Sale and Assignment and Assumption Agreement, and each other agreement, instrument, and/or certificate contemplated by this Agreement or such other agreements to be executed in connection with the transactions contemplated hereby or thereby.

(kk)    "**Upfront Cash Payment**" shall have the meaning set forth in <u>Section 2.3</u>.

(ll)    "**Wire Instructions**" shall have the meaning set forth in <u>Section 2.3</u>.

## EXHIBIT B

**FORM OF BILL OF SALE AND ASSIGNMENT AND ASSUMPTION AGREEMENT**

THIS BILL OF SALE AND ASSIGNMENT AND ASSUMPTION AGREEMENT (this **"Agreement"**), is made by and between **Buyer**, and **Seller**.  Each of the Seller and the Buyer are sometimes referred to herein, individually, as a **"Party"** and, collectively, as the **"Parties."**

WHEREAS, the Buyer and the Seller have entered into that certain Accounts Receivable Purchase Agreement, of even date herewith (the **"Purchase Agreement"**), pursuant to which the Seller has agreed to sell, assign, transfer, and deliver to the Buyer, and the Buyer has agreed to purchase, acquire, and accept from the Seller, all right, title, and interest of the Seller in and to the Purchased Accounts, free and clear of any Liens.

NOW, THEREFORE, in consideration of the covenants and representations set forth herein, and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the Parties, intending to be legally bound, agree as follows:

1.  <u>Defined Terms</u>.  Capitalized terms used but not otherwise defined in this Agreement shall have the meanings assigned to such terms in the Purchase Agreement.

2.  <u>Sale of Purchased Accounts; Assignment</u>.  The Seller hereby sells, assigns, transfers, and delivers to the Buyer, and the Buyer hereby purchases, acquires, and accepts from the Seller, all right, title, and interest of the Seller in and to the Purchased Accounts, free and clear of any Liens.

3.  <u>Further Assurances</u>.  Each of the Parties agrees, from time to time, at the request of the any other Party, to execute and deliver such other instruments of conveyance, power of attorney, sale, transfer, or assignment and take such other actions as such other Party may reasonably request in order to more effectively consummate the transactions contemplated by this Agreement.

4.  <u>Terms of the Purchase Agreement</u>.  This Agreement is intended to evidence the consummation of the transactions contemplated by the Purchase Agreement and is subject to the terms and conditions set forth in the Purchase Agreement.   The terms of the Purchase Agreement, including, but not limited to, the representations, warranties, covenants, agreements, and indemnities relating to the Purchased Accounts are incorporated herein by this reference.  The Parties acknowledge and agree that the representations, warranties, covenants, agreements, and indemnities contained in the Purchase Agreement shall not be superseded hereby but shall remain in full force and effect to the full extent provided therein.  In the event of any conflict or inconsistency between the terms of the Purchase Agreement and the terms hereof, the terms of the Purchase Agreement shall govern.

5.  <u>Counterparts</u>.  This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement.  A signed copy of this Agreement delivered by facsimile, electronic mail, or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

*[Remainder of page intentionally left blank.]*

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date first above written.

**BUYER: The Litigation Practice Group P.C.**

By: _____
  Name: Daniel S. March
  Title: Managing Shareholder

**SELLER:**

**Debt Relief Group**

By: _____
  Name: William Burns
  Title: CEO

**Schedule 2.3**
**Wire Instructions**

<u>**$62,626.75**</u>

**Account Holder Name: Debt Relief Group**

**Address: 1800 Old Okeechobee Rd Suite 200, West Palm Beach, FL 33409**

**Routing Number:** ████████

**Account Number:** ████████

| Customer I | Company | | Enrolled Da | Monthly Pa | Second Pay | Third Paym |
|---|---|---|---|---|---|---|
| BATLLC-63 | Debt Relief | | ######## | 320.48 | 320.48 | 320.48 |
| BATLLC-65 | Debt Relief | | ######## | 246.76 | 259.24 | 259.24 |
| BATLLC-65 | Debt Relief | | ######## | 252.76 | 252.76 | 252.76 |
| BATLLC-64 | Debt Relief | | ######## | 225.49 | 225.49 | 225.49 |
| BATLLC-63 | Debt Relief | | ######## | 422.81 | 422.81 | 422.81 |
| BATLLC-64 | Debt Relief | | ######## | 296.51 | 296.51 | 296.51 |
| BATLLC-64 | Debt Relief | | ######## | 325.05 | 325.05 | 325.05 |
| BATLLC-64 | Debt Relief | | ######## | 253.33 | 253.33 | 253.33 |
| BATLLC-63 | Debt Relief | | ######## | 366.55 | 366.55 | 366.55 |
| BATLLC-63 | Debt Relief | | ######## | 596.28 | 596.28 | 596.28 |
| BATLLC-64 | Debt Relief | | ######## | 559.4 | 559.4 | 559.4 |
| BATLLC-64 | Debt Relief | | ######## | 255.47 | 255.47 | 255.47 |
| BATLLC-64 | Debt Relief | | ######## | 304.88 | 304.88 | 304.88 |
| BATLLC-64 | Debt Relief | | ######## | 502.9 | 502.9 | 502.9 |
| BATLLC-65 | Debt Relief | | ######## | 252.2 | 252.2 | 252.2 |
| BATLLC-63 | Debt Relief | | ######## | 257.35 | 257.35 | 257.35 |
| BATLLC-64 | Debt Relief | | ######## | 360.19 | 360.19 | 360.19 |
| BATLLC-63 | Debt Relief | | ######## | 255.8 | 255.8 | 255.8 |
| BATLLC-64 | Debt Relief | | ######## | 272.4 | 272.4 | 272.4 |
| BATLLC-65 | Debt Relief | | ######## | 268.43 | 268.43 | 268.43 |
| BATLLC-64 | Debt Relief | | ######## | 287.07 | 287.07 | 287.07 |
| BATLLC-63 | Debt Relief | | ######## | 302.75 | 302.75 | 302.75 |
| BATLLC-64 | Debt Relief | | ######## | 301.65 | 301.65 | 301.65 |
| BATLLC-64 | Debt Relief | | ######## | 253.15 | 253.15 | 253.15 |
| BATLLC-63 | Debt Relief | | ######## | 253.01 | 253.01 | 253.01 |
| BATLLC-64 | Debt Relief | | ######## | 253.24 | 253.24 | 253.24 |
| BATLLC-64 | Debt Relief | | ######## | 324.81 | 349.81 | 324.81 |
| BATLLC-64 | Debt Relief | | ######## | 334.25 | 334.25 | 332.3 |
| BATLLC-64 | Debt Relief | | ######## | 314.11 | 314.11 | 314.11 |
| BATLLC-64 | Debt Relief | | ######## | 252.19 | 252.19 | 252.19 |
| BATLLC-64 | Debt Relief | | ######## | 256.63 | 256.63 | 256.63 |
| BATLLC-64 | Debt Relief | | ######## | 477.52 | 477.52 | 477.52 |

DocuSign Envelope ID: 46D61F34-FDD0-4680-A65A-2C4AE874403A

| Fourth Pay | Fifth Paym | Debt Enrol | Total Progr | Total Paym | Fee 1 | State | Program Le | First Payme | Second Pay |
|---|---|---|---|---|---|---|---|---|---|
| 320.48 | 320.48 | 13446 | 9614.4 | 320.48 | 50 | IL | 29 Months | Cleared | Open |
| 259.24 | 259.24 | 4653 | 3616.81 | 246.76 | 49 | FL | 13 Months | Cleared | Open |
| 252.76 | 252.76 | 10425 | 6318.88 | 252.76 | 36 | UT | 23 Months | Returned / | Cleared |
| 225.49 | 225.49 | 9222 | 5637.2 | 225.49 | 35 | NC | 24 Months | Cleared | Open |
| 422.81 | 422.81 | 19586 | 10147.52 | 422.81 | 40 | MD | 23 Months | Cleared | Open |
| 296.51 | 296.51 | 14676 | 9784.74 | 296.51 | 45 | VA | 32 Months | Cleared | Open |
| 325.05 | 325.05 | 13720 | 7801.12 | 325.05 | 40 | NY | 23 Months | Cleared | Open |
| 253.33 | 253.33 | 16143 | 9119.73 | 253.33 | 35 | PA | 35 Months | Cleared | Open |
| 366.55 | 366.55 | 24315 | 13195.68 | 366.55 | 40 | PA | 35 Months | Cleared | Open |
| 596.28 | 596.28 | 49990 | 23851.2 | 596.28 | 40 | NJ | 38 Months | Cleared | Open |
| 559.4 | 559.4 | 27781 | 13425.52 | 559.4 | 40 | WV | 23 Months | Cleared | Open |
| 255.47 | 255.47 | 10909 | 6131.27 | 255.47 | 35 | FL | 22 Months | Cleared | Open |
| 304.88 | 304.88 | 23829 | 12195.35 | 304.88 | 35 | SC | 39 Months | Cleared | Open |
| 502.9 | 502.9 | 36587 | 18104.48 | 502.9 | 40 | PA | 35 Months | Cleared | Open |
| 252.2 | 252.2 | 7791 | 6052.8 | 252.2 | 48 | TX | 23 Months | Cleared | Open |
| 257.35 | 257.35 | 13797 | 8235.04 | 257.35 | 35 | NC | 29 Months | Open | Returned / |
| 360.19 | 360.19 | 42209 | 17288.94 | 360.19 | 30 | MD | 47 Months | Cleared | Open |
| 255.8 | 255.8 | 16397 | 9208.63 | 255.8 | 35 | OR | 34 Months | Cleared | Open |
| 272.4 | 272.4 | 12070 | 6537.62 | 272.4 | 35 | MI | 22 Months | Cleared | Open |
| 268.43 | 268.43 | 11798 | 6442.42 | 268.43 | 35 | TX | 23 Months | Cleared | Open |
| 287.07 | 287.07 | 54601 | 22965.55 | 287.07 | 35 | TX | 36 Months | Cleared | Open |
| 302.75 | 302.75 | 16215 | 10293.59 | 302.75 | 42 | PA | 31 Months | Returned / | Cleared |
| 301.65 | 301.65 | 23459 | 12065.85 | 301.65 | 35 | VA | 39 Months | Cleared | Open |
| 253.15 | 253.15 | 10190 | 6581.88 | 253.15 | 40 | PA | 25 Months | Cleared | Open |
| 253.01 | 253.01 | 11747 | 8096.22 | 253.01 | 40 | FL | 29 Months | Returned / | Returned / |
| 253.24 | 253.24 | 13333 | 8610.12 | 253.24 | 40 | WI | 33 Months | Cleared | Open |
| 324.81 | 324.81 | 22843 | 13342.21 | 349.81 | 40 | FL | 39 Months | Returned / | Cleared |
| 332.3 | 332.3 | 26962 | 13628.1 | 334.25 | 35 | FL | 39 Months | Returned / | Cleared |
| 314.11 | 314.11 | 24883 | 12564.25 | 314.11 | 35 | TX | 39 Months | Cleared | Open |
| 252.19 | 252.19 | 11401 | 7565.81 | 252.19 | 41 | MN | 29 Months | Cleared | Open |
| 256.63 | 256.63 | 12419 | 7955.38 | 256.63 | 40 | TX | 30 Months | Cleared | Open |
| 477.52 | 477.52 | 34303 | 17668.4 | 477.52 | 40 | SD | 35 Months | Returned / | Cleared |

DocuSign Envelope ID: 46D61F34-5DD0-4680-A65A-2C4AE874193A

| Third Paym | Fourth Pay | Fifth Paym | Sixth Paym | First Paym | Next Paym | # Drafts Cl | Pay Freq. | Payment N | Paused |
|---|---|---|---|---|---|---|---|---|---|
| Open | Open | Open | Open | ######## | ######## | 1 | Monthly | Bank | No |
| Open | Open | Open | Open | ######## | ######## | 0 | Monthly | CC | No |
| Open | Open | Open | Open | ######## | ######## | 0 | Monthly | CC | No |
| Open | Open | Open | Open | ######## | ######## | 0 | Monthly | CC | No |
| Open | Open | Open | Open | ######## | ######## | 0 | Monthly | CC | No |
| Open | Open | Open | Open | ######## | ######## | 1 | Monthly | Bank | No |
| Open | Open | Open | Open | ######## | ######## | 1 | Monthly | Bank | No |
| Open | Open | Open | Open | ######## | ######## | 1 | Monthly | Bank | No |
| Open | Open | Open | Open | ######## | ######## | 1 | Monthly | Bank | No |
| Open | Open | Open | Open | ######## | ######## | 1 | Monthly | Bank | No |
| Open | Open | Open | Open | ######## | ######## | 0 | Monthly | CC | No |
| Open | Open | Open | Open | ######## | ######## | 0 | Monthly | CC | No |
| Open | Open | Open | Open | ######## | ######## | 1 | Monthly | Bank | No |
| Open | Open | Open | Open | ######## | ######## | 0 | Monthly | CC | No |
| Open | Open | Open | Open | ######## | ######## | 1 | Monthly | Bank | No |
| Cleared | Open | Open | Open | ######## | ######## | 0 | Monthly | CC | No |
| Open | Open | Open | Open | ######## | ######## | 1 | Monthly | Bank | No |
| Open | Open | Open | Open | ######## | ######## | 0 | Monthly | CC | No |
| Open | Open | Open | Open | ######## | ######## | 0 | Monthly | CC | No |
| Open | Open | Open | Open | ######## | ######## | 0 | Monthly | CC | No |
| Open | Open | Open | Open | ######## | ######## | 1 | Bi-Weekly | Bank | No |
| Open | Open | Open | Open | ######## | ######## | 0 | Monthly | CC | No |
| Open | Open | Open | Open | ######## | ######## | 0 | Monthly | CC | No |
| Open | Open | Open | Open | ######## | ######## | 0 | Monthly | CC | No |
| Cleared | Open | Open | Open | ######## | ######## | 0 | Monthly | CC | No |
| Open | Open | Open | Open | ######## | ######## | 0 | Monthly | CC | No |
| Open | Open | Open | Open | ######## | ######## | 0 | Monthly | CC | No |
| Open | Open | Open | Open | ######## | ######## | 0 | Monthly | CC | No |
| Open | Open | Open | Open | ######## | ######## | 0 | Monthly | CC | No |
| Open | Open | Open | Open | ######## | ######## | 0 | Monthly | CC | No |
| Open | Open | Open | Open | ######## | ######## | 1 | Monthly | Bank | No |
| Open | Open | Open | Open | ######## | ######## | 0 | Monthly | CC | No |

| Client Status | Payments | Payment S | # NSFs | # Drafts Remaining |
|---|---|---|---|---|
| Active File | 1 | 1 of 30 | 0 | 29 |
| Active File | 1 | 1 of 14 | 0 | 0 |
| Educational Outreach Missed | 1 | 1 of 25 | 1 | 0 |
| Active File | 1 | 1 of 25 | 0 | 0 |
| Active File | 1 | 1 of 24 | 0 | 0 |
| Active File | 1 | 1 of 33 | 0 | 32 |
| Active File | 1 | 1 of 24 | 0 | 23 |
| Active File | 1 | 1 of 36 | 0 | 35 |
| Active File | 1 | 1 of 36 | 0 | 35 |
| Active File | 1 | 1 of 40 | 0 | 39 |
| Active File | 1 | 1 of 24 | 0 | 0 |
| Active File | 1 | 1 of 24 | 0 | 0 |
| Active File | 1 | 1 of 40 | 0 | 39 |
| Active File | 1 | 1 of 36 | 0 | 0 |
| Educational Outreach | 1 | 1 of 24 | 0 | 23 |
| Active File | 1 | 1 of 32 | 1 | 0 |
| Active File | 1 | 1 of 48 | 0 | 47 |
| Active File | 1 | 1 of 36 | 0 | 0 |
| Active File | 1 | 1 of 24 | 0 | 0 |
| Active File | 1 | 1 of 24 | 0 | 0 |
| Active File | 1 | 1 of 80 | 0 | 79 |
| Active File | 1 | 1 of 34 | 1 | 0 |
| Active File | 1 | 1 of 40 | 0 | 0 |
| Active File | 1 | 1 of 26 | 0 | 0 |
| Active File | 1 | 1 of 32 | 2 | 0 |
| Paused Per Legal - Payment No | 1 | 1 of 34 | 0 | 0 |
| Active File | 1 | 1 of 41 | 1 | 0 |
| Active File | 1 | 1 of 41 | 1 | 0 |
| Active File | 1 | 1 of 40 | 0 | 0 |
| Active File | 1 | 1 of 30 | 0 | 0 |
| Active File | 1 | 1 of 31 | 0 | 30 |
| Active File | 1 | 1 of 37 | 1 | 0 |

**EXHIBIT "3"**

DocuSign Envelope ID: EB570C52-76A5-4961-9A34-4471FA4409AD

**ACCOUNTS RECEIVABLE PURCHASE AGREEMENT**

This ACCOUNTS RECEIVABLE PURCHASE AGREEMENT (this "**Agreement**") is made as of November 17, 2022 (the "**Agreement Date**"), by and between The Litigation Practice Group PC (collectively the "**Buyer**"), and Debt Relief Group (the "**Seller" or "LPG**", and together with the Buyer, the **"Parties"**), and The Litigation Practice Group PC ("LPG").

**RECITALS**

WHEREAS, in the regular course of business, the Seller originates account receivables from **LPG** in connection with client on-boarding services provided by the Seller to LPG and its affiliates;

WHEREAS, the account receivables represent an obligation of various clients to pay Seller for services that Seller previously provided, but which LPG shall provide from the date of execution of this Agreement;

WHEREAS, the Seller desires to sell, assign, transfer, and deliver to the Buyer, and the Buyer desires to purchase, acquire, and accept from the Seller, certain of these account receivables (the "**Purchased Accounts**").

NOW, THEREFORE, in consideration of the covenants and representations set forth herein, the Parties, intending to be legally bound, agree as follows:

**ARTICLE 1.**
**DEFINITIONS**

Section 1.1      Certain Definitions.  Certain defined terms used in this Agreement are set forth on **Exhibit A**.

**ARTICLE 2.**
**ASSIGNMENT AND TRANSFER AND CONSIDERATION**

Section 2.1      Assignment of the Purchased Accounts to the Buyer.  Upon execution of this Agreement and subject to the terms and conditions set forth herein, the Seller shall sell, assign, transfer, and deliver, and the Buyer shall purchase, acquire, and accept from the Seller, all of the Seller's right, title, and interest in and to the Purchased Accounts set forth on the spreadsheet attached to this Agreement, free and clear of any Liens.  Other than the Purchased Accounts, the Buyer shall not purchase or acquire any other assets of the Seller (collectively, the "**Excluded Assets**").

Section 2.2      No Assumption of Liabilities.  The Buyer shall not assume any Liabilities of the Seller of any kind, whether known or unknown, contingent, matured, or otherwise, whether currently existing or hereinafter created (collectively, the "**Excluded Liabilities**").

Section 2.3      Payment of Purchase Price.  Buyer shall pay $148,979.69 (total purchase price) for the Purchased Accounts (the "**Purchase Price**") by wire transfer of immediately available funds in accordance with the wire transfer instructions set forth in **Schedule 2.3** (the "**Wire Instructions**").  The Purchased Accounts are set forth on the attached spreadsheet.

Section 2.4      Guarantee of LPG.  If any file acquired by buyer shall fail to make a first payment, LPG will replace the file and bear any cost associated with such replacement.  The replacement file shall yield no less than the receivable of the failed file.  In addition, if any any calendar month a total of less than 80% of files make a cleared payment, LPG shall replace any non-performing files in such month so that the performance of the file

DocuSign Envelope ID: EB570C52-76A5-4961-9A34-4471FA4409A9

package as a whole equals 80%. This guarantee shall continue until the completion of the 24th month following execution of this agreement.

## ARTICLE 3.
## REPRESENTATIONS AND WARRANTIES OF THE SELLER

The Seller represents and warrants to the Buyer, as of the Agreement Date and as of the Closing Date, or, if expressly made as of a specified date, as of such specified date, as follows:

Section 3.1    Organization; Good Standing.  The Seller is a Limited Liability Company duly organized, validly existing, and in good standing under the Laws of the State of Delaware and is duly qualified to do business and is in good standing as a foreign corporation in each jurisdiction where the ownership or operation of the Business requires such qualification, except where the failure to be so qualified would not reasonably be expected to have, individually or in the aggregate, a material adverse effect on the business, results of operations, financial condition, or assets of the Seller.

Section 3.2    Power and Authority.  The Seller has all requisite right, power, and authority to execute, deliver, and perform this Agreement and the Transaction Agreements to which it is a party, to consummate the transactions contemplated hereby and thereby, and to perform its obligations hereunder and thereunder.  The execution and delivery of this Agreement and the Transaction Agreements by the Seller, and the consummation by the Seller of the transactions contemplated hereby and thereby, have been duly approved by the Seller, and no further action is required on the part of the Seller to authorize this Agreement, any Transaction Agreement to which it is a party, or the transactions contemplated hereby and thereby.  This Agreement has been, and each of the Transaction Agreements will be, duly and validly executed and delivered by the Seller and, assuming the due and valid authorization, execution, and delivery of this Agreement by the other Parties, and of each such Transaction Agreement by the other parties thereto, constitutes, or will constitute, a valid and binding obligation of the Seller, enforceable against it in accordance with its terms and conditions, except as enforcement may be limited by applicable bankruptcy, insolvency, reorganization, moratorium, and other Laws affecting enforcement of creditor's rights generally and except insofar as the availability of equitable remedies may be limited by applicable Law.

Section 3.3    Title to, and Sufficiency of, the Purchased Accounts.  The Seller has and shall convey to the Buyer, at the Closing, good, valid, transferable, and marketable title to, or valid leasehold interests in, all of the Purchased Accounts, free and clear of all Liens.

Section 3.4    Consents.  The Seller is not required to give any notice to, make any filing with, or obtain any authorization, consent, or approval of, any Governmental Body or Third Party, including a party to any assigned contract, in connection with the execution, delivery, and performance by the Seller of this Agreement or any of the Transaction Agreements to which it is a party or the consummation of the transactions contemplated hereby and thereby.

Section 3.5    No Conflicts. The execution and delivery by the Seller of this Agreement and each of the Transaction Agreements, and the consummation of the transactions contemplated hereby and thereby, will not conflict with, result in any violation of, or default under (with or without notice or lapse of time, or both), or give rise to an additional payment obligation, a right of termination, cancellation, modification, or acceleration of any obligation, or loss of any benefit, under: (a) any provision of the Organizational Documents of the Seller; (b) any contract to which the Seller is party, including, without limitation, any assigned contract; or (c) any Law or order applicable to the Seller or any of the Purchased Accounts.

DocuSign Envelope ID: EB570C52-76A5-4961-9A34-4471F5A4409A5

Section 3.6  <u>Compliance with Laws</u>.  The Seller has materially complied, and is now materially complying, with all Laws applicable to the ownership and use of the Purchased Accounts.

Section 3.7  <u>Legal Proceedings</u>.  There is no Action of any nature pending or, to the Knowledge of the Seller, threatened against or by the Seller: (a) relating to or affecting the Purchased Accounts or (b) that challenges or seeks to prevent, enjoin, or otherwise delay the transactions contemplated by this Agreement and the Transaction Agreements.  No event has occurred or circumstance exists that may give rise to, or serve as a basis for, any such Action.

Section 3.8  <u>Condition of Purchased Accounts</u>.  Each Purchased Account shall have received no less than one processed payment.

Section 3.9  <u>Confidentiality</u>.  Seller agrees and acknowledges that all Purchased Accounts, the pricing, and all terms set forth in this Agreement are confidential (together, the "**Confidential Information**").  Seller will at all times keep the  Confidential Information in confidence and trust.  Seller will not, without the prior written consent of an authorized officer of Buyer, (A) copy, use or disclose any Confidential Information, (B) deliver or disclose any Confidential Information to any person or entity outside the Buyer, or (C) use the Confidential Information for Seller's own use or use it to the detriment of Buyer.  Notwithstanding the foregoing, Seller may, without consent, use the Confidential Information and disclose and deliver same to Seller's employees or agents, if applicable, who have a need to know, provided such employees or agents have entered into written agreements approved by Buyer and containing provisions at least as restrictive as these provisions.  Seller agrees that violation of this Section 3.9.  The Parties agree that the disclosure of the Confidential Information in violation of this Agreement may cause the Buyer irreparable harm and that any breach or threatened breach by the Seller entitles Buyer to seek injunctive relief, in addition to any other legal or equitable remedies available to it, in any court of competent jurisdiction.

**ARTICLE 4.**
**REPRESENTATIONS AND WARRANTIES OF THE BUYER**

The Buyer represents and warrants to the Seller, as of the Agreement Date and as of the Closing Date, or, if expressly made as of a specified date, as of such specified date, as follows:

Section 4.1  <u>Organization; Good Standing</u>.  The Buyer is a limited liability company, duly organized, validly existing, and in good standing under the Laws of the State of Florida.

Section 4.2  <u>Power and Authority</u>.  The Buyer has all requisite right, power, and authority to execute, deliver, and perform this Agreement and the Transaction Agreements to which it is a party, to consummate the transactions contemplated hereby and thereby, and to perform its obligations hereunder and thereunder.  The execution and delivery of this Agreement and the Transaction Agreements by the Buyer, and the consummation by the Buyer of the transactions contemplated hereby and thereby, have been duly approved by the Buyer, and no further action is required on the part of the Buyer to authorize this Agreement, any Transaction Agreement to which it is a party, or the transactions contemplated hereby and thereby.  This Agreement has been, and each of the Transaction Agreements will be, duly and validly executed and delivered by the Buyer and, assuming the due and valid authorization, execution, and delivery of this Agreement by the other Parties, and of each such Transaction Agreement by the other parties thereto, constitutes, or will constitute, a valid and binding obligation of the Buyer, enforceable against it in accordance with its terms and conditions, except as enforcement may be limited by applicable bankruptcy, insolvency, reorganization, moratorium and other Laws affecting enforcement of creditor's rights generally and except insofar as the availability of equitable remedies may be limited by applicable Law.

DocuSign Envelope ID: EB5709S276A5-4961-9A34-4471FA4409AD

Section 4.3    <u>No Conflicts</u>.  The execution and delivery by the Buyer of this Agreement and each of the Transaction Agreements, and the consummation of the transactions contemplated hereby and thereby, will not conflict with, result in any violation of, or default under (with or without notice or lapse of time, or both), or give rise to an additional payment obligation, a right of termination, cancellation, modification, or acceleration of, any obligation, or loss of any benefit under: (a) any provision of the Buyer's Organizational Documents; (b) any contract to which the Buyer is party, other than the Buyer Representation Agreement; or (c) any Law applicable to the Buyer.

Section 4.4    <u>Sufficient Funds</u>.  The Buyer has, and will have, sufficient funds available to make payment of the Purchase Price and consummate the transactions contemplated by this Agreement and the Transaction Agreements.

## ARTICLE 5.
## COVENANTS

Section 5.1    <u>Appropriate Actions</u>.

(a)    <u>General</u>.  Each of the Parties shall use commercially reasonable efforts to take all actions necessary to consummate the transactions contemplated by this Agreement as soon as reasonably practicable after the execution of this Agreement, including taking all actions necessary to comply promptly with all applicable Laws that may be imposed on it or any of its Affiliates with respect to the Closing.

## ARTICLE 6.
## CLOSING

Section 6.1    <u>Closing</u>.  The closing of the transactions contemplated by this Agreement (the "**Closing**") will take place upon the execution and delivery of this Agreement or at such other time, date, and place as the Parties may agree in writing.  The date on which the Closing occurs is hereinafter referred to as the "**Closing Date**." The Parties agree that the Closing may take place by the electronic exchange of executed counterpart documents and the electronic transfer of funds.

Section 6.2    <u>Closing Deliverables of the Seller</u>.  At or prior to the Closing, Seller shall deliver to Buyer any of the following if requested by Buyer:  (i) a bill of sale and assignment and assumption agreement substantially in the form attached hereto as **Exhibit B** (the "**Bill of Sale and Assignment and Assumption Agreement**"), duly executed by the Seller, effecting the transfer and assignment to, and assumption by, the Buyer of the Purchased Accounts; and (ii) such other customary instruments of transfer, assumption, filings, or documents, in form and substance reasonably satisfactory to the Buyer, as may be required to give effect to this Agreement.

Section 6.3    <u>Closing Deliverables of the Buyer</u>.  At or prior to the Closing, the Seller shall have received the following: (i) the Upfront Cash Payment; and (ii) if requested pursuant to <u>Section 6.2</u>, the Bill of Sale and Assignment and Assumption Agreement, duly executed by the Buyer.

Section 6.4    <u>Indemnification by the Seller</u>.  Subject to the limitations set forth in this <u>Article 6</u>, the Seller agrees to indemnify and hold harmless the Buyer, including its shareholders, members, directors, managers, officers, employees, Affiliates, and agents (each, a "**Buyer Indemnified Party**" and, collectively, the "**Buyer Indemnified Parties**"), against all claims, losses, Liabilities, damages, deficiencies, diminutions in value, costs, interest, awards, judgments, penalties, and expenses, including reasonable out-of-pocket attorneys' and consultants' fees and expenses and including any such reasonable expenses incurred in connection with investigating, defending against, or settling any of the foregoing (each, a "**Loss**" and, collectively, the "**Losses**") paid, suffered, incurred, sustained, or accrued by any Buyer Indemnified Party, directly or indirectly, as a result of,

arising out of, or in connection with: (a) any inaccuracy in, or breach of, any of the representations or warranties of the Seller contained in this Agreement, (b) any breach or non-fulfillment of any covenant, agreement, or obligation to be performed by the Seller pursuant to this Agreement, (c) any Excluded Asset or any Excluded Liability.

Section 6.5     Indemnification by the Buyer.  Subject to the limitations set forth in this Article 6, the Buyer agrees to indemnify and hold harmless the Seller, including its Affiliates and agents (each, a "**Seller Indemnified Party**" and, collectively, the "**Seller Indemnified Parties**"), against all Losses paid, suffered, incurred, sustained, or accrued by any Seller Indemnified Party, directly or indirectly, as a result of, arising out of, or in connection with: (a) any inaccuracy in, or breach of, any of the representations or warranties of the Buyer contained in this Agreement; (b) any breach or non-fulfillment of any covenant, agreement, or obligation to be performed by the Buyer pursuant to this Agreement; (c) any event or occurance related to the Purchased Accounts or Buyer occurring after the Closing; or (d) resulting from any omissions or misstatements made by Buyer to investors or potential investors.

Section 6.6     Indemnification Procedures.

(a)     No Restraints.  Promptly following receipt by an Indemnified Party of notice by a Third Party (including any Governmental Body) of any complaint, dispute, or claim or the commencement of any audit, investigation, Action or proceeding with respect to which such Indemnified Party may be entitled to indemnification pursuant hereto (a "**Third-party Claim**"), such Indemnified Party shall provide written notice thereof to the Indemnifying Party, provided, however, that the failure to so notify the Indemnifying Party shall relieve the Indemnifying Party from Liability hereunder with respect to such Third-party Claim only if, and only to the extent that, such failure to so notify the Indemnifying Party results in the forfeiture by the Indemnifying Party of rights and defenses otherwise available to the Indemnifying Party with respect to such Third-party Claim.  The Indemnifying Party shall have the right, upon written notice delivered to the Indemnified Party within twenty days thereafter assuming full responsibility for any Losses resulting from such Third-party Claim, to assume the defense of such Third-party Claim, including the employment of counsel reasonably satisfactory to the Indemnified Party and the payment of the fees and disbursements of such counsel; provided, however, if the Indemnifying Party declines or fails to assume the defense of such Third-party Claim on the terms provided above or to employ counsel reasonably satisfactory to the Indemnified Party, in either case within such twenty day period, then any Losses shall include the reasonable fees and disbursements of counsel for the Indemnified Party as incurred.  In any Third-party Claim for which indemnification is being sought hereunder the Indemnified Party or the Indemnifying Party, whichever is not assuming the defense of such Third-party Claim, shall have the right to participate in such matter and to retain its own counsel at such Party's own expense.  The Indemnifying Party or the Indemnified Party (as the case may be) shall at all times use reasonable efforts to keep the Indemnifying Party or Indemnified Party (as the case may be) reasonably apprised of the status of the defense of any matter, the defense of which it is maintaining, and to cooperate in good faith with each other with respect to the defense of any such matter.

(b)     No Indemnified Party may settle or compromise any Third-party Claim or consent to the entry of any judgment with respect to which indemnification is being sought hereunder without the prior written consent of the Indemnifying Party (which may not be unreasonably withheld or delayed), unless (i) the Indemnifying Party fails to assume and maintain the defense of such Third-party Claim or (ii) such settlement, compromise, or consent includes an unconditional release of the Indemnifying Party and its officers, directors, employees and Affiliates from all Liability arising out of, or related to, such Third-party Claim.  An Indemnifying Party may not, without the prior written consent of the Indemnified Party, settle or compromise any Third-party Claim or consent to the entry of any judgment with respect to which indemnification is being sought hereunder unless such settlement, compromise, or consent (A) includes an unconditional release of the Indemnified Party and its officers, directors, employees, and Affiliates from all Liability arising out of, or related to, such Third-party

Claim, (B) does not contain any admission or statement suggesting any wrongdoing or Liability on behalf of the Indemnified Party, and (C) does not contain any equitable order, judgment, or term that in any manner affects, restrains, or interferes with the business of the Indemnified Party or any of the Indemnified Party's Affiliates.

(c)    If an Indemnified Party claims a right to payment pursuant hereto with respect to any matter not involving a Third-party Claim (a "**Direct Claim**"), such Indemnified Party shall send written notice of such claim to the appropriate Indemnifying Party (each, a "**Notice of Claim**"). Such Notice of Claim shall specify the basis for such Direct Claim. The failure by any Indemnified Party so to notify the Indemnifying Party shall not relieve the Indemnifying Party from any Liability that it may have to such Indemnified Party with respect to any Direct Claim made pursuant to this Section 6.6(c). If the Indemnifying Party does not notify the Indemnified Party within thirty days following its receipt of such Notice of Claim that the Indemnifying Party disputes its Liability to the Indemnified Party under this Article 6 or the amount thereof, the Direct Claim specified by the Indemnified Party in such Notice of Claim shall be conclusively deemed a Liability of the Indemnifying Party under this Article 6, and the Indemnifying Party shall pay the amount of such Liability to the Indemnified Party on demand or, in the case of any Notice of Claim in which the amount of the Direct Claim (or any portion of the Direct Claim) is estimated, on such later date when the amount of such Direct Claim (or such portion of such Direct Claim) becomes finally determined. In the event that the Indemnifying Party has timely disputed its Liability with respect to such Direct Claim as provided above, as promptly as possible, such Indemnified Party and the appropriate Indemnifying Party shall establish the merits and amount of such Direct Claim (by mutual agreement, litigation, arbitration or otherwise) and, within five business days following the final determination of the merits and amount of such Direct Claim, the Indemnifying Party shall pay to the Indemnified Party an amount equal to such Direct Claim as determined hereunder.

## ARTICLE 7.
## MISCELLANEOUS

Section 7.1    Entire Agreement; Amendment.    This Agreement and the Transaction Agreements (including the exhibits hereto and thereto and the documents referred to therein) constitute the entire agreement among the Parties with respect to the subject matter hereof and supersede any prior understandings, agreements, or representations by or among the Parties, written or oral, to the extent they related in any way to the subject matter hereof. This Agreement may be amended with the written consent of each of the Parties or any successor thereto by execution of an instrument in writing.

Section 7.2    Waivers.    The rights and remedies of the Parties to this Agreement are cumulative and not alternative. To the maximum extent permitted by applicable Law: (a) no claim or right arising out of this Agreement or the documents referred to in this Agreement can be discharged by one Party, in whole or in part, by a waiver or renunciation of the claim or right unless in writing signed by the other Parties; (b) no waiver that may be given by a Party will be applicable except in the specific instance for what it is given; and (c) no notice to, or demand on, one Party will be deemed to be a waiver of any obligation of such Party or of the right of the Party giving such notice or demand to take further action without notice or demand as provided in this Agreement or the Transaction Agreements.

Section 7.3    Notices.    All notices and other communications required or permitted hereunder shall be made to the address of a Party listed on the signature page to this Agreement and shall be (a) in writing, (b) effective when given, and (c), in any event, deemed to be given upon receipt or, if earlier: (i) upon delivery, if delivered by hand; (ii) two business days after deposit with FedEx Express or similar recognized international overnight courier service, freight prepaid; or (iii) one business day after facsimile or electronic mail transmission. A Party may change the address to which notices, requests, demands, claims, and other communications hereunder are to be delivered by giving the other Parties advance written notice pursuant to the provisions above.

Section 7.4     Successors and Assigns.  This Agreement shall be binding upon, and inure to the benefit of, the Parties named herein and their respective successors and permitted assigns.  Neither this Agreement nor any rights or obligations of a Party hereunder shall be assigned by a Party (unless to an Affiliate of such Party) without the prior written consent of the other Parties.  This Agreement will be binding upon any permitted assignee of any Party.  No assignment shall have the effect of relieving any Party to this Agreement of any of its obligations hereunder.

Section 7.5     Public Disclosure.  Except as may be required by Law, the Seller shall not issue any statement or communication to any Third Party (other than its respective agents) regarding the subject matter of this Agreement or the transactions contemplated hereby, including, if applicable, the termination of this Agreement and the reasons therefor, without the prior written consent of the Buyer.

Section 7.6     Expenses and Fees.  Whether or not the Closing occurs, all fees and expenses incurred in connection with this transactions contemplated by this Agreement, including all legal, accounting, financial advisory, consulting and all other fees and expenses of Third Parties incurred by a Party in connection with the negotiation and effectuation of the terms and conditions of this Agreement and the transactions contemplated hereby, shall be the obligation of the respective Party incurring such fees and expenses.

Section 7.7     Specific Performance.  The Parties agree that irreparable damage would occur if any provision of this Agreement was not performed in accordance with the terms hereof and that the Parties shall be entitled to specific performance of the terms hereof, in addition to any other remedy to which they are entitled hereunder, at Law or in equity.

Section 7.8     Counterparts.  This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement.  A signed copy of this Agreement delivered by facsimile, electronic mail, or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

Section 7.9     Governing Law.  This Agreement shall, in all respects, be construed in accordance with, and governed by, the Laws of the State of California without regard to conflict of Laws principles.

Section 7.10     Severability.  Any term or provision of this Agreement that is invalid or unenforceable in any situation in any jurisdiction shall not affect the validity or enforceability of the remaining terms and provisions hereof or the validity or enforceability of the offending term or provision in any other situation or in any other jurisdiction.

Section 7.11     Construction.  The Parties have participated jointly in the negotiation and drafting of this Agreement.  In the event an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the Parties and no presumption or burden of proof shall arise favoring or disfavoring any Party by virtue of the authorship of any of the provisions of this Agreement.

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the Agreement Date.

**BUYER:**

**The Litigation Practice Group P.C.**

By: _____
Name: Daniel S March
Title: Managing Shareholder

**SELLER:**

**Debt Relief Group**

By: _____
Name: William Burns
Title: CEO

**APPROVAL OF ASSIGNMENT AND GUARANTEE**

The assignment of the Purchased Accounts set forth in this Agreement as well as the guarantee included therein is hereby approved, and with respect to the Purchased Accounts, the Buyer shall have all rights of Buyer as set forth in this agreement.

**The Litigation Practice Group P.C.**

By: _____
Name: Daniel S. March
Title: Managing Shareholder

*[Signature Page to Accounts Receivable Purchase Agreement]*

DocuSign Envelope ID: EB570C52-76A5-4951-9A34-4471FA4409AD

## EXHIBIT A

## DEFINITIONS

As used in this Agreement, the following terms have the following meanings (terms defined in the singular to have a correlative meaning when used in the plural and vice versa).

(a)     "**Action**" shall mean any civil, criminal, or administrative action, claim, suit, demand, charge, citation, reexamination, opposition, interference, decree, injunction, mediation, hearing, notice of violation, demand letter, litigation, proceeding, labor dispute, arbitral action, governmental or other audit, inquiry, criminal prosecution, investigation, unfair labor practice charge, or complaint.

(b)     "**Agreement**" shall have the meaning set forth in the preamble to this Agreement.

(c)     "**Agreement Date**" shall have the meaning set forth in the preamble to this Agreement.

(d)     "**Affiliate**" shall mean (i) with respect to any non-natural Person, any Person that, directly or indirectly, through one or more intermediaries, controls, is controlled by, or is under common control with, such Person and (ii), with respect to any individual, (A) family members of such individual, by blood, adoption, or marriage, (B) such individual's spouse or ex-spouse and (C) any Person that is directly or indirectly under the control of any of the foregoing individuals.  For purposes of this definition, "control" (including with correlative meanings, the terms "controlling," "controlled by," and under "common control with") means the possession, directly or indirectly, of the power to direct the management and policies of a Person, whether through the ownership of voting securities, by contract, or otherwise.

(e)     "**Bill of Sale and Assignment and Assumption Agreement**" shall have the meaning set forth in Section 6.2.

(f)     "**Business**" shall mean the business of the Seller as conducted on the Agreement Date.

(g)     "**Buyer**" shall have the meaning set forth in the preamble to this Agreement.

(h)     "**Buyer Indemnified Parties**" shall have the meaning set forth in Section 6.4.

(i)     "**Closing**" shall have the meaning set forth in Section 6.1.

(j)     "**Closing Date**" shall have the meaning set forth in Section 6.1.

(k)     "**Direct Claim**" shall have the meaning set forth in Section 6.6(c).

(l)     "**Excluded Assets**" shall have the meaning set forth in Section 2.1.

(m)     "**Excluded Liabilities**" shall have the meaning set forth in Section 2.2.

(n)     "**Governmental Body**" shall mean any: (i) nation, province, state, county, city, town, village, district, or other jurisdiction of any nature; (ii) federal, provincial, state, local, municipal, foreign, or other government; (iii) governmental or quasi-governmental authority of any nature (including any governmental agency, branch, department, official, or entity and any court or other tribunal); (iv) multi-national organization or body; or (v) body exercising, or entitled to exercise, any administrative, executive, judicial, legislative, police, regulatory, or taxing authority or power of any nature.

DocuSign Envelope ID: EB570C52-76A5-4961-9A34-4471F5A4409AD

(o)    "**Indebtedness**" means, without duplication and with respect to the Seller, all: (i) indebtedness for borrowed money; (ii) obligations for the deferred purchase price of property or services, (iii) long or short-term obligations evidenced by notes, bonds, debentures or other similar instruments; (iv) obligations under any interest rate, currency swap, or other hedging agreement or arrangement; (v) capital lease obligations; (vi) reimbursement obligations under any letter of credit, banker's acceptance or similar credit transactions; (vii) guarantees made by the Seller on behalf of any third party in respect of obligations of the kind referred to in the foregoing clauses (i) through (vi); and (viii) any unpaid interest, prepayment penalties, premiums, costs and fees that would arise or become due as a result of the prepayment of any of the obligations referred to in the foregoing clauses (i) through (vii).

(p)    "**Indemnified Party**" shall mean a Buyer Indemnified Party or a Seller Indemnified Party, as the case may be, making a claim for indemnification under Article 6.

(q)    "**Indemnifying Party**" shall mean a Party against whom a claim for indemnification is asserted under Article 6.

(r)    "**Knowledge**" shall mean, with respect to the Seller, the actual or constructive knowledge of all facts relevant to this transaction and the transacting parties, after due inquiry.

(s)    "**Law**" shall mean any law, statute, ordinance, regulation, rule, code, notice requirement, court decision, or agency guideline, of any foreign, federal, state, or local Governmental Body.

(t)    "**Liabilities**" shall mean any direct or indirect liability, Indebtedness, obligation, commitment, expense, claim, deficiency, guaranty, or endorsement of, or by, any Person of any type, known or unknown, and whether accrued, absolute, contingent, matured, unmatured, determined or undeterminable, on- or off-balance sheet, or other.

(u)    "**Lien**" shall mean any mortgage, pledge, lien, charge, claim, security interest, adverse claims of ownership or use, restrictions on transfer, defect of title, or other encumbrance of any sort.

(v)    "**Losses**" shall have the meaning set forth in Section 6.4.

(w)    "**Notice of Claim**" shall have the meaning set forth in Section 6.6(c).

(x)    "**Organizational Documents**" shall mean, with respect to a Person, the charter, bylaws, limited liability company agreement, and other organizational documents of such Person, in each case, as amended.

(y)    "**Party**" or "**Parties**" shall have the meaning set forth in the preamble to this Agreement.

(z)    "**Permitted Liens**" shall mean (i) Liens for Taxes not yet delinquent or being contested in good faith by appropriate proceedings, (ii) statutory Liens (including materialmen's, warehousemen's, mechanic's, repairmen's, landlord's, and other similar Liens) arising in the ordinary course of business securing payments not yet delinquent or being contested in good faith by appropriate proceedings, and (iii) restrictive covenants, easements, and defects, imperfections or irregularities of title, if any, of a nature that do not materially and adversely affect the assets or properties subject thereto.

(aa)    "**Person**" shall mean any individual, corporation (including any non-profit corporation), general or limited partnership, limited liability company, joint venture, estate, trust, association, organization, labor union, Governmental Body, or other entity.

DocuSign Envelope ID: EB570C52-76A5-4951-9A34-4471F5A4409AD

(bb)    "**Purchase Price**" shall have the meaning set forth in <u>Section 2.3</u>.

(cc)    "**Purchased Accounts**" shall have the meaning set forth in the Recitals.

(dd)    "**Seller**" shall have the meaning set forth in the preamble to this Agreement.

(ee)    "**Seller Indemnified Parties**" shall have the meaning set forth in <u>Section 6.5</u>.

(ff)    "**Tax**" or "**Taxes**" shall mean any U.S. federal, state, local or non-U.S. income, gross receipts, license, payroll, employment, excise, severance, stamp, occupation, premium, windfall profits, environmental, customs duties, capital stock, escheat, franchise, profits, withholding, social security, unemployment, disability, real property, personal property, sales, use, transfer, registration, value added, alternative or add-on minimum, estimated, or other tax of any kind whatsoever, including any interest, penalty, or addition thereto, whether disputed or not.

(gg)    "**Tax Returns**" means any return, declaration, report, claim for refund, or information return or statement relating to Taxes, including any schedule or attachment thereto, and including any amendment thereof.

(hh)    "**Third Party**" or "**Third Parties**" shall mean any Person other than the Parties or their respective Affiliates.

(ii)    "**Third-party Claim**" shall have the meaning set forth in <u>Section 6.6(a)</u>.

(jj)    "**Transaction Agreements**" shall mean the Bill of Sale and Assignment and Assumption Agreement, and each other agreement, instrument, and/or certificate contemplated by this Agreement or such other agreements to be executed in connection with the transactions contemplated hereby or thereby.

(kk)    "**Upfront Cash Payment**" shall have the meaning set forth in <u>Section 2.3</u>.

(ll)    "**Wire Instructions**" shall have the meaning set forth in <u>Section 2.3</u>.

**EXHIBIT B**

**FORM OF BILL OF SALE AND ASSIGNMENT AND ASSUMPTION AGREEMENT**

THIS BILL OF SALE AND ASSIGNMENT AND ASSUMPTION AGREEMENT (this **"Agreement"**), is made by and between **Buyer**, and **Seller**.  Each of the Seller and the Buyer are sometimes referred to herein, individually, as a "**Party**" and, collectively, as the "**Parties**."

WHEREAS, the Buyer and the Seller have entered into that certain Accounts Receivable Purchase Agreement, of even date herewith (the "**Purchase Agreement**"), pursuant to which the Seller has agreed to sell, assign, transfer, and deliver to the Buyer, and the Buyer has agreed to purchase, acquire, and accept from the Seller, all right, title, and interest of the Seller in and to the Purchased Accounts, free and clear of any Liens.

NOW, THEREFORE, in consideration of the covenants and representations set forth herein, and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the Parties, intending to be legally bound, agree as follows:

1.    <u>Defined Terms</u>.  Capitalized terms used but not otherwise defined in this Agreement shall have the meanings assigned to such terms in the Purchase Agreement.

2.    <u>Sale of Purchased Accounts; Assignment</u>.  The Seller hereby sells, assigns, transfers, and delivers to the Buyer, and the Buyer hereby purchases, acquires, and accepts from the Seller, all right, title, and interest of the Seller in and to the Purchased Accounts, free and clear of any Liens.

3.    <u>Further Assurances</u>.  Each of the Parties agrees, from time to time, at the request of the any other Party, to execute and deliver such other instruments of conveyance, power of attorney, sale, transfer, or assignment and take such other actions as such other Party may reasonably request in order to more effectively consummate the transactions contemplated by this Agreement.

4.    <u>Terms of the Purchase Agreement</u>.  This Agreement is intended to evidence the consummation of the transactions contemplated by the Purchase Agreement and is subject to the terms and conditions set forth in the Purchase Agreement.    The terms of the Purchase Agreement, including, but not limited to, the representations, warranties, covenants, agreements, and indemnities relating to the Purchased Accounts are incorporated herein by this reference.  The Parties acknowledge and agree that the representations, warranties, covenants, agreements, and indemnities contained in the Purchase Agreement shall not be superseded hereby but shall remain in full force and effect to the full extent provided therein.  In the event of any conflict or inconsistency between the terms of the Purchase Agreement and the terms hereof, the terms of the Purchase Agreement shall govern.

5.    <u>Counterparts</u>.  This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement.  A signed copy of this Agreement delivered by facsimile, electronic mail, or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

[*Remainder of page intentionally left blank.*]

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date first above written.

**BUYER: The Litigation Practice Group P.C.**

By: _Daniel S March_____
9D494DB19933412E...
Name: Daniel S. March
Title: Managing Shareholder

**SELLER:**

**Debt Relief Group**

By: _Billy Burns_____
3ECDBC8C7774C9...
Name: William Burns
Title: CEO

**Schedule 2.3**
**Wire Instructions**

<u>**$148,979.69**</u>

**Account Holder Name: Debt Relief Group**

**Address: 1800 Old Okeechobee Rd Suite 200, West Palm Beach, FL 33409**

**Routing Number:** ███████

**Account Number:** ███████

| Full Name | Customer I | Company | Assigned T | Enrolled D: | Monthly P: | Second Pay | Third Paym | Fourth Pay | Fifth Paym |
|---|---|---|---|---|---|---|---|---|---|
| | BATLLC-64 | Debt Relief | | ######## | 250.68 | 250.68 | 250.68 | 250.68 | 250.68 |
| | BATLLC-63 | Debt Relief | | ######## | 300.79 | 300.79 | 300.79 | 300.79 | 300.79 |
| | BATLLC-63 | Debt Relief | | ######## | 256.42 | 256.42 | 256.42 | 256.42 | 256.42 |
| | BATLLC-63 | Debt Relief | | ######## | 450.01 | 450.01 | 450.01 | 450.01 | 450.01 |
| | BATLLC-64 | Debt Relief | | ######## | 302.16 | 302.16 | 302.16 | 302.16 | 302.16 |
| | BATLLC-64 | Debt Relief | | ######## | 252.86 | 252.86 | 252.86 | 252.86 | 252.86 |
| | BATLLC-64 | Debt Relief | | ######## | 359.8 | 359.8 | 359.8 | 359.8 | 359.8 |
| | BATLLC-64 | Debt Relief | | ######## | 252.73 | 252.73 | 252.73 | 252.73 | 252.73 |
| | BATLLC-64 | Debt Relief | | ######## | 252.64 | 252.64 | 252.64 | 252.64 | 252.64 |
| | BATLLC-64 | Debt Relief | | ######## | 387.49 | 387.49 | 387.49 | 387.49 | 387.49 |
| | BATLLC-64 | Debt Relief | | ######## | 286.04 | 286.04 | 286.04 | 286.04 | 286.04 |
| | BATLLC-64 | Debt Relief | | ######## | 293.38 | 293.38 | 293.38 | 293.38 | 293.38 |
| | BATLLC-64 | Debt Relief | | ######## | 261.01 | 234.99 | 234.99 | 234.99 | 234.99 |
| | BATLLC-64 | Debt Relief | | ######## | 260.06 | 260.06 | 260.06 | 260.06 | 260.06 |
| | BATLLC-64 | Debt Relief | | ######## | 260.94 | 260.94 | 260.94 | 260.94 | 260.94 |
| | BATLLC-64 | Debt Relief | | ######## | 254.14 | 254.14 | 254.14 | 254.14 | 254.14 |
| | BATLLC-64 | Debt Relief | | ######## | 250.61 | 250.61 | 250.61 | 250.61 | 250.61 |
| | BATLLC-64 | Debt Relief | | ######## | 251.69 | 251.69 | 251.69 | 251.69 | 251.69 |
| | BATLLC-64 | Debt Relief | | ######## | 384.99 | 384.99 | 384.99 | 384.99 | 384.99 |
| | BATLLC-64 | Debt Relief | | ######## | 261.42 | 261.42 | 261.42 | 261.42 | 261.42 |
| | BATLLC-64 | Debt Relief | | ######## | 250.47 | 250.47 | 250.47 | 250.47 | 250.47 |
| | BATLLC-64 | Debt Relief | | ######## | 569.63 | 569.63 | 569.63 | 569.63 | 569.63 |
| | BATLLC-64 | Debt Relief | | ######## | 291.45 | 291.45 | 291.45 | 291.45 | 291.45 |
| | BATLLC-64 | Debt Relief | | ######## | 271.58 | 242.75 | 242.75 | 242.75 | 242.75 |
| | BATLLC-64 | Debt Relief | | ######## | 379.47 | 379.47 | 379.47 | 379.47 | 379.47 |
| | BATLLC-64 | Debt Relief | | ######## | 499.97 | 499.97 | 499.97 | 499.97 | 499.97 |
| | BATLLC-64 | Debt Relief | | ######## | 601.61 | 601.61 | 601.61 | 601.61 | 601.61 |
| | BATLLC-64 | Debt Relief | | ######## | 251.38 | 251.38 | 251.38 | 251.38 | 251.38 |
| | BATLLC-64 | Debt Relief | | ######## | 253.58 | 253.58 | 253.58 | 253.58 | 253.58 |
| | BATLLC-64 | Debt Relief | | ######## | 251.07 | 251.07 | 251.07 | 251.07 | 251.07 |
| | BATLLC-64 | Debt Relief | | ######## | 500.05 | 500.05 | 500.05 | 500.05 | 500.05 |
| | BATLLC-64 | Debt Relief | | ######## | 315.52 | 315.52 | 315.52 | 315.52 | 315.52 |
| | BATLLC-64 | Debt Relief | | ######## | 338.06 | 338.06 | 338.06 | 338.06 | 338.06 |
| | BATLLC-64 | Debt Relief | | ######## | 345.83 | 345.83 | 345.83 | 345.83 | 345.83 |
| | BATLLC-64 | Debt Relief | | ######## | 252.59 | 252.59 | 252.59 | 252.59 | 252.59 |
| | | | | ######## | 583 | 583 | 583 | 583 | 583 |
| | BATLLC-64 | Debt Relief | | ######## | 431.13 | 431.13 | 431.13 | 431.13 | 431.13 |
| | BATLLC-64 | Debt Relief | | ######## | 252.37 | 255.13 | 255.13 | 255.13 | 255.13 |
| | BATLLC-64 | Debt Relief | | ######## | 258.08 | 258.08 | 258.08 | 258.08 | 258.08 |
| | BATLLC-64 | Debt Relief | | ######## | 318.65 | 318.65 | 318.65 | 318.65 | 318.65 |
| | BATLLC-64 | Debt Relief | | ######## | 255.57 | 255.57 | 255.57 | 255.57 | 255.57 |
| | BATLLC-65 | Debt Relief | | ######## | 279.19 | 279.19 | 279.19 | 279.19 | 279.19 |
| | BATLLC-65 | Debt Relief | | ######## | 282.77 | 282.77 | 282.77 | 282.77 | 282.77 |
| | BATLLC-65 | Debt Relief | | ######## | 253.65 | 253.65 | 253.65 | 253.65 | 253.65 |
| | BATLLC-65 | Debt Relief | | ######## | 470.18 | 470.18 | 470.18 | 470.18 | 470.18 |
| | BATLLC-65 | Debt Relief | | ######## | 258.87 | 258.87 | 258.87 | 258.87 | 258.87 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | BATLLC-65 | Debt Relief | ######## | 315.36 | 315.36 | 315.36 | 315.36 | 315.36 |
| | BATLLC-65 | Debt Relief | ######## | 263.68 | 263.68 | 263.68 | 263.68 | 263.68 |
| | BATLLC-65 | Debt Relief | ######## | 267.09 | 267.09 | 267.09 | 267.09 | 267.09 |
| | BATLLC-65 | Debt Relief | ######## | 318.75 | 318.75 | 318.75 | 318.75 | 318.75 |
| | BATLLC-65 | Debt Relief | ######## | 251.05 | 251.05 | 251.05 | 251.05 | 251.05 |
| | BATLLC-65 | Debt Relief | ######## | 253.46 | 253.46 | 253.46 | 253.46 | 253.46 |
| | BATLLC-65 | Debt Relief | ######## | 264.21 | 264.21 | 264.21 | 264.21 | 264.21 |
| | BATLLC-65 | Debt Relief | ######## | 252.47 | 252.47 | 252.47 | 252.47 | 252.47 |
| | BATLLC-65 | Debt Relief | ######## | 278.23 | 278.23 | 278.23 | 278.23 | 278.23 |
| | BATLLC-65 | Debt Relief | ######## | 284.49 | 284.49 | 284.49 | 284.49 | 284.49 |
| | BATLLC-65 | Debt Relief | ######## | 252.57 | 252.57 | 252.57 | 252.57 | 252.57 |
| | BATLLC-65 | Debt Relief | ######## | 250.9 | 250.9 | 250.9 | 250.9 | 250.9 |
| | BATLLC-65 | Debt Relief | ######## | 332.36 | 332.36 | 332.36 | 332.36 | 332.36 |
| | BATLLC-65 | Debt Relief | ######## | 306.26 | 306.26 | 306.26 | 306.26 | 306.26 |
| | BATLLC-65 | Debt Relief | ######## | 364.47 | 364.47 | 364.47 | 364.47 | 364.47 |
| | BATLLC-65 | Debt Relief | ######## | 339.85 | 339.85 | 339.85 | 339.85 | 339.85 |
| | BATLLC-65 | Debt Relief | ######## | 286.81 | 286.81 | 286.81 | 286.81 | 286.81 |
| | BATLLC-65 | Debt Relief | ######## | 318.32 | 318.32 | 318.32 | 318.32 | 318.32 |
| | BATLLC-65 | Debt Relief | ######## | 255.17 | 255.17 | 255.17 | 255.17 | 255.17 |
| | BATLLC-65 | Debt Relief | ######## | 275.04 | 275.04 | 275.04 | 275.04 | 275.04 |
| | BATLLC-65 | Debt Relief | ######## | 250.45 | 250.45 | 250.45 | 250.45 | 250.45 |
| | BATLLC-65 | Debt Relief | ######## | 297.67 | 297.67 | 297.67 | 297.67 | 297.67 |
| | BATLLC-65 | Debt Relief | ######## | 254.46 | 254.46 | 254.46 | 254.46 | 254.46 |
| | BATLLC-65 | Debt Relief | ######## | 338.47 | 338.47 | 338.47 | 338.47 | 338.47 |
| | BATLLC-65 | Debt Relief | ######## | 259.11 | 259.11 | 259.11 | 259.11 | 259.11 |
| | BATLLC-65 | Debt Relief | ######## | 250.66 | 250.66 | 250.66 | 250.66 | 250.66 |
| | BATLLC-65 | Debt Relief | ######## | 250.38 | 250.38 | 250.38 | 250.38 | 250.38 |
| | BATLLC-65 | Debt Relief | ######## | 246.68 | 246.68 | 246.68 | 246.68 | 246.68 |
| | BATLLC-65 | Debt Relief | ######## | 700.03 | 700.03 | 700.03 | 700.03 | 700.03 |
| | BATLLC-65 | Debt Relief | ######## | 254.68 | 254.68 | 254.68 | 254.68 | 254.68 |
| | BATLLC-65 | Debt Relief | ######## | 256.56 | 256.56 | 256.56 | 256.56 | 256.56 |
| | BATLLC-65 | Debt Relief | ######## | 259.87 | 259.87 | 259.87 | 259.87 | 259.87 |
| | BATLLC-65 | Debt Relief | ######## | 250.89 | 250.89 | 250.89 | 250.89 | 250.89 |
| | BATLLC-65 | Debt Relief | ######## | 255.16 | 255.16 | 255.16 | 255.16 | 255.16 |
| | BATLLC-65 | Debt Relief | ######## | 264.79 | 264.79 | 264.79 | 264.79 | 264.79 |
| | BATLLC-65 | Debt Relief | ######## | 364.82 | 364.82 | 364.82 | 364.82 | 364.82 |
| | BATLLC-65 | Debt Relief | ######## | 413.48 | 413.48 | 413.48 | 413.48 | 413.48 |
| | BATLLC-65 | Debt Relief | ######## | 344.21 | 344.21 | 344.21 | 344.21 | 344.21 |
| | BATLLC-65 | Debt Relief | ######## | 252.28 | 252.28 | 252.28 | 252.28 | 252.28 |
| | BATLLC-65 | Debt Relief | ######## | 501.77 | 501.77 | 501.77 | 501.77 | 501.77 |
| | BATLLC-65 | Debt Relief | ######## | 252.8 | 252.8 | 252.8 | 252.8 | 252.8 |
| | BATLLC-65 | Debt Relief | ######## | 449.89 | 449.89 | 449.89 | 449.89 | 449.89 |
| | BATLLC-65 | Debt Relief | ######## | 300.18 | 300.18 | 300.18 | 300.18 | 300.18 |
| | BATLLC-65 | Debt Relief | ######## | 276.35 | 276.35 | 276.35 | 276.35 | 276.35 |
| | BATLLC-64 | Debt Relief | ######## | 251.14 | 251.14 | 251.14 | 251.14 | 251.14 |
| | BATLLC-65 | Debt Relief | ######## | 251.29 | 251.29 | 251.29 | 251.29 | 251.29 |
| | BATLLC-65 | Debt Relief | ######## | 413.18 | 413.18 | 413.18 | 413.18 | 413.18 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| ██ | BATLLC-65 Debt Relief | ██ | ######## | 264.28 | 264.28 | 264.28 | 264.28 | 264.28 |
| | BATLLC-65 Debt Relief | | ######## | 314.38 | 314.38 | 314.38 | 314.38 | 314.38 |
| | BATLLC-65 Debt Relief | | ######## | 258.82 | 258.82 | 258.82 | 258.82 | 258.82 |
| | BATLLC-65 Debt Relief | | ######## | 393.56 | 393.56 | 393.56 | 393.56 | 393.56 |
| | BATLLC-65 Debt Relief | | ######## | 253.44 | 253.44 | 253.44 | 253.44 | 253.44 |
| | BATLLC-63 Debt Relief | | ######## | 100.89 | 303.89 | 303.89 | 303.89 | 303.89 |
| | BATLLC-65 Debt Relief | | ######## | 282.76 | 241.07 | 241.07 | 241.07 | 241.07 |
| | BATLLC-63 Debt Relief | | ######## | 258.96 | 258.96 | 258.96 | 258.96 | 258.96 |
| | BATLLC-63 Debt Relief | | ######## | 252.63 | 252.63 | 252.63 | 252.63 | 252.63 |
| | BATLLC-63 Debt Relief | | ######## | 255.61 | 255.61 | 255.61 | 255.61 | 255.61 |
| | BATLLC-64 Debt Relief | | ######## | 453.29 | 453.29 | 453.29 | 453.29 | 453.29 |
| | BATLLC-64 Debt Relief | | ######## | 252.46 | 277.46 | 252.46 | 252.46 | 252.46 |
| | BATLLC-64 Debt Relief | | ######## | 287.18 | 287.18 | 287.18 | 287.18 | 287.18 |
| | BATLLC-64 Debt Relief | | ######## | 328.26 | 353.26 | 328.26 | 328.26 | 328.26 |
| | BATLLC-64 Debt Relief | | ######## | 252.24 | 252.24 | 277.24 | 277.24 | 252.24 |
| | BATLLC-64 Debt Relief | | ######## | 264.41 | 264.41 | 264.41 | 264.41 | 264.41 |
| | BATLLC-65 Debt Relief | | ######## | 254.3 | 279.3 | 254.3 | 254.3 | 254.3 |
| | BATLLC-65 Debt Relief | | ######## | 269.97 | 269.97 | 268.2 | 268.2 | 268.2 |
| | BATLLC-65 Debt Relief | | ######## | 272.68 | 272.68 | 272.68 | 272.68 | 272.68 |
| | BATLLC-65 Debt Relief | | ######## | 262.97 | 262.97 | 262.97 | 262.97 | 262.97 |
| | BATLLC-65 Debt Relief | | ######## | 253.93 | 253.93 | 253.93 | 253.93 | 253.93 |
| | BATLLC-65 Debt Relief | | ######## | 267.89 | 267.89 | 267.89 | 267.89 | 267.89 |

| Debt Enrolled | Total Progr | Total Paym | Fee 1 | State | Program Le | First Paym | Second Pay | Third Paym |
|---|---|---|---|---|---|---|---|---|
| 11187 | 7771.18 | 250.68 | 40 | VA | 27 Months | Cancel | Returned / | Returned / |
| 23361 | 11730.76 | 300.79 | 35 | IN | 37 Months | Cancel | Cleared | Open |
| 7113 | 5128.45 | 256.42 | 45 | WV | 19 Months | Cleared | Open | Open |
| 40414.74 | 18000.36 | 450.01 | 35 | IL | 39 Months | Cleared | Open | Open |
| 21166 | 10877.78 | 302.16 | 35 | FL | 35 Months | Cleared | Open | Open |
| 7278 | 5057.14 | 252.86 | 43 | WI | 19 Months | Cleared | Open | Open |
| 23708 | 12952.88 | 359.8 | 40 | IL | 35 Months | Cleared | Open | Open |
| 7272 | 5054.56 | 252.73 | 43 | CA | 19 Months | Cleared | Open | Open |
| 7292 | 5305.38 | 252.64 | 45 | WY | 20 Months | Cleared | Open | Open |
| 26200 | 13949.68 | 387.49 | 40 | OH | 35 Months | Cleared | Open | Open |
| 13005 | 6864.87 | 286.04 | 35 | OH | 23 Months | Cleared | Open | Open |
| 22514 | 11735.1 | 293.38 | 35 | MD | 38 Months | Cleared | Open | Open |
| 6653.41 | 5665.85 | 261.01 | 50 | TN | 23 Months | Cleared | Open | Open |
| 11224 | 6241.52 | 260.06 | 35 | IA | 23 Months | Cleared | Open | Open |
| 10674 | 6262.5 | 260.94 | 37 | VA | 22 Months | Cleared | Open | Open |
| 13147 | 7624.32 | 254.14 | 36 | TN | 29 Months | Cleared | Open | Open |
| 6815 | 4761.67 | 250.61 | 43 | CT | 18 Months | Cleared | Open | Open |
| 10074 | 6040.5 | 251.69 | 37 | VA | 23 Months | Cleared | Open | Open |
| 26521 | 13089.69 | 384.99 | 37 | CA | 33 Months | Cleared | Open | Open |
| 16976 | 9411.28 | 261.42 | 35 | FL | 35 Months | Cleared | Open | Open |
| 7004 | 5009.36 | 250.47 | 44 | CA | 19 Months | Cleared | Open | Open |
| 22716 | 13671.12 | 569.63 | 50 | SC | 23 Months | Cleared | Open | Open |
| 13376 | 6994.72 | 291.45 | 35 | OK | 23 Months | Cleared | Open | Open |
| 10978 | 7311.43 | 271.58 | 40 | IL | 29 Months | Cleared | Open | Open |
| 28309 | 13281.45 | 379.47 | 35 | VA | 34 Months | Cleared | Open | Open |
| 36323 | 17998.88 | 499.97 | 40 | CA | 35 Months | Cleared | Open | Open |
| 57740 | 24064.19 | 601.61 | 35 | CA | 39 Months | Cleared | Open | Open |
| 7381 | 5027.62 | 251.38 | 42 | IL | 18 Months | Cleared | Open | Open |
| 7336 | 5325.18 | 253.58 | 45 | CA | 19 Months | Cleared | Open | Open |
| 9883 | 5774.62 | 251.07 | 36 | SC | 22 Months | Cleared | Open | Open |
| 19376 | 12001.12 | 500.05 | 50 | IL | 22 Months | Cleared | Open | Open |
| 21914 | 11043.2 | 315.52 | 35 | LA | 34 Months | Cleared | Open | Open |
| 27620 | 13522.19 | 338.06 | 35 | AZ | 39 Months | Cleared | Open | Open |
| 18709 | 10375 | 345.83 | 40 | ME | 29 Months | Cleared | Open | Open |
| 12943 | 7325.07 | 252.59 | 35 | NJ | 28 Months | Cleared | Open | Open |
| 55614 | 23320.1 | 583 | 35 | IL | 39 Months | Cleared | Open | Open |
| 33475 | 15089.55 | 431.13 | 35 | NY | 34 Months | Cleared | Open | Open |
| 5443 | 3058.85 | 252.37 | 35 | CO | 11 Months | Cleared | Open | Open |
| 22176 | 12387.84 | 258.08 | 35 | IN | 47 Months | Cleared | Open | Open |
| 20004 | 11471.28 | 318.65 | 40 | GA | 35 Months | Cleared | Open | Open |
| 16829 | 9456.21 | 255.57 | 35 | CA | 36 Months | Cleared | Open | Open |
| 15669 | 8375.54 | 279.19 | 35 | TN | 28 Months | Cleared | Open | Open |
| 16775 | 10179.68 | 282.77 | 40 | TX | 35 Months | Cleared | Open | Open |
| 10201 | 6087.49 | 253.65 | 37 | NY | 23 Months | Cleared | Open | Open |
| 33642 | 16926.48 | 470.18 | 40 | AL | 34 Months | Cleared | Open | Open |
| 16249 | 10354.8 | 258.87 | 40 | WI | 39 Months | Cleared | Open | Open |

DocuSign Envelope ID: EB570C52-76A5-4961-9A34-4471EA4409AD

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 11679 | 7568.67 | 315.36 | 45 | MN | 23 Months Cleared | Open | Open |
| 9560 | 6328.32 | 263.68 | 42 | VA | 23 Months Cleared | Open | Open |
| 12803 | 8012.6 | 267.09 | 40 | CA | 29 Months Cleared | Open | Open |
| 20013 | 11474.88 | 318.75 | 40 | OH | 35 Months Cleared | Open | Open |
| 11600 | 7531.4 | 251.05 | 40 | MA | 28 Months Cleared | Open | Open |
| 7306 | 5069.18 | 253.46 | 43 | CA | 19 Months Cleared | Open | Open |
| 8951 | 6341.07 | 264.21 | 45 | TN | 23 Months Cleared | Open | Open |
| 7260 | 5049.4 | 252.47 | 43 | CA | 19 Months Cleared | Open | Open |
| 15587 | 8346.85 | 278.23 | 35 | MS | 29 Months Cleared | Open | Open |
| 15049 | 7965.79 | 284.49 | 35 | IL | 27 Months Cleared | Open | Open |
| 16065 | 9092.43 | 252.57 | 35 | IL | 35 Months Cleared | Open | Open |
| 7417 | 6021.62 | 250.9 | 50 | CA | 23 Months Cleared | Open | Open |
| 11327 | 7976.62 | 332.36 | 50 | CA | 23 Months Cleared | Open | Open |
| 21588 | 11025.48 | 306.26 | 35 | VA | 35 Months Cleared | Open | Open |
| 30639 | 14578.85 | 364.47 | 35 | DE | 39 Months Cleared | Open | Open |
| 27825 | 13593.95 | 339.85 | 35 | GA | 39 Months Cleared | Open | Open |
| 17411 | 9178.01 | 286.81 | 35 | NJ | 31 Months Cleared | Open | Open |
| 25364.48 | 12732.77 | 318.32 | 35 | VA | 39 Months Cleared | Open | Open |
| 7622 | 6124.12 | 255.17 | 50 | NC | 23 Months Cleared | Open | Open |
| 20418 | 11001.5 | 275.04 | 35 | IL | 39 Months Cleared | Open | Open |
| 10565 | 6010.87 | 250.45 | 35 | LA | 23 Months Cleared | Open | Open |
| 13803 | 7144.17 | 297.67 | 35 | FL | 23 Months Cleared | Open | Open |
| 10840 | 6107.12 | 254.46 | 35 | IA | 23 Months Cleared | Open | Open |
| 24209 | 13538.8 | 338.47 | 40 | WA | 39 Months Cleared | Open | Open |
| 11158.85 | 6218.72 | 259.11 | 35 | FL | 23 Months Cleared | Open | Open |
| 11020 | 6266.5 | 250.66 | 35 | IA | 23 Months Cleared | Open | Open |
| 10010 | 6509.88 | 250.38 | 40 | NJ | 26 Months Cleared | Open | Open |
| 14171 | 8140.39 | 246.68 | 35 | GA | 31 Months Cleared | Open | Open |
| 36219 | 16800.72 | 700.03 | 40 | FL | 23 Months Cleared | Open | Open |
| 13116 | 7385.62 | 254.68 | 35 | IL | 28 Months Cleared | Open | Open |
| 12814 | 7183.54 | 256.56 | 35 | HI | 27 Months Cleared | Open | Open |
| 11444 | 7276.24 | 259.87 | 40 | TX | 27 Months Cleared | Open | Open |
| 13906 | 9032.08 | 250.89 | 40 | TN | 34 Months Cleared | Open | Open |
| 9209 | 7399.52 | 255.16 | 50 | AK | 28 Months Cleared | Open | Open |
| 10924 | 6355 | 264.79 | 37 | CA | 23 Months Cleared | Open | Open |
| 18407 | 8755.57 | 364.82 | 35 | CA | 23 Months Cleared | Open | Open |
| 27180 | 12404.4 | 413.48 | 35 | TN | 29 Months Cleared | Open | Open |
| 16994 | 8261.02 | 344.21 | 35 | NJ | 23 Months Cleared | Open | Open |
| 7795.01 | 6054.73 | 252.28 | 48 | WI | 23 Months Cleared | Open | Open |
| 42855 | 18565.31 | 501.77 | 35 | CA | 36 Months Cleared | Open | Open |
| 10726 | 6067.22 | 252.8 | 35 | MI | 23 Months Cleared | Open | Open |
| 30301 | 13496.75 | 449.89 | 35 | CA | 29 Months Cleared | Open | Open |
| 13975 | 7204.37 | 300.18 | 35 | MS | 23 Months Cleared | Open | Open |
| 13498 | 8290.6 | 276.35 | 40 | NJ | 29 Months Cleared | Open | Open |
| 9774.49 | 6027.43 | 251.14 | 38 | OH | 23 Months Cleared | Open | Open |
| 15048 | 8543.72 | 251.29 | 35 | TX | 33 Months Cleared | Open | Open |
| 23760 | 12395.4 | 413.18 | 40 | CA | 29 Months Cleared | Open | Open |

DocuSign Envelope ID: EB570C52-76A5-4951-9A34-4471EA4409AD

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 8059 | 6342.62 | 264.28 | 50 | CA | 22 Months Cleared | Open | Open |
| 18685.82 | 9431.44 | 314.38 | 35 | OH | 29 Months Cleared | Open | Open |
| 11139 | 6211.77 | 258.82 | 35 | KS | 23 Months Cleared | Open | Open |
| 33963 | 15742.25 | 393.56 | 35 | WA | 39 Months Cleared | Open | Open |
| 10321 | 5829.09 | 253.44 | 35 | OK | 23 Months Cleared | Cancel | Open |
| 23715 | 12155.45 | 100.89 | 35 | TX | 39 Months Cleared | Pending | Open |
| 7441 | 4380.88 | 282.76 | 35 | IL | 17 Months Cleared | Open | Open |
| 18581 | 10876.47 | 258.96 | 35 | KY | 41 Months Returned / Cleared | Open | |
| 7500 | 6568.38 | 252.63 | 50 | UT | 23 Months Returned / Returned / Cleared | | |
| 11942 | 7923.81 | 255.61 | 40 | NC | 35 Months Returned / Cleared | Open | |
| 61184 | 27650.49 | 453.29 | 35 | TX | 59 Months Returned / Cleared | Open | |
| 17342 | 10375.78 | 277.46 | 36 | NY | 39 Months Returned / Cleared | Open | |
| 21806 | 11774.48 | 287.18 | 35 | NC | 39 Months Returned / Cleared | Open | |
| 17391 | 10201.06 | 353.26 | 40 | OR | 29 Months Returned / Cleared | Open | |
| 11989 | 8373.83 | 277.24 | 39 | WI | 29 Months Returned / Returned / Returned / | | |
| 19203 | 11105.07 | 264.41 | 35 | IL | 38 Months Returned / Returned / Cleared | | |
| 8614 | 6382.58 | 279.3 | 44 | IN | 23 Months Returned / Cleared | Open | |
| 11782 | 6708.56 | 269.97 | 35 | NJ | 23 Months Returned / Cleared | Open | |
| 15867 | 10089.16 | 272.68 | 40 | IL | 35 Months Returned / Cleared | Open | |
| 11423 | 6574.14 | 262.97 | 35 | AR | 23 Months Returned / Cleared | Open | |
| 13954 | 8125.61 | 253.93 | 35 | MS | 30 Months Returned / Cleared | Open | |
| 15007 | 9643.99 | 267.89 | 40 | GA | 34 Months Returned / Cleared | Open | |
| 1986395.8 | | | | | | | |

| Fourth Pay | Fifth Paym | Sixth Paym | First Paym | Next Paym | # Drafts Cl | Pay Freq. | Payment M | Paused |
|---|---|---|---|---|---|---|---|---|
| Cleared | Open | Open | ######## | ######## | 0 | Monthly | CC | No |
| Open | Open | Open | ######## | ######## | 1 | Monthly | Bank | No |
| Open | Open | Open | ######## | ######## | 1 | Monthly | Bank | No |
| Open | Open | Open | ######## | ######## | 0 | Monthly | CC | No |
| Open | Open | Open | ######## | ######## | 1 | Monthly | Bank | No |
| Open | Open | Open | ######## | ######## | 0 | Monthly | CC | No |
| Open | Open | Open | ######## | ######## | 1 | Monthly | Bank | No |
| Open | Open | Open | ######## | ######## | 1 | Monthly | Bank | No |
| Open | Open | Open | ######## | ######## | 1 | Monthly | Bank | No |
| Open | Open | Open | ######## | ######## | 0 | Monthly | CC | No |
| Open | Open | Open | ######## | ######## | 1 | Monthly | Bank | No |
| Open | Open | Open | ######## | ######## | 1 | Monthly | Bank | No |
| Open | Open | Open | ######## | ######## | 1 | Monthly | Bank | No |
| Open | Open | Open | ######## | ######## | 1 | Monthly | Bank | No |
| Open | Open | Open | ######## | ######## | 1 | Monthly | Bank | No |
| Open | Open | Open | ######## | ######## | 1 | Monthly | Bank | No |
| Open | Open | Open | ######## | ######## | 0 | Monthly | CC | No |
| Open | Open | Open | ######## | ######## | 1 | Monthly | Bank | No |
| Open | Open | Open | ######## | ######## | 1 | Monthly | Bank | No |
| Open | Open | Open | ######## | ######## | 0 | Monthly | CC | No |
| Open | Open | Open | ######## | ######## | 1 | Monthly | Bank | No |
| Open | Open | Open | ######## | ######## | 1 | Monthly | Bank | No |
| Open | Open | Open | ######## | ######## | 0 | Monthly | CC | No |
| Open | Open | Open | ######## | ######## | 1 | Monthly | Bank | No |
| Open | Open | Open | ######## | ######## | 1 | Monthly | Bank | No |
| Open | Open | Open | ######## | ######## | 0 | Monthly | CC | No |
| Open | Open | Open | ######## | ######## | 1 | Monthly | Bank | No |
| Open | Open | Open | ######## | ######## | 1 | Monthly | Bank | No |
| Open | Open | Open | ######## | ######## | 1 | Monthly | Bank | No |
| Open | Open | Open | ######## | ######## | 0 | Monthly | CC | No |
| Open | Open | Open | ######## | ######## | 0 | Monthly | CC | No |
| Open | Open | Open | ######## | ######## | 1 | Monthly | Bank | No |
| Open | Open | Open | ######## | ######## | 0 | Monthly | CC | No |
| Open | Open | Open | ######## | ######## | 0 | Monthly | CC | No |
| Open | Open | Open | ######## | ######## | 0 | Monthly | CC | No |
| Open | Open | Open | ######## | ######## | 1 | Monthly | Bank | No |
| Open | Open | Open | ######## | ######## | 1 | Monthly | Bank | No |
| Open | Open | Open | ######## | ######## | 0 | Monthly | CC | No |
| Open | Open | Open | ######## | ######## | 1 | Monthly | Bank | No |
| Open | Open | Open | ######## | ######## | 1 | Monthly | Bank | No |
| Open | Open | Open | ######## | ######## | 1 | Monthly | Bank | No |
| Open | Open | Open | ######## | ######## | 0 | Monthly | CC | No |
| Open | Open | Open | ######## | ######## | 0 | Monthly | CC | No |
| Open | Open | Open | ######## | ######## | 0 | Monthly | CC | No |
| Open | Open | Open | ######## | ######## | 1 | Monthly | Bank | No |
| Open | Open | Open | ######## | ######## | 0 | Monthly | CC | No |

| Open | Open | Open | ######## | ######## | 1 Monthly | Bank | No |
|------|------|------|----------|----------|-----------|------|-----|
| Open | Open | Open | ######## | ######## | 1 Monthly | Bank | No |
| Open | Open | Open | ######## | ######## | 1 Monthly | Bank | No |
| Open | Open | Open | ######## | ######## | 0 Monthly | CC | No |
| Open | Open | Open | ######## | ######## | 1 Monthly | Bank | No |
| Open | Open | Open | ######## | ######## | 0 Monthly | CC | No |
| Open | Open | Open | ######## | ######## | 1 Monthly | Bank | No |
| Open | Open | Open | ######## | ######## | 0 Monthly | CC | No |
| Open | Open | Open | ######## | ######## | 0 Monthly | CC | No |
| Open | Open | Open | ######## | ######## | 1 Monthly | Bank | No |
| Open | Open | Open | ######## | ######## | 0 Monthly | CC | No |
| Open | Open | Open | ######## | ######## | 1 Monthly | Bank | No |
| Open | Open | Open | ######## | ######## | 0 Monthly | CC | No |
| Open | Open | Open | ######## | ######## | 0 Monthly | CC | No |
| Open | Open | Open | ######## | ######## | 0 Monthly | CC | No |
| Open | Open | Open | ######## | ######## | 1 Monthly | Bank | No |
| Open | Open | Open | ######## | ######## | 1 Monthly | Bank | No |
| Open | Open | Open | ######## | ######## | 0 Monthly | CC | No |
| Open | Open | Open | ######## | ######## | 0 Monthly | CC | No |
| Open | Open | Open | ######## | ######## | 0 Monthly | CC | No |
| Open | Open | Open | ######## | ######## | 1 Monthly | Bank | No |
| Open | Open | Open | ######## | ######## | 1 Monthly | Bank | No |
| Open | Open | Open | ######## | ######## | 1 Monthly | Bank | No |
| Open | Open | Open | ######## | ######## | 0 Monthly | CC | No |
| Open | Open | Open | ######## | ######## | 0 Monthly | CC | No |
| Open | Open | Open | ######## | ######## | 1 Monthly | Bank | No |
| Open | Open | Open | ######## | 1/9/2023 | 1 Monthly | Bank | No |
| Open | Open | Open | ######## | ######## | 0 Monthly | CC | No |
| Open | Open | Open | ######## | ######## | 1 Monthly | Bank | No |
| Open | Open | Open | ######## | ######## | 0 Monthly | CC | No |
| Open | Open | Open | ######## | ######## | 0 Monthly | CC | No |
| Open | Open | Open | ######## | ######## | 0 Monthly | CC | No |
| Open | Open | Open | ######## | ######## | 1 Monthly | Bank | No |
| Open | Open | Open | ######## | ######## | 0 Monthly | CC | No |
| Open | Open | Open | ######## | ######## | 0 Monthly | CC | No |
| Open | Open | Open | ######## | ######## | 1 Monthly | Bank | No |
| Open | Open | Open | ######## | ######## | 1 Monthly | Bank | No |
| Open | Open | Open | ######## | ######## | 0 Monthly | CC | No |
| Open | Open | Open | ######## | ######## | 1 Monthly | Bank | No |
| Open | Open | Open | ######## | ######## | 1 Monthly | Bank | No |
| Open | Open | Open | ######## | ######## | 1 Monthly | Bank | No |
| Open | Open | Open | ######## | ######## | 0 Monthly | CC | No |
| Open | Open | Open | ######## | ######## | 0 Monthly | CC | No |
| Open | Open | Open | ######## | ######## | 0 Monthly | CC | No |
| Open | Open | Open | ######## | ######## | 0 Monthly | CC | No |
| Open | Open | Open | ######## | ######## | 1 Monthly | Bank | No |
| Open | Open | Open | ######## | ######## | 1 Monthly | Bank | No |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Open | Open | Open | ######## | ######## | 1 | Monthly | Bank | No |
| Open | Open | Open | ######## | ######## | 1 | Monthly | Bank | No |
| Open | Open | Open | ######## | ######## | 0 | Monthly | CC | No |
| Open | Open | Open | ######## | ######## | 1 | Monthly | Bank | No |
| Open | Open | Open | ######## | ######## | 0 | Monthly | CC | No |
| Open | Open | Open | ######## | ######## | 1 | Monthly | Bank | No |
| Open | Open | Open | ######## | ######## | 0 | Monthly | CC | No |
| Open | Open | Open | ######## | ######## | 0 | Monthly | CC | No |
| Open | Open | Open | ######## | ######## | 0 | Monthly | CC | No |
| Open | Open | Open | ######## | ######## | 0 | Monthly | CC | No |
| Open | Open | Open | ######## | ######## | 0 | Monthly | CC | No |
| Open | Open | Open | ######## | ######## | 0 | Monthly | CC | No |
| Open | Open | Open | ######## | ######## | 0 | Monthly | CC | No |
| Open | Open | Open | ######## | ######## | 1 | Monthly | Bank | No |
| Cleared | Open | Open | ######## | ######## | 0 | Monthly | CC | No |
| Open | Open | Open | ######## | ######## | 0 | Monthly | CC | No |
| Open | Open | Open | ######## | ######## | 0 | Monthly | CC | No |
| Open | Open | Open | ######## | ######## | 0 | Monthly | CC | No |
| Open | Open | Open | ######## | ######## | 1 | Monthly | Bank/CC | No |
| Open | Open | Open | ######## | ######## | 1 | Monthly | Bank | No |
| Open | Open | Open | ######## | ######## | 0 | Monthly | CC | No |
| Open | Open | Open | ######## | ######## | 0 | Monthly | CC | No |

| Client Status | Payments I Payment S | # NSFs | # Drafts Remaining |
|---|---|---|---|
| Active File | 1 1 of 31 | 2 | 0 |
| Enroll Debt | 1 1 of 39 | 0 | 38 |
| Active File | 1 1 of 20 | 0 | 19 |
| Active File | 1 1 of 40 | 0 | 0 |
| Active File | 1 1 of 36 | 0 | 35 |
| Active File | 1 1 of 20 | 0 | 0 |
| Active File | 1 1 of 36 | 0 | 35 |
| Active File | 1 1 of 20 | 0 | 19 |
| Active File | 1 1 of 21 | 0 | 20 |
| Active File | 1 1 of 36 | 0 | 0 |
| Active File | 1 1 of 24 | 0 | 23 |
| Active File | 1 1 of 40 | 0 | 39 |
| Active File | 1 1 of 24 | 0 | 23 |
| Active File | 1 1 of 24 | 0 | 23 |
| Active File | 1 1 of 24 | 0 | 23 |
| Active File | 1 1 of 30 | 0 | 29 |
| Active File | 1 1 of 19 | 0 | 0 |
| Active File | 1 1 of 24 | 0 | 23 |
| Active File | 1 1 of 34 | 0 | 33 |
| Active File | 1 1 of 36 | 0 | 0 |
| Active File | 1 1 of 20 | 0 | 19 |
| Active File | 1 1 of 24 | 0 | 23 |
| Active File | 1 1 of 24 | 0 | 0 |
| Active File | 1 1 of 30 | 0 | 29 |
| Active File | 1 1 of 35 | 0 | 34 |
| Active File | 1 1 of 36 | 0 | 0 |
| Active File | 1 1 of 40 | 0 | 39 |
| Active File | 1 1 of 20 | 0 | 19 |
| Active File | 1 1 of 21 | 0 | 20 |
| Active File | 1 1 of 23 | 0 | 0 |
| Active File | 1 1 of 24 | 0 | 0 |
| Active File | 1 1 of 35 | 0 | 34 |
| Active File | 1 1 of 40 | 0 | 0 |
| Active File | 1 1 of 30 | 0 | 0 |
| Active File | 1 1 of 29 | 0 | 0 |
| Active File | 1 1 of 40 | 0 | 39 |
| Active File | 1 1 of 35 | 0 | 34 |
| Active File | 1 1 of 12 | 0 | 0 |
| Active File | 1 1 of 48 | 0 | 47 |
| Active File | 1 1 of 36 | 0 | 35 |
| Active File | 1 1 of 37 | 0 | 36 |
| Active File | 1 1 of 30 | 0 | 0 |
| Active File | 1 1 of 36 | 0 | 0 |
| Active File | 1 1 of 24 | 0 | 0 |
| Active File | 1 1 of 36 | 0 | 35 |
| Active File | 1 1 of 40 | 0 | 0 |

| | | | |
|---|---|---|---|
| Active File | 1 1 of 24 | 0 | 23 |
| Active File | 1 1 of 24 | 0 | 23 |
| Active File | 1 1 of 30 | 0 | 29 |
| Active File | 1 1 of 36 | 0 | 0 |
| Active File | 1 1 of 30 | 0 | 29 |
| Active File | 1 1 of 20 | 0 | 0 |
| Active File | 1 1 of 24 | 0 | 23 |
| Active File | 1 1 of 20 | 0 | 0 |
| Active File | 1 1 of 30 | 0 | 0 |
| Active File | 1 1 of 28 | 0 | 27 |
| Active File | 1 1 of 36 | 0 | 0 |
| Active File | 1 1 of 24 | 0 | 23 |
| Active File | 1 1 of 24 | 0 | 0 |
| Active File | 1 1 of 36 | 0 | 0 |
| Active File | 1 1 of 40 | 0 | 0 |
| Active File | 1 1 of 40 | 0 | 39 |
| Active File | 1 1 of 32 | 0 | 31 |
| Active File | 1 1 of 40 | 0 | 0 |
| Active File | 1 1 of 24 | 0 | 0 |
| Active File | 1 1 of 40 | 0 | 0 |
| Active File | 1 1 of 24 | 0 | 23 |
| Active File | 1 1 of 24 | 0 | 23 |
| Active File | 1 1 of 24 | 0 | 23 |
| Active File | 1 1 of 40 | 0 | 0 |
| Active File | 1 1 of 24 | 0 | 0 |
| Active File | 1 1 of 25 | 0 | 24 |
| Active File | 1 1 of 26 | 0 | 25 |
| Active File | 1 1 of 33 | 0 | 0 |
| Active File | 1 1 of 24 | 0 | 23 |
| Active File | 1 1 of 29 | 0 | 0 |
| Active File | 1 1 of 28 | 0 | 0 |
| Active File | 1 1 of 28 | 0 | 0 |
| Active File | 1 1 of 36 | 0 | 35 |
| Active File | 1 1 of 29 | 0 | 0 |
| Active File | 1 1 of 24 | 0 | 0 |
| Active File | 1 1 of 24 | 0 | 23 |
| Active File | 1 1 of 30 | 0 | 29 |
| Active File | 1 1 of 24 | 0 | 0 |
| Active File | 1 1 of 24 | 0 | 23 |
| Educational Outreach | 1 1 of 37 | 0 | 36 |
| Educational Outreach | 1 1 of 24 | 0 | 23 |
| Educational Outreach | 1 1 of 30 | 0 | 0 |
| Educational Outreach | 1 1 of 24 | 0 | 0 |
| Educational Outreach | 1 1 of 30 | 0 | 0 |
| Educational Outreach Missed | 1 1 of 24 | 0 | 0 |
| Educational Outreach Missed | 1 1 of 34 | 0 | 33 |
| Educational Outreach Missed | 1 1 of 30 | 0 | 29 |

| | | | |
|---|---|---|---|
| Educational Outreach Missed | 1 1 of 24 | 0 | 23 |
| Enroll Debt | 1 1 of 30 | 0 | 29 |
| Enroll Debt | 1 1 of 24 | 0 | 0 |
| Enroll Debt | 1 1 of 40 | 0 | 39 |
| Hardship Review | 1 1 of 23 | 0 | 0 |
| Paused Per Legal - Payment Not Pa | 1 1 of 41 | 0 | 40 |
| Unenroll Debt | 1 1 of 18 | 0 | 0 |
| Active File | 1 1 of 42 | 1 | 0 |
| Active File | 1 1 of 26 | 2 | 0 |
| Active File | 1 1 of 31 | 1 | 0 |
| Active File | 1 1 of 61 | 1 | 0 |
| Active File | 1 1 of 41 | 1 | 0 |
| Active File | 1 1 of 41 | 1 | 0 |
| Active File | 1 1 of 31 | 1 | 29 |
| Active File | 1 1 of 33 | 3 | 0 |
| Active File | 1 1 of 42 | 2 | 0 |
| Active File | 1 1 of 25 | 1 | 0 |
| Active File | 1 1 of 25 | 1 | 0 |
| Active File | 1 1 of 37 | 1 | 35 |
| Active File | 1 1 of 25 | 1 | 23 |
| Active File | 1 1 of 32 | 1 | 0 |
| Active File | 1 1 of 36 | 1 | 0 |

**EXHIBIT "4"**

**ACCOUNTS RECEIVABLE PURCHASE AGREEMENT**

This ACCOUNTS RECEIVABLE PURCHASE AGREEMENT (this "**Agreement**") is made as of December 2, 2022 (the "**Agreement Date**"), by and between ProofPositive LLC (collectively the "**Buyer**"), and Debt Relief Group (the "**Seller**" or "**LPG**", and together with the Buyer, the "**Parties**"), and The Litigation Practice Group PC ("LPG").

**RECITALS**

WHEREAS, in the regular course of business, the Seller originates account receivables from **LPG** in connection with client on-boarding services provided by the Seller to LPG and its affiliates;

WHEREAS, the account receivables represent an obligation of various clients to pay Seller for services that Seller previously provided, but which LPG shall provide from the date of execution of this Agreement;

WHEREAS, the Seller desires to sell, assign, transfer, and deliver to the Buyer, and the Buyer desires to purchase, acquire, and accept from the Seller, certain of these account receivables (the "**Purchased Accounts**").

NOW, THEREFORE, in consideration of the covenants and representations set forth herein, the Parties, intending to be legally bound, agree as follows:

**ARTICLE 1.**
**DEFINITIONS**

Section 1.1    Certain Definitions.  Certain defined terms used in this Agreement are set forth on **Exhibit A**.

**ARTICLE 2.**
**ASSIGNMENT AND TRANSFER AND CONSIDERATION**

Section 2.1    Assignment of the Purchased Accounts to the Buyer.  Upon execution of this Agreement and subject to the terms and conditions set forth herein, the Seller shall sell, assign, transfer, and deliver, and the Buyer shall purchase, acquire, and accept from the Seller, all of the Seller's right, title, and interest in and to the Purchased Accounts set forth on the spreadsheet attached to this Agreement, free and clear of any Liens.  Other than the Purchased Accounts, the Buyer shall not purchase or acquire any other assets of the Seller (collectively, the "**Excluded Assets**").

Section 2.2    No Assumption of Liabilities.  The Buyer shall not assume any Liabilities of the Seller of any kind, whether known or unknown, contingent, matured, or otherwise, whether currently existing or hereinafter created (collectively, the "**Excluded Liabilities**").

Section 2.3    Payment of Purchase Price.  Buyer shall pay $9,238.39 (total purchase price) for the Purchased Accounts (the "**Purchase Price**") by wire transfer of immediately available funds in accordance with the wire transfer instructions set forth in **Schedule 2.3** (the "**Wire Instructions**").  The Purchased Accounts are set forth on the attached spreadsheet.

Section 2.4    Guarantee of LPG.  If any file acquired by buyer shall fail to make a first payment, LPG will replace the file and bear any cost associated with such replacement.  The replacement file shall yield no less than the receivable of the failed file.  In addition, if any any calendar month a total of less than 80% of files make a cleared payment, LPG shall replace any non-performing files in such month so that the performance of the file package as a whole equals 80%.  This guarantee shall continue until the completion of the 24th month following execution of this agreement.

DocuSign Envelope ID: 50653324-BC47-44ED-9318-728E7649B7AA

## ARTICLE 3.
## REPRESENTATIONS AND WARRANTIES OF THE SELLER

The Seller represents and warrants to the Buyer, as of the Agreement Date and as of the Closing Date, or, if expressly made as of a specified date, as of such specified date, as follows:

Section 3.1    <u>Organization; Good Standing</u>.  The Seller is a Limited Liability Company duly organized, validly existing, and in good standing under the Laws of the State of Delaware and is duly qualified to do business and is in good standing as a foreign corporation in each jurisdiction where the ownership or operation of the Business requires such qualification, except where the failure to be so qualified would not reasonably be expected to have, individually or in the aggregate, a material adverse effect on the business, results of operations, financial condition, or assets of the Seller.

Section 3.2    <u>Power and Authority</u>.  The Seller has all requisite right, power, and authority to execute, deliver, and perform this Agreement and the Transaction Agreements to which it is a party, to consummate the transactions contemplated hereby and thereby, and to perform its obligations hereunder and thereunder.  The execution and delivery of this Agreement and the Transaction Agreements by the Seller, and the consummation by the Seller of the transactions contemplated hereby and thereby, have been duly approved by the Seller, and no further action is required on the part of the Seller to authorize this Agreement, any Transaction Agreement to which it is a party, or the transactions contemplated hereby and thereby.  This Agreement has been, and each of the Transaction Agreements will be, duly and validly executed and delivered by the Seller and, assuming the due and valid authorization, execution, and delivery of this Agreement by the other Parties, and of each such Transaction Agreement by the other parties thereto, constitutes, or will constitute, a valid and binding obligation of the Seller, enforceable against it in accordance with its terms and conditions, except as enforcement may be limited by applicable bankruptcy, insolvency, reorganization, moratorium, and other Laws affecting enforcement of creditor's rights generally and except insofar as the availability of equitable remedies may be limited by applicable Law.

Section 3.3    <u>Title to, and Sufficiency of, the Purchased Accounts</u>.  The Seller has and shall convey to the Buyer, at the Closing, good, valid, transferable, and marketable title to, or valid leasehold interests in, all of the Purchased Accounts, free and clear of all Liens.

Section 3.4    <u>Consents</u>.  The Seller is not required to give any notice to, make any filing with, or obtain any authorization, consent, or approval of, any Governmental Body or Third Party, including a party to any assigned contract, in connection with the execution, delivery, and performance by the Seller of this Agreement or any of the Transaction Agreements to which it is a party or the consummation of the transactions contemplated hereby and thereby.

Section 3.5    <u>No Conflicts</u>. The execution and delivery by the Seller of this Agreement and each of the Transaction Agreements, and the consummation of the transactions contemplated hereby and thereby, will not conflict with, result in any violation of, or default under (with or without notice or lapse of time, or both), or give rise to an additional payment obligation, a right of termination, cancellation, modification, or acceleration of any obligation, or loss of any benefit, under: (a) any provision of the Organizational Documents of the Seller; (b) any contract to which the Seller is party, including, without limitation, any assigned contract; or (c) any Law or order applicable to the Seller or any of the Purchased Accounts.

Section 3.6    <u>Compliance with Laws</u>.  The Seller has materially complied, and is now materially complying, with all Laws applicable to the ownership and use of the Purchased Accounts.

Section 3.7     Legal Proceedings.  There is no Action of any nature pending or, to the Knowledge of the Seller, threatened against or by the Seller: (a) relating to or affecting the Purchased Accounts or (b) that challenges or seeks to prevent, enjoin, or otherwise delay the transactions contemplated by this Agreement and the Transaction Agreements.  No event has occurred or circumstance exists that may give rise to, or serve as a basis for, any such Action.

Section 3.8     Condition of Purchased Accounts.  Each Purchased Account shall have received no less than one processed payment.

Section 3.9     Confidentiality.  Seller agrees and acknowledges that all Purchased Accounts, the pricing, and all terms set forth in this Agreement are confidential (together, the "**Confidential Information**").  Seller will at all times keep the  Confidential Information in confidence and trust.  Seller will not, without the prior written consent of an authorized officer of Buyer, (A) copy, use or disclose any Confidential Information, (B) deliver or disclose any Confidential Information to any person or entity outside the Buyer, or (C) use the Confidential Information for Seller's own use or use it to the detriment of Buyer.  Notwithstanding the foregoing, Seller may, without consent, use the Confidential Information and disclose and deliver same to Seller's employees or agents, if applicable, who have a need to know, provided such employees or agents have entered into written agreements approved by Buyer and containing provisions at least as restrictive as these provisions.  Seller agrees that violation of this Section 3.9.  The Parties agree that the disclosure of the Confidential Information in violation of this Agreement may cause the Buyer irreparable harm and that any breach or threatened breach by the Seller entitles Buyer to seek injunctive relief, in addition to any other legal or equitable remedies available to it, in any court of competent jurisdiction.

## ARTICLE 4.
## REPRESENTATIONS AND WARRANTIES OF THE BUYER

The Buyer represents and warrants to the Seller, as of the Agreement Date and as of the Closing Date, or, if expressly made as of a specified date, as of such specified date, as follows:

Section 4.1     Organization; Good Standing.  The Buyer is a limited liability company, duly organized, validly existing, and in good standing under the Laws of the State of Florida.

Section 4.2     Power and Authority.  The Buyer has all requisite right, power, and authority to execute, deliver, and perform this Agreement and the Transaction Agreements to which it is a party, to consummate the transactions contemplated hereby and thereby, and to perform its obligations hereunder and thereunder.  The execution and delivery of this Agreement and the Transaction Agreements by the Buyer, and the consummation by the Buyer of the transactions contemplated hereby and thereby, have been duly approved by the Buyer, and no further action is required on the part of the Buyer to authorize this Agreement, any Transaction Agreement to which it is a party, or the transactions contemplated hereby and thereby.  This Agreement has been, and each of the Transaction Agreements will be, duly and validly executed and delivered by the Buyer and, assuming the due and valid authorization, execution, and delivery of this Agreement by the other Parties, and of each such Transaction Agreement by the other parties thereto, constitutes, or will constitute, a valid and binding obligation of the Buyer, enforceable against it in accordance with its terms and conditions, except as enforcement may be limited by applicable bankruptcy, insolvency, reorganization, moratorium and other Laws affecting enforcement of creditor's rights generally and except insofar as the availability of equitable remedies may be limited by applicable Law.

Section 4.3     No Conflicts.  The execution and delivery by the Buyer of this Agreement and each of the Transaction Agreements, and the consummation of the transactions contemplated hereby and thereby, will not conflict with, result in any violation of, or default under (with or without notice or lapse of time, or both), or give

rise to an additional payment obligation, a right of termination, cancellation, modification, or acceleration of, any obligation, or loss of any benefit under: (a) any provision of the Buyer's Organizational Documents; (b) any contract to which the Buyer is party, other than the Buyer Representation Agreement; or (c) any Law applicable to the Buyer.

Section 4.4    <u>Sufficient Funds</u>.  The Buyer has, and will have, sufficient funds available to make payment of the Purchase Price and consummate the transactions contemplated by this Agreement and the Transaction Agreements.

## ARTICLE 5.
## COVENANTS

Section 5.1    <u>Appropriate Actions</u>.

(a)    <u>General</u>.  Each of the Parties shall use commercially reasonable efforts to take all actions necessary to consummate the transactions contemplated by this Agreement as soon as reasonably practicable after the execution of this Agreement, including taking all actions necessary to comply promptly with all applicable Laws that may be imposed on it or any of its Affiliates with respect to the Closing.

## ARTICLE 6.
## CLOSING

Section 6.1    <u>Closing</u>.  The closing of the transactions contemplated by this Agreement (the "**Closing**") will take place upon the execution and delivery of this Agreement or at such other time, date, and place as the Parties may agree in writing.  The date on which the Closing occurs is hereinafter referred to as the "**Closing Date**." The Parties agree that the Closing may take place by the electronic exchange of executed counterpart documents and the electronic transfer of funds.

Section 6.2    <u>Closing Deliverables of the Seller</u>.  At or prior to the Closing, Seller shall deliver to Buyer any of the following if requested by Buyer:  (i) a bill of sale and assignment and assumption agreement substantially in the form attached hereto as **<u>Exhibit B</u>** (the "**Bill of Sale and Assignment and Assumption Agreement**"), duly executed by the Seller, effecting the transfer and assignment to, and assumption by, the Buyer of the Purchased Accounts; and (ii) such other customary instruments of transfer, assumption, filings, or documents, in form and substance reasonably satisfactory to the Buyer, as may be required to give effect to this Agreement.

Section 6.3    <u>Closing Deliverables of the Buyer</u>.  At or prior to the Closing, the Seller shall have received the following: (i) the Upfront Cash Payment; and (ii) if requested pursuant to <u>Section 6.2</u>, the Bill of Sale and Assignment and Assumption Agreement, duly executed by the Buyer.

Section 6.4    <u>Indemnification by the Seller</u>.  Subject to the limitations set forth in this <u>Article 6</u>, the Seller agrees to indemnify and hold harmless the Buyer, including its shareholders, members, directors, managers, officers, employees, Affiliates, and agents (each, a "**Buyer Indemnified Party**" and, collectively, the "**Buyer Indemnified Parties**"), against all claims, losses, Liabilities, damages, deficiencies, diminutions in value, costs, interest, awards, judgments, penalties, and expenses, including reasonable out-of-pocket attorneys' and consultants' fees and expenses and including any such reasonable expenses incurred in connection with investigating, defending against, or settling any of the foregoing (each, a "**Loss**" and, collectively, the "**Losses**") paid, suffered, incurred, sustained, or accrued by any Buyer Indemnified Party, directly or indirectly, as a result of, arising out of, or in connection with: (a) any inaccuracy in, or breach of, any of the representations or warranties of the Seller contained in this Agreement, (b) any breach or non-fulfillment of any covenant, agreement, or

DocuSign Envelope ID: 50653324-8C47-44ED-9318-728E7649B7AA

obligation to be performed by the Seller pursuant to this Agreement, (c) any Excluded Asset or any Excluded Liability.

Section 6.5    Indemnification by the Buyer.  Subject to the limitations set forth in this Article 6, the Buyer agrees to indemnify and hold harmless the Seller, including its Affiliates and agents (each, a "**Seller Indemnified Party**" and, collectively, the "**Seller Indemnified Parties**"), against all Losses paid, suffered, incurred, sustained, or accrued by any Seller Indemnified Party, directly or indirectly, as a result of, arising out of, or in connection with: (a) any inaccuracy in, or breach of, any of the representations or warranties of the Buyer contained in this Agreement; (b) any breach or non-fulfillment of any covenant, agreement, or obligation to be performed by the Buyer pursuant to this Agreement; (c) any event or occurance related to the Purchased Accounts or Buyer occurring after the Closing; or (d) resulting from any omissions or misstatements made by Buyer to investors or potential investors.

Section 6.6    Indemnification Procedures.

(a)    No Restraints.  Promptly following receipt by an Indemnified Party of notice by a Third Party (including any Governmental Body) of any complaint, dispute, or claim or the commencement of any audit, investigation, Action or proceeding with respect to which such Indemnified Party may be entitled to indemnification pursuant hereto (a "**Third-party Claim**"), such Indemnified Party shall provide written notice thereof to the Indemnifying Party, provided, however, that the failure to so notify the Indemnifying Party shall relieve the Indemnifying Party from Liability hereunder with respect to such Third-party Claim only if, and only to the extent that, such failure to so notify the Indemnifying Party results in the forfeiture by the Indemnifying Party of rights and defenses otherwise available to the Indemnifying Party with respect to such Third-party Claim.  The Indemnifying Party shall have the right, upon written notice delivered to the Indemnified Party within twenty days thereafter assuming full responsibility for any Losses resulting from such Third-party Claim, to assume the defense of such Third-party Claim, including the employment of counsel reasonably satisfactory to the Indemnified Party and the payment of the fees and disbursements of such counsel; provided, however, if the Indemnifying Party declines or fails to assume the defense of such Third-party Claim on the terms provided above or to employ counsel reasonably satisfactory to the Indemnified Party, in either case within such twenty day period, then any Losses shall include the reasonable fees and disbursements of counsel for the Indemnified Party as incurred.  In any Third-party Claim for which indemnification is being sought hereunder the Indemnified Party or the Indemnifying Party, whichever is not assuming the defense of such Third-party Claim, shall have the right to participate in such matter and to retain its own counsel at such Party's own expense.  The Indemnifying Party or the Indemnified Party (as the case may be) shall at all times use reasonable efforts to keep the Indemnifying Party or Indemnified Party (as the case may be) reasonably apprised of the status of the defense of any matter, the defense of which it is maintaining, and to cooperate in good faith with each other with respect to the defense of any such matter.

(b)    No Indemnified Party may settle or compromise any Third-party Claim or consent to the entry of any judgment with respect to which indemnification is being sought hereunder without the prior written consent of the Indemnifying Party (which may not be unreasonably withheld or delayed), unless (i) the Indemnifying Party fails to assume and maintain the defense of such Third-party Claim or (ii) such settlement, compromise, or consent includes an unconditional release of the Indemnifying Party and its officers, directors, employees and Affiliates from all Liability arising out of, or related to, such Third-party Claim.  An Indemnifying Party may not, without the prior written consent of the Indemnified Party, settle or compromise any Third-party Claim or consent to the entry of any judgment with respect to which indemnification is being sought hereunder unless such settlement, compromise, or consent (A) includes an unconditional release of the Indemnified Party and its officers, directors, employees, and Affiliates from all Liability arising out of, or related to, such Third-party Claim, (B) does not contain any admission or statement suggesting any wrongdoing or Liability on behalf of the

DocuSign Envelope ID: 506F3324-8C47-44ED-9348-728E7649B7AA

Indemnified Party, and (C) does not contain any equitable order, judgment, or term that in any manner affects, restrains, or interferes with the business of the Indemnified Party or any of the Indemnified Party's Affiliates.

(c)    If an Indemnified Party claims a right to payment pursuant hereto with respect to any matter not involving a Third-party Claim (a "**Direct Claim**"), such Indemnified Party shall send written notice of such claim to the appropriate Indemnifying Party (each, a "**Notice of Claim**").  Such Notice of Claim shall specify the basis for such Direct Claim.  The failure by any Indemnified Party so to notify the Indemnifying Party shall not relieve the Indemnifying Party from any Liability that it may have to such Indemnified Party with respect to any Direct Claim made pursuant to this Section 6.6(c).  If the Indemnifying Party does not notify the Indemnified Party within thirty days following its receipt of such Notice of Claim that the Indemnifying Party disputes its Liability to the Indemnified Party under this Article 6 or the amount thereof, the Direct Claim specified by the Indemnified Party in such Notice of Claim shall be conclusively deemed a Liability of the Indemnifying Party under this Article 6, and the Indemnifying Party shall pay the amount of such Liability to the Indemnified Person on demand or, in the case of any Notice of Claim in which the amount of the Direct Claim (or any portion of the Direct Claim) is estimated, on such later date when the amount of such Direct Claim (or such portion of such Direct Claim) becomes finally determined.  In the event that the Indemnifying Party has timely disputed its Liability with respect to such Direct Claim as provided above, as promptly as possible, such Indemnified Party and the appropriate Indemnifying Party shall establish the merits and amount of such Direct Claim (by mutual agreement, litigation, arbitration or otherwise) and, within five business days following the final determination of the merits and amount of such Direct Claim, the Indemnifying Party shall pay to the Indemnified Party an amount equal to such Direct Claim as determined hereunder.

### ARTICLE 7.
### MISCELLANEOUS

Section 7.1    Entire Agreement; Amendment.  This Agreement and the Transaction Agreements (including the exhibits hereto and thereto and the documents referred to therein) constitute the entire agreement among the Parties with respect to the subject matter hereof and supersede any prior understandings, agreements, or representations by or among the Parties, written or oral, to the extent they related in any way to the subject matter hereof.  This Agreement may be amended with the written consent of each of the Parties or any successor thereto by execution of an instrument in writing.

Section 7.2    Waivers.  The rights and remedies of the Parties to this Agreement are cumulative and not alternative.  To the maximum extent permitted by applicable Law: (a) no claim or right arising out of this Agreement or the documents referred to in this Agreement can be discharged by one Party, in whole or in part, by a waiver or renunciation of the claim or right unless in writing signed by the other Parties; (b) no waiver that may be given by a Party will be applicable except in the specific instance for what it is given; and (c) no notice to, or demand on, one Party will be deemed to be a waiver of any obligation of such Party or of the right of the Party giving such notice or demand to take further action without notice or demand as provided in this Agreement or the Transaction Agreements.

Section 7.3    Notices.  All notices and other communications required or permitted hereunder shall be made to the address of a Party listed on the signature page to this Agreement and shall be (a) in writing, (b) effective when given, and (c), in any event, deemed to be given upon receipt or, if earlier: (i) upon delivery, if delivered by hand; (ii) two business days after deposit with FedEx Express or similar recognized international overnight courier service, freight prepaid; or (iii) one business day after facsimile or electronic mail transmission. A Party may change the address to which notices, requests, demands, claims, and other communications hereunder are to be delivered by giving the other Parties advance written notice pursuant to the provisions above.

DocuSign Envelope ID: 50653324-BC47-44ED-9318-728E7649B7AA

Section 7.4    <u>Successors and Assigns</u>.  This Agreement shall be binding upon, and inure to the benefit of, the Parties named herein and their respective successors and permitted assigns.  Neither this Agreement nor any rights or obligations of a Party hereunder shall be assigned by a Party (unless to an Affiliate of such Party) without the prior written consent of the other Parties.  This Agreement will be binding upon any permitted assignee of any Party.  No assignment shall have the effect of relieving any Party to this Agreement of any of its obligations hereunder.

Section 7.5    <u>Public Disclosure</u>.  Except as may be required by Law, the Seller shall not issue any statement or communication to any Third Party (other than its respective agents) regarding the subject matter of this Agreement or the transactions contemplated hereby, including, if applicable, the termination of this Agreement and the reasons therefor, without the prior written consent of the Buyer.

Section 7.6    <u>Expenses and Fees</u>.  Whether or not the Closing occurs, all fees and expenses incurred in connection with this transactions contemplated by this Agreement, including all legal, accounting, financial advisory, consulting and all other fees and expenses of Third Parties incurred by a Party in connection with the negotiation and effectuation of the terms and conditions of this Agreement and the transactions contemplated hereby, shall be the obligation of the respective Party incurring such fees and expenses.

Section 7.7    <u>Specific Performance</u>.  The Parties agree that irreparable damage would occur if any provision of this Agreement was not performed in accordance with the terms hereof and that the Parties shall be entitled to specific performance of the terms hereof, in addition to any other remedy to which they are entitled hereunder, at Law or in equity.

Section 7.8    <u>Counterparts</u>.  This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement.  A signed copy of this Agreement delivered by facsimile, electronic mail, or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

Section 7.9    <u>Governing Law</u>.  This Agreement shall, in all respects, be construed in accordance with, and governed by, the Laws of the State of California without regard to conflict of Laws principles.

Section 7.10    <u>Severability</u>.  Any term or provision of this Agreement that is invalid or unenforceable in any situation in any jurisdiction shall not affect the validity or enforceability of the remaining terms and provisions hereof or the validity or enforceability of the offending term or provision in any other situation or in any other jurisdiction.

Section 7.11    <u>Construction</u>.  The Parties have participated jointly in the negotiation and drafting of this Agreement.  In the event an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the Parties and no presumption or burden of proof shall arise favoring or disfavoring any Party by virtue of the authorship of any of the provisions of this Agreement.

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the Agreement Date.

**BUYER:**

**ProofPositive LLC**

By: _Gail Hanson_____
BFC40F37742742A...
Name: Gail Hanson
Title: Member

**SELLER:**

**Debt Relief Group**

By: _Billy Burns_____
3ECDDBC8C1774C9...
Name: William Burns
Title: CEO

**APPROVAL OF ASSIGNMENT AND GUARANTEE**

The assignment of the Purchased Accounts set forth in this Agreement as well as the guarantee included therein is hereby approved, and with respect to the Purchased Accounts, the Buyer shall have all rights of Buyer as set forth in this agreement.

**The Litigation Practice Group P.C.**

By: _Daniel S March_____
9D494DB1993341E...
Name: Daniel S. March
Title: Managing Shareholder

*[Signature Page to Accounts Receivable Purchase Agreement]*

DocuSign Envelope ID: 50653324-BC47-44ED-9318-728E7649B7AA

## EXHIBIT A

## DEFINITIONS

As used in this Agreement, the following terms have the following meanings (terms defined in the singular to have a correlative meaning when used in the plural and vice versa).

(a)    "**Action**" shall mean any civil, criminal, or administrative action, claim, suit, demand, charge, citation, reexamination, opposition, interference, decree, injunction, mediation, hearing, notice of violation, demand letter, litigation, proceeding, labor dispute, arbitral action, governmental or other audit, inquiry, criminal prosecution, investigation, unfair labor practice charge, or complaint.

(b)    "**Agreement**" shall have the meaning set forth in the preamble to this Agreement.

(c)    "**Agreement Date**" shall have the meaning set forth in the preamble to this Agreement.

(d)    "**Affiliate**" shall mean (i) with respect to any non-natural Person, any Person that, directly or indirectly, through one or more intermediaries, controls, is controlled by, or is under common control with, such Person and (ii), with respect to any individual, (A) family members of such individual, by blood, adoption, or marriage, (B) such individual's spouse or ex-spouse and (C) any Person that is directly or indirectly under the control of any of the foregoing individuals.  For purposes of this definition, "control" (including with correlative meanings, the terms "controlling," "controlled by," and under "common control with") means the possession, directly or indirectly, of the power to direct the management and policies of a Person, whether through the ownership of voting securities, by contract, or otherwise.

(e)    "**Bill of Sale and Assignment and Assumption Agreement**" shall have the meaning set forth in Section 6.2.

(f)    "**Business**" shall mean the business of the Seller as conducted on the Agreement Date.

(g)    "**Buyer**" shall have the meaning set forth in the preamble to this Agreement.

(h)    "**Buyer Indemnified Parties**" shall have the meaning set forth in Section 6.4.

(i)    "**Closing**" shall have the meaning set forth in Section 6.1.

(j)    "**Closing Date**" shall have the meaning set forth in Section 6.1.

(k)    "**Direct Claim**" shall have the meaning set forth in Section 6.6(c).

(l)    "**Excluded Assets**" shall have the meaning set forth in Section 2.1.

(m)    "**Excluded Liabilities**" shall have the meaning set forth in Section 2.2.

(n)    "**Governmental Body**" shall mean any: (i) nation, province, state, county, city, town, village, district, or other jurisdiction of any nature; (ii) federal, provincial, state, local, municipal, foreign, or other government; (iii) governmental or quasi-governmental authority of any nature (including any governmental agency, branch, department, official, or entity and any court or other tribunal); (iv) multi-national organization or body; or (v) body exercising, or entitled to exercise, any administrative, executive, judicial, legislative, police, regulatory, or taxing authority or power of any nature.

DocuSign Envelope ID: 506F3324-8C47-44ED-9318-728E7649B7AA

(o)    "**Indebtedness**" means, without duplication and with respect to the Seller, all: (i) indebtedness for borrowed money; (ii) obligations for the deferred purchase price of property or services, (iii) long or short-term obligations evidenced by notes, bonds, debentures or other similar instruments; (iv) obligations under any interest rate, currency swap, or other hedging agreement or arrangement; (v) capital lease obligations; (vi) reimbursement obligations under any letter of credit, banker's acceptance or similar credit transactions; (vii) guarantees made by the Seller on behalf of any third party in respect of obligations of the kind referred to in the foregoing clauses (i) through (vi); and (viii) any unpaid interest, prepayment penalties, premiums, costs and fees that would arise or become due as a result of the prepayment of any of the obligations referred to in the foregoing clauses (i) through (vii).

(p)    "**Indemnified Party**" shall mean a Buyer Indemnified Party or a Seller Indemnified Party, as the case may be, making a claim for indemnification under Article 6.

(q)    "**Indemnifying Party**" shall mean a Party against whom a claim for indemnification is asserted under Article 6.

(r)    "**Knowledge**" shall mean, with respect to the Seller, the actual or constructive knowledge of all facts relevant to this transaction and the transacting parties, after due inquiry.

(s)    "**Law**" shall mean any law, statute, ordinance, regulation, rule, code, notice requirement, court decision, or agency guideline, of any foreign, federal, state, or local Governmental Body.

(t)    "**Liabilities**" shall mean any direct or indirect liability, Indebtedness, obligation, commitment, expense, claim, deficiency, guaranty, or endorsement of, or by, any Person of any type, known or unknown, and whether accrued, absolute, contingent, matured, unmatured, determined or undeterminable, on- or off-balance sheet, or other.

(u)    "**Lien**" shall mean any mortgage, pledge, lien, charge, claim, security interest, adverse claims of ownership or use, restrictions on transfer, defect of title, or other encumbrance of any sort.

(v)    "**Losses**" shall have the meaning set forth in Section 6.4.

(w)    "**Notice of Claim**" shall have the meaning set forth in Section 6.6(c).

(x)    "**Organizational Documents**" shall mean, with respect to a Person, the charter, bylaws, limited liability company agreement, and other organizational documents of such Person, in each case, as amended.

(y)    "**Party**" or "**Parties**" shall have the meaning set forth in the preamble to this Agreement.

(z)    "**Permitted Liens**" shall mean (i) Liens for Taxes not yet delinquent or being contested in good faith by appropriate proceedings, (ii) statutory Liens (including materialmen's, warehousemen's, mechanic's, repairmen's, landlord's, and other similar Liens) arising in the ordinary course of business securing payments not yet delinquent or being contested in good faith by appropriate proceedings, and (iii) restrictive covenants, easements, and defects, imperfections or irregularities of title, if any, of a nature that do not materially and adversely affect the assets or properties subject thereto.

(aa)    "**Person**" shall mean any individual, corporation (including any non-profit corporation), general or limited partnership, limited liability company, joint venture, estate, trust, association, organization, labor union, Governmental Body, or other entity.

DocuSign Envelope ID: 5D6F3324-8C47-4EF0-9319-728E7649B7AA

(bb)     "**Purchase Price**" shall have the meaning set forth in Section 2.3.

(cc)     "**Purchased Accounts**" shall have the meaning set forth in the Recitals.

(dd)     "**Seller**" shall have the meaning set forth in the preamble to this Agreement.

(ee)     "**Seller Indemnified Parties**" shall have the meaning set forth in Section 6.5.

(ff)     "**Tax**" or "**Taxes**" shall mean any U.S. federal, state, local or non-U.S. income, gross receipts, license, payroll, employment, excise, severance, stamp, occupation, premium, windfall profits, environmental, customs duties, capital stock, escheat, franchise, profits, withholding, social security, unemployment, disability, real property, personal property, sales, use, transfer, registration, value added, alternative or add-on minimum, estimated, or other tax of any kind whatsoever, including any interest, penalty, or addition thereto, whether disputed or not.

(gg)     "**Tax Returns**" means any return, declaration, report, claim for refund, or information return or statement relating to Taxes, including any schedule or attachment thereto, and including any amendment thereof.

(hh)     "**Third Party**" or "**Third Parties**" shall mean any Person other than the Parties or their respective Affiliates.

(ii)     "**Third-party Claim**" shall have the meaning set forth in Section 6.6(a).

(jj)     "**Transaction Agreements**" shall mean the Bill of Sale and Assignment and Assumption Agreement, and each other agreement, instrument, and/or certificate contemplated by this Agreement or such other agreements to be executed in connection with the transactions contemplated hereby or thereby.

(kk)     "**Upfront Cash Payment**" shall have the meaning set forth in Section 2.3.

(ll)     "**Wire Instructions**" shall have the meaning set forth in Section 2.3.

## EXHIBIT B

**FORM OF BILL OF SALE AND ASSIGNMENT AND ASSUMPTION AGREEMENT**

THIS BILL OF SALE AND ASSIGNMENT AND ASSUMPTION AGREEMENT (this **"Agreement"**), is made by and between **Buyer**, and **Seller**.  Each of the Seller and the Buyer are sometimes referred to herein, individually, as a **"Party"** and, collectively, as the **"Parties."**

WHEREAS, the Buyer and the Seller have entered into that certain Accounts Receivable Purchase Agreement, of even date herewith (the **"Purchase Agreement"**), pursuant to which the Seller has agreed to sell, assign, transfer, and deliver to the Buyer, and the Buyer has agreed to purchase, acquire, and accept from the Seller, all right, title, and interest of the Seller in and to the Purchased Accounts, free and clear of any Liens.

NOW, THEREFORE, in consideration of the covenants and representations set forth herein, and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the Parties, intending to be legally bound, agree as follows:

1.      Defined Terms.  Capitalized terms used but not otherwise defined in this Agreement shall have the meanings assigned to such terms in the Purchase Agreement.

2.      Sale of Purchased Accounts; Assignment.  The Seller hereby sells, assigns, transfers, and delivers to the Buyer, and the Buyer hereby purchases, acquires, and accepts from the Seller, all right, title, and interest of the Seller in and to the Purchased Accounts, free and clear of any Liens.

3.      Further Assurances.  Each of the Parties agrees, from time to time, at the request of the any other Party, to execute and deliver such other instruments of conveyance, power of attorney, sale, transfer, or assignment and take such other actions as such other Party may reasonably request in order to more effectively consummate the transactions contemplated by this Agreement.

4.      Terms of the Purchase Agreement.  This Agreement is intended to evidence the consummation of the transactions contemplated by the Purchase Agreement and is subject to the terms and conditions set forth in the Purchase Agreement.   The terms of the Purchase Agreement, including, but not limited to, the representations, warranties, covenants, agreements, and indemnities relating to the Purchased Accounts are incorporated herein by this reference.  The Parties acknowledge and agree that the representations, warranties, covenants, agreements, and indemnities contained in the Purchase Agreement shall not be superseded hereby but shall remain in full force and effect to the full extent provided therein.  In the event of any conflict or inconsistency between the terms of the Purchase Agreement and the terms hereof, the terms of the Purchase Agreement shall govern.

5.      Counterparts.  This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement.  A signed copy of this Agreement delivered by facsimile, electronic mail, or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

*[Remainder of page intentionally left blank.]*

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date first above written.

**BUYER:**

**ProofPositive LLC**

By: _Gail Hanson_
Name: Gail Hanson
Title: Member

**SELLER:**

**Debt Relief Group**

By: _Billy Burns_
Name: William Burns
Title: CEO

DocuSign Envelope ID: 506F3324-8C47-44ED-9349-728E7649B7AA

**Schedule 2.3**
**Wire Instructions**

<u>**$9,238.39**</u>

**Account Holder Name: Debt Relief Group**

**Address: 1800 Old Okeechobee Rd Suite 200, West Palm Beach, FL 33409**

**Routing Number:** ████████

**Account Number:** ████████

DocuSign Envelope ID: 506F3324-BC47-44F9-9319-728E7649B7AA

| Customer | Company | Assigned T | Enrolled D | Monthly P | Second Pa | Third Payn | Fourth Pay | Fifth Paym |
|----------|---------|-----------|-----------|-----------|-----------|-----------|-----------|-----------|
| BATLLC-64 | Debt Relie | ████████ | ######## | 554.38 | 554.38 | 554.38 | 554.38 | 554.38 |
| BATLLC-65 | Debt Relie | ████████ | ######## | 518.07 | 518.07 | 518.07 | 518.07 | 518.07 |
| BATLLC-65 | Debt Relie | ████████ | ######## | 433.81 | 456.48 | 456.48 | 456.48 | 456.48 |
| BATLLC-64 | Debt Relie | ████████ | ######## | 373.26 | 373.26 | 373.26 | 373.26 | 373.26 |

DocuSign Envelope ID: 50653324-8C47-4AED-9348-728E7649B7AA

| Debt Enrol | Total Prog | Total Paym | Fee 1 | State | Program L | First Paym | Second Pa | Third Payn | Fourth Pay |
|---|---|---|---|---|---|---|---|---|---|
| 41103 | 19403.47 | 554.38 | 39 | SC | 33 Months | Cleared | Open | Open | Open |
| 28916 | 12433.72 | 518.07 | 35 | FL | 23 Months | Cleared | Open | Open | Open |
| 37039 | 16410.66 | 433.81 | 35 | VA | 35 Months | Cleared | Open | Open | Open |
| 24919 | 13437.28 | 373.26 | 40 | FL | 35 Months | Cleared | Open | Open | Open |

131977 x .07=    **$9,238.39**

DocuSign Envelope ID: 50653324-8C47-44ED-9318-728E7649B7AA

| Fifth Paym | Sixth Paym | First Paym | Next Paym | # Drafts Cl | Pay Freq. | Payment M | Paused | Client Status |
|---|---|---|---|---|---|---|---|---|
| Open | Open | ######## | ######## | 1 | Monthly | Bank | No | Active File |
| Open | Open | ######## | ######## | 1 | Monthly | Bank | No | Active File |
| Open | Open | ######## | ######## | 1 | Monthly | Bank | No | Active File |
| Open | Open | ######## | ######## | 1 | Monthly | Bank | No | Active File |

DocuSign Envelope ID: 506F3324-8C47-44E9-9319-728E7849B7AA

| Payments | Payment S | # NSFs | # Drafts Remaining |
|---|---|---|---|
| 1 | 1 of 35 | 0 | 34 |
| 1 | 1 of 24 | 0 | 23 |
| 1 | 1 of 36 | 0 | 35 |
| 1 | 1 of 36 | 0 | 35 |

**EXHIBIT "5"**

DocuSign Envelope ID: D55DB2EF-C312-4AD9-8E24-7519DCA8329

**ACCOUNTS RECEIVABLE PURCHASE AGREEMENT**

This ACCOUNTS RECEIVABLE PURCHASE AGREEMENT (this "**Agreement**") is made as of December 21, 2022 (the "**Agreement Date**"), by and between The Litigation Practice Group PC (collectively the "**Buyer**"), and Debt Relief Group (the "**Seller" or "LPG**", and together with the Buyer, the **"Parties"**), and The Litigation Practice Group PC ("LPG").

**RECITALS**

WHEREAS, in the regular course of business, the Seller originates account receivables from **LPG** in connection with client on-boarding services provided by the Seller to LPG and its affiliates;

WHEREAS, the account receivables represent an obligation of various clients to pay Seller for services that Seller previously provided, but which LPG shall provide from the date of execution of this Agreement;

WHEREAS, the Seller desires to sell, assign, transfer, and deliver to the Buyer, and the Buyer desires to purchase, acquire, and accept from the Seller, certain of these account receivables (the "**Purchased Accounts**").

NOW, THEREFORE, in consideration of the covenants and representations set forth herein, the Parties, intending to be legally bound, agree as follows:

**ARTICLE 1.**
**DEFINITIONS**

Section 1.1      Certain Definitions.  Certain defined terms used in this Agreement are set forth on **Exhibit A**.

**ARTICLE 2.**
**ASSIGNMENT AND TRANSFER AND CONSIDERATION**

Section 2.1      Assignment of the Purchased Accounts to the Buyer.  Upon execution of this Agreement and subject to the terms and conditions set forth herein, the Seller shall sell, assign, transfer, and deliver, and the Buyer shall purchase, acquire, and accept from the Seller, all of the Seller's right, title, and interest in and to the Purchased Accounts set forth on the spreadsheet attached to this Agreement, free and clear of any Liens.  Other than the Purchased Accounts, the Buyer shall not purchase or acquire any other assets of the Seller (collectively, the "**Excluded Assets**").

Section 2.2      No Assumption of Liabilities.  The Buyer shall not assume any Liabilities of the Seller of any kind, whether known or unknown, contingent, matured, or otherwise, whether currently existing or hereinafter created (collectively, the "**Excluded Liabilities**").

Section 2.3      Payment of Purchase Price.  Buyer shall pay $191.968.71 (total purchase price) for the Purchased Accounts (the "**Purchase Price**") by wire transfer of immediately available funds in accordance with the wire transfer instructions set forth in **Schedule 2.3** (the "**Wire Instructions**").  The Purchased Accounts are set forth on the attached spreadsheet.

Section 2.4      Guarantee of LPG.  If any file acquired by buyer shall fail to make a first payment, LPG will replace the file and bear any cost associated with such replacement.  The replacement file shall yield no less than the receivable of the failed file.  In addition, if any any calendar month a total of less than 80% of files make a cleared payment, LPG shall replace any non-performing files in such month so that the performance of the file

DocuSign Envelope ID: D55DB2EF-C312-4AD9-8E34-751BDDCAB113

package as a whole equals 80%. This guarantee shall continue until the completion of the 24th month following execution of this agreement.

## ARTICLE 3.
## REPRESENTATIONS AND WARRANTIES OF THE SELLER

The Seller represents and warrants to the Buyer, as of the Agreement Date and as of the Closing Date, or, if expressly made as of a specified date, as of such specified date, as follows:

Section 3.1    Organization; Good Standing.  The Seller is a Limited Liability Company duly organized, validly existing, and in good standing under the Laws of the State of Delaware and is duly qualified to do business and is in good standing as a foreign corporation in each jurisdiction where the ownership or operation of the Business requires such qualification, except where the failure to be so qualified would not reasonably be expected to have, individually or in the aggregate, a material adverse effect on the business, results of operations, financial condition, or assets of the Seller.

Section 3.2    Power and Authority.  The Seller has all requisite right, power, and authority to execute, deliver, and perform this Agreement and the Transaction Agreements to which it is a party, to consummate the transactions contemplated hereby and thereby, and to perform its obligations hereunder and thereunder.  The execution and delivery of this Agreement and the Transaction Agreements by the Seller, and the consummation by the Seller of the transactions contemplated hereby and thereby, have been duly approved by the Seller, and no further action is required on the part of the Seller to authorize this Agreement, any Transaction Agreement to which it is a party, or the transactions contemplated hereby and thereby.  This Agreement has been, and each of the Transaction Agreements will be, duly and validly executed and delivered by the Seller and, assuming the due and valid authorization, execution, and delivery of this Agreement by the other Parties, and of each such Transaction Agreement by the other parties thereto, constitutes, or will constitute, a valid and binding obligation of the Seller, enforceable against it in accordance with its terms and conditions, except as enforcement may be limited by applicable bankruptcy, insolvency, reorganization, moratorium, and other Laws affecting enforcement of creditor's rights generally and except insofar as the availability of equitable remedies may be limited by applicable Law.

Section 3.3    Title to, and Sufficiency of, the Purchased Accounts.  The Seller has and shall convey to the Buyer, at the Closing, good, valid, transferable, and marketable title to, or valid leasehold interests in, all of the Purchased Accounts, free and clear of all Liens.

Section 3.4    Consents.  The Seller is not required to give any notice to, make any filing with, or obtain any authorization, consent, or approval of, any Governmental Body or Third Party, including a party to any assigned contract, in connection with the execution, delivery, and performance by the Seller of this Agreement or any of the Transaction Agreements to which it is a party or the consummation of the transactions contemplated hereby and thereby.

Section 3.5    No Conflicts. The execution and delivery by the Seller of this Agreement and each of the Transaction Agreements, and the consummation of the transactions contemplated hereby and thereby, will not conflict with, result in any violation of, or default under (with or without notice or lapse of time, or both), or give rise to an additional payment obligation, a right of termination, cancellation, modification, or acceleration of any obligation, or loss of any benefit, under: (a) any provision of the Organizational Documents of the Seller; (b) any contract to which the Seller is party, including, without limitation, any assigned contract; or (c) any Law or order applicable to the Seller or any of the Purchased Accounts.

Section 3.6    <u>Compliance with Laws</u>.  The Seller has materially complied, and is now materially complying, with all Laws applicable to the ownership and use of the Purchased Accounts.

Section 3.7    <u>Legal Proceedings</u>.  There is no Action of any nature pending or, to the Knowledge of the Seller, threatened against or by the Seller: (a) relating to or affecting the Purchased Accounts or (b) that challenges or seeks to prevent, enjoin, or otherwise delay the transactions contemplated by this Agreement and the Transaction Agreements.  No event has occurred or circumstance exists that may give rise to, or serve as a basis for, any such Action.

Section 3.8    <u>Condition of Purchased Accounts</u>.  Each Purchased Account shall have received no less than one processed payment.

Section 3.9    <u>Confidentiality</u>.  Seller agrees and acknowledges that all Purchased Accounts, the pricing, and all terms set forth in this Agreement are confidential (together, the "**Confidential Information**").  Seller will at all times keep the  Confidential Information in confidence and trust.  Seller will not, without the prior written consent of an authorized officer of Buyer, (A) copy, use or disclose any Confidential Information, (B) deliver or disclose any Confidential Information to any person or entity outside the Buyer, or (C) use the Confidential Information for Seller's own use or use it to the detriment of Buyer.  Notwithstanding the foregoing, Seller may, without consent, use the Confidential Information and disclose and deliver same to Seller's employees or agents, if applicable, who have a need to know, provided such employees or agents have entered into written agreements approved by Buyer and containing provisions at least as restrictive as these provisions.  Seller agrees that violation of this Section 3.9.  The Parties agree that the disclosure of the Confidential Information in violation of this Agreement may cause the Buyer irreparable harm and that any breach or threatened breach by the Seller entitles Buyer to seek injunctive relief, in addition to any other legal or equitable remedies available to it, in any court of competent jurisdiction.

# ARTICLE 4.
## REPRESENTATIONS AND WARRANTIES OF THE BUYER

The Buyer represents and warrants to the Seller, as of the Agreement Date and as of the Closing Date, or, if expressly made as of a specified date, as of such specified date, as follows:

Section 4.1    <u>Organization; Good Standing</u>.  The Buyer is a limited liability company, duly organized, validly existing, and in good standing under the Laws of the State of Florida.

Section 4.2    <u>Power and Authority</u>.  The Buyer has all requisite right, power, and authority to execute, deliver, and perform this Agreement and the Transaction Agreements to which it is a party, to consummate the transactions contemplated hereby and thereby, and to perform its obligations hereunder and thereunder.  The execution and delivery of this Agreement and the Transaction Agreements by the Buyer, and the consummation by the Buyer of the transactions contemplated hereby and thereby, have been duly approved by the Buyer, and no further action is required on the part of the Buyer to authorize this Agreement, any Transaction Agreement to which it is a party, or the transactions contemplated hereby and thereby.  This Agreement has been, and each of the Transaction Agreements will be, duly and validly executed and delivered by the Buyer and, assuming the due and valid authorization, execution, and delivery of this Agreement by the other Parties, and of each such Transaction Agreement by the other parties thereto, constitutes, or will constitute, a valid and binding obligation of the Buyer, enforceable against it in accordance with its terms and conditions, except as enforcement may be limited by applicable bankruptcy, insolvency, reorganization, moratorium and other Laws affecting enforcement of creditor's rights generally and except insofar as the availability of equitable remedies may be limited by applicable Law.

DocuSign Envelope ID: D55DB2EF-C312-4AD9-8E24-7510DCAB438

Section 4.3    No Conflicts.  The execution and delivery by the Buyer of this Agreement and each of the Transaction Agreements, and the consummation of the transactions contemplated hereby and thereby, will not conflict with, result in any violation of, or default under (with or without notice or lapse of time, or both), or give rise to an additional payment obligation, a right of termination, cancellation, modification, or acceleration of, any obligation, or loss of any benefit under: (a) any provision of the Buyer's Organizational Documents; (b) any contract to which the Buyer is party, other than the Buyer Representation Agreement; or (c) any Law applicable to the Buyer.

Section 4.4    Sufficient Funds.  The Buyer has, and will have, sufficient funds available to make payment of the Purchase Price and consummate the transactions contemplated by this Agreement and the Transaction Agreements.

## ARTICLE 5.
## COVENANTS

Section 5.1    Appropriate Actions.

(a)    General.  Each of the Parties shall use commercially reasonable efforts to take all actions necessary to consummate the transactions contemplated by this Agreement as soon as reasonably practicable after the execution of this Agreement, including taking all actions necessary to comply promptly with all applicable Laws that may be imposed on it or any of its Affiliates with respect to the Closing.

## ARTICLE 6.
## CLOSING

Section 6.1    Closing.  The closing of the transactions contemplated by this Agreement (the "**Closing**") will take place upon the execution and delivery of this Agreement or at such other time, date, and place as the Parties may agree in writing.  The date on which the Closing occurs is hereinafter referred to as the "**Closing Date**." The Parties agree that the Closing may take place by the electronic exchange of executed counterpart documents and the electronic transfer of funds.

Section 6.2    Closing Deliverables of the Seller.  At or prior to the Closing, Seller shall deliver to Buyer any of the following if requested by Buyer:  (i) a bill of sale and assignment and assumption agreement substantially in the form attached hereto as **Exhibit B** (the "**Bill of Sale and Assignment and Assumption Agreement**"), duly executed by the Seller, effecting the transfer and assignment to, and assumption by, the Buyer of the Purchased Accounts; and (ii) such other customary instruments of transfer, assumption, filings, or documents, in form and substance reasonably satisfactory to the Buyer, as may be required to give effect to this Agreement.

Section 6.3    Closing Deliverables of the Buyer.  At or prior to the Closing, the Seller shall have received the following: (i) the Upfront Cash Payment; and (ii) if requested pursuant to Section 6.2, the Bill of Sale and Assignment and Assumption Agreement, duly executed by the Buyer.

Section 6.4    Indemnification by the Seller.  Subject to the limitations set forth in this Article 6, the Seller agrees to indemnify and hold harmless the Buyer, including its shareholders, members, directors, managers, officers, employees, Affiliates, and agents (each, a "**Buyer Indemnified Party**" and, collectively, the "**Buyer Indemnified Parties**"), against all claims, losses, Liabilities, damages, deficiencies, diminutions in value, costs, interest, awards, judgments, penalties, and expenses, including reasonable out-of-pocket attorneys' and consultants' fees and expenses and including any such reasonable expenses incurred in connection with investigating, defending against, or settling any of the foregoing (each, a "**Loss**" and, collectively, the "**Losses**") paid, suffered, incurred, sustained, or accrued by any Buyer Indemnified Party, directly or indirectly, as a result of,

arising out of, or in connection with: (a) any inaccuracy in, or breach of, any of the representations or warranties of the Seller contained in this Agreement, (b) any breach or non-fulfillment of any covenant, agreement, or obligation to be performed by the Seller pursuant to this Agreement, (c) any Excluded Asset or any Excluded Liability.

Section 6.5    Indemnification by the Buyer.   Subject to the limitations set forth in this Article 6, the Buyer agrees to indemnify and hold harmless the Seller, including its Affiliates and agents (each, a "**Seller Indemnified Party**" and, collectively, the "**Seller Indemnified Parties**"), against all Losses paid, suffered, incurred, sustained, or accrued by any Seller Indemnified Party, directly or indirectly, as a result of, arising out of, or in connection with: (a) any inaccuracy in, or breach of, any of the representations or warranties of the Buyer contained in this Agreement; (b) any breach or non-fulfillment of any covenant, agreement, or obligation to be performed by the Buyer pursuant to this Agreement; (c) any event or occurance related to the Purchased Accounts or Buyer occurring after the Closing; or (d) resulting from any omissions or misstatements made by Buyer to investors or potential investors.

Section 6.6    Indemnification Procedures.

(a)    No Restraints.   Promptly following receipt by an Indemnified Party of notice by a Third Party (including any Governmental Body) of any complaint, dispute, or claim or the commencement of any audit, investigation, Action or proceeding with respect to which such Indemnified Party may be entitled to indemnification pursuant hereto (a "**Third-party Claim**"), such Indemnified Party shall provide written notice thereof to the Indemnifying Party, provided, however, that the failure to so notify the Indemnifying Party shall relieve the Indemnifying Party from Liability hereunder with respect to such Third-party Claim only if, and only to the extent that, such failure to so notify the Indemnifying Party results in the forfeiture by the Indemnifying Party of rights and defenses otherwise available to the Indemnifying Party with respect to such Third-party Claim.  The Indemnifying Party shall have the right, upon written notice delivered to the Indemnified Party within twenty days thereafter assuming full responsibility for any Losses resulting from such Third-party Claim, to assume the defense of such Third-party Claim, including the employment of counsel reasonably satisfactory to the Indemnified Party and the payment of the fees and disbursements of such counsel; provided, however, if the Indemnifying Party declines or fails to assume the defense of such Third-party Claim on the terms provided above or to employ counsel reasonably satisfactory to the Indemnified Party, in either case within such twenty day period, then any Losses shall include the reasonable fees and disbursements of counsel for the Indemnified Party as incurred.  In any Third-party Claim for which indemnification is being sought hereunder the Indemnified Party or the Indemnifying Party, whichever is not assuming the defense of such Third-party Claim, shall have the right to participate in such matter and to retain its own counsel at such Party's own expense.  The Indemnifying Party or the Indemnified Party (as the case may be) shall at all times use reasonable efforts to keep the Indemnifying Party or Indemnified Party (as the case may be) reasonably apprised of the status of the defense of any matter, the defense of which it is maintaining, and to cooperate in good faith with each other with respect to the defense of any such matter.

(b)    No Indemnified Party may settle or compromise any Third-party Claim or consent to the entry of any judgment with respect to which indemnification is being sought hereunder without the prior written consent of the Indemnifying Party (which may not be unreasonably withheld or delayed), unless (i) the Indemnifying Party fails to assume and maintain the defense of such Third-party Claim or (ii) such settlement, compromise, or consent includes an unconditional release of the Indemnifying Party and its officers, directors, employees and Affiliates from all Liability arising out of, or related to, such Third-party Claim.  An Indemnifying Party may not, without the prior written consent of the Indemnified Party, settle or compromise any Third-party Claim or consent to the entry of any judgment with respect to which indemnification is being sought hereunder unless such settlement, compromise, or consent (A) includes an unconditional release of the Indemnified Party and its officers, directors, employees, and Affiliates from all Liability arising out of, or related to, such Third-party

Claim, (B) does not contain any admission or statement suggesting any wrongdoing or Liability on behalf of the Indemnified Party, and (C) does not contain any equitable order, judgment, or term that in any manner affects, restrains, or interferes with the business of the Indemnified Party or any of the Indemnified Party's Affiliates.

(c)    If an Indemnified Party claims a right to payment pursuant hereto with respect to any matter not involving a Third-party Claim (a "**Direct Claim**"), such Indemnified Party shall send written notice of such claim to the appropriate Indemnifying Party (each, a "**Notice of Claim**"). Such Notice of Claim shall specify the basis for such Direct Claim. The failure by any Indemnified Party so to notify the Indemnifying Party shall not relieve the Indemnifying Party from any Liability that it may have to such Indemnified Party with respect to any Direct Claim made pursuant to this Section 6.6(c). If the Indemnifying Party does not notify the Indemnified Party within thirty days following its receipt of such Notice of Claim that the Indemnifying Party disputes its Liability to the Indemnified Party under this Article 6 or the amount thereof, the Direct Claim specified by the Indemnified Party in such Notice of Claim shall be conclusively deemed a Liability of the Indemnifying Party under this Article 6, and the Indemnifying Party shall pay the amount of such Liability to the Indemnified Party on demand or, in the case of any Notice of Claim in which the amount of the Direct Claim (or any portion of the Direct Claim) is estimated, on such later date when the amount of such Direct Claim (or such portion of such Direct Claim) becomes finally determined. In the event that the Indemnifying Party has timely disputed its Liability with respect to such Direct Claim as provided above, as promptly as possible, such Indemnified Party and the appropriate Indemnifying Party shall establish the merits and amount of such Direct Claim (by mutual agreement, litigation, arbitration or otherwise) and, within five business days following the final determination of the merits and amount of such Direct Claim, the Indemnifying Party shall pay to the Indemnified Party an amount equal to such Direct Claim as determined hereunder.

## ARTICLE 7.
## MISCELLANEOUS

Section 7.1    Entire Agreement; Amendment. This Agreement and the Transaction Agreements (including the exhibits hereto and thereto and the documents referred to therein) constitute the entire agreement among the Parties with respect to the subject matter hereof and supersede any prior understandings, agreements, or representations by or among the Parties, written or oral, to the extent they related in any way to the subject matter hereof. This Agreement may be amended with the written consent of each of the Parties or any successor thereto by execution of an instrument in writing.

Section 7.2    Waivers. The rights and remedies of the Parties to this Agreement are cumulative and not alternative. To the maximum extent permitted by applicable Law: (a) no claim or right arising out of this Agreement or the documents referred to in this Agreement can be discharged by one Party, in whole or in part, by a waiver or renunciation of the claim or right unless in writing signed by the other Parties; (b) no waiver that may be given by a Party will be applicable except in the specific instance for what it is given; and (c) no notice to, or demand on, one Party will be deemed to be a waiver of any obligation of such Party or of the right of the Party giving such notice or demand to take further action without notice or demand as provided in this Agreement or the Transaction Agreements.

Section 7.3    Notices. All notices and other communications required or permitted hereunder shall be made to the address of a Party listed on the signature page to this Agreement and shall be (a) in writing, (b) effective when given, and (c), in any event, deemed to be given upon receipt or, if earlier: (i) upon delivery, if delivered by hand; (ii) two business days after deposit with FedEx Express or similar recognized international overnight courier service, freight prepaid; or (iii) one business day after facsimile or electronic mail transmission. A Party may change the address to which notices, requests, demands, claims, and other communications hereunder are to be delivered by giving the other Parties advance written notice pursuant to the provisions above.

DocuSign Envelope ID: D55DB2EE-C312-4AD9-8E24-751BDDCAB11B

Section 7.4   <u>Successors and Assigns</u>.  This Agreement shall be binding upon, and inure to the benefit of, the Parties named herein and their respective successors and permitted assigns.  Neither this Agreement nor any rights or obligations of a Party hereunder shall be assigned by a Party (unless to an Affiliate of such Party) without the prior written consent of the other Parties.  This Agreement will be binding upon any permitted assignee of any Party.  No assignment shall have the effect of relieving any Party to this Agreement of any of its obligations hereunder.

Section 7.5   <u>Public Disclosure</u>.  Except as may be required by Law, the Seller shall not issue any statement or communication to any Third Party (other than its respective agents) regarding the subject matter of this Agreement or the transactions contemplated hereby, including, if applicable, the termination of this Agreement and the reasons therefor, without the prior written consent of the Buyer.

Section 7.6   <u>Expenses and Fees</u>.  Whether or not the Closing occurs, all fees and expenses incurred in connection with this transactions contemplated by this Agreement, including all legal, accounting, financial advisory, consulting and all other fees and expenses of Third Parties incurred by a Party in connection with the negotiation and effectuation of the terms and conditions of this Agreement and the transactions contemplated hereby, shall be the obligation of the respective Party incurring such fees and expenses.

Section 7.7   <u>Specific Performance</u>.  The Parties agree that irreparable damage would occur if any provision of this Agreement was not performed in accordance with the terms hereof and that the Parties shall be entitled to specific performance of the terms hereof, in addition to any other remedy to which they are entitled hereunder, at Law or in equity.

Section 7.8   <u>Counterparts</u>.  This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement.  A signed copy of this Agreement delivered by facsimile, electronic mail, or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

Section 7.9   <u>Governing Law</u>.  This Agreement shall, in all respects, be construed in accordance with, and governed by, the Laws of the State of California without regard to conflict of Laws principles.

Section 7.10   <u>Severability</u>.  Any term or provision of this Agreement that is invalid or unenforceable in any situation in any jurisdiction shall not affect the validity or enforceability of the remaining terms and provisions hereof or the validity or enforceability of the offending term or provision in any other situation or in any other jurisdiction.

Section 7.11   <u>Construction</u>.  The Parties have participated jointly in the negotiation and drafting of this Agreement.  In the event an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the Parties and no presumption or burden of proof shall arise favoring or disfavoring any Party by virtue of the authorship of any of the provisions of this Agreement.

DocuSign Envelope ID: D55DB2EF-C312-4AD9-8E34-7510DCA9449

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the Agreement Date.

**BUYER:**

**The Litigation Practice Group P.C.**

By: _Daniel S March_ _____
        Name: Daniel S March
        Title: Managing Shareholder

**SELLER:**

**Debt Relief Group**

By: _____
        Name: William Burns
        Title: CEO

<div align="center">

**APPROVAL OF ASSIGNMENT AND GUARANTEE**

</div>

The assignment of the Purchased Accounts set forth in this Agreement as well as the guarantee included therein is hereby approved, and with respect to the Purchased Accounts, the Buyer shall have all rights of Buyer as set forth in this agreement.

**The Litigation Practice Group P.C.**

By: _Daniel S March_ _____
        Name: Daniel S. March
        Title: Managing Shareholder

DocuSign Envelope ID: D55DB2EE-C312-4AD9-8E34-751BDDCAB119

## EXHIBIT A

## DEFINITIONS

As used in this Agreement, the following terms have the following meanings (terms defined in the singular to have a correlative meaning when used in the plural and vice versa).

(a)     "**Action**" shall mean any civil, criminal, or administrative action, claim, suit, demand, charge, citation, reexamination, opposition, interference, decree, injunction, mediation, hearing, notice of violation, demand letter, litigation, proceeding, labor dispute, arbitral action, governmental or other audit, inquiry, criminal prosecution, investigation, unfair labor practice charge, or complaint.

(b)     "**Agreement**" shall have the meaning set forth in the preamble to this Agreement.

(c)     "**Agreement Date**" shall have the meaning set forth in the preamble to this Agreement.

(d)     "**Affiliate**" shall mean (i) with respect to any non-natural Person, any Person that, directly or indirectly, through one or more intermediaries, controls, is controlled by, or is under common control with, such Person and (ii), with respect to any individual, (A) family members of such individual, by blood, adoption, or marriage, (B) such individual's spouse or ex-spouse and (C) any Person that is directly or indirectly under the control of any of the foregoing individuals.  For purposes of this definition, "control" (including with correlative meanings, the terms "controlling," "controlled by," and under "common control with") means the possession, directly or indirectly, of the power to direct the management and policies of a Person, whether through the ownership of voting securities, by contract, or otherwise.

(e)     "**Bill of Sale and Assignment and Assumption Agreement**" shall have the meaning set forth in Section 6.2.

(f)     "**Business**" shall mean the business of the Seller as conducted on the Agreement Date.

(g)     "**Buyer**" shall have the meaning set forth in the preamble to this Agreement.

(h)     "**Buyer Indemnified Parties**" shall have the meaning set forth in Section 6.4.

(i)      "**Closing**" shall have the meaning set forth in Section 6.1.

(j)      "**Closing Date**" shall have the meaning set forth in Section 6.1.

(k)      "**Direct Claim**" shall have the meaning set forth in Section 6.6(c).

(l)      "**Excluded Assets**" shall have the meaning set forth in Section 2.1.

(m)     "**Excluded Liabilities**" shall have the meaning set forth in Section 2.2.

(n)      "**Governmental Body**" shall mean any: (i) nation, province, state, county, city, town, village, district, or other jurisdiction of any nature; (ii) federal, provincial, state, local, municipal, foreign, or other government; (iii) governmental or quasi-governmental authority of any nature (including any governmental agency, branch, department, official, or entity and any court or other tribunal); (iv) multi-national organization or body; or (v) body exercising, or entitled to exercise, any administrative, executive, judicial, legislative, police, regulatory, or taxing authority or power of any nature.

DocuSign Envelope ID: D55DB2EE-C312-4AD9-8F34-751BDDCAB118

(o)  "**Indebtedness**" means, without duplication and with respect to the Seller, all: (i) indebtedness for borrowed money; (ii) obligations for the deferred purchase price of property or services, (iii) long or short-term obligations evidenced by notes, bonds, debentures or other similar instruments; (iv) obligations under any interest rate, currency swap, or other hedging agreement or arrangement; (v) capital lease obligations; (vi) reimbursement obligations under any letter of credit, banker's acceptance or similar credit transactions; (vii) guarantees made by the Seller on behalf of any third party in respect of obligations of the kind referred to in the foregoing clauses (i) through (vi); and (viii) any unpaid interest, prepayment penalties, premiums, costs and fees that would arise or become due as a result of the prepayment of any of the obligations referred to in the foregoing clauses (i) through (vii).

(p)  "**Indemnified Party**" shall mean a Buyer Indemnified Party or a Seller Indemnified Party, as the case may be, making a claim for indemnification under Article 6.

(q)  "**Indemnifying Party**" shall mean a Party against whom a claim for indemnification is asserted under Article 6.

(r)  "**Knowledge**" shall mean, with respect to the Seller, the actual or constructive knowledge of all facts relevant to this transaction and the transacting parties, after due inquiry.

(s)  "**Law**" shall mean any law, statute, ordinance, regulation, rule, code, notice requirement, court decision, or agency guideline, of any foreign, federal, state, or local Governmental Body.

(t)  "**Liabilities**" shall mean any direct or indirect liability, Indebtedness, obligation, commitment, expense, claim, deficiency, guaranty, or endorsement of, or by, any Person of any type, known or unknown, and whether accrued, absolute, contingent, matured, unmatured, determined or undeterminable, on- or off-balance sheet, or other.

(u)  "**Lien**" shall mean any mortgage, pledge, lien, charge, claim, security interest, adverse claims of ownership or use, restrictions on transfer, defect of title, or other encumbrance of any sort.

(v)  "**Losses**" shall have the meaning set forth in Section 6.4.

(w)  "**Notice of Claim**" shall have the meaning set forth in Section 6.6(c).

(x)  "**Organizational Documents**" shall mean, with respect to a Person, the charter, bylaws, limited liability company agreement, and other organizational documents of such Person, in each case, as amended.

(y)  "**Party**" or "**Parties**" shall have the meaning set forth in the preamble to this Agreement.

(z)  "**Permitted Liens**" shall mean (i) Liens for Taxes not yet delinquent or being contested in good faith by appropriate proceedings, (ii) statutory Liens (including materialmen's, warehousemen's, mechanic's, repairmen's, landlord's, and other similar Liens) arising in the ordinary course of business securing payments not yet delinquent or being contested in good faith by appropriate proceedings, and (iii) restrictive covenants, easements, and defects, imperfections or irregularities of title, if any, of a nature that do not materially and adversely affect the assets or properties subject thereto.

(aa)  "**Person**" shall mean any individual, corporation (including any non-profit corporation), general or limited partnership, limited liability company, joint venture, estate, trust, association, organization, labor union, Governmental Body, or other entity.

DocuSign Envelope ID: D55DB2EF-C312-4AD9-8E34-7510DDCAB119

(bb)   "**Purchase Price**" shall have the meaning set forth in <u>Section 2.3</u>.

(cc)   "**Purchased Accounts**" shall have the meaning set forth in the Recitals.

(dd)   "**Seller**" shall have the meaning set forth in the preamble to this Agreement.

(ee)   "**Seller Indemnified Parties**" shall have the meaning set forth in <u>Section 6.5</u>.

(ff)   "**Tax**" or "**Taxes**" shall mean any U.S. federal, state, local or non-U.S. income, gross receipts, license, payroll, employment, excise, severance, stamp, occupation, premium, windfall profits, environmental, customs duties, capital stock, escheat, franchise, profits, withholding, social security, unemployment, disability, real property, personal property, sales, use, transfer, registration, value added, alternative or add-on minimum, estimated, or other tax of any kind whatsoever, including any interest, penalty, or addition thereto, whether disputed or not.

(gg)   "**Tax Returns**" means any return, declaration, report, claim for refund, or information return or statement relating to Taxes, including any schedule or attachment thereto, and including any amendment thereof.

(hh)   "**Third Party**" or "**Third Parties**" shall mean any Person other than the Parties or their respective Affiliates.

(ii)   "**Third-party Claim**" shall have the meaning set forth in <u>Section 6.6(a)</u>.

(jj)   "**Transaction Agreements**" shall mean the Bill of Sale and Assignment and Assumption Agreement, and each other agreement, instrument, and/or certificate contemplated by this Agreement or such other agreements to be executed in connection with the transactions contemplated hereby or thereby.

(kk)   "**Upfront Cash Payment**" shall have the meaning set forth in <u>Section 2.3</u>.

(ll)   "**Wire Instructions**" shall have the meaning set forth in <u>Section 2.3</u>.

## EXHIBIT B

**FORM OF BILL OF SALE AND ASSIGNMENT AND ASSUMPTION AGREEMENT**

THIS BILL OF SALE AND ASSIGNMENT AND ASSUMPTION AGREEMENT (this **"Agreement"**), is made by and between **Buyer**, and **Seller**. Each of the Seller and the Buyer are sometimes referred to herein, individually, as a **"Party"** and, collectively, as the **"Parties."**

WHEREAS, the Buyer and the Seller have entered into that certain Accounts Receivable Purchase Agreement, of even date herewith (the **"Purchase Agreement"**), pursuant to which the Seller has agreed to sell, assign, transfer, and deliver to the Buyer, and the Buyer has agreed to purchase, acquire, and accept from the Seller, all right, title, and interest of the Seller in and to the Purchased Accounts, free and clear of any Liens.

NOW, THEREFORE, in consideration of the covenants and representations set forth herein, and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the Parties, intending to be legally bound, agree as follows:

1.      <u>Defined Terms</u>.  Capitalized terms used but not otherwise defined in this Agreement shall have the meanings assigned to such terms in the Purchase Agreement.

2.      <u>Sale of Purchased Accounts; Assignment</u>.  The Seller hereby sells, assigns, transfers, and delivers to the Buyer, and the Buyer hereby purchases, acquires, and accepts from the Seller, all right, title, and interest of the Seller in and to the Purchased Accounts, free and clear of any Liens.

3.      <u>Further Assurances</u>.  Each of the Parties agrees, from time to time, at the request of the any other Party, to execute and deliver such other instruments of conveyance, power of attorney, sale, transfer, or assignment and take such other actions as such other Party may reasonably request in order to more effectively consummate the transactions contemplated by this Agreement.

4.      <u>Terms of the Purchase Agreement</u>.  This Agreement is intended to evidence the consummation of the transactions contemplated by the Purchase Agreement and is subject to the terms and conditions set forth in the Purchase Agreement.  The terms of the Purchase Agreement, including, but not limited to, the representations, warranties, covenants, agreements, and indemnities relating to the Purchased Accounts are incorporated herein by this reference.  The Parties acknowledge and agree that the representations, warranties, covenants, agreements, and indemnities contained in the Purchase Agreement shall not be superseded hereby but shall remain in full force and effect to the full extent provided therein.  In the event of any conflict or inconsistency between the terms of the Purchase Agreement and the terms hereof, the terms of the Purchase Agreement shall govern.

5.      <u>Counterparts</u>.  This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement.  A signed copy of this Agreement delivered by facsimile, electronic mail, or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

*[Remainder of page intentionally left blank.]*

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date first above written.

**BUYER: The Litigation Practice Group P.C.**

By: _Daniel S March_____
9D494DB1993341E...
Name: Daniel S. March
Title: Managing Shareholder

**SELLER:**

**Debt Relief Group**

By: _____
9E9BD980177406...
Name: William Burns
Title: CEO

Schedule 2.3
Wire Instructions

**$191,968.71**

**Account Holder Name: Debt Relief Group**

**Address: 1800 Old Okeechobee Rd Suite 200, West Palm Beach, FL 33409**

**Routing Number:** ███████

**Account Number:** ███████

| Full Name | Customer I | Company | Assigned T | Enrolled D | Monthly P | Second Pay | Third Paym | Fourth Pay | Fifth Paym |
|---|---|---|---|---|---|---|---|---|---|
| | ATLLC-63 | Debt Relief | | ######## | 340.95 | 340.95 | 340.95 | 340.95 | 681.9 |
| | ATLLC-64 | Debt Relief | | ######## | 287.02 | 287.02 | 287.02 | 287.02 | 287.02 |
| | ATLLC-65 | Debt Relief | | ######## | 254.12 | 254.12 | 254.12 | 254.12 | 254.12 |
| | ATLLC-64 | Debt Relief | | ######## | 357.71 | 357.71 | 357.71 | 357.71 | 357.71 |
| | ATLLC-65 | Debt Relief | | ######## | 251.04 | 251.04 | 251.04 | 251.04 | 251.04 |
| | ATLLC-65 | Debt Relief | | ######## | 263.95 | 263.95 | 263.95 | 263.95 | 263.95 |
| | ATLLC-65 | Debt Relief | | ######## | 296.82 | 273.79 | 273.79 | 273.79 | 273.79 |
| | ATLLC-65 | Debt Relief | | ######## | 540.86 | 540.86 | 540.86 | 540.86 | 540.86 |
| | ATLLC-65 | Debt Relief | | ######## | 252.57 | 252.57 | 252.57 | 252.57 | 252.57 |
| | ATLLC-65 | Debt Relief | | ######## | 251.53 | 251.53 | 251.53 | 251.53 | 251.53 |
| | ATLLC-65 | Debt Relief | | ######## | 251.79 | 251.79 | 251.79 | 251.79 | 251.79 |
| | ATLLC-65 | Debt Relief | | ######## | 251.26 | 251.26 | 251.26 | 251.26 | 251.26 |
| | ATLLC-65 | Debt Relief | | ######## | 273.6 | 273.6 | 273.6 | 273.6 | 273.6 |
| | ATLLC-65 | Debt Relief | | ######## | 259.92 | 259.92 | 259.92 | 259.92 | 259.92 |
| | ATLLC-65 | Debt Relief | | ######## | 258.98 | 258.98 | 258.98 | 258.98 | 258.98 |
| | ATLLC-65 | Debt Relief | | ######## | 276.01 | 276.01 | 276.01 | 276.01 | 276.01 |
| | ATLLC-65 | Debt Relief | | ######## | 338.29 | 338.29 | 338.29 | 338.29 | 338.29 |
| | ATLLC-65 | Debt Relief | | ######## | 256.67 | 256.67 | 256.67 | 256.67 | 256.67 |
| | ATLLC-65 | Debt Relief | | ######## | 400.64 | 400.64 | 400.64 | 400.64 | 400.64 |
| | ATLLC-65 | Debt Relief | | ######## | 261.76 | 261.76 | 261.76 | 261.76 | 261.76 |
| | ATLLC-65 | Debt Relief | | ######## | 254.5 | 254.5 | 254.5 | 254.5 | 254.5 |
| | ATLLC-65 | Debt Relief | | ######## | 258.14 | 258.14 | 258.14 | 258.14 | 258.14 |
| | ATLLC-65 | Debt Relief | | ######## | 327.18 | 327.18 | 327.18 | 327.18 | 327.18 |
| | ATLLC-65 | Debt Relief | | ######## | 252.47 | 252.47 | 252.47 | 252.47 | 252.47 |
| | ATLLC-65 | Debt Relief | | ######## | 332.42 | 332.42 | 332.42 | 332.42 | 332.42 |
| | ATLLC-65 | Debt Relief | | ######## | 250.47 | 250.47 | 250.47 | 250.47 | 250.47 |
| | ATLLC-65 | Debt Relief | | ######## | 257.91 | 257.91 | 257.91 | 257.91 | 257.91 |
| | ATLLC-65 | Debt Relief | | ######## | 250.92 | 204.56 | 204.56 | 204.56 | 204.56 |
| | ATLLC-65 | Debt Relief | | ######## | 521.37 | 521.37 | 521.37 | 521.37 | 521.37 |
| | ATLLC-65 | Debt Relief | | ######## | 251.84 | 251.84 | 251.84 | 251.84 | 251.84 |
| | ATLLC-65 | Debt Relief | | ######## | 251.72 | 251.72 | 251.72 | 251.72 | 251.72 |
| | ATLLC-65 | Debt Relief | | ######## | 252.3 | 252.3 | 252.3 | 252.3 | 252.3 |
| | ATLLC-65 | Debt Relief | | ######## | 279.48 | 311.59 | 311.59 | 311.59 | 311.59 |
| | ATLLC-65 | Debt Relief | | ######## | 614.43 | 614.43 | 614.43 | 614.43 | 614.43 |
| | ATLLC-65 | Debt Relief | | ######## | 293.03 | 293.03 | 293.03 | 293.03 | 293.03 |
| | ATLLC-65 | Debt Relief | | ######## | 252.3 | 252.3 | 252.3 | 252.3 | 252.3 |
| | ATLLC-66 | Debt Relief | | ######## | 251.37 | 251.37 | 251.37 | 251.37 | 251.37 |
| | ATLLC-66 | Debt Relief | | ######## | 715.76 | 625.35 | 625.35 | 625.35 | 625.35 |
| | ATLLC-66 | Debt Relief | | ######## | 259.16 | 259.16 | 259.16 | 259.16 | 259.16 |
| | ATLLC-66 | Debt Relief | | ######## | 293.8 | 293.8 | 293.8 | 293.8 | 293.8 |
| | ATLLC-66 | Debt Relief | | ######## | 253.94 | 253.94 | 253.94 | 253.94 | 253.94 |
| | ATLLC-66 | Debt Relief | | ######## | 293.79 | 293.79 | 293.79 | 293.79 | 293.79 |
| | ATLLC-66 | Debt Relief | | ######## | 436.18 | 436.18 | 436.18 | 436.18 | 436.18 |
| | ATLLC-66 | Debt Relief | | ######## | 422.55 | 422.55 | 422.55 | 422.55 | 422.55 |
| | ATLLC-66 | Debt Relief | | ######## | 250.07 | 250.07 | 250.07 | 250.07 | 250.07 |
| | ATLLC-66 | Debt Relief | | ######## | 508.73 | 508.73 | 508.73 | 508.73 | 508.73 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| BATLLC-66 | Debt Relief | ######## | 157.85 | 157 | 314.85 | 314.85 | 314.85 |
| BATLLC-66 | Debt Relief | ######## | 399.14 | 399.14 | 399.14 | 399.14 | 399.14 |
| BATLLC-66 | Debt Relief | ######## | 250.56 | 250.56 | 250.56 | 250.56 | 250.56 |
| BATLLC-66 | Debt Relief | ######## | 308.14 | 308.14 | 308.14 | 308.14 | 308.14 |
| BATLLC-66 | Debt Relief | ######## | 252.96 | 252.96 | 252.96 | 252.96 | 252.96 |
| BATLLC-66 | Debt Relief | ######## | 262.08 | 262.08 | 262.08 | 262.08 | 262.08 |
| BATLLC-66 | Debt Relief | ######## | 385.92 | 385.92 | 385.92 | 385.92 | 385.92 |
| BATLLC-66 | Debt Relief | ######## | 475.09 | 475.09 | 475.09 | 475.09 | 475.09 |
| BATLLC-66 | Debt Relief | ######## | 267.73 | 267.73 | 267.73 | 267.73 | 267.73 |
| BATLLC-66 | Debt Relief | ######## | 484.21 | 484.21 | 484.21 | 484.21 | 484.21 |
| BATLLC-66 | Debt Relief | ######## | 257.18 | 257.18 | 257.18 | 257.18 | 257.18 |
| BATLLC-66 | Debt Relief | ######## | 255.14 | 255.14 | 255.14 | 255.14 | 255.14 |
| BATLLC-66 | Debt Relief | ######## | 516.98 | 516.98 | 516.98 | 516.98 | 516.98 |
| BATLLC-66 | Debt Relief | ######## | 256.39 | 256.39 | 256.39 | 256.39 | 256.39 |
| BATLLC-66 | Debt Relief | ######## | 422.42 | 422.42 | 422.42 | 422.42 | 422.42 |
| BATLLC-66 | Debt Relief | ######## | 259.8 | 259.8 | 259.8 | 259.8 | 259.8 |
| BATLLC-66 | Debt Relief | ######## | 135.13 | 135.13 | 135.13 | 135.13 | 135.13 |
| BATLLC-66 | Debt Relief | ######## | 379.09 | 379.09 | 379.09 | 379.09 | 379.09 |
| BATLLC-66 | Debt Relief | ######## | 251.49 | 251.49 | 251.49 | 251.49 | 251.49 |
| BATLLC-66 | Debt Relief | ######## | 353.46 | 353.46 | 353.46 | 353.46 | 353.46 |
| BATLLC-66 | Debt Relief | ######## | 251.77 | 251.77 | 251.77 | 251.77 | 251.77 |
| BATLLC-66 | Debt Relief | ######## | 260.47 | 260.47 | 260.47 | 260.47 | 260.47 |
| BATLLC-66 | Debt Relief | ######## | 532.35 | 398.81 | 398.81 | 398.81 | 398.81 |
| BATLLC-66 | Debt Relief | ######## | 458.18 | 458.18 | 458.18 | 458.18 | 458.18 |
| BATLLC-66 | Debt Relief | ######## | 335 | 335 | 335 | 335 | 335 |
| BATLLC-66 | Debt Relief | ######## | 252.76 | 252.76 | 252.76 | 252.76 | 252.76 |
| BATLLC-66 | Debt Relief | ######## | 252.96 | 252.96 | 252.96 | 252.96 | 252.96 |
| BATLLC-66 | Debt Relief | ######## | 1149.74 | 1149.74 | 1149.74 | 1149.74 | 1149.74 |
| BATLLC-66 | Debt Relief | ######## | 1003.05 | 1003.05 | 1003.05 | 1003.05 | 1003.05 |
| BATLLC-66 | Debt Relief | ######## | 253.92 | 253.92 | 253.92 | 253.92 | 253.92 |
| BATLLC-66 | Debt Relief | ######## | 252.29 | 252.29 | 252.29 | 252.29 | 252.29 |
| BATLLC-66 | Debt Relief | ######## | 260.48 | 260.48 | 260.48 | 260.48 | 260.48 |
| BATLLC-66 | Debt Relief | ######## | 250.3 | 250.3 | 250.3 | 250.3 | 250.3 |
| BATLLC-66 | Debt Relief | ######## | 458.35 | 458.35 | 458.35 | 458.35 | 458.35 |
| BATLLC-66 | Debt Relief | ######## | 261.43 | 261.43 | 261.43 | 261.43 | 261.43 |
| BATLLC-66 | Debt Relief | ######## | 381.91 | 381.91 | 381.91 | 381.91 | 381.91 |
| BATLLC-66 | Debt Relief | ######## | 701.31 | 701.31 | 701.31 | 701.31 | 701.31 |
| BATLLC-66 | Debt Relief | ######## | 253.43 | 253.43 | 253.43 | 253.43 | 253.43 |
| BATLLC-66 | Debt Relief | ######## | 250.48 | 250.48 | 250.48 | 250.48 | 250.48 |
| BATLLC-66 | Debt Relief | ######## | 386.39 | 386.39 | 386.39 | 386.39 | 386.39 |
| BATLLC-66 | Debt Relief | ######## | 251.22 | 251.22 | 251.22 | 251.22 | 251.22 |
| BATLLC-66 | Debt Relief | ######## | 252.71 | 252.71 | 252.71 | 252.71 | 252.71 |
| BATLLC-66 | Debt Relief | ######## | 255.35 | 255.35 | 255.35 | 255.35 | 255.35 |
| BATLLC-66 | Debt Relief | ######## | 250.3 | 250.3 | 250.3 | 250.3 | 250.3 |
| BATLLC-66 | Debt Relief | ######## | 349.8 | 349.8 | 349.8 | 349.8 | 349.8 |
| BATLLC-67 | Debt Relief | ######## | 254 | 254 | 254 | 254 | 254 |
| BATLLC-67 | Debt Relief | ######## | 270.74 | 270.74 | 270.74 | 270.74 | 270.74 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| BATLLC-67: | Debt Relief | ######## | 251.26 | 251.26 | 251.26 | 251.26 | 251.26 |
| BATLLC-67: | Debt Relief | ######## | 353.78 | 353.78 | 353.78 | 353.78 | 353.78 |
| BATLLC-66: | Debt Relief | ######## | 134.14 | 134.14 | 134.14 | 134.14 | 134.14 |
| BATLLC-66: | Debt Relief | ######## | 253.96 | 253.96 | 253.96 | 253.96 | 253.96 |
| BATLLC-66: | Debt Relief | ######## | 253.75 | 253.75 | 253.75 | 253.75 | 253.75 |
| BATLLC-66: | Debt Relief | ######## | 288.05 | 288.05 | 288.05 | 288.05 | 288.05 |
| BATLLC-66: | Debt Relief | ######## | 289.47 | 289.47 | 289.47 | 289.47 | 289.47 |
| BATLLC-65: | Debt Relief | ######## | 257.8 | 257.8 | 257.8 | 257.8 | 257.8 |
| BATLLC-66: | Debt Relief | ######## | 117.57 | 117.57 | 117.57 | 117.57 | 117.57 |
| BATLLC-66: | Debt Relief | ######## | 251.26 | 251.26 | 251.26 | 251.26 | 251.26 |
| BATLLC-67: | Debt Relief | ######## | 252.36 | 252.36 | 252.36 | 252.36 | 252.36 |
| BATLLC-63: | Debt Relief | ######## | 373.25 | 373.25 | 373.25 | 373.25 | 373.25 |
| BATLLC-64: | Debt Relief | ######## | 251.39 | 251.39 | 251.39 | 251.39 | 251.39 |
| BATLLC-65: | Debt Relief | ######## | 251.38 | 251.38 | 251.38 | 251.38 | 251.38 |
| BATLLC-65: | Debt Relief | ######## | 271.11 | 271.11 | 271.11 | 271.11 | 271.11 |
| BATLLC-65: | Debt Relief | ######## | 973.6 | 973.6 | 973.6 | 973.6 | 973.6 |
| BATLLC-66: | Debt Relief | ######## | 342.85 | 342.85 | 342.85 | 342.85 | 342.85 |
| BATLLC-66: | Debt Relief | ######## | 250.52 | 250.52 | 250.52 | 250.52 | 250.52 |
| BATLLC-65: | Debt Relief | ######## | 251.39 | 251.39 | 251.39 | 251.39 | 251.39 |
| BATLLC-63: | Debt Relief | ######## | 262.41 | 287.41 | 262.41 | 262.41 | 262.41 |
| BATLLC-65: | Debt Relief | ######## | 255.78 | 280.78 | 255.78 | 255.78 | 255.78 |
| BATLLC-65: | Debt Relief | ######## | 251.15 | 251.15 | 251.15 | 251.15 | 251.15 |
| BATLLC-65: | Debt Relief | ######## | 507.55 | 507.55 | 507.55 | 507.55 | 507.55 |
| BATLLC-65: | Debt Relief | ######## | 253.91 | 278.91 | 278.91 | 253.91 | 253.91 |
| BATLLC-65: | Debt Relief | ######## | 259.32 | 284.32 | 259.32 | 259.32 | 259.32 |
| BATLLC-66: | Debt Relief | ######## | 431.28 | 456.28 | 250.39 | 250.39 | 250.39 |
| BATLLC-66: | Debt Relief | ######## | 321.31 | 346.31 | 321.31 | 321.31 | 321.31 |
| BATLLC-66: | Debt Relief | ######## | 266.63 | 266.63 | 263.72 | 263.72 | 263.72 |
| BATLLC-66: | Debt Relief | ######## | 376.97 | 376.97 | 376.97 | 376.97 | 376.97 |
| BATLLC-66: | Debt Relief | ######## | 2524.72 | 2524.72 | 2418.82 | 2418.82 | 2418.82 |
| BATLLC-66: | Debt Relief | ######## | 395.61 | 420.61 | 395.61 | 395.61 | 395.61 |
| BATLLC-63: | Debt Relief | ######## | 336.81 | 361.81 | 336.81 | 336.81 | 336.81 |

| Debt Enrol | Total Progr | Total Paym | Fee 1 | State | Program Le | First Paym | Second Pay | Third Paym | Fourth Pay |
|---|---|---|---|---|---|---|---|---|---|
| 23234 | 13978.89 | 681.9 | 40 | NE | 38 Months | Cancel | Returned / | Returned / | Returned / |
| 17430 | 9471.68 | 287.02 | 35 | TX | 32 Months | Cancel | Cleared | Open | Open |
| 10516 | 6098.88 | 254.12 | 36 | CA | 22 Months | Cancel | Cleared | Open | Open |
| 26880 | 12877.68 | 357.71 | 35 | MA | 34 Months | Cleared | Open | Open | Open |
| 7733 | 6024.96 | 251.04 | 48 | AL | 23 Months | Cleared | Open | Open | Open |
| 19151 | 10558.05 | 263.95 | 35 | CA | 38 Months | Cleared | Open | Open | Open |
| 14193 | 7689.22 | 296.82 | 35 | TN | 26 Months | Cleared | Open | Open | Open |
| 76196 | 32451.4 | 540.86 | 35 | CO | 58 Months | Cleared | Open | Open | Open |
| 7497 | 6061.62 | 252.57 | 50 | CA | 23 Months | Cleared | Open | Open | Open |
| 9082 | 6036.74 | 251.53 | 41 | MD | 23 Months | Cleared | Open | Open | Open |
| 10657 | 6043.07 | 251.79 | 35 | NM | 23 Months | Cleared | Open | Open | Open |
| 9782 | 6030.28 | 251.26 | 38 | AR | 23 Months | Cleared | Open | Open | Open |
| 18228 | 9849.48 | 273.6 | 35 | GA | 35 Months | Cleared | Open | Open | Open |
| 14018 | 7797.7 | 259.92 | 35 | MD | 29 Months | Cleared | Open | Open | Open |
| 16260 | 9064.3 | 258.98 | 35 | MO | 34 Months | Cleared | Open | Open | Open |
| 18476 | 9936.28 | 276.01 | 35 | WY | 35 Months | Cleared | Open | Open | Open |
| 16588 | 8118.92 | 338.29 | 35 | VA | 22 Months | Cleared | Open | Open | Open |
| 10991 | 6159.97 | 256.67 | 35 | CA | 23 Months | Cleared | Open | Open | Open |
| 34772 | 16025.39 | 400.64 | 35 | TN | 39 Months | Cleared | Open | Open | Open |
| 16538 | 10470.4 | 261.76 | 40 | MI | 38 Months | Cleared | Open | Open | Open |
| 14005 | 7889.53 | 254.5 | 35 | IA | 30 Months | Cleared | Open | Open | Open |
| 18487 | 10325.65 | 258.14 | 35 | TX | 39 Months | Cleared | Open | Open | Open |
| 26377.34 | 13087.27 | 327.18 | 35 | IL | 39 Months | Cleared | Open | Open | Open |
| 8325 | 6059.37 | 252.47 | 45 | NY | 22 Months | Cleared | Open | Open | Open |
| 21244 | 11967.28 | 332.42 | 40 | FL | 35 Months | Cleared | Open | Open | Open |
| 10566 | 6011.22 | 250.47 | 35 | OH | 22 Months | Cleared | Open | Open | Open |
| 11076 | 6189.72 | 257.91 | 35 | MI | 23 Months | Cleared | Open | Open | Open |
| 12363 | 8228.61 | 250.92 | 35 | MD | 39 Months | Cleared | Open | Open | Open |
| 29142 | 12512.82 | 521.37 | 35 | SC | 23 Months | Cleared | Open | Open | Open |
| 7773 | 6044.16 | 251.84 | 48 | WA | 22 Months | Cleared | Open | Open | Open |
| 11983 | 6796.31 | 251.72 | 35 | NY | 26 Months | Cleared | Open | Open | Open |
| 9127 | 6055.19 | 252.3 | 41 | CA | 23 Months | Cleared | Open | Open | Open |
| 22136 | 11185.17 | 279.48 | 35 | FL | 35 Months | Cleared | Open | Open | Open |
| 44404 | 18432.8 | 614.43 | 35 | TX | 29 Months | Cleared | Open | Open | Open |
| 22474 | 11721.1 | 293.03 | 35 | AL | 39 Months | Cleared | ███████ | Open | Open |
| 7484 | 6055.12 | 252.3 | 50 | NY | 23 Months | Cleared | Open | Open | Open |
| 8266 | 6032.82 | 251.37 | 45 | NY | 23 Months | Cleared | Open | Open | Open |
| 36272 | 15098.73 | 715.76 | 35 | WA | 23 Months | Cleared | Open | Open | Open |
| 11162 | 6219.82 | 259.16 | 35 | IL | 23 Months | Cleared | Open | Open | Open |
| 20306 | 10576.78 | 293.8 | 35 | NC | 35 Months | Cleared | Open | Open | Open |
| 10504 | 6094.56 | 253.94 | 36 | CA | 22 Months | Cleared | Open | Open | Open |
| 16921 | 8813.75 | 293.79 | 35 | TN | 29 Months | Cleared | Open | Open | Open |
| 37863 | 17010.87 | 436.18 | 35 | PA | 38 Months | Cleared | Open | Open | Open |
| 17791 | 10141.16 | 422.55 | 44 | KY | 23 Months | Cleared | Open | Open | Open |
| 16650 | 9752.82 | 250.07 | 36 | IL | 37 Months | Cleared | Open | Open | Open |
| 36522 | 15770.48 | 508.73 | 35 | CT | 29 Months | Cleared | Open | Open | Open |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 24967.63 | 12593.87 | 314.85 | 35 FL | 39 Months Cleared | Cleared | Open | Open |
| 20761 | 9579.47 | 399.14 | 35 NJ | 24 Months Cleared | Open | Open | Open |
| 7008 | 5011.12 | 250.56 | 44 MA | 19 Months Cleared | Open | Open | Open |
| 21176 | 12325.6 | 308.14 | 40 MO | 39 Months Cleared | Open | Open | Open |
| 15211 | 8600.77 | 252.96 | 35 TX | 33 Months Cleared | Open | Open | Open |
| 14203 | 7862.45 | 262.08 | 35 TN | 29 Months Cleared | Open | Open | Open |
| 19854 | 9262.02 | 385.92 | 35 AL | 23 Months Cleared | Open | Open | Open |
| 43281 | 19003.55 | 475.09 | 35 IA | 39 Months Cleared | Open | Open | Open |
| 10281 | 6425.52 | 267.73 | 40 OH | 23 Months Cleared | Open | Open | Open |
| 53187.6 | 23241.9 | 484.21 | 35 NY | 46 Months Cleared | Open | Open | Open |
| 12864 | 7201.04 | 257.18 | 35 TX | 26 Months Cleared | Open | Open | Open |
| 11340 | 6378.5 | 255.14 | 35 TN | 24 Months Cleared | Open | Open | Open |
| 28841 | 12407.47 | 516.98 | 35 TX | 23 Months Cleared | Open | Open | Open |
| 18287 | 10255.65 | 256.39 | 35 MD | 39 Months Cleared | Open | Open | Open |
| 37262 | 16896.9 | 422.42 | 35 PA | 39 Months Cleared | Open | Open | Open |
| 11206 | 6235.22 | 259.8 | 35 CA | 23 Months Cleared | Open | Open | Open |
| 13413.39 | 7296.95 | 270.26 | 35 GA | 24 Months Cleared | Cleared | Open | Open |
| 29079 | 13647.33 | 379.09 | 35 IN | 34 Months Cleared | Open | Open | Open |
| 6980 | 4526.84 | 251.49 | 40 WI | 17 Months Cleared | Open | Open | Open |
| 28922 | 12724.72 | 353.46 | 32 NE | 35 Months Cleared | Open | Open | Open |
| 15160 | 10070.8 | 251.77 | 41 KS | 39 Months Cleared | Open | Open | Open |
| 15471 | 8595.39 | 260.47 | 35 OK | 31 Months Cleared | Open | Open | Open |
| 18146 | 9705.06 | 532.35 | 40 OH | 22 Months Cleared | Open | Open | Open |
| 41349 | 18327.35 | 458.18 | 35 OH | 39 Months Cleared | Open | Open | Open |
| 21817 | 10720.11 | 335 | 35 NM | 31 Months Cleared | Open | Open | Open |
| 10723 | 6066.17 | 252.76 | 35 MO | 23 Months Cleared | Open | Open | Open |
| 9395 | 6071.12 | 252.96 | 40 NC | 23 Months Cleared | Open | Open | Open |
| 120384.5 | 45989.78 | 1149.74 | 35 NY | 39 Months Cleared | Open | Open | Open |
| 68000 | 30091.4 | 1003.05 | 40 NY | 29 Months Cleared | Open | Open | Open |
| 13391 | 8633.32 | 253.92 | 40 VT | 33 Months Cleared | Open | Open | Open |
| 6845 | 4541.29 | 252.29 | 41 FL | 17 Months Cleared | Open | Open | Open |
| 9846 | 6251.52 | 260.48 | 40 GA | 23 Months Cleared | Open | Open | Open |
| 8551 | 5005.96 | 250.3 | 36 OH | 19 Months Cleared | Open | Open | Open |
| 31026 | 13750.5 | 458.35 | 35 NY | 29 Months Cleared | Open | Open | Open |
| 11318 | 6274.42 | 261.43 | 35 AL | 23 Months Cleared | Open | Open | Open |
| 29369 | 13748.83 | 381.91 | 35 AZ | 35 Months Cleared | Open | Open | Open |
| 48394 | 19636.54 | 701.31 | 35 TX | 27 Months Cleared | Open | Open | Open |
| 9423 | 6082.32 | 253.43 | 40 VA | 23 Months Cleared | Open | Open | Open |
| 5574 | 4258.24 | 250.48 | 47 OH | 16 Months Cleared | Open | Open | Open |
| 26515 | 12364.41 | 386.39 | 35 AL | 31 Months Cleared | Open | Open | Open |
| 6059 | 4521.98 | 251.22 | 46 SC | 16 Months Cleared | Open | Open | Open |
| 7035 | 4548.84 | 252.71 | 40 MA | 17 Months Cleared | Open | Open | Open |
| 10901 | 6128.47 | 255.35 | 35 NJ | 23 Months Cleared | Open | Open | Open |
| 8591 | 6007.25 | 250.3 | 43 PA | 22 Months Cleared | Open | Open | Open |
| 19833 | 12592.86 | 349.8 | 46 KY | 35 Months Cleared | Open | Open | Open |
| 10808 | 6095.92 | 254 | 35 FL | 22 Months Cleared | Open | Open | Open |
| 15443 | 8392.83 | 270.74 | 35 AR | 30 Months Cleared | Open | Open | Open |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 7586 | 6030.26 | 251.26 | 49 TX | 23 Months Cleared | Open | Open | Open | |
| 17650 | 8490.62 | 353.78 | 35 WI | 22 Months Cleared | Open | Open | Open | |
| 17190 | 9389.8 | 134.14 | 35 NH | 31 Months Cleared | Open | Open | Open | |
| 10505 | 6094.92 | 253.96 | 36 CO | 23 Months Cleared | Open | Open | Open | |
| 10791 | 6089.97 | 253.75 | 35 IA | 23 Months Cleared | Open | Open | Open | |
| 17250 | 10369.68 | 288.05 | 40 OH | 35 Months Cleared | Open | Open | Open | |
| 19309 | 11578.8 | 289.47 | 40 MI | 39 Months Cleared | Open | Open | Open | |
| 9685 | 6187.12 | 257.8 | 40 CA | 22 Months Cleared | Open | Open | Open | |
| 7240 | 5643.52 | 235.14 | 46 CA | 21 Months Cleared | Cleared | Open | Open | |
| 7586 | 6030.26 | 251.26 | 49 PA | 23 Months Cleared | Open | Open | Open | |
| 9359 | 6056.72 | 252.36 | 40 FL | 23 Months Cleared | Open | Open | Open | |
| 24918 | 13436.88 | 373.25 | 40 IL | 35 Months Cleared | Returned / | Open | Open | |
| 17715 | 10055.45 | 251.39 | 35 NJ | 38 Months Cleared | Returned / | Open | Open | |
| 7592 | 6033.2 | 251.38 | 49 NJ | 23 Months Cleared | Returned / | Open | Open | |
| 14977 | 8133.35 | 271.11 | 35 CA | 28 Months Cleared | Returned / | Open | Open | |
| 60152 | 23366.32 | 973.6 | 35 NY | 23 Months Cleared | Returned / | Open | Open | |
| 23943 | 11656.97 | 342.85 | 35 FL | 33 Months Cleared | Open | Open | Open | |
| 9735 | 6012.42 | 250.52 | 38 OR | 23 Months Cleared | Open | Open | Open | |
| 12819.35 | 7541.81 | 251.39 | 35 CA | 28 Months Open | Cleared | Open | Open | |
| 16129 | 9759.3 | 262.41 | 35 IA | 35 Months Returned / | Returned / | Returned / | Cleared | |
| 7651 | 6419.4 | 280.78 | 50 GA | 23 Months Returned / | Cleared | Open | Open | |
| 7903 | 6529.83 | 251.15 | 47 VA | 23 Months Returned / | Returned / | Cleared | Open | |
| 20996 | 12713.79 | 507.55 | 47 OH | 24 Months Returned / | Cleared | Open | Open | |
| 9452 | 6955.65 | 557.82 | 40 GA | 22 Months Returned / | Returned / | Returned / | Cleared | |
| 14897 | 8582.43 | 284.32 | 35 PA | 31 Months Returned / | Cleared | Open | Open | |
| 12321 | 8649.73 | 456.28 | 40 MO | 31 Months Returned / | Cleared | Open | Open | |
| 15424 | 8057.83 | 346.31 | 35 GA | 23 Months Returned / | Cleared | Open | Open | |
| 14343 | 8180.98 | 266.63 | 35 CA | 29 Months Returned / | Cleared | Open | Open | |
| 28861 | 13948 | 376.97 | 35 KS | 35 Months Returned / | Cleared | Open | Open | |
| 154829 | 75195.07 | 2524.72 | 45 TN | 28 Months Returned / | Cleared | Open | Open | |
| 34198 | 16245.11 | 420.61 | 35 OH | 39 Months Returned / | Cleared | Open | Open | |
| 21639 | 12487.09 | 361.81 | 40 CA | 35 Months Returned / | Cleared | Open | Open | |

DocuSign Envelope ID: D55DB2EF-C312-4AD9-8E24-751PDDCAB33D

| Fifth Paym | Sixth Paym | First Paym | Next Paym | # Drafts | Cl( | Pay Freq. | Payment M | Paused |
|---|---|---|---|---|---|---|---|---|
| Cleared | Cancel | ######## | 1/5/2023 | 0 | | Monthly | CC | No |
| Open | Open | ######## | ######## | 1 | | Monthly | Bank | No |
| Open | Open | ######## | 1/3/2023 | 1 | | Monthly | Bank | No |
| Open | Open | ######## | 1/4/2023 | 1 | | Monthly | Bank | No |
| Open | Open | ######## | 1/5/2023 | 1 | | Monthly | Bank | No |
| Open | Open | ######## | ######## | 1 | | Monthly | Bank | No |
| Open | Open | ######## | ######## | 1 | | Monthly | Bank | No |
| Open | Open | ######## | ######## | 1 | | Monthly | Bank | No |
| Open | Open | ######## | ######## | 1 | | Monthly | Bank | No |
| Open | Open | ######## | ######## | 1 | | Monthly | Bank | No |
| Open | Open | ######## | ######## | 1 | | Monthly | Bank | No |
| Open | Open | ######## | ######## | 1 | | Monthly | Bank | No |
| Open | Open | ######## | 1/3/2023 | 1 | | Monthly | Bank | No |
| Open | Open | ######## | 1/3/2023 | 1 | | Monthly | Bank | No |
| Open | Open | ######## | 1/3/2023 | 1 | | Monthly | Bank | No |
| Open | Open | ######## | ######## | 1 | | Monthly | Bank | No |
| Open | Open | ######## | 1/4/2023 | 0 | | Monthly | CC | No |
| Open | Open | ######## | 1/3/2023 | 1 | | Monthly | Bank | No |
| Open | Open | ######## | ######## | 0 | | Monthly | CC | No |
| Open | Open | ######## | 1/3/2023 | 0 | | Monthly | CC | No |
| Open | Open | ######## | 1/9/2023 | 0 | | Monthly | CC | No |
| Open | Open | ######## | ######## | 1 | | Monthly | Bank | No |
| Open | Open | ######## | 1/3/2023 | 1 | | Monthly | Bank | No |
| Open | Open | ######## | 1/3/2023 | 1 | | Monthly | Bank | No |
| Open | Open | ######## | 1/3/2023 | 1 | | Monthly | Bank | No |
| Open | Open | ######## | ######## | 1 | | Monthly | Bank | No |
| Open | Open | ######## | 1/5/2023 | 0 | | Monthly | CC | No |
| Open | Open | ######## | ######## | 1 | | Monthly | Bank | No |
| Open | Open | ######## | 1/6/2023 | 0 | | Monthly | CC | No |
| Open | Open | ######## | 1/4/2023 | 0 | | Monthly | CC | No |
| Open | Open | ######## | 1/5/2023 | 0 | | Monthly | CC | No |
| Open | Open | ######## | ######## | 1 | | Monthly | Bank | No |
| Open | Open | ######## | 1/3/2023 | 1 | | Monthly | Bank | No |
| Open | Open | ######## | 1/9/2023 | 1 | | Monthly | Bank | No |
| Open | Open | ######## | 1/5/2023 | 1 | | Monthly | Bank | No |
| Open | Open | ######## | 1/3/2023 | 1 | | Monthly | Bank | No |
| Open | Open | ######## | ######## | 1 | | Monthly | Bank | No |
| Open | Open | ######## | 1/3/2023 | 0 | | Monthly | CC | No |
| Open | Open | ######## | ######## | 0 | | Monthly | CC | No |
| Open | Open | ######## | 1/3/2023 | 1 | | Monthly | Bank | No |
| Open | Open | ######## | ######## | 0 | | Monthly | CC | No |
| Open | Open | ######## | ######## | 1 | | Monthly | Bank | No |
| Open | Open | ######## | ######## | 0 | | Monthly | CC | No |
| Open | Open | ######## | 1/3/2023 | 0 | | Monthly | CC | No |
| Open | Open | ######## | ######## | 0 | | Monthly | CC | No |
| Open | Open | ######## | ######## | 0 | | Monthly | CC | No |

DocuSign Envelope ID: D55DB2EF-C312-4AD9-8F24-751PDCA8333

| Open | Open | ######## | ######## | 0 Monthly | CC | No |
|------|------|----------|----------|-----------|------|-----|
| Open | Open | ######## | 2/2/2023 | 1 Monthly | Bank/CC | No |
| Open | Open | ######## | 1/3/2023 | 1 Monthly | Bank | No |
| Open | Open | ######## | 1/3/2023 | 1 Monthly | Bank | No |
| Open | Open | ######## | 1/3/2023 | 0 Monthly | CC | No |
| Open | Open | ######## | 1/3/2023 | 1 Monthly | Bank | No |
| Open | Open | ######## | 1/3/2023 | 0 Monthly | CC | No |
| Open | Open | ######## | ######## | 1 Monthly | Bank | No |
| Open | Open | ######## | 1/9/2023 | 0 Monthly | CC | No |
| Open | Open | ######## | ######## | 0 Monthly | CC | No |
| Open | Open | ######## | 1/4/2023 | 1 Monthly | Bank | No |
| Open | Open | ######## | 1/9/2023 | 1 Monthly | Bank | No |
| Open | Open | ######## | 1/5/2023 | 0 Monthly | CC | No |
| Open | Open | ######## | ######## | 1 Monthly | Bank | No |
| Open | Open | ######## | 1/5/2023 | 1 Monthly | Bank | No |
| Open | Open | ######## | ######## | 0 Monthly | CC | No |
| Open | Open | ######## | ######## | 0 Bi-Weekly | CC | No |
| Open | Open | ######## | 1/3/2023 | 0 Monthly | CC | No |
| Open | Open | ######## | ######## | 0 Monthly | CC | No |
| Open | Open | ######## | 1/5/2023 | 1 Monthly | Bank | No |
| Open | Open | ######## | ######## | 0 Monthly | CC | No |
| Open | Open | ######## | 1/3/2023 | 0 Monthly | CC | No |
| Open | Open | ######## | 1/3/2023 | 1 Monthly | Bank | No |
| Open | Open | ######## | 1/9/2023 | 0 Monthly | Bank | No |
| Open | Open | ######## | 1/9/2023 | 1 Monthly | Bank | No |
| Open | Open | ######## | ######## | 0 Monthly | CC | No |
| Open | Open | ######## | 1/9/2023 | 1 Monthly | Bank | No |
| Open | Open | ######## | 1/6/2023 | 1 Monthly | Bank | No |
| Open | Open | ######## | ######## | 0 Monthly | CC | No |
| Open | Open | ######## | ######## | 0 Monthly | CC | No |
| Open | Open | ######## | 1/5/2023 | 1 Monthly | Bank | No |
| Open | Open | ######## | 1/9/2023 | 0 Monthly | CC | No |
| Open | Open | ######## | 1/9/2023 | 0 Monthly | CC | No |
| Open | Open | ######## | 1/3/2023 | 1 Monthly | Bank | No |
| Open | Open | ######## | 1/5/2023 | 0 Monthly | CC | No |
| Open | Open | ######## | 1/9/2023 | 1 Monthly | Bank | No |
| Open | Open | ######## | 1/3/2023 | 1 Monthly | Bank | No |
| Open | Open | ######## | 1/5/2023 | 0 Monthly | CC | No |
| Open | Open | ######## | ######## | 0 Monthly | CC | No |
| Open | Open | ######## | ######## | 0 Monthly | CC | No |
| Open | Open | ######## | 1/3/2023 | 0 Monthly | CC | No |
| Open | Open | ######## | 1/9/2023 | 0 Monthly | CC | No |
| Open | Open | ######## | ######## | 1 Monthly | Bank | No |
| Open | Open | ######## | ######## | 0 Semi-Mont | CC | No |
| Open | Open | ######## | ######## | 0 Monthly | CC | No |
| Open | Open | ######## | ######## | 0 Monthly | CC | No |
| Open | Open | ######## | 1/9/2023 | 1 Monthly | Bank | No |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Open | Open | ######## | ######## | 0 | Monthly | CC | No |
| Open | Open | ######## | ######## | 0 | Monthly | CC | No |
| Open | Open | ######## | ######## | 0 | Bi-Weekly | CC | No |
| Open | Open | ######## | 1/3/2023 | 1 | Monthly | Bank | No |
| Open | Open | ######## | ######## | 0 | Monthly | CC | No |
| Open | Open | ######## | 1/5/2023 | 0 | Monthly | CC | No |
| Open | Open | ######## | ######## | 0 | Monthly | CC | No |
| Open | Open | ######## | 1/3/2023 | 1 | Monthly | Bank | No |
| Open | Open | ######## | ######## | 0 | Bi-Weekly | CC | No |
| Open | Open | ######## | ######## | 1 | Monthly | Bank | No |
| Open | Open | ######## | ######## | 0 | Monthly | CC | No |
| Open | Open | ######## | ######## | 1 | Monthly | Bank | No |
| Open | Open | ######## | ######## | 0 | Monthly | CC | No |
| Open | Open | ######## | 1/5/2023 | 1 | Monthly | Bank | No |
| Open | Open | ######## | ######## | 1 | Monthly | Bank | No |
| Open | Open | ######## | 1/9/2023 | 0 | Monthly | CC | No |
| Open | Open | ######## | ######## | 1 | Monthly | Bank | No |
| Open | Open | ######## | ######## | 0 | Monthly | CC | No |
| Open | Open | ######## | 1/5/2023 | 0 | Monthly | CC | No |
| Open | Open | ######## | ######## | 0 | Monthly | CC | No |
| Open | Open | ######## | 1/2/2023 | 0 | Monthly | CC | No |
| Open | Open | ######## | ######## | 0 | Monthly | CC | No |
| Open | Open | ######## | 1/5/2023 | 1 | Monthly | Bank | No |
| Cleared | Open | ######## | 1/3/2023 | 0 | Monthly | CC | No |
| Open | Open | ######## | ######## | 0 | Monthly | CC | No |
| Open | Open | ######## | 1/9/2023 | 0 | Monthly | CC | No |
| Open | Open | ######## | 1/9/2023 | 0 | Monthly | CC | No |
| Open | Open | ######## | ######## | 0 | Monthly | CC | No |
| Open | Open | ######## | 1/3/2023 | 1 | Monthly | Bank | No |
| Open | Open | ######## | 1/5/2023 | 0 | Monthly | CC | No |
| Open | Open | ######## | 1/5/2023 | 0 | Monthly | CC | No |
| Open | Open | ######## | ######## | 0 | Monthly | CC | No |

DocuSign Envelope ID: D55DB2E5-C312-4AD9-8E24-7510DDCAB438

| Client Status | Payments I Payment S | # NSFs | # Drafts Remaining |
|---|---|---|---|
| Active File | 1 1 of 40 | 2 | 0 |
| Active File | 1 1 of 33 | 0 | 32 |
| Active File | 1 1 of 24 | 0 | 23 |
| Active File | 1 1 of 36 | 0 | 35 |
| Active File | 1 1 of 24 | 0 | 23 |
| Active File | 1 1 of 40 | 0 | 39 |
| Active File | 1 1 of 28 | 0 | 27 |
| Active File | 1 1 of 60 | 0 | 59 |
| Active File | 1 1 of 24 | 0 | 23 |
| Active File | 1 1 of 24 | 0 | 23 |
| Active File | 1 1 of 24 | 0 | 23 |
| Active File | 1 1 of 24 | 0 | 23 |
| Active File | 1 1 of 36 | 0 | 35 |
| Active File | 1 1 of 30 | 0 | 29 |
| Active File | 1 1 of 35 | 0 | 34 |
| Active File | 1 1 of 36 | 0 | 35 |
| Active File | 1 1 of 24 | 0 | 0 |
| Active File | 1 1 of 24 | 0 | 23 |
| Active File | 1 1 of 40 | 0 | 0 |
| Active File | 1 1 of 40 | 0 | 0 |
| Active File | 1 1 of 31 | 0 | 0 |
| Active File | 1 1 of 40 | 0 | 39 |
| Active File | 1 1 of 40 | 0 | 39 |
| Active File | 1 1 of 24 | 0 | 23 |
| Active File | 1 1 of 36 | 0 | 35 |
| Active File | 1 1 of 24 | 0 | 23 |
| Active File | 1 1 of 24 | 0 | 0 |
| Active File | 1 1 of 40 | 0 | 39 |
| Active File | 1 1 of 24 | 0 | 0 |
| Active File | 1 1 of 24 | 0 | 0 |
| Active File | 1 1 of 27 | 0 | 0 |
| Active File | 1 1 of 24 | 0 | 23 |
| Active File | 1 1 of 36 | 0 | 35 |
| Active File | 1 1 of 30 | 0 | 29 |
| Active File | 1 1 of 40 | 0 | 39 |
| Active File | 1 1 of 24 | 0 | 23 |
| Active File | 1 1 of 24 | 0 | 23 |
| Active File | 1 1 of 24 | 0 | 0 |
| Active File | 1 1 of 24 | 0 | 0 |
| Active File | 1 1 of 36 | 0 | 35 |
| Active File | 1 1 of 24 | 0 | 0 |
| Active File | 1 1 of 30 | 0 | 29 |
| Active File | 1 1 of 39 | 0 | 0 |
| Active File | 1 1 of 24 | 0 | 0 |
| Active File | 1 1 of 39 | 0 | 0 |
| Active File | 1 1 of 31 | 0 | 0 |

| | | | |
|---|---|---|---|
| Active File | 2 2 of 41 | 0 | 0 |
| Active File | 1 1 of 24 | 0 | 23 |
| Active File | 1 1 of 20 | 0 | 19 |
| Active File | 1 1 of 40 | 0 | 39 |
| Active File | 1 1 of 34 | 0 | 0 |
| Active File | 1 1 of 30 | 0 | 29 |
| Active File | 1 1 of 24 | 0 | 0 |
| Active File | 1 1 of 40 | 0 | 39 |
| Active File | 1 1 of 24 | 0 | 0 |
| Active File | 1 1 of 48 | 0 | 0 |
| Active File | 1 1 of 28 | 0 | 27 |
| Active File | 1 1 of 25 | 0 | 24 |
| Active File | 1 1 of 24 | 0 | 0 |
| Active File | 1 1 of 40 | 0 | 39 |
| Active File | 1 1 of 40 | 0 | 39 |
| Active File | 1 1 of 24 | 0 | 0 |
| Active File | 2 2 of 54 | 0 | 0 |
| Active File | 1 1 of 36 | 0 | 0 |
| Active File | 1 1 of 18 | 0 | 0 |
| Active File | 1 1 of 36 | 0 | 35 |
| Active File | 1 1 of 40 | 0 | 0 |
| Active File | 1 1 of 33 | 0 | 0 |
| Active File | 1 1 of 24 | 0 | 23 |
| Active File | 1 1 of 40 | 0 | 0 |
| Active File | 1 1 of 32 | 0 | 31 |
| Active File | 1 1 of 24 | 0 | 0 |
| Active File | 1 1 of 24 | 0 | 23 |
| Active File | 1 1 of 40 | 0 | 39 |
| Active File | 1 1 of 30 | 0 | 0 |
| Active File | 1 1 of 34 | 0 | 0 |
| Active File | 1 1 of 18 | 0 | 17 |
| Active File | 1 1 of 24 | 0 | 0 |
| Active File | 1 1 of 20 | 0 | 0 |
| Active File | 1 1 of 30 | 0 | 29 |
| Active File | 1 1 of 24 | 0 | 0 |
| Active File | 1 1 of 36 | 0 | 35 |
| Active File | 1 1 of 28 | 0 | 27 |
| Active File | 1 1 of 24 | 0 | 0 |
| Active File | 1 1 of 17 | 0 | 0 |
| Active File | 1 1 of 32 | 0 | 0 |
| Active File | 1 1 of 18 | 0 | 0 |
| Active File | 1 1 of 18 | 0 | 0 |
| Active File | 1 1 of 24 | 0 | 23 |
| Active File | 1 1 of 24 | 0 | 0 |
| Active File | 1 1 of 36 | 0 | 0 |
| Active File | 1 1 of 24 | 0 | 0 |
| Active File | 1 1 of 31 | 0 | 30 |

| | | | |
|---|---|---|---|
| Active File | 1 1 of 24 | 0 | 0 |
| Active File | 1 1 of 24 | 0 | 0 |
| Educational Outreach | 1 1 of 70 | 0 | 0 |
| Educational Outreach | 1 1 of 24 | 0 | 23 |
| Educational Outreach | 1 1 of 24 | 0 | 0 |
| Educational Outreach | 1 1 of 36 | 0 | 0 |
| Educational Outreach | 1 1 of 40 | 0 | 0 |
| Educational Outreach Misse | 1 1 of 24 | 0 | 23 |
| Educational Outreach Misse | 2 2 of 48 | 0 | 0 |
| Educational Outreach Misse | 1 1 of 24 | 0 | 23 |
| Educational Outreach Misse | 1 1 of 24 | 0 | 0 |
| NSF | 1 1 of 36 | 1 | 34 |
| NSF | 1 1 of 40 | 1 | 0 |
| NSF | 1 1 of 24 | 1 | 22 |
| NSF | 1 1 of 30 | 1 | 28 |
| NSF | 1 1 of 24 | 1 | 0 |
| Paused Per Legal - Payment | 1 1 of 34 | 0 | 33 |
| Unenroll Debt | 1 1 of 24 | 0 | 0 |
| Active File | 1 1 of 30 | 0 | 0 |
| Active File | 1 1 of 37 | 3 | 0 |
| Active File | 1 1 of 25 | 1 | 0 |
| Active File | 1 1 of 26 | 2 | 0 |
| Active File | 1 1 of 25 | 1 | 23 |
| Active File | 2 2 of 27 | 3 | 0 |
| Active File | 1 1 of 33 | 1 | 0 |
| Active File | 1 1 of 33 | 1 | 0 |
| Active File | 1 1 of 25 | 1 | 0 |
| Active File | 1 1 of 31 | 1 | 0 |
| Active File | 1 1 of 37 | 1 | 35 |
| Active File | 1 1 of 31 | 1 | 0 |
| Educational Outreach Misse | 1 1 of 41 | 1 | 0 |
| NSF | 1 1 of 37 | 1 | 0 |

**EXHIBIT "6"**

DocuSign Envelope ID: 6CB4B19F1-3BBE-4E47-A697-2BC659AA3290

**ACCOUNTS RECEIVABLE PURCHASE AGREEMENT**

This ACCOUNTS RECEIVABLE PURCHASE AGREEMENT (this "**Agreement**") is made as of January 4, 2023 (the "**Agreement Date**"), by and between The Litigation Practice Group PC (collectively the "**Buyer**"), and Debt Relief Group (the "**Seller**" **or "LPG**", and together with the Buyer, the **"Parties"**), and The Litigation Practice Group PC ("LPG").

**RECITALS**

WHEREAS, in the regular course of business, the Seller originates account receivables from **LPG** in connection with client on-boarding services provided by the Seller to LPG and its affiliates;

WHEREAS, the account receivables represent an obligation of various clients to pay Seller for services that Seller previously provided, but which LPG shall provide from the date of execution of this Agreement;

WHEREAS, the Seller desires to sell, assign, transfer, and deliver to the Buyer, and the Buyer desires to purchase, acquire, and accept from the Seller, certain of these account receivables (the "**Purchased Accounts**").

NOW, THEREFORE, in consideration of the covenants and representations set forth herein, the Parties, intending to be legally bound, agree as follows:

**ARTICLE 1.**
**DEFINITIONS**

Section 1.1    Certain Definitions.  Certain defined terms used in this Agreement are set forth on **Exhibit A**.

**ARTICLE 2.**
**ASSIGNMENT AND TRANSFER AND CONSIDERATION**

Section 2.1    Assignment of the Purchased Accounts to the Buyer.  Upon execution of this Agreement and subject to the terms and conditions set forth herein, the Seller shall sell, assign, transfer, and deliver, and the Buyer shall purchase, acquire, and accept from the Seller, all of the Seller's right, title, and interest in and to the Purchased Accounts set forth on the spreadsheet attached to this Agreement, free and clear of any Liens.  Other than the Purchased Accounts, the Buyer shall not purchase or acquire any other assets of the Seller (collectively, the "**Excluded Assets**").

Section 2.2    No Assumption of Liabilities.  The Buyer shall not assume any Liabilities of the Seller of any kind, whether known or unknown, contingent, matured, or otherwise, whether currently existing or hereinafter created (collectively, the "**Excluded Liabilities**").

Section 2.3    Payment of Purchase Price.  Buyer shall pay $156,514.79 (total purchase price) for the Purchased Accounts (the "**Purchase Price**") by wire transfer of immediately available funds in accordance with the wire transfer instructions set forth in **Schedule 2.3** (the "**Wire Instructions**").  The Purchased Accounts are set forth on the attached spreadsheet.

Section 2.4    Guarantee of LPG.  If any file acquired by buyer shall fail to make a first payment, LPG will replace the file and bear any cost associated with such replacement.  The replacement file shall yield no less than the receivable of the failed file.  In addition, if any any calendar month a total of less than 80% of files make a cleared payment, LPG shall replace any non-performing files in such month so that the performance of the file

DocuSign Envelope ID: 6CB4B19F1-2BBE-4C571-A697-2BC659AA2290

package as a whole equals 80%.  This guarantee shall continue until the completion of the 24th month following execution of this agreement.

## ARTICLE 3.
## REPRESENTATIONS AND WARRANTIES OF THE SELLER

The Seller represents and warrants to the Buyer, as of the Agreement Date and as of the Closing Date, or, if expressly made as of a specified date, as of such specified date, as follows:

Section 3.1    Organization; Good Standing.  The Seller is a Limited Liability Company duly organized, validly existing, and in good standing under the Laws of the State of Delaware and is duly qualified to do business and is in good standing as a foreign corporation in each jurisdiction where the ownership or operation of the Business requires such qualification, except where the failure to be so qualified would not reasonably be expected to have, individually or in the aggregate, a material adverse effect on the business, results of operations, financial condition, or assets of the Seller.

Section 3.2    Power and Authority.  The Seller has all requisite right, power, and authority to execute, deliver, and perform this Agreement and the Transaction Agreements to which it is a party, to consummate the transactions contemplated hereby and thereby, and to perform its obligations hereunder and thereunder.  The execution and delivery of this Agreement and the Transaction Agreements by the Seller, and the consummation by the Seller of the transactions contemplated hereby and thereby, have been duly approved by the Seller, and no further action is required on the part of the Seller to authorize this Agreement, any Transaction Agreement to which it is a party, or the transactions contemplated hereby and thereby.  This Agreement has been, and each of the Transaction Agreements will be, duly and validly executed and delivered by the Seller and, assuming the due and valid authorization, execution, and delivery of this Agreement by the other Parties, and of each such Transaction Agreement by the other parties thereto, constitutes, or will constitute, a valid and binding obligation of the Seller, enforceable against it in accordance with its terms and conditions, except as enforcement may be limited by applicable bankruptcy, insolvency, reorganization, moratorium, and other Laws affecting enforcement of creditor's rights generally and except insofar as the availability of equitable remedies may be limited by applicable Law.

Section 3.3    Title to, and Sufficiency of, the Purchased Accounts.  The Seller has and shall convey to the Buyer, at the Closing, good, valid, transferable, and marketable title to, or valid leasehold interests in, all of the Purchased Accounts, free and clear of all Liens.

Section 3.4    Consents.  The Seller is not required to give any notice to, make any filing with, or obtain any authorization, consent, or approval of, any Governmental Body or Third Party, including a party to any assigned contract, in connection with the execution, delivery, and performance by the Seller of this Agreement or any of the Transaction Agreements to which it is a party or the consummation of the transactions contemplated hereby and thereby.

Section 3.5    No Conflicts. The execution and delivery by the Seller of this Agreement and each of the Transaction Agreements, and the consummation of the transactions contemplated hereby and thereby, will not conflict with, result in any violation of, or default under (with or without notice or lapse of time, or both), or give rise to an additional payment obligation, a right of termination, cancellation, modification, or acceleration of any obligation, or loss of any benefit, under: (a) any provision of the Organizational Documents of the Seller; (b) any contract to which the Seller is party, including, without limitation, any assigned contract; or (c) any Law or order applicable to the Seller or any of the Purchased Accounts.

DocuSign Envelope ID: 6CB4B19F-2BBE-4C57-A697-2BC659AA3290

Section 3.6    Compliance with Laws.  The Seller has materially complied, and is now materially complying, with all Laws applicable to the ownership and use of the Purchased Accounts.

Section 3.7    Legal Proceedings.  There is no Action of any nature pending or, to the Knowledge of the Seller, threatened against or by the Seller: (a) relating to or affecting the Purchased Accounts or (b) that challenges or seeks to prevent, enjoin, or otherwise delay the transactions contemplated by this Agreement and the Transaction Agreements.  No event has occurred or circumstance exists that may give rise to, or serve as a basis for, any such Action.

Section 3.8    Condition of Purchased Accounts.  Each Purchased Account shall have received no less than one processed payment.

Section 3.9    Confidentiality.  Seller agrees and acknowledges that all Purchased Accounts, the pricing, and all terms set forth in this Agreement are confidential (together, the "**Confidential Information**").  Seller will at all times keep the  Confidential Information in confidence and trust.  Seller will not, without the prior written consent of an authorized officer of Buyer, (A) copy, use or disclose any Confidential Information, (B) deliver or disclose any Confidential Information to any person or entity outside the Buyer, or (C) use the Confidential Information for Seller's own use or use it to the detriment of Buyer.  Notwithstanding the foregoing, Seller may, without consent, use the Confidential Information and disclose and deliver same to Seller's employees or agents, if applicable, who have a need to know, provided such employees or agents have entered into written agreements approved by Buyer and containing provisions at least as restrictive as these provisions.  Seller agrees that violation of this Section 3.9.  The Parties agree that the disclosure of the Confidential Information in violation of this Agreement may cause the Buyer irreparable harm and that any breach or threatened breach by the Seller entitles Buyer to seek injunctive relief, in addition to any other legal or equitable remedies available to it, in any court of competent jurisdiction.

## ARTICLE 4.
## REPRESENTATIONS AND WARRANTIES OF THE BUYER

The Buyer represents and warrants to the Seller, as of the Agreement Date and as of the Closing Date, or, if expressly made as of a specified date, as of such specified date, as follows:

Section 4.1    Organization; Good Standing.  The Buyer is a limited liability company, duly organized, validly existing, and in good standing under the Laws of the State of Florida.

Section 4.2    Power and Authority.  The Buyer has all requisite right, power, and authority to execute, deliver, and perform this Agreement and the Transaction Agreements to which it is a party, to consummate the transactions contemplated hereby and thereby, and to perform its obligations hereunder and thereunder.  The execution and delivery of this Agreement and the Transaction Agreements by the Buyer, and the consummation by the Buyer of the transactions contemplated hereby and thereby, have been duly approved by the Buyer, and no further action is required on the part of the Buyer to authorize this Agreement, any Transaction Agreement to which it is a party, or the transactions contemplated hereby and thereby.  This Agreement has been, and each of the Transaction Agreements will be, duly and validly executed and delivered by the Buyer and, assuming the due and valid authorization, execution, and delivery of this Agreement by the other Parties, and of each such Transaction Agreement by the other parties thereto, constitutes, or will constitute, a valid and binding obligation of the Buyer, enforceable against it in accordance with its terms and conditions, except as enforcement may be limited by applicable bankruptcy, insolvency, reorganization, moratorium and other Laws affecting enforcement of creditor's rights generally and except insofar as the availability of equitable remedies may be limited by applicable Law.

Section 4.3    No Conflicts.  The execution and delivery by the Buyer of this Agreement and each of the Transaction Agreements, and the consummation of the transactions contemplated hereby and thereby, will not conflict with, result in any violation of, or default under (with or without notice or lapse of time, or both), or give rise to an additional payment obligation, a right of termination, cancellation, modification, or acceleration of, any obligation, or loss of any benefit under: (a) any provision of the Buyer's Organizational Documents; (b) any contract to which the Buyer is party, other than the Buyer Representation Agreement; or (c) any Law applicable to the Buyer.

Section 4.4    Sufficient Funds.  The Buyer has, and will have, sufficient funds available to make payment of the Purchase Price and consummate the transactions contemplated by this Agreement and the Transaction Agreements.

## ARTICLE 5.
## COVENANTS

Section 5.1    Appropriate Actions.

(a)    General.  Each of the Parties shall use commercially reasonable efforts to take all actions necessary to consummate the transactions contemplated by this Agreement as soon as reasonably practicable after the execution of this Agreement, including taking all actions necessary to comply promptly with all applicable Laws that may be imposed on it or any of its Affiliates with respect to the Closing.

## ARTICLE 6.
## CLOSING

Section 6.1    Closing.  The closing of the transactions contemplated by this Agreement (the "**Closing**") will take place upon the execution and delivery of this Agreement or at such other time, date, and place as the Parties may agree in writing.  The date on which the Closing occurs is hereinafter referred to as the "**Closing Date**." The Parties agree that the Closing may take place by the electronic exchange of executed counterpart documents and the electronic transfer of funds.

Section 6.2    Closing Deliverables of the Seller.  At or prior to the Closing, Seller shall deliver to Buyer any of the following if requested by Buyer:  (i) a bill of sale and assignment and assumption agreement substantially in the form attached hereto as **Exhibit B** (the "**Bill of Sale and Assignment and Assumption Agreement**"), duly executed by the Seller, effecting the transfer and assignment to, and assumption by, the Buyer of the Purchased Accounts; and (ii) such other customary instruments of transfer, assumption, filings, or documents, in form and substance reasonably satisfactory to the Buyer, as may be required to give effect to this Agreement.

Section 6.3    Closing Deliverables of the Buyer.  At or prior to the Closing, the Seller shall have received the following: (i) the Upfront Cash Payment; and (ii) if requested pursuant to Section 6.2, the Bill of Sale and Assignment and Assumption Agreement, duly executed by the Buyer.

Section 6.4    Indemnification by the Seller.  Subject to the limitations set forth in this Article 6, the Seller agrees to indemnify and hold harmless the Buyer, including its shareholders, members, directors, managers, officers, employees, Affiliates, and agents (each, a "**Buyer Indemnified Party**" and, collectively, the "**Buyer Indemnified Parties**"), against all claims, losses, Liabilities, damages, deficiencies, diminutions in value, costs, interest, awards, judgments, penalties, and expenses, including reasonable out-of-pocket attorneys' and consultants' fees and expenses and including any such reasonable expenses incurred in connection with investigating, defending against, or settling any of the foregoing (each, a "**Loss**" and, collectively, the "**Losses**") paid, suffered, incurred, sustained, or accrued by any Buyer Indemnified Party, directly or indirectly, as a result of,

DocuSign Envelope ID: 6CB4B19F1-2BBE-4C71-A697-2BC659AA2290

arising out of, or in connection with: (a) any inaccuracy in, or breach of, any of the representations or warranties of the Seller contained in this Agreement, (b) any breach or non-fulfillment of any covenant, agreement, or obligation to be performed by the Seller pursuant to this Agreement, (c) any Excluded Asset or any Excluded Liability.

Section 6.5    Indemnification by the Buyer.  Subject to the limitations set forth in this Article 6, the Buyer agrees to indemnify and hold harmless the Seller, including its Affiliates and agents (each, a "**Seller Indemnified Party**" and, collectively, the "**Seller Indemnified Parties**"), against all Losses paid, suffered, incurred, sustained, or accrued by any Seller Indemnified Party, directly or indirectly, as a result of, arising out of, or in connection with: (a) any inaccuracy in, or breach of, any of the representations or warranties of the Buyer contained in this Agreement; (b) any breach or non-fulfillment of any covenant, agreement, or obligation to be performed by the Buyer pursuant to this Agreement; (c) any event or occurance related to the Purchased Accounts or Buyer occurring after the Closing; or (d) resulting from any omissions or misstatements made by Buyer to investors or potential investors.

Section 6.6    Indemnification Procedures.

(a)    No Restraints.  Promptly following receipt by an Indemnified Party of notice by a Third Party (including any Governmental Body) of any complaint, dispute, or claim or the commencement of any audit, investigation, Action or proceeding with respect to which such Indemnified Party may be entitled to indemnification pursuant hereto (a "**Third-party Claim**"), such Indemnified Party shall provide written notice thereof to the Indemnifying Party, provided, however, that the failure to so notify the Indemnifying Party shall relieve the Indemnifying Party from Liability hereunder with respect to such Third-party Claim only if, and only to the extent that, such failure to so notify the Indemnifying Party results in the forfeiture by the Indemnifying Party of rights and defenses otherwise available to the Indemnifying Party with respect to such Third-party Claim.  The Indemnifying Party shall have the right, upon written notice delivered to the Indemnified Party within twenty days thereafter assuming full responsibility for any Losses resulting from such Third-party Claim, to assume the defense of such Third-party Claim, including the employment of counsel reasonably satisfactory to the Indemnified Party and the payment of the fees and disbursements of such counsel; provided, however, if the Indemnifying Party declines or fails to assume the defense of such Third-party Claim on the terms provided above or to employ counsel reasonably satisfactory to the Indemnified Party, in either case within such twenty day period, then any Losses shall include the reasonable fees and disbursements of counsel for the Indemnified Party as incurred.  In any Third-party Claim for which indemnification is being sought hereunder the Indemnified Party or the Indemnifying Party, whichever is not assuming the defense of such Third-party Claim, shall have the right to participate in such matter and to retain its own counsel at such Party's own expense.  The Indemnifying Party or the Indemnified Party (as the case may be) shall at all times use reasonable efforts to keep the Indemnifying Party or Indemnified Party (as the case may be) reasonably apprised of the status of the defense of any matter, the defense of which it is maintaining, and to cooperate in good faith with each other with respect to the defense of any such matter.

(b)    No Indemnified Party may settle or compromise any Third-party Claim or consent to the entry of any judgment with respect to which indemnification is being sought hereunder without the prior written consent of the Indemnifying Party (which may not be unreasonably withheld or delayed), unless (i) the Indemnifying Party fails to assume and maintain the defense of such Third-party Claim or (ii) such settlement, compromise, or consent includes an unconditional release of the Indemnifying Party and its officers, directors, employees and Affiliates from all Liability arising out of, or related to, such Third-party Claim.  An Indemnifying Party may not, without the prior written consent of the Indemnified Party, settle or compromise any Third-party Claim or consent to the entry of any judgment with respect to which indemnification is being sought hereunder unless such settlement, compromise, or consent (A) includes an unconditional release of the Indemnified Party and its officers, directors, employees, and Affiliates from all Liability arising out of, or related to, such Third-party

DocuSign Envelope ID: 6CB4B19F-3BBE-4C17-A697-2BC659AA3290

Claim, (B) does not contain any admission or statement suggesting any wrongdoing or Liability on behalf of the Indemnified Party, and (C) does not contain any equitable order, judgment, or term that in any manner affects, restrains, or interferes with the business of the Indemnified Party or any of the Indemnified Party's Affiliates.

(c)     If an Indemnified Party claims a right to payment pursuant hereto with respect to any matter not involving a Third-party Claim (a "**Direct Claim**"), such Indemnified Party shall send written notice of such claim to the appropriate Indemnifying Party (each, a "**Notice of Claim**").  Such Notice of Claim shall specify the basis for such Direct Claim.  The failure by any Indemnified Party so to notify the Indemnifying Party shall not relieve the Indemnifying Party from any Liability that it may have to such Indemnified Party with respect to any Direct Claim made pursuant to this Section 6.6(c).  If the Indemnifying Party does not notify the Indemnified Party within thirty days following its receipt of such Notice of Claim that the Indemnifying Party disputes its Liability to the Indemnified Party under this Article 6 or the amount thereof, the Direct Claim specified by the Indemnified Party in such Notice of Claim shall be conclusively deemed a Liability of the Indemnifying Party under this Article 6, and the Indemnifying Party shall pay the amount of such Liability to the Indemnified Party on demand or, in the case of any Notice of Claim in which the amount of the Direct Claim (or any portion of the Direct Claim) is estimated, on such later date when the amount of such Direct Claim (or such portion of such Direct Claim) becomes finally determined.  In the event that the Indemnifying Party has timely disputed its Liability with respect to such Direct Claim as provided above, as promptly as possible, such Indemnified Party and the appropriate Indemnifying Party shall establish the merits and amount of such Direct Claim (by mutual agreement, litigation, arbitration or otherwise) and, within five business days following the final determination of the merits and amount of such Direct Claim, the Indemnifying Party shall pay to the Indemnified Party an amount equal to such Direct Claim as determined hereunder.

## ARTICLE 7.
## MISCELLANEOUS

Section 7.1     Entire Agreement; Amendment.  This Agreement and the Transaction Agreements (including the exhibits hereto and thereto and the documents referred to therein) constitute the entire agreement among the Parties with respect to the subject matter hereof and supersede any prior understandings, agreements, or representations by or among the Parties, written or oral, to the extent they related in any way to the subject matter hereof.  This Agreement may be amended with the written consent of each of the Parties or any successor thereto by execution of an instrument in writing.

Section 7.2     Waivers.  The rights and remedies of the Parties to this Agreement are cumulative and not alternative.  To the maximum extent permitted by applicable Law: (a) no claim or right arising out of this Agreement or the documents referred to in this Agreement can be discharged by one Party, in whole or in part, by a waiver or renunciation of the claim or right unless in writing signed by the other Parties; (b) no waiver that may be given by a Party will be applicable except in the specific instance for what it is given; and (c) no notice to, or demand on, one Party will be deemed to be a waiver of any obligation of such Party or of the right of the Party giving such notice or demand to take further action without notice or demand as provided in this Agreement or the Transaction Agreements.

Section 7.3     Notices.  All notices and other communications required or permitted hereunder shall be made to the address of a Party listed on the signature page to this Agreement and shall be (a) in writing, (b) effective when given, and (c), in any event, deemed to be given upon receipt or, if earlier: (i) upon delivery, if delivered by hand; (ii) two business days after deposit with FedEx Express or similar recognized international overnight courier service, freight prepaid; or (iii) one business day after facsimile or electronic mail transmission. A Party may change the address to which notices, requests, demands, claims, and other communications hereunder are to be delivered by giving the other Parties advance written notice pursuant to the provisions above.

DocuSign Envelope ID: 6CB4B19E1 2BBE 4C47 A697 2BC659AA3298

Section 7.4    <u>Successors and Assigns</u>.  This Agreement shall be binding upon, and inure to the benefit of, the Parties named herein and their respective successors and permitted assigns.  Neither this Agreement nor any rights or obligations of a Party hereunder shall be assigned by a Party (unless to an Affiliate of such Party) without the prior written consent of the other Parties.  This Agreement will be binding upon any permitted assignee of any Party.  No assignment shall have the effect of relieving any Party to this Agreement of any of its obligations hereunder.

Section 7.5    <u>Public Disclosure</u>.  Except as may be required by Law, the Seller shall not issue any statement or communication to any Third Party (other than its respective agents) regarding the subject matter of this Agreement or the transactions contemplated hereby, including, if applicable, the termination of this Agreement and the reasons therefor, without the prior written consent of the Buyer.

Section 7.6    <u>Expenses and Fees</u>.  Whether or not the Closing occurs, all fees and expenses incurred in connection with this transactions contemplated by this Agreement, including all legal, accounting, financial advisory, consulting and all other fees and expenses of Third Parties incurred by a Party in connection with the negotiation and effectuation of the terms and conditions of this Agreement and the transactions contemplated hereby, shall be the obligation of the respective Party incurring such fees and expenses.

Section 7.7    <u>Specific Performance</u>.  The Parties agree that irreparable damage would occur if any provision of this Agreement was not performed in accordance with the terms hereof and that the Parties shall be entitled to specific performance of the terms hereof, in addition to any other remedy to which they are entitled hereunder, at Law or in equity.

Section 7.8    <u>Counterparts</u>.  This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement.  A signed copy of this Agreement delivered by facsimile, electronic mail, or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

Section 7.9    <u>Governing Law</u>.  This Agreement shall, in all respects, be construed in accordance with, and governed by, the Laws of the State of California without regard to conflict of Laws principles.

Section 7.10    <u>Severability</u>.  Any term or provision of this Agreement that is invalid or unenforceable in any situation in any jurisdiction shall not affect the validity or enforceability of the remaining terms and provisions hereof or the validity or enforceability of the offending term or provision in any other situation or in any other jurisdiction.

Section 7.11    <u>Construction</u>.  The Parties have participated jointly in the negotiation and drafting of this Agreement.  In the event an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the Parties and no presumption or burden of proof shall arise favoring or disfavoring any Party by virtue of the authorship of any of the provisions of this Agreement.

DocuSign Envelope ID: 6CB4B19F1-2BBE-4E47-A697-2BC659AA3298

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the Agreement Date.

**BUYER:**

**The Litigation Practice Group P.C.**

By: _Daniel S March_
_____
9D494DB1993341E
Name: Daniel S March
Title: Managing Shareholder

**SELLER:**

**Debt Relief Group**

By: _____
3EC0D8C0C17740B
Name: William Burns
Title: CEO

**APPROVAL OF ASSIGNMENT AND GUARANTEE**

The assignment of the Purchased Accounts set forth in this Agreement as well as the guarantee included therein is hereby approved, and with respect to the Purchased Accounts, the Buyer shall have all rights of Buyer as set forth in this agreement.

**The Litigation Practice Group P.C.**

By: _Daniel S March_
_____
9D494DB1993341E
Name: Daniel S. March
Title: Managing Shareholder

*[Signature Page to Accounts Receivable Purchase Agreement]*

DocuSign Envelope ID: 6CB4B19F12BBE4C571A697-2BC659AA2290

## EXHIBIT A

## DEFINITIONS

As used in this Agreement, the following terms have the following meanings (terms defined in the singular to have a correlative meaning when used in the plural and vice versa).

(a)    "**Action**" shall mean any civil, criminal, or administrative action, claim, suit, demand, charge, citation, reexamination, opposition, interference, decree, injunction, mediation, hearing, notice of violation, demand letter, litigation, proceeding, labor dispute, arbitral action, governmental or other audit, inquiry, criminal prosecution, investigation, unfair labor practice charge, or complaint.

(b)    "**Agreement**" shall have the meaning set forth in the preamble to this Agreement.

(c)    "**Agreement Date**" shall have the meaning set forth in the preamble to this Agreement.

(d)    "**Affiliate**" shall mean (i) with respect to any non-natural Person, any Person that, directly or indirectly, through one or more intermediaries, controls, is controlled by, or is under common control with, such Person and (ii), with respect to any individual, (A) family members of such individual, by blood, adoption, or marriage, (B) such individual's spouse or ex-spouse and (C) any Person that is directly or indirectly under the control of any of the foregoing individuals.  For purposes of this definition, "control" (including with correlative meanings, the terms "controlling," "controlled by," and under "common control with") means the possession, directly or indirectly, of the power to direct the management and policies of a Person, whether through the ownership of voting securities, by contract, or otherwise.

(e)    "**Bill of Sale and Assignment and Assumption Agreement**" shall have the meaning set forth in Section 6.2.

(f)    "**Business**" shall mean the business of the Seller as conducted on the Agreement Date.

(g)    "**Buyer**" shall have the meaning set forth in the preamble to this Agreement.

(h)    "**Buyer Indemnified Parties**" shall have the meaning set forth in Section 6.4.

(i)    "**Closing**" shall have the meaning set forth in Section 6.1.

(j)    "**Closing Date**" shall have the meaning set forth in Section 6.1.

(k)    "**Direct Claim**" shall have the meaning set forth in Section 6.6(c).

(l)    "**Excluded Assets**" shall have the meaning set forth in Section 2.1.

(m)    "**Excluded Liabilities**" shall have the meaning set forth in Section 2.2.

(n)    "**Governmental Body**" shall mean any: (i) nation, province, state, county, city, town, village, district, or other jurisdiction of any nature; (ii) federal, provincial, state, local, municipal, foreign, or other government; (iii) governmental or quasi-governmental authority of any nature (including any governmental agency, branch, department, official, or entity and any court or other tribunal); (iv) multi-national organization or body; or (v) body exercising, or entitled to exercise, any administrative, executive, judicial, legislative, police, regulatory, or taxing authority or power of any nature.

DocuSign Envelope ID: 6CB4B19F1-2BBE-4E47-A897-2BC659AA3290

(o) "**Indebtedness**" means, without duplication and with respect to the Seller, all: (i) indebtedness for borrowed money; (ii) obligations for the deferred purchase price of property or services, (iii) long or short-term obligations evidenced by notes, bonds, debentures or other similar instruments; (iv) obligations under any interest rate, currency swap, or other hedging agreement or arrangement; (v) capital lease obligations; (vi) reimbursement obligations under any letter of credit, banker's acceptance or similar credit transactions; (vii) guarantees made by the Seller on behalf of any third party in respect of obligations of the kind referred to in the foregoing clauses (i) through (vi); and (viii) any unpaid interest, prepayment penalties, premiums, costs and fees that would arise or become due as a result of the prepayment of any of the obligations referred to in the foregoing clauses (i) through (vii).

(p) "**Indemnified Party**" shall mean a Buyer Indemnified Party or a Seller Indemnified Party, as the case may be, making a claim for indemnification under Article 6.

(q) "**Indemnifying Party**" shall mean a Party against whom a claim for indemnification is asserted under Article 6.

(r) "**Knowledge**" shall mean, with respect to the Seller, the actual or constructive knowledge of all facts relevant to this transaction and the transacting parties, after due inquiry.

(s) "**Law**" shall mean any law, statute, ordinance, regulation, rule, code, notice requirement, court decision, or agency guideline, of any foreign, federal, state, or local Governmental Body.

(t) "**Liabilities**" shall mean any direct or indirect liability, Indebtedness, obligation, commitment, expense, claim, deficiency, guaranty, or endorsement of, or by, any Person of any type, known or unknown, and whether accrued, absolute, contingent, matured, unmatured, determined or undeterminable, on- or off-balance sheet, or other.

(u) "**Lien**" shall mean any mortgage, pledge, lien, charge, claim, security interest, adverse claims of ownership or use, restrictions on transfer, defect of title, or other encumbrance of any sort.

(v) "**Losses**" shall have the meaning set forth in Section 6.4.

(w) "**Notice of Claim**" shall have the meaning set forth in Section 6.6(c).

(x) "**Organizational Documents**" shall mean, with respect to a Person, the charter, bylaws, limited liability company agreement, and other organizational documents of such Person, in each case, as amended.

(y) "**Party**" or "**Parties**" shall have the meaning set forth in the preamble to this Agreement.

(z) "**Permitted Liens**" shall mean (i) Liens for Taxes not yet delinquent or being contested in good faith by appropriate proceedings, (ii) statutory Liens (including materialmen's, warehousemen's, mechanic's, repairmen's, landlord's, and other similar Liens) arising in the ordinary course of business securing payments not yet delinquent or being contested in good faith by appropriate proceedings, and (iii) restrictive covenants, easements, and defects, imperfections or irregularities of title, if any, of a nature that do not materially and adversely affect the assets or properties subject thereto.

(aa) "**Person**" shall mean any individual, corporation (including any non-profit corporation), general or limited partnership, limited liability company, joint venture, estate, trust, association, organization, labor union, Governmental Body, or other entity.

(bb)    "**Purchase Price**" shall have the meaning set forth in <u>Section 2.3</u>.

(cc)    "**Purchased Accounts**" shall have the meaning set forth in the Recitals.

(dd)    "**Seller**" shall have the meaning set forth in the preamble to this Agreement.

(ee)    "**Seller Indemnified Parties**" shall have the meaning set forth in <u>Section 6.5</u>.

(ff)    "**Tax**" or "**Taxes**" shall mean any U.S. federal, state, local or non-U.S. income, gross receipts, license, payroll, employment, excise, severance, stamp, occupation, premium, windfall profits, environmental, customs duties, capital stock, escheat, franchise, profits, withholding, social security, unemployment, disability, real property, personal property, sales, use, transfer, registration, value added, alternative or add-on minimum, estimated, or other tax of any kind whatsoever, including any interest, penalty, or addition thereto, whether disputed or not.

(gg)    "**Tax Returns**" means any return, declaration, report, claim for refund, or information return or statement relating to Taxes, including any schedule or attachment thereto, and including any amendment thereof.

(hh)    "**Third Party**" or "**Third Parties**" shall mean any Person other than the Parties or their respective Affiliates.

(ii)    "**Third-party Claim**" shall have the meaning set forth in <u>Section 6.6(a)</u>.

(jj)    "**Transaction Agreements**" shall mean the Bill of Sale and Assignment and Assumption Agreement, and each other agreement, instrument, and/or certificate contemplated by this Agreement or such other agreements to be executed in connection with the transactions contemplated hereby or thereby.

(kk)    "**Upfront Cash Payment**" shall have the meaning set forth in <u>Section 2.3</u>.

(ll)    "**Wire Instructions**" shall have the meaning set forth in <u>Section 2.3</u>.

## EXHIBIT B

**FORM OF BILL OF SALE AND ASSIGNMENT AND ASSUMPTION AGREEMENT**

THIS BILL OF SALE AND ASSIGNMENT AND ASSUMPTION AGREEMENT (this **"Agreement"**), is made by and between **Buyer**, and **Seller**.  Each of the Seller and the Buyer are sometimes referred to herein, individually, as a **"Party"** and, collectively, as the **"Parties."**

WHEREAS, the Buyer and the Seller have entered into that certain Accounts Receivable Purchase Agreement, of even date herewith (the **"Purchase Agreement"**), pursuant to which the Seller has agreed to sell, assign, transfer, and deliver to the Buyer, and the Buyer has agreed to purchase, acquire, and accept from the Seller, all right, title, and interest of the Seller in and to the Purchased Accounts, free and clear of any Liens.

NOW, THEREFORE, in consideration of the covenants and representations set forth herein, and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the Parties, intending to be legally bound, agree as follows:

1.      <u>Defined Terms</u>.  Capitalized terms used but not otherwise defined in this Agreement shall have the meanings assigned to such terms in the Purchase Agreement.

2.      <u>Sale of Purchased Accounts; Assignment</u>.  The Seller hereby sells, assigns, transfers, and delivers to the Buyer, and the Buyer hereby purchases, acquires, and accepts from the Seller, all right, title, and interest of the Seller in and to the Purchased Accounts, free and clear of any Liens.

3.      <u>Further Assurances</u>.  Each of the Parties agrees, from time to time, at the request of the any other Party, to execute and deliver such other instruments of conveyance, power of attorney, sale, transfer, or assignment and take such other actions as such other Party may reasonably request in order to more effectively consummate the transactions contemplated by this Agreement.

4.      <u>Terms of the Purchase Agreement</u>.  This Agreement is intended to evidence the consummation of the transactions contemplated by the Purchase Agreement and is subject to the terms and conditions set forth in the Purchase Agreement.   The terms of the Purchase Agreement, including, but not limited to, the representations, warranties, covenants, agreements, and indemnities relating to the Purchased Accounts are incorporated herein by this reference.  The Parties acknowledge and agree that the representations, warranties, covenants, agreements, and indemnities contained in the Purchase Agreement shall not be superseded hereby but shall remain in full force and effect to the full extent provided therein.  In the event of any conflict or inconsistency between the terms of the Purchase Agreement and the terms hereof, the terms of the Purchase Agreement shall govern.

5.      <u>Counterparts</u>.  This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement.  A signed copy of this Agreement delivered by facsimile, electronic mail, or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

*[Remainder of page intentionally left blank.]*

DocuSign Envelope ID: 6CB4B19F1-2BBE-4E47-A697-2BC659AA3290

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date first above written.

**BUYER: The Litigation Practice Group P.C.**

By: _Daniel S March_
    _____
    Name: Daniel S. March
    Title: Managing Shareholder

**SELLER:**

**Debt Relief Group**

By: _____
    Name: William Burns
    Title: CEO

Schedule 2.3
Wire Instructions

**$156,514.79**

**Account Holder Name: Debt Relief Group**

**Address: 1800 Old Okeechobee Rd Suite 200, West Palm Beach, FL 33409**

**Routing Number:** ███████

**Account Number:** ███████

| Full Name | Customer I | Company | | Enrolled Da | Monthly Pa |
|---|---|---|---|---|---|
| | -63 | Debt Relief Group LLC | | ######## | 246.22 |
| | -65 | Debt Relief Group LLC | | ######## | 306.39 |
| | -67 | Debt Relief Group LLC | | ######## | 261.33 |
| | -64 | Debt Relief Group LLC | | ######## | 251.07 |
| | -65 | Debt Relief Group LLC | | ######## | 265.4 |
| | -65 | Debt Relief Group LLC | | ######## | 299.63 |
| | -65 | Debt Relief Group LLC | | ######## | 297.96 |
| | -65 | Debt Relief Group LLC | | ######## | 297.39 |
| | -65 | Debt Relief Group LLC | | ######## | 297.83 |
| | -66 | Debt Relief Group LLC | | ######## | 320.39 |
| | -66 | Debt Relief Group LLC | | ######## | 265.99 |
| | -66 | Debt Relief Group LLC | | ######## | 275.26 |
| | -66 | Debt Relief Group LLC | | ######## | 250.03 |
| | -66 | Debt Relief Group LLC | | ######## | 635.85 |
| | -66 | Debt Relief Group LLC | | ######## | 255.81 |
| | -66 | Debt Relief Group LLC | | ######## | 258.01 |
| | -66 | Debt Relief Group LLC | | ######## | 202.16 |
| | -66 | Debt Relief Group LLC | | ######## | 321.04 |
| | -66 | Debt Relief Group LLC | | ######## | 367.89 |
| | -66 | Debt Relief Group LLC | | ######## | 342.02 |
| | -66 | Debt Relief Group LLC | | ######## | 271.88 |
| | -66 | Debt Relief Group LLC | | ######## | 254.48 |
| | -66 | Debt Relief Group LLC | | ######## | 396.45 |
| | -66 | Debt Relief Group LLC | | ######## | 290.9 |
| | -66 | Debt Relief Group LLC | | ######## | 250.94 |
| | -66 | Debt Relief Group LLC | | ######## | 259.49 |
| | -66 | Debt Relief Group LLC | | ######## | 254.29 |
| | -66 | Debt Relief Group LLC | | ######## | 252.29 |
| | -66 | Debt Relief Group LLC | | ######## | 253.73 |
| | -66 | Debt Relief Group LLC | | ######## | 312.63 |
| | -66 | Debt Relief Group LLC | | ######## | 280.08 |
| | -66 | Debt Relief Group LLC | | ######## | 302.05 |
| | -66 | Debt Relief Group LLC | | ######## | 126.24 |
| | -66 | Debt Relief Group LLC | | ######## | 287.42 |
| | -66 | Debt Relief Group LLC | | ######## | 257.43 |
| | -66 | Debt Relief Group LLC | | ######## | 371.91 |
| | -66 | Debt Relief Group LLC | | ######## | 256.72 |
| | -66 | Debt Relief Group LLC | | ######## | 296.94 |
| | -66 | Debt Relief Group LLC | | ######## | 297.24 |
| | -66 | Debt Relief Group LLC | | ######## | 439.74 |
| | -66 | Debt Relief Group LLC | | ######## | 251.82 |
| | -66 | Debt Relief Group LLC | | ######## | 327.29 |
| | -66 | Debt Relief Group LLC | | ######## | 304.49 |
| | -66 | Debt Relief Group LLC | | ######## | 253.94 |
| | -66 | Debt Relief Group LLC | | ######## | 250.99 |
| | -66 | Debt Relief Group LLC | | ######## | 295.16 |

| | | | |
|---|---|---|---|
| ██████ | Debt Relief Group LLC | ######## | 263.62 |
| ██████ | Debt Relief Group LLC | ######## | 271.17 |
| ██████ | Debt Relief Group LLC | ######## | 378.16 |
| ██████ | Debt Relief Group LLC | ######## | 326.06 |
| ██████ | Debt Relief Group LLC | ######## | 473.38 |
| ██████ | Debt Relief Group LLC | ######## | 206.51 |
| ██████ | Debt Relief Group LLC | ######## | 251.85 |
| ██████ | Debt Relief Group LLC | ######## | 251.36 |
| ██████ | Debt Relief Group LLC | ######## | 668.88 |
| ██████ | Debt Relief Group LLC | ######## | 595.13 |
| ██████ | Debt Relief Group LLC | ######## | 128.3 |
| ██████ | Debt Relief Group LLC | ######## | 346.96 |
| ██████ | Debt Relief Group LLC | ######## | 250.57 |
| ██████ | Debt Relief Group LLC | ######## | 250.8 |
| ██████ | Debt Relief Group LLC | ######## | 249.63 |
| ██████ | Debt Relief Group LLC | ######## | 394.58 |
| ██████ | Debt Relief Group LLC | ######## | 286.38 |
| ██████ | Debt Relief Group LLC | ######## | 252.55 |
| ██████ | Debt Relief Group LLC | ######## | 252.82 |
| ██████ | Debt Relief Group LLC | ######## | 479.83 |
| ██████ | Debt Relief Group LLC | ######## | 287.36 |
| ██████ | Debt Relief Group LLC | ######## | 254.82 |
| ██████ | Debt Relief Group LLC | ######## | 390.05 |
| ██████ | Debt Relief Group LLC | ######## | 251.2 |
| ██████ | Debt Relief Group LLC | ######## | 302.11 |
| ██████ | Debt Relief Group LLC | ######## | 478.67 |
| ██████ | Debt Relief Group LLC | ######## | 253.74 |
| ██████ | Debt Relief Group LLC | ######## | 254.78 |
| ██████ | Debt Relief Group LLC | ######## | 250.99 |
| ██████ | Debt Relief Group LLC | ######## | 253.58 |
| ██████ | Debt Relief Group LLC | ######## | 303.61 |
| ██████ | Debt Relief Group LLC | ######## | 300.76 |
| ██████ | Debt Relief Group LLC | ######## | 797.89 |
| ██████ | Debt Relief Group LLC | ######## | 253.24 |
| ██████ | Debt Relief Group LLC | ######## | 281.39 |
| ██████ | Debt Relief Group LLC | ######## | 270.16 |
| ██████ | Debt Relief Group LLC | ######## | 251.08 |
| ██████ | Debt Relief Group LLC | ######## | 251.09 |
| ██████ | Debt Relief Group LLC | ######## | 253.89 |
| ██████ | Debt Relief Group LLC | ######## | 254.37 |
| ██████ | Debt Relief Group LLC | ######## | 250.82 |
| ██████ | Debt Relief Group LLC | ######## | 251.73 |
| ██████ | Debt Relief Group LLC | ######## | 252.37 |
| ██████ | Debt Relief Group LLC | ######## | 281.6 |
| ██████ | Debt Relief Group LLC | ######## | 307.62 |
| ██████ | Debt Relief Group LLC | ######## | 276 |
| ██████ | Debt Relief Group LLC | ######## | 269.11 |

| | | |
|---|---|---|
| TLLC-65! Debt Relief Group LLC | ######## | 260.26 |
| TLLC-66: Debt Relief Group LLC | ######## | 254.01 |
| TLLC-64: Debt Relief Group LLC | ######## | 250.32 |
| TLLC-65: Debt Relief Group LLC | ######## | 241.54 |
| TLLC-65: Debt Relief Group LLC | ######## | 250.47 |
| TLLC-65: Debt Relief Group LLC | ######## | 253.5 |
| TLLC-65 Debt Relief Group LLC | ######## | 258.44 |
| TLLC-65 Debt Relief Group LLC | ######## | 279.48 |
| TLLC-65! Debt Relief Group LLC | ######## | 249.12 |
| TLLC-66: Debt Relief Group LLC | ######## | 291.6 |
| TLLC-66: Debt Relief Group LLC | ######## | 362.95 |
| TLLC-66: Debt Relief Group LLC | ######## | 254.4 |
| TLLC-66: Debt Relief Group LLC | ######## | 250.88 |
| TLLC-67: Debt Relief Group LLC | ######## | 454.13 |
| TLLC-67 Debt Relief Group LLC | ######## | 335.66 |
| TLLC-67: Debt Relief Group LLC | ######## | 389.01 |
| TLLC-67: Debt Relief Group LLC | ######## | 252.55 |
| TLLC-66: Debt Relief Group LLC | ######## | 242.47 |
| TLLC-63: Debt Relief Group LLC | ######## | 416.55 |
| TLLC-64: Debt Relief Group LLC | ######## | 251.56 |
| TLLC-64: Debt Relief Group LLC | ######## | 267.88 |
| TLLC-65: Debt Relief Group LLC | ######## | 253.08 |
| TLLC-65: Debt Relief Group LLC | ######## | 252.23 |
| TLLC-65: Debt Relief Group LLC | ######## | 282.13 |
| TLLC-65: Debt Relief Group LLC | ######## | 300.73 |
| TLLC-66: Debt Relief Group LLC | ######## | 261.75 |
| TLLC-66: Debt Relief Group LLC | ######## | 272.4 |
| TLLC-67: Debt Relief Group LLC | ######## | 328.75 |

DocuSign Envelope ID: 6CB4B19F-3BBE-4C57-A697-2BC659AA2290

| Second Pay | Third Paym | Fourth Pay | Fifth Paym | Debt Enrolled | Total Progr | Total Paym | Fee 1 | State |
|---|---|---|---|---|---|---|---|---|
| 224.81 | 224.81 | 224.81 | 224.81 | 15412 | 9666.97 | 224.81 | 35 | PA |
| 306.39 | 306.39 | 306.39 | 306.39 | 14401 | 7353.47 | 306.39 | 35 | FL |
| 261.33 | 261.33 | 261.33 | 261.33 | 9897 | 6271.92 | 261.33 | 40 | IL |
| 251.07 | 251.07 | 251.07 | 251.07 | 17679 | 10042.85 | 251.07 | 35 | WI |
| 265.4 | 265.4 | 265.4 | 265.4 | 19317.1 | 10616.19 | 265.4 | 35 | SD |
| 299.63 | 299.63 | 299.63 | 299.63 | 23228 | 11984.99 | 299.63 | 35 | AR |
| 297.96 | 297.96 | 297.96 | 297.96 | 17278 | 8938.7 | 297.96 | 35 | TN |
| 297.39 | 297.39 | 297.39 | 297.39 | 10964 | 7137.28 | 297.39 | 44 | NY |
| 297.83 | 297.83 | 297.83 | 297.83 | 17267 | 8934.85 | 297.83 | 35 | TX |
| 320.39 | 320.39 | 320.39 | 320.39 | 25601 | 12815.55 | 320.39 | 35 | SC |
| 265.99 | 265.99 | 265.99 | 265.99 | 23261 | 12767.59 | 265.99 | 35 | CA |
| 275.26 | 275.26 | 275.26 | 275.26 | 17377 | 9358.87 | 275.26 | 35 | CA |
| 250.03 | 250.03 | 250.03 | 250.03 | 9219 | 6000.72 | 250.03 | 40 | CA |
| 635.85 | 635.85 | 635.85 | 635.85 | 61654 | 25434.1 | 635.85 | 35 | IL |
| 255.81 | 255.81 | 255.81 | 255.81 | 11388 | 6395.3 | 255.81 | 35 | TX |
| 258.01 | 258.01 | 258.01 | 258.01 | 16163 | 10320.4 | 258.01 | 40 | MO |
| 202.16 | 202.16 | 202.16 | 202.16 | 4428 | 3638.88 | 202.16 | 43 | NJ |
| 321.04 | 321.04 | 321.04 | 321.04 | 25675 | 12841.45 | 321.04 | 35 | FL |
| 367.89 | 367.89 | 367.89 | 367.89 | 27927 | 13244.13 | 367.89 | 35 | PA |
| 342.02 | 342.02 | 342.02 | 342.02 | 16844 | 8208.52 | 342.02 | 35 | OH |
| 271.88 | 271.88 | 271.88 | 271.88 | 17048.52 | 9243.9 | 271.88 | 35 | MI |
| 254.48 | 254.48 | 254.48 | 254.48 | 11067 | 7125.44 | 254.48 | 40 | TX |
| 396.45 | 396.45 | 396.45 | 396.45 | 20576 | 9514.72 | 396.45 | 35 | CA |
| 290.9 | 290.9 | 290.9 | 290.9 | 16673 | 8726.95 | 290.9 | 35 | PA |
| 250.94 | 250.94 | 250.94 | 250.94 | 7419 | 6022.62 | 250.94 | 50 | SC |
| 259.49 | 259.49 | 259.49 | 259.49 | 8510 | 6227.72 | 259.49 | 46 | MA |
| 254.29 | 254.29 | 254.29 | 254.29 | 7106 | 4577.24 | 254.29 | 40 | OH |
| 252.29 | 252.29 | 252.29 | 252.29 | 8504 | 6054.88 | 252.29 | 44 | GA |
| 253.73 | 253.73 | 253.73 | 253.73 | 17982.78 | 10149.17 | 253.73 | 35 | NC |
| 312.63 | 312.63 | 312.63 | 312.63 | 24714 | 12505.1 | 312.63 | 35 | NY |
| 280.08 | 280.08 | 280.08 | 280.08 | 15746 | 8402.5 | 280.08 | 35 | NJ |
| 302.05 | 302.05 | 302.05 | 302.05 | 23505 | 12081.95 | 302.05 | 35 | TX |
| 126.24 | 126.24 | 126.24 | 126.24 | 11596 | 6564.48 | 126.24 | 35 | CA |
| 287.42 | 287.42 | 287.42 | 287.42 | 18558 | 9772.22 | 287.42 | 35 | IN |
| 257.43 | 257.43 | 257.43 | 257.43 | 16105 | 9010.05 | 257.43 | 35 | WI |
| 371.91 | 371.91 | 371.91 | 371.91 | 31488.98 | 14876.34 | 371.91 | 35 | MI |
| 256.72 | 256.72 | 256.72 | 256.72 | 15576 | 8728.52 | 256.72 | 35 | IL |
| 296.94 | 296.94 | 296.94 | 296.94 | 22921 | 11877.55 | 296.94 | 35 | MI |
| 297.24 | 297.24 | 297.24 | 297.24 | 13773 | 7133.67 | 297.24 | 35 | IL |
| 439.74 | 439.74 | 439.74 | 439.74 | 39241 | 17589.55 | 439.74 | 35 | TN |
| 251.82 | 251.82 | 251.82 | 251.82 | 20725 | 12087.24 | 251.82 | 36 | FL |
| 327.29 | 327.29 | 327.29 | 327.29 | 15834 | 7855.02 | 327.29 | 35 | MO |
| 304.49 | 304.49 | 304.49 | 304.49 | 17838 | 9134.7 | 304.49 | 35 | FL |
| 253.94 | 253.94 | 253.94 | 253.94 | 14544 | 9141.84 | 253.94 | 39 | CA |
| 250.99 | 250.99 | 250.99 | 250.99 | 12369 | 8031.76 | 250.99 | 40 | OH |
| 295.16 | 295.16 | 295.16 | 295.16 | 30779 | 14167.73 | 295.16 | 31 | NJ |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 263.62 | 263.62 | 263.62 | 263.62 | 16724 | 9226.7 | 263.62 | 35 CO |
| 271.17 | 271.17 | 271.17 | 271.17 | 17007 | 9762.27 | 271.17 | 37 NJ |
| 378.16 | 378.16 | 378.16 | 378.16 | 95990 | 36302.94 | 378.16 | 33 AR |
| 326.06 | 326.06 | 326.06 | 326.06 | 13781 | 7825.52 | 326.06 | 40 SC |
| 473.38 | 473.38 | 473.38 | 473.38 | 43086 | 18935.3 | 473.38 | 35 TX |
| 206.51 | 206.51 | 206.51 | 206.51 | 21712 | 9912.32 | 206.51 | 35 MA |
| 251.85 | 251.85 | 251.85 | 251.85 | 11105 | 6296.25 | 251.85 | 35 TX |
| 251.36 | 251.36 | 251.36 | 251.36 | 6340 | 4524.44 | 251.36 | 44 FL |
| 668.88 | 668.88 | 668.88 | 668.88 | 51525 | 24079.68 | 668.88 | 40 MS |
| 595.13 | 595.13 | 595.13 | 595.13 | 51300 | 21424.68 | 595.13 | 35 WI |
| 128.3 | 128.3 | 128.3 | 128.3 | 16021 | 8980.64 | 128.3 | 35 MA |
| 346.96 | 346.96 | 346.96 | 346.96 | 22910 | 11102.66 | 346.96 | 35 OH |
| 250.57 | 250.57 | 250.57 | 250.57 | 7401 | 6013.62 | 250.57 | 50 NC |
| 250.8 | 250.8 | 250.8 | 250.8 | 9753 | 6019.26 | 250.8 | 38 TX |
| 249.63 | 249.63 | 249.63 | 249.63 | 7356 | 5991.12 | 249.63 | 50 OR |
| 394.58 | 394.58 | 394.58 | 394.58 | 34080 | 15783.2 | 394.58 | 35 TX |
| 286.38 | 286.38 | 286.38 | 286.38 | 20629 | 10882.59 | 286.38 | 35 CA |
| 252.55 | 252.55 | 252.55 | 252.55 | 8716.43 | 6061.18 | 252.55 | 43 MI |
| 252.82 | 252.82 | 252.82 | 252.82 | 7822 | 5056.4 | 252.82 | 40 SC |
| 479.83 | 479.83 | 479.83 | 479.83 | 26294 | 11516.02 | 479.83 | 35 IL |
| 287.36 | 287.36 | 287.36 | 287.36 | 16370 | 8620.9 | 287.36 | 35 CO |
| 254.82 | 254.82 | 254.82 | 254.82 | 12675.25 | 7134.98 | 254.82 | 35 WI |
| 390.05 | 390.05 | 390.05 | 390.05 | 31884 | 14821.84 | 390.05 | 35 TX |
| 251.2 | 251.2 | 251.2 | 251.2 | 15482 | 8792 | 251.2 | 35 NC |
| 302.11 | 302.11 | 302.11 | 302.11 | 12344 | 7250.72 | 302.11 | 40 TX |
| 478.67 | 478.67 | 478.67 | 478.67 | 32768 | 14360.2 | 478.67 | 35 WA |
| 253.74 | 253.74 | 253.74 | 253.74 | 15736 | 9134.64 | 253.74 | 36 AR |
| 254.78 | 254.78 | 254.78 | 254.78 | 11484 | 7388.62 | 254.78 | 40 PA |
| 250.99 | 250.99 | 250.99 | 250.99 | 7344 | 4768.82 | 250.99 | 40 GA |
| 253.58 | 253.58 | 253.58 | 253.58 | 9202 | 6085.94 | 253.58 | 41 OH |
| 303.61 | 303.61 | 303.61 | 303.61 | 20131 | 10322.77 | 303.61 | 35 OH |
| 300.76 | 300.76 | 300.76 | 300.76 | 17518 | 9022.7 | 300.76 | 35 NJ |
| 797.89 | 797.89 | 797.89 | 797.89 | 17110 | 7978.9 | 797.89 | 41 NJ |
| 253.24 | 253.24 | 253.24 | 253.24 | 6138 | 4558.32 | 253.24 | 46 CA |
| 281.39 | 281.39 | 281.39 | 281.39 | 10572 | 6753.36 | 281.39 | 42 WV |
| 270.16 | 270.16 | 270.16 | 270.16 | 11916 | 6483.71 | 270.16 | 35 FL |
| 251.08 | 251.08 | 251.08 | 251.08 | 7735 | 5021.6 | 251.08 | 40 SC |
| 251.09 | 251.09 | 251.09 | 251.09 | 6575 | 4268.46 | 251.09 | 40 GA |
| 253.89 | 253.89 | 253.89 | 253.89 | 7088 | 4570.04 | 253.89 | 40 OH |
| 254.37 | 254.37 | 254.37 | 254.37 | 13102 | 8648.74 | 508.74 | 41 TX |
| 250.82 | 250.82 | 250.82 | 250.82 | 8151 | 4765.58 | 250.82 | 36 NY |
| 251.73 | 251.73 | 251.73 | 251.73 | 10652.4 | 6041.46 | 251.73 | 35 VA |
| 252.37 | 252.37 | 252.37 | 252.37 | 9852 | 6056.88 | 252.37 | 38 TN |
| 281.6 | 281.6 | 281.6 | 281.6 | 16670 | 10137.68 | 281.6 | 40 ME |
| 307.62 | 307.62 | 307.62 | 307.62 | 18106 | 9228.5 | 307.62 | 35 CO |
| 276 | 276 | 276 | 276 | 12317 | 6624.07 | 276 | 35 NY |
| 269.11 | 269.11 | 269.11 | 269.11 | 19740 | 10764.2 | 269.11 | 35 TX |

DocuSign Envelope ID: 6CB4B19F1 2BBE 4E57 A697 2BC659AA3290

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 260.26 | 260.26 | 260.26 | 260.26 | 7866 | 6506.38 | 260.26 | 50 FL |
| 254.01 | 317.02 | 317.02 | 317.02 | 13577.58 | 7799.37 | 254.01 | 39 AR |
| 250.32 | 250.32 | 250.32 | 250.32 | 7389 | 6282.94 | 250.32 | 50 NY |
| 266.54 | 241.54 | 241.54 | 241.54 | 14516 | 8720.44 | 266.54 | 35 NJ |
| 250.47 | 275.47 | 250.47 | 275.47 | 8405 | 6562.26 | 275.47 | 44 MA |
| 278.5 | 253.5 | 253.5 | 253.5 | 14365 | 8390.41 | 278.5 | 35 FL |
| 258.44 | 258.44 | 258.44 | 258.44 | 14817 | 8270.11 | 258.44 | 35 NJ |
| 279.48 | 279.48 | 279.48 | 279.48 | 10986 | 6987 | 279.48 | 40 VA |
| 249.12 | 299.12 | 224.12 | 249.12 | 9601 | 6003.95 | 299.12 | 35 MI |
| 291.6 | 316.6 | 291.6 | 291.6 | 14502 | 9381.18 | 316.6 | 35 TN |
| 387.95 | 362.95 | 362.95 | 362.95 | 23991 | 13454.03 | 387.95 | 40 NC |
| 254.4 | 254.4 | 254.4 | 254.4 | 7506 | 5088.02 | 254.4 | 40 IN |
| 250.88 | 250.88 | 250.88 | 250.88 | 6045.7 | 4766.74 | 250.88 | 46 MO |
| 479.13 | 454.13 | 454.13 | 454.13 | 35775 | 16373.68 | 479.13 | 35 NC |
| 335.66 | 360.66 | 335.66 | 335.66 | 13673 | 8416.44 | 335.66 | 42 IL |
| 414.01 | 414.01 | 414.01 | 389.01 | 20066 | 10578.25 | 414.01 | 35 FL |
| 252.55 | 252.55 | 252.55 | 252.55 | 10411 | 6313.63 | 252.55 | 36 TN |
| 242.47 | 242.47 | 242.47 | 242.47 | 4058 | 2424.68 | 242.47 | 36 IN |
| 416.55 | 416.55 | 416.55 | 416.55 | 28815 | 14995.68 | 416.55 | 40 NY |
| 251.56 | 251.56 | 251.56 | 251.56 | 8276 | 6037.32 | 251.56 | 45 IA |
| 267.88 | 267.88 | 267.88 | 267.88 | 10290.26 | 6429.23 | 267.88 | 40 CT |
| 253.08 | 253.08 | 253.08 | 253.08 | 10745 | 6326.95 | 253.08 | 35 CA |
| 277.23 | 302.23 | 277.23 | 252.23 | 12215 | 8171.26 | 277.23 | 37 TX |
| 282.13 | 282.13 | 282.13 | 282.13 | 15391 | 8181.87 | 282.13 | 35 VT |
| 300.73 | 300.73 | 300.73 | 300.73 | 12261 | 7217.52 | 300.73 | 40 CA |
| 261.75 | 261.75 | 261.75 | 261.75 | 9922 | 6281.92 | 261.75 | 40 FL |
| 297.4 | 322.4 | 272.4 | 272.4 | 12069.89 | 7157.38 | 322.4 | 35 FL |
| 340.75 | 341.75 | 328.75 | 328.75 | 15934 | 8243.77 | 340.75 | 35 RI |
| | | | | 2086863.89 | | | |

| Program Le | First Paym | Second Pay | Third Paym | Fourth Pay | Fifth Paym | Sixth Paym | First Paym | Next Paym | # Drafts Cle |
|---|---|---|---|---|---|---|---|---|---|
| 42 Months | Cancel | Returned / | Cleared | Open | Open | Open | ######## | ######## | 0 |
| 22 Months | Cancel | Cleared | Open | Open | Open | Open | ######## | ######## | 0 |
| 23 Months | Cancel | Cleared | Open | Open | Open | Open | ######## | 2/3/2023 | 0 |
| 39 Months | Cleared | Open | Open | Open | Open | Open | ######## | ######## | 1 |
| 38 Months | Cleared | Open | Open | Open | Open | Open | ######## | 1/9/2023 | 1 |
| 38 Months | Cleared | Open | Open | Open | Open | Open | ######## | 1/6/2023 | 1 |
| 29 Months | Cleared | Open | Open | Open | Open | Open | ######## | ######## | 1 |
| 23 Months | Cleared | Pending | Open | Open | Open | Open | ######## | ######## | 1 |
| 29 Months | Cleared | Open | Open | Open | Open | Open | ######## | ######## | 1 |
| 39 Months | Cleared | Open | Open | Open | Open | Open | ######## | ######## | 1 |
| 47 Months | Cleared | Open | Open | Open | Open | Open | ######## | ######## | 1 |
| 33 Months | Cleared | Open | Open | Open | Open | Open | ######## | ######## | 1 |
| 22 Months | Cleared | Pending | Open | Open | Open | Open | ######## | 2/2/2023 | 1 |
| 39 Months | Cleared | Open | Open | Open | Open | Open | ######## | ######## | 0 |
| 24 Months | Cleared | Open | Open | Open | Open | Open | ######## | ######## | 1 |
| 38 Months | Cleared | Open | Open | Open | Open | Open | ######## | ######## | 0 |
| 17 Months | Cleared | Open | Open | Open | Open | Open | ######## | ######## | 1 |
| 39 Months | Cleared | Open | Open | Open | Open | Open | ######## | ######## | 1 |
| 35 Months | Cleared | Open | Open | Open | Open | Open | ######## | 1/9/2023 | 1 |
| 22 Months | Cleared | Open | Open | Open | Open | Open | ######## | ######## | 0 |
| 33 Months | Cleared | Open | Open | Open | Open | Open | ######## | ######## | 1 |
| 27 Months | Cleared | Open | Open | Open | Open | Open | ######## | ######## | 0 |
| 22 Months | Cleared | Open | Open | Open | Open | Open | ######## | ######## | 0 |
| 29 Months | Cleared | Open | Open | Open | Open | Open | ######## | ######## | 0 |
| 22 Months | Cleared | Open | Open | Open | Open | Open | 1/3/2023 | ######## | 0 |
| 22 Months | Cleared | Open | Open | Open | Open | Open | ######## | ######## | 0 |
| 17 Months | Cleared | Open | Open | Open | Open | Open | ######## | ######## | 0 |
| 23 Months | Cleared | Open | Open | Open | Open | Open | ######## | ######## | 0 |
| 39 Months | Cleared | Open | Open | Open | Open | Open | ######## | ######## | 1 |
| 39 Months | Cleared | Open | Open | Open | Open | Open | ######## | ######## | 0 |
| 28 Months | Cleared | Open | Open | Open | Open | Open | 1/3/2023 | 2/2/2023 | 0 |
| 39 Months | Cleared | Open | Open | Open | Open | Open | ######## | ######## | 1 |
| 23 Months | Cleared | Open | Open | Open | Open | Open | ######## | 1/5/2023 | 1 |
| 33 Months | Cleared | Open | Open | Open | Open | Open | ######## | ######## | 0 |
| 34 Months | Cleared | Open | Open | Open | Open | Open | ######## | ######## | 0 |
| 38 Months | Cleared | Open | Open | Open | Open | Open | ######## | ######## | 0 |
| 33 Months | Cleared | Open | Open | Open | Open | Open | ######## | ######## | 1 |
| 39 Months | Cleared | Open | Open | Open | Open | Open | ######## | ######## | 0 |
| 22 Months | Cleared | Open | Open | Open | Open | Open | 1/3/2023 | 2/1/2023 | 0 |
| 39 Months | Cleared | Open | Open | Open | Open | Open | ######## | ######## | 1 |
| 47 Months | Cleared | Open | Open | Open | Open | Open | ######## | ######## | 0 |
| 22 Months | Cleared | Open | Open | Open | Open | Open | 1/3/2023 | ######## | 0 |
| 29 Months | Cleared | Open | Open | Open | Open | Open | ######## | ######## | 0 |
| 34 Months | Cleared | Open | Open | Open | Open | Open | ######## | ######## | 0 |
| 31 Months | Cleared | Open | Open | Open | Open | Open | 1/3/2023 | 2/3/2023 | 0 |
| 47 Months | Cleared | Open | Open | Open | Open | Open | ######## | ######## | 0 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 34 Months Cleared | Open | Open | Open | Open | Open | ######## | ######## | 1 |
| 35 Months Cleared | Open | Open | Open | Open | Open | 1/3/2023 | ######## | 0 |
| 47 Months Cleared | Open | Open | Open | Open | Open | 1/3/2023 | ######## | 0 |
| 23 Months Cleared | Open | Open | Open | Open | Open | ######## | ######## | 0 |
| 38 Months Cleared | Open | Open | Open | Open | Open | 1/3/2023 | 2/1/2023 | 0 |
| 21 Months Cleared | Open | Open | Open | Open | Open | ######## | 1/5/2023 | 0 |
| 24 Months Cleared | Open | Open | Open | Open | Open | 1/3/2023 | 2/3/2023 | 0 |
| 17 Months Cleared | Open | Open | Open | Open | Open | 1/3/2023 | 2/3/2023 | 0 |
| 35 Months Cleared | Open | Open | Open | Open | Open | ######## | ######## | 0 |
| 35 Months Cleared | Open | Open | Open | Open | Open | ######## | ######## | 0 |
| 34 Months Cleared | Open | Open | Open | Open | Open | 1/3/2023 | ######## | 0 |
| 31 Months Cleared | Open | Open | Open | Open | Open | ######## | ######## | 1 |
| 22 Months Cleared | Open | Open | Open | Open | Open | ######## | ######## | 0 |
| 23 Months Cleared | Open | Open | Open | Open | Open | ######## | ######## | 0 |
| 24 Months Cleared | Open | Open | Open | Open | Open | ######## | ######## | 1 |
| 39 Months Cleared | Open | Open | Open | Open | Open | 1/3/2023 | ######## | 0 |
| 37 Months Cleared | Open | Open | Open | Open | Open | 1/3/2023 | 2/3/2023 | 0 |
| 23 Months Cleared | Open | Open | Open | Open | Open | ######## | ######## | 0 |
| 18 Months Cleared | Open | Open | Open | Open | Open | ######## | ######## | 0 |
| 22 Months Cleared | Open | Open | Open | Open | Open | 1/3/2023 | 2/1/2023 | 0 |
| 28 Months Cleared | Open | Open | Open | Open | Open | 1/3/2023 | 2/2/2023 | 0 |
| 27 Months Cleared | Open | Open | Open | Open | Open | ######## | ######## | 0 |
| 36 Months Cleared | Open | Open | Open | Open | Open | 1/3/2023 | 2/2/2023 | 0 |
| 34 Months Cleared | Open | Open | Open | Open | Open | 1/3/2023 | 2/3/2023 | 0 |
| 23 Months Cleared | Open | Open | Open | Open | Open | 1/3/2023 | 2/3/2023 | 0 |
| 28 Months Cleared | Open | Open | Open | Open | Open | 1/3/2023 | 2/2/2023 | 0 |
| 35 Months Cleared | Open | Open | Open | Open | Open | 1/3/2023 | 2/3/2023 | 0 |
| 27 Months Cleared | Open | Open | Open | Open | Open | 1/3/2023 | 2/1/2023 | 0 |
| 18 Months Cleared | Open | Open | Open | Open | Open | 1/3/2023 | 2/3/2023 | 0 |
| 23 Months Cleared | Open | Open | Open | Open | Open | 1/3/2023 | 2/3/2023 | 0 |
| 33 Months Cleared | Open | Open | Open | Open | Open | 1/3/2023 | 2/3/2023 | 0 |
| 29 Months Cleared | Open | Open | Open | Open | Open | ######## | ######## | 1 |
| 9 Months  Cleared | Open | Open | Open | Open | Open | ######## | ######## | 0 |
| 16 Months Cleared | Open | Open | Open | Open | Open | ######## | ######## | 0 |
| 23 Months Cleared | Open | Open | Open | Open | Open | ######## | ######## | 0 |
| 23 Months Cleared | Open | Open | Open | Open | Open | ######## | ######## | 0 |
| 19 Months Cleared | Open | Open | Open | Open | Open | ######## | ######## | 0 |
| 16 Months Cleared | Open | Open | Open | Open | Open | 1/3/2023 | 2/3/2023 | 0 |
| 17 Months Cleared | Open | Open | Open | Open | Open | 1/3/2023 | 2/3/2023 | 0 |
| 32 Months Cleared | Cleared | Open | Open | Open | Open | ######## | ######## | 0 |
| 18 Months Cleared | Open | Open | Open | Open | Open | 1/3/2023 | 2/3/2023 | 0 |
| 23 Months Cleared | Open | Open | Open | Open | Open | ######## | ######## | 0 |
| 23 Months Cleared | Open | Open | Open | Open | Open | 1/3/2023 | 2/3/2023 | 0 |
| 34 Months Cleared | Open | Open | Open | Open | Open | 1/3/2023 | 2/2/2023 | 0 |
| 29 Months Cleared | Open | Open | Open | Open | Open | ######## | ######## | 0 |
| 23 Months Cleared | Open | Open | Open | Open | Open | ######## | ######## | 0 |
| 39 Months Cleared | Open | Open | Open | Open | Open | ######## | 1/5/2023 | 1 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 23 Months Rejected | Cleared | Open | Open | Open | Open | ######## | ######## | 1 |
| 23 Months Rejected | Cleared | Open | Open | Open | Open | ######## | 1/5/2023 | 1 |
| 24 Months Returned / Cleared | Open | Open | Open | Open | ######## | ######## | 0 |
| 33 Months Returned / Cleared | Pending | Open | Open | Open | ######## | ######## | 1 |
| 22 Months Returned / Returned / Cleared | Open | Open | Open | ######## | 1/4/2023 | 1 |
| 31 Months Returned / Cleared | Open | Open | Open | Open | ######## | 1/4/2023 | 1 |
| 31 Months Returned / Cleared | Open | Open | Open | Open | ######## | ######## | 1 |
| 23 Months Returned / Cleared | Open | Open | Open | Open | ######## | ######## | 0 |
| 21 Months Returned / Returned / Cleared | Open | Open | Open | ######## | 1/9/2023 | 0 |
| 28 Months Returned / Returned / Returned / Returned / Returned / Cleared | ######## | ######## | 0 |
| 34 Months Returned / Cleared | Open | Open | Open | Open | ######## | ######## | 0 |
| 18 Months Returned / Cleared | Open | Open | Open | Open | ######## | ######## | 0 |
| 17 Months Returned / Cleared | Open | Open | Open | Open | ######## | ######## | 0 |
| 34 Months Returned / Cleared | Open | Open | Open | Open | ######## | ######## | 0 |
| 23 Months Returned / Cleared | Open | Open | Open | Open | ######## | ######## | 0 |
| 23 Months Returned / Returned / Returned / Cleared | Open | Open | ######## | ######## | 0 |
| 23 Months Returned / Cleared | Open | Open | Open | Open | ######## | ######## | 0 |
| 8 Months  Returned / Cleared | Open | Open | Open | Open | ######## | 2/3/2023 | 0 |
| 35 Months Returned / Returned / Cleared | Open | Open | Open | ######## | ######## | 0 |
| 23 Months Returned / Cleared | Open | Open | Open | Open | ######## | ######## | 1 |
| 23 Months Returned / Cleared | Open | Open | Open | Open | ######## | ######## | 1 |
| 24 Months Returned / Returned / Cleared | Open | Open | Open | ######## | 2/1/2023 | 0 |
| 28 Months Returned / Returned / Returned / Cleared | Returned / Open | ######## | 2/1/2023 | 0 |
| 28 Months Returned / Cleared | Open | Open | Open | Open | ######## | ######## | 1 |
| 23 Months Returned / Cleared | Open | Open | Open | Open | ######## | ######## | 1 |
| 22 Months Returned / Cleared | Open | Open | Open | Open | ######## | 2/3/2023 | 0 |
| 23 Months Returned / Returned / Cleared | Returned / Open | Open | ######## | 2/2/2023 | 0 |
| 23 Months Returned / Cleared | Open | Open | Open | Open | ######## | ######## | 0 |

| Pay Freq. | Payment M | Paused | Client Status | Payments | Payment S | # NSFs |
|---|---|---|---|---|---|---|
| Monthly | CC | No | Active File | 1 | 1 of 43 | 1 |
| Monthly | CC | No | Active File | 1 | 1 of 24 | 0 |
| Monthly | CC | No | Active File | 1 | 1 of 24 | 0 |
| Monthly | Bank | No | Active File | 1 | 1 of 40 | 0 |
| Monthly | Bank | No | Active File | 1 | 1 of 40 | 0 |
| Monthly | Bank | No | Active File | 1 | 1 of 40 | 0 |
| Monthly | Bank | No | Active File | 1 | 1 of 30 | 0 |
| Monthly | Bank | No | Active File | 1 | 1 of 24 | 0 |
| Monthly | Bank | No | Active File | 1 | 1 of 30 | 0 |
| Monthly | Bank | No | Active File | 1 | 1 of 40 | 0 |
| Monthly | Bank | No | Active File | 1 | 1 of 48 | 0 |
| Monthly | Bank | No | Active File | 1 | 1 of 34 | 0 |
| Monthly | Bank | No | Active File | 1 | 1 of 24 | 0 |
| Monthly | CC | No | Active File | 1 | 1 of 40 | 0 |
| Monthly | Bank | No | Active File | 1 | 1 of 25 | 0 |
| Monthly | CC | No | Active File | 1 | 1 of 40 | 0 |
| Monthly | Bank | No | Active File | 1 | 1 of 18 | 0 |
| Monthly | Bank | No | Active File | 1 | 1 of 40 | 0 |
| Monthly | Bank | No | Active File | 1 | 1 of 36 | 0 |
| Monthly | CC | Yes | Active File | 1 | 1 of 24 | 0 |
| Monthly | Bank | No | Active File | 1 | 1 of 34 | 0 |
| Monthly | CC | No | Active File | 1 | 1 of 28 | 0 |
| Monthly | CC | No | Active File | 1 | 1 of 24 | 0 |
| Monthly | CC | No | Active File | 1 | 1 of 30 | 0 |
| Monthly | CC | No | Active File | 1 | 1 of 24 | 0 |
| Monthly | CC | No | Active File | 1 | 1 of 24 | 0 |
| Monthly | CC | No | Active File | 1 | 1 of 18 | 0 |
| Monthly | CC | No | Active File | 1 | 1 of 24 | 0 |
| Monthly | Bank | No | Active File | 1 | 1 of 40 | 0 |
| Monthly | CC | No | Active File | 1 | 1 of 40 | 0 |
| Monthly | CC | No | Active File | 1 | 1 of 30 | 0 |
| Monthly | Bank | No | Active File | 1 | 1 of 40 | 0 |
| Bi-Weekly | Bank | No | Active File | 1 | 1 of 52 | 0 |
| Monthly | CC | No | Active File | 1 | 1 of 34 | 0 |
| Monthly | CC | No | Active File | 1 | 1 of 35 | 0 |
| Monthly | CC | No | Active File | 1 | 1 of 40 | 0 |
| Monthly | Bank | No | Active File | 1 | 1 of 34 | 0 |
| Monthly | CC | No | Active File | 1 | 1 of 40 | 0 |
| Monthly | CC | No | Active File | 1 | 1 of 24 | 0 |
| Monthly | Bank | No | Active File | 1 | 1 of 40 | 0 |
| Monthly | CC | No | Active File | 1 | 1 of 48 | 0 |
| Monthly | CC | No | Active File | 1 | 1 of 24 | 0 |
| Monthly | CC | No | Active File | 1 | 1 of 30 | 0 |
| Monthly | CC | No | Active File | 1 | 1 of 36 | 0 |
| Monthly | CC | No | Active File | 1 | 1 of 32 | 0 |
| Monthly | CC | No | Active File | 1 | 1 of 48 | 0 |

| | | | | | |
|---|---|---|---|---|---|
| Monthly | Bank | No | Active File | 1 1 of 35 | 0 |
| Monthly | CC | No | Active File | 1 1 of 36 | 0 |
| Semi-Mont | CC | No | Active File | 1 1 of 96 | 0 |
| Monthly | CC | No | Active File | 1 1 of 24 | 0 |
| Monthly | CC | No | Active File | 1 1 of 40 | 0 |
| Bi-Weekly | CC | No | Active File | 1 1 of 48 | 0 |
| Monthly | CC | No | Active File | 1 1 of 25 | 0 |
| Monthly | CC | No | Active File | 1 1 of 18 | 0 |
| Monthly | CC | No | Active File | 1 1 of 36 | 0 |
| Monthly | CC | No | Active File | 1 1 of 36 | 0 |
| Semi-Mont | CC | No | Active File | 1 1 of 70 | 0 |
| Monthly | Bank | No | Active File | 1 1 of 32 | 0 |
| Monthly | CC | No | Active File | 1 1 of 24 | 0 |
| Monthly | CC | No | Active File | 1 1 of 24 | 0 |
| Monthly | Bank | No | Active File | 1 1 of 24 | 0 |
| Monthly | CC | No | Active File | 1 1 of 40 | 0 |
| Monthly | CC | No | Active File | 1 1 of 38 | 0 |
| Monthly | CC | No | Active File | 1 1 of 24 | 0 |
| Monthly | CC | No | Active File | 1 1 of 20 | 0 |
| Monthly | CC | No | Active File | 1 1 of 24 | 0 |
| Monthly | CC | No | Active File | 1 1 of 30 | 0 |
| Monthly | CC | No | Active File | 1 1 of 28 | 0 |
| Monthly | CC | No | Active File | 1 1 of 38 | 0 |
| Monthly | CC | No | Active File | 1 1 of 35 | 0 |
| Monthly | CC | No | Active File | 1 1 of 24 | 0 |
| Monthly | CC | No | Active File | 1 1 of 30 | 0 |
| Monthly | CC | No | Educational Outreach | 1 1 of 36 | 0 |
| Monthly | CC | No | Educational Outreach | 1 1 of 29 | 0 |
| Monthly | CC | No | Educational Outreach | 1 1 of 19 | 0 |
| Monthly | CC | No | Educational Outreach | 1 1 of 24 | 0 |
| Monthly | CC | No | Educational Outreach | 1 1 of 34 | 0 |
| Monthly | Bank | No | Educational Outreach | 1 1 of 30 | 0 |
| Monthly | CC | No | Educational Outreach | 1 1 of 10 | 0 |
| Monthly | CC | No | Educational Outreach | 1 1 of 18 | 0 |
| Monthly | Checks | No | Educational Outreach | 1 1 of 24 | 0 |
| Monthly | CC | No | Educational Outreach | 1 1 of 24 | 0 |
| Monthly | CC | No | Educational Outreach | 1 1 of 20 | 0 |
| Monthly | CC | No | Educational Outreach | 1 1 of 17 | 0 |
| Monthly | CC | No | Educational Outreach | 1 1 of 18 | 0 |
| Monthly | CC | No | Educational Outreach Mis | 2 2 of 34 | 0 |
| Monthly | CC | No | Educational Outreach Mis | 1 1 of 19 | 0 |
| Monthly | CC | No | Educational Outreach Mis | 1 1 of 24 | 0 |
| Monthly | CC | No | Educational Outreach Mis | 1 1 of 24 | 0 |
| Monthly | CC | No | Educational Outreach Mis | 1 1 of 36 | 0 |
| Monthly | CC | No | Educational Outreach Mis | 1 1 of 30 | 0 |
| Monthly | CC | Yes | Hardship Review | 1 1 of 24 | 0 |
| Monthly | Bank | Yes | Unenroll Debt | 1 1 of 40 | 0 |

| Monthly | Bank | No | Active File | 1 | 1 of 25 | 0 |
| Monthly | Bank | No | Active File | 1 | 1 of 25 | 0 |
| Monthly | CC | No | Active File | 1 | 1 of 25 | 1 |
| Monthly | Bank | No | Active File | 1 | 1 of 36 | 1 |
| Monthly | Bank | No | Active File | 1 | 1 of 26 | 2 |
| Monthly | Bank | No | Active File | 1 | 1 of 33 | 1 |
| Monthly | Bank | No | Active File | 1 | 1 of 32 | 1 |
| Monthly | CC | No | Active File | 1 | 1 of 25 | 1 |
| Monthly | CC | No | Active File | 1 | 1 of 24 | 2 |
| Monthly | CC | No | Active File | 1 | 1 of 32 | 5 |
| Monthly | CC | No | Active File | 1 | 1 of 37 | 1 |
| Monthly | CC | No | Active File | 1 | 1 of 20 | 1 |
| Monthly | CC | No | Active File | 1 | 1 of 19 | 1 |
| Monthly | CC | No | Active File | 1 | 1 of 36 | 1 |
| Monthly | CC | No | Active File | 1 | 1 of 25 | 1 |
| Monthly | CC | No | Active File | 1 | 1 of 27 | 3 |
| Monthly | Checks | No | Active File | 1 | 1 of 25 | 1 |
| Monthly | CC | No | Hardship Review | 1 | 1 of 10 | 1 |
| Monthly | CC | No | NSF | 1 | 1 of 36 | 2 |
| Monthly | Bank | No | NSF | 1 | 1 of 24 | 1 |
| Monthly | Bank | No | NSF | 1 | 1 of 24 | 1 |
| Monthly | CC | No | NSF | 1 | 1 of 25 | 2 |
| Monthly | CC | No | NSF | 1 | 1 of 32 | 4 |
| Monthly | Bank | No | NSF | 1 | 1 of 29 | 1 |
| Monthly | Bank | No | NSF | 1 | 1 of 24 | 1 |
| Monthly | CC | No | NSF | 1 | 1 of 24 | 1 |
| Monthly | CC | No | NSF | 1 | 1 of 26 | 3 |
| Monthly | CC | No | Payment Change Required | 1 | 1 of 25 | 1 |

**EXHIBIT "7"**

DocuSign Envelope ID: 18D15981-687F-497G-B0EF-2472AE91D34C

**ACCOUNTS RECEIVABLE PURCHASE AGREEMENT**

This ACCOUNTS RECEIVABLE PURCHASE AGREEMENT (this "**Agreement**") is made as of January 20, 2023 (the "**Agreement Date**"), by and between The Litigation Practice Group PC (collectively the "**Buyer**"), and Debt Relief Group (the "**Seller" or "LPG**", and together with the Buyer, the **"Parties"**), and The Litigation Practice Group PC ("LPG").

**RECITALS**

WHEREAS, in the regular course of business, the Seller originates account receivables from **LPG** in connection with client on-boarding services provided by the Seller to LPG and its affiliates;

WHEREAS, the account receivables represent an obligation of various clients to pay Seller for services that Seller previously provided, but which LPG shall provide from the date of execution of this Agreement;

WHEREAS, the Seller desires to sell, assign, transfer, and deliver to the Buyer, and the Buyer desires to purchase, acquire, and accept from the Seller, certain of these account receivables (the "**Purchased Accounts**").

NOW, THEREFORE, in consideration of the covenants and representations set forth herein, the Parties, intending to be legally bound, agree as follows:

**ARTICLE 1.**
**DEFINITIONS**

Section 1.1      Certain Definitions.  Certain defined terms used in this Agreement are set forth on **Exhibit A**.

**ARTICLE 2.**
**ASSIGNMENT AND TRANSFER AND CONSIDERATION**

Section 2.1      Assignment of the Purchased Accounts to the Buyer.  Upon execution of this Agreement and subject to the terms and conditions set forth herein, the Seller shall sell, assign, transfer, and deliver, and the Buyer shall purchase, acquire, and accept from the Seller, all of the Seller's right, title, and interest in and to the Purchased Accounts set forth on the spreadsheet attached to this Agreement, free and clear of any Liens.  Other than the Purchased Accounts, the Buyer shall not purchase or acquire any other assets of the Seller (collectively, the "**Excluded Assets**").

Section 2.2      No Assumption of Liabilities.  The Buyer shall not assume any Liabilities of the Seller of any kind, whether known or unknown, contingent, matured, or otherwise, whether currently existing or hereinafter created (collectively, the "**Excluded Liabilities**").

Section 2.3      Payment of Purchase Price.  Buyer shall pay $145,524.90 (total purchase price) for the Purchased Accounts (the "**Purchase Price**") by wire transfer of immediately available funds in accordance with the wire transfer instructions set forth in **Schedule 2.3** (the "**Wire Instructions**").  The Purchased Accounts are set forth on the attached spreadsheet.

Section 2.4      Guarantee of LPG.  If any file acquired by buyer shall fail to make a first payment, LPG will replace the file and bear any cost associated with such replacement.  The replacement file shall yield no less than the receivable of the failed file.  In addition, if any any calendar month a total of less than 80% of files make a cleared payment, LPG shall replace any non-performing files in such month so that the performance of the file

DocuSign Envelope ID: 18D45981-697F-49FG-B0EF-2472EF91D34C

package as a whole equals 80%. This guarantee shall continue until the completion of the 24th month following execution of this agreement.

## ARTICLE 3.
## REPRESENTATIONS AND WARRANTIES OF THE SELLER

The Seller represents and warrants to the Buyer, as of the Agreement Date and as of the Closing Date, or, if expressly made as of a specified date, as of such specified date, as follows:

Section 3.1 _Organization; Good Standing_. The Seller is a Limited Liability Company duly organized, validly existing, and in good standing under the Laws of the State of Delaware and is duly qualified to do business and is in good standing as a foreign corporation in each jurisdiction where the ownership or operation of the Business requires such qualification, except where the failure to be so qualified would not reasonably be expected to have, individually or in the aggregate, a material adverse effect on the business, results of operations, financial condition, or assets of the Seller.

Section 3.2 _Power and Authority_. The Seller has all requisite right, power, and authority to execute, deliver, and perform this Agreement and the Transaction Agreements to which it is a party, to consummate the transactions contemplated hereby and thereby, and to perform its obligations hereunder and thereunder. The execution and delivery of this Agreement and the Transaction Agreements by the Seller, and the consummation by the Seller of the transactions contemplated hereby and thereby, have been duly approved by the Seller, and no further action is required on the part of the Seller to authorize this Agreement, any Transaction Agreement to which it is a party, or the transactions contemplated hereby and thereby. This Agreement has been, and each of the Transaction Agreements will be, duly and validly executed and delivered by the Seller and, assuming the due and valid authorization, execution, and delivery of this Agreement by the other Parties, and of each such Transaction Agreement by the other parties thereto, constitutes, or will constitute, a valid and binding obligation of the Seller, enforceable against it in accordance with its terms and conditions, except as enforcement may be limited by applicable bankruptcy, insolvency, reorganization, moratorium, and other Laws affecting enforcement of creditor's rights generally and except insofar as the availability of equitable remedies may be limited by applicable Law.

Section 3.3 _Title to, and Sufficiency of, the Purchased Accounts_. The Seller has and shall convey to the Buyer, at the Closing, good, valid, transferable, and marketable title to, or valid leasehold interests in, all of the Purchased Accounts, free and clear of all Liens.

Section 3.4 _Consents_. The Seller is not required to give any notice to, make any filing with, or obtain any authorization, consent, or approval of, any Governmental Body or Third Party, including a party to any assigned contract, in connection with the execution, delivery, and performance by the Seller of this Agreement or any of the Transaction Agreements to which it is a party or the consummation of the transactions contemplated hereby and thereby.

Section 3.5 _No Conflicts_. The execution and delivery by the Seller of this Agreement and each of the Transaction Agreements, and the consummation of the transactions contemplated hereby and thereby, will not conflict with, result in any violation of, or default under (with or without notice or lapse of time, or both), or give rise to an additional payment obligation, a right of termination, cancellation, modification, or acceleration of any obligation, or loss of any benefit, under: (a) any provision of the Organizational Documents of the Seller; (b) any contract to which the Seller is party, including, without limitation, any assigned contract; or (c) any Law or order applicable to the Seller or any of the Purchased Accounts.

Section 3.6    <u>Compliance with Laws</u>.  The Seller has materially complied, and is now materially complying, with all Laws applicable to the ownership and use of the Purchased Accounts.

Section 3.7    <u>Legal Proceedings</u>.  There is no Action of any nature pending or, to the Knowledge of the Seller, threatened against or by the Seller: (a) relating to or affecting the Purchased Accounts or (b) that challenges or seeks to prevent, enjoin, or otherwise delay the transactions contemplated by this Agreement and the Transaction Agreements.  No event has occurred or circumstance exists that may give rise to, or serve as a basis for, any such Action.

Section 3.8    <u>Condition of Purchased Accounts</u>.  Each Purchased Account shall have received no less than one processed payment.

Section 3.9    <u>Confidentiality</u>.  Seller agrees and acknowledges that all Purchased Accounts, the pricing, and all terms set forth in this Agreement are confidential (together, the "**Confidential Information**").  Seller will at all times keep the  Confidential Information in confidence and trust.  Seller will not, without the prior written consent of an authorized officer of Buyer, (A) copy, use or disclose any Confidential Information, (B) deliver or disclose any Confidential Information to any person or entity outside the Buyer, or (C) use the Confidential Information for Seller's own use or use it to the detriment of Buyer.  Notwithstanding the foregoing, Seller may, without consent, use the Confidential Information and disclose and deliver same to Seller's employees or agents, if applicable, who have a need to know, provided such employees or agents have entered into written agreements approved by Buyer and containing provisions at least as restrictive as these provisions.  Seller agrees that violation of this Section 3.9.  The Parties agree that the disclosure of the Confidential Information in violation of this Agreement may cause the Buyer irreparable harm and that any breach or threatened breach by the Seller entitles Buyer to seek injunctive relief, in addition to any other legal or equitable remedies available to it, in any court of competent jurisdiction.

## ARTICLE 4.
## REPRESENTATIONS AND WARRANTIES OF THE BUYER

The Buyer represents and warrants to the Seller, as of the Agreement Date and as of the Closing Date, or, if expressly made as of a specified date, as of such specified date, as follows:

Section 4.1    <u>Organization; Good Standing</u>.  The Buyer is a limited liability company, duly organized, validly existing, and in good standing under the Laws of the State of Florida.

Section 4.2    <u>Power and Authority</u>.  The Buyer has all requisite right, power, and authority to execute, deliver, and perform this Agreement and the Transaction Agreements to which it is a party, to consummate the transactions contemplated hereby and thereby, and to perform its obligations hereunder and thereunder.  The execution and delivery of this Agreement and the Transaction Agreements by the Buyer, and the consummation by the Buyer of the transactions contemplated hereby and thereby, have been duly approved by the Buyer, and no further action is required on the part of the Buyer to authorize this Agreement, any Transaction Agreement to which it is a party, or the transactions contemplated hereby and thereby.  This Agreement has been, and each of the Transaction Agreements will be, duly and validly executed and delivered by the Buyer and, assuming the due and valid authorization, execution, and delivery of this Agreement by the other Parties, and of each such Transaction Agreement by the other parties thereto, constitutes, or will constitute, a valid and binding obligation of the Buyer, enforceable against it in accordance with its terms and conditions, except as enforcement may be limited by applicable bankruptcy, insolvency, reorganization, moratorium and other Laws affecting enforcement of creditor's rights generally and except insofar as the availability of equitable remedies may be limited by applicable Law.

DocuSign Envelope ID: 18D45981-697F-42FG-B0EF-2472FE91D34C

Section 4.3    No Conflicts. The execution and delivery by the Buyer of this Agreement and each of the Transaction Agreements, and the consummation of the transactions contemplated hereby and thereby, will not conflict with, result in any violation of, or default under (with or without notice or lapse of time, or both), or give rise to an additional payment obligation, a right of termination, cancellation, modification, or acceleration of, any obligation, or loss of any benefit under: (a) any provision of the Buyer's Organizational Documents; (b) any contract to which the Buyer is party, other than the Buyer Representation Agreement; or (c) any Law applicable to the Buyer.

Section 4.4    Sufficient Funds. The Buyer has, and will have, sufficient funds available to make payment of the Purchase Price and consummate the transactions contemplated by this Agreement and the Transaction Agreements.

## ARTICLE 5.
## COVENANTS

Section 5.1    Appropriate Actions.

(a)    General. Each of the Parties shall use commercially reasonable efforts to take all actions necessary to consummate the transactions contemplated by this Agreement as soon as reasonably practicable after the execution of this Agreement, including taking all actions necessary to comply promptly with all applicable Laws that may be imposed on it or any of its Affiliates with respect to the Closing.

## ARTICLE 6.
## CLOSING

Section 6.1    Closing. The closing of the transactions contemplated by this Agreement (the "**Closing**") will take place upon the execution and delivery of this Agreement or at such other time, date, and place as the Parties may agree in writing. The date on which the Closing occurs is hereinafter referred to as the "**Closing Date**." The Parties agree that the Closing may take place by the electronic exchange of executed counterpart documents and the electronic transfer of funds.

Section 6.2    Closing Deliverables of the Seller. At or prior to the Closing, Seller shall deliver to Buyer any of the following if requested by Buyer:  (i) a bill of sale and assignment and assumption agreement substantially in the form attached hereto as **Exhibit B** (the "**Bill of Sale and Assignment and Assumption Agreement**"), duly executed by the Seller, effecting the transfer and assignment to, and assumption by, the Buyer of the Purchased Accounts; and (ii) such other customary instruments of transfer, assumption, filings, or documents, in form and substance reasonably satisfactory to the Buyer, as may be required to give effect to this Agreement.

Section 6.3    Closing Deliverables of the Buyer. At or prior to the Closing, the Seller shall have received the following: (i) the Upfront Cash Payment; and (ii) if requested pursuant to Section 6.2, the Bill of Sale and Assignment and Assumption Agreement, duly executed by the Buyer.

Section 6.4    Indemnification by the Seller. Subject to the limitations set forth in this Article 6, the Seller agrees to indemnify and hold harmless the Buyer, including its shareholders, members, directors, managers, officers, employees, Affiliates, and agents (each, a "**Buyer Indemnified Party**" and, collectively, the "**Buyer Indemnified Parties**"), against all claims, losses, Liabilities, damages, deficiencies, diminutions in value, costs, interest, awards, judgments, penalties, and expenses, including reasonable out-of-pocket attorneys' and consultants' fees and expenses and including any such reasonable expenses incurred in connection with investigating, defending against, or settling any of the foregoing (each, a "**Loss**" and, collectively, the "**Losses**") paid, suffered, incurred, sustained, or accrued by any Buyer Indemnified Party, directly or indirectly, as a result of,

arising out of, or in connection with: (a) any inaccuracy in, or breach of, any of the representations or warranties of the Seller contained in this Agreement, (b) any breach or non-fulfillment of any covenant, agreement, or obligation to be performed by the Seller pursuant to this Agreement, (c) any Excluded Asset or any Excluded Liability.

Section 6.5    <u>Indemnification by the Buyer</u>.  Subject to the limitations set forth in this <u>Article 6</u>, the Buyer agrees to indemnify and hold harmless the Seller, including its Affiliates and agents (each, a "**Seller Indemnified Party**" and, collectively, the "**Seller Indemnified Parties**"), against all Losses paid, suffered, incurred, sustained, or accrued by any Seller Indemnified Party, directly or indirectly, as a result of, arising out of, or in connection with: (a) any inaccuracy in, or breach of, any of the representations or warranties of the Buyer contained in this Agreement; (b) any breach or non-fulfillment of any covenant, agreement, or obligation to be performed by the Buyer pursuant to this Agreement; (c) any event or occurance related to the Purchased Accounts or Buyer occurring after the Closing; or (d) resulting from any omissions or misstatements made by Buyer to investors or potential investors.

Section 6.6    <u>Indemnification Procedures</u>.

(a)    <u>No Restraints</u>.  Promptly following receipt by an Indemnified Party of notice by a Third Party (including any Governmental Body) of any complaint, dispute, or claim or the commencement of any audit, investigation, Action or proceeding with respect to which such Indemnified Party may be entitled to indemnification pursuant hereto (a "**Third-party Claim**"), such Indemnified Party shall provide written notice thereof to the Indemnifying Party, <u>provided</u>, <u>however</u>, that the failure to so notify the Indemnifying Party shall relieve the Indemnifying Party from Liability hereunder with respect to such Third-party Claim only if, and only to the extent that, such failure to so notify the Indemnifying Party results in the forfeiture by the Indemnifying Party of rights and defenses otherwise available to the Indemnifying Party with respect to such Third-party Claim.  The Indemnifying Party shall have the right, upon written notice delivered to the Indemnified Party within twenty days thereafter assuming full responsibility for any Losses resulting from such Third-party Claim, to assume the defense of such Third-party Claim, including the employment of counsel reasonably satisfactory to the Indemnified Party and the payment of the fees and disbursements of such counsel; <u>provided</u>, <u>however</u>, if the Indemnifying Party declines or fails to assume the defense of such Third-party Claim on the terms provided above or to employ counsel reasonably satisfactory to the Indemnified Party, in either case within such twenty day period, then any Losses shall include the reasonable fees and disbursements of counsel for the Indemnified Party as incurred.  In any Third-party Claim for which indemnification is being sought hereunder the Indemnified Party or the Indemnifying Party, whichever is not assuming the defense of such Third-party Claim, shall have the right to participate in such matter and to retain its own counsel at such Party's own expense.  The Indemnifying Party or the Indemnified Party (as the case may be) shall at all times use reasonable efforts to keep the Indemnifying Party or Indemnified Party (as the case may be) reasonably apprised of the status of the defense of any matter, the defense of which it is maintaining, and to cooperate in good faith with each other with respect to the defense of any such matter.

(b)    No Indemnified Party may settle or compromise any Third-party Claim or consent to the entry of any judgment with respect to which indemnification is being sought hereunder without the prior written consent of the Indemnifying Party (which may not be unreasonably withheld or delayed), unless (i) the Indemnifying Party fails to assume and maintain the defense of such Third-party Claim or (ii) such settlement, compromise, or consent includes an unconditional release of the Indemnifying Party and its officers, directors, employees and Affiliates from all Liability arising out of, or related to, such Third-party Claim.  An Indemnifying Party may not, without the prior written consent of the Indemnified Party, settle or compromise any Third-party Claim or consent to the entry of any judgment with respect to which indemnification is being sought hereunder unless such settlement, compromise, or consent (A) includes an unconditional release of the Indemnified Party and its officers, directors, employees, and Affiliates from all Liability arising out of, or related to, such Third-party

DocuSign Envelope ID: 18D15981-697F-49FG-B0EF-2472AE91D34C

Claim, (B) does not contain any admission or statement suggesting any wrongdoing or Liability on behalf of the Indemnified Party, and (C) does not contain any equitable order, judgment, or term that in any manner affects, restrains, or interferes with the business of the Indemnified Party or any of the Indemnified Party's Affiliates.

(c)     If an Indemnified Party claims a right to payment pursuant hereto with respect to any matter not involving a Third-party Claim (a "**Direct Claim**"), such Indemnified Party shall send written notice of such claim to the appropriate Indemnifying Party (each, a "**Notice of Claim**").  Such Notice of Claim shall specify the basis for such Direct Claim.  The failure by any Indemnified Party so to notify the Indemnifying Party shall not relieve the Indemnifying Party from any Liability that it may have to such Indemnified Party with respect to any Direct Claim made pursuant to this Section 6.6(c).  If the Indemnifying Party does not notify the Indemnified Party within thirty days following its receipt of such Notice of Claim that the Indemnifying Party disputes its Liability to the Indemnified Party under this Article 6 or the amount thereof, the Direct Claim specified by the Indemnified Party in such Notice of Claim shall be conclusively deemed a Liability of the Indemnifying Party under this Article 6, and the Indemnifying Party shall pay the amount of such Liability to the Indemnified Party on demand or, in the case of any Notice of Claim in which the amount of the Direct Claim (or any portion of the Direct Claim) is estimated, on such later date when the amount of such Direct Claim (or such portion of such Direct Claim) becomes finally determined.  In the event that the Indemnifying Party has timely disputed its Liability with respect to such Direct Claim as provided above, as promptly as possible, such Indemnified Party and the appropriate Indemnifying Party shall establish the merits and amount of such Direct Claim (by mutual agreement, litigation, arbitration or otherwise) and, within five business days following the final determination of the merits and amount of such Direct Claim, the Indemnifying Party shall pay to the Indemnified Party an amount equal to such Direct Claim as determined hereunder.

## ARTICLE 7.
## MISCELLANEOUS

Section 7.1     Entire Agreement; Amendment.  This Agreement and the Transaction Agreements (including the exhibits hereto and thereto and the documents referred to therein) constitute the entire agreement among the Parties with respect to the subject matter hereof and supersede any prior understandings, agreements, or representations by or among the Parties, written or oral, to the extent they related in any way to the subject matter hereof.  This Agreement may be amended with the written consent of each of the Parties or any successor thereto by execution of an instrument in writing.

Section 7.2     Waivers.  The rights and remedies of the Parties to this Agreement are cumulative and not alternative.  To the maximum extent permitted by applicable Law: (a) no claim or right arising out of this Agreement or the documents referred to in this Agreement can be discharged by one Party, in whole or in part, by a waiver or renunciation of the claim or right unless in writing signed by the other Parties; (b) no waiver that may be given by a Party will be applicable except in the specific instance for what it is given; and (c) no notice to, or demand on, one Party will be deemed to be a waiver of any obligation of such Party or of the right of the Party giving such notice or demand to take further action without notice or demand as provided in this Agreement or the Transaction Agreements.

Section 7.3     Notices.  All notices and other communications required or permitted hereunder shall be made to the address of a Party listed on the signature page to this Agreement and shall be (a) in writing, (b) effective when given, and (c), in any event, deemed to be given upon receipt or, if earlier: (i) upon delivery, if delivered by hand; (ii) two business days after deposit with FedEx Express or similar recognized international overnight courier service, freight prepaid; or (iii) one business day after facsimile or electronic mail transmission. A Party may change the address to which notices, requests, demands, claims, and other communications hereunder are to be delivered by giving the other Parties advance written notice pursuant to the provisions above.

DocuSign Envelope ID: 18D15981-697F-49FG-B0EF-2472AF91D34C

Section 7.4    Successors and Assigns.  This Agreement shall be binding upon, and inure to the benefit of, the Parties named herein and their respective successors and permitted assigns.  Neither this Agreement nor any rights or obligations of a Party hereunder shall be assigned by a Party (unless to an Affiliate of such Party) without the prior written consent of the other Parties.  This Agreement will be binding upon any permitted assignee of any Party.  No assignment shall have the effect of relieving any Party to this Agreement of any of its obligations hereunder.

Section 7.5    Public Disclosure.  Except as may be required by Law, the Seller shall not issue any statement or communication to any Third Party (other than its respective agents) regarding the subject matter of this Agreement or the transactions contemplated hereby, including, if applicable, the termination of this Agreement and the reasons therefor, without the prior written consent of the Buyer.

Section 7.6    Expenses and Fees.  Whether or not the Closing occurs, all fees and expenses incurred in connection with this transactions contemplated by this Agreement, including all legal, accounting, financial advisory, consulting and all other fees and expenses of Third Parties incurred by a Party in connection with the negotiation and effectuation of the terms and conditions of this Agreement and the transactions contemplated hereby, shall be the obligation of the respective Party incurring such fees and expenses.

Section 7.7    Specific Performance.  The Parties agree that irreparable damage would occur if any provision of this Agreement was not performed in accordance with the terms hereof and that the Parties shall be entitled to specific performance of the terms hereof, in addition to any other remedy to which they are entitled hereunder, at Law or in equity.

Section 7.8    Counterparts.  This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement.  A signed copy of this Agreement delivered by facsimile, electronic mail, or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

Section 7.9    Governing Law.  This Agreement shall, in all respects, be construed in accordance with, and governed by, the Laws of the State of California without regard to conflict of Laws principles.

Section 7.10    Severability.  Any term or provision of this Agreement that is invalid or unenforceable in any situation in any jurisdiction shall not affect the validity or enforceability of the remaining terms and provisions hereof or the validity or enforceability of the offending term or provision in any other situation or in any other jurisdiction.

Section 7.11    Construction.  The Parties have participated jointly in the negotiation and drafting of this Agreement.  In the event an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the Parties and no presumption or burden of proof shall arise favoring or disfavoring any Party by virtue of the authorship of any of the provisions of this Agreement.

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the Agreement Date.

**BUYER:**

**The Litigation Practice Group P.C.**

By: _Daniel S March_
_____
Name: Daniel S March
Title: Managing Shareholder

**SELLER:**

**Debt Relief Group**

By: _Billy Burns_
_____
Name: William Burns
Title: CEO

### APPROVAL OF ASSIGNMENT AND GUARANTEE

The assignment of the Purchased Accounts set forth in this Agreement as well as the guarantee included therein is hereby approved, and with respect to the Purchased Accounts, the Buyer shall have all rights of Buyer as set forth in this agreement.

**The Litigation Practice Group P.C.**

By: _Daniel S March_
_____
Name: Daniel S. March
Title: Managing Shareholder

*[Signature Page to Accounts Receivable Purchase Agreement]*

DocuSign Envelope ID: 18D15981-697F-497G-B0EF-2472AF91D34C

## EXHIBIT A

## DEFINITIONS

As used in this Agreement, the following terms have the following meanings (terms defined in the singular to have a correlative meaning when used in the plural and vice versa).

(a)   "**Action**" shall mean any civil, criminal, or administrative action, claim, suit, demand, charge, citation, reexamination, opposition, interference, decree, injunction, mediation, hearing, notice of violation, demand letter, litigation, proceeding, labor dispute, arbitral action, governmental or other audit, inquiry, criminal prosecution, investigation, unfair labor practice charge, or complaint.

(b)   "**Agreement**" shall have the meaning set forth in the preamble to this Agreement.

(c)   "**Agreement Date**" shall have the meaning set forth in the preamble to this Agreement.

(d)   "**Affiliate**" shall mean (i) with respect to any non-natural Person, any Person that, directly or indirectly, through one or more intermediaries, controls, is controlled by, or is under common control with, such Person and (ii), with respect to any individual, (A) family members of such individual, by blood, adoption, or marriage, (B) such individual's spouse or ex-spouse and (C) any Person that is directly or indirectly under the control of any of the foregoing individuals.  For purposes of this definition, "control" (including with correlative meanings, the terms "controlling," "controlled by," and under "common control with") means the possession, directly or indirectly, of the power to direct the management and policies of a Person, whether through the ownership of voting securities, by contract, or otherwise.

(e)   "**Bill of Sale and Assignment and Assumption Agreement**" shall have the meaning set forth in Section 6.2.

(f)   "**Business**" shall mean the business of the Seller as conducted on the Agreement Date.

(g)   "**Buyer**" shall have the meaning set forth in the preamble to this Agreement.

(h)   "**Buyer Indemnified Parties**" shall have the meaning set forth in Section 6.4.

(i)   "**Closing**" shall have the meaning set forth in Section 6.1.

(j)   "**Closing Date**" shall have the meaning set forth in Section 6.1.

(k)   "**Direct Claim**" shall have the meaning set forth in Section 6.6(c).

(l)   "**Excluded Assets**" shall have the meaning set forth in Section 2.1.

(m)   "**Excluded Liabilities**" shall have the meaning set forth in Section 2.2.

(n)   "**Governmental Body**" shall mean any: (i) nation, province, state, county, city, town, village, district, or other jurisdiction of any nature; (ii) federal, provincial, state, local, municipal, foreign, or other government; (iii) governmental or quasi-governmental authority of any nature (including any governmental agency, branch, department, official, or entity and any court or other tribunal); (iv) multi-national organization or body; or (v) body exercising, or entitled to exercise, any administrative, executive, judicial, legislative, police, regulatory, or taxing authority or power of any nature.

(o)　　"**Indebtedness**" means, without duplication and with respect to the Seller, all: (i) indebtedness for borrowed money; (ii) obligations for the deferred purchase price of property or services, (iii) long or short-term obligations evidenced by notes, bonds, debentures or other similar instruments; (iv) obligations under any interest rate, currency swap, or other hedging agreement or arrangement; (v) capital lease obligations; (vi) reimbursement obligations under any letter of credit, banker's acceptance or similar credit transactions; (vii) guarantees made by the Seller on behalf of any third party in respect of obligations of the kind referred to in the foregoing clauses (i) through (vi); and (viii) any unpaid interest, prepayment penalties, premiums, costs and fees that would arise or become due as a result of the prepayment of any of the obligations referred to in the foregoing clauses (i) through (vii).

(p)　　"**Indemnified Party**" shall mean a Buyer Indemnified Party or a Seller Indemnified Party, as the case may be, making a claim for indemnification under Article 6.

(q)　　"**Indemnifying Party**" shall mean a Party against whom a claim for indemnification is asserted under Article 6.

(r)　　"**Knowledge**" shall mean, with respect to the Seller, the actual or constructive knowledge of all facts relevant to this transaction and the transacting parties, after due inquiry.

(s)　　"**Law**" shall mean any law, statute, ordinance, regulation, rule, code, notice requirement, court decision, or agency guideline, of any foreign, federal, state, or local Governmental Body.

(t)　　"**Liabilities**" shall mean any direct or indirect liability, Indebtedness, obligation, commitment, expense, claim, deficiency, guaranty, or endorsement of, or by, any Person of any type, known or unknown, and whether accrued, absolute, contingent, matured, unmatured, determined or undeterminable, on- or off-balance sheet, or other.

(u)　　"**Lien**" shall mean any mortgage, pledge, lien, charge, claim, security interest, adverse claims of ownership or use, restrictions on transfer, defect of title, or other encumbrance of any sort.

(v)　　"**Losses**" shall have the meaning set forth in Section 6.4.

(w)　　"**Notice of Claim**" shall have the meaning set forth in Section 6.6(c).

(x)　　"**Organizational Documents**" shall mean, with respect to a Person, the charter, bylaws, limited liability company agreement, and other organizational documents of such Person, in each case, as amended.

(y)　　"**Party**" or "**Parties**" shall have the meaning set forth in the preamble to this Agreement.

(z)　　"**Permitted Liens**" shall mean (i) Liens for Taxes not yet delinquent or being contested in good faith by appropriate proceedings, (ii) statutory Liens (including materialmen's, warehousemen's, mechanic's, repairmen's, landlord's, and other similar Liens) arising in the ordinary course of business securing payments not yet delinquent or being contested in good faith by appropriate proceedings, and (iii) restrictive covenants, easements, and defects, imperfections or irregularities of title, if any, of a nature that do not materially and adversely affect the assets or properties subject thereto.

(aa)　　"**Person**" shall mean any individual, corporation (including any non-profit corporation), general or limited partnership, limited liability company, joint venture, estate, trust, association, organization, labor union, Governmental Body, or other entity.

DocuSign Envelope ID: 18D15981-697F-497G-B0EF-2472AE91D34C

(bb)    "**Purchase Price**" shall have the meaning set forth in <u>Section 2.3</u>.

(cc)    "**Purchased Accounts**" shall have the meaning set forth in the Recitals.

(dd)    "**Seller**" shall have the meaning set forth in the preamble to this Agreement.

(ee)    "**Seller Indemnified Parties**" shall have the meaning set forth in <u>Section 6.5</u>.

(ff)    "**Tax**" or "**Taxes**" shall mean any U.S. federal, state, local or non-U.S. income, gross receipts, license, payroll, employment, excise, severance, stamp, occupation, premium, windfall profits, environmental, customs duties, capital stock, escheat, franchise, profits, withholding, social security, unemployment, disability, real property, personal property, sales, use, transfer, registration, value added, alternative or add-on minimum, estimated, or other tax of any kind whatsoever, including any interest, penalty, or addition thereto, whether disputed or not.

(gg)    "**Tax Returns**" means any return, declaration, report, claim for refund, or information return or statement relating to Taxes, including any schedule or attachment thereto, and including any amendment thereof.

(hh)    "**Third Party**" or "**Third Parties**" shall mean any Person other than the Parties or their respective Affiliates.

(ii)    "**Third-party Claim**" shall have the meaning set forth in <u>Section 6.6(a)</u>.

(jj)    "**Transaction Agreements**" shall mean the Bill of Sale and Assignment and Assumption Agreement, and each other agreement, instrument, and/or certificate contemplated by this Agreement or such other agreements to be executed in connection with the transactions contemplated hereby or thereby.

(kk)    "**Upfront Cash Payment**" shall have the meaning set forth in <u>Section 2.3</u>.

(ll)    "**Wire Instructions**" shall have the meaning set forth in <u>Section 2.3</u>.

**EXHIBIT B**

**FORM OF BILL OF SALE AND ASSIGNMENT AND ASSUMPTION AGREEMENT**

THIS BILL OF SALE AND ASSIGNMENT AND ASSUMPTION AGREEMENT (this **"Agreement"**), is made by and between **Buyer**, and **Seller**.  Each of the Seller and the Buyer are sometimes referred to herein, individually, as a **"Party"** and, collectively, as the **"Parties."**

WHEREAS, the Buyer and the Seller have entered into that certain Accounts Receivable Purchase Agreement, of even date herewith (the "**Purchase Agreement**"), pursuant to which the Seller has agreed to sell, assign, transfer, and deliver to the Buyer, and the Buyer has agreed to purchase, acquire, and accept from the Seller, all right, title, and interest of the Seller in and to the Purchased Accounts, free and clear of any Liens.

NOW, THEREFORE, in consideration of the covenants and representations set forth herein, and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the Parties, intending to be legally bound, agree as follows:

1.    <u>Defined Terms</u>.  Capitalized terms used but not otherwise defined in this Agreement shall have the meanings assigned to such terms in the Purchase Agreement.

2.    <u>Sale of Purchased Accounts; Assignment</u>.  The Seller hereby sells, assigns, transfers, and delivers to the Buyer, and the Buyer hereby purchases, acquires, and accepts from the Seller, all right, title, and interest of the Seller in and to the Purchased Accounts, free and clear of any Liens.

3.    <u>Further Assurances</u>.  Each of the Parties agrees, from time to time, at the request of the any other Party, to execute and deliver such other instruments of conveyance, power of attorney, sale, transfer, or assignment and take such other actions as such other Party may reasonably request in order to more effectively consummate the transactions contemplated by this Agreement.

4.    <u>Terms of the Purchase Agreement</u>.  This Agreement is intended to evidence the consummation of the transactions contemplated by the Purchase Agreement and is subject to the terms and conditions set forth in the Purchase Agreement.    The terms of the Purchase Agreement, including, but not limited to, the representations, warranties, covenants, agreements, and indemnities relating to the Purchased Accounts are incorporated herein by this reference.  The Parties acknowledge and agree that the representations, warranties, covenants, agreements, and indemnities contained in the Purchase Agreement shall not be superseded hereby but shall remain in full force and effect to the full extent provided therein.  In the event of any conflict or inconsistency between the terms of the Purchase Agreement and the terms hereof, the terms of the Purchase Agreement shall govern.

5.    <u>Counterparts</u>.  This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement.  A signed copy of this Agreement delivered by facsimile, electronic mail, or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

*[Remainder of page intentionally left blank.]*

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date first above written.

**BUYER: The Litigation Practice Group P.C.**

By: _Daniel S March_ _____
       9D494DB1993341E...
Name: Daniel S. March
Title: Managing Shareholder

**SELLER:**

**Debt Relief Group**

By: _Billy Burns_ _____
       3ECDDBC6C4774C0...
Name: William Burns
Title: CEO

Schedule 2.3
Wire Instructions

<u>**$145,524.90**</u>

**Account Holder Name: Debt Relief Group**

**Address: 1800 Old Okeechobee Rd Suite 200, West Palm Beach, FL 33409**

**Routing Number:** ██████████

**Account Number** ████████████

| Full Name | Customer I | Company | Assigned T | Enrolled D | Monthly P | Second Pay | Third Payn | Fourth Pay | Fifth Paym |
|---|---|---|---|---|---|---|---|---|---|
| | BATLLC-65 | Debt Relie | | ####### | 253 | 253 | 253 | 253 | 253 |
| | BATLLC-66 | Debt Relie | | ####### | 261.08 | 261.08 | 261.08 | 261.08 | 261.08 |
| | BATLLC-66 | Debt Relie | | ####### | 273.8 | 253.4 | 253.4 | 253.4 | 253.4 |
| | BATLLC-66 | Debt Relie | | ####### | 254.31 | 254.31 | 254.31 | 254.31 | 254.31 |
| | BATLLC-66 | Debt Relie | | ####### | 249.6 | 249.6 | 249.6 | 249.6 | 249.6 |
| | BATLLC-66 | Debt Relie | | ####### | 252.42 | 252.42 | 252.42 | 252.42 | 252.42 |
| | BATLLC-66 | Debt Relie | | ####### | 262 | 262 | 262 | 262 | 262 |
| | BATLLC-66 | Debt Relie | | ####### | 396.68 | 327.96 | 327.96 | 327.96 | 327.96 |
| | BATLLC-66 | Debt Relie | | ####### | 330.86 | 330.86 | 330.86 | 330.86 | 330.86 |
| | BATLLC-67 | Debt Relie | | ####### | 251.9 | 251.9 | 251.9 | 251.9 | 251.9 |
| | BATLLC-67 | Debt Relie | | ####### | 422.07 | 422.07 | 422.07 | 422.07 | 422.07 |
| | BATLLC-67 | Debt Relie | | ####### | 311.57 | 311.57 | 311.57 | 311.57 | 311.57 |
| | BATLLC-67 | Debt Relie | | ####### | 250.92 | 250.92 | 250.92 | 250.92 | 250.92 |
| | BATLLC-67 | Debt Relie | | ####### | 279.82 | 279.82 | 279.82 | 279.82 | 279.82 |
| | BATLLC-67 | Debt Relie | | ####### | 350.02 | 350.02 | 350.02 | 350.02 | 350.02 |
| | BATLLC-67 | Debt Relie | | ####### | 380.85 | 380.85 | 380.85 | 380.85 | 380.85 |
| | BATLLC-67 | Debt Relie | | ####### | 285.49 | 285.49 | 285.49 | 285.49 | 285.49 |
| | BATLLC-67 | Debt Relie | | ####### | 309.95 | 309.95 | 309.95 | 309.95 | 309.95 |
| | BATLLC-67 | Debt Relie | | ####### | 253 | 253 | 253 | 253 | 253 |
| | BATLLC-67 | Debt Relie | | ####### | 254.14 | 254.14 | 254.14 | 254.14 | 254.14 |
| | BATLLC-67 | Debt Relie | | ####### | 446.01 | 446.01 | 446.01 | 446.01 | 446.01 |
| | BATLLC-67 | Debt Relie | | ####### | 251.47 | 251.47 | 251.47 | 251.47 | 251.47 |
| | BATLLC-67 | Debt Relie | | ####### | 250.45 | 250.45 | 250.45 | 250.45 | 250.45 |
| | BATLLC-67 | Debt Relie | | ####### | 291.88 | 291.88 | 291.88 | 291.88 | 291.88 |
| | BATLLC-67 | Debt Relie | | ####### | 327.34 | 327.34 | 327.34 | 327.34 | 327.34 |
| | BATLLC-67 | Debt Relie | | ####### | 253.49 | 253.49 | 253.49 | 253.49 | 253.49 |
| | BATLLC-67 | Debt Relie | | ####### | 405.67 | 405.67 | 405.67 | 405.67 | 405.67 |
| | BATLLC-67 | Debt Relie | | ####### | 288.95 | 288.95 | 288.95 | 288.95 | 288.95 |
| | BATLLC-67 | Debt Relie | | ####### | 252.56 | 252.56 | 252.56 | 252.56 | 252.56 |
| | BATLLC-67 | Debt Relie | | ####### | 279.85 | 279.85 | 279.85 | 279.85 | 279.85 |
| | BATLLC-67 | Debt Relie | | ####### | 251.8 | 251.8 | 251.8 | 251.8 | 251.8 |
| | BATLLC-67 | Debt Relie | | ####### | 345.93 | 345.93 | 345.93 | 345.93 | 345.93 |
| | BATLLC-67 | Debt Relie | | ####### | 251.88 | 251.88 | 251.88 | 251.88 | 251.88 |
| | BATLLC-67 | Debt Relie | | ####### | 253.14 | 253.14 | 253.14 | 253.14 | 253.14 |
| | BATLLC-67 | Debt Relie | | ####### | 353.74 | 353.74 | 353.74 | 353.74 | 353.74 |
| | BATLLC-67 | Debt Relie | | ####### | 317.32 | 317.32 | 317.32 | 317.32 | 317.32 |
| | BATLLC-67 | Debt Relie | | ####### | 376.37 | 376.37 | 376.37 | 376.37 | 376.37 |
| | BATLLC-67 | Debt Relie | | ####### | 286.58 | 286.58 | 286.58 | 286.58 | 286.58 |
| | BATLLC-67 | Debt Relie | | ####### | 310.78 | 310.78 | 310.78 | 310.78 | 310.78 |
| | BATLLC-67 | Debt Relie | | ####### | 250.84 | 250.84 | 250.84 | 250.84 | 250.84 |
| | BATLLC-67 | Debt Relie | | ####### | 377.37 | 377.37 | 377.37 | 377.37 | 377.37 |
| | BATLLC-67 | Debt Relie | | ####### | 251.96 | 251.96 | 251.96 | 251.96 | 251.96 |
| | BATLLC-67 | Debt Relie | | ####### | 292.89 | 292.89 | 292.89 | 292.89 | 292.89 |
| | BATLLC-67 | Debt Relie | | ####### | 252.41 | 252.41 | 252.41 | 252.41 | 252.41 |
| | BATLLC-67 | Debt Relie | | ####### | 253.63 | 253.63 | 253.63 | 253.63 | 253.63 |
| | BATLLC-67 | Debt Relie | | ####### | 289.63 | 289.63 | 289.63 | 289.63 | 289.63 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| BATLLC-67 | Debt Relief | ######## | 280.04 | 280.04 | 280.04 | 280.04 | 280.04 |
| BATLLC-67 | Debt Relief | ######## | 222.58 | 222.58 | 222.58 | 222.58 | 222.58 |
| BATLLC-67 | Debt Relief | ######## | 346.42 | 346.42 | 346.42 | 346.42 | 346.42 |
| BATLLC-67 | Debt Relief | ######## | 342.52 | 342.52 | 342.52 | 342.52 | 342.52 |
| BATLLC-67 | Debt Relief | ######## | 729.72 | 729.72 | 729.72 | 729.72 | 729.72 |
| BATLLC-67 | Debt Relief | ######## | 296.57 | 296.57 | 296.57 | 296.57 | 296.57 |
| BATLLC-68 | Debt Relief | ######## | 250.49 | 250.49 | 250.49 | 250.49 | 250.49 |
| BATLLC-68 | Debt Relief | ######## | 251.04 | 251.04 | 251.04 | 251.04 | 251.04 |
| BATLLC-68 | Debt Relief | ######## | 299.85 | 299.85 | 299.85 | 299.85 | 299.85 |
| BATLLC-68 | Debt Relief | ######## | 254.5 | 254.5 | 254.5 | 254.5 | 254.5 |
| BATLLC-68 | Debt Relief | ######## | 249.9 | 249.9 | 249.9 | 249.9 | 249.9 |
| BATLLC-68 | Debt Relief | ######## | 1189.87 | 1189.87 | 1189.87 | 1189.87 | 1189.87 |
| BATLLC-68 | Debt Relief | ######## | 274.69 | 274.69 | 274.69 | 274.69 | 274.69 |
| BATLLC-68 | Debt Relief | ######## | 250.14 | 250.14 | 250.14 | 250.14 | 250.14 |
| BATLLC-68 | Debt Relief | ######## | 258.91 | 258.91 | 258.91 | 258.91 | 258.91 |
| BATLLC-68 | Debt Relief | ######## | 494.53 | 494.53 | 494.53 | 494.53 | 494.53 |
| BATLLC-68 | Debt Relief | ######## | 294.28 | 294.28 | 294.28 | 294.28 | 294.28 |
| BATLLC-68 | Debt Relief | ######## | 258.12 | 258.12 | 258.12 | 258.12 | 258.12 |
| BATLLC-68 | Debt Relief | ######## | 378.77 | 378.77 | 378.77 | 378.77 | 378.77 |
| BATLLC-68 | Debt Relief | 1/3/2023 | 281.88 | 281.88 | 281.88 | 281.88 | 281.88 |
| BATLLC-68 | Debt Relief | 1/3/2023 | 256.17 | 256.17 | 256.17 | 256.17 | 256.17 |
| BATLLC-68 | Debt Relief | 1/4/2023 | 250.45 | 250.45 | 250.45 | 250.45 | 250.45 |
| BATLLC-68 | Debt Relief | 1/4/2023 | 303.32 | 303.32 | 303.32 | 303.32 | 303.32 |
| BATLLC-68 | Debt Relief | 1/3/2023 | 251.25 | 251.25 | 251.25 | 251.25 | 251.25 |
| BATLLC-68 | Debt Relief | 1/3/2023 | 243.48 | 243.48 | 243.48 | 243.48 | 243.48 |
| BATLLC-68 | Debt Relief | 1/4/2023 | 345.95 | 345.95 | 345.95 | 345.95 | 345.95 |
| BATLLC-68 | Debt Relief | 1/4/2023 | 250.15 | 246.43 | 246.43 | 246.43 | 246.43 |
| BATLLC-68 | Debt Relief | 1/5/2023 | 126.45 | 126.45 | 126.45 | 126.45 | 126.45 |
| BATLLC-68 | Debt Relief | 1/5/2023 | 253.08 | 253.08 | 253.08 | 253.08 | 253.08 |
| BATLLC-68 | Debt Relief | 1/6/2023 | 389.18 | 389.18 | 389.18 | 389.18 | 389.18 |
| BATLLC-68 | Debt Relief | 1/6/2023 | 338.05 | 338.05 | 338.05 | 338.05 | 338.05 |
| BATLLC-68 | Debt Relief | 1/6/2023 | 252.24 | 252.24 | 252.24 | 252.24 | 252.24 |
| BATLLC-67 | Debt Relief | ######## | 270.6 | 270.6 | 270.6 | 270.6 | 270.6 |
| BATLLC-68 | Debt Relief | 1/3/2023 | 253.36 | 253.36 | 253.36 | 253.36 | 253.36 |
| BATLLC-68 | Debt Relief | 1/3/2023 | 294.77 | 294.77 | 294.77 | 294.77 | 294.77 |
| BATLLC-68 | Debt Relief | 1/5/2023 | 308.95 | 308.95 | 308.95 | 308.95 | 308.95 |
| BATLLC-68 | Debt Relief | 1/4/2023 | 258.97 | 258.97 | 258.97 | 258.97 | 258.97 |
| BATLLC-68 | Debt Relief | ######## | 369.44 | 369.44 | 369.44 | 369.44 | 369.44 |
| BATLLC-68 | Debt Relief | 1/4/2023 | 278.09 | 278.09 | 278.09 | 278.09 | 278.09 |
| BATLLC-68 | Debt Relief | ######## | 125.34 | 125.34 | 125.34 | 125.34 | 125.34 |
| BATLLC-67 | Debt Relief | ######## | 253.32 | 253.32 | 253.32 | 253.32 | 253.32 |
| BATLLC-67 | Debt Relief | ######## | 250.78 | 250.78 | 250.78 | 250.78 | 250.78 |
| BATLLC-67 | Debt Relief | ######## | 125.83 | 125.83 | 125.83 | 125.83 | 125.83 |
| BATLLC-67 | Debt Relief | ######## | 267.25 | 267.25 | 267.25 | 267.25 | 267.25 |
| BATLLC-67 | Debt Relief | ######## | 444.28 | 444.28 | 444.28 | 444.28 | 444.28 |
| BATLLC-67 | Debt Relief | ######## | 284.99 | 284.99 | 284.99 | 284.99 | 284.99 |
| BATLLC-68 | Debt Relief | ######## | 282.79 | 282.79 | 282.79 | 282.79 | 282.79 |

DocuSign Envelope ID: 18D15981-697F-42FG-B0EF-2472AF91D34C

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| BATLLC-68 | Debt Relief | 1/3/2023 | 252.07 | 252.07 | 252.07 | 252.07 | 252.07 |
| BATLLC-68 | Debt Relief | 1/3/2023 | 394.03 | 394.03 | 394.03 | 394.03 | 394.03 |
| BATLLC-68 | Debt Relief | 1/3/2023 | 299.61 | 299.61 | 299.61 | 299.61 | 299.61 |
| BATLLC-68 | Debt Relief | 1/3/2023 | 251.55 | 251.55 | 251.55 | 251.55 | 251.55 |
| BATLLC-68 | Debt Relief | 1/9/2023 | 254.03 | 254.03 | 254.03 | 254.03 | 254.03 |
| BATLLC-67 | Debt Relief | ######## | 258.28 | 258.28 | 258.28 | 258.28 | 258.28 |
| BATLLC-66 | Debt Relief | ######## | 298.75 | 298.75 | 298.75 | 298.75 | 298.75 |
| BATLLC-68 | Debt Relief | 1/5/2023 | 256.48 | 256.48 | 256.48 | 256.48 | 256.48 |
| BATLLC-65 | Debt Relief | ######## | 284.36 | 284.36 | 284.36 | 284.36 | 284.36 |
| BATLLC-66 | Debt Relief | ######## | 250.61 | 250.61 | 250.61 | 250.61 | 250.61 |
| BATLLC-63 | Debt Relief | ######## | 285.08 | 285.08 | 285.08 | 310.08 | 335.08 |
| BATLLC-65 | Debt Relief | ######## | 229.42 | 229.42 | 229.42 | 254.42 | 254.42 |
| BATLLC-65 | Debt Relief | ######## | 354.62 | 379.62 | 354.62 | 734.24 | 354.62 |
| BATLLC-65 | Debt Relief | ######## | 264.28 | 264.28 | 264.28 | 264.28 | 264.28 |
| BATLLC-65 | Debt Relief | ######## | 250.03 | 275.03 | 250.03 | 250.03 | 250.03 |
| BATLLC-66 | Debt Relief | ######## | 328.34 | 249.66 | 249.66 | 249.66 | 249.66 |
| BATLLC-66 | Debt Relief | ######## | 100 | 100 | 308.45 | 333.45 | 308.45 |
| BATLLC-66 | Debt Relief | ######## | 261.39 | 261.39 | 261.39 | 261.39 | 261.39 |
| BATLLC-67 | Debt Relief | ######## | 253.71 | 278.71 | 253.71 | 253.71 | 253.71 |
| BATLLC-67 | Debt Relief | ######## | 401.96 | 426.96 | 401.96 | 401.96 | 401.96 |
| BATLLC-67 | Debt Relief | ######## | 251.42 | 251.42 | 251.42 | 251.42 | 251.42 |
| BATLLC-67 | Debt Relief | ######## | 250.74 | 250.74 | 250.74 | 250.74 | 250.74 |
| BATLLC-67 | Debt Relief | ######## | 255.19 | 255.19 | 255.19 | 255.19 | 255.19 |
| BATLLC-68 | Debt Relief | 1/4/2023 | 261.2 | 261.2 | 261.2 | 261.2 | 261.2 |
| BATLLC-68 | Debt Relief | 1/5/2023 | 299.86 | 324.86 | 299.86 | 299.86 | 299.86 |
| BATLLC-68 | Debt Relief | 1/5/2023 | 258.96 | 258.96 | 258.96 | 258.96 | 258.96 |
| BATLLC-64 | Debt Relief | ######## | 402.16 | 287.49 | 287.49 | 287.49 | 287.49 |
| BATLLC-64 | Debt Relief | ######## | 253.92 | 253.92 | 253.92 | 253.92 | 253.92 |
| BATLLC-66 | Debt Relief | ######## | 253.55 | 253.55 | 253.55 | 253.55 | 253.55 |

| Debt Enrol | Total Progr | Total Paym | Fee 1 | State | Program Le | First Paym | Second Pay | Third Paym | Fourth Pay |
|---|---|---|---|---|---|---|---|---|---|
| 11187 | 6324.95 | 253 | 35 | PA | 24 Months | Cancel | Cleared | Open | Open |
| 9882 | 6265.92 | 261.08 | 40 | MS | 23 Months | Cleared | Open | Open | Open |
| 15702 | 8889.4 | 273.8 | 35 | FL | 34 Months | Cleared | Open | Open | Open |
| 9476 | 6103.52 | 254.31 | 40 | LA | 22 Months | Cleared | Open | Open | Open |
| 7880 | 4492.84 | 249.6 | 35 | KS | 17 Months | Cleared | Open | Open | Open |
| 20508 | 11611.28 | 252.42 | 35 | MA | 45 Months | Cleared | Open | Open | Open |
| 11357.05 | 6288.09 | 262 | 35 | TN | 23 Months | Cleared | Open | Open | Open |
| 25143 | 12531.21 | 396.68 | 35 | VA | 37 Months | Cleared | Open | Open | Open |
| 18758 | 13234.2 | 330.86 | 50 | IN | 39 Months | Cleared | Open | Open | Open |
| 7465 | 6045.62 | 251.9 | 50 | LA | 23 Months | Cleared | Open | Open | Open |
| 22333 | 10129.67 | 422.07 | 35 | SC | 22 Months | Cleared | Open | Open | Open |
| 18445 | 9347.15 | 311.57 | 35 | FL | 29 Months | Cleared | Open | Open | Open |
| 12805 | 7276.77 | 250.92 | 35 | MO | 28 Months | Cleared | Open | Open | Open |
| 18868 | 10073.48 | 279.82 | 35 | WA | 35 Months | Cleared | Open | Open | Open |
| 16909 | 8400.36 | 350.02 | 36 | MS | 22 Months | Cleared | Open | Open | Open |
| 32511.04 | 15234.07 | 380.85 | 35 | NJ | 39 Months | Cleared | Open | Open | Open |
| 18911 | 9992.15 | 285.49 | 35 | MN | 34 Months | Cleared | Open | Open | Open |
| 19221 | 11158.08 | 309.95 | 40 | MA | 35 Months | Cleared | Open | Open | Open |
| 7085 | 4806.92 | 253 | 42 | NC | 17 Months | Cleared | Open | Open | Open |
| 13522 | 7624.1 | 254.14 | 35 | GA | 29 Months | Cleared | Open | Open | Open |
| 23974.9 | 10704.34 | 446.01 | 35 | MA | 22 Months | Cleared | Open | Open | Open |
| 8656 | 6035.2 | 251.47 | 43 | CO | 22 Months | Cleared | Open | Open | Open |
| 9481 | 6010.71 | 250.45 | 39 | MN | 22 Months | Cleared | Open | Open | Open |
| 16757 | 8756.35 | 291.88 | 35 | OH | 28 Months | Cleared | Open | Open | Open |
| 24416 | 12111.66 | 327.34 | 35 | CA | 36 Months | Cleared | Open | Open | Open |
| 7070 | 4562.84 | 253.49 | 40 | FL | 17 Months | Cleared | Open | Open | Open |
| 31813 | 14604.23 | 405.67 | 35 | TX | 34 Months | Cleared | Open | Open | Open |
| 26409 | 13869.39 | 288.95 | 35 | OR | 47 Months | Cleared | Open | Open | Open |
| 9864 | 6061.44 | 252.56 | 38 | LA | 23 Months | Cleared | Open | Open | Open |
| 12581 | 6716.47 | 279.85 | 35 | LA | 22 Months | Cleared | Open | Open | Open |
| 6994 | 4532.44 | 251.8 | 40 | AL | 17 Months | Cleared | Open | Open | Open |
| 14973 | 8302.32 | 345.93 | 40 | TX | 23 Months | Cleared | Open | Open | Open |
| 7775 | 5037.6 | 251.88 | 40 | OH | 19 Months | Cleared | Open | Open | Open |
| 7054 | 4556.44 | 253.14 | 40 | CT | 17 Months | Cleared | Open | Open | Open |
| 29413 | 14149.75 | 353.74 | 35 | GA | 38 Months | Cleared | Open | Open | Open |
| 15150 | 7615.62 | 317.32 | 35 | NJ | 22 Months | Cleared | Open | Open | Open |
| 23999 | 11291.05 | 376.37 | 35 | CA | 29 Months | Cleared | Open | Open | Open |
| 13042 | 6877.82 | 286.58 | 35 | TN | 22 Months | Cleared | Open | Open | Open |
| 21440 | 11188.08 | 310.78 | 36 | CT | 35 Months | Cleared | Open | Open | Open |
| 7723 | 6020.16 | 250.84 | 48 | TN | 23 Months | Cleared | Open | Open | Open |
| 24085 | 11321.15 | 377.37 | 35 | IL | 29 Months | Cleared | Open | Open | Open |
| 8446 | 4787.32 | 251.96 | 35 | IA | 18 Months | Cleared | Open | Open | Open |
| 13475 | 7029.37 | 292.89 | 35 | AR | 23 Months | Cleared | Open | Open | Open |
| 6850 | 4543.34 | 252.41 | 41 | CO | 16 Months | Cleared | Open | Open | Open |
| 10783 | 6087.17 | 253.63 | 35 | VT | 23 Months | Cleared | Open | Open | Open |
| 19877 | 10426.63 | 289.63 | 35 | MO | 35 Months | Cleared | Open | Open | Open |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 15742 | 8401.1 | 280.04 | 35 WI | 29 Months Cleared | Open | Open | Open |
| 8654 | 5342.02 | 222.58 | 35 TX | 23 Months Cleared | Open | Open | Open |
| 21432 | 10392.6 | 346.42 | 35 CA | 29 Months Cleared | Open | Open | Open |
| 21098 | 10275.7 | 342.52 | 35 AL | 29 Months Cleared | Open | Open | Open |
| 43429 | 17513.27 | 729.72 | 35 NY | 23 Months Cleared | Open | Open | Open |
| 17159 | 8897.05 | 296.57 | 35 NE | 29 Months Cleared | Open | Open | Open |
| 6766 | 4508.9 | 250.49 | 41 FL | 17 Months Cleared | Open | Open | Open |
| 7138 | 4518.66 | 251.04 | 39 FL | 17 Months Cleared | Open | Open | Open |
| 8720 | 5397.24 | 299.85 | 42 TX | 17 Months Cleared | Open | Open | Open |
| 10842.77 | 6108.09 | 254.5 | 35 PA | 23 Months Cleared | Open | Open | Open |
| 7369 | 5997.62 | 249.9 | 50 MN | 23 Months Cleared | Open | Open | Open |
| 115597 | 44025.01 | 1189.87 | 35 CA | 36 Months Cleared | Open | Open | Open |
| 12227 | 6592.57 | 274.69 | 35 IA | 23 Months Cleared | Open | Open | Open |
| 14058 | 8004.46 | 250.14 | 35 WV | 30 Months Cleared | Open | Open | Open |
| 7314 | 4660.44 | 258.91 | 40 VA | 17 Months Cleared | Open | Open | Open |
| 29861 | 14835.8 | 494.53 | 40 TX | 29 Months Cleared | Open | Open | Open |
| 11874.21 | 7062.81 | 294.28 | 40 MI | 22 Months Cleared | Open | Open | Open |
| 8318 | 4646.14 | 258.12 | 35 GA | 16 Months Cleared | Open | Open | Open |
| 24205 | 11363.15 | 378.77 | 35 NY | 29 Months Cleared | Open | Open | Open |
| 16695 | 10147.68 | 281.88 | 40 AZ | 36 Months Cleared | Open | Open | Open |
| 11185 | 7172.64 | 256.17 | 40 GA | 26 Months Cleared | Open | Open | Open |
| 6933 | 4508.04 | 250.45 | 40 MI | 17 Months Cleared | Open | Open | Open |
| 18625 | 10919.68 | 303.32 | 40 TN | 35 Months Cleared | Open | Open | Open |
| 8151 | 5024.98 | 251.25 | 38 OH | 18 Months Cleared | Open | Open | Open |
| 6004 | 4869.56 | 243.48 | 49 AL | 19 Months Cleared | Open | Open | Open |
| 21392 | 10378.6 | 345.95 | 35 CA | 29 Months Cleared | Open | Open | Open |
| 5627 | 3700.22 | 250.15 | 40 IN | 14 Months Cleared | Open | Open | Open |
| 8050 | 4552.34 | 126.45 | 35 PA | 16 Months Cleared | Open | Open | Open |
| 6268 | 4555.44 | 253.08 | 45 OR | 17 Months Cleared | Open | Open | Open |
| 20078 | 9340.42 | 389.18 | 35 TX | 23 Months Cleared | Open | Open | Open |
| 24857 | 12169.63 | 338.05 | 35 AZ | 35 Months Cleared | Open | Open | Open |
| 13359 | 7567.04 | 252.24 | 35 AZ | 29 Months Cleared | Open | Open | Open |
| 18418 | 10012.36 | 270.6 | 35 TN | 36 Months Cleared | Open | Open | Open |
| 7245 | 4560.39 | 253.36 | 39 AL | 17 Months Cleared | Open | Open | Open |
| 15304 | 7958.66 | 294.77 | 35 MI | 25 Months Cleared | Open | Open | Open |
| 21864 | 11122.08 | 308.95 | 35 FL | 35 Months Cleared | Open | Open | Open |
| 14633 | 9322.88 | 258.97 | 40 SC | 35 Months Cleared | Open | Open | Open |
| 17712.11 | 8866.6 | 369.44 | 37 OH | 22 Months Cleared | Open | Open | Open |
| 20767.19 | 11123.72 | 278.09 | 35 FL | 39 Months Cleared | Open | Open | Open |
| 9258 | 6016.32 | 125.34 | 40 KY | 21 Months Cleared | Open | Open | Open |
| 8188 | 6079.6 | 253.32 | 46 OH | 22 Months Cleared | Open | Open | Open |
| 7411 | 6018.62 | 250.78 | 50 SC | 22 Months Cleared | Open | Open | Open |
| 10648 | 6039.92 | 125.83 | 35 MI | 21 Months Cleared | Pending | Open | Open |
| 11717 | 6414.07 | 267.25 | 35 WV | 23 Months Cleared | Open | Open | Open |
| 35784 | 15994.08 | 444.28 | 35 AZ | 34 Months Cleared | Open | Open | Open |
| 21555 | 11399.45 | 284.99 | 35 MT | 38 Months Cleared | Open | Open | Open |
| 17207 | 10180.41 | 282.79 | 39 NC | 35 Months Cleared | Open | Open | Open |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 10099 | 6049.75 | 252.07 | 37 | FL | 22 Months Cleared | Open | Open | Open |
| 27214 | 12609.06 | 394.03 | 35 | IL | 31 Months Cleared | Open | Open | Open |
| 19162 | 9887.24 | 299.61 | 35 | WA | 32 Months Cleared | Open | Open | Open |
| 13744 | 7798.18 | 251.55 | 35 | TX | 30 Months Cleared | Open | Open | Open |
| 17116 | 9653.04 | 254.03 | 35 | OH | 37 Months Cleared | Open | Open | Open |
| 9714 | 6198.72 | 258.28 | 40 | MO | 22 Months Cleared | Open | Open | Open |
| 23128 | 11950 | 298.75 | 35 | IL | 38 Months Cleared | Pending | Open | Open |
| 11436 | 6412.1 | 256.48 | 35 | NJ | 24 Months Cleared | Open | Open | Open |
| 12890 | 6824.62 | 284.36 | 35 | MN | 23 Months Cleared | Returned / | Open | Open |
| 14542 | 8270.24 | 250.61 | 35 | MN | 32 Months Error Proce | Cleared | Open | Open |
| 11322 | 7772.16 | 335.08 | 40 | CA | 24 Months Returned / | Returned / | Returned / | Returned / |
| 6652 | 5581.08 | 508.84 | 40 | CA | 18 Months Returned / | Returned / | Returned / | Returned / |
| 25824 | 15298.66 | 734.24 | 40 | CA | 39 Months Returned / | Returned / | Returned / | Cleared |
| 19188 | 10860.27 | 264.28 | 35 | SC | 39 Months Returned / | Cleared | Open | Open |
| 6984 | 5275.59 | 525.06 | 44 | MI | 19 Months Returned / | Cleared | Cleared | Open |
| 14452 | 8645.76 | 249.66 | 35 | AZ | 40 Months Returned / | Cleared | Open | Open |
| 24236 | 12771.25 | 100 | 35 | VA | 39 Months Returned / | Cleared | Returned / | Open |
| 10372 | 6011.95 | 261.39 | 35 | OR | 21 Months Returned / | Cleared | Open | Open |
| 6293 | 4845.4 | 278.71 | 45 | TX | 17 Months Returned / | Cleared | Open | Open |
| 30558 | 16505.36 | 426.96 | 40 | AL | 39 Months Returned / | Cleared | Open | Open |
| 8269 | 6285.59 | 251.42 | 45 | TN | 22 Months Returned / | Cleared | Open | Open |
| 11467 | 6770.07 | 250.74 | 35 | NY | 25 Months Returned / | Cleared | Open | Open |
| 14519.32 | 8421.11 | 255.19 | 35 | IL | 31 Months Returned / | Cleared | Open | Open |
| 9065 | 6007.56 | 261.2 | 40 | MO | 21 Months Returned / | Cleared | Open | Open |
| 20929 | 11119.69 | 324.86 | 35 | MS | 35 Months Returned / | Cleared | Open | Open |
| 10568 | 6992.04 | 258.96 | 40 | CA | 25 Months Returned / | Cleared | Open | Open |
| 15289 | 11901.86 | 287.49 | 50 | MI | 40 Months Returned / | Returned / | Cleared | Open |
| 10219 | 6094.15 | 253.92 | 37 | NY | 23 Months Returned / | Returned / | Cleared | Open |
| 8272 | 5070.96 | 253.55 | 38 | IA | 19 Months Returned / | Cleared | Open | Open |
| 1940332 | | | | | | | | |

DocuSign Envelope ID: 18D15981-697F-42FG-B0EE-2472AE91D34C

| Fifth Paym | Sixth Paym | First Paym | Next Paym | # Drafts Clc | Pay Freq. | Payment N | Paused |
|---|---|---|---|---|---|---|---|
| Open | Open | ######## | 2/3/2023 | 1 | Monthly | Bank | No |
| Open | Open | 1/3/2023 | 2/3/2023 | 1 | Monthly | Bank | No |
| Open | Open | 1/5/2023 | 2/6/2023 | 1 | Monthly | Bank | No |
| Open | Open | 1/4/2023 | ######## | 0 | Monthly | CC | No |
| Open | Open | ######## | ######## | 1 | Monthly | Bank | No |
| Open | Open | ######## | ######## | 0 | Monthly | CC | Yes |
| Open | Open | 1/4/2023 | 2/6/2023 | 1 | Monthly | Bank | No |
| Open | Open | ######## | ######## | 1 | Monthly | Bank | No |
| Open | Open | 1/5/2023 | 2/6/2023 | 1 | Monthly | Bank | No |
| Open | Open | ######## | ######## | 1 | Monthly | Bank | No |
| Open | Open | 1/9/2023 | ######## | 0 | Monthly | CC | No |
| Open | Open | 1/5/2023 | 2/6/2023 | 1 | Monthly | Bank | No |
| Open | Open | 1/6/2023 | 2/6/2023 | 1 | Monthly | Bank | No |
| Open | Open | ######## | ######## | 1 | Monthly | Bank | No |
| Open | Open | ######## | 2/6/2023 | 0 | Monthly | CC | No |
| Open | Open | ######## | ######## | 1 | Monthly | Bank | No |
| Open | Open | 1/3/2023 | 2/1/2023 | 1 | Monthly | Bank | No |
| Open | Open | 1/9/2023 | ######## | 1 | Monthly | Bank | No |
| Open | Open | ######## | ######## | 0 | Monthly | Bank/CC | No |
| Open | Open | 1/6/2023 | 2/6/2023 | 0 | Monthly | CC | No |
| Open | Open | 1/6/2023 | 2/3/2023 | 0 | Monthly | CC | No |
| Open | Open | 1/6/2023 | 2/3/2023 | 0 | Monthly | CC | No |
| Open | Open | 1/6/2023 | 2/3/2023 | 0 | Monthly | CC | No |
| Open | Open | 1/6/2023 | 2/3/2023 | 1 | Monthly | Bank | No |
| Open | Open | ######## | ######## | 1 | Monthly | Bank | No |
| Open | Open | 1/4/2023 | 2/6/2023 | 0 | Monthly | CC | No |
| Open | Open | 1/4/2023 | ######## | 1 | Monthly | Bank | No |
| Open | Open | ######## | 3/1/2023 | 0 | Monthly | CC | No |
| Open | Open | 1/6/2023 | 2/6/2023 | 1 | Monthly | Bank | No |
| Open | Open | ######## | ######## | 0 | Monthly | CC | No |
| Open | Open | 1/5/2023 | 2/6/2023 | 1 | Monthly | Bank | No |
| Open | Open | 1/5/2023 | 2/6/2023 | 0 | Monthly | CC | No |
| Open | Open | 1/5/2023 | 2/6/2023 | 1 | Monthly | Bank | No |
| Open | Open | 1/3/2023 | 2/3/2023 | 1 | Monthly | Bank | No |
| Open | Open | 1/5/2023 | 2/2/2023 | 0 | Monthly | CC | No |
| Open | Open | 1/3/2023 | 2/1/2023 | 1 | Monthly | Bank | No |
| Open | Open | ######## | ######## | 0 | Monthly | CC | No |
| Open | Open | 1/6/2023 | 2/3/2023 | 0 | Monthly | CC | No |
| Open | Open | ######## | ######## | 1 | Monthly | Bank | No |
| Open | Open | ######## | ######## | 1 | Monthly | Bank | No |
| Open | Open | 1/6/2023 | 2/6/2023 | 0 | Monthly | CC | No |
| Open | Open | 1/6/2023 | 2/6/2023 | 0 | Monthly | CC | No |
| Open | Open | 1/6/2023 | 2/6/2023 | 1 | Monthly | Bank | No |
| Open | Open | 1/6/2023 | 2/3/2023 | 0 | Monthly | CC | No |
| Open | Open | 1/6/2023 | 2/6/2023 | 0 | Monthly | CC | No |
| Open | Open | ######## | ######## | 0 | Monthly | CC | No |

| Open | Open | 1/6/2023 | 2/6/2023 | 0 | Monthly | CC | No |
|------|------|----------|----------|---|---------|-----|-----|
| Open | Open | 1/6/2023 | 2/6/2023 | 0 | Monthly | CC | No |
| Open | Open | 1/5/2023 | 2/6/2023 | 0 | Monthly | CC | No |
| Open | Open | 1/6/2023 | 2/6/2023 | 1 | Monthly | Bank | No |
| Open | Open | 1/6/2023 | ######## | 0 | Monthly | CC | No |
| Open | Open | ######## | ######## | 0 | Monthly | CC | No |
| Open | Open | 1/3/2023 | 2/3/2023 | 1 | Monthly | Bank | No |
| Open | Open | 1/4/2023 | 2/6/2023 | 0 | Monthly | CC | No |
| Open | Open | 1/3/2023 | 2/3/2023 | 1 | Monthly | Bank | No |
| Open | Open | 1/6/2023 | 2/6/2023 | 1 | Monthly | Bank | No |
| Open | Open | 1/6/2023 | ######## | 1 | Bi-Weekly | Bank | No |
| Open | Open | ######## | ######## | 1 | Monthly | Bank | No |
| Open | Open | ######## | ######## | 0 | Monthly | CC | No |
| Open | Open | 1/3/2023 | ######## | 1 | Monthly | Bank | No |
| Open | Open | 1/6/2023 | ######## | 0 | Monthly | CC | No |
| Open | Open | 1/6/2023 | 2/6/2023 | 0 | Monthly | CC | No |
| Open | Open | ######## | ######## | 0 | Monthly | CC | No |
| Open | Open | 1/3/2023 | ######## | 1 | Monthly | Bank | No |
| Open | Open | ######## | ######## | 0 | Monthly | CC | No |
| Open | Open | 1/6/2023 | 3/6/2023 | 1 | Monthly | Bank | No |
| Open | Open | 1/4/2023 | 2/3/2023 | 0 | Monthly | CC | No |
| Open | Open | ######## | ######## | 0 | Monthly | CC | No |
| Open | Open | 1/6/2023 | 2/6/2023 | 1 | Monthly | Bank | No |
| Open | Open | 1/9/2023 | 2/6/2023 | 0 | Monthly | CC | No |
| Open | Open | ######## | ######## | 0 | Monthly | CC | No |
| Open | Open | ######## | ######## | 0 | Monthly | CC | No |
| Open | Open | 1/5/2023 | 2/6/2023 | 0 | Monthly | CC | No |
| Open | Open | ######## | ######## | 0 | Bi-Weekly | CC | No |
| Open | Open | ######## | ######## | 0 | Monthly | CC | No |
| Open | Open | ######## | ######## | 0 | Monthly | CC | No |
| Open | Open | ######## | ######## | 0 | Monthly | CC | No |
| Open | Open | ######## | ######## | 0 | Monthly | CC | No |
| Open | Open | 1/3/2023 | 2/3/2023 | 1 | Monthly | Bank | No |
| Open | Open | ######## | ######## | 0 | Monthly | CC | No |
| Open | Open | 1/4/2023 | 2/3/2023 | 1 | Monthly | Bank | No |
| Open | Open | ######## | ######## | 0 | Monthly | CC | No |
| Open | Open | 1/6/2023 | 2/6/2023 | 0 | Monthly | CC | No |
| Open | Open | ######## | 2/6/2023 | 0 | Monthly | CC | No |
| Open | Open | 1/5/2023 | 2/6/2023 | 0 | Monthly | CC | No |
| Open | Open | ######## | ######## | 0 | Bi-Weekly | CC | No |
| Open | Open | ######## | ######## | 1 | Monthly | Bank | No |
| Open | Open | 1/4/2023 | 2/3/2023 | 0 | Monthly | CC | No |
| Open | Open | 1/3/2023 | ######## | 1 | Bi-Weekly | Bank | No |
| Open | Open | 1/6/2023 | ######## | 0 | Monthly | CC | No |
| Open | Open | 1/3/2023 | 2/1/2023 | 1 | Monthly | Bank | No |
| Open | Open | 1/3/2023 | ######## | 1 | Monthly | Bank | No |
| Open | Open | 1/6/2023 | 2/6/2023 | 0 | Monthly | CC | No |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Open | Open | 1/5/2023 | 2/3/2023 | 0 | Monthly | CC | No |
| Open | Open | 1/4/2023 | 2/6/2023 | 1 | Monthly | Bank | Yes |
| Open | Open | 1/6/2023 | 2/6/2023 | 1 | Monthly | Bank | No |
| Open | Open | ######## | ######## | 0 | Monthly | CC | No |
| Open | Open | ######## | ######## | 0 | Monthly | CC | No |
| Open | Open | 1/6/2023 | 2/3/2023 | 0 | Monthly | CC | No |
| Open | Open | ######## | ######## | 1 | Monthly | Bank | No |
| Open | Open | ######## | ######## | 0 | Monthly | CC | No |
| Open | Open | ######## | 2/6/2023 | 0 | Monthly | CC | No |
| Open | Open | ######## | 2/6/2023 | 0 | Monthly | Bank/CC | No |
| Cleared | Cancel | ######## | ######## | 1 | Monthly | Bank | No |
| Cleared | Cleared | ######## | 2/2/2023 | 0 | Monthly | CC | No |
| Open | Open | ######## | ######## | 1 | Monthly | Bank/CC | No |
| Open | Open | ######## | 2/3/2023 | 1 | Monthly | Bank | No |
| Open | Open | ######## | ######## | 2 | Monthly | Bank | No |
| Open | Open | ######## | 2/7/2023 | 0 | Monthly | CC | No |
| Open | Open | ######## | ######## | 1 | Monthly | Bank | No |
| Open | Open | ######## | 2/6/2023 | 0 | Monthly | CC | No |
| Open | Open | 1/3/2023 | 2/2/2023 | 0 | Monthly | CC | No |
| Open | Open | ######## | ######## | 0 | Monthly | CC | No |
| Open | Open | 1/3/2023 | 2/2/2023 | 0 | Monthly | CC | No |
| Open | Open | ######## | ######## | 0 | Monthly | CC | No |
| Open | Open | 1/5/2023 | 2/6/2023 | 0 | Monthly | CC | Yes |
| Open | Open | 1/6/2023 | 2/6/2023 | 0 | Monthly | CC | No |
| Open | Open | 1/9/2023 | ######## | 0 | Monthly | CC | No |
| Open | Open | 1/6/2023 | 2/6/2023 | 0 | Monthly | CC | No |
| Open | Open | ######## | ######## | 1 | Monthly | Bank | No |
| Open | Open | ######## | 2/6/2023 | 1 | Monthly | Bank | No |
| Open | Open | ######## | 2/6/2023 | 0 | Monthly | CC | No |

| Client Status | Payments | Payment S | # NSFs |
|---|---|---|---|
| Active File | 1 | 1 of 25 | 0 |
| Active File | 1 | 1 of 24 | 0 |
| Active File | 1 | 1 of 35 | 0 |
| Active File | 1 | 1 of 24 | 0 |
| Active File | 1 | 1 of 18 | 0 |
| Active File | 1 | 1 of 46 | 0 |
| Active File | 1 | 1 of 24 | 0 |
| Active File | 1 | 1 of 38 | 0 |
| Active File | 1 | 1 of 40 | 0 |
| Active File | 1 | 1 of 24 | 0 |
| Active File | 1 | 1 of 24 | 0 |
| Active File | 1 | 1 of 30 | 0 |
| Active File | 1 | 1 of 29 | 0 |
| Active File | 1 | 1 of 36 | 0 |
| Active File | 1 | 1 of 24 | 0 |
| Active File | 1 | 1 of 40 | 0 |
| Active File | 1 | 1 of 35 | 0 |
| Active File | 1 | 1 of 36 | 0 |
| Active File | 1 | 1 of 19 | 0 |
| Active File | 1 | 1 of 30 | 0 |
| Active File | 1 | 1 of 24 | 0 |
| Active File | 1 | 1 of 24 | 0 |
| Active File | 1 | 1 of 24 | 0 |
| Active File | 1 | 1 of 30 | 0 |
| Active File | 1 | 1 of 37 | 0 |
| Active File | 1 | 1 of 18 | 0 |
| Active File | 1 | 1 of 36 | 0 |
| Active File | 1 | 1 of 48 | 0 |
| Active File | 1 | 1 of 24 | 0 |
| Active File | 1 | 1 of 24 | 0 |
| Active File | 1 | 1 of 18 | 0 |
| Active File | 1 | 1 of 24 | 0 |
| Active File | 1 | 1 of 20 | 0 |
| Active File | 1 | 1 of 18 | 0 |
| Active File | 1 | 1 of 40 | 0 |
| Active File | 1 | 1 of 24 | 0 |
| Active File | 1 | 1 of 30 | 0 |
| Active File | 1 | 1 of 24 | 0 |
| Active File | 1 | 1 of 36 | 0 |
| Active File | 1 | 1 of 24 | 0 |
| Active File | 1 | 1 of 30 | 0 |
| Active File | 1 | 1 of 19 | 0 |
| Active File | 1 | 1 of 24 | 0 |
| Active File | 1 | 1 of 18 | 0 |
| Active File | 1 | 1 of 24 | 0 |
| Active File | 1 | 1 of 36 | 0 |

| | | |
|---|---|---|
| Active File | 1 1 of 30 | 0 |
| Active File | 1 1 of 24 | 0 |
| Active File | 1 1 of 30 | 0 |
| Active File | 1 1 of 30 | 0 |
| Active File | 1 1 of 24 | 0 |
| Active File | 1 1 of 30 | 0 |
| Active File | 1 1 of 18 | 0 |
| Active File | 1 1 of 18 | 0 |
| Active File | 1 1 of 18 | 0 |
| Active File | 1 1 of 24 | 0 |
| Active File | 1 1 of 24 | 0 |
| Active File | 1 1 of 37 | 0 |
| Active File | 1 1 of 24 | 0 |
| Active File | 1 1 of 32 | 0 |
| Active File | 1 1 of 18 | 0 |
| Active File | 1 1 of 30 | 0 |
| Active File | 1 1 of 24 | 0 |
| Active File | 1 1 of 18 | 0 |
| Active File | 1 1 of 30 | 0 |
| Active File | 1 1 of 36 | 0 |
| Active File | 1 1 of 28 | 0 |
| Active File | 1 1 of 18 | 0 |
| Active File | 1 1 of 36 | 0 |
| Active File | 1 1 of 20 | 0 |
| Active File | 1 1 of 20 | 0 |
| Active File | 1 1 of 30 | 0 |
| Active File | 1 1 of 15 | 0 |
| Active File | 1 1 of 36 | 0 |
| Active File | 1 1 of 18 | 0 |
| Active File | 1 1 of 24 | 0 |
| Active File | 1 1 of 36 | 0 |
| Active File | 1 1 of 30 | 0 |
| Educational Outreach | 1 1 of 37 | 0 |
| Educational Outreach | 1 1 of 18 | 0 |
| Educational Outreach | 1 1 of 27 | 0 |
| Educational Outreach | 1 1 of 36 | 0 |
| Educational Outreach | 1 1 of 36 | 0 |
| Educational Outreach | 1 1 of 24 | 0 |
| Educational Outreach | 1 1 of 40 | 0 |
| Educational Outreach | 1 1 of 48 | 0 |
| Educational Outreach Missed | 1 1 of 24 | 0 |
| Educational Outreach Missed | 1 1 of 24 | 0 |
| Educational Outreach Missed | 1 1 of 48 | 0 |
| Educational Outreach Missed | 1 1 of 24 | 0 |
| Educational Outreach Missed | 1 1 of 36 | 0 |
| Educational Outreach Missed | 1 1 of 40 | 0 |
| Educational Outreach Missed | 1 1 of 36 | 0 |

DocuSign Envelope ID: 18D15981-697F-42FG-B0EE-2472+E91D34C

| | | |
|---|---|---|
| Educational Outreach Missed | 1  1 of 24 | 0 |
| Educational Outreach Missed | 1  1 of 32 | 0 |
| Educational Outreach Missed | 1  1 of 33 | 0 |
| Educational Outreach Missed | 1  1 of 31 | 0 |
| Educational Outreach Missed | 1  1 of 38 | 0 |
| Enroll Debt | 1  1 of 24 | 0 |
| Hardship Review | 1  1 of 40 | 0 |
| Hardship Review | 1  1 of 25 | 0 |
| NSF | 1  1 of 24 | 1 |
| Active File | 1  1 of 33 | 0 |
| Active File | 1  1 of 27 | 3 |
| Active File | 2  2 of 24 | 4 |
| Active File | 1  1 of 42 | 3 |
| Active File | 1  1 of 41 | 1 |
| Active File | 2  2 of 21 | 1 |
| Active File | 1  1 of 34 | 1 |
| Active File | 1  1 of 43 | 2 |
| Active File | 1  1 of 23 | 1 |
| Active File | 1  1 of 19 | 1 |
| Active File | 1  1 of 41 | 1 |
| Active File | 1  1 of 25 | 1 |
| Active File | 1  1 of 27 | 1 |
| Active File | 1  1 of 33 | 1 |
| Active File | 1  1 of 23 | 1 |
| Active File | 1  1 of 37 | 1 |
| Active File | 1  1 of 27 | 1 |
| NSF | 1  1 of 41 | 2 |
| NSF | 1  1 of 24 | 2 |
| NSF | 1  1 of 20 | 1 |

**EXHIBIT "8"**

DocuSign Envelope ID: 110C5A3D-7172-4D69-8756-BD2B37F4827C

**ACCOUNTS RECEIVABLE PURCHASE AGREEMENT**

This ACCOUNTS RECEIVABLE PURCHASE AGREEMENT (this "**Agreement**") is made as of February 20, 2023 (the "**Agreement Date**"), by and between The Litigation Practice Group PC (collectively the "**Buyer**"), and Debt Relief Group (the "**Seller" or "LPG**", and together with the Buyer, the **"Parties"**), and The Litigation Practice Group PC ("LPG").

**RECITALS**

WHEREAS, in the regular course of business, the Seller originates account receivables from **LPG** in connection with client on-boarding services provided by the Seller to LPG and its affiliates;

WHEREAS, the account receivables represent an obligation of various clients to pay Seller for services that Seller previously provided, but which LPG shall provide from the date of execution of this Agreement;

WHEREAS, the Seller desires to sell, assign, transfer, and deliver to the Buyer, and the Buyer desires to purchase, acquire, and accept from the Seller, certain of these account receivables (the "**Purchased Accounts**").

NOW, THEREFORE, in consideration of the covenants and representations set forth herein, the Parties, intending to be legally bound, agree as follows:

**ARTICLE 1.**
**DEFINITIONS**

Section 1.1    Certain Definitions.  Certain defined terms used in this Agreement are set forth on **Exhibit A**.

**ARTICLE 2.**
**ASSIGNMENT AND TRANSFER AND CONSIDERATION**

Section 2.1    Assignment of the Purchased Accounts to the Buyer.  Upon execution of this Agreement and subject to the terms and conditions set forth herein, the Seller shall sell, assign, transfer, and deliver, and the Buyer shall purchase, acquire, and accept from the Seller, all of the Seller's right, title, and interest in and to the Purchased Accounts set forth on the spreadsheet attached to this Agreement, free and clear of any Liens.  Other than the Purchased Accounts, the Buyer shall not purchase or acquire any other assets of the Seller (collectively, the "**Excluded Assets**").

Section 2.2    No Assumption of Liabilities.  The Buyer shall not assume any Liabilities of the Seller of any kind, whether known or unknown, contingent, matured, or otherwise, whether currently existing or hereinafter created (collectively, the "**Excluded Liabilities**").

Section 2.3    Payment of Purchase Price.  Buyer shall pay $275,844.90 (total purchase price) for the Purchased Accounts (the "**Purchase Price**") by wire transfer of immediately available funds in accordance with the wire transfer instructions set forth in **Schedule 2.3** (the "**Wire Instructions**").  The Purchased Accounts are set forth on the attached spreadsheet.

Section 2.4    Guarantee of LPG.  If any file acquired by buyer shall fail to make a first payment, LPG will replace the file and bear any cost associated with such replacement.  The replacement file shall yield no less than the receivable of the failed file.  In addition, if any any calendar month a total of less than 80% of files make a cleared payment, LPG shall replace any non-performing files in such month so that the performance of the file

package as a whole equals 80%.  This guarantee shall continue until the completion of the 24th month following execution of this agreement.

## ARTICLE 3.
## REPRESENTATIONS AND WARRANTIES OF THE SELLER

The Seller represents and warrants to the Buyer, as of the Agreement Date and as of the Closing Date, or, if expressly made as of a specified date, as of such specified date, as follows:

Section 3.1    <u>Organization; Good Standing</u>.  The Seller is a Limited Liability Company duly organized, validly existing, and in good standing under the Laws of the State of Delaware and is duly qualified to do business and is in good standing as a foreign corporation in each jurisdiction where the ownership or operation of the Business requires such qualification, except where the failure to be so qualified would not reasonably be expected to have, individually or in the aggregate, a material adverse effect on the business, results of operations, financial condition, or assets of the Seller.

Section 3.2    <u>Power and Authority</u>.  The Seller has all requisite right, power, and authority to execute, deliver, and perform this Agreement and the Transaction Agreements to which it is a party, to consummate the transactions contemplated hereby and thereby, and to perform its obligations hereunder and thereunder.  The execution and delivery of this Agreement and the Transaction Agreements by the Seller, and the consummation by the Seller of the transactions contemplated hereby and thereby, have been duly approved by the Seller, and no further action is required on the part of the Seller to authorize this Agreement, any Transaction Agreement to which it is a party, or the transactions contemplated hereby and thereby.  This Agreement has been, and each of the Transaction Agreements will be, duly and validly executed and delivered by the Seller and, assuming the due and valid authorization, execution, and delivery of this Agreement by the other Parties, and of each such Transaction Agreement by the other parties thereto, constitutes, or will constitute, a valid and binding obligation of the Seller, enforceable against it in accordance with its terms and conditions, except as enforcement may be limited by applicable bankruptcy, insolvency, reorganization, moratorium, and other Laws affecting enforcement of creditor's rights generally and except insofar as the availability of equitable remedies may be limited by applicable Law.

Section 3.3    <u>Title to, and Sufficiency of, the Purchased Accounts</u>.  The Seller has and shall convey to the Buyer, at the Closing, good, valid, transferable, and marketable title to, or valid leasehold interests in, all of the Purchased Accounts, free and clear of all Liens.

Section 3.4    <u>Consents</u>.  The Seller is not required to give any notice to, make any filing with, or obtain any authorization, consent, or approval of, any Governmental Body or Third Party, including a party to any assigned contract, in connection with the execution, delivery, and performance by the Seller of this Agreement or any of the Transaction Agreements to which it is a party or the consummation of the transactions contemplated hereby and thereby.

Section 3.5    <u>No Conflicts</u>. The execution and delivery by the Seller of this Agreement and each of the Transaction Agreements, and the consummation of the transactions contemplated hereby and thereby, will not conflict with, result in any violation of, or default under (with or without notice or lapse of time, or both), or give rise to an additional payment obligation, a right of termination, cancellation, modification, or acceleration of any obligation, or loss of any benefit, under: (a) any provision of the Organizational Documents of the Seller; (b) any contract to which the Seller is party, including, without limitation, any assigned contract; or (c) any Law or order applicable to the Seller or any of the Purchased Accounts.

DocuSign Envelope ID: 110C5A3D-7172-4D69-8766-BD2B37E4927C

Section 3.6    <u>Compliance with Laws</u>.  The Seller has materially complied, and is now materially complying, with all Laws applicable to the ownership and use of the Purchased Accounts.

Section 3.7    <u>Legal Proceedings</u>.  There is no Action of any nature pending or, to the Knowledge of the Seller, threatened against or by the Seller: (a) relating to or affecting the Purchased Accounts or (b) that challenges or seeks to prevent, enjoin, or otherwise delay the transactions contemplated by this Agreement and the Transaction Agreements.  No event has occurred or circumstance exists that may give rise to, or serve as a basis for, any such Action.

Section 3.8    <u>Condition of Purchased Accounts</u>.  Each Purchased Account shall have received no less than one processed payment.

Section 3.9    <u>Confidentiality</u>.  Seller agrees and acknowledges that all Purchased Accounts, the pricing, and all terms set forth in this Agreement are confidential (together, the "**Confidential Information**").  Seller will at all times keep the  Confidential Information in confidence and trust.  Seller will not, without the prior written consent of an authorized officer of Buyer, (A) copy, use or disclose any Confidential Information, (B) deliver or disclose any Confidential Information to any person or entity outside the Buyer, or (C) use the Confidential Information for Seller's own use or use it to the detriment of Buyer.  Notwithstanding the foregoing, Seller may, without consent, use the Confidential Information and disclose and deliver same to Seller's employees or agents, if applicable, who have a need to know, provided such employees or agents have entered into written agreements approved by Buyer and containing provisions at least as restrictive as these provisions.  Seller agrees that violation of this Section 3.9.  The Parties agree that the disclosure of the Confidential Information in violation of this Agreement may cause the Buyer irreparable harm and that any breach or threatened breach by the Seller entitles Buyer to seek injunctive relief, in addition to any other legal or equitable remedies available to it, in any court of competent jurisdiction.

## ARTICLE 4.
## REPRESENTATIONS AND WARRANTIES OF THE BUYER

The Buyer represents and warrants to the Seller, as of the Agreement Date and as of the Closing Date, or, if expressly made as of a specified date, as of such specified date, as follows:

Section 4.1    <u>Organization; Good Standing</u>.  The Buyer is a limited liability company, duly organized, validly existing, and in good standing under the Laws of the State of Florida.

Section 4.2    <u>Power and Authority</u>.  The Buyer has all requisite right, power, and authority to execute, deliver, and perform this Agreement and the Transaction Agreements to which it is a party, to consummate the transactions contemplated hereby and thereby, and to perform its obligations hereunder and thereunder.  The execution and delivery of this Agreement and the Transaction Agreements by the Buyer, and the consummation by the Buyer of the transactions contemplated hereby and thereby, have been duly approved by the Buyer, and no further action is required on the part of the Buyer to authorize this Agreement, any Transaction Agreement to which it is a party, or the transactions contemplated hereby and thereby.  This Agreement has been, and each of the Transaction Agreements will be, duly and validly executed and delivered by the Buyer and, assuming the due and valid authorization, execution, and delivery of this Agreement by the other Parties, and of each such Transaction Agreement by the other parties thereto, constitutes, or will constitute, a valid and binding obligation of the Buyer, enforceable against it in accordance with its terms and conditions, except as enforcement may be limited by applicable bankruptcy, insolvency, reorganization, moratorium and other Laws affecting enforcement of creditor's rights generally and except insofar as the availability of equitable remedies may be limited by applicable Law.

DocuSign Envelope ID: 110C5A3D-7172-4D69-8766-BD2B937E4827

Section 4.3    <u>No Conflicts</u>.  The execution and delivery by the Buyer of this Agreement and each of the Transaction Agreements, and the consummation of the transactions contemplated hereby and thereby, will not conflict with, result in any violation of, or default under (with or without notice or lapse of time, or both), or give rise to an additional payment obligation, a right of termination, cancellation, modification, or acceleration of, any obligation, or loss of any benefit under: (a) any provision of the Buyer's Organizational Documents; (b) any contract to which the Buyer is party, other than the Buyer Representation Agreement; or (c) any Law applicable to the Buyer.

Section 4.4    <u>Sufficient Funds</u>.  The Buyer has, and will have, sufficient funds available to make payment of the Purchase Price and consummate the transactions contemplated by this Agreement and the Transaction Agreements.

## ARTICLE 5.
## COVENANTS

Section 5.1    <u>Appropriate Actions</u>.

(a)    <u>General</u>.  Each of the Parties shall use commercially reasonable efforts to take all actions necessary to consummate the transactions contemplated by this Agreement as soon as reasonably practicable after the execution of this Agreement, including taking all actions necessary to comply promptly with all applicable Laws that may be imposed on it or any of its Affiliates with respect to the Closing.

## ARTICLE 6.
## CLOSING

Section 6.1    <u>Closing</u>.  The closing of the transactions contemplated by this Agreement (the "**Closing**") will take place upon the execution and delivery of this Agreement or at such other time, date, and place as the Parties may agree in writing.  The date on which the Closing occurs is hereinafter referred to as the "**Closing Date**." The Parties agree that the Closing may take place by the electronic exchange of executed counterpart documents and the electronic transfer of funds.

Section 6.2    <u>Closing Deliverables of the Seller</u>.  At or prior to the Closing, Seller shall deliver to Buyer any of the following if requested by Buyer:  (i) a bill of sale and assignment and assumption agreement substantially in the form attached hereto as **<u>Exhibit B</u>** (the "**Bill of Sale and Assignment and Assumption Agreement**"), duly executed by the Seller, effecting the transfer and assignment to, and assumption by, the Buyer of the Purchased Accounts; and (ii) such other customary instruments of transfer, assumption, filings, or documents, in form and substance reasonably satisfactory to the Buyer, as may be required to give effect to this Agreement.

Section 6.3    <u>Closing Deliverables of the Buyer</u>.  At or prior to the Closing, the Seller shall have received the following: (i) the Upfront Cash Payment; and (ii) if requested pursuant to <u>Section 6.2</u>, the Bill of Sale and Assignment and Assumption Agreement, duly executed by the Buyer.

Section 6.4    <u>Indemnification by the Seller</u>.  Subject to the limitations set forth in this <u>Article 6</u>, the Seller agrees to indemnify and hold harmless the Buyer, including its shareholders, members, directors, managers, officers, employees, Affiliates, and agents (each, a "**Buyer Indemnified Party**" and, collectively, the "**Buyer Indemnified Parties**"), against all claims, losses, Liabilities, damages, deficiencies, diminutions in value, costs, interest, awards, judgments, penalties, and expenses, including reasonable out-of-pocket attorneys' and consultants' fees and expenses and including any such reasonable expenses incurred in connection with investigating, defending against, or settling any of the foregoing (each, a "**Loss**" and, collectively, the "**Losses**") paid, suffered, incurred, sustained, or accrued by any Buyer Indemnified Party, directly or indirectly, as a result of,

arising out of, or in connection with: (a) any inaccuracy in, or breach of, any of the representations or warranties of the Seller contained in this Agreement, (b) any breach or non-fulfillment of any covenant, agreement, or obligation to be performed by the Seller pursuant to this Agreement, (c) any Excluded Asset or any Excluded Liability.

Section 6.5    Indemnification by the Buyer.  Subject to the limitations set forth in this Article 6, the Buyer agrees to indemnify and hold harmless the Seller, including its Affiliates and agents (each, a "**Seller Indemnified Party**" and, collectively, the "**Seller Indemnified Parties**"), against all Losses paid, suffered, incurred, sustained, or accrued by any Seller Indemnified Party, directly or indirectly, as a result of, arising out of, or in connection with: (a) any inaccuracy in, or breach of, any of the representations or warranties of the Buyer contained in this Agreement; (b) any breach or non-fulfillment of any covenant, agreement, or obligation to be performed by the Buyer pursuant to this Agreement; (c) any event or occurance related to the Purchased Accounts or Buyer occurring after the Closing; or (d) resulting from any omissions or misstatements made by Buyer to investors or potential investors.

Section 6.6    Indemnification Procedures.

(a)    No Restraints.  Promptly following receipt by an Indemnified Party of notice by a Third Party (including any Governmental Body) of any complaint, dispute, or claim or the commencement of any audit, investigation, Action or proceeding with respect to which such Indemnified Party may be entitled to indemnification pursuant hereto (a "**Third-party Claim**"), such Indemnified Party shall provide written notice thereof to the Indemnifying Party, provided, however, that the failure to so notify the Indemnifying Party shall relieve the Indemnifying Party from Liability hereunder with respect to such Third-party Claim only if, and only to the extent that, such failure to so notify the Indemnifying Party results in the forfeiture by the Indemnifying Party of rights and defenses otherwise available to the Indemnifying Party with respect to such Third-party Claim.  The Indemnifying Party shall have the right, upon written notice delivered to the Indemnified Party within twenty days thereafter assuming full responsibility for any Losses resulting from such Third-party Claim, to assume the defense of such Third-party Claim, including the employment of counsel reasonably satisfactory to the Indemnified Party and the payment of the fees and disbursements of such counsel; provided, however, if the Indemnifying Party declines or fails to assume the defense of such Third-party Claim on the terms provided above or to employ counsel reasonably satisfactory to the Indemnified Party, in either case within such twenty day period, then any Losses shall include the reasonable fees and disbursements of counsel for the Indemnified Party as incurred.  In any Third-party Claim for which indemnification is being sought hereunder the Indemnified Party or the Indemnifying Party, whichever is not assuming the defense of such Third-party Claim, shall have the right to participate in such matter and to retain its own counsel at such Party's own expense.  The Indemnifying Party or the Indemnified Party (as the case may be) shall at all times use reasonable efforts to keep the Indemnifying Party or Indemnified Party (as the case may be) reasonably apprised of the status of the defense of any matter, the defense of which it is maintaining, and to cooperate in good faith with each other with respect to the defense of any such matter.

(b)    No Indemnified Party may settle or compromise any Third-party Claim or consent to the entry of any judgment with respect to which indemnification is being sought hereunder without the prior written consent of the Indemnifying Party (which may not be unreasonably withheld or delayed), unless (i) the Indemnifying Party fails to assume and maintain the defense of such Third-party Claim or (ii) such settlement, compromise, or consent includes an unconditional release of the Indemnifying Party and its officers, directors, employees and Affiliates from all Liability arising out of, or related to, such Third-party Claim.  An Indemnifying Party may not, without the prior written consent of the Indemnified Party, settle or compromise any Third-party Claim or consent to the entry of any judgment with respect to which indemnification is being sought hereunder unless such settlement, compromise, or consent (A) includes an unconditional release of the Indemnified Party and its officers, directors, employees, and Affiliates from all Liability arising out of, or related to, such Third-party

Claim, (B) does not contain any admission or statement suggesting any wrongdoing or Liability on behalf of the Indemnified Party, and (C) does not contain any equitable order, judgment, or term that in any manner affects, restrains, or interferes with the business of the Indemnified Party or any of the Indemnified Party's Affiliates.

(c)     If an Indemnified Party claims a right to payment pursuant hereto with respect to any matter not involving a Third-party Claim (a "**Direct Claim**"), such Indemnified Party shall send written notice of such claim to the appropriate Indemnifying Party (each, a "**Notice of Claim**").  Such Notice of Claim shall specify the basis for such Direct Claim.  The failure by any Indemnified Party so to notify the Indemnifying Party shall not relieve the Indemnifying Party from any Liability that it may have to such Indemnified Party with respect to any Direct Claim made pursuant to this Section 6.6(c).  If the Indemnifying Party does not notify the Indemnified Party within thirty days following its receipt of such Notice of Claim that the Indemnifying Party disputes its Liability to the Indemnified Party under this Article 6 or the amount thereof, the Direct Claim specified by the Indemnified Party in such Notice of Claim shall be conclusively deemed a Liability of the Indemnifying Party under this Article 6, and the Indemnifying Party shall pay the amount of such Liability to the Indemnified Party on demand or, in the case of any Notice of Claim in which the amount of the Direct Claim (or any portion of the Direct Claim) is estimated, on such later date when the amount of such Direct Claim (or such portion of such Direct Claim) becomes finally determined.  In the event that the Indemnifying Party has timely disputed its Liability with respect to such Direct Claim as provided above, as promptly as possible, such Indemnified Party and the appropriate Indemnifying Party shall establish the merits and amount of such Direct Claim (by mutual agreement, litigation, arbitration or otherwise) and, within five business days following the final determination of the merits and amount of such Direct Claim, the Indemnifying Party shall pay to the Indemnified Party an amount equal to such Direct Claim as determined hereunder.

## ARTICLE 7.
## MISCELLANEOUS

Section 7.1     Entire Agreement; Amendment.  This Agreement and the Transaction Agreements (including the exhibits hereto and thereto and the documents referred to therein) constitute the entire agreement among the Parties with respect to the subject matter hereof and supersede any prior understandings, agreements, or representations by or among the Parties, written or oral, to the extent they related in any way to the subject matter hereof.  This Agreement may be amended with the written consent of each of the Parties or any successor thereto by execution of an instrument in writing.

Section 7.2     Waivers.  The rights and remedies of the Parties to this Agreement are cumulative and not alternative.  To the maximum extent permitted by applicable Law: (a) no claim or right arising out of this Agreement or the documents referred to in this Agreement can be discharged by one Party, in whole or in part, by a waiver or renunciation of the claim or right unless in writing signed by the other Parties; (b) no waiver that may be given by a Party will be applicable except in the specific instance for what it is given; and (c) no notice to, or demand on, one Party will be deemed to be a waiver of any obligation of such Party or of the right of the Party giving such notice or demand to take further action without notice or demand as provided in this Agreement or the Transaction Agreements.

Section 7.3     Notices.  All notices and other communications required or permitted hereunder shall be made to the address of a Party listed on the signature page to this Agreement and shall be (a) in writing, (b) effective when given, and (c), in any event, deemed to be given upon receipt or, if earlier: (i) upon delivery, if delivered by hand; (ii) two business days after deposit with FedEx Express or similar recognized international overnight courier service, freight prepaid; or (iii) one business day after facsimile or electronic mail transmission. A Party may change the address to which notices, requests, demands, claims, and other communications hereunder are to be delivered by giving the other Parties advance written notice pursuant to the provisions above.

Section 7.4    <u>Successors and Assigns</u>.  This Agreement shall be binding upon, and inure to the benefit of, the Parties named herein and their respective successors and permitted assigns.  Neither this Agreement nor any rights or obligations of a Party hereunder shall be assigned by a Party (unless to an Affiliate of such Party) without the prior written consent of the other Parties.  This Agreement will be binding upon any permitted assignee of any Party.  No assignment shall have the effect of relieving any Party to this Agreement of any of its obligations hereunder.

Section 7.5    <u>Public Disclosure</u>.  Except as may be required by Law, the Seller shall not issue any statement or communication to any Third Party (other than its respective agents) regarding the subject matter of this Agreement or the transactions contemplated hereby, including, if applicable, the termination of this Agreement and the reasons therefor, without the prior written consent of the Buyer.

Section 7.6    <u>Expenses and Fees</u>.  Whether or not the Closing occurs, all fees and expenses incurred in connection with this transactions contemplated by this Agreement, including all legal, accounting, financial advisory, consulting and all other fees and expenses of Third Parties incurred by a Party in connection with the negotiation and effectuation of the terms and conditions of this Agreement and the transactions contemplated hereby, shall be the obligation of the respective Party incurring such fees and expenses.

Section 7.7    <u>Specific Performance</u>.  The Parties agree that irreparable damage would occur if any provision of this Agreement was not performed in accordance with the terms hereof and that the Parties shall be entitled to specific performance of the terms hereof, in addition to any other remedy to which they are entitled hereunder, at Law or in equity.

Section 7.8    <u>Counterparts</u>.  This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement.  A signed copy of this Agreement delivered by facsimile, electronic mail, or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

Section 7.9    <u>Governing Law</u>.  This Agreement shall, in all respects, be construed in accordance with, and governed by, the Laws of the State of California without regard to conflict of Laws principles.

Section 7.10    <u>Severability</u>.  Any term or provision of this Agreement that is invalid or unenforceable in any situation in any jurisdiction shall not affect the validity or enforceability of the remaining terms and provisions hereof or the validity or enforceability of the offending term or provision in any other situation or in any other jurisdiction.

Section 7.11    <u>Construction</u>.  The Parties have participated jointly in the negotiation and drafting of this Agreement.  In the event an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the Parties and no presumption or burden of proof shall arise favoring or disfavoring any Party by virtue of the authorship of any of the provisions of this Agreement.

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the Agreement Date.

**BUYER:**

**The Litigation Practice Group P.C.**

By: _Daniel S March_ _____
9D494DB1993341E...
Name: Daniel S March
Title: Managing Shareholder

**SELLER:**

**Debt Relief Group**

By: _____
9E00DB060177409...
Name: William Burns
Title: CEO

**APPROVAL OF ASSIGNMENT AND GUARANTEE**

The assignment of the Purchased Accounts set forth in this Agreement as well as the guarantee included therein is hereby approved, and with respect to the Purchased Accounts, the Buyer shall have all rights of Buyer as set forth in this agreement.

**The Litigation Practice Group P.C.**

By: _Daniel S March_ _____
9D494DB1993341E...
Name: Daniel S. March
Title: Managing Shareholder

*[Signature Page to Accounts Receivable Purchase Agreement]*

DocuSign Envelope ID: 110C5A3D-7173-4D69-8766-BD2B37F4927

## EXHIBIT A

## DEFINITIONS

As used in this Agreement, the following terms have the following meanings (terms defined in the singular to have a correlative meaning when used in the plural and vice versa).

(a) "**Action**" shall mean any civil, criminal, or administrative action, claim, suit, demand, charge, citation, reexamination, opposition, interference, decree, injunction, mediation, hearing, notice of violation, demand letter, litigation, proceeding, labor dispute, arbitral action, governmental or other audit, inquiry, criminal prosecution, investigation, unfair labor practice charge, or complaint.

(b) "**Agreement**" shall have the meaning set forth in the preamble to this Agreement.

(c) "**Agreement Date**" shall have the meaning set forth in the preamble to this Agreement.

(d) "**Affiliate**" shall mean (i) with respect to any non-natural Person, any Person that, directly or indirectly, through one or more intermediaries, controls, is controlled by, or is under common control with, such Person and (ii) with respect to any individual, (A) family members of such individual, by blood, adoption, or marriage, (B) such individual's spouse or ex-spouse and (C) any Person that is directly or indirectly under the control of any of the foregoing individuals.  For purposes of this definition, "control" (including with correlative meanings, the terms "controlling," "controlled by," and under "common control with") means the possession, directly or indirectly, of the power to direct the management and policies of a Person, whether through the ownership of voting securities, by contract, or otherwise.

(e) "**Bill of Sale and Assignment and Assumption Agreement**" shall have the meaning set forth in Section 6.2.

(f) "**Business**" shall mean the business of the Seller as conducted on the Agreement Date.

(g) "**Buyer**" shall have the meaning set forth in the preamble to this Agreement.

(h) "**Buyer Indemnified Parties**" shall have the meaning set forth in Section 6.4.

(i) "**Closing**" shall have the meaning set forth in Section 6.1.

(j) "**Closing Date**" shall have the meaning set forth in Section 6.1.

(k) "**Direct Claim**" shall have the meaning set forth in Section 6.6(c).

(l) "**Excluded Assets**" shall have the meaning set forth in Section 2.1.

(m) "**Excluded Liabilities**" shall have the meaning set forth in Section 2.2.

(n) "**Governmental Body**" shall mean any: (i) nation, province, state, county, city, town, village, district, or other jurisdiction of any nature; (ii) federal, provincial, state, local, municipal, foreign, or other government; (iii) governmental or quasi-governmental authority of any nature (including any governmental agency, branch, department, official, or entity and any court or other tribunal); (iv) multi-national organization or body; or (v) body exercising, or entitled to exercise, any administrative, executive, judicial, legislative, police, regulatory, or taxing authority or power of any nature.

DocuSign Envelope ID: 110C5A3D-7172-4D69-8766-BD2B37F5497C

(o)   "**Indebtedness**" means, without duplication and with respect to the Seller, all: (i) indebtedness for borrowed money; (ii) obligations for the deferred purchase price of property or services, (iii) long or short-term obligations evidenced by notes, bonds, debentures or other similar instruments; (iv) obligations under any interest rate, currency swap, or other hedging agreement or arrangement; (v) capital lease obligations; (vi) reimbursement obligations under any letter of credit, banker's acceptance or similar credit transactions; (vii) guarantees made by the Seller on behalf of any third party in respect of obligations of the kind referred to in the foregoing clauses (i) through (vi); and (viii) any unpaid interest, prepayment penalties, premiums, costs and fees that would arise or become due as a result of the prepayment of any of the obligations referred to in the foregoing clauses (i) through (vii).

(p)   "**Indemnified Party**" shall mean a Buyer Indemnified Party or a Seller Indemnified Party, as the case may be, making a claim for indemnification under Article 6.

(q)   "**Indemnifying Party**" shall mean a Party against whom a claim for indemnification is asserted under Article 6.

(r)   "**Knowledge**" shall mean, with respect to the Seller, the actual or constructive knowledge of all facts relevant to this transaction and the transacting parties, after due inquiry.

(s)   "**Law**" shall mean any law, statute, ordinance, regulation, rule, code, notice requirement, court decision, or agency guideline, of any foreign, federal, state, or local Governmental Body.

(t)   "**Liabilities**" shall mean any direct or indirect liability, Indebtedness, obligation, commitment, expense, claim, deficiency, guaranty, or endorsement of, or by, any Person of any type, known or unknown, and whether accrued, absolute, contingent, matured, unmatured, determined or undeterminable, on- or off-balance sheet, or other.

(u)   "**Lien**" shall mean any mortgage, pledge, lien, charge, claim, security interest, adverse claims of ownership or use, restrictions on transfer, defect of title, or other encumbrance of any sort.

(v)   "**Losses**" shall have the meaning set forth in Section 6.4.

(w)   "**Notice of Claim**" shall have the meaning set forth in Section 6.6(c).

(x)   "**Organizational Documents**" shall mean, with respect to a Person, the charter, bylaws, limited liability company agreement, and other organizational documents of such Person, in each case, as amended.

(y)   "**Party**" or "**Parties**" shall have the meaning set forth in the preamble to this Agreement.

(z)   "**Permitted Liens**" shall mean (i) Liens for Taxes not yet delinquent or being contested in good faith by appropriate proceedings, (ii) statutory Liens (including materialmen's, warehousemen's, mechanic's, repairmen's, landlord's, and other similar Liens) arising in the ordinary course of business securing payments not yet delinquent or being contested in good faith by appropriate proceedings, and (iii) restrictive covenants, easements, and defects, imperfections or irregularities of title, if any, of a nature that do not materially and adversely affect the assets or properties subject thereto.

(aa)   "**Person**" shall mean any individual, corporation (including any non-profit corporation), general or limited partnership, limited liability company, joint venture, estate, trust, association, organization, labor union, Governmental Body, or other entity.

DocuSign Envelope ID: 110C5A3D-7173-4D69-8756-BD2B37E4827

(bb)    "**Purchase Price**" shall have the meaning set forth in <u>Section 2.3</u>.

(cc)    "**Purchased Accounts**" shall have the meaning set forth in the Recitals.

(dd)    "**Seller**" shall have the meaning set forth in the preamble to this Agreement.

(ee)    "**Seller Indemnified Parties**" shall have the meaning set forth in <u>Section 6.5</u>.

(ff)    "**Tax**" or "**Taxes**" shall mean any U.S. federal, state, local or non-U.S. income, gross receipts, license, payroll, employment, excise, severance, stamp, occupation, premium, windfall profits, environmental, customs duties, capital stock, escheat, franchise, profits, withholding, social security, unemployment, disability, real property, personal property, sales, use, transfer, registration, value added, alternative or add-on minimum, estimated, or other tax of any kind whatsoever, including any interest, penalty, or addition thereto, whether disputed or not.

(gg)    "**Tax Returns**" means any return, declaration, report, claim for refund, or information return or statement relating to Taxes, including any schedule or attachment thereto, and including any amendment thereof.

(hh)    "**Third Party**" or "**Third Parties**" shall mean any Person other than the Parties or their respective Affiliates.

(ii)    "**Third-party Claim**" shall have the meaning set forth in <u>Section 6.6(a)</u>.

(jj)    "**Transaction Agreements**" shall mean the Bill of Sale and Assignment and Assumption Agreement, and each other agreement, instrument, and/or certificate contemplated by this Agreement or such other agreements to be executed in connection with the transactions contemplated hereby or thereby.

(kk)    "**Upfront Cash Payment**" shall have the meaning set forth in <u>Section 2.3</u>.

(ll)    "**Wire Instructions**" shall have the meaning set forth in <u>Section 2.3</u>.

DocuSign Envelope ID: 110C5A3D-7172-4D69-8756-BD2B37E4827

## EXHIBIT B

**FORM OF BILL OF SALE AND ASSIGNMENT AND ASSUMPTION AGREEMENT**

THIS BILL OF SALE AND ASSIGNMENT AND ASSUMPTION AGREEMENT (this **"Agreement"**), is made by and between **Buyer**, and **Seller**. Each of the Seller and the Buyer are sometimes referred to herein, individually, as a **"Party"** and, collectively, as the **"Parties."**

WHEREAS, the Buyer and the Seller have entered into that certain Accounts Receivable Purchase Agreement, of even date herewith (the **"Purchase Agreement"**), pursuant to which the Seller has agreed to sell, assign, transfer, and deliver to the Buyer, and the Buyer has agreed to purchase, acquire, and accept from the Seller, all right, title, and interest of the Seller in and to the Purchased Accounts, free and clear of any Liens.

NOW, THEREFORE, in consideration of the covenants and representations set forth herein, and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the Parties, intending to be legally bound, agree as follows:

1.      Defined Terms.  Capitalized terms used but not otherwise defined in this Agreement shall have the meanings assigned to such terms in the Purchase Agreement.

2.      Sale of Purchased Accounts; Assignment.  The Seller hereby sells, assigns, transfers, and delivers to the Buyer, and the Buyer hereby purchases, acquires, and accepts from the Seller, all right, title, and interest of the Seller in and to the Purchased Accounts, free and clear of any Liens.

3.      Further Assurances.  Each of the Parties agrees, from time to time, at the request of the any other Party, to execute and deliver such other instruments of conveyance, power of attorney, sale, transfer, or assignment and take such other actions as such other Party may reasonably request in order to more effectively consummate the transactions contemplated by this Agreement.

4.      Terms of the Purchase Agreement.  This Agreement is intended to evidence the consummation of the transactions contemplated by the Purchase Agreement and is subject to the terms and conditions set forth in the Purchase Agreement.   The terms of the Purchase Agreement, including, but not limited to, the representations, warranties, covenants, agreements, and indemnities relating to the Purchased Accounts are incorporated herein by this reference.  The Parties acknowledge and agree that the representations, warranties, covenants, agreements, and indemnities contained in the Purchase Agreement shall not be superseded hereby but shall remain in full force and effect to the full extent provided therein.  In the event of any conflict or inconsistency between the terms of the Purchase Agreement and the terms hereof, the terms of the Purchase Agreement shall govern.

5.      Counterparts.  This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement.  A signed copy of this Agreement delivered by facsimile, electronic mail, or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

*[Remainder of page intentionally left blank.]*

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date first above written.

**BUYER: The Litigation Practice Group P.C.**

By: _____
   Name: Daniel S. March
   Title: Managing Shareholder

**SELLER:**

**Debt Relief Group**

By: _____
   Name: William Burns
   Title: CEO

DocuSign Envelope ID: 110C5A8D-7172-4D69-8766-BD2B37LE4927

**Schedule 2.3**
**Wire Instructions**

<u>**$275,844.90**</u>

**Account Holder Name: Debt Relief Group**

**Address: 1800 Old Okeechobee Rd Suite 200, West Palm Beach, FL 33409**

**Routing Number:** ███████

**Account Number:** ███████

| Full Name | Customer I | Company | Assigned T | Enrolled Date | Monthly Payment |
|---|---|---|---|---|---|
| | BATLLC-70 | Debt Relief | | 2/10/2023 | 291.06 |
| | BATLLC-70 | Debt Relief | | 2/9/2023 | 268.99 |
| | BATLLC-70 | Debt Relief | | 2/9/2023 | 251.96 |
| | BATLLC-71 | Debt Relief | | 2/10/2023 | 271.93 |
| | BATLLC-71 | Debt Relief | | 2/11/2023 | 260.93 |
| | BATLLC-71 | Debt Relief | | 2/14/2023 | 253.46 |
| | BATLLC-70 | Debt Relief | | 2/9/2023 | 301.75 |
| | BATLLC-70 | Debt Relief | | 2/9/2023 | 252.91 |
| | BATLLC-71 | Debt Relief | | 2/9/2023 | 283.17 |
| | BATLLC-71 | Debt Relief | | 2/14/2023 | 253.12 |
| | BATLLC-71 | Debt Relief | | 2/15/2023 | 252.89 |
| | BATLLC-71 | Debt Relief | | 2/15/2023 | 251.97 |
| | BATLLC-71 | Debt Relief | | 2/15/2023 | 262.2 |
| | BATLLC-71 | Debt Relief | | 2/11/2023 | 251.04 |
| | BATLLC-68 | Debt Relief | | 1/5/2023 | 251.75 |
| | BATLLC-69 | Debt Relief | | 1/13/2023 | 250.97 |
| | BATLLC-69 | Debt Relief | | 1/25/2023 | 252.95 |
| | BATLLC-70 | Debt Relief | | 2/10/2023 | 259.24 |
| | BATLLC-70 | Debt Relief | | 2/9/2023 | 596.38 |
| | BATLLC-65 | Debt Relief | | 10/26/2022 | 255.53 |
| | BATLLC-65 | Debt Relief | | 11/4/2022 | 258.02 |
| | BATLLC-65 | Debt Relief | | 11/7/2022 | 251.75 |
| | BATLLC-65 | Debt Relief | | 11/10/2022 | 253.36 |
| | BATLLC-65 | Debt Relief | | 11/10/2022 | 251.57 |
| | BATLLC-66 | Debt Relief | | 11/14/2022 | 294.53 |
| | BATLLC-66 | Debt Relief | | 11/16/2022 | 253.24 |
| | BATLLC-66 | Debt Relief | | 11/16/2022 | 250.99 |
| | BATLLC-66 | Debt Relief | | 11/17/2022 | 253.63 |
| | BATLLC-66 | Debt Relief | | 11/23/2022 | 279.12 |
| | BATLLC-67 | Debt Relief | | 12/7/2022 | 279.34 |
| | BATLLC-67 | Debt Relief | | 12/23/2022 | 288.08 |
| | BATLLC-66 | Debt Relief | | 11/28/2022 | 251.59 |
| | | | | | |
| | BATLLC-65 | Debt Relief | | 10/24/2022 | 258.19 |
| | BATLLC-66 | Debt Relief | | 11/26/2022 | 251.05 |
| | BATLLC-66 | Debt Relief | | 12/2/2022 | 253.44 |
| | BATLLC-64 | Debt Relief | | 10/4/2022 | 392.61 |
| | BATLLC-64 | Debt Relief | | 10/19/2022 | 250.77 |
| | BATLLC-64 | Debt Relief | | 10/18/2022 | 263.3 |
| | BATLLC-65 | Debt Relief | | 10/26/2022 | 251.19 |
| | BATLLC-65 | Debt Relief | | 10/27/2022 | 261.37 |
| | BATLLC-65 | Debt Relief | | 10/27/2022 | 250.89 |
| | BATLLC-65 | Debt Relief | | 10/31/2022 | 287.94 |
| | BATLLC-65 | Debt Relief | | 11/1/2022 | 248.15 |
| | BATLLC-65 | Debt Relief | | 11/4/2022 | 266.13 |
| | BATLLC-65 | Debt Relief | | 11/8/2022 | 269.41 |

| | | | |
|---|---|---|---|
| BATLLC-65 | Debt Relief Group LLC | 11/8/2022 | 501.01 |
| BATLLC-66 | Debt Relief Group LLC | 11/15/2022 | 312.61 |
| BATLLC-66 | Debt Relief Group LLC | 11/15/2022 | 253.92 |
| BATLLC-66 | Debt Relief Group LLC | 11/16/2022 | 252.2 |
| BATLLC-66 | Debt Relief Group LLC | 11/28/2022 | 290.83 |
| BATLLC-66 | Debt Relief Group LLC | 12/1/2022 | 358.96 |
| BATLLC-67 | Debt Relief Group LLC | 12/6/2022 | 596.38 |
| BATLLC-67 | Debt Relief Group LLC | 12/7/2022 | 256.47 |
| BATLLC-67 | Debt Relief Group LLC | 12/8/2022 | 368.13 |
| BATLLC-67 | Debt Relief Group LLC | 12/23/2022 | 251.63 |
| BATLLC-67 | Debt Relief Group LLC | 12/27/2022 | 276.92 |
| BATLLC-68 | Debt Relief Group LLC | 12/29/2022 | 297.35 |
| BATLLC-68 | Debt Relief Group LLC | 1/5/2023 | 250.33 |
| BATLLC-69 | Debt Relief Group LLC | 1/12/2023 | 269.35 |
| BATLLC-69 | Debt Relief Group LLC | 1/17/2023 | 252.84 |
| BATLLC-69 | Debt Relief Group LLC | 1/24/2023 | 250.79 |
| BATLLC-69 | Debt Relief Group LLC | 1/24/2023 | 253.52 |
| BATLLC-70 | Debt Relief Group LLC | 1/30/2023 | 291.94 |
| BATLLC-65 | Debt Relief Group LLC | 11/9/2022 | 268.16 |
| BATLLC-65 | Debt Relief Group LLC | 11/10/2022 | 334.12 |
| BATLLC-67 | Debt Relief Group LLC | 12/14/2022 | 504.1 |
| BATLLC-67 | Debt Relief Group LLC | 12/19/2022 | 249.15 |
| BATLLC-63 | Debt Relief Group LLC | 1/4/2023 | 613.99 |
| BATLLC-64 | Debt Relief Group LLC | 10/13/2022 | 254.9 |
| BATLLC-64 | Debt Relief Group LLC | 10/13/2022 | 250.35 |
| BATLLC-65 | Debt Relief Group LLC | 10/25/2022 | 254.99 |
| BATLLC-65 | Debt Relief Group LLC | 10/28/2022 | 284.7 |
| BATLLC-65 | Debt Relief Group LLC | 10/31/2022 | 277.65 |
| BATLLC-65 | Debt Relief Group LLC | 11/1/2022 | 337.3 |
| BATLLC-65 | Debt Relief Group LLC | 11/4/2022 | 257.75 |
| BATLLC-65 | Debt Relief Group LLC | 11/10/2022 | 252.1 |
| BATLLC-65 | Debt Relief Group LLC | 11/11/2022 | 298.67 |
| BATLLC-65 | Debt Relief Group LLC | 11/14/2022 | 275.65 |
| BATLLC-66 | Debt Relief Group LLC | 11/21/2022 | 253.98 |
| BATLLC-66 | Debt Relief Group LLC | 12/5/2022 | 262.87 |
| BATLLC-67 | Debt Relief Group LLC | 12/6/2022 | 254.86 |
| BATLLC-67 | Debt Relief Group LLC | 12/7/2022 | 252.3 |
| BATLLC-67 | Debt Relief Group LLC | 12/13/2022 | 251.44 |
| BATLLC-67 | Debt Relief Group LLC | 12/19/2022 | 284.41 |
| BATLLC-67 | Debt Relief Group LLC | 12/19/2022 | 223.38 |
| BATLLC-67 | Debt Relief Group LLC | 12/16/2022 | 263.4 |
| BATLLC-67 | Debt Relief Group LLC | 1/24/2023 | 257.23 |
| BATLLC-67 | Debt Relief Group LLC | 12/27/2022 | 253.77 |
| BATLLC-67 | Debt Relief Group LLC | 1/18/2023 | 460.38 |
| BATLLC-68 | Debt Relief Group LLC | 12/30/2022 | 363.45 |
| BATLLC-68 | Debt Relief Group LLC | 12/30/2022 | 254.07 |
| BATLLC-68 | Debt Relief Group LLC | 1/4/2023 | 251.36 |

| | | | |
|---|---|---|---|
| BATLLC-68 | Debt Relief Group LLC | 1/3/2023 | 282.69 |
| BATLLC-68 | Debt Relief Group LLC | 1/5/2023 | 264.08 |
| BATLLC-68 | Debt Relief Group LLC | 1/5/2023 | 251.8 |
| BATLLC-68 | Debt Relief Group LLC | 1/3/2023 | 255.01 |
| BATLLC-68 | Debt Relief Group LLC | 1/4/2023 | 289.75 |
| BATLLC-68 | Debt Relief Group LLC | 1/5/2023 | 248.13 |
| BATLLC-68 | Debt Relief Group LLC | 1/5/2023 | 272.24 |
| BATLLC-68 | Debt Relief Group LLC | 1/4/2023 | 282.67 |
| BATLLC-68 | Debt Relief Group LLC | 1/4/2023 | 258.58 |
| BATLLC-68 | Debt Relief Group LLC | 1/4/2023 | 252.18 |
| BATLLC-68 | Debt Relief Group LLC | 1/5/2023 | 349.81 |
| BATLLC-68 | Debt Relief Group LLC | 1/6/2023 | 250.11 |
| BATLLC-68 | Debt Relief Group LLC | 1/6/2023 | 250.96 |
| BATLLC-68 | Debt Relief Group LLC | 1/6/2023 | 251.17 |
| BATLLC-68 | Debt Relief Group LLC | 1/9/2023 | 251.03 |
| BATLLC-68 | Debt Relief Group LLC | 1/9/2023 | 570.28 |
| BATLLC-68 | Debt Relief Group LLC | 1/9/2023 | 253.07 |
| BATLLC-68 | Debt Relief Group LLC | 1/9/2023 | 254.38 |
| BATLLC-68 | Debt Relief Group LLC | 1/10/2023 | 609.58 |
| BATLLC-68 | Debt Relief Group LLC | 1/10/2023 | 327.94 |
| BATLLC-68 | Debt Relief Group LLC | 1/9/2023 | 484.84 |
| BATLLC-68 | Debt Relief Group LLC | 1/9/2023 | 252.62 |
| BATLLC-68 | Debt Relief Group LLC | 1/10/2023 | 284.52 |
| BATLLC-68 | Debt Relief Group LLC | 1/9/2023 | 313.71 |
| BATLLC-68 | Debt Relief Group LLC | 1/10/2023 | 260.38 |
| BATLLC-68 | Debt Relief Group LLC | 1/10/2023 | 309.07 |
| BATLLC-69 | Debt Relief Group LLC | 1/11/2023 | 455.23 |
| BATLLC-69 | Debt Relief Group LLC | 1/11/2023 | 435.56 |
| BATLLC-69 | Debt Relief Group LLC | 1/11/2023 | 252.57 |
| BATLLC-69 | Debt Relief Group LLC | 1/11/2023 | 304.83 |
| BATLLC-69 | Debt Relief Group LLC | 1/11/2023 | 258.93 |
| BATLLC-69 | Debt Relief Group LLC | 1/11/2023 | 277.47 |
| BATLLC-69 | Debt Relief Group LLC | 1/12/2023 | 255.56 |
| BATLLC-69 | Debt Relief Group LLC | 1/12/2023 | 259.66 |
| BATLLC-69 | Debt Relief Group LLC | 1/12/2023 | 430.47 |
| BATLLC-69 | Debt Relief Group LLC | 1/12/2023 | 258.47 |
| BATLLC-69 | Debt Relief Group LLC | 1/12/2023 | 332.27 |
| BATLLC-69 | Debt Relief Group LLC | 1/12/2023 | 250.22 |
| BATLLC-69 | Debt Relief Group LLC | 1/12/2023 | 253.78 |
| BATLLC-69 | Debt Relief Group LLC | 1/13/2023 | 254.53 |
| BATLLC-69 | Debt Relief Group LLC | 1/17/2023 | 292.21 |
| BATLLC-69 | Debt Relief Group LLC | 1/17/2023 | 297.01 |
| BATLLC-69 | Debt Relief Group LLC | 1/17/2023 | 275.07 |
| BATLLC-69 | Debt Relief Group LLC | 1/17/2023 | 251.65 |
| BATLLC-69 | Debt Relief Group LLC | 1/20/2023 | 252.76 |
| BATLLC-69 | Debt Relief Group LLC | 1/17/2023 | 435.82 |
| BATLLC-69 | Debt Relief Group LLC | 1/17/2023 | 347.79 |

| | | | |
|---|---|---|---|
| BATLLC-69 | Debt Relief Group LLC | 1/17/2023 | 344.23 |
| BATLLC-69 | Debt Relief Group LLC | 1/18/2023 | 252.09 |
| BATLLC-69 | Debt Relief Group LLC | 1/19/2023 | 334.11 |
| BATLLC-69 | Debt Relief Group LLC | 1/18/2023 | 257.66 |
| BATLLC-69 | Debt Relief Group LLC | 1/18/2023 | 280.46 |
| BATLLC-69 | Debt Relief Group LLC | 1/18/2023 | 760.88 |
| BATLLC-69 | Debt Relief Group LLC | 1/19/2023 | 277.89 |
| BATLLC-69 | Debt Relief Group LLC | 1/18/2023 | 251.4 |
| BATLLC-69 | Debt Relief Group LLC | 1/18/2023 | 255.01 |
| BATLLC-69 | Debt Relief Group LLC | 1/19/2023 | 529.46 |
| BATLLC-69 | Debt Relief Group LLC | 1/19/2023 | 270.33 |
| BATLLC-69 | Debt Relief Group LLC | 1/19/2023 | 253.93 |
| BATLLC-69 | Debt Relief Group LLC | 1/19/2023 | 309.45 |
| BATLLC-69 | Debt Relief Group LLC | 1/19/2023 | 252.42 |
| BATLLC-69 | Debt Relief Group LLC | 1/19/2023 | 253.36 |
| BATLLC-69 | Debt Relief Group LLC | 1/20/2023 | 251.36 |
| BATLLC-69 | Debt Relief Group LLC | 1/20/2023 | 266.52 |
| BATLLC-69 | Debt Relief Group LLC | 1/20/2023 | 258.59 |
| BATLLC-69 | Debt Relief Group LLC | 1/20/2023 | 254.82 |
| BATLLC-69 | Debt Relief Group LLC | 1/20/2023 | 207.72 |
| BATLLC-69 | Debt Relief Group LLC | 1/23/2023 | 256.84 |
| BATLLC-69 | Debt Relief Group LLC | 1/24/2023 | 314.31 |
| BATLLC-69 | Debt Relief Group LLC | 1/24/2023 | 281.06 |
| BATLLC-69 | Debt Relief Group LLC | 1/23/2023 | 253.26 |
| BATLLC-69 | Debt Relief Group LLC | 1/23/2023 | 321.83 |
| BATLLC-69 | Debt Relief Group LLC | 1/23/2023 | 251.04 |
| BATLLC-69 | Debt Relief Group LLC | 1/23/2023 | 283.49 |
| BATLLC-69 | Debt Relief Group LLC | 1/23/2023 | 252.06 |
| BATLLC-69 | Debt Relief Group LLC | 1/24/2023 | 269.67 |
| BATLLC-69 | Debt Relief Group LLC | 1/24/2023 | 258.33 |
| BATLLC-69 | Debt Relief Group LLC | 1/24/2023 | 251.41 |
| BATLLC-69 | Debt Relief Group LLC | 1/24/2023 | 252.1 |
| BATLLC-69 | Debt Relief Group LLC | 1/24/2023 | 292.8 |
| BATLLC-69 | Debt Relief Group LLC | 1/24/2023 | 256.56 |
| BATLLC-69 | Debt Relief Group LLC | 1/24/2023 | 285.29 |
| BATLLC-69 | Debt Relief Group LLC | 1/24/2023 | 477.3 |
| BATLLC-69 | Debt Relief Group LLC | 1/24/2023 | 284.27 |
| BATLLC-69 | Debt Relief Group LLC | 1/24/2023 | 254.14 |
| BATLLC-69 | Debt Relief Group LLC | 1/24/2023 | 250.71 |
| BATLLC-69 | Debt Relief Group LLC | 1/24/2023 | 253.12 |
| BATLLC-69 | Debt Relief Group LLC | 1/24/2023 | 271.77 |
| BATLLC-69 | Debt Relief Group LLC | 1/25/2023 | 281.48 |
| BATLLC-69 | Debt Relief Group LLC | 1/26/2023 | 259.98 |
| BATLLC-69 | Debt Relief Group LLC | 1/25/2023 | 257.61 |
| BATLLC-69 | Debt Relief Group LLC | 1/25/2023 | 262.03 |
| BATLLC-69 | Debt Relief Group LLC | 1/25/2023 | 290.13 |
| BATLLC-69 | Debt Relief Group LLC | 1/25/2023 | 251.53 |

| | | | |
|---|---|---|---|
| BATLLC-69! | Debt Relief Group LLC | 1/25/2023 | 264.92 |
| BATLLC-69! | Debt Relief Group LLC | 1/26/2023 | 253.91 |
| BATLLC-69! | Debt Relief Group LLC | 1/25/2023 | 259.85 |
| BATLLC-69! | Debt Relief Group LLC | 1/26/2023 | 251.74 |
| BATLLC-69! | Debt Relief Group LLC | 1/25/2023 | 329.98 |
| BATLLC-70( | Debt Relief Group LLC | 1/26/2023 | 498.42 |
| BATLLC-70( | Debt Relief Group LLC | 1/27/2023 | 253.55 |
| BATLLC-70( | Debt Relief Group LLC | 1/26/2023 | 251.37 |
| BATLLC-70( | Debt Relief Group LLC | 1/26/2023 | 286.51 |
| BATLLC-70( | Debt Relief Group LLC | 1/28/2023 | 251.83 |
| BATLLC-70( | Debt Relief Group LLC | 1/26/2023 | 290.01 |
| BATLLC-70( | Debt Relief Group LLC | 1/27/2023 | 253.49 |
| BATLLC-70( | Debt Relief Group LLC | 1/27/2023 | 355.29 |
| BATLLC-70( | Debt Relief Group LLC | 1/27/2023 | 690.36 |
| BATLLC-70( | Debt Relief Group LLC | 1/27/2023 | 320.22 |
| BATLLC-70( | Debt Relief Group LLC | 1/28/2023 | 253.02 |
| BATLLC-70( | Debt Relief Group LLC | 1/31/2023 | 262.26 |
| BATLLC-70( | Debt Relief Group LLC | 1/27/2023 | 393 |
| BATLLC-70( | Debt Relief Group LLC | 1/27/2023 | 255.81 |
| BATLLC-70( | Debt Relief Group LLC | 1/28/2023 | 253.94 |
| BATLLC-70( | Debt Relief Group LLC | 1/27/2023 | 446.38 |
| BATLLC-70( | Debt Relief Group LLC | 1/27/2023 | 265.31 |
| BATLLC-70( | Debt Relief Group LLC | 1/28/2023 | 317.38 |
| BATLLC-70( | Debt Relief Group LLC | 1/27/2023 | 251.81 |
| BATLLC-70( | Debt Relief Group LLC | 1/27/2023 | 257.68 |
| BATLLC-70( | Debt Relief Group LLC | 1/28/2023 | 278.73 |
| BATLLC-70( | Debt Relief Group LLC | 1/27/2023 | 251.32 |
| BATLLC-70. | Debt Relief Group LLC | 1/30/2023 | 253.01 |
| BATLLC-70. | Debt Relief Group LLC | 2/7/2023 | 252.78 |
| BATLLC-70. | Debt Relief Group LLC | 1/30/2023 | 268.36 |
| BATLLC-70. | Debt Relief Group LLC | 1/30/2023 | 251.71 |
| BATLLC-70. | Debt Relief Group LLC | 1/30/2023 | 252.67 |
| BATLLC-70. | Debt Relief Group LLC | 1/30/2023 | 250.79 |
| BATLLC-70. | Debt Relief Group LLC | 1/31/2023 | 262.02 |
| BATLLC-70. | Debt Relief Group LLC | 1/31/2023 | 472.63 |
| BATLLC-70. | Debt Relief Group LLC | 1/31/2023 | 252.95 |
| BATLLC-70. | Debt Relief Group LLC | 1/31/2023 | 253.6 |
| BATLLC-70. | Debt Relief Group LLC | 1/31/2023 | 253.86 |
| BATLLC-70. | Debt Relief Group LLC | 1/31/2023 | 252.45 |
| BATLLC-70. | Debt Relief Group LLC | 1/31/2023 | 254.37 |
| BATLLC-70. | Debt Relief Group LLC | 1/31/2023 | 252.13 |
| BATLLC-70. | Debt Relief Group LLC | 1/31/2023 | 251.36 |
| BATLLC-70. | Debt Relief Group LLC | 1/31/2023 | 265.42 |
| BATLLC-70. | Debt Relief Group LLC | 2/1/2023 | 250.71 |
| BATLLC-70. | Debt Relief Group LLC | 2/1/2023 | 240.14 |
| BATLLC-70. | Debt Relief Group LLC | 2/2/2023 | 265.3 |
| BATLLC-70. | Debt Relief Group LLC | 2/2/2023 | 267.96 |

| | | | |
|---|---|---|---|
| BATLLC-70 | Debt Relief Group LLC | 2/2/2023 | 255.74 |
| BATLLC-70 | Debt Relief Group LLC | 2/2/2023 | 253.46 |
| BATLLC-70 | Debt Relief Group LLC | 2/2/2023 | 247.19 |
| BATLLC-70 | Debt Relief Group LLC | 2/2/2023 | 257.88 |
| BATLLC-70 | Debt Relief Group LLC | 2/3/2023 | 252.69 |
| BATLLC-70 | Debt Relief Group LLC | 2/3/2023 | 250.81 |
| BATLLC-70 | Debt Relief Group LLC | 2/3/2023 | 363.84 |
| BATLLC-70 | Debt Relief Group LLC | 2/6/2023 | 276.12 |
| BATLLC-70 | Debt Relief Group LLC | 2/8/2023 | 256.84 |
| BATLLC-70 | Debt Relief Group LLC | 2/7/2023 | 307.57 |
| BATLLC-70 | Debt Relief Group LLC | 2/7/2023 | 307.94 |

DocuSign Envelope ID: 110E5A3D-7172-4D69-8766-BD2B37E4927C

| Second Payment Amount | Third Payment Amount | Fourth Pay | Fifth Payment Amou | Debt Enroll | Total Progr |
|---|---|---|---|---|---|
| 291.06 | 291.06 | 291.06 | 291.06 | 22249 | 11642.35 |
| 268.99 | 268.99 | 268.99 | 268.99 | 11836 | 6455.72 |
| 251.96 | 251.96 | 251.96 | 251.96 | 17287 | 10078.52 |
| 271.93 | 271.93 | 271.93 | 271.93 | 18057 | 9789.63 |
| 260.93 | 260.93 | 260.93 | 260.93 | 12341 | 7827.8 |
| 253.46 | 253.46 | 253.46 | 253.46 | 8976 | 6083.04 |
| 301.75 | 301.75 | 301.75 | 301.75 | 43105 | 20518.92 |
| 252.91 | 252.91 | 252.91 | 252.91 | 8461.19 | 5058.24 |
| 283.17 | 283.17 | 283.17 | 283.17 | 8966 | 6796.12 |
| 253.12 | 253.12 | 253.12 | 253.12 | 11064 | 6074.88 |
| 252.89 | 252.89 | 252.89 | 252.89 | 10434 | 6069.36 |
| 251.97 | 251.97 | 251.97 | 251.97 | 7001.49 | 4535.43 |
| 262.2 | 262.2 | 262.2 | 262.2 | 12792 | 7079.46 |
| 251.04 | 251.04 | 251.04 | 251.04 | 7733 | 6024.96 |
| 251.75 | 251.75 | 251.75 | 251.75 | 7934 | 6042.1 |
| 250.97 | 250.97 | 250.97 | 250.97 | 12367 | 8030.96 |
| 252.95 | 252.95 | 252.95 | 252.95 | 10156 | 6576.74 |
| 259.24 | 259.24 | 259.24 | 259.24 | 6438.68 | 4666.33 |
| 596.38 | 271.47 | 246.47 | 246.47 | 14383 | 9844.26 |
| 255.53 | 255.53 | 255.53 | 255.53 | 12732 | 7154.84 |
| 258.02 | 258.02 | 258.02 | 258.02 | 11084 | 6192.52 |
| 251.75 | 251.75 | 251.75 | 251.75 | 9095 | 6293.82 |
| 253.36 | 253.36 | 253.36 | 253.36 | 11213 | 6334.05 |
| 251.57 | 251.57 | 251.57 | 251.57 | 13967 | 9056.48 |
| 294.53 | 294.53 | 294.53 | 294.53 | 22080 | 11486.82 |
| 253.24 | 253.24 | 253.24 | 253.24 | 13072 | 7850.56 |
| 250.99 | 250.99 | 250.99 | 250.99 | 16344 | 9286.46 |
| 253.63 | 253.63 | 253.63 | 253.63 | 9205 | 6087.17 |
| 279.12 | 279.12 | 279.12 | 279.12 | 20362 | 10885.52 |
| 279.34 | 279.34 | 279.34 | 279.34 | 18296 | 11173.6 |
| 288.08 | 288.08 | 288.08 | 288.08 | 19170 | 11811.28 |
| 251.59 | 276.59 | 251.59 | 251.59 | 6814 | 4805.17 |
| 2/7/2023 | | | | 7767 | 3 |
| 2/7/2023 | | | | 12541 | 2 |
| 2/7/2023 | | | | 8567 | 2 |
| 2/7/2023 | | | | 26661 | 1 |
| 2/7/2023 | | | | 11579 | 1 |
| 2/7/2023 | | | | 16215 | 1 |
| 2/7/2023 | | | | 3536 | 1 |
| 2/7/2023 | | | | 10999 | 1 |
| 2/7/2023 | | | | 8428 | 1 |
| 2/7/2023 | | | | 21892 | 1 |
| 2/7/2023 | | | | 7285 | 1 |
| 2/7/2023 | | | | 11640 | 1 |
| 2/7/2023 | | | | 13842 | 1 |

| | | |
|---|---|---|
| 2/7/2023 | 38440 | 1 |
| 2/7/2023 | 19461 | 1 |
| 2/7/2023 | 12153 | 1 |
| 2/7/2023 | 9121 | 1 |
| 2/7/2023 | 16667 | 1 |
| 2/7/2023 | 27008 | 1 |
| 2/7/2023 | 7214 | 1 |
| 2/7/2023 | 12350 | 1 |
| 2/7/2023 | 18634 | 1 |
| 2/7/2023 | 15081 | 1 |
| 2/7/2023 | 12507 | 1 |
| 2/7/2023 | 17797 | 1 |
| 2/7/2023 | 9723.32 | 1 |
| 2/7/2023 | 11070 | 1 |
| 2/7/2023 | 12517 | 1 |
| 2/7/2023 | 15000 | 1 |
| 2/7/2023 | 6578 | 1 |
| 2/7/2023 | 26820 | 1 |
| 2/10/2023 | 14724 | 2 |
| 2/10/2023 | 27170 | 2 |
| 2/10/2023 | 27958 | 2 |
| 2/10/2023 | 7333 | 2 |
| 2/10/2023 | 40073 | 1 |
| 2/10/2023 | 9511 | 1 |
| 2/10/2023 | 13818 | 1 |
| 2/10/2023 | 10574 | 1 |
| 2/10/2023 | 16949 | 1 |
| 2/10/2023 | 20470 | 1 |
| 2/10/2023 | 11564 | 1 |
| 2/10/2023 | 15214.8 | 1 |
| 2/10/2023 | 9835 | 1 |
| 2/10/2023 | 13486 | 1 |
| 2/10/2023 | 20488 | 1 |
| 2/10/2023 | 7880 | 1 |
| 2/10/2023 | 11892 | 1 |
| 2/10/2023 | 12999 | 1 |
| 2/10/2023 | 8135 | 1 |
| 2/10/2023 | 7443 | 1 |
| 2/10/2023 | 7987 | 1 |
| 2/10/2023 | 40045 | 1 |
| 2/10/2023 | 14316 | 1 |
| 2/10/2023 | 12868 | 1 |
| 2/10/2023 | 14427 | 1 |
| 2/10/2023 | 41600 | 1 |
| 2/10/2023 | 30027 | 1 |
| 2/10/2023 | 9011 | 1 |
| 2/10/2023 | 9299 | 1 |

| | | |
|---|---|---|
| 2/10/2023 | 15526 | 1 |
| 2/10/2023 | 10062 | 1 |
| 2/10/2023 | 8881 | 1 |
| 2/10/2023 | 20682 | 1 |
| 2/10/2023 | 18232 | 1 |
| 2/10/2023 | 8171 | 1 |
| 2/10/2023 | 12059 | 1 |
| 2/10/2023 | 12774.11 | 1 |
| 2/10/2023 | 7486 | 1 |
| 2/10/2023 | 12464 | 1 |
| 2/10/2023 | 17378 | 1 |
| 2/10/2023 | 12298 | 1 |
| 2/10/2023 | 7950 | 1 |
| 2/10/2023 | 9061 | 1 |
| 2/10/2023 | 12814 | 1 |
| 2/10/2023 | 32496 | 1 |
| 2/10/2023 | 6410 | 1 |
| 2/10/2023 | 16251 | 1 |
| 2/10/2023 | 35191 | 1 |
| 2/10/2023 | 23818 | 1 |
| 2/10/2023 | 18646 | 1 |
| 2/10/2023 | 9615 | 1 |
| 2/10/2023 | 18814 | 1 |
| 2/10/2023 | 34773 | 1 |
| 2/10/2023 | 6560 | 1 |
| 2/10/2023 | 21269 | 1 |
| 2/10/2023 | 41011 | 1 |
| 2/10/2023 | 23258 | 1 |
| 2/10/2023 | 10131 | 1 |
| 2/10/2023 | 21441 | 1 |
| 2/10/2023 | 15053 | 1 |
| 2/10/2023 | 20696 | 1 |
| 2/10/2023 | 7561 | 1 |
| 2/10/2023 | 11196 | 1 |
| 2/10/2023 | 11984 | 1 |
| 2/10/2023 | 14588 | 1 |
| 2/10/2023 | 23589 | 1 |
| 2/10/2023 | 14505 | 1 |
| 2/10/2023 | 10793 | 1 |
| 2/10/2023 | 8110 | 1 |
| 2/10/2023 | 11750 | 1 |
| 2/10/2023 | 9630 | 1 |
| 2/10/2023 | 15316 | 1 |
| 2/10/2023 | 10647 | 1 |
| 2/10/2023 | 8688 | 1 |
| 2/10/2023 | 23276 | 1 |
| 2/10/2023 | 28732 | 1 |

| | | |
|---|---|---|
| 2/10/2023 | 28326 | 1 |
| 2/10/2023 | 8008 | 1 |
| 2/10/2023 | 27169 | 1 |
| 2/10/2023 | 10002 | 1 |
| 2/10/2023 | 16304 | 1 |
| 2/10/2023 | 39870 | 1 |
| 2/10/2023 | 9335 | 1 |
| 2/10/2023 | 8652 | 1 |
| 2/10/2023 | 7614 | 1 |
| 2/10/2023 | 32172 | 1 |
| 2/10/2023 | 17892 | 1 |
| 2/10/2023 | 6087 | 1 |
| 2/10/2023 | 24351 | 1 |
| 2/10/2023 | 8511 | 1 |
| 2/10/2023 | 7064 | 1 |
| 2/10/2023 | 15498 | 1 |
| 2/10/2023 | 11667 | 1 |
| 2/10/2023 | 18538 | 1 |
| 2/10/2023 | 23025 | 1 |
| 2/10/2023 | 11452 | 1 |
| 2/10/2023 | 13754 | 1 |
| 2/10/2023 | 15255 | 1 |
| 2/10/2023 | 19523 | 1 |
| 2/10/2023 | 6350 | 1 |
| 2/10/2023 | 15459.21 | 1 |
| 2/10/2023 | 9914 | 1 |
| 2/10/2023 | 14968.84 | 1 |
| 2/10/2023 | 7185.36 | 1 |
| 2/10/2023 | 6012 | 1 |
| 2/10/2023 | 9717 | 1 |
| 2/10/2023 | 9540 | 1 |
| 2/10/2023 | 9835 | 1 |
| 2/10/2023 | 12790 | 1 |
| 2/10/2023 | 18306 | 1 |
| 2/10/2023 | 16192 | 1 |
| 2/10/2023 | 40269 | 1 |
| 2/10/2023 | 21473 | 1 |
| 2/10/2023 | 10517 | 1 |
| 2/10/2023 | 6944.8 | 1 |
| 2/10/2023 | 8748 | 1 |
| 2/10/2023 | 9151 | 1 |
| 2/10/2023 | 13639 | 1 |
| 2/10/2023 | 12270 | 1 |
| 2/10/2023 | 12898.47 | 1 |
| 2/10/2023 | 11043 | 1 |
| 2/10/2023 | 19929 | 1 |
| 2/10/2023 | 6494.52 | 1 |

DocuSign Envelope ID: 110C5A3D-7172-4D69-8766-BD2B37-E4927

| | | |
|---|---|---|
| 2/10/2023 | 8090 | 1 |
| 2/10/2023 | 7089 | 1 |
| 2/10/2023 | 14712 | 1 |
| 2/10/2023 | 10357 | 1 |
| 2/10/2023 | 23360 | 1 |
| 2/10/2023 | 45947 | 1 |
| 2/10/2023 | 7544 | 1 |
| 2/10/2023 | 11956 | 1 |
| 2/10/2023 | 21729 | 1 |
| 2/10/2023 | 11547.98 | 1 |
| 2/10/2023 | 9294.24 | 1 |
| 2/10/2023 | 8769 | 1 |
| 2/10/2023 | 17754 | 1 |
| 2/10/2023 | 61095 | 1 |
| 2/10/2023 | 15349 | 1 |
| 2/10/2023 | 6340 | 1 |
| 2/10/2023 | 9005 | 1 |
| 2/10/2023 | 33899 | 1 |
| 2/10/2023 | 8199 | 1 |
| 2/10/2023 | 15306 | 1 |
| 2/10/2023 | 30000 | 1 |
| 2/10/2023 | 24814 | 1 |
| 2/10/2023 | 15154 | 1 |
| 2/10/2023 | 6145 | 1 |
| 2/10/2023 | 18434 | 1 |
| 2/10/2023 | 12504 | 1 |
| 2/10/2023 | 7437 | 1 |
| 2/10/2023 | 9398 | 1 |
| 2/10/2023 | 12065 | 1 |
| 2/10/2023 | 11465 | 1 |
| 2/10/2023 | 11539 | 1 |
| 2/10/2023 | 8723 | 1 |
| 2/10/2023 | 9502 | 1 |
| 2/10/2023 | 17510 | 1 |
| 2/10/2023 | 25800 | 1 |
| 2/10/2023 | 7995 | 1 |
| 2/10/2023 | 8775 | 1 |
| 2/10/2023 | 6226 | 1 |
| 2/10/2023 | 14269 | 1 |
| 2/10/2023 | 6771 | 1 |
| 2/10/2023 | 10383 | 1 |
| 2/10/2023 | 7591 | 1 |
| 2/10/2023 | 11591 | 1 |
| 2/10/2023 | 12861 | 1 |
| 2/10/2023 | 6161 | 1 |
| 2/10/2023 | 13031 | 1 |
| 2/10/2023 | 12746 | 1 |

| 2/10/2023 | 18212 | 1 |
| 2/10/2023 | 8976 | 1 |
| 2/10/2023 | 7239 | 1 |
| 2/10/2023 | 7752 | 1 |
| 2/10/2023 | 10139 | 1 |
| 2/10/2023 | 7513 | 1 |
| 2/10/2023 | 30567 | 1 |
| 2/10/2023 | 20542.07 | 1 |
| 2/10/2023 | 14441 | 1 |
| 2/10/2023 | 19912 | 1 |
| 2/10/2023 | 33850 | 1 |
| | 3677932 | |

| Total Paym | Fee 1 | State | Program Le | First Paym | Second Pay | Third Paym | Fourth Pay |
|---|---|---|---|---|---|---|---|
| 291.06 | | 35 AL | 39 Months | Cleared | Open | Open | Open |
| 268.99 | | 35 CA | 22 Months | Cleared | Open | Open | Open |
| 251.96 | | 36 FL | 39 Months | Cleared | Open | Open | Open |
| 271.93 | | 35 GA | 35 Months | Cleared | Open | Open | Open |
| 260.93 | | 40 VA | 29 Months | Cleared | Open | Open | Open |
| 253.46 | | 42 TX | 22 Months | Cleared | Open | Open | Open |
| 301.75 | | 40 MI | 30 Months | Cleared | Open | Open | Open |
| 252.91 | | 37 MI | 18 Months | Cleared | Open | Open | Open |
| 283.17 | | 50 MS | 23 Months | Cleared | Open | Open | Open |
| 253.12 | | 34 NY | 23 Months | Cleared | Open | Open | Open |
| 252.89 | | 36 TX | 23 Months | Cleared | Open | Open | Open |
| 251.97 | | 40 GA | 17 Months | Cleared | Open | Open | Open |
| 262.2 | | 35 GA | 26 Months | Cleared | Open | Open | Open |
| 251.04 | | 48 OH | 23 Months | Cleared | Open | Open | Open |
| 251.75 | | 47 SC | 22 Months | Cleared | Returned / | Open | Open |
| 250.97 | | 40 GA | 30 Months | Cleared | Open | Open | Open |
| 252.95 | | 37 VA | 23 Months | Returned / | Returned / | Cleared | Open |
| 259.24 | | 43 GA | 16 Months | Returned / | Cleared | Open | Open |
| 596.38 | | 40 IN | 34 Months | Returned / | Cleared | Open | Open |
| 255.53 | | 35 AL | 27 Months | Returned / | Returned / | Cleared | Open |
| 258.02 | | 35 CA | 23 Months | Returned / | Returned / | Cleared | Open |
| 251.75 | | 41 GA | 23 Months | Returned / | Returned / | Cleared | Open |
| 253.36 | | 35 GA | 23 Months | Returned / | Returned / | Cleared | Open |
| 251.57 | | 40 CA | 35 Months | Returned / | Returned / | Cleared | Open |
| 294.53 | | 35 MS | 37 Months | Returned / | Returned / | Cleared | Open |
| 253.24 | | 36 NC | 30 Months | Returned / | Returned / | Cleared | Open |
| 250.99 | | 35 TX | 37 Months | Returned / | Cancel | Cleared | Open |
| 253.63 | | 41 WA | 23 Months | Returned / | Returned / | Cleared | Open |
| 279.12 | | 35 MO | 38 Months | Returned / | Returned / | Cleared | Open |
| 279.34 | | 40 OK | 39 Months | Returned / | Cleared | Open | Open |
| 288.08 | | 40 GA | 38 Months | Returned / | Error Proce | Cleared | Open |
| 251.59 | | 41 NJ | 17 Months | Returned / | Cleared | Error Proce | Open |
| | | | | | | | |
| Cancellatic | | 50 | 7767 | 2 Months | 3 of 3 | 3 | Jaye Francis |
| Cancellatic | | 37 | 12541 | 1 Months | 2 of 2 | 2 | Joe Curry |
| Cancellatic | | 44 | 8567 | 1 Months | 2 of 4 | 2 | Marc Deslhommes |
| Cancellatic | | 40 | 26661 | 2 Months | 1 of 3 | 1 | Ken Morrison |
| Cancellatic | | 40 | 11579 | 3 Months | 1 of 4 | 0 | Ana Yeje |
| Cancellatic | | 35 | 16215 | 2 Months | 1 of 3 | 1 | Manuel Rodriguez |
| Cancellatic | | 41 | 3536 | 3 Months | 1 of 4 | 0 | Ray Francis |
| Cancellatic | | 36 | 10999 | 1 Months | 1 of 3 | 0 | Isaiah Yool |
| Cancellatic | | 44 | 8428 | 2 Months | 1 of 3 | 0 | Ana Yeje |
| Cancellatic | | 35 | 21892 | 2 Months | 1 of 4 | 1 | Isaiah Diaz |
| Active File | | 50 | 7285 | 2 Months | 1 of 3 | 1 | Marc Deslhommes |
| Active File | | 35 | 11640 | 2 Months | 1 of 3 | 1 | Joe Curry |
| Cancellatic | | 50 | 13842 | 2 Months | 1 of 3 | 1 | Marc Deslhommes |

| | | | | | | |
|---|---|---|---|---|---|---|
| Cancellatic | 40 | 38440 | 2 Months | 1 of 3 | 1 | Victoria Claiborne |
| Cancellatic | 40 | 19461 | 1 Months | 1 of 2 | 0 | Nicholas Ziccardi |
| Cancellatic | 35 | 12153 | 1 Months | 1 of 3 | 0 | Yanitza Figueroa |
| Active File | 41 | 9121 | 1 Months | 1 of 3 | 1 | Joe Curry |
| Cancellatic | 35 | 16667 | 1 Months | 1 of 2 | 0 | Jaye Francis |
| Cancellatic | 35 | 27008 | 1 Months | 1 of 2 | 0 | David Rodriguez |
| Cancellatic | 37 | 7214 | 1 Months | 1 of 3 | 0 | Marc Deslhommes |
| Cancellatic | 35 | 12350 | 1 Months | 1 of 2 | 0 | Ray Francis |
| Cancellatic | 35 | 18634 | 0 Months | 1 of 2 | 0 | Tyquaria Ward |
| Cancellatic | 35 | 15081 | 0 Months | 1 of 1 | 1 | James Killings |
| Cancellatic | 35 | 12507 | 0 Months | 1 of 2 | 0 | Ray Francis |
| Cancellatic | 35 | 17797 | 0 Months | 1 of 1 | 1 | Franky Ortiz |
| Cancellatic | 38 | 9723.32 | 0 Months | 1 of 2 | 0 | Candido Rodriguez |
| Cancellatic | 50 | 11070 | 0 Months | 1 of 1 | 0 | Marc Deslhommes |
| Cancellatic | 35 | 12517 | 0 Months | 1 of 1 | 1 | Yanitza Figueroa |
| Cancellatic | 35 | 15000 | 0 Months | 1 of 1 | 0 | James Killings |
| Cancellatic | 43 | 6578 | 0 Months | 1 of 1 | 0 | Andrea Espinosa |
| Cancellatic | 35 | 26820 | 0 Months | 1 of 2 | 0 | Ray Francis |
| Cancellatic | 35 | 14724 | 1 Months | 2 of 2 | 0 | Joe Curry |
| Cancellatic | 35 | 27170 | 2 Months | 2 of 3 | 2 | Candido Rodriguez |
| Cancellatic | 35 | 27958 | 1 Months | 2 of 3 | 0 | Franky Ortiz |
| Active File | 50 | 7333 | 0 Months | 2 of 3 | 2 | Ray Francis |
| Cancellatic | 31 | 40073 | 0 Months | 1 of 2 | 0 | Candido Rodriguez |
| Cancellatic | 40 | 9511 | 2 Months | 1 of 3 | 1 | Victoria Claiborne |
| Cancellatic | 39 | 13818 | 2 Months | 1 of 3 | 1 | Victoria Claiborne |
| Cancellatic | 36 | 10574 | 1 Months | 1 of 2 | 1 | Ray Francis |
| Cancellatic | 40 | 16949 | 2 Months | 1 of 3 | 1 | Victoria Claiborne |
| Cancellatic | 35 | 20470 | 1 Months | 1 of 2 | 1 | Carlos Deane |
| Cancellatic | 49 | 11564 | 0 Months | 1 of 1 | 1 | Ana Yeje |
| Cancellatic | 35 | 15214.8 | 1 Months | 1 of 4 | 0 | Jaye Francis |
| Cancellatic | 38 | 9835 | 2 Months | 1 of 2 | 1 | Pedro Luviano |
| Active File | 36 | 13486 | 2 Months | 1 of 4 | 1 | Jaye Francis |
| Cancellatic | 35 | 20488 | 1 Months | 1 of 2 | 1 | Yanitza Figueroa |
| Cancellatic | 36 | 7880 | 0 Months | 1 of 1 | 0 | Pedro Luviano |
| Cancellatic | 35 | 11892 | 0 Months | 1 of 3 | 1 | Yanitza Figueroa |
| Cancellatic | 35 | 12999 | 1 Months | 1 of 3 | 0 | Tiffany Way |
| Cancellatic | 46 | 8135 | 0 Months | 1 of 2 | 1 | Ray Francis |
| Cancellatic | 50 | 7443 | 1 Months | 1 of 2 | 0 | James Killings |
| Cancellatic | 40 | 7987 | 1 Months | 1 of 5 | 0 | Nicholas Ziccardi |
| Cancellatic | 35 | 40045 | 0 Months | 1 of 1 | 0 | Jaye Francis |
| Cancellatic | 35 | 14316 | 1 Months | 1 of 2 | 1 | Gary Gonzalez |
| Cancellatic | 35 | 12868 | 0 Months | 1 of 1 | 0 | Yanitza Figueroa |
| Cancellatic | 36 | 14427 | 1 Months | 1 of 2 | 0 | Tyquaria Ward |
| Cancellatic | 35 | 41600 | 0 Months | 1 of 2 | 0 | Tiffany Way |
| Cancellatic | 35 | 30027 | 0 Months | 1 of 4 | 0 | Ray Francis |
| Cancellatic | 42 | 9011 | 1 Months | 1 of 3 | 1 | Jaye Francis |
| Cancellatic | 40 | 9299 | 0 Months | 1 of 1 | 1 | Tyquaria Ward |

| | | | | | | |
|---|---|---|---|---|---|---|
| Cancellatic | 36 | 15526 | 1 Months | 1 of 2 | 0 | Justin Coates |
| Cancellatic | 40 | 10062 | 1 Months | 1 of 2 | 0 | Justin Coates |
| Cancellatic | 42 | 8881 | 0 Months | 1 of 1 | 1 | Yanitza Figueroa |
| Cancellatic | 40 | 20682 | 0 Months | 1 of 1 | 0 | Franky Ortiz |
| Cancellatic | 35 | 18232 | 0 Months | 1 of 1 | 1 | Jaye Francis |
| Cancellatic | 39 | 8171 | 0 Months | 1 of 1 | 1 | Tiffany Way |
| Cancellatic | 35 | 12059 | 0 Months | 1 of 1 | 0 | Candido Rodriguez |
| Cancellatic | 35 | 12774.11 | 0 Months | 1 of 1 | 1 | Candido Rodriguez |
| Cancellatic | 39 | 7486 | 0 Months | 1 of 1 | 0 | Jaye Francis |
| Cancellatic | 35 | 12464 | 0 Months | 1 of 1 | 1 | Candido Rodriguez |
| Cancellatic | 35 | 17378 | 0 Months | 1 of 1 | 1 | Manuel Rodriguez |
| Cancellatic | 40 | 12298 | 0 Months | 1 of 1 | 0 | Nicholas Ziccardi |
| Cancellatic | 35 | 7950 | 0 Months | 1 of 1 | 0 | Pedro Luviano |
| Cancellatic | 41 | 9061 | 0 Months | 1 of 1 | 0 | Joe Curry |
| Cancellatic | 35 | 12814 | 0 Months | 1 of 1 | 1 | James Killings |
| Cancellatic | 35 | 32496 | 0 Months | 1 of 1 | 1 | Henry Godson |
| Cancellatic | 44 | 6410 | 0 Months | 1 of 1 | 1 | Joe Curry |
| Cancellatic | 35 | 16251 | 0 Months | 1 of 1 | 0 | Candido Rodriguez |
| Cancellatic | 35 | 35191 | 0 Months | 1 of 1 | 1 | Jaye Francis |
| Cancellatic | 35 | 23818 | 0 Months | 1 of 2 | 0 | Pedro Luviano |
| Cancellatic | 50 | 18646 | 0 Months | 1 of 1 | 0 | Victoria Claiborne |
| Cancellatic | 39 | 9615 | 0 Months | 1 of 3 | 0 | Franky Ortiz |
| Cancellatic | 40 | 18814 | 0 Months | 1 of 1 | 0 | Nicholas Ziccardi |
| Cancellatic | 30 | 34773 | 0 Months | 1 of 1 | 0 | Isaiah Yool |
| Cancellatic | 45 | 6560 | 0 Months | 1 of 1 | 0 | Justin Coates |
| Cancellatic | 40 | 21269 | 0 Months | 1 of 1 | 1 | Carmine Attonito |
| Cancellatic | 35 | 41011 | 0 Months | 1 of 1 | 1 | Manuel Rodriguez |
| Cancellatic | 35 | 23258 | 0 Months | 1 of 1 | 0 | Candido Rodriguez |
| Cancellatic | 37 | 10131 | 0 Months | 1 of 1 | 0 | Justin Coates |
| Cancellatic | 35 | 21441 | 0 Months | 1 of 1 | 1 | Tyquaria Ward |
| Cancellatic | 35 | 15053 | 0 Months | 1 of 2 | 0 | Franky Ortiz |
| Cancellatic | 35 | 20696 | 0 Months | 1 of 1 | 0 | Isaiah Yool |
| Cancellatic | 40 | 7561 | 0 Months | 1 of 1 | 0 | Jaye Francis |
| Cancellatic | 35 | 11196 | 0 Months | 1 of 1 | 0 | Franky Ortiz |
| Cancellatic | 35 | 11984 | 0 Months | 1 of 2 | 0 | Tiffany Way |
| Cancellatic | 40 | 14588 | 0 Months | 1 of 1 | 0 | Carmine Attonito |
| Cancellatic | 40 | 23589 | 0 Months | 1 of 1 | 0 | Nicholas Ziccardi |
| Cancellatic | 35 | 14505 | 0 Months | 1 of 1 | 0 | Victoria Claiborne |
| Cancellatic | 35 | 10793 | 0 Months | 1 of 1 | 0 | Candido Rodriguez |
| Cancellatic | 39 | 8110 | 0 Months | 1 of 2 | 1 | Carmine Attonito |
| Cancellatic | 40 | 11750 | 0 Months | 1 of 1 | 0 | Marc Deslhommes |
| Cancellatic | 50 | 9630 | 0 Months | 1 of 1 | 1 | Andrea Espinosa |
| Cancellatic | 35 | 15316 | 0 Months | 1 of 1 | 1 | Candido Rodriguez |
| Cancellatic | 35 | 10647 | 0 Months | 1 of 2 | 0 | Victoria Claiborne |
| Cancellatic | 36 | 8688 | 0 Months | 1 of 1 | 1 | Yanitza Figueroa |
| Cancellatic | 35 | 23276 | 0 Months | 1 of 1 | 1 | Gabrielle Lindsey |
| Cancellatic | 35 | 28732 | 0 Months | 1 of 1 | 1 | Ana Yeje |

DocuSign Envelope ID: 110C5A3D-7172-4D69-8766-BD2B37F5497Z

| Cancellatic | 35 | 28326 | 0 Months | 1 of 1 | 1 | Joe Curry |
|---|---|---|---|---|---|---|
| Cancellatic | 35 | 8008 | 0 Months | 1 of 1 | 0 | Victoria Claiborne |
| Cancellatic | 35 | 27169 | 0 Months | 1 of 2 | 0 | Donald Cooper |
| Cancellatic | 40 | 10002 | 0 Months | 1 of 2 | 1 | Carmine Attonito |
| Cancellatic | 35 | 16304 | 0 Months | 1 of 1 | 0 | Justin Coates |
| Cancellatic | 40 | 39870 | 0 Months | 1 of 2 | 0 | Chanel Urso |
| Cancellatic | 35 | 9335 | 0 Months | 1 of 1 | 0 | Candido Rodriguez |
| Cancellatic | 43 | 8652 | 0 Months | 1 of 1 | 1 | Staci Nails |
| Cancellatic | 50 | 7614 | 0 Months | 1 of 1 | 0 | Andrea Espinosa |
| Cancellatic | 35 | 32172 | 0 Months | 1 of 1 | 1 | Yanitza Figueroa |
| Cancellatic | 35 | 17892 | 0 Months | 1 of 1 | 1 | Jaye Francis |
| Cancellatic | 44 | 6087 | 0 Months | 1 of 1 | 0 | Joe Curry |
| Cancellatic | 35 | 24351 | 0 Months | 1 of 1 | 0 | Jaye Francis |
| Cancellatic | 44 | 8511 | 0 Months | 1 of 3 | 0 | Jaye Francis |
| Cancellatic | 40 | 7064 | 0 Months | 1 of 1 | 1 | Yanitza Figueroa |
| Cancellatic | 36 | 15498 | 0 Months | 1 of 1 | 1 | Manuel Rodriguez |
| Cancellatic | 35 | 11667 | 0 Months | 1 of 1 | 0 | Tiffany Way |
| Cancellatic | 35 | 18538 | 0 Months | 1 of 2 | 0 | Tiffany Way |
| Cancellatic | 35 | 23025 | 0 Months | 1 of 1 | 1 | Franky Ortiz |
| Cancellatic | 35 | 11452 | 0 Months | 1 of 1 | 0 | Donald Cooper |
| Cancellatic | 35 | 13754 | 0 Months | 1 of 2 | 0 | Yanitza Figueroa |
| Cancellatic | 40 | 15255 | 0 Months | 1 of 1 | 0 | Andrea Espinosa |
| Cancellatic | 35 | 19523 | 0 Months | 1 of 1 | 0 | Candido Rodriguez |
| Cancellatic | 42 | 6350 | 0 Months | 1 of 1 | 1 | Joe Curry |
| Cancellatic | 35 | 15459.21 | 0 Months | 1 of 1 | 1 | Yanitza Figueroa |
| Cancellatic | 39 | 9914 | 0 Months | 1 of 1 | 0 | Isaiah Yool |
| Cancellatic | 35 | 14968.84 | 0 Months | 1 of 1 | 0 | Candido Rodriguez |
| Cancellatic | 39 | 7185.36 | 0 Months | 1 of 1 | 0 | Manuel Rodriguez |
| Cancellatic | 49 | 6012 | 0 Months | 1 of 2 | 0 | Victoria Claiborne |
| Cancellatic | 40 | 9717 | 0 Months | 1 of 1 | 1 | Carmine Attonito |
| Cancellatic | 39 | 9540 | 0 Months | 1 of 1 | 0 | Manuel Rodriguez |
| Cancellatic | 38 | 9835 | 0 Months | 1 of 1 | 1 | James Killings |
| Cancellatic | 43 | 12790 | 0 Months | 1 of 1 | 0 | Andrea Espinosa |
| Cancellatic | 35 | 18306 | 0 Months | 1 of 1 | 0 | Ray Francis |
| Cancellatic | 35 | 16192 | 0 Months | 1 of 1 | 0 | Staci Nails |
| Cancellatic | 35 | 40269 | 0 Months | 1 of 1 | 0 | Chanel Urso |
| Cancellatic | 35 | 21473 | 0 Months | 1 of 2 | 0 | Candido Rodriguez |
| Cancellatic | 36 | 10517 | 0 Months | 1 of 1 | 1 | Ana Yeje |
| Cancellatic | 40 | 6944.8 | 0 Months | 1 of 1 | 0 | Franky Ortiz |
| Cancellatic | 43 | 8748 | 0 Months | 1 of 1 | 1 | James Killings |
| Cancellatic | 46 | 9151 | 0 Months | 1 of 1 | 1 | Staci Nails |
| Cancellatic | 38 | 13639 | 0 Months | 1 of 1 | 0 | Victoria Claiborne |
| Cancellatic | 40 | 12270 | 0 Months | 1 of 1 | 0 | Chanel Urso |
| Cancellatic | 35 | 12898.47 | 0 Months | 1 of 2 | 1 | Donald Cooper |
| Cancellatic | 36 | 11043 | 0 Months | 1 of 2 | 0 | Jaye Francis |
| Cancellatic | 35 | 19929 | 0 Months | 1 of 1 | 1 | Justin Coates |
| Cancellatic | 43 | 6494.52 | 0 Months | 1 of 1 | 0 | Manuel Rodriguez |

DocuSign Envelope ID: 110C5A3D-7172-4D69-8766-BD2B37E4927

| | | | | | | |
|---|---|---|---|---|---|---|
| Cancellatic | 50 | 8090 | 0 Months | 1 of 1 | 0 | Marc Deslhommes |
| Cancellatic | 40 | 7089 | 0 Months | 1 of 1 | 0 | Ray Francis |
| Cancellatic | 40 | 14712 | 0 Months | 1 of 1 | 1 | Justin Coates |
| Cancellatic | 36 | 10357 | 0 Months | 1 of 1 | 1 | Tiffany Way |
| Cancellatic | 40 | 23360 | 0 Months | 1 of 1 | 0 | Marc Deslhommes |
| Cancellatic | 35 | 45947 | 0 Months | 1 of 1 | 0 | Jaye Francis |
| Cancellatic | 50 | 7544 | 0 Months | 1 of 1 | 0 | Chanel Urso |
| Cancellatic | 35 | 11956 | 0 Months | 1 of 1 | 0 | James Killings |
| Cancellatic | 35 | 21729 | 0 Months | 1 of 1 | 0 | Jaye Francis |
| Cancellatic | 35 | 11547.98 | 0 Months | 1 of 1 | 0 | Tiffany Way |
| Cancellatic | 50 | 9294.24 | 0 Months | 1 of 1 | 0 | Staci Nails |
| Cancellatic | 43 | 8769 | 0 Months | 1 of 2 | 0 | Justin Coates |
| Cancellatic | 35 | 17754 | 0 Months | 1 of 1 | 0 | Donald Cooper |
| Cancellatic | 35 | 61095 | 0 Months | 1 of 1 | 1 | Pedro Luviano |
| Cancellatic | 35 | 15349 | 0 Months | 1 of 1 | 0 | James Killings |
| Cancellatic | 42 | 6340 | 0 Months | 1 of 1 | 0 | Victoria Claiborne |
| Cancellatic | 35 | 9005 | 0 Months | 1 of 1 | 0 | Pedro Luviano |
| Cancellatic | 35 | 33899 | 0 Months | 1 of 1 | 1 | Gabrielle Lindsey |
| Cancellatic | 35 | 8199 | 0 Months | 1 of 1 | 0 | Nicholas Ziccardi |
| Cancellatic | 35 | 15306 | 0 Months | 1 of 1 | 0 | Victoria Claiborne |
| Cancellatic | 35 | 30000 | 0 Months | 1 of 1 | 1 | Donald Cooper |
| Cancellatic | 35 | 24814 | 0 Months | 1 of 1 | 0 | Franky Ortiz |
| Cancellatic | 35 | 15154 | 0 Months | 1 of 1 | 0 | Chanel Urso |
| Cancellatic | 43 | 6145 | 0 Months | 1 of 1 | 0 | Isaiah Yool |
| Cancellatic | 35 | 18434 | 0 Months | 1 of 1 | 0 | Nicholas Ziccardi |
| Cancellatic | 35 | 12504 | 0 Months | 1 of 1 | 1 | Chanel Urso |
| Cancellatic | 50 | 7437 | 0 Months | 1 of 1 | 1 | Justin Coates |
| Cancellatic | 40 | 9398 | 0 Months | 1 of 1 | 0 | Yanitza Figueroa |
| Cancellatic | 35 | 12065 | 0 Months | 1 of 1 | 0 | Jaye Francis |
| Cancellatic | 36 | 11465 | 0 Months | 1 of 1 | 1 | Staci Nails |
| Cancellatic | 35 | 11539 | 0 Months | 1 of 1 | 0 | Jaye Francis |
| Cancellatic | 43 | 8723 | 0 Months | 1 of 3 | 0 | Staci Nails |
| Cancellatic | 39 | 9502 | 0 Months | 1 of 1 | 0 | Candido Rodriguez |
| Cancellatic | 35 | 17510 | 0 Months | 1 of 1 | 0 | Isaiah Yool |
| Cancellatic | 35 | 25800 | 0 Months | 1 of 1 | 0 | Victoria Claiborne |
| Cancellatic | 47 | 7995 | 0 Months | 1 of 1 | 0 | Ray Francis |
| Cancellatic | 43 | 8775 | 0 Months | 1 of 1 | 0 | Justin Coates |
| Cancellatic | 43 | 6226 | 0 Months | 1 of 1 | 0 | Isaiah Yool |
| Cancellatic | 35 | 14269 | 0 Months | 1 of 1 | 0 | Manuel Rodriguez |
| Cancellatic | 42 | 6771 | 0 Months | 1 of 1 | 0 | Tiffany Way |
| Cancellatic | 36 | 10383 | 0 Months | 1 of 1 | 0 | Staci Nails |
| Cancellatic | 49 | 7591 | 0 Months | 1 of 1 | 0 | Ray Francis |
| Cancellatic | 35 | 11591 | 0 Months | 1 of 1 | 0 | Justin Coates |
| Cancellatic | 36 | 12861 | 0 Months | 1 of 1 | 0 | Staci Nails |
| Cancellatic | 42 | 6161 | 0 Months | 1 of 1 | 0 | Tiffany Way |
| Cancellatic | 35 | 13031 | 0 Months | 1 of 1 | 0 | Jaye Francis |
| Cancellatic | 35 | 12746 | 0 Months | 1 of 1 | 0 | Justin Coates |

| | | | | | | |
|---|---|---|---|---|---|---|
| Cancellatic | 35 | 18212 | 0 Months | 1 of 1 | 0 | Andrea Espinosa |
| Cancellatic | 42 | 8976 | 0 Months | 1 of 1 | 0 | Nicholas Ziccardi |
| Cancellatic | 49 | 7239 | 0 Months | 1 of 1 | 0 | Staci Nails |
| Cancellatic | 50 | 7752 | 0 Months | 1 of 1 | 0 | Andrea Espinosa |
| Cancellatic | 37 | 10139 | 0 Months | 1 of 1 | 0 | Justin Coates |
| Cancellatic | 37 | 7513 | 0 Months | 1 of 1 | 0 | Justin Coates |
| Cancellatic | 35 | 30567 | 0 Months | 1 of 1 | 0 | Ashley Linan |
| Cancellatic | 35 | 20542.07 | 0 Months | 1 of 1 | 0 | Candido Rodriguez |
| Active File | 40 | 14441 | 0 Months | 1 of 1 | 1 | Ashley Linan |
| Cancellatic | 35 | 19912 | 0 Months | 1 of 1 | 0 | Yanitza Figueroa |
| Cancellatic | 30 | 33850 | 0 Months | 1 of 1 | 0 | Ashley Linan |

| Fifth Paym | Sixth Paym | First Paym | Next Paym | # Drafts Cl | Pay Freq. | Payment N | Paused |
|---|---|---|---|---|---|---|---|
| Open | Open | ######## | ######## | 0 | Monthly | CC | No |
| Open | Open | ######## | 3/9/2023 | 0 | Monthly | CC | No |
| Open | Open | ######## | ######## | 0 | Monthly | CC | No |
| Open | Open | ######## | ######## | 0 | Monthly | CC | No |
| Open | Open | ######## | ######## | 0 | Monthly | CC | No |
| Open | Open | ######## | ######## | 0 | Monthly | CC | No |
| Open | Open | ######## | ######## | 0 | Bi-Weekly | CC | No |
| Open | Open | ######## | 3/6/2023 | 0 | Monthly | CC | No |
| Open | Open | ######## | ######## | 0 | Monthly | CC | No |
| Open | Open | ######## | ######## | 0 | Monthly | CC | No |
| Open | Open | ######## | ######## | 0 | Monthly | CC | No |
| Open | Open | ######## | ######## | 0 | Monthly | CC | No |
| Open | Open | ######## | ######## | 0 | Monthly | CC | No |
| Open | Open | ######## | 3/3/2023 | 0 | Monthly | CC | No |
| Open | Open | 2/6/2023 | 3/6/2023 | 0 | Monthly | CC | No |
| Open | Open | 2/6/2023 | 3/6/2023 | 0 | Monthly | CC | No |
| Open | Open | ######## | ######## | 0 | Monthly | CC | No |
| Open | Open | ######## | ######## | 0 | Monthly | CC | No |
| Open | Open | ######## | 3/2/2023 | 1 | Monthly | Bank | No |
| Open | Open | ######## | 3/2/2023 | 1 | Monthly | Bank | No |
| Open | Open | ######## | 3/3/2023 | 1 | Monthly | Bank | No |
| Open | Open | ######## | 3/2/2023 | 1 | Monthly | Bank | No |
| Open | Open | ######## | ######## | 1 | Monthly | Bank | No |
| Open | Open | ######## | 3/3/2023 | 0 | Monthly | CC | No |
| Open | Open | ######## | 3/3/2023 | 0 | Monthly | CC | No |
| Open | Open | ######## | 3/1/2023 | 1 | Monthly | Bank | No |
| Open | Open | ######## | 3/6/2023 | 1 | Monthly | Bank | No |
| Open | Open | ######## | 3/2/2023 | 0 | Monthly | CC | No |
| Open | Open | 1/3/2023 | 3/3/2023 | 0 | Monthly | CC | No |
| Open | Open | 1/3/2023 | 3/2/2023 | 0 | Monthly | CC | No |
| Open | Open | ######## | ######## | 1 | Monthly | Bank | No |

########
########
########
########
########
########
########
########
########
########
########
########
########

########
########
########
########
########
########
########
########
1/3/2023
########
########
########
########
########
########
2/1/2023
########
########
1/9/2023
########
########
1/6/2023
1/3/2023
########
########
########
########
########
########
########
########
########
########
########
########
1/3/2023
########
1/3/2023
1/3/2023
########
########
########
1/9/2023
########
1/6/2023
1/6/2023
########

DocuSign Envelope ID: 110C5A3D-7172-4D69-8766-BD2B37E4927

1/6/2023
1/3/2023
########
2/2/2023
2/3/2023
2/1/2023
########
########
2/3/2023
2/3/2023
########
2/3/2023
2/6/2023
2/7/2023
2/3/2023
2/6/2023
2/3/2023
2/3/2023
########
########
########
2/3/2023
2/3/2023
2/9/2023
2/3/2023
########
########
2/3/2023
2/3/2023
2/6/2023
########
2/6/2023
2/3/2023
########
1/3/2023
2/6/2023
########
2/6/2023
2/6/2023
########
########
########
########
2/1/2023
2/6/2023
2/3/2023
2/2/2023

2/1/2023
2/6/2023
2/2/2023
########
2/8/2023
########
2/3/2023
2/1/2023
########
2/1/2023
2/3/2023
2/6/2023
########
2/3/2023
2/3/2023
2/3/2023
2/3/2023
2/6/2023
2/3/2023
2/3/2023
2/3/2023
2/3/2023
2/3/2023
2/3/2023
2/3/2023
########
2/3/2023
2/6/2023
2/3/2023
2/6/2023
2/8/2023
2/1/2023
2/3/2023
2/3/2023
2/3/2023
2/6/2023
2/3/2023
2/1/2023
########
2/2/2023
2/6/2023
2/2/2023
2/3/2023
2/6/2023
2/3/2023
########
2/3/2023

2/3/2023
2/3/2023
2/6/2023
2/6/2023
2/3/2023
########
2/3/2023
2/6/2023
########
########
2/3/2023
2/6/2023
########
2/3/2023
2/3/2023
########
2/8/2023
2/3/2023
2/3/2023
########
2/3/2023
2/6/2023
2/3/2023
########
2/3/2023
3/6/2023
2/3/2023
########
2/8/2023
2/6/2023
2/3/2023
2/3/2023
2/3/2023
2/3/2023
########
2/3/2023
2/3/2023
2/3/2023
2/6/2023
2/3/2023
2/6/2023
########
2/3/2023
########
2/6/2023
2/6/2023
########

2/3/2023
2/3/2023
########
2/3/2023
2/7/2023
########
2/6/2023
########
########
########
2/8/2023

DocuSign Envelope ID: 110C5A3D-7172-4D69-8766-BD2B37LE4927

| Client Status | Payments l Payment S | # NSFs |
|---|---|---|
| Active File | 1 1 of 40 | 0 |
| Active File | 1 1 of 24 | 0 |
| Active File | 1 1 of 40 | 0 |
| Active File | 1 1 of 36 | 0 |
| Active File | 1 1 of 30 | 0 |
| Active File | 1 1 of 24 | 0 |
| Educational Outreach | 1 1 of 68 | 0 |
| Educational Outreach | 1 1 of 20 | 0 |
| Educational Outreach | 1 1 of 24 | 0 |
| Educational Outreach | 1 1 of 24 | 0 |
| Educational Outreach | 1 1 of 24 | 0 |
| Educational Outreach | 1 1 of 18 | 0 |
| Educational Outreach | 1 1 of 27 | 0 |
| Educational Outreach Missed | 1 1 of 24 | 0 |
| NSF | 1 1 of 24 | 1 |
| Paused Per Legal - Payment No | 1 1 of 32 | 0 |
| Active File | 1 1 of 26 | 2 |
| Active File | 1 1 of 18 | 1 |
| Active File | 1 1 of 37 | 1 |
| NSF | 1 1 of 28 | 2 |
| NSF | 1 1 of 24 | 2 |
| NSF | 1 1 of 25 | 2 |
| NSF | 1 1 of 25 | 2 |
| NSF | 1 1 of 36 | 2 |
| NSF | 1 1 of 39 | 2 |
| NSF | 1 1 of 31 | 2 |
| NSF | 1 1 of 37 | 1 |
| NSF | 1 1 of 24 | 2 |
| NSF | 1 1 of 39 | 2 |
| NSF | 1 1 of 40 | 1 |
| NSF | 1 1 of 41 | 1 |
| Payment Change Required | 1 1 of 19 | 1 |

**EXHIBIT "9"**

## ACCOUNTS RECEIVABLE PURCHASE AGREEMENT

This ACCOUNTS RECEIVABLE PURCHASE AGREEMENT (this "**Agreement**") is made as of March 7, 2023 (the "**Agreement Date**"), by and between The Litigation Practice Group PC (collectively the "**Buyer**"), and Debt Relief Group (the "**Seller**" or "**LPG**", and together with the Buyer, the **"Parties"**), and The Litigation Practice Group PC ("**LPG**").

## RECITALS

WHEREAS, in the regular course of business, the Seller originates account receivables from **LPG** in connection with client on-boarding services provided by the Seller to LPG and its affiliates;

WHEREAS, the account receivables represent an obligation of various clients to pay Seller for services that Seller previously provided, but which LPG shall provide from the date of execution of this Agreement;

WHEREAS, the Seller desires to sell, assign, transfer, and deliver to the Buyer, and the Buyer desires to purchase, acquire, and accept from the Seller, certain of these account receivables (the "**Purchased Accounts**").

NOW, THEREFORE, in consideration of the covenants and representations set forth herein, the Parties, intending to be legally bound, agree as follows:

## ARTICLE 1.
## DEFINITIONS

Section 1.1    Certain Definitions.  Certain defined terms used in this Agreement are set forth on **Exhibit A**.

## ARTICLE 2.
## ASSIGNMENT AND TRANSFER AND CONSIDERATION

Section 2.1    Assignment of the Purchased Accounts to the Buyer.  Upon execution of this Agreement and subject to the terms and conditions set forth herein, the Seller shall sell, assign, transfer, and deliver, and the Buyer shall purchase, acquire, and accept from the Seller, all of the Seller's right, title, and interest in and to the Purchased Accounts set forth on the spreadsheet attached to this Agreement, free and clear of any Liens.  Other than the Purchased Accounts, the Buyer shall not purchase or acquire any other assets of the Seller (collectively, the "**Excluded Assets**").

Section 2.2    No Assumption of Liabilities.  The Buyer shall not assume any Liabilities of the Seller of any kind, whether known or unknown, contingent, matured, or otherwise, whether currently existing or hereinafter created (collectively, the "**Excluded Liabilities**").

Section 2.3    Payment of Purchase Price.  Buyer shall pay $99,937.50 (total purchase price) for the Purchased Accounts (the "**Purchase Price**") by wire transfer of immediately available funds in accordance with the wire transfer instructions set forth in **Schedule 2.3** (the "**Wire Instructions**").  The Purchased Accounts are set forth on the attached spreadsheet.

Section 2.4    Guarantee of LPG.  If any file acquired by buyer shall fail to make a first payment, LPG will replace the file and bear any cost associated with such replacement.  The replacement file shall yield no less than the receivable of the failed file.  In addition, if any any calendar month a total of less than 80% of files make a cleared payment, LPG shall replace any non-performing files in such month so that the performance of the file

DocuSign Envelope ID: 564F5A9D-4E4C-4742-B98F-4ABC06FD692A

package as a whole equals 80%.  This guarantee shall continue until the completion of the 24th month following execution of this agreement.

## ARTICLE 3.
## REPRESENTATIONS AND WARRANTIES OF THE SELLER

The Seller represents and warrants to the Buyer, as of the Agreement Date and as of the Closing Date, or, if expressly made as of a specified date, as of such specified date, as follows:

Section 3.1      Organization; Good Standing.  The Seller is a Limited Liability Company duly organized, validly existing, and in good standing under the Laws of the State of Delaware and is duly qualified to do business and is in good standing as a foreign corporation in each jurisdiction where the ownership or operation of the Business requires such qualification, except where the failure to be so qualified would not reasonably be expected to have, individually or in the aggregate, a material adverse effect on the business, results of operations, financial condition, or assets of the Seller.

Section 3.2      Power and Authority.  The Seller has all requisite right, power, and authority to execute, deliver, and perform this Agreement and the Transaction Agreements to which it is a party, to consummate the transactions contemplated hereby and thereby, and to perform its obligations hereunder and thereunder.  The execution and delivery of this Agreement and the Transaction Agreements by the Seller, and the consummation by the Seller of the transactions contemplated hereby and thereby, have been duly approved by the Seller, and no further action is required on the part of the Seller to authorize this Agreement, any Transaction Agreement to which it is a party, or the transactions contemplated hereby and thereby.  This Agreement has been, and each of the Transaction Agreements will be, duly and validly executed and delivered by the Seller and, assuming the due and valid authorization, execution, and delivery of this Agreement by the other Parties, and of each such Transaction Agreement by the other parties thereto, constitutes, or will constitute, a valid and binding obligation of the Seller, enforceable against it in accordance with its terms and conditions, except as enforcement may be limited by applicable bankruptcy, insolvency, reorganization, moratorium, and other Laws affecting enforcement of creditor's rights generally and except insofar as the availability of equitable remedies may be limited by applicable Law.

Section 3.3      Title to, and Sufficiency of, the Purchased Accounts.  The Seller has and shall convey to the Buyer, at the Closing, good, valid, transferable, and marketable title to, or valid leasehold interests in, all of the Purchased Accounts, free and clear of all Liens.

Section 3.4      Consents.  The Seller is not required to give any notice to, make any filing with, or obtain any authorization, consent, or approval of, any Governmental Body or Third Party, including a party to any assigned contract, in connection with the execution, delivery, and performance by the Seller of this Agreement or any of the Transaction Agreements to which it is a party or the consummation of the transactions contemplated hereby and thereby.

Section 3.5      No Conflicts. The execution and delivery by the Seller of this Agreement and each of the Transaction Agreements, and the consummation of the transactions contemplated hereby and thereby, will not conflict with, result in any violation of, or default under (with or without notice or lapse of time, or both), or give rise to an additional payment obligation, a right of termination, cancellation, modification, or acceleration of any obligation, or loss of any benefit, under: (a) any provision of the Organizational Documents of the Seller; (b) any contract to which the Seller is party, including, without limitation, any assigned contract; or (c) any Law or order applicable to the Seller or any of the Purchased Accounts.

Section 3.6    Compliance with Laws.  The Seller has materially complied, and is now materially complying, with all Laws applicable to the ownership and use of the Purchased Accounts.

Section 3.7    Legal Proceedings.  There is no Action of any nature pending or, to the Knowledge of the Seller, threatened against or by the Seller: (a) relating to or affecting the Purchased Accounts or (b) that challenges or seeks to prevent, enjoin, or otherwise delay the transactions contemplated by this Agreement and the Transaction Agreements.  No event has occurred or circumstance exists that may give rise to, or serve as a basis for, any such Action.

Section 3.8    Condition of Purchased Accounts.  Each Purchased Account shall have received no less than one processed payment.

Section 3.9    Confidentiality.  Seller agrees and acknowledges that all Purchased Accounts, the pricing, and all terms set forth in this Agreement are confidential (together, the "**Confidential Information**").  Seller will at all times keep the  Confidential Information in confidence and trust.  Seller will not, without the prior written consent of an authorized officer of Buyer, (A) copy, use or disclose any Confidential Information, (B) deliver or disclose any Confidential Information to any person or entity outside the Buyer, or (C) use the Confidential Information for Seller's own use or use it to the detriment of Buyer.  Notwithstanding the foregoing, Seller may, without consent, use the Confidential Information and disclose and deliver same to Seller's employees or agents, if applicable, who have a need to know, provided such employees or agents have entered into written agreements approved by Buyer and containing provisions at least as restrictive as these provisions.  Seller agrees that violation of this Section 3.9.  The Parties agree that the disclosure of the Confidential Information in violation of this Agreement may cause the Buyer irreparable harm and that any breach or threatened breach by the Seller entitles Buyer to seek injunctive relief, in addition to any other legal or equitable remedies available to it, in any court of competent jurisdiction.

## ARTICLE 4.
## REPRESENTATIONS AND WARRANTIES OF THE BUYER

The Buyer represents and warrants to the Seller, as of the Agreement Date and as of the Closing Date, or, if expressly made as of a specified date, as of such specified date, as follows:

Section 4.1    Organization; Good Standing.  The Buyer is a limited liability company, duly organized, validly existing, and in good standing under the Laws of the State of Florida.

Section 4.2    Power and Authority.  The Buyer has all requisite right, power, and authority to execute, deliver, and perform this Agreement and the Transaction Agreements to which it is a party, to consummate the transactions contemplated hereby and thereby, and to perform its obligations hereunder and thereunder.  The execution and delivery of this Agreement and the Transaction Agreements by the Buyer, and the consummation by the Buyer of the transactions contemplated hereby and thereby, have been duly approved by the Buyer, and no further action is required on the part of the Buyer to authorize this Agreement, any Transaction Agreement to which it is a party, or the transactions contemplated hereby and thereby.  This Agreement has been, and each of the Transaction Agreements will be, duly and validly executed and delivered by the Buyer and, assuming the due and valid authorization, execution, and delivery of this Agreement by the other Parties, and of each such Transaction Agreement by the other parties thereto, constitutes, or will constitute, a valid and binding obligation of the Buyer, enforceable against it in accordance with its terms and conditions, except as enforcement may be limited by applicable bankruptcy, insolvency, reorganization, moratorium and other Laws affecting enforcement of creditor's rights generally and except insofar as the availability of equitable remedies may be limited by applicable Law.

Section 4.3    No Conflicts.  The execution and delivery by the Buyer of this Agreement and each of the Transaction Agreements, and the consummation of the transactions contemplated hereby and thereby, will not conflict with, result in any violation of, or default under (with or without notice or lapse of time, or both), or give rise to an additional payment obligation, a right of termination, cancellation, modification, or acceleration of, any obligation, or loss of any benefit under: (a) any provision of the Buyer's Organizational Documents; (b) any contract to which the Buyer is party, other than the Buyer Representation Agreement; or (c) any Law applicable to the Buyer.

Section 4.4    Sufficient Funds.  The Buyer has, and will have, sufficient funds available to make payment of the Purchase Price and consummate the transactions contemplated by this Agreement and the Transaction Agreements.

## ARTICLE 5.
## COVENANTS

Section 5.1    Appropriate Actions.

(a)    General.  Each of the Parties shall use commercially reasonable efforts to take all actions necessary to consummate the transactions contemplated by this Agreement as soon as reasonably practicable after the execution of this Agreement, including taking all actions necessary to comply promptly with all applicable Laws that may be imposed on it or any of its Affiliates with respect to the Closing.

## ARTICLE 6.
## CLOSING

Section 6.1    Closing.  The closing of the transactions contemplated by this Agreement (the "**Closing**") will take place upon the execution and delivery of this Agreement or at such other time, date, and place as the Parties may agree in writing.  The date on which the Closing occurs is hereinafter referred to as the "**Closing Date**." The Parties agree that the Closing may take place by the electronic exchange of executed counterpart documents and the electronic transfer of funds.

Section 6.2    Closing Deliverables of the Seller.  At or prior to the Closing, Seller shall deliver to Buyer any of the following if requested by Buyer:  (i) a bill of sale and assignment and assumption agreement substantially in the form attached hereto as **Exhibit B** (the "**Bill of Sale and Assignment and Assumption Agreement**"), duly executed by the Seller, effecting the transfer and assignment to, and assumption by, the Buyer of the Purchased Accounts; and (ii) such other customary instruments of transfer, assumption, filings, or documents, in form and substance reasonably satisfactory to the Buyer, as may be required to give effect to this Agreement.

Section 6.3    Closing Deliverables of the Buyer.  At or prior to the Closing, the Seller shall have received the following: (i) the Upfront Cash Payment; and (ii) if requested pursuant to Section 6.2, the Bill of Sale and Assignment and Assumption Agreement, duly executed by the Buyer.

Section 6.4    Indemnification by the Seller.  Subject to the limitations set forth in this Article 6, the Seller agrees to indemnify and hold harmless the Buyer, including its shareholders, members, directors, managers, officers, employees, Affiliates, and agents (each, a "**Buyer Indemnified Party**" and, collectively, the "**Buyer Indemnified Parties**"), against all claims, losses, Liabilities, damages, deficiencies, diminutions in value, costs, interest, awards, judgments, penalties, and expenses, including reasonable out-of-pocket attorneys' and consultants' fees and expenses and including any such reasonable expenses incurred in connection with investigating, defending against, or settling any of the foregoing (each, a "**Loss**" and, collectively, the "**Losses**") paid, suffered, incurred, sustained, or accrued by any Buyer Indemnified Party, directly or indirectly, as a result of,

arising out of, or in connection with: (a) any inaccuracy in, or breach of, any of the representations or warranties of the Seller contained in this Agreement, (b) any breach or non-fulfillment of any covenant, agreement, or obligation to be performed by the Seller pursuant to this Agreement, (c) any Excluded Asset or any Excluded Liability.

Section 6.5    <u>Indemnification by the Buyer</u>.  Subject to the limitations set forth in this <u>Article 6</u>, the Buyer agrees to indemnify and hold harmless the Seller, including its Affiliates and agents (each, a "**Seller Indemnified Party**" and, collectively, the "**Seller Indemnified Parties**"), against all Losses paid, suffered, incurred, sustained, or accrued by any Seller Indemnified Party, directly or indirectly, as a result of, arising out of, or in connection with: (a) any inaccuracy in, or breach of, any of the representations or warranties of the Buyer contained in this Agreement; (b) any breach or non-fulfillment of any covenant, agreement, or obligation to be performed by the Buyer pursuant to this Agreement; (c) any event or occurance related to the Purchased Accounts or Buyer occurring after the Closing; or (d) resulting from any omissions or misstatements made by Buyer to investors or potential investors.

Section 6.6    <u>Indemnification Procedures</u>.

(a)    <u>No Restraints</u>.  Promptly following receipt by an Indemnified Party of notice by a Third Party (including any Governmental Body) of any complaint, dispute, or claim or the commencement of any audit, investigation, Action or proceeding with respect to which such Indemnified Party may be entitled to indemnification pursuant hereto (a "**Third-party Claim**"), such Indemnified Party shall provide written notice thereof to the Indemnifying Party, <u>provided</u>, <u>however</u>, that the failure to so notify the Indemnifying Party shall relieve the Indemnifying Party from Liability hereunder with respect to such Third-party Claim only if, and only to the extent that, such failure to so notify the Indemnifying Party results in the forfeiture by the Indemnifying Party of rights and defenses otherwise available to the Indemnifying Party with respect to such Third-party Claim.  The Indemnifying Party shall have the right, upon written notice delivered to the Indemnified Party within twenty days thereafter assuming full responsibility for any Losses resulting from such Third-party Claim, to assume the defense of such Third-party Claim, including the employment of counsel reasonably satisfactory to the Indemnified Party and the payment of the fees and disbursements of such counsel; <u>provided</u>, <u>however</u>, if the Indemnifying Party declines or fails to assume the defense of such Third-party Claim on the terms provided above or to employ counsel reasonably satisfactory to the Indemnified Party, in either case within such twenty day period, then any Losses shall include the reasonable fees and disbursements of counsel for the Indemnified Party as incurred.  In any Third-party Claim for which indemnification is being sought hereunder the Indemnified Party or the Indemnifying Party, whichever is not assuming the defense of such Third-party Claim, shall have the right to participate in such matter and to retain its own counsel at such Party's own expense.  The Indemnifying Party or the Indemnified Party (as the case may be) shall at all times use reasonable efforts to keep the Indemnifying Party or Indemnified Party (as the case may be) reasonably apprised of the status of the defense of any matter, the defense of which it is maintaining, and to cooperate in good faith with each other with respect to the defense of any such matter.

(b)    No Indemnified Party may settle or compromise any Third-party Claim or consent to the entry of any judgment with respect to which indemnification is being sought hereunder without the prior written consent of the Indemnifying Party (which may not be unreasonably withheld or delayed), unless (i) the Indemnifying Party fails to assume and maintain the defense of such Third-party Claim or (ii) such settlement, compromise, or consent includes an unconditional release of the Indemnifying Party and its officers, directors, employees and Affiliates from all Liability arising out of, or related to, such Third-party Claim.  An Indemnifying Party may not, without the prior written consent of the Indemnified Party, settle or compromise any Third-party Claim or consent to the entry of any judgment with respect to which indemnification is being sought hereunder unless such settlement, compromise, or consent (A) includes an unconditional release of the Indemnified Party and its officers, directors, employees, and Affiliates from all Liability arising out of, or related to, such Third-party

DocuSign Envelope ID: 5645FA6D-4E4C-4712-B98F-4ABC06FD6924

Claim, (B) does not contain any admission or statement suggesting any wrongdoing or Liability on behalf of the Indemnified Party, and (C) does not contain any equitable order, judgment, or term that in any manner affects, restrains, or interferes with the business of the Indemnified Party or any of the Indemnified Party's Affiliates.

(c)    If an Indemnified Party claims a right to payment pursuant hereto with respect to any matter not involving a Third-party Claim (a "**Direct Claim**"), such Indemnified Party shall send written notice of such claim to the appropriate Indemnifying Party (each, a "**Notice of Claim**").  Such Notice of Claim shall specify the basis for such Direct Claim.  The failure by any Indemnified Party so to notify the Indemnifying Party shall not relieve the Indemnifying Party from any Liability that it may have to such Indemnified Party with respect to any Direct Claim made pursuant to this Section 6.6(c).  If the Indemnifying Party does not notify the Indemnified Party within thirty days following its receipt of such Notice of Claim that the Indemnifying Party disputes its Liability to the Indemnified Party under this Article 6 or the amount thereof, the Direct Claim specified by the Indemnified Party in such Notice of Claim shall be conclusively deemed a Liability of the Indemnifying Party under this Article 6, and the Indemnifying Party shall pay the amount of such Liability to the Indemnified Party on demand or, in the case of any Notice of Claim in which the amount of the Direct Claim (or any portion of the Direct Claim) is estimated, on such later date when the amount of such Direct Claim (or such portion of such Direct Claim) becomes finally determined.  In the event that the Indemnifying Party has timely disputed its Liability with respect to such Direct Claim as provided above, as promptly as possible, such Indemnified Party and the appropriate Indemnifying Party shall establish the merits and amount of such Direct Claim (by mutual agreement, litigation, arbitration or otherwise) and, within five business days following the final determination of the merits and amount of such Direct Claim, the Indemnifying Party shall pay to the Indemnified Party an amount equal to such Direct Claim as determined hereunder.

## ARTICLE 7.
## MISCELLANEOUS

Section 7.1    Entire Agreement; Amendment.  This Agreement and the Transaction Agreements (including the exhibits hereto and thereto and the documents referred to therein) constitute the entire agreement among the Parties with respect to the subject matter hereof and supersede any prior understandings, agreements, or representations by or among the Parties, written or oral, to the extent they related in any way to the subject matter hereof.  This Agreement may be amended with the written consent of each of the Parties or any successor thereto by execution of an instrument in writing.

Section 7.2    Waivers.  The rights and remedies of the Parties to this Agreement are cumulative and not alternative.  To the maximum extent permitted by applicable Law: (a) no claim or right arising out of this Agreement or the documents referred to in this Agreement can be discharged by one Party, in whole or in part, by a waiver or renunciation of the claim or right unless in writing signed by the other Parties; (b) no waiver that may be given by a Party will be applicable except in the specific instance for what it is given; and (c) no notice to, or demand on, one Party will be deemed to be a waiver of any obligation of such Party or of the right of the Party giving such notice or demand to take further action without notice or demand as provided in this Agreement or the Transaction Agreements.

Section 7.3    Notices.  All notices and other communications required or permitted hereunder shall be made to the address of a Party listed on the signature page to this Agreement and shall be (a) in writing, (b) effective when given, and (c), in any event, deemed to be given upon receipt or, if earlier: (i) upon delivery, if delivered by hand; (ii) two business days after deposit with FedEx Express or similar recognized international overnight courier service, freight prepaid; or (iii) one business day after facsimile or electronic mail transmission. A Party may change the address to which notices, requests, demands, claims, and other communications hereunder are to be delivered by giving the other Parties advance written notice pursuant to the provisions above.

Section 7.4    Successors and Assigns.  This Agreement shall be binding upon, and inure to the benefit of, the Parties named herein and their respective successors and permitted assigns.  Neither this Agreement nor any rights or obligations of a Party hereunder shall be assigned by a Party (unless to an Affiliate of such Party) without the prior written consent of the other Parties.  This Agreement will be binding upon any permitted assignee of any Party.  No assignment shall have the effect of relieving any Party to this Agreement of any of its obligations hereunder.

Section 7.5    Public Disclosure.  Except as may be required by Law, the Seller shall not issue any statement or communication to any Third Party (other than its respective agents) regarding the subject matter of this Agreement or the transactions contemplated hereby, including, if applicable, the termination of this Agreement and the reasons therefor, without the prior written consent of the Buyer.

Section 7.6    Expenses and Fees.  Whether or not the Closing occurs, all fees and expenses incurred in connection with this transactions contemplated by this Agreement, including all legal, accounting, financial advisory, consulting and all other fees and expenses of Third Parties incurred by a Party in connection with the negotiation and effectuation of the terms and conditions of this Agreement and the transactions contemplated hereby, shall be the obligation of the respective Party incurring such fees and expenses.

Section 7.7    Specific Performance.  The Parties agree that irreparable damage would occur if any provision of this Agreement was not performed in accordance with the terms hereof and that the Parties shall be entitled to specific performance of the terms hereof, in addition to any other remedy to which they are entitled hereunder, at Law or in equity.

Section 7.8    Counterparts.  This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement.  A signed copy of this Agreement delivered by facsimile, electronic mail, or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

Section 7.9    Governing Law.  This Agreement shall, in all respects, be construed in accordance with, and governed by, the Laws of the State of California without regard to conflict of Laws principles.

Section 7.10    Severability.  Any term or provision of this Agreement that is invalid or unenforceable in any situation in any jurisdiction shall not affect the validity or enforceability of the remaining terms and provisions hereof or the validity or enforceability of the offending term or provision in any other situation or in any other jurisdiction.

Section 7.11    Construction.  The Parties have participated jointly in the negotiation and drafting of this Agreement.  In the event an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the Parties and no presumption or burden of proof shall arise favoring or disfavoring any Party by virtue of the authorship of any of the provisions of this Agreement.

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the Agreement Date.

**BUYER:**

**The Litigation Practice Group P.C.**

By: _Daniel S March_ _____
9D494DB1993341E...
Name: Daniel S March
Title: Managing Shareholder

**SELLER:**

**Debt Relief Group**

By: _____
3ECD0BC8C1774C9...
Name: William Burns
Title: CEO

**APPROVAL OF ASSIGNMENT AND GUARANTEE**

The assignment of the Purchased Accounts set forth in this Agreement as well as the guarantee included therein is hereby approved, and with respect to the Purchased Accounts, the Buyer shall have all rights of Buyer as set forth in this agreement.

**The Litigation Practice Group P.C.**

By: _Daniel S March_ _____
9D494DB1993341E...
Name: Daniel S. March
Title: Managing Shareholder

*[Signature Page to Accounts Receivable Purchase Agreement]*

DocuSign Envelope ID: 5645EA6D-4E4C-4712-B98F-4AB606FD692A

**EXHIBIT A**

**DEFINITIONS**

As used in this Agreement, the following terms have the following meanings (terms defined in the singular to have a correlative meaning when used in the plural and vice versa).

(a)    "**Action**" shall mean any civil, criminal, or administrative action, claim, suit, demand, charge, citation, reexamination, opposition, interference, decree, injunction, mediation, hearing, notice of violation, demand letter, litigation, proceeding, labor dispute, arbitral action, governmental or other audit, inquiry, criminal prosecution, investigation, unfair labor practice charge, or complaint.

(b)    "**Agreement**" shall have the meaning set forth in the preamble to this Agreement.

(c)    "**Agreement Date**" shall have the meaning set forth in the preamble to this Agreement.

(d)    "**Affiliate**" shall mean (i) with respect to any non-natural Person, any Person that, directly or indirectly, through one or more intermediaries, controls, is controlled by, or is under common control with, such Person and (ii), with respect to any individual, (A) family members of such individual, by blood, adoption, or marriage, (B) such individual's spouse or ex-spouse and (C) any Person that is directly or indirectly under the control of any of the foregoing individuals.  For purposes of this definition, "control" (including with correlative meanings, the terms "controlling," "controlled by," and under "common control with") means the possession, directly or indirectly, of the power to direct the management and policies of a Person, whether through the ownership of voting securities, by contract, or otherwise.

(e)    "**Bill of Sale and Assignment and Assumption Agreement**" shall have the meaning set forth in <u>Section 6.2</u>.

(f)    "**Business**" shall mean the business of the Seller as conducted on the Agreement Date.

(g)    "**Buyer**" shall have the meaning set forth in the preamble to this Agreement.

(h)    "**Buyer Indemnified Parties**" shall have the meaning set forth in <u>Section 6.4</u>.

(i)    "**Closing**" shall have the meaning set forth in <u>Section 6.1</u>.

(j)    "**Closing Date**" shall have the meaning set forth in <u>Section 6.1</u>.

(k)    "**Direct Claim**" shall have the meaning set forth in <u>Section 6.6(c)</u>.

(l)    "**Excluded Assets**" shall have the meaning set forth in <u>Section 2.1</u>.

(m)    "**Excluded Liabilities**" shall have the meaning set forth in <u>Section 2.2</u>.

(n)    "**Governmental Body**" shall mean any: (i) nation, province, state, county, city, town, village, district, or other jurisdiction of any nature; (ii) federal, provincial, state, local, municipal, foreign, or other government; (iii) governmental or quasi-governmental authority of any nature (including any governmental agency, branch, department, official, or entity and any court or other tribunal); (iv) multi-national organization or body; or (v) body exercising, or entitled to exercise, any administrative, executive, judicial, legislative, police, regulatory, or taxing authority or power of any nature.

DocuSign Envelope ID: 5645EA9D-4E4C-4712-B98F-4ABC06FD6924

(o) "**Indebtedness**" means, without duplication and with respect to the Seller, all: (i) indebtedness for borrowed money; (ii) obligations for the deferred purchase price of property or services, (iii) long or short-term obligations evidenced by notes, bonds, debentures or other similar instruments; (iv) obligations under any interest rate, currency swap, or other hedging agreement or arrangement; (v) capital lease obligations; (vi) reimbursement obligations under any letter of credit, banker's acceptance or similar credit transactions; (vii) guarantees made by the Seller on behalf of any third party in respect of obligations of the kind referred to in the foregoing clauses (i) through (vi); and (viii) any unpaid interest, prepayment penalties, premiums, costs and fees that would arise or become due as a result of the prepayment of any of the obligations referred to in the foregoing clauses (i) through (vii).

(p) "**Indemnified Party**" shall mean a Buyer Indemnified Party or a Seller Indemnified Party, as the case may be, making a claim for indemnification under Article 6.

(q) "**Indemnifying Party**" shall mean a Party against whom a claim for indemnification is asserted under Article 6.

(r) "**Knowledge**" shall mean, with respect to the Seller, the actual or constructive knowledge of all facts relevant to this transaction and the transacting parties, after due inquiry.

(s) "**Law**" shall mean any law, statute, ordinance, regulation, rule, code, notice requirement, court decision, or agency guideline, of any foreign, federal, state, or local Governmental Body.

(t) "**Liabilities**" shall mean any direct or indirect liability, Indebtedness, obligation, commitment, expense, claim, deficiency, guaranty, or endorsement of, or by, any Person of any type, known or unknown, and whether accrued, absolute, contingent, matured, unmatured, determined or undeterminable, on- or off-balance sheet, or other.

(u) "**Lien**" shall mean any mortgage, pledge, lien, charge, claim, security interest, adverse claims of ownership or use, restrictions on transfer, defect of title, or other encumbrance of any sort.

(v) "**Losses**" shall have the meaning set forth in Section 6.4.

(w) "**Notice of Claim**" shall have the meaning set forth in Section 6.6(c).

(x) "**Organizational Documents**" shall mean, with respect to a Person, the charter, bylaws, limited liability company agreement, and other organizational documents of such Person, in each case, as amended.

(y) "**Party**" or "**Parties**" shall have the meaning set forth in the preamble to this Agreement.

(z) "**Permitted Liens**" shall mean (i) Liens for Taxes not yet delinquent or being contested in good faith by appropriate proceedings, (ii) statutory Liens (including materialmen's, warehousemen's, mechanic's, repairmen's, landlord's, and other similar Liens) arising in the ordinary course of business securing payments not yet delinquent or being contested in good faith by appropriate proceedings, and (iii) restrictive covenants, easements, and defects, imperfections or irregularities of title, if any, of a nature that do not materially and adversely affect the assets or properties subject thereto.

(aa) "**Person**" shall mean any individual, corporation (including any non-profit corporation), general or limited partnership, limited liability company, joint venture, estate, trust, association, organization, labor union, Governmental Body, or other entity.

DocuSign Envelope ID: 5645EA9D-4E4C-4742-B98F-4ABC06ED692A

(bb)    "**Purchase Price**" shall have the meaning set forth in <u>Section 2.3</u>.

(cc)    "**Purchased Accounts**" shall have the meaning set forth in the Recitals.

(dd)    "**Seller**" shall have the meaning set forth in the preamble to this Agreement.

(ee)    "**Seller Indemnified Parties**" shall have the meaning set forth in <u>Section 6.5</u>.

(ff)    "**Tax**" or "**Taxes**" shall mean any U.S. federal, state, local or non-U.S. income, gross receipts, license, payroll, employment, excise, severance, stamp, occupation, premium, windfall profits, environmental, customs duties, capital stock, escheat, franchise, profits, withholding, social security, unemployment, disability, real property, personal property, sales, use, transfer, registration, value added, alternative or add-on minimum, estimated, or other tax of any kind whatsoever, including any interest, penalty, or addition thereto, whether disputed or not.

(gg)    "**Tax Returns**" means any return, declaration, report, claim for refund, or information return or statement relating to Taxes, including any schedule or attachment thereto, and including any amendment thereof.

(hh)    "**Third Party**" or "**Third Parties**" shall mean any Person other than the Parties or their respective Affiliates.

(ii)    "**Third-party Claim**" shall have the meaning set forth in <u>Section 6.6(a)</u>.

(jj)    "**Transaction Agreements**" shall mean the Bill of Sale and Assignment and Assumption Agreement, and each other agreement, instrument, and/or certificate contemplated by this Agreement or such other agreements to be executed in connection with the transactions contemplated hereby or thereby.

(kk)    "**Upfront Cash Payment**" shall have the meaning set forth in <u>Section 2.3</u>.

(ll)    "**Wire Instructions**" shall have the meaning set forth in <u>Section 2.3</u>.

DocuSign Envelope ID: 564F5A9D-4F4C-4712-B99F-4ABC96FD6994

## EXHIBIT B

**FORM OF BILL OF SALE AND ASSIGNMENT AND ASSUMPTION AGREEMENT**

THIS BILL OF SALE AND ASSIGNMENT AND ASSUMPTION AGREEMENT (this **"Agreement"**), is made by and between **Buyer**, and **Seller**.  Each of the Seller and the Buyer are sometimes referred to herein, individually, as a **"Party"** and, collectively, as the **"Parties."**

WHEREAS, the Buyer and the Seller have entered into that certain Accounts Receivable Purchase Agreement, of even date herewith (the **"Purchase Agreement"**), pursuant to which the Seller has agreed to sell, assign, transfer, and deliver to the Buyer, and the Buyer has agreed to purchase, acquire, and accept from the Seller, all right, title, and interest of the Seller in and to the Purchased Accounts, free and clear of any Liens.

NOW, THEREFORE, in consideration of the covenants and representations set forth herein, and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the Parties, intending to be legally bound, agree as follows:

1.    <u>Defined Terms</u>.  Capitalized terms used but not otherwise defined in this Agreement shall have the meanings assigned to such terms in the Purchase Agreement.

2.    <u>Sale of Purchased Accounts; Assignment</u>.  The Seller hereby sells, assigns, transfers, and delivers to the Buyer, and the Buyer hereby purchases, acquires, and accepts from the Seller, all right, title, and interest of the Seller in and to the Purchased Accounts, free and clear of any Liens.

3.    <u>Further Assurances</u>.  Each of the Parties agrees, from time to time, at the request of the any other Party, to execute and deliver such other instruments of conveyance, power of attorney, sale, transfer, or assignment and take such other actions as such other Party may reasonably request in order to more effectively consummate the transactions contemplated by this Agreement.

4.    <u>Terms of the Purchase Agreement</u>.  This Agreement is intended to evidence the consummation of the transactions contemplated by the Purchase Agreement and is subject to the terms and conditions set forth in the Purchase Agreement.    The terms of the Purchase Agreement, including, but not limited to, the representations, warranties, covenants, agreements, and indemnities relating to the Purchased Accounts are incorporated herein by this reference.  The Parties acknowledge and agree that the representations, warranties, covenants, agreements, and indemnities contained in the Purchase Agreement shall not be superseded hereby but shall remain in full force and effect to the full extent provided therein.  In the event of any conflict or inconsistency between the terms of the Purchase Agreement and the terms hereof, the terms of the Purchase Agreement shall govern.

5.    <u>Counterparts</u>.  This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement.  A signed copy of this Agreement delivered by facsimile, electronic mail, or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

*[Remainder of page intentionally left blank.]*

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date first above written.

**BUYER: The Litigation Practice Group P.C.**

By: _Daniel S March_____
  9D494DB1993341E
  Name: Daniel S. March
  Title: Managing Shareholder

**SELLER:**

**Debt Relief Group**

By: _____
  3ECDDBC6C1774C9...
  Name: William Burns
  Title: CEO

DocuSign Envelope ID: 5645EA9D-4E4C-4712-B98F-4ABC06FD692A

**Schedule 2.3**
**Wire Instructions**

<u>**$99,937.50**</u>

**Account Holder Name: Debt Relief Group**

**Address: 1800 Old Okeechobee Rd Suite 200, West Palm Beach, FL 33409**

**Routing Number:** ███████

**Account Number:** ███████

**EXHIBIT "10"**

**ACCOUNTS RECEIVABLE PURCHASE AGREEMENT**

This ACCOUNTS RECEIVABLE PURCHASE AGREEMENT (this "**Agreement**") is made as of March 14, 2023 (the "**Agreement Date**"), by and between The Litigation Practice Group PC (collectively the "**Buyer**"), and Debt Relief Group (the "**Seller**" or "**LPG**", and together with the Buyer, the "**Parties**"), and The Litigation Practice Group PC ("**LPG**").

**RECITALS**

WHEREAS, in the regular course of business, the Seller originates account receivables from **LPG** in connection with client on-boarding services provided by the Seller to LPG and its affiliates;

WHEREAS, the account receivables represent an obligation of various clients to pay Seller for services that Seller previously provided, but which LPG shall provide from the date of execution of this Agreement;

WHEREAS, the Seller desires to sell, assign, transfer, and deliver to the Buyer, and the Buyer desires to purchase, acquire, and accept from the Seller, certain of these account receivables (the "**Purchased Accounts**").

NOW, THEREFORE, in consideration of the covenants and representations set forth herein, the Parties, intending to be legally bound, agree as follows:

**ARTICLE 1.**
**DEFINITIONS**

Section 1.1     Certain Definitions.  Certain defined terms used in this Agreement are set forth on **Exhibit A**.

**ARTICLE 2.**
**ASSIGNMENT AND TRANSFER AND CONSIDERATION**

Section 2.1     Assignment of the Purchased Accounts to the Buyer.  Upon execution of this Agreement and subject to the terms and conditions set forth herein, the Seller shall sell, assign, transfer, and deliver, and the Buyer shall purchase, acquire, and accept from the Seller, all of the Seller's right, title, and interest in and to the Purchased Accounts set forth on the spreadsheet attached to this Agreement, free and clear of any Liens.  Other than the Purchased Accounts, the Buyer shall not purchase or acquire any other assets of the Seller (collectively, the "**Excluded Assets**").

Section 2.2     No Assumption of Liabilities.  The Buyer shall not assume any Liabilities of the Seller of any kind, whether known or unknown, contingent, matured, or otherwise, whether currently existing or hereinafter created (collectively, the "**Excluded Liabilities**").

Section 2.3     Payment of Purchase Price.  Buyer shall pay $330,039.88 (total purchase price) for the Purchased Accounts (the "**Purchase Price**") by wire transfer of immediately available funds in accordance with the wire transfer instructions set forth in **Schedule 2.3** (the "**Wire Instructions**").  The Purchased Accounts are set forth on the attached spreadsheet.

Section 2.4     Guarantee of LPG.  If any file acquired by buyer shall fail to make a first payment, LPG will replace the file and bear any cost associated with such replacement.  The replacement file shall yield no less than the receivable of the failed file.  In addition, if any any calendar month a total of less than 80% of files make a cleared payment, LPG shall replace any non-performing files in such month so that the performance of the file

DocuSign Envelope ID: 4DA5G98C-36AC-45AE-BEF1-5891B1871646

package as a whole equals 80%. This guarantee shall continue until the completion of the 24th month following execution of this agreement.

## ARTICLE 3.
## REPRESENTATIONS AND WARRANTIES OF THE SELLER

The Seller represents and warrants to the Buyer, as of the Agreement Date and as of the Closing Date, or, if expressly made as of a specified date, as of such specified date, as follows:

Section 3.1    Organization; Good Standing.  The Seller is a Limited Liability Company duly organized, validly existing, and in good standing under the Laws of the State of Delaware and is duly qualified to do business and is in good standing as a foreign corporation in each jurisdiction where the ownership or operation of the Business requires such qualification, except where the failure to be so qualified would not reasonably be expected to have, individually or in the aggregate, a material adverse effect on the business, results of operations, financial condition, or assets of the Seller.

Section 3.2    Power and Authority.  The Seller has all requisite right, power, and authority to execute, deliver, and perform this Agreement and the Transaction Agreements to which it is a party, to consummate the transactions contemplated hereby and thereby, and to perform its obligations hereunder and thereunder.  The execution and delivery of this Agreement and the Transaction Agreements by the Seller, and the consummation by the Seller of the transactions contemplated hereby and thereby, have been duly approved by the Seller, and no further action is required on the part of the Seller to authorize this Agreement, any Transaction Agreement to which it is a party, or the transactions contemplated hereby and thereby.  This Agreement has been, and each of the Transaction Agreements will be, duly and validly executed and delivered by the Seller and, assuming the due and valid authorization, execution, and delivery of this Agreement by the other Parties, and of each such Transaction Agreement by the other parties thereto, constitutes, or will constitute, a valid and binding obligation of the Seller, enforceable against it in accordance with its terms and conditions, except as enforcement may be limited by applicable bankruptcy, insolvency, reorganization, moratorium, and other Laws affecting enforcement of creditor's rights generally and except insofar as the availability of equitable remedies may be limited by applicable Law.

Section 3.3    Title to, and Sufficiency of, the Purchased Accounts.  The Seller has and shall convey to the Buyer, at the Closing, good, valid, transferable, and marketable title to, or valid leasehold interests in, all of the Purchased Accounts, free and clear of all Liens.

Section 3.4    Consents.  The Seller is not required to give any notice to, make any filing with, or obtain any authorization, consent, or approval of, any Governmental Body or Third Party, including a party to any assigned contract, in connection with the execution, delivery, and performance by the Seller of this Agreement or any of the Transaction Agreements to which it is a party or the consummation of the transactions contemplated hereby and thereby.

Section 3.5    No Conflicts. The execution and delivery by the Seller of this Agreement and each of the Transaction Agreements, and the consummation of the transactions contemplated hereby and thereby, will not conflict with, result in any violation of, or default under (with or without notice or lapse of time, or both), or give rise to an additional payment obligation, a right of termination, cancellation, modification, or acceleration of any obligation, or loss of any benefit, under: (a) any provision of the Organizational Documents of the Seller; (b) any contract to which the Seller is party, including, without limitation, any assigned contract; or (c) any Law or order applicable to the Seller or any of the Purchased Accounts.

Section 3.6 <u>Compliance with Laws</u>. The Seller has materially complied, and is now materially complying, with all Laws applicable to the ownership and use of the Purchased Accounts.

Section 3.7 <u>Legal Proceedings</u>. There is no Action of any nature pending or, to the Knowledge of the Seller, threatened against or by the Seller: (a) relating to or affecting the Purchased Accounts or (b) that challenges or seeks to prevent, enjoin, or otherwise delay the transactions contemplated by this Agreement and the Transaction Agreements. No event has occurred or circumstance exists that may give rise to, or serve as a basis for, any such Action.

Section 3.8 <u>Condition of Purchased Accounts</u>. Each Purchased Account shall have received no less than one processed payment.

Section 3.9 <u>Confidentiality</u>. Seller agrees and acknowledges that all Purchased Accounts, the pricing, and all terms set forth in this Agreement are confidential (together, the "**Confidential Information**"). Seller will at all times keep the Confidential Information in confidence and trust. Seller will not, without the prior written consent of an authorized officer of Buyer, (A) copy, use or disclose any Confidential Information, (B) deliver or disclose any Confidential Information to any person or entity outside the Buyer, or (C) use the Confidential Information for Seller's own use or use it to the detriment of Buyer. Notwithstanding the foregoing, Seller may, without consent, use the Confidential Information and disclose and deliver same to Seller's employees or agents, if applicable, who have a need to know, provided such employees or agents have entered into written agreements approved by Buyer and containing provisions at least as restrictive as these provisions. Seller agrees that violation of this Section 3.9. The Parties agree that the disclosure of the Confidential Information in violation of this Agreement may cause the Buyer irreparable harm and that any breach or threatened breach by the Seller entitles Buyer to seek injunctive relief, in addition to any other legal or equitable remedies available to it, in any court of competent jurisdiction.

## ARTICLE 4.
## REPRESENTATIONS AND WARRANTIES OF THE BUYER

The Buyer represents and warrants to the Seller, as of the Agreement Date and as of the Closing Date, or, if expressly made as of a specified date, as of such specified date, as follows:

Section 4.1 <u>Organization; Good Standing</u>. The Buyer is a limited liability company, duly organized, validly existing, and in good standing under the Laws of the State of Florida.

Section 4.2 <u>Power and Authority</u>. The Buyer has all requisite right, power, and authority to execute, deliver, and perform this Agreement and the Transaction Agreements to which it is a party, to consummate the transactions contemplated hereby and thereby, and to perform its obligations hereunder and thereunder. The execution and delivery of this Agreement and the Transaction Agreements by the Buyer, and the consummation by the Buyer of the transactions contemplated hereby and thereby, have been duly approved by the Buyer, and no further action is required on the part of the Buyer to authorize this Agreement, any Transaction Agreement to which it is a party, or the transactions contemplated hereby and thereby. This Agreement has been, and each of the Transaction Agreements will be, duly and validly executed and delivered by the Buyer and, assuming the due and valid authorization, execution, and delivery of this Agreement by the other Parties, and of each such Transaction Agreement by the other parties thereto, constitutes, or will constitute, a valid and binding obligation of the Buyer, enforceable against it in accordance with its terms and conditions, except as enforcement may be limited by applicable bankruptcy, insolvency, reorganization, moratorium and other Laws affecting enforcement of creditor's rights generally and except insofar as the availability of equitable remedies may be limited by applicable Law.

DocuSign Envelope ID: 4DA5G08C-36AC-45A5-BEF1-5891B1871CAA

Section 4.3    No Conflicts.  The execution and delivery by the Buyer of this Agreement and each of the Transaction Agreements, and the consummation of the transactions contemplated hereby and thereby, will not conflict with, result in any violation of, or default under (with or without notice or lapse of time, or both), or give rise to an additional payment obligation, a right of termination, cancellation, modification, or acceleration of, any obligation, or loss of any benefit under: (a) any provision of the Buyer's Organizational Documents; (b) any contract to which the Buyer is party, other than the Buyer Representation Agreement; or (c) any Law applicable to the Buyer.

Section 4.4    Sufficient Funds.  The Buyer has, and will have, sufficient funds available to make payment of the Purchase Price and consummate the transactions contemplated by this Agreement and the Transaction Agreements.

## ARTICLE 5.
## COVENANTS

Section 5.1    Appropriate Actions.

(a)    General.  Each of the Parties shall use commercially reasonable efforts to take all actions necessary to consummate the transactions contemplated by this Agreement as soon as reasonably practicable after the execution of this Agreement, including taking all actions necessary to comply promptly with all applicable Laws that may be imposed on it or any of its Affiliates with respect to the Closing.

## ARTICLE 6.
## CLOSING

Section 6.1    Closing.  The closing of the transactions contemplated by this Agreement (the "**Closing**") will take place upon the execution and delivery of this Agreement or at such other time, date, and place as the Parties may agree in writing.  The date on which the Closing occurs is hereinafter referred to as the "**Closing Date**."  The Parties agree that the Closing may take place by the electronic exchange of executed counterpart documents and the electronic transfer of funds.

Section 6.2    Closing Deliverables of the Seller.  At or prior to the Closing, Seller shall deliver to Buyer any of the following if requested by Buyer:  (i) a bill of sale and assignment and assumption agreement substantially in the form attached hereto as **Exhibit B** (the "**Bill of Sale and Assignment and Assumption Agreement**"), duly executed by the Seller, effecting the transfer and assignment to, and assumption by, the Buyer of the Purchased Accounts; and (ii) such other customary instruments of transfer, assumption, filings, or documents, in form and substance reasonably satisfactory to the Buyer, as may be required to give effect to this Agreement.

Section 6.3    Closing Deliverables of the Buyer.  At or prior to the Closing, the Seller shall have received the following: (i) the Upfront Cash Payment; and (ii) if requested pursuant to Section 6.2, the Bill of Sale and Assignment and Assumption Agreement, duly executed by the Buyer.

Section 6.4    Indemnification by the Seller.  Subject to the limitations set forth in this Article 6, the Seller agrees to indemnify and hold harmless the Buyer, including its shareholders, members, directors, managers, officers, employees, Affiliates, and agents (each, a "**Buyer Indemnified Party**" and, collectively, the "**Buyer Indemnified Parties**"), against all claims, losses, Liabilities, damages, deficiencies, diminutions in value, costs, interest, awards, judgments, penalties, and expenses, including reasonable out-of-pocket attorneys' and consultants' fees and expenses and including any such reasonable expenses incurred in connection with investigating, defending against, or settling any of the foregoing (each, a "**Loss**" and, collectively, the "**Losses**") paid, suffered, incurred, sustained, or accrued by any Buyer Indemnified Party, directly or indirectly, as a result of,

arising out of, or in connection with: (a) any inaccuracy in, or breach of, any of the representations or warranties of the Seller contained in this Agreement, (b) any breach or non-fulfillment of any covenant, agreement, or obligation to be performed by the Seller pursuant to this Agreement, (c) any Excluded Asset or any Excluded Liability.

Section 6.5    Indemnification by the Buyer.  Subject to the limitations set forth in this Article 6, the Buyer agrees to indemnify and hold harmless the Seller, including its Affiliates and agents (each, a "**Seller Indemnified Party**" and, collectively, the "**Seller Indemnified Parties**"), against all Losses paid, suffered, incurred, sustained, or accrued by any Seller Indemnified Party, directly or indirectly, as a result of, arising out of, or in connection with: (a) any inaccuracy in, or breach of, any of the representations or warranties of the Buyer contained in this Agreement; (b) any breach or non-fulfillment of any covenant, agreement, or obligation to be performed by the Buyer pursuant to this Agreement; (c) any event or occurance related to the Purchased Accounts or Buyer occurring after the Closing; or (d) resulting from any omissions or misstatements made by Buyer to investors or potential investors.

Section 6.6    Indemnification Procedures.

(a)    No Restraints.  Promptly following receipt by an Indemnified Party of notice by a Third Party (including any Governmental Body) of any complaint, dispute, or claim or the commencement of any audit, investigation, Action or proceeding with respect to which such Indemnified Party may be entitled to indemnification pursuant hereto (a "**Third-party Claim**"), such Indemnified Party shall provide written notice thereof to the Indemnifying Party, provided, however, that the failure to so notify the Indemnifying Party shall relieve the Indemnifying Party from Liability hereunder with respect to such Third-party Claim only if, and only to the extent that, such failure to so notify the Indemnifying Party results in the forfeiture by the Indemnifying Party of rights and defenses otherwise available to the Indemnifying Party with respect to such Third-party Claim.  The Indemnifying Party shall have the right, upon written notice delivered to the Indemnified Party within twenty days thereafter assuming full responsibility for any Losses resulting from such Third-party Claim, to assume the defense of such Third-party Claim, including the employment of counsel reasonably satisfactory to the Indemnified Party and the payment of the fees and disbursements of such counsel; provided, however, if the Indemnifying Party declines or fails to assume the defense of such Third-party Claim on the terms provided above or to employ counsel reasonably satisfactory to the Indemnified Party, in either case within such twenty day period, then any Losses shall include the reasonable fees and disbursements of counsel for the Indemnified Party as incurred.  In any Third-party Claim for which indemnification is being sought hereunder the Indemnified Party or the Indemnifying Party, whichever is not assuming the defense of such Third-party Claim, shall have the right to participate in such matter and to retain its own counsel at such Party's own expense.  The Indemnifying Party or the Indemnified Party (as the case may be) shall at all times use reasonable efforts to keep the Indemnifying Party or Indemnified Party (as the case may be) reasonably apprised of the status of the defense of any matter, the defense of which it is maintaining, and to cooperate in good faith with each other with respect to the defense of any such matter.

(b)    No Indemnified Party may settle or compromise any Third-party Claim or consent to the entry of any judgment with respect to which indemnification is being sought hereunder without the prior written consent of the Indemnifying Party (which may not be unreasonably withheld or delayed), unless (i) the Indemnifying Party fails to assume and maintain the defense of such Third-party Claim or (ii) such settlement, compromise, or consent includes an unconditional release of the Indemnifying Party and its officers, directors, employees and Affiliates from all Liability arising out of, or related to, such Third-party Claim.  An Indemnifying Party may not, without the prior written consent of the Indemnified Party, settle or compromise any Third-party Claim or consent to the entry of any judgment with respect to which indemnification is being sought hereunder unless such settlement, compromise, or consent (A) includes an unconditional release of the Indemnified Party and its officers, directors, employees, and Affiliates from all Liability arising out of, or related to, such Third-party

Claim, (B) does not contain any admission or statement suggesting any wrongdoing or Liability on behalf of the Indemnified Party, and (C) does not contain any equitable order, judgment, or term that in any manner affects, restrains, or interferes with the business of the Indemnified Party or any of the Indemnified Party's Affiliates.

(c)     If an Indemnified Party claims a right to payment pursuant hereto with respect to any matter not involving a Third-party Claim (a "**Direct Claim**"), such Indemnified Party shall send written notice of such claim to the appropriate Indemnifying Party (each, a "**Notice of Claim**").  Such Notice of Claim shall specify the basis for such Direct Claim.  The failure by any Indemnified Party so to notify the Indemnifying Party shall not relieve the Indemnifying Party from any Liability that it may have to such Indemnified Party with respect to any Direct Claim made pursuant to this Section 6.6(c).  If the Indemnifying Party does not notify the Indemnified Party within thirty days following its receipt of such Notice of Claim that the Indemnifying Party disputes its Liability to the Indemnified Party under this Article 6 or the amount thereof, the Direct Claim specified by the Indemnified Party in such Notice of Claim shall be conclusively deemed a Liability of the Indemnifying Party under this Article 6, and the Indemnifying Party shall pay the amount of such Liability to the Indemnified Party on demand or, in the case of any Notice of Claim in which the amount of the Direct Claim (or any portion of the Direct Claim) is estimated, on such later date when the amount of such Direct Claim (or such portion of such Direct Claim) becomes finally determined.  In the event that the Indemnifying Party has timely disputed its Liability with respect to such Direct Claim as provided above, as promptly as possible, such Indemnified Party and the appropriate Indemnifying Party shall establish the merits and amount of such Direct Claim (by mutual agreement, litigation, arbitration or otherwise) and, within five business days following the final determination of the merits and amount of such Direct Claim, the Indemnifying Party shall pay to the Indemnified Party an amount equal to such Direct Claim as determined hereunder.

## ARTICLE 7.
## MISCELLANEOUS

Section 7.1     Entire Agreement; Amendment.  This Agreement and the Transaction Agreements (including the exhibits hereto and thereto and the documents referred to therein) constitute the entire agreement among the Parties with respect to the subject matter hereof and supersede any prior understandings, agreements, or representations by or among the Parties, written or oral, to the extent they related in any way to the subject matter hereof.  This Agreement may be amended with the written consent of each of the Parties or any successor thereto by execution of an instrument in writing.

Section 7.2     Waivers.  The rights and remedies of the Parties to this Agreement are cumulative and not alternative.  To the maximum extent permitted by applicable Law: (a) no claim or right arising out of this Agreement or the documents referred to in this Agreement can be discharged by one Party, in whole or in part, by a waiver or renunciation of the claim or right unless in writing signed by the other Parties; (b) no waiver that may be given by a Party will be applicable except in the specific instance for what it is given; and (c) no notice to, or demand on, one Party will be deemed to be a waiver of any obligation of such Party or of the right of the Party giving such notice or demand to take further action without notice or demand as provided in this Agreement or the Transaction Agreements.

Section 7.3     Notices.  All notices and other communications required or permitted hereunder shall be made to the address of a Party listed on the signature page to this Agreement and shall be (a) in writing, (b) effective when given, and (c), in any event, deemed to be given upon receipt or, if earlier: (i) upon delivery, if delivered by hand; (ii) two business days after deposit with FedEx Express or similar recognized international overnight courier service, freight prepaid; or (iii) one business day after facsimile or electronic mail transmission. A Party may change the address to which notices, requests, demands, claims, and other communications hereunder are to be delivered by giving the other Parties advance written notice pursuant to the provisions above.

DocuSign Envelope ID: 4DA5G99C-36AC-45AE-BEF4-5891B1871C19

Section 7.4    <u>Successors and Assigns</u>.  This Agreement shall be binding upon, and inure to the benefit of, the Parties named herein and their respective successors and permitted assigns.  Neither this Agreement nor any rights or obligations of a Party hereunder shall be assigned by a Party (unless to an Affiliate of such Party) without the prior written consent of the other Parties.  This Agreement will be binding upon any permitted assignee of any Party.  No assignment shall have the effect of relieving any Party to this Agreement of any of its obligations hereunder.

Section 7.5    <u>Public Disclosure</u>.  Except as may be required by Law, the Seller shall not issue any statement or communication to any Third Party (other than its respective agents) regarding the subject matter of this Agreement or the transactions contemplated hereby, including, if applicable, the termination of this Agreement and the reasons therefor, without the prior written consent of the Buyer.

Section 7.6    <u>Expenses and Fees</u>.  Whether or not the Closing occurs, all fees and expenses incurred in connection with this transactions contemplated by this Agreement, including all legal, accounting, financial advisory, consulting and all other fees and expenses of Third Parties incurred by a Party in connection with the negotiation and effectuation of the terms and conditions of this Agreement and the transactions contemplated hereby, shall be the obligation of the respective Party incurring such fees and expenses.

Section 7.7    <u>Specific Performance</u>.  The Parties agree that irreparable damage would occur if any provision of this Agreement was not performed in accordance with the terms hereof and that the Parties shall be entitled to specific performance of the terms hereof, in addition to any other remedy to which they are entitled hereunder, at Law or in equity.

Section 7.8    <u>Counterparts</u>.  This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement.  A signed copy of this Agreement delivered by facsimile, electronic mail, or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

Section 7.9    <u>Governing Law</u>.  This Agreement shall, in all respects, be construed in accordance with, and governed by, the Laws of the State of California without regard to conflict of Laws principles.

Section 7.10    <u>Severability</u>.  Any term or provision of this Agreement that is invalid or unenforceable in any situation in any jurisdiction shall not affect the validity or enforceability of the remaining terms and provisions hereof or the validity or enforceability of the offending term or provision in any other situation or in any other jurisdiction.

Section 7.11    <u>Construction</u>.  The Parties have participated jointly in the negotiation and drafting of this Agreement.  In the event an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the Parties and no presumption or burden of proof shall arise favoring or disfavoring any Party by virtue of the authorship of any of the provisions of this Agreement.

DocuSign Envelope ID: 4DA5C09C-36AC-45AE-BEF1-5891B1874C1C

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the Agreement Date.

**BUYER:**

**The Litigation Practice Group P.C.**

By: _Daniel S March_

Name: Daniel S March
Title: Managing Shareholder

**SELLER:**

**Debt Relief Group**

By: _____

Name: William Burns
Title: CEO

**APPROVAL OF ASSIGNMENT AND GUARANTEE**

The assignment of the Purchased Accounts set forth in this Agreement as well as the guarantee included therein is hereby approved, and with respect to the Purchased Accounts, the Buyer shall have all rights of Buyer as set forth in this agreement.

**The Litigation Practice Group P.C.**

By: _Daniel S March_

Name: Daniel S. March
Title: Managing Shareholder

*[Signature Page to Accounts Receivable Purchase Agreement]*

DocuSign Envelope ID: 4DA5G99C-36AC-45AE-BEF1-589{B1871C10

**EXHIBIT A**

**DEFINITIONS**

As used in this Agreement, the following terms have the following meanings (terms defined in the singular to have a correlative meaning when used in the plural and vice versa).

(a)    "**Action**" shall mean any civil, criminal, or administrative action, claim, suit, demand, charge, citation, reexamination, opposition, interference, decree, injunction, mediation, hearing, notice of violation, demand letter, litigation, proceeding, labor dispute, arbitral action, governmental or other audit, inquiry, criminal prosecution, investigation, unfair labor practice charge, or complaint.

(b)    "**Agreement**" shall have the meaning set forth in the preamble to this Agreement.

(c)    "**Agreement Date**" shall have the meaning set forth in the preamble to this Agreement.

(d)    "**Affiliate**" shall mean (i) with respect to any non-natural Person, any Person that, directly or indirectly, through one or more intermediaries, controls, is controlled by, or is under common control with, such Person and (ii), with respect to any individual, (A) family members of such individual, by blood, adoption, or marriage, (B) such individual's spouse or ex-spouse and (C) any Person that is directly or indirectly under the control of any of the foregoing individuals.  For purposes of this definition, "control" (including with correlative meanings, the terms "controlling," "controlled by," and under "common control with") means the possession, directly or indirectly, of the power to direct the management and policies of a Person, whether through the ownership of voting securities, by contract, or otherwise.

(e)    "**Bill of Sale and Assignment and Assumption Agreement**" shall have the meaning set forth in Section 6.2.

(f)    "**Business**" shall mean the business of the Seller as conducted on the Agreement Date.

(g)    "**Buyer**" shall have the meaning set forth in the preamble to this Agreement.

(h)    "**Buyer Indemnified Parties**" shall have the meaning set forth in Section 6.4.

(i)    "**Closing**" shall have the meaning set forth in Section 6.1.

(j)    "**Closing Date**" shall have the meaning set forth in Section 6.1.

(k)    "**Direct Claim**" shall have the meaning set forth in Section 6.6(c).

(l)    "**Excluded Assets**" shall have the meaning set forth in Section 2.1.

(m)    "**Excluded Liabilities**" shall have the meaning set forth in Section 2.2.

(n)    "**Governmental Body**" shall mean any: (i) nation, province, state, county, city, town, village, district, or other jurisdiction of any nature; (ii) federal, provincial, state, local, municipal, foreign, or other government; (iii) governmental or quasi-governmental authority of any nature (including any governmental agency, branch, department, official, or entity and any court or other tribunal); (iv) multi-national organization or body; or (v) body exercising, or entitled to exercise, any administrative, executive, judicial, legislative, police, regulatory, or taxing authority or power of any nature.

DocuSign Envelope ID: 4DA5G99Q-36AC-45AE-BEF1-5891B1871246

(o)    "**Indebtedness**" means, without duplication and with respect to the Seller, all: (i) indebtedness for borrowed money; (ii) obligations for the deferred purchase price of property or services, (iii) long or short-term obligations evidenced by notes, bonds, debentures or other similar instruments; (iv) obligations under any interest rate, currency swap, or other hedging agreement or arrangement; (v) capital lease obligations; (vi) reimbursement obligations under any letter of credit, banker's acceptance or similar credit transactions; (vii) guarantees made by the Seller on behalf of any third party in respect of obligations of the kind referred to in the foregoing clauses (i) through (vi); and (viii) any unpaid interest, prepayment penalties, premiums, costs and fees that would arise or become due as a result of the prepayment of any of the obligations referred to in the foregoing clauses (i) through (vii).

(p)    "**Indemnified Party**" shall mean a Buyer Indemnified Party or a Seller Indemnified Party, as the case may be, making a claim for indemnification under Article 6.

(q)    "**Indemnifying Party**" shall mean a Party against whom a claim for indemnification is asserted under Article 6.

(r)    "**Knowledge**" shall mean, with respect to the Seller, the actual or constructive knowledge of all facts relevant to this transaction and the transacting parties, after due inquiry.

(s)    "**Law**" shall mean any law, statute, ordinance, regulation, rule, code, notice requirement, court decision, or agency guideline, of any foreign, federal, state, or local Governmental Body.

(t)    "**Liabilities**" shall mean any direct or indirect liability, Indebtedness, obligation, commitment, expense, claim, deficiency, guaranty, or endorsement of, or by, any Person of any type, known or unknown, and whether accrued, absolute, contingent, matured, unmatured, determined or undeterminable, on- or off-balance sheet, or other.

(u)    "**Lien**" shall mean any mortgage, pledge, lien, charge, claim, security interest, adverse claims of ownership or use, restrictions on transfer, defect of title, or other encumbrance of any sort.

(v)    "**Losses**" shall have the meaning set forth in Section 6.4.

(w)    "**Notice of Claim**" shall have the meaning set forth in Section 6.6(c).

(x)    "**Organizational Documents**" shall mean, with respect to a Person, the charter, bylaws, limited liability company agreement, and other organizational documents of such Person, in each case, as amended.

(y)    "**Party**" or "**Parties**" shall have the meaning set forth in the preamble to this Agreement.

(z)    "**Permitted Liens**" shall mean (i) Liens for Taxes not yet delinquent or being contested in good faith by appropriate proceedings, (ii) statutory Liens (including materialmen's, warehousemen's, mechanic's, repairmen's, landlord's, and other similar Liens) arising in the ordinary course of business securing payments not yet delinquent or being contested in good faith by appropriate proceedings, and (iii) restrictive covenants, easements, and defects, imperfections or irregularities of title, if any, of a nature that do not materially and adversely affect the assets or properties subject thereto.

(aa)    "**Person**" shall mean any individual, corporation (including any non-profit corporation), general or limited partnership, limited liability company, joint venture, estate, trust, association, organization, labor union, Governmental Body, or other entity.

DocuSign Envelope ID: 4DA5G99C-36AC-45A5-BEF1-589FB1871C46

(bb)    "**Purchase Price**" shall have the meaning set forth in <u>Section 2.3</u>.

(cc)    "**Purchased Accounts**" shall have the meaning set forth in the Recitals.

(dd)    "**Seller**" shall have the meaning set forth in the preamble to this Agreement.

(ee)    "**Seller Indemnified Parties**" shall have the meaning set forth in <u>Section 6.5</u>.

(ff)    "**Tax**" or "**Taxes**" shall mean any U.S. federal, state, local or non-U.S. income, gross receipts, license, payroll, employment, excise, severance, stamp, occupation, premium, windfall profits, environmental, customs duties, capital stock, escheat, franchise, profits, withholding, social security, unemployment, disability, real property, personal property, sales, use, transfer, registration, value added, alternative or add-on minimum, estimated, or other tax of any kind whatsoever, including any interest, penalty, or addition thereto, whether disputed or not.

(gg)    "**Tax Returns**" means any return, declaration, report, claim for refund, or information return or statement relating to Taxes, including any schedule or attachment thereto, and including any amendment thereof.

(hh)    "**Third Party**" or "**Third Parties**" shall mean any Person other than the Parties or their respective Affiliates.

(ii)    "**Third-party Claim**" shall have the meaning set forth in <u>Section 6.6(a)</u>.

(jj)    "**Transaction Agreements**" shall mean the Bill of Sale and Assignment and Assumption Agreement, and each other agreement, instrument, and/or certificate contemplated by this Agreement or such other agreements to be executed in connection with the transactions contemplated hereby or thereby.

(kk)    "**Upfront Cash Payment**" shall have the meaning set forth in <u>Section 2.3</u>.

(ll)    "**Wire Instructions**" shall have the meaning set forth in <u>Section 2.3</u>.

DocuSign Envelope ID: 4DA5G08G-36AC-45AE-BEF1-5891B1874C46

## EXHIBIT B

**FORM OF BILL OF SALE AND ASSIGNMENT AND ASSUMPTION AGREEMENT**

THIS BILL OF SALE AND ASSIGNMENT AND ASSUMPTION AGREEMENT (this **"Agreement"**), is made by and between **Buyer**, and **Seller**.  Each of the Seller and the Buyer are sometimes referred to herein, individually, as a **"Party"** and, collectively, as the **"Parties."**

WHEREAS, the Buyer and the Seller have entered into that certain Accounts Receivable Purchase Agreement, of even date herewith (the **"Purchase Agreement"**), pursuant to which the Seller has agreed to sell, assign, transfer, and deliver to the Buyer, and the Buyer has agreed to purchase, acquire, and accept from the Seller, all right, title, and interest of the Seller in and to the Purchased Accounts, free and clear of any Liens.

NOW, THEREFORE, in consideration of the covenants and representations set forth herein, and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the Parties, intending to be legally bound, agree as follows:

1.      <u>Defined Terms</u>.  Capitalized terms used but not otherwise defined in this Agreement shall have the meanings assigned to such terms in the Purchase Agreement.

2.      <u>Sale of Purchased Accounts; Assignment</u>.  The Seller hereby sells, assigns, transfers, and delivers to the Buyer, and the Buyer hereby purchases, acquires, and accepts from the Seller, all right, title, and interest of the Seller in and to the Purchased Accounts, free and clear of any Liens.

3.      <u>Further Assurances</u>.  Each of the Parties agrees, from time to time, at the request of the any other Party, to execute and deliver such other instruments of conveyance, power of attorney, sale, transfer, or assignment and take such other actions as such other Party may reasonably request in order to more effectively consummate the transactions contemplated by this Agreement.

4.      <u>Terms of the Purchase Agreement</u>.  This Agreement is intended to evidence the consummation of the transactions contemplated by the Purchase Agreement and is subject to the terms and conditions set forth in the Purchase Agreement.   The terms of the Purchase Agreement, including, but not limited to, the representations, warranties, covenants, agreements, and indemnities relating to the Purchased Accounts are incorporated herein by this reference.  The Parties acknowledge and agree that the representations, warranties, covenants, agreements, and indemnities contained in the Purchase Agreement shall not be superseded hereby but shall remain in full force and effect to the full extent provided therein.  In the event of any conflict or inconsistency between the terms of the Purchase Agreement and the terms hereof, the terms of the Purchase Agreement shall govern.

5.      <u>Counterparts</u>.  This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement.  A signed copy of this Agreement delivered by facsimile, electronic mail, or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

*[Remainder of page intentionally left blank.]*

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date first above written.

**BUYER: The Litigation Practice Group P.C.**

By: _____
Name: Daniel S. March
Title: Managing Shareholder

**SELLER:**

**Debt Relief Group**

By: _____
Name: William Burns
Title: CEO

DocuSign Envelope ID: 4DA5G08C-36AC-4EAE-BEF1-5891B1874C4C

**Schedule 2.3**
**Wire Instructions**

<u>**$330,039.88**</u>

**Account Holder Name: Debt Relief Group**

**Address: 1800 Old Okeechobee Rd Suite 200, West Palm Beach, FL 33409**

**Routing Number:** ████████

**Account Number:** ████████

DocuSign Envelope ID: 4DA5G98C-36AC-45AE-BEF1-5894B1871C10

| ProfileId | Name | Marketing Agent | Marketing Company | ProcessedDate |
|---|---|---|---|---|
| 696638270 | | | Debt Relief Group LLC | 2/10/2023 |
| 697358609 | | | Debt Relief Group LLC | 2/2/2023 |
| 699633386 | | | Debt Relief Group LLC | 2/3/2023 |
| 699668276 | | | Debt Relief Group LLC | 2/3/2023 |
| 699740093 | | | Debt Relief Group LLC | 2/3/2023 |
| 699750431 | | | Debt Relief Group LLC | 2/3/2023 |
| 699803399 | | | Debt Relief Group LLC | 2/3/2023 |
| 699817115 | | | Debt Relief Group LLC | 2/6/2023 |
| 699906386 | | | Debt Relief Group LLC | 2/3/2023 |
| 700383182 | | | Debt Relief Group LLC | 2/10/2023 |
| 700432319 | | | Debt Relief Group LLC | 2/3/2023 |
| 700454504 | | | Debt Relief Group LLC | 2/6/2023 |
| 700496570 | | | Debt Relief Group LLC | 2/10/2023 |
| 700533011 | | | Debt Relief Group LLC | 2/10/2023 |
| 700539998 | | | Debt Relief Group LLC | 2/3/2023 |
| 700617695 | | | Debt Relief Group LLC | 2/3/2023 |
| 700619504 | | | Debt Relief Group LLC | 2/10/2023 |
| 700620587 | | | Debt Relief Group LLC | 2/3/2023 |
| 700621928 | | | Debt Relief Group LLC | 2/10/2023 |
| 700628507 | | | Debt Relief Group LLC | 2/8/2023 |
| 700668221 | | | Debt Relief Group LLC | 2/3/2023 |
| 700684760 | | | Debt Relief Group LLC | 2/10/2023 |
| 700693838 | | | Debt Relief Group LLC | 2/6/2023 |
| 700734956 | | | Debt Relief Group LLC | 2/3/2023 |
| 700740179 | | | Debt Relief Group LLC | 2/10/2023 |
| 700744367 | | | Debt Relief Group LLC | 2/3/2023 |
| 702416072 | | | Debt Relief Group LLC | 2/10/2023 |
| 702418406 | | | Debt Relief Group LLC | 2/8/2023 |
| 702418922 | | | Debt Relief Group LLC | 2/3/2023 |
| 702451820 | | | Debt Relief Group LLC | 2/3/2023 |
| 702489926 | | | Debt Relief Group LLC | 2/7/2023 |
| 702541640 | | | Debt Relief Group LLC | 2/3/2023 |
| 703089770 | | | Debt Relief Group LLC | 2/3/2023 |
| 703098767 | | | Debt Relief Group LLC | 2/10/2023 |
| 703109384 | | | Debt Relief Group LLC | 2/3/2023 |
| 703141697 | | | Debt Relief Group LLC | 2/3/2023 |
| 703157027 | | | Debt Relief Group LLC | 2/3/2023 |
| 703168199 | | | Debt Relief Group LLC | 2/6/2023 |
| 703184123 | | | Debt Relief Group LLC | 2/3/2023 |
| 703188344 | | | Debt Relief Group LLC | 2/6/2023 |
| 703195982 | | | Debt Relief Group LLC | 2/6/2023 |
| 703201100 | | | Debt Relief Group LLC | 2/10/2023 |
| 703208027 | | | Debt Relief Group LLC | 2/3/2023 |
| 704127389 | | | Debt Relief Group LLC | 2/10/2023 |
| 704149472 | | | Debt Relief Group LLC | 2/6/2023 |
| 705707282 | | | Debt Relief Group LLC | 2/6/2023 |

| | | | |
|---|---|---|---|
| 705729185 | | Debt Relief Group LLC | 2/3/2023 |
| 705742229 | | Debt Relief Group LLC | 2/3/2023 |
| 705746174 | | Debt Relief Group LLC | 2/6/2023 |
| 705819710 | | Debt Relief Group LLC | 2/24/2023 |
| 705831773 | | Debt Relief Group LLC | 2/3/2023 |
| 705910322 | | Debt Relief Group LLC | 2/7/2023 |
| 705970487 | | Debt Relief Group LLC | 2/10/2023 |
| 705977948 | | Debt Relief Group LLC | 2/6/2023 |
| 706900973 | | Debt Relief Group LLC | 2/10/2023 |
| 707652794 | | Debt Relief Group LLC | 2/10/2023 |
| 707827070 | | Debt Relief Group LLC | 2/10/2023 |
| 707873795 | | Debt Relief Group LLC | 2/8/2023 |
| 709241861 | | Debt Relief Group LLC | 2/10/2023 |
| 709264619 | | Debt Relief Group LLC | 2/15/2023 |
| 709287860 | | Debt Relief Group LLC | 2/15/2023 |
| 709826933 | | Debt Relief Group LLC | 2/28/2023 |
| 709886498 | | Debt Relief Group LLC | 2/24/2023 |
| 709915439 | | Debt Relief Group LLC | 2/24/2023 |
| 709962002 | | Debt Relief Group LLC | 2/24/2023 |
| 709999955 | | Debt Relief Group LLC | 2/17/2023 |
| 710039426 | | Debt Relief Group LLC | 2/10/2023 |
| 710416877 | | Debt Relief Group LLC | 2/10/2023 |
| 710454611 | | Debt Relief Group LLC | 2/15/2023 |
| 710463260 | | Debt Relief Group LLC | 2/21/2023 |
| 710475176 | | Debt Relief Group LLC | 2/28/2023 |
| 710477438 | | Debt Relief Group LLC | 2/24/2023 |
| 710515790 | | Debt Relief Group LLC | 2/24/2023 |
| 710516531 | | Debt Relief Group LLC | 2/24/2023 |
| 714462080 | | Debt Relief Group LLC | 2/17/2023 |
| 643623071 | | Debt Relief Group LLC | 1/23/2023 |
| 646060295 | | Debt Relief Group LLC | 1/30/2023 |
| 646165121 | | Debt Relief Group LLC | 1/30/2023 |
| 652887050 | | Debt Relief Group LLC | 1/30/2023 |
| 653765057 | | Debt Relief Group LLC | 1/30/2023 |
| 654315161 | | Debt Relief Group LLC | 2/1/2023 |
| 656367929 | | Debt Relief Group LLC | 2/6/2023 |
| 656416058 | | Debt Relief Group LLC | 2/2/2023 |
| 657432977 | | Debt Relief Group LLC | 2/3/2023 |
| 658915481 | | Debt Relief Group LLC | 2/2/2023 |
| 659004338 | | Debt Relief Group LLC | 1/30/2023 |
| 659017391 | | Debt Relief Group LLC | 1/30/2023 |
| 659137595 | | Debt Relief Group LLC | 1/30/2023 |
| 659214965 | | Debt Relief Group LLC | 2/3/2023 |
| 659772557 | | Debt Relief Group LLC | 1/31/2023 |
| 661655735 | | Debt Relief Group LLC | 2/3/2023 |
| 661962614 | | Debt Relief Group LLC | 2/1/2023 |
| 663754385 | | Debt Relief Group LLC | 2/6/2023 |

DocuSign Envelope ID: 4DA5G98C-36AC-45AE-BEF1-5894B1871C4A

| | | |
|---|---|---|
| 665521112 | Debt Relief Group LLC | 1/20/2023 |
| 665901284 | Debt Relief Group LLC | 2/6/2023 |
| 666191171 | Debt Relief Group LLC | 1/30/2023 |
| 667694372 | Debt Relief Group LLC | 2/17/2023 |
| 672068414 | Debt Relief Group LLC | 1/27/2023 |
| 672245903 | Debt Relief Group LLC | 2/6/2023 |
| 673973306 | Debt Relief Group LLC | 1/31/2023 |
| 675800888 | Debt Relief Group LLC | 1/30/2023 |
| 677262725 | Debt Relief Group LLC | 2/17/2023 |
| 681481451 | Debt Relief Group LLC | 1/27/2023 |
| 681908957 | Debt Relief Group LLC | 2/6/2023 |
| 683812250 | Debt Relief Group LLC | 1/30/2023 |
| 683831297 | Debt Relief Group LLC | 1/27/2023 |
| 683977595 | Debt Relief Group LLC | 1/27/2023 |
| 684027593 | Debt Relief Group LLC | 2/3/2023 |
| 684095627 | Debt Relief Group LLC | 2/1/2023 |
| 686230976 | Debt Relief Group LLC | 1/30/2023 |
| 686479319 | Debt Relief Group LLC | 2/3/2023 |
| 686638226 | Debt Relief Group LLC | 1/27/2023 |
| 686956394 | Debt Relief Group LLC | 2/3/2023 |
| 687060155 | Debt Relief Group LLC | 2/6/2023 |
| 687314570 | Debt Relief Group LLC | 2/3/2023 |
| 687361664 | Debt Relief Group LLC | 1/27/2023 |
| 689862962 | Debt Relief Group LLC | 1/30/2023 |
| 690074852 | Debt Relief Group LLC | 1/27/2023 |
| 690593879 | Debt Relief Group LLC | 2/6/2023 |
| 690615287 | Debt Relief Group LLC | 2/3/2023 |
| 691688366 | Debt Relief Group LLC | 2/6/2023 |
| 692960204 | Debt Relief Group LLC | 1/30/2023 |
| 693347213 | Debt Relief Group LLC | 1/30/2023 |
| 693351656 | Debt Relief Group LLC | 1/27/2023 |
| 693358022 | Debt Relief Group LLC | 2/6/2023 |
| 693445991 | Debt Relief Group LLC | 2/3/2023 |
| 693455345 | Debt Relief Group LLC | 2/2/2023 |
| 693509999 | Debt Relief Group LLC | 2/1/2023 |
| 693764771 | Debt Relief Group LLC | 1/27/2023 |
| 693872762 | Debt Relief Group LLC | 2/28/2023 |
| 693937667 | Debt Relief Group LLC | 2/17/2023 |
| 693939302 | Debt Relief Group LLC | 2/1/2023 |
| 693967481 | Debt Relief Group LLC | 2/3/2023 |
| 694126976 | Debt Relief Group LLC | 2/3/2023 |
| 694584464 | Debt Relief Group LLC | 2/3/2023 |
| 694655984 | Debt Relief Group LLC | 2/3/2023 |
| 695171810 | Debt Relief Group LLC | 2/3/2023 |
| 695222807 | Debt Relief Group LLC | 2/3/2023 |
| 696322373 | Debt Relief Group LLC | 2/1/2023 |
| 696417461 | Debt Relief Group LLC | 2/1/2023 |

DocuSign Envelope ID: 4DA5G98C-38AC-45AE-BEF4-5894B1871C40

| | | |
|---|---|---|
| 696728855 | Debt Relief Group LLC | 2/2/2023 |
| 697258469 | Debt Relief Group LLC | 2/6/2023 |
| 699637349 | Debt Relief Group LLC | 2/7/2023 |
| 699683879 | Debt Relief Group LLC | 1/31/2023 |
| 699693353 | Debt Relief Group LLC | 2/14/2023 |
| 699845762 | Debt Relief Group LLC | 2/6/2023 |
| 700532081 | Debt Relief Group LLC | 2/28/2023 |
| 700549286 | Debt Relief Group LLC | 2/16/2023 |
| 700620452 | Debt Relief Group LLC | 2/3/2023 |
| 700655399 | Debt Relief Group LLC | 2/3/2023 |
| 700693712 | Debt Relief Group LLC | 2/3/2023 |
| 700747133 | Debt Relief Group LLC | 1/31/2023 |
| 700758821 | Debt Relief Group LLC | 2/3/2023 |
| 702409091 | Debt Relief Group LLC | 2/17/2023 |
| 702450215 | Debt Relief Group LLC | 2/6/2023 |
| 707757527 | Debt Relief Group LLC | 2/24/2023 |
| 708936866 | Debt Relief Group LLC | 2/28/2023 |
| 709104728 | Debt Relief Group LLC | 2/27/2023 |
| 710464610 | Debt Relief Group LLC | 2/13/2023 |
| 710485532 | Debt Relief Group LLC | 2/17/2023 |
| 710528396 | Debt Relief Group LLC | 2/13/2023 |
| 711966653 | Debt Relief Group LLC | 2/15/2023 |
| 711972527 | Debt Relief Group LLC | 2/24/2023 |
| 711973490 | Debt Relief Group LLC | 2/15/2023 |
| 712079714 | Debt Relief Group LLC | 2/23/2023 |
| 712160270 | Debt Relief Group LLC | 2/17/2023 |
| 712172990 | Debt Relief Group LLC | 2/17/2023 |
| 712174961 | Debt Relief Group LLC | 2/28/2023 |
| 712290644 | Debt Relief Group LLC | 2/27/2023 |
| 712412918 | Debt Relief Group LLC | 2/24/2023 |
| 712691021 | Debt Relief Group LLC | 2/15/2023 |
| 712926119 | Debt Relief Group LLC | 2/22/2023 |
| 713144237 | Debt Relief Group LLC | 2/15/2023 |
| 713154341 | Debt Relief Group LLC | 2/28/2023 |
| 713194673 | Debt Relief Group LLC | 2/21/2023 |
| 713234003 | Debt Relief Group LLC | 2/17/2023 |
| 713253401 | Debt Relief Group LLC | 2/17/2023 |
| 713320349 | Debt Relief Group LLC | 2/27/2023 |
| 713335904 | Debt Relief Group LLC | 2/24/2023 |
| 713371730 | Debt Relief Group LLC | 2/16/2023 |
| 713375036 | Debt Relief Group LLC | 2/16/2023 |
| 713507618 | Debt Relief Group LLC | 2/16/2023 |
| 713546510 | Debt Relief Group LLC | 2/22/2023 |
| 713554115 | Debt Relief Group LLC | 2/22/2023 |
| 713575715 | Debt Relief Group LLC | 2/28/2023 |
| 713613110 | Debt Relief Group LLC | 2/16/2023 |
| 714485195 | Debt Relief Group LLC | 2/22/2023 |



| 71456964 | Debt Relief Group LLC | 2/27/2023 |
| 71458316 | Debt Relief Group LLC | 2/22/2023 |
| 71463089 | Debt Relief Group LLC | 2/22/2023 |
| 71516871 | Debt Relief Group LLC | 2/27/2023 |
| 71578939 | Debt Relief Group LLC | 2/24/2023 |
| 71664187 | Debt Relief Group LLC | 2/23/2023 |
| 71669441 | Debt Relief Group LLC | 2/21/2023 |

| PaymentAmount | | PaymentStatus | ClearedDate | Debt | |
|---|---|---|---|---|---|
| $ | 250.71 | cleared | 2/10/2023 | $ | 6,944.80 |
| $ | 281.48 | cleared | 2/2/2023 | $ | 13,639.00 |
| $ | 259.98 | cleared | 2/3/2023 | $ | 12,270.00 |
| $ | 287.03 | cleared | 2/3/2023 | $ | 11,043.00 |
| $ | 251.53 | cleared | 2/3/2023 | $ | 6,494.52 |
| $ | 264.92 | cleared | 2/3/2023 | $ | 8,090.00 |
| $ | 253.91 | cleared | 2/3/2023 | $ | 7,089.00 |
| $ | 259.85 | cleared | 2/10/2023 | $ | 14,712.00 |
| $ | 329.98 | cleared | 2/3/2023 | $ | 23,360.00 |
| $ | 498.42 | cleared | 2/10/2023 | $ | 45,947.00 |
| $ | 253.55 | cleared | 2/3/2023 | $ | 7,544.00 |
| $ | 251.37 | cleared | 2/6/2023 | $ | 11,956.00 |
| $ | 286.51 | cleared | 2/10/2023 | $ | 21,729.00 |
| $ | 251.83 | cleared | 2/10/2023 | $ | 11,547.98 |
| $ | 290.01 | cleared | 2/3/2023 | $ | 16,134.24 |
| $ | 150.00 | cleared | 2/3/2023 | $ | 8,769.00 |
| $ | 355.29 | cleared | 2/10/2023 | $ | 17,754.00 |
| $ | 320.22 | cleared | 2/3/2023 | $ | 15,349.00 |
| $ | 253.02 | cleared | 2/10/2023 | $ | 6,340.00 |
| $ | 262.26 | cleared | 2/8/2023 | $ | 9,005.00 |
| $ | 255.81 | cleared | 2/3/2023 | $ | 8,199.00 |
| $ | 253.94 | cleared | 2/10/2023 | $ | 16,993.00 |
| $ | 265.31 | cleared | 2/6/2023 | $ | 24,814.00 |
| $ | 317.38 | cleared | 2/3/2023 | $ | 15,154.00 |
| $ | 251.81 | cleared | 2/10/2023 | $ | 6,145.00 |
| $ | 257.68 | cleared | 2/3/2023 | $ | 18,434.00 |
| $ | 253.01 | cleared | 2/10/2023 | $ | 9,398.00 |
| $ | 252.78 | cleared | 2/8/2023 | $ | 12,065.00 |
| $ | 291.94 | cleared | 2/3/2023 | $ | 26,820.00 |
| $ | 251.71 | cleared | 2/3/2023 | $ | 11,539.00 |
| $ | 252.67 | cleared | 2/7/2023 | $ | 8,723.00 |
| $ | 250.79 | cleared | 2/3/2023 | $ | 9,502.00 |
| $ | 262.02 | cleared | 2/3/2023 | $ | 17,510.00 |
| $ | 472.63 | cleared | 2/10/2023 | $ | 25,800.00 |
| $ | 252.95 | cleared | 2/3/2023 | $ | 7,995.00 |
| $ | 253.60 | cleared | 2/3/2023 | $ | 8,775.00 |
| $ | 253.86 | cleared | 2/3/2023 | $ | 6,226.00 |
| $ | 252.45 | cleared | 2/6/2023 | $ | 14,269.00 |
| $ | 254.37 | cleared | 2/3/2023 | $ | 6,771.00 |
| $ | 318.95 | cleared | 2/10/2023 | $ | 15,262.00 |
| $ | 252.13 | cleared | 2/6/2023 | $ | 10,383.00 |
| $ | 251.36 | cleared | 2/10/2023 | $ | 7,591.00 |
| $ | 265.42 | cleared | 2/3/2023 | $ | 11,591.00 |
| $ | 250.71 | cleared | 2/10/2023 | $ | 12,861.00 |
| $ | 240.14 | cleared | 2/6/2023 | $ | 6,660.00 |
| $ | 265.30 | cleared | 2/6/2023 | $ | 13,031.00 |

| | | | | | |
|---|---|---|---|---|---|
| $ | 255.74 | cleared | 2/3/2023 | $ | 18,212.00 |
| $ | 253.46 | cleared | 2/3/2023 | $ | 8,976.00 |
| $ | 247.19 | cleared | 2/6/2023 | $ | 7,239.00 |
| $ | 301.75 | cleared | 2/24/2023 | $ | 43,105.00 |
| $ | 257.88 | cleared | 2/3/2023 | $ | 7,752.00 |
| $ | 252.69 | cleared | 2/7/2023 | $ | 10,139.00 |
| $ | 250.81 | cleared | 2/10/2023 | $ | 7,513.00 |
| $ | 363.84 | cleared | 2/6/2023 | $ | 30,567.00 |
| $ | 276.12 | cleared | 2/10/2023 | $ | 20,542.07 |
| $ | 307.57 | cleared | 2/10/2023 | $ | 19,912.00 |
| $ | 291.06 | cleared | 2/10/2023 | $ | 22,249.00 |
| $ | 307.94 | cleared | 2/8/2023 | $ | 33,850.00 |
| $ | 268.99 | cleared | 2/10/2023 | $ | 11,836.00 |
| $ | 252.91 | cleared | 2/15/2023 | $ | 8,461.19 |
| $ | 251.96 | cleared | 2/15/2023 | $ | 17,287.00 |
| $ | 288.12 | cleared | 2/28/2023 | $ | 12,110.00 |
| $ | 252.97 | cleared | 2/24/2023 | $ | 9,636.00 |
| $ | 302.43 | cleared | 2/24/2023 | $ | 21,194.00 |
| $ | 253.58 | cleared | 2/24/2023 | $ | 6,737.00 |
| $ | 253.73 | cleared | 2/17/2023 | $ | 13,937.00 |
| $ | 283.17 | cleared | 2/10/2023 | $ | 8,966.00 |
| $ | 271.93 | cleared | 2/10/2023 | $ | 18,057.00 |
| $ | 252.18 | cleared | 2/15/2023 | $ | 8,272.00 |
| $ | 252.37 | cleared | 2/21/2023 | $ | 11,266.00 |
| $ | 253.46 | cleared | 2/28/2023 | $ | 8,568.00 |
| $ | 265.82 | cleared | 2/24/2023 | $ | 24,900.00 |
| $ | 255.76 | cleared | 2/24/2023 | $ | 8,138.70 |
| $ | 253.83 | cleared | 2/24/2023 | $ | 16,195.00 |
| $ | 276.20 | cleared | 2/17/2023 | $ | 20,551.00 |
| $ | 275.96 | cleared | 2/1/2023 | $ | 8,620.00 |
| $ | 254.90 | cleared | 2/8/2023 | $ | 9,511.00 |
| $ | 250.35 | cleared | 2/8/2023 | $ | 13,818.00 |
| $ | 255.53 | cleared | 2/8/2023 | $ | 12,732.00 |
| $ | 284.70 | cleared | 2/8/2023 | $ | 16,949.00 |
| $ | 248.15 | cleared | 2/10/2023 | $ | 7,285.00 |
| $ | 266.13 | cleared | 2/10/2023 | $ | 11,640.00 |
| $ | 258.02 | cleared | 2/13/2023 | $ | 11,084.00 |
| $ | 251.75 | cleared | 2/14/2023 | $ | 9,095.00 |
| $ | 253.36 | cleared | 2/13/2023 | $ | 11,213.00 |
| $ | 252.10 | cleared | 2/8/2023 | $ | 9,835.00 |
| $ | 251.57 | cleared | 2/8/2023 | $ | 13,967.00 |
| $ | 359.12 | cleared | 2/8/2023 | $ | 27,170.00 |
| $ | 460.50 | cleared | 2/14/2023 | $ | 13,486.00 |
| $ | 275.65 | cleared | 2/9/2023 | $ | 20,488.00 |
| $ | 252.20 | cleared | 2/14/2023 | $ | 9,121.00 |
| $ | 250.99 | cleared | 2/10/2023 | $ | 16,344.00 |
| $ | 492.06 | cleared | 2/10/2023 | $ | 17,627.00 |

DocuSign Envelope ID: 4DA5G99G-36AC-45AE-BEF4-5894B1871C14

| | | | | | | |
|---|---|---|---|---|---|---|
| $ | 262.87 | cleared | 2/3/2023 | | $ | 11,892.00 |
| $ | 252.29 | cleared | 2/10/2023 | | $ | 6,845.00 |
| $ | 251.59 | cleared | 2/3/2023 | | $ | 6,814.00 |
| $ | 154.30 | cleared | 2/17/2023 | | $ | 21,986.00 |
| $ | 252.30 | cleared | 2/7/2023 | | $ | 8,135.00 |
| $ | 250.67 | cleared | 2/10/2023 | | $ | 7,329.00 |
| $ | 249.15 | cleared | 2/9/2023 | | $ | 7,333.00 |
| $ | 274.29 | cleared | 2/3/2023 | | $ | 18,299.00 |
| $ | 275.90 | cleared | 2/17/2023 | | $ | 6,911.00 |
| $ | 297.35 | cleared | 2/2/2023 | | $ | 17,797.00 |
| $ | 254.07 | cleared | 2/10/2023 | | $ | 9,011.00 |
| $ | 251.36 | cleared | 2/3/2023 | | $ | 9,299.00 |
| $ | 251.80 | cleared | 2/2/2023 | | $ | 8,881.00 |
| $ | 250.49 | cleared | 2/2/2023 | | $ | 12,769.00 |
| $ | 289.75 | cleared | 2/9/2023 | | $ | 18,232.00 |
| $ | 248.13 | cleared | 2/7/2023 | | $ | 9,471.00 |
| $ | 282.67 | cleared | 2/3/2023 | | $ | 12,774.11 |
| $ | 252.18 | cleared | 2/9/2023 | | $ | 12,464.00 |
| $ | 349.81 | cleared | 2/2/2023 | | $ | 17,378.00 |
| $ | 251.03 | cleared | 2/9/2023 | | $ | 12,814.00 |
| $ | 570.28 | cleared | 2/10/2023 | | $ | 30,939.00 |
| $ | 253.07 | cleared | 2/9/2023 | | $ | 6,410.00 |
| $ | 609.58 | cleared | 2/2/2023 | | $ | 35,191.00 |
| $ | 309.07 | cleared | 2/3/2023 | | $ | 27,302.00 |
| $ | 455.23 | cleared | 2/2/2023 | | $ | 41,011.00 |
| $ | 304.83 | cleared | 2/10/2023 | | $ | 21,441.00 |
| $ | 256.38 | cleared | 2/9/2023 | | $ | 8,000.00 |
| $ | 254.53 | cleared | 2/10/2023 | | $ | 8,110.00 |
| $ | 252.84 | cleared | 2/3/2023 | | $ | 12,517.00 |
| $ | 297.01 | cleared | 2/3/2023 | | $ | 9,630.00 |
| $ | 275.07 | cleared | 2/2/2023 | | $ | 15,316.00 |
| $ | 252.76 | cleared | 2/10/2023 | | $ | 8,965.00 |
| $ | 435.82 | cleared | 2/9/2023 | | $ | 23,276.00 |
| $ | 347.79 | cleared | 2/8/2023 | | $ | 28,732.00 |
| $ | 344.23 | cleared | 2/7/2023 | | $ | 28,326.00 |
| $ | 257.66 | cleared | 2/2/2023 | | $ | 12,902.00 |
| $ | 378.44 | cleared | 2/28/2023 | | $ | 39,785.00 |
| $ | 280.03 | cleared | 2/17/2023 | | $ | 20,989.00 |
| $ | 529.46 | cleared | 2/7/2023 | | $ | 32,172.00 |
| $ | 270.33 | cleared | 2/9/2023 | | $ | 17,892.00 |
| $ | 253.36 | cleared | 2/9/2023 | | $ | 7,064.00 |
| $ | 251.36 | cleared | 2/9/2023 | | $ | 15,498.00 |
| $ | 254.82 | cleared | 2/9/2023 | | $ | 23,025.00 |
| $ | 253.26 | cleared | 2/9/2023 | | $ | 6,350.00 |
| $ | 321.83 | cleared | 2/9/2023 | | $ | 14,667.00 |
| $ | 252.10 | cleared | 2/7/2023 | | $ | 9,835.00 |
| $ | 254.14 | cleared | 2/7/2023 | | $ | 10,517.00 |

| | | | | |
|---|---|---|---|---|
| $ | 253.12 | cleared | 2/8/2023 | $ 8,748.00 |
| $ | 271.77 | cleared | 2/10/2023 | $ 9,151.00 |
| $ | 257.61 | cleared | 2/13/2023 | $ 12,898.47 |
| $ | 290.13 | cleared | 2/6/2023 | $ 19,929.00 |
| $ | 252.95 | cleared | 2/14/2023 | $ 10,156.00 |
| $ | 251.74 | cleared | 2/10/2023 | $ 10,357.00 |
| $ | 255.58 | cleared | 2/28/2023 | $ 20,547.00 |
| $ | 259.24 | cleared | 2/16/2023 | $ 6,125.00 |
| $ | 690.36 | cleared | 2/9/2023 | $ 61,095.00 |
| $ | 393.00 | cleared | 2/9/2023 | $ 33,899.00 |
| $ | 446.38 | cleared | 2/9/2023 | $ 30,000.00 |
| $ | 278.73 | cleared | 2/6/2023 | $ 12,504.00 |
| $ | 251.32 | cleared | 2/9/2023 | $ 7,437.00 |
| $ | 251.25 | cleared | 2/17/2023 | $ 14,901.33 |
| $ | 268.36 | cleared | 2/10/2023 | $ 11,465.00 |
| $ | 436.79 | cleared | 2/24/2023 | $ 27,601.00 |
| $ | 146.47 | cleared | 2/28/2023 | $ 14,493.00 |
| $ | 281.88 | cleared | 2/27/2023 | $ 21,200.00 |
| $ | 399.75 | cleared | 2/17/2023 | $ 34,671.00 |
| $ | 377.60 | cleared | 2/24/2023 | $ 28,925.00 |
| $ | 252.34 | cleared | 2/17/2023 | $ 7,018.00 |
| $ | 260.93 | cleared | 2/15/2023 | $ 12,341.00 |
| $ | 326.92 | cleared | 2/24/2023 | $ 23,713.00 |
| $ | 251.04 | cleared | 2/15/2023 | $ 7,733.00 |
| $ | 299.99 | cleared | 2/23/2023 | $ 18,325.00 |
| $ | 254.57 | cleared | 2/24/2023 | $ 8,437.00 |
| $ | 268.51 | cleared | 2/24/2023 | $ 17,705.00 |
| $ | 268.90 | cleared | 2/28/2023 | $ 11,830.00 |
| $ | 388.92 | cleared | 2/27/2023 | $ 33,433.00 |
| $ | 328.40 | cleared | 2/24/2023 | $ 8,523.00 |
| $ | 253.46 | cleared | 2/15/2023 | $ 8,976.00 |
| $ | 250.67 | cleared | 2/28/2023 | $ 15,000.00 |
| $ | 253.12 | cleared | 2/15/2023 | $ 11,064.00 |
| $ | 251.52 | cleared | 2/28/2023 | $ 8,094.00 |
| $ | 252.21 | cleared | 2/21/2023 | $ 12,021.00 |
| $ | 317.76 | cleared | 2/17/2023 | $ 30,808.00 |
| $ | 254.25 | cleared | 2/17/2023 | $ 22,895.00 |
| $ | 252.80 | cleared | 2/27/2023 | $ 16,536.00 |
| $ | 253.26 | cleared | 2/24/2023 | $ 21,679.00 |
| $ | 252.89 | cleared | 2/16/2023 | $ 10,434.00 |
| $ | 251.97 | cleared | 2/16/2023 | $ 7,001.49 |
| $ | 251.50 | cleared | 2/23/2023 | $ 8,461.00 |
| $ | 329.46 | cleared | 2/22/2023 | $ 20,977.00 |
| $ | 273.98 | cleared | 2/28/2023 | $ 8,525.00 |
| $ | 251.04 | cleared | 2/28/2023 | $ 7,733.00 |
| $ | 262.20 | cleared | 2/16/2023 | $ 12,792.00 |
| $ | 258.57 | cleared | 2/28/2023 | $ 13,902.00 |



| | | | | | |
|---|---|---|---|---|---|
| $ | 282.66 | cleared | 2/27/2023 | $ | 9,314.00 |
| $ | 255.56 | cleared | 2/28/2023 | $ | 10,915.00 |
| $ | 277.48 | cleared | 2/28/2023 | $ | 12,418.00 |
| $ | 258.74 | cleared | 2/27/2023 | $ | 13,916.46 |
| $ | 256.98 | cleared | 2/24/2023 | $ | 16,060.00 |
| $ | 302.08 | cleared | 2/23/2023 | $ | 23,508.00 |
| $ | 301.40 | cleared | 2/21/2023 | $ | 21,088.00 |
| | | | | $ | 2,945,956.36 |
| | | | 7.50% | | 330,039.88 |

Exhibit "10"
Page 256

**EXHIBIT "11"**



*Legal  Counsel.*

**DINSMORE & SHOHL** LLP
100 West Main Street, Suite 900
Lexington, Kentucky 40507
www.dinsmore.com

Tyler Powell
(859) 425-1046 (direct) ^ (859) 425-1099 (fax)
Tyler.powell@dinsmore.com

September 15, 2023

**CONFIDENTIAL SETTLEMENT COMMUNICATION
SUBJECT TO FEDERAL RULE OF EVIDENCE 408**

Debt Relief Group LLC
1800 Old Okeechobee Rd, Suite 200
West Palm Beach, FL 33409
jritter@debtrg.com
JWhite@wrslawyers.com
jlee@wrslawyers.com

      Re:     In re: The Litigation Practice Group, P.C.
             U.S. Bankruptcy Court, Central District of California, Case No. 8:23-bk-10571

Dear Sir/Madam:

      This firm represents Richard A. Marshack, solely in his capacity as Chapter 11 Trustee ("Trustee") for the bankruptcy estate of The Litigation Practice Group, P.C. ("Debtor") in the above-referenced bankruptcy case. Pursuant to 11 U.S.C. § 1107 and his appointment as Trustee, the Trustee has the obligation to investigate and pursue claims, including avoidance actions.

      After a review of the Debtor's books and records, the Trustee believes that he may have claims against you to avoid and recover certain payments. This letter is written in an attempt to settle such claims, and its contents may not be used for any other purpose.

      Section 547 of the Bankruptcy Code permits a trustee or debtor-in-possession to avoid certain payments made to creditors within the 90-day period preceding the filing of a bankruptcy case. We have completed our preliminary investigation and have identified certain transfers from the Debtor(s) to you within the 90-day period prior to March 20, 2023, the date upon which the Debtor filed its bankruptcy case. These transfers are listed on the attached "Preference Transfer Schedule" showing the date and amount, according to the Debtor's books and records, of each transfer or other payment. The payments referenced on the "Preference Transfer Schedule" total $383,148.73. It appears that these transfers are preferential transfers which can be avoided by the Trustee and recovered from you pursuant to 11 U.S.C. §§ 547(b) and 550(a). This means that the Trustee can file suit in the bankruptcy court to recover these sums and object to payment of any claims you have against the Debtor until the suit is resolved.

      Additionally, if you have filed a proof of claim against the Debtor, that claim may be disallowed pursuant to Section 502(d) of the Bankruptcy Code for failure to return an avoidable

transfer. This means that if the preference claims against you are not resolved, then you may not receive a distribution from the Debtor's bankruptcy estate. The Trustee reserves the right to object to any proof of claim that you have filed or may file in the debtors' bankruptcy cases.

If the payment proposal above is acceptable, please sign the original of this letter where indicated and return it with the appropriate payment no later than September 27, 2023. Please make payment to the order of Richard A. Marshack, Chapter 11 Trustee. All funds sent will be held in the Trustee's account for this case pending further orders of the Bankruptcy Court.

In the alternative, if you believe a valid defense to recovery exists for some or all of the transfers from the Debtor, please bring such defenses to our attention and we will assess any evidence you provide in support of a defense. We have made efforts to analyze your reasonably known affirmative defenses to the avoidance of the preference payments. Based on our currently available information and given the nature of your relationship with the Debtor, we do not believe there are any potential defenses to reduce your liability for the preference payments. There may be information or facts that we do not have to assess your potential defenses. If you intend to assert a defense, please provide all documents evidencing any alleged defenses under 11 U.S.C. § 547(c), including, but not limited to, contracts, invoices and any other documentation showing the date, terms and amounts for the transfers received and any documents evidencing shipment dates as to goods and services provided by you to the Debtors. To properly assert a defense, such information must show the date of receipt of the Debtors' payment and the amount, deposit date, and any proof of deposit for any or all of the transfers. In addition, if you assert an ordinary course of business defense, please provide the previous information for the one year period immediately preceding March of 2023, or for the period that you actually did business with the Debtor, if less than one year. Please make arrangements to provide any evidence in support of a defense to us as soon as possible.

If we have not received any reply to this letter by September 28, 2023, we will proceed to pursue recovery of the preferential transfers by filing suit against you in the bankruptcy court. The Trustee also reserves all rights to bring additional claims against you as the investigation into your relationship with the Debtor continues and/or after discovery begins once a suit is filed.

Of course, we would be happy to discuss this matter with you or your counsel.

Very truly yours,

DINSMORE & SHOHL LLP

Tyler Powell, Partner of Counsel

The payment proposal set forth above is understood, acknowledged and voluntarily agreed to.  In exchange for a waiver and release from all claims that could be asserted by the Trustee of The Litigation Practice Group, P.C. pursuant to 11 U.S.C. §§ 547 and 550, I am authorized to accept this proposal on behalf of Point Break Holdings, LLC.  The sum of $_____ is enclosed.  I understand I may amend my claim to include the amount paid as part of my unsecured claim.

_____

**BY**: _____

**TITLE**: _____

**DATE**: _____

*Enclosure*

3

## The Litigation Practice Group, P.C. Preference Transfer Schedule

| Vendor Name | Payment Date | Payment Amount |
|---|---|---|
| Debt Relief Group LLC | 3/17/2023 | $6,221.63 |
| Debt Relief Group LLC | 2/24/2023 | $275,844.90 |
| Debt Relief Group LLC | 2/24/2023 | $25,050.40 |
| Debt Relief Group LLC | 1/24/2023 | $19,219.15 |
| Debt Relief Group LLC | 1/6/2023 | $9,921.93 |
| Debt Relief Group LLC | 1/3/2023 | $1,435.52 |
| Debt Relief Group LLC | 12/30/2022 | $3,149.47 |
| Debt Relief Group LLC | 12/30/2022 | $1,187.37 |
| Debt Relief Group LLC | 12/30/2022 | $1,506.08 |
| Debt Relief Group LLC | 12/30/2022 | $6,048.75 |
| Debt Relief Group LLC | 12/30/2022 | $1,667.75 |
| Debt Relief Group LLC | 12/30/2022 | $8,016.19 |
| Debt Relief Group LLC | 12/30/2022 | $1,043.34 |
| Debt Relief Group LLC | 12/30/2022 | $9,050.54 |
| Debt Relief Group LLC | 12/30/2022 | $13,785.71 |
| | | **Total: $383,148.73** |

**EXHIBIT "12"**

In re: The Litigation Practice Group PC
Disbursement Details by Payee
4 Years Pre-Petition (03/20/2019 - 03/20/2023)

Debt Relief Group LLC



GROBSTEIN TEEPLE

| Bank Name | Account Name | Statement Date | Transaction Date | Check Number | Debit/Charge | Memo |
|---|---|---|---|---|---|---|
| Wells Fargo | Maverick Management Group LLC | 3/31/2023 | 3/17/2023 | | 6,221.63 | WTFed#08135morgan Chase Ban /Ftr/Bnf=Debt Relief Gro up LLC Sf# 0000960076722725 Trn#23031 7177882 RI b# |
| Chase | The Litigation Practice Group PC | 1/31/2023 | 1/3/2023 | | 1,435.52 | Book Transfer Debit A/C: Debt Relief Group LLC West Palm Beach FL 33409-5207 US Rat: mv 127 Tm: 5159900003Jo |
| Chase | The Litigation Practice Group PC | 12/31/2022 | 12/30/2022 | | 8,016.19 | Book Tranator Debit A/C: Debt Relief Group LLC West Palm Beach FL 334D9-52D7 US Rot: mv 125 Tm: 5547600364Jo |
| Chase | The Litigation Practice Group PC | 12/31/2022 | 12/30/2022 | | 6,048.75 | Book Transfer Debit A/C: Debt Relief Group LLC West Palm Beach FL 33409-5207 US Ret: nv 120 Tm: 5546800364Jo |
| Chase | The Litigation Practice Group PC | 12/31/2022 | 12/30/2022 | | 3,149.47 | Book Transfer Debit A/C: Debt Relief Group LLC West Palm Beach FL 33409-5207 US Ret: mv 121 Tm: 5546900364J0 |
| Chase | The Litigation Practice Group PC | 12/31/2022 | 12/30/2022 | | 1,667.75 | Book Transfer Debit NC: Debt Relief Group LLC West Palm Beach FL 33409-5207 US Ret: Inv 122 Tm: 5547500364Jo |
| Chase | The Litigation Practice Group PC | 12/31/2022 | 12/30/2022 | | 1,506.08 | Book Transfer Debit NC: Debt Relief Group LLC West Palm Beach FL 33409-5207 US Rat: nv 126 Tm: 55481 00364Jo |
| Chase | The Litigation Practice Group PC | 12/31/2022 | 12/30/2022 | | 1,187.37 | Book Transfer Debit NC: Debt Relief Group LLC West Palm Beach FL 33409-5207 US Ref: Inv 124 Tm 5547i00364Jo |
| Chase | The Litigation Practice Group PC | 12/31/2022 | 12/30/2022 | | 1,043.34 | Book Transfer Debit NC: Debt Relief Group LLC West Palm Beach FL 3340g-52D7 US Ret: mv t23 Tm: 5547000364J0 |
| Chase | The Litigation Practice Group PC | 12/31/2022 | 12/13/2022 | | 1,484.25 | Book Iranater Debit NO: Debt Relief Group [[0 Weat Palm Beach FL 33409-5207 US Ret: Inv 119 Tm 7282400347Jo |
| Chase | The Litigation Practice Group PC | 12/31/2022 | 12/13/2022 | | 1,290.25 | Book Tranctor Debit NO: Debt Relief Group [[C West Palm Beach P[ 33409-5207 US Ret: Inv 118 Tm. 4I28000347Jo |
| Chase | The Litigation Practice Group PC | 12/31/2022 | 12/12/2022 | | 4,156.64 | Book Tranctor Debit NC: Debt Relief Group LLC Woct Palm Beach FL 33409-5207 US Ret: Inv 115 Tm. 7992800346Jo |
| Chase | The Litigation Practice Group PC | 12/31/2022 | 12/12/2022 | | 3,545.15 | Book Tranctor Debh NC: Debt Relief Group LLC Weat Palm Beach FL 33409-5207 US Ret: Inv 110 Tm. 7992500346Jo |
| Chase | The Litigation Practice Group PC | 12/31/2022 | 12/12/2022 | | 3,316.25 | Book Tranctor Debit NC: Debt Relict Group LLC West Palm Beach FL 33409-5207 US Ret: Inc 117 1mm 8047600346Jo |
| Chase | The Litigation Practice Group PC | 12/31/2022 | 12/12/2022 | | 2,352.25 | Book Tranctor Debit NC: Debt Roliet Group LLC West Palm Beach FL 33409-5207 US Ret: Inv 116 Tm 7992900346Jo |
| Chase | The Litigation Practice Group PC | 12/31/2022 | 12/12/2022 | | 1,770.23 | Book Tranctor Debit NC: Debt Roliet Group LLC Woct Palm Beach FL 33409-5207 US Ret: Inv 111 Tm 7992600346Jo |
| Chase | The Litigation Practice Group PC | 12/31/2022 | 12/12/2022 | | 1,437.44 | Book Trcncter Debit NC: Debt Relief Group LLC West Palm Beach FL 33409-5207 US Ret: Inv 112 Tm 7992300346Jo |
| Chase | The Litigation Practice Group PC | 12/31/2022 | 12/12/2022 | | 1,177.72 | Book Tranctor Debit NC: Debt Relief Group LLC West Palm Beach FL 33409-5207 US Ret: Inv 109 Tm 7992400346Jo |
| Chase | The Litigation Practice Group PC | 12/31/2022 | 12/12/2022 | | 659.88 | Book Tranctor Debit NC: Debt Relict Group LLC West Palm Beach FL 33409-5207 US Ret: Inv 113 Tm 7992700346Jo |
| Chase | The Litigation Practice Group PC | 12/31/2022 | 12/2/2022 | | 5,332.99 | Book Irancler Debit NC: Debt Relief Group LLC Wcct Palm Beach FL 33409-5207 US Ret: 1ev 106 Tm 6872700336Jo |
| Chase | The Litigation Practice Group PC | 12/31/2022 | 12/2/2022 | | 5,291.62 | Book Irancler Debit NC: Debt Relief Group LLC Wcct Palm Beach FL 33409-5207 US Ret: InvS Ire 5873100335Jo |
| Chase | The Litigation Practice Group PC | 12/31/2022 | 12/2/2022 | | 4,562.11 | Book Transfer Debit NC: Debt Relief Group LLC Wcct Palm Beach FL 33409-5207 US Ret: Inv7 Tm 6848100336Jo |
| Chase | The Litigation Practice Group PC | 12/31/2022 | 12/2/2022 | | 3,850.28 | Book Transfer Debit NC: Debt Relief Group LLC Wcct Palm Beach FL 33409-5207 US Ret: nv IOS Tm 6872900336Jo |
| Chase | The Litigation Practice Group PC | 11/30/2022 | 11/9/2022 | | 62,626.75 | Book Transfer Debit NC: Debt Relief Group LLC West Palm Beach FL 33409-5207 US Ret: File Purchase Tm: 5880200313J0 |
| Chase | The Litigation Practice Group PC | 2/28/2023 | 2/7/2023 | | 13,253.03 | Book Transfer Debit NC: Debt Relief Group LLC West Palm Beach FL 33409-5207 US Ref: Weekly Disbursement Trn: 6667600038Jo |
| Chase | The Litigation Practice Group PC | 1/31/2023 | 1/24/2023 | | 19,219.15 | Book Transfer Debit NC: Debt Relief Group LLC West Palm Beach FL 33409-5207 US Ref: Weekly Disbursement Tm: 0551400024Jo |
| Chase | The Litigation Practice Group PC | 1/31/2023 | 1/6/2023 | | 9,921.93 | Book Transfer Debit NC: Debt Relief Group LLC West Palm Beach FL 33409-5207 US Ref: Weekly Disbursement Tm: 4715900006Je |
| Chase | The Litigation Practice Group PC | 12/31/2022 | 12/30/2022 | | 9,050.54 | Book Transfer Debit NC: Debt Relief Group LLC West Palm Beach FL 33409-5207 US Ret: Weekly Disbursement Tm: 55722D0364Jo |

DRAFT FORM - SUBJECT TO CHANGE

In re: The Litigation Practice Group PC
Disbursement Details by Payee
4 Years Pre-Petition (03/20/2019 - 03/20/2023)

Debt Relief Group LLC

**GROBSTEIN TEEPLE**

| Bank Name | Account Name | | Statement Date | Transaction Date | Check Number | Debit/Charge | Memo |
|---|---|---|---|---|---|---|---|
| Chase | The Litigation Practice Group PC | | 12/31/2022 | 12/27/2022 | | 13,785.71 | Book Transfer Debit NC: Debt Relief Group LLC West Palm Beach FL 33409-5207 US Rat: Weekly Disbursement Tm: 6979900381 Jo |
| Chase | The Litigation Practice Group PC | | 12/31/2022 | 12/19/2022 | | 14,583.90 | Book Transfer Debit NC: Debt Relief Group LLC West Palm Beach FL 33409-5207 Us Rat: Weekly Disbursement Tm: 8057700353Jc |
| Chase | The Litigation Practice Group PC | | 12/31/2022 | 12/12/2022 | | 153,917.36 | Book Transfer Debit NC: Debt Relief Group LLC West Palm Beach FL 33409-5207 US Ret: Weekly Disbursement Tm: 7801700346Jo |
| Chase | The Litigation Practice Group PC | | 12/31/2022 | 12/9/2022 | | 13,178.13 | Book Transfer Debit NC: Debt Relief Group LLC West Palm Beach FL 33409-5207 US Ret: Weekly Disbursement Tm: 658i300343Jo |
| Chase | The Litigation Practice Group PC | | 12/31/2022 | 12/2/2022 | | 13,520.14 | Bock Trenster Debit NC: Debt Relief Group [[C West Palm Beach FL 33409-5207 us Ret: Weekly Disbursement Tm: 6842400336Jo |
| Chase | The Litigation Practice Group PC | | 11/30/2022 | 11/25/2022 | | 13,103.86 | Book Transfer Debit NC: Debt Relief Group LLC West Palm Beach FL 33409-5207 US Ret: Weekly Disbursement Tm: 4224000329Jo |
| Chase | The Litigation Practice Group PC | | 11/30/2022 | 11/25/2022 | | 4,328.17 | Book Transfer Debit NC: Debt Relief Group LLC West Palm Beach FL 33409-5207 US Ret: Weekly Disbursement Tm: 4241 400329Jo |
| Chase | The Litigation Practice Group PC | | 11/30/2022 | 11/23/2022 | | 148,979.69 | Book Transfer Debit NC: Debt Relief Group LLC West Palm Beach FL 33409-5207 us Ret: Weekly Disbursement Tm: 6042600327Jo |
| Chase | The Litigation Practice Group PC | | 11/30/2022 | 11/18/2022 | | 12,193.18 | Book Trenster Debit NC: Debt Relief Group LLC West Palm Beach FL 33409-5207 US Ret: Weekly Disbursement Tm: 5039000322Jo |
| Chase | The Litigation Practice Group PC | | 11/30/2022 | 11/10/2022 | | 4,644.14 | Book Transfer Debit NC: Debt Relief Group LLC West Palm Beach FL 33409-5207 US Ret: Weekly Disbursement Tm: 805560031 4Jo |
| Chase | The Litigation Practice Group PC | | 11/30/2022 | 11/8/2022 | | 6,919.39 | Book Transfer Debit NC: Debt Relief Group LLC West Palm Beach FL 33409-5207 US Ret: Weekly Disbursement Tm: 635560031 2Jo |
| Chase | The Litigation Practice Group PC | | 11/30/2022 | 11/8/2022 | | 1,946.76 | Book Transfer Debit NC: Debt Relief Group LLC West Palm Beach FL 33409-5207 US Ret: Weekly Disbursement Tm: 635820031 2Jo |
| Chase | The Litigation Practice Group PC | | 11/30/2022 | 11/3/2022 | | 4,628.84 | Book Transfer Debit NC: Debt Relief Group LLC West Palm Beach FL 33409-5207 us Ret: mv 2 Tm 7664200307Jo |
| Chase | The Litigation Practice Group PC | | 11/30/2022 | 11/3/2022 | | 3,790.61 | Book Transfer Debit NC: Debt Relief Group LLC West Palm Beach FL 33409-5207 us Ret: mv i Tm. 7676600307Jo |
| Chase | The Litigation Practice Group PC | | 10/31/2022 | 10/21/2022 | | 19,645.22 | Book Transfer Debit A/C: Debt Relief Group LLC West Palm Beach FL 33409-5207 US Ref: Weekly Disbursement Tm: 4843200294Jo |
| Chase | The Litigation Practice Group PC | | 10/31/2022 | 10/21/2022 | | 1,608.43 | Book Transfer Debit A/C: Debt Relief Group LLC West Palm Beach FL 33409-5207 US Ref: Weekly Disbursement Tm: 5062600294Jo |
| Chase | The Litigation Practice Group PC | | 10/31/2022 | 10/17/2022 | | 30,692.87 | Book Transfer Debit A/C: Debt Relief Group LLC West Palm Beach FL 33409-5207 US Ref: File Purchase Tm: 7i26700290Jo |
| Chase | The Litigation Practice Group PC | | 10/31/2022 | 10/14/2022 | | 2,067.99 | Book Transfer Debit A/C: Debt Relief Group LLC West Palm Beach FL 33409-5207 us Ref: Weekly Disbursement Tm: 6306000287Jo |
| Chase | The Litigation Practice Group PC | | 10/31/2022 | 10/7/2022 | | 20,805.84 | Book Transfer Debit A/C: Debt Relief Group LLC West Palm Beach FL 33409-5207 US Ref: File Purchase Tm: 641 9200280Jo |
| Chase | The Litigation Practice Group PC | | 10/31/2022 | 10/6/2022 | | 876.18 | Book Transfer Debit A/C: Debt Relief Group LLC West Palm Beach FL 33409-5207 US Ref: Weekly Disbursement Tm: 431 0000279Jo |
| UnionBank | The Litigation Practice Group PC | | 2/28/2023 | 2/24/2023 | | 275,844.90 | WIRE TRANS TRN 0224015673 022423 UBOC UB289839N Sent To: JPMORGAN CHASE BANK, NA Beneficiary: 1/Debt Relief Group |
| UnionBank | The Litigation Practice Group PC | | 2/28/2023 | 2/24/2023 | | 25,050.40 | WIRE TRANS TRN 0224017140 022423 UBOC UB288246N Sent To: JPMORGAN CHASE BANK, NA Beneficiary: 1/Debt Relief Group |
| UnionBank | The Litigation Practice Group PC | | 10/31/2022 | 10/17/2022 | | 1,183.24 | WIRE TRANS TRN 1017015207 101722 UBOC UB892953N Sent To: JPMORGAN CHASE BANK, NA Beneficiary: 1/Debt Relief Group LLC |
| UnionBank | The Litigation Practice Group PC | | 10/31/2022 | 10/7/2022 | | 261.72 | WIRE TRANS TRN 1007015280 100722 UBOC UB932529N Sent To: JPMORGAN CHASE BANK, NA Beneficiary: 1/Debt Relief Group LLC |
| Union Bank | The Litigation Practice Group PC | | 3/31/2023 | 3/1/2023 | | 24,906.75 | WIRE TRANS TRN 0301022880 030123 UBOC UB264675NSent To: JPMORGAN CHASE BANK, NA Beneficiary: 1/Debt Relief Group |
| | | | | | | **997,037.98** | |

DRAFT FORM - SUBJECT TO CHANGE

Exhibit "12"
Page 264

**EXHIBIT "13"**

### The Litigation Practice Group, P.C. Preference Transfer Schedule

| Vendor Name | Payment Date | Payment Amount |
|---|---|---|
| Debt Relief Group LLC | 3/17/2023 | $6,221.63 |
| Debt Relief Group LLC | 2/24/2023 | $275,844.90 |
| Debt Relief Group LLC | 2/24/2023 | $25,050.40 |
| Debt Relief Group LLC | 1/24/2023 | $19,219.15 |
| Debt Relief Group LLC | 1/6/2023 | $9,921.93 |
| Debt Relief Group LLC | 1/3/2023 | $1,435.52 |
| Debt Relief Group LLC | 12/30/2022 | $3,149.47 |
| Debt Relief Group LLC | 12/30/2022 | $1,187.37 |
| Debt Relief Group LLC | 12/30/2022 | $1,506.08 |
| Debt Relief Group LLC | 12/30/2022 | $6,048.75 |
| Debt Relief Group LLC | 12/30/2022 | $1,667.75 |
| Debt Relief Group LLC | 12/30/2022 | $8,016.19 |
| Debt Relief Group LLC | 12/30/2022 | $1,043.34 |
| Debt Relief Group LLC | 12/30/2022 | $9,050.54 |
| Debt Relief Group LLC | 12/30/2022 | $13,785.71 |
| | | **Total: $383,148.73** |