Christopher Celentino (131688)
Christopher.Celentino@dinsmore.com
YOSINA M. LISSEBECK (201654)
yosina.lissebeck@dinsmore.com
CHRISTOPHER B. GHIO (259094)
Christopher.Ghio@dinsmore.com
**DINSMORE & SHOHL LLP**
655 West Broadway, Suite 800
San Diego, California 92101
Tele: (619) 400-0500
Fax: (619) 400-0501

M. Trent Spurlock (KY Bar No. 88569)
**DINSMORE & SHOHL LLP**
101 S Fifth Street, Suite 2500
Louisville, KY 40202
Telephone: 502.540.2572
Facsimile: 502.540.2576
trent.spurlock@dinsmore.com
(Admitted pro hac vice)

*Counsel to Richard A. Marshack, Plaintiff
and Trustee of the LPG Liquidation Trust*

# UNITED STATES BANKRUPTCY COURT CENTRAL

# DISTRICT OF CALIFORNIA - SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>The Litigation Practice Group P.C.,<br><br>Debtor.<br><br>――――――――――――<br><br>Richard A. Marshack, Trustee of the LPG Liquidation Trust.<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Retail Is Us, LLC, a Nevada Limited Liability Company; and Nir Algazy, individually<br><br>　　　　　Defendants. | Case No. 8:23-bk-10571-SC<br><br>Chapter 11<br><br>Adv. Proc. No. 8:25-ap-_____-SC<br><br>**COMPLAINT FOR:**<br><br>**(1) AVOIDANCE, RECOVERY, AND PRESERVATION OF 2-YEAR ACTUAL FRAUDULENT TRANSFERS;**<br><br>**(2) AVOIDANCE, RECOVERY, AND PRESERVATION OF 2-YEAR CONSTRUCTIVE FRAUDULENT TRANSFERS;**<br><br>**(3) AVOIDANCE, RECOVERY, AND PRESERVATION OF 4-YEAR ACTUAL FRAUDULENT TRANSFERS;**<br><br>**(4) AVOIDANCE, RECOVERY, AND PRESERVATION OF 4-YEAR CONSTRUCTIVE FRAUDULENT TRANSFERS;** |

1



**(5) AVOIDANCE, RECOVERY AND PRESERVATION OF PREFERENTIAL TRANSFER MADE WITHIN NINETY DAYS OF THE PETITION DATE;**

**(6) AIDING AND ABETTING; AND**

**(7) TURNOVER;**

For his *Complaint for (1) Avoidance, Recovery, and Preservation of 2-Year Actual Fraudulent Transfers; (2) Avoidance, Recovery, and Preservation of 2-Year Constructive Fraudulent Transfers; (3) Avoidance, Recovery, and Preservation of 4-Year Actual Fraudulent Transfers; (4) Avoidance, Recovery, and Preservation of 4-Year Constructive Fraudulent Transfers; (5) Avoidance, Recovery, and Preservation of Preferential Transfer; (6) Aiding and Abetting; and (7) Turnover* ("Complaint"), plaintiff Richard A. Marshack, the former Chapter 11 Trustee for the bankruptcy estate ("Estate") of debtor The Litigation Practice Group P.C. and current Trustee of the LPG Liquidation Trust ("Debtor" or "LPG") (together the ("Trustee" or "Plaintiff") in the above-captioned bankruptcy case ("Bankruptcy Case"), alleges and avers as follows:

## STATEMENT OF JURISDICTION, NATURE OF PROCEEDING, AND VENUE

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 157(b)(2)(A), (E), (H) and (O), 1334(b), and General Order No. 13-05 of the District Court for the Central District of California because this is a core proceeding arising in and/or related to the Bankruptcy Case, which is a case under Chapter 11 of Title 11 of the United States Code ("Bankruptcy Code"), and which is pending in the United States Bankruptcy Court for the Central District of California, Santa Ana Division ("Bankruptcy Court").

2. Regardless of whether this proceeding is core, non-core, or otherwise, Plaintiff consents to the entry of a final order and judgment by the Bankruptcy Court.

3. Defendants are notified that Rule 7008 of the Federal Rules of Bankruptcy Procedure

1  requires defendants to plead whether consent is given to the entry of a final order and judgment by the

2  Bankruptcy Court.

3      4.    Venue of this adversary proceeding properly lies in this judicial district pursuant to 28

4  U.S.C. § 1409(a) because this proceeding is related to Debtor's pending Bankruptcy Case.

5  **THE PARTIES**

6      5.    Plaintiff, Richard A. Marshack, was the duly-appointed, qualified, and acting Trustee

7  of the LPG liquidation trust.

8      6.    Debtor is, and at all material times was, a professional corporation organized, existing,

9  and in good standing under the laws of the State of California, with its principal place of business in

10  Tustin, California.

11      7.    Defendant, Retail IS US LLC ("Retail"), is, and at all material times represented that it

12  was, a Nevada limited liability corporation, existing under the laws of the State of Nevada.

13      8.    Retail may be served by first class mail postage prepaid upon its registered agents for

14  service of process, Attn: Nir Algazy 9205 West Russell Road, Building #3 Suite #240, Las Vegas,

15  NV. 89148.

16      9.    Defendant, Nir Algazy ("Algazy") is an individual who is the, managing member of

17  Retail. Algazy may be served at 11020 Desert Dove Ave. Las Vegas, NV, 89144.

18      10.    Retail and Algazy are collectively known as "Defendants".

19  **GENERAL ALLEGATIONS**

20      **A.**    **The Bankruptcy Case**

21      11.    On March 20, 2023 ("Petition Date"), Debtor filed a voluntary petition for relief

22  under Chapter 11 of Title 11 of the United States Code, commencing the Bankruptcy Case.

23      12.    The Office of the United States Trustee ("UST") filed its *Motion by United States*

24  *Trustee to Dismiss or Convert Case Pursuant to 11 U.S.C. § 1112(b)* [Bankr. Docket No. 21] and

25  creditors Debt Validation Fund II, LLC; MC DVI Fund 1, LLC; and MC DVI Fund 2, LLC filed the

26  *Motion by DVF and MC DVI to Dismiss Chapter 11 Case Pursuant to 11 U.S.C. §§ 105, 305, 349, &*

27  *1112, or in the Alternative Convert This Case to Chapter 7 or Appoint a Trustee* [Bankr. Docket No.

28  44]. On May 4, 2023, the Court entered its *Order Directing United States Trustee to Appoint Chapter*

3

1    *11 Trustee* [Bankr. Docket No. 58].

2        13.    Pursuant to the *Acceptance of Appointment as Chapter 11 Trustee* [Bankr. Docket No.

3    63], on May 8, 2023, Trustee accepted his appointment as the Chapter 11 Trustee in the Bankruptcy

4    Case, and he continues to serve in this capacity at this time, in addition to the Liquidating Trustee. The

5    Court approved the Trustee's appointment in its *Order Approving the U.S. Trustee's Application for*

6    *the Appointment of a Chapter 11 Trustee* [Bankr. Docket No. 65].

7        14.    Trustee was not appointed until after events of the case and, therefore, bases these

8    allegations on information and belief. *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir.

9    2017) ("The *Twombly* plausibility standard . . . does not prevent a plaintiff from pleading facts alleged

10   upon information and belief where the facts are peculiarly within the possession and control of the

11   defendant or where the belief is based on factual information that makes the inference of culpability

12   plausible."); *Miller v. City of Los Angeles*, 2014 U.S. Dist. LEXIS 198871, 2014 WL 12610195, at *5

13   (C.D. Cal. Aug. 7, 2014) (recognizing that the plaintiff's "information and belief" pleading was

14   allowed and "necessary at times"); *see also Mireskandari v. Daily Mail and General Trust PLC*, 2013

15   U.S. Dist. LEXIS 194437, 2013 WL 12129642, at *4 (C.D. Cal. July 31, 2013) ("The Federal Rules

16   of Civil Procedure allow parties to plead facts on 'information and belief' if the facts 'will likely have

17   evidentiary support after a reasonable opportunity for further investigation or discovery.'" (citations

18   omitted)).

19       15.    Pursuant to the Order Confirming Modified First Amended Joint Chapter 11 Plan of

20   Liquidation entered September 9, 2024, and the Notice of Occurrence of Effective Date of Modified

21   First Amended Joint Chapter 11 Plan of Liquidation filed September 24, 2024, Richard A. Marshack

22   became the Liquidating Trustee of the LPG Liquidation Trust, effective September 24, 2024. [Bankr.

23   Docket Nos. 1646 & 1762].

24       16.    All claims have been transferred to the Liquidating Trust pursuant to the confirmed

25   plan and Plaintiff brings this action solely in his capacity as the former Chapter 11 Trustee and current

26   Trustee of the LPG Liquidation Trust for the benefit of Debtor's Estate and its creditors.

27   ///

28   ///

4

**B.**     **Protective Order**

17.     On or about May 2, 2024, Plaintiff filed a certain Notice and Motion for Entry of Protective Order (the "Protective Order").

18.     On June 3, 2024, the Court entered its Order Granting Motion for Entry of Protective Order and the Protective Order [Bankr. Docket No. 1270] (the "Protective Order"). A true and accurate copy of the Protective Order is attached as **Exhibit 1** and incorporated herein.

19.     By its own terms, the Protective Order applies to this adversary proceeding and governs all discovery conducted herein.

**C.**     **LPG**

20.     LPG operated a law firm for consumers across the country who sought assistance in contesting or resolving debts they would identify.

21.     The consumers would pay LPG over a period of time via monthly debits from their bank accounts.

22.     The monthly payments were meant to cover all legal services LPG provided to the consumers including validation of the debts, review of documents to determine enforceability, and court appearances to halt lawsuits to obtain judgments.

23.     In certain instances, LPG would file a lawsuit in an effort to eliminate a disputed debt or to prosecute affirmative claims held by the consumers.

24.     LPG mismanaged the consumers' monthly payments.

25.     Tony Diab who maintained control over LPG at all times relevant herein ("Diab"),  and others  devised a plan to fraudulently transfer funds, client files, client funds and assets in the form of ACH Receivables (the "ACH Receivables" or "Accounts Receivable") out of LPG to third parties prior to the filing of bankruptcy.

26.     To obtain consumer clients, LPG contracted with marketing companies, who engaged in illegal capping and would advertise or call to solicit consumers to become clients of LPG in exchange for a percentage of the ACH Receivables collected by LPG from the consumers.

27.     The marketing affiliate went so far as to assist with the execution of an engagement letter between the consumer and LPG.

28.    In exchange, LPG agreed to pay the marketing affiliates a percentage the monthly payments collected by LPG from the consumers.

29.    Because LPG received payments from consumers over time, it often sought financing by borrowing against its future cash flows. This borrowing was not only used to finance operations at LPG, but also to pay the fees owed to the marketing companies for providing the client referrals.

30.    Many of the documents executed in connection with such financing described the transactions as accounts receivable purchase agreements.

31.    Diab used entities he controlled including, without limitation, Vulcan Consulting Group, Coast Processing, PrimeLogix, LLC, LGS Holdco, LLC,  and/or Maverick Management LLC to divert LPG consumer funds and ACH Receivables. Diab would use numerous ACH processing companies in order to easily transfer millions of dollars from Debtor to these entities he controlled,  without oversight or detection, and to avoid payment disputes and complications. The money that flowed from Debtor through these bank accounts to defendants consisted of Client Funds that Debtor funneled to these entities by means of the ACH processing companies. Debtor regularly made deposits into these entities bank account such that they received Client Funds directly from Debtor in addition to future Accounts Receivable.

**D.    Defendants Retail and Algazy**

32.    Retail was one the marketing companies that procured clients for LPG.

33.    Based on information and belief Retail and Algazy through Retail, acted as a marketing affiliate for LPG.

34.    LPG agreed to pay, and in fact paid Defendants, a portion of the monthly payments received from consumers referred by Defendants.

35.    Retail also likely entered into agreements pursuant to which they purported to sell accounts receivable back to LPG. Pursuant to these agreements, Debtor purported to buy from Retail a portion of its income stream.

**i.    Affiliate Agreements**

36.    Based upon the Trustee's review of the business operations of the marketing affiliates and the Debtor's banking records, including transactions between Retail and Debtor, upon information

and belief, Retail operated as a marketing affiliate for the Debtor and such arrangement was dictated by an oral or written affiliate agreement with Retail (whether memorialized by written or oral agreement, the "Affiliate Agreement(s)"). A true and accurate copy of the summary of the banking transaction history is attached as **Exhibit 2** and incorporated herein ("Transaction History").

37.    Retail owns and operates a system of generating leads consisting of consumers interested in the legal services offered by LPG.

38.    Pursuant to the Debtor's Affiliate Agreements, the marketing affiliate would be required to generate leads consisting of consumers interested in the legal services offered by LPG and refer those consumers to Debtor.

39.    In exchange for the referrals, Debtor paid its marketing affiliates, including the Retail. *See* Transaction History.

40.    Affiliate Agreements and any associated referral activity conducted by Retail violate Sections 6151 and 6155 of the California Business and Professional Code, which prohibit referrals of potential clients to attorneys unless registered with the State Bar of California. CAL. BUS. & PROF. CODE § 6155. "Referral activity" includes "any entity 'which, in person, electronically, or otherwise, refers the consumer to an attorney or law firm not identified' in the advertising." *Jackson v. LegalMatch.com*, 42 Cal. App. 5th 760, 775 (2019). A referral includes receiving information from potential clients and sending that information to lawyers, even when the advertiser does not advertise the name of the attorneys and the clients do not clear the name of the potential attorney after the referral occurred. *Id.*

41.    Further, if any effect of an agreement is to accomplish an unlawful purpose, the agreement may be declared illegal regardless of the intention of the parties. *Stockton Morris Plan Co. v. Cal. Tractor & Equip. Corp.*, 112 Cal. App. 2d 684, 690 (1952) (citing *Fewel & Dawes, Inc. v. Pratt*, 17 Cal. 2d 85, 91 (1941)). This remains true regardless of whether the contract has been performed. *Stevens v. Boyes Hot Springs Co.*, 113 Cal. App. 479, 483 (1931) (A contract by a corporation to purchase its own stock has the effect of illegally withdrawing and paying to a stockholder a part of the capital stock of the corporation and is illegal and void, regardless of the fact that the contract is fully performed by the sellers and partially performed by the corporation.);

*Mansfield v. Hyde*, 112 Cal. App. 2d 133, 139 (1952), overruled, *Fomco, Inc. v. Joe Maggio, Inc.*, 8 Cal. Rptr. 459 (1960) (Where object of statute requiring licenses is to prevent improper persons from engaging in particular activity, or is for purpose of regulating occupation or business for protection of public, imposition of penalty amounts to prohibition against engaging in occupation or business without license, and contract made by unlicensed person in violation of statute is invalid.); *Firpo v. Murphy*, 72 Cal. App. 249, 252 (1925) (A contract to pay commissions to a real estate broker is illegal and he is not entitled to recover thereon where he fails to secure the license required by law to carry on his business.).

42.     Because Affiliate Agreements and associated referral activity violate federal and state law since the named Retail have not registered with the State Bar of California as required by Cal. Bus. & Prof. Code § 6155, they are void, unenforceable, and subject to avoidance as fraudulent. Any alleged consideration provided to Debtor under the Affiliate Agreements (defined hereafter below) was unlawful.

43.     Unlawful consideration is that which is: "(1) contrary to an express provision of law; (2) contrary to the policy of express law, though not expressly prohibited; or (3) otherwise contrary to good morals." Cal. Civ. Code § 1667. "If any part of a single consideration for one or more objects, or of several considerations for a single object, is unlawful, the entire contract is void." Cal. Civ. Code § 1608.

### ii.     Account Receivable Purchase Agreements

44.     Based upon the Trustee's review of the Debtor's records, the Debtor entered into several accounts receivable purchase agreements (whether memorialized by oral or written agreement, "ARPA Agreement(s)") with its marketing affiliates.

45.     Retail intended to acquire "cash flow streams representing interests in customer payments for debt validation"." Upon information and belief, Retail executed at least one ARPA with entities related to LPG.

46.     Pursuant to ARPA Agreements generally, the Debtor purports to buy from its marketing affiliates' accounts receivable from consumers that were supposed to be held in trust until earned.

47.      Pursuant to business relationship between Debtor paid Retail not less than $781,291.64.

48.      By entering into the ARPA Agreements and/or agreeing to enter into such a transaction, Debtor and Retail violated federal and state laws by selling unearned legal fees or funds that were supposed to be held in trust or used for the benefit of consumers.

49.      The effect of the ARPA Agreements and/or related transactions was to accomplish an unlawful purpose. Thus, the agreement may be declared illegal regardless of the intention of the parties. *Stockton Morris Plan Co. v. Cal. Tractor & Equip. Corp.*, 112 Cal. App. 2d 684, 690 (1952) (citing *Fewel & Dawes, Inc. v. Pratt*, 17 Cal. 2d 85, 91 (1941)). This remains true regardless of whether the contract has been performed. *Stevens v. Boyes Hot Springs Co.*, 113 Cal. App. 479, 483 (1931) (A contract by a corporation to purchase its own stock has the effect of illegally withdrawing and paying to a stockholder a part of the capital stock of the corporation and is illegal and void, regardless of the fact that the contract is fully performed by the sellers and partially performed by the corporation.); *Mansfield v. Hyde*, 112 Cal. App. 2d 133, 139 (1952), overruled, *Fomco, Inc. v. Joe Maggio, Inc.*, 8 Cal. Rptr. 459 (1960) (Where object of statute requiring licenses is to prevent improper persons from engaging in particular activity, or is for purpose of regulating occupation or business for protection of public, imposition of penalty amounts to prohibition against engaging in occupation or business without license, and contract made by unlicensed person in violation of statute is invalid.); *Firpo v. Murphy*, 72 Cal. App. 249, 252 (1925) (A contract to pay commissions to a real estate broker is illegal and he is not entitled to recover thereon where he fails to secure the license required by law to carry on his business.).

50.      Because the ARPA Agreements and/or related transactions violate federal and state laws, it is void, unenforceable, and subject to avoidance as fraudulent. Any alleged consideration provided to Debtor under the ARPA Agreements and/or related transactions was unlawful.

51.       Unlawful consideration is that which is: "(1) contrary to an express provision of law; (2) contrary to the policy of express law, though not expressly prohibited; or (3) otherwise contrary to good morals." Cal. Civ. Code § 1667. "If any part of a single consideration for one or more objects, or of several considerations for a single object, is unlawful, the entire contract is void." Cal. Civ. Code § 1608.

### iii.    <u>Demand Letter</u>

52.    On or about November 18, 2024, Trustee sent a demand letter to Retail (the "Demand Letter"). A true and accurate copy of the Preference Letter is attached as **Exhibit 3**, and incorporated here.

53.    The Demand Letter discussed certain transfers from Debtor that were made to Retail within the 4 year reach-back period prior to the Petition Date. The transfers were listed showing the date and amount, according to Debtor's books and records, of each transfer or other payment ("Transfer Schedules"). The Demand Letter described that Retail was paid $144,751.62 in Transfers and $15,578.21 in Preference Transfers. Trustee requested Retail provide information to assess whether any claim or defenses exist related to the transfers.

54.    Based on the information available to Trustee and considering the nature of the relationship between Debtor and Retail, no potential defenses were identified that could reduce Retail's liability for the preference payment.

### E.    <u>Payments to Retail</u>

55.    During the applicable reach-back period, Debtor paid Retail the sum of at least $144,751.62 between October 2022 and March 2023 ("Transfers"). *See* Exhibit 2.

56.    At least $15,578.21 of the Transfers from Debtor to Retail occurred during the 90-day preference period ("Preference Transfers"). A true and accurate list of the payments of Preference Transfers is attached as <u>**Exhibit 4**</u>, and incorporated here.

### F.    <u>LPG's Ponzi Scheme</u>

57.    The Ponzi Scheme Presumption exists in this Bankruptcy.

58.    The Ponzi Scheme Presumption can be utilized to establish a debtor's "intent to defraud future undertakers [investors] from the mere fact that a debtor was running a Ponzi scheme. Indeed, no other reasonable inference is possible. A Ponzi scheme cannot work forever. The investor pool is a limited resource and will eventually run dry. The perpetrator must know that the scheme will eventually collapse as a result of the inability to attract new investors. The perpetrator nevertheless makes payments to present investors, which, by definition, are meant to attract new investors. He must know all along, from the very nature of his activities, that investors at the end of the line will lose their

money. Knowledge to a substantial certainty constitutes intent in the eyes of the law, *cf. Restatement (Second) of Torts § 8A (1963 & 1964)*, and a debtor's knowledge that future investors will not be paid is sufficient to establish his actual intent to defraud them. *Cf. Coleman Am. Moving Servs., Inc. v. First Nat'l Bank & Trust Co. (In re American Properties, Inc.)* (Bankr.D.Kan. 1981)14 B.R. 637, 643 (intentionally carrying out a transaction with full knowledge that its effect will be detrimental to creditors is sufficient for actual intent to hinder, delay or defraud within the meaning of § 548(a) (1))." *Merrill v. Abbott (In re Independent Clearing House Co.)* (D. Utah 1987) 77 B.R. 843, 860. A trustee in bankruptcy is not required to show that an operator of a Ponzi scheme was subjectively aware his Ponzi scheme was destined to fail. *In re EPD Inv. Co., LLC*, 114 F.4th at 1153 (9th Cir. 2024) ("[a] trustee's action to recover assets fraudulently conveyed in the course of a Ponzi scheme does not require that the trustee also prove the Ponzi-scheme operator was subjectively aware his Ponzi scheme was destined to fail.")

59.    "But if all the debtor receives in return for a transfer is the use of the defendant's money to run a Ponzi scheme, there is nothing in the bankruptcy estate for creditors to share. In fact, by helping the debtor perpetuate his scheme, the transfers exacerbate the harm to creditors by increasing the amount of claims while diminishing the debtor's estate. In such a situation, the use of the defendant's money cannot objectively be called "reasonably equivalent value. *"In re Independent Clearing House Co.* 77 B.R.at 859. Therefore, "[t]he trustee can avoid the transfers if they were preferential or fraudulent. Transfers to investors in a Ponzi scheme are preferential and fraudulent. Therefore, they constitute "property of the estate," and the trustee can recover them. *Id.* at 853 n.17 (citations omitted).

60.    Debtor was operating a Ponzi scheme that utilized Retail and Algazy through Retail, and several other entities as investors to continue its unlawful business practices by using funds provided by current investors to attract new investors hoping for very high returns. Therefore, the Debtor was running a Ponzi scheme and the Ponzi Scheme Presumption can be utilized to infer that the Debtor had the intent to defraud investors within the meaning of 11 U.S.C. section 548(a)(1).

61.    Moreover, since the Transfers were made with the intent to further the Ponzi scheme, the Debtor did not receive an objectively reasonable equivalent value for the Transfers, and the Trustee

can avoid the Transfers because they were preferential and fraudulent.

**G.    LPG's Prepetition Creditors**

62.    Debtor was insolvent when each Transfer was made. This insolvency is evidenced in part by the fact that 14 separate UCC-1 statements were of record securing debts of the Debtor as of September 1, 2022. These statements remained unreleased as of the Petition Date. These statements either reflected secured liens against the Debtor's assets then owned or thereafter acquired, or provided evidence of the assignment or sale of substantial portions of the Debtor's future income.

63.    Plaintiff directs Defendants to the Order Denying Greyson's Motion to Vacate the Preliminary Injunction entered as Bankr. Docket No. 1545 ("Order") where the Court found "it is clear to this Court that Debtor, since its pre-petition inception (and through the time of the appointment of the Chapter 11 Trustee), was, in the Court's opinion operating a criminal enterprise" and that "[t]here is also evidence before the Court that the Debtor was running a Ponzi scheme and paying some outside (or 'network') attorneys with funds obtained from new clients." Order p. 3, l. 11-13; p. 4, l. 14-15. Insolvency is presumed as a matter of law if the debtor operated a Ponzi scheme. *See, e.g., Glob. Money Mgmt., L.P. v. McDonnold*, No. 06CV34, 2008 U.S. Dist. LEXIS 128733, at *15 (S.D. Cal. Feb. 27, 2008) (concluding that "if a Ponzi scheme is proven, then the debtor is proven insolvent from the time of its inception").

64.    When the Transfers were made, these prior UCC-1 statements secured the repayment of the following claimed amounts that are currently known to Trustee and are allegedly owed by the Debtor: (i) $2,374,004.82 owed to Fundura Capital Group as evidenced by Proof of Claim No. 335 purportedly secured by a UCC statement filed on or about May 19, 2021; (ii) approximately $15 million dollars owed to MNS Funding, LLC as evidenced by Proof of Claim No. 1060 purportedly secured by a UCC statement filed on or about May 28, 2021; (iii) approximately $5,000,000 owed to Azzure Capital, LLC as evidenced by Proof of Claim No. 127 purportedly secured by a UCC statement filed on or about May 28, 2021; and (iv) approximately $1.5 million dollars owed to Diverse Capital, LLC purportedly secured by UCC statements filed on or about September 15, 2021, and December 1,

2021.[1]

65.    As alleged above, LPG was borrowing against its assets and future income, often on unfavorable terms, not only to finance operations at LPG, but also to pay the fees owed to the marketing affiliates for providing it with consumer clients. Pursuant to the agreements with the marketing companies, significant percentages of future payments were already promised to be paid to the marketing affiliates from whatever future income the Debtor would receive.

66.    In addition, on Debtor's Schedule E/F [Bankr. Docket No. 33], Debtor scheduled 11 unsecured creditors with priority unsecured claims totaling $374,060.04. These priority unsecured creditors include Indiana Dept. of Revenue, Dept. of Labor and Industries, Arizona Dept. of Economic Security, Arkansas Dept. of Finance & Admin., California Franchise Tax Board, Georgia Dept. of Labor, Internal Revenue Service, Mississippi Dept. of Revenue, Nevada Dept. of Taxation, Utah State Tax Commission, and Wisconsin Dept. of Revenue (collectively, "Priority Unsecured Creditors").

67.    Another group of creditors that Debtor listed on its Schedule E/F [Bankr. Docket No. 33] are nonpriority unsecured creditors. Those 58 creditors have scheduled claims totaling $141,439,158.05 and include Ajilon; Anthem Blue Cross; Azevedo Solutions Groups, Inc.; Carolina Technologies & Consulting Invoice; Collaboration Advisors; Credit Reporting Service Inc.; CT Corporation – Inv.; Debt Pay Pro; Document Fulfillment Services; EnergyCare, LLC; Exela Enterprise Solutions; First Legal Network, LLC; GHA Technologies Inc.; Harrington Electric, Inc.; Imagine Reporting; Juize, Inc.; Krisp Technologies, Inc.; Liberty Mutual; Marc Lemauviel – Allegra; MarkSYS Holdings, LLC; Netsuite-Oracle; Pitney Bowes; Rapid Credit, Inc.; SBS Leasing A Program of De Lage Landen; Security Solutions; Sharp Business Systems; Streamline Performance, Inc.; Thomson Reuters; Twilio, Inc.; Nationwide Appearance Attorneys; Executive Center, LLC; Outsource Accelerator, Ltd.; TaskUs Holdings, Inc.; Marich Bein, LLC; Validation Partners; MC DVI Fund 1, LLC; MC DVI Fund 2, LLC; Debt Validation Fund II, LLC; Tustin Executive Center; LexisNexus; JP Morgan Chase; Business Centers of America; Michael Schwartz; Anibal Colon Jr.; Kathleen Lacey; David Ulery; Kimberly Birdsong; Kevin Carpenter; Karen Suell; Gloria Eaton;

---

[1] Trustee reserves all rights, claims, and defenses with respect to these and any other purported secured or unsecured claims.

13

Carolyn Beech; Debra Price; Kenneth Topp; Darcey Williamson, Trustee; James Hammett; Johnny Rizo; Beverly Graham; Kathleen Scarlett; and Geneve and Myranda Sheffield (collectively, "Nonpriority Unsecured Creditors" and, together with the Secured Creditors and Priority Unsecured Creditors, "Prepetition Creditors").

68.    As of the date that the complaint was drafted, approximately 5,771 claims have been filed with the bankruptcy Court. While Trustee has not reviewed all claims as of the date of this complaint, and reserves all rights to object to those claims, the total amount is in excess of approximately $717,507,462.29.

69.    Debtor's profit and loss statements reflect at least $115,000,000 of "Total Income" for the three-year period ending December 31, 2021, and based on information and belief that a substantial portion of this income had not actually been earned by Debtor. Proper accounting treatment of this unearned "income" would have been to record the unearned portion as cash received in client trust or IOLTA bank account with an offsetting client retainer liability account in the same amount. Thus, the unearned portion of the income would be present only on the balance sheet and not on Debtor's profit and loss statement. Debtor's balance sheets reflect two trust accounts, the highest balance of which was approximately $346,000 in November 2021. The balance sheets do not reflect a client retainer liability account. Thus, it appears that Debtor overstated its income during the three years ending December 31, 2021, though the extent to which it is overstated remains unknown. Further, assuming (as it appears to be the case) Debtor did not properly record its unearned income on its balance sheets using a trust account and offsetting client retainer liability account then Debtor's assets and liabilities on those balance sheets would be inaccurate.

70.    Additionally, just because Debtor had incoming cash that does not necessarily mean it was solvent. Based on information and belief Debtor's incoming cash was related to unearned income and should have been held in an appropriate trust account and recorded on its balance sheet with an offsetting client retainer payable account until it was earned. This treatment is further reinforced as appropriate by the fact that Debtor offered its clients a refund for unearned income. Thus, Debtor's incoming cash neither increased its assets (due to the offsetting client retainer liability in the same amount) nor would it increase its profitability until services were rendered and the income was actually

earned.

71.     Debtor's balance sheets for the 36 months ending December 31, 2021 show only approximately $17,900,000 in total assets (primarily comprised of accounts receivable and merchant loans receivable) at its highest point in November 2021. Obviously, this amount is significantly less than the $700,000,000 of claims filed, further evidencing Debtor's state of insolvency.

## FIRST CLAIM FOR RELIEF

### Count I - Avoidance, Recovery, and Preservation of Actual Fraudulent Transfers Against Retail

### [11 U.S.C. §§ 544, 548(a) (1) (A), 550, and 551]

72.     Plaintiff realleges and incorporates here by reference each and every allegation contained in paragraphs 1 through 71 as though set forth in full.

73.     All or a portion of the Transfers occurred within the two years prior to the Petition Date and thus, any agreements between the Debtor and the Retail did as well, whether or not memorialized in Affiliate Agreements, ARPA Agreements, or other agreements.

74.     On or after the date that any such agreements were entered or executed and the Transfers were made, entities to which Debtor was or became indebted include the Prepetition Creditors.

75.     The Transfers happened while Debtor was insolvent or rendered Debtor insolvent.

76.     Despite Debtor's obligation to the Prepetition Creditors, Debtor continued to pay Retail sums received from consumers under such Affiliate Agreements, which constitute illegal capping agreements between Retail and Debtor. Any obligation of the Debtor arising from such agreement is avoidable as fraudulent.

77.     Despite Debtor's obligation to the Prepetition Creditors, Retail continued to sell portions of the illegal accounts receivables generated under the ARPA Agreements to Debtor, which is illegal under federal and state laws.

78.     The Transfers were made with actual intent to hinder, delay, or defraud creditors of Debtor.

79.     The Debtor was operating a Ponzi scheme and the Ponzi Scheme Presumption can be

15

1    utilized to infer the Debtor's actual intent to defraud within the meaning of 11 U.S.C. Section

2    548(a)(1).

3        80.    The Affiliate Agreements, ARPA Agreements, and the Transfers of Debtor's funds are

4    avoidable as fraudulent pursuant to 11 U.S.C. §§ 544, 548(a)(1)(A), 550, and 551, and the common

5    law tort of intentional fraudulent transfers by one or more creditors who held and hold unsecured

6    claims against Debtor that were and are allowable against his Estate under 11 U.S.C. § 502 or that

7    were not and are not allowable only under 11 U.S.C. § 502(e), including, without limitation, the

8    Prepetition Creditors.

9        81.    The Affiliate Agreements, ARPA Agreements, and Transfers should be avoided as

10   fraudulent under 11 U.S.C. § 548(a)(1)(A) and under the common law tort of intentional fraudulent

11   transfers, and such transferred property, or the value thereof, should be recovered and preserved for

12   the benefit of the Estate pursuant to 11 U.S.C. §§ 550 and 551.

13                          **SECOND CLAIM FOR RELIEF**

14   **Count II - Avoidance, Recovery, and Preservation of Constructive Fraudulent Transfers**

15                              **Against Retail**

16                **[11 U.S.C. §§ 544, 548(a) (1) (B), 550, and 551]**

17       82.    Plaintiff realleges and incorporates here by reference each and every allegation

18   contained in paragraphs 1 through 81 as though set forth in full.

19       83.    The Affiliate Agreements, ARPA Agreements, and all or a portion of the Transfers

20   occurred within the two years prior to the Petition Date.

21       84.    On or after the date that such agreements were executed and such Transfers were made,

22   entities to which Debtor was or became indebted include the Prepetition Creditors.

23       85.    The Transfers happened while Debtor:

24           a.    was insolvent or became insolvent was a result;

25           b.    was engaged or was about to engage in a transaction for which any property

26   remaining with Debtor had unreasonably small capital; or

27           c.    intended to incur, or believed that it would incur, debts beyond its ability to pay

28   as such debts matured.

16

86.     Because the referrals from Retail to Debtor are illegal under federal and state law, they are void and subject to avoidance as fraudulent. Any purported consideration constitutes unlawful consideration, which cannot constitute reasonably equivalent value. Thus, at the time the agreements were executed and the Transfers made, Debtor received less than reasonably equivalent value.

87.     Furthermore, the Debtor did not receive the reasonably equivalent value of the Transfers to Retail because by using Retail's money to run a Ponzi Scheme, there is nothing in the Estate for the creditors to share and no benefit to the estate. Rather, the Transfers exacerbated the harm to creditors by increasing the amount of claims while diminishing the Debtor's Estate. In this situation, the use of Retail's money to further the Debtor's Ponzi scheme cannot be consideration for the Transfers and cannot objectively be called reasonably equivalent value.

88.     Retail were acting as investors in the Debtor's Ponzi scheme. Because the sale of the accounts receivable from Retail to Debtor is illegal under federal and state law, the sale is void and subject to avoidance as fraudulent. Any purported consideration constitutes unlawful consideration, which cannot constitute reasonably equivalent value. Thus, at the time the agreements were executed and the Transfers made, Debtor received less than reasonably equivalent value.

89.     The Affiliate Agreements, ARPA Agreements, and the Transfers should be avoided as fraudulent under 11 U.S.C. §§ 544 and 548(a)(1)(B), and such transferred property, or the value thereof, should be recovered and preserved for the benefit of the Estate pursuant to 11 U.S.C. §§ 550 and 551.

## THIRD CLAIM FOR RELIEF

**Count III - Avoidance, Recovery, and Preservation of Actual Fraudulent Transfers  Against**

**Retail**

**[11 U.S.C. §§ 544(b), 550, and 551; CAL. CIV. CODE §§ 3439.04(a), 3430.04(b), and 3439.07]**

90.     Plaintiff realleges and incorporates here by reference each and every allegation contained in paragraphs 1 through 89 as though set forth in full.

91.     The Affiliate Agreements, ARPA Agreements, and all or a portion of the Transfers occurred within the four years prior to the Petition Date.

92.     On or after the date that such agreements were entered and such Transfers were made,

entities to which Debtor was or became indebted include the Prepetition Creditors.

93.     Despite Debtor's obligation to the Prepetition Creditors, Debtor continued to pay Retail sums received from consumers under the Affiliate Agreements, which constitutes an illegal capping agreement between Retail and Debtor.

94.     The Transfers happened while Debtor was insolvent or Debtor became insolvent shortly after the Transfers were made as is evidenced by the filing of the voluntary petition.

95.     The value of the consideration received by Debtor for such Transfers was not reasonably equivalent to the value of the Transfers because the Transfers were used to further assist Debtor in its Ponzi scheme.

96.     Because the referrals from Retail to Debtor are illegal under federal and state law, they are void and subject to avoidance as fraudulent. Any purported consideration constitutes unlawful consideration, which cannot constitute reasonably equivalent value. Thus, at the time the agreements were executed and the Transfers made, Debtor received less than reasonably equivalent value.

97.     Despite Debtor's obligation to the Prepetition Creditors, Debtor continued to buy accounts receivables from Retail which is illegal under federal and state law. Because they are illegal under federal and state law, they are void and subject to avoidance as fraudulent.

98.     The Transfers were made with actual intent to hinder, delay, or defraud creditors of Debtor.

99.     The Debtor's conduct was done with oppression, fraud, and malice, as defined in Civil Code section 3294, based on the Ponzi Scheme Presumption, entitling the Trustee to, in addition to the actual damages, exemplary or punitive damages for making an example of the Debtor and to punish the Debtor.

100.    The Affiliate Agreements the ARPA Agreements and the Transfers of Debtor's funds are avoidable as fraudulent pursuant to 11 U.S.C. § 544(b) and Cal. Civ. Code §§ 3439.04(a), 3439.04(b), and 3439.07 by one or more creditors who held and hold unsecured claims against Debtor that were and are allowable against the Estate under 11 U.S.C. § 502 or that were not allowable only under 11 U.S.C. § 502(e) including, without limitation, the Prepetition Creditors. The Affiliate Agreements, the ARPA Agreements, and the Transfers of Debtor's funds are avoidable as fraudulent

pursuant to 11 U.S.C. § 544(b) and CAL. CIV. CODE §§ 3439.04(a) and 3439.07 by one or more creditors who held and hold unsecured claims against Debtor that were and are allowable against his Estate under 11 U.S.C. § 502 or that were not and are not allowable only under 11 U.S.C. § 502(e), including, without limitation, the Prepetition Creditors.

101.    Accordingly, the Affiliate Agreements, the ARPA Agreements, and the Transfers should be avoided as fraudulent under 11 U.S.C. §§ 544(b) and CAL. CIV. CODE §§ 3439.04(a) and 3439.07, and under the common law tort of intentional fraudulent transfers, and such transferred property, or the value thereof, should be recovered and preserved for the benefit of the Estate pursuant to 11 U.S.C. §§ 550 and 551 and CAL. CIV. CODE § 3439.07.

**<u>FOURTH CLAIM FOR RELIEF</u>**

**Count IV - Avoidance, Recovery, and Preservation of Constructive Fraudulent Transfers**

**Against Retail**

**[11 U.S.C. §§ 544(b), 550, and 551; CAL. CIV. CODE §§ 3439.05, and 3439.07]**

102.    Plaintiff realleges and incorporates here by reference each and every allegation contained in paragraphs 1 through 101 as though set forth in full.

103.    The Affiliate Agreements, the ARPA Agreements, and all or a portion of the Transfers occurred within the four years prior to the Petition Date.

104.    The Transfers happened while Debtor:

      a.    was insolvent or became insolvent as a result;

      b.    was engaged or was about to engage in a transaction for which any property remaining with Debtor was of unreasonably small capital; or

      c.    intended to incur, or believed that it would incur, debts beyond its ability to pay as such debts matured.

105.    Because the referrals from Retail to Debtor are illegal under federal and state law, the agreements are void and subject to avoidance as fraudulent. Any purported consideration constitutes unlawful consideration, which cannot constitute reasonably equivalent value. Thus, at the time the agreements were executed and the Transfers made, Debtor received less than reasonably equivalent value.

106.    Furthermore, the Debtor did not receive the reasonably equivalent value of the Transfers to Retail because by using Retail's money to run a Ponzi Scheme, there is nothing in Estate for the creditors to share. Rather, the Transfers exacerbated the harm to creditors by increasing the amount of claims while diminishing the Debtor's Estate. In this situation, the use of Retail's money to further the Debtor's Ponzi Scheme cannot be consideration for the Transfers and cannot objectively be called reasonably equivalent value.

107.    Retail were therefore acting as an investor in the Debtor's Ponzi scheme and any Transfers made to Retail can be avoided by the Plaintiff since the Transfers to Retail are preferential and fraudulent such that they constitute property of the Estate in which the Plaintiff can recover.

108.    Because the sale of the accounts receivable from Retail to Debtor are illegal under federal and state law, they are void and subject to avoidance as fraudulent. Any purported consideration constitutes unlawful consideration, which cannot constitute reasonably equivalent value. Thus, at the time the agreements were executed and the Transfers made, Debtor received less than reasonably equivalent value.

109.    The Affiliate Agreements, the ARPA Agreements, and the Transfers of Debtor's funds are avoidable as fraudulent pursuant to 11 U.S.C. § 544(b) and CAL. CIV. CODE §§ 3439.05 and 3439.07 by one or more creditors who held and hold unsecured claims against Debtor that were and are allowable against his Estate under 11 U.S.C. § 502 or that were not and are not allowable only under 11 U.S.C. § 502(e), including, without limitation, the Prepetition Creditors.

110.    Accordingly, the Affiliate Agreements, the ARPA Agreements, and the Transfers should be avoided as fraudulent under 11 U.S.C. §§ 544(b) and CAL. CIV. CODE §§ 3439.05 and 3439.07, and such transferred property, or the value thereof, should be recovered and preserved for the benefit of the Estate pursuant to 11 U.S.C. §§ 550 and 551 and CAL. CIV. CODE § 3439.07.

**FIFTH CLAIM FOR RELIEF**

**Count V - Avoidance, Recovery, and Preservation of Preferential Transfer to Retail in**

**Preference Period Against Retail**

**[11 U.S.C. §§ 547, 550, and 551]**

111.    Plaintiff realleges and incorporates here by reference each and every allegation

contained in paragraphs 1 through 110 as though set forth in full.

112.    On or about November 18, 2024, Trustee sent the Demand Letter to Retail. *See* Exhibit 3.

113.    The Demand Letter discussed certain transfers from Debtor that were made to Retail within the 4 year reach-back period prior to the Petition Date. The transfers were listed showing the date and amount, according to Debtor's books and records, of each transfer or other payment. The Demand Letter described that Retail was paid $144,751.62 in Transfers and $15,578.21 in Preference Transfers. Trustee requested Retail provide information to assess whether any claim or defenses exist related to the transfers.

114.    Based on the information available to Trustee and considering the nature of the relationship between Debtor and Retail, no potential defenses were identified that could reduce Retail's liability for the preference payment.

115.    The Preference Transfers were made for, or on account of, an antecedent debt or debts owed by the LPG to Retail each of which constituted a "debt" or "claim" (as those terms are defined in the Bankruptcy Code) of Retail.

116.    The Preference Transfers happened while LPG was insolvent.

117.    Debtor is also entitled to the presumption of insolvency when the Preference Transfers happened pursuant to 11 U.S.C. § 547(f).

118.    As a result of the Preference Transfers, Retail recovered more than it would have received if: (i) the Debtor's case was under chapter 7 of the Bankruptcy Code; (ii) the Preference Transfers had not been made; and (iii) Retail received payments of its debts under the provisions of the Bankruptcy Code. As evidenced by the Debtor's schedules filed in the underlying Bankruptcy Case, as well as the proofs of claim that have been received to date, the Debtor's liabilities exceed its assets to the point that unsecured creditors will not receive a full payout of their claims from the Debtor's Estate.

119.    In accordance with the foregoing, the Preference Transfers are voidable pursuant to 11 U.S.C. § 547(b), and may be recovered and preserved for the benefit of the estate pursuant to 11 U.S.C. §§ 550 and 551.

**SIXTH CLAIM FOR RELIEF**

**Aiding and Abetting Against Defendants**

**11 U.S.C. Sections 544(b), 550, and 551; Cal. Civ. Code Sections 3439.04(a), 3439.04 (b) and 3439.07**

120.    Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 119 as though set forth in full.

121.    Defendants, based upon information and belief and based on the Ponzi Scheme Presumption, had knowledge of the fraudulent transactions, transfers and illegal agreements that were used to perpetuate and conceal the Ponzi scheme and fraudulent transfers.

122.    Defendants, with the foregoing knowledge, intended to, and did, help the Debtor in perpetuating and concealing the Ponzi scheme and fraudulent transfers of money.

123.    At all material times, Defendants had the intent to facilitate and conceal the Ponzi scheme and fraudulent transfers of money by aiding and abetting the illegal capping scheme and signing up consumer clients to keep the business going.

124.    Defendants, upon information and belief, assisted, and did actually engage in, the commission of fraud and the Ponzi scheme by coordinating, facilitating, and directing payments and transfers of monies and executing documents in furtherance of concealing the true nature of their fraudulent and criminal activity related to the Ponzi scheme.

125.    The injuries to Plaintiff, the Debtor's Estate and to its creditors directly, proximately and reasonably foreseeably resulting from and caused by violations of Sections 6151 and 6155 of the California Business and Professional Code include, without limitation, hundreds of thousands of dollars in improperly transferred and acquired monies.

126.    Plaintiff and the Debtor's Estate also suffered damages by incurring attorney's fees and costs associated with the prosecution of Defendants' unlawful activities.

**SEVENTH CLAIM FOR RELIEF**

**Count VI- Turnover of Estate Property Against Defendants**

**[11 U.S.C. § 542]**

127.    Plaintiff realleges and incorporates herein by reference each and every allegation

contained in paragraphs 1 through 123 as though set forth in full.

128.    Defendants have possession or control over property of the Estate in the form of the Transfers and Preference Transfers made pursuant to illegal and unenforceable agreements.

129.    The Transfers and Preference Transfers are not of inconsequential value to the Estate.

130.    The Transfers and Preference Transfers are paramount to Debtor's ability to pay creditors.

131.    Accordingly, Trustee is entitled to a judgment for turnover of the Transfers and Preference Transfers pursuant to 11 U.S.C. § 542.

## RESERVATION OF RIGHTS

132.    Plaintiff reserves the right to bring all other claims or causes of action that Plaintiff may have against Defendants, on any and all grounds, as allowed under the law or in equity, including but not limited to, those claims not known by the Trustee at this time but that he may discover during the pendency of this adversary proceeding.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for a judgment as follows:

**On The First, Second, Third, and Fourth Claims for Relief:**

1.    Avoiding, recovering, and preserving the Transfers against Retail;

**On the Fifth Claim for Relief:**

2.    Avoiding, recovering, and preserving the Preference Transfers against Retail;

**On the Sixth Claim for Relief:**

3.    Awarding Plaintiff monetary damages in the amount of all fraudulent transfers obtained by Defendants from Debtor;

**On the Seventh Claim for Relief:**

4.    Ordering Defendants to immediately turnover the Transfers and Preference Transfers it received from Debtor; and

**On All Claims for Relief:**

5.    Awarding costs of suit incurred here;

6.    Awarding punitive damages against Retail and Algazy; and

7.    Awarding attorney's fees;

8.    Awarding pre-judgement and post-judgement interest; and

9.    Granting any other and further relief as the Court deems just and proper.

Dated: March 18, 2025

Respectfully submitted,

DINSMORE & SHOHL LLP

By: /s/Yosina M. Lissebeck

Yosina M. Lissebeck
*Counsel to Richard A. Marshack, Plaintiff
and Trustee of the LPG Liquidation Trust*

# EXHIBIT 1

1   CHRISTOPHER B. GHIO (259094)
    christopher.ghio@dinsmore.com
2   CHRISTOPHER CELENTINO (131688)
    christopher.celentino@dinsmore.com
3   YOSINA M. LISSEBECK (201654)
    yosina.lissebeck@dinsmore.com
4   DINSMORE & SHOHL LLP
5   655 West Broadway, Suite 800
    San Diego, California 92101
6   Tele:  619.400.0500
    Fax:   619.400.0501
7

8   Sarah S. Mattingly (Ky. Bar 94257)
    sarah.mattingly@dinsmore.com
9   DINSMORE & SHOHL, LLP
    101 S. Fifth Street, Suite 2500
10  Louisville, Kentucky 40202
    Tele: 859-425-1096
11  Fax: 502-585-2207
12  (Admitted pro hac vice)

13  Special Counsel to Richard A. Marshack

14          UNITED STATES BANKRUPTCY COURT

15   CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

16  In Re                              Case No: 23-bk-10571-SC

17                                     Chapter 11

18                                     **ORDER GRANTING MOTION FOR**
    The Litigation Practice Group P.C.,   **ENTRY OF PROTECTIVE ORDER AND**
19                                     **THE PROTECTIVE ORDER**
              Debtor(s),
20

21                                     Date:   May 23, 2024
                                       Time:   1:30 p.m.
22                                     Judge:  Hon. Scott C. Clarkson
23                                     Place:  Courtroom 5C (via Zoom)[1]
                                               411 West Fourth Street
24                                             Santa Ana, CA 92701
25

26

27  _____

28  [1] Video and audio connection information for each hearing will be provided on Judge Clarkson's
    publicly posted hearing calendar, which may be viewed online at:
    http://ecf-ciao.cacb.uscourts.gov/CiaoPosted/?jid=SC.

FILED & ENTERED

JUN 03 2024

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY mccall      DEPUTY CLERK

The Court has read and considered the Notice of Motion and Motion for Entry of Protective Order (the "Motion") filed by Richard A. Marshack, in his capacity as the Chapter 11 Trustee (the "Trustee") of the Bankruptcy Estate ("Estate") of The Litigation Practice Group P.C., on May 2, 2024, pursuant to Federal Rule of Bankruptcy Procedure 7026 and Federal Rule of Civil Procedure 26(c)(1), as Dk. No. 1164 ("Motion"), and has found good cause to grant the Motion.

IT IS HEREBY ORDERED that:

1.    The Motion is granted;

2.    The below Protective Order shall apply to any contested matter arising in the main bankruptcy case and in all adversary proceedings filed by or against Trustee, present and future; and

3.    Govern the discovery conducted therein.

## PROTECTIVE ORDER

**1.    DEFINITIONS**

1.1    "Confidential Information" as used in this Protective Order shall mean documents and other information (regardless of how generated, stored or maintained) that a Party or non-party reasonably believes to contain or reflect non-public financial or business information, bank records, financial records, such as social security numbers, non-public financial or personal information of a Party or non-party, account numbers, sensitive digital information and identifiers, information subject to confidentiality agreements or provisions other than this Protective Order, and other non-public research, development, or commercial information that derives value or avoids injury by virtue of not being known to the public.

1.2    This "Action" is defined and hereby means any contested matter arising in the main bankruptcy case and in all adversary proceedings filed by or against Trustee, present and future.

1.3    "Designating Party" means a Party or non-party that designates Confidential Information during the Action.

1.4    "Receiving Party" means a Party that receives Confidential Information during the Action.

Exhibit "1"
Page 26

1.5    "Party" or "Parties" means person or entity subject to this Protective Order.

**2.    SCOPE OF THIS PROTECTIVE ORDER**

2.1    Unless otherwise ordered, this Protective Order shall govern certain documents and other products of discovery obtained in the Action from the Parties there to, and from third parties. As well as certain information copied or derived therefrom, excerpts, summaries or compilations thereof, including, but not limited to, documents voluntarily exchanged as part of early settlement discussions, documents produced pursuant to initial disclosures, requests authorized by the Federal Rules of Civil Procedure made applicable herein by the Federal Rules of Bankruptcy Procedure, answers to interrogatories, deposition transcripts, responses to requests for production, responses to requests for admission, subpoenas, affidavits, declarations, expert reports, and other such material and information as may be produced during the course of the Action and designated as Confidential Information.

**3.    DESIGNATION OF CONFIDENTIAL INFORMATION**

3.1    This Protective Order shall govern the production and handling of any Confidential Information in this Action. Any Party or non-party who produces Confidential Information in this Action may designate it as "Confidential" or "Attorneys' Eyes Only" consistent with the terms of this Protective Order. Whenever possible, the Designating Party must designate only those portions of a document, written discovery responses, deposition, transcript, or other material that contain the Confidential Information and refrain from designating entire documents. Regardless of any designations made hereunder, the Designating Party is not otherwise restricted from use or disclosure of its Confidential Information outside of this Action or for any business purposes. In addition, any Party may move to modify or seek other relief from any of the terms of this Protective Order if it has first tried in writing and in good faith to resolve its needs or disputes with the other Parties or Party as the case may be under the terms of this Protective Order. Further, nothing in this Protective Order shall prevent a Party from redacting documents consistent with the Federal Rules of Civil Procedure and utilizing the documents as needed through-out the Action.

3.2    <u>Application to Non-Parties:</u> Before a non-party is given copies of documents or materials designated as Confidential Information or Attorneys' Eyes Only as permitted hereunder, it

3

must first sign an acknowledgment to be bound to these terms that is attached hereto as <u>Exhibit A</u>; if it fails to do so, the Parties to this Action must resolve any such dispute before making disclosure of designated information as permitted hereunder to the non-party. If a non-party wishes to make designations hereunder, it must first sign attached <u>Exhibit A.</u>

3.3     <u>Timing and Provisional Protection:</u> Designations of Confidential Information may be made at any time. To avoid potential waiver of protection hereunder, the Designating Party should designate documents or materials containing Confidential Information at the time of production or disclosure, including on the record during the taking of any deposition. Deposition testimony will be deemed provisionally protected for a period of thirty (30) days after the transcript is released to the Parties by the court reporter, although the Parties may agree at any time to different timelines of provisional protection of information as Confidential or Attorneys' Eyes Only as part of one or more specific depositions. To retain any designations beyond the provisional period, a Designating Party must designate specific pages and lines of deposition testimony before the provisional period has expired. Such designations must be made in writing so that all counsel and court reporters may append the designation to all copies of the transcripts.

3.4     <u>Manner of Designation:</u> Confidential Information may be designated hereunder in any reasonable manner or method that notifies the Receiving Party of the designation level and identifies with specificity the information to which the designation applies. If made verbally, the Designating Party must promptly confirm the designation in writing. Whenever possible, the Designating Party should stamp, affix, or embed a legend of "CONFIDENTIAL" or "ATTORNEYS' EYES ONLY" on each designated page of the document or electronic image that contains Confidential Information.

**4.     CHALLENGES TO DESIGNATED INFORMATION**

4.1     In the event that a Receiving Party disagrees at any time with any designation(s) made by the Designating Party, the Receiving Party must first try to resolve such challenge in good faith on an informal basis with the Designating Party. The Receiving Party must provide written notice of the challenge and the grounds therefor to the Designating Party, who must respond in writing to the challenge within fifteen (15) days. At all times, the Designating Party carries the burden of establishing the propriety of the designation and protection level. Unless and until the challenge is

resolved by the Parties or ruled upon by the Court, the designated information shall remain protected under this Protective Order. The failure of any Receiving Party to challenge a designation does not constitute a concession that the designation is proper or an admission that the designated information is otherwise competent, relevant, or material.

**5.      LIMITED ACCESS/USE OF PROTECTED INFORMATION**

5.1      <u>Restricted Use:</u> Information that is produced or exchanged in the course of the Action and designated under this Protective Order may be used for preparation for trial and preparation for any appeal of any and all matters in the Action, as well as related settlement negotiations, and for no other purpose, without the written consent of the Designating Party. No Confidential Information may be disclosed to any person except in accordance with the terms of this Protective Order, unless the parties are co-counsel or have entered into joint defense agreements. All persons in possession of Confidential Information agree to exercise reasonable care with regard to the custody, use, or storage of such information to ensure that its confidentiality is maintained. This obligation includes, but is not limited to, the Receiving Party providing to the Designating Party prompt notice of the receipt of any subpoena that seeks production or disclosure of any designated information and consulting with the Designating Party before responding to the subpoena. Any use or disclosure of Confidential or Attorneys' Eyes Only information in violation of the terms of this Protective Order may subject the disclosing person or party to sanctions.

5.2      <u>Access to "Confidential" Information:</u> The Party(ies) and all persons subject to this Protective Order agree that information designated as "CONFIDENTIAL" may only be accessed or reviewed by the following:

a)      The Court, its personnel, and court reporters;

b)      Counsel of record, or co-counsel for any Party, or other party that has entered into a joint defense agreement in the Action and their employees who assist counsel of record, or co-counsel in the Action and are informed of the duties and obligations imposed hereunder;

c)      The Parties, including their clients, agents and employees who are assisting or have reason to know of the Action;

/ / /

5

d)      Experts or consultants employed by the Parties or their counsel, or co-counsel, for purposes of an Action, so long as each such expert or consultant has signed attached Exhibit A; and

e)      Other witnesses or persons with the Designating Party's consent or by court order.

5.3      Access to "Attorneys' Eyes Only" Designations: The Parties and all persons subject to this Protective Order agree that information designated as "ATTORNEYS' EYES ONLY" may only be accessed or reviewed by the following:

a)      The Court, its personnel, and court reporters;

b)      Counsel of record, or co-counsel for any Party, or other party that has entered into a joint defense agreement in the Action and their employees who assist counsel of record in the Action and are informed of the duties hereunder;

c)      In-house counsel for any Party in the Action and Richard A. Marshack, as Chapter 11 Trustee of The Litigation Practice Group P.C. who is informed of the duties and obligations imposed hereunder;

d)      Experts or consultants employed by the Parties or their counsel, or co-counsel for purposes of the Action,  and so long as each such expert or consultant has signed attached Exhibit A; and

e)      Other witnesses or persons to whom the Designating Party agrees in advance of disclosure or by court order.

5.4      Non-Waiver Effect of Designations: Neither the taking of, nor the failure to take, any action to enforce the provisions of this Protective Order, nor the failure to object to any designation, will constitute a waiver of any Party(ies)'s claim or defense in the Action or any other action or proceeding, including, but not limited to, a claim or defense that any designated information is or is not Confidential, is or is not entitled to particular protection, or embodies or does not embody information protectable by law.

5.5      In-Court Use of Designated Information: If information designated under this Protective Order will or may be offered in evidence at a hearing or trial related to any matter in the Action, then the offering party must give advance notice to the party or non-party that designated prior to offering the information so that any use or disclosure may be addressed in accordance with

6

the Court's case-management or other pre-trial order, or by a motion *in limine.* Nothing in this Protective Order shall be construed as a waiver by a Party of any objections that may be raised as to the admissibility at trial of any evidentiary materials.

**6.    CLAW-BACK REQUESTS**

6.1    <u>Failure to Make Designation:</u>  If, at any time, a Party or non-party discovers that it produced or disclosed Confidential Information without designation, it may promptly notify the Receiving Party and identify with particularity the Confidential Information to be designated and the level of designation (the claw-back notification). The Receiving Party may then request substitute production of the newly-designated information. Within thirty (30) days of receiving the claw-back notification, the Receiving Party must: (1) certify to the Designating Party it has appropriately marked or, if substitute production has been requested, destroyed all unmarked copies that it received, made, and/or distributed; and (2) if it was practicably unable to mark or destroy any information because disclosures occurred while the Receiving Party was under no duty of confidentiality under the terms of this Protective Order regarding that information, the Receiving Party must reasonably provide as much information as practicable to aid the Designating Party in protecting the information, consistently with the Receiving Party's attorney-client, work-product, and/or trial-preparation privileges.

6.2    <u>Inadvertent Production of Privileged Information:</u> If, at any time, a Party discovers that it produced information that it reasonably believes is subject to protection under the attorney/client, work-product, or trial-preparation privileges, then it must promptly notify each Receiving Party of the claim for protection, the basis for it, amend its privilege log accordingly, and comply with Fed. R. Civ. P. 26(b)(5). Whenever possible, the producing party must produce substitute information that redacts the information subject to the claimed protection. The Receiving Party must thereupon comply with Fed. R. Civ. P. 26(b)(5)(B) as to the information subject to the claimed protection.

/ / /

/ / /

/ / /

7

**7.    DURATION/CONTINUED RESTRICTIONS**

7.1    <u>Handling of Designated Information Upon Conclusion of the Main Bankruptcy Case:</u> Upon conclusion of the Main Bankruptcy Case, by way of dismissal or closing of the case, the Designating Party(ies) is/are responsible for ensuring that any Party or person to whom the Designating Party shared or disclosed designated information in any of the matters under the Action returns or destroys all of its copies, regardless of the medium in which it was stored. No witness or Party may retain designated information that it received from any other Party or non-party under this Protective Order; only counsel of record, or co-counsel, are the authorized agents who may retain one copy for their respective legal files, and who must also describe to the Designating Party the extra steps taken to protect its legal file containing paper and/or electronic copies of the designated information so that it is not accessed, used, or disclosed inconsistently with the obligations under this Protective Order. This provision does not apply to the Court or Court staff. Moreover, this provision does not apply to Trustee, who may retain and use – consistent with this Order – Confidential Information received in any Action during the entirety of the Bankruptcy.

7.2    <u>Continued Restrictions Under this Protective Order:</u> The restrictions on disclosure and use of Confidential Information shall survive the conclusion of the Bankruptcy case and any matter in the Action.

**8.    PRIVILEGED OR PROTECTED INFORMATION**

8.1    Nothing in this Protective Order shall require disclosure of information that is protected by the attorney-client privilege, the work-product protection, or any other legally cognizable privilege (a "Privilege or Protection").  If information subject to a claim of Privilege or Protection is inadvertently produced, pursuant to Federal Rule of Evidence 502(d) such production shall not constitute a waiver of, or estoppel as to, any claim of Privilege or Protection for such information or any other information that may be protected from disclosure by a Privilege or Protection in any proceeding.

8.2    If a Party receives a document that appears to be subject to a Privilege or Protection, then it shall refrain from examining the document any more than is essential to ascertain if it is privileged or protected and shall promptly notify the producing Party in writing that the receiving

8

Party possesses material that appears to be subject to a Privilege or Protection. The producing Party shall have seven (7) days after receiving such notice to assert a Privilege or Protection over the identified material. If the producing Party does not assert a claim of Privilege or Protection within the seven (7)-day period, the material in question shall be deemed not privileged or protected.

8.3     If a producing Party has produced a document subject to a claim of Privilege or Protection, upon written request by the producing Party, the document for which a claim of Privilege or Protection is made shall be sequestered or destroyed to the extent reasonably practicable, and the receiving Party shall not use the document for any purpose other than in connection with analyzing or disputing a claim of Privilege or Protection or in connection with a motion to compel the production of the document.

8.4     The receiving Party sequestering or destroying such material may then move the Court for an order compelling production of the material. The applicable producing Party bears the burden of establishing the applicable Privilege or Protection of any clawed-back document or information as and to the same extent that it would have borne such burden had it not produced the document or information.  Nothing in this Protective Order shall limit the Court's right or any receiving Party's right to request an in camera review of any information subject to a claim of Privilege or Protection.

### 

Date: June 3, 2024

Scott C. Clarkson
United States Bankruptcy Judge

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT "A"

Exhibit "1"
Page 34

1

EXHIBIT A
Page 1

1   Christopher B. Ghio (State Bar No. 259094)
    Christopher Celentino (State Bar No. 131688)
2   Yosina M. Lissebeck (State Bar No. 201654)
    **DINSMORE & SHOHL LLP**
3   655 West Broadway, Suite 800
    San Diego, CA 92101
4   Telephone:  619.400.0500
    Facsimile:  619.400.0501
5   christopher.ghio@dinsmore.com
    christopher.celentino@dinsmore.com
6   yosina.lissebeck@dinsmore.com

7   Sarah S. Mattingly (Ky. Bar 94257)
    DINSMORE & SHOHL, LLP
8   101 S. Fifth Street, Suite 2500
    Louisville, KY 40202
9   Telephone: 859-425-1096
    Facsimile: 502-585-2207
10  Sarah.mattingly@dinsmore.com
    (Admitted pro hac vice)
11
    Special Counsel to Richard A. Marshack,
12  Chapter 11 Trustee

13

14              **UNITED STATES BANKRUPTCY COURT**

15              **CENTRAL DISTRICT OF CALIFORNIA**

16

17  In Re                              Case No. 8:23-BK-10571-SC
18
                                       Chapter 11
19
    The Litigation Practice Group P.C.,  **EXHIBIT A TO STIPULATED**
20                                       **ORDER**
            Debtor(s),
21                                       Date:   May 23, 2024
22                                       Time:   1:30 p.m.
                                         Judge:  Hon. Scott C. Clarkson
23                                       Place:  Courtroom 5C[1] - Via Zoom
24                                               411 W. Fourth Street
                                                 Santa Ana, CA  92701
25

26

27  _____
28  [1] Video and audio connection information for each hearing will be provided on Judge Clarkson's
      publicly posted hearing calendar, which may be viewed online at:
      http://ecf-ciao.cacb.uscourts.gov/CiaoPosted/?jid=SC.

                          1

1   This is to certify that:

2        (a)    I am being given access to Confidential Information pursuant to the

3   Stipulated Protective Order that was entered into the main bankruptcy case for

4   Litigation Practice Group, but which is binding and controlling as set forth by the

5   Court's Order on any and all contested matters and  any and all litigation commenced

6   by Trustee;

7        (b)    I have read the Stipulated Protective Order; and

8        (c)    I agree to be bound by the terms and conditions thereof, including,

9   without limitation, to the obligations regarding the use, non-disclosure and return of

10  such Confidential Information. I further agree that in addition to being contractually

11  bound by the Stipulated Protective Order, I am subject to the jurisdiction of the above

12  reference Court for any violation thereof.

13

14  Date: _____

15

16                                    _____
                                         Signature

17

18                                    _____

19                                         Printed Name

20

21

22

23

24

25

26

27

28                                    Exhibit "1"
                                      Page 36
                        2             EXHIBIT A
                                      Page 3

# EXHIBIT 2

In re: The Litigation Practice Group PC
Disbursement Details by Payee
4 Years Pre-Petition (03/20/2019 - 03/20/2023)



| Bank Name | Account Name | Account Number | Statement Date | Transaction Date | Check Number | Debit/Charge | Memo |
|---|---|---|---|---|---|---|---|
| Chase | The Litigation Practice Group PC | | 2/28/2022 | 2/18/2022 | | 139.60 | Fedwire Debit Via: Bk Amer Nyc/026009593 NC: Retail Is us LLC/Nir Algazy Las Vegas, NV 891 48 us Ret: Weekly Disbursement Imad: 0218B1Qgc06C013156 Tm: 5188800049Jo |
| Chase | The Litigation Practice Group PC | | 2/28/2022 | 2/25/2022 | | 139.60 | Fedwire Debit Via: Bk Amer Nyc/026009593 A/C: Retail Is US LLC/Nir Algazy Las Vegas, NV 891 48 us Ref: Weekly Disbursement Imad: 0225BiQgc01C0i4277 |
| Chase | The Litigation Practice Group PC | | 3/31/2022 | 3/4/2022 | | 251.20 | Fedwire Debit Via: Bk Amer Nyc/026009593 A/C: Retail Is us LLC/Nir Algazy Las Vegas, NV 89148 us Ref: Weekly Disbursement Imad: 0304B1Qgc03C009194 Tm: 5366000063Jo |
| Chase | The Litigation Practice Group PC | | 3/31/2022 | 3/10/2022 | | 279.20 | Fedwire Debit Via: Bk Amer Nyc/026009593 A/C: Retail Is US LLC/Nir Algazy Las Vegas, NV 89148 US Ret: Weekly Disbursement Imad: 031 0B1Qgc08C014638 Tm: 741 9400069Jo |
| Chase | The Litigation Practice Group PC | | 3/31/2022 | 3/18/2022 | | 374.80 | Fedwire Debit Via: Bk Amer Nyc/026009593 NC: Retail Is US LLC/Nir Algazy Las Vegas, NV 891 48 US Ref: Weekly Disbursement Imad: O3i8BiQgcO2CO08i3i |
| Chase | The Litigation Practice Group PC | | 3/31/2022 | 3/24/2022 | | 232.14 | Fedwire Debit Via: Bk Amer Nyc/026009593 A/C: Retail Is US LLCiNir Algazy Las Vegas, NV 89148 US Ref: Weekly Disbursement Imad: 0324B1Qgc01C008139 |
| Chase | The Litigation Practice Group PC | | 4/30/2022 | 4/1/2022 | | 325.62 | Fedwire Debit Via: Bk Amer Nyc/026009593 A/C: Retail Is US LLC/Nir Algazy Las Vegas, NV 89148 US Ref: Weekly Disbursement Imad: 0401 Bi QgcO8C0i 6528 Tm: 5024600091Jo |
| Chase | The Litigation Practice Group PC | | 4/30/2022 | 4/7/2022 | | 24.48 | Fedwire Debit Via: Bk Amer Nyc/026009593 NC: Retail Is us LLC/Nir Algazy Las Vegas, NV 89148 US Ref: Weekly Disbursement Imad: 0407B1Qgc05C009285 Tm: 5691 700097Jo |
| Chase | The Litigation Practice Group PC | | 4/30/2022 | 4/18/2022 | | 34.44 | Fedwire Debit Via: Bk Amer Nyc/026009593 A/C: Retail Is us LLC/Nir Algazy Las Vegas, NV 89148 US Ref: Weekly Disbursement Imad: 0418B1Qgc01C007919 Tm: 4356400i08Jo |
| Chase | The Litigation Practice Group PC | | 4/30/2022 | 4/21/2022 | | 70.32 | Fedwire Debit Via: Bk Amer Nyc/026009593 A/C: Retail Is us LLC/Nir Algazy Las Vegas, NV 89148 US Ref: Weekly Disbursement Imad: 0421 B1Qgc03COO0829O Tm: 4859800ii1Jo |
| Chase | The Litigation Practice Group PC | | 4/30/2022 | 4/28/2022 | | 74.96 | Fedwire Debit Via: Bk Amer Nyc/026009593 A/C: Retail Is us LLC/Nir Algazy Las Vegas, NV 89148 US Ref: Weekly Disbursement Imad: 0428B1Qgc07C0i4400 Tm: 5928900ii8Jo |
| Chase | The Litigation Practice Group PC | | 5/31/2022 | 5/5/2022 | | 156.13 | Fedwire Debit Via: Bk Amer Nyc/026009593 NC: Retail Is US LLCiNir Algazy Las Vegas, NV 89148 US Ref: Weekly Disbursement Imad: 0505B1Qgc08C032368 Tm: 7133400i25Jo |
| Chase | The Litigation Practice Group PC | | 5/31/2022 | 5/13/2022 | | 108.24 | Fedwire Debit Via: Bk Amer Nyc/026009593 NC: Retail Is US LLC/Nir Algazy Las Vegas, NV 891 48 us Ref: Weekly Disbursement Imad: O5i3BIQgcO5COi3iO4 Tm: 74441001 33Jo |
| Chase | The Litigation Practice Group PC | | 5/31/2022 | 5/19/2022 | | 371.32 | Fedwire Debit Via: Bk Amer Nyc/026009593 NC: Retail Is us LLC/Nir Algazy Las Vegas, NV 89148 us Ref: Weekly Disbursement Imad: 0519B1Qgc06C010914 Tm: 5549400i39Jo |
| Chase | The Litigation Practice Group PC | | 5/31/2022 | 5/27/2022 | | 65.67 | Fedwire Debit Via: Bk Amer Nyc1026009593 NC: Retail Is US LLCiNir Algazy Las Vegas, NV 89148 US Ref: Weekly Disbursement Imad: 0527BiQgc06C0i6484 Tm: 7162200i47Jo |
| Chase | The Litigation Practice Group PC | | 6/30/2022 | 6/3/2022 | | 255.74 | Fedwire Debit Via: Bk Amer Nyc/026009593 NC: Retail Is us LLC/Nir Algazy Las Vegas, NV 89148 US Ref: Weekly Disbursement Imad: 0603B1Qgc06C014469 Tm: 62086001 54Jo |
| Chase | The Litigation Practice Group PC | | 6/30/2022 | 6/10/2022 | | 287.48 | Fedwire Debit Via: Bk Amer Nyc/026009593 A/C: Retail Is US LLC/Nir Algazy Las Vegas, NV 89148 US Ref: Weekly Disbursement Imad: O6iOBiQgcO7COi7O99 Tm: 5146800i6iJo |
| Chase | The Litigation Practice Group PC | | 6/30/2022 | 6/16/2022 | | 531.81 | Fedwire Debit Via: Bk Amer Nyc/026009593 A/C: Retail Is us LLC/Nir Algazy Las Vegas, NV 89148 US Ref: Weekly Disbursement Imad: 0616B1Qgc05C006901 Tm: 3748800i67Jo |
| Chase | The Litigation Practice Group PC | | 6/30/2022 | 6/23/2022 | | 153.20 | Fedwire Debit Via: Bk Amer Nyc/026009593 A/C: Retail Is us LLC/Nir Algazy Las Vegas, NV 89148 US Ref: Weekly Disbursement Imad: 0623B1Qgc02C006467 Tm: 6511400i174Jo |
| Chase | The Litigation Practice Group PC | | 6/30/2022 | 6/30/2022 | | 495.88 | Fedwire Debit Via: Bk Amer Nyc/026009593 A/C: Retail Is us LLC/Nir Algazy Las Vegas, NV 89148 US Ref: Weekly Disbursement Imad: O63OBiQgcO4CO23i ii Tm: 5592100i8iJo |
| Chase | The Litigation Practice Group PC | | 7/31/2022 | 7/8/2022 | | 571.92 | Fedwire Debit Via: Bk Amer Nyc/026009593 NC: Retail Is us LLC/Nir Algazy Las Vegas, NV 89148 US Ref: Weekly Disbursement Imad: 0708B1Qgc06C009422 Tm: 4037700i89Jo |
| Chase | The Litigation Practice Group PC | | 7/31/2022 | 7/14/2022 | | 1,326.72 | Fedwire Debit Via: Bk Amer Nyc/026009593 A/C: Retail Is us LLC/Nir Algazy Las Vegas, NV 89148 US Ref: Weekly Disbursement Imad: 07i4BiQgcO3C009602 |
| Chase | The Litigation Practice Group PC | | 7/31/2022 | 7/21/2022 | | 50.51 | Fedwire Debit Via: Bk Amer Nyc/026009593 NC: Retail Is us LLC/Nir Algazy Las Vegas, NV 891 48 us Ref: Weekly Disbursement Imad: 0721 B1Qgc06C014671 Tm: 5239400202Jo |
| Chase | The Litigation Practice Group PC | | 7/31/2022 | 7/29/2022 | | 861.58 | Fedwire Debit Via: Bk Amer Nyc/026009593 A/C: Retail Is us LLC/Nir Algazy Las Vegas, NV 89148 US Ref: Weekly Disbursement Imad: 0729BiQgcO2C0i0002 Tm: 370780020iJo |
| Chase | The Litigation Practice Group PC | | 8/31/2022 | 8/5/2022 | | 1,119.02 | Fedwire Debit Via: Bk Amer Nyc/026009593 NC: Retail Is us LLC/Nir Algazy Las Vegas, NV 89148 US Ref: Weekly Disbursement Imad: 0805B1Qgc04C004623 |
| Chase | The Litigation Practice Group PC | | 8/31/2022 | 8/11/2022 | | 694.53 | Fedwire Debit Via: Bk Amer Nyc/026009593 A/C: Retail Is US LLC/Nir Algazy Las Vegas, NV 89148 U5 Ref: Weekly Disbursement Imad: 0811 Bi Qgc02C005909 Tm: 3898200223Jo |
| Chase | The Litigation Practice Group PC | | 8/31/2022 | 8/19/2022 | | 1,326.86 | Fedwire Debit Via: Bk Amer Nyc/026009593 NC: Retail Is us LLC/Nir Algazy Las Vegas, NV 89148 U5 Ref: Weekly Disbursement Imad: 081 9BlQgcO8COiO937 Tm: 2835700231Jo |
| Chase | The Litigation Practice Group PC | | 8/31/2022 | 8/26/2022 | | 1,667.55 | Fedwire Debit Via: Bk Amer Nyc/026009593 NC: Retail Is us LLC/Nir Algazy Las Vegas, NV 89148 US Ref: Weekly Disbursement Imad: 0826B1Qgc08C014584 Tm: 4485100238Jo |

DRAFT FORM - SUBJECT TO CHANGE

Payor Accounts: BAT Inc., Coast Processing LLC,
EZ Debt Relief, Maverick Management Group, Prime Logix, The
Litigation Practice Group, Vulcan Consulting Group LLC

Exhibit 2
Page 38



In re: The Litigation Practice Group PC
Disbursement Details by Payee
4 Years Pre-Petition (03/30/2019 - 03/20/2023)

| Bank Name | Account Name | Account Number | Statement Date | Transaction Date | Check Number | Debit/Charge | Memo |
|---|---|---|---|---|---|---|---|
| Chase | The Litigation Practice Group PC | | 9/30/2022 | 9/2/2022 | | 1,057.00 | Fedwire Debit Via: Bk Amer Nyc/026009593 NC: Retail Is US LLC/Nir Algazy Las Vegas, NV 89i48 U5 Ref: Weekly Disbursement Imad: 0902B1Qgc03C006693 Tm: 3729700245Jo |
| Chase | The Litigation Practice Group PC | | 9/30/2022 | 9/9/2022 | | 902.17 | Fedwire Debit Via: Bk Amer Nyc/026009593 A/C: Retail Is US LLC/Nir Algazy Las Vegas, NV 89i48 US Ref: Weekly Disbursement Imad: O9O9BIQgcO4COO9Oi2 Tm: 3436800252Jo |
| Chase | The Litigation Practice Group PC | | 9/30/2022 | 9/16/2022 | | 1,609.03 | Fedwire Debit Via: Bk Amer Nyc/026009593 A/C: Retail Is US LLC/Nir Algazy Las Vegas, NV 89148 US Ref: Weekly Disbursement Imad: O9i6BiQgcOi000847i Tm: 6662300259Jo |
| Chase | The Litigation Practice Group PC | | 9/30/2022 | 9/23/2022 | | 1,025.96 | Fedwire Debit Via: Bk Amer Nyc/026009593 A/C: Retail Is US LLC/Nir Algazy Las Vegas, NV 89148 us Ref: Weekly Disbursement Imad: O923BiQgcO3COi 1082 Tm: 3104200266Jo |
| Chase | The Litigation Practice Group PC | | 9/30/2022 | 9/30/2022 | | 2,759.19 | Fedwire Debit Via: Bk Amer Nyc/026009593 A/C: Retail Is US LLC/Nir Algazy Las Vegas, NV 89148 us Ref: Weekly Disbursement Imad: 0930BiQgcO8C05645i Tm: 8680200273Jo |
| Chase | The Litigation Practice Group PC | | 10/31/2022 | 10/6/2022 | | 1,379.83 | Fedwire Debit Via: Bk Amer Nyc/026009593 A/C: Retail Is US LLC/Nir Algazy Las Vegas, NV 89148 us Ref: Weekly Disbursement Imad: IOO6BiQgcO8COI244O Tm: 4304400279Jo |
| Chase | The Litigation Practice Group PC | | 10/31/2022 | 10/14/2022 | | 3,353.87 | Fedwire Debit Via: Bk Amer Nyc/026009593 NC: Retail Is US LLC/Nir Algazy Las Vegas, NV 89148 US Ref: Weekly Disbursement Imad: iOi4BiQgcO7COO8265 Tm: 6308000287Jo |
| Chase | The Litigation Practice Group PC | | 10/31/2022 | 10/21/2022 | | 1,712.99 | Fedwire Debit Via: Bk Amer Nyc/026009593 A/C: Retail Is US LLC/Nir Algazy Las Vegas, NV 89148 us Ref: Weekly Disbursement Imad: 1021 B1QgcO8CO24825 Tm: 5053400294Jo |
| Chase | The Litigation Practice Group PC | | 10/31/2022 | 10/28/2022 | | 8.29 | Fedwire Debit Via: Bk Amer Nyc/026009593 A/C: Retail Is US LLC/Nir Algazy Las Vegas, NV 89148 us Ref: Weekly Disbursement Imad: iO28BiQgcO2COi 1572 Tm: 739810030iJo |
| Chase | The Litigation Practice Group PC | | 11/30/2022 | 11/3/2022 | | 1,717.80 | Fedwire Debit Via Bk Amer Nyc/026009593 NC Retail Is US LLCINir Algazy Las Vegas, NV 89148 US Ret: Weekly Disbursement Imad: 1 103B1Qgc05D007569 Tm: 42471 00307J0 |
| Chase | The Litigation Practice Group PC | | 11/30/2022 | 11/9/2022 | | 87.03 | Fedwire Debit Via Bk Amer Nyc/026009593 NC Retail Is US LLC/Nir Algazy Las Vegas, NV 89148 US Ret. Weekly Disbursement Imed. 1109B1Qgc08C021398 Tm 39683003i3Jo |
| Chase | The Litigation Practice Group PC | | 11/30/2022 | 11/9/2022 | | 2,118.58 | Fedwire Debit Via: Bk Amer Nyc/026009593 NC: Retail Is US LLC/Nir Algazy Las Vegas, NV 89148 US Ret. Weekly Disbursement Imed. 1109B1QgcO5CO1O1O7 Tm 39471003l3Jo |
| Chase | The Litigation Practice Group PC | | 11/30/2022 | 11/10/2022 | | 18.60 | Fedwire Debit Via: Bk Amer Nyc/026009593 NC: Retail Is US LLC/Nir Algazy Las Vegas, NV 89148 US Ret: Weekly Disbursement Imsd: ii i0610gc06C012909 Tm 80599003i4Jc |
| Chase | The Litigation Practice Group PC | | 11/30/2022 | 11/10/2022 | | 1,717.80 | Fedwire Debit Via: Bk Amer Nyc1026009593 NC: Retail Is US LLC/Nir Algazy Las Vegas, NV 89t48 US Ret: 10.28.22 Week Aftiliete Peymeet Imad: 11 10B1Ogc08C048496 Tm: 806130031 4do |
| Chase | The Litigation Practice Group PC | | 11/30/2022 | 11/10/2022 | | 2,526.28 | Fedwire Debit Via: Bk Amer Nyc/026009593 NC: Retail Is US LLCINir Algazy Las Vegas, NV 89148 US Ret Weekly Disbursement Imad: 1110B1Ogc08C048479 Tm: 8060000314Jc |
| Chase | The Litigation Practice Group PC | | 11/30/2022 | 11/15/2022 | | 81,527.83 | Fedwire Debit Vie: Bk Amer Nyc/026009593 NC: Retell Is US LLC/Nir Algazy Las Vegas, NV 89148 US Ret File Purchase Imad 1115B1Qgc07C014415 Tm 511950031 9J0 |
| Chase | The Litigation Practice Group PC | | 11/30/2022 | 11/18/2022 | | 67.92 | Fedwire DebS Via: Bk Amer Nyc/026009593 NC: Retail Is US LLC/Nir Algazy Las Vegas, NV 89148 US Ret Weekly Disbursement Imad: 1118B1Ogc08C028251 Tm. 5041 600322Jo |
| Chase | The Litigation Practice Group PC | | 11/30/2022 | 11/18/2022 | | 3,446.27 | Fedwire Debit Via: Bk Amer Nyc/026009593 NC: Retail Is US LLC/Nir Algazy Las Vegas, NV 89148 US Ret Weekly Disbursement Imad 11 18B1Cgc08C02829O Tm: 5041 700322Jo |
| Chase | The Litigation Practice Group PC | | 11/30/2022 | 11/25/2022 | | 2,050.37 | Fedwire Debit Via Bk Amer Nyc/026009593 NC Retail Is US LLC/Nir Algazy Las Vegas, NV 89148 US Ret Weekly Disbursement Imad 1125B1Ogo050009835 Tm 4227800329Jo |
| Chase | The Litigation Practice Group PC | | 11/30/2022 | 11/25/2022 | | 15.48 | Fedwire Debit Via: Bk Amer Nyc/026009593 NC: Retail Ia US LLC/Nir Algazy Lea Vegas, NV 89148 US Ret: Weekly Disbursement Imad: 1125B1C9c03C010306 Tm 422i900329Jo |
| Chase | The Litigation Practice Group PC | | 12/31/2022 | 12/5/2022 | | 2,843.39 | Fedwire Debit Vie Bk Amer Nyc/026009593 NC Retail Ia US LLC/Nir Algazy Las Vegas, NV 89148 US Ref Weekly Disbursement Imad I205R1Qgc08CO38625 Tm: 557D900339Jo |
| Chase | The Litigation Practice Group PC | | 12/31/2022 | 12/5/2022 | | 41.14 | Fedwire Debit Via: Bk Amer Nyc/026009593 NC: Retail Is US LLCINir Algazy Las Vegas, NV 89148 US Ret. Weekly Disbursement Imad. 1205B1Ogc08C038622 Tm: 5571 000339Jo |
| Chase | The Litigation Practice Group PC | | 12/31/2022 | 12/9/2022 | | 63.83 | Fedwire Debit Via: Bk Amer Nyc/026009593 NC: Retail Is US LLC/Nir Algazy Las Vegae, NV 89148 US Ret Weekly Disbursement Imad 1209B1Qgc08C034809 Tm 6584400343Jo |
| Chase | The Litigation Practice Group PC | | 12/31/2022 | 12/9/2022 | | 2,386.14 | Fedwire Debit Via: Bk Amer Nyc/026009593 NC: Retail Is US LLC/Nir Algazy Las Vegas, NV 89148 US Ret. Weekly Disbursement Imad 1209B1Ogc08C034824 Tm 6584300343Jo |
| Chase | The Litigation Practice Group PC | | 12/31/2022 | 12/19/2022 | | 2,704.47 | Fadwira Debit Via: Bk Amer Nyc/026009593 NC: Retail Is US LLC/Nir Algazy Las Vegas, NV 89148 US Ret. Weekly Diaburaement Imad. 121 98iQgc08C042807 Tm 8042400353Jo |
| Chase | The Litigation Practice Group PC | | 12/31/2022 | 12/19/2022 | | 41.63 | Fedwire Debit Via: Bk Amer Nyc/026009593 NC: Retail Is US LLC/Nir Algazy Las Vegas, NV 89148 us Ret Weekly Disbursement Imad l2l9B1Ogc080042B00 Tm: 8D42500353Jo |
| Chase | The Litigation Practice Group PC | | 12/31/2022 | 12/27/2022 | | 57.19 | Fedwire Debit Via: Bk Amer Nyc/026009593 NC: Retail Is US LLC/Nir Algazy Las Vegas, NV 89148 US Ret Weekly Disbursement Imad i227B1Qgc0iC0i6219 Tm 480390035iJo |
| Chase | The Litigation Practice Group PC | | 12/31/2022 | 12/27/2022 | | 4,951.12 | Fedwire Debit Via: Bk Amer Nyc1026009593 NC: Retell Is US LLC/Nir Algezy Les Vegas, NV 89148 US Ret: Weekly Disbursement mad: 1227B1Dgc01C022308 Tm. 6980800361Jo |

Payor Accounts: BAT Inc., Coast Processing LLC,
EZ Debt Relief, Maverick Management Group, Prime Logix, The
Litigation Practice Group, Vulcan Consulting Group LLC

Exhibit 2
Page 39

In re: The Litigation Practice Group PC
Disbursement Details by Payee
4 Years Pre-Petition (03/20/2019 - 03/20/2023)



| Bank Name | Account Name | Account Number | Statement Date | Transaction Date | Check Number | Debit/Charge | Memo |
|---|---|---|---|---|---|---|---|
| Chase | The Litigation Practice Group PC | | 12/31/2022 | 12/30/2022 | | 8.19 | Fedwire Debit Via: Bk Amer Nyc/D26DD9593 NC: Retail Is US LLC/Nir Algazy Las Vegas, NV 89148 US Ret Weekly Disbursement Imad 123DB1OgcD8CD67782 Tm 5575500364J0 |
| Chase | The Litigation Practice Group PC | | 12/31/2022 | 12/30/2022 | | 1,245.86 | Fedwire Debit Vie: Bk Amer Nyc/D26009593 NC: Retail Is US LLC/Nir Algazy Las Vegas, NV 89t40 US Ret: Weekly Disbursement Imad: 123DB1OgcD7CD44D99 Tm. 55756DD364Jo |
| Chase | The Litigation Practice Group PC | | 1/31/2023 | 1/6/2023 | | 1,484.11 | Fedwire Debit Via Bk Amer Nyc/026009593 NC Retail Is US LLC/Nir Algazy Las Vegas, NV 89148 US Ret: Weekly Disbursement Imad: 0i08B1Ogc08C029348 Tm: 471 7500006Jo |
| Chase | The Litigation Practice Group PC | | 1/31/2023 | 1/6/2023 | | 55.62 | Fedwire Debit Via: Bk Amer Nyc/026009593 NC: Retail Is US LLC/Nir Algazy Las Vegas, NV 89148 US Ret: Weekly Disbursement Imad: 0106B1Dgc06C029394 Tm: 47246000063o |
| Bank of America | Litigation Practice Group PC | | 1/31/2023 | 1/13/2023 | | 44.83 | WIRE TYPEBOOK OUT DATE.2301 13 TIME:1 658 ET TRNQO23O1 1300502834 RELATED REF:421502190 BNFRETAIL IS US LLC ID501011684985 PMT DET:O1.13 .23 WEEKLY DISBURSEMENT |
| Bank of America | Litigation Practice Group PC | | 1/31/2023 | 1/17/2023 | | 1,715.40 | WIRE TYPEBOOK OUT DATEQ3O1 17 TIME:O430 ET TRNQO23O1 1300507727 RELATED REF:421 502562 BNFRETAIL IS US LLC IDSO1 011684985 PMT DETO1 .13 .23 WEEKLY DISBURSEMENT |
| Bank of America | Litigation Practice Group PC | | 1/31/2023 | 1/23/2023 | | 44.61 | WIRE TYPE:BOOK OUT DATE:230123 TIME:0416 ET TRN:2023012300168427 RELATED REF:422398456 BNF:RETAIL IS US LLC ID:501011684985 PMT DET:WEEKL Y DISBURSEMENT |
| Chase | The Litigation Practice Group PC | | 1/31/2023 | 1/24/2023 | | 2,257.33 | Fedwire Debit Via: Bk Amer Nyc1026009593 NC: Retail Is US LLCINir Algazy Las Vegas, NV 89t48 US Ret: Weekly Disbursement mad. 0l24610gc08C032059 Tm: 5653200024Jo |
| Chase | The Litigation Practice Group PC | | 2/28/2023 | 2/7/2023 | | 50.05 | Fedwire Debit Via: Bk Amer Nyc/026009593 NC: Retail Is US LLC/Nir Algazy Las Vegas, NV 89t48 US Ref: Weekly Disbursement Imad: 0207B10gc07C031926 Trn: 6649700038Jo |
| Chase | The Litigation Practice Group PC | | 2/28/2023 | 2/7/2023 | | 3,649.78 | Fedwire Debit Via: Bk Amer Nyc/026009593 A/C: Retail Is US LLC/Nir Algazy Las Vegas, NV 89148 US Ref: Weekly Disbursement Imad: 0207B1Ogc07C031920 Trn: 6649600038Jo |
| Bank of America | Litigation Practice Group PC | | 2/28/2023 | 2/9/2023 | | 14.12 | WIRE TYPEBOOK OUT DATE230209 TIME:1 230 ET TRNQ023020900343993 RELATED REF:4251 02460 BNF:RETAIL IS US LLC 1D501 011684985 PMT DET:WEEKL Y DISBURSEMENTS |
| | | | | | | 144,751.62 | |

DRAFT FORM - SUBJECT TO CHANGE

Payor Accounts: BAT Inc., Coast Processing LLC,
EZ Debt Relief, Maverick Management Group, Prime Logix, The
Litigation Practice Group, Vulcan Consulting Group LLC

Exhibit 2
Page 40

# EXHIBIT 3





**DINSMORE & SHOHL** LLP
101 S 5th Street, Suite 2500
Louisville, KY 40202
www.dinsmore.com

Bryan L. Cockroft
(502) 540-2576 (direct) · (502) 585-2207 (fax)
Bryan.cockroft@dinsmore.com

**_VIA U.S. Mail_**

**VIA E-Mail:** nir@LeadBuyerHub.com

March 7, 2025

Retail Is Us LLC
9205 West Russell Road,
Building #3 Suite 240
Las Vegas NV, 89148
Attn: Nir Algazy

> Re:   *In re The Litigation Practice Group P.C.*
>        U.S. Bankruptcy Court, Central District of California
>        Case No. 8:23-bk-10571-SC

Dear Sir/Madam:

This constitutes a demand to provide any and all documents and information evidencing the basis for, accounting of, and any defenses to my client's claims to avoid and recover, the transfers to Retail Is Us LLC from The Litigation Practice Group P.C. ("Debtor").

This firm represents Richard A. Marshack, Chapter 11 Trustee for the bankruptcy estate of The Litigation Practice Group P.C. and liquidating trustee of the LPG Liquidation Trust (collectively, "Trustee") in the above-referenced bankruptcy case. Pursuant to 11 U.S.C. § 1107 and his appointment as Trustee, the Trustee has the obligation to investigate and pursue claims, including fraudulent transfers, preferential transfers, and unauthorized post-petition transfers. Under the Bankruptcy Code, the Trustee has the power to file lawsuits seeking to avoid, recover, and preserve such transfers for the benefit of the Estate. *See* 11 U.S.C. §§ 544 *et seq.*

A review of the Debtor's books and records confirms that Retail Is Us LLC received potential fraudulent conveyances totaling $144,751.62, which can be avoided and recovered by the Trustee pursuant to 11 U.S.C. §§ 544 and 548 and Cal. Civ. Code. §§ 3439.04 and 3439.05 and potential preferential transfers totaling $15,578.21, which can be avoided and recovered by the Trustee pursuant to 11 U.S.C. §§ 544 and 548 and Cal. Civ. Code. §§ 3439.04 and 3439.05.

The Trustee has been unable to determine why such transfers were made to Retail Is Us LLC, what was provided to the Debtor in exchange for such transfers, and whether defenses exist to the Trustee's claims to avoid and recover the transfers. Please respond to this letter attaching any evidence you have related to these transfers including contracts, agreements, subscriptions,

Exhibit 3
Page 42

Retail Is Us LLC
March 7, 2025
Page 2

invoices, and any other documentation showing the date, terms, and amounts for the transfers received and any documents evidencing shipment dates as to goods and services provided by Retail Is Us LLC to the Debtor. Documents showing the course of dealing between Retail Is Us LLC and the Debtor, the date of receipt of the Debtor's payment and the amount, deposit date, and any proof of deposit for any or all of the transfers will be helpful in determining the permissibility of the transfers and what, if any, value the Debtor received in return for payments made to Retail Is Us LLC.

You are further notified that the claims against Retail Is Us LLC will be governed by the Federal Rules of Bankruptcy Procedure and the Federal Rules of Civil Procedure, which apply to lawsuits filed in federal bankruptcy courts such as the one in the Central District of California. Pursuant to these rules, every party to a lawsuit has a duty to preserve all evidence which could be relevant to the suit. These obligations also arise when, as here, litigation is reasonably foreseeable. This includes the duty to preserve all electronic evidence, such as emails discussing the incident or related to matters at issue in the suit. This duty to preserve evidence is broad and extends to all documents, regardless of whether the document is stored electronically (such as email) or in hard-copy and regardless of the type of document. For example, reports, spreadsheets, photographs and videotapes are all considered documents that must be preserved. Furthermore, the duty to preserve this documentary evidence extends to all documents in existence as of the time you reasonably anticipated this litigation.

To ensure that all relevant documents are preserved, you should communicate directly with all employees who have possession or control of potentially relevant evidence, including but not limited to personnel who deal with email retention, deletion, and archiving. You should advise each of these employees to preserve any relevant documents in their custody. Furthermore, you should advise all such persons that any regularly scheduled and/or automatic deletion of email or other electronic documents must be discontinued with respect to any relevant data. In addition, any document destruction (such as shredding of documents) must cease with respect to any relevant documents. All relevant documents, both electronic and paper, must be preserved for the duration of this litigation.

The deadline to respond to this request is December 2, 2024. Failure to respond and/or provide the requested documents will likely result in the Trustee filing an adversary complaint to avoid, recover, and preserve the subject transfers for the benefit of the Estate. If you would like to discuss this matter, please feel free to contact me by telephone (502) 540-2576 or e-mail at bryan.cockroft@dinsmore.com.

Sincerely,

/s/ Bryan L. Cockroft

Bryan L. Cockroft

Exhibit 3
Page 43

# EXHIBIT 4

In re: The Litigation Practice Group PC
Disbursement Details by Payee
90 Days Pre-Petition (12/20/2022 - 03/20/2023)



| Bank Name | Account Name | Account Number | Statement Date | Transaction Date | Check Number | Debit/Charge | Memo |
|---|---|---|---|---|---|---|---|
| Chase | The Litigation Practice Group PC | | 12/31/2022 | 12/27/2022 | | 57.19 | Fedwire Debit Via: Bk Amer Nyc/026009593 NC: Retail Ia US LLC/Nir Algazy Las Vegas, NV 89148 US Ret Weekly Disbursement Imad i227B1Ogc0iC0i6219 Tm 480390035iJo |
| Chase | The Litigation Practice Group PC | | 12/31/2022 | 12/27/2022 | | 4,951.12 | Fedwire Debit Vie: Bk Amer Nyc1026009593 NC: Retell Is US LLC/Nir Algezy Les Vegas, NV 89148 US Ret: Weekly Disbursement mad: 1227B1Dgc01C022308 Tm. 6980800361Jo |
| Chase | The Litigation Practice Group PC | | 12/31/2022 | 12/30/2022 | | 8.19 | Fedwire Debit Via: Bk Amer Nyc/D26DD9593 NC: Retail Is US LLC/Nir Algazy Las Vegas, NV 89148 US Ret Weekly Disbursement Imad 123DB1OgcD8CD67782 Tm 5575500364J0 |
| Chase | The Litigation Practice Group PC | | 12/31/2022 | 12/30/2022 | | 1,245.86 | Fedwire Debit Via: Bk Amer Nyc/D26009593 NC: Retail Is US LLC/Nir Algazy Las Vegas, NV 89t40 US Ret: Weekly Disbursement Imad: 123DB1OgcD7CD44D99 Tm. 55756DD364Jo |
| Chase | The Litigation Practice Group PC | | 1/31/2023 | 1/6/2023 | | 1,484.11 | Fedwire Debit Via Bk Amer Nyc/026009593 NC Retail Is US LLC/Nir Algazy Las Vegas, NV 89148 US Ret: Weekly Disbursement 0i08B1OgcO8C029348 Tm: 471 7500006Jo |
| Chase | The Litigation Practice Group PC | | 1/31/2023 | 1/6/2023 | | 55.62 | Fedwire Debit Via: Bk Amer Nyc/026009593 NC: Retail Is US LLC/Nir Algazy Las Vegas, NV 89148 US Ret: Weekly Disbursement Imad: 0106B1Dgc06C029394 Tm: 47246000063o |
| Bank of America | Litigation Practice Group PC | | 1/31/2023 | 1/13/2023 | | 44.83 | WIRE TYPEBOOK OUT DATE.2301 13 TIME:1 658 ET TRNQO23O1 1300502834 RELATED REF:421502190 BNFRETAIL IS US LLC ID501011684985 PMT DET:O1.13 .23 WEEKLY DISBURSEMENT |
| Bank of America | Litigation Practice Group PC | | 1/31/2023 | 1/17/2023 | | 1,715.40 | WIRE TYPEBOOK OUT DATEQ3O1 17 TIME:O430 ET TRNQO23O1 1300507727 RELATED REF:421 502562 BNFRETAIL IS US LLC ID5O1 011684985 PMT DETO1 .13 .23 WEEKLY DISBURSEMENT |
| Bank of America | Litigation Practice Group PC | | 1/31/2023 | 1/23/2023 | | 44.61 | WIRE TYPEBOOK OUT DATE:230123 TIME:0416 ET TRN:2023012300168427 RELATED REF:422398456 BNF:RETAIL IS US LLC ID:501011684985 PMT DET:WEEK Y DISBURSEMENT |
| Chase | The Litigation Practice Group PC | | 1/31/2023 | 1/24/2023 | | 2,257.33 | Fedwire Debit Via: Bk Amer Nyc1026009593 NC: Retail Is US LLCINir Algazy Las Vegas, NV 89t48 US Ret: Weekly Disbursement mad. 0l24610gc08C032059 Tm: 5653200024Jo |
| Chase | The Litigation Practice Group PC | | 2/28/2023 | 2/7/2023 | | 50.05 | Fedwire Debit Via: Bk Amer Nyc/026009593 NC: Retail Is US LLC/Nir Algazy Las Vegas, NV 89148 US Ref: Weekly Disbursement Imad: 0207B10gc07C031926 Trn: 6649700038Jo |
| Chase | The Litigation Practice Group PC | | 2/28/2023 | 2/7/2023 | | 3,649.78 | Fedwire Debit Via: Bk Amer Nyc/026009593 NC: A/C: Retail Is US LLC/Nir Algazy Las Vegas, NV 89148 US Ref: Weekly Disbursement Imad: 0207B10gc07C031920 Trn: 6649600038Jo |
| Bank of America | Litigation Practice Group PC | | 2/28/2023 | 2/9/2023 | | 14.12 | WIRE TYPEBOOK OUT DATE230209 TIME:1 230 ET TRNQ023020900343993 RELATED REF:4251 02460 BNF:RETAIL IS US LLC 1D5O1 011684985 PMT DET:WEEKLY DISBURSEMENTS |
| | | | | | | 15,578.21 | |

DRAFT FORM - SUBJECT TO CHANGE

Payor Accounts: BAT Inc., Coast Processing LLC,
EZ Debt Relief, Maverick Management Group, Prime Logix, The
Litigation Practice Group, Vulcan Consulting Group LLC

Exhibit 4
Page 45

AP COVER SHEET

B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| **PLAINTIFFS**<br>Richard A. Marshack, Trustee of the LPG Liquidation Trust | **DEFENDANTS**<br>Retail is US, LLC and Nir Algazy |
|---|---|

| **ATTORNEYS** (Firm Name, Address, and Telephone No.)<br>Christopher B. Ghio          Dinsmore & Shohl LLP<br>Christopher Celentino        655 West Broadway, Suite 800<br>Yosina M. Lissebeck          San Diego, California 92101<br>M. Trent Spurlock (pro hac vice)   619.400.0500 | **ATTORNEYS** (If Known) |
|---|---|

| **PARTY** (Check One Box Only)<br>☐ Debtor            ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor          ☐ Other<br>☒ Trustee | **PARTY** (Check One Box Only)<br>☐ Debtor            ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor          ☒ Other<br>☐ Trustee |
|---|---|

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

(1) Avoidance, Recovery, and Preservation of 2-Year Actual Fraudulent Transfers; (2) Avoidance, Recovery, and Preservation of 2-Year Constructive Fraudulent Transfers; (3) Avoidance, Recovery, and Preservation of 4-Year Actual Fraudulent Transfers; (4) Avoidance, Recovery, and Preservation of 4-Year Constructive Fraudulent Transfers; (5) Avoidance, Recovery, and Preservation of Preferential Transfer; (6) Aiding and Abetting; and (8) Turnover

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☒ 11-Recovery of money/property - §542 turnover of property
☒ 12-Recovery of money/property - §547 preference
☒ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ $144,751.62 |

Other Relief Sought

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>The Litigation Practice Group P.C. | BANKRUPTCY CASE NO.<br>8:23-bk-10571-SC | |
| DISTRICT IN WHICH CASE IS PENDING<br>Central District of California | DIVISION OFFICE<br>Santa Ana | NAME OF JUDGE<br>Hon. Scott C. Clarkson |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br><br>/s/ Yosina M. Lissebeck | | |
| DATE<br><br>3/18/2025 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br><br>Yosina M. Lissebeck | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.