1 | Christopher Celentino (131688)
Christopher.Celentino@dinsmore.com
2 | Yosina M. Lissebeck (201654)
Yosina.Lissebeck@dinsmore.com
3 | Christopher B. Ghio (259094)
Christopher.Ghio@dinsmore.com
4 | **DINSMORE & SHOHL LLP**
655 West Broadway, Suite 800
5 | San Diego, California 92101
Tele: (619) 400-0500
6 | Fax: (619) 400-0501

7 | Brian W. Boyd (Mi. Bar P81004)
Brian.Boyd@dinsmore.com
8 | **DINSMORE & SHOHL LLP**
755 West Big Beaver Road, Suite 1900
9 | Troy, Michigan 48084
Tele: (248) 203-1622
10 | Fax: (248) 647-5210
(Admitted pro hac vice)

11

12 | Counsel to Richard A. Marshack, Plaintiff and
Trustee of the LPG Liquidation Trust

13

14 | **UNITED STATES BANKRUPTCY COURT**

15 | **CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION**

16 | In re:

17 | THE LITIGATION PRACTICE GROUP P.C.,

18 | Debtor.

19 | Richard A. Marshack, Trustee of the LPG Liquidated Trust,

20

21 | Plaintiff,

22 | v.

23 | Fidelity Pandemic Relief Services, Inc. a California corporation, Master Builders of
24 | America, Inc., a California corporation, and Jess Walker, an individual,

25 | Defendants.

26

27

28

Case No. 8:23-bk-10571-SC

Chapter 11

Adv. Proc. No. _____

**COMPLAINT FOR:**

**(1) AVOIDANCE, PRESERVATION, AND RECOVERY OF ACTUAL FRAUDULENT TRANSFERS [11 U.S.C. §§ 544, 550, 551; CAL. CIV. CODE §§ 3439.04(a)(1) AND 3439.07]**

**(2) AVOIDANCE, PRESERVATION, AND RECOVERY OF CONSTRUCTIVE FRAUDULENT TRANSFERS [11 U.S.C. §§ 544, 550, 551; CAL. CIV. CODE §§ 3439.04(a)(2), 3439.05, AND 3439.07]**

**(3) AVOIDANCE, PRESERVATION, AND RECOVERY OF ACTUAL FRAUDULENT TRANSFERS [11 U.S.C. §§ 548(a)(1)(A), 550, 551;**

**(4) AVOIDANCE OF INVESTMENT AGREEMENT [11 U.S.C. §548(a)(1)(B)]**

**(5) AVOIDANCE, PRESERVATION, AND RECOVERY OF CONSTRUCTIVE FRAUDULENT TRANSFERS [11 U.S.C. §§ 544, 548(a)(1)(B); 550, 551;**

**[STATUS CONFERENCE TO BE SET BY COURT]**

Judge:    Hon. Scott C. Clarkson

Richard A. Marshack, solely in his capacity as Trustee of the LPG Liquidation Trust, files this complaint against Fidelity Pandemic Relief Services, Inc., Master Builders of America, Inc., and Jess Walker ("Defendants") and alleges as follows:

STATEMENT OF JURISDICTION AND VENUE

**1.**    The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334 in that this action arises in and relates to the bankruptcy case pending in the United States Bankruptcy Court for the Central District of California, Santa Ana Division, entitled *In re The Litigation Practice Group, P.C.*, Bankruptcy Case Number 8:23-bk-10571-SC.

**2.**    Plaintiff has standing to bring this adversary proceeding pursuant to Provision V.E. of the Modified First Amended Joint Chapter 11 Plan of Liquidation, confirmed by the Court on September 9, 2024, as Dk. No. 1646. The Plan provides that the estate's litigation claims, including avoidance claims, were transferred to the LPG Liquidating Trust. Plaintiff brings these claims on behalf of the Trust.

**3.**    This adversary proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (E), (H), and (O), and this Court has Constitutional authority to enter a final judgment on these claims. To the extent any claim for relief contained herein is determined not to be a non-core proceeding or a *Stern*-claim, Plaintiff consents to the entry of final judgment and orders by the Bankruptcy Court.

///

2

**4.**     Venue properly lies in the Central District of California in that this adversary proceeding arises in or is related to a case under Title 11 of the United State Code as provided in 28 U.S.C. §§ 1408 and 1409.

**Parties**

**5.**     The Litigation Practice Group P.C. (previously defined as "Debtor") is a corporation organized under the laws of the State of California, that had its principal place of business in Tustin, California. During all relevant times prior to bankruptcy, Daniel S. March ("Mr. March") was the Chief Executive Officer of Debtor.

**6.**     Richard A. Marshack (previously defined as "Trustee" or "Plaintiff") was the duly-appointed, qualified, and acting Chapter 11 Trustee for the Debtor's bankruptcy estate ("Estate"). Pursuant to the confirmed Plan, the Trustee now serves as Trustee of the LPG Liquidation Trust, which now owns all of the litigation claims, including the Estate's avoidance actions.

**7.**     Plaintiff alleges that, at all relevant times, Defendant Fidelity Pandemic Relief Services, Inc. ("Fidelity") is a domestic corporation formed and existing under the laws of the State of California. Defendant may be served by first class mail postage prepaid upon its registered agent for service of process, Reid A. Winthrop, at 120 Newport Center Dr., Newport Beach, CA 92660.

**8.**     Plaintiff alleges that, at all relevant times, Defendant Master Builders of America, Inc. ("Master Builders"), is a domestic corporation formed and existing under the laws of the State of California. Defendant may be served by first class mail postage prepaid upon its registered agent for service of process, Reid A. Winthrop, at 120 Newport Center Dr., Newport Beach, CA 92660.

**9.**     On information and belief, and pursuant to filings submitted to the State of California, Defendant Jess Walker ("Walker") was a corporate officer of Defendants Fidelity and Master Builders. On information and belief, Defendant Walker is, and was at all times, the Secretary and Vice President of Fidelity and Chief Financial Officer of Master Builders.

**General Allegations**

**A.**     **The Bankruptcy Case**

**10.**     On March 20, 2023 ("Petition Date"), the Debtor filed a voluntary petition under Chapter 11 of Title 11 of the United States Code, initiating bankruptcy Case No. 8:23-bk-10571-

3

SC ("Bankruptcy Case") in the United States Bankruptcy Court for the Central District of California, Santa Ana Division.

11. On May 8, 2023, Trustee accepted his appointment as the Chapter 11 Trustee in the Bankruptcy Case. To the extent that Trustee was not appointed until after any of the events alleged in this Complaint, the allegations are based on information and belief. *See Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017); *Miller v. City of Los Angeles*, 2014 U.S. Dist. LEXIS 198871, at *5 (C.D. Cal. Aug. 7, 2014); *Mireskandari v. Daily Mail and General Trust PLC*, 2013 U.S. Dist. LEXIS 194437, at *4 (C.D. Cal. July 31, 2013).

12. Pursuant to the *Order Confirming Modified First Amended Joint Chapter 11 Plan of Liquidation* entered September 9, 2024, and the *Notice of Occurrence of Effective Date of Modified First Amended Joint Chapter 11 Plan of Liquidation* filed September 24, 2024, Richard A. Marshack became the Liquidating Trustee of the LPG Liquidation Trust, effective September 24, 2024. [Bankr. Docket Nos. 1646 & 1762].

13. All claims have been transferred to the Liquidating Trust pursuant to the confirmed plan and Plaintiff brings this action solely in his capacity as the Liquidating Trustee of the LPG Liquidation Trust, for the benefit of Debtor's Estate and its creditors.

**B.     Protective Order**

14. On or about May 2, 2024, Plaintiff filed that certain Notice and Motion for Entry of Protective Order (the "Protective Order Motion"). On June 3, 2024, the Court entered its Order Granting Motion for Entry of Protective Order and the Protective Order [Docket No. 1270] (the "Protective Order"). A true and accurate copy of the Protective Order is attached as **Exhibit 3**, and incorporated here.

15. By its own terms, the Protective Order applies to this adversary proceeding and governs all discovery conducted herein.

**C.     LPG's Ownership and Management**

16. Pre-petition, Debtor was a law firm that provided consumer debt resolution services to more than 50,000 clients nationwide.

///

4

**17.**    Tony Diab ("Mr. Diab") operated, dominated and controlled Debtor at all relevant times.

**18.**    The consumers would pay LPG over a period of time via monthly debits from their bank accounts.

**19.**    The monthly payments were meant to cover all legal services LPG provided to the consumers including validation of the debts, review of documents to determine enforceability, and court appearances to halt lawsuits to obtain judgments.

**20.**    In certain instances, LPG would file a lawsuit in an effort to eliminate a disputed debt or to prosecute affirmative claims held by the consumers.

**21.**    LPG mismanaged the consumers' monthly payments.

**22.**    Diab and others devised a plan to fraudulently transfer funds, client files, client funds and assets in the form of ACH Receivables (the "ACH Receivables" or "Accounts Receivable") out of LPG to third parties prior to the filing of bankruptcy.

**23.**    To obtain consumer clients, LPG contracted with marketing companies, who engaged in illegal capping and would advertise or call to solicit consumers to become clients of LPG in exchange for a percentage of the ACH Receivables collected by LPG from the consumers. The marketing affiliate went so far as to assist with the execution of an engagement letter between the consumer and LPG.

**24.**    In exchange, LPG agreed to pay the marketing affiliates a percentage the monthly payments collected by LPG from the consumers.

**25.**    Because LPG received payments from consumers over time, it often sought financing by borrowing against its future cash flows. This borrowing was not only used to finance operations at LPG, but also to pay the fees owed to the marketing companies for providing the client referrals.

**26.**    Many of the documents executed in connection with such financing described the transactions as accounts receivable purchase agreements.

**27.**    Diab used entities he controlled including, without limitation, Vulcan Consulting, LLC, B.A.T. Inc. dba Coast Processing, PrimeLogix, LLC, Maverick Management LLC and others to divert LPG consumer funds and ACH Receivables. Diab would use numerous ACH processing

companies in order to easily transfer millions of dollars from Debtor to these entities he controlled, without oversight or detection, and to avoid payment disputes and complications. The money that flowed from Debtor through these bank account to Defendants consisted of Client Funds that Debtor funneled to these entities by means of the ACH processing companies. Debtor also made deposits into these entities bank account such that they received Client Funds directly from Debtor in addition to direct Accounts Receivable.

**A.    Ponzi Scheme Presumption**

**28.**    The Ponzi Scheme Presumption exists in bankruptcy proceedings.

**29.**    This Court has recognized that Debtor operated a Ponzi scheme by using funds provided by former investors to attract new investors hoping for very high returns. *See* Dk. No. 1545, fn. 5.

**30.**    The Ponzi Scheme Presumption establishes a debtor's "intent to defraud future undertakers [investors] from the mere fact that a debtor was running a Ponzi scheme." *Merrill v. Abbott* (*In re Independent Clearing House Co.*), 77 B.R. 843, 860 (D. Utah 1987). "Knowledge to a substantial certainty constitutes intent in the eyes of the law, cf. Restatement (Second) of Torts § 8A (1963 & 1964), and a debtor's knowledge that future investors will not be paid is sufficient to establish his actual intent to defraud them." *Id.* A trustee in bankruptcy is not required to show that an operator of a Ponzi scheme was subjectively aware his Ponzi scheme was destined to fail. *Kirkland v. Rund (In re EPD Inv. Co., LLC) In re EPD Inv. Co., LLC*, 114 F.4th 1148, 1153 (9th Cir. 2024).

**31.**    "[I]f all the debtor receives in return for a transfer is the use of the defendant's money to run a Ponzi scheme, there is nothing in the bankruptcy estate for creditors to share." *In re Independent Clearing House Co.* 77 B.R. at 859. In such a situation, the use of the defendant's money cannot objectively be called "reasonably equivalent value." *Id.* In a Ponzi scheme context, a debtor does not receive reasonably equivalent value for a transfer to a defendant to the extent that the transfer exceeds the amount that defendant initially advanced to the debtor. *Id.* Furthermore, to the extent a trustee seeks to recover transfers in excess of a defendant's undertaking, section 548(c) provides no defense. *Id.* at 861. Therefore, "[t]he trustee can avoid the transfers if they were

preferential or fraudulent. Transfers to investors in a Ponzi scheme are preferential and fraudulent. Therefore, they constitute 'property of the estate,' and the trustee can recover them." *Id*. at 853 n.17 (citations omitted).

32.    Based on the Ponzi Scheme presumption, the Court can infer that the Debtor had the intent to defraud investors within the meaning of 11 U.S.C. § 548(a)(1). Since the transfers by Debtor to third parties, including Defendant, were made with the intent to further the Ponzi scheme, the Debtor did not receive an objectively reasonable equivalent value for such transfers in excess of Defendant's undertaking, and the Trustee can avoid any such transfers because they were preferential and/or fraudulent.

33.    Debtor was operating a Ponzi scheme that utilized affiliates as well as several other entities and individuals, such as Defendant, as investors to continue its unlawful business practices by using funds provided by current investors to attract new investors hoping for very high returns. Therefore, the Debtor was running a Ponzi scheme and the Ponzi Scheme Presumption can be utilized to infer that the Debtor had the intent to defraud investors within the meaning of 11 U.S.C. section 548(a)(1).  This is evidenced by the Court in this Bankruptcy Case declaring that Debtor was operating a Ponzi scheme when it stated the following:

> It is important to note that this Court has never received any significant and trustworthy evidence that Debtor accomplished meaningful results for its clients, but only anecdotal examples of viable success for its clients. By reviewing the Estate's claims register, there is evidence of consumer claims for the fraud and demanded but undelivered refunds of approximately $500 million.  There is ample evidence that the pre-petition Debtor never placed the collected funds into an attorney-client trust account, and that Debtor or its principals simply looted the payments received through the client automatic withdrawals, stiffing both the clients and outside attorneys who may have been working on client cases with the hopes of being paid.  There is also evidence before the Court that Debtor was running a Ponzi scheme and paying some outside (or "network") attorneys with funds obtained from new clients.  In this case, it appears that some of the "lenders" may have been serving as "investors," hoping for very high returns before "the music stopped."  The Ninth Circuit has recently explained, "[b]y definition, a Ponzi scheme is destined to fail because the pool of available investors is not limitless. When the Ponzi scheme operator's pool of investors inevitably runs dry, the scheme collapses and the swindler and their entities often end up in bankruptcy or equitable receivership.  *See generally* David R. Hague, Expanding the

Ponzi Scheme Presumption, 64 DePaul L. Rev. 867 (2015). In bankruptcy, the court-appointed trustee is tasked with taking immediate control of the entity, ceasing ongoing fraudulent activity, locating and collecting assets for the bankruptcy or receivership estate, and achieving a final, equitable distribution of the remaining assets. *See* 11 U.S.C. § 704; *Kirkland v. Rund (In re EPD Inv. Co., LLC)*, 2024 U.S. App. LEXIS 21363, at *15 (9th Cir. Aug. 23, 2024). Finally, there is evidence that Debtor was encumbering (or as some creditors assert, "double or triple selling") their accounts or receivables to multiple lenders. With respect to Greyson's requested Administrative Claim [Dk. 676], and as more fully described in the concurrently entered order denying the claim, there has been no evidence presented that any work allegedly performed by Greyson assisted any clients or added any value to the Estate.

*See, Case 8:23-bk-10571-SC*, Doc 1545 n. 5.

**34.**    Here, on information Defendants' engaged in an initial undertaking or "investment" in Debtor in an amount to be determined at a later date and time. On information and belief, according to the contract terms of similar defendants, Debtor agreed to repay Defendant's initial investment in full by a date certain at a sum certain interest rate.

**35.**    On information and belief, Defendants had multiple investments with debtor and received approximately 30% per month and 10% per month interest.

**36.**    On information and belief, Debtor transferred at least $2,000,000 to Defendants pursuant to the Investment Agreement(s).

**37.**    On information and belief, Debtor paid to Defendants amounts in excess of Defendants' initial "investment" and cannot constitute reasonably equivalent value, and may be avoided by the trustee under 11 U.S.C. §548.

**B.    Prepetition Creditors and Lawsuits**

**38.**    Debtor's Schedule E/F, filed on April 4, 2023, as Dk. No. 33, lists: (a) 11 unsecured creditors with priority unsecured claims totaling $374,060.04; and (b) 58 nonpriority unsecured creditors with scheduled claims totaling $141,439,158.05.

**39.**    The claims register in this Bankruptcy Case includes 2,554 proofs of claim, totaling in excess of $424 million of claims asserted against the Estate.

**40.**    At least 14 UCC-1 statements were of record securing alleged debts of the Debtor as of the Petition Date. These statements either reflected secured liens against the Debtor's assets then

owned or thereafter acquired or provided evidence of the assignment or sale of substantial portions of the Debtor's future income. They secured the repayment of the following claimed amounts that are currently known to Trustee and are allegedly owed by the Debtor: (a) $2,374,004.82 owed to Fundura Capital Group as evidenced by Proof of Claim No. 335 purportedly secured by a UCC statement filed on or about May 19, 2021; (b) approximately $15 million dollars owed to MNS Funding, LLC as evidenced by Proof of Claim No. 1060 purportedly secured by a UCC statement filed on or about May 28, 2021; (c) approximately $5,000,000 owed to Azzure Capital, LLC as evidenced by Proof of Claim No. 127 purportedly secured by a UCC statement filed on or about May 28, 2021; and (d) approximately $1.5 million dollars owed to Diverse Capital, LLC purportedly secured by UCC statements filed on or about September 15, 2021, and December 1, 2021.

**41.**    Debtor's Statement of Financial Affairs, filed on April 4, 2023, as Dk. No. 34, reflects 15 pending lawsuits against Debtor as of the Petition Date. The lawsuits date back to October 18, 2021 (*Fundura v. The Litigation Practice Group P.C. et al.*, Supreme Court of New York Index No. 613192-2021) and are as recent as March 10, 2023 (*Diverse Capital LLC v. The Litigation Practice Group P.C. et al.*, Supreme Court of New York Index No. 135614-2023).

## C.    Debtor's Insolvency

**42.**    Debtor was insolvent when the Transfers occurred as evidenced by: (a) the 14 UCC-1 statements reflecting secured liens against the Debtor's owned and after-acquired assets and the assignment or sale of substantial portions of the Debtor's future income; (b) the priority and non-priority unsecured debt of nearly $142 million listed in Debtor's schedules; and, (c) the $424 million of creditor claims filed in this Bankruptcy Case.

**43.**    Moreover, insolvency is presumed as a matter of law where, as in this Bankruptcy Case, the debtor operated a Ponzi scheme. *See, e.g., Global Money Mgmt., L.P. v. McDonnold*, No. 06CV34, 2008 U.S. Dist. LEXIS 128733, at *15 (S.D. Cal. Feb. 27, 2008) (concluding that "if a Ponzi scheme is proven, then the debtor is proven insolvent from the time of its inception"). (internal citations omitted).

///

///

**D.    The Subject Transfers**

**44.**    During the four-year period prior to the Petition Date, Debtor transferred funds (collectively, "Fidelity Transfers") to Defendant Fidelity between August 20, 2019 and March 20, 2023 in at least 65 transactions between October 1, 2021 and November 10, 2022. The full extent of the Fidelity Transfers will be proven at trial, but are in an amount not less than $1,737,577.22 as set forth in the chart attached hereto as **Exhibit 1**.

**45.**    During the four-year period prior to the Petition Date, Debtor transferred funds (collectively, "Master Builders Transfers") to Defendant Master Builders between August 20, 2019 and March 20, 2023 in at least 3 transactions between January 11, 2022 and April 5, 2022. The full extent of the Master Builders Transfers will be proven at trial, but are in an amount not less than $62,900.00 as set forth in the chart attached hereto as **Exhibit 2**.

**46.**    During the four-year period prior to the Petition Date, Debtor transferred funds (collectively, "Walker Transfers") to Defendant Walker between August 20, 2019 and March 20, 2023 in at least one transaction on August 31, 2021. The full extend of the Walker Transfers will be proven at trial, but are in an amount not less than $37,500.00 as set forth in the chart attached hereto as **Exhibit 3**.

**47.**    Each of the Fidelity Transfers, Master Builders Transfers, and Walker Transfers is a "transfer" of Debtor's interest in property as that term is defined in 11 U.S.C. § 101(54).

**48.**    Plaintiff alleges that Debtor was insolvent when the Fidelity Transfers, Master Builders Transfers, and Walker Transfers occurred or became insolvent as a result of such transfers.

**49.**    As noted, Plaintiff alleges that Debtor did not receive reasonably equivalent value in exchange for or in connection with the Transfers.

**50.**    Pursuant to 11 U.S.C. § 550(a), Plaintiff is entitled to recover the Fidelity Transfers, Master Builders Transfers, and Walker Transfers or their value from Defendant as an initial or even subsequent transferee as the case may be.

**51.**    Under 11 U.S.C. § 551, avoided transfers are automatically preserved for the benefit of the Estate.

///

### E.    Due Diligence

**52.**    Prior to filing this Complaint, Plaintiff's counsel conducted an electronic search of Debtor's paper files and accounting records, including Debtor's Quickbooks files, which records and files are now stored electronically. Plaintiff's search of the subject records and files revealed no apparent defenses to the alleged claims.

**First Claim for Relief**

**Avoidance, Preservation, and Recovery of Actual Fraudulent Transfer**

**11 U.S.C. §§ 544, 550, 551; Cal. Civ. Code §§ 3439.04(a)(1) and 3439.07**

**(Against All Defendants)**

**53.**    Plaintiff incorporates by reference Paragraphs 1 through 51 and realleges these paragraphs as though set forth in full.

**54.**    Under 11 U.S.C. § 544(b)(1), Plaintiff may avoid transfers of an interest of Debtor which are voidable under applicable law by an unsecured creditor of Debtor, including under California Civil Code § 3439.04(a)(1).

**55.**    The Fidelity Transfers, Master Builders Transfers, and Walker Transfers were of property of Debtor.

**56.**    The Fidelity Transfers, Master Builders Transfers, and Walker Transfers were made within four years of the Petition Date.

**57.**    The Fidelity Transfers, Master Builders Transfers, and Walker Transfers were made with the actual intent to hinder, delay, or defraud Debtor's creditors.

**58.**    At the time each Fidelity Transfer, Master Builders Transfer, and Walker Transfer was made, Debtor was indebted to one or more creditors that held a claim against Debtor on the date of each Fidelity Transfer, Master Builders Transfer, and Walker Transfer and on the Petition Date.

**59.**    Debtor had been sued or threatened with suit before some or all of the Fidelity Transfers, Master Builders Transfers, and Walker Transfers occurred.

**60.**    Debtor incurred substantial debt shortly before or shortly after some or all of the Fidelity Transfers, Master Builders Transfers, and Walker Transfers occurred.

///

**61.** The LPG Insiders caused Debtor to abscond and delay the discovery of substantial assets of the Debtor pursuant to the diversion of Debtor's funds, client files, and assets to affiliates.

**62.** Debtor actively concealed its beneficial interest in the Fraudulent Transfers and made the payments to Defendant with actual intent to hinder, delay, or defraud other creditors of the Debtor.

**63.** On information and belief, Debtor received less than reasonably equivalent value in exchange for the Fidelity Transfers, Master Builders Transfers, and Walker Transfers occurred to the extent the Transfers from Debtor to Defendant exceeded Defendant's initial investment. Defendants, on information and belief, received more than their initial investment, and that excess payment is property belonging to Debtor.

**64.** The Fidelity Transfers, Master Builders Transfers, and Walker Transfers occurred were made at a time when Debtor was insolvent and/or rendered insolvent by virtue of said transfers.

**65.** Plaintiff alleges that Defendant did not receive the Fidelity Transfers, Master Builders Transfers, and Walker Transfers occurred in good faith, for value, and without knowledge of their avoidability.

**66.** Based on the foregoing, Plaintiff may avoid the Fidelity Transfers, Master Builders Transfers, and Walker Transfers occurred to the extent the Fidelity Transfers, Master Builders Transfers, and Walker Transfers occurred exceeded the value of Defendants' initial investment pursuant to 11 U.S.C. § 544 and California Civil Code § 3439.04(a)(1).

**67.** Based on the foregoing, Plaintiff may recover and preserve the Fidelity Transfers, Master Builders Transfers, and Walker Transfers occurred from Defendant as the initial transferee or, alternatively, as the subsequent transferee for the benefit of the Estate pursuant to 11 U.S.C. §§ 550 and 551, and Cal. Civ. Code § 3439.07.

///

///

///

///

///

**Second Claim for Relief**

**Avoidance, Preservation, and Recovery of Constructive Fraudulent Transfer**

**11 U.S.C. §§ 544, 550, 551; Cal. Civ. Code §§ 3439.04(a)(2), 3439.05 and 3439.07**

**(Against All Defendants)**

**68.**     Plaintiff hereby incorporates by reference Paragraphs 1 through 66 and realleges these paragraphs as though set forth in full herein.

**69.**     Under 11 U.S.C. § 544(b)(1), Plaintiff may avoid transfers of an interest of Debtor which are voidable under applicable law by an unsecured creditor of Debtor, including under California Civil Code §§ 3439.04(a)(2) and 3439.05.

**70.**     On information and belief, Debtor did not receive reasonably equivalent value in exchange for the Fidelity Transfers, Master Builders Transfers, and Walker Transfers occurred to the extent the Fidelity Transfers, Master Builders Transfers, and Walker Transfers occurred from Debtor to Defendant exceeded Defendant's initial investment. Defendant, on information and belief, received more than their initial investment, and that excess amount is property belonging to Debtor.

**71.**     The Fidelity Transfers, Master Builders Transfers, and Walker Transfers occurred were made at a time when Debtor was insolvent and/or rendered insolvent by virtue of said transfers.

**72.**     At the time the Fidelity Transfers, Master Builders Transfers, and Walker Transfers occurred were made, Debtor was engaged or was about to engage in a business or a transaction for which the remaining assets of Debtor were unreasonably small in relation to the business or transaction.

**73.**     At the time the Fidelity Transfers, Master Builders Transfers, and Walker Transfers occurred were made, Debtor intended to incur, or believed or reasonably should have believed that Debtor would incur, debts beyond Debtor's ability to pay as they became due.

**74.**     At the time the Fidelity Transfers, Master Builders Transfers, and Walker Transfers occurred were made, Debtor was indebted to one or more creditors that held a claim against Debtor on the date of each Fidelity Transfer, Master Builders Transfer, and Walker Transfer occurred and on the Petition Date.

///

13

**75.**    Plaintiff alleges that Defendant did not receive the Fidelity Transfers, Master Builders Transfers, and Walker Transfers occurred in good faith, for value, and without knowledge of their avoidability.

**76.**    Based on the foregoing, Plaintiff may avoid the Fidelity Transfers, Master Builders Transfers, and Walker Transfers occurred pursuant to 11 U.S.C. § 544 and California Civil Code §§ 3439.04(a)(2) and 3439.05.

**77.**    Based on the foregoing, Plaintiff may recover and preserve the Fidelity Transfers, Master Builders Transfers, and Walker Transfers occurred to Defendant to the extent the Transfers exceed Defendants' initial investment, as the initial transferee or, alternatively, as the subsequent transferee for the benefit of the Estate pursuant to 11 U.S.C. §§ 550 and 551, and Cal. Civ. Code § 3439.07.

**Third Claim for Relief**

**Avoidance, Preservation, and Recovery of Actual Fraudulent Transfer**

**11 U.S.C. §§ 548(a)(1)(A), 550 & 551**

**(Against All Defendants)**

**78.**    Plaintiff hereby incorporates by reference Paragraphs 1 through 76 and realleges these paragraphs as though set forth in full herein.

**79.**    One or more of the Fidelity Transfers, Master Builders Transfers, and Walker Transfers occurred were made within two years of the Petition Date.

**80.**    The Fidelity Transfers, Master Builders Transfers, and Walker Transfers were made to Defendant with the actual intent to hinder, delay, or defraud Debtor's creditors.

**81.**    At the time each Fidelity Transfer, Master Builders Transfer, and Walker Transfer was made, Debtor was indebted to one or more creditors that held a claim against Debtor on the date of each Transfer and on the Petition Date.

**82.**    Debtor had been sued or threatened with suit before some or all of the Fidelity Transfers, Master Builders Transfers, and Walker Transfers occurred.

**83.**    Debtor incurred substantial debt shortly before or shortly after some or all of the Fidelity Transfers, Master Builders Transfers, and Walker Transfers occurred.

**84.**    The LPG Insiders caused Debtor to abscond and delay the discovery of substantial assets of the Debtor pursuant to the diversion of Debtor's funds, client files, and assets to affiliates.

**85.**    Debtor actively concealed assets pursuant to its diversion of funds, client files, and assets to affiliates.

**86.**    Debtor, on information and belief, received less than reasonably equivalent value in exchange for the Fraudulent Fidelity Transfer, Master Builders Transfer, and Walker Transfer to the extent the Fidelity Transfer, Master Builders Transfer, and Walker Transfer from Debtor to Defendants exceeded Defendants' initial investment. Defendants, on information and belief, received more than his initial investment, and that excess amount is property belonging to Debtor.

**87.**    The Fidelity Transfers, Master Builders Transfers, and Walker Transfers occurred were made at a time when Debtor was insolvent and/or rendered insolvent by virtue of said transfers.

**88.**    Plaintiff alleges that Fidelity Transfers, Master Builders Transfers, and Walker Transfers occurred did not receive the Fidelity Transfers, Master Builders Transfers, and Walker Transfers occurred in good faith, for value, and without knowledge of their avoidability.

**89.**    Based on the foregoing, Plaintiff may avoid the Fidelity Transfers, Master Builders Transfers, and Walker Transfers occurred under 11 U.S.C. § 548(a)(1)(A) to the extent the Transfers from Debtor to Defendant exceeded Defendant's initial investment.

**90.**    Based on the foregoing, Plaintiff may recover and preserve the avoided Fidelity Transfer, Master Builders Transfer, and Walker Transfer to Defendant to the extent the Fidelity Transfer, Master Builders Transfer, and Walker Transfer exceed Defendants' initial investment, as the initial transferee or, alternatively, as the subsequent transferee for the benefit of the Estate pursuant to 11 U.S.C. §§ 550 and 551.

**Fourth Claim for Relief**

**Avoidance of Debtor's Investment Agreement with Defendants**

**11 U.S.C. §§ 548(a)(1)(B)**

**(Against All Defendants)**

**91.**    Plaintiff hereby incorporates by reference Paragraphs 1 through 89 and realleges these paragraphs as though set forth in full herein.

**92.**    11 U.S.C. § 548(a)(1)(B), in relevant part, permits a debtor or trustee to avoid "any obligation … incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition" if the debtor failed to receive reasonably equivalent value in exchange for such transfer or obligation and if the debtor:

(I)    was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

(II)    was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;

(III)    intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured . . .

**93.**    Here, on information and belief, Debtor executed the Investment Agreement within two years before the Petition Date.

**94.**    On or after the date that the Investment Agreement was executed, the Debtor was or became indebted to the Prepetition Creditors.

**95.**    On information and belief, the Investment Agreement was executed at a time when Debtor was insolvent and/or rendered insolvent by virtue of said transfers.

**96.**    On information and belief, the Investment Agreement was executed at a time when Debtor's business was undercapitalized and Debtor was engaged in business for which its capital was unreasonably small.

**97.**    On information and belief, the Investment Agreement was executed at a time when Debtor was about to incur debts that were beyond its ability to pay.

**98.**    On information and belief, the Investment Agreement was executed at a time when Debtor was indebted to one or more creditors that held a claim against Debtor on the date of each Transfer and on the Petition Date.

**99.**    On information and belief, Debtor failed to receive reasonably equivalent value when it executed the Investment Agreement because the Defendants received payments from Debtor in an amount in excess of their initial investment.

///

**100.** Based on the foregoing, Plaintiff may avoid the Investment Agreement under 11 U.S.C. § 548(a)(1)(B).

**Fifth Claim for Relief**

**Avoidance, Recovery, and Preservation of Fraudulent Transfers**

**11 U.S.C. §§ 548(a)(1)(B), 550, and 551**

**(Against All Defendants)**

**101.** Plaintiff hereby incorporates by reference Paragraphs 1 through 99 and realleges these paragraphs as though set forth in full herein.

**102.** The Fidelity Transfers, Master Builders Transfers, and Walker Transfers occurred were made within two years before the Petition Date.

**103.** Debtor did not receive reasonably value in exchange for the Fidelity Transfers, Master Builders Transfers, and Walker Transfers occurred to the extent the Fidelity Transfers, Master Builders Transfers, and Walker Transfers occurred from Debtor to Defendant exceeded Defendants' initial investment. Defendant received more than his initial investment, and that excess amount is property belonging to Debtor.

**104.** The Fidelity Transfers, Master Builders Transfers, and Walker Transfers occurred were made at a time when Debtor was insolvent and/or rendered insolvent by virtue of said transfers.

**105.** When the Fidelity Transfers, Master Builders Transfers, and Walker Transfers occurred, Debtor's business was undercapitalized and Debtor was engaged in business for which its capital was unreasonably small.

**106.** When the Fidelity Transfers, Master Builders Transfers, and Walker Transfers occurred, Debtor had incurred or was about to incur debts that were beyond its ability to pay.

**107.** At the time each Fidelity Transfer, Master Builders Transfer, and Walker Transfer was made, Debtor was indebted to one or more creditors that held a claim against Debtor on the date of each Transfer and on the Petition Date.

**108.** Plaintiff alleges that Defendants did not receive the Fidelity Transfer, Master Builders Transfer, and Walker Transfer in good faith, for value, and without knowledge of their avoidability.

**109.** Defendants knew that the Debtor was a law firm who was required by law to escrow client payments until earned. However, Defendants demanded and received payment from client payments that had not been earned because they were paid by the Debtor or others controlled by the Debtor or were paid directly from a payment processor for the Debtor such that the funds were never placed in trust.

**110.** Defendants had to know or should have known that he was being paid with client funds that had not been placed into trust and been disbursed before they were earned.

**111.** Based on the foregoing, Plaintiff may recover and preserve the avoided Fidelity Transfers, Master Builders Transfers, and Walker Transfers occurred from Defendant as the initial transferee or, alternatively, as the subsequent transferee for the benefit of the Estate under 11 U.S.C. §§ 550 and 551 from Defendant.

**Prayer**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

**On the First Claim for Relief**

**1.** That the Fidelity Transfer, Master Builders Transfer, and Walker Transfer be avoided to the extent Fidelity Transfers, Master Builders Transfers, and Walker Transfers occurred exceeded the value of Defendant's initial investment under 11 U.S.C. § 544 and Cal. Civ. Code §§ 3439.04(a)(1) and 3439.07;

**2.** That Plaintiff recover the avoided Fidelity Transfers, Master Builders Transfers, and Walker Transfers occurred or a money judgment in an amount equal to the value of the avoided Transfers to the extent Transfers exceeded the value of Defendant's initial investment pursuant to 11 U.S.C. § 550;

**On the Second Claim for Relief**

**3.** That the Fidelity Transfers, Master Builders Transfers, and Walker Transfers be avoided to the extent Fidelity Transfers, Master Builders Transfers, and Walker Transfers occurred exceeded the value of Defendant's initial investment under 11 U.S.C. § 544 and Cal. Civ. Code §§ 3439.04(a)(2), 3439.05 and 3439.07;

///

**4.** That Plaintiff recover the avoided Fidelity Transfers, Master Builders Transfers, and Walker Transfers occurred or a money judgment in an amount equal to the value of the avoided Fidelity Transfers, Master Builders Transfers, and Walker Transfers to the extent the Fidelity Transfers, Master Builders Transfers, and Walker Transfers exceeded the value of Defendant's initial investment pursuant to 11 U.S.C. § 550;

**On the Third Claim for Relief**

**5.** That the Fidelity Transfer, Master Builders Transfer, and Walker Transfer be avoided to the extent Fidelity Transfers, Master Builders Transfers, and Walker Transfers occurred exceeded the value of Defendant's initial investment under 11 U.S.C. § 548(a)(1)(A);

**6.** That Plaintiff recover the avoided Fidelity Transfers, Master Builders Transfers, and Walker Transfers occurred or a money judgment in an amount equal to the value of the avoided Fidelity Transfers, Master Builders Transfers, and Walker Transfers to the extent Transfers exceeded the value of Defendant's initial investment pursuant to 11 U.S.C. § 550;

**On the Fourth Claim for Relief**

**7.** That the Investment Agreement(s) be avoided under 11 U.S.C. § 548(a)(1)(B);

**On the Fifth Claim for Relief**

**8.** That the Fidelity Transfers, Master Builders Transfers, and Walker Transfers occurred be avoided to the extent Fidelity Transfer, Master Builders Transfer, and Walker Transfer exceeded the value of Defendant's initial investment under 11 U.S.C. § 548(a)(1)(B);

**9.** That Plaintiff recover the avoided Fidelity Transfers, Master Builders Transfers, and Walker Transfers occurred or a money judgment in an amount equal to the value of the avoided Fidelity Transfer, Master Builders Transfer, and Walker Transfer to the extent Transfers exceeded the value of Defendants' initial investment pursuant to 11 U.S.C. § 550;

**On All Claims for Relief**

**10.** That Plaintiff only recover a single satisfaction of all avoided Fidelity Transfers, Master Builders Transfers, and Walker Transfers occurred under 11 U.S.C. § 550(d);

**11.** That all avoided Fidelity Transfers, Master Builders Transfers, and Walker Transfers occurred be preserved pursuant to 11 U.S.C. § 551;

12.      For prejudgment interest under state law on all fraudulent transfer claims from the date each transfer was made, as set forth in *In re Slatkin*, 525 F.3d 805, 820 (9th Cir.2008), *In re Agricultural Research and Technology Group, Inc.*, 916 F.2d 528, 541-42 (9th Cir.1990), and *Field v. Kepoikai* (*In re Maui Indus. Loan & Fin. Co.*), 483 B.R. 346, 353 (Bankr. D. Haw. 2012);

13.      For pre-judgment interest on all other claims at the maximum rate allowed by law;

14.      For costs incurred by Plaintiff in prosecuting this action; and

15.      For such other and further relief as the Court may deem just and proper.

Dated: March 18, 2025

Respectfully submitted,

DINSMORE & SHOHL LLP

By: */s/ Brian W. Boyd*
    Yosina M. Lissebeck
    Brian W. Boyd (pro hac vice)
    *Counsel to Richard A. Marshack,*
    *Plaintiff and Trustee of the LPG*
    *Liquidation Trust*

# EXHIBIT 1

Exhibit 1
Page 21

In re: The Litigation Practice Group PC
Disbursement Details by Payee
4 Years Pre-Petition (03/20/2019 - 03/20/2023)



| Bank Name | Account Name | Account Number | Cardholder Name | Cardholder Number | Statement Date | Transaction Date | Check Number | Debit/Charge | Memo |
|---|---|---|---|---|---|---|---|---|---|
| Optimum Bank | Coast Processing LLC dba LPG | | | | 10/29/2021 | 10/1/2021 | | 18,700.00 | WIRE TO Fidelity Pandemic Relief |
| Optimum Bank | Coast Processing LLC dba LPG | | | | 10/29/2021 | 10/28/2021 | | 292.29 | WIRE TO Fidelity Pandemic Relief |
| Optimum Bank | COAST PROCESSING LLC DBA LITIGATION PRACTICE GROUP | | | | 11/30/2021 | 11/15/2021 | | 1,150,000.00 | WIRE TO Fidelity Pandemic Relief |
| Optimum Bank | Coast Processing LLC dba LPG | | | | 11/30/2021 | 11/18/2021 | | 583.22 | WIRE TO Fidelity Pandemic Relief |
| Optimum Bank | Coast Processing LLC dba LPG | | | | 11/30/2021 | 11/26/2021 | | 1,336.75 | WIRE TO Fidelity Pandemic Relief |
| UnionBank | The Litigation Practice Group PC | | | | 11/30/2021 | 11/30/2021 | | 37,400.00 | WIRE TRANS TRN Sent To: JPMORGAN CHASE BANK Beneficiary: 1/Fidelity Pandemic Relief Services |
| Optimum Bank | Coast Processing LLC dba LPG | | | | 12/31/2021 | 12/2/2021 | | 843.64 | WIRE TO Fidelity Pandemic Relief |
| UnionBank | The Litigation Practice Group PC | | | | 12/31/2021 | 12/9/2021 | | 837.43 | WIRE TRANS TRN Sent To: JPMORGAN CHASE BANK Beneficiary: 1/Fidelity Pandemic Relief Services |
| UnionBank | The Litigation Practice Group PC | | | | 12/31/2021 | 12/17/2021 | | 2,330.77 | WIRE TRANS TRN Sent To: JPMORGAN CHASE BANK Beneficiary: 1/Fidelity Pandemic Relief Services |
| UnionBank | The Litigation Practice Group PC | | | | 12/31/2021 | 12/23/2021 | | 655.16 | WIRE TRANS TRN Sent To: JPMORGAN CHASE BANK Beneficiary: 1/Fidelity Pandemic Relief Services |
| UnionBank | The Litigation Practice Group PC | | | | 12/31/2021 | 12/31/2021 | | 1,788.15 | WIRE TRANS TRN Sent To: JPMORGAN CHASE BANK Beneficiary: 1/Fidelity Pandemic Relief Services |
| UnionBank | The Litigation Practice Group PC | | | | 1/31/2022 | 1/10/2022 | | 679.75 | WIRE TRANS TRN Sent To: JPMORGAN CHASE BANK Beneficiary: 1/Fidelity Pandemic Relief Services |
| UnionBank | The Litigation Practice Group PC | | | | 1/31/2022 | 1/13/2022 | | 2,465.63 | WIRE TRANS TRN Sent To: JPMORGAN CHASE BANK Beneficiary: 1/Fidelity Pandemic Relief Services |
| UnionBank | The Litigation Practice Group PC | | | | 1/31/2022 | 1/21/2022 | | 1,611.58 | WIRE TRANS TAN Sent To: JPMORGAN CHASE BANK Beneficiary: 1/Fidelity Pandemic Relief Services |
| UnionBank | The Litigation Practice Group PC | | | | 1/31/2022 | 1/28/2022 | | 2,509.14 | WIRE TRANS TRN Sent To: JPMORGAN CHASE BANK Beneficiary: 1/Fidelity Pandemic Relief Services |
| UnionBank | The Litigation Practice Group PC | | | | 2/28/2022 | 2/4/2022 | | 1,402.63 | WIRE TRANS TRN Sent To: JPMORGAN CHASE BANK Beneficiary: 1/Fidelity Pandemic Relief Services |
| UnionBank | The Litigation Practice Group PC | | | | 2/28/2022 | 2/11/2022 | | 1,078.44 | WIRE TRANS TRN Sent To: JPMORGAN CHASE BANK Beneficiary: 1/Fidelity Pandemic Relief Services |
| Chase | The Litigation Practice Group PC | | | | 2/28/2022 | 2/22/2022 | | 3,054.62 | Book Transfer Debit A/C: Fidelity Pandemic Relief Services Santa Ana CA 92705-5446 US Ref: Weekly Disbursement |
| Chase | The Litigation Practice Group PC | | | | 2/28/2022 | 2/25/2022 | | 1,960.96 | Book Transfer Debit A/C: Fidelity Pandemic Relief Services Santa Ana CA 92705-5446 US Ref: Weekly Disbursement |
| Chase | The Litigation Practice Group PC | | | | 3/31/2022 | 3/4/2022 | | 1,626.11 | Book Transfer Debit NC: Fidelity Pandemic Relief Services Santa Ana CA 92705-5446 US Ret: Weekly Disbursement |
| Chase | The Litigation Practice Group PC | | | | 3/31/2022 | 3/10/2022 | | 1,559.57 | Book Transfer Debit A/C: Fidelity Pandemic Relief Services Santa Ana CA 92705-5446 US Ref: Weekly Disbursement |
| Chase | The Litigation Practice Group PC | | | | 3/31/2022 | 3/18/2022 | | 2,624.79 | Book Transfer Debit A/C: Fidelity Pandemic Relief Services Santa Ana CA 92705-5446 US Ret: Weekly Disbursement |

DRAFT FORM - SUBJECT TO CHANGE

Payor Accounts: BAT Inc., Coast Processing LLC,
EZ Debt Relief, Maverick Management Group, Prime Logix, The
Litigation Practice Group, Vulcan Consulting Group LLC

Exhibit 1
Page 22

In re: The Litigation Practice Group PC
Disbursement Details by Payee
4 Years Pre-Petition (03/20/2019 - 03/20/2023)

Fidelity Pandemic Relief



| Bank Name | Account Name | Account Number | Cardholder Name | Cardholder Number | Statement Date | Transaction Date | Check Number | Debit/Charge | Memo |
|---|---|---|---|---|---|---|---|---|---|
| Chase | The Litigation Practice Group PC | | | | 3/31/2022 | 3/24/2022 | | 2,155.61 | Book Transfer Debit NC: Fidelity Pandemic Relief Services Santa Ana CA 92705-5446 US Ret: Weekly Disbursement |
| Chase | The Litigation Practice Group PC | | | | 4/30/2022 | 4/1/2022 | | 1,153.21 | Book Transfer Debit A/C: Fidelity Pandemic Relief Services Santa Ana CA 92705-5446 US Ref: Weekly Disbursement Jo |
| Chase | The Litigation Practice Group PC | | | | 4/30/2022 | 4/7/2022 | | 1,173.34 | Book Transfer Debit NC: Fidelity Pandemic Relief Services Santa Ana CA 92705-5446 US Ret: Weekly Disbursement |
| Chase | The Litigation Practice Group PC | | | | 4/30/2022 | 4/18/2022 | | 2,560.02 | Book Transfer Debit A/C: Fidelity Pandemic Relief Services Santa Ana CA 92705-5446 US Ref: Weekly Disbursement |
| Chase | The Litigation Practice Group PC | | | | 4/30/2022 | 4/21/2022 | | 1,147.77 | Book Transfer Debit NC: Fidelity Pandemic Relief Services Santa Ana CA 92705-5446 US Ref: Weekly Disbursement |
| Chase | The Litigation Practice Group PC | | | | 4/30/2022 | 4/28/2022 | | 796.09 | Book Transfer Debit A/C: Fidelity Pandemic Relief Services Santa Ana CA 92705-5446 US Ref: Weekly Disbursement I8Jo |
| Chase | The Litigation Practice Group PC | | | | 5/31/2022 | 5/5/2022 | | 769.56 | Book Transfer Debit A/C: Fidelity Pandemic Relief Services Santa Ana CA 92705-5446 US Ref: Weekly Disbursement |
| Chase | The Litigation Practice Group PC | | | | 5/31/2022 | 5/13/2022 | | 1,244.12 | Book Transfer Debit NC: Fidelity Pandemic Relief Services Santa Ana CA 92705-5446 US Ret: Weekly Disbursement |
| Chase | The Litigation Practice Group PC | | | | 5/31/2022 | 5/19/2022 | | 1,639.19 | Book Transfer Debit NC: Fidelity Pandemic Relief Services Santa Ana CA 92705-5446 us Ref: Weekly Disbursement |
| Chase | The Litigation Practice Group PC | | | | 5/31/2022 | 5/27/2022 | | 1,016.29 | Book Transfer Debit NC: Fidelity Pandemic Relief Services Santa Ana CA 92705-5446 US Ret: Weekly Disbursement |
| Chase | LPG; Alex Tarkoff | | ROSA BIANCA LOLI | | 6/3/2022 | 6/2/2022 | | 22,500.00 | FIDELITY PANDEMIC RELIEF |
| Chase | The Litigation Practice Group PC | | | | 6/30/2022 | 6/3/2022 | | 1,338.72 | Book Transfer Debit A/C: Fidelity Pandemic Relief Services Santa Ana CA 92705-5446 US Ret: Weekly Disbursement |
| Chase | LPG; Alex Tarkoff | | ROSA BIANCA LOLI | | 6/17/2022 | 6/7/2022 | | 24,407.40 | FIDELITY PANDEMIC RELIEF |
| Chase | The Litigation Practice Group PC | | | | 6/30/2022 | 6/10/2022 | | 362.74 | Book Transfer Debit NC: Fidelity Pandemic Relief Services Santa Ana CA 92705-5446 US Ret: Weekly Disbursement |
| Chase | The Litigation Practice Group PC | | | | 6/30/2022 | 6/16/2022 | | 1,896.16 | Book Transfer Debit A/C: Fidelity Pandemic Relief Services Santa Ana CA 92705-5446 us Ref: Weekly Disbursement |
| Chase | The Litigation Practice Group PC | | | | 6/30/2022 | 6/23/2022 | | 874.10 | Book Transfer Debit NC: Fidelity Pandemic Relief Services Santa Ana CA 92705-5446 US Ref: Weekly Disbursement |
| Chase | The Litigation Practice Group PC | | | | 6/30/2022 | 6/30/2022 | | 1,023.53 | Book Transfer Debit A/C: Fidelity Pandemic Relief Services Santa Ana CA 92705-5446 US Ref: Weekly Disbursement |
| Chase | The Litigation Practice Group PC | | | | 7/31/2022 | 7/8/2022 | | 475.47 | Book Transfer Debit A/C: Fidelity Pandemic Relief Services Santa Ana CA 92705-5446 US Ref: Weekly Disbursement Tm: |
| Chase | LPG; Alex Tarkoff | | ROSA BIANCA LOLI | | 7/15/2022 | 7/8/2022 | | 23,302.40 | FIDELITY PANDEMIC RELIEF |

DRAFT FORM - SUBJECT TO CHANGE

Payor Accounts: BAT Inc., Coast Processing LLC,
EZ Debt Relief, Maverick Management Group, Prime Logix, The
Litigation Practice Group, Vulcan Consulting Group LLC

Exhibit 1
Page 23

In re: The Litigation Practice Group PC
Disbursement Details by Payee
4 Years Pre-Petition (03/20/2019 - 03/20/2023)



| Bank Name | Account Name | Account Number | Cardholder Name | Cardholder Number | Statement Date | Transaction Date | Check Number | Debit/Charge | Memo |
|---|---|---|---|---|---|---|---|---|---|
| Chase | The Litigation Practice Group PC | ▉ | | | 7/31/2022 | 7/14/2022 | | 1,440.77 | Book Transfer Debit A/C: Fidelity Pandemic Relief Services Santa Ana CA 92705-5446 US Ref: Weekly Disbursement ▉ |
| Chase | LPG; Alex Tarkoff | ▉ | ROSA BIANCA LOLI ▉ | | 7/29/2022 | 7/18/2022 | | 43,250.00 | FIDELITY PANDEMIC RELIEF ▉ |
| Chase | The Litigation Practice Group PC | ▉ | | | 7/31/2022 | 7/21/2022 | | 793.97 | Book Transfer Debit A/C: Fidelity Pandemic Relief Services Santa Ana CA 92705-5446 US Ref: Weekly Disbursement Tm: |
| Chase | LPG; Alex Tarkoff | ▉ | ROSA BIANCA LOLI ▉ | | 7/29/2022 | 7/25/2022 | | 47,500.00 | FIDELITY PAN DEM IC RELIEF ▉ |
| Chase | LPG; Alex Tarkoff | ▉ | ROSA BIANCA LOLI ▉ | | 7/29/2022 | 7/25/2022 | | 48,750.00 | FIDELITY PANDEMIC RELIEF ▉ |
| Chase | The Litigation Practice Group PC | ▉ | | | 7/31/2022 | 7/29/2022 | | 875.80 | Book Transfer Debit A/C: Fidelity Pandemic Relief Services Santa Ana CA 92705-5446 US Ref: Weekly Disbursement Tm: |
| Chase | LPG; Alex Tarkoff | ▉ 5 | HAN TRINH ▉ | | 8/12/2022 | 8/3/2022 | | 35,275.00 | FIDELITY PANDEMIC RELIEF ▉ |
| Chase | The Litigation Practice Group PC | ▉ | | | 8/31/2022 | 8/5/2022 | | 669.37 | Book Transfer Debit NC: Fidelity Pandemic Relief Services Santa Ana CA 92705-5446 us Ref: Weekly Disbursement Tm: |
| Chase | The Litigation Practice Group PC | ▉ | | | 8/31/2022 | 8/11/2022 | | 665.13 | Book Transfer Debit A/C: Fidelity Pandemic Relief Services Santa Ana CA 92705-5446 us Ref: Weekly Disbursement Tm: |
| Chase | The Litigation Practice Group PC | ▉ | | | 8/31/2022 | 8/11/2022 | | 23,302.49 | Book Transfer Debit A/C: Fidelity Pandemic Relief Services Santa Ana CA 92705-5446 US Ref: Invoice 1106 ▉ |
| Chase | The Litigation Practice Group PC | ▉ | | | 8/31/2022 | 8/19/2022 | | 1,375.06 | Book Transfer Debit A/C: Fidelity Pandemic Relief Services Santa Ana CA 92705-5446 US Ret: Weekly Disbursement ▉ Jo |
| Chase | The Litigation Practice Group PC | ▉ | | | 8/31/2022 | 8/26/2022 | | 765.84 | Book Transfer Debit NC: Fidelity Pandemic Relief Services Santa Ana CA 92705-5446 US Ret: Weekly Disbursement ▉ |
| Chase | The Litigation Practice Group PC | ▉ | | | 9/30/2022 | 9/2/2022 | | 771.59 | Book Transfer Debit A/C: Fidelity Pandemic Relief Services Santa Ana CA 92705-5446 us Ref: Weekly Disbursement ▉ |
| Chase | The Litigation Practice Group PC | ▉ | | | 9/30/2022 | 9/9/2022 | | 255.17 | Book Transfer Debit NC: Fidelity Pandemic Relief Services Santa Ana CA 92705-5446 US Ret: Weekly Disbursement ▉ |
| Chase | The Litigation Practice Group PC | ▉ | | | 9/30/2022 | 9/16/2022 | | 1,724.36 | Book Transfer Debit A/C: Fidelity Pandemic Relief Services Santa Ana CA 92705-5446 US Ret: Weekly Disbursement Tm: |
| Bank of America | Vulcan Consulting Group LLC dba DRD | ▉ | | | 9/30/2022 | 9/22/2022 | | 200,000.00 | WIRE TYPEWIRE OUT DATE220922 TIME1 520 ET ▉ BNF:FIDELITY PANDEMIC RELIEFS ID:633858102 BNF BKJPMORGAN CHASE BANK. N. ▉2 |
| Chase | The Litigation Practice Group PC | ▉ | | | 9/30/2022 | 9/23/2022 | | 667.87 | Book Transfer Debit A/C: Fidelity Pandemic Relief Services Santa Ana CA 92705-5446 US Ref: Weekly Disbursement Tm: ▉ |
| Chase | The Litigation Practice Group PC | ▉ | | | 9/30/2022 | 9/30/2022 | | 713.73 | Book Transfer Debit NC: Fidelity Pandemic Relief Services Santa Ana CA 92705-5446 US Ret: Weekly Disbursement Tm: |
| Chase | The Litigation Practice Group PC | ▉ | | | 10/31/2022 | 10/6/2022 | | 692.86 | Book Transfer Debit NC: Fidelity Pandemic Relief Services Santa Ana CA 92705-5446 US Ret: Weekly Disbursement Tm: ▉ |

DRAFT FORM - SUBJECT TO CHANGE

Payor Accounts: BAT Inc., Coast Processing LLC,
EZ Debt Relief, Maverick Management Group, Prime Logix, The
Litigation Practice Group, Vulcan Consulting Group LLC

Exhibit 1
Page 24

In re: The Litigation Practice Group PC
Disbursement Details by Payee
4 Years Pre-Petition (03/20/2019 - 03/20/2023)

Fidelity Pandemic Relief



| Bank Name | Account Name | Account Number | Cardholder Name | Cardholder Number | Statement Date | Transaction Date | Check Number | Debit/Charge | Memo |
|---|---|---|---|---|---|---|---|---|---|
| Chase | The Litigation Practice Group PC | ▮ | | | 10/31/2022 | 10/14/2022 | | 676.20 | Book Transfer Debit A/C: Fidelity Pandemic Relief Services Santa Ana CA 92705-5446 US Ref: Weekly Disbursement Tm: ▮ |
| Chase | The Litigation Practice Group PC | ▮ | | | 10/31/2022 | 10/21/2022 | | 1,033.37 | Book Transfer Debit A/C: Fidelity Pandemic Relief Services Santa Ana CA 92705-5446 US Ref: Weekly Disbursement Tm: ▮ |
| Chase | The Litigation Practice Group PC | ▮ | | | 10/31/2022 | 10/28/2022 | | 101.69 | Book Transfer Debit A/C: Fidelity Pandemic Relief Services Santa Ana CA 92705-5446 US Ref: Weekly Disbursement Tm: ▮ |
| Chase | The Litigation Practice Group PC | ▮ | | | 11/30/2022 | 11/10/2022 | | 266.77 | Book Transfer Debit NC: Fidelity Psndemio Reliet Servioes Sante Ana CA 92705-5448 US Ref Weekly Disbursement Tm |
| Chase | The Litigation Practice Group PC | ▮ | | | 11/30/2022 | 11/10/2022 | | 833.83 | Book Transfer Debit NC: Fidelity Pandemic Reliet Services Sante Ane CA 92705-5446 US Ref. Weekly Disbursement Tm. |
| | | | | | | | | **1,737,577.22** | |

DRAFT FORM - SUBJECT TO CHANGE

Payor Accounts: BAT Inc., Coast Processing LLC,
EZ Debt Relief, Maverick Management Group, Prime Logix, The
Litigation Practice Group, Vulcan Consulting Group LLC

Exhibit 1
Page 25

# EXHIBIT 2

Exhibit 2
Page 26

In re: The Litigation Practice Group PC
Disbursement Details by Payee
4 Years Pre-Petition (03/20/2019 - 03/20/2023)



Master Builders of America

| Bank Name | Account Name | Account Number | Statement Date | Transaction Date | Check Number | Debit/Charge | Memo |
|---|---|---|---|---|---|---|---|
| Chase | The Litigation Practice Group PC | ███ | 1/31/2022 | 1/11/2022 | | 18,700.00 | Book Transfer Debit A/C: Master Builders of America Santa Ana CA 92705-5446 US Ref: 1099 Pymt Tm: ███ |
| Chase | The Litigation Practice Group PC | ███ | 2/28/2022 | 2/25/2022 | | 22,100.00 | Book Transfer Debit A/C: Master Builders of America Santa Ana CA 92705-5446 US Ref: Feb 2022 Rent-203 Golden Circle Tm: ███ |
| Chase | The Litigation Practice Group PC | ███ | 4/30/2022 | 4/5/2022 | | 22,100.00 | Book Transfer Debit A/C: Master Builders of America Santa Ana CA 92705-5446 US Ref: Inv#: 1007-March 2022 Rent Tm: ███ |
| | | | | | | **62,900.00** | |

DRAFT FORM - SUBJECT TO CHANGE

Exhibit 2
Page 27

# EXHIBIT 3

Exhibit 3
Page 28

In re: The Litigation Practice Group PC
Disbursement Details by Payee
4 Years Pre-Petition (03/20/2019 - 03/20/2023)



| Bank Name | Account Name | Account Number | Statement Date | Transaction Date | Check Number | Debit/Charge | Memo |
|---|---|---|---|---|---|---|---|
| UnionBank | The Litigation Practice Group PC | | 8/31/2021 | 8/13/2021 | 2786 | 37,500.00 | Loan Payment |
| | | | | | | **37,500.00** | |

DRAFT FORM - SUBJECT TO CHANGE

Payor Accounts: BAT Inc., Coast Processing LLC,
EZ Debt Relief, Maverick Management Group, Prime Logix, The
Litigation Practice Group, Vulcan Consulting Group LLC

Exhibit 3
Page 29

# **EXHIBIT 4**

Exhibit 4
Page 30

1  CHRISTOPHER B. GHIO (259094)
   christopher.ghio@dinsmore.com
2  CHRISTOPHER CELENTINO (131688)
   christopher.celentino@dinsmore.com
3  YOSINA M. LISSEBECK (201654)
   yosina.lissebeck@dinsmore.com
4  DINSMORE & SHOHL LLP
5  655 West Broadway, Suite 800
   San Diego, California 92101
6  Tele:  619.400.0500
7  Fax:  619.400.0501

8  Sarah S. Mattingly (Ky. Bar 94257)
   sarah.mattingly@dinsmore.com
9  DINSMORE & SHOHL, LLP
10 101 S. Fifth Street, Suite 2500
   Louisville, Kentucky 40202
11 Tele: 859-425-1096
   Fax: 502-585-2207
12 (Admitted pro hac vice)

13 Special Counsel to Richard A. Marshack

FILED & ENTERED

JUN 03 2024

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY mccall     DEPUTY CLERK

14        **UNITED STATES BANKRUPTCY COURT**

15   **CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION**

16 In Re                              Case No: 23-bk-10571-SC

17                                    Chapter 11

18                                    **ORDER GRANTING MOTION FOR**
19 The Litigation Practice Group P.C.,   **ENTRY OF PROTECTIVE ORDER AND**
                                        **THE PROTECTIVE ORDER**
20                Debtor(s),

21                                    Date:    May 23, 2024
22                                    Time:    1:30 p.m.
23                                    Judge:   Hon. Scott C. Clarkson
                                      Place:   Courtroom 5C (via Zoom)[1]
24                                             411 West Fourth Street
                                               Santa Ana, CA 92701
25

26

27 _____

28 [1] Video and audio connection information for each hearing will be provided on Judge Clarkson's
   publicly posted hearing calendar, which may be viewed online at:
   http://ecf-ciao.cacb.uscourts.gov/CiaoPosted/?jid=SC.

Exhibit 4
Page 31

The Court has read and considered the Notice of Motion and Motion for Entry of Protective Order (the "Motion") filed by Richard A. Marshack, in his capacity as the Chapter 11 Trustee (the "Trustee") of the Bankruptcy Estate ("Estate") of The Litigation Practice Group P.C., on May 2, 2024, pursuant to Federal Rule of Bankruptcy Procedure 7026 and Federal Rule of Civil Procedure 26(c)(1), as Dk. No. 1164 ("Motion"), and has found good cause to grant the Motion.

IT IS HEREBY ORDERED that:

1.      The Motion is granted;

2.      The below Protective Order shall apply to any contested matter arising in the main bankruptcy case and in all adversary proceedings filed by or against Trustee, present and future; and

3.      Govern the discovery conducted therein.

## PROTECTIVE ORDER

**1.      DEFINITIONS**

1.1      "Confidential Information" as used in this Protective Order shall mean documents and other information (regardless of how generated, stored or maintained) that a Party or non-party reasonably believes to contain or reflect non-public financial or business information, bank records, financial records, such as social security numbers, non-public financial or personal information of a Party or non-party, account numbers, sensitive digital information and identifiers, information subject to confidentiality agreements or provisions other than this Protective Order, and other non-public research, development, or commercial information that derives value or avoids injury by virtue of not being known to the public.

1.2      This "Action" is defined and hereby means any contested matter arising in the main bankruptcy case and in all adversary proceedings filed by or against Trustee, present and future.

1.3      "Designating Party" means a Party or non-party that designates Confidential Information during the Action.

1.4      "Receiving Party" means a Party that receives Confidential Information during the Action.

Exhibit 4
Page 32

1.5    "Party" or "Parties" means person or entity subject to this Protective Order.

**2.    SCOPE OF THIS PROTECTIVE ORDER**

2.1    Unless otherwise ordered, this Protective Order shall govern certain documents and other products of discovery obtained in the Action from the Parties there to, and from third parties. As well as certain information copied or derived therefrom, excerpts, summaries or compilations thereof, including, but not limited to, documents voluntarily exchanged as part of early settlement discussions, documents produced pursuant to initial disclosures, requests authorized by the Federal Rules of Civil Procedure made applicable herein by the Federal Rules of Bankruptcy Procedure, answers to interrogatories, deposition transcripts, responses to requests for production, responses to requests for admission, subpoenas, affidavits, declarations, expert reports, and other such material and information as may be produced during the course of the Action and designated as Confidential Information.

**3.    DESIGNATION OF CONFIDENTIAL INFORMATION**

3.1    This Protective Order shall govern the production and handling of any Confidential Information in this Action. Any Party or non-party who produces Confidential Information in this Action may designate it as "Confidential" or "Attorneys' Eyes Only" consistent with the terms of this Protective Order. Whenever possible, the Designating Party must designate only those portions of a document, written discovery responses, deposition, transcript, or other material that contain the Confidential Information and refrain from designating entire documents. Regardless of any designations made hereunder, the Designating Party is not otherwise restricted from use or disclosure of its Confidential Information outside of this Action or for any business purposes. In addition, any Party may move to modify or seek other relief from any of the terms of this Protective Order if it has first tried in writing and in good faith to resolve its needs or disputes with the other Parties or Party as the case may be under the terms of this Protective Order. Further, nothing in this Protective Order shall prevent a Party from redacting documents consistent with the Federal Rules of Civil Procedure and utilizing the documents as needed through-out the Action.

3.2    <u>Application to Non-Parties:</u> Before a non-party is given copies of documents or materials designated as Confidential Information or Attorneys' Eyes Only as permitted hereunder, it

3

Exhibit 4
Page 33

must first sign an acknowledgment to be bound to these terms that is attached hereto as <u>Exhibit A</u>; if it fails to do so, the Parties to this Action must resolve any such dispute before making disclosure of designated information as permitted hereunder to the non-party. If a non-party wishes to make designations hereunder, it must first sign attached <u>Exhibit A.</u>

        3.3     <u>Timing and Provisional Protection:</u> Designations of Confidential Information may be made at any time. To avoid potential waiver of protection hereunder, the Designating Party should designate documents or materials containing Confidential Information at the time of production or disclosure, including on the record during the taking of any deposition. Deposition testimony will be deemed provisionally protected for a period of thirty (30) days after the transcript is released to the Parties by the court reporter, although the Parties may agree at any time to different timelines of provisional protection of information as Confidential or Attorneys' Eyes Only as part of one or more specific depositions. To retain any designations beyond the provisional period, a Designating Party must designate specific pages and lines of deposition testimony before the provisional period has expired. Such designations must be made in writing so that all counsel and court reporters may append the designation to all copies of the transcripts.

        3.4     <u>Manner of Designation:</u> Confidential Information may be designated hereunder in any reasonable manner or method that notifies the Receiving Party of the designation level and identifies with specificity the information to which the designation applies. If made verbally, the Designating Party must promptly confirm the designation in writing. Whenever possible, the Designating Party should stamp, affix, or embed a legend of "CONFIDENTIAL" or "ATTORNEYS' EYES ONLY" on each designated page of the document or electronic image that contains Confidential Information.

        **4.**       **CHALLENGES TO DESIGNATED INFORMATION**

        4.1     In the event that a Receiving Party disagrees at any time with any designation(s) made by the Designating Party, the Receiving Party must first try to resolve such challenge in good faith on an informal basis with the Designating Party. The Receiving Party must provide written notice of the challenge and the grounds therefor to the Designating Party, who must respond in writing to the challenge within fifteen (15) days. At all times, the Designating Party carries the burden of establishing the propriety of the designation and protection level. Unless and until the challenge is

resolved by the Parties or ruled upon by the Court, the designated information shall remain protected under this Protective Order. The failure of any Receiving Party to challenge a designation does not constitute a concession that the designation is proper or an admission that the designated information is otherwise competent, relevant, or material.

**5.    LIMITED ACCESS/USE OF PROTECTED INFORMATION**

5.1    <u>Restricted Use:</u> Information that is produced or exchanged in the course of the Action and designated under this Protective Order may be used for preparation for trial and preparation for any appeal of any and all matters in the Action, as well as related settlement negotiations, and for no other purpose, without the written consent of the Designating Party. No Confidential Information may be disclosed to any person except in accordance with the terms of this Protective Order, unless the parties are co-counsel or have entered into joint defense agreements. All persons in possession of Confidential Information agree to exercise reasonable care with regard to the custody, use, or storage of such information to ensure that its confidentiality is maintained. This obligation includes, but is not limited to, the Receiving Party providing to the Designating Party prompt notice of the receipt of any subpoena that seeks production or disclosure of any designated information and consulting with the Designating Party before responding to the subpoena. Any use or disclosure of Confidential or Attorneys' Eyes Only information in violation of the terms of this Protective Order may subject the disclosing person or party to sanctions.

5.2    <u>Access to "Confidential" Information:</u> The Party(ies) and all persons subject to this Protective Order agree that information designated as "CONFIDENTIAL" may only be accessed or reviewed by the following:

a)    The Court, its personnel, and court reporters;

b)    Counsel of record, or co-counsel for any Party, or other party that has entered into a joint defense agreement in the Action and their employees who assist counsel of record, or co-counsel in the Action and are informed of the duties and obligations imposed hereunder;

c)    The Parties, including their clients, agents and employees who are assisting or have reason to know of the Action;

/ / /

5

Exhibit 4
Page 35

d)      Experts or consultants employed by the Parties or their counsel, or co-counsel, for purposes of an Action, so long as each such expert or consultant has signed attached Exhibit A; and

e)      Other witnesses or persons with the Designating Party's consent or by court order.

5.3     Access to "Attorneys' Eyes Only" Designations: The Parties and all persons subject to this Protective Order agree that information designated as "ATTORNEYS' EYES ONLY" may only be accessed or reviewed by the following:

a)      The Court, its personnel, and court reporters;

b)      Counsel of record, or co-counsel for any Party, or other party that has entered into a joint defense agreement in the Action and their employees who assist counsel of record in the Action and are informed of the duties hereunder;

c)      In-house counsel for any Party in the Action and Richard A. Marshack, as Chapter 11 Trustee of The Litigation Practice Group P.C. who is informed of the duties and obligations imposed hereunder;

d)      Experts or consultants employed by the Parties or their counsel, or co-counsel for purposes of the Action,  and so long as each such expert or consultant has signed attached Exhibit A; and

e)      Other witnesses or persons to whom the Designating Party agrees in advance of disclosure or by court order.

5.4     Non-Waiver Effect of Designations: Neither the taking of, nor the failure to take, any action to enforce the provisions of this Protective Order, nor the failure to object to any designation, will constitute a waiver of any Party(ies)'s claim or defense in the Action or any other action or proceeding, including, but not limited to, a claim or defense that any designated information is or is not Confidential, is or is not entitled to particular protection, or embodies or does not embody information protectable by law.

5.5     In-Court Use of Designated Information: If information designated under this Protective Order will or may be offered in evidence at a hearing or trial related to any matter in the Action, then the offering party must give advance notice to the party or non-party that designated prior to offering the information so that any use or disclosure may be addressed in accordance with

the Court's case-management or other pre-trial order, or by a motion *in limine.*  Nothing in this Protective Order shall be construed as a waiver by a Party of any objections that may be raised as to the admissibility at trial of any evidentiary materials.

**6.    CLAW-BACK REQUESTS**

6.1    <u>Failure to Make Designation:</u>  If, at any time, a Party or non-party discovers that it produced or disclosed Confidential Information without designation, it may promptly notify the Receiving Party and identify with particularity the Confidential Information to be designated and the level of designation (the claw-back notification). The Receiving Party may then request substitute production of the newly-designated information. Within thirty (30) days of receiving the claw-back notification, the Receiving Party must: (1) certify to the Designating Party it has appropriately marked or, if substitute production has been requested, destroyed all unmarked copies that it received, made, and/or distributed; and (2) if it was practicably unable to mark or destroy any information because disclosures occurred while the Receiving Party was under no duty of confidentiality under the terms of this Protective Order regarding that information, the Receiving Party must reasonably provide as much information as practicable to aid the Designating Party in protecting the information, consistently with the Receiving Party's attorney-client, work-product, and/or trial-preparation privileges.

6.2    <u>Inadvertent Production of Privileged Information:</u> If, at any time, a Party discovers that it produced information that it reasonably believes is subject to protection under the attorney/client, work-product, or trial-preparation privileges, then it must promptly notify each Receiving Party of the claim for protection, the basis for it, amend its privilege log accordingly, and comply with Fed. R. Civ. P. 26(b)(5). Whenever possible, the producing party must produce substitute information that redacts the information subject to the claimed protection. The Receiving Party must thereupon comply with Fed. R. Civ. P. 26(b)(5)(B) as to the information subject to the claimed protection.

/ / /

/ / /

/ / /

7

Exhibit 4
Page 37

**7.    DURATION/CONTINUED RESTRICTIONS**

7.1    <u>Handling of Designated Information Upon Conclusion of the Main Bankruptcy Case:</u>
Upon conclusion of the Main Bankruptcy Case, by way of dismissal or closing of the case, the Designating Party(ies) is/are responsible for ensuring that any Party or person to whom the Designating Party shared or disclosed designated information in any of the matters under the Action returns or destroys all of its copies, regardless of the medium in which it was stored. No witness or Party may retain designated information that it received from any other Party or non-party under this Protective Order; only counsel of record, or co-counsel, are the authorized agents who may retain one copy for their respective legal files, and who must also describe to the Designating Party the extra steps taken to protect its legal file containing paper and/or electronic copies of the designated information so that it is not accessed, used, or disclosed inconsistently with the obligations under this Protective Order. This provision does not apply to the Court or Court staff. Moreover, this provision does not apply to Trustee, who may retain and use – consistent with this Order – Confidential Information received in any Action during the entirety of the Bankruptcy.

7.2    <u>Continued Restrictions Under this Protective Order:</u> The restrictions on disclosure and use of Confidential Information shall survive the conclusion of the Bankruptcy case and any matter in the Action.

**8.    PRIVILEGED OR PROTECTED INFORMATION**

8.1    Nothing in this Protective Order shall require disclosure of information that is protected by the attorney-client privilege, the work-product protection, or any other legally cognizable privilege (a "Privilege or Protection").  If information subject to a claim of Privilege or Protection is inadvertently produced, pursuant to Federal Rule of Evidence 502(d) such production shall not constitute a waiver of, or estoppel as to, any claim of Privilege or Protection for such information or any other information that may be protected from disclosure by a Privilege or Protection in any proceeding.

8.2    If a Party receives a document that appears to be subject to a Privilege or Protection, then it shall refrain from examining the document any more than is essential to ascertain if it is privileged or protected and shall promptly notify the producing Party in writing that the receiving

8

Exhibit 4
Page 38

Party possesses material that appears to be subject to a Privilege or Protection. The producing Party shall have seven (7) days after receiving such notice to assert a Privilege or Protection over the identified material. If the producing Party does not assert a claim of Privilege or Protection within the seven (7)-day period, the material in question shall be deemed not privileged or protected.

8.3     If a producing Party has produced a document subject to a claim of Privilege or Protection, upon written request by the producing Party, the document for which a claim of Privilege or Protection is made shall be sequestered or destroyed to the extent reasonably practicable, and the receiving Party shall not use the document for any purpose other than in connection with analyzing or disputing a claim of Privilege or Protection or in connection with a motion to compel the production of the document.

8.4     The receiving Party sequestering or destroying such material may then move the Court for an order compelling production of the material. The applicable producing Party bears the burden of establishing the applicable Privilege or Protection of any clawed-back document or information as and to the same extent that it would have borne such burden had it not produced the document or information.  Nothing in this Protective Order shall limit the Court's right or any receiving Party's right to request an in camera review of any information subject to a claim of Privilege or Protection.

###

Date: June 3, 2024

Scott C. Clarkson
United States Bankruptcy Judge

9

Exhibit 4
Page 39

1

2

3

4

5

EXHIBIT "A"

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

1  Christopher B. Ghio (State Bar No. 259094)
   Christopher Celentino (State Bar No. 131688)
2  Yosina M. Lissebeck (State Bar No. 201654)
   **DINSMORE & SHOHL LLP**
3  655 West Broadway, Suite 800
   San Diego, CA 92101
4  Telephone:  619.400.0500
   Facsimile:  619.400.0501
5  christopher.ghio@dinsmore.com
   christopher.celentino@dinsmore.com
6  yosina.lissebeck@dinsmore.com

7  Sarah S. Mattingly (Ky. Bar 94257)
   DINSMORE & SHOHL, LLP
8  101 S. Fifth Street, Suite 2500
   Louisville, KY 40202
9  Telephone: 859-425-1096
   Facsimile: 502-585-2207
10 Sarah.mattingly@dinsmore.com
   (Admitted pro hac vice)
11
   Special Counsel to Richard A. Marshack,
12 Chapter 11 Trustee

13

14
                **UNITED STATES BANKRUPTCY COURT**
15
                **CENTRAL DISTRICT OF CALIFORNIA**
16

17
   In Re                          | Case No. 8:23-BK-10571-SC
18
                                  | Chapter 11
19
   The Litigation Practice Group P.C., | **EXHIBIT A TO STIPULATED
20                                     | ORDER**
             Debtor(s),
21                                | Date:   May 23, 2024
22                                | Time:   1:30 p.m.
                                  | Judge:  Hon. Scott C. Clarkson
23                                | Place:  Courtroom 5C[1] - Via Zoom
24                                |         411 W. Fourth Street
                                  |         Santa Ana, CA  92701
25

26

27  ──────────────────

28  [1] Video and audio connection information for each hearing will be provided on Judge Clarkson's
      publicly posted hearing calendar, which may be viewed online at:
      http://ecf-ciao.cacb.uscourts.gov/CiaoPosted/?jid=SC.

                              1

This is to certify that:

      (a)     I am being given access to Confidential Information pursuant to the Stipulated Protective Order that was entered into the main bankruptcy case for Litigation Practice Group, but which is binding and controlling as set forth by the Court's Order on any and all contested matters and any and all litigation commenced by Trustee;

      (b)     I have read the Stipulated Protective Order; and

      (c)     I agree to be bound by the terms and conditions thereof, including, without limitation, to the obligations regarding the use, non-disclosure and return of such Confidential Information. I further agree that in addition to being contractually bound by the Stipulated Protective Order, I am subject to the jurisdiction of the above reference Court for any violation thereof.

Date: _____

 

                                         _____
                                              Signature

                                       _____
                                          Printed Name

2

B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| **PLAINTIFFS**<br>Richard A. Marshack,<br>Trustee of the LPG Liquidation Trust | **DEFENDANTS**<br>Fidelity Pandemic Relief Center, Inc. Master Builders of America, and Jess Walker |
|---|---|

| **ATTORNEYS** (Firm Name, Address, and Telephone No.)<br>Christopher Celentino      Dinsmore & Shohl LLP<br>Yosina M. Lissebeck      655 West Broadway, Suite 800<br>Brian W. Boyd (pro hac vice)    San Diego, California 92101<br>                          619.400.0500 | **ATTORNEYS** (If Known) |
|---|---|

| **PARTY** (Check One Box Only)<br>□ Debtor        □ U.S. Trustee/Bankruptcy Admin<br>□ Creditor     □ Other<br>☒ Trustee | **PARTY** (Check One Box Only)<br>□ Debtor        □ U.S. Trustee/Bankruptcy Admin<br>□ Creditor     □ Other<br>□ Trustee |
|---|---|

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

(1) Avoidance, Preservation, and Recovery of Actual Fraudulent Transfers; (2) Avoidance, Preservation, and Recovery of Constructive Fraudulent Transfers; (3) Avoidance, Preservation, and Recovery of Actual Fraudulent Transfers; (4) Avoidance of Investment Agreement; and, (5) Avoidance, Preservation, and Recovery of Constructive Fraudulent Transfers.

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☒ 11-Recovery of money/property - §542 turnover of property
☒ 12-Recovery of money/property - §547 preference
☒ 13-Recovery of money/property - §548 fraudulent transfer
□ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
□ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
□ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
□ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
□ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
□ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
□ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
□ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
□ 61-Dischargeability - §523(a)(5), domestic support
□ 68-Dischargeability - §523(a)(6), willful and malicious injury
□ 63-Dischargeability - §523(a)(8), student loan
□ 64-Dischargeability - §523(a)(15), divorce or separation obligation
    (other than domestic support)
□ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
□ 71-Injunctive relief – imposition of stay
□ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
□ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
□ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
□ 01-Determination of removed claim or cause

**Other**
□ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
□ 02-Other (e.g. other actions that would have been brought in state court
    if unrelated to bankruptcy case)

| □ Check if this case involves a substantive issue of state law | □ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| □ Check if a jury trial is demanded in complaint | Demand  $1,837,977.22 |

Other Relief Sought

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>The Litigation Practice Group P.C. | BANKRUPTCY CASE NO.<br>8:23-bk-10571-SC | |
| DISTRICT IN WHICH CASE IS PENDING<br>Central District of California | DIVISION OFFICE<br>Santa Ana | NAME OF JUDGE<br>Hon. Scott C. Clarkson |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br><br>/s/ Brian W. Boyd | | |
| DATE<br><br>March 18, 2025 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br><br>Brian W. Boyd | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located.  Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate.  There also may be lawsuits concerning the debtor's discharge.  If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF).  (CM/ECF captures the information on Form 1040 as part of the filing process.)  When completed, the cover sheet summarizes basic information on the adversary proceeding.  The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court.  The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney).  A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.**  Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.**  Give the names and addresses of the attorneys, if known.

**Party**.  Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.**  Enter the dollar amount being demanded in the complaint.

**Signature.**  This cover sheet must be signed by the attorney of record in the box on the second page of the form.  If the plaintiff is represented by a law firm, a member of the firm must sign.  If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.