1  CHRISTOPHER CELENTINO (131688)
   Christopher.celentino@dinsmore.com
2  YOSINA M. LISSEBECK (201654)
3  yosina.lissebeck@dinsmore.com
   JACOB R. BOTHAMLEY (319457)
4  jacob.bothamley@dinsmore.com
5  DINSMORE & SHOHL LLP
   655 West Broadway, Suite 800
6  San Diego, California 92101
7  Tele:  (619) 400-0500
   Fax:   (619) 400-0501
8
   Attorneys for Plaintiff Richard A. Marshack,
9  Trustee of the LPG Liquidation Trust

10              UNITED STATES BANKRUPTCY COURT

11        CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

12

13   In re                                    Case No.  8:23-bk-10571-SC
14   THE LITIGATION PRACTICE GROUP P.C.,       Chapter 11
15              Debtor.                         Adv. No.
16   _____           COMPLAINT FOR:
17   Richard A. Marshack, Trustee of the LPG
18   Liquidation Trust,                         (1) AIDING AND ABETTING FRAUD
              Plaintiff,
19
     v.
20
21   Edward J. Quiroz, III, an Individual,
              Defendant.
22

23

24

25

26

27

28

                                    1

For his *Complaint for (1) Aiding and Abetting Fraud*, plaintiff Richard A. Marshack, the former Chapter 11 Trustee for the bankruptcy estate ("Estate") of debtor The Litigation Practice Group P.C. ("Debtor" or "LPG") and current Liquidating Trustee of the LPG Liquidation Trust (collectively "Trustee" or "Plaintiff") in the above-captioned bankruptcy case ("Bankruptcy Case"), alleges and avers as follows:

**Statement of the Case**

1.      Defendant, Edward J. Quiroz, III ("Defendant"), was, at all relevant times, the President of CRI System, Inc., a Nevada Corporation ("CRI"), which operated out of Las Vegas, Nevada.

2.      CRI was a marketing affiliate of Debtor and received approximately $536,832.08 (the "Transfers") from the Debtor in the four years prior to Debtor's petition date, March 20, 2023 ("Petition Date").

3.      As principal of CRI, Defendant guided CRI's actions and, as is detailed further below, aided and abetted Debtor's fraudulent scheme.

**Statement of Jurisdiction and Venue**

4.      The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334 in that this action arises in and relates to the bankruptcy case pending in the United States Bankruptcy Court for the Central District of California, Santa Ana Division, entitled *In re The Litigation Practice Group, P.C.*, Bankruptcy Case Number 8:23-bk-10571-SC.

5.      Plaintiff has standing to bring this adversary proceeding pursuant to Provision V.E. of the Modified First Amended Joint Chapter 11 Plan of Liquidation, confirmed by the Court on September 9, 2024, as Dk. No. 1646. The Plan provides that the Estate's litigation claims, including avoidance claims, were transferred to the LPG Liquidating Trust. Plaintiff brings these claims on behalf of the Trust.

6.      This adversary proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (E), (H), and (O), and this Court has Constitutional authority to enter a final judgment on these claims. To the extent any claim for relief contained herein is determined not to be a non-core

proceeding or a *Stern*-claim, Plaintiff consents to the entry of final judgment and orders by the Bankruptcy Court.

7.      Defendant is notified that Rule 7008 of the Federal Rules of Bankruptcy Procedure requires Defendant to plead whether consent is given to the entry of a final order and judgment by the Bankruptcy Court.

8.      Venue properly lies in the Central District of California in that this adversary proceeding arises in or is related to a case under Title 11 of the United State Code as provided in 28 U.S.C. §§ 1408 and 1409.

**Parties**

9.      The Litigation Practice Group P.C. (previously defined as "Debtor") is a corporation organized under the laws of the State of California, that had its principal place of business in Tustin, California. During all relevant times prior to bankruptcy, Daniel S. March ("Mr. March") was the Chief Executive Officer of Debtor.

10.      Richard A. Marshack (previously defined as "Trustee" or "Plaintiff") was the duly-appointed, qualified, and acting Chapter 11 Trustee for the Estate.  All claims have been transferred to the Liquidating Trust pursuant to the confirmed plan and Plaintiff brings this action solely in his capacity as the former Chapter 11 Trustee and current Liquidating Trustee of the LPG Liquidation Trust for the benefit of Debtor's Estate and its creditors.

11.      On information and belief, Defendant is an individual who currently resides in California and may be served by first class mail postage prepaid at 32000 Corte Canel, Temecula, California 92592-6344.

**General Allegations**

**A.      The Bankruptcy Case**

12.      On March 20, 2023 (previously defined as the "Petition Date"), the Debtor filed a voluntary petition under Chapter 11 of Title 11 of the United States Code, initiating bankruptcy Case No. 8:23-bk-10571-SC ("Bankruptcy Case") in the United States Bankruptcy Court for the Central District of California, Santa Ana Division.

///

13.     On May 8, 2023, Trustee accepted his appointment as the Chapter 11 Trustee in the Bankruptcy Case. To the extent that Trustee was not appointed until after any of the events alleged in this Complaint, the allegations are based on information and belief. *See Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017); *Miller v. City of Los Angeles*, 2014 U.S. Dist. LEXIS 198871, at *5 (C.D. Cal. Aug. 7, 2014); *Mireskandari v. Daily Mail and General Trust PLC*, 2013 U.S. Dist. LEXIS 194437, at *4 (C.D. Cal. July 31, 2013).

14.     Pursuant to the Order Confirming Modified First Amended Joint Chapter 11 Plan of Liquidation entered September 9, 2024, and the Notice of Occurrence of Effective Date of Modified First Amended Joint Chapter 11 Plan of Liquidation filed September 24, 2024, Richard A. Marshack became the Liquidating Trustee of the LPG Liquidation Trust effective September 24, 2024. [Bankr. Docket Nos. 1646 & 1762.]

**B.      Protective Order**

15.     On or about May 2, 2024, Plaintiff filed that certain Notice and Motion for Entry of Protective Order (the "Protective Order Motion"). On June 3, 2024, the Court entered its Order Granting Motion for Entry of Protective Order and the Protective Order [Bankr. Docket No. 1270] (the "Protective Order"). A true and accurate copy of the Protective Order is attached as **Exhibit 1** and incorporated here.

**C.      LPG**

16.     Pre-petition, Debtor was a law firm that provided consumer debt resolution services to more than 65,000 clients nationwide.

17.     Tony Diab ("Diab") operated, dominated and controlled Debtor at all relevant times.

18.     To obtain consumer clients, LPG contracted with marketing companies, who engaged in illegal capping and would advertise or call to solicit consumers to become clients of LPG in exchange for a percentage of the ACH Receivables collected by LPG from the consumers.

19.     The consumers would pay LPG over a period of time via monthly debits and/or ACH debits from their bank accounts.

///

//

4

20.     The monthly payments were meant to cover all legal services LPG provided to the consumers including validation of the debts, review of documents to determine enforceability, and court appearances to halt lawsuits to obtain judgments.

21.     In certain instances, LPG would file a lawsuit in an effort to eliminate a disputed debt or to prosecute affirmative claims held by the consumers.

22.     LPG mismanaged the consumers' monthly payments.

23.     Diab and others devised a plan to fraudulently transfer funds, client files, client funds and assets in the form of ACH Receivables (the "ACH Receivables" or "Accounts Receivable") out of LPG to third parties prior to the filing of bankruptcy.

24.     Diab used entities he controlled including, without limitation, Vulcan Consulting, LLC ("Vulcan") and B.A.T., Inc. dba Coast Processing ("Coast") to process payments from LPG consumer clients and to divert LPG consumer funds and ACH Receivables. Diab would use numerous ACH processing companies in order to easily transfer millions of dollars from Debtor to these entities he controlled, without oversight or detection, and to avoid payment disputes and complications. The money that flowed from Debtor through these bank account to Defendant consisted of Client Funds that Debtor funneled to these entities by means of the ACH processing companies. Debtor also made deposits into these entities bank account such that they received Client Funds directly from Debtor in addition to direct Accounts Receivable.

25.     The money that flowed from Debtor's bank account to CRI consisted of Client Funds.

26.     LPG's monthly revenue from client files was primarily received via ACH payments. In order to process ACH payments, LPG was required to enlist the services of ACH payment processing companies who handle high risk transactions. In this regard, Diab enlisted numerous ACH processing companies[1] in order to easily switch between different vendors and quickly transfer millions of dollars of LPG funds to entities he controlled, generally in less than three days from

---

[1] The ACH processing companies LPG also used and which Diab controlled includes, but is not limited to, EPPS; EquiPay; Merit Fund; Authorize.net; World Global; Optimum Bank; BankUnited; Marich Bein; Revolv3; Maverick Bankcard; FIS; and/or Guardian.

receipt of funds by the processing company. One reason for the plethora of processing company vendors was to avoid payment disputes and complications with the vendor itself. Switching between ACH processing companies further facilitated unauthorized double pulls, and made it more difficult for LPG clients to dispute, prevent or stop unauthorized ACH transactions, even where the Client disputed the transactions, had cancelled their services, and/or requested a refund.

27.     At all times, the Transfers constituted transfers of interests of the Debtor in property as that term is defined in 11 U.S.C. § 101(54).

**D.     CRI System, Inc. and Defendant Edward J. Quiroz, III**

28.     Upon information and belief, Defendant was at all relevant times, the controlling principal of CRI.

29.     CRI was one of the marketing companies that procured clients for LPG.

30.     LPG agreed to pay, and in fact, paid CRI a portion of the monthly payments received from consumers referred by CRI.

31.     CRI also entered into agreements pursuant to which it purported to sell accounts receivable back to LPG.

32.     Defendant's official title with CRI was "President".  A true and correct copy of CRI's listing on the Nevada Secretary of State website is attached hereto as **Exhibit 2**.

33.     As an executive of CRI, Defendant had control and authorized CRI's financial operations.

34.     For example, Defendant negotiated and entered into Affiliate Agreement(s) with LPG.

35.     As an executive of CRI, Defendant had knowledge of the business dealings with Debtor, including but not limited to the payment structure between consumers of Debtor and Debtor's ACH processing companies, and CRI.

36.     Defendant through authorizing actions of CRI, facilitated Debtor's criminal enterprise by advertising and marketing Debtor's services to potential consumers and thereafter enrolling consumers to pay for Debtor's services.

37.     Defendant used the business operations between CRI and Debtor for their personal gain.

**i.     Related Adversary Proceeding Against CRI; 8:24-ap-01023-SC**

38.     On or about February 9, 2024, Trustee filed the Complaint against CRI for: (1) Avoidance, Recovery, and Preservation of 2-Year Actual Fraudulent Transfers; (2) Avoidance, Recovery, and Preservation of 4-Year Actual Fraudulent Transfers; (3) Avoidance, Recovery, and Preservation of 2-Year Constructive Fraudulent Transfers; (4) Avoidance, Recovery, and Preservation of 4-Year Constructive Fraudulent Transfers;  (5) Avoidance, Recovery, and Preservation of Preferential Transfer Within Ninety Days of the Petition Date; and (6) Turnover. ("CRI Complaint"). [*See* Adv. Dkt. No. 1.]

39.     On April 5, 2024, Trustee filed a First Amended Complaint, alleging: (1) Avoidance, Recovery, and Preservation of 2-Year Actual Fraudulent Transfers; (2) Avoidance, Recovery, and Preservation of 2-Year Constructive Fraudulent Transfers; (3) Avoidance, Recovery, and Preservation of 4-Year Actual Fraudulent Transfers; (4) Avoidance, Recovery, and Preservation of 4-Year Constructive Fraudulent Transfers; (5) Avoidance, Recovery, and Preservation of Preferential Transfer Within Ninety Days of the Petition Date; (6) Turnover ("FAC"). [*See* Adv. Dkt. No. 7.]

40.     On or about April 8, 2024, Another Summons and Notice of Status Conference in Adversary Proceeding [LBR 7004-1] was issued by the Court that included a deadline for CRI to file a response to the FAC on May 8, 2024. [*See* Adv. Dkt. No. 9-1.]

41.     On or about April 23, Another Summons and Notice of Status Conference in Adversary Proceeding [LBR 7004-1] was issued by the Court that included a deadline for CRI to file a response to the FAC on May 23, 2024. [*See* Adv. Dkt. No. 12-1.]

42.     Trustee received no response.

43.     On or about May 9, 2024, Another Summons and Notice of Status Conference in Adversary Proceeding [LBR 7004-1] was issued by the Court that included a deadline for CRI to file a response to the FAC on June 7, 2024. [*See* Adv. Dkt. No. 16-1.]

44.    Trustee received no response and attempted service one last time at an alternate address.

45.    On or about June 24, 2024, Another Summons and Notice of Status Conference in Adversary Proceeding [LBR 7004-1] was issued by the Court that included a deadline for CRI to file a response to the FAC on July 24, 2024. [*See* Adv. Dkt. No. 20-1.]

46.    Trustee received a response asserting that the person named as agent for CRI (Defendant) did not reside at the alternate address. This was the only response received.

47.    All facts and allegations contained in the FAC are herein incorporated by reference.

48.    On July 25, 2024, Trustee requested that the Court enter default against CRI under Local Bankruptcy Rule 7055-1. [*See* Adv. Dkt. No. 24.]

49.    On July 25, 2024, the Clerk entered default against CRI under Local Bankruptcy Rule 7055-1(a). [*See* Adv. Dkt. No. 25.]

50.    On September 4, 2024, Trustee filed a Motion For Default Judgment. [*See* Adv. Dkt. No. 31.]

51.    On or about October 9, 2024, the Court entered Default Judgment (Without Prior Judgment) ("Default Judgment") against CRI. Trustee was awarded damages in amount of $536,832.08, plus interest at the rate set forth in 28 U.S.C. § 1961 per year from the date of entry of the judgment. The Default Judgment also stated that the judgment, either in the form of the property transferred or the value of the property, is recoverable by the Trustee for the benefit of the Estate. [*See* Adv. Dkt. No. 36.]

52.    On or about October 25, 2024, an Amended Default Judgment (Without Prior Judgment) ("Amended Default Judgment") was entered. The Amended Default Judgment was filed to recover the costs of filing the FAC for the Estate. The Trustee was awarded damages in the amount of $536,832.08, $350 for costs, plus interest at the rate set forth in 28 U.S.C. § 1961 per year from the date of entry of the judgment. The Default Judgment also stated that the judgment, either in the form of the property transferred or the value of the property, is recoverable by the Trustee for the benefit of the Estate. [*See* Adv. Dkt. No. 43.]

///

53.     Therefore, based on the Amended Default Judgment entered in the Trustee's favor, the Trustee's claims against CRI in the FAC were adjudicated on its merits and do not warrant further litigation in this matter. The only claim presented in this Complaint, which was not included in the FAC, is aiding and abetting the fraudulent transfers by the Defendant.

**E.     Payments to CRI System, Inc.**

54.     During the applicable reach-back period, Debtor paid CRI the sum of at least $536,832.08 between November 2022 and February 2023, subject to proof at trial (previously defined as the "Transfers"). A true and accurate list of the known payments made by Debtor to CRI is attached hereto as **Exhibit 3**.

55.     Not less than $309,410.66 of the Transfers from Debtor to CRI occurred during the 90-day preference period ("Preference Transfers"). A true and accurate list of the payments made during the Preference Transfers is attached hereto as **Exhibit 4**.

56.     The Preference Transfers are current as of February 2025.

**F.     LPG's Ponzi Scheme**

57.      This Court has recognized that Debtor operated a Ponzi scheme by using funds provided by former investors to attract new investors hoping for very high returns. See Dk. No. 1545, fn. 5.

58.     The Ponzi Scheme Presumption establishes a debtor's "intent to defraud future undertakers [investors] from the mere fact that a debtor was running a Ponzi scheme." *Merrill v. Abbott* (*In re Independent Clearing House Co.*), 77 B.R. 843, 860 (D. Utah 1987). "Knowledge to a substantial certainty constitutes intent in the eyes of the law, cf. Restatement (Second) of Torts § 8A (1963 & 1964), and a debtor's knowledge that future investors will not be paid is sufficient to establish his actual intent to defraud them." *Id.* A trustee in bankruptcy is not required to show that an operator of a Ponzi scheme was subjectively aware his Ponzi scheme was destined to fail. *In re EPD Inv. Co., LLC*, 114 F.4th at 1153 (9th Cir. 2024).

59.     "[I]f all the debtor receives in return for a transfer is the use of the defendant's money to run a Ponzi scheme, there is nothing in the bankruptcy estate for creditors to share." *In re Independent Clearing House Co.*, 77 B.R. at 859. In such a situation, the use of the defendant's

money cannot objectively be called "reasonably equivalent value." *Id*. Therefore, "[t]he trustee can avoid the transfers if they were preferential or fraudulent. Transfers to investors in a Ponzi scheme are preferential and fraudulent. Therefore, they constitute 'property of the estate,' and the trustee can recover them." *Id*. at 853 n.17 (citations omitted).

60.     Based on the Ponzi Scheme presumption the Court can infer that the Debtor had the intent to defraud investors within the meaning of 11 U.S.C. § 548(a)(1). Since the transfers by Debtor to third parties, including CRI, were made with the intent to further the Ponzi scheme, the Debtor did not receive an objectively reasonable equivalent value for such transfers, and the Trustee can avoid any such transfers because they were preferential and fraudulent.

61.     Moreover, insolvency is presumed as a matter of law where, as in this Bankruptcy Case, the debtor operated a Ponzi scheme. *See, e.g., Glob. Money Mgmt., L.P. v. McDonnold*, No. 06CV34, 2008 U.S. Dist. LEXIS 128733, at *15 (S.D. Cal. Feb. 27, 2008) (concluding that "if a Ponzi scheme is proven, then the debtor is proven insolvent from the time of its inception").

**G.    Criminal Enterprise**

62.     Debtor's operations, activities and transfers done in furtherance of the Ponzi scheme, including those in conjunction with its affiliates and its dealings with Defendants, also constituted a criminal enterprise.

63.     This, too, is evidenced by the Court's order in the 1046 Action wherein it denied the Motion of Greyson Law Center to Vacate the Preliminary Injunction previously entered in Debtor's main case, and the Court offered the opinion:

> Through the various proceedings and evidence produced in both the main case and the various adversary proceedings, including but not limited to various Motions for Temporary Restraining Orders, Preliminary Injunctions, Motions to Dismiss, a Motion for Appointment of a Chapter 11 Trustee, a Motion to Sell Assets, a multitude of pleadings filed by both secured and unsecured creditors (supported by evidence presented under oath) in support of their claims, and especially the pleadings and evidence presented by the "Watchdog of the Bankruptcy System" aka the Office of the United States Trustee (an arm of the United States Department of Justice), *it is clear to this Court that Debtor, since its pre-petition inception (and through the time of the appointment of the Chapter 11 Trustee) was in the Court's opinion, operating a criminal enterprise.*

(Case No. 8:23-bk-10571-SC; Adv. No. 8:23-ap-01046-SC [Bankr. Docket No. 1545, p. 3 (emphasis in original)].)

64.     As part of this criminal enterprise, Debtor and CRI, and thus Defendant, engaged in fraudulent transfers in furtherance of Debtor's scheme.

65.     Further, on information and belief, Defendant was advised of the illegality of the enterprise, and Defendant willfully participated. (*See Stipulation With Defendant Tony Diab For Entry of Judgment* [Adv. Proc. 23-ap-01046-SC, Dkt. 719, pp. 12-13 ¶44].)

**H.      LPG's Prepetition Creditors**

66.     Debtor was insolvent when each Transfer was made. This insolvency is evidenced in part by the fact that 14 separate UCC-1 statements were of record securing debts of the Debtor as of September 1, 2022. These statements remained unreleased as of the Petition Date. These statements either reflected secured liens against the Debtor's assets then owned or thereafter acquired or provided evidence of the assignment or sale of substantial portions of the Debtor's future income.

67.     When the Transfers were made, these prior UCC-1 statements secured the repayment of the following claimed amounts that are currently known to Trustee and are allegedly owed by the Debtor: (i) $2,374,004.82 owed to Fundura Capital Group as evidenced by Proof of Claim No. 335 purportedly secured by a UCC statement filed on or about May 19, 2021; (ii) approximately $15 million owed to MNS Funding, LLC as evidenced by Proof of Claim No. 1060 purportedly secured by a UCC statement filed on or about May 28, 2021; (iii) approximately $5,000,000 owed to Azzure Capital, LLC as evidenced by Proof of Claim No. 127 secured by a UCC statement filed on or about May 28, 2021; and (iv) approximately $1.5 million owed to Diverse Capital, LLC purportedly secured by UCC statements filed on or about September 15, 2021, and December 1, 2021.[2]

68.     As alleged above, LPG was borrowing against its assets and future income, often on unfavorable terms, not only to finance operations at LPG, but also to pay the fees owed to the marketing affiliates for providing it with consumer clients. Pursuant to the agreements with the

///

---

[2] Trustee reserves all rights, claims, and defenses with respect to these and any other purported secured or unsecured claims.

marketing companies, significant percentages of future payments were already promised to be paid to the marketing affiliates from whatever future income the Debtor would receive.

69.     In addition, on Debtor's Schedule E/F [Bankr. Docket No. 33], Debtor scheduled 11 unsecured creditors with priority unsecured claims totaling $374,060.04. These priority unsecured creditors include Indiana Dept. of Revenue, Dept. of Labor and Industries, Arizona Dept. of Economic Security, Arkansas Dept. of Finance & Admin., California Franchise Tax Board, Georgia Dept. of Labor, Internal Revenue Service, Mississippi Dept. of Revenue, Nevada Dept. of Taxation, Utah State Tax Commission, and Wisconsin Dept. of Revenue (collectively, "Priority Unsecured Creditors").

70.     Another group of creditors that Debtor listed on its Schedule E/F [Bankr. Docket No. 33] are nonpriority unsecured creditors. Those 58 creditors have scheduled claims totaling $141,439,158.05 and include Ajilon; Anthem Blue Cross; Azevedo Solutions Groups, Inc.; Carolina Technologies & Consulting Invoice; Collaboration Advisors; Credit Reporting Service Inc.; CT Corporation – Inv.; Debt Pay Pro; Document Fulfillment Services; EnergyCare, LLC; Exela Enterprise Solutions; First Legal Network, LLC; GHA Technologies Inc.; Harrington Electric, Inc.; Imagine Reporting; Juize, Inc.; Krisp Technologies, Inc.; Liberty Mutual; Marc Lemauviel – Allegra; MarkSYS Holdings, LLC; Netsuite-Oracle; Pitney Bowes; Rapid Credit, Inc.; SBS Leasing A Program of De Lage Landen; Security Solutions; Sharp Business Systems; Streamline Performance, Inc.; Thomson Reuters; Twilio, Inc.; Nationwide Appearance Attorneys; Executive Center, LLC; Outsource Accelerator, Ltd.; TaskUs Holdings, Inc.; Marich Bein, LLC; Validation Partners; MC DVI Fund 1, LLC; MC DVI Fund 2, LLC; Debt Validation Fund II, LLC; Tustin Executive Center; LexisNexus; JP Morgan Chase; Business Centers of America; Michael Schwartz; Anibal Colon Jr.; Kathleen Lacey; David Ulery; Kimberly Birdsong; Kevin Carpenter; Karen Suell; Gloria Eaton; Carolyn Beech; Debra Price; Kenneth Topp; Darcey Williamson, Trustee; James Hammett; Johnny Rizo; Beverly Graham; Kathleen Scarlett; and Geneve and Myranda Sheffield (collectively, "Nonpriority Unsecured Creditors" and, together with the Secured Creditors and Priority Unsecured Creditors, "Prepetition Creditors").

///

71.     As of the filing of this complaint, approximately 5,771 claims have been filed with the Bankruptcy Court. While Trustee has not reviewed all claims as of the date of this complaint, and reserves all rights to object to those claims, the total amount is in excess of approximately $717,507,462.29.

72.     Debtor's profit and loss statements reflect at least $115,000,000 of "Total Income" for the three-year period ending December 31, 2021, and based on information and belief that a substantial portion of this income had not actually been earned by Debtor. Proper accounting treatment of this unearned "income" would have been to record the unearned portion as cash received in client trust or IOLTA bank account with an offsetting client retainer liability account in the same amount. Thus, the unearned portion of the income would be present only on the balance sheet and not on Debtor's profit and loss statement. Debtor's balance sheets reflect two trust accounts, the highest balance of which was approximately $346,000 in November 2021. The balance sheets do not reflect a client retainer liability account. Thus, it appears that Debtor overstated its income during the three years ending December 31, 2021, though the extent to which it is overstated remains unknown. Further, assuming (as it appears to be the case) Debtor did not properly record its unearned income on its balance sheets using a trust account and offsetting client retainer liability account then Debtor's assets and liabilities on those balance sheets would be inaccurate.

73.     Based on information and belief Debtor's incoming cash was related to unearned income and should have been held in an appropriate trust account and recorded on its balance sheet with an offsetting client retainer payable account until it was earned. This treatment is further reinforced as appropriate by the fact that Debtor offered its clients a refund for unearned income. Thus, Debtor's incoming cash neither increased its assets (due to the offsetting client retainer liability in the same amount) nor would it increase its profitability until services were rendered and the income was actually earned.

///

///

///

///

///

///

///

**First Claim For Relief**

**Aiding and Abetting Fraudulent Transfers**

**[11 U.S.C. §§ 544(b), 550, and 551; Cal. Civ. Code §§ 3439.04(a), 3439.04(b), and 3439.07]**

**(Against Defendant)**

74.     Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 73 as though set forth in full.

75.     Defendant has possession or control over property of the Estate including, but not limited to, the Transfers made to CRI pursuant to illegal and unenforceable agreements.

76.     As noted, Defendant had knowledge of the fraudulent transactions, transfers, and agreements that were used to perpetuate and conceal the Ponzi scheme and fraudulent transfers.

77.     Defendant, with the foregoing knowledge, intended to, and did, help the Debtor and other scheme participants in perpetuating and concealing the Ponzi scheme and fraudulent transfers of money.

78.     Defendant assisted, and actually engaged in, LPG's commission of fraud and Ponzi scheme by coordinating, facilitating, and directing payments and transfers of monies and executing documents in furtherance of concealing the true nature of their fraudulent and criminal activity related to the Ponzi scheme.

79.     The injuries to Plaintiff, the Debtor's Estate and to its creditors directly, proximately and reasonably foreseeably resulting from and caused by these fraudulent transfers and Ponzi scheme include, without limitation, hundreds of thousands of dollars in improperly transferred and acquired monies.

80.     The property, including, but not limited to, the Transfers are not of inconsequential value to the Estate and recovering these funds is paramount to Debtor's ability to pay creditors.

81.     Plaintiff and the Debtor's Estate also suffered damages by incurring attorney's fees and costs associated with the prosecution of Defendants' unlawful activities.

///

///

///

**Reservation Of Rights**

Plaintiff reserves the right to bring all other claims or causes of action that Plaintiff may have against Defendants, on any and all grounds, as allowed under the law or in equity, including but not limited to, those claims not known by the Trustee at this time but that he may discover during the pendency of this adversary proceeding.

**Prayer**

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

1.      Awarding Plaintiff compensatory damages in an amount to be determined at trial;

2.      For pre-judgment and post-judgment interest;

3.      For costs incurred by Plaintiff in prosecuting this action; and

4.      For such other and further relief as the Court may deem just and proper.

DATED: March 19, 2025

Respectfully submitted,

DINSMORE AND SHOHL LLP

By: /s/ Jacob R. Bothamley
      Yosina M. Lissebeck
      Jacob R. Bothamley
Attorneys for Richard A. Marshack, Trustee of the
LPG Liquidation Trust

# EXHIBIT 1

1  CHRISTOPHER B. GHIO (259094)
   christopher.ghio@dinsmore.com
2  CHRISTOPHER CELENTINO (131688)
   christopher.celentino@dinsmore.com
3  YOSINA M. LISSEBECK (201654)
   yosina.lissebeck@dinsmore.com
4  DINSMORE & SHOHL LLP
5  655 West Broadway, Suite 800
   San Diego, California 92101
6  Tele:  619.400.0500
   Fax:  619.400.0501
7
8  Sarah S. Mattingly (Ky. Bar 94257)
   sarah.mattingly@dinsmore.com
9  DINSMORE & SHOHL, LLP
   101 S. Fifth Street, Suite 2500
10 Louisville, Kentucky 40202
   Tele: 859-425-1096
11 Fax: 502-585-2207
12 (Admitted pro hac vice)

13 Special Counsel to Richard A. Marshack

<div style="border:1px solid; text-align:center;">
FILED & ENTERED

JUN 03 2024

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY mccall      DEPUTY CLERK
</div>

14            **UNITED STATES BANKRUPTCY COURT**

15   **CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION**

16 In Re                              Case No: 23-bk-10571-SC

17                                    Chapter 11

18
   The Litigation Practice Group P.C.,   **ORDER GRANTING MOTION FOR**
19                                        **ENTRY OF PROTECTIVE ORDER AND**
            Debtor(s),                    **THE PROTECTIVE ORDER**
20

21                                    Date:   May 23, 2024
22                                    Time:   1:30 p.m.
                                      Judge:  Hon. Scott C. Clarkson
23                                    Place:  Courtroom 5C (via Zoom)[1]
                                              411 West Fourth Street
24                                            Santa Ana, CA 92701
25

26

27 _____

28 [1] Video and audio connection information for each hearing will be provided on Judge Clarkson's
   publicly posted hearing calendar, which may be viewed online at:
   http://ecf-ciao.cacb.uscourts.gov/CiaoPosted/?jid=SC.

                                              Exhibit 1, Page 17

The Court has read and considered the Notice of Motion and Motion for Entry of Protective Order (the "Motion") filed by Richard A. Marshack, in his capacity as the Chapter 11 Trustee (the "Trustee") of the Bankruptcy Estate ("Estate") of The Litigation Practice Group P.C., on May 2, 2024, pursuant to Federal Rule of Bankruptcy Procedure 7026 and Federal Rule of Civil Procedure 26(c)(1), as Dk. No. 1164 ("Motion"), and has found good cause to grant the Motion.

IT IS HEREBY ORDERED that:

1.      The Motion is granted;

2.      The below Protective Order shall apply to any contested matter arising in the main bankruptcy case and in all adversary proceedings filed by or against Trustee, present and future; and

3.      Govern the discovery conducted therein.

**PROTECTIVE ORDER**

**1.      DEFINITIONS**

1.1      "Confidential Information" as used in this Protective Order shall mean documents and other information (regardless of how generated, stored or maintained) that a Party or non-party reasonably believes to contain or reflect non-public financial or business information, bank records, financial records, such as social security numbers, non-public financial or personal information of a Party or non-party, account numbers, sensitive digital information and identifiers, information subject to confidentiality agreements or provisions other than this Protective Order, and other non-public research, development, or commercial information that derives value or avoids injury by virtue of not being known to the public.

1.2      This "Action" is defined and hereby means any contested matter arising in the main bankruptcy case and in all adversary proceedings filed by or against Trustee, present and future.

1.3      "Designating Party" means a Party or non-party that designates Confidential Information during the Action.

1.4      "Receiving Party" means a Party that receives Confidential Information during the Action.

Exhibit 1, Page 18

1.5    "Party" or "Parties" means person or entity subject to this Protective Order.

**2.    SCOPE OF THIS PROTECTIVE ORDER**

2.1    Unless otherwise ordered, this Protective Order shall govern certain documents and other products of discovery obtained in the Action from the Parties there to, and from third parties. As well as certain information copied or derived therefrom, excerpts, summaries or compilations thereof, including, but not limited to, documents voluntarily exchanged as part of early settlement discussions, documents produced pursuant to initial disclosures, requests authorized by the Federal Rules of Civil Procedure made applicable herein by the Federal Rules of Bankruptcy Procedure, answers to interrogatories, deposition transcripts, responses to requests for production, responses to requests for admission, subpoenas, affidavits, declarations, expert reports, and other such material and information as may be produced during the course of the Action and designated as Confidential Information.

**3.    DESIGNATION OF CONFIDENTIAL INFORMATION**

3.1    This Protective Order shall govern the production and handling of any Confidential Information in this Action. Any Party or non-party who produces Confidential Information in this Action may designate it as "Confidential" or "Attorneys' Eyes Only" consistent with the terms of this Protective Order. Whenever possible, the Designating Party must designate only those portions of a document, written discovery responses, deposition, transcript, or other material that contain the Confidential Information and refrain from designating entire documents. Regardless of any designations made hereunder, the Designating Party is not otherwise restricted from use or disclosure of its Confidential Information outside of this Action or for any business purposes. In addition, any Party may move to modify or seek other relief from any of the terms of this Protective Order if it has first tried in writing and in good faith to resolve its needs or disputes with the other Parties or Party as the case may be under the terms of this Protective Order. Further, nothing in this Protective Order shall prevent a Party from redacting documents consistent with the Federal Rules of Civil Procedure and utilizing the documents as needed through-out the Action.

3.2    <u>Application to Non-Parties:</u> Before a non-party is given copies of documents or materials designated as Confidential Information or Attorneys' Eyes Only as permitted hereunder, it

3

must first sign an acknowledgment to be bound to these terms that is attached hereto as <u>Exhibit</u> A; if it fails to do so, the Parties to this Action must resolve any such dispute before making disclosure of designated information as permitted hereunder to the non-party. If a non-party wishes to make designations hereunder, it must first sign attached <u>Exhibit A.</u>

3.3    <u>Timing and Provisional Protection:</u> Designations of Confidential Information may be made at any time. To avoid potential waiver of protection hereunder, the Designating Party should designate documents or materials containing Confidential Information at the time of production or disclosure, including on the record during the taking of any deposition. Deposition testimony will be deemed provisionally protected for a period of thirty (30) days after the transcript is released to the Parties by the court reporter, although the Parties may agree at any time to different timelines of provisional protection of information as Confidential or Attorneys' Eyes Only as part of one or more specific depositions. To retain any designations beyond the provisional period, a Designating Party must designate specific pages and lines of deposition testimony before the provisional period has expired. Such designations must be made in writing so that all counsel and court reporters may append the designation to all copies of the transcripts.

3.4    <u>Manner of Designation:</u> Confidential Information may be designated hereunder in any reasonable manner or method that notifies the Receiving Party of the designation level and identifies with specificity the information to which the designation applies. If made verbally, the Designating Party must promptly confirm the designation in writing. Whenever possible, the Designating Party should stamp, affix, or embed a legend of "CONFIDENTIAL" or "ATTORNEYS' EYES ONLY" on each designated page of the document or electronic image that contains Confidential Information.

**4.    CHALLENGES TO DESIGNATED INFORMATION**

4.1    In the event that a Receiving Party disagrees at any time with any designation(s) made by the Designating Party, the Receiving Party must first try to resolve such challenge in good faith on an informal basis with the Designating Party. The Receiving Party must provide written notice of the challenge and the grounds therefor to the Designating Party, who must respond in writing to the challenge within fifteen (15) days. At all times, the Designating Party carries the burden of establishing the propriety of the designation and protection level. Unless and until the challenge is

4

resolved by the Parties or ruled upon by the Court, the designated information shall remain protected under this Protective Order. The failure of any Receiving Party to challenge a designation does not constitute a concession that the designation is proper or an admission that the designated information is otherwise competent, relevant, or material.

**5.    LIMITED ACCESS/USE OF PROTECTED INFORMATION**

5.1    <u>Restricted Use:</u> Information that is produced or exchanged in the course of the Action and designated under this Protective Order may be used for preparation for trial and preparation for any appeal of any and all matters in the Action, as well as related settlement negotiations, and for no other purpose, without the written consent of the Designating Party. No Confidential Information may be disclosed to any person except in accordance with the terms of this Protective Order, unless the parties are co-counsel or have entered into joint defense agreements. All persons in possession of Confidential Information agree to exercise reasonable care with regard to the custody, use, or storage of such information to ensure that its confidentiality is maintained. This obligation includes, but is not limited to, the Receiving Party providing to the Designating Party prompt notice of the receipt of any subpoena that seeks production or disclosure of any designated information and consulting with the Designating Party before responding to the subpoena. Any use or disclosure of Confidential or Attorneys' Eyes Only information in violation of the terms of this Protective Order may subject the disclosing person or party to sanctions.

5.2    <u>Access to "Confidential" Information:</u> The Party(ies) and all persons subject to this Protective Order agree that information designated as "CONFIDENTIAL" may only be accessed or reviewed by the following:

a)    The Court, its personnel, and court reporters;

b)    Counsel of record, or co-counsel for any Party, or other party that has entered into a joint defense agreement in the Action and their employees who assist counsel of record, or co-counsel in the Action and are informed of the duties and obligations imposed hereunder;

c)    The Parties, including their clients, agents and employees who are assisting or have reason to know of the Action;

/ / /

d)      Experts or consultants employed by the Parties or their counsel, or co-counsel, for purposes of an Action, so long as each such expert or consultant has signed attached <u>Exhibit A;</u> and

e)      Other witnesses or persons with the Designating Party's consent or by court order.

5.3      <u>Access to "Attorneys' Eyes Only" Designations:</u> The Parties and all persons subject to this Protective Order agree that information designated as "ATTORNEYS' EYES ONLY" may only be accessed or reviewed by the following:

a)      The Court, its personnel, and court reporters;

b)      Counsel of record, or co-counsel for any Party, or other party that has entered into a joint defense agreement in the Action and their employees who assist counsel of record in the Action and are informed of the duties hereunder;

c)      In-house counsel for any Party in the Action and Richard A. Marshack, as Chapter 11 Trustee of The Litigation Practice Group P.C. who is informed of the duties and obligations imposed hereunder;

d)      Experts or consultants employed by the Parties or their counsel, or co-counsel for purposes of the Action,  and so long as each such expert or consultant has signed attached <u>Exhibit A;</u> and

e)      Other witnesses or persons to whom the Designating Party agrees in advance of disclosure or by court order.

5.4      <u>Non-Waiver Effect of Designations:</u> Neither the taking of, nor the failure to take, any action to enforce the provisions of this Protective Order, nor the failure to object to any designation, will constitute a waiver of any Party(ies)'s claim or defense in the Action or any other action or proceeding, including, but not limited to, a claim or defense that any designated information is or is not Confidential, is or is not entitled to particular protection, or embodies or does not embody information protectable by law.

5.5      <u>In-Court Use of Designated Information:</u> If information designated under this Protective Order will or may be offered in evidence at a hearing or trial related to any matter in the Action, then the offering party must give advance notice to the party or non-party that designated prior to offering the information so that any use or disclosure may be addressed in accordance with

the Court's case-management or other pre-trial order, or by a motion *in limine.*  Nothing in this Protective Order shall be construed as a waiver by a Party of any objections that may be raised as to the admissibility at trial of any evidentiary materials.

## 6.    CLAW-BACK REQUESTS

6.1    <u>Failure to Make Designation:</u>  If, at any time, a Party or non-party discovers that it produced or disclosed Confidential Information without designation, it may promptly notify the Receiving Party and identify with particularity the Confidential Information to be designated and the level of designation (the claw-back notification). The Receiving Party may then request substitute production of the newly-designated information. Within thirty (30) days of receiving the claw-back notification, the Receiving Party must: (1) certify to the Designating Party it has appropriately marked or, if substitute production has been requested, destroyed all unmarked copies that it received, made, and/or distributed; and (2) if it was practicably unable to mark or destroy any information because disclosures occurred while the Receiving Party was under no duty of confidentiality under the terms of this Protective Order regarding that information, the Receiving Party must reasonably provide as much information as practicable to aid the Designating Party in protecting the information, consistently with the Receiving Party's attorney-client, work-product, and/or trial-preparation privileges.

6.2    <u>Inadvertent Production of Privileged Information:</u> If, at any time, a Party discovers that it produced information that it reasonably believes is subject to protection under the attorney/client, work-product, or trial-preparation privileges, then it must promptly notify each Receiving Party of the claim for protection, the basis for it, amend its privilege log accordingly, and comply with Fed. R. Civ. P. 26(b)(5). Whenever possible, the producing party must produce substitute information that redacts the information subject to the claimed protection. The Receiving Party must thereupon comply with Fed. R. Civ. P. 26(b)(5)(B) as to the information subject to the claimed protection.

/ / /

/ / /

/ / /

### 7.    DURATION/CONTINUED RESTRICTIONS

7.1    <u>Handling of Designated Information Upon Conclusion of the Main Bankruptcy Case:</u>
Upon conclusion of the Main Bankruptcy Case, by way of dismissal or closing of the case, the Designating Party(ies) is/are responsible for ensuring that any Party or person to whom the Designating Party shared or disclosed designated information in any of the matters under the Action returns or destroys all of its copies, regardless of the medium in which it was stored. No witness or Party may retain designated information that it received from any other Party or non-party under this Protective Order; only counsel of record, or co-counsel, are the authorized agents who may retain one copy for their respective legal files, and who must also describe to the Designating Party the extra steps taken to protect its legal file containing paper and/or electronic copies of the designated information so that it is not accessed, used, or disclosed inconsistently with the obligations under this Protective Order. This provision does not apply to the Court or Court staff. Moreover, this provision does not apply to Trustee, who may retain and use – consistent with this Order – Confidential Information received in any Action during the entirety of the Bankruptcy.

7.2    <u>Continued Restrictions Under this Protective Order:</u> The restrictions on disclosure and use of Confidential Information shall survive the conclusion of the Bankruptcy case and any matter in the Action.

### 8.    PRIVILEGED OR PROTECTED INFORMATION

8.1    Nothing in this Protective Order shall require disclosure of information that is protected by the attorney-client privilege, the work-product protection, or any other legally cognizable privilege (a "Privilege or Protection").  If information subject to a claim of Privilege or Protection is inadvertently produced, pursuant to Federal Rule of Evidence 502(d) such production shall not constitute a waiver of, or estoppel as to, any claim of Privilege or Protection for such information or any other information that may be protected from disclosure by a Privilege or Protection in any proceeding.

8.2    If a Party receives a document that appears to be subject to a Privilege or Protection, then it shall refrain from examining the document any more than is essential to ascertain if it is privileged or protected and shall promptly notify the producing Party in writing that the receiving

8

Party possesses material that appears to be subject to a Privilege or Protection. The producing Party shall have seven (7) days after receiving such notice to assert a Privilege or Protection over the identified material. If the producing Party does not assert a claim of Privilege or Protection within the seven (7)-day period, the material in question shall be deemed not privileged or protected.

8.3    If a producing Party has produced a document subject to a claim of Privilege or Protection, upon written request by the producing Party, the document for which a claim of Privilege or Protection is made shall be sequestered or destroyed to the extent reasonably practicable, and the receiving Party shall not use the document for any purpose other than in connection with analyzing or disputing a claim of Privilege or Protection or in connection with a motion to compel the production of the document.

8.4    The receiving Party sequestering or destroying such material may then move the Court for an order compelling production of the material. The applicable producing Party bears the burden of establishing the applicable Privilege or Protection of any clawed-back document or information as and to the same extent that it would have borne such burden had it not produced the document or information.  Nothing in this Protective Order shall limit the Court's right or any receiving Party's right to request an in camera review of any information subject to a claim of Privilege or Protection.

###

Date: June 3, 2024

Scott C. Clarkson
United States Bankruptcy Judge

9

1
2
3
4
5
6
7                                    EXHIBIT "A"
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

1   Christopher B. Ghio (State Bar No. 259094)
    Christopher Celentino (State Bar No. 131688)
2   Yosina M. Lissebeck (State Bar No. 201654)
    **DINSMORE & SHOHL LLP**
3   655 West Broadway, Suite 800
    San Diego, CA 92101
4   Telephone:  619.400.0500
    Facsimile:  619.400.0501
5   christopher.ghio@dinsmore.com
    christopher.celentino@dinsmore.com
6   yosina.lissebeck@dinsmore.com

7   Sarah S. Mattingly (Ky. Bar 94257)
    DINSMORE & SHOHL, LLP
8   101 S. Fifth Street, Suite 2500
    Louisville, KY 40202
9   Telephone: 859-425-1096
    Facsimile: 502-585-2207
10  Sarah.mattingly@dinsmore.com
    (Admitted pro hac vice)
11
    Special Counsel to Richard A. Marshack,
12  Chapter 11 Trustee

13

14

15                **UNITED STATES BANKRUPTCY COURT**

16                **CENTRAL DISTRICT OF CALIFORNIA**

17

18  In Re                          |   Case No. 8:23-BK-10571-SC

19                                 |   Chapter 11

20  The Litigation Practice Group P.C.,  |   **EXHIBIT A TO STIPULATED ORDER**

21          Debtor(s),             |   Date:   May 23, 2024

22                                 |   Time:   1:30 p.m.

23                                 |   Judge:  Hon. Scott C. Clarkson

24                                 |   Place:  Courtroom 5C[1] - Via Zoom
                                   |           411 W. Fourth Street
25                                 |           Santa Ana, CA  92701

26

27

28  _____
    [1] Video and audio connection information for each hearing will be provided on Judge Clarkson's
    publicly posted hearing calendar, which may be viewed online at:
    http://ecf-ciao.cacb.uscourts.gov/CiaoPosted/?jid=SC.

                                   1

This is to certify that:

      (a)     I am being given access to Confidential Information pursuant to the Stipulated Protective Order that was entered into the main bankruptcy case for Litigation Practice Group, but which is binding and controlling as set forth by the Court's Order on any and all contested matters and any and all litigation commenced by Trustee;

      (b)     I have read the Stipulated Protective Order; and

      (c)     I agree to be bound by the terms and conditions thereof, including, without limitation, to the obligations regarding the use, non-disclosure and return of such Confidential Information. I further agree that in addition to being contractually bound by the Stipulated Protective Order, I am subject to the jurisdiction of the above reference Court for any violation thereof.

Date: _____


                        _____
                                Signature


                        _____
                                 Printed Name

# EXHIBIT 2

## Entity Information

### Entity Information

**Entity Name:**

CRI SYSTEM, INC.

**Entity Number:**

E27061242022-0

**Entity Type:**

Domestic Corporation (78)

**Entity Status:**

Revoked

**Formation Date:**

10/21/2022

**NV Business ID:**

NV20222607563

**Termination Date:**

**Annual Report Due Date:**

10/31/2023

**Compliance Hold:**

### Registered AGENT INFORMATION

**Name of Individual or Legal Entity:**

Eddie Quiroz

**Status:**

Active

**CRA Agent Entity Type:**

**Registered Agent Type:**

Non-Commercial Registered Agent

**NV Business ID:**

**Office or Position:**

**Jurisdiction:**

**Street Address:**

1455 Tropicana Ste 800, Las Vegas, NV, 89119, USA

**Mailing Address:**

**OFFICER INFORMATION**

☐ **View Historical Data**

| Title | Name | Address | Last Updated | Status |
|-------|------|---------|--------------|--------|
| President | Edward J Quiroz III | 1455 Tropicana Ave, 800, Las Vegas, NV, 89119, USA | 10/21/2022 | Active |

**Page 1 of 1, records 1 to 1 of 1**

**CURRENT SHARES**

| Class/Series | Type | Share Number | Value |
|--------------|------|--------------|-------|
| | Common | 1,000,000 | 1 |

**Page 1 of 1, records 1 to 1 of 1**

Number of No Par Value Shares:

**0**

Total Authorized Capital:

**1,000,000**

Filing History          Name History          Mergers/Conversions

Return to Search      Return to Results

# EXHIBIT 3

In re: The Litigation Practice Group PC
Disbursement Details by Payee
4 Years Pre-Petition (03/20/2019 - 03/20/2023)

**GROBSTEIN TEEPLE**

| Bank Name | Account Name | Account Number | Statement Date | Transaction Date | Check Number | Debit/Charge | Memo |
|---|---|---|---|---|---|---|---|
| Chase | The Litigation Practice Group PC | 3158 | 11/30/2022 | 11/14/2022 | | 75,000.00 | Book Transtar Debit NC: Cri System, Inc. Las Vegas NV 89119-8325 US Rot: Capitol Commitment - Payment 1 ot 4 Tm: 839680031 4Jo |
| Chase | The Litigation Practice Group PC | 3158 | 11/30/2022 | 11/23/2022 | | 75,000.00 | Book Tranator Debit NC: Cri System. Inc. Las Vegas NV 89119-8326 US Ret: Lead Generation Tm. 5269300327Jo |
| Chase | The Litigation Practice Group PC | 3133 | 12/31/2022 | 12/5/2022 | | 953.33 | Book Trsnster Debit NC: Cri System, Inc. Las Vegas NV 89119-8326 US Ret: Weekly Disbursement Tm 5572600339Jo |
| Chase | The Litigation Practice Group PC | 3133 | 12/31/2022 | 12/7/2022 | | 75,000.00 | Book Transfer Debit NC: Cri System. Inc. Las Vegas NV 89119-8326 US Ret: Payroll Tm: 6894900341Jo |
| Chase | The Litigation Practice Group PC | 3133 | 12/31/2022 | 12/9/2022 | | 439.81 | Book Trsnster Debit NC: Cmi System. Inc. Las Vegas NV 89119-8326 US Ret: Weekly Disbursement Tm: 6581 000343Jo |
| Chase | The Litigation Practice Group PC | 3133 | 12/31/2022 | 12/19/2022 | | 1,028.28 | Book Trenster Debit NC: Cri System, Inc. Las Vegas NV 89119-0326 US Ret: Weekly Disbursement Tm 6057400353Jo |
| Chase | The Litigation Practice Group PC | 3133 | 12/31/2022 | 12/27/2022 | | 2,297.39 | Book Trenster Debit NC: Cri System. Inc. Lea Vegas NV 89119-8328 US Ret: Weekly Disbursement Tm: 4801 00036iJo |
| Bank of America | Litigation Practice Group PC | 6457 | 12/31/2022 | 12/27/2022 | | 333.00 | TRANSFER LITIGATION PRACTICE :CRI System Inc Confirmation# 0217623694 |
| Chase | The Litigation Practice Group PC | 3133 | 12/31/2022 | 12/30/2022 | | 1,641.38 | Book Trenster Debit NC: Cri System, Inc. Lee Vegas NV 89119-8326 US Ret: Weekly Disbursement Tm: 5571 900364Jo |
| Chase | The Litigation Practice Group PC | 3133 | 1/31/2023 | 1/3/2023 | | 15,000.00 | Book Transfer Debit NC: Cmi System, Las Vegas NV 89119-6326 US Ret: 12 30.22 Tm: 6047100364Jo |
| Bank of America | Litigation Practice Group PC | 6457 | 1/31/2023 | 1/5/2023 | | 60,000.00 | WIRETYPE:WIRE OUT DATE:20230i05 TIME:1057 ETTRN:20230i0500321053 SERVICE REF:39i 579 BNF:CRI SYSTEM INC ID:█████ BNF BKJPMORGAN CHASE BANK. N. ID:█████ PMT DET:420283464 FINAL PAYME NT |
| Chase | The Litigation Practice Group PC | 3133 | 1/31/2023 | 1/6/2023 | | 1,808.99 | Book Transfer Debit NC: Cri System, Inc. Lee Vegee NV 89119-6326 US Ret: Weekly Disbursement Tm: 471 7400006Jo |
| Bank of America | Litigation Practice Group PC | 6457 | 1/31/2023 | 1/18/2023 | | 7,500.00 | WIRE TYPE:WIRE OUT DATE23O1 18 T1ME0528 ET TRN:202301 1700846980 SERVICE REF233407 BNF:CRI SYSTEM INC ID:█████002 BNF BKJPMORGAN CH ASE BANK, N. ID:█████ PMT DET:421 8521 58 |
| Bank of America | Litigation Practice Group PC | 6457 | 1/31/2023 | 1/19/2023 | | 7,500.00 | WIRE TYPE:WIRE OUT DATE23O1 19 TIME:0448 ET TRN:202301 1900096282 SERVICE REF223539 BNF:CRI SYSTEM INC ID:█████ BNF BKJPMORGAN CH ASE BANK, N. ID:█████2 PMT DET:42201 8338 |
| Chase | The Litigation Practice Group PC | 3133 | 1/31/2023 | 1/24/2023 | | 3,493.88 | Book Transfer Debit NC: Cri System, Inc. Las Vegas NV 89119-8326 US Ret: Weekly Disbursement Ire 5570400024Jo |
| Chase | The Litigation Practice Group PC | 3133 | 1/31/2023 | 1/26/2023 | | 5,000.00 | Book Transfer Debit NC: Cri System, Inc. Las Vegas NV 89119-8326 US Ire: 5991 300026Jo |
| Bank of America | Litigation Practice Group PC | 6457 | 1/31/2023 | 1/26/2023 | | 100,000.00 | WIRE TYPEWIRE OUT DATE230126 TIME1 532 ETTRN20230126000440689 SERVICE REF:400134 BNF:CRI SYSTEM, INC ID:█████ BNF BKJPMORGAN CHASE BANK, N. ID:█████ PMT DET:M9ZG6E5LP |
| Bank of America | Litigation Practice Group PC | 6457 | 2/28/2023 | 2/7/2023 | | 100,000.00 | WIRE TYPEWIRE OUT DATEQ3O2O7 TIME:1 614 ET TRNQ0232027004333743 SERVICE REF:469954 BNF:CRI SYSTEMS INC ID:█████2 BNF BKJPMORGAN C HASE BANK, N. 10:█████ PMT DET:424837802 FINAL PAYM ENT |
| Chase | The Litigation Practice Group PC | 3133 | 2/28/2023 | 2/7/2023 | | 2,376.37 | Book Transfer Debit NC: Cri System, Inc. Las Vegas NV 89119-8326 US Ret: Weekly Disbursement Trn: 6667200038Jo |
| Bank of America | Litigation Practice Group PC | 6538 | 2/28/2023 | 2/9/2023 | | 2,459.65 | WIRE TYPE:WIRE OUT DATE:230209 TIME:1 623 ET TRN:2O23020900445606 SERVICE REFO1 4947 BNF:CRI SYSTEMS INC ID:█████ BNF BKJPMORGAN CHASE BANK, NA 1D█████ PMT DETA8JCSATSF POP Other |
| | | | | | | **536,832.08** | |

1 of 1

DRAFT FORM - SUBJECT TO CHANGE

Exhibit 3, Page 34

# EXHIBIT 4

In re: The Litigation Practice Group PC
Disbursement Details by Payee
90 Days Pre-Petition (12/20/2022 - 03/20/2023)



CRI System, Inc.

| Bank Name | Account Name | Account Number | Statement Date | Transaction Date | Check Number | Credit/Deposit | Debit/Charge | Memo |
|---|---|---|---|---|---|---|---|---|
| Chase | The Litigation Practice Group PC | 3133 | 12/31/2022 | 12/27/2022 | | | 2,297.39 | Book Transfer Debit NC: Cri System, Inc. Lea Vegas NV 89119-8328 US Ret: Weekly Disbursement Tm: 4801 00036iJo |
| Bank of America | Litigation Practice Group PC | 6457 | 12/31/2022 | 12/27/2022 | | | 333.00 | TRANSFER LITIGATION PRACTICE :CRI System Inc ConfIrmation# 0217623694 |
| Chase | The Litigation Practice Group PC | 3133 | 12/31/2022 | 12/30/2022 | | | 1,641.38 | Book Transfer Debit NC: Cri System, Inc. Lee Vegee NV 89119-8326 US Ret: Weekly Disbursement Tm: 5571 900364Jo |
| Bank of America | Litigation Practice Group PC | 6457 | 12/31/2022 | 12/30/2022 | | 333.00 | | REVERSAL LITIGATION PRACTICE :CRI System Inc ConfirmatIonll 0240632825 valuable information on a wide of business topics |
| Chase | The Litigation Practice Group PC | 3133 | 1/31/2023 | 1/3/2023 | | | 15,000.00 | Book Transfer Debit NC: Cmi System, Inc. Las Vegas NV 89119-6326 US Ret: 12 30.22 Tm: 6047100364Jo |
| Bank of America | Litigation Practice Group PC | 6457 | 1/31/2023 | 1/5/2023 | | | 60,000.00 | WIRETYPE:WIRE OUT DATE230105 TIME:1057 ETTRN:20230i0500321053 SERVICE REF:39i 579 BNF:CRI SYSTEM INC ID:◼2 BNF BKJPMORGAN CHASE BANK. N. ID:◼ PMT DET:420283464 FINAL PAYME NT |
| Chase | The Litigation Practice Group PC | 3133 | 1/31/2023 | 1/6/2023 | | | 1,808.99 | Book Transfer Debit NC: Cri System, Inc. Lee Vegee NV 89119-6326 US Ret: Weekly Disbursement Tm: 471 7400006Jo |
| Bank of America | Litigation Practice Group PC | 6457 | 1/31/2023 | 1/18/2023 | | | 7,500.00 | WIRE TYPE:WIRE OUT DATE23O1 18 T1ME0528 ET TRN:202301 1700846980 SERVICE REF23407 BNF:CRI SYSTEM INC ID:◼ BNF BKJPMORGAN CH ASE BANK, N. ID:◼ PMT DET:421 8521 58 |
| Bank of America | Litigation Practice Group PC | 6457 | 1/31/2023 | 1/19/2023 | | | 7,500.00 | WIRE TYPE:WIRE OUT DATE23O1 19 TIME:0448 ET TRN:202301 1900096282 SERVICE REF223539 BNF:CRI SYSTEM INC ID:◼ BNF BKJPMORGAN CH ASE BANK, N. ID:◼2 PMT DET:42201 8338 |
| Chase | The Litigation Practice Group PC | 3133 | 1/31/2023 | 1/24/2023 | | | 3,493.88 | Book Transfer Debit NC: Cri System, Inc. Las Vegas NV 89119-8326 US Ref: Weekly Disbursement Ire 5570400024Jo |
| Chase | The Litigation Practice Group PC | 3133 | 1/31/2023 | 1/26/2023 | | | 5,000.00 | Book Transfer Debit NC: Cri System, Inc. Las Vegas NV 89119-8326 US 5991 300026Jo |
| Bank of America | Litigation Practice Group PC | 6457 | 1/31/2023 | 1/26/2023 | | | 100,000.00 | WIRE TYPE:WIRE OUT DATE230126 TIME1 532 ETTRN2023012600440689 SERVICE REF:400134 BNF:CRI SYSTEM, INC ID:◼ BNF BKJPMORGAN CHASE BANK, N. ID:◼ PMT DET:M9ZG6E5LP |
| Bank of America | Litigation Practice Group PC | 6457 | 2/28/2023 | 2/7/2023 | | | 100,000.00 | WIRE TYPEWIRE OUT DATEQ3O2O7 TIME:1 614 ET TRNQ023020700433743 SERVICE REF:469954 BNF:CRI SYSTEMS INC ID:◼ BNF BKJPMORGAN C HASE BANK, N. 10◼ PMT DET:424837802 FINAL PAYM ENT |
| Chase | The Litigation Practice Group PC | 3133 | 2/28/2023 | 2/7/2023 | | | 2,376.37 | Book Transfer Debit NC: Cri System, Inc. Las Vegas NV 89119-8326 US Ref: Weekly Disbursement Trn: 6667200038Jo |
| Bank of America | Litigation Practice Group PC | 6538 | 2/28/2023 | 2/9/2023 | | | 2,459.65 | WIRE TYPE:WIRE OUT DATE:230209 TIME:1 623 ET TRN:2O23020900445606 SERVICE REFO1 4947 BNF:CRI SYSTEMS INC ID:◼ BNF BKJPMORGAN CHASE BANK, NA 10◼ PMT DETA8JCSATSF POP Other |
| | | | | | | 333.00 | 309,410.66 | |

DRAFT FORM - SUBJECT TO CHANGE

Exhibit 4, Page 36

# ADVERARY PROCEEDING COVER SHEET

B1040 (FORM 1040) (12/24)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS<br>Richard A. Marshack, Trustee of the LPG Liquidation Trust | DEFENDANTS<br>Edward J. Quiroz, III, an Individual |
|---|---|

| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>Yosina M. Lissebeck (SBN 201654)<br>Jacob R. Bothamley (319457<br>DINSMORE & SHOHL LLP<br>655 West Broadway, Suite 800<br>San Diego, CA 92101    Telephone (619) 400-0500<br>yosina.lissebeck@dinsmore.com<br>Jacob.bothamely@dinsmore.com | ATTORNEYS (If Known) |
|---|---|

**PARTY** (Check One Box Only)  — Plaintiff side
☐ Debtor    ☐ U.S. Trustee/Bankruptcy Admin
☐ Creditor    ☐ Other
☒ Trustee

**PARTY** (Check One Box Only)  — Defendant side
☐ Debtor    ☐ U.S. Trustee/Bankruptcy Admin
☐ Creditor    ☒ Other
☐ Trustee

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
**(1) Aiding and Abetting**

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(a) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☒ 12-Recovery of money/property - §547 preference
☒ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(b) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(c) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(d) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(e) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(f) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(f) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(g) – Injunctive Relief**
☐ 71-Injunctive relief- imposition of stay
☐ 72-Injunctive relief - other

**FRBP 7001(h) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(i) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(j) Determination of Removed Action**
☐ 01-Determination of remove d claim or cause

**Other**
☐ SS-SIPA Case - 15 U.S.C. §§78aaa *et.seq.*
☒ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ 536,832.08 |

Other Relief Sought

B1040 (FORM 1040) (12/24)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>The Litigation Practice Group P.C. | BANKRUPTCY CASE NO.<br>8:23-bk-10571-SC | |
| DISTRICT IN WHICH CASE IS PENDING<br>Central District of California | DIVISION OFFICE<br>Santa Ana | NAME OF JUDGE<br>Scott C. Clarkson |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br>/s/ Jacob R. Bothamley | | |
| DATE<br>March 19, 2025 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Yosina M. Lissebeck<br>Jacob R. Bothamley<br>Attorneys for Plaintiff, Richard A. Marshack, Trustee of the<br>LPG Liquidation Trust | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.