CHRISTOPHER CELENTINO (131688)
Christopher.Celentino@dinsmore.com
YOSINA M. LISSEBECK (201654)
Yosina.Lissebeck@dinsmore.com
CHRISTOPHER B. GHIO (259094)
Christopher.Ghio@dinsmore.com
JACOB R. BOTHAMLEY (319457)
Jacob.Bothamley@dinsmore.com
**DINSMORE & SHOHL LLP**
655 West Broadway, Suite 800
San Diego, California 92101
Tele: 619.400.0500
Fax:  619.400.0501

Attorneys for Plaintiff Richard A. Marshack,
Trustee of the LPG Liquidation Trust

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>THE LITIGATION PRACTICE GROUP P.C.,<br><br>Debtor.<br><br>―――――――――――――――――――<br><br>Richard A. Marshack, Trustee of the LPG Liquidation Trust,<br><br>Plaintiff,<br><br>v.<br><br>Brandon Turner, an Individual, and Mathew Bowyer, an Individual,<br><br>Defendants. | Bankr. Case No. 8:23-bk-10571-SC<br><br>Chapter 11<br><br>Adv. Proc. No.<br><br>COMPLAINT FOR:<br><br>(1) AVOIDANCE, RECOVERY, AND PRESERVATION OF 4-YEAR ACTUAL FRAUDULENT TRANSFERS;<br><br>(2) AVOIDANCE, RECOVERY, AND PRESERVATION OF 4-YEAR CONSTRUCTIVE FRAUDULENT TRANSFERS;<br><br>(3) AVOIDANCE, RECOVERY, AND PRESERVATION OF 2-YEAR ACTUAL FRAUDULENT TRANSFERS;<br><br>(4) AVOIDANCE, RECOVERY, AND PRESERVATION OF 2-YEAR CONSTRUCTIVE FRAUDULENT TRANSFERS;<br><br>(5) TURNOVER;<br><br>(6) ACCOUNTING; and<br><br>(7) AIDING AND ABETTING FRAUD |

For his *Complaint for (1) Avoidance, Recovery, and Preservation of 4-Year Actual Fraudulent Transfers; (2) Avoidance, Recovery, and Preservation of 4-Year Constructive Fraudulent Transfers; (3) Avoidance, Recovery, and Preservation of 2-Year Actual Fraudulent Transfers; (4) Avoidance, Recovery, and Preservation of 2-Year Constructive Fraudulent Transfers; (5) Turnover;  (6)Accounting; and (7) Aiding and Abetting Fraud*, plaintiff Richard A. Marshack, the former Chapter 11 Trustee for the bankruptcy estate ("Estate") of debtor The Litigation Practice Group P.C. ("Debtor" or "LPG") and current liquidating trustee of the LPG Liquidation Trust (collectively "Trustee" or "Plaintiff") in the above-captioned bankruptcy case ("Bankruptcy Case"), alleges and avers as follows:

### Statement of the Case

1.    A bankruptcy trustee can avoid a debtor's fraudulent transfers of property. In this case, while insolvent, Debtor transferred at least $730,000 (the "Transfers") to defendant, Brandon Turner ("Defendant Turner") within four years prior to the filing of Debtor's bankruptcy petition on March 20, 2023 (the "Petition Date").

2.    On information and belief, defendant Mathew Bowyer ("Defendant Bowyer") was an investor Coast Processing[1] and the Transfers were related to or made on account of that investment.

3.    Based on information and belief, Defendant Bowyer also ran a large illegal gambling ring.

4.    Debtor's records show that it transferred money to Defendant Turner.

5.    On information and belief, at least a portion of the Transfers were intended as payment to Defendant Bowyer as either a return from Defendant Bowyer's investment in Coast Processing, or for use in Defendant Bowyer's gambling operation.

6.    Under these facts, the Trustee can avoid the Transfers and recover from Defendant Turner as the "initial" transferee of such transfers and/or from Defendant Bowyer as a subsequent transferee who did not take in good faith, for value, and without knowledge of the avoidability of such transfers.

---

[1] On information and belief, Defendant Bowyer was actually an investor in LPG. However, because LPG was soliciting investments from non-lawyers, investments were made in entities such as Coast Processing, a dba for B.A.T., Inc. (defined below).

**Statement of Jurisdiction and Venue**

7.      The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334 in that this action arises in and relates to the bankruptcy case pending in the United States Bankruptcy Court for the Central District of California, Santa Ana Division, entitled *In re The Litigation Practice Group, P.C.*, Bankruptcy Case Number 8:23-bk-10571-SC.

8.      Plaintiff has standing to bring this adversary proceeding pursuant to Provision V.E. of the Modified First Amended Joint Chapter 11 Plan of Liquidation, confirmed by the Court on September 9, 2024, as Dk. No. 1646. The Plan provides that the Estate's litigation claims, including avoidance claims, were transferred to the LPG Liquidating Trust. Plaintiff brings these claims on behalf of the Trust.

9.      This adversary proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (E), (H), and (O), and this Court has Constitutional authority to enter a final judgment on these claims. To the extent any claim for relief contained herein is determined not to be a non-core proceeding or a *Stern*-claim, Plaintiff consents to the entry of final judgment and orders by the Bankruptcy Court.

10.     Venue properly lies in the Central District of California in that this adversary proceeding arises in or is related to a case under Title 11 of the United State Code as provided in 28 U.S.C. §§ 1408 and 1409.

**Parties**

11.     The Litigation Practice Group P.C. (previously defined as "Debtor") is a corporation organized under the laws of the State of California, that had its principal place of business in Tustin, California. During all relevant times prior to bankruptcy, Daniel S. March ("Mr. March") was the Chief Executive Officer of Debtor.

12.     Richard A. Marshack (previously defined as "Trustee" or "Plaintiff") was the duly-appointed, qualified, and acting Chapter 11 Trustee for the Estate.  All claims have been transferred to the Liquidating Trust pursuant to the confirmed plan and Plaintiff brings this action solely in his capacity as the former Chapter 11 Trustee and current Liquidating Trustee of the LPG Liquidation Trust for the benefit of Debtor's Estate and its creditors.

13.     Plaintiff alleges that, at all relevant times, Defendant Turner was an individual residing in the State of California or Colorado. Defendant Turner's current address is 11301 Rodeo Cir, Parker, Colorado 80138-7351.

14.     Plaintiff alleges that at all relevant times Defendant Bowyer was an individual residing in the State of California. On information and belief, Defendant Bowyer's current address is 27321 Via Priorato, San Juan Capistrano, CA 92675-1882.

**General Allegations**

**A.     The Bankruptcy Case**

15.     On March 20, 2023 (previously defined as the "Petition Date"), the Debtor filed a voluntary petition under Chapter 11 of Title 11 of the United States Code, initiating bankruptcy Case No. 8:23-bk-10571-SC ("Bankruptcy Case") in the United States Bankruptcy Court for the Central District of California, Santa Ana Division.

16.     On May 8, 2023, Trustee accepted his appointment as the Chapter 11 Trustee in the Bankruptcy Case. To the extent that Trustee was not appointed until after any of the events alleged in this Complaint, the allegations are based on information and belief. *See Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017); *Miller v. City of Los Angeles*, 2014 U.S. Dist. LEXIS 198871, at *5 (C.D. Cal. Aug. 7, 2014); *Mireskandari v. Daily Mail and General Trust PLC*, 2013 U.S. Dist. LEXIS 194437, at *4 (C.D. Cal. July 31, 2013).

17.     Pursuant to the Order Confirming Modified First Amended Joint Chapter 11 Plan of Liquidation entered September 9, 2024, and the Notice of Occurrence of Effective Date of Modified First Amended Joint Chapter 11 Plan of Liquidation filed September 24, 2024, Richard A. Marshack became the Liquidating Trustee of the LPG Liquidation Trust effective September 24, 2024. [Bankr. Docket Nos. 1646 & 1762].

**B.     Protective Order**

18.     On or about May 2, 2024, Plaintiff filed that certain Notice and Motion for Entry of Protective Order (the "Protective Order Motion"). On June 3, 2024, the Court entered its Order Granting Motion for Entry of Protective Order and the Protective Order [Bankr. Docket No. 1270]

///

(the "Protective Order"). A true and accurate copy of the Protective Order is attached as **<u>Exhibit 1</u>** and incorporated here.

**C.    LPG**

19.    Pre-petition, Debtor was a law firm that provided consumer debt resolution services to more than 65,000 clients nationwide.

20.    Tony Diab ("Diab") operated, dominated and controlled Debtor at all relevant times.

21.    The consumers would pay LPG over a period of time via monthly debits and/or ACH debits from their bank accounts.

22.    The monthly payments were meant to cover all legal services LPG provided to the consumers including validation of the debts, review of documents to determine enforceability, and court appearances to halt lawsuits to obtain judgments.

23.    In certain instances, LPG would file a lawsuit in an effort to eliminate a disputed debt or to prosecute affirmative claims held by the consumers.

24.    LPG mismanaged the consumers' monthly payments.

25.    Diab and others devised a plan to fraudulently transfer funds, client files, client funds and assets in the form of ACH Receivables (the "ACH Receivables" or "Accounts Receivable") out of LPG to third parties prior to the filing of bankruptcy.

26.    Diab used entities he controlled including, without limitation, Vulcan Consulting, LLC ("Vulcan") and B.A.T., Inc. dba Coast Processing ("Coast"), and others, to process payments from LPG consumer clients and to divert LPG consumer funds and ACH Receivables. Diab would use numerous ACH processing companies in order to easily transfer millions of dollars from Debtor to these entities he controlled, without oversight or detection, and to avoid payment disputes and complications. The money that flowed from Debtor through these bank account to Defendant consisted of Client Funds that Debtor funneled to these entities by means of the ACH processing companies. Debtor also made deposits into these entities bank account such that they received Client Funds directly from Debtor in addition to direct Accounts Receivables.

///

///

27.     At all times, the Transfers constituted transfers of interests of the Debtor in property as that term is defined in 11 U.S.C. § 101(54).[2]

**D.      LPG'S Prepetition Creditors**

28.     Debtor was insolvent when each Transfer was made. This insolvency is evidenced in part by the fact that 14 separate UCC-1 statements were of record securing debts of the Debtor as of September 1, 2022. These statements remained unreleased as of the Petition Date. These statements either reflected secured liens against the Debtor's assets then owned or thereafter acquired or provided evidence of the assignment or sale of substantial portions of the Debtor's future income.

29.     When the Transfers were made, these prior UCC-1 statements secured the repayment of the following claimed amounts that are currently known to Trustee and are allegedly owed by the Debtor: (i) $2,374,004.82 owed to Fundura Capital Group as evidenced by Proof of Claim No. 335 purportedly secured by a UCC statement filed on or about May 19, 2021; (ii) approximately $15 million owed to MNS Funding, LLC as evidenced by Proof of Claim No. 1060 purportedly secured by a UCC statement filed on or about May 28, 2021; (iii) approximately $5,000,000 owed to Azzure Capital, LLC as evidenced by Proof of Claim No. 127 secured by a UCC statement filed on or about May 28, 2021; and (iv) approximately $1.5 million owed to Diverse Capital, LLC purportedly secured by UCC statements filed on or about September 15, 2021, and December 1, 2021.[3]

30.     As alleged above, LPG was borrowing against its assets and future income, often on

---

[2] To the extent the LPG Insiders are adjudicated to be initial transferees of the Transfers, the omission of the LPG Insiders in this Complaint is not fatal to the fraudulent transfer claims set forth herein. See *Erickson v. Leonard (In re AVI, Inc.)*, 389 B.R. 721, 735 (9th Cir. BAP 2008) ("[W]e hold that a trustee is not required to avoid the initial transfer from the initial transferee before seeking recovery from subsequent transferees under § 550(a)(2)."); *IBT Intern., Inc. v. Northern (In re Int'l Admin. Servs., Inc,)*, 408 F.3d 689, 708 (11th Cir. 2005) ("Section 550(a) does not mandate a plaintiff to first pursue recovery against the initial transferee and successfully avoid all prior transfers against a mediate transferee."); *Leslie v. Ace Gallery N.Y. Corp. (In re Art & Architecture Books of the 21st Century)*, 2021 Bankr. LEXIS 3637, *98 (Bankr. C.D. Cal. 2022) ("The language of 11 U.S.C. § 550 does not require a trustee to successfully avoid a transfer with respect to the initial transferee in order to recover from a subsequent transferee under 11 U.S.C. § 550."); *In re M. Fabrikant & Sons, Inc.*, 394 B.R. 721, 743 (Bankr. S.D.N.Y. 2008) ("[T]he Bankruptcy Code, and specifically §§ 544(b) and 548, does not identify the proper, necessary or indispensable parties to a fraudulent transfer action, and does not state that the initial transferee is necessary.").

[3] Trustee reserves all rights, claims, and defenses with respect to these and any other purported secured or unsecured claims.

6

1   unfavorable terms, not only to finance operations at LPG, but also to pay the fees owed to the

2   marketing affiliates for providing it with consumer clients. Pursuant to the agreements with the

3   marketing companies, significant percentages of future payments were already promised to be paid

4   to the marketing affiliates from whatever future income the Debtor would receive.

5       31.    In addition, on Debtor's Schedule E/F [Bankr. Docket No. 33], Debtor scheduled 11

6   unsecured creditors with priority unsecured claims totaling $374,060.04. These priority unsecured

7   creditors include Indiana Dept. of Revenue, Dept. of Labor and Industries, Arizona Dept. of

8   Economic Security, Arkansas Dept. of Finance & Admin., California Franchise Tax Board, Georgia

9   Dept. of Labor, Internal Revenue Service, Mississippi Dept. of Revenue, Nevada Dept. of Taxation,

10  Utah State Tax Commission, and Wisconsin Dept. of Revenue (collectively, "Priority Unsecured

11  Creditors").

12      32.    Another group of creditors that Debtor listed on its Schedule E/F [Bankr. Docket No.

13  33] are nonpriority unsecured creditors. Those 58 creditors have scheduled claims totaling

14  $141,439,158.05 and include Ajilon; Anthem Blue Cross; Azevedo Solutions Groups, Inc.; Carolina

15  Technologies & Consulting Invoice; Collaboration Advisors; Credit Reporting Service Inc.; CT

16  Corporation – Inv.; Debt Pay Pro; Document Fulfillment Services; EnergyCare, LLC; Exela

17  Enterprise Solutions; First Legal Network, LLC; GHA Technologies Inc.; Harrington Electric, Inc.;

18  Imagine Reporting; Juize, Inc.; Krisp Technologies, Inc.; Liberty Mutual; Marc Lemauviel –

19  Allegra; MarkSYS Holdings, LLC; Netsuite-Oracle; Pitney Bowes; Rapid Credit, Inc.; SBS Leasing

20  A Program of De Lage Landen; Security Solutions; Sharp Business Systems; Streamline

21  Performance, Inc.; Thomson Reuters; Twilio, Inc.; Nationwide Appearance Attorneys; Executive

22  Center, LLC; Outsource Accelerator, Ltd.; TaskUs Holdings, Inc.; Marich Bein, LLC; Validation

23  Partners; MC DVI Fund 1, LLC; MC DVI Fund 2, LLC; Debt Validation Fund II, LLC; Tustin

24  Executive Center; LexisNexus; JP Morgan Chase; Business Centers of America; Michael Schwartz;

25  Anibal Colon Jr.; Kathleen Lacey; David Ulery; Kimberly Birdsong; Kevin Carpenter; Karen Suell;

26  Gloria Eaton; Carolyn Beech; Debra Price; Kenneth Topp; Darcey Williamson, Trustee; James

27  Hammett; Johnny Rizo; Beverly Graham; Kathleen Scarlett; and Geneve and Myranda Sheffield

28  ///

(collectively, "Nonpriority Unsecured Creditors" and, together with the Secured Creditors and Priority Unsecured Creditors, "Prepetition Creditors").

33.    As of the filing of this complaint, approximately 5,771 claims have been filed with the Bankruptcy Court. While Trustee has not reviewed all claims as of the date of this complaint, and reserves all rights to object to those claims, the total amount is in excess of approximately $717,507,462.29.

**E.    Ponzi Scheme**

34.    This Court has recognized that Debtor operated a Ponzi scheme by using funds provided by former investors to attract new investors hoping for very high returns. *See* Dk. No. 1545, fn. 5.

35.    The Ponzi Scheme Presumption establishes a debtor's "intent to defraud future undertakers [investors] from the mere fact that a debtor was running a Ponzi scheme." *Merrill v. Abbott* (*In re Independent Clearing House Co.*), 77 B.R. 843, 860 (D. Utah 1987). "Knowledge to a substantial certainty constitutes intent in the eyes of the law, cf. Restatement (Second) of Torts § 8A (1963 & 1964), and a debtor's knowledge that future investors will not be paid is sufficient to establish his actual intent to defraud them." *Id*. A trustee in bankruptcy is not required to show that an operator of a Ponzi scheme was subjectively aware his Ponzi scheme was destined to fail. *In re EPD Inv. Co., LLC*, 114 F.4th at 1153 (9th Cir. 2024).

36.    "[I]f all the debtor receives in return for a transfer is the use of the defendant's money to run a Ponzi scheme, there is nothing in the bankruptcy estate for creditors to share." *In re Independent Clearing House Co.* 77 B.R. at 859. In such a situation, the use of the defendant's money cannot objectively be called "reasonably equivalent value." *Id*. Therefore, "[t]he trustee can avoid the transfers if they were preferential or fraudulent. Transfers to investors in a Ponzi scheme are preferential and fraudulent. Therefore, they constitute 'property of the estate,' and the trustee can recover them." *Id*. at 853 n.17 (citations omitted).

37.    Based on the Ponzi Scheme presumption the Court can infer that the Debtor had the intent to defraud investors within the meaning of 11 U.S.C. § 548(a)(1). Since the transfers by Debtor to third parties, including Defendant Turner, were made with the intent to further the Ponzi

scheme, the Debtor did not receive an objectively reasonable equivalent value for such transfers, and the Trustee can avoid any such transfers because they were preferential and fraudulent.

38.    Moreover, insolvency is presumed as a matter of law where, as in this Bankruptcy Case, the debtor operated a Ponzi scheme. *See, e.g., Glob. Money Mgmt., L.P. v. McDonnold*, No. 06CV34, 2008 U.S. Dist. LEXIS 128733, at *15 (S.D. Cal. Feb. 27, 2008) (concluding that "if a Ponzi scheme is proven, then the debtor is proven insolvent from the time of its inception").

**F.    The Criminal Enterprise**

39.    Debtor's operations, activities and transfers done in furtherance of the Ponzi scheme, including those in conjunction with its affiliates and its dealings with Defendants, also constituted a criminal enterprise.

40.    This, too, is evidenced by the Court's order in the 1046 Action wherein it denied the Motion of Greyson Law Center to Vacate the Preliminary Injunction previously entered in Debtor's main case, and the Court offered the opinion:

> Through the various proceedings and evidence produced in both the main case and the various adversary proceedings, including but not limited to various Motions for Temporary Restraining Orders, Preliminary Injunctions, Motions to Dismiss, a Motion for Appointment of a Chapter 11 Trustee, a Motion to Sell Assets, a multitude of pleadings filed by both secured and unsecured creditors (supported by evidence presented under oath) in support of their claims, and especially the pleadings and evidence presented by the "Watchdog of the Bankruptcy System" aka the Office of the United States Trustee (an arm of the United States Department of Justice), *it is clear to this Court that Debtor, since its pre-petition inception (and through the time of the appointment of the Chapter 11 Trustee) was in the Court's opinion, operating a criminal enterprise.*

(Case No. 8:23-bk-10571-SC; Adv. No. 8:23-ap-01046-SC [Bankr. Docket No. 1545, p.3 (emphasis in original)].)

41.    As part of this criminal enterprise, Debtor and Defendants Turner and Bowyer engaged in fraudulent transfers in furtherance of either Debtor's Ponzi scheme or as part of Bowyer's illegal gambling operation.

**G.    Defendants Turner and Bowyer**

**a.    Defendant Turner**

42.    On information and belief, Defendant Turner was, at all relevant times, an associate of Defendant Bowyer's.

43.    Defendant Turner received the Transfers of funds from Debtor.

44.    Based on information and belief, Debtor made the Transfers to Defendant Turner on the understanding that some or all of the Transfers would eventually be re-transferred to Defendant Bowyer.

**b.    Defendant Bowyer**

45.    On information and belief, Defendant Bowyer was, at all relevant times, associated with Diab.

46.    The sum of at least the value of the Transfers was intended by Diab to be paid to Defendant Bowyer either as a return on Defendant Bowyer's investment in Coast Processing, or in furtherance of Defendant Bowyer's illicit gambling operation.

**H.    The Subject Transfers**

47.    During the four-year period prior to the Petition Date, Debtor transferred at least $730,000 to Defendant Turner. The full extent of the Transfers will be proven at trial, but are in an amount not less than $730,000 (previously defined as the "Transfers") as set forth in the chart attached as **Exhibit 2**.

48.    Based on information and belief, all or a portion of the Transfers were then transferred to Defendant Bowyer.

49.    Plaintiff alleges that Debtor was insolvent when the Transfers were made or became insolvent as a result of the Transfers.

50.    Plaintiff alleges that Debtor did not receive reasonably equivalent value in exchange for or in connection with the Transfers.

51.    Pursuant to 11 U.S.C. § 550(a), Plaintiff is entitled to recover the Transfers or their value from Defendant and Doe Defendants as initial or subsequent transferees.

52.    Under 11 U.S.C. § 551, avoided transfers are automatically preserved for the benefit of the Estate.

**I.    Due Diligence**

53.    On December 13, 2024, Plaintiff, operating on the limited information available to him, caused a letter to be e-mailed to Defendant Turner ("First Letter") requesting documents and

information to substantiate the Transfers, to assess the purpose of the Transfers, and to evaluate any potential defenses to Plaintiff's avoidance and recovery of the Transfers. Plaintiff received no response to the First Letter. A true and correct copy of the email to Defendant Turner is attached hereto as **Exhibit 3**.

54.     On January 9, 2025, Plaintiff caused a follow-up letter to be mailed to Defendant Turner ("Second Letter") requesting the same documents and information sought in the First Letter. A true and correct copy of the Second Letter is attached hereto as **Exhibit 4**.

55.     Plaintiff received a response to the Second Letter via telephone call from Defendant Turner's counsel, Jeffrey Shinbrot, on February 6, 2025.

56.     Despite initial overtures from Defendant Turner to explore alternatives to litigation, Defendant Turner unilaterally ceased communications with Trustee before any substantial discussions on this matter could take place. As such, Trustee does not know the present disposition of the Transfers.

57.     Despite Trustee's numerous follow-ups and attempts to communicate, Defendant Turner has not shown reciprocal interest in discussing resolution to this matter, which necessitates this adversary proceeding.

58.     As to Defendant Bowyer, Trustee did not become aware of Defendant Bowyer's involvement until recently because the records in Trustee's possession do not reflect any direct transfers from Debtor to Defendant Bowyer.

59.     However, with the assistance of a source of information only available recently, Defendant Bowyer's involvement was discovered, though Trustee is still investigating the precise nature and extent of Defendant Bowyer's involvement in Debtor's criminal enterprise, and may supplement or amend this complaint as new information becomes available.

60.     Prior to filing this Complaint, Plaintiff's counsel conducted an electronic search of Debtor's paper files and accounting records, including Debtor's Quickbooks files, which records and files are now stored electronically. Plaintiff's search of the subject records and files revealed no apparent defenses to the alleged claims.

**First Claim for Relief**

**Avoidance, Preservation, and Recovery of Actual Fraudulent Transfer**

**11 U.S.C. §§ 544, 550, 551; Cal. Civ. Code §§ 3439.04(a)(1) and 3439.07**

**(Against all Defendants)**

61.     Plaintiff incorporates by reference Paragraphs 1 through 60 and realleges these paragraphs as though set forth in full.

62.     Under 11 U.S.C. § 544(b)(1), Plaintiff may avoid transfers of an interest of Debtor which are voidable under applicable law by an unsecured creditor of Debtor, including under California Civil Code § 3439.04(a)(1).

63.     The Transfers were of property of Debtor.

64.     The Transfers were made within four years prior to the Petition Date.

65.     The Transfers were made with the actual intent to hinder, delay, or defraud Debtor's creditors.

66.     The Debtor was operating a Ponzi scheme and the Ponzi Scheme Presumption can be utilized to infer the Debtor's actual intent to defraud within the meaning of 11 U.S.C. § 548(a)(1). The Debtor's conduct was done with oppression, fraud, and malice, as defined in California Civil Code section 3294, based on the Ponzi Scheme Presumption, entitling the Trustee to, in addition to actual damages, exemplary or punitive damages.

67.     At the time each Transfer was made, Debtor was indebted to one or more creditors that held a claim against Debtor on the date of each Transfer and on the Petition Date.

68.     Debtor had been sued or threatened with suit before some or all of the Transfers occurred.

69.     Debtor incurred substantial debt shortly before or shortly after some or all of the Transfers occurred.

70.     Debtor received less than reasonable equivalent value of value in exchange for the Transfers.

71.     The Transfers were made at a time when Debtor was insolvent and/or rendered insolvent by virtue of said transfers.

72.     As noted above, Debtor's insolvency is presumed as a matter of law where, as here, Debtor operated a Ponzi scheme.

73.     Plaintiff alleges that Defendant Turner and Defendant Bowyer did not receive the Transfers in good faith, for value, and without knowledge of their avoidability.

74.     Furthermore, the Transfers are avoidable as fraudulent pursuant to 11 U.S.C. § 544(b) and Cal. Civ. Code §§ 3439.04(a) and 3439.07 by one or more creditors who held and hold unsecured claims against Debtor that were and are allowable against the Estate under 11 U.S.C. § 502 or that were not and are not allowable only under 11 U.S.C. § 502(e), including, without limitation, the Prepetition Creditors.

75.     Based on the foregoing, Plaintiff may avoid the Transfers pursuant to 11 U.S.C. § 544 and California Civil Code § 3439.04(a)(1).

76.     Based on the foregoing, Plaintiff may recover and preserve the Transfers from Defendant as the initial transferees or, alternatively, as the subsequent transferees for the benefit of the Estate pursuant to 11 U.S.C. §§ 550 and 551, and Cal. Civ. Code § 3439.07.

**Second Claim for Relief**

**Avoidance, Preservation, and Recovery of Constructive Fraudulent Transfer**

**11 U.S.C. §§ 544, 550, 551; Cal. Civ. Code §§ 3439.04(a)(2), 3439.05 and 3439.07**

**(Against all Defendants)**

77.     Plaintiff hereby incorporates by reference Paragraphs 1 through 76 and realleges these paragraphs as though set forth in full herein.

78.     Under 11 U.S.C. § 544(b)(1), Plaintiff may avoid transfers of an interest of Debtor which are voidable under applicable law by an unsecured creditor of Debtor, including under California Civil Code §§ 3439.04(a)(2) and 3439.05.

79.     The Transfers were made within four years of the Petition Date.

80.     The Transfers were of property of Debtor.

81.     Debtor did not receive reasonably equivalent value in exchange for the Transfers.

82.     The Transfers were made at a time when Debtor was insolvent and/or rendered insolvent by virtue of said transfers.

83. As noted above, Debtor's insolvency is presumed as a matter of law where, as here, Debtor operated a Ponzi scheme.

84. At the time each Transfer was made, Debtor was engaged or was about to engage in a business or a transaction for which the remaining assets of Debtor were unreasonably small in relation to the business or transaction.

85. At the time each Transfer was made, Debtor intended to incur, or believed or reasonably should have believed that Debtor would incur, debts beyond Debtor's ability to pay as they became due.

86. At the time each Transfer was made, Debtor was indebted to one or more creditors that held a claim against Debtor on the date of each Transfer and on the Petition Date.

87. The Transfers were made at a time when Debtor was insolvent and/or rendered insolvent by virtue of said transfers.

88. As noted above, Debtor's insolvency is presumed as a matter of law where, as here, Debtor operated a Ponzi scheme.

89. Plaintiff alleges that Defendant Turner and Defendant Bowyer did not receive the Transfers in good faith, for value, and without knowledge of their avoidability.

90. Furthermore, the Transfers are avoidable as fraudulent pursuant to 11 U.S.C. § 544(b) and Cal. Civ. Code §§ 3439.04(a) and 3439.07 by one or more creditors who held and hold unsecured claims against Debtor that were and are allowable against the Estate under 11 U.S.C. § 502 or that were not and are not allowable only under 11 U.S.C. § 502(e), including, without limitation, the Prepetition Creditors.

91. Based on the foregoing, Plaintiff may avoid the Transfers pursuant to 11 U.S.C. § 544 and California Civil Code §§ 3439.04(a)(2) and 3439.05.

92. Based on the foregoing, Plaintiff may recover and preserve the Transfers from Defendant Turner and Defendant Bowyer as the initial transferee or, alternatively, as the subsequent transferee for the benefit of the Estate pursuant to 11 U.S.C. §§ 550 and 551, and Cal. Civ. Code § 3439.07.

///

**Third Claim for Relief**

**Avoidance, Preservation, and Recovery of Actual Fraudulent Transfer**

**11 U.S.C. §§ 548(a)(1)(A), 550 & 551**

**(Against all Defendants)**

93.     Plaintiff hereby incorporates by reference Paragraphs 1 through 92 and realleges these paragraphs as though set forth in full herein.

94.     One or more of the Transfers were made within two years of the Petition Date.

95.     The Transfers were made to Defendant with the actual intent to hinder, delay, or defraud Debtor's creditors.

96.     The Debtor was operating a Ponzi scheme and the Ponzi Scheme Presumption can be utilized to infer the Debtor's actual intent to defraud within the meaning of 11 U.S.C. § 548(a)(1). The Debtor's conduct was done with oppression, fraud, and malice, as defined in California Civil Code section 3294, based on the Ponzi Scheme Presumption, entitling the Trustee to, in addition to actual damages, exemplary or punitive damages.

97.     At the time each Transfer was made, Debtor was indebted to one or more creditors that held a claim against Debtor on the date of each Transfer and on the Petition Date.

98.     Debtor had been sued or threatened with suit before some or all of the Transfers occurred.

99.     Debtor incurred substantial debt shortly before or shortly after some or all of the Transfers occurred.

100.     Debtor actively concealed assets pursuant to its diversion of funds, client files, and assets to affiliates.

101.     Debtor received less than reasonably equivalent value in exchange for the Transfers.

102.     The Transfers were made at a time when Debtor was insolvent and/or rendered insolvent by virtue of said transfers.

103.     As noted above, Debtor's insolvency is presumed as a matter of law where, as here, Debtor operated a Ponzi scheme.

///

104.     Plaintiff alleges that Defendant Turner and Defendant Bowyer did not receive the Transfers in good faith, for value, and without knowledge of their avoidability.

105.     Based on the foregoing, Plaintiff may avoid the Transfers under 11 U.S.C. § 548(a)(1)(A).

106.     Based on the foregoing, Plaintiff may recover and preserve the avoided transfers up to the amount of the Transfers from Defendant and/or Doe Defendants as the initial transferee or, alternatively, as the subsequent transferee for the benefit of the Estate under 11 U.S.C. §§ 550 and 551.

**Fourth Claim for Relief**

**Avoidance, Preservation, and Recovery of Constructive Fraudulent Transfer**

**11 U.S.C. §§ 548(a)(1)(B), 550 & 551**

**(Against all Defendants)**

107.     Plaintiff hereby incorporates by reference Paragraphs 1 through 106 and realleges these paragraphs as though set forth in full herein.

108.     One or more of the Transfers were made within two years before the Petition Date.

109.     Debtor did not receive reasonably value in exchange for the Transfers.

110.     The Transfers were made at a time when Debtor was insolvent and/or rendered insolvent by virtue of said transfers.

111.     As noted above, Debtor's insolvency is presumed as a matter of law where, as here, Debtor operated a Ponzi scheme.

112.     When the Transfers occurred, Debtor's business was undercapitalized and Debtor was engaged in business for which its capital was unreasonably small.

113.     When the Transfers occurred, Debtor was about to incur debts that were beyond its ability to pay.

114.     At the time each Transfer was made, Debtor was indebted to one or more creditors that held a claim against Debtor on the date of each Transfer and on the Petition Date.

115.     Plaintiff alleges that Defendant Turner and Defendant Bowyer did not receive the Transfers in good faith, for value, and without knowledge of their avoidability.

116.    Based on the foregoing, Plaintiff may avoid the Transfers under 11 U.S.C. § 548(a)(1)(B).

117.    Based on the foregoing, Plaintiff may recover and preserve the avoided Fraudulent Transfers from Defendant and/or Doe Defendants as the initial transferee or, alternatively, as the subsequent transferee for the benefit of the Estate under 11 U.S.C. §§ 550 and 551 from Defendant.

**Fifth Claim For Relief**

**Accounting**

**(Against Defendant Turner)**

118.    Plaintiff hereby incorporates by reference Paragraphs 1 through 117 and realleges these paragraphs as though set forth in full herein.

119.    Plaintiff presently has no way of knowing what amount, if any, was subsequently transferred to Defendant Bowyer.

120.    Defendant Turner is in possession and control of all records needed to ascertain the amounts that may have been subsequently transferred to Defendant Bowyer. Plaintiff has no means by which it can assemble the information necessary to calculate or know what amounts were transferred by Defendant Turner to Defendant Bowyer.

121.    Plaintiff is entitled to an order of this Court directing Defendant Turner to render a complete and honest accounting of all transfers to any other party that originated from the Transfers.

**Sixth Claim For Relief**

**Turnover of Estate Property**

**11 U.S.C. § 542**

**(Against All Defendants)**

122.    Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 121 as though set forth in full.

123.    Defendant Turner and/or Defendant Bowyer have possession or control over property of the Estate in the form of the Transfers.

124.    The Transfers are not of inconsequential value to the Estate.

///

125.   The funds that are the subject of the Transfers are paramount to Debtor's ability to pay creditors.

126.   Accordingly, Trustee is entitled to a judgment for turnover of the Transfers pursuant to 11 U.S.C. §542.

### Seventh Claim For Relief

### Aiding and Abetting Fraud

### Cal. Civ. Code § 3439 et seq.

### (Against All Defendants)

127.   Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 126 as though set forth in full.

128.   Defendant Turner and/or Defendant Bowyer have possession or control over property of the Estate including, but not limited to, the Transfers made pursuant to illegal and unenforceable agreements.

129.   Defendants had knowledge of the fraudulent transactions, transfers, and agreements that were used to perpetuate and conceal the Ponzi scheme and fraudulent transfers.

130.   Defendants, with the foregoing knowledge, intended to, and did, help the Debtor and other scheme participants in perpetuating and concealing the Ponzi scheme and fraudulent transfers of money.

131.   Defendants assisted, and did actually engage in, LPG's commission of fraud and Ponzi scheme by coordinating, facilitating, and directing payments and transfers of monies and executing documents in furtherance of concealing the true nature of their fraudulent and criminal activity related to the Ponzi scheme.

132.   The injuries to Plaintiff, the Debtor's Estate and to its creditors directly, proximately and reasonably foreseeably resulting from and caused by these fraudulent transfers and Ponzi scheme include, without limitation, hundreds of thousands of dollars in improperly transferred and acquired monies.

133.   The property, including, but not limited to, the Transfers are not of inconsequential value to the Estate and recovering these funds is paramount to Debtor's ability to pay creditors.

134.     Plaintiff and the Debtor's Estate also suffered damages by incurring attorney's fees and costs associated with the prosecution of Defendants' unlawful activities.

**Reservation Of Rights**

Plaintiff reserves the right to bring all other claims or causes of action that Plaintiff may have against Defendants, on any and all grounds, as allowed under the law or in equity, including but not limited to, those claims not known by the Trustee at this time but that he may discover during the pendency of this adversary proceeding.

**Prayer**

WHEREFORE, Plaintiff prays for judgment against Defendant and Doe Defendants as follows:

**On the First Claim for Relief**

1.     That the Transfers be avoided under 11 U.S.C. § 544 and Cal. Civ. Code §§ 3439.04(a)(1) and 3439.07;

2.     That Plaintiff recover the avoided Transfers or a money judgment in an amount equal to the value of the avoided Transfers pursuant to 11 U.S.C. § 550;

**On the Second Claim for Relief**

3.     That the Transfers be avoided under 11 U.S.C. § 544 and Cal. Civ. Code §§ 3439.04(a)(2), 3439.05 and 3439.07;

4.     That Plaintiff recover the avoided Transfers or a money judgment in an amount equal to the value of the avoided Transfers pursuant to 11 U.S.C. § 550;

**On the Third Claim for Relief**

5.     That the Transfers be avoided under 11 U.S.C. § 548(a)(1)(A);

6.     That Plaintiff recover the avoided Transfers or a money judgment in an amount equal to the value of the avoided Transfers pursuant to 11 U.S.C. § 550;

**On the Fourth Claim for Relief**

7.     That the Transfers be avoided under 11 U.S.C. § 548(a)(1)(B);

8.     That Plaintiff recover the avoided Transfers or a money judgment in an amount equal to the value of the avoided Transfers pursuant to 11 U.S.C. § 550;

**On the Fifth Claim for Relief**

9.      Ordering an accounting of the Transfers from Defendant Turner;

**On the Sixth Claim for Relief**

10.     Ordering Defendants to immediately turn over the value of the Transfers;

**On the Seventh Claim for Relief**

11.     Awarding Plaintiff compensatory damages in an amount to be determined at trial;

**On All Claims for Relief**

12.     That Plaintiff only recover a single satisfaction of all avoided Transfers under 11 U.S.C. § 550(d);

13.     That all avoided Transfers be preserved pursuant to 11 U.S.C. § 551;

14.     For prejudgment interest under state law on all fraudulent transfer claims from the date each transfer was made, as set forth in *In re Slatkin*, 525 F.3d 805, 820 (9th Cir.2008), *In re Agricultural Research and Technology Group, Inc*., 916 F.2d 528, 541-42 (9th Cir.1990), and *Field v. Kepoikai* (*In re Maui Indus. Loan & Fin. Co*.), 483 B.R. 346, 353 (Bankr. D. Haw. 2012);

15.     For pre-judgment interest on all other claims at the maximum rate allowed by law;

16.     For costs incurred by Plaintiff in prosecuting this action; and

17.     For such other and further relief as the Court may deem just and proper.

DATED: March 19, 2025

DINSMORE AND SHOHL LLP

By: /s/ Jacob R. Bothamley
    Yosina M. Lissebeck
    Jacob R. Bothamley
Attorneys for Richard A. Marshack, Trustee of the
LPG Liquidation Trust

# EXHIBIT 1

CHRISTOPHER B. GHIO (259094)
christopher.ghio@dinsmore.com
CHRISTOPHER CELENTINO (131688)
christopher.celentino@dinsmore.com
YOSINA M. LISSEBECK (201654)
yosina.lissebeck@dinsmore.com
DINSMORE & SHOHL LLP
655 West Broadway, Suite 800
San Diego, California 92101
Tele: 619.400.0500
Fax: 619.400.0501

Sarah S. Mattingly (Ky. Bar 94257)
sarah.mattingly@dinsmore.com
DINSMORE & SHOHL, LLP
101 S. Fifth Street, Suite 2500
Louisville, Kentucky 40202
Tele: 859-425-1096
Fax: 502-585-2207
(Admitted pro hac vice)

Special Counsel to Richard A. Marshack

**FILED & ENTERED**

**JUN 03 2024**

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY mccall    DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

| | |
|---|---|
| In Re | Case No: 23-bk-10571-SC |
| | Chapter 11 |
| The Litigation Practice Group P.C., | **ORDER GRANTING MOTION FOR ENTRY OF PROTECTIVE ORDER AND THE PROTECTIVE ORDER** |
| Debtor(s), | |
| | Date:    May 23, 2024 |
| | Time:    1:30 p.m. |
| | Judge:   Hon. Scott C. Clarkson |
| | Place:   Courtroom 5C (via Zoom)[1] |
| | 411 West Fourth Street |
| | Santa Ana, CA 92701 |

---

[1] Video and audio connection information for each hearing will be provided on Judge Clarkson's publicly posted hearing calendar, which may be viewed online at: http://ecf-ciao.cacb.uscourts.gov/CiaoPosted/?jid=SC.

Exhibit 1, Page 22

The Court has read and considered the Notice of Motion and Motion for Entry of Protective Order (the "Motion") filed by Richard A. Marshack, in his capacity as the Chapter 11 Trustee (the "Trustee") of the Bankruptcy Estate ("Estate") of The Litigation Practice Group P.C., on May 2, 2024, pursuant to Federal Rule of Bankruptcy Procedure 7026 and Federal Rule of Civil Procedure 26(c)(1), as Dk. No. 1164 ("Motion"), and has found good cause to grant the Motion.

IT IS HEREBY ORDERED that:

1.      The Motion is granted;

2.      The below Protective Order shall apply to any contested matter arising in the main bankruptcy case and in all adversary proceedings filed by or against Trustee, present and future; and

3.      Govern the discovery conducted therein.

## PROTECTIVE ORDER

**1.      DEFINITIONS**

1.1     "Confidential Information" as used in this Protective Order shall mean documents and other information (regardless of how generated, stored or maintained) that a Party or non-party reasonably believes to contain or reflect non-public financial or business information, bank records, financial records, such as social security numbers, non-public financial or personal information of a Party or non-party, account numbers, sensitive digital information and identifiers, information subject to confidentiality agreements or provisions other than this Protective Order, and other non-public research, development, or commercial information that derives value or avoids injury by virtue of not being known to the public.

1.2     This "Action" is defined and hereby means any contested matter arising in the main bankruptcy case and in all adversary proceedings filed by or against Trustee, present and future.

1.3     "Designating Party" means a Party or non-party that designates Confidential Information during the Action.

1.4     "Receiving Party" means a Party that receives Confidential Information during the Action.

2

1.5    "Party" or "Parties" means person or entity subject to this Protective Order.

**2.    SCOPE OF THIS PROTECTIVE ORDER**

2.1    Unless otherwise ordered, this Protective Order shall govern certain documents and other products of discovery obtained in the Action from the Parties there to, and from third parties. As well as certain information copied or derived therefrom, excerpts, summaries or compilations thereof, including, but not limited to, documents voluntarily exchanged as part of early settlement discussions, documents produced pursuant to initial disclosures, requests authorized by the Federal Rules of Civil Procedure made applicable herein by the Federal Rules of Bankruptcy Procedure, answers to interrogatories, deposition transcripts, responses to requests for production, responses to requests for admission, subpoenas, affidavits, declarations, expert reports, and other such material and information as may be produced during the course of the Action and designated as Confidential Information.

**3.    DESIGNATION OF CONFIDENTIAL INFORMATION**

3.1    This Protective Order shall govern the production and handling of any Confidential Information in this Action. Any Party or non-party who produces Confidential Information in this Action may designate it as "Confidential" or "Attorneys' Eyes Only" consistent with the terms of this Protective Order. Whenever possible, the Designating Party must designate only those portions of a document, written discovery responses, deposition, transcript, or other material that contain the Confidential Information and refrain from designating entire documents. Regardless of any designations made hereunder, the Designating Party is not otherwise restricted from use or disclosure of its Confidential Information outside of this Action or for any business purposes. In addition, any Party may move to modify or seek other relief from any of the terms of this Protective Order if it has first tried in writing and in good faith to resolve its needs or disputes with the other Parties or Party as the case may be under the terms of this Protective Order. Further, nothing in this Protective Order shall prevent a Party from redacting documents consistent with the Federal Rules of Civil Procedure and utilizing the documents as needed through-out the Action.

3.2    <u>Application to Non-Parties:</u> Before a non-party is given copies of documents or materials designated as Confidential Information or Attorneys' Eyes Only as permitted hereunder, it

3

must first sign an acknowledgment to be bound to these terms that is attached hereto as <u>Exhibit A</u>; if it fails to do so, the Parties to this Action must resolve any such dispute before making disclosure of designated information as permitted hereunder to the non-party. If a non-party wishes to make designations hereunder, it must first sign attached <u>Exhibit A.</u>

3.3    <u>Timing and Provisional Protection:</u> Designations of Confidential Information may be made at any time. To avoid potential waiver of protection hereunder, the Designating Party should designate documents or materials containing Confidential Information at the time of production or disclosure, including on the record during the taking of any deposition. Deposition testimony will be deemed provisionally protected for a period of thirty (30) days after the transcript is released to the Parties by the court reporter, although the Parties may agree at any time to different timelines of provisional protection of information as Confidential or Attorneys' Eyes Only as part of one or more specific depositions. To retain any designations beyond the provisional period, a Designating Party must designate specific pages and lines of deposition testimony before the provisional period has expired. Such designations must be made in writing so that all counsel and court reporters may append the designation to all copies of the transcripts.

3.4    <u>Manner of Designation:</u> Confidential Information may be designated hereunder in any reasonable manner or method that notifies the Receiving Party of the designation level and identifies with specificity the information to which the designation applies. If made verbally, the Designating Party must promptly confirm the designation in writing. Whenever possible, the Designating Party should stamp, affix, or embed a legend of "CONFIDENTIAL" or "ATTORNEYS' EYES ONLY" on each designated page of the document or electronic image that contains Confidential Information.

**4.    CHALLENGES TO DESIGNATED INFORMATION**

4.1    In the event that a Receiving Party disagrees at any time with any designation(s) made by the Designating Party, the Receiving Party must first try to resolve such challenge in good faith on an informal basis with the Designating Party. The Receiving Party must provide written notice of the challenge and the grounds therefor to the Designating Party, who must respond in writing to the challenge within fifteen (15) days. At all times, the Designating Party carries the burden of establishing the propriety of the designation and protection level. Unless and until the challenge is

4

resolved by the Parties or ruled upon by the Court, the designated information shall remain protected under this Protective Order. The failure of any Receiving Party to challenge a designation does not constitute a concession that the designation is proper or an admission that the designated information is otherwise competent, relevant, or material.

**5.      LIMITED ACCESS/USE OF PROTECTED INFORMATION**

5.1      <u>Restricted Use:</u> Information that is produced or exchanged in the course of the Action and designated under this Protective Order may be used for preparation for trial and preparation for any appeal of any and all matters in the Action, as well as related settlement negotiations, and for no other purpose, without the written consent of the Designating Party. No Confidential Information may be disclosed to any person except in accordance with the terms of this Protective Order, unless the parties are co-counsel or have entered into joint defense agreements. All persons in possession of Confidential Information agree to exercise reasonable care with regard to the custody, use, or storage of such information to ensure that its confidentiality is maintained. This obligation includes, but is not limited to, the Receiving Party providing to the Designating Party prompt notice of the receipt of any subpoena that seeks production or disclosure of any designated information and consulting with the Designating Party before responding to the subpoena. Any use or disclosure of Confidential or Attorneys' Eyes Only information in violation of the terms of this Protective Order may subject the disclosing person or party to sanctions.

5.2      <u>Access to "Confidential" Information:</u> The Party(ies) and all persons subject to this Protective Order agree that information designated as "CONFIDENTIAL" may only be accessed or reviewed by the following:

a)      The Court, its personnel, and court reporters;

b)      Counsel of record, or co-counsel for any Party, or other party that has entered into a joint defense agreement in the Action and their employees who assist counsel of record, or co-counsel in the Action and are informed of the duties and obligations imposed hereunder;

c)      The Parties, including their clients, agents and employees who are assisting or have reason to know of the Action;

/ / /

d)      Experts or consultants employed by the Parties or their counsel, or co-counsel, for purposes of an Action, so long as each such expert or consultant has signed attached <u>Exhibit A;</u> and

e)      Other witnesses or persons with the Designating Party's consent or by court order.

5.3      <u>Access to "Attorneys' Eyes Only" Designations:</u> The Parties and all persons subject to this Protective Order agree that information designated as "ATTORNEYS' EYES ONLY" may only be accessed or reviewed by the following:

a)      The Court, its personnel, and court reporters;

b)      Counsel of record, or co-counsel for any Party, or other party that has entered into a joint defense agreement in the Action and their employees who assist counsel of record in the Action and are informed of the duties hereunder;

c)      In-house counsel for any Party in the Action and Richard A. Marshack, as Chapter 11 Trustee of The Litigation Practice Group P.C. who is informed of the duties and obligations imposed hereunder;

d)      Experts or consultants employed by the Parties or their counsel, or co-counsel for purposes of the Action,  and so long as each such expert or consultant has signed attached <u>Exhibit A;</u> and

e)      Other witnesses or persons to whom the Designating Party agrees in advance of disclosure or by court order.

5.4      <u>Non-Waiver Effect of Designations:</u> Neither the taking of, nor the failure to take, any action to enforce the provisions of this Protective Order, nor the failure to object to any designation, will constitute a waiver of any Party(ies)'s claim or defense in the Action or any other action or proceeding, including, but not limited to, a claim or defense that any designated information is or is not Confidential, is or is not entitled to particular protection, or embodies or does not embody information protectable by law.

5.5      <u>In-Court Use of Designated Information:</u> If information designated under this Protective Order will or may be offered in evidence at a hearing or trial related to any matter in the Action, then the offering party must give advance notice to the party or non-party that designated prior to offering the information so that any use or disclosure may be addressed in accordance with

6

the Court's case-management or other pre-trial order, or by a motion *in limine.*  Nothing in this
Protective Order shall be construed as a waiver by a Party of any objections that may be raised as to
the admissibility at trial of any evidentiary materials.

### 6.    CLAW-BACK REQUESTS

6.1    <u>Failure to Make Designation:</u>  If, at any time, a Party or non-party discovers that it
produced or disclosed Confidential Information without designation, it may promptly notify the
Receiving Party and identify with particularity the Confidential Information to be designated and the
level of designation (the claw-back notification). The Receiving Party may then request substitute
production of the newly-designated information. Within thirty (30) days of receiving the claw-back
notification, the Receiving Party must: (1) certify to the Designating Party it has appropriately marked
or, if substitute production has been requested, destroyed all unmarked copies that it received, made,
and/or distributed; and (2) if it was practicably unable to mark or destroy any information because
disclosures occurred while the Receiving Party was under no duty of confidentiality under the terms
of this Protective Order regarding that information, the Receiving Party must reasonably provide as
much information as practicable to aid the Designating Party in protecting the information,
consistently with the Receiving Party's attorney-client, work-product, and/or trial-preparation
privileges.

6.2    <u>Inadvertent Production of Privileged Information:</u> If, at any time, a Party discovers
that it produced information that it reasonably believes is subject to protection under the
attorney/client, work-product, or trial-preparation privileges, then it must promptly notify each
Receiving Party of the claim for protection, the basis for it, amend its privilege log accordingly, and
comply with Fed. R. Civ. P. 26(b)(5). Whenever possible, the producing party must produce substitute
information that redacts the information subject to the claimed protection. The Receiving Party must
thereupon comply with Fed. R. Civ. P. 26(b)(5)(B) as to the information subject to the claimed
protection.

/ / /

/ / /

/ / /

7

**7. DURATION/CONTINUED RESTRICTIONS**

7.1    <u>Handling of Designated Information Upon Conclusion of the Main Bankruptcy Case:</u>
Upon conclusion of the Main Bankruptcy Case, by way of dismissal or closing of the case, the Designating Party(ies) is/are responsible for ensuring that any Party or person to whom the Designating Party shared or disclosed designated information in any of the matters under the Action returns or destroys all of its copies, regardless of the medium in which it was stored. No witness or Party may retain designated information that it received from any other Party or non-party under this Protective Order; only counsel of record, or co-counsel, are the authorized agents who may retain one copy for their respective legal files, and who must also describe to the Designating Party the extra steps taken to protect its legal file containing paper and/or electronic copies of the designated information so that it is not accessed, used, or disclosed inconsistently with the obligations under this Protective Order. This provision does not apply to the Court or Court staff. Moreover, this provision does not apply to Trustee, who may retain and use – consistent with this Order – Confidential Information received in any Action during the entirety of the Bankruptcy.

7.2    <u>Continued Restrictions Under this Protective Order:</u> The restrictions on disclosure and use of Confidential Information shall survive the conclusion of the Bankruptcy case and any matter in the Action.

**8. PRIVILEGED OR PROTECTED INFORMATION**

8.1    Nothing in this Protective Order shall require disclosure of information that is protected by the attorney-client privilege, the work-product protection, or any other legally cognizable privilege (a "Privilege or Protection"). If information subject to a claim of Privilege or Protection is inadvertently produced, pursuant to Federal Rule of Evidence 502(d) such production shall not constitute a waiver of, or estoppel as to, any claim of Privilege or Protection for such information or any other information that may be protected from disclosure by a Privilege or Protection in any proceeding.

8.2    If a Party receives a document that appears to be subject to a Privilege or Protection, then it shall refrain from examining the document any more than is essential to ascertain if it is privileged or protected and shall promptly notify the producing Party in writing that the receiving

8

Party possesses material that appears to be subject to a Privilege or Protection. The producing Party shall have seven (7) days after receiving such notice to assert a Privilege or Protection over the identified material. If the producing Party does not assert a claim of Privilege or Protection within the seven (7)-day period, the material in question shall be deemed not privileged or protected.

8.3     If a producing Party has produced a document subject to a claim of Privilege or Protection, upon written request by the producing Party, the document for which a claim of Privilege or Protection is made shall be sequestered or destroyed to the extent reasonably practicable, and the receiving Party shall not use the document for any purpose other than in connection with analyzing or disputing a claim of Privilege or Protection or in connection with a motion to compel the production of the document.

8.4     The receiving Party sequestering or destroying such material may then move the Court for an order compelling production of the material. The applicable producing Party bears the burden of establishing the applicable Privilege or Protection of any clawed-back document or information as and to the same extent that it would have borne such burden had it not produced the document or information.  Nothing in this Protective Order shall limit the Court's right or any receiving Party's right to request an in camera review of any information subject to a claim of Privilege or Protection.

###

Date: June 3, 2024

Scott C. Clarkson
United States Bankruptcy Judge

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EXHIBIT "A"

1

1 | Christopher B. Ghio (State Bar No. 259094)
Christopher Celentino (State Bar No. 131688)
2 | Yosina M. Lissebeck (State Bar No. 201654)
**DINSMORE & SHOHL LLP**
3 | 655 West Broadway, Suite 800
San Diego, CA 92101
4 | Telephone: 619.400.0500
Facsimile: 619.400.0501
5 | christopher.ghio@dinsmore.com
christopher.celentino@dinsmore.com
6 | yosina.lissebeck@dinsmore.com

7 | Sarah S. Mattingly (Ky. Bar 94257)
DINSMORE & SHOHL, LLP
8 | 101 S. Fifth Street, Suite 2500
Louisville, KY 40202
9 | Telephone: 859-425-1096
Facsimile: 502-585-2207
10 | Sarah.mattingly@dinsmore.com
(Admitted pro hac vice)

11 |

12 | Special Counsel to Richard A. Marshack,
Chapter 11 Trustee

13 |

14 |

15 | **UNITED STATES BANKRUPTCY COURT**

16 | **CENTRAL DISTRICT OF CALIFORNIA**

17 |

18 | In Re                                Case No. 8:23-BK-10571-SC

19 |                                      Chapter 11

20 | The Litigation Practice Group P.C.,  **EXHIBIT A TO STIPULATED ORDER**

Debtor(s),

21 |                                      Date:    May 23, 2024
22 |                                      Time:    1:30 p.m.
23 |                                      Judge:   Hon. Scott C. Clarkson
                                         Place:   Courtroom 5C[1] - Via Zoom
24 |                                               411 W. Fourth Street
                                                  Santa Ana, CA 92701
25 |

26 |

27 |

28 | [1] Video and audio connection information for each hearing will be provided on Judge Clarkson's publicly posted hearing calendar, which may be viewed online at: http://ecf-ciao.cacb.uscourts.gov/CiaoPosted/?jid=SC.

1  This is to certify that:

2      (a)    I am being given access to Confidential Information pursuant to the

3  Stipulated Protective Order that was entered into the main bankruptcy case for

4  Litigation Practice Group, but which is binding and controlling as set forth by the

5  Court's Order on any and all contested matters and  any and all litigation commenced

6  by Trustee;

7      (b)    I have read the Stipulated Protective Order; and

8      (c)    I agree to be bound by the terms and conditions thereof, including,

9  without limitation, to the obligations regarding the use, non-disclosure and return of

10  such Confidential Information. I further agree that in addition to being contractually

11  bound by the Stipulated Protective Order, I am subject to the jurisdiction of the above

12  reference Court for any violation thereof.

13

14  Date: _____

15

16                                   _____

17                                              Signature

18

19                                   _____

20                                             Printed Name

21

22

23

24

25

26

27

28

Exhibit 1, Page 33

EXHIBIT A

Page 3

# EXHIBIT 2(a)

Exhibit 2(a), Page 34

In re: The Litigation Practice Group PC
Disbursement Details by Payee
4 Years Pre-Petition (03/20/2019 - 03/20/2023)

Brandon Turner

**GROBSTEIN TEEPLE**

| Bank Name | Account Name | Account Number | Statement Date | Transaction Date | Check Number | Credit/Deposit | Debit/Charge | Memo |
|---|---|---|---|---|---|---|---|---|
| UnionBank | The Litigation Practice Group PC | 4858 | 1/31/2022 | 1/10/2022 | | | 120,000.00 | WIRE TRANS TRN 0110014731 011022 UBOC UB272598N Sent To: WELLS FARGO BANK NA Beneficiary: 1/Brandon Turner |
| Bank of America | Vulcan Consulting Group LLC dba DRD | 9551 | 11/30/2022 | 11/15/2022 | | | 500,000.00 | WIRE TYPE:WIRE OUT DATE221 115 TIME:1 557 ET TRNQO221 11500502602 SERVICE REFO1 6579 BNF:BRANDON TURNER ID: BNF BK:WELLS FARG 0 BANK, NA ID: PMT DET:41 3282706 |
| Chase | The Litigation Practice Group PC | 3133 | 11/30/2022 | 11/25/2022 | | | 60,000.00 | Fedwire Debit Via Wells Fargo NNi21000248 NC Brandon Turner Parker, CO 60138 US Ret./Time/I7.53 Imad. 11256i0gc07C029364Trn: 4303100329Jo |
| | | | | | | | **680,000.00** | |

DRAFT FORM - SUBJECT TO CHANGE

Payor Accounts: BAT Inc., Coast Processing LLC, EZ Debt Relief, Prime Logix, The Litigation Practice Group, Vulcan Consulting Group LLC

Exhibit 2(a), Page 35

# EXHIBIT 2(b)

Exhibit 2(b), Page 36



JPMorgan Chase Bank, N.A.
P O Box 182051
Columbus, OH 43218 - 2051

November 01, 2022 through November 30, 2022

Account Number: ███████████**3158**

## CUSTOMER SERVICE INFORMATION

**If you have any questions about your statement, please contact your Customer Service Professional.**

00004206 DDA 703 212 33522 NNNNNNNNNNN 1 000000000 80 0000
THE LITIGATION PRACTICE GROUP PC
17542 17TH ST STE 100
TUSTIN CA 92780-1981



**CHASE** ⬣

## ELECTRONIC WITHDRAWALS  *(continued)*

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| 11/15 | Fedwire Debit Via: Wells Fargo NA/121000248 A/C: Brandon Turner US Ref: Lead Purchase/Time/05:29 Imad: 1115B1Qgc01C000848 Trn: 8945500318Jo | 50,000.00 |

# EXHIBIT 3

*Legal Counsel.*

**DINSMORE & SHOHL** LLP
655 West Broadway, Suite 800
San Diego, CA 92101
www.dinsmore.com

Jacob R. Bothamley
(619) 400-0493 • F (619) 400-0501
Jacob.Bothamley@Dinsmore.com

# Dinsmôre

**_VIA E-Mail_**

December 13, 2024

Brandon Turner
brturner80@gmail.com

      Re:    *In re The Litigation Practice Group P.C.*
              U.S. Bankruptcy Court, Central District of California
              Case No. 8:23-bk-10571-SC

Dear Mr. Turner:

This constitutes a demand to provide any and all documents and information evidencing the basis for, accounting of, and any defenses to my client's claims to avoid and recover, the transfers to you from The Litigation Practice Group P.C. ("Debtor").

This firm represents Richard A. Marshack, Chapter 11 Trustee for the bankruptcy estate of The Litigation Practice Group P.C. and liquidating trustee of the LPG Liquidation Trust (collectively, "Trustee") in the above-referenced bankruptcy case. Pursuant to 11 U.S.C. § 1107 and his appointment as Trustee, the Trustee has the obligation to investigate and pursue claims, including fraudulent transfers, preferential transfers, and unauthorized post-petition transfers. Under the Bankruptcy Code, the Trustee has the power to file lawsuits seeking to avoid, recover, and preserve such transfers for the benefit of the Estate. *See* 11 U.S.C. §§ 544 *et seq*.

A review of the Debtor's books and records confirms that you received 3 potential fraudulent conveyances totaling at least $680,000.00, which can be avoided and recovered by the Trustee pursuant to 11 U.S.C. §§ 544 and 548 and Cal. Civ. Code. §§ 3439.04 and 3439.05.

The Trustee has been unable to determine why such transfers were made to you, what was provided to the Debtor in exchange for such transfers, and whether defenses exist to the Trustee's claims to avoid and recover the transfers. Please respond to this letter attaching any evidence you have related to these transfers including contracts, agreements, subscriptions, invoices, and any other documentation showing the date, terms, and amounts for the transfers received and any documents evidencing shipment dates as to goods and services provided by you to the Debtor. Documents showing the course of dealing between you and the Debtor, the date of receipt of the Debtor's payment and the amount, deposit date, and any proof of deposit for any or all of the transfers will be helpful in determining the permissibility of the transfers and what, if any, value the Debtor received in return for payments made to you.

Brandon Turner
December 13, 2024
Page 2

You are further notified that the claims against you will be governed by the Federal Rules of Bankruptcy Procedure and the Federal Rules of Civil Procedure, which apply to lawsuits filed in federal bankruptcy courts such as the one in the Central District of California. Pursuant to these rules, every party to a lawsuit has a duty to preserve all evidence which could be relevant to the suit. These obligations also arise when, as here, litigation is reasonably foreseeable. This includes the duty to preserve all electronic evidence, such as emails discussing the incident or related to matters at issue in the suit. This duty to preserve evidence is broad and extends to all documents, regardless of whether the document is stored electronically (such as email) or in hard-copy and regardless of the type of document. For example, reports, spreadsheets, photographs and videotapes are all considered documents that must be preserved. Furthermore, the duty to preserve this documentary evidence extends to all documents in existence as of the time you reasonably anticipated this litigation.

To ensure that all relevant documents are preserved, you should communicate directly with all employees who have possession or control of potentially relevant evidence, including but not limited to personnel who deal with email retention, deletion, and archiving. You should advise each of these employees to preserve any relevant documents in their custody. Furthermore, you should advise all such persons that any regularly scheduled and/or automatic deletion of email or other electronic documents must be discontinued with respect to any relevant data. In addition, any document destruction (such as shredding of documents) must cease with respect to any relevant documents. All relevant documents, both electronic and paper, must be preserved for the duration of this litigation.

The deadline to respond to this request is December 27, 2024. Failure to respond and/or provide the requested documents will likely result in the Trustee filing an adversary complaint to avoid, recover, and preserve the subject transfers for the benefit of the Estate. If you would like to discuss this matter, please feel free to contact me by telephone (619) 400-0500 or e-mail at jacob.bothamley@dinsmore.com.

Sincerely,

DINSMORE & SHOHL LLP

Jacob R. Bothamley, Esq. - Associate

# EXHIBIT 4

*Legal Counsel.*

# Dinsmôre

DINSMORE & SHOHL LLP
655 West Broadway, Suite 800
San Diego, CA 92101
www.dinsmore.com

Jacob R. Bothamley
(619) 400-0493 • F (619) 400-0501
Jacob.Bothamley@Dinsmore.com

*VIA U.S. Mail Only*

January 9, 2025

Brandon Turner
11301 Rodeo Cir.
Parker, Colorado 80138-7351

      Re:    *In re The Litigation Practice Group P.C.*
              U.S. Bankruptcy Court, Central District of California
              Case No. 8:23-bk-10571-SC

Dear Mr. Turner:

This constitutes a demand to provide any and all documents and information evidencing the basis for, accounting of, and any defenses to my client's claims to avoid and recover, the transfers to you from The Litigation Practice Group P.C. ("Debtor").

This firm represents Richard A. Marshack, Chapter 11 Trustee for the bankruptcy estate of The Litigation Practice Group P.C. and liquidating trustee of the LPG Liquidation Trust (collectively, "Trustee") in the above-referenced bankruptcy case. Pursuant to 11 U.S.C. § 1107 and his appointment as Trustee, the Trustee has the obligation to investigate and pursue claims, including fraudulent transfers, preferential transfers, and unauthorized post-petition transfers. Under the Bankruptcy Code, the Trustee has the power to file lawsuits seeking to avoid, recover, and preserve such transfers for the benefit of the Estate. *See* 11 U.S.C. §§ 544 *et seq*.

A review of the Debtor's books and records confirms that you received 3 potential fraudulent conveyances totaling $680,000.00, which can be avoided and recovered by the Trustee pursuant to 11 U.S.C. §§ 544 and 548 and Cal. Civ. Code. §§ 3439.04 and 3439.05.

The Trustee has been unable to determine why such transfers were made to you, what was provided to the Debtor in exchange for such transfers, and whether defenses exist to the Trustee's claims to avoid and recover the transfers. Please respond to this letter attaching any evidence you have related to these transfers including contracts, agreements, subscriptions, invoices, and any other documentation showing the date, terms, and amounts for the transfers received and any documents evidencing shipment dates as to goods and services provided by you to the Debtor. Documents showing the course of dealing between you and the Debtor, the date of receipt of the Debtor's payment and the amount, deposit date, and any proof of deposit for any or all of the transfers will be helpful in determining the permissibility of the transfers and what, if any, value the Debtor received in return for payments made to you.

Exhibit 4, Page 43

Brandon Turner
January 9, 2025
Page 2

You are further notified that the claims against you will be governed by the Federal Rules of Bankruptcy Procedure and the Federal Rules of Civil Procedure, which apply to lawsuits filed in federal bankruptcy courts such as the one in the Central District of California. Pursuant to these rules, every party to a lawsuit has a duty to preserve all evidence which could be relevant to the suit. These obligations also arise when, as here, litigation is reasonably foreseeable. This includes the duty to preserve all electronic evidence, such as emails discussing the incident or related to matters at issue in the suit. This duty to preserve evidence is broad and extends to all documents, regardless of whether the document is stored electronically (such as email) or in hard-copy and regardless of the type of document. For example, reports, spreadsheets, photographs and videotapes are all considered documents that must be preserved. Furthermore, the duty to preserve this documentary evidence extends to all documents in existence as of the time you reasonably anticipated this litigation.

To ensure that all relevant documents are preserved, you should communicate directly with any and all associated employees who have possession or control of potentially relevant evidence, including but not limited to personnel who deal with email retention, deletion, and archiving. You should advise each of these employees to preserve any relevant documents in their custody. Furthermore, you should advise all such persons that any regularly scheduled and/or automatic deletion of email or other electronic documents must be discontinued with respect to any relevant data. In addition, any document destruction (such as shredding of documents) must cease with respect to any relevant documents. All relevant documents, both electronic and paper, must be preserved for the duration of this litigation.

The deadline to respond to this request is January 17, 2025. Failure to respond and/or provide the requested documents will likely result in the Trustee filing an adversary complaint to avoid, recover, and preserve the subject transfers for the benefit of the Estate. If you would like to discuss this matter, please feel free to contact me by telephone (619) 400-0500 or e-mail at jacob.bothamley@dinsmore.com.

Sincerely,

Jacob R. Bothamley

*Legal Counsel.*

# Dinsmôre

DINSMORE & SHOHL LLP
655 West Broadway, Suite 800
San Diego, CA 92101
www.dinsmore.com

Jacob R. Bothamley
(619) 400-0493 • F (619) 400-0501
Jacob.Bothamley@Dinsmore.com

*VIA U.S. Mail Only*

January 9, 2025

Brandon Turner
212 Bedford Drive,
Brandon, Mississippi 39047-4530

> Re:    *In re The Litigation Practice Group P.C.*
> U.S. Bankruptcy Court, Central District of California
> Case No. 8:23-bk-10571-SC

Dear Mr. Turner:

This constitutes a demand to provide any and all documents and information evidencing the basis for, accounting of, and any defenses to my client's claims to avoid and recover, the transfers to you from The Litigation Practice Group P.C. ("Debtor").

This firm represents Richard A. Marshack, Chapter 11 Trustee for the bankruptcy estate of The Litigation Practice Group P.C. and liquidating trustee of the LPG Liquidation Trust (collectively, "Trustee") in the above-referenced bankruptcy case. Pursuant to 11 U.S.C. § 1107 and his appointment as Trustee, the Trustee has the obligation to investigate and pursue claims, including fraudulent transfers, preferential transfers, and unauthorized post-petition transfers. Under the Bankruptcy Code, the Trustee has the power to file lawsuits seeking to avoid, recover, and preserve such transfers for the benefit of the Estate. *See* 11 U.S.C. §§ 544 *et seq.*

A review of the Debtor's books and records confirms that you received 3 potential fraudulent conveyances totaling $680,000.00, which can be avoided and recovered by the Trustee pursuant to 11 U.S.C. §§ 544 and 548 and Cal. Civ. Code. §§ 3439.04 and 3439.05.

The Trustee has been unable to determine why such transfers were made to you, what was provided to the Debtor in exchange for such transfers, and whether defenses exist to the Trustee's claims to avoid and recover the transfers. Please respond to this letter attaching any evidence you have related to these transfers including contracts, agreements, subscriptions, invoices, and any other documentation showing the date, terms, and amounts for the transfers received and any documents evidencing shipment dates as to goods and services provided by you to the Debtor. Documents showing the course of dealing between you and the Debtor, the date of receipt of the Debtor's payment and the amount, deposit date, and any proof of deposit for any or all of the transfers will be helpful in determining the permissibility of the transfers and what, if any, value the Debtor received in return for payments made to you.

Brandon Turner
January 9, 2025
Page 2

You are further notified that the claims against you will be governed by the Federal Rules of Bankruptcy Procedure and the Federal Rules of Civil Procedure, which apply to lawsuits filed in federal bankruptcy courts such as the one in the Central District of California. Pursuant to these rules, every party to a lawsuit has a duty to preserve all evidence which could be relevant to the suit. These obligations also arise when, as here, litigation is reasonably foreseeable. This includes the duty to preserve all electronic evidence, such as emails discussing the incident or related to matters at issue in the suit. This duty to preserve evidence is broad and extends to all documents, regardless of whether the document is stored electronically (such as email) or in hard-copy and regardless of the type of document. For example, reports, spreadsheets, photographs and videotapes are all considered documents that must be preserved. Furthermore, the duty to preserve this documentary evidence extends to all documents in existence as of the time you reasonably anticipated this litigation.

To ensure that all relevant documents are preserved, you should communicate directly with any and all associated employees who have possession or control of potentially relevant evidence, including but not limited to personnel who deal with email retention, deletion, and archiving. You should advise each of these employees to preserve any relevant documents in their custody. Furthermore, you should advise all such persons that any regularly scheduled and/or automatic deletion of email or other electronic documents must be discontinued with respect to any relevant data. In addition, any document destruction (such as shredding of documents) must cease with respect to any relevant documents. All relevant documents, both electronic and paper, must be preserved for the duration of this litigation.

The deadline to respond to this request is January 17, 2025. Failure to respond and/or provide the requested documents will likely result in the Trustee filing an adversary complaint to avoid, recover, and preserve the subject transfers for the benefit of the Estate. If you would like to discuss this matter, please feel free to contact me by telephone (619) 400-0500 or e-mail at jacob.bothamley@dinsmore.com.

Sincerely,

Jacob R. Bothamley

# ADVERARY PROCEEDING COVER SHEET

B1040 (FORM 1040) (12/24)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

**PLAINTIFFS**
Richard A. Marshack, Trustee of the LPG Liquidation Trust

**DEFENDANTS**
Brandon Turner, an Individual, and Mathew Bowyer, an Individual,

**ATTORNEYS** (Firm Name, Address, and Telephone No.)
Yosina M. Lissebeck (SBN 201654)
Jacob R. Bothamley (319457)
DINSMORE & SHOHL LLP
655 West Broadway, Suite 800
San Diego, CA 92101    Telephone (619) 400-0500
yosina.lissebeck@dinsmore.com
Jacob.bothamely@dinsmore.com

**ATTORNEYS** (If Known)
The Shinbrot Firm
Jeffrey Shinbrot
15260 Ventura Blvd. Ste 1200
Sherman Oaks CA 91403

**PARTY** (Check One Box Only)
- [ ] Debtor
- [ ] U.S. Trustee/Bankruptcy Admin
- [ ] Creditor
- [ ] Other
- [x] Trustee

**PARTY** (Check One Box Only)
- [ ] Debtor
- [ ] U.S. Trustee/Bankruptcy Admin
- [ ] Creditor
- [x] Other
- [ ] Trustee

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
Complaint For: (1) Avoidance, Recovery, And Preservation Of 4-Year Actual Fraudulent Transfers; (2) Avoidance, Recovery, And Preservation Of 4-Year Constructive Fraudulent Transfers; (3) Avoidance, Recovery, And Preservation Of 2-Year Actual Fraudulent Transfers; (4) Avoidance, Recovery, And Preservation Of 2-Year Constructive Fraudulent Transfers; (5) Turnover; (6) Accounting; And (7) Aiding And Abetting Fraud

### NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(a) – Recovery of Money/Property**
- [x] 11-Recovery of money/property - §542 turnover of property
- [ ] 12-Recovery of money/property - §547 preference
- [x] 13-Recovery of money/property - §548 fraudulent transfer
- [x] 14-Recovery of money/property - other

**FRBP 7001(b) – Validity, Priority or Extent of Lien**
- [ ] 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(c) – Approval of Sale of Property**
- [ ] 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(d) – Objection/Revocation of Discharge**
- [ ] 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(e) – Revocation of Confirmation**
- [ ] 51-Revocation of confirmation

**FRBP 7001(f) – Dischargeability**
- [ ] 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
- [ ] 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
- [ ] 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(f) – Dischargeability (continued)**
- [ ] 61-Dischargeability - §523(a)(5), domestic support
- [ ] 68-Dischargeability - §523(a)(6), willful and malicious injury
- [ ] 63-Dischargeability - §523(a)(8), student loan
- [ ] 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
- [ ] 65-Dischargeability - other

**FRBP 7001(g) – Injunctive Relief**
- [ ] 71-Injunctive relief- imposition of stay
- [ ] 72-Injunctive relief - other

**FRBP 7001(h) Subordination of Claim or Interest**
- [ ] 81-Subordination of claim or interest

**FRBP 7001(i) Declaratory Judgment**
- [ ] 91-Declaratory judgment

**FRBP 7001(j) Determination of Removed Action**
- [ ] 01-Determination of remove d claim or cause

**Other**
- [ ] SS-SIPA Case - 15 U.S.C. §§78aaa *et.seq.*
- [x] 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| [ ] Check if this case involves a substantive issue of state law | [ ] Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| [ ] Check if a jury trial is demanded in complaint | Demand $ 730,000 |

Other Relief Sought

48

**B1040 (FORM 1040) (12/24)**

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>The Litigation Practice Group P.C. | BANKRUPTCY CASE NO.<br>8:23-bk-10571-SC | |
| DISTRICT IN WHICH CASE IS PENDING<br>Central District of California | DIVISION OFFICE<br>Santa Ana | NAME OF JUDGE<br>Scott C. Clarkson |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br>/s/ Jacob R. Bothamley | | |
| DATE<br>March 19, 2025 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Yosina M. Lissebeck<br>Jacob R. Bothamley<br>Attorneys for Plaintiff, Richard A. Marshack, Trustee of the<br>LPG Liquidation Trust | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.