CHRISTOPHER CELENTINO (131688)
Christopher.Celentino@dinsmore.com
YOSINA M. LISSEBECK (201654)
Yosina.Lissebeck@dinsmore.com
CHRISTOPHER B. GHIO (259094)
Christopher.Ghio@dinsmore.com
JACOB R. BOTHAMLEY (319457)
Jacob.Bothamley@dinsmore.com
**DINSMORE & SHOHL LLP**
655 West Broadway, Suite 800
San Diego, California 92101
Tele: 619.400.0500
Fax:  619.400.0501

Attorneys for Plaintiff Richard A. Marshack,
Trustee of the LPG Liquidation Trust

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>The Litigation Practice Group P.C.,<br><br>Debtor. | Chapter 11<br><br>Case No. 8:23-bk-10571-SC<br><br>Adv. Proc. No.<br><br>**COMPLAINT FOR:** |
| Richard A. Marshack, Trustee of the LPG Liquidation Trust,<br><br>Plaintiff,<br><br>v.<br><br>Outsource LLC, dba Apex Marketing LLC, a Delaware Limited Liability Company; Ali Kash, individually and as principal of Outsource LLC; Z.A.P. Marketing Corp., a California Corporation; Mohamed Hegazi, an individual and Chief Executive Officer of Z.A.P. Marketing Corp.; and Zeid Nesheiwat, a principal of Z.A.P. Marketing Corp.,<br><br>Defendants. | **(1) AVOIDANCE, RECOVERY, AND PRESERVATION OF 4-YEAR ACTUAL FRAUDULENT TRANSFERS;**<br><br>**(2) AVOIDANCE, RECOVERY, AND PRESERVATION OF 4-YEAR CONSTRUCTIVE FRAUDULENT TRANSFERS;**<br><br>**(3) AVOIDANCE, RECOVERY, AND PRESERVATION OF 2-YEAR ACTUAL FRAUDULENT TRANSFERS;**<br><br>**(4) AVOIDANCE, RECOVERY, AND PRESERVATION OF 2-YEAR CONSTRUCTIVE FRAUDULENT TRANSFERS;**<br><br>**(5) AVOIDANCE, RECOVERY, AND PRESERVATION OF TRANSFERS WITHIN 90-DAYS OF THE PETITION DATE;**<br><br>**(6) AVOIDANCE, RECOVERY, AND PRESERVATION OF POST-PETITION TRANSFERS;** |

1

**(7) TURNOVER;**

**(8) AIDING AND ABETTING FRAUD; AND**

**(9) DISALLOWANCE OF CLAIMS**

For his *Complaint for (1) Avoidance, Recovery, and Preservation of 4-Year Actual Fraudulent Transfers; (2) Avoidance, Recovery, and Preservation of 4-Year Constructive Fraudulent Transfers; (3) Avoidance, Recovery, and Preservation of 2-Year Actual Fraudulent Transfers; (4) Avoidance, Recovery, and Preservation of 2-Year Constructive Fraudulent Transfers; (5) Avoidance, Recovery, and Preservation of Transfers Within 90-Days of the Petition Date; (6) Avoidance, Recovery, and Preservation of Post-Petition Transfers; (7) Turnover; and (8) Aiding and Abetting Fraud*; *and (9) Disallowance of Claims* ("Complaint"), plaintiff Richard A. Marshack, the former Chapter 11 Trustee for the bankruptcy estate ("Estate") of debtor The Litigation Practice Group P.C. ("Debtor" or "LPG") and current liquidating trustee of the LPG Liquidation Trust (collectively "Trustee" or "Plaintiff") in the above-captioned bankruptcy case ("Bankruptcy Case"), alleges and avers as follows:

## STATEMENT OF THE CASE

1.      A bankruptcy trustee may avoid and recover actual and constructively fraudulent transfers made by a debtor. In this case, while insolvent, Debtor transferred at least $807,489.84 to Defendant Outsource, LLC ("Defendant Outsource") and its dba Apex Marketing, LLC[1] ("Apex Marketing") within four years prior to the bankruptcy (the "Outsource Pre-petition Transfers"), which includes at least $534,057.94 in payments from Debtor within 90 days of Debtor's petition date (the "Outsource Preference Transfers"), March 20, 2023 ("Petition Date"). Defendant Outsource also received at least $184,788.10 after the Petition Date ("Outsource Post-Petition Transfers"). The total of all transfers from Debtor to Defendant Outsource is at least $992,277.94 (collectively, the "Outsource Transfers").

2.      During the same four-year period prior to the Petition Date, Debtor transferred at least $44,806.91 ("Z.A.P. Pre-Petition Transfers") to Defendant Z.A.P Marketing Corp., a California corporation ("Defendant Z.A.P."). The Z.A.P. Pre-Petition Transfers includes at least $34,692.34 in

---

[1] Apex Marketing, LLC, the dba of Defendant Outsource, is a Delaware Limited Liability Company, but so far Trustee's investigation has not yet revealed transfers from Debtor to Apex Marketing, LLC, but Trustee's investigation remains ongoing.

1 payments from Debtor within 90-days of the Petition Date ("Z.A.P. Preference Transfers"). Defendant

2 Z.A.P. also received at least $22,908.18 in payments from Debtor after the Petition Date (Z.A.P. Post-

3 Petition Transfers"). The total of all transfers from Debtor to Defendant Z.A.P. is at least $67,715.09

4 (collectively, the "Z.A.P. Transfers").

5     3.    Collectively, the sum total of all (pre- and post-petition) transfers from Debtor to

6 Defendant Outsource and Defendant Z.A.P. is at least $1,059,993.03 (collectively, the Transfers").

7     4.    Reasonably equivalent value was not provided to the Debtor in exchange for either of

8 the Outsource Transfers or the Z.A.P. Transfers, and, as evidenced below, both the Outsource

9 Transfers and the Z.A.P. Transfers were made with actual intent to hinder, delay, or defraud Debtor's

10 creditors.

11     5.    Under these facts, the Trustee can avoid the Outsource Transfers and the Z.A.P.

12 Transfers and recover from Defendant Outsource and Defendant Z.A.P. as the "initial" transferees of

13 such transfers who did not take in good faith, for value, and without knowledge of the avoidability of

14 such transfers. Trustee seeks to avoid, recover, and preserve the Outsource Transfers and the Z.A.P.

15 Transfers for the benefit of the Estate.

16 <u>**STATEMENT OF JURISDICTION AND VENUE**</u>

17     6.    The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157

18 and 1334 in that this action arises in and relates to the bankruptcy case pending in the United States

19 Bankruptcy Court for the Central District of California, Santa Ana Division, entitled *In re The*

20 *Litigation Practice Group P.C.*, Bankruptcy Case Number 8:23-bk-10571-SC.

21     7.    Plaintiff has standing to bring this adversary proceeding pursuant to Provision V.E. of

22 the Modified First Amended Joint Chapter 11 Plan of Liquidation, confirmed by the Court on

23 September 9, 2024, as Dk. No. 1646. The Plan provides that the estate's litigation claims, including

24 avoidance claims, were transferred to the LPG Liquidating Trust. Plaintiff brings these claims on

25 behalf of the Trust.

26     8.    This adversary proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B),

27 (E), (H), and (O), and this Court has Constitutional authority to enter a final judgment on these claims.

28 ///

To the extent any claim for relief contained herein is determined not to be a non-core proceeding or a *Stern*-claim, Plaintiff consents to the entry of final judgment and orders by the Bankruptcy Court.

9.      Defendant is notified that Rule 7008 of the Federal Rules of Bankruptcy Procedure requires Defendant to plead whether consent is given to the entry of a final order and judgment by the Bankruptcy Court.

10.     Venue properly lies in the Central District of California in that this adversary proceeding arises in or is related to a case under Title 11 of the United State Code as provided in 28 U.S.C. §§ 1408 and 1409.

## PARTIES

11.     The Litigation Practice Group P.C. (previously defined as "Debtor") is a corporation organized under the laws of the State of California, that had its principal place of business in Tustin, California. During all relevant times prior to bankruptcy, Daniel S. March ("Mr. March") was the Chief Executive Officer of Debtor.

12.     Richard A. Marshack (previously defined as "Trustee" or "Plaintiff") was the duly-appointed, qualified, and acting Chapter 11 Trustee for the Estate. Pursuant to the confirmed Plan, the Trustee now serves as Trustee of the LPG Liquidation Trust. All claims have been transferred to the Liquidating Trust pursuant to the confirmed plan and Plaintiff brings this action solely in his capacity as the former Chapter 11 Trustee and current Liquidating Trustee of the LPG Liquidation Trust for the benefit of Debtor's Estate and its creditors.

13.     Plaintiff alleges that, at all relevant times, Defendant Outsource was a domestic corporation, though Plaintiff does not presently know from what state. As noted above, on information and belief, Defendant Outsource had a dba, Apex Marketing LLC, a Delaware Limited Liability Company (previously defined as "Apex Marketing"). According to the Delaware Secretary of State, Apex Marketing may be served by first class mail postage prepaid upon its registered agent for service of process, Harvard Business Services, Inc., at 16192 Coastal Hwy, Lewes, Delaware 19958. A true and correct copy of Apex Marketing's information from Delaware Secretary of State website is attached hereto as **Exhibit 1**.

///

14.     On information and belief, Plaintiff alleges that at all relevant times, defendant Ali Kash ("Defendant Kash") was a principal of Defendant Outsource and its dba Apex Marketing, LLC. On information and belief, Defendant Kash may be served by first class mail postage prepaid at 1600 Dove Street, Suite 100, Newport Beach, CA 92660.

15.     Plaintiff alleges that at all relevant times Defendant Z.A.P. was a domestic corporation existing under the laws of the State of California. According to the California Secretary of State website, Defendant Z.A.P.'s principal place of business is located at 9920 Research Drive, Irvine, California 92618. This address also serves as Defendant Z.A.P.'s mailing address. Service by first class mail postage prepaid may be made upon Defendant Z.A.P.'s registered agent, Northwest Registered Agent, Inc. A true and correct copy of Defendant Z.A.P.'s information from the California Secretary of State's website is attached hereto as **Exhibit 2.** Finally, on information and belief, Defendant Z.A.P. may have an alternate address, 8845 Research Drive, Suite 120, Irvine, California, 92618.

16.     Plaintiff alleges that at all relevant times, defendant Mohamed Hegazi ("Defendant Hegazi") was the Chief Executive Officer for Defendant Z.A.P. On information and belief, Defendant Hegazi may be served by first class mail postage prepaid at 13567 Gold Creek Drive, Eastvale, California 92880-5546.

17.     Plaintiff alleges that at all relevant times, defendant Zeid Nesheiwat ("Defendant Nesheiwat") was also a principal of Defendant Z.A.P. On information and belief, Defendant Nesheiwat may be served by first class mail postage prepaid at 26652 Bridlewood Drive, Laguna Hills, California 92653-7570.

### GENERAL ALLEGATIONS

**A.      The Bankruptcy Case**

18.     On March 20, 2023 (previously defined as the "Petition Date"), the Debtor filed a voluntary petition under Chapter 11 of Title 11 of the United States Code, initiating bankruptcy Case No. 8:23-bk-10571-SC ("Bankruptcy Case") in the United States Bankruptcy Court for the Central District of California, Santa Ana Division.

///

19.     On May 8, 2023, Trustee accepted his appointment as the Chapter 11 Trustee in the Bankruptcy Case. To the extent that Trustee was not appointed until after any of the events alleged in this Complaint, the allegations are based on information and belief. *See Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017); *Miller v. City of Los Angeles*, 2014 U.S. Dist. LEXIS 198871, at *5 (C.D. Cal. Aug. 7, 2014); *Mireskandari v. Daily Mail and General Trust PLC*, 2013 U.S. Dist. LEXIS 194437, at *4 (C.D. Cal. July 31, 2013).

20.     Pursuant to the Order Confirming Modified First Amended Joint Chapter 11 Plan of Liquidation entered September 9, 2024, and the Notice of Occurrence of Effective Date of Modified First Amended Joint Chapter 11 Plan of Liquidation filed September 24, 2024, Richard A. Marshack became the Liquidating Trustee of the LPG Liquidation Trust effective September 24, 2024. [Bankr. Docket Nos. 1646 & 1762].

**B.    Protective Order**

21.     On or about May 2, 2024, Plaintiff filed that certain Notice and Motion for Entry of Protective Order (the "Protective Order Motion"). On June 3, 2024, the Court entered its Order Granting Motion for Entry of Protective Order and the Protective Order [Bankr. Docket No. 1270] (the "Protective Order"). A true and accurate copy of the Protective Order is attached as **Exhibit 3** and incorporated here.

22.     By its own terms, the Protective Order applies to this adversary proceeding and governs all discovery conducted herein.

**C.    Debtor's Insolvency**

23.     Debtor was insolvent when the Transfers occurred as evidenced by: (a) the 14 UCC 1 statements reflecting secured liens against the Debtor's owned and after-acquired assets and the assignment or sale of substantial portions of the Debtor's future income; (b) the priority and nonpriority unsecured debt of nearly $142 million listed in Debtor's schedules; and, (c) the $424 million of creditor claims filed in this Bankruptcy Case.

24.     Moreover, insolvency is presumed as a matter of law where, as in this Bankruptcy Case, the debtor operated a Ponzi scheme. *See, e.g., Global Money Mgmt., L.P. v. McDonnold*, No. 06CV34, 2008 U.S. Dist. LEXIS 128733, at *15 (S.D. Cal. Feb. 27, 2008) (concluding that "if a Ponzi scheme

6

1   is proven, then the debtor is proven insolvent from the time of its inception"). (internal citations

2   omitted).

3   **D.    <u>LPG</u>**

4       25.    Pre-petition, Debtor was a law firm that provided consumer debt resolution services to

5   more than 65,000 clients nationwide.

6       26.    Tony Diab ("Diab") operated, dominated and controlled Debtor at all relevant times.

7       27.    The consumers would pay LPG over a period of time via monthly debits and/or ACH

8   debits from their bank accounts.

9       28.    The monthly payments were meant to cover all legal services LPG provided to the

10  consumers including validation of the debts, review of documents to determine enforceability, and

11  court appearances to halt lawsuits to obtain judgments.

12      29.    In certain instances, LPG would file a lawsuit in an effort to eliminate a disputed debt

13  or to prosecute affirmative claims held by the consumers.

14      30.    LPG mismanaged the consumers' monthly payments.

15      31.    Diab and others devised a plan to fraudulently transfer funds, client files, client funds

16  and assets in the form of ACH Receivables (the "ACH Receivables" or "Accounts Receivable") out

17  of LPG to third parties prior to the filing of bankruptcy.

18      32.    To obtain consumer clients, LPG contracted with marketing companies, who engaged

19  in illegal capping and would advertise or call to solicit consumers to become clients of LPG in

20  exchange for a percentage of the ACH Receivables collected by LPG from the consumers.

21      33.    The marketing companies would advertise to or call to solicit them to become clients

22  of LPG.

23      34.    Because LPG received payments from consumers over time, it often sought financing

24  by borrowing against its future cash flows. This borrowing was not only used to finance operations at

25  LPG, but also to pay the fees owed to the marketing companies for providing the client referrals.

26      35.    Many of the documents executed in connection with such financing described the

27  transactions as accounts receivable purchase agreements.

28

36.     To facilitate the transfer of ACH Receivables to marketing affiliates, Diab used entities he controlled including, without limitation, Vulcan Consulting, LLC, Coast Processing, LLP, Prime Logix, LLC, Maverick Management, LLC, BAT, Inc. and/or Validation Partners LLC.

37.     Under applicable state and federal laws, ACH pulls from a consumer's bank account cannot occur until the party initiating the payments obtains the consumer's express written consent.

38.     With respect to the ACH pulls, the consumer clients only consented to the Debtor initiating the payments from their accounts.

39.     With respect to the ACH pulls, the funds were derived from consumer clients that never consented to any law firm other than the Debtor representing them.

40.     At all times, the Transfers constituted transfers of interests of the Debtor in property as that term is defined in 11 U.S.C. § 101(54).[2]

**E.     LPG'S Prepetition Creditors**

41.     Debtor was insolvent when each Transfer was made. This insolvency is evidenced in part by the fact that 14 separate UCC-1 statements were of record securing debts of the Debtor as of September 1, 2022. These statements remained unreleased as of the Petition Date. These statements either reflected secured liens against the Debtor's assets then owned or thereafter acquired or provided evidence of the assignment or sale of substantial portions of the Debtor's future income.

42.     When the Transfers were made, these prior UCC-1 statements secured the repayment of the following claimed amounts that are currently known to Trustee and are allegedly owed by the Debtor: (i) $2,374,004.82 owed to Fundura Capital Group as evidenced by Proof of Claim No. 335

---

[2] To the extent the LPG Insiders are adjudicated to be initial transferees of the Transfers, the omission of the LPG Insiders in this Complaint is not fatal to the fraudulent transfer claims set forth herein. See *Erickson v. Leonard (In re AVI, Inc.)*, 389 B.R. 721, 735 (9th Cir. BAP 2008) ("[W]e hold that a trustee is not required to avoid the initial transfer from the initial transferee before seeking recovery from subsequent transferees under § 550(a)(2)."); *IBT Intern., Inc. v. Northern (In re Int'l Admin. Servs., Inc,)*, 408 F.3d 689, 708 (11th Cir. 2005) ("Section 550(a) does not mandate a plaintiff to first pursue recovery against the initial transferee and successfully avoid all prior transfers against a mediate transferee."); *Leslie v. Ace Gallery N.Y. Corp. (In re Art & Architecture Books of the 21st Century)*, 2021 Bankr. LEXIS 3637, *98 (Bankr. C.D. Cal. 2022) ("The language of 11 U.S.C. § 550 does not require a trustee to successfully avoid a transfer with respect to the initial transferee in order to recover from a subsequent transferee under 11 U.S.C. § 550."); *In re M. Fabrikant & Sons, Inc.*, 394 B.R. 721, 743 (Bankr. S.D.N.Y. 2008) ("[T]he Bankruptcy Code, and specifically §§ 544(b) and 548, does not identify the proper, necessary or indispensable parties to a fraudulent transfer action, and does not state that the initial transferee is necessary.").

purportedly secured by a UCC statement filed on or about May 19, 2021; (ii) approximately $15 million owed to MNS Funding, LLC as evidenced by Proof of Claim No. 1060 purportedly secured by a UCC statement filed on or about May 28, 2021; (iii) approximately $5,000,000 owed to Azzure Capital, LLC as evidenced by Proof of Claim No. 127 secured by a UCC statement filed on or about May 28, 2021; and (iv) approximately $1.5 million owed to Diverse Capital, LLC purportedly secured by UCC statements filed on or about September 15, 2021, and December 1, 2021.[3]

43.     As alleged above, LPG was borrowing against its assets and future income, often on unfavorable terms, not only to finance operations at LPG, but also to pay the fees owed to the marketing affiliates for providing it with consumer clients. Pursuant to the agreements with the marketing companies, significant percentages of future payments were already promised to be paid to the marketing affiliates from whatever future income the Debtor would receive.

44.     In addition, on Debtor's Schedule E/F [Bankr. Docket No. 33], Debtor scheduled 11 unsecured creditors with priority unsecured claims totaling $374,060.04. These priority unsecured creditors include Indiana Dept. of Revenue, Dept. of Labor and Industries, Arizona Dept. of Economic Security, Arkansas Dept. of Finance & Admin., California Franchise Tax Board, Georgia Dept. of Labor, Internal Revenue Service, Mississippi Dept. of Revenue, Nevada Dept. of Taxation, Utah State Tax Commission, and Wisconsin Dept. of Revenue (collectively, "Priority Unsecured Creditors").

45.     Another group of creditors that Debtor listed on its Schedule E/F [Bankr. Docket No. 33] are nonpriority unsecured creditors. Those 58 creditors have scheduled claims totaling $141,439,158.05 and include Ajilon; Anthem Blue Cross; Azevedo Solutions Groups, Inc.; Carolina Technologies & Consulting Invoice; Collaboration Advisors; Credit Reporting Service Inc.; CT Corporation – Inv.; Debt Pay Pro; Document Fulfillment Services; EnergyCare, LLC; Exela Enterprise Solutions; First Legal Network, LLC; GHA Technologies Inc.; Harrington Electric, Inc.; Imagine Reporting; Juize, Inc.; Krisp Technologies, Inc.; Liberty Mutual; Marc Lemauviel – Allegra; MarkSYS Holdings, LLC; Netsuite-Oracle; Pitney Bowes; Rapid Credit, Inc.; SBS Leasing A Program of De Lage Landen; Security Solutions; Sharp Business Systems; Streamline Performance,

---

[3] Trustee reserves all rights, claims, and defenses with respect to these and any other purported secured or unsecured claims.

9

Inc.; Thomson Reuters; Twilio, Inc.; Nationwide Appearance Attorneys; Executive Center, LLC; Outsource Accelerator, Ltd.; TaskUs Holdings, Inc.; Marich Bein, LLC; Validation Partners; MC DVI Fund 1, LLC; MC DVI Fund 2, LLC; Debt Validation Fund II, LLC; Tustin Executive Center; LexisNexus; JP Morgan Chase; Business Centers of America; Michael Schwartz; Anibal Colon Jr.; Kathleen Lacey; David Ulery; Kimberly Birdsong; Kevin Carpenter; Karen Suell; Gloria Eaton; Carolyn Beech; Debra Price; Kenneth Topp; Darcey Williamson, Trustee; James Hammett; Johnny Rizo; Beverly Graham; Kathleen Scarlett; and Geneve and Myranda Sheffield (collectively, "Nonpriority Unsecured Creditors" and, together with the Secured Creditors and Priority Unsecured Creditors, "Prepetition Creditors").

46.    As of the filing of this complaint, approximately 5,771 claims have been filed with the Bankruptcy Court. While Trustee has not reviewed all claims as of the date of this complaint, and reserves all rights to object to those claims, the total amount is in excess of approximately $717,507,462.29.

**F.    Ponzi Scheme**

47.    This Court has recognized that Debtor operated a Ponzi scheme by using funds provided by former investors to attract new investors hoping for very high returns. [*See* Bankr. Docket No. 1545, fn. 5.]

48.    The Ponzi Scheme Presumption establishes a debtor's "intent to defraud future undertakers [investors] from the mere fact that a debtor was running a Ponzi scheme." *Merrill v. Abbott* (*In re Independent Clearing House Co.*), 77 B.R. 843, 860 (D. Utah 1987). "Knowledge to a substantial certainty constitutes intent in the eyes of the law, cf. Restatement (Second) of Torts § 8A (1963 & 1964), and a debtor's knowledge that future investors will not be paid is sufficient to establish his actual intent to defraud them." *Id*. A trustee in bankruptcy is not required to show that an operator of a Ponzi scheme was subjectively aware his Ponzi scheme was destined to fail. *In re EPD Inv. Co., LLC*, 114 F.4th at 1153 (9th Cir. 2024).

49.    "[I]f all the debtor receives in return for a transfer is the use of the defendant's money to run a Ponzi scheme, there is nothing in the bankruptcy estate for creditors to share." *In re Independent Clearing House Co.* 77 B.R. at 859. In such a situation, the use of the defendant's money

1   cannot objectively be called "reasonably equivalent value." *Id*. Therefore, "[t]he trustee can avoid the

2   transfers if they were preferential or fraudulent. Transfers to investors in a Ponzi scheme are

3   preferential and fraudulent. Therefore, they constitute 'property of the estate,' and the trustee can

4   recover them." *Id*. at 853 n.17 (citations omitted).

5       50.     Based on the Ponzi Scheme presumption, the Court can infer that the Debtor had the

6   intent to defraud investors within the meaning of 11 U.S.C. § 548(a)(1). Since the transfers by Debtor

7   to third parties, including Defendants, were made with the intent to further the Ponzi scheme, the

8   Debtor did not receive an objectively reasonable equivalent value for such transfers, and the Trustee

9   can avoid any such transfers because they were preferential and/or fraudulent.

10      **G.     The Criminal Enterprise**

11      51.     Debtor's operations, activities and transfers done in furtherance of the Ponzi scheme,

12  including those in conjunction with its affiliates and its dealings with Defendants, also constituted a

13  criminal enterprise.

14      52.     This, too, is evidenced by the Court's order in the 1046 Action wherein it denied the

15  Motion of Greyson Law Center to Vacate the Preliminary Injunction previously entered in Debtor's

16  main case, and the Court offered the opinion:

17          Through the various proceedings and evidence produced in both the main case and the
            various adversary proceedings, including but not limited to various Motions for

18          Temporary Restraining Orders, Preliminary Injunctions, Motions to Dismiss, a Motion
            for Appointment of a Chapter 11 Trustee, a Motion to Sell Assets, a multitude of

19          pleadings filed by both secured and unsecured creditors (supported by evidence
            presented under oath) in support of their claims, and especially the pleadings and

20          evidence presented by the "Watchdog of the Bankruptcy System" aka the Office of the
            United States Trustee (an arm of the United States Department of Justice), *it is clear to*

21          *this Court that Debtor, since its pre-petition inception (and through the time of the*

22          *appointment of the Chapter 11 Trustee) was in the Court's opinion, operating a*
            *criminal enterprise.*

23

24  (Case No. 8:23-bk-10571-SC; Adv. No. 8:23-ap-01046-SC [Bankr. Docket No. 1545, p.3

25  (emphasis in original)].)

26      53.     As part of this criminal enterprise, Debtor and Defendants engaged in fraudulent

27  transfers of its accounts receivables pursuant to various agreements.

28  ///

**H.    Defendants Outsource And Z.A.P.**

     **a.    Defendant Outsource**

54.    Defendant Outsource dba Apex Marketing was one of the marketing affiliate companies that procured clients for Debtor. *See Stipulation With Defendant Tony Diab For Entry of Judgment*, Adv. Proc. 23-ap-01046-SC, dkt. 719, Exhibit 5, p. 2.).

55.    On information and belief, Defendant Outsource had an affiliate agreement similar to the affiliate agreements Debtor had with the dozens of other marketing affiliates, whereby Defendant Outsource would procure and refer potential clients to Debtor for an agreed upon fee.

     **b.    Defendant Z.A.P.**

56.    Defendant Z.A.P. was also a marketing affiliate with Debtor that procured clients for Debtor.

57.    Debtor agreed to pay, and in fact paid, Defendant Z.A.P. a portion of monthly payments received from consumers referred by Defendant Z.A.P.

     **i.    The Z.A.P. Affiliate Agreement**

58.    On or about October 19, 2022, Defendant Z.A.P. entered into an Affiliate Agreement ("Z.A.P. Affiliate Agreement") with Debtor. A true and correct copy of the Z.A.P. Affiliate Agreement is attached hereto as **Exhibit 4**.

59.    Under the Z.A.P. Affiliate Agreement, Debtor agreed to pay Defendant Z.A.P. as follows:

> Affiliate shall be entitled to receive the following as full and complete compensation for its services to LPG: LPG shall pay 75% per file for each file that Affiliate places with LPG, not counting the monthly maintenance fee of $96.38, which LPG shall retain to cover administrative costs for each file. LPG shall calculate the amount of each file, apply the above-identified percentage fee, and remit the same to Affiliate pursuant to an agreed-upon schedule not to exceed one remittance per seven (7) calendar days. If any consumer cancels LPG's services, or demands a refund for payment for such services, or both, then LPG shall be solely responsive for such cost and Affiliate shall not have to share such expense. LPG has exclusive discretion to grant or deny a requested refund or cancellation. Finally, LPG may treat a consumer's failure to remit payment in a timely manner as a cancellation of the legal services agreement executed by consumer with LPG, and has sole discretion to make such determination. *See* **Exhibit 4** at ¶6.

60.     The affiliate agreements violate Sections 6151 and 6155 of the California Business and Professional Code, which prohibit referrals of potential clients to attorneys unless registered with the State Bar of California. Cal. Bus. & Prof. Code § 6155. "Referral activity" includes "any entity 'which, in person, electronically, or otherwise, refers the consumer to an attorney or law firm not identified' in the advertising." *Jackson v. LegalMatch.com*, 42 Cal. App. 5th 760, 775 (2019). A referral includes receiving information from potential clients and sending that information to lawyers, even when the advertiser does not advertise the name of the attorneys and the clients do not clear the name of the potential attorney after the referral occurred. *Id.*

61.     Further, if any effect of an agreement is to accomplish an unlawful purpose, the agreement may be declared illegal regardless of the intention of the parties. *Stockton Morris Plan Co. v. Cal. Tractor & Equip. Corp.*, 112 Cal. App. 2d 684, 690 (1952) (citing *Fewel & Dawes, Inc. v. Pratt*, 17 Cal. 2d 85, 91 (1941)). This remains true regardless of whether the contract has been performed. *Stevens v. Boyes Hot Springs Co.*, 113 Cal. App. 479, 483 (1931) (A contract by a corporation to purchase its own stock has the effect of illegally withdrawing and paying to a stockholder a part of the capital stock of the corporation and is illegal and void, regardless of the fact that the contract is fully performed by the sellers and partially performed by the corporation.); *Mansfield v. Hyde*, 112 Cal. App. 2d 133, 139 (1952), overruled, *Fomco, Inc. v. Joe Maggio, Inc.*, 8 Cal. Rptr. 459 (1960) (Where object of statute requiring licenses is to prevent improper persons from engaging in particular activity, or is for purpose of regulating occupation or business for protection of public, imposition of penalty amounts to prohibition against engaging in occupation or business without license, and contract made by unlicensed person in violation of statute is invalid.); *Firpo v. Murphy*, 72 Cal. App. 249, 252 (1925) (A contract to pay commissions to a real estate broker is illegal and he is not entitled to recover thereon where he fails to secure the license required by law to carry on his business.).

62.     Because the Affiliate Agreements violate federal and state law, they are void, unenforceable, and subject to avoidance as fraudulent. Any alleged consideration provided under the Affiliate Agreements was unlawful.

///

63.     Unlawful consideration is that which is: "(1) contrary to an express provision of law; (2) contrary to the policy of express law, though not expressly prohibited; or (3) otherwise contrary to good morals." Cal. Civ. Code § 1667. "If any part of a single consideration for one or more objects, or of several considerations for a single object, is unlawful, the entire contract is void." Cal. Civ. Code § 1608.

ii.     **Z.A.P. Accounts Receivable Purchase Agreement**

64.     On or about February 28, 2023, Defendant Z.A.P. entered into an Accounts Receivable Purchase Agreement ("Z.A.P. ARPA") with the Debtor. A true and correct copy of the ARPA is attached hereto as **Exhibit 5**.

65.     Pursuant to the Z.A.P. ARPA Agreement, Defendant Z.A.P. purported to sell Debtor streams of monthly payments from consumers that were supposed to be held in trust until earned. *See* **Exhibit 5**.

66.     By entering into the ARPA Agreement, Debtor and Defendant Z.A.P. violated federal and state laws by selling unearned legal fees or funds there were supposed to be held in trust or used for the benefit of consumers.

67.     The effect of the ARPA Agreements was to accomplish an unlawful purpose. Thus, the agreements may be declared illegal regardless of the intention of the parties. *Stockton Morris Plan Co. v. Cal. Tractor & Equip. Corp.*, 112 Cal. App. 2d 684, 690 (1952) (citing *Fewel & Dawes, Inc. v. Pratt*, 17 Cal. 2d 85, 91 (1941)). This remains true regardless of whether the contract has been performed. *Stevens v. Boyes Hot Springs Co.*, 113 Cal. App. 479, 483 (1931) (A contract by a corporation to purchase its own stock has the effect of illegally withdrawing and paying to a stockholder a part of the capital stock of the corporation and is illegal and void, regardless of the fact that the contract is fully performed by the sellers and partially performed by the corporation.); *Mansfield v. Hyde*, 112 Cal. App. 2d 133, 139 (1952), overruled, *Fomco, Inc. v. Joe Maggio, Inc.*, 8 Cal. Rptr. 459 (1960) (Where object of statute requiring licenses is to prevent improper persons from engaging in particular activity, or is for purpose of regulating occupation or business for protection of public, imposition of penalty amounts to prohibition against engaging in occupation or business without license, and contract made by unlicensed person in violation of statute is invalid.); *Firpo v.*

*Murphy*, 72 Cal. App. 249, 252 (1925) (A contract to pay commissions to a real estate broker is illegal and he is not entitled to recover thereon where he fails to secure the license required by law to carry on his business.).

68.    Because the Z.A.P. ARPA Agreement violates federal and state laws, it is void, unenforceable, and subject to avoidance as fraudulent. Any alleged consideration provided to Debtor under the Z.A.P. ARPA Agreement was unlawful.

69.    Unlawful consideration is that which is: "(1) contrary to an express provision of law; (2) contrary to the policy of express law, though not expressly prohibited; or (3) otherwise contrary to good morals." Cal. Civ. Code § 1667. "If any part of a single consideration for one or more objects, or of several considerations for a single object, is unlawful, the entire contract is void." Cal. Civ. Code § 1608.

70.    Furthermore, on information and belief, the Defendants named in this Complaint were informed of the unlawful nature of the business arrangements and willingly chose to participate. (*See Stipulation With Defendant Tony Diab For Entry of Judgment*, Adv. Proc. 23-ap-01046-SC, dkt. 719, pp. 12-13, ¶ 44.)

## I.    **Defendant Kash**

71.    On information and belief, Defendant Kash was, at all times mentioned herein, in an executive position with Defendant Outsource.

72.    As an executive of Defendant Outsource, Defendant Kash had control of and authorized Defendant Outsource's financial operations.

73.    On information and belief, Defendant Kash executed or authorized an affiliate agreement with Debtor.

74.    Defendant Kash, through authorizing actions of Defendant Outsource, facilitated Debtor's criminal enterprise by advertising and marketing Debtor's services to potential consumers and thereafter enrolling consumers to pay for Debtor's services.

75.    Defendant Kash used the business operations between Defendant Outsource and Debtor for his personal gain.

///

**J.    Defendant Hegazi**

76.    Defendant Hegazi was, at all times mentioned herein, was the Chief Executive Officer of Defendant Z.A.P..

77.    As an executive of Defendant Z.A.P., Defendant Hegazi had control of and authorized Defendant Z.A.P.'s financial operations.

78.    Defendant Hegazi executed the Affiliate Agreement with Debtor. *See* **Exhibit 4**.

79.    Defendant Hegazi, through authorizing actions of Defendant Z.A.P., facilitated Debtor's criminal enterprise by advertising and marketing Debtor's services to potential consumers and thereafter enrolling consumers to pay for Debtor's services.

80.     Defendant Hegazi used the business operations between Defendant Z.A.P. and Debtor for his personal gain.

**K.    Defendant Nesheiwat**

81.    On information and belief, Defendant Nesheiwat was a principal, and possibly an owner of Defendant Z.A.P.

82.    As a principal of Defendant Z.A.P., Defendant Nesheiwat also had control of an authorized Defendant Z.A.P.'s financial operations.

83.    Defendant Nesheiwat through authorizing actions of Defendant Z.A.P., facilitated Debtor's criminal enterprise by advertising and marketing Debtor's services to potential consumers and thereafter enrolling consumers to pay for Debtor's services.

**L.    The Demand and Preference Letters**

   **a.    Defendant Outsource Preference Letter**

84.    On or about January 22, 2024, Trustee sent a letter to Defendant Outsource LLC based on the limited information available to Trustee at the time, indicating that Trustee was aware of several transfers of funds to Defendant Outsource inside the 90-day preference window (the "Outsource Preference Letter"). A true and correct copy of the Outsource Preference Letter is attached hereto as **Exhibit 6.**

85.    The Outsource Preference Letter indicated that at least $401,631.33 had been transferred from Debtor to Defendant Outsource inside the 90-day preference window and requested

16

payment of the total amount of the then-known preferential transfers in exchange for a waiver and release from all claims that could be asserted by Trustee against Defendant Outsource pursuant to 11 U.S.C. §547. Trustee has since discovered additional transfers from Debtor to Defendant Outsource within the 90-day preference period (as noted above).

**b.      Demand Letters To Defendant Z.A.P.**

86.      On September 27, 2024, Trustee sent the first of three demand letters ("First Demand Letter") to Defendant Z.A.P.. A true and correct copy of the First Demand Letter is attached hereto as **Exhibit 7(a)**.

87.      In the First Demand Letter, Trustee set forth all known payments (pre- and post-petition) from Debtor to Defendant Z.A.P. and indicate the possibility of Trustee bringing an to recover those payments under 11 U.S.C. §§ 544 548, 549 and 550, as well as Cal. Civ. Code. §§ 3439.04 and 3439.05, and demanded either repayment of those sums, or documents supporting any possible defenses to such actions. Defendant Z.A.P. did not respond to the First Demand Letter.

88.      On October 25, 2024, Trustee sent a second demand letter ("Second Demand Letter") that was similar in form and substance to the First Demand Letter. A true and correct copy of the First Demand Letter is attached hereto as **Exhibit 7(b)**. Trustee did not receive a response to the Second Demand Letter.

89.      Finally, on February 21, 2025, Trustee sent a third demand letter to Defendant Z.A.P. ("Third Demand Letter"), which was also similar in form and substance to the First Demand Letter and Second Demand Letter. A true and correct copy of the First Demand Letter is attached hereto as **Exhibit 7(c)**. Trustee did not receive a response to the Third Demand Letter.

**M.      The Subject Transfers**

**a.      Transfers to Defendant Outsource**

90.      As noted above, during the applicable reach-back period, Debtor, transferred cash to Defendant Outsource of not less than $807,489.84 (previously defined as the "Outsource Pre-petition Transfers"). A true and correct list of the known Pre-Petition Transfers made by Debtor to Defendant Outsource is attached hereto as **Exhibit 8(a)**.

///

91.     The Pre-Petition Transfers include no less than $534,057.94 transferred from Debtor to Defendant Outsource in the 90-day period prior to the Petition Date (previously defined as the "Outsource Preference Transfers"). A true and correct list of the known Preference Transfers made by Debtor to Defendant Outsource is attached hereto as **Exhibit 8(b)**.

92.     An additional $184,788.10 was transferred to Defendant Outsource from Debtor post-petition (previously defined as the "Outsource Post-Petition Transfers"). A true and correct list of the known Post-Petition Transfers made by Debtor to Defendant Outsource is attached hereto as **Exhibit 8(c)**.

93.     The total of all known transfers from Debtor to Defendant Outsource is at least $992,277.94 (previously defined collectively as the "Outsource Transfers").

94.     The Outsource Transfers span from November, 5 2022 through May 12, 2023. *See* **Exhibit 8(a) and 8(c)**.

       **b.     Transfers to Defendant Z.A.P.**

95.     As noted, during the applicable reach-back period, Debtor, transferred cash to Defendant Z.A.P. of not less than $44,806.91 (previously defined as the Z.A.P. Pre-Petition Transfers). A true and correct list of the known Pre-Petition Transfers made by Debtor to Defendant Z.A.P. is attached hereto as **Exhibit 9(a).**

96.     The Pre-Petition Transfers include no less than $34,692.34 transferred from Debtor to Defendant Z.A.P. in the 90-day period prior to the Petition Date (previously defined as the "Z.A.P. Preference Transfers"). A true and correct list of the known Preference Transfers made by Debtor to Defendant Z.A.P. is attached hereto as **Exhibit 9(b)**.

97.     An additional $22,908.18 was transferred to Defendant Z.A.P. from Debtor post-petition (previously defined as the "Z.A.P. Post-Petition Transfers"). A true and correct list of the known Post-Petition Transfers made by Debtor to Defendant Z.A.P. is attached hereto as **Exhibit 9(c)**.

98.     The Z.A.P. Transfers span from December 2, 2022 through May 26, 2023. *See* **Exhibit 9(a) and 9(c)**.

///

///

**N.      Due Diligence**

99.     Prior to filing this Complaint, Plaintiff's counsel conducted an electronic search of Debtor's paper files and accounting records, including Debtor's Quickbooks files, which records and files are now stored electronically. Plaintiff's search of the subject records and files revealed no apparent defenses to the alleged claims.

## FIRST CLAIM FOR RELIEF

### Avoidance, Preservation, and Recovery of Actual Fraudulent Transfer

### 11 U.S.C. §§ 544, 550, and 551; Cal. Civ. Code §§ 3439.04(a)(1) and 3439.07

### (Against Defendants Outsource and Z.A.P.)

100.    Plaintiff incorporates by reference Paragraphs 1 through 99 and realleges these paragraphs as though set forth in full.

101.    Under 11 U.S.C. § 544(b)(1), Plaintiff may avoid transfers of an interest of Debtor which are voidable under applicable law by an unsecured creditor of Debtor, including under California Civil Code section 3439.04(a)(1).

102.    The Outsource Pre-Petition Transfers and Z.A.P. Pre-Petition Transfers were property of Debtor as defined in 11 U.S.C. § 101(54).

103.    The Outsource Pre-Petition Transfers, the Z.A..P. Affiliate Agreement, and Z.A.P. ARPA, and Z.A.P. Pre-Petition Transfers occurred within four years prior to the Petition Date.

104.    The Outsource Pre-Petition Transfers and Z.A.P. Pre-Petition Transfers were made with the actual intent to hinder, delay, or defraud Debtor's creditors.

105.    The Debtor was operating a Ponzi scheme and the Ponzi Scheme Presumption can be utilized to infer the Debtor's actual intent to defraud within the meaning of 11 U.S.C. § 548(a)(1). The Debtor's conduct was done with oppression, fraud, and malice, as defined in California Civil Code section 3294, based on the Ponzi Scheme Presumption, entitling the Trustee to, in addition to actual damages, exemplary or punitive damages.

106.    At the time each pre-petition transfer was made, Debtor was indebted to one or more creditors that held a claim against Debtor on the date of each Transfer and on the Petition Date.

///

107.    Debtor had been sued or threatened with suit before some or all of the Outsource Pre-Petition Transfers and Z.A.P. Pre-Petition Transfers occurred.

108.    Despite Debtor's obligation to the Prepetition Creditors, Debtor continued to pay Defendant Outsource sums received from consumers pursuant to its affiliate agreement, which constitutes an illegal capping agreement between Defendant Outsource and Debtor.

109.    Similarly, Debtor continued to pay Defendant Z.A.P. sums received from consumers pursuant to its affiliate agreement, which constitutes an illegal capping agreement between Defendant Z.A.P. and Debtor.

110.    Debtor incurred substantial debt shortly before or shortly after some or all of the Outsource Pre-Petition Transfers and Z.A.P. Pre-Petition Transfers occurred.

111.    Debtor actively concealed its beneficial interest in the Outsource Pre-Petition Transfers and Z.A.P. Pre-Petition Transfers, and made the payments to Defendants Outsource and Z.A.P. with actual intent to hinder, delay, or defraud other creditors of the Debtor.

112.    Debtor received less than reasonably equivalent value in exchange for the Outsource Pre-Petition Transfers and Z.A.P. Pre-Petition Transfers because the referrals from Defendants Outsource and Z.A.P. to Debtor were illegal under federal and state law, nullifying their value as consideration.

113.    The Outsource Pre-Petition Transfers and Z.A.P. Pre-Petition Transfers were made at a time when Debtor was insolvent and/or rendered insolvent by virtue of said transfers.

114.    As noted above, Debtor's insolvency is presumed as a matter of law where, as here, Debtor operated a Ponzi scheme.

115.    Plaintiff alleges that Defendant did not receive the Outsource Pre-Petition Transfers and Z.A.P. Pre-Petition Transfers in good faith, for value, and without knowledge of their avoidability.

116.    The affiliate agreements with Defendant Outsource and Defendant Z.A.P., as well as the transfers of Debtor's funds pursuant to those agreements are avoidable as fraudulent pursuant to 11 U.S.C. § 544(b) and Cal. Civ. Code §§ 3439.04(a) and 3439.07 by one or more creditors who held and hold unsecured claims against Debtor that were and are allowable against the Estate under 11

///

U.S.C. § 502 or that were not and are not allowable only under 11 U.S.C. § 502(e), including, without limitation, the Prepetition Creditors.

117.    Based on the foregoing, Plaintiff may avoid the Outsource Pre-Petition Transfers and Z.A.P. Pre-Petition Transfers pursuant to 11 U.S.C. § 544 and California Civil Code section 3439.04(a)(1).

118.    Based on the foregoing, Plaintiff may recover and preserve the Outsource Pre-Petition Transfers and Z.A.P. Pre-Petition Transfers from Defendants respectively as the initial transferees for the benefit of the Estate pursuant to 11 U.S.C. §§ 550 and 551, and California Civil Code section 3439.07.

### SECOND CLAIM FOR RELIEF

**Avoidance, Preservation, and Recovery of Constructive Fraudulent Transfer**

**11 U.S.C. §§ 544, 550 and 551; Cal. Civ. Code §§ 3439.04(a)(2), 3439.05 and 3439.07**

**(Against Defendants Outsource and Z.A.P.)**

119.    Plaintiff hereby incorporates by reference Paragraphs 1 through 118 and realleges these paragraphs as though set forth in full herein.

120.    Under 11 U.S.C. § 544(b)(1), Plaintiff may avoid transfers of an interest of Debtor which are voidable under applicable law by an unsecured creditor of Debtor, including under California Civil Code sections 3439.04(a)(2) and 3439.05.

121.    The Outsource Pre-Petition Transfers, the Z.A..P. Affiliate Agreement, and Z.A.P. ARPA, and Z.A.P. Pre-Petition Transfers occurred within four years prior to the Petition Date.

122.    As noted above, Debtor did not receive reasonably equivalent value in exchange for the Outsource Pre-Petition Transfers and Z.A.P. Pre-Petition Transfers because the referrals from Defendant Outsource and Z.A.P. to Debtor were illegal under federal and state law, nullifying their value as consideration.

123.    The Outsource Pre-Petition Transfers and Z.A.P. Pre-Petition Transfers were made at a time when Debtor was insolvent and/or rendered insolvent by virtue of said transfers.

124.    As noted above, Debtor's insolvency is presumed as a matter of law where, as here, Debtor operated a Ponzi scheme.

125.    At the time each pre-petition transfer was made, Debtor was engaged or was about to engage in a business or a transaction for which the remaining assets of Debtor were unreasonably small in relation to the business or transaction.

126.    At the time each pre-petition transfer was made, Debtor intended to incur, or believed or reasonably should have believed that Debtor would incur, debts beyond Debtor's ability to pay as they became due.

127.    At the time each pre-petition transfer was made, Debtor was indebted to one or more creditors that held a claim against Debtor on the date of each pre-petition transfer and on the Petition Date.

128.    Plaintiff alleges that Defendants Outsource and Z.A.P. did not receive the Outsource Pre-Petition Transfers and Z.A.P. Pre-Petition Transfers respectively in good faith, for value, and without knowledge of their avoidability.

129.    The Debtor was operating a Ponzi scheme and the Ponzi Scheme Presumption can be utilized to infer the Debtor's actual intent to defraud within the meaning of 11 U.S.C. § 548(a)(1). The Debtor's conduct was done with oppression, fraud, and malice, as defined in California Civil Code section 3294, based on the Ponzi Scheme Presumption, entitling the Trustee to, in addition to actual damages, exemplary or punitive damages.

130.    The affiliate agreements with Defendant Outsource and Defendant Z.A.P., as well as the transfers of Debtor's funds pursuant to those agreements are avoidable as fraudulent pursuant to 11 U.S.C. § 544(b) and Cal. Civ. Code §§ 3439.05 and 3439.07 by one or more creditors who held and hold unsecured claims against Debtor that were and are allowable against the Estate under 11 U.S.C. § 502 or that were not and are not allowable only under 11 U.S.C. § 502(e), including, without limitation, the Prepetition Creditors.

131.    Based on the foregoing, Plaintiff may avoid the Outsource Pre-Petition Transfers and Z.A.P. Pre-Petition Transfers pursuant to 11 U.S.C. § 544 and California Civil Code sections 3439.04(a)(2) and 3439.05.

132.    Based on the foregoing, Plaintiff may recover and preserve the Outsource Pre-Petition Transfers and Z.A.P. Pre-Petition Transfers from Defendants respectively as the initial transferees for

1    the benefit of the Estate pursuant to 11 U.S.C. §§ 550 and 551, and California Civil Code sections

2    3439.07.

3    **THIRD CLAIM FOR RELIEF**

4    **Avoidance, Preservation, and Recovery of Actual Fraudulent Transfer**

5    **11 U.S.C. §§ 548(a)(1)(A), 550 and 551**

6    **(Against Defendants Outsource and Z.A.P.)**

7    133.    Plaintiff hereby incorporates by reference Paragraphs 1 through 132 and realleges these

8    paragraphs as though set forth in full herein.

9    134.    The Outsource Pre-Petition Transfers, the Z.A..P. Affiliate Agreement, and Z.A.P.

10   ARPA, and Z.A.P. Pre-Petition Transfers occurred within two years prior to the Petition Date.

11   135.    The Outsource Pre-Petition Transfers and Z.A.P. Pre-Petition Transfers were made to

12   Defendants Outsource and Z.A.P. with the actual intent to hinder, delay, or defraud Debtor's creditors.

13   136.    The Debtor was operating a Ponzi scheme and the Ponzi Scheme Presumption can be

14   utilized to infer the Debtor's actual intent to defraud within the meaning of 11 U.S.C. section 548(a)(1).

15   137.    At the time each pre-petition transfer was made, Debtor was indebted to one or more

16   creditors that held a claim against Debtor on the date of each pre-petition transfer and on the Petition

17   Date.

18   138.    Debtor had been sued or threatened with suit before some or all of the Outsource Pre-

19   Petition Transfers and Z.A.P. Pre-Petition Transfers occurred.

20   139.    Debtor incurred substantial debt shortly before or shortly after some or all of the

21   Outsource Pre-Petition Transfers and Z.A.P. Pre-Petition Transfers occurred.

22   140.    The Outsource Pre-Petition Transfers and Z.A.P. Pre-Petition Transfers were made at

23   a time when Debtor was insolvent and/or rendered insolvent by virtue of said transfers.

24   141.    As noted above, Debtor's insolvency is presumed as a matter of law where, as here,

25   Debtor operated a Ponzi scheme.

26   ///

27   ///

28   ///

142.    Plaintiff alleges that Defendants Outsource and Z.A.P. did not receive the Outsource Pre-Petition Transfers and Z.A.P. Pre-Petition Transfers in good faith, for value, and without knowledge of their avoidability because the referrals from Defendants Outsource and Z.A.P. to Debtor were illegal under federal and state law, nullifying their value as consideration.

143.    Based on the foregoing, Plaintiff may avoid the Outsource Pre-Petition Transfers, Z.A.P. Affiliate Agreement, Z.A.P. ARPA, and Z.A.P. Pre-Petition Transfers under 11 U.S.C. § 548(a)(1)(A).

144.    Based on the foregoing, Plaintiff may recover and preserve the avoided transfers up to the amount of the Outsource Pre-Petition Transfers and Z.A.P. Pre-Petition Transfers from Defendants respectively as the initial transferees for the benefit of the Estate under 11 U.S.C. §§ 550 and 551.

**FOURTH CLAIM FOR RELIEF**

**Avoidance, Preservation, and Recovery of Constructive Fraudulent Transfer**

**11 U.S.C. §§ 548(a)(1)(B), 550 and 551**

**(Against Defendants Outsource and Z.A.P.)**

145.    Plaintiff hereby incorporates by reference Paragraphs 1 through 144 and realleges these paragraphs as though set forth in full herein.

146.    The Outsource Pre-Petition Transfers, the Z.A..P. Affiliate Agreement, and Z.A.P. ARPA, and Z.A.P. Pre-Petition Transfers occurred within two years prior to the Petition Date.

147.    Debtor did not receive reasonably value in exchange for the Outsource Pre-Petition Transfers and Z.A.P. Pre-Petition Transfers because the referrals from Defendants Outsource and Z.A.P. to Debtor were illegal under federal and state law, nullifying their value as consideration.

148.    The Outsource Pre-Petition Transfers and Z.A.P. Pre-Petition Transfers were made at a time when Debtor was insolvent and/or rendered insolvent by virtue of said transfers.

149.    As noted above, Debtor's insolvency is presumed as a matter of law where, as here, Debtor operated a Ponzi scheme.

150.    When the Outsource Pre-Petition Transfers and Z.A.P. Pre-Petition Transfers occurred, Debtor's business was undercapitalized and Debtor was engaged in business for which its capital was unreasonably small.

151.    When the Outsource Pre-Petition Transfers and Z.A.P. Pre-Petition Transfers occurred, Debtor was about to incur debts that were beyond its ability to pay.

152.    At the time each pre-petition transfer was made, Debtor was indebted to one or more creditors that held a claim against Debtor on the date of each Transfer and on the Petition Date.

153.    Based on the foregoing, Plaintiff may avoid the Outsource Pre-Petition Transfers, Z.A.P. Affiliate Agreement, Z.A.P. ARPA, and Z.A.P. Pre-Petition Transfers under 11 U.S.C. § 548(a)(1)(B)

154.    Based on the foregoing, Plaintiff may recover and preserve the avoided transfers from Defendant as the initial transferee for the benefit of the Estate under 11 U.S.C. §§ 550 and 551.

**FIFTH CLAIM FOR RELIEF**

**Avoidance, Recovery, and Preservation of Preferential Transfers**

**to Defendants in Preference Period**

**11 U.S.C. §§ 547, 550, and 551**

**[Against Defendants Outsource and Z.A.P.]**

155.    Plaintiff hereby incorporates by reference Paragraphs 1 through 154 and realleges these paragraphs as though set forth in full herein.

156.    As noted above, at least $534,057.94 of the Outsource Pre-Petition Transfers (previously defined as the "Outsource Preference Transfers") from Debtor to Defendant Outsource occurred during the 90-day preference period.

157.    As noted above, at least $34,692.23 of the Z.A.P. Pre-Petition Transfers (previously defined as the "Z.A.P. Preference Transfers") from Debtor to Defendant Outsource occurred during the 90-day preference period.

158.    These Preference Transfers were made for, or on account of, an antecedent debt or debts owed by the Debtor to Defendant Outsource and Defendant Z.A.P., each of which constituted a "debt" or "claim" (as those terms are defined in the Bankruptcy Code) of Defendant Outsource and Defendant Z.A.P..

159.    The Outsource Preference Transfers and Z.A.P. Preference Transfers happened while Debtor was insolvent.

160.    As noted above, Debtor's insolvency is presumed as a matter of law where, as here, Debtor operated a Ponzi scheme.

161.    Debtor is also entitled to the presumption of insolvency when the Outsource Preference Transfers and Z.A.P. Preference Transfers happened pursuant to 11 U.S.C. § 547(f).

162.    As a result of the Outsource Preference Transfers and Z.A.P. Preference Transfers, Defendants Outsource and Z.A.P. recovered more than they would have received if: (i) the Debtor's case was under chapter 7 of the Bankruptcy Code; (ii) the Outsource Preference Transfers and Z.A.P. Preference Transfers had not been made; and (iii) Defendants Outsource and Z.A.P. received payments of their debts under the provisions of the Bankruptcy Code. As evidenced by the Debtor's schedules filed in the underlying Bankruptcy Case, as well as the proofs of claim that have been received to date, the Debtor's liabilities exceed its assets to the point that unsecured creditors will not receive a full payout of their claims from the Debtor's Estate.

163.    Based on the foregoing, Plaintiff may recover and preserve the avoided Outsource Preference Transfers and Z.A.P. Preference Transfers from Defendants Outsource and Z.A.P. respectively as the initial transferees for the benefit of the Estate under 11 U.S.C. §§ 550 and 551.

**SIXTH CLAIM FOR RELIEF**

**Avoidance, Recovery, and Preservation of Unauthorized Post-Petition Transfers**

**11 U.S.C. § 549, 550, and 551**

**[Against Defendants Outsource and Z.A.P.]**

164.    Plaintiff hereby incorporates by reference Paragraphs 1 through 163 and realleges these paragraphs as though set forth in full herein.

165.    As noted above, Defendant Outsource received at least $184,788.10 after the Petition Date (previously defined as the "Outsource Post-Petition Transfers") from Debtor.

166.    As noted above, Defendant Z.A.P. received at least $22,908.18 after the Petition Date (previously defined as the "Z.A.P. Post-Petition Transfers")

167.    The Outsource Post-Petition Transfers and Z.A.P. Post-Petition Transfers were neither authorized by any section of the Bankruptcy Code nor by any order of this Court.

///

168.    Based on the foregoing, Plaintiff may recover and preserve the avoided Outsource Post-Petition Transfers and Z.A.P. Post-Petition Transfers from Defendant Outsource and Defendant Z.A.P. respectively as the initial transferees for the benefit of the Estate under 11 U.S.C. §§ 550 and 551.

**SEVENTH CLAIM FOR RELIEF**

**Turnover of Estate Property**

**11 U.S.C. § 542**

**[Against Defendants Outsource and Z.A.P.]**

169.    Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 168 as though set forth in full.

170.    Defendants Outsource and Z.A.P. have possession or control over property of the Estate in the form of the transfers made pursuant to illegal and unenforceable agreements.

171.    The Outsource Transfers and Z.A.P. Transfers are not of inconsequential value to the Estate.

172.    The funds that are the subject of the Outsource Transfers and Z.A.P. Transfers are paramount to Debtor's ability to pay creditors.

173.    Accordingly, Trustee is entitled to a judgment for turnover of the Outsource Transfers and Z.A.P. Transfers pursuant to 11 U.S.C. § 542.

**EIGHTH CLAIM FOR RELIEF**

**Aiding and Abetting Fraudulent Transfers**

**Cal. Civ. Code § 3439 et seq.**

**[Against All Defendants]**

174.    Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 173 as though set forth in full.

175.    Defendants have possession or control over property of the Estate including, but not limited to, the Transfers made pursuant to illegal and unenforceable agreements.

176.    Defendants had knowledge of the fraudulent transactions, transfers, and agreements that were used to perpetuate and conceal the Ponzi scheme and fraudulent transfers.

///

177.    Defendants, with the foregoing knowledge, intended to, and did, help the Debtor and other scheme participants in perpetuating and concealing the Ponzi scheme and fraudulent transfers of money.

178.    At all material times, Defendants had the intent to facilitate and conceal the Ponzi scheme and fraudulent transfers of money by aiding and abetting the illegal scheme and signing up consumer clients to keep the business going.

179.    Defendants assisted, and did actually engage in, LPG's commission of fraud and Ponzi scheme by coordinating, facilitating, and directing payments and transfers of monies and executing documents in furtherance of concealing the true nature of their fraudulent and criminal activity related to the Ponzi scheme.

180.    Without in any way limiting the foregoing, as principal of Defendant Outsource, Defendant Kash used his control over Defendant Outsource to support, participate in, and benefit from LPG's Ponzi scheme and fraudulent transfers.

181.    Without in any way limiting the foregoing, as CEO of Defendant Z.A.P., Defendant Hegazi used his control over Defendant Z.A.P. to support, participate in, and benefit from LPG's Ponzi scheme and fraudulent transfers.

182.    Without in any way limiting the foregoing, as principal of Defendant Z.A.P., Defendant Nesheiwat used his control over Defendant Z.A.P. to support, participate in, and benefit from LPG's Ponzi scheme and fraudulent transfers.

183.    The injuries to Plaintiff, the Debtor's Estate and to its creditors directly, proximately and reasonably foreseeably resulting from and caused by these fraudulent transfers and Ponzi scheme include, without limitation, hundreds of thousands of dollars in improperly transferred and acquired monies.

184.    The property, including, but not limited to, the Outsource Transfers and Z.A.P. Transfers are not of inconsequential value to the Estate and recovering these funds is paramount to Debtor's ability to pay creditors.

185.    Plaintiff and the Debtor's Estate also suffered damages by incurring attorney's fees and costs associated with the prosecution of Defendants' unlawful activities.

**NINTH CLAIM FOR RELIEF**

**Disallowance of Claims**

**11 U.S.C. §502(d)**

**[Against Defendant Z.A.P.]**

186.    Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 185 as though set forth in full.

187.    As noted, on December 29, 2023, Defendant Z.A.P. filed proof of claim 2301 in the amount of $1,956,645.72.

188.    The same claim was re-filed on February 22, 2024 ("Claim 2301"). A true and correct copy of Claim 2301 is attached hereto as **Exhibit 10**.

189.    The proof of claim description states, "Procuring and sale of consumer leads for LPG legal services."

190.    Claim 2301 was filed by Defendant Nesheiwat. *See* Exhibit 10, p. 3 (listing Defendant Nesheiwat as "Authorized Agent").

191.    Claim 2301 is supported by the Z.A.P. Affiliate Agreement and the Z.A.P. ARPA, as well as a list of numerous clients.

192.    Because the referrals from Defendant Z.A.P. to Debtor are all illegal under federal and state law, any agreement for that purpose is void. This would include the Z.A.P. Affiliate Agreement and Z.A.P. ARPA.

193.    For this reason, to the extent the Claim 2301 is based on the conduct set forth above, 2301 should be disallowed in its entirety under 11 U.S.C. §502(d).

**RESERVATION OF RIGHTS**

194.    Plaintiff reserves the right to bring all other claims or causes of action that Plaintiff may have against Defendants, on any and all grounds, as allowed under the law or in equity, including but not limited to, those claims not known by the Trustee at this time but that he may discover during the pendency of this adversary proceeding.

///

///

29

**<u>PRAYER</u>**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

**<u>On the First Claim for Relief</u>:**

1.      That the Outsource Transfers and Z.A.P. Transfers be avoided under 11 U.S.C. § 544 and California Civil Code sections 3439.04(a)(1) and 3439.07;

2.      That Plaintiff recover the avoided Outsource Transfers and Z.A.P. Transfers or a money judgment in an amount equal to the value of the avoided Outsource Transfers and Z.A.P. Transfers pursuant to 11 U.S.C. § 550;

**<u>On the Second Claim for Relief</u>:**

3.      That the Outsource Transfers and Z.A.P. Transfers be avoided under 11 U.S.C. § 544 and California Civil Code sections 3439.04(a)(2), 3439.05 and 3439.07;

4.      That Plaintiff recover the avoided Outsource Transfers and Z.A.P. Transfers or a money judgment in an amount equal to the value of the avoided Outsource Transfers and Z.A.P. Transfers pursuant to 11 U.S.C. § 550;

**<u>On the Third Claim for Relief</u>:**

5.      That the Outsource Transfers and Z.A.P. Transfers be avoided under 11 U.S.C. § 548(a)(1)(A);

6.      That Plaintiff recover the avoided Outsource Transfers and Z.A.P. Transfers or a money judgment in an amount equal to the value of the avoided Outsource Transfers and Z.A.P. Transfers pursuant to 11 U.S.C. § 550;

**<u>On the Fourth Claim for Relief</u>:**

7.      That the Outsource Transfers and Z.A.P. Transfers be avoided under 11 U.S.C. § 548(a)(1)(B);

8.      That Plaintiff recover the avoided Outsource Transfers and Z.A.P. Transfers or a money judgment in an amount equal to the value of the avoided Transfers pursuant to 11 U.S.C. § 550;

**<u>On the Fifth Claim for Relief</u>:**

9.      That the Outsource Preference Transfers and Z.A.P. Preference Transfers be avoided under 11 U.S.C. § 547;

10.    That Plaintiff recover the avoided Outsource Preference Transfers and Z.A.P. Preference Transfers or a money judgment in an amount equal to the value of the avoided Preference Transfers pursuant to 11 U.S.C. § 550;

**On The Sixth Claim For Relief:**

11.    That the Outsource Post-Petition Transfers and Z.A.P. Post-Petition Transfers be avoided under 11 U.S.C. § 549;

12.    That Plaintiff recover the avoided Outsource Post-Petition Transfers and Z.A.P. Post-Petition Transfers or a money judgment in an amount equal to the value of the avoided Post-Petition Transfers pursuant to 11 U.S.C. § 550;

**On The Seventh Claim For Relief:**

13.    Ordering Defendant Outsource to immediately turn over the value of the Outsource Transfers;

14.    Ordering Defendant Z.A.P. to immediately turn over the value of the Z.A.P. Transfers;

**On The Eighth Claim For Relief:**

15.    Awarding Plaintiff compensatory damages in an amount to be determined at trial;

**On the Ninth Claim For Relief:**

16.    Disallowing Claim 2301 filed by Defendant Z.A.P. in its entirety;

**On All Claims for Relief:**

17.    That the avoided Outsource Transfers and Z.A.P. Transfers be preserved pursuant to 11 U.S.C. § 551;

18.    For prejudgment interest under state law on all fraudulent transfer claims from the date each transfer was made, as set forth in *In re Slatkin*, 525 F.3d 805, 820 (9th Cir.2008), *In re Agricultural Research and Technology Group, Inc.*, 916 F.2d 528, 541-42 (9th Cir.1990), and *Field v. Kepoikai* (*In re Maui Indus. Loan & Fin. Co.*), 483 B.R. 346, 353 (Bankr. D. Haw. 2012);

///

///

///

///

19.    For pre-judgment interest on all other claims at the maximum rate allowed by law;

20.    For costs incurred by Plaintiff in prosecuting this action; and

21.    For such other and further relief as the Court may deem just and proper.

Respectfully submitted,

DATED: March 19, 2025

DINSMORE & SHOHL LLP

By: /s/ Jacob R. Bothamley
     Yosina M. Lissebeck
     Jacob R. Bothamley
     Attorneys for Plaintiff Richard A. Marshack,
     Trustee of The LPG Liquidation Trust

# EXHIBIT 1

Delaware.gov                                                    Governor | General Assembly | Courts | Elected Officials | State Agencies

---

**Department of State: Division of Corporations**

Allowable Characters

| HOME | Entity Details |
|------|----------------|

**THIS IS NOT A STATEMENT OF GOOD STANDING**

| File Number: | 6830239 | Incorporation Date / Formation Date: | 4/4/2018 (mm/dd/yyyy) |
|---|---|---|---|
| Entity Name: | APEX MARKETING, LLC | | |
| Entity Kind: | Limited Liability Company | Entity Type: | General |
| Residency: | Domestic | State: | DELAWARE |

**REGISTERED AGENT INFORMATION**

| Name: | HARVARD BUSINESS SERVICES, INC. | | |
|---|---|---|---|
| Address: | 16192 COASTAL HWY | | |
| City: | LEWES | County: | Sussex |
| State: | DE | Postal Code: | 19958 |
| Phone: | 302-645-7400 | | |

Additional Information is available for a fee. You can retrieve Status for a fee of $10.00 or more detailed information including current franchise tax assessment, current filing history and more for a fee of $20.00.

Would you like ○ Status  ○ Status,Tax & History Information

[ Submit ]

[ View Search Results ]          [ New Entity Search ]

---

For help on a particular field click on the Field Tag to take you to the help area.

site map   |   privacy   |   about this site   |   contact us   |   translate   |   delaware.gov

Exhibit 1, Page 34

# EXHIBIT 2

California
*Secretary of State*

Business          UCC                                                      Login

Home

Search

Forms

Help

Z.A.P. MARKETING CORP
(5264131)

# Business Search

*The California Business Search provides access to available information for **corporations**, **limited liability companies** and **limited partnerships** of record with the California Secretary of State, with **free PDF copies** of over 17 million imaged business entity documents, including the most recent imaged Statements of Information filed for Corporations and Limited Liability Companies.*

*Currently, information for Limited Liability Partnerships (e.g. law firms, architecture firms, engineering firms, public accountancy firms, and land survey firms), General Partnerships, and other entity types are **not contained** in the California Business Search. If you wish to obtain information about LLPs and GPs, submit a Business Entities Order paper form to request copies of filings for these entity types. Note: This search is not intended to serve as a name reservation search. To reserve an entity name, select Forms on the left panel and select Entity Name Reservation ? Corporation, LLC, LP.*

**Basic Search**

*A Basic search can be performed using an entity name or entity number. When conducting a search by an entity number, where applicable, **remove "C"** from the entity number. Note, **a basic search** will search **only ACTIVE entities** (Corporations, Limited Liability Companies, Limited Partnerships, Cooperatives, Name Reservations, Foreign Name Reservations, Unincorporated Common Interest Developments, and Out of State Associations). The basic search performs a contains ?keyword? search. The Advanced search allows for a ?starts with? filter. To search entities that have a status other than active or to refine search criteria, use the **Advanced** search feature.*

**Advanced Search**

*An Advanced search is required when searching for publicly traded disclosure information or a status other than active.*

*An Advanced search allows for searching by specific entity types (e.g., Nonprofit Mutual Benefit Corporation) or by entity groups (e.g., All Corporations) as well as searching by ?begins with? specific search criteria.*



Request
Certificate

| | |
|---|---|
| Initial Filing Date | 09/26/2022 |
| Status | Active |
| Standing - SOS | Good |
| Standing - FTB | Good |
| Standing - Agent | Good |
| Standing - VCFCF | Good |
| Formed In | CALIFORNIA |
| Entity Type | Stock Corporation - CA - General |
| Principal Address | 9920 RESEARCH DR IRVINE, CA 92618 |
| Mailing Address | 9920 RESEARCH DR IRVINE,CA92618 |
| ⚠ *Statement of Info Due Date* | 09/30/2024 |
| Agent | 1505 Corporation NORTHWEST REGISTERED AGENT, INC. |

🕐
View History


Request Access

Business     UCC

*not found within the 500 entities provided, please refine the search criteria using the Advanced search function for additional results/entities. The California Business Search is updated as documents are approved. The data provided is not a complete or certified record.*

*Although every attempt has been made to ensure that the information contained in the database is accurate, the Secretary of State's office is not responsible for any loss, consequence, or damage resulting directly or indirectly from reliance on the accuracy, reliability, or timeliness of the information that is provided. All such information is provided "as is." To order certified copies or certificates of status, (1) locate an entity using the search; (2)select Request Certificate in the right-hand detail drawer; and (3) complete your request online.*

Z.A.P. Marketing    🔍

Advanced ⌄

Results: 6

| Entity Information | Initial Filing Date | Status |
|---|---|---|
| Z.A.P. MARKETING CORP (5264131) | 09/26/2022 | Active |
| ZAP CITY MARKETING L.L.C. (202024510057) | 08/28/2020 | Active |
| ZAP MARKETING GROUP, INC. (4770731) | 07/27/2021 | Active |
| ZAP SOLAR MARKETING (3886666) | 03/16/2016 | Terminated |
| ZAPIT MARKETING, LLC (200119010095) | 07/03/2001 | Terminated |

Home

Search

Forms

Help

## Z.A.P. MARKETING CORP (5264131)


Request Certificate

| | |
|---|---|
| *Initial Filing Date* | 09/26/2022 |
| *Status* | Active |
| *Standing - SOS* | Good |
| *Standing - FTB* | Good |
| *Standing - Agent* | Good |
| *Standing - VCFCF* | Good |
| *Formed In* | CALIFORNIA |
| *Entity Type* | Stock Corporation - CA - General |
| *Principal Address* | 9920 RESEARCH DR IRVINE, CA 92618 |
| *Mailing Address* | 9920 RESEARCH DR IRVINE,CA92618 |
| ⚠ *Statement of Info Due Date* | 09/30/2024 |
| *Agent* | 1505 Corporation NORTHWEST REGISTERED AGENT, INC. |


View History


Request Access



| Business | UCC |
|----------|-----|

ZAPPER MARKETING (USA), INC. (3729108)

> 11/25/2014    Terminated

## Z.A.P. MARKETING CORP (5264131)

Request Certificate

| | |
|---|---|
| Initial Filing Date | 09/26/2022 |
| Status | Active |
| Standing - SOS | Good |
| Standing - FTB | Good |
| Standing - Agent | Good |
| Standing - VCFCF | Good |
| Formed In | CALIFORNIA |
| Entity Type | Stock Corporation - CA - General |
| Principal Address | 9920 RESEARCH DR IRVINE, CA 92618 |
| Mailing Address | 9920 RESEARCH DR IRVINE,CA92618 |
| ⚠ *Statement of Info Due Date* | 09/30/2024 |
| Agent | 1505 Corporation NORTHWEST REGISTERED AGENT, INC. |

View History        Request Access

# EXHIBIT 3

1    CHRISTOPHER B. GHIO (259094)
     christopher.ghio@dinsmore.com
2    CHRISTOPHER CELENTINO (131688)
     christopher.celentino@dinsmore.com
3    YOSINA M. LISSEBECK (201654)
     yosina.lissebeck@dinsmore.com
4    DINSMORE & SHOHL LLP
5    655 West Broadway, Suite 800
     San Diego, California 92101
6    Tele:  619.400.0500
     Fax:  619.400.0501
7
8    Sarah S. Mattingly (Ky. Bar 94257)
     sarah.mattingly@dinsmore.com
9    DINSMORE & SHOHL, LLP
     101 S. Fifth Street, Suite 2500
10   Louisville, Kentucky 40202
     Tele: 859-425-1096
11   Fax: 502-585-2207
12   (Admitted pro hac vice)
13   Special Counsel to Richard A. Marshack

14              UNITED STATES BANKRUPTCY COURT

15       CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

16   In Re                           Case No: 23-bk-10571-SC

17                                   Chapter 11

18
     The Litigation Practice Group P.C.,    **ORDER GRANTING MOTION FOR**
19                                          **ENTRY OF PROTECTIVE ORDER AND**
                 Debtor(s),                 **THE PROTECTIVE ORDER**
20

21                                   Date:    May 23, 2024
                                     Time:    1:30 p.m.
22                                   Judge:   Hon. Scott C. Clarkson
23                                   Place:   Courtroom 5C (via Zoom)[1]
                                              411 West Fourth Street
24                                            Santa Ana, CA 92701
25

26

27   ─────────────────────────
28   [1] Video and audio connection information for each hearing will be provided on Judge Clarkson's
     publicly posted hearing calendar, which may be viewed online at:
     http://ecf-ciao.cacb.uscourts.gov/CiaoPosted/?jid=SC.

                                              Exhibit 3, Page 40

FILED & ENTERED

JUN 03 2024

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY mccall      DEPUTY CLERK

The Court has read and considered the Notice of Motion and Motion for Entry of Protective Order (the "Motion") filed by Richard A. Marshack, in his capacity as the Chapter 11 Trustee (the "Trustee") of the Bankruptcy Estate ("Estate") of The Litigation Practice Group P.C., on May 2, 2024, pursuant to Federal Rule of Bankruptcy Procedure 7026 and Federal Rule of Civil Procedure 26(c)(1), as Dk. No. 1164 ("Motion"), and has found good cause to grant the Motion.

IT IS HEREBY ORDERED that:

1.    The Motion is granted;

2.    The below Protective Order shall apply to any contested matter arising in the main bankruptcy case and in all adversary proceedings filed by or against Trustee, present and future; and

3.    Govern the discovery conducted therein.

## PROTECTIVE ORDER

**1.    DEFINITIONS**

1.1    "Confidential Information" as used in this Protective Order shall mean documents and other information (regardless of how generated, stored or maintained) that a Party or non-party reasonably believes to contain or reflect non-public financial or business information, bank records, financial records, such as social security numbers, non-public financial or personal information of a Party or non-party, account numbers, sensitive digital information and identifiers, information subject to confidentiality agreements or provisions other than this Protective Order, and other non-public research, development, or commercial information that derives value or avoids injury by virtue of not being known to the public.

1.2    This "Action" is defined and hereby means any contested matter arising in the main bankruptcy case and in all adversary proceedings filed by or against Trustee, present and future.

1.3    "Designating Party" means a Party or non-party that designates Confidential Information during the Action.

1.4    "Receiving Party" means a Party that receives Confidential Information during the Action.

2

1.5    "Party" or "Parties" means person or entity subject to this Protective Order.

**2.    SCOPE OF THIS PROTECTIVE ORDER**

2.1    Unless otherwise ordered, this Protective Order shall govern certain documents and other products of discovery obtained in the Action from the Parties there to, and from third parties. As well as certain information copied or derived therefrom, excerpts, summaries or compilations thereof, including, but not limited to, documents voluntarily exchanged as part of early settlement discussions, documents produced pursuant to initial disclosures, requests authorized by the Federal Rules of Civil Procedure made applicable herein by the Federal Rules of Bankruptcy Procedure, answers to interrogatories, deposition transcripts, responses to requests for production, responses to requests for admission, subpoenas, affidavits, declarations, expert reports, and other such material and information as may be produced during the course of the Action and designated as Confidential Information.

**3.    DESIGNATION OF CONFIDENTIAL INFORMATION**

3.1    This Protective Order shall govern the production and handling of any Confidential Information in this Action. Any Party or non-party who produces Confidential Information in this Action may designate it as "Confidential" or "Attorneys' Eyes Only" consistent with the terms of this Protective Order. Whenever possible, the Designating Party must designate only those portions of a document, written discovery responses, deposition, transcript, or other material that contain the Confidential Information and refrain from designating entire documents. Regardless of any designations made hereunder, the Designating Party is not otherwise restricted from use or disclosure of its Confidential Information outside of this Action or for any business purposes. In addition, any Party may move to modify or seek other relief from any of the terms of this Protective Order if it has first tried in writing and in good faith to resolve its needs or disputes with the other Parties or Party as the case may be under the terms of this Protective Order. Further, nothing in this Protective Order shall prevent a Party from redacting documents consistent with the Federal Rules of Civil Procedure and utilizing the documents as needed through-out the Action.

3.2    <u>Application to Non-Parties:</u> Before a non-party is given copies of documents or materials designated as Confidential Information or Attorneys' Eyes Only as permitted hereunder, it

3

must first sign an acknowledgment to be bound to these terms that is attached hereto as Exhibit A; if it fails to do so, the Parties to this Action must resolve any such dispute before making disclosure of designated information as permitted hereunder to the non-party. If a non-party wishes to make designations hereunder, it must first sign attached Exhibit A.

3.3    Timing and Provisional Protection: Designations of Confidential Information may be made at any time. To avoid potential waiver of protection hereunder, the Designating Party should designate documents or materials containing Confidential Information at the time of production or disclosure, including on the record during the taking of any deposition. Deposition testimony will be deemed provisionally protected for a period of thirty (30) days after the transcript is released to the Parties by the court reporter, although the Parties may agree at any time to different timelines of provisional protection of information as Confidential or Attorneys' Eyes Only as part of one or more specific depositions. To retain any designations beyond the provisional period, a Designating Party must designate specific pages and lines of deposition testimony before the provisional period has expired. Such designations must be made in writing so that all counsel and court reporters may append the designation to all copies of the transcripts.

3.4    Manner of Designation: Confidential Information may be designated hereunder in any reasonable manner or method that notifies the Receiving Party of the designation level and identifies with specificity the information to which the designation applies. If made verbally, the Designating Party must promptly confirm the designation in writing. Whenever possible, the Designating Party should stamp, affix, or embed a legend of "CONFIDENTIAL" or "ATTORNEYS' EYES ONLY" on each designated page of the document or electronic image that contains Confidential Information.

**4.    CHALLENGES TO DESIGNATED INFORMATION**

4.1    In the event that a Receiving Party disagrees at any time with any designation(s) made by the Designating Party, the Receiving Party must first try to resolve such challenge in good faith on an informal basis with the Designating Party. The Receiving Party must provide written notice of the challenge and the grounds therefor to the Designating Party, who must respond in writing to the challenge within fifteen (15) days. At all times, the Designating Party carries the burden of establishing the propriety of the designation and protection level. Unless and until the challenge is

4

resolved by the Parties or ruled upon by the Court, the designated information shall remain protected under this Protective Order. The failure of any Receiving Party to challenge a designation does not constitute a concession that the designation is proper or an admission that the designated information is otherwise competent, relevant, or material.

**5.      LIMITED ACCESS/USE OF PROTECTED INFORMATION**

5.1      <u>Restricted Use:</u> Information that is produced or exchanged in the course of the Action and designated under this Protective Order may be used for preparation for trial and preparation for any appeal of any and all matters in the Action, as well as related settlement negotiations, and for no other purpose, without the written consent of the Designating Party. No Confidential Information may be disclosed to any person except in accordance with the terms of this Protective Order, unless the parties are co-counsel or have entered into joint defense agreements. All persons in possession of Confidential Information agree to exercise reasonable care with regard to the custody, use, or storage of such information to ensure that its confidentiality is maintained. This obligation includes, but is not limited to, the Receiving Party providing to the Designating Party prompt notice of the receipt of any subpoena that seeks production or disclosure of any designated information and consulting with the Designating Party before responding to the subpoena. Any use or disclosure of Confidential or Attorneys' Eyes Only information in violation of the terms of this Protective Order may subject the disclosing person or party to sanctions.

5.2      <u>Access to "Confidential" Information:</u> The Party(ies) and all persons subject to this Protective Order agree that information designated as "CONFIDENTIAL" may only be accessed or reviewed by the following:

a)      The Court, its personnel, and court reporters;

b)      Counsel of record, or co-counsel for any Party, or other party that has entered into a joint defense agreement in the Action and their employees who assist counsel of record, or co-counsel in the Action and are informed of the duties and obligations imposed hereunder;

c)      The Parties, including their clients, agents and employees who are assisting or have reason to know of the Action;

/ / /

Exhibit 3, Page 44

d)      Experts or consultants employed by the Parties or their counsel, or co-counsel, for purposes of an Action, so long as each such expert or consultant has signed attached Exhibit A; and

e)      Other witnesses or persons with the Designating Party's consent or by court order.

5.3     Access to "Attorneys' Eyes Only" Designations: The Parties and all persons subject to this Protective Order agree that information designated as "ATTORNEYS' EYES ONLY" may only be accessed or reviewed by the following:

a)      The Court, its personnel, and court reporters;

b)      Counsel of record, or co-counsel for any Party, or other party that has entered into a joint defense agreement in the Action and their employees who assist counsel of record in the Action and are informed of the duties hereunder;

c)      In-house counsel for any Party in the Action and Richard A. Marshack, as Chapter 11 Trustee of The Litigation Practice Group P.C. who is informed of the duties and obligations imposed hereunder;

d)      Experts or consultants employed by the Parties or their counsel, or co-counsel for purposes of the Action,  and so long as each such expert or consultant has signed attached Exhibit A; and

e)      Other witnesses or persons to whom the Designating Party agrees in advance of disclosure or by court order.

5.4     Non-Waiver Effect of Designations: Neither the taking of, nor the failure to take, any action to enforce the provisions of this Protective Order, nor the failure to object to any designation, will constitute a waiver of any Party(ies)'s claim or defense in the Action or any other action or proceeding, including, but not limited to, a claim or defense that any designated information is or is not Confidential, is or is not entitled to particular protection, or embodies or does not embody information protectable by law.

5.5     In-Court Use of Designated Information: If information designated under this Protective Order will or may be offered in evidence at a hearing or trial related to any matter in the Action, then the offering party must give advance notice to the party or non-party that designated prior to offering the information so that any use or disclosure may be addressed in accordance with

Exhibit 3, Page 45

the Court's case-management or other pre-trial order, or by a motion *in limine.* Nothing in this Protective Order shall be construed as a waiver by a Party of any objections that may be raised as to the admissibility at trial of any evidentiary materials.

## 6.    CLAW-BACK REQUESTS

6.1    <u>Failure to Make Designation:</u>  If, at any time, a Party or non-party discovers that it produced or disclosed Confidential Information without designation, it may promptly notify the Receiving Party and identify with particularity the Confidential Information to be designated and the level of designation (the claw-back notification). The Receiving Party may then request substitute production of the newly-designated information. Within thirty (30) days of receiving the claw-back notification, the Receiving Party must: (1) certify to the Designating Party it has appropriately marked or, if substitute production has been requested, destroyed all unmarked copies that it received, made, and/or distributed; and (2) if it was practicably unable to mark or destroy any information because disclosures occurred while the Receiving Party was under no duty of confidentiality under the terms of this Protective Order regarding that information, the Receiving Party must reasonably provide as much information as practicable to aid the Designating Party in protecting the information, consistently with the Receiving Party's attorney-client, work-product, and/or trial-preparation privileges.

6.2    <u>Inadvertent Production of Privileged Information:</u> If, at any time, a Party discovers that it produced information that it reasonably believes is subject to protection under the attorney/client, work-product, or trial-preparation privileges, then it must promptly notify each Receiving Party of the claim for protection, the basis for it, amend its privilege log accordingly, and comply with Fed. R. Civ. P. 26(b)(5). Whenever possible, the producing party must produce substitute information that redacts the information subject to the claimed protection. The Receiving Party must thereupon comply with Fed. R. Civ. P. 26(b)(5)(B) as to the information subject to the claimed protection.

/ / /

/ / /

/ / /

7

**7.      DURATION/CONTINUED RESTRICTIONS**

7.1      <u>Handling of Designated Information Upon Conclusion of the Main Bankruptcy Case:</u>
Upon conclusion of the Main Bankruptcy Case, by way of dismissal or closing of the case, the
Designating Party(ies) is/are responsible for ensuring that any Party or person to whom the
Designating Party shared or disclosed designated information in any of the matters under the Action
returns or destroys all of its copies, regardless of the medium in which it was stored. No witness or
Party may retain designated information that it received from any other Party or non-party under this
Protective Order; only counsel of record, or co-counsel, are the authorized agents who may retain one
copy for their respective legal files, and who must also describe to the Designating Party the extra
steps taken to protect its legal file containing paper and/or electronic copies of the designated
information so that it is not accessed, used, or disclosed inconsistently with the obligations under this
Protective Order. This provision does not apply to the Court or Court staff. Moreover, this provision
does not apply to Trustee, who may retain and use – consistent with this Order – Confidential
Information received in any Action during the entirety of the Bankruptcy.

7.2      <u>Continued Restrictions Under this Protective Order:</u> The restrictions on disclosure and
use of Confidential Information shall survive the conclusion of the Bankruptcy case and any matter
in the Action.

**8.      PRIVILEGED OR PROTECTED INFORMATION**

8.1      Nothing in this Protective Order shall require disclosure of information that is
protected by the attorney-client privilege, the work-product protection, or any other legally cognizable
privilege (a "Privilege or Protection").  If information subject to a claim of Privilege or Protection is
inadvertently produced, pursuant to Federal Rule of Evidence 502(d) such production shall not
constitute a waiver of, or estoppel as to, any claim of Privilege or Protection for such information or
any other information that may be protected from disclosure by a Privilege or Protection in any
proceeding.

8.2      If a Party receives a document that appears to be subject to a Privilege or Protection,
then it shall refrain from examining the document any more than is essential to ascertain if it is
privileged or protected and shall promptly notify the producing Party in writing that the receiving

Party possesses material that appears to be subject to a Privilege or Protection. The producing Party shall have seven (7) days after receiving such notice to assert a Privilege or Protection over the identified material. If the producing Party does not assert a claim of Privilege or Protection within the seven (7)-day period, the material in question shall be deemed not privileged or protected.

8.3    If a producing Party has produced a document subject to a claim of Privilege or Protection, upon written request by the producing Party, the document for which a claim of Privilege or Protection is made shall be sequestered or destroyed to the extent reasonably practicable, and the receiving Party shall not use the document for any purpose other than in connection with analyzing or disputing a claim of Privilege or Protection or in connection with a motion to compel the production of the document.

8.4    The receiving Party sequestering or destroying such material may then move the Court for an order compelling production of the material. The applicable producing Party bears the burden of establishing the applicable Privilege or Protection of any clawed-back document or information as and to the same extent that it would have borne such burden had it not produced the document or information.  Nothing in this Protective Order shall limit the Court's right or any receiving Party's right to request an in camera review of any information subject to a claim of Privilege or Protection.

###

Date: June 3, 2024

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EXHIBIT "A"

1

1  Christopher B. Ghio (State Bar No. 259094)
   Christopher Celentino (State Bar No. 131688)
2  Yosina M. Lissebeck (State Bar No. 201654)
   **DINSMORE & SHOHL LLP**
3  655 West Broadway, Suite 800
   San Diego, CA 92101
4  Telephone:  619.400.0500
   Facsimile:  619.400.0501
5  christopher.ghio@dinsmore.com
   christopher.celentino@dinsmore.com
6  yosina.lissebeck@dinsmore.com

7  Sarah S. Mattingly (Ky. Bar 94257)
   DINSMORE & SHOHL, LLP
8  101 S. Fifth Street, Suite 2500
   Louisville, KY 40202
9  Telephone: 859-425-1096
   Facsimile: 502-585-2207
10 Sarah.mattingly@dinsmore.com
   (Admitted pro hac vice)

11
   Special Counsel to Richard A. Marshack,
12 Chapter 11 Trustee

13

14

15                    **UNITED STATES BANKRUPTCY COURT**

                       **CENTRAL DISTRICT OF CALIFORNIA**
16

17
   In Re                               Case No. 8:23-BK-10571-SC
18
                                       Chapter 11
19
   The Litigation Practice Group P.C., **EXHIBIT A TO STIPULATED**
20                                      **ORDER**
                  Debtor(s),
21                                      Date:  May 23, 2024
22                                      Time:  1:30 p.m.
                                        Judge: Hon. Scott C. Clarkson
23                                      Place: Courtroom 5C[1] - Via Zoom
24                                             411 W. Fourth Street
                                               Santa Ana, CA  92701
25

26

27 _____

28 [1] Video and audio connection information for each hearing will be provided on Judge Clarkson's
   publicly posted hearing calendar, which may be viewed online at:
   http://ecf-ciao.cacb.uscourts.gov/CiaoPosted/?jid=SC.

                                        1

This is to certify that:

      (a)    I am being given access to Confidential Information pursuant to the Stipulated Protective Order that was entered into the main bankruptcy case for Litigation Practice Group, but which is binding and controlling as set forth by the Court's Order on any and all contested matters and  any and all litigation commenced by Trustee;

      (b)    I have read the Stipulated Protective Order; and

      (c)    I agree to be bound by the terms and conditions thereof, including, without limitation, to the obligations regarding the use, non-disclosure and return of such Confidential Information. I further agree that in addition to being contractually bound by the Stipulated Protective Order, I am subject to the jurisdiction of the above reference Court for any violation thereof.

Date: _____

_____
            Signature

_____
            Printed Name

# EXHIBIT 4

DocuSign Envelope ID: B07AE635-210A-4569-B54E-39CB3B045F74

### The Litigation Practice Group PC - Affiliate Agreement

THIS AGREEMENT (the "Agreement") is made and effective as of the 19th day of October, 2022 by and between The Litigation Practice Group PC ("LPG") and **Z.A.P. Marketing Corp** (hereinafter "Affiliate").

RECITALS:

LPG is in the business of providing a package debtor's rights services in the form of debt validation, consultation, and litigation defense through a network of attorneys licensed to practice law in all 50 states and the District of Columbia.  The legal services offered include:

- -   Removal of invalid debts through correspondence directly with the three credit bureaus;
- -   Validation of consumer debts through correspondence including disputes with original creditors, validation demands to third party debt collectors and assignees, and disputes with all three credit bureaus;
- -   Defense of collection actions initiated by original creditors or third party assignees;
- -   Negotiation of advantageous settlements of consumer debts both pre and post litigation;
- -   Education of clients regarding federal laws applicable to consumer debt and credit reporting, and consultation regarding risk mitigation and litigation defense through its network of attorneys across the country.

Each of these services is offered without regard to the identity of the creditor or third-party debt collector or assignee.  LPG reviews all client files prior to the execution of the client's legal services agreement with the appropriate law firm, and maintains oversight through its administrative services over all file placements.

Affiliate owns and operates a system of generating leads consisting of consumers interested in the legal services offered by LPG.  Affiliate, acting in accordance with direction from LPG, shall obtain the names of Consumers and will market in a lawful manner, complying with the restrictions of the jurisdiction in which the consumer resides.  For consumers interested in utilizing LPG's services, Affiliate will assist LPG in having consumers execute an approved legal services agreement with a law firm to which LPG provides administrative support services, at which point consumers will become clients of that law firm, and that law firm will be exclusively responsible for and liable for the representation of consumers in the context of the provision of legal services.  Nothing in this Agreement nor in the eventual legal services agreement shall restrict Affiliate from offering any other service of any kind to consumer, including credit repair or debt relief programs.  Nor is Affiliate restricted from marketing on behalf of credit repair or debt relief entities, including but not limited to other law firms.  LPG and Affiliate hereby agree that any and all prior agreements entered into by LPG and Affiliate or any law firm to which LPG provides administrative support services and Affiliate are null and void and unenforceable, and this Agreement shall become the operative agreement for all files previously placed through the use of LPG's administrative support services.

Affiliate is being retained by LPG to provide marketing and customer service functions only.  All payments made to Affiliate are for services actually rendered, and do not constitute a revenue or fee sharing agreement.  The method used to determine the value of the services rendered by Affiliate to LPG were



1

selected by both parties based upon industry standard and effective valuation, and not for any other purpose.

LPG and Affiliate hereby agree to the following:

1.      Each Party shall be solely responsible for bearing its own costs and expenses incurred in performing its responsibilities under this Agreement, including all tariffs, filings, licensing and/or other fees.

2.      Affiliate shall comply with state and federal laws in communicating with consumers regarding LPG, any law firm utilized by LPG, or any of the programs of LPG or the assigned law firm.

3.      Both LPG and the law firm it utilizes shall comply with all state and federal laws in performing its obligations under the legal services agreement entered into between LPG and the consumers referred by Affiliate.

4.      If requested by LPG, Affiliate shall provide a copy of all marketing materials to LPG upon receiving a request from LPG. Affiliate shall endeavor to provide such materials within 10 business days of such request, but may provide such materials in any time frame that is commercially reasonable.

5.      Affiliate agrees to keep any and all documents or communications between itself and LPG confidential pursuant to the provisions set forth below, and shall not share of disclose such documents to any party with prior, express written consent.

6.      Affiliate shall be entitled to receive the following as full and complete compensation for its services to LPG: LPG shall pay 75% per file for each file that Affiliate places with LPG, not counting the monthly maintenance fee of $96.38, which LPG shall retain to cover administrative costs for each file. LPG shall calculate the amount of each file, apply the above-identified percentage fee, and remit the same to Affiliate pursuant to an agreed-upon schedule not to exceed one remittance per seven (7) calendar days. If any consumer cancels LPG's services, or demands a refund for payment for such services, or both, then LPG shall be solely responsive for such cost and Affiliate shall not have to share such expense. LPG has exclusive discretion to grant or deny a requested refund or cancellation. Finally, LPG may treat a consumer's failure to remit payment in a timely manner as a cancellation of the legal services agreement executed by consumer with LPG, and has sole discretion to make such determination.

7.      LPG shall bear all expenses related to the services it offers to consumers, and Affiliate shall bear all expenses related to its marketing of the same except as is set forth in this Paragraph. Neither LPG nor Affiliate shall be required to pay the expenses of the other.

8.      LPG reserves all rights with regard to rejection or cancellation of a consumer, but will do so only in accordance with the recommendation of the law firm utilized in providing such service, and only subject to the applicable state bar rules for such representation.

9.      This agreement shall continue to operate and bind LPG and Affiliate for a period of twelve (12) months from the date of execution of this Agreement. At that time, this Agreement will automatically renew until either party sends written notice of cancellation of this Agreement, which shall be effective



2

Exhibit 4, Page 54

DocuSign Envelope ID: 807AE635-219A-4569-B54E-39CB3B045E74

30 days after LPG or Affiliate postmarks or emails a cancellation letter stating the intent of that party to terminate this Agreement.  If such cancellation letter is sent by either party, it shall be effective 30 days from the date of postmark or email, and shall terminate this Agreement and release either party from the obligations contained herein.

10.     If either party shall default under this Agreement, defined as a failure to comply with any of the obligations set forth above, the Agreement shall terminate following notice of default and a cure period of 30 days from the date postmarked on the notice of default.  The notice of default must state with specificity the act of default alleged.

11.     Upon termination of this Agreement for any reason whatsoever, LPG and Affiliate will refrain from making any disparaging or negative comment, remark, statement, or implication, whether written or oral.

12.     The confidential information of LPG or Affiliate shall include information regarding contracts, customer or client lists or information, hardware, software, screens, specifications, designs, plans, drawings, data, prototypes, discoveries, research, developments, methods, processes, procedures, improvements, 'Know-how', compilations, market research, marketing techniques and plans, marketing materials, business plans and strategies, documents, scripts, guidelines, price lists, pricing policies and financial information or other business and/or technical information and materials, in oral, demonstrative, written, graphic or machine-readable form, which is unpublished, not available to the general public or trade, and which is maintained as confidential and proprietary information by the disclosing party for regulatory, customer relations, and/or competitive reasons.  Neither LPG nor Affiliate may disclose the confidential information of the other with the express written consent of the other.  A failure to abide by this confidentiality term shall entitle the party whose confidential information was compromised to a reasonable sum not less than $50,000.00, nor more than $200,000.00.  The disclosure of information in connection with a judicial proceeding shall not constitute a violation of this term.  The parties agree to notify the other if any inadvertent disclosure of information occurs within 48 hours of becoming aware of such disclosure.  The parties agree to work together in good faith to remediate any disclosure of confidential information.  A party whose confidential information is disclosed shall be entitled to injunctive relief in any court of competent jurisdiction.

13.     If, after the passage of six months of the date of this Agreement, Affiliate fails, in any one calendar month, to have at least fifty (50) active consumers, LPG shall withhold 20% of the fees due to Affiliate for said month in an escrow account.  Such fees shall be held in escrow until, in a single calendar month, Affiliate has fifty (50) or more active consumers, at which point, within five (5) business days of the end of such calendar month, LPG shall transfer the balance of such escrow account to Affiliate and retain nothing in such escrow account.  If Affiliate shall cease operations for any reason, or this Agreement shall terminate for any reason, Affiliate will continue to receive fees due to it under this Agreement until all active consumers have completed or withdrawn from the program, at which point any remaining amounts being held in escrow shall be released to Affiliate in full.

14.     Affiliate agrees not to use the name LPG or any law firm  in any advertising, publicity release, or sales presentation designed to promote Affiliate's service, unless LPG provides prior written consent to such specific use.



3

DocuSign Envelope ID: B07AEB35-218A-4569-B54E-39CB3B945EF4

15.     Any fees incurred by LPG in connection with a customer's Non-Sufficient Funds ("NSF") fee shall be borne exclusively by LPG.

16.     This Agreement may not be assigned or transferred without the prior written consent of the other. This Agreement shall be binding upon and shall inure to the benefit of the Parties and their respective successors and assigns.

17.     In the event of a breach, the prevailing party shall be entitled to reasonable attorneys' fees and collection costs, including all fees and costs on appeal.

18.     This Agreement contains the entire Agreement between the Parties, and shall not be modified, amended or supplemented, or any rights therein waived, unless specifically agreed upon in writing by LPG and Affiliate.

**The Litigation Practice Group PC**



DocuSigned by:
9D494DB1993341E...

**By: Daniel S. March, Managing Shareholder**

**Z.A.P. Marketing Corp**

DocuSigned by:
5A8DF21D4F59462...

By: Mohamed Hegazi

Title:   CEO

4

## **Electronic Funds Transfer Authorization**

This Electronic Funds Transfer (EFT) authorization is for use in connection with the foregoing Agreement, and permits LPG to transfer any and all amounts due to **Z.A.P. Marketing Corp** ("Affiliate") under the foregoing Agreement by EFT.  By signing below, Affiliate hereby authorizes LPG to initiate EFT transfers at its discretion, with all fees and costs incurred by Affiliate in connection with such transfer to be borne by Affiliate, while all fees and costs incurred by LPG in connection with such transfer to be borne by LPG.

Account Holder Signature: _____    Date: _____
                              DocuSigned by:
                              *Mohamed Hegazi*
                              5A8DF21D4F59462...          10/20/2022

By: Mohamed Hegazi

Title:   CEO

Account Owner Name: Z.A.P. Marketing Corp

Social Security Number / FEIN Number associated with account listed below:

Address: 8845 Research Dr Suite 120

City: Irvine, CA 92618

Bank Name: Bank of America

Routing Number:                                    )

Account Number:

Account type :  Checking

5

Exhibit 4, Page 57

# EXHIBIT 5

DocuSign Envelope ID: 0336A23B-5392-4204-9B7E-E6A156528457

### ACCOUNTS RECEIVABLE PURCHASE AGREEMENT

This ACCOUNTS RECEIVABLE PURCHASE AGREEMENT (this "**Agreement**") is made as of February 28, 2023 (the "**Agreement Date**"), by and between The Litigation Practice Group PC (collectively the "**Buyer**"), and Z.A.P. Marketing Corp (the "**Seller**" or **"LPG"**, and together with the Buyer, the **"Parties"**), and The Litigation Practice Group PC ("LPG").

### RECITALS

WHEREAS, in the regular course of business, the Seller originates account receivables from **LPG** in connection with client on-boarding services provided by the Seller to LPG and its affiliates;

WHEREAS, the account receivables represent an obligation of various clients to pay Seller for services that Seller previously provided, but which LPG shall provide from the date of execution of this Agreement;

WHEREAS, the Seller desires to sell, assign, transfer, and deliver to the Buyer, and the Buyer desires to purchase, acquire, and accept from the Seller, certain of these account receivables (the "**Purchased Accounts**").

NOW, THEREFORE, in consideration of the covenants and representations set forth herein, the Parties, intending to be legally bound, agree as follows:

### ARTICLE 1.
### DEFINITIONS

Section 1.1    Certain Definitions.  Certain defined terms used in this Agreement are set forth on **Exhibit A**.

### ARTICLE 2.
### ASSIGNMENT AND TRANSFER AND CONSIDERATION

Section 2.1    Assignment of the Purchased Accounts to the Buyer.  Upon execution of this Agreement and subject to the terms and conditions set forth herein, the Seller shall sell, assign, transfer, and deliver, and the Buyer shall purchase, acquire, and accept from the Seller, all of the Seller's right, title, and interest in and to the Purchased Accounts set forth on the spreadsheet attached to this Agreement, free and clear of any Liens.  Other than the Purchased Accounts, the Buyer shall not purchase or acquire any other assets of the Seller (collectively, the "**Excluded Assets**").

Section 2.2    No Assumption of Liabilities.  The Buyer shall not assume any Liabilities of the Seller of any kind, whether known or unknown, contingent, matured, or otherwise, whether currently existing or hereinafter created (collectively, the "**Excluded Liabilities**").

Section 2.3    Payment of Purchase Price.  Buyer shall pay $96,919.62 (total purchase price) for the Purchased Accounts (the "**Purchase Price**") by wire transfer of immediately available funds in accordance with the wire transfer instructions set forth in **Schedule 2.3** (the "**Wire Instructions**").  The Purchased Accounts are set forth on the attached spreadsheet.

Section 2.4    Guarantee of LPG.  If any file acquired by buyer shall fail to make a first payment, LPG will replace the file and bear any cost associated with such replacement.  The replacement file shall yield no less than the receivable of the failed file.  In addition, if in any calendar month a total of less than 80% of files make a cleared payment, LPG shall replace any non-performing files in such month so that the performance of the file package as

a whole equals 80%. This guarantee shall continue until the completion of the 24th month following execution of this agreement.

## ARTICLE 3.
## REPRESENTATIONS AND WARRANTIES OF THE SELLER

The Seller represents and warrants to the Buyer, as of the Agreement Date and as of the Closing Date, or, if expressly made as of a specified date, as of such specified date, as follows:

Section 3.1    Organization; Good Standing.  The Seller is a Limited Liability Company duly organized, validly existing, and in good standing under the Laws of the State of Delaware and is duly qualified to do business and is in good standing as a foreign corporation in each jurisdiction where the ownership or operation of the Business requires such qualification, except where the failure to be so qualified would not reasonably be expected to have, individually or in the aggregate, a material adverse effect on the business, results of operations, financial condition, or assets of the Seller.

Section 3.2    Power and Authority.  The Seller has all requisite right, power, and authority to execute, deliver, and perform this Agreement and the Transaction Agreements to which it is a party, to consummate the transactions contemplated hereby and thereby, and to perform its obligations hereunder and thereunder.  The execution and delivery of this Agreement and the Transaction Agreements by the Seller, and the consummation by the Seller of the transactions contemplated hereby and thereby, have been duly approved by the Seller, and no further action is required on the part of the Seller to authorize this Agreement, any Transaction Agreement to which it is a party, or the transactions contemplated hereby and thereby.  This Agreement has been, and each of the Transaction Agreements will be, duly and validly executed and delivered by the Seller and, assuming the due and valid authorization, execution, and delivery of this Agreement by the other Parties, and of each such Transaction Agreement by the other parties thereto, constitutes, or will constitute, a valid and binding obligation of the Seller, enforceable against it in accordance with its terms and conditions, except as enforcement may be limited by applicable bankruptcy, insolvency, reorganization, moratorium, and other Laws affecting enforcement of creditor's rights generally and except insofar as the availability of equitable remedies may be limited by applicable Law.

Section 3.3    Title to, and Sufficiency of, the Purchased Accounts.  The Seller has and shall convey to the Buyer, at the Closing, good, valid, transferable, and marketable title to, or valid leasehold interests in, all of the Purchased Accounts, free and clear of all Liens.

Section 3.4    Consents.  The Seller is not required to give any notice to, make any filing with, or obtain any authorization, consent, or approval of, any Governmental Body or Third Party, including a party to any assigned contract, in connection with the execution, delivery, and performance by the Seller of this Agreement or any of the Transaction Agreements to which it is a party or the consummation of the transactions contemplated hereby and thereby.

Section 3.5    No Conflicts. The execution and delivery by the Seller of this Agreement and each of the Transaction Agreements, and the consummation of the transactions contemplated hereby and thereby, will not conflict with, result in any violation of, or default under (with or without notice or lapse of time, or both), or give rise to an additional payment obligation, a right of termination, cancellation, modification, or acceleration of any obligation, or loss of any benefit, under: (a) any provision of the Organizational Documents of the Seller; (b) any contract to which the Seller is party, including, without limitation, any assigned contract; or (c) any Law or order applicable to the Seller or any of the Purchased Accounts.

Section 3.6    Compliance with Laws.  The Seller has materially complied, and is now materially complying, with all Laws applicable to the ownership and use of the Purchased Accounts.

Section 3.7    Legal Proceedings.  There is no Action of any nature pending or, to the Knowledge of the Seller, threatened against or by the Seller: (a) relating to or affecting the Purchased Accounts or (b) that challenges or seeks to prevent, enjoin, or otherwise delay the transactions contemplated by this Agreement and the Transaction Agreements.  No event has occurred or circumstance exists that may give rise to, or serve as a basis for, any such Action.

Section 3.8    Condition of Purchased Accounts.  Each Purchased Account shall have received no less than one processed payment.

Section 3.9    Confidentiality.  Seller agrees and acknowledges that all Purchased Accounts, the pricing, and all terms set forth in this Agreement are confidential (together, the "**Confidential Information**").  Seller will at all times keep the  Confidential Information in confidence and trust.  Seller will not, without the prior written consent of an authorized officer of Buyer, (A) copy, use or disclose any Confidential Information, (B) deliver or disclose any Confidential Information to any person or entity outside the Buyer, or (C) use the Confidential Information for Seller's own use or use it to the detriment of Buyer.  Notwithstanding the foregoing, Seller may, without consent, use the Confidential Information and disclose and deliver same to Seller's employees or agents, if applicable, who have a need to know, provided such employees or agents have entered into written agreements approved by Buyer and containing provisions at least as restrictive as these provisions.  Seller agrees that violation of this Section 3.9.  The Parties agree that the disclosure of the Confidential Information in violation of this Agreement may cause the Buyer irreparable harm and that any breach or threatened breach by the Seller entitles Buyer to seek injunctive relief, in addition to any other legal or equitable remedies available to it, in any court of competent jurisdiction.

## ARTICLE 4.
## REPRESENTATIONS AND WARRANTIES OF THE BUYER

The Buyer represents and warrants to the Seller, as of the Agreement Date and as of the Closing Date, or, if expressly made as of a specified date, as of such specified date, as follows:

Section 4.1    Organization; Good Standing.  The Buyer is a limited liability company, duly organized, validly existing, and in good standing under the Laws of the State of Florida.

Section 4.2    Power and Authority.  The Buyer has all requisite right, power, and authority to execute, deliver, and perform this Agreement and the Transaction Agreements to which it is a party, to consummate the transactions contemplated hereby and thereby, and to perform its obligations hereunder and thereunder.  The execution and delivery of this Agreement and the Transaction Agreements by the Buyer, and the consummation by the Buyer of the transactions contemplated hereby and thereby, have been duly approved by the Buyer, and no further action is required on the part of the Buyer to authorize this Agreement, any Transaction Agreement to which it is a party, or the transactions contemplated hereby and thereby.  This Agreement has been, and each of the Transaction Agreements will be, duly and validly executed and delivered by the Buyer and, assuming the due and valid authorization, execution, and delivery of this Agreement by the other Parties, and of each such Transaction Agreement by the other parties thereto, constitutes, or will constitute, a valid and binding obligation of the Buyer, enforceable against it in accordance with its terms and conditions, except as enforcement may be limited by applicable bankruptcy, insolvency, reorganization, moratorium and other Laws affecting enforcement of creditor's rights generally and except insofar as the availability of equitable remedies may be limited by applicable Law.

Section 4.3    No Conflicts.  The execution and delivery by the Buyer of this Agreement and each of the Transaction Agreements, and the consummation of the transactions contemplated hereby and thereby, will not conflict with, result in any violation of, or default under (with or without notice or lapse of time, or both), or give rise to an additional payment obligation, a right of termination, cancellation, modification, or acceleration of, any obligation, or loss of any benefit under: (a) any provision of the Buyer's Organizational Documents; (b) any contract to which the Buyer is party, other than the Buyer Representation Agreement; or (c) any Law applicable to the Buyer.

Section 4.4    Sufficient Funds.  The Buyer has, and will have, sufficient funds available to make payment of the Purchase Price and consummate the transactions contemplated by this Agreement and the Transaction Agreements.

## ARTICLE 5.
## COVENANTS

Section 5.1    Appropriate Actions.

(a)    General.  Each of the Parties shall use commercially reasonable efforts to take all actions necessary to consummate the transactions contemplated by this Agreement as soon as reasonably practicable after the execution of this Agreement, including taking all actions necessary to comply promptly with all applicable Laws that may be imposed on it or any of its Affiliates with respect to the Closing.

## ARTICLE 6.
## CLOSING

Section 6.1    Closing.  The closing of the transactions contemplated by this Agreement (the "**Closing**") will take place upon the execution and delivery of this Agreement or at such other time, date, and place as the Parties may agree in writing.  The date on which the Closing occurs is hereinafter referred to as the "**Closing Date.**" The Parties agree that the Closing may take place by the electronic exchange of executed counterpart documents and the electronic transfer of funds.

Section 6.2    Closing Deliverables of the Seller.  At or prior to the Closing, Seller shall deliver to Buyer any of the following if requested by Buyer:  (i) a bill of sale and assignment and assumption agreement substantially in the form attached hereto as **Exhibit B** (the "**Bill of Sale and Assignment and Assumption Agreement**"), duly executed by the Seller, effecting the transfer and assignment to, and assumption by, the Buyer of the Purchased Accounts; and (ii) such other customary instruments of transfer, assumption, filings, or documents, in form and substance reasonably satisfactory to the Buyer, as may be required to give effect to this Agreement.

Section 6.3    Closing Deliverables of the Buyer.  At or prior to the Closing, the Seller shall have received the following: (i) the Upfront Cash Payment; and (ii) if requested pursuant to Section 6.2, the Bill of Sale and Assignment and Assumption Agreement, duly executed by the Buyer.

Section 6.4    Indemnification by the Seller.  Subject to the limitations set forth in this Article 6, the Seller agrees to indemnify and hold harmless the Buyer, including its shareholders, members, directors, managers, officers, employees, Affiliates, and agents (each, a "**Buyer Indemnified Party**" and, collectively, the "**Buyer Indemnified Parties**"), against all claims, losses, Liabilities, damages, deficiencies, diminutions in value, costs, interest, awards, judgments, penalties, and expenses, including reasonable out-of-pocket attorneys' and consultants' fees and expenses and including any such reasonable expenses incurred in connection with investigating, defending against, or settling any of the foregoing (each, a "**Loss**" and, collectively, the "**Losses**") paid, suffered, incurred, sustained, or accrued by any Buyer Indemnified Party, directly or indirectly, as a result of,

Exhibit 5, Page 62

arising out of, or in connection with: (a) any inaccuracy in, or breach of, any of the representations or warranties of the Seller contained in this Agreement, (b) any breach or non-fulfillment of any covenant, agreement, or obligation to be performed by the Seller pursuant to this Agreement, (c) any Excluded Asset or any Excluded Liability.

Section 6.5    Indemnification by the Buyer.  Subject to the limitations set forth in this Article 6, the Buyer agrees to indemnify and hold harmless the Seller, including its Affiliates and agents (each, a "**Seller Indemnified Party**" and, collectively, the "**Seller Indemnified Parties**"), against all Losses paid, suffered, incurred, sustained, or accrued by any Seller Indemnified Party, directly or indirectly, as a result of, arising out of, or in connection with: (a) any inaccuracy in, or breach of, any of the representations or warranties of the Buyer contained in this Agreement; (b) any breach or non-fulfillment of any covenant, agreement, or obligation to be performed by the Buyer pursuant to this Agreement; (c) any event or occurance related to the Purchased Accounts or Buyer occurring after the Closing; or (d) resulting from any omissions or misstatements made by Buyer to investors or potential investors.

Section 6.6    Indemnification Procedures.

(a)    No Restraints.  Promptly following receipt by an Indemnified Party of notice by a Third Party (including any Governmental Body) of any complaint, dispute, or claim or the commencement of any audit, investigation, Action or proceeding with respect to which such Indemnified Party may be entitled to indemnification pursuant hereto (a "**Third-party Claim**"), such Indemnified Party shall provide written notice thereof to the Indemnifying Party, provided, however, that the failure to so notify the Indemnifying Party shall relieve the Indemnifying Party from Liability hereunder with respect to such Third-party Claim only if, and only to the extent that, such failure to so notify the Indemnifying Party results in the forfeiture by the Indemnifying Party of rights and defenses otherwise available to the Indemnifying Party with respect to such Third-party Claim.  The Indemnifying Party shall have the right, upon written notice delivered to the Indemnified Party within twenty days thereafter assuming full responsibility for any Losses resulting from such Third-party Claim, to assume the defense of such Third-party Claim, including the employment of counsel reasonably satisfactory to the Indemnified Party and the payment of the fees and disbursements of such counsel; provided, however, if the Indemnifying Party declines or fails to assume the defense of such Third-party Claim on the terms provided above or to employ counsel reasonably satisfactory to the Indemnified Party, in either case within such twenty day period, then any Losses shall include the reasonable fees and disbursements of counsel for the Indemnified Party as incurred.  In any Third-party Claim for which indemnification is being sought hereunder the Indemnified Party or the Indemnifying Party, whichever is not assuming the defense of such Third-party Claim, shall have the right to participate in such matter and to retain its own counsel at such Party's own expense.  The Indemnifying Party or the Indemnified Party (as the case may be) shall at all times use reasonable efforts to keep the Indemnifying Party or Indemnified Party (as the case may be) reasonably apprised of the status of the defense of any matter, the defense of which it is maintaining, and to cooperate in good faith with each other with respect to the defense of any such matter.

(b)    No Indemnified Party may settle or compromise any Third-party Claim or consent to the entry of any judgment with respect to which indemnification is being sought hereunder without the prior written consent of the Indemnifying Party (which may not be unreasonably withheld or delayed), unless (i) the Indemnifying Party fails to assume and maintain the defense of such Third-party Claim or (ii) such settlement, compromise, or consent includes an unconditional release of the Indemnifying Party and its officers, directors, employees and Affiliates from all Liability arising out of, or related to, such Third-party Claim.  An Indemnifying Party may not, without the prior written consent of the Indemnified Party, settle or compromise any Third-party Claim or consent to the entry of any judgment with respect to which indemnification is being sought hereunder unless such settlement, compromise, or consent (A) includes an unconditional release of the Indemnified Party and its officers, directors, employees, and Affiliates from all Liability arising out of, or related to, such Third-party

Claim, (B) does not contain any admission or statement suggesting any wrongdoing or Liability on behalf of the Indemnified Party, and (C) does not contain any equitable order, judgment, or term that in any manner affects, restrains, or interferes with the business of the Indemnified Party or any of the Indemnified Party's Affiliates.

(c)    If an Indemnified Party claims a right to payment pursuant hereto with respect to any matter not involving a Third-party Claim (a "**Direct Claim**"), such Indemnified Party shall send written notice of such claim to the appropriate Indemnifying Party (each, a "**Notice of Claim**").  Such Notice of Claim shall specify the basis for such Direct Claim.  The failure by any Indemnified Party so to notify the Indemnifying Party shall not relieve the Indemnifying Party from any Liability that it may have to such Indemnified Party with respect to any Direct Claim made pursuant to this Section 6.6(c).  If the Indemnifying Party does not notify the Indemnified Party within thirty days following its receipt of such Notice of Claim that the Indemnifying Party disputes its Liability to the Indemnified Party under this Article 6 or the amount thereof, the Direct Claim specified by the Indemnified Party in such Notice of Claim shall be conclusively deemed a Liability of the Indemnifying Party under this Article 6, and the Indemnifying Party shall pay the amount of such Liability to the Indemnified Party on demand or, in the case of any Notice of Claim in which the amount of the Direct Claim (or any portion of the Direct Claim) is estimated, on such later date when the amount of such Direct Claim (or such portion of such Direct Claim) becomes finally determined.  In the event that the Indemnifying Party has timely disputed its Liability with respect to such Direct Claim as provided above, as promptly as possible, such Indemnified Party and the appropriate Indemnifying Party shall establish the merits and amount of such Direct Claim (by mutual agreement, litigation, arbitration or otherwise) and, within five business days following the final determination of the merits and amount of such Direct Claim, the Indemnifying Party shall pay to the Indemnified Party an amount equal to such Direct Claim as determined hereunder.

### ARTICLE 7.
### MISCELLANEOUS

Section 7.1    Entire Agreement; Amendment.  This Agreement and the Transaction Agreements (including the exhibits hereto and thereto and the documents referred to therein) constitute the entire agreement among the Parties with respect to the subject matter hereof and supersede any prior understandings, agreements, or representations by or among the Parties, written or oral, to the extent they related in any way to the subject matter hereof.  This Agreement may be amended with the written consent of each of the Parties or any successor thereto by execution of an instrument in writing.

Section 7.2    Waivers.  The rights and remedies of the Parties to this Agreement are cumulative and not alternative.  To the maximum extent permitted by applicable Law: (a) no claim or right arising out of this Agreement or the documents referred to in this Agreement can be discharged by one Party, in whole or in part, by a waiver or renunciation of the claim or right unless in writing signed by the other Parties; (b) no waiver that may be given by a Party will be applicable except in the specific instance for what it is given; and (c) no notice to, or demand on, one Party will be deemed to be a waiver of any obligation of such Party or of the right of the Party giving such notice or demand to take further action without notice or demand as provided in this Agreement or the Transaction Agreements.

Section 7.3    Notices.  All notices and other communications required or permitted hereunder shall be made to the address of a Party listed on the signature page to this Agreement and shall be (a) in writing, (b) effective when given, and (c), in any event, deemed to be given upon receipt or, if earlier: (i) upon delivery, if delivered by hand; (ii) two business days after deposit with FedEx Express or similar recognized international overnight courier service, freight prepaid; or (iii) one business day after facsimile or electronic mail transmission. A Party may change the address to which notices, requests, demands, claims, and other communications hereunder are to be delivered by giving the other Parties advance written notice pursuant to the provisions above.

Section 7.4    <u>Successors and Assigns</u>.  This Agreement shall be binding upon, and inure to the benefit of, the Parties named herein and their respective successors and permitted assigns.  Neither this Agreement nor any rights or obligations of a Party hereunder shall be assigned by a Party (unless to an Affiliate of such Party) without the prior written consent of the other Parties.  This Agreement will be binding upon any permitted assignee of any Party.  No assignment shall have the effect of relieving any Party to this Agreement of any of its obligations hereunder.

Section 7.5    <u>Public Disclosure</u>.  Except as may be required by Law, the Seller shall not issue any statement or communication to any Third Party (other than its respective agents) regarding the subject matter of this Agreement or the transactions contemplated hereby, including, if applicable, the termination of this Agreement and the reasons therefor, without the prior written consent of the Buyer.

Section 7.6    <u>Expenses and Fees</u>.  Whether or not the Closing occurs, all fees and expenses incurred in connection with this transactions contemplated by this Agreement, including all legal, accounting, financial advisory, consulting and all other fees and expenses of Third Parties incurred by a Party in connection with the negotiation and effectuation of the terms and conditions of this Agreement and the transactions contemplated hereby, shall be the obligation of the respective Party incurring such fees and expenses.

Section 7.7    <u>Specific Performance</u>.  The Parties agree that irreparable damage would occur if any provision of this Agreement was not performed in accordance with the terms hereof and that the Parties shall be entitled to specific performance of the terms hereof, in addition to any other remedy to which they are entitled hereunder, at Law or in equity.

Section 7.8    <u>Counterparts</u>.  This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement.  A signed copy of this Agreement delivered by facsimile, electronic mail, or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

Section 7.9    <u>Governing Law</u>.  This Agreement shall, in all respects, be construed in accordance with, and governed by, the Laws of the State of California without regard to conflict of Laws principles.

Section 7.10    <u>Severability</u>.  Any term or provision of this Agreement that is invalid or unenforceable in any situation in any jurisdiction shall not affect the validity or enforceability of the remaining terms and provisions hereof or the validity or enforceability of the offending term or provision in any other situation or in any other jurisdiction.

Section 7.11    <u>Construction</u>.  The Parties have participated jointly in the negotiation and drafting of this Agreement.  In the event an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the Parties and no presumption or burden of proof shall arise favoring or disfavoring any Party by virtue of the authorship of any of the provisions of this Agreement.

DocuSign Envelope ID: 0336A23B-F39B-4294-9B7E-E8A156F284E7

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the Agreement Date.

**BUYER:**

**The Litigation Practice Group P.C.**

By: _Daniel S March_

      9D494DB1993341E...
      Name: Daniel S March
      Title: Managing Shareholder

**SELLER:**

**Z.A.P. Marketing Corp**

By: _Mohamed Hegazi_

      5A8DF21D4F59462...
      Name: Mohamed Hegazi
      Title: CFO

**APPROVAL OF ASSIGNMENT AND GUARANTEE**

The assignment of the Purchased Accounts set forth in this Agreement as well as the guarantee included therein is hereby approved, and with respect to the Purchased Accounts, the Buyer shall have all rights of Buyer as set forth in this agreement.

**The Litigation Practice Group P.C.**

By: _Daniel S March_

      9D494DB1993341E...
      Name: Daniel S. March
      Title: Managing Shareholder

*[Signature Page to Accounts Receivable Purchase Agreement]*

DocuSign Envelope ID: 0336A23B-5392-4204-9B7E-E8A15F5284F7

**EXHIBIT A**

**DEFINITIONS**

As used in this Agreement, the following terms have the following meanings (terms defined in the singular to have a correlative meaning when used in the plural and vice versa).

(a)    "**Action**" shall mean any civil, criminal, or administrative action, claim, suit, demand, charge, citation, reexamination, opposition, interference, decree, injunction, mediation, hearing, notice of violation, demand letter, litigation, proceeding, labor dispute, arbitral action, governmental or other audit, inquiry, criminal prosecution, investigation, unfair labor practice charge, or complaint.

(b)    "**Agreement**" shall have the meaning set forth in the preamble to this Agreement.

(c)    "**Agreement Date**" shall have the meaning set forth in the preamble to this Agreement.

(d)    "**Affiliate**" shall mean (i) with respect to any non-natural Person, any Person that, directly or indirectly, through one or more intermediaries, controls, is controlled by, or is under common control with, such Person and (ii), with respect to any individual, (A) family members of such individual, by blood, adoption, or marriage, (B) such individual's spouse or ex-spouse and (C) any Person that is directly or indirectly under the control of any of the foregoing individuals.  For purposes of this definition, "control" (including with correlative meanings, the terms "controlling," "controlled by," and under "common control with") means the possession, directly or indirectly, of the power to direct the management and policies of a Person, whether through the ownership of voting securities, by contract, or otherwise.

(e)    "**Bill of Sale and Assignment and Assumption Agreement**" shall have the meaning set forth in Section 6.2.

(f)    "**Business**" shall mean the business of the Seller as conducted on the Agreement Date.

(g)    "**Buyer**" shall have the meaning set forth in the preamble to this Agreement.

(h)    "**Buyer Indemnified Parties**" shall have the meaning set forth in Section 6.4.

(i)    "**Closing**" shall have the meaning set forth in Section 6.1.

(j)    "**Closing Date**" shall have the meaning set forth in Section 6.1.

(k)    "**Direct Claim**" shall have the meaning set forth in Section 6.6(c).

(l)    "**Excluded Assets**" shall have the meaning set forth in Section 2.1.

(m)    "**Excluded Liabilities**" shall have the meaning set forth in Section 2.2.

(n)    "**Governmental Body**" shall mean any: (i) nation, province, state, county, city, town, village, district, or other jurisdiction of any nature; (ii) federal, provincial, state, local, municipal, foreign, or other government; (iii) governmental or quasi-governmental authority of any nature (including any governmental agency, branch, department, official, or entity and any court or other tribunal); (iv) multi-national organization or body; or (v) body exercising, or entitled to exercise, any administrative, executive, judicial, legislative, police, regulatory, or taxing authority or power of any nature.

DocuSign Envelope ID: 0336A23B-5392-4294-9B7E-E8A15E5284E7

(o)    "**Indebtedness**" means, without duplication and with respect to the Seller, all: (i) indebtedness for borrowed money; (ii) obligations for the deferred purchase price of property or services, (iii) long or short-term obligations evidenced by notes, bonds, debentures or other similar instruments; (iv) obligations under any interest rate, currency swap, or other hedging agreement or arrangement; (v) capital lease obligations; (vi) reimbursement obligations under any letter of credit, banker's acceptance or similar credit transactions; (vii) guarantees made by the Seller on behalf of any third party in respect of obligations of the kind referred to in the foregoing clauses (i) through (vi); and (viii) any unpaid interest, prepayment penalties, premiums, costs and fees that would arise or become due as a result of the prepayment of any of the obligations referred to in the foregoing clauses (i) through (vii).

(p)    "**Indemnified Party**" shall mean a Buyer Indemnified Party or a Seller Indemnified Party, as the case may be, making a claim for indemnification under Article 6.

(q)    "**Indemnifying Party**" shall mean a Party against whom a claim for indemnification is asserted under Article 6.

(r)    "**Knowledge**" shall mean, with respect to the Seller, the actual or constructive knowledge of all facts relevant to this transaction and the transacting parties, after due inquiry.

(s)    "**Law**" shall mean any law, statute, ordinance, regulation, rule, code, notice requirement, court decision, or agency guideline, of any foreign, federal, state, or local Governmental Body.

(t)    "**Liabilities**" shall mean any direct or indirect liability, Indebtedness, obligation, commitment, expense, claim, deficiency, guaranty, or endorsement of, or by, any Person of any type, known or unknown, and whether accrued, absolute, contingent, matured, unmatured, determined or undeterminable, on- or off-balance sheet, or other.

(u)    "**Lien**" shall mean any mortgage, pledge, lien, charge, claim, security interest, adverse claims of ownership or use, restrictions on transfer, defect of title, or other encumbrance of any sort.

(v)    "**Losses**" shall have the meaning set forth in Section 6.4.

(w)    "**Notice of Claim**" shall have the meaning set forth in Section 6.6(c).

(x)    "**Organizational Documents**" shall mean, with respect to a Person, the charter, bylaws, limited liability company agreement, and other organizational documents of such Person, in each case, as amended.

(y)    "**Party**" or "**Parties**" shall have the meaning set forth in the preamble to this Agreement.

(z)    "**Permitted Liens**" shall mean (i) Liens for Taxes not yet delinquent or being contested in good faith by appropriate proceedings, (ii) statutory Liens (including materialmen's, warehousemen's, mechanic's, repairmen's, landlord's, and other similar Liens) arising in the ordinary course of business securing payments not yet delinquent or being contested in good faith by appropriate proceedings, and (iii) restrictive covenants, easements, and defects, imperfections or irregularities of title, if any, of a nature that do not materially and adversely affect the assets or properties subject thereto.

(aa)    "**Person**" shall mean any individual, corporation (including any non-profit corporation), general or limited partnership, limited liability company, joint venture, estate, trust, association, organization, labor union, Governmental Body, or other entity.

DocuSign Envelope ID: 0336A23B-5398-4204-9B7E-E8A156528457

(bb)    "**Purchase Price**" shall have the meaning set forth in <u>Section 2.3</u>.

(cc)    "**Purchased Accounts**" shall have the meaning set forth in the Recitals.

(dd)    "**Seller**" shall have the meaning set forth in the preamble to this Agreement.

(ee)    "**Seller Indemnified Parties**" shall have the meaning set forth in <u>Section 6.5</u>.

(ff)    "**Tax**" or "**Taxes**" shall mean any U.S. federal, state, local or non-U.S. income, gross receipts, license, payroll, employment, excise, severance, stamp, occupation, premium, windfall profits, environmental, customs duties, capital stock, escheat, franchise, profits, withholding, social security, unemployment, disability, real property, personal property, sales, use, transfer, registration, value added, alternative or add-on minimum, estimated, or other tax of any kind whatsoever, including any interest, penalty, or addition thereto, whether disputed or not.

(gg)    "**Tax Returns**" means any return, declaration, report, claim for refund, or information return or statement relating to Taxes, including any schedule or attachment thereto, and including any amendment thereof.

(hh)    "**Third Party**" or "**Third Parties**" shall mean any Person other than the Parties or their respective Affiliates.

(ii)    "**Third-party Claim**" shall have the meaning set forth in <u>Section 6.6(a)</u>.

(jj)    "**Transaction Agreements**" shall mean the Bill of Sale and Assignment and Assumption Agreement, and each other agreement, instrument, and/or certificate contemplated by this Agreement or such other agreements to be executed in connection with the transactions contemplated hereby or thereby.

(kk)    "**Upfront Cash Payment**" shall have the meaning set forth in <u>Section 2.3</u>.

(ll)    "**Wire Instructions**" shall have the meaning set forth in <u>Section 2.3</u>.

DocuSign Envelope ID: 0336A23B-5392-4294-9B7E-E8A156528457

## EXHIBIT B

**FORM OF BILL OF SALE AND ASSIGNMENT AND ASSUMPTION AGREEMENT**

THIS BILL OF SALE AND ASSIGNMENT AND ASSUMPTION AGREEMENT (this **"Agreement"**), is made by and between **Buyer**, and **Seller**. Each of the Seller and the Buyer are sometimes referred to herein, individually, as a **"Party"** and, collectively, as the **"Parties."**

WHEREAS, the Buyer and the Seller have entered into that certain Accounts Receivable Purchase Agreement, of even date herewith (the **"Purchase Agreement"**), pursuant to which the Seller has agreed to sell, assign, transfer, and deliver to the Buyer, and the Buyer has agreed to purchase, acquire, and accept from the Seller, all right, title, and interest of the Seller in and to the Purchased Accounts, free and clear of any Liens.

NOW, THEREFORE, in consideration of the covenants and representations set forth herein, and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the Parties, intending to be legally bound, agree as follows:

1.   <u>Defined Terms</u>.  Capitalized terms used but not otherwise defined in this Agreement shall have the meanings assigned to such terms in the Purchase Agreement.

2.   <u>Sale of Purchased Accounts; Assignment</u>.  The Seller hereby sells, assigns, transfers, and delivers to the Buyer, and the Buyer hereby purchases, acquires, and accepts from the Seller, all right, title, and interest of the Seller in and to the Purchased Accounts, free and clear of any Liens.

3.   <u>Further Assurances</u>.  Each of the Parties agrees, from time to time, at the request of the any other Party, to execute and deliver such other instruments of conveyance, power of attorney, sale, transfer, or assignment and take such other actions as such other Party may reasonably request in order to more effectively consummate the transactions contemplated by this Agreement.

4.   <u>Terms of the Purchase Agreement</u>.  This Agreement is intended to evidence the consummation of the transactions contemplated by the Purchase Agreement and is subject to the terms and conditions set forth in the Purchase Agreement.  The terms of the Purchase Agreement, including, but not limited to, the representations, warranties, covenants, agreements, and indemnities relating to the Purchased Accounts are incorporated herein by this reference.  The Parties acknowledge and agree that the representations, warranties, covenants, agreements, and indemnities contained in the Purchase Agreement shall not be superseded hereby but shall remain in full force and effect to the full extent provided therein.  In the event of any conflict or inconsistency between the terms of the Purchase Agreement and the terms hereof, the terms of the Purchase Agreement shall govern.

5.   <u>Counterparts</u>.  This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement.  A signed copy of this Agreement delivered by facsimile, electronic mail, or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

*[Remainder of page intentionally left blank.]*

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date first above written.

**BUYER: The Litigation Practice Group P.C.**

By: _Daniel S March_
       Name: Daniel S. March
       Title: Managing Shareholder

**SELLER:**

**Z.A.P. Marketing Corp**

By: _Mohamed Hegazi_
       Name: Mohamed Hegazi
       Title: CFO

Accounts Receivable Purchase Agreement

**Schedule 2.3**
**Wire Instructions**

<u>**$96,919.62**</u>

**Account Holder Name: Z.A.P. Marketing Corp**

**Address: 8845 Research Dr Suite 120 Irvine, CA 92618**

**Routing Number:**

**Account Number:**

# EXHIBIT 6

Richard A. Marshack
D. Edward Hays
David A. Wood
Laila Masud
Tinho Mang
Bradford N. Barnhardt
Sarah R. Hasselberger
Kevin M. Marshack

*Of Counsel*
Kristine A. Thagard
Matthew W. Grimshaw
Chad V. Haes



Sender: Kristine A. Thagard
kthagard@marshackhays.com
Reference No. 9999-001

22 January 2024

*VIA U.S. MAIL ONLY*

*CONFIDENTIAL SETTLEMENT COMMUNICATION*
*SUBJECT TO FEDERAL RULE OF EVIDENCE 408*

Outsource LLC
Attention: John Thatcher Lowell
711-A Campus Square West
El Segundo, CA 90245

> Re:    In re: The Litigation Practice Group, P.C.
>        U.S. Bankruptcy Court, Central District of California, Case No. 8:23-bk-
>        10571

Dear Sir/Madam:

This firm represents Richard A. Marshack, solely in his capacity as Chapter 11 Trustee ("Trustee") for the bankruptcy estate of The Litigation Practice Group, P.C. ("Debtor") in the above-referenced bankruptcy case. Pursuant to 11 U.S.C. § 1107 and his appointment as Trustee, the Trustee has the obligation to investigate and pursue claims, including preference actions.

After a review of the Debtor's books and records, the Trustee believes that he may have claims against you to avoid and recover certain preference payments. This letter is written in an attempt to settle such claims, and its contents may not be used for any other purpose.

Section 547 of the Bankruptcy Code permits a trustee or debtor-in-possession to avoid certain payments made to creditors within the 90-day period preceding the filing of a bankruptcy case. Our preliminary investigation has identified certain transfers from the Debtor(s) to you within the 90-day period prior to March 20, 2023, the date upon which the Debtor filed its bankruptcy case. These transfers are listed on the attached "Preference Transfer Schedule" showing the date and amount, according to the Debtor's

Outsource LLC
22 January 2024
Page 2


books and records, of each transfer or other payment. The payments referenced on the
"Preference Transfer Schedule" total $401,631.33 ("Preference Amount"). It appears
that these transfers are preferential transfers which can be avoided by the Trustee and
recovered from you pursuant to 11 U.S.C. §§ 547(b).  This means that the Trustee can
file suit in the bankruptcy court to recover these sums and object to payment of any
claims you have against the Debtor until the suit is resolved.

        Additionally, if you have filed a proof of claim against the Debtor, that claim
may be disallowed pursuant to Section 502(d) of the Bankruptcy Code for failure to
return an avoidable transfer. This means that if the preference claims against you are not
resolved, then you may not receive a distribution from the Debtor's bankruptcy estate.
The Trustee reserves the right to object to any proof of claim that you have filed or may
file in the debtors' bankruptcy cases.

Outsource LLC
22 January 2024
Page 3


s


Of course, we would be happy to discuss this matter with you or your counsel.


Sincerely,


KRISTINE A. THAGARD

Enclosure

Outsource LLC
22 January 2024
Page 4

BY: _____

    Name:_____

    Title: _____

    Date: _____

4863-1235-3438, v. 1

In re: The Litigation Practice Group PC
Disbursement Details by Payee
90 Days Pre-Petition (12/20/2022 - 03/20/2023)



| Bank Name | Account Name | Account Number | Statement Date | Transaction Date | Check Number | Debit/Charge | Memo |
|---|---|---|---|---|---|---|---|
| Wells Fargo | Maverick Management Group LLC | 0496 | 3/31/2023 | 3/17/2023 | | 6,934.93 | tNT Fed#08592 Bank ol America. N /Ftr/BnIOutseurce LLC Apex Sf# 0000960076825725 Trn#23031 7181096 Rlb# |
| Bank of America | Prime Logix LLC | 9201 | 3/31/2023 | 3/3/2023 | | 100,000.00 | WIRE TYPE:BOOK OUT DATE:230303 TIME:1 338 ET TRN:202303030041 7814 RELATED REF:428132250 BNF:OUTSOURCE LLC ID:: PMT DET:FEE TO M ARKETTER. |
| UnionBank | The Litigation Practice Group PC | 4858 | 2/28/2023 | 2/24/2023 | | 116,226.00 | WIRE TRANS TRN 0224015670 022423 UBOC UB289848N Sent To: BANK OF AMERICA NA. Beneficiary: 1/Outsource LLC |
| Bank of America | Litigation Practice Group PC | 6457 | 2/28/2023 | 2/8/2023 | | 75,537.00 | WIRE TYPEBOOK OUT DATEQ3O2O8 TIME1 344 ETTRNQ023020700466507 RELATED REF:424847826 BNF:OUTSOURCE LLC ID          PMT DET:FILE PUR CHASE |
| Chase | The Litigation Practice Group PC | 3133 | 1/31/2023 | 1/27/2023 | | 46,071.00 | Fedwire Debit Via Bk Amer Nyc/026009593 NC Cuteource LLC US Imad: 012761 QgcOl C00821 5 Tm: 7379200027,Jo |
| Chase | The Litigation Practice Group PC | 3133 | 1/31/2023 | 1/24/2023 | | 2,372.01 | Fedwire Debit Via Bk Amer Nyc/026009593 NC Outeource LLC US Imad: 012461 0gc08C0321 41 Tm: 5670300024Jo |
| Chase | The Litigation Practice Group PC | 3133 | 1/31/2023 | 1/10/2023 | | 2,722.14 | Fedwire Debit Vie Bk Amer Nyc/026009593 NC Cutsource LLC US Imed: 01 10B1Qgo02C005243 Tm: 499250001 OJo |
| Chase | The Litigation Practice Group PC | 3133 | 1/31/2023 | 1/6/2023 | | 2,722.14 | Fedwire Debit Via: Bk Amer Nyc/026009593 NC: Duteource LLC US Imad: 010681 Dgc06C029378 Tm: 4722000006Jo |
| Chase | The Litigation Practice Group PC | 3133 | 1/31/2023 | 1/3/2023 | | 20,589.00 | Fedwire Debit Vie. Bk Amer Nyc/026009593 NC: Dutsource LLC US Ret: File Purchase lamed O1O3BICgcOSCO20I 12 Tm 6125300003Jc |
| Chase | The Litigation Practice Group PC | 3133 | 1/31/2023 | 1/3/2023 | | 25,076.00 | Fedwire Debit Via. Bk Amer Nyc/026009593 NC: Outsource LLC US Ret: File Purchase Imad: 0103B1Qgc05C02O123 Tm: 6123300003J0 |
| Chase | The Litigation Practice Group PC | 3133 | 12/31/2022 | 12/30/2022 | | 3,096.55 | Fedwire Debit Via Bk Amer Nyc/026009593 NC Outsource LLC US Imad: 123DB 1 Gge03CD345D9 Tm: 5586800364Jo |
| Chase | The Litigation Practice Group PC | 3133 | 12/31/2022 | 12/27/2022 | | 284.56 | Fedwire Debit Via: Bk Amer Nyc/026009593 NC: Outsouroe LLC US Imad: 1227B1Qgc01C016239 Tm: 4800200361Jo |
| | | | | | | 401,631.33 | |

Exhibit 6, Page 78

# EXHIBIT 7(a)

Exhibit 7(a), Page 79

Richard A. Marshack
D. Edward Hays
David A. Wood
Laila Masud
Tinho Mang
Bradford N. Barnhardt
Sarah R. Hasselberger
Alina Mamlyuk

*Of Counsel*
Kristine A. Thagard
Matthew W. Grimshaw
Chad V. Haes



Sender: Chad V. Haes
chaes@marshackhays.com
Reference No. 1015-157

September 27, 2024

*VIA EMAIL AND U.S. MAIL*
*accounting@litigationpracticeintake.com*
*zeid@litigationpracticeintake.com*

Z.A.P. Marketing Corporation
Attn: General Counsel, CEO, or Officer,
Managing or General Agent, or any Other
Agent Authorized to Receive Service of
Process
8845 Research Dr, Suite 120
Irvine, CA 92618

Re:    *In re The Litigation Practice Group P.C.*
       U.S. Bankruptcy Court, Central District of California,
       Case No. 8:23-bk-10571-SC

Dear Sir/Madam:

This firm represents Richard A. Marshack, Chapter 11 Trustee for the bankruptcy
estate of The Litigation Practice Group P.C. and liquidating trustee of the LPG
Liquidation Trust (collectively, "Trustee") in the above-referenced bankruptcy case.
Pursuant to 11 U.S.C. § 1107 and his appointment as Trustee, the Trustee has the
obligation to investigate and pursue claims, including fraudulent transfers, preferential
transfers, and unauthorized post-petition transfers.

After a review of the books and records of The Litigation Practice Group P.C.
("Debtor"), the Trustee believes that he may have claims against Z.A.P. Marketing
Corporation ("Z.A.P.") to avoid and recover post-petition transfers, preferential
transfers, and fraudulent transfers. This letter is written in an attempt to investigate such
claims.

**MARSHACK HAYS WOOD** LLP | www.marshackhays.com
870 Roosevelt | Irvine, CA 92620 | 949.333.7777

Exhibit 7(a), Page 80

September 27, 2024
Page 2


Section 547 of the Bankruptcy Code permits a trustee or debtor-in-possession to avoid certain payments made to creditors within the 90-day period preceding the filing of a bankruptcy case. Sections 544 and 548 of the Bankruptcy Code permit a trustee or debtor-in-possession to avoid certain payments made to creditors within the two-year period preceding the filing of a bankruptcy case. Sections 3439.04 and 3439.05 of the California Civil Code also permit a trustee to avoid certain payments made to creditors within the applicable reach back period, generally, four years. Section 549 of the Bankruptcy Code permits a trustee or debtor-in-possession to avoid certain transfers made after the filing of a bankruptcy case known as post-petition transfers. Our preliminary investigation has identified transfers from the Debtor to Z.A.P. within the reach back period for both preferential transfers and fraudulent transfers, as well as post-petition.

It appears that: (a) 8 of these transfers, totaling $34,692.34, may constitute preferential transfers made within the 90-day period prior to the petition date, which can be avoided and recovered by the Trustee pursuant to 11 U.S.C. § 547(b); (b) 13 of these transfers, totaling $44,806.91, may constitute fraudulent transfers made within the four-year period prior to the petition date, which can be avoided and recovered by the Trustee pursuant to 11 U.S.C. §§ 544 and 548 and Cal. Civ. Code. §§ 3439.04 and 3439.05; and (c) 7 of these transfers, totaling $22,908.18, may constitute improper post-petition transfers, which can be avoided and recovered by the Trustee pursuant to 11 U.S.C. § 549(a). In sum, and depending on your response to this letter, the Trustee may file suit in the bankruptcy court to avoid and recover these transfers.

As to the preferential transfers, the Trustee has been unable to determine if any viable defenses exist that would reduce or eliminate Z.A.P.'s liability for such claims. If Z.A.P. engaged with the Debtor in the "ordinary course of business," or if you believe that Z.A.P. provided "new value" to the Debtor subsequent to each transfer, as those terms are defined in 11 U.S.C. § 547(a)(2) and (c)(2), then please provide information for the relevant period to substantiate the applicable defenses.

As to the fraudulent transfers and post-petition transfers, the Trustee has been unable to determine why such transfers were made to Z.A.P. and what was provided to the Debtor in exchange for such transfers. Please respond to this letter, attaching any evidence you have related to these transfers, including, but not limited to, contracts, agreements, subscriptions, invoices, and any other documentation showing the date, terms, and amounts for the transfers received and any documents evidencing shipment dates as to goods and services provided by Z.A.P. to the Debtor. Documents showing the course of dealing between Z.A.P. and the Debtor, the date of receipt of the Debtor's

Exhibit 7(a), Page 81

September 27, 2024
Page 3


payment and the amount, deposit date, and any proof of deposit for any or all of the transfers will be helpful in determining the permissibility of the transfers and what, if any, value the Debtor received in return for payments made to Z.A.P.

Please provide the requested documents and information to us on or before October 18, 2024, so that we can assess whether any claims or defenses exist. If you have any questions, we are happy to discuss this matter with you or your counsel.

Sincerely,

CHAD V. HAES

Exhibit 7(a), Page 82

# EXHIBIT 7(b)

Exhibit 7(b), Page 83

Richard A. Marshack
D. Edward Hays
David A. Wood
Laila Masud
Aaron E. de Leest
Tinho Mang
Bradford N. Barnhardt
Sarah R. Hasselberger
Devan N. de los Reyes

*Of Counsel*
Kristine A. Thagard
Matthew W. Grimshaw
Chad V. Haes
Alina Mamlyuk



Sender: Chad V. Haes
chaes@marshackhays.com
Reference No. 1015-157

25 October 2024

*VIA EMAIL AND U.S. MAIL*
*accounting@litigationpracticeintake.com*
*zeid@litigationpracticeintake.com*

Z.A.P. Marketing Corporation
8845 Research Dr, Suite 120
Irvine, CA 92618
Attn: General Counsel, CEO, or Officer,
Managing or General Agent, or any Other
Agent Authorized to Receive Service of
Process

      Re:    *In re The Litigation Practice Group P.C.*
           U.S. Bankruptcy Court, Central District of California,
           Case No. 8:23-bk-10571-SC

Dear Sir/Madam:

      This correspondence is a follow-up to the first letter transmitted to you on September 27, 2024, and constitutes a second and final demand to provide any and all documents and information evidencing the basis for, accounting of, and any defenses to my client's claims to avoid and recover, the transfers to Z.A.P. Marketing Corporation ("Z.A.P.") from The Litigation Practice Group P.C. ("Debtor").

      This firm represents Richard A. Marshack, Chapter 11 Trustee for the bankruptcy estate of The Litigation Practice Group P.C. and liquidating trustee of the LPG Liquidation Trust (collectively, "Trustee") in the above-referenced bankruptcy case. Pursuant to 11 U.S.C. § 1107 and his appointment as Trustee, the Trustee has the obligation to investigate and pursue claims, including fraudulent transfers, preferential transfers, and unauthorized post-petition transfers. Under the Bankruptcy Code, the

25 October 2024
Page 2

Trustee has the power to file lawsuits seeking to avoid, recover, and preserve such transfers for the benefit of the Estate. *See* 11 U.S.C. §§ 544 *et seq.*

As explained in the Trustee's initial correspondence, a review of the Debtor's books and records confirms that Z.A.P. received: (a) 8 potential preferential transfers totaling $34,692.34, which can be avoided and recovered by the Trustee pursuant to 11 U.S.C. § 547(b); (b) 13 potential fraudulent transfers totaling $44,806.91, which can be avoided and recovered by the Trustee pursuant to 11 U.S.C. §§ 544 and 548 and Cal. Civ. Code. §§ 3439.04 and 3439.05; and (c) 7 unauthorized post-petition transfers totaling $22,908.18, which can be avoided and recovered by the Trustee pursuant to 11 U.S.C. § 549(a).

The Trustee has been unable to determine why such transfers were made to Z.A.P., what was provided to the Debtor in exchange for such transfers, and whether defenses exist to the Trustee's claims to avoid and recover the transfers. Please respond to this letter, attaching any evidence you have related to these transfers, including contracts, agreements, subscriptions, invoices, and any other documentation showing the date, terms, and amounts for the transfers received and any documents evidencing shipment dates as to goods and services provided by Z.A.P. to the Debtor. Documents showing the course of dealing between Z.A.P. and the Debtor, the date of receipt of the Debtor's payment and the amount, deposit date, and any proof of deposit for any or all of the transfers will be helpful in determining the permissibility of the transfers and what, if any, value the Debtor received in return for payments made to Z.A.P.

If you would like to discuss this matter, please feel free to contact me by telephone (949) 333-7777 or e-mail at chaes@marshackhays.com.

Sincerely,

CHAD V. HAES

Exhibit 7(b), Page 85

# EXHIBIT 7(c)

Exhibit 7(c), Page 86

Richard A. Marshack
D. Edward Hays
David A. Wood
Laila Masud
Aaron E. de Leest
Tinho Mang
Bradford N. Barnhardt
Sarah R. Hasselberger
Devan N. de los Reyes

*Of Counsel*
Kristine A. Thagard
Matthew W. Grimshaw
Chad V. Haes
Alina Mamlyuk



Sender: Chad V. Haes
chaes@marshackhays.com
Reference No. 1015-157

21 February 2025

*VIA EMAIL AND U.S. MAIL*
*accounting@litigationpracticeintake.com*
*zeid@litigationpracticeintake.com*

Z.A.P. Marketing Corporation
Mohamed Hegazi, CEO
Attn: General Counsel, CEO, or Officer,
Managing or General Agent, or any Other
Agent Authorized to Receive Service
of Process
8845 Research Dr, Suite 120
Irvine, CA 92618

Z.A.P. Marketing Corporation
Mohamed Hegazi, CEO
Attn: General Counsel, CEO, or Officer,
Managing or General Agent, or any Other
Agent Authorized to Receive Service
of Process
9920 Research Dr.
Irvine CA 92618

Re:    *In re The Litigation Practice Group P.C.*
       U.S. Bankruptcy Court, Central District of California,
       Case No. 8:23-bk-10571-SC

Dear Sir/Madam:

This correspondence is a *second* follow-up to the first letter transmitted to you on October 18, 2024, and constitutes a *third and final* demand to provide any and all documents and information evidencing the basis for, accounting of, and any defenses to my client's claims to avoid and recover, the transfers to Z.A.P. Marketing Corporation from The Litigation Practice Group P.C. ("Debtor").

As you know, my client, Richard A. Marshack, Chapter 11 Trustee for the bankruptcy estate of The Litigation Practice Group P.C. and liquidating trustee of the LPG Liquidation Trust (collectively, "Trustee") has the obligation to investigate and pursue claims, including fraudulent transfers, preferential transfers, and unauthorized post-petition transfers. Under the Bankruptcy Code, the Trustee has the power to file

21 February 2025
Page 2

lawsuits seeking to avoid, recover, and preserve such transfers for the benefit of the
Estate. *See* 11 U.S.C. §§ 544 *et seq.*

As explained in the Trustee's first and second letters to you, a review of the
Debtor's books and records confirms that Z.A.P. Marketing Corporation received: (a) 7
potential preferential transfers totaling $32,981.68, which can be avoided and recovered
by the Trustee pursuant to 11 U.S.C. § 547(b); (b) 12 potential fraudulent transfers
totaling $43,096.25, which can be avoided and recovered by the Trustee pursuant to 11
U.S.C. §§ 544 and 548 and Cal. Civ. Code. §§ 3439.04 and 3439.05; and (c) 7
unauthorized post-petition transfers totaling $22,908.18, which can be avoided and
recovered by the Trustee pursuant to 11 U.S.C. § 549(a).

The Trustee has been unable to determine why such transfers were made to
Z.A.P. Marketing Corporation, what was provided to the Debtor in exchange for such
transfers, and whether defenses exist to the Trustee's claims to avoid and recover the
transfers. Please respond to this letter, attaching any evidence you have related to these
transfers, including contracts, agreements, subscriptions, invoices, and any other
documentation showing the date, terms, and amounts for the transfers received and any
documents evidencing shipment dates as to goods and services provided by Z.A.P.
Marketing Corporation to the Debtor.

Exhibit 7(c), Page 88

21 February 2025
Page 3


      If you would like to discuss this matter, please feel free to contact me by telephone (949) 333-7777 or e-mail at chaes@marshackhays.com.

Sincerely,

CHAD V. HAES

Exhibit 7(c), Page 89

# EXHIBIT 8(a)

Exhibit 8(a), Page 90

In re: The Litigation Practice Group PC
Disbursement Details by Payee
4 Years Pre-Petition (03/20/2019 - 03/20/2023)



| Bank Name | Account Name | Account Number | Statement Date | Transaction Date | Check Number | Debit/Charge | Memo |
|---|---|---|---|---|---|---|---|
| Chase | The Litigation Practice Group PC | 3133 | 11/30/2022 | 11/5/2022 | | 46,548.00 | Fedwire Debit Via: Bk Amer Nyc1026009593 NC: Cutsource LLC US Ret: File Purchase Imed 1 108B1Ogc07C029732 Tm 4292600312Jo |
| Chase | The Litigation Practice Group PC | 3133 | 11/30/2022 | 11/8/2022 | | 3,573.21 | Pedwire Debit Vie: Bk Amer Nyc/026009593 NC: Cutsource LLC US Imed: I I08B1Ogc07C029733 Tm: 4291 80031 2Jo |
| Chase | The Litigation Practice Group PC | 3133 | 11/30/2022 | 11/10/2022 | | 3,638.58 | Fedwire Debit Via: Bk Amer Nyc/026009593 NC: Cutsource LLC US Imad: ii i0Bi0gc08C048475 Tm: 805390031 4Jo |
| Chase | The Litigation Practice Group PC | 3158 | 11/30/2022 | 11/15/2022 | | 59,013.00 | Fedwire Debit Via: Bk Amer Nyc/026009593 NC: Outaource [[C US Ret: Pile Purchae Imad 11 l5BIOgcOl0000S47 Tm 0547800318Vb |
| Chase | The Litigation Practice Group PC | 3133 | 11/30/2022 | 11/16/2022 | | 50,503.00 | Fedwire Debit Via Bk Amer Nyc/026009593 NC Cutsource LLC US Ret File Purchase Imad 1116B1Ogc1OO1COO6S6D ire 615180032DJo |
| Chase | The Litigation Practice Group PC | 3133 | 11/30/2022 | 11/18/2022 | | 280.59 | Fedwire Debit Via: Bk Amer Nyc/026009593 NC: Cutsource LLC US Imad: ii 1SB1OgcOSCO2S243 Tm: 5038800322Jo |
| Chase | The Litigation Practice Group PC | 3133 | 11/30/2022 | 11/25/2022 | | 1,786.58 | Fedwire Debit Via Bk Amer Nyc/026009593 NC Outsource LLC US Imad: 1 125B1Ogc05C009830 Tm: 4222700326Jo |
| Chase | The Litigation Practice Group PC | 3133 | 12/31/2022 | 12/1/2022 | | 30,580.00 | Fedwire Debit Via: Bk Amer Nyc/026009593 NC: Cutsource LLC US Ret: File Purchase I mad. 120181 GgcO7COI 2147 Tm. 4392400335Jo |
| Chase | The Litigation Practice Group PC | 3133 | 12/31/2022 | 12/2/2022 | | 30,268.00 | Fedwire Debit Via: Bk Amer Nyc/026009593 NC: Cutsource LLC US Ret: File Purchase Imad 1202B1Ogc08O338475 Tm 4802900336Jo |
| Chase | The Litigation Practice Group PC | 3133 | 12/31/2022 | 12/5/2022 | | 4,205.55 | Fedwire Debit Via: Bk Amer Nyc/026009593 NC: Cutsource LLC US Imad: 1 205B1 0gc02C006594 Tm: 5586600339Jo |
| Chase | The Litigation Practice Group PC | 3133 | 12/31/2022 | 12/9/2022 | | 1,394.06 | Fedwire Debit Via: Bk Amer Nyc/026009593 NC: Cutsource LLC US Imad: I 209B1 OgcOBC034B4I Tm: 65B0000343Jo |
| Chase | The Litigation Practice Group PC | 3133 | 12/31/2022 | 12/9/2022 | | 41,495.00 | Fedwire Debit Via: Bk Amer Nyc/026009593 NC: Outsource LLC US Ret: File Purchase Imad 1209B1Ogc08C026138 Tm 5085700343Jo |
| Chase | The Litigation Practice Group PC | 3133 | 12/31/2022 | 12/19/2022 | | 146.33 | Fedwire Debit Via Bk Amer Nyc/026009593 NC Outsource LLC US Imad: 121961 OgcO7COi 5935 Tm: 8056500353Jo |
| Chase | The Litigation Practice Group PC | 3133 | 12/31/2022 | 12/27/2022 | | 284.56 | Fedwire Debit Via: Bk Amer Nyc/026009593 NC: Outsource LLC US Imad: 1227B1Ogc0IC016239 Tm: 4800200361Jo |
| Chase | The Litigation Practice Group PC | 3133 | 12/31/2022 | 12/30/2022 | | 3,096.55 | Fedwire Debit Via Bk Amer Nyc/026009593 NC: Cutsource LLC US Ret: File Purchase Iamed Gge03CD345D9 Tm: 5586800364Jo |
| Chase | The Litigation Practice Group PC | 3133 | 1/31/2023 | 1/3/2023 | | 20,589.00 | Fedwire Debit Via: Bk Amer Nyc/026009593 NC: Cutsource LLC US Ret: File Purchase lamed O1O3BICgcOSCO20I 12 Tm 6125300003Jc |
| Chase | The Litigation Practice Group PC | 3133 | 1/31/2023 | 1/3/2023 | | 25,076.00 | Fedwire Debit Via: Bk Amer Nyc/026009593 NC: Outeource LLC US Imad: 010681 0103B1Qgc05C02O123 Tm: 6123300003J0 |
| Chase | The Litigation Practice Group PC | 3133 | 1/31/2023 | 1/6/2023 | | 2,722.14 | Fedwire Debit Via: Bk Amer Nyc/026009593 NC: Cutsource LLC US Imad: DgcO6C029378 Tm: 4722000006Jo |
| Chase | The Litigation Practice Group PC | 3133 | 1/31/2023 | 1/10/2023 | | 2,722.14 | Fedwire Debit Via Bk Amer Nyc/026009593 NC Cutsource LLC US Imed: 01 10B1Qgc02C005243 Tm: 499250001 OJo |
| Bank of America | Litigation Practice Group PC | 6538 | 1/31/2023 | 1/13/2023 | | 1,570.35 | WIRE TYPE:BOOK OUT DATE23O1 13 TIM1 652 ET TRN:202301 1300499933 RELATED REF:421493010 BNF:OUTSOURCE LLC ID:325157409420 PMT DETO1.13.23 WEEKLY DISBURSEMENT |
| Chase | The Litigation Practice Group PC | 3133 | 1/31/2023 | 1/24/2023 | | 2,372.01 | Fedwire Debit Via Bk Amer Nyc/026009593 NC Outeource LLC US Imad: 012461 0gc08C0321 41 Tm: 5670300024Jo |
| Chase | The Litigation Practice Group PC | 3133 | 1/31/2023 | 1/27/2023 | | 46,071.00 | Fedwire Debit Via Bk Amer Nyc/026009593 NC Cuteource LLC US Imad: 012761 QgcOl C00821 5 Tm: 7379200027,Jo |
| Chase | The Litigation Practice Group PC | 3133 | 2/28/2023 | 2/7/2023 | | 856.26 | Fedwire Debit Via: Bk Amer Nyc/026009593 NC: Outsource LLC US Imad: 0207B1Qgc07C032019 Tm: 6667100038Jo |
| Bank of America | Litigation Practice Group PC | 6457 | 2/28/2023 | 2/8/2023 | | 75,537.00 | WIRE TYPEBOOK OUT DATEQ3O2O8 TIME1 344 ETTRNQ023020700446507 RELATED REF:424847826 BNF:OUTSOURCE LLC ID:        PMT DET:FILE PUR CHASE |
| UnionBank | The Litigation Practice Group PC | 4858 | 2/28/2023 | 2/24/2023 | | 116,226.00 | WIRE TRANS TRN 0224015670 022423 UBOC UB289848N Sent To: BANK OF AMERICA NA. Beneficiary: 1/Outsource LLC |
| UnionBank | The Litigation Practice Group PC | 4858 | 3/31/2023 | 3/2/2023 | | 30,000.00 | WIRE TRANS TRN 0302015348 030223 UBOC UB262065N Sent To: BANK OF AMERICA N.A. Beneficiary: 1/Outsource LLC |

DRAFT FORM - SUBJECT TO CHANGE

Payor Accounts: BAT Inc., Coast Processing LLC,
EZ Debt Relief, Maverick Management Group, Prime Logix, The
Litigation Practice Group, Vulcan Consulting Group LLC

Exhibit 8(a), Page 91

In re: The Litigation Practice Group PC
Disbursement Details by Payee
4 Years Pre-Petition (03/20/2019 - 03/20/2023)



| Bank Name | Account Name | Account Number | Statement Date | Transaction Date | Check Number | Debit/Charge | Memo |
|---|---|---|---|---|---|---|---|
| Bank of America | Prime Logix LLC | 9201 | 3/31/2023 | 3/3/2023 | | 100,000.00 | WIRE TYPE:BOOK OUT DATE:230303 TIME:1 338 ET TRN:202303030041 7814 RELATED REF:428132250 BNF:OUTSOURCE LLC ID:    PMT DET:FEE TO M ARKETTER. |
| Chase | BAT Inc. | 0830 | 3/31/2023 | 3/9/2023 | | 100,000.00 | 03/09 Domestic Wire Transfer Via: Bk Amer Nyc/026009593 A/C: Outsource LLC Imad: 0309B1Qgc08C016148 Trn: 3451873067Es |
| Wells Fargo | Maverick Management Group LLC | 0496 | 3/31/2023 | 3/17/2023 | | 6,934.93 | tNT Fed#08592 Bank ol America. N /Ftr/BnIOutseurce LLC Apex Sf# 0000960076825725 Trn#23031 7181096 Rlb# |
| | | | | | | 807,489.84 | |

DRAFT FORM - SUBJECT TO CHANGE

Payor Accounts: BAT Inc., Coast Processing LLC,
EZ Debt Relief, Maverick Management Group, Prime Logix, The
Litigation Practice Group, Vulcan Consulting Group LLC

Exhibit 8(a), Page 92

# EXHIBIT 8(b)

Exhibit 8(b), Page 93

In re: The Litigation Practice Group PC
Disbursement Details by Payee
90 Days Pre-Petition (12/20/2022 - 03/20/2023)



Outsource LLC

| Bank Name | Account Name | Account Number | Statement Date | Transaction Date | Check Number | Debit/Charge | Memo |
|---|---|---|---|---|---|---|---|
| Chase | The Litigation Practice Group PC | 3133 | 12/31/2022 | 12/27/2022 | | 284.56 | Fedwire Debit Via: Bk Amer Nyc/026009593 NC: Outsource US Imad: 1227B1Qgc01C016239 Tm: 4800200361Jo |
| Chase | The Litigation Practice Group PC | 3133 | 12/31/2022 | 12/30/2022 | | 3,096.55 | Fedwire Debit Via Bk Amer Nyc/026009593 NC Outsource LLC US Imad: 123DB 1 Gge03CD345D9 Tm: 5586800364Jo |
| Chase | The Litigation Practice Group PC | 3133 | 1/31/2023 | 1/3/2023 | | 20,589.00 | Fedwire Debit Vie. Bk Amer Nyc/026009593 NC: Outsource LLC US Ret: File Purchase Iamed O1O3BICgcOSCO20I 12 Tm 6125300003Jc |
| Chase | The Litigation Practice Group PC | 3133 | 1/31/2023 | 1/3/2023 | | 25,076.00 | Fedwire Debit Via. Bk Amer Nyc/026009593 NC: Outsource LLC US Ret: File Purchase Imad: 0103B1Qgc05C02O123 Tm: 6123300003J0 |
| Chase | The Litigation Practice Group PC | 3133 | 1/31/2023 | 1/6/2023 | | 2,722.14 | Fedwire Debit Via Bk Amer Nyc/026009593 NC: Outsource LLC US Imad: 010681 Dgc06C029378 Tm: 4722000006Jo |
| Chase | The Litigation Practice Group PC | 3133 | 1/31/2023 | 1/10/2023 | | 2,722.14 | Fedwire Debit Vie Bk Amer Nyc/026009593 NC Outsource LLC US Imed: 01 10B1Qgo02C005243 Tm: 499250001 OJo |
| Bank of America | Litigation Practice Group PC | 6538 | 1/31/2023 | 1/13/2023 | | 1,570.35 | WIRE TYPE:BOOK OUT DATE23O1 13 TIME1 652 ET TRN:202301 1300499933 RELATED REF:421493010 BNF:OUTSOURCE LLC ID:                PMT DETO1.13.23 WEEKLY DISBURSEMENT |
| Chase | The Litigation Practice Group PC | 3133 | 1/31/2023 | 1/24/2023 | | 2,372.01 | Fedwire Debit Via Bk Amer Nyc/026009593 NC Outsource LLC US Imad: 012461 Qgc08C0321 41 Tm: 5670300024Jo |
| Chase | The Litigation Practice Group PC | 3133 | 1/31/2023 | 1/27/2023 | | 46,071.00 | Fedwire Debit Via Bk Amer Nyc/026009593 NC: Outsource LLC US Imad: 012761 QgcOI C00821 5 Tm: 7379200027,Jo |
| Chase | The Litigation Practice Group PC | 3133 | 2/28/2023 | 2/7/2023 | | 856.26 | Fedwire Debit Via Bk Amer Nyc/026009593 NC: Outsource LLC US Imad: 0207B1Qgc07C032019 Tm: 6667100038Jo |
| Bank of America | Litigation Practice Group PC | 6457 | 2/28/2023 | 2/8/2023 | | 75,537.00 | WIRE TYPEBOOK OUT DATE3O2O8 TIME1 344 ETTRNNQ23020700466507 RELATED REF:424847826 BNF:OUTSOURCE LLC ID:                PMT DET:FILE PUR CHASE |
| UnionBank | The Litigation Practice Group PC | 4858 | 2/28/2023 | 2/24/2023 | | 116,226.00 | WIRE TRANS TRN 0224015670 022423 UBOC UB289848N Sent To: BANK OF AMERICA NA. Beneficiary: 1/Outsource LLC |
| UnionBank | The Litigation Practice Group PC | 4858 | 3/31/2023 | 3/2/2023 | | 30,000.00 | WIRE TRANS TRN 0302015348 030223 UBOC UB262065N Sent To: BANK OF AMERICA N.A. Beneficiary: 1/Outsource LLC |
| Bank of America | Prime Logix LLC | 9201 | 3/31/2023 | 3/3/2023 | | 100,000.00 | WIRE TYPE:BOOK OUT DATE:230303 TIME:1 338 ET TRN:202303030041 7814 RELATED REF:428132250 BNF:OUTSOURCE LLC ID:                PMT DET:FEE TO M ARKETTER. |
| Chase | BAT Inc. | 0830 | 3/31/2023 | 3/9/2023 | | 100,000.00 | 03/09 Domestic Wire Transfer Via: Bk Amer Nyc/026009593 A/C: Outsource LLC Imad: 0309B1Qgc08C016148 Trn: 3451873067Es |
| Wells Fargo | Maverick Management Group LLC | 0496 | 3/31/2023 | 3/17/2023 | | 6,934.93 | tNT Fed#08592 Bank ol America. N /Ftr/BnIOutsource LLC Apex Sf# 0000960076825725 Trn#23031 7181096 Rlb# |
| | | | | | | 534,057.94 | |

DRAFT FORM - SUBJECT TO CHANGE

Payor Accounts: BAT Inc., Coast Processing LLC,
EZ Debt Relief, Maverick Management Group, Prime Logix, The
Litigation Practice Group, Vulcan Consulting Group LLC

Exhibit 8(b), Page 94

# EXHIBIT 8(c)

Exhibit 8(c), Page 95

In re: The Litigation Practice Group PC
Summary of Disbursements
Post-Petition Activity (3/20/2023 - Present)



| Bank Name | Account Name | Account Number | Statement Date | Transaction Date | Check Number | Debit/Charge | Memo |
|---|---|---|---|---|---|---|---|
| Bank of America | Prime Logix LLC | 9201 | 3/31/2023 | 3/28/2023 | | 80,000.00 | WIRE TYPE:BOOK OUT DATE:230328 TIME:1 656 ET TRN:2023032800047591 0 RELATED REF:431 598300 BNF:OUTSOURCE LLC ID: |
| Bank of America | Prime Logix LLC | 9201 | 4/30/2023 | 4/6/2023 | | 30,000.00 | WIRE TYPE:BOOK OUT DATE230406 TIME:1 649 ET TRN:2023040600480074 RELATED REF:433099842 BNF:OUTSOURCE LLC ID: |
| Bank of America | Prime Logix LLC | 9201 | 4/30/2023 | 4/7/2023 | | 6,709.78 | Online Banking Transfer Conf# cfoougboy; Outsource LLC |
| Bank of America | Prime Logix LLC | 9201 | 4/30/2023 | 4/10/2023 | | 10,000.00 | WIRE TYPE:BOOK OUT DATE23041 0 TIME:1 559 ET TRN:2023041 000362550 RELATED REF:433489394 BNF:OUTSOURCE LLC ID: |
| Bank of America | Prime Logix LLC | 9201 | 4/30/2023 | 4/12/2023 | | 15,000.00 | WIRE TYPEBOOK OUT DATE:23041 2 TIME:1 657 ET TRNQO23O41 200478327 RELATED REF:433823256 BNF:OUTSOURCE LLC ID: |
| Bank of America | Prime Logix LLC | 9201 | 4/30/2023 | 4/14/2023 | | 5,285.71 | Online Banking Transfer Conf# ed43hdn9m; OutsoUrce LLC |
| Bank of America | Prime Logix LLC | 9201 | 4/30/2023 | 4/27/2023 | | 5,308.56 | Online Banking Transfer Conf# bgnmftzbl: Outsource LLC |
| Bank of America | Prime Logix LLC | 9201 | 5/31/2023 | 5/11/2023 | | 2,484.05 | Online Banking Transfer Conf# epgllwhut Outsource LLC |
| Bank of America | Prime Logix LLC | 9201 | 5/31/2023 | 5/12/2023 | | 30,000.00 | WIRE TYPE:BOOK OUT DATEQ3O51 2 TIME:1435 ET TRN:2023051 200422687 RELATED REF:4381 12628 BNF:OUTSOURCE LLC ID: |
| | | | | | | 184,788.10 | |

DRAFT FORM - SUBJECT TO CHANGE

Payor Accounts: BAT Inc., Coast Processing LLC,
EZ Debt Relief, Prime Logix, The Litigation
Practice Group, Vulcan Consulting Group LLC

Exhibit 8(c), Page 96

# EXHIBIT 9(a)

Exhibit 9(a), Page 97

In re: The Litigation Practice Group PC
Disbursement Details by Payee
4 Years Pre-Petition (03/20/2019 - 03/20/2023)

Z.A.P. Marketing Corporation



| Bank Name | Account Name | Account Number | Statement Date | Transaction Date | Check Number | Debit/Charge | Memo |
|---|---|---|---|---|---|---|---|
| Chase | The Litigation Practice Group PC | 3133 | 12/31/2022 | 12/2/2022 | | 39.02 | Fedwire Debit Vie: F121000358/121000358 NC: ZAP. Marketing Corp US Ret: 11.18.22 Weekly Diabureament/Time/1 3:54 Imed: 120281 Qgc08C038465 Tm: 4799300336Jo |
| Chase | The Litigation Practice Group PC | 3133 | 12/31/2022 | 12/2/2022 | | 1,045.28 | Fedwire Debit Vie F121000358/121000358 NC Z.A P. Marketing Corp US Ret 11 2522 Weekly Dieborsement/Time/1a54 Imed 120251 Cgc08C038456 Tm 4799400336Jo |
| Chase | The Litigation Practice Group PC | 3133 | 12/31/2022 | 12/2/2022 | | 3,501.78 | Fedwire Debit Via F121000358/121000358 NC Z.A.P. Marketing Corp us Ret Weekly Dieboreement/Time/1 6 32 Imed 1 202B1 QgcD7CDl 7404 Tm: 6842700336Jo |
| Chase | The Litigation Practice Group PC | 3133 | 12/31/2022 | 12/9/2022 | | 1,982.49 | Fedwire Debit Via F121000358/121000358 NC: Z.A.P. Marketing Corp US Ret: Weekly Disbursement/Time/17 00 Imad 1209B1Qgc08C034833Trn: 6585600343Jo |
| Chase | The Litigation Practice Group PC | 3133 | 12/31/2022 | 12/19/2022 | | 3,546.00 | Fedwire Debit Via F121000358/i 21000358 NC Z.A P. Marketing Corp us Ret Weekly Disbursement/Time/i 7:25 Imad: 121 9Bi OgcO600I 7816 Tm: 80441 00353Jo |
| Chase | The Litigation Practice Group PC | 3133 | 12/31/2022 | 12/27/2022 | | 4,001.94 | Fedwire Debit Via F121000358/121000358 NC Z.A.P. Marketing Corp us Ret Weekly Disbursement/Time/16 32 med 1227B1Qgc02C008181 Tm: 6981 100381Jo |
| Chase | The Litigation Practice Group PC | 3133 | 12/31/2022 | 12/30/2022 | | 3,173.68 | Fedwire Debit Via F121DDD358/121DDD358 NC Z.A.P. Marketing Corp US Ret Weekly Disbursement/Time/1 4.39 Imad. 1 23DB1 QgcDSCD4D426 Tm: 5576BDD364J0 |
| Chase | The Litigation Practice Group PC | 3133 | 1/31/2023 | 1/6/2023 | | 3,488.76 | Fedwire Debit Via F121000358/121000358 NC: Z.A.P. Marketing Corp US Ret: Weekly Disbursement/Time/1 4:47 Imad: 01 06B1 Qgc06C029345 Tm: 471 700000SJo |
| Chase | The Litigation Practice Group PC | 3133 | 1/31/2023 | 1/10/2023 | | 3,488.76 | Fedwire Debit Via: F121000358/i21000358 NC: ZAP. Marketing Corp US Ret: Weekly Disbursement/Time/14:53 mmcd: 01 1OBlQgcO3COOS358 Tm: 499220001 0J0 |
| Bank of America | Litigation Practice Group PC | 6538 | 1/31/2023 | 1/17/2023 | | 4,077.78 | WIRE TYPE:BOOK OUT DATE23O1 17 TIME:0430 ET TRN:202301 1300511925 RELATED REF:421 504548 BNF:Z.A.P. MARKETING CORP ID3251 75603295 PMT DET: 01 .1 3.23 WEEKLY DISBURSEMENT |
| Chase | The Litigation Practice Group PC | 3133 | 1/31/2023 | 1/24/2023 | | 7,499.27 | Fedwire Debit Via F121000358/121000358 NC Z.A P. Markafing Corp US Rat Weekly Disbursements/Time/1 I imad: 012461 Cgc06C032l 47 Ire: 56711 00024Jo |
| Chase | The Litigation Practice Group PC | 3133 | 2/28/2023 | 2/7/2023 | | 7,251.49 | Fedwire Debit Via: F121000358/121000358 A/C: ZAP. Marketing Corp US Ref: Weekly Disbursement/Time/17:47 Imad: 0207B1Qgc07C031951 Trn: 6650500038Jo |
| Wells Fargo | Maverick Management Group LLC | 0496 | 3/31/2023 | 3/17/2023 | | 1,710.66 | WT Fed#08695 Bank of America, N /Ftr/Bnf=Z.A.P. Marketing Corp. Srl# 0000960076916725 Trn#2303171181855 Rib# |
| | | | | | | 44,806.91 | |

DRAFT FORM - SUBJECT TO CHANGE

Payor Accounts: BAT Inc., Coast Processing LLC,
EZ Debt Relief, Maverick Management Group, Prime Logix, The
Litigation Practice Group, Vulcan Consulting Group LLC

Exhibit 9(a), Page 98

# EXHIBIT 9(b)

Exhibit 9(b), Page 99

In re: The Litigation Practice Group PC
Disbursement Details by Payee
90 Days Pre-Petition (12/20/2022 - 03/20/2023)



| Bank Name | Account Name | Account Number | Statement Date | Transaction Date | Check Number | Debit/Charge | Memo |
|---|---|---|---|---|---|---|---|
| Chase | The Litigation Practice Group PC | 3133 | 12/31/2022 | 12/27/2022 | | 4,001.94 | Fedwire Debit Vie F121000358/121000358 NC Z.A P. Msrketing Corp US Ret Weekly Disbursement/Time/16 32 med 1227B1Qgc02C008181 Tm: 6981 100381Jo |
| Chase | The Litigation Practice Group PC | 3133 | 12/31/2022 | 12/30/2022 | | 3,173.68 | Fedwire Debit Via F121DDD358/121DDD358 NC Z.A P. Marketing Corp US Ret Weekly Disbursement/time/i 4.39 Imad. 1 23DB1 QgcDSCD4D426 Tm: 5576BDD364J0 |
| Chase | The Litigation Practice Group PC | 3133 | 1/31/2023 | 1/6/2023 | | 3,488.76 | Fedwire Debit Via: F121000358/121000358 NC: Z.A.P. Marketing Corp US Ret: Weekly Disbursement/Time/l 4:47 Imad: 01 06B1 Qgc06C029345 Tm: 471 700000SJo |
| Chase | The Litigation Practice Group PC | 3133 | 1/31/2023 | 1/10/2023 | | 3,488.76 | Fedwire Debit Vie: F121000358/i21000358 NC: ZAP. Marketing Corp US Ret: Weekly Disbursement/Time/14:53 mmcd: 01 1OBIQgcO3COOS358 Tm: 499220001 0J0 |
| Bank of America | Litigation Practice Group PC | 6538 | 1/31/2023 | 1/17/2023 | | 4,077.78 | WIRE TYPE:BOOK OUT DATE23O1 17 TIME:0430 ET TRN:202301 1300511925 RELATED REF:421 504548 BNF:Z.A.P. MARKETING CORP ID3251 75603295 PMT DET: 01 .1 3.23 WEEKLY DISBURSEMENT |
| Chase | The Litigation Practice Group PC | 3133 | 1/31/2023 | 1/24/2023 | | 7,499.27 | Fedwire Debit Via F121000358/121000358 NC Z.A P. Markafing Corp US Rat Weekly Disbursements/Time/1 5:49 I mad: 012461 CgcO6CO32I 47 Ire: 56711 00024Jo |
| Chase | The Litigation Practice Group PC | 3133 | 2/28/2023 | 2/7/2023 | | 7,251.49 | Fedwire Debit Via: F121000358/121000358 A/C: ZAP. Marketing Corp US Ref: Weekly Disbursements/Time/17:47 Imad: 0207B1Qgc07C031951 Trn: 6650500038Jo |
| Wells Fargo | Maverick Management Group LLC | 0496 | 3/31/2023 | 3/17/2023 | | 1,710.66 | WT Fed#08695 Bank of America, N /Ftr/Bnf=Z.A.P. Marketing Corp. Srl# 0000960076916725 Trn#230317181855 Rlb# |
| | | | | | | **34,692.34** | |

DRAFT FORM - SUBJECT TO CHANGE

Exhibit 9(b), Page 100

# EXHIBIT 9(c)

Exhibit 9(c), Page 101

In re: The Litigation Practice Group PC
Summary of Disbursements
Post-Petition Activity (3/20/2023 - Present)

Z.A.P. Marketing Corporation



| Bank Name | Account Name | Account Number | Statement Date | Transaction Date | Check Number | Debit/Charge | Memo |
|---|---|---|---|---|---|---|---|
| Bank of America | Prime Logix LLC | 9201 | 3/31/2023 | 3/24/2023 | | 312.73 | Online Banking Transfer Conf# czz3bg36l; Z.A.P. MARKETING CORP |
| Bank of America | Prime Logix LLC | 9201 | 4/30/2023 | 4/7/2023 | | 2,924.23 | WIRE TYPE:BOOK OUT DATE:230407 TIME:1 449 ET TRN:20230407 0025261 8 RELATED REF:433252658 BNF:A.P. MARKETING CORP ID:                PMT DET: MAR 27 APR 02 |
| Bank of America | Vulcan Consulting Group LLC dba DRD | 9551 | 4/30/2023 | 4/14/2023 | | 3,805.35 | Online Banking Transfer Conf# knhyhp6lo; Z.A.P. MARKETING CORP |
| Bank of America | Prime Logix LLC | 9201 | 4/30/2023 | 4/27/2023 | | 6,617.84 | Online Banking Transfer Conf# bomcj3z8w; ZAP. MARKETING CORP |
| Bank of America | Prime Logix LLC | 9201 | 5/31/2023 | 5/12/2023 | | 5,064.65 | WIRE TYPE:BOOK OUT DATE23O51 2 TIME:0502 ET TRN:2023051 100521907 RELATED REF:437964424 BNF:Z.A.P. MARKETING CORP 1D3            PMT DET: AFFILIATE DISTRIBUTION |
| Bank of America | Prime Logix LLC | 9201 | 5/31/2023 | 5/25/2023 | | 4,138.38 | Online Banking Transfer Conf# itab3o4gx ZAP. MARKETING CORP |
| Bank of America | Prime Logix LLC | 9201 | 5/31/2023 | 5/26/2023 | | 45.00 | Online Banking Transfer Conf# dol5plodl; ZAP. MARKETING CORP |
| | | | | | | **22,908.18** | |

DRAFT FORM - SUBJECT TO CHANGE

Payor Accounts: BAT Inc., Coast Processing LLC,
EZ Debt Relief, Prime Logix, The Litigation
Practice Group, Vulcan Consulting Group LLC

Exhibit 9(c), Page 102

# EXHIBIT 10

4840

**Fill in this information to identify the case:**

| | |
|---|---|
| Debtor 1    The Litigation Practice Group P.C. | |
| Debtor 2 | |
| (Spouse, if filing) | |
| United States Bankruptcy Court    **Central District of California** | |
| Case number:  **23-10571** | |

FILED

U.S. Bankruptcy Court
Central District of California

12/29/2023

Kathleen J. Campbell, Clerk

**FILED**

## Official Form 410
# Proof of Claim

FEB 2 2 2024

By Omni Agent Solutions, Claims Agent
For U.S. Bankruptcy Court
Central District of California

04/22

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

### Part 1:    Identify the Claim

| | | |
|---|---|---|
| 1. Who is the current creditor? | Z.A.P. Marketing Corp. | |
| | Name of the current creditor (the person or entity to be paid for this claim) | |
| | Other names the creditor used with the debtor | |
| 2. Has this claim been acquired from someone else? | ☑ No<br>☐ Yes. From whom? | |
| 3. Where should notices and payments to the creditor be sent?<br><br>Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **Where should notices to the creditor be sent?**<br><br>Z.A.P. Marketing Corp.<br><br>Name<br><br>8845 Research Drive<br>Suite 120<br>Irvine, CA 92618<br><br>Contact phone _____562-522-3103_____<br><br>Contact email<br> zeid@litigationpracticeintake.com<br><br>Uniform claim identifier for electronic payments in chapter 13 (if you use one):<br><br>_____ | **Where should payments to the creditor be sent?** (if different)<br><br>Name<br><br><br><br><br><br>Contact phone _____<br><br>Contact email _____ |
| 4. Does this claim amend one already filed? | ☑ No<br>☐ Yes. Claim number on court claims registry (if known)     Filed on<br>                                                                     MM / DD / YYYY | |
| 5. Do you know if anyone else has filed a proof of claim for this claim? | ☑ No<br>☐ Yes. Who made the earlier filing? _____ | |

Official Form 410                                      Proof of Claim                                      page 1

102119-1 SCK

Exhibit 10, Page 104

**Part 2:    Give Information About the Claim as of the Date the Case Was Filed**

| | |
|---|---|
| 6. **Do you have any number you use to identify the debtor?** | ☑ No<br>☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _____ |

| | |
|---|---|
| 7. **How much is the claim?** | $    1956645.72    **Does this amount include interest or other charges?**<br>☑ No<br>☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |

| | |
|---|---|
| 8. **What is the basis of the claim?** | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).<br>Limit disclosing information that is entitled to privacy, such as healthcare information.<br><br>Procuring and sale of consumer leads for LPG legal services. |

| | |
|---|---|
| 9. **Is all or part of the claim secured?** | ☑ No<br>☐ Yes. The claim is secured by a lien on property.<br>**Nature of property:**<br>☐ Real estate.    If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410–A) with this *Proof of Claim*.<br>☐ Motor vehicle<br>☐ Other. Describe: _____<br><br>**Basis for perfection:** _____<br><br>Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>**Value of property:**    $ _____<br><br>**Amount of the claim that is secured:**    $ _____<br><br>**Amount of the claim that is unsecured:**    $ _____    (The sum of the secured and unsecured amounts should match the amount in line 7.)<br><br>**Amount necessary to cure any default as of the date of the petition:**    $ _____<br><br>**Annual Interest Rate** (when case was filed)    _____ %<br><br>☐ Fixed<br>☐ Variable |

| | |
|---|---|
| 10. **Is this claim based on a lease?** | ☑ No<br>☐ Yes. Amount necessary to cure any default as of the date of the petition. $ _____ |

| | |
|---|---|
| 11. **Is this claim subject to a right of setoff?** | ☑ No<br>☐ Yes. Identify the property: _____ |

Official Form 410    Proof of Claim    page 2

Exhibit 10, Page 105

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No<br>☐ Yes. *Check all that apply:* | | Amount entitled to priority |
|---|---|---|---|
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | | $_____ |
| | ☐ Up to $3,350 * of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | | $_____ |
| | ☐ Wages, salaries, or commissions (up to $15,150 *) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(_) that applies | | $_____ |
| | * Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment. | | |

## Part 3:  Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157 and 3571.

Check the appropriate box:

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date        12/29/2023

                        MM / DD / YYYY

/s/  Zeid Nesheiwat

Signature

Print the name of the person who is completing and signing this claim:

| Name | Zeid Nesheiwat |
|---|---|
| | First name    Middle name    Last name |
| Title | Authorized Agent |
| Company | Z.A.P. Marketing Corp. |
| | Identify the corporate servicer as the company if the authorized agent is a servicer |
| Address | 8845 Research Drive, Suite 120 |
| | Number  Street |
| | Irvine, CA 92618 |
| | City  State  ZIP Code |
| Contact phone | 562–522–3103      Email    zeid@litigationpracticeintake.com |

Official Form 410                    Proof of Claim                    page 3

DocuSign Envelope ID: 907AE835-219A-4F69-BE4E-39CB3B04EE74

## The Litigation Practice Group PC - Affiliate Agreement

THIS AGREEMENT (the "Agreement") is made and effective as of the 19th day of October, 2022 by and between The Litigation Practice Group PC ("LPG") and **Z.A.P. Marketing Corp** (hereinafter "Affiliate").

RECITALS:

LPG is in the business of providing a package debtor's rights services in the form of debt validation, consultation, and litigation defense through a network of attorneys licensed to practice law in all 50 states and the District of Columbia. The legal services offered include:

- Removal of invalid debts through correspondence directly with the three credit bureaus;
- Validation of consumer debts through correspondence including disputes with original creditors, validation demands to third party debt collectors and assignees, and disputes with all three credit bureaus;
- Defense of collection actions initiated by original creditors or third party assignees;
- Negotiation of advantageous settlements of consumer debts both pre and post litigation;
- Education of clients regarding federal laws applicable to consumer debt and credit reporting, and consultation regarding risk mitigation and litigation defense through its network of attorneys across the country.

Each of these services is offered without regard to the identity of the creditor or third-party debt collector or assignee. LPG reviews all client files prior to the execution of the client's legal services agreement with the appropriate law firm, and maintains oversight through its administrative services over all file placements.

Affiliate owns and operates a system of generating leads consisting of consumers interested in the legal services offered by LPG. Affiliate, acting in accordance with direction from LPG, shall obtain the names of Consumers and will market in a lawful manner, complying with the restrictions of the jurisdiction in which the consumer resides. For consumers interested in utilizing LPG's services, Affiliate will assist LPG in having consumers execute an approved legal services agreement with a law firm to which LPG provides administrative support services, at which point consumers will become clients of that law firm, and that law firm will be exclusively responsible for and liable for the representation of consumers in the context of the provision of legal services. Nothing in this Agreement nor in the eventual legal services agreement shall restrict Affiliate from offering any other service of any kind to consumer, including credit repair or debt relief programs. Nor is Affiliate restricted from marketing on behalf of credit repair or debt relief entities, including but not limited to other law firms. LPG and Affiliate hereby agree that any and all prior agreements entered into by LPG and Affiliate or any law firm to which LPG provides administrative support services and Affiliate are null and void and unenforceable, and this Agreement shall become the operative agreement for all files previously placed through the use of LPG's administrative support services.

Affiliate is being retained by LPG to provide marketing and customer service functions only. All payments made to Affiliate are for services actually rendered, and do not constitute a revenue or fee sharing agreement. The method used to determine the value of the services rendered by Affiliate to LPG were

1

DocuSign Envelope ID: 907AE835-219A-4F69-BE4E-39CB3B04EE74

selected by both parties based upon industry standard and effective valuation, and not for any other purpose.

LPG and Affiliate hereby agree to the following:

1.      Each Party shall be solely responsible for bearing its own costs and expenses incurred in performing its responsibilities under this Agreement, including all tariffs, filings, licensing and/or other fees.

2.      Affiliate shall comply with state and federal laws in communicating with consumers regarding LPG, any law firm utilized by LPG, or any of the programs of LPG or the assigned law firm.

3.      Both LPG and the law firm it utilizes shall comply with all state and federal laws in performing its obligations under the legal services agreement entered into between LPG and the consumers referred by Affiliate.

4.      If requested by LPG, Affiliate shall provide a copy of all marketing materials to LPG upon receiving a request from LPG.  Affiliate shall endeavor to provide such materials within 10 business days of such request, but may provide such materials in any time frame that is commercially reasonable.

5.      Affiliate agrees to keep any and all documents or communications between itself and LPG confidential pursuant to the provisions set forth below, and shall not share of disclose such documents to any party with prior, express written consent.

6.      Affiliate shall be entitled to receive the following as full and complete compensation for its services to LPG: LPG shall pay 75% per file for each file that Affiliate places with LPG, not counting the monthly maintenance fee of $96.38, which LPG shall retain to cover administrative costs for each file. LPG shall calculate the amount of each file, apply the above-identified percentage fee, and remit the same to Affiliate pursuant to an agreed-upon schedule not to exceed one remittance per seven (7) calendar days. If any consumer cancels LPG's services, or demands a refund for payment for such services, or both, then LPG shall be solely responsive for such cost and Affiliate shall not have to share such expense. LPG has exclusive discretion to grant or deny a requested refund or cancellation.  Finally, LPG may treat a consumer's failure to remit payment in a timely manner as a cancellation of the legal services agreement executed by consumer with LPG, and has sole discretion to make such determination.

7.      LPG shall bear all expenses related to the services it offers to consumers, and Affiliate shall bear all expenses related to its marketing of the same except as is set forth in this Paragraph. Neither LPG nor Affiliate shall be required to pay the expenses of the other.

8.      LPG reserves all rights with regard to rejection or cancellation of a consumer, but will do so only in accordance with the recommendation of the law firm utilized in providing such service, and only subject to the applicable state bar rules for such representation.

9.      This agreement shall continue to operate and bind LPG and Affiliate for a period of twelve (12) months from the date of execution of this Agreement.  At that time, this Agreement will automatically renew until either party sends written notice of cancellation of this Agreement, which shall be effective

MH

2

DocuSign Envelope ID: 907AE835-219A-4F69-BE4E-39CB3B04EE74

30 days after LPG or Affiliate postmarks or emails a cancellation letter stating the intent of that party to terminate this Agreement. If such cancellation letter is sent by either party, it shall be effective 30 days from the date of postmark or email, and shall terminate this Agreement and release either party from the obligations contained herein.

10.     If either party shall default under this Agreement, defined as a failure to comply with any of the obligations set forth above, the Agreement shall terminate following notice of default and a cure period of 30 days from the date postmarked on the notice of default. The notice of default must state with specificity the act of default alleged.

11.     Upon termination of this Agreement for any reason whatsoever, LPG and Affiliate will refrain from making any disparaging or negative comment, remark, statement, or implication, whether written or oral.

12.     The confidential information of LPG or Affiliate shall include information regarding contracts, customer or client lists or information, hardware, software, screens, specifications, designs, plans, drawings, data, prototypes, discoveries, research, developments, methods, processes, procedures, improvements, 'Know-how', compilations, market research, marketing techniques and plans, marketing materials, business plans and strategies, documents, scripts, guidelines, price lists, pricing policies and financial information or other business and/or technical information and materials, in oral, demonstrative, written, graphic or machine-readable form, which is unpublished, not available to the general public or trade, and which is maintained as confidential and proprietary information by the disclosing party for regulatory, customer relations, and/or competitive reasons. Neither LPG nor Affiliate may disclose the confidential information of the other with the express written consent of the other. A failure to abide by this confidentiality term shall entitle the party whose confidential information was compromised to a reasonable sum not less than $50,000.00, nor more than $200,000.00. The disclosure of information in connection with a judicial proceeding shall not constitute a violation of this term. The parties agree to notify the other if any inadvertent disclosure of information occurs within 48 hours of becoming aware of such disclosure. The parties agree to work together in good faith to remediate any disclosure of confidential information. A party whose confidential information is disclosed shall be entitled to injunctive relief in any court of competent jurisdiction.

13.     If, after the passage of six months of the date of this Agreement, Affiliate fails, in any one calendar month, to have at least fifty (50) active consumers, LPG shall withhold 20% of the fees due to Affiliate for said month in an escrow account. Such fees shall be held in escrow until, in a single calendar month, Affiliate has fifty (50) or more active consumers, at which point, within five (5) business days of the end of such calendar month, LPG shall transfer the balance of such escrow account to Affiliate and retain nothing in such escrow account. If Affiliate shall cease operations for any reason, or this Agreement shall terminate for any reason, Affiliate will continue to receive fees due to it under this Agreement until all active consumers have completed or withdrawn from the program, at which point any remaining amounts being held in escrow shall be released to Affiliate in full.

14.     Affiliate agrees not to use the name LPG or any law firm in any advertising, publicity release, or sales presentation designed to promote Affiliate's service, unless LPG provides prior written consent to such specific use.

3

DocuSign Envelope ID: 907AE835-219A-4F69-BE4E-39CB3B04EE74

15.     Any fees incurred by LPG in connection with a customer's Non-Sufficient Funds ("NSF") fee shall be borne exclusively by LPG.

16.     This Agreement may not be assigned or transferred without the prior written consent of the other. This Agreement shall be binding upon and shall inure to the benefit of the Parties and their respective successors and assigns.

17.     In the event of a breach, the prevailing party shall be entitled to reasonable attorneys' fees and collection costs, including all fees and costs on appeal.

18.     This Agreement contains the entire Agreement between the Parties, and shall not be modified, amended or supplemented, or any rights therein waived, unless specifically agreed upon in writing by LPG and Affiliate.

The Litigation Practice Group PC

Daniel S March

By: Daniel S. March, Managing Shareholder

Z.A.P. Marketing Corp

Mohamed Hegazi

By: Mohamed Hegazi

Title:  CEO

4

DocuSign Envelope ID: 907AE835-219A-4F69-BE4E-39CB3B04EE74

## Electronic Funds Transfer Authorization

This Electronic Funds Transfer (EFT) authorization is for use in connection with the foregoing Agreement, and permits LPG to transfer any and all amounts due to **Z.A.P. Marketing Corp** ("Affiliate") under the foregoing Agreement by EFT. By signing below, Affiliate hereby authorizes LPG to initiate EFT transfers at its discretion, with all fees and costs incurred by Affiliate in connection with such transfer to be borne by Affiliate, while all fees and costs incurred by LPG in connection with such transfer to be borne by LPG.

Account Holder Signature: _*Mohamed Hegazi*_ Date: 10/20/2022

By: Mohamed Hegazi

Title:  CEO

Account Owner Name: Z.A.P. Marketing Corp

Social Security Number / FEIN Number associated with account listed below:

Address: 8845 Research Dr Suite 120

City: Irvine, CA 92618

Bank Name: Bank of America

Routing Number:

Account Number:

Account type :  Checking

5

Exhibit 10, Page 111

DocuSign Envelope ID: 0336A23B-F392-4294-9B7E-E8A156F281E7

## ACCOUNTS RECEIVABLE PURCHASE AGREEMENT

This ACCOUNTS RECEIVABLE PURCHASE AGREEMENT (this "**Agreement**") is made as of February 28, 2023 (the "**Agreement Date**"), by and between The Litigation Practice Group PC (collectively the "**Buyer**"), and Z.A.P. Marketing Corp (the "**Seller**" or "**LPG**", and together with the Buyer, the "**Parties**"), and The Litigation Practice Group PC ("**LPG**").

### RECITALS

WHEREAS, in the regular course of business, the Seller originates account receivables from **LPG** in connection with client on-boarding services provided by the Seller to LPG and its affiliates;

WHEREAS, the account receivables represent an obligation of various clients to pay Seller for services that Seller previously provided, but which LPG shall provide from the date of execution of this Agreement;

WHEREAS, the Seller desires to sell, assign, transfer, and deliver to the Buyer, and the Buyer desires to purchase, acquire, and accept from the Seller, certain of these account receivables (the "**Purchased Accounts**").

NOW, THEREFORE, in consideration of the covenants and representations set forth herein, the Parties, intending to be legally bound, agree as follows:

### ARTICLE 1.
### DEFINITIONS

Section 1.1    Certain Definitions. Certain defined terms used in this Agreement are set forth on **Exhibit A**.

### ARTICLE 2.
### ASSIGNMENT AND TRANSFER AND CONSIDERATION

Section 2.1    Assignment of the Purchased Accounts to the Buyer. Upon execution of this Agreement and subject to the terms and conditions set forth herein, the Seller shall sell, assign, transfer, and deliver, and the Buyer shall purchase, acquire, and accept from the Seller, all of the Seller's right, title, and interest in and to the Purchased Accounts set forth on the spreadsheet attached to this Agreement, free and clear of any Liens. Other than the Purchased Accounts, the Buyer shall not purchase or acquire any other assets of the Seller (collectively, the "**Excluded Assets**").

Section 2.2    No Assumption of Liabilities. The Buyer shall not assume any Liabilities of the Seller of any kind, whether known or unknown, contingent, matured, or otherwise, whether currently existing or hereinafter created (collectively, the "**Excluded Liabilities**").

Section 2.3    Payment of Purchase Price. Buyer shall pay $96,919.62 (total purchase price) for the Purchased Accounts (the "**Purchase Price**") by wire transfer of immediately available funds in accordance with the wire transfer instructions set forth in **Schedule 2.3** (the "**Wire Instructions**"). The Purchased Accounts are set forth on the attached spreadsheet.

Section 2.4    Guarantee of LPG. If any file acquired by buyer shall fail to make a first payment, LPG will replace the file and bear any cost associated with such replacement. The replacement file shall yield no less than the receivable of the failed file. In addition, if in any calendar month a total of less than 80% of files make a cleared payment, LPG shall replace any non-performing files in such month so that the performance of the file package as

a whole equals 80%. This guarantee shall continue until the completion of the 24th month following execution of this agreement.

## ARTICLE 3.
## REPRESENTATIONS AND WARRANTIES OF THE SELLER

The Seller represents and warrants to the Buyer, as of the Agreement Date and as of the Closing Date, or, if expressly made as of a specified date, as of such specified date, as follows:

Section 3.1    Organization; Good Standing. The Seller is a Limited Liability Company duly organized, validly existing, and in good standing under the Laws of the State of Delaware and is duly qualified to do business and is in good standing as a foreign corporation in each jurisdiction where the ownership or operation of the Business requires such qualification, except where the failure to be so qualified would not reasonably be expected to have, individually or in the aggregate, a material adverse effect on the business, results of operations, financial condition, or assets of the Seller.

Section 3.2    Power and Authority. The Seller has all requisite right, power, and authority to execute, deliver, and perform this Agreement and the Transaction Agreements to which it is a party, to consummate the transactions contemplated hereby and thereby, and to perform its obligations hereunder and thereunder. The execution and delivery of this Agreement and the Transaction Agreements by the Seller, and the consummation by the Seller of the transactions contemplated hereby and thereby, have been duly approved by the Seller, and no further action is required on the part of the Seller to authorize this Agreement, any Transaction Agreement to which it is a party, or the transactions contemplated hereby and thereby. This Agreement has been, and each of the Transaction Agreements will be, duly and validly executed and delivered by the Seller and, assuming the due and valid authorization, execution, and delivery of this Agreement by the other Parties, and of each such Transaction Agreement by the other parties thereto, constitutes, or will constitute, a valid and binding obligation of the Seller, enforceable against it in accordance with its terms and conditions, except as enforcement may be limited by applicable bankruptcy, insolvency, reorganization, moratorium, and other Laws affecting enforcement of creditor's rights generally and except insofar as the availability of equitable remedies may be limited by applicable Law.

Section 3.3    Title to, and Sufficiency of, the Purchased Accounts. The Seller has and shall convey to the Buyer, at the Closing, good, valid, transferable, and marketable title to, or valid leasehold interests in, all of the Purchased Accounts, free and clear of all Liens.

Section 3.4    Consents. The Seller is not required to give any notice to, make any filing with, or obtain any authorization, consent, or approval of, any Governmental Body or Third Party, including a party to any assigned contract, in connection with the execution, delivery, and performance by the Seller of this Agreement or any of the Transaction Agreements to which it is a party or the consummation of the transactions contemplated hereby and thereby.

Section 3.5    No Conflicts. The execution and delivery by the Seller of this Agreement and each of the Transaction Agreements, and the consummation of the transactions contemplated hereby and thereby, will not conflict with, result in any violation of, or default under (with or without notice or lapse of time, or both), or give rise to an additional payment obligation, a right of termination, cancellation, modification, or acceleration of any obligation, or loss of any benefit, under: (a) any provision of the Organizational Documents of the Seller; (b) any contract to which the Seller is party, including, without limitation, any assigned contract; or (c) any Law or order applicable to the Seller or any of the Purchased Accounts.

Section 3.6    Compliance with Laws. The Seller has materially complied, and is now materially complying, with all Laws applicable to the ownership and use of the Purchased Accounts.

Section 3.7    Legal Proceedings. There is no Action of any nature pending or, to the Knowledge of the Seller, threatened against or by the Seller: (a) relating to or affecting the Purchased Accounts or (b) that challenges or seeks to prevent, enjoin, or otherwise delay the transactions contemplated by this Agreement and the Transaction Agreements. No event has occurred or circumstance exists that may give rise to, or serve as a basis for, any such Action.

Section 3.8    Condition of Purchased Accounts. Each Purchased Account shall have received no less than one processed payment.

Section 3.9    Confidentiality. Seller agrees and acknowledges that all Purchased Accounts, the pricing, and all terms set forth in this Agreement are confidential (together, the "Confidential Information"). Seller will at all times keep the Confidential Information in confidence and trust. Seller will not, without the prior written consent of an authorized officer of Buyer, (A) copy, use or disclose any Confidential Information, (B) deliver or disclose any Confidential Information to any person or entity outside the Buyer, or (C) use the Confidential Information for Seller's own use or use it to the detriment of Buyer. Notwithstanding the foregoing, Seller may, without consent, use the Confidential Information and disclose and deliver same to Seller's employees or agents, if applicable, who have a need to know, provided such employees or agents have entered into written agreements approved by Buyer and containing provisions at least as restrictive as these provisions. Seller agrees that violation of this Section 3.9. The Parties agree that the disclosure of the Confidential Information in violation of this Agreement may cause the Buyer irreparable harm and that any breach or threatened breach by the Seller entitles Buyer to seek injunctive relief, in addition to any other legal or equitable remedies available to it, in any court of competent jurisdiction.

## ARTICLE 4.
### REPRESENTATIONS AND WARRANTIES OF THE BUYER

The Buyer represents and warrants to the Seller, as of the Agreement Date and as of the Closing Date, or, if expressly made as of a specified date, as of such specified date, as follows:

Section 4.1    Organization; Good Standing. The Buyer is a limited liability company, duly organized, validly existing, and in good standing under the Laws of the State of Florida.

Section 4.2    Power and Authority. The Buyer has all requisite right, power, and authority to execute, deliver, and perform this Agreement and the Transaction Agreements to which it is a party, to consummate the transactions contemplated hereby and thereby, and to perform its obligations hereunder and thereunder. The execution and delivery of this Agreement and the Transaction Agreements by the Buyer, and the consummation by the Buyer of the transactions contemplated hereby and thereby, have been duly approved by the Buyer, and no further action is required on the part of the Buyer to authorize this Agreement, any Transaction Agreement to which it is a party, or the transactions contemplated hereby and thereby. This Agreement has been, and each of the Transaction Agreements will be, duly and validly executed and delivered by the Buyer and, assuming the due and valid authorization, execution, and delivery of this Agreement by the other Parties, and of each such Transaction Agreement by the other parties thereto, constitutes, or will constitute, a valid and binding obligation of the Buyer, enforceable against it in accordance with its terms and conditions, except as enforcement may be limited by applicable bankruptcy, insolvency, reorganization, moratorium and other Laws affecting enforcement of creditor's rights generally and except insofar as the availability of equitable remedies may be limited by applicable Law.

Accounts Receivable Purchase Agreement
Page 3 of 7

DocuSign Envelope ID: 0336A23B-F392-4294-9B7E-E8A156F281E7

Section 4.3    No Conflicts. The execution and delivery by the Buyer of this Agreement and each of the Transaction Agreements, and the consummation of the transactions contemplated hereby and thereby, will not conflict with, result in any violation of, or default under (with or without notice or lapse of time, or both), or give rise to an additional payment obligation, a right of termination, cancellation, modification, or acceleration of, any obligation, or loss of any benefit under: (a) any provision of the Buyer's Organizational Documents; (b) any contract to which the Buyer is party, other than the Buyer Representation Agreement; or (c) any Law applicable to the Buyer.

Section 4.4    Sufficient Funds. The Buyer has, and will have, sufficient funds available to make payment of the Purchase Price and consummate the transactions contemplated by this Agreement and the Transaction Agreements.

## ARTICLE 5.
## COVENANTS

Section 5.1    Appropriate Actions.

(a)    General. Each of the Parties shall use commercially reasonable efforts to take all actions necessary to consummate the transactions contemplated by this Agreement as soon as reasonably practicable after the execution of this Agreement, including taking all actions necessary to comply promptly with all applicable Laws that may be imposed on it or any of its Affiliates with respect to the Closing.

## ARTICLE 6.
## CLOSING

Section 6.1    Closing. The closing of the transactions contemplated by this Agreement (the "Closing") will take place upon the execution and delivery of this Agreement or at such other time, date, and place as the Parties may agree in writing. The date on which the Closing occurs is hereinafter referred to as the "Closing Date." The Parties agree that the Closing may take place by the electronic exchange of executed counterpart documents and the electronic transfer of funds.

Section 6.2    Closing Deliverables of the Seller. At or prior to the Closing, Seller shall deliver to Buyer any of the following if requested by Buyer:  (i) a bill of sale and assignment and assumption agreement substantially in the form attached hereto as **Exhibit B** (the "Bill of Sale and Assignment and Assumption Agreement"), duly executed by the Seller, effecting the transfer and assignment to, and assumption by, the Buyer of the Purchased Accounts; and (ii) such other customary instruments of transfer, assumption, filings, or documents, in form and substance reasonably satisfactory to the Buyer, as may be required to give effect to this Agreement.

Section 6.3    Closing Deliverables of the Buyer. At or prior to the Closing, the Seller shall have received the following: (i) the Upfront Cash Payment; and (ii) if requested pursuant to Section 6.2, the Bill of Sale and Assignment and Assumption Agreement, duly executed by the Buyer.

Section 6.4    Indemnification by the Seller. Subject to the limitations set forth in this Article 6, the Seller agrees to indemnify and hold harmless the Buyer, including its shareholders, members, directors, managers, officers, employees, Affiliates, and agents (each, a "Buyer Indemnified Party" and, collectively, the "Buyer Indemnified Parties"), against all claims, losses, Liabilities, damages, deficiencies, diminutions in value, costs, interest, awards, judgments, penalties, and expenses, including reasonable out-of-pocket attorneys' and consultants' fees and expenses and including any such reasonable expenses incurred in connection with investigating, defending against, or settling any of the foregoing (each, a "Loss" and, collectively, the "Losses") paid, suffered, incurred, sustained, or accrued by any Buyer Indemnified Party, directly or indirectly, as a result of,

DocuSign Envelope ID: 0336A23B-F392-4294-9B7E-E8A156F281E7

arising out of, or in connection with: (a) any inaccuracy in, or breach of, any of the representations or warranties of the Seller contained in this Agreement, (b) any breach or non-fulfillment of any covenant, agreement, or obligation to be performed by the Seller pursuant to this Agreement, (c) any Excluded Asset or any Excluded Liability.

Section 6.5    Indemnification by the Buyer.  Subject to the limitations set forth in this Article 6, the Buyer agrees to indemnify and hold harmless the Seller, including its Affiliates and agents (each, a "Seller Indemnified Party" and, collectively, the "Seller Indemnified Parties"), against all Losses paid, suffered, incurred, sustained, or accrued by any Seller Indemnified Party, directly or indirectly, as a result of, arising out of, or in connection with: (a) any inaccuracy in, or breach of, any of the representations or warranties of the Buyer contained in this Agreement; (b) any breach or non-fulfillment of any covenant, agreement, or obligation to be performed by the Buyer pursuant to this Agreement; (c) any event or occurance related to the Purchased Accounts or Buyer occurring after the Closing; or (d) resulting from any omissions or misstatements made by Buyer to investors or potential investors.

Section 6.6    Indemnification Procedures.

(a)    No Restraints.  Promptly following receipt by an Indemnified Party of notice by a Third Party (including any Governmental Body) of any complaint, dispute, or claim or the commencement of any audit, investigation, Action or proceeding with respect to which such Indemnified Party may be entitled to indemnification pursuant hereto (a "Third-party Claim"), such Indemnified Party shall provide written notice thereof to the Indemnifying Party, provided, however, that the failure to so notify the Indemnifying Party shall relieve the Indemnifying Party from Liability hereunder with respect to such Third-party Claim only if, and only to the extent that, such failure to so notify the Indemnifying Party results in the forfeiture by the Indemnifying Party of rights and defenses otherwise available to the Indemnifying Party with respect to such Third-party Claim. The Indemnifying Party shall have the right, upon written notice delivered to the Indemnified Party within twenty days thereafter assuming full responsibility for any Losses resulting from such Third-party Claim, to assume the defense of such Third-party Claim, including the employment of counsel reasonably satisfactory to the Indemnified Party and the payment of the fees and disbursements of such counsel; provided, however, if the Indemnifying Party declines or fails to assume the defense of such Third-party Claim on the terms provided above or to employ counsel reasonably satisfactory to the Indemnified Party, in either case within such twenty day period, then any Losses shall include the reasonable fees and disbursements of counsel for the Indemnified Party as incurred.  In any Third-party Claim for which indemnification is being sought hereunder the Indemnified Party or the Indemnifying Party, whichever is not assuming the defense of such Third-party Claim, shall have the right to participate in such matter and to retain its own counsel at such Party's own expense.  The Indemnifying Party or the Indemnified Party (as the case may be) shall at all times use reasonable efforts to keep the Indemnifying Party or Indemnified Party (as the case may be) reasonably apprised of the status of the defense of any matter, the defense of which it is maintaining, and to cooperate in good faith with each other with respect to the defense of any such matter.

(b)    No Indemnified Party may settle or compromise any Third-party Claim or consent to the entry of any judgment with respect to which indemnification is being sought hereunder without the prior written consent of the Indemnifying Party (which may not be unreasonably withheld or delayed), unless (i) the Indemnifying Party fails to assume and maintain the defense of such Third-party Claim or (ii) such settlement, compromise, or consent includes an unconditional release of the Indemnifying Party and its officers, directors, employees and Affiliates from all Liability arising out of, or related to, such Third-party Claim.  An Indemnifying Party may not, without the prior written consent of the Indemnified Party, settle or compromise any Third-party Claim or consent to the entry of any judgment with respect to which indemnification is being sought hereunder unless such settlement, compromise, or consent (A) includes an unconditional release of the Indemnified Party and its officers, directors, employees, and Affiliates from all Liability arising out of, or related to, such Third-party

DocuSign Envelope ID: 0336A23B-F392-4294-9B7E-E8A156F281E7

Claim, (B) does not contain any admission or statement suggesting any wrongdoing or Liability on behalf of the Indemnified Party, and (C) does not contain any equitable order, judgment, or term that in any manner affects, restrains, or interferes with the business of the Indemnified Party or any of the Indemnified Party's Affiliates.

(c)     If an Indemnified Party claims a right to payment pursuant hereto with respect to any matter not involving a Third-party Claim (a "**Direct Claim**"), such Indemnified Party shall send written notice of such claim to the appropriate Indemnifying Party (each, a "**Notice of Claim**"). Such Notice of Claim shall specify the basis for such Direct Claim. The failure by any Indemnified Party so to notify the Indemnifying Party shall not relieve the Indemnifying Party from any Liability that it may have to such Indemnified Party with respect to any Direct Claim made pursuant to this Section 6.6(c). If the Indemnifying Party does not notify the Indemnified Party within thirty days following its receipt of such Notice of Claim that the Indemnifying Party disputes its Liability to the Indemnified Party under this Article 6 or the amount thereof, the Direct Claim specified by the Indemnified Party in such Notice of Claim shall be conclusively deemed a Liability of the Indemnifying Party under this Article 6, and the Indemnifying Party shall pay the amount of such Liability to the Indemnified Party on demand or, in the case of any Notice of Claim in which the amount of the Direct Claim (or any portion of the Direct Claim) is estimated, on such later date when the amount of such Direct Claim (or such portion of such Direct Claim) becomes finally determined. In the event that the Indemnifying Party has timely disputed its Liability with respect to such Direct Claim as provided above, as promptly as possible, such Indemnified Party and the appropriate Indemnifying Party shall establish the merits and amount of such Direct Claim (by mutual agreement, litigation, arbitration or otherwise) and, within five business days following the final determination of the merits and amount of such Direct Claim, the Indemnifying Party shall pay to the Indemnified Party an amount equal to such Direct Claim as determined hereunder.

### ARTICLE 7.
### MISCELLANEOUS

Section 7.1     Entire Agreement; Amendment.  This Agreement and the Transaction Agreements (including the exhibits hereto and thereto and the documents referred to therein) constitute the entire agreement among the Parties with respect to the subject matter hereof and supersede any prior understandings, agreements, or representations by or among the Parties, written or oral, to the extent they related in any way to the subject matter hereof. This Agreement may be amended with the written consent of each of the Parties or any successor thereto by execution of an instrument in writing.

Section 7.2     Waivers.  The rights and remedies of the Parties to this Agreement are cumulative and not alternative. To the maximum extent permitted by applicable Law: (a) no claim or right arising out of this Agreement or the documents referred to in this Agreement can be discharged by one Party, in whole or in part, by a waiver or renunciation of the claim or right unless in writing signed by the other Parties; (b) no waiver that may be given by a Party will be applicable except in the specific instance for what it is given; and (c) no notice to, or demand on, one Party will be deemed to be a waiver of any obligation of such Party or of the right of the Party giving such notice or demand to take further action without notice or demand as provided in this Agreement or the Transaction Agreements.

Section 7.3     Notices.  All notices and other communications required or permitted hereunder shall be made to the address of a Party listed on the signature page to this Agreement and shall be (a) in writing, (b) effective when given, and (c), in any event, deemed to be given upon receipt or, if earlier: (i) upon delivery, if delivered by hand; (ii) two business days after deposit with FedEx Express or similar recognized international overnight courier service, freight prepaid; or (iii) one business day after facsimile or electronic mail transmission. A Party may change the address to which notices, requests, demands, claims, and other communications hereunder are to be delivered by giving the other Parties advance written notice pursuant to the provisions above.

DocuSign Envelope ID: 0336A23B-F392-4294-9B7E-E8A156F281E7

Section 7.4    Successors and Assigns. This Agreement shall be binding upon, and inure to the benefit of, the Parties named herein and their respective successors and permitted assigns. Neither this Agreement nor any rights or obligations of a Party hereunder shall be assigned by a Party (unless to an Affiliate of such Party) without the prior written consent of the other Parties. This Agreement will be binding upon any permitted assignee of any Party. No assignment shall have the effect of relieving any Party to this Agreement of any of its obligations hereunder.

Section 7.5    Public Disclosure. Except as may be required by Law, the Seller shall not issue any statement or communication to any Third Party (other than its respective agents) regarding the subject matter of this Agreement or the transactions contemplated hereby, including, if applicable, the termination of this Agreement and the reasons therefor, without the prior written consent of the Buyer.

Section 7.6    Expenses and Fees. Whether or not the Closing occurs, all fees and expenses incurred in connection with this transactions contemplated by this Agreement, including all legal, accounting, financial advisory, consulting and all other fees and expenses of Third Parties incurred by a Party in connection with the negotiation and effectuation of the terms and conditions of this Agreement and the transactions contemplated hereby, shall be the obligation of the respective Party incurring such fees and expenses.

Section 7.7    Specific Performance. The Parties agree that irreparable damage would occur if any provision of this Agreement was not performed in accordance with the terms hereof and that the Parties shall be entitled to specific performance of the terms hereof, in addition to any other remedy to which they are entitled hereunder, at Law or in equity.

Section 7.8    Counterparts. This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement. A signed copy of this Agreement delivered by facsimile, electronic mail, or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

Section 7.9    Governing Law. This Agreement shall, in all respects, be construed in accordance with, and governed by, the Laws of the State of California without regard to conflict of Laws principles.

Section 7.10    Severability. Any term or provision of this Agreement that is invalid or unenforceable in any situation in any jurisdiction shall not affect the validity or enforceability of the remaining terms and provisions hereof or the validity or enforceability of the offending term or provision in any other situation or in any other jurisdiction.

Section 7.11    Construction. The Parties have participated jointly in the negotiation and drafting of this Agreement. In the event an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the Parties and no presumption or burden of proof shall arise favoring or disfavoring any Party by virtue of the authorship of any of the provisions of this Agreement.

DocuSign Envelope ID: 0336A23B-F392-4294-9B7E-E8A156F281E7

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the Agreement Date.

BUYER:

**The Litigation Practice Group P.C.**

By: _____

    Name: Daniel S March
    Title: Managing Shareholder

SELLER:

**Z.A.P. Marketing Corp**

By: _____

    Name: Mohamed Hegazi
    Title: CFO

APPROVAL OF ASSIGNMENT AND GUARANTEE

The assignment of the Purchased Accounts set forth in this Agreement as well as the guarantee included therein is hereby approved, and with respect to the Purchased Accounts, the Buyer shall have all rights of Buyer as set forth in this agreement.

**The Litigation Practice Group P.C.**

By: _____

    Name: Daniel S. March
    Title: Managing Shareholder

*[Signature Page to Accounts Receivable Purchase Agreement]*

## EXHIBIT A

## DEFINITIONS

As used in this Agreement, the following terms have the following meanings (terms defined in the singular to have a correlative meaning when used in the plural and vice versa).

(a)    "**Action**" shall mean any civil, criminal, or administrative action, claim, suit, demand, charge, citation, reexamination, opposition, interference, decree, injunction, mediation, hearing, notice of violation, demand letter, litigation, proceeding, labor dispute, arbitral action, governmental or other audit, inquiry, criminal prosecution, investigation, unfair labor practice charge, or complaint.

(b)    "**Agreement**" shall have the meaning set forth in the preamble to this Agreement.

(c)    "**Agreement Date**" shall have the meaning set forth in the preamble to this Agreement.

(d)    "**Affiliate**" shall mean (i) with respect to any non-natural Person, any Person that, directly or indirectly, through one or more intermediaries, controls, is controlled by, or is under common control with, such Person and (ii), with respect to any individual, (A) family members of such individual, by blood, adoption, or marriage, (B) such individual's spouse or ex-spouse and (C) any Person that is directly or indirectly under the control of any of the foregoing individuals. For purposes of this definition, "control" (including with correlative meanings, the terms "controlling," "controlled by," and under "common control with") means the possession, directly or indirectly, of the power to direct the management and policies of a Person, whether through the ownership of voting securities, by contract, or otherwise.

(e)    "**Bill of Sale and Assignment and Assumption Agreement**" shall have the meaning set forth in Section 6.2.

(f)    "**Business**" shall mean the business of the Seller as conducted on the Agreement Date.

(g)    "**Buyer**" shall have the meaning set forth in the preamble to this Agreement.

(h)    "**Buyer Indemnified Parties**" shall have the meaning set forth in Section 6.4.

(i)    "**Closing**" shall have the meaning set forth in Section 6.1.

(j)    "**Closing Date**" shall have the meaning set forth in Section 6.1.

(k)    "**Direct Claim**" shall have the meaning set forth in Section 6.6(c).

(l)    "**Excluded Assets**" shall have the meaning set forth in Section 2.1.

(m)    "**Excluded Liabilities**" shall have the meaning set forth in Section 2.2.

(n)    "**Governmental Body**" shall mean any: (i) nation, province, state, county, city, town, village, district, or other jurisdiction of any nature; (ii) federal, provincial, state, local, municipal, foreign, or other government; (iii) governmental or quasi-governmental authority of any nature (including any governmental agency, branch, department, official, or entity and any court or other tribunal); (iv) multi-national organization or body; or (v) body exercising, or entitled to exercise, any administrative, executive, judicial, legislative, police, regulatory, or taxing authority or power of any nature.

DocuSign Envelope ID: 0336A23B-F392-4294-9B7E-E8A156F281E7

(o)    "**Indebtedness**" means, without duplication and with respect to the Seller, all: (i) indebtedness for borrowed money; (ii) obligations for the deferred purchase price of property or services, (iii) long or short-term obligations evidenced by notes, bonds, debentures or other similar instruments; (iv) obligations under any interest rate, currency swap, or other hedging agreement or arrangement; (v) capital lease obligations; (vi) reimbursement obligations under any letter of credit, banker's acceptance or similar credit transactions; (vii) guarantees made by the Seller on behalf of any third party in respect of obligations of the kind referred to in the foregoing clauses (i) through (vi); and (viii) any unpaid interest, prepayment penalties, premiums, costs and fees that would arise or become due as a result of the prepayment of any of the obligations referred to in the foregoing clauses (i) through (vii).

(p)    "**Indemnified Party**" shall mean a Buyer Indemnified Party or a Seller Indemnified Party, as the case may be, making a claim for indemnification under Article 6.

(q)    "**Indemnifying Party**" shall mean a Party against whom a claim for indemnification is asserted under Article 6.

(r)    "**Knowledge**" shall mean, with respect to the Seller, the actual or constructive knowledge of all facts relevant to this transaction and the transacting parties, after due inquiry.

(s)    "**Law**" shall mean any law, statute, ordinance, regulation, rule, code, notice requirement, court decision, or agency guideline, of any foreign, federal, state, or local Governmental Body.

(t)    "**Liabilities**" shall mean any direct or indirect liability, Indebtedness, obligation, commitment, expense, claim, deficiency, guaranty, or endorsement of, or by, any Person of any type, known or unknown, and whether accrued, absolute, contingent, matured, unmatured, determined or undeterminable, on- or off-balance sheet, or other.

(u)    "**Lien**" shall mean any mortgage, pledge, lien, charge, claim, security interest, adverse claims of ownership or use, restrictions on transfer, defect of title, or other encumbrance of any sort.

(v)    "**Losses**" shall have the meaning set forth in Section 6.4.

(w)    "**Notice of Claim**" shall have the meaning set forth in Section 6.6(c).

(x)    "**Organizational Documents**" shall mean, with respect to a Person, the charter, bylaws, limited liability company agreement, and other organizational documents of such Person, in each case, as amended.

(y)    "**Party**" or "**Parties**" shall have the meaning set forth in the preamble to this Agreement.

(z)    "**Permitted Liens**" shall mean (i) Liens for Taxes not yet delinquent or being contested in good faith by appropriate proceedings, (ii) statutory Liens (including materialmen's, warehousemen's, mechanic's, repairmen's, landlord's, and other similar Liens) arising in the ordinary course of business securing payments not yet delinquent or being contested in good faith by appropriate proceedings, and (iii) restrictive covenants, easements, and defects, imperfections or irregularities of title, if any, of a nature that do not materially and adversely affect the assets or properties subject thereto.

(aa)    "**Person**" shall mean any individual, corporation (including any non-profit corporation), general or limited partnership, limited liability company, joint venture, estate, trust, association, organization, labor union, Governmental Body, or other entity.

(bb)    "**Purchase Price**" shall have the meaning set forth in Section 2.3.

(cc)    "**Purchased Accounts**" shall have the meaning set forth in the Recitals.

(dd)    "**Seller**" shall have the meaning set forth in the preamble to this Agreement.

(ee)    "**Seller Indemnified Parties**" shall have the meaning set forth in Section 6.5.

(ff)    "**Tax**" or "**Taxes**" shall mean any U.S. federal, state, local or non-U.S. income, gross receipts, license, payroll, employment, excise, severance, stamp, occupation, premium, windfall profits, environmental, customs duties, capital stock, escheat, franchise, profits, withholding, social security, unemployment, disability, real property, personal property, sales, use, transfer, registration, value added, alternative or add-on minimum, estimated, or other tax of any kind whatsoever, including any interest, penalty, or addition thereto, whether disputed or not.

(gg)    "**Tax Returns**" means any return, declaration, report, claim for refund, or information return or statement relating to Taxes, including any schedule or attachment thereto, and including any amendment thereof.

(hh)    "**Third Party**" or "**Third Parties**" shall mean any Person other than the Parties or their respective Affiliates.

(ii)    "**Third-party Claim**" shall have the meaning set forth in Section 6.6(a).

(jj)    "**Transaction Agreements**" shall mean the Bill of Sale and Assignment and Assumption Agreement, and each other agreement, instrument, and/or certificate contemplated by this Agreement or such other agreements to be executed in connection with the transactions contemplated hereby or thereby.

(kk)    "**Upfront Cash Payment**" shall have the meaning set forth in Section 2.3.

(ll)    "**Wire Instructions**" shall have the meaning set forth in Section 2.3.

DocuSign Envelope ID: 0336A23B-F392-4294-9B7E-E8A156F281E7

## EXHIBIT B

### FORM OF BILL OF SALE AND ASSIGNMENT AND ASSUMPTION AGREEMENT

THIS BILL OF SALE AND ASSIGNMENT AND ASSUMPTION AGREEMENT (this "**Agreement**"), is made by and between **Buyer**, and **Seller**. Each of the Seller and the Buyer are sometimes referred to herein, individually, as a "**Party**" and, collectively, as the "**Parties**."

WHEREAS, the Buyer and the Seller have entered into that certain Accounts Receivable Purchase Agreement, of even date herewith (the "**Purchase Agreement**"), pursuant to which the Seller has agreed to sell, assign, transfer, and deliver to the Buyer, and the Buyer has agreed to purchase, acquire, and accept from the Seller, all right, title, and interest of the Seller in and to the Purchased Accounts, free and clear of any Liens.

NOW, THEREFORE, in consideration of the covenants and representations set forth herein, and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the Parties, intending to be legally bound, agree as follows:

1.      Defined Terms. Capitalized terms used but not otherwise defined in this Agreement shall have the meanings assigned to such terms in the Purchase Agreement.

2.      Sale of Purchased Accounts; Assignment. The Seller hereby sells, assigns, transfers, and delivers to the Buyer, and the Buyer hereby purchases, acquires, and accepts from the Seller, all right, title, and interest of the Seller in and to the Purchased Accounts, free and clear of any Liens.

3.      Further Assurances. Each of the Parties agrees, from time to time, at the request of the any other Party, to execute and deliver such other instruments of conveyance, power of attorney, sale, transfer, or assignment and take such other actions as such other Party may reasonably request in order to more effectively consummate the transactions contemplated by this Agreement.

4.      Terms of the Purchase Agreement. This Agreement is intended to evidence the consummation of the transactions contemplated by the Purchase Agreement and is subject to the terms and conditions set forth in the Purchase Agreement. The terms of the Purchase Agreement, including, but not limited to, the representations, warranties, covenants, agreements, and indemnities relating to the Purchased Accounts are incorporated herein by this reference. The Parties acknowledge and agree that the representations, warranties, covenants, agreements, and indemnities contained in the Purchase Agreement shall not be superseded hereby but shall remain in full force and effect to the full extent provided therein. In the event of any conflict or inconsistency between the terms of the Purchase Agreement and the terms hereof, the terms of the Purchase Agreement shall govern.

5.      Counterparts. This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement. A signed copy of this Agreement delivered by facsimile, electronic mail, or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

*[Remainder of page intentionally left blank.]*

Accounts Receivable Purchase Agreement
Exhibit B – Bill of Sale

DocuSign Envelope ID: 0336A23B-F392-4294-9B7E-E8A156F281E7

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date first above written.

BUYER: **The Litigation Practice Group P.C.**

By: _____

    Name: Daniel S. March
    Title: Managing Shareholder

SELLER:

Z.A.P. Marketing Corp

By: _____

    Name: Mohamed Hegazi
    Title: CFO

Accounts Receivable Purchase Agreement

DocuSign Envelope ID: 0336A23B-F392-4294-9B7E-E8A156F281E7

Schedule 2.3
Wire Instructions

**$96,919.62**

Account Holder Name: Z.A.P. Marketing Corp

Address: 8845 Research Dr Suite 120 Irvine, CA 92618

Routing Number:        0358

Account Number:        03295

Accounts Receivable Purchase Agreement
Schedule 2.3 – Wire Instructions

| Customer I Full Name Home Phoi Email | State | Next Paym | Payments I | Balance | Enrolled Di | Debt Enrol |
|---|---|---|---|---|---|---|
| BATLLC-65 | CA | ######## | 2 | | ######## | 8431 |
| BATLLC-65 | FL | ######## | 2 | | ######## | 37396 |
| BATLLC-65 | FL | ######## | 2 | 795.74 | ######## | 22612 |
| BATLLC-65 | FL | ######## | 2 | | ######## | 7260 |
| BATLLC-65 | IL | ######## | 2 | | ######## | 9745.06 |
| BATLLC-65 | WA | ######## | 3 | 505.72 | ######## | 6259 |
| BATLLC-65 | WA | ######## | 2 | | ######## | 14637 |
| BATLLC-65 | CO | ######## | 3 | | ######## | 45543 |
| BATLLC-65 | FL | ######## | 2 | | ######## | 31570 |
| BATLLC-65 | FL | ######## | 2 | | ######## | 23322 |
| BATLLC-65 | FL | ######## | 1 | | ######## | 38989 |
| BATLLC-65 | CO | ######## | 2 | | ######## | 5953 |
| BATLLC-65 | CO | ######## | 2 | | ######## | 22284 |
| BATLLC-65 | SC | ######## | 2 | | ######## | 16390 |
| BATLLC-65 | VA | 3/1/2023 | 3 | 754.05 | ######## | 6525 |
| BATLLC-65 | DE | ######## | 3 | 1873.47 | ######## | 63373 |
| BATLLC-65 | FL | ######## | 2 | | ######## | 30757 |
| BATLLC-65 | CA | ######## | 3 | 820.41 | ######## | 21251 |
| BATLLC-65 | FL | ######## | 2 | | ######## | 12006 |
| BATLLC-65 | WA | ######## | 2 | | ######## | 45824 |
| BATLLC-66 | CO | ######## | 3 | 2320.29 | ######## | 108328 |
| BATLLC-66 | NE | ######## | 2 | | ######## | 54005 |
| BATLLC-66 | CO | | 2 | 550.34 | ######## | 40856 |
| BATLLC-66 | NY | ######## | 2 | | ######## | 48557 |
| BATLLC-66 | ( CO | ######## | 2 | | ######## | 15101 |
| BATLLC-66 | CO | ######## | 1 | | ######## | 19440 |
| BATLLC-66 | WA | ######## | 3 | 926.22 | ######## | 19112 |
| BATLLC-66 | FL | ######## | 2 | | ######## | 24368 |
| BATLLC-66. | TN | ######## | 2 | | ######## | 9479.61 |
| BATLLC-66 | CO | ######## | 2 | | ######## | 27978 |
| BATLLC-66 | WA | 3/2/2023 | 3 | 367.54 | ######## | 24404 |
| BATLLC-66 | OR | ######## | 1 | | ######## | 27727 |
| BATLLC-66 | WA | 3/2/2023 | 2 | 536.51 | ######## | 26408 |
| BATLLC-66 | @ FL | ######## | 1 | | ######## | 49829 |
| BATLLC-66 | PA | 3/9/2023 | 3 | 812.46 | ######## | 37182.05 |
| BATLLC-66 | CO | ######## | 2 | 150.21 | ######## | 6121 |
| BATLLC-66 | FL | ######## | 1 | | ######## | 13617 |
| BATLLC-66 | FL | ######## | 1 | | ######## | 20339 |
| BATLLC-66 | PA | ######## | 1 | | ######## | 11847 |
| BATLLC-66 | TN | ######## | 1 | | ######## | 20360 |
| BATLLC-66 | @ FL | 3/2/2023 | 1 | | ######## | 14540 |
| BATLLC-66 | FL | ######## | 1 | | ######## | 14416 |
| BATLLC-66 | c FL | ######## | 2 | | ######## | 14258 |
| BATLLC-66 | FL | ######## | 1 | | ######## | 12868 |
| BATLLC-67 | CA | ######## | 1 | | ######## | 12034.27 |
| BATLLC-67 | CA | 3/2/2023 | 2 | 263.02 | ######## | 14998 |

DocuSign Envelope ID: 0336A23B-F392-4294-9B7E-E8A156F281E7

| | | | | | |
|---|---|---|---|---|---|
| BATLLC-68 | WV | 3/3/2023 | 2 | 250.14 ####### | 14058 |
| BATLLC-67. | IL | 3/1/2023 | 2 | 269.43 ####### | 61969 |
| BATLLC-67 | ꜱIL | 3/1/2023 | 2 | 255.35 ####### | 11128 |
| BATLLC-67ꞔ | WA | ######## | 1 | ####### | 12773 |
| BATLLC-67 | IL | 3/2/2023 | 2 | 228.08 ####### | 7573 |
| BATLLC-67 | ₢FL | ######## | 1 | ####### | 8789 |
| BATLLC-67 | IL | 3/2/2023 | 2 | 250.88 ####### | 8111 |
| BATLLC-66 | ꞔPA | 3/2/2023 | 2 | 399.5 ####### | 27281 |
| BATLLC-67 | @PA | ######## | 2 | 334.35 ####### | 24987 |
| BATLLC-67 | PA | 3/2/2023 | 2 | 127.54 ####### | 7142 |
| BATLLC-67 | IL | ######## | 1 | ####### | 10867 |
| BATLLC-67ꞔ | CO | ######## | 2 | 254.34 ####### | 14216 |
| BATLLC-67 | FL | ######## | 1 | ####### | 17372 |
| | | | | | 1384566 |

DocuSign Envelope ID: 0336A23B-F392-4294-9B7E-E8A156F281E7

DDG Trans DDG Transfer - Original Agent
Z.A.P. Marl
Z.A.P. Mar
Z.A.P. Mar
Z.A.P. Marl
Z.A.P. Marl
Z.A.P. Marl
Z.A.P. Marl
Z.A.P. Mar
Z.A.P. Marl
Z.A.P. Marl
Z.A.P. Marl
Z.A.P. Mar
Z.A.P. Marl
Z.A.P. Mar
Z.A.P. Mar
Z.A.P. Mar
Z.A.P. Marl
Z.A.P. Mar
Z.A.P. Marl
Z.A.P. Mar
Z.A.P. Mar
Z.A.P. Mar
Z.A.P. Mar
Z.A.P. Mar
Z.A.P. Mar
Z.A.P. Mar
Z.A.P. Mar
Z.A.P. Mar
Z.A.P. Mar
Z.A.P. Mar
Z.A.P. Mar
Z.A.P. Marl
Z.A.P. Marl
Z.A.P. Mar
Z.A.P. Mar
Z.A.P. Mar
Z.A.P. Mar
Z.A.P. Mar
Z.A.P. Mar
Z.A.P. Marl
Z.A.P. Mar
Z.A.P. Mar
Z.A.P. Mar
Z.A.P. Mar
Z.A.P. Marketing Corp
Z.A.P. Marketing Corp

DocuSign Envelope ID: 0336A23B-F392-4294-9B7E-E8A156F281E7

Z.A.P. Marketing Corp
Z.A.P. Marketing Corp
Z.A.P. Marketing Corp
Z.A.P. Marketing Corp
Z.A.P. Marketing Corp
Z.A.P. Marketing Corp
Z.A.P. Marketing Corp
Z.A.P. Marketing Corp
Z.A.P. Marketing Corp
Z.A.P. Marketing Corp
Z.A.P. Marketing Corp
Z.A.P. Marketing Corp
Z.A.P. Marketing Corp

| vlookup | Customer ID | Enrolled Date | Client Status | Client Stage | Debt Enrolled | Pay Frequency | Payments Made | Payment Summary | # Drafts Cleared | # Drafts Remaining | Total Payments Cleared | Dropped Date |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| #N/A | BATLLC-668121005 | 12/2/2022 | Active File | Processing Flow | 11,847.00 | | 1 | 1 of 30 | 1 | 29 | 254.34 | |
| #N/A | BATLLC-669150887 | 12/5/2022 | Active File | Processing Flow | 12,868.00 | | 1 | 1 of 32 | 1 | 31 | 257.23 | |
| #N/A | BATLLC-669106769 | 12/5/2022 | Active File | Processing Flow | 14,540.00 | | 1 | 1 of 36 | 1 | 35 | 257.94 | |
| #N/A | BATLLC-667551218 | 11/30/2022 | Active File | Processing Flow | 13,617.00 | | 1 | 1 of 30 | 1 | 29 | 277.94 | |
| #N/A | BATLLC-667532891 | 11/30/2022 | Active File | Processing Flow | 6,121.00 | | 1 | 1 of 23 | 1 | 22 | 300.41 | |
| #N/A | BATLLC-667999457 | 12/2/2022 | Active File | Processing Flow | 20,339.00 | | 1 | 1 of 36 | 1 | 35 | 322.37 | |
| #N/A | BATLLC-668240792 | 12/2/2022 | Active File | Processing Flow | 20,360.00 | | 1 | 1 of 36 | 1 | 35 | 322.6 | |
| #N/A | BATLLC-669142778 | 12/6/2022 | Active File | Processing Flow | 14,258.00 | | 1 | 1 of 25 | 1 | 24 | 324.51 | |
| #N/A | BATLLC-665312789 | 11/23/2022 | Active File | Processing Flow | 27,727.00 | | 1 | 1 of 48 | 1 | 47 | 327.44 | |
| #N/A | BATLLC-669122753 | 12/5/2022 | Active File | Processing Flow | 14,416.00 | | 1 | 1 of 36 | 1 | 35 | 330.81 | |
| #N/A | BATLLC-662003489 | 11/16/2022 | Active File | Processing Flow | 19,440.00 | | 1 | 1 of 30 | 1 | 29 | 355.58 | |
| #N/A | BATLLC-665870918 | 11/28/2022 | Active File | Processing Flow | 49,829.00 | | 1 | 1 of 48 | 1 | 47 | 397.43 | |
| #N/A | BATLLC-657600656 | 12/7/2022 | Active File | Processing Flow | 38,989.00 | | 1 | 1 of 36 | 1 | 35 | 399.63 | |
| #N/A | BATLLC-666092378 | 11/28/2022 | Active File | Processing Flow | 37,182.05 | | 1 | 1 of 48 | 1 | 47 | 406.23 | |
| #N/A | BATLLC-659048573 | 11/14/2022 | Active File | Processing Flow | 6,525.00 | | 2 | 2 of 16 | 2 | 14 | 502.7 | |
| #N/A | BATLLC-663980456 | 11/21/2022 | Active File | Processing Flow | 9,479.61 | | 2 | 2 of 24 | 2 | 22 | 508.74 | |
| #N/A | BATLLC-658190828 | 11/9/2022 | Active File | Processing Flow | 5,953.00 | | 2 | 2 of 15 | 2 | 13 | 510.26 | |
| #N/A | BATLLC-659808359 | 11/14/2022 | Active File | Processing Flow | 12,006.00 | | 2 | 2 of 30 | 2 | 28 | 512.92 | |
| #N/A | BATLLC-655238801 | 11/2/2022 | Active File | Processing Flow | 7,260.00 | | 2 | 2 of 18 | 2 | 16 | 515.42 | |
| #N/A | BATLLC-661987718 | 11/16/2022 | Active File | Processing Flow | 15,101.00 | | 2 | 2 of 36 | 2 | 34 | 528.34 | |
| #N/A | BATLLC-653462582 | 10/27/2022 | Active File | Processing Flow | 8,431.00 | | 2 | 2 of 20 | 2 | 18 | 530 | |
| #N/A | BATLLC-665484950 | 11/23/2022 | Active File | Processing Flow | 26,408.00 | | 1 | 1 of 24 | 1 | 23 | 536.51 | |
| #N/A | BATLLC-659320229 | 11/11/2022 | Active File | Processing Flow | 21,251.00 | | 2 | 2 of 36 | 2 | 34 | 546.94 | |
| #N/A | BATLLC-658451036 | 11/9/2022 | Active File | Processing Flow | 16,390.00 | | 2 | 2 of 36 | 2 | 34 | 556.98 | |
| #N/A | BATLLC-657487061 | 11/7/2022 | Active File | Processing Flow | 23,322.00 | | 2 | 2 of 48 | 2 | 46 | 581.46 | |
| #N/A | BATLLC-661863782 | 11/16/2022 | Active File | Processing Flow | 48,557.00 | | 2 | 2 of 48 | 2 | 46 | 597.4 | |
| #N/A | BATLLC-663959816 | 11/22/2022 | Active File | Processing Flow | 24,368.00 | | 2 | 2 of 48 | 2 | 46 | 598.9 | |
| #N/A | BATLLC-663470330 | 11/18/2022 | Active File | Processing Flow | 19,112.00 | | 2 | 2 of 36 | 2 | 34 | 617.48 | |
| #N/A | BATLLC-655984379 | 11/3/2022 | Active File | Processing Flow | 14,637.00 | | 2 | 2 of 24 | 2 | 22 | 680.66 | |
| #N/A | BATLLC-655395329 | 11/2/2022 | Active File | Processing Flow | 9,745.06 | | 2 | 2 of 24 | 2 | 22 | 693.68 | |
| #N/A | BATLLC-658330658 | 11/10/2022 | Active File | Processing Flow | 22,284.00 | | 2 | 2 of 37 | 2 | 34 | 712.96 | |
| #N/A | BATLLC-664483760 | 11/22/2022 | Active File | Processing Flow | 24,404.00 | | 2 | 2 of 36 | 2 | 34 | 735.08 | |
| #N/A | BATLLC-655435514 | 11/2/2022 | Active File | Processing Flow | 6,259.00 | | 3 | 3 of 17 | 3 | 13 | 758.58 | |
| #N/A | BATLLC-655234847 | 11/2/2022 | Active File | Processing Flow | 22,612.00 | | 2 | 2 of 30 | 2 | 28 | 795.74 | |
| #N/A | BATLLC-664148894 | 11/22/2022 | Active File | Processing Flow | 27,978.00 | | 2 | 2 of 36 | 2 | 34 | 814.5 | |
| #N/A | BATLLC-659312933 | 11/16/2022 | Active File | Processing Flow | 30,757.00 | | 2 | 2 of 36 | 2 | 34 | 876.24 | |
| #N/A | BATLLC-656815583 | 11/7/2022 | Active File | Processing Flow | 31,570.00 | | 2 | 2 of 36 | 2 | 34 | 894.32 | |

| vlook | Customer ID | Enrolled Date | Client Status | Client Stage | Debt Enrolled | Pay Frequency | Payments Made | Payment Summary | # Drafts Cleared | # Drafts Remaining | Total Payments Cleared | Dropped Date |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| BATLLC-6S357332 | BATLLC-653573924 | 10/27/2022 | Active File | Processing Flow | 68,953.00 | | | 3 3 of 48 | 3 | 45 | 2,012.97 | |
| BATLLC-65368637 | BATLLC-653686376 | 10/28/2022 | Active File | Processing Flow | 13,027.00 | | | 5 5 of 52 | 5 | 47 | 742 | |
| BATLLC-65373559 | BATLLC-653735597 | 10/28/2022 | NSF | Payment Workflow | 9,184.00 | | | 1 1 of 23 | 1 | 20 | 256.1 | |
| BATLLC-65375692 | BATLLC-653756921 | 10/28/2022 | Active File | Processing Flow | 19,155.00 | | | 1 1 of 36 | 1 | 35 | 309.21 | |
| BATLLC-65411738 | BATLLC-654117389 | 10/31/2022 | Retention Call Required by Resolution Specialist | Retention Workflow | 46,059.00 | | | 0 0 of 36 | 0 | 36 | 0 | |
| BATLLC-65415592 | BATLLC-654155921 | 10/31/2022 | Retention Call Required by Resolution Specialist | Retention Workflow | 7,913.00 | | | 0 0 of 12 | 0 | 9 | 0 | |
| BATLLC-65416999 | BATLLC-654169997 | 11/22/2022 | Active File | Processing Flow | 10,075.00 | | | 3 3 of 24 | 3 | 21 | 792.9 | |
| BATLLC-65418440 | BATLLC-654184403 | 10/31/2022 | Retention Call Required by Resolution Specialist | Retention Workflow | 8,295.00 | | | 2 2 of 21 | 2 | 18 | 508.76 | |
| BATLLC-65419022 | BATLLC-654190226 | 10/31/2022 | Active File | Processing Flow | 27,814.00 | | | 3 3 of 42 | 3 | 37 | 1,173.56 | |
| BATLLC-65420388 | BATLLC-654203888 | 10/31/2022 | Active File | Processing Flow | 14,747.00 | | | 2 2 of 31 | 2 | 28 | 586.02 | |
| BATLLC-65442480 | BATLLC-654424808 | 11/1/2022 | Retention Call Required by Resolution Specialist | Retention Workflow | 31,254.00 | | | 0 0 of 24 | 0 | 22 | 0 | |
| BATLLC-65450496 | BATLLC-654504965 | 11/1/2022 | Retention Call Required by Resolution Specialist | Retention Workflow | 5,374.00 | | | 3 3 of 13 | 3 | 10 | 785.19 | |
| BATLLC-65533992 | BATLLC-655339928 | 11/3/2022 | NSF | Payment Workflow | 13,191.00 | | | 1 1 of 24 | 1 | 22 | 316.23 | |
| BATLLC-65537592 | BATLLC-655375925 | 11/3/2022 | Active File | Processing Flow | 12,948.00 | | | 2 2 of 34 | 2 | 32 | 497.42 | |
| BATLLC-65537995 | BATLLC-655379954 | 11/16/2022 | Retention Call Required by Resolution Specialist | Retention Workflow | 89,989.00 | | | 0 0 of 48 | 0 | 46 | 0 | |
| BATLLC-65548922 | BATLLC-655489220 | 11/4/2022 | Active File | Processing Flow | 29,841.00 | | | 2 2 of 48 | 2 | 46 | 627.94 | |
| BATLLC-65549532 | BATLLC-655495328 | 11/3/2022 | Active File | Processing Flow | 12,153.00 | | | 2 2 of 24 | 2 | 22 | 597.86 | |
| BATLLC-65606897 | BATLLC-656068976 | 11/3/2022 | NSF | Payment Workflow | 48,120.25 | | | 0 0 of 49 | 0 | 47 | 0 | |
| BATLLC-65618669 | BATLLC-656186693 | 11/3/2022 | Active File | Processing Flow | 24,802.00 | | | 2 2 of 48 | 2 | 46 | 542.52 | |
| BATLLC-65623925 | BATLLC-656239253 | 11/9/2022 | Retention Call Required by Resolution Specialist | Retention Workflow | 58,802.00 | | | 0 0 of 48 | 0 | 45 | 0 | |
| BATLLC-65634057 | BATLLC-656340575 | 11/4/2022 | NSF | Payment Workflow | 9,547.00 | | | 0 0 of 12 | 0 | 9 | 0 | |
| BATLLC-65647343 | BATLLC-656473436 | 11/7/2022 | NSF | Payment Workflow | 7,945.00 | | | 1 1 of 13 | 1 | 11 | 361.21 | |
| BATLLC-65749242 | BATLLC-657492428 | 11/7/2022 | Active File | Processing Flow | 41,519.00 | | | 2 2 of 48 | 2 | 46 | 884.74 | |
| BATLLC-65760546 | BATLLC-657605468 | 11/8/2022 | NSF | Payment Workflow | 33,827.00 | | | 0 0 of 50 | 0 | 47 | 0 | |
| BATLLC-65768258 | BATLLC-657682583 | 11/8/2022 | Retention Call Required by Resolution Specialist | Retention Workflow | 10,905.00 | | | 1 1 of 28 | 1 | 25 | 252.17 | |
| BATLLC-65858736 | BATLLC-658587365 | 11/10/2022 | Retention NSF Review | Retention Workflow | 18,866.00 | | | 0 0 of 36 | 0 | 35 | 0 | |
| BATLLC-65907990 | BATLLC-659079905 | 11/10/2022 | Paused Per Legal - Payment Not Paused | Legal Workflow | 12,540.00 | | | 2 2 of 32 | 2 | 30 | 506.26 | |
| BATLLC-65912128 | BATLLC-659121287 | 11/10/2022 | Active File | Processing Flow | 9,239.00 | | | 2 2 of 25 | 2 | 22 | 500.72 | |
| BATLLC-65925983 | BATLLC-659259830 | 11/11/2022 | Active File | Processing Flow | 28,044.00 | | | 0 0 of 48 | 0 | 48 | 0 | |
| BATLLC-65903367 | BATLLC-659303672 | 11/11/2022 | Active File | Processing Flow | 32,331.00 | | | 1 1 of 48 | 1 | 47 | 286.21 | |
| BATLLC-65932266 | BATLLC-659322665 | 1/19/2023 | Educational Outreach | Processing Flow | 10,649.24 | | | 0 0 of 14 | 0 | 14 | 0 | |
| BATLLC-66045935 | BATLLC-660459353 | 11/15/2022 | Paused Per Legal - Payment Not Paused | Legal Workflow | 29,273.90 | | | 2 2 of 49 | 2 | 46 | 685.33 | |
| BATLLC-66063584 | BATLLC-660635843 | 11/15/2022 | Active File | Processing Flow | 15,909.00 | | | 0 0 of 37 | 0 | 35 | 0 | |
| BATLLC-66148773 | BATLLC-661487738 | 11/15/2022 | Active File | Processing Flow | 15,663.00 | | | 2 2 of 36 | 2 | 34 | 450.48 | |
| BATLLC-66154464 | BATLLC-661544645 | 11/15/2022 | Active File | Processing Flow | 9,563.00 | | | 1 1 of 24 | 1 | 23 | 255.76 | |
| BATLLC-66156397 | BATLLC-661563977 | 11/15/2022 | Active File | Processing Flow | 6,419.00 | | | 1 1 of 18 | 1 | 0 | 256.86 | |
| BATLLC-66156702 | BATLLC-661567025 | 11/15/2022 | Active File | Processing Flow | 13,209.00 | | | 2 2 of 24 | 2 | 22 | 633.06 | |
| BATLLC-66162288 | BATLLC-661622885 | 11/16/2022 | Retention Call Required by Resolution Specialist | Retention Workflow | 5,952.00 | | | 0 0 of 15 | 0 | 13 | 0 | |
| BATLLC-66162670 | BATLLC-661626701 | 11/15/2022 | Active File | Processing Flow | 19,423.00 | | | 2 2 of 24 | 2 | 22 | 840.2 | |
| BATLLC-66169757 | BATLLC-661697573 | 11/16/2022 | NSF | Payment Workflow | 6,369.00 | | | 0 0 of 16 | 0 | 14 | 0 | |
| BATLLC-66172246 | BATLLC-661722464 | 11/16/2022 | Active File | Processing Flow | 7,052.00 | | | 1 1 of 19 | 1 | 17 | 253.09 | |
| BATLLC-66183135 | BATLLC-661831352 | 11/16/2022 | Active File | Processing Flow | 16,925.00 | | | 1 1 of 40 | 1 | 39 | 265.63 | |
| BATLLC-66186888 | BATLLC-661868885 | 11/16/2022 | Active File | Processing Flow | 16,973.00 | | | 2 2 of 36 | 2 | 34 | 569.94 | |
| BATLLC-66205199 | BATLLC-662051993 | 11/17/2022 | Active File | Processing Flow | 14,067.00 | | | 2 2 of 36 | 2 | 34 | 505.36 | |
| BATLLC-66211699 | BATLLC-662116997 | 11/17/2022 | NSF | Payment Workflow | 8,697.00 | | | 0 0 of 22 | 0 | 20 | 0 | |

| Account | Date / Status | Workflow | Amount | X of Y | | | |
|---|---|---|---|---|---|---|---|
| BATLLC-66585602 BATLLC-665856023 | 11/28/2022 NSF | Payment Workflow | 13,934.00 | 0 0 of 36 | 0 | 34 | 0 |
| BATLLC-66589957 BATLLC-665899577 | 11/28/2022 Active File | Processing Flow | 20,972.00 | 2 2 of 48 | 2 | 46 | 498.6 |
| BATLLC-66596027 BATLLC-665960273 | 11/28/2022 Active File | Processing Flow | 9,773.00 | 2 2 of 24 | 2 | 23 | 505.5 |
| BATLLC-66672028 BATLLC-666720284 | 11/29/2022 Retention Call Required by Resolution Specialist | Retention Workflow | 14,238.00 | 0 0 of 30 | 0 | 28 | 0 |
| BATLLC-66743696 BATLLC-667436969 | 11/29/2022 NSF | Payment Workflow | 18,319.00 | 0 0 of 47 | 0 | 46 | 0 |
| BATLLC-66745366 BATLLC-667453667 | 11/29/2022 Active File | Processing Flow | 22,216.00 | 2 2 of 30 | 2 | 28 | 794.89 |
| BATLLC-66746484 BATLLC-667464848 | 11/30/2022 Active File | Processing Flow | 42,580.00 | 2 2 of 42 | 2 | 40 | 1,003.80 |
| BATLLC-66753258 BATLLC-667532585 | 11/30/2022 Active File | Processing Flow | 12,269.00 | 2 2 of 62 | 2 | 60 | 254.68 |
| BATLLC-66758996 BATLLC-667589963 | 11/30/2022 Active File | Processing Flow | 16,863.98 | 2 2 of 25 | 2 | 23 | 716.4 |
| BATLLC-66763492 BATLLC-667634921 | 11/30/2022 Active File | Processing Flow | 23,902.00 | 3 3 of 96 | 3 | 93 | 443.34 |
| BATLLC-66763846 BATLLC-667638467 | 11/30/2022 Active File | Processing Flow | 36,028.00 | 2 2 of 30 | 2 | 28 | 1,153.50 |
| BATLLC-66783825 BATLLC-667838258 | 12/1/2022 Active File | Processing Flow | 16,146.00 | 2 2 of 36 | 2 | 34 | 551.56 |
| BATLLC-66784236 BATLLC-667842368 | 12/1/2022 Educational Outreach Missed | Processing Flow | 80,430.00 | 1 1 of 48 | 1 | 47 | 766.63 |
| BATLLC-66785528 BATLLC-667855280 | 12/1/2022 Active File | Processing Flow | 92,198.00 | 3 3 of 97 | 3 | 93 | 747.79 |
| BATLLC-66801458 BATLLC-668014583 | 12/1/2022 Active File | Processing Flow | 19,825.00 | 1 1 of 49 | 1 | 47 | 261.59 |
| BATLLC-66802892 BATLLC-668028920 | 12/1/2022 NSF | Payment Workflow | 19,735.00 | 1 1 of 36 | 1 | 34 | 315.66 |
| BATLLC-66824070 BATLLC-668240702 | 12/2/2022 NSF | Payment Workflow | 7,902.00 | 0 0 of 21 | 0 | 19 | 0 |
| BATLLC-66831530 BATLLC-668315309 | 12/2/2022 NSF | Payment Workflow | 27,659.00 | 0 0 of 36 | 0 | 34 | 0 |
| BATLLC-66910832 BATLLC-669108329 | 12/5/2022 NSF | Payment Workflow | 30,253.00 | 1 1 of 36 | 1 | 34 | 440.89 |
| BATLLC-66919205 BATLLC-669192059 | 12/6/2022 NSF | Payment Workflow | 10,530.00 | 0 0 of 36 | 0 | 35 | 0 |
| BATLLC-66919682 BATLLC-669196829 | 12/7/2022 Active File | Processing Flow | 33,504.00 | 1 1 of 51 | 1 | 48 | 400.58 |
| BATLLC-66920258 BATLLC-669202583 | 12/5/2022 NSF | Payment Workflow | 22,606.00 | 0 0 of 37 | 0 | 35 | 0 |
| BATLLC-66954389 BATLLC-669543896 | 12/5/2022 Active File | Processing Flow | 10,093.62 | 3 3 of 48 | 3 | 45 | 396.9 |
| BATLLC-67030020 BATLLC-670300205 | 12/6/2022 Active File | Processing Flow | 9,899.00 | 0 0 of 25 | 0 | 25 | 0 |
| BATLLC-67050823 BATLLC-670508231 | 12/19/2022 Active File | Processing Flow | 14,265.64 | 1 1 of 37 | 1 | 36 | 250.6 |
| BATLLC-67085141 BATLLC-670851416 | 12/6/2022 NSF | Payment Workflow | 10,943.00 | 0 0 of 29 | 0 | 27 | 0 |
| BATLLC-67168304 BATLLC-671683046 | 12/6/2022 Affiliate Review | Retention Workflow | 16,336.00 | 0 0 of 25 | 0 | 24 | 0 |
| BATLLC-67190479 BATLLC-671904791 | 12/7/2022 Active File | Processing Flow | 16,268.00 | 2 2 of 84 | 2 | 82 | 212.58 |
| BATLLC-67208319 BATLLC-672083198 | 12/9/2022 Active File | Processing Flow | 4,866.00 | 1 1 of 12 | 1 | 11 | 258.58 |
| BATLLC-67240964 BATLLC-672409640 | 12/9/2022 Retention Call Required by Resolution Specialist | Retention Workflow | 10,517.00 | 0 0 of 54 | 0 | 51 | 0 |
| BATLLC-67244285 BATLLC-672442859 | 12/13/2022 Affiliate Review | Retention Workflow | 9,245.78 | 0 0 of 25 | 0 | 24 | 0 |
| BATLLC-67244658 BATLLC-672446588 | 12/12/2022 Retention Call Required by Resolution Specialist | Retention Workflow | 15,176.00 | 0 0 of 25 | 0 | 23 | 0 |
| BATLLC-67249798 BATLLC-672497987 | 12/12/2022 Active File | Processing Flow | 35,401.00 | 1 1 of 48 | 1 | 47 | 391.39 |
| BATLLC-67252192 BATLLC-672521927 | 12/12/2022 Active File | Processing Flow | 17,929.00 | 1 1 of 35 | 1 | 34 | 250.06 |
| BATLLC-67260221 BATLLC-672602219 | 12/13/2022 Educational Outreach | Processing Flow | 25,002.00 | 0 0 of 48 | 0 | 48 | 0 |
| BATLLC-67282688 BATLLC-672826880 | 12/13/2022 Active File | Processing Flow | 32,085.00 | 1 1 of 36 | 1 | 35 | 452.88 |
| BATLLC-67288859 BATLLC-672888596 | 12/13/2022 NSF | Payment Workflow | 16,733.00 | 0 0 of 43 | 0 | 42 | 0 |
| BATLLC-67379021 BATLLC-673790213 | 12/14/2022 Active File | Processing Flow | 11,641.00 | 0 0 of 28 | 0 | 28 | 0 |
| BATLLC-67381450 BATLLC-673814504 | 12/15/2022 NSF | Payment Workflow | 173,255.00 | 0 0 of 48 | 0 | 47 | 0 |
| BATLLC-67386489 BATLLC-673864895 | 12/14/2022 Active File | Processing Flow | 5,909.00 | 0 0 of 15 | 0 | 14 | 0 |
| BATLLC-67398319 BATLLC-673983191 | 12/19/2022 Active File | Processing Flow | 15,170.00 | 1 1 of 39 | 1 | 37 | 256.06 |
| BATLLC-67408871 BATLLC-674088719 | 12/17/2022 Paused Per Legal - Payment Not Paused | Legal Workflow | 26,554.00 | 1 1 of 48 | 1 | 47 | 262.34 |
| BATLLC-67422809 BATLLC-674228096 | 12/14/2022 Payment Change Required | Payment Workflow | 26,259.00 | 0 0 of 48 | 0 | 47 | 0 |
| BATLLC-67473750 BATLLC-674737502 | 12/7/2022 Active File | Processing Flow | 14,463.00 | 1 1 of 37 | 1 | 36 | 252.74 |
| BATLLC-67473805 BATLLC-674738054 | 12/13/2022 Active File | Processing Flow | 11,924.00 | 1 1 of 30 | 1 | 29 | 255.37 |
| BATLLC-67474013 BATLLC-674740133 | 12/16/2022 Active File | Processing Flow | 9,067.00 | 1 1 of 23 | 1 | 22 | |

| Account | Date | Status | Type | Amount | | | | |
|---|---|---|---|---|---|---|---|---|
| BATLLC-67613061 BATLLC-676130618 | 12/20/2022 | Active File | Processing Flow | 9,549.00 | 0 0 of 24 | 0 | 23 | 0 |
| BATLLC-67619848 BATLLC-676198484 | 12/22/2022 | Active File | Processing Flow | 12,521.00 | 2 2 of 64 | 2 | 62 | 252.9 |
| BATLLC-67625003 BATLLC-676250033 | 12/17/2022 | Active File | Processing Flow | 8,381.00 | 1 1 of 21 | 1 | 20 | 256.02 |
| BATLLC-67626372 BATLLC-676263728 | 12/21/2022 | NSF | Payment Workflow | 4,307.00 | 0 0 of 11 | 0 | 10 | 0 |
| BATLLC-67626608 BATLLC-676266089 | 12/21/2022 | NSF | Payment Workflow | 10,643.00 | 0 0 of 27 | 0 | 26 | 0 |
| BATLLC-67627416 BATLLC-676274168 | 12/20/2022 | NSF | Payment Workflow | 10,136.00 | 0 0 of 25 | 0 | 24 | 0 |
| BATLLC-67627482 BATLLC-676274825 | 12/16/2022 | Active File | Processing Flow | 4,447.00 | 1 1 of 22 | 1 | 21 | 129.04 |
| BATLLC-67627799 BATLLC-676277993 | 12/21/2022 | Active File | Processing Flow | 7,518.00 | 1 1 of 14 | 1 | 13 | 311.18 |
| BATLLC-67628478 BATLLC-676284788 | 12/21/2022 | Active File | Processing Flow | 6,244.00 | 0 0 of 16 | 0 | 16 | 0 |
| BATLLC-67629372 BATLLC-676293725 | 12/20/2022 | NSF | Payment Workflow | 6,356.00 | 0 0 of 16 | 0 | 15 | 0 |
| BATLLC-67632476 BATLLC-676324766 | 12/21/2022 | NSF | Payment Workflow | 17,112.00 | 0 0 of 44 | 0 | 43 | 0 |
| BATLLC-67632885 BATLLC-676328855 | 12/21/2022 | NSF | Payment Workflow | 5,661.00 | 0 0 of 14 | 0 | 13 | 0 |
| BATLLC-67633305 BATLLC-676333052 | 12/21/2022 | NSF | Payment Workflow | 14,688.00 | 0 0 of 36 | 0 | 0 | 0 |
| BATLLC-67633379 BATLLC-676333793 | 12/21/2022 | NSF | Payment Workflow | 24,823.00 | 0 0 of 48 | 0 | 47 | 0 |
| BATLLC-67633470 BATLLC-676334708 | 12/20/2022 | NSF | Payment Workflow | 8,582.00 | 0 0 of 22 | 0 | 0 | 0 |
| BATLLC-67689701 BATLLC-676897016 | 12/21/2022 | Active File | Processing Flow | 43,726.00 | 0 0 of 48 | 0 | 48 | 0 |
| BATLLC-67690891 BATLLC-676908917 | 12/22/2022 | Active File | Processing Flow | 8,524.00 | 0 0 of 22 | 0 | 22 | 0 |
| BATLLC-67690989 BATLLC-676909895 | 12/22/2022 | Active File | Processing Flow | 9,009.00 | 0 0 of 22 | 0 | 0 | 0 |
| BATLLC-67691288 BATLLC-676912883 | 12/23/2022 | Active File | Processing Flow | 40,662.00 | 0 0 of 50 | 0 | 49 | 0 |
| BATLLC-67693516 BATLLC-676935167 | 12/21/2022 | Active File | Processing Flow | 16,988.00 | 0 0 of 44 | 0 | 44 | 0 |
| BATLLC-67694589 BATLLC-676945898 | 12/21/2022 | Active File | Processing Flow | 5,905.02 | 1 1 of 12 | 1 | 11 | 334.21 |
| BATLLC-67705536 BATLLC-677055365 | 12/23/2022 | Active File | Processing Flow | 26,968.00 | 1 1 of 36 | 1 | 35 | 321.11 |
| BATLLC-67737515 BATLLC-677375156 | 12/22/2022 | Active File | Processing Flow | 6,033.00 | 1 1 of 15 | 1 | 14 | 257.26 |
| BATLLC-67757748 BATLLC-677577485 | 12/23/2022 | Active File | Processing Flow | 26,778.00 | 1 1 of 48 | 1 | 47 | 319.53 |
| BATLLC-67761331 BATLLC-677613317 | 12/22/2022 | Active File | Processing Flow | 16,183.53 | 1 1 of 40 | 1 | 39 | 258.22 |
| BATLLC-67781491 BATLLC-677814914 | 12/23/2022 | Active File | Processing Flow | 40,921.00 | 1 1 of 40 | 1 | 39 | 403.29 |
| BATLLC-67794039 BATLLC-677940398 | 12/23/2022 | NSF | Payment Workflow | 6,353.00 | 0 0 of 16 | 0 | 0 | 0 |
| BATLLC-67794851 BATLLC-677948513 | 12/21/2022 | Active File | Processing Flow | 7,962.00 | 0 0 of 30 | 0 | 30 | 0 |
| BATLLC-67795762 BATLLC-677957621 | 12/23/2022 | NSF | Payment Workflow | 32,788.00 | 0 0 of 48 | 0 | 47 | 0 |
| BATLLC-67797060 BATLLC-677970608 | 12/23/2022 | NSF | Payment Workflow | 51,000.00 | 0 0 of 48 | 0 | 47 | 0 |
| BATLLC-67801156 BATLLC-678011561 | 12/28/2022 | NSF | Payment Workflow | 11,294.00 | 0 0 of 6 | 0 | 5 | 0 |
| BATLLC-67804037 BATLLC-678040373 | 12/27/2022 | Active File | Processing Flow | 9,673.00 | 0 0 of 37 | 0 | 37 | 0 |
| BATLLC-67807414 BATLLC-678074141 | 12/27/2022 | Educational Outreach Missed | Processing Flow | 7,804.00 | 0 0 of 20 | 0 | 20 | 0 |
| BATLLC-67809677 BATLLC-678096770 | 12/28/2022 | Educational Outreach Missed | Processing Flow | 23,974.00 | 0 0 of 48 | 0 | 48 | 0 |
| BATLLC-67809745 BATLLC-678097451 | 12/23/2022 | Active File | Processing Flow | 18,386.00 | 1 1 of 42 | 1 | 41 | 271.48 |
| BATLLC-67810476 BATLLC-678104762 | 12/27/2022 | Active File | Processing Flow | 16,547.00 | 1 1 of 24 | 1 | 23 | 372.16 |
| BATLLC-67817400 BATLLC-678174005 | 12/29/2022 | Active File | Processing Flow | 22,812.00 | 0 0 of 49 | 0 | 48 | 0 |
| BATLLC-67821053 BATLLC-678210539 | 12/28/2022 | Active File | Processing Flow | 20,829.00 | 1 1 of 48 | 1 | 47 | 200.53 |
| BATLLC-67822990 BATLLC-678229901 | 12/28/2022 | Active File | Processing Flow | 4,673.00 | 1 1 of 14 | 0 | 0 | 229.89 |
| BATLLC-67829682 BATLLC-678296828 | 12/28/2022 | Active File | Processing Flow | 24,006.00 | 0 0 of 48 | 0 | 48 | 0 |
| BATLLC-67829729 BATLLC-678297296 | 1/3/2023 | Active File | Processing Flow | 5,074.00 | 0 0 of 12 | 0 | 12 | 0 |
| BATLLC-67830449 BATLLC-678304493 | 12/27/2022 | Active File | Processing Flow | 18,935.00 | 1 1 of 36 | 0 | 0 | 254.17 |
| BATLLC-67830653 BATLLC-678306536 | 12/28/2022 | NSF | Payment Workflow | 10,731.00 | 0 0 of 41 | 0 | 40 | 0 |
| BATLLC-67843457 BATLLC-678434570 | 12/28/2022 | Active File | Processing Flow | 9,050.00 | 0 0 of 23 | 0 | 23 | 0 |
| BATLLC-67844068 BATLLC-678440684 | 12/27/2022 | Active File | Processing Flow | 12,084.00 | 1 1 of 33 | 1 | 31 | 247.43 |
| BATLLC-67845883 BATLLC-678458831 | 1/20/2023 | Active File | Processing Flow | 6,023.00 | 0 0 of 16 | 0 | 16 | 0 |

| Account | Date | Status | Workflow | Amount | | | | |
|---|---|---|---|---|---|---|---|---|
| BATLLC-68141552 BATLLC-681415529 | 12/30/2022 | Active File | Processing Flow | 11,953.00 | 1 1 of 30 | 1 | 29 | 255.75 |
| BATLLC-68149350 BATLLC-681493508 | 12/29/2022 | Active File | Processing Flow | 5,758.00 | 1 1 of 18 | 0 | 0 | 249.93 |
| BATLLC-68153082 BATLLC-681530825 | 12/29/2022 | Educational Outreach Missed | Processing Flow | 18,130.00 | 1 1 of 36 | 1 | 35 | 252.5 |
| BATLLC-68154836 BATLLC-681548360 | 12/29/2022 | Active File | Processing Flow | 8,814.14 | 0 0 of 23 | 0 | 23 | 0 |
| BATLLC-68155463 BATLLC-681554630 | 12/29/2022 | Educational Outreach | Processing Flow | 14,105.00 | 1 1 of 36 | 1 | 35 | 253.1 |
| BATLLC-68162568 BATLLC-681625682 | 12/30/2022 | Paused Per Legal - Payment Not Paused | Legal Workflow | 7,798.00 | 0 0 of 20 | 0 | 20 | 0 |
| BATLLC-68163064 BATLLC-681630644 | 12/29/2022 | Active File | Processing Flow | 6,271.00 | 1 1 of 16 | 1 | 15 | 201.05 |
| BATLLC-68163966 BATLLC-681639662 | 12/29/2022 | Active File | Processing Flow | 22,585.00 | 1 1 of 48 | 1 | 47 | 284.59 |
| BATLLC-68164005 BATLLC-681640052 | 12/29/2022 | Active File | Processing Flow | 15,725.00 | 1 1 of 36 | 1 | 35 | 271.1 |
| BATLLC-68165519 BATLLC-681655193 | 12/29/2022 | Active File | Processing Flow | 12,293.00 | 1 1 of 32 | 1 | 31 | 250.04 |
| BATLLC-68172588 BATLLC-681725885 | 12/30/2022 | Affiliate Review | Retention Workflow | 26,157.00 | 1 1 of 48 | 1 | 47 | 314.36 |
| BATLLC-68173742 BATLLC-681737426 | 1/12/2023 | Educational Outreach | Processing Flow | 11,685.06 | 1 1 of 30 | 1 | 29 | 252.18 |
| BATLLC-68181911 BATLLC-681819110 | 12/30/2022 | Educational Outreach | Processing Flow | 72,988.00 | 1 1 of 48 | 1 | 47 | 656.42 |
| BATLLC-68182285 BATLLC-681822851 | 12/30/2022 | Educational Outreach | Processing Flow | 18,633.00 | 0 0 of 36 | 0 | 36 | 0 |
| BATLLC-68190580 BATLLC-681905804 | 12/30/2022 | Educational Outreach Missed | Processing Flow | 6,106.00 | 0 0 of 16 | 0 | 0 | 0 |
| BATLLC-68190921 BATLLC-681909215 | 1/5/2023 | Active File | Processing Flow | 14,077.36 | 1 1 of 67 | 1 | 66 | 132.23 |
| BATLLC-68197451 BATLLC-681974513 | 12/30/2022 | Active File | Processing Flow | 16,867.11 | 1 1 of 36 | 1 | 35 | 283.79 |
| BATLLC-68207249 BATLLC-682072493 | 1/4/2023 | Educational Outreach Missed | Processing Flow | 29,804.00 | 0 0 of 48 | 0 | 48 | 0 |
| BATLLC-68209060 BATLLC-682090601 | 12/30/2022 | Active File | Processing Flow | 33,577.00 | 0 0 of 48 | 0 | 48 | 0 |
| BATLLC-68406345 BATLLC-684063455 | 1/5/2023 | Update Banking Info | Payment Workflow | 15,303.00 | 1 1 of 36 | 1 | 35 | 266.41 |
| BATLLC-68409138 BATLLC-684091382 | 1/5/2023 | Active File | Processing Flow | 5,096.00 | 1 1 of 13 | 1 | 12 | 253.18 |
| BATLLC-68413203 BATLLC-684132038 | 1/3/2023 | Active File | Processing Flow | 20,837.00 | 0 0 of 33 | 0 | 32 | 0 |
| BATLLC-68429771 BATLLC-684297710 | 1/3/2023 | Educational Outreach Missed | Processing Flow | 8,671.00 | 1 1 of 22 | 1 | 21 | 254.03 |
| BATLLC-68456750 BATLLC-684567500 | 1/3/2023 | Active File | Processing Flow | 12,454.00 | 0 0 of 32 | 0 | 32 | 0 |
| BATLLC-68466812 BATLLC-684668120 | 1/4/2023 | NSF | Payment Workflow | 12,138.26 | 0 0 of 31 | 0 | 30 | 0 |
| BATLLC-68468557 BATLLC-684685574 | 1/4/2023 | Educational Outreach Missed | Processing Flow | 14,923.00 | 0 0 of 32 | 0 | 32 | 0 |
| BATLLC-68535125 BATLLC-685351253 | 1/5/2023 | Active File | Processing Flow | 14,194.90 | 1 1 of 35 | 1 | 34 | 258.6 |
| BATLLC-68602434 BATLLC-686024348 | 1/4/2023 | NSF | Payment Workflow | 28,484.00 | 0 0 of 45 | 0 | 44 | 0 |
| BATLLC-68620247 BATLLC-686202473 | 1/4/2023 | Active File | Processing Flow | 6,841.00 | 0 0 of 17 | 0 | 0 | 0 |
| BATLLC-68643642 BATLLC-686436428 | 1/4/2023 | Educational Outreach | Processing Flow | 8,873.00 | 1 1 of 23 | 1 | 22 | 202.5 |
| BATLLC-68645801 BATLLC-686458016 | 1/4/2023 | Active File | Processing Flow | 9,028.00 | 0 0 of 23 | 0 | 23 | 0 |
| BATLLC-68650151 BATLLC-686501516 | 1/5/2023 | Active File | Processing Flow | 23,007.00 | 1 1 of 48 | 1 | 47 | 288.11 |
| BATLLC-68665731 BATLLC-686657315 | 1/5/2023 | NSF | Payment Workflow | 7,352.00 | 0 0 of 19 | 0 | 0 | 0 |
| BATLLC-68666240 BATLLC-686662409 | 1/6/2023 | Active File | Processing Flow | 8,469.00 | 0 0 of 22 | 0 | 22 | 0 |
| BATLLC-68666643 BATLLC-686666435 | 1/6/2023 | Active File | Processing Flow | 6,565.00 | 0 0 of 25 | 0 | 0 | 0 |
| BATLLC-68667106 BATLLC-686671061 | 1/6/2023 | Educational Outreach | Processing Flow | 6,760.00 | 0 0 of 25 | 0 | 0 | 0 |
| BATLLC-68668422 BATLLC-686684228 | 1/5/2023 | Active File | Processing Flow | 17,935.00 | 0 0 of 36 | 0 | 36 | 0 |
| BATLLC-68673061 BATLLC-686730611 | 1/6/2023 | Active File | Processing Flow | 10,864.00 | 0 0 of 18 | 0 | 18 | 0 |
| BATLLC-68677347 BATLLC-686773478 | 1/5/2023 | Active File | Processing Flow | 26,011.00 | 1 1 of 48 | 1 | 47 | 313.14 |
| BATLLC-68677900 BATLLC-686779007 | 1/5/2023 | Educational Outreach Missed | Processing Flow | 6,558.00 | 0 0 of 25 | 0 | 25 | 0 |
| BATLLC-68680768 BATLLC-686807684 | 1/5/2023 | Active File | Processing Flow | 20,133.00 | 0 0 of 48 | 0 | 48 | 0 |
| BATLLC-68683960 BATLLC-686839607 | 1/6/2023 | Active File | Processing Flow | 6,253.00 | 0 0 of 23 | 0 | 0 | 0 |
| BATLLC-68699677 BATLLC-686996774 | 1/6/2023 | Active File | Processing Flow | 8,968.00 | 0 0 of 20 | 0 | 20 | 0 |
| BATLLC-68700314 BATLLC-687003143 | 1/6/2023 | Active File | Processing Flow | 23,251.00 | 0 0 of 48 | 0 | 48 | 0 |
| BATLLC-68700641 BATLLC-687006413 | 1/6/2023 | Active File | Processing Flow | 7,284.00 | 1 1 of 18 | 1 | 17 | 210.06 |
| BATLLC-68704203 BATLLC-687042038 | 1/9/2023 | Active File | Processing Flow | 6,475.00 | 0 0 of 24 | 0 | 24 | 0 |

| Account | Date | Type | Workflow | Amount | | | | |
|---|---|---|---|---|---|---|---|---|
| BATLLC-69003206 BATLLC-690032063 | 1/11/2023 | Educational Outreach Missed | Processing Flow | 21,853.00 | 0 0 of 48 | 0 | 0 | 0 |
| BATLLC-69006474 BATLLC-690064742 | 1/10/2023 | Educational Outreach Missed | Processing Flow | 6,210.00 | 0 0 of 17 | 0 | 0 | 0 |
| BATLLC-69007284 BATLLC-690072842 | 1/12/2023 | Educational Outreach | Processing Flow | 11,327.00 | 0 0 of 60 | 0 | 60 | 0 |
| BATLLC-69007845 BATLLC-690078452 | 1/10/2023 | Educational Outreach Missed | Processing Flow | 8,297.00 | 0 0 of 32 | 0 | 0 | 0 |
| BATLLC-69067373 BATLLC-690673736 | 1/11/2023 | NSF | Payment Workflow | 19,881.00 | 0 0 of 39 | 0 | 38 | 0 |
| BATLLC-69067794 BATLLC-690677945 | 1/11/2023 | Affiliate Review | Retention Workflow | 15,884.00 | 0 0 of 41 | 0 | 41 | 0 |
| BATLLC-69073965 BATLLC-690739655 | 1/13/2023 | Educational Outreach | Processing Flow | 15,353.00 | 1 1 of 30 | 1 | 29 | 252.9 |
| BATLLC-69078398 BATLLC-690783983 | 1/11/2023 | Active File | Processing Flow | 16,552.00 | 0 0 of 42 | 0 | 0 | 0 |
| BATLLC-69081272 BATLLC-690812723 | 1/11/2023 | Educational Outreach Missed | Processing Flow | 7,128.00 | 0 0 of 18 | 0 | 0 | 0 |
| BATLLC-69085881 BATLLC-690858815 | 1/12/2023 | Active File | Processing Flow | 52,334.00 | 0 0 of 48 | 0 | 48 | 0 |
| BATLLC-69092649 BATLLC-690926492 | 1/11/2023 | Educational Outreach | Processing Flow | 6,085.00 | 0 0 of 23 | 0 | 0 | 0 |
| BATLLC-69098963 BATLLC-690989630 | 1/14/2023 | Active File | Processing Flow | 9,613.00 | 0 0 of 36 | 0 | 0 | 0 |
| BATLLC-69107379 BATLLC-691037795 | 1/11/2023 | Active File | Processing Flow | 7,140.00 | 0 0 of 18 | 0 | 0 | 0 |
| BATLLC-69145775 BATLLC-691457750 | 1/13/2023 | Active File | Processing Flow | 88,604.00 | 0 0 of 36 | 0 | 36 | 0 |
| BATLLC-69148213 BATLLC-691482137 | 1/12/2023 | Active File | Processing Flow | 20,639.00 | 0 0 of 41 | 0 | 0 | 0 |
| BATLLC-69156417 BATLLC-691564172 | 1/12/2023 | Educational Outreach | Processing Flow | 9,032.00 | 0 0 of 21 | 0 | 21 | 0 |
| BATLLC-69157379 BATLLC-691573793 | 1/12/2023 | Educational Outreach Missed | Processing Flow | 6,109.00 | 0 0 of 16 | 0 | 0 | 0 |
| BATLLC-69157885 BATLLC-691578854 | 1/12/2023 | Educational Outreach | Processing Flow | 16,047.00 | 0 0 of 41 | 0 | 0 | 0 |
| BATLLC-69157945 BATLLC-691579451 | 1/12/2023 | Active File | Processing Flow | 21,849.00 | 0 0 of 48 | 0 | 48 | 0 |
| BATLLC-69158882 BATLLC-691588829 | 1/12/2023 | Educational Outreach | Processing Flow | 6,153.00 | 0 0 of 23 | 0 | 23 | 0 |
| BATLLC-69164271 BATLLC-691642712 | 1/12/2023 | Active File | Processing Flow | 37,856.00 | 0 0 of 24 | 0 | 0 | 0 |
| BATLLC-69165305 BATLLC-691653059 | 1/12/2023 | Active File | Processing Flow | 7,102.00 | 0 0 of 27 | 0 | 0 | 0 |
| BATLLC-69165774 BATLLC-691657745 | 1/12/2023 | Educational Outreach | Processing Flow | 10,656.00 | 0 0 of 36 | 0 | 36 | 0 |
| BATLLC-69165947 BATLLC-691659479 | 1/12/2023 | Educational Outreach | Processing Flow | 7,037.00 | 0 0 of 25 | 0 | 25 | 0 |
| BATLLC-69173286 BATLLC-691732862 | 1/13/2023 | Active File | Processing Flow | 14,638.00 | 0 0 of 29 | 0 | 29 | 0 |
| BATLLC-69276112 BATLLC-692761124 | 1/13/2023 | Active File | Processing Flow | 16,316.00 | 1 1 of 84 | 1 | 83 | 125.89 |
| BATLLC-69316229 BATLLC-693162293 | 1/18/2023 | Educational Outreach | Processing Flow | 19,425.00 | 0 0 of 24 | 0 | 24 | 0 |
| BATLLC-69316748 BATLLC-693167489 | 1/17/2023 | Educational Outreach | Processing Flow | 23,592.00 | 0 0 of 48 | 0 | 48 | 0 |
| BATLLC-69319063 BATLLC-693190631 | 1/19/2023 | Educational Outreach | Processing Flow | 10,224.00 | 0 0 of 26 | 0 | 0 | 0 |
| BATLLC-69327068 BATLLC-693270683 | 1/17/2023 | Educational Outreach | Processing Flow | 17,955.00 | 0 0 of 24 | 0 | 0 | 0 |
| BATLLC-69328545 BATLLC-693285455 | 1/17/2023 | Educational Outreach | Processing Flow | 40,000.00 | 0 0 of 48 | 0 | 48 | 0 |
| BATLLC-69330832 BATLLC-693308321 | 1/20/2023 | Active File | Processing Flow | 10,483.00 | 0 0 of 32 | 0 | 32 | 0 |
| BATLLC-69331792 BATLLC-693317927 | 1/20/2023 | Educational Outreach Missed | Processing Flow | 7,967.00 | 0 0 of 19 | 0 | 0 | 0 |
| BATLLC-69334569 BATLLC-693345695 | 1/17/2023 | Active File | Processing Flow | 33,691.00 | 0 0 of 48 | 0 | 48 | 0 |
| BATLLC-69335761 BATLLC-693357614 | 1/17/2023 | Active File | Processing Flow | 16,057.00 | 0 0 of 44 | 0 | 44 | 0 |
| BATLLC-69338954 BATLLC-693389540 | 1/17/2023 | Educational Outreach | Processing Flow | 14,084.00 | 0 0 of 36 | 0 | 36 | 0 |
| BATLLC-69339226 BATLLC-693392267 | 1/20/2023 | Educational Outreach Missed | Processing Flow | 23,118.00 | 0 0 of 38 | 0 | 38 | 0 |
| BATLLC-69339322 BATLLC-693393224 | 1/17/2023 | Educational Outreach | Processing Flow | 14,043.00 | 0 0 of 36 | 0 | 36 | 0 |
| BATLLC-69339418 BATLLC-693394187 | 1/17/2023 | Educational Outreach | Processing Flow | 14,215.00 | 0 0 of 37 | 0 | 0 | 0 |
| BATLLC-69340918 BATLLC-693409181 | 1/19/2023 | Educational Outreach | Processing Flow | 9,385.00 | 0 0 of 36 | 0 | 0 | 0 |
| BATLLC-69347603 BATLLC-693476036 | 1/18/2023 | Educational Outreach | Processing Flow | 6,526.00 | 0 0 of 18 | 0 | 18 | 0 |
| BATLLC-69348416 BATLLC-693484166 | 1/17/2023 | Educational Outreach | Processing Flow | 15,491.00 | 0 0 of 40 | 0 | 40 | 0 |
| BATLLC-69350967 BATLLC-693509672 | 1/17/2023 | Educational Outreach Missed | Processing Flow | 16,095.00 | 0 0 of 48 | 0 | 48 | 0 |
| BATLLC-69354470 BATLLC-693544703 | 1/17/2023 | Educational Outreach | Processing Flow | 8,301.00 | 0 0 of 31 | 0 | 0 | 0 |
| BATLLC-69355358 BATLLC-693553580 | 1/18/2023 | Active File | Processing Flow | 6,922.15 | 0 0 of 20 | 0 | 20 | 0 |
| BATLLC-69355416 BATLLC-693554165 | 1/18/2023 | Educational Outreach | Processing Flow | 33,622.00 | 0 0 of 48 | 0 | 48 | 0 |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| BATLLC-69460277 | BATLLC-694602779 | 1/20/2023 | Educational Outreach | Processing Flow | 10,197.00 | 0 0 of 25 | 0 | 25 | 0 | |
| BATLLC-69466817 | BATLLC-694668176 | 1/20/2023 | Educational Outreach | Processing Flow | 20,190.00 | 0 0 of 36 | 0 | 36 | 0 | |
| BATLLC-69472625 | BATLLC-694726259 | 1/20/2023 | Educational Outreach | Processing Flow | 28,164.04 | 0 0 of 48 | 0 | 48 | 0 | |
| BATLLC-69479898 | BATLLC-694798985 | 1/20/2023 | Educational Outreach | Processing Flow | 50,579.00 | 0 0 of 48 | 0 | 48 | 0 | |
| BATLLC-69494555 | BATLLC-694945559 | 1/21/2023 | Educational Outreach | Processing Flow | 12,724.09 | 0 0 of 33 | 0 | 33 | 0 | |
| BATLLC-69528822 | BATLLC-695288222 | 1/23/2023 | Educational Outreach | Processing Flow | 19,961.00 | 0 0 of 36 | 0 | 36 | 0 | |
| #N/A | BATLLC-653462582 | 10/27/2022 | Active File | Processing Flow | 8,431.00 | 2 2 of 20 | 2 | 18 | 530 | |
| #N/A | BATLLC-654194852 | 10/31/2022 | Cancellation Completed | Retention Workflow | 12,781.00 | 1 1 of 1 | 1 | 0 | 251.3 | 12/6/2022 |
| #N/A | BATLLC-654409073 | 11/1/2022 | Active File | Processing Flow | 37,396.00 | 2 2 of 36 | 2 | 34 | 1,023.78 | |
| #N/A | BATLLC-655215113 | 11/2/2022 | Cancellation Completed | Retention Workflow | 9,207.00 | 2 2 of 2 | 2 | 0 | 513 | 12/30/2022 |
| #N/A | BATLLC-655234847 | 11/2/2022 | Active File | Processing Flow | 22,612.00 | 2 2 of 30 | 2 | 28 | 795.74 | |
| #N/A | BATLLC-655238801 | 11/2/2022 | Active File | Processing Flow | 7,260.00 | 2 2 of 18 | 2 | 16 | 515.42 | |
| #N/A | BATLLC-655395329 | 11/2/2022 | Active File | Processing Flow | 9,745.06 | 2 2 of 24 | 2 | 22 | 693.68 | |
| #N/A | BATLLC-655435514 | 11/2/2022 | Active File | Processing Flow | 6,259.00 | 3 3 of 17 | 3 | 13 | 758.58 | |
| #N/A | BATLLC-655984379 | 11/3/2022 | Active File | Processing Flow | 14,637.00 | 2 2 of 24 | 2 | 22 | 680.66 | |
| #N/A | BATLLC-656213078 | 11/3/2022 | Affiliate Review | Retention Workflow | 17,961.00 | 0 0 of 36 | 0 | 34 | 0 | |
| #N/A | BATLLC-656374445 | 11/4/2022 | Cancellation Completed | Retention Workflow | 31,477.00 | 1 1 of 1 | 1 | 0 | 446.12 | 12/9/2022 |
| #N/A | BATLLC-656463788 | 11/4/2022 | Cancellation Completed | Retention Workflow | 8,283.00 | 0 0 of 2 | 0 | 0 | 0 | 12/15/2022 |
| #N/A | BATLLC-656473316 | 11/4/2022 | Active File | Processing Flow | 45,543.00 | 3 3 of 48 | 3 | 45 | 1,427.73 | |
| #N/A | BATLLC-656497598 | 11/5/2022 | Cancellation Completed | Retention Workflow | 10,336.00 | 0 0 of 1 | 0 | 0 | 0 | 12/27/2022 |
| #N/A | BATLLC-656704115 | 11/7/2022 | Cancellation Completed | Retention Workflow | 12,637.00 | 0 0 of 0 | 0 | 0 | 0 | 11/14/2022 |
| #N/A | BATLLC-656815583 | 11/7/2022 | Active File | Processing Flow | 31,570.00 | 2 2 of 36 | 2 | 34 | 894.32 | |
| #N/A | BATLLC-657302549 | 11/7/2022 | Cancellation Completed | Retention Workflow | 23,873.00 | 1 1 of 4 | 1 | 0 | 386.64 | 1/13/2023 |
| #N/A | BATLLC-657487061 | 11/7/2022 | Active File | Processing Flow | 23,322.00 | 2 2 of 48 | 2 | 46 | 581.46 | |
| #N/A | BATLLC-657592790 | 11/8/2022 | Cancellation Completed | Retention Workflow | 13,374.00 | 0 0 of 1 | 0 | 0 | 0 | 1/12/2023 |
| #N/A | BATLLC-657728408 | 11/8/2022 | Cancellation Completed | Retention Workflow | 9,652.00 | 0 0 of 2 | 0 | 0 | 0 | 1/4/2023 |
| #N/A | BATLLC-658190828 | 11/9/2022 | Active File | Processing Flow | 5,953.00 | 2 2 of 15 | 2 | 13 | 510.26 | |
| #N/A | BATLLC-658235333 | 11/9/2022 | Cancellation Completed | Retention Workflow | 20,075.00 | 1 1 of 1 | 1 | 0 | 319.44 | 11/21/2022 |
| #N/A | BATLLC-658249082 | 11/9/2022 | Cancellation Completed | Retention Workflow | 16,284.00 | 0 0 of 2 | 0 | 0 | 0 | 1/5/2023 |
| #N/A | BATLLC-658278254 | 11/9/2022 | Cancellation Completed | Retention Workflow | 14,554.00 | 1 1 of 2 | 1 | 0 | 338.95 | 12/23/2022 |
| #N/A | BATLLC-658321145 | 11/9/2022 | Cancellation Completed | Retention Workflow | 8,476.00 | 1 1 of 1 | 1 | 0 | 221.95 | 12/7/2022 |
| #N/A | BATLLC-658388513 | 11/9/2022 | Cancellation Completed | Retention Workflow | 25,477.00 | 0 0 of 1 | 0 | 0 | 0 | 12/27/2022 |
| #N/A | BATLLC-658392908 | 11/9/2022 | Cancellation Completed | Retention Workflow | 8,919.00 | 0 0 of 0 | 0 | 0 | 0 | 11/16/2022 |
| #N/A | BATLLC-658451036 | 11/9/2022 | Active File | Processing Flow | 16,390.00 | 2 2 of 36 | 2 | 34 | 556.98 | |
| #N/A | BATLLC-658471043 | 11/9/2022 | Affiliate Review | Retention Workflow | 14,616.00 | 0 0 of 37 | 0 | 34 | 0 | |
| #N/A | BATLLC-658330658 | 11/10/2022 | Active File | Processing Flow | 22,284.00 | 2 2 of 37 | 2 | 34 | 712.96 | |
| #N/A | BATLLC-659139170 | 11/10/2022 | Cancellation Completed | Retention Workflow | 47,371.00 | 1 1 of 1 | 1 | 0 | 417.54 | 12/12/2022 |
| #N/A | BATLLC-659200295 | 11/11/2022 | Active File | Processing Flow | 63,373.00 | 2 2 of 48 | 2 | 46 | 1,248.98 | |
| #N/A | BATLLC-659320229 | 11/11/2022 | Active File | Processing Flow | 21,251.00 | 2 2 of 36 | 2 | 34 | 546.94 | |
| #N/A | BATLLC-659048573 | 11/14/2022 | Active File | Processing Flow | 6,525.00 | 2 2 of 16 | 2 | 14 | 502.7 | |
| #N/A | BATLLC-659808359 | 11/14/2022 | Active File | Processing Flow | 12,006.00 | 2 2 of 30 | 2 | 28 | 512.92 | |
| #N/A | BATLLC-659985809 | 11/14/2022 | Active File | Processing Flow | 45,824.00 | 2 2 of 48 | 2 | 46 | 956.5 | |
| #N/A | BATLLC-660271652 | 11/15/2022 | Cancellation Completed | Retention Workflow | 64,432.00 | 0 0 of 0 | 0 | 0 | 0 | 11/30/2022 |
| #N/A | BATLLC-660390923 | 11/15/2022 | Retention Call Required by Resolution Specialist | Retention Workflow | 70,131.00 | 0 0 of 48 | 0 | 46 | 0 | |
| #N/A | BATLLC-661473623 | 11/15/2022 | Active File | Processing Flow | 108,328.00 | 2 2 of 48 | 2 | 46 | 1,546.86 | |
| #N/A | BATLLC-661544963 | 11/15/2022 | Active File | Processing Flow | 54,005.00 | 2 2 of 36 | 2 | 34 | 1,392.88 | |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| #N/A | BATLLC-665367737 | 11/23/2022 Cancellation Completed | Retention Workflow | 5,688.00 | 0 0 of 2 | 0 | 0 | 0 | 1/4/2023 |
| #N/A | BATLLC-665484950 | 11/23/2022 Active File | Processing Flow | 26,408.00 | 1 1 of 24 | 1 | 23 | 536.51 | |
| #N/A | BATLLC-665864561 | 11/28/2022 Cancellation Completed | Retention Workflow | 45,456.00 | 2 2 of 2 | 2 | 0 | 2,213.02 | 1/10/2023 |
| #N/A | BATLLC-665870918 | 11/28/2022 Active File | Processing Flow | 49,829.00 | 1 1 of 48 | 1 | 47 | 397.43 | |
| #N/A | BATLLC-666092378 | 11/28/2022 Active File | Processing Flow | 37,182.05 | 1 1 of 48 | 1 | 47 | 406.23 | |
| #N/A | BATLLC-666990305 | 11/29/2022 Cancellation Completed | Retention Workflow | 26,899.00 | 0 0 of 0 | 0 | 0 | 0 | 12/20/2022 |
| #N/A | BATLLC-667406141 | 11/29/2022 Affiliate Review | Retention Workflow | 41,183.00 | 2 2 of 48 | 2 | 46 | 879.14 | |
| #N/A | BATLLC-667432118 | 11/29/2022 Cancellation Completed | Retention Workflow | 16,853.64 | 1 1 of 1 | 1 | 0 | 256.89 | 12/16/2022 |
| #N/A | BATLLC-667516706 | 11/30/2022 Cancellation Completed | Retention Workflow | 30,803.00 | 0 0 of 3 | 0 | 0 | 0 | 1/20/2023 |
| #N/A | BATLLC-667532891 | 11/30/2022 Active File | Processing Flow | 6,121.00 | 1 1 of 23 | 1 | 22 | 300.41 | |
| #N/A | BATLLC-667551218 | 11/30/2022 Active File | Processing Flow | 13,617.00 | 1 1 of 30 | 1 | 29 | 277.94 | |
| #N/A | BATLLC-667858103 | 12/1/2022 Cancellation Completed | Retention Workflow | 16,268.00 | 0 0 of 0 | 0 | 0 | 0 | 12/7/2022 |
| #N/A | BATLLC-668018993 | 12/1/2022 Cancellation Completed | Retention Workflow | 11,528.00 | 0 0 of 1 | 0 | 0 | 0 | 1/9/2023 |
| #N/A | BATLLC-668023241 | 12/1/2022 NSF | Payment Workflow | 10,049.00 | 0 0 of 2 | 0 | 0 | 0 | 1/13/2023 |
| #N/A | BATLLC-667999457 | 12/2/2022 Active File | Processing Flow | 20,339.00 | 1 1 of 36 | 1 | 35 | 322.37 | |
| #N/A | BATLLC-668121005 | 12/2/2022 Active File | Processing Flow | 11,847.00 | 1 1 of 30 | 1 | 29 | 254.34 | |
| #N/A | BATLLC-668240792 | 12/2/2022 Active File | Processing Flow | 20,360.00 | 1 1 of 36 | 1 | 35 | 322.6 | |
| #N/A | BATLLC-668561204 | 12/5/2022 Affiliate Review | Retention Workflow | 23,604.00 | 0 0 of 36 | 0 | 35 | 0 | |
| #N/A | BATLLC-669106769 | 12/5/2022 Active File | Processing Flow | 14,540.00 | 1 1 of 36 | 1 | 35 | 257.94 | |
| #N/A | BATLLC-669122753 | 12/5/2022 Active File | Processing Flow | 14,416.00 | 1 1 of 36 | 1 | 35 | 330.81 | |
| #N/A | BATLLC-669150887 | 12/5/2022 Active File | Processing Flow | 12,868.00 | 1 1 of 32 | 1 | 31 | 257.23 | |
| #N/A | BATLLC-669142778 | 12/6/2022 Active File | Processing Flow | 14,258.00 | 1 1 of 25 | 1 | 24 | 324.51 | |
| #N/A | BATLLC-670522550 | 12/6/2022 Affiliate Review | Retention Workflow | 10,499.00 | 0 0 of 27 | 0 | 26 | 0 | |
| #N/A | BATLLC-671787701 | 12/6/2022 Active File | Processing Flow | 18,282.00 | 1 1 of 48 | 1 | 47 | 161.13 | |
| #N/A | BATLLC-671932052 | 12/6/2022 Cancellation Completed | Retention Workflow | 16,810.00 | 1 1 of 2 | 1 | 0 | 365.34 | 1/18/2023 |
| #N/A | BATLLC-655208108 | 12/7/2022 NSF | Payment Workflow | 57,153.00 | 1 1 of 48 | 1 | 45 | 489.31 | |
| #N/A | BATLLC-657600656 | 12/7/2022 Active File | Processing Flow | 38,989.00 | 1 1 of 36 | 1 | 35 | 399.63 | |
| #N/A | BATLLC-672060818 | 12/7/2022 Cancellation Completed | Retention Workflow | 11,114.00 | 0 0 of 1 | 0 | 0 | 0 | 12/21/2022 |
| #N/A | BATLLC-672212981 | 12/7/2022 Cancellation Completed | Retention Workflow | 44,323.00 | 0 0 of 0 | 0 | 0 | 0 | 1/10/2023 |
| #N/A | BATLLC-672587261 | 12/12/2022 Cancellation Completed | Retention Workflow | 16,024.00 | 1 1 of 1 | 1 | 0 | 260.73 | 1/17/2023 |
| #N/A | BATLLC-672553235 | 12/12/2022 Cancellation Completed | Retention Workflow | 15,046.00 | 0 0 of 0 | 0 | 0 | 0 | 12/19/2022 |
| #N/A | BATLLC-672587255 | 12/12/2022 Cancellation Completed | Retention Workflow | 48,909.00 | 1 1 of 1 | 1 | 0 | 639.81 | 1/5/2023 |
| #N/A | BATLLC-674272856 | 12/12/2022 Cancellation Completed | Retention Workflow | 9,605.00 | 0 0 of 1 | 0 | 0 | 0 | 1/9/2023 |
| #N/A | BATLLC-672867383 | 12/13/2022 Cancellation Completed | Retention Workflow | 56,897.00 | 0 0 of 0 | 0 | 0 | 0 | 12/29/2022 |
| #N/A | BATLLC-673735820 | 12/14/2022 Cancellation Completed | Retention Workflow | 7,055.00 | 0 0 of 1 | 0 | 0 | 0 | 1/10/2023 |
| #N/A | BATLLC-674360033 | 12/15/2022 Active File | Processing Flow | 5,312.87 | 0 0 of 28 | 0 | 27 | 0 | |
| #N/A | BATLLC-674921522 | 12/17/2022 Cancellation Completed | Retention Workflow | 26,495.00 | 0 0 of 0 | 0 | 0 | 0 | 12/23/2022 |
| #N/A | BATLLC-676310066 | 12/17/2022 Cancellation Completed | Retention Workflow | 17,640.00 | 0 0 of 0 | 0 | 0 | 0 | 12/22/2022 |
| #N/A | BATLLC-675849998 | 12/19/2022 Cancellation Completed | Retention Workflow | 8,858.00 | 0 0 of 1 | 0 | 0 | 0 | 1/23/2023 |
| #N/A | BATLLC-676182680 | 12/20/2022 Cancellation Completed | Retention Workflow | 15,463.00 | 0 0 of 0 | 0 | 0 | 0 | 12/30/2022 |
| #N/A | BATLLC-676961627 | 12/20/2022 Cancellation Completed | Retention Workflow | 5,077.00 | 0 0 of 1 | 0 | 0 | 0 | 1/6/2023 |
| #N/A | BATLLC-675909710 | 12/21/2022 Cancellation Completed | Retention Workflow | 11,640.00 | 0 0 of 1 | 0 | 0 | 0 | 1/6/2023 |
| #N/A | BATLLC-676273325 | 12/21/2022 Cancellation Completed | Retention Workflow | 12,067.00 | 0 0 of 1 | 0 | 0 | 0 | 1/19/2023 |
| #N/A | BATLLC-676924574 | 12/22/2022 Paused Per Legal - Payment Not Paused | Legal Workflow | 12,467.00 | 0 0 of 65 | 0 | 64 | 0 | |
| #N/A | BATLLC-677000702 | 12/22/2022 Cancellation Completed | Retention Workflow | 113,097.00 | 0 0 of 0 | 0 | 0 | 0 | 1/12/2023 |
| #N/A | BATLLC-677762498 | 12/22/2022 Cancellation Completed | Retention Workflow | 7,857.00 | 0 0 of 1 | 0 | 0 | 0 | 1/6/2023 |

| #N/A | BATLLC-687057248 | 1/6/2023 Affiliate Review | Retention Workflow | 12,015.00 | 0  0 of 31 | 0 | 0 | 0 | |
| #N/A | BATLLC-691131971 | 1/12/2023 Affiliate Review | Retention Workflow | 10,374.00 | 0  0 of 27 | 0 | 27 | 0 | |
| #N/A | BATLLC-691467548 | 1/12/2023 Affiliate Review | Retention Workflow | 22,083.00 | 0  0 of 30 | 0 | 30 | 0 | |
| #N/A | BATLLC-691532462 | 1/12/2023 Educational Outreach | Processing Flow | 14,745.00 | 0  0 of 25 | 0 | 25 | 0 | |
| #N/A | BATLLC-692776679 | 1/13/2023 Educational Outreach Missed | Processing Flow | 65,724.00 | 0  0 of 48 | 0 | 48 | 0 | |
| #N/A | BATLLC-693370319 | 1/17/2023 Cancellation Completed | Retention Workflow | 16,634.00 | 0  0 of 0 | 0 | 0 | 0 | 1/20/2023 |
| #N/A | BATLLC-693482768 | 1/17/2023 Educational Outreach Missed | Processing Flow | 12,380.00 | 0  0 of 32 | 0 | 32 | 0 | |
| #N/A | BATLLC-693505484 | 1/17/2023 Cancellation Completed | Retention Workflow | 64,897.34 | 0  0 of 0 | 0 | 0 | 0 | 1/23/2023 |
| #N/A | BATLLC-694110152 | 1/20/2023 Educational Outreach Missed | Processing Flow | 11,442.00 | 0  0 of 29 | 0 | 29 | 0 | |
| #N/A | BATLLC-694604144 | 1/20/2023 Affiliate Review | Retention Workflow | 18,897.00 | 0  0 of 40 | 0 | 40 | 0 | |

| vlook | Customer ID | Enrolled Date | Client Status | Client Stage | Debt Enrolled | Pay Frequency | Payments Made | Payment Summary | # Drafts Cleared | # Drafts Remaining | Total Payments Cleared | Dropped Date |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| #N/A | BATLLC-694110152 | 1/20/2023 | Educational Outreach Missed | Processing Flow | 11,442.00 | | 0 | 0 of 29 | 0 | 29 | 0 | |
| #N/A | BATLLC-694604144 | 1/20/2023 | Affiliate Review | Retention Workflow | 18,897.00 | | 0 | 0 of 40 | 0 | 40 | 0 | |
| #N/A | BATLLC-693482768 | 1/17/2023 | Educational Outreach Missed | Processing Flow | 12,380.00 | | 0 | 0 of 32 | 0 | 32 | 0 | |
| #N/A | BATLLC-692776679 | 1/13/2023 | Educational Outreach Missed | Processing Flow | 65,724.00 | | 0 | 0 of 48 | 0 | 48 | 0 | |
| #N/A | BATLLC-691131971 | 1/12/2023 | Affiliate Review | Retention Workflow | 10,374.00 | | 0 | 0 of 27 | 0 | 27 | 0 | |
| #N/A | BATLLC-691467548 | 1/12/2023 | Affiliate Review | Retention Workflow | 22,083.00 | | 0 | 0 of 30 | 0 | 30 | 0 | |
| #N/A | BATLLC-691532462 | 1/12/2023 | Educational Outreach | Processing Flow | 14,745.00 | | 0 | 0 of 25 | 0 | 25 | 0 | |
| #N/A | BATLLC-687057248 | 1/6/2023 | Affiliate Review | Retention Workflow | 12,015.00 | | 0 | 0 of 31 | 0 | 0 | 0 | |
| #N/A | BATLLC-686672357 | 1/5/2023 | Active File | Processing Flow | 6,830.00 | | 0 | 0 of 13 | 0 | 13 | 0 | |
| #N/A | BATLLC-686129255 | 1/5/2023 | Affiliate Review | Retention Workflow | 13,433.00 | | 1 | 1 of 33 | 1 | 32 | 259.2 | |
| #N/A | BATLLC-684140426 | 1/4/2023 | Educational Outreach | Processing Flow | 5,507.00 | | 0 | 0 of 21 | 0 | 21 | 0 | |
| #N/A | BATLLC-681870044 | 12/30/2022 | NSF | Payment Workflow | 11,818.00 | | 0 | 0 of 1 | 0 | 0 | 0 | 1/12/2023 |
| #N/A | BATLLC-682066349 | 12/30/2022 | Educational Outreach Missed | Processing Flow | 79,645.00 | | 0 | 0 of 48 | 0 | 0 | 0 | |
| #N/A | BATLLC-681909683 | 12/30/2022 | Affiliate Review | Retention Workflow | 25,663.58 | | 1 | 1 of 48 | 1 | 47 | 310.24 | |
| #N/A | BATLLC-681725786 | 12/29/2022 | Active File | Processing Flow | 5,441.66 | | 1 | 1 of 30 | 1 | 29 | 120.75 | |
| #N/A | BATLLC-676924574 | 12/22/2022 | Paused Per Legal - Payment Not Paused | Legal Workflow | 12,467.00 | | 0 | 0 of 65 | 0 | 64 | 0 | |
| #N/A | BATLLC-674360033 | 12/15/2022 | Active File | Processing Flow | 5,312.87 | | 0 | 0 of 28 | 0 | 27 | 0 | |
| #N/A | BATLLC-657600656 | 12/7/2022 | Active File | Processing Flow | 38,989.00 | | 1 | 1 of 36 | 1 | 35 | 399.63 | |
| #N/A | BATLLC-667999457 | 12/7/2022 | NSF | Payment Workflow | 57,153.00 | | 1 | 1 of 48 | 1 | 45 | 489.31 | |
| #N/A | BATLLC-670522550 | 12/6/2022 | Affiliate Review | Retention Workflow | 10,499.00 | | 0 | 0 of 27 | 0 | 26 | 0 | |
| #N/A | BATLLC-671787701 | 12/6/2022 | Active File | Processing Flow | 18,282.00 | | 1 | 1 of 48 | 1 | 47 | 161.13 | |
| #N/A | BATLLC-669142778 | 12/6/2022 | Active File | Processing Flow | 14,258.00 | | 1 | 1 of 25 | 1 | 24 | 324.51 | |
| #N/A | BATLLC-668561204 | 12/5/2022 | Affiliate Review | Retention Workflow | 23,604.00 | | 0 | 0 of 36 | 0 | 35 | 0 | |
| #N/A | BATLLC-669150887 | 12/5/2022 | Active File | Processing Flow | 12,868.00 | | 1 | 1 of 32 | 1 | 31 | 257.23 | |
| #N/A | BATLLC-669106769 | 12/5/2022 | Active File | Processing Flow | 14,540.00 | | 1 | 1 of 36 | 1 | 35 | 257.94 | |
| #N/A | BATLLC-669122753 | 12/5/2022 | Active File | Processing Flow | 14,416.00 | | 1 | 1 of 36 | 1 | 35 | 330.81 | |
| #N/A | BATLLC-668121005 | 12/2/2022 | Active File | Processing Flow | 11,847.00 | | 1 | 1 of 30 | 1 | 29 | 254.34 | |
| #N/A | BATLLC-667999457 | 12/2/2022 | Active File | Processing Flow | 20,339.00 | | 1 | 1 of 36 | 1 | 35 | 322.37 | |
| #N/A | BATLLC-668240792 | 12/2/2022 | Active File | Processing Flow | 20,360.00 | | 1 | 1 of 36 | 1 | 35 | 322.6 | |
| #N/A | BATLLC-668023241 | 12/1/2022 | NSF | Payment Workflow | 10,049.00 | | 0 | 0 of 2 | 0 | 0 | 0 | 1/13/2023 |
| #N/A | BATLLC-667551218 | 11/30/2022 | Active File | Processing Flow | 13,617.00 | | 1 | 1 of 30 | 1 | 29 | 277.94 | |
| #N/A | BATLLC-667532891 | 11/30/2022 | Active File | Processing Flow | 6,121.00 | | 1 | 1 of 23 | 1 | 22 | 300.41 | |
| #N/A | BATLLC-667406141 | 11/29/2022 | Affiliate Review | Retention Workflow | 41,183.00 | | 2 | 2 of 48 | 2 | 46 | 879.14 | |
| #N/A | BATLLC-665870918 | 11/28/2022 | Active File | Processing Flow | 49,829.00 | | 1 | 1 of 48 | 1 | 47 | 397.43 | |
| #N/A | BATLLC-666092378 | 11/28/2022 | Active File | Processing Flow | 37,182.05 | | 1 | 1 of 48 | 1 | 47 | 406.23 | |
| #N/A | BATLLC-665312789 | 11/23/2022 | Active File | Processing Flow | 27,727.00 | | 1 | 1 of 48 | 1 | 47 | 327.44 | |
| #N/A | BATLLC-665484950 | 11/23/2022 | Active File | Processing Flow | 26,408.00 | | 1 | 1 of 24 | 1 | 23 | 536.51 | |
| #N/A | BATLLC-663959816 | 11/22/2022 | Active File | Processing Flow | 24,368.00 | | 2 | 2 of 48 | 2 | 46 | 598.9 | |
| #N/A | BATLLC-664483760 | 11/22/2022 | Active File | Processing Flow | 24,404.00 | | 2 | 2 of 36 | 2 | 34 | 735.08 | |
| #N/A | BATLLC-664148894 | 11/22/2022 | Active File | Processing Flow | 27,978.00 | | 2 | 2 of 36 | 2 | 34 | 814.5 | |
| #N/A | BATLLC-663980456 | 11/21/2022 | Active File | Processing Flow | 9,479.61 | | 2 | 2 of 24 | 2 | 22 | 508.74 | |
| #N/A | BATLLC-663470330 | 11/18/2022 | Active File | Processing Flow | 19,112.00 | | 2 | 2 of 36 | 2 | 34 | 617.48 | |
| #N/A | BATLLC-662264213 | 11/17/2022 | Affiliate Review | Retention Workflow | 14,635.00 | | 1 | 1 of 38 | 1 | 36 | 250.43 | |

| #N/A BATLLC-658190828 | 11/9/2022 | Active File | Processing Flow | 5,953.00 | 2 2 of 15 | 2 | 13 | 510.26 |
| #N/A BATLLC-658451036 | 11/9/2022 | Active File | Processing Flow | 16,390.00 | 2 2 of 36 | 2 | 34 | 556.98 |
| #N/A BATLLC-657487061 | 11/7/2022 | Active File | Processing Flow | 23,322.00 | 2 2 of 48 | 2 | 46 | 581.46 |
| #N/A BATLLC-656815583 | 11/7/2022 | Active File | Processing Flow | 31,570.00 | 2 2 of 36 | 2 | 34 | 894.32 |
| #N/A BATLLC-656473316 | 11/4/2022 | Active File | Processing Flow | 45,543.00 | 3 3 of 48 | 3 | 45 | 1,427.73 |
| #N/A BATLLC-656213078 | 11/3/2022 | Affiliate Review | Retention Workflow | 17,961.00 | 0 0 of 36 | 0 | 34 | 0 |
| #N/A BATLLC-655984379 | 11/3/2022 | Active File | Processing Flow | 14,637.00 | 2 2 of 24 | 2 | 22 | 680.66 |
| #N/A BATLLC-655238801 | 11/2/2022 | Active File | Processing Flow | 7,260.00 | 2 2 of 18 | 2 | 16 | 515.42 |
| #N/A BATLLC-655395329 | 11/2/2022 | Active File | Processing Flow | 9,745.06 | 2 2 of 24 | 2 | 22 | 693.68 |
| #N/A BATLLC-655435514 | 11/2/2022 | Active File | Processing Flow | 6,259.00 | 3 3 of 17 | 3 | 13 | 758.58 |
| #N/A BATLLC-655234847 | 11/2/2022 | Active File | Processing Flow | 22,612.00 | 2 2 of 30 | 2 | 28 | 795.74 |
| #N/A BATLLC-654409073 | 11/1/2022 | Active File | Processing Flow | 37,396.00 | 2 2 of 36 | 2 | 34 | 1,023.78 |
| #N/A BATLLC-653462582 | 10/27/2022 | Active File | Processing Flow | 8,431.00 | 2 2 of 20 | 2 | 18 | 530 |

| vlookup | Customer ID | Enrolled Date | Client Status | Client Stage | Debt Enrolled | Pay Frequency | Payments Made | Payment Summary | # Drafts Cleared | # Drafts Remaining | Total Payments Cleared | Dropped Date |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| BATLLC-655208108 | BATLLC-655208108 | 12/7/2022 | NSF | Payment Workflow | 57,153.00 | | 1 | 1 of 48 | 1 | 45 | 489.31 | |
| BATLLC-656213078 | BATLLC-656213078 | 11/3/2022 | Affiliate Review | Retention Workflow | 17,961.00 | | 0 | 0 of 36 | 0 | 34 | 0 | |
| BATLLC-658471043 | BATLLC-658471043 | 11/9/2022 | Affiliate Review | Retention Workflow | 14,616.00 | | 0 | 0 of 37 | 0 | 34 | 0 | |
| BATLLC-660390923 | BATLLC-660390923 | 11/15/2022 | Retention Call Required by Resolution Specialist | Retention Workflow | 70,131.00 | | 0 | 0 of 48 | 0 | 46 | 0 | |
| BATLLC-661806908 | BATLLC-661806908 | 11/16/2022 | NSF | Payment Workflow | 28,206.00 | | 0 | 0 of 36 | 0 | 34 | 0 | |
| BATLLC-662264213 | BATLLC-662264213 | 11/17/2022 | Affiliate Review | Retention Workflow | 14,635.00 | | 1 | 1 of 38 | 1 | 36 | 250.83 | |
| BATLLC-667406141 | BATLLC-667406141 | 11/29/2022 | Affiliate Review | Retention Workflow | 41,183.00 | | 2 | 2 of 48 | 2 | 46 | 879.14 | |
| BATLLC-668023241 | BATLLC-668023241 | 12/1/2022 | NSF | Payment Workflow | 30,049.00 | | 0 | 0 of 2 | 0 | 0 | 0 | 1/13/2023 |
| BATLLC-668561204 | BATLLC-668561204 | 12/5/2022 | Affiliate Review | Retention Workflow | 23,604.00 | | 0 | 0 of 36 | 0 | 35 | 0 | |
| BATLLC-670522550 | BATLLC-670522550 | 12/6/2022 | Affiliate Review | Retention Workflow | 10,499.00 | | 0 | 0 of 27 | 0 | 26 | 0 | |
| BATLLC-671787701 | BATLLC-671787701 | 12/6/2022 | Active File | Processing Flow | 18,282.00 | | 1 | 1 of 48 | 1 | 47 | 161.13 | |
| BATLLC-674360033 | BATLLC-674360033 | 12/15/2022 | Active File | Processing Flow | 5,312.87 | | 0 | 0 of 28 | 0 | 27 | 0 | |
| BATLLC-676924574 | BATLLC-676924574 | 12/22/2022 | Paused Per Legal - Payment Not Paused | Legal Workflow | 12,467.00 | | 0 | 0 of 65 | 0 | 64 | 0 | |
| BATLLC-681725786 | BATLLC-681725786 | 12/29/2022 | Active File | Processing Flow | 5,441.66 | | 1 | 1 of 30 | 1 | 29 | 120.75 | |
| BATLLC-681870044 | BATLLC-681870044 | 12/30/2022 | NSF | Payment Workflow | 11,818.00 | | 0 | 0 of 1 | 0 | 0 | 0 | 1/12/2023 |
| BATLLC-681909683 | BATLLC-681909683 | 12/30/2022 | Affiliate Review | Retention Workflow | 25,663.58 | | 1 | 1 of 48 | 1 | 47 | 310.24 | |
| BATLLC-682066349 | BATLLC-682066349 | 12/30/2022 | Educational Outreach Missed | Processing Flow | 79,645.00 | | 0 | 0 of 48 | 0 | 0 | 0 | |
| BATLLC-684140426 | BATLLC-684140426 | 1/4/2023 | Educational Outreach | Processing Flow | 5,507.00 | | 0 | 0 of 21 | 0 | 21 | 0 | |
| BATLLC-686129255 | BATLLC-686129255 | 1/5/2023 | Affiliate Review | Retention Workflow | 13,433.00 | | 1 | 1 of 33 | 1 | 32 | 259.2 | |
| BATLLC-686672357 | BATLLC-686672357 | 1/5/2023 | Active File | Processing Flow | 6,830.00 | | 0 | 0 of 13 | 0 | 11 | 0 | |
| BATLLC-687057248 | BATLLC-687057248 | 1/6/2023 | Affiliate Review | Retention Workflow | 12,015.00 | | 0 | 0 of 31 | 0 | 0 | 0 | |
| BATLLC-691131971 | BATLLC-691131971 | 1/12/2023 | Affiliate Review | Retention Workflow | 10,174.00 | | 0 | 0 of 27 | 0 | 27 | 0 | |
| BATLLC-691467548 | BATLLC-691467548 | 1/12/2023 | Affiliate Review | Retention Workflow | 22,083.00 | | 0 | 0 of 30 | 0 | 30 | 0 | |
| BATLLC-691532462 | BATLLC-691532462 | 1/12/2023 | Educational Outreach | Processing Flow | 14,745.00 | | 0 | 0 of 25 | 0 | 25 | 0 | |
| BATLLC-692776679 | BATLLC-692776679 | 1/13/2023 | Educational Outreach Missed | Processing Flow | 65,724.00 | | 0 | 0 of 48 | 0 | 48 | 0 | |
| BATLLC-693482768 | BATLLC-693482768 | 1/17/2023 | Educational Outreach Missed | Processing Flow | 12,380.00 | | 0 | 0 of 32 | 0 | 32 | 0 | |
| BATLLC-694110152 | BATLLC-694110152 | 1/20/2023 | Educational Outreach Missed | Processing Flow | 11,442.00 | | 0 | 0 of 29 | 0 | 29 | 0 | |
| BATLLC-694604144 | BATLLC-694604144 | 1/20/2023 | Affiliate Review | Retention Workflow | 18,897.00 | | 0 | 0 of 40 | 0 | 40 | 0 | |
| #N/A | BATLLC-668121005 | 12/2/2022 | Active File | Processing Flow | 11,847.00 | | 1 | 1 of 30 | 1 | 29 | 254.34 | |
| #N/A | BATLLC-669150887 | 12/5/2022 | Active File | Processing Flow | 12,868.00 | | 1 | 1 of 32 | 1 | 31 | 257.23 | |
| #N/A | BATLLC-669106769 | 12/5/2022 | Active File | Processing Flow | 14,540.00 | | 1 | 1 of 36 | 1 | 35 | 257.94 | |
| #N/A | BATLLC-667551218 | 11/30/2022 | Active File | Processing Flow | 13,617.00 | | 1 | 1 of 30 | 1 | 29 | 277.94 | |
| #N/A | BATLLC-667532891 | 11/30/2022 | Active File | Processing Flow | 6,321.00 | | 1 | 1 of 23 | 1 | 22 | 300.41 | |
| #N/A | BATLLC-667999457 | 12/2/2022 | Active File | Processing Flow | 20,339.00 | | 1 | 1 of 36 | 1 | 35 | 322.37 | |
| #N/A | BATLLC-668240792 | 12/2/2022 | Active File | Processing Flow | 20,360.00 | | 1 | 1 of 36 | 1 | 35 | 322.6 | |
| #N/A | BATLLC-669142778 | 12/6/2022 | Active File | Processing Flow | 14,258.00 | | 1 | 1 of 25 | 1 | 24 | 324.51 | |
| #N/A | BATLLC-665312789 | 11/23/2022 | Active File | Processing Flow | 27,727.00 | | 1 | 1 of 48 | 1 | 47 | 327.44 | |
| #N/A | BATLLC-669122753 | 12/5/2022 | Active File | Processing Flow | 14,416.00 | | 1 | 1 of 36 | 1 | 35 | 330.81 | |
| #N/A | BATLLC-662003489 | 11/16/2022 | Active File | Processing Flow | 19,440.00 | | 1 | 1 of 30 | 1 | 29 | 355.58 | |
| #N/A | BATLLC-665870918 | 11/28/2022 | Active File | Processing Flow | 49,829.00 | | 1 | 1 of 48 | 1 | 47 | 397.43 | |
| #N/A | BATLLC-657600656 | 12/7/2022 | Active File | Processing Flow | 38,989.00 | | 1 | 1 of 36 | 1 | 35 | 399.63 | |
| #N/A | BATLLC-666092378 | 11/28/2022 | Active File | Processing Flow | 37,182.05 | | 1 | 1 of 48 | 1 | 47 | 406.23 | |
| #N/A | BATLLC-659048573 | 11/14/2022 | Active File | Processing Flow | 6,525.00 | | 2 | 2 of 16 | 2 | 14 | 502.7 | |
| #N/A | BATLLC-663980456 | 11/21/2022 | Active File | Processing Flow | 9,479.61 | | 2 | 2 of 24 | 2 | 22 | 508.74 | |
| #N/A | BATLLC-658190828 | 11/9/2022 | Active File | Processing Flow | 5,953.00 | | 2 | 2 of 15 | 2 | 13 | 510.26 | |
| #N/A | BATLLC-659808359 | 11/14/2022 | Active File | Processing Flow | 12,006.00 | | 2 | 2 of 30 | 2 | 28 | 512.92 | |
| #N/A | BATLLC-655238801 | 11/2/2022 | Active File | Processing Flow | 7,260.00 | | 2 | 2 of 18 | 2 | 16 | 515.42 | |
| #N/A | BATLLC-661987718 | 11/16/2022 | Active File | Processing Flow | 15,101.00 | | 2 | 2 of 36 | 2 | 34 | 528.34 | |
| #N/A | BATLLC-653462582 | 10/27/2022 | Active File | Processing Flow | 8,431.00 | | 2 | 2 of 20 | 2 | 18 | 530 | |
| #N/A | BATLLC-665484950 | 11/23/2022 | Active File | Processing Flow | 26,408.00 | | 1 | 1 of 24 | 1 | 23 | 536.51 | |
| #N/A | BATLLC-659120229 | 11/11/2022 | Active File | Processing Flow | 21,251.00 | | 2 | 2 of 36 | 2 | 34 | 546.94 | |
| #N/A | BATLLC-658451036 | 11/9/2022 | Active File | Processing Flow | 16,390.00 | | 2 | 2 of 36 | 2 | 34 | 556.98 | |
| #N/A | BATLLC-657487061 | 11/7/2022 | Active File | Processing Flow | 23,322.00 | | 2 | 2 of 48 | 2 | 46 | 581.46 | |

| Customer ID | Monthly Payment | Debt Enrolled | Enrolled Date | First Payment Date | Total Debt | Payment Summary | Payments Made | Payments Remaining | Monies Owed 2 | Company |
|---|---|---|---|---|---|---|---|---|---|---|
| BATLLC-672759893 | 373.15 | 16606 | 12/14/2022 | 12/23/2022 | 16606 | 1 of 3 | 1 | 34 | $ 7,185.14 | Z.A.P. Marketing Corp |
| BATLLC-674337158 | 373.05 | 56914 | 12/15/2022 | 12/30/2022 | 56914 | 1 of 3 | 1 | 34 | $ 7,182.59 | Z.A.P. Marketing Corp |
| BATLLC-678177770 | 263.5 | 10027 | 12/23/2022 | 12/2/2022 | 10027 | 1 of 4 | 1 | 33 | $ 4,259.97 | Z.A.P. Marketing Corp |
| BATLLC-631536416 | 718.82 | 64960.86 | 9/16/2022 | 9/20/2022 | 64960.86 | 3 of 5 | 3 | 34 | $ 15,999.72 | Z.A.P. Marketing Corp |
| BATLLC-632545184 | 255.78 | 13487 | 9/19/2022 | 9/22/2022 | 13487 | 3 of 4 | 3 | 35 | $ 4,315.50 | Z.A.P. Marketing Corp |
| BATLLC-676107509 | 252.81 | 5084 | 12/20/2022 | 1/3/2023 | 5084 | 0 of 3 | 0 | 33 | $ 3,995.39 | Z.A.P. Marketing Corp |
| BATLLC-677948513 | 202.54 | 7962 | 12/27/2022 | 2/3/2022 | 7962 | 0 of 2 | 0 | 34 | $ 2,834.58 | Z.A.P. Marketing Corp |
| BATLLC-686996774 | 227.55 | 8968 | 1/6/2023 | 1/24/2023 | 8968 | 0 of 3 | 0 | 33 | $ 3,370.21 | Z.A.P. Marketing Corp |
| BATLLC-696506096 | 354.15 | 91789 | 1/24/2023 | 2/10/2023 | 91789 | 0 of 3 | 0 | 33 | $ 6,503.56 | Z.A.P. Marketing Corp |
| BATLLC-707227148 | 159.39 | 15568 | 2/8/2023 | 2/21/2023 | 15568 | 0 of 1 | 0 | 35 | $ 1,785.26 | Z.A.P. Marketing Corp |
| BATLLC-707411231 | 801.39 | 144614 | 2/6/2023 | 2/21/2023 | 144614 | 3 of 3 | 0 | 35 | $ 18,637.76 | Z.A.P. Marketing Corp |
| BATLLC-707678798 | 388.64 | 29226 | 2/7/2023 | 2/10/2023 | 29226 | 0 of 1 | 0 | 35 | $ 7,803.08 | Z.A.P. Marketing Corp |
| BATLLC-713546618 | 203.16 | 22541 | 2/15/2023 | 3/7/2023 | 22541 | 0 of 0 | 0 | 36 | $ 3,018.06 | Z.A.P. Marketing Corp |
| BATLLC-718381451 | 203.26 | 15088 | 2/21/2023 | 3/3/2023 | 15088 | 0 of 0 | 0 | 36 | $ 3,020.76 | Z.A.P. Marketing Corp |
| BATLLC-710018426 | 204.8 | 20817 | 2/9/2023 | 3/3/2023 | 20817 | 0 of 0 | 0 | 36 | $ 3,062.34 | Z.A.P. Marketing Corp |
| BATLLC-676945118 | 255.89 | 23780.13 | 12/22/2022 | 1/3/2023 | 23780.13 | 1 of 1 | 1 | 36 | $ 4,441.77 | Z.A.P. Marketing Corp |
| BATLLC-655339928 | 316.23 | 13191 | 11/3/2022 | 11/25/2022 | 13191 | 1 of 3 | 1 | 34 | $ 5,733.68 | Z.A.P. Marketing Corp |
| BATLLC-653686376 | 148.4 | 13027 | 10/28/2022 | 10/31/2022 | 13027 | 7 of 7 | 7 | 36 | $ 1,539.54 | Z.A.P. Marketing Corp |
| BATLLC-653756921 | 309.21 | 19155 | 10/28/2022 | 11/15/2022 | 19155 | 2 of 2 | 2 | 36 | $ 5,881.41 | Z.A.P. Marketing Corp |
| BATLLC-654169997 | 264.3 | 10075 | 11/22/2022 | 11/7/2022 | 10075 | 4 of 4 | 4 | 34 | $ 4,668.84 | Z.A.P. Marketing Corp |
| BATLLC-654190226 | 374.52 | 27814 | 10/31/2022 | 11/1/2022 | 27814 | 4 of 6 | 4 | 34 | $ 7,220.07 | Z.A.P. Marketing Corp |
| BATLLC-654203888 | 293.01 | 14747 | 10/31/2022 | 11/8/2022 | 14747 | 2 of 4 | 2 | 34 | $ 5,141.57 | Z.A.P. Marketing Corp |
| BATLLC-655375925 | 248.71 | 12948 | 11/3/2022 | 11/15/2022 | 12948 | 3 of 3 | 3 | 36 | $ 4,247.91 | Z.A.P. Marketing Corp |
| BATLLC-655495328 | 298.93 | 12153 | 11/3/2022 | 11/30/2022 | 12153 | 3 of 3 | 3 | 36 | $ 5,603.85 | Z.A.P. Marketing Corp |
| BATLLC-656186693 | 271.26 | 24802 | 11/3/2022 | 11/9/2022 | 24802 | 3 of 3 | 3 | 36 | $ 4,856.76 | Z.A.P. Marketing Corp |
| BATLLC-657492428 | 442.37 | 41519 | 11/7/2022 | 12/1/2022 | 41519 | 3 of 3 | 3 | 36 | $ 9,476.73 | Z.A.P. Marketing Corp |
| BATLLC-659121287 | 250.36 | 9239 | 11/10/2022 | 12/2/2022 | 9239 | 3 of 4 | 3 | 35 | $ 4,173.23 | Z.A.P. Marketing Corp |
| BATLLC-659259830 | 330.08 | 28044 | 11/11/2022 | 1/12/2023 | 28044 | 1 of 1 | 1 | 36 | $ 6,444.90 | Z.A.P. Marketing Corp |
| BATLLC-659303672 | 286.21 | 32331 | 11/11/2022 | 11/23/2022 | 32331 | 3 of 3 | 3 | 36 | $ 5,260.41 | Z.A.P. Marketing Corp |
| BATLLC-659322665 | 200.32 | 10649.24 | 1/19/2023 | 2/10/2023 | 10649.24 | 0 of 1 | 0 | 35 | $ 2,859.68 | Z.A.P. Marketing Corp |
| BATLLC-661487738 | 225.24 | 15463 | 11/15/2022 | 11/18/2022 | 15463 | 3 of 3 | 3 | 36 | $ 3,614.22 | Z.A.P. Marketing Corp |
| BATLLC-661563977 | 256.86 | 6419 | 11/15/2022 | 12/5/2022 | 6419 | 2 of 4 | 2 | 34 | $ 4,219.74 | Z.A.P. Marketing Corp |
| BATLLC-661567025 | 316.53 | 13209 | 11/15/2022 | 11/28/2022 | 13209 | 3 of 3 | 3 | 36 | $ 6,079.05 | Z.A.P. Marketing Corp |
| BATLLC-661626701 | 420.1 | 19423 | 11/15/2022 | 12/5/2022 | 19423 | 3 of 3 | 3 | 36 | $ 8,875.44 | Z.A.P. Marketing Corp |
| BATLLC-661722464 | 253.09 | 7052 | 11/16/2022 | 12/5/2022 | 7052 | 1 of 3 | 1 | 34 | $ 4,123.61 | Z.A.P. Marketing Corp |
| BATLLC-661831352 | 265.63 | 16925 | 11/16/2022 | 1/5/2023 | 16925 | 2 of 2 | 2 | 36 | $ 4,704.75 | Z.A.P. Marketing Corp |
| BATLLC-661868885 | 284.97 | 16973 | 11/16/2022 | 12/2/2022 | 16973 | 3 of 3 | 3 | 36 | $ 5,226.93 | Z.A.P. Marketing Corp |
| BATLLC-662051993 | 252.68 | 14067 | 11/17/2022 | 11/28/2022 | 14067 | 3 of 3 | 3 | 36 | $ 4,355.10 | Z.A.P. Marketing Corp |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| BATLLC-667532585 | 127.34 | 12269 | 11/30/2022 | 12/13/2022 | 12269 4 of 4 | 4 | 36 $ | 970.92 Z.A.P. Marketing Corp |
| BATLLC-667589963 | 350.2 | 16863.98 | 11/30/2022 | 12/9/2022 | 16863.98 2 of 3 | 2 | 35 $ | 6,794.03 Z.A.P. Marketing Corp |
| BATLLC-667634921 | 147.78 | 23902 | 11/30/2022 | 12/9/2022 | 23902 4 of 5 | 4 | 35 $ | 1,480.50 Z.A.P. Marketing Corp |
| BATLLC-667638467 | 576.75 | 36028 | 11/30/2022 | 12/9/2022 | 36028 2 of 3 | 2 | 35 $ | 12,740.96 Z.A.P. Marketing Corp |
| BATLLC-667838258 | 275.78 | 16146 | 12/1/2022 | 12/9/2022 | 16146 2 of 3 | 2 | 35 $ | 4,840.50 Z.A.P. Marketing Corp |
| BATLLC-667842368 | 766.63 | 80430 | 12/1/2022 | 1/6/2023 | 80430 1 of 2 | 1 | 35 $ | 17,725.31 Z.A.P. Marketing Corp |
| BATLLC-667855280 | 241.26 | 92198 | 12/1/2022 | 12/9/2022 | 92198 4 of 6 | 4 | 34 $ | 3,821.94 Z.A.P. Marketing Corp |
| BATLLC-668014583 | 261.59 | 19825 | 12/1/2022 | 12/16/2022 | 19825 2 of 3 | 2 | 35 $ | 4,468.01 Z.A.P. Marketing Corp |
| BATLLC-669543896 | 132.3 | 10093.62 | 12/5/2022 | 12/6/2022 | 10093.62 5 of 5 | 5 | 36 $ | 1,104.84 Z.A.P. Marketing Corp |
| BATLLC-670300205 | 254.76 | 9899 | 12/6/2022 | 1/25/2023 | 9899 1 of 1 | 1 | 36 $ | 4,411.26 Z.A.P. Marketing Corp |
| BATLLC-670508231 | 250.6 | 14265.64 | 12/19/2022 | 1/5/2023 | 14265.64 2 of 2 | 2 | 36 $ | 4,298.94 Z.A.P. Marketing Corp |
| BATLLC-671683046 | 357.76 | 16336 | 12/6/2022 | 12/16/2022 | 16336 0 of 2 | 0 | 34 $ | 6,792.69 Z.A.P. Marketing Corp |
| BATLLC-671904791 | 106.29 | 16268 | 12/7/2022 | 1/3/2023 | 16268 3 of 3 | 3 | 36 $ | 402.57 Z.A.P. Marketing Corp |
| BATLLC-672083198 | 258.58 | 4866 | 12/9/2022 | 12/16/2022 | 4866 2 of 2 | 2 | 36 $ | 4,514.40 Z.A.P. Marketing Corp |
| BATLLC-672442859 | 207.33 | 9245.78 | 12/13/2022 | 12/30/2022 | 9245.78 0 of 2 | 0 | 34 $ | 2,956.73 Z.A.P. Marketing Corp |
| BATLLC-672497987 | 391.39 | 35401 | 12/12/2022 | 1/17/2023 | 35401 1 of 1 | 1 | 36 $ | 8,100.27 Z.A.P. Marketing Corp |
| BATLLC-674737502 | 252.74 | 14463 | 12/17/2022 | 1/13/2023 | 14463 1 of 1 | 1 | 36 $ | 4,356.72 Z.A.P. Marketing Corp |
| BATLLC-674738054 | 255.37 | 11924 | 12/13/2022 | 1/4/2023 | 11924 2 of 2 | 2 | 36 $ | 4,427.73 Z.A.P. Marketing Corp |
| BATLLC-674740133 | 254.07 | 9067 | 12/16/2022 | 1/9/2023 | 9067 1 of 2 | 1 | 35 $ | 4,270.61 Z.A.P. Marketing Corp |
| BATLLC-675236429 | 255.86 | 12758 | 12/17/2022 | 1/6/2023 | 12758 1 of 3 | 1 | 34 $ | 4,194.24 Z.A.P. Marketing Corp |
| BATLLC-675747485 | 251.42 | 12791 | 12/19/2022 | 1/6/2023 | 12791 2 of 2 | 2 | 36 $ | 4,321.08 Z.A.P. Marketing Corp |
| BATLLC-675785138 | 256.06 | 11976 | 12/19/2022 | 1/5/2023 | 11976 2 of 2 | 2 | 36 $ | 4,446.36 Z.A.P. Marketing Corp |
| BATLLC-675913910 | 473.66 | 23580 | 12/16/2022 | 1/13/2023 | 23580 1 of 1 | 1 | 36 $ | 10,321.56 Z.A.P. Marketing Corp |
| BATLLC-675929192 | 256.46 | 6403 | 12/16/2022 | 12/19/2022 | 6403 2 of 2 | 2 | 36 $ | 4,457.16 Z.A.P. Marketing Corp |
| BATLLC-675931169 | 251.68 | 8929.95 | 12/19/2022 | 1/17/2023 | 8929.95 1 of 1 | 1 | 36 $ | 4,328.10 Z.A.P. Marketing Corp |
| BATLLC-676092071 | 255.97 | 14363 | 12/19/2022 | 12/29/2022 | 14363 2 of 3 | 2 | 35 $ | 4,320.49 Z.A.P. Marketing Corp |
| BATLLC-676130618 | 255.53 | 9549 | 12/20/2022 | 12/19/2022 | 9549 1 of 2 | 1 | 35 $ | 4,308.94 Z.A.P. Marketing Corp |
| BATLLC-676198484 | 126.45 | 12521 | 12/22/2022 | 12/27/2022 | 12521 3 of 4 | 3 | 35 $ | 920.59 Z.A.P. Marketing Corp |
| BATLLC-676250033 | 256.02 | 8381 | 12/17/2022 | 1/10/2023 | 8381 1 of 1 | 1 | 36 $ | 4,445.28 Z.A.P. Marketing Corp |
| BATLLC-676274825 | 129.04 | 4447 | 12/16/2022 | 1/17/2023 | 4447 2 of 2 | 2 | 36 $ | 1,016.82 Z.A.P. Marketing Corp |
| BATLLC-676284788 | 252.48 | 6244 | 12/21/2022 | 1/13/2023 | 6244 1 of 1 | 1 | 36 $ | 4,349.70 Z.A.P. Marketing Corp |
| BATLLC-676897016 | 460.76 | 43726 | 12/21/2022 | 1/20/2023 | 43726 1 of 1 | 1 | 36 $ | 9,973.26 Z.A.P. Marketing Corp |
| BATLLC-676912883 | 308.16 | 40662 | 12/23/2022 | 1/13/2023 | 40662 0 of 3 | 0 | 33 $ | 5,365.31 Z.A.P. Marketing Corp |
| BATLLC-676945898 | 334.21 | 5905.02 | 12/21/2022 | 1/3/2023 | 5905.02 2 of 2 | 2 | 36 $ | 6,556.41 Z.A.P. Marketing Corp |
| BATLLC-677055365 | 321.11 | 26968 | 12/23/2022 | 1/17/2023 | 26968 1 of 1 | 1 | 36 $ | 6,202.71 Z.A.P. Marketing Corp |
| BATLLC-677375156 | 257.26 | 6033 | 12/22/2022 | 1/4/2023 | 6033 2 of 2 | 2 | 36 $ | 4,478.76 Z.A.P. Marketing Corp |
| BATLLC-677577485 | 319.53 | 26778 | 12/23/2022 | 1/6/2023 | 26778 1 of 1 | 1 | 36 $ | 6,160.05 Z.A.P. Marketing Corp |
| BATLLC-677613317 | 258.22 | 16183.53 | 12/22/2022 | 1/4/2023 | 16183.53 2 of 2 | 2 | 36 $ | 4,504.68 Z.A.P. Marketing Corp |
| BATLLC-677857621 | 369.61 | 32788 | 12/23/2022 | 1/17/2023 | 32788 1 of 2 | 1 | 35 $ | 7,303.54 Z.A.P. Marketing Corp |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| BATLLC-679764305 | 203.95 | 6454 | 12/28/2022 | 1/6/2023 | 6454 2 of 2 | 2 | 36 $ | 3,039.39 Z.A.P. Marketing Corp |
| BATLLC-680407844 | 271.45 | 21008 | 12/28/2022 | 1/11/2023 | 21008 1 of 2 | 1 | 35 $ | 4,726.84 Z.A.P. Marketing Corp |
| BATLLC-680450918 | 254.81 | 6337 | 12/28/2022 | 1/13/2023 | 6337 2 of 2 | 2 | 36 $ | 4,412.61 Z.A.P. Marketing Corp |
| BATLLC-680465237 | 271.19 | 15733 | 12/28/2022 | 1/20/2023 | 15733 1 of 1 | 1 | 36 $ | 4,854.87 Z.A.P. Marketing Corp |
| BATLLC-681357143 | 436.9 | 39160 | 1/12/2023 | 1/20/2023 | 39160 1 of 1 | 1 | 36 $ | 9,329.04 Z.A.P. Marketing Corp |
| BATLLC-681404096 | 332.32 | 33975 | 12/28/2022 | 1/13/2023 | 33975 1 of 1 | 1 | 36 $ | 6,505.38 Z.A.P. Marketing Corp |
| BATLLC-681415529 | 255.75 | 8730 | 12/30/2022 | 1/13/2023 | 8730 1 of 1 | 1 | 36 $ | 4,437.99 Z.A.P. Marketing Corp |
| BATLLC-681415928 | 258.58 | 22708 | 1/27/2023 | 2/17/2023 | 22708 0 of 0 | 0 | 36 $ | 4,514.40 Z.A.P. Marketing Corp |
| BATLLC-681530825 | 252.5 | 18130 | 12/29/2022 | 1/13/2023 | 18130 1 of 1 | 1 | 36 $ | 4,350.24 Z.A.P. Marketing Corp |
| BATLLC-681548360 | 201.48 | 8814.14 | 12/29/2022 | 1/20/2023 | 8814.14 1 of 1 | 1 | 36 $ | 2,972.70 Z.A.P. Marketing Corp |
| BATLLC-681630644 | 201.05 | 6271 | 12/29/2022 | 1/6/2023 | 6271 2 of 2 | 2 | 36 $ | 2,961.09 Z.A.P. Marketing Corp |
| BATLLC-681640052 | 271.1 | 15725 | 12/29/2022 | 1/11/2023 | 15725 1 of 1 | 1 | 36 $ | 4,852.44 Z.A.P. Marketing Corp |
| BATLLC-681655193 | 250.04 | 12293 | 12/29/2022 | 1/4/2023 | 12293 2 of 2 | 2 | 36 $ | 4,283.82 Z.A.P. Marketing Corp |
| BATLLC-681725786 | 120.75 | 5441.66 | 12/29/2022 | 1/13/2023 | 5441.66 2 of 2 | 2 | 36 $ | 792.99 Z.A.P. Marketing Corp |
| BATLLC-681737426 | 252.18 | 11685.06 | 1/12/2023 | 1/11/2023 | 11685.06 1 of 1 | 1 | 36 $ | 4,341.60 Z.A.P. Marketing Corp |
| BATLLC-681819110 | 656.42 | 72988 | 12/30/2022 | 1/13/2023 | 72988 1 of 1 | 1 | 36 $ | 15,256.08 Z.A.P. Marketing Corp |
| BATLLC-681974513 | 283.79 | 16867.11 | 12/30/2022 | 1/13/2023 | 16867.11 1 of 1 | 1 | 36 $ | 5,195.07 Z.A.P. Marketing Corp |
| BATLLC-682090601 | 376.19 | 33577 | 12/30/2022 | 2/21/2023 | 33577 0 of 0 | 0 | 36 $ | 7,689.87 Z.A.P. Marketing Corp |
| BATLLC-684091382 | 253.18 | 5096 | 1/5/2023 | 1/13/2023 | 5096 1 of 1 | 1 | 36 $ | 4,368.60 Z.A.P. Marketing Corp |
| BATLLC-684132038 | 348.95 | 20837 | 1/3/2023 | 1/19/2023 | 20837 0 of 1 | 0 | 35 $ | 6,761.21 Z.A.P. Marketing Corp |
| BATLLC-684297710 | 254.03 | 8671 | 1/3/2023 | 1/17/2023 | 8671 1 of 1 | 1 | 36 $ | 4,391.55 Z.A.P. Marketing Corp |
| BATLLC-685351253 | 258.6 | 14194 | 1/5/2023 | 1/13/2023 | 14194 1 of 1 | 1 | 36 $ | 4,514.94 Z.A.P. Marketing Corp |
| BATLLC-686024348 | 349.57 | 28484 | 1/4/2023 | 1/12/2023 | 28484 0 of 1 | 0 | 35 $ | 6,777.49 Z.A.P. Marketing Corp |
| BATLLC-686202473 | 257.34 | 6841 | 1/4/2023 | 2/3/2023 | 6841 1 of 1 | 1 | 36 $ | 4,480.92 Z.A.P. Marketing Corp |
| BATLLC-686436428 | 202.5 | 8873 | 1/4/2023 | 1/6/2023 | 8873 2 of 2 | 2 | 36 $ | 3,000.24 Z.A.P. Marketing Corp |
| BATLLC-686458016 | 253.39 | 9028 | 1/4/2023 | 2/3/2023 | 9028 1 of 1 | 1 | 36 $ | 4,374.27 Z.A.P. Marketing Corp |
| BATLLC-686501516 | 288.11 | 23007 | 1/5/2023 | 1/13/2023 | 23007 2 of 2 | 2 | 36 $ | 5,311.71 Z.A.P. Marketing Corp |
| BATLLC-686662409 | 250.36 | 8469 | 1/6/2023 | 1/25/2023 | 8469 1 of 1 | 1 | 36 $ | 4,292.46 Z.A.P. Marketing Corp |
| BATLLC-686666435 | 201.42 | 6565 | 1/6/2023 | 2/3/2023 | 6565 1 of 1 | 1 | 36 $ | 2,971.08 Z.A.P. Marketing Corp |
| BATLLC-686684228 | 220.93 | 17935 | 1/5/2023 | 1/20/2023 | 17935 1 of 1 | 1 | 36 $ | 3,497.85 Z.A.P. Marketing Corp |
| BATLLC-686773478 | 313.14 | 26011 | 1/5/2023 | 1/13/2023 | 26011 1 of 1 | 1 | 36 $ | 5,987.52 Z.A.P. Marketing Corp |
| BATLLC-686779007 | 201.31 | 6558 | 1/5/2023 | 2/3/2023 | 6558 1 of 1 | 1 | 36 $ | 2,968.11 Z.A.P. Marketing Corp |
| BATLLC-687003143 | 290.14 | 23251 | 1/6/2023 | 2/10/2023 | 23251 0 of 1 | 0 | 35 $ | 5,217.45 Z.A.P. Marketing Corp |
| BATLLC-687006413 | 210.06 | 7284 | 1/6/2023 | 1/13/2023 | 7284 1 of 1 | 1 | 36 $ | 3,204.36 Z.A.P. Marketing Corp |
| BATLLC-687042038 | 204.3 | 6475 | 1/9/2023 | 1/20/2023 | 6475 1 of 1 | 1 | 36 $ | 3,048.84 Z.A.P. Marketing Corp |
| BATLLC-687097721 | 203.23 | 6945 | 1/6/2023 | 1/25/2023 | 6945 1 of 1 | 1 | 36 $ | 3,019.95 Z.A.P. Marketing Corp |
| BATLLC-687106223 | 251.29 | 24372.38 | 1/6/2023 | 2/3/2023 | 24372.38 1 of 1 | 1 | 36 $ | 4,317.57 Z.A.P. Marketing Corp |
| BATLLC-687364535 | 255.24 | 10723 | 1/9/2023 | 1/20/2023 | 10723 1 of 1 | 1 | 36 $ | 4,424.22 Z.A.P. Marketing Corp |
| | | 12310 | 1/9/2023 | 2/1/2023 | 12310 1 of 1 | 1 | 36 $ | 4,341.87 Z.A.P. Marketing Corp |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| BATLLC-690812723 | 254.78 | 7128 | 1/11/2023 | 1/27/2023 | 7128 0 of 1 | 0 | 35 | $ | 4,289.25 Z.A.P. Marketing Corp |
| BATLLC-690858815 | 532.5 | 52334 | 1/12/2023 | 1/27/2023 | 52334 1 of 2 | 1 | 35 | $ | 11,579.40 Z.A.P. Marketing Corp |
| BATLLC-690926492 | 202.21 | 6085 | 1/11/2023 | 2/10/2023 | 6085 0 of 1 | 0 | 35 | $ | 2,909.29 Z.A.P. Marketing Corp |
| BATLLC-690947360 | 204.67 | 15648 | 1/23/2023 | 1/30/2023 | 15648 1 of 1 | 1 | 36 | $ | 3,058.83 Z.A.P. Marketing Corp |
| BATLLC-690989630 | 203.19 | 9613 | 1/14/2023 | 1/20/2023 | 9613 1 of 2 | 1 | 35 | $ | 2,935.01 Z.A.P. Marketing Corp |
| BATLLC-691073795 | 100 | 7140 | 1/11/2023 | 2/6/2023 | 7140 1 of 1 | 1 | 36 | $ | 232.74 Z.A.P. Marketing Corp |
| BATLLC-691457750 | 1080.87 | 88604 | 1/13/2023 | 2/6/2023 | 88604 1 of 1 | 1 | 36 | $ | 26,716.23 Z.A.P. Marketing Corp |
| BATLLC-691564172 | 203.02 | 9032 | 1/12/2023 | 2/10/2023 | 9032 0 of 1 | 0 | 35 | $ | 2,930.55 Z.A.P. Marketing Corp |
| BATLLC-691573793 | 200.92 | 6109 | 1/12/2023 | 2/10/2023 | 6109 0 of 1 | 0 | 35 | $ | 2,875.43 Z.A.P. Marketing Corp |
| BATLLC-691578854 | 252.94 | 16047 | 1/12/2023 | 2/24/2023 | 16047 0 of 0 | 0 | 36 | $ | 4,362.12 Z.A.P. Marketing Corp |
| BATLLC-691588829 | 203.39 | 6153 | 1/12/2023 | 1/20/2023 | 6153 1 of 1 | 1 | 36 | $ | 3,024.27 Z.A.P. Marketing Corp |
| BATLLC-691642712 | 679.12 | 37856 | 1/12/2023 | 2/6/2023 | 37856 1 of 2 | 1 | 35 | $ | 15,428.18 Z.A.P. Marketing Corp |
| BATLLC-691653059 | 201.59 | 7102 | 1/12/2023 | 2/10/2023 | 7102 0 of 1 | 0 | 35 | $ | 2,893.01 Z.A.P. Marketing Corp |
| BATLLC-691659479 | 208.97 | 7037 | 1/12/2023 | 1/27/2023 | 7037 0 of 1 | 0 | 35 | $ | 3,086.74 Z.A.P. Marketing Corp |
| BATLLC-691661591 | 256.8 | 30800 | 2/2/2023 | 2/1/2023 | 30800 1 of 1 | 1 | 36 | $ | 4,466.34 Z.A.P. Marketing Corp |
| BATLLC-691732862 | 250.09 | 14638 | 1/13/2023 | 1/27/2023 | 14638 1 of 1 | 1 | 36 | $ | 4,285.17 Z.A.P. Marketing Corp |
| BATLLC-691835645 | 907.16 | 123692 | 1/31/2023 | 2/28/2023 | 123692 0 of 0 | 0 | 36 | $ | 22,026.06 Z.A.P. Marketing Corp |
| BATLLC-693162293 | 248.87 | 19265 | 1/18/2023 | 2/3/2023 | 19265 1 of 1 | 1 | 36 | $ | 4,252.23 Z.A.P. Marketing Corp |
| BATLLC-693167489 | 292.98 | 23592 | 1/17/2023 | 2/3/2023 | 23592 1 of 1 | 1 | 36 | $ | 5,443.20 Z.A.P. Marketing Corp |
| BATLLC-693270683 | 389.25 | 17955 | 1/17/2023 | 2/10/2023 | 17955 0 of 1 | 0 | 35 | $ | 7,819.09 Z.A.P. Marketing Corp |
| BATLLC-693285455 | 429.71 | 40000 | 1/17/2023 | 2/3/2023 | 40000 1 of 1 | 1 | 36 | $ | 9,134.91 Z.A.P. Marketing Corp |
| BATLLC-693308321 | 179.23 | 10483 | 1/20/2023 | 2/17/2023 | 10483 0 of 0 | 0 | 36 | $ | 2,371.95 Z.A.P. Marketing Corp |
| BATLLC-693357614 | 194.16 | 16057 | 1/17/2023 | 2/24/2023 | 16057 0 of 0 | 0 | 36 | $ | 2,775.06 Z.A.P. Marketing Corp |
| BATLLC-693392267 | 200.28 | 23118 | 1/20/2023 | 2/27/2023 | 23118 0 of 0 | 0 | 36 | $ | 2,940.30 Z.A.P. Marketing Corp |
| BATLLC-693393224 | 252.41 | 14043 | 1/17/2023 | 2/1/2023 | 14043 1 of 1 | 1 | 36 | $ | 4,347.81 Z.A.P. Marketing Corp |
| BATLLC-693394187 | 201.87 | 14215 | 1/17/2023 | 2/17/2023 | 14215 0 of 0 | 0 | 36 | $ | 2,983.23 Z.A.P. Marketing Corp |
| BATLLC-693409181 | 200.66 | 9385 | 1/19/2023 | 2/17/2023 | 9385 0 of 0 | 0 | 36 | $ | 2,950.56 Z.A.P. Marketing Corp |
| BATLLC-693476036 | 193.21 | 6526 | 1/18/2023 | 2/17/2023 | 6526 0 of 0 | 0 | 36 | $ | 2,749.41 Z.A.P. Marketing Corp |
| BATLLC-693484166 | 251.29 | 15491 | 1/17/2023 | 1/31/2023 | 15491 1 of 1 | 1 | 36 | $ | 4,317.57 Z.A.P. Marketing Corp |
| BATLLC-693509672 | 230.51 | 16095 | 1/17/2023 | 2/17/2023 | 16095 0 of 0 | 0 | 36 | $ | 3,756.51 Z.A.P. Marketing Corp |
| BATLLC-693544703 | 203.49 | 8301 | 1/17/2023 | 2/17/2023 | 8301 0 of 0 | 0 | 36 | $ | 3,026.97 Z.A.P. Marketing Corp |
| BATLLC-693553580 | 234.82 | 6922.15 | 1/18/2023 | 2/3/2023 | 6922.15 1 of 1 | 1 | 36 | $ | 3,872.88 Z.A.P. Marketing Corp |
| BATLLC-693554165 | 258.33 | 33622 | 1/18/2023 | 2/17/2023 | 33622 0 of 0 | 0 | 36 | $ | 4,507.65 Z.A.P. Marketing Corp |
| BATLLC-693612521 | 203.13 | 24791 | 1/18/2023 | 2/2/2023 | 24791 0 of 1 | 0 | 35 | $ | 2,933.44 Z.A.P. Marketing Corp |
| BATLLC-693635657 | 205.05 | 18823 | 1/18/2023 | 2/17/2023 | 18823 0 of 0 | 0 | 36 | $ | 3,069.09 Z.A.P. Marketing Corp |
| BATLLC-693755390 | 257.04 | 19279 | 1/18/2023 | 1/27/2023 | 19279 1 of 1 | 1 | 36 | $ | 4,472.82 Z.A.P. Marketing Corp |
| BATLLC-693773939 | 201.11 | 17204 | 1/18/2023 | 1/27/2023 | 17204 0 of 2 | 0 | 34 | $ | 2,798.12 Z.A.P. Marketing Corp |
| BATLLC-693850916 | 201.56 | 9202 | 1/18/2023 | 2/28/2023 | 9202 0 of 0 | 0 | 36 | $ | 2,974.86 Z.A.P. Marketing Corp |
| BATLLC-693871652 | 395.38 | 35880 | 1/18/2023 | 1/20/2023 | 35880 1 of 1 | 1 | 36 | $ | 8,208.00 Z.A.P. Marketing Corp |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| BATLLC-695514845 | 304.66 | 17098 | 1/23/2023 | 1/25/2023 | 17098 1 of 1 | 1 | 36 $ | 5,758.56 Z.A.P. Marketing Corp |
| BATLLC-695696222 | 376.06 | 33561 | 1/26/2023 | 2/10/2023 | 33561 0 of 1 | 0 | 35 $ | 7,472.85 Z.A.P. Marketing Corp |
| BATLLC-696407477 | 274.78 | 12042 | 1/24/2023 | 2/3/2023 | 12042 1 of 1 | 1 | 36 $ | 4,951.80 Z.A.P. Marketing Corp |
| BATLLC-696535094 | 274.56 | 21382 | 1/24/2023 | 2/3/2023 | 21382 1 of 1 | 1 | 36 $ | 4,945.86 Z.A.P. Marketing Corp |
| BATLLC-697096589 | 175.94 | 6068.19 | 1/24/2023 | 2/17/2023 | 6068.19 0 of 0 | 0 | 36 $ | 2,283.12 Z.A.P. Marketing Corp |
| BATLLC-697128107 | 251.95 | 5834 | 1/24/2023 | 2/6/2023 | 5834 1 of 1 | 1 | 36 $ | 4,335.39 Z.A.P. Marketing Corp |
| BATLLC-699638279 | 207.97 | 10043 | 1/25/2023 | 2/3/2023 | 10043 0 of 1 | 0 | 35 $ | 3,060.49 Z.A.P. Marketing Corp |
| BATLLC-699644174 | 326.13 | 27570 | 1/25/2023 | 2/10/2023 | 27570 0 of 1 | 0 | 35 $ | 6,162.19 Z.A.P. Marketing Corp |
| BATLLC-699655376 | 343.39 | 16259 | 1/25/2023 | 2/16/2023 | 16259 0 of 0 | 0 | 36 $ | 6,804.27 Z.A.P. Marketing Corp |
| BATLLC-699707132 | 328.62 | 25239.04 | 1/25/2023 | 2/24/2023 | 25239.04 0 of 0 | 0 | 36 $ | 6,405.48 Z.A.P. Marketing Corp |
| BATLLC-699714575 | 254.59 | 36693 | 1/25/2023 | 2/17/2023 | 36693 0 of 0 | 0 | 36 $ | 4,406.67 Z.A.P. Marketing Corp |
| BATLLC-699768896 | 815.17 | 86255 | 1/25/2023 | 2/17/2023 | 86255 0 of 0 | 0 | 36 $ | 19,542.33 Z.A.P. Marketing Corp |
| BATLLC-699979382 | 262.9 | 36807 | 1/28/2023 | 3/1/2023 | 36807 0 of 0 | 0 | 36 $ | 4,631.04 Z.A.P. Marketing Corp |
| BATLLC-700438925 | 247.71 | 11350 | 1/26/2023 | 1/26/2023 | 11350 1 of 1 | 1 | 36 $ | 4,220.91 Z.A.P. Marketing Corp |
| BATLLC-700488656 | 179.14 | 23280 | 1/26/2023 | 2/28/2023 | 23280 0 of 0 | 0 | 36 $ | 2,369.52 Z.A.P. Marketing Corp |
| BATLLC-700530770 | 253.18 | 12544 | 1/26/2023 | 2/3/2023 | 12544 0 of 2 | 0 | 34 $ | 4,125.90 Z.A.P. Marketing Corp |
| BATLLC-700573352 | 246.58 | 12767 | 1/26/2023 | 2/21/2023 | 12767 0 of 0 | 0 | 36 $ | 4,190.40 Z.A.P. Marketing Corp |
| BATLLC-700579313 | 195.9 | 20680 | 1/27/2023 | 2/17/2023 | 20680 0 of 0 | 0 | 36 $ | 2,822.04 Z.A.P. Marketing Corp |
| BATLLC-700581767 | 172.59 | 9047 | 1/27/2023 | 2/28/2023 | 9047 0 of 0 | 0 | 36 $ | 2,192.67 Z.A.P. Marketing Corp |
| BATLLC-700625084 | 199.57 | 6055 | 1/27/2023 | 2/6/2023 | 6055 1 of 1 | 1 | 36 $ | 2,921.13 Z.A.P. Marketing Corp |
| BATLLC-700626698 | 173.11 | 9681 | 1/27/2023 | 2/3/2023 | 9681 1 of 1 | 1 | 36 $ | 2,206.71 Z.A.P. Marketing Corp |
| BATLLC-700672577 | 205.27 | 18242 | 1/27/2023 | 2/17/2023 | 18242 0 of 0 | 0 | 36 $ | 3,075.03 Z.A.P. Marketing Corp |
| BATLLC-700678331 | 364.77 | 43417 | 1/27/2023 | 2/28/2023 | 43417 0 of 0 | 0 | 36 $ | 7,381.53 Z.A.P. Marketing Corp |
| BATLLC-700745513 | 202.4 | 25524 | 1/27/2023 | 2/3/2023 | 25524 1 of 1 | 1 | 36 $ | 2,997.54 Z.A.P. Marketing Corp |
| BATLLC-700764779 | 251.03 | 11599 | 1/27/2023 | 2/6/2023 | 11599 1 of 1 | 1 | 36 $ | 4,310.55 Z.A.P. Marketing Corp |
| BATLLC-702482339 | 224.09 | 42215 | 1/30/2023 | 2/17/2023 | 42215 0 of 0 | 0 | 36 $ | 3,583.17 Z.A.P. Marketing Corp |
| BATLLC-702499079 | 151.23 | 5564 | 2/1/2023 | 2/28/2023 | 5564 0 of 0 | 0 | 36 $ | 1,615.95 Z.A.P. Marketing Corp |
| BATLLC-702562334 | 242.3 | 29116.38 | 1/30/2023 | 2/28/2023 | 29116.38 0 of 0 | 0 | 36 $ | 4,074.84 Z.A.P. Marketing Corp |
| BATLLC-703145036 | 410.42 | 37685 | 1/31/2023 | 2/13/2023 | 37685 0 of 1 | 0 | 35 $ | 8,374.80 Z.A.P. Marketing Corp |
| BATLLC-703161413 | 189.46 | 8377 | 1/31/2023 | 2/28/2023 | 8377 0 of 1 | 0 | 36 $ | 2,648.16 Z.A.P. Marketing Corp |
| BATLLC-703161458 | 202.13 | 17857 | 1/31/2023 | 2/22/2023 | 17857 0 of 0 | 0 | 36 $ | 2,990.25 Z.A.P. Marketing Corp |
| BATLLC-703170344 | 253.64 | 21059 | 1/31/2023 | 2/3/2023 | 21059 0 of 2 | 0 | 34 $ | 4,137.63 Z.A.P. Marketing Corp |
| BATLLC-703197842 | 254.56 | 8700 | 1/31/2023 | 2/28/2023 | 8700 0 of 0 | 0 | 36 $ | 4,405.86 Z.A.P. Marketing Corp |
| BATLLC-703203611 | 664.32 | 68153 | 2/1/2023 | 2/3/2023 | 68153 1 of 1 | 1 | 36 $ | 15,469.38 Z.A.P. Marketing Corp |
| BATLLC-703215251 | 325.82 | 32241 | 2/1/2023 | 3/2/2023 | 32241 0 of 0 | 0 | 36 $ | 6,329.88 Z.A.P. Marketing Corp |
| BATLLC-703218395 | 160.54 | 17585 | 2/1/2023 | 2/17/2023 | 17585 0 of 0 | 0 | 36 $ | 1,867.32 Z.A.P. Marketing Corp |
| BATLLC-703230620 | 201.77 | 8063 | 2/1/2023 | 3/1/2023 | 8063 0 of 0 | 0 | 36 $ | 2,980.53 Z.A.P. Marketing Corp |
| BATLLC-703243701 | 251.71 | 15533 | 1/31/2023 | 2/10/2023 | 15533 0 of 1 | 0 | 35 $ | 4,208.66 Z.A.P. Marketing Corp |
| BATLLC-703243771 | 154 | 6613 | 1/31/2023 | 2/13/2023 | 6613 0 of 1 | 0 | 35 $ | 1,643.78 Z.A.P. Marketing Corp |

| Account | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| BATLLC-705931892 | 159.48 | 7572 | 2/3/2023 | 3/1/2023 | 7572 0 of 0 | 0 | 36 | $ | 1,838.70 | Z.A.P. Marketing Corp |
| BATLLC-705956546 | 186.09 | 8074 | 2/3/2023 | 2/23/2023 | 8074 0 of 0 | 0 | 36 | $ | 2,557.17 | Z.A.P. Marketing Corp |
| BATLLC-705967025 | 249.26 | 19303 | 2/3/2023 | 2/13/2023 | 19303 0 of 1 | 0 | 35 | $ | 4,144.35 | Z.A.P. Marketing Corp |
| BATLLC-706010033 | 341.95 | 11016 | 2/3/2023 | 3/3/2023 | 11016 0 of 0 | 0 | 36 | $ | 6,765.39 | Z.A.P. Marketing Corp |
| BATLLC-707159957 | 158.4 | 10286.27 | 2/6/2023 | 3/2/2023 | 10286.27 0 of 0 | 0 | 36 | $ | 1,809.54 | Z.A.P. Marketing Corp |
| BATLLC-707303912 | 262.2 | 25681 | 2/7/2023 | 2/22/2023 | 25681 0 of 0 | 0 | 36 | $ | 4,612.14 | Z.A.P. Marketing Corp |
| BATLLC-707361875 | 197.1 | 7554 | 2/6/2023 | 2/21/2023 | 7554 0 of 0 | 0 | 36 | $ | 2,854.44 | Z.A.P. Marketing Corp |
| BATLLC-707515307 | 206.09 | 7895 | 2/7/2023 | 2/17/2023 | 7895 0 of 0 | 0 | 36 | $ | 3,097.17 | Z.A.P. Marketing Corp |
| BATLLC-707519405 | 339.22 | 29141 | 2/7/2023 | 2/17/2023 | 29141 0 of 0 | 0 | 36 | $ | 6,691.68 | Z.A.P. Marketing Corp |
| BATLLC-707612576 | 153.63 | 8435 | 2/7/2023 | 3/3/2023 | 8435 0 of 0 | 0 | 36 | $ | 1,680.75 | Z.A.P. Marketing Corp |
| BATLLC-707645843 | 251 | 26842 | 2/7/2023 | 2/17/2023 | 26842 0 of 0 | 0 | 36 | $ | 4,309.74 | Z.A.P. Marketing Corp |
| BATLLC-707776166 | 251.69 | 15771 | 2/7/2023 | 3/1/2023 | 15771 0 of 0 | 0 | 36 | $ | 4,328.37 | Z.A.P. Marketing Corp |
| BATLLC-707846753 | 149.85 | 6777 | 2/8/2023 | 3/3/2023 | 6777 0 of 0 | 0 | 36 | $ | 1,578.69 | Z.A.P. Marketing Corp |
| BATLLC-707929274 | 241.92 | 7277 | 2/8/2023 | 2/24/2023 | 7277 0 of 0 | 0 | 36 | $ | 4,064.58 | Z.A.P. Marketing Corp |
| BATLLC-708591959 | 247.37 | 11951 | 2/8/2023 | 2/16/2023 | 11951 0 of 0 | 0 | 36 | $ | 4,211.73 | Z.A.P. Marketing Corp |
| BATLLC-708634724 | 209.18 | 14489 | 2/7/2023 | 3/3/2023 | 14489 0 of 0 | 0 | 36 | $ | 3,180.60 | Z.A.P. Marketing Corp |
| BATLLC-708672842 | 206.27 | 18970 | 2/8/2023 | 3/3/2023 | 18970 0 of 0 | 0 | 36 | $ | 3,102.03 | Z.A.P. Marketing Corp |
| BATLLC-709081055 | 315.03 | 26238 | 2/8/2023 | 2/27/2023 | 26238 0 of 0 | 0 | 36 | $ | 6,038.55 | Z.A.P. Marketing Corp |
| BATLLC-709123040 | 228.27 | 21609 | 2/8/2023 | 3/1/2023 | 21609 0 of 0 | 0 | 36 | $ | 3,696.03 | Z.A.P. Marketing Corp |
| BATLLC-709198904 | 445.98 | 32775.21 | 2/8/2023 | 3/3/2023 | 32775.21 0 of 0 | 0 | 36 | $ | 9,574.20 | Z.A.P. Marketing Corp |
| BATLLC-709199129 | 310.47 | 26228 | 2/8/2023 | 3/6/2023 | 26228 0 of 0 | 0 | 36 | $ | 5,915.43 | Z.A.P. Marketing Corp |
| BATLLC-709202939 | 254.38 | 7900 | 2/9/2023 | 2/17/2023 | 7900 0 of 0 | 0 | 36 | $ | 4,401.00 | Z.A.P. Marketing Corp |
| BATLLC-709267979 | 207.45 | 10352 | 2/9/2023 | 3/15/2023 | 10352 0 of 0 | 0 | 36 | $ | 3,133.89 | Z.A.P. Marketing Corp |
| BATLLC-709369961 | 277.69 | 6885 | 2/9/2023 | 3/3/2023 | 6885 0 of 0 | 0 | 36 | $ | 5,030.37 | Z.A.P. Marketing Corp |
| BATLLC-709503788 | 325.43 | 16606 | 2/9/2023 | 3/3/2023 | 16606 0 of 0 | 0 | 36 | $ | 6,319.35 | Z.A.P. Marketing Corp |
| BATLLC-704163122 | 250.06 | 25739 | 2/1/2023 | 2/3/2023 | 25739 1 of 2 | 1 | 35 | $ | 4,165.35 | Z.A.P. Marketing Corp |
| BATLLC-627105262 | 840.16 | 51002 | 9/6/2022 | 9/28/2022 | 51002 4 of 5 | 4 | 35 | $ | 19,655.48 | Z.A.P. Marketing Corp |
| BATLLC-642082208 | 285.72 | 23916 | 10/13/2022 | 10/24/2022 | 23916 3 of 4 | 3 | 35 | $ | 5,101.43 | Z.A.P. Marketing Corp |
| BATLLC-646582871 | 323.43 | 27246 | 10/14/2022 | 10/19/2022 | 27246 3 of 4 | 3 | 35 | $ | 6,091.31 | Z.A.P. Marketing Corp |
| BATLLC-648797459 | 254.57 | 8305 | 10/18/2022 | 11/14/2022 | 8305 3 of 3 | 3 | 36 | $ | 4,406.13 | Z.A.P. Marketing Corp |
| BATLLC-649937924 | 507.48 | 20259.95 | 10/20/2022 | 10/21/2022 | 20259.95 4 of 4 | 4 | 36 | $ | 11,234.70 | Z.A.P. Marketing Corp |
| BATLLC-650332547 | 517.26 | 48100 | 10/20/2022 | 11/18/2022 | 48100 2 of 3 | 2 | 35 | $ | 11,179.35 | Z.A.P. Marketing Corp |
| BATLLC-652060061 | 284.42 | 16924 | 10/25/2022 | 11/14/2022 | 16924 2 of 4 | 2 | 34 | $ | 4,922.52 | Z.A.P. Marketing Corp |
| BATLLC-654117389 | 608.15 | 46059 | 10/31/2022 | 11/24/2022 | 46059 0 of 2 | 0 | 34 | $ | 13,177.64 | Z.A.P. Marketing Corp |
| BATLLC-654155921 | 473.05 | 7913 | 10/31/2022 | 11/11/2022 | 7913 0 of 3 | 0 | 33 | $ | 9,446.33 | Z.A.P. Marketing Corp |
| BATLLC-654184403 | 254.38 | 8295 | 10/31/2022 | 11/4/2022 | 8295 2 of 4 | 2 | 34 | $ | 4,156.50 | Z.A.P. Marketing Corp |
| BATLLC-654424808 | 617.28 | 31254 | 11/1/2022 | 11/10/2022 | 31254 0 of 2 | 0 | 34 | $ | 13,410.45 | Z.A.P. Marketing Corp |
| BATLLC-654504965 | 261.73 | 5374 | 11/1/2022 | 11/14/2022 | 5374 3 of 2 | 3 | 34 | $ | 4,599.45 | Z.A.P. Marketing Corp |
| BATLLC-655270054 | 846.79 | 89989 | 11/16/2022 | 12/9/2022 | 89989 0 of 2 | 0 | 34 | $ | 19,250.21 | Z.A.P. Marketing Corp |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| BATLLC-670324229 | 335.43 | 22647 | 12/27/2022 | 12/30/2022 | 22647 1 of 1 | 1 | 36 | $ | 6,589.35 Z.A.P. Marketing Corp |
| BATLLC-670586888 | 252.96 | 13309 | 12/6/2022 | 12/19/2022 | 13309 1 of 2 | 1 | 35 | $ | 4,241.48 Z.A.P. Marketing Corp |
| BATLLC-671395190 | 250.65 | 13499 | 12/6/2022 | 12/12/2022 | 13499 2 of 2 | 2 | 36 | $ | 4,300.29 Z.A.P. Marketing Corp |
| BATLLC-672147239 | 296.01 | 32666 | 12/7/2022 | 12/27/2022 | 32666 1 of 1 | 1 | 36 | $ | 5,525.01 Z.A.P. Marketing Corp |
| BATLLC-672363776 | 272.85 | 15882 | 12/8/2022 | 12/27/2022 | 15882 1 of 2 | 1 | 35 | $ | 4,763.59 Z.A.P. Marketing Corp |
| BATLLC-672389945 | 357.05 | 23460 | 12/9/2022 | 12/28/2022 | 23460 1 of 2 | 1 | 35 | $ | 6,973.84 Z.A.P. Marketing Corp |
| BATLLC-672409640 | 126.09 | 10517 | 12/9/2022 | 12/16/2022 | 10517 0 of 4 | 0 | 32 | $ | 833.04 Z.A.P. Marketing Corp |
| BATLLC-672446588 | 339.2 | 15176 | 12/12/2022 | 12/23/2022 | 15176 0 of 2 | 0 | 34 | $ | 6,319.41 Z.A.P. Marketing Corp |
| BATLLC-673866419 | 251.54 | 16926 | 12/14/2022 | 12/23/2022 | 16926 1 of 2 | 1 | 35 | $ | 4,204.20 Z.A.P. Marketing Corp |
| BATLLC-674228096 | 271.44 | 26259 | 12/14/2022 | 1/13/2023 | 26259 0 of 1 | 0 | 35 | $ | 4,726.58 Z.A.P. Marketing Corp |
| BATLLC-676274168 | 238.28 | 10136 | 12/20/2022 | 1/10/2023 | 10136 0 of 1 | 0 | 35 | $ | 3,856.13 Z.A.P. Marketing Corp |
| BATLLC-676287512 | 259.42 | 8967 | 12/20/2022 | 1/4/2023 | 8967 1 of 2 | 1 | 35 | $ | 4,411.05 Z.A.P. Marketing Corp |
| BATLLC-676333793 | 303.24 | 24823 | 12/21/2022 | 1/17/2023 | 24823 0 of 1 | 0 | 35 | $ | 5,561.33 Z.A.P. Marketing Corp |
| BATLLC-676935359 | 251.43 | 11629 | 12/21/2022 | 1/3/2023 | 11629 1 of 2 | 1 | 35 | $ | 4,201.31 Z.A.P. Marketing Corp |
| BATLLC-677224820 | 227.2 | 13456 | 12/22/2022 | 1/5/2023 | 13456 1 of 2 | 1 | 35 | $ | 3,565.28 Z.A.P. Marketing Corp |
| BATLLC-677381810 | 254.32 | 7502 | 12/23/2022 | 1/3/2023 | 7502 1 of 2 | 1 | 35 | $ | 4,277.18 Z.A.P. Marketing Corp |
| BATLLC-678434570 | 253.77 | 9050 | 12/28/2022 | 1/23/2023 | 9050 0 of 1 | 0 | 35 | $ | 4,262.74 Z.A.P. Marketing Corp |
| BATLLC-679706804 | 251.02 | 10825 | 12/28/2022 | 1/3/2023 | 10825 1 of 2 | 1 | 35 | $ | 4,190.55 Z.A.P. Marketing Corp |
| BATLLC-681725885 | 314.36 | 26157 | 12/30/2022 | 1/17/2023 | 26157 1 of 1 | 1 | 36 | $ | 6,020.46 Z.A.P. Marketing Corp |
| BATLLC-681736031 | 269.25 | 15805 | 12/30/2022 | 1/3/2023 | 15805 1 of 2 | 1 | 35 | $ | 4,669.00 Z.A.P. Marketing Corp |
| BATLLC-681822851 | 203.47 | 18633 | 12/30/2022 | 1/27/2023 | 18633 0 of 1 | 0 | 35 | $ | 2,942.36 Z.A.P. Marketing Corp |
| BATLLC-686671061 | 204.54 | 6760 | 1/6/2023 | 2/3/2023 | 6760 0 of 1 | 0 | 35 | $ | 2,970.45 Z.A.P. Marketing Corp |
| BATLLC-693190631 | 253.67 | 10224 | 1/19/2023 | 1/27/2023 | 10224 1 of 1 | 1 | 36 | $ | 4,381.83 Z.A.P. Marketing Corp |
| BATLLC-713545763 | 548.19 | 44955 | 3/2/2023 | 2/16/2023 | 44955 0 of 1 | 0 | 35 | $ | 11,991.26 Z.A.P. Marketing Corp |
| BATLLC-718601021 | 156.34 | 28119.66 | 2/22/2023 | 2/24/2023 | 28119.66 0 of 2 | 0 | 34 | $ | 1,656.48 Z.A.P. Marketing Corp |
| BATLLC-655489220 | 313.97 | 29841 | 11/4/2022 | 11/7/2022 | 29841 2 of 3 | 2 | 35 | $ | 5,842.99 Z.A.P. Marketing Corp |
| BATLLC-699626444 | 263.31 | 20031 | 1/25/2023 | 2/2/2023 | 20031 0 of 1 | 0 | 35 | $ | 4,513.16 Z.A.P. Marketing Corp |
| BATLLC-700454246 | 192.71 | 6142 | 1/26/2023 | 1/30/2023 | 6142 1 of 2 | 1 | 35 | $ | 2,659.91 Z.A.P. Marketing Corp |
| BATLLC-659079905 | 253.13 | 12540 | 11/10/2022 | 12/1/2022 | 12540 3 of 4 | 3 | 35 | $ | 4,245.94 Z.A.P. Marketing Corp |
| BATLLC-660459353 | 376 | 29273.9 | 11/15/2022 | 11/25/2022 | 29273.9 3 of 5 | 3 | 34 | $ | 7,257.81 Z.A.P. Marketing Corp |
| BATLLC-674088719 | 262.34 | 26554 | 12/17/2022 | 1/17/2023 | 26554 1 of 2 | 1 | 35 | $ | 4,487.70 Z.A.P. Marketing Corp |
| BATLLC-677814914 | 403.29 | 40921 | 12/23/2022 | 1/17/2023 | 40921 1 of 2 | 1 | 35 | $ | 8,187.64 Z.A.P. Marketing Corp |
| BATLLC-693608678 | 252.62 | 10546 | 1/20/2023 | 2/6/2023 | 10546 1 of 2 | 1 | 35 | $ | 4,232.55 Z.A.P. Marketing Corp |
| BATLLC-672705326 | 427.04 | 34010.79 | 12/13/2022 | 12/22/2022 | 34010.79 1 of 3 | 1 | 34 | $ | 8,559.33 Z.A.P. Marketing Corp |
| | | | | | | | | $ | 1,859,726.10 |

1

**PROOF OF SERVICE**

2  STATE OF CALIFORNIA        )
                                            ) ss.
3  COUNTY OF VENTURA        )

4        I am employed in the County of Ventura, State of California; I am over the age of
   eighteen years and not a party to the within action; my business address is 1860 Bridgegate
5  Street, Westlake Village, California 91361-1409.

6        On February 21, 2024, I served the foregoing document described as **PROOF OF CLAIM;
   THE LITIGATION PRACTICE GROUP PC - AFFILIATE AGREEMENT; ACCOUNTS
7  RECEIVABLE PURCHASE AGREEMENT; ZAP PIPELINE; ZAP UNIVERSE OWED** on
   the interested parties in said action, by placing sending a true copy thereof by email, addressed as
8  follows:

9

10 | The Litigation Practice Group P.C.<br>Claims Processing<br>c/o Omni Agent Solutions<br>5955 De Soto Avenue<br>Suite 100<br>Woodland Hills, CA 91367<br>Telephone # 818-906-8300 |  |
| --- | --- |

11

12

13

14

15        [XX]  [VIA FEDERAL EXPRESS (FEDEX® EXPRESS)] I enclosed the documents in
16 an envelope or package in accordance with the guidelines provided by Federal Express® and
   addressed to the person(s) listed above. I placed the envelope or package for collection at our
17 office in Westlake Village by an authorized representative of Federal Express®, using Tracking
   No. 7752 6480 9345.

18        I declare under penalty of perjury under the laws of the State of California that the above
19 is true and correct.

20        Executed on February 21, 2024, at Westlake Village, California.

21

22                                                                          _____
                                                                                    JESSICA BURGESS
23

24

25

26

27

28

1



After printing this label:
**CONSIGNEE COPY - PLEASE PLACE IN FRONT OF POUCH**
1. Fold the printed page along the horizontal line.
2. Place label in shipping pouch and affix it to your shipment.

Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com. FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is $1,000, e.g. jewelry, precious metals, negotiable instruments and other items listed in our Service Guide. Written claims must be filed within strict time limits, see current FedEx Service Guide.

# ADVERARY PROCEEDING COVER SHEET

B1040 (FORM 1040) (12/24)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

**PLAINTIFFS**
Richard A. Marshack, Trustee of the LPG Liquidation Trust

**DEFENDANTS**
Outsource LLC, dba Apex Marketing LLC, a Delaware Limited Liability Company; Ali Kash, individually and as principal of Outsource LLC; Z.A.P. Marketing Corp., a California Corporation; Mohamed Hegazi, an individual and Chief Executive Officer of Z.A.P.  Marketing Corp.; and Zeid Nesheiwat, a principal of Z.A.P. Marketing Corp.,

**ATTORNEYS** (Firm Name, Address, and Telephone No.)
Yosina M. Lissebeck (SBN 201654)
Jacob R. Bothamley (319457)
DINSMORE & SHOHL LLP
655 West Broadway, Suite 800
San Diego, CA 92101    Telephone (619) 400-0500
yosina.lissebeck@dinsmore.com
Jacob.bothamely@dinsmore.com

**ATTORNEYS** (If Known)

**PARTY** (Check One Box Only)
- [ ] Debtor
- [ ] Creditor
- [x] Trustee
- [ ] U.S. Trustee/Bankruptcy Admin
- [ ] Other

**PARTY** (Check One Box Only)
- [ ] Debtor
- [ ] Creditor
- [ ] Trustee
- [ ] U.S. Trustee/Bankruptcy Admin
- [x] Other

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
Complaint For: (1) Avoidance, Recovery, And Preservation Of 4-Year Actual Fraudulent Transfers; (2) Avoidance, Recovery, And Preservation Of 4-Year Constructive Fraudulent Transfers; (3) Avoidance, Recovery, And Preservation Of 2-Year Actual Fraudulent Transfers; (4) Avoidance, Recovery, And Preservation Of 2-Year Constructive Fraudulent Transfers; (5) Avoidance,   Recovery, And Preservation Of Transfers Within 90-Days Of The Petition Date; (6) Avoidance, Recovery, And Preservation Of Post-Petition Transfers;   (7) Turnover;   (8) Aiding And Abetting Fraud; And (9) Disallowance Of Claims

**NATURE OF SUIT**

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(a) – Recovery of Money/Property**
- [x] 11-Recovery of money/property - §542 turnover of property
- [x] 12-Recovery of money/property - §547 preference
- [x] 13-Recovery of money/property - §548 fraudulent transfer
- [ ] 14-Recovery of money/property - other

**FRBP 7001(b) – Validity, Priority or Extent of Lien**
- [ ] 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(c) – Approval of Sale of Property**
- [ ] 31-Approval of sale of property of estate and of a co-owner - § 363(h)

**FRBP 7001(d) – Objection/Revocation of Discharge**
- [ ] 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(e) – Revocation of Confirmation**
- [ ] 51-Revocation of confirmation

**FRBP 7001(f) – Dischargeability**
- [ ] 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
- [ ] 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
- [ ] 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(f) – Dischargeability (continued)**
- [ ] 61-Dischargeability - §523(a)(5), domestic support
- [ ] 68-Dischargeability - §523(a)(6), willful and malicious injury
- [ ] 63-Dischargeability - §523(a)(8), student loan
- [ ] 64-Dischargeability - §523(a)(15), divorce or separation obligation
    (other than domestic support)
- [ ] 65-Dischargeability - other

**FRBP 7001(g) – Injunctive Relief**
- [ ] 71-Injunctive relief- imposition of stay
- [ ] 72-Injunctive relief - other

**FRBP 7001(h) Subordination of Claim or Interest**
- [ ] 81-Subordination of claim or interest

**FRBP 7001(i) Declaratory Judgment**
- [ ] 91-Declaratory judgment

**FRBP 7001(j) Determination of Removed Action**
- [ ] 01-Determination of remove d claim or cause

**Other**
- [ ] SS-SIPA Case - 15 U.S.C. §§78aaa *et.seq.*
- [x] 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| - [ ] Check if this case involves a substantive issue of state law | - [ ] Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| - [ ] Check if a jury trial is demanded in complaint | Demand $ 1,059,943.03 |

Other Relief Sought

B1040 (FORM 1040) (12/24)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | | |
|---|---|---|---|
| NAME OF DEBTOR<br>The Litigation Practice Group P.C. | | BANKRUPTCY CASE NO.<br>8:23-bk-10571-SC | |
| DISTRICT IN WHICH CASE IS PENDING<br>Central District of California | | DIVISION OFFICE<br>Santa Ana | NAME OF JUDGE<br>Scott C. Clarkson |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | | |
| PLAINTIFF | DEFENDANT | | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br>/s/ Jacob R. Bothamley | | | |
| DATE<br>March 19, 2025 | | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Yosina M. Lissebeck<br>Jacob R. Bothamley<br>Attorneys for Plaintiff, Richard A. Marshack, Trustee of the<br>LPG Liquidation Trust | |

## INSTRUCTIONS

      The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

      A party filing an adversary proceeding must also complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

      The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

153