Keith C. Owens (Bar No 184841)
Nicholas A. Koffroth (Bar No. 287854)
**FOX ROTHSCHILD LLP**
10250 Constellation Blvd., Suite 900
Los Angeles, CA 90067
Telephone:    (310) 598-4150
Facsimile:    (310) 556-9828
kowens@foxrothschild.com
nkoffroth@foxrothschild.com

*Counsel for Richard A. Marshack, Liquidation Trustee of the LPG Liquidation Trust*

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SANTA ANA DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| THE LITIGATION PRACTICE GROUP, P.C., | Case No.: 8:23-bk-10571-SC |
| Debtor. | **NOTICE OF MOTION AND MOTION FOR ENTRY OF ORDER ENFORCING AGREEMENT OF PURCHASE AND SALE AND JOINT ESCROW INSTRUCTION, AND COMPELLING MORNING LAW GROUP, P.C. TO MAKE PAYMENT THEREUNDER AND RELATED RELIEF** |
| | Date:   April 23, 2025
Time: 1:30 p.m.
Judge: Hon. Scott C. Clarkson
Place: Courtroom 5C
　　　411 W. Fourth Street
　　　Santa Ana, CA 92701 |

168682613.2

Case 8:23-bk-10571-SC    Doc 2363    Filed 04/02/25    Entered 04/02/25 22:49:20    Desc
Main Document    Page 2 of 19

**PLEASE TAKE NOTICE** that on April 2, 2025, Richard A. Marshack, Liquidating Trustee (the "Trustee") of the LPG Liquidating Trust (the "Trust"), as representative of the successor-in-interest to the bankruptcy estate of the Litigation Practice Group, P.C. (the "Debtor") in the above-referenced bankruptcy case (the "Bankruptcy Case"), pending under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"),[1] filed a motion (the "Motion"), for entry of an order enforcing the *Agreement of Purchase and Sale and Joint Escrow Instructions* [Docket No. 416] (the "PSA"), and compelling Morning Law Group, P.C ("MLG" or "Buyer") to immediately pay to the Trust the undisputed purchase price payment attributable to the Fourth Quarter of 2024, in the amount of $953,247.59 (the "Undisputed Payment") and prevailing party attorney's fees and costs (the "Prevailing Party Fees"), pursuant to the PSA.

**PLEASE TAKE FURTHER NOTICE** that the Motion is made pursuant to the plain language of the PSA and the order [Docket No. 352] (the "Sale Order") approving the sale of substantially all of the Debtor's assets to MLG (the "Sale"). Specifically, the PSA and Sale Order provide that disputes concerning enforcement of the rights and obligations under the PSA and Sale Order shall be brought before the Bankruptcy Court.

**PLEASE TAKE FURTHER NOTICE** that this Notice is based upon the accompanying Motion, the *Declarations of Richard A. Marshack*, *Christoper Ghio*, and *Nicholas A. Koffroth*, and Request for Judicial Notice filed concurrently herewith, the record in the Bankruptcy Case, and such other oral or documentary evidence that may be considered by this Court.

**PLEASE TAKE NOTICE** that, on April 23, 2025, at 1:30 p.m. (prevailing Pacific Time), a hearing on the Motion will be held before the Honorable Scott C. Clarkson in Courtroom 5 of the above-entitled Court or virtually by ZoomGov. Parties virtually appearing should consult the NOTICE OF VIDEO AND TELEPHONIC APPEARANCE PROCEDURES FOR JUDGE SCOTT CLARKSON'S CASES for specific procedures and further information. **Accessibility information for parties appearing virtually will be provided by the Court in its tentative ruling prior to the hearing. Parties**

---

[1] Unless otherwise noted, all references to "Section" or "§" refer to a section of the Bankruptcy Code.

i

168682613.2

1  **are directed to obtain such accessibility information on Judge Clarkson's posted hearing calendar**

2  **which may be viewed online at:** http://ecf-ciao.cacb.uscourts.gov/CiaoPosted/?jid=SC.

3      **PLEASE TAKE FURTHER NOTICE** that pursuant to Local Bankruptcy Rule 9013-1(f), any

4  party who opposes the Motion shall, not later than fourteen (14) calendar days before the hearing on the

5  Motion, serve and file a written opposition complete with all law, fact, declarations, and evidence in

6  support of such opposition. **Please take further notice that, pursuant to Local Rules and the Court**

7  **Manual, three (3) days for mailing are NOT added to the time to file an opposition**.

8      **PLEASE TAKE FURTHER NOTICE** that failure to file and serve a timely response may

9  be deemed consent to the relief requested in the Motion.

10 DATED: April 2, 2025                **FOX ROTHSCHILD LLP**

11

12                                      By: */s/ Nicholas A. Koffroth*

13                                          Keith C. Owens
                                         Nicholas A. Koffroth

14                                   *Counsel for Richard A. Marshack, Liquidation*
*Trustee of the LPG Liquidation Trust*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FOX ROTHSCHILD LLP
10250 Constellation Boulevard, Suite 900
Los Angeles, California 90067
(310) 598-4150
(310) 556-9828 (fax)

168682613.2

## MEMORANDUM OF POINTS AND AUTHORITIES

Richard A. Marshack, Liquidating Trustee (the "Trustee") of the LPG Liquidating Trust (the "Trust"), as representative of the successor-in-interest to the bankruptcy estate of the Litigation Practice Group, P.C. (the "Debtor") in the above-referenced bankruptcy case (the "Bankruptcy Case"), pending under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"),[1] filed a motion (the "Motion"), for entry of an order enforcing the *Agreement of Purchase and Sale and Joint Escrow Instructions* [Docket No. 416] (the "PSA"), and compelling Morning Law Group, P.C. ("MLG" or "Buyer") to immediately pay to the Trust the undisputed purchase price payment attributable to the Fourth Quarter of 2024, in the amount of $953,247.59 (the "Undisputed Payment") and prevailing party attorney's fees and costs (the "Prevailing Party Fees"), pursuant to the PSA. In support of the Motion, the Trustee submits the *Declarations of Richard A. Marshack* (the "Marshack Declaration"), *Christoper Ghio* (the "Ghio Declaration"), and *Nicholas A. Koffroth* (the "Koffroth Declaration") filed concurrently herewith, refers to the record in this Bankruptcy Case, and respectfully states as follows:

### I.

### INTRODUCTION[2]

MLG estimated that the PSA would result in "Earn-Out" purchase price payments ranging between $44.5 million and nearly $79 million. A year-and-a-half after the sale was approved, the Trust has received just $1.5 million. This is, in part, due to a pending dispute over the Earn-Out provision of the PSA. However, MLG provided a calculation that (under its own interpretation) it owes the Trust an Earn-Out payment of $953,247.59 for the Fourth Quarter of 2024. While the Trustee believes the amount is larger, this Undisputed Payment was undoubtedly due and owing as of the January 15, 2025, payment date. Still, MLG has not turned over the Undisputed Payment.

MLG does not claim the PSA language is ambiguous concerning its payment obligations. There is no provision that permits deferral of the Undisputed Payment during the pendency of a

---

[1] Unless otherwise noted, all references to "Section" or "§" refer to a section of the Bankruptcy Code.

[2] Capitalized terms not defined herein shall have the same meaning ascribed to them below.

1

168682613.2

dispute over PSA terms. Indeed, in a Stipulation concerning mediation of the dispute (that was subsequently continued by the parties' mutual agreement) the parties all agreed that mediation did not waive any rights under the PSA. Still, MLG claims that the possibility of mediation precludes payment currently. But, there is no such written and executed PSA amendment that so states.

MLG is in breach of the PSA for failure to make the Undisputed Payment. The Trustee seeks an order enforcing the Sale Order and MLG's obligations under the plain, unambiguous language of the PSA. Moreover, the Trustee will seek prevailing party attorney's fees to the extent the Court grants the Motion, as permitted under the PSA.

MLG should not be permitted to gain leverage over the Trust in negotiations through its unfounded reading of the PSA. With another payment coming due on April 15, 2025, the Trustee seeks to resolve MLG's mistaken belief that it may withhold undisputed purchase price proceeds. This is especially so where MLG argues it's payment obligations under the PSA are multiples lower than MLG represented could be expected at the sale hearing. For the reasons set forth herein, the Trustee respectfully requests that the Court enter an order granting the Motion in its entirety.

## II.

## FACTUAL BACKGROUND

**A.   MLG's Representation That Winning Bid—Comprised Principally of an "Earn-Out"—Was the Highest, Best, and Most certain recovery for the Estate.**

The Bankruptcy Case presented the Court and parties with a "melting ice-cube." *See* Docket No. 320 (Mem. Dec. at 3). The Debtor's consumer law firm was thrown into bankruptcy and rapidly resulted in the appointment of a chapter 11 trustee charged with balancing the often-overlapping interests of creditors and the approximately 22,000 consumer clients that faced the loss of affordable legal representation on pending matters. *See id.* (Mem. Dec. at 5); *see also* Docket No. 62. The Bankruptcy Case hobbled toward a sale to achieve the dual-purpose of value-maximization and preservation of legal services for clients under the careful watch of a Court-appointed Ethics Compliance Monitor to ensure that the winning bidder complied with its ethical standards and consumer protection obligations. *See* Docket No. 320 (Mem. Dec. at 5).

2

168682613.2

The Trustee identified a stalking horse bidder and two competing bidders for the sale of the Debtor's assets under substantially similar terms. *See* Docket No. 191 (Sale Mot., Ex. 2 at 205); *see also* Docket No. 316 (Marshack Decl., Ex. 1 at 3) (comparing economic terms). Specifically, the stalking horse bidder, Consumer Legal Group, P.C. ("CLG"), negotiated two components to the purchase price: (i) an up-front cash deposit (the "Deposit"); and (ii) a "backend" over time in which the Debtor's estate (the "Estate") would share a percentage of the buyer's gross revenue from legal services contracts acquired from the Debtor (the "Earn-Out" and, together with the Deposit, the "Purchase Price"). *See* Docket No. 191 (Sale Mot., Ex. 2 at 210). Under the CLG stalking horse bid, as with all other bids, the Earn-Out represented the bulk of the Purchase Price under each of the three bids. *See* Docket No. 316 (Marshack Decl., Ex. 1 at 3).

At the sale hearing, MLG offered a Purchase Price comprised of a $5 million cash deposit (and waiver of an affiliate's $500,000 postpetition loan to the Debtor), along with a significant proposed Earn-Out. Specifically, the PSA ultimately negotiated with MLG describes the Earn-Out as:

> a fee equal to: (a) fifty percent (50%) of all amounts collected by Buyer on Active Executory Contracts (defined above) from and after the Closing, plus (b) forty percent (40%) of all amounts collected by Buyer on Inactive Executory Contracts (defined above), each calculated on a quarterly basis, (subsections (a) and (b) collectively, the "Fee"), and paid into the Escrow Holder's Account **within 15 days of the end of each fiscal quarter** (March 31, June 30, September 30, and December 31). . . . There shall be no setoffs or offsets against the Fee unless otherwise provided herein or ordered by the Court.

Docket No. 416, Ex. 1 (PSA, § 2(b) at 11) (emphasis added).

Given the contingencies associated with the Earn-Out calculation, the Trustee relied on his understanding of the Debtor's operations from MLG's representatives. Based on the Trustee's evaluation, the Trustee concluded that the MLG Purchase Price was $84,490,990, which included an estimated $78,990,990 Earn-Out recovery. *See* RJN, Ex. 1 (July 21, 2023 Hr'g Tr. at 135:23-24); *see also* Docket No. 316 (Marshack Decl., Ex. 1 at 3). When MLG's representative, Russell Squires (also a postpetition consultant to the Trustee who resigned his position at the sale hearing), was sworn to opine as to the value of the Earn-Out, Mr. Squires explained as follows:

3

168682613.2

> THE COURT: What are you paying?
>
> THE WITNESS: In cash, 5.5 million.
>
> THE COURT: Well, over the period that you have an obligation under the asset purchase agreement and sale order, are you paying money?
>
> THE WITNESS: Yes.
>
> THE COURT: How much money [d]o you think you're paying? What is your estimate?
>
> * * *
>
> THE WITNESS: I have a very deep understanding of the numbers.
>
> THE COURT: Well, why don't you tell us what it is.
>
> THE WITNESS: If I was to say my belief right now with the actual performance . . . is probably going to be north of 50 or $60,000,000. . . . When you add in the performance of the contracts and the amount of people that don't pay, that's likely what will be . . . delivered to the [estate].

RJN, Ex. 1 (July 21, 2023 Hr'g Tr. at 181:4 - 182:8). Accordingly, the expected value range of the Earn-Out represented at the sale hearing was between $44.5 million and nearly $79 million.

MLG made clear that is Earn-Out recovery expectations were both higher than other bidders' and attainable by MLG. The managing partner of MLG, Joshua Armstrong, submitted evidence in the form of a declaration that:

> After seeing the offer of Consumer Legal Group, Mr. Squires and I believe that we could provide a better service both to the clients and to the bankruptcy estate. Based on our experience with debt validation work, we believe that an offer that returns 50% of gross income to the estate would still allow Morning Law Group to retain sufficient funds to cover the costs of legal and business operations.

Docket No. 318 (Armstrong Decl., ¶ 7 at 3). With the assurances of MLG and its representatives, the Trustee selected the MLG bid as the highest and best bid, which the Court approved. *See* Docket No. 352 (Sale Order).

///

///

///

4

168682613.2

### B. **MLG Provided the Trust With a Calculation of the Undisputed Earn-Out Amount Owed in the Fourth Quarter of 2024, But Has Refused to Pay.**

Nearly a year-and-a-half after the sale hearing, the Estate (and now its successor, the Trust) received approximately $1.5 million on account of the Earn-Out. Some of the delay is owing to a pending dispute between MLG and the Trust over the interpretation of the PSA's Earn-Out calculation (the "Earn-Out Dispute") and MLG's reported retention of far fewer Debtor clients than anticipated. *See* Docket No. 1334 (Stipulation at 2) (outlining scope of Earn-Out Dispute); Docket No. 1345 (Disclosure Stmt. at 20). However, on January 15, 2025, MLG provided its quarterly calculation of the Earn-Out due to the Trust. *See* Ghio Decl. at ¶ 2, Ex. 1. Under MLG's view of the Earn-Out calculation, MLG agreed that it owed the Trust $953,247.59 for the Fourth Quarter of 2024. *See id.*

The Trust's efforts to obtain payment of the Undisputed Payment (subject to the right to seek additional amounts at a later time) have been ignored. Under the terms of the PSA, quarterly Earn-Out payments are due and payable 15 days after the end of the quarter **without the right to alter (by setoff or otherwise) the amount due**. *See* Docket No. 416, Ex. 1 (PSA, § 2(b) at 11). However, the MLG calculation (provided on the payment due date) was not accompanied by confirmation that payment was forthcoming. *See* Ghio Decl. at ¶ 2, Ex. 1. On January 23, 2025, counsel for the Post-Confirmation Oversight Committee requested that MLG's counsel confirm "when the Trust can expect payment" of the Undisputed Payment. *See* Koffroth Decl. at ¶ 2, Ex. 1. MLG did not respond and, one week later, counsel sent a follow-up request regarding payment status. *See id.* This time, MLG responded and took the position that no payments were due under the PSA until the Earn-Out dispute was mediated. *See id.* MLG's counsel did not respond to further requests to clarify the basis for their belief payment obligations were suspended under the PSA. *See id.*

The Earn-Out Dispute has lingered, unresolved without any agreement to defer PSA obligations. In a stipulation [Docket No. 1334] (the "Mediation Stipulation") resolving an objection to mediation, MLG agreed to mediation of the Earn-Out Dispute provided that "[n]othing contained in this Stipulation is intended to waive, nor shall be construed as a waiver of, any rights or remedies the Parties may have under the APA or applicable law. All such rights, remedies and claims are expressly preserved." Mediation Stip., at 2-3; *see also* Docket No. 1336 (order approving stipulation).

5

168682613.2

1  As it stands, even accepting MLG's position in the Earn-Out Dispute as true, MLG calculates that it owes the Trust an Earn-Out payment of $953,247.59 as of January 15, 2025. With the April 15, 2025, Earn-Out payment approaching, the Trustee seeks an order enforcing the PSA with respect to the Undisputed Payment to recover amounts due to the Trust and to avoid granting MLG undue leverage in mediation.

### III.

### JURISDICTION

The Court has jurisdiction to hear this dispute under the terms of the PSA, Sale Order, and the Confirmation Order. ***First***, the PSA provides that "the Bankruptcy Court shall have exclusive jurisdiction over all disputes and other matters relating to the interpretation and enforcement of this Agreement." Docket No. 416 (PSA, § 20(h) at 26). ***Second***, the order approving the sale [Docket No. 352 (the "Sale Order") provides, in part, that "Purchaser shall [] be subject to the jurisdiction of this Court . . . as addressed and consented to in Court and in accordance with the Order, the APA, any plan of reorganization and 28 U.S.C. Section 1334(b)." Sale Order, ¶ 31 at 21; *see also id.*, ¶ 30 at 20. ***Third***, the order [Docket No. 1646] (the "Confirmation Order") confirming the plan [Docket No. 1344] (the "Plan") broadly retained jurisdiction over all matters arising in the Bankruptcy Case. Confirmation Order, ¶ 21 at 24. On the Effective Date of the Plan, the Estate's rights under the PSA were transferred to the Trust as a "Trust Asset." *See* Plan, Ex. (Trust Agmt., at 3) (providing rights under the PSA and the Earn-Out are assets of the postconfirmation Trust). Disputes involving interpretation of a sale order postconfirmation commonly fit within the Court's postconfirmation jurisdiction, particularly where, as here, the confirmed plan includes a retention of jurisdiction clause. *See, e.g.*, *In re Old Carco LLC*, 636 B.R. 347, 355-356 (Bankr. S.D.N.Y. 2022). Accordingly, the Court has jurisdiction to hear the Motion brought by the Trustee with respect to the Undisputed Payment under the PSA.

///

///

///

///

6

168682613.2

# IV.

# LEGAL ARGUMENT

**A.  The PSA Requires Timely Payment of the Undisputed Payment Related to the Fourth Quarter 2024 Earn-Out.**

The Court can enforce the PSA and Sale Order under the Bankruptcy Code and applicable nonbankruptcy law. *See, e.g.*, *In re Motors Liquidation Co.*, 500 B.R. 333, 340 (S.D.N.Y. 2013) ("The interpretation of a contract in bankruptcy is governed by state law."); *In re Delta Air Lines Inc.*, 608 F.3d 139, 146 (2d Cir. 2010) (same). Here, the PSA provides that the "Agreement shall be governed by and construed and enforced in accordance with the laws of the State of California without regards to the rules of such state relating to conflict of laws." Docket No. 416, Ex. 1 (PSA, § 20(g) at 30). Accordingly, California law applies to the enforcement of the PSA terms.

Under California law, courts must first examine the plain language of the contract to determine the intent of the parties. *See In re Vineyard Nat. Bancorp*, Case No. No. 2:10–BK–21661RN, 2013 WL 1867987, at *4 (Bankr. C.D. Cal. May 3, 2013) (citing *United States v. Westlands Water Dist.*, 134 F.Supp.2d 1111, 1134 (E.D. Cal. 2001) ("When interpreting a contract, the plain language within the four corners of the contract must first be examined to determine the mutual intent of the contracting parties.")). "It is also well established . . . that if upon a reading of the whole contract the portion of the contract under attack is clear and explicit no extrinsic evidence will be received to vary its plain terms." *In re Sonoma West Medical Center, Inc.*, 628 B.R. 120, 125-26 (Bankr. N.D. Cal. 2021) (citing *Molybdenum Corp. of America v. Kasey*, 176 Cal.App.2d 357, 363, 1 Cal.Rptr. 400 (Cal. Dist. Ct. App. 1959)). "The fundamental goal of contract interpretation is to give effect to the mutual intention of the parties. If contractual language is clear and explicit, it governs." *In re O'Gorman*, Case No. NC-23-1043-BSG, 2024 WL 966967, at *4 (B.A.P. 9th Cir. March 6, 2024) (quoting *Renwick v. Bennett (In re Bennett)*, 298 F.3d 1059, 1064 (9th Cir. 2002)); *see also In re Crow Winthrop Operating Partnership*, 241 F.3d 1121, 1124 (9th Cir. 2001) ("Under California law, if a contract's terms are unambiguous, a court may interpret the contract without recourse to extrinsic evidence.") (citing *City of Santa Clara v. Watkins*, 984 F.2d 1008, 1012 (9th Cir. 1993)).

Here, the language of the PSA is clear and unambiguous, and therefore, the plain language of

the PSA controls. The Trust is owed "a fee . . . calculated on a quarterly basis, . . .and paid into the Escrow Holder's Account within 15 days of the end of each fiscal quarter (March 31, June 30, September 30, and December 31)." Docket No. 416, Ex. 1 (PSA, § 2(b) at 11). Indeed, MLG does not dispute the provision's clarity: MLG provided its Earn-Out calculation to the Trust on the payment deadline and only claims that the payment obligation was modified by a separate, unidentified agreement. *See* Ghio Decl. at ¶ 2, Ex. 1. To date, MLG has not identified such an agreement that would (or could) modify the payment terms of the PSA. *See* Koffroth Decl., at ¶ 2, Ex. 1; *see also* Docket No. 416, Ex. 1 (PSA, § 20(j) at 26) ("No subsequent agreement, representation or promise made by either party hereto, or by or to an employee, officer, agent or representative of either party shall be of any effect unless it is in writing and executed by the party to be bound thereby."). Indeed, as acknowledged in the Mediation Stipulation, and subsequent nonbinding communications between the parties, all rights under the PSA were preserved notwithstanding the desire to mediate the Earn-Out Dispute. *See* Docket No. 1334 (Stipulation, at 2-3); *see also* Docket No. 1336 (order approving stipulation).

Moreover, the PSA does not provide any language otherwise permitting holdback of undisputed payments. And, aside from providing no mechanism to hold undisputed funds, the PSA unambiguously provides that Earn-Out payments are not subject to any setoff or offset absent bankruptcy court order. Docket No. 416, Ex. 1 (PSA, § 2(b) at 11). While the Trustee anticipates that MLG will ask the Court to defer MLG's obligation to pay the Undisputed Payment until such time as the parties have mediated the entire dispute, this is not what the Mediation Stipulation provides. Because MLG's obligation to pay the Undisputed Payment is undisputed and not subject to setoff or offset, there simply is no basis to withhold a due Earn-Out payment under the plain terms of the PSA.

As set forth above, MLG agrees that it owes a $953,247.59 Earn-Out payment for the Fourth Quarter of 2024. *See* Ghio Decl. at ¶ 2, Ex. 1. Under the Trustee's interpretation in the pending Earn-Out Dispute, the Earn-Out payment would be higher for the same period. *See* Marshack Decl., at ¶ 2. As such, there is no dispute that the minimum Earn-Out payment due for the Fourth Quarter of 2024 is $953,247.59. Based on the foregoing unambiguous terms of the PSA, the Trustee respectfully requests entry of an order compelling the immediate payment of this Undisputed Payment.

8

B. **The Trust is Entitled to Fees and Expenses Incurred to Enforce the PSA in an Amount to be Determined.**

As with other contract interpretation issues, "the determinative question for awarding [prevailing party] attorney's fees is whether the creditor would be able to recover the fee outside of bankruptcy under state or federal law." *In re Hung Tan Pham*, 250 B.R. 93, 99 (B.A.P. 9th Cir. 2000). Under nonbankruptcy law, an enforceable attorney fee provision may establish a basis for an award of prevailing party attorney's fees. *See Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 448 (2007) (citations omitted); *see also Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 257 (1975) ("Other recent cases have also reaffirmed the general rule that, absent statute or enforceable contract, litigants pay their own attorneys' fees.").

"California law allows enforcement of agreements for attorney's fees in Civil Code § 1717 and Code of Civil Procedure § 1021." *In re Charalambous*, Case No. 13-1042, 2013 WL 3369299, at *4 (B.A.P. 9th Cir. July 3, 2013) (cleaned up). **First**, California Civil Code § 1717 provides that the prevailing party "shall be entitled to reasonable attorney's fees in addition to other costs" in "any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded to ... the prevailing party." CAL. CIV. CODE § 1717(a); *see also In re Chen*, 345 B.R. 197, 200 (N.D. Cal. 2006). Whether the action is "to enforce or avoid enforcement" of a contract is determined by application of California law. *In re Zarate*, 567 B.R. 176, 184 (Bankr. N.D. Cal. 2017) (citing *Penrod v. AmeriCredit Financial Services, Inc. (In re Penrod)*, 802 F.3d 1084 (9th Cir. 2015)). **Second**, California Code of Civil Procedure ("CCP") § 1021 permits recovery of attorney's fees as agreed in a contract without the limitation that the action be enforcement of a contract. *See* CAL. CODE CIV. PROC. § 1021; *In re Sharma*, No. 12-1302, 2013 WL 1987351, at *18 (B.A.P. 9th Cir. May 14, 2023) (holding that CCP § 1021 "expressly allows parties to contract as they see fit concerning the payment of attorney's fees"); *accord Chen*, 345 B.R. at 200. As the Motion explicitly embraces an action "to enforce" the PSA, the Motion addresses this more specific standard.

A prevailing party must satisfy three conditions to obtain fees under California Civil Code § 1717(a). *See In re Penrod*, 802 F.3d 1084, 1087 (9th Cir. 2015). **First**, the action must be "on a

9

168682613.2

contract," which includes "when a party seeks to enforce, or avoid enforcement of, the provisions of the contract." *Id.*, at 1087. **Second**, the contract must contain a provision stating that attorney's fees incurred to enforce the contract shall be awarded either to one of the parties or to the prevailing party. *Id. Third*, the party seeking fees must be the party who "prevail[ed] on the contract," meaning (with exceptions not relevant here) "the party who recovered a greater relief in the action on the contract." CAL. CIV. CODE § 1717(b)(1); *see also Penrod*, 802 F.3d at 1087-88 (internal citation omitted).

Here, the Trustee will establish all three elements entitling the Trust to prevailing party fees on the Motion. **First**, the Motion is an action "on a contract" because it pertains to the Trustee's enforcement efforts against MLG, pursuant to the specific terms of the PSA. **Second**, the PSA includes an attorney fee provision as follows: "[i]f either Party incurs attorneys' fees to enforce this Agreement because of a breach of this Agreement by the other Party, the prevailing Party shall be entitled to recover reasonable attorneys' fees as set forth by the court from the other Party." Docket No. 416, Ex. 1 (PSA, § 20(i) at 26). **Third**, the Trustee submits that the Motion will be meritorious and that a successful outcome will entitle the Trustee for an award of attorney's fees related to the Motion. Accordingly, subject to further proof (as to amount and reasonableness) and the outcome of the Motion, the Trustee submits that the Trust is entitled to an award of attorney's fees related to the enforcement of the PSA set forth in the Motion.

## V.

## **RESERVATION OF RIGHTS**

As set forth herein, the relief requested in the Motion is limited to compelling MLG's payment of the Undisputed Payment related to the Fourth Quarter of 2024 – which is more than two months past due. As indicated herein, the Trust holds other claims or pending disputes against MLG under the terms of the PSA and applicable law. Nothing contained herein shall be construed as a waiver, limitation, or election of arguments or remedies or an admission with respect to the foregoing, and the Trustee expressly reserves all rights with respect to the foregoing. For the avoidance of doubt, this Motion shall not be deemed an admission that $953,247.59 is the total Earn-Out due and owing from MLG for the Fourth Quarter of 2024, which remains subject to the Earn-Out Dispute.

168682613.2

# VI.

# **CONCLUSION**

Based on the foregoing, the Trustee respectfully requests that the Court: (i) grant the Motion; (ii) enforce the terms of the PSA and compel MLG to immediately fund the Undisputed Payment to the Trust; (iii) the Trustee is awarded reasonable attorneys' fees in connection with the Motion; and (iv) grant the Trustee such other and further relief as is just and appropriate under the circumstances.

DATED this 2nd day of April, 2025.

**FOX ROTHSCHILD LLP**

By: _/s/ Nicholas A. Koffroth_
Keith C. Owens (Bar No. 184841)
Nicholas A. Koffroth (Bar No. 287854)
Constellation Place
10250 Constellation Blvd., Suite 900
Los Angeles, California 90067

*Counsel for Richard A. Marshack, Liquidation Trustee of the LPG Liquidation Trust*

11

168682613.2

**PROOF OF SERVICE OF DOCUMENT**

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is 10250 Constellation Boulevard, Suite 900, Los Angeles, CA 90067.

A true and correct copy of the foregoing documents entitled: NOTICE OF MOTION AND MOTION FOR ENTRY OF ORDER ENFORCING AGREEMENT OF PURCHASE AND SALE AND JOINT ESCROW INSTRUCTION, AND COMPELLING MORNING LAW GROUP, P.C. TO MAKE PAYMENT THEREUNDER AND RELATED RELIEF on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.    TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document.  On 4/02/2025, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Kyra E Andrassy**    kandrassy@raineslaw.com, bclark@raineslaw.com;jfisher@raineslaw.com
- **Bradford Barnhardt**    bbarnhardt@marshackhays.com, bbarnhardt@ecf.courtdrive.com,alinares@ecf.courtdrive.com
- **Eric Bensamochan**    eric@eblawfirm.us, G63723@notify.cincompass.com
- **Michael Jay Berger**    michael.berger@bankruptcypower.com, yathida.nipha@bankruptcypower.com;michael.berger@ecf.inforuptcy.com
- **Ethan J Birnberg**    birnberg@portersimon.com, kdwyer@portersimon.com
- **Peter W Bowie**    peter.bowie@dinsmore.com, caron.burke@dinsmore.com
- **Ronald K Brown**    ron@rkbrownlaw.com
- **Christopher Celentino**    christopher.celentino@dinsmore.com, caron.burke@dinsmore.com
- **Shawn M Christianson**    cmcintire@buchalter.com, schristianson@buchalter.com
- **Randall Baldwin Clark**    rbc@randallbclark.com
- **Leslie A Cohen**    leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com;clare@lesliecohenlaw.com
- **Aaron E. DE Leest**    adeleest@marshackhays.com, adeleest@marshackhays.com,alinares@ecf.courtdrive.com
- **Michael W Davis**    mdavis@dtolaw.com, ygodson@dtolaw.com
- **Anthony Paul Diehl**    anthony@apdlaw.net, Diehl.AnthonyB112492@notify.bestcase.com,ecf@apdlaw.net,9143954420@filings.docketbird.com
- **Ashley Dionisio**    adionisio@omniagnt.com
- **Jenny L Doling**    jd@jdl.law, dolingjr92080@notify.bestcase.com;15994@notices.nextchapterbk.com;jdoling@jubileebk.net
- **Daniel A Edelman**    dedelman@edcombs.com, courtecl@edcombs.com
- **Howard M Ehrenberg**    Howard.Ehrenberg@gmlaw.com, hehrenberg@ecf.courtdrive.com;hehrenberg@ecf.inforuptcy.com;Karen.Files@gmlaw.com;denise.walker@gmlaw.com
- **Meredith Fahn**    fahn@sbcglobal.net
- **Jeremy Faith**    Jeremy@MarguliesFaithlaw.com, Angela@MarguliesFaithLaw.com;Vicky@MarguliesFaithLaw.com;Amber@MarguliesFaithLaw.com
- **William P Fennell**    william.fennell@fennelllaw.com, wpf@ecf.courtdrive.com;hala.hammi@fennelllaw.com;naomi.cwalinski@fennelllaw.com;samantha.larimer@fennelllaw.com;office@fennelllaw.com;Brendan.Bargmann@fennelllaw.com
- **Alan W Forsley**    alan.forsley@flpllp.com, awf@fkllawfirm.com,awf@fl-lawyers.net,addy@flpllp.com
- **Marc C Forsythe**    mforsythe@goeforlaw.com, mforsythe@goeforlaw.com;dcyrankowski@goeforlaw.com;Forsythe.MarcR136526@notify.bestcase.com
- **Jeremy Freedman**    jeremy.freedman@dinsmore.com, bonnie.connolly@dinsmore.com
- **Eric Gassman**    erg@gassmanlawgroup.com, gassman.ericb112993@notify.bestcase.com
- **Christopher Ghio**    christopher.ghio@dinsmore.com, angelica.urena@dinsmore.com
- **Amy Lynn Ginsburg**    efilings@ginsburglawgroup.com
- **Eric D Goldberg**    eric.goldberg@dlapiper.com, eric-goldberg-1103@ecf.pacerpro.com

Active\118774763.v1-1/20/21

- **Jeffrey I Golden**  jgolden@go2.law, kadele@ecf.courtdrive.com;cbmeeker@gmail.com;lbracken@wgllp.com;dfitzgerald@go2.law;golden.jeffreyi.b117954@notify.bestcase.com
- **Richard H Golubow**  rgolubow@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com
- **David M Goodrich**  dgoodrich@go2.law, kadele@go2.law;dfitzgerald@go2.law;wggllp@ecf.courtdrive.com
- **Spencer Keith Gray**  spencer.gray@dinsmore.com
- **D Edward Hays**  ehays@marshackhays.com, ehays@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@ecf.courtdrive.com
- **Alan Craig Hochheiser**  ahochheiser@mauricewutscher.com, arodriguez@mauricewutscher.com
- **Garrick A Hollander**  ghollander@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com
- **Brian L Holman**  b.holman@musickpeeler.com
- **Richard L. Hyde**  rhyde@awglaw.com
- **Peter L Isola**  pisola@hinshawlaw.com, rmojica@hinshawlaw.com,iking@hinshawlaw.com
- **Razmig Izakelian**  razmigizakelian@quinnemanuel.com
- **Sara Johnston**  sara.johnston@dinsmore.com
- **Sweeney Kelly**  kelly@ksgklaw.com
- **Joon M Khang**  joon@khanglaw.com
- **Ira David Kharasch**  ikharasch@pszjlaw.com
- **Meredith King**  mking@fsl.law, ssanchez@fsl.law;jwilson@fsl.law
- **Nicholas A Koffroth**  nkoffroth@foxrothschild.com, khoang@foxrothschild.com;ca.dkt@foxrothschild.com
- **David S Kupetz**  David.Kupetz@lockelord.com, mylene.ruiz@lockelord.com
- **Christopher J Langley**  chris@slclawoffice.com, langleycr75251@notify.bestcase.com;ecf123@casedriver.com;john@slclawoffice.com
- **Kelli Ann Lee**  Kelli.lee@dinsmore.com, kristy.allen@dinsmore.com
- **Matthew A Lesnick**  matt@lesnickprince.com, matt@ecf.inforuptcy.com;jmack@lesnickprince.com
- **Daniel A Lev**  daniel.lev@gmlaw.com, cheryl.caldwell@gmlaw.com;dlev@ecf.courtdrive.com
- **Britteny Leyva**  bleyva@mayerbrown.com, 2396393420@filings.docketbird.com;KAWhite@mayerbrown.com;ladocket@mayerbrown.com
- **Marc A Lieberman**  marc.lieberman@flpllp.com, addy@flpllp.com,andrea@flpllp.com
- **Michael D Lieberman**  mlieberman@lipsonneilson.com
- **Yosina M Lissebeck**  Yosina.Lissebeck@Dinsmore.com, caron.burke@dinsmore.com;Wendy.Yones@Dinsmore.com
- **Mitchell B Ludwig**  mbl@kpclegal.com, kad@kpclegal.com
- **Daniel S March**  marchlawoffice@gmail.com, marchdr94019@notify.bestcase.com
- **Kathleen P March**  kmarch@bkylawfirm.com, kmarch3@sbcglobal.net,kmarch@sbcglobal.net
- **Mark J Markus**  bklawr@bklaw.com, markjmarkus@gmail.com;markus.markj.r112926@notify.bestcase.com
- **Richard A Marshack (TR)**  pkraus@marshackhays.com, ecf.alert+Marshack@titlexi.com
- **Laila Masud**  lmasud@marshackhays.com, lmasud@ecf.courtdrive.com;lbuchanan@marshackhays.com;alinares@ecf.courtdrive.com
- **Sarah S. Mattingly**  sarah.mattingly@dinsmore.com
- **William McCormick**  Bill.McCormick@ag.tn.gov
- **Kenneth Misken**  Kenneth.M.Misken@usdoj.gov
- **Byron Z Moldo**  bmoldo@ecjlaw.com, aantonio@ecjlaw.com,dperez@ecjlaw.com
- **Glenn D. Moses**  gmoses@venable.com, cascavone@venable.com;ipmalcolm@venable.com;jadelgado@venable.com
- **Jamie D Mottola**  Jamie.Mottola@dinsmore.com, jhanawalt@ecf.inforuptcy.com
- **Alan I Nahmias**  anahmias@mbn.law, jdale@mbn.law
- **Victoria Newmark**  vnewmark@pszjlaw.com
- **Jacob Newsum-Bothamley**  jacob.bothamley@dinsmore.com, bonnie.connolly@dinsmore.com
- **Queenie K Ng**  queenie.k.ng@usdoj.gov
- **Israel Orozco**  israel@iolawcorp.com

- **Keith C Owens**   kowens@foxrothschild.com, khoang@foxrothschild.com
- **Lisa Patel**   lpatel@lesnickprince.com, jmack@lesnickprince.com;jnavarro@lesnickprince.com
- **Michael R Pinkston**   rpinkston@seyfarth.com, jmcdermott@seyfarth.com,sfocalendar@seyfarth.com,5314522420@filings.docketbird.com,bankruptcydocket@seyfarth.com
- **Douglas A Plazak**   dplazak@rhlaw.com
- **Tyler Powell**   tyler.powell@dinsmore.com, jennifer.pitcock@dinsmore.com;caitlin.brock@dinsmore.com
- **Daniel H Reiss**   dhr@lnbyg.com, dhr@ecf.inforuptcy.com
- **Ronald N Richards**   ron@ronaldrichards.com, 7206828420@filings.docketbird.com
- **Vanessa Rodriguez**   vanessa.rodriguez@dinsmore.com, angelica.urena@dinsmore.com
- **Kevin Alan Rogers**   krogers@wellsmar.com
- **Gregory M Salvato**   gsalvato@salvatoboufadel.com, calendar@salvatolawoffices.com;jboufadel@salvatoboufadel.com;gsalvato@ecf.inforuptcy.com
- **Olivia Scott**   olivia.scott@hklaw.com
- **Jonathan Serrano**   jonathan.serrano@dinsmore.com
- **Maureen J Shanahan**   Mstotaro@aol.com
- **Paul R Shankman**   PShankman@fortislaw.com, info@fortislaw.com
- **Zev Shechtman**   Zev.Shechtman@saul.com, zshechtman@ecf.inforuptcy.com;hannah.richmond@saul.com
- **Jeffrey M Singletary**   jsingletary@swlaw.com, rmckay@swlaw.com
- **Leslie Skorheim**   leslie.skorheim@usdoj.gov
- **Adam D Stein-Sapir**   info@pfllc.com
- **Howard Steinberg**   steinbergh@gtlaw.com, pearsallt@gtlaw.com;NEF-BK@gtlaw.com;howard-steinberg-6096@ecf.pacerpro.com
- **John H. Stephens**   john.stephens@dinsmore.com, lizbeth.alonso@dinsmore.com
- **Andrew Still**   astill@swlaw.com, kcollins@swlaw.com
- **Matthew J Stockl**   matthew.stockl@dinsmore.com, katrice.ortiz@dinsmore.com
- **Michael R Totaro**   Ocbkatty@aol.com
- **United States Trustee (SA)**   ustpregion16.sa.ecf@usdoj.gov
- **William J Wall**   wwall@wall-law.com
- **Sharon Z. Weiss**   sharon.weiss@bclplaw.com, raul.morales@bclplaw.com,REC_KM_ECF_SMO@bclplaw.com
- **Johnny White**   JWhite@wrslawyers.com, jlee@wrslawyers.com
- **Reina Zepeda**   rzepeda@omniagnt.com

**2.    SERVED BY UNITED STATES MAIL**: On 4/02/2025, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows.

**See attached for additional parties**

**3.    SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on 1/08/2025, I served the following persons and/or entities by personal delivery,  mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

The Honorable Scott C. Clarkson
United States Bankruptcy Court, Central District of California
411 West Fourth Street, Suite 5130 / Courtroom 5C
Santa Ana, CA 92701-4593

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 4/02/2025 | Kimberly Hoang | /s/ Kimberly Hoang |
|---|---|---|
| Date | Printed Name | Signature |

**Additional Parties Served by U.S. Mail**

**Creditors who have the 20 largest unsecured claims**

Debt Validation Fund II, LLC
5075 Lower Valley Road,
Atglen, PA 19310

MC DVI Fund 1, LLC; MC DVI Fund 2, LLC
598 Cottonwood Dr.,
Glenview, IL 60026

Validation Partners LLC
1300 Sawgrass Pkwy, Ste. 110
Sunrise, FL 33323

Marich Bein LLC
99 Wall Street, Ste 2669
New York, NY 10005

Business Centers of America
1100 Sir Francis Drake Blvd,
Ste 1, Kentfield, CA 94904

JP Morgan Chase
3 Park Plaza, Ste 900
Irvine, CA 92614

CA Franchise Tax Board
PO Box 942857
Sacramento, CA 94257-0511

Outsource Accelerator Ltd
City Marque Limited
Unit 8801-2 Bldg. 244-248
Des Voeux Rd.
Central Hong Kong

Collaboration Advisors
400 Dorla Court
Zephyr Cove, NV 89448

Anthem Blue Cross
PO Box 511300
Los Angeles, CA 90051-7855

Azevedo Solutions Groups, Inc.
420 Adobe Canyon Rd.
Kenwood, CA 95452

Debt Pay Pro
1900 E Golf Road, Suite 550
Schaumburg, IL 60173

Sharp Business Systems
8670 Argent St
Santee, CA 92071

Tustin Executive Center
1630 S Sunkist Steet, Ste A
Anaheim, CA 92806

Exela Enterprise Solutions
2701 E. Grauwyler Road
Irving, TX 75061

Netsuite-Oracle
2300 Oracle Way
Austin, TX 78741

Credit Reporting Service Inc
548 Market St, Suite 72907
San Francisco, CA 94104-5401

Document Fulfillment Services
2930 Ramona Ave #100
Sacramento, CA 95826

Executive Center LLC
5960 South Jones Blvd
Las Vegas, NV 89118

LexisNexus
15500 B Rockfield Blvd
Irvine, CA 92618

**Secured Creditors**

Diverse Capital LLC
323 Sunny Isles Blvd., Suite 503
Sunny Isles, FL 33154

City Capital NY
1135 Kane Concourse
Bay Harbour Islands, FL 33154